**Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**

Butzel Long, a professional corporation
380 Madison Avenue
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
Barry N. Seidel
Eric B. Fisher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**REPLY OF BUTZEL LONG TO FEE EXAMINER'S LIMITED OBJECTION TO FIRST INTERIM FEE APPLICATION OF BUTZEL LONG**

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

Butzel Long, a professional corporation ("BL"), Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation (the "Committee"), files this reply to the Fee Examiner's Report and Statement of Limited Objection to First Interim Fee Application of Butzel Long (the "Report"), dated April 22, 2010 [Docket No. 5548], and respectfully states:

1.   BL filed its first application for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from June 10, 2009 through September 30, 2009 (the "BL Application") on November 16, 2009 [Docket No. 4450]. No party in interest in these cases interposed an objection to the BL

1

Application prior to the objection deadline. To accommodate the Fee Examiner's schedule, the hearing to consider the first interim applications of all professionals was adjourned.

2. By correspondence dated March 31, 2010, the Fee Examiner provided BL with a summary of his preliminary analysis of the fees and expenses requested in the BL Application and asked BL for additional information in connection therewith. BL provided such additional information to the Fee Examiner in a series of correspondence.

3. Based upon its dialogue with the Fee Examiner, BL has agreed to reduce the amounts requested in the BL Application by $1,886.08[1], so that the amount BL currently requests in the BL Application is $257,155.29, which is comprised of $236,158.74 for fees and $20,996.55 for expenses. The Fee Examiner is seeking a further reduction of $44,282.73 for fees.

## COMPENSATION FOR PROFESSIONAL SERVICES RENDERED

4. Consequently, there is only one area remaining in dispute between BL and the Fee Examiner as it relates to the BL Application: the Fee Examiner seeks the disallowance of $44,282.73 of fees relating to the preparation of retention papers for BL and to the processing of fee applications and monthly fee statements for payment to BL (the "Challenged Fees").

5. At this point, BL's only objection to the Report concerns the Fee Examiner's assertion that fees incurred in connection with retention and compensation matters should equal

---

[1] The sum of $1,886.08 is comprised of (i) $1,102.50 for services performed by BL summer associates, (ii) $514.26 for vague time entries, (iii) $206.32 for copy charges at $0.18 per page rather than $0.10 per page and (iv) $63.00 for travel. Although BL believes that the Fee Examiner's position as to summer associate time, vague time entries and copy charges is not sustainable, BL is nonetheless willing to reduce the fees and expenses requested in the BL Application by $1,886.08 (to $257,155.29) so as not to take up the Court's valuable time on matters of such little economic significance. BL's agreement to forgo an award of fees for services provided by summer associates and to observe a cap of $0.10 on copy charges is borne of administrative convenience and should in no way be construed as an acknowledgement by BL that fees for services rendered by its summer associates are not compensable or that copy charges should be capped at $0.10 per page. Indeed, BL reserves all of its rights to seek compensation for services rendered by summer associates in the future and reimbursement of copy charges at BL's actual cost of copies.

2

no more than five percent (5%) of BL's total billings for the period of time covered by the BL Application. BL's fees incurred in connection with retention matters relate to the preparation and filing of BL's retention application and the substantial amount of work required in order to clear conflicts. BL's fees incurred in connection with compensation matters relate to the preparation of fee applications and monthly fee statements in connection with this Court's Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated August 7, 2009. The preparation of such monthly fee statements is directly related to the preparation of fee applications and reduces the amount of time required to be spent preparing fee applications.

6. The Fee Examiner's "5%" approach has no legal precedent and, even if a percentage cap were appropriate, (and BL does not think it is), it is arbitrary and unfair when applied particularly to BL inasmuch as BL had relatively little to do during the period of time covered by the BL Application (i.e., through September 30, 2009). The "5%" cap unfairly penalizes BL because it fails to consider the lag time between BL's retention and its first assignment. Unlike other firms that had substantial work assignments and duties to perform immediately upon their engagement by their respective clients, BL was engaged by the Committee as its conflicts counsel to stand by and be ready to jump immediately to work in the event that the Committee's primary counsel was disabled by conflicts. During the period of time covered by the BL Application, BL was only asked to handle one matter, the JPMorgan Chase Bank, N.A. adversary proceeding.

7. BL analyzed the fee applications submitted by various professionals concerning compensation and retention matters. In particular, BL analyzed the fee applications of Baker and McKenzie LLP (Attorneys for Debtors and Debtors in Possession) ("Baker"), Jenner &

3

Block LLP (Attorneys for Debtors and Debtors in Possession) ("Jenner"), Kramer Levin Naftalis & Frankel LLP ("Kramer") (Attorneys for the Committee), Jones Day (Special Counsel to Debtors and Debtors in Possession), Honigman Miller Schwartz and Cohn LLP (Special Counsel to Debtors and Debtors in Possession) ("Honigman") and Weil Gotshal & Manges LLP (Attorneys for Debtors and Debtors in Possession) ("Weil").  Based on BL's review of these fee applications, it is clear that BL's fees in connection with retention and fee matters were reasonable - arguably low - and therefore none of the $44,282.73 in Challenged Fees should be disallowed.

