**HEARING DATE AND TIME: April 29, 2010 at 9:45 a.m. (Eastern Time)**

Brian C. Walsh
(*pro hac vice* motion pending)
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020

Attorneys for Evercore Group L.L.C.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re:**                                                  :
                                                            :    **Chapter 11**
                                                            :
**MOTORS LIQUIDATION COMPANY, et al.,**                     :    **Case No. 09-50026-REG**
                                                            :
                                                            :    **Jointly Administered**
             **Debtors.**                                   :
                                                            :
------------------------------------------------------------x

### REPLY OF EVERCORE GROUP L.L.C.
### TO FEE EXAMINER'S REPORT AND LIMITED OBJECTION
### TO FIRST AND FINAL FEE APPLICATION

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Evercore Group L.L.C. ("**Evercore**") hereby replies to the Report and Statement of Limited Objection (the "**Report**," docket no. 5549) filed by Brady C. Williamson (the "**Fee Examiner**") in response to the First and Final Application of Evercore Group L.L.C. for Compensation and Reimbursement of Expenses (the "**Application**," docket no. 4453).[1]  In support of this Reply, Evercore respectfully submits the following:

---

[1] The United States Trustee has filed a statement in connection with all pending fee applications that generally concurs with the recommendations of the Fee Examiner.  This Reply thus also serves as a response to the United States Trustee's concerns.

**BACKGROUND**

1.      Evercore was employed in this case as investment banker and financial advisor for Motors Liquidation Company and its debtor affiliates (the "**Debtors**"). By its terms, Evercore's engagement concluded on July 10, 2009, when the sale of the Debtors' assets closed.

2.      This Court's order authorizing Evercore's retention (the "**Retention Order**," docket no. 4304) was not entered until October 28, 2009. Between the closing of the sale and that date, Evercore engaged in lengthy negotiations with, among others, the Official Committee of Unsecured Creditors, which was fully aware of the scope of the services provided by Evercore and the results of the Debtors' sale process.

3.      In those negotiations, Evercore agreed to a modification of the fees provided for in its engagement letter with the Debtors. In particular, Evercore agreed that the payment of one-third of its NewCo Transaction Fee, or $4,333,000, would be deferred and would be payable upon entry of an order confirming a plan of reorganization that contemplates the distribution of securities of General Motors Company to general unsecured creditors, provided that the Debtors' estates are able to pay all allowed priority and administrative-expense claims without the necessity of selling such securities. Evercore also agreed to cap its reimbursable expenses at $20,000, even though it had incurred more than $550,000 in attorneys' fees and related expenses, the vast majority of which related to review of hard-copy and electronic documents responsive to discovery requests served in connection with the Debtors' asset sale.

4.      In light of these modifications, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Asbestos Personal Injury Claimants, and the United States Trustee withdrew or determined not to pursue their objections to the employment of Evercore. With the

exception of the United States Trustee, these parties also agreed that this Court's review of Evercore's compensation would be subject to the restrictive standard of Section 328(a) of the Bankruptcy Code.

## ARGUMENT

### I. Further Delay in the Allowance of Evercore's Fees Is Unnecessary.

5.　As discussed above, representatives of the parties in interest with the greatest stake in this case—general unsecured creditors and asbestos claimants—have considered the reasonableness of Evercore's fees already. Those creditors were able to evaluate Evercore's work after it had been completed and in light of the results obtained; they negotiated modifications to Evercore's fee structure; and they considered the resolution that they negotiated to be sufficiently protective of their interests that they were willing to be subject to the Section 328(a) standard of review. See generally In re XO Communications, Inc., 398 B.R. 106, 116 (Bankr. S.D.N.Y. 2008) (noting that "by the time of the retention, the parties were not speculating as to the work required of Houlihan").

6.　The additional delay requested by the Fee Examiner is unnecessary and inappropriate in the context of this case. This Court has before it a complete record on which to rule on the allowance of Evercore's fees and expenses. Evercore's Monthly Fees relate to services provided over a period of approximately six weeks last summer. Its NewCo Transaction Fee was triggered by the closing of the Debtors' asset sale last July. Evercore is no longer providing services to the Debtors and has no ability to control or guide the course of these cases in the future. Nevertheless, Evercore has agreed that payment of a substantial portion of its fees will be contingent on the confirmation of a plan that protects the interests of unsecured creditors.

3

7.     In short, the passage of time will not make Evercore's fees, in reality or in appearance, any more or less reasonable than they are today.  This Court should address Evercore's fees now and overrule the Fee Examiner's request for an open-ended delay.

