# Exhibit - 1

United States Court of Appeals,
Second Circuit.

# In re SONNAX INDUSTRIES, INC., Debtor.
# SONNAX INDUSTRIES, INC., Plaintiff-Appellee,
# v.
# TRI COMPONENT PRODUCTS CORP., Defendant-Appellant.

No. 955, Docket 89-5023.
Argued March 28, 1990.
Decided June 25, 1990.

Former employer of Chapter 11 debtor's employee moved to dismiss debtor's civil antitrust action against debtor and sought relief from stay so that former employer could pursue its own **state court antitrust suit against debtor and seek enforcement of state court preliminary injunction.** The United States District Court for the District of Vermont, 99 B.R. 591, Franklin S. Billings, Jr., Chief Judge, denied relief from stay, and former employer appealed. The Court of Appeals, Winter, Circuit Judge, held that former employer of Chapter 11 debtor's sales representative did not show cause for relief from stay to permit former employer to pursue state court antitrust litigation or to commence contempt proceedings against debtor to enforce preliminary injunction prohibiting debtor from doing business with entities which had previously been customers of former employer.

Affirmed.

## West Headnotes

[1] ☑ KeyCite Citing References for this Headnote

🔑 **51** Bankruptcy
    🔑 **51XIX** Review
        🔑 **51XIX(B)** Review of Bankruptcy Court
            🔑 **51k3766** Decisions Reviewable
                🔑 **51k3766.1** k. In General. Most Cited Cases
                (Formerly 51k3766)

Statute granting courts of appeals jurisdiction to hear appeals from final decision entered by district court on appeal from bankruptcy court did not grant Court of Appeals jurisdiction over appeal from order of district court denying motion for relief from stay, entered after district court withdrew reference from bankruptcy court, where district court was exercising original jurisdiction. 28 U.S.C.A. §§ 157(d), 158, 158(a, b), 1291, 1292(a)(1), (c).

[2] ☑ KeyCite Citing References for this Headnote

⌐51 Bankruptcy
  ⌐51XIX Review
    ⌐51XIX(B) Review of Bankruptcy Court
      ⌐51k3766 Decisions Reviewable
        ⌐51k3769 k. Relief from Automatic Stay. Most Cited Cases

    District court's denial of motion to lift automatic stay, in exercise of its original jurisdiction after withdrawing reference from bankruptcy court, was final order that could be appealed to Court of Appeals. 28 U.S.C.A. §§ 157(d), 158, 158(a, b), 1291.

[3] ☑ KeyCite Citing References for this Headnote

⌐51 Bankruptcy
  ⌐51XIX Review
    ⌐51XIX(B) Review of Bankruptcy Court
      ⌐51k3766 Decisions Reviewable
        ⌐51k3769 k. Relief from Automatic Stay. Most Cited Cases

    All denials of relief from automatic stay are final, appealable orders, regardless of reasons given for declining to lift stay. 28 U.S.C.A. §§ 158(d), 1291; Bankr.Code, 11 U.S.C.A. § 362.

[4] ☑ KeyCite Citing References for this Headnote

⌐51 Bankruptcy
  ⌐51IV Effect of Bankruptcy Relief; Injunction and Stay
    ⌐51IV(C) Relief from Stay
      ⌐51k2435 Proceedings
        ⌐51k2439 Evidence
          ⌐51k2439(5) Debtor's Burden
            ⌐51k2439(5.1) k. In General. Most Cited Cases
              (Formerly 51k2439(5))

    If party seeking relief from automatic stay on grounds of cause fails to make an initial of showing of cause, court should deny relief without requiring any showing from debtor that it is entitled to continued protection, **even though Bankruptcy Code places burden of proof on debtor for all issues other than debtor's equity in property. Bankr.Code, 11 U.S.C.A. § 362(d)(1), (g), (g)(1).**

[5] ☑ KeyCite Citing References for this Headnote

⌐51 Bankruptcy
  ⌐51IV Effect of Bankruptcy Relief; Injunction and Stay
    ⌐51IV(C) Relief from Stay
      ⌐51k2422 Cause; Grounds and Objections
        ⌐51k2422.5 In General
          ⌐51k2422.5(4) Particular Cases
            ⌐51k2422.5(4.1) k. In General. Most Cited Cases
              (Formerly 51k2422.5(4))

    Former employer of Chapter 11 debtor's sales representative did not show cause for relief from stay to permit former employer to pursue state court antitrust litigation against debtor or to commence contempt

proceedings against debtor to enforce state court preliminary injunction prohibiting debtor from doing business with entities which had previously been customers of former employer; state court injunction could have drastic impact on debtor's narrow portion of automobile parts market, former employer did not show that bankruptcy filing was in bad faith, lifting stay might doom attempt to reorganize, and bankruptcy proceeding provided single forum for resolution of disputed issues between debtor and former employer, as state court litigation had not yet reached discovery stage. Bankr.Code, 11 U.S.C.A. § 362(a)(1), (d), (d)(1).

*1281 John R. Canney, III, Rutland, Vt. (Hull, Webber, Reis & Canney, Rutland, Vt., of counsel), for defendant-appellant.

Potter Stewart, Jr., Brattleboro, Vt. (Kristensen, Cummings, Murtha & Stewart, Brattleboro, Vt., of counsel), for plaintiff-appellee.

## Before WINTER and WALKER, Circuit Judges, and MUKASEY, District Judge.[FN*]

FN* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

## *1282 WINTER, Circuit Judge:

This is an appeal from a denial of relief from the automatic stay provision of 11 U.S.C. § 362 (1988). 99 B.R. 591. Appellee Sonnax Industries, Inc. ("Sonnax") filed for bankruptcy after failing to obtain relief in New York state courts from an injunction prohibiting it from soliciting business from, or conducting business with, customers of appellant Tri Component Products Corporation ("Tri Component"). Following the bankruptcy filing, Tri Component moved to modify the automatic stay to allow it to continue prosecution of its state-court claim against Sonnax and the other defendants and to file motions for contempt for violation of the state-court injunction. Because we find that we have appellate jurisdiction and that the district court did not abuse its discretion in denying relief from the stay, we affirm.

## BACKGROUND

Sonnax was founded in 1977 as a Vermont corporation engaged in the manufacture of automobile parts, particularly transmission parts. In 1986, Sonnax began to manufacture torque converter parts.

Tri Component, a New York corporation, is a full-line manufacturer and distributor of torque converter parts with annual sales in excess of $7 million. It has developed a copyrighted numbering system of the parts it sells. In November 1982, Tri Component hired Lawrence May as sales manager of its torque converter department. At some point May signed a restrictive covenant in which he agreed not to use information or knowledge gained within three years of leaving his job at Tri Component. In September 1986, May left Tri Component and shortly thereafter was hired by Sonnax as an independent sales representative.

In May 1987, Tri Component filed an action in New York state court against Sonnax, its president Neil Joseph, and May, alleging that May had breached the restrictive covenant by using confidential knowledge gained at Tri Component, including Tri Component customer lists, in his job at Sonnax. Tri Component requested not only money damages but also injunctive relief. A preliminary injunction was granted on November 30, 1987, prohibiting Sonnax from soliciting business from, or doing business with, entities who had been customers of Tri Component prior to September 1986; from distributing or otherwise using a catalog referring to Tri Component's cataloguing and parts numbering system, copyrighted material and trade secrets; and from using Tri Component's customer list. On January 15, 1988, the three defendants appealed to the Appellate Division, First Department, and thereafter moved to stay the injunction pending the appeal. The motion was denied on March 8, 1988.

The next day Sonnax filed its petition for bankruptcy in the Bankruptcy Court for the District of Vermont. After Tri Component filed its proof of claim, it moved to modify the automatic stay of 11 U.S.C. § 362 to allow it to continue prosecution of its litigation in New York courts and to enforce the injunction. The motion was transmitted from the bankruptcy court to the district court pursuant to 28 U.S.C. § 157(d) (1982 & Supp. V 1987). The district court denied Tri Component's motion. Tri Component appealed.

# DISCUSSION

## 1. Jurisdiction

We first address the question of appellate jurisdiction. The procedural posture of this appeal is somewhat unusual. Ordinarily, a bankruptcy court would deny the motion to lift the stay, a decision reviewable on appeal by a district court under Section 158, 28 U.S.C. § 158(a) (1988). Because Section 158 grants courts of appeals "jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under" Section 158, only a "final" decision by a district court would be reviewable by a court of appeals. See 28 U.S.C. § 158(d).

[1] [2] In this case, however, **the district court was acting under Section 157(d), which authorizes district courts to "withdraw [from the bankruptcy court], in whole or in part, any case or proceeding referred *1283 under [Section 157]."** We hold that we do not have jurisdiction under Section 158, but the denial of the motion to lift the stay was a final appealable order under 28 U.S.C. Section 1291.

Section 158 grants courts of appeals jurisdiction to hear appeals from "final decisions ... entered under subsections (a) and (b) of [Section 158]." Subsections (a) and (b), however, concern only appeals heard by district courts from bankruptcy courts. Because the district court in the instant matter was exercising original jurisdiction under Section 157(d), we do not have appellate jurisdiction under Section 158. See United States v. Nicolet, Inc., 857 F.2d 202, 204 (3d Cir.1988).

We nonetheless have jurisdiction under DiPierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26 n. 4 (2d Cir.1982), although that decision has been followed in only modified fashion by other courts and has been impliedly criticized by a familiar commentator. Before addressing that criticism, we note that because we conclude that the order is final, we do not reach an issue, discussed in the margin,[FN1] that might otherwise complicate this case.

FN1. Although Section 158(a) authorizes district courts to hear appeals from interlocutory orders by discretionary leave of the district court, there is no provision for a court of appeals to review district court decisions reviewing interlocutory orders under Section 158(a). Where the district court exercises original jurisdiction under Section 157(d), review of final decisions by a court of appeals is under 28 U.S.C. § 1291. See Nicolet, at 204. Appellate jurisdiction over interlocutory orders issued by a district court under Section 157(d) arguably exists under 28 U.S.C. § 1292(a)(1), where such an order is deemed an injunction, or under 28 U.S.C. § 1292(b), where the district court certifies a question for appeal. See LTV Corp. v. Farragher (In re Chateaugay Corp.), 838 F.2d 59, 62-63 (2d Cir.1988) (28 U.S.C. § 1292 applicable to interlocutory decisions by district court sitting in bankruptcy). The existence of court of appeals review of some interlocutory orders issued under Section 157(d) but not of the identical kind of order issued originally by a bankruptcy court under Section 158 might seem anomalous. See Nicolet at 204. However, because we conclude the order here is final, we need not address the existence or ramifications of that anomaly.

The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation. The need for different standards arises from the fact that a bankruptcy proceeding is umbrella litigation often covering numerous actions that are related only by the debtor's status as a litigant and that often involve decisions that will be unreviewable if appellate jurisdiction exists only at the conclusion of the bankruptcy proceeding. See Dubin v. Securities & Exchange Comm'n (In re Johns-Manville), 824 F.2d 176, 179 (2d Cir.1987). We have thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that "finally dispose of discrete disputes within the larger case." Id. (quoting In re Saco Local Development Corp., 711 F.2d 441, 444 (1st Cir.1983)). This caselaw has developed, however, in the course of reviewing decisions under Section 158(d). Our cases appear not to have addressed the question of whether the standards for determining finality under Section 158(d) apply to bankruptcy appeals under Section 1291 or whether resort must be had to the principles established in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We perceive nothing to be gained by creating a second set of standards–which, when painstakingly developed, might not differ significantly from those already in place under Section 158(d)-for reviewing identical cases. We therefore follow the Third Circuit in holding that decisions regarding finality under Section 158(d) apply under Section 1291. See Nicolet, 857 F.2d at 205.

