**HEARING DATE AND TIME: May 27, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: May 20, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                         :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
|                       **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## NOTICE OF HEARING ON THIRD MOTION OF DEBTORS
## FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 1121(d)
## EXTENDING PERIODS IN WHICH DEBTORS MAY FILE
## CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

      PLEASE TAKE NOTICE that upon the annexed Motion, dated May 13, 2010

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors (the "**Debtors**"), for an order, pursuant to section 1121(d) of title

11, United States Code extending the Debtors' exclusive periods in which to file a chapter 11

plan and solicit acceptances thereof, as more fully set forth in the Motion, a hearing will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **May 27, 2010 at 9:45 a.m. (Eastern Time),** or as soon

thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Amy Caton, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G.

Adams, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.), so as to be received no later than **May 20, 2010, at 4:00 p.m. (Eastern

Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
       May 13, 2010

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**HEARING DATE AND TIME: May 27, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: May 20, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                         :
In re                                    :    Chapter 11 Case No.
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :    09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                         :
                    Debtors.             :    (Jointly Administered)
                                         :
------------------------------------------------------------x
```

## THIRD MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING EXCLUSIVE PERIODS IN WHICH DEBTORS MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................... i

Summary of Relief Requested ............................................................................................ 1

Jurisdiction ............................................................................................................................ 4

Basis for Relief Requested .................................................................................................. 5

A.    The Debtors' Cases Are Large and Complex ................................................. 7

B.    Substantial Good Faith Progress Has Been Demonstrated ................................ 9

C.    The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit
       to the Debtors' Demands ............................................................................... 10

D.    Important Contingencies Must Be Resolved by the Debtors ........................................... 12

E.    The Debtors Are Making Required Postpetition Payments As They Come Due
       and Have the Ability to Continue to Do So .................................................... 16

Conclusion ......................................................................................................................... 16

Notice .................................................................................................................................. 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...........6, 7, 12, 16

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich 1997) ...................................6

*In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) ..............................6, 7

*In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987) ...................................6, 7

*In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987)........................................8, 11, 16

*In re United Press Int'l, Inc.*, 60 B.R. 265 (Bankr. D.C. 1986)..........................................7

### STATUTES

11 U.S.C. § 363.................................................................................................................8
11 U.S.C. § 1121.........................................................................................................5, 13
11 U.S.C. § 1121(d) .......................................................................................................2, 5
11 U.S.C. § 1121(d)(2) .....................................................................................................5
28 U.S.C. § 157.................................................................................................................4
28 U.S.C. § 157(b)............................................................................................................4
28 U.S.C. § 1334...............................................................................................................4

### MISCELLANEOUS

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...........................6, 7

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

   Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors (collectively, the "**Debtors**"), respectfully represent:

**Summary of Relief Requested**

   1.  By order dated September 15, 2009, this Court granted four of the Debtors (the "**Initial Debtors**")[1] a four-month extension of the initial period during which they have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and the period to obtain acceptances of such plan (the "**Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") through and including January 27, 2010 and March 29, 2010, respectively; and by order dated January 6, 2010, this Court granted the Initial Debtors a further extension of their Exclusive Periods through and including May 27, 2010 and July 27, 2010, respectively (collectively, the "**Initial Debtors' Extended Exclusive Periods**"), pursuant to section 1121(d) of title 11, United States Code (the "**Bankruptcy Code**").

   2.  Two additional Debtors (the "**Realm/Encore Debtors**")[2] commenced voluntary chapter 11 cases on October 9, 2009, and by this Court's order dated January 6, 2010, their Exclusive Periods were extended for all of the Debtors through and including May 27, 2010 and July 27, 2010, respectively (the "**Realm/Encore Debtors' Extended Exclusive Periods**,"

---

[1]  The Initial Debtors are comprised of (i) Motors Liquidation Company (f/k/a/ General Motors Corporation); (ii) MLCS, LLC (f/k/a Saturn, LLC); (iii) MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation); and (iv) MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.).

[2]  The Realm/Encore Debtors are comprised of (i) Remediation and Liability Management Company, Inc., and (ii) Environmental Corporate Remediation Company, Inc.

