# Exhibit B

SHAREHOLDERS' AGREEMENT

by and among

TOYOTA MOTOR CORPORATION,

GENERAL MOTORS CORPORATION

and

NEW UNITED MOTOR MANUFACTURING, INC.

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | DEFINITIONS | | 2 |
| | Section 1.1. | Defined Terms | 2 |
| | Section 1.2. | Incorporation by Reference | 4 |
| | Section 1.3. | Effect of Articles and By-Laws | 4 |
| II. | TERM OF AGREEMENT | | 5 |
| | Section 2.1. | Term | 5 |
| III. | THE JV COMPANY | | 5 |
| | Section 3.1. | Organization and Purpose | 5 |
| | Section 3.2. | Directors | 7 |
| | Section 3.3. | Waiver of Provisional Director | 8 |
| | Section 3.4. | Certain Transactions | 9 |
| | Section 3.5. | Officers | 9 |
| | Section 3.6. | Other Limitations | 9 |
| | Section 3.7. | General Statements | 11 |
| | Section 3.8. | Future Difficulties | 12 |
| IV. | RESTRICTIONS ON SHARE TRANSFERS, EXPENSES, DEBT POLICY, ETC. | | 13 |
| | Section 4.1. | Qualified Shareholders; Permitted Transfers | 13 |
| | Section 4.2. | JV Company Debt Policy | 14 |
| | Section 4.3. | JV Company Expenses | 15 |
| | Section 4.4. | Corporate Average Fuel Economy | 15 |
| | Section 4.5. | GM's Technical Assistance | 17 |
| V. | CERTAIN REAL ESTATE MATTERS | | 18 |
| | Section 5.1. | Marshalling Area | 18 |
| | Section 5.2. | Adjacent Area | 20 |
| VI. | PURCHASE AND SUPPLY ARRANGEMENTS | | 21 |
| | Section 6.1. | Sourcing | 21 |
| | Section 6.2. | Sales | 21 |
| | Section 6.3. | Certain Additional Agreements | 21 |

                                                                          Page

VII.   DEFAULT  ·················································  22

       Section 7.1.    Default  ···························  22
       Section 7.2.    Default Upon Subscription Payments
                       and Interest Thereon  ··············  22

VIII. DISSOLUTION AND LIQUIDATION  ··························  23

       Section 8.1.    Events of Dissolution  ·············  23
       Section 8.2.    Liquidation and Distribution
                       Following Dissolution  ·············  26
       Section 8.3.    One Liquidator  ··················  27

IX.    REPRESENTATIONS AND WARRANTIES, ETC.  ················  27

       Section 9.1.    By Toyota  ························  27
       Section 9.2.    By GM  ···························  27
       Section 9.3.    Survival  ·······················  27

X.     GENERAL PROVISIONS  ································  28

       Section 10.1.   Assignability  ····················  28
       Section 10.2.   Persons Authorized to Act
                       for the Parties  ··················  28
       Section 10.3.   Notices  ··························  28
       Section 10.4.   Third Persons  ····················  29
       Section 10.5.   Governing Language  ················  30
       Section 10.6.   Choice of Law  ····················  30
       Section 10.7.   Entire Agreement, Etc.  ·············  30
       Section 10.8.   Enforcement of this Agreement  ·······  31

ANNEX A: Marshalling Area
ANNEX B: Form of License Agreement

## SHAREHOLDERS' AGREEMENT

This SHAREHOLDERS' AGREEMENT (this "Agreement") is made and entered into on and as of the 21st day of February, 1984 by and among New United Motor Manufacturing, Inc. (the "JV Company"), a close corporation organized and existing under the laws of the State of California, General Motors Corporation ("GM"), a corporation organized and existing under the laws of the State of Delaware, and Toyota Motor Corporation ("Toyota"), a corporation organized and existing under the laws of Japan;

### WITNESSETH:

WHEREAS, the JV Company was organized as a close corporation pursuant to the General Corporation Law of California (the "GCL") on December 23, 1983;

WHEREAS, the JV Company, which has a separate and distinct existence from each of its Shareholders, which are the other parties to this Agreement, was organized for the limited purpose of manufacturing in the U.S.A. a specific automotive vehicle not heretofore manufactured and certain components related thereto; and

WHEREAS, the parties hereto desire to make an agreement relating to the management and control of the JV Company

- 1 -

as authorized and contemplated by Sections 186 and 300(b) of the GCL and for certain other purposes;

NOW, THEREFORE, the parties hereto agree as follows:

## I.  DEFINITIONS

1.1.  Defined Terms:  In addition to the terms defined elsewhere herein, as used herein the following terms shall have the following meanings when used herein with initial capital letters:

(a)  "Articles" means the Articles of Incorporation of the JV Company, as amended from time to time.

(b)  "By-Laws" means the By-Laws of the JV Company, as amended from time to time.

(c)  "GM Affiliates" means any one or more of the corporations the majority of the voting shares of which are owned of record by GM.

(d)  "GM Group" means collectively GM and all GM Affiliates.

(e)  "GM Group Shareholder" means a Shareholder which is a member of the GM Group.

(f)  "Other Agreements" means (i) the Subscription Agreement, dated the date hereof, among the JV Company, GM and Toyota (the "Subscription Agreement"), (ii) the Vehicle Supply Agreement, dated the date hereof, among the JV Company, GM and Toyota (the "Vehicle Agreement"), (iii) the Product

- 2 -

Responsibility Agreement, dated the date hereof, among the JV
Company, GM and Toyota (the "PRA"), (iv) the Vehicle License
Agreement (the "Vehicle License Agreement"), dated the date
hereof, among the JV Company, GM and Toyota, (v) the Service
Parts License Agreement (the "Service Parts License Agreement"),
dated the date hereof, between GM and Toyota, and (vi) the
Memorandum on Technical Assistance (the "Technical Assistance
Memorandum"), dated the date hereof, between GM and Toyota.

(g)  "Series A Directors" means members of the Board of
Directors of the JV Company who are elected or designated by the
holder or holders of Series A Shares pursuant to Section 3.2(c)
of this Agreement.

