# Exhibit C

**COMPILED VERSION**

*Does not include Amed #4*

---

# VEHICLE LICENSE AGREEMENT

by and among

## TOYOTA MOTOR CORPORATION,

## NEW UNITED MOTOR MANUFACTURING, INC.

and

## GENERAL MOTORS CORPORATION

---

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | DEFINITIONS | 1 |
| | Section 1.1. Defined Terms | 1 |
| II. | TECHNICAL INFORMATION, LICENSE, ETC | 2 |
| | Section 2.1. Technical Information | 2 |
| | Section 2.2. Grant of License | 3 |
| | Section 2.3. Purchases from Third Parties | 3 |
| | Section 2.4. Royalty | 4 |
| | Section 2.5. Calculation of Royalty | 5 |
| | Section 2.6. Payment of Royalty | 6 |
| III. | TECHNICAL ASSISTANCE | 7 |
| | Section 3.1. Furnishing of Technical Assistance | 7 |
| | Section 3.2 Actual Implementation of Technical Assistance | 8 |
| | Section 3.3. Payment for Technical Assistance | 8 |
| IV. | GENERAL PROVISIONS | 9 |
| | Section 4.1. Nondisclosure of Information | 9 |
| | Section 4.2. Liability | 11 |
| | Section 4.3. Agreement Term and Termination | 11 |
| | Section 4.4. Interest on Overdue Payment | 12 |
| | Section 4.5. Force Majeure | 12 |
| | Section 4.6. Survival | 13 |
| | Section 4.7. Assignability | 13 |
| | Section 4.8. Persons Authorized to Act for the Parties | 13 |
| | Section 4.9. Notice 5 | 13 |
| | Section 4.10. Third Persons | 14 |
| | Section 4.11. Governing Language | 15 |
| | Section 4.12. Choice of Law | 15 |
| | Section 4.13. Entire Agreement, Etc. | 15 |
| | Section 4.14. Arbitration | 16 |

ANNEX A: CATEGORIES OF TECHNICAL INFORMATION UNDER SECTION 2.1.

## VEHICLE LICENSE AGREEMENT

This VEHICLE LICENSE AGREEMENT ("Agreement") is made and entered into on and as of the ___ day of _____, 1984, by and among Toyota Motor Corporation, a corporation organized and existing under the laws of Japan ("Toyota"), New United Motor Manufacturing, Inc., a close corporation organized and existing under the laws of the State of California (the "JV Company"), and General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware ("GM");

### WITNESSETH:

WHEREAS, the JV Company, which is under the joint control of but is separate and distinct from GM and Toyota, was formed for the limited purpose of manufacturing in the United States a specific automotive vehicle not heretofore manufactured and certain components related thereto:

NOW, THEREFORE, the parties hereto agree as follows:

### I.   DEFINITIONS

1.1. <u>Defined Terms</u>: In addition to the terms which have been previously, or are hereafter, defined herein, terms used herein which are defined in Section 1.1 of the Shareholders' Agreement ("Shareholders Agreement"), dated the date hereof, among the JV Company, GM and Toyota are used herein as so defined when used herein with initial capital letters unless otherwise defined in this Agreement. In addition, the following terms shall have the following meanings when used herein with initial capital letters:

(a)   "Agreement Term" means the term of this Agreement as defined in Section 4.3 hereof.

3

*(b)     'Licensed Vehicles' means the motor vehicles, including subsequent model changes, which shall be developed by Toyota for the JV Company for manufacture and sale by the JV Company. This definition also includes optional equipment for such vehicles.[1]*

(c)     "Non-Toyota Parts" means the parts, components and materials which may be manufactured or purchased by the JV Company from any person or entity other than Toyota (any such person or entity being referred to herein as a "Non-Toyota supplier") for use in manufacturing the Licensed Vehicles.

*(d)     "GM-Specific Vehicles" means automotive vehicles manufactured by the JV Company for GM or its designated marketing unit under the license of Toyota.*

*(e)     "Toyota-Specific Vehicles" means automotive vehicles manufactured by the JV Company for Toyota or its designated marketing unit under the license of Toyota.[2]*

*(f)    'PRA' as used in this Agreement refers both to the Product Responsibility Agreement, dated February 21, 1984, among Toyota, GM and the JV Company and to the Product Responsibility Agreement for Toyota-Specific Vehicles, dated March 31, 1986, among Toyota, GM, the JV Company and Toyota Motor Sales, U.S.A., Inc., as mended dated April 24, 1989.[3]*

## II. TECHNICAL INFORMATION, LICENSE, ETC.

2.1.    Technical Information: During the Agreement Term Toyota shall, to the extent reasonably necessary for the manufacture of the Licensed Vehicles and/or the manufacture or purchase of the Non-Toyota Parts by the JV Company, furnish the JV Company such technical information, data and other like information which Toyota possesses at the time of this Agreement or may hereafter develop or acquire and which are within the categories identified in Annex A

---

[1]    Revised by First Amendment.

