# Exhibit E

09-50026-mg    Doc 5856-5    Filed 05/24/10    Entered 05/24/10 23:01:46    Exhibit E
Pg 1 of 17

# SERVICE PARTS LICENSE AGREEMENT

by and between

TOYOTA MOTOR CORPORATION

and

GENERAL MOTORS CORPORATION

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
|  | Section 1.1.   Defined Terms | 1 |
| II. | TECHNICAL INFORMATION, LICENSE, ETC. | 3 |
|  | Section 2.1.   Technical Information | 3 |
|  | Section 2.2.   Grant of License | 3 |
|  | Section 2.3.   Royalty | 4 |
|  | Section 2.4.   Payment of Royalty | 6 |
|  | Section 2.5.   Nondisclosure of Information | 6 |
|  | Section 2.6.   Liability | 7 |
| III. | GENERAL PROVISIONS | 8 |
|  | Section 3.1.   Agreement Term and Termination | 8 |
|  | Section 3.2.   Interest on Overdue Payment | 9 |
|  | Section 3.3.   Force Majeure | 9 |
|  | Section 3.4.   Assignability | 9 |
|  | Section 3.5.   Persons Authorized to Act for the Parties | 9 |
|  | Section 3.6.   Notices | 10 |
|  | Section 3.7.   Third Persons | 11 |
|  | Section 3.8.   Governing Language | 11 |
|  | Section 3.9.   Choice of Law | 11 |
|  | Section 3.10.  Entire Agreement, Etc. | 11 |
|  | Section 3.11.  Arbitration | 12 |
|  | Section 3.12.  Survival | 12 |

ANNEX A: Certain Parts Referred to in Section 1.1(c)

## SERVICE PARTS LICENSE AGREEMENT

This SERVICE PARTS LICENSE AGREEMENT ("Agreement") is made and entered into on and as of the     day of     , 1984 by and between Toyota Motor Corporation, a corporation organized and existing under the laws of Japan ("Toyota"), and General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware ("GM");

### WITNESSETH:

WHEREAS, New United Motor Manufacturing, Inc. (the "JV Company"), a close corporation organized and existing under the laws of the State of California, which is under the joint control of but is separate and distinct from each of GM and Toyota, was formed for the limited purpose of manufacturing in the United States a specific automotive vehicle not heretofore manufactured and certain components related thereto; and

WHEREAS, GM, as the purchaser of such vehicle, desires to make arrangements for the supply of service parts therefor;

NOW, THEREFORE, the parties hereto agree as follows:

### I.  DEFINITIONS

1.1.  <u>Defined Terms</u>:  In addition to the terms which

- 1 -

have been previously, or are hereafter, defined herein, terms used herein which are defined in Section 1.1 of the Shareholders' Agreement (the "Shareholders' Agreement"), dated the date hereof, among the JV Company, GM and Toyota are used herein as so defined when used herein with initial capital letters unless otherwise defined in this Agreement. In addition, the following terms shall have the following meanings when used herein with initial capital letters:

(a) "Vehicle License Agreement" means the Vehicle License Agreement, dated the date hereof, among the JV Company, GM and Toyota.

(b) "Licensed Vehicles" means the "Licensed Vehicles" as defined in Section 1.1(b) of the Vehicle License Agreement.

(c) "Licensed Parts" means service parts for use in the repair, service or equipping of Licensed Vehicles sold by the JV Company to GM which <u>are not supplied by Toyota</u>, excluding those common parts listed in Annex A hereto which are commonly used for GM's other vehicles and common and interchangeable parts as agreed upon by Toyota and GM.

(d) "Agreement Term" means the term of this Agreement as defined in Section 3.1 hereof.

- 2 -

II. <u>TECHNICAL INFORMATION, LICENSE, ETC.</u>

2.1. <u>Technical Information</u>: During the Agreement Term, Toyota shall, to the extent reasonably necessary for the manufacture, assembly or purchase by GM of the Licensed Parts, furnish GM with such technical information, data and other like information including without limitation drawings for service parts and engineering standards which Toyota possesses at the time of this Agreement or may hereafter develop or acquire (collectively, the "Technical Information"). GM acknowledges that all Technical Information is Toyota's trade secret and agrees that it shall observe the covenants applicable to it contained in Section 2.6 hereof with respect thereto.

