HEARING DATE AND TIME: June 1, 2010 at 9:30 a.m. (Eastern Time)
OBJECTION DEADLINE: May 25, 2010 at 4:00 p.m. (Eastern Time)

Roger K. Rutledge
RUTLEDGE & RUTLEDGE, P.C.
1083 W. Rex Road, Suite 102
Memphis, TN 38119-3819
Telephone (901) 682-0667
Facsimile (901) 682-0697

Attorneys for Shane J. Robley

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al., | 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF SHANE J. ROBLEY**
**TO MOTION OF GENERAL MOTORS, LLC FOR ENTRY OF ORDER**
**PURSUANT TO 11 U.S.C. § 105 ENFORCING 363 SALE ORDER**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Shane J. Robley ("Robley") would respectfully state and show unto the Court:

**Factual Background**

1. On May 18, 2010, Robley received a motion by General Motors, LLC ("New GM") for Entry of Order Pursuant to 11 U.S.C. §105 Enforcing 363 Sale Order, together with its Notice of Hearing on Motion of General Motors, LLC for Entry of Order Pursuant to 11 U.S.C. §105 Enforcing 363 Sale Order ("New GM Motion"). This was the first service of notice made upon Robley in this matter, and this is the first appearance by Robley in this matter.

2. On June 1, 2009, the date of the Debtors' petition, Debtors filed the Motion for Sale of Property under Section 363(b) ("Motion for Sale"), which included, among other things,

a proposed Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice ("<u>Sale Procedures Order</u>").

        3.        Despite the notice requirements set forth in the Sale Procedures Order, Robley did not receive notice of and consequently could not participate at the hearing scheduled for June 30, 2009 ("<u>Sale Hearing</u>"), to among other things, approve the Master Sale and Purchase Agreement, dated as of June 1, 2009 (the "<u>MSPA</u>"), by and among GM and its Debtor subsidiaries (collectively, the "<u>Sellers</u>") and Vehicle Acquisition Holdings LLC. (the "<u>Purchaser</u>")[1], that purchased substantially all the Debtors' assets (the "Purchased Assets") and purported to assume only certain liabilities specified in the MSPA (the "<u>Assumed Liabilities</u>") and not to assume any liability for injuries sustained by owners of products manufactured by the Debtors (hereinafter "<u>Product Liability Claims</u>") if they occurred prior to July 10, 2009, the date on which closing of the sale under Section 363 of the Bankruptcy Code (11 U.S.C. §363) took place (the "<u>Closing Date</u>").

        4.        Robley also had no notice of the three-day evidentiary hearing on July 5, 2009, in this matter and no opportunity to be heard prior to entry of the Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief (the "<u>363 Sale Order</u>").

---

[1] The purchaser was sponsored by the United States Department of the Treasury (the "U.S. Treasury").

- 2 -

5. Robley is a resident citizen of Tipton County, Tennessee. On November 25, 2008, Robley was driving his 2000 GMC "Jimmy" manufactured by Debtors along U.S. Highway 51 in Tipton County, Tennessee, when he swerved in an attempt to avoid colliding with a vehicle which pulled out onto the roadway in front of him and was severely injured when his vehicle suddenly rolled several times, his seat belt failed to restrain him, and he was ejected from the vehicle. Robley, who was then 26 years old, has been paraplegic since the date of the accident. Tennessee has a one-year statute of limitations on suits for personal injuries, and Robley filed a cause of action in the United States District Court for the Western District of Tennessee on November 23, 2009 (the "<u>District Court Action</u>"), tolling the statute of limitations on his causes of action. At the time he filed suit, Robley became aware that Debtors had filed for relief under the Bankruptcy Act, but at that time the effect of the bankruptcy and terms of the MSPA or the 363 Sale Order upon his causes of action was uncertain, because the 363 Order was the subject of pending appeals. Consequently, Robley included the following pleading at paragraph 11 of the Complaint for Personal Injury from a Dangerous or Defective Product (the "<u>Complaint</u>"):

> References in this Complaint to General Motors Corporation include GM and GM Co. On information and belief, GM assumed liability for product liability claims arising from the sale of products by GM Co., and the question whether such assumption of liability includes or should include claims arising prior to the June 1, 2009, Chapter 11 bankruptcy proceeding of GM Co. is presently on appeal and undecided. GM Co. is included in this Complaint for the purpose of tolling the statute of limitation upon the claims of Robley against GM Co. In the event an automatic stay protecting GM Co. remains in effect under the United States Bankruptcy Code, Robley will upon such representation from GM Co. consent to a stay of these proceedings until he can obtain relief from such automatic stay or until adjudication of his claims against GM Co. in the bankruptcy proceeding, or until the Chapter 11 proceeding of GM Co. is dismissed.

