HEARING DATE AND TIME: June 15, 2010 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: June 8, 2010 at 4:00 p.m. (Eastern Time)
REPLY DEADLINE: June 10, 2010 at 12:00 p.m. (Eastern Time)

Joseph F. Roda
*Pro Hac Vice*
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200
jroda@rodanast.com

Attorney for "Settlement Agreement in Soders
v. General Motors Corp. and RodaNast, P.C.,"
Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| In re | Chapter 11 Case No. |
| MOTORS LIQUIDATION COMPANY,<br>*et al.*, | 09-50026 (REG) |
| | (Jointly Administered) |
| Debtors. | |

-----------------------------------------------------------------X

## RESPONSE TO
## CREDITORS GIBSON LAW FIRM/GEORGE AND KAREN KAIRIS'S OBJECTION TO CLAIM OF "SETTLEMENT AGREEMENT IN SODERS V. GENERAL MOTORS CORP. AND RODANAST, P.C." (PROOF OF CLAIM NO. 44887) SUBMITTED FOR ADR RESOLUTION PURSUANT TO GENERAL ORDER M-390 AND PETITION TO INTERVENE
## [RESPONSE TO DOCKET ENTRY NO. 5369]

This response is respectfully submitted on behalf of the Settlement Agreement in Soders v. General Motors Corp. and RodaNast, P.C. ("Soders Respondents"), in response to the objection and petition to intervene that the

Gibson Law Firm and George and Karen Kairis filed on March 24, 2010, under docket number 5369.

## I. Background

### A. The Settlement Agreement in *Soders v. General Motors Corp.*

1. Donna Soders filed a class action against General Motors ("GM") on April 25, 2000 in relation to GM's "Marketing Initiative" programs. Under the programs, GM added 1% of the Manufacturer's Suggested Retail Price ("MSRP") to the invoices of certain new vehicles that it sold to its dealers.

2. The lawsuit claimed that GM required its dealers to use the 1% for advertising, and that this violated the Pennsylvania Board of Vehicles Act, which prohibits manufacturers from requiring new vehicle dealers to participate financially in advertising campaigns. The lawsuit alleged that dealers passed the 1% on to their customers, and sought reimbursement for the customers.

3. After nine years of what the trial judge described as the "hardest-fought" and "best-lawyered" case he has experienced from both sides in his twenty-four years on the bench, the trial court approved the settlement. *See* 04/28/09 Settlement Hearing Transcript (Exhibit 1), at 37; 04/28/09 Judgment Entry (Exhibit 2).

4. The Settlement Agreement provided that all eligible class members would receive rebate certificates worth up to $200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC or Pontiac vehicle. GM also agreed to separately pay the costs associated with administering the settlement, attorneys'

2

fees up to $1.886 million, reimbursement for attorneys' out-of-pocket costs up to $500,000, and $5,000 to class representative Donna Soders. *See* Exhibit 3.

5. RodaNast – unilaterally and without being asked by GM – then reduced its requested fee twice. RodaNast initially reduced its requested fee by about $200,000 in its fee petition, to reflect historic rather than current rates, due to the economic circumstances at the time. *See* 04/23/09 Plaintiff's Memorandum in Support of Settlement (Exhibit 4), at 36-37. RodaNast then reduced its already-reduced fee by half at the final fairness hearing, in light the dire financial circumstances that GM was facing. *See* Exhibit 1, at 13-14, 16-18, 38.

6. The voluntarily-reduced fee resulted in a blended hourly rate of only $134. *See* Exhibit 1, at 14-15. The trial court commented at the final fairness hearing that the reduced fee that was requested was beyond reasonable, to the extent that it was unreasonable to RodaNast. *Id.* at 38.

7. After the trial court approved the settlement, notice was provided to class members, and 1,879 claim forms were submitted. Class members were encouraged to submit, and did submit, multiple claims on the same form, and since the Garden City Group's claims administration activities were stayed by the bankruptcy filing before it could process the claim forms, the total number of claims submitted on those 1,879 claim forms is not known.

**B.     Objection and Appeal by Robert Gibson, Esquire**

8.     Other than the pending bankruptcy, the only thing standing in the way of final implementation of the Settlement Agreement was an appeal filed by Robert Gibson, Esquire, in the Superior Court of Pennsylvania.

