

801 ESTELLE DRIVE LANCASTER, PENNSYLVANIA 17601

TELEPHONE (717) 892-3000 FACSIMILE (717) 892-1200 rodanast@rodanast.com

March 22, 2010

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

> Re:    **In re Motors Liquidation Company, *et al.* ("Debtors")**
> **Case No. 09-50026 (REG) – Capping Claim Letter**

Dear Motors Liquidation Company,

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the **"ADR Procedures"**) [Docket No. 5037] entered by the United States Bankruptcy Court for the Southern District of New York on February 23, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the **"Claim Amount Cap"**).

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
| Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C. | 44887 | See Attached Supplement | See Attached Supplement |

Exhibit 9

Motors Liquidation Company
March 22, 2010
Page 2 of 2

      I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs.  If the Claim Amount Cap is accepted by the Debtors, I understand that I am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

Very truly yours,

By:
Address:
State:

Joseph F. Roda
801 Estelle Drive, Lancaster
Pennsylvania 17601

Cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, NY 10153
       pablo.falabella@weil.com

## SUPPLEMENT TO CAPPING CLAIM LETTER

### Original Filed Amount

Claimants submitted a claim for the items that GM previously agreed to pay in the December 15, 2008 Class Action Settlement Agreement that is attached as Exhibit 1. Those items are:

1. A yet-to-be-determined number of coupons that Class Members can use toward the purchase of new GM vehicles. These coupons would benefit GM by increasing the sales of its vehicles.

2. An incentive payment for Class Representative Donna Soders in the amount of $5,000;

3. Reimbursement to counsel who negotiated the class action settlement with GM (RodaNast, P.C.) for the actual out-of-pocket costs that they paid during the litigation, totaling $437,416.92; and

4. A fee payment to RodaNast in the amount of $843,929.37, which was less than half the amount of fees to which GM agreed in the settlement: $1.886 million, *over $1 million more than the amount requested in the Claim Form. See id.* at ¶ 3.17.

RodaNast – unilaterally and in recognition of the dire financial situation that GM was facing – reduced its requested fee award twice. RodaNast first reduced the $1.886 million fee by about $200,000, and then by half of the already-reduced amount, to only $843,929.37. *See* 04/28/09 Final Fairness Hearing Transcript (Exhibit 2), at 13-14, 16-18; 04/28/09 Judgment Entry (Exhibit 3), at ¶ 8. That reduced amount is the amount listed in the claim form.

The voluntarily-reduced fee resulted in a blended hourly rate of only $134. *See* Exhibit 2, at 15. The trial court commented at the final fairness hearing that the reduced fee that was requested was beyond reasonable, to the extent that it was unreasonable to RodaNast. *See* Exhibit 2, at 38.

The trial court approved all terms of the Settlement Agreement, including the significantly-reduced fee that was requested. *See* Exhibit 3.

Notice of the Settlement Agreement was thereafter provided to class members, and 1,879 claim forms were submitted. The claim forms were not yet processed by the claim administrator, Garden City Group, when GM filed for bankruptcy protection.

## Objection and Appeal by R. Thomas Gibson, Esquire

Other than the pending bankruptcy, the only thing standing in the way of final implementation of the Settlement Agreement was an appeal filed by Robert Gibson, Esquire, in the Superior Court of Pennsylvania.

Mr. Gibson filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of the class. His fee agreement with them provided that if he settled their objection, he would receive 90% of the amount recovered as his fee. His clients would receive only 10%. *See* 03/13/09 Fee Agreement (Exhibit 4).

After the trial court rejected his objection, Mr. Gibson called RodaNast, P.C. and said that unless he was given $100,000 (which, pursuant to the above-referenced agreement, would result in $90,000 going to him and $10,000 going to his clients), he would appeal the Settlement Agreement that the trial court had just approved. *See* Burkholder Memorandum (Exhibit 5).

RodaNast promptly advised the trial court of what it believed was an unethical extortion attempt by Mr. Gibson, and the trial court commenced a hearing to collect evidence on the matter. The bankruptcy paperwork was filed, however, before the trial court could issue its findings of fact and conclusions of law. The matter remains stayed.

The bankruptcy filing also stopped the proceedings in the Pennsylvania Superior Court, consisting of Mr. Gibson's appeal of the settlement, his appeals of the trial court orders requiring him to testify about the money he had demanded from RodaNast and the arrangements with his purported clients, and RodaNast's motion to quash the latter appeals.

## Claim Amount Cap

Claimants do not believe that their claims are required to be resolved in the bankruptcy court.

The above-referenced Settlement Agreement (Exhibit 1) encompasses the coupons to class members (at ¶¶ 3.1 – 3.13), the $5,000 payment to Donna Soders (at ¶ 3.14), and RodaNast's fees and costs (at ¶ 3.17). It appears that the Motors Liquidation Company ("MLC") agrees that the Settlement Agreement and the items resolved within it are not part of the bankruptcy estate, because it has listed the Settlement Agreement as an "Executory Contract" in its Schedules of Assets and Liabilities. *See* Schedule Excerpt (Exhibit 6). While MLC has filed motions to reject many of its executory contracts, it has not filed a motion to reject this one.

2

In addition, the fee and cost amount requested on the Claim Form by RodaNast is currently being held in an interest-bearing escrow account by GM's counsel in the underlying class action (Carpenter, Lipps & Leland), pursuant to the terms of the Settlement Agreement. *See* Exhibit 1 at ¶ 3.17. It appears again that MLC agrees that this amount is not part of the bankruptcy estate, because it has listed the escrow amount in Section 3b of its Statement of Financial Affairs, for "Net payments made to creditors within the past 90 days." *See* Statement Excerpt (Exhibit 7).

Based on this, Claimants do not believe they must participate in the ADR Procedures.

In the interest, however, of obtaining a final resolution of their claims that were settled almost a year ago, Claimants submit this Capping Claim Letter, and propose capping their claims in the amounts specified below:

1.  A coupon for each claim that *Soders* class members submitted to Garden City Group that appears on its face to be valid. This would eliminate the need to spend more funds trying to confirm the validity of each claim, which could exceed the value of the coupons. As stated above, this would benefit class members by allowing them to purchase new GM vehicles at a discounted price, and would also benefit GM by encouraging the purchase of its vehicles and strengthening its sales.

2.  An incentive payment for Class Representative Donna Soders in the amount of $4,000. This represents a 20% reduction.

3.  Reimbursement for RodaNast's actual out-of-pocket costs in the amount of $400,000. This represents a reduction of almost 9%.

4.  A fee award to RodaNast in the amount of $800,000. This represents the third voluntary reduction that RodaNast has made to the amount that GM agreed to pay for fees, and would result in a payment of less than 43% of the amount GM had initially agreed to pay.

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this 15ᵗʰ day of December, 2008, by and between General Motors Corporation (hereinafter "GM") and Plaintiff in *Soders v. General Motors Corporation*, Case No. CI-00-04255, pending in the Court of Common Pleas of Lancaster County, Pennsylvania, by and through their undersigned attorneys.

1.    **DEFINITIONS**

1.1.    "Action" means the lawsuit captioned *Soders v. General Motors Corporation*, Case No. CI-00-04255, pending in the Court of Common Pleas of Lancaster County, Pennsylvania.

1.2.    "Certificate" means a coupon or otherwise documented right, in a form acceptable to GM and Class Counsel, that shall entitle the holder to a discount in the amount of $200.00 on the purchase or lease of a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle during the Claim Period as set forth in subparagraphs 3.1 through 3.12 below.

1.2.a.    "Assignable Certificate" means an alternative form of the Certificate, in a form acceptable to GM and Class Counsel, that shall have a value of seventy-five percent (75%) of the initial Certificate ($150.00) or Undocumented Certificate ($75.00), and shall be available to the Claimant as set forth in subparagraph 3.13 below.

1.2.b.    "Undocumented Certificate" means an alternative form of the Certificate, in a form acceptable to GM and Class Counsel, that shall have a value of fifty (50%) of the initial Certificate, or $100.00, and shall be available to the Claimant as set forth in subparagraph 3.4 below.

1.3.    "Claim" means a claim to receive a Certificate under subparagraphs 3.1 through 3.12 below.

1

1.3.a.   "Undocumented Claim" means a Claim listed on a Claim Form by a Claimant who has completed all but the VIN portion of the Claim Form, but after the period to cure deficiencies as outlined in subparagraph 3.7 below, has not provided any of the following: (1) Proof of Purchase; or (2) a VIN matching a new and previously untitled vehicle sold to the Claimant or a co-purchaser of the Claimant listed on the Claim Form; or (3) the name of the Claimant or a co-purchaser of the Claimant listed on the Claim Form appearing on the list of new vehicle deliveries produced in discovery in this Action.

