Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re                                                   :      Chapter 11 Case No.
                                                        :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :      09-50026 (REG)
    f/k/a **General Motors Corp.,** *et al.,*      :
                                                        :
                Debtors.                         :
                                                        :
-------------------------------------------------------------x

**OBJECTION TO CLAIM OF**
**'Settlement Agreement in Soders v. General Motors Corp. and RodaNast, P.C.'**
**(Proof of Claim No. 44887)**
**SUBMITTED FOR ADR RESOLUTION PURSUANT TO GENERAL ORDER M-390**
**AND PETITION TO INTERVENE**

Pursuant to this Court's February 23, 2010 Order[1], and Bankruptcy Rules 3007 and

2018, Petitioners object to the claim entitled "Settlement Agreement in Soders v. General

Motors Corporation and RodaNast, P.C." (Proof of Claim No. 44887) submitted by Joseph

F. Roda for ADR resolution on March 22, 2010 (Ex. A, attachments omitted) and request

permission to intervene as interested entities.  In support, Petitioners aver as follows:

---

[1]     Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing
Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, p. 6.

**Exhibit 11**

1.      Claimants for "Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C." consist of class action attorneys Joseph Roda and Michelle Burkholder of RodaNast, P.C., who claim $843,929.37 in attorneys' fees and $437,416.92 in litigation costs, and class representative Donna Soders, who claims a $5,000 incentive payment.

2.      These claims arise from the class action case *Soders v. General Motors Corp.*, CI-00-04255 (C.C.P. Lanc. Cty.).  On April 28, 2009, Judge Louis J. Farina approved a settlement agreement between Ms. Soders and GM awarding, *inter alia*, overcharged purchasers of GM vehicles a $200 coupon good only toward the purchase of a new GM vehicle, plus $843,929.37 in attorneys' fees and $437,416.92 in costs to RodaNast, P.C.

3.      Five days later, the Lancaster *Sunday News* publicly criticized the settlement in an article entitled: "UNSETTLING SETTLEMENT; CLASS ACTION LAWSUIT BRINGS A COUPON, GOOD ONLY FOR A NEW GM CAR, TO CUSTOMERS WHO WERE OVERCHARGED $200-$250; LAW FIRM GETS $844,000." (Ex. B).

4.      In justification of their requested fee, Mr. Roda and Ms. Burkholder told Judge Farina: "As a cross-check on the reasonableness of Plaintiff's fee requested, the fee requested represents only about 1% of the potential settlement fund available to the class (between $140 million and $160 million, i.e., 700,000 to 800,000 claims at $200 each)." (Ex. C).

5.      As stated by Mr. Roda in his March 22, 2010 letter to this Court, only 1,879 claim forms were submitted.  This represents a total value to the Class not of $140 to $160 million, but only $375,800 (1,879 claims at $200 each).  Thus, the attorneys fees awarded to RodaNast, P.C. were not 1% of the total recovery to Class Members, but nearly 225% of

the settlement value! Such exorbitant fee awards are grossly improper. See, *e.g., In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-CV-0085 (D.N.J. 2005) (33⅓ percent attorney fee award reasonable).

6.     Based on the manifest unfairness of the Settlement Agreement, Petitioners objected. Prior to Petitioners' objection, GM and RodaNast, P.C. had agreed that GM would pay RodaNast, P.C. $1.886 million in attorneys' fees.

7.     Following Petitioners' objection, RodaNast, P.C. reduced its fee by $1 million. As a result, Petitioners and their attorney have a claim for attorney's fees and incentive awards for conferring this benefit. (Ex. D).

8.     Mr. Roda's disingenuous claim that Petitioners' counsel's settlement discussions were "unethical" is false. It is well established that objectors to class actions and their counsel are entitled to receive attorney's fees and incentive awards.[2]

9.     Startlingly, Mr. Roda admitted that he called Judge Farina and had a conversation with him for five to ten minutes – *maybe more* – about his version of the facts – **without Petitioners' counsel** – despite the fact that Petitioner's counsel had previously entered his appearance in the case. (Ex. E). Pennsylvania Rule of Professional Conduct 3.5 specifically prohibits *ex parte* communications with a judge (Mr. Roda did not claim that his associate Erin Burns – who was Judge Farina's former law clerk – was on the call, but claims that he, Judge Farina, Ms. Burkholder, Mr. Lipps and Mr. Underhill were.) (Ex. E).

10.     Petitioners appealed Judge Farina's ruling that the settlement, including the award of attorneys' fees, was "fair, reasonable, and adequate" to the Pennsylvania Superior Court. Petitioners are confident that the Pennsylvania appellate courts will never

---

[2]     See, *e.g., Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977); see also *Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J.Super.A.D.).

uphold such an unfair settlement. All appeals are presently stayed. **The Settlement Agreement does not become final until all appeals are resolved.** (See Settlement Agreement, p. 3, ¶1.13, attached to Mr. Roda's 3/22/2010 letter).

11.    Petitioners are interested entities as their claims for incentive awards and attorney's fees as Objectors and counsel for Objectors are directly tied to the class action case underlying the "Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C." claim (Claim No. 44887).

12.    Accordingly, Petitioners respectfully request permission to intervene in any ADR Procedures or any other proceedings involving Claim No. 44887.

13.    Moreover, for the reasons stated above, Petitioners object to the underlying basis for Claim No. 44887.

WHEREFORE, Petitioners respectfully request that they be permitted to intervene in any ADR Procedures or any other proceedings involving Claim No. 44887 and that their objection be sustained.

Respectfully submitted,


 s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

Date: March 24, 2010

4

# EXHIBIT A



## RodaNast, P.C.
### Attorneys at Law

801 ESTELLE DRIVE LANCASTER, PENNSYLVANIA 17601

TELEPHONE (717) 892-3000 FACSIMILE (717) 892-1200 rodanast@rodanast.com

March 22, 2010

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

Re:    **In re Motors Liquidation Company, *et al.* ("Debtors")**
    **Case No. 09-50026 (REG) – Capping Claim Letter**

Dear Motors Liquidation Company,

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") [Docket No. 5037] entered by the United States Bankruptcy Court for the Southern District of New York on February 23, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the "**Claim Amount Cap**").

