

THE
GIBSON
LAW FIRM

215-729-7000

Robert T. Gibson*†
*Member PA Bar
†LL.M. in Trial Advocacy

March 25, 2010

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

Re:   **In re Motors Liquidation Company,** *et al.* **("Debtors")**
      **Case No.: 09-50026 (REG) - Capping Claim Letter**

Dear Motors Liquidation Company:

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the **"ADR Procedures"**) [Docket No. 5037] entered by the United States Bankruptcy Court for the Southern District of New York on February 23, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the **"Claim Amount Cap"**).

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
| The Gibson Law Firm and George and Karen Kairis | 00003344 | See attached supplement | See attached supplement |

I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs. If the Claim Amount Cap is accepted by Debtors, I understand that I

Exhibit 13

am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

Very truly yours,

*Robert T. Gibson*

By:        Robert T. Gibson
Address:   319 West Front Street, Media
State:     PA, 19063

Enclosures
cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, NY 10153
       pablo.falabella@weil.com

## SUPPLEMENT TO CAPPING CLAIM LETTER

**Original Filed Amount:**

Claimants submitted a claim for attorney's fees and incentive awards in an amount up to $100,000.00 in connection with an objection and subsequent appeal filed in the Pennsylvania class action case of *Soders v. General Motors Corp.*, CI-00-04255 (C.C.P. Lancaster Cty.). In the *Soders* case – which directly relates to this claim – the plaintiff and her attorneys have made a competing claim (Proof of Claim No. 44887) for $843,929.37 in attorneys' fees, $437,416.93 in litigation costs, and a $5,000 incentive award for Ms. Soders. **AS INTERESTED PARTIES, CLAIMANTS HERE HAVE FILED AN OBJECTION AND PETITION TO INTERVENE IN PROOF OF CLAIM NO. 44887.** (EX. 1) [DOCKET NO. 5369].

**Objection and appeal of the *Soders v. GM* class action settlement:**

On December 15, 2008 – less than six months before GM filed for bankruptcy – Soders, her attorneys, and GM entered into a proposed agreement to settle the class action with the following terms:  all class members who were overcharged in the past by GM would receive a $200-$250 coupon good only toward the purchase or lease of a new GM vehicle, Soders' attorneys would receive $1.886 million in attorneys' fees and $437,416.92 in costs, and Soders would receive $5,000.  As a class action, the terms of this proposed settlement agreement required court approval.

Claimants, Karen and George Kairis, through their attorney, Robert Gibson, objected to the terms of the proposed settlement, including the proposed payment of attorneys' fees, as unreasonable.  **Following Claimants' objection, Soders' counsel reduced their fee by $1 million.**  As a result, Claimants have made a claim for attorneys' fees and incentive awards for conferring this benefit.  It is well established that objectors to class actions and their counsel are entitled to receive attorneys' fees and incentive awards.  See, *e.g., Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977); see also *Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J.Super.A.D.).

Judge Louis J. Farina of the Lancaster County Court of Common Pleas approved the settlement and awarded Soders' counsel the reduced fee of $843,929.47.  Five days later, the Lancaster *Sunday News* publicly criticized the settlement in an article entitled:  "UNSETTLING SETTLEMENT; CLASS ACTION LAWSUIT BRINGS A COUPON, GOOD ONLY FOR A NEW GM CAR, TO CUSTOMERS WHO WERE OVERCHARGED $200-$250; LAW FIRM GETS $844,000." (Ex. B to Ex. 1, attached).  Claimants immediately appealed Judge Farina's

ruling to the Pennsylvania Superior Court. All appeals have been stopped, however, due to the bankruptcy filing.

Claimants are confident that the Pennsylvania appellate courts will not uphold such an unfair class action settlement. Indeed, in justification of their requested fee, Soders' attorneys told Judge Farina: "As a cross-check on the reasonableness of Plaintiff's fee requested, the fee requested represents only about 1% of the potential settlement fund available to the class (between $140 million and $160 million, i.e., 700,000 to 800,000 claims at $200 each)." (Ex. C to Ex. 1, attached). In reality, only 1,879 claim forms were submitted, which represents a value to the Class of only $325,800 – not $140 to $160 million as initially suggested to Judge Farina by Soders' lawyer, Joseph Roda. (Ex. A to Ex. 1, attached). Thus, instead of representing a fee of "only about 1%" of the recovery for class members, Mr. Roda's requested fee represents nearly 225% of the total settlement value. Such exorbitant fee awards are grossly improper. See, e.g., In re Remeron Direct Purchaser Antitrust Litig., No. 03-CV-0085 (D.N.J. 2005) (33⅓ percent attorney fee award reasonable).

Startlingly, Mr. Roda admitted, under oath, that he called Judge Farina and had a conversation with him about the Soders case for five to ten minutes, maybe more, without including counsel for objectors (Claimants' counsel here), even though counsel for objectors had previously formally entered his appearance as counsel of record. (Ex. E to Ex. 1, attached). Pennsylvania Rule of Professional Conduct 3.5 expressly prohibits ex parte communications with a judge (Mr. Roda did not claim that his associate, Erin Burns – who was Judge Farina's former law clerk – was on the call, but admits that he, his associate Michelle Burkholder, and GM's counsel Jeffrey Lipps and Christopher Underhill were on the private call with Judge Farina). (Ex. E to Ex. 1, attached).

The Settlement Agreement does not become final until any appeals are resolved. (See Settlement Agreement, p. 3, ¶1.13, Ex. 2). As stated above, although the bankruptcy proceedings have stopped the pending appeals, Claimants are confident that the terms of the Soders settlement, including the 'unsettling' fee award, will not be upheld as "fair, reasonable, and adequate" by an appellate court. Since Counsel for Soders is aware of the issues on appeal, it is not surprising that he is attempting to capitalize on the ADR proceedings here.


## Claim Amount Cap:

In the interest of obtaining a final resolution to this matter, Claimants submit this Claim Capping Letter and propose capping their claims by 50%, i.e., up to $50,000.

# EXHIBIT 1

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                     :
**In re**                                            :    **Chapter 11 Case No.**
                                                     :
**MOTORS LIQUIDATION COMPANY,** *et al.,* :    **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.,*         :
                                                     :
            **Debtors.**                             :
                                                     :
-----------------------------------------------------------x

<u>**OBJECTION TO CLAIM OF**</u>
<u>**'Settlement Agreement in Soders v. General Motors Corp. and RodaNast, P.C.'**</u>
<u>**(Proof of Claim No. 44887)**</u>
<u>**SUBMITTED FOR ADR RESOLUTION PURSUANT TO GENERAL ORDER M-390**</u>
<u>**AND PETITION TO INTERVENE**</u>

Pursuant to this Court's February 23, 2010 Order[1], and Bankruptcy Rules 3007 and 2018,

Petitioners object to the claim entitled "Settlement Agreement in Soders v. General Motors

Corporation and RodaNast, P.C." (Proof of Claim No. 44887) submitted by Joseph F. Roda for

ADR resolution on March 22, 2010 (Ex. A, attachments omitted) and request permission to

intervene as interested entities.  In support, Petitioners aver as follows:

---

[1]    Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing
Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, p. 6.

1.      Claimants for "Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C." consist of class action attorneys Joseph Roda and Michelle Burkholder of RodaNast, P.C., who claim $843,929.37 in attorneys' fees and $437,416.92 in litigation costs, and class representative Donna Soders, who claims a $5,000 incentive payment.

