Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026-reg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MOTORS LIQUIDATION COMPANY, et al.

9              f/k/a General Motors Corporation, et al.,

10

11              Debtors.

12

13    - - - - - - - - - - - - - - - - - - - -x

14

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              June 1, 2010

20              9:42 AM

21

22    B E F O R E:

23    HON. ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25

1

2    Motion of General Motors, LLC for Entry of an Order Pursuant to

3    11 U.S.C. Section 105 Enforcing 363 Sale Order

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dena Page

Page 3

1   A P P E A R A N C E S :

2   WEIL, GOTSHAL & MANGES LLP

3        Attorneys for Debtors and Debtors-in-Possession

4        767 Fifth Avenue

5        New York, NY 10153

6

7   BY:   STEPHEN KAROTKIN, ESQ.

8         PABLO FALABELLA, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12       Attorneys for the Official Committee of Unsecured

13        Creditors

14       1177 Avenue of the Americas

15       New York, NY 10036

16

17  BY:   JENNIFER R. SHARRET, ESQ.

18

19

20  LAW OFFICES OF RUTLEDGE & RUTLEDGE, P.C.

21       Attorneys for Shane J. Robley

22       1053 West Rex Road #101

23       Memphis, TN 36119

24

25  BY:   ROGER KEITH RUTLEDGE, ESQ.

Page 4

```
 1   NORRIS, MCLAUGHLIN & MARCUS, P.A.

 2        Attorneys for Sanford Deutsch and the estate of Beverly

 3          Deutsch

 4        875 Third Avenue

 5        8th Floor

 6        New York, NY 10022

 7

 8   BY:   MELISSA A. PENA, ESQ.

 9

10

11   THE LAW OFFICES OF BARRY NOVACK

12        Attorneys for Sanford Deutsch and the estate of Beverly

13          Deutsch

14        8383 Wilshire Boulevard

15        Suite 830

16        Beverly Hills, CA 90211

17

18   BY:   BARRY B. NOVACK, ESQ.

19

20

21

22

23

24

25
```

1   STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

2         Attorneys for Legal Representatives

3         2323 Bryan Street

4         Suite 2200

5         Dallas, TX 75201

6

7   BY:   JO E. HARTWICK, ESQ. (TELEPHONICALLY)

8

9

10  ALSO PRESENT:

11        TERRIE SIZEMORE, Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2         THE COURT:  We have GM on for 9:45 and it's a little

3    bit early.  Let me ask if people are ready to go on GM.  Is

4    everybody who would want to be heard on that -- I think I need

5    to hear, in addition to the debtors, from Ms. Sizemore -- or,

6    Dr. Sizemore.  I hope you're on the phone.  Are you on the

7    phone, Dr. Sizemore?

8         COURTCALL OPERATOR:  She has no appearance for that

9    matter, Your Honor.

10        THE COURT:  Okay, I heard you but not very loudly, so

11   I'm going to ask you to speak up.

12        Mr. Rutledge?

13        COURTCALL OPERATOR:  Your Honor?  Your Honor?

14        THE COURT:  Are you Dr. Sizemore?  Oh, you came

15   personally, after all.  All right, very well.

16        MR. RUTLEDGE:  Your Honor, I'm Roger Rutledge.  I'm

17   here from the Western District of Tennessee.  I have a motion

18   for appearance pro hac vice before the Court and would hope

19   that the Court would grant that.

20        THE COURT:  Of course.  Welcome.

21        MR. RUTLEDGE:  Thank you, Your Honor.

22        THE COURT:  And on behalf of the -- is it Deutsch

23   litigants?

24        MS. PENA:  Yes, Your Honor.  Melissa Pena from the law

25   firm Norris, McLaughlin & Marcus.  I serve as local counsel for

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 7 of 77

Page 7

1    Sanford Deutsch.  I have with me, today, Mr. Barry Novack.

2    He's an attorney in good standing with the State Bar of

3    California.  We just filed his pro hac papers today; I'd like

4    to just move for his admission.

5            THE COURT:  Of course.  Welcome.

6            MR. NOVACK:  Thank you.

7            THE COURT:  Granted.

8            Okay, you know what, Patrick, could you turn off the

9    blower, please?

10           Okay, folks, let's come on up, please, for the GM

11   motion to enforce the 363 order.  And then after everybody

12   makes their formal appearances, I'll want everybody to sit

13   down.  I have some preliminary comments.

14           MR. RUTLEDGE:  Does Your Honor want all the parties at

15   counsel table that are responding or objecting to the motion of

16   GM?

17           THE COURT:  Yes, except only for the fact that if

18   you're local counsel isn't going to be saying anything, it's

19   optional for them.  But I would like all of the counsel for Mr.

20   Robley and the -- is it Deutsch?  Forgive me.

21           MR. NOVACK:  Deutsch, Your Honor.

22           THE COURT:  Yes, the Beverly Deutsch family and also

23   Dr. Sizemore to be up where they can be heard, although when

24   you speak, I'm going to ask each of you individually to come to

25   the main lectern, if you would, please.  Okay.

Page 8

1        Actually, I don't know if I need to make you folks

2    repeat yourself.  I have Mr. Rutledge, Mr. Novack and Dr.

3    Sizemore, and for the debtor -- I'll take a formal appearance.

4        MR. KAROTKIN:  For General Motors, LLC, Your Honor,

5    Stephen Karotkin, Weil, Gotshal & Manges.

6        THE COURT:  Okay, Mr. Karotkin.  And with you?

7        MR. KAROTKIN:  Is Mr. Bonomo (ph.) from General

8    Motors, LLC.  He's in-house counsel.  And my colleague, Pablo

9    Falabella, from my firm.

10        THE COURT:  All right, very well.  Okay, have seats

11    everybody.

12        Folks, I want you to make your presentations as you

13    see fit, starting with Mr. Karotkin.  But when you do so, I

14    want you to emphasize and focus on the particular questions and

15    concerns that I'm going to identify for you now.

16        First, Mr. Rutledge, your -- the way you handled the

17    commencement of the lawsuit, given your need to preserve your

18    position and to tee it up for judicial determination was a text

19    book example of the right way to do it in terms of acting

20    responsibly.  But I have some questions and concerns concerning

21    your underlying motion -- or, your underlying objection.  I

22    want you to focus, vis-a-vis your notice position, in

23    particular, as I want Mr. Karotkin to do when it's his turn, on

24    the decision by Judge Cyr who -- of the First Circuit who, as

25    we know, was a former bankruptcy judge because I think I need

1   to assume, for the sake of discussion, that Western is correct,

2   but it says quite explicitly that that was a case in which

3   notice by publication wasn't given, and that strikes me as a

4   huge distinction.

5          I also need help from you, Mr. Rutledge, in focusing

6   on the extent to which I can now hear argument on this when I

7   ruled on the matter of notice when I issued the 363 order on

8   the Fourth of July weekend last year because, unless I'm

9   mistaken, there is an express finding on the matter of notice.

10  And while I think that the facts could at least arguably be

11  different if your client had already been known to Old GM or

12  New GM, there is no basis in the record upon which I can make

13  such a conclusion that either of the two GMs intentionally did

14  not give you notice.

15         On the second issue, Mr. Rutledge, the successor

16  liability issue, it seems to me that subject to your right to

17  be heard, that you've got a res judicata problem, and that

18  while I'd be amenable, I suppose, to your keeping your actions

19  stayed as contrasted to dismissed until all appeals

20  opportunities have been exhausted, I don't see how I can

21  revisit the underlying issues in the second half of your brief

22  for as long as my decision from last year and the district

23  court affirments say what they say they do and remain good law.

24         Dr. Sizemore, I need help in understanding the legal

25  bases for your position, either the underlying contention or

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 10 of 77

Page 10

```
 1    the need for further discovery.  It's not as fleshed out as the
 2    one that Mr. Rutledge filed in this court.  And I have some
 3    material difficulties in seeing how your lawsuit can proceed
 4    given what the documents say.
 5          Now, apropos what the documents say, that ties into
 6    the third of the objections to the motion, yours, Mr. Novack.
 7    As a preliminary matter, I need help from both sides because,
 8    Mr. Novack and Mr. Karotkin, it appears to me that neither side
 9    quoted what I understand to be the relevant language in 2.389
10    which appears not in the first amendment which each of you
11    quoted to me, but in the ARMSPA as it was in next to the sale
12    order which seems to have different language in it than either
13    side quoted.  And what I would be tentatively inclined to base
14    my ruling on would be the language in the ARMSPA as in next to
15    the sale order in 2.389 that says, "accidents, incidents, or
16    other distinct and discrete occurrences", which seems to me to
17    be the key words that I've got to work off, rather than the
18    "accidents or incidents first occurring language" that appears
19    in the first amended MPA that each side quoted in its brief.
20    Now, if I'm mistaken in that regard, don't be diplomatic,
21    folks.  Tell me so.  But it seems to me that on the very unique
22    facts that you have, Mr. Novack, I have to construe the ARMSPA
23    in light of whatever the proper contractual language is, which
24    I think is the one I just read.
25          And then I ask -- I need you folks to concentrate on
```

MOTORS LIQUIDATION COMPANY, et al.

Page 11

1    how a judge would construe the words "accidents, incidents, or

2    other discrete occurrences" because those words seem to talk

3    about what caused everything thereafter, in contrast to when

4    the cause of action legally arose.

5         As my hesitancy in my articulating that suggests, I

6    think the third issue was the closest of the three that I have

7    here, but I want help from both sides on that.  The two things

8    that I need help from you the most on is that First Circuit

9    decision in Western Auto Supply Company v. Savage Industries

10   and the proper construction of the agreement.

11        Mr. Karotkin, you want to take a second, and then I'll

12   hear from you first.

13        MR. KAROTKIN:  Good morning, Your Honor.  Stephen

14   Karotkin, General Motors, LLC, for the moving party.

15        Your Honor, we believe that our motion and our

16   pleadings and our responses are pretty much self-explanatory.

17   As you know, there are six lawsuits involved.  And just by way

18   of quick background, only three responses were filed, to which

19   you already alluded.  R. J. Burn already has agreed to dismiss

20   its lawsuit, and the other two respondents did not file any

21   responsive pleadings.

22        I think that you've certainly put your finger on the

23   issues that are relevant today with respect to the first item

24   in Judge Cyr's decision, as you noted, and as we noted in our

25   pleadings, there is certainly a very, very significant

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 12 of 77

Page 12

1    distinction in that case as compared to the incident case where

2    notice by publication was given; it was wide-spread.  As Your

3    Honor indicated, you expressly found that notice by publication

4    was sufficient.  There is no indication on the record or

5    otherwise that General Motors, which is now MLC, had any actual

6    notice of this claim.  The lawsuit was not filed, I don't

7    believe, until November 23rd, 2009, as indicated in Mr.

8    Robley's pleading.  And under the applicable law and rules,

9    notice by publication was sufficient.

10           Moreover, Your Honor, as you surely know, the proposed

11   financial difficulties of General Motors Corporation, the

12   Chapter 11 filing, the sale that was going to take place before

13   this Court at the end of June about a year ago was notorious

14   and widespread in the papers.  In addition to your finding that

15   publication was sufficient and under those circumstances, as I

16   think you've already indicated, we believe notice was

17   sufficient.  We believe notice complied with due process.  The

18   suggestion that we should have given notice to every single

19   consumer who bought a General Motors vehicle is not supported

20   by any authority that I'm aware of.  It would have been

21   virtually impossible to do, certainly in the context of the

22   time frame we were dealing with.  And again, we think the

23   notice was more than adequate to comply with Mullane in due

24   process.

