HEARING DATE AND TIME: June 15, 2010 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: June 8, 2010 at 4:00 p.m. (Eastern Time)
REPLY DEADLINE: June 10, 2010 at 12:00 p.m. (Eastern Time)

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                                    :        **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY**, *et al.*,:                   **09-50026 (REG)**
    **f/k/a General Motors Corp.**, *et al.*,                :
                                                             :
            **Debtors.**                                     :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

**REPLY TO**
**RESPONSE TO OBJECTION TO CLAIM OF**
**'Settlement Agreement in Soders v. General Motors Corp. and RodaNast,**
**P.C.' (Proof of Claim No. 44887)**
**AND PETITION TO INTERVENE**

**I.    The Claim of "Settlement Agreement in Soders v. General Motors Corp. and RodaNast, P.C." is Unenforceable Under Applicable Law.**

**A.    Additional Background.**

1. On April 25, 2000, Plaintiff, Donna Soders, through her attorneys, RodaNast, P.C.,[1] filed an action on behalf of herself and a Class of 700,000 to 800,000 Pennsylvania consumers alleging that GM improperly added 1% of the MSRP to invoices for vehicles in violation of Pennsylvania law.  The lawsuit sought reimbursement of this 1% charge for Pennsylvania customers (*e.g.*, $200 for each customer who purchased a $20,000 car, $250 for each customer who purchased a $25,000 car, etc.).

2. On December 15, 2008, Ms. Soders, through RodaNast, and GM entered into a Settlement Agreement[2] releasing the claims of the entire Class against GM in exchange for $200 coupons to Class Members **good only toward the purchase of a new GM vehicle**, a $5,000 incentive award to Ms. Soders, $1.886 million in attorneys fees to RodaNast, and $437,416.92 in expenses to RodaNast.

3. On March 16, 2009, Petitioners here filed an objection to the proposed class action settlement.[3]  Specifically, Petitioners stated that "[s]ince Class Members must purchase a vehicle for tens of thousands of dollars in order

---

[1]    Hereafter "RodaNast."
[2]    *See* Exhibit 3 to RodaNast's Response.
[3]    Exhibit A.

2

to receive their $200 benefit, 'people of lesser financial means will be unable to benefit comparably from the settlement.'" Objection (Ex. A), p. 2, quoting *In re: GM Pick-Up Truck Fuel Tank Prod. Liab. Litig.* 55 F.3d 768 (3d Cir. 1995) (Rejecting another proposed coupon settlement ***involving RodaNast and GM*** presenting similar problems).

4. Petitioners' objection also pointed out that the NACA Class Action Guidelines warn against coupon settlements such as the one proposed by RodaNast and GM, and stated:

> …For most of the class, redemption may not be an option, because they are unwilling or unable to make a future purchase from the defendant. Thus the class members are not equally compensated – some get more, others get less. **This situation is at its most aggravated when the certificate requires purchase of a *new car* or other 'big ticket' item.**[4]

Petitioners further stated that coupons would be "much fairer to Class Members…if coupons could be used to purchase lesser-priced GM products, such as service, repairs or parts."[5]

5. Additionally, Petitioners objected to RodaNast's request for an award of $1.886 million in attorneys fees. Petitioners stated:

> Despite grossly unfair settlement terms for Class Members, Class Counsel seeks, and GM has agreed to pay, up to $1.886 million in attorneys' fees and up to $500,000 in costs. This is not reasonable. The percentage-of-the fund method is preferred when assessing

---

[4] *Id.*
[5] *Id.* at p. 3.

3

>fees in coupon settlements such as this. (citing *In re: Excess Value Insurance Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005) Accordingly, attorneys' fees should be based on the value to class members of coupons redeemed. (citing 28 U.S.C.A. § 1712(a), *et seq.*)[6]

Petitioners further pointed out that "[b]ased on the weakness of this settlement, it appears to be no accident that Class Counsel has asked this Court to approve its fees prior to the deadline for filing all claims. [Class] Counsel's requested fees should be rejected, and, at a minimum, this Court should not determine attorneys' fees until after the claims process is completed."[7]

6. On April 23, 2009, RodaNast filed a brief a requesting (required) court approval of the settlement and responding to objections.[8] At that time, RodaNast reduced its requested fee from $1.8 million to $1.6 million.[9]

7. In justification of its requested attorneys' fees, RodaNast represented to the trial court: "As a cross-check on the reasonableness of Plaintiff's [attorneys'] fee requested, the fee requested represents only about 1% of the potential settlement fund available to the class (between $140 million and $160 million, *i.e.*, 700,000 to 800,000 claims at $200 each)."[10]

---

[6] *Id.* at p. 4.
[7] *Id.*
[8] *See* RodaNast's brief in support of final approval of settlement, attached as Exhibit 4 to RodaNast's Response.
[9] *Id.* at pp. 36-37.
[10] *Id.* at p. 38.

