**Hearing Date:** June 29, 2010 at 9.45 AM (ET)
**Objection Deadline:** June 22, 2010 by 5:00 PM (ET)

KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

- and -

MEYER AND WILLIAMS,
ATTORNEYS AT LAW, P.C.
P. Richard Meyer
Robert N. Williams
350 E. Broadway
P.O. Box 2608
(307) 733-8300

*Co-Counsel to Julie and David Brittingham*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :   Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY, et al.,                         :   Case No. 09-50026 (REG)
f/k/a GENERAL MOTORS, CORP. *et al*.,                       :
                                                            :
                         Debtors.                           :
------------------------------------------------------------X

**MOTION OF JULIE AND DAVID BRITTINGHAM FOR RELIEF FROM THE
AUTOMATIC STAY TO ALLOW THE COMPLETION
<u>OF A PENDING PERSONAL INJURY ACTION</u>**

## **TABLE OF CONTENTS**

JURISDICTION AND VENUE ……………………………………………………. 3

BACKGROUND ……………………………………………………………………..... 3

CERTIFICATION …………………………………………………………………….. 7

GROUNDS TO LIFT THE AUTOMATIC STAY …………………………………… 8

# **TABLE OF AUTHORITIES**

CASES

In re MarketXT Holdings Corp.,
    2009 Bankr. LEXIS 1897, at * 11-12 (Bankr. S.D.N.Y. 2009) ………………………… 9

In re Bally Total Fitness of Greater N.Y.,
    402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) ………………………………………….. 9

Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),
    907 F.2d 1280 (2d Cir. 1990) ………………………………………………….. 8, 9, 10


OTHER AUTHORITIES

28 U.S.C. § 157 ……………………………………………………………………………….. 3

28 U.S.C. § 1334 ……………………………………………………………………………… 3

28 U.S.C. §§ 1408 & 1409 …………………………………………………………………… 3

11 USC §362 …………………………………………………………………………….. 3, 7, 8

Local Rule of Bankruptcy Procedure §4001-1 ..…………………………………………….. 3

TO: THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Julie Brittingham ("Mrs. Brittingham") and her husband, David Brittingham (Mr. Brittingham, and collectively with Mrs. Brittingham as the "Brittinghams" or "Plaintiffs"), by their attorneys, hereby submit this motion for an order, pursuant to 11 U.S.C. Section 362(d)(1) and Section 105, modifying the automatic stay to allow them to proceed with their state law personal injury action, pending in the Court in the Common Pleas of Montgomery County, Ohio, *Brittingham v. General Motors Corporation, et al.*, Case No. 2001 CV 00664 (the "Ohio Litigation"), solely to the extent that they shall agree to enforce any award rendered or judgment entered against Motors Liquidation Corporation et al. (f/k/a General Motors Corporation et al.)(the "Debtors") to the extent of and against assets outside the Debtors' estates and/or available insurance proceeds, including but not limited to the New GM Policy (as defined herein) and the Delphi Policy (as defined herein). In support of this Motion, the Brittinghams respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b). Venue is proper in the Court pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory predicate for the relief requested herein is section 362(d) of the Bankruptcy Code and Local Rule of Bankruptcy Procedure 4001-11.

## BACKGROUND

(i) Ohio Litigation

2. On February 8, 2001, through Meyer & Williams, P.C., the Brittinghams commenced the Ohio Litigation against, *inter alia*, the Debtors and Dr. Virginia Stull ("Dr.

3

Stull"). A copy of the amended complaint ("Complaint") is annexed hereto as **Exhibit "A"**.

3. In the Ohio Litigation, the Brittinghams have asserted claims against the Debtors and Dr. Stull for, *inter alia*, (i) negligently conducting Mrs. Brittingham's *pre-employment* physical examination ("Examination"), (ii) negligently failing to notify Mrs. Brittingham that her lung function was severely abnormal, (iii) negligently approving Mrs. Brittingham for employment for which she was not physically fit, and (iv) negligently failing to refer her to a qualified physician as a result of her impairment as required by the Debtors' policies and procedures.[1]

4. The Ohio Litigation revolves around the pre-employment examination of Mrs. Brittingham. Mrs. Brittingham applied for employment at GM in July 1997. On August 1, 1997, she underwent a pre-employment physical examination that included pulmonary function tests. After the first test showed Mrs. Brittingham's lung function to be 57% of predicted value, the test was repeated and again it showed diminished lung function, this time at 55% of predicted value. In her deposition, Mrs. Brittingham testified that no one explained to her why the test had to be repeated. After reviewing two abnormal pulmonary function tests, Dr. Stull did not discuss the results and their significance with Mrs. Brittingham. Instead, Dr. Stull had Mrs. Brittingham sign a printout of the results and then approved her for employment in a GM plant. Subsequently, Mrs. Brittingham worked full-time for GM from September 11, 1997, until August 11, 1999, when she became physically unable to continue working.

