HEARING DATE AND TIME: JULY 14, 2010 at 9:45 a.m. (Eastern Time)

Kathleen H. Klaus
Admitted *Pro Hac Vice*
MADDIN HAUSER WARTELL
   ROTH & HELLER, P.C.
28400 Northwestern Highway
3rd Floor
Southfield, MI 48034
Telephone:  (248) 359-7520
Facsimile:  (248) 359-7560

Attorneys for Creditor, M-Tech Associates, LLC.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | : |
| | :   **Chapter 11** |
| **GENERAL MOTORS CORP., et al.,** | :   **Case No. 09-50026 (REG)** |
| | :   **Jointly Administered** |
|         **Debtors.** | |

**M-TECH ASSOCIATES, LLC'S OBJECTION TO NINTH OMNIBUS MOTION**
**PURSUANT TO 11 U.S.C. § 365 TO REJECT CERTAIN EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY**

M-Tech Associates, LLC ("M-Tech") states as follows for its Objection to Ninth

Omnibus Motion Pursuant to 11 U.S.C. § 365 to Reject Certain Executory Contracts and

Unexpired Leases of Non-Residential Real Property:

**Relief Requested**

M-Tech respectfully asks the court to deny the Ninth Omnibus Motion Pursuant to 11

U.S.C. § 365 to Reject Certain Executory Contracts and Unexpired Leases of Non-Residential

Real Property ("Ninth Motion") as it relates to M-Tech's lease for the property at 33500 Mound

Road, Sterling Heights, Michigan ("Lease").  As part of the sale of its assets to General Motors

Company ("GM"), the Debtor assumed and assigned the Lease, effective July 10, 2009.  A copy

of the confirmation of that assumption and assignment ("Confirmation") is attached as Exhibit A.

GM now contends that the Confirmation refers to a different contract and that the Debtor did not

assign the Lease to it. Because it is undisputed that a contract with M-Tech was assumed and

assigned and because the Lease is the only contract the Debtor had with M-Tech, as a matter of

law and common sense the Lease was assumed and assigned and cannot be rejected. The Motion

must be denied accordingly.

## Background Facts

On August 28, 1986, M-Tech and General Motors Corporation entered into the Lease.

The Lease contained a Rider that was both attached and made part of the Lease. *See* Lease,

attached as Exhibit B. Paragraph 12 of the Rider indicated that MTech would provide "all

services required by" the tenant, including "maintenance, repairs . . . janitor services, snow

removal during ordinary business hours" and similar services ("Maintenance Services"). The

tenant was obligated to pay $12,000 per year for these services as additional rent. *See* Lease at

Rider, ¶ 12. The tenant agreed to pay "any costs which exceed the $12,000 annual allowance"

and to pay for real estate taxes and insurance. The tenant had full discretion regarding the level

of services and could direct MTech as to who would provide those services.

The Lease was extended and amended from time to time, but none of the amendments

altered paragraph 12 of the Rider.[1] *See* Lease Amendments, attached as Exhibit C. The Lease

contains in integration clause that indicates the Lease may only be modified "by an agreement in

writing *signed by Lessor and Leasee*." *See* Rider at p. 6 (emphasis added). The final written

amendment to the Lease was executed on June 5, 2006.

---

[1] Each of the amendments indicated that, other than the changes made through the written amendments, the terms of the original lease were "in all respects ratified and confirmed."

Throughout the parties 23-year course of dealing, M-Tech performed janitorial services and otherwise maintained the leased property, as required by paragraph 12 of the Rider. M-Tech sent the Debtor an invoice for the services that exceeded the annual allotment and the Debtor paid the invoice. At some point, the Debtor began issuing purchase orders after M-Tech issued an invoice for services. The purchase orders mirrored the invoice and M-Tech understood that the purchase order format was used in order to facilitate payment, *i.e.* it was an internal accounting procedure for the Debtor, not a "contract" that superseded or modified the Lease.

On June 5, 2007, M-Tech received notice that the Lease was going to be assumed by the Debtor and assigned to the purchaser of the Debtor's assets. M-Tech filed a timely objection to the cure amount, but did not object to the assumption and assignment of its Lease. The assumption and assignment of the Lease was confirmed by both the Debtor and GM on a website established for communications with entities that had executory contracts with the Debtor. The assumption was not limited or conditioned in any way and, on information and belief, nothing in the Master Sale Agreement limits the assignment of the Lease; it was unconditional.

Immediately after the assumption and assignment, GM (not the Debtor) began paying rent as required by the Lease and its assignment to GM. It also paid the accrued property taxes as required under the Lease. GM did not seek any janitorial services under a "purchase order."

### Legal Basis for Relief

GM is seeking to avoid the consequences of its decision to accept the assignment of the Lease by arguing that it assumed a "blanket order" related to janitorial services, only. No order of the court, no provision of the Bankruptcy Code and no principal of Michigan law supports GM's clumsy efforts to avoid its liability under the Lease. The records it and the Debtor submitted pursuant to the MSA indicate conclusively that GM accepted the Debtor's assignment

of the Lease.  The Debtor cannot reject a contract that was assumed and assigned outside of its

bankruptcy estate and its motion to do so must be denied.

### A.    The Debtor cannot assume part of the Lease and reject the rest.

Under the Bankruptcy Code, a debtor in possession may elect to reject or assume its

obligations under an executory contract.  11 U.S.C. § 356(a).  The assumption is *cum onere;* the

whole contract is assumed or the entire contract is rejected.  *NLRB v. Bildisco,* 465 U.S. 513, 531

(1984); *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3rd Cir. 2003).  In order to avoid

this black letter law and avoid its obligations under the assumed-Lease, GM contends that the

Debtor assumed and assigned to GM only that part of the Lease related to M-Tech's obligation to

provide janitorial services.  GM premises its position on its contention that the "blanket order"

for janitorial services the Debtor issued pursuant to the Lease is a separate contract that the

Debtor assumed and assigned to it.  The argument is specious.

For purposes of § 365, "interpretation of the legal status of lease agreements is governed

by state law." *In re S.E. Nichols Inc.,* 120 B. R. 745, 748 (Bankr. S. D. N.Y. 1990).  In this case,

the Lease is governed by Michigan law.  Under Michigan law, "an essential element of a contract

is legal consideration." *Yerkovich v. AAA,* 461 Mich 732, 740 (2000).  "[G]enerally,

consideration cannot be the performance or promise to perform that which one party was already

required to do under the terms of the existing agreement." *Id* at 740 – 741.  Here, the Lease

required M-Tech to perform janitorial services and for the Debtor to pay for those services.  M-

Tech issued monthly invoices for its services, and, for the past several years, the Debtor issued a

purchase order pursuant to a "blanket order" with its payment for those services.  The purchase

orders referred expressly to and indicated that payment was being made pursuant to the Lease.

The "purchase orders" did not contain any new obligation on the part of either the Debtor or M-

Tech and neither party was required to take any action in response to a purchase order.  The "blanket order" and attendant purchase orders were merely an internal accounting mechanism at MLC that facilitated payment for services.  They were not a contract between M-Tech and the Debtor because they did not create any new obligations on either side.

Moreover, the Lease contains an integration clause that was affirmed with each amendment as late as 2006, well after the Debtor began to issue purchase orders with its payments.  The integration clause requires amendments to be in writing, signed by both parties.  "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *UAW-GM Human Resource Center v. KSL Recreation Corporation,* 228 Mich App 486, 491 (1998), citing *Rasheed v. Chrysler Corp.,* 445 Mich 109, 127, n.28 (1994).  "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *UAW-GM Human Resource Center, supra,* 228 Mich.App 491-492.  There is no reasonable construction of the Lease that would permit the Debtor to unilaterally carve out the provision related to janitorial services and replace it with a new, separate contract.

In other words, under Michigan law, the Debtor's decision to issue a "blanket purchase" order as part of its internal accounting procedures did not create a "new" contract between M-Tech and Old GM.  GM's argument that it assumed a contract related to janitorial services therefore is utterly without merit.  No such contract existed to be assumed and assigned to it.  Rather, it assumed the only contract between the Debtor and M-Tech, i.e, the Lease.

