# EXHIBIT 1

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One)**                                  **Case No**

*Your Claim is Scheduled As Follows.*

☑ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet Saturn of Harlem, Inc )    09-13558 (REG)

NOTE *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property) Wilmington Trust Company as Indenture Trustee under Indenture dated as of November 15, 1990

**Name and address where notices should be sent**
Wilmington Trust Company, as Indenture Trustee
c/o Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn  Matthew Williams
Telephone number  (212) 351-4000
Email Address   mjwilliams@gibsondunn com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
*(If known)*

Filed on _____

FILED - 47871
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**Name and address where payment should be sent** (if different from above)
Wilmington Trust Company, as Indenture Trustee
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890
Attn  David A Vanaskey
Telephone number  (866) 521-0079

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**1**  Amount of Claim as of Date Case Filed, June 1, 2009    $1,439,581,281 12 plus additional amounts described in the attached addendum

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2**  Basis for Claim  Indenture dated as of November 15, 1990  See attached addendum
(See instruction #2 on reverse side )

**3**  Last four digits of any number by which creditor identifies debtor _____

   **3a**  Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4**  Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property $_____  Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection _____

Amount of Secured Claim  $_____  Amount Unsecured  $_____

**5**  Amount of Claim Entitled to Priority under 11 U S C § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

Amount entitled to priority

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

**6**  Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7**  Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  *(See instruction 7 and definition of 'redacted' on reverse side )*

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

Date  11/24/09

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any

David A Vanaskey, Vice President

FOR COURT USE ONLY
THE GARDEN CITY GROUP, INC.
NOV 2 5 2009

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL BAR DATE IN THESE CHAPTER 11 CASES IS NOVEMBER 30, 2009 at 5:00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim.

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2  Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim.

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5  Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1 2009, the date of commencement of these cases (See DEFINITIONS below). Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the claim

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC | |
| (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc | |
| (f/k/a Chevrolet Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C § 101 et seq ), and any applicable orders of the bankruptcy court

### INFORMATION

**Additional Information**
If you have any questions with respect to this claim form, please contact Aln Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, **f/k/a GENERAL MOTORS CORP.,** *et al.*, | Case No. 09-50026 (REG) |
| **Debtors.** | (Jointly Administered) |

## ADDENDUM TO THE PROOF OF CLAIM OF
## WILMINGTON TRUST COMPANY, AS TRUSTEE, AGAINST
## MOTORS LIQUIDATION COMPANY, f/k/a GENERAL MOTORS CORP.

1    Wilmington Trust Company ("**Wilmington**") is the successor indenture trustee (the "**Trustee**") pursuant to that certain indenture dated as of November 15, 1990 (as amended from time to time, the "**Indenture**")[1] by and between General Motors Corporation, n/k/a Motors Liquidation Company, a debtor herein ("**GM**"), and Citibank, N.A ("**Citibank**"), a copy of which is attached hereto as Exhibit A, for the holders (collectively, the "**Holders**") of the following debentures and notes issued pursuant to the Indenture and certain actions of the Board of Directors of GM:

a    $299,795,000 in original principal amount of 9.40% Debentures due July 15, 2021, CUSIP No 370442AN5, authorized by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of July 15, 1991;[2]

---

[1]  Capitalized terms not defined herein shall have the meanings set forth in the Indenture

[2]  To avoid a voluminous filing, copies of Actions of the Board of Directors have not been attached  However, all supporting documentation is available upon request, subject to applicable confidentiality provisions, if any, by contacting Gibson, Dunn & Crutcher LLP, counsel to Wilmington, at the address referenced in paragraph 11 below

b.      $600,000,000 in original principal amount of 8.80% Notes due March 1, 2021, CUSIP No 370442AJ4, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of March 5, 1991[3],

c      $500,000,000 in original principal amount of 7.40% Debentures due September 1, 2025, CUSIP No. 370442AR6, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of September 6, 1995,

d.      $15,000,000 in original principal amount of 9 40% Medium Term Notes due July 15, 2021, CUSIP No. 37045EAG3, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of December 5, 1990; and

e.      $48,175,000 in original principal amount of 9.45% Medium Term Notes due November 1, 2011, CUSIP No 37045EAS7, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of December 5, 1990 (the debentures and notes described in the foregoing subsections (a) – (e) of this paragraph 1, collectively, the "**Notes**").

2      Wilmington was appointed the Trustee pursuant to the Agreement of Resignation, Appointment and Acceptance, dated as of September 26, 2006, by and among GM, Wilmington and Citibank (the "**Successor Agreement**"), a copy of which is attached hereto as Exhibit B.[4]

3.      The Trustee is authorized to file this Proof of Claim pursuant to Section 6 02 of the Indenture

---

[3] The date of this Action Taken by the Borrowings Committee is based upon information provided to Wilmington by GM  Despite a thorough diligence process, neither GM nor Wilmington were able to locate a written copy of this particular Action Taken by the Borrowings Committee

[4] Pursuant to the Successor Agreement, Citibank continues to act as Securities Registrar and Paying Agent under the Indenture

4.      On June 1, 2009 (the **"Petition Date"**) GM and certain of its affiliates commenced

cases under Chapter 11 of the Bankruptcy Code, 11 U S C §§ 101 *et seq*

5.      Pursuant to Section 6.01(e) of the Indenture, GM's filing of its chapter 11 petition

on the Petition Date was an Event of Default under the Indenture.  Pursuant to Section 6.02 of

the Indenture, in any bankruptcy case of GM, the Trustee is empowered and entitled to seek

payment of the whole principal amount, and premium if any, and any unpaid and accrued interest

in respect of the Notes

6      Consequently, the Trustee, on behalf of the Holders of the Notes, is entitled to

payment in the aggregate amount of at least $1,419,471,545.22, consisting of the outstanding

principal of at least $1,387,765,000 00, plus interest that has accrued up to the Petition Date of at

least $31,706,545 22.[5]

7      Pursuant to Section 7.06 of the Indenture, GM agreed to pay the Trustee

compensation for services rendered under the Indenture   GM further agreed to reimburse the

Trustee for all out-of-pocket expenses, disbursements, and advances incurred or made by it in

connection with the performance of its duties and the discharge of its obligations under the

Indenture, including the fees and expenses of the Trustee's agents and counsel.

8      Pursuant to Section 7.06 of the Indenture, GM agreed to indemnify the Trustee

for, and hold it harmless against, any loss, liability or reasonable expense arising out of or in

connection with the acceptance or administration of the trust, including the costs and expenses of

defending itself against or investigating any claim or liability in connection with the exercise or

performance of any of the Trustee's rights, powers or duties under the Indenture

---

[5] A chart which breaks-down the outstanding principal and unpaid and accrued interest of each of the Notes as of
the Petition Date is attached hereto as Exhibit C

9.    Pursuant to Section 7.06 of the Indenture, to secure GM's payment obligations in respect of the Trustee, the Trustee has a lien prior to the Notes on all assets or money held or collected by the Trustee, in its capacity as Trustee.

10.    As of the Petition Date, the Trustee has outstanding fees and expenses owing under the Indenture in amount of at least $109,735.90, which relate, in part, to fees and expenses incurred in connection with a prepetition exchange offer.  In addition, the Trustee may have claims for certain unliquidated fees and expenses of the Paying Agent under the Indenture. Furthermore, since the Petition Date, the Trustee and its counsel, Gibson, Dunn & Crutcher LLP, have incurred and continue to incur fees and expenses for services rendered under and in connection with the Indenture

11.    Notices regarding this Proof of Claim should be sent to·

> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, New York 10166
> Tel  212-351-4000
> Fax: 212-351-4035
> Email. mjwilliams@gibsondunn com
>         kmartorana@gibsondunn com
> Attn    Matthew J. Williams, Esq
>         Keith R. Martorana, Esq.
>
>         -and-
>
> Wilmington Trust Company
> Rodney Square North
> 1100 North Market Street
> Wilmington, Delaware 19890
> Tel: (866) 521-0079
> Fax  (302) 636-4140
> Email: dvanaskey@wilmingtontrust.com
> Attn: Mr. David A. Vanaskey, Vice President

12    The Trustee expressly reserves its right to replace, amend or supplement this Proof of Claim to include any claims at law or in equity  The filing of this Proof of Claim shall

not be deemed a waiver of any claim in law or in equity that the Trustee may have against GM, its affiliates, or others, including, but not limited to, administrative or other priority claims, secured claims, constructive trust claims, the right to seek adequate protection or the right to assert claims that are otherwise warranted in any related action. Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of the Trustee with respect to any other claims against any of the affiliates of GM.

13    The filing of this Proof of Claim is not intended to be and should not be construed as (a) a consent by the Trustee to the jurisdiction of this Court with respect to the subject matter of this claim, any objection or other proceeding commenced in this case or otherwise involving the Trustee; (b) a waiver of the rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate or guarantor of GM or otherwise, (c) a waiver or release of the Trustee's right to trial by jury, in this or any other court; (d) a waiver of the Trustee's right to have final orders in non-core matters entered only after *de novo* review by a United States District Court Judge, or (e) a waiver of any right to (i) withdraw the reference, or otherwise challenge the jurisdiction of this court, with respect to the subject matter of this claim, any objection or other proceeding commenced in this case against or otherwise involving the Trustee; or (ii) assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving the Trustee

14.    The Trustee specifically reserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee by GM, any of its successors and assigns or by any trustee for the estate of GM.

15.    The Holders of the Notes may have separate claims against GM, its affiliates or others which are not included in this Proof of Claim, and nothing contained herein shall prejudice such claims.



**Exhibit A**

**1990 Indenture**





# GENERAL MOTORS CORPORATION

and

## CITIBANK, N.A.,
*Trustee*

---

## Indenture

*Dated as of November 15, 1990*

---

## Debt Securities

## CROSS REFERENCE SHEETS*

### BETWEEN

Provisions of Sections 310 through 318(a) of the Trust Indenture Act of 1939 and the within Indenture between General Motors Corporation and Citibank, N.A., Trustee:

| Section of Act | Section of Indenture |
|---|---|
| 310(a)(1) and (2) | 7.09 |
| 310(a)(3) and (4) | Not applicable |
| 310(b) | 7.08 and 7.10(b) |
| 310(c) | Not applicable |
| 311(a) and (b) | 7.13 |
| 311(c) | Not applicable |
| 312(a) | 5.01 and 5.02(a) |
| 312(b) and (c) | 5.02(b) and (c) |
| 313(a) | 5.04(a) |
| 313(b)(1) | Not applicable |
| 313(b)(2) | 5.04(b) |
| 313(c) | 5.04(c) |
| 313(d) | 5.04(d) |
| 314(a) | 5.03 |
| 314(b) | Not applicable |
| 314(c)(1) and (2) | 14.04 |
| 314(c)(3) | Not applicable |
| 314(d) | Not applicable |
| 314(e) | 14.04 |
| 314(f) | Not applicable |
| 315(a), (c) and (d) | 7.01 |
| 315(b) | 6.07 |
| 315(c) | 6.08 |
| 316(a)(1) | 6.01 and 6.06 |
| 316(a)(2) | Omitted |
| 316(a) last sentence | 8.04 |
| 316(b) | 6.04 |
| 317(a) | 6.02 |
| 317(b) | 4.03(a) |
| 318(a) | 14.06 |

* This Cross-Reference Sheet is not part of the Indenture.

# TABLE OF CONTENTS*

|  | PAGE |
|---|---|
| PARTIES | 1 |
| RECITALS | 1 |

## ARTICLE ONE.

### DEFINITIONS.

| | | PAGE |
|---|---|---|
| SECTION 1.01. | Definitions | 1 |
| | Additional Amounts | 1 |
| | Authorized Newspaper | 1 |
| | Board of Directors | 2 |
| | Board Resolution | 2 |
| | Business Day | 2 |
| | Corporate Trust Office | 2 |
| | Corporation | 2 |
| | Corporation Order | 2 |
| | Coupon | 2 |
| | Coupon Security | 2 |
| | Depositary | 2 |
| | Event of Default | 3 |
| | Global Security | 3 |
| | Holder | 3 |
| | Indenture | 3 |
| | Interest | 3 |
| | Interest Payment Date | 3 |
| | Officers' Certificate | 3 |
| | Opinion of Counsel | 3 |
| | Original Issue Discount Securities | 3 |
| | Outstanding | 4 |
| | Person | 4 |
| | Place of Payment | 4 |
| | Registered Security | 4 |
| | Regular Record Date | 4 |
| | Responsible Officer | 4 |
| | Security Register and Security Registrar | 4 |
| | Trust Indenture Act of 1939 | 5 |
| | United States | 5 |
| | United States person | 5 |
| | Unregistered Security | 5 |
| | U.S Dollar | 5 |

## ARTICLE TWO.

### ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES.

| | | |
|---|---|---|
| SECTION 2.01. | Amount Unlimited; Issuable in Series | 5 |
| SECTION 2.02. | Form of Trustee's Certificate of Authentication | 7 |

* The Table of Contents is not part of the Indenture.

PAGE

SECTION 2.03. Form, Execution, Authentication, Delivery and Dating of Securities . . . . . . . . . . . . 7
SECTION 2.04. Denominations; Record Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
SECTION 2.05. Exchange and Registration of Transfer of Securities . . . . . . . . . . . . . . . . . . . . . . . 9
SECTION 2.06. Temporary Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
SECTION 2.07. Mutilated, Destroyed, Lost or Stolen Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
SECTION 2.08. Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 2.09 Computation of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 2.10. Securities in Global Form . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 2.11. Medium-Term Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE THREE.

REDEMPTION OF SECURITIES.

SECTION 3.01. Redemption of Securities; Applicability of Article . . . . . . . . . . . . . . . . . . . . . . 12
SECTION 3 02 Notice of Redemption; Selection of Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
SECTION 3.03. Payment of Securities Called for Redemption . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE FOUR.

PARTICULAR COVENANTS OF THE CORPORATION.

SECTION 4.01. Payment of Principal, Premium, Interest and Additional Amounts . . . . . . . . . . . . . 14
SECTION 4.02. Offices for Notices and Payments, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
SECTION 4.03. Provisions as to Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
SECTION 4.04. Luxembourg Publications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
SECTION 4.05. Statement by Officers as to Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
SECTION 4.06. Limitation on Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
SECTION 4.07. Limitation on Sale and Lease-Back . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
SECTION 4.08. Definitions Applicable to Sections 4.06 and 4.07 . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARTICLE FIVE.

SECURITYHOLDER LISTS AND REPORTS BY THE CORPORATION AND THE TRUSTEE.

SECTION 5.01. Securityholder Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
SECTION 5.02. Preservation and Disclosure of Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
SECTION 5.03. Reports by the Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
SECTION 5.04. Reports by the Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARTICLE SIX.

REMEDIES ON DEFAULT.

SECTION 6.01. Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
SECTION 6.02. Payment of Securities on Default; Suit Therefor . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ii

|  |  | PAGE |
|---|---|---|
| SECTION 6.03. | Application of Moneys Collected by Trustee | 24 |
| SECTION 6.04. | Proceedings by Securityholders | 25 |
| SECTION 6.05. | Remedies Cumulative and Continuing | 25 |
| SECTION 6.06. | Direction of Proceedings | 25 |
| SECTION 6.07. | Notice of Defaults | 26 |
| SECTION 6.08. | Undertaking to Pay Costs | 26 |

## ARTICLE SEVEN.

### CONCERNING THE TRUSTEE.

| SECTION 7.01. | Duties and Responsibilities of Trustee | 26 |
|---|---|---|
| SECTION 7.02. | Reliance on Documents, Opinions, etc. | 27 |
| SECTION 7.03. | No Responsibility for Recitals, etc. | 28 |
| SECTION 7.04. | Ownership of Securities or Coupons | 28 |
| SECTION 7.05. | Moneys to be Held in Trust | 28 |
| SECTION 7.06. | Compensation and Expenses of Trustee | 28 |
| SECTION 7.07. | Officers' Certificate as Evidence | 28 |
| SECTION 7.08. | Conflicting Interest of Trustee | 29 |
| SECTION 7.09. | Eligibility of Trustee | 32 |
| SECTION 7.10. | Resignation or Removal of Trustee | 32 |
| SECTION 7.11. | Acceptance by Successor Trustee | 33 |
| SECTION 7.12. | Successor by Merger, etc. | 34 |
| SECTION 7.13. | Limitations on Rights of Trustee as Creditor | 34 |

## ARTICLE EIGHT.

### CONCERNING THE SECURITYHOLDERS.

| SECTION 8.01. | Action by Securityholders | 37 |
|---|---|---|
| SECTION 8.02. | Proof of Execution by Securityholders | 37 |
| SECTION 8.03. | Who Are Deemed Absolute Owners | 38 |
| SECTION 8.04. | Corporation-Owned Securities Disregarded | 38 |
| SECTION 8.05. | Revocation of Consents; Future Securityholders Bound | 38 |
| SECTION 8.06. | Securities in a Foreign Currency | 39 |

## ARTICLE NINE.

### SECURITYHOLDERS' MEETINGS.

| SECTION 9.01. | Purposes of Meetings | 39 |
|---|---|---|
| SECTION 9.02. | Call of Meetings by Trustee | 39 |
| SECTION 9.03. | Call of Meetings by Corporation or Securityholders | 40 |
| SECTION 9.04. | Qualification for Voting | 40 |
| SECTION 9.05. | Regulations | 40 |

|  |  | PAGE |
|---|---|---|
| SECTION 9.06. | Voting | 41 |

## ARTICLE TEN.

### SUPPLEMENTAL INDENTURES.

| SECTION 10.01. | Supplemental Indentures without Consent of Securityholders | 41 |
| SECTION 10.02. | Supplemental Indentures with Consent of Securityholders | 42 |
| SECTION 10.03. | Compliance with Trust Indenture Act. Effect of Supplemental Indentures | 43 |
| SECTION 10.04. | Notation on Securities | 43 |

## ARTICLE ELEVEN.

### CONSOLIDATION, MERGER, SALE OR CONVEYANCE.

| SECTION 11.01. | Corporation May Consolidate, etc., on Certain Terms | 43 |
| SECTION 11.02 | Successor Corporation Substituted | 43 |
| SECTION 11.03. | Opinion of Counsel to be Given Trustee | 44 |

## ARTICLE TWELVE.

### SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS.

| SECTION 12.01. | Discharge of Indenture | 44 |
| SECTION 12 02. | Satisfaction, Discharge and Defeasance of Securities of any Series | 44 |
| SECTION 12.03. | Deposited Moneys to be Held in Trust by Trustee | 45 |
| SECTION 12.04. | Paying Agent to Repay Moneys Held | 45 |
| SECTION 12.05. | Return of Unclaimed Moneys | 46 |

## ARTICLE THIRTEEN.

### IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS

| SECTION 13.01. | Indenture and Securities Solely Corporate Obligations | 46 |

## ARTICLE FOURTEEN.

### MISCELLANEOUS PROVISIONS.

| SECTION 14.01. | Benefits of Indenture Restricted to Parties and Securityholders | 46 |
| SECTION 14.02. | Provisions Binding on Corporation's Successors. | 46 |
| SECTION 14.03. | Addresses for Notices, etc. | 46 |
| SECTION 14.04. | Evidence of Compliance with Conditions Precedent | 47 |
| SECTION 14.05. | Legal Holidays | 47 |
| SECTION 14.06. | Trust Indenture Act to Control | 47 |
| SECTION 14.07. | Execution in Counterparts | 47 |
| SECTION 14.08. | New York Contract | 47 |
| ACCEPTANCE OF TRUST BY TRUSTEE | | 47 |

|  | PAGE |
|---|---|
| TESTIMONIUM . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   . . . . . .   . . . . . . . . . . . . | 48 |
| SIGNATURES AND SEALS   . . . . . . . . . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . | 48 |
| ACKNOWLEDGMENTS . . . . . . . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 49 |



THIS INDENTURE, dated as of the fifteenth day of November, 1990 between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (hereinafter sometimes called the "Corporation"), party of the first part, and Citibank, N.A., a national banking association duly incorporated, and existing under the laws of the United States of America (hereinafter sometimes called the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven), party of the second part.

WITNESSETH:

WHEREAS, the Corporation deems it necessary to issue from time to time for its lawful purposes securities (hereinafter called the "Securities" or, in the singular, "Security") evidencing its unsecured indebtedness and has duly authorized the execution and delivery of this Indenture to provide for the issuance of the Securities in one or more series, unlimited as to principal amount, to bear such rates of interest, to mature at such time or times and to have such other provisions as shall be fixed as hereinafter provided; and

WHEREAS, the Corporation represents that all acts and things necessary to constitute these presents a valid indenture and agreement according to its terms, have been done and performed, and the execution of this Indenture has in all respects been duly authorized, and the Corporation, in the exercise of legal rights and power in it vested, is executing this Indenture;

NOW, THEREFORE:

In order to declare the terms and conditions upon which the Securities are authenticated, issued and received, and in consideration of the premises, of the purchase and acceptance of the Securities by the Holders thereof and of the sum of one dollar to it duly paid by the Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Corporation covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective Holders from time to time of the Securities, as follows.

## ARTICLE ONE.

### DEFINITIONS

SECTION 1.01 *Definitions.* The terms defined in this Section (except as herein otherwise provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture which are defined in the Securities Act of 1933, as amended, shall have the meanings (except as herein otherwise expressly provided or unless the context otherwise requires) assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture as originally executed. Certain terms used wholly or principally within an Article of this Indenture may be defined in that Article.

### Additional Amounts

The term "Additional Amounts" shall mean any additional amounts which are required by a Security or by or pursuant to a Board Resolution under circumstances specified therein, to be paid by the Corporation in respect of certain taxes, assessments or governmental charges imposed on certain Holders of Securities and which are owing to such Holders of Securities.

### Authorized Newspaper

The term "Authorized Newspaper" shall mean a newspaper in an official language of the country of publication of general circulation in the place in connection with which the term is used. If it shall be impractical in the opinion of the Trustee to make any publication of any notice required hereby in an Authorized Newspaper, any publication or other notice in lieu thereof which is made or given with the approval of the Trustee shall constitute a sufficient publication of such notice.

1

*Board of Directors*

The term "Board of Directors" shall mean the Board of Directors of the Corporation or the Finance Committee of the Corporation or any committee established by the Finance Committee.

*Board Resolution*

The term "Board Resolution" shall mean a resolution certified by the Secretary or Assistant Secretary of the Corporation to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

*Business Day*

The term "Business Day" shall mean, with respect to any Security, a day (other than a Saturday or Sunday) that in the city (or in any of the cities, if more than one) in which amounts are payable as specified on the face of the form of such Security, is neither a legal holiday nor a day on which banking institutions are authorized or required by law, regulation or executive order to close.

*Corporate Trust Office*

The term "Corporate Trust Office" means the office of the Trustee in New York, New York, at which at any particular time its corporate trust business shall be principally administered, which office at the date hereof is located at 120 Wall Street, New York, NY 10043, except that, with respect to presentation of Securities for payment or registration of transfers and exchanges and the location of the Security Registrar, such term means the office or agency of the Trustee in said city at which at any particular time its corporate agency business shall be conducted, which at the date hereof is located at 111 Wall Street, New York, NY 10043.

*Corporation*

The term "Corporation" shall mean the Person named as the "Corporation" in the first paragraph of this instrument until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation.

*Corporation Order*

The term "Corporation Order" shall mean a written order signed in the name of the Corporation by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer of the Corporation

*Coupon*

The term "coupon" shall mean any interest coupon appertaining to a Security.

*Coupon Security*

The term "Coupon Security" shall mean any Security authenticated and delivered with one or more coupons appertaining thereto.

*Depositary*

The term "Depositary" shall mean, with respect to the Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depositary by the

2

Corporation pursuant to Section 2.01 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Securities of any such series shall mean the Depositary with respect to the Securities of that series.

### Event of Default

The term "Event of Default" shall mean any event specified as such in Section 6.01.

### Global Security

The term "Global Security" shall mean a Registered Security or an Unregistered Security evidencing all or part of a series of Securities issued to the Depositary for such series in accordance with Section 2.03.

### Holder

The terms "Holder," "Holder of Securities," "Securityholder" or other similar terms, shall mean (a) in the case of any Registered Security, the person in whose name at the time such Security is registered on the registration books kept for that purpose in accordance with the terms hereof, and (b) in the case of any Unregistered Security, the bearer of such Security.

### Indenture

The term "Indenture" shall mean this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof.

### Interest

The term "Interest" shall mean, when used with respect to non-interest bearing Securities, interest payable after maturity.

### Interest Payment Date

The term "Interest Payment Date" when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

### Officers' Certificate

The term "Officers' Certificate" shall mean a certificate signed by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer of the Corporation.

### Opinion of Counsel

The term "Opinion of Counsel" shall mean an opinion in writing signed by legal counsel, who may be an employee of or counsel to the Corporation, or who may be other counsel acceptable to the Trustee.

### Original Issue Discount Securities

The term "Original Issue Discount Securities" shall mean any Securities which are initially sold at a discount from the principal amount thereof and which provide upon Event of Default for declaration of an amount less than the principal amount thereof to be due and payable upon acceleration thereof.

3

*Outstanding*

The term "Outstanding", when used with reference to Securities, shall, subject to the provisions of Section 7.08 and Section 8.04, mean, as of any particular time, all Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(b) Securities, or portions thereof, for the payment or redemption of which moneys in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Corporation) or shall have been set aside and segregated in trust by the Corporation (if the Corporation shall act as its own paying agent), provided, that if such Securities are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as in Article Three provided, or provisions satisfactory to the Trustee shall have been made for giving such notice; and

(c) Securities in lieu of and in substitution for which other Securities shall have been authenticated and delivered pursuant to the terms of Section 2.07, unless proof satisfactory to the Trustee is presented that any such Securities are held by bona fide Holders in due course.

*Person*

The term "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

*Place of Payment*

The term "Place of Payment," when used with respect to the Securities of any series, means the office or agency of the Corporation in the Borough of Manhattan, the City of New York, designated and maintained by the Corporation pursuant to Section 4.02 and such other place or places where the principal of (and premium, if any) and interest (and Additional Amounts, if any) on the Securities of that series are payable as specified as contemplated by Sections 2.01 and 2.04.

*Registered Security*

The term "Registered Security" shall mean any Security registered on the Security registration books of the Corporation.

*Regular Record Date*

The term "Regular Record Date" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Sections 2.01 and 2.04.

*Responsible Officer*

The term "responsible officer" when used with respect to the Trustee shall mean any vice president, any assistant vice president, any senior trust officer or trust officer or any other officer of the Trustee customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

*Security Register and Security Registrar*

The term "Security Register" and "Security Registrar" shall have the respective meanings specified in Section 2.05.

4

*Trust Indenture Act of 1939*

Except as otherwise provided in Sections 10.01 and 10.02, the term "Trust Indenture Act of 1939" shall mean the Trust Indenture Act of 1939 as in force at the date of this Indenture as originally executed.

*United States*

The term "United States" shall mean the United States of America (including the States and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

*United States person*

The term "United States person" has the meaning given to it by the Internal Revenue Code of 1986, as amended, and regulations thereunder, including U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D).

*Unregistered Security*

The term "Unregistered Security" shall mean any Security other than a Registered Security.

*U.S. Dollar*

The term "U.S. Dollar" or "$" means a dollar or other equivalent unit in such coin or currency of the United States of America as at the time shall be legal tender for the payment of public and private debts.

## ARTICLE TWO.

### ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES.

SECTION 2.01. *Amount Unlimited; Issuable in Series.* The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series:

(1) the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 2.05, 2.06, 2.07, 3.02 or 10.04);

(3) the date or dates on which the principal of the Securities of the series is payable;

(4) the rate or rates, which may be fixed or variable, at which the Securities of the series shall bear interest, if any, and if the rate or rates are variable, the manner of calculation thereof, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable and, in the case of Registered Securities the Regular Record Date for the determination of Holders of such Securities to whom interest is payable on any Interest Payment Date;

(5) the place or places (in addition to such place or places specified in this Indenture) where the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on Securities of the series shall be payable;

5

(6) *the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series may be redeemed, in whole or in part, at the option of the Corporation;*

(7) the obligation, if any, of the Corporation to redeem or purchase Securities of the series pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed or purchased, in whole or in part, pursuant to such obligation;

(8) if other than U.S. Dollars, the currency or currencies, or units based on or related to foreign currencies, including European Currency Units ("ECUs"), in which the Securities of the series shall be denominated and in which payments of principal of, any premium on, interest on, if any, and any other amounts payable with respect to such Securities shall or may be payable; or in the manner in which such currency, currencies or composite currencies will be determined; and if the principal of (and premium, if any), interest, if any, on the Securities of such series are to be payable, at the election of the Corporation or a holder thereof, in a currency or currencies, including composite currencies, other than that or those in which the Securities are stated to be payable, the currency or currencies in which payment of the principal of (and premium, if any) and interest, if any, on Securities of such series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(9) the denominations in which Securities of the series shall be issuable, if other than $1,000 or integral multiples thereof with respect to Registered Securities and denominations of $1,000 and $5,000 for Unregistered Securities;

(10) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof or which the Trustee shall be entitled to claim pursuant to Section 6.02;

(11) whether the Securities of the series will be issuable as Registered Securities or Unregistered Securities (with or without coupons), or both, any restrictions applicable to the offer, sale or delivery of Unregistered Securities and, if other than as provided for in Section 2.05, the terms upon which Unregistered Securities of the series may be exchanged for Registered Securities of such series and vice versa; and whether the Securities of the series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depositary for such Global Security or Securities and whether any Global Securities of the series are to be issuable initially in temporary form and whether any Global Securities of the series are to be issuable in definitive form with or without coupons and, if so, whether beneficial owners of interests in any such definitive Global Security may exchange such interests for Securities of such series and of like tenor of any authorized form and denomination and the circumstances under which and the place or places where any such exchanges may occur, if other than in the manner provided in Section 2.05;

(12) whether and under what circumstances the Corporation will pay Additional Amounts on the Securities of the series held by a person who is not a United States person in respect of any tax, assessment or governmental charge withheld or deducted and, if so, whether the Corporation will have the option to redeem such Securities rather than pay such Additional Amounts;

(13) the provisions, if any, for the defeasance of the Securities of the series; and

(14) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

All Securities of any one series shall be substantially identical except (i) as to denomination and (ii) that Securities of any series may be issuable as either Registered Securities or Unregistered Securities and (iii) as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto.

6

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or any Assistant Secretary of the Corporation and delivered to the Trustee at the same time as or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

SECTION 2.02. *Form of Trustee's Certificate of Authentication.* The Trustee's certificate of authentication shall be in the following form:

[FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION]

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

CITIBANK, N.A.,
as Trustee,

By _____
Authorized Officer

SECTION 2.03. *Form, Execution, Authentication, Delivery and Dating of Securities.* The Securities of each series and the coupons, if any, to be attached thereto, shall be in the forms approved from time to time by or pursuant to a Board Resolution, or established in one or more indentures supplemental hereto, and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Corporation may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any stock exchange on which the Securities may be listed, or to conform to usage.

Each Security and coupon shall be executed on behalf of the Corporation by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any Executive Vice President or any Vice President and by its Treasurer or any Assistant Treasurer or its Secretary or any Assistant Secretary, under its Corporate seal. Such signatures may be the manual or facsimile signatures of the present or any future such officers. The seal of the Corporation may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities.

Each Security and coupon bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Corporation shall bind the Corporation, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Security, or the Security to which such coupon appertains. At any time and from time to time after the execution and delivery of this Indenture, the Corporation may deliver Securities of any series executed by the Corporation and, in the case of Coupon Securities, having attached thereto appropriate coupons, to the Trustee for authentication, together with a Corporation Order for the authentication and delivery of such Securities, and the Trustee in accordance with such Corporation Order shall authenticate and deliver such Securities. If the form or terms of the Securities or coupons of the series have been established by or pursuant to one or more Board Resolutions as permitted by this Section and Section 2.01, in authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 7.01) shall be fully protected in relying upon, an Opinion of Counsel stating:

(a) if the form of such Securities or coupons has been established by or pursuant to Board Resolution as permitted by Section 2.01, that such form has been established in conformity with the provisions of this Indenture;

7

(b) if the terms of such Securities have been established by or pursuant to Board Resolution as permitted by Section 2.01, that such terms have been established in conformity with the provisions of this Indenture; and

(c) that each such Security and coupon, when authenticated and delivered by the Trustee and issued by the Corporation in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and other laws of general applicability relating to or affecting the enforcement of creditors' rights and to general equity principles. If such form or terms has been so established, the Trustee shall not be required to authenticate such Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and the Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Every Registered Security shall be dated the date of its authentication. Each Unregistered Security shall be dated as provided in or pursuant to the Board Resolution or supplemental indenture referred to in Section 2.01 or, if no such terms are specified, the date of its original issuance.

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Notwithstanding the foregoing, if any Security shall have been duly authenticated and delivered hereunder but never issued and sold by the Corporation, and the Corporation shall deliver such Security to the Trustee for cancelation as provided in Section 2.08 together with a written statement (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) stating that such Security has never been issued and sold by the Corporation, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits of this Indenture.

If the Corporation shall establish pursuant to Section 2.01 that the Securities of a series are to be issued in whole or in part in the form of a Global Security, then the Corporation shall execute and the Trustee shall in accordance with this Section and the Corporation Order with respect to such series authenticate and deliver the Global Security that (i) shall represent and shall be denominated in an aggregate amount equal to the aggregate principal amount of Outstanding Securities of such series to be represented by the Global Security, (ii) shall be registered, if in registered form, in the name of the Depositary for such Global Security or the nominee of such Depositary, and (iii) shall be delivered by the Trustee to such Depositary or pursuant to such Depositary's instructions.

Each Depositary designated pursuant to Section 2.01 for a Global Security in registered form must, at the time of its designation and at all times while it serves as Depositary, be a clearing agency registered under the Securities Exchange Act of 1934 and any other applicable statute or regulation.

SECTION 2.04. *Denominations; Record Date.* The Securities shall be issuable as Registered Securities or Unregistered Securities in such denominations as may be specified as contemplated in Section 2.01. In the absence of any such specification with respect to any series, such Securities shall be issuable in the denominations contemplated by Section 2.01.

The term "record date" as used with respect to an Interest Payment Date (except a date for payment of defaulted interest) shall mean such day or days as shall be specified in the terms of the Registered Securities of any particular series as contemplated by Section 2.01; provided, however, that in the absence of any such provisions with respect to any series, such term shall mean (1) the last day of the calendar month next preceding such Interest Payment Date if such Interest Payment Date is the fifteenth day of a calendar month; or (2) the fifteenth day of a calendar month next preceding such Interest Payment Date if such Interest

Payment Date is the first day of the calendar month; provided, further, that if the day which would be the record date as provided herein shall be a day on which banking institutions in the City of New York are authorized by law or required by executive order to close, then it shall mean the next preceding day which shall not be a day on which such institutions are so authorized or required to close.

The person in whose name any Registered Security is registered at the close of business on the Regular Record Date with respect to an Interest Payment Date shall be entitled to receive the interest payable and Additional Amounts, if any, payable on such Interest Payment Date notwithstanding the cancellation of such Registered Security upon any transfer or exchange thereof subsequent to such Regular Record Date and prior to such Interest Payment Date; provided, however, that if and to the extent the Corporation shall default in the payment of the interest and Additional Amounts, if any, due on such Interest Payment Date, such defaulted interest and Additional Amounts, if any, shall be paid to the persons in whose names Outstanding Registered Securities are registered on a subsequent record date established by notice given by mail by or on behalf of the Corporation to the Holders of Securities of the series in default not less than fifteen days preceding such subsequent record date, such record date to be not less than five days preceding the date of payment of such defaulted interest.

SECTION 2.05. *Exchange and Registration of Transfer of Securities.* Registered Securities of any series may be exchanged for a like aggregate principal amount of Registered Securities of other authorized denominations of such series. Registered Securities to be exchanged shall be surrendered at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, the City of New York, in accordance with the provisions of Section 4.02, and the Corporation shall execute and register and the Trustee shall authenticate and deliver in exchange therefor the Registered Security or Registered Securities which the Holder making the exchange shall be entitled to receive.

If the Securities of any series are issued in both registered and unregistered form, except as otherwise specified pursuant to Section 2.01, at the option of the Holder thereof, Unregistered Securities of any series may be exchanged for Registered Securities of such series of any authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured coupons and all matured coupons in default thereto appertaining. At the option of the Holder thereof, if Unregistered Securities of any series are issued in more than one authorized denomination, except as otherwise specified pursuant to Section 2.01, such Unregistered Securities may be exchanged for Unregistered Securities of such series of other authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02 or as specified pursuant to Section 2.01, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured coupons and all matured coupons in default thereto appertaining. Unless otherwise specified pursuant to Section 2.01, Registered Securities of any series may not be exchanged for Unregistered Securities of such series. Whenever any Securities are so surrendered for exchange, the Corporation shall execute, and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

The Corporation (or its designated agent (the "Security Registrar")) shall keep, at such office or agency, a Security Register (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Corporation shall register Securities and shall register the transfer of Registered Securities as in this Article Two provided. The Security Register shall be in written form or in any other form capable of being converted into written form within a reasonable time. At all reasonable times the Security Register shall be open for inspection by the Trustee. Upon due presentment for registration of transfer of any Registered Security of a particular series at such office or agency, the Corporation shall execute and the Corporation or the Security Registrar shall register and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Registered Security or Registered Securities of such series for an equal aggregate principal amount.

9

Unregistered Securities (except for any temporary bearer Securities) and coupons shall be transferable by delivery.

All Securities presented for registration of transfer or for exchange, redemption or payment, as the case may be, shall (if so required by the Corporation or the Trustee) be duly endorsed by, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Corporation and the Trustee duly executed by, the Holder or his attorney duly authorized in writing.

No service charge shall be made for any exchange or registration of transfer of Registered Securities, but the Corporation may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith.

The Corporation shall not be required to exchange or register a transfer of (a) any Registered Securities of any series for a period of fifteen days next preceding any selection of such Registered Securities of such series to be redeemed, or (b) any Security of any such series selected for redemption except in the case of any such series to be redeemed in part, the portion thereof not to be so redeemed.

Notwithstanding anything herein or in the terms of any series of Securities to the contrary, neither the Corporation nor the Trustee (which shall rely on an Officers' Certificate and an Opinion of Counsel) shall be required to exchange any Unregistered Security for a Registered Security if such exchange would result in adverse Federal income tax consequences to the Corporation (including the inability of the Corporation to deduct from its income, as computed for Federal income tax purposes, the interest payable on any Securities) under then applicable United States Federal income tax laws.

SECTION 2.06. *Temporary Securities.* Pending the preparation of definitive Securities of any series, the Corporation may execute and upon Corporation Order the Trustee shall authenticate and deliver temporary Securities of such series (printed or lithographed). Temporary Securities of any series shall be issuable in any authorized denominations, and in the form approved from time to time by or pursuant to a Board Resolution but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Corporation. Every temporary Security shall be executed by the Corporation and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities. Without unnecessary delay the Corporation shall execute and shall furnish definitive Securities of such series and thereupon any or all temporary Registered Securities of such series may be surrendered in exchange therefor without charge at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, the City of New York, in accordance with the provisions of Section 4 02 and in the case of Unregistered Securities at any agency maintained by the Corporation for such purpose as specified pursuant to Section 2.01, and the Trustee shall authenticate and deliver in exchange for such temporary Securities an equal aggregate principal amount of definitive Securities of the same series of authorized denominations and in the case of such Securities that are Coupon Securities, having attached thereto the appropriate coupons. Until so exchanged the *temporary* Securities of any series shall be entitled to the same benefits under this Indenture as definitive Securities of such series. The provisions of this Section 2.06 are subject to any restrictions or limitations on the issue and delivery of temporary Unregistered Securities of any series that may be established pursuant to Section 2.01 (including any provision that Unregistered Securities of such series initially be issued in the form of a single global *Unregistered Security to be delivered to a depositary or agency of the Corporation located outside the* United States and the procedures pursuant to which definitive Unregistered Securities of such series would be issued in exchange for such temporary global Unregistered Security).

SECTION 2.07. *Mutilated, Destroyed, Lost or Stolen Securities.* In case any temporary or definitive Security of any series or, in the case of a Coupon Security, any coupon appertaining thereto, shall become mutilated or be destroyed, lost or stolen, the Corporation in the case of a mutilated Security or coupon shall, *and in the case of a lost, stolen or destroyed Security or coupon may, in its discretion, execute, and upon* Corporation Order the Trustee shall authenticate and deliver, a new Security of the same series as the

10

mutilated, destroyed, lost or stolen Security or, in the case of a Coupon Security, a new Coupon Security of the same series as the mutilated, destroyed, lost or stolen Coupon Security or, in the case of a coupon, a new Coupon Security of the same series as the Coupon Security to which such mutilated, destroyed, lost or stolen coupon appertains, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated Security, or in lieu of and in substitution for the Security so destroyed, lost or stolen or in exchange for the Coupon Security to which such mutilated, destroyed, lost or stolen coupon appertains, with all appurtenant coupons not destroyed, lost or stolen. In every case the applicant for a substituted Security or coupon shall furnish to the Corporation and to the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Corporation and to the Trustee evidence to their satisfaction of the destruction, loss or theft of such Security or coupon, as the case may be, and of the ownership thereof. The Trustee may authenticate any such substituted Security and deliver the same upon the written request or authorization of any officer of the Corporation. Upon the issuance of any substituted Security or coupon, the Corporation may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith and in addition a further sum not exceeding ten dollars for each Security so issued in substitution. In case any Security or coupon which has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Corporation may, instead of issuing a substituted Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Security or coupon) if the applicant for such payment shall furnish the Corporation with such security or indemnity as it may require to save it harmless and, in case of destruction, loss or theft, evidence to the satisfaction of the Corporation of the destruction, loss or theft of such Security or coupon and of the ownership thereof.

Every substituted Security with, in the case of any such Security that is a Coupon Security, its coupons, issued pursuant to the provisions of this Section by virtue of the fact that any Security or coupon is destroyed, lost or stolen shall, with respect to such Security or coupon, constitute an additional contractual obligation of the Corporation, whether or not the destroyed, lost or stolen Security or coupon shall be found at any time, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities, and the coupons appertaining thereto, duly issued hereunder.

All Securities and any coupons appertaining thereto shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities and coupons appertaining thereto and shall, to the extent permitted by law, preclude any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2.08. *Cancellation.* All Securities surrendered for payment, redemption, exchange or *registration of transfer, and all coupons surrendered for payment as the case may be, shall, if surrendered to* the Corporation or any agent of the Corporation or of the Trustee, be delivered to the Trustee and promptly cancelled by it or, if surrendered to the Trustee, be cancelled by it, and no Securities or coupons shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture. The Trustee shall destroy cancelled Securities and coupons and deliver a certificate of destruction to the Corporation or, if requested to do so by the Corporation, shall return such cancelled Securities and coupons to the Corporation.

SECTION 2.09. *Computation of Interest.* Except as otherwise specified as contemplated by Section 2.01 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2.10. *Securities in Global Form.* If Securities of a series are issuable in global form, as specified as contemplated by Section 2.01, then, notwithstanding clause (9) of Section 2.01 and the provisions of Section 2.04, such Security shall represent such of the Outstanding Securities of such series as shall be specified therein

11

and may provide that it shall represent the aggregate amount of Outstanding Securities from time to time endorsed thereon and that the aggregate amount of Outstanding Securities represented thereby may from time to time be reduced to reflect exchanges. Any endorsement of a Security in global form to reflect the amount, or any increase or decrease in the amount, of Outstanding Securities represented thereby shall be made by the Trustee in such manner and upon instructions given by such Person or Persons as shall be specified therein or in the Corporation Order to be delivered to the Trustee pursuant to Section 2.03 or Section 2.06. Subject to the provisions of Section 2.03 and, if applicable, Section 2.06, the Trustee shall deliver and redeliver any Security in definitive global bearer form in the manner and upon written instructions given by the Person or Persons specified therein or in the applicable Corporation Order. If a Corporation Order pursuant to Section 2.03 or 2.06 has been, or simultaneously is, delivered, any instructions by the Corporation with respect to endorsement or delivery or redelivery of a Security in global form shall be in writing but need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel. The beneficial owner of a Security represented by a definitive Global Security in bearer form may, upon no less than 30 days written notice to the Trustee, given by the beneficial owner through a Depositary, exchange its interest in such definitive Global Security for a definitive Bearer Security or Securities, or a definitive Registered Security or Securities, of any authorized denomination. No individual definitive Bearer Security will be delivered in or to the United States.

The provisions of the last sentence of the third to the last paragraph of Section 2.03 shall apply to any Security represented by a Security in global form if such Security was never issued and sold by the Corporation and the Corporation delivers to the Trustee the Security in global form together with written instructions (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) with regard to the reduction in the principal amount of Securities represented thereby, together with the written statement contemplated by the last sentence of the third to the last paragraph of Section 2.03

Unless otherwise specified as contemplated by Section 2.01, payment of principal of and any premium and any interest on any Security in definitive global form shall be made to the Person or Persons specified therein.

SECTION 2.11. *Medium-Term Securities.* Notwithstanding any contrary provision herein, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver the Corporation Order, Officers' Certificate, supplemental indenture or Opinion of Counsel otherwise required pursuant to Sections 14.04, 2.01, 2.03 and 2.06 at or prior to the time of authentication of each Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued.

An Officers' Certificate or supplemental indenture, delivered pursuant to this Section 2.11 in the circumstances set forth in the preceding paragraph may provide that Securities which are the subject thereof will be authenticated and delivered by the Trustee on original issue from time to time upon the telephonic or written order of persons designated in such Officers' Certificate or supplemental indenture (telephonic instructions to be promptly confirmed in writing by such persons) and that such persons are authorized to determine, consistent with such Officers' Certificate or any applicable supplemental indenture such terms and conditions of said Securities as are specified in such Officers' Certificate or supplemental indenture, provided that the foregoing procedure is acceptable to the Trustee.

## ARTICLE THREE.

### REDEMPTION OF SECURITIES.

SECTION 3.01. *Redemption of Securities; Applicability of Article.* Redemption of Securities of any series as permitted or required by the terms thereof shall be made in accordance with such terms and this Article;

provided, however, that if any provision of any series of Securities shall conflict with any provision of this Article, the provision of such series of Securities shall govern.

Notice date for a redemption of Securities shall mean the date on which notice of such redemption is given in accordance with the provisions of Section 3.02 hereof.

SECTION 3.02. *Notice of Redemption; Selection of Securities.* In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part of a series of Securities pursuant to the terms and provisions applicable to such series, it shall fix a date for redemption and shall mail a notice of such redemption at least thirty and not more than ninety days prior to the date fixed for redemption to the Holders of the Securities of such series which are Registered Securities to be redeemed as a whole or in part at their last addresses as the same appear on the Security Register. Such mailing shall be by prepaid first class mail. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 5.04, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than ninety days prior to the date fixed for redemption, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose). Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, the City of New York and in an Authorized Newspaper in London (and, if required by Section 4.04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than ninety days prior to the date fixed for redemption. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Each such notice of redemption shall specify the date fixed for redemption, the redemption price at which such Securities are to be redeemed, the Place of Payment, that payment will be made upon presentation and surrender of such Securities and, in the case of Coupon Securities, of all coupons appertaining thereto maturing after the date fixed for redemption, that interest and Additional Amounts, if any, accrued to the date fixed for redemption will be paid as specified in said notice, and that on and after said date interest, if any, thereon or on the portions thereof to be redeemed will cease to accrue. If less than all of the Securities of a series are to be redeemed any notice of redemption published in an Authorized Newspaper shall specify the numbers of the Securities to be redeemed. In case any Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Security, a new Security or Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series.

Prior to the redemption date specified in the notice of redemption given as provided in this Section, the Corporation will deposit in trust with the Trustee or with one or more paying agents an amount of money sufficient to redeem on the redemption date all the Securities or portions of Securities so called for redemption at the appropriate redemption price, together with accrued interest, if any, to the date fixed for redemption. The Corporation will give the Trustee notice of each redemption no later than the date on which notice thereof is given to the Holders; provided, that if less than all of the Securities of a series are to be redeemed, the Corporation will give the Trustee notice at least forty-five days prior to the date fixed for redemption (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Securities to be redeemed.

If less than all of the Securities of a series are to be redeemed, the Trustee shall select, pro rata or by lot or in such other manner as it shall deem reasonable and fair, the numbers of the Securities to be redeemed in whole or in part.

SECTION 3 03. *Payment of Securities Called for Redemption.* If notice of redemption has been given as above provided, the Securities or portions of Securities with respect to which such notice has been given shall become due and payable on the date and at the Place of Payment stated in such notice at the applicable redemption price, together with interest, if any (and Additional Amounts, if any), accrued to the date fixed for redemption, and on and after said date (unless the Corporation shall default in the payment of such Securities at the redemption price, together with interest, if any, and Additional Amounts, if any, accrued to said date) interest on the Securities or portions of Securities so called for redemption shall cease to accrue. On presentation and surrender of such Securities subject to redemption at said Place of Payment in said notice specified, the said Securities or the specified portions thereof shall be paid and redeemed by the Corporation at the applicable redemption price, together with interest, if any, and Additional Amounts, if any, accrued thereon to the date fixed for redemption. Interest, if any (and Additional Amounts, if any), maturing on or prior to the date fixed for redemption shall continue to be payable (but without interest thereon unless the Corporation shall default in payment thereof) in the case of Coupon Securities to the bearers of the coupons for such interest upon surrender thereof, and in the case of Registered Securities to the Holders thereof registered as such on the Security Register on the relevant record date subject to the terms and provisions of Section 2.04. At the option of the Corporation payment may be made by check to (or to the order of) the Holders of the Securities or other persons entitled thereto against presentation and surrender of such Securities.

If any Coupon Security surrendered for redemption shall not be accompanied by all appurtenant coupons maturing after the date fixed for redemption, the surrender of such missing coupon or coupons may be waived by the Corporation and the Trustee, if there be furnished to each of them such security or indemnity as they may require to save each of them harmless.

Upon presentation of any Security redeemed in part only, the Corporation shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Security or Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Security so presented of the same series.

## ARTICLE FOUR.

### PARTICULAR COVENANTS OF THE CORPORATION.

SECTION 4.01. *Payment of Principal, Premium, Interest and Additional Amounts.* The Corporation will duly and punctually pay or cause to be paid the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on each of the Securities at the place, at the respective times and in the manner provided in the terms of the Securities and in this Indenture. The interest on Coupon Securities (together with any Additional Amounts) shall be payable only upon presentation and surrender of the several coupons for such interest instalments as are evidenced thereby as they severally mature. The interest, if any, on any temporary bearer Securities (together with any Additional Amounts) shall be paid, as to the instalments of interest evidenced by coupons attached thereto, if any, only upon presentation and surrender thereof, and, as to the other instalments of interest, if any, only upon presentation of such Securities for notation thereon of the payment of such interest. The interest on Registered Securities (together with any Additional Amounts) shall be payable only to or upon the written order of the Holders thereof and at the option of the Corporation may be paid by mailing checks for such interest payable to or upon the order of such Holders at their last addresses as they appear on the Security Register for such Securities.

SECTION 4.02. *Offices for Notices and Payments, etc.* As long as any of the Securities of a series remain outstanding, the Corporation will designate and maintain, in the Borough of Manhattan, the City of New

14

York, an office or agency where the Registered Securities of such series may be presented for registration of transfer and for exchange as in this Indenture provided, an office or agency where notices and demands to or upon the Corporation in respect of the Securities of such series or of this Indenture may be served, and an office or agency where the Securities of such series may be presented for payment. The Corporation will give to the Trustee notice of the location of each such office or agency and of any change in the location thereof. In case the Corporation shall fail to maintain any such office or agency in the Borough of Manhattan, the City of New York, or shall fail to give such notice of the location or of any change in the location thereof, presentations may be made and notices and demands may be served at the corporate trust office of the Trustee in the Borough of Manhattan, the City of New York, and the Corporation hereby appoints the Trustee as its agent to receive all such presentations, notices and demands.

If Unregistered Securities of any series are Outstanding, the Corporation will maintain or cause the Trustee to maintain one or more agencies in a city or cities located outside the United States (including any city in which such an agency is required to be maintained under the rules of any stock exchange on which the Securities of such series are listed) where such Unregistered Securities, and coupons, if any, appertaining thereto may be presented for payment. No payment on any Unregistered Security or coupon will be made upon presentation of such Unregistered Security or coupon at an agency of the Corporation within the United States nor will any payment be made by transfer to an account in, or by mail to an address in, the United States, except, at the option of the Corporation, if the Corporation shall have determined that, pursuant to applicable United States laws and regulations then in effect such payment can be made without adverse tax consequences to the Corporation. Notwithstanding the foregoing, payments in U.S. Dollars with respect to Unregistered Securities of any series and coupons appertaining thereto which are payable in U.S. Dollars may be made at an agency of the Corporation maintained in the Borough of Manhattan, the City of New York if such payment in U.S. Dollars at each agency maintained by the Corporation outside the United States for payment on such Unregistered Securities is illegal or effectively precluded by exchange controls or other similar restrictions.

The Corporation hereby initially designates Citibank, N.A., located at its Corporate Trust Office as the Security Registrar and as the office or agency of the Corporation in the Borough of Manhattan, The City of New York, where the Securities may be presented for payment and, in the case of Registered Securities, for registration of transfer and for exchange as in this Indenture provided and where notices and demands to or upon the Corporation in respect of the Securities of any series or of this Indenture may be served.

SECTION 4.03. *Provisions as to Paying Agent.* (a) Whenever the Corporation shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section:

(1) that it will hold sums held by it as such agent for the payment of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series in trust for the benefit of the Holders of the Securities of such series, or coupons appertaining thereto, as the case may be, entitled thereto and will notify the Trustee of the receipt of sums to be so held,

(2) that it will give the Trustee notice of any failure by the Corporation (or by any other obligor on the Securities of such series) to make any payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series when the same shall be due and payable, and

(3) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such paying agent.

(b) If the Corporation shall act as its own paying agent, it will, on or before each due date of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of any series set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series entitled thereto

15

a sum sufficient to pay such principal (and premium if any), interest, if any, or Additional Amounts, if any, so becoming due. The Corporation will promptly notify the Trustee of any failure to take such action.

(c) Anything in this Section to the contrary notwithstanding, the Corporation may, at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for such series by it or any paying agent hereunder as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

(d) Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Sections 12.03 and 12.04.

SECTION 4.04. *Luxembourg Publications.* In the event of the publication of any notice pursuant to Section 3.02, 6.07, 7.10, 7.11, 9.02, 10.02 or 12.05, the party making such publication shall also, to the extent that notice is required so to be given to Holders of Securities of any series by applicable Luxembourg law or stock exchange regulation, make a similar publication the same number of times in Luxembourg.

SECTION 4.05. *Statement by Officers as to Default.* The Corporation will deliver to the Trustee, on or before a date not more than four months after the end of each fiscal year of the Corporation (which, on the date of execution hereof, ends on December 31) ending after the date hereof, commencing with the fiscal year ended in 1990, an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Corporation is in default in the performance or observance of any of the terms, provisions and conditions of this Indenture to be performed or observed by it and, if the Corporation shall be in default, specifying all such defaults and the nature thereof of which they may have knowledge.

SECTION 4.06. *Limitations on Liens.* For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of the Corporation or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities (together with, if the Corporation shall so determine, any other indebtedness of the Corporation or such Manufacturing Subsidiary ranking equally with the Securities and then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Corporation and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Corporation and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles and shown on the audited consolidated balance sheet contained in the latest published annual report to the stockholders of the Corporation.

The above restrictions shall not apply to Debt secured by (i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary; (ii) Mortgages on property existing at the time of acquisition of such property by the Corporation or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any part of the purchase price of such property upon the acquisition of such property by the Corporation or a Manufacturing Subsidiary or to secure any Debt incurred prior to, at the time of, or within 180 days after, the later of the date of acquisition of such property and the date such property is placed in service, for the purpose of financing all or any part of the purchase price thereof, or Mortgages to secure any Debt incurred for the purpose of financing the cost to the Corporation or a Manufacturing Subsidiary of improvements to such acquired property; (iii) Mortgages securing Debt of a Manufacturing Subsidiary owing to the Corporation or to another Subsidiary; (iv) Mortgages on property of a corporation existing at the time such corporation is merged or consolidated with

16

the Corporation or a Manufacturing Subsidiary or at the time of a sale, lease or other disposition of the properties of a corporation as an entirety or substantially as an entirety to the Corporation or a Manufacturing Subsidiary; (v) Mortgages on property of the Corporation or a Manufacturing Subsidiary in favor of the United States of America or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of construction of the property subject to such Mortgages; or (vi) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Mortgage referred to in the foregoing clauses (i) to (v), inclusively; *provided, however,* that the principal amount of Debt secured thereby shall not exceed by more than 115% the principal amount of Debt so secured at the time of such extension, renewal or replacement and that such extension, renewal or replacement shall be limited to all or a part of the property which secured the Mortgage so extended, renewed or replaced (plus improvements on such property).

SECTION 4.07. *Limitation on Sale and Lease-Back.* For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, enter into any arrangement with any person providing for the leasing by the Corporation or any Manufacturing Subsidiary of any Principal Domestic Manufacturing Property owned by the Corporation or any Manufacturing Subsidiary on the date that the Securities are originally issued (except for temporary leases for a term of not more than five years and except for leases between the Corporation and a Manufacturing Subsidiary or between Manufacturing Subsidiaries), which property has been or is to be sold or transferred by the Corporation or such Manufacturing Subsidiary to such person, unless either (i) the Corporation or such Manufacturing Subsidiary would be entitled, pursuant to the provisions of the covenant on limitation on liens described above, to issue, assume, extend, renew or replace Debt secured by a Mortgage upon such property equal in amount to the Attributable Debt in respect of such arrangement without equally and ratably securing the Securities *provided, however,* that from and after the date on which such arrangement becomes effective the Attributable Debt in respect of such arrangement shall be deemed for all purposes under the covenant on limitation on liens described in Section 4.06 and this covenant on limitation on sale and lease-back to be Debt subject to the provisions of the covenant on limitation on liens described above (which provisions include the exceptions set forth in clauses (i) through (vi) of such covenant), or (ii) the Corporation shall apply an amount in cash equal to the Attributable Debt in respect of such arrangement to the retirement (other than any mandatory retirement or by way of payment at maturity), within 180 days of the effective date of any such arrangement, of Debt of the Corporation or any Manufacturing Subsidiary (other than Debt owned by the Corporation or any Manufacturing Subsidiary) which by its terms matures at or is extendible or renewable at the option of the obligor to a date more than twelve months after the date of the creation of such Debt.

SECTION 4.08. *Definitions Applicable to Sections 4.06 and 4.07.* The following definitions shall be applicable to the covenants contained in Sections 4.06 and 4 07 hereof:

(a) "Attributable Debt" means, at the time of determination as to any lease, the present value (discounted at the actual rate, if stated, or, if no rate is stated, the implicit rate of interest of such lease transaction as determined by the chairman, president, any vice chairman, any vice president, the treasurer or any assistant treasurer of the Corporation), calculated using the interval of scheduled rental payments under such lease, of the obligation of the lessee for net rental payments during the remaining term of such lease (excluding any subsequent renewal or other extension options held by the lessee). The term "net rental payments" means, with respect to any lease for any period, the sum of the rental and other payments required to be paid in such period by the lessee thereunder, but not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, earnings or profits or of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges; provided, however, that, in

17

the case of any lease which is terminable by the lessee upon the payment of a penalty in an amount which is less than the total discounted net rental payments required to be paid from the later of the first date upon which such lease may be so terminated and the date of the determination of net rental payments, "net rental payments" shall include the then current amount of such penalty from the later of such two dates, and shall exclude the rental payments relating to the remaining period of the lease commencing with the later of such two dates.

(b) "Debt" means notes, bonds, debentures or other similar evidences of indebtedness for money borrowed.

(c) "Manufacturing Subsidiary" means any Subsidiary (A) substantially all the property of which is located within the continental United States of America, (B) which owns a Principal Domestic Manufacturing Property and (C) in which the Corporation's investment, direct or indirect and whether in the form of equity, debt, advances or otherwise, is in excess of $2,500,000,000 as shown on the books of the Corporation as of the end of the fiscal year immediately preceding the date of determination; *provided, however,* that "Manufacturing Subsidiary" shall not include Electronic Data Systems Corporation and its Subsidiaries, GM Hughes Electronics Corporation and its Subsidiaries, General Motors Acceptance Corporation and its Subsidiaries (or any corporate successor of any of them) or any other Subsidiary which is principally engaged in leasing or in financing installment receivables or otherwise providing financial or insurance services to the Corporation or others or which is principally engaged in financing the Corporation's operations outside the continental United States of America.

(d) "Mortgage" means any mortgage, pledge, lien, security interest, conditional sale or other title retention agreement or other similar encumbrance.

(e) "Principal Domestic Manufacturing Property" means any manufacturing plant or facility owned by the Corporation or any Manufacturing Subsidiary which is located within the continental United States of America and, in the opinion of the Board of Directors, is of material importance to the total business conducted by the Corporation and its consolidated affiliates as an entity.

(f) "Subsidiary" means any corporation of which at least a majority of the outstanding stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Corporation, or by one or more Subsidiaries, or by the Corporation and one or more Subsidiaries.

## ARTICLE FIVE.

### SECURITYHOLDER LISTS AND REPORTS BY THE CORPORATION AND THE TRUSTEE.

SECTION 5.01. *Securityholder Lists.* The Corporation covenants and agrees that it will furnish or cause to be furnished to the Trustee with respect to the Securities of each series

(a) semi-annually, not later than each Interest Payment Date (in the case of any series having semi-annual Interest Payment Dates) or not later than the dates determined pursuant to Section 2.01 (in the case of any series not having semi-annual Interest Payment Dates) a list, in such form as the Trustee may reasonably require, of the names and addresses of the Holders of Securities of such series as of the Regular Record Date (or as of such other date as may be determined pursuant to Section 2.01 for such series) therefor, and

(b) at such other times as the Trustee may request in writing, within thirty days after receipt by the Corporation of any such request, a list in such form as the Trustee may reasonably require of the names and addresses of the Holders of Securities of a particular series specified by the Trustee as of a date not more than fifteen days prior to the time such information is furnished; provided, however, that if and so long as the Trustee shall be the Security Registrar any such list shall exclude names and addresses

18

received by the Trustee in its capacity as Security Registrar, and if and so long as all of the Securities of any series are Registered Securities, such list shall not be required to be furnished.

SECTION 5.02. *Preservation and Disclosure of Lists.* (a) The Trustee shall preserve, in as current a form as is reasonably practicable, all information as to the names and addresses of the Holders of each series of Securities contained in the most recent list furnished to it as provided in Section 5.01 or received by the Trustee in its capacity as Security Registrar. The Trustee may destroy any list furnished to it as provided in Section 5.01 upon receipt of a new list so furnished.

(b) In case three or more Holders of Securities (hereinafter referred to as "applicants") apply in writing to the Trustee and furnish to the Trustee reasonable proof that each such applicant has owned a Security of such series for a period of at least six months preceding the date of such application, and such application states that the applicants' desire to communicate with other Holders of Securities of a particular series (in which case the applicants must hold Securities of such series) or with Holders of all Securities with respect to their rights under this Indenture or under such Securities and it is accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, then the Trustee shall, within five business days after the receipt of such application, at its election, either:

(1) afford to such applicants access to the information preserved at the time by the Trustee in accordance with the provisions of subsection (a) of this Section, or

(2) inform such applicants as to the approximate number of Holders of Securities of such series or all Securities, as the case may be, whose names and addresses appear in the information preserved at the time by the Trustee, in accordance with the provisions of subsection (a) of this Section, and as to the approximate cost of mailing to such Securityholders the form of proxy or other communication, if any, specified in such application.

If the Trustee shall elect not to afford to such applicants access to such information, the Trustee shall, upon the written request of such applicants, mail to each Holder of such series or all Securities, as the case may be, whose name and address appear in the information preserved at the time by the Trustee in accordance with the provisions of subsection (a) of this Section a copy of the form of proxy or other communication which is specified in such request, with reasonable promptness after a tender to the Trustee of the material to be mailed and of payment, or provision for the payment, of the reasonable expenses of mailing, unless within five days after such tender, the Trustee shall mail to such applicants and file with the Securities and Exchange Commission, together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of the Trustee, such mailing would be contrary to the best interests of the Holders of Securities of such series or all Securities, as the case may be, or would be in violation of applicable law. Such written statement shall specify the basis of such opinion. If said Commission, after opportunity for a hearing upon the objections specified in the written statement so filed, shall enter an order refusing to sustain any of such objections or if, after the entry of an order sustaining one or more of such objections, said Commission shall find, after notice and opportunity for hearing, that all the objections so sustained have been met, and shall enter an order so declaring, the Trustee shall mail copies of such material to all such Holders with reasonable promptness after the entry of such order and the renewal of such tender; otherwise the Trustee shall be relieved of any obligation or duty to such applicants respecting their application.

(c) Each and every Holder of Securities, by receiving and holding the same, agrees with the Corporation and the Trustee that neither the Corporation nor the Trustee nor any agent of the Corporation or of the Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders of Securities in accordance with the provisions of subsection (b) of this Section, regardless of the source from which such information was derived, and that the Trustee shall not be held accountable by reason of mailing any material pursuant to a request made under said subsection (b).

SECTION 5.03. *Reports by the Corporation.* The Corporation covenants:

(a) to file with the Trustee within fifteen days after the Corporation is required to file the same with the Securities and Exchange Commission, copies of the annual reports and of the information, documents

19

and other reports (or copies of such portions of any of the foregoing as said Commission may from time to time by rules and regulations prescribe) which the Corporation may be required to file with said Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; or, if the Corporation is not required to file information, documents or reports pursuant to either of such sections, then to file with the Trustee and said Commission, in accordance with rules and regulations prescribed from time to time by said Commission, such of the supplementary and periodic information, documents and reports which may be required pursuant to Section 13 of the Securities Exchange Act of 1934 in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations.

(b) to file with the Trustee and the Securities and Exchange Commission, in accordance with the rules and regulations prescribed from time to time by said Commission, such additional information, documents, and reports with respect to compliance by the Corporation with the conditions and covenants provided for in this Indenture as may be required from time to time by such rules and regulations;

(c) to transmit by mail to all the Holders of Securities of each series, as the names and addresses of such Holders appear on the Security Register, within thirty days after the filing thereof with the Trustee, such summaries of any information, documents and reports required to be filed by the Corporation with respect to each such series pursuant to subsections (a) and (b) of this Section as may be required by rules and regulations prescribed from time to time by the Securities and Exchange Commission; and

(d) If Unregistered Securities of any series are Outstanding, to file with the listing agent of the Corporation with respect to such series such documents and reports of the Corporation as may be required from time to time by the rules and regulations of any stock exchange on which such Unregistered Securities are listed.

SECTION 5.04. *Reports by the Trustee.* (a) On or before April 1, 1991 and on or before April 1 of each year thereafter, so long as any Securities of any series are Outstanding hereunder, the Trustee shall transmit to the Holders of Securities of such series, as provided in subsection (c) of this Section, a brief report dated as of the preceding February 15, with respect to:

(1) its eligibility under Section 7.09, and its qualifications under Section 7.08, or in lieu thereof, if to the best of its knowledge it has continued to be eligible and qualified under such Sections, a written statement to such effect,

(2) the character and amount of any advances (and if the Trustee elects so to state, the circumstances surrounding the making thereof) made by the Trustee (as such) which remain unpaid on the date of such report, and for the reimbursement of which it claims or may claim a lien or charge, prior to that of the Securities, on any property or funds held or collected by it as Trustee, except that the Trustee shall not be required (but may elect) to report such advances if such advances so remaining unpaid aggregate not more than one-half of one percent of the principal amount of the Securities for any series outstanding on the date of such report;

(3) the amount, interest rate, and maturity date of all other indebtedness owing by the Corporation (or by any other obligor on the Securities) to the Trustee in its individual capacity, on the date of such report, with a brief description of any property held as collateral security therefor, except an indebtedness based upon a creditor relationship arising in any manner described in paragraphs (2), (3), (4), or (6) of subsection (b) of Section 7.13;

(4) the property and funds, if any, physically in the possession of the Trustee as such on the date of such report;

(5) any additional issue of Securities of such series which it has not previously reported; and

(6) any action taken by the Trustee in the performance of its duties under this Indenture which it *has not previously reported and which in its opinion materially affects the Securities, except action in*

20

respect of a default, notice of which has been or is to be withheld by it in accordance with the provisions of Section 6.07.

(b) The Trustee shall transmit to the Holders of Securities, as provided in subsection (c) of this Section, a brief report with respect to the character and amount of any advances (and if the Trustee elects so to state, the circumstances surrounding the making thereof) made by the Trustee (as such) since the date of the last report transmitted pursuant to the provisions of subsection (a) of this Section (or if no such report has yet been so transmitted, since the date of execution of this Indenture), for the reimbursement of which it claims or may claim a lien or charge prior to that of the Securities of any series on property or funds held or collected by it as Trustee, and which it has not previously reported pursuant to this subsection (b), except that the Trustee for each series shall not be required (but may elect) to report such advances if such advances remaining unpaid at any time aggregate ten per cent or less of the principal amount of Securities for such series outstanding at such time, such report to be transmitted within ninety days after such time.

(c) Reports pursuant to this Section shall be transmitted by mail:

(i) to all Holders of Registered Securities, as the names and addresses of such Holders appear upon the Security Register;

(ii) to such other Holders of Securities as have, within two years preceding such transmission, filed their names and addresses with the Trustee for that purpose; and

(iii) to each Holder of a Security whose name and address are preserved at the time by the Trustee as provided in Section 5.02.

(d) A copy of each such report shall, at the time of such transmission to Holder of Securities of a particular series, be filed by the Trustee with each stock exchange upon which the Securities of such series are listed and also with the Securities and Exchange Commission. The Corporation agrees to notify the Trustee when and as the Securities of any series become listed on any stock exchange

## ARTICLE SIX.

### REMEDIES ON DEFAULT.

SECTION 6.01. *Events of Default.* In case one or more of the following Events of Default with respect to a particular series of Securities shall have occurred and be continuing, that is to say:

(a) default in the payment of the principal of (or premium, if any, on) any of the Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(b) default in the payment of any instalment of interest, if any, or in the payment of any Additional Amounts upon any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of thirty days; or

(c) failure on the part of the Corporation duly to observe or perform any other of the covenants or agreements on the part of the Corporation applicable to such series of the Securities or contained in this Indenture for a period of ninety days after the date on which written notice of such failure, requiring the Corporation to remedy the same, shall have been given to the Corporation by the Trustee, or to the Corporation and the Trustee by the Holders of at least twenty-five percent in aggregate principal amount of the Securities of such series at the time outstanding; or

(d) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Corporation in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee,

21

sequestrator (or similar official) of the Corporation or for any substantial part of its property, or ordering the winding-up or liquidation of its affairs and such decree or order shall remain unstayed and in effect for a period of ninety days; or

(e) the Corporation shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of the Corporation or for any substantial part of its property, or shall make any general assignment for the benefit of creditors;

then if an Event of Default described in clause (a), (b) or (c) shall have occurred and be continuing, and in each and every such case, unless the principal amount of all the Securities of such series shall have already become due and payable, either the Trustee or the Holders of not less than twenty-five percent in aggregate principal amount of the Securities of all series affected thereby then outstanding hereunder, by notice in writing to the Corporation (and to the Trustee if given by Holders of such Securities) may declare the principal amount of all the Securities (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities) of the series affected thereby to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision of this Indenture or the Securities of such series contained to the contrary notwithstanding, or, if an Event of Default described in clause (d) or (e) shall have occurred and be continuing, and in each and every such case, either the Trustee or the Holders of not less than twenty-five per cent in aggregate principal amount of all the Securities then outstanding hereunder (voting as one class), by notice in writing to the Corporation (and to the Trustee if given by Holders of Securities), may declare the principal of all the Securities not already due and payable (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities) to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision in this Indenture or in the Securities to the contrary notwithstanding. The foregoing provisions, however, are subject to the conditions that if, at any time after the principal of the Securities of any one or more or all series, as the case may be, shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, the Corporation shall pay or shall deposit with the Trustee a sum sufficient to pay all matured instalments of interest, if any, and all Additional Amounts, if any, due upon all the Securities of such series or of all the Securities, as the case may be, and the principal of (and premium, if any, on) all Securities of such series or of all the Securities, as the case may be (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities), which shall have become due otherwise than by acceleration (with interest, if any, upon such principal and premium, if any, and, to the extent that payment of such interest is enforceable under applicable law, on overdue instalments of interest and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series, as the case may be (or, with respect to Original Issue Discount Securities at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration of such series, as the case may be), to the date of such payment or deposit), and such amount as shall be payable to the Trustee pursuant to Section 7.06, and any and all defaults under the Indenture shall have been remedied, then and in every such case the Holders of a majority in aggregate principal amount of the Securities of such series (or of all the Securities, as the case may be) then outstanding, by written notice to the Corporation and to the Trustee, may waive all defaults with respect to that series or with respect to all Securities, as the case may be and rescind and annul such declaration and its consequences; but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default or shall impair any right consequent thereon. If the principal of all Securities shall have been declared to be payable pursuant to this Section 6.01, in determining whether the Holders of a majority in aggregate principal amount thereof have waived all defaults and rescinded and annulled such declaration, all series of Securities shall be treated as a single class and the principal amount of Original Issue Discount Securities shall be deemed to be the amount declared payable under the terms applicable to such Original Issue Discount Securities.

22

In case the Trustee shall have proceeded to enforce any right under this Indenture and such proceedings shall have been discontinued or abandoned because of such recession and annulment or for any other reason or shall have been determined adversely to the Trustee, then and in every such case the Corporation, Trustee and the Holders of Securities, as the case may be, shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Corporation, the Trustee and the Holders of Securities, as the case may be, shall continue as though no such proceedings had been taken.

SECTION 6.02. *Payment of Securities on Default; Suit Therefor.* The Corporation covenants that (1) in case default shall be made in the payment of any instalment of interest, if any, on any of the Securities of any series or any Additional Amounts in payable respect of any of the Securities of any series, as and when the same shall become due and payable, and such default shall have continued for a period of thirty days, or (2) in case default shall be made in the payment of the principal of (or premium, if any, on) any of the Securities of any series, as and when the same shall have become due and payable, whether upon maturity of such series or upon redemption or upon declaration or otherwise, then upon demand of the Trustee, the Corporation will pay to the Trustee, for the benefit of the Holders of the Securities of such series, and the coupons, if any, appertaining to such Securities, the whole amount that then shall have become due and payable on all such Securities of such series and such coupons, for principal (and premium, if any) or interest, if any, or Additional Amounts, if any, as the case may be, with interest upon the overdue principal (and premium, if any) and (to the extent that payment of such interest is enforceable under applicable law) upon overdue instalments of interest, if any, and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series (or, with respect to Original Issue Discount Securities, at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration); and, in addition thereto, such further amount as shall be sufficient to cover reasonable compensation to the Trustee, its agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee except as a result of its negligence or bad faith.

In case the Corporation shall fail forthwith to pay such amounts upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any action or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Corporation or other obligor upon such Securities and collect in the manner provided by law out of the property of the Corporation or other obligor upon such Securities wherever situated the moneys adjudged or decreed to be payable.

In case there shall be pending proceedings for the bankruptcy or for the reorganization of the Corporation or any other obligor upon Securities of any series under Title 11 of the United States Code or any other applicable law, or in case a receiver or trustee shall have been appointed for the property of the Corporation or such other obligor, or in case of any other judicial proceedings relative to the Corporation or such other obligor, or to the creditors or property of the Corporation or such other obligor, the Trustee, irrespective of whether the principal of the Securities of such series shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal (or, with respect to Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of that series), and premium, if any, interest, if any, and Additional Amounts, if any, owing and unpaid in respect of the Securities of such series, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee under Section 7.06 and of the Holders of the Securities and coupons of such series allowed in any such judicial proceedings relative to the Corporation or other obligor upon the Securities of such series, or to the creditors or property of the Corporation or such other obligor, and to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Securityholders of such series and of the Trustee on their behalf; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby

authorized by each of the Holders of the Securities and coupons of such series to make payments to the Trustee and, in the event that the Trustee shall consent to the making of payments directly to the Securityholders of such series, to pay to the Trustee such amount as shall be sufficient to cover reasonable compensation to the Trustee, its agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee except as a result of its negligence or bad faith.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

All rights of action and of asserting claims under this Indenture, or under any of the Securities or coupons, may be enforced by the Trustee without the possession of any of the Securities or coupons appertaining to such Securities, or the production thereof on any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name and as trustee of an express trust, and any recovery of judgment shall be for the ratable benefit of the Holders of the Securities or coupons appertaining thereto.

*In case of a default hereunder the Trustee may in its discretion proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights, either at law or in equity or in bankruptcy or otherwise, whether for the specific enforcement of any covenant or agreement contained in this Indenture or in aid of the exercise of any power granted in this Indenture, or to enforce any other legal or equitable right vested in the Trustee by this Indenture or by law.*

SECTION 6.03. *Application of Moneys Collected by Trustee* Any moneys collected by the Trustee pursuant to Section 6.02 shall be applied in the order following, at the date or dates fixed by the Trustee and, in case of the distribution of such moneys on account of principal (or premium, if any) or interest, if any, upon presentation of the several Securities and coupons in respect of which moneys have been collected, and stamping thereon the payment, if only partially paid, and upon surrender thereof, if fully paid:

FIRST: To the payment of the amounts payable to the Trustee pursuant to Section 7 06;

SECOND· In case the principal of the Securities in respect of which moneys have been collected shall not have become due, to the payment of interest, if any, and Additional Amounts, if any, on the Securities of such series in the order of the maturity of the instalments of such interest, with interest (to the extent that such interest has been collected by the Trustee) upon the overdue instalments of interest at the same rate as the rate of interest, if any, and Additional Amounts, if any, specified in the Securities of such series (or, with respect to Original Issue Discount Securities, at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration), such payments to be made ratably to the persons entitled thereto, without discrimination or preference;

THIRD: In case the principal of the Securities in respect of which moneys have been collected shall have become due, by declaration or otherwise, to the payment of the whole amount then owing and unpaid upon the Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, and (to the extent that such interest has been collected by the Trustee) upon overdue instalments of interest, if any, and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series (or, with respect to Original Issue Discount Securities, *at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration*); and in case such moneys shall be insufficient to pay in full the whole amount so due and unpaid upon the Securities of such series, then to the payment of such principal (and premium, if any), interest, if any, and Additional Amounts, if any, without preference or priority *of principal and premium, if any, over interest, if any, and Additional Amounts, if any, or of interest, if any, and Additional Amounts, if any, over principal and premium, if any, or of any instalment of interest,*

24

if any, or Additional Amounts, if any, over any other instalment of interest, if any, or Additional Amounts, if any, or of any Security of such series over any other Security of such series, ratably to the aggregate of such principal and premium, if any, and accrued and unpaid interest, if any, and Additional Amounts, if any.

SECTION 6.04. *Proceedings by Securityholders.* No Holder of any Security of any series or of any coupon appertaining thereto shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceedings at law or in equity or in bankruptcy or otherwise, upon or under or with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of not less than twenty-five percent in aggregate principal amount of the Securities of such series then outstanding or, in the case of any Event of Default described in clause (d) or (e) of Section 6.01, twenty-five per cent in aggregate principal amount of all the Securities at the time outstanding (voting as one class) shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for sixty days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 6.06; it being understood and intended, and being expressly covenanted by the taker and Holder of every Security with every other taker and Holder and the Trustee, that no one or more Holders of Securities or coupons appertaining to such Securities shall have any right in any manner whatever by virtue of or by availing himself of any provision of this Indenture to affect, disturb or prejudice the rights of any other Holder of Securities or coupons appertaining to such Securities, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Securities and coupons. For the protection and enforcement of the provisions of this Section, each and every Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

Notwithstanding any other provisions in this Indenture, however, the right of any Holder of any Security to receive payment of the principal of (and premium, if any) and interest, if any, and Additional Amounts, if any, on such Security or coupon, on or after the respective due dates expressed in such Security or coupon, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder. With respect to Original Issue Discount Securities, principal shall mean such amount as shall be due and payable be specified in the terms of such Securities.

SECTION 6.05. *Remedies Cumulative and Continuing.* All powers and remedies given by this Article Six to the Trustee or to the Holders of Securities or coupons shall, to the extent permitted by law, be deemed cumulative and not exclusive of any thereof or of any other powers and remedies available to the Trustee or the Holders of Securities or coupons, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements contained in this Indenture, and no delay or omission of the Trustee or of any Holder of any of the Securities or coupons to exercise any right or power accruing upon any default occurring and continuing as aforesaid shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and, subject to the provisions of Section 6.04, every power and remedy given by this Article Six or by law to the Trustee or to the Holders of Securities or coupons may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Holders of Securities or coupons, as the case may be.

SECTION 6.06. *Direction of Proceedings.* The Holders of a majority in aggregate principal amount of the Securities of any or all series affected (voting as one class) at the time outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee; provided, however, that (subject to the provisions of Section 7.01) the Trustee shall have the right to decline to follow any such direction if the Trustee, being

25

dvised by counsel, determines that the action or proceedings so directed may not lawfully be taken or if the Trustee in good faith by its board of directors or executive committee or a trust committee of directors or trustees and/or responsible officers shall determine that the action or proceedings so directed would involve the Trustee in personal liability.

SECTION 6.07. *Notice of Defaults.* The Trustee shall, within ninety days after the occurrence of a default with respect to the Securities of any series, give notice of all defaults with respect to that series known to the Trustee (i) if any Unregistered Securities of that series are then Outstanding, to the Holders thereof, by publication at least once in an Authorized Newspaper in the Borough of Manhattan, the City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (ii) if any Unregistered Securities of that series are then Outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing such notice to such Holders at such addresses and (iii) to all Holders of then Outstanding Registered Securities of that series, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, unless in each case such defaults shall have been cured before the mailing or publication of such notice (the term "defaults" for the purpose of this Section being hereby defined to be the events specified in Sections 6.01(a), (b), (c), (d) and (e) and any additional events specified in the terms of any series of Securities pursuant to Section 2.01, not including periods of grace, if any, provided for therein, and irrespective of the giving of written notice specified in Section 6.01(c) or in the terms of any Securities established pursuant to Section 2.01); and provided that, except in the case of default in the payment of the principal of or interest, if any, premium or Additional Amounts, if any, on any of the Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or responsible officers of the Trustee in good faith determines that the withholding of such notice is in the interests of the Holders of the Securities of such series.

SECTION 6.08. *Undertaking to Pay Costs.* All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Trustee, to any suit instituted by any Securityholders of any series, or group of such Securityholders, holding in the aggregate more than ten percent in aggregate principal amount of all Securities (voting as one class), or to any suit instituted by any Securityholders for the enforcement of the payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any on any Security on or after the due date expressed in such Security.

## ARTICLE SEVEN.

### CONCERNING THE TRUSTEE.

SECTION 7.01. *Duties and Responsibilities of Trustee.* The Trustee, prior to the occurrence of an Event of Default of a particular series and after the curing of all Events of Default of such series which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture. In case an Event of Default with respect to a particular series has occurred (which has not been cured) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own wilful misconduct, except that:

26

(a) prior to the occurrence of an Event of Default with respect to a particular series and after the curing of all Events of Default with respect to such series which may have occurred.

(1) *the duties and obligations of the Trustees with respect to such series shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee;* and

(2) in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but *in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture;*

(b) the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(c) the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of Securities pursuant to Section 6.06 relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

No provision of this Indenture shall be construed as requiring the Trustee to expend or risk its own funds or otherwise to incur any personal financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there shall be reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

SECTION 7.02. *Reliance on Documents, Opinions, etc.* Subject to the provisions of Section 7.01:

(a) the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, coupon or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request, direction, order or demand of the Corporation mentioned herein shall be sufficiently evidenced by an instrument signed in the name of the Corporation by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if *the other signatory is other than the Treasurer, any Assistant Treasurer (unless other evidence in respect thereof be herein specifically prescribed);* and Board Resolution may be evidenced to the Trustee by a copy thereof certified by the Secretary or any Assistant Secretary of the Corporation;

(c) the Trustee may consult with counsel and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance with such Opinion of Counsel;

(d) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Securityholders, pursuant to the provisions of this Indenture, unless such Securityholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses, and liabilities which might be incurred therein or thereby;

(e) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, coupon or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall

27

determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Corporation, personally or by agent or attorney;

(f) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, provided, however, that the Trustee shall be responsible for any misconduct or negligence on the part of any agent or attorney appointed by it hereunder; and

(g) the Trustee shall not be liable for any action taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture.

SECTION 7.03. *No Responsibility for Recitals, etc.* The recitals contained herein and in the Securities, other than the Trustee's certificate of authentication, shall be taken as the statements of the Corporation, and the Trustee assumes no responsibility for the correctness of the same. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities, provided that the Trustee shall not be relieved of its duty to authenticate Securities only as authorized by this Indenture. The Trustee shall not be accountable for the use or application by the Corporation of Securities or the proceeds thereof.

SECTION 7 04. *Ownership of Securities or Coupons.* The Trustee or any agent of the Corporation or of the Trustee, in its individual or any other capacity, may become the owner or pledgee of Securities or coupons with the same rights it would have if it were not Trustee, or an agent of the Corporation or of the Trustee.

SECTION 7.05. *Moneys to be Held in Trust.* Subject to the provisions of Section 12.04 hereof, all moneys received by the Trustee or any paying agent shall, until used or applied as herein provided, be held in trust for the purposes for which they were received but need not be segregated from other funds except to the extent required by law. Neither the Trustee nor any paying agent shall be under any liability for interest on any moneys received by it hereunder except such as it may agree with the Corporation to pay thereon. So long as no Event of Default shall have occurred and be continuing, all interest allowed on any such moneys shall be paid from time to time upon the written order of the Corporation, signed by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any Executive Vice President or any Vice President or its Treasurer or any Assistant Treasurer.

SECTION 7.06. *Compensation and Expenses of Trustee.* The Corporation covenants and agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, reasonable compensation, and, except as otherwise expressly provided the Corporation will pay or reimburse the Trustee upon its request for all reasonable expenses disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation expenses and disbursements of its counsel and of all persons not regularly in its employ) except any such expense disbursement or advance as may arise from its negligence or bad faith. The Corporation also covenants to indemnify the Trustee for, and to hold it harmless against, any loss, liability or reasonable expense incurred without negligence or bad faith on the part of the Trustee, arising out of or in connection with the acceptance or administration of this trust, including the reasonable costs and expenses of defending itself against any claim of liability in the premises. The obligations of the Corporation under this Section to compensate the Trustee and to pay or reimburse the Trustee for reasonable expenses, disbursements and advances shall constitute additional indebtedness hereunder. Such additional indebtedness shall be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the Holders of particular Securities or coupons.

SECTION 7.07. *Officers' Certificate as Evidence.* Subject to the provisions of Section 7.01, whenever in the administration of the provisions of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action to be taken hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Trustee, be deemed to be conclusively proved and established by an Officers' Certificate delivered to the Trustee, and such certificate, in the absence of negligence or bad faith on the part

28

of the Trustee, shall be full warrant to the Trustee for any action taken, suffered or omitted by it under the provisions of this Indenture upon the faith thereof.

SECTION 7.08. *Conflicting Interest of Trustee.*

(a) If the Trustee has or shall acquire any conflicting interest, as defined in this Section, it shall, within ninety days after ascertaining that it has such conflicting interest, either eliminate such conflicting interest or resign in the manner and with the effect specified in Section 7.10.

(b) In the event that the Trustee shall fail to comply with the provisions of subsection (a) of this Section, the Trustee shall, within ten days after the expiration of such ninety-day period, transmit notice of such failure to all Securityholders of the series affected by the conflicting interest as the names and addresses of such Holders appear on the Security Register.

(c) For the purposes of this Section the Trustee shall be deemed to have a conflicting interest with respect to a particular series if:

(1) the Trustee is trustee under this Indenture with respect to the Outstanding Securities of any other series or is trustee under another indenture under which any other securities, or certificates of interest or participation in any other securities, of the Corporation are outstanding, unless such other indenture is a collateral trust indenture under which the only collateral consists of Securities issued under this Indenture, provided that there shall be excluded from the operation of this paragraph, this Indenture with respect to any other series or any other indenture or indentures under which other securities, or certificates of interest or participation in other securities of the Corporation are outstanding if (i) this Indenture is, and, if applicable this Indenture and such other indenture or indentures are wholly unsecured, and such other indenture or indentures are hereafter qualified under the Trust Indenture Act of 1939, unless the Securities and Exchange Commission shall have found and declared by order pursuant to subsection (b) of Section 305 or subsection (c) of Section 307 of the Trust Indenture Act of 1939 that differences exist between the provisions of this Indenture with respect to such particular series and one or more other series in this Indenture and the provisions of such other indenture or indentures which are so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify the Trustee from acting as such under this Indenture with respect to such particular series and such other series or such other indenture or indentures, or (ii) the Corporation shall have sustained the burden of proving, on application to the Securities and Exchange Commission and after opportunity for hearing thereon, that trusteeship under this Indenture with respect to such particular series and such other series or under this Indenture and such other indenture or indentures is not so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify the Trustee from acting as such under this Indenture with respect to such particular series and such other series or under this Indenture and such other indenture or indentures;

(2) the Trustee or any of its directors or executive officers is an obligor upon the Securities of any series issued under this Indenture or an underwriter for the Corporation;

(3) the Trustee directly or indirectly controls or is directly or indirectly controlled by or is under direct or indirect common control with the Corporation or an underwriter for the Corporation;

(4) the Trustee or any of its directors or executive officers is a director, officer, partner, employee, appointee, or representative of the Corporation, or of an underwriter (other than the Trustee itself) for the Corporation who is currently engaged in the business of underwriting, except that (A) one individual may be a director or an executive officer or both of the Trustee and a director or an executive officer or both of the Corporation, but may not be at the same time an executive officer of both the Trustee and the Corporation; (B) if and so long as the number of directors of the Trustee in office is more than nine, one additional individual may be a director or an executive officer or both of the Trustee and a director of the Corporation; and (C) the Trustee may be designated by the Corporation or by any underwriter

29

for the Corporation to act in the capacity of transfer agent, registrar, custodian, paying agent, fiscal agent, escrow agent, or depositary, or in any other similar capacity or, subject to the provisions of paragraph (1) of this subsection (c), to act as trustee, *whether under an indenture or otherwise;*

(5) ten percent or more of the voting securities of the Trustee is beneficially owned either by the Corporation or by any director, partner or executive officer thereof; or twenty percent or more of such voting securities is beneficially owned, collectively, by any two or more of such persons; or ten percent or more of the voting securities of the Trustee is beneficially owned either by an underwriter for the Corporation or by any director, partner, or executive officer thereof, or is beneficially owned, collectively, by any two or more such persons;

(6) the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default, (A) five percent or more of the voting securities, or ten percent or more of any other class of security, of the Corporation, not including the Securities issued under this Indenture and securities issued under any other indenture under which the Trustee is also trustee, or (B) ten percent or more of any class of security of an underwriter for the Corporation;

(7) the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default, five percent or more of the voting securities of any person who, to the knowledge of the Trustee, owns ten percent or more of the voting securities of, or controls directly or indirectly or is under direct or indirect common control with, the Corporation;

(8) *the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default,* ten percent, or more of any class of security of any person who, to the knowledge of the Trustee, owns fifty percent or more of the voting securities of the Corporation; or

(9) the Trustee owns on May 15 in any calendar year, in the capacity of executor, administrator, testamentary or inter vivos trustee, guardian, committee or conservator, or in any other similar capacity, an aggregate of twenty-five percent or more of the voting securities or of any class of security, of any person, the beneficial ownership of a specified percentage of which would have constituted a conflicting interest under paragraph (6), (7), or (8) of this subsection (c). As to any such securities of which the Trustee acquired ownership through becoming executor, administrator, or testamentary trustee of an estate which included them, the provisions of the preceding sentence shall not apply, for a period of two years from the date of such acquisition to the extent that such securities included in such estate do not exceed *twenty-five percent of such voting securities or twenty-five percent of any such class of security.* Promptly after May 15 in each calendar year, the Trustee shall make a check of its holdings of such securities in any of the above-mentioned capacities as of such May 15. If the Corporation fails to make payment in full of principal of or interest on any of the Securities when and as the same become due and payable and such failure continues for thirty days thereafter, the Trustee shall make a prompt check of *its holdings of such securities in any of the above-mentioned capacities as of the date of the expiration of* such thirty-day period, and after such date, notwithstanding the foregoing provisions of this paragraph (9), all such securities so held by the Trustee, with sole or joint control over such securities vested in it, shall, but only so long as such failure shall continue, be considered as though beneficially owned by the Trustee for the purposes of paragraphs (6), (7), and (8) of this subsection (c).

The specification of percentages in paragraphs (5) to (9), inclusive, of this subsection (c) shall not be construed as indicating that the ownership of such percentages of the securities of a person is or is not necessary or sufficient to constitute direct or indirect control for the purposes of paragraph (3) or (7) of this subsection (c).

For the purposes of paragraphs (6), (7), (8), and (9) of this subsection (c) only, (A) the terms "security" and "securities" shall include only such securities as are generally known as corporate securities, but shall not include any note or other evidence of indebtedness issued to evidence an obligation to repay moneys lent to a person by one or more banks, trust companies or banking firms, or any certificate of interest or participation in any such note or evidence of indebtedness; (B) *an obligation shall be deemed to be in default*

30

when a default in payment of principal shall have continued for thirty days or more and shall not have been cured; and (C) the Trustee shall not be deemed to be the owner or Holder of (i) any security which it holds as collateral security (as trustee or otherwise) for an obligation which is not in default as defined in clause (B) above, or (ii) any security which it holds as collateral security under this Indenture, irrespective of any default hereunder, or (iii) any security which it holds as agent for collection, or as custodian, escrow agent, or depositary, or in any similar representative capacity.

Except as provided above, the word "security" or "securities" as used in this Indenture shall mean any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of or warrant or right to subscribe to or purchase, any of the foregoing.

(d) For the purposes of this Section:

(1) The term "underwriter" when used with reference to the Corporation shall mean every person who, within three years prior to the time as of which the determination is made, has purchased from the Corporation with a view to, or has offered or has sold for the Corporation in connection with, the distribution of any security of the Corporation outstanding at such time, or has participated or has had a direct or indirect participation in any such undertaking, or has participated or has had a participation in the direct or indirect underwriting of any such undertaking, but such terms shall not include a person whose interest was limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission.

(2) The term "director" shall mean any director of a corporation or any individual performing similar functions with respect to any organization whether incorporated or unincorporated.

(3) The term "person" shall mean an individual, a corporation, a partnership, an association, a joint-stock company, a trust, an unincorporated organization, or a government or political subdivision thereof. As used in this paragraph, the term "trust" shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security.

(4) The term "voting security" shall mean any security presently entitling the owner or Holder thereof to vote in the direction or management of the affairs of a person or any security issued under or pursuant to any trust, agreement or arrangement whereby a trustee or trustees or agent or agents for the owner or Holder of such security are presently entitled to vote in the direction or management of the affairs of a person.

(5) The term "Corporation" shall mean any obligor upon the Securities.

(6) The term "executive officer" shall mean the chairman, vice chairman, president, every vice president, every trust officer, the cashier, the secretary, and the treasurer of a corporation, and any individual customarily performing similar functions with respect to any organization whether incorporated or unincorporated.

The percentages of voting securities and other securities specified in this Section shall be calculated in accordance with the following provisions:

(A) A specified percentage of the voting securities of the Trustee, the Corporation or any other person referred to in this Section (each of whom is referred to as a "person" in this paragraph) means such amount of the outstanding voting securities of such person as entitles the Holder or Holders thereof to cast such specified percentage of the aggregate votes which the Holders of all the outstanding voting securities of such person are entitled to cast in the direction or management of the affairs of such person.

31

(B) A specified percentage of a class of securities of a person means such percentage of the aggregate amount of securities of the class outstanding

(C) The term "amount", when used in regard to securities, means the principal amount if relating to evidences of indebtedness, the number of shares if relating to capital shares, and the number of units if relating to any other kind of security.

(D) The term "outstanding" means issued and not held by or for the account of the issuer. The following securities shall not be deemed outstanding within the meaning of this definition:

(i) securities of an issuer held in a sinking fund relating to securities of the issuer of the same class;

(ii) securities of an issuer held in a sinking fund relating to another class of securities of the issuer, if the obligation evidenced by such other class of securities is not in default as to principal or interest or otherwise;

(iii) securities pledged by the issuer thereof as security for an obligation of the issuer not in default as to principal or interest or otherwise; and

(iv) securities held in escrow if placed in escrow by the issuer thereof;

provided, however, that any voting securities of an issuer shall be deemed outstanding if any person other than the issuer is entitled to exercise the voting rights thereof.

(E) A security shall be deemed to be of the same class as another security if both securities confer upon the Holder or Holders thereof substantially the same rights and privileges; provided, however, that in the case of secured evidences of indebtedness, all of which are issued under a single indenture, differences in the interest rates or maturity dates of various series thereof shall not be deemed sufficient to constitute such series different classes and provided, further, that, in the case of unsecured evidences of indebtedness, differences in the interest rates or maturity dates thereof shall not be deemed sufficient to constitute them securities of different classes, whether or not they are issued under a single indenture

SECTION 7.09. *Eligibility of Trustee.* There shall at all times be a trustee hereunder which shall be a corporation organized and doing business under the laws of the United States or of any State or Territory thereof or of the District of Columbia, which (a) is authorized under such laws to exercise corporate trust powers, and (b) is subject to supervision or examination by Federal, State, Territorial or District of Columbia authority and (c) shall have at all times a combined capital and surplus of not less than twenty-five million dollars. If such corporation publishes reports of condition at least annually, pursuant to law, or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation at any time shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in the manner and with the effect specified in Section 7.10.

SECTION 7.10. *Resignation or Removal of Trustee.* (a) The Trustee, or any trustee or trustees hereafter appointed, may, upon sixty days written notice to the Corporation, at any time resign with respect to one or more or all series by giving written notice of resignation to the Corporation (i) if any Unregistered Securities of a series affected are then outstanding, by giving notice of such resignation to the Holders thereof, by publication at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (ii) if any Unregistered Securities of a series affected are then outstanding, by mailing notice of such resignation to the Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04 at such addresses as were so furnished to the Trustee and (iii) by mailing notice of such resignation to the Holders of then outstanding Registered Securities of each series affected at their addresses as they shall appear on the Security Register. Upon receiving such notice of resignation the Corporation shall promptly appoint a successor trustee with respect to the applicable

32

series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee. If no successor trustee shall have been so appointed and have accepted appointment within thirty days after the mailing of such notice of resignation to the Securityholders, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee, or any Securityholder who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, subject to the provisions of Section 6.08, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

(b) In case at any time any of the following shall occur (i) the Trustee shall fail to comply with the provisions of subsection (a) of Section 7.08 with respect to any series of Securities after written request therefor by the Corporation or by any Securityholder who has been a bona fide Holder of a Security or Securities of such series for at least six months, or

(2) the Trustee shall cease to be eligible in accordance with the provision of Section 7.09 with respect to any series of Securities and shall fail to resign after written request therefor by the Corporation or by any such Securityholder, or

(3) the Trustee shall become incapable of acting with respect to any series of Securities, or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then, in any such case, the Corporation may remove the Trustee with respect to the applicable series of Securities and appoint a successor trustee with respect to such series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the Trustee so removed and one copy to the successor trustee, or, subject to the provisions of Section 6.08, any Securityholder of such series who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to such series. Such court may thereupon, after such noticed, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee.

(c) The Holders of a majority in aggregate principal amount of the Securities of all series (voting as one class) at the time outstanding may at any time remove the Trustee with respect to Securities of all series and appoint a successor trustee with respect to the Securities of all series.

(d) Any resignation or removal of the Trustee and any appointment of a successor trustee pursuant to any of the provisions of this Section shall become effective upon acceptance of appointment by the successor trustee as provided in Section 7.11.

SECTION 7.11. *Acceptance by Successor Trustee.* Any successor trustee appointed as provided in Section 7.10 shall execute, acknowledge and deliver to the Corporation and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee with respect to all or any applicable series shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, duties and obligations with respect to such series of its predecessor hereunder, with like effect as if originally named as trustee herein; but, nevertheless, on the written request of the Corporation or of the successor trustee, the trustee ceasing to act shall, upon payment of any amounts then due it pursuant to the provisions of Section 7.06, execute and deliver an instrument transferring to such successor trustee all the rights and powers of the trustee so ceasing to act. Upon request of any such successor trustee, the Corporation shall execute any and all instruments in writing in order more fully and certainly to vest in and confirm to such successor trustee all such rights and powers. Any trustee ceasing to act shall, nevertheless, retain a lien upon all property or funds held or collected by such trustee to secure any amounts then due it pursuant to the provisions of Section 7.06.

In case of the appointment hereunder of a successor trustee with respect to the Securities of one or more (but not all) series, the Corporation, the predecessor Trustee and each successor trustee with respect to the Securities of any applicable series shall execute and deliver an indenture supplemental hereto which shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the predecessor Trustee with respect to the Securities of any series as to which the predecessor Trustee is not retiring shall continue to be vested in the predecessor Trustee, and shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such trustees co-trustees of the same trust and that each such trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such trustee.

No successor trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor trustee shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09.

Upon acceptance of appointment by a successor trustee as provided in this Section, the Corporation shall give notice of the succession of such trustee hereunder (a) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof, by publication of such notice at least once in an Authorized Newspaper in the Borough of Manhattan, The City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (b) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee pursuant to Section 5.04, by mailing such notice to such Holders at such addresses as were so furnished to the Trustee (and the Trustee shall make such information available to the Corporation for such purpose) and (c) to the Holders of Registered Securities of each series affected, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register. If the Corporation fails to mail such notice in the prescribed manner within ten days after the acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be so given at the expense of the Corporation.

SECTION 7.12. *Successor by Merger, etc.* Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such corporation shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

SECTION 7.13. *Limitations on Rights of Trustee as Creditor.* (a) Subject to the provisions of subsection (b) of this Section, if the Trustee shall be or shall become a creditor, directly or indirectly, secured or unsecured, of the Corporation or of any other obligor on the Securities within four months prior to a default, as defined in subsection (c) of this Section, or subsequent to such a default, then, unless and until such default shall be cured, the Trustee shall set apart and hold in a special account for the benefit of the Trustee individually, the Holders of the Securities of any series for which it is acting as trustee, the Holders of any coupons appertaining to such Securities, and the holders of other indenture securities (as defined in subsection (c) of this Section):

(1) an amount equal to any and all reductions in the amount due and owing upon any claim as such creditor in respect of principal or interest, effected after the beginning of such four months' period and valid as against the Corporation and its other creditors, except any such reduction resulting from the receipt or disposition of any property described in paragraph (2) of this subsection or from the exercise of any right of set-off which the Trustee could have exercised if a petition in bankruptcy had been filed by or against the Corporation upon the date of such default; and

34

(2) all property received by the Trustee in respect of any claim as such creditor, either as security therefor, or in satisfaction or composition thereof, or otherwise, after the beginning of such four months' period, or an amount equal to the proceeds of any such property, if disposed of, subject, however, to the rights, if any, of the Corporation and its other creditors in such property or such proceeds. Nothing herein contained, however, shall affect the right of the Trustee:

(A) to retain for its own account (i) payments made on account of any such claim by any person (other than the Corporation) who is liable thereon, and (ii) the proceeds of the bona fide sale of any such claim by the Trustee to a third person, and (iii) distributions made in cash, securities, or other property in respect of claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law;

(B) to realize, for its own account, upon any property held by it as security for any such claim, if such property was so held prior to the beginning of such four months' period;

(C) to realize, for its own account, but only to the extent of the claim hereinafter mentioned, upon any property held by it as security for any such claim, if such claim was created after the beginning of such four months' period and such property was received as security therefor simultaneously with the creation thereof, and if the Trustee shall sustain the burden of proving that at the time such property was so received the Trustee had no reasonable cause to believe that a default as defined in subsection (c) of this Section would occur within four months: or

(D) to receive payment on any claim referred to in paragraph (b) or (c), against the release of any property held as security for such claim as provided in such paragraph (b) or (c), as the case may be, to the extent of the fair value of such property.

For the purposes of paragraphs (B), (C) and (D), property substituted after the beginning of such four months' period for property held as security at the time of such substitution shall, to the extent of the fair value of the property released, have the same status as the property released, and, to the extent that any claim referred to in any of such paragraphs is created in renewal of or in substitution for or for the purpose of repaying or refunding any preexisting claim of the Trustee as such creditor, such claim shall have the same status as such preexisting claim.

If the Trustee shall be required to account, the funds and property held in such special account and the proceeds thereof shall be apportioned between the Trustee, the Securityholders and the holders of other indenture securities in such manner that the Trustee, the Securityholders and the holders of other indenture securities realize, as a result of payments from such special account and payments of dividends on claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, the same percentage of their respective claims, figured before crediting to the claim of the Trustee anything on account of the receipt by it from the Corporation of the funds and property in such special account and before crediting to the respective claims of the Trustee, the Securityholders and the holders of the other indenture securities, dividends on claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, but after crediting thereon receipts on account of the indebtedness represented by their respective claims from all sources other than from such dividends and from the funds and property so held in such special account. As used in this paragraph, with respect to any claim, the term "dividends" shall include any distribution with respect to such claim, in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, whether such distribution is made in cash, securities, or other property, but shall not include any such distribution with respect to the secured portion, if any, of such claim. The court in which such bankruptcy, receivership, or proceeding for reorganization is pending shall have jurisdiction (i) to apportion between the Trustee, the Securityholders and the holders of other indenture securities, in accordance with the provisions of this paragraph, the funds and property held in such special account and the proceeds thereof, or (ii) in lieu

35

of such apportionment, in whole or in part, to give to the provisions of this paragraph due consideration in determining the fairness of the distributions to be made to the Trustee, the Securityholders and the holders of other indenture securities with respect to their respective claims, in which event it shall not be necessary to liquidate or to appraise the value of any securities or other property held in such special account or as security for any such claim, or to make a specific allocation of such distributions as between the secured and unsecured portions of such claims, or otherwise to apply the provisions of this paragraph as a mathematical formula.

Any Trustee who has resigned or been removed after the beginning of such four months' period shall be subject to the provisions of this subsection (a) as though such resignation or removal had not occurred. If any Trustee has resigned or been removed prior to the beginning of such four months' period it shall be subject to the provisions of this subsection (a) *if and only if the following conditions exist:*

(i) the receipt of property or reduction of claim would have given rise to the obligation to account, *if such Trustee had continued as trustee,* occurred after the beginning of such four months' period; and

(ii) the receipt of property or reduction of claim occurred within four months after such resignation or removal.

(b) There shall be excluded from the operation of subsection (a) of this Section a creditor relationship arising from:

(1) the ownership or acquisition of securities issued under any indenture, or any security or securities having a maturity of one year or more at the time of acquisition by the Trustee;

(2) advances authorized by a receivership or bankruptcy court of competent jurisdiction or by this Indenture, for the purpose of preserving any property which shall at any time be subject to the lien of this Indenture or of discharging tax liens or other prior liens or encumbrances thereon, if notice of such advance and of circumstances surrounding the making thereof is given to the Securityholders at the time and in the manner provided in this Indenture;

(3) disbursements made in the ordinary course of business in the capacity of trustee under an indenture, transfer agent, registrar, custodian, paying agent, fiscal agent or depositary, or other similar capacity;

(4) an indebtedness created as a result of services rendered or premises rented; or an indebtedness created as a result of goods or securities sold in a cash transaction as defined in subsection (c) of this Section;

(5) the ownership of stock or of other securities of a corporation organized under the provisions of Section 25(a) of the Federal Reserve Act, as amended, which is directly or indirectly a creditor of the Corporation; or

(6) the acquisition, ownership, acceptance or negotiation of any drafts, bills of exchange, acceptances or obligations which fall within the classification of self-liquidating paper as defined in subsection (c) of this Section (C).

*As used in this Section:*

(1) The term "default" shall mean any failure to make payment in full of the principal of or interest upon any of the Securities or upon the other indenture securities when and as such principal or interest becomes due and payable.

(2) The term "other indenture securities" shall mean securities upon which the Corporation is an obligor (as defined in the Trust Indenture Act of 1939) outstanding under any other indenture (A) under which the Trustee is also trustee, (B) which contains provisions substantially similar to the provisions of *subsection (a) of this Section, and (C) under which a default exists at the time of the apportionment of* the funds and property held in said special account.

36

(3) The term "cash transaction" shall mean any transaction in which full payment for goods or securities sold is made within seven days after delivery of the goods or securities in currency or in checks or other orders drawn upon banks or bankers and payable upon demand.

(4) The term "self-liquidating paper" shall mean any draft, bill of exchange, acceptance or obligation which is made, drawn, negotiated or incurred by the Corporation for the purposes of financing the purchase, processing, manufacture, shipment, storage or sale of goods, wares or merchandise and which is secured by documents evidencing title to, possession of, or a lien upon, the goods, wares or merchandise or the receivables or proceeds arising from the sale of the goods, wares or merchandise previously constituting the security, provided the security is received by the Trustee simultaneously with the creation of the creditor relationship with the Corporation arising from the making, drawing, negotiating or incurring of the draft, bill of exchange, acceptance or obligation.

(5) The term "Corporation" shall mean any obligor upon the Securities.

## ARTICLE EIGHT.

### CONCERNING THE SECURITYHOLDERS.

SECTION 8.01. *Action by Securityholders.* Whenever in this Indenture it is provided that the Holders of a specified percentage in aggregate principal amount of the Securities of any or all series may take any action (including the making of any demand or request, the giving of any notice, consent or waiver or the taking of any other action), the fact that at the time of taking any such action the Holders of such specified percentage have joined therein may be evidenced (a) by any instrument or any number of instruments of similar tenor executed by Securityholders in person or by agent or proxy appointed in writing, or (b) by the record of the Holders of Securities voting in favor thereof at any meeting of Securityholders duly called and held in accordance with the provisions of Article Nine, or (c) by a combination of such instrument or instruments and any such record of such a meeting of Securityholders.

In determining whether the Holders of a specified percentage in aggregate principal amount of the Securities have taken any action (including the making of any demand or request, the waiving of any notice, consent or waiver or the taking of any other action), the principal amount of any Original Issue Discount Security that may be counted in making such determination and that shall be deemed to be outstanding for such purposes shall be equal to the amount of the principal thereof that could be declared to be due and payable upon an Event of Default pursuant to the terms of such Original Issue Discount Security at the time the taking of such action is evidenced to the Trustee.

SECTION 8.02. *Proof of Execution by Securityholders.* Subject to the provisions of Sections 7.01, 7.02 and 9.05, proof of the execution of any instrument by a Securityholder or its agent or proxy shall be sufficient if made in the following manner:

(a) In the case of Holders of Unregistered Securities, the fact and date of the execution by any such person of any instrument may be proved by the certificate of any notary public or other officer of any jurisdiction authorized to take acknowledgments of deeds or administer oaths that the person executing such instruments acknowledged to him the execution thereof or by an affidavit of a witness to such execution sworn to before any such notary or other such officer. Where such execution is by or on behalf of any legal entity other than an individual, such certificate or affidavit shall also constitute sufficient proof of the authority of the person executing the same. The fact of the holding by any Holder of a Security of any series, and the identifying number of such Security and the date of his holding the same, may be proved by the production of such Security or by a certificate executed by any trust company, bank, banker or recognized securities dealer wherever situated satisfactory to the Trustee, if such certificate shall be deemed by the Trustee to be satisfactory. Each such certificate shall be dated and shall state that on the date thereof a Security of such series bearing a specified identifying number was deposited with or exhibited to such trust company, bank, banker or recognized securities dealer by the person named in such certificate. Any such certificate may be issued in respect of one or more Securities

37

of one or more series specified therein. The holding by the person named in any such certificate of any Securities of any series specified therein shall be presumed to continue for a period of one year from the date of such certificate unless at the time of any determination of such holding (1) another certificate bearing a later date issued in respect of the same Securities shall be produced, or (2) the Security of such series specified in such certificate shall be produced by some other person, or (3) the Security of such series specified in such certificates shall have ceased to be outstanding. Subject to Sections 7.01, 7.02 and 9.05, the fact and date of the execution of any such instrument and the amount and numbers of Securities of any series held by the person so executing such instrument and the amount and numbers of any Security or Securities for such series may also be proven in accordance with such reasonable rules and regulations as may be prescribed by the Trustee for such series or in any other manner which the Trustee for such series may deem sufficient.

(b) In the case of Registered Securities, the ownership of such Securities shall be proved by the Security Register or by a certificate of the Security Registrar.

SECTION 8.03.  *Who Are Deemed Absolute Owners.* The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may treat the Holder of any Unregistered Security and the Holder of any coupon as the absolute owner of such Unregistered Security or coupon (whether or not such Unregistered Security or coupon shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary. The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may, subject to Section 2.04 hereof, treat the person in whose name a Registered Security shall be registered upon the Security Register as the absolute owner of such Registered Security (whether or not such Registered Security shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary.

SECTION 8.04.  *Corporation-Owned Securities Disregarded.* In determining whether the Holders of the required aggregate principal amount of Securities have concurred in any direction, consent or waiver under this Indenture, Securities which are owned by the Corporation or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation, shall be disregarded and deemed not to be outstanding for the purpose of any such determination, except that for the purpose of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver only Securities which the Trustee knows are so owned shall be disregarded. Securities so owned which have been pledged in good faith may be regarded as outstanding for the purposes of this Section if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Securities and that the pledgee is not a person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation. In the case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

SECTION 8.05.  *Revocation of Consents; Future Securityholders Bound.* At any time prior to the taking of any action by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action, any Holder of a Security the identifying number of which is shown by the evidence to be included in the Securities the Holders of which have consented to such action may, by filing written notice with the Trustee at its office and upon proof of holding as provided in Section 8.02, revoke such action so far as concerns such Security. Except as aforesaid any such action taken by the Holder of any Security shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Security and of any Security issued in exchange or substitution therefor irrespective of whether or not any notation in regard thereto is made upon such Security. Any action taken by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action shall be conclusively binding upon the Corporation, the Trustee and the Holders of all the Securities of each series intended to be affected thereby.

38

SECTION 8.06. *Securities in a Foreign Currency.* Unless otherwise specified in an Officers' Certificate delivered pursuant to Section 2.01 of this Indenture with respect to a particular series of Securities, on any day when for purposes of this Indenture any action may be taken by the Holders of a specified percentage in aggregate principal amount of two or more series of Outstanding Securities and, at such time, there are Outstanding Securities of at least one such series which are denominated in a coin or currency other than that of at least one other such series, then the principal amount of Securities of each such series (other than any such series denominated in U.S. Dollars) which shall be deemed to be outstanding for the purpose of taking such action shall be that amount of U.S. Dollars that could be obtained for such amount at the Market Exchange Rate. For purposes of this Section 8.06, Market Exchange Rate shall mean the noon U.S. Dollar buying rate for that currency for cable transfers quoted in The City of New York on such day as certified for customs purposes by the Federal Reserve Bank of New York; provided, however, in the case of ECUs, Market Exchange Rate shall mean the rate of exchange determined by the Commission of the European Communities (or any successor thereto) as published in the Official Journal of the European Communities such publication or any successor publication, the "Journal"). If such Market Exchange Rate is not available for any reason with respect to such currency, the Trustee shall use, in its sole discretion and without liability on its part, such quotation of the Federal Reserve Bank of New York, or in the case of ECUs, the rate of exchange as published in the Journal, as of the most recent available date, or in the case of ECUs, rates of exchange from one or more major banks in the City of New York or in the country of issue of the currency in question, which for purposes of the ECU shall be Brussels, Belgium, or such other quotations or, in the case of ECUs, rate of exchange as the Trustee shall deem appropriate. The provisions of this paragraph shall apply in determining the equivalent number of votes which each Securityholder or proxy shall be entitled to pursuant to *Section 9.05 in respect of Securities of a series denominated in a currency other than U.S. Dollars.*

All decisions and determinations of the Trustee regarding the Market Exchange Rate shall be in its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Corporation and all Holders.

## ARTICLE NINE.

### SECURITYHOLDERS' MEETINGS.

SECTION 9.01. *Purposes of Meetings.* A meeting of Securityholders of any or all series may be called at any time and from time to time pursuant to the provisions of this Article for any of the following purposes:

(1) to give any notice to the Corporation or to the Trustee, or to give any directions to the Trustee, or to waive any default hereunder and its consequences, or to take any other action authorized to be taken by Securityholders pursuant to any of the provisions of Article Six;

(2) to remove the Trustee and appoint a successor trustee pursuant to the provisions of Article Seven;

(3) to consent to the execution of an indenture or indentures supplemental hereto pursuant to the provisions of Section 10.02; or

(4) to take any other action authorized to be taken by or on behalf of the Holders of any specified aggregate principal amount of the Securities of any or all series, as the case may be, under any other provision of this Indenture or under applicable law.

SECTION 9.02. *Call of Meetings by Trustee.* The Trustee may at any time call a meeting of Holders of Securities of any or all series to take any action specified in Section 9.01, to be held at such time and at such place in the Borough of Manhattan, the City of New York, or in London, as the Trustee shall determine. Notice of every meeting of the Holders of Securities of any or all series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given (i) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then outstanding, to all Holders thereof, by publication at least twice in an Authorized Newspaper in the

Borough of Manhattan, The City of New York and at least twice in an Authorized Newspaper in London (and, if required by Section 4.04, at least twice in an Authorized Newspaper in Luxembourg) prior to the date fixed for the meeting, the first publication, in each case, to be not less than twenty nor more than one *hundred eighty days prior to the date fixed for the meeting and the last publication to be not more than five days prior to the date fixed for the meeting,* (ii) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then Outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing such notice to such Holders at such addresses, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting and (iii) to all Holders of then Outstanding Registered Securities of each series that may be affected by the action proposed to be taken at such meeting, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting. Failure of any Holder or Holders to receive such notice or any defect therein shall in no case affect the validity of any action taken at such meeting. Any meeting of Holders of Securities of all or any series shall be valid without notice if the Holders of all such *Securities Outstanding, the Corporation and the Trustee are present in person or by proxy or shall have* waived notice thereof before or after the meeting. The Trustee may fix, in advance, a date as the record date for determining the holders entitled to notice of or to vote at any such meeting at not less than twenty or more than one hundred eighty days prior to the date fixed for such meeting.

SECTION 9.03. *Call of Meetings by Corporation or Securityholders.* In case at any time the Corporation, pursuant to a Board Resolution, or the Holders of at least ten percent in aggregate principal amount of the Securities of any or all series, as the case may be, then outstanding, shall have requested the Trustee to call a meeting of Securityholders of any or all series to take any action authorized in Section 9.01, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have mailed or published as provided in Section 9.02, the notice of such meeting within thirty days after receipt of such request, then the Corporation or the Holders of such Securities in the amount above specified may determine the time and the place in said Borough of Manhattan or London for such meeting and may call such meeting to take any action authorized in Section 9.01, by mailing notice thereof as provided in Section 9.02.

SECTION 9.04. *Qualification for Voting.* To be entitled to vote at any meeting of Securityholders a person shall be a Holder of one or more Securities of a series with respect to which a meeting is being held or a person appointed by an instrument in writing as proxy by such a Holder. The only persons who shall be entitled to be present or to speak at any meeting of the Securityholders shall be the persons entitled to vote at such meeting and their counsel and any representatives of the Trustee and its counsel and any representatives of the Corporation and its counsel.

SECTION 9.05. *Regulations.* Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Securityholders, in regard to proof of the holding of Securities and of the appointment of proxies, and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall think fit.

The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Corporation or by Securityholders as provided in Section 9.03, in which case the Corporation or the Securityholder calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Holders of a majority in principal amount of the Securities represented at the meeting and entitled to vote.

Subject to the provisions of Sections 8.01 and 8.04, at any meeting each Securityholder or proxy shall be entitled to one vote for each $1,000 principal amount of Securities held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any Security challenged as not

Outstanding and ruled by the chairman of the meeting not to be Outstanding The chairman of the meeting shall have no right to vote except as a Securityholder or proxy. Any meeting of Securityholders duly called pursuant to the provisions of Section 9.02 or 9.03 may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

SECTION 9.06. *Voting.* The vote upon any resolution submitted to any meeting of Securityholders shall be by written ballot on which shall be subscribed the signatures of the Securityholders or proxies and on which shall be inscribed the identifying number or numbers or to which shall be attached a list of identifying numbers of the Securities held or represented by them. The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified reports in duplicate of all votes cast at the meeting. A record in duplicate of the proceedings of each meeting of Securityholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavit by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was mailed as provided in Section 9 02. The record shall be signed and verified by the permanent chairman and secretary of the meeting and one of the duplicates shall be delivered to the Corporation and the other to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting.

Any record so signed and verified shall be conclusive evidence of the matters therein stated.

## ARTICLE TEN

### SUPPLEMENTAL INDENTURES.

SECTION 10.01. *Supplemental Indentures without Consent of Securityholders.* The Corporation, when authorized by Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act of 1939 as in force at the date of the execution thereof) for one or more of the following purposes:

(a) to evidence the succession of another corporation to the Corporation, or successive successions, and the assumption by any successor corporation of the covenants, agreements and obligations of the Corporation pursuant to Article Eleven hereof;

(b) to add to the covenants of the Corporation such further covenants, restrictions, conditions or provisions as its Board of Directors and the Trustee shall consider to be for the protection of the Holders of Securities of any or all series, or the coupons appertaining to such Securities, and to make the occurrence, or the occurrence and continuance, of a default in any of such additional covenants, restrictions, conditions or provisions a default or an Event of Default with respect to any or all series permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth, with such period of grace, if any, and subject to such conditions as such supplemental indenture may provide;

(c) to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the issuance of Securities of any series in bearer form, registrable or not registrable as to principal, and with or without interest coupons, and to provide for exchangeability of such Securities with Securities issued hereunder in fully registered form and to make all appropriate changes for such purpose, and to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the issuance of uncertificated Securities of any series;

(d) to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this

41

Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any coupons appertaining to such Securities;

(e) to evidence and provide for the acceptance and appointment hereunder by a successor trustee with respect to the Securities of one or more series and to add or change any provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, pursuant to Section 7.11; and

(f) to establish the form or terms of Securities of any series as permitted by Sections 2.03 and 2.01.

The Trustee is hereby authorized to join with the Corporation in the execution of any such supplemental indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, assignment, mortgage or pledge of any property thereunder, but the Trustee shall not be obligated to enter into any such supplemental indenture which adversely affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section may be executed by the Corporation and the Trustee without the consent of the Holders of any of the Securities at the time Outstanding, notwithstanding any of the provisions of Section 10.02.

SECTION 10.02. *Supplemental Indentures with Consent of Securityholders.* With the consent (evidenced as provided in Section 8.01) of the Holders of not less than sixty-six and two-thirds percent in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any coupons appertaining to such Securities; provided, however, that no such supplemental indenture shall (i) extend the fixed maturity of any Securities, or reduce the principal amount thereof or premium, if any, or reduce the rate or extend the time of payment of any interest or Additional Amounts thereon or reduce the amount due and payable upon acceleration of the maturity thereof or the amount provable in bankruptcy, or make the principal of or interest, premium or Additional Amounts on any Security payable in any coin or currency other than that provided in such Security, (ii) impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof (or, in the case of redemption, on or after the redemption date therefor), or (iii) reduce the aforesaid percentage of Securities, the consent of the Holders of which is required for any such supplemental indenture, or the percentage required for the consent of the Holders pursuant to Section 6.01 to waive defaults, without the consent of the Holder of each Security so affected.

Upon the request of the Corporation, accompanied by a copy of a Board Resolution certified by the Secretary or an Assistant Secretary of the Corporation authorizing the execution of any such supplemental indenture, and upon the filing with the Trustee of evidence of the consent of Securityholders as aforesaid, the Trustee shall join with the Corporation in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture.

It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution and delivery by the Corporation and the Trustee of any supplemental indenture pursuant to the provisions of this Section, the Trustee shall give notice of such supplemental

42

indenture (i) to the Holders of then outstanding Registered Securities of each series affected thereby, by mailing a notice thereof by first-class mail to such Holders at their addresses as they shall appear on the Security Register, (ii) if any Unregistered Securities of a series affected thereby are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing a notice thereof by first-class mail to such Holders at such addresses as were so furnished to the Trustee and (iii) if any Unregistered Securities of a series affected thereby are then outstanding, to all Holders thereof, if by publication of a notice thereof at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), and in each case such notice shall set forth in general terms the substance of such supplemental indenture. Any failure of the Corporation to mail or publish such notice, or any defect therein, shall not, however in any way impair or affect the validity of any such supplemental indenture.

SECTION 10.03. *Compliance with Trust Indenture Act; Effect of Supplemental Indentures.* Any supplemental indenture executed pursuant to the provisions of this Article Ten shall comply with the Trust Indenture Act of 1939, as then in effect. Upon the execution of any supplemental indenture pursuant to the provisions of this Article Ten, this Indenture shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Corporation and the Holders of Securities shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

The Trustee, subject to the provisions of Sections 7.01 and 7.02, may receive an Opinion of Counsel as conclusive evidence that any such supplemental indenture complies with the provisions of this Article Ten

SECTION 10.04. *Notation on Securities.* Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to the provision of this Article Ten may bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. New Securities of any series so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Corporation, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Corporation, authenticated by the Trustee and delivered, without charge to the Securityholders, in exchange for the Securities of such series then outstanding.

# ARTICLE ELEVEN.

## CONSOLIDATION, MERGER, SALE OR CONVEYANCE.

SECTION 11.01. *Corporation May Consolidate, etc., on Certain Terms.* The Corporation covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, unless (i) either the Corporation shall be the continuing corporation, or the successor corporation (if other than the Corporation) shall be a corporation organized and existing under the laws of the United States of America or a state thereof and such corporation shall expressly assume the due and punctual payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on all the Securities and any coupons, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Corporation by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Corporation or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition.

SECTION 11.02. *Successor Corporation Substituted.* In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Corporation, with the same effect as if it had been named herein as the

43

party of the first part. Such successor corporation thereupon may cause to be signed, and may issue either in its own name or in the name of General Motors Corporation, any or all of the Securities, and any coupons appertaining thereto, issuable hereunder which theretofore shall not have been signed by the Corporation and delivered to the Trustee; and, upon the order of such successor corporation, instead of the Corporation, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or coupons which previously shall have been signed and delivered by the officers of the Corporation to the Trustee for authentication, and any Securities or coupons which such successor corporation thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities, and any coupons appertaining thereto, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or coupons theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities, and any coupons appertaining thereto, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities and coupons thereafter to be issued as may be appropriate.

SECTION 11.03. *Opinion of Counsel to be Given Trustee.* The Trustee, subject to the provisions of Sections 7.01 and 7.02, may receive an Opinion of Counsel as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Article Eleven.

## ARTICLE TWELVE.

### SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS.

SECTION 12.01. *Discharge of Indenture.* If at any time (a) the Corporation shall have delivered to the Trustee for cancellation all Securities of any series theretofore authenticated (other than any Securities of such series and coupons appertaining thereto which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.06), or (b) all such Securities of such series and any coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation shall have become due and payable, or are by their terms to become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and the Corporation shall deposit or cause to be deposited with the Trustee as trust funds the entire amount (other than moneys repaid by the Trustee or any paying agent to the Corporation in accordance with Section 12.04) sufficient to pay at maturity or upon redemption all Securities of such series and all coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation, including principal (and premium, if any), interest, if any, and Additional Amounts, if any, due or to become due to such date of maturity or date fixed for redemption, as the case may be, and if in either case the Corporation shall also pay or cause to be paid all other sums payable hereunder by the Corporation with respect to such series, then this Indenture shall cease to be of further effect with respect to the Securities of such series or any coupons appertaining to such Securities, and the Trustee, on demand of and at the cost and expense of the Corporation and subject to Section 14.04, shall execute proper instruments acknowledging satisfaction of and discharging this Indenture with respect to the Securities of such series and all coupons appertaining to such Securities. The Corporation agrees to reimburse the Trustee for any costs or expenses thereafter reasonably and properly incurred by the Trustee in connection with this Indenture or the Securities of such series or any coupons appertaining to such Securities.

SECTION 12.02. *Satisfaction, Discharge and Defeasance of Securities of any Series.* If pursuant to Section 2.01 provision is made for the defeasance of Securities of a series, then the provisions of this Section 12.02 shall be applicable except as otherwise specified as contemplated by Section 2.01 for Securities of such series. At the Corporation's option, either (a) the Corporation shall be deemed to have paid and discharged the entire indebtedness on all the Outstanding Securities of any such series and the Trustee, at the expense of the Corporation, shall execute proper instruments acknowledging satisfaction and discharge of such indebtedness,

44

or (b) the Corporation shall cease to be under any obligation to comply with any term, provision, condition or covenant specified as contemplated by Section 2.01, when

(1) either

(A) with respect to all Outstanding Securities of such series,

(i) the Corporation has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount sufficient to pay and discharge the entire indebtedness of all Outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be; or

(ii) the Corporation has deposited or caused to be deposited with the Trustee as obligations in trust for the purpose such amount of direct noncallable obligations of, or noncallable obligations the payment of principal of and interest on which is fully guaranteed by, the United States of America, or to the payment of which obligations or guarantees the full faith and credit of the United States of America is pledged, maturing as to principal and interest in such amounts and at such times as will, together with the income to accrue thereon (but without reinvesting any proceeds thereof), be sufficient to pay and discharge the entire indebtedness on all Outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be; or

(B) the Corporation has properly fulfilled such other terms and conditions to the satisfaction and discharge as is specified, as contemplated by Section 2 01, as applicable to the Securities of such series, and

(2) the Corporation has paid or caused to be paid all other sums payable with respect to the Outstanding Securities of such series, and

(3) the Corporation has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of the entire indebtedness on all Outstanding Securities of any such series have been complied with.

Any deposits with the Trustee referred to in Section 12.02(1)(A) above shall be irrevocable and shall be made under the terms of an escrow trust agreement in form and substance satisfactory to the Trustee. If any Outstanding Securities of such series are to be redeemed prior to their stated maturity, whether pursuant to any optional redemption provisions or in accordance with any mandatory sinking fund requirement or otherwise, the applicable escrow trust agreement shall provide therefor and the Corporation shall make such arrangements as are satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Corporation.

SECTION 12.03. *Deposited Moneys to be Held in Trust by Trustee.* All moneys deposited with the Trustee pursuant to Section 12.01 or 12.02 shall be held in trust and applied by it to the payment, either directly or through any paying agent (including the Corporation acting as its own paying agent), to the Holders of the particular Securities and of any coupons appertaining to such Securities for the payment or redemption of which such moneys have been deposited with the Trustee, of all sums due and to become due thereon for principal (and premium, if any), interest, if any, and Additional Amounts, if any.

SECTION 12.04. *Paying Agent to Repay Moneys Held.* In connection with the satisfaction and discharge of this Indenture with respect to Securities of any series all moneys with respect to such Securities then held by any paying agent under the provisions of this Indenture shall, upon demand of the Corporation, be repaid to it or paid to the Trustee and thereupon such paying agent shall be released from all further liability with respect to such moneys.

45

SECTION 12.05. *Return of Unclaimed Moneys.* Any moneys deposited with or paid to the Trustee or any paying agent for the payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on any Security and not applied but remaining unclaimed for three years after the date upon which such principal (and premium, if any), interest, if any, and Additional Amounts, if any, shall have become due and payable, shall be repaid to the Corporation by the Trustee or such paying agent on demand, and the Holder of such Security or any coupon appertaining to such Security shall thereafter look only to the Corporation for any payment which such Holder may be entitled to collect and all liability of the Trustee or any paying agent with respect to such moneys shall thereupon cease; provided, however, that the Trustee or such paying agent, before being required to make any such repayment with respect to moneys deposited with it for any payment in respect of Unregistered Securities of any series, may at the expense of the Corporation cause to be published once, in an Authorized Newspaper in the Borough of Manhattan, The City of New York and once in an Authorized Newspaper in London (and, if required by Section 4.04, once in an Authorized Newspaper in Luxembourg), notice that such moneys remain and that, after a date specified therein, which shall not be less than thirty days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Corporation.

## ARTICLE THIRTEEN.

### IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS.

SECTION 13.01. *Indenture and Securities Solely Corporate Obligations.* No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any past, present or future incorporator, stockholder, officer or director, as such, of the Corporation or of any successor corporation, either directly or through the Corporation or any successor corporation, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue of the Securities and coupons.

## ARTICLE FOURTEEN.

### MISCELLANEOUS PROVISIONS.

SECTION 14.01. *Benefits of Indenture Restricted to Parties and Securityholders.* Nothing in this Indenture or in the Securities or coupons, expressed or implied, shall give or be construed to give to any person, firm or corporation, other than the parties hereto and their successors and the Holders of the Securities or coupons, any legal or equitable right, remedy or claim under this Indenture or under any covenant or provision herein contained, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders of the Securities or coupons.

SECTION 14.02. *Provisions Binding on Corporation's Successors.* All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of the Corporation shall bind its successors and assigns, whether so expressed or not.

SECTION 14.03. *Addresses for Notices, etc.* Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders of Securities to or on the Corporation may be given or served by being deposited postage prepaid first class mail in a post office letter box addressed (until another address is filed by the Corporation with the Trustee), as follows: General Motors Corporation, 767 Fifth Avenue, New York, New York 10153. Any notice, direction, request or demand by any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made in writing at its Corporate Trust Office, or at any other address previously furnished in writing to the Corporation by the Trustee.

SECTION 14.04. *Evidence of Compliance with Conditions Precedent.* Upon any application or demand by the Corporation to the Trustee to take any action under any of the provisions of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

SECTION 14.05. *Legal Holidays.* In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 14.06. *Trust Indenture Act to Control.* If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture which is required to be included in this Indenture by any of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939, such required provision shall control.

SECTION 14.07. *Execution in Counterparts.* This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 14.08. *New York Contract.* This Indenture and each Security shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said State

Citibank, N.A., the party of the second part, hereby accepts the trusts in this Indenture declared and provided, upon the terms and conditions hereinabove set forth.

47

IN WITNESS WHEREOF, GENERAL MOTORS CORPORATION, the party of the first part, has caused this Indenture to be signed and acknowledged by its Chairman of the Board or one of its Vice Chairmen of the Board or its President or one of its Executive Vice Presidents or one of its Vice Presidents or its Treasurer, and its Corporate seal to be affixed hereunto, and the same to be attested by its Secretary or an Assistant Secretary; and CITIBANK, N.A., the party of the second part, has caused this Indenture to be signed and acknowledged by one of its Vice Presidents or Senior Trust Officers, and its corporate seal to be affixed hereunto, and the same to be attested by its Secretary or an Assistant Secretary or a Trust Officer, all as of the day and year first above written.

GENERAL MOTORS CORPORATION

[Corporate Seal]

By _____

Attest: _____

[Corporate Seal]

CITIBANK, N.A.

By _____

Attest: _____

48

STATE OF NEW YORK
COUNTY OF NEW YORK } ss.:

*December*

On the 7*th* day of ~~November~~, 1990 before me personally came Charles Golden, to me known, who, being by me duly sworn, did depose and say that he resides at 46 Linden Place, Summit NJ, that he is the Treasurer of General Motors Corporation, one of the corporations described in and which executed the foregoing instrument; that he knows the seal of said Corporation; that the seal affixed to said instrument is such Corporate seal; that it was so affixed by authority of the Board of Directors of said Corporation, and that he signed his name thereto by like authority.

[SEAL]

_____
Helen E Ferguson
Notary Public

HELEN E FERGUSON
NOTARY PUBLIC State of New York
No 31-4752849
Qualified in New York County
Commission Expires July 31 1991

STATE OF NEW YORK
COUNTY OF NEW YORK } ss.:

*December*

On the 10 day of ~~November~~, 1990 before me personally came P. DeFELICE, to me known, who, being by me duly sworn, did depose and say that he resides at 47-09 169th Street, Flushing, N. Y. 11358, that he is a VICE PRESIDENT of Citibank, N.A., one of the corporations described in and which executed the foregoing instrument; that he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that he signed his name thereto by like authority.

[SEAL]

_____
Notary Public

ENZO L. CARBOCCI
Notary Public, State of New York
No 43-6005595
Qualified in Richmond County
Certificate Filed in New York County
Term Expires March 30, 1992

49

**Exhibit B**

**Successor Agreement**



AGREEMENT OF RESIGNATION, APPOINTMENT AND ACCEPTANCE, dated as

of September 26, 2006 by and among GENERAL MOTORS CORPORATION, a corporation

duly organized and existing under the laws of State of Delaware and having its principal office at

300 Renaissance Center, Detroit, Michigan 48265 (the "Company"), Wilmington Trust

Company, a banking corporation duly organized and existing under the laws of the State of

Delaware and having its principal corporate trust office at 1100 North Market Street, Rodney

Square North, Wilmington, DE 19890-0001 ("Successor Trustee") and CITIBANK, N.A., a

national banking association duly organized and existing under the laws of the United States of

America and having its principal corporate trust office at 388 Greenwich Street, 14th Floor, New

York, New York 10013 ("Resigning Trustee")

## RECITALS

WHEREAS, there are currently $1,387,765,000 aggregate principal amount of the

Company's Debt Securities (the "Securities") Outstanding under a Trust Indenture dated as of

November 15, 1990 by and between the Company and the Resigning Trustee (the "Indenture"),

WHEREAS, Citibank, N.A., is the Trustee, Securities Registrar and paying agent under

the Indenture

WHEREAS, Section 7.10 of the Indenture provides that the Trustee may at any time

resign with respect to the Securities of one or more series by giving written notice of such

resignation to the Company, effective upon the acceptance by a successor Trustee of its

appointment as a successor Trustee;

WHEREAS, Section 7.10 of the Indenture provides that, if the Trustee shall resign, the

Company, by order of the Board of Directors of the Company, shall promptly appoint a

successor Trustee.

WHEREAS, Section 7.11 of the Indenture provides that any successor Trustee appointed in accordance with the Indenture shall execute, acknowledge and deliver to the Company and to its predecessor trustee an instrument accepting such appointment under the Indenture, and thereupon the resignation of the predecessor Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, duties and obligations of the predecessor trustee (except as otherwise specifically set forth herein),

WHEREAS, the Company desires to appoint Successor Trustee as Trustee to succeed Resigning Trustee in such capacity under the Indenture; and

WHEREAS, Successor Trustee is willing to accept such appointment as successor Trustee, under the Indenture,

NOW, THEREFORE, the Company, Resigning Trustee and Successor Trustee, for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby consent and agree as follows:

1

## THE RESIGNING TRUSTEE

1 1    Pursuant to Section 7.10 of the Indenture, Resigning Trustee hereby notifies the Company that Resigning Trustee is hereby resigning as Trustee under the Indenture, but will continue to act, and confirms its appointment as, Securities Registrar and paying agent.

1.2    Resigning Trustee hereby represents and warrants to Successor Trustee that:

    (a)    No covenant or condition contained in the Indenture has been waived by Resigning Trustee or, to the best knowledge of responsible officers of Resigning Trustee by the Holders of the percentage in aggregate principal

amount of the Securities required by the Indenture to effect any such waiver.

(b)    There is no action, suit or proceeding pending or, to the best knowledge of responsible officers of Resigning Trustee, threatened against Resigning Trustee before any court or any governmental authority arising out of any act or omission of Resigning Trustee as Trustee under the Indenture.

(c)    Pursuant to Section 2.03 of the Indenture, Resigning Trustee has duly authenticated and delivered, $1,387,765,000 aggregate principal amount of Securities Outstanding under the Indenture

(d)    The Security Register accurately reflects the amount of Securities issued and outstanding and the amounts payable thereon.

(e)    Each person who so authenticated the Securities was duly elected, qualified and acting as an officer of Resigning Trustee and empowered to authenticate the Securities at the respective times of such authentication and the signature of such person or persons appearing on such Securities is each such person's genuine signature.

(f)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of Resigning Trustee and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms.

(g)    To the best knowledge of responsible officers of the Resigning Trustee, no event has occurred and is continuing which is, or after notice or lapse of

time would become, an Event of Default under Section 6.01 of the Indenture.

1.3    Resigning Trustee hereby assigns, transfers, delivers and confirms to Successor Trustee all right, title and interest of Resigning Trustee in and to the trust under the Indenture (except as otherwise specifically set forth herein) and all the rights, powers and trusts of the Trustee under the Indenture (except as otherwise specifically set forth herein). Resigning Trustee shall execute and deliver such further instruments and shall do such other things as Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in Successor Trustee all such rights, powers and trusts hereby assigned, transferred, delivered and confirmed to Successor Trustee as Trustee

1 4    Resigning Trustee shall deliver to Successor Trustee, as of or immediately after the effective date hereof, all of the documents listed on Exhibit A hereto

2

## THE COMPANY

2 1    The Company hereby accepts the resignation of Resigning Trustee as Trustee under the Indenture and confirms the appointment of Citibank, N.A. as Security Registrar and paying agent

2.2    The Company hereby certifies that Exhibit B annexed hereto is a copy of the act of the Board of Directors of the Company, which is in full force and effect on the date hereof, and which authorizes certain officers of the Company to:

    (a)    accept Resigning Trustee's resignation as Trustee under the Indenture;

    (b)    appoint Successor Trustee as Trustee under the Indenture;

    (c)    confirm the appointment of Citibank, N.A. as Security Registrar and paying agent; and

(d)    execute and deliver such agreements and other instruments as may be necessary or desirable to effectuate the succession of Successor Trustee as Trustee under the Indenture and the confirmation of the appointment of Citibank, N A  as Security Registrar and paying agent under the Indenture

2.3    The Company hereby appoints Successor Trustee as Trustee under the Indenture to succeed to, and hereby vests Successor Trustee with, all the rights, powers, duties and obligations of Resigning Trustee under the Indenture (except as otherwise specifically set forth herein) with like effect as if originally named as Trustee in the Indenture.

2 4    Promptly after the effective date of this Agreement of Resignation, Appointment and Acceptance, the Company shall cause a notice, substantially in the form of Exhibit C annexed hereto, to be sent to each Holder of the Securities in accordance with the provisions of Section 7.10 of the Indenture

2.5    The Company hereby represents and warrants to Resigning Trustee and Successor Trustee that

(a)    The Company is a corporation duly and validly organized and existing pursuant to the laws of the State of Delaware.

(b)    The Indenture was validly and lawfully executed and delivered by the Company and the Securities were validly issued by the Company.

(c)    The Company has performed or fulfilled prior to the date hereof, and will continue to perform and fulfill after the date hereof, each covenant, agreement, condition, obligation and responsibility under the Indenture.

(d)    No event has occurred and is continuing which is, or after notice or lapse of time would become, an Event of Default under Section 6.01 of the Indenture

(e)    No covenant or condition contained in the Indenture has been waived by the Company or, to the best of the Company's knowledge, by Holders of the percentage in aggregate principal amount of the Securities required to effect any such waiver

(f)    There is no action, suit or proceeding pending or, to the best of the Company's knowledge, threatened against the Company before any court or any governmental authority arising out of any act or omission of the Company under the Indenture.

(g)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of the Company and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms

(h)    All conditions precedent relating to the appointment of Wilmington Trust Company as successor Trustee under the Indenture have been complied with by the Company.

(i)    The Trust Indenture dated as of April 1, 1986 by and between the Company and the Resigning Trustee has been terminated and there are no series outstanding thereunder.

(j)    The Subordinated Indenture dated as of December 20, 2001 by and between the Company and the Resigning Trustee has been terminated and there are no series outstanding thereunder

3

## THE SUCCESSOR TRUSTEE

3.1    Successor Trustee hereby represents and warrants to Resigning Trustee and to the Company that·

(a)    The Successor Trustee is not disqualified under the provisions of Section 7.08 and is eligible under the provisions of Section 7 09 of the Indenture to act as Trustee under the Indenture.

(b)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of Successor Trustee and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms.

3 2    Successor Trustee hereby accepts its appointment as successor Trustee under the Indenture and accepts the rights, powers, duties and obligations of Resigning Trustee (except as otherwise specifically set forth herein) as Trustee under the Indenture, upon the terms and conditions set forth therein, with like effect as if originally named as Trustee under the Indenture.

3.3    References in the Indenture to "Corporate Trust Office" or other similar terms shall be deemed for purposes of the paying agent or the Securities Registrar to be 388 Greenwich Street, 14th Floor, New York, NY 10013, Attention  Agency and Trust – General Motors and for purposes of the Trustee to be 1100 North Market Street, Rodney Square North, Wilmington, DE 19890-00001, Attention: Corporate Trust Administration – General Motors

4

## APPOINTMENT OF THE PAYING AGENT

4.1    The Company confirms its appointment of Citibank, N.A. as paying agent under

the Indenture

4.2    Citibank, N.A agrees that

(a)    it will hold sums held by it as such agent for the payment of the principal

of (and premium, if any), interest, if any, or Additional Amounts, if any,

on the Securities of such series in trust for the benefit of the Holders of the

Securities of such series, or coupons appertaining thereto, as the case may

be, entitled thereto and will notify the Successor Trustee of the receipt of

sums to be so held.

(b)    it will give the Successor Trustee notice of any failure by the Company (or

by any other obligor on the Securities of such series) to make any payment

of the principal of (or premium, if any), interest, if any, or Additional

Amounts, if any, on the Securities of such series when the same shall be

due and payable, and

(c)    at any time during the continuance of any such default, upon the written

request of the Successor Trustee, it will forthwith pay to the Successor

Trustee all sums so held in trust by such paying agent.

4.3    Citibank, N.A. as paying agent shall comply with all provisions of the Indenture

relating to the rights, powers, duties and obligations of the paying agent.

4.4    Notwithstanding anything herein to the contrary, the Company shall pay Citibank,

N A  the compensation referenced in Section 7.06 of the Indenture. Citibank, N.A  shall pay the

Successor Trustee compensation for its services as Trustee as set forth in a separate fee letter

The Successor Trustee hereby waives all right to the payment of compensation from the Company referenced in Section 7.06 of the Indenture.

4.5    The Company will pay or reimburse Citibank, N A upon its request for all reasonable expenses, disbursements and advances incurred or made by Citibank, N.A. in accordance with any of the provisions of this Agreement of Resignation, Appointment and Acceptance (including the reasonable compensation, expenses and disbursements of its counsel and of all persons not regularly in its employ, but excluding any and all expenses relating to the resignation of the Resigning Trustee and the acceptance of the Successor Trustee and all expenses and disbursements relating to the preparation and negotiation of this Agreement of Resignation, Appointment and Acceptance) except any such expense, disbursement or advance as may arise from its negligence or bad faith  The Company also covenants to indemnify Citibank, N.A. for, and to hold it harmless against any loss, liability or reasonable expense incurred without negligence or bad faith on the part of Citibank, N.A., arising out of or in connection with the acceptance or administration of its role as paying agent, including the reasonable costs and expenses of defending itself against any claim of liability in the premises  The obligations of the Company to pay to Citibank, N.A. compensation as set forth in Section 4 4 herein and to pay or reimburse Citibank, N.A for such reasonable expenses, disbursements and advances shall constitute additional indebtedness under the Indenture.  Such additional indebtedness shall be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee or paying agent, except funds held in trust for the benefit of the Holders of particular Securities or coupons.

5

### MISCELLANEOUS

5.1    Except as otherwise expressly provided herein or unless the context otherwise requires, all terms used herein which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

5 2    This Agreement of Resignation, Appointment and Acceptance effected hereby shall be effective as of the opening of business on SEPT 26, 2006.

5.3    Resigning Trustee hereby acknowledges payment or provision for payment in full by the Company of compensation for all services rendered by Resigning Trustee in its capacity as Trustee under Section 7.06 of the Indenture and reimbursement in full by the Company of the expenses, disbursements and advances incurred or made by Resigning Trustee in its capacity as Trustee in accordance with the provisions of the Indenture.  In addition, each of the Resigning Trustee and the Successor Trustee hereby acknowledges that any and all expenses, disbursements and costs incurred by each of them in connection with the resignation and appointment described herein and the preparation and negotiation of this Agreement of Resignation, Appointment and Acceptance shall not be the responsibility of the Company.  The Company acknowledges its obligation set forth in Section 7 06 of the Indenture to indemnify Resigning Trustee for, and to hold Resigning Trustee harmless against, any loss, liability and expense incurred without negligence or bad faith on the part of the Resigning Trustee and arising out of or in connection with the acceptance or administration of the trust evidenced by the Indenture (which obligation shall survive the execution hereof).

5 4    This Agreement of Resignation, Appointment and Acceptance shall be governed by and construed in accordance with the laws of the State of New York

[TPW NYLFGAL-143799.5] 19100-00204 08/09/2006 01 32 PM

5.5    This Agreement of Resignation, Appointment and Acceptance may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument

5.6    The Company, Resigning Trustee and Successor Trustee hereby acknowledge receipt of an executed and acknowledged counterpart of this Agreement of Resignation, Appointment and Acceptance and the effectiveness thereof.



IN WITNESS WHEREOF, the parties hereto have caused this Agreement of Resignation,

Appointment and Acceptance to be duly executed and acknowledged and their respective seals to

be affixed hereunto and duly attested all as of the day and year first above written

[SEAL]

Attest:

Name: ANTOINETTE M. SKEETE
Title: ASSISTANT SECRETARY

GENERAL MOTORS CORPORATION

By: _Teresa Hilado_
    Name: Teresa Hilado
    Title: Assistant Treasurer

Name:
Title: JOHN J. BYRNES
       VICE PRESIDENT

CITIBANK, N.A.
as Resigning Trustee

By: 
Name:
Title: Wafaa Orfy
       Vice President

Attest:

Name:
Title: Eric C. Fischer
       Authorized Signer

WILMINGTON TRUST COMPANY, as
Successor Trustee

By:
Name:
Title: James J. McGinley
       Authorized Signer

[TPW NYLEGAL 547799 5] 19100-00204 08/09/2006 01 12 PM

## EXHIBIT A

Documents to be delivered to Successor Trustee

1.  Executed copy of Indenture dated as of November 15, 1990.

2   Conformed copy of Indenture

3   File of closing documents from initial issuance.

4   Copies of the most recent of each of the SEC reports delivered by the Company pursuant to Section 5.03 of the Indenture

5   A copy of the most recent compliance certificate delivered pursuant to Section 4 05 of the Indenture

6   Certified list of Holders as of the date hereof, including certificate detail and all "stop transfers" and the reason for such "stop transfers" (or, alternatively, if there are a substantial number of registered Holders, the computer tape reflecting the identity of such Holders).

7   Copies of any official notices sent by the Trustee to all the Holders of the Securities pursuant to the terms of the Indenture during the past twelve months and a copy of the most recent Trustee's annual report to holders delivered pursuant to Section 5.04 of the Indenture

8.  List of any documents which, to the actual knowledge of a responsible officer of the Resigning Trustee, are required to be furnished but have not been furnished to Resigning Trustee, or if none a statement from the Resigning Trustee to that effect.



## GENERAL MOTORS CORPORATION

NOTICE   *Successor Indenture Trustee only, non RTA*

To the Holders of the following:

*5 New E work Holders*

9.40% Debentures due July 15, 2021. CUSIP 370442 AN5

8 80% Notes due March 1, 2021: CUSIP 370442 AJ4

7.40% Debentures due September 1, 2025: CUSIP 370442 AR6

*Medium Term Notes* → MTN CUSIP: 37045E AG3

→ MTN CUSIP. 37045E AS7

*Traditionate, Citibank Referral Source*

NOTICE IS HEREBY GIVEN, pursuant to Section 7.10 of the Indenture (the "Indenture") dated as of November 15, 1990 by and between General Motors Corporation, as issuer, and Citibank, N.A., as trustee, that Citibank, N.A has resigned as trustee under the Indenture, but will continue to act as Securities Registrar and paying agent.

Pursuant to Section 7.11 of the Indenture, Wilmington Trust Company, a banking corporation duly organized and existing under the laws of the State of Delaware, has accepted appointment as trustee under the Indenture. The address of the corporate trust office of Wilmington Trust Company is 1100 North Market Street, Rodney Square North, Wilmington, DE 19890-00001

Citibank, N.A.'s resignation as trustee and Wilmington Trust Company's appointment as successor trustee were effective as of the opening of business on September 26, 2006, 2006

Dated: New York, New York
       September 26, 2006

Very truly yours,

By: _Teresa Hilado_
    Name: Teresa Hilado
    Title: Assistant Treasurer

[TPW NYLEGAL-543799 5] 19100-00204 08/09/2006 01 32 PM

**Exhibit C**

**Outstanding Principal and Unpaid Interest**



**EXHIBIT C**

| Issue Name | CUSIP# | Indenture Date | Principal | Interest | Total Principal and Interest |
|---|---|---|---|---|---|
| GM Corp 9.40% Debs due 7/15/2021 | 370442AN5 | 11/15/1990 | $ 299,795,000 | $ 10,646,054 | $ 310,441,054 |
| GM Corp 8.80% Notes due 3/1/2021 | 370442AI4 | 11/15/1990 | 524,795,000 | 11,545,490 | 536,340,490 |
| GM Corp 7.40% Debs due 9/1/2025 | 370442AR6 | 11/15/1990 | 500,000,000 | 9,250,000 | 509,250,000 |
| GM Corp Medium Term Notes AG3 | 37045EAG3 | 11/15/1990 | 15,000,000 | 62,667 | 15,062,667 |
| GM Corp Medium Term Notes AS7 | 37045EAS7 | 11/15/1990 | 48,175,000 | 202,335 | 48,377,335 |

| Total November 15, 1990 Indenture | | | $ 1,387,765,000 | $ 31,706,545 | $ 1,419,471,545 |
|---|---|---|---|---|---|

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM**

| Name of Debtor (Check Only One) | Case No |
|---|---|
| ☑ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem Inc (f/k/a Chevrolet Saturn of Harlem, Inc ) | 09-13558 (REG) |

_Your Claim is Scheduled As Follows:_

FILED
2009 NOV 24 P 12 55
U S BANKRUPTCY COURT
S.D.N.Y.

NOTE _This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503_

Name of Creditor (the person or other entity to whom the debtor owes money or property) Wilmington Trust Company as Indenture Trustee under Indenture dated as of November 15, 1990

Name and address where notices should be sent
Wilmington Trust Company, as Indenture Trustee
c/o Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn  Matthew Williams
Telephone number  (212) 351-4000
Email Address  mjwilliams@gibsondunn.com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

If an amount is identified above you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions you need not file again

Name and address where payment should be sent (if different from above)
Wilmington Trust Company, as Indenture Trustee
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890
Attn  David A Vanaskey
Telephone number  (866) 521-0079

**FILED - 65793**
**MOTORS LIQUIDATION COMPANY**
**F/K/A GENERAL MOTORS CORP**
**SDNY # 09-50026 (REG)**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

1  Amount of Claim as of Date Case Filed, June 1, 2009   $1,419,581,281 12 plus additional amounts described in the attached addendum
If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

2  Basis for Claim   Indenture dated as of November 15, 1990  See attached addendum
(See instruction #2 on reverse side )

3  Last four digits of any number by which creditor identifies debtor _____

   3a  Debtor may have scheduled account as _____
   (See instruction #3a on reverse side )

4  Secured Claim (See instruction #4 on reverse side )
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

   Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
   Describe

   Value of Property $_____   Annual Interest Rate ____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

   Basis for perfection _____

   Amount of Secured Claim  $_____   Amount Unsecured  $_____

6  Credits   The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7  Documents   Attach redacted copies of any documents that support the claim such as promissory notes purchase orders, invoices, itemized statements or running accounts contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary (See instruction 7 and definition of redacted on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

5  Amount of Claim Entitled to Priority under 11 U S C § 507(a)  If any portion of your claim falls in one of the following categories check the box and state the amount

Specify the priority of the claim
☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor s business, whichever is earlier – 11 U S C § 507(a)(4)
☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)
☐ Up to $2 425* of deposits toward purchase lease or rental of property or services for personal family, or household use – 11 U S C § 507(a)(7)
☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)
☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))
☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)
   Amount entitled to priority
   $_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date 11/X/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any | FOR COURT USE ONLY |

NOV 30 2009
THE GARDEN CITY GROUP, INC

Penalty for presenting fraudulent claim  Fine of up to $500 000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

11-30-09P12 26 RCVD

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice*

A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL, THE GARDEN CITY GROUP, INC. ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

THE GENERAL BAR DATE IN THESE CHAPTER 11 CASES IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim

A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee, or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U.S.C. § 503(b)(9) indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases. (See DEFINITIONS below.) Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received towards the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. (FRBP 3001(c) and (d)). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS LLC | |
| (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case, in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out or otherwise deleted certain information. A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification or financial-account number all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form please contact Abx Partners at 1 (800) 414 9607 or by e-mail at claims@motorsliquidation.com

## INFORMATION

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY, _et al._,** <br> **f/k/a GENERAL MOTORS CORP., _et al._,** | Case No  09-50026 (REG) |
| **Debtors.** | (Jointly Administered) |

### ADDENDUM TO THE PROOF OF CLAIM OF
### WILMINGTON TRUST COMPANY, AS TRUSTEE, AGAINST
### MOTORS LIQUIDATION COMPANY, f/k/a GENERAL MOTORS CORP.

1    Wilmington Trust Company ("**Wilmington**") is the successor indenture trustee

(the "**Trustee**") pursuant to that certain indenture dated as of November 15, 1990 (as amended

from time to time, the "**Indenture**")[1] by and between General Motors Corporation, n/k/a Motors

Liquidation Company, a debtor herein ("**GM**"), and Citibank, N A  ("**Citibank**"), a copy of

which is attached hereto as Exhibit A, for the holders (collectively, the "**Holders**") of the

following debentures and notes issued pursuant to the Indenture and certain actions of the Board

of Directors of GM

a    $299,795,000 in original principal amount of 9 40% Debentures due July

15, 2021, CUSIP No  370442AN5, authorized by the Action Taken by the Borrowings

Committee of the Board of Directors of GM dated as of July 15, 1991,[2]

---

[1]  Capitalized terms not defined herein shall have the meanings set forth in the Indenture

[2]  To avoid a voluminous filing, copies of Actions of the Board of Directors have not been attached  However, all
supporting documentation is available upon request, subject to applicable confidentiality provisions, if any, by
contacting Gibson, Dunn & Crutcher LLP, counsel to Wilmington, at the address referenced in paragraph 11
below

b    $600,000,000 in original principal amount of 8 80% Notes due March 1, 2021, CUSIP No 370442AJ4, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of March 5, 1991[3],

c    $500,000,000 in original principal amount of 7 40% Debentures due September 1, 2025, CUSIP No 370442AR6, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of September 6, 1995,

d    $15,000,000 in original principal amount of 9 40% Medium Term Notes due July 15, 2021, CUSIP No 37045EAG3, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of December 5, 1990, and

e    $48,175,000 in original principal amount of 9 45% Medium Term Notes due November 1, 2011, CUSIP No 37045EAS7, approved by the Action Taken by the Borrowings Committee of the Board of Directors of GM dated as of December 5, 1990 (the debentures and notes described in the foregoing subsections (a) – (e) of this paragraph 1, collectively, the "**Notes**")

2    Wilmington was appointed the Trustee pursuant to the Agreement of Resignation, Appointment and Acceptance, dated as of September 26, 2006, by and among GM, Wilmington and Citibank (the "**Successor Agreement**"), a copy of which is attached hereto as Exhibit B [4]

3    The Trustee is authorized to file this Proof of Claim pursuant to Section 6 02 of the Indenture

---

[3] The date of this Action Taken by the Borrowings Committee is based upon information provided to Wilmington by GM  Despite a thorough diligence process, neither GM nor Wilmington were able to locate a written copy of this particular Action Taken by the Borrowings Committee

[4] Pursuant to the Successor Agreement, Citibank continues to act as Securities Registrar and Paying Agent under the Indenture

4        On June 1, 2009 (the "**Petition Date**") GM and certain of its affiliates commenced

cases under Chapter 11 of the Bankruptcy Code, 11 U S C §§ 101 *et seq*

5        Pursuant to Section 6 01(e) of the Indenture, GM's filing of its chapter 11 petition

on the Petition Date was an Event of Default under the Indenture    Pursuant to Section 6 02 of

the Indenture, in any bankruptcy case of GM, the Trustee is empowered and entitled to seek

payment of the whole principal amount, and premium if any, and any unpaid and accrued interest

in respect of the Notes

6        Consequently, the Trustee, on behalf of the Holders of the Notes, is entitled to

payment in the aggregate amount of at least $1,419,471,545 22, consisting of the outstanding

principal of at least $1,387,765,000 00, plus interest that has accrued up to the Petition Date of at

least $31,706,545 22 [5]

7        Pursuant to Section 7 06 of the Indenture, GM agreed to pay the Trustee

compensation for services rendered under the Indenture    GM further agreed to reimburse the

Trustee for all out-of-pocket expenses, disbursements, and advances incurred or made by it in

connection with the performance of its duties and the discharge of its obligations under the

Indenture, including the fees and expenses of the Trustee's agents and counsel

8        Pursuant to Section 7 06 of the Indenture, GM agreed to indemnify the Trustee

for, and hold it harmless against, any loss, liability or reasonable expense arising out of or in

connection with the acceptance or administration of the trust, including the costs and expenses of

defending itself against or investigating any claim or liability in connection with the exercise or

performance of any of the Trustee's rights, powers or duties under the Indenture

---

[5] A chart which breaks-down the outstanding principal and unpaid and accrued interest of each of the Notes as of
the Petition Date is attached hereto as Exhibit C

9      Pursuant to Section 7 06 of the Indenture, to secure GM's payment obligations in respect of the Trustee, the Trustee has a lien prior to the Notes on all assets or money held or collected by the Trustee, in its capacity as Trustee

10     As of the Petition Date, the Trustee has outstanding fees and expenses owing under the Indenture in amount of at least $109,735 90, which relate, in part, to fees and expenses incurred in connection with a prepetition exchange offer   In addition, the Trustee may have claims for certain unliquidated fees and expenses of the Paying Agent under the Indenture Furthermore, since the Petition Date, the Trustee and its counsel, Gibson, Dunn & Crutcher LLP, have incurred and continue to incur fees and expenses for services rendered under and in connection with the Indenture

11     Notices regarding this Proof of Claim should be sent to

        Gibson, Dunn & Crutcher LLP
        200 Park Avenue
        New York, New York 10166
        Tel   212-351-4000
        Fax   212-351-4035
        Email  mjwilliams@gibsondunn com
                kmartorana@gibsondunn com
        Attn   Matthew J  Williams, Esq
                Keith R  Martorana, Esq

                -and-

        Wilmington Trust Company
        Rodney Square North
        1100 North Market Street
        Wilmington, Delaware 19890
        Tel  (866) 521-0079
        Fax  (302) 636-4140
        Email  dvanaskey@wilmingtontrust com
        Attn   Mr  David A  Vanaskey, Vice President

12     The Trustee expressly reserves its right to replace, amend or supplement this Proof of Claim to include any claims at law or in equity   The filing of this Proof of Claim shall

4

not be deemed a waiver of any claim in law or in equity that the Trustee may have against GM, its affiliates, or others, including, but not limited to, administrative or other priority claims, secured claims, constructive trust claims, the right to seek adequate protection or the right to assert claims that are otherwise warranted in any related action  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of the Trustee with respect to any other claims against any of the affiliates of GM

13    The filing of this Proof of Claim is not intended to be and should not be construed as (a) a consent by the Trustee to the jurisdiction of this Court with respect to the subject matter of this claim, any objection or other proceeding commenced in this case or otherwise involving the Trustee, (b) a waiver of the rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate or guarantor of GM or otherwise, (c) a waiver or release of the Trustee's right to trial by jury, in this or any other court, (d) a waiver of the Trustee's right to have *final orders in non-core matters entered only after de novo* review by a United States District Court Judge, or (e) a waiver of any right to (i) withdraw the reference, or otherwise challenge the jurisdiction of this court, with respect to the subject matter of this claim, any objection or other proceeding commenced in this case against or otherwise involving the Trustee, or (ii) assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving the Trustee

14    The Trustee specifically reserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Trustee by GM, any of its successors and assigns or by any trustee for the estate of GM

5

15      The Holders of the Notes may have separate claims against GM, its affiliates or
others which are not included in this Proof of Claim, and nothing contained herein shall
prejudice such claims



6

**Exhibit A**

**1990 Indenture**





# GENERAL MOTORS CORPORATION

and

## CITIBANK, N.A.,

*Trustee*

---

## Indenture

*Dated as of November 15, 1990*

---

## Debt Securities



## CROSS REFERENCE SHEETS*

### BETWEEN

Provisions of Sections 310 through 318(a) of the Trust Indenture Act of 1939 and the within Indenture between General Motors Corporation and Citibank, N.A., Trustee

| Section of Act | Section of Indenture |
|---|---|
| 310(a)(1) and (2). | 7 09 |
| 310(a)(3) and (4). | Not applicable |
| 310(b) | 7 08 and 7 10(b) |
| 310(c) | Not applicable |
| 311(a) and (b) | 7 13 |
| 311(c). | Not applicable |
| 312(a) | 5 01 and 5 02(a) |
| 312(b) and (c) | 5.02(b) and (c) |
| 313(a). | 5.04(a) |
| 313(b)(1) | Not applicable |
| 313(b)(2) | 5 04(b) |
| 313(c) | 5 04(c) |
| 313(d). | 5 04(d) |
| 314(a) | 5 03 |
| 314(b). | Not applicable |
| 314(c)(1) and (2). | 14 04 |
| 314(c)(3) | Not applicable |
| 314(d) | Not applicable |
| 314(e) | 14.04 |
| 314(f) | Not applicable |
| 315(a), (c) and (d). | 7 01 |
| 315(b) | 6 07 |
| 315(c). | 6 08 |
| 316(a)(1) | 6 01 and 6 06 |
| 316(a)(2) | Omitted |
| 316(a) last sentence. | 8.04 |
| 316(b). | 6 04 |
| 317(a). | 6 02 |
| 317(b). | 4 03(a) |
| 318(a) | 14 06 |

* This Cross-Reference Sheet is not part of the Indenture

# TABLE OF CONTENTS*

| | PAGE |
|---|---|
| PARTIES | 1 |
| RECITALS | 1 |

## ARTICLE ONE
### DEFINITIONS.

| | | PAGE |
|---|---|---|
| SECTION 1 01. | Definitions | 1 |
| | Additional Amounts | 1 |
| | Authorized Newspaper | 1 |
| | Board of Directors | 2 |
| | Board Resolution | 2 |
| | Business Day | 2 |
| | Corporate Trust Office | 2 |
| | Corporation | 2 |
| | Corporation Order | 2 |
| | Coupon | 2 |
| | Coupon Security | 2 |
| | Depositary | 2 |
| | Event of Default | 3 |
| | Global Security | 3 |
| | Holder | 3 |
| | Indenture | 3 |
| | Interest | 3 |
| | Interest Payment Date | 3 |
| | Officers' Certificate | 3 |
| | Opinion of Counsel | 3 |
| | Original Issue Discount Securities | 3 |
| | Outstanding | 4 |
| | Person | 4 |
| | Place of Payment | 4 |
| | Registered Security | 4 |
| | Regular Record Date | 4 |
| | Responsible Officer | 4 |
| | Security Register and Security Registrar | 4 |
| | Trust Indenture Act of 1939 | 5 |
| | United States | 5 |
| | United States person | 5 |
| | Unregistered Security | 5 |
| | U S Dollar | 5 |

## ARTICLE TWO
### ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES

| | | PAGE |
|---|---|---|
| SECTION 2 01. | Amount Unlimited, Issuable in Series | 5 |
| SECTION 2 02. | Form of Trustee's Certificate of Authentication | 7 |

* The Table of Contents is not part of the Indenture.

PAGE

SECTION 2 03.    Form, Execution, Authentication, Delivery and Dating of Securities ....... ... .    7

SECTION 2 04.    Denominations; Record Date .. .. . .. . ... .... ..... ...... ...... .    8

SECTION 2 05    Exchange and Registration of Transfer of Securities........... . ... ..... ....    9

SECTION 2 06.    Temporary Securities ... .......... . ....... ............... ......... ..    10

SECTION 2.07.    Mutilated, Destroyed, Lost or Stolen Securities  ...... .. ... ..... ..... ...    10

SECTION 2 08    Cancellation................... ........ . ......... ..... ...... ....    11

SECTION 2 09    Computation of Interest .. ............ ..... ............ . .... .....    11

SECTION 2 10.    Securities in Global Form ...... ....... ..... ...... ..... ..... ....    11

SECTION 2.11.    Medium-Term Securities .. . .... ................... ..... .......    12

ARTICLE THREE.

REDEMPTION OF SECURITIES.

SECTION 3 01    Redemption of Securities, Applicability of Article .... .. . .. . .. .. ..    12

SECTION 3 02    Notice of Redemption, Selection of Securities .. .. ... . ... ... .. ...    13

SECTION 3.03    Payment of Securities Called for Redemption . . . . . . . . . .... . ...........    14

ARTICLE FOUR

PARTICULAR COVENANTS OF THE CORPORATION

SECTION 4 01.    Payment of Principal, Premium, Interest and Additional Amounts   .  .  .    14

SECTION 4 02    Offices for Notices and Payments, etc   . ... . ...... .. ..... ....    14

SECTION 4.03.    Provisions as to Paying Agent   .   . .... . ....... ..... .. ...    15

SECTION 4 04    Luxembourg Publications .   .. ..... ...  . ............. .......    16

SECTION 4 05    Statement by Officers as to Default .. ... ...... ..... ....... ....    16

SECTION 4 06.    Limitation on Liens ...... ..... ..... .... ... ..... ...... ....    16

SECTION 4 07    Limitation on Sale and Lease-Back .. .  .. ............. ..... ...    17

SECTION 4 08    Definitions Applicable to Sections 4 06 and 4 07 .   . . . . .. ........ ..    17

ARTICLE FIVE.

SECURITYHOLDER LISTS AND REPORTS BY THE CORPORATION AND THE TRUSTEE.

SECTION 5 01    Securityholder Lists ...   . . .   .. .. .     ...... . ... .   ....    18

SECTION 5 02.    Preservation and Disclosure of Lists .. ... ..... . . ..... ..... ....    19

SECTION 5 03    Reports by the Corporation ... ... ... ... ..... ....... .......... ....    19

SECTION 5 04.    Reports by the Trustee . . . ...... ..... ...... ..... ..... .... ....    20

ARTICLE SIX.

REMEDIES ON DEFAULT.

SECTION 6 01.    Events of Default  ....  .........  .....  . ... ....... ...... .......  .    21

SECTION 6 02.    Payment of Securities on Default; Suit Therefor . . ............ ...... ......    23

ii

|  |  | PAGE |
|---|---|---|
| SECTION 6 03 | Application of Moneys Collected by Trustee | 24 |
| SECTION 6 04 | Proceedings by Securityholders | 25 |
| SECTION 6.05 | Remedies Cumulative and Continuing | 25 |
| SECTION 6.06 | Direction of Proceedings | 25 |
| SECTION 6 07. | Notice of Defaults | 26 |
| SECTION 6 08. | Undertaking to Pay Costs | 26 |

## ARTICLE SEVEN.

### CONCERNING THE TRUSTEE

| SECTION 7.01. | Duties and Responsibilities of Trustee | 26 |
|---|---|---|
| SECTION 7.02 | Reliance on Documents, Opinions, etc. | 27 |
| SECTION 7 03 | No Responsibility for Recitals, etc. | 28 |
| SECTION 7 04. | Ownership of Securities or Coupons | 28 |
| SECTION 7 05 | Moneys to be Held in Trust | 28 |
| SECTION 7.06 | Compensation and Expenses of Trustee | 28 |
| SECTION 7.07. | Officers' Certificate as Evidence. | 28 |
| SECTION 7 08. | Conflicting Interest of Trustee | 29 |
| SECTION 7 09 | Eligibility of Trustee | 32 |
| SECTION 7.10 | Resignation or Removal of Trustee. | 32 |
| SECTION 7 11 | Acceptance by Successor Trustee | 33 |
| SECTION 7.12 | Successor by Merger, etc. | 34 |
| SECTION 7.13 | Limitations on Rights of Trustee as Creditor | 34 |

## ARTICLE EIGHT.

### CONCERNING THE SECURITYHOLDERS

| SECTION 8.01. | Action by Securityholders | 37 |
|---|---|---|
| SECTION 8.02 | Proof of Execution by Securityholders | 37 |
| SECTION 8.03 | Who Are Deemed Absolute Owners | 38 |
| SECTION 8 04. | Corporation-Owned Securities Disregarded | 38 |
| SECTION 8 05. | Revocation of Consents; Future Securityholders Bound | 38 |
| SECTION 8 06. | Securities in a Foreign Currency | 39 |

## ARTICLE NINE

### SECURITYHOLDERS' MEETINGS

| SECTION 9.01 | Purposes of Meetings | 39 |
|---|---|---|
| SECTION 9.02. | Call of Meetings by Trustee | 39 |
| SECTION 9.03 | Call of Meetings by Corporation or Securityholders | 40 |
| SECTION 9.04. | Qualification for Voting | 40 |
| SECTION 9.05. | Regulations | 40 |

|  |  | PAGE |
| --- | --- | --- |
| SECTION 9.06 | Voting | 41 |

## ARTICLE TEN

### SUPPLEMENTAL INDENTURES.

| SECTION 10 01. | Supplemental Indentures without Consent of Securityholders | 41 |
| SECTION 10.02. | Supplemental Indentures with Consent of Securityholders | 42 |
| SECTION 10 03 | Compliance with Trust Indenture Act  Effect of Supplemental Indentures | 43 |
| SECTION 10.04. | Notation on Securities | 43 |

## ARTICLE ELEVEN.

### CONSOLIDATION, MERGER, SALE OR CONVEYANCE

| SECTION 11 01 | Corporation May Consolidate, etc., on Certain Terms | 43 |
| SECTION 11 02 | Successor Corporation Substituted | 43 |
| SECTION 11 03. | Opinion of Counsel to be Given Trustee | 44 |

## ARTICLE TWELVE

### SATISFACTION AND DISCHARGE OF INDENTURE, UNCLAIMED MONEYS.

| SECTION 12.01. | Discharge of Indenture | 44 |
| SECTION 12 02 | Satisfaction, Discharge and Defeasance of Securities of any Series | 44 |
| SECTION 12 03 | Deposited Moneys to be Held in Trust by Trustee | 45 |
| SECTION 12 04 | Paying Agent to Repay Moneys Held | 45 |
| SECTION 12 05 | Return of Unclaimed Moneys | 46 |

## ARTICLE THIRTEEN

### IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS

| SECTION 13.01. | Indenture and Securities Solely Corporate Obligations | 46 |

## ARTICLE FOURTEEN.

### MISCELLANEOUS PROVISIONS.

| SECTION 14.01. | Benefits of Indenture Restricted to Parties and Securityholders | 46 |
| SECTION 14 02. | Provisions Binding on Corporation's Successors | 46 |
| SECTION 14 03 | Addresses for Notices, etc | 46 |
| SECTION 14.04 | Evidence of Compliance with Conditions Precedent | 47 |
| SECTION 14 05 | Legal Holidays | 47 |
| SECTION 14 06 | Trust Indenture Act to Control | 47 |
| SECTION 14 07 | Execution in Counterparts | 47 |
| SECTION 14.08. | New York Contract | 47 |
| ACCEPTANCE OF TRUST BY TRUSTEE | | 47 |

|  | PAGE |
|---|---|
| TESTIMONIUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 48 |
| SIGNATURES AND SEALS . . . . . . . . . . . . . . . . . . . . . . . . . | 48 |
| ACKNOWLEDGMENTS . . . . . . . . . . . . . . . . . . . . . . . | 49 |



THIS INDENTURE, dated as of the fifteenth day of November, 1990 between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (hereinafter sometimes called the "Corporation"), party of the first part, and Citibank, N A, a national banking association duly incorporated, and existing under the laws of the United States of America (hereinafter sometimes called the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven), party of the second part

WITNESSETH:

WHEREAS, the Corporation deems it necessary to issue from time to time for its lawful purposes securities (hereinafter called the "Securities" or, in the singular, "Security") evidencing its unsecured indebtedness and has duly authorized the execution and delivery of this Indenture to provide for the issuance of the Securities in one or more series, unlimited as to principal amount, to bear such rates of interest, to mature at such time or times and to have such other provisions as shall be fixed as hereinafter provided; and

WHEREAS, the Corporation represents that all acts and things necessary to constitute these presents a valid indenture and agreement according to its terms, have been done and performed, and the execution of this Indenture has in all respects been duly authorized, and the Corporation, in the exercise of legal rights and power in it vested, is executing this Indenture,

NOW, THEREFORE:

In order to declare the terms and conditions upon which the Securities are authenticated, issued and received, and in consideration of the premises, of the purchase and acceptance of the Securities by the Holders thereof and of the sum of one dollar to it duly paid by the Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Corporation covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective Holders from time to time of the Securities, as follows

## ARTICLE ONE

### DEFINITIONS

SECTION 1 01 *Definitions* The terms defined in this Section (except as herein otherwise provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section All other terms used in this Indenture which are defined in the Securities Act of 1933, as amended, shall have the meanings (except as herein otherwise expressly provided or unless the context otherwise requires) assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture as originally executed. Certain terms used wholly or principally within an Article of this Indenture may be defined in that Article.

#### Additional Amounts

The term "Additional Amounts" shall mean any additional amounts which are required by a Security or by or pursuant to a Board Resolution under circumstances specified therein, to be paid by the Corporation in respect of certain taxes, assessments or governmental charges imposed on certain Holders of Securities and which are owing to such Holders of Securities.

#### Authorized Newspaper

The term "Authorized Newspaper" shall mean a newspaper in an official language of the country of publication of general circulation in the place in connection with which the term is used If it shall be impractical in the opinion of the Trustee to make any publication of any notice required hereby in an Authorized Newspaper, any publication or other notice in lieu thereof which is made or given with the approval of the Trustee shall constitute a sufficient publication of such notice

1

*Board of Directors*

The term "Board of Directors" shall mean the Board of Directors of the Corporation or the Finance Committee of the Corporation or any committee established by the Finance Committee

*Board Resolution*

The term "Board Resolution" shall mean a resolution certified by the Secretary or Assistant Secretary of the Corporation to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee

*Business Day*

The term "Business Day" shall mean, with respect to any Security, a day (other than a Saturday or Sunday) that in the city (or in any of the cities, if more than one) in which amounts are payable as specified on the face of the form of such Security, is neither a legal holiday nor a day on which banking institutions are authorized or required by law, regulation or executive order to close.

*Corporate Trust Office*

The term "Corporate Trust Office" means the office of the Trustee in New York, New York, at which at any particular time its corporate trust business shall be principally administered, which office at the date hereof is located at 120 Wall Street, New York, NY 10043, except that, with respect to presentation of Securities for payment or registration of transfers and exchanges and the location of the Security Registrar, such term means the office or agency of the Trustee in said city at which at any particular time its corporate agency business shall be conducted, which at the date hereof is located at 111 Wall Street, New York, NY 10043.

*Corporation*

The term "Corporation" shall mean the Person named as the "Corporation" in the first paragraph of this instrument until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation

*Corporation Order*

The term "Corporation Order" shall mean a written order signed in the name of the Corporation by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer of the Corporation

*Coupon*

The term "coupon" shall mean any interest coupon appertaining to a Security

*Coupon Security*

The term "Coupon Security" shall mean any Security authenticated and delivered with one or more coupons appertaining thereto.

*Depositary*

The term "Depositary" shall mean, with respect to the Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depositary by the

2

Corporation pursuant to Section 2 01 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Securities of any such series shall mean the Depositary with respect to the Securities of that series

### Event of Default

The term "Event of Default" shall mean any event specified as such in Section 6 01

### Global Security

The term "Global Security" shall mean a Registered Security or an Unregistered Security evidencing all or part of a series of Securities issued to the Depositary for such series in accordance with Section 2.03

### Holder

The terms "Holder," "Holder of Securities," "Securityholder" or other similar terms, shall mean (a) in the case of any Registered Security, the person in whose name at the time such Security is registered on the registration books kept for that purpose in accordance with the terms hereof, and (b) in the case of any Unregistered Security, the bearer of such Security

### Indenture

The term "Indenture" shall mean this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof

### Interest

The term "Interest" shall mean, when used with respect to non-interest bearing Securities, interest payable after maturity.

### Interest Payment Date

The term "Interest Payment Date" when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security

### Officers' Certificate

The term "Officers' Certificate" shall mean a certificate signed by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer of the Corporation.

### Opinion of Counsel

The term "Opinion of Counsel" shall mean an opinion in writing signed by legal counsel, who may be an employee of or counsel to the Corporation, or who may be other counsel acceptable to the Trustee.

### Original Issue Discount Securities

The term "Original Issue Discount Securities" shall mean any Securities which are initially sold at a discount from the principal amount thereof and which provide upon Event of Default for declaration of an amount less than the principal amount thereof to be due and payable upon acceleration thereof.

3

*Outstanding*

The term "Outstanding", when used with reference to Securities, shall, subject to the provisions of Section 7.08 and Section 8.04, mean, as of any particular time, all Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation,

(b) Securities, or portions thereof, for the payment or redemption of which moneys in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Corporation) or shall have been set aside and segregated in trust by the Corporation (if the Corporation shall act as its own paying agent), provided, that if such Securities are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as in Article Three provided, or *provisions satisfactory to the Trustee shall have been made for giving such notice;* and

(c) Securities in lieu of and in substitution for which other Securities shall have been authenticated and delivered pursuant to the terms of Section 2.07, unless proof satisfactory to the Trustee is presented that any such Securities are held by bona fide Holders in due course.

*Person*

The term "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof

*Place of Payment*

The term "Place of Payment," when used with respect to the Securities of any series, means the office or agency of the Corporation in the Borough of Manhattan, the City of New York, designated and maintained by the Corporation pursuant to Section 4.02 and such other place or places where the principal of (and premium, if any) and interest (and Additional Amounts, if any) on the Securities of that series are payable as specified as contemplated by Sections 2.01 and 2.04

*Registered Security*

The term "Registered Security" shall mean any Security registered on the Security registration books of the Corporation.

*Regular Record Date*

The term "Regular Record Date" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Sections 2.01 and 2.04.

*Responsible Officer*

The term "responsible officer" when used with respect to the Trustee shall mean any vice president, any assistant vice president, any senior trust officer or trust officer or any other officer of the Trustee customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject

*Security Register and Security Registrar*

The term "Security Register" and "Security Registrar" shall have the respective meanings specified in Section 2.05.

4

*Trust Indenture Act of 1939*

Except as otherwise provided in Sections 10 01 and 10 02, the term "Trust Indenture Act of 1939" shall mean the Trust Indenture Act of 1939 as in force at the date of this Indenture as originally executed

*United States*

The term "United States" shall mean the United States of America (including the States and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U S Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

*United States person*

The term "United States person" has the meaning given to it by the Internal Revenue Code of 1986, as amended, and regulations thereunder, including U.S. Treasury Regulations Section 1 163-5(c)(2)(i)(D).

*Unregistered Security*

The term "Unregistered Security" shall mean any Security other than a Registered Security.

*U S Dollar*

The term "U S Dollar" or "$" means a dollar or other equivalent unit in such coin or currency of the United States of America as at the time shall be legal tender for the payment of public and private debts

## ARTICLE TWO.

### ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES

SECTION 2 01. *Amount Unlimited, Issuable In Series* The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series

(1) the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 2 05, 2.06, 2 07, 3 02 or 10.04);

(3) the date or dates on which the principal of the Securities of the series is payable;

(4) the rate or rates, which may be fixed or variable, at which the Securities of the series shall bear interest, if any, and if the rate or rates are variable, the manner of calculation thereof, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable and, in the case of Registered Securities the Regular Record Date for the determination of Holders of such Securities to whom interest is payable on any Interest Payment Date;

(5) the place or places (in addition to such place or places specified in this Indenture) where the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on Securities of the series shall be payable;

5

(6) the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series may be redeemed, in whole or in part, at the option of the Corporation;

(7) the obligation, if any, of the Corporation to redeem or purchase Securities of the series pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed or purchased, in whole or in part, pursuant to such obligation;

(8) if other than U S Dollars, the currency or currencies, or units based on or related to foreign currencies, including European Currency Units ("ECUs"), in which the Securities of the series shall be denominated and in which payments of principal of, any premium on, interest on, if any, and any other amounts payable with respect to such Securities shall or may be payable; or in the manner in which such currency, currencies or composite currencies will be determined, and if the principal of (and premium, if any), interest, if any, on the Securities of such series are to be payable, at the election of the Corporation or a holder thereof, in a currency or currencies, including composite currencies, other than that or those in which the Securities are stated to be payable, the currency or currencies in which payment of the principal of (and premium, if any) and interest, if any, on Securities of such series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(9) the denominations in which Securities of the series shall be issuable, if other than $1,000 or integral multiples thereof with respect to Registered Securities and denominations of $1,000 and $5,000 for Unregistered Securities;

(10) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof or which the Trustee shall be entitled to claim pursuant to Section 6.02,

(11) whether the Securities of the series will be issuable as Registered Securities or Unregistered Securities (with or without coupons), or both, any restrictions applicable to the offer, sale or delivery of Unregistered Securities and, if other than as provided for in Section 2 05, the terms upon which Unregistered Securities of the series may be exchanged for Registered Securities of such series and vice versa, and whether the Securities of the series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depositary for such Global Security or Securities and whether any Global Securities of the series are to be issuable initially in temporary form and whether any Global Securities of the series are to be issuable in definitive form with or without coupons and, if so, whether beneficial owners of interests in any such definitive Global Security may exchange such interests for Securities of such series and of like tenor of any authorized form and denomination and the circumstances under which and the place or places where any such exchanges may occur, if other than in the manner provided in Section 2.05,

(12) whether and under what circumstances the Corporation will pay Additional Amounts on the Securities of the series held by a person who is not a United States person in respect of any tax, assessment or governmental charge withheld or deducted and, if so, whether the Corporation will have the option to redeem such Securities rather than pay such Additional Amounts,

(13) the provisions, if any, for the defeasance of the Securities of the series, and

(14) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

All Securities of any one series shall be substantially identical except (i) as to denomination and (ii) that Securities of any series may be issuable as either Registered Securities or Unregistered Securities and (iii) as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto

6

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or any Assistant Secretary of the Corporation and delivered to the Trustee at the same time as or prior to the delivery of the Officers' Certificate setting forth the terms of the series

SECTION 2.02. *Form of Trustee's Certificate of Authentication.* The Trustee's certificate of authentication shall be in the following form.

[FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION]

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

CITIBANK, N.A.,
as Trustee,


By _____
            Authorized Officer

SECTION 2 03  *Form, Execution, Authentication, Delivery and Dating of Securities.* The Securities of each series and the coupons, if any, to be attached thereto, shall be in the forms approved from time to time by or pursuant to a Board Resolution, or established in one or more indentures supplemental hereto, and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Corporation may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any stock exchange on which the Securities may be listed, or to conform to usage

Each Security and coupon shall be executed on behalf of the Corporation by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any Executive Vice President or any Vice President and by its Treasurer or any Assistant Treasurer or its Secretary or any Assistant Secretary, under its Corporate seal  Such signatures may be the manual or facsimile signatures of the present or any future such officers  The seal of the Corporation may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities

Each Security and coupon bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Corporation shall bind the Corporation, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Security, or the Security to which such coupon appertains  At any time and from time to time after the execution and delivery of this Indenture, the Corporation may deliver Securities of any series executed by the Corporation and, *in the case of Coupon Securities, having attached thereto appropriate coupons, to the Trustee for* authentication, together with a Corporation Order for the authentication and delivery of such Securities, and the Trustee in accordance with such Corporation Order shall authenticate and deliver such Securities. If the *form or terms of the Securities or coupons of the series have been established in or pursuant to one or more* Board Resolutions as permitted by this Section and Section 2.01, in authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall *be entitled to receive, and (subject to Section 7 01) shall be fully protected in relying upon, an Opinion of* Counsel stating.

(a) if the form of such Securities or coupons has been established by or pursuant to Board Resolution as permitted by Section 2 01, that such form has been established in conformity with the provisions of this Indenture;

7

(b) if the terms of such Securities have been established by or pursuant to Board Resolution as permitted by Section 2 01, that such terms have been established in conformity with the provisions of this Indenture, and

(c) that each such Security and coupon, when authenticated and delivered by the Trustee and issued by the Corporation in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and other laws of general applicability relating to or affecting the enforcement of creditors' rights and to general equity principles If such form or terms has been so established, the Trustee shall not be required to authenticate such Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and the Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Every Registered Security shall be dated the date of its authentication. Each Unregistered Security shall be dated as provided in or pursuant to the Board Resolution or supplemental indenture referred to in Section 2 01 or, if no such terms are specified, the date of its original issuance

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Notwithstanding the foregoing, if any Security shall have been duly authenticated and delivered hereunder but never issued and sold by the Corporation, and the Corporation shall deliver such Security to the Trustee for cancelation as provided in Section 2 08 together with a written statement (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) stating that such Security has never been issued and sold by the Corporation, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits of this Indenture.

If the Corporation shall establish pursuant to Section 2 01 that the Securities of a series are to be issued in whole or in part in the form of a Global Security, then the Corporation shall execute and the Trustee shall in accordance with this Section and the Corporation Order with respect to such series authenticate and deliver the Global Security that (i) shall represent and shall be denominated in an aggregate amount equal to the aggregate principal amount of Outstanding Securities of such series to be represented by the Global Security, (ii) shall be registered, if in registered form, in the name of the Depositary for such Global Security or the nominee of such Depositary, and (iii) shall be delivered by the Trustee to such Depositary or pursuant to such Depositary's instructions.

Each Depositary designated pursuant to Section 2 01 for a Global Security in registered form must, at the time of its designation and at all times while it serves as Depositary, be a clearing agency registered under the Securities Exchange Act of 1934 and any other applicable statute or regulation.

SECTION 2 04  *Denominations; Record Date*  The Securities shall be issuable as Registered Securities or Unregistered Securities in such denominations as may be specified as contemplated in Section 2 01. In the absence of any such specification with respect to any series, such Securities shall be issuable in the denominations contemplated by Section 2 01.

The term "record date" as used with respect to an Interest Payment Date (except a date for payment of defaulted interest) shall mean such day or days as shall be specified in the terms of the Registered Securities of any particular series as contemplated by Section 2 01; provided, however, that in the absence of any such provisions with respect to any series, such term shall mean (1) the last day of the calendar month next preceding such Interest Payment Date if such Interest Payment Date is the fifteenth day of a calendar month, or (2) the fifteenth day of a calendar month next preceding such Interest Payment Date if such Interest

Payment Date is the first day of the calendar month; provided, further, that if the day which would be the record date as provided herein shall be a day on which banking institutions in the City of New York are authorized by law or required by executive order to close, then it shall mean the next preceding day which shall not be a day on which such institutions are so authorized or required to close

The person in whose name any Registered Security is registered at the close of business on the Regular Record Date with respect to an Interest Payment Date shall be entitled to receive the interest payable and Additional Amounts, if any, payable on such Interest Payment Date notwithstanding the cancellation of such Registered Security upon any transfer or exchange thereof subsequent to such Regular Record Date and prior to such Interest Payment Date; provided, however, that if and to the extent the Corporation shall default in the payment of the interest and Additional Amounts, if any, due on such Interest Payment Date, such defaulted interest and Additional Amounts, if any, shall be paid to the persons in whose names Outstanding Registered Securities are registered on a subsequent record date established by notice given by mail by or on behalf of the Corporation to the Holders of Securities of the series in default not less than fifteen days preceding such subsequent record date, such record date to be not less than five days preceding the date of payment of such defaulted interest.

SECTION 2 05 *Exchange and Registration of Transfer of Securities* Registered Securities of any series may be exchanged for a like aggregate principal amount of Registered Securities of other authorized denominations of such series Registered Securities to be exchanged shall be surrendered at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, the City of New York, in accordance with the provisions of Section 4 02, and the Corporation shall execute and register and the Trustee shall authenticate and deliver in exchange therefor the Registered Security or Registered Securities which the Holder making the exchange shall be entitled to receive

If the Securities of any series are issued in both registered and unregistered form, except as otherwise specified pursuant to Section 2 01, at the option of the Holder thereof, Unregistered Securities of any series may be exchanged for Registered Securities of such series of any authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4 02, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured coupons and all matured coupons in default thereto appertaining At the option of the Holder thereof, if Unregistered Securities of any series are issued in more than one authorized denomination, except as otherwise specified pursuant to Section 2.01, such Unregistered Securities may be exchanged for Unregistered Securities of such series of other authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4 02 or as specified pursuant to Section 2 01, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured coupons and all matured coupons in default thereto appertaining. Unless otherwise specified pursuant to Section 2 01, Registered Securities of any series may not be exchanged for Unregistered Securities of such series Whenever any Securities are so surrendered for exchange, the Corporation shall execute, and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

The Corporation (or its designated agent (the "Security Registrar")) shall keep, at such office or agency, a Security Register (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Corporation shall register Securities and shall register the transfer of Registered Securities as in this Article Two provided. The Security Register shall be in written form or in any other form capable of being converted into written form within a reasonable time. At all reasonable times the Security Register shall be open for inspection by the Trustee Upon due presentment for registration of transfer of any Registered Security of a particular series at such office or agency, the Corporation shall execute and the Corporation or the Security Registrar shall register and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Registered Security or Registered Securities of such series for an equal aggregate principal amount

9

Unregistered Securities (except for any temporary bearer Securities) and coupons shall be transferable by delivery.

All Securities presented for registration of transfer or for exchange, redemption or payment, as the case may be, shall (if so required by the Corporation or the Trustee) be duly endorsed by, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Corporation and the Trustee duly executed by, the Holder or his attorney duly authorized in writing

No service charge shall be made for any exchange or registration of transfer of Registered Securities, but the Corporation may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith

The Corporation shall not be required to exchange or register a transfer of (a) any Registered Securities of any series for a period of fifteen days next preceding any selection of such Registered Securities of such series to be redeemed, or (b) any Security of any such series selected for redemption except in the case of any such series to be redeemed in part, the portion thereof not to be so redeemed

Notwithstanding anything herein or in the terms of any series of Securities to the contrary, neither the Corporation nor the Trustee (which shall rely on an Officers' Certificate and an Opinion of Counsel) shall be required to exchange any Unregistered Security for a Registered Security if such exchange would result in adverse Federal income tax consequences to the Corporation (including the inability of the Corporation to deduct from its income, as computed for Federal income tax purposes, the interest payable on any Securities) under then applicable United States Federal income tax laws.

SECTION 2 06. *Temporary Securities* Pending the preparation of definitive Securities of any series, the Corporation may execute and upon Corporation Order the Trustee shall authenticate and deliver temporary Securities of such series (printed or lithographed). Temporary Securities of any series shall be issuable in any authorized denominations, and in the form approved from time to time by or pursuant to a Board Resolution but with such omissions, insertions and variations as may be appropriate for temporary Securities, all as may be determined by the Corporation Every temporary Security shall be executed by the Corporation and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities Without unnecessary delay the Corporation shall execute and shall furnish definitive Securities of such series and thereupon any or all temporary Registered Securities of such series may be surrendered in exchange therefor without charge at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, the City of New York, in accordance with the provisions of Section 4 02 and in the case of Unregistered Securities at any agency maintained by the Corporation for such purpose as specified pursuant to Section 2 01, and the Trustee shall authenticate and deliver in exchange for such temporary Securities an equal aggregate principal amount of definitive Securities of the same series of authorized denominations and in the case of such Securities that are Coupon Securities, having attached thereto the appropriate coupons Until so exchanged the temporary Securities of any series shall be entitled to the same benefits under this Indenture as definitive Securities of such series. The provisions of this Section 2 06 are subject to any restrictions or limitations on the issue and delivery of temporary Unregistered Securities of any series that may be established pursuant to Section 2.01 (including any provision that Unregistered Securities of such series initially be issued in the form of a single global Unregistered Security to be delivered to a depositary or agency of the Corporation located outside the United States and the procedures pursuant to which definitive Unregistered Securities of such series would be issued in exchange for such temporary global Unregistered Security).

SECTION 2.07 *Mutilated, Destroyed, Lost or Stolen Securities.* In case any temporary or definitive Security of any series or, in the case of a Coupon Security, any coupon appertaining thereto, shall become mutilated or be destroyed, lost or stolen, the Corporation in the case of a mutilated Security or coupon shall, and in the case of a lost, stolen or destroyed Security or coupon may, in its discretion, execute, and upon Corporation Order the Trustee shall authenticate and deliver, a new Security of the same series as the

mutilated, destroyed, lost or stolen Security or, in the case of a Coupon Security, a new Coupon Security of the same series as the mutilated, destroyed, lost or stolen Coupon Security or, in the case of a coupon, a new Coupon Security of the same series as the Coupon Security to which such mutilated, destroyed, lost or stolen coupon appertains, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated Security, or in lieu of and in substitution for the Security so destroyed, lost or stolen or in exchange for the Coupon Security to which such mutilated, destroyed, lost or stolen coupon appertains, with all appurtenant coupons not destroyed, lost or stolen. In every case the applicant for a substituted Security or coupon shall furnish to the Corporation and to the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Corporation and to the Trustee evidence to their satisfaction of the destruction, loss or theft of such Security or coupon, as the case may be, and of the ownership thereof. The Trustee may authenticate any such substituted Security and deliver the same upon the written request or authorization of any officer of the Corporation Upon the issuance of any substituted Security or coupon, the Corporation may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith and in addition a further sum not exceeding ten dollars for each Security so issued in substitution In case any Security or coupon which has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Corporation may, instead of issuing a substituted Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Security or coupon) if the applicant for such payment shall furnish the Corporation with such security or indemnity as it may require to save it harmless and, in case of destruction, loss or theft, evidence to the satisfaction of the Corporation of the destruction, loss or theft of such Security or coupon and of the ownership thereof.

Every substituted Security with, in the case of any such Security that is a Coupon Security, its coupons, issued pursuant to the provisions of this Section by virtue of the fact that any Security or coupon is destroyed, lost or stolen shall, with respect to such Security or coupon, constitute an additional contractual obligation of the Corporation, whether or not the destroyed, lost or stolen Security or coupon shall be found at any time, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities, and the coupons appertaining thereto, duly issued hereunder

All Securities and any coupons appertaining thereto shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities and coupons appertaining thereto and shall, to the extent permitted by law, preclude any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2 08. *Cancellation.* All Securities surrendered for payment, redemption, exchange or registration of transfer, and all coupons surrendered for payment as the case may be, shall, if surrendered to the Corporation or any agent of the Corporation or of the Trustee, be delivered to the Trustee and promptly cancelled by it or, if surrendered to the Trustee, be cancelled by it, and no Securities or coupons shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture The Trustee shall destroy cancelled Securities and coupons and deliver a certificate of destruction to the Corporation or, if requested to do so by the Corporation, shall return such cancelled Securities and coupons to the Corporation.

SECTION 2.09. *Computation of Interest* Except as otherwise specified as contemplated by Section 2.01 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2 10. *Securities in Global Form* If Securities of a series are issuable in global form, as specified as contemplated by Section 2 01, then, notwithstanding clause (9) of Section 2.01 and the provisions of Section 2.04, such Security shall represent such of the Outstanding Securities of such series as shall be specified therein

11

and may provide that it shall represent the aggregate amount of Outstanding Securities from time to time endorsed thereon and that the aggregate amount of Outstanding Securities represented thereby may from time to time be reduced to reflect exchanges. Any endorsement of a Security in global form to reflect the amount, or any increase or decrease in the amount, of Outstanding Securities represented thereby shall be made by the Trustee in such manner and upon instructions given by such Person or Persons as shall be specified therein or in the Corporation Order to be delivered to the Trustee pursuant to Section 2 03 or Section 2 06 Subject to the provisions of Section 2.03 and, if applicable, Section 2 06, the Trustee shall deliver and redeliver any Security in definitive global bearer form in the manner and upon written instructions given by the Person or Persons specified therein or in the applicable Corporation Order If a Corporation Order pursuant to Section 2 03 or 2.06 has been, or simultaneously is, delivered, any instructions by the Corporation with respect to endorsement or delivery or redelivery of a Security in global form shall be in writing but need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel. The beneficial owner of a Security represented by a definitive Global Security in bearer form may, upon no less than 30 days written notice to the Trustee, given by the beneficial owner through a Depositary, exchange its interest in such definitive Global Security for a definitive Bearer Security or Securities, or a definitive Registered Security or Securities, of any authorized denomination. No individual definitive Bearer Security will be delivered in or to the United States

The provisions of the last sentence of the third to the last paragraph of Section 2 03 shall apply to any Security represented by a Security in global form if such Security was never issued and sold by the Corporation and the Corporation delivers to the Trustee the Security in global form together with written instructions (which need not comply with Section 14 04 and need not be accompanied by an Opinion of Counsel) with regard to the reduction in the principal amount of Securities represented thereby, together with the written statement contemplated by the last sentence of the third to the last paragraph of Section 2 03

Unless otherwise specified as contemplated by Section 2 01, payment of principal of and any premium and any interest on any Security in definitive global form shall be made to the Person or Persons specified therein.

SECTION 2 11  *Medium-Term Securities*  Notwithstanding any contrary provision herein, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver the Corporation Order, Officers' Certificate, supplemental indenture or Opinion of Counsel otherwise required pursuant to Sections 14 04, 2 01, 2 03 and 2 06 at or prior to the time of authentication of each Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued

An Officers' Certificate or supplemental indenture, delivered pursuant to this Section 2 11 in the circumstances set forth in the preceding paragraph may provide that Securities which are the subject thereof will be authenticated and delivered by the Trustee on original issue from time to time upon the telephonic or written order of persons designated in such Officers' Certificate or supplemental indenture (telephonic instructions to be promptly confirmed in writing by such persons) and that such persons are authorized to determine, consistent with such Officers' Certificate or any applicable supplemental indenture such terms and conditions of said Securities as are specified in such Officers' Certificate or supplemental indenture, provided that the foregoing procedure is acceptable to the Trustee

## ARTICLE THREE.

### REDEMPTION OF SECURITIES

SECTION 3 01  *Redemption of Securities, Applicability of Article*  Redemption of Securities of any series as permitted or required by the terms thereof shall be made in accordance with such terms and this Article,

provided, however, that if any provision of any series of Securities shall conflict with any provision of this Article, the provision of such series of Securities shall govern

Notice date for a redemption of Securities shall mean the date on which notice of such redemption is given in accordance with the provisions of Section 3 02 hereof

SECTION 3 02 *Notice of Redemption; Selection of Securities.* In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part of a series of Securities pursuant to the terms and provisions applicable to such series, it shall fix a date for redemption and shall mail a notice of such redemption at least thirty and not more than ninety days prior to the date fixed for redemption to the Holders of the Securities of such series which are Registered Securities to be redeemed as a whole or in part at their last addresses as the same appear on the Security Register Such mailing shall be by prepaid first class mail Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 5 04, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than ninety days prior to the date fixed for redemption, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose) Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, the City of New York and in an Authorized Newspaper in London (and, if required by Section 4 04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than ninety days prior to the date fixed for redemption Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Each such notice of redemption shall specify the date fixed for redemption, the redemption price at which such Securities are to be redeemed, the Place of Payment, that payment will be made upon presentation and surrender of such Securities and, in the case of Coupon Securities, of all coupons appertaining thereto maturing after the date fixed for redemption, that interest and Additional Amounts, if any, accrued to the date fixed for redemption will be paid as specified in said notice, and that on and after said date interest, if any, thereon or on the portions thereof to be redeemed will cease to accrue If less than all of the Securities of a series are to be redeemed any notice of redemption published in an Authorized Newspaper shall specify the numbers of the Securities to be redeemed In case any Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Security, a new Security or Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series.

Prior to the redemption date specified in the notice of redemption given as provided in this Section, the Corporation will deposit in trust with the Trustee or with one or more paying agents an amount of money sufficient to redeem on the redemption date all the Securities or portions of Securities so called for redemption at the appropriate redemption price, together with accrued interest, if any, to the date fixed for redemption. The Corporation will give the Trustee notice of each redemption no later than the date on which notice thereof is given to the Holders; provided, that if less than all of the Securities of a series are to be redeemed, the Corporation will give the Trustee notice at least forty-five days prior to the date fixed for redemption (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Securities to be redeemed.

13

If less than all of the Securities of a series are to be redeemed, the Trustee shall select, pro rata or by lot or in such other manner as it shall deem reasonable and fair, the numbers of the Securities to be redeemed in whole or in part

SECTION 3 03.  *Payment of Securities Called for Redemption.*  If notice of redemption has been given as above provided, the Securities or portions of Securities with respect to which such notice has been given shall become due and payable on the date and at the Place of Payment stated in such notice at the applicable redemption price, together with interest, if any (and Additional Amounts, if any), accrued to the date fixed for redemption, and on and after said date (unless the Corporation shall default in the payment of such Securities at the redemption price, together with interest, if any, and Additional Amounts, if any, accrued to said date) interest on the Securities or portions of Securities so called for redemption shall cease to accrue On presentation and surrender of such Securities subject to redemption at said Place of Payment in said notice specified, the said Securities or the specified portions thereof shall be paid and redeemed by the Corporation at the applicable redemption price, together with interest, if any, and Additional Amounts, if any, accrued thereon to the date fixed for redemption  Interest, if any (and Additional Amounts, if any), maturing on or prior to the date fixed for redemption shall continue to be payable (but *without interest thereon unless the Corporation shall default in payment thereof)* in the case of Coupon Securities to the bearers of the coupons for such interest upon surrender thereof, and in the case of Registered Securities to the Holders thereof registered as such on the Security Register on the relevant record date subject to the terms and provisions of Section 2 04  At the option of the Corporation payment may be made by check to (or to the order of) the *Holders of the Securities or other persons entitled thereto against presentation and surrender of such Securities.*

If any Coupon Security surrendered for redemption shall not be accompanied by all appurtenant coupons maturing after the date fixed for redemption, the surrender of such missing coupon or coupons may be waived by the Corporation and the Trustee, if there be furnished to each of them such security or indemnity as they may require to save each of them harmless

Upon presentation of any Security redeemed in part only, the Corporation shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Security or Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Security so presented of the same series

## ARTICLE FOUR

### PARTICULAR COVENANTS OF THE CORPORATION.

SECTION 4 01  *Payment of Principal, Premium, Interest and Additional Amounts*  The Corporation will duly and punctually pay or cause to be paid the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on each of the Securities at the place, at the respective times and in the manner provided in the terms of the Securities and in this Indenture. The interest on Coupon Securities (together with any Additional Amounts) shall be payable only upon presentation and surrender of the several coupons for such interest instalments as are evidenced thereby as they severally mature. The interest, if any, on any temporary bearer Securities (together with any Additional Amounts) shall be paid, as *to the instalments of* interest evidenced by coupons attached thereto, if any, only upon presentation and surrender thereof, and, as *to the other instalments of interest, if any, only upon presentation of such Securities* for notation thereon of the payment of such interest  The interest on Registered Securities (together with any Additional Amounts) shall be payable only to or upon the written order of the Holders thereof and at the option of the Corporation may be paid by mailing checks for such interest payable to or upon the order of such Holders at *their* last addresses as they appear on the Security Register for such Securities.

SECTION 4.02  *Offices for Notices and Payments, etc.*  As long as any of the Securities of a series remain outstanding, the Corporation will designate and maintain, in the Borough of Manhattan, the City of New

14

York, an office or agency where the Registered Securities of such series may be presented for registration of transfer and for exchange as in this Indenture provided, an office or agency where notices and demands to or upon the Corporation in respect of the Securities of such series or of this Indenture may be served, and an office or agency where the Securities of such series may be presented for payment  The Corporation will give to the Trustee notice of the location of each such office or agency and of any change in the location thereof  In case the Corporation shall fail to maintain any such office or agency in the Borough of Manhattan, the City of New York, or shall fail to give notice of the location or of any change in the location thereof, presentations may be made and notices and demands may be served at the corporate trust office of the Trustee in the Borough of Manhattan, the City of New York, and the Corporation hereby appoints the Trustee as its agent to receive all such presentations, notices and demands

If Unregistered Securities of any series are Outstanding, the Corporation will maintain or cause the Trustee to maintain one or more agencies in a city or cities located outside the United States (including any city in which such an agency is required to be maintained under the rules of any stock exchange on which the Securities of such series are listed) where such Unregistered Securities, and coupons, if any, appertaining thereto may be presented for payment  No payment on any Unregistered Security or coupon will be made upon presentation of such Unregistered Security or coupon at an agency of the Corporation within the United States nor will any payment be made by transfer to an account in, or by mail to an address in, the United States, except, at the option of the Corporation, if the Corporation shall have determined that, pursuant to applicable United States laws and regulations then in effect such payment can be made without adverse tax consequences to the Corporation. Notwithstanding the foregoing, payments in U.S  Dollars with respect to Unregistered Securities of any series and coupons appertaining thereto which are payable in U S  Dollars may be made at an agency of the Corporation maintained in the Borough of Manhattan, the City of New York if such payment in U S. Dollars at each agency maintained by the Corporation outside the United States for payment on such Unregistered Securities is illegal or effectively precluded by exchange controls or other similar restrictions

The Corporation hereby initially designates Citibank, N A , located at its Corporate Trust Office as the Security Registrar and as the office or agency of the Corporation in the Borough of Manhattan, The City of New York, where the Securities may be presented for payment and, in the case of Registered Securities, for registration of transfer and for exchange as in this Indenture provided and where notices and demands to or upon the Corporation in respect of the Securities of any series or of this Indenture may be served

SECTION 4.03.  *Provisions as to Paying Agent.* (a) Whenever the Corporation shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section

(1) that it will hold sums held by it as such agent for the payment of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series in trust for the benefit of the Holders of the Securities of such series, or coupons appertaining thereto, as the case may be, entitled thereto and will notify the Trustee of the receipt of sums to be so held,

(2) that it will give the Trustee notice of any failure by the Corporation (or by any other obligor on the Securities of such series) to make any payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series when the same shall be due and payable, and

(3) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such paying agent

(b) If the Corporation shall act as its own paying agent, it will, on or before each due date of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of any series set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series entitled thereto

15

a sum sufficient to pay such principal (and premium if any), interest, if any, or Additional Amounts, if any, so becoming due  The Corporation will promptly notify the Trustee of any failure to take such action.

(c) Anything in this Section to the contrary notwithstanding, the Corporation may, at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for such series by it or any paying agent hereunder as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

(d) Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Sections 12.03 and 12.04

SECTION 4 04  *Luxembourg Publications.* In the event of the publication of any notice pursuant to Section 3 02, 6.07, 7 10, 7 11, 9.02, 10 02 or 12 05, the party making such publication shall also, to the extent that notice is required so to be given to Holders of Securities of any series by applicable Luxembourg law or stock exchange regulation, make a similar publication the same number of times in Luxembourg

SECTION 4.05  *Statement by Officers as to Default*  The Corporation will deliver to the Trustee, on or before a date not more than four months after the end of each fiscal year of the Corporation (which, on the date of execution hereof, ends on December 31) ending after the date hereof, commencing with the fiscal year ended in 1990, an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Corporation is in default in the performance or observance of any of the terms, provisions and conditions of this Indenture to be performed or observed by it and, if the Corporation shall be in default, specifying all such defaults and the nature thereof of which they may have knowledge

SECTION 4.06  *Limitations on Liens*  For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of the Corporation or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities (together with, if the Corporation shall so determine, any other indebtedness of the Corporation or such Manufacturing Subsidiary ranking equally with the Securities and then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Corporation and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Corporation and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles and shown on the audited consolidated balance sheet contained in the latest published annual report to the stockholders of the Corporation

The above restrictions shall not apply to Debt secured by (i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary, (ii) Mortgages on property existing at the time of acquisition of such property by the Corporation or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any part of the purchase price of such property upon the acquisition of such property by the Corporation or a Manufacturing Subsidiary or to secure any Debt incurred prior to, at the time of, or within 180 days after, the later of the date of acquisition of such property and the date such property is placed in service, for the purpose of financing all or any part of the purchase price thereof, or Mortgages to secure any Debt incurred for the purpose of financing the cost to the Corporation or a Manufacturing Subsidiary of improvements to such acquired property; (iii) Mortgages securing Debt of a Manufacturing Subsidiary owing to the Corporation or to another Subsidiary; (iv) Mortgages on property of a corporation existing at the time such corporation is merged or consolidated with

16

the Corporation or a Manufacturing Subsidiary or at the time of a sale, lease or other disposition of the properties of a corporation as an entirety or substantially as an entirety to the Corporation or a Manufacturing Subsidiary; (v) Mortgages on property of the Corporation or a Manufacturing Subsidiary in favor of the United States of America or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of construction of the property subject to such Mortgages; or (vi) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Mortgage referred to in the foregoing clauses (i) to (v), inclusively; provided, however, that the principal amount of Debt secured thereby shall not exceed by more than 115% the principal amount of Debt so secured at the time of such extension, renewal or replacement and that such extension, renewal or replacement shall be limited to all or a part of the property which secured the Mortgage so extended, renewed or replaced (plus improvements on such property).

SECTION 4 07  *Limitation on Sale and Lease-Back.* For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, enter into any arrangement with any person providing for the leasing by the Corporation or any Manufacturing Subsidiary of any Principal Domestic Manufacturing Property owned by the Corporation or any Manufacturing Subsidiary on the date that the Securities are originally issued (except for temporary leases for a term of not more than five years and except for leases between the Corporation and a Manufacturing Subsidiary or between Manufacturing Subsidiaries), which property has been or is to be sold or transferred by the Corporation or such Manufacturing Subsidiary to such person, unless either (i) the Corporation or such Manufacturing Subsidiary would be entitled, pursuant to the provisions of the covenant on limitation on liens described above, to issue, assume, extend, renew or replace Debt secured by a Mortgage upon such property equal in amount to the Attributable Debt in respect of such arrangement without equally and ratably securing the Securities *provided, however,* that from and after the date on which such arrangement becomes effective the Attributable Debt in respect of such arrangement shall be deemed for all purposes under the covenant on limitation on liens described in Section 4.06 and this covenant on limitation on sale and lease-back to be Debt subject to the provisions of the covenant on limitation on liens described above (which provisions include the exceptions set forth in clauses (i) through (vi) of such covenant), or (ii) the Corporation shall apply an amount in cash equal to the Attributable Debt in respect of such arrangement to the retirement (other than any mandatory retirement or by way of payment at maturity), within 180 days of the effective date of any such arrangement, of Debt of the Corporation or any Manufacturing Subsidiary (other than Debt owned by the Corporation or any Manufacturing Subsidiary) which by its terms matures at or is extendible or renewable at the option of the obligor to a date more than twelve months after the date of the creation of such Debt.

SECTION 4 08.  *Definitions Applicable to Sections 4.06 and 4 07.* The following definitions shall be applicable to the covenants contained in Sections 4.06 and 4 07 hereof

(a) "Attributable Debt" means, at the time of determination as to any lease, the present value (discounted at the actual rate, if stated, or, if no rate is stated, the implicit rate of interest of such lease transaction as determined by the chairman, president, any vice chairman, any vice president, the treasurer or any assistant treasurer of the Corporation), calculated using the interval of scheduled rental payments under such lease, of the obligation of the lessee for net rental payments during the remaining term of such lease (excluding any subsequent renewal or other extension options held by the lessee). The term "net rental payments" means, with respect to any lease for any period, the sum of the rental and other payments required to be paid in such period by the lessee thereunder, but not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, earnings or profits or of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges; provided, however, that, in

17

the case of any lease which is terminable by the lessee upon the payment of a penalty in an amount which is less than the total discounted net rental payments required to be paid from the later of the first date upon which such lease may be so terminated and the date of the determination of net rental payments, "net rental payments" shall include the then current amount of such penalty from the later of such two dates, and shall exclude the rental payments relating to the remaining period of the lease commencing with the later of such two dates.

(b) "Debt" means notes, bonds, debentures or other similar evidences of indebtedness for money borrowed

(c) "Manufacturing Subsidiary" means any Subsidiary (A) substantially all the property of which is located within the continental United States of America, (B) which owns a Principal Domestic Manufacturing Property and (C) in which the Corporation's investment, direct or indirect and whether in the form of equity, debt, advances or otherwise, is in excess of $2,500,000,000 as shown on the books of the Corporation as of the end of the fiscal year immediately preceding the date of determination; *provided, however,* that "Manufacturing Subsidiary" shall not include Electronic Data Systems Corporation and its Subsidiaries, GM Hughes Electronics Corporation and its Subsidiaries, General Motors Acceptance Corporation and its Subsidiaries (or any corporate successor of any of them) or any other Subsidiary which is principally engaged in leasing or in financing installment receivables or otherwise providing financial or insurance services to the Corporation or others or which is principally engaged in financing the Corporation's operations outside the continental United States of America

(d) "Mortgage" means any mortgage, pledge, lien, security interest, conditional sale or other title retention agreement or other similar encumbrance

(e) "Principal Domestic Manufacturing Property" means any manufacturing plant or facility owned by the Corporation or any Manufacturing Subsidiary which is located within the continental United States of America and, in the opinion of the Board of Directors, is of material importance to the total business conducted by the Corporation and its consolidated affiliates as an entity

(f) "Subsidiary" means any corporation of which at least a majority of the outstanding stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Corporation, or by one or more Subsidiaries, or by the Corporation and one or more Subsidiaries.

## ARTICLE FIVE

### Securityholder Lists and Reports by the Corporation and the Trustee.

SECTION 5 01 *Securityholder Lists* The Corporation covenants and agrees that it will furnish or cause to be furnished to the Trustee with respect to the Securities of each series

(a) semi-annually, not later than each Interest Payment Date (in the case of any series having semi-annual Interest Payment Dates) or not later than the dates determined pursuant to Section 2 01 (in the case of any series not having semi-annual Interest Payment Dates) a list, in such form as the Trustee may reasonably require, of the names and addresses of the Holders of Securities of such series as of the Regular Record Date (or as of such other date as may be determined pursuant to Section 2 01 for such series) therefor, and

(b) at such other times as the Trustee may request in writing, within thirty days after receipt by the Corporation of any such request, a list in such form as the Trustee may reasonably require of the names and addresses of the Holders of Securities of a particular series specified by the Trustee as of a date not more than fifteen days prior to the time such information is furnished; provided, however, that if and so long as the Trustee shall be the Security Registrar any such list shall exclude names and addresses

18

received by the Trustee in its capacity as Security Registrar, and if and so long as all of the Securities of any series are Registered Securities, such list shall not be required to be furnished

SECTION 5 02 *Preservation and Disclosure of Lists.* (a) The Trustee shall preserve, in as current a form as is reasonably practicable, all information as to the names and addresses of the Holders of each series of Securities contained in the most recent list furnished to it as provided in Section 5.01 or received by the Trustee in its capacity as Security Registrar The Trustee may destroy any list furnished to it as provided in Section 5.01 upon receipt of a new list so furnished

(b) In case three or more Holders of Securities (hereinafter referred to as "applicants") apply in writing to the Trustee and furnish to the Trustee reasonable proof that each such applicant has owned a Security of such series for a period of at least six months preceding the date of such application, and such application states that the applicants' desire to communicate with other Holders of Securities of a particular series (in which case the applicants must hold Securities of such series) or with Holders of all Securities with respect to their rights under this Indenture or under such Securities and it is accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, then the Trustee shall, within five business days after the receipt of such application, at its election, either·

(1) afford to such applicants access to the information preserved at the time by the Trustee in accordance with the provisions of subsection (a) of this Section, or

(2) inform such applicants as to the approximate number of Holders of Securities of such series or all Securities, as the case may be, whose names and addresses appear in the information preserved at the time by the Trustee, in accordance with the provisions of subsection (a) of this Section, and as to the approximate cost of mailing to such Securityholders the form of proxy or other communication, if any, specified in such application

If the Trustee shall elect not to afford to such applicants access to such information, the Trustee shall, upon the written request of such applicants, mail to each Holder of such series or all Securities, as the case may be, *whose name and address appear in the information preserved at the time by the Trustee in accordance* with the provisions of subsection (a) of this Section a copy of the form of proxy or other communication which is specified in such request, with reasonable promptness after a tender to the Trustee of the material to be mailed and of payment, or provision for the payment, of the reasonable expenses of mailing, unless within five days after such tender, the Trustee shall mail to such applicants and file with the Securities and Exchange Commission, together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of the Trustee, such mailing would be contrary to the best interests of the Holders of Securities of such series or all Securities, as the case may be, or would be in violation of applicable law. Such written statement shall specify the basis of such opinion. If said Commission, after opportunity for a hearing upon the objections specified in the written statement so filed, shall enter an order refusing to sustain any of such objections or if, after the entry of an order sustaining one or more of such objections, said Commission shall find, after notice and opportunity for hearing, that all the objections so sustained have been met, and shall enter an order so declaring, the Trustee shall mail copies of such material to all such Holders with reasonable *promptness after the entry of such order and the renewal of such tender, otherwise the Trustee shall be* relieved of any obligation or duty to such applicants respecting their application.

(c) *Each and every Holder of Securities, by receiving and holding the same, agrees with the Corporation* and the Trustee that neither the Corporation nor the Trustee nor any agent of the Corporation or of the Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders of Securities in accordance with the provisions of subsection (b) of this Section, regardless of the source from which such information was derived, and that the Trustee shall not be held accountable by reason of mailing any material pursuant to a request made under said subsection (b)

SECTION 5 03 *Reports by the Corporation.* The Corporation covenants

(a) *to file with the Trustee within fifteen days after the Corporation is required to file the same with* the Securities and Exchange Commission, copies of the annual reports and of the information, documents

19

and other reports (or copies of such portions of any of the foregoing as said Commission may from time to time by rules and regulations prescribe) which the Corporation may be required to file with said Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934, or, if the Corporation is not required to file information, documents or reports pursuant to either of such sections, then to file with the Trustee and said Commission, in accordance with rules and regulations prescribed from time to time by said Commission, such of the supplementary and periodic information, documents and reports which may be required pursuant to Section 13 of the Securities Exchange Act of 1934 in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations.

(b) to file with the Trustee and the Securities and Exchange Commission, in accordance with the rules and regulations prescribed from time to time by said Commission, such additional information, documents, and reports with respect to compliance by the Corporation with the conditions and covenants provided for in this Indenture as may be required from time to time by such rules and regulations,

(c) to transmit by mail to all the Holders of Securities of each series, as the names and addresses of such Holders appear on the Security Register, within thirty days after the filing thereof with the Trustee, such summaries of any information, documents and reports required to be filed by the Corporation with respect to each such series pursuant to subsections (a) and (b) of this Section as may be required by rules and regulations prescribed from time to time by the Securities and Exchange Commission, and

(d) If Unregistered Securities of any series are Outstanding, to file with the listing agent of the Corporation with respect to such series such documents and reports of the Corporation as may be required from time to time by the rules and regulations of any stock exchange on which such Unregistered Securities are listed.

SECTION 5 04  *Reports by the Trustee.* (a) On or before April 1, 1991 and on or before April 1 of each year thereafter, so long as any Securities of any series are Outstanding hereunder, the Trustee shall transmit to the Holders of Securities of such series, as provided in subsection (c) of this Section, a brief report dated as of the preceding February 15, with respect to

(1) its eligibility under Section 7 09, and its qualifications under Section 7 08, or in lieu thereof, if to the best of its knowledge it has continued to be eligible and qualified under such Sections, a written statement to such effect,

(2) the character and amount of any advances (and if the Trustee elects so to state, the circumstances surrounding the making thereof) made by the Trustee (as such) which remain unpaid on the date of such report, and for the reimbursement of which it claims or may claim a lien or charge, prior to that of the Securities, on any property or funds held or collected by it as Trustee, except that the Trustee shall not be required (but may elect) to report such advances if such advances so remaining unpaid aggregate not more than one-half of one percent of the principal amount of the Securities for any series outstanding on the date of such report,

(3) the amount, interest rate, and maturity date of all other indebtedness owing by the Corporation (or by any other obligor on the Securities) to the Trustee in its individual capacity, on the date of such report, with a brief description of any property held as collateral security therefor, except an indebtedness based upon a creditor relationship arising in any manner described in paragraphs (2), (3), (4), or (6) of *subsection (b) of Section 7 13,*

(4) the property and funds, if any, physically in the possession of the Trustee as such on the date of *such report;*

(5) any additional issue of Securities of such series which it has not previously reported; and

(6) any action taken by the Trustee in the performance of its duties under this Indenture which it has not previously reported and which in its opinion materially affects the Securities, except action in

20

respect of a default, notice of which has been or is to be withheld by it in accordance with the provisions of Section 6 07

(b) The Trustee shall transmit to the Holders of Securities, as provided in subsection (c) of this Section, a brief report with respect to the character and amount of any advances (and if the Trustee elects so to state, *the circumstances surrounding the making thereof) made by the Trustee (as such) since the date of the last report* transmitted pursuant to the provisions of subsection (a) of this Section (or if no such report has yet been so transmitted, since the date of execution of this Indenture), for the reimbursement of which it claims or may claim a lien or charge prior to that of the Securities of any series on property or funds held or collected by it as Trustee, and which it has not previously reported pursuant to this subsection (b), except that the Trustee for each series shall not be required (but may elect) to report such advances if such advances remaining unpaid at any time aggregate ten per cent or less of the principal amount of Securities for such series outstanding at such time, such report to be transmitted within ninety days after such time

(c) *Reports pursuant to this Section shall be transmitted by mail:*

    (i) to all Holders of Registered Securities, as the names and addresses of such Holders appear upon the Security Register,

    (ii) *to such other Holders of Securities as have, within two years preceding such transmission, filed* their names and addresses with the Trustee for that purpose, and

    (iii) to each Holder of a Security whose name and address are preserved at the time by the Trustee as provided in Section 5 02

(d) A copy of each such report shall, at the time of such transmission to Holder of Securities of a particular series, be filed by the Trustee with each stock exchange upon which the Securities of such series are listed and also with the Securities and Exchange Commission. The Corporation agrees to notify the Trustee when and as the Securities of any series become listed on any stock exchange

## ARTICLE SIX

### REMEDIES ON DEFAULT

SECTION 6 01  *Events of Default.* In case one or more of the following Events of Default with respect to a particular series of Securities shall have occurred and be continuing, that is to say

(a) default in the payment of the principal of (or premium, if any, on) any of the Securities of such series as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise, or

(b) default in the payment of any instalment of interest, if any, or in the payment of any Additional Amounts upon any of the Securities of such series as and when the same shall become due and payable, and continuance of such default for a period of thirty days, or

(c) failure on the part of the Corporation duly to observe or perform any other of the covenants or *agreements on the part of the Corporation applicable to such series of the Securities or contained in this* Indenture for a period of ninety days after the date on which written notice of such failure, requiring the Corporation to remedy the same, shall have been given to the Corporation by the Trustee, or to the Corporation and the Trustee by the Holders of at least twenty-five percent in aggregate principal amount of the Securities of such series at the time outstanding; or

(d) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Corporation in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee,

sequestrator (or similar official) of the Corporation or for any substantial part of its property, or ordering the winding-up or liquidation of its affairs and such decree or order shall remain unstayed and in effect for a period of ninety days, or

(e) the Corporation shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of the Corporation or for any substantial part of its property, or shall make any general assignment for the benefit of creditors,

then if an Event of Default described in clause (a), (b) or (c) shall have occurred and be continuing, and in each and every such case, unless the principal amount of all the Securities of such series shall have already become due and payable, either the Trustee or the Holders of not less than twenty-five percent in aggregate principal amount of the Securities of all series affected thereby then outstanding hereunder, by notice in writing to the Corporation (and to the Trustee if given by Holders of such Securities) may declare the principal amount of all the Securities (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities) of the series affected thereby to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision of this Indenture or the Securities of such series contained to the contrary notwithstanding, or, if an Event of Default described in clause (d) or (e) shall have occurred and be continuing, and in each and every such case, either the Trustee or the Holders of not less than twenty-five per cent in aggregate principal amount of all the Securities then outstanding hereunder (voting as one class), by notice in writing to the Corporation (and to the Trustee if given by Holders of Securities), may declare the principal of all the Securities not already due and payable (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities) to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision in this Indenture or in the Securities to the contrary notwithstanding The foregoing provisions, however, are subject to the conditions that if, at any time after the principal of the Securities of any one or more or all series, as the case may be, shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, the Corporation shall pay or shall deposit with the Trustee a sum sufficient to pay all matured installments of interest, if any, and all Additional Amounts, if any, due upon all the Securities of such series or of all the Securities, as the case may be, and the principal of (and premium, if any, on) all Securities of such series or of all the Securities, as the case may be (or, with respect to Original Issue Discount Securities, such lesser amount as may be specified in the terms of such Securities), which shall have become due otherwise than by acceleration (with interest, if any, upon such principal and premium, if any, and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series, as the case may be (or, with respect to Original Issue Discount Securities at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration of such series, as the case may be), to the date of such payment or deposit), and such amount as shall be payable to the Trustee pursuant to Section 7 06, and any and all defaults under the Indenture shall have been remedied, then and in every such case the Holders of a majority in aggregate principal amount of the Securities of such series (or of all the Securities, as the case may be) then outstanding, by written notice to the Corporation and to the Trustee, may waive all defaults with respect to that series or with respect to all Securities, as the case may be and rescind and annul such declaration and its consequences, but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default or shall impair any right consequent thereon If the principal of all Securities shall have been declared to be payable pursuant to this Section 6 01, in determining whether the Holders of a majority in aggregate principal amount thereof have waived all defaults and rescinded and annulled such declaration, all series of Securities shall be treated as a single class and the principal amount of Original Issue Discount Securities shall be deemed to be the amount declared payable under the terms applicable to such Original Issue Discount Securities.

22

In case the Trustee shall have proceeded to enforce any right under this Indenture and such proceedings shall have been discontinued or abandoned because of such recession and annulment or for any other reason or shall have been determined adversely to the Trustee, then and in every such case the Corporation, Trustee and the Holders of Securities, as the case may be, shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Corporation, the Trustee and the Holders of Securities, as the case may be, shall continue as though no such proceedings had been taken.

SECTION 6 02  *Payment of Securities on Default; Suit Therefor.* The Corporation covenants that (1) in case default shall be made in the payment of any instalment of interest, if any, on any of the Securities of any series or any Additional Amounts in payable respect of any of the Securities of any series, as and when the same shall become due and payable, and such default shall have continued for a period of thirty days, or (2) in case default shall be made in the payment of the principal of (or premium, if any, on) any of the Securities of any series, as and when the same shall have become due and payable, whether upon maturity of such series or upon redemption or upon declaration or otherwise, then upon demand of the Trustee, the Corporation will pay to the Trustee, for the benefit of the Holders of the Securities of such series, and the coupons, if any, appertaining to such Securities, the whole amount that then shall have become due and payable on all such Securities of such series and such coupons, for principal (and premium, if any) or interest, if any, or Additional Amounts, if any, as the case may be, with interest upon the overdue principal (and premium, if any) and (to the extent that payment of such interest is enforceable under applicable law) upon overdue instalments of interest, if any, and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series (or, with respect to Original Issue Discount Securities, at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration); and, in addition thereto, such further amount as shall be sufficient to cover reasonable compensation to the Trustee, its agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee except as a result of its negligence or bad faith.

In case the Corporation shall fail forthwith to pay such amounts upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any action or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Corporation or other obligor upon such Securities and collect in the manner provided by law out of the property of the Corporation or other obligor upon such Securities wherever situated the moneys adjudged or decreed to be payable

In case there shall be pending proceedings for the bankruptcy or for the reorganization of the Corporation or any other obligor upon Securities of any series under Title 11 of the United States Code or any other applicable law, or in case a receiver or trustee shall have been appointed for the property of the Corporation or such other obligor, or in case of any other judicial proceedings relative to the Corporation or such other obligor, or to the creditors or property of the Corporation or such other obligor, the Trustee, irrespective of whether the principal of the Securities of such series shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal (or, with respect to Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of that series), and premium, if any, interest, if any, and Additional Amounts, if any, owing and unpaid in respect of the Securities of such series, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee under Section 7 06 and of the Holders of the Securities and coupons of such series allowed in any such judicial proceedings relative to the Corporation or other obligor upon the Securities of such series, or to the creditors or property of the Corporation or such other obligor, and to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Securityholders of such series and of the Trustee on their behalf; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby

23

authorized by each of the Holders of the Securities and coupons of such series to make payments to the Trustee and, in the event that the Trustee shall consent to the making of payments directly to the Securityholders of such series, to pay to the Trustee such amount as shall be sufficient to cover reasonable compensation to the Trustee, its agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee except as a result of its negligence or bad faith.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding

All rights of action and of asserting claims under this Indenture, or under any of the Securities, may be enforced by the Trustee without the possession of any of the Securities or coupons appertaining to such Securities, or the production thereof on any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name and as trustee of an express trust, and any recovery of judgment shall be for the ratable benefit of the Holders of the Securities or coupons appertaining thereto

In case of a default hereunder the Trustee may in its discretion proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights, either at law or in equity or in bankruptcy or otherwise, whether for the specific enforcement of any covenant or agreement contained in this Indenture or in aid of the exercise of any power granted in this Indenture, or to enforce any other legal or equitable right vested in the Trustee by this Indenture or by law

SECTION 6 03 *Application of Moneys Collected by Trustee* Any moneys collected by the Trustee pursuant to Section 6 02 shall be applied in the order following, at the date or dates fixed by the Trustee and, in case of the distribution of such moneys on account of principal (or premium, if any) or interest, if any, upon presentation of the several Securities and coupons in respect of which moneys have been collected, and stamping thereon the payment, if only partially paid, and upon surrender thereof, if fully paid

FIRST  To the payment of the amounts payable to the Trustee pursuant to Section 7 06;

SECOND  In case the principal of the Securities in respect of which moneys have been collected shall not have become due, to the payment of interest, if any, and Additional Amounts, if any, on the Securities of such series in the order of the maturity of the instalments of such interest, with interest (to the extent that such interest has been collected by the Trustee) upon the overdue instalments of interest at the same rate as the rate of interest, if any, and Additional Amounts, if any, specified in the Securities of such series (or, with respect to Original Issue Discount Securities, at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration), such payments to be made ratably to the persons entitled thereto, without discrimination or preference,

THIRD  In case the principal of the Securities in respect of which moneys have been collected shall have become due, by declaration or otherwise, to the payment of the whole amount then owing and unpaid upon the Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, and (to the extent that such interest has been collected by the Trustee) upon overdue instalments of interest, if any, and Additional Amounts, if any, at the same rate as the rate of interest specified in the Securities of such series (or, with respect to Original Issue Discount Securities, at the rate specified in the terms of such Securities for interest on overdue principal thereof upon maturity, redemption or acceleration); and in case such moneys shall be insufficient to pay in full the whole amount so due and unpaid upon the Securities of such series, then to the payment of such principal (and premium, if any), interest, if any, and Additional Amounts, if any, without preference or priority of principal and premium, if any, over interest, if any, and Additional Amounts, if any, or of interest, if any, and Additional Amounts, if any, over principal and premium, if any, or of any instalment of interest,

24

if any, or Additional Amounts, if any, over any other instalment of interest, if any, or Additional Amounts, if any, or of any Security of such series over any other Security of such series, ratably to the aggregate of such principal and premium, if any, and accrued and unpaid interest, if any, and Additional Amounts, if any

SECTION 6 04   *Proceedings by Securityholders*  No Holder of any Security of any series or of any coupon appertaining thereto shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceedings at law or in equity or in bankruptcy or otherwise, upon or under or with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of not less than twenty-five percent in aggregate principal amount of the Securities of such series then outstanding or, in the case of any Event of Default described in clause (d) or (e) of Section 6 01, twenty-five per cent in aggregate principal amount of all the Securities at the time outstanding (voting as one class) shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for sixty days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 6 06; it being understood and intended, and being expressly covenanted by the taker and Holder of every Security with every other taker and Holder and the Trustee, that no one or more Holders of Securities or coupons appertaining to such Securities shall have any right in any manner whatever by virtue of or by availing himself of any provision of this Indenture to affect, disturb or prejudice the rights of any other Holder of Securities or coupons appertaining to such Securities, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Securities and coupons  For the protection and enforcement of the provisions of this Section, each and every Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity

Notwithstanding any other provisions in this Indenture, however, the right of any Holder of any Security to receive payment of the principal of (and premium, if any) and interest, if any, and Additional Amounts, if any, on such Security or coupon, on or after the respective due dates expressed in such Security or coupon, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder  With respect to Original Issue Discount Securities, principal shall mean such amount as shall be due and payable be specified in the terms of such Securities.

SECTION 6 05   *Remedies Cumulative and Continuing*  All powers and remedies given by this Article Six to the Trustee or to the Holders of Securities or coupons shall, to the extent permitted by law, be deemed cumulative and not exclusive of any thereof or of any other powers and remedies available to the Trustee or the Holders of Securities or coupons, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements contained in this Indenture, and no delay or omission of the Trustee or of any Holder of any of the Securities or coupons to exercise any right or power accruing upon any default occurring and continuing as aforesaid shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and, subject to the provisions of Section 6 04, every power and remedy given by this Article Six or by law to the Trustee or to the Holders of Securities or coupons may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Holders of Securities or coupons, as the case may be

SECTION 6 06   *Direction of Proceedings.*  The Holders of a majority in aggregate principal amount of the Securities of any or all series affected (voting as one class) at the time outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee, provided, however, that (subject to the provisions of Section 7.01) the Trustee shall have the right to decline to follow any such direction if the Trustee, being

25

dvised by counsel, determines that the action or proceedings so directed may not lawfully be taken or if the Trustee in good faith by its board of directors or executive committee or a trust committee of directors or trustees and/or responsible officers shall determine that the action or proceedings so directed would involve the Trustee in personal liability

SECTION 6 07  *Notice of Defaults.* The Trustee shall, within ninety days after the occurrence of a default with respect to the Securities of any series, give notice of all defaults with respect to that series known to the Trustee (i) if any Unregistered Securities of that series are then Outstanding, to the Holders thereof, by publication at least once in an Authorized Newspaper in the Borough of Manhattan, the City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4 04, at least once in an Authorized Newspaper in Luxembourg), (ii) if any Unregistered Securities of that series are then Outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5 04, by mailing such notice to such Holders at such addresses and (iii) to all Holders of then Outstanding Registered Securities of that series, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, unless in each case such defaults shall have been cured before the mailing or publication of such notice (the term "defaults" for the purpose of this Section being hereby defined to be the events specified in Sections 6 01(a), (b), (c), (d) and (e) and any additional events specified in the terms of any series of Securities pursuant to Section 2.01, not including periods of grace, if any, provided for therein, and irrespective of the giving of written notice specified in Section 6 01(c) or in the terms of any Securities established pursuant to Section 2 01); and provided that, except in the case of default in the payment of the principal of or interest, if any, premium or Additional Amounts, if any, on any of the Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or responsible officers of the Trustee in good faith determines that the withholding of such notice is in the interests of the Holders of the Securities of such series

SECTION 6 08  *Undertaking to Pay Costs* All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Trustee, to any suit instituted by any Securityholders of any series, or group of such Securityholders, holding in the aggregate more than ten percent in aggregate principal amount of all Securities (voting as one class), or to any suit instituted by any Securityholders for the enforcement of the payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any on any Security on or after the due date expressed in such Security.

## ARTICLE SEVEN

### CONCERNING THE TRUSTEE

SECTION 7.01.  *Duties and Responsibilities of Trustee.* The Trustee, prior to the occurrence of an Event of Default of a particular series and after the curing of all Events of Default of such series which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture In case an Event of Default with respect to a particular series has occurred (which has not been cured) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own wilful misconduct, except that

26

(a) prior to the occurrence of an Event of Default with respect to a particular series and after the curing of all Events of Default with respect to such series which may have occurred.

(1) the duties and obligations of the Trustees with respect to such series shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2) in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture, but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture,

(b) the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(c) the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of Securities pursuant to Section 6 06 relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture

No provision of this Indenture shall be construed as requiring the Trustee to expend or risk its own funds or otherwise to incur any personal financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there shall be reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it

SECTION 7 02. *Reliance on Documents, Opinions, etc* Subject to the provisions of Section 7.01

(a) the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, coupon or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request, direction, order or demand of the Corporation mentioned herein shall be sufficiently evidenced by an instrument signed in the name of the Corporation by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer (unless other evidence in respect thereof be herein specifically prescribed), and Board Resolution may be evidenced to the Trustee by a copy thereof certified by the Secretary or any Assistant Secretary of the Corporation,

(c) the Trustee may consult with counsel and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance with such Opinion of Counsel,

(d) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Securityholders, pursuant to the provisions of this Indenture, unless such Securityholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses, and liabilities which might be incurred therein or thereby,

(e) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, coupon or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall

27

determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Corporation, personally or by agent or attorney,

(f) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, provided, however, that the Trustee shall be responsible for any misconduct or negligence on the part of any agent or attorney appointed by it hereunder, and

(g) the Trustee shall not be liable for any action taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture

SECTION 7.03  *No Responsibility for Recitals, etc.* The recitals contained herein and in the Securities, other than the Trustee's certificate of authentication, shall be taken as the statements of the Corporation, and the Trustee assumes no responsibility for the correctness of the same. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities, provided that the Trustee shall not be relieved of its duty to authenticate Securities only as authorized by this Indenture. The Trustee shall not be accountable for the use or application by the Corporation of Securities or the proceeds thereof

SECTION 7 04  *Ownership of Securities or Coupons.* The Trustee or any agent of the Corporation or of the Trustee, in its individual or any other capacity, may become the owner or pledgee of Securities or coupons with the same rights it would have if it were not Trustee, or an agent of the Corporation or of the Trustee

SECTION 7 05  *Moneys to be Held in Trust.* Subject to the provisions of Section 12 04 hereof, all moneys received by the Trustee or any paying agent shall, until used or applied as herein provided, be held in trust for the purposes for which they were received but need not be segregated from other funds except to the extent required by law  Neither the Trustee nor any paying agent shall be under any liability for interest on any moneys received by it hereunder except such as it may agree with the Corporation to pay thereon  So long as no Event of Default shall have occurred and be continuing, all interest allowed on any such moneys shall be paid from time to time upon the written order of the Corporation, signed by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any Executive Vice President or any Vice President or its Treasurer or any Assistant Treasurer

SECTION 7.06  *Compensation and Expenses of Trustee* The Corporation covenants and agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, reasonable compensation, and, except as otherwise expressly provided the Corporation will pay or reimburse the Trustee upon its request for all reasonable expenses disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation expenses and disbursements of its counsel and of all persons not regularly in its employ) except any such expense disbursement or advance as may arise from its negligence or bad faith  The Corporation also covenants to indemnify the Trustee for, and to hold it harmless against, any loss, liability or reasonable expense incurred without negligence or bad faith on the part of the Trustee, arising out of or in connection with the acceptance or administration of this trust, including the reasonable costs and expenses of defending itself against any claim of liability in the premises. The obligations of the Corporation under this Section to compensate the Trustee and to pay or reimburse the Trustee for reasonable expenses, disbursements and advances shall constitute additional indebtedness hereunder. Such additional indebtedness shall be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the Holders of particular Securities or coupons.

SECTION 7 07  *Officers' Certificate as Evidence.* Subject to the provisions of Section 7.01, whenever in the administration of the provisions of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action to be taken hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Trustee, be deemed to be conclusively proved and established by an Officers' Certificate delivered to the Trustee, and such certificate, in the absence of negligence or bad faith on the part

28

of the Trustee, shall be full warrant to the Trustee for any action taken, suffered or omitted by it under the provisions of this Indenture upon the faith thereof.

SECTION 7 08. *Conflicting Interest of Trustee.*

(a) If the Trustee has or shall acquire any conflicting interest, as defined in this Section, it shall, within ninety days after ascertaining that it has such conflicting interest, either eliminate such conflicting interest or resign in the manner and with the effect specified in Section 7.10

(b) In the event that the Trustee shall fail to comply with the provisions of subsection (a) of this Section, the Trustee shall, within ten days after the expiration of such ninety-day period, transmit notice of such failure to all Securityholders of the series affected by the conflicting interest as the names and addresses of such Holders appear on the Security Register

(c) For the purposes of this Section the Trustee shall be deemed to have a conflicting interest with respect to a particular series if

(!) the Trustee is trustee under this Indenture with respect to the Outstanding Securities of any other series or is trustee under another indenture under which any other securities, or certificates of interest or participation in any other securities, of the Corporation are outstanding, unless such other indenture is a collateral trust indenture under which the only collateral consists of Securities issued under this Indenture, provided that there shall be excluded from the operation of this paragraph, this Indenture with respect to any other series or any other indenture or indentures under which other securities, or certificates of interest or participation in other securities of the Corporation are outstanding if (i) this Indenture is, and, if applicable this Indenture and such other indenture or indentures are wholly unsecured, and such other indenture or indentures are hereafter qualified under the Trust Indenture Act of 1939, unless the Securities and Exchange Commission shall have found and declared by order pursuant to subsection (b) of Section 305 or subsection 307 of the Trust Indenture Act of 1939 that differences exist between the provisions of this Indenture with respect to such particular series and one or more other series in this Indenture and the provisions of such other indenture or indentures which are so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify the Trustee from acting as such under this Indenture with respect to such particular series and such other series or such other indenture or indentures, or (ii) the Corporation shall have sustained the burden of proving, on application to the Securities and Exchange Commission and after opportunity for hearing thereon, that trusteeship under this Indenture with respect to such particular series and such other series or under this Indenture and such other indenture or indentures is not so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify the Trustee from acting as such under this Indenture with respect to such particular series and such other series or under this Indenture and such other indenture or indentures,

(2) the Trustee or any of its directors or executive officers is an obligor upon the Securities of any series issued under this Indenture or an underwriter for the Corporation,

(3) the Trustee directly or indirectly controls or is directly or indirectly controlled by or is under direct or indirect common control with the Corporation or an underwriter for the Corporation;

(4) the Trustee or any of its directors or executive officers is a director, officer, partner, employee, appointee, or representative of the Corporation, or of an underwriter (other than the Trustee itself) for the Corporation who is currently engaged in the business of underwriting, except that (A) one individual may be a director or an executive officer or both of the Trustee and a director or an executive officer or both of the Corporation, but may not be at the same time an executive officer of both the Trustee and the Corporation; (B) if and so long as the number of directors of the Trustee in office is more than nine, one additional individual may be a director or an executive officer or both of the Trustee and a director of the Corporation, and (C) the Trustee may be designated by the Corporation or by any underwriter

29

for the Corporation to act in the capacity of transfer agent, registrar, custodian, paying agent, fiscal agent, escrow agent, or depositary, or in any other similar capacity or, subject to the provisions of paragraph (1) of this subsection (c), to act as trustee, whether under an indenture or otherwise,

(5) ten percent or more of the voting securities of the Trustee is beneficially owned either by the Corporation or by any director, partner or executive officer thereof, or twenty percent or more of such voting securities is beneficially owned, collectively, by any two or more of such persons; or ten percent or more of the voting securities of the Trustee is beneficially owned either by an underwriter for the Corporation or by any director, partner, or executive officer thereof, or is beneficially owned, collectively, by any two or more such persons;

(6) the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default, (A) five percent or more of the voting securities, or ten percent or more of any other class of security, of the Corporation, not including the Securities issued under this Indenture and securities issued under any other indenture under which the Trustee is also trustee, or (B) ten percent or more of any class of security of an underwriter for the Corporation,

(7) the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default, five percent or more of the voting securities of any person who, to the knowledge of the Trustee, owns ten percent or more of the voting securities of, or controls directly or indirectly or is under direct or indirect common control with, the Corporation;

(8) the Trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default, ten percent, or more of any class of security of any person who, to the knowledge of the Trustee, owns fifty percent or more of the voting securities of the Corporation, or

(9) the Trustee owns on May 15 in any calendar year, in the capacity of executor, administrator, testamentary or inter vivos trustee, guardian, committee or conservator, or in any other similar capacity, an aggregate of twenty-five percent or more of the voting securities or of any class of security, of any person, the beneficial ownership of a specified percentage of which would have constituted a conflicting interest under paragraph (6), (7), or (8) of this subsection (c) As to any such securities of which the Trustee acquired ownership through becoming executor, administrator, or testamentary trustee of an estate which included them, the provisions of the preceding sentence shall not apply, for a period of two years from the date of such acquisition to the extent that such securities included in such estate do not exceed twenty-five percent of such voting securities or twenty-five percent of any such class of security Promptly after May 15 in each calendar year, the Trustee shall make a check of its holdings of such securities in any of the above-mentioned capacities as of such May 15 If the Corporation fails to make payment in full of principal of or interest on any of the Securities when and as the same become due and payable and such failure continues for thirty days thereafter, the Trustee shall make a prompt check of its holdings of such securities in any of the above-mentioned capacities as of the date of the expiration of such thirty-day period, and after such date, notwithstanding the foregoing provisions of this paragraph (9), all such securities so held by the Trustee, with sole or joint control over such securities vested in it, shall, but only so long as such failure shall continue, be considered as though beneficially owned by the Trustee for the purposes of paragraphs (6), (7), and (8) of this subsection (c)

The specification of percentages in paragraphs (5) to (9), inclusive, of this subsection (c) shall not be construed as indicating that the ownership of such percentages of the securities of a person is or is not necessary or sufficient to constitute direct or indirect control for the purposes of paragraph (3) or (7) of this subsection (c)

For the purposes of paragraphs (6), (7), (8), and (9) of this subsection (c) only, (A) the terms "security" and "securities" shall include only such securities as are generally known as corporate securities, but shall not include any note or other evidence of indebtedness issued to evidence an obligation to repay moneys lent to a person by one or more banks, trust companies or banking firms, or any certificate of interest or participation in any such note or evidence of indebtedness, (B) an obligation shall be deemed to be in default

30

when a default in payment of principal shall have continued for thirty days or more and shall not have been cured, and (C) the Trustee shall not be deemed to be the owner or Holder of (i) any security which it holds as collateral security (as trustee or otherwise) for an obligation which is not in default as defined in clause (B) above, or (ii) any security which it holds as collateral security under this Indenture, irrespective of any default hereunder, or (iii) any security which it holds as agent for collection, or as custodian, escrow agent, or depositary, or in any similar representative capacity

Except as provided above, the word "security" or "securities" as used in this Indenture shall mean any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of or warrant or right to subscribe to or purchase, any of the foregoing.

(d) For the purposes of this Section:

(1) The term "underwriter" when used with reference to the Corporation shall mean every person who, within three years prior to the time as of which the determination is made, has purchased from the Corporation with a view to, or has offered or has sold for the Corporation in connection with, the distribution of any security of the Corporation outstanding at such time, or has participated or has had a direct or indirect participation in any such undertaking, or has participated or has had a participation in the direct or indirect underwriting of any such undertaking, but such terms shall not include a person whose interest was limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission

(2) The term "director" shall mean any director of a corporation or any individual performing similar functions with respect to any organization whether incorporated or unincorporated

(3) The term "person" shall mean an individual, a corporation, a partnership, an association, a joint-stock company, a trust, an unincorporated organization, or a government or political subdivision thereof. As used in this paragraph, the term "trust" shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security

(4) The term "voting security" shall mean any security presently entitling the owner or Holder thereof to vote in the direction or management of the affairs of a person or any security issued under or pursuant to any trust, agreement or arrangement whereby a trustee or trustees or agent or agents for the owner or Holder of such security are presently entitled to vote in the direction or management of the affairs of a person

(5) The term "Corporation" shall mean any obligor upon the Securities

(6) The term "executive officer" shall mean the chairman, vice chairman, president, every vice president, every trust officer, the cashier, the secretary, and the treasurer of a corporation, and any individual customarily performing similar functions with respect to any organization whether incorporated or unincorporated.

The percentages of voting securities and other securities specified in this Section shall be calculated in accordance with the following provisions.

(A) A specified percentage of the voting securities of the Trustee, the Corporation or any other person referred to in this Section (each of whom is referred to as a "person" in this paragraph) means such amount of the outstanding voting securities of such person as entitles the Holder or Holders thereof to cast such specified percentage of the aggregate votes which the Holders of all the outstanding voting securities of such person are entitled to cast in the direction or management of the affairs of such person.

(B) A specified percentage of a class of securities of a person means such percentage of the aggregate amount of securities of the class outstanding

(C) The term "amount", when used in regard to securities, means the principal amount if relating to evidences of indebtedness, the number of shares if relating to capital shares, and the number of units if relating to any other kind of security.

(D) The term "outstanding" means issued and not held by or for the account of the issuer The following securities shall not be deemed outstanding within the meaning of this definition·

(i) securities of an issuer held in a sinking fund relating to securities of the issuer of the same class,

(ii) securities of an issuer held in a sinking fund relating to another class of securities of the issuer, if the obligation evidenced by such other class of securities is not in default as to principal or interest or otherwise,

(iii) securities pledged by the issuer thereof as security for an obligation of the issuer not in default as to principal or interest or otherwise, and

(iv) securities held in escrow if placed in escrow by the issuer thereof;

provided, however, that any voting securities of an issuer shall be deemed outstanding if any person other than the issuer is entitled to exercise the voting rights thereof

(E) A security shall be deemed to be of the same class as another security if both securities confer upon the Holder or Holders thereof substantially the same rights and privileges, provided, however, that in the case of secured evidences of indebtedness, all of which are issued under a single indenture, differences in the interest rates or maturity dates of various series thereof shall not be deemed sufficient to constitute such series different classes and provided, further, that, in the case of unsecured evidences of indebtedness, differences in the interest rates or maturity dates thereof shall not be deemed sufficient to constitute them securities of different classes, whether or not they are issued under a single indenture

SECTION 7.09. *Eligibility of Trustee* There shall at all times be a trustee hereunder which shall be a corporation organized and doing business under the laws of the United States or of any State or Territory thereof or of the District of Columbia, which (a) is authorized under such laws to exercise corporate trust powers, and (b) is subject to supervision or examination by Federal, State, Territorial or District of Columbia authority and (c) shall have at all times a combined capital and surplus of not less than twenty-five million dollars  If such corporation publishes reports of condition at least annually, pursuant to law, or to the *requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation at any time shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in* the manner and with the effect specified in Section 7 10

SECTION 7.10 *Resignation or Removal of Trustee* (a) The Trustee, or any trustee or trustees hereafter appointed, may, upon sixty days written notice to the Corporation, at any time resign with respect to one or more or all series by giving written notice of resignation to the Corporation (i) *if any Unregistered Securities of a series affected are then outstanding, by giving notice of such resignation to the Holders thereof, by* publication at least once in an Authorized Newspaper in London (and, if required by Section 4 04, at least once in an Authorized Newspaper in Luxembourg), (ii) *if any Unregistered Securities of a series affected are then outstanding, by mailing notice of such resignation to the Holders thereof who have filed their names* and addresses with the Trustee as described in Section 5 04 at such addresses as were so furnished to the Trustee and (iii) by mailing notice of such resignation to the Holders of then outstanding Registered Securities *of each series affected at their addresses as they shall appear on the Security Register. Upon receiving such* notice of resignation the Corporation shall promptly appoint a successor trustee with respect to the applicable

32

series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee. If no successor trustee shall have been so appointed and have accepted appointment within thirty days after the mailing of such notice of resignation to the Securityholders, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee, or any Securityholder who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, subject to the provisions of Section 6 08, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

(b) In case at any time any of the following shall occur (i) the Trustee shall fail to comply with the provisions of subsection (a) of Section 7.08 with respect to any series of Securities after written request therefor by the Corporation or by any Securityholder who has been a bona fide Holder of a Security or Securities of such series for at least six months, or

(2) the Trustee shall cease to be eligible in accordance with the provision of Section 7 09 with respect to any series of Securities and shall fail to resign after written request therefor by the Corporation or by any such Securityholder, or

(3) the Trustee shall become incapable of acting with respect to any series of Securities, or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then, in any such case, the Corporation may remove the Trustee with respect to the applicable series of Securities and appoint a successor trustee with respect to such series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the Trustee so removed and one copy to the successor trustee, or, subject to the provisions of Section 6 08, any Securityholder of such series who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to such series Such court may thereupon, after such noticed, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee

(c) The Holders of a majority in aggregate principal amount of the Securities of all series (voting as one class) at the time outstanding may at any time remove the Trustee with respect to Securities of all series and appoint a successor trustee with respect to the Securities of all series

(d) Any resignation or removal of the Trustee and any appointment of a successor trustee pursuant to any of the provisions of this Section shall become effective upon acceptance of appointment by the successor trustee as provided in Section 7.11.

SECTION 7 11 *Acceptance by Successor Trustee* Any successor trustee appointed as provided in Section 7 10 shall execute, acknowledge and deliver to the Corporation and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee with respect to all or any applicable series shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, duties and obligations with respect to such series of its predecessor hereunder, with like effect as if originally named as trustee herein; but, nevertheless, on the written request of the Corporation or of the successor trustee, the trustee ceasing to act shall, upon payment of any amounts then due it pursuant to the provisions of Section 7 06, execute and deliver an instrument transferring to such successor trustee all the rights and powers of the trustee so ceasing to act Upon request of any such successor trustee, the Corporation shall execute any and all instruments in writing in order more fully and certainly to vest in and confirm to such successor trustee all such rights and powers. Any trustee ceasing to act shall, nevertheless, retain a lien upon all property or funds held or collected by such trustee to secure any amounts then due it pursuant to the provisions of Section 7 06.

In case of the appointment hereunder of a successor trustee with respect to the Securities of one or more (but not all) series, the Corporation, the predecessor Trustee and each successor trustee with respect to the Securities of any applicable series shall execute and deliver an indenture supplemental hereto which shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the predecessor Trustee with respect to the Securities of any series as to which the predecessor Trustee is not retiring shall continue to be vested in the predecessor Trustee, and shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such trustees co-trustees of the same trust and that each such trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such trustee.

No successor trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor trustee shall be qualified under the provisions of Section 7 08 and eligible under the provisions of Section 7.09.

Upon acceptance of appointment by a successor trustee as provided in this Section, the Corporation shall give notice of the succession of such trustee hereunder (a) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof, by publication of such notice at least once in an Authorized Newspaper in the Borough of Manhattan, The City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4 04, at least once in an Authorized Newspaper in Luxembourg), (b) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee pursuant to Section 5.04, by mailing such notice to such Holders at such addresses as were so furnished to the Trustee (and the Trustee shall make such information available to the Corporation for such purpose) and (c) to the Holders of Registered Securities of each series affected, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register If the Corporation fails to mail such notice in the prescribed manner within ten days after the acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be so given at the expense of the Corporation

SECTION 7 12 *Successor by Merger, etc.* Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such corporation shall be qualified under the provisions of Section 7 08 and eligible under the provisions of Section 7 09, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding

SECTION 7.13. *Limitations on Rights of Trustee as Creditor* (a) Subject to the provisions of subsection (b) of this Section, if the Trustee shall be or shall become a creditor, directly or indirectly, secured or unsecured, of the Corporation or of any other obligor on the Securities within four months prior to a default, as defined in subsection (c) of this Section, or subsequent to such a default, then, unless and until such default shall be cured, the Trustee shall set apart and hold in a special account for the benefit of the Trustee individually, the Holders of the Securities of any series for which it is acting as trustee, the Holders of any coupons appertaining to such Securities, and the holders of other indenture securities (as defined in subsection (c) of this Section).

(1) an amount equal to any and all reductions in the amount due and owing upon any claim as such creditor in respect of principal or interest, effected after the beginning of such four months' period and valid as against the Corporation and its other creditors, except any such reduction resulting from the receipt or disposition of any property described in paragraph (2) of this subsection or from the exercise of any right of set-off which the Trustee could have exercised if a petition in bankruptcy had been filed by or against the Corporation upon the date of such default; and

34

(2) all property received by the Trustee in respect of any claim as such creditor, either as security therefor, or in satisfaction or composition thereof, or otherwise, after the beginning of such four months' period, or an amount equal to the proceeds of any such property, if disposed of, subject, however, to the rights, if any, of the Corporation and its other creditors in such property or such proceeds Nothing herein contained, however, shall affect the right of the Trustee:

(A) to retain for its own account (i) payments made on account of any such claim by any person *(other than the Corporation)* who is liable thereon, and *(ii) the proceeds of the bona fide sale of any* such claim by the Trustee to a third person, and (iii) distributions made in cash, securities, or other property in respect of claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law;

(B) to realize, for its own account, upon any property held by it as security for any such claim, if such property was so held prior to the beginning of such four months' period,

(C) to realize, for its own account, but only to the extent of the claim hereinafter mentioned, upon any property held by it as security for any such claim, if such claim was created after the beginning of such four months' period and such property was received as security therefor simultaneously with the creation thereof, and if the Trustee shall sustain the burden of proving that at the time such property was so received the Trustee had no reasonable cause to believe that a default as defined in subsection (c) of this Section would occur within four months  or

(D) to receive payment on any claim referred to in paragraph (b) or (c), against the release of any property held as security for such claim as provided in such paragraph (b) or (c), as the case may be, to the extent of the fair value of such property

For the purposes of paragraphs (B), (C) and (D), property substituted after the beginning of such four months' period for property held as security at the time of such substitution shall, to the extent of the fair value of the property released, have the same status as the property released, and, to the extent that any claim referred to in any of such paragraphs is created in renewal of or in substitution for or for the purpose of repaying or refunding any preexisting claim of the Trustee as such creditor, such claim shall have the same status as such preexisting claim

If the Trustee shall be required to account, the funds and property held in such special account and the proceeds thereof shall be apportioned between the Trustee, the Securityholders and the holders of other indenture securities in such manner that the Trustee, the Securityholders and the holders of other indenture securities realize, as a result of payments from such special account and payments of dividends on claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, the same percentage of their respective claims, figured before crediting to the claim of the Trustee anything on account of the receipt by it from the Corporation of the funds and property in such special account and before crediting to the respective claims of the Trustee, the Securityholders and the holders of the other indenture securities, dividends on claims filed against the Corporation in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, but after crediting thereon receipts on account of the indebtedness represented by their respective claims from all sources other than from such dividends and from the funds and property so held in such special account. As used in this paragraph, with respect to any claim, the term "dividends" shall include any distribution with respect to such claim, in bankruptcy or receivership or in proceedings for reorganization pursuant to Title 11 of the United States Code or applicable State law, whether such distribution is made in cash, securities, or other property, but shall not include any such distribution with respect to the secured portion, if any, of such claim  The court in which such bankruptcy, receivership, or proceeding for reorganization is pending shall have jurisdiction (i) to apportion between the Trustee, the Securityholders and the holders of other indenture securities, in accordance with the provisions of this paragraph, the funds and property held in such special account and the proceeds thereof, or (ii) in lieu

35

of such apportionment, in whole or in part, to give to the provisions of this paragraph due consideration in determining the fairness of the distributions to be made to the Trustee, the Securityholders and the holders of other indenture securities with respect to their respective claims, in which event it shall not be necessary to liquidate or to appraise the value of any securities or other property held in such special account or as security for any such claim, or to make a specific allocation of such distributions as between the secured and unsecured portions of such claims, or otherwise to apply the provisions of this paragraph as a mathematical formula

Any Trustee who has resigned or been removed after the beginning of such four months' period shall be subject to the provisions of this subsection (a) as though such resignation or removal had not occurred. If any Trustee has resigned or been removed prior to the beginning of such four months' period it shall be subject to the provisions of this subsection (a) if and only if the following conditions exist

(i) the receipt of property or reduction of claim would have given rise to the obligation to account, if such Trustee had continued as trustee, occurred after the beginning of such four months' period; and

(ii) the receipt of property or reduction of claim occurred within four months after such resignation or removal.

(b) There shall be excluded from the operation of subsection (a) of this Section a creditor relationship arising from

(1) the ownership or acquisition of securities issued under any indenture, or any security or securities having a maturity of one year or more at the time of acquisition by the Trustee,

(2) advances authorized by a receivership or bankruptcy court of competent jurisdiction or by this Indenture, for the purpose of preserving any property which shall at any time be subject to the lien of this Indenture or of discharging tax liens or other prior liens or encumbrances thereon, if notice of such advance and of circumstances surrounding the making thereof is given to the Securityholders at the time and in the manner provided in this Indenture,

(3) disbursements made in the ordinary course of business in the capacity of trustee under an indenture, transfer agent, registrar, custodian, paying agent, fiscal agent or depositary, or other similar capacity,

(4) an indebtedness created as a result of services rendered or premises rented; or an indebtedness created as a result of goods or securities sold in a cash transaction as defined in subsection (c) of this Section,

(5) the ownership of stock or of other securities of a corporation organized under the provisions of Section 25(a) of the Federal Reserve Act, as amended, which is directly or indirectly a creditor of the Corporation, or

(6) the acquisition, ownership, acceptance or negotiation of any drafts, bills of exchange, acceptances or obligations which fall within the classification of self-liquidating paper as defined in subsection (c) of this Section (C).

As used in this Section

(1) The term "default" shall mean any failure to make payment in full of the principal of or interest upon any of the Securities or upon the other indenture securities when and as such principal or interest becomes due and payable

(2) The term "other indenture securities" shall mean securities upon which the Corporation is an obligor (as defined in the Trust Indenture Act of 1939) outstanding under any other indenture (A) under which the Trustee is also trustee, (B) which contains provisions substantially similar to the provisions of subsection (a) of this Section, and (C) under which a default exists at the time of the apportionment of the funds and property held in said special account

36

(3) The term "cash transaction" shall mean any transaction in which full payment for goods or securities sold is made within seven days after delivery of the goods or securities in currency or in checks or other orders drawn upon banks or bankers and payable upon demand.

(4) The term "self-liquidating paper" shall mean any draft, bill of exchange, acceptance or obligation which is made, drawn, negotiated or incurred by the Corporation for the purposes of financing the purchase, processing, manufacture, shipment, storage or sale of goods, wares or merchandise and which is secured by documents evidencing title to, possession of, or a lien upon, the goods, wares or merchandise or the receivables or proceeds arising from the sale of the goods, wares or merchandise previously constituting the security, provided the security is received by the Trustee simultaneously with the creation of the creditor relationship with the Corporation arising from the making, drawing, negotiating or incurring of the draft, bill of exchange, acceptance or obligation.

(5) The term "Corporation" shall mean any obligor upon the Securities.

## ARTICLE EIGHT.

### CONCERNING THE SECURITYHOLDERS

SECTION 8 01  *Action by Securityholders*  Whenever in this Indenture it is provided that the Holders of a specified percentage in aggregate principal amount of the Securities of any or all series may take any action (including the making of any demand or request, the giving of any notice, consent or waiver or the taking of any other action), the fact that at the time of taking any such action the Holders of such specified percentage have joined therein may be evidenced (a) by any instrument or any number of instruments of similar tenor executed by Securityholders in person or by agent or proxy appointed in writing, or (b) by the record of the Holders of Securities voting in favor thereof at any meeting of Securityholders duly called and held in accordance with the provisions of Article Nine, or (c) by a combination of such instrument or instruments and any such record of such a meeting of Securityholders

In determining whether the Holders of a specified percentage in aggregate principal amount of the Securities have taken any action (including the making of any demand or request, the waiving of any notice, consent or waiver or the taking of any other action), the principal amount of any Original Issue Discount Security that may be counted in making such determination and that shall be deemed to be outstanding for such purposes shall be equal to the amount of the principal thereof that could be declared to be due and payable upon an Event of Default pursuant to the terms of such Original Issue Discount Security at the time the taking of such action is evidenced to the Trustee

SECTION 8 02.  *Proof of Execution by Securityholders.*  Subject to the provisions of Sections 7.01, 7 02 and 9 05, proof of the execution of any instrument by a Securityholder or its agent or proxy shall be sufficient if made in the following manner

(a) In the case of Holders of Unregistered Securities, the fact and date of the execution by any such person of any instrument may be proved by the certificate of any notary public or other officer of any jurisdiction authorized to take acknowledgments of deeds or administer oaths that the person executing such instruments acknowledged to him the execution thereof or by an affidavit of a witness to such execution sworn to before any such notary or other such officer. Where such execution is by or on behalf of any legal entity other than an individual, such certificate or affidavit shall also constitute sufficient proof of the authority of the person executing the same  The fact of the holding by any Holder of a Security of any series, and the identifying number of such Security and the date of his holding the same, may be proved by the production of such Security or by a certificate executed by any trust company, bank, banker or recognized securities dealer wherever situated satisfactory to the Trustee, if such certificate shall be deemed by the Trustee to be satisfactory. Each such certificate shall be dated and shall state that on the date thereof a Security of such series bearing a specified identifying number was deposited with or exhibited to such trust company, bank, banker or recognized securities dealer by the person named in such certificate. Any such certificate may be issued in respect of one or more Securities

of one or more series specified therein  The holding by the person named in any such certificate of any Securities of any series specified therein shall be presumed to continue for a period of one year from the date of such certificate unless at the time of any determination of such holding (1) another certificate bearing a later date issued in respect of the same Securities shall be produced, or (2) the Security of such series specified in such certificate shall be produced by some other person, or (3) the Security of such series specified in such certificates shall have ceased to be outstanding. Subject to Sections 7 01, 7.02 and 9 05, the fact and date of the execution of any such instrument and the amount and numbers of Securities of any series held by the person so executing such instrument and the amount and numbers of any Security or Securities for such series may also be proven in accordance with such reasonable rules and regulations as may be prescribed by the Trustee for such series or in any other manner which the Trustee for such series may deem sufficient.

(b) In the case of Registered Securities, the ownership of such Securities shall be proved by the Security Register or by a certificate of the Security Registrar.

SECTION 8.03  *Who Are Deemed Absolute Owners.* The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may treat the Holder of any Unregistered Security and the Holder of any coupon as the absolute owner of such Unregistered Security or coupon (whether or not such Unregistered Security or coupon shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary  The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may, subject to Section 2 04 hereof, treat the person in whose name a Registered Security shall be registered upon the Security Register as the absolute owner of such Registered Security (whether or not such Registered Security shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary

SECTION 8 04  *Corporation-Owned Securities Disregarded*  In determining whether the Holders of the required aggregate principal amount of Securities have concurred in any direction, consent or waiver under this Indenture, Securities which are owned by the Corporation or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation, shall be disregarded and deemed not to be outstanding for the purpose of any such determination, except that for the purpose of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver only Securities which the Trustee knows are so owned shall be disregarded  Securities so owned which have been pledged in good faith may be regarded as outstanding for the purposes of this Section if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Securities and that the pledgee is not a person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation. In the case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

SECTION 8.05  *Revocation of Consents; Future Securityholders Bound*  At any time prior to the taking of any action by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action, any Holder of a Security the identifying number of which is shown by the evidence to be included in the Securities the Holders of which have consented to such action may, by filing written notice with the Trustee at its office and upon proof of holding as provided in Section 8 02, revoke such action so far as concerns such Security. Except as aforesaid any such action taken by the Holder of any Security shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Security and of any Security issued in exchange or substitution therefor irrespective of whether or not any notation in regard thereto is made upon such Security  Any action taken by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action shall be conclusively binding upon the Corporation, the Trustee and the Holders of all the Securities of each series intended to be affected thereby.

SECTION 8.06. *Securities in a Foreign Currency* Unless otherwise specified in an Officers' Certificate delivered pursuant to Section 2 01 of this Indenture with respect to a particular series of Securities, on any day when for purposes of this Indenture any action may be taken by the Holders of a specified percentage in aggregate principal amount of two or more series of Outstanding Securities and, at such time, there are Outstanding Securities of at least one such series which are denominated in a coin or currency other than that of at least one other such series, then the principal amount of Securities of each such series (other than any such series denominated in U.S. Dollars) which shall be deemed to be outstanding for the purpose of taking such action shall be that amount of U S. Dollars that could be obtained for such amount at the Market Exchange Rate For purposes of this Section 8 06, Market Exchange Rate shall mean the noon U S. Dollar buying rate for that currency for cable transfers quoted in The City of New York on such day as certified for customs purposes by the Federal Reserve Bank of New York; provided, however, in the case of ECUs, Market Exchange Rate shall mean the rate of exchange determined by the Commission of the European Communities (or any successor thereto) as published in the Official Journal of the European Communities such publication or any successor publication, the "Journal"). If such Market Exchange Rate is not available for any reason with respect to such currency, the Trustee shall use, in its sole discretion and without liability on its part, such quotation of the Federal Reserve Bank of New York, or in the case of ECUs, the rate of exchange as published in the Journal, as of the most recent available date, or in the case of ECUs, rates of exchange from one or more major banks in the City of New York or in the country of issue of the currency in question, which for purposes of the ECU shall be Brussels, Belgium, or such other quotations or, in the case of ECUs, rate of exchange as the Trustee shall deem appropriate The provisions of this paragraph shall apply in determining the equivalent number of votes which each Securityholder or proxy shall be entitled to pursuant to Section 9 05 in respect of Securities of a series denominated in a currency other than U S Dollars

All decisions and determinations of the Trustee regarding the Market Exchange Rate shall be in its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Corporation and all Holders.

## ARTICLE NINE.

### SECURITYHOLDERS' MEETINGS

SECTION 9 01. *Purposes of Meetings.* A meeting of Securityholders of any or all series may be called at any time and from time to time pursuant to the provisions of this Article for any of the following purposes

(1) to give any notice to the Corporation or to the Trustee, or to give any directions to the Trustee, or to waive any default hereunder and its consequences, or to take any other action authorized to be taken by Securityholders pursuant to any of the provisions of Article Six;

(2) to remove the Trustee and appoint a successor trustee pursuant to the provisions of Article Seven,

(3) to consent to the execution of an indenture or indentures supplemental hereto pursuant to the provisions of Section 10 02, or

(4) to take any other action authorized to be taken by or on behalf of the Holders of any specified aggregate principal amount of the Securities of any or all series, as the case may be, under any other provision of this Indenture or under applicable law

SECTION 9.02 *Call of Meetings by Trustee* The Trustee may at any time call a meeting of Holders of Securities of any or all series to take any action specified in Section 9 01, to be held at such time and at such place in the Borough of Manhattan, the City of New York, or in London, as the Trustee shall determine. Notice of every meeting of the Holders of Securities of any or all series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given (i) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then outstanding, to all Holders thereof, by publication at least twice in an Authorized Newspaper in the

Borough of Manhattan, The City of New York and at least twice in an Authorized Newspaper in London (and, if required by Section 4.04, at least twice in an Authorized Newspaper in Luxembourg) prior to the date fixed for the meeting, the first publication, in each case, to be not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting and the last publication to be not more than five days prior to the date fixed for the meeting, (ii) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then Outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5 04, by mailing such notice to such Holders at such addresses, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting and (iii) to all Holders of then Outstanding Registered Securities of each series that may be affected by the action proposed to be taken at such meeting, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting. Failure of any Holder or Holders to receive such notice or any defect therein shall in no case affect the validity of any action taken at such meeting. Any meeting of Holders of Securities of all or any series shall be valid without notice if the Holders of all such Securities Outstanding, the Corporation and the Trustee are present in person or by proxy or shall have waived notice thereof before or after the meeting. The Trustee may fix, in advance, a date as the record date for determining the holders entitled to notice of or to vote at any such meeting at not less than twenty or more than one hundred eighty days prior to the date fixed for such meeting

SECTION 9.03. *Call of Meetings by Corporation or Securityholders* In case at any time the Corporation, pursuant to a Board Resolution, or the Holders of at least ten percent in aggregate principal amount of the Securities of any or all series, as the case may be, then outstanding, shall have requested the Trustee to call a meeting of Securityholders of any or all series to take any action authorized in Section 9 01, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have mailed or published as provided in Section 9 02, the notice of such meeting within thirty days after receipt of such request, then the Corporation or the Holders of such Securities in the amount above specified may determine the time and the place in said Borough of Manhattan or London for such meeting and may call such meeting to take any action authorized in Section 9 01, by mailing notice thereof as provided in Section 9 02.

SECTION 9.04 *Qualification for Voting* To be entitled to vote at any meeting of Securityholders a person shall be a Holder of one or more Securities of a series with respect to which a meeting is being held or a person appointed by an instrument in writing as proxy by such a Holder. The only persons who shall be entitled to be present or to speak at any meeting of the Securityholders shall be the persons entitled to vote at such meeting and their counsel and any representatives of the Trustee and its counsel and any representatives of the Corporation and its counsel

SECTION 9 05. *Regulations.* Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Securityholders, in regard to proof of the holding of Securities and of the appointment of proxies, and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall think fit.

The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Corporation or by Securityholders as provided in Section 9.03, in which case the Corporation or the Securityholder calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Holders of a majority in principal amount of the Securities represented at the meeting and entitled to vote.

Subject to the provisions of Sections 8 01 and 8 04, at any meeting each Securityholder or proxy shall be entitled to one vote for each $1,000 principal amount of Securities held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any Security challenged as not

40

Outstanding and ruled by the chairman of the meeting not to be Outstanding The chairman of the meeting shall have no right to vote except as a Securityholder or proxy. Any meeting of Securityholders duly called pursuant to the provisions of Section 9 02 or 9.03 may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

SECTION 9.06 *Voting* The vote upon any resolution submitted to any meeting of Securityholders shall be by written ballot on which shall be subscribed the signatures of the Securityholders or proxies and on which shall be inscribed the identifying number or numbers or to which shall be attached a list of identifying numbers of the Securities held or represented by them. The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified reports in duplicate of all votes cast at the meeting. A record in duplicate of the proceedings of each meeting of Securityholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavit by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was mailed as provided in Section 9 02 The record shall be signed and verified by the permanent chairman and secretary of the meeting and one of the duplicates shall be delivered to the Corporation and the other to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting

Any record so signed and verified shall be conclusive evidence of the matters therein stated.

## ARTICLE TEN

### SUPPLEMENTAL INDENTURES

SECTION 10 01. *Supplemental Indentures without Consent of Securityholders.* The Corporation, when authorized by Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act of 1939 as in force at the date of the execution thereof) for one or more of the following purposes

(a) to evidence the succession of another corporation to the Corporation, or successive successions, and the assumption by any successor corporation of the covenants, agreements and obligations of the Corporation pursuant to Article Eleven hereof;

(b) to add to the covenants of the Corporation such further covenants, restrictions, conditions or provisions as its Board of Directors and the Trustee shall consider to be for the protection of the Holders of Securities of any or all series, or the coupons appertaining to such Securities, and to make the occurrence, or the occurrence and continuance, of a default in any of such additional covenants, restrictions, conditions or provisions a default or an Event of Default with respect to any or all series permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth, with such period of grace, if any, and subject to such conditions as such supplemental indenture may provide,

(c) to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the issuance of Securities of any series in bearer form, registrable or not registrable as to principal, and with or without interest coupons, and to provide for exchangeability of such Securities with Securities issued hereunder in fully registered form and to make all appropriate changes for such purpose, and to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the issuance of uncertificated Securities of any series;

(d) to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee, or to make such other provisions in regard to matters or questions arising under this

41

Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any coupons appertaining to such Securities,

(e) to evidence and provide for the acceptance and appointment hereunder by a successor trustee with respect to the Securities of one or more series and to add or change any provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, pursuant to Section 7.11, and

(f) to establish the form or terms of Securities of any series as permitted by Sections 2 03 and 2.01

The Trustee is hereby authorized to join with the Corporation in the execution of any such supplemental indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, assignment, mortgage or pledge of any property thereunder, but the Trustee shall not be obligated to enter into any such supplemental indenture which adversely affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section may be executed by the Corporation and the Trustee without the consent of the Holders of any of the Securities at the time Outstanding, notwithstanding any of the provisions of Section 10 02.

SECTION 10.02 *Supplemental Indentures with Consent of Securityholders* With the consent (evidenced as provided in Section 8 01) of the Holders of not less than sixty-six and two-thirds percent in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any coupons appertaining to such Securities, provided, however, that no such supplemental indenture shall (i) extend the fixed maturity of any Securities, or reduce the principal amount thereof or premium, if any, or reduce the rate or extend the time of payment of any interest or Additional Amounts thereon or reduce the amount due and payable upon acceleration of the maturity thereof or the amount provable in bankruptcy, or make the principal of or interest, premium or Additional Amounts on any Security payable in any coin or currency other than that provided in such Security, (ii) impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof (or, in the case of redemption, on or after the redemption date therefor), or (iii) reduce the aforesaid percentage of Securities, the consent of the Holders of which is required for any such supplemental indenture, or the percentage required for the consent of the Holders pursuant to Section 6.01 to waive defaults, without the consent of the Holder of each Security so affected.

Upon the request of the Corporation, accompanied by a copy of a Board Resolution certified by the Secretary or an Assistant Secretary of the Corporation authorizing the execution of any such supplemental indenture, and upon the filing with the Trustee of evidence of the consent of Securityholders as aforesaid, the Trustee shall join with the Corporation in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture

It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution and delivery by the Corporation and the Trustee of any supplemental indenture pursuant to the provisions of this Section, the Trustee shall give notice of such supplemental

42

indenture (i) to the Holders of then outstanding Registered Securities of each series affected thereby, by mailing a notice thereof by first-class mail to such Holders at their addresses as they shall appear on the Security Register, (ii) if any Unregistered Securities of a series affected thereby are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee as described in Section 5 04, by mailing a notice thereof by first-class mail to such Holders at such addresses as were so furnished to the Trustee and (iii) if any Unregistered Securities of a series affected thereby are then outstanding, to all Holders thereof, if by publication of a notice thereof at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), and in each case such notice shall set forth in general terms the substance of such supplemental indenture. Any failure of the Corporation to mail or publish such notice, or any defect therein, shall not, however in any way impair or affect the validity of any such supplemental indenture

SECTION 10 03  *Compliance with Trust Indenture Act, Effect of Supplemental Indentures.*  Any supplemental indenture executed pursuant to the provisions of this Article Ten shall comply with the Trust Indenture Act of 1939, as then in effect Upon the execution of any supplemental indenture pursuant to the provisions of this Article Ten, this Indenture shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Corporation and the Holders of Securities shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes

The Trustee, subject to the provisions of Sections 7.01 and 7 02, may receive an Opinion of Counsel as conclusive evidence that any such supplemental indenture complies with the provisions of this Article Ten

SECTION 10 04  *Notation on Securities*  Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to the provision of this Article Ten may bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. New Securities of any series so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Corporation, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Corporation, authenticated by the Trustee and delivered, without charge to the Securityholders, in exchange for the Securities of such series then outstanding.

## ARTICLE ELEVEN

### CONSOLIDATION, MERGER, SALE OR CONVEYANCE

SECTION 11 01  *Corporation May Consolidate, etc , on Certain Terms*  The Corporation covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, unless (i) either the Corporation shall be the continuing corporation, or the successor corporation (if other than the Corporation) shall be a corporation organized and existing under the laws of the United States of America or a state thereof and such corporation shall expressly assume the due and punctual payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on all the Securities and any coupons, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Corporation by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Corporation or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition

SECTION 11.02  *Successor Corporation Substituted*  In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Corporation, with the same effect as if it had been named herein as the

43

party of the first part Such successor corporation thereupon may cause to be signed, and may issue either in its own name or in the name of General Motors Corporation, any or all of the Securities, and any coupons appertaining thereto, issuable hereunder which theretofore shall not have been signed by the Corporation and delivered to the Trustee; and, upon the order of such successor corporation, instead of the Corporation, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or coupons which previously shall have been signed and delivered by the officers of the Corporation to the Trustee for authentication, and any Securities or coupons which such successor corporation thereafter shall cause to be signed and delivered to the Trustee for that purpose All of the Securities, and any coupons appertaining thereto, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or coupons theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities, and any coupons appertaining thereto, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities and coupons thereafter to be issued as may be appropriate

SECTION 11.03 *Opinion of Counsel to be Given Trustee.* The Trustee, subject to the provisions of Sections 7 01 and 7 02, may receive an Opinion of Counsel as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Article Eleven

## ARTICLE TWELVE

### SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS

SECTION 12 01 *Discharge of Indenture* If at any time (a) the Corporation shall have delivered to the Trustee for cancellation all Securities of any series theretofore authenticated (other than any Securities of such series and coupons appertaining thereto which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.06), or (b) all such Securities of such series and any coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation shall have become due and payable, or are by their terms to become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and the Corporation shall deposit or cause to be deposited with the Trustee as trust funds the entire amount (other than moneys repaid by the Trustee or any paying agent to the Corporation in accordance with Section 12 04) sufficient to pay at maturity or upon redemption all Securities of such series and all coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation, including principal (and premium, if any), interest, if any, and Additional Amounts, if any, due or to become due to such date of maturity or date fixed for redemption, as the case may be, and if in either case the Corporation shall also pay or cause to be paid all other sums payable hereunder by the Corporation with respect to such series, then this Indenture shall cease to be of further effect with respect to the Securities of such series or any coupons appertaining to such Securities, and the Trustee, on demand of and at the cost and expense of the Corporation and subject to Section 14 04, shall execute proper instruments acknowledging satisfaction of and discharging this Indenture with respect to the Securities of such series and all coupons appertaining to such Securities. The Corporation agrees to reimburse the Trustee for any costs or expenses thereafter reasonably and properly incurred by the Trustee in connection with this Indenture or the Securities of such series or any coupons appertaining to such Securities

SECTION 12 02 *Satisfaction, Discharge and Defeasance of Securities of any Series.* If pursuant to Section 2.01 provision is made for the defeasance of Securities of a series, then the provisions of this Section 12 02 shall be applicable except as otherwise specified as contemplated by Section 2 01 for Securities of such series. At the Corporation's option, either (a) the Corporation shall be deemed to have paid and discharged the entire indebtedness on all the Outstanding Securities of any such series and the Trustee, at the expense of the Corporation, shall execute proper instruments acknowledging satisfaction and discharge of such indebtedness,

44

or (b) the Corporation shall cease to be under any obligation to comply with any term, provision, condition or covenant specified as contemplated by Section 2.01, when

(1) either

(A) with respect to all Outstanding Securities of such series,

(i) the Corporation has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount sufficient to pay and discharge the entire indebtedness of all Outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be, or

(ii) the Corporation has deposited or caused to be deposited with the Trustee as obligations in trust for the purpose such amount of direct noncallable obligations of, or noncallable obligations the payment of principal of and interest on which is fully guaranteed by, the United States of America, or to the payment of which obligations or guarantees the full faith and credit of the United States of America is pledged, maturing as to principal and interest in such amounts and at such times as will, together with the income to accrue thereon (but without reinvesting any proceeds thereof), be sufficient to pay and discharge the entire indebtedness on all Outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be, or

(B) the Corporation has properly fulfilled such other terms and conditions to the satisfaction and discharge as is specified, as contemplated by Section 2.01, as applicable to the Securities of such series, and

(2) the Corporation has paid or caused to be paid all other sums payable with respect to the Outstanding Securities of such series, and

(3) the Corporation has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of the entire indebtedness on all Outstanding Securities of any such series have been complied with

Any deposits with the Trustee referred to in Section 12.02(1)(A) above shall be irrevocable and shall be made under the terms of an escrow trust agreement in form and substance satisfactory to the Trustee. If any Outstanding Securities of such series are to be redeemed prior to their stated maturity, whether pursuant to any optional redemption provisions or in accordance with any mandatory sinking fund requirement or otherwise, the applicable escrow trust agreement shall provide therefor and the Corporation shall make such arrangements as are satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Corporation

SECTION 12.03. *Deposited Moneys to be Held in Trust by Trustee*  All moneys deposited with the Trustee pursuant to Section 12.01 or 12.02 shall be held in trust and applied by it to the payment, either directly or through any paying agent (including the Corporation acting as its own paying agent), to the Holders of the particular Securities and of any coupons appertaining to such Securities for the payment or redemption of which such moneys have been deposited with the Trustee, of all sums due and to become due thereon for principal (and premium, if any), interest, if any, and Additional Amounts, if any

SECTION 12.04. *Paying Agent to Repay Moneys Held*  In connection with the satisfaction and discharge of this Indenture with respect to Securities of any series all moneys with respect to such Securities then held by any paying agent under the provisions of this Indenture shall, upon demand of the Corporation, be repaid to it or paid to the Trustee and thereupon such paying agent shall be released from all further liability with respect to such moneys.

SECTION 12 05  *Return of Unclaimed Moneys.* Any moneys deposited with or paid to the Trustee or any paying agent for the payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on any Security and not applied but remaining unclaimed for three years after the date upon which such principal (and premium, if any), interest, if any, and Additional Amounts, if any, shall have become due and payable, shall be repaid to the Corporation by the Trustee or such paying agent on demand, and the Holder of such Security or any coupon appertaining to such Security shall thereafter look only to the Corporation for any payment which such Holder may be entitled to collect and all liability of the Trustee or any paying agent with respect to such moneys shall thereupon cease, provided, however, that the Trustee or such paying agent, before being required to make any such repayment with respect to moneys deposited with it for any payment in respect of Unregistered Securities of any series, may at the expense of the Corporation cause to be published once, in an Authorized Newspaper in the Borough of Manhattan, The City of New York and once in an Authorized Newspaper in London (and, if required by Section 4.04, once in an Authorized Newspaper in Luxembourg), notice that such moneys remain and that, after a date specified therein, which shall not be less than thirty days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Corporation

## ARTICLE THIRTEEN

### IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS

SECTION 13.01  *Indenture and Securities Solely Corporate Obligations*  No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any past, present or future incorporator, stockholder, officer or director, as such, of the Corporation or of any successor corporation, either directly or through the Corporation or any successor corporation, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue of the Securities and coupons

## ARTICLE FOURTEEN

### MISCELLANEOUS PROVISIONS

SECTION 14 01  *Benefits of Indenture Restricted to Parties and Securityholders*  Nothing in this Indenture or in the Securities or coupons, expressed or implied, shall give or be construed to give to any person, firm or corporation, other than the parties hereto and their successors and the Holders of the Securities or coupons, any legal or equitable right, remedy or claim under this Indenture or under any covenant or provision herein contained, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders of the Securities or coupons

SECTION 14 02  *Provisions Binding on Corporation's Successors*  All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of the Corporation shall bind its successors and assigns, whether so expressed or not

SECTION 14 03.  *Addresses for Notices, etc*  Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders of Securities to or on the Corporation may be given or served by being deposited postage prepaid first class mail in a post office letter box addressed (until another address is filed by the Corporation with the Trustee), as follows  General Motors Corporation, 767 Fifth Avenue, New York, New York 10153. Any notice, direction, request or demand by any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made in writing at its Corporate Trust Office, or at any other address previously furnished in writing to the Corporation by the Trustee.

46

SECTION 14 04. *Evidence of Compliance with Conditions Precedent* Upon any application or demand by the Corporation to the Trustee to take any action under any of the provisions of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

SECTION 14 05    *Legal Holidays.* In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 14.06. *Trust Indenture Act to Control.* If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture which is required to be included in this Indenture by any of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939, such required provision shall control

SECTION 14 07    *Execution in Counterparts* This Indenture may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument

SECTION 14 08. *New York Contract.* This Indenture and each Security shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said State

Citibank, N A , the party of the second part, hereby accepts the trusts in this Indenture declared and provided, upon the terms and conditions hereinabove set forth.

47

IN WITNESS WHEREOF, GENERAL MOTORS CORPORATION, the party of the first part, has caused this Indenture to be signed and acknowledged by its Chairman of the Board or one of its Vice Chairmen of the Board or its President or one of its Executive Vice Presidents or one of its Vice Presidents or its Treasurer, and its Corporate seal to be affixed hereunto, and the same to be attested by its Secretary or an Assistant Secretary, and CITIBANK, N.A., the party of the second part, has caused this Indenture to be signed and acknowledged by one of its Vice Presidents or Senior Trust Officers, and its corporate seal to be affixed hereunto, and the same to be attested by its Secretary or an Assistant Secretary or a Trust Officer, all as of the day and year first above written

GENERAL MOTORS CORPORATION

[Corporate Seal]

By _____

Attest _____

[Corporate Seal]

CITIBANK, N.A.

By _____

Attest _____

48

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss
December

On the 7TH day of November, 1990 before me personally came Charles Golden, to me known, who, being by me duly sworn, did depose and say that he resides at 46 Linden Place, Summit NJ, that he is the Treasurer of General Motors Corporation, one of the corporations described in and which executed the foregoing instrument, that he knows the seal of said Corporation, that the seal affixed to said instrument is such Corporate seal; that it was so affixed by authority of the Board of Directors of said Corporation, and that he signed his name thereto by like authority.

[SEAL]

_Helen E Ferguson_
Notary Public

HELEN E FERGUSON
NOTARY PUBLIC State of New York
No 31-4752849
Qualified in New York County
Commission Expires July 31 1991

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss
December

On the 10 day of November, 1990 before me personally came P. DeFELICE, to me known, who, being by me duly sworn, did depose and say that he resides at 47 09 169th Street, Flushing, N. Y 11358, that he is a VICE PRESIDENT of Citibank, N A, one of the corporations described in and which executed the foregoing instrument, that he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal, that it was so affixed by authority of the Board of Directors of said corporation, and that he signed his name thereto by like authority

[SEAL]

Notary Public
ENZO L CARBOCCI
Notary Public, State of New York
No 43-4005585
Qualified in Richmond County
Certificate Filed in New York County
Term Expires March 30, 1992



49

**Exhibit B**

**Successor Agreement**



AGREEMENT OF RESIGNATION, APPOINTMENT AND ACCEPTANCE, dated as of September 26, 2006 by and among GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of State of Delaware and having its principal office at 300 Renaissance Center, Detroit, Michigan 48265 (the "Company"), Wilmington Trust Company, a banking corporation duly organized and existing under the laws of the State of Delaware and having its principal corporate trust office at 1100 North Market Street, Rodney Square North, Wilmington, DE 19890-0001 ("Successor Trustee") and CITIBANK, N A , a national banking association duly organized and existing under the laws of the United States of America and having its principal corporate trust office at 388 Greenwich Street, 14th Floor, New York, New York 10013 ("Resigning Trustee")

## RECITALS

WHEREAS, there are currently $1,387,765,000 aggregate principal amount of the Company's Debt Securities (the "Securities") Outstanding under a Trust Indenture dated as of November 15, 1990 by and between the Company and the Resigning Trustee (the "Indenture"),

WHEREAS, Citibank, N A , is the Trustee, Securities Registrar and paying agent under the Indenture

WHEREAS, Section 7.10 of the Indenture provides that the Trustee may at any time resign with respect to the Securities of one or more series by giving written notice of such resignation to the Company, effective upon the acceptance by a successor Trustee of its appointment as a successor Trustee,

WHEREAS, Section 7 10 of the Indenture provides that, if the Trustee shall resign, the Company, by order of the Board of Directors of the Company, shall promptly appoint a successor Trustee

WHEREAS, Section 7 11 of the Indenture provides that any successor Trustee appointed in accordance with the Indenture shall execute, acknowledge and deliver to the Company and to its predecessor trustee an instrument accepting such appointment under the Indenture, and thereupon the resignation of the predecessor Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, duties and obligations of the predecessor trustee (except as otherwise specifically set forth herein),

WHEREAS, the Company desires to appoint Successor Trustee as Trustee to succeed Resigning Trustee in such capacity under the Indenture, and

WHEREAS, Successor Trustee is willing to accept such appointment as successor Trustee, under the Indenture,

NOW, THEREFORE, the Company, Resigning Trustee and Successor Trustee, for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby consent and agree as follows

1

## THE RESIGNING TRUSTEE

1 1    Pursuant to Section 7 10 of the Indenture, Resigning Trustee hereby notifies the Company that Resigning Trustee is hereby resigning as Trustee under the Indenture, but will continue to act, and confirms its appointment as, Securities Registrar and paying agent

1 2    Resigning Trustee hereby represents and warrants to Successor Trustee that.

(a)    No covenant or condition contained in the Indenture has been waived by Resigning Trustee or, to the best knowledge of responsible officers of Resigning Trustee by the Holders of the percentage in aggregate principal

amount of the Securities required by the Indenture to effect any such waiver

(b)    There is no action, suit or proceeding pending or, to the best knowledge of responsible officers of Resigning Trustee, threatened against Resigning Trustee before any court or any governmental authority arising out of any act or omission of Resigning Trustee as Trustee under the Indenture

(c)    Pursuant to Section 2 03 of the Indenture, Resigning Trustee has duly authenticated and delivered, $1,387,765,000 aggregate principal amount of Securities Outstanding under the Indenture

(d)    The Security Register accurately reflects the amount of Securities issued and outstanding and the amounts payable thereon

(e)    Each person who so authenticated the Securities was duly elected, qualified and acting as an officer of Resigning Trustee and empowered to authenticate the Securities at the respective times of such authentication and the signature of such person or persons appearing on such Securities is each such person's genuine signature.

(f)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of Resigning Trustee and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms

(g)    To the best knowledge of responsible officers of the Resigning Trustee, no event has occurred and is continuing which is, or after notice or lapse of

time would become, an Event of Default under Section 6.01 of the Indenture

1.3     Resigning Trustee hereby assigns, transfers, delivers and confirms to Successor Trustee all right, title and interest of Resigning Trustee in and to the trust under the Indenture (except as otherwise specifically set forth herein) and all the rights, powers and trusts of the Trustee under the Indenture (except as otherwise specifically set forth herein). Resigning Trustee shall execute and deliver such further instruments and shall do such other things as Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in Successor Trustee all such rights, powers and trusts hereby assigned, transferred, delivered and confirmed to Successor Trustee as Trustee

1.4     Resigning Trustee shall deliver to Successor Trustee, as of or immediately after the effective date hereof, all of the documents listed on Exhibit A hereto

2

## THE COMPANY

2.1     The Company hereby accepts the resignation of Resigning Trustee as Trustee under the Indenture and confirms the appointment of Citibank, N.A. as Security Registrar and paying agent

2.2     The Company hereby certifies that Exhibit B annexed hereto is a copy of the act of the Board of Directors of the Company, which is in full force and effect on the date hereof, and which authorizes certain officers of the Company to

(a)     accept Resigning Trustee's resignation as Trustee under the Indenture,

(b)     appoint Successor Trustee as Trustee under the Indenture,

(c)     confirm the appointment of Citibank, N.A. as Security Registrar and paying agent, and

    (d)    execute and deliver such agreements and other instruments as may be necessary or desirable to effectuate the succession of Successor Trustee as Trustee under the Indenture and the confirmation of the appointment of Citibank, N A as Security Registrar and paying agent under the Indenture

2 3    The Company hereby appoints Successor Trustee as Trustee under the Indenture to succeed to, and hereby vests Successor Trustee with, all the rights, powers, duties and obligations of Resigning Trustee under the Indenture (except as otherwise specifically set forth herein) with like effect as if originally named as Trustee in the Indenture

2 4    Promptly after the effective date of this Agreement of Resignation, Appointment and Acceptance, the Company shall cause a notice, substantially in the form of Exhibit C annexed hereto, to be sent to each Holder of the Securities in accordance with the provisions of Section 7 10 of the Indenture

2 5    The Company hereby represents and warrants to Resigning Trustee and Successor Trustee that

    (a)    The Company is a corporation duly and validly organized and existing pursuant to the laws of the State of Delaware

    (b)    The Indenture was validly and lawfully executed and delivered by the Company and the Securities were validly issued by the Company

    (c)    The Company has performed or fulfilled prior to the date hereof, and will continue to perform and fulfill after the date hereof, each covenant, agreement, condition, obligation and responsibility under the Indenture

(d)    No event has occurred and is continuing which is, or after notice or lapse of time would become, an Event of Default under Section 6.01 of the Indenture

(e)    No covenant or condition contained in the Indenture has been waived by the Company or, to the best of the Company's knowledge, by Holders of the percentage in aggregate principal amount of the Securities required to effect any such waiver

(f)    There is no action, suit or proceeding pending or, to the best of the Company's knowledge, threatened against the Company before any court or any governmental authority arising out of any act or omission of the Company under the Indenture

(g)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of the Company and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms

(h)    All conditions precedent relating to the appointment of Wilmington Trust Company as successor Trustee under the Indenture have been complied with by the Company

(i)    The Trust Indenture dated as of April 1, 1986 by and between the Company and the Resigning Trustee has been terminated and there are no series outstanding thereunder

(j)    The Subordinated Indenture dated as of December 20, 2001 by and between the Company and the Resigning Trustee has been terminated and there are no series outstanding thereunder

## 3

## THE SUCCESSOR TRUSTEE

3 1    Successor Trustee hereby represents and warrants to Resigning Trustee and to the Company that·

(a)    The Successor Trustee is not disqualified under the provisions of Section 7 08 and is eligible under the provisions of Section 7 09 of the Indenture to act as Trustee under the Indenture

(b)    This Agreement of Resignation, Appointment and Acceptance has been duly authorized, executed and delivered on behalf of Successor Trustee and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms

3 2    Successor Trustee hereby accepts its appointment as successor Trustee under the Indenture and accepts the rights, powers, duties and obligations of Resigning Trustee (except as otherwise specifically set forth herein) as Trustee under the Indenture, upon the terms and conditions set forth therein, with like effect as if originally named as Trustee under the Indenture

3 3    References in the Indenture to "Corporate Trust Office" or other similar terms shall be deemed for purposes of the paying agent or the Securities Registrar to be 388 Greenwich Street, 14th Floor, New York, NY 10013, Attention  Agency and Trust – General Motors and for purposes of the Trustee to be 1100 North Market Street, Rodney Square North, Wilmington, DE 19890-00001, Attention  Corporate Trust Administration – General Motors

4

## APPOINTMENT OF THE PAYING AGENT

4 1    The Company confirms its appointment of Citibank, N A  as paying agent under

the Indenture

4.2    Citibank, N A  agrees that

(a)    it will hold sums held by it as such agent for the payment of the principal

of (and premium, if any), interest, if any, or Additional Amounts, if any,

on the Securities of such series in trust for the benefit of the Holders of the

Securities of such series, or coupons appertaining thereto, as the case may

be, entitled thereto and will notify the Successor Trustee of the receipt of

sums to be so held,

(b)    it will give the Successor Trustee notice of any failure by the Company (or

by any other obligor on the Securities of such series) to make any payment

of the principal of (or premium, if any), interest, if any, or Additional

Amounts, if any, on the Securities of such series when the same shall be

due and payable, and

(c)    at any time during the continuance of any such default, upon the written

request of the Successor Trustee, it will forthwith pay to the Successor

Trustee all sums so held in trust by such paying agent

4 3    Citibank, N A. as paying agent shall comply with all provisions of the Indenture

relating to the rights, powers, duties and obligations of the paying agent

4 4    Notwithstanding anything herein to the contrary, the Company shall pay Citibank,

N A  the compensation referenced in Section 7 06 of the Indenture  Citibank, N A  shall pay the

Successor Trustee compensation for its services as Trustee as set forth in a separate fee letter

The Successor Trustee hereby waives all right to the payment of compensation from the Company referenced in Section 7 06 of the Indenture

4 5     The Company will pay or reimburse Citibank, N A upon its request for all reasonable expenses, disbursements and advances incurred or made by Citibank, N.A in accordance with any of the provisions of this Agreement of Resignation, Appointment and Acceptance (including the reasonable compensation, expenses and disbursements of its counsel and of all persons not regularly in its employ, but excluding any and all expenses relating to the resignation of the Resigning Trustee and the acceptance of the Successor Trustee and all expenses and disbursements relating to the preparation and negotiation of this Agreement of Resignation, Appointment and Acceptance) except any such expense, disbursement or advance as may arise from its negligence or bad faith    The Company also covenants to indemnify Citibank, N A for, and to hold it harmless against any loss, liability or reasonable expense incurred without negligence or bad faith on the part of Citibank, N A , arising out of or in connection with the acceptance or administration of its role as paying agent, including the reasonable costs and expenses of defending itself against any claim of liability in the premises The obligations of the Company to pay to Citibank, N A compensation as set forth in Section 4 4 herein and to pay or reimburse Citibank, N A for such reasonable expenses, disbursements and advances shall constitute additional indebtedness under the Indenture    Such additional indebtedness shall be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee or paying agent, except funds held in trust for the benefit of the Holders of particular Securities or coupons

5

## MISCELLANEOUS

5 1    Except as otherwise expressly provided herein or unless the context otherwise
requires, all terms used herein which are defined in the Indenture shall have the meanings
assigned to them in the Indenture

5 2    This Agreement of Resignation, Appointment and Acceptance effected hereby
shall be effective as of the opening of business on SEPT 26, 2006.

5 3    Resigning Trustee hereby acknowledges payment or provision for payment in full
by the Company of compensation for all services rendered by Resigning Trustee in its capacity
as Trustee under Section 7 06 of the Indenture and reimbursement in full by the Company of the
expenses, disbursements and advances incurred or made by Resigning Trustee in its capacity as
Trustee in accordance with the provisions of the Indenture    In addition, each of the Resigning
Trustee and the Successor Trustee hereby acknowledges that any and all expenses,
disbursements and costs incurred by each of them in connection with the resignation and
appointment described herein and the preparation and negotiation of this Agreement of
Resignation, Appointment and Acceptance shall not be the responsibility of the Company    The
Company acknowledges its obligation set forth in Section 7 06 of the Indenture to indemnify
Resigning Trustee for, and to hold Resigning Trustee harmless against, any loss, liability and
expense incurred without negligence or bad faith on the part of the Resigning Trustee and arising
out of or in connection with the acceptance or administration of the trust evidenced by the
Indenture (which obligation shall survive the execution hereof)

5 4    This Agreement of Resignation, Appointment and Acceptance shall be governed
by and construed in accordance with the laws of the State of New York

[TPW NY1 FGAL 543799 5] 19100-00204 08/09/2006 01 32 PM

5.5    This Agreement of Resignation, Appointment and Acceptance may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument

5 6    The Company, Resigning Trustee and Successor Trustee hereby acknowledge receipt of an executed and acknowledged counterpart of this Agreement of Resignation, Appointment and Acceptance and the effectiveness thereof.



IN WITNESS WHEREOF, the parties hereto have caused this Agreement of Resignation,

Appointment and Acceptance to be duly executed and acknowledged and their respective seals to

be affixed hereunto and duly attested all as of the day and year first above written

[SEAL]

Attest

Name  ANTOINETTE M. SKEETE
Title  ASSISTANT SECRETARY

Name
Title  JOHN J. BYRNES
       VICE PRESIDENT

Attest

Name.
Title  Eric C. Fischer
       Authorized Signer

GENERAL MOTORS CORPORATION

By  Teresa Hilado
Name Teresa Hilado
Title. Assistant Treasurer

CITIBANK, N A
as Resigning Trustee

By
Name  Wafaa Orfy
Title  Vice President

WILMINGTON TRUST COMPANY, as
Successor Trustee

By
Name
Title  James J. McGinley
       Authorized Signer

[TPW NY] LEGAL 547799 5] 19100-00204 08/09/2006 01 12 PM

EXHIBIT A

Documents to be delivered to Successor Trustee

1.    Executed copy of Indenture dated as of November 15, 1990

2    Conformed copy of Indenture

3    File of closing documents from initial issuance.

4    Copies of the most recent of each of the SEC reports delivered by the Company pursuant to Section 5 03 of the Indenture

5    A copy of the most recent compliance certificate delivered pursuant to Section 4 05 of the Indenture

6    Certified list of Holders as of the date hereof, including certificate detail and all "stop transfers" and the reason for such "stop transfers" (or, alternatively, if there are a substantial number of registered Holders, the computer tape reflecting the identity of such Holders)

7    Copies of any official notices sent by the Trustee to all the Holders of the Securities pursuant to the terms of the Indenture during the past twelve months and a copy of the most recent Trustee's annual report to holders delivered pursuant to Section 5 04 of the Indenture

8    List of any documents which, to the actual knowledge of a responsible officer of the Resigning Trustee, are required to be furnished but have not been furnished to Resigning Trustee, or if none a statement from the Resigning Trustee to that effect





GENERAL MOTORS CORPORATION

NOTICE    *Successor Indenture Trustee only, non RTA*

To the Holders of the following

*5 New & Work Funders*

9 40% Debentures due July 15, 2021  CUSIP 370442 AN5

8 80% Notes due March 1, 2021  CUSIP 370442 AJ4

7 40% Debentures due September 1, 2025. CUSIP 370442 AR6

*Medium Term Notes* →MTN CUSIP 37045E AG3

→MTN CUSIP 37045E AS7

*Traditional, Citibank Referral Source*

NOTICE IS HEREBY GIVEN, pursuant to Section 7 10 of the Indenture (the "Indenture") dated as of November 15, 1990 by and between General Motors Corporation, as issuer, and Citibank, N A., as trustee, that Citibank, N A has resigned as trustee under the Indenture, but will continue to act as Securities Registrar and paying agent.

Pursuant to Section 7 11 of the Indenture, Wilmington Trust Company, a banking corporation duly organized and existing under the laws of the State of Delaware, has accepted appointment as trustee under the Indenture  The address of the corporate trust office of Wilmington Trust Company is 1100 North Market Street, Rodney Square North, Wilmington, DE 19890-00001

Citibank, N A 's resignation as trustee and Wilmington Trust Company's appointment as successor trustee were effective as of the opening of business on September 26, 2006, 2006

Dated  New York, New York
        September 26, 2006

Very truly yours,

By. _Teresa Hilado_
    Name. Teresa Hilado
    Title  Assistant Treasurer

[TPW NYLEGAL 543799 5] 19100 00204 08/09/2006 01 32 PM

**Exhibit C**

**Outstanding Principal and Unpaid Interest**



EXHIBIT C

| Issue Name | CUSIP# | Indenture Date | Principal | Interest | Total Principal and Interest |
|---|---|---|---|---|---|
| GM Corp 9 40% Debs due 7/15/2021 | 370442AN5 | 11/15/1990 | $ 299,795,000 | $ 10,646,054 | $ 310,441,054 |
| GM Corp 8 80% Notes due 3/1/2021 | 370442AJ4 | 11/15/1990 | 524,795,000 | 11,545,490 | 536,340,490 |
| GM Corp 7 40% Debs due 9/1/2025 | 370442AR6 | 11/15/1990 | 500,000,000 | 9,250,000 | 509,250,000 |
| GM Corp Medium Term Notes AG3 | 37045EAG3 | 11/15/1990 | 15,000,000 | 62,667 | 15,062,667 |
| GM Corp Medium Term Notes AS7 | 37045EAS7 | 11/15/1990 | 48,175,000 | 202,335 | 48,377,335 |
| Total November 15, 1990 Indenture | | | $ 1,387,765,000 | $ 31,706,545 | $ 1,419,471,545 |

# EXHIBIT 2

JAN 13 '05 17:14 FR GENERAL MOTORS    1212 418 3664 TO 912452674434    P.01



# ISDA®

International Swap Dealers Association, Inc.

# MASTER AGREEMENT

dated as of ....August...11,...1998

Deutsche Bank AG ................................................. and ................................................. General Motors Corporation

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will
be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents
and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those
Transactions.

Accordingly, the parties agree as follows:—

**1.      Interpretation**

(a)      *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein
specified for the purpose of this Master Agreement.

(b)      *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the
other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency
between the provisions of any Confirmation and this Master Agreement (including the Schedule), such
Confirmation will prevail for the purpose of the relevant Transaction.

(c)      *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master
Agreement and all Confirmations form a single agreement between the parties (collectively referred to as
this "Agreement"), and the parties would not otherwise enter into any Transactions.

**2.      Obligations**

(a)      *General Conditions.*

(i)      Each party will make each payment or delivery specified in each Confirmation to be made by
it, subject to the other provisions of this Agreement.

(ii)      Payments under this Agreement will be made on the due date for value on that date in the place
of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in
freely transferable funds and in the manner customary for payments in the required currency. Where
settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on
the due date in the manner customary for the relevant obligation unless otherwise specified in the
relevant Confirmation or elsewhere in this Agreement.

(iii)      Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent
that no Event of Default or Potential Event of Default with respect to the other party has occurred
and is continuing, (2) the condition precedent that no Early Termination Date in respect of the
relevant Transaction has occurred or been effectively designated and (3) each other applicable
condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

(b)   **Change of Account.** Either party may change its account for receiving a payment or delivery by giving notice to the other party at least five Local Business Days prior to the scheduled date for the payment or delivery to which such change applies unless such other party gives timely notice of a reasonable objection to such change.

(c)   *Netting.* If on any date amounts would otherwise be payable:—

   (i)   in the same currency; and

   (ii)   in respect of the same Transaction,

by each party to the other, then, on such date, each party's obligation to make payment of any such amount will be automatically satisfied and discharged and, if the aggregate amount that would otherwise have been payable by one party exceeds the aggregate amount that would otherwise have been payable by the other party, replaced by an obligation upon the party by whom the larger aggregate amount would have been payable to pay to the other party the excess of the larger aggregate amount over the smaller aggregate amount.

The parties may elect in respect of two or more Transactions that a net amount will be determined in respect of all amounts payable on the same date in the same currency in respect of such Transactions, regardless of whether such amounts are payable in respect of the same Transaction. The election may be made in the Schedule or a Confirmation by specifying that subparagraph (ii) above will not apply to the Transactions identified as being subject to the election, together with the starting date (in which case subparagraph (ii) above will not, or will cease to, apply to such Transactions from such date). This election may be made separately for different groups of Transactions and will apply separately to each pairing of Offices through which the parties make and receive payments or deliveries.

(d)   *Deduction or Withholding for Tax.*

   (i)   *Gross-Up.* All payments under this Agreement will be made without any deduction or withholding for or on account of any Tax unless such deduction or withholding is required by any applicable law, as modified by the practice of any relevant governmental revenue authority, then in effect. If a party is so required to deduct or withhold, then that party ("X") will:—

      (1)   promptly notify the other party ("Y") of such requirement;

      (2)   pay to the relevant authorities the full amount required to be deducted or withheld (including the full amount required to be deducted or withheld from any additional amount paid by X to Y under this Section 2(d)) promptly upon the earlier of determining that such deduction or withholding is required or receiving notice that such amount has been assessed against Y;

      (3)   promptly forward to Y an official receipt (or a certified copy), or other documentation reasonably acceptable to Y, evidencing such payment to such authorities; and

      (4)   if such Tax is an Indemnifiable Tax, pay to Y, in addition to the payment to which Y is otherwise entitled under this Agreement, such additional amount as is necessary to ensure that the net amount actually received by Y (free and clear of Indemnifiable Taxes, whether assessed against X or Y) will equal the full amount Y would have received had no such deduction or withholding been required. However, X will not be required to pay any additional amount to Y to the extent that it would not be required to be paid but for:—

         (A)   the failure by Y to comply with or perform any agreement contained in Section 4(a)(i), 4(a)(iii) or 4(d); or

         (B)   the failure of a representation made by Y pursuant to Section 3(f) to be accurate and true unless such failure would not have occurred but for (I) any action taken by a taxing authority, or brought in a court of competent jurisdiction, on or after the date on which a Transaction is entered into (regardless of whether such action is taken or brought with respect to a party to this Agreement) or (II) a Change in Tax Law.

ISDA® 1992

(ii) *Liability.* If:—

(1) X is required by any applicable law, as modified by the practice of any relevant governmental revenue authority, to make any deduction or withholding in respect of which X would not be required to pay an additional amount to Y under Section 2(d)(i)(4);

(2) X does not so deduct or withhold; and

(3) a liability resulting from such Tax is assessed directly against X,

then, except to the extent Y has satisfied or then satisfies the liability resulting from such Tax, Y will promptly pay to X the amount of such liability (including any related liability for interest, but including any related liability for penalties only if Y has failed to comply with or perform any agreement contained in Section 4(a)(i), 4(a)(iii) or 4(d)).

(e)     *Default Interest; Other Amounts.* Prior to the occurrence or effective designation of an Early Termination Date in respect of the relevant Transaction, a party that defaults in the performance of any payment obligation will, to the extent permitted by law and subject to Section 6(c), be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand in the same currency as such overdue amount, for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate. Such interest will be calculated on the basis of daily compounding and the actual number of days elapsed. If, prior to the occurrence or effective designation of an Early Termination Date in respect of the relevant Transaction, a party defaults in the performance of any obligation required to be settled by delivery, it will compensate the other party on demand if and to the extent provided for in the relevant Confirmation or elsewhere in this Agreement.

## 3.    Representations

Each party represents to the other party (which representations will be deemed to be repeated by each party on each date on which a Transaction is entered into and, in the case of the representations in Section 3(f), at all times until the termination of this Agreement) that:—

(a)     *Basic Representations.*

(i)  *Status.* It is duly organised and validly existing under the laws of the jurisdiction of its organisation or incorporation and, if relevant under such laws, in good standing;

(ii)  *Powers.* It has the power to execute this Agreement and any other documentation relating to this Agreement to which it is a party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver and to perform its obligations under this Agreement and any obligations it has under any Credit Support Document to which it is a party and has taken all necessary action to authorise such execution, delivery and performance;

(iii)  *No Violation or Conflict.* Such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

(iv)  *Consents.* All governmental and other consents that are required to have been obtained by it with respect to this Agreement or any Credit Support Document to which it is a party have been obtained and are in full force and effect and all conditions of any such consents have been complied with; and

(v)  *Obligations Binding.* Its obligations under this Agreement and any Credit Support Document to which it is a party constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

ISDA® 1992

(b)    *Absence of Certain Events.* No Event of Default or Potential Event of Default or, to its knowledge, Termination Event with respect to it has occurred and is continuing and no such event or circumstance would occur as a result of its entering into or performing its obligations under this Agreement or any Credit Support Document to which it is a party.

(c)    *Absence of Litigation.* There is not pending or, to its knowledge, threatened against it or any of its Affiliates any action, suit or proceeding at law or in equity or before any court, tribunal, governmental body, agency or official or any arbitrator that is likely to affect the legality, validity or enforceability against it of this Agreement or any Credit Support Document to which it is a party or its ability to perform its obligations under this Agreement or such Credit Support Document.

(d)    *Accuracy of Specified Information.* All applicable information that is furnished in writing by or on behalf of it to the other party and is identified for the purpose of this Section 3(d) in the Schedule is, as of the date of the information, true, accurate and complete in every material respect.

(e)    *Payer Tax Representation.* Each representation specified in the Schedule as being made by it for the purpose of this Section 3(e) is accurate and true.

(f)    *Payee Tax Representations.* Each representation specified in the Schedule as being made by it for the purpose of this Section 3(f) is accurate and true.

4.    **Agreements**

Each party agrees with the other that, so long as either party has or may have any obligation under this Agreement or under any Credit Support Document to which it is a party:—

(a)    *Furnish Specified Information.* It will deliver to the other party or, in certain cases under subparagraph (iii) below, to such government or taxing authority as the other party reasonably directs:—

(i)    any forms, documents or certificates relating to taxation specified in the Schedule or any Confirmation;

(ii)    any other documents specified in the Schedule or any Confirmation; and

(iii)    upon reasonable demand by such other party, any form or document that may be required or reasonably requested in writing in order to allow such other party or its Credit Support Provider to make a payment under this Agreement or any applicable Credit Support Document without any deduction or withholding for or on account of any Tax or with such deduction or withholding at a reduced rate (so long as the completion, execution or submission of such form or document would not materially prejudice the legal or commercial position of the party in receipt of such demand), with any such form or document to be accurate and completed in a manner reasonably satisfactory to such other party and to be executed and to be delivered with any reasonably required certification,

in each case by the date specified in the Schedule or such Confirmation or, if none is specified, as soon as reasonably practicable.

(b)    *Maintain Authorisations.* It will use all reasonable efforts to maintain in full force and effect all consents of any governmental or other authority that are required to be obtained by it with respect to this Agreement or any Credit Support Document to which it is a party and will use all reasonable efforts to obtain any that may become necessary in the future.

(c)    *Comply with Laws.* It will comply in all material respects with all applicable laws and orders to which it may be subject if failure so to comply would materially impair its ability to perform its obligations under this Agreement or any Credit Support Document to which it is a party.

(d)    *Tax Agreement.* It will give notice of any failure of a representation made by it under Section 3(f) to be accurate and true promptly upon learning of such failure.

(e)    *Payment of Stamp Tax.* Subject to Section 11, it will pay any Stamp Tax levied or imposed upon it or in respect of its execution or performance of this Agreement by a jurisdiction in which it is incorporated,

organised, managed and controlled, or considered to have its seat, or in which a branch or office through which it is acting for the purpose of this Agreement is located ("Stamp Tax Jurisdiction") and will indemnify the other party against any Stamp Tax levied or imposed upon the other party or in respect of the other party's execution or performance of this Agreement by any such Stamp Tax Jurisdiction which is not also a Stamp Tax Jurisdiction with respect to the other party.

5.    **Events of Default and Termination Events**

(a)    *Events of Default.* The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes an event of default (an "Event of Default") with respect to such party:—

(i)    *Failure to Pay or Deliver.* Failure by the party to make, when due, any payment under this Agreement or delivery under Section 2(a)(i) or 2(e) required to be made by it if such failure is not remedied on or before the third Local Business Day after notice of such failure is given to the party;

(ii)    *Breach of Agreement.* Failure by the party to comply with or perform any agreement or obligation (other than an obligation to make any payment under this Agreement or delivery under Section 2(a)(i) or 2(e) or to give notice of a Termination Event or any agreement or obligation under Section 4(a)(i), 4(a)(iii) or 4(d)) to be complied with or performed by the party in accordance with this Agreement if such failure is not remedied on or before the thirtieth day after notice of such failure is given to the party;

(iii)    *Credit Support Default.*

(1)    Failure by the party or any Credit Support Provider of such party to comply with or perform any agreement or obligation to be complied with or performed by it in accordance with any Credit Support Document if such failure is continuing after any applicable grace period has elapsed;

(2)    the expiration or termination of such Credit Support Document or the failing or ceasing of such Credit Support Document to be in full force and effect for the purpose of this Agreement (in either case other than in accordance with its terms) prior to the satisfaction of all obligations of such party under each Transaction to which such Credit Support Document relates without the written consent of the other party; or

(3)    the party or such Credit Support Provider disaffirms, disclaims, repudiates or rejects, in whole or in part, or challenges the validity of, such Credit Support Document;

(iv)    *Misrepresentation.* A representation (other than a representation under Section 3(e) or (f)) made or repeated or deemed to have been made or repeated by the party or any Credit Support Provider of such party in this Agreement or any Credit Support Document proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated;

(v)    *Default under Specified Transaction.* The party, any Credit Support Provider of such party or any applicable Specified Entity of such party (1) defaults under a Specified Transaction and, after giving effect to any applicable notice requirement or grace period, there occurs a liquidation of, an acceleration of obligations under, or an early termination of, that Specified Transaction, (2) defaults, after giving effect to any applicable notice requirement or grace period, in making any payment or delivery due on the last payment, delivery or exchange date of, or any payment on early termination of, a Specified Transaction (or such default continues for at least three Local Business Days if there is no applicable notice requirement or grace period) or (3) disaffirms, disclaims, repudiates or rejects, in whole or in part, a Specified Transaction (or such action is taken by any person or entity appointed or empowered to operate it or act on its behalf);

(vi)    *Cross Default.* If "Cross Default" is specified in the Schedule as applying to the party, the occurrence or existence of (1) a default, event of default or other similar condition or event (however

5    **ISDA® 1992**

described) in respect of such party, any Credit Support Provider of such party or any applicable Specified Entity of such party under one or more agreements or instruments relating to Specified Indebtedness of any of them (individually or collectively) in an aggregate amount of not less than the applicable Threshold Amount (as specified in the Schedule) which has resulted in such Specified Indebtedness becoming, or becoming capable at such time of being declared, due and payable under such agreements or instruments, before it would otherwise have been due and payable or (2) a default by such party, such Credit Support Provider or such Specified Entity (individually or collectively) in making one or more payments on the due date thereof in an aggregate amount of not less than the applicable Threshold Amount under such agreements or instruments (after giving effect to any applicable notice requirement or grace period);

(vii) *Bankruptcy*. The party, any Credit Support Provider of such party or any applicable Specified Entity of such party:—

(1) is dissolved (other than pursuant to a consolidation, amalgamation or merger); (2) becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due; (3) makes a general assignment, arrangement or composition with or for the benefit of its creditors; (4) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (A) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (B) is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof; (5) has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger); (6) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets; (7) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 30 days thereafter; (8) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (1) to (7) (inclusive); or (9) takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts; or

(viii) *Merger Without Assumption*. The party or any Credit Support Provider of such party consolidates or amalgamates with, or merges with or into, or transfers all or substantially all its assets to, another entity and, at the time of such consolidation, amalgamation, merger or transfer:—

(1) the resulting, surviving or transferee entity fails to assume all the obligations of such party or such Credit Support Provider under this Agreement or any Credit Support Document to which it or its predecessor was a party by operation of law or pursuant to an agreement reasonably satisfactory to the other party to this Agreement; or

(2) the benefits of any Credit Support Document fail to extend (without the consent of the other party) to the performance by such resulting, surviving or transferee entity of its obligations under this Agreement.

(b)    *Termination Events*. The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any event specified below constitutes an Illegality if the event is specified in (i) below, a Tax Event if the event is specified in (ii) below or a Tax Event Upon Merger if the event is specified in (iii) below, and, if specified to be applicable, a Credit Event

ISDA® 1992

Upon Merger if the event is specified pursuant to (iv) below or an Additional Termination Event if the event is specified pursuant to (v) below:—

(i) *Illegality*. Due to the adoption of, or any change in, any applicable law after the date on which a Transaction is entered into, or due to the promulgation of, or any change in, the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law after such date, it becomes unlawful (other than as a result of a breach by the party of Section 4(b)) for such party (which will be the Affected Party):—

(1) to perform any absolute or contingent obligation to make a payment or delivery or to receive a payment or delivery in respect of such Transaction or to comply with any other material provision of this Agreement relating to such Transaction; or

(2) to perform, or for any Credit Support Provider of such party to perform, any contingent or other obligation which the party (or such Credit Support Provider) has under any Credit Support Document relating to such Transaction;

(ii) *Tax Event*. Due to (x) any action taken by a taxing authority, or brought in a court of competent jurisdiction, on or after the date on which a Transaction is entered into (regardless of whether such action is taken or brought with respect to a party to this Agreement) or (y) a Change in Tax Law, the party (which will be the Affected Party) will, or there is a substantial likelihood that it will, on the next succeeding Scheduled Payment Date (1) be required to pay to the other party an additional amount in respect of an Indemnifiable Tax under Section 2(d)(i)(4) (except in respect of interest under Section 2(e), 6(d)(ii) or 6(e)) or (2) receive a payment from which an amount is required to be deducted or withheld for or on account of a Tax (except in respect of interest under Section 2(e), 6(d)(ii) or 6(e)) and no additional amount is required to be paid in respect of such Tax under Section 2(d)(i)(4) (other than by reason of Section 2(d)(i)(4)(A) or (B));

(iii) *Tax Event Upon Merger*. The party (the "Burdened Party") on the next succeeding Scheduled Payment Date will either (1) be required to pay an additional amount in respect of an Indemnifiable Tax under Section 2(d)(i)(4) (except in respect of interest under Section 2(e), 6(d)(ii) or 6(e)) or (2) receive a payment from which an amount has been deducted or withheld for or on account of any Indemnifiable Tax in respect of which the other party is not required to pay an additional amount (other than by reason of Section 2(d)(i)(4)(A) or (B)), in either case as a result of a party consolidating or amalgamating with, or merging with or into, or transferring all or substantially all its assets to, another entity (which will be the Affected Party) where such action does not constitute an event described in Section 5(a)(viii);

(iv) *Credit Event Upon Merger*. If "Credit Event Upon Merger" is specified in the Schedule as applying to the party, such party ("X"), any Credit Support Provider of X or any applicable Specified Entity of X consolidates or amalgamates with, or merges with or into, or transfers all or substantially all its assets to, another entity and such action does not constitute an event described in Section 5(a)(viii) but the creditworthiness of the resulting, surviving or transferee entity is materially weaker than that of X, such Credit Support Provider or such Specified Entity, as the case may be, immediately prior to such action (and, in such event, X or its successor or transferee, as appropriate, will be the Affected Party); or

(v) *Additional Termination Event*. If any "Additional Termination Event" is specified in the Schedule or any Confirmation as applying, the occurrence of such event (and, in such event, the Affected Party or Affected Parties shall be as specified for such Additional Termination Event in the Schedule or such Confirmation).

(c) *Event of Default and Illegality*. If an event or circumstance which would otherwise constitute or give rise to an Event of Default also constitutes an Illegality, it will be treated as an Illegality and will not constitute an Event of Default.

7

JAN 13 '05 17:17 FR GENERAL MOTOR   1212 418 3664 TO 913462674434   P.08

### 6.   Early Termination

(a)   *Right to Terminate Following Event of Default.* If at any time an Event of Default with respect to a party (the "Defaulting Party") has occurred and is then continuing, the other party (the "Non-defaulting Party") may, by not more than 20 days notice to the Defaulting Party specifying the relevant Event of Default, designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all outstanding Transactions. If, however, "Automatic Early Termination" is specified in the Schedule as applying to a party, then an Early Termination Date in respect of all outstanding Transactions will occur immediately upon the occurrence with respect to such party of an Event of Default specified in Section 5(a)(vii)(1), (3), (5), (6) or, to the extent analogous thereto, (8), and as of the time immediately preceding the institution of the relevant proceeding or the presentation of the relevant petition upon the occurrence with respect to such party of an Event of Default specified in Section 5(a)(vii)(4) or, to the extent analogous thereto, (8).

(b)   *Right to Terminate Following Termination Event.*

(i)   *Notice.* If a Termination Event occurs, an Affected Party will, promptly upon becoming aware of it, notify the other party, specifying the nature of that Termination Event and each Affected Transaction and will also give such other information about that Termination Event as the other party may reasonably require.

(ii)   *Transfer to Avoid Termination Event.* If either an Illegality under Section 5(b)(i)(1) or a Tax Event occurs and there is only one Affected Party, or if a Tax Event Upon Merger occurs and the Burdened Party is the Affected Party, the Affected Party will, as a condition to its right to designate an Early Termination Date under Section 6(b)(iv), use all reasonable efforts (which will not require such party to incur a loss, excluding immaterial, incidental expenses) to transfer within 20 days after it gives notice under Section 6(b)(i) all its rights and obligations under this Agreement in respect of the Affected Transactions to another of its Offices or Affiliates so that such Termination Event ceases to exist.

If the Affected Party is not able to make such a transfer it will give notice to the other party to that effect within such 20 day period, whereupon the other party may effect such a transfer within 30 days after the notice is given under Section 6(b)(i).

Any such transfer by a party under this Section 6(b)(ii) will be subject to and conditional upon the prior written consent of the other party, which consent will not be withheld if such other party's policies in effect at such time would permit it to enter into transactions with the transferee on the terms proposed.

(iii)   *Two Affected Parties.* If an Illegality under Section 5(b)(i)(1) or a Tax Event occurs and there are two Affected Parties, each party will use all reasonable efforts to reach agreement within 30 days after notice thereof is given under Section 6(b)(i) on action to avoid that Termination Event.

(iv)   *Right to Terminate.* If:—

(1)   a transfer under Section 6(b)(ii) or an agreement under Section 6(b)(iii), as the case may be, has not been effected with respect to all Affected Transactions within 30 days after an Affected Party gives notice under Section 6(b)(i); or

(2)   an Illegality under Section 5(b)(i)(2), a Credit Event Upon Merger or an Additional Termination Event occurs, or a Tax Event Upon Merger occurs and the Burdened Party is not the Affected Party,

either party in the case of an Illegality, the Burdened Party in the case of a Tax Event Upon Merger, any Affected Party in the case of a Tax Event or an Additional Termination Event if there is more than one Affected Party, or the party which is not the Affected Party in the case of a Credit Event Upon Merger or an Additional Termination Event if there is only one Affected Party may, by not more than 20 days notice to the other party and provided that the relevant Termination Event is then

8                                                            ISDA® 1992

JAN 13 '05 17:18 FR GENERAL MOTORS      1212 418 3664 TO 912126674434      P.09

continuing. designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all Affected Transactions.

(c) **Effect of Designation**.

(i)  If notice designating an Early Termination Date is given under Section 6(a) or (b), the Early Termination Date will occur on the date so designated, whether or not the relevant Event of Default or Termination Event is then continuing.

(ii)  Upon the occurrence or effective designation of an Early Termination Date, no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Terminated Transactions will be required to be made, but without prejudice to the other provisions of this Agreement. The amount, if any, payable in respect of an Early Termination Date shall be determined pursuant to Section 6(e).

(d) **Calculations.**

(i)  **Statement.** On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculations on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement (1) showing, in reasonable detail, such calculations (including all relevant quotations and specifying any amount payable under Section 6(e)) and (2) giving details of the relevant account to which any amount payable to it is to be paid. In the absence of written confirmation from the source of a quotation obtained in determining a Market Quotation, the records of the party obtaining such quotation will be conclusive evidence of the existence and accuracy of such quotation.

(ii)  **Payment Date.** An amount calculated as being due in respect of any Early Termination Date under Section 6(e) will be payable on the day that notice of the amount payable is effective (in the case of an Early Termination Date which is designated or occurs as a result of an Event of Default) and on the day which is two Local Business Days after the day on which notice of the amount payable is effective (in the case of an Early Termination Date which is designated as a result of a Termination Event). Such amount will be paid together with (to the extent permitted under applicable law) interest thereon (before as well as after judgment) in the Termination Currency, from (and including) the relevant Early Termination Date to (but excluding) the date such amount is paid, at the Applicable Rate. Such interest will be calculated on the basis of daily compounding and the actual number of days elapsed.

(e)  **Payments on Early Termination.** If an Early Termination Date occurs, the following provisions shall apply based on the parties' election in the Schedule of a payment measure, either "Market Quotation" or "Loss", and a payment method, either the "First Method" or the "Second Method". If the parties fail to designate a payment measure or payment method in the Schedule, it will be deemed that "Market Quotation" or the "Second Method", as the case may be, shall apply. The amount, if any, payable in respect of an Early Termination Date and determined pursuant to this Section will be subject to any Set-off.

(i)  **Events of Default.** If the Early Termination Date results from an Event of Default:—

(1)  **First Method and Market Quotation.** If the First Method and Market Quotation apply, the Defaulting Party will pay to the Non-defaulting Party the excess, if a positive number, of (A) the sum of the Settlement Amount (determined by the Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party over (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party.

(2)  **First Method and Loss.** If the First Method and Loss apply, the Defaulting Party will pay to the Non-defaulting Party, if a positive number, the Non-defaulting Party's Loss in respect of this Agreement.

(3)  **Second Method and Market Quotation.** If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount (determined by the

JAN 13 '05 17:18 FR GENERAL MOTORS   1212 418 3564 TO 912462674434   P.10

Non-defaulting Party) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

(4)  *Second Method and Loss.* If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement.  If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

(ii)  *Termination Events.* If the Early Termination Date results from a Termination Event:—

(1)  *One Affected Party.* If there is one Affected Party, the amount payable will be determined in accordance with Section 6(e)(i)(3), if Market Quotation applies, or Section 6(e)(i)(4), if Loss applies, except that, in either case, references to the Defaulting Party and to the Non-defaulting Party will be deemed to be references to the Affected Party and the party which is not the Affected Party, respectively, and, if Loss applies and fewer than all the Transactions are being terminated, Loss shall be calculated in respect of all Terminated Transactions.

(2)  *Two Affected Parties.* If there are two Affected Parties:—

(A)  if Market Quotation applies, each party will determine a Settlement Amount in respect of the Terminated Transactions, and an amount will be payable equal to (I) the sum of (a) one-half of the difference between the Settlement Amount of the party with the higher Settlement Amount ("X") and the Settlement Amount of the party with the lower Settlement Amount ("Y") and (b) the Termination Currency Equivalent of the Unpaid Amounts owing to X less (II) the Termination Currency Equivalent of the Unpaid Amounts owing to Y; and

(B)  if Loss applies, each party will determine its Loss in respect of this Agreement (or, if fewer than all the Transactions are being terminated, in respect of all Terminated Transactions) and an amount will be payable equal to one-half of the difference between the Loss of the party with the higher Loss ("X") and the Loss of the party with the lower Loss ("Y").

If the amount payable is a positive number, Y will pay it to X; if it is a negative number, X will pay the absolute value of that amount to Y.

(iii)  *Adjustment for Bankruptcy.* In circumstances where an Early Termination Date occurs because "Automatic Early Termination" applies in respect of a party, the amount determined under this Section 6(e) will be subject to such adjustments as are appropriate and permitted by law to reflect any payments or deliveries made by one party to the other under this Agreement (and retained by such other party) during the period from the relevant Early Termination Date to the date for payment determined under Section 6(d)(ii).

(iv)  *Pre-Estimate.* The parties agree that if Market Quotation applies an amount recoverable under this Section 6(e) is a reasonable pre-estimate of loss and not a penalty. Such amount is payable for the loss of bargain and the loss of protection against future risks and except as otherwise provided in this Agreement neither party will be entitled to recover any additional damages as a consequence of such losses.

ISDA® 1992

JAN 13 '05 17:19 FR GENERAL MOTORS    1212 418 3564 TO 912462674434    P.11

## 7.    Transfer

Subject to Section 6(b)(ii), neither this Agreement nor any interest or obligation in or under this Agreement may be transferred (whether by way of security or otherwise) by either party without the prior written consent of the other party, except that:—

(a)    a party may make such a transfer of this Agreement pursuant to a consolidation or amalgamation with, or merger with or into, or transfer of all or substantially all its assets to, another entity (but without prejudice to any other right or remedy under this Agreement); and

(b)    a party may make such a transfer of all or any part of its interest in any amount payable to it from a Defaulting Party under Section 6(e).

Any purported transfer that is not in compliance with this Section will be void.

## 8.    Contractual Currency

(a)    *Payment in the Contractual Currency.* Each payment under this Agreement will be made in the relevant currency specified in this Agreement for that payment (the "Contractual Currency"). To the extent permitted by applicable law, any obligation to make payments under this Agreement in the Contractual Currency will not be discharged or satisfied by any tender in any currency other than the Contractual Currency, except to the extent such tender results in the actual receipt by the party to which payment is owed, acting in a reasonable manner and in good faith in converting the currency so tendered into the Contractual Currency, of the full amount in the Contractual Currency of all amounts payable in respect of this Agreement. If for any reason the amount in the Contractual Currency so received falls short of the amount in the Contractual Currency payable in respect of this Agreement, the party required to make the payment will, to the extent permitted by applicable law, immediately pay such additional amount in the Contractual Currency as may be necessary to compensate for the shortfall. If for any reason the amount in the Contractual Currency so received exceeds the amount in the Contractual Currency payable in respect of this Agreement, the party receiving the payment will refund promptly the amount of such excess.

(b)    *Judgments.* To the extent permitted by applicable law, if any judgment or order expressed in a currency other than the Contractual Currency is rendered (i) for the payment of any amount owing in respect of this Agreement, (ii) for the payment of any amount relating to any early termination in respect of this Agreement or (iii) in respect of a judgment or order of another court for the payment of any amount described in (i) or (ii) above, the party seeking recovery, after recovery in full of the aggregate amount to which such party is entitled pursuant to the judgment or order, will be entitled to receive immediately from the other party the amount of any shortfall of the Contractual Currency received by such party as a consequence of sums paid in such other currency and will refund promptly to the other party any excess of the Contractual Currency received by such party as a consequence of sums paid in such other currency if such shortfall or such excess arises or results from any variation between the rate of exchange at which the Contractual Currency is converted into the currency of the judgment or order for the purposes of such judgment or order and the rate of exchange at which such party is able, acting in a reasonable manner and in good faith in converting the currency received into the Contractual Currency, to purchase the Contractual Currency with the amount of the currency of the judgment or order actually received by such party. The term "rate of exchange" includes, without limitation, any premiums and costs of exchange payable in connection with the purchase of or conversion into the Contractual Currency.

(c)    *Separate Indemnities.* To the extent permitted by applicable law, these indemnities constitute separate and independent obligations from the other obligations in this Agreement, will be enforceable as separate and independent causes of action, will apply notwithstanding any indulgence granted by the party to which any payment is owed and will not be affected by judgment being obtained or claim or proof being made for any other sums payable in respect of this Agreement.

(d)    *Evidence of Loss.* For the purpose of this Section 8, it will be sufficient for a party to demonstrate that it would have suffered a loss had an actual exchange or purchase been made.

ISDA® 1992

9.   **Miscellaneous**

(a)   *Entire Agreement.* This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

(b)   *Amendments.* No amendment, modification or waiver in respect of this Agreement will be effective unless in writing (including a writing evidenced by a facsimile transmission) and executed by each of the parties or confirmed by an exchange of telexes or electronic messages on an electronic messaging system.

(c)   *Survival of Obligations.* Without prejudice to Sections 2(a)(iii) and 6(c)(ii), the obligations of the parties under this Agreement will survive the termination of any Transaction.

(d)   *Remedies Cumulative.* Except as provided in this Agreement, the rights, powers, remedies and privileges provided in this Agreement are cumulative and not exclusive of any rights, powers, remedies and privileges provided by law.

(e)   *Counterparts and Confirmations.*

(i)   This Agreement (and each amendment, modification and waiver in respect of it) may be executed and delivered in counterparts (including by facsimile transmission), each of which will be deemed an original.

(ii)   The parties intend that they are legally bound by the terms of each Transaction from the moment they agree to those terms (whether orally or otherwise). A Confirmation shall be entered into as soon as practicable and may be executed and delivered in counterparts (including by facsimile transmission) or be created by an exchange of telexes or by an exchange of electronic messages on an electronic messaging system, which in each case will be sufficient for all purposes to evidence a binding supplement to this Agreement. The parties will specify therein or through another effective means that any such counterpart, telex or electronic message constitutes a Confirmation.

(f)   *No Waiver of Rights.* A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

(g)   *Headings.* The headings used in this Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.

10.   **Offices; Multibranch Parties**

(a)   If Section 10(a) is specified in the Schedule as applying, each party that enters into a Transaction through an Office other than its head or home office represents to the other party that, notwithstanding the place of booking office or jurisdiction of incorporation or organisation of such party, the obligations of such party are the same as if it had entered into the Transaction through its head or home office. This representation will be deemed to be repeated by such party on each date on which a Transaction is entered into.

(b)   Neither party may change the Office through which it makes and receives payments or deliveries for the purpose of a Transaction without the prior written consent of the other party.

(c)   If a party is specified as a Multibranch Party in the Schedule, such Multibranch Party may make and receive payments or deliveries under any Transaction through any Office listed in the Schedule, and the Office through which it makes and receives payments or deliveries with respect to a Transaction will be specified in the relevant Confirmation.

11.   **Expenses**

A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees and Stamp Tax, incurred by such other party by reason of the enforcement and protection of its rights under this Agreement or any Credit Support Document

to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection.

12.    Notices

(a)    *Effectiveness.* Any notice or other communication in respect of this Agreement may be given in any manner set forth below (except that a notice or other communication under Section 5 or 6 may not be given by facsimile transmission or electronic messaging system) to the address or number or in accordance with the electronic messaging system details provided (see the Schedule) and will be deemed effective as indicated:—

    (i)    if in writing and delivered in person or by courier, on the date it is delivered;

    (ii)    if sent by telex, on the date the recipient's answerback is received;

    (iii)    if sent by facsimile transmission, on the date that transmission is received by a responsible employee of the recipient in legible form (it being agreed that the burden of proving receipt will be on the sender and will not be met by a transmission report generated by the sender's facsimile machine);

    (iv)    if sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), on the date that mail is delivered or its delivery is attempted; or

    (v)    if sent by electronic messaging system, on the date that electronic message is received,

unless the date of that delivery (or attempted delivery) or that receipt, as applicable, is not a Local Business Day or that communication is delivered (or attempted) or received, as applicable, after the close of business on a Local Business Day, in which case that communication shall be deemed given and effective on the first following day that is a Local Business Day.

(b)    *Change of Addresses.* Either party may by notice to the other change the address, telex or facsimile number or electronic messaging system details at which notices or other communications are to be given to it.

13.    Governing Law and Jurisdiction

(a)    *Governing Law.* This Agreement will be governed by and construed in accordance with the law specified in the Schedule.

(b)    *Jurisdiction.* With respect to any suit, action or proceedings relating to this Agreement ("Proceedings"), each party irrevocably:—

    (i)    submits to the jurisdiction of the English courts, if this Agreement is expressed to be governed by English law, or to the non-exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City, if this Agreement is expressed to be governed by the laws of the State of New York; and

    (ii)    waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party.

Nothing in this Agreement precludes either party from bringing Proceedings in any other jurisdiction (outside, if this Agreement is expressed to be governed by English law, the Contracting States, as defined in Section 1(3) of the Civil Jurisdiction and Judgments Act 1982 or any modification, extension or re-enactment thereof for the time being in force) nor will the bringing of Proceedings in any one or more jurisdictions preclude the bringing of Proceedings in any other jurisdiction.

(c)    *Service of Process.* Each party irrevocably appoints the Process Agent (if any) specified opposite its name in the Schedule to receive, for it and on its behalf, service of process in any Proceedings. If for any

ISDA® 1992

JAN 13 '05 17:20 FR GENERAL MOTORS    1212 418 3664 TO 914352674434    P.14

reason any party's Process Agent is unable to act as such, such party will promptly notify the other party and within 30 days appoint a substitute process agent acceptable to the other party. The parties irrevocably consent to service of process given in the manner provided for notices in Section 12. Nothing in this Agreement will affect the right of either party to serve process in any other manner permitted by law.

(d)    *Waiver of Immunities.* Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets (irrespective of their use or intended use), all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) relief by way of injunction, order for specific performance or for recovery of property, (iv) attachment of its assets (whether before or after judgment) and (v) execution or enforcement of any judgment to which it or its revenues or assets might otherwise be entitled in any Proceedings in the courts of any jurisdiction and irrevocably agrees, to the extent permitted by applicable law, that it will not claim any such immunity in any Proceedings.

## 14.    Definitions

As used in this Agreement:—

*"Additional Termination Event"* has the meaning specified in Section 5(b).

*"Affected Party"* has the meaning specified in Section 5(b).

*"Affected Transactions"* means (a) with respect to any Termination Event consisting of an Illegality, Tax Event or Tax Event Upon Merger, all Transactions affected by the occurrence of such Termination Event and (b) with respect to any other Termination Event, all Transactions.

*"Affiliate"* means, subject to the Schedule, in relation to any person, any entity controlled, directly or indirectly, by the person, any entity that controls, directly or indirectly, the person or any entity directly or indirectly under common control with the person. For this purpose, "control" of any entity or person means ownership of a majority of the voting power of the entity or person.

*"Applicable Rate"* means:—

(a)    in respect of obligations payable or deliverable (or which would have been but for Section 2(a)(iii)) by a Defaulting Party, the Default Rate;

(b)    in respect of an obligation to pay an amount under Section 6(e) of either party from and after the date (determined in accordance with Section 6(d)(ii)) on which that amount is payable, the Default Rate;

(c)    in respect of all other obligations payable or deliverable (or which would have been but for Section 2(a)(iii)) by a Non-defaulting Party, the Non-default Rate: and

(d)    in all other cases, the Termination Rate.

*"Burdened Party"* has the meaning specified in Section 5(b).

*"Change in Tax Law"* means the enactment, promulgation, execution or ratification of, or any change in or amendment to, any law (or in the application or official interpretation of any law) that occurs on or after the date on which the relevant Transaction is entered into.

*"consent"* includes a consent, approval, action, authorisation, exemption, notice, filing, registration or exchange control consent.

*"Credit Event Upon Merger"* has the meaning specified in Section 5(b).

*"Credit Support Document"* means any agreement or instrument that is specified as such in this Agreement.

*"Credit Support Provider"* has the meaning specified in the Schedule.

*"Default Rate"* means a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum.

**ISDA® 1992**

JAN 13 '05 17:21 FR GENERAL MOTORS     1212 418 3664 TO 913462674434     P.15

*"Defaulting Party"* has the meaning specified in Section 6(a).

*"Early Termination Date"* means the date determined in accordance with Section 6(a) or 6(b)(iv).

*"Event of Default"* has the meaning specified in Section 5(a) and, if applicable, in the Schedule.

*"Illegality"* has the meaning specified in Section 5(b).

*"Indemnifiable Tax"* means any Tax other than a Tax that would not be imposed in respect of a payment under this Agreement but for a present or former connection between the jurisdiction of the government or taxation authority imposing such Tax and the recipient of such payment or a person related to such recipient (including, without limitation, a connection arising from such recipient or related person being or having been a citizen or resident of such jurisdiction, or being or having been organised, present or engaged in a trade or business in such jurisdiction, or having or having had a permanent establishment or fixed place of business in such jurisdiction, but excluding a connection arising solely from such recipient or related person having executed, delivered, performed its obligations or received a payment under, or enforced, this Agreement or a Credit Support Document).

*"law"* includes any treaty, law, rule or regulation (as modified, in the case of tax matters, by the practice of any relevant governmental revenue authority) and *"lawful"* and *"unlawful"* will be construed accordingly.

*"Local Business Day"* means, subject to the Schedule, a day on which commercial banks are open for business (including dealings in foreign exchange and foreign currency deposits) (a) in relation to any obligation under Section 2(a)(i), in the place(s) specified in the relevant Confirmation or, if not so specified, as otherwise agreed by the parties in writing or determined pursuant to provisions contained, or incorporated by reference, in this Agreement, (b) in relation to any other payment, in the place where the relevant account is located and, if different, in the principal financial centre, if any, of the currency of such payment, (c) in relation to any notice or other communication, including notice contemplated under Section 5(a)(i), in the city specified in the address for notice provided by the recipient and, in the case of a notice contemplated by Section 2(b), in the place where the relevant new account is to be located and (d) in relation to Section 5(a)(v)(2), in the relevant locations for performance with respect to such Specified Transaction.

*"Loss"* means, with respect to this Agreement or one or more Terminated Transactions, as the case may be, and a party, the Termination Currency Equivalent of an amount that party reasonably determines in good faith to be its total losses and costs (or gain, in which case expressed as a negative number) in connection with this Agreement or that Terminated Transaction or group of Terminated Transactions, as the case may be, including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position (or any gain resulting from any of them). Loss includes losses and costs (or gains) in respect of any payment or delivery required to have been made (assuming satisfaction of each applicable condition precedent) on or before the relevant Early Termination Date and not made, except, so as to avoid duplication, if Section 6(e)(i)(1) or (3) or 6(e)(ii)(2)(A) applies. Loss does not include a party's legal fees and out-of-pocket expenses referred to under Section 11. A party will determine its Loss as of the relevant Early Termination Date, or, if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable. A party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets.

*"Market Quotation"* means, with respect to one or more Terminated Transactions and a party making the determination, an amount determined on the basis of quotations from Reference Market-makers. Each quotation will be for an amount, if any, that would be paid to such party (expressed as a negative number) or by such party (expressed as a positive number) in consideration of an agreement between such party (taking into account any existing Credit Support Document with respect to the obligations of such party) and the quoting Reference Market-maker to enter into a transaction (the "Replacement Transaction") that would have the effect of preserving for such party the economic equivalent of any payment or delivery (whether the underlying obligation was absolute or contingent and assuming the satisfaction of each applicable condition precedent) by the parties under Section 2(a)(i) in respect of such Terminated Transaction or group of Terminated Transactions that would, but for the occurrence of the relevant Early Termination Date, have

been required after that date. For this purpose, Unpaid Amounts in respect of the Terminated Transaction or group of Terminated Transactions are to be excluded but, without limitation, any payment or delivery that would, but for the relevant Early Termination Date, have been required (assuming satisfaction of each applicable condition precedent) after that Early Termination Date is to be included. The Replacement Transaction would be subject to such documentation as such party and the Reference Market-maker may, in good faith, agree. The party making the determination (or its agent) will request each Reference Market-maker to provide its quotation to the extent reasonably practicable as of the same day and time (without regard to different time zones) on or as soon as reasonably practicable after the relevant Early Termination Date. The day and time as of which those quotations are to be obtained will be selected in good faith by the party obliged to make a determination under Section 6(e), and, if each party is so obliged, after consultation with the other. If more than three quotations are provided, the Market Quotation will be the arithmetic mean of the quotations, without regard to the quotations having the highest and lowest values. If exactly three such quotations are provided, the Market Quotation will be the quotation remaining after disregarding the highest and lowest quotations. For this purpose, if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded. If fewer than three quotations are provided, it will be deemed that the Market Quotation in respect of such Terminated Transaction or group of Terminated Transactions cannot be determined.

*"Non-default Rate"* means a rate per annum equal to the cost (without proof or evidence of any actual cost) to the Non-defaulting Party (as certified by it) if it were to fund the relevant amount.

*"Non-defaulting Party"* has the meaning specified in Section 6(a).

*"Office"* means a branch or office of a party, which may be such party's head or home office.

*"Potential Event of Default"* means any event which, with the giving of notice or the lapse of time or both, would constitute an Event of Default.

*"Reference Market-makers"* means four leading dealers in the relevant market selected by the party determining a Market Quotation in good faith (a) from among dealers of the highest credit standing which satisfy all the criteria that such party applies generally at the time in deciding whether to offer or to make an extension of credit and (b) to the extent practicable, from among such dealers having an office in the same city.

*"Relevant Jurisdiction"* means, with respect to a party, the jurisdictions (a) in which the party is incorporated, organised, managed and controlled or considered to have its seat, (b) where an Office through which the party is acting for purposes of this Agreement is located, (c) in which the party executes this Agreement and (d) in relation to any payment, from or through which such payment is made.

*"Scheduled Payment Date"* means a date on which a payment or delivery is to be made under Section 2(a)(i) with respect to a Transaction.

*"Set-off"* means set-off, offset, combination of accounts, right of retention or withholding or similar right or requirement to which the payer of an amount under Section 6 is entitled or subject (whether arising under this Agreement, another contract, applicable law or otherwise) that is exercised by, or imposed on, such payer.

*"Settlement Amount"* means, with respect to a party and any Early Termination Date, the sum of:—

(a)    the Termination Currency Equivalent of the Market Quotations (whether positive or negative) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined; and

(b)    such party's Loss (whether positive or negative and without reference to any Unpaid Amounts) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result.

*"Specified Entity"* has the meaning specified in the Schedule.

ISDA® 1992

JAN 13 '05 17:22 FR GENERAL MOTORS          1212 418 2664 TO 912426674434          P.17

*"Specified Indebtedness"* means, subject to the Schedule, any obligation (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money.

*"Specified Transaction"* means, subject to the Schedule, (a) any transaction (including an agreement with respect thereto) now existing or hereafter entered into between one party to this Agreement (or any Credit Support Provider of such party or any applicable Specified Entity of such party) and the other party to this Agreement (or any Credit Support Provider of such other party or any applicable Specified Entity of such other party) which is a rate swap transaction, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar transaction (including any option with respect to any of these transactions), (b) any combination of these transactions and (c) any other transaction identified as a Specified Transaction in this Agreement or the relevant confirmation.

*"Stamp Tax"* means any stamp, registration, documentation or similar tax.

*"Tax"* means any present or future tax, levy, impost, duty, charge, assessment or fee of any nature (including interest, penalties and additions thereto) that is imposed by any government or other taxing authority in respect of any payment under this Agreement other than a stamp, registration, documentation or similar tax.

*"Tax Event"* has the meaning specified in Section 5(b).

*"Tax Event Upon Merger"* has the meaning specified in Section 5(b).

*"Terminated Transactions"* means with respect to any Early Termination Date (a) if resulting from a Termination Event, all Affected Transactions and (b) if resulting from an Event of Default, all Transactions (in either case) in effect immediately before the effectiveness of the notice designating that Early Termination Date (or, if "Automatic Early Termination" applies, immediately before that Early Termination Date).

*"Termination Currency"* has the meaning specified in the Schedule.

*"Termination Currency Equivalent"* means, in respect of any amount denominated in the Termination Currency, such Termination Currency amount and, in respect of any amount denominated in a currency other than the Termination Currency (the "Other Currency"), the amount in the Termination Currency determined by the party making the relevant determination as being required to purchase such amount of such Other Currency as at the relevant Early Termination Date, or, if the relevant Market Quotation or Loss (as the case may be), is determined as of a later date, that later date, with the Termination Currency at the rate equal to the spot exchange rate of the foreign exchange agent (selected as provided below) for the purchase of such Other Currency with the Termination Currency at or about 11:00 a.m. (in the city in which such foreign exchange agent is located) on such date as would be customary for the determination of such a rate for the purchase of such Other Currency for value on the relevant Early Termination Date or that later date. The foreign exchange agent will, if only one party is obliged to make a determination under Section 6(e), be selected in good faith by that party and otherwise will be agreed by the parties.  __

*"Termination Event"* means an Illegality, a Tax Event or a Tax Event Upon Merger or, if specified to be applicable, a Credit Event Upon Merger or an Additional Termination Event.

*"Termination Rate"* means a rate per annum equal to the arithmetic mean of the cost (without proof or evidence of any actual cost) to each party (as certified by such party) if it were to fund or of funding such amounts.

*"Unpaid Amounts"* owing to any party means, with respect to an Early Termination Date, the aggregate of (a) in respect of all Terminated Transactions, the amounts that became payable (or that would have become payable but for Section 2(a)(iii)) to such party under Section 2(a)(i) on or prior to such Early Termination Date and which remain unpaid as at such Early Termination Date and (b) in respect of each Terminated Transaction, for each obligation under Section 2(a)(i) which was (or would have been but for Section 2(a)(iii)) required to be settled by delivery to such party on or prior to such Early Termination Date and which has not been so settled as at such Early Termination Date, an amount equal to the fair market

JAN 13 '05 17:23 FR GENERAL MOTORS      1 212 418 3664 TO 912462674434      P.18

value of that which was (or would have been) required to be delivered as of the originally scheduled date for delivery, in each case together with (to the extent permitted under applicable law) interest, in the currency of such amounts, from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such Early Termination Date, at the Applicable Rate. Such amounts of interest will be calculated on the basis of daily compounding and the actual number of days elapsed. The fair market value of any obligation referred to in clause (b) above shall be reasonably determined by the party obliged to make the determination under Section 6(e) or, if each party is so obliged, it shall be the average of the Termination Currency Equivalents of the fair market values reasonably determined by both parties.

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

.Deutsche Bank AG. . . . . . . . . . . . . . .                . . . .General Motors Corporation
         (Name of Party)                                                (Name of Party)

By: . . . . . . . . . . . . . . . . . . . . . . . . . . . .        By: . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Name:                                                      Name:  Mark T. Greenquist
Title:   A. Zelzner  .        K. Ewert               Title:  Assistant Treasurer
Date:                                                      Date:

18                                              ISDA© 1992

JAN 13 '05 14:23 FR GENERAL MOTOR          8718 418 3554 TO 914248674434     P.19

SCHEDULE
to the
Master Agreement (Commodities)

dated as of August 11, 1998

between Deutsche Bank AG, a German corporation ("Party A"), and General Motors Corporation, a Delaware corporation ("Party B").

Part 1.    **Termination Provisions.**

(a)      "Specified Entity" means in relation to Party A for the purpose of:--

    Section 5(a)(v):            Not Applicable

    Section 5(a)(vi):           Not Applicable

    Section 5(a)(vii):          Not Applicable

    Section 5(b)(iv):           Not Applicable

                   and in relation to Party B for the purpose of:--

    Section 5(a)(v):            Not Applicable

    Section 5(a)(vi):           Not Applicable

    Section 5(a)(vii):          Not Applicable

    Section 5(b)(iv):           Not Applicable

(b)      "Specified Transaction" will have the meaning specified in Section 14 of this Agreement.

(c)      The "Cross Default" provisions of Section 5(a)(vi) will not apply to Party A and will not apply to Party B.

(d)      The "Credit Event Upon Merger" provisions of Section 5(b)(iv) will apply to Party A and Party B.

(e)      The "Automatic Early Termination" provision of Section 6(a) will not apply to Party A or Party B, provided, however, that where an Event of Default specified in Sections 5(a)(vii)(1), (3), (4), (5), (6), or, to the extent analogous thereto, (8) in respect of Party A or Party B is governed by a system of law which does not permit termination to take place after the occurrence of the relevant Event of Default, then the Automatic Early Termination provision of Section 6(a) will apply to Party A or Party B, as the case may be.

JAN 13 '05 14:23 FR GENERAL MOTOR     1 212 418 3564 TO 914382674434     P.20

(f)     Payments on Early Termination.  For the purpose of Section 6(c) of this Agreement and subject to the provisions of Part 5 of this Schedule:

   (i)      Loss will apply.

   (ii)     The Second Method will apply.

(g)     Termination Currency means United States Dollars.

   The definition of "Termination Currency Equivalent" in Section 14 is hereby amended by deleting, in its entirety, the text after the first three lines and replacing it with the following:

   "by the party making the relevant determination in any commercially reasonable manner as being required to purchase such amount of such Other Currency as at the relevant Early Termination Date, or, if the relevant Loss is determined as of a later date, such later date, for value on the date the payment or settled payment is due."

(h)     "Additional Termination Event" will not apply.

(i)     Early Termination.  The parties agree to amend Section 6(a) as follows:

   Notwithstanding anything to the contrary in Section 6(a), the parties agree that, except with respect to Transactions that are subject to Automatic Early Termination, the Non-Defaulting Party is not required to liquidate the Transactions on a single day, but rather may, in good faith to maximize the Settlement Amount of any or all such Transactions, liquidate the Transactions over a commercially reasonable period of time not to exceed 10 days (the "Early Termination Period").  The last day of the Early Termination Period shall be the Early Termination Date for purposes of Section 6; provided, however, that interest shall accrue on the Transactions liquidated during the Early Termination Period prior to the Early Termination Date at the Default Rate.

(j)     Interpretation.  Without limiting the applicability of any other provisions of the United States Bankruptcy Code (the "Bankruptcy Code") (including, without limitation, Sections 362, 546, 556, and 560 thereof and the applicable definitions in Sections 101 and 761 thereof), the parties acknowledge and agree that all Transactions entered into hereunder shall constitute "forward contracts" or "swap agreements" as defined in Section 101 of the Bankruptcy Code or "commodity contracts" as defined in Section 761 of the Bankruptcy Code.

2

JAN 13 '05 17:24 FR GENERAL MOTOR    1213 418 3554 TO 912482674434    P.21

Part 2. **Tax Representations.**

(a)    <u>Payer Representations</u>. For the purpose of Section 3(e) of this Agreement, Party A and Party B will make the following representation:

It is not required by any applicable law, as modified by the practices of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Section 2(e), 6(d)(ii), or 6(e) of this Agreement) to be made by it to the other party under this Agreement. In making this representation, it may rely on (i) the accuracy of any representations made by the other party pursuant to Section 3(f) of this Agreement, (ii) the satisfaction of the agreement contained in Section 4(a)(i) or (iii) of this Agreement and the accuracy and effectiveness of any document provided by the other party pursuant to Section 4(a)(i) or (iii) of this Agreement, and (iii) the satisfaction of the agreement of the other party contained in Section 4(d) of this Agreement, <u>provided</u> that it shall not be a breach of this representation where reliance is placed on clause (ii) and the other party does not deliver a form or document under Section 4(a)(iii) by reason of material prejudice to its legal or commercial position.

(b)    <u>Payee Representations</u>.

(1)    For the purpose of Section 3(f) of this Agreement, Party A represents that

(i) If Party A is acting through an office in the United States, each payment received or to be received by it in connection with this Agreement will be effectively connected with its conduct of a trade or business in the United States.

(2)    For the purpose of Section 3(f) of this Agreement, Party B represents that it is a corporation organized and existing under the laws of the State of Delaware.

Part 3. **Agreement to Deliver Documents**

For the purpose of Sections 4(a)(i) and (ii) of this Agreement, each party agrees to deliver the following documents, as applicable:

(a)    Tax forms, documents, or certificates to be delivered are: None, subject to Section 4(a)(iii) and the table below.

3

(b)    Other documents to be delivered are:

| Party Required to Deliver Document | Form/Document/ Certificate | Date for Delivery | Covered by Section 3(d) Representation |
|---|---|---|---|
| Party A | Evidence of the authority, incumbency and specimen signature of each person executing any document on its behalf or in connection with the Agreement, any Credit Support Document and any Confirmation. | Upon execution of this Agreement, any Credit Support Document and any Confirmation. | Yes |
| Party B | Certified copy of resolution of Board of Directors or its committee, authorizing Party B to enter into this Agreement and each Transaction, and an incumbency certificate. | As soon as practicable after execution of Agreement. | Yes |
| Party B | Copy of Form 10-K or the annual report for such party containing audited financial statements for the most recent fiscal year. | Upon request, as publicly available. | Yes |
| Party A | A copy of its most recent annual report containing consolidated financial statements, certified without qualification by independent public accountants, and such other public information respecting its condition or operations, financial or otherwise, as the other party may reasonable request from time to time. | Promptly after request by Party B. | Yes |

Part 4. **Miscellaneous.**

(a)  <u>Addresses for Notice</u>.  For purposes of Section 12(a) of this Agreement:

Address for notices or communications to Party A:

(i)  All notices to Party A under Sections 5 or 6 of the Agreement (other than notices under Section 5(a)(1)) shall be sent to:

Deutsche Bank AG, Head Office
Taunusanlage 12
60262 Frankfurt
Germany

| Attention: | Legal Department |
| Telex No.: | 411836 or 416731 or 41233 |
| Answerback: | DBF-D |
| Fax No.: | (49) (69) 910-38406 |

(ii)  All notices to Party A (other than those provided for in paragraph (i) above) shall be sent directly to the office through which Party A is acting for the relevant Transaction, using the address and contact particulars specified in the Confirmation.  If there is no address in the Confirmation, notices shall be sent to the address of the relevant office set out in Annex 1 to this Schedule.

Address for notices or communications to Party B:

| Address: | General Motors Corporation |
| | 767 Fifth Avenue, 14th Floor |
| | New York, New York  10153 |
| Attention: | Director of Domestic Finance |
| <u>Fax No.</u>: | (212) 418-6265 |
| <u>Telephone No.</u>: | (212) 418-6260 |

Any notice under the Agreement given by telephone will be sufficient if given to the telephone number for such party set forth above.

(b)  <u>Process Agent</u>.

With respect to Party A:  Deutsche Bank New York

With respect to Party B:  Not Applicable.

(c)  <u>Offices</u>.  The provisions of Section 10(a) will apply to this Agreement.

(d)  <u>Multibranch Party</u>.  For purposes of Section 10(c) of this Agreement:

5

Party A is a Multibranch Bank and may act through the following offices:

New York Branch, London Branch, Tokyo Branch, Paris Branch, Singapore Branch, Brussels Branch, Sydney Branch and Head Office, Frankfurt

Party B is not a Multibranch Bank.

(e)   Calculation Agent. The Calculation Agent shall be Party A, unless otherwise specified in a Confirmation in relation to the relevant Transaction.

(f)   Credit Support Documents. Not Applicable.

(g)   Credit Support Provider. Not Applicable.

(h)   Governing Law. This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York (without reference to its choice of law doctrine) other than Section 5-1401 of the General Obligation Law of the State of New York.

(i)   Netting of Payments. Subparagraph (ii) of Section 2(c) of this Agreement will not apply to any Transactions or groups of Transactions in each case starting from the date of this Agreement unless otherwise specified as applicable to a Transaction or group of Transactions in the relevant Confirmation(s).

(j)   Service of Process. With respect to the third sentence of Section 13(c) of this Agreement, notwithstanding the reference therein to Section 12 of this Agreement, no consent is given by either party to service of process by telex.

(k)   Consent to Telephone Recording. Each party (i) consents to the recording of the telephone conversations of trading and marketing personnel of the parties and their Affiliates in connection with this Agreement or any potential Transaction; (ii) agrees to obtain any necessary consent of and give notice of such recording to such personnel of it and its Affiliates; and (iii) agrees that recordings may be submitted in evidence in any Proceedings relating to this Agreement.

(l)   "Affiliate" will have the meaning specified in Section 14 of this Agreement.

## Part 5. **Other Provisions.**

(1)   Set Off. Without affecting the provisions of this Agreement requiring the calculation of certain net payment amounts, all payments under this Agreement will be made without setoff or counterclaim, except that each party to this Agreement (such party, "Party X") agrees that, upon an Early Termination Date resulting from an Event of Default or a Credit Event Upon Merger with respect to Party X the other party hereto (such other party, the "Non-Defaulting Party" or the "Non-Affected Party", as the case may be) may reduce any or all amounts owing to Party X under this Agreement or any other transactions between Party X and the Non-Defaulting Party or the Non-Affected Party or any Affiliate of such Party (whether or not then due) by setting off against such amounts any or all amounts to the Non-Defaulting Party or the Non-Affected Party or any Affiliate of such Party by Party X (whether or not then due); provided, that any amount not then due which is included in such setoff shall be discounted to present value as at the time of setoff (to take account of the period between the time of setoff and the date on which such amount would

6

otherwise have been due) at the Federal Funds Rate applicable for such period as determined by the Non-Defaulting Party or the Non-Affected Party or the Affiliate of such Party in a commercially reasonable manner. The rights provided by this paragraph are in addition to and not in limitation of any other right or remedy (including any right to setoff, counterclaim, or otherwise withhold payment) to which a party may be entitled (whether by operation of law, contract, or otherwise).

(2)     Definitions. The definitions and provisions contained in the 1993 Commodity Derivative Definitions and the 1998 Bullion Definitions (each as published by the International Swap Dealers Association, Inc.) and, to the extent not inconsistent therewith, the 1991 ISDA Definitions (published by the International Swap Dealers Association, Inc.) (together, the "Definitions") are hereby incorporated in this Agreement. In the event of any inconsistency (1) between the provisions of the Definitions and this Agreement, this Agreement will prevail, (2) between the provisions of a Confirmation and the Definitions, the Confirmation will prevail, and (3) between the provisions of a Confirmation and this Agreement, the Confirmation will prevail.

(3)     Change of Account. Section 2(b) is hereby amended by adding the following at the end thereof:

> "and provided that, unless the other party consents (which consent shall not be unreasonably withheld), such new account shall be in the same tax jurisdiction as the original account."

(4)     Agreements--Notices. Section 4(d) of this Agreement is hereby deleted in its entirety and replaced by the following:

> "(d) Notice. It will give notice of any failure of a representation made by it under Section 3(f) to be accurate and true promptly upon learning of such failure and it will give written notice of the occurrence of any Event of Default or Potential Event of Default promptly upon learning of such event."

(5)     Default Under Specified Transactions. The provisions of Section 5(a)(v) of this Agreement are modified by adding, immediately prior to the semicolon at the end thereof, the following:

> "provided, however, that it shall not constitute an Event of Default under Section 5(a)(v) if (A) such event of default or failure to pay arises in the ordinary course of business by mistake, oversight, or transfer difficulties and (B) such event of default or failure to pay is remedied on or before the fifth Local Business Day after the occurrence or existence of such event of default or failure to pay."

(6)     Two Affected Parties. If an Early Termination Date is designated pursuant to Sections 5(b)(i), (ii) or (iii) of this Agreement, both parties shall be deemed to be Affected Parties for the purpose of determining the Settlement Amount pursuant to Section 6(e)(ii) of this Agreement.

(7)     Credit Event Upon Merger. Section 5(b)(iv) is hereby deleted in its entirety and replaced by the following:

7

JAN 13 '05 17:25 FR GENERAL MOTOR       1212 418 3564 TO 914382674434       P.26

"(iv) Credit Event Upon Merger. If Credit Event Upon Merger is specified in the Schedule as applying to the party, such party ("X"), any Credit Support Provider of X or any applicable Specified Entity of X (A) consolidates or amalgamates with, or merges with or into, or transfers all or substantially all its assets to, another entity, (B) effectuates a complete recapitalization, liquidating dividend or leveraged buyout, or (C) reorganizes, incorporates or reconstitutes into or as another entity and, in any such event, such action does not constitute an event described in Section 5(a)(viii) but the creditworthiness of the resulting, surviving or transferee entity, or the reorganized, incorporated, or reconstituted entity, as the case may be, is materially weaker than that of X, such Credit Support Provider or such Specified Entity, as the case may be, immediately prior to such action (and, in such event, X or its successor or transferee, as appropriate, will be the Affected Party), provided that any transaction effected by Party B primarily for the purpose of eliminating either or both of the Class E Common Stock or the Class H Common Stock of Party B (including but not limited to transactions involving a spin-off of either or both of Electronic Data Systems, Inc. or Hughes Electronics Corporation) will not be deemed a "complete recapitalization" under subsection (B) of this Section.

(8)     Two-Way Payments. Section 6(d)(ii) is amended by inserting after the words "Applicable Rate" the following:

"as to an amount due by the Defaulting Party and at the Default Rate minus 1% per annum as to an amount due by the other party".

(9)     Payment Date During Transfer Period. If the parties are required by Section 6(b)(ii) to make efforts to transfer certain obligation under this Agreement in connection with a Termination Event, and a Payment Date (as defined in the related Confirmation) will occur under the relevant Affected Transaction during the period specified in Section 6(b) for those efforts, then the payment(s) due to be made on that Payment Date shall be postponed until the earlier of (i) the Business Day following the day on which a transfer is effected in consequence of such efforts; (ii) the Business Day following the day on which such period ends, if an Early Termination Date is not designated by a party on such day; and (iii) the Early Termination Date for the relevant Affected Transaction, with such postponed amounts then being treated as Unpaid Amounts. In either case, the postponed payment(s) shall bear interest (before as well as after judgment) at the Default Rate less 1% per annum from (and including) such Payment Date to (but excluding) the date of actual payment.

(10)    All Confirmations. The parties agree to be bound by the terms of any Transaction from the time they reach agreement (whether by telephone, by exchange of electronic messages, or otherwise.) The parties agree that they may from time to time confirm the terms and conditions of any Transaction entered into between them pursuant to the terms of this Agreement by means of an exchange of telexes or facsimile transmissions and any such exchange of telexes or facsimile transmissions shall constitute a Confirmation for all purposes hereunder. To avoid doubt, this Agreement relates to all Confirmations, whether by telex, facsimile or letter, entered between Party A and Party B on or after the date of this Agreement, including, without limitation, those entered into prior to actual execution of this Agreement.

(11)    Transfer. The consent referred to in Section 7 shall not (after consideration of any tax or other consequences to a party of consenting to such assignment) be unreasonably withheld.

8

JAN 13 '05 17:26 FR GENERAL MOTOR      1212 418 3564 TO 914348674434      P.27

(12)    Escrow. If (whether because of the time difference between the cities in which payments are to be made or otherwise) it is not possible for simultaneous payments to be made on any date on which both parties are required to make payments hereunder, either party may on two Business Days' notice elect for payments due to that date to be deposited in escrow. In such case, deposit of the payment due earlier on that date shall be made not later than 2:00 p.m. (local time at the place for the earlier payment) on that date with an escrow agent selected by the notifying party (and to which the other party has not raised a reasonable objection), accompanied by irrevocable payment instructions (i) to release the deposited payment to the intended recipient upon receipt by the escrow agent of the required deposit of the corresponding payment from the other party on the same date accompanied by irrevocable payment instructions to the same effect or (ii) if the required deposit of the corresponding payment is not made on that same date, to return the payment deposited to the party that paid it into escrow. The party that elects to have payments made in escrow shall pay all the costs of the escrow arrangements.

(13)    Representations.

(a) Non-Reliance, Etc. Each party will be deemed to represent to the other party on the date that it enters into a Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contract for that Transaction):

(i) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into that Transaction and as to whether that Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into that Transaction: it being understood that information and explanation related to the terms and conditions of a Transaction shall not be considered to be investment advice or a recommendation to enter into that Transaction. No communication(written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of that Transaction.

(ii) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent profession advice), and understands and accepts the terms and conditions of that Transaction. It is also capable of assuming, as assumes, the risks of that Transaction.

(iii) Status of Parties. The other party is not acting as a fiduciary for or adviser to it in respect of that Transaction.

JAN 13 '05 17:26 FR GENERAL MOTORS        1 212 418 3664 TO 914382674434        P.28

(14)    Additional Representations. Section 3(a) is amended by adding the following paragraph (vi), (vii), and (viii):

> "(vi)  No Agency. It is entering into this Agreement and each Transaction as principal (and not as agent or in any other capacity, fiduciary or otherwise).
>
> "(vii)  Eligible Swap Participant. It is an 'eligible swap participant' as that term is defined by the United States Commodity Futures Trading Commission in 17 C.F.R. §35.1(b)(2).
>
> "(viii)  Negotiated Terms. The material terms of this Agreement and each Transaction have been and will be individually tailored and negotiated."

(15)    Tax Provisions.

(a)  The definition of Tax Event, Section 5(b)(ii), is hereby modified by adding the following provision at the end thereof:

> "provided, however, that the parties acknowledge that the proposal of laws, regulations or guidelines, shall not, prior to the actual adoption or enactment thereof, constitute a Termination Event hereunder;"

(b)  The definition of term "Indemnifiable Tax" is amended by adding the following provisions at the end thereof:

> "Notwithstanding the foregoing, "Indemnifiable Tax" also means any Tax imposed in respect of a payment under this Agreement by reasons of a Change in Tax Law by a government or taxing authority of a Relevant Jurisdiction of the party making such payment, unless the other party is incorporated, organized, managed and controlled or considered to have its seat in such jurisdiction, or is acting for purposes of this Agreement through a branch or office located in such jurisdiction."

(16)    Condition Precedent. The condition precedent in Section 2(a)(iii)(1) of this Agreement does not apply to a payment and delivery owing by a party if the other party shall have satisfied in full all its payment or delivery obligations under Section 2(a)(ii) of this Agreement and shall at the relevant time have no future payment or delivery obligations, whether absolute or contingent, under Section 2(a)(i).

(17)    Severability. If any term, provision, covenant, or condition of this Agreement, or the application thereof to any party or circumstance, shall be held to be invalid or unenforceable (in whole or in part) for any reason, the remaining terms, provisions, covenants, and conditions hereof shall continue in full force and effect as if this Agreement had been executed with the invalid or unenforceable portion eliminated.

JAN 13 '05 17:27 FR GENERAL MOTORS    1 212 418 3664 TO 912482674434    P.29

Confirmed as of the date first written.

DEUTSCHE BANK AG

By:_____

Title:_____A. Zelzner_____


DEUTSCHE BANK AG

By:_____

Title:_____K. Ewert_____


GENERAL MOTORS CORPORATION

By: Mark T. Greenquist

Title:  Assistant Treasurer

ANNEX 1

NOTICE ADDRESSES FOR PARTY A

Where Party A is acting thorough its Frankfurt Head Office:

Deutsche Bank AG, Head Office
Taunusanlage 12
60262 Frankfurt
GERMANY
Attention: Trading & Sales/Evidenz
Tel: (49)(69) 910-33339
Fax: (49)(69) 910-38406
Telex No:        41730-701
Answerback:    41730-702 FMD


Where Party A is acting thorough its New York Branch:

Deutsche Bank AG, New York Branch
31 W. 52nd Street
New York, New York  10019
USA
Attention: Swap Group
Tel: (212) 474-8000
Fax: (212) 474-6753
Telex No:        429166
Answerback:    DEUTNYK


Where Party A is acting thorough its Singapore Branch:

Deutsche Bank AG, Singapore Branch
6, Shenton Way #15-08
DBS Building Tower Two
SINGAPORE 068809
Attention: Swap Group
Tel: (065) 224-4677
Fax: (065) 224-0897
Telex No:        RS 21189
Answerback:    DBFX


Where Party A is acting thorough its London Branch:

Deutsche Bank AG, London Branch
6, Bishopgate
London EC2P 2AT
UNITED KINGDOM
Attention: Swap Group
Tel: (44)(171) 971-7000
Fax: (44)(171) 971-7466
Telex No:        94015555
Answerback:    DBLNG


Where Party A is acting thorough its Tokyo Branch:

Deutsche Bank AG, Tokyo Branch
Deustche Bank Building
12-1, Toranomon 3-chome
Minato-ku, Tokyo 105
JAPAN
Attention:  Head of Derivatives
Tel: (81)(3) 5401-1986
Fax: (81)(3) 5401-6550
Telex No:        24814
Answerback:    DEUTBKTKJ


Where Party A is acting thorough its Paris Branch:

Deutsche Bank AG, Paris Branch
3, Avenue de Friedland
75008 Paris
FRANCE
Attention: Swap Group
Tel: (33)(1) 4495-6400
Fax: (33)(1) 5375-0701
Telex No:        644192
Answerback:    DEUTBANK

1

Where Party A is acting thorough its Sydney Branch:

Deutsche Bank AG, Sydney Branch
Level 18
Grosvenor Place
225 George Street
Sydney NSW 2000
AUSTRALIA
Attention: Settlements Manager, Treasury Division
Tel: (612) 258-1234
Fax: (612) 258-3632
Telex No:      AA122258
Answerback:    DBALFX

Where Party A is acting thorough its Brussels Branch:

Deutsche Bank AG, Brussels Branch
100 Bouleard du Souverain
1179 Brussels
BELGIUM
Attention: Corporate Department
Tel: (02) 674.37.11
Fax: (02) 672.23.71
Telex No:         63798

2

# EXHIBIT 3

# Deutsche Bank
Aktiengesellschaft



| | |
|---|---|
| Date: | April 23, 2004 |
| To: | General Motors Corporation |
| Attention: | Swaps Documentation Department |
| Facsimile no.: | 1 313-665-6275~ <br> 212 - 418-6419 |
| **Our Reference:** | **Global No. 893688L / 894686N** |
| **Re:** | **Interest Rate Swap Transaction** |

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between Deutsche Bank AG ("DBAG") and General Motors Corporation ("Counterparty") on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Definitions") as published by the International Swaps and Derivatives Association, Inc. are incorporated by reference herein. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

For the purpose of this Confirmation, all references in the Definitions or the Agreement to a "Swap Transaction" shall be deemed to be references to this Transaction.

1. This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of September 19, 2002, (as the same may be amended or supplemented from time to time, the "Agreement"), between DBAG and Counterparty. All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

2. The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Notional Amount: | EUR 100,000,000.00 |
| Trade Date: | April 23, 2004 |
| Effective Date: | April 27, 2004 |
| Termination Date: | July 3, 2013, subject to adjustment in accordance with the Modified Following Business Day Convention. |

**Fixed Amounts:**

| | |
|---|---|
| Fixed Rate Payer: | DBAG |
| Fixed Rate Payer Period End Dates: | The 3rd day of July of each year, commencing July 3, 2004, through and including the Termination Date with No Adjustment |
| Fixed Rate Payer Payment Dates: | The 3rd day of July of each year, commencing July 3, 2004, through and including the Termination Date |
| Fixed Rate: | 7.25% |
| Special Provisions regarding Fixed Amounts : | The Fixed Amount will be calculated in accordance with Rule 251 of the statutes, by-laws, rules and recommendations of the International Securities Market Association, as published in April 1999, as applied to straight and convertible bonds issued after December 31 1998, as though the Fixed Amount were the interest coupon on such a bond. |
| Fixed Rate Payer Business Days: | TARGET Settlement Day |
| Fixed Rate Payer Business Day Convention: | Modified Following |

**Floating Amounts:**

| | |
|---|---|
| Floating Rate Payer: | Counterparty |
| Floating Rate Payer Period End Dates: | The 3rd day of January, April, July and October of each year, commencing July 3, 2004, through and including the Termination Date |
| Floating Rate Payer Payment Dates: | The 3rd day of January, April, July and October of each year, commencing July 3, 2004, through and including the Termination Date |
| Floating Rate for initial Calculation Period: | 5.027% |
| Floating Rate Option: | EUR-EURIBOR-Telerate |
| Designated Maturity: | Three months, except with respect to the initial Calculation Period for which the Designated Maturity shall be the Linear Interpolation of the two month and three month |
| Spread: | Plus 2.971% |

| | |
|---|---|
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first Floating Rate Payer Business Day of each Calculation Period or Compounding Period, if Compounding is applicable. |
| Compounding: | Inapplicable |
| Floating Rate Payer Business Days: | TARGET Settlement Day |
| Floating Rate Payer Business Day Convention: | Modified Following |

3. **Account Details:**

    EUR DBAG Payment Instructions:

| | |
|---|---|
| Account With: | Deutsche Bank AG, Frankfurt |
| SWIFT Code: | DEUTDEFF |
| Favor Of: | Deutsche Bank AG, Frankfurt |
| Account Number: | 925464000 |

    EUR Counterparty Payment Instructions:
    **PLEASE PROVIDE**

4. **Offices:**

The Office of DBAG for this Transaction is New York.

The Office of Counterparty for this Transaction is Detroit.

5. **Calculation Agent:**                DBAG.

6. Please confirm that the foregoing correctly sets forth the terms of our agreement by having an authorized officer sign this Confirmation and return it via facsimile or e-mail to:

> Attention: Derivative Documentation
> Telephone: 212-250-4925
> Facsimile: 212-797-0779
> E-mail: Derivative.Documentation@db.com

This message will be the only form of Confirmation dispatched by us. If you wish to exchange hard copy forms of this Confirmation, please contact us.

Yours sincerely,

Deutsche Bank AG

By:

Name:
Authorized Signatory

By:

Name:
Authorized Signatory

Confirmed as of the date first written above:

General Motors Corporation

By:
Name:
Title:

DEUTSCHE BANK

JOB #995

| | DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | STATUS |
|---|---|---|---|---|---|---|---|
| 001 | 5/05 | 4:49P | TREASURY OPERATIONS | UF--S | 00'36" | 003 | OK |

# Deutsche Bank
Aktiengesellschaft

Date:                    April 23, 2004

To:                      General Motors Corporation

Attention:               Swaps Documentation Department
Facsimile no.:           1 313 665 6275
                         212 - 418 - 6419

Our Reference:           Global No. 893688L / 894686N

Re:                      **Interest Rate Swap Transaction**

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between Deutsche Bank AG ("DBAG") and General Motors Corporation ("Counterparty") on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Definitions") as published by the International Swaps and Derivatives Association, Inc. are incorporated by reference herein. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

For the purpose of this Confirmation, all references in the Definitions or the Agreement to a "Swap Transaction" shall be deemed to be references to this Transaction.

1. This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of September 19, 2002, (as the same may be amended or supplemented from time to time, the "Agreement"), between DBAG and Counterparty. All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

2. The terms of the particular Transaction to which this Confirmation relates are as follows:

Notional Amount:             EUR 100,000,000.00

Trade Date:                  April 23, 2004

Effective Date:              April 27, 2004

Termination Date:            July 3, 2013, subject to adjustment in accordance
                             with the Modified Following Business Day
                             Convention.

OCT 19 '04 11:21 FR GENERAL MOTOR 1212 418 3664 TO 8011442075459761 P.01/05

09-50026-mg Doc 6068-2 Filed 06/18/10 Entered 06/18/10 15:47:48 Exhibit P.02
Exhibits to Milin Declaration Pg 205 of 234

# Deutsche Bank

Aktiengesellschaft

| | |
|---|---|
| Date: | July 5, 2004 |
| To: | General Motors Corporation |
| Attention: | Swaps Documentation Department |
| Facsimile no.: | 1 212 418 6419 |
| Our Reference: | **Global No. 894686N** |
| Re: | **Interest Rate Swap Transaction** |

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between Deutsche Bank AG ("DBAG") and General Motors Corporation ("Counterparty") on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Definitions") as published by the International Swaps and Derivatives Association, Inc. are incorporated by reference herein. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

For the purpose of this Confirmation, all references in the Definitions or the Agreement to a "Swap Transaction" shall be deemed to be references to this Transaction.

1. This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of August 11, 1998, (as the same may be amended or supplemented from time to time, the "Agreement"), between DBAG and Counterparty. All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

2. The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Notional Amount: | EUR 100,000,000.00 |
| Trade Date: | April 23, 2004 |
| Effective Date: | April 27, 2004 |

OCT 19 '04 11:21 FR GENERAL MOTOR    1212 418 3664 TO 8011442075459761 P.02/05

JUL 12 2009 500264 mg DOC 6068-2 Filed 06/18/10 Entered 06/18/10 15:47:48 Exhibit    P.03
Exhibits to Milin Declaration    Pg 206 of 234

Termination Date:   With respect to (i) the Floating Rate Payer, July 3, 2013, subject to adjustment in accordance with the Modified Following Business Day Convention and (ii) the Fixed Rate Payer, July 3, 2013

**Fixed Amounts:**

Fixed Rate Payer:   DBAG

Fixed Rate Payer Period End Dates:   The 3rd day of July of each year, commencing July 3, 2004, through and including the Termination Date with No Adjustment

Fixed Rate Payer Payment Dates:   The 3rd day of July of each year, commencing July 3, 2004, through and including the Termination Date

Fixed Rate:   7.25%

Special Provisions regarding Fixed Amounts :   ACT/ACT (ISMA) The Fixed Amount will be calculated in accordance with Rule 251 of the statutes, by-laws, rules and recommendations of the International Securities Market Association, as published in April 1999, as applied to straight and convertible bonds issued after December 31 1998, as though the Fixed Amount were the interest coupon on such a bond.

Fixed Rate Payer Business Days:   TARGET Settlement Day, London and New York

Fixed Rate Payer Business Day Convention:   Modified Following

**Floating Amounts:**

Floating Rate Payer:   Counterparty

Floating Rate Payer Period End Dates:   The 3rd day of January, April, July and October of each year, commencing July 6, 2004, through and including the Termination Date

Floating Rate Payer Payment Dates:   The 3rd day of January, April, July and October of each year, commencing July 6, 2004, through and including the Termination Date

Floating Rate for initial Calculation Period:   5.0373% ~~5.027%~~ was 5.027%

Floating Rate Option:   EUR-EURIBOR-Telerate

| | |
|---|---|
| Designated Maturity: | Three months |
| Spread: | Plus 2.971% |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first Floating Rate Payer Business Day of each Calculation Period or Compounding Period, if Compounding is applicable. |
| Compounding: | Inapplicable |
| Floating Rate Payer Business Days: | TARGET Settlement Day, London and New York |
| Floating Rate Payer Business Day Convention: | Modified Following |

## 3. Account Details:

EUR DBAG Payment Instructions:

| | |
|---|---|
| Account With: | Deutsche Bank AG, Frankfurt |
| SWIFT Code: | DEUTDEFF |
| Favor Of: | Deutsche Bank AG, New York |
| Account Number: | 958409510 |

EUR Counterparty Payment Instructions:

| | |
|---|---|
| Account With: | Bank One, NA, London |
| SWIFT Code: | FNBCGB2X |
| Favor Of: | General Motors Corporation, NY |
| Account Number: | CMS 1005561 |

## 4. Offices:

The Office of DBAG for this Transaction is New York.

## 5. Calculation Agent:

The party specified as such in the Agreement, or if not specified therein, DBAG.

### 6. Representations

Counterparty, if it is a nonresident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate, represents that it is a foreign person for purposes of US Treasury regulations relating to information reporting and backup withholding.

Each party will be deemed to represent to the other party on the date on which it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) **Non-Reliance.** It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) **Assessment and Understanding.** It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

(iii) **Status of Parties.** The other party is not acting as a fiduciary for, or an adviser to it in respect of this Transaction.

OCT 19 '04 11:22 FR GENERAL MOTOR        1212 418 3664 TO 8011442075459761 P.05/05

JUL. 12 2009 5:00264 AM Doc 6068-2 CH Filed 06/18/10 2 Entered 06/18/10 15:44:48 64 Exhibit     P.06
Exhibits to Milin Declaration    Pg 209 of 234

7. Please confirm that the foregoing correctly sets forth the terms of our agreement by having an authorized officer sign this Confirmation and return it via facsimile or e-mail to:

> Attention: Derivative Documentation
> Telephone: 44 20 7547 4755
> Facsimile: 44 20 7545 9761
> E-mail: Derivative.Documentation@db.com

This message will be the only form of Confirmation dispatched by us. If you wish to exchange hard copy forms of this Confirmation, please contact us.

Yours sincerely,

Deutsche Bank AG

By:

Name:
Authorized Signatory

By:

Name:
Authorized Signatory

Confirmed as of the date first written above:

General Motors Corporation

By:
Name:    Joseph M Cash
Title:    Director   Treasury Ops .

# Deutsche Bank

Aktiengesellschaft

| Date: | March 9, 2005 |
|---|---|
| To: | General Motors Corporation |
| Attention:<br>Facsimile no.: | Swaps Documentation Department<br>1 212 418 6419 |
| **Our Reference:** | **Global No. N370596N** |
| **Re:** | **Interest Rate Swap Transaction** |

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between Deutsche Bank AG ("DBAG") and General Motors Corporation ("Counterparty") on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Definitions") as published by the International Swaps and Derivatives Association, Inc. are incorporated by reference herein. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

For the purpose of this Confirmation, all references in the Definitions or the Agreement to a "Swap Transaction" shall be deemed to be references to this Transaction.

1. This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of September 19, 2002, (as the same may be amended or supplemented from time to time, the "Agreement"), between DBAG and Counterparty. All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

2. The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Notional Amount: | USD 75,000,000.00 |
| Trade Date: | March 9, 2005 |
| Effective Date: | March 11, 2005 |
| Termination Date: | April 15, 2016 |

**Fixed Amounts:**

Fixed Rate Payer:                    DBAG

Fixed Rate Payer Period End Dates:   The 15th day of April and October of each year, commencing April 15, 2005, through and including the Termination Date with No Adjustment

| | |
|---|---|
| Fixed Rate Payer Payment Dates: | The 15th day of April and October of each year, commencing April 15, 2005, through and including the Termination Date |
| Fixed Rate: | 7.70% |
| Fixed Rate Day Count Fraction: | 30/360 |
| Fixed Rate Payer Business Days: | London and New York |
| Fixed Rate Payer Business Day Convention: | Modified Following |

**Floating Amounts:**

| | |
|---|---|
| Floating Rate Payer: | Counterparty |
| Floating Rate Payer Period End Dates: | The 15th day of January, April, July and October of each year, commencing April 15, 2005, through and including the Termination Date |
| Floating Rate Payer Payment Dates: | The 15th day of January, April, July and October of each year, commencing April 15, 2005, through and including the Termination Date |
| Floating Rate for initial Calculation Period: | 5.721% (inclusive of Spread) |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | Three months |
| Spread: | Plus 2.741% |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first Floating Rate Payer Business Day of each Calculation Period or Compounding Period, if Compounding is applicable. |
| Compounding: | Inapplicable |
| Floating Rate Payer Business Days: | London and New York |
| Floating Rate Payer Business Day Convention: | Modified Following |

3. **Account Details:**

USD DBAG Payment Instructions:
Account With:                           Deutsche Bank AG, New York
SWIFT Code:                             DEUTUS33
Favor Of:                               Deutsche Bank AG, New York
Account Number:                         100440170004

USD Counterparty Payment Instructions:
Account With:
SWIFT Code:
Favor Of:                               Citibank N.A. New York
Account Number:                         ABA #021-000-089

4. **Offices:**                         For the Account of: General Motors Corp.
                                        Account No. 0003-1878
The Office of DBAG for this Transaction is New York.     *Ref: Q174768 Int Rate Swap*

The Office of Counterparty for this Transaction is New York.

5. **Calculation Agent:**               The party specified as such in the Agreement, or if not
                                        specified therein, DBAG.

6. **Representations**

Counterparty, if it is a nonresident alien individual, foreign corporation, foreign partnership, foreign trust, or
foreign estate, represents that it is a foreign person for purposes of US Treasury regulations relating to
information reporting and backup withholding.

Each party will be deemed to represent to the other party on the date on which it enters into this Transaction
that (absent a written agreement between the parties that expressly imposes affirmative obligations to the
contrary for this Transaction):

(i) **Non-Reliance.** It is acting for its own account, and it has made its own independent decisions to enter
into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own
judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any
communication (written or oral) of the other party as investment advice or as a recommendation to enter
into this Transaction; it being understood that information and explanations related to the terms and
conditions of this Transaction shall not be considered investment advice or a recommendation to enter into
this Transaction. No communication (written or oral) received from the other party shall be deemed to be an
assurance or guarantee as to the expected results of this Transaction.

(ii) **Assessment and Understanding.** It is capable of assessing the merits of and understanding (on its own
behalf or through independent professional advice), and understands and accepts, the terms, conditions and
risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

(iii) **Status of Parties.** The other party is not acting as a fiduciary for, or an adviser to it in respect of this
Transaction.

MAR 31 '05 11:56 FR GENERAL MOTOR    1212 418 3664 TO 8011442075459761 P.04/04

Thu Mar 109 50626Vhg U0Doc 6068P2: Filed 06/18/10   Entered 06/18/10 15:47:48   Exhibit
N370596N                    Exhibits to Milin Declaration    Pg 213 of 234

7. Please confirm that the foregoing correctly sets forth the terms of our agreement by having an authorized officer sign this Confirmation and return it via facsimile or e-mail to:

    Attention: Derivative Documentation
    Telephone: 44 20 7547 4755
    Facsimile: 44 20 7545 9761
    E-mail: Derivative.Documentation@db.com

This message will be the only form of Confirmation dispatched by us. If you wish to exchange hard copy forms of this Confirmation, please contact us.

Yours sincerely,

Deutsche Bank AG

By:

Name:   Gaby Bolton
Authorized Signatory

By:

Name:   Jamie Hunt
Authorized Signatory

Confirmed as of the date first written above:

General Motors Corporation

By:
Name:
Title:

# EXHIBIT 4

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01258

Adv. Case No. 08-01743

Adv. Case No. 09-01242

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

Debtor.

- - - - - - - - - - - - - - - - - - - -x

NEUBERGER BERMAN, LLC,

Plaintiff,

-against-

PNC BANK, NATIONAL ASSOCIATION,

LEHMAN BROTHERS INC., AND LEHMAN

BROTHERS COMMERICAL CORPORATION,

Defendants.

- - - - - - - - - - - - - - - - - - - -x

2

1    - - - - - - - - - - - - - - - - - - - -x

2    STATE STREET BANK AND TRUST COMPANY,

3                    Plaintiff,

4    LEHMAN COMMERCIAL PAPER INC.,

5            -against-

6                    Defendant.

7    - - - - - - - - - - - - - - - - - - - -x

8    LEHMAN BROTHERS SPECIAL FINANCING INC.,

9                    Plaintiff,

10   BNY CORPORATE TRUSTEE SERVICES, LTD.,

11           -against-

12                   Defendant.

13   - - - - - - - - - - - - - - - - - - - -x

14

15               U.S. Bankruptcy Court

16               One Bowling Green

17               New York, New York

18

19               September 15, 2009

20               10:03 a.m.

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25

3

1

2    RE: CASE NOS. 08-13555(JMP) and 08-01420(JMP)(SIPA)

3    HEARING re Interim Applications for Allowance of Compensation

4    for Professional Services Rendered and for Reimbursement of

5    Actual and Necessary Expenses [Docket No. 4839]

6

7    HEARING re Motion of Wells Fargo, NA for Relief from the

8    Automatic Stay [Docket No. 4640]

9

10   HEARING re Motion of Wells Fargo, NA for Relief from the

11   Automatic Stay [Docket No. 4671]

12

13   HEARING re Motion of Washington Mutual Bank f/k/a Washington

14   Mutual Bank, FA. For Relief from the Automatic Stay [Docket No.

15   4759]

16

17   HEARING re Motion of A/P Hotel, LLC for Relief from the

18   Automatic Stay [Docket No. 4950]

19

20   HEARING re Motion for Authorization to Assume an Interest Rate

21   Swap with MEG Energy Corp. [Docket No. 5012]

22

23

24

25

4

1

2     HEARING re Debtors' Motion for Establishment of Procedures for

3     the Debtors to Transfer Their Interests in Respect of

4     Residential and Commercial Loans Subject to Foreclosure to

5     Wholly-Owned Non-Debtor Subsidiaries [Docket No. 4966]

6

7     HEARING re Debtors' Motion for Establishment of Procedures for

8     the Debtors to Compromise Claims of the Debtors in Respect of

9     Real Estate Loans [Docket No. 4942]

10

11    HEARING re Motion of Landwirtschaftliche Rentenbank for 2004

12    Examination [Docket No. 4800]

13

14    HEARING re Debtors' Motion for Authorization to Implement

15    Alternative Dispute Resolution Procedures for Affirmative

16    Claims of Debtors Under Derivative Contracts [Docket No. 4453]

17

18    HEARING re Debtors' Motion to Compel Performance of Metavante

19    Corporation's Obligations Under an Executory Contract and to

20    Enforce the Automatic Stay [Docket No. 3691]

21

22    HEARING re Motion of DnB Nor Bank ASA for Allowance and Payment

23    of Administrative Expense Claim and Allowing Setoff of Such

24    Claim [Docket No. 4054]

25

5

1

2    HEARING re Motion of William Kuntz, III for Review of Dismissal

3    of Appeal [Docket No. 1261]

4

5    RE: ADV. CASE NO. 09-01258:

6    PRE-TRIAL CONFERENCE

7

8    RE: ADV. CASE NO. 08-01743:

9    PRE-TRIAL CONFERENCE

10

11   RE: ADV. CASE NO. 09-01242:

12   Motion of BNY Corporate Trustee Services Limited to Stay

13   Further Proceedings Pending Disposition of its Motion for Leave

14   to Appeal the August 12, 2009 Order Denying BNY's Motion to

15   Dismiss and any Disposition of the Merits of that Appeal

16

17

18

19

20

21

22

23

24   Transcribed by:  Clara Rubin

25                    Pnina Eilberg

99

1    that it has been presented and will make some judgments as to

2    the identity of the mediators in consultation with counsel for

3    the debtors and for the creditors' committee who have been so

4    active in developing these procedures.

5         I recognize that a lot of people who are in court at

6    this moment are here for the ADR procedures, and I'm going to

7    give people who want to leave an opportunity to leave.  I'm

8    also going to give everybody an opportunity for a break.  But

9    because of the congestion of this docket, I think I'm going to

10   go until 1 o'clock.  So let's take a break for ten minutes, and

11   then resume, and then go until 1 o'clock and then break for

12   lunch.  We're adjourned until then.

13        MR. GRUENBERGER:  Thank you, Your Honor.

14   (Recess from 12:12 p.m. to 12:28 p.m.)

15        THE COURT:  Be seated please.  Number 11, Metavante.

16        MR. SLACK:  Your Honor, Richard Slack from Weil,

17   Gotshal for the debtors.  We're here on the debtors' motion to

18   compel performance of Metavante Corporation.  As Your Honor

19   knows, two months ago we had argument, after fully briefing the

20   issue.  Your Honor is in receipt of letters from both

21   Metavante's counsel and from the debtors, which I think

22   provides the status of where we are in terms of discussions,

23   which is, essentially, that the parties have not had

24   substantial discussions, as the letters which are docketed

25   state.

100

1           The debtors were requested to make a proposal to

2     resolve it, which we did.  We have not received a proposal from

3     Metavante in the two months since the hearing, and Metavante

4     has not responded to our proposal that we've made.

5           Your Honor has mentioned Metavante a couple of times

6     today, and so Your Honor may have a plan for the conference,

7     but it is the debtors' position that this matter should be

8     considered and decided, at the Court's discretion, obviously.

9           THE COURT:  Understood.  I'm ready to rule today.

10          MR. ARNOLD:  May it please the Court, mindful of that

11    comment, I want you to know why we wrote the letter, so that

12    you have in mind that parties do take into account the risks of

13    not settling, and you were quite clear at the hearing on July

14    14th that there was an opportunity for the parties to consider

15    resolving this matter.

16          For the Court's information, neither Lehman nor its

17    counsel have been obdurate, ornery, or in any fashion

18    unprofessional.  Our dealings have been quite, to the contrary,

19    exceptional throughout the history of our relationships.  I

20    reached out to counsel for the debtors to explain how it is

21    that an impending transaction which will close on October 1st

22    would, in my judgment, have a favorable impact on the

23    likelihood of this matter resolving consensually.  That was the

24    singular purpose for us writing the letter to the Court.  We

25    are not here today to reargue the motion.  The Court heard

1    extensive oral argument.  It has been well briefed.  The issues

2    have come up again in, frankly, in other instances and motions

3    and adversary proceedings.  I wanted the Court to know that it

4    was not by design, neglect or deliberately ignoring your

5    comments on July 14th that the settlement has not proceeded

6    further than it has.  About a week ago we received a settlement

7    proposal.  I am authorized to state by both Fidelity and

8    Metavante that post-closing of the merged entity we expect to,

9    and intend to, and will make a settlement proposal, but we're

10   also mindful that it hasn't been settled, and if it is the

11   Court's desire to rule on the matter today, we govern ourselves

12   accordingly.  I just wanted the Court to know what I've done

13   since July 14th to try to move this matter on.

14          THE COURT:  Okay.  Thank you for that update.

15          MR. ARNOLD:  Thank you, Your Honor.

16          THE COURT:  The Metavante matter consumed the better

17   part of an afternoon's oral argument.  My best recollection is

18   that we specially listed it on the afternoon before the July

19   omnibus hearing.  Candidly, I don't recall why it was specially

20   listed all by itself, but it's just as well that it happened,

21   because it took a lot of time.

22          It's correct that I encouraged the parties to attempt

23   to resolve this consensually, and I appreciate the fact that

24   large enterprises, particularly those that are involved in

25   major transactions in which acquisitions are literally weeks

102

1     away from being consummated, may be distracted or may have

2     other priorities.  But I also believe that when I suggested

3     that this be listed for the September 15th omnibus hearing it

4     was with the notion that, in effect, time would be up.

5          I'm also mindful of the fact that on today's calendar

6     a matter very similar to this, item 6, has been consensually

7     resolved, involving the payment of fifty percent more dollars

8     to the debtors than are at issue in this current dispute.

9          I am prepared to rule and will do so now.  Recognize

10    that what I'm about to do will take some time and will probably

11    take us to the lunch hour.  If there is anyone here who doesn't

12    want to hear the ruling in this case I'd like you to be free to

13    both leave, because I won't be offended, or, if at some point

14    during my rendition of this ruling you say to yourself this is

15    something I don't need to hear, you're also free to leave at

16    that point.

17         LBSF requests that the Court compel Metavante to

18    perform its obligations under that certain 1992 ISDA Master

19    Agreement dated as of November 20, 2007, defined as the "Master

20    Agreement".  And that certain trade confirmation dated December

21    4, 2007, defined as the "Confirmation", and together with the

22    Master Agreement, the "Agreement".

23         The Master Agreement provides the basic terms of the

24    parties' contractual relationship and contemplates being

25    supplemented by trade confirmations that provide the economic

103

1    terms of the specific transactions agreed to by the parties.

2    Under the Master Agreement, Metavante and LBSF entered into an

3    interest rate swap transaction, the terms of which were

4    documented pursuant to the Confirmation.

5         LBHI is a credit support provider for LBSF's payment

6    obligations under the Agreement.

7         Due to declining interest rates the value of LBSF's

8    position under the Agreement has increased.  As of May 2009,

9    under the payment terms of the Agreement, Metavante owed LBSF

10   in excess of 6 million dollars, representing quarterly payments

11   due November, 2008, February, 2009 and May, 2009, plus default

12   interest in excess of 300,000 dollars.

13        It is possible that due to current market conditions

14   and to the quarterly payment schedule prescribed by the

15   Agreement the amounts that Metavante owes to LBSF as of today

16   are even higher than those stated in the motion.  Metavante has

17   refused to make any payments to LBSF.  In fact, it has refused

18   to perform its obligations under the Agreement, as of November

19   3, 2008.  Instead, Metavante claims that LBSF and LBHI, via the

20   filing of their respective Chapter 11 cases, each caused an

21   event of default under the Agreement.

22        Metavante argues that due to such events of default it

23   has the right, but not the obligation, under the safe harbor

24   provisions of the Bankruptcy Code, to terminate all outstanding

25   derivative transactions under the Agreement.  Metavante also

1   maintains that it is not otherwise required to perform under

2   the Agreement.

3        The parties presented their arguments to the Court at

4   a hearing held on July 14, 2009.  Notably at the hearing

5   counsel to Metavante stated that, quote, "the opportunity to

6   settle the matter", is a possibility.  The reference in the

7   transcript is page 58, lines 18 to 19.  The Court took the

8   matter under advisement and suggested that it be calendared for

9   the September 15, 2009 omnibus hearing for purposes of either a

10  bench ruling or a status conference on any progress the parties

11  may have made towards a resolution.

12       I want to make clear that I am proceeding with this

13  ruling because I view the letter described by counsel for

14  Metavante, which talked about a possible settlement

15  counterproposal occurring sometime after the closing of a

16  merger on October 1, as being an insufficient commitment to a

17  timely settlement.

18       On September 14, 2009 the Court received letters from

19  counsel to each of the parties.  Counsel to Metavante requests

20  an adjournment to October 14.  Counsel states that an

21  adjournment will facilitate the parties' settlement

22  negotiations but explains that Metavante may not make a

23  counterproposal to LBSF's September 5, 2009 settlement proposal

24  until after the proposed October 1, 2009 closing of a merger.

25  Counsel also suggests that an adjournment will allow the Court

105

1   to put the motion on the same track as two other motions

2   currently pending before the Court.  Which motions, counsel

3   claims, raise similar issues to the motion?  Counsel to LBSF

4   and LBHI maintain that inasmuch as Metavante has done nothing

5   since July 14, 2009 to settle this matter other than asking

6   LBSF and LBHI to make a settlement proposal, the parties are no

7   closer to settlement than they were at the hearing, and,

8   therefore, the status conference should go forward as planned.

9        While each of the matters reference by counsel to

10  Metavante may have overlapping issues with those presented in

11  the current dispute, each matter involves its own distinct set

12  of fats.  Moreover, each of the two referenced matters is in

13  its infancy.  No response has been filed in either one, which

14  may further delay resolution here.

15       This is a dispute that has been fully briefed and

16  argued and is ripe for determination.  Moreover, I note that

17  the settlement that was achieved with MEG Energy that was

18  referenced this morning indicates that parties who are willing

19  to settle can, and do.

20       Under the Agreement LBSF is obligated to pay the

21  floating three month USD LIBOR BBA interest rate on a notional

22  amount of 600 million dollars, which notional amount declines

23  over time, beginning in May, 2010.  Metavante, in turn, is

24  obligated to pay a fixed interest rate, 3.865 percent, on the

25  notional amount.  The Agreement is set to expire on February 1,

106

1    2012.  The Agreement defines event of default to include the

2    bankruptcy of any party or credit support provider.  Under the

3    terms of the Agreement, upon an event of default the non-

4    defaulting party may designate an early termination date.  Upon

5    termination a final payment is calculated and paid in order to

6    put the parties into the same economic position as if the

7    termination had not occurred.

8         In the instant case Metavante has refused to perform

9    under the Agreement on account of the event of default that has

10   occurred, and is continuing, on account of the bankruptcies of

11   LBSF and LBHI.  Metavante has not, however, attempted to

12   terminate the Agreement.  Instead, Metavante entered into a

13   replacement hedge covering the period from November 3, 2008

14   through February 1, 2010.

15        LBSF and LBHI argue that the Agreement is an executory

16   contract because material performance, specifically payment

17   obligations, remain due by both LBSF and Metavante.  Under

18   Bankruptcy Code Section 365(a) a debtor in possession may,

19   "subject to the court's approval, assume or reject any

20   executory contract".  The case law makes clear, however, that

21   while a debtor determines whether to assume or reject an

22   executory contract the counterparty to such contract must

23   continue to perform.

24        LBSF and LBHI further argue that the safe harbor

25   provisions do not excuse Metavante's failure to perform.

1    Indeed, the safe harbor provisions permit qualifying non-debtor

2    counterparties to derivative contracts to exercise certain

3    limited contractual rights triggered by, among other things, a

4    Chapter 11 filing.  They're available, however, only to the

5    extent that a counterparty seeks to one, liquidate, terminate

6    or accelerate its contracts or two, net out its positions.  All

7    other uses of ipso facto provisions remain unenforceable under

8    the Bankruptcy Code.

9          Notably, Metavante does not dispute that it has failed

10   to perform under the Agreement.  Instead, Metavante argues that

11   the occurrence of an event of default under the Agreement gives

12   rise to its right, as the non-defaulting party, to terminate

13   under the safe harbor provisions.  According to Metavante the

14   occurrence of an event of default does not, however, create the

15   obligation for it to terminate under the safe harbor

16   provisions.  Metavante emphasizes the term, quote, "condition

17   precedent" set forth in Sections 2(a), 1 and 3 of the

18   Agreement, which subject payment obligations to the condition

19   precedent that no event of default with respect to the party

20   has occurred and is continuing.

21         Metavante argues that under New York State contract

22   law a failure of a condition precedent excuses a party's

23   obligation to perform.  Metavante states that its unequivocal

24   right to suspend payments until the termination of the

25   Agreement is fundamental to the manner in which swap parties

108

1    government themselves.  Metavante takes issue with LBSF and

2    LBHI in asking the Court to treat the Agreement like a garden

3    variety executory contract, arguing that it cannot be compelled

4    to pay because LBSF and LBHI cannot provide the essential item

5    of value Metavante bargained for, namely an effective

6    counterparty.

7         Metavante further argues on information and belief

8    that LBSF and LBHI also are in default under certain

9    unspecified indebtedness that allegedly may have created a

10   cross default under the Agreement, asserting, as a result, an

11   alleged need to engage in the discovery process.

12        It is clear that the filing of bankruptcy petitions by

13   LBHI and LBSF constitute events of default under the Agreement.

14   Specifically, Section 5(a)(vii) of the Agreement provides that

15   it shall constitute an event of default should a party to the

16   Agreement or any credit support provider of such party

17   institute a proceeding seeking a judgment of insolvency or

18   bankruptcy, or any other relief under any bankruptcy insolvency

19   law or similar law affecting creditors' rights.

20        Section 2(a)(i) and 3 of the Agreement, in turn,

21   subject payment obligations to the condition precedent that no

22   event of default with respect to the other party has occurred

23   and is continuing.  It is also clear, however, that the safe

24   harbor provisions, primarily Bankruptcy Code Sections 560 and

25   561, protect a non-defaulting swap counterparty's contractual

1   rights solely to liquidate, terminate or accelerate one or more

2   swap agreements because of a condition of the kind specified in

3   Section 365(e)(1), or to "offset or net out any termination

4   values or payment amounts arising under or in connection with

5   the termination, liquidation or acceleration of one or more

6   swap agreements".  That language comes from Section 560.

7       In the instant matter Metavante has attempted neither

8   to liquidate, terminate or accelerate the Agreement, nor to

9   offset or net out its position as a result of the events of

10  default caused by the filing of bankruptcy petitions by LBHI

11  and LBSF.  Metavante simply is withholding performance, relying

12  on the conditions precedent language in Sections 2(a)(i) and

13  (iii) under the Agreement.

14      The question presented in this matter and the issue

15  that was argued by the parties at the hearing is whether

16  Metavante's withholding of performance is permitted, either

17  under the safe harbor provisions or under terms of the

18  Agreement itself.  It is not.

19      Although complicated at its core the Agreement is, in

20  fact, a garden variety executory contract, one for which there

21  remains something still to be done on both sides.  Each party

22  to the Agreement still is obligated to make quarterly payments

23  based on a floating or fixed interest rate of a notional

24  amount, it being understood that the net obligor actually makes

25  a payment after the parties respective positions are calculated

1   on a quarterly basis, in February, May, August and November of

2   each calendar year.

3        Under relevant case law it is clear that while an un-

4   assumed executory contract is not enforceable against a debtor,

5   see NLRB v. Bildisco & Bildisco, 465 US 513 at 531, such a

6   contract is enforceable by a debtor against the counterparty.

7   See McLean Industries, Inc. v. Medical Laboratory Automation,

8   Inc., 96 B.R. 440 at 449 (Bankr. S.D.N.Y. 1989).  Metavante

9   relies on In re Lucre, Inc., 339 BR 648 (WD Mich.) for the

10  proposition that a debtor's uncured pre-petition breach of its

11  executory contract, here the event of default caused by the

12  bankruptcy filings of LBHI and LBSF, will, in and of itself,

13  justify continued nonperformance by the non-debtor

14  counterparty, and mere commencement of bankruptcy proceedings

15  and the imposition of the automatic stay does not empower the

16  debtor to compel performance from a non-debtor party.

17       The Court rejects the Lucre decision as nonbinding and

18  non-persuasive.  While Metavante's argument for the events of

19  default caused by the bankruptcy filings of LBHI and LBSF do

20  create an obligation for it to terminate the Agreement under

21  the safe harbor provisions, that's a tenable argument.  Its

22  conduct of riding the market for the period of one year, while

23  taking no action whatsoever, is simply unacceptable and

24  contrary to the spirit of these provisions of the Bankruptcy

25  Code.

111

1          First, inasmuch as the Bankruptcy Code trumps any

2     state law excuse of nonperformance, Metavante's reliance on New

3     York contract law is misplaced.  Moreover, legislative history

4     evidences Congress's intent to allow for the prompt closing out

5     or liquidation of open accounts upon the commencement of a

6     bankruptcy case.  Citation is to the Congressional history of

7     this, H.R. Rep. 97-420 at 1 (1982), as well as its stated

8     rationale that the immediate termination for default and the

9     netting provisions are critical aspects of swap transactions

10    and are necessary for the protection of all parties in light of

11    the potential for rapid changes in the financial markets.

12    Citation to the Senate Report number 101-285 at 1 (1990).

13         The safe harbor provisions specifically permit

14    termination solely, quote, "because of a condition of the kind

15    specified in Section 365(e)(1) that is the insolvency or

16    financial condition of the debtor and the commencement of a

17    bankruptcy case.  See also In re Enron Corp., 2005. WL 3874285,

18    at *4, Judge Gonzalez's case, 2005.  Noting that a

19    counterparty's action under the safe harbor provisions must be

20    made fairly contemporaneously with the bankruptcy filing, less

21    the contract be rendered just another ordinary executory

22    contract.

23         The Court finds that Metavante's window to act

24    promptly under the safe harbor provisions has passed, and while

25    it may not have had the obligation to terminate immediately

1    upon the filing of LBHI or LBSF, its failure to do so, at this

2    juncture, constitutes a waiver of that right at this point.

3         Metavante's references to defaults under certain

4    unspecified indebtedness that allegedly may have created a

5    cross default under the Agreement are of no moment.  First,

6    Metavante failed to set forth the basis, either in its papers

7    or at the hearing, for its information and belief that such a

8    default may have occurred.  Its assertion that such a default

9    may have occurred indicates that Metavante is not aware of any

10   such default, and, therefore, did not rely on that default in

11   its refusal to perform under the Agreement or lacks knowledge

12   of what that default may be.

13        Additionally, the argument that LBSF or LBHI may have

14   defaulted under other specified indebtedness, as that term is

15   defined in the Agreement, relies upon the financial condition

16   of bankruptcy debtors to withhold performance.  That is also

17   unenforceable as an ipso facto clause that may not be enforced

18   under the Bankruptcy Code Section 365(e)(1)(A).

19        LBSF and LBHI are entitled to continued receipt of

20   payments under the Agreement.  Metavante's attempts to control

21   LBSF's right to receive payment under the Agreement constitute,

22   in effect, an attempt to control property of the estate.  See

23   In re Enron Corp., 300 B.R. 201 at 212 (S.D.N.Y. 2003),

24   recognizing that contract rights are property of the estate and

25   that therefore those rights are protected by the automated

113

1     stay.

2          This is a violation of the automatic stay imposed by

3     Code Section 362.  Accordingly, for the reasons set forth in

4     LBSF's and LBHI's papers, for the reasons stated on the record

5     at the hearing and for the reasons stated on the record today,

6     pursuant to Bankruptcy Code Sections 105(a), 362 and 365,

7     Metavante is directed to perform under the Agreement until such

8     time as LBSF and LBHI determine whether to assume or reject.

9     That's the ruling of the Court.

10         MR. KRASNOW:  Good afternoon, Your Honor.  Richard

11    Krasnow, Weil, Gotshal & Manges, for the Chapter 11 debtors.

12    We are close to the end of this morning's agenda, but not quite

13    there as yet.  The next item, Your Honor, is number 12.  It is

14    the motion of DnB Nor Bank described in the agenda.  Your

15    Honor, that matter has been fully submitted to the Court, fully

16    briefed, arguments held on November 5th, and today is the

17    scheduled status conference.

18         THE COURT:  Okay.  I'm ready to rule on that, but

19    given the hour I'm not going to take the time to do that now.

20    But we'll issue a short memorandum in due course.  So as to not

21    create any undue suspense for those parties who are here in

22    connection with the DnB Nor matter, I am deciding that in favor

23    of the debtors and against DnB Nor, denying DnB Nor's motion

24    for allowance of an administrative expense claim, substantially

25    for the reasons set forth in the committee's papers.