**Hearing Date and Time: June 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.,*                   :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*               :   (Jointly Administered)
                                                        :
                            Debtors.                    :   Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO
SECOND INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**

**TO:   THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Second Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1, 2009 through January 31, 2010* [Docket No. 5279] (the "**Second Fee Application**"). With this *Report and Statement of Limited Objection,* the Fee Examiner identifies certain objectionable fees and expenses requested in the Second Fee Application, which requests a total of $2,085,422.18. The Fee Examiner respectfully represents:

**SUMMARY STATEMENT**

After reviewing the Second Fee Application, counsel for the Fee Examiner raised a series of concerns about the application by letter dated June 7, 2010 to FTI Consulting, Inc. ("**FTI**"). On June 16, 2010, and in response to counsel's letter, FTI addressed some of these concerns. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $173,990.82 in fees and expenses. Most of these recommended reductions are attributable to billing for compensation matters, vague timekeeping, and multiple participants at conferences. FTI is compensated on a monthly basis pursuant to a flat fee arrangement. As a result, the Fee Examiner's comments in this letter are intended to raise issues of concern that ultimately may not be addressed by the Court until FTI files its final fee application.

**BACKGROUND**

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On November 16, 2009, FTI filed its *First Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 3, 2009 Through September 30, 2009* (the "**First Fee Application**") [Docket No. 4455], seeking fees and expenses in the amount of $4,509,537.09.

3. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of FTI Consulting, Inc.*

2

[Docket No. 5557], identifying $191,972.53 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

4. On April 29, 2010, this Court issued an oral ruling that granted FTI's First Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees. On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834] approving a series of interim fee applications, including the application submitted by FTI. The Omnibus Order authorized payment to FTI of $4,435,036.25 for fees (which included the 10 percent holdback) and $73,248.33 for expenses.

5. On March 16, 2010, FTI filed the Second Fee Application, seeking fees in the amount of $2,066,666.00 and expenses in the amount of $18,756.18, for total requested compensation of $2,085,422.18.

6. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), FTI reports it has previously submitted monthly statements and received payments from the Debtors totaling $1,271,516.83[1] for the period covered by the Second Fee Application, consisting of 80 percent of requested fees and 100 percent of requested expenses for the months of October, November, and December. As of the date of the Second Fee Application, FTI had not yet received payment for January fees or expenses. *See* Second Fee Application, Exhibit C.

---

[1] Compensation detail provided by the Debtors indicates total payments of $1,371,516.83 prior to the date of the Second Fee Application. The Fee Examiner is investigating the difference.

7. Subsequent to the date of the Second Fee Application, FTI has been paid an additional $400,000.00 in fees and $572.35 in expenses, subject to Court review and approval, leaving an outstanding request for $413,333.00 in unpaid compensation in connection with the Second Fee Application.

8. By correspondence dated June 7, 2010, counsel for the Fee Examiner provided FTI with a preliminary analysis of the fees requested in the Second Fee Application, inviting FTI to submit any additional information in support of the application. The preliminary analysis included information related to:

    A. Scope of work;

    B. Specificity of billing entries;

    C. Long billing days;

    D. Transient timekeepers;

    E. Multiple conference participants;

    F. Clerical and administrative billing entries;

    G. Compensation matters; and

    H. Expenses.

FTI provided information in response by telephone conference on June 9, 2010, and indicated that further detail would be forthcoming.

9. On June 15, 2010, the Fee Examiner sent FTI a draft of this *Report and Statement of Limited Objection* to FTI's fees, offering an additional opportunity for discussion. FTI provided further information by correspondence dated June 16, 2010. All of the information provided by FTI has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

10. The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

11. **Compensation Structure**. FTI's compensation structure provides for payment of a $500,000 fixed fee (the "**Monthly Fixed Fee**") for each month of service during the second interim fee period. During the Monthly Fixed Fee period, FTI is required to maintain time records only in half hour increments. In addition to the Monthly Fixed Fee, FTI will receive reimbursement of actual and necessary expenses. For the purposes of calculating suggested disallowances, the Fee Examiner has used FTI's blended rate from its First Fee Application of $588.26 (the "**Blended Rate**").[2]

From the outset, it should be noted that one aspect of evaluating a flat fee for reasonableness is to divide the flat fee by the hours of service provided for the flat fee period. During the period of time covered by the Monthly Fixed Fee in the First Fee Application, this calculation yielded $475.46. In the Second Application, this calculation yielded $588.21, if no suggested disallowances are considered. If all suggested disallowances are accepted, the same

---

[2] FTI was engaged on an hourly basis between June 3 and July 10, 2009. *See* Second Fee Application at ¶ 8.

