**Hearing Date and Time:  June 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,                :    (Jointly Administered)
                                                           :
                    Debtors.                                :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION
TO FIRST AND SECOND INTERIM FEE APPLICATIONS OF
<u>BROWNFIELD PARTNERS, LLC</u>**

**TO:   THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period from June 1, 2009 through September 30, 2009* [Docket No. 4457] (the "**First Fee Application**") and the *Second Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for*

*Allowance of Compensation and Reimbursement of Expenses for the Period from October 1, 2009 through January 31, 2010* [Docket No. 5291] (the "**Second Fee Application**").

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies certain objectionable fees and expenses requested in the First Fee Application, which requests a total of $230,209.55, and the Second Fee Application, which requests a total of $409,238.21. The Fee Examiner respectfully represents:

### SUMMARY STATEMENT

After reviewing the First Fee Application, counsel for the Fee Examiner raised preliminary observations with Brownfield Partners, LLC ("**Brownfield**") by letter dated March 2, 2010. Thereafter, the parties continued productive discussions and agreed to adjourn the hearing on the First Fee Application to allow Brownfield time to compile additional supporting documentation. By letter dated May 14, 2010, counsel for the Fee Examiner raised preliminary observations and concerns with Brownfield in connection with his review of the Second Fee Application. On June 14, 2010, and in response to counsel's letter, Brownfield and counsel to the Fee Examiner held a telephone conference to clarify remaining issues.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $2,914.31 in fees and expenses in connection with the First Fee Application, and $12,421.06 in fees and expenses in connection with the Second Fee Application. Most of these recommended reductions are attributable to vague time entries and administrative or clerical charges.

### BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On November 16, 2009, the First Fee Application was filed, seeking fees in the amount of $213,914.75 and expenses in the amount of $16,294.80, for total requested compensation in the amount of $230,209.55. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Brownfield had previously been paid $126,426.39 in fees and $11,698.10 in expenses, subject to Court review and approval, leaving a combined request of unpaid fees and expenses in the amount of $92,085.06, as of the date of the First Fee Application. First Fee Application, ¶ 9. Subsequently, Brownfield has been paid an additional $43,534.80 in fees and $4,596.70 in expenses for fees requested in the First Fee Application, subject to Court review and approval, leaving an outstanding request for $43,953.56 in connection with the First Fee Application.

3. By correspondence dated March 2, 2010, counsel to the Fee Examiner requested supplemental information from Brownfield as part of its review of specific matters in the First Fee Application. The supplemental information requested included:

    A. An executed copy of the Engagement Letter and exhibits;

    B. The Debtors' written authorization for Brownfield to exceed the $200,000.00 fee cap;

    C. Copies of the Creditors' Committee's and U.S. Trustee's notice of increased fee cap;

    D. An itemization of expenses; and

    E. Authority for and documentation of the sub retention of D. McMurtry & Associates to provide environmental consulting services.

The information provided in response to this inquiry on March 15, 2010 was considered by the Fee Examiner.

  4. On March 17, 2010, Brownfield filed the Second Fee Application, seeking fees in the amount of $381,757.40 and expenses in the amount of $27,480.81,[1] for total requested compensation of $409,238.21. As a result of the Court's Compensation Order, Brownfield had previously been paid $86,203.24 in fees and $27,352.92 in expenses for work performed in the second interim fee period, subject to Court review and approval, as of the date of the Second Fee Application. Subsequent to the date of the Second Fee Application, Brownfield has been paid an additional $219,202.68 in fees, subject to Court review and approval, leaving an outstanding request for $76,479.37 in connection with the Second Fee Application.

  5. On March 19, 2010, the Court entered the *Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5313] (the "**Authorization to Amend**"), approving a fee cap increase from $200,000.00 to $1,100,000.00. On June 9, 2010, the Court entered a *Supplemental Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5980], which authorized an increase in Brownfield's hourly rates.

