**Hearing Date and Time:  June 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
MOTORS LIQUIDATION COMPANY, *et al.,*                     :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*              :    (Jointly Administered)
                                                          :
                             Debtors.    :    Honorable Robert E. Gerber
                                                          :
--------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF
LIMITED OBJECTION TO FIRST INTERIM FEE
APPLICATION OF LFR INC. AND PRELIMINARY REPORT
ON SECOND INTERIM FEE APPLICATION OF LFR INC.**

**TO:  THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *First Interim Application of LFR Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 1, 2009 through September 30, 2009* [Docket No. 4436] (the "**First Fee Application**") and the *Second Interim Application of LFR Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1,*

*2009 through January 31, 2010* [Docket No. 5270] (the "**Second Fee Application**"). With this *Report and Statement of Limited Objection*, the Fee Examiner identifies certain objectionable fees and expenses requested in the First Fee Application, which requests a total of $677,220.78.

The Fee Examiner also summarizes his initial analysis of the Second Fee Application, but, in this report, makes no concurrent recommendations in light of his discussions with LFR Inc. ("**LFR**"). Instead, LFR has agreed the Second Fee Application will be subject to further evaluation based on LFR's substantive response. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the First Fee Application, counsel for the Fee Examiner raised preliminary observations and concerns with LFR by letter dated February 22, 2010. Thereafter, the parties continued productive discussions and agreed to adjourn the hearing on the First Fee Application to allow LFR to compile additional supporting documentation.

By letter dated June 9, 2010, counsel for the Fee Examiner raised preliminary observations and concerns with LFR in connection with his review of the Second Fee Application. LFR has requested that the Fee Examiner allow LFR to focus on resolving issues arising from the First Fee Application before turning to matters concerning the Second Fee Application. As such, LFR and the Fee Examiner agreed to a *Stipulation and Order for Adjournment of June 29, 2010 Hearing on Second Interim Fee Application of LFR Inc.* [Docket No. ____] (the "**Stipulated Adjournment**").

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $23,161.51 in fees and expenses in connection with the First Fee Application. Most of these recommended reductions are attributable to administrative markups.

2

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On November 12, 2009, the First Fee Application was filed, seeking fees in the amount of $633,772.80 and expenses in the amount of $43,447.98, for total requested compensation of $677,220.78. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), LFR previously has been paid $246,569.08 in fees and $10,306.24 in expenses, subject to Court review and approval, leaving a combined request of unpaid fees and expenses in the amount of $420,345.46, as of the date of the First Fee Application. First Fee Application, ¶ 3. Subsequent to the date of the First Fee Application, LFR has been paid an additional $293,590.50 in fees and expenses, subject to Court review and approval, leaving an outstanding request for $126,754.96 in connection with the First Fee Application.

3. By correspondence dated February 22, 2010, counsel to the Fee Examiner requested supplemental information from LFR as part of his review of specific matters in the First Fee Application. The supplemental information was necessary to support the First Fee Application and permit a further review to ensure compliance with the Advisories (defined below). This information included:

    A. An executed copy of the Engagement Letter and exhibits;

3

        B.        The Debtors' written authorization for LFR to exceed the $200,000.00 fee cap;

        C.        Copies of the Creditors' Committee's and U.S. Trustee's notice of an increased fee cap;

        D.        An itemization of expenses;

        E.        An explanation of the use of "supplemental time sheets"; and

        F.        An explanation of communication fees requested in the First Fee Application.

The information provided by LFR in response to this inquiry was also considered by the Fee Examiner.

4.        On March 15, 2010, LFR filed the Second Fee Application, seeking fees in the amount of $1,034,548.40 and expenses in the amount of $182,730.34, for total requested compensation of $1,217,278.74.

5.        LFR has previously submitted monthly statements and received payments from the Debtors totaling $208,417.06 for the period covered by the Second Fee Application, consisting of $158,605.12 in requested fees and $49,811.94 in requested expenses. *See* Second Fee Application, ¶ 3.

