Michael Hausfeld
Steig Olson (appearing)
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Tel (212) 830-9850
Fax (212) 480-8560

*Attorney for Sakwe Balintulo, et al.,*
*on behalf of all those similarly situated*

Diane Sammons (appearing)
NAGEL RICE LLP
103 Eisenhower Parkway
Roseland, NJ  07068
Tel (973) 618-0400
Fax (973) 618-9194

*Attorney for Lungisile Ntsebeza et al.,*
*on behalf of all those similarly situated*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| | **09-50026 (REG)** |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | |
| f/k/a **General Motors Corp.,** *et al.* | **Jointly Administered** |
| **Debtors.** | |

**CLASS PLAINTIFFS': (1) RESPONSE ON BEHALF OF *BALINTULO* AND *BOTHA*
PLAINTIFFS TO DEBTORS' (i) OBJECTION TO PROOFS OF CLAIM NOS. 1206, 7857
AND 10162 AND, IN THE ALTERNATIVE, (ii) MOTION TO ESTIMATE PROOFS OF
CLAIM NOS. 1206, 7587 AND 10162; AND (2) CROSS-MOTION UNDER RULE 9014
FOR RULE 7023 CLASS TREATMENT**

# TABLE OF CONTENTS

REQUEST FOR RELIEF & PRELIMINARY STATEMENT ................................................... 1

I.    BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................... 3

    A.    Procedural History ..................................................................................... 4

    B.    Allegations against GM .............................................................................. 6

    C.    The Plaintiffs ............................................................................................. 7

II.   THE COURT SHOULD PERMIT THE CLASS PROOFS OF CLAIM OR, IN
    THE ALTERNATIVE, ORDER ADDITIONAL AND ADEQUATE NOTICE
    TO THE ABSENT CLASS MEMBERS ...................................................................... 8

    A.    Applicable Standards. ................................................................................. 8

    B.    Class Treatment Is Appropriate Because Debtors Did Not Provide Class
       Members with Adequate Notice. ............................................................... 10

    *C.*    Class Plaintiffs Have Complied with Applicable Procedural Requirements. .......... 14

       i.    Class Plaintiffs' Motion for Class Treatment is Timely. .................................. 14

       ii.   Compliance with Rule 2019 Will Be Satisfied Upon This Court's
          Certification of the Class. .......................................................................... 17

    D.    The Lack of Pre-Petition Certification Does Not Bar the Class Proofs of
       Claim. ..................................................................................................... 19

    E.    The Advantages of Class Actions Are Realizable in This Case. ............................ 21

    F.    If the Court Declines to Permit Class Proof Of Claim, It Should Require
       Additional and Adequate Notice to the Class. .............................................. 24

III.  THE COURT SHOULD CERTIFY THE CLASSES BECAUSE THE
    REQUIREMENTS OF RULE 23 ARE SATISFIED. ................................................. 24

    A.    The Members of the Class are Ascertainable. .......................................... 25

    B.    The Class Actions Satisfy the Numerosity Requirement. ......................... 29

    C.    The Named Plaintiffs Are Typical of the Class and the Class Shares
       Common Questions of Law and Fact. ....................................................... 29

    D.    The Named Plaintiffs Are Adequate Representatives of the Absent Class
       Members. ................................................................................................. 31

    E.    Common Questions Predominate Over Individual Questions ................... 33

    F.    Class Certification Is Superior to Other Available Methods for Fairly
       Evaluating and Adjudicating This Controversy. ........................................ 39

IV.   Class Plaintiffs Are Prepared to Consider Expedited Estimation Procedures for
    Purposes of Plan Confirmation Upon a Finding of Undue Delay. .............................. 41

CONCLUSION ................................................................................................................. 43

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)....................................................31, 38

*Aquinda v. Texaco, 142 F. Supp. 2d (S.D.N.Y. 2001), aff'd*, 303 F.3d 470 (2d Cir. 2002) ..........37

*Barnett v. Bowen*, 794 F.2d 17 (2d Cir. 1986) ..............................................................................27

*Biediger v. Quinnipiac Univ.*, No. 03:09-621, 2010 WL 2017773 (D. Conn. 2010) ..............24, 25

*Bittner v. Borne Chemical Co.*, 691 F.2d 134 (3d. Cir. 1979)......................................................41

*Bresson v. Thomson McKinnon Sec.*, 118 F.R.D. 339 (S.D.N.Y. 1988) .................................34, 35

*Castano v. Am. Tobacco Co.,* 84 F.3d 734 (5th Cir.1996)............................................................39

*Doe I v. Karadzic*, 176 F.R.D. 458 (S.D.N.Y. 1997) ...................................................................31

*Does I v. The Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073 (D. N. Mar. I. May 10,
2002) ........................................................................................................................................31, 36

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007), *aff'd en banc*, 603 F.3d 571 (9th
Cir. 2010) ........................................................................................................................................ 28

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981).........................31, 32

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), *aff'd sub nom., Amchem
Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................................. 38

*Gortat v. Capala Bros., Inc.*, No. 07-3629, 2010 WL 1423018 (E.D.N.Y.  Apr. 9, 2010) ..........26

*Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767 (9th Cir. 1996)  .................. 26, 30-31, 36, 42

*In re Adelphia Commc'n Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007) ......................................41

*In re Agent Orange Prods. Liab. Litig.,* 818 F.2d 1457 (2d Cir.), *cert. denied,* 484 U.S.
1004 (1987) ........................................................................................................ 34, 35, 36

*In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008).....................................................30

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) ............................................................ 38

ii

*In re Am. Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988)................................................................9

*In re Amdura*, 170 B.R. 445 (D. Colo. 1994) ..............................................................................24

*In re Baldwin-United Corp.*, 52 B.R. 146 (Bankr. S.D. Ohio 1985) ...........................................18

*In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616 (Bankr. S.D.N.Y. 2009),
    *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).....................................................................................11

*In re Bicoastal Corp.,* 133 B.R. 252 (Bankr. M.D. Fla. 1991) ...................................................14

*In re Bison Resources, Inc.*, 230 B.R. 611 (Bankr. N.D. Okla. 1999)...........................................41

*In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989) *cert. dismissed*, 496 U.S. 944 (1990)..............14

*In re Chateaugay Corp.*, 104 B.R. 626 (S.D.N.Y. 1989) *appeal dismissed* 930 F.2d 245
    (1990)......................................................................................................................................8

*In re Cohen*, 95-10573, 1995 WL 346948 (Bankr. E.D. Pa. June 5, 1995)...................................19

*In re CommonPoint Mortgage Co.*, 283 B.R. 469 (Bankr. W.D. Mich. 2002) ...........................20

*In re Computer Learning Ctrs., Inc.,* 344 B.R. 79 (Bankr. E.D. Va. 2006) ................................15

*In re Copley Pharm., Inc.*, 161 F.R.D. 456 (D. Wyo. 1995) ......................................................36

*In re Dow Corning Corp.*, 211 B.R. 545 (Bankr. E.D. Mich. 1997) ...........................................41

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) .....................................30

*In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005)........................9, 10, 14, 16, 22, 23

*In re Evans Prods. Co.*, 60 B.R. 863 (S.D. Fla. 1986)..................................................................17

*In re First Alliance Mortgage Co.,* 269 B.R. 428 (C.D. Cal. 2001) ..................................16, 20, 21

*In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998)..........................10, 20

*In re GAC Corp.*, 681 F.2d 1295 (11th Cir. 1982) ......................................................................18

*In re Great W. Cities Inc. of N.M.*, 107 B.R. 116 (N.D. Tex. 1989)..............................................18

*In re Jamesway Corp.*, No. 95-44821, 1997 WL 327105
    (Bankr. S.D.N.Y. June 12, 1997)................................................................................10, 14, 20

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417 (E.D. La.
    1997) .....................................................................................................................................40

*In re Kaiser Grp. Int'l*, 278 B.R. 58 (Bankr. D. Del. 2002) ..............................................16, 17-18

*In re Mortgage & Realty Trust*, 125 B.R. 575 (Bankr. C.D. Cal. 1991) ................................17, 22

*In re Musicland Holding Corp.,* 362 B.R. 644 (Bankr. S.D.N.Y. 2007)...............10, 14, 15, 20, 21

*In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) ............................. 38

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .................................38, 39

*In re Nw. Airlines*, No. 05-17930, 2007 WL 2815917 (Bankr. S.D.N.Y. 2007) ........................ 15

*In re Retirement Builders, Inc.*, 96 B.R. 390 (Bankr. S.D. Fla. 1988) ................................. 19-20

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir 1995) ................................... 40

*In re Roman Catholic Archbishop of Portland*, 339 B.R. 215 (Bankr. D. Or. 2006) ............. 41-42

*In re S. African Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004), *rev'd in part sub
        nom*, *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (per
        curiam), *aff'd for lack of quorum, Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028
        (2008)........................................................................................................................4

*In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228 (S.D.N.Y. 2009) .................................5, 29

*In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16 (Bankr. E.D. Pa. 1995) ....10, 14, 19, 20, 23

*In re Spring Ford Indus., Inc.*, No. 02-15015, 2004 WL 231010 (Bankr. E.D. Pa. Jan. 20,
        2004) ...........................................................................................................................16

*In re Thomson McKinnon Secs., Inc.* 133 B.R. 39 (Bankr. S.D.N.Y. 1991) ..........................16, 18

*In re Trebol Motors Distrib. Corp.*, 220 B.R. 500 (B.A.P. 1st Cir. 1998) .......................18, 19, 20

*In re Tronox, Inc.*, No. 09-10156, 2010 WL 1849394 (Bankr. S.D.N.Y. May 6, 2010) .....8, 17, 20

*In re United Cos. Fin. Corp.*, 276 B.R. 368 (Bankr. D. Del. 2002).........................................16, 22

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir.), *cert. denied*, 536
        U.S. 917 (2001)..................................................................................................34, 37

*In re Waterman Steamship Corp.*, 157 B.R. 220, 221-22 (S.D.N.Y 1993) .................................11

*In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365
(Bankr. S.D.N.Y. 1997) ................................................................ 9, 10, 15, 22, 23, 32

*James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001) .......................................................29

*Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (per curiam), *aff'd
        for lack of quorum, Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) ................... 4

*Kpadeh v. Emanuel*, 261 F.R.D. 687 (S.D. Fla. 2009) ...................................................38

*Krueger v. New York Tel. Co.*, 163 F.R.D. 433 (S.D.N.Y. 1995)....................................30

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................. 28

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003) ................................. 35

*Moore v. PaineWebber, Inc.* 306 F.3d 1247 (2d Cir. 2002) ........................................34

*Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................................11

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005) ........37

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009) ..............36

*Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989), *cert. denied* 494 U.S. 1080
    (1990).....................................................................................................18

*Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir. 1984) ......................................11

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................................. 28, 29

*Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500 (S.D.N.Y. 1984) ....................................26

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).........................................................36

*Spinner v. City of New York*, No. 01-2715, 2003 WL 23648356 (E.D.N.Y. Oct. 10, 2003).........28

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196 (2d
    Cir. 2008)..................................................................................................24

*Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164 (4th Cir. 2010)....................................31

*Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 314 (E.D. La. 1992)...........................18

STATUTES AND RULES

11 U.S.C. § 502...............................................................................................41, 42

28 U.S.C. § 157...............................................................................................23, 42

28 U.S.C. § 1411..................................................................................................23

28 U.S.C. § 1350...................................................................................................4

Fed. R. Bankr. P. 2019.....................................................................................17, 18, 19

Fed. R. Bankr. P. 7023........................................................................................9

Fed. R. Bankr. P. 9010 ......................................................................................................... 19

Fed. R. Bankr. P. 9011 ......................................................................................................... 22

Fed. R. Bankr. P. 9014 .................................................................................... 1, 2, 9, 14, 15, 16

Fed. R. Civ. P. 23 ..................................................................................... 9, 24, 29, 33, 39

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUTPCY JUDGE:

The *Balintulo* and *Botha* Named-Plaintiffs[1] (collectively, "**Class Plaintiffs**") file this

response to the objections of Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**") and Cross-Motion under Rule 9014 for class treatment under Rule 7023, or in the

alternative, an order for additional and adequate notice to absent class members, and respectfully

urge this Court to reject MLC's request that the Court disallow and expunge Class Proofs of

Claims Nos. 1206, 7587 and 10162.  Class Plaintiffs represent to the Court the following:

## REQUEST FOR RELIEF & PRELIMINARY STATEMENT

1.      Class Plaintiffs have long been pursuing claims in federal district court against

multinational corporations, including General Motors Corporation ("**GM**"), that allegedly aided

and abetted the most serious human rights violations of South Africa's apartheid regime, on

behalf of proposed classes of those injured by such conduct.  Plaintiffs allege that GM

specifically designed and provided military and security vehicles that were intended to, and did,

terrorize black and coloured South Africans.  GM also worked closely with the government's

security forces that subjected its black and coloured employees to human rights abuses.  The U.S.

