UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, *et al.*,         :        09-50026 (REG)
f/k/a General Motors Corp., *et al.*,         :
                                              :
            Debtors.                          :        (Jointly Administered)
                                              :
------------------------------------------------------------x

### SECOND SUPPLEMENTAL AFFIDAVIT AND DISCLOSURE STATEMENT OF FRANK LORINCZ IN SUPPORT OF THE DEBTORS' RETENTION AND EMPLOYMENT OF LFR, INC. AS ENVIRONMENTAL CONSULTANTS TO THE DEBTORS, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

STATE OF CALIFORNIA          )
                             )      ss:
COUNTY OF                    )

Frank Lorincz, being duly sworn, deposes and says:

1.      I am the Chief Executive Officer of LFR, Inc. ("LFR"), an environmental management and consulting firm, which maintains its corporate headquarters at 1900 Powell Street, 12th Floor, Emeryville, California 94608.  I am also an Executive Vice President of ARCADIS US, Inc. ("ARCADIS"), LFR's corporate parent.

2.      I submit this supplemental affidavit in support of the application dated July 21, 2009 (the "Application") of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for authorization to employ and retain LFR as environmental consultants to the Debtors, *nunc pro tunc* to the Commencement Date, pursuant to the terms and conditions set forth in the engagement letter entered into by LFR and the Debtors dated June 15, 2009.  Unless otherwise stated, I have personal knowledge of the facts set forth herein.

3.      This supplemental affidavit supplements my previously filed affidavits sworn to July 21, 2009 (the "Initial Affidavit") and August 2, 2009 (the "First Supplemental Affidavit") filed in support of the Application.  Copies of the Initial Affidavit and First Supplemental Affidavit are annexed hereto as Exhibits A and B, respectively.

4.      By Order of this Court dated August 3, 2009 (the "Retention Order"), LFR was retained as environmental consultants to the Debtors.

A.      *Use of ARCADIS Employees and Staff*

5.      In his Preliminary Report on the First Interim Fee Application of LFR, Inc. dated April 22, 2010 [Docket No. 5566] (the "Fee Examiner Report"), the Fee Examiner takes issue with certain LFR fees attributable to services performed by employees of ARCADIS.

6.      As set forth in my Initial Affidavit, LFR is a wholly-owned subsidiary of ARCADIS.  LFR was purchased by ARCADIS on January 31, 2008 and since then, LFR operated as a wholly-owned subsidiary of ARCADIS up through January 1, 2010, when LFR was formally integrated into ARCADIS, with former LFR staff now employees of ARCADIS.  LFR remains a legal entity and maintains numerous contracts that are serviced by ARCADIS under an intercompany services agreement.

7.      ARCADIS has a long-standing relationship with the Debtors, going back several years, and, through its work, had acquired significant knowledge and expertise of the Debtors' environmental responsibilities.  As of the Commencement Date, ARCADIS had a claim of approximately $619,000 against the Debtors.  Moreover, as disclosed in my Initial Affidavit, it was anticipated that ARCADIS would also continue to provide environmental consulting services to the Debtors.  *See* Exhibit "2" to the Initial Affidavit ("ARCADIS has and continues to provide environmental and professional consulting services to the Debtors….  ARCADIS has

been informed by representatives of the Debtors that ARCADIS' prepetition claims have been confirmed and that they ultimately will be paid in full in the ordinary course of business as part of the reorganization.  ARCADIS' postpetition work is being paid in the ordinary course of business.").

8.      As disclosed in the First Supplemental Affidavit, LFR and ARCADIS were separate entities with separate management teams and were engaged by the Debtors under separate agreements.  At that time, it was my understanding that the Debtors were going to assume and assign the ARCADIS agreements to General Motors Company ("New GM"), the purchaser of substantially all of the Debtors' assets, and that ARCADIS' claim would be paid by New GM.

9.      The Debtors' agreements with ARCADIS, however, were never assumed and assigned to New GM.  Although ARCADIS continues to perform environmental consulting and remediation services for New GM, such work is performed under new agreements with New GM and the services deal with sites that are no longer part of the Debtors' estates.

