# Exhibit A

## Settlement Agreement

## SETTLEMENT AGREEMENT

WHEREAS, the Delaware Department of Natural Resources and Environmental Control ("**DNREC**") is charged with the enforcement of the Delaware Hazardous Substance Cleanup Act, 7 Del. C. Chapter 91 ("**HSCA**") and Regulations Governing Hazardous Substance Cleanup ("**Regulations**"), relating to the remediation of releases of hazardous substances; and

WHEREAS, DNREC has determined that there have been releases of hazardous substances at the former General Motors Wilmington Assembly Plant, located in Wilmington, Delaware ("**Wilmington Plant**") which will require a remedy under HSCA; and

WHEREAS, on June 1, 2009, Motors Liquidation Company ("**MLC**"), formerly known as General Motors Corporation ("**GM**"), the owner and operator of the Wilmington Plant, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). MLC's chapter 11 case is being jointly administered with the chapter 11 cases of MLC of Harlem, Inc., MLCS, LLC, MLCS Distribution Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. ("**Related Debtors**") under Case No. 09-50026 (REG) (the "**Bankruptcy Case**"). MLC is authorized to operate its business and manage its properties as a debtor in possession in accordance with the Bankruptcy Code; and

WHEREAS, MLC is the owner of numerous properties located in various states (the "**Owned Properties**"), which may require environmental investigation and remediation under federal and state laws to address potential environmental contamination on the Owned Properties. The Wilmington Plant is currently an Owned Property; and

WHEREAS, MLC, as part of the Bankruptcy Case, is currently negotiating with various states and the federal government (the "**National Negotiations**") regarding the costs required to address potential environmental contamination at the Owned Properties, and the procedures to be used to accomplish this work; and

WHEREAS, MLC has been provided with funding from the United States Treasury Department to address potential contamination at the Owned Properties as part of the National Negotiations; and

WHEREAS, as part of the National Negotiations, it currently is expected that a separate and new entity, likely in the form of an environmental response trust (the "**Environmental Trust**"), will be created pursuant to a chapter 11 plan (the "**Plan**") to receive ownership of the Owned Properties and assume certain cleanup obligations of MLC for the Owned Properties under state and federal law, as well as funding from MLC to address certain cleanup obligations

RSK10016.doc

1

at the Owned Properties, and that MLC will receive customary covenants not to sue for its cleanup obligations at the Owned Properties; provided, however, that DNREC is reserving its right to seek a claim for natural resource damages related to operations at the Wilmington Plant; and

WHEREAS, MLC acknowledges that it is currently attempting to sell the Wilmington Plant to Fisker Automotive, Inc., or another potential purchaser subject to approval of the Bankruptcy Court (the "**Sale**"), and that the Sale may occur prior to the creation of the Environmental Trust in the Bankruptcy Case; and

WHEREAS, in the event the Sale occurs prior to the creation of the Environmental Trust, DNREC and MLC desire to have certain cleanup obligations of MLC for the Wilmington Plant (the "**Cleanup Obligations**") assumed by the Environmental Trust so that, under the Bankruptcy Case, the Cleanup Obligations are treated in the same manner as similar cleanup obligations with respect to the other Owned Properties, and are not treated as general unsecured claims; and

WHEREAS, in consideration for the assumption of the Cleanup Obligations by the Environmental Trust, along with the transfer thereto of the funding by MLC for the Cleanup Obligations, DNREC is willing to defer the enforcement of HSCA at the Wilmington Plant until after the creation of the Environmental Trust, and the assumption of the Cleanup Obligations thereby.

NOW THEREFORE, for the purposes set forth above and in consideration of the recitals and mutual promises herein contained, MLC and DNREC, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, hereby agree as follows, in each case subject to the approval of the Bankruptcy Court:

1. DNREC and MLC agree that nothing in this Settlement Agreement shall constitute an admission of liability or any adjudication on any issue of fact or law with respect to the subject matter discussed herein.

2. In the event that the Sale occurs prior to the creation of the Environmental Trust, MLC agrees to transfer the Cleanup Obligations, and the funding therefor, to the Environmental Trust so that those Cleanup Obligations are retained and addressed by the Environmental Trust in the same manner as similar cleanup obligations with respect to the other Owned Properties, and not as general unsecured claims, in the Bankruptcy Case. MLC further agrees to petition the Bankruptcy Court to approve the assumption of the Cleanup Obligations by, and the transfer of the funding for the Cleanup Obligations to, the Environmental Trust, pursuant to this Settlement Agreement. DNREC agrees that the assumption of the Cleanup Obligations by, as well as the transfer of the funding from MLC for the Cleanup Obligations to, the

RSK10016.doc

Environmental Trust shall be in settlement and full satisfaction of all claims that have been filed, or could have been filed, by or on behalf of DNREC for the Cleanup Obligations in the Bankruptcy Case;

3. In the event that the Sale does not occur prior to creation of the Environmental Trust, MLC agrees, once the Environmental Trust is formed, to transfer the Wilmington Plant, along with the Cleanup Obligations, and the funding from MLC to address the Cleanup Obligations to the Environmental Trust in the same manner as agreed to in the National Negotiations with respect to the other Owned Properties. DNREC agrees that the transfer of the Wilmington Plant, along with the funding for the Cleanup Obligations, to the Environmental Trust shall be in settlement and full satisfaction of all claims that have been filed, or could have been filed, by or on behalf of DNREC for the Cleanup Obligations in the Bankruptcy Case.

