# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

## WITHDRAWAL OF CLAIM

| Debtor Name and Case Number: | [X] Motors Liquidation Company, Case No. 09-50026 |
| --- | --- |
| | [ ] MLC of Harlem, Inc., Case No. 09-13558 |
| | [ ] MLCS, LLC, Case No. 09-50027 |
| | [ ] MLCS Distribution Corporation, Case No. 09-50028 |
| | [ ] Remediation and Liability Management Company, Inc., Case No. 09-50029 |
| | [ ] Environmental Corporate Remediation Company, Inc., Case No. 09-50030 |
| Creditor Name and Address: | VINCENT M WARD<br>PO BOX 44064<br>LOS ANGELES, CA 90044 |
| Claim Number (if known): | 28069 |
| Date Claim Filed: | 11/16/2009 |
| Total Amount of Claim Filed: | $12,510,950.00 |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor. I hereby withdraw the above-referenced claim and authorize the Clerk of this Court, or their duly appointed Claims Agent, to reflect this withdrawal on the official claims register for the above-referenced Debtor.

Dated: 6/4/2010

Print Name: VINCENT WARD

Title (if applicable): _____

--------------------------------------------------------------------------

**VIA EMAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
Attn: Claims Team
2101 Cedar Springs Road
Suite 1100
Dallas, TX 75201
claims@motorsliquidation.com

Re:   In re Motors Liquidation Company, et al. ("Debtors"), Case No. 09-50026 (REG) –
      Claim Documentation Letter

Dear Motors Liquidation Company,

By this letter, I hereby submit the attached documentation in support of the following claim:

| Claim Number | Claimant |
| --- | --- |
| 28069 | VINCENT M WARD |

I understand and acknowledge that submission of this letter does not constitute allowance of the above-described claim, and that the Debtors reserve all rights with respect to this claim.

Very truly yours,

X _Vincent Ward_
Print Name  _VINCENT WARD_
Address  _PO Box 44064_

City, State and Zip Code _LA, CA  90044_

Vincent Ward
5122 Denlinger Road
Trotwood OH 45426

December 16, 1996



Thomas Green, Plant Manager
DELPHI Interior Lighting Systems
250 Northwood Boulevard
Vandalia OH 45377

**RECEIVED**

**JUN 08 2010**

Dear Mr. Green:

I became a full-time employee of your company on August 8, 1994. Prior to that time, I was a full-time college student. I rationalized my decision to quit college and go to work for GM based on the fact that I have 42 family members and friends who have been long-term employees of General Motors...some of them averaging 25-30 years of service. Consequently, I felt that I would likely have a long career at GM as well. However, I was unfairly terminated on December 17, 1995, and I have been struggling since that time to get my job back. I am hoping that you will review the circumstances of my dismissal. I am confidant that after you have had an opportunity to review all of the evidence you will agree that I should be reinstated.

### March 8, 1995

My immediate supervisor, Dave Hoseus instructed me to take a stand-up fork lift out in the snow to retrieve a number of parts baskets. As I had previously been instructed that the stand-up fork lift was never to be used out on the dock, I questioned his instructions. His response was that I was to follow his direction, regardless of what I had previously been told. Not wanting to make an issue of it, I complied with his instructions. I managed to get the fork-lift down the ramp and loaded the baskets. However, when I tried to return to the dock going up the snow-covered ramp, the fork-lift slid backward and I was thrown onto the ground, injuring my back. I was seen by the company nurse, who instructed me to see the company physician, Dr. Marshall. Dr. Marshall, in turn, instructed me to see my family physician, Dr. Michael Barrow. Following my examination, he placed me on sick leave effective immediately until March 19, 1995.

### March 20, 1995

I returned to work and was placed on various jobs for several months without incident.

### October, 1995

The same supervisor that sent me out on the dock the previous March, Dave Hoseus, placed me on a job that was quite obviously designed for someone of average stature--I am 6'5" in height. I tried to explain to Mr. Hoseus that this particular job was causing great distress to my back, and in fact, was aggravating the injury that I had incurred in March, 1995. I asked to be returned to any of the other jobs that I had been placed on prior to this one. My requests fell on deaf ears...I had no choice but to try to do this job as instructed. Again, I was injured as a result of Mr. Hoseus' orders. After two weeks on this job, my back went out. I saw the company nurse, your company physician, and my physician. I was placed on sick leave again until December 17, 1995, during which time, I underwent physical therapy.

### December 17, 1995

I returned to work; however, when I tried to use my badge it was inactive. Security checked the computer and found that I had been removed from the files. At that point Security checked with Labor Relations who instructed them not to allow me to enter. I immediately left there and went to the Union Hall. I met with the Union

Mr. Thomas Green
December 16, 1996
page two

Representative, Jim Williams, who stated that DELPHI had informed him that I had been sent a certified letter in November informing me that I had 5 days to return to work or face termination. He went on to say that since I had not responded, I had "quit." I tried to explain the following to him to no avail:

1. I had not received notification of any sort--certified or otherwise--that my job was in jeopardy, or that I was required to respond.
2. I was on a legitimate, doctor-ordered sick leave until December 17, 1995, and that DELPHI had been properly notified.
3. I was injured as a result of the supervisor's negligence.

