**HEARING DATE AND TIME: August 6, 2010 at 9:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)**
**REPLY DEADLINE: August 1, 2010 at 12:00 p.m. (Eastern Time)**

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
Four Penn Center
1600 J.F.K. Boulevard – 5th Floor
Philadelphia, PA 19103
Tel:    215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,* :        **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.,* :
                                          :
          **Debtors.**                    :        **(Jointly Administered)**
                                          :
------------------------------------------------------------x

<u>**OBJECTION TO PROOF OF CLAIM NO. 44887 (AMENDED)**</u>

# TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………………………………………..ii

Relief Requested…………………………………………………………………………1

Jurisdiction………………………………………………………………………………1

Relevant Facts……………………………………………………………………………1

    I.   The Pennsylvania State Class Action: *Soders v. GM*……………………………… 1

    II.  The Actual Benefit to the Class……………………………………………………5

    III. RodaNast's Red Herring:  Prepetition Settlement Discussions Regarding the
          Objection to the Fairness of the Settlement…………………………………...…...5

    IV. The "New" Soders Class Settlement…………………………………………….9

The Relief Requested Must Be Approved by the Court…………………………………..9

    I.   Proof of Claim No. 44887 Completely Fails to Comply with Bankruptcy Rules
         9014 And 2019……………………………………………………………...…..10

    II.  Proof of Claim No. 44887 Does Not Satisfy the Requirements of Rule 23………....12

         A.  Rule 23 Requirements……………………………………………………12

         B.  The Benefit to the Class was not Fair, Reasonable, and Adequate…………...…14

         C.  RodaNast's Attorneys' Fees are Not Reasonable………………………..……15

Conclusion……………………………………………………………………………….18

# TABLE OF AUTHORITIES

## CASES

*In re: Am. Reserve Corp.*,
   840 F.2d 487 (7th Cir. 1988)…………………………………………………………..10

*In re: Bally Total Fitness of Greater N.Y., Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009)……..……..9, 10

*Clement v. American Honda Finance Corp.*,
   176 F.R.D. 15 (D.Conn. 1997)…………………………………………..…………15

*In re: Elec. Theatre Rests. Corp.*,
   57 B.R. 147 (Bankr. N.D. Ohio 1986)…………………………………………………...11

*In re: Ephreda Prods. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005)………………………………………………….....10, 12, 13, 17

*In re: Excess Value Insurance Coverage Litig.*,
   2005 WL 6242849 (S.D.N.Y. 2005) …………………………………….…………3, 16

*Frankenstein v. McCrory Corp.*,
   425 F.Supp. 762  (S.D.N.Y. 1977)……………………………………………….…6, 7

*In re: GM Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)……………………………………………..……………2, 14, 15

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d. Cir. 2000)……………………………………………..…………..17

*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)………………..…………………..18

*International Union of Elec., Elec., Salaried. Mach., and Furniture Workers v. Unisys Corp.*,
   858 F.Supp. 1243 (E.D.N.Y. 1994)……………………………………………..……..15

*Machulsky v. Lilliston Ford, Inc.*,
   2008 WL 2788073 (N.J.Super.)…………………………………………...…………………6

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d. Cir. 2010)……………………………………………………………..17

*In re Presidential Life Secs.*,
   857 F.Supp. 331 (S.D.N.Y. 1994)………………………………………..…………..18

*Reid v. White Motor Corp.*,

886 F.2d 1462 (6th Cir. 1989), *cert. denied*,494 U.S. 1080,
110 S.Ct. 1809, 108 L.Ed.2d 939 (1990)……………………………………...……………12

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002)……………………………………………………..……………..6

*Schwartz v. Dallas Cowboys Football Club, LTD*,
157 F.Supp.2d 561 (E.D.Pa. 2001)……………………………………………..……………1

*Selzer v. Fleisher*,
629 F.2d 809 (2d. Cir. 1980)……………………………………………………..……………18

*Stanton v. Boeing Co*.,
327 F.3d 938 (9th Cir. 1988)……………………………………………………..………….16

*Tarlecki v. Bebe Stores, Inc.*,
2009 WL 1364340 (N.D.Cal. 2009)……………………………………...……….14, 16

*In re: Thomson McKinnon Sec. Inc.*,
133 B.R. 39 (Bankr. S.D.N.Y. 1991)……………………………………..……………..10

*In re: Warner Communications Secs. Litig.*,
798 F.2d 35 (2d. Cir. 1986)……………………………………………………..………..15

*In re: Woodward & Lothrop Holdings, Inc.*,
205 B.R. 365 (Bankr. S.D.N.Y. 1997)…………………………………..……………10

