**EXHIBIT B**

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this $\underline{15}^{th}$ day of December, 2008, by and

between General Motors Corporation (hereinafter "GM") and Plaintiff in *Soders v. General*

*Motors Corporation*, Case No. CI-00-04255, pending in the Court of Common Pleas of

Lancaster County, Pennsylvania, by and through their undersigned attorneys.

1.    **DEFINITIONS**

1.1.    "Action" means the lawsuit captioned *Soders v. General Motors Corporation*,

Case No. CI-00-04255, pending in the Court of Common Pleas of Lancaster County,

Pennsylvania.

1.2.    "Certificate" means a coupon or otherwise documented right, in a form acceptable

to GM and Class Counsel, that shall entitle the holder to a discount in the amount of $200.00 on

the purchase or lease of a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle during the

Claim Period as set forth in subparagraphs 3.1 through 3.12 below.

1.2.a.    "Assignable Certificate" means an alternative form of the Certificate, in a

form acceptable to GM and Class Counsel, that shall have a value of seventy-five percent (75%)

of the initial Certificate ($150.00) or Undocumented Certificate ($75.00), and shall be available

to the Claimant as set forth in subparagraph 3.13 below.

1.2.b.    "Undocumented Certificate" means an alternative form of the Certificate,

in a form acceptable to GM and Class Counsel, that shall have a value of fifty (50%) of the initial

Certificate, or $100.00, and shall be available to the Claimant as set forth in subparagraph 3.4

below.

1.3.    "Claim" means a claim to receive a Certificate under subparagraphs 3.1 through

3.12 below.

1

1.3.a.  "Undocumented Claim" means a Claim listed on a Claim Form by a Claimant who has completed all but the VIN portion of the Claim Form, but after the period to cure deficiencies as outlined in subparagraph 3.7 below, has not provided any of the following: (1) Proof of Purchase; or (2) a VIN matching a new and previously untitled vehicle sold to the Claimant or a co-purchaser of the Claimant listed on the Claim Form; or (3) the name of the Claimant or a co-purchaser of the Claimant listed on the Claim Form appearing on the list of new vehicle deliveries produced in discovery in this Action.

1.4.  "Claimant" means a Class Member, or if the Class Member is deceased, his/her executor or administrator, who submits a Claim.

1.5.  "Claim Deadline" means one hundred twenty (120) days from the last date of published notice of the Settlement, as approved and ordered by the Court.

1.6.  "Claim Form" means a document that Class Members must submit to request a Certificate, in a form acceptable to GM and Class Counsel.

1.7.  "Claims Administrator" means GM or an entity mutually acceptable to Plaintiff and GM, retained and paid for by GM, to administer the Settlement and the Claims process set forth in subparagraphs 3.1 through 3.13 below, by, among other things, sending direct mail notices as outlined in subparagraph 3.20 below; receiving and processing Claims; determining which Claims are valid; assisting Class Members with the completion and submission of Claims in accordance with procedures established by, and mutually acceptable to, Plaintiff and GM; issuing and mailing Certificates and Undocumented Certificates; receiving and exchanging Certificates and Undocumented Certificates for Assignable Certificates; and ensuring that Claims fulfillment is properly implemented.

2

1.8.    "Class" means all persons who purchased at retail from a franchised GM dealer in Pennsylvania a new and not previously titled vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac Divisions of General Motors Corporation. This includes only persons whose franchised GM dealers previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new vehicles manufactured or distributed by the Buick Division. The Class includes natural persons and business entities of any kind, but does not include: (a) persons who purchased vehicles under the GM Employee Purchase Plans; (b) GM-qualified fleet purchasers; (c) government entities; (d) attorneys of record in this case; or (e) lessees.

1.9.    "Class Counsel" means Joseph F. Roda and Michele S. Burkholder of RODANAST, P.C.

1.10.    "Class Member" means a member of the Class.

