**EXHIBIT G**

1

```
 1              IN THE COURT OF COMMON PLEAS
              LANCASTER COUNTY, PENNSYLVANIA
 2                          CIVIL

 3
    ----------------------------------:
 4                                    :
    DONNA SODERS, on behalf of        :
 5  herself and all others            :
    similarly situated,               :
 6                                    :
                Plaintiff             :
 7                                    :
          Vs.                         :
 8                                    : No. CI-00-04255
                                      :
 9  General Motors Corporation,       :
                                      :
10              Defendant             :
    ----------------------------------:
11

12                  Expedited Hearing

13
            Before:  HONORABLE LOUIS J. FARINA,
14                   PRESIDENT JUDGE

15
            Date  :  Thursday, May 21, 2009
16

17          Place :  Courtroom No. 10
                     50 North Duke Street
18                   Lancaster, Pennsylvania

19

20  APPEARANCES:

21  JOSEPH F. RODA, ESQUIRE
    MICHELE BURKHOLDER, ESQUIRE
22  RodaNast, P.C.
    801 Estelle Drive
23  Lancaster, PA  17601

24       For - The Plaintiff

25  ORDERED: 5/21/09    LODGED:_____    FILED:_____
```

1  class certification process that when -- actually, I
2  will withdraw that.
3      One of the areas inquired about during class
4  certification was the fact that Miss Soders was employed
5  at a local law firm; wasn't it?
6      A.  There was inquiry.  It was asked at her
7  deposition, if that's what you mean.
8      Q.  Was it not -- and I can hand you a copy --
9  addressed in the analysis of whether or not Miss Soders
10 was an adequate representative in the order granting
11 class certification in this case?
12     A.  It's mentioned in the bottom paragraph.  It is
13 mentioned in the bottom paragraph of the Court's opinion
14 on page 7.
15         Specifically, the Court says while Mrs. Soders is
16 employed as a secretary in the local law firm, she does
17 not work for any of the firms or attorneys involved in
18 this case.
19         The firm for which she works is not involved as
20 counsel in this case; thus, we find her occupation
21 irrelevant to the inquiries here.
22     Q.  Did you ever disclose to the Court or counsel for
23 GM that James Hagelgans was your co-counsel in the Foltz
24 versus Erie class action, which was pending at the same
25 time as the Soders class action?

35

1  A.  I don't recall disclosing it, nor would I have
2  seen any reason to do so.
3  Q.  Okay.  And you would agree with me that's the
4  same Hagelgans of Hagelgans & Veronis that Mrs. Soders
5  worked at?
6  A.  It is.  I think they were listed as counsel on
7  the complaint.
8  Q.  And that was pending at the same time as this
9  case?
10 A.  I don't recall the sequence.  Erie was the auto
11 parts, the aftermarket auto parts case.
12    This case pended so long, I guess it is true, a
13 lot of cases were pending at the same time as this case,
14 so could they have overlapped.
15 Q.  Isn't it true that Mr. Hagelgans shared in part
16 of the fee of the Foltz versus Erie Insurance Company
17 class action case?
18 A.  I think he probably did.  I don't have a specific
19 recollection, but I think he probably did.  He was
20 referring counsel.
21 Q.  And you never disclosed that to this Court or to
22 counsel for GM; isn't that true?
23 A.  I don't think I ever mentioned it.  I don't think
24 there was any occasion to mention it or any requirement
25 to mention it.

1      THE COURT: I am going to ask you the
2 relevance of that. I wasn't counting on being here all
3 afternoon, but I guess I'm going to be, so since there's
4 nobody here to make relevance objections --
5      MR. GIBSON: I could connect the dots.
6      THE COURT: Please.
7      MR. GIBSON: Here's -- Mr. Roda has raised
8 issues of improper conduct on behalf of attorneys, which
9 I'm happy to stand here and address any allegation that
10 he makes, although normally someone who is going to make
11 those kinds of allegations would make sure that they
12 haven't done anything themselves.
13      If it was an issue in this case as to
14 whether or not Miss Soders had a conflict of interest as
15 far as being a class representative, that was an issue.
16 The fact that she was associated with Hagelgans &
17 Veronis was an issue as to whether or not she was an
18 adequate rep, okay?
19      Now, if he knew the whole time that
20 Hagelgans & Veronis was his co-counsel in another case
21 and that they had a financial stake in another case
22 working with Mr. Roda, that's evidence that would have
23 been relevant to the Court and should have been
24 disclosed to the Court. Under the Professional Rules of
25 Conduct, when an attorney knows facts that --

