**Hearing Date and Time: July 14, 2010 at 9:45 a.m. (Eastern Time)**

Robert B. Weiss
Daniel W. Linna Jr.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Ave.
Detroit, Michigan 48226
Telephone: (313) 465-7508
Facsimile: (313) 465-7509

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In Re**                                                   :   Chapter 11
                                                            :
**MOTORS LIQUIDATION COMPANY** (f/k/a                       :   Case No. 09-50026 (REG)
General Motors Corp.), et al.,                              :   (Jointly Administered)
                                                            :
        Debtors.                                            :   Hon. Robert E. Gerber
                                                            :
------------------------------------------------------------x

**General Motors LLC's Brief in Support of Debtors' Ninth Omnibus Motion Pursuant to 11 U.S.C. § 365 to Reject Certain Executory Contracts and Unexpired Leases of Non-Residential Real Property (Docket No. 4437) as it Pertains to M-Tech Associates, LLC**

**Table of Contents**

Introduction..................................................................................................................................1

Factual Background ....................................................................................................................2

Procedural Background..............................................................................................................10

Argument ...................................................................................................................................11

  A.    By the Express Terms of the Schedule, Only the Purchase Order could have been
Assumed...........................................................................................................................11

  B.    If the Purchase Order was not an Executory Contract, Nothing was Assumed..................12

  C.    By Virtue of M-Tech's Objections, Nothing was Assumed .............................................13

Conclusion .................................................................................................................................14

# Table of Authorities

**Cases**

*COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*,
   524 F.3d 373 (2d Cir. 2008) ................................................................................................. 13

*In re A.C.E. Elevator Co., Inc.*
   347 B.R. 473 (S.D.N.Y. Bankr. 2006) ................................................................................ 11

*In re Enron Corp.*,
   300 B.R. 201 (Bankr. S.D.N.Y. 2003) ................................................................................ 12

*In re Tower Automotive, Inc.*, No. 05-10578
   2007 Bankr. LEXIS 2219 (Bankr. S.D.N.Y. June 29, 2007) .............................................. 11

**Statutes**

11 U.S.C § 365(a) ..................................................................................................................... 13

**Other Authorities**

Vern Countryman, Executory Contracts in Bankruptcy: Part I,
   57 Minn. L. Rev. 439(1973) ................................................................................................ 14

**Introduction**

General Motors LLC ("**GM**") files this brief in support of Debtors' motion (Docket No. 4473) to reject a nonresidential real property Lease[1] with M-Tech Associates, LLC ("**M-Tech**"). M-Tech has objected (Docket No. 6009) that the Lease cannot be rejected because it was previously assumed and assigned. In an effort to somehow circumvent the indisputable facts, M-Tech argues that Debtors, by providing notice of their intent to assume a Purchase Order for M-Tech's performance of maintenance services, **inadvertently** assumed the Lease. M-Tech's argument is contrary to the following indisputable facts:

    1.    The Lease was never designated for assumption; and

    2.    The Lease was expressly designated for rejection.

In a strained effort to avoid the consequences of the above facts, M-Tech argues that the Purchase Order was not an executory contract and could not be assumed. Therefore, although it was not identified to be assumed, M-Tech argues that something was assumed, so it must have been the Lease.

GM disagrees that the Purchase Order was not an executory contract. But even if the Purchase Order could not be assumed, it does not follow that the Lease was assumed. Indeed, the Lease was designated for rejection, never noticed for assumption, and its assumption was never approved by the Court. Further, M-Tech's position has no basis in law since an executory contract cannot be assumed by implication. Finally, in addition, M-Tech objected to the assumption of the Purchase Order on the grounds that it required adequate assurances that GM would honor the Lease. Under the Sale Procedures Order, that alone means that nothing was assumed. *See* Paragraphs 47-49, below.

---

[1] Capitalized terms not defined in this introduction are defined below.

Because Debtors never assumed the Lease, Debtors' motion to reject the Lease should be granted.