**Retention Matters**

8.      BL analyzed the fee applications submitted by various professionals for the period of time covered by the BL Application in order to determine how much a retention application in the chapter 11 cases filed by General Motors Corporation and certain of its affiliates (the "Debtors") should cost and how long its preparation should take.  BL incurred $40,543.00 in fees and spent 83 hours, at a blended rate of $488.46, on retention matters.  Baker incurred roughly $81,000.00 in fees and spent nearly 140 hours, at a blended rate of $578.57, on retention matters.[2]  Jenner incurred approximately $164,000.00 in fees and spent nearly 585 hours, at a blended rate of $280.34, on retention matters.[3]  Kramer incurred roughly $42,000 in fees and spent nearly 80 hours, at a blended rate of $525.00, on retention matters.[4]

9.      BL believes that there is no basis to challenge the reasonableness of the time spent, and fees incurred, by Baker, Jenner and Kramer on retention matters.  Inasmuch as BL's

---

[2] Based on time records from June and July 2009 relating to the "Retention & Fee Applications" matter.
[3] Based on time records from June and July 2009 relating to the "Retention/Billing/Fee Application" matter.
[4] Kramer's time billed to "Retention of Professionals" includes time spent reviewing the retention applications of other retained professionals.  BL reviewed Kramer's time records and estimates that roughly 80 hours were spent by Kramer relating to its own retention.

4

fees on such matters were about the same as those of Kramer and substantially less than those of Baker and Jenner, no disallowance is warranted.

      10.      The only reason Jones Day appears to have spent less than BL on retention matters is due to its voluntary write off of time charges relating to a significant portion of the 93.3 hours it spent on retention matters.[5] BL has no idea why Jones Day voluntarily reduced its fee request for retention matters. Regardless, it was not incumbent on BL or any other retained professional to make a similar reduction.

      11.      Moreover, Weil, Honigman, Jones Day, Jenner and Baker (the "Debtors' Professionals") all represent the Debtors and Debtors in Possession. As such, all of the Debtors' Professionals were engaged and incurred fees before June 1, 2009 (the "Petition Date"). As the fee applications do not cover legal services rendered prior to the Petition Date, it is impossible to know the amount of fees each of the Debtors' Professionals incurred before the Petition Date concerning retention matters. Accordingly, the fees incurred by BL on retention matters should not be compared to those of the Debtors' Professionals.

**Compensation Matters**

      12.      BL analyzed the fee applications submitted by various professionals for the period of time covered by the BL Application in order to determine how much professionals generally billed for compensation matters in the Debtors' chapter 11 cases.

      13.      BL incurred $15,628.50 in fees and spent 43.7 hours, at a blended rate of $357.63, on compensation matters. Baker incurred roughly $41,500.00 in fees and spent roughly 100 hours, at a blended rate of $415.00, on compensation matters.[6] Jenner incurred approximately

---

[5] Jones Day requested fees of only $30,354.50 for retention matters.
[6] Based on time records from August and September 2009 relating to the "Retention & Fee Applications" matter.

5

$107,000.00 in fees and spent nearly 225 hours, at a blended rate of $475.56, on compensation matters.[7] Kramer incurred $44,090.00 in fees and spent 109.10 hours, at a blended rate of $404.12, on compensation matters.

14. As BL believes that there is no basis to challenge the reasonableness of the time spent, and fees incurred, by Baker, Jenner and Kramer on such matters, it follows that BL also believes that the time BL spent on compensation matters is reasonable and that no disallowance is warranted.

**Retention and Compensation Matters Combined**

15. Certain professionals use one matter code to reflect time spent on work related to retention and fees. For such professionals whose time records were not filed, BL could not analyze retention matters separately from compensation matters. As such, BL analyzed these matters on a combined basis for such professionals. Given that these professionals may have recorded time prior to the Petition Date on retention matters, the numbers reflected herein are likely to be lower than the actual fees incurred and hours spent by such professionals.

16. BL incurred $56,171.50 in fees and spent 126.7 hours, at a blended rate of $443.34, on retention and compensation matters combined. Honigman incurred $83,933.50 in fees and spent 260.3 hours, at a blended rate of $322.45, on retention and compensation matters combined. Weil incurred $353,233.00 in fees and spent 1,331.7 hours, at a blended rate of $265.25, on retention and compensation matters combined.

17. BL believes that there is no basis to challenge the reasonableness of the time spent, and fees incurred, by Honigman and Weil on such matters. Inasmuch as BL's fees on

---

[7] Based on time records from August and September 2009 relating to the "Retention/Billing/Fee Application" matter.

6

such matters were substantially less than those of Honigman and Weil, no disallowance is warranted.

18. As explained above, the services performed by BL in connection with retention and compensation matters were actual and necessary and the compensation requested therefore was reasonable. Accordingly, the Court should not adopt the Fee Examiner's recommendation, but rather should approve the BL Application, as amended hereby.

## CONCLUSION

19. BL hereby amends the BL Application to reduce its request for compensation from $237,775.50 to $236,158.74, a reduction of $1,616.76, and to reduce its request for reimbursement of expenses from $21,265.87 to $20,996.55, a reduction of $269.32. As set forth above, no reduction of the Challenged Fees is warranted.

Dated: New York, New York
      April 27, 2010

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:   /s/ Barry N. Seidel
       Barry N. Seidel
       Eric B. Fisher
       380 Madison Avenue
       New York, NY 10017
       (212) 818-1110 Telephone
       (212) 818-0494 Fax