**II.     Evercore's Fees Are Reasonable.**

8.     The Report questions the reasonableness of Evercore's fees, largely on three grounds.  First, the Fee Examiner suggests that Evercore added little value because there was no reasonable likelihood that any other purchaser would participate in the Debtors' asset sale (Report at 8-9).  Second, the Fee Examiner points out that Evercore was paid millions of dollars pre-petition (Report at 9).[2]  And third, the Fee Examiner suggests that a calculation of fees to be paid to Evercore divided by hours spent by Evercore—in each case purely on a post-petition basis—yields a high hourly rate (Report at 9).

9.     All three of these objections are related, and all are answered by the declarations already on file in connection with Evercore's retention.  Two supplemental declarations executed by William C. Repko of Evercore (docket nos. 2435 and 3756) and one filed by Walter Borst of the Debtors (docket no. 3773) demonstrate that Evercore's engagement was a mammoth undertaking, consuming almost all of the time of approximately 12 professionals for a year.  The reasonableness of Evercore's transaction fee cannot be measured solely by the amount of time required of Evercore.  See XO Communications, 398 B.R at 118 ("As long as the marketplace

---

[2] The Fee Examiner suggests that there is a discrepancy between the pre-petition payments reported to him by Evercore's counsel and the amount in Evercore's filings with this Court (Report at 9 n.4).  In fact, the amount of the purported discrepancy ($96,885.07) is precisely the amount of the pre-petition expenses incurred by Evercore in connection with the Delphi component of its engagement, as disclosed in paragraph 29 of the declaration supporting Evercore's employment application (Exh. B to docket no. 954).  Those expenses were not at issue in the first supplemental declaration cited by the Fee Examiner and thus were not discussed there.

4

perceives that the professional will be a major force contributing to achieving the goal, the marketplace does not concern itself with the amount of time spent by the professional to reach that goal."). But even if it could, the Court's analysis would need to consider the work that preceded the Debtors' short stay in Chapter 11. Like other investment banks, Evercore does not charge by the hour or maintain detailed time records in non-bankruptcy engagements, but the other statistics in Evecore's earlier declarations (12 bankers working nearly full time for 12 months; spreadsheets equivalent to 1 million printed pages; 169 bankers' boxes of emails and attachments for one banker alone) amply demonstrate that Evercore is not being rewarded simply for being in the right place at the right time.

10. The Fee Examiner does not discuss a more appropriate measure of reasonableness in this context: the compensation paid to other professionals in similar cases. See XO Communications, 398 B.R. at 113 (analysis of reasonableness of advisors' fees is "market driven"); 11 U.S.C. § 330(a)(3)(F) (referring to "customary compensation charged by comparably skilled practitioners in cases other than cases under this title"). Attached hereto as Exhibit A is a summary of financial-advisor compensation in the ten largest non-financial Chapter 11 cases filed from 2005 to 2009.[3] As the exhibit demonstrates, although Evercore's Monthly Fee, a relatively small component of Evercore's total compensation, was somewhat higher than in comparable cases, the NewCo Transaction Fee, as a percentage of debt, was less than or equal to the comparable fee in each of the other ten cases.

---

[3] This exhibit was attached originally to the Debtors' response to the objections to Evercore's employment application (docket no. 2441). It reflects information available as of June 24, 2009.

### III.  Evercore Does Not Dispute the Fee Examiner's Suggested Disallowance of Expenses.

11. The Fee Examiner has recommended that $1,042.34 in expenses sought by Evercore should be disallowed. Although Evercore disagrees with this recommendation and believes that all of its expenses are properly compensable, it does not make sense for the professionals involved to spend time and additional money arguing about the amounts involved, nor for the Court to be required to resolve these issues. Accordingly, Evercore does not dispute the recommended disallowance of the expenses identified by the Fee Examiner.

For the reasons set forth above, the Application should be granted, and, except for $1,042.34 in expenses identified by the Fee Examiner, the fees and expenses sought by Evercore should be allowed, subject to the payment condition included in the Retention Order.

Dated: April 28, 2010
St. Louis, Missouri

        BRYAN CAVE LLP

        /s/ Brian C. Walsh
        Brian C. Walsh
        One Metropolitan Square
        211 N. Broadway, Suite 3600
        St. Louis, MO  63102
        Telephone: (314) 259-2000
        Facsimile: (314) 259-2020

        Attorneys for Evercore Group L.L.C.