[3] 🖉 We now turn to the appealability of decisions on motions to lift or modify the automatic stay. All seem to agree that orders lifting the automatic stay are final because the issue of whether the litigation in question may proceed has been resolved and because an immediate appeal by the trustee or debtor is necessary if there is to be appellate review at all. See 1 Collier on Bankruptcy ¶ 3.03(6)(e), at 3-198 (L. King 15th ed. 1990). A modest controversy continues to exist, however, with regard to orders denying motions to lift or to modify the automatic stay, because such orders *1284 may seem not necessarily to preclude appellate review later on. The Collier text originally took the position that such orders are interlocutory. See 1 Collier on Bankruptcy ¶ 3.03(7)(e) (1981). However, in DiPierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26 n. 4 (2d Cir.1982) (citing Vicksburg v. Henson, 231 U.S. 259, 266-67, 34 S.Ct. 95, 97-98, 58 L.Ed. 209 (1913)), we expressly rejected the Collier view and stated broadly that the denial of relief from an automatic stay in bankruptcy is equivalent to a permanent injunction and is thus a final order. Other circuits have also held appeals from such denials to be reviewable by the court of appeals. See, e.g., Nicolet, 857 F.2d at 204-07; Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.), 801 F.2d 186, 189-90 (6th Cir.1986); Crocker Nat'l Bank v. American Mariner Indus., Inc. (In re American Mariner Indus., Inc.), 734 F.2d 426, 429 (9th Cir.1984); Aetna Life Ins. Co. v. Leimer (In re Leimer), 724 F.2d 744, 745 (8th Cir.1984); Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1309 (11th Cir.1982).

Most circuits, however, have stopped short of adopting the broad rule that all denials of relief from the automatic stay constitute final, appealable orders. In Nicolet, for instance, the Third Circuit held that the particular denial met "the required indicia for finality," 857 F.2d at 206, but indicated that not all orders

denying relief from the automatic stay were appealable. *See Id. at 206 n. 2* (citing *In re West Electronics Inc., 852 F.2d 79, 81-82 (3d Cir.1988); Moxley v. Comer (In re Comer), 716 F.2d 168, 174 & n. 11 (3d Cir.1983)).* The *Comer* decision was also critical of the *Collier* position but on grounds different from those expressed in *Taddeo. Comer* "caution [ed] that in some instances a permanent injunction that did not dispose of all the matters at issue might not be final under *section 1291.*" *716 F.2d at 174. Comer* noted nevertheless that on the facts of that case the order denying relief "became the law of the case in that court and resulted in a diminution of the creditors' secured debt." Moreover, the court stated that "[c]reditors were precluded from foreclosing on their mortgages and the effect of the order, therefore, was to make a reorganization possible at the expense of the creditors' interests." *Id.* Finally, the court concluded that "review which sufficiently protects the party's rights cannot be had at the close of the bankruptcy proceedings." *Id.*

Noting that many courts have concluded "that determinations granting or denying relief from the automatic stay are final decisions," 2 *Collier on Bankruptcy* ¶ 362.13, at 362-80 (L. King 15th ed. 1990) (citing *West Electronics, 852 F.2d at 79; Crocker, 734 F.2d at 426; Leimer, 724 F.2d at 744; Comer, 716 F.2d at 168),* the *Collier* text modified its position. It now states:

[i]t may very well be that whether an order refusing to lift a stay is interlocutory or final will depend upon the reason for the court's order. If ... the court refuses to lift the stay because it finds that the moving party does not have an interest in the property ..., the litigation between the parties has been finally determined and there is nothing further for the court to do. On the other hand, if the court were to find that there was an equity cushion in the property or for another reason the creditor was adequately protected, the creditor would be free to renew its request for relief from the stay at a later time in the case, and the requisite complete and final determination of the rights between the parties would not have been accomplished. In that situation, such an order can readily be held to be interlocutory.

1 *Collier on Bankruptcy* ¶ 3.03(6)(e), at 3-199 to 200 (citing *Nicolet, 857 F.2d at 206).*

Although the denial of the motion to lift the stay in the instant case might be final under the *Collier* analysis,[FN2] we believe that *\*1285* analysis is flawed. Allowing jurisdiction to turn on the reasons given for declining to lift the stay assumes those reasons are correct. For example, *Collier* offers as illustrations denials of relief from the stay on the grounds that an adequate equity cushion exists or that the creditor is otherwise adequately protected. However, if the court erred and if there is in fact insufficient equity cushion or lack of other protection for the creditor, the lack of an appeal from the denial of a motion will render the right to renew the motion later irrelevant. The *Collier* rule thus merges jurisdictional considerations with the merits. The jurisdictional ruling will necessarily require a full briefing of all issues and consume as much judicial resources as an appeal. The purpose of the finality rule, judicial economy, will not be served by the *Collier* analysis.

FN2. The factors enunciated in *Comer* and the revised *Collier* text are arguably present. The effect of the denial of relief from the stay is to prevent Tri Component from seeking enforcement of an injunction. Injunctive relief is premised in part on a showing of irreparable injury, and the inability to enforce that injunction may thus impose losses upon Tri Component that cannot be remedied by lifting the automatic stay sometime in the future.

Nor do we perceive in decisions such as *Nicolet* and *Comer* an approach that serves the purpose of judicial economy. Each seems to require an analysis that goes to the underlying merits concerning protection for the creditor. Such a rule will not deter parties who believe themselves injured by the automatic stay from appealing denials of motions to lift it. Once the appeal is taken, the appellate court will not be able to dispose of it without some consideration of the merits, and that consideration may well be confused by the merger of jurisdictional and substantive issues. We thus conclude that any approach short of *Taddeo* is likely to be wasteful of judicial resources. Moreover, we reaffirm our confidence in the

*Taddeo* analogy between the automatic stay and a permanent injunction. The stay seems to us to be the equivalent of such an injunction where the district court retains the power to modify as circumstances dictate.

## 2. The Merits

We turn now to the merits. Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of the commencement or continuation of judicial proceedings against the debtor. *See* 11 U.S.C. § 362(a)(1) (1988). Subsection (d) of Section 362, provides as follows, however:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1988).

[4] ☑ Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable. The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, **while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property,"** 11 U.S.C. § 362(g)(1). *See* 2 *Collier on Bankruptcy* ¶ 362.10, at 362-76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

[5] ☑ **Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance.** The Senate Report thus states:

The lack of adequate protection of an interest in property is one cause for relief, but is not the only cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose *1286 of the automatic stay, which is protection of the debtor and his estate from his creditors.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838.

Other legislative history indicates that the "facts of each request will determine whether relief is appropriate under the circumstances." H.R.Rep. No. 595, 95th Cong., 2d Sess. 343-44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6300.

In summarizing the caselaw under Section 362, *Collier* also mentions only a few specific circumstances amounting to "cause." It thus states:

**Actions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum.** Generally, proceedings in which the debtor is a fiduciary or which involve the postpetition activities of the debtor need not be stayed since they bear no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors. Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff. Finally, the liquidation of a claim may be more conveniently and speedily determined in another forum.

No specific mention is made of lack of prospects for rehabilitation, a common ground for vacating stays of foreclosure under the Act, though this factor relates to the prospects of an "effective" reorganization within section 362(d)(2)(B). Several changes elsewhere in the Code should reduce the importance of, but not eliminate this ground....

In extreme cases a finding that the bankruptcy case was not commenced in good faith has been used as a basis for vacating or annulling the automatic stay.

2 *Collier on Bankruptcy* ¶ 362.07(3), at 362-65 to -67 (footnotes omitted).

*In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984), **catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case;** (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; **(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;** (10) the interests of judicial economy and the expeditious and economical resolution of litigation; **(11) whether the parties are ready for trial in the other proceeding;** and (12) impact of the stay on the parties and the balance of harms. See *id.* at 799-800.

As one might anticipate from the unstructured nature of the issue, existing caselaw indicates that the "decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge," see *Holtkamp v. Littlefield (In re Holtkamp),* 669 F.2d 505, 507 (7th Cir.1982); *Rich v. Maryland Nat'l Bank,* 42 B.R. 350, 354 (D.Md.1984), and that we may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion. *Holtkamp,* 669 F.2d at 507.

We believe four of the *Curtis* factors are relevant to the instant case: (1) whether the New York proceeding is connected to or might interfere with the bankruptcy case; (2) whether the bankruptcy

petition was filed in bad faith; (3) the balance of harms; and (4) the interests of judicial economy and the expeditious and economical resolution of litigation.

With regard to factor (1), it is undeniable that the state-court proceeding is connected to, and would interfere with, the bankruptcy*1287 case. As the district court stated, the two matters were "inextricably intertwined." The state-court injunction bars Sonnax from doing business with any customers of Tri Component, its chief competitor, a prohibition that may have a drastic impact on a company in a narrow market.

Tri Component cannot avail itself of the second factor because it has failed to show bad faith. Tri Component relies on *In re Little Creek Development Co., 54 B.R. 510 (Bankr.N.D.Tex.1985),* in contending that Sonnax's filing of the bankruptcy petition "to obtain relief which the party could not obtain in a state court judicial proceeding constitutes bad faith." However, although neither party has noted it, the Fifth Circuit reversed the *Little Creek* decision. *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.), 779 F.2d 1068 (5th Cir.1986).* Although conceding that the lack of good faith may constitute cause under Section 362, the court held that a bankruptcy filing intended in part to gain relief from a state-court action does not necessarily constitute bad faith. *See id.* at 1073. *Little Creek* stated that a finding of bad faith under Section 362 usually requires a single-asset debtor or the absence of a going concern. *See id.* at 1072. Certainly, in such circumstances the bankruptcy filing may have as its only purpose a hope to relitigate a state court action. In the instant case, however, the state-court injunction, as Tri Component well knew, had the potential of transforming a going concern with other creditors into a dead competitor. So far as can be told on the present record, Sonnax faced the very real threat of being driven out of its market and filed the bankruptcy petition as a last resort. We conclude that the district court correctly found that Tri Component had failed to carry its burden in showing bad faith as cause for lifting the stay.

The third factor, the balance of harms, also supports the district court's decision. Whether or not the district court was correct in finding that Tri Component would not suffer a real hardship if the stay remained, the lifting of the stay might doom Sonnax's attempts to reorganize. While the state-court injunction would prevent Sonnax from doing much of its usual business, the stay permits both parties to compete. Counsel agree, moreover, that the Chapter 11 stay does not deprive Tri Component of the right to proceed against the other defendants, Joseph and May. The balance of harms therefore weighs in favor of Sonnax.

Fourth, the interests of judicial economy and the speedy and economical determination of litigation support a denial of relief from the stay. As became clear at oral argument, the litigation in state court has not progressed even to the discovery stage. We therefore agree with the district court that the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues between Sonnax and Tri Component.