and together with the Initial Debtors' Extended Exclusive Periods, the "**Debtors' Extended Exclusive Periods**").

3.       By this Motion, the Debtors request a further extension of the Debtors' Extended Exclusive Periods for approximately four months, through and including September 27, 2010 and November 29, 2010, respectively, pursuant to section 1121(d) of the Bankruptcy Code, without prejudice to the Debtors' right to seek additional extensions thereof.

4.       Since these historic cases were commenced, the Debtors have been diligently laboring, in cooperation with their creditors, particularly the statutory committee of unsecured creditors (the "**Creditors' Committee**"), to maximize values for their stakeholders and resolve impediments to the Debtors' exit from chapter 11.  The Debtors have continued to move expeditiously towards the formulation of a chapter 11 plan, primarily in the development of strategies necessary to satisfy the prerequisites of the chapter 11 plan process.  However, additional time is required to propose a confirmable chapter 11 plan.

5.       During the last ten months, the Debtors have successfully

(i)     completed the 363 Transaction (as defined below) in a 39-day time frame to NGMCO, Inc. (n/k/a General Motors LLC) ("**New GM**");

(ii)    filed their schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**");

(iii)   established a claims bar date for (a) the Initial Debtors (the "**Initial Debtors' General Bar Date**"),[3] which was then supplemented to allow entities residing adjacent to or in the proximity of certain Initial Debtors' properties to file a proof of claim with respect to their person or real property arising from being located adjacent to or in the proximity of certain Initial Debtors' properties (the "**Initial**

---

[3]       On September 16, 2009, this Court entered an order [Docket No. 4079] establishing November 30, 2009 as the deadline for each person or entity, including governmental units, to file a proof of claim against the Initial Debtors.

**Debtors' Property Bar Date**")[4] and (b) the Realm/Encore Debtors (the "**Realm/Encore Debtors' Bar Date**,"[5] and together with the Initial Debtors' Bar Date and the Initial Debtors' Property Bar Date, the "**Bar Dates**");

(iv)  established an alternative dispute resolution procedures (the "**ADR Procedures**")[6] to facilitate the efficient resolution of a large number of the unliquidated and litigation claims (collectively, the "**Unliquidated/Litigation Claims**") filed against the Debtors;

(v)  continued to interact with federal, state, and local agencies regarding the treatment of environmental claims and obligations;

(vi)  assisted in the formation of a statutory committee of asbestos claimants and provided information and resources to facilitate a dialogue regarding treatment of present and future claims under a chapter 11 plan; and

(vii)  continued to evaluate, reconcile, and address the billions of dollars in claims that have been asserted against the Debtors.

6.  Notwithstanding the significant progress the Debtors have made thus far, ongoing analyses of the assets and liabilities of the Debtors must be completed before a confirmable chapter 11 plan can be proposed and fully negotiated with the Debtors' constituents. Extending the Exclusive Periods will allow for the completion of these tasks without the

---

[4]  On December 18, 2009, this court entered an order [Docket No. 4681] establishing February 10, 2010 as the deadline for entities residing adjacent to or in the proximity of certain Initial Debtors' properties to file a proof of claim with respect to their person or real property arising from being located adjacent to or in the proximity of such properties.

[5]  On December 2, 2009, this Court entered an order [Docket No. 4586] establishing (i) February 1, 2010 as the deadline for each person or entity to file a proof of claim against the Realm/Encore Debtors and (ii) April 16, 2010 as the deadline for governmental units to file a proof of claim against the Realm/Encore Debtors.

[6]  On February 23, 2010, this Court entered an Order [Docket No. 5037], which was recently supplemented on April 29, 2010 [Docket No. 5673], establishing ADR Procedures for (a) personal injury claims, (b) wrongful death claims, (c) tort claims, (d) product liability claims, (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code (excluding claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters), (f) indemnity claims (excluding indemnity claims relating to asbestos liability), (g) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"), (h) warranty claims, to the extent applicable under section 6.15 of the MPA, and (i) class action claims.