(h)  "Series A Shares" means the 10,000 shares of
Common Stock, without par value, issued or to be issued by the JV
Company initially to Toyota, designated Series A Shares in the
Articles.

(i)  "Series B Directors" means members of the Board of
Directors of the JV Company who are elected or designated by the
holder or holders of Series B Shares pursuant to Section 3.2(c)
of this Agreement.

(j)  "Series B Shares" means the 10,000 shares of
Common Stock, without par value, issued or to be issued by the JV
Company initially to GM, designated Series B Shares in the
Articles.

- 3 -

(k)  "Shareholders" means the shareholders of the JV Company.

(1)  "Toyota Affiliates" means any one or more of the corporations the majority of the voting shares of which are owned of record by Toyota.

(m)  "Toyota Group" means collectively Toyota and all Toyota Affiliates.

(n)  "Toyota Group Shareholder" means a Shareholder which is a member of the Toyota Group.

(o)  "Vehicles" means automotive vehicles to be manufactured for sale to GM by the JV Company under the license of Toyota.

1.2.  Incorporation by Reference:  Any provision of the By-Laws required by Section 300(b), or any successor provision, of the GCL to be set forth in a shareholders' agreement to be valid and enforceable is incorporated herein by this reference as if fully set forth herein.

1.3.  Effect of Articles and By-Laws:  Subject to Section 300(c), or any successor provision, of the GCL, if there exists any conflict between the provisions of the Articles or the By-Laws of the JV Company and the provisions of the GCL, the former shall prevail.

- 4 -

## II.    TERM OF AGREEMENT

2.1.    <u>Term</u>:  This Agreement shall become binding upon its execution by each of the parties hereto and shall remain in full force and effect until the earlier of the (a) expiration of the period of existence of the JV Company as set forth in Article 7 of the Articles (the "Corporate Term") and (b) dissolution of the JV Company pursuant to Section 8.1 hereof, provided, however, that subject to Article VIII hereof, notwithstanding the provisions of Article 7 of the Articles with respect to the period of existence of the JV Company, the Shareholders shall dissolve the JV Company after 12 years have elapsed from the date of the start of production (the "Production Commencement Date") of Vehicles pursuant to the Vehicle Agreement if such 12-year period shall end before December 31, 1997.  The parties shall execute a certificate fixing the Production Commencement Date as soon as practicable after Vehicle production is commenced.

## III.    THE JV COMPANY

3.1.    <u>Organization and Purpose</u>:  (a)  The limited purpose of the JV Company shall be to manufacture in the United States a specific automotive vehicle (the "JV Vehicle"), not heretofore produced, which will be derived from Toyota's new front-wheel drive Sprinter and certain related components.

(b)  It is contemplated that the JV Company will begin to manufacture Vehicles as early as possible in the 1985 model

- 5 -

year with nominal capacity of approximately 200,000 units per annum. GM's annual requirements are presently expected to exceed 200,000 Vehicles per annum and, accordingly, Toyota and GM shall assist the JV Company in increasing its production to the maximum extent possible within the available capacity. The requirements for capacity beyond the first module shall be the subject of a separate study by the Shareholders. The JV Company may later manufacture for Toyota a variation of the JV Vehicle which shall be sold directly to Toyota or its designated marketing unit for resale through Toyota's dealer network. GM and Toyota may also agree for GM to source the GM-specific vehicle from Toyota's assembly plants in Japan in order to free capacity at the JV Company's Fremont, California plant for full or partial manufacture of a Toyota-specific vehicle.

(c)  The JV Company is hereby granted a royalty-free license under any patent held by Toyota or GM and, accordingly, no royalties will be payable by the JV Company, GM or Toyota in respect of any of their United States and foreign patents because of the manufacture, use or sale by any of them of vehicles, materials, components or parts manufactured by or supplied to the JV Company pursuant to (i) the Vehicle Agreement, (ii) any of the agreements contemplated by the letter agreement referred to in Section 6.3 hereof, or (iii) any arrangement which may be entered into under Section 3.1(b) hereof. The preceding sentence shall not apply to vehicles manufactured by GM or Toyota.

- 6 -

(d)   Each of GM and Toyota hereby grants to the other a non-exclusive, paid-up, irrevocable license, with no right to sublicense except to their respective suppliers, under or with respect to any United States or foreign patent or pending application for patent existing on the date hereof which is owned by or has been made by or in the name of GM or Toyota, as the case may be, and which may be reasonably necessary for the manufacture or sale of service parts for use in the repair, service or equipping of the motor vehicles manufactured by the JV Company.

3.2.   _Directors_:   (a)   The provisions of this Section 3.2 shall apply to the election or designation of directors of the JV Company.

(b)   There shall be an equal number of Series A Directors and Series B Directors.

(c)   In furtherance of the provisions of Article 5 of the Articles, the Series A Directors shall be elected or designated by the affirmative vote or written consent of the holder or holders of a majority of the Series A Shares, and the Series B Directors shall be elected or designated by the affirmative vote or written consent of the holder or holders of a majority of the Series B Shares.

(d)   A director may be removed without cause by the affirmative vote or written consent of the holder or holders of a majority of the series of shares which last elected the person

being removed.  The term of office of the director in question shall end at the time written evidence of such vote or consent is delivered to the JV Company.

(e)  Vacancies on the Board of Directors, whether resulting from removal, resignation, death or otherwise, shall be filled by the affirmative vote or written consent of the holder or holders of a majority of the series of shares which last elected such person being replaced.

(f)  An alternate director may be appointed by each member of the Board of Directors in accordance with the applicable provisions of the By-Laws.

3.3.  <u>Waiver of Provisional Director</u>:  (a)  Subject to Section 300(c), or any successor provision, of the GCL, no Shareholder, director or officer of the JV Company shall bring an action for appointment of a provisional director or any other neutral manager, by whatever name called, under Section 308, or any successor provision, of the GCL or under any other applicable statute or legal doctrine.