[2]    Revised by Third Amendment.

[3]    Added by First Amendment.

attached hereto ("Technical Information"). The JV Company acknowledges that all Technical Information is Toyota's trade secret and agrees that it shall observe the nondisclosure covenants applicable to it contained in Section 4.1 hereof with respect thereto.

2.2. Grant of License: (a) Toyota hereby grants to the JV Company an irrevocable and nonexclusive license ("License") to use Technical Information for the purposes specified in Section 2.1 hereof during the Agreement Term.

(b) The License shall be nondivisible, nontransferable, nonassignable and shall not include a right or privilege to a sublicense. Nothing in this Section 2.2(b) shall affect Company 5 rights under Section 2.3 hereof.

(c) Except as mentioned in Section 4.1(b) hereof, nothing herein shall be construed to grant the JV Company any license to use Technical Information to manufacture any service parts for the Licensed Vehicles or otherwise.

2.3. Purchases from Third Parties: (a) The JV Company may, to the extent reasonably necessary, furnish Non-Toyota Suppliers Technical Information to purchase from them Non-Toyota Parts, provided that the JV Company observes the covenants applicable to it in Section 4.1 hereof.

(b) Nothing in this Agreement shall be deemed or construed to create any relationship, contractual or otherwise, between Toyota and Non-Toyota suppliers. Except as other-wise provided in Section 4.2(b) hereof or in the PRA, the JV Company shall fully indemnify and hold Toyota harmless from and against all losses, damages, claims, costs and expenses, including attorneys' fees, which may be sought by Non-Toyota Suppliers or may arise from any act or omission to act by the JV Company or Non-Toyota Suppliers.

2.4. Royalty: (a) In consideration of the License, the JV Company shall pay Toyota royalties, the amount of which shall be calculated in accordance with the provisions of Section 2.5 hereof and shall be paid as provided in Section 2.6 hereof.

(b) The JV Company may withhold from the royalty payments hereunder any present or future withholding taxes which the JV Company is required to withhold and pay over

to taxing authorities in the United States for the account of Toyota; provided that the JV Company, on behalf of and in the name of Toyota, shall pay such taxes and arrange to furnish Toyota with proper certificates for such payments from such authorities to enable Toyota to obtain tax credit therefor against its Japanese taxes.

(c) Any handling fees or other similar expenses incurred in remitting royalties shall not be deducted by the JV Company in remitting royalties to be paid under this Agreement.

2.5. <u>Calculation of Royalty</u>: (a) The JV Company shall pay Toyota royalties equal to 3% of the aggregate amount of "U.S. Vehicle Content". For purposes of this Agreement, "U.S. Vehicle Content" means the excess of (i) the JV Company's aggregate gross sales proceeds from the sale of the Licensed Vehicles accruing in any calendar quarter during the Agreement Term over (ii) the sum of (A) the aggregate of the amounts accruing as the purchase prices of all components and materials for the Licensed Vehicles purchased by the JV Company from Toyota in such calendar quarter and (B) all costs and expenses of delivery of such components and materials to the JV Company's designated port of entry in the United States, including without limitation all such costs and expenses of or relating to freight, insurance, customs, customs handling and brokerage, and terminal and wharfage charges, provided that in the event that the aggregate amount referred to in clause (ii) hereof exceeds the amount referred to in clause (i) hereof in any such calendar quarter, such excess amount shall be carried over to any subsequent calendar quarter for the calculation of the royalty hereunder.

(b) If any amount referred to in Section 2.5(a) (ii) hereof is in any currency other than U.S. Dollars, such amount shall be converted into U.S. Dollars using the last quoted purchase exchange rate at the Bank of Tokyo in Tokyo, Japan on the date of shipment of the components and materials concerned.