2.2. <u>Grant of License</u>: Toyota hereby grants to GM an irrevocable and nonexclusive license ("License") during the Agreement Term (a) to use Technical Information furnished to GM by Toyota hereunder to manufacture, assemble or purchase from third parties Licensed Parts, (b) to permit the JV Company (and the JV Company's component suppliers) to use Technical Information and the technical information furnished to the JV Company under Sections 2.1 and 2.3 of the Vehicle License Agreement to manufacture, assemble and sell Licensed Parts to GM, and (c) to permit third-party suppliers to use Technical Information to manufacture, assemble and sell Licensed Parts to GM (GM shall cause such suppliers to keep Technical Information in substantially the same manner as GM does with similar

- 3 -

confidential information owned by it.); provided that sale and distribution of Licensed Parts shall be made through GM's service parts distribution division or divisions (presently, General Motors Warehousing and Distribution Division). The License shall be nondivisible, nontransferable and nonassignable and shall not include a right or privilege to grant a sublicense. Nothing in the immediately preceding sentence shall affect GM's rights under the first sentence of this Section 2.2.

2.3. Royalty: (a) In consideration of the License, (i) GM shall pay to Toyota the amount of (U.S.) $3,000,000 as an initial royalty upon the date of this Agreement by bank wire transfer to a bank account to be designated by Toyota and (ii) GM shall pay to Toyota running royalties on all Licensed Parts sold by GM at the rate of 3% of the arm's length cost thereof (including freight, insurance, handling and brokerage charges, sales and excise taxes, and similar costs and expenses) to GM's service parts distribution division or divisions (presently, General Motors Warehousing and Distribution Division). Running royalties shall accrue at the time of sale by GM, provided, however, that any Licensed Parts which have been returned to GM by reason of any defects shall be deemed to have not been Licensed Parts and appropriate adjustments therefor shall be made.

- 4 -

(b) GM may withhold from the royalty payments hereunder any present or future withholding taxes which GM is required to withhold and pay over to taxing authorities in the United States for the account of Toyota, provided that GM, on behalf of and in the name of Toyota, shall pay such taxes and arrange to furnish Toyota with proper certificates for such payments from such authorities to enable Toyota to obtain tax credit therefor against its Japanese taxes.

(c) Any handling fees or other similar expenses incurred in remitting royalties shall not be deducted by GM in remitting royalties to be paid under this Agreement.

(d) GM shall keep records and supporting documentation necessary to verify the calculation of running royalties and, upon reasonable notice in writing, Toyota may at any time during normal business hours inspect such records and documentation for the purpose of verifying the calculation of running royalties hereunder, provided, however, that no such inspection right shall exist with respect to royalty payments certified pursuant to Section 2.4 hereof more than three years prior to the date of any request to inspect such records and documentation.

(e) Notwithstanding any other provision of this Agreement, any computation of royalty payments hereunder shall be conclusive and binding upon the parties hereto and not be subject to challenge hereunder or otherwise unless such computation shall be so challenged within three years from the date of the certified statement prepared by GM pursuant to Section 2.4 hereof.

2.4. <u>Payment of Royalty</u>: GM shall, within 30 calendar days after the end of each calendar quarter, furnish to Toyota at an address to be designated by Toyota as provided herein GM's certified statement showing the calculation of the amount of running royalties accruing during such calendar quarter, and GM shall remit the accrued running royalties in U.S. Dollars within 60 calendar days of the end of each calendar quarter during the Agreement Term by bank wire transfer to a bank account to be designated by Toyota for such purpose.

2.5. <u>Nondisclosure of Information</u>: (a) Any Technical Information furnished by Toyota hereunder is Toyota's trade secret and, except as contemplated in Section 2.2 hereof, shall be maintained by GM in substantially the same manner as GM maintains its most confidential proprietary information owned by it so as to prevent the disclosure thereof to third parties.

(b) If requested by Toyota during the Agreement Term, GM shall, at its sole expense, return Technical Information previously provided by Toyota hereunder which Technical Information, as a result of product changes, is no longer reasonably necessary for the continued manufacture, assembly or purchase of Licensed Parts.

(c) Each of the foregoing obligations for the maintenance of confidential Technical Information is subject to the terms of the PRA.

2.6. <u>Liability</u>: (a) Subject to the provisions of the PRA, it is acknowledged that Toyota has only extended to GM a mere permission to use Technical Information and that GM assumes all risks and responsibilities as to its use of Technical Information and the results thereof.

(b) Toyota represents and warrants that, to the knowledge of responsible Toyota officials to date, there is no reason to believe that the manufacture, use or sale of the Licensed Parts will constitute an infringement of any patent held by any third party. Should any patent infringement claim arise, the parties will mutually cooperate in investigation and defense against such claim. In no event shall either party have any claim or right of action against the other party arising out of any such patent infringement claim except in the event of a breach of the representation and warranty set forth in the first sentence of this Section 2.6(b).

III. <u>GENERAL PROVISIONS</u>

3.1. <u>Agreement Term and Termination</u>: (a) This Agreement shall become effective upon its execution by the parties hereto and shall remain in full force and effect until 12 years have elapsed after the Production Commencement Date, fixed as provided in Section 2.1 of the Vehicle Agreement (such period being referred to herein as the "Agreement Term").