In his Complaint "GM Co." referred to Motors Liquidation Company and "GM" referred to New GM. On January 28, 2010, Robley received correspondence from counsel for New GM, and on

- 3 -

January 29, 2010, Robley received correspondence from counsel for the Debtors advising of the proceedings in this Court and the provisions of the MSPA and the 363 Sale Order. Robley has taken no further action to prosecute the District Court Action and will not take further action in that regard until a determination is made regarding the rights and liabilities of the parties.

6.	Robley denies that, he has failed to abide by the 363 Sale Order as New GM asserts in its motion. Moreover, Robley respectfully submits that he was wrongfully deprived of notice and an opportunity to be heard with respect to the Debtors' motion seeking approval of the MSPA and is therefore not subject to the directives contained in the 363 Sale Order therein, further he contends that his right to seek relief from New GM as a product liability claimant could not be lawfully extinguished under the facts presented in his case. As a result, and pursuant to applicable law, New GM is not entitled to the relief requested in its motion.

### Denial of Procedural Due Process

7.	The obligation to provide interested parties with proper notice of requested relief is a fundamental provision of the Bankruptcy Code. The Bankruptcy Reform Act of 1978, deliberately removed virtually all administrative duties from the bankruptcy judge. *See, e.g., In Re: Sullivan Ford Sales*, 2 B.R. 350, 353-54 (Bankr. D. Me. 1980), citing Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200, H. Rep. No. 95-595, 95th Congress, First Session 4, 89-91, 99, 107 (1977). Under the Bankruptcy Code, the trustee or debtor-in-possession must ensure "parties in interest" receive adequate notice and an opportunity to be heard before their interests may be adversely affected. Significantly, the Bankruptcy Code consigns to the proponents, rather than to the Bankruptcy Court, the preliminary determination of whether a proposed disposition of estate assets adversely affects "parties in interest," and appropriate notice of such requested relief to "parties in interest" is indispensable. *Id.*

8. Section 102(1) of the Bankruptcy Code is founded on fundamental notions of procedural due process. *See In Re: Central Wholesale, Inc.,* 759 F.2d 1440, 1449 (9th Cir. 1985). "The right to be heard" has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950); *In Re: Garland Corp.*, 6 B.R. 456, 459 (Bankr. 1st Cir. 1980).

9. Section 363(b), pursuant to which the 363 Sale Order was entered, provides that, "The Trustee, *after notice and a hearing,* may use, sell, or lease, *other than in the ordinary course of business,* property of the estate." (*emphasis supplied*). Fed. R. Bankr. P. 6004(a) mandates notice of a proposed sale, and Rule 2002(a)(2) requires that "parties in interest" receive notice by mail at least 20 days in advance of any hearing. Fed. R. Bankr. P. 2002(l) empowers the court to order notice by publication where "desirable to supplement the notice" or where notice by mail is impracticable. In turn, "Notice . . . means . . . such notice as is *appropriate under the circumstances . . . .*" 11 U.S.C. §102(1) (emphasis added).

10. The automotive industry routinely gives notice to consumers of product recalls, both by mail and via the media; given the importance of the Sale Hearing, it would not have been impracticable (although it may have been more costly) for the Debtors to use a similar system to send a mailing addressed to all current owners of GM vehicles and/or to put several advertisements on television, such as those used for class action suits, informing those individuals having product liability claims of the Sale Hearing, it's possible effect on their rights, and the deadline for objecting to same.

11. Instead of reaching creditors such as Robley by mail and via the media, the Debtors opted for "Publication Notice" which was effectuated by publishing newspaper articles in the following manner/publications:

- 5 -

> "(i) once in (a) the global edition of *The Wall Street Journal*, (b) the national edition of *The New York Times*, (c) the global edition of *The Financial Times*, (d) the national edition of *USA Today*, (e) *Detroit Free Press/Detroit News*, (f) *Le Journal de Montreal*, (g) *Montreal Gazette*, (h) *The Globe and Mail*, and (i) *The National Post*[2] …".