9.     Mr. Gibson initially filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of the class. Their fee agreement provided that if Mr. Gibson settled their objection, he would receive 90% of the amount recovered as his fee, and his clients would receive only 10%. *See* 03/13/09 Fee Agreement (Exhibit 5).

10.    Within hours after the trial court rejected his objection, Mr. Gibson called RodaNast and said that unless he was given $100,000 (which, pursuant to the fee agreement noted above, would provide $90,000 to him and $10,000 to his clients), he would appeal the Settlement Agreement that the trial court had just approved. *See* Burkholder Memorandum (Exhibit 6). Mr. Gibson confirmed the terms of his demand in a subsequent call with RodaNast and GM's counsel. *Id.*

11.    RodaNast and GM's counsel promptly advised the trial court of what they believed was an unethical extortion attempt by Mr. Gibson, after which the trial court commenced a hearing to collect evidence on the matter. The bankruptcy paperwork was filed, however, before the trial court could issue its findings of fact and conclusions of law, and the matter remains stayed.

12.    The bankruptcy filing also stopped the proceedings in the Pennsylvania Superior Court, consisting of Mr. Gibson's appeals of the settlement,

4

his appeals of the trial court orders requiring him to testify about the $100,000 that he had demanded and the arrangements with his purported clients, and RodaNast's motion to quash the latter appeals.

### C. Claim and Capping Claim Letter of the Soders Respondents

13. The Soders Respondents do not believe that their claims are required to be resolved in the bankruptcy court, for two reasons.

14. First, the Motors Liquidation Company ("MLC") listed the Settlement Agreement as an "Executory Contract" in its Schedules of Assets and Liabilities, *see* Schedule Excerpt (Exhibit 7), and did not subsequently move to reject that executory contract.

15. Second, pursuant to the terms of the Settlement Agreement, RodaNast's requested fee and cost amount is being held in an interest-bearing escrow account by GM's counsel in the underlying class action (Carpenter, Lipps & Leland). *See* Exhibit 3 at ¶ 3.17. MLC listed the escrow amount in Section 3b of its Statement of Financial Affairs, for "Net payments made to creditors within the past 90 days," rather than as a claim against the bankruptcy estate. *See* Statement Excerpt (Exhibit 8).

16. Even though the Soders Respondents do not believe that their claims are required to be resolved in the bankruptcy court, as a matter of caution, they submitted Proof of Claim No. 44887, seeking the items that GM had previously agreed in the Settlement Agreement to pay:

5

      a.    A yet-to-be-determined number of rebate certificates that Class Members can use toward the purchase of new GM vehicles;

      b.    An incentive payment for class representative Donna Soders in the amount of $5,000;

      c.    Reimbursement to RodaNast, P.C. for the actual out-of-pocket costs they paid during the litigation, totaling $437,416.92; and

      d.    A fee payment to RodaNast in the amount of $843,929.37, which was less than half the amount of fees that GM agreed in the settlement to pay.

17.    The Soders Respondents continue to believe that they are not required to resolve their claims in the bankruptcy court or submit to its ADR procedures, but they have decided nonetheless to submit a Capping Claim Letter, in the interest of obtaining a final resolution through the ADR proceedings.

18.    In the capping claim letter, attached as Exhibit 9, the Soders Respondents proposed capping their claims in the amounts specified below:

      a.    A rebate certificate for each claim that *Soders* class members submitted to Garden City Group that appears on its face to be valid, which would eliminate the need to spend more funds that could exceed the value of the coupons in trying to confirm the validity of each claim. This also would benefit class members by allowing them to purchase new GM vehicles at a discounted price, and GM by encouraging the purchase of its vehicles and strengthening its sales.

      b.    An incentive payment for Class Representative Donna Soders in the amount of $4,000. This represents a 20% reduction.

6

  c. Reimbursement for RodaNast's actual out-of-pocket costs in the amount of $400,000. This represents a reduction of almost 9%.

  d. A fee award to RodaNast in the amount of $800,000. This represents the third voluntary reduction that RodaNast has made to the amount that GM agreed to pay for fees, and would result in a payment of less than 43% of the amount GM had initially agreed to pay.