1.4.   "Claimant" means a Class Member, or if the Class Member is deceased, his/her executor or administrator, who submits a Claim.

1.5.   "Claim Deadline" means one hundred twenty (120) days from the last date of published notice of the Settlement, as approved and ordered by the Court.

1.6.   "Claim Form" means a document that Class Members must submit to request a Certificate, in a form acceptable to GM and Class Counsel.

1.7.   "Claims Administrator" means GM or an entity mutually acceptable to Plaintiff and GM, retained and paid for by GM, to administer the Settlement and the Claims process set forth in subparagraphs 3.1 through 3.13 below, by, among other things, sending direct mail notices as outlined in subparagraph 3.20 below; receiving and processing Claims; determining which Claims are valid; assisting Class Members with the completion and submission of Claims in accordance with procedures established by, and mutually acceptable to, Plaintiff and GM; issuing and mailing Certificates and Undocumented Certificates; receiving and exchanging Certificates and Undocumented Certificates for Assignable Certificates; and ensuring that Claims fulfillment is properly implemented.

2

1.8.    "Class" means all persons who purchased at retail from a franchised GM dealer in Pennsylvania a new and not previously titled vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac Divisions of General Motors Corporation.  This includes only persons whose franchised GM dealers previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new vehicles manufactured or distributed by the Buick Division.  The Class includes natural persons and business entities of any kind, but does not include: (a) persons who purchased vehicles under the GM Employee Purchase Plans; (b) GM-qualified fleet purchasers; (c) government entities; (d) attorneys of record in this case; or (e) lessees.

1.9.    "Class Counsel" means Joseph F. Roda and Michele S. Burkholder of RODANAST, P.C.

1.10.    "Class Member" means a member of the Class.

1.11.    "Class Representative" means the named plaintiff, Donna Soders, in the Action.

1.12.    "Court" means the Court of Common Pleas of Lancaster County, Pennsylvania.

1.13.    "Effective Date of Settlement" means the latest of the following dates: (i) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or noticing of any appeal from the Judgment; or (ii) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme Court review is no longer available; or (iii) if the Superior Court of Pennsylvania issues a judgment affirming

3

the Judgment or dismissing the appeal ("Appellate Judgment"), and a petition for review of the

Appellate Judgment is filed and denied by the Pennsylvania Supreme Court, the date beyond

which United States Supreme Court review is no longer available; or (iv) if a petition for review

of the Appellate Judgment is filed and granted by the Pennsylvania Supreme Court, or the

Pennsylvania Supreme Court orders review of the Appellate Judgment on its own motion, and

the Appellate Judgment is affirmed or the review proceeding dismissed, and no petition for a writ

of certiorari with respect to the Supreme Court's judgment affirming the Appellate Judgment or

dismissing the review proceeding ("Review Judgment") is filed, the date of expiration of the

time for the filing of such a petition for a writ of certiorari; or (v) if such a petition for a writ of

certiorari is filed and denied, the date the petition is denied; or (vi) if such a petition for a writ of

certiorari is filed and granted, the date of final affirmance of the Review Judgment or final

dismissal of the review proceeding initiated by the petition for a writ of certiorari. This

Settlement shall not become Effective, and this definition of Effective Date of Settlement shall

not be met, and GM shall have the option and right to rescind this Settlement at its sole

discretion by filing with the Court written notice of such election, with proof of service on Class

Counsel, if Class Counsel is awarded attorneys' fees exceeding $1.886 million and/or costs

exceeding $500,000. Notwithstanding the above, and for the sole purpose of avoiding

unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal

from the Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment

awarding (i) an amount of $5,000.00 to the Representative Plaintiff, (ii) attorneys' fees in an

amount not to exceed $1.886 million and/or (iii) documented costs in an amount not to exceed

$500,000, and (b) could not result in the reversal and/or modification of the Judgment (including

the release provisions contained in paragraphs 3.25 through 3.30), then GM and Class Counsel

4

may, acting in good faith and upon mutual agreement, agree that the Settlement is otherwise

Effective and that implementation of the Settlement, including distribution of the settlement

benefits, should proceed.

1.14. "GM Product" means a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle.

1.15. "Judgment" means the judgment to be entered by the Court pursuant to this

Settlement, in a form acceptable to GM and Class Counsel, which shall include final approval of

the Settlement, dismissal of the Action with prejudice, and approval and entry of the provisions

contained in Section 3(D), Release, below (i.e., subparagraphs 3.25 through 3.30).

1.16. "Notice Order" means an Order in a form acceptable to GM and Class Counsel,

providing for, among other things, preliminary approval of the Settlement, dissemination of the

notice of the Settlement to the Class, and setting of the Fairness Hearing.

1.17. "Parties" means the Class Representative and Defendant GM.

1.18. "Proof of Purchase" means contemporaneous documentary proof of the purchase

at retail from a franchised GM dealer in Pennsylvania of a new and not previously titled vehicle

that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick

or Pontiac Divisions of General Motors Corporation. Each such purchase must have occurred on

or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or

distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles

manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new

vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new

vehicles manufactured or distributed by the Buick Division. Acceptable forms of Proof of

Purchase may include a copy of (i) the retail invoice; (ii) original finance documentation; (iii) the

title; (iv) insurance documentation; (v) a cancelled check; and/or (vi) similar documentation

sufficient to reasonably establish that Claimant purchased, rather than leased, a new and not previously titled vehicle that is subject to this Settlement.

2.   **RECITALS**

2.1.   GM is a corporation organized under the laws of the State of Delaware and is engaged in the business of, among other things, manufacturing automotive products.

2.2.   Class Counsel, on behalf of the foregoing Class Representative, commenced the Action against GM, alleging that GM violated the Pennsylvania Board of Vehicles Act.

2.3.   Defendant GM has vigorously defended the Action and denies all allegations of wrongdoing asserted in the Action and denies liability under any cause of action asserted therein.

2.4.   The Parties recognize that the outcome of the Action is uncertain and that pursuing the Action to litigated judgments would entail substantial cost, risk and delay.

2.5.   The Class Representative and Class Counsel have conducted an investigation and evaluation of the factual and legal issues raised by the claims asserted in the Action and the defenses asserted by GM thereto, and believe that, in light of the cost, risk and delay of continued litigation balanced against the benefits of the Settlement set forth in this Agreement, such Settlement is in the best interests of, and is fair, reasonable, and adequate for the Class as a whole.

2.6.   Through this Settlement, the Parties desire to compromise and settle all issues and claims that have been or could have been brought in the Action by or on behalf of members of the Class.

2.7.   The Parties agree to undertake all reasonable efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purpose of

this Agreement, to secure the Court's approval of it, and to oppose any objections to and appeals

from any order of final approval.

2.8.    It is specifically understood that nothing herein shall limit GM in making its

business decisions, including, but not limited to, decisions at any time regarding marketing

and/or the use of monies derived from the sale of vehicles; nothing herein shall require GM to

adjust its wholesale prices, manufacturer suggested retail prices or dealer discounts in any way;

and nothing herein shall affect in any way GM's freedom to establish prices to dealers,

manufacturer suggested retail prices or any other pricing terms.

## 3.    SETTLEMENT CONSIDERATION

NOW, THEREFORE, GM and the Class Representative and the Class, by and through

Class Counsel, in consideration of the mutual covenants and agreements herein, agree to follows:

### A.    Claims Reimbursement

3.1.    All Claimants who submit a proper Claim Form and, where available and feasible

through the Claimant's best efforts, Proof of Purchase, will be eligible to receive one Certificate

from the Claims Administrator for each new Buick, Cadillac, Chevrolet, GMC Truck,

Oldsmobile or Pontiac vehicle that they purchased during the periods listed in subparagraph 1.8

above. The Claim Form must be submitted by the Claimant via ordinary U.S. Mail, and must be

postmarked by the Claim Deadline.

3.2.    All Claimants must complete all sections of the Claim Form, except that they

shall not be required to fill in the VINs for the listed vehicles if the VINs are not reasonably

known or available to the Claimants, and must use their best efforts to submit, along with the

Claim Form, Proof of Purchase of the vehicle. Failure to complete the Claim Form in its entirety

shall not be a sufficient basis to deny the Claim, provided that: (i) the Claimant submits Proof of

7

Purchase, which contains information sufficient to confirm the authenticity of the Claim; or (ii) the Claimant or a co-purchaser listed on the Claim Form appears on the list of new vehicle deliveries produced in discovery in this Action.