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
| Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C. | 44887 | See Attached Supplement | See Attached Supplement |

Motors Liquidation Company
March 22, 2010
Page 2 of 2

I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs. If the Claim Amount Cap is accepted by the Debtors, I understand that I am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

Very truly yours,

By:
Address:      Joseph F. Roda
State:        801 Estelle Drive, Lancaster
              Pennsylvania 17601

Cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, NY 10153
       pablo.falabella@weil.com

## SUPPLEMENT TO CAPPING CLAIM LETTER

### Original Filed Amount

Claimants submitted a claim for the items that GM previously agreed to pay in the December 15, 2008 Class Action Settlement Agreement that is attached as Exhibit 1. Those items are:

1. A yet-to-be-determined number of coupons that Class Members can use toward the purchase of new GM vehicles. These coupons would benefit GM by increasing the sales of its vehicles.

2. An incentive payment for Class Representative Donna Soders in the amount of $5,000;

3. Reimbursement to counsel who negotiated the class action settlement with GM (RodaNast, P.C.) for the actual out-of-pocket costs that they paid during the litigation, totaling $437,416.92; and

4. A fee payment to RodaNast in the amount of $843,929.37, which was less than half the amount of fees to which GM agreed in the settlement: $1.886 million, *over $1 million more than the amount requested in the Claim Form. See id.* at ¶ 3.17.

RodaNast – unilaterally and in recognition of the dire financial situation that GM was facing – reduced its requested fee award twice. RodaNast first reduced the $1.886 million fee by about $200,000, and then by half of the already-reduced amount, to only $843,929.37. *See* 04/28/09 Final Fairness Hearing Transcript (Exhibit 2), at 13-14, 16-18; 04/28/09 Judgment Entry (Exhibit 3), at ¶ 8. That reduced amount is the amount listed in the claim form.

The voluntarily-reduced fee resulted in a blended hourly rate of only $134. *See* Exhibit 2, at 15. The trial court commented at the final fairness hearing that the reduced fee that was requested was beyond reasonable, to the extent that it was unreasonable to RodaNast. *See* Exhibit 2, at 38.

The trial court approved all terms of the Settlement Agreement, including the significantly-reduced fee that was requested. *See* Exhibit 3.

Notice of the Settlement Agreement was thereafter provided to class members, and 1,879 claim forms were submitted. The claim forms were not yet processed by the claim administrator, Garden City Group, when GM filed for bankruptcy protection.

1

## Objection and Appeal by R. Thomas Gibson, Esquire

Other than the pending bankruptcy, the only thing standing in the way of final implementation of the Settlement Agreement was an appeal filed by Robert Gibson, Esquire, in the Superior Court of Pennsylvania.

Mr. Gibson filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of the class. His fee agreement with them provided that if he settled their objection, he would receive 90% of the amount recovered as his fee. His clients would receive only 10%. *See* 03/13/09 Fee Agreement (Exhibit 4).

After the trial court rejected his objection, Mr. Gibson called RodaNast, P.C. and said that unless he was given $100,000 (which, pursuant to the above-referenced agreement, would result in $90,000 going to him and $10,000 going to his clients), he would appeal the Settlement Agreement that the trial court had just approved. *See* Burkholder Memorandum (Exhibit 5).

RodaNast promptly advised the trial court of what it believed was an unethical extortion attempt by Mr. Gibson, and the trial court commenced a hearing to collect evidence on the matter. The bankruptcy paperwork was filed, however, before the trial court could issue its findings of fact and conclusions of law. The matter remains stayed.

The bankruptcy filing also stopped the proceedings in the Pennsylvania Superior Court, consisting of Mr. Gibson's appeal of the settlement, his appeals of the trial court orders requiring him to testify about the money he had demanded from RodaNast and the arrangements with his purported clients, and RodaNast's motion to quash the latter appeals.

## Claim Amount Cap

Claimants do not believe that their claims are required to be resolved in the bankruptcy court.

The above-referenced Settlement Agreement (Exhibit 1) encompasses the coupons to class members (at ¶¶ 3.1 – 3.13), the $5,000 payment to Donna Soders (at ¶ 3.14), and RodaNast's fees and costs (at ¶ 3.17). It appears that the Motors Liquidation Company ("MLC") agrees that the Settlement Agreement and the items resolved within it are not part of the bankruptcy estate, because it has listed the Settlement Agreement as an "Executory Contract" in its Schedules of Assets and Liabilities. *See* Schedule Excerpt (Exhibit 6). While MLC has filed motions to reject many of its executory contracts, it has not filed a motion to reject this one.

2

In addition, the fee and cost amount requested on the Claim Form by RodaNast is currently being held in an interest-bearing escrow account by GM's counsel in the underlying class action (Carpenter, Lipps & Leland), pursuant to the terms of the Settlement Agreement. *See* Exhibit 1 at ¶ 3.17. It appears again that MLC agrees that this amount is not part of the bankruptcy estate, because it has listed the escrow amount in Section 3b of its Statement of Financial Affairs, for "Net payments made to creditors within the past 90 days." *See* Statement Excerpt (Exhibit 7).

Based on this, Claimants do not believe they must participate in the ADR Procedures.

In the interest, however, of obtaining a final resolution of their claims that were settled almost a year ago, Claimants submit this Capping Claim Letter, and propose capping their claims in the amounts specified below:

1.   A coupon for each claim that *Soders* class members submitted to Garden City Group that appears on its face to be valid. This would eliminate the need to spend more funds trying to confirm the validity of each claim, which could exceed the value of the coupons. As stated above, this would benefit class members by allowing them to purchase new GM vehicles at a discounted price, and would also benefit GM by encouraging the purchase of its vehicles and strengthening its sales.

2.   An incentive payment for Class Representative Donna Soders in the amount of $4,000. This represents a 20% reduction.

3.   Reimbursement for RodaNast's actual out-of-pocket costs in the amount of $400,000. This represents a reduction of almost 9%.