2.      These claims arise from the class action case *Soders v. General Motors Corp.*, CI-00-04255 (C.C.P. Lanc. Cty.). On April 28, 2009, Judge Louis J. Farina approved a settlement agreement between Ms. Soders and GM awarding, *inter alia*, overcharged purchasers of GM vehicles a $200 coupon good only toward the purchase of a new GM vehicle, plus $843,929.37 in attorneys' fees and $437,416.92 in costs to RodaNast, P.C.

3.      Five days later, the Lancaster *Sunday News* publicly criticized the settlement in an article entitled: "UNSETTLING SETTLEMENT; CLASS ACTION LAWSUIT BRINGS A COUPON, GOOD ONLY FOR A NEW GM CAR, TO CUSTOMERS WHO WERE OVERCHARGED $200-$250; LAW FIRM GETS $844,000." (Ex. B).

4.      In justification of their requested fee, Mr. Roda and Ms. Burkholder told Judge Farina: "As a cross-check on the reasonableness of Plaintiff's fee requested, the fee requested represents only about 1% of the potential settlement fund available to the class (between $140 million and $160 million, i.e., 700,000 to 800,000 claims at $200 each)." (Ex. C).

5.      As stated by Mr. Roda in his March 22, 2010 letter to this Court, only 1,879 claim forms were submitted. This represents a total value to the Class not of $140 to $160 million, but of only $375,800 (1,879 claims at $200 each). Thus, the attorneys fees awarded to RodaNast, P.C. were not 1% of the total recovery to Class Members, but nearly **225%** of the settlement value! Such exorbitant fee awards are grossly improper. See, *e.g., In re Remeron Direct*

2

*Purchaser Antitrust Litig.*, No. 03-CV-0085 (D.N.J. 2005) (33⅓ percent attorney fee award reasonable).

6.    Based on the manifest unfairness of the Settlement Agreement, Petitioners objected. Prior to Petitioners' objection, GM and RodaNast, P.C. had agreed that GM would pay RodaNast, P.C. $1.886 million in attorneys' fees.

7.    Following Petitioners' objection, RodaNast, P.C. reduced its fee by $1 million. As a result, Petitioners and their attorney have a claim for attorney's fees and incentive awards for conferring this benefit. (Ex. D).

8.    Mr. Roda's disingenuous claim that Petitioners' counsel's settlement discussions were "unethical" is false.  <u>It is well established that objectors to class actions and their counsel are entitled to receive attorney's fees and incentive awards.</u>[2]

9.    Startlingly, Mr. Roda admitted that he called Judge Farina and had a conversation with him for five to ten minutes – *maybe more* – about his version of the facts – **without Petitioners' counsel** – despite the fact that Petitioner's counsel had previously <u>entered his appearance</u> in the case.  (Ex. E).  Pennsylvania Rule of Professional Conduct 3.5 specifically prohibits *ex parte* communications with a judge (Mr. Roda did not claim that his associate Erin Burns – who was Judge Farina's former law clerk – was on the call, but claims that he, Judge Farina, Ms. Burkholder, Mr. Lipps and Mr. Underhill were.) (Ex. E).

10.    Petitioners appealed Judge Farina's ruling that the settlement, including the award of attorneys' fees, was "fair, reasonable, and adequate" to the Pennsylvania Superior Court. <u>Petitioners are confident that the Pennsylvania appellate courts will never uphold such an unfair settlement.</u>  All appeals are presently stayed.  **The Settlement Agreement does not become**

---

[2]    See, *e.g., Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977); see also *Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J.Super.A.D.).

**final until all appeals are resolved.** (See Settlement Agreement, p. 3, ¶1.13, attached to Mr.

Roda's 3/22/2010 letter).

11.    Petitioners are interested entities as their claims for incentive awards and

attorney's fees as Objectors and counsel for Objectors are directly tied to the class action case

underlying the "Settlement Agreement in Soders v. General Motors Corporation and RodaNast,

P.C." claim (Claim No. 44887).

12.    Accordingly, Petitioners respectfully request permission to intervene in any ADR

Procedures or any other proceedings involving Claim No. 44887.

13.    Moreover, for the reasons stated above, Petitioners object to the underlying basis

for Claim No. 44887.

WHEREFORE, Petitioners respectfully request that they be permitted to intervene in any

ADR Procedures or any other proceedings involving Claim No. 44887 and that their objection be

sustained.

Respectfully submitted,

 s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George
and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class
action)

Date:  March 24, 2010

4

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

|   |   |   |
|---|---|---|
| **In re** | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.,* | : | |
| | : | |
| **Debtors.** | : | |
| | : | |

-------------------------------------------------------------x

## CERTIFICATE OF SERVICE

ROBERT T. GIBSON, ESQUIRE, hereby certifies that a true and correct copy of the foregoing document was served upon the following persons in the following manner:

### VIA ELECTRONIC AND FIRST CLASS MAIL:

Joseph Roda, Esquire
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Jeffrey Lipps, Esquire
Carpenter, Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

Christopher Underhill, Esquire
Hartman, Underhill & Brubaker LLP
221 East Chestnut Street

Lancaster, PA 17602

Pablo Falabella, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team

**VIA FIRST CLASS MAIL**

United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004


Respectfully submitted,


 s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George
and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class
action)

Date: March 24, 2010

2

# EXHIBIT A



801 ESTELLE DRIVE LANCASTER, PENNSYLVANIA 17601

TELEPHONE (717) 892-3000 FACSIMILE (717) 892-1200 rodanast@rodanast.com

March 22, 2010

## BY E-MAIL AND FIRST CLASS MAIL

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

### Re:  In re Motors Liquidation Company, *et al.* ("Debtors")
### Case No. 09-50026 (REG) – Capping Claim Letter

Dear Motors Liquidation Company,

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") [Docket No. 5037] entered by the United States Bankruptcy Court for the Southern District of New York on February 23, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the "**Claim Amount Cap**").

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
| Settlement Agreement in Soders v. General Motors Corporation and RodaNast, P.C. | 44887 | See Attached Supplement | See Attached Supplement |

Motors Liquidation Company
March 22, 2010
Page 2 of 2

I understand and agree that the Claim Amount Cap includes all damages
and relief to which I believe I am entitled, including all interest, taxes, attorney's
fees, other fees, and costs. If the Claim Amount Cap is accepted by the Debtors, I
understand that I am required to submit my claim to the ADR Procedures and
acknowledge that my claim may be a "Designated Claim" as such term is used
under the ADR Procedures.

Very truly yours,

By:         Joseph F. Roda
Address:    801 Estelle Drive, Lancaster
State:      Pennsylvania 17601

Cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, NY 10153
       pablo.falabella@weil.com

## SUPPLEMENT TO CAPPING CLAIM LETTER

### Original Filed Amount

Claimants submitted a claim for the items that GM previously agreed to pay in the
December 15, 2008 Class Action Settlement Agreement that is attached as Exhibit
1. Those items are:

1.    A yet-to-be-determined number of coupons that Class Members can use
      toward the purchase of new GM vehicles. These coupons would benefit
      GM by increasing the sales of its vehicles.

2.    An incentive payment for Class Representative Donna Soders in the
      amount of $5,000;

3.    Reimbursement to counsel who negotiated the class action settlement
      with GM (RodaNast, P.C.) for the actual out-of-pocket costs that they
      paid during the litigation, totaling $437,416.92; and

4.    A fee payment to RodaNast in the amount of $843,929.37, which was
      less than half the amount of fees to which GM agreed in the
      settlement: $1.886 million, *over $1 million more than the amount
      requested in the Claim Form. See id.* at ¶ 3.17.