25           I would also point out, and I think you indicated that

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 13 of 77

Page 13

1    as well, that notwithstanding the issue of notice, the issue

2    that has been raised by Robley with respect to selling free and

3    clear of product liability claims was fully litigated at length

4    in the three-day sale hearing before this Court.  Your Honor

5    ruled on the issue.  Judge Gonzalez, as you indicated yourself,

6    ruled on the issue.  It was sustained by the Second Circuit,

7    and as, again, you mentioned at the outset, we believe that

8    that issue is res judicata.  In addition to which it's --

9         THE COURT:  Pause, please, Mr. Karotkin.  I assume

10   that New GM isn't prejudiced in any material way if that

11   lawsuit remains stayed as contrasted to me ordering that it be

12   dismissed until the time for all appeals has been exhausted?

13        MR. KAROTKIN:  That's correct, and they have

14   absolutely no objection to that.

15        THE COURT:  All right, continue, please.

16        MR. KAROTKIN:  And I think that, Your Honor, that

17   really disposes with the Robley objection.  With respect to

18   Deutsch, again, you referred to the language that refers to

19   "accidents, incidents or other distinct and discrete

20   occurrences" that happened on or after the closing date.  This

21   clearly happened prior to the closing -- well prior to the

22   closing.  And again, as we mentioned in our pleadings, Your

23   Honor, the fact that the cause of action may have arisen

24   under -- I believe it was California law upon the death of the

25   plaintiff in that action really is of no relevance.  And we

Page 14

1    think that the pure words of the contract dictate the result

2    that this action must be dismissed as well.

3            THE COURT:  Pause, please, because I didn't understand

4    Mr. Novack to be arguing that we could ignore the contract, but

5    I think that he was trying to argue that although the accident

6    undisputedly took place before the closing, that the death was

7    an incident.  And because both sides were arguing different

8    contractual language, I don't think you focused on "other

9    distinct and discrete occurrence".  Do you want to comment on

10   whether the death can be regarded appropriately as an incident

11   in contrast to an accident?

12           MR. KAROTKIN:  I think, Your Honor, that the death, if

13   it was the result of the accident, certainly was a byproduct of

14   that, but it was not an accident or incident that occurred

15   prior to the closing.  And I think that it's very clear that

16   whatever happened in the incident which gave rise to the cause

17   of action -- or, the accident which gave rise to the cause of

18   action clearly happened prior to the closing, as well as any

19   distinct or discrete occurrences.  All of that was the result

20   of the accident, or allegedly the result of the accident that

21   happened well prior to the closing, and I think that's the only

22   logical interpretation of the purchase agreement and what was

23   intended.

24           THE COURT:  Okay, continue please.

25           MR. KAROTKIN:  With respect to the Sizemore objection,

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 15 of 77

Page 15

1   I think -- I think what Dr. Sizemore is saying is that she is

2   entitled to discovery and should not be compelled to dismiss

3   her lawsuit until General Motors, LLC has complied with

4   discovery.  Again, as we indicated in our pleadings, Your

5   Honor, it's not a condition to your order or a violation of

6   your order that General Motors be compelled to comply with

7   discovery prior to or, as the condition to being dismissed from

8   the lawsuit.  To the extent that third party discovery is

9   appropriate from General Motors, LLC, under the rules, under

10  whatever procedures are appropriate in the non-bankruptcy court

11  action brought by Dr. Sizemore, General Motors is obligated to

12  comply with appropriate third-party discovery and will do so.

13  It's my understanding that they already have furnished

14  discovery to Dr. Sizemore, and all we are suggesting is that

15  General Motors be dismissed and, again, to the extent that Dr.

16  Sizemore believes she is entitled to discovery, that can

17  proceed under the applicable rules of that non-bankruptcy court

18  forum.

19          THE COURT:  Well, if her action were dismissed, what

20  would her basis for getting discovery to be.  I'm a little

21  puzzled by that.  Saying that she has a right to discovery

22  doesn't seem to make a whole lot of sense to me in light of

23  what I understand you're looking for and what I would be -- or

24  the variant, which is what I'm thinking about, which is staying

25  that litigation until the matter of the underlying free and

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 16 of 77

Page 16

1    clear order I issued either gets up to the Circuit or all

2    appeals are dismissed.  But I don't see how she has a valid

3    lawsuit upon which to bring discovery or to seek it if I give

4    you what you're looking for.  Now, I assume she has a proof of

5    claim in this court, and she can get third-party discovery

6    against New GM to the extent that she can't get what she wants

7    from Old GM, but I thought I heard you saying something

8    different.

9            MR. KAROTKIN:  Number one, we're not aware of Dr.

10   Sizemore having filed a proof of claim against Old GM.  We've

11   checked the records, and there's no record of a proof of claim

12   on file.  If we are mistaken, I'm sure that Dr. Sizemore can

13   correct me, but we have checked the docket and we don't see it.

14           Secondly, her lawsuit also was against -- or, is

15   against a supplier.  And to the extent that discovery would be

16   appropriate as against General Motors, again, third-party

17   discovery can proceed.

18           THE COURT:  I'm with you now.  Okay, continue.

19           MR. KAROTKIN:  And Your Honor, unless you have other

20   questions --

21           THE COURT:  No.  I'll give you a chance to comply and

22   I'll give your opponents a chance to surreply.

23           MR. KAROTKIN:  Okay, thank you, sir.

24           THE COURT:  But let me hear next -- let me hear from

25   Dr. Sizemore next, please.

 1          DR. SIZEMORE:  Thank you.  I apologize; I'm a little

 2    nervous and I appreciate your patience.

 3          He was incorrect in saying that the lawsuit is against

 4    a supplier.  That's not correct.  I believe I said in my

 5    objection that I was injured a little over two years ago, in

 6    January of '08, in a car accident; my airbag did not deploy.  I

 7    felt I met the criteria for the bag to deploy.  The Old General

 8    Motors Company sent a field investigator named Mr. John Ball

 9    (ph.) to inspect the vehicle.  He promised me the details of

10    the engineers' conclusions of his data.  He inspected every

11    aspect of the airbag.

12          I have been in conflict with General Motors, the Old

13    and the New, for the details of that report since about March

14    of '08.  I wrote several letters to General Motors; they

15    refused to respond to me at all.  They said that a company

16    named ESIS handled their product liability issues; I was to

17    contact them.  They've refused to give me the information.  I

18    contacted the Ohio Attorney General's Office because they have

19    a consumer protection department.  In doing that, they

20    petitioned the information from the Old General Motors.  The

21    Old General Motors has supplied about this many pages of

22    documents, but I have read every page that General Motors has

23    supplied, and the information that I requested is not in those

24    pages.  When I received -- I received a crash data report from

25    Mr. John Ball, some of the data that he collected is included

MOTORS LIQUIDATION COMPANY, et al.

Page 18

1    in here, as far as the deceleration event, the speed of my

2    vehicle, the fact that the airbags were enabled at the time of

3    my accident.  But there's this hexidecimal fraction of this

4    report that is computer gibberish to me and not understandable.

5    So I asked for clarification of that and have never received

6    it.

7            Also given to the Ohio Attorney General's Office was a

8    report from an engineer named Mr. John Sprague (ph.).  I

9    contend that that report is fraudulent and it is not based on

10   the information that John Ball obtained during the inspection

11   because I was present during the inspection.  And John Ball

12   told me part of the information he had received:  the speed of

13   my vehicle, the impact, the reason that the airbags did not

14   deploy.  There's a picture that I was sent by General Motors in

15   a collection of pictures that stated there was a class 2

16   malfunction.  The explanation of that is not present in the

17   material that was sent to the Ohio Attorney General and to me.

18   And I was frustrated, and I told the Ohio Attorney General that

19   what was missing in the report, and so they petitioned General

20   Motors again, and General Motors, again, refused to respond --

21   the Old General Motors.

22           Also, I contacted federal representative Bob Latta's

23   office.  I have a message on my cell phone from that office

24   that states that they contacted the new company, General Motors

25   Company after the commencement of the bankruptcy.  They said

MOTORS LIQUIDATION COMPANY, et al.

Page 19

1    they did not mention any of the issues of the bankruptcy and

2    the fact that my accident occurred prior to the commencement,

3    so it would not be their responsibility.  Bankruptcy issues

4    were never discussed.  So what General Motors Company advised

5    Federal Representative Latta's office to do was to contact

6    Aesis, which claims to be General Motor's central claims unit.

7    After all these -- and that was in August of '09.  So I have

8    August 18th as General Motors Company responding but never

9    really providing any information.

10          So through frustration and through not knowing exactly

11   how to proceed, I did file a claim against General Motors

12   Corporation in civil court.  And I was sent a letter by Ms. --

13          THE COURT:  By that, you mean in Ohio?

14          DR. SIZEMORE:  Yes.

15          THE COURT:  Um-hum.

16          DR. SIZEMORE:  Yes, where I purchased the vehicle.

17          THE COURT:  Um-hum.

18          DR. SIZEMORE:  For product liability.  I was sent a

19   letter by Brianna Benfield, who I understand works for the same

20   firm that is present today, and she said in her letter that all

21   actions against General Motors Corporation were void and that

22   my action violated, I think, 362(a).  I do have a copy of her

23   letter.  In her letter, she never offers me a proof of claim

24   form and she never directs me to bankruptcy court.  She just

25   says that all claims are void, and if I didn't withdraw them,

Page 20

1    then I would be in contempt of court.  And I am basically a

2    law-abiding citizen; I don't do things incorrectly

3    intentionally.  So I did withdraw them.  And when I had a phone

4    conversation with her, she explained to me that there was a new

5    company called General Motors Company that had assumed

6    responsibility.  Whether that was correct or whether I

7    misunderstood, I'm not sure.  But she also said that my claim

8    against ESISwas valid.

9           When I proceeded in civil court in Medina, Ohio, I had

10   written to the judge that I claim to have a good heart but

11   empty head and I understood that I could have possibly made

12   some mistakes, but that I had made every honest attempt to

13   gather the necessary information to not make those mistakes.

14   Judge Kimbler was confused; I have a transcript of the hearing

15   during -- on December 1st in Medina County, and he petitioned

16   Mr. Popson, who was representing ESIS at the time, but ESIS

17   told me that General Motors Company was paying him to represent

18   Aesis.  But Mr. Popson stated to the Court that ESIS was not

19   the proper defendant because they did not manufacture the

20   vehicle and they did not sell the vehicle to me.  So according

21   to Civil Rule 12(b)(6), I was dismissed.  But I held the

22   understanding that even an insurance company can be joined to

23   civil litigation if it's appropriate or necessary.  But that

24   was disregarded.

25           THE COURT:  Doctor, I want to interrupt you for a

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 21 of 77

Page 21

1    second because I think you may be concerned that I'm going to

2    take action against you for having violated the earlier

3    injunction or anything like that, and I want to take that off

4    the table both for you and the other two litigants who are

5    here.  I see the legal issue not as whether anybody is guilty

6    of contempt or should be sanctioned or punished in any way but

7    rather the extent to which the litigation should continue in

8    light of what the sale order said and what the purchase

9    agreement said.

10        So I'd like to ask you to turn to that.  And I

11   telegraphed some of the concerns that I have when I was

12   commenting on the two lawyers who are representing their

13   clients.  And if you have anything to help me on that before

14   they speak, I'd like you to do that, please.

15        DR. SIZEMORE:  Okay, well, I appreciate your not

16   wanting to punish me because that was one of the reasons that I

17   came up here, because I don't feel that if I made a mistake, it

18   was entirely my fault.

19        THE COURT:  Of course, I understand that.

20        DR. SIZEMORE:  So in all of this confusion, I filed an

21   action for discovery in civil court because I wanted the

22   details.  My first question in the action for discovery --

23   which I believe I met all of the requirements of the revised

24   code required -- was that General Motors Company provide me

25   with the details of the bankruptcy and if there's anything that

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 22 of 77

Page 22

1    I needed to know to prevent being here in bankruptcy court in

2    New York or violating any bankruptcy laws at all.  And then

3    there were several others; I have the list of questions with

4    me.  They were simple questions; I've asked the lawyers for

5    General Motors if that action for discovery violated any

6    bankruptcy laws or issues.  They have not provided me with

7    that.  So I was under the gun for the statute of limitations in

8    January of this year to file.  So without the needed

9    information, I filed against the company because I had read

10   newspaper articles, talked to different people, had some, what

11   I believed was misleading and false information from both the

12   Old company and the New company as to where the liability was

13   supposed to be.  And so I did put the company as the defendant

14   and then John Does were listed.  There were no other defendants

15   except for them.