4

8. Five days later, at the April 28, 2009 final fairness hearing, after having received Petitioners' objection to, *inter alia*, RodaNast's requested fee, and after Petitioners' counsel appeared at the hearing to present further oral argument, Mr. Roda *further* reduced his requested fee from $1.6 million to $843,929.37.[11] Despite the imminently looming objection, Mr. Roda self-servingly claimed that he *voluntarily* decided to slash his fee by $1 million at the last second because he "can't help but feel bad" about job losses and paycuts at GM.[12]

9. After the hearing, the trial court approved the settlement.

10. Attorney's fees have been awarded to counsel for objectors where "an objector represented by competent counsel transformed the settlement hearing into a truly adversary proceeding." *Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977).

11. Additionally, the Seventh Circuit has held:

> …[W]hen professionals render valuable albeit not bargained-for services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services. That is the situation of objectors to a class action settlement. **It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the**

---

[11] *See* Transcript of Proceedings Settlement Fairness Hearing, p. 14, attached as Exhibit 1 to RodaNast's Response.
[12] *Id*.

5

> **terms of settlement generally.** This participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee.

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) (internal citations omitted) (emphasis supplied).

12. Here, after Petitioners' lodged the sole objection to RodaNast's requested fee, RodaNast reduced its requested fee by over $1 million.

13. Moreover, objectors are entitled to receive incentive awards for their services in coming forward to oppose an unfair settlement.[13] RodaNast admitted that Petitioners were the only Class Members who came forward to challenge its fee.[14]

14. Following the fairness hearing, counsel for Petitioners communicated to RodaNast his position that the objection caused RodaNast to reduce its fee by over $1 million, and communicated an initial settlement demand of 10% of this benefit, or $100,000. *See Frankenstein, supra,* (Attorney's fees and disbursements totaling 10.5% of value proper). In response, RodaNast initiated an *ex parte* telephone conference with the trial judge, even though counsel for Petitioners was an attorney of record in the case (a violation of Pennsylvania Rule of Professional Conduct 3.5). After a

---

[13] *See, e.g., Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J.Super.) ("a judge may grant an incentive award to an intervenor under appropriate circumstances.")
[14] *See* RodaNast's brief in support of final approval of settlement, p. 37, attached as Exhibit 4 to RodaNast's Response.

hearing, GM's counsel – wisely – elected **not** to join in Mr. Roda's motion requesting, *inter alia*, that the trial court find Petitioners' settlement negotiations to be "frivolous."[15]

15. On May 5, 2009, Petitioners appealed the trial court's ruling to the Pennsylvania Superior Court. That appeal was still pending when GM filed for bankruptcy on June 1, 2009.

### B. <u>RodaNast Did Not Correct Representations to the Trial Court That Later Proved to Be Misleading.</u>

16. On March 22, 2010, RodaNast divulged for the first time that only 1,879 claim forms (out of 700,000 to 800,000 Class Members) were submitted as of July 1, 2009, providing concrete proof of the very concerns voiced by Petitioners in their objection.

17. Thus, instead of a potential value to the Class of $140 to $160 million – which RodaNast presented to the trial court as a "cross-check" for the reasonableness of its fee – the actual value to the Class was a mere $375,800 (1,879 claims at $200 each), or 0.29% of $140 million.

18. While RodaNast alleged that there may be more than one claim on each claim form in ¶26 of its Response, it has provided no evidence to substantiate this claim. "The burden … shifts to the claimant if the objector

---

[15]    *See* transcript of expedited hearing, p. 106, attached as Exhibit 12 to RodaNast's Response.

7

produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations to the claim's legal sufficiency.'" *In re: Oneida Ltd.*, 400 B.R. 384, 389 (Bankr.S.D.N.Y.2009).  Nonetheless, even assuming that each and every consumer claimant purchased <u>two</u> GM vehicles – which is extremely remote – this still only equates to a recovery of $751, 600 (or 0.54% of $140 million).

19.  Amazingly, RodaNast never alerted the trial court of the actual value of the settlement, despite the fact that it was only 0.29% of the $140 to $160 million figure RodaNast used as a basis for justifying the "reasonableness" of its fee award.  As evidenced above, RodaNast felt "obligated" to alert the trial court of other developments (*i.e.*, settlement discussions with objectors) that occurred after the trial court entered its final judgment.

20.  Equally disconcerting, only 1,879 out of 700,000 to 800,000 Class Members may "benefit" from the settlement (or 0.29% of Class Members).

21.  RodaNast, in its brief requesting court approval of the settlement, stated: **"Class counsel know the duties they have in requesting a fee award from the Court:  *a fiduciary duty to the members of the class; a duty to the Court, of which they are officers; and a duty to the judicial process that***

8

*permits the class action procedure.*"[16] It is a fundamental class action principle that RodaNast had a fiduciary duty to each Class Member that prohibited RodaNast from negotiating a settlement that did not provide a fair or reasonable recovery for most Class Members while recovering exorbitant fees for itself.

22. The fee awarded to RodaNast represents nearly 225% of the "value" to Class Members. RodaNast in its own fee request acknowledged that: "The percentage approach is self-explanatory, and is **customarily in the range of 25% to one third of the settlement value.**"[17]

23. The percentage-of-the-fund method is preferred when assessing fees in coupon settlements such as this. *See In re: Excess Value Ins. Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005).