5. In September 1999, Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency Syndrome ("AAD"), also known as "acquired emphysema." AAD is an inherited condition resulting from the liver's failure to produce a sufficient amount of the protein alpha-1

---

[1] The facts and allegations are set forth herein for informational purposes. In the event of a dispute, the Brittinghams respectfully refer the Court to the Complaint itself, which shall govern.

4

antritrypsin. To extend her shortening life expectancy, Mrs. Brittingham was awaiting a double lung transplant which carries a fifty percent, five-year death rate. Mrs. Brittingham maintains that if Dr. Stull had informed her of the abnormal test results and referred her to a physician, she would have sought immediate treatment.

6. After nearly eight years of litigation, Mrs. Brittingham is still waiting for her lung transplant and her health is continuing to deteriorate. She is on full time supplemental oxygen and rarely leaves her home.

7. As a result of the foregoing negligence, the Brittinghams have asserted claims for their damages of several million dollars.

8. Since 2001, the parties have litigated this matter, including several appeals, removal to the Federal Court, and remand back to Ohio State Court. As of the Debtors' bankruptcy filing, the case was in the final stages of readiness for trial in the Ohio State Court.

(ii) Indemnification and Insurance Coverage

9. After Mrs. Brittingham's January 1, 1999 Examination, she was employed by the Debtors, but was transferred and/or assigned as an employee to Delphi Automotive Systems Corporation ("Delphi") pursuant to an agreement between the Debtors and Delphi.

10. As indicated by Delphi in their motion filed in the United States Court of Appeals for the Sixth Circuit to stay the Ohio Litigation ("Sixth Circuit Stay Motion"), Delphi agreed to assume "financial responsibility for employment related claims … incurred *before or after* [January 1, 1999]"[2]. A copy of selected pages from the Sixth Circuit Stay Motion is annexed hereto as **Exhibit "B"**. The Sixth Circuit Stay Motion also indicates that Delphi's assumption of

---

[2] This was a motion by General Motors Corporation and Virginia Stull M.D. (Defendants – Appellees) to stay proceedings and rescind briefing schedule pending resolution of Delphi Corporation's Chapter 11 case. In the almost nine years that the Ohio Litigation has been proceeding, it has two trips, on two separate issues, to the United States Court Of Appeals for The Sixth Circuit.

5

liability was affirmed in the Master Separation Agreement ("MSA") between Delphi and the MLC. Thus, as of January 1, 1999, Delphi contractually assumed ultimate responsibility for defending and indemnifying the Debtors and Dr. Stull with respect to the Ohio Litigation.

11. In addition to the express indemnification agreement by Delphi, Delphi maintained policies of insurance ('Delphi Policy") insuring the Debtors and Dr. Stull for the acts and omissions complained of in the Ohio Litigation[3].

12. On or about October 8, 2005, Delphi filed a chapter 11 bankruptcy petition, and thereafter filed its First Amended Joint Plan of Reorganization on or about December 10, 2007 ("Delphi Plan"). Pursuant to Exhibit 7.20(a) Delphi-GM Master Restructuring Agreement filed December 10, 2007 to Delphi Plan, Delphi assumed the aforesaid Indemnification Agreement and specifically assumed all obligations related to the Ohio Litigation.

13. In fact, notwithstanding Delphi's bankruptcy filing, the Delphi Insurance Carrier defended the Debtors and Dr. Stull in the Ohio Litigation from its inception in 2001 until the Ohio Litigation was stayed as a result of the filing of the Debtors' chapter 11 case on June 1, 2009[4].

14. As a result of Debtors' Bankruptcy Filing Plaintiff's prosecution of the Ohio Litigation was automatically stayed pursuant to section 362 of the Bankruptcy Code[5].

---

[3] The Delphi Policy, numbered AUL 5104184, by and between Delphi and Allianz Underwriters Insurance Co. Policy (the "Delphi Insurance Carrier"), was a policy covering claims made between May 28, 1999 through October 1, 2002, and having general policy coverage limits of $50 Million of coverage in excess of $1 million, and a self-insured retention of $1 million. Reliance National Indemnity Company (now defunct) held the underlying policy for the time period between May 28, 1999 and October 1, 2001, originally affording $1 million in coverage to the named insured, Delphi. Endorsement No. 2 to this policy indicates that the named insured is self-insured for $1 million and that the Allianz policy will provide $50 million of coverage after that $1 million has been exhausted.