**B.      The Lease was assigned to GM and is no longer subject to rejection.**

M-Tech had one contract with the Debtor and that was the Lease.  The Lease was assumed and assigned to GM and therefore is no longer subject to rejection by the Debtor.  *In re*

*Sapolin Pints, Inc.,* 20 B.R. 497, 500 (Bankr. E.D. N.Y. 1982); *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 1000 (Bankr. E.D. N.Y. 1981). Once a lease has been assumed and assigned, a novation occurs and the rights of the parties are governed by state law. *Wainer v. A.J. Equities, Ltd.,* 984 F.2d 679, 683 (5th Cir. 1993). The novation happens as a matter of law, and the consent of the contracting party other than the assignee is not required. *Id.*

Like 11 U.S.C. 363(k), Michigan law holds that novation extinguishes the initial obligor's duties under the contract because the liability lies with the party who agreed to assume the contractual duties. *Riber v. Morris,* 279 Mich 344, 347 - 48 (1937); *In re Dissolution of F. Yaeger Bridge & Culvert Co.,* 150 Mich App 386, 410 (1986) (original debtor relieved of obligation when creditor allowed third-party to perform debtor's obligation under contract).

In this case, there is no question that GM agreed to accept the Debtor's obligations under the Lease. The evidence that the Lease was assumed and assigned is overwhelming and conclusive. GM and the Debtor issued a notice of intent to assume and assign the Lease; they issued a joint confirmation that the Lease was assumed and assigned; GM used the leased-premises after the assignment; GM paid rent after the assumption and assignment; and GM paid the accrued property taxes, an obligation it incurred upon accepting the assignment of the Lease. *See* Email indicating taxes paid. Exhibit D. On the other hand, GM did not seek any janitorial services under the "blanket order" or take any other action that supports its contention that its accepted the assignment of the "blanket order."

## Conclusion

GM is in essence asking that Court for a "do over" because it decided that it did not want to accept the Debtor's assignment of the Lease. GM made this decision, however, after it accepted the assignment and this Court can not "unmake" GM's promise to assume the Debtor's

obligations under the Lease by allowing the Debtor to reject the Lease.    M-Tech therefore respectfully asks the Court to deny the Motion.


Dated:  June 15, 2010


/s/  Kathleen H. Klaus
Kathleen H. Klaus
Admitted *Pro Hac Vice*

MADDIN, HAUSER, WARTELL,
    ROTH & HELLER P.C.
Attorneys for M-Tech Associates, LLC
28400 Northwestern Highway, Third Floor
Southfield, Michigan  48034
Telephone: (248) 359-7520
Fax: (248) 359-7560

Attorneys for Creditor
M-Tech Associates, LLC.

# EXHIBIT A

 **Assumption & Assignment Confirmation Letter**

### GENERAL MOTORS COMPANY
(formerly NGMCO, Inc.)

### MOTORS LIQUIDATION COMPANY
(formerly General Motors Corporation)

Date: **9/1/2009**

Vendor: **M-TEC ASSOCIATES**
Vendor Identification: **807178108**

Re: Confirmation of Assumption and Assignment of Executory Contract(s)

Ladies and Gentlemen:

This letter confirms that the Executory Contract(s) identified on Schedule A hereto was/were assumed by Motors Liquidation Company (formerly General Motors Corporation) (the "Parent") and assigned by Parent to General Motors Company (formerly NCMCO, Inc.) (the "Purchaser") as of and effective on the date set forth on Schedule A annexed here to in accordance with the terms and conditions of that certain Amended and Restated Master Sale and Purchase Agreement, dated as of July 26, 2009, by and among Parent, Saturn LLC, Saturn Distribution Corporation and Purchaser, as amended (the "MSPA"), and the Sale Approval Order.

Capitalized terms used and not otherwise defined herein shall have the meaning given to them in the MSPA.


Very truly yours,

GENERAL MOTORS COMPANY
/s/ Robert E. Socia
Vice President
Global Purchasing and Supply Chain

MOTORS LIQUIDATION COMPANY
/s/ Al Koch
President & CEO

EXHIBIT C                                      MTECH   00034



## Assumption & Assignment Confirmation Letter

| Schedule A | | | | | | |
|---|---|---|---|---|---|---|
| Row ID | GM Contract ID | Counterparty Name | Contract Name / Description | Contract Type | Business Unit / Functional Area | Contract Status |
| 5716-00087452 | YCB02218 | M-TEC ASSOCIATES | | Blanket Order | | ASSUMED JULY 10, 2009 |

Count of Contract(s)                    1

EXHIBIT C                                        MTECH   00035

# EXHIBIT B

Ceheral Form *(9419-4 )*
GM 235—Revised 6-72

ORIGINAL

**This Lease**, dated_____August 28_____ 19 86 , between

___M-TECH ASSOCIATES, a Michigan partnership, 28388 Franklin Road, Southfield,___

___Michigan 48034_____

hereinafter called the Lessor, and ___GENERAL MOTORS CORPORATION, a Delaware corporation,___

___with its principal office at 3044 West Grand Boulevard, Detroit, Michigan___

___48202_____hereinafter called the Lessee,

**PREMISES**

**Witnesseth:**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

A free standing building comprising the total of a total of 29,460 square
feet, including 4,520 square feet of office space and 24,940 of heavy
manufacturing space and related facilities, all constructed in accordance
with plans prepared by Argonaut on the approximately four (4) acre site
on the East side of Mound Road North of 14 Mile Road in Sterling Heights,
Michigan (33500 Mound Road). A site plan and a legal description of the
Demised Premises is described on the attached Exhibit "A." The Plans,
Specifications and Addendum No. 1 are described as Argonaut Job No. 6526.

**USE OF PREMISES**

SEE RIDER, CLAUSE 1

with the appurtenances, to be used for ~~an automobile showroom, service station, warehouse or garage,~~
~~or for general automobile, tractor, implement, airplane or truck business, or accessories thereto, or any~~
~~line of business allied to or connected with any of the foregoing, or any type of business conducted or~~
~~controlled by General Motors Corporation, or any other lawful purpose not inconsistent with the char-~~

~~acter of the premises, for a term commencing~~ _____

~~and expiring~~_____

**TERM**

SEE RIDER, CLAUSE 2

**RENT**

SEE EXHIBIT "B" AND RIDER, CLAUSE 3

~~at the yearly rent of~~_____

~~payable in installments of $~~_____~~in advance on the first business day of each~~
~~and every month during the term.~~

The parties hereto covenant and agree with each other as follows:

**FIRST:** That the Lessee shall pay the rent at the times and in the manner aforesaid.

**REPAIRS**

**SECOND:** That the Lessee shall keep and not misuse the premises so that they may be returned
to the Lessor in as good order and condition as when delivered to Lessee, excepting ordinary wear and
tear, damage by fire, vandalism, the elements and casualty, and damage due to any cause or happening not
occasioned by the negligence of the Lessee. The Lessor shall maintain, repair and replace as necessary the
plumbing, heating, ventilating and air conditioning equipment, lighting and other electrical and mechani-
cal equipment, sprinkler system, elevators, glass (unless broken or damaged due to the negligence of
Lessee), damage by vandals, and make all other repairs or replacements which the Lessee is not hereby
required to make. The Lessor shall maintain (including painting as necessary), repair and replace as
necessary, the exterior of the building including the roof, exterior walls, drains, eaves troughs, downspouts,
gutters, and provide lateral support and make all structural repairs to the building. The Lessor shall also
maintain, repair and replace as necessary, the improvements and the lands which are a part of and used in
connection with the premises, including but not limited to ditches, drains, sewers, utility lines, driveways,
sidewalks, parking areas, landscaping and fencing.* In the event the Lessor fails to make any repairs or
replacements/which it is required to make hereunder within a reasonable time specified in a written notice
by Lessee, then in that event the Lessee may make/such repairs or replacements/and deduct the cost and
~~expense thereof from the rent reserved hereunder, or the Lessee may, at its option, cancel this lease.~~ If
by reason of emergency, repairs or replacements become necessary which by the terms hereof are the
SEE RIDER, CLAUSE 4

\* unless damaged by Lessee or its employees.
\*\* after 10 days prior written notice from Lessee to Lessor
\*\*\* Lessor shall reimburse Lessee for the reasonable costs thereof.

responsibility of Lessor. Lessee may make such repairs or replacement which is the premises is are necessary for preservation of the premises or of the La [...] property, and Lessor shall at the option of the Lessor either reimburse Lessee for Lessee may deduct the cost and expense thereof from the rent reserved hereunder. Provided, however, that in such event Lessee agrees to make reasonable effort to inform Lessor before proceeding with such repairs or replacements.