5

calculation results in an hourly rate of $538.71.  The Fee Examiner does not anticipate that the suggested disallowances will result in a reduction of the Monthly Fixed Fee.  It is appropriate, however, for the Court to evaluate the recommendations because, at the least, they are relevant to FTI's final fee application and an understanding of the reasonableness of the requested fees.  For these reasons, FTI's customary response that where and how staff spends its time is irrelevant when a firm is compensated on a fixed fee basis, should be addressed.

12.     **Long Billing Days**.  Two FTI timekeepers recorded more than 24 hours within a single billing day.  These timekeepers billed 25.9 and 26.9 hours, respectively, on October 7 and October 13, 2009.

*FTI has indicated that, in part, these time entries were not associated with the correct professional.  Multiple service providers were billed under the name of the same professional.  Corrected hours have been provided.*

*Suggested disallowance:  None.*

13.     **Scope of Work**.  FTI is the financial consultant for the Creditors' Committee, and it has negotiated a Monthly Fixed Fee for its remaining representation of the Creditors' Committee.  The Fee Examiner has concerns about the scope (not the quality) of the work to be performed by FTI, as financial consultant for the Creditors' Committee, in light of the Committee's defined statutory role and the unique nature of this proceeding.  One timekeeper reported a focus on understanding GM sales programs, marketing campaigns, and presenting the results of the programs on GM's sales data.  The Fee Examiner has requested more information about the purpose of these services and the benefit they provide to the Creditors' Committee in the wake of a confirmed section 363 sale transferring substantially all ongoing business operations to a non-Debtor entity.

*These services were provided at the request of the Creditors' Committee and are an effort to value the assets available for distribution to the unsecured creditors.  However, since the*

6

*composition of assets will not change, the Fee Examiner questions whether such tasks are an appropriate use of FTI resources by the Creditors' Committee.*

*Suggested disallowance: None.*

14. **Transient Timekeepers**. More than ten FTI professionals providing services during the time period covered by the Second Fee Application billed less than five hours each to the estate. *See* Second Fee Application, Summary.

*Significant use of transient billers raises questions about the necessity and value of services those billers provided to the estate. FTI has provided further explanation of the value added by these timekeepers and addressed this concern.*

*Suggested disallowance: None.*

15. **Double Billing**. Two timekeeper entries on October 30, 2009, suggest an erroneous duplication of billing entries. FTI has undertaken further investigation on this issue.

*FTI's explanation has addressed this concern.*

*Suggested disallowance for double billing: None.*

16. **Meetings**. FTI should provide explanations for multiple attendees at conferences or meetings. The need for multiple participants in meetings and calls is not apparent from the time entries themselves. Obviously situations will arise, perhaps often, when more than one person needs to participate—particularly at the outset of retention or a particular project. Those situations require more explanation. The Fee Examiner requested further detail in connection with at least 32 conferences with three or more FTI timekeepers present. One such conference appeared to include ten FTI personnel. If a party participates in a call because a subject matter on the agenda is within the particular knowledge or expertise of that person, the time entries should reflect that purpose for attendance.

*Suggested disallowance: $71,585.41 (reduction of all identified meetings to two participants).*

7

17. **Time Increment Analysis**. The Local Guidelines require professionals to bill in increments of one-tenth of an hour. However, during periods covered by the Monthly Fixed Fee, FTI is required only to maintain time records in half hour increments. It did so.

18. **Block Billing**. Block billing is prohibited by the UST Guidelines at (b)(4)(v). "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *Id.* The Fee Examiner identified some entries by FTI professionals for multiple tasks in excess of .5 hours in aggregate time that do not comply with this guideline. Block billed time entries total $13,352.37.