  6. By correspondence dated May 14, 2010, counsel to the Fee Examiner requested supplemental information from Brownfield as part of its review of specific matters in the Second Fee Application. The supplemental information requested included:

---

[1] AP Services—on behalf of the Debtors—had disallowed $127.89 in requested expenses when processing Brownfield's monthly bills. Brownfield did not bring this disallowance to the attention of the Fee Examiner.

4

        A.        Detail relating to vague communications or tasks;

        B.        Confirmation of travel time;

        C.        Detail relating to work characterized as administrative overhead; and

        D.        Detail relating to specific tasks.

The information that the applicant provided in response to this inquiry on June 14, 2010 was also considered by the Fee Examiner.

    7.    On June 15, 2010, the Fee Examiner sent Brownfield a draft of this *Report and Statement of Limited Objection*, offering further opportunity for discussion. Brownfield provided additional information by correspondence dated June 18, 2010. All of the information provided by Brownfield has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

    8.    The First and Second Fee Applications have been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**") and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Amended Local Guidelines**"), respectively; the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"); the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"); and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second**

5

**Advisory**"); as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

**First Fee Application**

9.      **Engagement Letter**.  The "**Engagement Letter**,"[2] as defined in the Retention Agreement, is entitled "General Motors Corporation Environmental Consultant Retention Agreement."  It provides for a defined universe of work to be completed at a cost not to exceed $200,000.00.  Hourly rates of compensation are addressed in Brownfield's Retention Application and the Affidavit in Support, but they are not included in the Engagement Letter.

   A.     The Engagement Letter, attached to the Retention Application as Exhibit B, is unexecuted.  The Confidentiality Agreement, also an exhibit to the Engagement Agreement, is not executed.

   *At the request of the Fee Examiner, Brownfield has now provided a fully executed Engagement Letter.*

   B.     The First Fee Application expressly refers to the Authorization to Amend, confirming the Engagement Letter's capping of the Brownfield fees at $200,000.00 unless otherwise approved in advance and in writing by a representative of the Debtors.  Such advance written approval did not occur.  The First Fee Application (dated November 16, 2009) simply states "Due to the massive nature of this project, Brownfield Partners has, pursuant to the Amended Order, alerted counsel for the Debtors that an additional amendment to increase the fee cap will be necessary and to which counsel to the Debtors have not objected."  Fee Application, at 6-7, ¶ 19.

---

[2] The capitalized terms used in the discussion of the First Fee Application have the meanings given to them in the *Fee Examiner's Preliminary Report on the First Interim Fee Application of Brownfield Partners, LLC* (the "**Preliminary Report**") [Docket No. 5565], unless otherwise defined in this *Report and Statement of Limited Objection.*

6

*As a result of the Fee Examiner's request for additional information, the Debtors sought and obtained an increase in the fee cap to $1,100,000.00 (along with increased hourly rates), retroactive to January 1, 2010.*

10. **Project Staffing**. Services provided by Brownfield have been provided by three job titles at three billing rates: Principal - $275.00; Partner - $250.00; and Planner - $165.00. Approximately 42.5 percent of the hours billed on this project were at the highest billing rate. In addition, an additional 49.9 percent of the hours billed were at the Partner rate and 7.6 percent of the hours billed were billed at the Planner rate. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with work principally performed at the lowest appropriate billing rate.

*Brownfield, a boutique firm consisting of three partners, an associate, and minimal part-time non-professional support staff, has demonstrated that its staffing is limited to the personnel employed by the firm, and is appropriate based on the specialized services provided.*

*Suggested disallowance: None.*

11. **Landers' Error**. The First Fee Application seeks $1,375.00 not previously requested in the Monthly Fee Statements due to a stated "inadvertent error in the billing rate for Morgan Landers." First Fee Application, at 4 n.1. The First Fee Application states that Mr. Landers' standard rate is $160 per hour and that he had been erroneously billed at $40 per hour in previous Monthly Fee Statements. However, Mr. Landers has in fact been billed at the rate of $165.00 per hour in the First Fee Application, the rate set forth in the Retention Application for an associate.