6.        By correspondence dated June 9, 2010, counsel for the Fee Examiner provided LFR with a preliminary analysis of the fees requested in the Second Fee Application, as well as his remaining concerns with documentation provided in support of the First Fee Application. LFR was invited to submit any additional information in support of the application. The preliminary analysis included information related to:

        A.        A clarification of the Arcadis/LFR relationship;

        B.        Timekeeper issues;

        C.        Clerical and administrative charges;

        D.        Multiple participants in conferences;

        E.        Vague time entries; and

        F.        Expense detail.

The information provided by LFR in response to this inquiry was also considered by the Fee Examiner.

7. On June 10, 2010, LFR and counsel for the Fee Examiner discussed the issues raised, and LFR noted that it needed additional time to compile supporting materials before the scheduled June 29, 2010 hearing on the First and Second Fee Applications. As such, LFR and the Fee Examiner agreed to the Stipulated Adjournment in connection with the Second Fee Application.

8. On June 15, 2010, the Fee Examiner sent LFR a draft of this *Report and Statement of Limited Objection* with a limited objection to LFR's fees, offering further opportunity for discussion.

9. By correspondence dated June 21, 2010, LFR provided additional detail in support of the First Fee Application to address the Fee Examiner's concerns.

**APPLICABLE STANDARDS**

10. The First and Second Fee Applications have been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), and the *Amended Guidelines for Fees and Disbursements*

5

*for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Amended Local Guidelines**"), respectively; the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"); the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"); and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"); as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

**First Fee Application**

11.    **Engagement Letter**.  The "**Engagement Letter**," as defined in the Retention Agreement,[1] is a General Motors Corporation Environmental Consultant Retention Agreement. As amended, the Engagement Letter provides for a specific scope of work to be completed at an estimated cost not to exceed $200,000.00 in professional fees.  Hourly rates of compensation are addressed in the Retention Application and the Affidavit in Support, but they are not part of the Engagement Letter.

      A.    The Engagement Letter, attached to the Retention Application as Exhibit B, is unexecuted.  The Confidentiality Agreement, also an exhibit to the Engagement Agreement, is not executed.

*At the request of the Fee Examiner, a fully executed Engagement Letter and exhibits have been provided by LFR.*

---

[1] The capitalized terms used in the discussion of the First Fee Application have the meanings given to them in the *Fee Examiner's Preliminary Report on the First Interim Fee Application of LFR Inc.* (the "**Preliminary Report**") [Docket No. 5566], unless otherwise defined in this *Report and Statement of Limited Objection.*

6

        B.      The Retention Order provides that LFR shall perform its scope of work for a total cost not to exceed $200,000.00, unless approved in advance and in writing by the Debtors.  The First Fee Application nowhere states that written authorization has been obtained, although the requested fees exceed $600,000.00, and monthly budgets for February and April 2010 are for $618,000.00 and $450,000.00, respectively.[2]  The Fee Application also does not address the Retention Order mandate that written notice must be provided to the Creditors' Committee and the U.S. Trustee if the total cost of work performed by LFR will exceed $200,000.00.

*As a result of the Fee Examiner's request for additional information, LFR has provided a Notice of Fee Increase.  The Fee Examiner anticipates that LFR will be seeking an amendment to the Retention Order, nunc pro tunc, or otherwise informing the Court and interested parties of the increased scope of services or the escalated costs associated with the initial scope of services.*

      12.      **ARCADIS Employees**.  In addition to billing records for LFR employees, LFR has submitted "Supplemental Time Sheets" for services performed by ARCADIS US, Inc. ("ARCADIS") employees.  These services total $206,836.10.  ARCADIS, the parent company of LFR, has not been authorized by the Court to provide services in this case—in the Retention Order or anywhere else.  The Retention Application specifically provides that LFR has not agreed to share its compensation with any other person. Retention Application, ¶ 15.  In fact, documents submitted in connection with the Retention Application distinguish between LFR and ARCADIS, stating that while ARCADIS is a creditor of the Debtors, LFR is not.  *Affidavit and Disclosure Statement of Frank Lorincz in Support of the Debtors' Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014 for Entry of an Order Authorizing the Retention and Employment of LFR Inc. as Environmental Consultants to the Debtors Nunc*

---

[2] The Fee Examiner did not receive a monthly budget for March 2010.