District Court for the Southern District of New York has sustained these claims in a decision

currently on appeal in the Second Circuit Court of Appeals.

---

[1]  For the convenience of the Court, Class Plaintiffs refer to the named plaintiffs in the
case *Ntsebeza et al. v. Daimler AG*, MDL No. 02-1499 (S.D.N.Y.) as the "*Botha* Plaintiffs."
However, Class Plaintiffs note that named-plaintiff Tozamile Botha was a Ford employee who is
not bringing a claim specifically against GM.  The *Botha* Class, however, includes two putative
classes relevant to GM: those GM employees victimized by apartheid security forces with the
cooperation of GM, and those injured or killed by security forces using vehicles manufactured by
GM and other car makers to violently suppress anti-apartheid protests.

2.      This Court should reject MLC's request to expunge Class Plaintiffs' claims

principally because MLC failed to provide even a modicum of reasonable notice of the Bar Date

to the absent class members that would have allowed them to file individual claims.  As MLC

was surely aware, given the eight years in which this litigation has proceeded and GM's

continuing substantial presence in South Africa, most members of the proposed classes are low-

income, poorly educated South Africans, most of whom do not speak English as their primary

language and who are still largely segregated from the white community, living in ghettos and

highly segregated townships—a consequence of the systematic oppression and

disenfranchisement they suffered.  In light of these realities, MLC's claim that publication in the

global editions of the *Financial Times*, *The Wall Street Journal*, and *USA Today* provided notice

to the absent class members is facially meritless.

3.      While MLC published notice in some *Canadian* publications, it did not publish

notice in a single *South African* publication that might be reasonably expected to reach the absent

class members.  Even under the most generous interpretation of the Constitution's Due Process

notice requirement, this falls far short.  MLC cannot at the same time disregard the absent

members of the proposed classes for notice purposes, while arguing that their claims must be

expunged.  Because expunging the class members' claims would raise serious constitutional

concerns, the Court should permit the Class Proofs of Claim, as class treatment will afford them

efficient representation in these proceedings.

4.      Moreover, despite MLC's arguments to the contrary, Plaintiffs have complied

with the technical and procedural requirements of Bankruptcy Rules 9014 or 2019(a) by filing,

with this Response, a cross-motion under Rule 9014 for class treatment under Rule 7023 (the

"**Motion**").  This cross-motion does not threaten any undue delay in the confirmation of MLC's

yet undeveloped distribution plan. And as the claims against GM and other defendants in this case are on appeal and stayed in federal court, it was prudent for Plaintiffs to avoid a waste of judicial resources by not filing for class treatment at an earlier stage of these proceedings.

5.      Class treatment of the proofs of claims under Rule 7023 is appropriate because the benefits of class treatment are realizable in this case. Because such treatment is the only means for class members to be compensated by MLC, it is superior to the bankruptcy procedure of filing individual claims. This is particularly so given MLC's failure to provide actual or constructive notice.

6.      In addition, the classes satisfy the requirements of Federal Rule of Civil Procedure 23. Questions common to class members will predominate in resolution of these claims. Class Plaintiffs' claims pose questions that overwhelmingly focus on *GM*'s conduct in aiding and abetting the apartheid regime, and *GM*'s legal defenses are likewise common to all class members.

7.      Finally, if the Court declines to permit class treatment or certify the class, at a minimum, in light of the notice defects, absent class members must be given an opportunity, following additional and proper notice, to file individual claims.


## I.    BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY

8.      The claims pending before this Court concern two related actions brought by 26 named plaintiffs in two separate groups—the "*Balintulo* Plaintiffs" and the "*Botha* Plaintiffs"—alleging that GM and other multinational corporations aided and abetted the most heinous crimes of the apartheid regime. *See Botha* and *Balintulo* Complaints, *Debtors' (i) Objection to Proofs of Claim Nos. 1206, 7857, and 10162 and, in the Alternative, (ii) Motion to Estimate Proofs of*

3

*Claim Nos. 1206, 7587, and 10162* ("**Objection**"), Exs. A/B[2] & C.  The actions were initially

filed in 2002 and 2003.  In their current form, they seek damages and other miscellaneous relief

under 28 U.S.C. § 1350 (the "Alien Tort Statute"), a statute that permits tort suits in United

States District Courts by private foreign citizens against violators of international law, including

violations of human rights.

### A.  Procedural History

9.      As originally filed, these and other related cases named a wide variety of

corporations under different legal theories.  In July 2004, the complaints were dismissed by the

United States District Court for the Southern District of New York, which held that aiding and

abetting claims were not cognizable under the Alien Tort Statute ("ATS").  *In re S. African*

*Apartheid Litig.*, 346 F. Supp 2d 538 (S.D.N.Y. 2004) *rev'd in part sub nom*, *Khulumani v.*

*Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (per curiam), *aff'd for lack of quorum, Am.*

*Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008).  On appeal, the United States Court of

Appeals for the Second Circuit reversed, in part, the District Court, holding that claims for aiding

and abetting human rights violations could be brought under the ATS and instructing the Court

to consider applications by Plaintiffs to amend their complaints to meet the standards for aiding

and abetting liability enunciated (but not decided) by the Second Circuit in that decision.

*Khulumani*, 504 F.3d at 260.

10.     On remand, Plaintiffs filed amended complaints in 2008, naming only the

relatively few corporations that, in Plaintiffs' judgment, were the worst offenders that actively

aided and abetted the most serious offenses of the apartheid regime.  On April 8, 2009, following

Defendants' motions to dismiss, the District Court held that the Plaintiffs' complaints had stated

---

[2]  The *Botha* Plaintiffs filed two proofs of claim.  *See* Objection, Exs. A & B.  The
complaints attached to those proofs of claim are identical.

4

claims against GM and the other Defendants and, thereby, denied (in part) their motions to dismiss.  *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228 (S.D.N.Y. 2009).  Claims permitted against GM are the aiding and abetting of torture; cruel, inhumane and degrading treatment ("**CIDT**"); extrajudicial killing; and apartheid.  *Id.* at 296.  The Court ruled that the litigation was to proceed apace, and set a discovery schedule.

11.    On June 1, 2009, GM filed for Chapter 11 bankruptcy.  On June 25, 2009, the remaining Defendants filed notice of an interlocutory appeal to the Second Circuit, eventually staying the District Court proceedings against them.  The principal issue on appeal is whether the cases should be dismissed in their entirety on political question grounds,[3] and whether ATS cases may be brought against corporations.  Oral argument on the appeal was held on January 11, 2010.  No decision has yet been rendered.

12.    During the pendency of the appeal, on September 16, 2009, this Court entered an Order establishing November 30, 2009 as the deadline for filing proofs of claim (the "**Bar Date**").  On August 29 and October 9, 2009 the *Botha* Plaintiffs filed two nearly identical proofs of claim.  On October 14, 2009 the *Balintulo* Plaintiffs filed their proof of claim.  *See Botha* and *Balintulo* Complaints, Objection at Exs. A/B & C.

---

[3]  On October 2003, the U.S. government, responding to submissions from the South African government critical of the expansive nature of the initial complaints, filed a statement of interest with the District Court similarly critical of the initial complaints.  In response to instructions from the Second Circuit Court of Appeals, *see Khulumani,* 504 F.3d at 263, Plaintiffs drastically amended their allegations.  As a result, on September 1, 2009 the South African Minister of Justice sent an unsolicited letter to the District Court recognizing that the claims concerned "aiding and abetting very serious crimes, such as torture [and] extrajudicial killing committed in violation of international law by the apartheid regime" and that the District Court was "an appropriate forum" to hear the claims. *See* Ltr. from J.T. Raadebe to Hon. S. Scheindlin (Sept. 1, 2009), Brief for Appellees at App. 538-39, *Balintulo v. Daimler AG*, No. 09-2778-CV (2d Cir. Oct. 14, 2009). The U.S. government similarly filed a brief urging the appeal be dismissed for lack of jurisdiction. Brief for the United States as *Amicus Curiae* Supporting Appellees, *Balintulo v. Daimler AG*, No. 09-2778-CV (2d Cir. Dec. 1, 2009).

**B.  Allegations against GM**

13.     Plaintiffs allege that GM aided and abetted the crimes of torture, CIDT, extrajudicial killing and apartheid by supplying specially designed and manufactured military vehicles intended for the purpose of violently suppressing anti-apartheid activities.  These vehicles were the means by which security forces carried out attacks in black townships, "suppress[ing] dissent and targeting blacks and political dissidents."  *See Balintulo* Complaint, Objection at Ex. C, ¶231.

14.     The vehicles GM specifically designed for the purpose of violently enforcing apartheid against South Africa's black and coloured population included heavy trucks for military purposes and armored personnel carriers.  *See Botha* Complaint, Objection at Ex. A, ¶85.  GM created paperwork identifying these vehicles as intended for the South African security forces and painted some vehicles in the plant to meet the security forces' specifications.  *Id.* ¶86. Officials from security forces, sometimes in uniform, visited GM's plants on a regular basis to inspect the vehicles.  *Id.*

15.     At all relevant times, GM knew that its specifically designed products would be used to violently suppress non-violent opponents of apartheid.  Its vehicles were used in the state violence at Soweto and Duncan Village and other similar incidents where class members were injured or their decedents' killed.  *Id. ¶¶*86-88.

16.     The claims further allege that GM acted in concert with apartheid security forces to suppress union and anti-apartheid activity through torture and CIDT inflicted on its employees:  Management at GM worked in tandem with the South African security forces, providing information about anti-apartheid and anti-union employees that was used to facilitate arrests and even participated in abusive interrogations, which included acts of torture.  *See Botha* Complaint, Objection at Ex. A, ¶89.