10.     Although the Debtors retained LFR, because of the historical knowledge acquired by ARCADIS' employees, LFR used several ARCADIS employees after the Commencement Date to provide services to the Debtors.  This use by LFR of ARCADIS employees was disclosed to the Debtors.  Without LFR's use of ARCADIS employees and staff, it would have hindered the entire project team's ability to address the enormity of the Debtors' environmental issues.  In fact, the effort would have been insurmountable, significantly more expensive to the Debtors' estates, and likely impossible to complete in the requisite timeframe.  Not only was the use of the ARCADIS employees highly desirous given the existing historical

3

information retained by such staff, but it also provided LFR with critical information required to address the Debtors' environmental issues.

11.     As of January 1, 2010, LFR's operations were fully integrated into those of ARCADIS and LFR had no employees of its own – all employees are now ARCADIS employees.

12.     Since the Commencement Date, ARCADIS or ARCADIS related entities have filed proofs of claim against the Debtors' estates, including claims filed by ARCADIS on its own behalf in the amount of $718,437 against Remediation and Liability Management Company, Inc. and $21,127 against Motors Liquidation Company.  In addition, ARCADIS is member of a consortium called ENCORE Environmental Consortium, LLC, which asserted pre-petition claims of $2.345 million against Environmental Corporate Remediation Company and $551,673 against Motors Liquidation Company.  All of these claims have been withdrawn.

B.     *Retention Order Fee and Expense Estimate*

13.     In the Fee Examiner Report, the Fee Examiner notes that "the Retention Order provides that LFR shall perform its scope of work for a total cost not to exceed $200,000.00, unless approved in advance and in writing by the Debtors."

14.     Although the Retention Order addresses a $200,000 estimate, it gives LFR authorization to exceed such estimate as long as LFR "provide[s] written notice to the Creditors' Committee and U.S. Trustee if the total cost of services provided exceeds the estimate of $200,000…."  Retention Order Decretal ¶ 5.

15.     After LFR was retained and the Retention Order was entered, the Debtors requested LFR to undertake significantly more work and services than initially anticipated. When it became apparent that LFR's fees and expenses would exceed $200,000, I immediately

4

sent notice to the Creditors' Committee and the U.S. Trustee as required by the Retention Order.

No objection was received by either the Creditors' Committee or the U.S. Trustee.

       C.     *LFR's Use of Subcontractors and Other Niche Consultants*

       16.     In the Fee Examiner Report, the Fee Examiner takes issue with LFR's

requested reimbursement of approximately $9,778 in expenses for use of a subcontractor, TEA,

Inc. ("TEA").

       17.     TEA is a consulting firm specializing in alternative remedial technologies

and has a number of licensed technologies that the Debtors requested LFR to consider.  TEA was

hired by LFR as a niche service provider in the area of Green and Sustainable Remediation

(GSR) to address the regulatory community concerns, especially US EPA Headquarters, about

the use of GSR within the Debtors' program to the greatest extent possible.  LFR retained the

services of TEA under an executed subcontractor agreement to support the project team.  TEA,

as a niche service provider, executed a confidentiality agreement.  The services provided by TEA

have added significant value and were necessary to address specific scopes of work within the

overall environmental program for the Debtors.  Given the limited and niche services provided

by TEA as well as scheduling constraints in having them on board as soon as possible, it was

more effective to have TEA work as a subcontractor to LFR rather than have them be a direct

retained professional.  TEA and such other subcontractors used by LFR have not, nor will they,

play a fundamental or essential role in the administration of the Debtor's estates.

18.     TEA has charged LFR approximately $315,000 to date and LFR anticipates another $50,000-75,000 in services to be rendered by TEA.  The other niche consultants that may be used by LFR include drillers, lab technicians, and other support services.

Dated: June 28, 2010

_____
Frank Lorincz

Sworn to and subscribed before me
this 28th day of June, 2010.