4. DNREC reserves its right to seek a claim for natural resource damages related to the operations of the Wilmington Plant; provided, however, that this reservation shall not limit or impair any objection or defense MLC or Related Debtors may have to such claim, and DNREC agrees that such claim for natural resource damages will not be paid out of the funds transferred to the Environmental Trust to pay for Cleanup Obligations in the Bankruptcy Case.

5. DNREC agrees to defer the enforcement of HSCA and the Regulations at the Wilmington Plant until (1) after the transfer of MLC's Cleanup Obligations to the Environmental Trust, in the event the Sale occurs prior to the creation of the Environmental Trust, or (2) after the transfer of the Wilmington Plant, along with MLC's Cleanup Obligations, to the Environmental Trust, in the event the Sale occurs after the creation of the Environmental Trust. Further, in either event, DNREC agrees not to oppose in the Bankruptcy Case the transfer of MLC's Cleanup Obligations, and the funding therefore, for the Wilmington Plant, or the Wilmington Plant along with its Cleanup Obligations, and the funding therefor, to the Environmental Trust; provided, however, that nothing in this paragraph will prevent DNREC from negotiating, as part of the National Negotiations, an environmental cost estimate for addressing potential contamination at the Wilmington Plant, or the form or substance of, or procedures to be used by, the Environmental Trust, or other successor entity to MLC, in addressing contamination at the Wilmington Plant.

6. As part of the Sale, DNREC and Fisker Automotive, Inc. ("**Fisker**") have negotiated a Brownfields Development Agreement ("**BDA**") to protect Fisker from incurring certain environmental liabilities under HSCA when it purchases and conducts operations at the Wilmington Plant. As part of its obligation under the BDA, Fisker is

required to perform a preliminary environmental investigation to establish the baseline environmental condition of the Wilmington Plant (the "**Baseline Investigation**"). DNREC, as part of its authority under HSCA and the BDA, has approved of, and may require additional amendments to, a Work Plan to be performed by Fisker in implementing the Baseline Investigation. DNREC agrees to notify MLC of, and afford MLC the opportunity to participate in, any meetings between DNREC and Fisker regarding the Baseline Investigation.

7. Notwithstanding the requirements of paragraph 5, above, DNREC and MLC agree that DNREC may continue its oversight of Fisker's performance of the Baseline Investigation as part of the Sale and as required by the BDA, and that such oversight by DNREC will not constitute "enforcement" of HSCA, as referred to in paragraph 5 above; provided, however, that DNREC's oversight of Fisker's performance of the Baseline Investigation shall not include, and DNREC personnel shall not conduct or be present for, any site investigation, including any subsurface sampling, at the Wilmington Plant until after the creation of the Environmental Trust in the Bankruptcy Case; provided, further, however, that this prohibition shall not apply if DNREC determines that new information about the Wilmington Plant indicates the existence of an imminent threat to public health, welfare, or the environment, in which case DNREC may use any of its authority to immediately enter the Wilmington Plant property and take any action it deems appropriate to address such threat. DNREC further agrees not to require Fisker to submit to DNREC a report of the Baseline Investigation, or the data upon which such report may be based, until after the creation of the Environmental Trust in the Bankruptcy Case or the one (1) year anniversary of the date of the Closing, as such term is defined in the Real Estate Purchase Contract between MLC and Fisker governing the sale of the Wilmington Plant, whichever occurs first.

8. As part of the BDA, DNREC is required to reimburse Fisker for the cost of performing the Baseline Investigation. MLC agrees that the cost of performing the Baseline Investigation, and DNREC's oversight thereof, shall be included in the estimated costs of addressing the Cleanup Obligations at the Wilmington Plant which, as part of the National Negotiations, are to be paid for by the Environmental Trust. DNREC acknowledges that investigation costs are included in DNREC's estimate of the cost of addressing the Cleanup Obligations at the Wilmington Plant, which have been developed as part of the National Negotiations, and DNREC agrees that its estimation of the cost of addressing the Cleanup Obligations at the Wilmington Plant shall not increase as a result of this Settlement Agreement.

RSK10016.doc

9. DNREC and MLC acknowledge that the National Negotiations on the form and content of the Environmental Trust have not yet been completed. Nothing in this Settlement Agreement shall prevent DNREC from being afforded all of the rights as to the Wilmington Plant that are provided with respect to the other Owned Properties through the Environmental Trust as approved in the Bankruptcy Case.

Delaware Department of National Resources
and Environmental Control

_____    Date: 6/8/09

Collin P. O'Mara, Secretary


Motors Liquidation Company


_____    Date: _____

Ted Stenger
Executive Vice President


RSK10016.doc

5

9. DNREC and MLC acknowledge that the National Negotiations on the form and content of the Environmental Trust have not yet been completed. Nothing in this Settlement Agreement shall prevent DNREC from being afforded all of the rights as to the Wilmington Plant that are provided with respect to the other Owned Properties through the Environmental Trust as approved in the Bankruptcy Case.

Delaware Department of National Resources and Environmental Control

_____          Date: _____

Collin P. O'Mara, Secretary


Motors Liquidation Company

_/s/ Ted Stenger_____          Date: 6/8/2010

Ted Stenger
Executive Vice President

RSK10016.doc

5