I left the Union Hall and contacted the Post Master at the Trotwood Madison Post Office. After checking their records, they informed me that there was *NO* record of any certified letter that was sent to my address from DELPHI. Subsequent to my conversation with the post office, I contacted DELPHI several times requesting proof of the certified letter. No one has been able to provide documentation to me to date. After numerous requests, I finally received a copy of the alleged letter dated November 16, 1995 (attachment number one) in **February, 1996**. Please note that there is **NO REFERENCE TO A CERTIFIED LETTER ITEM NUMBER IN THE UPPER LEFT-HAND CORNER** of this letter. I point this out because **I have also attached** another letter (attachment number two) that was sent to me (which I did receive certified) dated December 22, 1995. This letter *DOES* **HAVE A REFERENCE TO A CERTIFIED LETTER ITEM NUMBER IN THE UPPER LEFT-HAND CORNER** of the letter. Please note that both of these letters were sent from the office of J.J. Stevens, the Labor Relations Representative.

I am sure that you will find it odd, as I did that:

1. Mr. Steven's has been unable to provide me with proof that he sent a certified letter in November.
2. Mr. Stevens, coincidentally, neglected to annotate such an important letter with a reference to the postal tracking number on one letter; however, made notation on subsequent letters.
3. Coincidentally, the post service also has no documentation for this very important letter.
4. It took me two months to get a "copy" of the supposed letter that was sent "certified" in November.

As I stated in the opening of my letter, I believe it is quite clear that I have been unjustly terminated. I also do not feel that I have been fairly represented in this matter. It is my hope that you will look into the **facts** of my termination, and give me back my job. I look forward to hearing from you soon, as well as learning the outcome of your investigation.

Sincerely,

Vincent Ward

CC:  Jack Smith, President, General Motors, Detroit MI
     George Becker, President, UAW
     Carl Lewis, Attorney-At-Law
     David Spencer, Attorney-At-Law

# RECORD OF PROCEEDINGS

Claim Number: 95-360240  
                LT-ACC-SI-COV  
PCN: 9816701 Vincent M. Ward

Claims Heard: 95-360240

96-542612 - Ref

\*\*\*THOMAS E. MORGAN & ASSOC.\*\*\*  
906 E BROAD STREET  
COLUMBUS OH 43205

Date of Injury: 3/08/1995           Risk Number: 20002647-26  
                                         Manual Number:

---

This claim has been previously allowed for: Contusion to low back; contusion to left scapular area; lumbar sprain.

This matter was heard on 08/27/1998 before Staff Hearing Officer Burton M. Hirsch pursuant to the provisions of Ohio Revised Code Section 4121.35(B) and 4123.511(D) on the following:

IC-12 Notice Of Appeal of DHO order from the hearing dated 07/20/1998; filed by Claimant on 07/29/1998.  
Issue:  1) Additional Allowance-Lumbar Sprain  
       2) Authorize Treatment As Requested By Dr. Morgenstern On Form C-161  
       3) Payment For Past And Future Treatment Of Lumbar Sprain  
       4) Employer Requests That The Claimant Be Compelled To Execute A Medical Release To The Employer  
       5) That The Claim Be Suspended Pending The Claimant's Compliance

Notices were mailed to the claimant, the employer, their respective representatives and the Administrator of the Bureau of Workers' Compensation not less than 14 days prior to this date, and the following were present for the hearing:

APPEARANCE FOR THE CLAIMANT: Claimant/ P.W. Miller Esq  
APPEARANCE FOR THE EMPLOYER: Jill Campbell Esq  
APPEARANCE FOR THE ADMINISTRATOR: NA

The order of the District Hearing Officer, from the hearing dated 07/20/1998, is modified to the following extent.

It is the finding of the Staff Hearing Officer that the C-86 filed by the employer is dismissed. The employer is withdrawing their application requesting that the claimant sign a medical release as the claimant has complied.

The C-86 filed by the claimant on 05/20/1998, is granted to the following extent. The claim remains additionally allowed for the condition of lumbar sprain. This was diagnosed initially by the first treating physician Dr. Barrow (03/08/1995 and 03/10/1995) which relates this to the initial injury of 03/08/1995. The description of injury is consistent with this allowance.

The claimant's request for future chiropractic treatment with Dr. Morgenstern is granted to the following extent. The claimant may have a series of 12 chiropractic treatments from the date of this hearing, 08/27/1998 through and including 04/01/1999.

The payment for prior chiropractic care from Dr. Morgenstern is granted only to the extent that prior care is ordered paid to the extent of one visit per month over the period wherein he treated him.

An Appeal (IC-12) from this order may be filed within 14 days of the receipt of the order. The Appeal should be sent to the Industrial Commission of Ohio, Claims Management Section, 30 W. Spring St., 5th Floor,

SEP -1 1998

Page 1                            dyf

**GM Regional Personnel Administration**

January 11, 1996

Vincent M. Ward
5122 Denlinger Rd.
Trotwood, OH    45426

Claim #  95-360240            Weekly benefit amount:  $ 310.72

Period of absence from:  10/25/95    to:   12/16/95
                         less 10/30/95

Dear employee:

The above period of absence has been determined to be compensable under your Worker's Compensation claim.

As you know, weekly benefits were initially processed under the Sickness and Accident Insurance Program as a GM Disability Advance. Therefore, distribution of the monies payable under Worker's Compensation are being made as follows:

$ __357.40__   Refunded to the Insurance Acct. S&A (previously paid to you.)

$ __1950.80__  Payable to you, check will be drafted __1/12/96__ & mailed
               to you/~~XXXXXXXXX~~. (Includes monies previously withheld for
               FICA/Federal Withholding tax.)

$ __2308.20__  Total amount payable under your Worker's Compesation claim.

Note:  This letter should be kept in your file as a reference for your
       yearly tax records.

Marie McWain
Workers' Compensation Office

cc:  File
     E. Shepard

P3A

General Motors Corporation    3400 Springboro Pike    Dayton, Ohio 45439