*In re: Zenith Laboratories, Inc.*,
104 B.R. 659 (D.N.J. 1989)……………………………………………………...……..11, 13

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Creditors, George and Karen Kairis and The Gibson Law Firm ("Petitioners"),

respectfully represent:

## **Relief Requested**

1.     Petitioners seek entry of an Order disallowing and expunging Class Proof of

Claim No. 44887 ("Settlement Agreement in *Soders v. General Motors Corporation* and

RodaNast, P.C.")[1], or, in the alternative, an Order disallowing RodaNast's claim for

$843,929 in attorneys' fees for obtaining a benefit of approximately $375,000 to the Class.  It

has been aptly noted that, in class action cases, "Chevrolet-type results do not warrant

Cadillac-size legal fees."  *Schwartz v. Dallas Cowboys Football Club, LTD*, 157 F.Supp.2d

561, 579 (E.D.Pa. 2001).

## **Jurisdiction**

2.     This Court has jurisdiction to consider this matter pursuant to 29 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Relevant Facts**

## I.     **The Pennsylvania State Class Action:  *Soders v. GM***

3.     On April 25, 2000, Plaintiff, Donna Soders, through her attorneys, RodaNast,

P.C.,[2] filed an action in the Lancaster County Court of Common Pleas on behalf of herself

and a Class of 700,000 to 800,000 Pennsylvania consumers alleging that GM improperly

added 1% of the MSRP to invoices for vehicles in violation of Pennsylvania law.  The

---

[1]     Exhibit A.  This is a priority claim for "$1,286,346.00 and distribution of yet to be
determined number of coupons pursuant to [a class action] settlement agreement…"  *Id.*
[2]     Hereafter "RodaNast."

lawsuit sought reimbursement of this 1% charge for Pennsylvania customers (*e.g.*, $200 for each customer who purchased a $20,000 car, $250 for each customer who purchased a $25,000 car, etc.).

4.    On December 15, 2008, Ms. Soders, through RodaNast, and GM entered into a Settlement Agreement[3] releasing the claims of the entire Class against GM in exchange for $200 coupons to Class Members **good only toward the purchase of a new GM vehicle**, a $5,000 incentive award to Ms. Soders, $1.886 million in attorneys fees to RodaNast, and $437,416.92 in expenses to RodaNast.

5.    On March 16, 2009, Petitioners here filed an objection to the proposed class action settlement.[4]    Specifically, Petitioners stated that "[s]ince Class Members must purchase a vehicle for tens of thousands of dollars in order to receive their $200 benefit, 'people of lesser financial means will be unable to benefit comparably from the settlement.'" Objection (Ex. C), p. 2, quoting *In re: GM Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (Rejecting another proposed coupon settlement ***proposed by RodaNast and GM*** presenting similar problems).

6.    Petitioners' objection also pointed out that the NACA[5] Class Action Guidelines warn against coupon settlements such as the one proposed by RodaNast and GM, and stated:

> …For most of the class, redemption may not be an option, because they are unwilling or unable to make a future purchase from the defendant.  Thus the class members are not equally compensated – some get more, others get less. **This situation is at its most aggravated when the certificate requires purchase of a *new car* or other 'big ticket' item.**[6]

---

[3]    Exhibit B.
[4]    Exhibit C.
[5]    National Association of Consumer Advocates.
[6]    *Id.*

Petitioners further stated that coupons would be "much fairer to Class Members…if coupons could be used to purchase lesser-priced GM products, such as service, repairs or parts."[7]

7.    Additionally, Petitioners objected to RodaNast's request for an award of $1.886 million in attorneys fees.  Petitioners stated:

> Despite grossly unfair settlement terms for Class Members, Class Counsel seeks, and GM has agreed to pay, up to $1.886 million in attorneys' fees and up to $500,000 in costs.  This is not reasonable.  The percentage-of-the fund method is preferred when assessing fees in coupon settlements such as this. (citing *In re: Excess Value Insurance Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005)  Accordingly, attorneys' fees should be based on the value to class members of coupons redeemed. (citing 28 U.S.C.A. § 1712(a), *et seq.*)[8]

Petitioners further pointed out that "[b]ased on the weakness of this settlement, it appears to be no accident that Class Counsel has asked this Court to approve its fees prior to the deadline for filing all claims.  [Class] Counsel's requested fees should be rejected, and, at a minimum, this Court should not determine attorneys' fees until after the claims process is completed."[9]