1.11.    "Class Representative" means the named plaintiff, Donna Soders, in the Action.

1.12.    "Court" means the Court of Common Pleas of Lancaster County, Pennsylvania.

1.13.    "Effective Date of Settlement" means the latest of the following dates: (i) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or noticing of any appeal from the Judgment; or (ii) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme Court review is no longer available; or (iii) if the Superior Court of Pennsylvania issues a judgment affirming

3

the Judgment or dismissing the appeal ("Appellate Judgment"), and a petition for review of the Appellate Judgment is filed and denied by the Pennsylvania Supreme Court, the date beyond which United States Supreme Court review is no longer available; or (iv) if a petition for review of the Appellate Judgment is filed and granted by the Pennsylvania Supreme Court, or the Pennsylvania Supreme Court orders review of the Appellate Judgment on its own motion, and the Appellate Judgment is affirmed or the review proceeding dismissed, and no petition for a writ of certiorari with respect to the Supreme Court's judgment affirming the Appellate Judgment or dismissing the review proceeding ("Review Judgment") is filed, the date of expiration of the time for the filing of such a petition for a writ of certiorari; or (v) if such a petition for a writ of certiorari is filed and denied, the date the petition is denied; or (vi) if such a petition for a writ of certiorari is filed and granted, the date of final affirmance of the Review Judgment or final dismissal of the review proceeding initiated by the petition for a writ of certiorari. This Settlement shall not become Effective, and this definition of Effective Date of Settlement shall not be met, and GM shall have the option and right to rescind this Settlement at its sole discretion by filing with the Court written notice of such election, with proof of service on Class Counsel, if Class Counsel is awarded attorneys' fees exceeding $1.886 million and/or costs exceeding $500,000. Notwithstanding the above, and for the sole purpose of avoiding unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal from the Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment awarding (i) an amount of $5,000.00 to the Representative Plaintiff, (ii) attorneys' fees in an amount not to exceed $1.886 million and/or (iii) documented costs in an amount not to exceed $500,000, and (b) could not result in the reversal and/or modification of the Judgment (including the release provisions contained in paragraphs 3.25 through 3.30), then GM and Class Counsel

4

may, acting in good faith and upon mutual agreement, agree that the Settlement is otherwise

Effective and that implementation of the Settlement, including distribution of the settlement

benefits, should proceed.

    1.14.  "GM Product" means a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle.

    1.15.  "Judgment" means the judgment to be entered by the Court pursuant to this

Settlement, in a form acceptable to GM and Class Counsel, which shall include final approval of

the Settlement, dismissal of the Action with prejudice, and approval and entry of the provisions

contained in Section 3(D), Release, below (i.e., subparagraphs 3.25 through 3.30).

    1.16.  "Notice Order" means an Order in a form acceptable to GM and Class Counsel,

providing for, among other things, preliminary approval of the Settlement, dissemination of the

notice of the Settlement to the Class, and setting of the Fairness Hearing.

    1.17.  "Parties" means the Class Representative and Defendant GM.

    1.18.  "Proof of Purchase" means contemporaneous documentary proof of the purchase

at retail from a franchised GM dealer in Pennsylvania of a new and not previously titled vehicle

that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick

or Pontiac Divisions of General Motors Corporation.  Each such purchase must have occurred on

or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or

distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles

manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new

vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new

vehicles manufactured or distributed by the Buick Division.  Acceptable forms of Proof of

Purchase may include a copy of (i) the retail invoice; (ii) original finance documentation; (iii) the

title; (iv) insurance documentation; (v) a cancelled check; and/or (vi) similar documentation

sufficient to reasonably establish that Claimant purchased, rather than leased, a new and not previously titled vehicle that is subject to this Settlement.

2.    **RECITALS**

2.1.    GM is a corporation organized under the laws of the State of Delaware and is engaged in the business of, among other things, manufacturing automotive products.