1    THE COURT: No, that's the dot you have to
2 connect for me. Why would that be relevant for the
3 Court to know?
4    MR. GIBSON: Well, if her firm is going to
5 benefit from its relationship with RodaNast, then
6 perhaps her adequacy as a class representative --
7    THE COURT: Wait a minute, wait a minute.
8 Are you suggesting her firm was going to benefit in this
9 case?
10    MR. GIBSON: Indirectly through the other
11 case. In other words, if her firm has a financial stake
12 in being affiliated with RodaNast and she's a class rep,
13 then she's potentially compromised in her judgment as
14 far as going against what class counsel --
15    THE COURT: I guess if anybody needed to
16 know that, if anybody did, it would be GM.
17    MR. GIBSON: Yes, and that's the Rules of
18 Professional Conduct requiring one to disclose that, and
19 that's my point.
20    THE COURT: I said if. The dot is pretty
21 obscure to me in this case. If your suggestion is
22 because he had a relationship with the law firm in
23 another case, then --
24    MR. GIBSON: Which the class rep worked for,
25 which was an issue in this case. Her adequacy was an

```
 1  issue in this case.
 2          THE COURT:  If she was -- if Hagelgans &
 3  Veronis was associated as counsel, yes.  But there's no
 4  suggestion of that.
 5          MR. GIBSON:  Well, does James Hagelgans
 6  routinely get involved in class action work?
 7          THE WITNESS:  I don't know.  I don't believe
 8  so.
 9          THE COURT:  Probably not, through the
10  limited knowledge that I have.
11          MR. GIBSON:  Well, then I certainly imagine
12  that GM's counsel would want to inquire as to
13  Mr. Hagelgans, who is not a class action lawyer, was
14  permitted to share in fees in another class action case
15  where his employee was a class rep in another case.  I
16  would think that would be highly relevant to GM.
17          THE WITNESS:  Your Honor, if I may, since I
18  am unrepresented, as Your Honor well knows?
19          MR. GIBSON:  You had a chance.
20          THE COURT:  Let him go.  You are going to be
21  in the same boat soon.
22          MR. GIBSON:  I'm fine.
23          THE WITNESS:  GM had, if anything, ample
24  opportunity to inquire of any aspect of this case.  And
25  they did throughout the nine years that it was
```

```
 1  litigated.
 2              THE COURT:  I'm well aware of that.
 3              MR. GIBSON:  That doesn't relieve counsel of
 4  their obligations.
 5              THE COURT:  Let's move on.
 6              MR. GIBSON:  I have made my point.
 7  BY MR. GIBSON:
 8      Q.  Mr. Roda, are you aware that there has -- I know
 9  that we had a disagreement as to whether or not the
10  objection conferred a benefit on the class.  I think
11  that that's fair to say, right, that we disagreed on
12  that?
13      A.  Yes, and we do.
14      Q.  Are you aware after the final fairness hearing
15  that there has been local media coverage of this
16  settlement?
17      A.  Sure, and I object, Your Honor, to the relevance
18  of that.
19              THE COURT:  Make your point, and I will
20  determine what it is.  I remember there was an article.
21  BY MR. GIBSON:
22      Q.  Well, isn't it true that there's an article
23  called Unsettling Settlement, class action lawsuit
24  brings a coupon good only for a new GM car to customers
25  who were overcharged 200 to $250.  Law firm gets
```

```
 1   $844,000.  Do you recall seeing that article?
 2       A.  I do recall seeing that article.
 3              MR. GIBSON:  I sent it to you.
 4              Mr. Roda is sitting here accusing me of
 5   having a baseless and frivolous appeal, and when I say
 6   that the benefit I conferred was improving the public's
 7   perception by reducing attorney fees in this case by a
 8   million dollars for class counsel, who gets grossly
 9   overpaid for an atrocious settlement, this cuts right to
10   the core.
11              THE COURT:  I already told you what my
12   feeling was on your premise.  One, he wasn't grossly
13   overpaid.  I applauded his reduction under the
14   circumstances.  Two, it wasn't an atrocious settlement.
15              MR. GIBSON:  Your Honor, I mean no
16   disrespect to the Court.  Then I will call it
17   unreasonable.
18              THE COURT:  As a matter of appeal, the
19   Superior Court will ultimately decide that.
20   BY MR. GIBSON:
21       Q.  Let me just suffice it to say, are you aware, and
22   I won't read them into the record, but I certainly would
23   like to submit this into evidence as well, that there
24   are other instances, Mr. Roda, of public outcry over
25   this settlement?  Are you aware of that?
```

1   submission.
2           MR. UNDERHILL:  I don't view General Motors
3   as being directly involved in the motion filed by
4   Mr. Roda with regard to the settlement because GM's
5   position is that it is not going to pay a penny and --
6           THE COURT:  Well, but GM has a position, I
7   think, on the issue of whether it was a fair settlement.
8           MR. UNDERHILL:  It does.  And that may come
9   to the 1925.  And so we would like the same ten days.
10          THE COURT:  Oh, yes, absolutely.  You have
11  ten days after his response is due, which is seven days
12  from now.  And both of your responses are due ten days
13  after his response on the seven days.
14          MR. UNDERHILL:  I don't anticipate doing
15  anything with respect to today's hearing.  We will leave
16  that to Mr. Roda.
17          THE COURT:  I assumed that would be the
18  case.
19          MR. UNDERHILL:  One other thing I would like
20  to bring up.
21          THE COURT:  Yes.
22          MR. UNDERHILL:  Earlier we asked who this
23  gentleman was, and he was identified as a spectator, but
24  he clearly is more than that.
25          THE COURT:  He does appear to be more than