**Factual Background**

*The Lease*

1.  M-Tech is the owner of real property located at 33500 Mound Road in Sterling Heights, Michigan (the "**Property**").

2.  Before the Petition Date (defined below), pursuant to a lease agreement dated August 28, 1986 (as amended from time to time, the "**Lease**"), M-Tech leased the Property to Debtors. A copy of the Lease is attached as **Exhibit 1**.

3.  The initial term of the Lease was for 10 years and Debtors exercised an option to renew the Lease for an additional five years. M-Tech and Debtors then executed three written amendments to the Lease that both extended the term and adjusted the rent payments due under the Lease. The Third Lease Amendment Agreement, the last written amendment, was signed on June 5, 2006 and extended the Lease until January 14, 2017, while providing Debtors an option to terminate the Lease in January 2012. Certain amendments, supplements, and other documents relating to the Lease are attached as **Exhibit 2**.

*Maintenance Services Under the Lease*

4.  Debtors and M-Tech executed a Rider that was incorporated into and made part of the Lease when it was executed in 1986. The Rider is attached to the Lease Agreement.

5.  Paragraph 12 of the Rider provided that M-Tech would provide janitorial, landscaping, and other general maintenance services on the Property (the "**Services**"). Under the Rider, Debtors were to pay M-Tech $1,000 per month for the Services as additional rent. Paragraph 12 of the Rider also provided that Debtors would reimburse M-Tech for the cost of Services that exceeded the $12,000 annual allowance.

6. Paragraph 12 of the Rider further provided that the level of Services provided was at Debtors' full discretion:

> It is expressively [sic] agreed that **the level of services provided hereunder will be at the full discretion of the Lessee**. In addition, if during the term of the Lease the Lessee is dissatisfied with the services provided hereunder by the Lessor, the Lessee may direct the Lessor as to who will provide the services on behalf of the Lessor.
>
> Rider ¶ 12 (emphasis added).

7. M-Tech issued a monthly invoice to Debtors for the cost of Services that exceeded the $1,000 per month allowance.

### *The Purchase Order for Services*

8. In approximately 1996, Debtors issued blanket Purchase Order TCB02218 (as amended from time to time, the "**Purchase Order**") to "M-Tec [sic] Associates" for Services provided by M-Tech exceeding the $1,000 per month allowance under the Rider. Debtors issued a modified Purchase Order dated February 26, 2009, which provided that the Purchase Order expired on February 28, 2010. A copy of the Purchase Order dated as modified on February 26, 2009, which includes the applicable General Terms and Conditions, is attached as **Exhibit 3**.

9. Nothing in the Purchase Order purports to impose obligations on the parties subsequent to February 28, 2010.

10. Under paragraph 13 of the General Terms and Conditions applicable to the Purchase Order, Debtors could at any time and for any reason terminate the Purchase Order by giving written notice to M-Tech. Paragraph 13 provides, in part:

> 13. TERMINATION FOR CONVENIENCE:
>
> In addition to any other rights of Buyer to terminate this contract, Buyer may, at its option, immediately terminate all or any part of this contract, at any time and for any reason, by giving written notice to Seller.

3

11. After Debtors issued the Purchase Order, each month Debtors provided M-Tech a "release number" relating to the Purchase Order for M-Tech's provision of Services exceeding the $1,000 per month allowance under the Rider. Each of M-Tech's monthly invoices for Services exceeding the $1,000 per month allowance under the Rider referenced the applicable "release number." Copies of M-Tech's monthly invoices from January 2009 through May 2009 are attached as **Exhibit 4**.

12. M-Tech did not invoice Debtors, nor did Debtors pay, sums due as rent under the Lease with reference to the Purchase Order.

### *The Sale Procedures*

13. On June 2, 2009, the Court entered its Order (I) Approving Procedures for Sale of Debtors' Assets Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures and Fixing Notice Procedures; and (IV) Approving Form of Notice (Docket No. 274) (the "**Sale Procedure Order**"), which governed "all bids and sale procedures relating to the Purchased Assets."[2] Sale Procedure Order ¶ 3.