Tri Component relies on two cases that are easily distinguishable. The first, *In re Cinnabar 2000 Haircutters, Inc., 20 B.R. 575 (Bankr.S.D.N.Y.1982),* holds that Chapter 11 should not be used to avoid a permanent injunction issued as part of a judgment entered before the bankruptcy petition. We need not address the merits of that proposition because it does not affect our conclusion. No judgment has been entered in the state litigation; discovery has not begun; and the injunction is a preliminary injunction–albeit with potentially draconian effects–that the appellate division merely declined to stay.

The other case urged on us by Tri Component, *Rudaw/Empirical Software Prods. Ltd. v. Elgar Electronics Corp. (In re Rudaw/Empirical Software Prods. Ltd.), 83 B.R. 241 (Bankr.S.D.N.Y.1988),* holds that in some circumstances a court may lift the stay so the creditor may proceed with contempt

proceedings. In *Rudaw,* the creditor, Elgar, sought relief from the stay in order to commence contempt proceedings against the debtor, Rudaw, in California state court for violation of a prepetition order preliminarily enjoining Rudaw from competing with Elgar in a particular computer software market. The facts of *Rudaw* are therefore somewhat similar to this case. The court in *Rudaw* held that

**\*1288** [a] state court prepetition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against a debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay. The automatic stay ... may not be used as a shield to sanction contumacious conduct in violation of a prepetition order enjoining a debtor from violating a party's property rights. Thus, where the terms of the order in question are specific and unambiguous, such order may be enforced by a contempt proceeding notwithstanding the fact that the contemnor is a debtor under the Bankruptcy Code.

*Id.* at 247 (citations omitted). The *Rudaw* court thus permitted contempt proceedings to proceed where the prepetition order was not related to property of the estate and when the order was specifically tailored to protect carefully defined property rights. The circumstances in the instant case are somewhat different. First, the prepetition order in the instant case states:

[T]he defendants are directed to deposit with ... the receiver appointed by this Court, all customer lists, customer related information, trade secrets, or any data or documents belonging to plaintiff Tri Component.

Whether or not these items were in the possession of Sonnax rightly, they are undeniably "claims or property of the estate" within the meaning of *Rudaw.* Second, the injunction in this case is not specifically tailored to particular property rights of Tri Component. Instead, it enjoins Sonnax "from ... soliciting business from or doing business with torque converter parts customers of Tri Component." Whereas the order in *Rudaw* enjoined the debtor from developing a particular product it had apparently pirated, Sonnax was prevented in the instant case from selling any products to any customers of Tri Component, whether or not the sales were shown to have resulted from a breach of May's contract.

At best, *Rudaw* demonstrates that the inquiry called for by motions to lift the automatic stay are very fact-specific and involve the weighing of numerous factors peculiar to the particular case. Necessarily, broad discretion is accorded to bankruptcy and district courts, and other decisions are useful far more for general guidance than as binding precedents.

Finally, Tri Component argues that the policies behind 28 U.S.C. § 1481 (1982 & Supp. V 1987), prohibit a bankruptcy court from enjoining another court. The statute provided that

[a] bankruptcy court shall have the powers of a court of equity, law and admiralty, but may not enjoin another court.

28 U.S.C. § 1481. However, Congress repealed this provision in 1984, and, in any event, the automatic stay provision operates by act of Congress rather than specific action by the bankruptcy court.

Because the lifting of the stay is committed to the sound discretion of the court and because Chief Judge Billings properly considered the factors determining cause, we must affirm his denial of relief from the stay.

Affirmed.

C.A.2 (Vt.),1990.
In re Sonnax Industries, Inc.

907 F.2d 1280, 23 Collier Bankr.Cas.2d 132

Briefs and Other Related Documents (Back to top)

• 1990 WL 10023221 (Appellate Brief) Reply Brief of Appellant (Feb. 16, 1990) Original Image of this
Document (PDF)
• 1990 WL 10023220 (Appellate Brief) Brief of the Appellee (Feb. 1990) Original Image of this
Document (PDF)
• 1990 WL 10023219 (Appellate Brief) Brief of the Appellant (Jan. 08, 1990) Original Image of this
Document (PDF)

Judges and Attorneys (Back to top)
Judges | Attorneys
Judges
• Billings, Hon F S Jr
United States District Court, Vermont
Vermont
Litigation History Report | Profiler

• Walker, Hon. John M. Jr.
United States Court of Appeals, Second Circuit
New York
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

• Winter, Hon. Ralph K.
United States Court of Appeals, Second Circuit
New York
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

Attorneys
Attorneys for Defendant
• Canney, John R. III
John R. Canney, III P.C.
Rutland, Vermont
Litigation History Report | Profiler

Attorneys for Plaintiff
• Stewart, Potter Jr.
Potter Stewart, Jr. Law Offices, P.C.
Brattleboro, Vermont
Litigation History Report | Profiler

END OF DOCUMENT

Exhibit - 2

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Motors Liquidation Company (f/k/a General Motors Corporation) | Case Number:<br>09-50026 (REG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Stanley R. Stasko**

Name and address where notices should be sent:
Stanley R. Stasko
27653 Lexington Pkwy
Southfield, Michigan 48076

Telephone number:
(313) 670-6917

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
Stanley R. Stasko
27653 Lexington Pkwy
Southfield, Michigan 48076

Telephone number:
(313) 670-6917

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $        **2,775,266.00**
**Final amount by U.S. District Court - E.D. Michigan**
If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

2. Basis for Claim:    **Civil Law Suit ; Case #2:09-CV-14827;E.D. Michigan**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: **4827**
**Last four digits from Case #2:09-CV-14827**
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property:$_____   Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. **Copy of Complaint and Exhibits from Civil Suit Case #2:09-CV-14827 U.S. District Court - E.D. Michigan**
If the documents are not available, please explain: **filed with Motion for Relief from Automatic Stay**

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date:<br>04/25/201[0] | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

Stanley R. Stasko 27653 Lexington Pkwy Southfield, Michigan 48076 ; #313-670-6917
**Pro Se Litigant**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit - 3

United States District Court,
E.D. Louisiana.

# Billy Ray EUBANKS
## v.
# ESENJAY PETROLEUM CORP.

Civ. A. Nos. 92-3150, 92-3152.
March 29, 1993.

Chapter 11 debtor brought two adversary proceedings against corporation, relating to debtor's alleged interests in a lease. The Bankruptcy Court dismissed the proceedings, and appeal was taken. The District Court, Sear, Chief Judge, held that abstention was appropriate.

So ordered.

## West Headnotes

[1] ☑ KeyCite Citing References for this Headnote

51 Bankruptcy
    51I In General
        51I(C) Jurisdiction
            51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
                51k2043(1) k. In General. Most Cited Cases

51 Bankruptcy ☑ KeyCite Citing References for this Headnote
    51I In General
        51I(C) Jurisdiction
            51k2060 Exclusive, Conflicting, or Concurrent Jurisdiction
                51k2060.1 k. In General. Most Cited Cases

**If inquiry is whether federal district court's bankruptcy jurisdiction over a civil proceeding arises under, arises in, or is related to cases under Title 11, it is irrelevant whether particular proceeding is "core" or "noncore"; district courts have original and concurrent jurisdiction over all civil proceedings that arise under, arise in, or are related to case under Title 11. 28 U.S.C.A. § 1334(a, b).**

[2] ☑ KeyCite Citing References for this Headnote

51 Bankruptcy
    51I In General

⟶ 51I(E) Reference
    ⟶ 51k2102 k. Issues Referrable; Automatic Reference. <u>Most Cited Cases</u>

**Proceedings that are outside scope of statute which gives federal district court bankruptcy jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 cannot be referred to bankruptcy court by federal district court. <u>28 U.S.C.A. § 157</u>.**

[3] ☑ <u>KeyCite Citing References for this Headnote</u>

⟶ <u>51</u> Bankruptcy
    ⟶ <u>51I</u> In General
        ⟶ <u>51I(C)</u> Jurisdiction
            ⟶ <u>51k2043</u> Core, Non-Core, or Related Proceedings in General; Nexus
                ⟶ <u>51k2043(2)</u> k. Core or Non-Core Proceedings. <u>Most Cited Cases</u>

Bankruptcy courts are given full judicial power over core proceedings. <u>28 U.S.C.A. § 157(b)</u>.

[4] ☑ <u>KeyCite Citing References for this Headnote</u>

⟶ <u>51</u> Bankruptcy
    ⟶ <u>51I</u> In General
        ⟶ <u>51I(C)</u> Jurisdiction
            ⟶ <u>51k2043</u> Core, Non-Core, or Related Proceedings in General; Nexus
                ⟶ <u>51k2043(3)</u> k. Related Proceedings. <u>Most Cited Cases</u>

Noncore proceedings that are "otherwise related to case under Title 11" may be heard by bankruptcy judge, but any final order or judgment must be entered by the federal district judge. <u>28 U.S.C.A. § 157(c)</u>.

[5] ☑ <u>KeyCite Citing References for this Headnote</u>

⟶ <u>51</u> Bankruptcy
    ⟶ <u>51I</u> In General
        ⟶ <u>51I(C)</u> Jurisdiction
            ⟶ <u>51k2043</u> Core, Non-Core, or Related Proceedings in General; Nexus
                ⟶ <u>51k2043(2)</u> k. Core or Non-Core Proceedings. <u>Most Cited Cases</u>

Initial determination of whether a proceeding that is referred to bankruptcy court is core or noncore is made by bankruptcy judge, rather than federal district court judge. <u>28 U.S.C.A. § 157(b)(3)</u>.

[6] ☑ <u>KeyCite Citing References for this Headnote</u>

⟶ <u>51</u> Bankruptcy
    ⟶ <u>51I</u> In General
        ⟶ <u>51I(C)</u> Jurisdiction
            ⟶ <u>51k2043</u> Core, Non-Core, or Related Proceedings in General; Nexus
                ⟶ <u>51k2043(3)</u> k. Related Proceedings. <u>Most Cited Cases</u>

When deciding whether federal district court has bankruptcy jurisdiction, test for determining if proceeding arises under Title 11, arises in case under Title 11, or is related to case under Title 11 is

whether outcome of proceeding could conceivably have any effect on the estate being administered in bankruptcy. 28 U.S.C.A. § 1334(a).

[7] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51XIV Reorganization
    🔗 51XIV(B) The Plan
      🔗 51k3566 Confirmation; Objections
        🔗 51k3568 Effect
          🔗 51k3568(1) k. In General. Most Cited Cases

Normally, the bankruptcy estate ceases to exist once plan of reorganization is confirmed by bankruptcy court. Bankr. Code, 11 U.S.C.A. § 1141(b).

[8] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51XIV Reorganization
    🔗 51XIV(B) The Plan
      🔗 51k3566 Confirmation; Objections
        🔗 51k3568 Effect
          🔗 51k3568(1) k. In General. Most Cited Cases

Bankruptcy court's jurisdiction continues postconfirmation to protect its confirmation decree, to prevent interference with execution of plan and to aid otherwise in its operation. 28 U.S.C.A. § 1334(a, b).

[9] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51I In General
    🔗 51I(C) Jurisdiction
      🔗 51k2048 Actions or Proceedings by Trustee or Debtor
        🔗 51k2049 k. State Law Claims. Most Cited Cases

🔗 51 Bankruptcy ☑ KeyCite Citing References for this Headnote
  🔗 51I In General
    🔗 51I(C) Jurisdiction
      🔗 51k2048 Actions or Proceedings by Trustee or Debtor
        🔗 51k2051 k. Recovery of Preferences or Fraudulent Conveyances. Most Cited Cases

Chapter 11 debtor's adversary proceedings, wherein debtor claimed interest in lease and asserted fraudulent transfer claim, fell within federal district court's bankruptcy jurisdiction under statute providing for jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C.A. § 1334(b).