distraction and delay that would inevitably result were competing plans to be filed. While the

Debtors desire to complete the chapter 11 plan process as quickly and efficiently as possible, in

these circumstances, the requested extension will facilitate, rather than delay, the confirmation of

workable plans.

7.      As discussed more fully below, ample cause exists to further extend the

Exclusive Periods because, *inter alia*, (i) the Debtors' cases are large and complex; (ii)

substantial good faith progress has been demonstrated; (iii) the Debtors are not seeking to use

exclusivity to pressure creditors into accepting a plan they find unacceptable; (iv) important

contingencies must be resolved; and (v) the Debtors have been paying their postpetition

obligations as they become due. Courts well recognize the benefits and practical necessities of

extending a debtor's exclusive periods in large, complex cases, particularly when there is no

indication the debtor is abusing the chapter 11 process through such extensions. Here, the

Debtors and the Creditors' Committee have worked, and continue to work, constructively and

have had several meeting to discuss plan structure and gating issues. Moreover, the Debtors

have already engaged the Asbestos Committee (as defined below) and the Future Asbestos

Representative (as defined below) in these discussions. The vital components underlying a

chapter 11 plan are being developed as rapidly as possible. Further, the relief requested will

allow the Debtors to continue their efforts to wind down their estates in an orderly, efficient, and

cost-effective manner and, most importantly, afford the Debtors a full and fair opportunity to

negotiate, propose, and seek acceptances of a confirmable chapter 11 plan.

### Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Basis for Relief Requested**

9.      Section 1121(d) of the Bankruptcy Code permits this Court to extend the

Debtors' Exclusive Periods upon a demonstration of cause:

> [O]n request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section and after
> notice and a hearing, the court may for cause reduce or increase the
> 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).  However, the 120-day period "may not be extended beyond a date that is

18 months after the [commencement] date" and the 180-day period "may not be extended

beyond a date that is 20 months after the [commencement] date."  *Id.* § 1121(d)(2).  As described

below, the Debtors submit ample cause exists to extend their Exclusive Periods.

10.     The Exclusive Periods provided by Congress were incorporated in the

Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual plan and

solicit acceptances of such plan without the deterioration and disruption of a debtor's business

that might be caused by the filing of competing plans by non-debtor parties.  Indeed, the primary

objective of a chapter 11 case is the formulation, confirmation, and consummation of a

consensual chapter 11 plan, and it is the intention of the Debtors to achieve this objective.  To

terminate the Exclusive Periods in these chapter 11 cases before the process of plan negotiation

has been completed is to defeat the very purpose of section 1121 of the Bankruptcy Code.

11.     Where the exclusive periods provided for in the Bankruptcy Code prove to

be an unrealistic time frame, section 1121(d) of the Bankruptcy Code allows the bankruptcy

court to extend a debtor's exclusive periods for cause.

12.     The Bankruptcy Code neither defines the term "cause" for purposes of

section 1121(d) nor establishes formal criteria for an extension.  The legislative history indicates,

however, that it is intended to be a flexible standard to balance the competing interests of a

debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts flexibility to

protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts

without interference from other parties in interest).

   13. In determining whether cause exists to extend the Exclusive Periods, a

court may consider a variety of factors to assess the totality of circumstances in each case.  *See*

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying

"objective factors which courts historically have considered in making determinations as" to

whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87

B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether

cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D.

Mich 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Those

factors include, without limitation:

   (a) the size and complexity of the debtor's case;

   (b) the necessity for sufficient time to permit the debtor to negotiate a
     chapter 11 plan and prepare a disclosure statement containing adequate
     information;

   (c) the existence of good faith progress towards reorganization;

   (d) the fact that the debtor is paying its bills as they become due;

   (e) whether the debtor has demonstrated reasonable prospects for filing a
     viable plan;

   (f) whether the debtor has made progress in negotiations with its creditors;

   (g) the amount of time which has elapsed in the case;

> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (f) whether an unresolved contingency exists.

*In re Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *See also In re McLean Indus., Inc.*, 87 B.R. at 834; *accord In re Express One Int'l, Inc.*, 194 B.R. at 100 (identifying all of the nine above-quoted factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of above-quoted factors).