(b)  This Section constitutes an express agreement of the parties pursuant and subject to Section 300(c) of the GCL waiving all provisions of law, including but not limited to Section 308, or any successor provision, of the GCL, authorizing or permitting the appointment of a provisional director or other neutral manager in any conditions or under any circumstances whatsoever, to the end that no provisional director or other

- 8 -

neutral manager shall ever be appointed for the JV Company.

3.4. __Certain Transactions__: Notwithstanding Section 310, or any successor provision, of the GCL, any contracts or transactions between the JV Company and any member of the Toyota Group or the GM Group of which one or more of the directors or alternate directors of the JV Company are directors shall be valid even if such contracts or transactions are approved by the Board of Directors of the JV Company (a) with the common directors or alternate directors (i) being present, included for purposes of determining the presence of a quorum at the meeting, participating in the discussion of the contracts or transactions or voting thereon or (ii) participating in the written action and (b) without the disclosure to the Board of Directors of the JV Company of the fact of such common directorships.

3.5. __Officers__: Notwithstanding the provisions of Section 312(b), or any successor provision, of the GCL or any other provision of law or agreement of the parties, the President of the JV Company shall be elected or designated by and serve at the pleasure of a majority of the Series A Directors. All other officers shall be selected by and serve at the pleasure of the President. Toyota and GM shall each endeavor to assign to the JV Company such personnel as the President may request.

3.6. __Other Limitations__: (a) Except for the purposes contemplated by this Agreement in connection with the operations of the JV Company, nothing in this Agreement or in any of the

- 9 -

Other Agreements, any agreement contemplated by the letter agreement referred to in Section 6.3 hereof or any other agreement or instrument to which the Shareholders signatory hereto are parties shall create any cooperative or special relationship between Toyota or its Affiliates, on the one hand, and GM or its Affiliates, on the other hand, which entities presently are and will continue to be competitors.

(b)  No Shareholder shall have, nor hold itself out as having, any authority or agency to act on behalf of any other Shareholders or any of its Affiliates in any capacity or in any manner except as specifically authorized in this Agreement or in any of the Other Agreements or any agreement contemplated by the letter agreement referred to in Section 6.3 hereof or any other agreement or instrument to which the Shareholders signatory hereto are parties, and no Shareholder shall become liable by reason of any representation, action or omission of any other Shareholder contrary to the provisions of this Agreement or of any of the Other Agreements or any agreement contemplated by the letter agreement referred to in Section 6.3 hereof. Without limiting the generality of the foregoing, no Shareholder shall have any liability or obligation for any liabilities or obligations of any other Shareholder or any of its Affiliates with respect to any matter outside the scope of this Agreement or of any of the Other Agreements or any agreement contemplated by the letter agreement referred to in Section 6.3 hereof.

- 10 -

(c)  None of the Shareholders or any of its or their
Affiliates will, by virtue of the execution of this Agreement or
any of the Other Agreements or any agreement contemplated by the
letter agreement referred to in Section 6.3 hereof, be foreclosed
or limited, in any manner, from the design, manufacture,
purchase, sale or other distribution of any products that it may
elect to design, manufacture, sell or distribute under its own
trademarks or trade names or otherwise, and each of the
Shareholders and any of its or their Affiliates may design,
manufacture, purchase, sell or otherwise deal in any product,
whether or not competitive with Vehicles or other products
manufactured by the JV Company, anywhere in the world, provided
that such activities are not the proximate cause of any breach of
any such entity's obligations under this Agreement or any of the
Other Agreements or any agreement contemplated by the letter
agreement referred to in Section 6.3 hereof.

(d)  As used in this Section 3.6 and in Section 3.7
hereof, the term "Affiliate" means any person or entity that
directly, or indirectly through one or more intermediaries,
Controls, is Controlled by or is under common Control with any
other person or entity, and the term "Control" means the power,
whether by stock or other ownership, contract or otherwise, to
direct the business of any other person or entity.

3.7.  <u>General Statements</u>:  None of the Shareholders nor
any of its Affiliates will consult any other Shareholder or any
of its or their Affiliates with respect to its marketing of any

- 11 -

products, including without limitation any product which is the
subject of any of the Other Agreements or any agreement
contemplated by the letter agreement referred to in Section 6.3
hereof, except only (a) to the extent, if any, provided in any
agreement as to products which are to be sold to the JV Company
pursuant to the component supply agreements and to GM pursuant to
the service parts supply agreements as contemplated by the letter
agreement referred to in Section 6.3 hereof, (b) negotiation of
any other supply agreement in which the Shareholders or any of
their respective Affiliates are in the relationship of seller and
buyer, and (c) as contemplated by Section 3.8 hereof or Section
4.3(e) of the Vehicle Agreement. Each Shareholder and its
Affiliates shall be free to price and free to market any products
which may be purchased by it or them from the JV Company without
restrictions or influence from any of the other Shareholders or
its or their Affiliates or from the JV Company. Nothing in this
Agreement or any of the Other Agreements or any agreement
contemplated by the letter agreement referred to in Section 6.3
hereof shall create any implied obligations or restrictions among
the Shareholders or their respective Affiliates relating to the
subject matter of this Section 3.7.

    3.8. <u>Future Difficulties</u>: If, after the date hereof,
Toyota or GM, as the case may be, in good faith shall conclude
that (a) the continuation of the JV Company may be difficult or
infeasible due to a deadlock in the Board of Directors of the JV

- 12 -

Company or any legal or political reason which may arise in the
U.S.A. after the date hereof or (b) any United States or Japanese
governmental action shall be taken which may have a material
adverse effect upon the JV Company, or upon GM or Toyota in
connection with their dealings with the JV Company, then GM and
Toyota shall in good faith discuss the measures to be taken
concerning the JV Company and endeavor to find appropriate
solutions.