(c) The JV Company shall keep records and supporting documentation necessary to verify the calculation of the royalty hereunder and Toyota may at any time during normal business hours inspect such records and documentation for the purpose of verifying the calculation of royalty payments hereunder, provided, however, that no such inspection right shall



6

exist with respect to royalty payments certified pursuant to Section 2.6 hereof more than three years prior to the date of any request to inspect such records and documentation.

(d) Notwithstanding any other provision of this Agreement, any computation of royalty payments hereunder shall be conclusive and binding upon the parties hereto and not be subject to challenge hereunder or otherwise unless such computation shall be so challenged within three years from the date of the certified statement prepared by the JV Company pursuant to Section 2.6 hereof.

2.6. <u>Payment of Royalty</u>: The JV Company shall, within 30 calendar days after the end of each calendar quarter, furnish to Toyota at an address to be designated by Toyota as provided herein the JV Company's certified statement showing the calculation of the amount of royalties accruing hereunder during such calendar quarter, and the JV Company shall remit the accrued royalties hereunder in U.S. Dollars within 60 calendar days of the end of each calendar quarter during the Agreement Term by bank wire transfer to a bank account to be designated by Toyota for such purpose.

III.    <u>TECHNICAL ASSISTANCE</u>

3.1. <u>Furnishing of Technical Assistance</u>: To the extent reasonably necessary to enable the JV Company to manufacture the Licensed Vehicles, Toyota shall use its best efforts to render to the JV Company technical assistance. The following is a nonexclusive list of examples of the types of such technical assistance to be rendered by Toyota to the JV Company hereunder:

(a) Prototype vehicles;

(b) Know-how and services concerning plant design (process planning, building design, layout, equipment planning and similar matters);

(c) Services concerning equipment procurement and installation;

(d) Process samples and white body;

(e) Dispatch of instructors; and

(f)  Training of the personnel of the JV Company in Japan.

3.2. <u>Actual Implementation of Technical Assistance</u>: Any technical assistance under Section 3.1 hereof shall be actually implemented after the parties agree on the nature such technical assistance and terms and conditions relating rendering of such technical assistance, provided that the amount to be paid therefor shall be determined on a cost basis.

3.3. <u>payment for Technical Assistance</u>: Payments for technical assistance under Article III hereof shall be made as follows:

(a) The JV Company shall remit the amount payable under Article III hereof to Toyota by bank wire transfer within seven days after actual receipt by the JV Company of Toyota's invoice (including that sent by telex or facsimile) therefor.

(b) The JV Company may withhold from the amount payable to Toyota for technical assistance hereunder any present or future withholding taxes (if any) which the JV Company is required to withhold and pay over to taxing authorities in the United States for the account of Toyota, provided that the JV Company, on behalf of and in the name of Toyota shall pay such taxes and arrange to furnish Toyota with proper certificates for such payments from such authorities to enable Toyota to obtain tax credit therefor against its Japanese taxes.

(c) Any handling fees or other similar expenses incurred in remitting payments for technical assistance shall not be deducted by the JV Company in remitting such payments.

(d) All payments under Article III hereof shall be made in Japanese Yen, unless Toyota shall instruct that such payments be made in U.S. Dollars.

IV.  <u>GENERAL PROVISIONS</u>

4.1. <u>Nondisclosure of Information</u>: (a) Any Technical Information furnished by Toyota hereunder, whether in writing, verbally or in any other form, is Toyota's trade secret and,

except as contemplated in Sections 2.3 and 4.1(d) hereof, the JV Company shall not, without Toyota's prior written consent, disclose or divulge any such Technical Information to any third party.

(b)     Subject to the terms of Section 4.1(d) hereof, unless otherwise permitted by Toyota (which permission as to service parts to be manufactured by the JV Company for sale to GM is granted pursuant to Section 2.2(b) of the Service Parts License Agreement provided that nothing herein shall affect Toyota's rights against GM under such Service Parts License Agreement in the event of any breach thereof by GM); the JV Company shall use Technical Information solely for the purposes set forth in Section 2.1 hereof and for no other purpose. If requested by Toyota during the Agreement Term, the JV Company shall, at its sole expense, return Technical Information in tangible form previously provided to the JV Company by Toyota hereunder which Technical Information, as a result of product changes and similar causes, is no longer reasonably necessary for the JV Company.