(b) Notwithstanding the foregoing, this Agreement and the License shall terminate immediately upon the dissolution of the JV Company or upon disposition by the Toyota Group of all of its Shareholder interest in the JV Company in accordance with Article 6 of the Articles of Incorporation of the JV Company or the applicable provisions of the Shareholders' Agreement.

(c) Any and all financial obligations and liabilities of GM accruing before the termination or expiration of this Agreement shall survive the termination or expiration of this Agreement, and shall become without Toyota's demand due and payable immediately upon such termination or expiration.

(d) Unless otherwise instructed by Toyota, GM shall upon termination or expiration of this Agreement return to Toyota, in a manner reasonably designated by Toyota and at GM's cost, all of the tangible Technical Information furnished to GM hereunder and all reproductions thereof then in the possession of GM.

(e) Notwithstanding any other provision of this Section 3.1, the expiration or termination of this Agreement shall not affect the obligations of either of the parties under any Other Agreements to which they or either of them are parties, including without limitation the PRA.

3.2. <u>Interest on Overdue Payment</u>: If any payment to Toyota by GM under this Agreement is delayed, GM shall pay interest to Toyota on each such delayed payment at the rate provided in Section 7.2 of the Shareholders' Agreement.

3.3. <u>Force Majeure</u>: No party shall in any way be responsible to the other party for failure of or delay in the performance of obligations other than payment of money under this Agreement if the causes therefor are attributable to any event beyond its reasonable control.

3.4. <u>Assignability</u>: Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

3.5. <u>Persons Authorized to Act for the Parties</u>: Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

3.6. <u>Notices</u>: In any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the information set forth in this Section), such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important"), or (iii) transmitted by electronic facsimile transfer marked "Important" (which notice or other communication shall be immediately confirmed by a telex marked "Important") as follows:

If to Toyota, to:

    Toyota Motor Corporation
    1, Toyota-Cho, Toyota
    Aichi 471 Japan
    Telex/Answerback:   4528371/TOYOTA J
    Facsimile Model:   UF 520 III
    Facsimile Call No.:   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
    Attention:   General Manager, Overseas Project Office

If to GM, to:

    General Motors Warehousing and Distribution Division
    General Motors Corporation
    6060 West Bristol Road
    Flint, Michigan 48554 U.S.A.
    Telex/Answerback:   669999/GMWDD UW
    Facsimile Model: EMT 9160
    Facsimile Call No.:   313-635-6347
    Attention: General Manager.

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if

by postage prepaid registered airmail, and (iii) 24 hours following confirmation by telex with confirmed answerback if notice is given by electronic facsimile transfer.

3.7. **Third Persons**: Except as contemplated in this Agreement as to the parties hereto, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

3.8. **Governing Language**: This Agreement and all other agreements, instruments and notices that are referred to herein or are supplementary hereto shall be prepared or furnished in and governed and controlled by the English language.

3.9. **Choice of Law**: This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

3.10. **Entire Agreement, Etc.**: This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof. To the extent that provisions in any of the Prior Agreements (as that term is hereafter defined) are inconsistent with any provision of this Agreement, this Agreement supersedes all prior agreements and understandings, oral and written, among the parties hereto with respect to the subject matter hereof, including without limitation the Memorandum of Understanding (the "Memorandum"), dated February

17, 1983, as amended, between Toyota and GM and all letter agreements, minutes of meetings and similar documents dated prior to the date hereof to which GM, Toyota or any of their respective representatives are parties (the Memorandum and such letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

3.11. <u>Arbitration</u>: Any dispute arising between the parties hereto in connection with this Agreement shall be finally settled by arbitration. If Toyota is the initiating party, the arbitration shall be held in San Francisco, California, U.S.A., in accordance with the rules of the American Arbitration Association. If GM is the initiating party, the arbitration shall be held in Tokyo, Japan in accordance with the rules of the Japan Commercial Arbitration Association. Any such arbitration proceedings shall be conducted in English. The award rendered by the arbitrators shall be final. An action or proceeding to enforce such award may be brought in any court of competent jurisdiction. The costs of any such arbitration proceedings shall be allocated as the arbitrators shall decide.

3.12. <u>Survival</u>: All representations, warranties and indemnities, liabilities and disclaimers and limitations of the foregoing made, furnished or imposed herein or arising hereunder shall survive any termination of this Agreement or dissolution of the JV Company.

Service Parts License

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

GENERAL MOTORS CORPORATION

By _____
~~President~~
CHAIRMAN OF THE BOARD

TOYOTA MOTOR CORPORATION

By _Shoichiro Toyoda_
President

- 13 -

Annex A

Certain Parts Referred to in Section 1.1(c)

  Bolt
  Screw
  Nut
  Washer
  Pin
  Rivet
  Plug
  Clamp
  Clip
  Grommet
  Snap ring
  Hook fastener
  Straight tube and hose (non-formed)