Consequently, Robley, an unsophisticated claimant who does not frequently read the pages of the aforementioned publications and a resident of a small town in Tipton County[3], Tennessee, in fact, never received notice of the Sale Hearing.

12. Furthermore, in *Mullane*, the Supreme Court stated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action. . . ."[4]; *See also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) (actual notice is a minimal constitutional requirement if name and address of interested party are known).

13. Here, the Debtors' "Publications Notice" was not reasonably calculated to reach creditors in Robley's circumstances, and the Debtors were also obligated to provide Robley with actual notice since he could have been reached directly by mail. As describe above, the automotive industry routinely gives notice to consumers of product recalls, both by mail and via the media[5], such notice would have been reasonably calculated to reach Robley.

14. Indeed, it was also very difficult to comply with the applicable notice requirements given the swiftness with which the 363 sale was brought to a conclusion. The extremely short timeline within which the sale was negotiated and closed evidences this point. As recited in the New GM Motion, it took only forty (40) days following the Debtors' filing of a petition under Chapter 11 on June 1, 2009 for the sale transaction to close on July 10, 2009.

---

[2] In fact, four out of the nine publications listed were newspapers that were only printed in Canada
[3] Upon information and belief, the population of Tipton County is less than sixty thousand
[4] It is beyond dispute that Robley was a "party in interest" entitled to such notice. The term "parties in interest" encompasses not only entities holding "claims" against the debtor, but any entity whose pecuniary interests might be directly and adversely affected by the proposed action. *See, e.g., Yadkin Valley Bank & Trust Co. v. McGee (In Re: Hutchinson)*, 5 F.3rd 750, 756 (4th Cir. 1994).

15.     Further, even if Robley had somehow read the Publication Notice, the Publication Notice was not published until June 11, 2009 [See Certificate of Publication, Docket #2757], and the only date prominently displayed on same was the June 19, 2009 deadline for objections to the Sale Hearing.  Thus, Robley would have had a total of only eight (8) days to file an objection to the Sale Hearing and a total of only nineteen (19) days to prepare for the Sale Hearing.

16.     Robley clearly had a pecuniary interest in the subject matter of the MSPA and his rights were directly and adversely affected without adequate notice or an opportunity to be heard at the Sale Hearing.  The consequences of failing to provide proper notice to a party in interest such as Robley are clear and unavoidable under applicable law.  Robley's rights and interest should not be limited by nor subject to the provisions of the MSPA and the 363 Sale Order, and Robley should be entitled to pursue his causes of action against New GM in the District Court Action. 11 U.S.C. §§727(a)(1), and 1141(a),(d)(3); *City of New York v. New York, New Haven & Hartford R.R.,* 344 U.S. 293, 296-7 (1953).  *See also, e.g., Dalton Dev. Project v. Unsecured Creditors Comm. ( In Re: Unioil)*, 948 F.2nd 678, 683 (10th Cir. 1991) (Chapter 11 claim whose holder was afforded no notice is not subject to discharge).  This was the exact result reached by the First Circuit in *Western Auto Supply Co. v. Savage Arms, Inc. (In Re: Savage Industries, Inc.)*, 43 F.3rd 714, 719-23 (1st Cir. 1994), a case which involved a products liability claim commenced against the purchaser in a Section 363 sale despite provisions in the Section 363 sale agreement which purportedly exonerated the purchasing entity from products liability claims arising prior to the closing date of the sale.  The Court held that the provisions of the order approving the sale were inapplicable to the products liability plaintiff who received no notice and was not afforded an opportunity to be heard prior to negotiation and approval of the Section 363 sale.  The Court allowed the products liability suit against the purchasing entity to go forward.  It

---

[5] Such notice is also routinely given in class action suits.