  **D.** **Gibson/Kairis Objection and Petition to Intervene**

  19. The Soders Respondents served Mr. Gibson, as well as counsel for GM from the underlying litigation, with a copy of their Capping Claim Letter, *see* 03/23/10 E-mail (Exhibit 10), to prevent any later arguments that Mr. Gibson did not have his day in court and thus is entitled to litigate (and delay) this matter again outside of the bankruptcy court.

  20. The next day, on March 24, 2010, Mr. Gibson served the objection and petition to intervene to which this response is aimed. A copy of his objection and petition to intervene is attached as Exhibit 11.

**II.** **The Soders Respondents' Response to the Gibson/Kairis Objection and Petition to Intervene**

  21. The Soders Respondents do not object to the Petition to Intervene, and in fact encourage this Court to grant the petition so that all that matters relating to the Settlement Agreement in Soders v. General Motors Corp. may be resolved with finality in the bankruptcy court.

  22. The Soders Respondents, however, contend that the issues raised in the Gibson/Kairis Objection are unfounded, for the reasons stated below, and

respectfully request that their positions on those issues be considered by this Court and during any ADR proceedings.

23. The claimants for the "Settlement Agreement in Soders v. General Motors Corp. and RodaNast, P.C." are not those persons listed in ¶ 1 of Mr. Gibson's objection, but instead are those listed in the Soders Respondents' claim form and capping claim letter: class members; class representative Donna Soders; and class counsel RodaNast, P.C.

24. While the settlement was criticized in an article by a reporter who did not follow the day-to-day events surrounding the lawsuit during the nine years in which it was pending, it was supported by the attorneys for the class and GM, who were intimately involved with the day-to-day workings of the case, as well as by the trial judge, who described the case as the "hardest-fought" and "best-lawyered" he has experienced from both sides in his twenty-four years on the bench. *See* Exhibit 1, at 37.

25. In approving the settlement, the trial judge commented that while rebate certificates were not the ideal recovery, it was "as good as can be expected under the circumstances" given "all the uncertainties of the litigation" and "all the uncertainties of what is going on within the real world" (i.e., GM's looming, and now realized, bankruptcy filing). *Id.* at 37-38.

26. The number of *claim forms* submitted does not equal the number of *claims* submitted, contrary to what is assumed in ¶ 5 of Mr. Gibson's objection and petition. Class members were encouraged to submit, and did submit, multiple

claims on the same form. The total number of claims submitted on the 1,879 claim forms is unknown because the bankruptcy filing stayed Garden City Group's claims administration activities before it could process the forms.

27. The *Remeron* case that Mr. Gibson cites (without citation) in ¶ 5 of his objection and petition is irrelevant. In that case, the court awarded a one-third fee, to be paid from a cash settlement fund. The opinion does not comment on how fees should be determined when rebate certificates are offered to class members and the payment to class counsel would not in any way affect the class member awards. *See In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03-0085 FSH, 2005 WL 3008808, at *12-17 (D.N.J. Nov. 9, 2005).

28. At least three courts have applied the lodestar method that was used in the Soders v. General Motors settlement in that circumstance. *See, e.g., Barel v. Bank of America,* 255 F.R.D. 393, 403-04 (E.D. Pa. 2009); *Fleury v. Richemont N. Am., Inc.,* No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *Perez v. Asurion Corp.,* No. 06-20734-CIV, 2007 WL 2591180, at *1-2 (S.D. Fla. Aug. 8, 2007).

29. The lodestar method that was applied in awarding fees in the Soders settlement resulted in a fee to RodaNast with a blended hourly rate of only $134, *see* Exhibit 1, at 14-15, which the trial court said was beyond reasonable, to the extent that it was unreasonable to RodaNast. *Id.* at 38.

30. Contrary to what Mr. Gibson suggests in ¶¶ 6-7 of his objection, RodaNast did not reduce its fee based on anything he submitted or said. RodaNast

9

initially reduced its requested fee by about $200,000, to reflect historic rather than current rates, due to the economic circumstances at that time. *See* Exhibit 4, at 36-37. As Mr. Roda represented at the final fairness hearing, and as accepted by the court, RodaNast then reduced its already-reduced fee by half – before Mr. Gibson even spoke at the hearing – in light the dire financial circumstances that GM was facing. *See* Exhibit 1, at 13-14, 16-18, 38.