3.3.    If a Claimant who has completed all but the VIN portion of the Claim Form (i.e., the "required responses") is unable to submit any Proof of Purchase, GM will nevertheless accept the Claim if there is no evidence that the Claimant is not eligible and: (i) the Claimant or a co-purchaser listed on the Claim Form appears on the list of new vehicle deliveries produced in discovery in the Action; or (ii) the Claimant provides a VIN matching a new and previously untitled vehicle sold to the Claimant during the pertinent period.  Notwithstanding the foregoing, in the event a Claimant completes the Claim Form and provides either Proof of Purchase or a qualifying VIN, the failure of that Claimant to appear on the list of new vehicle deliveries shall not constitute evidence that the Claimant is not eligible.

3.4.    In no circumstance will more than one Certificate or Undocumented Certificate be issued in relation to a single vehicle purchase.  If two or more co-purchasers submit Claim Forms that would otherwise be valid, the Certificate or Undocumented Certificate will be provided to: (1) the purchaser whose name appears on the list of new vehicle deliveries; or (2) if none of the co-purchasers' names appear on the list, the purchaser whose name appears first on the purchase documents; or (3) if none of the co-purchasers' names appear on the list, and the purchase documents have not been produced, the purchaser with the earliest postmark date for his or her Claim Form.

3.5.    Within thirty (30) days after expiration of the period for the last of all Claimants to cure deficiencies (as defined in subparagraph 3.7 below), the Claims Administrator shall aggregate the total number of Claims received and calculate the percentage of those Claims that

8

constitute Undocumented Claims. The Undocumented Claims would be rejected under this Settlement. However, GM agrees to provide one Certificate for each Undocumented Claim if the Undocumented Claims do not exceed 10% of the total aggregate of Claims received. In the event the Undocumented Claims exceed 10%, but do not exceed 20%, of the total aggregate of Claims received, GM hereby agrees to provide one Undocumented Certificate for each Undocumented Claim. In the event the Undocumented Claims exceed 20% of the total aggregate of Claims received, the Parties agree that the Undocumented Claims will be rejected and will not be entitled to any Certificate or Undocumented Certificate.

3.6.    The Claims Administrator has the right, if it reasonably suspects a potentially invalid Claim or fraud, to request additional information. In addition, GM has the right to perform a review of Claims and, in the event that GM reasonably suspects a potentially invalid Claim or fraud, to request additional documentation before the Claim is approved and the Certificate is issued.

3.7.    Within thirty (30) days after receiving a Claim Form, the Claims Administrator must determine whether to conditionally accept the Claim subject to the provisions in subparagraph 3.4 above, deny the Claim, or request additional information or materials, and if the latter, send a written request to the Claimant for any additional information or materials. After giving the Claimant a reasonable opportunity of forty-five (45) days to cure a deficient Claim, the Claims Administrator shall determine the sufficiency or deficiency of the Claim. GM and Class Counsel will work with the Claims Administrator to develop a mutually-accepted process by which the sufficiency or deficiency of Claims are determined, including GM's ability to challenge Claims that it suspects are invalid, and Class Counsel's ability to challenge the anticipated denial of Claims before a final determination is made. The Claims Administrator

9

must follow the procedures outlined in this Settlement Agreement and the agreed-upon process in making its determination of the sufficiency or deficiency of a Claim. Its determination shall be final and not subject to appeal by any party.

3.8.    Claims may not be assigned and must be made in the name of the Class Member (i.e., vehicle purchaser), or in the event the Class Member is deceased, the Claim can be made by the Class Member's executor or administrator.

3.9.    Within sixty (60) days after the (i) date that the Claims Administrator calculates the percentage of Undocumented Claims and completes the corresponding procedures set forth in subparagraph 3.5 above, or (ii) the Effective Date of Settlement, whichever occurs later, the Claims Administrator shall mail the Certificates and Undocumented Certificates, as appropriate, issued to the Claimants, to be used towards the purchase or lease of a new GM Product.

3.10.    Certificates and Undocumented Certificates shall be stackable with any other available discount for the purchase or lease of a GM Product, except (i) the GM employee discount programs (except in a circumstance where such program is extended to all consumers) and (ii) the Assignable Certificate, as set forth in subparagraph 3.13 below. No more than two Certificates or Undocumented Certificates can be used in any single vehicle transaction.

3.11.    The Certificates and Undocumented Certificates shall be valid for thirty-six (36) months after final approval of the Settlement.

3.12.    Certificates and Undocumented Certificates shall be non-transferable during the first twelve (12) months after final approval of the Settlement, except to immediate household members (i.e., persons living at the same address as the Class Member) or to the parents or children of Class Members. Such transfers to immediate household members, parents and

10

children may be made at any time during the thirty-six (36) months that the Certificates and Undocumented Certificates are valid.

3.13.    After the first twelve (12) months, Class Members who have received a Certificate or Undocumented Certificate but have not availed themselves of the right to use it for the purchase or lease of a new GM Product may convert the Certificate or Undocumented Certificate into an Assignable Certificate. The Assignable Certificate shall be valid until thirty-six (36) months after final approval of the Settlement. Only one Assignable Certificate can be utilized with respect to any GM vehicle lease or purchase transaction. Assignable Certificates shall be stackable with any other available discount for the purchase or lease of a GM Product, except (i) the GM employee discount programs (except in a circumstance where such program is extended to all consumers); (ii) Certificates; or (iii) Undocumented Certificates. The Assignable Certificate may be transferred by the Claimant only once to a specific individual without the involvement of third parties and shall be subject to procedures by which the Claims Administrator and/or GM, at its option, shall be entitled to verify that the transfer is valid.

3.14.    GM will pay the Class Representative the amount of $5,000.00 by delivering a check in that amount payable to "RODANAST, P.C., as attorneys for Donna Soders" within seven (7) business days after (i) the Effective Date of the Settlement or (ii) delivery of a properly-completed IRS W-9 Form, whichever occurs later.

B.    Costs and Fees

3.15.    GM will pay all costs and fees of the Claims Administrator and Claims administration.

3.16.    GM will pay all costs, not to exceed $441,000, associated with disseminating the publication notice of the Settlement to the Class. Class Counsel shall contract with the entity

11

responsible for disseminating notice, with GM signing the retention agreement as the responsible party for any publication notice costs up to and including $441,000. GM will pay the funds directly to the entity responsible for disseminating notice in accordance with the terms of the retention agreement.

3.17. GM will not object to, and will pay, Class Counsel's attorneys' fees in an amount to be approved by the Court but not to exceed the total aggregate amount of $1.886 million. This represents less than the amount of fees that Class Counsel have incurred in litigating this Action. In no event shall GM be obligated to pay for attorneys' fees in excess of $1.886 million. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is conditioned upon the attorneys' fee award not exceeding $1.886 million and in the event it does, the Settlement Agreement will not become Effective, as set forth in subparagraph 1.13 above.

3.18. GM will not object to, and will pay, Class Counsel's documented costs in an amount to be approved by the Court but not to exceed the total aggregate amount of $500,000. In no event shall GM be obligated to pay for documented costs in excess of $500,000. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is

12

conditioned upon the cost award not exceeding $500,000 and in the event it does, the Settlement

Agreement will not become Effective, as set forth in subparagraph 1.13 above.

### C.    Notice to Class Members; Objections

3.19.    Class notice of the Settlement shall be primarily by publication, using a

publication notice in a form acceptable to GM and Class Counsel and a notice plan identical to

the notice plan used after initial certification of the Class, except that notice shall be published

twice, rather than once, in the weekday newspaper editions, and shall also be published once

each in the Pennsylvania state editions of Newsweek and People. The notice plan may be further

revised as may be mutually acceptable to the Parties and approved by the Court.

3.20.    In addition to notice by publication, no later than the last published notice date,

the Claims Administrator shall send direct mail notice to each Class Member who (i) was a

recipient of the Absent Class Member Questionnaire in connection with discovery in the Action;

(ii) has made direct contact with Class Counsel; or (iii) is otherwise identifiable as having a

specific interest in the Action. If any such direct mail notice is returned as undeliverable and/or

unclaimed, within fourteen (14) business days, the Claims Administrator shall attempt to

determine a valid address for such Class Member through the National Change of Address

database and mail the direct mail notice to any valid address that is found for the Class Member.

This mail notice shall be in a form acceptable to GM and Class Counsel.

3.21.    The Settlement notice plan shall be implemented within forty-five (45) days after

its approval by the Court unless otherwise agreed to by the Parties.

3.22.    Subject to Court approval, the Settlement notice shall give Class Members thirty

(30) days from the last published notice of the Settlement to object to the proposed Settlement.

Class Members shall submit any objections in writing, along with any supporting papers, to

13

Class Counsel, who shall provide copies to GM. The objections must state the reasons therefore, and must be postmarked by the deadline date. Any Class Member who fails to make objection in the manner provided shall be deemed to have waived any such objection and shall be foreclosed from making any objection (at the Settlement Fairness Hearing, by appeal or otherwise) to this Settlement.