4.   A fee award to RodaNast in the amount of $800,000. This represents the third voluntary reduction that RodaNast has made to the amount that GM agreed to pay for fees, and would result in a payment of less than 43% of the amount GM had initially agreed to pay.

# EXHIBIT B

## Unsettling settlement

Class action lawsuit brings a coupon, good only for a new GM car, to customers who were overcharged $200-$250; law firm gets $844,000.

Sunday News
Published: May 03, 2009
00:07 EST
Lancaster

Article    Map  Related  Share It

Don't Link Tags

By Paul Franz, Staff Writer

Plaintiffs involved in a nine-year-old class-action lawsuit against General Motors left Lancaster County Court disappointed Tuesday.

**Related Topics**

lawsuit " (371)
General Motors " (15)

**Related Stories**

Ford takes different path from o...
Local GM dealers relieved, say c...
Warden rejects claims
Alleged prison guard attack spar...
Former inmate: Guard beat me



What else could you wish for?

Web offer.    VirtualWallet    by PNC by Living Self Service

Click for details
PNC Bank, Member FDIC

Featured Jobs

In what he described as one of the "hardest fought cases" he's seen during his 24-year career, Judge Louis J. Farina approved an agreement that orders the car giant to give $200 rebate certificates to people who bought new GM vehicles from state dealers between 1988 and early 1999.

"If it was illegal for them to take the money, then I would like my money back," Debora Spradlin, of Willow Street, told the court. "Giving me a certificate to buy one of their cars is not doing me any good. I still have the car."

The case, Soders v. General Motors, alleges that GM added 1 percent to the manufacturer's suggested retail price, or MSRP, of certain new vehicles it sold to its dealers as part of a marketing program. The lawsuit also claimed dealers passed this amount on to buyers when they purchased cars, which violated Pennsylvania's Board of Vehicles Act.

The PBVA says manufacturers cannot require vehicle dealers to financially participate in advertising campaigns.

GM denied any wrongdoing.

According to court transcripts, complaints filed with the court Tuesday centered on the form of the settlement, rather than the monetary amount.

"What I want to know and understand is why [the lawyers] can get paid all these thousands of dollars when I only want $230 in cash," Spradlin said. "Two hundred thirty dollars to these guys is nothing, but it is a lot to me. And to give me a certificate to go buy another car they deceived me on is just not right."

The $200 rebate certificates are valid only for the purchase of a new GM vehicle.

"This is an atrocious settlement," said Bob Gibson, a Media, attorney independently representing two plaintiffs, George and Karen Kairis, of Lake Winola. "In order to reap the benefit of this $200 coupon, consumers are required to make a purchase of $20,000 or $30,000 .... to get their $200 benefit for what they overpaid for a vehicle before."

Attorneys' fees were also less than expected, primarily because of bad economic news affecting GM, said Joseph F. Roda, a senior partner at RodaNast in Lancaster.

Roda's firm, which represented the plaintiffs in the lawsuit, voluntarily reduced its fees at Tuesday's hearing.

Roda had originally sought more than $2 million, but GM will now pay RodaNast about $844,000 for legal fees and $437,000 for out-of-pocket expenses.

"This is an extraordinary situation," Roda said. "The economy played a large part in this settlement. This was a much different looking case nine years ago or even one year ago."

Citing last week's announcement that GM was dropping its Pontiac brand and announcing massive layoffs, the law firm chose to significantly reduce its demands for reimbursement.

"I believe it was a reasonable decision under these circumstances," Roda said.

The ruling affects consumers who bought new GM cars from Pennsylvania dealers on or before March 31, 1999, with these stipulations:

*After Sept. 1, 1998, for Chevrolet or GMC truck vehicles.

*After July 1, 1989, for Cadillac or Oldsmobile vehicles.

*After July 1, 1990, for Pontiac vehicles.

*After Aug. 1, 1990, for Buick vehicles.

Anyone who bought a new vehicle that falls into these categories is eligible for the coupon. An estimated 700,000 to 800,000 new GM vehicles were sold by Pennsylvania dealers during that time.

In total, consumers who bought the cars were overcharged about $200 to $250.

RodaNast said its settlement with GM will cover 6,000 billed work hours, travel and deposition costs. RodaNast said about $250,000 was spent on statewide ads to inform people who might be eligible for the rebate.

The case was originally filed in June 2000 on behalf of Donna Soders, of Lancaster. Soders purchased a new Pontiac Grand Am in 1997 and paid the extra 1 percent fee. Soders was awarded $5,000 by the court as part of a prior judgement.

Let's settle this one

Last summer, Judge Farina recommended GM and RodaNast settle the case rather than take it to trial.

Both parties agreed.

"It's a compromise," Roda said. "We wanted and would have preferred a cash settlement. It was not attainable. GM would not agree to it."

Had the case gone to a jury, "we wouldn't have had [any] final judgment for years," if any, Roda said. Even if the jury ruled in favor of the plaintiffs, the case would have been subject to appeals.

Roda said that despite not getting cash reimbursement for the plaintiffs, the $200 coupon "falls squarely within the range of what the 1 percent meant to the class members."

"We believed that it was in the best interest of the [plaintiffs] to settle," he said.

More Jobs

Local Video


'Les Mis' cast, crew...
0:02:56


Big book sale begins
0:00:52


Pa. Special Olympics
0:01:49


Man builds electric car
0:01:43


McCaskey Class of '59
0:01:43


Too young to ride?
0:03:43

Lawsuit Settlement Cash
Pending Lawsuit? Get Quick Cash Now No Credit Check. Apply Today!
GetLegalFunds.com

Car Auction - from $500
Save BIG on Repos and Seized cars. Pay $1 to register for Auctions.
USGovernmentAuctions.net

Get Pre-Settlement Loan
Up to $500,000 settlement funds. 24 Hrs Cash Disbursal. Apply Now!
www.CashSettlementsNow.com

Seattle Class Action Settlement
Experienced personal injury lawyers Arrange a consultation today!
dbrlaw-wa.com

Lawsuit Settlement Loans
Find the best rates Visit Us Today
www.chicagolo-anfast.com

Top Ads

The specter of GM's bankruptcy late last year further complicated arbitration, Roda said.