RodaNast – unilaterally and in recognition of the dire financial situation that GM
was facing – reduced its requested fee award twice. RodaNast first reduced the
$1.886 million fee by about $200,000, and then by half of the already-reduced
amount, to only $843,929.37. *See* 04/28/09 Final Fairness Hearing Transcript
(Exhibit 2), at 13-14, 16-18; 04/28/09 Judgment Entry (Exhibit 3), at ¶ 8. That
reduced amount is the amount listed in the claim form.

The voluntarily-reduced fee resulted in a blended hourly rate of only $134. *See*
Exhibit 2, at 15. The trial court commented at the final fairness hearing that the
reduced fee that was requested was beyond reasonable, to the extent that it was
unreasonable to RodaNast. *See* Exhibit 2, at 38.

The trial court approved all terms of the Settlement Agreement, including the
significantly-reduced fee that was requested. *See* Exhibit 3.

Notice of the Settlement Agreement was thereafter provided to class members, and
1,879 claim forms were submitted. The claim forms were not yet processed by the
claim administrator, Garden City Group, when GM filed for bankruptcy protection.

1

## Objection and Appeal by R. Thomas Gibson, Esquire

Other than the pending bankruptcy, the only thing standing in the way of final implementation of the Settlement Agreement was an appeal filed by Robert Gibson, Esquire, in the Superior Court of Pennsylvania.

Mr. Gibson filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of the class. His fee agreement with them provided that if he settled their objection, he would receive 90% of the amount recovered as his fee. His clients would receive only 10%. *See* 03/13/09 Fee Agreement (Exhibit 4).

After the trial court rejected his objection, Mr. Gibson called RodaNast, P.C. and said that unless he was given $100,000 (which, pursuant to the above-referenced agreement, would result in $90,000 going to him and $10,000 going to his clients), he would appeal the Settlement Agreement that the trial court had just approved. *See* Burkholder Memorandum (Exhibit 5).

RodaNast promptly advised the trial court of what it believed was an unethical extortion attempt by Mr. Gibson, and the trial court commenced a hearing to collect evidence on the matter. The bankruptcy paperwork was filed, however, before the trial court could issue its findings of fact and conclusions of law. The matter remains stayed.

The bankruptcy filing also stopped the proceedings in the Pennsylvania Superior Court, consisting of Mr. Gibson's appeal of the settlement, his appeals of the trial court orders requiring him to testify about the money he had demanded from RodaNast and the arrangements with his purported clients, and RodaNast's motion to quash the latter appeals.

## Claim Amount Cap

Claimants do not believe that their claims are required to be resolved in the bankruptcy court.

The above-referenced Settlement Agreement (Exhibit 1) encompasses the coupons to class members (at ¶¶ 3.1 – 3.13), the $5,000 payment to Donna Soders (at ¶ 3.14), and RodaNast's fees and costs (at ¶ 3.17). It appears that the Motors Liquidation Company ("MLC") agrees that the Settlement Agreement and the items resolved within it are not part of the bankruptcy estate, because it has listed the Settlement Agreement as an "Executory Contract" in its Schedules of Assets and Liabilities. *See* Schedule Excerpt (Exhibit 6). While MLC has filed motions to reject many of its executory contracts, it has not filed a motion to reject this one.

In addition, the fee and cost amount requested on the Claim Form by RodaNast is
currently being held in an interest-bearing escrow account by GM's counsel in the
underlying class action (Carpenter, Lipps & Leland), pursuant to the terms of the
Settlement Agreement. *See* Exhibit 1 at ¶ 3.17. It appears again that MLC agrees
that this amount is not part of the bankruptcy estate, because it has listed the
escrow amount in Section 3b of its Statement of Financial Affairs, for "Net
payments made to creditors within the past 90 days." *See* Statement Excerpt
(Exhibit 7).

Based on this, Claimants do not believe they must participate in the ADR
Procedures.

In the interest, however, of obtaining a final resolution of their claims that were
settled almost a year ago, Claimants submit this Capping Claim Letter, and
propose capping their claims in the amounts specified below:

1.  A coupon for each claim that *Soders* class members submitted to
    Garden City Group that appears on its face to be valid. This would
    eliminate the need to spend more funds trying to confirm the validity
    of each claim, which could exceed the value of the coupons. As stated
    above, this would benefit class members by allowing them to purchase
    new GM vehicles at a discounted price, and would also benefit GM by
    encouraging the purchase of its vehicles and strengthening its sales.

2.  An incentive payment for Class Representative Donna Soders in the
    amount of $4,000. This represents a 20% reduction.

3.  Reimbursement for RodaNast's actual out-of-pocket costs in the
    amount of $400,000. This represents a reduction of almost 9%.

4.  A fee award to RodaNast in the amount of $800,000. This represents
    the third voluntary reduction that RodaNast has made to the amount
    that GM agreed to pay for fees, and would result in a payment of less
    than 43% of the amount GM had initially agreed to pay.

3

# EXHIBIT B

## Unsettling settlement
Class action lawsuit brings a coupon, good only for a new GM car, to customers who were overcharged $200-$250; law firm gets $844,900.

Sunday News
Published May 23, 2005
Staff Writer
Lancaster

Article    Map  Related  Share it

Cont Link Time

By Paul Franz  Staff Writer

Plaintiffs involved in a nine-year-old class action lawsuit against General Motors left Lancaster County Court disappointed Tuesday.

Related Topics
lawsuit" (371)
General Motors " (15)

Related Stories
Ford takes different path from c..
Local GM dealers relieved, say c..
Werdan rejects claims
Alleged prison guard attack spar...
Former inmate: Guard beat me

In what he describes as one of the "hardest fought cases" he's seen during his 24-year career, Judge Louis J. Farina approved an agreement that orders the car giant to give $200 rebate certificates to people who bought new GM vehicles from state dealers between 1996 and early 1998.

"If it was illegal for them to take the money, then I would like my money back," Dobora Spradin, of Willow Street, told the court. "Giving me a certificate to buy one of their cars is not doing me any good, still have the car."

The case, Suders v. General Motors, alleges that GM added 1 percent to the manufacturers suggested retail price, or MSRP, of certain new vehicles it sold to its dealers as part of a marketing program. The lawsuit also claimed dealers passed this amount on to buyers when they purchased cars, which violated Pennsylvania's Board of Vehicles Act.

The PBVA says manufacturers cannot require vehicle dealers to financially participate in advertising campaigns.

GM denies any wrongdoing.

According to court transcripts, complaints filed with the court Tuesday centered on the form of the settlement, rather than the monetary amount.

"What I want to know and understand is why [the lawyers] can get paid all these thousands of dollars when I only want $230 in cash," Spradin said, "Two hundred thirty dollars to these guys is nothing, but it is a lot to me. And to give me a certificate to buy another car they deceived me on is just not right."

The $200 rebate certificates are valid only for the purchase of a new GM vehicle.

"This is an atrocious settlement," said Rob Gibson, a Media, attorney independently representing two plaintiffs, George and Karen Kairis, of Lake Winola. "In order to reap the benefit of this $200 coupon, consumers are required to make a purchase of $20,000 or $30,000 .... to get their $200 benefit for what they overpaid for a vehicle before."

Attorneys' fees were also less than expected, primarily because of bad economic news affecting GM, said Joseph F. Roda, a senior partner at RodaNast in Lancaster.

Roda's firm, which represented the plaintiffs in the lawsuit, voluntarily reduced its fees at Tuesday's hearing.

Roda had originally sought more than $2 million, but GM will now pay RodaNast about $844,000 for legal fees and $437,000 for out-of-pocket expenses.