16        Mr. Popson -- and I believe he did this in order to

17   invalidate my action for discovery and get out of answering the

18   questions properly -- filed an answer.  And when he filed a

19   motion to dismiss my action for discovery, he said that I had

20   enough sufficient information to file a claim.  But that

21   statement, in my opinion, is false because I didn't have

22   sufficient information and I apparently made a mistake by

23   putting the company down as a defendant.  But Mr. Popson

24   made -- he did answer the complaint, and then he gave me verbal

25   instruction to serve discovery request upon him according to

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 23 of 77

Page 23

1    Civil Rules 33 and 34, which I said, if General Motors Company

2    is not a legitimate defendant, I don't feel that I can serve

3    discovery requests through 33 and 34, so I did not.  I said if

4    you are willing to answer discovery request, then please answer

5    my action for discovery.

6         Well, he invalidated that action for discovery

7    completely, but I still maintain that that was legally executed

8    and did not violate bankruptcy laws, and so I'm in the ninth

9    district because General Motors Company failed to comply with

10   Civil Rule (a)(1) requiring them twenty-eight days --

11        THE COURT:  Pause, please, Dr. Sizemore.  I don't want

12   to cut you off, especially since you traveled so far, but

13   you're getting a little bit afield.  I need you to concentrate

14   on the bankruptcy issues that are before me and what the

15   purchase agreement says.  So when I -- when you continue, which

16   will be in just a moment, I want you to focus on that, please.

17        Before you do, though, I would also like you to help

18   me -- I had always assumed that a DVM is a veterinarian.

19        DR. SIZEMORE:  Yes.

20        THE COURT:  And an RN is a nurse.  Do you have legal

21   training?  I saw your pleading.  It looked like either you had

22   at one time gone to law school or somebody with legal training

23   had helped you.

24        DR. SIZEMORE:  No, I've done research independently.

25   I am medically trained.  I have -- my background is completely

Page 24

1    medical --

2         THE COURT:  Okay.

3         DR. SIZEMORE:  -- for over thirty years.

4         THE COURT:  Fair enough.  Then, you want to continue,

5    please, with bankruptcy doctrine, cases, statutes, as to why

6    you should win.  For the purposes of the issues that are before

7    me, I don't have the power to decide whether or not you were

8    injured by a GM vehicle or whether GM did anything wrong.

9         DR. SIZEMORE:  I understand that, and in all honesty,

10   I guess my position is that I am very unsure of any of the

11   bankruptcy issues.  I feel that General Motors owed me, as a

12   consumer -- and they did -- the attorney who was standing here,

13   I believe I did receive some notification in the mail that

14   really didn't make a lot of sense to me as far as the

15   bankruptcy that happened because I had an '04 vehicle, and I

16   now have an '07 vehicle.  But my -- if I made a mistake, it was

17   unintentional, and I don't know how to plead because if I -- I

18   can't deny that I made a mistake because there's a possibility

19   that I did.  But I can't --

20        THE COURT:  Well, you don't have to plead guilty or

21   not guilty like you would if you were in a criminal court.  I

22   would suggest to you that you let the two lawyers speak because

23   the two of them have more directly addressed the bankruptcy

24   issues that I need to deal with.

25        DR. SIZEMORE:  Okay.

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 25 of 77

Page 25

1          THE COURT:  Thank you.

2          Okay, may I hear next from Mr. Rutledge, please?

3          MR. RUTLEDGE:  Thank you, Your Honor.  I'm Roger

4    Rutledge from Memphis, Tennessee, and I appreciate the

5    opportunity to be before the Court this morning.  I know that

6    this case has been unbelievable; it took me a while before I

7    found out that there was a single web site devoted solely to

8    documents filed in this case.  And it's just an amazing case.

9    I know that the Court was faced with a tremendous

10   responsibility in those forty days from the day that the

11   petition was filed until the transaction that consummated the

12   sale order and that, really, I want to acknowledge that the

13   Court stepped up to the plate and did what needed to be done

14   for the sake of the whole country, and especially in the face

15   of a looming disaster.  And I would submit, Your Honor, that

16   this morning, the disaster has been averted, that we have an

17   opportunity to go back and deal with some of the things that,

18   at that time, would have been considered to be less

19   significant, and to hopefully do the right thing, which is why

20   I'm here.

21          I represent Shane J. Robley, a young man, twenty-seven

22   years old --

23          THE COURT:  Who I sense is a paraplegic, and I'm very

24   sensitive to the personal circumstances of your client.

25          MR. RUTLEDGE:  Thank you, Your Honor.  He is, indeed,

Page 26

1    a paraplegic, and after -- he was driving a GMC Jimmy which,

2    along with a Chevrolet Blazer, has the worst rollover tendency

3    ever recorded by the National Highway Traffic Safety

4    Administration.  This accident is one that definitely was

5    tragic; that's all we can say about it.  And after it happened,

6    for probably the six months that ensued after -- it was

7    November of 2009, the end of November, he was, for sixty days,

8    in the intensive care unit of the hospital.  And then, in the

9    succeeding months, he was under treatment and learning how to

10   live in a wheelchair.

11           And so, we come up to June the 1st, and the notice by

12   publication.  And I would not differ with counsel for GM, but

13   under normal circumstances, notice by publication reaches most

14   people in a bankruptcy case.  It's commonly used, and I

15   certainly don't take issue with the general acceptance of the

16   certificate of publication that the Court made at the time of

17   the entry of the order.  But I would submit, Your Honor, that

18   under the test of Mullane v. Central Hanover Bank and Trust

19   Company and other authority, that the notice in this case was

20   not reasonably calculated to reach Shane J. Robley or people

21   like Shane J. Robley.

22           I took the liberty, Your Honor, of reproducing from

23   the record at www.motorsliquidation.com the actual publication

24   notices.  It was published one time in these publications, four

25   of which came out in Canada.  And I would just submit to Your

MOTORS LIQUIDATION COMPANY, et al.

Page 27

1    Honor that the small type and the language of the notice was

2    simply insufficient to give a person in Shane J. Robley's

3    situation any kind of understanding that his rights were going

4    to be just affected but potentially extinguished by the

5    procedure that was taking place in June of 2009.

6          Your Honor, this is -- frankly, the Court, in June of

7    2009, was faced with a hard case.  And this case has the

8    potential to be a classic illustration of the old axiom that

9    hard cases make bad law.  But we have the possibility, also, to

10   go back and look at what has happened and make some good law in

11   the aftermath.  Certainly, at the time, it was a necessity

12   to -- and this was all articulated in the ruling of the

13   Court -- the exigencies of that -- or, the circumstances that

14   the Court faced were so dire that to avoid potential

15   liquidation of this huge company and all of the harm that would

16   flow from that, it was appropriate to use the expedited

17   procedure to solve the problem.

18         Similarly, it's appropriate at this stage, looking

19   back on it, to say if we used an expedited procedure, and there

20   were good reasons for doing that -- but if a man named Shane J.

21   Robley was left out and was out in the cold, and if we live in

22   a country that is ruled by procedural due process and that

23   there was a problem there, that we can fix it.  Now, the

24   Court --

25         THE COURT:  Pause, please, Mr. Rutledge.

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 28 of 77

Page 28

 1            MR. RUTLEDGE:  -- the Court --

 2            THE COURT:  Pause, please.  If GM knew back then that

 3    your client had already been injured and chose to use the

 4    publication route rather than a way that would get to him more

 5    directly, that kind of factual circumstance would have troubled

 6    me.  But at the time of the sale hearing, am I right in my

 7    understanding that GM didn't know anything more about your

 8    client other than the fact that at one time, he had bought a GM

 9    vehicle?

10            MR. RUTLEDGE:  I believe that is correct, Your Honor.

11    At the time, Mr. Robley was, as I say, under medical care and

12    had really not come to a full understanding of his position

13    with regard to what had happened.

14            But just coming to the issue that counsel for GM made

15    regarding the notice, he stated in argument that under the

16    applicable rules, notice by publication was sufficient.  Now,

17    bankruptcy law makes it the responsibility of the party in

18    bankruptcy, basically, the debtor-in-possession or the trustee,

19    to see to it that adequate notice is given.  It's not handled

20    by the Court, as it was before 1978.  So in this respect, the

21    Court was really depending upon GM to do the job.  As we heard

22    this morning in argument by GM's counsel, they were depending

23    upon the news media to do their job.  They did one notice by

24    publication in the newspaper and assumed that that was going to

25    be picked up and everybody would know -- a product liability

MOTORS LIQUIDATION COMPANY, et al.

Page 29

1    would know that this hearing was going to take place in which

2    he could possibly lose all his rights.  I submit, Your Honor,

3    that there is an analogous situation in which automobile

4    manufacturers routinely contact owners of their vehicles, and

5    that is the -- either the recall or the National Highway

6    Traffic and Safety Administration issues orders from time to

7    time directing companies to contact owners about a defect or a

8    problem.  And they routinely do it.  Now, I submit, Your Honor,

9    that in the case of notice in a bankruptcy proceeding, except

10   for the haste that was called upon because of the particular

11   circumstances facing the Court at that time, there was no

12   excessive burden upon GM either financially or in terms of its

13   capability of accomplishing such a feat to issue notice by

14   mail.  Failing that, at the very least, they could use the same

15   type of notice that goes out in class action lawsuits,

16   notice -- I mean, direct advertisements on the media,

17   television, and something that came right out and said if you

18   were injured in a GM vehicle, your rights could be terminated

19   by this proceeding.

20          Now, I found it interesting that Dr. Sizemore received

21   a letter from Brianna Benfield because, as we say in our

22   filing, a letter -- we received a letter also.  And I found it

23   very interesting, also, that that letter did not enclose a

24   proof of claim form or anything to try to give notice of where

25   Dr. Sizemore stood or where Mr. Robley stood with regard to

Page 30

1    these proceedings.

2         THE COURT:  Pause, please.  Did I understand you to

3    say that you had a similar communication with her?

4         MR. RUTLEDGE:  That is correct, Your Honor.

5         THE COURT:  And she didn't tell you about the claims

6    filing process either?

7         MR. RUTLEDGE:  She did not, Your Honor.

8         THE COURT:  And either by other means or otherwise,

9    have you ultimately filed a proof of claim against Old GM on

10   behalf of your client?

11        MR. RUTLEDGE:  What I have done, Your Honor, is I

12   contacted Ms. Benfield and I asked her if we could file a late

13   filed proof of claim by consent.  And I just received response

14   to that last Friday.

15        THE COURT:  And what did she say?

16        MR. RUTLEDGE:  And she said no; she said that GM would

17   not consent.  So basically, we are here on behalf of Mr. Robley

18   because this is his sole route of recourse, it appears, other

19   than we will file and submit to the Court and seek the Court's

20   consideration of a motion to allow a late filed proof of claim.