24. Indeed, the Class Action Fairness Act, which was enacted in 2005, was designed to prevent this type of class action abuse by requiring attorneys' fees to be based on the value of coupons redeemed by Class Members. *See, generally,* 28 U.S.C.A. § 1712(a), *et seq.*

25. The Lancaster *Sunday News* aptly characterized the settlement in an article entitled: "UNSETTLING SETTLEMENT; CLASS ACTION LAWSUIT BRINGS A COUPON, GOOD ONLY FOR A NEW GM CAR, TO

---

[16] *See* RodaNast's brief in support of final approval of settlement, attached as Exhibit 4 to RodaNast's Response.
[17] *Id.*, p. 33.

9

CUSTOMERS WHO WERE OVERCHARGED $200-250; LAW FIRM GETS $844,000."[18]

### C. **The Settlement Agreement Was Never Finalized, and the Appellate Court Would Never Affirm the Trial Court's Ruling that the Settlement Was "In all respects, fair, reasonable, and adequate, and in the best interests of the class as a whole."**

26. The Settlement Agreement, although approved by the trial court, never became effective. The "Effective Date of Settlement" in the Settlement Agreement occurs "…if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme Court review is no longer available…" Here, the judgment was on appeal at the time GM filed for bankruptcy.

27. Due to the lack of any meaningful benefit to Class Members, and the outrageous fee awarded to RodaNast, Petitioners are confident that the Pennsylvania Superior Court would **never** affirm the trial court's order approving the settlement as "in all respects, fair, reasonable, and adequate, and in the best interests of the class as a whole."[19]

28. Nonetheless, RodaNast has made a **priority** claim of $1,286,346.00.[20]

---

[18]  *See* Article, attached as Exhibit B to Petitioners' Objection to Claim and Petition to Intervene.
[19]  *See* Judgment Entry, 4/28/2009, attached as Exhibit 2 to RodaNast's Response.
[20]  Exhibit B.

10

29. Accordingly, Petitioners must be permitted to object to Claim No. 44887. *See, e.g., In re: Columbia Gas System, Inc.*, 50 F.3d 233 (3d Cir. 1995).

## II.    The Petition to Intervene Must Be Granted.

30. RodaNast does not oppose, and in fact invites, Petitioners' Petition to Intervene.

31. Petitioners are interested entities since their claims for attorneys' fees and incentive awards are directly tied to and intertwined with the *Soders* claim.

32. Accordingly, Petitioners' request to intervene must be granted.

Respectfully submitted,

/s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors The Gibson Law Firm/George and Karen Kairis (Objectors in *Soders v. General Motors Corp.* class action)

Date:  June 10, 2010

11

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
:
**In re**                                    :    **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY,** *et al.*,   :    **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*,   :
:
        **Debtors.**                        :    **(Jointly Administered)**
:
-----------------------------------------------------------x

## CERTIFICATE OF SERVICE

ROBERT T. GIBSON, ESQUIRE, hereby certifies that a true and correct copy of the foregoing document was served upon the following persons via first-class mail:

Weil, Gotshal & Manges LLP
(Attn: Harvey R. Miller, Esq.,
Stephen Karotkin, Esq.,
Joseph H. Smolinsky, Esq., and
Pablo Falabella, Esq.)
767 Fifth Avenue
New York, New York 10153

General Motors, LLC
(Attn: Lawrence S. Buonomo, Esq.)
300 Renaissance Center
Detroit, Michigan 48265

United States Department of the Treasury
(Attn: Joseph Samarias, Esq.)
1500 Pennsylvania Avenue NW, Room 2312

Motors Liquidation Company
(Attn: Ted Stenger)
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243

Cadwalader, Wickersham & Taft LLP
(Attn: John J. Rapisardi, Esq.)
One World Financial Center
New York, New York 10281

Vedder Price, P.C.
(Attn: Michael J. Edelman, Esq. and
Michael L. Schein, Esq.)
1633 Broadway, 47th Floor
New York, New York 10019

Washington, DC 20220
Kramer Levin Naftalis & Frankel LLP
(Attn: Thomas Moers Mayer, Esq.,
Amy Caton, Esq.,
Lauren Macksoud, Esq., and
Jennifer Sharret, Esq.)
1177 Avenue of the Americas
New York, New York 10036

U.S. Attorney's Office, S.D.N.Y.
(Attn: David S. Jones, Esq. and
Natalie Kuehler, Esq.)
86 Chambers Street, Third Floor,
New York, New York 10007

Carpenter, Lipps & Leland LLP
(Attn: Jeffrey Lipps, Esq.)
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

Office of the United States Trustee
 for the Southern District of New York
(Attn: Diana G. Adams, Esq.)
33 Whitehall Street, 21st Floor
New York, New York 10004

RodaNast, P.C.
(Attn: Joseph Roda, Esq. and
Michelle Burkholder, Esq.)
801 Estelle Drive
Lancaster, PA 17601

Hartman, Underhill & Brubaker LLP
(Attn: Christopher Underhill, Esq.)
221 East Chestnut Street
Lancaster, PA 17602

Respectfully submitted,

 /s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

Date:  June 10, 2010