[4] Thereafter, unbeknownst to the Brittinghams, by Order dated July 30, 2009, the Delphi Plan was modified ("Modified Delphi Plan"), and pursuant to the Supplement to the Plan Modification Approval Motion, specifically Exhibit 7.7 "Master Disposition Agreement" dated as of July 26, 2009, the Indemnification Agreement was purportedly rejected. It is currently unclear whether Delphi or the Delphi Insurance Carrier has a continuing obligation to defend the Debtors and Dr. Stull in the Ohio Litigation or whether their purported disclaimer after 8 years of litigation is permitted.

[5] Since that date, and as a result of the shifting of parties and obligations due to the bankruptcy filings, the

6

15. On or about August 5, 2009, the Brittinghams filed an Application for Examination Pursuant to Federal Rules of Bankruptcy Procedure 2004 [Docket No. 3665] in these chapter 11 proceedings (the "2004 Application"). In response to the 2004 Application the Debtors provided certain insurance policies ("New GM Policy") evidencing that General Motors, LLC ("New GM") has assumed the defense of Dr. Stull in the Ohio Litigation.

16. The New GM Policy indicates that Dr. Stull's actions are covered by a fronting policy issued by National Union Fire Insurance, American Home Assurance Company, the Insurance Company of the State of Pennsylvania (all member companies of AIG) (collectively the "New GM Insurance Carrier") providing for $10 million in coverage applicable to "occurrences" during the policy period September 1, 1996 through September 1, 1997. Endorsement H ("Incidental Malpractice" effective Sept. 1, 1996) amends the definitions of "occurrence" and "insured" to include claims such as those alleged in the Ohio Litigation.

**CERTIFICATION**

17. For at least the last six months, the Brittinghams' counsel, have been conferring with counsel for Debtors in attempt to agree to a stipulation to modify the stay. Because the Brittinghams have limited their enforcement of any award or judgment entered against the Debtors only to the extent of (i) any available insurance proceeds, whether determined to be the New GM Policy, the Delphi Policy or otherwise, or (ii) other non-estate assets, the parties were close to an agreement on the terms of the stipulation. However, just before the agreement was to be finalized, and as a result of New GM's stated objection to the terms, based upon its representation of Dr. Stull and its belief that the stipulation would somehow affect Dr. Stull's position in the case, the parties have been unable to reach agreement on the terms.

---

Brittinghams have attempted to discover which entity, if any, will be defending this action, and whether or not there is any insurance coverage for the actions of the Debtors and Dr. Stull therein.

7

18. As a result of the continued deterioration of Mrs. Brittingham's health, and after trying for over 6 months to come to an agreement through stipulation, the Brittinghams' counsel are now compelled to seek an order modifying the automatic stay to allow them proceed against these non-estate assets and insurance as time is now of the essence.

## GROUNDS TO LIFT THE AUTOMATIC STAY

19. Section 362 provides the court the authority to modify or lift the automatic stay to proceed as against the debtor in a few instances. Applicably, section 362(d)(1) provides that the stay may be modified or lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1) (2009). Since neither the statute nor legislative history define "cause," In re Sonnax Indus., 907 F.2d 1280, 1285 (2d. Cir. 1990), the court found that bankruptcy courts are empowered to make such a determination on a case-by-case basis.

20. The court is accorded broad discretion to modify the automatic stay. Sonnax, 907 F.2d at 1288. A very fact-specific inquiry, weighing a number of factors, is required in determining a motion on such grounds. Id. The common factors employed by this Circuit, coined the *Sonnax* factors, include:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*See also* In re MarketXT Holdings Corp., 2009 Bankr. LEXIS 1897, at * 11-12 (Bankr. S.D.N.Y. July 20, 2009) (citing Sonnax, 907 F.2d at 1286); In re Bally Total Fitness of Greater N.Y., 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (same).

21. The applicable factors in this case weigh greatly in favor of granting a lifting of the stay in this instance:

(a) Relief would result in complete resolution of claim: Granting relief requested in this Motion would result in complete resolution of the Ohio Litigation. Although the Brittinghams do not seek to enforce any award or judgment against the Debtors' estate assets, the Debtors are still a necessary party to the Ohio Litigation and the ability to enforce any award against applicable insurance proceeds.