\* within 30 days after receipt of detailed billing from Lessee.

**EASEMENTS**

**THIRD:** That the enjoyment and use of all entrances, exits, approaches and means of entrance and approach, and of light and air now existing in favor of the premises shall not be interfered with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**

prior

**FOURTH:** That the Lessee will not assign this Lease without the written consent of the Lessor, except such assignment be to a corporation then owned or controlled by GENERAL MOTORS CORPORATION. The Lessor agrees that such consent will not be unreasonably withheld.
SEE RIDER, CLAUSE 6

**NEGATIVE COVENANTS**

**FIFTH:** That the Lessee will not consent to any use of the premises which shall be contrary to any valid law of the State or to any valid ordinance or bylaw of the Municipality for the time being in force.

**COVENANTS BY LESSOR**

SIXTH: That the Lessor covenants and agrees that the possession of the premises will be delivered to the Lessee upon the commencement of the term of this Lease in as good condition as the same now are, or as required to be altered pursuant to the provisions of Paragraph Twenty-Second, free from all tenancies and occupancies, and free from all orders, notices and violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices or violations be filed during the term of this Lease, the Lessor will comply therewith, or will cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein. In the event of Lessor's failure to comply with such orders, notices, or violations, or to cause such orders, notices or violations to be vacated within a reasonable time after written notice. Lessee may comply therewith and deduct the cost and expense of such compliance from the rent reserved hereunder, or Lessee may cancel this Lease.

The Lessor further covenants and agrees that at the commencement of the term the elevator or elevators, the boiler or boilers, air conditioning and heating equipment will all be in good mechanical, operating and insurable condition, acceptable to Lessee's insurance companies, and that the boiler or boilers, air conditioning and heating equipment will be of sufficient capacity to heat and cool the demised premises comfortably. If said equipment is not in the condition specified and Lessor fails to promptly place it in said condition, then Lessee may have the elevator or elevators, boiler or boilers and heating equipment put in the condition above provided and deduct the cost and expense thereof from any installment or installments of rent thereafter becoming due, or at Lessee's option, Lessee may cancel this Lease upon giving five (5) days' notice in the manner herein provided. In any event, the fact that the Lessee does not have said work done shall not render Lessee in any way liable nor relieve Lessor from any liability. The acceptance of possession by Lessee shall not be deemed to be a waiver of any of the aforesaid covenants.

**VIEWING PREMISES**

SEE RIDER, CLAUSE 5    and its agents
and inspect
**SEVENTH:** That the Lessor during the term at reasonable times enter to view the premises and may at any time within the six (6) months next before the expiration of the said term, show the said premises and building or buildings to others, and affix to any suitable part of the said premises a notice for letting or selling the premises, or building or buildings, and keep the same affixed without hindrance or molestation.

**FIRE CLAUSE**

EIGHTH: (a) That if the premises shall be so damaged by fire, the elements, casualty, war, insurrection, riot, public disorder, act, authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it; (b) In case of only partial damage or destruction of the premises or of other portions of the building or buildings containing the premises, then said premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition and a just proportion of the rent herein reserved, according to the extent to which they have been rendered untenantable, shall abate until the said premises shall have been so restored and put in proper condition for use and occupancy, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. If Lessor shall for any reason fail to restore the premises or other portions of said building or buildings within a reasonable time, Lessee may cancel and terminate this Lease upon giving five (5) days' notice in the manner herein provided and be relieved of all liability hereunder arising subsequent to the aforesaid damage to the said premises or other portions of said building or buildings, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. The Lessor shall maintain fire and supplemental perils insurance coverage in an amount sufficient to comply with

**UNSAFE BUILDING CLAUSE**

the aforementioned provisions of this clause; (c) In the event that the building or buildings containing the premises shall become unsafe, said building or buildings shall be repaired and restored forthwith by the Lessor, and a just proportion of the rent hereinbefore reserved shall abate until said building or buildings shall have been put in safe and proper condition for use and occupancy, and any unearned rent paid in advance by the Lessee shall be refunded to it, and if Lessor fails for any reason to restore the premises forthwith to safe and proper condition for use and occupancy, Lessee may at its option cancel this Lease upon giving five (5) days' notice in the manner herein provided; (d) If any authority having jurisdiction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.

**UNLAWFUL OCCUPATION**

SEE RIDER, CLAUSE 7
**NINTH:** That the Lessor represents that the premises may be used for the purposes for which they are hereby leased and in the event of the enactment or existence of any law, ordinance, rule, ruling, regulation, covenant or restriction prohibiting or limiting the use of said premises for any one or more of the purposes for which they are hereby leased, then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease from and after the date such prohibition becomes effective and any unearned rent paid in advance by the Lessee shall be refunded to it.

non-monetary

**RIGHTS UPON DEFAULT**

**TENTH:** That if the Lessee shall neglect or fail to perform or observe any of the covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then and in any of said cases the Lessor may lawfully enter into

★ one hundred twenty (120) days after such prohibition becomes effective so long as Lessee can occupy the premises during said period, otherwise this Lease shall terminate and all liability hereunder shall cease.

★★ or in case any rent or other monetary obligations of Lessee shall be due and remain

and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expell the Lessor and those claiming under and through it ~~and remove its effects forcibly if necessary, without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and upon entry as aforesaid this Lease shall terminate and the Lessee covenants that in case of such termination it will indemnify the Lessor against all unavoidable loss of rent which the Lessor may incur by reason of such termination during the residue of the term above specified.~~

**TERMINATION**

**HOLD OVER**

SEE RIDER, CLAUSE 8
**ELEVENTH:** That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein mentioned and the term hereof shall expire on the date herein mentioned without notice being required from either party; (b) in the event that the Lessee, any assignee or sublessee, remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise upon all the same terms and conditions contained herein, including the monthly rental rate, insofar as the same are applicable to a month-to-month tenancy.

**QUIET POSSESSION**

**TWELFTH:** Lessor herein represents that it is the fee owner of the premises hereby leased and hereby covenants that Lessee, on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the premises for the term and for the uses aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not hereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**SERVICES BY LESSOR**

~~THIRTEENTH:~~ ~~That the Lessor shall for the rent reserved furnish electric current for all purposes~~ required by the Lessee, janitor service, including snow removal, water and elevator ~~service during ordinary~~ business hours, sufficient heat and air conditioning whenever necessary to make the premises comfortable for occupancy, window and glass partition washing ~~at regular~~ intervals, toilet facilities, and fluorescent tubes or electric bulbs for lamps for lighting the premises, and the Lessor shall renew all such lamps, fluorescent tubes or bulbs when necessary. Lessor covenants and agrees that the lighting fixtures in the office portion of the premises shall be of sufficient capacity at all times to produce not less than 100 foot ~~candles lighting at desk level.~~
SEE RIDER CLAUSE 12

**ALTERATIONS BY LESSEE**

**FOURTEENTH:** That with the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right at any time during the term or any extension thereof, at its own expense, to make alterations, changes, improvements and remodeling to the premises, provided the same shall be in conformity with the Building Laws of the Municipality, County and State, and the Lessee covenants and agrees upon demand at any time after the execution of this Lease to obtain and deliver to the ~~Lessor~~ all permits, consents and other instruments which may be necessary or required by any public or quasi-public authority, permitting and authorizing such alterations, changes, improvements and remodeling. In case of said alterations, changes, improvements and remodeling, the Lessee shall not be required upon the termination of the Lease or any extension thereof to restore the premises to their original condition.
SEE RIDER, CLAUSE 4

**FIXTURES AND SO FORTH**

**FIFTEENTH:** That all movable partitions, fixtures, floor covering, or equipment installed in the premises at the Lessee's expense shall remain the property of the Lessee and may be removed by the Lessee. The Lessee shall, however, repair any damage caused ~~directly and exclusively~~ by said removal. at its sole cost and expense.