*FTI has submitted corrected entries and addressed this concern.*

*Suggested disallowance for block billing: None.*

19. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (nonproductive travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein,* 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). In accordance with the First and Second Advisories, FTI has itemized travel time separately and reduced travel time accordingly in the Fee Application.

*Suggested disallowance for travel time: None.*

20. **Billing for Compensation Matters**. FTI billed approximately seven percent of its total hours on fee application matters. A significant amount of time has been spent on the timekeeping and billing processes, including 157.10 hours ($92,415.65 at the Blended Rate) for services related to "invoice review." A monthly fixed fee, for any professional, does not immunize the professional from review.

21. Professionals should make every effort to demonstrate in their fee applications that the tasks associated with the preparation of the application are directly related to compliance with the Bankruptcy Code and not merely with every professional's ethical obligation to disclose the basis of fees charged. While the court in its bench ruling overruled the Fee Examiner's objection on this basis to the First Fee Application, that ruling appeared to focus on initial retention issues. At the very least, the amount of time spent on both retention and compensation—even for a professional compensated on a "fixed fee" basis—ultimately will be a factor in evaluating a final fee application. Accordingly, the Fee Examiner identifies this as a potential disallowance, if not an actual disallowance.

*Suggested disallowance: $46,207.82 (50 percent of "invoice review" time entries).*

22. **Clerical and Administrative Charges**. FTI professionals billed more than 26 hours for tasks that may have been clerical or administrative in nature. Many of these entries were evaluated within the compensation category, and no further disallowance is suggested. However, the Fee Examiner has also questioned 176.8 hours expended by 11 persons reviewing news reports and docket entries.

*Suggested disallowance for non-billable clerical and administrative tasks: $31,177.78 (53 hours at the Blended Rate).*

23. **Vague Communications**. The Fee Examiner has identified specific billing entries that fail to comply with the UST Guidelines, aggregating $160,816.61, at the Blended Rate. Specifically, "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication." UST Guidelines at (b)(4)(v).

*FTI and counsel for the Fee Examiner discussed these issues on June 18, 2010. FTI will submit updated time entries.*

*Suggested disallowance for vague communications: $24,122.49 (15 percent).*

9

24.     **Vague Tasks**.  The Fee Examiner has identified specific billing entries aggregating $5,529.17, at the Blended Rate, containing insufficient task descriptions.

*FTI and counsel for the Fee Examiner discussed these issues on June 18, 2010.  FTI will submit updated time entries.*

*Suggested disallowance for vague tasks:  $829.37 (15 percent).*

25.     **Expenses**.  The Second Fee Application, Exhibit F, contains a Summary of Expenses totaling $18,756.18.  Though the Second Fee Application initially contained insufficient detail, FTI has provided supplemental documentation in response to the Fee Examiner's request.  The following concerns remain:

A.      Ground transportation expenses totaling $3,131.32 have been submitted for reimbursement.  One transportation expense was submitted by an employee that apparently did not bill for services to the Debtors on the date of travel.  The Fee Examiner also notes that on several occasions employees of FTI appropriately utilized the subway as a method of intra-city transportation.  This practice has not been common for professionals in this matter and inures to the benefit of the state.

*FTI has demonstrated that the ground transportation expenses reimbursed to its employees during the second interim fee period were incurred due to working late during the previous interim fee period.*

B.      FTI's Fee Application requests $256.69 in reimbursement for out-of-town meals.  Meal expenses are limited to $20.00 per individual per meal.

*Suggested disallowance for meals beyond $20.00 per meal:  $67.95.*

***Total fees suggested for disallowance:  $173,922.87.***

***Total expenses suggested for disallowance:  $67.95.***

***Total fees and expenses recommended for disallowance:  $173,990.82.***

10

**CONCLUSION**

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections to the Second Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Second Fee Application.

Dated: Green Bay, Wisconsin
June 22, 2010.

GODFREY & KAHN, S.C.

By:     /s/ *Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5095003_2