*Brownfield agrees that a $5.00 an hour reduction for Landers' billing is appropriate.*

*Agreed disallowance: $321.50.*

12. **Time Increment Analysis**. The Retention Order and the applicable guidelines require professionals to bill in increments of one-tenth of an hour. The Fee Examiner has

7

determined that approximately 30-35 percent of the time increments billed in this matter were recorded in half-hour increments.

*Suggested disallowance for time increment analysis: None; however, the significant percentage of half hour increments suggests that billing is not being contemporaneously maintained in the required one-tenth of an hour increments.*

13. **Fee Discrepancies**. The Auditor has identified mathematical errors in calculating individual tasks and reporting as a total hourly billing.

*The First Fee Application has resulted in a net underbilling to the estate of $137.50.*

14. **Double Billing**. The Auditor has identified $825.00 in timekeeper entries that suggest a potential erroneous duplication of billing entries.

*Brownfield has confirmed that these entries are appropriate, reflecting services performed in two segments over the course of a single day.*

15. **Block Billing**. Block billing is prohibited by the UST Guidelines. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Auditor identified entries by Brownfield professionals that do not comply with this guideline totaling $10,165.00.

*Brownfield has satisfactorily amended the billing entries to address this concern.*

16. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The First and Second Advisories have requested that travel time be itemized separately. Travel time has been reduced accordingly in the First Fee Application.

8

17. **Clerical and Administrative Charges**. Numerous billing entries describe non-compensable clerical or administrative services. These entries total $1,842.50.

*Brownfield has submitted additional information on the services provided and proposed a disallowance of $1,067.50. This disallowance is appropriate.*

*Suggested disallowance for clerical and administrative charges: $1,067.50.*

18. **Multiple Participants in Conferences**. The Fee Examiner has identified conferences and conference calls attended by more than one person.[3] On several occasions, parties billed differing time increments for what appears to be the same telephone conference. In these instances, the Fee Examiner suggests allowance of fees at the lowest time allocated to the specific task. In addition, in the absence of an explanation of the necessity for multiple attendees at conferences, those conferences identified should be allowed for one person at the highest billing rate and a second person on 50 percent of the occasions at the mean billing rate charged to the task.

There obviously are occasions, perhaps often, when more than one person needs to participate—particularly at the outset of retention or a particular project. Those occasions require more explanation.

*Brownfield has provided supplemental detail and satisfactorily addressed the Fee Examiner's concern.*

19. **Vague Tasks**. The Fee Examiner has identified four specific billing entries that contain an insufficient description of a task and are non-compensable.

*Brownfield has provided supplemental detail and resolved this concern.*

20. **Team Conferencing**. Conference calls billed by Brownfield employees lack consistent detail concerning the identification of the call, the subject matter, and the persons

---

[3] The Fee Examiner recognizes the extraordinary circumstances relating to the retention of Brownfield and other environmental professionals. Conferences and meetings in the initial phases of retention are not included in the conferences evaluated for multiple attendance.

9

participating in the call. Most of the calls, as reported, reflect only one participant—even though they were conference calls. This billing practice impedes review.

*Teams should identify calls with uniformity (i.e., all participants identify the call in the same manner).*

21. **Expenses: General**. The First Fee Application, Exhibit C, contains a Summary of Expenses. The initial detail supporting these expenses was insufficient. Specifically, Brownfield requested travel expenses totaling $11,595.05 in a summary form that the Fee Examiner could not properly evaluate.