7

*Pro Tunc to the Commencement Date* ("**Lorincz Affidavit**"), ¶ 9, Retention Application, Exhibit A.  The Supplemental Lorincz Affidavit made this point expressly:

> ARCADIS is and has been providing environmental and professional consulting services to the Debtors, both prepetition and postpetition, and has a prepetition claim against the Debtors totaling approximately $619,000.  LFR, however, is a separate entity from ARCADIS.  LFR and ARCADIS have separate management and are engaged by the Debtors under separate agreements.  Furthermore, the Debtors have assumed and assigned the ARCADIS contracts to General Motors Company ("**NewGM**"), purchaser of substantially all of the Debtors' assets.  Accordingly, ARCADIS's prepetition claim for $619,000 will be paid by NewGM to cure the assumed and assigned ARCADIS contracts.

Supplemental Lorincz Affidavit, ¶ 5.

*LFR has provided additional information explaining the corporate relationship between LFR and ARCADIS.  LFR, an ARCADIS acquisition in 2008, remains a wholly-owned subsidiary of ARCADIS, but as of January 2010, it has merged its operations into ARCADIS.  LFR no longer has employees.  The period covered by the First Fee Application was a time of transition, and services were provided by both LFR and ARCADIS employees.  The arrangement with Debtors lacks clarity and remains a concern.  LFR states that it has provided appropriate documentation to Debtors' counsel and requested that the factual inconsistencies in the record be remedied.*

13.  **Transient Timekeepers**.  The First Fee Application discloses one timekeeper who performed the isolated task of "document review" for 3.5 hours one day but did not appear to add value to the services provided by LFR.

*LFR has provided supplemental detail and satisfactorily addressed the Fee Examiner's concern.*

14.  **Time Increment Analysis**.  The Retention Order and the applicable guidelines require professionals to bill in increments of one-tenth of an hour.  However, one timekeeper billed approximately 90 percent of all the time increments in half hour increments.  The significant percentage of half hour increments suggests that billing is not being contemporaneously maintained in one-tenth of an hour increments.

8

*LFR provided additional information for this timekeeper's entries. The Fee Examiner has determined that the additional information effectively describes the time increments according to the applicable guidelines.*

*Suggested disallowance for time increment analysis: None.*

15. **Fee Discrepancies**. The Fee Examiner has identified mathematical errors in calculating individual tasks and reporting as a total hourly billing. The Preliminary Report indicated that the auditors' review of the First Fee Application revealed a net over-billing to the estate of $11,665.40.

*LFR has provided three invoices for L. McBurney totaling $13,200. The Fee Examiner is reviewing those invoices for compliance with the UST Guidelines. An appropriate credit will be noted for any under-billing.*

16. **Double Billing**. The Fee Examiner has identified $780.00 in timekeeper entries that suggest an erroneous duplication of billing entries.

*Suggested disallowance for double billing: $780.00.*

17. **Block Billing**. Block billing is prohibited by the UST Guidelines. The Fee Application contains multiple entries with block billed entries totaling $5,772.80 in fees. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The audit identified some entries by LFR professionals who do not comply with this guideline.

*LFR provided additional detail regarding the multiple block billing entries. The Fee Examiner has reviewed the supplemental information and determined that no disallowance is warranted. However, the Fee Examiner has identified several entries in the supplemental detail that are repetitive and suggest a haphazard approach to simply breaking out time entries. This remains a concern.*

*Suggested disallowance for block billing: None.*

18. **Travel Time**. Non-working travel time is compensable at only 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84

9

(S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Fee Examiner's Status Reports and Advisories have requested that travel time be itemized separately. In total, 33.4 hours of travel time have been identified by LFR in the Fee Application. Travel time in the amount of $3,340.00 has been billed at full hourly rates.