6

17.    GM worked closely with the apartheid regime to deny black employees their freedom to assemble and promoted the apartheid regime by relying on the South African security forces to harass and assault its black employees to prevent them from unionizing.  Even when black employees did unionize, GM management prohibited salaried employees from participating in activities that supported anti-apartheid political organizations.

### C.  The Plaintiffs

18.    The named Plaintiffs in these actions suffered gross human rights violations at the hands of the apartheid security forces with the substantial assistance of GM.  Plaintiff Tamboer, for example, was a shop steward for a South African automotive union.  He was required to inform GM when he left work for union activities.  He was arrested on numerous occasions as a result of this notification because of GM's collaboration with the government.  For example, during one occasion in 1982 he was arrested and detained, interrogated, and tortured for weeks because of his union activity at GM.  The officers who participated in this interrogations and torture visited the GM plant on many occasions.  *Id.* ¶90.

19.    Plaintiff Mbele was politically active in a union as a shop steward and was also a United Democratic Front member.  In 1986, the security forces detained Mr. Mbele, transporting him in a security vehicle to prison, and tortured him on account of his political activities.  For three days police beat and shocked Mr. Mbele with electric pipes and chocked him with a rubber tire.  Mr. Mbele lost his hearing and still suffers from the torture.  *Balintulo* Complaint, Objection at Ex. A, ¶26.

20.    Plaintiff Dyonashe has brought her claim on behalf of herself and the estate of her deceased son, Vuyani Adonis, who was thirteen when he was murdered by the security forces.  In August 1985, he was making an announced visit to see his mother in Duncan Village.

7

Security forces arrived in Duncan village in security vehicles and shot him without justification. *Botha* Complaint, Objection at Ex. A, ¶24.

21.     Plaintiff Mzamo's claim is on behalf of herself and the estate of her deceased son, Bubele Mzamo.  In March 1986, while the fifteen-year-old boy was playing in the street, he was shot and killed by security force officers in an armored security force vehicle.  *Id.* ¶26.

## II.    THE COURT SHOULD PERMIT THE CLASS PROOFS OF CLAIM OR, IN THE ALTERNATIVE, ORDER ADDITIONAL AND ADEQUATE NOTICE TO THE ABSENT CLASS MEMBERS.

22.     MLC's notice of the Bar Date was woefully inadequate to satisfy even the minimal due process standards required given the circumstances of this case, the nature of these class members, and MLC's knowledge of both.  Moreover, Class Plaintiffs have complied with applicable procedural rules in moving herein for class treatment, and class treatment provides the most efficient means by which the victims of apartheid can seek redress from MLC. Accordingly, the Court should permit Class Plaintiffs' Class Proofs of Claim under Bankruptcy Rule 7023 so as not to deny victims of the most egregious human rights violations their rights to justice and restitution from such a key contributor to those crimes.

23.     At the very minimum, if the Court does not permit class treatment, the Court should order additional, adequate, and targeted notice that is reasonably calculated to inform the victims of GM's activities their right to file individual claims within a reasonable period.  Such notice could be provided with minimal expense or burden.

### A.  Applicable Standards.

24.     In this District, proposed class representatives may file a class proof of claim as of right, whether or not the class has been previously certified.  *See In re Tronox, Inc.*, No. 09-10156, 2010 WL 1849394 at *2 (Bankr. S.D.N.Y. May 6, 2010) (citing *In re Chateaugay Corp.*,

8

104 B.R. 626, 634 (S.D.N.Y. 1989), *appeal dismissed*, 930 F.2d 245 (1990)); *see also In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (noting "this district follows the majority rule" in permitting class proofs of claim).

25.    Prior to permitting class proofs of claim, courts first determine under Rule 9014 whether application of Rule 7023 of the Federal Rules of Bankruptcy is appropriate and, second, whether the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met. *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4, 6 (S.D.N.Y. 2005). The primary consideration in determining the appropriateness of Rule 7023 in a particular case is whether resolution of class issues will *unduly* delay administration of the estate or prejudice the debtor or other creditors. *See id.* at 5 ("Although [there is] no express guidance for the court's exercise of this discretion, a pervasive theme is avoiding undue delay in the administration of the estate."); *Woodward*, 205 B.R. at 370.  An additional consideration is whether the benefits of class treatment—efficiency, compensation and deterrence—are realizable in bankruptcy. *See In re Am. Reserve Corp.*, 840 F.2d 487, 489-92 (7th Cir. 1988) (discussing advantages of class actions); *Woodward*, 205 B.R. at 369 (benefits of class action must be realizable in the bankruptcy case).

26.    Class treatment is appropriate where, as here:

- the class members did not receive actual or constructive notice of the bar date;

- the class is made up of unknown creditors;

- the motion for class treatment comes early enough so as not to unduly delay confirmation of, or distribution, under a bankruptcy plan;

- the class claims were pending long prior to the debtor's petition, or the class was certified pre-petition; and

- the compensatory benefits of class treatment are sufficiently large to justify some delay in the proceedings.[4]

**B. Class Treatment Is Appropriate Because Debtors Did Not Provide Class Members with Adequate Notice.**

27.     Class treatment is appropriate here because MLC failed to provide adequate

notice to members of the proposed classes.  As MLC was surely aware, given the eight years in

which this litigation has proceeded and GM's continuing substantial presence in South Africa,

most members of the proposed classes are low-income,[5] poorly educated South Africans, most of

whom do not speak English as their primary language[6] and who are still largely segregated from

---

[4]  *See, e.g., In re Bally Total Fitness of Greater N.Y.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009) (delay, pre-petition certification and adequacy of notice), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *Ephedra*, 329 B.R. at 5, 10 (timing of class treatment relative to status of bankruptcy proceedings and size of individual claims); *Woodward*, 205 B.R. at 376 (delay in seeking certification relative to stage of the bankruptcy proceeding and whether compensation is sufficiently significant to justify class treatment); *In re Jamesway Corp.*, No. 95-44821, 1997 WL 327105, at *5 (Bankr. S.D.N.Y. June 12, 1997) (pre-petition certification, adequacy of notice, absent class includes unknown creditors); *In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (adequacy of notice, absent class includes unknown creditors); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (pre-petition certification or class action commenced long before petition, individual notice, absent class includes unknown creditors); *In re Musicland Holding Corp.,* 362 B.R. 644, 651, 654 (Bankr. S.D.N.Y. 2007) (pre-petition certification, adequate notice, timing of motion, and whether liquidation plan has been negotiated, voted on or confirmed).

[5]  The average *annual* income for black South African households is approximately R37,700 Rand, or about $5,800; and approximately R79,423 for coloured households, or about $12,280.  By contrast, white South Africans earn on average R280,870 annually, or about $43,200.  *Income and Expenditures of Households 2005-2006*, at 9, http://www.statssa.gov.za/publications/P0100/P01002005.pdf. Conversion rates assume an average of R6.5 = $1.00—the approximate exchange rate in 2005-2006.

Twenty-six percent of South Africans earn less than $1 per day. *See* United Nations, Millennium Development Goals Indicator, http://mdgs.un.org/unsd/mdg/Data.aspx.

[6]  IsuZulu is the primary language of 10 million black South Africans (30%). IsiXhosa is the second most popular language, with more than 7 million black South Africans speaking it as the primary language (22%). The remainder speak a range of other native languages. Afrikaans is the primary language of over 80% of coloured South Africans. By contrast, English is the primary language of less than one million black South Africans (about three percent) and of less than 800,000 coloured South Africans (18 percent). *Stats SA, Census 2001, Census in Brief* at 18, http://www.statssa.gov.za/publications/CinBrief/CinBrief2001.pdf (last visited June 18, 2010).

10

the white community, living in ghettos and highly segregated townships—a consequence of the

systematic oppression and disenfranchisement they suffered.  In light of these realities, MLC's

claim that publication in the global editions of the *Financial Times*, *The Wall Street Journal*, and

*USA Today* provided notice to the absent class members is meritless.

28.    Due process requires that notice must be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950).  Notice must be more than a "mere gesture" and the debtor must use "means . . .

such as one desirous of actually informing the absentee might reasonably adopt to accomplish

it." *Id.* at 313, 315.  Accordingly, the debtor must have "acted reasonably in selecting means

likely to inform persons affected."  *In re Waterman Steamship Corp.*, 157 B.R. 220, 221-22

(S.D.N.Y. 1993) (citations and quotations omitted).

29.    For this reason, class treatment in bankruptcy is appropriate where, as here, the

absent class members did not receive actual or constructive notice of the bar date.  *See, e.g.,*

*Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 623 (10th Cir. 1984) (discharge without

adequate notice violates due process); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R.

616, 620 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (class treatment may be

warranted when there is no constructive or adequate notice).

30.    Here, MLC's publication of the bar date notice in the global editions of the

*Financial Times*, *The Wall Street Journal*, and *USA Today* cannot satisfy due process because it

was not even *minimally*, let alone reasonably, calculated to reach the class members.  No one

seriously intending to notify the absent class members here would have chosen this approach.

Despite the availability of numerous publications in South Africa far more likely to reach this

target audience,[7] MLC published notice only in *global* editions of the publications targeted

largely at the most affluent, educated, English-speaking whites and with limited circulation in

South Africa.[8]   It is unreasonable for MLC to conclude these publications have any penetration

into the highly segregated townships and ghettos[9] in which the majority of class members likely

reside.   Yet MLC chose not to publish notice in a single national South African publication of

general circulation, nor any local paper, non-English publication, or any publication targeted at

---

[7]   The *Sunday Times*, South Africa's largest national newspaper and distributed throughout South Africa, has an average weekly readership of 3.24 million. The *Daily Sun*, targeted at the black working class, is the largest daily newspaper in South Africa, with average daily sales of more than 300,000 and an estimated daily readership of 2.29 million. The *Star* is distributed throughout South Africa with an average daily readership of 616,000. The *City Press*, with an average weekly readership of 2 million, is aimed at the black market. The *Sunday World*, also aimed at black readers reaches populations in Guateng, Mpumalanga, Limpopo and North West provinces. The *Sowetan*, aimed at English literate blacks, has an average daily readership of 1.5 million and 118,000 in daily sales. Three publications are published in Afrikaans: *Die Burger*, distributed throughout the Western Cape, with an average of 500,000 daily readers; *Beeld,* with an average of 350,000 daily readers; and *Volksblad*, published in the provinces of Free State and the Northern Cape with an average of 350,000 daily readers. *Isolezwe*, a publication targeted at IsiZulu speakers*,* has an average daily readership of nearly 400,000. *See* The Press in South Africa, http://www.southafrica.info/ess_info/sa_glance/constitution/news.htm (last visited June 18, 2010).

[8]   The *Wall Street Journal*'s global edition has an average daily circulation of only 1.85 million for all the countries in which it is circulated.  *See* The Wall Street Journal Global Edition Circulation, http://www.wsjmediakit.com/newspaper/circulation/global (last visited June 18, 2010).

The *Financial Times* has worldwide circulation of 390,000 and a readership of 1.3 million globally. *See* Financial Times, About Us, http://www.ft.com/aboutus (last visited June 18, 2010).  FT describes itself as the "best route to the world's most influential, affluent and prominent people" and its readers manage or influence assets of US $25 trillion with one in seven of them a "Sterling millionaire." FT Audience and Stats and Figures, http://www.ftadmin.co.uk/downturn_web/key_stats.html (last visited June 13, 2010).