_____
Connie J. Shank

CONNIE J. SHANK
NOTARY PUBLIC
STATE OF COLORADO

My Commission Expires 07/27/2011

EXHIBIT A

INITIAL AFFIDAVIT

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                    :
**In re**                           :        **Chapter 11 Case No.**
                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :  **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                    :
                    **Debtors.**    :        **(Jointly Administered)**
                                    :
-------------------------------------------------------------x

**AFFIDAVIT AND DISCLOSURE STATEMENT OF FRANK LORINCZ
IN SUPPORT OF THE DEBTORS' APPLICATION PURSUANT
TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014
FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF LFR INC. AS ENVIRONMENTAL CONSULTANTS
TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

STATE OF CALIFORNIA            )
                               )    ss:
COUNTY OF ALAMEDA              )

        Frank Lorincz, being duly sworn, deposes and says:

        1.      I am the Chief Executive Officer of LFR Inc. ("**LFR**"),[1] an environmental

management and consulting firm, which maintains its corporate headquarters at 1900 Powell

Street, 12th Floor, Emeryville, CA 94608.

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

2.       I submit this affidavit (the "**Lorincz Affidavit**") in support of the application dated July 21, 2009 (the "**Application**") of Motors Liquidation Company (f/k/a General Motors Corporation) ("**GM**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for authorization to employ and retain LFR as environmental consultants to the Debtors, *nunc pro tunc* to June 1, 2009 (the "**Commencement Date**"), pursuant to the terms and conditions set forth in the engagement letter entered into by LFR and the Debtors dated June 15, 2009 (the "**Engagement Letter**").  Unless otherwise stated in this Lorincz Affidavit, I have personal knowledge of the facts set forth herein.

## LFR's Qualifications

3.       LFR is an experienced professional services firm with a nationwide network of offices, well recognized in the field of environmental management and consulting.  In continuous operation since 1963, LFR provides a broad range of environmental and related services including fixed-price remediation (Guaranteed Site Solutions™), environmental audits and due diligence, specialized geotechnical engineering, risk assessment and litigation support/expert witness services, environmental compliance, air quality and hazardous material abatement services.

4.       LFR has developed relevant experience and expertise regarding operations and properties similar to that of the Debtors that will assist LFR in providing efficient and effective services in these chapter 11 cases.

## LFR's Disinterestedness

5.       LFR researched its client databases and conducted an internal query of its professionals to determine whether it has any connections with potential parties in interest that might cause it not to be disinterested or to represent an interest adverse to the Debtors.  Counsel

for the Debtors provided LFR with a list of potential parties in interest (the "**Potential Parties in Interest**"), and the categories of Potential Parties in Interest are set forth in Exhibit "1" annexed hereto.

6.     To the best of my knowledge, information, and belief, neither I nor any other professional employed by LFR has any connection with or holds any interest adverse to the Debtors, their estates, their creditors, the U.S. Trustee or any other party in interest herein or their respective attorneys in the matters for which LFR is proposed to be retained, except as disclosed in Exhibit "2" annexed hereto.

7.     LFR also may have rendered services to or used the services of, and may continue to render services to or use the services of, certain of the Debtors' creditors, professionals, or other parties in interest, or interests adverse to such creditors, professionals, or parties in interest, in matters wholly unrelated to these cases.  Similarly, LFR's employees may have business associations with certain of the Debtors' creditors or other parties in interest in these chapter 11 cases, or interests adverse to such creditors or parties in interest, which associations have no connection with these cases.

8.     To the best of my knowledge, LFR has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, the Debtors' chapter 11 cases.

9.     Although I have been informed that LFR's parent company, ARCADIS U.S., Inc. ("**ARCADIS**"), is currently a creditor of the Debtors in these chapter 11 cases, the Debtors do not owe any amounts to LFR for prepetition services.  Therefore, LFR is not a creditor of the Debtors.  The nature and relationship between LFR and ARCADIS is described in Exhibit "2."

10.    To the best of my knowledge, LFR does not hold or represent an interest that is adverse to the Debtors' estates, and LFR is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  LFR has disclosed the nature of the interest held by its parent, ARCADIS, as more fully set forth in Exhibit "2."  If any new relevant facts or relationships are discovered or arise, LFR will promptly supplemental its disclosure to this Court.