8.    On April 23, 2009, RodaNast filed a brief a requesting court approval of the settlement and responding to objections.[10]  At that time, RodaNast reduced its requested fee from $1.8 million to $1.6 million.[11]  In justification of this requested fee, RodaNast represented to the trial court:  "As a cross-check on the reasonableness of Plaintiff's [attorneys'] fee requested, the fee requested represents only about 1% of the potential

---

[7]    *Id.* at p. 3.
[8]    *Id.* at p. 4.
[9]    *Id.*
[10]   Exhibit D.
[11]   *Id.* at pp. 36-37.

settlement fund available to the class (between $140 million and $160 million, *i.e.*, 700,000 to 800,000 claims at $200 each)."[12]

9.    Five days later, at the April 28, 2009 final fairness hearing, after having received Petitioners' objection to, *inter alia*, RodaNast's requested fee, and after Petitioners' counsel appeared at the hearing to present further oral argument, Mr. Roda *further* reduced his requested fee from $1.6 million to $843,929.37.[13]  Despite the imminently looming objection, Mr. Roda self-servingly claimed that he *voluntarily* decided to slash his fee by $1 million at the last second because he "can't help but feel bad" about job losses and paycuts at GM.[14]

10.    On April 28, 2009, at the conclusion of the fairness hearing, the trial court approved the settlement as "in all respects fair, reasonable, and adequate, and in the best interests of the class as a whole."

11.    On May 3, 2009, the Lancaster *Sunday News* publicly criticized the settlement in an article entitled:  "UNSETTLING SETTLEMENT; CLASS ACTION LAWSUIT BRINGS A COUPON, GOOD ONLY FOR A NEW GM CAR, TO CUSTOMERS WHO WERE OVERCHARGED $200-250; LAW FIRM GETS $844,000."[15]

12.    On May 5, 2009, Petitioners appealed to the Pennsylvania Superior Court the trial court's rulings that the settlement was "in all respects fair, reasonable, and adequate, and in the best interests of the class as a whole," and that RodaNast had voluntarily reduced its fee.  That appeal was still pending when GM filed for bankruptcy on June 1, 2009.

---

[12]      *Id*. at p. 38.
[13]      Exhibit E, p. 14.
[14]      *Id*.
[15]      Exhibit F.

**II.**    **The Actual Benefit to the Class**

13.    On March 22, 2010, RodaNast divulged for the first time that only 1,879 claim

forms (out of 700,000 to 800,000 Class Members) were submitted as of July 1, 2009,

providing concrete proof of the very concerns voiced by Petitioners at the fairness hearing.

14.    Due to the unfairness of the coupon settlement, only 1,879 out of 700,000 to

800,000 Class Members (0.29%) "benefitted" by electing to participate in the coupon

program.

15.    Moreover, instead of a potential value to the Class of $140 to $160 million –

which RodaNast presented to the trial court as a "cross-check" for the reasonableness of its

fee – the actual value to the Class was a mere $375,800 (1,879 claims at $200 each), or

0.29% of $140 million.

16.    RodaNast never alerted the trial court of the actual value of the settlement,

despite the fact that it was only 0.29% of the $140 to $160 million figure RodaNast used as a

basis for justifying the "reasonableness" of its fee award.

**III.**    **RodaNast's Red Herring:  Prepetition Settlement Discussions Regarding the
Objection to the Fairness of the Settlement**

17.    Although not relevant to the instant objection, RodaNast has attempted to

highlight, and mischaracterize, legitimate pre-petition settlement discussions surrounding

Petitioners' trial court objection.  This is nothing more than a thinly-veiled attempt to distract

this Court's attention from the unreasonableness of the *Soders* Class Settlement Agreement.

Petitioners address these diversions to prevent RodaNast from clouding the actual issue

presented here and to clarify the record.

18.    After Petitioners filed the sole objection to RodaNast's requested fee on March

16, 2009, and Petitioners' counsel appeared to further argue the issue at the final fairness

hearing on April 28, 2009, RodaNast reduced its requested fee by over $1 million on April

28, 2009.

19.    Attorney's fees have been awarded to counsel for objectors where "an objector

represented by competent counsel transformed the settlement hearing into a truly adversary

proceeding." *Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977).

20.    Additionally, the Seventh Circuit has held:

> …[W]hen professionals render valuable albeit not bargained-for services
> in circumstances in which high transaction costs prevent negotiation and
> voluntary agreement, the law does allow them to claim a reasonable
> professional fee from the recipient of their services.  That is the situation
> of objectors to a class action settlement.  **It is desirable to have as
> broad a range of participants in the fairness hearing as possible
> because of the <u>risk of collusion over attorneys' fees</u> and the terms of
> settlement generally.  This <u>participation is encouraged by permitting
> lawyers who contribute materially to the proceeding to obtain a fee.</u>**

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) (internal citations omitted)

(emphasis supplied).