2.2.    Class Counsel, on behalf of the foregoing Class Representative, commenced the Action against GM, alleging that GM violated the Pennsylvania Board of Vehicles Act.

2.3.    Defendant GM has vigorously defended the Action and denies all allegations of wrongdoing asserted in the Action and denies liability under any cause of action asserted therein.

2.4.    The Parties recognize that the outcome of the Action is uncertain and that pursuing the Action to litigated judgments would entail substantial cost, risk and delay.

2.5.    The Class Representative and Class Counsel have conducted an investigation and evaluation of the factual and legal issues raised by the claims asserted in the Action and the defenses asserted by GM thereto, and believe that, in light of the cost, risk and delay of continued litigation balanced against the benefits of the Settlement set forth in this Agreement, such Settlement is in the best interests of, and is fair, reasonable, and adequate for the Class as a whole.

2.6.    Through this Settlement, the Parties desire to compromise and settle all issues and claims that have been or could have been brought in the Action by or on behalf of members of the Class.

2.7.    The Parties agree to undertake all reasonable efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purpose of

6

this Agreement, to secure the Court's approval of it, and to oppose any objections to and appeals from any order of final approval.

2.8.    It is specifically understood that nothing herein shall limit GM in making its business decisions, including, but not limited to, decisions at any time regarding marketing and/or the use of monies derived from the sale of vehicles; nothing herein shall require GM to adjust its wholesale prices, manufacturer suggested retail prices or dealer discounts in any way; and nothing herein shall affect in any way GM's freedom to establish prices to dealers, manufacturer suggested retail prices or any other pricing terms.

3.    **SETTLEMENT CONSIDERATION**

NOW, THEREFORE, GM and the Class Representative and the Class, by and through Class Counsel, in consideration of the mutual covenants and agreements herein, agree to follows:

A.    **Claims Reimbursement**

3.1.    All Claimants who submit a proper Claim Form and, where available and feasible through the Claimant's best efforts, Proof of Purchase, will be eligible to receive one Certificate from the Claims Administrator for each new Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile or Pontiac vehicle that they purchased during the periods listed in subparagraph 1.8 above. The Claim Form must be submitted by the Claimant via ordinary U.S. Mail, and must be postmarked by the Claim Deadline.

3.2.    All Claimants must complete all sections of the Claim Form, except that they shall not be required to fill in the VINs for the listed vehicles if the VINs are not reasonably known or available to the Claimants, and must use their best efforts to submit, along with the Claim Form, Proof of Purchase of the vehicle. Failure to complete the Claim Form in its entirety shall not be a sufficient basis to deny the Claim, provided that: (i) the Claimant submits Proof of

Purchase, which contains information sufficient to confirm the authenticity of the Claim; or (ii)

the Claimant or a co-purchaser listed on the Claim Form appears on the list of new vehicle

deliveries produced in discovery in this Action.

3.3.    If a Claimant who has completed all but the VIN portion of the Claim Form (i.e.,

the "required responses") is unable to submit any Proof of Purchase, GM will nevertheless

accept the Claim if there is no evidence that the Claimant is not eligible and: (i) the Claimant or a

co-purchaser listed on the Claim Form appears on the list of new vehicle deliveries produced in

discovery in the Action; or (ii) the Claimant provides a VIN matching a new and previously

untitled vehicle sold to the Claimant during the pertinent period.  Notwithstanding the foregoing,

in the event a Claimant completes the Claim Form and provides either Proof of Purchase or a

qualifying VIN, the failure of that Claimant to appear on the list of new vehicle deliveries shall

not constitute evidence that the Claimant is not eligible.

3.4.    In no circumstance will more than one Certificate or Undocumented Certificate be

issued in relation to a single vehicle purchase.  If two or more co-purchasers submit Claim Forms

that would otherwise be valid, the Certificate or Undocumented Certificate will be provided to:

(1) the purchaser whose name appears on the list of new vehicle deliveries; or (2) if none of the

co-purchasers' names appear on the list, the purchaser whose name appears first on the purchase

documents; or (3) if none of the co-purchasers' names appear on the list, and the purchase

documents have not been produced, the purchaser with the earliest postmark date for his or her

Claim Form.