14. The Sale Procedures Order provided the exclusive procedures for the assumption and assignment of designated executory contracts and unexpired leases from Debtors to the Purchaser (the "**Assumption and Assignment Procedures**"). Sale Procedures Order ¶ 10 (stating that the Assumption and Assignment Procedures "shall govern the assumption and assignment of the Assumable Executory Contracts in connection with the sale of the Purchased Assets to the Purchaser").

---

[2] Unless otherwise defined, capitalized terms have the meaning assigned in the Sale Procedures Order.

4

15. In connection with the Assumption and Assignment Procedures, Debtors maintained a secure website (the "**Contract Website**") that listed each executory contract and unexpired lease that the Purchaser had designated as an Assumable Executory Contract. The applicable non-Debtor counterparty could access the Contract Website to view current information regarding the status of its contracts or leases with Debtors and the proposed cure amount associated with such contracts or leases. *Id.*

16. If the Purchaser designated a contract or lease as an Assumable Executory Contract, the Assumption and Assignment Procedures obligated Debtors to notify applicable contract counterparties with "instructions for accessing the information on the Contract Website relating to such Non-Debtor Counterparty's Assumable Executory Contract and (ii) the procedures for objecting to the proposed assumption and assignment of the Assumable Executory Contract." *Id.* Contract counterparties had ten days from the date of the notice to file an objection to the assumption and assignment. *Id.*

17. In addition to the Contract Website, the Debtors maintained a database (the "**Schedule**") of all executory contracts to which the Debtors were a party. The database identified which contracts were subject to assumption and which were to be rejected and was the source document for the Debtors' creation of the Assumable Executory Contract Schedule as defined in the MPA (which is defined in the Sale Order). The information in the database related to the Lease designated the Lease to be rejected.

*<u>The Schedule at all Times Listed the Lease as Designated for Rejection</u>*

18. By no later than May 16, 2009, GM[3] had listed the Lease on the Schedule and designated it for rejection, using the notation "Reject Later." A copy of the Schedule as it pertains to M-Tech as of May 16, 2009, is attached as **Exhibit 5**.

19. GM maintained its designation to reject the Lease on the Schedule and never changed it. To illustrate, copies of the Schedule as of June 4, July 8, and July 20, 2009, as it pertains to M-Tech, are attached as **Exhibits 6**, **7**, and **8**, respectively.

20. The eight contracts on the Schedule designated for rejection (a) identify "M-Tech Associates" in the "Counterparty Name" column, (b) identify "Real Property Leases/Non Residential" as the "Contract Type", and (c) are blank for the "GM Contract ID".

21. At no time did GM intend for the Lease to be assumed by Debtors and assigned to GM. GM intended to occupy the Property, following the purchase of substantially all of Debtors' assets, for only a brief time period and in accordance with the Transition Services Agreement, as discussed below. At no time did GM intend to continue to occupy the Property for an extended time period.

*<u>The Schedule at all Times Listed only the Purchase Order as Designated for Assumption</u>*

22. Conversely, by no later than May 16, 2009, GM listed the Purchase Order on the Schedule and designated it for assumption, using the notation "Assume." *See* Exhibit 5. GM never changed this designation. *See* Exhibits 6, 7, and 8.

---

[3] General Motors Company (formerly NGMCO, Inc.) was the successor-in-interest to Vehicle Acquisition Holdings LLC, the purchaser of substantially all of Debtors' assets pursuant to a sale consummated under section 363 of the Bankruptcy Code. Since the closing of the sale, General Motors Company has converted to a Delaware limited liability company and changed its name to General Motors LLC.

6

23. The Purchase Order was designated for assumption and assignment to GM to ensure ongoing maintenance of the Property in connection with GM's limited occupation of the Property under the Transition Services Agreement, as discussed below.