[10] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51I In General
    🔗 51I(C) Jurisdiction
      🔗 51k2042 k. District Court Jurisdiction in General. Most Cited Cases

170B Federal Courts ☑ KeyCite Citing References for this Headnote
  170BI Jurisdiction and Powers in General
    170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
      170Bk47 Particular Cases and Subjects, Abstention
        170Bk47.5 k. Bankruptcy. Most Cited Cases
          (Formerly 170Bk47.1, 170Bk47)

While presence of state law issues does not preclude federal district court's bankruptcy jurisdiction, fact that the resolution of adversary proceedings turns entirely on state law is relevant to determination whether abstention is appropriate.

[11] ☑ KeyCite Citing References for this Headnote

170B Federal Courts
  170BI Jurisdiction and Powers in General
    170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
      170Bk47 Particular Cases and Subjects, Abstention
        170Bk47.5 k. Bankruptcy. Most Cited Cases
          (Formerly 170Bk47.1, 170Bk47)

Abstention was appropriate for Chapter 11 debtor's adversary proceeding where issues turned entirely on state law, and debtor's numerous claims against the defendant were, with the exception of the proceedings filed in bankruptcy court, being decided in state court forum. 28 U.S.C.A. § 1334(c)(1).

**460** Douglas Draper, Barbara Weiss, Friend, Wilson & Draper, New Orleans, LA, for plaintiff.

Robert Barkley, Jr., Barkley & Thompson, New Orleans, LA, Keith Remels, Jeffrey Pollicoff, Pollicoff, Smith & Myres, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

## SEAR, Chief Judge.

This is a consolidated appeal from two orders of the United States Bankruptcy Court for the Eastern District of Louisiana dismissing two adversary proceedings filed by debtor Billy Ray Eubanks against Esenjay Petroleum Corporation.[FN1] Eubanks filed **461** for relief under Chapter 11 of the Bankruptcy Code on August 7, 1986. On February 15, 1990, Eubanks' plan of reorganization was confirmed by the bankruptcy court. The confirmation order was affirmed by this Court on August 28, 1990.

FN1. According to Eubanks' complaints, Esenjay filed for relief pursuant to Chapter 11 of the Bankruptcy Code on December 29, 1987. A plan of reorganization was subsequently confirmed, although the parties have not indicated when that event occurred. Eubanks contends that he was never listed as a creditor of Esenjay and was not placed on the mailing matrix. See Complaint for Specific Performance and Accounting, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92-3150. Eubanks alleges that he only recently became aware of the operative facts giving rise to the claims asserted in these two adversary proceedings.

Eubanks' plan of reorganization provides, *inter alia,* that net income from producing oil and gas properties, after certain deductions are made, is to be deposited into a cash fund. Article 3.4 of Eubanks' Plan of Reorganization. Distributions to creditors are to be made from this cash fund. Article 3.5.

Both adversary proceedings concern events or omissions that occurred prior to the confirmation of the plan of reorganization. At issue are rights to property interests, typically leases, located in Jasper County, Mississippi.

The first adversary proceeding, filed on March 31, 1992, is a complaint for specific performance and accounting. *See* Complaint for Specific Performance and Accounting, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92-3150. Eubanks alleges that pursuant to a Joint Operating Agreement ("Agreement") executed in 1964, Esenjay had an obligation to assign to other parties to the Agreement upon demand interests in any lease acquired within a defined "Joint Area" in Jasper County, Mississippi. Eubanks asserts that Esenjay first acquired property subject to the Agreement in 1987, and that Esenjay subsequently acquired a lease subject to the assignment provision of the Agreement in 1989. Eubanks seeks the assignment of an interest in the lease acquired by Esenjay in 1989 and also an award of a percentage of the net proceeds attributable to the lease.

The second adversary proceeding, filed on April 27, 1992, seeks to rescind certain sales by Eubanks to Esenjay of property located within the Joint Area. *See* Complaint, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92-3152. The complaint alleges that on December 16, 1988, the bankruptcy court authorized the sale by Eubanks to Esenjay of two oil and gas leases within the Joint Area. Eubanks then executed an assignment pursuant to the bankruptcy judge's order. Eubanks alleges that the records of the Chancery Clerk of Jasper County, Mississippi indicate that Esenjay caused to be recorded a transfer of property interests owned by Eubanks but not covered by the December 16, 1988, bankruptcy court order.

Esenjay moved to dismiss both claims for lack of subject matter jurisdiction. The bankruptcy court granted both motions, *see* Memorandum Opinions, Exhibits 3 attached to both Memorandum in Support, and these appeals followed. I conclude that while these adversary proceedings fall within the broad grant of bankruptcy jurisdiction set out in 28 U.S.C. § 1334(b), abstention pursuant to 28 U.S.C. § 1334(c)(1) is warranted by the facts and circumstances surrounding both proceedings.

# *Discussion* [FN2]

[FN2.] Questions of law are reviewed *de novo* on appeal. *See, e.g., FRG, Inc. v. Manley,* 919 F.2d 850, 854 n. 8 (3rd Cir.1990).

## A. Bankruptcy Jurisdiction

Eubanks' appeal requires a brief discussion of the difference between the bankruptcy jurisdiction of a district court and the judicial power of a bankruptcy court.

[1] The statutory grant of bankruptcy jurisdiction to *district courts* is found in 28 U.S.C. § 1334(a) and (b). [FN3] District courts *462 have exclusive and original jurisdiction of all cases *under* Title 11 of the United States Code (i.e. the Bankruptcy Code). 28 U.S.C. § 1334(a). **District courts have original**

and concurrent jurisdiction over "all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Consequently, it is irrelevant whether a particular proceeding is "core" or "non-core" if the inquiry is whether that proceeding falls within the scope of 28 U.S.C. §§ 1334(a) and (b).

FN3. Section 1334, Title 28 of the United States Code, states,
  (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
  (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11....

    [2] ☑ Although district courts have full judicial power over all matters within the scope of §§ 1334(a) and (b), these matters typically are referred to the bankruptcy court of each district pursuant to 28 U.S.C. § 157(a), [FN4] which was passed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See generally Matter of Wood, 825 F.2d 90, 91 (5th Cir.1987)* (Wisdom, J.). This district is no exception. *See* Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, for cases filed in the Eastern District of Louisiana, filed August 2, 1984; Order of Reference of Bankruptcy Cases and Proceedings, for cases filed in, transferred to, or removed to the Eastern District of Louisiana, filed April 11, 1990. Proceedings outside the scope of 28 U.S.C. § 1334(a) and (b) cannot be referred to a bankruptcy court by a district court pursuant to 28 U.S.C. § 157.

FN4. Section 157(a), Title 28 of the United States Code, states,
Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

    A district court, *sua sponte,* may withdraw, in whole or in part, any case or proceeding referred to the bankruptcy court under 28 U.S.C. § 157(a). 28 U.S.C. § 157(d).

    [3] ☑ [4] ☑ [5] ☑ Section 157 is the legislative progeny of the Supreme Court's decision in *Northern Pipeline v. Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding unconstitutional the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549). Section 157 divides matters within the scope of §§ 1334(a) and (b) into "core" and "non-core" proceedings. Bankruptcy courts are given full judicial power over core proceedings. 28 U.S.C. § 157(b). Non-core proceedings that are "otherwise related to a case under title 11" may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district judge. 28 U.S.C. § 157(c).[FN5] The initial determination of whether a proceeding referred to a bankruptcy court is "core" or "non-core" is made by the bankruptcy judge. 28 U.S.C. § 157(b)(3).

FN5. By consent of the parties, a non-core but related proceeding may be determined by the bankruptcy judge. 28 U.S.C. § 157(c)(2).

Accordingly, it is necessary here to first determine whether Eubanks' adversary proceedings fall within the scope of 28 U.S.C. §§ 1334(a) and (b). Once that determination is made, then it is proper to identify the proceedings as either "core" or "non-core but related" matters.<u>FN6</u>

FN6. The Fifth Circuit in *Wood* outlined the analysis as follows:
[W]e must decide two issues: first, whether bankruptcy jurisdiction exists; second, *if jurisdiction does exist,* whether the bankruptcy court may proceed over this matter as a "core" or a "non-core" proceeding.

*Wood, 825 F.2d at 91* (emphasis added).

[6] ☑ Section 1334(a) refers to "cases under title 11." Although the exact boundaries of a case *under* Title 11 have not been precisely defined, <u>FN7</u> Eubanks' adversary proceedings clearly are not cases *under* Title 11. The outer perimeter of **463** § 1334(b), covering proceedings *arising under* Title 11, *arising in* a case under Title 11, or *related to* a case under title 11,<u>FN8</u> has been delineated by the following test:

FN7. *See* 1 Collier on Bankruptcy, ¶ 3.01, at 3-21 (15th ed. 1992) ("The 'case' referred to in section 1334(a) is the case upon which all of the proceedings which follow the filing of a petition are predicated. The filing of a petition for relief constitutes commencement of the title 11 case. From the beginning follow all of the proceedings, whether called controversies, contested matters, suits, actions or disputes, that will occur in the unfolding of the case under the Bankruptcy Code."); *see also Wood, 825 F.2d at 92* (case *under* title 11 "refers merely to the bankruptcy petition itself.").

FN8. For purposes of defining the scope of § 1334(b), it is not necessary to distinguish between cases arising under Title 11, proceedings arising in a case under Title 11, and proceedings related to a case under Title 11. *Wood, 825 F.2d at 93* ("These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.").

[W]hether the outcome of the proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.
*Wood, 825 F.2d at 93* ( quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis added)).

[7] ☑ [8] ☑ Unfortunately, the reference to the "estate" in the *Wood* test leads to some confusion since, normally, the debtor's "estate" ceases to exist once a plan of reorganization is confirmed by the bankruptcy court. See 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); *U.S. v. Unger,* 949 F.2d 231, 233 (8th Cir.1991). However, there is no dispute that a bankruptcy court's jurisdiction, which is derivative of the jurisdictional grant in §§ 1334(a) and (b), continues post-confirmation "to protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." *In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2nd Cir.1966).<u>FN9</u> See also *In re Almarc Corp.,* 94 B.R. 361, 365 (Bkrtcy.E.D.Pa.1988).

FN9. The Second Circuit, in *North American Car Corp. v. Peerless Weighing & Vending Machine Corp.,* 143 F.2d 938, 940 (2nd Cir.1944), cautioned that a district court's bankruptcy jurisdiction is not without limits:
We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization ... Since the purpose of reorganization is clearly to rehabilitate business and start it off on a new and to-be-hoped-for

more successful career, it should be the objective of courts to cast off as quickly as possible all leading
strings which may limit and hamper its activities and throw doubt upon its responsibility. It is not
consonant with the purposes of the Act, or feasible as a judicial function, for courts to assume to
supervise a business somewhat indefinitely.