14.     Application of the aforementioned standards to the facts of these chapter 11 cases demonstrates sufficient "cause" to grant the Debtors' requested extension of the Exclusive Periods for a third time so that they may have a full and fair opportunity to propose a consensual plan and solicit acceptances thereof.

### A.  **The Debtors' Cases Are Large and Complex**

15.     Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of the Exclusive Filing Period.  "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.  In *In re Texaco Inc.*, the court stated:

> The large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial

7

> structure are important factors which generally constitute cause for
> extending the exclusivity periods.

76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

16.     The size and complexity of these cases warrant an extension of the Exclusive Periods.  These chapter 11 cases are among the largest and most complex ever filed in the United States.  Over ten months ago, the Debtors were the largest Original Equipment Manufacturer (OEM) of automobiles in the U.S. and the second largest in the world, employed approximately 235,000 employees worldwide, and had, as of March 31, 2009, consolidated reported global assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively.

17.     Now, after having implemented the *only* available means to preserve and maximize the value, viability, and continuation of their business and enhance the interests of their economic stakeholders through the sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code (the "**363 Transaction**"), the Debtors continue to manage and maintain substantial assets that require divesture or long-term maintenance.  In addition, more than 70,000 proofs of claim in the aggregate amount of approximately $274 billion have been filed against Debtors.  By any reasonable measure, the Debtors' chapter 11 cases remain among the large and more complex chapter 11 cases.

18.     In cases of this size and complexity, the current Exclusive Periods is simply inadequate to analyze and reconcile the claims asserted against the estates and prepare a disclosure statement containing adequate information.  Thus, as with other large and complex reorganization cases, the Debtors' Exclusive Periods do not provide adequate time to develop a chapter 11 plan in these cases.  The Debtors' chapter 11 cases are indisputably of the size and

complexity that Congress and courts have recognized warrant extensions of the Exclusive

Periods.

### B. <u>Substantial Good Faith Progress Has Been Demonstrated</u>

19.    It is unquestionable that the Debtors have made substantial progress in

these chapter 11 cases.  In only ten months, the Debtors have, among other things:

- completed the sale of substantially all of their assets to New GM pursuant to the 363 Transaction that resulted in substantial recoveries to the estates and preservation of employment for approximately 235,000 employees worldwide, including 91,000 domestic employees, after a three-day trial;

- responded to several appeals of the order approving the 363 Transaction and continue to respond to others;

- analyzed more than 900,000 contracts with over 65,000 vendors in connection with the assumption and assignment to New GM of approximately 700,000 executory contracts, and, to date, filed 12 omnibus motions to reject more than 390 executory contracts and unexpired leases of nonresidential real property;

- conducted a comprehensive, objective, and quantitative evaluation of each of the Debtors' approximate 6,000 dealerships, negotiated with each of them, and rejected approximately 60 dealerships in total;

- established global procedures for asset sales and began the process of selling certain *de minimis* assets;

- established the Initial Debtors' General Bar Date, the Initial Debtors' Property Bar Date, and the Realm/Encore Debtors' Bar Date;

- begun analyzing the more than 70,000 proofs of claim filed in an aggregate amount of approximately $274 billion and, to date, achieved reductions in claims through objections prosecuted in this Court, caps voluntarily imposed under the ADR Procedures, and out-of-court settlements totaling approximately $120 billion;

- negotiated settlements with certain equipment lessors resulting in modifications to lease agreements and assumption and assignment to New GM of such modified leases, resulting in the reduction or elimination of hundreds of millions of dollars in rejection damages;

- established the ADR Procedures for reconciliation of Unliquidated/Litigation Claims and have already designated over 110 matters under the ADR Procedures;

9

- continued to evaluate the liability to remediate owned properties and to reach a consensus with the numerous federal and state agencies involved, which is a very difficult and time-consuming process in view of the number of parties and agencies involved as well as the substantial public interest;

- continued to evaluate, together with the professionals of the Asbestos Committee (as defined below), the Future Asbestos Representative (as defined below), and the Creditors' Committee, the Debtors' liability with respect to present and future asbestos-related personal injury claims;

- continued discussions with various parties in interest regarding the formulation of a chapter 11 plan; and

- responded to countless inquiries related to the status of these cases and specific contract counterparty demands.