IV. **RESTRICTIONS ON SHARE TRANSFERS,
EXPENSES, DEBT POLICY, ETC.**

4.1. <u>Qualified Shareholders; Permitted Transfers</u>:
(a) Neither the holder or holders of Series A Shares nor the
holder or holders of Series B Shares may transfer or sell any
shares except as provided in Article 6 of the Articles, and then
only if the proposed transferee shall duly execute and deliver an
instrument in form reasonably satisfactory to the other
Shareholders, which instrument when so executed shall constitute
an amendment to this Agreement pursuant to which such transferee
shall be deemed to have become a party to and entered into this
Agreement. No Shareholder shall encumber any of its shares of
the JV Company by any means whatsoever without the prior written
consent of all of the other Shareholders.

(b) Before a Toyota Group Shareholder loses its status
as a Toyota Affiliate, Toyota shall acquire or, with the prior

- 13 -

written consent of GM, cause another Toyota Affiliate to acquire
all shares of the JV Company owned by such Toyota Group
Shareholder.  Before a GM Group Shareholder loses its status as a
GM Affiliate, GM shall acquire or, with the prior written consent
of Toyota, cause another GM Affiliate to acquire all shares of
the JV Company owned by such GM Group Shareholder.

    (c)  In furtherance of Article 6(c) of the Articles,
if, at any time, a Shareholder ceases to be qualified as such
pursuant to this Section 4.1 or pursuant to the Articles, it
shall cease to be a Shareholder without further action for any
purpose except to transfer its shares to a corporation that is so
qualified.

    4.2.  <u>JV Company Debt Policy</u>:  It is the intention of
the Shareholders that the JV Company will fund that portion of
its cash and working capital requirements not funded by capital
contributions of the Shareholders pursuant to the Subscription
Agreement through borrowings or other financing mechanisms on the
basis of the JV Company's own credit in a normal and prudent
manner without requiring guarantees by the Shareholders.  In the
event that either lenders or lessors insist that payments to be
made or obligations to be performed by the JV Company be subject
to appropriate guarantees, Toyota and GM agree either to provide
such guarantees or temporarily to advance funds to the JV Company
on their own account, in each case in proportion to the
respective holdings of shares of capital stock of the JV Company

- 14 -

of the Toyota Group and the GM Group, respectively.  To the
extent permitted by creditors, any security interests held by GM
and Toyota in the assets of the JV Company shall be shared by GM
and Toyota in proportion to the respective holdings of shares of
capital stock of the JV Company of the Toyota Group and the GM
Group, respectively.

    **4.3.**  <u>**JV Company Expenses**</u>:  Except as otherwise pro-
vided in any agreement or instrument to which the parties sig-
natory hereto are parties, the JV Company shall be responsible
for the payment of all of its own expenses.

    **4.4.**  <u>**Corporate Average Fuel Economy**</u>:  (a)  For pur-
poses of this Section 4.4, "Federal Fuel Economy Laws and
Regulations" means the following laws and regulations of the
United States of America:  (i) Title V of the Motor Vehicle
Information and Cost Savings Act, entitled "Improving Automotive
Efficiency", (ii) Part I of the Energy Tax Act of 1978, entitled
"Gas Guzzler Tax", (iii) all motor vehicle fuel economy
regulations and procedures promulgated by the National Highway
Traffic Safety Administration in Title 49 of the Code of Federal
Regulations, (iv) all motor vehicle fuel economy regulations
promulgated by the Environmental Protection Agency in Title 40 of
the Code of Federal Regulations, (v) all motor vehicle fuel

- 15 -

economy regulations promulgated by the Internal Revenue Service
in Title 26 of the Code of Federal Regulations, and (vi) all
amendments to any of the foregoing and any new legislation,
regulations or governmental procedures for similar purposes.

(b)    Subject to any mandatory requirements of applica-
ble law to the contrary, in the event that GM (or its designated
marketing units) or Toyota (or its designated marketing units) as
a purchaser of automotive vehicles from the JV Company, shall be
entitled to or have any rights and responsibilities under Federal
Fuel Economy Laws and Regulations, such rights and responsibil-
ities shall be proportionately allocated between them based upon
the number of automotive vehicles purchased from the JV Company
in each calendar year by, respectively, GM (and its designated
marketing units) and Toyota (and its designated marketing units).
If so requested in writing by any such purchaser, Toyota shall
provide such purchaser fuel consumption data relating to such
vehicles and the JV Company shall provide such purchaser with a
copy of documents in its possession, if any, which are required
by Federal Fuel Economy Laws and Regulations.  If any other
document or information is requested, Toyota, GM and the JV
Company shall discuss whether such request can be met and, if so,
the relevant terms and conditions thereof, with the understanding
that the JV Company, GM and Toyota shall cooperate with such
purchaser to the extent reasonably practicable without unreason-
able burden.  Without limiting the generality of the foregoing,

- 16 -

the JV Company shall permit Toyota or GM to file on its behalf all reports, petitions and applications required or permitted by Federal Fuel Economy Laws and Regulations and prepared in good faith by Toyota or GM, as the case may be.

(c)  Notwithstanding anything to the contrary set forth in this Agreement, the JV Company or Toyota shall not be required for any purpose (i) to alter or not to alter the designs, specifications or other related matters for automotive vehicles, (ii) to deviate from the sourcing policies set forth in Section 6.1 hereof, (iii) except as provided in Section 4.4(b) hereof, to do anything whatsoever to enable any purchaser to have any particular rights and responsibilities under Federal Fuel Economy Laws and Regulations, or (iv) to refrain from doing anything detrimental to any particular purchaser's rights and responsibilities under Federal Fuel Economy Laws and Regulations, provided, however, that nothing herein contained shall be construed to authorize the JV Company or Toyota to do anything specifically designed to harm any business interest of any purchaser hereunder.

4.5.  GM's Technical Assistance:  To the extent that GM and the JV Company may mutually agree therefor, GM shall provide technical assistance to the JV Company on a cost basis.  As part of such technical assistance, GM shall upon request assist Toyota and the JV Company in completing compliance tests for safety, emissions and other areas as agreed upon by the parties.