(c)     The JV Company shall take all reasonably necessary precautions in order to prevent unauthorized disclosure of the Technical Information to third parties; including without limitation maintaining all tangible Technical Information in a secure location when not in use. The JV Company shall also obtain from all of its employees, officers, directors, Non-Toyota Suppliers and others to whom any such Technical Information is disclosed and others whom the JV Company reasonably believes have actual access thereto, a nondisclosure and nonuse agreement containing standard provisions in the U.S.A. in respect of matters such as those referred to in this Section 4.1(c).

(d)     To the extent that it would otherwise be lawfully permitted to do so, the JV Company may disclose Technical Information to GM, provided, however, that GM shall have agreed in writing in favor of the JV Company and Toyota to maintain such Technical Information in substantially the same manner as GM maintains its most confidential proprietary information so as to prevent the disclosure thereof to third parties.

9

(e) *Notwithstanding Section 4.1(d) hereof, but with respect to the information only furnished by Toyota to the JV Company hereunder exclusively for the Toyota-Specific Vehicles, the following shall apply:*

(i) *The JV Company may disclose to GM the information relating to production engineering and production process in conformance with the nondisclosure requirements of Sections 4.1(a) through (d) hereof applicable to Technical Information.*

(ii) *The JV Company shall not disclose to GM or any third party any information related to product planning, product engineering, product specifications, model cycle or quality related information, except that NUMMI may disclose such information to GM only when necessary for the management and operation of NUMMI, provided, however, that nothing herein shall prohibit NUMMI from disclosing such information to any Non-Toyota Supplier including GM, if applicable, when such Non-Toyota supplier needs such information, pursuant to this Agreement.*

*Any disclosure under this paragraph shall be in accordance with the Order issued by the Federal Trade Commission, In the Matter of General Motors Corporation, et. la., Docket No. C-3132.*[4]

4.2. <u>Liability</u>: (a) Subject to the provisions of the PRA, it is acknowledged that Toyota has only extended to the JV Company a mere permission to use Technical Information and that the JV Company assumes all risks and responsibilities as to its use of Technical Information and technical assistance and the results thereof.

(b) Toyota represents and warrants that, to the knowledge of responsible Toyota officials to date, there is no reason to believe that the manufacture, use or sale of the Licensed Vehicles will constitute an infringement of any patent held by any third party. Should any patent infringement claim arise, the parties will mutually cooperate in investigation and defense against such claim. In no event shall any party have any claim or right of action against

---

[4] Added by First Amendment.

any other party arising out of any such patent infringement claim except in the event of a breach of the representation and warranty set forth in the first sentence of this Section 4.2(b).

4.3. <u>Agreement Term and Termination</u>: (a) *This Agreement shall become effective upon its execution by the parties hereto and shall remain in full force and effect until the dissolution of the JV Company (such period being referred to herein as the "Agreement Term").*[5]

(b) Notwithstanding the foregoing, this Agreement the License shall terminate immediately upon the dissolution of and of the JV Company or upon the disposition by the Toyota Group of all of its Shareholder interest in the JV Company in accordance with Article 6 of the Articles of Incorporation of the JV Company or the applicable provisions of the Shareholders' Agreement.

(c) Any and all financial obligations and liabilities of the JV Company accruing before the termination or expiration of this Agreement shall survive the termination or expiration of this Agreement, and shall become without Toyota's demand due and payable immediately upon such termination or expiration.

(d) Unless otherwise instructed by Toyota, the JV Company shall upon termination or expiration of this Agreement return to Toyota, in a manner reasonably designated by Toyota and at the JV Company's cost, all of the tangible Technical Information furnished to the JV Company hereunder and all reproductions thereof then in the possession of the JV Company.

4.4. <u>Interest on Overdue Payment</u>: If any payment to Toyota by the JV Company under this Agreement is delayed, the JV Company shall pay interest to Toyota on each such delayed payment at the rate provided in Section 7.2 of the Shareholders' Agreement.

4.5. <u>Force Majeure</u>: No party shall in any way be responsible to any other party for failure of or delay in the performance of obligations other than payment of money under this Agreement if the causes therefor are attributable to any event beyond its reasonable control.

---

[5] Revised by Third Amendment.

4.6. <u>Survival</u>: All representations, warranties and indemnities, liabilities and disclaimers and limitations of the foregoing made, furnished or imposed herein or arising hereunder shall survive any termination of this Agreement or dissolution of the JV Company.