- 7 -

is respectfully submitted that Robley is entitled to same result here.[6]

### The 363 Sale Did Not Convey Assets
### Free and Clear of Robley's Products Liability Claim

17.    The provisions contained in the MSPA and the 363 Sale Order indicating that the assets of the Debtors were transferred free and clear of all claims and encumbrances derive whatever authority they may have from Section 363(f) of the Bankruptcy Code.  In particular, Section 363(f) states:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if --
>
> (1)  applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

For reasons which require little explanation, the conditions required for the grounds articulated in subsections (2) through (5) of the statute do not apply.  Robley did not consent to entry of the 363 Sale Order and there is no evidence to suggest otherwise.  Further, Robley's interest in the Debtors' property was not in the form of a lien and was not then in dispute.  In addition, because Robley's interest was inchoate and unliquidated, subsection (5) is inapplicable.  The issue presented is whether, as required by subsection (1), applicable nonbankruptcy law would permit

---

[6] The court in *Savage* noted that the Bankruptcy Code's notice requirements have even greater force in a case like the present, where the order approving the proposed sale authorized a transfer of substantially all Chapter 11 estate assets, the functional equivalent of an order confirming a conventional Chapter 11 reorganization plan. As such, the order confirming a Chapter 11 liquidation sale warrants special bankruptcy court scrutiny. *See In Re: Abbott's*

- 8 -

the sale of the Debtors' assets free and clear of Robley's interest.  Because applicable nonbankruptcy law does not permit the sale of such property free and clear of Robley's interest, the MSPA and the 363 Sale Order did not extinguish Robley's interest.

18.    The District Court Action was commenced pursuant to the United States District Court for the Western District of Tennessee's diversity jurisdiction and in the Complaint, Robley alleges state common law causes of action for negligence, common law strict liability, statutory products liability, and failure to warn.  Notably, Section 363(f) of the Bankruptcy Code may not be used to extinguish successor product liability claims, and a bankruptcy court does not have the power to enjoin a state law product liability claim despite language in the order purporting to do so. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3rd 159, 161-64 (7th Cir. 1994).  Product liability claims differ from other types of interests in property, such as commercial liens.  The provisions in the MSPA cited by New GM constitute nothing more than an exculpatory agreement between Debtors and their successor.  Such agreements are not valid even if made with the end user of a product, much less a purchaser of assets in a bankruptcy case.  The Restatement (Second) of Torts §402A, Comment m, states, "The consumer's cause of action . . . is not affected by any disclaimer or other agreement . . . attached to and accompanying the product into the consumer's hands."  The Third Restatement of Torts is more emphatic:

> Disclaimers and limitations of remedies by product sellers or other distributors, waivers by product purchasers, *and other similar contractual exculpations, oral or written,* do not bar or reduce otherwise valid product liability claims against sellers or other distributors of new products for harm to persons.

Restatement (Third) of Torts; Products Liability, Section 18 (emphasis supplied).  Based on the foregoing, it is respectfully submitted that where a products liability claimant was not provided with notice of the requested relief, a bankruptcy court, does not have authority under Section

---

*Dairies*, 788 F. 2nd 143, 150 (3rd Cir. 1986) (Section 363(b)(1) mirrors the requirement of Section 1129 that the

- 9 -

363(f) of the Bankruptcy Code to convey ownership of assets free and clear of any interest held by a products liability claimant simply because the sale agreement for which the court's approval is sought contains exculpatory language purporting to bar or reduce the rights of a claimant.

### Applicable State Law Did Not Permit a Sale of Assets Free and Clear of Robley's Claims

19.     The general rule of successor liability is that when two or more entities enter into an asset purchase agreement, the purchasing entity is not liable for the debts of the selling entity unless (a) the purchaser agrees to assume such debts, or (b) the circumstances surrounding the transaction warrant a finding that a consolidation or merger between purchaser and seller occurred, or (c) the facts indicate that the successor company purchasing the assets is a mere continuation of the selling company, or (d) the transaction was entered into fraudulently for the purpose of defeating creditors' claims. *See, e.g., Schumacher v. Richards Shear Co.,* 451 N.E.2nd 195, 198 (N.Y. 1983); 1 American Law of Products Liability 3rd §7:1 (2001). Under the facts presented in this case, the doctrines set forth in (b) and (c) provide a basis for concluding that applicable nonbankruptcy law does not permit the sale of the assets in this case free and clear of Robley's interest.

20.     The first of these doctrines, the *de facto* merger or consolidation doctrine, is applicable where, as here, a successor company is formed to acquire substantially all the assets of the predecessor company, shedding the debts of the predecessor, and the predecessor entity is then liquidated. The second of these doctrines, the mere continuation doctrine, is applicable where, as here, the purchasing company takes over the business activity of the selling company and essentially continues the operations of the transferor entity. A subset of the mere continuation doctrine which is relevant to the product liability issue is the product line doctrine, applicable where a purchasing entity continues to manufacture and market substantially the

---

bankruptcy court independently scrutinize the debtor's reorganization plan.)