31. While Mr. Gibson correctly notes in ¶ 8 of his objection that objectors to class actions and their counsel may be entitled to attorneys' fees and incentive awards, many relatively recent cases provide that such awards should be made only when the objector has substantially enhanced the benefits to the class. *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 520 (W.D. Pa. 2003); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 513-14 (D. Del. 2003); *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387, 400 (2005); *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 WL 906472, at *9-10 (M.D. Pa. Mar. 31, 2008). Even the unpublished case cited by Mr. Gibson notes the need for a benefit to have been conferred to the class. *See Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073, at *4 (N.J. Super. A.D. July 21, 2008).

32. Mr. Gibson has not benefitted the class, because he did not contribute in any way to the reduction of RodaNast's requested fee. Even if he had, it would be of no consequence, because counsel fees were to be paid separately from, and not out of, the class relief. *See* Exhibit 3, at ¶ 3.17. Any reduction in fees thus reverts to

GM, and not the class. In such situations, the class does not benefit. *See Grays Harbor Adventist Christian Sch.*, No. 05-05437 RBL, 2008 WL 1901988, at *4 (W.D. Wash. Apr. 24, 2008).

33. Mr. Gibson not only failed to benefit the class, he also clouded the settlement proceedings by making inaccurate and far-reaching statements that served only to prolong the proceedings. Such actions further weigh against awarding an incentive payment or fee to him or his clients. *See Cardinal Health*, 550 F. Supp. 2d at 753; *In re AOL Time Warner ERISA Litig.*, No. 02 CV 8853 (SWK), 2007 WL 4225486, at *2-3 (S.D.N.Y. Nov. 28, 2007). For example:

a. At the final fairness hearing that took place barely a month before GM filed for bankruptcy, Mr. Gibson suggested that GM could well afford to make monetary payments to class members, and went as far as to ask the court to take judicial notice that all indications were that GM would not file for bankruptcy. *See* Exhibit 1, at 23-24. The court denied that request. *Id.* at 24.

b. Mr. Gibson also claimed that class counsel had leverage because class certification had been held up on appeal, *id.* at 25, when the appellate courts instead had only declined to hear the class certification issues on an interlocutory basis.

c. Mr. Gibson also tried to compare the settlement of the Soders v. General Motors action – which occurred after nine years of hard-fought litigation and involved multiple substantial issues that were still alive for purposes of appeal – with the settlement of another sharply-criticized General Motors class action that

11

had been settled only four months after the case was filed. *Id.* at 25-27. The court rejected this unfair comparison. *Id.*

        d.      Mr. Gibson also suggested, without any basis in fact, that class counsel's fees may have been unreasonable because six attorneys may have been participating in depositions. *Id.* at 34-36. RodaNast confirmed that there were not multiple people at depositions. *Id.* at 35. The court also confirmed that it has only ever seen two attorneys during the nine years that the case was pending. *Id.* at 37.

        e.      Even here, Mr. Gibson is trying to cloud the proceedings by implying in ¶ 9 of his objection and petition that a former law clerk of the trial judge (Erin Burns) may have participated in a case-related call, when all evidence shows that Ms. Burns did not. *See* 05/21/09 Expedited Hearing Transcript (Exhibit 12), at 12, 16, 77-78. Ms. Burns instead has been insulated from all aspects of this case since she was hired by RodaNast in 2004. Counsel for both parties of record in the case jointly called the court to report what they believed to be an ethical violation by Mr. Gibson, and did not invite participation by Mr. Gibson – who did not represent any party who had intervened in the case – because they had no obligation to do so.

        34.     All evidence at the trial court level suggests that Mr. Gibson's filings were motivated not by his interest in benefitting the class, but by his interest in recovering money for himself. This motivation is further supported by Mr. Gibson's actions during the claim period here, where he did not submit any claim seeking a "better" benefit for the class, and instead only submitted a claim seeking $100,000

for himself (of which $10,000 would go to his clients). *See* Gibson/Kairis Capping Claim Letter for Proof of Claim No. 3344 (Exhibit 13).

35.  One case speaks to the situation that appears to exist here: "[C]lass actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors." *Cardinal Health,* 550 F. Supp. 2d at 754.

Respectfully submitted,

/s/ Joseph R. Roda
Joseph R. Roda
*Pro Hac Vice*

RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200
jroda@rodanast.com

Attorney for "Settlement Agreement in
Soders v. General Motors Corp. and
RodaNast, P.C.," Creditors

DATED: May 25, 2010