3.23.   Subject to Court approval, the Settlement notice shall give at least forty-five (45) days advance notice of the final Fairness Hearing. Class Members shall submit copies of any notices of intent to appear and speak at the final Fairness Hearing to Class Counsel, who shall provide copies to GM. Such notices must be postmarked by the deadline date, which shall be thirty (30) days from the date of the last published notice of the Settlement. Any Class Member who fails to submit a notice of intent to appear and speak at the hearing in the manner provided shall be foreclosed from speaking at the hearing.

3.24.   The Settlement notice shall give each Class Member one hundred twenty (120) days from the date of the last published notice to submit a Claim. Class Members shall be entitled to submit Claims immediately upon receipt of notice, subject to final approval by the Court of the Settlement.

**D.   Release of Claims**

3.25.   If the Settlement is approved by the Court and the Action is dismissed with prejudice, each Class Member shall be bound thereby and shall have only the relief provided in this Settlement. Said dismissal will bar all claims that were or could have been asserted in the Action, or which arise out of or could be based on the allegations of the class action complaint filed in the Action, or which were based upon any of the acts or transactions set forth in the complaint, provided, however, that nothing herein shall restrict the right to bring claims based on

14

unrelated conduct of GM that could not have been asserted in the Action, or on a breach of any

terms set forth in this Settlement Agreement.

3.26.    In consideration of the benefits described above, the Class Representative

promises, covenants and agrees, and each Class Member and the Class shall be deemed to have

promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Class

Representative and the Class Members, including without limitation any of their present or

former affiliates, subsidiaries, associates, general or limited partners or partnerships,

predecessors, successors, assigns, officers, directors, trustees, employees, agents, attorneys,

representatives, shareholders, heirs, spouses, executors, administrators, or insurers and anyone

acting on their behalf, by operation of the Judgment, shall have hereby released, waived and

discharged GM, including its present or former subsidiaries, divisions, affiliates, associates,

general or limited partners or partnerships, predecessors, successors, assigns, officers, directors,

trustees, employees, agents, attorneys, representatives, shareholders, heirs, executors,

administrators, or insurers and anyone acting on their behalf, individually and collectively, from

liability for any and all claims, demands, debts, rights, causes of action or liabilities, including

known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, under

state statutory or common law, federal statutory or common law, or foreign statutory or common

law, to the fullest extent permitted by law, including, but not limited to, claims arising under the

Pennsylvania Board of Vehicles Act, whether or not such claims were or could have been raised

or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in

whole or in part, any of the allegations, acts, omissions, transactions, events, conduct or matters

in the Action, including but not limited to those based on:  (i) the portion of price previously

labeled on dealer vehicle invoices as the "GM Marketing Adjustment" in the amount of 1% of

the vehicle's MSRP exclusive of freight and destination charges; and (ii) the various GM

divisional marketing initiatives and/or programs at issue in the Action.

3.27.    Upon the Effective Date of Settlement, for the consideration provided for herein

and by operation of the Judgment, the Class Representative shall have, and each Class Member

and the Class shall be deemed to have, covenanted and agreed that he or she shall not, at any

time, institute, cause to be instituted, assist in instituting, or permit to be instituted on his or her

behalf any proceeding, in any state or federal court, in or before any administrative agency, or

otherwise, or otherwise allege or assert any of the claims released against the Released Persons,

individually or collectively, in subparagraph 3.26 above.

3.28.    Release language shall be included on the Claim Form and on the reverse side of

the check issued to the Class Representative.

3.29.    The Class Representative, by and through Class Counsel, agrees to seek Court

approval of this Settlement Agreement and the complete dismissal with prejudice of all claims of

the Class against GM in the Action. The Class Representative and Class Counsel shall take such

steps as may be necessary or as may be requested by the Court, and otherwise shall use their best

efforts to effectuate this Settlement Agreement and the settlement herein provided. Likewise,

GM agrees, where appropriate, to take such steps as may be necessary or as may be requested by

the Court, and otherwise shall use its best efforts to effectuate this Settlement Agreement and the

settlement herein provided. The Class Representative Plaintiff and Class Counsel will move the

Court for entry of Judgment dismissing with prejudice all claims asserted against GM by the

Class Representative and the Class in the Action.

3.30.    The sole remedy for default of this Agreement by either of the Parties is an action

for breach of this Agreement. Following entry by the Court of a Judgment and completion of all

obligations and undertakings set forth therein, no default by any party shall affect the final

dismissal of the Action with prejudice and the discharge and release of GM as set forth in

subparagraphs 3.25 through 3.30.

4.    **DENIAL OF WRONGDOING OR LIABILITY**

4.1.    This Agreement constitutes the resolution of disputed claims, is for settlement

purposes only, and shall not be used by any Party or Class Counsel for any other purpose. GM

expressly denies that it has violated any law, or injured the Class Representative or the Class in

any way, or engaged in any wrongdoing with respect to the Class Representative or the Class.

GM denies that it is liable to the Class Representative or the Class for any claims, causes of

action, costs, expenses, attorneys' fees or damages of any kind relating to the Action. GM denies

that any of the claims were appropriate for maintenance as a class action through trial. Neither

this Agreement nor any actions undertaken by GM in satisfaction of this Agreement shall

constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the

validity of any allegation of fact or law made by the Class Representative or the Class in the

Action. This Agreement, even when Effective, shall not be offered or be admissible in evidence

against GM or cited or referred to in any action or proceeding, except in an action or proceeding

brought to enforce its terms or by GM in defense of any claims brought by the Class

Representative, the Class or by any Class Members.

5.    **MISCELLANEOUS PROVISIONS.**

5.1.    The Class Representative and GM expressly agree that the terms of this

Agreement and all provisions hereof, including all representations, promises, agreements,

covenants, and warranties, are contractual and not a mere recital and shall survive the execution

of this Agreement and entry of the Judgment and shall continue in full force and effect. All

17

exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein
by this reference.

5.2.    This Agreement represents the entire agreement and understanding among the
Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating
to the subject matter of this Agreement, the sole exception being the term sheet attached hereto
as Exhibit A.  The Parties acknowledge, stipulate, and agree that no covenant, obligation,
condition, representation, warranty, inducement, negotiation or understanding concerning any
part or all of the subject matter of this Agreement has been made or relied on except as expressly
set forth in this Agreement.  No modification or waiver of any provisions of this Agreement shall
be effective unless made in writing and signed by or on behalf of the person against whom
enforcement of the Agreement is sought.

5.3.    This Agreement may be executed in one or more counterparts, each of which shall
be deemed an original as against any Party who has signed it, and all of which shall be deemed a
single agreement.

5.4.    The Parties have negotiated all of the terms and conditions of this Agreement at
arm's length.  None of the Parties or their respective counsel will be deemed the drafter of this
Agreement or its exhibits for purposes of construing the provisions thereof.  The language in all
parts of this Agreement and its exhibits will be interpreted according to its fair meaning, and will
not be interpreted for or against any Party as the drafter thereof.

5.5.    The Parties hereto warrant and represent that no promise or inducement has been
offered or made for the release and covenants in subparagraphs 3.25 through 3.30 except as
herein set forth, that the releases and covenants are executed without reliance on any statements

18

or any representations not contained herein, and that the release and covenants reflects the entire agreement among the Parties with respect to the terms of the releases and covenants.

5.6.    The Parties acknowledge and agree and specifically warrant to each other that they have fully read this Agreement and the releases and covenants contained in subparagraphs 3.25 through 3.30, received independent legal advice with respect to the advisability of entering into this Agreement with those releases and covenants and the legal effect of this Agreement and the releases and covenants, and fully understand their effect.

5.7.    GM and Class Counsel may agree, on behalf of the Parties and subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Agreement.

5.8.    This Agreement shall be binding upon and inure to the Parties' successors and assigns. This Agreement is not intended to create any third-party beneficiaries other than persons (including Class Members) for which a direct benefit is specifically provided for hereunder.

5.9.    In the event that the release and covenants contained in subparagraphs 3.25 through 3.30 of this Agreement shall for any reason be held in whole or material part to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement if GM elects in writing to Class Counsel to proceed as if such invalid, illegal or unenforceable provision had never been included in this Agreement. If no such election is made, then the Agreement shall be null and void. If one or more of the other material provisions contained in this Agreement is held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability will not affect other provisions if

GM and the Class Representative, on behalf of the Class, both elect to proceed as if such invalid, illegal or unenforceable provision were not contained in this Agreement.

5.10.    No consideration or amount or sum paid, credited, offered or expended by GM in its performance of this Agreement constitutes a penalty, fine, punitive damage or other form of assessment for any alleged claim or offense.