If the car giant declared bankruptcy, "no one would have gotten anything," he said. "We had to be reasonable."

According to a Web site set up by Hilsoft Notifications, http://www.onepercentcase.com, buyers affected by the ruling must submit a claim form and proof of purchase by June 15 to receive the $200 rebate coupon from GM.

The rebate, valid for three years, will be good toward the purchase or lease of a new GM vehicle.

Roda didn't know how many people would apply for the coupon. Calls made to Garden City Group, a class action administrator group handling GM's payment in the case, were not returned.

## Recent Posts

TalkBack comments about this article
Comment on this article

As per 99% of class action lawsuits, the only winners were the lawyers.

Gonesouth

Right on Gonesouth! Even for a class-action, this settlement is a bad joke. These days, hardly anybody can afford to buy a brand new vehicle and a lot of us have all we can do just to keep our old cars on the road. It's no surprise that the lawyers care more about collecting big for themselves, even at the expense of getting something of value for the people they represent. What's really disturbing is Judge Farina's apparent eagerness to help Mr. Roda do just that - by putting his stamp of approval on this unfair settlement, in spite of the good points made by the people who spoke out against it in his court. Whose side is he on anyway?

And let's not forget all the government bail-out funds received by GM. We all might just as well send a check directly to Mr. Roda and his colleagues instead of paying our taxes.
Maybe there's nothing regular people can do about the misuse of our hard earned tax dollars or the greed of class-action lawyers. But at least the voters can let Judge Farina know what they think about his support for this travesty of justice when he comes up for re-election.

Kudos to Paul Franz and LancasterOnline for shedding public light on this newsworthy story      .

Livid in Lancaster

albatross

Comment on this article

Weddings By Paulette Bridal Salon One Day Sale June 20th!

Terry's Enterprise: Spring Into Summer. Buy 10 Dynasty By Omega Cabinets And Get A Sink Base Free!

Search Pennsylvania's Unclaimed Database - You Could Have Money Waiting For You.

This Weekend At Stitches Comedy Club: Jim Dailakis with Corey Alexander. Your Host Is Henry Marcellus. Admission: $12.00.

Coerulea Bar & Grill Now Open.

One Day Sale At Weddings By Paulette.

Home | News | Sports | Business | Entertainment | Lifestyle | Opinion | Spanish | Classifieds | Jobs | Homes | Autos
Terms of Service | Contact Us | Ephrata Review | Lititz Record | Lancaster Farming
Lancaster
Copyright 2004-2008

# EXHIBIT C

By: Joseph F. Roda (Atty. I.D. No. 20615)
    Michele S. Burkholder (Atty. I.D. No. 78063)
    RODANAST, P.C.
    801 Estelle Drive
    Lancaster, PA 17601
    (717) 892-3000

---

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
### CIVIL ACTION - LAW

| | | |
|---|---|---|
| DONNA SODERS, on behalf of herself and all others similarly situated, | : | NO. CI-00-04255 |
| | : | |
| Plaintiff, | : | CLASS ACTION |
| | : | |
| vs. | : | JUDGE FARINA |
| | : | |
| GENERAL MOTORS CORPORATION, | : | |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND FOR REIMBURSEMENT OF FEES AND COSTS**

there is a low level of participation, that is attributable to an individual's choice not to participate. *See Milkman II*, 2002 WL 778272, at *6.

Third, the provision cited by the objector is not the only one that could apply, even if the CAFA were used. The provision that follows, at 28 U.S.C. § 1712(b)(1), provides that if a proposed settlement provides for a recovery of certificates to class members, and a portion of the recovery of the coupon is not used to determine the fee to be paid, the fee shall be based on the amount of time class counsel reasonably spent working on the action (i.e., the lodestar method). At least two courts have relied on this provision in applying the lodestar method to award fees in cases providing certificate-like benefits. *See Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *Perez v. Asurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at *1-2 (S.D. Fla. Aug. 8, 2007).

As a cross-check on the reasonableness of Plaintiff's fee requested, the fee requested represents only about 1% of the potential settlement fund available to the class (between $140 million and $160 million, i.e., 700,000 to $800,000 claims at $200 each).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval to the proposed settlement, and award the requested payment to the Class Representative and the requested fees and costs to class counsel.

Respectfully submitted,

JOSEPH F. RODA
Atty. I.D. No. 20615

MICHELE S. BURKHOLDER
Atty. I.D. No. 78063

RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

*Attorneys for Plaintiff*

DATED:  April 23, 2009

# EXHIBIT D

00003344.

APS0534656338



| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: (Check Only One):
☒ Motors Liquidation Company (f/k/a General Motors Corporation)
☐ MLCS, LLC (f/k/a Saturn, LLC)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)
☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.)

Case No.
09-50026 (REG)
09-50027 (REG)
09-50028 (REG)
09-13558 (REG)

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. §503(b)(9) (see item #5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. §503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): THE GIBSON LAW FIRM / KAREN & GEORGE KAIRIS

Name and address where notices should be sent:

THE GIBSON LAW FIRM
ATTY FOR KAREN AND GEORGE KAIRIS
ATTN: ROBERT J. GIBSON
319 WEST FRONT STREET
MEDIA, PA 19063-2340

Telephone number: 215-729-4060
Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

U.S. BANKRUPTCY
FILED
2009 NOV 30 P
S.D.N.Y.

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

1. **Amount of Claim as of Date Case Filed:** June 1, 2009   UNKNOWN (MOLD OR REMOVED)

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. §503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** CLASS ACTION OBJECTION
*(See instruction #2 on reverse side.)*

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. Debtor may have scheduled account as: _____
   *(See instruction #3a on reverse side.)*

4. **Secured Claim** *(See instruction #4 on reverse side.)*
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate: ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____

Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.   SEE ATTACHED

If the documents are not available, please explain in an attachment.

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. §503(b)(9) (§507(a)(2)).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: 11-28-2009   Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature]

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.