"This is an extraordinary situation," Roda said. "The economy played a large part in this settlement. This was a much different looking case nine years ago or even one year ago."

Citing last week's announcement that GM was dropping its Pontiac brand and announcing massive layoffs, the law firm chose to significantly reduce its demands for reimbursement.

"I believe it was a reasonable decision under these circumstances," Roda said.

The ruling affects consumers who bought new GM cars from Pennsylvania dealers on or before March 31, 1998, with these stipulations:

•After Sept. 1, 1996, for Chevrolet or GMC truck vehicles.

•After July 1, 1996, for Cadillac or Oldsmobile vehicles.

•After July 1, 1997, for Pontiac vehicles.

•After Aug. 1, 1996, for Buick vehicles.

Anyone who bought a new vehicle that falls into these categories is eligible for the coupon. An estimated 700,000 to 800,000 new GM vehicles were sold by Pennsylvania dealers during that time.

In total, consumers who bought the cars were overcharged about $200 to $250.

RodaNast said its settlement with GM will cover 9,000 billed work hours, travel and deposition costs. RodaNast said about $250,000 was spent on statewide ads to inform people who might be eligible for the rebate.

The case was originally filed in June 2000 on behalf of Donna Suders, of Lancaster. Suders purchased a new Pontiac Grand Am in 1997 and said the extra 1 percent fee. Suders was awarded $5,000 by the court as part of a prior agreement.

**Let's settle this one**
Last summer, Judge Farina recommended GM and RodaNast settle the case rather than take it to trial.

Both parties agreed.

"It's a compromise," Roda said. "We wanted and would have preferred a cash settlement. It was not attainable. GM would not agree to it."

Had the case gone to a jury, "we wouldn't have had [any] final judgment for years," Farina, Roda said. Even if the jury ruled in favor of the plaintiffs, the case would have been subject to appeals.

Roda said that despite not getting cash reimbursement for the plaintiffs, the $200 coupon falls squarely within the range of what the 1 percent meant to the class members.

"We believed that it was in the best interest of the [plaintiffs] to settle," he said.



What else could you wish for?

Virtualworld

Featured Jobs

More Jobs


Town Video


"Low fuel cost, crew...


Big book sale begins


Pa. Special Olympics


Man buries electric car

McCloskey Class of '69


Too young to ride?

Top Ads

**Lawsuit Settlement Cash**
Pending Lawsuit? Get Quick Cash Now No Credit Check. Apply Today!

**Car Auction - from $500**
Save BIG on Repos and Seized cars. Pay $1 to register for Auctions

**Get Pre-Settlement Loan**
Up to $500,000 settlement funds. 24 Hrs Cash Disbursal. Apply Now!

**Seattle Class Action Settlement**
Experienced personal injury lawyers. Arrange a consultation today!

**Lawsuit Settlement Loans**
Find the best rates Visit Us Today

The specter of GM's bankruptcy late last year further complicated arbitration, Roca said.

If the car giant declared bankruptcy, "no one would have gotten anything," he said. "We had to be reasonable."

According to a Web site set up by Illisch Notifications, http://www.onepaperchase.com, buyers affected by the ruling must submit a claim form and proof of purchase by June 15 to receive the $200 resale coupon from GM.

The resale, valid for three years, will be good toward the purchase or lease of a new GM vehicle.

Roca didn't know how many people would apply for the coupon. Calls made to Garden City Group, a class action administrator group handling GM's payment in the case, were not returned.

**Recent Posts**

TalkBack comments about this article
**Comment on this article**

As per 99% of class action lawsuits, the only winners were the lawyers.

Bananasuites

Right on bananasuites. Each "lot" in a class action, this settlement is a bad one. If none days, bottom-feeding law offices will pay a bounty fee, and a share of the millions we can do just to keep up a little corner of the lives. The recipient has always to save more about collecting big bucks for his/her self, even at the expense of selling something of value to us. The people they represent. What's wrong is something a judge found a supported judge. We to help M. Roca to put him in by putting his stamp of approval on this unfair settlement, in spite of the good points made by the people who spoke out against it in the court. Where else is there in this country.

And let's not forget all the government sell-out items received by GM. We all might just as well send a check directly to Mr. Roca and his colleagues instead of paying our taxes. Maybe some of us really people can be about the misuse of our hard earned tax dollars on the above-mentioned class action lawyers. But I guess the voters don't all judge Roca knows what they think about those, more or less, good-for-nothing money or judges when we come up for re-election.

Kudos to Paul Franz and Lancaster Online for spreading a little light on this newsworthy story.

Curtin Lancaster

albatross

**Comment on this article**

Home | News | Sports | Business | Entertainment | Lifestyle | Opinion - Spanish - Classifieds | Jobs | Homes - Autos
Terms of Service | Contact Us | Ephrata Review | Lititz Record | Lancaster Farming

**Lancaster**
Copyright 2004-2009

# EXHIBIT C



By: Joseph F. Roda (Atty. I.D. No. 20615)
    Michele S. Burkholder (Atty. I.D. No. 78063)
    RODANAST, P.C.
    801 Estelle Drive
    Lancaster, PA 17601
    (717) 892-3000

---

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| DONNA SODERS, on behalf of herself and all others similarly situated, | : | NO. CI-00-04255 |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | JUDGE FARINA |
| vs. | : | |
| | : | |
| GENERAL MOTORS CORPORATION, | : | |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND FOR REIMBURSEMENT OF FEES AND COSTS**

there is a low level of participation, that is attributable to an individual's choice not
to participate. *See Milkman II,* 2002 WL 778272, at *6.

Third, the provision cited by the objector is not the only one that could apply,
even if the CAFA were used. The provision that follows, at 28 U.S.C. § 1712(b)(1),
provides that if a proposed settlement provides for a recovery of certificates to class
members, and a portion of the recovery of the coupon is not used to determine the
fee to be paid, the fee shall be based on the amount of time class counsel reasonably
spent working on the action (i.e., the lodestar method). At least two courts have
relied on this provision in applying the lodestar method to award fees in cases
providing certificate-like benefits. *See Fleury v. Richemont N. Am., Inc.,* No. C-05-
4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *Perez v. Asurion Corp.,*
No. 06-20734-CIV, 2007 WL 2591180, at *1-2 (S.D. Fla. Aug. 8, 2007).

As a cross-check on the reasonableness of Plaintiff's fee requested, the fee
requested represents only about 1% of the potential settlement fund available to the
class (between $140 million and $160 million, i.e., 700,000 to $800,000 claims at
$200 each).

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court
grant final approval to the proposed settlement, and award the requested payment
to the Class Representative and the requested fees and costs to class counsel.