21   Other than that, we have to do what we're doing today.

22        And Your Honor, what I -- I want to go down the list

23   of the concerns that the Court has because they are the right

24   concerns, and I want to address them.  First, regarding the

25   notice, in its response, GM states that the suggestion that the

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 31 of 77

Page 31

1    analogous method of noticing a party, as I say, in the same

2    method that is used in class action suits or in motor vehicle

3    recalls, GM refers to -- calls that absurd, an absurd

4    suggestion.  But Your Honor, what is more absurd is to presume

5    that those notices in those publications that ran one time

6    would have reached those whose rights were being affected by

7    GM's actions.  So we would simply submit that under Mullane v.

8    Central Hanover Bank and Trust and its Progeny, notice means

9    that notice that is reasonably calculated to reach the person

10   whose rights are being affected and gives that person an

11   opportunity to be heard.  This notice was published on June

12   9th, even though the order went into effect on June 1st.  And

13   it referred to the deadline for filing objections.  We

14   articulate all this; I'm not going to repeat what we've said in

15   our filing, Your Honor.  But essentially, less than twenty-one

16   days expired between the time that the notice was filed and the

17   closing took place.  The -- Mr. Robley, if he had happened to

18   have read one of those publications and happened to read that

19   small print in that notice, Mr. Robley would have had exactly

20   nineteen days to get ready for the hearing, and fewer than ten

21   days to even file anything.  So is that reasonable notice for a

22   young man who's living in Tipton County, Tennessee?  We would

23   simply submit, Your Honor, that it's not.  And the consequences

24   of a failure to give adequate notice are well understood under

25   the law.  And that's where the case the Court asked about, the

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 32 of 77

Page 32

1    decision of Judge Cyr's in the Savage v. Western Auto case

2    comes into play.  Because as the Court said, or noted there,

3    not only was there no publication notice, but there was no

4    other form of notice because of the timing of events in that

5    case.  But the sale order and the sale agreement purported to

6    do exactly what was done in this case, that is to say, cut off

7    product liability claims.

8         And there are two very important distinctions that are

9    to be made when you're dealing with a product liability claim.

10   Distinction number one is that it's in a whole different stream

11   of legal development that comes down from the Macpherson v. the

12   Buick Motor Car case.  It's a strict liability.  The rights of

13   consumers under this branch of the law cannot be waived even by

14   them, and as we've quoted from the restatement of Torts Third

15   in our filing, the law just simply does not uphold the

16   termination of rights in a product liability case.

17        Similarly, Section 363 of the Bankruptcy Act (sic)

18   states that a sale can be approved if it's not contrary to non-

19   bankruptcy law.  Well, Your Honor, non-bankruptcy law in the

20   State of New York, this concept of the exceptions to the

21   general rule that you can pass assets free and clear of liens

22   is actually more developed in the law of the State of New York

23   and the law of the State of Delaware than any other state in

24   the union, but it's a very common --

25        THE COURT:  Well, pause, please, Mr. Rutledge, because

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 33 of 77

Page 33

1    the arguments you're making have an amazing resemblance to

2    those that were made by Mr. Jakubowski and perhaps others

3    before me in June of '09.  And he's a pretty good lawyer, too,

4    and he made those points.  And I ruled on them, and at least so

5    far, that's been affirmed on appeal.  Assuming, for the sake of

6    argument, that under either Tennessee law or New York law or

7    whatever law might ultimately be determined to apply to the

8    underlying tort claim that there might otherwise be successor

9    liability, don't we have a res judicata issue here?

10         MR. RUTLEDGE:  Your Honor, we would have a res

11   judicata -- I don't want to give the impression to the Court

12   that I'm asking the Court to go back and rewrite the order that

13   was entered in this case.  It's not necessary to do that.  The

14   MPSA, the underlying agreement itself states that these claims

15   will be passed -- or, kept by the Old GM, the claims for

16   accidents preceding July 10th of 2009.  Those claims would be

17   passed to Old GM, and assets would be taken free and clear of

18   those, and this is a direct quote from the MSPA, the master

19   agreement, "to the extent permitted by law."  So I'm simply --

20   I'm here asking the Court to uphold what has been done.  The

21   law does not permit, under the facts presented in Mr. Robley's

22   case -- I'm not arguing -- I don't know who Mr. Jakubowski is;

23   I've seen his name in the pleadings -- and frankly, Your Honor,

24   I took from the Court's ruling the -- what was res judicata and

25   what was not.  Now, there's no question, the Court, in its

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 34 of 77

Page 34

1    decision, has closely analyzed, A, whether a product liability

2    claimant is a person with an interest in the case, and that's

3    an interesting issue of itself; B, the Court did textual

4    analysis of the Bankruptcy Code to determine what is the nature

5    of an interest and whether the provisions of Section 363 would

6    give the Court the authority to approve the agreement as it was

7    written.  And we take no exception to that; the authority is

8    there.  The question is whether we're going to follow the law

9    or not.  And we humbly submit that the agreement itself says

10   "to the extent permitted by law", these claims would not pass

11   to the New GM.

12          We simply say the law does not permit that to occur

13   under the facts presented in Robley's case for two reasons.

14   Number one, he did not receive adequate notice.  What we're

15   dealing with is something akin to a knowing and intelligent

16   waiver of rights.  Before you can do that, you have to know

17   that there's an issue and what can take place and have an

18   opportunity to be heard.

19          And then secondly, there is this confluence of two

20   streams of law:  one, product liability law, the other,

21   commercial contract law.  Most of what the Bankruptcy Code and

22   the bankruptcy court deals with are claims that are rooted in

23   commercial law.  But product liability law is a different

24   animal, and there are -- the authorities that we cite in our

25   filing make it clear that it is to be accorded a different

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 35 of 77

Page 35

1   treatment.  Now, and under the facts of this case, there is no

2   doubt that we have a continuation of the existing entity in a

3   new form, that it is a de facto merger or consolidation because

4   the Old GM disappears, and in its place is New GM.  And it's

5   very -- I found it interesting in preparing for this proceeding

6   to note that the president -- and I think the Court refers to

7   this as well in the proceedings -- the president -- of course,

8   you know, the United States government, the Treasury was very

9   deeply involved in the process -- the president, in talking

10  about what the government wanted to have happen, says, or said,

11  "What I am not talking about is a process where a company is

12  simply broken up, sold off, and no longer exists."  In other

13  words, the vision, from the beginning, the vision that was

14  built into all the proceedings was that there would be

15  continuity, that the value wouldn't be lost, that the

16  trademarks, the trade names, the product lines, and so forth

17  would continue.  The business would be done -- all the UAW and

18  nonunion workers were taken over into New GM.  And under those

19  clear rules of law relating to the exceptions to the general

20  rule that assets can be taken free and clear of claims, in the

21  face -- under the law, it's not permitted extinguish Robley's

22  cause of action under the facts presented here.  And similarly,

23  it's not permitted because it's a products liability claim.

24  Even Robley could not waive that claim under the law as it

25  exists today.  So it's not a commercial law claim, it's not

1    like a contract claim or those matters having to do with rents

2    and leases and the equity in the company and all those things

3    that are -- basic pension claims that are dealt with in this

4    case, this is a particularly different category of claims, and

5    under the facts presented here, we submit that the Court has to

6    take into consideration these differences.

7            Your Honor, the issues of res judicata might be

8    pertinent if we were asking the Court to rewrite the order or

9    rewrite the master agreement.  We're not doing that.  We're

10   just saying under the facts in this particular case, if you

11   apply them according to their very terms, that Mr. Robley's

12   claim can lawfully be brought against the New GM and that it

13   should not be dismissed, or he shouldn't be ordered to dismiss

14   it.  And so I can only say that if another lawyer stood here

15   and made similar arguments, I can only say that in the ruling

16   of the Court, there is no analysis of the exceptions to the

17   general rule; there is no real finding that in a products

18   liability matter, that the facts presented in this case having

19   to do with product line and continuation and what I've just

20   covered that there's no finding that those exceptions don't

21   apply; let me put it that way.  The facts clearly comport with

22   the decisions we've cited in our filing that apply those

23   exceptions under the facts presented in this particular case.

24   So I'm, again, I'm not arguing for anybody but Shane J. Robley,

25   but he is in the position in which without the finding of the

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 37 of 77

Page 37

1    Court on this motion and objection which we've filed that would

2    enable him to go forward in this case, he's without recourse.

3    And that is simply unjust.  And we're here seeking justice for

4    Mr. Robley.

5         The Court has indicated that the Court would be

6    amenable to a stay pending appeal, and I was going to ask for

7    that if the Court is inclined to rule against our objection

8    because this Court and the Second Circuit have both noted that

9    there is a conflict among the circuits as to this issue of

10   successor liability and the extent to which it can be

11   extinguished.  And so it is a matter of vital importance to Mr.

12   Robley, and so I would ask the Court to give us a chance to do

13   that, if we have to.

14        But I would submit, Your Honor, that this Court has

15   the power to interpret its own orders; this Court has the power

16   to rule further on particular facts and circumstances presented

17   in a matter of such as we're hearing today.  I would submit,

18   Your Honor, that the contentions of GM that this particular

19   issue regarding res judicata or concerning successor liability

20   in a case like Mr. Robley's is res judicata on the record does

21   not appear.  In other words, what the record shows is the Court

22   found that it had the power to approve that provision and

23   approve the agreement with those provisions in it.  And

24   certainly, the drafters of that agreement did all they could to

25   cover the waterfront; there's no question about that.  So the

Page 38

1    Court found that it has the power under Section 363 to do that,

2    but Section 363 is not a federal preemption statute.  In fact,

3    there are cases that say that if you have federal preemption,

4    it has to be expressed by Congress.  And in fact, Section 363

5    defers to state law under subsection (f).  So we don't have a

6    situation where federal law trumps state law or anything of

7    that sort.  What we have is res judicata on the ability of this

8    Court to enter an order under the facts presented back there in

9    June and July -- as the Court said, 4th of July -- the Court

10   had the power to go ahead and approve the sale.  But just

11   having the power doesn't mean it's right to do something that

12   works an injustice.  And that's why we're here today.  It's an

13   opportunity, really, in the case of this individual who has no

14   other way to protect himself or to have recourse in the law to

15   be able to proceed with his case.

16          And so Your Honor, we respectfully submit that Mr.

17   Robley should be allowed to proceed with this case.  I would

18   only close by saying I did a little bit of math -- I'm not

19   really good with these large numbers, but I determined that in

20   the last quarterly report of GM before -- and the Court refers

21   to this in its ruling -- before the bankruptcy filing that I

22   think the amount of contingent liability for product liability

23   claims was 974 million dollars, which is 1/75,000th of the

24   value of the New GM.  So we're talking about, even though it's

25   of enormous importance to an individual like Shane J. Robley,

1   we're talking about an amount that is miniscule to GM and New

2   GM, either Motors Liquidation or to GM, but it's miniscule in

3   this case; let me put it that way.  I feel a little bit like a

4   mosquito on the back of an elephant.  But I'm here.  And Your

5   Honor, that's not to minimize the importance of everything that

6   has happened, but it is to say that the Court has an

7   opportunity here to do justice, and we just ask the Court to

8   take that opportunity and to rule -- rule in denial of the

9   motion made by General Motors.

10          THE COURT:  Thank you.  Mr. Novack.

11          MR. NOVACK:  Good morning, Your Honor.  Barry Novack,

12   N-O-V-A-C-K, appearing pro hac vice on behalf of Sanford

13   Deutsch, personal representative of the estate of Beverly

14   Deutsch.

15          Your Honor, I appreciate the fact that you pointed out

16   that language from Section 2.3(a)(ix) because that is the very

17   language that we incorporated in paragraph 3 of our third

18   amended complaint which brings us here today.  I'm not going to

19   talk about what the New GM did not accept in terms of

20   liability.  I'm going to talk about what they agreed to accept

21   because I think that brings this case into focus.

22          As I stated in my letter of February 9, 2010, which is

23   attached as an exhibit, I believe it's Exhibit M or N to the

24   motion, the section in question says that the New GM will

25   "accept all liabilities to third parties for death, personal

Page 40

1   injury, or other injury to persons or damage to property caused

2   by motor vehicles designed for operation on public roadways

3   which arise directly out of accidents, incidents, or other

4   distinct and discrete occurrences that happen on or after the

5   closing date and which arise from such motor vehicle's

6   operation or performance."  Paragraph 3 of the third amended

7   complaint brought in the wrongful death action says, "the

8   events giving rise to this cause of action stem from an

9   automobile accident that occurred at or near Beverly Boulevard

10  and Formosa Avenue, Los Angeles, California, and arise directly

11  from a distinct and discrete occurrence that happened on August

12  2nd, 2009, namely the death of Beverly Deutsch from injuries

13  sustained in the accident."  It appears from the language where

14  they accept liability for accidents, incidents, or other

15  distinct and discrete occurrences that happened after the

16  creation of New GM is to exclude any claims that were ripe and

17  could have been brought prior to the creation of the New GM,

18  and that they will accept all claims that arise after the

19  creation of the New GM.  While it is true that the accident

20  involving Beverly Deutsch happened two years earlier, she was

21  in a coma for a long period of time, she died from

22  complications of the injuries she received, and died on August

23  2nd, 2009.  The language that forms the order using the words

24  "other distinct and discrete occurrences", we contend, without

25  any definition of those words in the agreement and order, that

MOTORS LIQUIDATION COMPANY, et al.