(b) No Interference with Bankruptcy Case: This matter is in the final stages of readiness for trial after 8 years of litigation. New GM, will be defending Dr. Stull in the Ohio Litigation, and the Debtors have represented on numerous occasions that any discoverable information is within the control of New GM. Further, the Brittinghams do not seek to enforce any award against the Debtors' estate. As such, there will not be any interference with the Bankruptcy Case.

(c) Debtors as fiduciary: In the Ohio Litigation the Brittinghams have claimed that the Debtors had a fiduciary obligation to Mrs. Brittingham. However, "[g]enerally, proceedings in which the debtor is a fiduciary … need not be stayed because they bear no relationship to the purpose of the automatic stay, which is protection of the debtor and his estate from his creditors. S. Rep. No. 989, 95th

9

Cong., 2d Sess. 52, reprinted in 1978 U.S. Code Cong. & Admin. News 5838." In re Sonnax Indus., 907 F.2d at 1286.

(d) Specialized Tribunal: The Ohio Litigation revolves around complex personal injury issues. The Ohio State Court has been involved in this action since 2001 and as such, it is better situated to make a determination on this matter than the Bankruptcy Court. Further, the Brittinghams seek a trial by jury.

(e) Insurance Defense: As set forth above, New GM has assumed the defense of Dr. Stull in the Ohio Litigation. There is a question as to whether there is insurance coverage for the Debtors, which issue will be determined after trial by the Ohio State Court. However, the Brittinghams do not seek to enforce any award against the Debtors' estate in this matter.

(f) The action primarily involves third parties: One of the main purposes of the Ohio Litigation is to determine the culpability of Dr. Stull's actions, and New GM or its carrier has assumed the defense of Dr. Stull. As for the actions of the Debtors, the Brittinghams will only seek to enforce any award from non-estate assets and applicable insurance proceeds. Further, Debtors' counsel has represented that all relevant discoverable documents or information are now under the possession or control of New GM.

(g) The Pending Litigation would not affect or prejudice the other creditors of the Debtors: New GM already acknowledged that they, or through its insurance carrier, will be assuming responsibility for Dr. Stull's defense. Further, as stated previously, Plaintiff's are seeking to prosecute the Ohio Litigation but only to the extent that the Plaintiffs will enforce any award rendered or judgment entered

10

against the Debtors only to the extent of and against available insurance proceeds, including the New GM Policy and the Delphi Policy, and/or against assets outside the Debtors' estates.

(h) <u>Interest of Judicial Economy</u>: The interests of judicial economy and the expeditious and economical resolution of litigation mandates that the Ohio Litigation is allowed to proceed to final determination. The Ohio Litigation has been ongoing for more than 8 years prior to the Debtors' bankruptcy filing. In terms of the learning curve, it is almost an understatement to say that the Court handling the Ohio Litigation has an enormous advantage over any other court.

(i) <u>The parties are ready for trial</u>: The parties have been litigating this matter for more than 8 years, and the case was in the final stages of readiness for trial when the action was stayed by Debtors' bankruptcy filing.

(j) <u>Balancing of Harms Weighs Heavily in Favor of the Brittinghams</u>: After more than <u>8 years</u> of litigation, Mrs. Brittingham is still waiting for her lung transplant and her health is continuing to deteriorate, every day that the stay is in place lessens the chances that Mrs. Brittingham will ever have her day in court. Furthermore, as a result of the stay and the continuing shifting of insurance coverage, the Brittinghams have been unable to seek a determination of available insurance proceeds. On the other hand, there would almost be no harm to the Debtors and the impact of modifying the stay to allow the Brittinghams to proceed with the Ohio Litigation is minimal because (i) New GM already acknowledged that they will be assuming responsibility for Dr. Stull's defense; and (ii) Plaintiffs will enforce any award rendered or judgment entered against the

Debtors only to the extent of and against available insurance proceeds, including the New GM Policy and the Delphi Policy, and/or against assets <u>outside the Debtors' estates</u>.

22. It is respectfully submitted that *Sonnax* factors weigh in favor of the Brittinghams in this matter. As such, it is respectfully requested that the Court enter an order, modifying the automatic stay to permit the Brittinghams to prosecute the Ohio Litigation solely to the extent of available insurance proceeds or non-estate assets.

**WHEREFORE**, it is respectfully requested that the Motion be granted in all respects, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 15, 2010

KLESTADT & WINTERS, LLP
By: _/s/ Samir P. Gebrael_
Tracy L. Klestadt
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

- and -

MEYER AND WILLIAMS,
ATTORNEYS AT LAW, P.C.
P. Richard Meyer
Robert N. Williams
350 E. Broadway
P.O. Box 2608
(307) 733-8300

*Co-Counsel to the Brittinghams*