**SIGNS AND SO FORTH**

**SIXTEENTH:** That the Lessee shall have the right to install or place signs or posters anywhere on or about the premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEM-NATION**

~~SEVENTEENTH:~~ ~~That in the event the premises or any part thereof are taken or condemned by a~~ temporary or permanent public or quasi-public use so as to interfere ~~with Lessee's use,~~ Lessee may at its option terminate this Lease and, in such event, any unearned rent paid in advance shall be returned to Lessee, but nothing herein contained shall prevent Lessee from recovering any damages sustained by Lessee ~~due to such taking.~~

**MORTGAGE SUBORDINATION**

SEE RIDER, CLAUSE 10    At Lessor's option                now existing or
**EIGHTEENTH:** ~~That~~ this Lease shall be subject and subordinate to the lien of any mortgage, hereafter placed on the premises and Lessee agrees to execute and deliver upon demand, in confirmation of such subordination, such further instruments as shall be required by any mortgagees or proposed mortgagees. Provided, that if and when such mortgage or mortgages are placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the premises in the event of foreclosure, Lessee's quiet possession of the premises will not be disturbed on ~~account of said mortgage or by reason of anything done thereunder~~ so long as Lessee pays the rent and

not in default ~~keeps~~ the other covenants on its part to be performed, Lessee agrees that in the event a mortgage is placed on the premises and a collateral assignment is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

**WAIVER OF SUBROGATION**

**NINETEENTH:** The Lessor and the Lessee waive all rights, each against the other, and against those holding under or through the Lessor and Lessee, for damages caused by fire or other perils covered by insurance where such damages are sustained in connection with the occupancy of the leased premises.

NOTICES    TWENTIETH at all notices to be given hereunder shall be in writing and given by personal delivery to the Lessee or to one of the executive officers of the Lessee or shall be sent by telegram or by registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government or, in the case of a telegram, when given to an employe of the telegraph company for transmission. Provided, however, that it is mutually agreed that the Lessee appoints the President, the Executive Vice Presidents ~~and~~ the Vice President in Charge of Real Estate, ~~General Motors Corporation, and the Executive in Charge of Real Estate, the Manager and the Director, Real Estate Department of Argonaut Realty Division,~~ General Motors Corporation, ~~Argonaut Building,~~ 485 West Milwaukee Avenue, Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor.

* Director, GM Facilities, and the Director of Real Estate,

EXTENSION    ~~TWENTY-FIRST: That the Lessee may at its option extend the term of this Lease for~~ _____ further period(s) of _____ ~~upon all the same terms and conditions contained herein, or as hereafter amended, by giving Lessor written notice.~~

ALTERATIONS
BY LESSOR    SEE RIDER, CLAUSE 11
~~TWENTY-SECOND: That the Lessor, at the Lessor's own expense, shall make the alterations, changes and improvements, according to the plan annexed hereto and made a part hereof, and shall fully complete the same, in a good workmanlike manner and shall have the premises ready for lawful occupancy by the Lessee in the condition herein provided on or before_____19___. In the event said work is not completed as above provided, the Lessee may, at its option, (a) enter and complete said work and deduct the cost and expense thereof from the rent reserved hereunder, or (b) cancel this Lease. In no event, however, shall rent accrue until the above alterations, changes and improvements have been completed and the premises have been made ready for lawful occupancy by the Lessee as herein provided.~~

CANCELLATION    ~~TWENTY-THIRD: That the Lessee may cancel this Lease effective_____ or at any time thereafter by giving Lessor_____days' written notice prior to such cancellation.~~

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF
   The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

**In Witness Whereof,** Lessor has signed and sealed this instrument this ___ day of _____ A.D. 19___, and Lessee has signed and sealed this instrument this ___ day of _September_ A.D. 19___.

WITNESSES:      LESSOR: M-TECH ASSOCIATES, a Michigan partnership

BY _____
_____, GEN'L PARTNER

LESSEE: GENERAL MOTORS CORPORATION

BY _____ Vice President

ATTEST _____ Assistant Secretary

STATE OF MICHIGAN )
                 ) ss:
COUNTY OF OAKLAND )

The foregoing instrument was acknowledged before me this ___ day of _____, 1986, by _____, _____, of M-Tech Associates, a Michigan partnership on behalf of said partnership.

_____
Notary Public
_____ County, Michigan
My Commission Expires: _____

STATE OF MICHIGAN )
                 ) ss:
COUNTY OF _Wayne_ )

The foregoing instrument was acknowledged before this ___ day of _September_, 1986, by _C. J. Brady_, _Vice President_, of General Motors Corporation, a Delaware corporation, on behalf of said Corporation.

_____
Notary Public
County, Michigan
My Commission Expires: _____

W. ESTER WILSON
Notary Public, Wayne County, MI
My Commission Expires Feb. 25, 1987

RIDER ATTACHED TO . . , MADE A PART OF LEASE AGREEMEN. ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

1.  USE OF PREMISES: ... office, heavy manufacturing, research, development,
die machining, tooling and related uses only and for no other purpose without
the written consent of Landlord, which consent shall not be unreasonably
withheld.  Lessee agrees that it will not use or permit any person to use the
Demised Premises or any part thereof for any use or purposes in violation of
the laws of the United States, the State of Michigan, the ordinances or other
regulations of the City of Sterling Heights, Michigan, or of any other lawful
authority.

2.  TERM:  For a term of ten (10) years commencing upon the earlier of the
time of Lessee's beneficial occupancy on issuance of temporary Certificate of
Occupancy, anticipated to occur between April and July, 1987; if it occurs
between September 1, 1987 and December 31, 1987, Lessee will occupy the space
rent free, not including utilities, for a period equal to the time period
later than September 1, 1987.  After December 31, 1987, Lessee may at its
option cancel this Lease.  The foregoing dates will be extended for such
periods as performance by Lessor is frustrated due to strikes, war, acts of
God, fire or other casualty or happening, governmental restrictions, or any
similar contingencies beyond the reasonable control of Lessor.

3.  RENT:  (A) Any rent unpaid for more than ten (10) days after such rent is
due (after the execution of this written lease by the parties) and any rent
received and accepted more than ten (10) days after such rent is due (after
the execution of this written lease by the parties) shall be subject to a late
charge in an amount equal to the interest rate set forth in Clause 2(B),
below, and such late charges shall be due from Lessee to Lessor as additional
rent on or before the next rental due date.  Any default in the payment of
rent shall not be considered cured unless and until such late charges are paid
by Lessee to Lessor.  On default of payment of such late charges, Lessor shall
have the same remedies as on default in payment of rent.  Such late charges
shall be in addition to any other rights or remedies Lessor may have as
provided by this Lease or as allowed by law.

        (B) If any rent, any late charges, or any other sums payable by
Lessee to Lessor under this lease are not paid within thirty (30) days after
such rent, late charges or other sums are due (after the execution of this
written lease by the parties), such rent, late charges or other sums shall
bear interest at the rate of four percentage points above the effective prime
interest rate per annum charged by National Bank of Detroit to its best
commercial customers; provided, however, that such rate of interest shall
never be less than eleven (11%) percent per annum.  Such interest shall be due
from Lessee to Lessor as additional rent on or before the next rental due date
and shall accrue from the date that such rent, late charges or other sums are
payable under the terms of this lease.  Such interest for rent, late charges
and other sums shall continue to accrue through the date such rent, late
charges or other sums are paid by lessee.  Any default in the payment of rent,
late charges or other sums shall not be considered cured unless and until such
interest is paid by Lessee to Lessor.  On default of payment of such interest,
Lessor shall have the same remedies as on default in payment of rent.  Such
interest shall be in addition to any other rights or remedies Lessor may have
as provided by this Lease or as allowed by law.