*At the request of the Fee Examiner, Brownfield has provided additional documentation of expenses by letter dated March 15, 2010, reducing the suggested disallowance to the following:*

- *Fitness club charge: $18.00*

- *Meal in excess of limitation: $26.46*

*Total agreed disallowance: $44.46.*

22. **Expenses: McMurtry**. Reimbursement of expenses has been requested for D. McMurtry & Associates. David McMurtry ("**McMurtry**") is an independent contractor providing specialized services, at the request of Debtors, through his relationship with Brownfield. The retention of McMurtry as an independent contractor was disclosed in support of Brownfield's retention application. Invoices for McMurtry's business expenses were identified as invoices for D. McMurtry & Associates. McMurtry's time has been billed as an employee and the expenses have been appropriately documented.

*Suggested disallowance for undocumented McMurtry expenses: None.*

23. **Expenses: Administrative Markup**. Multiple expense requests are identified as "administrative markup" or "10 percent administrative fee for out-of-pocket costs." These administrative fees and mark ups total $1,481.35 and are not reimbursable expenses under the UST Guidelines.

*Brownfield has withdrawn its request for these administrative fees.*

*Agreed disallowance: $1,481.35.*

24.     **Expenses:  Database**.  An expense identified as "GM-RealQuest Professional Database - June 2009 thru July 14, 2009" is documented, but does not disclose the nature of the service provided and, therefore, could not be properly evaluated.  Brownfield has provided supplemental detail resolving this concern.

*Suggested disallowance for database expenses:  none.*

**First Fee Application Summary**

*Total fees suggested for disallowance: $1,389.00.*

*Total expenses suggested for disallowance: $1,525.81.*

*Total fees and expenses recommended for disallowance: $2,914.81.*

**Second Fee Application**

25.     **Project Staffing**.  The Fee Examiner continues to have concerns regarding project staffing.  During the second interim fee period, approximately 51 percent and 43 percent of the hours were billed at the principal and partner rates, respectively, resulting in 94 percent of the services being provided at the two highest billing rates.  Four percent of Brownfield's hours were billed at a new rate, "senior associate" - $264.00, higher than the former "planner" rate of $165.00.  Only 1.8 percent of the hours were billed at the planner rate.  Without further explanation of any extenuating circumstances, the preferred practice is for tasks to be managed by senior personnel with work principally performed at the lowest appropriate billing rate.

*The Fee Examiner is satisfied that the staffing is appropriate.*

26.     **Services Provided**.  The Fee Examiner is aware of weekly meetings by Brownfield relating to insurance issues.

11

*The Fee Examiner will defer any evaluation of the expenditure of time in connection with environmental insurance issues until the results of the services are ascertainable.*

27.  **Vague Time Entries**.  The Fee Examiner has identified specific billing entries, totaling $28,090.00, that inadequately describe the communications involved or vaguely describe the completed tasks.  Brownfield has submitted revised time entries, substantially reducing this concern.

*Agreed disallowance for vague time entries:  $545.00.*

28.  **Multiple Attendees**.  Like he did with the First Fee Application, the Fee Examiner identified conferences and conference calls attended by more than one person.  On multiple occasions, parties billed differing time increments for what appeared to be the same telephone conference.  For these occurrences, the Fee Examiner suggests allowance of fees at the lowest time allocated to the specific task.  In addition, in the absence of an explanation of the necessity for multiple attendees at conferences, those conferences identified should be allowed for one person at the highest billing rate and a second person on 50 percent of the occasions at the mean billing rate charged to the task.

*Brownfield has provided a detailed response and satisfactorily addressed this concern.*

29.  **Clerical and Administrative Tasks**.  The Fee Examiner has identified charges in the amount of $4,106.60, that appear to be administrative or clerical tasks that might more appropriately have been absorbed as overhead.  Brownfield has provided substantive detail reducing the clerical and administrative tasks to $2,301.00.  This calculation is the result of agreed disallowances and the continued disallowance of time billed for invoice preparation.  Invoice preparation is an administrative service provided to all clients and is a non-compensable administrative task.