*Suggested disallowance for travel time: $1,670.00 (50 percent).*

19. **Clerical and Administrative Charges**. Numerous billing entries describe clerical or administrative non-compensable services. These entries total $26,570.40.

*LFR has provided supplemental information relating to administrative and clerical charges and addressed the Fee Examiner's concern.*

*Suggested disallowance for administrative or clerical tasks: None.*

20. **Multiple Participants in Conferences**. The Fee Examiner has identified conferences and conference calls attended by more than one person.[3] On multiple occasions, timekeepers billed differing time increments for what appears to be the same telephone conference. In these instances, the Fee Examiner suggests allowance of fees at the lowest total time allocated to the specific task. In addition, in the absence of an explanation of the necessity for multiple attendees at conferences, those conferences identified should be allowed for one person at the highest billing rate and a second person on 50 percent of the occasions at the mean billing rate charged to the task.

There are occasions when more than one person needs to participate in a meeting or conference call—particularly at the outset of retention or a particular project, yet those occasions

---

[3] The Fee Examiner recognizes the extraordinary circumstances relating to the retention of LFR and other environmental professionals. Conferences and meetings in the initial phases of retention are not included in the conferences evaluated.

10

require more explanation than LFR has provided to meet its burden of proof that the effort expended was reasonable and non-duplicative.

*LFR has provided specific explanations of the necessity for multiple timekeepers to participate in these conferences in its correspondence of June 21, 2010. The Fee Examiner continues to evaluate this potential disallowance.*

21.     **Vague Tasks**.  The Fee Examiner has identified specific billing entries totaling $7,375.10 that contain an insufficient description of a task and are non-compensable.

*Suggested disallowance for vague tasks: $1,106.27(15 percent).*

22.     **Team Conferencing**.  Conference calls billed by LFR employees are identified as "conference call"; "team coordination call"; "kickoff call"; "group A, B, or C Calls"; and "Steering Committee Call."  There is a lack of consistency among timekeepers concerning the identification of the call or the subject matter.  This practice reduces the effectiveness of review.

*Teams should identify calls with uniformity (i.e., all participants identify the call in the same manner).*

23.     **Expenses**.  The Fee Application, Exhibit C, contains a Summary of Expenses. The detail of these expenses was insufficient for the Fee Examiner to determine whether the expenses were compensable.

   A.   Travel expenses had been requested in a summary form and could not be properly evaluated for compensation.  The expenses—categorized as airfare, mileage, lodging, tolls and parking, rental car, and meals—total $12,425.06.  The Fee Examiner requested an itemization of these expenses in accordance with the First Advisory by letter dated February 22, 2010.

*LFR has provided appropriate expense detail.  A suggested disallowance of $206.28 will reduce meal expenses to the $20.00 meal limitation in the First and Second Advisories.*

*Suggested disallowance for meals in excess of $20.00:  $206.28.*

11

B. Reimbursement of expenses has been requested for a subcontractor, TEA, Inc. ("TEA"). This sub-retention is outside the scope of the Retention Order, and no determination has been made of the necessity for the services provided by TEA. Further, TEA does not appear to have disclosed conflicts or provided affidavits of disinterestedness. Finally, expenses for the sub-retention are not itemized as required by the UST Guidelines and have not been authorized by the Debtors or the Court.

*LFR has stated its intent to amend its retention application to include TEA as an approved subcontractor.*

C. Multiple expense requests are identified as "communication fees," "materials and supplies," and "in-house rental" of equipment. These administrative fees and mark ups are not reimbursable expenses under the UST Guidelines.