*USA Today's* International Edition has circulation of only 60,000, and its average international reader has an income of $141,000. *See* USA Today, Press Room, http://www.usatoday.com/marketing/media_kit/pressroom/press_kit_usat_international.html (last visited June 18, 2010).

[9]   *See generally* Li Pernegger & Susanna Godehart, Townships in the South African Geographic Landscape: Physical and Social Legacies and Challenges (2007), http://www.finance.gov.za/divisions/bo/ndp/TTRI/TTRI%20Oct%202007/Day%201%20-%2029%20Oct%202007/1a%20Keynote%20Address%20Li%20Pernegger%20Paper.pdf.

the black population despite their significantly larger circulation in South Africa and the greater

likelihood those publications would reach this socially and economically disadvantaged class of

black and coloured victims.

31.     MLC's failure to do so in South Africa is even more unreasonable given that it

clearly recognized the need for this type of publication in Canada, publishing its notice in a

national Canadian publication and two local Canadian publications in both French and English.

Objection at ¶30.

32.     MLC's failure to publish notice in even *The Herald,* the newspaper in Port

Elizabeth where GM's majority-owned South African subsidiary, GMSA,[10] has manufacturing

operations, further demonstrates the insufficiency of its publication notice.  GM knew that

present and former employees of this plant are among the class members in the *Botha* Complaint.

33.     Thus, while in many cases notice publication can be sufficient for due process,

*Mullane*, 339 U.S. at 317, it cannot be sustained under the circumstances here.  Notice

publication of this type is not notice a debtor "desirous of actually informing the absentee"

would reasonably adopt to reach a low-income population of black and coloured, largely non-

English speaking, ghettoized, South Africans.  And MLC has not demonstrated, nor can it given

its publication notice in Canada, that publication in even one national or local South African

publication was "not reasonably possible or practicable." *Id.*

34.     Accordingly, as MLC provided neither actual nor constructive notice to the

proposed apartheid class plaintiffs, the court should permit the class proofs of claim.  Class

treatment is an appropriate remedy for this defect, as the representatives can act in the class's

---

[10]  GMSA was wholly owned by GM Corporation until 1986, when it divested in the
company. In 2004, GM again became the sole owner of GMSA. *See* GM South Africa Overview,
http://www.gmsa.com/content_data/LAAM/ZA/en/GBPZA/999/images/Pdf/GM_overview.pdf
(last visited June 18, 2010).

interests. *See, e.g., Bally*, 402 B.R. at 620; *In re Jamesway Corp.*, No. 95-44821, 1997 WL 327105, at *5 (Bankr. S.D.N.Y. June 12, 1997) (recognizing class treatment is particularly appropriate "where unnamed class members are in large part 'unknown creditors'" because of the superior notice class procedures provide) (citing *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995)).

### C. Class Plaintiffs Have Complied with Applicable Procedural Requirements.

#### i.    *Class Plaintiffs' Motion for Class Treatment is Timely.*

35.    In addition, Plaintiffs have met all procedural requirements—certainly all those that are clear—and, just as importantly, have acted reasonably under the circumstances. Consequently, MLC's request to expunge the proposed class members' claims on technical grounds should be denied.

36.    The Bankruptcy Code sets no deadlines for filing a motion for application of Rule 7023. *In re Charter Co.*, 876 F.2d 866, 874 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990). However, a court may not consider class treatment under Rule 7023 until there is a contested matter pursuant to Federal Rule of Bankruptcy 9014.[11]

---

[11] Courts have disagreed about whether the mere filing of a proof of claim constitutes a preliminary stage of a contested matter, permitting a Rule 9014 motion at any time, or a contested matter arises only after an objection is filed, barring the motion until that time. *Compare Charter*, 876 F.2d at 874 (class cannot file 9014 motion until after objection) *and In re Bicoastal Corp.*, 133 B.R. 252, 256 (Bankr. M.D. Fla. 1991) (motion may be filed within 90 days of objection) *with Ephedra*, 329 B.R. at 7 (objection unnecessary to move for class treatment).

The answer is unsettled in this district. *See Chateaugay*, 104 B.R. at 634 (noting that objection to class proof of claim "clearly establishes a contested matter" vesting court with authority to consider Rule 7023, but declining to decide whether mere filing of class proofs would do so); *Musicland*, 362 B.R. at 651-52 (noting there is some question whether the class could have filed a Rule 9014 motion prior to objection and citing cases). *Cf. Ephedra*, 329 B.R. at 6 (noting that any procedural default may be excusable because the rules "are so opaque as to the procedure governing class actions").

37.     In determining whether a Rule 9014 motion for class treatment is untimely,
"delay does not automatically disqualify the class claim," *In re Musicland Holding Corp.,* 362
B.R. 644, 651, 652 (Bankr. S.D.N.Y. 2007), and "failure to seek certification does not mandate
denial in the absence of compelling circumstances," *Woodward*, 205 B.R. at 370.

38.     Here, there are no such circumstances.  MLC is months away from finalizing a
distribution plan, and even further from a vote on, and confirmation of, that plan, Class
Plaintiffs' Rule 9014 motion now will not prejudice either MLC or other creditors.  Courts
largely consider a motion untimely where the motion has been made so late in the bankruptcy
proceedings as to prejudice any party or seriously delay proceedings, such as after a plan has
been negotiated, voted on, or confirmed.  *See, e.g., In re Computer Learning Ctrs., Inc.,* 344 B.R.
79, 89 & n.13 (Bankr. E.D. Va. 2006) (motion filed four years after bar date comes too late);
*Musicland*, 362 B.R. at 649, 656 (where class members received actual notice, motion made after
vote of the creditors and 10 days after confirmation hearing came too late); *Woodward*, 205 B.R.
at 370 (noting that as a case moves toward conclusion, the more likely it is resolving certification
will interfere with administration, and finding post-confirmation motion prejudicial).[12]

39.     Indeed, MLC's deadlines for individual creditors to submit liquidated amounts for
their proofs of claim expired only in March.  MLC appears to be still in the early stages of
developing a distribution plan.  And since the question of whether these claims may move
forward at all is pending before the Second Circuit, a motion filed at an earlier date could have
wasted judicial resources if the Trial Court's denial of the motion to dismiss had been reversed.

---

[12]  *See also, e.g., In re Nw. Airlines*, No. 05-17930, 2007 WL 2815917, at *3 (Bankr.
S.D.N.Y. 2007) (motion came too late when plan had been confirmed four months prior, initial
distribution had been made, and class treatment would interfere with second scheduled
distribution).

40.    Where, as here, there is no interruption of an imminent or ongoing distribution,

class treatment is appropriate. *See, e.g., In re Spring Ford Indus., Inc.*, No. 02-15015, 2004 WL

231010, at *1,*4-5 (Bankr. E.D. Pa. Jan. 20, 2004) (certifying class and finding no prejudice to

debtor or creditors where class proof of claim was timely filed and Rule 9014 motion was filed

one year after filing proof of claim); *In re United Cos. Fin. Corp.*, 276 B.R. 368, 371, 376-377

(Bankr. D. Del. 2002) (certifying class where class proof of claim was filed prior to bar date,

debtors objected nine months later, after which class moved for certification).[13]  The cases on

which MLC relies are inapposite because each involved a motion for class treatment that came

just before or after confirmation or distribution, or in which the class representatives never

moved for certification at all.[14]

41.    MLC's generalized assertions that class treatment will bog down these

proceedings amount to little more than an argument that class treatment can never be

appropriate—an argument courts in this district have rejected in holding class proofs of claim

may be filed as of right.  *See, e.g.*, *Chateaugay*, 104 B.R. at 633 (holding class proof of claim

may be filed as of right because "there is no reason to think that permitting the filing of class

claims will cause special delay or uncertainty in settling the debtor's estate").  In fact, the class

---

[13]  *See also In re Kaiser Grp. Int'l*, 278 B.R. 58, 62, 67 (Bankr. D. Del. 2002) (certifying class where motion for class certification was filed a year after filing of the class proof of claim and four months after debtor's initial objection); *In re CommonPoint Mortgage Co.*, 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002) (certifying a class where class action was never certified by a federal court under Rule 23, class representative timely filed proofs of claim and nine months later filed for class treatment); *In re First Alliance Mortgage Co.,* 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Rule 7023 although class had not previously been certified and motion for class treatment was filed after objection).

[14]  *See Ephedra*, 329 B.R. at 5 (denying class treatment where motion came after liquidating plan had been submitted to creditors); *Woodward*, 205 B.R. at 370 (denying class treatment were class representative raised the issue only after plan was confirmed and 70 percent of the assets distributed); *In re Thomson McKinnon Secs., Inc.* 133 B.R. 39, 39 (Bankr. S.D.N.Y. 1991) (class representative never filed Rule 9014 motion and instead moved for discovery more than a year and half after the petition was filed).

issues here can be efficiently resolved.  Numerous tools are available for the court to manage

class treatment, *see, e.g., Am. Reserve*, 840 F. 2d at 490-91(discussing Rule 23 procedures that

promote efficiency), and Plaintiffs would be more than willing to work with the Court and MLC

to craft efficient procedures for certification and appropriate opt-out notice to the absent class

members.

42.    Moreover, as MLC itself notes, if there is a concern that class treatment would

threaten to delay approval of the plan, in some circumstances, estimation of class claims might

be appropriate. *See, e.g.*, *Chateaugay*, 104 B.R. at 633; *In re Evans Prods. Co.*, 60 B.R. 863,

868-69 (S.D. Fla. 1986).  As noted *infra*, if warranted, estimation for purposes of plan

confirmation in this case would not be unduly burdensome.  Accordingly, as Class Plaintiffs'

motion for treatment under Rule 7023 and class certification is timely, the Court should permit

class treatment.

### ii.    *Compliance with Rule 2019 Will Be Satisfied Upon This Court's Certification of the Class.*

43.    MLC's hyper-technical assertion that Class Plaintiffs are in procedural default

because they have not yet submitted a Rule 2019 verification of their authority to represent the

class lacks merit.  Where, as here, putative class representative file the proofs of claim, that

status is at least minimally sufficient to authorize agency for class filing purposes. *Charter*, 876

F.2d at 873.  If this court certifies the class, the class representatives will be authorized as agents

for the class and the original filing becomes effective for the whole class *nunc pro tunc*. *Id.; Am.*

*Reserve*, 840 F.2d at 493; *Tronox*, 2010 WL 1849394 at *2; *In re Mortgage & Realty Trust*, 125

B.R. 575, 579 (Bankr. C.D. Cal. 1991).  If not, the question of compliance with Rule 2019 is

moot. *Charter*, 876 F.2d at 873.  The lack of pre-petition certification does not defeat the class

representatives' authority to file a class claim. *See Tronox*, 2010 WL 1849394 at *2; *In re*

17

*Kaiser Grp. Int'l*, 278 B.R. 58, 63 (Bankr. D. Del. 2002). Therefore, if class certification is

obtained, the objectives of Rule 2019 are satisfied, and class plaintiffs are in compliance with

Rule 2019. *In re Thomson McKinnon Secs., Inc.* 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (citing

*Charter*, 876 F.2d at 873).[15]

44.    MLC's argument, made without citation, that class counsel cannot qualify as an

authorized agent for the class is equally unavailing. Where an attorney represents a class, the

attorney is acting as the agent for the client class and need not document his or her authority. *In*

*re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998) (rejecting *Reid v.*

*White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989), *cert. denied* 494 U.S. 1080 (1990), and citing

Fed. R. Bankr. P. 9010); *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 314 (E.D. La.