### Scope of Services

11.    LFR and the Debtors entered into an agreement dated June 15, 2009 (the "**Engagement Letter**"), whereby LFR agreed to assist the Debtors in determining the costs of actual or potential environmental liabilities arising from the Debtors' prepetition, historic operations.  Pursuant to the terms and conditions of the Engagement Letter, LFR has agreed to provide the following services (collectively, the "**Services**") [2] in connection therewith:

(a)    Review the Debtors' existing remedial/environmental and real estate site files, including but not limited to engineering reports, remedial action plans, agency correspondence, financial accounting reserve, site location information, tax records and regulatory financial assurance information and other such information;

(b)    Evaluate existing regulatory actions and/or pending litigation associated with the Debtors' sites;

(c)    Develop future cost estimates using appropriate methodologies, including but not limited to probabilistic and deterministic estimating techniques;

(d)    Determine the potential for reuse of certain of the Debtors' sites and ensure that potential reuse opportunities are considered in determining cost estimates;

(e)    Assist with strategic planning related to optimization of asset value net of environmental costs and disposition of environmentally impaired assets;

---

[2]  The following is only a summary of the services set forth in the Engagement Letter and should not be construed to modify or amend such letter.  The actual terms of the Engagement Letter govern the scope of services to be provided to the Debtors by LFR.

(f)      Assist with the management and support of environmental management/compliance activities, including but not limited to the following:

    (i)     Evaluating existing information regarding plant sites, ongoing investigations and remediation;

    (ii)     Coordinating the work of other consultants in developing technical summaries and cost estimates;

    (iii)     Determining the potential and options for disposition and/or reuse of certain of the Debtors' sites, whether as "brownfield" sites or otherwise;

    (iv)     Advising and assisting the Debtors with the potential to integrate remediation with redevelopment;

    (v)     Assisting in the determination of appropriate remedial options and technologies in light of potential redevelopment plans;

    (vi)     Advising and assisting the Debtors with risk management strategies with respect to the Debtors' sites, including, as appropriate, the use of insurance and other financial products as a part thereof; and

    (vii)     Structuring transactions with respect to the Debtors' sites.

(g)      Report to the Debtors verbally from time to time, and at the Debtors' direction, on the progress of the work and preliminary findings;

(h)      Prepare a final written report on such forms as directed by the Debtors, if requested by the Debtors; and

(i)      Perform such other work as requested by the Debtors from time to time in furtherance of assisting the Debtors in its determination of the costs of actual or potential environmental liabilities arising from the Debtors' sites.

## Compensation

12.     Subject to Court approval, the Debtors will compensate LFR in accordance with the terms and conditions of the Engagement Letter. Pursuant to the Engagement Letter, LFR intends to charge the Debtors for Services rendered in these chapter 11 cases, based on its hourly rate for such Services, which currently is as follows:

| Professional | Hourly Compensation |
|---|---|
| Corporate Officer | $335 |
| Principal | $200 |
| Senior Associate | $184 |
| Senior | $168 |
| Senior Project | $152 |
| Project | $137 |
| Senior Staff | $115 |
| Staff II | $102 |
| Staff I | $89 |
| Reproduction/Admin | $54 |
| Information Systems/Database Specialist | $64-$100 |
| Field and Technical Support | $57-$98 |
| Engineering Design/CADD | $67-$94 |
| Project Assistant/ Admin Support | $62-$94 |
| Construction Engineering | $87-$92 |
| Technical Editor | $70-$91 |

LFR's hourly rates are revised periodically in the ordinary course of its business.  The Debtors understand that, if a rate change is effective during the course of LFR's engagement with the Debtors, LFR will advise the Debtors of such new rates.

13.     In addition to the rates set forth above, the Debtors shall reimburse LFR for any direct expenses incurred in connection with LFR's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letter.  LFR's direct expenses shall

include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses specifically related to this engagement (including any fees or reasonable expenses of LFR's legal counsel, but not any such legal fees or expenses related to LFR's efforts to be retained or to LFR's fee applications in these chapter 11 cases).