21.    Moreover, objectors are entitled to receive incentive awards for their services in

coming forward to oppose an unfair settlement.[16]  RodaNast admitted that Petitioners were

the only Class Members who came forward to challenge its fee.[17]

22.    Following the fairness hearing, Petitioners' counsel communicated to RodaNast

his position that the objection caused RodaNast to reduce its fee by over $1 million (as

opposed to Mr. Roda's disingenuous claim that he voluntarily did so at the last minute

because he "can't help but feel bad"), and communicated an initial settlement demand of

---

[16]    *See, e.g., Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J.Super.) ("a judge
may grant an incentive award to an intervenor under appropriate circumstances.")

[17]    Exhibit D, p. 37.

10% of this benefit, or $100,000. *See Frankenstein, supra,* (Attorney's fees and disbursements totaling 10.5% of value proper).

23.    In response, attorney Joseph Roda of RodaNast, who is located in rural Lancaster County, initiated an *ex parte* telephonic conference with the trial judge, Lancaster County Judge Louis Farina, even though counsel for Petitioners was an attorney of record in the case; a violation of Pennsylvania Rule of Professional Conduct 3.5[18].

24.    Judge Farina's former law clerk, who had previously clerked for him during the pendency of the *Soders* case, was an associate at RodaNast at the time of the *ex parte* teleconference.

25.    After this private teleconference, Judge Farina ordered, upon Mr. Roda's motion, an *expedited* evidentiary hearing, scheduled to occur before the publicly announced June 1, 2009 deadline for GM to file for bankruptcy. Judge Farina granted RodaNast's motion *before permitting Petitioners an opportunity to respond*; an apparent violation of the Lancaster County Local Rules of Civil Procedure.

26.    After Judge Farina ordered the expedited evidentiary hearing, Petitioners' counsel properly advised Judge Farina that "Pennsylvania case law clearly states that a 'trial court ha[s] no authority to conduct an evidentiary hearing … once [an] appeal has been filed,'" and that Mr. Roda "was not able to find one single Pennsylvania case to support his proposition that he [wa]s entitled to an evidentiary hearing after the appeal of a final order." Despite this, Judge Farina refused to vacate his order scheduling an expedited hearing prior to GM's bankruptcy deadline.

---

[18]    "A lawyer shall not:  (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order…"

27.    Accordingly, Petitioners also appealed Judge Farina's order scheduling the expedited hearing.  Despite losing jurisdiction, Judge Farina <u>still</u> pressed forward with Mr. Roda's request for an expedited hearing prior to GM's bankruptcy deadline, instead of permitting the Pennsylvania Superior Court to rule of the propriety (or impropriety) of such an evidentiary hearing.

28.    As such, Petitioners' counsel appeared at the evidentiary hearing to confirm the propriety of his settlement discussions.

29.    At the hearing, Petitioners' counsel cross-examined RodaNast attorney Joseph Roda, *inter alia*, about the adequacy of Class Representative Donna Soders.  Mr. Roda admitted under oath that Ms. Soders was employed by another local law firm, and her employer was co-counsel with RodaNast in a separate class action case pending at the same time as the *Soders* case.[19]  Moreover, Mr. Roda admitted that Ms. Soders' employer shared in RodaNast's attorneys' fees in the other class action case, even though the lawyers at that law firm – according to Mr. Roda *and* the trial court – were not class action lawyers.[20]  This raises serious questions as to Ms. Soders' impartiality as a Class Representative.

30.    After the hearing, GM's counsel – wisely – elected **<u>not</u>** to join in Mr. Roda's motion requesting, *inter alia*, that the trial court find Petitioners' settlement negotiations to be "frivolous."[21]

31.    Tellingly, RodaNast did not object to Petitioners' Proof of Claim in this Court, and had even invited Petitioners to intervene in Proof of Claim No. 44887.

---

[19]    Exhibit G, pp. 34-40.
[20]    *Id.*
[21]    Exhibit G, p. 106.

IV.    **The "New" Soders Class Settlement**

32.    In the late afternoon on June 14, 2010 – the day before the hearing scheduled for Petitioners' objection to Proof of Claim No. 44887 – counsel for debtors, Angela Zambrano, called Petitioners' counsel and advised him that a "settlement in principle" had just been reached between MLC and the Soders claimants.