3.5.    Within thirty (30) days after expiration of the period for the last of all Claimants

to cure deficiencies (as defined in subparagraph 3.7 below), the Claims Administrator shall

aggregate the total number of Claims received and calculate the percentage of those Claims that

8

constitute Undocumented Claims. The Undocumented Claims would be rejected under this Settlement. However, GM agrees to provide one Certificate for each Undocumented Claim if the Undocumented Claims do not exceed 10% of the total aggregate of Claims received. In the event the Undocumented Claims exceed 10%, but do not exceed 20%, of the total aggregate of Claims received, GM hereby agrees to provide one Undocumented Certificate for each Undocumented Claim. In the event the Undocumented Claims exceed 20% of the total aggregate of Claims received, the Parties agree that the Undocumented Claims will be rejected and will not be entitled to any Certificate or Undocumented Certificate.

3.6.    The Claims Administrator has the right, if it reasonably suspects a potentially invalid Claim or fraud, to request additional information. In addition, GM has the right to perform a review of Claims and, in the event that GM reasonably suspects a potentially invalid Claim or fraud, to request additional documentation before the Claim is approved and the Certificate is issued.

3.7.    Within thirty (30) days after receiving a Claim Form, the Claims Administrator must determine whether to conditionally accept the Claim subject to the provisions in subparagraph 3.4 above, deny the Claim, or request additional information or materials, and if the latter, send a written request to the Claimant for any additional information or materials. After giving the Claimant a reasonable opportunity of forty-five (45) days to cure a deficient Claim, the Claims Administrator shall determine the sufficiency or deficiency of the Claim. GM and Class Counsel will work with the Claims Administrator to develop a mutually-accepted process by which the sufficiency or deficiency of Claims are determined, including GM's ability to challenge Claims that it suspects are invalid, and Class Counsel's ability to challenge the anticipated denial of Claims before a final determination is made. The Claims Administrator

9

must follow the procedures outlined in this Settlement Agreement and the agreed-upon process

in making its determination of the sufficiency or deficiency of a Claim. Its determination shall

be final and not subject to appeal by any party.

    3.8.    Claims may not be assigned and must be made in the name of the Class Member

(i.e., vehicle purchaser), or in the event the Class Member is deceased, the Claim can be made by

the Class Member's executor or administrator.

    3.9.    Within sixty (60) days after the (i) date that the Claims Administrator calculates

the percentage of Undocumented Claims and completes the corresponding procedures set forth in

subparagraph 3.5 above, or (ii) the Effective Date of Settlement, whichever occurs later, the

Claims Administrator shall mail the Certificates and Undocumented Certificates, as appropriate,

issued to the Claimants, to be used towards the purchase or lease of a new GM Product.

    3.10.    Certificates and Undocumented Certificates shall be stackable with any other

available discount for the purchase or lease of a GM Product, except (i) the GM employee

discount programs (except in a circumstance where such program is extended to all consumers)

and (ii) the Assignable Certificate, as set forth in subparagraph 3.13 below. No more than two

Certificates or Undocumented Certificates can be used in any single vehicle transaction.

    3.11.    The Certificates and Undocumented Certificates shall be valid for thirty-six (36)

months after final approval of the Settlement.

    3.12.    Certificates and Undocumented Certificates shall be non-transferable during the

first twelve (12) months after final approval of the Settlement, except to immediate household

members (i.e., persons living at the same address as the Class Member) or to the parents or

children of Class Members. Such transfers to immediate household members, parents and

10

children may be made at any time during the thirty-six (36) months that the Certificates and

Undocumented Certificates are valid.