24. The row on the Schedule listing the Purchase Order and designating it for assumption identifies (a) "M-Tec [sic] Associates" in the "Counterparty Name" column, (b) "Blankets" as the "Contract Type", and (c) "TCB02218" as the "GM Contract ID".

### *The Notice of Assumption of the Purchase Order*

25. On or about June 15, 2009, Debtors sent M-Tech a notice of intent to assume the Purchase Order (the "**Notice**"). The Notice provided M-Tech with a username and password that allowed M-Tech to access the Contract Website. The Contract Website identified the Purchase Order: The identified "Counter Party Name" was "M-Tec [sic] Associates", "GM Contract ID" was "TCB02218", and "Contract Type" was "Blanket Order".

26. The Contract Website did not identify the Lease.

### *M-Tech's Objections to the Notice*

27. On June 10, 2009, M-Tech filed its Objection to Motion or Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of NonResidential Real Property and (II) Cure Amounts Related Thereto (Docket No. 573) (the "**Assumption Objection**"). In the Assumption Objection, M-Tech stated that it had not been able to access the Contract Website because it had not yet received a username and password. Additionally, M-Tech demanded

> adequate assurance under 11 U.S.C. §365(b)(1) that Debtors will (A) promptly pay the Monetary Cure Amount and renew the liability insurance policy [relating to the Lease]; (B) compensate M-Tech for Debtors' default; and (C) will continue to honor their obligations under the Lease.

Assumption Objection ¶ 11.

7

28. On June 16, 2009, M-Tech filed its Revised Objection to Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (Docket No. 1597) (the "**Revised Assumption Objection**").

29. Although the Notice identified the Purchase Order, M-Tech's Revised Assumption Objection raised several objections regarding the lease. M-Tech demanded adequate assurance that Debtors would (A) pay the M-Tech-asserted cure amount and reimburse M-Tech for the cost of certain insurance premiums, (B) compensate M-Tech for any default, and (C) "continue to honor their obligations under the Lease." Revised Assumption Objection ¶ 6.

*Approval of the Sale of Debtors' Assets*

30. On July 5, 2009, the Court approved the sale of substantially all of Debtors' assets to GM in the Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (Docket No. 2968) (the "**Sale Order**").

31. The Sale Procedures Order and the Sale Order authorized Debtors to assume and assign the contracts and leases listed on the Schedule that were subject to an outstanding objection, so long as that objection was limited to the amount needed to cure contract defaults under 11 U.S.C. § 365. Sale Procedures Order ¶ 10; Sale Order ¶¶ 22, 23. If, however, an objection other than a cure objection had been timely filed, the executory contract or lease would not be assumed and assigned until such objection was resolved by stipulation or the Court entered an order authorizing the assumption and assignment. Sale Procedures Order ¶ 10.

32. On July 10, 2009, the sale closed.

8

*Confirmation of the Assumption of the Purchase Order*

33.  Debtors and GM sent a letter to M-Tech on September 1, 2009, confirming that the Purchase Order had been assumed by Debtors and assigned to GM (the "**Confirmation Letter**"). The Confirmation Letter identifies the Purchase Order: The "Counterparty Name" is "M-Tec [sic] Associates", the "GM Contract ID" is "TCB02218", and the "Contract Type" is "Blanket Order". The Confirmation Letter did not identify the Lease as having been assumed. A copy of the Confirmation Letter is attached as **Exhibit 9**.

*GM's Use of the Property After the Sale Closing*

34.  After the sale closing, GM occupied the Property as a Limited Use Facility pursuant to Schedule C of the Transition Services Agreement between Debtors and GM (the "**TSA**").[4] A copy of Schedule C of the TSA is attached as **Exhibit 10**. The Property is specifically listed as a Limited Use Facility on Schedule C-3 of the TSA, Row 22. Schedule C of the TSA provides that "[d]uring the period [GM] occupies any portion of a Limited Use Facility, [GM] shall perform any and all obligations of [Debtors] under the terms and conditions of the applicable Limited Facility Lease".