In *In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373, 377 (Bkrtcy.E.D.Pa.1988), the court
observed,

Whether emanating from the general power of courts to enforce their decrees, *see generally* 11 U.S.C. §
105(a); *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 373-74 (5th Cir.1987) ( *en banc* ),
aff'd sub nom, *United Sav. Assoc. v. Timbers of Inwood Forest Assocs., Ltd.*, [484 U.S. 365] 108 S.Ct.
626 [98 L.Ed.2d 740] (1988); *In re Chinichian*, 784 F.2d 1440, 1442-43 (9th Cir.1986), or from specific
bankruptcy code sections such as 11 U.S.C. § 1112 (allowing for conversion or dismissal after
confirmation), § 1127 (allowing for plan modification after confirmation), § 1142 (allowing for plan
enforcement post-confirmation), and § 1114 (allowing for revocation of confirmation), there exists a
residue, albeit limited, of court authority over a confirmed chapter 11 case. *See, e.g., Goodman v. Phillip
R. Curtis Enterprises, Inc.*, 809 F.2d 228 (4th Cir.1987) (jurisdiction retained under § 1127); *In re Harlow
Properties, Inc.*, 56 B.R. 794 (B.A.P. 9th Cir.1985) (creditors may obtain specific performance against
debtors pursuant to § 1142).

The exact extent of a district court's [FN10] post-confirmation jurisdiction over a chapter 11 case has
been a source of disagreement among courts as they have attempted to balance the need to retain
jurisdiction post-confirmation with the need to end the reorganization process at some time. *See
generally, In re Pioneer Inv. Services Co.*, 141 B.R. 635, 640-41 (Bkrtcy.E.D.Tenn.1992); *In re Cinderella,
supra* at 376-77. **464** The Fifth Circuit in *Wood*, however, has stated its intention that the jurisdictional
grant of §§ 1334(a) and (b) is to be construed as broadly as possible. *Wood*, 825 F.2d at 93 (jurisdiction
exists if the "outcome of [the] proceeding could *conceivably* have any effect on the estate being
administered in bankruptcy") ( *quoting Pacor*, 743 F.2d at 994 (emphasis added)).[FN11] This liberal
interpretation of the jurisdictional grant has been noted favorably by a leading commentator on
bankruptcy law. 5 Collier on Bankruptcy, ¶ 1142.01, at 1142-3 (15th ed. 1992) ("So long as a chapter 11
case is 'open,' there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b)
with respect to civil proceedings arising under title 11 or arising in or related to cases under title 11.").[FN12]

FN10. Although the cases speak in terms of a bankruptcy court's post-confirmation jurisdiction, they are
relevant to the determination of whether post-confirmation jurisdiction exists pursuant to 28 U.S.C. §§
1334(a) and (b). *See* 28 U.S.C. § 157(a).

FN11. Subsequently, the Fifth Circuit stated that bankruptcy jurisdiction exists if the "outcome [of the
proceeding] could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way
impacts upon the handling and administration of the bankrupt estate." *Matter of Majestic Energy Corp.*,
835 F.2d 87, 90 (5th Cir.1988).

FN12. Eubanks also contends that a reservation of jurisdiction in his plan of reorganization itself confers
bankruptcy court jurisdiction over these adversary proceedings. I do not reach this issue.

It therefore appears that bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b) extends to
proceedings that have a " *conceivable* effect upon the administration of a bankruptcy case." *In re Almarc
Corp.*, 94 B.R. at 365. Proceedings that have a conceivable effect on the debtor's ability to consummate

the confirmed plan fall within the jurisdictional grant. *Id.; see also In re Pioneer*, 141 B.R. at 841; *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 110 B.R. 173, 184 (Bkrtcy.E.D.Pa.1990) (disputes that affect operation of confirmed plan as between interested parties, as well as patent ambiguities in the confirmed plan, are within bankruptcy jurisdiction).

[9] Eubanks' first adversary proceeding, claiming an interest pursuant to the Agreement in a lease obtained by Esenjay in 1989, could have a conceivable effect on Eubanks' ability to consummate the plan of reorganization. Eubanks' right to an interest in the lease allegedly arises out of his ownership of property interests within the Joint Area and subject to the Agreement. These property interests became part of Eubanks' estate upon the filing of Eubanks' Title 11 petition. 11 U.S.C. § 541(a)(1). Eubanks' complaint alleges that Esenjay was obligated by the Agreement to offer Eubanks an interest in the lease Esenjay acquired in 1989; had Esenjay made such an offer and had Eubanks accepted, the interest in the Esenjay lease would have become part of Eubanks' estate. 11 U.S.C. § 541(a)(7). More importantly, any net income from the interest in the Esenjay lease that Eubanks is claiming would be used to consummate the plan.

Similarly, Eubanks' second complaint alleges that property that otherwise was part of his estate was fraudulently transferred to Esenjay sometime after December 1988. This transfer was purportedly pursuant to the bankruptcy court's December 16, 1988, order. In brief, Eubanks accuses Esenjay of stealing his property. Not only was the allegedly converted property part of Eubanks estate, but any net income from this property would be used to consummate Eubanks plan of reorganization.

Under the broad definition of bankruptcy jurisdiction articulated by the Fifth Circuit in *Wood*, I conclude that Eubanks adversary proceedings fall within the bankruptcy jurisdiction set forth in 28 U.S.C. § 1334(b).

## B. Abstention

Section 1334(c)(1), Title 28 of the United States Code states,

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[FN13]

FN13. Section 1334(c)(1) does not allow a district court to abstain in "cases under title 11." Abstention under 28 U.S.C. § 1334(c)(2) is not applicable to these adversary proceedings. *See* 1 Collier on Bankruptcy, ¶ 3.01, at 3-77 (15th ed. 1992).

**\*465** The Fifth Circuit in *Wood* acknowledged that its broad interpretation of 28 U.S.C. § 1334 would "bring into federal court matters that should be left to state courts to decide." *Wood*, 825 F.2d 90, 93. Accordingly, the court observed that district courts have the "broad power to abstain [in a bankruptcy case] whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.' " *Id.* (quoting 28 U.S.C. § 1334(c)(1)).[FN14] Because abstention is appropriate under the facts and circumstances of this case, I do not reach the question of whether the adversary proceedings are "core" or "non-core" proceedings. *See* 28 U.S.C. § 157.

FN14. "The decision to grant ... abstention ... lies in the power of the district court and we will not reverse that decision unless the district court clearly abuses its discretion." *Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir.1990).


[10] ☑[11] ☑ Eubanks adversary proceedings are at heart state law claims rather than federal claims. All the property in question is located in Jasper County, Mississippi. The Joint Operating Agreement, including the assignment provision at issue in the first adversary proceeding, will be interpreted according to state law. The transfer of Eubanks' property subsequent to the December 15, 1988, order by the bankruptcy court was apparently conducted under state law.[FN15] While the presence of state law issues does not preclude bankruptcy jurisdiction, the fact that the resolution of these adversary proceedings will turn entirely on state law is relevant to the determination whether abstention is appropriate. Cf. *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bkrtcy.S.D.Tex.1987) ( citing *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940)).


FN15. According to Eubanks' complaint, a description of the two property interests (i.e. two leases) that Eubanks was authorized transfer was attached to the bankruptcy court's December 16, 1988, order. *See* Complaint, ¶ 10, Exhibit 1 attached to Memorandum in Support, Civil Action No. 92-3152. Eubanks alleges that he subsequently executed an assignment of property to Esenjay and attached to that assignment the same description that was attached to the December 16, 1988, order. *Id.* at ¶ 11. Eubanks alleges that a *different* description, describing property not authorized to be transferred, was then attached to the assignment before the assignment was recorded in Mississippi. *Id.* at ¶ 13. Thus, the complaint alleges that the assignment executed by Eubanks, and not the order of the bankruptcy court, was improperly altered.


Moreover, the torturous procedural history of Eubanks' claims against Esenjay cries out for abstention in the interest of justice. These consolidated proceedings are but one of *four* proceedings in which Eubanks' claims against Esenjay have been raised. The first proceeding was filed by Conquest Exploration Company ("Conquest") and New York Life Oil and Gas Operating Production Partnerships ("NYLOG") against Esenjay in the 157th District Court of Harris County, Texas ("Texas case"). The plaintiffs asserted numerous claims similar to those brought by Eubanks in these proceedings, including the claim that Conquest and NYLOG have rights to oil and gas interests in the Joint Area in Jasper County, Mississippi. Although Eubanks was not originally a party to the Texas case, Eubanks has intervened in the Texas case and has asserted his claims against Esenjay.


A second proceeding was filed by Esenjay in June 1992 against Eubanks, Conquest, NYLOG, and the American Exploration Company in the Chancery Court for the 2nd Judicial District of Jasper County, Mississippi ("Mississippi case"). This case involves the same claims being asserted here by Eubanks. The Mississippi case has been stayed in favor of the Texas case; Eubanks filed an election in the Mississippi case to subject all his claims against Esenjay to the jurisdiction of the Texas court.


A third action, which is essentially a parallel proceeding to these adversary proceedings, was filed by Eubanks against Esenjay in Louisiana state court. This case was removed to this Court by Esenjay, and the parties agreed to administratively close this case in favor of the Texas case.


**\*466** Therefore, with the exception of these adversary proceedings filed in bankruptcy court, Eubanks' claims against Esenjay are now being determined in one forum rather than in three. Eubanks himself has already agreed to defer prosecuting his claim in two other forums in favor of the Texas proceedings. I can discern no benefit, either to the judicial system or to the parties, in maintaining yet another forum for these claims.

Accordingly,

IT IS ORDERED that the orders of the bankruptcy judge granting defendant's motions to dismiss are REVERSED.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 157(d), the reference of plaintiff's adversary proceedings to the bankruptcy court is WITHDRAWN.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 1334(c)(1), plaintiff's adversary proceedings are stayed pending resolution of related proceedings in Texas state court.

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes. The parties shall inform the Court when proceedings in the Texas state court action are completed.

E.D.La.,1993.
Eubanks v. Esenjay Petroleum Corp.
152 B.R. 459

---

Judges and Attorneys (Back to top)
Judges | Attorneys
Judges
• Sear, Hon. Morey L.
United States District Court, Eastern Louisiana
Louisiana
Litigation History Report | Judicial Reversal Report | Profiler

---

Attorneys
Attorneys for Defendant
• Barkley, Robert E. Jr.
Barkley & Thompson, L.C
New Orleans, Louisiana
Litigation History Report | Profiler

• Pollicoff, Jeffrey Brian
Pollicoff, Smith & Remels, LLP
Houston, Texas
Litigation History Report | Profiler

• Remels, Keith M.
Dow Golub Remels & Beverly, LLP
Houston, Texas
Litigation History Report | Profiler

Attorneys for Plaintiff
• Draper, Douglas S.
Heller, Draper, Hayden, Patrick & Horn, L.L.C.
New Orleans, Louisiana

<u>Litigation History Report</u> | <u>Profiler</u>

- **Weiss, Barbara H.**
Current Firm Information Unknown
<u>Litigation History Report</u> | <u>Profiler</u>

**END OF DOCUMENT**

Exhibit - 4

United States Court of Appeals,
Fifth Circuit.

# In the MATTER OF James P. WOOD, M.D. and Carol B. Wood, Debtors.
# Dr. Arthur E. WOOD, III, Plaintiff-Appellant,
# v.
# Dr. James P. WOOD, Carol Wood, Woodrow Barham & Wayne Clinic, P.A., Defendants-Appellees.

No. 86-4510.
Aug. 26, 1987.