20.    As the foregoing list demonstrates, the Debtors have made considerable progress towards developing a chapter 11 plan by, *inter alia*, filing the Schedules, establishing the Bar Dates, establishing an ADR Procedure for the Unliquidated/Litigation Claims, actively marketing their real property, and discussing the formulation a chapter 11 plan with their key constituencies.  The process of reconciling thousands of Unliquidated/Litigation Claims is ongoing and is vital to implementation of a chapter 11 plan.  Moreover, the Debtors have begun preparing a proposed chapter 11 plan so that it can be presented to the Creditors' Committee and other constituencies.  In this regard, the Debtors intend to work with the Creditors' Committee, the Asbestos Committee, the Future Asbestos Representative, and other constituencies to build consensus for a consensual chapter 11 plan.

21.    The Debtors' progress on these critical issues in this short period of time justifies the requested extension of the Exclusive Periods.

### C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands

22.    This is the Debtors' third request for an extension of the Exclusive Periods.  The requested extension is reasonable given the Debtors' progress to date and the

current posture of these chapter 11 cases.  The Debtors are not seeking this extension to delay the liquidation of these estates for some speculative event or to pressure creditors to accede to a plan unsatisfactory to them.

23.     Courts have denied extensions of the Exclusive Periods where plan negotiations among parties in interest have broken down and the continuation of exclusivity would merely give the debtors unfair bargaining leverage over other parties in interest.  *See In re Texaco Inc.*, 76 B.R. at 345.  The Debtors' chapter 11 cases are proceeding at a fast pace, and their relationship with the Creditors' Committee, the Asbestos Committee, the Future Asbestos Representative, and their professionals are cordial and constructive.  Only ten months have passed since the Debtors commenced their chapter 11 cases.  The Debtors' request for an extension of the Exclusive Periods is not a negotiation tactic, but merely a reflection of the fact that these cases are not yet ripe for the formulation and confirmation of a viable chapter 11 plan.

24.     Moreover, the Debtors submit that the requested extension of the Exclusive Periods will not harm the Debtors' creditors or other parties in interest and will be used for a proper purpose – to develop and build consensus for a chapter 11 plan.  In connection with their wind-down efforts, the Debtors have been working closely with their key constituencies to address the issues critical to developing and implementing a chapter 11 plan.  As such, the Debtors submit that neither the creditors nor any other party in interest would be harmed by the requested extension of the Exclusive Periods.  The relief requested herein will not result in a delay of the plan process; rather it will permit the wind-down process to move forward in an orderly and expeditious fashion.

25.     Furthermore, the Debtors have kept sight of the need to deal with all parties in interest in these cases.  The Debtors and their professionals, including the professionals

at AlixPartners, who have taken the lead in compiling information related to the Debtors'

business and administering the estates, have consistently conferred with key constituencies on all

major substantive and administrative matters in these cases. The Debtors have no intention of

discontinuing this dialogue if this Motion is granted.

### D. **Important Contingencies Must Be Resolved by the Debtors**

26.       Courts have recognized, as a justification for extending the Exclusive

Periods, the need to resolve an important contingency. *See, e.g., Adelphia Commc'ns*, 352 B.R.

at 587. As indicated above, the Debtors have made substantial progress in the prosecution of

their chapter 11 cases. They do, however, require additional time in which to propose a

confirmable chapter 11 plan as the Debtors continue to address a number of key issues, including

(a) the refinement and completion of their wind-down plan in consultation with their key

constituencies; (b) the efforts to divest the remaining estate assets as part of their wind-down

efforts; and (c) the analysis of the universe of claims asserted against the Debtors' estates upon

the passing of the respective Bar Dates.