- 17 -

## V.   CERTAIN REAL ESTATE MATTERS

5.1.   <u>Marshalling Area</u>:   (a)   GM hereby grants to members of the Toyota Group, independent distributors of Toyota automotive vehicles and, subject to the prior written approval of GM, any designee of Toyota (collectively, "Permitted Designees") a nonexclusive license to use the parcel of land outlined in red on the map attached hereto as Annex A, together with the buildings and improvements thereon, owned by GM (the "Marshalling Area"), for the purpose of receiving, inspecting and processing Toyota-specific automotive vehicles, optional equipment and parts supplied by the JV Company to Toyota or its Permitted Designee, if any.   GM shall not grant any other license to use the Marshalling Area during the term of the license as provided in Section 5.1(b) hereof to any person or entity other than persons or entities selected by GM for any purpose deemed by GM in its sole discretion to be related to GM's use of the Marshalling Area in a fashion reasonably consistent with the license granted pursuant to the immediately preceding sentence.   For such period as Toyota or its Permitted Designees are using the Marshalling Area, Toyota will, together with GM (if the Marshalling Area is also being used by GM or a permitted licensee of GM other than Toyota or its Permitted Designees), cause the Marshalling Area to be kept in an orderly condition, and will provide adequate security therefor.   Further, during such period, (i) each of GM and Toyota shall bear its fair share of expenses, including

- 18 -

without limitation all maintenance, repair, insurance, taxes, assessments and operating and similar expenses, relating to the use, operation and maintenance of the Marshalling Area, (ii) if GM in its capacity of owner of the Marshalling Area suffers any liability, loss or damage resulting from death or injury to persons or property which results from the use of the Marshalling Area by Toyota or any of its Permitted Designees or any of its or their agents, employes or invitees pursuant to the license granted in this Section 5.1(a), Toyota shall indemnify and hold harmless GM from such liability, loss or damage, and (iii) each of Toyota (and its Permitted Designees) and GM (and its permitted licensees) shall use the Marshalling Area in a manner which will not unreasonably interfere with the other's use thereof. Upon expiration of the license referred to above, Toyota shall remove, or negotiate a transfer to GM of, any improvements to, or machinery and equipment installed by Toyota or Permitted Designees of Toyota under this Section 5.1(a) upon, the Marshalling Area, and leave the same in an orderly condition. Toyota and its Permitted Designees shall have the right to permit the license granted hereunder, or any part thereof, to be used by an automobile carrier performing contract services for Toyota or Permitted Designees of Toyota, or any other person or entity which in the reasonable opinion of Toyota or Permitted Designees

- 19 -

of Toyota is necessary in order to enable Toyota or such Permitted Designees to carry out the operations contemplated by it or them hereunder.

(b)    The license granted pursuant to Section 5.1(a) hereof shall commence and become effective if and at such time as the production of Toyota-specific automotive vehicles pursuant to Section 3.1(b) hereof commences and shall remain in full force and effect for so long as Toyota deems it necessary to use the Marshalling Area, provided that such license shall in any event expire upon the dissolution of the JV Company.

(c)    In connection with the delivery of the Deed as provided in Section 1.2(b) of the Subscription Agreement, GM, Toyota and the JV Company shall duly execute and deliver the License Agreement in the form of Annex B hereto.

5.2.    Adjacent Area:  GM shall not dispose of any real property owned by it and located adjacent to the property of the JV Company in Fremont, California granted or to be granted to the JV Company pursuant to the Subscription Agreement until three years have elapsed after the Production Commencement Date. Thereafter, if GM wishes to dispose of any part or all of such real property, GM shall first notify the JV Company and shall, at the request of the JV Company, discuss with the JV Company the terms of disposition.

- 20 -

## VI.    PURCHASE AND SUPPLY ARRANGEMENTS

6.1.  <u>Sourcing</u>:  Subject to the provisions of any agreement contemplated by the letter agreement referred to in Section 6.3 hereof, the JV Company shall purchase its components, parts, production materials, supplies and services from those suppliers providing the lowest possible cost consistent with the JV Company's standards for quality and reliability of supply.

6.2.  <u>Sales</u>:  As a general proposition, automotive vehicles sold by the JV Company should be priced by the JV Company to provide a reasonable profit for the JV Company, Toyota and GM.  Sales of Vehicles and optional equipment therefor to GM shall be governed by the provisions of the Vehicle Agreement.

6.3.  <u>Certain Additional Agreements</u>:  The JV Company, GM and Toyota shall negotiate and enter into various agreements relating to, among other things, the purchase and sale of certain components and certain service parts for Vehicles and the sale or lease of certain machinery and equipment in accordance with a separate letter agreement, dated the date hereof, among the JV Company, GM and Toyota, provided, however, that the failure to enter into any such agreement by any particular date shall not affect the obligations of any Shareholder to make any capital contribution or payment for shares subscribed for pursuant to the Subscription Agreement.

- 21 -

## VII. <u>DEFAULT</u>

7.1. <u>Default</u>: A Shareholder which has failed, refused or neglected to perform any one or more of its obligations hereunder shall be deemed to be in default under this Agreement.

7.2. <u>Default Upon Subscription Payments and Interest Thereon</u>: Each cash contribution provided for in the Subscription Agreement which is not made when due shall constitute a debt due and payable to the JV Company by the Shareholder obligated to make or pay the same and shall be enforceable by the JV Company and any non-defaulting Shareholder on behalf of, and in the name of, the JV Company. A defaulting Shareholder shall pay interest to the JV Company on each such cash contribution at a rate equal to (a) the greater of (i) 10% per annum and (ii) the rate which is five percentage points in excess of the discount rate, including any surcharge thereon, on 90-day commercial paper in effect at the United States Federal Reserve Bank in San Francisco, California, or, if lesser than the amount so computed, (b) the maximum rate permitted by law, in either case from the date upon which payment of such cash contribution was due to the date of actual payment thereof. If GM or Toyota fails to provide any guarantee or temporary advance required by Section 4.2 hereof, such party shall promptly reimburse the JV Company for all excess borrowing and other costs incurred by it by reason of such failure.