4.7. <u>Assignability</u>: Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

4.8. <u>Persons Authorized to Act for the Parties</u>: Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

4.9. <u>Notices</u>: In any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important") or (iii) transmitted by electronic facsimile transfer marked "Important" (which notice or other communication shall be immediately confirmed by a telex marked "Important") as follows:

If to Toyota, to:
    Toyota Motor Corporation
    1, Toyota-Cho, Toyota
    Aichi 471 Japan
    Telex/Answerback:    4528371/TOYOTA J
    Facsimile Model:  UF 520 ISSSI
    Facsimile Call No.:    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
    Attention:  General Manager, Overseas Project Office

If to GM, to:
    Chevrolet Motor Division
    General Motors Corporation
    30001 Van Dyke Avenue
    Warren, Michigan 48090 U.S.A.
    Telex/Answerback:    235547/CHEV CO WARN
    Facsimile Model: Rapicom 1500
    Facsimile Call No.:    313-492-6842
    Attention:    General Manager

JV Company, to:

    New United Motor Manufacturing, Inc.
    45500 Fremont Boulevard
    Fremont, California 94537 U.S.A.
    Telex/Answerback:    (To be supplied)
    Facsimile Model:    (To be supplied)
    Facsimile Call No.:    (To be supplied)
    Attention:    Executive Vice president

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if by postage prepaid registered airmail, and (iii) 24 hours following confirmation by telex with confirmed answerback if notice is given by electronic facsimile transfer.

    4.10. <u>Third Persons</u>: Except as contemplated in this Agreement as to the parties hereto, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

    4.11. <u>Governing Language</u>: This Agreement and all other agreements, instruments and notices that are referred to herein or are supplementary hereto shall be prepared or furnished in and governed and controlled by the English language.

    4.12. <u>Choice of Law</u>: This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

4.13. <u>Entire Agreement, Etc.</u>: This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof. To the extent that provisions in any of the Prior Agreements (as that term is hereafter defined) are inconsistent with any provision of this Agreement, this Agreement supersedes all prior agreements and understandings, oral and written, among the parties hereto with respect to the subject matter hereof, including without limitation the Memorandum of understanding (the "Memorandum"), dated February 17, 1983, as amended, between Toyota and GM and all letter agreements, minutes of meetings and similar documents dated prior to the date hereof to which GM, Toyota or any of their respective representatives are parties (the Memorandum and such letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

4.14. <u>Arbitration</u>: Any dispute arising between the parties hereto in connection with this Agreement or the agreement referred to in Section 4.1(d) hereof shall be finally settled by arbitration. If Toyota is the initiating party, the arbitration shall be held in San Francisco, California, U.S.A. in accordance with the rules of the American Arbitration Association. If the JV Company or GM is the initiating party, the arbitration shall be held in Tokyo, Japan in accordance with the rules of the Japan Commercial Arbitration Association. Any such arbitration proceedings shall be conducted in English. The award rendered by the arbitrators shall be final. An action or proceeding to enforce such award may be brought in any court of competent jurisdiction. The costs of any such arbitration proceedings shall be allocated as the arbitrators shall decide.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

                                                  NEW UNITED MOTOR
                                                  MANUFACTURING, INC.

                                                  By_____
                                                                President

TOYOTA MOTOR CORPORATION By

By_____
               President


GENERAL MOTORS CORPORATION

By_____
               President

Annex A

## CATEGORIES OF TECHNICAL INFORMATION UNDER SECTION 2.1

1. Product and Engineering:
    (i) Specifications information;
    (ii) Drawings;
    (iii) Parts list;
    (iv) Engineering standards;
    (v) Sample parts. (Only one car set of sample parts required for investigation of U.S. sourcing.)

2. Production and Quality Assurance:

(1) Information concerning production and inspection of the Licensed Vehicle:
    (i) Process planning sheet and flow chart;
    (ii) Jig location drawings and welding spot instructions;
    (iii) Processing conditions sheet;
    (iv) Raw materials requirements per car and consumable list;
    (v) Quality standards;
    (vi) Inspection standards of vehicles and parts;
    (vii) Measurement methods (emissions, brakes, dimensions, etc.);
    (viii) Completed vehicle inspection standards, etc.

(2) Information and services concerning plant operations:

    (i) Standard work sheet;
    (ii) Equipment operating manuals;
    (iii) Working procedures and manuals;
    (iv) Inspection procedures and manuals;
    (v) Maintenance standards and maintenance procedures;
    (vi) Various formats, vouchers, etc.

3. Substitute Technical Information:

Any information, written materials or other matter which may be developed in the future as a complete or partial substitute for any item under Items 1 or 2 above.