- 10 -

same product line as the liquidating selling entity. These are exceptions to the general rule that a transferee in an arm's length assets sale can take only the assets, without the liabilities to which the assets would remain subject if they remained in the hands of the selling entity. Examples of cases in which these exceptions have resulted in successor liability for obligations of the transferor include *Turner v. Bituminous Cas. Co.,* 244 N.W.2nd 873 (Mich. 1976) (continuity of enterprise exception); *Ray v. Alad Corp.,* 560 P.2nd 3 (Cal. 1977) (product line exception); *Holloway v. John E. Smith's Sons Co.*, 432 F. Supp. 454 (D.S.C. 1977 (continuity of enterprise exception); *Asher v. KCS International, Inc.,* 659 So.2nd 598 (Ala. 1995)(continuity of enterprise exception); *Huff v. Shopsmith, Inc.,* 786 So.2nd 383 (Miss. 2001)(product line exception); *Ramirez v. Amsted Industries, Inc.* 431 A.2nd 811 (N.J. 1981)(product line exception); *Kradel v. Fox River Tractor Co.*, 308 F.3rd 328 (3rd Cir. 2002)(product line exception in Pennsylvania); and *Cyr v. B. Offen & Co.*, 501 F.2nd 1145, 1151-56 (1st Cir. 1974)(continuity of enterprise).

21.     The traditional rule on successor liability ". . . was designed for the corporate contractual world where it functions well. It protects creditors and dissenting shareholders, and facilitates determination of tax responsibilities, while promoting free alienability of business assets." *Polius v. Clark Equipment Co.*, 802 F.2nd 75,78 (3rd Cir. 1986). However, courts now recognize that:

> . . . the traditional rule of nonliability was developed not in response to the interests of parties to product liability actions, but rather to protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions, as well as to determine successor corporation liability for tax assessments and contractual obligations of the predecessor. Strict interpretation of the traditional corporate law approach leads to narrow application of the exceptions to non-liability, and places unwarranted emphasis on the form rather than the practical effect of a particular corporate transaction.

*Ramirez*, 431 A.2nd at 815-16. The New Jersey Supreme Court has observed that rigidly applying the general rule as to successor liability in a case involving strict product liability

defeats the progress which began with *McPherson v. Buick Motor Co.*, 111 N.E. 1050 (N.Y. 1916), upholding principles of commercial contract law at the expense of products liability law. State law in this area takes a more enlightened view, holding that strict liability in tort may be imposed on a successor corporation like New GM in a product liability action where the facts support application of the doctrines of *de fact* merger/consolidation and/or mere continuation of the business/product line as exceptions to the general rule.

22. A case from an earlier era articulates in colorful language, entirely applicable to the case at bar, the fundamental principles of equity and fairness upon which these exceptions rest:

> The [successor's] position does not appeal to us; it is an attempt to dodge the damages that [plaintiff] has sustained by a quirk and technical question of the law and smacks too much of a skin game, and hand stacked and dealt to the dealer from the bottom of the deck. . . . By its action [the successor] has allowed the [predecessor] to go out of existence and now proposes to let the [plaintiff] whistle for his money, and by its technicality, which would besmirch the character of any honest man, smacks its lips and licks its chops and congratulates itself on its shrewdness in avoiding its payment of a just claim.

*Brabham v. Southern Express Co.*, 117 S.E. 368 (S.C. 1922). The drafters of the MSPA clearly had these principles in mind because they specifically reference them in the exculpatory clauses which New GM relies upon. No amount of clever drafting, however, can vest the bankruptcy court with authority to disregard these state law principles in order to defeat Robley. Congress did not intend the Bankruptcy Code to preempt state law, and in enacting §363(f) it expressly defers to nonbankruptcy law, including state law. *See Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 506-7 (1986); *Wilkerson v. C.O. Porter Machine Co.*, 567 A.2nd 598 (N.J. Super. Law. 1989) (application of product line doctrine to allow successor liability to a claim for product liability does not conflict with bankruptcy order of assets sale).