5.11.    For purposes of this Agreement, the Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information ("Protective Orders") remain in effect and all Parties and counsel remain bound to comply with the provisions of those Protective Orders. Within thirty (30) days of the Effective Date of Settlement, each of the Parties agrees to use its best efforts to return or destroy all confidential documents produced in the Action and all copies thereof, and each of the Parties' counsel will certify in writing that it used its best efforts to return or destroy all such documents.

5.12.    The Parties hereto understand, acknowledge and agree that they (i) have each performed an independent investigation of the allegations of fact and law made in connection with the Action, and (ii) that they each may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Agreement. Nevertheless, it is the Parties' intention to resolve their disputes pursuant to the terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any change or difference in facts or law.

5.13.   This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.

5.14.   In the event the Court issues the Order approving this Settlement Agreement and the Action is dismissed with prejudice, the Action will be terminated subject only to the Court's inherent powers solely and exclusively to enforce the terms of the Settlement Agreement.

5.15.   Whenever under the terms of this Agreement, a Party is required to provide written notice to the other, such notice must be directed to the individual at the address specified below, unless that individual or the individual's successor gives notice to the other Party in writing of another individual or address to whom such notice should be directed.

Written notice to the Class Representative or Class Counsel must be given to:

>       Joseph F. Roda, Esq.
>       Michele S. Burkholder, Esq.
>       RODANAST, P.C.
>       801 Estelle Drive
>       Lancaster, PA  17601

Written notice to GM must be given to:

>       Jeffrey A. Lipps, Esq.
>       Angela M. Paul Whitfield, Esq.
>       CARPENTER LIPPS & LELAND LLP
>       280 Plaza, Suite 1300
>       280 North High Street
>       Columbus, Ohio 43215

With a copy to:

>       Lawrence S. Buonomo, Esq.
>       General Motors Legal Staff
>       400 Renaissance Center
>       MC 482-026-601
>       Detroit, MI 48265

5.16.   If this Settlement Agreement is not approved by the Court or if any such approval is reversed on appeal, the Settlement Agreement shall be null and void, shall have no further

21

force and effect, and shall not be offered in evidence or under the Action for any purpose,

including for the purpose of arguing for or against the existence, certification, or maintenance of

any purposed class. In such event, the Settlement Agreement and all negotiations, proceedings,

documents prepared and statements made in connection herewith shall be deemed to have been

made without prejudice to GM or the Class Representative, shall not be deemed or construed to

be an admission or confession by any party of any fact, matter, or proposition of law, and shall

not be used in any manner for any purpose. Thus, all Parties to the Action shall stand in the

same position as if the Settlement Agreement had not been negotiated, made or filed with the

Court. If the Settlement is not approved, the Parties may elect to move the Court to vacate any

and all orders entered by the Court pursuant to the provisions of this Settlement Agreement, and

GM expressly reserves the right to continue to challenge and to pursue appealing of the orders

regarding the certification of the Class in the Action, and Class Counsel expressly reserve the

right to oppose any such challenges on appeal by GM.

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their

duly authorized attorneys below.

_Michell S. Burkholder_

Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

23

# EXHIBIT 2

1

IN THE COURT OF COMMON PLEAS OF
LANCASTER COUNTY, PENNSYLVANIA
CIVIL

_____
                                    :
DONNA SODERS, on behalf of          :
herself and all others              :
similarly situated,                 :
                                    :
                Plaintiffs          :
                                    :
                                    :
        vs                          :        No. 04255 of 2000
                                    :
GENERAL MOTORS CORPORATION,         :
                                    :
                Defendant           :
                                    :
_____    :

**COPY**

TRANSCRIPT OF PROCEEDINGS
SETTLEMENT FAIRNESS HEARING

Before:  THE HONORABLE LOUIS J. FARINA

Date  :  Tuesday, April 28, 2009

Place :  Courtroom Number 10
         Lancaster County Courthouse
         50 North Duke Street
         Lancaster,  PA  17608-3480


APPEARANCES:

     JOSEPH F. RODA, ESQUIRE
     MICHELE BURKHOLDER, ESQUIRE
     RODA & NAST, P.C.
     801 Estelle Drive
     Lancaster, PA 17601
        For - the Plaintiffs

     JEFFREY A. LIPPS, ESQUIRE
     CARPENTER & LIPPS, LLP
     280 North High Street 1300
     Columbus, OH 43215
        For - the Defendant

ANGELA N. KILBY, OFFICIAL COURT REPORTER
(717) 299-8091

1           We could not have gotten the settlement that is

2      here before the Court today without the investment of this

3      time.   It was necessary to our ability to be where we are

4      today.

5           Fees and class actions are approached through

6      courts by either of two methods, which we mentioned, one,

7      percentage of the fund; second, the loan star approach.

8           In certificate settlements, the Courts have

9      differed on whether or how to use the percentage

10     appropriately.  Some regard to use it based on the

11     potential value; others look at redemption rates,

12     et cetera.  I mentioned before that if we were to value the

13     settlement at only five to ten percent of the potential

14     value, it would be at five percent of the seven to eight

15     million dollar value in the case.

16          GM has agreed, based on what our current loan star

17     was at the time in October, as it is customarily

18     determined, to pay up to $1.86 million in fees.  We do not

19     request that.  We have not requested interest, we have not

20     requested a multiplier, we are not requesting the fee at

21     our current rates.  We are requesting -- in our petition we

22     requested the fee only at our historic rates, the rates

23     that were in place and being billed in class actions at the

24     time in these nine years.

25          That is $200,000 less than what GM has agreed to

1    pay in the case.  But, Your Honor, and I say this without

2    having discussed this with GM or with anyone else, we have

3    made a further decision at our office on this, the powers

4    that be, so to speak, at the office.

5         We watch the same news everybody else watches.  We

6    read the same papers everybody else watches.  We are aware,

7    as everyone is, of this very unfortunate perfect storm that

8    has hit the economy, and GM in particular.  You know, you

9    can't but help but feel bad for people who are losing their

10   jobs, who are having their pay cut, et cetera, because of

11   that.

12        In view of that, notwithstanding the work that

13   went into this case, the work that brings us here today, we

14   have come to the Court and say we are asking for a fee that

15   is half our historic rates.  We have decided to cut our fee

16   request by the factor of half from the one point six.  We

17   are asking for half of that, which is about $843,000, with

18   our costs.

19        We believe the other request would have been

20   reasonable, but, under the circumstances, in an effort to

21   be eminently reasonable, we have decided to make that

22   request --

23        THE COURT:  What does that result in your historic

24   rate being?

25        MR. RODA:  It would be -- it would be a blended

1      rate of $134 an hour.

2           Your Honor, I believe that I have covered the

3      objections that have been made.  There have been, as we

4      mentioned in our papers, only nine objections filed.  Seven

5      timely, two untimely; but we have considered all of those.

6           The objections have a common theme, cash, as

7      opposed to the certificates.  As I have explained, cash

8      would have been our preference.  This should -- our

9      position should not be understood as having gone and sought

10     a certificate settlement, or loosely agreeing to a

11     certificate settlement.

12          Our position was we wanted a cash settlement.  We

13     could not get a cash settlement.  Had we held out for cash

14     settlement, there would be no settlement, and, in all

15     likelihood, the class would receive nothing.

16          One can criticize the value of the certificates,

17     but they do have a value.  They have a real value.  And,

18     again, one has to look at their value, not in the abstract,

19     as if at trial we could have gotten something many

20     multiples of that value, but in relation to what a class

21     member could have hoped to obtain.

22          THE COURT:  When the certificates become

23     transferable to anyone after a year to anyone --

24          MR. RODA:  Yes.

25          THE COURT:  -- is there a market?

1          MR. RODA:  It will depend, Your Honor.

2          Fortunately, we are in the internet-age.  We are

3    in the age where it is probably -- there is unprecedented

4    ease in establishing markets of any kind for people.

5          THE COURT:  Because you could put them on Ebay for

6    that matter.

7          MR. RODA:  They can be -- well, as I say, the

8    initial person may stack two of them to purchase.  They may

9    -- everybody may stack them on top of any other discount

10   program which is attainable at the time.  And even $150 is

11   nothing to sneeze at if you are going in to buy a car.

12         If the dealer were on his own initiative to come

13   out and say I am going to cut it another $150 for you,

14   people would be pleased about that.

15         But, again, in relation to what the class members

16   could have achieved, if we had won a trial and sustained

17   this through appeal and GM were not bankrupt by the time it

18   came to collect on that judgment, it is a good value.  It

19   is a good value.

20         It is a compromise to be sure.  But that is the

21   definition of a settlement.

22         THE COURT:  Was Mr. Lipps aware of your

23   reduction --

24         MR. RODA:  No, he was not.  We have not asked --

25   we have not asked that.