Modified B10 (GCG) (12/08)

THE GIBSON LAW FIRM
BY:  Robert Gibson, Esquire
I.D.#:  76187
319 West Front Street
Media, PA 19063                              Attorney for Objectors,
215-729-7000                                 Karen and George Kairis

---

| | |
|---|---|
| Donna Soders, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>General Motors Corporation,<br>                    Defendant. | Court of Common Pleas of Lancaster County<br>Civil Action – Law<br><br>No.:  CI-00-04255 |

OBJECTION OF KAREN AND GEORGE KAIRIS TO THE PROPOSED SETTLEMENT

        Class Members:

                        Karen and George Kairis
                        P.O. Box 8
                        Whites Ferry Road
                        Lake Winola, PA 18625
                        Tel:  570-378-3810

by their undersigned counsel, object to the proposed settlement in *Soders v. GM* for the

following reasons:

1.      **The proposed coupon settlement is not fair, reasonable or adequate, and
        raises serious concerns about Class Counsel's and GM's motives for
        agreeing to this coupon settlement.**

        This proposed coupon settlement is unfair, unreasonable and inadequate for

Class Members, and raises serious concerns about Class Counsel's and GM's motives

for agreeing to this coupon settlement.  Generally, "[t]he settlement provides rebate

certificates [to Class Members] worth up to $200 towards the purchase or lease of new

GM vehicles."[1]  Coupon settlements such as this one are strongly discouraged by

---

[1]     Long-form notice, p. 1.

Pennsylvania and federal courts. Indeed, a coupon settlement with problems similar to those presented here — *involving GM and present Class Counsel's law partner/wife* — was harshly criticized and rejected by the Third Circuit in *In re: General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3rd Cir. 1995).[2] As this proposed settlement illustrates, "[c]ertificate settlements have many disadvantages and should be proposed by class counsel only in the rare case."[3]

First, this coupon settlement does not adequately account for the different abilities of Class Members to use the settlement. Class Members will receive coupons for $200, $100, or nothing, to be used *only* toward the purchase or lease of a new GM vehicle. NACA[4] expressly warns that such coupon settlements should be avoided:

> For most of the class, redemption may not be an option, because they are unwilling or unable to make a future purchase from the defendant. Thus the class members are not equally compensated — some get more, others get less. *This situation is at its most aggravated when the certificate requires purchase of a new car or other 'big ticket' item.*[5]

Since Class Members must purchase a vehicle for tens of thousands of dollars in order to receive their $200 benefit, "[p]eople of lesser financial means will be unable to benefit comparably from the settlement." *In re: GM Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,

---

[2]    While not binding, federal cases interpreting the federal class action rules, as well as the federal rules themselves, can have persuasive value in Pennsylvania courts. *McMonagle v. Allstate Ins. Co.*, 331 A.2d 467, 471-72 (1975).

[3]    *Milkman v. American Travellers Life Ins. Co.*, 2002 WL 778272 (Pa.Com.Pl.) *citing* National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 176 F.R.D. 375, 383-384 (1997).

[4]    National Association of Consumer Advocates.

[5]    NACA Class Action Guidelines – Revised 2006, http://www.naca.net/_assets/media/RevisedGuidelines.pdf, p. 19 (emphasis supplied).

55 F.3d. at 808. Indeed, since the benefit to Class Members is so small, and the required purchase from GM so large, this settlement is "little more than a sales promotion" and indeed, "a tremendous sales bonanza" for GM." *Id.* (internal citations omitted). The benefit to GM is underscored by the facts that the economy is presently in a deep recession and GM sales are near a 27-year low.[6] It would be practicable for GM – and much fairer to Class Members – if coupons could be used to purchase lesser-priced GM products, such as service, repairs or parts. Indeed, "[c]onsumers are trying to keep their current vehicles running longer, until their confidence [in the economy] improves."[7] Simply stated, the "proffered settlement [i]s, in reality, a sophisticated GM marketing program" that benefits GM and Class Counsel[8], but provides no benefit to the Class. *Id.* at 807.

The proposed settlement is also inadequate because, like in *In re: GM Pick-up Truck Fuel Tank Prod. Liab. Litig.*, "...the one time transfer restriction also precludes the development of a market-making clearing house mechanism..." *Id.* at 809. It is further inadequate because there is no guaranteed cash value for coupons, and coupons are not stackable; factors which are also discouraged by NACA.[9] Since the Class was already certified by this Court, Class Counsel cannot credibly argue that the risks of continued litigation warrant such a valueless settlement for the Class. ("The value of a

---

[6]    GM SAYS 2009 U.S. AUTO SALES MAY FALL TO 27-YEAR LOW, Bloomberg.com, 1/15/09, http://www.bloomberg.com/apps/news?pid=20601087&sid=aFxtV_hdp89M&refer=home

[7]    AUTOZONE BEATS ESTIMATES AS CAR REPAIRS TRUMP SALES, Bloomberg.com, 3/3/09, http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aZklvxqpgeRw#

[8]    In the form of generous attorneys' fees.

[9]    NACA has been relied upon by other Pennsylvania courts when evaluating the fairness of a class action settlement. *See, e.g. Milkman v. American Travellers Life Ins. Co.*, 2002 WL 778272 (Pa. Com Pl.).

class action depends largely on the certification of the class..." *General Motors Corp.*, 55 F.3d at 817).[10] Moreover, it is troubling that GM and Class Counsel have agreed upon generous attorneys fees, especially in light of the fact that both are aware, from previous litigation, of serious defects with this settlement. Simply stated, the proposed coupon settlement is not fair, reasonable, or adequate, and must be rejected.

2.    The requested attorneys' fees are excessive compared to the grossly inadequate benefit to the Class.

Despite grossly unfair settlement terms for Class Members, Class Counsel seeks, and GM has agreed to pay, up to $1.886 million in attorneys' fees and up to $500,000 in costs. This is not reasonable. The percentage-of-the-fund method is preferred when assessing fees in coupon settlements such as this.[11] Accordingly, attorneys' fees should be based on the value to class members of coupons redeemed.[12] Based on the weakness of this settlement, it appears to be no accident that Class Counsel has asked this Court to approve its fees prior to the deadline for filing all claims. Counsel's requested fees should be rejected, and, at a minimum, this Court should not determine attorneys' fees until after the claims process is completed.