CI-00-04255

Respectfully submitted,

JOSEPH F. RODA
Atty. I.D. No. 20615

MICHELE S. BURKHOLDER
Atty. I.D. No. 78063

RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

*Attorneys for Plaintiff*

DATED:  April 23, 2009

39

# EXHIBIT D

00003344
APS0534656338



| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One):**

| | Case No. |
|---|---|
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

**Your Claim is Scheduled As Follows:**

**Name of Creditor** (the person or other entity to whom the debtor owes money or property): THE GIBSON LAW FIRM *KAREN & GEORGE KAIRIS*

**Name and address where notices should be sent:**

THE GIBSON LAW FIRM
ATTY FOR KAREN AND GEORGE KAIRIS
ATTN: ROBERT T. GIBSON
319 WEST FRONT STREET
MEDIA, PA 19063-2340

Telephone number: *215-729-7000*
Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
*(If known)*

Filed on:_____

**Name and address where payment should be sent (if different from above):**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

*FILED U.S. BANKRUPTCY 2009 NOV 30 P S.D.N.Y.*

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1. Amount of Claim as of Date Case Filed, June 1, 2009:** *UNKNOWN ($100,000 DEMANDED)*

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** *CLASS ACTION OBJECTION*
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Equipment ☐ Other
**Describe:**

**Value of Property:** $_____ **Annual Interest Rate** ___%

**Amount of arrearage and other charges as of time case filed included in secured claim, if any:** $_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. *SEE ATTACHED*

If the documents are not available, please explain in an attachment.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 11-30-2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Robert Gibson*

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

THE GIBSON LAW FIRM
BY: Robert Gibson, Esquire
I.D.#: 76187
319 West Front Street
Media, PA 19063
215-729-7000

**Attorney for Objectors,
Karen and George Kairis**

| | |
|---|---|
| Donna Soders, on behalf of herself and all others similarly situated,<br>                              Plaintiff,<br><br>v.<br><br>General Motors Corporation,<br>                              Defendant. | Court of Common Pleas of Lancaster County<br>Civil Action – Law<br><br>No.: CI-00-04255 |

## OBJECTION OF KAREN AND GEORGE KAIRIS TO THE PROPOSED SETTLEMENT

Class Members:

Karen and George Kairis
P.O. Box 8
Whites Ferry Road
Lake Winola, PA 18625
Tel: 570-378-3816

by their undersigned counsel, object to the proposed settlement in *Soders v. GM* for the

following reasons:

1.    **The proposed coupon settlement is not fair, reasonable or adequate, and raises serious concerns about Class Counsel's and GM's motives for agreeing to this coupon settlement.**

This proposed coupon settlement is unfair, unreasonable and inadequate for

Class Members, and raises serious concerns about Class Counsel's and GM's motives

for agreeing to this coupon settlement.  Generally, "[t]he settlement provides rebate

certificates [to Class Members] worth up to $200 towards the purchase or lease of new

GM vehicles."[1]  Coupon settlements such as this one are strongly discouraged by

---

[1]    Long-form notice, p. 1.

Pennsylvania and federal courts. Indeed, a coupon settlement with problems similar to those presented here – *involving GM and present Class Counsel's law partner/wife* – was harshly criticized and rejected by the Third Circuit in *In re: General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3rd Cir. 1995).[2] As this proposed settlement illustrates, "[c]ertificate settlements have many disadvantages and should be proposed by class counsel only in the rare case."[3]

First, this coupon settlement does not adequately account for the different abilities of Class Members to use the settlement. Class Members will receive coupons for $200, $100, or nothing, to be used **only** toward the purchase or lease of a new GM vehicle. NACA[4] expressly warns that such coupon settlements should be avoided:

> ...For most of the class, redemption may not be an option, because they are unwilling or unable to make a future purchase from the defendant. Thus the class members are not equally compensated – some get more, others get less. **This situation is at its most aggravated when the certificate requires purchase of a _new car_ or other 'big ticket' item.**[5]

Since Class Members must purchase a vehicle for tens of thousands of dollars in order to receive their $200 benefit, "[p]eople of lesser financial means will be unable to benefit comparably from the settlement." *In re: GM Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,

---

[2]    While not binding, federal cases interpreting the federal class action rules, as well as the federal rules themselves, can have persuasive value in Pennsylvania courts. *McMonagle v. Allstate Ins. Co.*, 331 A.2d 467, 471-72 (1975).

[3]    *Milkman v. American Travellers Life Ins. Co.*, 2002 WL 778272 (Pa.Com.Pl.) *citing* National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 176 F.R.D. 375, 383-384 (1997).

[4]    National Association of Consumer Advocates.

[5]    NACA Class Action Guidelines – Revised 2006, http://www.naca.net/_assets/media/RevisedGuidelines.pdf, p. 19 (emphasis supplied).

55 F.3d. at 808. Indeed, since the benefit to Class Members is so small, and the required purchase from GM so large, this settlement is "little more than a sales promotion" and indeed, "a 'tremendous sales bonanza' for GM." *Id.* (internal citations omitted). The benefit to GM is underscored by the facts that the economy is presently in a deep recession and GM sales are near a 27-year low.[6] It would be practicable for GM – and much fairer to Class Members – if coupons could be used to purchase lesser-priced GM products, such as service, repairs or parts. Indeed, "[c]onsumers are trying to keep their current vehicles running longer, until their confidence [in the economy] improves."[7] Simply stated, the "proffered settlement [i]s, in reality, a sophisticated GM marketing program" that benefits GM and Class Counsel[8], but provides no benefit to the Class. *Id.* at 807.

The proposed settlement is also inadequate because, like in *In re: GM Pick-up Truck Fuel Tank Prod. Liab. Litig.*, "...the one-time transfer restriction also precludes the development of a market-making clearing house mechanism." *Id.* at 809. It is further inadequate because there is no guaranteed cash value for coupons, and coupons are not stackable; factors which are also discouraged by NACA.[9] Since the Class was already certified by this Court, Class Counsel cannot credibly argue that the risks of continued litigation warrant such a valueless settlement for the Class. ("The value of a

---

[6]    GM SAYS 2009 U.S. AUTO SALES MAY FALL TO 27-YEAR LOW, Bloomberg.com, 1/15/09, http://www.bloomberg.com/apps/news?pid=20601087&sid=aFxtV_h8p89M&refer=home

[7]    AUTOZONE BEATS ESTIMATES AS CAR REPAIRS TRUMP SALES, Bloomberg.com, 3/3/09, http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aZklvxqpgeRw#

[8]    In the form of generous attorneys' fees.

[9]    NACA has been relied upon by other Pennsylvania courts when evaluating the fairness of a class action settlement. *See, e.g., Milkman v. American Travellers Life Ins. Co.*, 2002 WL 778272 (Pa.Com.Pl.)

3

class action depends largely on the certification of the class..." *General Motors Corp.*, 55 F.3d at 817).[10]  Moreover, it is troubling that GM and Class Counsel have agreed upon generous attorneys fees, especially in light of the fact that both are aware, from previous litigation, of serious defects with this settlement.  Simply stated, the proposed coupon settlement is not fair, reasonable, or adequate, and must be rejected.

2.    **The requested attorneys' fees are excessive compared to the grossly inadequate benefit to the Class.**

Despite grossly unfair settlement terms for Class Members, Class Counsel seeks, and GM has agreed to pay, up to $1.886 million in attorneys' fees and up to $500,000 in costs.  This is not reasonable.  The percentage-of-the-fund method is preferred when assessing fees in coupon settlements such as this.[11]  Accordingly, attorneys' fees should be based on the value to class members of coupons redeemed.[12]  Based on the weakness of this settlement, it appears to be no accident that Class Counsel has asked this Court to approve its fees prior to the deadline for filing all claims.  Counsel's requested fees should be rejected, and, at a minimum, this Court should not determine attorneys' fees until after the claims process is completed.

Respectfully submitted,

Robert Gibson
THE GIBSON LAW FIRM

---

[10]    See also, generally, *Dauphin Deposit Bank and Trust Co. v. Hess*, 727 A.2d 1076 (1999).

[11]    *In re: Excess Value Insurance Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005).