Page 41

1    the death of Beverly Deutsch arising from injuries that

2    preceded the creation of New GM, that death was a distinct and

3    discrete occurrence.  Those words, we believe, uniquely allow

4    the heirs of Beverly Deutsch to bring a wrongful death action,

5    a new action, a statutory action that did not exist prior to

6    the creation of the New GM.  So we're talking about a unique

7    set of circumstances, and all we have to look at is the very

8    language that was agreed to by the New GM, namely, was this an

9    accident that happened afterwards?  No.  Was this an incident

10   that happened afterwards?  Perhaps.  However, was this a

11   distinct and discrete occurrence that happened afterwards?

12   Yes.  And because there is no definition of what a distinct and

13   discrete occurrence is, if within the four corners of the

14   agreement, we can bring our case into the category of cases

15   that they have agreed to accept, then the language should be

16   construed against them and in favor of my client and allow the

17   wrongful death action that did not exist prior to the creation

18   of the New GM to proceed.  And that is all I have to say on the

19   subject, Your Honor.  Unless the Court has any questions?

20           THE COURT:  No, but before you reply, Mr. Karotkin, I

21   want to take a couple notes.

22           Thank you.

23           MR. NOVACK:  Thank you.

24           THE COURT:  Mr. Karotkin.

25           MR. KAROTKIN:  Thank you, Your Honor.  Stephen

Page 42

1    Karotkin for General Motors, LLC.

2         Let me address Mr. Novat (sic) -- I'm sorry, Novat? --

3    Novack first, and I think there's actually a very simple

4    answer, when you look at the language that Your Honor referred

5    to and that was referred to by counsel.  When he refers to a

6    distinct and discrete occurrence, simply put, it is not a

7    distinct and discrete occurrence independent of the accident or

8    incident which took place prior to the closing.  It merely

9    flows from that.  And for this to make any sense, it has to be

10   a distinct and discrete occurrence independent, totally

11   independent from what happened prior to the closing, which was

12   when the accident occurred, and I think that that, Your Honor,

13   is the only explanation of that language that makes sense and

14   is very clear from the provisions of the MSPA.

15        Now, going back to Dr. Sizemore --

16        THE COURT:  Is it, Mr. Karotkin?  Or should I or any

17   other judge conclude that when the extra words "other distinct

18   and discrete occurrences" were added, they were added for some

19   reason?

20        MR. KAROTKIN:  No, I don't think so.  They were added

21   to cover, perhaps, something other than an accident or incident

22   that occurred prior to the closing, but they certainly weren't

23   added to cover something which arose directly from the event

24   which occurred prior to the closing, Your Honor.  That would

25   not make any sense at all.  You can't divorce what happened to

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 43 of 77

Page 43

1    Ms. Deutsch from what occurred prior to the closing.  It arose

2    directly from that.  It's not an independent or discrete

3    occurrence.

4          May I proceed?

5          THE COURT:  Yes, you may.

6          MR. KAROTKIN:  With respect to Dr. Sizemore, I don't

7    believe that Dr. Sizemore has raised anything to support a

8    continuation of the lawsuit against General Motors, LLC.

9    Whether or not -- and I believe this would be true for Mr.

10   Robley as well -- I think they try to sort of cloud whether or

11   not they have a right to file a proof of claim at this point or

12   not, whether there is an independent basis to file a late proof

13   of claim, but that's not the issue here today, and that can be

14   addressed at another time.

15         The issue here today is whether or not they can

16   continue the action as against New GM, and I think that the

17   facts clearly demonstrate that Dr. Sizemore cannot do that.  As

18   I said, to the extent that Dr. Sizemore believes she was

19   mislead, to the extent she believes that she received

20   inconsistent information from people from my firm, which, Your

21   Honor, we hope is not the case and we expect is not the case,

22   again, that can be addressed by Your Honor in the context of

23   whether or not Dr. Sizemore wishes to file a claim.  I think,

24   and I'm not sure, but I think that she did indicate or

25   certainly did suggest that she did receive notice of the bar

Page 44

1    date.  And notwithstanding that, our files do not reflect that

2    she filed a proof of claim.

3         With respect to Mr. Robley and Mr. Rutledge's

4    argument, he acknowledged -- he acknowledged on the record that

5    General Motors or MLC did not know about his claim at the time

6    that notice was given of the sale hearing, or for that matter,

7    at the time of the sale hearing.  So under those circumstances,

8    publication notices, as you found, Your Honor, was appropriate.

9    Moreover, and again, I think that Your Honor indicated this

10   again, all of the issues -- all of the issues that he would

11   have raised in this court had he been given notice were

12   squarely addressed by Your Honor.  His suggestion that Your

13   Honor did not consider issues of successor liability clearly is

14   not the case.  As you indicated, Mr. Jakubowski and others

15   raised that issue with you; in fact, Mr. Jakubowski took it up

16   to Judge Buchwald in the district court.  And again, all of the

17   issues that were raised here, all of the issues as to allegedly

18   that this claim is just a miniscule part of the assets of New

19   GM, were raised and rejected by Judge Buchwald.  And all of

20   those issues were raised again before Your Honor.

21        The first we heard that Mr. Rutledge or Mr. Robley

22   received some correspondence from my office was when he was

23   standing up here today.  None of that is reflected in the

24   pleadings.  And again, Your Honor, to the extent that Mr.

25   Robley believes he is entitled to file a late proof of claim, I

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 45 of 77

Page 45

1     find it a bit curious that they haven't done anything yet.  I

2     find it a bit curious that in January of this year, he was

3     advised of the fact that the assets had been sold.  Again,

4     nothing happened; he didn't make any effort to file a proof of

5     claim.  And basically what Mr. Rutledge is asking Your Honor to

6     do is to rewrite -- to rewrite your sale order solely with

7     respect to Mr. Robley.  And we suggest, Your Honor, that that

8     is completely, completely inappropriate.

9              I'm not sure I understand his request for a stay

10    pending appeal; that can be addressed at a later time.  I think

11    Your Honor did indicate that you would hold things in

12    abeyance --

13             THE COURT:  Well, I understood him to be asking for

14    the kind of relief that I had asked you about in your opening

15    remarks.

16             MR. KAROTKIN:  And again, as to the pending appeal,

17    and to the extent that those are not final, again, we have no

18    objection to that.  But to the extent that he's seeking an

19    independent stay-pending appeal with respect to whatever ruling

20    Your Honor may make today, that's a different issue which we

21    would like to address, if that's the case.  And unless you have

22    any questions, that's all I have to say.

23             THE COURT:  No, thank you.  Wait -- you have a request

24    to confer.

25             MR. KAROTKIN:  And again, I'd just like to point out

MOTORS LIQUIDATION COMPANY, et al.

```
1    one other thing.  In Section 2.3(b)(ix) of the MSPA, which is

2    liabilities retained by Old GM, it specifically says "all

3    product liabilities arising in whole or in part from any

4    accidents, incidents, or other occurrences that happened prior

5    to the closing date".  And I think that's consistent with what

6    I said before in the appropriate interpretation of the section

7    dealing with assumed liabilities.

8              THE COURT:  All right, very good.

9              MR. KAROTKIN:  Thank you, sir.

10             THE COURT:  Thank you.

11             Any surreply limited to remarks that were made in

12   reply?  Mr. Novack?

13             MR. NOVACK:  Yes, Your Honor.  With response to -- in

14   response to what counsel just read, on page 6 of the motion,

15   quoting from section --

16             THE COURT:  The underlying motion, Mr. Novack?

17             MR. NOVACK:  Yes, Your Honor.

18             THE COURT:  Give me a moment, please.  All right.

19             MR. NOVACK:  Page 6, paragraph 46, it says, "except

20   for the assumed liabilities expressly set forth in the MSPA,

21   none of the purchaser" et cetera, et cetera "shall have any

22   liability for any claim that arose prior to the closing date,

23   relates to production of vehicles prior to the closing date, or

24   otherwise is assertable against the debtor or is related to the

25   purchased assets prior to the closing date.
```

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 47 of 77

Page 47

1          THE COURT:  Give me a moment, please.  I'm sorry,

2     where were you reading?

3          MR. NOVACK:  Page 6 of your motion.

4          THE COURT:  Did you say paragraph 46?

5          MR. NOVACK:  It's -- they're quoting from paragraph 46

6     of the sale order, I believe.

7          THE COURT:  Okay, continue please, Mr. Novack.

8          MR. NOVACK:  Thank you, Your Honor.  That language has

9     to be looked at in conjunction with Section 2.3(a)(ix) because

10    paragraph 46 deals with claims that arose before the creation

11    of the New GM.  Our claim for wrongful death did not arise it,

12    we did not have an assertable claim, there is no cause of

13    action for anticipatory wrongful death.  So if you look at

14    paragraph 46 and then look at the language in 2.3(a)(ix), we

15    have a situation where Beverly Deutsch's death does fall within

16    the appropriate framework to be brought following the creation

17    of the New GM.

18          The use of the word "or" is interesting.  Counsel

19    argues that there has --

20          THE COURT:  "Or" in 46 or "or" in 2.3(b)(ix)?

21          MR. NOVACK:  In 2.3(a)(ix).  GM argues that the

22    occurrence has to be independent.  Well, the language is

23    "accident, incident, or".  They're distinct and unique.  And

24    the word "occurrence".  Occurrence is something which happens.

25    We have an occurrence, something which happened after the New

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 48 of 77

Page 48

1    GM was created.  So in order to give meaning to this language,

2    and I note that GM's counsel did not give the Court an example

3    of what would constitute a distinct and discrete occurrence

4    that happened afterwards.  I'm giving the Court an example.

5    Beverly Deutsch is an example of a discrete -- distinct and

6    discrete occurrence that happened afterwards.  Doesn't violate

7    the language.  In fact, it's in conformance with the language,

8    and it's consistent with the intent of what types of claims

9    should be covered by the New GM when you look in terms of what

10   claims are not going to be covered.  Claims that preexisted do

11   not continue on.  We have a totally new, independent claim that

12   did not exist at law or in fact until after the New GM was

13   created.  That claim falls within the distinct and discrete

14   occurrence section.

15          Had they merely said "accident", we would not have an

16   accident, a new accident that occurred.  They could have said

17   "accident that happened afterwards", and that would cover

18   somebody who was injured before and died afterwards.  But they

19   didn't do that.  They expanded what they will accept.  They

20   will accept accidents that happened afterwards; we don't have

21   that.  They will accept incidents that happened afterwards;

22   questionable, incident is not defined.  And they will accept

23   distinct and discrete occurrences that happened afterwards.  We

24   have such a situation.  We don't have to twist words.  We don't

25   have to modify agreements, we don't have to look for

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 49 of 77

Page 49

1   exceptions.  We merely have to apply the very language upon

2   which they have accepted liability, and Beverly Deutsch's case

3   falls within the four corners of that language.  Thank you,

4   Your Honor.

5           THE COURT:  All right, very good.  Dr. Sizemore?

6           DR. SIZEMORE:  I just want to impose one more time,

7   and I thank you for your patience.  I -- the only thing I've

8   come to ask for is time.  And I understand if there were any

9   irregularities, I am completely agreeable to amend those

10  irregularities.  But I would ask for the time to be able to do

11  that.  I take responsibility for all of my own actions, but the

12  only reason I elaborated on the activities that had happened

13  during my proceedings was to persuade you that I don't think

14  I'm the only one to blame for the irregularity that happened.

15  So extending me the time is only because I just don't think it

16  was all my fault.