        (C)  All rentals to be paid pursuant to this Lease shall be fully
paid without any deduction or set-off whatsoever.

4.  ALTERATIONS BY LESSEE:  Notwithstanding any other provision of the Lease,
from and after the Lessee has taken occupancy of the Demised Premises any
additions or alterations to the building or any of its systems (e.g., plumb-
ing, electrical, mechanical), structural or nonstructural, which are required
by any law, statute, ordinance, rule, regulation or governmental authority or
insurance carrier, including, without limitation, OSHA, as the direct result
of use or uses made of the Demised Premises by Lessee shall be the obligation
of the Lessee.

RIDER ATTACHED TO     MADE A PART OF LEASE AGREEMEN    ITED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

5.  UNDERLINE DELIVERY OF POSSESSION:

(A)  That the Lessor covenants and agrees that the possession of
the premises will be delivered to the Lessee upon the commencement of the term
of this Lease in as good condition as required to be built hereunder, free
from all tenancies and occupancies, and free from all violations filed or
entered by any public or quasi-public authority, and free from complaints or
reports of violations, noted or existing in or filed with any Federal, State,
County, Municipal, Borough, or any other local authority, and free from any
existing condition which might be the basis for any future complaints or
violations.  Lessor agrees that it will transmit copies of such notices or
violations to Lessee forthwith upon Lessor's receipt thereof.

(B)  Within ten (10) days after delivery of possession Lessee will
furnish Lessor with a written statement of any deficiencies in the premises
and after they are corrected to Lessee's satisfaction, Lessee will promptly
furnish a written statement that Lessee has examined the premises, and knows
the condition thereof, and that no representations as to the condition or the
state of repairs thereof have been made by Lessor or Lessor's agents which are
not expressly therein contained and Lessee thereby accepts the Demised
Premises in their condition at that time.

6.  ASSIGNMENT:  Notwithstanding anything contained in Paragraph Fourth of the
Lease, Lessee's rights thereunder shall be effective only if Lessee is not in
default under the terms and conditions of this Lease, and further, the as-
signee or sublessee shall execute an instrument in writing assuming all of the
obligations and liabilities of this Lease and further provided that such
assignment or subletting shall not operate to release Lessee of its obliga-
tions under this Lease.

7.  DAMAGE BY FIRE OR OTHER CASUALTIES AND INSURANCE:

(A)  That if the premises shall be so damaged by fire, the elements, ████y,
war, insurrection, riot, public disorder, act, authorized or unauthorized, on
the part of any governmental authority or any cause or happening as to be
substantially destroyed, then this Lease shall cease and come to an end, and
any unearned rent paid in advance by the Lessee shall be refunded to it.  In
case of only partial damage or destruction of the premises or of other
portions of the building or building containing the premises, then said
premises or other portions of said building or buildings shall be restored
promptly by the Lessor to their previous condition, but the rent herein
reserved shall not abate while the said premises are being so restored and put
in proper condition for use and occupancy.  T█████████████████fire and
suppl███████████████████████████████████████████████████████████████████
th█████mentioned provisions of this clause.  If any authority having
j█████diction shall decide that the said building or buildings should be
demolished and removed, then forthwith upon such decision being made and upon
the Lessee vacating the premises, this Lease shall cease and come to an end
and any unearned rent paid in advance by the Lessee shall be refunded to it.

(B)  At and after the commencement of the original term of this Lease, Lessee
agrees to defend, indemnify and save Lessor harmless from any liability for
damages and any costs and reasonable attorney fees of Lessor, to any person or
property which occurs on the Premises from any cause whatsoever, except for
liabilities and damages caused by Lessor's negl█████████████████ acts.
L█████████████████████████████████████████████████████████████████ general
public liability insurance, including blanket contractual coverage against
claims for or arising out of personal injury, death or property damage,
occurring in, on or about the Premises or property in, on, or about the
streets, sidewalks or premises adjacent to the Premises, such insurance to
afford protection to the limit at the beginning of the term of not less than
One Million ($1,000,000) Dollars with respect to injury or death of a single
person, and to the limit of not less than Two Million ($2,000,000) Dollars

RIDER ATTACHED TO    MADE A PART OF LEASE AGREEMEI    ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

with respect to any one occurrence and to the limit of not less than Two
Hundred Fifty Thousand ($250,000) Dollars with respect to any one occurrence
of property damage and thereafter in such changed amounts as Lessor may
reasonably require.  Lessee agrees to submit evidence to Lessor of such
property and liability insurance coverage periodically upon Lessor's request
to indicate continuous insurance coverage, and to have Lessor added as an
additional Insured. .

8.  RIGHTS UPON DEFAULT:  Lessor, in addition to other rights or remedies it
may have, shall have the immediate right to reentry and may remove all persons
and property from the Demised Premises; such property may be removed and
stored in any other place for the account of and at the risk of Lessee.
Lessee hereby waives all claims for damages which may be caused by the reentry
of Lessor and taking possession of the premises or moving or storing of
furniture, trade fixtures, and all other property of Lessor, and will save
Lessor harmless from any loss, costs or damages occasioned Lessor thereby, and
no such reentry shall be considered or construed to be a forceable entry.

Should Lessor elect to reenter as herein provided for or should it take
possession pursuant to legal proceedings or pursuant to any notice provided
for by law, it may either terminate this Lease or it may from time to time,
without terminating this Lease, relet the premises or any part thereof for
such term or terms and at such rental or rentals and upon such other terms and
conditions as Lessor in its sole discretion may deem advisable, with the right
to make alterations and repairs to the premises.  Rentals received by Lessor
from such reletting shall be applied as follows:

First, to the payment of any indebtedness, other than rent due hereunder from
Lessee to Lessor, including all damages sustained by Lessor as a result of the
default of Lessee;

Second, to the payment of rent due and unpaid hereunder;

Third, to the payment of all costs, expenses and charges of every kind and
nature owing Lessee, exclusive of rent, pursuant to the provisions of this
Lease;

Fourth, to the payment of any costs of such reletting;

Fifth, to the payment of the costs of any alterations or repairs to the
premises;

and the residue, if any, shall be held by Lessor and applied in payment of
future rent as the same may become due and payable hereunder.  Should such
rentals received from such reletting during any month be less than that amount
agreed to be paid that month by Lessee hereunder, the Lessee shall pay such
deficiency to Lessor.  Such deficiency shall be calculated and paid monthly.

No such reentry or taking possession of the premises by Lessor shall be
construed as an election on its part to terminate this Lease unless a written
notice of such intention be given to Lessee or unless the termination thereof
be decreed by a Court of competent jurisdiction.  Notwithstanding any such
reletting without termination, Lessor may at any time thereafter elect to
terminate this Lease for such previous breach.  Should Lessor at any time
terminate this Lease for any breach, in addition to any other remedy, it may
recover from Lessee all damages it may incur by reason of such breach,
including the cost of recovering the premises, and including the worth at the
time of such termination of the excess, if any, of the amount of rent and
charges equivalent to rent reserved in this Lease for the remainder of the
stated term, over the then reasonable rental value of the premises for the
remainder of the stated term.

9.  TAXES, ASSESSMENTS AND UTILITIES:

        (A)  Lessee agrees to pay as additional rent for the Demised

- 3 -

RIDER ATTACHED TO ) MADE A PART OF LEASE AGREEME ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

Premises all taxes and assessments ("assessments" as used herein shall be
defined as improvements and betterments which generally benefit a portion of
the neighborhood in which the Demised Premises is located), general and
special, and all water rates, and all other governmental impositions which may
be levied upon said premises or any part thereof, or upon any building or
improvements at any time situated thereon, until the termination of the
original term and of any extended terms of this Lease. All of such taxes,
assessments, water rates, and other impositions shall be paid by Lessee before
they shall become delinquent and Lessee shall send copies of all paid tax
bills to Lessor forthwith after payment. The property taxes for the first and
last year of the original term or any extended term, as the case may be, shall
be prorated between Lessor and Lessee so that Lessee shall be responsible for
any such tax attributable to the period during which Lessee has possession of
the premises in the year in which this Lease is terminated. The so-called
"due date" method of proration shall be used, it being presumed that taxes are
payable in advance. In the event that during the term of this Lease (i) the
real property taxes levied or assessed against the real property shall be
reduced or eliminated, whether the cause thereof is a judicial determination
of unconstitutionality, a change in the nature of the taxes imposed, or
otherwise, and (ii) there is levied, assessed or otherwise imposed upon the
Lessor, in substitution for all or part of the tax thus reduced or eliminated,
a tax (hereinafter called the "Substitute Tax") which imposes a burden upon
Lessor by reason of its ownership of the real property, then to the extent of
such burden the Substitute Tax shall be deemed a real estate tax for purposes
of this paragraph. Notwithstanding the foregoing, in the event any
assessments are imposed against the demised premises during the term of this
Lease, Lessee shall be responsible to pay only such installments of such
special assessments that shall become due and payable during the term of this
Lease or during any extended term of this Lease.