*Agreed disallowance for non-compensable clerical and administrative tasks:  $1,581.00.*

12

30. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The First and Second Advisories have requested that travel time be itemized separately. However, the Fee Examiner identified certain time entries that do not appear to reflect the necessary discount for travel.

*Agreed disallowance for nonworking travel: $7,663.75.*

31. **Expenses**. Brownfield's requested expense reimbursements are generally unobjectionable, subject to the following comments:

    A. **Airfare**. Brownfield has requested $14,118.01 in airfare expenses. However, expense reports and documentation submitted in support of the expense reports provide detail for airfare expenses totaling only $13,731.09.

*Agreed disallowance for undocumented airfare: $386.92.*

    B. **Other Transportation**. The Fee Examiner has identified two entries categorized as "Other Transportation" with no supporting documentation. Specifically, there is an unidentified entry for January in the amount of $131.82 and a $5.00 entry dated December 2, 2009.

*Agreed disallowance for other transportation: $136.82*

    C. **Meals**. Brownfield has requested reimbursement of meal expenses in the amount of $573.11. *See* Second Fee Application, Exhibit C. Based on the Fee Examiner's review of the supporting documentation provided, meal expenses totaled $791.05. The Fee Examiner has identified certain meals exceeding the $20.00 meal allowance in the aggregate amount of $270.69 and an unaccounted dinner receipt for

13

October 26, 2009 in the amount of $105.65 that are not reimbursable. The net result of the Fee Examiner's analysis are documented, allowable meal expenses in the amount of $520.36.

*Agreed disallowance for meals: $52.75.*

D.  **Hotels**. The Fee Examiner has identified a mathematical overcharge in the amount of $21.03 based upon amounts indicated on the receipts provided and a $10.00 charge for fitness club on October 27, 2009.

*Agreed disallowance for hotels: $31.03.*

E.  **Administrative Markup Fees**. Multiple expense requests are identified as "administrative markup" or "10 percent administrative fee for out-of-pocket costs." These administrative fees and mark ups total $763.79 and are not reimbursable expenses under the UST Guidelines. Brownfield has withdrawn its request for these administrative fees.

*Agreed disallowance for administrative fees: $763.79.*

F.  **Miscellaneous Charges**. The Fee Examiner has identified the following miscellaneous charges unsupported by documentation:

| Name    | Date     | Service  | Amount   |
| ------- | -------- | -------- | -------- |
| Unknown | November | Internet | $25.90   |
| Unknown | November | Mileage  | $132.00  |
| Unknown | December | Mileage  | $88.00   |
| Unknown | January  | Mileage  | $88.00   |
| Unknown | January  | Tips     | $5.00    |

|          |          |       |           |
|----------|----------|-------|-----------|
| McMurtry | November | Fee   | $1,260.00 |
|          |          | Total | $1,598.90 |

*Brownfield has provided documentation of these expenses. However, the November McMurtry charge appears to be an invoice for administrative support services not properly charged to the Debtors.*

*Suggested disallowance for miscellaneous charges: $1,260.00.*

**Second Fee Application Summary**

*Total fees suggested for disallowance: $9,789.75.*

*Total expenses suggested for disallowance: $2,631.31.*

*Total fees and expenses recommended for disallowance: $12,421.06.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the Fee Examiner's preliminary observations, subject to the supplemental detail provided by Brownfield. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on this or any subsequent interim fee applications or final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* on the First and Second Fee Applications.

Dated: Green Bay, Wisconsin
       June 22, 2010.

                                      GODFREY & KAHN, S.C.

                      By:      /s/ *Carla O. Andres*

                           Carla O. Andres (CA 3129)
                           Timothy F. Nixon (TN 2644)

                           GODFREY & KAHN, S.C.
                           780 North Water Street
                           Milwaukee, Wisconsin 53202
                           Telephone: (414) 273-3500
                           Facsimile: (414) 273-5198
                           E-mail: candres@gklaw.com
                                        tnixon@gklaw.com

                           *Attorneys for Fee Examiner*

5096599_2