*In response to the Fee Examiner's inquiry, LFR has acknowledged that its request for administrative markups and communication fees are inconsistent with the UST Guidelines and should be disallowed.*

*Suggested disallowance for administrative fees: $19,398.96.*

D. Also expensed to the estate are photocopies, teleconferencing, postage/delivery, and permits for a total of $1,050.81. The expense requests do not substantiate the calculation of charges or evidence the necessity for the services and cannot be property evaluated.

*LFR has provided supplemental detailed documentation and addressed the Fee Examiner's concerns.*

*Suggested disallowance: None.*

**Second Fee Application**

24. **Fee Discrepancies**. The Fee Examiner has identified mathematical errors in calculating individual tasks and reporting as a total hourly billing.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

25. **Double Billing**. The Fee Examiner has identified 7.7 hours of timekeeper entries that suggest an erroneous duplication of billing entries.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

26. **Block Billing**. Block billing is prohibited by the UST Guidelines. The Fee Application contains multiple entries with block billing totaling $30,774.80. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

27. **Travel Time**. Non-working travel time is compensable at only 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Fee Examiner's Status Reports and Advisories have requested that travel time be itemized separately. The Fee Examiner has identified travel time that appears to have been billed at full rates by LFR in the Second Fee Application.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

28. **Clerical and Administrative Charges**. Numerous billing entries describe clerical or administrative services that may not be compensable, including entries that describe "database activities." Collectively, these entries exceed $24,000.00.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

29. **Multiple Participants in Conferences**. The Fee Examiner has identified conferences and conference calls attended by more than one person and has continued to express the concerns identified above and in the Preliminary Report.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

30. **Vague Tasks**. The Fee Examiner has identified specific billing entries that contain an insufficient description of a task and appear to be non-compensable.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

31. **Expenses**. The Fee Application, Exhibit E, contains a Summary of Expenses. The detail of these expenses were insufficient for the Fee Examiner to determine whether the expenses are compensable.

A. Travel expenses had been requested in a summary form and could not be properly evaluated for compensation. The expenses—categorized generally as airfare, mileage, lodging, tolls and parking, rental car, and meals—total $182,730.34. The Fee Examiner has requested an itemization of these expenses in accordance with the First and Second Advisories.

*LFR has indicated it will address the Fee Examiner's concerns about the Second Fee Application, but has not responded yet. Pending review of LFR's explanations, the*

*Fee Examiner has not drawn any conclusions about the compensability of the questioned charges.*

  B. Reimbursement of expenses has again been requested for TEA

*LFR has stated its intent to amend its retention application to include TEA as an approved subcontractor.*

  C. Multiple expense requests are identified as "communication fees," "materials and supplies," and "in-house rental" of equipment. These administrative fees and mark ups are not reimbursable expenses under the UST Guidelines.

*In response to the Fee Examiner's inquiry, LFR has acknowledged that its request for administrative markups and communication fees are inconsistent with the UST Guidelines and should be disallowed.*

*Suggested disallowance will be determined with LFR's substantive response.*

**Summary of First Fee Application**

*Total fees suggested for disallowance: $3,556.27.*

*Total expenses suggested for disallowance: $19,605.24.*

*Total fees and expenses recommended for disallowance: $23,161.51.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the Fee Examiner's preliminary observations, subject to the supplemental detail to be provided by LFR. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on this or any subsequent interim fee applications or final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Fee Examiner's Report and Statement of Limited Objection to First Interim Fee Application on LFR Inc. and Preliminary Report on the Second Interim Fee Application of LFR Inc.*

Dated: Green Bay, Wisconsin
June 22, 2010.

                                 GODFREY & KAHN, S.C.

By:     /s/ *Carla O. Andres*
        Carla O. Andres (CA 3129)
        Timothy F. Nixon (TN 2644)

        GODFREY & KAHN, S.C.
        780 North Water Street
        Milwaukee, Wisconsin 53202
        Telephone: (414) 273-3500
        Facsimile: (414) 273-5198
        E-mail: candres@gklaw.com
                  tnixon@gklaw.com

        *Attorneys for Fee Examiner*

5100015_2