1992) (holding attorney representing a putative class need not file Rule 2019 statement to file a

proof of claim); *In re Great W. Cities Inc. of N.M.*, 107 B.R. 116, 120 (N.D. Tex. 1989) (attorney

acting for group of creditors need not file proof of agency). The cases on which MLC relies

provide little support.[16] Therefore here—where class counsel filing the class proofs of claim on

behalf of the named representatives have represented these classes for more than eight years as

_____

[15] Because formalistic application of Rule 2019 is impractical in class situations, a Rule 2019 filing is unnecessary. *Wilson*, 141 B.R. at 314.

[16] The holding in *Reid v. White Motor Corp.* that class counsel must file a Rule 2019 statement has been widely criticized and rejected. *See, e.g., Reid*, 886 F.2d at 1472 (Wellford, J. dissenting in part and concurring in part) (denying class proof of claim based on the attorney's purported lack of agency status was "clear error"); *Wilson*, 141 B.R. at 314 (*Reid*'s conclusion conflicts with Rule 9010); *Trebol*, 220 B.R. at 502-03 (concurring with the reasoning of *Wilson*, 141 B.R. at 313, and declining to follow *Reid*).

MLC's reliance on *In re Baldwin-United Corp.*, 52 B.R. 146, 148-49 (Bankr. S.D. Ohio 1985) is similarly flawed because that court concluded that even representatives of previously certified classes were not agents of the class for bankruptcy purposes and thus class proofs of claim were never permissible—a position, as discussed above, that has been widely rejected by most courts. Finally, in *In re GAC Corp.*, 681 F.2d 1295 (11th Cir. 1982), the critical factor in the rejection of class treatment was evidence that the notice of bar date specifically precluded class proof of claim and thus the court had already rejected the proof of claim. *See Charter*, 876 F.2d at 875-76 (explaining the result in *In re GAC* ).

this action has progressed through the trial court, the appellate court, and the Supreme Court—class counsel are agents of the class representatives under Rule 9010.  And counsel here have filed today Rule 2019 statements.

### D.  The Lack of Pre-Petition Certification Does Not Bar the Class Proofs of Claim.

45.     There is no need for pre-petition certification in order for a court to permit a class proof of claim.  MLC misrepresents the nature and import of pre-petition certification in cases where the lack thereof was a substantial basis for the decision.  The court in *In re Sacred Heart* was concerned with "virgin" classes, such as the one at issue filed only 2 days prior to the petition, where the adequacy of the class representative was uncertain.  177 B.R. at 23 (Bankr. E.D. Pa. 1995).  It thus concluded that the "best candidates" for class treatment in bankruptcy were pre-certified classes where adequacy was uncertain and the court may be spared that inquiry *and class actions "filed a considerable time pre-petition* and allowed to proceed as a class." *Id.* at 22, 23 (noting that in virgin classes it is impossible to draw inferences in favor of the propriety of the class) (emphasis added); *see also In re Cohen*, 95-10573, 1995 WL 346948, at *3 (Bankr. E.D. Pa. June 5, 1995) (pre-petition certification is a strong indication of adequacy).  Here, the class actions at issue filed in 2002 and 2003 have been pending for more than eight years and have been aggressively litigated.  Thus, as discussed *infra*, there can be little concern about adequacy of the class representatives in these long-standing actions, and they fall within *Sacred Heart*'s categories of class claims favored in bankruptcy.

46.     Though some courts have noted pre-petition certified actions in which there has been a final judgment for damages may present clear cases for class treatment in bankruptcy, *see Trebol*, 220 B.R. at 502,[17] the lack of pre-petition certification does not preclude class treatment

---

[17]   Contrary to MLC's contention, Objection at ¶26, neither *Trebol* nor *In re Retirement Builders, Inc.* held or even suggested that actions *lacking* pre-petition certification were

in bankruptcy. *Am. Reserve*, 840 F.2d at 488, 493 (bankruptcy court did not err in determining that Rule 23 was applicable to an uncertified class); *Musicland*, 362 B.R. at 652) (lack of certification does not automatically disqualify a class claim); *In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (class treatment appropriate though class was not filed or certified pre-petition); *In re CommonPoint Mortgage Co.*, 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002) (certifying a class where class action was not certified by a federal court under Rule 23); *In re First Alliance Mortgage Co.,* 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Rule 7023 although class had not previously been certified). Nor is the filing of a class action a prerequisite for class proofs of claim. *Tronox*, 2010 WL 1849394 at *2.

47.    Moreover, in *Sacred Heart* and similar cases emphasizing pre-petition certification as a relevant factor, all or a substantial part of the absent class members received *actual* notice of the bar date. *See Sacred Heart*, 177 B.R. at 19, 24 (debtor provided individual notice to all known employee class members); *Bally*, 402 B.R.at 620 (all present and former employees terminated after 2004 received actual notice), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (large portion of the class received actual notice); *Jamesway*, 1997 WL 327105, at *8 (actual notice of 11,700 employees).

48.    In such cases, without prior certification, such *individually* notified creditors could not reasonably rely on the filing of a class proof of claim as an alternative to individual filing, and permitting class treatment would be inequitable to those class members who did submit proofs of claim. *Musicland*, 362 B.R. at 656; *Sacred Heart*, 177 B.R. at 24; *Jamesway*,

---

inappropriate for class treatment in bankruptcy, asserting instead only that pre-certification merited class treatment. *See Trebol*, 220 B.R. at 502; *Retirement Builders*, 96 B.R. 390, 392 (Bankr. S.D. Fla. 1988).

1997 WL 327105 at *5, 7 & 10.  As a result, class treatment for "putative members of an

uncertified class who received *actual* notice of the bar date but did not file timely claims are the

least favored candidates for class action treatment."  *Musicland*, 362 B.R. at 655 (declining to

permit Rule 7023 treatment where all class members received individual notice and motion for

certification came after the liquidation plan was voted on) (emphasis added).  Because none of

the absent class members here received actual notice, these equitable considerations pertinent to

individually notified class members' unreasonable reliance are not relevant.

49.    And, although there is not a pre-petition district court certification on which this

court can rely, as noted *supra*, the underlying requirements of Rule 23 and expedited procedures

available to this Court allow for a timely decision on certification without undue disruption to

confirmation of the plan.

**E.  The Advantages of Class Actions Are Realizable in This Case.**

50.    Class proofs of claim are particularly appropriate where, as here, the "benefits that

generally support class certification [are] realizable in the bankruptcy case."  *See Woodward*, 205

B.R. at 369.  That analysis must be based on the individual circumstances of the case, rather than

generalized assertions about class actions.  *First Alliance*, 269 B.R. at 445.  Class action benefits

include efficiency of consolidation in a single forum, compensation of claimants that cannot be

achieved in any other way, superior notice requirements, and deterrence of future wrongdoing by

the debtor or other businesses.  *Am. Reserve*, 840 F.2d at 489-93 (discussing procedural and

substantive advantages of class treatment).  Further, class treatment in bankruptcy fosters

bankruptcy's goals of broader creditor participation in distribution and equal treatment of

creditors. *Charter*, 876 F.2d at 871.  Here, class treatment will achieve the compensation,

deterrence and efficiency benefits in a way that individual proofs of claim never could.

51.    First, class actions are particularly appropriate in cases where class members may

not recognize that they are entitled to file or where the information costs of investigating one's

potential claim are too high.  As the Seventh Circuit noted:

> [H]olders of contingent claims . . . may not recognize their entitlement to file unless some
> champion appears. The representative (presumably) has done substantial investigation to
> identify and shape the claim. Even though there is no fee to file claims in bankruptcy, the
> opportunity costs of the time needed to investigate and decide whether to file may be
> substantial, especially because Bankruptcy Rule 9011(a)  . . .  requires every claimant to
> investigate the facts and do necessary legal research before filing. The combination of
> contingent claims (which many people may not identify as something they are entitled to
> pursue) and the effort needed to decide whether to pursue an identified claim means that
> for many small claims, it is class actions or nothing.
> . . . .
> The class proof of claim may be essential to discover what the bankrupt's entire debts are,
> and therefore who should be paid what.

*Am. Reserve*, 840 F.2d at 489-90; *see also Mortgage & Realty*, 125 B.R. at 581 (class action may

be the only opportunity for recovery); *United Cos. Fin. Corp.*, 276 B.R. at 376 (class treatment

superior where members may not be aware of their legal rights).  This is particularly true here,

where class members are socially and economically disadvantaged, reside abroad, and speak

languages other than English.  Despite the value of their claims, class members lack the

wherewithal to determine whether they have a valid claim let alone the ability to understand their

legal rights in complex U.S. bankruptcy actions.

52.    Second, the compensatory benefits of class actions are particularly realizable in

bankruptcy where the class members' damages are significant. *See Am. Reserve*, 840 F.2d at 490.

Here, Class Plaintiffs seek damages for injuries resulting from torture, CIDT and extrajudicial

killing—hardly the type of small claims that courts in this district have found insufficient to

justify class treatment.  *See, e.g., Woodward*, 205 B.R. at 376 (recovery of $100 too

insignificant); *Ephedra*, 329 B.R. at 9-10 (recovery of $4.50 too insignificant).

53.     Third, while it may sometimes be true that class members can recover in
bankruptcy by filing individual proofs where the claims are small and uncontested without ever
having to prove their case, *Woodward*, 205 B.R. at 376, that is not true here.  GM has vigorously
defended against these claims since they have been pending, their value is significant, and MLC
disputes their validity, Objection at ¶58.  Thus each class member would have to present and
prove liability—something that would burden class members of this nature.  And because these
are personal injury claims, the merits of a disputed claim may not be adjudicated by this court.
*See* 28 U.S.C. §§ 157(b)(5), 1411(a).  Each filing class member would individually proceed to
trial unless settlement was achieved.  Accordingly, as most class members lack the wherewithal
to pursue individual actions such that class treatment is the only means of recovery against the
debtor and have significant monetary claims, and bankruptcy treatment here without class
treatment would not permit easy recovery, both the compensatory and efficiency benefits of class
actions are not only realizable, but superior to individual treatment.  *See CommonPoint
Mortgage Co*., 283 B.R. at 479.

54.     Fourth, even assuming *arguendo* that MLC's publication notice satisfied due
process, class treatment here permits superior notice.  *See Ephedra*, 329 B.R. at 9 (notice
requirements of Rule 23 are superior to bankruptcy notice); *Sacred Heart*, 177 B.R. at 22 (where
absent class members are unknown creditors, the class device "may provide the only form of
notice to such parties and be advisable to utilize").

55.     Finally, class treatment here accomplishes the deterrence benefits of class actions.
Those benefits include exemplary deterrence—deterring comparable wrongdoing by actors other
than the debtor.  *Am. Reserve*, 840 F.2d at 491; *CommonPoint*, 283 B.R. at 481.  Although MLC
will be liquidated, a successor entity continues under effectively the same name and identity and

largely the same management; the reputational impacts of compensation under these circumstances will also deter future violations by that company and others.

### F. If the Court Declines to Permit Class Proof Of Claim, It Should Require Additional and Adequate Notice to the Class.