14.    The compensation arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by LFR and other environmental management and consulting firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

15.    LFR has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

16.       LFR will file interim and final fee applications for allowance of its

compensation and expenses, with respect to its Services, and LFR will seek compensation and

reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees

and expenses to be approved in accordance with the procedures set forth in sections 330 and 331

of the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules and orders of the Court,

guidelines established by the U.S. Trustee, the and such other procedures as may be fixed by

order of this Court.

By: /s/ Frank Lorincz_____
Frank Lorincz

Sworn to and subscribed before me, a notary public for the State of California,
County of Alameda, this 21st day of July, 2009.

/s/ Jon D. Wiley_____
JON D. WILEY
COMM. #1618356
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. Nov. 30, 2009

# EXHIBIT 1

## Categories of Potential Parties In Interest

- Current Members of Board of Directors for General Motors Corporation
- Former Members of Board of Directors of General Motors Corporation (past 3 years)
- Affiliations of Current Members of Board of Directors of General Motors Corporation
- Current Officers of General Motors Corporation
- Former Officers of General Motors Corporation (past 3 years)
- Other Key Executives and Professionals of Affiliates
- Current Significant Shareholders (top 5%)
- Top 25 Shareholders
- Other names each of the Debtor entities are known as  (including trade names and aliases (up to 8 years) (a/k/a, d/b/a. f/k/a))
- Largest 50 Bondholders
- Top 100 Unsecured Creditors as of May 29, 2009 (other than individual bondholders)
- Utility Companies
- Insurance Providers
- Counterparties to Major Contracts (financing agreements, executory contracts, leases, and other agreements)
- Taxing Authorities
- Investments as a Limited Partnership
- Joint Venture Parties
- Former GM Entities
- Indenture Trustees (including any parties to GM municipal bond financing arrangements)
- Underwriting Investment Banks for GM's securities (for all securities issued or outstanding and for the prior 3 years, including investment banks used in private placement transactions)
- Governmental and State Regulatory Agencies
- Secured Creditors Other Than Major Secured Lenders
- Major Secured Lenders
- Professionals Employed
- Retention Applicants
- Major Customers
- Top 100 Suppliers
- Counterparties to Equipment Financing Agreements
- Strategic Alliances
- Unions/Non-Debtor Parties to Collective Bargaining Agreements
- Major Litigation Claimants
- Professionals Retained by Significant Creditor Groups
- Entities in which GM owns an equity interest
- Judges for the United States Bankruptcy Court for the Southern District of New York
- United States Trustees for the Southern District of New York

- Current Members of Board of Directors of Saturn, LLC
- Affiliations of Current Members of Board of Directors of Saturn, LLC
- Former Members of Board of Directors of Saturn, LLC (past 3 years)
- Current Officers of Saturn, LLC
- Former Officers of Saturn, LLC (past 3 years)
- Current Members of Board of Directors of Saturn Distribution Corporation
- Affiliations of Current Members of Board of Directors of Saturn Distribution Corporation
- Former Members of Board of Directors of Saturn Distribution Corporation (past 3 years)
- Current Officers of Saturn Distribution Corporation
- Former Officers of Saturn Distribution Corporation (past 3 years)
- Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Affiliations of Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Former Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc. (past 3 years)
- Current Officers of Chevrolet-Saturn of Harlem, Inc.
- Former Officers of Chevrolet-Saturn of Harlem, Inc.

# EXHIBIT 2

### LFR's Disclosures

LFR, Inc. is a wholly-owned subsidiary of ARCADIS U.S., Inc. ("**ARCADIS**").  ARCADIS has and continues to provide environmental and professional consulting services to the Debtors, both prepetition and postpetition.  ARCADIS currently has a prepetition claim against the Debtors of approximately $619,000.  ARCADIS has been informed by the representatives of the Debtors that ARCADIS' prepetition claims have been confirmed and that they ultimately will be paid in full in the ordinary course of business as part of the reorganization.  ARCADIS' postpetition work is being paid in the ordinary course of business.