33.    Specifically, Ms. Zambrano indicated that the terms of the "new" settlement included that MLC would accept the following claims:  $554,000 in attorneys' fees to RodaNast, $554,000 to the Class, $5,000 to Ms. Soders, and RodaNast's costs ($437,416.92).[22]

34.    Ms. Zambrano stated to Petitioners' counsel that she had reviewed Petitioners' submissions, and noted that RodaNast's attorneys' fees now did not exceed the benefit to the Class.

35.    This "new" settlement agreement is still not fair, reasonable, and adequate, and Petitioners reserve the right to further object to any such settlement.

### The Relief Requested Must Be Approved by the Court

36.    There is no absolute right to file a class proof of claim under the Bankruptcy Code.  *See In re: Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).  Application of Bankruptcy Rule 7023 to class proofs of claim lies within the sound discretion of the court.  *Id*. at 620.  In determining whether to exercise its discretion to permit a class proof of claim, a court must primarily look at (i) whether the class claimant moved to extend the application of Rule 23 to its proof of claim; (ii) whether the benefits derived from the use of the class claim device are consistent

---

[22]    *See* Exhibit H.

with the goals of bankruptcy; and (iii) whether the claims which the proponent seeks to

certify fulfill the requirements of Rule 23.  *Id.*; *see also In re: Ephreda Prods. Liab. Litig.*,

329 B.R. *1, 5 (S.D.N.Y. 2005) ("In exercising that discretion, the bankruptcy court first

decides under Rule 9014 whether or not to apply Rule 23, Fed.R.Civ.P., to a 'contested

matter,' *i.e.*, the purported class claim; if an only if the court decides to apply Rule 23, does it

then determine whether the requirements of Rule 23 are satisfied.").

37.    "If application of Bankruptcy Rule 7023 is rejected by the bankruptcy court in

an exercise of discretion … the result will be that class claims will be denied and expunged."

*In re: Thomson McKinnon Sec. Inc.*, 133 B.R. 39, 40-41 (Bankr. S.D.N.Y. 1991).

**I.**    **Proof of Claim No. 44887 Completely Fails to Comply with Bankruptcy Rules 9014 and 2019**

38.    A plaintiff who seeks to bring a class proof of claim must comply with the

applicable procedural requirements.  *See, e.g., In re: Am. Reserve Corp.*, 840 F.2d 487, 494

(7th Cir. 1988) (noticing applicability of Bankruptcy Rule 9014 and its procedural

requirements); *see In re: Ephedra Prods. Liab. Litig.*, 329 B.R. at *6-7 (same).  These

procedural requirements are not complicated.  Because a claim "cannot be allowed as a class

claim until the bankruptcy court directs that Rule 23 apply," the putative class representative

must file a motion with the bankruptcy court requesting the application of Rule 23.  *In re:

Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 368, 370 (Bankr. S.D.N.Y. 1997) ("Rule

23 does not say who must make a timely motion, but the duty ordinarily falls on the

proponent of the class action.").  In addition, a purported agent or class representative is

required to file a verified statement of multiple creditor representation pursuant to

Bankruptcy Rule 2019.

39.    Here, almost a year after the Commencement Date and seven months after the Bar Date, Class Plaintiffs have not sought permission of the Court to file a class proof of claim, or moved for certification of the class.  Even though the *Soders* Class was previously certified in state court, it still must petition the bankruptcy court to apply Rule 23 and move for class certification.  *See, e.g., In re: Zenith Laboratories, Inc.*, 104 B.R. 659 (D.N.J. 1989) (District Court that certified class prior to bankruptcy proceedings later noted that "[t]he plaintiff class has not petitioned the bankruptcy court to apply Rule 23 to this matter nor sought class certification. … [T]here may be other factors in the bankruptcy proceeding that make class certification there less compelling and it may be possible that a different result might be appropriate.").  *Id*. at 664 (citation omitted).

40.    Debtors have argued that other class proofs of claims in these proceedings must be expunged where class plaintiffs have not sought permission of the Court to file a class proof of claim, or moved for certification of the class.[23]

41.    Moreover, neither the named Class Plaintiff nor Class Counsel have filed a verified statement in compliance with Bankruptcy Rule 2019(a).  Bankruptcy Rule 2019(a) requires that purported agents representing more than one creditor to file a verified statement setting forth the basis of that representative's right to act for the represented creditors. Among other things, the required verified statement must list the name and address of the creditors, the nature an amount of the creditors' claims, the agent's specific authority empowering him to act on behalf of the creditors, and the relevant facts and circumstances surrounding the employment of the agent.  *See In re: Elec. Theatre Rests. Corp.*, 57 B.R. 147, 148-49 (Bankr. N.D. Ohio 1986).