3.13.    After the first twelve (12) months, Class Members who have received a

Certificate or Undocumented Certificate but have not availed themselves of the right to use it for

the purchase or lease of a new GM Product may convert the Certificate or Undocumented

Certificate into an Assignable Certificate. The Assignable Certificate shall be valid until thirty-

six (36) months after final approval of the Settlement. Only one Assignable Certificate can be

utilized with respect to any GM vehicle lease or purchase transaction. Assignable Certificates

shall be stackable with any other available discount for the purchase or lease of a GM Product,

except (i) the GM employee discount programs (except in a circumstance where such program is

extended to all consumers); (ii) Certificates; or (iii) Undocumented Certificates. The Assignable

Certificate may be transferred by the Claimant only once to a specific individual without the

involvement of third parties and shall be subject to procedures by which the Claims

Administrator and/or GM, at its option, shall be entitled to verify that the transfer is valid.

3.14.    GM will pay the Class Representative the amount of $5,000.00 by delivering a

check in that amount payable to "RODANAST, P.C., as attorneys for Donna Soders" within seven

(7) business days after (i) the Effective Date of the Settlement or (ii) delivery of a properly-

completed IRS W-9 Form, whichever occurs later.

**B.    Costs and Fees**

3.15.    GM will pay all costs and fees of the Claims Administrator and Claims

administration.

3.16.    GM will pay all costs, not to exceed $441,000, associated with disseminating the

publication notice of the Settlement to the Class. Class Counsel shall contract with the entity

11

responsible for disseminating notice, with GM signing the retention agreement as the responsible party for any publication notice costs up to and including $441,000. GM will pay the funds directly to the entity responsible for disseminating notice in accordance with the terms of the retention agreement.

3.17.    GM will not object to, and will pay, Class Counsel's attorneys' fees in an amount to be approved by the Court but not to exceed the total aggregate amount of $1.886 million. This represents less than the amount of fees that Class Counsel have incurred in litigating this Action. In no event shall GM be obligated to pay for attorneys' fees in excess of $1.886 million. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is conditioned upon the attorneys' fee award not exceeding $1.886 million and in the event it does, the Settlement Agreement will not become Effective, as set forth in subparagraph 1.13 above.

3.18.    GM will not object to, and will pay, Class Counsel's documented costs in an amount to be approved by the Court but not to exceed the total aggregate amount of $500,000. In no event shall GM be obligated to pay for documented costs in excess of $500,000. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is

conditioned upon the cost award not exceeding $500,000 and in the event it does, the Settlement

Agreement will not become Effective, as set forth in subparagraph 1.13 above.

C. **Notice to Class Members; Objections**

3.19.   Class notice of the Settlement shall be primarily by publication, using a

publication notice in a form acceptable to GM and Class Counsel and a notice plan identical to

the notice plan used after initial certification of the Class, except that notice shall be published

twice, rather than once, in the weekday newspaper editions, and shall also be published once

each in the Pennsylvania state editions of Newsweek and People.  The notice plan may be further

revised as may be mutually acceptable to the Parties and approved by the Court.

3.20.   In addition to notice by publication, no later than the last published notice date,

the Claims Administrator shall send direct mail notice to each Class Member who (i) was a

recipient of the Absent Class Member Questionnaire in connection with discovery in the Action;

(ii) has made direct contact with Class Counsel; or (iii) is otherwise identifiable as having a

specific interest in the Action.  If any such direct mail notice is returned as undeliverable and/or

unclaimed, within fourteen (14) business days, the Claims Administrator shall attempt to

determine a valid address for such Class Member through the National Change of Address

database and mail the direct mail notice to any valid address that is found for the Class Member.

This mail notice shall be in a form acceptable to GM and Class Counsel.

3.21.   The Settlement notice plan shall be implemented within forty-five (45) days after

its approval by the Court unless otherwise agreed to by the Parties.

3.22.   Subject to Court approval, the Settlement notice shall give Class Members thirty

(30) days from the last published notice of the Settlement to object to the proposed Settlement.