35.  GM fulfilled its obligations under the TSA for the limited period of time it occupied the Property, including by paying rent and accrued property taxes.

---

[4] A Form of Transition Services Agreement was attached as Exhibit U to the Amended Master Sale and Purchase Agreement. The TSA, which is materially identical to the Form of Transition Services Agreement for all purposes relevant to the Rejection Motion, was executed on or about July 10, 2009.

9

*Rejection of the Lease*

36. On September 23, 2009, Debtors informed M-Tech that they were rejecting the Lease, abandoning any remaining equipment or supplies, and vacating the Property, effective as of October 31, 2009. Debtors have not had any active operations on, nor has any employee of Debtors or GM occupied, the Property since October 31, 2009.

## Procedural Background

37. On November 12, 2009, Debtors filed their Ninth Omnibus Motion Pursuant to 11 U.S.C § 365 to Reject Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property (Docket No. 4437) (the "**Rejection Motion**"). The Rejection Motion seeks, among other things, to reject the Lease effective as of October 31, 2009.

38. On June 15, 2009, M-Tech filed its Objection to Ninth Omnibus Motion Pursuant to 11 U.S.C § 365 to Reject Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property (Docket No. 6009) (the "**Objection**"). In its Objection, M-Tech argues that the Lease was previously assumed by Debtors and assigned to GM and is no longer subject to rejection.

39. Counsel for GM advised counsel for Debtors and M-Tech that GM, as an interested party under Section 1109(b) of the Bankruptcy Code, intended to file a brief in support of the Rejection Motion. Counsel for GM, Debtors, and M-Tech agreed that GM would have until July 6, 2010 to file such a brief.

10

**Argument**

A. *By the Express Terms of the Schedule, Only the Purchase Order could have been Assumed*

40. M-Tech's argument that GM inadvertently assumed the Lease must be rejected. The Schedule is abundantly clear that only the Purchase Order was designated for assumption, while the Lease was clearly designated for rejection. Further, the Purchase Order is clearly not the Lease. The Lease was not a "Blanket Order" and had no "GM Contract Id." The Purchase Order was terminable at will and provided that it expired on February 28, 2010, well before the Lease was scheduled to expire in January 2017 (if the early termination option was not exercised in January 2012). Quite simply, designating the Purchase Order for assumption cannot result in assumption of the Lease.

41. Moreover, GM did not take any of the actions required by Sale Procedures Order, the Sale Order, or the Master Purchase and Sale Agreement to assume and assign the Lease. The Lease was not identified in the Notice, nor was it ever noticed for assumption and assignment in accordance with the Assumption and Assignment Procedures. The Lease is not listed on M-Tech's Contract Website or the Schedule as an Assumable Executory Contract. Accordingly, the Lease was not assumed and assigned.

42. Additionally, the Lease could not be assumed by implication. *See, e.g., In re Tower Automotive, Inc.*, No. 05-10578, 2007 Bankr. LEXIS 2219, at *9 (Bankr. S.D.N.Y. June 29, 2007) ("It is not uncommon for litigants to assert that a debtor's postpetition acts constitute implied assumption of a contract. Courts have not favored this concept, as it would burden an estate with administrative claims that have never been brought to light and subjected to creditor scrutiny and judicial approval."); *In re A.C.E. Elevator Co., Inc.* 347 B.R. 473, 484 (Bankr. S.D.N.Y. 2006) ("Implied assumption has no place in the law of executory contracts [in

11

bankruptcy].") (citation omitted; insertion in original); *In re Enron Corp.*, 300 B.R. 201, 213 (Bankr. S.D.N.Y. 2003) ("[A] debtor cannot assume a contract by implication.").

43. Under Section 365(a) of the Bankruptcy Code, the assumption of an executory contract must be approved by the Court. The Lease was never noticed for assumption, and the Court never approved assumption of the Lease.