Action was brought against debtors and third party for wrongful appropriation of corporate assets. The Bankruptcy Court denied defendants' motion to dismiss for lack of subject matter jurisdiction and held that matter was core proceeding. On appeal, the United States District Court for the Southern District of Mississippi, Tom S. Lee, J., dismissed complaint for lack of subject matter jurisdiction, and plaintiff appealed. The Court of Appeals, Wisdom, Circuit Judge, held that: (1) action was within bankruptcy jurisdiction; (2) nondebtor defendant was properly joined as party; and (3) action was related, noncore proceeding.

Vacated and remanded.

## West Headnotes

[1] ☑ KeyCite Citing References for this Headnote

&#8212;51 Bankruptcy
&#8212;&#8212;51I In General
&#8212;&#8212;&#8212;51I(C) Jurisdiction
&#8212;&#8212;&#8212;&#8212;51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
&#8212;&#8212;&#8212;&#8212;&#8212;51k2043(2) k. Core or Non-Core Proceedings. Most Cited Cases
(Formerly 51k293(1))

The 1984 Bankruptcy Act did not change scope of bankruptcy jurisdiction set forth in 1978 Act, but rather altered placement of bankruptcy jurisdiction by creating statutory distinction between core and noncore proceedings and restricting power of bankruptcy court to adjudicate the latter. 28 U.S.C.A. § 1334.

[2] ☑ KeyCite Citing References for this Headnote

&#8212;51 Bankruptcy
&#8212;&#8212;51I In General

🔗 511(C) Jurisdiction
  🔗 51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
    🔗 51k2043(3) k. Related Proceedings. Most Cited Cases
    (Formerly 51k293(1))

    Test for whether matter is "related to" bankruptcy, within meaning of jurisdictional statute, is whether outcome of proceeding could conceivably have any effect on estate being administered in bankruptcy. 28 U.S.C.A. § 1334.

[3] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51I In General
    🔗 511(C) Jurisdiction
      🔗 51k2048 Actions or Proceedings by Trustee or Debtor
        🔗 51k2048.2 k. Core or Related Proceedings. Most Cited Cases
        (Formerly 51k2048(2), 51k293(1))

    Complaint seeking to recover stock and monies that debtors allegedly appropriated from corporation owned by debtors and plaintiff was sufficiently related to pending bankruptcy to allow district court to exercise jurisdiction, though alleged appropriation occurred postpetition, in that complaint raised dispute over division of ownership of corporation and postpetition appropriation could conceivably be considered income from prepetition property. 28 U.S.C.A. § 1334.

[4] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51I In General
    🔗 511(C) Jurisdiction
      🔗 51k2052 k. Claims or Proceedings Against Estate or Debtor; Relief from Stay. Most Cited Cases
    (Formerly 51k293(1))

    Bankruptcy court had jurisdiction over nondebtor, in plaintiff's complaint alleging liability resulting from joint conduct of debtor and nondebtor defendants, in that success against any of the defendants would have potential effect on debtors' estate. 28 U.S.C.A. § 1334.

[5] ☑ KeyCite Citing References for this Headnote

🔗 51 Bankruptcy
  🔗 51I In General
    🔗 511(C) Jurisdiction
      🔗 51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
        🔗 51k2043(2) k. Core or Non-Core Proceedings. Most Cited Cases
        (Formerly 51k293(1))

**If proceeding involves right created by federal bankruptcy law, or is one which would only arise in bankruptcy, it is core proceeding, but if proceeding does not invoke substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, it is noncore proceeding, though it may be related to bankruptcy because of its potential effect on debtor's estate. 28 U.S.C.A. § 157.**

[6] ⌨ KeyCite Citing References for this Headnote

◦◦◦51 Bankruptcy
◦◦◦51I In General
◦◦◦51I(C) Jurisdiction
◦◦◦51k2052 k. Claims or Proceedings Against Estate or Debtor; Relief from Stay. Most Cited
Cases
        (Formerly 51k293(1))

    Claim against debtors alleging appropriation of corporate assets was related, noncore proceeding in
that suit was not based on any right created by federal bankruptcy law and was not proceeding that could
arise only in context of bankruptcy. 28 U.S.C.A. § 157.

*91 Jim Waide, Estes & Waide, Tupelo, Miss., for plaintiff-appellant.

Craig M. Geno, Floyd M. Sulser, Bennett, Lotterhos, Sulser & Geno, Jackson, Miss., Stanford Young,
Waynesboro, Miss., for defendants-appellees.

William H. Leech, Thomas E. Williams, Kenneth W. Barton, Jackson, Miss., for Barham.

Appeal from the United States District Court for the Southern District of Mississippi.

## Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

## WISDOM, Circuit Judge:

    This appeal calls upon us to decipher the jurisdictional provisions of the Bankruptcy Amendments and
Federal Judgeship Act of 1984. A brief history of the Act may cast some light on the nature of our task.

    Years of effort to reform the bankruptcy laws culminated with the enactment of the Bankruptcy Reform
Act of 1978.[FN1] As part of its overall goal to create a more efficient procedure for administering
bankruptcies, the 1978 Act vested broad powers in the bankruptcy courts. This reform was short-lived. In
1982 the Supreme Court decided *Northern Pipeline v. Marathon.*[FN2] The Court declared the jurisdictional
provision of the 1978 Act unconstitutional because, in short, it vested Article III judicial power in Article I
judges. Courts were left to their own devices while Congress deliberated a response to *Marathon.* With
prompting from bench, bar, and law professors with expertise in bankruptcy, Congress responded with
the Bankruptcy Amendments and Federal Judgeship Act of 1984. Essentially, Congress reenacted the
1978 Act, but divided its jurisdictional grant into "core" proceedings, over which the bankruptcy courts
exercise full judicial power-and "otherwise related" or "non-core" proceedings-over which the bankruptcy
courts exercise only limited power. In this case, we must decide two issues: first, whether bankruptcy
jurisdiction exists; second, if jurisdiction does exist, whether the bankruptcy court may proceed over this
matter as a "core" or a "non-core" proceeding.

FN1. Pub.L. 95-598, 92 Stat. 2549.

FN2. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* provided the impetus for the new Act. See King, Jurisdiction and Procedure under the Bankruptcy Amendments of 1984, 38 Vand.L.Rev. 625 (1985); Note, The Bankruptcy Act of 1984; *Marathon* Revisited, 3 Yale L. & Pol.Rev. 231 (1984).

## I.

This case results from a dispute among the directors/stockholders of a medical clinic. In 1981, Dr. James Wood and Dr. Arthur Wood, III, formed the Wayne Clinic, P.A., each becoming the owner of 1000 shares of stock. In March of 1984, Dr. James Wood and his wife, Carol Wood, filed a Chapter 11 bankruptcy petition in the Southern District Court of Mississippi. In May of 1985, Dr. Arthur Wood filed a complaint in the same court is alleging that in November of 1984, Dr. and Mrs. James Wood and Woodrow Barham, acting together as directors of the clinic, wrongfully issued additional stock to Dr. James Wood. The complaint stated that in the Spring of 1985, Dr. James Wood received a disproportionate distribution from the clinic as the result of the wrongful stock issuance in violation of the agreement between Dr. James Wood and Dr. Arthur Wood that they were to be equal partners in the clinic. The complaint seeks damages and declaratory relief.

The bankruptcy judge of the district denied the defendants' motion to dismiss for lack of subject-matter jurisdiction and held that the matter was a core proceeding. On appeal to the district court, the court held **\*92** that the matter was neither a "core" proceeding, over which the bankruptcy judge had full judicial power, nor an "otherwise related" or "non-core" proceeding, over which the bankruptcy judge has limited judicial power. The court dismissed the complaint for lack of subject-matter jurisdiction. The plaintiffs appealed to this Court.

## II.

The starting point in our analysis is 28 U.S.C. § 1334. In relevant part this provision provides:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[FN3]

FN3. Pub.L. 98-353, 98 Stat. 333.

Section 1334 lists four types of matters over which the district court has jurisdiction:

1. "cases under title 11",

2. "proceedings arising under title 11",

3. proceedings "arising in" a case under title 11, and

4. proceedings "related to" a case under title 11.

The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction. Our concern, however, is with the other proceedings listed in subsection 1334(b), over which the district courts have original, but not exclusive, jurisdiction.

There is almost no legislative history to guide us in interpreting the 1984 Act. Subsection 1334(b), however, was taken verbatim from subsection 1471(b) of the 1978 Act.[FN4] The legislative history and judicial interpretations of that Act therefore are instructive.[FN5]

FN4. Section 1471(b) of the 1978 Act read, in pertinent part:
the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

FN5. *Carlton v. BAWW, Inc.,* 751 F.2d 781, 787 n. 7 (5th Cir.1985); *In re Salem Mortgage Co.,* 783 F.2d 626, 632-34 (6th Cir.1986); *In re Cemetery Development Corp.,* 59 B.R. 115, 119-21 (Bankr.M.D.La.1986).

Legislative history indicates that the phrase "arising under title 11, or arising in or related to cases under title 11" was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts.[FN6] Congress was concerned with the inefficiencies of piecemeal adjudication of matters affecting the administration of bankruptcies and intended to give federal courts the power to adjudicate all matters having an effect on the bankruptcy.[FN7] Courts have recognized that the grant of jurisdiction under the 1978 Act was broad.[FN8]

FN6. S.Rep. No. 989, 95th Cong., 2d Sess., 153-54 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5939-40.

FN7. *Id.*

FN8. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984); *In re Salem Mortgage Co.,* 783 F.2d 626, 633-34 (6th Cir.1986); *In re Cemetery Development Corp.,* 59 B.R. 115, 121 (Bankr.M.D.La.1986).

[1] Nothing in *Marathon* suggests that we should read the corresponding provisions of the 1984 Act differently. The jurisdictional provision of the 1978 Act, section 1471, accomplished two things. First, subsection (b) vested an expansive bankruptcy jurisdiction in the district courts.[FN9] Second, subsection (c) conferred the power to exercise that jurisdictional grant in the bankruptcy courts.[FN10] The issue in *Marathon*93 was not the constitutionality of subsection (b), but the constitutionality of subsection (c). *Marathon* held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges.[FN11] The holding in *Marathon*

suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by
Congress; its concern is with the *placement* of that jurisdiction in non-Article III courts. In response to
*Marathon*, Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction
between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the
latter. Because *Marathon* did not compel Congress to reduce the scope of bankruptcy jurisdiction, it
seems plain that Congress intended no change in the scope of jurisdiction set forth in the 1978 Act when
it later enacted section 1334 of the 1984 Act.


FN9. See note 4.


FN10. Section 1471(c) of the 1978 Act read:
The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the
jurisdiction conferred by this section on the district courts.


FN11. See *Marathon, 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615.*


   The district court expressed its concern that an overbroad interpretation of section 1334 would bring
into federal court matters that should be left to state courts to decide. We have also expressed the same
concern.^FN12 There is no necessary reason why that concern must be met by restrictive interpretations of
the statutory grant of jurisdiction under section 1334. The Act grants the district court broad power to
abstain whenever appropriate "in the interest of justice, or in the interest of comity with State courts or
respect for State law".^FN13 The abstention provisions of the Act demonstrate the intent of Congress that
concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of
federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.^FN14
Here, the possibility of abstention was not raised in the district court.^FN14a


FN12. See *Matter of Paso del Norte Oil Co., 755 F.2d 421, 425 (5th Cir.1985).*


FN13. 28 U.S.C. § 1334(c)(1).


FN14. *In re Salem Mortgage Co., 783 F.2d 626, 635 (6th Cir.1986).*


FN14a. On remand the district court may, of course, consider the abstention issue.