27.       Environmental Obligations.   An appropriate resolution of environmental

issues with respect to the Debtors' owned properties is critical to the administration of these

estates and the formulation and consummation of a chapter 11 plan. Like any other major

industrial company, the Debtors were, and continue to be, subject to a wide range of

environmental protection laws that govern emissions in the air; discharges in water; the

generation, handling, storage, transportation, treatment, and disposal of waste materials; and the

remediation of contaminated properties. Since the commencement of these cases, the Debtors

have interacted with governmental entities, including regulators, attorneys general, and other

parties in interest, to discuss environmental-remediation obligations at the properties now under

the Debtors' control and have devoted significant resources in the development of a program to address the manner in which such obligations should be discharged in a way that protects public health and the environment while being consistent with the interests of creditors and the Debtors' rights and obligations under the Bankruptcy Code.  In that respect, the Debtors and their professionals are continuing to analyze the environmental liabilities at owned sites, superfund sites, and other third-party owned sites, and estimate potential environmental liabilities and potential remediation costs.  The Debtors are focused on achieving the most efficient and prudent manner to address these issues in the context of a chapter 11 plan.  In that regard, the Debtors are working cooperatively with the Creditors' Committee and other parties to address these issues in a chapter 11 plan.  Notably, in the past few weeks substantial progress has been made with the federal government regarding costs of remediation, which will be the foundation and critical factor in the formulation of a chapter 11 plan.

28.    The need to resolve these important contingencies *alone* would likely preclude the Debtors, or any other party in interest in these cases for that matter, from filing a confirmable chapter 11 plan at this time.  It is undisputed that any meaningful chapter 11 plan must consider the nature and extent of all claims and interests asserted against the Debtors.  Accordingly, the extensions of the Exclusive Periods as requested herein will not prejudice any party in interest, but rather will avert the premature filing of an unconfirmable plan and afford the Debtors an opportunity to propose a realistic and viable chapter 11 plan in a reasonable timeframe.  Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, i.e., to afford the debtor a meaningful and reasonable opportunity to negotiate with creditors and propose a confirmable chapter 11 plan.  The termination of the Exclusive Periods and the threat of multiple plans would likely lead to

13

unnecessary adversarial situations, confrontations, and increased costs that would cause a deterioration in the Debtors' remaining assets.

29.     <u>Asbestos Claims</u>.  Although these chapter 11 cases clearly are not asbestos cases, the Debtors historically have incurred some liability with respect to asbestos-related claims.  Over 28,500 asbestos-related proofs of claim have been filed to date, which claims do not account for potential asbestos claims that may be asserted against the Debtors in the future.

30.     As recently as March 5, 2010, the Office of the United States Trustee appointed an additional committee representing current asbestos personal injury claimants (the "**Asbestos Committee**"), and, immediately thereafter, the Debtors requested the appointment of a legal representative for future asbestos personal injury claimants (the "**Future Asbestos Representative**").  The Asbestos Committee, the Future Asbestos Representative, the Creditors' Committee, and the Debtors each have retained professionals to evaluate the Debtors' liability with respect to present and future asbestos-related personal injury claims.  This analysis has just commenced, and it is the Debtors' expectation that pursuant to a chapter 11 plan a trust will be created for the benefit of such claimants and the parties will negotiate the appropriate portion of the consideration to be distributed under the chapter 11 plan to such trust.  In the absence of such an agreement, it currently is anticipated that this will have to be determined by the Court as part of the chapter 11 plan process.

31.     <u>Litigation Claims</u>.  With the passage of the Bar Dates, the Debtors now face over 70,000 proofs of claim, a large number of which are either unliquidated or have an excessive claim amount.  These factors undermine the Debtors' ability to distribute meaningful value to their creditors in an acceptable time-frame.  As a result, the Debtors, after consultation with the Creditors' Committee and with certain plaintiff's attorneys, have implemented an ADR

14

Procedure to facilitate the efficient resolution of a large number of the Unliquidated/Litigation Claims filed against the estates.

32.     Without the ADR Procedures, the Debtors feared that their estates would be mired in needless and costly litigation for many years to come that would deplete assets, impact recoveries to creditors, and delay distributions for extended periods.  After reaching a remarkable and largely consensual resolution on all issues, the Court approved the ADR Procedures.  While resolving litigation claims is not necessarily an obstacle to confirmation, the Debtors are committed to confirming a chapter 11 plan that allows for meaningful immediate distributions to stakeholders, and, therefore, resolving these claims is considered a critical path item.