- 22 -

## VIII.   DISSOLUTION AND LIQUIDATION

8.1.   Events of Dissolution:   (a)   Notwithstanding the provisions of Section 2.1 hereof, the JV Company shall be dissolved:

(i)   if and when Toyota and GM agree in writing to dissolve the JV Company;

(ii)   on or after the day on which 90 calendar days shall have elapsed from the day on which Toyota or GM, as the case may be, becomes entitled to elect to dissolve the JV Company by reason of the occurrence of one of the following events and has given to the other a written notice of its election so to dissolve the JV Company:

(A) when either Toyota or GM fails to fulfill its obligation to make a capital contribution pursuant to the Subscription Agreement or to provide a guarantee for or a temporary advance of funds to the JV Company pursuant to Section 4.2 hereof, the non-defaulting party may elect to dissolve the JV Company;

(B) when either a Toyota Group Shareholder or a GM Group Shareholder attempts to transfer or encumber any share of the JV Company in violation of the provisions of Article 6 of the Articles or Section 4.1 hereof, GM, if the attempted transfer or encumbrance is by a Toyota Group Shareholder, or Toyota, if the attempted transfer or encumbrance is by a GM Group Shareholder, may elect to dissolve the JV Company; or

- 23 -

(C) when, without the other party's prior written consent, any of the following events occurs with respect to either Toyota or GM, GM, if such event occurs with respect to Toyota, or Toyota, if such event occurs with respect to GM, may elect to dissolve the JV Company:

(1)   institution of proceedings for relief as a debtor under laws for the relief of debtors or filing of a petition in bankruptcy or insolvency;

(2)   entering into any arrangement, assignment, reorganization or composition with creditors or for the benefit of creditors;

(3)   a general suspension of payments;

(4)   filing of a petition for appointment of a receiver, liquidator or trustee for its business or properties;

(5)   filing of a petition or other documents for winding up or dissolution; or

(6)   any completed merger, consolidation, reorganization, tender offer or similar business combination transaction in which GM or Toyota, as the case may be, is not the acquiring, surviving or resulting corporation.

(b)   GM acknowledges that pursuant to the By-Laws of the JV Company the President of the JV Company has the sole authority with respect to the execution and alteration of

- 24 -

collective bargaining agreements and working and employment
conditions.  Notwithstanding any contrary provisions of the By-
Laws, this Agreement or any other agreement or instrument, but in
all events subject to Section 300(c), or any successor provision,
of the GCL, if and when, in the exclusive judgment of the
President of the JV Company, there shall exist an unsatisfactory
relationship between the JV Company and the representatives of
any of its employes, the President of the JV Company may decide
the actions to be taken by the JV Company.  Such actions may
include, without limitation, suspending the business and
operations of the JV Company; provided, however, that any
approvals, elections or other actions referred to in or
contemplated by Sections 1900 or 1901, or any successor
provisions, of the GCL may be given, made or taken only with the
prior written approval of GM and Toyota.

        (c)  In the event that any of the events enumerated in
Section 8.1(a)(ii) hereof occurs, the defaulting or violating
party may cure the default or violation within the 90-day notice
period set forth in Section 8.1(a)(ii) hereof.  Upon the cure of
such default or violation within said period, the notice of
election to dissolve the JV Company shall be deemed withdrawn by
the non-defaulting or non-violating party and neither party may
dissolve the JV Company on the basis of such default or
violation.

        (d)  Before either Toyota or GM gives a written notice
of its election to dissolve under Section 8.1(a)(ii) hereof, it
shall first attempt to discuss with the other the possibility of

the purchase by a member or members of the GM Group or the Toyota Group of the JV Company shares owned by all Shareholders that are not members of the GM Group or the Toyota Group, as the case may be, having the right to elect to dissolve the JV Company.

(e) Nothing in this Section 8.1 shall limit any party's rights to enforce any provision of this Agreement by an action at law or in equity, nor shall any election to dissolve the JV Company pursuant to this Section 8.1 relieve any party of any liability for any prior or subsequent breach of this Agreement.

8.2. <u>Liquidation and Distribution Following Dissolution</u>: In case of dissolution of the JV Company, whether under Sections 2.1 or 8.1 hereof, the assets of the JV Company shall, subject to any mandatory and non-waivable laws governing priorities in liquidation, be distributed first to the payment to the Shareholder or Shareholders which fulfilled its or their obligation to make a capital contribution pursuant to the Subscription Agreement or to provide a guarantee for or a temporary advance of funds to the JV Company pursuant to Section 4.2 hereof of such amount as will equalize such Shareholder or Shareholders with the other Shareholder or Shareholders in terms of financial contributions to the JV Company, and the JV Company shall be wound up and liquidated in accordance with applicable mandatory law.

- 26 -

8.3.   <u>One Liquidator</u>:  If the JV Company is dissolved
by reason of the occurrence of an event described in
Subparagraphs (A), (B) and (C) of Section 8.1(a)(ii) hereof, the
Shareholder or Shareholders that were not in default, were not
the subject of the event or did not commit the act described
therein shall have the sole authority to wind up the JV Company's
affairs and supervise its liquidation.


IX.   <u>REPRESENTATIONS AND WARRANTIES, ETC.</u>

9.1.   <u>By Toyota</u>:  Toyota represents and warrants to GM
that each of this Agreement and the Other Agreements to which it
is a party is a valid and binding obligation of Toyota and
that it knows of no impediment which is likely to impair the full
and punctual performance of each of its obligations hereunder,
thereunder or under any of the agreements contemplated by the
letter agreement referred to in Section 6.3 hereof.

9.2.   <u>By GM</u>:  GM represents and warrants to Toyota that
each of this Agreement and the Other Agreements to which it is a
party is a valid and binding obligation of GM and that it knows
of no impediment which is likely to impair the full and punctual
performance of each of its obligations hereunder, thereunder or
under any of the agreements contemplated by the letter agreement
referred to in Section 6.3 hereof.

9.3.   <u>Survival</u>:  All representations, warranties and
guarantees, indemnities and liabilities made or furnished

- 27 -

herein or arising hereunder shall survive any termination of this Agreement or dissolution of the JV Company.