23.     The application of these doctrines to hold New GM answerable to Robley's suit in this instance depends upon a factual inquiry to determine whether New GM as the purchaser of substantially all of the Debtors assets can be held liable under state law for the obligations of the Debtors.  The record contains numerous facts that courts typically analyze in making such a determination:

- taking advantage of the predecessor's accumulated goodwill and reputation, New GM holds itself out to the world to be a continuation of the predecessor through continued use of the predecessor's corporate identity, trade names, advertising, and other intellectual property;
- New GM continues to manufacture and market substantially the same product line as the predecessor (recognizing that manufacturing activity by its nature involves modification of product lines and elimination of unprofitable items);
- New GM retains the predecessor's managers, employees, or sales force; further, it continues to use the predecessor's equipment, facilities, and supplier, dealer, and customer lists; and
- New GM has assumed those liabilities and obligations of the predecessor ordinarily necessary to the continuation of normal business operations of the predecessor.

All the factors which courts look for in applying the exceptions to the general rule are present in this case.  The transition to the "New GM" has been so transparent that many Americans are not even aware that this icon of the nation's automotive industry has been in a liquidating Chapter 11 bankruptcy.  New GM uses the same emblems, has retained the successful product lines of its predecessor (including the GMC "Jimmy" brand which Robley owned), operates from the same facilities, has it headquarters in the same location, and manufactures motor vehicles with substantially the same equipment, workers and management, except for some plant closures and lay-offs, as did its predecessor.  The truth is that "New GM" is not really new at all. In its motion, New GM seeks to enlist this Court in its scheme to defeat Robley contrary to the law;

Robley urges the Court to decline the invitation and deny the motion.

### The Adoption of the July 10, 2009 Closing as the Date Before Which
### Product Liability Claims are Disallowed Is Arbitrary and Capricious

24.     In the MSPA, the Debtors and their successors designated the Closing Date as the point in time before which product liability claims for injuries sustained in products manufactured by the Debtors against the New GM would be disallowed.  An accident victim who was fortunate enough to have the misfortune of being injured while driving a vehicle manufactured by the Debtors after July 10, 2009, is deemed to have a claim against New GM, while the MSPA and the 363 Sale Order would deny such relief to a claimant such as Robley, who was injured on November 25, 2008 while driving a vehicle manufactured by the Debtors.  Notwithstanding the fact that the litigants in both hypothetical cases were injured by a dangerous or defective product manufactured by the predecessor prior to the commencement of the bankruptcy case, only one of the claimants is provided with an avenue for relief against the successor while the other is forced to accept little or no relief from the debtor entity.  Such a result is arbitrary, capricious, and unjust.  Courts in their orders are called upon to be rational in their application of the law, and they are subject to review for decisions which are arbitrary and capricious.  The New GM Motion should be overruled and Robley should be allowed to proceed in his case against New GM to afford him the same relief as the Court has allowed to claimants whose injuries occurred after July 10, 2009.

### Depriving Robley of His Cause of Action
### Against New GM Would Violate Public Policy

25.     As noted above, a mere forty days elapsed from the time the Debtors filed their petition under Chapter 11 until the Closing Date, reflecting an urgency driven by fear of an economic catastrophe if the Debtors were to collapse in the wake of defaults which were imminent.  It is understandable that this urgency necessitated expedited relief by the Court.  At

this point, however, the crisis has been averted, and the same concern for public policy which guided the Court in approving the MSPA and entering the 363 Sale Order should now guide the Court in securing to Robley fair and equitable treatment of his claims. Robley, already a victim of the tragic accident which led to the causes of action asserted in the District Court Action, should not become a victim a second time because of the exigencies which the Court faced when it approved the MSPA and entered the 363 Sale Order. It is within the power of the Court to grant him the relief necessary to allow a just adjudication of his causes of action and allow him his day in court by denying the motion of New GM in this matter.

**WHEREFORE**, Robley respectfully requests that the Court deny the motion of New GM in this matter and enter an order allowing him to go forward against the New GM in his cause of action filed in the United States District Court for the Western District of Tennessee.

Dated:  New York, New York
        May 24, 2010

>                                    RUTLEDGE & RUTLEDGE, P.C.
>                                    By:  */s/ Roger Rutledge*
>                                    Roger K. Rutledge
>                                    1083 W. Rex Road, Suite 102
>                                    Memphis, TN 38119-3819
>                                    Telephone (901) 682-0667
>                                    Facsimile (901) 682-0697
>
>                                    Attorneys for Shane J. Robley