1          We did discuss -- I raised, for the first time

2     with Mr. Lipps over the weekend, the idea, perhaps, of

3     extending the time for the class period.  It runs until

4     June 15.  There is still the better part of two months for

5     this.

6          But, of course, GM has had other things to deal

7     with in the past hours, the past days, literally.  The

8     convergence of events just from the time we filed our fee

9     petition last week until today just magnifies the things to

10    which we refer.

11         THE COURT:  It struck me yesterday as I watched

12    the news.

13         MR. RODA:  It is really unfortunate.  One only

14    hopes, as I said to counsel at GM when we concluded the

15    settlement negotiations, independent, not lawyer-to-lawyer,

16    but just person-to-person, we got to wish the best for all

17    these folks.  These are real lives, et cetera.

18         THE COURT:  I don't mean it struck for the first

19    time.  But it struck me as particularly poignant yesterday

20    as the current announcements were being made as to the

21    plant closings, the loss of the Pontiac brand, some 21,000

22    jobs being cut, realizing we were coming here today to

23    consider this.

24         MR. RODA:  And I learned here today just coming

25    down that those people who keep their jobs are all having

1    some very significant pay cuts to go along with it, too.

2            So you can't stand here and not take cognizance of

3    that, and we are trying to do that.

4            THE COURT:  According to what I've read, it is not

5    a done deal.  If the bondholders don't agree, it is

6    bankruptcy.  At least that's what the news reports.  But I

7    am sure Mr. Lipps can fill us in about that.

8            MR. RODA:  Right.

9            And the agreement has been that there will be --

10    as per the terms of the settlement agreement, GM is going

11    to transfer the funds to Mr. Lipps to be held in his IOLTA

12    account pending the clocking of the days from the time,

13    whenever that is, that Your Honor would enter an order on

14    this.

15            I would be happy to answer questions, Your Honor,

16    or respond to anything that is said either by Mr. Lipps or

17    by the one class member who is here, or Mr. Gibson who is

18    representing two class members.

19            THE COURT:  Mr. Lipps.

20            MR. LIPPS:  I don't really have much to say, Your

21    Honor, and I would likewise answer any questions.

22            I will say I've represented GM for 28, 29 years

23    now, and this is perhaps the most difficult phase they have

24    gone through, and they are continuing to fight day and

25    night.

1    good as can be expected under the circumstances.

2         Accordingly, I will approve the settlement.  And I

3    applaud Mr. Roda's reduction of his fee by one-half.  The

4    rate of $134 per hour is astounding, and it recognizes the

5    very real position that the Plaintiff needs to recognize,

6    that this litigation isn't about an attorneys' fee, it is

7    about the class.  He is not asking for fees that would make

8    this a suit just for attorneys.

9         Under the circumstances, over nine hard-fought

10   years of intense work, this is extremely reasonable and I

11   will approve it.

12        Mr. Gibson, your request is denied.

13        MR. GIBSON:  For the admission -- for submission

14   of the time records?

15        THE COURT:  Yes.  I am totally satisfied.  As

16   having lived with this litigation for nine years, and all

17   the times we've been together, and knowing all the

18   discovery issues that went through --

19        MR. GIBSON:  I just note my objection.

20        THE COURT:  Given all the time, there is no need

21   for any further review by me of those records to know that

22   the fee request in this case is totally beyond reasonable,

23   to the extent it is unreasonable to Plaintiffs, and they do

24   it under the recognition.  I accept what he says.

25        MR. GIBSON:  Your Honor --

REPORTER'S CERTIFICATE

1

2

3          I HEREBY CERTIFY that I was present at the

4    hearing of the above-entitled matter and reported

5    stenographically the proceedings held and the testimony

6    produced; and I further certify that the foregoing is a

7    true and correct copy of my said stenographic notes.

8          In testimony whereof, I have hereunto subscribed

9    my hand this 29th day of April      , 2009.

10

11

12

13

14    _____
      ANGELA N. KILBY
      Official Court Reporter

15

16

17                    O R D E R

18

19          AND NOW, this      day of

20    2009, this transcript is approved and ordered to be filed.

21

22

23    _____

24                    Louis J. Farina, Judge

25

# EXHIBIT 3

COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

DONNA SODERS, on Behalf of Herself          :
and all Others Similarly Situated           :
                                            :
            VS.                             :       CI-00-04255
                                            :
GENERAL MOTORS CORPORATION                  :

## JUDGMENT ENTRY

AND NOW, this 28th day of April, 2009, upon consideration of Plaintiff's

Motion for Final Approval of Settlement, Class Representative Payments, Fee Award and

Costs; Plaintiff's supporting memoranda and exhibits; and oral presentations at the final

fairness hearing held on April 28, 2009, it is hereby ORDERED, ADJUDGED and

DECREED that:

1.    Notice of the proposed settlement was made in accordance with the

instructions provided in this Court's Order Setting Fairness Hearing on Proposed Class

Action Settlement.

2.    All class members have been provided with a sufficient opportunity to

submit objections to the proposed settlement and participate in the final fairness hearing,

and all submissions and presentations by members of the class in this action have been

given due consideration.

3.    The Court has held a hearing to consider the fairness, reasonableness

and adequacy of the proposed Settlement, and has considered, *inter alia*, the complexity,

expense and likely duration of the litigation; the reaction of the class to the proposed

settlement; the stage of the proceedings and the amount of discovery completed; the risk

of establishing liability and damages and maintaining the class through trial; the ability of

Defendant General Motors corporation to withstand a greater judgment; and the range of

reasonableness of the settlement in light of the best possible recovery and all the

attendant risks of litigation.

4.      The Court has also given significant weight to the belief of experienced

counsel appointed to represent the interests of the class that the proposed settlement is in

the best interest of the class.

5.      The Court finds that the proposed settlement is not the product of

collusion between the parties and their respective counsel, but rather was the result of

bona fide, good faith, arm's length negotiations between experienced counsel after

sufficient discovery was obtained.

6.      A review of all relevant factors supports the proposed settlement, and the

same is hereby approved and found to be, in all respects, fair, reasonable and adequate

and in the best interests of the class as a whole.

7.      The requested payment of $5,000 to the class representative is found to be

fair and reasonable in light of her efforts, and is hereby approved.

8.      The requested total fee award of $1,687,858.75, voluntarily reduced by ½

by class counsel at the final fairness hearing to $843,929.37, is found to be fair and

reasonable, and is approved, in light of the time and efforts reasonably expended by the

attorneys in the litigation; the quality of services rendered; the results achieved and

benefits conferred upon the class; the magnitude, complexity and uniqueness of the

litigation; and the contingent nature of their fee.

9.    The requested reimbursement of total costs of $437,416.92 to class counsel is found to be fair and reasonable, and is hereby approved.

10.    The parties are bound by all terms in the Settlement Agreement, including the Release of Claims provisions in Subparagraphs 3.22 through 3.27 of the Settlement Agreement, and shall take all steps necessary to implement and effectuate the terms in the Settlement Agreement.

11.    This action is dismissed with prejudice.

12.    The termination of the above-captioned action is subject only to the Court's continuing jurisdiction solely and exclusively to enforce the terms of the Settlement Agreement.

BY THE COURT:

LOUIS J. FARINA
PRES. JUDGE
LOUIS J. FARINA
PRESIDENT JUDGE

Attest:

Copies to:

Joseph F. Roda, Esq.; Michele S. Burkholder, Esq.
Christopher S. Underhill, Esq.
Michael H. Carpenter., Esq.; Jeffrey A. Lipps, Esq.



DATE: 4/28/09

-3-

# EXHIBIT 4

10/04/2004  19:01    57058770045                                                           PAGE  01
.03/13/2009  14:43    6105564400                    LAW OFFICES                            PAGE  01/01



**THE**
**GIBSON**
**LAW FIRM**

215-729-7000

Robert T. Gibson*†
*Member PA Bar
†LL.M. in Trial Advocacy

March 13, 2009

**VIA FACSIMILE ONLY: 570-587-7004**

Karen and George Kairis
P.O. Box 8
Whites Ferry Road
Lake Winola, PA 18625

Re:    *Soders v. General Motors Corp.*, C.C.P. Lancaster Co., No. CI-00-04255

Dear Karen and George,

Please allow this letter to confirm that you have retained me to object on your behalf to the proposed class action settlement in *Soders v. General Motors Corp.* If there is a settlement pertaining to the objection, you will receive ten percent of any such settlement. If there is no settlement but the Court sustains the objection, I will petition the Court for payment of my attorneys fees, as well as incentive awards for you. You will not be responsible for any expenses. Also, please allow this letter to confirm that you were referred to me by Kristen Jesse, Esquire, who may share in any fee I recover. Please sign this letter at the bottom and fax it back to me. Thank you for allowing me to be of service to you.