Respectfully submitted,

Robert Gibson
THE GIBSON LAW FIRM

---

[10]    See also, generally, *Dauphin Deposit Bank and Trust Co. v. Hess*, 727 A.2d 1076 (1999).

[11]    In re: *Excess Value Insurance Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005).

[12]    See also, generally, 28 U.S.C.A. § 1712(a), et seq.

4

319 West Front Street
Media, PA 19063
Tel: 215-729-7000
Fax: 215-359-2166

Attorney for Objectors,
Karen and George Kairis

# EXHIBIT E

1

```
 1                    IN THE COURT OF COMMON PLEAS
                     LANCASTER COUNTY, PENNSYLVANIA
 2                             CIVIL

 3     ---------------------------------:
 4                                      :     COPY
       DONNA SODERS, on behalf of       :
 5     herself and all others           :
       similarly situated,              :
 6                                      :
 7                    Plaintiff         :
                                        :
       Vs.                              :
 8                                      :   No. CI-00-04255
                                        :
 9     General Motors Corporation,      :
                                        :
10                    Defendant         :
       ---------------------------------:
11

12                        Expedited Hearing

13

14              Before:   HONORABLE LOUIS J. FARINA,
                          PRESIDENT JUDGE

15

16              Date  :   Thursday, May 21, 2009

17              Place :   Courtroom No. 10
                          50 North Duke Street
18                        Lancaster, Pennsylvania

19

20     APPEARANCES:

21     JOSEPH F. RODA, ESQUIRE
       MICHELE BURKHOLDER, ESQUIRE
22     RodaNast, P.C.
       801 Estelle Drive
23     Lancaster, PA  17601

24         For - The Plaintiff

25     ORDERED: 5/21/09    LODGED:_____    FILED:_____
```