[12]    See also, generally, 28. U.S.C.A. § 1712(a), *et seq.*

4

319 West Front Street
Media, PA 19063
Tel:  215-729-7000
Fax:  215-359-2166

Attorney for Objectors,
Karen and George Kairis

# EXHIBIT E

1

<pre>
 1                   IN THE COURT OF COMMON PLEAS
                    LANCASTER COUNTY, PENNSYLVANIA
 2                             CIVIL

 3

 4      ------------------------------:
        DONNA SODERS, on behalf of    :
 5      herself and all others        :
        similarly situated,           :
 6                                     :
                                       :
 7                 Plaintiff           :
                                       :
 8           Vs.                       :
                                       :   No. CI-00-04255
 9      General Motors Corporation,    :
                                       :
10                 Defendant           :
        ------------------------------:
11

12                         Expedited Hearing

13

14                Before:  HONORABLE LOUIS J. FARINA,
                            PRESIDENT JUDGE

15

16                Date  :  Thursday, May 21, 2009

17                Place :  Courtroom No. 10
                           50 North Duke Street
18                         Lancaster, Pennsylvania

19

20      APPEARANCES:

21      JOSEPH F. RODA, ESQUIRE
        MICHELE BURKHOLDER, ESQUIRE
22      RodaNast, P.C.
        801 Estelle Drive
23      Lancaster, PA  17601