17          But -- and the proof of claim form was mentioned to me

18  on or about December 16th by -- during a phone conversation

19  with Ms. Benfield which I have documented in my cell phone.

20  When she mentioned the proof of claim form, she mentioned that

21  the deadline for me to file that was November 29th.  And she

22  had had conversation with me prior to November 29th, some time

23  in October -- I'd have to check my records -- and never

24  mentioned the proof of claim form.  So if that were still

25  available, I would have done that.

Page 50

1          And the other thing I wanted to ask the Court -- if

2     it's improper, I apologize -- but I wanted to know if the

3     bankruptcy laws prohibited action against the Old or New GM

4     regarding laws pertaining to negligence or fraud or any

5     accusation in those departments.  Do the same bankruptcy laws

6     apply to tort actions in those areas, so that I can avoid

7     having to come back if I were to consider filing an action.

8          THE COURT:  Well, forgive me, Dr. Sizemore.  I can't

9     give you legal advice.  I can rule on issues that are before

10    me.  And that's what I'm going to do.

11          DR. SIZEMORE:  Okay.

12          THE COURT:  Thank you.  Okay, Mr. Rutledge, did you

13    have any final surreply?  Again, limited to anything that Mr.

14    Karotkin said the second time around.

15          MR. RUTLEDGE:  Your Honor, with respect to the

16    argument put forth by GM's counsel, I first want to take

17    exception to the statement that Dr. Sizemore or Mr. Robley

18    cloud the issue with respect to filing a proof of claim or any

19    conclusions -- excuse me -- that might be drawn in reference to

20    what we're discussing today regarding the timing of filing a

21    proof of claim, but only to say that if that were a route that

22    were available, it would -- it would appear, Your Honor, that

23    it would be working counter to the arguments that we're putting

24    forth with the Court today, but certainly we leave open --

25          THE COURT:  Well, lawyers do that to each other all

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 51 of 77

Page 51

1    the time, I think, don't they, Mr. Rutledge?

2         MR. RUTLEDGE:  Pretty much, Your Honor, I would agree.

3    But secondly, more importantly, the contention that the Robley

4    issues were decided by Judge Buchwald in the matter that was

5    taken to the district court on appeal, I did read the decision

6    of Judge Buchwald and find that, as a matter of fact, she

7    deliberately did not rule on the substantive issues of that

8    appeal.  She deliberately found that Section 363(m) of the

9    Bankruptcy Code controlled and that the fact that the

10   appellants had not come before this Court and asked for -- or,

11   obtained a stay foreclosed that appeal.  Whether that -- I

12   believe the decision on that was April 13th of this year.  And

13   whether that, in turn, will be appealed, I think is still an

14   open issues.  But I would simply say that on the record of the

15   decisions rendered either in this court or by Judge Buchwald in

16   the district court, there is no specific finding or ruling on

17   the issue of the exceptions to the general rule when the assets

18   can pass free and clear of liens and encumbrances.  And there

19   is no ruling with respect to our contentions specifically

20   related to the product liability character of our cause of

21   action.  So I think it would be a misunderstanding to say that

22   that was the case.

23        And finally, with respect to comments of counsel

24   pertaining to notice, certainly there was a certificate of

25   notice filed by counsel for GM.  Certainly, there was notice by

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 52 of 77

Page 52

1    publication.  But the facts here are really identical to the

2    facts that were in the Savage Arms case.  It doesn't really

3    matter why the person in Robley's situation didn't get notice.

4    What is of most importance was that there was a failure to meet

5    the requirements of procedural due process set forth in Mullane

6    v. Central Hanover Bank and Trust.  And procedural due process

7    or finding that it fails to meet that standard does not require

8    that we prove that GM intentionally left Mr. Robley out in the

9    cold.  It simply calls for an analysis whether the notice that

10   was given was reasonably calculated to reach him and give him

11   an opportunity to appear and respond.  And we simply say that,

12   in his case, it does not meet the procedural due process

13   requirement.

14        The other issues that Mr. Karotkin raised on his

15   rebuttal, Your Honor, we submit are -- to say that we're trying

16   to go back and rewrite the agreement or trying to ask the Court

17   to modify its order would be a misstatement.  What we're

18   asking, Your Honor, is Section 7.1 of the agreement says that

19   the liabilities of persons like Robley would be barred to the

20   extent permitted by law.  So the agreement is all we need from

21   the point of view of stating his position.  And if you read the

22   provisions of the order, the order itself says, "except as

23   expressly permitted or otherwise provided by the MSPA or this

24   order", and then it goes on to state the general proposition

25   that claims are barred.  So that exception, Your Honor, is

Page 53

1    relevant in Mr. Robley's case.  The fact that there is a

2    failure to meet the minimum requirements of procedural due

3    process, I think it's difficult for counsel to accept that, but

4    that fact exempts Mr. Robley from the constraints that GM --

5    New GM tried to build into the sale agreement.  And the

6    consequences of a failure to meet substantive -- or, procedural

7    due process in a bankruptcy case are well stated in the Savage

8    Arms case and the same results that pertain there should

9    pertain in the case of Mr. Robley.

10           THE COURT:  All right, thank you.

11           All right, folks, I want you to take an early lunch, a

12   long lunch, and to be back here at 1 o'clock p.m. at which time

13   I will issue a ruling, or as soon as practical thereafter.

14           We're in recess.

15       (Recess from 11:13 a.m. until 1:32 p.m.)

16           THE COURT:  I apologize for keeping you all waiting.

17           In these jointly administered cases under Chapter 11

18   of the Bankruptcy Code, General Motors, LLC, or New GM as we

19   commonly call it, moves for an order of this Court, A,

20   enforcing a previous order of this Court, B, enjoining certain

21   plaintiffs from prosecuting or otherwise pursuing certain

22   claims asserted against New GM, and C, directing those

23   plaintiffs to promptly dismiss New GM from pending litigation

24   with prejudice.

25           The motion is granted in substance, subject to the

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 54 of 77

Page 54

1   refinement discussed below, to the extent it would affect those

2   who did not object, Dr. Terrie Sizemore, Shane J. Robley, and

3   Sanford Deutsch, to the extent Mr. Deutsch asserts claims other

4   than his wrongful death claim.  The motion is continued for a

5   subsequent clarification of the record, and if necessary, an

6   evidentiary hearing, concerning the claims asserted by Mr.

7   Deutsch for his wife's wrongful death after the closing, and in

8   particular, to ascertain the exact language in the final form

9   of the ARMSPA and the reasons for any changes.  The following

10   are the bases for this determination.

11          After sufficient notice -- and I'll come back to the

12   matter of notice -- and upon an evidentiary record, an

13   extensive one, on July 5th, 2009, I entered an order

14   authorizing the sale of substantially all of the debtors'

15   assets to the predecessor of New GM pursuant to an amended and

16   restated master sale and purchase agreement.  We commonly call

17   that document the ARMSPA.  Pursuant to the ARMSPA and the

18   related sale order, New GM agreed to assume certain liabilities

19   of the debtors.  The ARMSPA enumerated with substantial but not

20   total clarity which liabilities would be assumed by New GM, and

21   it made clear that all other liabilities would be retained by

22   the debtors.  With respect to product liability claims, the

23   form of the ARMSPA dated "as of June 26th, 2009" provided in

24   Section 2.3(a)(ix), "The assumed liabilities shall consist only

25   of the following liabilities of sellers."  And I'm omitting.

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 55 of 77

Page 55

1    "(ix) All liabilities to third parties for death, personal

2    injury, other injury to Persons or damage to property caused by

3    motor vehicles designed for operation on public roadways or by

4    the component parts of such vehicles and in each case

5    manufactured, sold, or delivered by sellers (collectively

6    "Product Liabilities"), which arise directly out of" and I'm

7    emphasizing, "accidents, incidents, or other distinct or

8    discrete occurrences that happened on or after the closing date

9    and arise from such motor vehicle's operation or performance."

10   It's the end of the lengthy quote.  By contrast, a first

11   amendment to amended and restated master sale and purchase

12   agreement had a different language for Section 2.3(a)(ix)

13   stating, with respect to the language I just emphasized,

14   "accidents or incidents" that happen on or after the closing

15   date.

16          Now, in oral argument on this motion, I asked whether

17   the language that had been used in the briefs by each of the

18   parties, which was the latter language, was the wrong language,

19   in terms of describing what the parties, Old GM and New GM, had

20   agreed to, and either out of good manners or confusion, nobody

21   corrected me, or perhaps I was corrected, but in a way so

22   subtle that I missed it.  But when I looked back at that

23   language over the lunch hour, I now wonder whether you all got

24   it right and that the second language I just read trumps the

25   first.  But I have no evidence in the record of the exact order

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 56 of 77

Page 56

1    of these seemingly different contractual provisions or

2    especially the reasons for the difference.  And I think that

3    the difference could possible change the result.

4         However, for litigants other than the Deutsch family

5    where Ms. Deutsch's injury was before the sale and her death

6    came after, and in all other respects, the facts are much

7    clearer and require neither supplementation nor discovery.  The

8    sale order makes clear that New GM was purchasing the assets

9    free and clear of all liens, claims, encumbrances, and other

10   interests including any rights or claims based on any theory of

11   successor transferee, derivative or vicarious liability, or de

12   facto merger or continuity of any kind or character.  These

13   provisions in the sale order were not slipped into the order

14   with stealth but were hotly contested before me.  One lawyer,

15   in particular, Steve Jakubowski, litigated them vigorously and

16   at length both before me and on appeal.  I dealt with the

17   successor liability issue extensively in my written decision,

18   and the appeal by Mr. Jakubowski from that decision was

19   dismissed by the district court where my decision was also

20   affirmed.

21        Moreover, the sale order contained broad provisions

22   prohibiting and enjoining any action or proceeding by any

23   individual or entity to enforce or collect any claim against

24   New GM on account of any claim against the debtors other than

25   with respect to the assumed liabilities.

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 57 of 77

Page 57

1          Since the debtors and New GM closed, pursuant to the

2    ARMSPA on July 10, 2009, a date that I'll refer to as the

3    closing date, six lawsuits have been filed against New GM

4    asserting product liability claims based on accidents or

5    incidents that occurred prior to the closing date.  New GM has

6    informed these plaintiffs of its position that the provisions

7    in the ARMSPA and the sale order preclude them from pursuing

8    their claims, but those plaintiffs have failed to dismiss their

9    lawsuits against New GM.  As a result of the plaintiffs'

10   refusal or failure, New GM brought this motion before me

11   seeking to enforce the sale order.

12          Of the six plaintiffs named in New GM's motion, three

13   have filed formal objections, those objectors being Shane

14   Robley, Terrie Sizemore, and Sanford Deutsch.  Each objection

15   presents somewhat different arguments, and I'll address them in

16   order of increasing difficulty.

17          Turning first to dr. Sizemore's objection, she argues

18   that New GM must remain a defendant in litigation that she

19   commenced on a wholly prepetition accident until she is able to

20   complete discovery on certain matters that have been fleshed

21   out only in part.  But her argument is, of course, contrary to

22   the broad language in the sale order that enjoins any action or

23   other proceeding in any judicial proceeding taken against New

24   GM on account of any claim against the debtors other than

25   that -- than assumed liabilities as that term is defined in the

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 58 of 77

Page 58

1   sale order.  So we must look to the ARMSPA, rather than the

2   issues relating to the underlying claims, to ascertain the

3   extent, if any, to which the ARMSPA covers her claims as an

4   assumed liability.

5          That's a matter as to which she made no substantive

6   arguments.  I find no fault with her having acted as she did,

7   especially in light of the fact that she's a pro se litigant,

8   and certainly I wouldn't think of imposing sanctions on her,

9   and I do not do so now.  But the issue before me is,

10  nevertheless, whether her lawsuit must be brought to a halt, or

11  putting it differently, whether she can't bring it -- continue

12  it anymore, and the answer is that she can't continue it

13  anymore.  That's especially so since the discovery she seeks

14  relates to the merits of her claims as contrasted to the

15  content or intent of the ARMSPA whose terms defined the extent

16  to which she could or could not properly proceed.