(B) Lessee also agrees to pay all charges made against the
premises for gas, heat, electricity and all other utilities furnished to the
Demised Premises during the continuance of this Lease as the same shall become
due.

10. CONDEMNATION: If the whole or any substantial part (including a substan-
tial part which materially interferes with the Lessee's continued use and
enjoyment of the Demised Premises) of the Demised Premises hereby leased shall
be taken by any public authority under the power of eminent domain, then the
term of this Lease shall cease from the day the possession shall be required
for any public purpose, and the rent shall be paid up to that day. All
damages awarded for such taking shall belong to and be the property of the
Lessor, whether such damages shall be awarded as compensation for diminution
in value to the leasehold or to the fee of the Demised Premises herein leased;
provided, however, that the Lessor shall not be entitled to any portion of the
award made to the Lessee for removal and reinstallation of Lessee's fixtures
or for the cost of Lessee's immovable fixtures.

11. OPTION FOR EXTENSION OF LEASE TERM: Provided that Lessee shall not be in
default in the terms and conditions of this Lease at the time of exercise,
Lessor hereby grants to Lessee the right and option to extend the Lease for
one (1) additional period of five (5) years. Lessee shall notify Lessor in
writing whether or not it will extend this Lease for such renewal period at
least three hundred (300) days prior to the commencement of the renewal
period.

Notice of Lessee's intentions shall be deemed sufficient if given in the
manner hereinbefore provided for notices. The five (5) year renewal period
(hereinafter defined as the "Option Term") shall be upon the same terms,
covenants and conditions as are contained in the Lease except that the yearly
net rental for such renewal period shall be in accordance with Exhibit "B" and
shall be paid monthly.

12. SERVICES BY LESSOR AND REPAIRS: The Lessor shall, for the rent and as
provided in this section, provide for all services required by Lessee as

- 4 -

RIDER ATTACHED TO A. MADE A PART OF LEASE AGREEMENT  ΓED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

outlined herein, including any maintenance, repairs or replacement specified
in Paragraph Second of the Lease, janitor services, snow removal during
ordinary business hours, periodic window and glass partition washing, cleaning
of toilet facilities, landscape maintenance as required, and trash removal.
All such services will be provided for a Twelve Thousand Dollar ($12,000.00)
per year allowance, as additional rent, to be paid at the rate of One Thousand
Dollars ($1,000.00) per month in addition to the monthly rents provided in
Exhibit "B," except that the cost to Lessor of maintaining, repairing and
replacing the exterior walls and roof of the building shall be Lessor's sole
responsibility for the rent reserved and not part of the $12,000.00 allowance.

Lessee will agree to reimburse Lessor for any costs which exceed the Twelve
Thousand Dollar ($12,000.00) annual allowance.  In addition, Lessee will
reimburse the Lessor for the entire cost of any real estate taxes and insur-
ance paid by the Lessor.  The Lessor will manage the building during the term
of the Lease for a fee of Ten Percent (10%) of the yearly operating costs
exclusive of real estate taxes, utility and insurance charges paid by the
Lessor.  It is expressively agreed that the level of services provided
hereunder will be at the full discretion of the Lessee.  In addition, if
during the term of the Lease the Lessee is dissatisfied with the services
provided hereunder by the Lessor, the Lessee may direct the Lessor as to who
will provide the services on behalf of the Lessor.

13.   EARLY OCCUPANCY BY LESSEE:  In the event Lessee desires to enter upon the
Demised Premises prior to commencement of the Lease Term for purposes of
fixturing or installation of furnishings and equipment (not including such
entry for purposes of storage of crated or boxed fixtures, furnishings and
equipment preliminary to such fixturing or installation), Lessee shall do so
only upon the following conditions:

        (A)  The Lease Term shall be deemed to have commenced upon the
date that Lessee so enters upon the Demised Premises.

        (B)  Lessee agrees that it shall not interfere with the work of
Lessor, its general contractor, subcontractors, agents or representatives in
completing any items of construction in, on or about the Demised Premises.

14.   LIENS:  After the commencement of the term of this Lease, the Lessee will
keep the premises free of liens of any sort and will hold the Lessor harmless
from any liens which may be placed upon the premises except those attributable
to the acts of the Lessor.

15.   PERFORMANCE BY LESSOR OF THE COVENANTS OF LESSEE:  Should Lessee at any
time fail to do any of the things required to be done by it under the pro-
visions of the Lease, Lessor at its option, and in addition to any and all
other rights and remedies of Lessor in such event, may (but shall not be
required to) do the same or cause the same to be done, and the reasonable
amount of any money expended by Lessor in connection therewith shall be due
from Lessee to Lessor as additional rent on or before the next rental due date
bearing interest at the rate set forth in Clause 2(B) above from the date of
payment by Lessor until the repayment to Lessor by Lessee.  On default in such
payment, Lessor shall have the same remedies as on default in payment of rent.
Lessor shall not make any such expenditures without giving prior written
notice thereof to Lessee.

16.   MISCELLANEOUS:

        (A)  Each and every of the rights, remedies and benefits provided
by this Lease shall be cumulative and shall not be exclusive of any other of
said rights, remedies and benefits, or of any other rights, remedies and
benefits allowed by law.

        (B)  One or more waivers of any covenant or condition by Lessor

RIDER ATTACHED TO    J MADE A PART OF LEASE AGREEME.    .ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

shall not be construed as a waiver of a further or subsequent breach of the
same covenant or condition, and the consent or approval by Lessor to or of any
act by Lessee requiring Lessor's (or Lessee's as the case may be ) consent or
approval shall not be deemed to waive or render unnecessary Lessor's consent
or approval to or of any subsequent similar act by Lessee.  The foregoing
Sub-Paragraph (B) shall be equally applicable to Waivers, etc., by Lessee.

(C)  This Lease shall be construed and enforced in accordance with
the laws of the State of Michigan.

(D)  If any term or provision of this Lease shall to any extent be
held  invalid or unenforceable, the remaining terms and provisions shall not
be affected thereby but each term and provision of this Lease shall be valid
and enforced to the fullest extent permitted by law.

(E)  The captions of this Lease are for convenience only and are
not to be construed as part of this Lease and shall not be construed as
defining or limiting in any way the scope or intent of the provisions hereof.

(F)  Whenever herein the singular is used, the same shall include
the plural, and the masculine gender shall include the feminine and neuter
genders.

(G)  This Lease contains the entire agreement between the parties
hereto and previous negotiations leading thereto and it may be modified only
by an agreement in writing signed by Lessor and Lessee.  Lessor and Lessee
hereby expressly declare that no representations have been made other than
those expressly set forth herein.

17.  In the event that any of the terms and conditions of this Rider shall
conflict with any terms or provisions of the lease to which this Rider is
attached, then, this Rider shall be deemed to supercede the terms and pro-
visions of the printed Lease.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Rider on the day and
year first above written.