56. In the alternative, if the Court does not recognize the class proofs of claim, it should order additional and adequate notice to the absent class members to satisfy due process. *See Am. Reserve*, 840 F.2d at 493-94 (court may order additional notice as alternative to class treatment); *In re Amdura,* 170 B.R. 445, 451-52 (D. Colo. 1994) (where notice was inadequate, additional notice must be provided if class treatment is denied). MLC's claim that additional notice would be futile and unduly burdensome assumes that prior notification was adequate and that additional publication notice would be excessively costly. Neither assumption is correct. There is no reason to believe that class claimants, *properly* notified, and working through non-governmental organizations as intermediaries, would not file individual proofs of claim. This could be done swiftly and relatively inexpensively.

### III. THE COURT SHOULD CERTIFY THE CLASSES BECAUSE THE REQUIREMENTS OF RULE 23 ARE SATISFIED.

57. Rule 23(a) establishes four prerequisites for class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201-02 (2d Cir. 2008). Plaintiffs must also demonstrate that the class they seek to certify is ascertainable. *Biediger v. Quinnipiac Univ.*, No. 03:09-621, 2010 WL 2017773, at *2 (D. Conn. 2010). Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The proposed classes meet all these requirements.

58.     The claims remaining against GM include aiding and abetting torture, CIDT, extrajudicial killing, and apartheid.  While "apartheid" remains a claim, there is no proposed "apartheid victim" class that would encompass the majority of the South African population as MLC contends.  Objection at ¶30.  Rather, the proposed classes are limited in time and scope.

59.     All members of all proposed classes are victims of the same course of conduct— GM's aiding and abetting of the apartheid security forces' violations of human rights.  All members of the putative classes are victims thereof.  The subclasses in both the *Balintulo* and *Botha* complaints are sufficiently narrow as to GM.  *Balintulo* alleges three subclasses: victims of (1) CIDT, (2) torture and (3) extrajudicial killings by South African security forces from 1960 to 1994.  *See* Balintulo Complaint, Objection, Ex. C at ¶¶36.  *Botha* alleges two subclasses: (1) GM employees who because of their union and anti-apartheid views and actions were subjected to dismissal, arrest, intimidation, detention and torture by South African security forces acting in concert with and substantial assistance from GM, and; (2) individuals who were killed or injured by security forces using military vehicles manufactured by GM.  *See* Botha Complaint, Objection at Ex. A ¶¶149-50.

60.     MLC's arguments against class certification rest almost entirely on its distortion of the scope of the classes with claims against GM.  *See* Objection at ¶38 (contending the classes applicable to GM include victims of denationalization and detention for passbook violations— claims that lie against IBM).  Instead, the classes with claims against GM encompass a limited and identifiable segment of those who were impacted by apartheid.

### A.  The Members of the Class are Ascertainable.

61.     "A class is ascertainable if its members can be identified by reference to objective criteria and if such identifications can be made in an administratively feasible manner." *Biediger*, 2010 WL 2017773, at *3 (citing *Taylor v. Hous. Auth. of New Haven*, 257 F.R.D. 23,

28 (D. Conn. 2009)). The ascertainability "standard, however, is not demanding.  It is designed

only to prevent the certification of a class whose membership is truly indeterminable." *Gortat v.*

*Capala Bros., Inc.*, No. 07-3629, 2010 WL 1423018, at *2 (E.D.N.Y.  Apr. 9, 2010). Contrary to

MLC's suggestion, Objection at ¶38, ascertainability does not mean that every class member be

identifiable *prior* to class certification.  *Id.* (citation omitted); *Somerville v. Major Exploration,*

*Inc.,* 102 F.R.D. 500, 503 (S.D.N.Y. 1984).  Rather, the Court need only "be able to ascertain the

general *boundaries* of the proposed class." *Gortat,* 2010 WL 1423018, at *2 (emphasis added)

(internal quotations and citation omitted).   The class members need only be later capable of

identification.

62.     The proposed classes in each of the complaints here are ascertainable because the

class members can be identified by objective criteria.

The *Balintulo* proposed classes include:

- Extrajudicial Killing Class: "All persons who are surviving personal representatives . . . of persons who were subject to extrajudicial killing by South African security forces during the period from 1960 to 1994."

- Torture Class: "All persons who were themselves subject to torture and rape by South African security forces during the period from 1960 to 1994."

- Cruel Treatment Class: "All persons who were themselves subject to cruel, inhuman, and degrading treatment by South African security forces during the period from 1960 to 1994."

*Balintulo* Complaint, Objection at Ex. C, ¶36.

63.     Each of the injuries that define the *Balintulo* classes can be determined by

objective criteria—by reference to the definition of the violation under international law.[18]  The

---

[18]   That the class is defined in terms of the human rights abuses by the South African apartheid security forces that itself involves legal inquiries is no barrier to certification here. *See e.g., Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 774 (9th Cir. 1996) (upholding certification of class claims under the ATS  defined as "[a]ll current civilian citizens of the . . .

*Botha* proposed class also includes defined subclasses that incorporate by reference the definitions of the discrete international law violations at issue. *The Botha* proposed class is comprised of:

> [B]lack South African citizens (and their heirs and beneficiaries) who during the period from 1973 to 1994 suffered injuries as a result of Defendants' violations of the law of nations by their complicity in such violations caused by South African state officials, employees or agents or by their actions in replicating the apartheid system in their own internal operations.

*Botha* Complaint, Objection at Ex. A, ¶149. This class includes two subclasses: GM employees and union members who suffered injuries at the hands of apartheid forces assisted by GM, limited in scope to only current or former employees, *id.* at ¶9;[19] and individuals who were killed or injured by security forces using military vehicles manufactured by GM, *id.* at ¶¶ 8 & 153(a).

64.    Though the *Botha* class definition incorporates GM's alleged unlawful conduct, it is clear from the complaint that the class includes those suffering injury from crimes committed by apartheid security forces. Courts in this circuit and elsewhere have permitted similar class definitions that reference the defendant's alleged unlawful conduct where it is clear that the class members are otherwise ascertainable irrespective of a finding of liability. *See, e.g.*, *Barnett v. Bowen*, 794 F.2d 17, 23 (2d Cir. 1986) (certifying a class defined as "all applicants who may experience unreasonable delays in violation of sections 405(b) or 1373(c)(1)," despite the fact

---

Philippines. . . who between 1972 and 1986 were tortured, summarily executed or disappeared while in the custody of military or paramilitary groups.").

[19]    Contrary to the concerns expressed by GM in their filing that the class contains literally millions of black South Africans, this relevant subclass is in fact limited to the approximately current and former GM employees who worked at the GMSA plant between 1973 and 1994.

that the point at which delays become unreasonable may vary with the facts and circumstances of individual cases."). [20]

65.       In light of the clearly definable standards to which they apply, these classes are ascertainable even without the certifying court reaching the merits, so long as there is a sufficient inference of the practices alleged to have produced the violation.  *See Spinner v. City of New York*, No. 01-2715, 2003 WL 23648356, at *3 (E.D.N.Y. Oct. 10, 2003) (certifying a class defined *inter alia* as those subjected to defendants' policy, practice and custom of strip searching arrestees without reasonable suspicion that the arrestee is concealing a weapon where plaintiffs produced evidence sufficient to form the basis for an inference that a policy, existed with respect to strip searches).

66.       Here, as Defendants' motion to dismiss the complaint has been denied by the district court, class plaintiffs have presented facts sufficient to support that inference.  In any event, if the Court were to have questions about whether the classes in either the *Balintulo* or *Botha* complaint are sufficiently ascertainable, it should not deny certification, but instead should clarify the scope of the class or permit plaintiffs to amend the class definition.  As the Second Circuit noted in *Robidoux v. Celani*: "A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."  987 F.2d 931, 937 (2d Cir. 1993) (citations omitted).

---

[20]  *See also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying a Rule 23(b)(2) class of "children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is or should be known to ACS."); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1174, 1176 (9th Cir. 2007) (upholding class defined as "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices"), *aff'd en banc*, 603 F.3d 571 (9th Cir. 2010).

**B. The Class Actions Satisfy the Numerosity Requirement.**

67.     To satisfy numerosity, the class must be "so numerous that joinder of all members

is impracticable.  Fed. R. Civ. P. 23(a)(1).  Here, although the exact size of the class is yet

unknown, the class members likely number in the tens of thousands, *see, e.g., Balintulo*

Complaint at ¶37, and therefore numerosity is easily satisfied.  *See Robidoux*, 987 F.2d at 935-

36.  MLC's assertion that the class could number in the millions, Objection ¶ 38, is plainly

wrong given the scope of the classes with claims against GM.

**C. The Named Plaintiffs Are Typical of the Class and the Class Shares Common Questions of Law and Fact**

68.     Rule 23(a)(2) requires that the class members share common questions of law or

fact.  Commonality is not a demanding requirement.  It is satisfied "when there is at least one

issue whose resolution will affect all or a significant number of the putative class members."

*James v. City of Dallas, Tex.*, 254 F.3d 551, 570 (5th Cir. 2001).  Here, the resolution of multiple

questions affect the entire class, including:

- Whether and to what extent GM substantially assisted the South African security forces in maintaining and enforcing apartheid through campaigns of violence and terror, including committing the crimes of extrajudicial killing, torture and CIDT;

- Whether and to what extent GM knew of the crimes of the South African security forces and benefitted therefrom, and continued to provide assistance for the purpose of facilitating the commission of those crimes;

- Whether and to what extent GM aided and abetted or otherwise participated in or were liable for the crimes committed by the South African security forces; and

- Whether the class claims are barred by the statute of limitations.

*See, e.g., Balintulo* Complaint, Objection, Ex. C at ¶42; *In re S. African Apartheid Litig.*. 617 F.

Supp. 2d  at 291 (statute of limitations).  Accordingly, commonality is satisfied.

29

69.     Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Here, each plaintiff's claim arises from GM's conduct in supporting the apartheid regime and the injuries they sustained at the hands of apartheid security forces.  And each claim depends upon the legal argument that GM aided and abetted the violations.  Further, each plaintiff has the same interest in demonstrating the unlawfulness of GM's conduct and will benefit from the success of that proof.  Thus, named plaintiffs are typical of the class as a whole.  *See, e.g., Drexel Burnham*, 960 F. 2d at 291; *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995) (typicality satisfied when claim was based on same discriminatory conduct and plaintiffs have same interest in demonstrating unlawfulness and where, if proven, benefits accrue to all members of the class).

70.     MLC misapprehends the typicality requirement.  Generally, where the standard articulated above is met, typicality is defeated only upon a showing of *actual* intra-class conflicts that relate to the very subject matter of the suit.  *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008).  Here, MLC has identified no conflict among class members.