EXHIBIT B

FIRST SUPPLEMENTAL AFFIDAVIT

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :       Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :       09-50026 (REG)
        f/k/a General Motors Corp., et al.   :
                                        :
                Debtors.                :       (Jointly Administered)
                                        :
-------------------------------------------------------------x
```

**SUPPLEMENTAL DECLARATION AND DISCLOSURE STATEMENT
OF FRANK LORINCZ IN SUPPORT OF THE DEBTORS' APPLICATION
PURSUANT TO 11 U.S.C. §§ 327(a) AND 330 AND FED. R. BANKR. P. 2014
FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF LFR INC. AS ENVIRONMENTAL CONSULTANTS
TO THE DEBTORS _NUNC PRO TUNC_ TO THE COMMENCEMENT DATE**

Frank Lorincz declares as follows:

1.      I am the Chief Executive Officer of LFR Inc. ("**LFR**"),[1] an environmental

management and consulting firm, which maintains its corporate headquarters at 1900 Powell

Street, 12th Floor, Emeryville, CA 94608.

2.      I submit this supplemental declaration (the "**Lorincz Supplemental**

**Declaration**") in support of the application dated July 21, 2009 (the "**Application**") of Motors

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Liquidation Company (f/k/a General Motors Corporation) ("**GM**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for authorization to employ and retain LFR as environmental consultants to the Debtors, *nunc pro tunc* to June 1, 2009 (the "**Commencement Date**"), pursuant to the terms and conditions set forth in the engagement letter entered into by LFR and the Debtors dated June 15, 2009 (the "**Engagement Letter**").  Unless otherwise stated in this Lorincz Supplemental Declaration, I have personal knowledge of the facts set forth herein.

3.      This Declaration supplements my affidavit sworn to July 21, 2009 and submitted in support of the Application.

4.      LFR and the Debtors entered into the Engagement Letter, whereby LFR agreed to assist the Debtors in determining the costs of actual or potential environmental liabilities arising from the Debtors' prepetition, historic operations.  The Debtors also entered into agreements with The Claro Group, LLC ("**Claro Group**") and Brownfield Partners, LLC ("**Brownfield Partners**") to provide related services.  Although the Debtors seek to retain LFR, Claro Group and Brownfield Partners to perform similar services, the services rendered by LFR are complementary and not duplicative in any manner with the services to be performed by any other party retained by the Debtors.  The Debtors engaged each consultant for its distinct expertise: LFR for its remediation expertise; Claro Group for its financial expertise; and Brownfield Partners for its real estate and property reuse expertise.

5.      As disclosed in the Lorincz Affidavit, LFR is a wholly-owned subsidiary of ARCADIS U.S., Inc. ("**ARCADIS**").  ARCADIS is and has been providing environmental and professional consulting services to the Debtors, both prepetition and postpetition, and has a prepetition claim against the Debtors totaling approximately $619,000.  LFR, however, is a

2

separate entity from ARCADIS.  LFR and ARCADIS have separate management and are engaged by the Debtors under separate agreements.  Furthermore, the Debtors have assumed and assigned the ARCADIS contracts to General Motors Company ("**New GM**"), purchaser of substantially all of the Debtors' assets.  Accordingly, ARCADIS's prepetition claim  for $619,000 will be paid by New GM to cure the assumed and assigned ARCADIS contracts.

6.      As described in the Application, LFR has agreed to indemnify the Debtors in certain circumstances specified in the Engagement Letter.  The Debtors, however, do not owe any indemnification obligations to LFR.

7.      Expenses arising under this engagement may include legal fees incurred by LFR in the ordinary course of providing services to the Debtors, such as the costs associated with retaining real estate counsel or the costs of retaining counsel to negotiate endorsements to insurance policies.

8.      LFR continues to perform work related to the management and support of environmental management/compliance activities as described in the fifth bullet statement of Exhibit A to the Engagement Letter entitled, "Scope of Work."

9.      LFR did not provide services to the Debtors before June 1, 2009.


By:  s/   Frank Lorincz_____
      Frank Lorincz

Date: August 2, 2009

3