---

[23]    *See* Debtors' (i) Objection to Proofs of Claim Nos. 1206, 7587, and 10162 and, in the Alternative, (ii) Motion to Estimate Proofs of Claim Nos. 1206, 7587, and 10162.

42.    Bankruptcy Rule 2019 is a "comprehensive regulation of representation in …
Chapter 11 reorganization cases." Fed.R.Bankr.P. 2019 (Advisory Committee Note).
Accordingly, noncompliance with the Rule constitutes grounds for not recognizing a class
proof of claim. *See Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989), *cert.
denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990) ("Failure to comply with
Rule 2019 is cause for denial of the proof of claim.").

## II.    Proof of Claim No. 48877 Does Not Satisfy the Requirements of Rule 23

### A.    Rule 23 Requirements

43.    Even if this Court were to permit the proof of claim for "Settlement Agreement
in *Soders v. GM* and RodaNast," the Settlement Agreement would not satisfy Rule 23.

44.    The Settlement Agreement in *Soders v. GM* was a class action settlement that
was approved by order of the trial court on April 28, 2009. That order was appealed to the
Pennsylvania Superior Court by Petitioners on May 5, 2009. That appeal was pending when
GM filed for bankruptcy on June 1, 2009.

45.    According to the Settlement Agreement, the "Effective Date of Settlement"
was to occur "… if an appeal from the Judgment [approving the settlement] is filed, and the
Judgment is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme
Court review is no longer available…" Since the judgment approving the Settlement
Agreement was on appeal at the time GM filed for bankruptcy, the Settlement Agreement
never became effective.

46.    The U.S. District Court for the Southern District of New York has held that
"[e]ven though [a state class claim] was pending in state court where class certification was

12

governed by [state] law, after the bankruptcy it could only proceed if it satisfies the requirements of Rule 23." *In re: Ephredra*, 329 B.R. at *9, fn. 5.

47.    Thus, "[e]ven class actions that were certified prior to the filing for bankruptcy may … be disallowed." *Id*. at *5 (citations omitted).  Indeed, in *In re: Zenith Laboratories, Inc.*, 104 B.R. 659 (D.N.J. 1989), even though the district court had certified a class prior to bankruptcy proceedings, it later observed that "[t]he plaintiff class has not petitioned the bankruptcy court to apply Rule 23 to this matter nor sought class certification. … [T]here may be other factors in the bankruptcy proceeding that make class certification there less compelling and it may be possible that a different result might be appropriate."). *Id*. at 664 (citation omitted).

48.    Fed.R.Civ.P. 23 (e) states:

**Settlement, Voluntary Dismissal, or Compromise.**  The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

***(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.***

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

13

49.     Here, the Settlement Agreement was neither fair, reasonable, nor adequate, thus violating Rule 23(e)(2).

**B.     The Benefit to the Class was not Fair, Reasonable, and Adequate**

50.     As demonstrated above, the coupon settlement – which provided a $250 coupon good **only** toward the purchase of a new GM vehicle – was so unfair that only 0.29% of the Class "benefitted" from the Settlement Agreement (*i.e.*, 1,879 claims out of 700,000 to 800,000 Class Members). This alone blatantly violates the standard set forth in Rule 23(e)(2).

51.     A similar, though less egregious, class action settlement was rejected in *Tarlecki v. Bebe Stores, Inc.*, 2009 WL 1364340 (N.D.Cal. 2009). In *Tarlecki*, a settlement involving both cash and gift cards, out of 11,586 class members, only 2,017 claims were submitted. In denying the settlement, the district court held: "In short, the fact that only seventeen percent of the class will benefit from this class action settlement bespeaks poorly of the settlement. Instead of an action undertaken to make damaged class members whole, this action now appears primarily to benefit plaintiffs' counsel and defendants." *Id*. at *3. The benefit to the Class here was far poorer than that in *Tarlecki*.

52.     In *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank and Prod. Liab. Litig.*, 55 F.3d 768 (3d. Cir. 1995), the Third Circuit held that $1,000 certificates which class members could use toward the purchase of a new, light duty-truck were neither fair nor reasonable. *Id*. at 807. In making this determination, the Third Circuit was skeptical as to the number of people that would actually use the coupons and was concerned about the erosion of the coupons' future value as truck prices rose. *Id*. at 807-08. It also questioned the fairness of the settlement because people of lesser means who could not afford to buy a GM truck would

14

be unable to benefit from the settlement.  See *Id*. at 808.  As a result , the Third Circuit ruled

that the settlement was neither fair nor reasonable, and "was, in reality, a sophisticated GM

marketing program."  *Id*. at 807.  **Not surprisingly, RodaNast was also counsel in *In re:***

***GM Trucks* advocating that unfair, and ultimately rejected, settlement.**

53.    Another case rejecting a class settlement including coupons good toward the

purchase of a new vehicle stated:  "for those class members that do actually use the coupon

toward the purchase or lease of a new car, the $75 or $150 coupon is virtually worthless

when compared to the purchase price of a new car."  *Clement v. American Honda Finance*

*Corp.*, 176 F.R.D. 15, 27 (D.Conn. 1997).