Class Members shall submit any objections in writing, along with any supporting papers, to

Class Counsel, who shall provide copies to GM. The objections must state the reasons therefore, and must be postmarked by the deadline date. Any Class Member who fails to make objection in the manner provided shall be deemed to have waived any such objection and shall be foreclosed from making any objection (at the Settlement Fairness Hearing, by appeal or otherwise) to this Settlement.

3.23.    Subject to Court approval, the Settlement notice shall give at least forty-five (45) days advance notice of the final Fairness Hearing. Class Members shall submit copies of any notices of intent to appear and speak at the final Fairness Hearing to Class Counsel, who shall provide copies to GM. Such notices must be postmarked by the deadline date, which shall be thirty (30) days from the date of the last published notice of the Settlement. Any Class Member who fails to submit a notice of intent to appear and speak at the hearing in the manner provided shall be foreclosed from speaking at the hearing.

3.24.    The Settlement notice shall give each Class Member one hundred twenty (120) days from the date of the last published notice to submit a Claim. Class Members shall be entitled to submit Claims immediately upon receipt of notice, subject to final approval by the Court of the Settlement.

**D.    Release of Claims**

3.25.    If the Settlement is approved by the Court and the Action is dismissed with prejudice, each Class Member shall be bound thereby and shall have only the relief provided in this Settlement. Said dismissal will bar all claims that were or could have been asserted in the Action, or which arise out of or could be based on the allegations of the class action complaint filed in the Action, or which were based upon any of the acts or transactions set forth in the complaint, provided, however, that nothing herein shall restrict the right to bring claims based on

14

unrelated conduct of GM that could not have been asserted in the Action, or on a breach of any

terms set forth in this Settlement Agreement.

3.26.    In consideration of the benefits described above, the Class Representative

promises, covenants and agrees, and each Class Member and the Class shall be deemed to have

promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Class

Representative and the Class Members, including without limitation any of their present or

former affiliates, subsidiaries, associates, general or limited partners or partnerships,

predecessors, successors, assigns, officers, directors, trustees, employees, agents, attorneys,

representatives, shareholders, heirs, spouses, executors, administrators, or insurers and anyone

acting on their behalf, by operation of the Judgment, shall have hereby released, waived and

discharged GM, including its present or former subsidiaries, divisions, affiliates, associates,

general or limited partners or partnerships, predecessors, successors, assigns, officers, directors,

trustees, employees, agents, attorneys, representatives, shareholders, heirs, executors,

administrators, or insurers and anyone acting on their behalf, individually and collectively, from

liability for any and all claims, demands, debts, rights, causes of action or liabilities, including

known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, under

state statutory or common law, federal statutory or common law, or foreign statutory or common

law, to the fullest extent permitted by law, including, but not limited to, claims arising under the

Pennsylvania Board of Vehicles Act, whether or not such claims were or could have been raised

or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in

whole or in part, any of the allegations, acts, omissions, transactions, events, conduct or matters

in the Action, including but not limited to those based on: (i) the portion of price previously

labeled on dealer vehicle invoices as the "GM Marketing Adjustment" in the amount of 1% of

15

the vehicle's MSRP exclusive of freight and destination charges; and (ii) the various GM

divisional marketing initiatives and/or programs at issue in the Action.

3.27.    Upon the Effective Date of Settlement, for the consideration provided for herein

and by operation of the Judgment, the Class Representative shall have, and each Class Member

and the Class shall be deemed to have, covenanted and agreed that he or she shall not, at any

time, institute, cause to be instituted, assist in instituting, or permit to be instituted on his or her

behalf any proceeding, in any state or federal court, in or before any administrative agency, or

otherwise, or otherwise allege or assert any of the claims released against the Released Persons,

individually or collectively, in subparagraph 3.26 above.

3.28.    Release language shall be included on the Claim Form and on the reverse side of

the check issued to the Class Representative.