44. The Assumption and Assignment Procedures ensured that one of the single largest transfers of assets in U.S. history was properly recorded in a single authoritative record. Reviewing that record, it is clear that only the Purchase Order was designated for assumption and assignment. The Lease was never designated for assumption and was never assumed.

### B.   *If the Purchase Order was not an Executory Contract, Nothing was Assumed*

45. M-Tech argues that the Lease must have been assumed because the contract actually noticed for assumption—the Purchase Order—was not an executory contract. GM disagrees that the Purchase Order was not an executory contract. But even if it were not, the only logical implication is that nothing was assumed. As discussed above, the Lease itself was never designated or noticed for assumption and its assumption was never approved by the Court. There is no basis for arguing that the clear designation of the Purchase Order for assumption resulted in the assumption of the Lease, which was expressly designated for rejection.

46. Further, M-Tech's argument that the Purchase Order was not an executory contract ignores that, according to paragraph 12 of the Rider, the level of Services provided under the Lease was at Debtors' full discretion. By issuing the Purchase Order and monthly "release numbers," Debtors exercised their discretion and requested and agreed to pay for a certain level of Services, which M-Tech was thereby obligated to provide in accordance with the Purchase Order. Because performance remained due under the Purchase Order to some extent on both sides independent of the Lease, the Purchase Order was an executory contract capable of

12

assumption. *See COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 379 (2d Cir. 2008) (holding that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.") (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)).

C.  *By Virtue of M-Tech's Objections, Nothing was Assumed*

47.  Because M-Tech's Assumption Objection and Revised Assumption Objection were not limited to the Purchase Order cure amount, nothing was assumed. *See* Sale Procedures Order ¶ 10; Sale Order ¶¶ 22, 23. In addition to purporting to object to the cure amount for the Lease, which had not been noticed for assumption, M-Tech demanded adequate assurance of Debtors' performance under the Lease. Further, in its Objection to the Rejection Motion, M-Tech expressly argues what was previously implied in its objections: (i) the Purchase Order was not an executory contract, and (ii) the Purchase Order alone could not be assumed, the "whole contract" (i.e., the Lease) must also be assumed.

48.  M-Tech's Assumption Objection and Revised Assumption Objection fall within the categories of objections that were expressly preserved in the Sale Order:

> All Objections to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such Objections, are overruled on the merits other than a continuing Objection (each a "Limited Contract Objection") that does not contest or challenge the merits of the 363 Transaction and that is limited to (a) contesting a particular Cure Amount(s) (a "Cure Objection"), (b) **determining whether a particular Assumable Executory Contract is an executory contract that may be assumed and/or assigned under section 365 of the Bankruptcy Code**, and/or (c) **challenging, as to a particular Assumable Executory Contract, whether the Debtors have assumed, or are attempting to assume, such**

13

**contract in its entirety or whether the Debtors are seeking to assume only part of such contract**.

Sale Order ¶ 2 (emphasis added).

49.     Because M-Tech's objections were not limited to the Purchase Order cure amount, under the Assumption and Assignment Procedures, nothing was assumed. This is consistent with the design of the Sale Procedures Order, which expressly provided that executory contracts would not be assumed with substantive objections (i.e., objections to matters other than cure amounts) pending.

## Conclusion

The indisputable facts show that that Lease was never designated for assumption and never assumed. Indeed, the Lease was expressly designated for rejection.

**Accordingly**, GM respectfully requests that the Court (i) grant Debtors' motion to reject its Lease with M-Tech, and (ii) grant GM such other relief as the Court deems just and equitable.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for General Motors LLC

Dated: July 6, 2010            By:   /s/ Daniel W. Linna Jr.
                                     Robert B. Weiss (Michigan Bar No. P28249)
                                     Daniel W. Linna Jr. (Michigan Bar No. P68863)
                               2290 First National Building
                               660 Woodward Avenue
                               Detroit, MI  48226
                               Telephone:  (313) 465-7508
                               Facsimile:  (313) 465-7509
                               Email:  dlinna@honigman.com

DET.4253701.3

14