   [2] For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it
is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related
to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction.
Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. The
Act does not define "related" matters. Courts have articulated various definitions of "related", but the
definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the
outcome of that proceeding could *conceivably* have any effect on the estate being administered in
bankruptcy." ^FN15 This definition comports with the legislative history of the statutory predecessor to
section 1334. Neither *Marathon* nor general concerns of comity counsel against its use. We adopt it as
our own.

FN15. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis added); *accord In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986); *In re Globe Parcel Service,* 71 B.R. 323, 326 (E.D.Pa.1987); *In re World Financial Services Center, Inc.,* 64 B.R. 980, 988 (Bankr.S.D.Cal.1986); *In re Cemetery Development Corp.,* 59 B.R. 115, 121 (Bankr.M.D.La.1986).

[3] ☑ Applying this test to case before us, we find that the complaint is sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334. The complaint against the bankruptcy debtors could have a conceivable effect on their bankruptcy. The plaintiff seeks to recover stock and monies that the debtors allegedly appropriated from the clinic. They seek to resolve the disputed allocation of interest in the clinic. To the extent that the debtors' interest in *94 the clinic, their stock holdings, or their withdrawals are now property of the estate, the complaint against them has a potential effect on their estate.

The debtors argue that the complaint raises a post-petition claim that will not affect their bankruptcy.[FN16] Generally, post-petition claims are not dischargeable in bankruptcy and, therefore, do not affect the estate. [FN17] To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor.[FN18] Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no *conceivable* effect. First, the complaint raises a dispute over the division of ownership of the clinic. Because the debtors held their stock in the clinic before filing for bankruptcy, the disputed share is now part of the estate.[FN19] Second, the complaint seeks to recover stock and cash withdrawals made after the filing of the petition. Although post-petition acquisitions of the debtor are generally not part of the estate, they may be estate property in this case if considered income from pre-petition property.[FN20] We raise these possibilities, not to resolve them, for that matter is left to the district and bankruptcy courts to decide under federal law,[FN21] but to illustrate the conceivable effect of the complaint on the administration of the bankruptcy.

FN16. The complaint challenges the issuance of stock in November of 1984 and the withdrawal of money in Spring of 1985, both of which occurred after the filing of the bankruptcy petition in March of 1984.

FN17. *See* Weintraub & Resnick, Bankruptcy Law Manual ¶ 5.07 (1986).

FN18. *See In re Cemetery Development Corp.,* 59 B.R. 115, 121 & n. 13 (Bankr.M.D.La.1986).

FN19. *See* 11 U.S.C. § 541.

FN20. *See Id.* § 541(a)(6), 541(a)(7).

FN21. *See* 28 U.S.C. § 1334(d); *Texas v. Wellington Resource Corp.,* 706 F.2d 533, 536 (5th Cir.1983).

Defendant Woodrow Barham argues that even if the court has jurisdiction over the claims against Dr. James Wood and his wife, it does not have jurisdiction over him because he is not a debtor-in-bankruptcy. The Bankruptcy Rules incorporate the joinder provisions of the Federal Rules of Civil Procedure allowing the joinder of other defendants.[FN22] Joinder is allowed, however, only if an

Independent basis of federal jurisdiction exists to support the joined claim.[FN23] We find that the claim against Woodrow Barham is "related to" the Wood's bankruptcy and, thus, its joinder is jurisdictionally supported.

FN22. *See* Bankr.Rules 7018-7020.

FN23. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

[4] ☑ The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.[FN24]

FN24. *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986); *In re Zamost,* 7 B.R. 859 (Bankr.S.D.Cal.1980).

## III.

We have decided that subject-matter jurisdiction exists over this proceeding. We must now determine the placement of that jurisdiction. Our analysis turns to 28 U.S.C. § 157, the response of Congress to *Marathon* and its replacement for subsection 1471(c) of the 1978 Act. In contrast to *95 subsection 1471(c), section 157 does not give bankruptcy courts full judicial power over all matters over which the district courts have jurisdiction under section 1334. With respect to proceedings other than the bankruptcy petition itself, section 157 divides all proceedings into two categories. Subsection 157(b)(1) gives bankruptcy judges the power to determine "all core proceedings arising under title 11, or arising in a case under title 11" and to enter appropriate orders and judgments. Subsection 157(c)(2) gives the bankruptcy judge the limited power to hear "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" and to submit proposed findings of fact and conclusions of law to the district court, subject to de novo review. The essential distinction that must be made, therefore, is whether this action is a core or non-core proceeding.

The statute does not define core proceedings. Subsection (b)(2) does provide a nonexclusive list of examples, three of which are arguably relevant here:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate ...;

....; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....

We note that the last example is broadly worded; indeed, "proceedings affecting ... the estate" is similar in scope to the test of jurisdiction: proceedings having a "conceivable effect on the estate". We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act. That purpose is to conform the bankruptcy statute to the dictates of *Marathon*.[FN25]

FN25. Numerous courts have noted the necessity of defining core proceedings narrowly so as to conform to the constitutional proscription of *Marathon*. E.g., *Piombo Corp. v. Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986); *In re Satelco, Inc.*, 58 B.R. 781, 788 (Bankr.N.D.Tex.1986); *In re American Energy, Inc.*, 50 B.R. 175, 178 (Bankr.D.N.D.1985).

Specifically, *Marathon*, involved an adversarial proceeding brought by the debtor-in-bankruptcy on a pre-petition claim arising under state substantive law against a defendant who had not filed a claim in bankruptcy. A plurality of the Supreme Court held that the proceeding could not be adjudicated by the bankruptcy court. The exact extent of *Marathon*'s holding is subject to debate. Certain principles can be extracted from its opinions, principles that apparently have been incorporated into the 1984 Act.

Justice Brennan, writing for the plurality, held that only controversies involving "public rights", rights provided to an individual by Congress under one of its exceptional powers under the Constitution, may be removed from Article III courts and delegated to non-Article III tribunals.[FN26] Justice Brennan implicitly recognized that the exceptional powers of Congress under the bankruptcy clause may sometimes allow for such delegations of judicial power:

FN26. 458 U.S. at 69-70, 102 S.Ct. at 2870-71, 73 L.Ed.2d at 614.

But the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.[FN27]
FN27. *Id.* at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615 (emphasis added).

Concerning the latter controversy, he noted:

This claim may be adjudicated in federal court on the basis of its relationship to the petition for reorganization. But this relationship does not transform the state-created right into a matter between the Government and the petitioner for reorganization. Even in the absence of the *96 federal scheme, the plaintiff would be able to proceed against the defendant on the state-law contractual claims.[FN28]

FN28. *Id.* at 72 n. 26, 102 S.Ct. at 2872 n. 26, 73 L.Ed.2d at 615 n. 26.

Two points are suggested by this language. First, bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy or, in Justice Brennan's words, controversies "at the core of the federal bankruptcy power". Second, controversies that

do not depend on the bankruptcy laws for their existence-suits that could proceed in another court even in the absence of bankruptcy-are not core proceedings. These points are echoed by Chief Justice Burger in his dissent in which he characterized the plurality opinion as follows:

the Court's holding is limited to the proposition ... that a "traditional" state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Article III court". [FN29]

FN29. *Id.* at 92, 102 S.Ct. at 2882, 73 L.Ed.2d at 628 (Burger, C.J., dissenting).

Justice White expressed concern, however, that the plurality's holding placed too much emphasis on the existence of state law issues in the proceeding before bankruptcy court:

Second, the distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings.... The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy-claims for goods sold, wages, rent, utilities, and the like.... Every such claim must be filed and its validity is subject to adjudication by the bankruptcy court. The existence and validity of such claims recurringly depend on state law. Hence, the bankruptcy judge is constantly enmeshed in state-law issues.[FN30]

FN30. *Id.* at 96-97, 102 S.Ct. at 2884-85, 73 L.Ed.2d at 631 (White, J., dissenting).

Section 157 of the 1984 Act incorporates the principles suggested in the language of the *Marathon* opinions. The reference in the Act to "core" proceedings is taken directly from Justice Brennan's description of matters that involve the peculiar powers of bankruptcy courts. The Act describes non-core proceedings as "otherwise related", an apparent reference to Chief Justice Burger's description of the *Marathon* proceeding as "related only peripherally to an adjudication of bankruptcy". Mindful of the limitations of the plurality's holding and Justice White's observations concerning state law, Congress added: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." [FN31]

FN31. 28 U.S.C. § 157(b)(3).

The meaning of core proceedings is illuminated also by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.[FN32] Apparently, the phrase was taken from *97 28 U.S.C. § 1331, conferring federal question jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases.[FN33] In other words, "arising in"

proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

FN32. *See* 1 Collier on Bankruptcy ¶ 3.01 at 3-23 (1987).

FN33. *Id.* at 3-27.

[5] ☑ As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. **If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect,** but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by *Marathon*. Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11-matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings-matters that could arise only in bankruptcy.

[6] ☑ We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiff's suit is not based on any right created by the federal bankruptcy law. It is based on state created rights.[FN34] Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court.

FN34. We are mindful that, alone, this circumstance should not be dispositive. 28 U.S.C. § 157(b)(3).

The plaintiff argues that his action is literally a claim against the estate, which is expressly defined as a core proceeding by section 157(b)(2)(B).[FN35] We disagree. In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding.[FN36] The form of this action is not that of a "claim" as that term is used in bankruptcy law. A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules.[FN37] The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution.[FN38] Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim. *98 Here, the plaintiff has not filed a proof of claim and has not invoked the peculiar powers of the bankruptcy court.

FN35. "Core proceedings include ... (B) allowance or disallowance of claims against the estate...." 28 U.S.C. § 157(b)(2)(B).

FN36. See In re World Financial Services Center, Inc., 64 B.R. 980, 984-87 (Bankr.S.D.Cal.1986); In re Satelco, Inc., 58 B.R. 781, 786-89 (Bankr.N.D.Tex.1986).

FN37. See Bankr.Rules 3001-3002.

FN38. See In re Criswell, 44 B.R. 95 (Bankr.E.D.Va.1984); Distinguishing Core from Non-Core Proceedings, Norton Bankr.L.Adviser, No. 1, Jan. 1985, p. 2.

The substance of this action does not support a finding of core status. The essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law. The suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters.[FN39] Conceivably, a final judgment in this proceeding in the plaintiff's favor may lead to proceedings to allow the claim or to discharge the debt. At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding. The plaintiff's suit is not a core proceeding.

FN39. Cf. Matter of Colorado Energy Supply, 728 F.2d 1283, 1285-86 (10th Cir.1984) in which the court held that a claim for rents under state law was not a "traditional state claim" within the meaning of Marathon because the plaintiff sought also preferred status under the bankruptcy laws.

The judgment of the district court is VACATED and the case is remanded to the district court for further proceedings consistent with this opinion.