33.     Starting with a claim pool of over $274 billion, the Debtors have already achieved reductions in claims through objections prosecuted in this Court, claim caps voluntarily imposed under the ADR Procedures, and out-of-court reconciliations under the Court-approved claims settlement procedures totaling approximately $120 billion.  After eliminating approximately $93 billion of debt-related claims that have either been credit bid as part of the 363 Transaction or are duplicative of the scheduled claims, the remaining pool of claims requiring further review is believed to approximate $61 billion.  The Debtors continue to review and address claims through these procedures.

34.     <u>Real Estate</u>.  The Debtors have made substantial progress to develop and implement the best available course of action for their real estate assets.  To date, the Debtors have sold seven properties and three other properties are under contract to be sold.  The Debtors are currently in negotiations with prospective buyers for additional properties.  A number of the Debtors' industrial properties require ongoing environmental maintenance and remediation, and

15

the Debtors continue to work with interested state and federal parties to address concerns

regarding the sale of those properties.

**E.  The Debtors Are Making Required Postpetition Payments
As They Come Due and Have the Ability to Continue to Do So**

35.     Courts considering an extension of exclusivity may also assess a debtor's

liquidity and solvency.  *See Adelphia Commc'ns*, 352 B.R. at 587; *In re Texaco Inc.*, 76 B.R. at

322.  Here, the Debtors have sufficient liquidity and are paying their bills as they come due.

This is unlikely to change given this Court's approval of the Debtors' $1.175 billion postpetition

Wind-Down Facility on July 5, 2009.  *See* Order Pursuant to Bankruptcy Code Sections 105(a),

361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (a) Approving

Amendment to DIP Credit Facility to Provide for Debtors' Post-Petition Wind-Down Financing

[Docket No. 2969].

**Conclusion**

36.     In sum, the Debtors have responded to the exigent demands of these

chapter 11 cases and have worked diligently with the Creditors' Committee to advance the wind-

down process.  The Debtors should be afforded a full and fair opportunity to negotiate, propose,

and seek acceptance of a chapter 11 plan.  The Debtors believe the requested extension of their

Exclusive Periods is warranted and appropriate under the circumstances.  The Debtors submit the

requested extension is realistic and necessary, will not prejudice the legitimate interest of

creditors and other parties in interest, and will afford them a meaningful opportunity to pursue a

feasible and consensual chapter 11 plan, all as contemplated by chapter 11 of the Bankruptcy

Code.

37.    An extension of the Exclusive Periods will enable the Debtors to harmonize the diverse and competing interests that exist and seek to resolve conflicts in a reasoned and balanced manner.  This neutral and independent role is precisely what Congress envisioned for the debtor in possession in the chapter 11 process.  Based on the foregoing, the Debtors submit the Motion should be granted.

### Notice

38.    Notice of this Motion has been provided to parties in interest in accordance with the Third Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated April 29, 2010 [Docket No. 5670].  The Debtors submit that such notice is sufficient and no other or further notice need be provided.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        May 13, 2010

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                   :

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|       f/k/a **General Motors Corp.**, *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------x

### ORDER GRANTING DEBTORS' THIRD MOTION PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING EXCLUSIVE PERIODS IN WHICH DEBTORS MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the Motion, dated May 13, 2010 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors (collectively,

the "**Debtors**"), pursuant to section 1121(d) of title 11, United States Code (the "**Bankruptcy**

**Code**"), for entry of an order extending the Debtors' respective exclusive periods in which to file

a chapter 11 plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the

"**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive**

**Periods**"), as more fully set forth in the Motion; and due and proper notice of the Motion having

been provided, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtor's Exclusive Filing Period in which to file a chapter 11 plan is extended to and including September 27, 2010; and it is further.

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of their chapter 11 plan is extended to and including November 29, 2010; and it is further

ORDERED that the extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code by the Debtors or any party in interest, for cause shown, upon notice and a hearing; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2010

_____
United States Bankruptcy Judge