## X.    GENERAL PROVISIONS

10.1.  Assignability:  Except to the extent resulting from a permitted transfer of shares pursuant to this Agreement and the Articles, neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

10.2.  Persons Authorized to Act for the Parties: Except as contemplated by Section 4.1 hereof, each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

10.3.  Notices:  In any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important"), or (iii) transmitted by electronic facsimile transfer marked "Important" (which notice or other communication shall be immediately confirmed by a telex marked "Important") as follows:

- 28 -

If to Toyota, to:

    Toyota Motor Corporation
    1, Toyota-Cho, Toyota
    Aichi 471 Japan
    Telex/Answerback:  4528371/TOYOTA J
    Facsimile Model:  UF 520 III
    Facsimile Call No.:  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
    Attention:  President

If to GM, to:

    General Motors Corporation
    3044 West Grand Boulevard
    Detroit, Michigan 48202 U.S.A.
    Telex/Answerback:  425543/GM COMM DET
    Facsimile Model:  RAPICOM 1500
    Facsimile Call No.:  313-556-6188
    Attention:  Chairman of the Board

If to the JV Company, to:

    New United Motor Manufacturing, Inc.
    45500 Fremont Boulevard
    Fremont, California 94537 U.S.A.
    Telex/Answerback:  (To be supplied)
    Facsimile Model:  (To be supplied)
    Facsimile Call No.:  (To be supplied)
    Attention:  President

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if by postage prepaid registered airmail, and (iii) 24 hours following confirmation by telex with confirmed answerback if notice is given by electronic facsimile transfer.

    10.4.  <u>Third Persons</u>:  Except as contemplated in this Agreement as to the parties hereto and GM Affiliates and Toyota Affiliates and except as contemplated in Sections 4.4 and 5.1 hereof, nothing in this Agreement is intended or shall be con-

strued to confer upon or to give any person or entity any legal
or equitable rights or remedies under or by reason of this
Agreement.

10.5.  Governing Language:  This Agreement and all
other agreements, instruments and notices that are referred to
herein or are supplementary hereto shall be prepared or fur-
nished in and governed and controlled by the English language.

10.6.  Choice of Law:  This Agreement shall be con-
strued and enforced in accordance with and governed by the laws
of the State of California, U.S.A., without giving effect to the
principles of conflict of laws thereof.

10.7.  Entire Agreement, Etc.:  This Agreement consti-
tutes the entire agreement of the parties hereto with respect to
the subject matter hereof.  To the extent that provisions in any
of the Prior Agreements (as that term is hereafter defined) are
inconsistent with any provision of this Agreement, this Agreement
supersedes all prior agreements and understandings, oral and
written, among the parties hereto with respect to the subject
matter hereof, including without limitation the Memorandum of
Understanding (the "Memorandum"), dated February 17, 1983, as
amended, between Toyota and GM and all letter agreements, minutes
of meetings and similar documents dated prior to the date hereof
to which GM, Toyota or any of their respective representatives
are parties (the Memorandum and such letter agreements, minutes
and similar documents being referred to herein as the "Prior
Agreements").

10.8.  <u>Enforcement of this Agreement</u>:  Each party to
this Agreement, solely in connection with any action or
proceeding brought by any other party to this Agreement (on its
own behalf or on behalf of the JV Company) arising out of or
related to this Agreement, hereby (i) agrees that any such action
or proceeding shall be brought only in a federal or state court
of competent subject matter jurisdiction in the State of
California (and no such action or proceeding shall be brought in
any other state or country) and (ii) consents to personal
jurisdiction in any such court provided that service of process
shall be duly made.  Each party hereby agrees that in any such
action or proceeding process may be served upon it by any means
authorized by applicable statutes, rules, treaties and/or
conventions.  In this regard, if such service of process shall be
duly made by any means as aforesaid, no party shall contest the
same or the personal jurisdiction of any such California court in
any court.  The parties' obligations under this Section 10.8
shall survive the expiration or termination of this Agreement or
the dissolution of the JV Company.  Nothing herein shall be
construed to mean that any party to this Agreement has hereby
submitted to the personal jurisdiction of any such court in
connection with any other action or proceeding whatsoever.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be duly executed on its behalf as of the day and year first above written.

NEW UNITED MOTOR MANUFACTURING, INC.

By _____
                President

TOYOTA MOTOR CORPORATION

By _____
            Chairman of the Board

GENERAL MOTORS CORPORATION

By _____
            Chairman of the Board

- 32 -

## AMENDMENT TO SHAREHOLDERS' AGREEMENT

TOYOTA MOTOR CORPORATION ("Toyota"), a corporation organized and existing under the laws of Japan, GENERAL MOTORS CORPORATION ("GM"), a corporation organized and existing under the laws of the State of Delaware, and NEW UNITED MOTOR MANUFACTURING, INC. (the "JV Company"), a close corporation organized and existing under the laws of the State of California, hereby agree to amend the Shareholders' Agreement, dated February 21, 1984, (the "Agreement") as follows:

1.    The following sentence is hereby added to the end of Paragraph 3.1 (a) of the Agreement:

    "The JV Company may also establish additional capacity to assemble annually up to 100,000 light duty pick-up trucks derived from Toyota's current Hilux model or a successor model of comparable specifications."

2.    The second sentence of Paragraph 4.2 of the Agreement is hereby amended by adding at the beginning of that sentence the following phrase:  "Except as otherwise provided in the Letter of Understanding dated April 24, 1989, among Toyota, the JV Company and GM...."

3.    The first sentence of Paragraph 4.4 (b) of the Agreement is hereby deleted and substituted with the following two sentences:

> "Subject to contrary requirements of applicable law, the party purchasing motor vehicles from the JV Company (GM, Toyota or their respective marketing units) shall enjoy any rights and bear any responsibilities under Federal Fuel Economy Laws and Regulations with respect to all such motor vehicles purchased from the JV Company by such party. The JV Company shall maintain accurate records indicating the country of origin of all components and materials included in such motor vehicles, shall provide such records to the purchaser of such motor vehicles, and shall retain such records for such time as may be required by Federal Fuel Economy Laws and Regulations."