Very truly yours,

*Robert T. Gibson*

ROBERT T. GIBSON

*Karen Kairis*
Karen Kairis

*George Kairis*
George Kairis

319 WEST FRONT STREET, MEDIA, PA 19063 • TELEPHONE: 215-729-7000 • FACSIMILE: 215-359-2166
rgibson@gibsonlawfirm.net

G

# EXHIBIT 5

*E/+5- 3*

# MEMORANDUM

TO:        FILE

FROM:      MSB

CC:        JFR, SMS

DATE:      May 20, 2009

RE:        <u>Soders - Call with Robert Gibson on 04/28/09</u>

Joe and I called Mr. Gibson, in response to a voicemail that he had left for Joe.

Mr. Gibson said that he obviously plans to file a notice of appeal, but he called because he wants to resolve it.

Joe asked what he meant.

Mr. Gibson said, "Fine. I will file a notice of appeal."

Joe said wait, he wants to explore this, to make sure he understands. Joe asked what Mr. Gibson was proposing, since the settlement has already been approved, so he was not sure how it could be resolved. Joe asked, "What do you have in mind?"

Mr. Gibson said, "Do you understand what I am getting at, Joe?"

Joe said, "I am trying to understand. What are you proposing?"

Mr. Gibson said that he proposes that we enter into a settlement agreement with his clients. He said that they would be willing to settle their objection for a specific sum and attorney fees.

Joe asked what the amount would be.

Mr. Gibson said that his clients demand a total of $100K, to be split between them and him, and that GM should pay this because of the savings that it has gained in having to pay less in attorneys' fees.

**RODANAST, P.C.**

Joe paused, and then said that he does not remember how many cars Mr. Gibson's clients purchased, but their recovery would only be in the hundreds. He asked how much would go to the client and how much would go to Mr. Gibson.

Mr. Gibson said that it would be divided pursuant to an agreement with his clients.

Joe said that this sounds like a large amount, and that he needs to understand how Mr. Gibson came up with it.

Mr. Gibson said that it is for the benefit conferred to the class by the objection he had filed.

Joe asked what benefit, and how a settlement for just his clients could benefit the class.

Mr. Gibson said that because of his objection, we reduced our fee by $800K.

Joe said that his objection had nothing to do with the fee reduction, and that he already said this on the record at the hearing.

Mr. Gibson said that he finds this hard to believe, and that the timing is suspect.

Joe said that even for the purpose of discussion, if we were to assume that we reduced our fee in response to his objection, he didn't see how that could benefit the class, since the fee amount is not to come from any money to be given to the class.

Mr. Gibson said there are two reasons. First, it sets a precedent so attorneys do not profit from weak settlements at the detriment of consumers, and second, GM does not have to pay the fee, which also benefits consumers.

Joe asked if Mr. Gibson wants to set up a conference call with GM to talk about this. Mr. Gibson said he does not care, and it can either be through a conference call or Joe can convey the message. Mr. Gibson repeated that GM should pay most if not all of the amount because of the amount it is saving.

**RODANAST, P.C.**

# EXHIBIT 6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re ) | Chapter 11 Case No. |
| ) | |
| MOTORS LIQUIDATION COMPANY, *et al.,* ) | 09-50026 (REG) |
| f/k/a General Motors Corporation, *et al.,* ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |
| ) | |

# SCHEDULES OF ASSETS AND LIABILITIES FOR

## Motors Liquidation Company (f/k/a General Motors Corporation)

## Case No: 09-50026

Debtors of liability, the validity of any litigation action, or the amount or treatment of any claims, defenses, counterclaims, and cross-claims with respect to any litigation action and the amount or treatment of any potential claim resulting from any litigation action currently pending or that may arise in the future.

The claims of individual creditors are listed at the amounts recorded on the Debtor's books and records and may not reflect credits or allowances due from such creditor. The Debtors reserve all of their rights with respect to such credits or allowances.

d.) **Schedule G – Executory Contracts:**   The historical businesses of the Debtors were large and complex.   While reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, inadvertent errors, omissions or overinclusion may have occurred.   The Debtors reserve all of their rights to dispute the validity, status or enforceability of any contract or other agreement set forth in Schedule G and to amend or supplement Schedule G as necessary.

Schedule G contains all known executory contracts and unexpired leases entered into prior to the Commencement Date that have not been assumed and assigned to Purchaser as of September 1, 2009.   Schedule G may include contracts and leases that have expired by their terms prior to September 1, 2009.

Nothing herein shall be construed as a concession or evidence that any of the contracts, agreements, and leases identified on Schedule G: (i) constitute an "executory contract" within the meaning of section 365 of the Bankruptcy Code and other applicable law; or (ii) have not expired or been terminated or otherwise currently are in full force and effect. Rather, the Debtors expressly reserve all of their rights with respect thereto, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization or enforceability of any contracts leases or set forth therein.   Certain of these contracts or leases may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements that may not be listed herein, but are nonetheless incorporated herein by this reference.   Moreover, omission of a contract or lease from Schedule G does not constitute an admission that such contract or lease is not an executory contract or unexpired lease.

In some cases, the same supplier or provider appears multiple times in Schedule G.   This multiple listing is to reflect distinct agreements between the applicable Debtor and such supplier or provider.

Certain of the contracts and leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights.   Such rights, powers, duties and obligations may not be set forth on Schedule G.   In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, right of way, subordination, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements.   Such documents may also not be set forth on Schedule G.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.   The Debtors reserve all of their rights to dispute or challenge the characterization of the structure of any transaction, or any document or instrument (including, without limitation, any intercompany agreement) related to a creditor's claim. Certain of the contracts and leases listed on Schedule G may have been entered into by more than one of the Debtors.   Finally, certain of the contracts and leases listed on Schedule G may not have been memorialized and could be subject to dispute.

7

Schedule G includes a column entitled "Note", and certain contracts and leases on Schedule G include number (1) or (2) under the Note column. This information relates to whether the Debtors have taken any action toward assuming the contract or lease and assigning it to the Purchaser under the MSPA. The Sale Order, the order approving certain procedures in relation to the GM Asset Sale, dated June 2, 2009 (Docket Number 274), and the MSPA set forth certain procedures for the Debtors to assume contracts and leases and assign them to New GM. Among other things, the procedures provide that New GM may designate a contract or lease for assumption (such designated contract or lease, an "*Assumable Executory Contract*") until a specified date (the "*Executory Contract Designation Deadline*"), which date may be extended by mutual agreement of the Debtors and New GM (in whole or for any particular contract or lease or groups of contracts or leases). As of the date of the filing of the Schedules, the Executory Contract Designation has been extended to September 30, 2009. After a contract or lease has been designated as an Assumable Executory Contract, the Debtors must provide notice and a 10-day opportunity to object to the counterparty to the contract. Even after the deadline for filing an objection has passed, an Assumable Executory Contract is not assumed and assigned until the later of the date any non-cure objections, if any, have been resolved or overruled and the date that New GM designates as the assumption effective date (the "*Assumption Effective Date*"). Prior to such Assumption Effective Date, New GM can un-designate for assumption any Assumable Executory Contract, such that any Assumable Executory Contract may ultimately not be assumed and assigned to New GM. Note (1) refers to contracts and leases that have been designated as Assumable Executory Contracts as of September 1, 2009, but for which the Assumption Effective Date has not occurred as of September 1, 2009 because the counterparty has filed an objection to such Assumption Effective Date, and the objection has not been resolved as of September 1, 2009. The Debtors and New GM are currently working toward resolving such objections. Note (2) refers to contracts and leases that have been designated as Assumable Executory Contracts as of September 1, 2009, but for which the Assumption Effective Date has not occurred as of such date because either the objection period has not expired or because the Purchaser has not determined the Assumption Effective Date. If the Note column does not include a number, then the contract or lease is not an Assumable Executory Contract as of September 1, 2009.

e.  **Schedule H – Co-Debtors:** In the ordinary course of their business, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because of the volume of such claims, because all are contingent, disputed or unliquidated, and because such claims are listed elsewhere in the Schedules and Statements, such claims have not been set forth individually on Schedule H.