2

```
 1    CHRISTOPHER UNDERHILL, Esquire
      Hartman, Underhill & Brubaker, LLP
 2    221 East Chestnut Street
      Lancaster, PA  17602
 3
           For - The Defendant
 4

 5    ROBERT T. GIBSON, ESQUIRE
      319 West Front Street
 6    Media, PA  19063

 7          For - The Objectors
      I
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Q.  And I want you to also look, there's a

2  certificate of service attached to that entry of

3  appearance.  Is your name on that certificate of

4  appearance, Mr. Roda?

5    A.  Yes it is.

6    Q.  Did you receive a copy of an entry of appearance

7  in April of this year?

8    A.  I don't recall seeing it.  That doesn't mean that

9  I didn't, my office didn't receive it.  I don't see

10  every piece of paper that comes in on that case.  I see

11  those things I need to be aware of.

12    Q.  You remember me being at the final fairness

13  hearing, don't you, Mr. Roda?

14    A.  I just mentioned that in my own narrative.

15          MR. GIBSON:  I would like to have that

16  placed into -- the entry of appearance placed into

17  evidence.  Should I save my exhibits until the end, Your

18  Honor?

19          THE COURT:  Yes.

20  BY MR. GIBSON:

21    Q.  How long was your telephone conversation -- when

22  was your telephone conversation with the Court,

23  Mr. Roda?

24    A.  I said I believe it was April 30th,

25  reconstructing the days.  The hearing was on the 28th,

1   the conference call that you were involved with with

2   counsel for GM and our office was the next day, the

3   29th.

4           I believe that the discussion with the Court was

5   on the 30th because we filed our motion for expedited

6   hearing on the 1st.

7       Q.   And whose -- who was present on that call,

8   Mr. Roda?

9       A.   GM's two counsel, Messrs. Lipps and Underhill;

10  Miss Burkholder and I; Judge Farina.

11      Q.   Was anyone else from Judge Farina's chambers on

12  the call?

13      A.   I have no knowledge of that.

14      Q.   Well, you were on the call. I'm asking you, was

15  anyone else?

16      A.   I don't know that because no one other than Judge

17  Farina spoke.

18      Q.   Who initiated the call to Judge Farina?

19      A.   I believe we lined it up by a conference call,

20  call-in number for the participants.

21      Q.   Who initiated the call?

22      A.   Let me finish. I believe my office undertook to

23  initiate the call-in numbers and circulate them among

24  the participants.

25      Q.   So you arranged that through what, through a

1   service like AT&T or something like that?

2      A.   Something like that.  Our office does routinely

3   conference calls, and I just did it the same way.

4      Q.   Sure you did.  Your office initiated this call to

5   the Court?

6      A.   In the manner I just described, yes.

7      Q.   How long did the telephone call with the Court

8   last?

9      A.   Not long.  I believe it was -- it was between, to

10  the best of my memory, five and less than ten minutes.

11     Q.   Between five and ten minutes is your

12  recollection?

13     A.   Best recollection, yes.

14     Q.   What did you say to the Court during -- what did

15  you state during that conversation?

16     A.   I reported what I stood up and reported here.  I

17  reported that we were -- and I believe I was the first

18  one to talk after everyone was on the line.

19          I said that we had asked for this because it was

20  a serious matter.  I believe that was my phrasing, that

21  it had arisen immediately after the final approval

22  hearing.

23          I then related to Judge Farina the sequence of

24  events that I related here in court a moment ago.  First

25  your call, your voicemail, my return, what you said,

1   bankruptcy deadline filing?

2       A.   The bankruptcy deadline filing did not come up in

3   the conversation.  We did not make that link.  We just

4   asked for an expedited hearing to put what we thought

5   was a very serious matter of record as soon as possible.

6       Q.   Very serious.

7            Again, just so I'm sure, that call was between

8   five and ten minutes?

9       A.   My best recollection.  Could it have been a few

10  minutes beyond ten minutes?  Maybe.  But it was a very

11  brief call.

12      Q.   So it could have been beyond ten minutes?

13      A.   If it was, it would not have been by much.

14      Q.   You gave lengthy direct testimony about your two

15  telephone conversations with me.  Isn't it true, and I

16  can certainly imagine getting the phone records -- isn't

17  it true that each of our telephone conversations only

18  lasted a couple of minutes?

19      A.   I don't recall -- your voicemail was very brief.

20  Our conversation on the 28th lasted four minutes and 54

21  seconds.  I know that because we have the telephone

22  record here.

23      Q.   Time on that one, okay.

24      A.   The conversation the next day with Messrs. Lipps

25  and Underhill I believe was of equal short duration.

# Lawyers.com℠

Every Legal Issue. One Legal Source.

Search Lawyers.com [Search]    Legal Professional?
Market Your Firm ▶▶▶

My Lawyers

| Find a Lawyer | Understand Your Legal Issue | Discuss Your Legal Issue | Legal Help & Resources | Law Blog |

Lawyers.com > Find a Lawyer > RodaNast, P.C.

Print Page    Email Page    Help

## RodaNast, P.C. in

RodaNast, P.C. is a Law Firm in Lancaster, Pennsylvania

[Contact Us]
Learn More

Add to My Lawyers

**Address**    801 Estelle Drive
Lancaster, Pennsylvania 17601 (Lancaster Co.)
View Map

**Phone**    717-892-3000

**Email**    [Click Here to Contact]

**Website**    [View Web Site]
http://www.rodanast.com

More Contact Info

Average Client Review Rating ⓘ
Rating not available
Average Peer Review Rating ⓘ
5.0 out of 5

Reviews & Ratings Details

---

Profile    Contact Info    **Firm Members**    Reviews & Ratings

Joseph F. Roda (Member) admitted to bar, 1974, Pennsylvania; 1975, U.S. District Court, Eastern District of Pennsylvania and U.S. Court of Appeals, Third Circuit; U.S. Supreme Court. Education: Harvard University (A.B., magna cum laude, 1971); University of Pennsylvania (J.D., 1974). Recipient, Keedy Cup, Moot Court Competition, 1974. Law Clerk, U.S. District Court, Eastern District of Pennsylvania, 1974-1975. Lecturer and Author for Pennsylvania Bar Institute and Pennsylvania Trial Lawyers Association on Insurance Bad Faith and Trial Practice and Techniques. Member: Hearing Committee 2.04 of the Disciplinary Board of the Supreme Court of Pennsylvania, 1984-1987, 1999   ; Lawyers' Advisory Committee, U.S. District Court, Eastern District of Pennsylvania. Delegate, Third Circuit Judicial Conference, 1988. Member: Lancaster (Chairman, Federal Government Services Committee, 1984-2002), Philadelphia, Pennsylvania (Member, House of Delegates, 1985  ) and American Bar Associations; Pennsylvania Trial Lawyers Association (Member, Board of Governors, 1984-1987; Chairman, Insurance Bad Faith Section, 1998  ); The Association of Trial Lawyers of America; American College of Trial Lawyers; International Academy of Trial Lawyers. Email: Joseph F. Roda