24          For - The Plaintiff

25      ORDERED: 5/21/09    LODGED:_____    FILED:_____
</pre>

```
 1   CHRISTOPHER UNDERHILL, Esquire
     Hartman, Underhill & Brubaker, LLP
 2   221 East Chestnut Street
     Lancaster, PA  17602
 3
           For - The Defendant
 4

 5   ROBERT T. GIBSON, ESQUIRE
     319 West Front Street
 6   Media, PA  19063

 7           For - The Objectors
     I
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      Q.  And I want you to also look, there's a

2   certificate of service attached to that entry of

3   appearance.  Is your name on that certificate of

4   appearance, Mr. Roda?

5      A.  Yes it is.

6      Q.  Did you receive a copy of an entry of appearance

7   in April of this year?

8      A.  I don't recall seeing it.  That doesn't mean that

9   I didn't, my office didn't receive it.  I don't see

10   every piece of paper that comes in on that case.  I see

11   those things I need to be aware of.

12      Q.  You remember me being at the final fairness

13   hearing, don't you, Mr. Roda?

14      A.  I just mentioned that in my own narrative.

15            MR. GIBSON:  I would like to have that

16   placed into -- the entry of appearance placed into

17   evidence.  Should I save my exhibits until the end, Your

18   Honor?

19            THE COURT:  Yes.

20   BY MR. GIBSON:

21      Q.  How long was your telephone conversation -- when

22   was your telephone conversation with the Court,

23   Mr. Roda?

24      A.  I said I believe it was April 30th,

25   reconstructing the days.  The hearing was on the 28th,

16

1    the conference call that you were involved with with

2    counsel for GM and our office was the next day, the

3    29th.

4          I believe that the discussion with the Court was

5    on the 30th because we filed our motion for expedited

6    hearing on the 1st.

7    Q.  And whose -- who was present on that call,

8    Mr. Roda?

9    A.  GM's two counsel, Messrs. Lipps and Underhill;

10   Miss Burkholder and I; Judge Farina.

11   Q.  Was anyone else from Judge Farina's chambers on

12   the call?

13   A.  I have no knowledge of that.

14   Q.  Well, you were on the call.  I'm asking you, was

15   anyone else?

16   A.  I don't know that because no one other than Judge

17   Farina spoke.

18   Q.  Who initiated the call to Judge Farina?

19   A.  I believe we lined it up by a conference call,

20   call-in number for the participants.

21   Q.  Who initiated the call?

22   A.  Let me finish.  I believe my office undertook to

23   initiate the call-in numbers and circulate them among

24   the participants.

25   Q.  So you arranged that through what, through a

16

17

1    service like AT&T or something like that?

2        A.  Something like that.  Our office does routinely

3    conference calls, and I just did it the same way.

4        Q.  Sure you did.  Your office initiated this call to

5    the Court?

6        A.  In the manner I just described, yes.

7        Q.  How long did the telephone call with the Court

8    last?

9        A.  Not long.  I believe it was -- it was between, to

10    the best of my memory, five and less than ten minutes.

on    11        Q.  Between five and ten minutes is your

12    recollection?

13        A.  Best recollection, yes.

14        Q.  What did you say to the Court during -- what did

15    you state during that conversation?

lge    16        A.  I reported what I stood up and reported here.  I

17    reported that we were -- and I believe I was the first

18    one to talk after everyone was on the line.

19            I said that we had asked for this because it was

20    a serious matter.  I believe that was my phrasing, that

21    it had arisen immediately after the final approval

22    hearing.

23            I then related to Judge Farina the sequence of

24    events that I related here in court a moment ago.  First

25    your call, your voicemail, my return, what you said,

1   bankruptcy deadline filing?

2     A.  The bankruptcy deadline filing did not come up in

3   the conversation. We did not make that link. We just

4   asked for an expedited hearing to put what we thought

5   was a very serious matter of record as soon as possible.

6     Q.  Very serious.

7       Again, just so I'm sure, that call was between

8   five and ten minutes?

9     A.  My best recollection. Could it have been a few

10   minutes beyond ten minutes? Maybe. But it was a very

11   brief call.

12     Q.  So it could have been beyond ten minutes?

13     A.  If it was, it would not have been by much.

14     Q.  You gave lengthy direct testimony about your two

15   telephone conversations with me. Isn't it true, and I

16   can certainly imagine getting the phone records -- isn't

17   it true that each of our telephone conversations only

18   lasted a couple of minutes?

19     A.  I don't recall -- your voicemail was very brief.

20   Our conversation on the 28th lasted four minutes and 54

21   seconds. I know that because we have the telephone

22   record here.

23     Q.  Time on that one, okay.

24     A.  The conversation the next day with Messrs. Lipps

25   and Underhill I believe was of equal short duration.

# Lawyers.com

Part of the legal Network.

My Lawyers

| Find a Lawyer | Understand Your Legal Issue | Discuss Your Legal Issue | Legal Help & Resources | Law Blog |

Lawyers.com > Find a Lawyer > RodaNast, P.C.    About Page    Email Page    Help

## RodaNast, P.C. 🏢

Members, A.V. rated Law Firm in Lancaster, Pennsylvania

Add to My Lawyers

| Address | 801 Estelle Drive Lancaster, Pennsylvania 17601 (Lancaster Co.) View Map | Average Client Review Rating ⓘ Rating not available |
| Phone | 717-892-3000 | Average Peer Review Rating ⓘ 5.0 out of 5 |
| Email | | Reviews & Ratings Details |
| Website | http://www.rodanast.com Main Contact Info | |

| Profile | Contact Info | Firm Members | Reviews & Ratings |

Joseph R. Roda (Member) admitted to bar, 1974, Pennsylvania; 1975, U.S. District Court, Eastern District of Pennsylvania; U.S. District Court, Middle District of Pennsylvania and U.S. Court of Appeals, Third Circuit; U.S. Supreme Court. Education: Harvard University, A.B., magna cum laude, 1971; University of Pennsylvania (J.D. 1974). Recipient, Krotty Cup, Moot Court Competition 1974. Law Clerk, U.S. District Court, Eastern District of Pennsylvania, 1974-1975. Member and Vice President, Pennsylvania Bar Institute and bar reporter. Trial Lawyers Association Supreme Court Bench and Trial Practice and Techniques Member. Hearing Committee C.04 of the Disciplinary Board of the Supreme Court of Pennsylvania, 1987-1987, 1989. Lawyers Advisory Committee, U.S. District Court, Eastern District of Pennsylvania. Delegate, Third Circuit Judicial Conference, 1981 and 1985. Member, Lancaster (Chairman, Federal Government Services Committee 1994-2002), 7th additional, Pennsylvania (Member, House of Delegates, 1993-) and American Bar Associations; Pennsylvania Trial Lawyers Association (Member, Board of Governors, 1984-1987; Chairman, Insurance Bar, Firm Section, 1988-); The Association of Trial Lawyers of America; American College of Trial Lawyers; internet bar Academy of Trial Lawyers Elite; Joseph R. Roda.

Dianne M. Nast (Member) admitted to bar, 1973, Pennsylvania and New Jersey; U.S. Court of Appeals, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits and U.S. Supreme Court. Education: Pennsylvania State University, Rutgers University (J.D.), magna cum laude. Director, Federal Judicial Center Foundation, 1991-1998. Board Chair, 1998-2002. Chair, Lawyers Advisory Committee, U.S. Court of Appeals, Third Circuit, 1992-1994. Committee on the Revision of Judicial Conduct Rules, 1983-1990; Judicial Conference Long Range Planning Committee, 1992-1995; Judicial Conference, International Planning Committee, 1994-1995; Member, Trial Lawyer of America Arbitrator Association, 1996-1997. Chair, Trial Court Centennial Celebration, 1991; Director, Historical Society of the Third Circuit; Chair, Centennial Celebration; Member, Historical Society of the United States Supreme Court; Lawyers Advisory Committee, U.S. District Court, Eastern District of Pennsylvania, 1985-1995. Rules Advisory Committee, 1991. Member, House of Delegates, American Bar Association, 1993-1994; Long Range Planning Committee; Litigation Section, American Bar Association; American Bar Association, Litigation Section, Co-Chair, Antitrust Trial Law Committee, Litigation Section; American Bar Association, 1994-1997; Member, Task Force on Alternative Dispute Resolution; Justice, Litigation Section, American Bar Association, 1995-1995. Co-Chair, Nominating Law Committee; Litigation Section, American Bar Association; Litigation Section; American Bar Association, 1990-1991. Co-Chair, Antitrust Committee, Litigation Section, American Bar Association; 1984-1987. Member, Task Force on Alternative Dispute Resolution and Mass Torts, American Arbitrator Association, 1996-1997. Director, Philadelphia Public Defender Association, 1993-1998. President, National Society, U.S. District Court, Eastern District of Pennsylvania, 1995-1997. Board of Directors, 1988-. Member, House of Delegates, Pennsylvania Bar Association, 1993-1998. Task Force on Lawyer Image, Pennsylvania Bar Association, 1990-1991. Board of Governors, Philadelphia Bar Association, 1990-1997. Chair, Philadelphia Bench Bar Conference, 1990. Philadelphia Federal Courts Committee, 1984; Chairman, Philadelphia Bar Constitution, Bicentennial Celebration Committee, 1986-1987. Philadelphia Bar Constitution, Select Committee on Tort Reform, 1986-1987. Federal Judicial Bicentennial Committee, 1989-1990. Practical Litigator, Affiliate Board, Director, Center for Research on Women's and Children's Health, 1991; Member, Philadelphia, Lancaster (Chair, Civil Practice Committee, 1996-); Co-Chair, Civil Litigation and Rules Committee; Professional Bar Committee, 1979-) Pennsylvania and American Bar Associations, American Law Institute; American Arbitration Association (Director, 1993-1996); Fellow, American Bar Foundation; American Trial Lawyers Association Fellow, Dianne M. Nast.

Michael G. Nast (1937-2004).

Michelle S. Burkholder (Associate) admitted to bar, 1996, Pennsylvania; New Jersey; U.S. District Court, District of New Jersey; U.S. District Court, Middle and Eastern Districts of Pennsylvania; U.S. Court of Appeals, Third Circuit. Education: Pennsylvania State University (B.A. with distinction, 1993); Dickinson School of Law (J.D. cum laude, 1996). Delta Theta Phi; Member, Moot Court Society; Listed, Who's Who in American Law, Who's Who in American Women. Law Clerk, Hon. Ronald E. Vican, President Judge, Monroe County Court of Common Pleas. Member, Pennsylvania and Lancaster Bar Associations, Email, Michelle S. Burkholder.

Daniel N. Gallucci (Associate) admitted to bar, 1998, Pennsylvania; U.S. District Court, Middle and Eastern Districts of Pennsylvania, U.S. Court of Appeals, Third Circuit. Education: Gettysburg College; Dickinson School of Law of the Pennsylvania State University (J.D., 1998). Member, Woolwark Honor Society; Order of Barristers. National Title Moot Court Team. Award: 2005, Lancaster Bar Association Melvoin G. Nast Access to Justice Award for firm's commitment to Pro Bono service. Recipient, Conrad A. and Roula N. Favelle Memorial Award; Best Law Review Case Note, 1996-1997. Articles Editor, The Dickinson Law Review, 1997-1998. Law Clerk, Hon. Michael A. Georgelis, Lancaster County President Judge. Author, "Aftermath of General Motors and Georgine Are Settlement Classes Doomed," Dickinson Law Review, 1998. Member, Philadelphia and Pennsylvania Trial Lawyers Association, The Association of Trial Lawyers of America, Million Dollar Advocates Forum, Email, Daniel N. Gallucci.