17         Without dispute, Dr. Sizemore was injured in a

18  prepetition accident.  As relevant here, the ARMSPA

19  unequivocally provides that for claims to have been assumed by

20  New GM when they are based on an accident taking place at some

21  point in time, those accidents to be allowed to be assumed by

22  New GM must have taken place on or after the closing date.  Dr.

23  Sizemore simply doesn't qualify under that language.

24         Since Dr. Sizemore's claims result from an accident

25  prior to the closing date, she might have a prepetition claim

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 59 of 77

Page 59

1    against Old GM, an issue that I haven't been asked to decide

2    today and which I'm not currently deciding.  But her claim, if

3    any, is certainly not an assumed liability.  Therefore, Dr.

4    Sizemore will be stayed from taking any action against New GM

5    on account of or arising from her preclosing date accident,

6    including for the avoidance of doubt, continuing litigation

7    against New GM for the purpose of conducting discovery on any

8    issue.

9            Turning next to the objection filed by Shane Robley,

10   Mr. Robley argues that New GM's motion should be denied

11   because, one, Mr. Robley was deprived of procedural due process

12   because he didn't receive actual notice of the sale motion that

13   led to the sale order; two, the sale to New GM did not convey

14   those assets free and clear of his product liability claim; and

15   three, that selecting July 10, 2009 as the closing date was

16   arbitrary, capricious, and unjust, or, putting it somewhat

17   differently, that I should force New GM to assume his and

18   perhaps other liabilities by reason of my notions of equity.

19           New GM disputes each of those contentions, and on the

20   facts and law here, I must agree with New GM.  It's agreed by

21   all concerned that Mr. Robley didn't get mailed a personal

22   notice of the 363 hearing that resulted in the sale order, very

23   possibly because as of that time, Mr. Robley had not sued

24   either Old GM or New GM yet.  It's also agreed that Old GM and

25   New GM did not give personal notice of the 363 hearing to all

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 60 of 77

Page 60

1    of the individuals who had ever purchased a GM vehicle, and

2    instead, supplemented its personal notice to a much smaller

3    universe of people by notice by publication.  It's also

4    undisputed that I expressly approved the notice that had been

5    given in advance of the 363 hearing including the notice by

6    publication, which I found to be reasonable under the

7    circumstances.

8         Mr. Robley relies on the First Circuit's decision in

9    Western Auto Supply Company v. Savage Arms, Inc., 43 F.3d 714

10    (1st Cir, 1994), in which the First Circuit Court of Appeals,

11    speaking through Judge Conrad Cyr, a highly respected former

12    bankruptcy judge, agreed with the district judge that the

13    bankruptcy court had erred when the bankruptcy court enjoined

14    prosecution of product line liability actions brought against

15    the purchaser of the debtor's business for lack of notice.  But

16    the critically important distinction between this case and the

17    Savage Arms case is that here, and not there, notice was also

18    given by publication.  We all agree that due process requires

19    the best notice practical, but we look to the best notice

20    that's available under the circumstances.  Here, under the

21    facts presented in June of 2009, GM didn't have the luxury of

22    waiting to send out notice by mail to hundreds of thousands of

23    GM car owners, and instead gave notice by publication, which I

24    approved.  In Savage Arms, the debtor "conceitedly made no

25    attempt to provide notice by publication" (43 F.3d at 721) and

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 61 of 77

Page 61

1   the notice that was given was never determined, "appropriate in

2   the particular circumstances" (Id. at 722).  In other words,

3   the First Circuit found it significant that the debtors in

4   Savage Arms didn't do the very thing that was done here.

5           As I've indicated, I've already determined that notice

6   was appropriate in the particular circumstances, and provided

7   for that in an order that entered on July 5th, 2009 that

8   remains valid today.  Moreover, it's obvious that the notice

9   was, indeed, appropriate and did what it was supposed to do

10  because it permitted Mr. Jakubowski, in particular, to make

11  effectively and well the very arguments that Mr. Robley's

12  counsel would, himself, have to make either now or back then

13  and which I then considered and rejected.

14          I've already ruled on the arguments dealing with the

15  underlying propriety of a free and clear order cutting off

16  product liabilities claims as set forth in my opinion published

17  at 407 B.R. 463.  Until or unless some higher court reverses my

18  determination -- and neither of the district courts who've

19  ruled on that determination have yet done so (see 2010 W.L.

20  1524763 and 2010 W.L. 1730802) -- they're res judicata, or at

21  least res judicata subject to any limitations on the res

22  judicata doctrine requiring a final order.  And of course,

23  they're stare decisis.  I found these arguments to be

24  unpersuasive last summer, and considering the great deal with

25  which my previous opinion dealt with those exact issues, I am

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 62 of 77

Page 62

1   not of a mind, nor do I think I could or should, come to a

2   different view on those identical issues today.

3           Lastly, of course, I sympathize with Mr. Robley's

4   circumstances, just as I've sympathized with each of the tort

5   victims who have been limited to the assertion of prepetition

6   claims against Old GM.  But I'm constrained to act in

7   accordance with the law, and can't substitute my own notions of

8   fairness, equity, or sympathy for what the law requires me to

9   do.  That's especially so since choosing a closing date

10   required some date to be chosen and there's no evidence in the

11   record to lead me to believe that the closing date was done in

12   any way to particularly target Mr. Robley.

13           Finally, turning to Mr. Deutsch, Mr. Deutsch,

14   understandably, doesn't argue that the personal injury claims

15   he might otherwise be able to assert are prepetition claims.

16   But he argues that because Ms. Deutsch died after the closing,

17   her resulting wrongful death claim didn't come into being until

18   that time.  And he further argues that the death of Ms. Deutsch

19   constituted an incident separate and apart from an event upon

20   which the cause of action accrued.  Thus, he argues, that while

21   the wrongful death claim wasn't assumed because of an

22   "accident" taking place after the closing, it was an "incident"

23   or especially a "distinct and discrete occurrence" as appearing

24   in some of the versions of the ARMSPA.  However, the problem I

25   have is that the record is now confused as to which version of

MOTORS LIQUIDATION COMPANY, et al.

Page 63

1   the ARMSPA I should be looking at, and especially, where there

2   are differences, what are the reasons for those differences?

3        If the language with "other distinct and discrete

4   occurrences" was added, it would broaden the universe of claims

5   that were assumed.  Conversely, if it were deleted, it would

6   narrow them.  I thought, during the course of oral argument,

7   that the language was added, but now I'm not so sure, and I

8   especially don't know the reasons for the changes.  And, so far

9   as I can tell, I received no evidence with respect to the

10  changes, or especially the reasons for them.

11       In any event, "incidents" remains undefined, and it

12  obviously must mean something different from "accidents", which

13  is what we almost always think of as causing product liability

14  claims.  Also, a death is at least seemingly an incident by

15  many common uses of that term.  It's obviously quite different

16  than an accident, and I have to assume that "incidents" was

17  included to say something more than use of the word "accidents"

18  would say.  There's a principle of law under the State of New

19  York whose laws apply to the ARMSPA that contracts are

20  construed, when possible, as to give effect and meaning to

21  every word and expression contained in an agreement.  See, for

22  example, Atwater & Company v. Panama Railroad Company, 246 NY

23  519, Benvenuto v. Rodriguez, 279 A.D. 162.  So I think I or any

24  other Court would be reluctant to disregard whatever was in the

25  agreement besides the word "accident", and we'd all have to

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 64 of 77

Page 64

1   focus on whatever supplementary words there were in any

2   analysis going forward.

3           We all agree, or should agree, that when the cause of

4   action came into being under California law is irrelevant.

5   What does matter is what the ARMSPA says it covers, but at this

6   point, I don't have that answer with sufficient certainty to

7   decide an issue that's obviously of very great importance to

8   the Deutsch family, and I can't decide this aspect of the

9   motion on the existing record.  Accordingly, the portion of the

10  motion that deals with Mr. Deutsch's wrongful death claim will

11  be severed for supplementation of the record.  The remainder of

12  the motion will be granted.  However, though I, of course,

13  think I got it right when I issued the successor liability

14  portion of my early rulings, I'm going to stay, rather than

15  require dismissal of, the litigation brought by the three

16  objectors insofar as I've ruled on their actions so that the

17  objectors won't be prejudiced if my earlier rulings, which now

18  are good law, are modified in any respect material to their

19  claims.  If, after a final order emanating out of the appellate

20  courts, my earlier rulings remain good law, and prepetition

21  claims then still can't be brought against New GM, New GM will

22  be free, if it wishes, to come back to me with a request that

23  they be dismissed, which, as I understand is the third prong of

24  GM's motion before me today.

25          With all of that said, I think it would be helpful if

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 65 of 77

Page 65

1   Old GM reconsider whether it will consent to any of the

2   objectors filing a late proof of claim, and that it likewise

3   consider doing the same for any others who were the subject of

4   this motion and who may also have been told that they shouldn't

5   be proceeding with their lawsuits without also being told of

6   the need to file proofs of claim.  If Old GM is unwilling to

7   consent to that, persons who had those conversations may, of

8   course, file their own motions for leave to file late claims,

9   or they may file them and then defend any motions to dismiss or

10  expunge those claims if based on tardiness grounds.

11          Mr. Karotkin and Mr. Novack, you're to agree with each

12  other on a timetable for supplementing the record and for

13  teeing up the remaining issue.  Mr. Karotkin, I would like you,

14  if you would, to settle an order in accordance with this ruling

15  for the elements of the motion that were granted.

16          MR. KAROTKIN:  Can I ask a question, sir?

17          THE COURT:  Yes, sir.

18          MR. KAROTKIN:  Just so I'm clear about your staying of

19  dismissal, does that mean, Your Honor, that the plaintiffs can

20  actually proceed with the litigation, or is the status quo to

21  be maintained?  I'm not exactly sure what you had in mind.  Or

22  perhaps --

23          THE COURT:  When I say stay -- forgive me for

24  interrupting you, Mr. Karotkin.

25          MR. KAROTKIN:  Sorry.

MOTORS LIQUIDATION COMPANY, et al.

Page 66

1          THE COURT:  When I say stay, I mean that each

2    litigation against New GM that was a subject of your motion

3    must come to a full stop.  They don't have to file a notice of

4    dismissal, but those litigations can't go anywhere, just as if

5    they were in automatic stay.

6          MR. KAROTKIN:  Okay.

7          THE COURT:  If my earlier decision ultimately is

8    affirmed -- or, actually, the converse is a better way of

9    saying it.  If it isn't altered on appeal after all appeals

10   have been exhausted, if New GM wants to come back to me for a

11   supplemental order that those actions that are then stayed be

12   dismissed, my ruling's without prejudice to New GM making any

13   such motion.  But those motions are to go nowhere until or

14   unless my earlier ruling is modified in some way as it affects

15   the successor liability issue.

16         MR. KAROTKIN:  You mean those actions, not the

17   motions.

18         THE COURT:  I'm wondering if I misspoke.

19         MR. KAROTKIN:  I think you said, if I may, Your Honor,

20   "those motions should not go forward".  I think you meant those

21   actions --

22         THE COURT:  Yes.

23         MR. KAROTKIN:  -- or those lawsuits.

24         THE COURT:  Correct.  That's what I meant.

25         MR. KAROTKIN:  All right, thank you, sir.

MOTORS LIQUIDATION COMPANY, et al.