WITNESSES:                          LESSOR:

_T A Suley_                         M-TECH ASSOCIATES, a Michigan Partnership

                                    BY _____

_____               ITS  GENERAL PARTNER


WITNESSES:                          LESSEE:

_____               GENERAL MOTORS CORPORATION

_Vivian L. Rojas_                   BY _C. C. Busby_

_Assistant Secretary_               ITS _Vice President_

                                    BY _T A Suley_

- 6 -

EXHIBIT "A"
LEGAL DESCRIPTION

T. 2 N., R. 12 E., SEC. 33, COMMENCING AT A POINT 1,067.72 FEET N.0°30'E.
FROM THE S.W. CORNER OF SAID SEC. 33; THENCE N.0°30'E. 247.66 FEET ALONG
SAID SEC. LINE; THENCE N.89°26'15"E. 794.94 FEET; THENCE S.00°25'00"W.
261.23 FEET; THENCE N.89°35'W. 795.20 FEET TO POINT OF BEGINNING, EXCLUDING
THE R.O.W. HERETOFORE CONVEYED FOR THE WIDENING OF MOUND RD., THE NET
ACREAGE BEING 4.06 ACRES.

8419-6
4-8-86
Revised 5-8-86

**RENT SCHEDULE**
For Office/Industrial Facility
29,640 Square Feet
33500 Mound Road, Sterling Heights, Michigan

| Period | Annual Rent | Payment Arrangement |
|---|---|---|
| First 12 Months | $ 391,200 | 6-3-87  5-7-58  195,600   Semi-annually (1) |
| Second 12 Months | 400,200 | 33,350   Per Month |
| Third 12 Months 1989 | 409,200 | 34,100 ✓ Per Month |
| Fourth 12 Months 1990 | 418,800 | 34,900 ✓ Per Month |
| Fifth 12 Months 1991 | 428,400 | 35,700   Per Month |
| Sixth 12 Months 1992 | 438,000 | 36,500   Per Month |
| Seventh 12 Months 1993 | 448,200 | 37,350   Per Month |
| Eighth 12 Months 1994 | 458,400 | 38,200   Per Month |
| Ninth 12 Months 1995 | 469,200 | 39,100   Per Month |
| Tenth 12 Months 1996 | 480,000 | 40,000   Per Month |

If Lessee does not exercise their option to extend the Lease for years eleven through fifteen, Lessee will pay Lessor the sum of $1,500,000. That sum is to compensate Lessor for unamortized cost of extraordinary improvements. If Lessee exercises their option to extend the Lease for years eleven through fifteen, the annual rents will be as follows:

| Period | Annual Rent | Payment Arrangement |
|---|---|---|
| Eleventh 12 Months | $ 495,600 | $ 41,300   Per Month |
| Twelth 12 Months | 511,200 | 42,600   Per Month |
| Thirteenth 12 Months | 526,800 | 43,900   Per Month |
| Fourteenth 12 Months | 543,600 | 45,300   Per Month |
| Fifteenth 12 Months | 560,400 | 46,700   Per Month |

If Lessee does not extend the Lease after the Fifteenth year, the Lessee will pay Lessor the sum of $1,400,000. That sum is to compensate Lessor for unamortized cost of extraordinary improvements.

(1)  To be paid at the end of the sixth month and twelfth month for preceding six-month period.  Subsequent rent to be paid at beginning of each month.

# EXHIBIT C

## LEASE AMENDMENT AGREEMENT

**AGREEMENT** made this 18th day of October 2000, between M-TECH ASSOCIATES, a Michigan co-partnership, with its principal address at 28388 Franklin Road, Southfield, Michigan 48034, hereinafter referred to as Lessor, and GENERAL MOTORS CORPORATION, a Delaware corporation, with its principal address at 2300 Renaissance Center, Detroit, Michigan 48265, hereinafter referred to as Lessee.

### WITNESSETH:

That the Lease Agreement dated August 28, 1986, between the parties hereto covering approximately 29,460 square feet of office and manufacturing floor space at 33500 Mound Road, Sterling Heights, Michigan, for a term commencing January 15, 1987 and expiring January 14, 2002, is hereby amended as follows:

Lessee may, at its option by providing Lessor with at least two hundred seventy (270) days prior written notice, extend this Lease for a further period of five (5) years upon all the same terms and conditions except at a rental rate equal to the rental rate as shown on the attached Exhibit "A" or at such other rental rate as may be agreed to by Lessee and Lessor at the time written notice is given.

Except as heretofore amended and extended and as hereby amended, said Lease Agreement dated August 28, 1986, is in all respects ratified and confirmed.

1

JAN 31 2001 11:51 FR 200-38-TC          313 665 6746 TO 912483563509     P.03/04

**IN WITNESS WHEREOF,** the Lessor has signed and sealed this instrument this _____ day of October 2000 and the Lessee has signed and sealed this instrument this 19th day of October 2000.

In the presence of:

M-TECH ASSOCIATES, a Michigan co-partnership

By: _____

Sam L. Yaker, General Partner

In the presence of:

GENERAL MOTORS CORPORATION

Nancy A. Treuter

By: _____

LAWRENCE W. LOBB

ATTEST _____

Assistant Secretary

Cheryl Pence Lindeman

MW:F:1679SLY.DOC

BY
R. D. HERRLING
FORM APPROVED
ATTORNEY

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY

JAN 31 2001 11:51 FR 200-38-TC          313 665 6746 TO 912483563509       P.04/04

### EXHIBIT "A"
### TO LEASE ADDENDUM AGREEMENT
### RENT SCHEDULE
#### For Office/Industrial Facility
#### 29,640 Square Feet
#### 33500 Mound Road, Sterling Heights, Michigan
#### October 18, 2000

Lessor and Lessee agrees to extend the Lease for years sixteen through twenty with the annual and monthly rents as follows:

| Period | Annual Rent | Payment Arrangement |
| --- | --- | --- |
| Sixteenth – 12 months 2002 | $577,200 | $48,100 Per month |
| Seventeenth – 12 months 2003 | $594,000 | $49,500 Per month |
| Eighteenth – 12 months 2004 | $612,000 | $51,000 Per month |
| Nineteenth – 12 months 2005 | $630,000 | $52,500 Per month |
| Twentieth – 12 months 2006 | $649,200 | $54,100 Per month |

If Lessee does not extend the Lease for five years beyond the twentieth year, the Lessee will pay the Lessor the sum of $1,100,000. That sum is to compensate Lessor for unamortized cost, etc.

MW:F:1850SLY.DOC

## LEASE AMENDMENT AGREEMENT

AGREEMENT made this *19th* day of July 2001, between M-TECH ASSOCIATES, a Michigan co-partnership, with its principal address at 28388 Franklin Road, Southfield, Michigan 48034, hereinafter referred to as Lessor, and GENERAL MOTORS CORPORATION, a Delaware corporation, with its principal address at 300 Renaissance Center, P.O. Box 300, Detroit, Michigan 48265-3000, hereinafter referred to as Lessee.

## AMENDMENT AND UNDERSTANDINGS:

That the Lease Agreement dated August 28, 1986, between the parties hereto covering approximately 29,460 square feet of office and manufacturing floor space at 33500 Mound Road, Sterling Heights, Michigan, for a term commencing January 15, 1987 and expiring January 14, 2002, is hereby amended as follows:

The parties previously agreed that Lessee may, at its option and by providing Lessor with at least two hundred seventy (270) days prior written notice, extend this Lease for a period of five (5) years upon all the same terms and conditions except at rental rates equal to the rates shown on the attached Exhibit "A" or at such other rates that may be agreed to by Lessee and Lessor at the time written notice is given.

Lessee has agreed to exercise the option provided in the preceding paragraph and as hereinafter provided and to extend the Lease for a period of five (5) years as provided herein.

If during the term of this Lease Extension General Motors has not elected and begun to use and improve the easterly 300 feet of the leased property, as indicated on the attached Exhibit "B", then M-Tech Associates shall have the right to remove that easterly 300 feet from the Lease. If during the Lease Extension, M-Tech decides to

1

remove the easterly 300 feet from the Lease, M-Tech will provide General Motors with at least sixty (60) days written notice prior to that removal.


## OPTION TO PURCHASE

LESSOR hereby grants LESSEE an Option to Purchase the property, excluding the easterly 300 feet, at the following price and terms:

1.  The purchase price, during January 2002, is $6,150,000.
2.  The purchase price for the balance of 2002; from February 1 through December 31, 2002 will be $6,350,000.
3.  The purchase price from January 1 through December 31, 2003 will be $6,540,000.
4.  The purchase price from January 1 through December 31, 2004 will be $6,735.000.
5.  The purchase price from January 1 through December 31, 2005 will be $6,935,000.
6.  The purchase price from January 1 through December 31, 2006 will be $7,150,000.