71.     And while the precise circumstances giving rise to the named plaintiffs' injuries are not identical, this does not defeat typicality because the alleged violations all arise from same course of conduct by GM.  In *Hilao v. Estate of Ferdinand Marcos*, the court rejected typicality arguments similar to those made by MLC here.  In that case, the class members included all those "who between 1972 and 1986 were tortured, summarily executed or disappeared while in

the custody of military or paramilitary groups" under the Marcos regime. 103 F.3d 767, 771 (9th

Cir. 1996). Individual issues associated with those injuries did not defeat typicality.[21]

### D. The Named Plaintiffs Are Adequate Representatives of the Absent Class Members.

72.     The adequacy requirement requires that the named plaintiffs "will fairly and

adequately protect the interests of the class." *Dura-Bilt Corp. v. Chase Manhattan Corp*., 89

F.R.D. 87, 100 (S.D.N.Y. 1981). The inquiry seeks to "uncover conflicts of interest between

named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 625 (1997) (citation omitted). For a conflict to defeat adequacy, that conflict must be

fundamental. *Ward v. Dixie Nat. Life Ins. Co*., 595 F.3d 164, 180 (4th Cir. 2010) (citations and

quotations omitted). "A conflict is not fundamental when, as here, all class members share

common objectives and the same factual and legal positions [and] have the same interest in

establishing the liability of [defendants]." *Id.* (citations and quotations omitted). Additionally,

whether or not the action has been vigorously prosecuted may be a factor. *See Dura-Bilt*, 89

F.R.D. at 100. And finally, the party's attorney must be "qualified, experienced and generally

able to conduct the proposed litigation." *Id.*

73.     MLC's claim that named plaintiffs are inadequate rests on two primary

arguments: (1) because the class representatives are not typical of the class, they cannot be

---

[21] *See also Does I v. The Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at *2 (D. N. Mar. I. May 10, 2002) (certifying class despite disparate alleged factual circumstances and different injuries among plaintiffs, because the alleged injuries all stem from the same conduct); *Doe I v. Karadzic*, 176 F.R.D. 458, 461-62 (S.D.N.Y. 1997) (certifying a class of "all people who suffered injury as a result of rape, genocide, summary execution, arbitrary detention, disappearance, torture or other cruel, inhuman or degrading treatment inflicted by Bosnian-Serb Forces under the command and control of defendant" because the "claims arise out of the same alleged course of conduct . . . and implicate the common questions of law and fact" thus satisfying typicality).

adequate; and (2) that plaintiffs' nominal delay in moving for class treatment in this bankruptcy proceeding demonstrates inadequacy.

74.    First, Plaintiffs are adequate because, as noted above, all named plaintiffs with remaining claims against GM suffered injury as a result of the apartheid security forces' violations of international law and there is no identifiable conflict between the named plaintiffs representing proposed subclasses.  All named plaintiffs share the common objective of compensation and have the same interest in establishing GM's liability.

75.    Second, MLC's argument that any delay in moving for class treatment in this bankruptcy proceeding demonstrates inadequacy, Objection at ¶¶ 29, 51, is devoid of merit. MLC relies entirely upon the conclusion in *Woodward,* 205 B.R. at 70, that failure to move for certification is a "strong indication" of inadequacy.  In reaching that conclusion, *Woodward* relied on two non-bankruptcy class actions where the delay in seeking class certification *in the trial court* was egregious.[22]  Moreover, the facts of *Woodward* are plainly distinct from those presented here. In *Woodward,* the representative waited until a *post-confirmation objection* to seek class treatment under Rule 7023, after the debtor had distributed approximately 70 percent of the estate proceeds.  *Id.* at 370, 375.

76.    Here, as discussed *supra,* plaintiffs' motion for class treatment in *this* proceeding is not untimely.  And there can be little question that named plaintiffs have aggressively prosecuted the claims against GM on behalf of the class through two motions to dismiss, two appeals, and Defendants' petition for certiorari to the Supreme Court.  The parties had begun

---

[22]    *See Woodward,* 205 B.R. at 370 (citing *East Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 404-05, in which named plaintiffs failed to move for certification *prior to trial,* and *Dura-Bilt,* 89 F.R.D. at 101, in which plaintiffs failed to renew their motion for certification for *six years*—a delay the court found insufficient to defeat adequacy when there had been no prejudice to defendants).

32

discovery before the action was stayed upon GM's petition and the remaining defendants

appealed.  Plaintiffs could not have moved for certification prior to the commencement of this

proceeding.

77.    Plaintiffs have also protected the interests of absent Class members through

qualified counsel, which have vigorously prosecuted these cases for years.  For example, the

*Balintulo* plaintiffs are represented by Hausfeld LLP attorneys with extensive experience in

complex litigation.  In just the past two years, lawyers from Hausfeld LLP have been appointed

as court-designated co-lead class or interim class counsel in over twenty federal multidistrict

litigations. Michael Hausfeld represented Holocaust victims whose assets were wrongfully

retained by private Swiss banks in *Friedman v. Union Bank of Switzerland* (E.D.N.Y.).

Likewise, *Botha* plaintiffs are represented by counsel with expertise in complex human rights

litigation. Paul L. Hoffman of Schonbrun DeSimone Seplow Harris & Hoffman LLP has been

lead or co-counsel in a range of complex cases, including several class actions brought under

ATS, and is the co-author of a leading International Human Rights casebook and a Treatise on

the same subject.  Attorneys at Nagel Rice, LLP likewise have extensive experience in class

litigation, in both state and federal courts, serving as lead or co-lead counsel in numerous class

actions including those for reparations for descendents of American slaves.  Accordingly,

Plaintiffs meet all Rule 23(a) requirements.

### E.  Common Questions Predominate Over Individual Questions

78.    Rule 23(b)(3) requires that common questions of law or fact predominate over

any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  Such questions

predominate if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof, and if these

particular issues are more substantial than the issues subject only to individualized proof.  *Moore v. PaineWebber, Inc.*  306 F.3d 1247, 1252 (2d Cir. 2002).

79.    Here, proof of GM's liability to the class will predominantly focus on issues of fact and law common to class members.  In particular, the key factual issues for all class members will be the degree to which GM aided and abetted the apartheid security forces' crimes.  These issues will be determined on a class-wide basis: GM's conduct either rose to the level of aiding and abetting the crimes or it did not.  This inquiry will principally focus upon what *GM* did to aid South Africa's apartheid security forces, when, and with what knowledge and intent.  Because the central liability issues will be decided as to all class members, predominance is satisfied.  *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 139 (2d Cir.) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."), *cert. denied*, 536 U.S. 917 (2001); *Bresson v. Thomson McKinnon Sec.*, 118 F.R.D. 339, 343 (S.D.N.Y. 1988) (presence of individual issues of damages does not generally defeat certification where issues pertaining to liability are otherwise predominant).

80.    Similarly, the legal issues in the case, raised by GM and other Defendants will be predominantly (if not exclusively) common to class members and dispositive to the outcome of the cases.  Where such defenses are common to the class, predominance is satisfied. For example, in *In re Agent Orange Products Liability Litigation*, the Court upheld class certification because an asserted defense was central and common to all plaintiffs' claims. 818 F.2d 145, 166-67 (2d Cir.), *cert. denied,* 484 U.S. 1004 (1987).  There, the defendants' arguments about the predominance of individualized differences in the claims of class members were rejected.  The Second Circuit held:

If defendants had successfully interposed the [common] defense, they would have precluded recovery by all plaintiffs, irrespective of the strengths, weaknesses, or idiosyncrasies of their claims. Similarly, the typicality issue disappears because of the virtual identity of all of the plaintiffs' cases with respect to the . . . defense.

*Id.* at 167.

81.     Here too the claims of all plaintiffs would be precluded by identical defenses common to all claims.  GM, prior to filing its petition in bankruptcy, joined in moving to dismiss the claims against it on grounds that would preclude *all* claims by *all* potential class members, including the common defense that the statute of limitations barred all claims.  The central nature of these determinations is apparent by the Second Circuit's consideration on an interlocutory appeal of the claims against the remaining defendants in both the *Botha* and *Balintulo* cases.  On appeal, the Second Circuit is considering whether:

- all claims are precluded by the political question and international comity doctrines;
- all claims are precluded because the "practical consequences" bar hearing such claims;
- all claims are precluded because the ATS does not apply extraterritorially; and
- all claims are precluded because corporations cannot be liable under the ATS.

Resolution of these questions in Defendants' favor would likely resolve the class claims.[23]

82.     MLC's argument that an ATS claim is like a "mass tort" and that mass torts are not susceptible to class treatment, Objection at ¶22, ignores the Second Circuits' affirmance of class certification in *Agent Orange* and in its analysis of the predominance.  Despite some general criticism of mass tort class actions, courts grant class certification in appropriate mass tort cases[24] and, more importantly, class certification has been granted in other ATS cases where

---

[23] Plaintiffs have argued that the Second Circuit lacks jurisdiction to hear these issues, so it is by no means clear they will be addressed by the Second Circuit at this time.

[24] *See, e.g., Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 910-912 (7th Cir. 2003) (district court correctly certified common questions as to whether and to what extent defendant caused contamination of soil and water in particular area, and left for individual resolution all questions as to whether particular class member suffered any legally compensable harm from

proof of the fact of injury at issue was individualized but proof of liability was susceptible to common proof.[25]

83.     The Second Circuit's concerns about mass torts in *Agent Orange* related to factual circumstances not present here.  First, the causation question at issue there was not well-suited to class treatment because the harms caused by the toxin were "highly individualistic . . . and depend[ed] upon the characteristics of individual plaintiffs (e.g. state of health, lifestyle) and the nature of their exposure to Agent Orange."  818 F.2d at 165.  Here, however, the type of individualized causation issue in Agent Orange is simply not present. GM is alleged to have aided and abetted the crime of apartheid and the gross human rights violations that apartheid entails.  Given the nature of aiding and abetting liability, the central liability question is whether GM possessed the necessary *mens rea* for its conduct to impose liability.  *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 258 (2d Cir. 2009) (adopting "purpose" as the *mens rea* standard for ATS aiding and abetting liability).  Second, because federal common law did not apply in *Agent Orange*, the Court was skeptical about the disparate legal standards that might apply.  *Agent Orange*, 818 F.2d at 165.  Here, of course, only international law, as incorporated into federal common law, applies.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004).  Third, the Second Circuit was concerned that the interests of the class members were not well-aligned because of the differing nature of the harms that they suffered.  *Agent*

---

this contamination); *In re Copley Pharm., Inc.*, 161 F.R.D. 456, 463-464 (D. Wyo. 1995) (class certified for common liability issue of general causation).

[25] *See, e.g., Hilao*, 103 F.3d at 774  (affirming class certification of "[a]ll current civilian citizens of the Republic of the Philippines, their heirs and beneficiaries, who between 1972 and 1986 were tortured, summarily executed or disappeared while in the custody of military or paramilitary groups"); *Does I v. The Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073 (D. N. Mar. I. May 10, 2002) (predominance satisfied for class alleging violations of *inter alia* the ATS despite disparate alleged factual circumstances and injuries where liability was determinable by class-wide proof and damages could be determined by viable methodologies).

*Orange*, 818 F.2d at 165.  Here, however, subclasses disaggregate the class by the type of harm

suffered, ameliorating any similar concerns.

84.     Moreover, none of the ATS cases on which MLC relies support its predominance

argument.  Objection at ¶¶40-45.  The facts of *Presbyterian Church of Sudan v. Talisman

Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005) presented far different certification issues than

those here.   *Talisman* itself recognized: "Where plaintiffs are 'allegedly aggrieved by a single

policy of the defendants' in a case with 'strong commonality of the violation and the harm,' this

can be 'precisely the type of situation for which the class action device is suited.'"  226 F.R.D. at

468 (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 146).  The difficulty in *Talisman* was

that the plaintiffs sought to represent a single class within a region composed of "shifting,

protean factions of rival rebel groups based loosely on tribal affiliations" and where defendants

sought to prove the attacks at issue were the result of internecine tribal warfare.  *Id.* at 463, 482.