54.    "In assessing a class action settlement, the court 'has the fiduciary responsibility

of ensuring that the settlement is fair and a product of collusion, and that the class members'

interests [are] represented adequately."  *Id*. at 29 *citing International Union of Elec., Elec.,*

*Salaried. Mach., and Furniture Workers v. Unisys Corp.*, 858 F.Supp. 1243, 1264 (E.D.N.Y.

1994) (*quoting In re: Warner Communications Secs. Litig.*, 798 F.2d 35, 37 (2d. Cir. 1986).

55.    Simply stated, the coupon settlement only good toward the purchase of a new

GM vehicle was of no real value to the Class, as evidenced by the fact that only

approximately 0.29% of the Class "benefitted" from the settlement.  This does not satisfy the

requirement of Rule 23(e)(2) that the settlement be "fair, reasonable, and adequate."

**C.    RodaNast's Attorneys' Fees are Not Reasonable**

56.    Additionally, RodaNast's request for $843,929 in attorneys' fees [reduced by

over $1 million following Petitioners' objection], which was approved by order of the trial

court, was unreasonable.

15

57.    Indeed, RodaNast's $843,929 in attorneys' fees equaled nearly 225% of the approximate $375,800 "benefit" to the Class.

58.    In *Tarlecki, supra*, due to the low number of claims submitted, the value to class members of the settlement equaled $336,315, while requested attorneys' fees were $290,000. In denying the settlement, the district court held:

> Perhaps most troubling is the fact that the requested attorneys' fees now equal eighty-six percent of the settlement amount, *i.e.*, forty-six percent of the combination of recovery and attorneys fees. *See Stanton* [*v. Boeing Co.*], 327 F.3d [938,] 964 [(9th Cir. 1988)] ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.").

*Id*. at *3.

59.    Due to the apparent collusion of RodaNast and counsel for GM by entering into a Settlement Agreement that exchanged the monetary rights (up to $160 million) of an enormous Class (700,000 to 800,000) for unreasonably high – although still much cheaper – attorneys' fees, it is not surprising that Debtors here have not objected to the Settlement Agreement themselves.

60.    The percentage-of-the-fund method is preferred when assessing fees in coupon settlements such as this. *See In re: Excess Value Ins. Coverage Litig.*, 2005 WL 6242849 *1 (S.D.N.Y. 2005).

61.    RodaNast, in its own fee request before the trial court, acknowledged that: "The percentage approach is self-explanatory, and is **customarily in the range of 25% to one third of the settlement value.**"[24]

---

[24]    *Id.*, p. 33.

62.    The Second Circuit has recently "acknowledged that '**the trend in this Circuit is toward the percentage of the fund,**' [yet] it remains the law in this Circuit that courts 'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.'" *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d. Cir. 2010).

63.    "Whether using the percentage method or lodestar method of calculating attorneys' fees, a court is guided by the factors articulated by this Circuit in *Goldberger* in determining a reasonable common fund fee." *Id*. at 414 citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d. Cir. 2000).

64.    The Settlement Agreement violates several of *Goldberger* factors for reasonableness, especially the factor examining the "requested fee in relation to the settlement." *Id*. at 423.

65.    Moreover, the Settlement agreement violates the 'public policy' *Goldberger* factor, since there is are "compelling public policy reasons for keeping an eye on attorneys' fees in class action cases." *Id*. at 415 (citation omitted).

66.    The Second Circuit has "reaffirm[ed] the requirement of a 'searching assessment' regarding attorneys' fees 'that should properly be performed in each case.'" *Id*. at 419 citing *Goldberger*, 209 F.3d at 52.

67.    Here, "[t]he only real beneficiaries of applying Rule 23 would be the lawyers representing the class." *In re: Ephedra*, 329 B.R. at *10.).