3.29.    The Class Representative, by and through Class Counsel, agrees to seek Court

approval of this Settlement Agreement and the complete dismissal with prejudice of all claims of

the Class against GM in the Action.  The Class Representative and Class Counsel shall take such

steps as may be necessary or as may be requested by the Court, and otherwise shall use their best

efforts to effectuate this Settlement Agreement and the settlement herein provided.  Likewise,

GM agrees, where appropriate, to take such steps as may be necessary or as may be requested by

the Court, and otherwise shall use its best efforts to effectuate this Settlement Agreement and the

settlement herein provided.  The Class Representative Plaintiff and Class Counsel will move the

Court for entry of Judgment dismissing with prejudice all claims asserted against GM by the

Class Representative and the Class in the Action.

3.30.    The sole remedy for default of this Agreement by either of the Parties is an action

for breach of this Agreement.  Following entry by the Court of a Judgment and completion of all

obligations and undertakings set forth therein, no default by any party shall affect the final

dismissal of the Action with prejudice and the discharge and release of GM as set forth in

subparagraphs 3.25 through 3.30.

4.    DENIAL OF WRONGDOING OR LIABILITY

4.1.    This Agreement constitutes the resolution of disputed claims, is for settlement

purposes only, and shall not be used by any Party or Class Counsel for any other purpose. GM

expressly denies that it has violated any law, or injured the Class Representative or the Class in

any way, or engaged in any wrongdoing with respect to the Class Representative or the Class.

GM denies that it is liable to the Class Representative or the Class for any claims, causes of

action, costs, expenses, attorneys' fees or damages of any kind relating to the Action. GM denies

that any of the claims were appropriate for maintenance as a class action through trial. Neither

this Agreement nor any actions undertaken by GM in satisfaction of this Agreement shall

constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the

validity of any allegation of fact or law made by the Class Representative or the Class in the

Action. This Agreement, even when Effective, shall not be offered or be admissible in evidence

against GM or cited or referred to in any action or proceeding, except in an action or proceeding

brought to enforce its terms or by GM in defense of any claims brought by the Class

Representative, the Class or by any Class Members.

5.    MISCELLANEOUS PROVISIONS

5.1.    The Class Representative and GM expressly agree that the terms of this

Agreement and all provisions hereof, including all representations, promises, agreements,

covenants, and warranties, are contractual and not a mere recital and shall survive the execution

of this Agreement and entry of the Judgment and shall continue in full force and effect. All

17

exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

5.2.    This Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement, the sole exception being the term sheet attached hereto as Exhibit A. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part or all of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. No modification or waiver of any provisions of this Agreement shall be effective unless made in writing and signed by or on behalf of the person against whom enforcement of the Agreement is sought.

5.3.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

5.4.    The Parties have negotiated all of the terms and conditions of this Agreement at arm's length. None of the Parties or their respective counsel will be deemed the drafter of this Agreement or its exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Party as the drafter thereof.

5.5.    The Parties hereto warrant and represent that no promise or inducement has been offered or made for the release and covenants in subparagraphs 3.25 through 3.30 except as herein set forth, that the releases and covenants are executed without reliance on any statements

or any representations not contained herein, and that the release and covenants reflects the entire agreement among the Parties with respect to the terms of the releases and covenants.

5.6.    The Parties acknowledge and agree and specifically warrant to each other that they have fully read this Agreement and the releases and covenants contained in subparagraphs 3.25 through 3.30, received independent legal advice with respect to the advisability of entering into this Agreement with those releases and covenants and the legal effect of this Agreement and the releases and covenants, and fully understand their effect.

5.7.    GM and Class Counsel may agree, on behalf of the Parties and subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Agreement.

5.8.    This Agreement shall be binding upon and inure to the Parties' successors and assigns. This Agreement is not intended to create any third-party beneficiaries other than persons (including Class Members) for which a direct benefit is specifically provided for hereunder.