C.A.5 (Miss.),1987.
Matter of Wood
825 F.2d 90, 17 Collier Bankr.Cas.2d 743, Bankr. L. Rep. P 71,955

Briefs and Other Related Documents (Back to top)

• 1987 WL 880794 (Appellate Brief) Supplemental Brief of Appellant (Jun. 18, 1987)
• 1987 WL 880793 (Appellate Brief) Supplemental Brief of Appellees Dr. James P. Wood, Carol Wood and Wayne Clinic, P.A. (May. 19, 1987)
• 1987 WL 880792 (Appellate Brief) Supplemental Brief of Appellee Woodrow Barham (May. 18, 1987)
• 1986 WL 727709 (Appellate Brief) Brief of Appellees Dr. James P. Wood, Carol Wood and Wayne Clinic, P.A. (Nov. 12, 1986)
• 1986 WL 727708 (Appellate Brief) Brief of Appellee Woodrow Barham (Nov. 07, 1986)
• 1986 WL 727707 (Appellate Brief) Brief of Appellant (Sep. 22, 1986)
END OF DOCUMENT

Exhibit - 5

**STANLEY R. STASKO**
27653 Lexington Parkway
Southfield, Michigan, 48076
Tel. 248-552-0476
stasko@worldnet.att.net

July 20, 2005

Leyone Jackson
General Motors Powertrain Product Engineering
823 Joslyn
Pontiac, Michigan 48340

Re: Staley R. Stasko Employment Records

Dear Sir or Madam:

Stanley R. Stasko (Social Security #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) requires a complete copy of all
employment records pertaining to his work for General Motors Corporation from
approximately CY1978 to approximately CY1979 and from approximately CY1983 to
CY1995. Please inform me of any necessary release forms. I may be reached at the
above address if I can be of any assistance. Thank you for your attention to this
important matter.

Yours truly,

Stanley R. Stasko

SRS/ss





**STANLEY R. STASKO**
27653 Lexington Parkway
Southfield, Michigan, 48076
Tel. 248-552-0476
stasko@worldnet.att.net

August 8, 2005

Leyone Jackson
General Motors Powertrain Product Engineering
823 Joslyn
Pontiac, Michigan 48340

Re: Staley R. Stasko Employment Records

Dear Sir or Madam:

On July 20, 2005, Stanley R. Stasko (Social Security #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) requested a
complete copy of all employment records pertaining to his work for General Motors
Corporation from approximately CY1978 to approximately CY1979 and from
approximately CY1983 to CY1995. The request was made by U.S.A. Certified Mail with
Return Receipt. Please fulfill this request promptly. Please inform me of any necessary
release forms. I may be reached at the above address if I can be of any assistance. Thank
you for your attention to this important matter.

Yours truly,

Stanley R. Stasko

SRS/ss

Acknowledged by Stanley R Stasko before me on the
8th day of August, 2005

Audrey Lee

Notary public, State of Michigan, County of Oakland
My commission expires Dec 1, 2011
Acting in the County of Oakland





## STANLEY R. STASKO
27653 Lexington Parkway
Southfield, Michigan, 48076
Tel. 248-552-0476
stasko@worldnet.att.net

August 24, 2005

Leyone Jackson
General Motors Powertrain Product Engineering
823 Joslyn
Pontiac, Michigan 48340

Re: Staley R. Stasko Employment Records

Dear Sir or Madam:

On July 20, 2005, Stanley R. Stasko (Social Security #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) requested a complete copy of all employment records pertaining to his work for General Motors Corporation from approximately CY1978 to approximately CY1979 and from approximately CY1983 to CY1995. The request was made by U.S.A. Certified Mail with Return Receipt.

On August 8, 2005, Stanley R. Stasko (Social Security #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) requested a complete copy of all employment records pertaining to his work for General Motors Corporation from approximately CY1978 to approximately CY1979 and from approximately CY1983 to CY1995. The request was made by U.S.A. Certified Mail with Return Receipt.

Stanley R. Stasko is requesting this information per the Bullard Plawecki Employee Right to Know Act.

Stanley R. Stasko requests this information to:

1. determine his employment status at time of departure
2. determine the maximum position Stanley R. Stasko legally qualified for as a General Motors employee
3. look for possible discrimination by General Motors against Stanley R. Stasko (it is Stanley R. Stasko opinion that he can compile a reasonable argument that he should have been one or more levels higher than he was at the time of his departure)
4. look to see if Stanley R. Stasko legally qualifies to return to General Motors

Please note that a copy of this letter is being sent to:
Dan Galnat
Attorney
General Motors – Global Headquarters
300 General Motors Renaissance Center
P.O. Box 300
Detroit, Michigan
48265-3000

Please fulfill this request promptly. Please inform me of any necessary release forms. I
may be reached at the above address if I can be of any assistance. Thank you for your
attention to this important matter.

Yours truly,

Stanley R. Stasko

SRS/ss

STATE OF MICHIGAN
COUNTY OF OAKLAND

ON AUGUST 29, 2005, STANLEY R. STASKO PERSONALLY APPEARED
BEFORE ME. AND ENDORSED THE FOREGOING INSTRUMENT

KIM YOUNG
NOTARY PUBLIC

**KIM YOUNG**
Notary Public, Oakland County, Michigan
Acting in _____OAKLAND_____ County
My Commission Expires October 19, 2007



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | 0.60 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.65 |

UNIT ID: 0908

Postmark Here

Clerk: KRBVQ7

08/24/05

Sent To  LEYONE  JACKSON
Street, Apt. No.; or PO Box No.  GM POWERTRAIN PROD ENGR
  822  JOSLYN
City, State, ZIP+4  PONTIAC, MICH. 48340

PS Form 3800, June 2002        See Reverse for Instructions

7004 1350 0001 5313 3444



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LEYONE  JACKSON
GM POWERTRAIN
PROD. ENGR
823 JOSLYN
PONTIAC, MICH.
48340

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)        7004 1350 0001 5313 3444

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

7004 1350 0001 5313 1389

DETROIT, MI 48205

| Postage | $ | 0.60 | UNIT ID: 0908 |
| Certified Fee | | | |
| Return Receipt Fee (Endorsement Required) | | 2.30 | Postmark Here |
| | | 1.75 | |
| Restricted Delivery Fee (Endorsement Required) | | | Clerk: KRBVG7 |
| Total Postage & Fees | $ | 4.65 | 08/24/05 |

Sent To
DAN GALNAT
Street, Apt. No.; or PO Box No.
GM - GLOBAL HEADQUARTER
300 GM RENAISSANCE CTR
P.O. BOX 300
City, State, ZIP+4
DETROIT, MICH 48265-3000

PS Form 3800, June 2002     See Reverse for Instructions

---

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X a           ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
AUG 2 6 2005

1. Article Addressed to:

DAN GALNAT
GM - GLOBAL HQ.
300 GM RENAISSANCE CTR
P.O. BOX 300
DETROIT, MICH.
48265-3000

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7004 1350 0001 5313 1389

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

Exhibit - 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STANLEY R. STASKO
27653 Lexington Pkwy Southfield, Michigan 48076
#313-670-6917
Appellant
Creditor – U.S. Bankruptcy Court – S.D. of N.Y.; Case # 09-50026 (REG)
Plaintiff – U.S. District Court – E.D. of Mich.; Case # 2:09-CV-14827
Pro Se Litigant

V                                          Case No. _____
                                           Honorable_____

MOTORS LIQUIDATION COMPANY
(f/k/a GENERAL MOTORS CORPORATION)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
#212-310-8000
Appellee
Debtor – U.S. Bankruptcy Court – S.D. of N.Y.; Case # 09-50026 (REG)
Defendant – U.S. District Court – E.D. of Mich.; Case # 2:09-CV-14827

Attorney for Debtors
And Debtors in Possession

## NOTICE OF APPEAL

Stanley R. Stasko, the Appellant and Creditor, appeals the entire Order

Denying Motion of Stanley R. Stasko for Relief from the Automatic Stay signed by

Honorable Robert E. Gerber, United States Bankruptcy Judge of the Southern District of

New York on April 21, 2010 (Docket #5532).

The names, addresses, and telephone numbers of the parties to be served

are listed below.

Dated: April 30, 2010          _____
                               Stanley R. Stasko
                               27653 Lexington Pkwy Southfield, Michigan 48076
                               #313-670-6917
                               Appellant - Pro Se Litigant

List of parties to be served:

Stanley R. Stasko
27653 Lexington Pkwy
Southfield, Michigan 48076
Telephone: (313) 670-6917
Appellant and Creditor
Pro Se Litigant

Motors Liquidation Company
(f/k/a General Motors Corporation)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Appellee and Debtor

Attorney for Debtors
and Debtors in Possession

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                 :

In re                             :          Chapter 11 Case No.
                                   :

MOTORS LIQUIDATION COMPANY, *et al.*,   :          09-50026 (REG)
    f/k/a General Motors Corp., *et al.*      :

                                   :

                    Debtors.        :          (Jointly Administered)
                                   :
------------------------------------------------------x

## ORDER DENYING MOTION OF STANLEY R. STASKO FOR RELIEF FROM THE AUTOMATIC STAY

Upon the motion, dated February 19, 2010 of Stanley R. Stasko [Docket No. 5151] (the "**Motion**"), requesting relief from the automatic stay to proceed with case number 09-14827 (the "**Michigan Case**"), currently pending in the United States District Court for the Eastern District of Michigan (the "**Michigan Court**"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and Motors Liquidation Company and its affiliated debtors having filed their opposition to the Motion [Docket No. 5390] (the "**Opposition**"); and the Court having held a hearing to consider the requested relief on April 8, 2010 (the "**Hearing**"); and based upon the

Motion, the Opposition, and the record of the Hearing, and all of the proceedings before

the Court, it is

ORDERED that for the reasons set forth on the record of the Hearing, the

Motion is DENIED; and it is further

ORDERED that Mr. Stasko shall give notice of this ruling to the Michigan

Court; and it is further

ORDERED  that Mr. Stasko shall withdraw the Michigan Case; and it is

further

ORDERED this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement

of this Order.

Dated: New York, New York
     April 21, 2010

                         *s/ Robert E. Gerber*
                         THE HONORABLE ROBERT E. GERBER
                         UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

## AFFIRMATION OF SERVICE

A copy of the (1) Notice of Appeal has been served upon the Debtor in the manner

indicated below:

Name of Debtor Served:          Motors Liquidation Company

                                (f/k/a General Motors Corporation)

                                Weil, Gotshal & Manges LLP

                                767 Fifth Avenue New York, New York 10153

Date of Service: May 1, 2010

Method of Service and Declaration: I, Stanley R. Stasko, served Debtor by U.S. Priority

mail a copy of the above specified items. I declare the information contained in this

Affirmation of Service is true and correct.

Signature of Server: _____

Server's Address: 27653 Lexington Pkwy Southfield, Michigan 48076 #313-670-6917

UNITED STATES POSTAL SERVICE®

Home | Help | Sign In

NOTICE OF APPEAL

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **EB30 3719 616U S**
Guaranteed Delivery Date/Time: **May 3, 2010, 3:00 PM**
Class: **Express Mail®**
Status: **Delivered**

Track & Confirm
Enter Label/Receipt Number.
Go >

Your item was delivered at 2:44 PM on May 3, 2010 in NEW YORK, NY 10004. The item was signed for by K CAPPIELLO.

Detailed Results:

- **Delivered, May 03, 2010, 2:44 pm, NEW YORK, NY 10004**
- **Arrival at Post Office, May 03, 2010, 1:17 pm, NEW YORK, NY 10004**
- **Processed through Sort Facility, May 01, 2010, 5:13 pm, DETROIT, MI 48242**
- **Acceptance, May 01, 2010, 12:51 pm, DETROIT, MI 48233**

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. Go >

**Proof of Delivery**

Verify who signed for your item by email, fax, or mail. Go >

Copyright© 2010 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