4.    Paragraph 6.1 of the Agreement is hereby amended by adding after the phrase "Section 6.3 hereof" the following phrase:

> "and the Letter of Understanding dated April 24, 1989, among Toyota, the JV Company and GM . . . ."

5.    This Amendment shall be effective as of April 24, 1989.

- 2 -

IN WITNESS WHEREOF, the parties have caused three copies of this
Amendment to be signed by their duly authorized representatives.

TOYOTA MOTOR CORPORATION                    GENERAL MOTORS CORPORATION


By: _____                  By: _____

Title: ____Director_____                 Title: __Assistant Treasurer__



NEW UNITED MOTOR MANUFACTURING, INC.


By: _____

Title: ____President_____

- 3 -

## SECOND AMENDMENT TO SHAREHOLDERS' AGREEMENT

TOYOTA MOTOR CORPORATION ("Toyota"), a corporation organized and existing under the laws of Japan, GENERAL MOTORS CORPORATION ("GM"), a corporation organized and existing under the laws of the State of Delaware, and NEW UNITED MOTOR MANUFACTURING, INC. (the "JV Company"), a close corporation organized and existing under the laws of the State of California, hereby agree to amend the Shareholders' Agreement, dated February 21, 1984, as amended on April 24, 1989, (the "Agreement"), as follows:

1.  The last sentence of Paragraph 3.3(a) of the Agreement is hereby deleted.

2.  The following sentence is hereby added to the end of Paragraph 3.1(a) of the Agreement:

    "The JV Company may also maintain a capacity to assemble annually 150,000 light duty pick-up trucks derived from Toyota's current Hilux model or a successor model of comparable specifications."

3.  This Second Amendment shall be effective as of August 26, 1992.

IN WITNESS WHEREOF, the parties have caused three copies of this Second Amendment to be signed by their duly authorized representatives.

TOYOTA MOTOR CORPORATION               GENERAL MOTORS CORPORATION

By: _____           By: _____
    K. Kato                                M. T. Hogan
    Managing Director                      Executive Director of
                                           Planning, North American
                                           Operations

NEW UNITED MOTOR MANUFACTURING, INC.

By: _____
    O. Kimura
    President

## THIRD AMENDMENT TO
## SHAREHOLDERS' AGREEMENT

TOYOTA MOTOR CORPORATION, a corporation organized and existing under the laws of Japan ("Toyota"), GENERAL MOTORS CORPORATION, a corporation organized and existing under the laws of the State of Delaware ("GM"), and NEW UNITED MOTOR MANUFACTURING, INC., a corporation organized and existing under the laws of the State of California ("JV Company") hereby agree to amend the SHAREHOLDERS' AGREEMENT dated February 21, 1984, as amended on April 24, 1989 and August 26, 1992 ("Agreement"), as follows:

1.    Section 1.1(f) of the Agreement, entitled "Other Agreements," is hereby amended by adding the following at the end thereof:

> ", as the same may be amended from time to time."

2.    Section 1.1 of the Agreement, entitled "Defined Terms," is hereby amended to delete and replace subparagraph (o) with the following subparagraphs:

> "(o)    "Vehicles" means automotive vehicles manufactured by the JV Company under the license of Toyota for GM or Toyota or their respective designated marketing units."

3.    Section 2.1 of the Agreement, entitled "Term," is hereby deleted and replaced by the following Section:

> "2.1.  Term:  This Agreement shall become binding upon its execution by each of the parties hereto and shall remain in full force and effect until the dissolution of the JV Company pursuant to Section 8.1. hereof or until the parties agree to terminate this Agreement, whichever is earlier."

4.    Sections 3.1(a) and (b) of the Agreement, entitled "Organization and Purpose," are hereby deleted and replaced with the following Section 3.1(a), and Section 3.1(c) is renumbered as 3.1(b):

> "3.1.  Organization and Purpose:
>
> (a) The limited purpose of the JV Company shall be to manufacture in the United States those specific Vehicles agreed upon in writing by GM and Toyota and related automotive parts and components."

7.    This Amendment shall be effective as of February 1, 1997.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed in triplicate by their duly authorized representatives.

TOYOTA MOTOR CORPORATION

NEW UNITED MOTOR
MANUFACTURING, INC.

By: _____

By: _____

Koichiro Noguchi
Director

Iwao Itoh
President

GENERAL MOTORS CORPORATION

By: _____

Paul W. Schmidt
Executive in Charge
NAO Finance

## FOURTH AMENDMENT TO SHAREHOLDERS' AGREEMENT

TOYOTA MOTOR CORPORATION, a corporation organized and existing under the laws of Japan ("Toyota"), MOTORS LIQUIDATION COMPANY, a corporation organized and existing under the laws of the State of Delaware and formerly known as GENERAL MOTORS CORPORATION ("MLC"), and NEW UNITED MOTOR MANUFACTURING, INC., a corporation organized and existing under the laws of the State of California ("JV Company") hereby agree to amend the SHAREHOLDERS' AGREEMENT dated February 21, 1984, as amended on April 24, 1989, August 26, 1992 and February 1, 1997 (the "Agreement"), as follows:

1.      Section 3.2 of the Agreement, is hereby amended by adding the following subparagraph (g) at the end of such Section:

"(g)      Notwithstanding anything to the contrary in this Section 3.2, the Bylaws may provide for an odd number of directors, with one director not designated as either a Series A Director or a Series B Director; any such director shall be elected and hold office as provided in the Bylaws. During any period in which there are no Series A Directors or no Series B Directors in office, the provisions of Article III, Section 8 of the By-Laws shall control."

2.      The undersigned shareholders of the JV Company hereby authorize the execution of this Amendment by the JV Company

3.      This Amendment shall be effective as of August 26, 2009.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed in triplicate by their duly authorized representatives.

TOYOTA MOTOR CORPORATION

By:
Name:
Title:

NEW UNITED MOTOR
MANUFACTURING, INC.

By:
Name:
Title:    KUNIHIKO OGURA
          PRESIDENT & CEO

MOTORS LIQUIDATION COMPANY

By:
Name:    Ted Stenger
Title:    EVP