23. **Statements**

a.  **Statements – Question 3b - 90 Day Payments:** The dates set forth in the "Date of Payment" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the clearance date for a check or money order. In addition to the payments disclosed in response to this Question, the Debtors engaged in numerous transactions, including payments and other transfers, with their Debtor and non-debtor affiliates on a daily basis under a consolidated cash management system. Given the significant volume and ordinary course nature of such transactions, the Debtors may not have listed all such intercompany transfers and transactions.

b.  **Statements – Question 17 - Environmental:** The Debtors historically maintained property and operations in many locations. At some of these locations, the Debtors no longer have any operations, and, as of the Commencement Date, may no longer have had relevant records, or the records may no longer be complete or reasonably accessible and reviewable. Some individuals who once possessed responsive information are no longer employed by the Debtors. For all of these reasons, it may not be reasonably possible to identify and supply the requested information for every "site" and "proceeding" literally responsive to Question 17. Nonetheless, the Debtors

8

Motors Liquidation Company
Case Number: 09-50026
Exhibit G-9
Legal

| Name | Description | Contract ID | Address | Note |
|------|-------------|-------------|---------|------|
| SANCHEZ & DANIELS | FEE AGREEMENT<br>GM CONTRACT ID: 16553922 | 5716-01220478 | ATTN: MANNY SANCHEZ, ESQ.<br>333 W WACKER DR STE 500<br>CHICAGO, IL 60606-1225 | |
| SANDOVAL, JANNA | PRODUCT LITIGATION<br>GM CONTRACT ID: 16588052 | 5716-01226967 | GILBERT ARRAZOLO<br>715 TIJERAS AVE NW<br>ALBUQUERQUE, NM 87102 | 2 |
| SANDOVAL, JONATHON | PRODUCT LITIGATION<br>GM CONTRACT ID: 16588052 | 5716-01226968 | ARRAZOLO LAW PC<br>715 TIJERAS AVENUE NW<br>ALBUQUERQUE, NM 87102 | 2 |
| SANDOVAL, JONATHON | PRODUCT LITIGATION<br>GM CONTRACT ID: 16588052 | 5716-01226969 | RAGAN JAMES B PC<br>723 COLEMAN AVENUE<br>CORPUS CHRISTI, TX 78401 | 2 |
| SEDGWICK, DETERT, MORAN & ARNOLD, LLP | WEST REGION RETAINER AGREEMENT FOR GM PRODUCT<br>LIABILITY PROPERTY DAMAGE LITIGATION<br>START DATE: 7/1/2007 | 5716-00000208 | DEBORAH E. LEWIS, ESQ.<br>1717 MAIN ST STE 5400<br>DALLAS, TX 75201-7367 | |
| SETTLEMENT AGREEMENT IN SODERS V<br>GENERAL MOTORS CORPORATION, CASE NO. CI-<br>00-04255 | SETTLEMENT AGREEMENT IN PENNSYLVANIA CLASS ACTION<br>RELATING TO 1989-1999 MARKETING INITIATIVE (ONE PERCENT)<br>GM CONTRACT ID: 16555892<br>START DATE: 12/15/2008 | 5716-01217866 | JOSEPH F. RODA, ESQ.<br>RODANAST, P.C.<br>801 ESTELLE DRIVE<br>LANCASTER, PA 17601 | |
| SHANGHAI AUTOMOTIVE INDUSTRY<br>CORPORATION | NON-DISCLOSURE AGREEMENT | 5716-00003246 | GM INVESTMENTS CO. LTD.<br>THERESE RYAN<br>11TH FLOOR, JINMAO TOWER<br>88 CENTURY AVE | 2 |
| SHANGHAI AUTOMOTIVE INDUSTRY<br>CORPORATION | LETTER | 5716-000150018 | 489 WEIHAI RD.<br>SHANGAH 200041 CHINA (PEOPLE'S REP) | 2 |
| SHARROW, KANIETEHEWI | GM CONTRACT ID: 16479169 | 5716-01217468 | DREYER BOYAJIAN LLP<br>75 COLUMBIA ST<br>ALBANY, NY 12210 | |
| SHARROW, KARONHIOTHA | GM CONTRACT ID: 16479169 | 5716-01217469 | DREYER BOYAJIAN LLP<br>75 COLUMBIA ST<br>ALBANY, NY 12210 | |
| SHERWOOD AUTOMOTIVE GROUP INC | GM CONTRACT ID: 14489085 | 5716-01217535 | SIEVING MICHAEL M LAW OFFICES OF<br>350 UNIVERSITY AVE STE 105<br>SACRAMENTO, CA 95825 | |

# EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case No. |
| MOTORS LIQUIDATION COMPANY, *et al.,* | ) | 09-50026 (REG) |
| f/k/a General Motors Corporation, *et al.,* | ) | (Jointly Administered) |
| Debtors. | ) | |

# STATEMENT OF FINANCIAL AFFAIRS FOR

## Motors Liquidation Company (f/k/a General Motors Corporation)

## Case No: 09-50026

Motors Liquidation Company

Attachment 3b

Case Number:     09-50026

3b Net payments made to creditors within the past 90 days

| Payee | Address | City, State & Zip | Payment Date | Payment Number | Payment Amount |
|---|---|---|---|---|---|
| CARINO VICENTE B MD PC | 6520 STONEBROOK LN | FLUSHING, MI 48433 | 5/4/2009 | 002962868 | $4,100 |
| | | | CARINO VICENTE B MD PC SUBTOTAL | | $9,430 |
| CARL BLACK BUICK PONTIAC GMC | 1110 ROBERTS BLVD NW | KENNESAW, GA 30144 | 5/19/2009 | 000148797 | $1,450,000 |
| | | | CARL BLACK BUICK PONTIAC GMC SUBTOTAL | | $1,450,000 |
| CARL W. HARRIS ANDCONSUMER LEG | | | 4/6/2009 | 901003493 | $6,500 |
| | | | CARL W. HARRIS ANDCONSUMER LEG SUBTOTAL | | $6,500 |
| CARLOTTA VEAL AND RONALD S.WEI | | | 4/2/2009 | 901003421 | $7,500 |
| | | | CARLOTTA VEAL AND RONALD S.WEI SUBTOTAL | | $7,500 |
| CARLOW ASSOCIATION INC | 5060 RIVER RD | SCHILLER PARK, IL 601761076 | 5/13/2009 | 002964297 | $30,762 |
| | | | CARLOW ASSOCIATION INC SUBTOTAL | | $30,762 |
| CARNEY BADLEY & SPELLMAN | 701 5TH AVE STE 3600 | SEATTLE, WA 981047010 | 4/14/2009 | 002960151 | $12,100 |
| CARNEY BADLEY & SPELLMAN | 701 5TH AVE STE 3600 | SEATTLE, WA 981047010 | 4/28/2009 | 002961968 | $6,050 |
| CARNEY BADLEY & SPELLMAN | 701 5TH AVE STE 3600 | SEATTLE, WA 981047010 | 5/15/2009 | 002964470 | $6,050 |
| | | | CARNEY BADLEY & SPELLMAN SUBTOTAL | | $24,200 |
| CARO CARBIDE CORPORATION | 553 ROBBINS DR | TROY, MI 480834559 | 5/18/2009 | 002512295 | $1,218 |
| CARO CARBIDE CORPORATION | 553 ROBBINS DR | TROY, MI 480834559 | 4/20/2009 | 002504641 | $5,612 |
| | | | CARO CARBIDE CORPORATION SUBTOTAL | | $6,830 |
| CAROLE A HEATH, ROBERT T HEATH | | | 3/24/2009 | 901003010 | $5,500 |
| | | | CAROLE A HEATH, ROBERT T HEATH SUBTOTAL | | $5,500 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 3/18/2009 | 002497299 | $124,250 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 5/7/2009 | 002510626 | $7,679 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 3/24/2009 | 002498332 | $58,425 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 5/19/2009 | 002512935 | $5,000 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 5/5/2009 | 002510079 | $270,446 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 3/31/2009 | 002499572 | $125,724 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 5/14/2009 | 002511946 | $2,255 |
| CARPENTER & LIPPS LLP | 280 NORTH HIGH ST STE 1300 | COLUMBUS, OH 43215 | 5/22/2009 | 002513661 | $10,257 |
| | | | CARPENTER & LIPPS LLP SUBTOTAL | | $604,035 |
| CARPENTER LIPPS & LELAND LLP | 280 PLAZE SUITE 1300 280 NORTHHIGH STREET | COLUMBUS, OH 43215 | 5/6/2009 | 000148346 | $1,281,346 |
| | | | CARPENTER LIPPS & LELAND LLP SUBTOTAL | | $1,281,346 |
| CARRIE RIZZI ANDCONSUMER LEGAL | | | 5/19/2009 | 901006658 | $8,000 |
| | | | CARRIE RIZZI ANDCONSUMER LEGAL SUBTOTAL | | $8,000 |
| CARRIER CORPORATION | PO BOX 93844 | CHICAGO, IL 606733844 | 4/2/2009 | 002958908 | $11,433 |
| CARRIER CORPORATION | PO BOX 905303 | CHARLOTTE, NC 282905303 | 3/23/2009 | 002498019 | $1,983 |
| CARRIER CORPORATION | PO BOX 905303 | CHARLOTTE, NC 282905303 | 4/20/2009 | 002504846 | $7,369 |
| | | | CARRIER CORPORATION SUBTOTAL | | $20,785 |