Dianne M. Nast (Member) admitted to bar, 1976, Pennsylvania and New Jersey; U.S. Court of Appeals, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits and U.S. Supreme Court. Education: Pennsylvania State University; Rutgers University (J.D., magna cum laude). Director, Federal Judicial Center Foundation, 1991-1996; Board Chair, 1996-2002. Chair: Lawyers Advisory Committee, U.S. Court of Appeals, Third Circuit, 1983-1984; Committee on the Revision of Judicial Conduct Rules, 1983-1990; Judicial Conference Long Range Planning Committee, 1982-1990; Judicial Conference Permanent Planning Committee, 1984-1990; Member, Third Circuit Task Force on Selection of Class Counsel, 2000-2002; Chair, Third Circuit Centennial Celebration, 1991. Director: Historical Society of the Third Circuit; Chair, Centennial Celebration; Member, Historical Society of the United States Supreme Court; Lawyers Advisory Committee, U.S. District Court, Eastern District of Pennsylvania, 1985-1989; Rules Advisory Committee, 1991   . Member: House of Delegates, American Bar Association, 1992-1994; Long Range Planning Committee, Litigation Section, American Bar Association, 1992-1995; Task Force on Civil Justice, Litigation Section, American Bar Association, 1993-1995. Co-Chair, International Law Committee, Litigation Section, American Bar Association, 1993-1995; Task Force on State Justice Initiatives, 1995-1996. Co-Chair, 1992 Joint Conference with British Bar; Member of Council, 1987-1990; Committee on Private Actions, Section of Antitrust Law; House of Delegates, 1993-1994. Division Director, Substantive Divisions, Litigation Section, American Bar Association, 1990-1991. Co-Chair, Antitrust Committee, Litigation Section, American Bar Association, 1984-1987. Member, Task Force on Alternative Dispute Resolution and Mass Torts, American Arbitration Association, 1996-1997. Director, Philadelphia Public Defender Association, 1983-1988. President, Bar Association, 1983-1985; Task Force on Lawyer Image, Pennsylvania Bar Association, 1990-1991. Board of Governors, Philadelphia Bar Association, 1985-1987. Chair: Philadelphia Bench Bar Conference, 1989; Philadelphia Federal Courts Committee, 1984; Chairman, Philadelphia Bar Constitution Bicentennial Celebration Committee, 1986-1987, Philadelphia Bar Chancellor's Select Committee on Tort Reform, 1986-1987. Federal Judicial Bicentennial Committee, 1988-1989. Practical Litigator, Editorial Board, Director, Center for Research on Women's and Children's Health, 1991   . Member: Philadelphia, Lancaster (Chair, Civil Practice Committee, 1995  ; Co-Chair, Civil Litigation and Rules Committee); Pennsylvania (Member, Professionalism Committee, 1995  ), Pennsylvania and American Bar Associations; American Law Institute; American Arbitration Association (Director, 1993-1994). Fellow: American Bar Foundation; American Trial Lawyers Association. Email: Dianne M. Nast

Michael G. Nast (1967-2004).

Michele S. Burkholder (Associate) admitted to bar, 1996, Pennsylvania; New Jersey; U.S. District Court, District of New Jersey; U.S. District Court, Middle and Eastern Districts of Pennsylvania; U.S. Court of Appeals, Third Circuit. Education: Pennsylvania State University (B.A., with distinction, 1993); Dickinson School of Law (J.D., cum laude, 1996). Delta Theta Phi. Member, Woolsack Honor Society. Listed, Who's Who In American Law, Who's Who in American Women. Law Clerk, Hon. Ronald E. Vican, President Judge, Monroe County Court of Common Pleas. Member: Pennsylvania and Lancaster Bar Associations. Email: Michele S. Burkholder

Daniel N. Gallucci (Associate) admitted to bar, 1998, Pennsylvania; U.S. District Court, Eastern and Middle Districts of Pennsylvania; U.S. Court of Appeals, Third Circuit. Education: Gettysburg College; Dickinson School of Law of the Pennsylvania State University (J.D., 1998). Member: Woolsack Honor Society; Order of Barristers; National Trial Moot Court Team. Awards: 2005, Lancaster Bar Association Michael G. Nast Access to Justice Award for firm's commitment to Pro bono service. Recipient: Conrad A. and Rocco C. Falvello Memorial Award; Best Law Review Case Note, 1996-1997. Articles Editor, The Dickinson Law Review, 1997-1998. Law Clerk, Hon. Michael A. Georgelis, Lancaster County, President Judge. Author: "Aftermath of General Motors and Georgine Are Settlement Classes Doomed," Dickinson Law Review, 1998. Member: Philadelphia and Pennsylvania Trial Lawyers Association; The Association of Trial Lawyers of America; Million Dollar Advocates Forum. Email: Daniel N. Gallucci

Jennifer S. Snyder (Associate) admitted to bar, 2002, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania; U.S. Court of Appeals, Third Circuit. Education: Wellesley College (B.A., magna cum laude, 1996); Harvard Law School (J.D., cum laude, 2002). Phi Beta Kappa. Co-author, Insurance Bad Faith Case Notes. President, Harvard Environmental Law Society, 2001-2002. Member, Harvard Environmental Law Review, 1999-2002. Member, Pennsylvania Association for Justice. Email: Jennifer S. Snyder

Erin C. Burns (Associate) admitted to bar, 2002, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania; U.S. Court of Appeals, District of Columbia Circuit; U.S. Court of Appeals, Third Circuit. Education: University of Delaware (B.A., Psychology, 1999); Villanova University School of Law (J.D., 2002). Psi Chi. Member, Golden Key National Honor Society. Staff Writer on The Villanova Environmental Law Journal 2000-2001; Symposium Editor, The Villanova Environmental Law Journal, 2001-2002. Law Clerk to the Honorable, Louis J. Farina, 2002-2004, Lancaster County Court of Common Pleas. Listed in: Who's Who of American Women, 2006; Strathmore's Who's Who, 2007; National Association of Professional Women, 2008. Member: Lancaster Bar Association (Vice Chairperson of Young Lawyers Section, 2004; Chairperson, Young Lawyers Section, 2005; Member of the Board of Directors, 2005); Pennsylvania Bar Association. Email: Erin C. Burns

Joanne E. Matusko (Associate) admitted to bar, 2003, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania. Education: Arcadia University


3/23/2010

(B.S., Business, 1989); Lebanon Valley College (M.B.A., 1998); Widener University (J.D., 2002). Member, Moot Court. Recipient, Certificate of Achievement, Insurance Law, 2001. Member, American Society of Clinical Pathologists. Awards: 2006, Lancaster Bar Association Michael G. Nast Access to Justice Award for firm's commitment to Pro bono service. Presentations: 2007, 2008, 2009, Annual Meeting - Pennsylvania Society for Clinical Laboratory Scientists, "Legal Aspects of Phlebotomy". Member: Lancaster and Pennsylvania Bar Associations. *Email: Joanne F. Maluskg*

**Jeffrey S. Eaby** (Associate) admitted to bar, 2005, Pennsylvania; New York and U.S. District Court, Eastern District of Pennsylvania; District of Columbia. Education: York College of Pennsylvania (B.A., cum laude, 1999); The American University Washington College of Law (J.D., 2005). Marshall-Brennan Constitutional Law Fellow. Assistant Editor, Washington College of Law Business Law Brief. Member: Lancaster and Pennsylvania Bar Associations; The District of Columbia Bar; New York County Lawyer's Association. *Email: Jeffrey S. Eaby*

Find a Lawyer    Understand Your Legal Issue    Discuss Your Legal Issue    Legal Help & Resources    Law Blog

**Martindale-Hubbell® Lawyers.com℠ is the most complete, trusted source for identifying qualified legal counsel.**
Disclaimer: The information provided on Lawyers.com is not legal advice. Lawyers.com is not a lawyer referral service, and no attorney-client or confidential relationship is or should be formed by use of the site. The attorney listings on Lawyers.com are paid attorney advertisements and do not in any way constitute a referral or endorsement by Lawyers.com or any approved or authorized lawyer referral service. Your access to and use of this site is subject to additional Terms and Conditions.

Martindale.com® | Canada | attorneys.com℠ | lawyerLocator.co.uk | www.findalawyer.cn (China) | www.law24.co.za (South Africa) | www.martindale.jp (Japan) anwalt24.de (German) | martindale.co.il (Israel) | Lexis Nexis® | lexisONE® Free Case Law

Help | Site Map | About Us | Press Room | Legal Marketing | Contact Us | Home | Index Map | Legal News | Lawyers.com Blog | Legal Dictionary

Terms & Conditions    Privacy    Copyright© 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.*, | : |  |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

------------------------------------------------------------x

## CERTIFICATE OF SERVICE

ROBERT T. GIBSON, ESQUIRE, hereby certifies that a true and correct copy of the foregoing document was served upon the following persons in the following manner:

### VIA ELECTRONIC AND FIRST CLASS MAIL:

Joseph Roda, Esquire
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Jeffrey Lipps, Esquire
Carpenter, Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

Christopher Underhill, Esquire
Hartman, Underhill & Brubaker LLP
221 East Chestnut Street

Lancaster, PA 17602

Pablo Falabella, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team

## VIA FIRST CLASS MAIL

United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004


Respectfully submitted,


 s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George
and Karen Kairis
(Objectors in *Soders v. General Motors Corp.*
class action)

Date:  March 24, 2010