Jennifer S. Snyder (Associate) admitted to bar, 2000, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania; U.S. Court of Appeals, Third Circuit. Education: Wellesley College (B.A., magna cum laude, 1994); Harvard Law School (J.D. cum laude, 2000). Phi Beta Kappa. Co-author, Insurance. Bad Faith Case Notes. President, Harvard Environmental Law Society, 2001-2002. Member, Harvard Environmental Law Review, 1999-2000. Member, Pennsylvania Association for Justice, Email, Jennifer S. Snyder.

Erin C. Burns (Associate) admitted to bar, 2002, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania; U.S. Court of Appeals, State of the Courts, Third Circuit. Education: University of Delaware (B.A., Psychology, 1999); Villanova University School of Law (J.D. 2002). Phi Del. Member, Children Keyed National Honor Society, Trial Lawyers of America, Law. Co-author, Wiley's Pennsylvania Collection Law, Villanova Environmental Law Journal, 2001-2002. Law Clerk to the Honorable Linda J. Wade, 2002-2004. Lancaster County Court of Common Pleas. Listed in Who's Who of American Women, 2008; Who's Who of America, 2008; Member, National Association for Pro Bono Service, 2004-2008. Member, Lancaster Bar Association (Vice-Chairperson of Young Lawyers Section, 2006; Chairperson, Young Lawyers Section, 2005; Member of the Board of Directors, 2009, Pennsylvania Bar Association, Email, Erin C. Burns.

Joanne E. Matusko (Associate) admitted to bar, 2008, Pennsylvania; U.S. District Court, Eastern District of Pennsylvania. Education: Arcadia University



(B.S., Business, 1989); Lebanon Valley College (M.B.A., 1998); Widener University (J.D., 2005), Member, Moot Court, Rochvort; Certificate of Achievement Insurance Law, 2001. Member, American Society of Clinical Pathologists, Awards, 2005. Lancaster Bar Association Michael G. Nast Access to Justice Award for firm's commitment to Pro bono service. Presentations: 2007, 2009 Annual Meeting - Pennsylvania Society for Clinical Laboratory Scientists, "Legal Aspects of Phlebotomy" Member Lancaster and Pennsylvania Bar Associations. *Email: Justine E. Kasznay*

Jeffrey S. Kaby (Associate) admitted to bar, 2005, Pennsylvania; New York and U.S. District Court, Eastern District of Pennsylvania; District of Columbia. Education: York College of Pennsylvania (B.A., cum laude, 1999); The American University, Washington College of Law (J. D., 2005). Moritz/-Freeman Constitutional Law Fellow. Assistant Editor, Washington College of Law Business Law Brief. Member: Lancaster and Pennsylvania Bar Associations The District of Columbia Bar, New York County Lawyers Association. *Email: Jeffrey S. Kaby*

...

Find a Lawyer    Understand Your Legal Issue    Browse Your Legal Issue    Legal Help & Resources    Law Blog

Martindale-Hubbell® Lawyers.com℠ is the most complete, trusted source for identifying qualified legal counsel.
Disclaimer: The information provided on Lawyers.com is not legal advice. Lawyers.com is not a lawyer referral service, and no attorney-client or confidential relationship is or should be formed by use of the site. The attorney listings on Lawyers.com are paid attorney advertisements and do not in any way constitute a referral or endorsement by Lawyers.com or any approved or authorized lawyer referral service. Your Access to and use of this site is subject to additional Terms and Conditions.



Martindale.com | Career    Attorneys.com    lawyerLocator.co.us    www.Isdatawer.us (Italy)    www.avs23.sd.us (South Africa) (www.martindale.).ru4923    avvsl24.de (Germany) martindale.co.il (Israel)    Legal (Canada) Justia.com Free Case Law

Help - Site Map - About Us | Press Room | Legal Websites    Contact Us    Home | Index Help | Legal News    Lawyers.com Blog    Legal Directory

Terms & Conditions    Privacy    Copyright © 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

# EXHIBIT 2

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this $\underline{16}^{th}$ day of December, 2008, by and

between General Motors Corporation (hereinafter "GM") and Plaintiff in *Soders v. General*

*Motors Corporation*. Case No. CI-00-04255, pending in the Court of Common Pleas of

Lancaster County, Pennsylvania, by and through their undersigned attorneys.

### 1.   DEFINITIONS

1.1.   "Action" means the lawsuit captioned *Soders v. General Motors Corporation*,

Case No. CI-00-04255, pending in the Court of Common Pleas of Lancaster County,

Pennsylvania.

1.2.   "Certificate" means a coupon or otherwise documented right, in a form acceptable

to GM and Class Counsel, that shall entitle the holder to a discount in the amount of $200.00 on

the purchase or lease of a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle during the

Claim Period as set forth in subparagraphs 3.1 through 3.12 below.

1.2.a.   "Assignable Certificate" means an alternative form of the Certificate, in a

form acceptable to GM and Class Counsel, that shall have a value of seventy-five percent (75%)

of the Initial Certificate ($150.00) or Undocumented Certificate ($75.00), and shall be available

to the Claimant as set forth in subparagraph 3.13 below.

1.2.b.   "Undocumented Certificate" means an alternative form of the Certificate,

in a form acceptable to GM and Class Counsel, that shall have a value of fifty (50%) of the initial

Certificate, or $100.00, and shall be available to the Claimant as set forth in subparagraph 3.4

below.

1.3.   "Claim" means a claim to receive a Certificate under subparagraphs 3.1 through

3.12 below.

1

1.8.    "Class" means all persons who purchased at retail from a franchised GM dealer in Pennsylvania a new and not previously titled vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac Divisions of General Motors Corporation. This includes only persons whose franchised GM dealers previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new vehicles manufactured or distributed by the Buick Division. The Class includes natural persons and business entities of any kind, but does not include: (a) persons who purchased vehicles under the GM Employee Purchase Plans; (b) GM-qualified fleet purchasers; (c) government entities; (d) attorneys of record in this case; or (e) lessees.

1.9.    "Class Counsel" means Joseph F. Roda and Michele S. Burkholder of RODANAST, P.C.

1.10.    "Class Member" means a member of the Class.

1.11.    "Class Representative" means the named plaintiff, Donna Soilers, in the Action.

1.12.    "Court" means the Court of Common Pleas of Lancaster County, Pennsylvania.

1.13.    "Effective Date of Settlement" means the latest of the following dates:  (i) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or noticing of any appeal from the Judgment; or (ii) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme Court review is no longer available; or (iii) if the Superior Court of Pennsylvania issues a judgment affirming

3

the Judgment or dismissing the appeal ("Appellate Judgment"), and a petition for review of the
Appellate Judgment is filed and denied by the Pennsylvania Supreme Court, the date beyond
which United States Supreme Court review is no longer available; or (iv) if a petition for review
of the Appellate Judgment is filed and granted by the Pennsylvania Supreme Court, or the
Pennsylvania Supreme Court orders review of the Appellate Judgment on its own motion, and
the Appellate Judgment is affirmed or the review proceeding dismissed, and no petition for a writ
of certiorari with respect to the Supreme Court's judgment affirming the Appellate Judgment or
dismissing the review proceeding ("Review Judgment") is filed, the date of expiration of the
time for the filing of such a petition for a writ of certiorari; or (v) if such a petition for a writ of
certiorari is filed and denied, the date the petition is denied; or (vi) if such a petition for a writ of
certiorari is filed and granted, the date of final affirmance of the Review Judgment or final
dismissal of the review proceeding initiated by the petition for a writ of certiorari. This
Settlement shall not become Effective, and this definition of Effective Date of Settlement shall
not be met, and GM shall have the option and right to rescind this Settlement at its sole
discretion by filing with the Court written notice of such election, with proof of service on Class
Counsel, if Class Counsel is awarded attorneys' fees exceeding \$1.886 million and/or costs
exceeding \$500,000. Notwithstanding the above, and for the sole purpose of avoiding
unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal
from the Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment
awarding (i) an amount of \$5,000.00 to the Representative Plaintiff, (ii) attorneys' fees in an
amount not to exceed \$1.886 million and/or (iii) documented costs in an amount not to exceed
\$500,000, and (b) could not result in the reversal and/or modification of the Judgment (including
the release provisions contained in paragraphs 3.25 through 3.30), then GM and Class Counsel

4

may, acting in good faith and upon mutual agreement, agree that the Settlement is otherwise
Effective and that implementation of the Settlement, including distribution of the settlement
benefits, should proceed.

1.14. "GM Product" means a new Chevrolet, Cadillac. Buick. Pontiac or GMC vehicle.

1.15. "Judgment" means the judgment to be entered by the Court pursuant to this
Settlement, in a form acceptable to GM and Class Counsel, which shall include final approval of
the Settlement, dismissal of the Action with prejudice, and approval and entry of the provisions
contained in Section 3(D), Release, below (i.e., subparagraphs 3.25 through 3.30).

1.16. "Notice Order" means an Order in a form acceptable to GM and Class Counsel,
providing for, among other things, preliminary approval of the Settlement, dissemination of the
notice of the Settlement to the Class, and setting of the Fairness Hearing.

1.17. "Parties" means the Class Representative and Defendant GM.

1.18. "Proof of Purchase" means contemporaneous documentary proof of the purchase
at retail from a franchised GM dealer in Pennsylvania of a new and not previously titled vehicle
that was manufactured or distributed by the Chevrolet, GMC Truck. Cadillac, Oldsmobile, Buick
or Pontiac Divisions of General Motors Corporation. Each such purchase must have occurred on
or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or
distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles
manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new
vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new
vehicles manufactured or distributed by the Buick Division. Acceptable forms of Proof of
Purchase may include a copy of (i) the retail invoice; (ii) original finance documentation; (iii) the
title; (iv) insurance documentation; (v) a cancelled check; and/or (vi) similar documentation

5