Page 67

```
 1            THE COURT:  Okay, anything else anybody?  Yes, Doctor.

 2            DR. SIZEMORE:  I apologize.  I understand that you

 3     want me to stop the product liability action.  Does that --

 4     there are two actions in Medina County.  One is the product

 5     liability --

 6            THE COURT:  Everything must come to a stop.

 7            DR. SIZEMORE:  Even the action for discovery?

 8            THE COURT:  Yes.

 9            DR. SIZEMORE:  Okay.

10            THE COURT:  There are no sanctions for anything that's

11     happened before, but everything must come to a full stop.

12            DR. SIZEMORE:  By when?

13            THE COURT:  I can give you a reasonable time to

14     comply.  How much time do you need to bring them to a stop?

15            DR. SIZEMORE:  Eight days.

16            THE COURT:  I don't think eight days will be a

17     problem.  Mr. Karotkin?

18            MR. KAROTKIN:  No, sir, that's fine.

19            THE COURT:  That's fine.

20            Yes, sir?

21            MR. NOVACK:  If I heard Your Honor correctly, you said

22     was granted as to Sanford Deutsch as an individual.  Sanford

23     Deutsch as an individual in the third cause of action -- excuse

24     me, in the third amended complaint has not brought claims

25     against the New GM.  His individual claim was for loss of
```

Page 68

```
 1    consortium which was asserted against all defendants except the

 2    New GM, so I do not believe in that regard there is any need

 3    for dismissal with respect to Mr. Deutsch as an individual.

 4    His sole capacity vis-a-vis the New General Motors is as the

 5    personal representative of the estate on behalf of the wrongful

 6    death claims.

 7         THE COURT:  Fair enough, and I think what it might be

 8    helpful for you to do is to put your noodle together with Mr.

 9    Karotkin so that the facts as you've described them and the

10    spirit of my order are reconciled.  The underlying concept was,

11    first, although I didn't speak to it, I had assumed that you

12    can go against anybody other than Old GM and New GM, and that

13    the issue that you had raised that I thought was one of

14    difficulty was for the wrongful death claim that arose when Ms.

15    Deutsch died, but that any other claims you had that you could

16    have asserted earlier would have to be stayed at least until

17    the appellate courts act differently -- that you had asserted

18    against New GM would have to be stayed.  And you're nodding.

19    Are we -- I gather we're on the same page?

20         MR. NOVACK:  Yes, we have not asserted any claims

21    against New GM except wrongful death claims.

22         THE COURT:  Oh, okay.  And that one is what I need

23    further help from you folks on.  I would like -- I won't order

24    it without an opportunity for each side to be heard, but I

25    would like you to put that on hold until we can get this sorted
```

Page 69

1    out before me.

2         MR. NOVACK:  I'm sorry?  To put --

3         THE COURT:  I would like the issue that I couldn't

4    decide today to be put on a temporary hold until I can rule on

5    the remaining issue.  But I will hear argument from you and Mr.

6    Karotkin on that if you think that would prejudice you in some

7    material way.  In other words, on the one issue that I haven't

8    ruled on yet.

9         MR. NOVACK:  I apologize for not following the Court.

10   I thought that the only issue that relates to Mr. Deutsch is

11   whether or not he is able, on behalf of the estate, to bring a

12   wrongful death claim for the death that arose after the

13   creation of the New GM, which would depend upon the

14   interpretation of whatever would be the relevant language,

15   which is still subject to some uncertainty that we are going to

16   clarify.  I thought that was the --

17        THE COURT:  Exactly.

18        MR. NOVACK:  Okay.

19        THE COURT:  And what I'm saying is until I can rule on

20   that remaining issue, my tentative, California-style, is that I

21   would like your action in California on that issue to remain in

22   a holding pattern until the open issues can be determined.

23        MR. NOVACK:  Okay, so that would mean, as far as

24   California is concerned, that there would be no discovery

25   either to or from the New GM in that wrongful death action

09-50026-mg    Doc 5961    Filed 06/03/10    Entered 06/03/10 12:42:00    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 70 of 77

Page 70

 1    until this matter is resolved.

 2         THE COURT:  Yes.

 3         MR. NOVACK:  Yes.

 4         THE COURT:  If you want to be heard on that -- if

 5    there's some material prejudice to you, I'll hear that, but

 6    that's what I would prefer to do.

 7         MR. NOVACK:  Let me just briefly address the issue.

 8    There is outstanding discovery as to GM on that issue with

 9    respect to certain protocols and testing.  Some of that

10    discovery can be had from codefendants such as Autoliv and

11    Takata, and I have agreed to a protective order as to them

12    which may reveal the same documentation that GM would have

13    given us.  There may be some documentation that those two

14    defendants do not have that only GM has, and I would have no

15    way of getting that except against GM.  If GM is no longer

16    going to be a party, New GM, I would have to do third-party

17    discovery as against the New GM for that material.  If they are

18    a party, then obviously, the manner by which I can obtain that

19    information is relieved.

20         I would anticipate, or hope at least, that the

21    remaining issue for Your Honor to consider would be resolved

22    before the need or the dire need for any discovery against

23    GM -- the New GM that I could not get against the other

24    defendants, so I have no problem, currently, with staying --

25    having a mutual stay agreement or an order for mutual stay as

MOTORS LIQUIDATION COMPANY, et al.

Page 71

1    to discovery between plaintiff and the New GM until Your Honor

2    issues a definitive ruling concerning the remaining issue on

3    the contract.

4            THE COURT:  Um-hum.  Mr. Karotkin, do you want to

5    weigh in on this?

6            MR. KAROTKIN:  Do you want me to approach?

7            THE COURT:  It's always as helpful for a guy as tall

8    as you.

9            MR. KAROTKIN:  I think what counsel said is that he's

10   okay with a mutual stay remaining in effect pending your

11   determination.  Hopefully that will be done rather

12   expeditiously, and I guess if it becomes an issue in terms of

13   the discovery he needs, if this takes longer than we expect,

14   then either we can work it out with counsel or we can come back

15   to Your Honor.

16           THE COURT:  You know what I think I'd like to have you

17   guys do on this, see if you can come up with a stip or consent

18   order papering any deal that you guys have.

19           MR. KAROTKIN:  Okay.

20           THE COURT:  If, and I suspect that it's unlikely, you

21   agree to disagree, then you can set it up via conference call

22   that I can deal with it on, but somehow, I have a sense that

23   the two of you folks are going to resolve it satisfactorily

24   without me needing to get involved.

25           MR. KAROTKIN:  I certainly expect we will be able to

Page 72

 1    do that.

 2         THE COURT:  Okay.

 3         MR. KAROTKIN:  Thank you, sir.

 4         THE COURT:  Fair enough.  And Mr. Novack, except for

 5    evidentiary hearings, I will give you permission, if you want

 6    to avail yourself of it, to appear by telephone -- actually,

 7    that's for everybody who is not here in New York City.  I'll

 8    give you permission to appear by telephone and without having

 9    to bring local counsel into the courtroom with you unless you

10    want to.

11         MR. NOVACK:  Thank you.  I appreciate that, Your

12    Honor.  And just one point of clarification, if I may.

13         THE COURT:  Yes.

14         MR. NOVACK:  What time frame would Your Honor -- in

15    terms of Your Honor's schedule, what time frame would Your

16    Honor like for us to work out a briefing schedule with respect

17    to the remaining issue on the Deutsch case.

18         THE COURT:  I'd like you to agree with Mr. Karotkin on

19    that, and again, paper it by a stip or consent order.  If it's

20    reasonable, I'm going to approve it.  Whatever you guys agree

21    upon, as long as it's not pushing this issue way back, will be

22    fine with me.

23         MR. NOVACK:  Thank you, Your Honor.

24         THE COURT:  Very well.  Okay.

25         Yes, sir, Mr. Rutledge.

09-50026-mg   Doc 5961   Filed 06/03/10   Entered 06/03/10 12:42:00   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 73 of 77

Page 73

1        MR. RUTLEDGE:  Yes, Your Honor, I just want to make

2   sure that I understand my part of this.  We will take no

3   further action in the case in the Western District of Tennessee

4   but the Court is holding the requested relief in the motion in

5   abeyance pending the opportunity to appeal the matters that we

6   have brought before the Court today.  Do I have that correct?

7        THE COURT:  I think you did, but I'd rather say it my

8   way.  If it weren't for the fact that the appeal that Mr.

9   Jakubowski brought is, to my understanding, not yet to a final

10  end, and that he may have the right to go to the circuit, or

11  maybe he's already at the circuit -- and one of my problems is

12  that I don't always know what happens to stuff that I issue

13  after it has gone up -- your action is stayed but not dismissed

14  until Mr. Jakubowski's action comes to an end.

15        There is a separate right of appeal which could be of

16  relevance, which is you have the right to appeal my decision

17  which, unfortunately, is against you.  Your time to appeal that

18  order is, of course, a different time to appeal, and that will

19  run from the time of entry of the order that I told Mr.

20  Karotkin to prepare, and not from the time of this dictated

21  decision.  Not from today.

22        MR. RUTLEDGE:  That's my question, Your Honor.  So we

23  will take no further in the case against New GM, but we do have

24  the opportunity to pursue an appeal from the decision today,

25  and also to await the course of appeal that is ahead of us and

Page 74

1    that Mr. Jakubowski possibly is pursuing -- I think that's in

2    the Campbell claim, as I recall.

3            THE COURT:  I think you're right.  You have the right

4    to appeal -- and I think it's an appeal; it may be a motion for

5    leave to appeal; I'm not focusing on that; that's a district

6    court issue, not my issue -- from my order to the District

7    Court of the Southern District of New York, and I can't give

8    you legal advice, but I think you have fourteen days to do that

9    from the time of entry of the order that Mr. Karotkin's going

10   to prepare and which you have the right to comment on, if you

11   choose to.  Assuming that my order is entered and remains in

12   place, I'm going to expect the -- is it in the Western District

13   of Tennessee?

14           MR. RUTLEDGE:  That is correct, Your Honor.

15           THE COURT:  In Memphis, or --

16           MR. RUTLEDGE:  In Memphis, yeah.

17           THE COURT:  I expect that until and unless my order is

18   reversed, my order will be complied with, and if the Campbell

19   action appeal turns out to be successful, if you can't get

20   agreement from Mr. Karotkin as to what to do, you can come back

21   to me from relief in that regard.  I would expect you, though,

22   Mr. Rutledge, that even before Mr. Karotkin's order is entered,

23   that you not do anything that if that order had been entered,

24   would prohibit.

25           MR. RUTLEDGE:  Your Honor, we have not taken any

MOTORS LIQUIDATION COMPANY, et al.

Page 75

1   action.  There's only been a scheduling order that was issued

2   by the Court, and I will take no further action.  But I did

3   want to be clear about what appeals the Court was talking about

4   with regard to the holding a dismissal in abeyance pending

5   appeal.  And I think I understand it, now, Your Honor.

6        THE COURT:  Yeah, because it's been subject to a

7   double entendre, I certainly understand the questions.

8        MR. RUTLEDGE:  Thank you, Your Honor.

9        THE COURT:  Okay.  Anything else?  Anybody?  Okay,

10  thank you very much, folks.  Have a good day.

11       MR. KAROTKIN:  Thank you, Your Honor.

12       (Proceedings concluded at 2:14 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 76

1

2                                    I N D E X

3

4                                    R U L I N G S

5                              Page        Line

6    Pro Hac Vice Motion for    7          7

7    Barry Novack Granted

8

9    Pro Hac Vice Motion for    6          20

10   Roger Rutledge Granted

11

12   Motion of General Motors,  64         11

13   LLC for Entry of an

14   Order Enforcing 363 Sale

15   Order Granted with

16   Respect to Objections

17   Made by Mr. Robley and

18   Dr. Sizemore, Granted In

19   Part with Respect to Mr.

20   Deutsch

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4       I, Dena Page, certify that the foregoing transcript is a true

5       and accurate record of the proceedings.

6

7       **Dena Page**    Digitally signed by Dena Page
                         DN: cn=Dena Page, c=US
                         Reason: I am the author of this
8       _____    document
                         Date: 2010.06.02 16:37:51 -04'00'

9       Dena Page

10

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16      Date:  June 2, 2010

17

18

19

20

21

22

23

24

25