If the easterly 300 feet is included the foregoing purchase prices will be increased as follows provided that the easterly 300 feet has not been removed from the Lease as provided with Exhibit "A" attached hereto:

1.  $200,000 during January 2002
2.  $205,000 from February 1, 2002 through December 31, 2002
3.  $210,000 from January 1, 2003 through December 31, 2003
4.  $215,000 from January 1, 2004 through December 31, 2004
5.  $220,000 from January 1, 2005 through December 31, 2005
6.  $225,000 from January 1, 2006 through December 31, 2006

2

Lessee shall provide Lesser with at least ninety (90) days written notice prior to the exercise of this Option to Purchase.

## OPTION TO EXTEND

LESSOR grants LESSEE an Option to Extend the Lease for an additional five (5) years from January 16, 2007 through January 15, 2012 (years twenty-one through twenty-five).

    a.    The rent during the first year of this extension (January 16, 2007 through January 15, 2012) i.e., year twenty-one, will be 103% of the rent during the 20th year.

    b.    The rent in year 22 will be 103% of the rent in year 21.

    c.    Thereafter the rent will increase by 3% per year.

    d.    The termination fee at the end of the 25th year will be the sum of $800,000.

LESSEE agrees to notify LESSOR of its decision to either extend the Lease pursuant to this Option to Extend for years 21 through 25 or to terminate the Lease at the end of the 20th year by on or before January 31, 2006.

Except as heretofore amended and extended and as hereby amended, said Lease Agreement dated August 28, 1986 as previously amended is, in all respects, reratified and reconfirmed.

3

IN WITNESS WHEREOF, the Lessor has signed and sealed this instrument this _19th_
day of July 2001 and the Lessee has signed and sealed this instrument this _25_ day of
July 2001.

In the presence of:

M-TECH ASSOCIATES, a Michigan co-
partnership

By: _____
        Sam L. Yaker, General Partner

In the presence of:

GENERAL MOTORS CORPORATION

By: _____
        Marilyn P. Rar
        Director
        Worldwide Real Estate

Nancy A. Treuter

ATTEST _____
        Assistant Secretary
        Sandra K. Phillips

LAWRENCE W. LOBB

MW:F:167SSLY.DOC

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY: _____

4

**EXHIBIT "A"**
**TO LEASE AMENDMENT AGREEMENT**
**RENT SCHEDULE**
**For Office/Industrial Facility**
**29,640 Square Feet**
**33500 Mound Road, Sterling Heights, Michigan**
**Dated July _14_ , 2001**

Lessor and Lessee agree to extend the Lease for years sixteen through twenty with the annual and monthly rents as follows:

| Period | Annual Rent | Payment Arrangement |
|---|---|---|
| Sixteenth – 12 months 2002 | $576,000 | $48,000 Per month |
| Seventeenth – 12 months 2003 | $588,000 | $49,000 Per month |
| Eighteenth – 12 months 2004 | $600,000 | $50,000 Per month |
| Nineteenth – 12 months 2005 | $612,000 | $51,000 Per month |
| Twentieth – 12 months 2006 | $624,000 | $52,000 Per month |

If Lessee does not extend the Lease for five years beyond the twentieth year, the Lessee will pay the Lessor the sum of $1,100,000. That sum is to compensate Lessor for unamortized cost.

MW:F:1958SLY.DOC

EXHIBIT
"B"
TO JUNE 2001
LEASE AMENDMENT
33500 MOUND RD.
STERLING HTS, MI.

## THIRD LEASE AMENDMENT AGREEMENT

THIS THIRD LEASE AMENDMENT AGREEMENT (this "Third Amendment") is made and entered into effective as of the $\mathcal{S}w$ day of June, 2006 (the "Third Amendment Effective Date"), by and between M-TECH ASSOCIATES, a Michigan co-partnership ("Lessor") and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee").

### RECITALS

A.    Lessor and Lessee entered into that certain Lease dated August 28, 1986, as amended by that certain Lease Amendment Agreement dated October 18, 2000, and as amended by that certain Lease Amendment Agreement dated July 19, 2001 (collectively, the "Lease"), pursuant to which Lessor leases to Lessee approximately 29,460 square feet of office and manufacturing floor space at 33500 Mound Road in Sterling Heights, Michigan, as more particularly shown on Exhibit A to the Lease.

B.    Lessor and Lessee desire to amend the Lease as herein provided.

### AGREEMENT

NOW, THEREFORE, for the covenants and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.    Defined Terms.    All initially capitalized terms not otherwise expressly defined herein shall have the meanings set forth for such terms in the Lease.

2.    Effective Date of Third Amendment.    On the Third Amendment Effective Date, the amendments contained in this Third Amendment shall become effective.

3.    Amendments.

(a)    Term.    The term of the Lease shall be extended for an additional period of ten (10) years (the "Extended Term"), commencing on January 15, 2007 and expiring on January 14, 2017.

(b)    Base Rent.    Base Rent during the Extended Term shall be as follows.

| Lease Year | Monthly Base Rent | Lease Year | Monthly Base Rent |
|---|---|---|---|
| Year 1 | $26,772 ✓ | Year 6 | $29,558 |
| Year 2 | $27,307 ✓ | Year 7 | $30,150 |
| Year 3 | $27,853 | Year 8 | $30,752 |
| Year 4 | $28,410 | Year 9 | $31,360 |
| Year 5 | $28,979 | Year 10 | $31,995 |

*(handwritten: J eff. Rate Jan. 1st 2007; 2008)*

{#00742698.3 07138-9999 5/15/06  01:23 PM}

(c)  **Option to Renew.**  Lessee shall have the option to renew the Lease at the end of the Extended Term upon two hundred seventy days (270) days written notice for one (1) five (5) year term (the "Renewal Term").  Base Rent during the Renewal Term shall be as follows:

| Lease Year | Monthly Base Rent |
|------------|-------------------|
| Year 11    | $32,635           |
| Year 12    | $33,288           |
| Year 13    | $33,953           |
| Year 14    | $34,632           |
| Year 15    | $35,325           |

(d)  **Option to Terminate.**  Lessee shall have the option to terminate the Lease at the end of the fifth (5th) year of the Extended Term upon two hundred seventy days (270) days written notice to Lessor and Lessee's delivery to Lessor of a termination payment in the amount of Six Hundred Forty-Five Thousand and No/100 Dollars ($645,000.00).

4.  Counterparts.  This Third Amendment may be executed in counterparts, each of which when executed shall constitute one and the same agreement.

5.  Full Force and Effect.  Except as otherwise provided herein, the parties acknowledge and agree that the Lease, as previously amended, shall remain in full force and effect.

*(signature page follows)*

IN WITNESS WHEREOF, the parties hereto executed this Third Amendment as of the day and year first written above.

LESSOR:

M-TECH ASSOCIATES, a Michigan co-partnership

By: _____
Name: Sam L. Yaker
Title: General Partner

LESSEE:

GENERAL MOTORS CORPORATION, a Delaware corporation

By: _____
Name:   Debby Homit-Houge
Title:   Director of Worldwide Real Estate

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE

By _____

# EXHIBIT D

**From:** ten.tempid@gm.com
**Sent:** Thursday, March 25, 2010 3:01 PM
**To:** xif@comcast.net
**Subject:** 33500 Mound Rd.

Mr. Yaker,

Please see the attached for proof of payment of the property taxes pursuant to the lease agreement you referenced.

Sincerely,
Jon Naudi
General Motors Corporation
GM Tax Staff
(313)665-3705    .

Nothing in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

Confidentiality Note: This message is intended only for the person or entity to which it is addressed. It may contain confidential and/or privileged material. Any review, transmission, dissemination or other use, or taking of any action in reliance upon this message by persons or entities other than the intended recipient is prohibited and may be unlawful. If you received this message in error, please contact the sender and delete it from your computer.