Whether the attacks at issue were the result of the coordinated ethnic cleansing campaign at issue

or instead of warring tribal factions presented difficulties.  Here, such issues are not present

given the well-documented and systemic atrocities by South African security forces; there is no

set of competing causes for the human rights violations that occurred.

85.     Similarly, MLC also cites *dicta* in *Aquinda v. Texaco* where *forum non

conveniens*, not certification, was at issue. 142 F. Supp. 2d 534 (S.D.N.Y. 2001) *aff'd*, 303 F.3d

470 (2d Cir. 2002).  There doubt about certification arose from the fact that many of the asserted

injuries "were *future* contingent claims that have not yet ripened into actual injuries."  *Id.* at 541

(emphasis added).  This is not an issue here.  And even in that circumstance, the court opined

that the problems might be mitigated "through the creation and adequate representation of

numerous subclasses." *Id.*

86.    Finally, *Kpadeh v. Emanuel*, 261 F.R.D. 687 (S.D. Fla. 2009), is inconsistent with Second Circuit precedent.  While it was clear to the *Kpadeh* Court that the plaintiffs' case showed a violation of that particular plaintiff subject to "prolonged arbitrary detention and torture of prisoners fell below any acceptable standard of international law," the Court denied certification because the plaintiffs could not guarantee that every person detained by the Defendant was detained and tortured to the extent that it would be an international law violation. This type of analysis is contradicted by the Second Circuit's decision in *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), where the Court explained that "because the predominance analysis tests whether the class is a "'sufficiently cohesive'" unit, all factual or legal issues that are common to the class inform the analysis."  461 F.3d at 228 (citations omitted).  *Nassau County* held the district court erred by failing to certify a class on the issue of liability, noting that so "long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification." *Id.* at 225 (quotations omitted and alterations incorporated).  The type of individualized analysis undertaken by the Court in *Kpadeh* is not appropriate where the common issues are susceptible to generalized class-wide proof.  *Id.*

87.    Cases cited by MLC do not alter the applicable analysis.[26]  Unlike those cases,

---

[26] *See* Objection at ¶40.  In *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 349-50 common issues did not predominate because the alleged contamination was caused by 20 defendants in conjunction with innumerable third parties who released the MTBE, so there was no single course of conduct by which to determine the defendants' liability. Other cases cited are equally inapposite.  *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 628 (1997) (reversing certification where the district court identified only two common issues one of which was resolved and another—settlement— that was an impermissible consideration); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (holding that the common issues did not predominate because no common issues were presented where "the products are different, each plaintiff has a unique complaint, and each receives different information and assurances from his treating physician"); *Boughton v. Cottier*

38

here there are significant common issues as to GM's liability, provable class-wide by common

proof, that predominate over any individual questions.

**F.  Class Certification Is Superior to Other Available Methods for Fairly Evaluating and Adjudicating This Controversy.**

88.     Finally, plaintiffs must establish that the class action mechanism is

"superior to other available methods for the fair and efficient adjudication of the

controversy" and that class treatment is manageable.  *Nassau County*, 461 F.3d at 230;

Fed.R.Civ.P. 23(b)(3).  As discussed, particularly in light of MLC's failure to provide

adequate constructive notice, class treatment is the superior approach here.  If the class is

not certified and a reorganization plan is approved, the class members will be effectively

denied any compensation and the right to participate in this proceeding equally with other

creditors.

89.     In addition, there are numerous management tools available to the Court to

address any issues arising from class treatment, and Plaintiffs would make every effort to agree

to reasonable procedures for efficiently managing such treatment here.

90.     MLC relies on three cases that followed an analysis rejected in this Circuit.  In

*Nassau County*, the Second Circuit directly rejected the analysis used by the Fifth Circuit to

determine manageability and superiority of class actions. 461 F.3d at 230-31.  There, the Court

reversed the district court's decision denying class certification where the lower court relied on

*Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996), for its analysis of Rule 23(b)(3)

requirements.  461 F.3d at 223.  *Castano* had rejected certification where common issues could

be adjudicated on a class-wide basis but individualized adjudication may be required for

resolution of individual questions.  *Castano*, 84 F.3d at 750.  Despite *Nassau County,* MLC relies

_____

*Corps.*, 65 F.3d 823 (10th Cir. 1995) (containing no discussion of common issues with regard to liability).

on *Castano* to argue that these actions are not superior to other methods of adjudicating the controversy because individual issues would make a single trial unmanageable. Objection at ¶46.[27]

91.      Likewise, MLC's claims of potential violation of constitutional rights of defendants who are entitled to have fact issues determined by one jury without re-examination of the same issues by a second one are without merit.  These concerns are not implicated where GM's liability for aiding and abetting would not involve reconsideration of findings of fact by a second jury because here a determination of damages is not intertwined with liability.

92.      MLC also argues that because the class members are located outside the United States, foreign courts might not give conclusive effect to a ruling of this Court and that the Debtor might be "haled into foreign courts by individuals making claims mirroring those asserted here." Objection at ¶47.  However, following the liquidation of MLC, there will be no entity *left* to be haled into the foreign court to be held liable for claims arising before the bankruptcy. Moreover, the concerns of a foreign court identified by MLC would be amplified by rejection of class treatment.  If the court certifies the class, putative class members will at least receive notice and the right to opt-out.  By contrast, if the claims are expunged without adequate notice of the Bar Date, foreign courts would be more, not less, likely to entertain a claim against GM.

---

[27] *In re Rhone-Poulenc Rorer, Inc.* and *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, likewise offer no support. Objection at ¶46.  In those diversity cases, the applicable legal standard differed among the class members based on their residences, raising manageability concerns. *See Rhone-Poulenc*, 51 F.3d 1293, 1302 (7th Cir 1995); *Masonite*, 170 F.R.D. 417, 422 (E.D. La. 1997).  Here, of course, the claims of all putative class members are based on federal and international law.

**IV.    Class Plaintiffs Are Prepared to Consider Expedited Estimation Procedures for Purposes of Plan Confirmation Upon a Finding of Undue Delay.**

93.    Upon certification of these classes, estimation may be appropriate in order to facilitate plan confirmation.  Estimation of an unliquidated or contingent claim is required only if liquidation would unduly delay case administration.  *See, e.g., In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 222 (Bankr. D. Or. 2006); *In re Bison Resources, Inc.*, 230 B.R. 611, 618 (Bankr. N.D. Okla. 1999); *In re Dow Corning Corp.*, 211 B.R. 545, 562 (Bankr. E.D. Mich. 1997).  The party seeking estimation bears the burden to establish that liquidation would cause such delay. *Dow Corning Corp.*, 211 B.R. at 573-74.  MLC's conclusory statement that liquidation would "undoubtedly severely delay administration of the Debtors' cases," Objection at ¶58, does not meet its burden to demonstrate that any delay resulting from liquidation proceedings is unjustifiable in light of the costs and benefits of estimation and liquidation.  *See Roman Catholic Archbishop,* 339 B.R. at 222; *Dow Corning Corp.*, 211 B.R. at 562-63.

94.    If the Court determines that estimation is necessary, however, Plaintiffs are prepared to work toward a mutually agreeable estimation method.  MLC's argument that estimation itself would cause undue delay, Objection at ¶17, is unsupported.  Courts estimating claims may use "whatever method is best suited to the particular contingencies at issue," so long as the estimation occurs quickly and efficiently.  *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135-136 (3d. Cir. 1979).  "In so doing, courts specifically have recognized that it is often inappropriate to hold time-consuming proceedings that would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay." *In re Adelphia Comm. Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007) (quotations omitted).  Instead, "bankruptcy courts have employed a wide variety of methods to estimate claims, including summary trial, a full-blown evidentiary hearing, and a review of pleadings and briefs followed by oral argument of counsel." *Id.*; *see also Roman*

*Catholic Archbishop*, 339 B.R. at 223 (discussing the estimation of tort claims with a matrix

based on the severity of the conduct, the extent of the damages, and issues affecting liability).

95.     Moreover, methodologies readily exist to estimate damages for tort actions

alleging human rights violations comparable to those here.  *See Hilao*, 103 F.3d at 783-86

(upholding the use of a statistical sample of claims for subclasses of torture, extrajudicial killing

and disappearance in determining compensatory damages for those injuries).  Accordingly, if the

court determines estimation is necessary, the estimation can be accomplished without undue

delay.

96.     Although the Bankruptcy Code provides for estimation "for purpose of

allowance," 11 U.S.C. § 502, bankruptcy courts lack authority to liquidate personal injury tort

claims, such as those here.  28 U.S.C. § 157(b)(2)(B); *see also Roman Catholic Archbishop*, 339

B.R. at 229. The actions must proceed to the District Court for liquidation purposes.[28]  Thus, if

this Court determines estimation is necessary, it may be applied only for purposes of plan

feasibility and confirmation rather than to fix the total liability of the debtors' estates.  In light of

this, and without here waiving any constitutional or statutory rights of the named plaintiffs or the

absent class members, Class Plaintiffs would be prepared, at the appropriate time, to consider an

out-of-court procedure to liquidate the claims after estimation is complete in order to facilitate

distribution of the estate.

---

[28] To the extent that MLC asks this court to estimate and liquidate class claims for distribution purposes, that request is inappropriate. See Objection at ¶58 ("plan cannot be confirmed until plaintiffs' claims are liquidated").  If estimation is effectively sought for purposes of distribution or to cap the ultimate allowance, estimation is inconsistent with both the Code and due process.  *See In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 423 (Bankr. S.D.N.Y. 2003); *Roman Catholic Archbishop*, 339 B.R. at 221 ("This court does not have jurisdiction to estimate personal injury tort claims for purposes of distribution, which is in effect what debtor asks this court to do."); *Dow Corning Corp.*, 211 B.R. at 569 ("[I]f estimation for plan confirmation purposes results in de facto estimation for distribution purposes . . . a claimant's right to a jury trial for purposes of liquidating her claim becomes hollow.").

42

## **CONCLUSION**

FOR THE FOREGOING REASONS, Class Plaintiffs respectfully ask this Court to deny

MLC's request that it disallow and expunge class proofs of claims 1206/7587 and 10162 and

grant Class Plaintiffs' cross-motion for class treatment under Rule 7023, or, in the alternative,

order additional and adequate notice to the absent class members.

Dated:  June 22, 2010
        New York, New York

Submitted by:

/s/ Michael Hausfeld
Michael Hausfeld
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, D.C. 20006
Tel (202) 540-7200
Fax (202) 540-7201

Steig Olson
**HAUSFELD LLP**
11 Broadway, Suite 615
New York, NY 10004
Tel (212) 830-9850
Fax (212) 480-8560

***Attorneys for Balintulo Plaintiffs***

Diane E. Sammons
**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel (973) 618-0400
Fax (973) 618-9194

Paul L. Hoffman
**SCHONBRUN DESIMONE
SEPLOW HARRIS & HOFFMAN**
723 Ocean Front Walk
Venice, California 90291
Tel (310) 396-0731

43

Judith Brown Chomsky
**LAW OFFICES OF JUDITH
BROWN CHOMSKY**
P.O.Box  29726
Elkins Park, Pennsylvania 19027
Tel (215) 782-8367

Tyler Giannini
International Human Rights Clinic
Human Rights Program
**HARVARD LAW SCHOOL**
Pound Hall 401
1563 Massachusetts Ave.
Cambridge, Massachusetts 02138
Tel (617) 495-93622

***Attorneys for Ntsebeza (Botha)
Plaintiffs***