68.    Indeed, the Class Action Fairness Act, which was enacted in 2005, was designed to prevent such class action abuse by requiring attorneys' fees to be based on the

17

value of coupons redeemed by Class Members. *See, generally,* 28 U.S.C.A. § 1712(a), *et seq.*

69.    "The key element in assessing the reasonableness of an attorney's fee and any adjustment made in the amount requested is 'the relationship between the amount of the fee awarded and the results obtained." *American Honda*, 176 F.R.D. at 31 *citing In re Presidential Life Secs.*, 857 F.Supp. 331, 335 (S.D.N.Y. 1994) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); *see also Selzer v. Fleisher*, 629 F.2d 809, 814 (2d. Cir. 1980) (stating that any attorneys' fee award "must be proportionate to the result achieved").

70.    Despite the worthless coupon settlement benefitting less than 0.3% of the Class, RodaNast has made a **priority** claim of $1,286,346.00, $843,929 of which constitutes attorneys' fees.

71.    Since the "Settlement Agreement in *Soders v. General Motors Corporation* and RodaNast, P.C." fails to meet the requirements of Rule 23, the Court must not allow Proof of Claim No. 44887 proceed as a class claim, and they should be disallowed.  In the alternative, the claim of RodaNast for $843,929 contained within Proof of Claim No. 44887 must be disallowed.

## Conclusion

WHEREFORE, Creditors, George and Karen Kairis and The Gibson Law Firm, respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Respectfully submitted,


 /s/ Robert T. Gibson

18

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
319 West Front Street
Media, PA 19063
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors The Gibson Law
Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class
action)

Date:  July 2, 2010

Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
Four Penn Center
1600 J.F.K. Boulevard – 5th Floor
Tel:   215-729-7000
Fax:   215-695-2200

Attorney for Creditors Gibson Law Firm/George and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class action)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                            :
**In re**                                   :        **Chapter 11 Case No.**
                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,* : **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.,*  :
                                            :
            **Debtors.**                    :        **(Jointly Administered)**
                                            :
-----------------------------------------------------------x

## CERTIFICATE OF SERVICE

        ROBERT T. GIBSON, ESQUIRE, hereby certifies that a true and correct copy of the

foregoing document was served upon the following persons via first-class mail:

Weil, Gotshal & Manges LLP
(Attn: Harvey R. Miller, Esq.,
Stephen Karotkin, Esq.,
Joseph H. Smolinsky, Esq., and
Pablo Falabella, Esq.)
767 Fifth Avenue
New York, New York 10153

General Motors, LLC
(Attn: Lawrence S. Buonomo, Esq.)
300 Renaissance Center
Detroit, Michigan 48265

United States Department of the Treasury
(Attn: Joseph Samarias, Esq.)
1500 Pennsylvania Avenue NW, Room 2312

Motors Liquidation Company
(Attn: Ted Stenger)
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243

Cadwalader, Wickersham & Taft LLP
(Attn: John J. Rapisardi, Esq.)
One World Financial Center
New York, New York 10281

Vedder Price, P.C.
(Attn: Michael J. Edelman, Esq. and
Michael L. Schein, Esq.)
1633 Broadway, 47th Floor
New York, New York 10019

Washington, DC 20220
Kramer Levin Naftalis & Frankel LLP
(Attn: Thomas Moers Mayer, Esq.,
Amy Caton, Esq.,
Lauren Macksoud, Esq., and
Jennifer Sharret, Esq.)
1177 Avenue of the Americas
New York, New York 10036

U.S. Attorney's Office, S.D.N.Y.
(Attn: David S. Jones, Esq. and
Natalie Kuehler, Esq.)
86 Chambers Street, Third Floor,
New York, New York 10007

Carpenter, Lipps & Leland LLP
(Attn: Jeffrey Lipps, Esq.)
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

Office of the United States Trustee
    for the Southern District of New York
(Attn: Diana G. Adams, Esq.)
33 Whitehall Street, 21st Floor
New York, New York 10004

RodaNast, P.C.
(Attn: Joseph Roda, Esq. and
Michelle Burkholder, Esq.)
801 Estelle Drive
Lancaster, PA 17601

Hartman, Underhill & Brubaker LLP
(Attn: Christopher Underhill, Esq.)
221 East Chestnut Street
Lancaster, PA 17602

Respectfully submitted,


 /s/ Robert T. Gibson
Robert T. Gibson
*Pro Hac Vice*
THE GIBSON LAW FIRM
Four Penn Center
1600 J.F.K. Boulevard – 5th Floor
Tel:    215-729-7000
Fax:    215-695-2200

Attorney for Creditors Gibson Law Firm/George
and Karen Kairis
(Objectors in *Soders v. General Motors Corp.* class
action)

Date:  July 2, 2010