5.9.    In the event that the release and covenants contained in subparagraphs 3.25 through 3.30 of this Agreement shall for any reason be held in whole or material part to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement if GM elects in writing to Class Counsel to proceed as if such invalid, illegal or unenforceable provision had never been included in this Agreement. If no such election is made, then the Agreement shall be null and void. If one or more of the other material provisions contained in this Agreement is held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability will not affect other provisions if

19

GM and the Class Representative, on behalf of the Class, both elect to proceed as if such invalid, illegal or unenforceable provision were not contained in this Agreement.

5.10.    No consideration or amount or sum paid, credited, offered or expended by GM in its performance of this Agreement constitutes a penalty, fine, punitive damage or other form of assessment for any alleged claim or offense.

5.11.    For purposes of this Agreement, the Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information ("Protective Orders") remain in effect and all Parties and counsel remain bound to comply with the provisions of those Protective Orders.  Within thirty (30) days of the Effective Date of Settlement, each of the Parties agrees to use its best efforts to return or destroy all confidential documents produced in the Action and all copies thereof, and each of the Parties' counsel will certify in writing that it used its best efforts to return or destroy all such documents.

5.12.    The Parties hereto understand, acknowledge and agree that they (i) have each performed an independent investigation of the allegations of fact and law made in connection with the Action, and (ii) that they each may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Agreement.  Nevertheless, it is the Parties' intention to resolve their disputes pursuant to the terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any change or difference in facts or law.

5.13. This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.

5.14. In the event the Court issues the Order approving this Settlement Agreement and the Action is dismissed with prejudice, the Action will be terminated subject only to the Court's inherent powers solely and exclusively to enforce the terms of the Settlement Agreement.

5.15. Whenever under the terms of this Agreement, a Party is required to provide written notice to the other, such notice must be directed to the individual at the address specified below, unless that individual or the individual's successor gives notice to the other Party in writing of another individual or address to whom such notice should be directed.

Written notice to the Class Representative or Class Counsel must be given to:

> Joseph F. Roda, Esq.
> Michele S. Burkholder, Esq.
> RODANAST, P.C.
> 801 Estelle Drive
> Lancaster, PA 17601

Written notice to GM must be given to:

> Jeffrey A. Lipps, Esq.
> Angela M. Paul Whitfield, Esq.
> CARPENTER LIPPS & LELAND LLP
> 280 Plaza, Suite 1300
> 280 North High Street
> Columbus, Ohio 43215

With a copy to:

> Lawrence S. Buonomo, Esq.
> General Motors Legal Staff
> 400 Renaissance Center
> MC 482-026-601
> Detroit, MI 48265

5.16. If this Settlement Agreement is not approved by the Court or if any such approval is reversed on appeal, the Settlement Agreement shall be null and void, shall have no further

21

force and effect, and shall not be offered in evidence or under the Action for any purpose,
including for the purpose of arguing for or against the existence, certification, or maintenance of
any purposed class. In such event, the Settlement Agreement and all negotiations, proceedings,
documents prepared and statements made in connection herewith shall be deemed to have been
made without prejudice to GM or the Class Representative, shall not be deemed or construed to
be an admission or confession by any party of any fact, matter, or proposition of law, and shall
not be used in any manner for any purpose. Thus, all Parties to the Action shall stand in the
same position as if the Settlement Agreement had not been negotiated, made or filed with the
Court. If the Settlement is not approved, the Parties may elect to move the Court to vacate any
and all orders entered by the Court pursuant to the provisions of this Settlement Agreement, and
GM expressly reserves the right to continue to challenge and to pursue appealing of the orders
regarding the certification of the Class in the Action, and Class Counsel expressly reserve the
right to oppose any such challenges on appeal by GM.

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their
duly authorized attorneys below.

_Michele S. Burkholder_

Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

23

_____
Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

_____
Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

23