**EXHIBIT 1**

General Form (4416-4)
GM 235—Revised 6-72

ORIGINAL

**This Lease,** dated _____ August 28 _____ 19 86, between

M-TECH ASSOCIATES, a Michigan partnership, 28388 Franklin Road, Southfield, Michigan 48034

hereinafter called the Lessor, and GENERAL MOTORS CORPORATION, a Delaware corporation, with its principal office at 3044 West Grand Boulevard, Detroit, Michigan 48202 hereinafter called the Lessee,

**Witnesseth:**

**PREMISES**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

A free standing building comprising the total of a total of 29,460 square feet, including 4,520 square feet of office space and 24,940 of heavy manufacturing space and related facilities, all constructed in accordance with plans prepared by Argonaut on the approximately four (4) acre site on the East side of Mound Road North of 14 Mile Road in Sterling Heights, Michigan (33500 Mound Road). A site plan and a legal description of the Demised Premises is described on the attached Exhibit "A." The Plans, Specifications and Addendum No. 1 are described as Argonaut Job No. 6526.

**USE OF PREMISES**

SEE RIDER, CLAUSE 1

with the appurtenances, to be used for ~~an automobile showroom, service station, warehouse or garage, or for general automobile, tractor, implement, airplane or truck business, or accessories thereto, or any line of business allied to or connected with any of the foregoing, or any type of business conducted or controlled by General Motors Corporation, or any other lawful purpose not inconsistent with the character of the premises, for a term commencing~~ _____

and expiring _____

**TERM**

SEE RIDER, CLAUSE 2

**RENT**

SEE EXHIBIT "B" AND RIDER, CLAUSE 3
~~at the yearly rent of~~ _____

~~payable in installments of $ _____ in advance on the first business day of each and every month during the term.~~

The parties hereto covenant and agree with each other as follows:

FIRST: That the Lessee shall pay the rent at the times and in the manner aforesaid.

**REPAIRS**

SECOND: That the Lessee shall keep and not misuse the premises so that they may be returned to the Lessor in as good order and condition as when delivered to Lessee, excepting ordinary wear and tear, damage by fire, vandalism, the elements and casualty, and damage due to any cause or happening not occasioned by the negligence of the Lessee. The Lessor shall maintain, repair and replace as necessary the plumbing, heating, ventilating and air conditioning equipment, lighting and other electrical and mechanical equipment, sprinkler system, elevators, glass (unless broken or damaged due to the negligence of Lessee),* damage by vandals, and make all other repairs or replacements which the Lessee is not hereby required to make. The Lessor shall maintain (including painting as necessary), repair and replace as necessary, the exterior of the building including the roof, exterior walls, drains, eaves troughs, downspouts, gutters, and provide lateral support and make all structural repairs to the building. The Lessor shall also maintain, repair and replace as necessary, the improvements and the lands which are a part of and used in connection with the premises, including but not limited to ditches, drains, sewers, utility lines, driveways, sidewalks, parking areas, landscaping and fencing.**In the event the Lessor fails to make any repairs or replacements/which it is required to make hereunder within a reasonable time specified in a written notice by Lessee, then in that event the Lessee may make/such repairs or replacements*** ~~and deduct the cost and expense thereof from the rent reserved hereunder, or the Lessee may, at its option, cancel this Lease.~~ If by reason of emergency, repairs or replacements become necessary which by the terms hereof are the
SEE RIDER, CLAUSE 4

\* unless damaged by Lessee or its employees.
\*\* after 10 days prior written notice from Lessee to Lessor
\*\*\* Lessor shall reimburse Lessee for the reasonable costs thereof.

responsibility of ~~Lessor, Lessee may make such repairs or replacements which in the opinion of~~ are necessary for ~~reasonable~~ preservation of the premises or of the Lessor's property, and Lessor shall ~~at the option of the Lessee either~~ reimburse Lessee ~~for~~ or Lessee may deduct the cost and expense thereof from the rent reserved hereunder. Provided, however, that in such event Lessee agrees to make reasonable effort to inform Lessor before proceeding with such repairs or replacements.
* within 30 days after receipt of detailed billing from Lessee.

**EASEMENTS**
THIRD: That the enjoyment and use of all entrances, exits, approaches and means of entrance and approach, and of light and air now existing in favor of the premises shall not be interfered with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**
FOURTH: That the Lessee will not assign or sublet this Lease without the prior written consent of the Lessor, except such assignment be to a corporation then owned or controlled by GENERAL MOTORS CORPORATION. The Lessor agrees that such consent will not be unreasonably withheld.
SEE RIDER, CLAUSE 6

**NEGATIVE COVENANTS**
FIFTH: That the Lessee will not consent to any use of the premises which shall be contrary to any valid law of the State or to any valid ordinance or bylaw of the Municipality for the time being in force.

**COVENANTS BY LESSOR**
~~SIXTH: That the Lessor covenants and agrees that the possession of the premises will be delivered~~ to the Lessee upon the commencement of the term of this Lease in as good condition as the same now are, or as required to be altered pursuant to the provisions of Paragraph Twenty-Second, free from all tenancies and occupancies, and free from all orders, notices and violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices or violations be filed during the term of this Lease, the Lessor will comply therewith, or will cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein. In the event of Lessor's failure to comply with such orders, notices, or violations, or to cause such orders, notices or violations to be vacated within a reasonable time after written notice, Lessee may comply therewith and deduct the cost and expense of such compliance from the rent reserved hereunder, or Lessee may cancel this Lease.

The Lessor further covenants and agrees that at the commencement of the term the elevator or elevators, the boiler or boilers, air conditioning and heating equipment will all be in good mechanical, operating and insurable condition, acceptable to Lessee's insurance companies, and that the boiler or boilers, air conditioning and heating equipment will be of sufficient capacity to heat and cool the demised premises comfortably. If said equipment is not in the condition specified and Lessor fails to promptly place it in said condition, then Lessee may have the elevator or elevators, boiler or boilers and heating equipment put in the condition above provided and deduct the cost and expense thereof from any installment or installments of rent thereafter becoming due, or at Lessee's option, Lessee may cancel this Lease upon giving five (5) days' notice in the manner herein provided. In any event, the fact that the Lessee does not have said work done shall not render Lessee in any way liable nor relieve Lessor from any liability. ~~The acceptance of possession by Lessee shall not be deemed to be a waiver of any of the aforesaid covenants.~~
SEE RIDER, CLAUSE 5

**VIEWING PREMISES**
SEVENTH: That the Lessor and its agents may, during the term at reasonable times enter to view and inspect the premises and may at any time within ~~three (3)~~ twelve (12) months next before the expiration of the said term, show the said premises and building or buildings to others, and affix to any suitable part of the said premises a notice for letting or selling the premises, or building or buildings, and keep the same affixed without hindrance or molestation.

**FIRE CLAUSE**
~~EIGHTH: (a) That if the premises shall be so damaged by fire, the elements, casualty, war, insurrection, riot, public disorder, act authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it; (b) In case of only partial damage or destruction of the premises or of other portions of the building or buildings containing the premises, then said premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition and a just proportion of the rent herein reserved, according to the extent to which they have been rendered untenantable, shall abate until the said premises shall have been so restored and put in proper condition for use and occupancy, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. If Lessor shall for any reason fail to restore the premises or other portions of said building or buildings within a reasonable time, Lessee may cancel and terminate this Lease upon giving five (5) days' notice in the manner herein provided and be relieved of all liability hereunder arising subsequent to the aforesaid damage to the said premises or other portions of said building or buildings, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. The Lessor shall maintain fire and supplemental perils insurance coverage in an amount sufficient to comply with the aforementioned provisions of this clause;~~

**UNSAFE BUILDING CLAUSE**
~~(c) In the event that the building or buildings containing the premises shall become unsafe, said building or buildings shall be repaired and restored forthwith by the Lessor, and a just proportion of the rent hereinbefore reserved shall abate until said building or buildings shall have been put in safe and proper condition for use and occupancy, and any unearned rent paid in advance by the Lessee shall be refunded to it, and if the Lessor fails for any reason to restore the premises forthwith to safe and proper condition for use and occupancy, Lessee may at its option cancel this Lease upon giving five (5) days' notice in the manner herein provided; (d) If any authority having jurisdiction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.~~
SEE RIDER, CLAUSE 7

**UNLAWFUL OCCUPATION**
NINTH: That the Lessor represents that the premises may be used for the purposes for which they are hereby leased and in the event of the enactment or existence of any law, ordinance, rule, ruling, regulation, covenant or restriction prohibiting or limiting the use of said premises for any one or more of the purposes for which they are hereby leased, then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease ~~from and after the date such prohibition becomes effective, and any unearned rent paid in advance by the Lessee shall be refunded to it.~~

**RIGHTS UPON DEFAULT**
TENTH: That if the Lessee shall neglect or fail to perform or observe any of the non-monetary covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then and in any of said cases the Lessor may lawfully enter into ~~it~~ one hundred twenty (120) days after such prohibition becomes effective so long as Lessee can occupy the premises during said period, otherwise this Lease shall terminate and all liability hereunder shall cease.
~~and~~ or in case any rent or other monetary obligations of Lessee shall be due and remain

and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expell the Lessee and those claiming under and through it ~~and remove its effects, forcibly if necessary, without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid this Lease shall terminate and the Lessee covenants that in case of such termination it will indemnify the Lessor against all unavoidable loss of rent which the Lessor may incur by reason of such termination during the residue of the term above specified.~~

**TERMINATION**

**HOLD OVER**

SEE RIDER, CLAUSE 8
ELEVENTH: That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein specified and the term hereof shall expire on the date herein mentioned without notice being required from either party; (b) in the event that the Lessee, any assignee or sublessee, remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise upon all the same terms and conditions contained herein, including the monthly rental rate. insofar as the same are applicable to a month-to-month tenancy.

**QUIET POSSESSION**

TWELFTH: Lessor herein represents that it is the fee owner of the premises hereby leased and hereby covenants that Lessee, on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the premises for the term and for the uses aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not hereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**SERVICES BY LESSOR**

~~THIRTEENTH: That the Lessor shall for the rent reserved furnish electric current for all purposes~~ required by the Lessee, janitor service, including snow removal, water and elevator ~~service~~ during ordinary business hours, sufficient heat and air conditioning whenever necessary ~~to make~~ the premises comfortable for occupancy, window and glass partition washing at ~~regular~~ intervals, toilet facilities, and fluorescent tubes or electric bulbs for lamps for ~~lighting the~~ premises, and the Lessor shall renew all such lamps, fluorescent tubes or bulbs ~~when~~ necessary. Lessor covenants and agrees that the lighting fixtures in the office ~~portion of the~~ premises shall be of sufficient capacity at all times to produce not less than 100 foot ~~candles lighting at desk level.~~

SEE RIDER CLAUSE 12

**ALTERATIONS BY LESSEE**

FOURTEENTH: That with the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right at any time during the term or any extension thereof, at its own expense, to make alterations, changes, improvements and remodeling of the premises, provided the same shall be in conformity with the Building Laws of the Municipality, County and State, ~~and the Lessor~~ Lessee covenants and agrees upon demand at any time after the execution of this Lease to obtain and deliver to the ~~Lessee all~~ lessor permits, consents and other instruments which may be necessary or required by any public or quasi-public authority, permitting and authorizing such alterations, changes, improvements and remodeling. In case of said alterations, changes, improvements and remodeling, the Lessee shall ~~not~~ be required upon the termination of the Lease or any extension thereof to restore the premises to their original condition.
SEE RIDER, CLAUSE 4

**FIXTURES AND SO FORTH**

FIFTEENTH: That all movable partitions, fixtures, floor covering, or equipment installed in the premises at the Lessee's expense shall remain the property of the Lessee and may be removed by the Lessee. The Lessee shall, however, repair ~~any~~ damage caused ~~directly and exclusively~~ by said removal.
at its sole cost and expense.

**SIGNS AND SO FORTH**

SIXTEENTH: That the Lessee shall have the right to install or place signs or posters anywhere on or about the premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEMNATION**

~~SEVENTEENTH: That in the event the premises or any part thereof are taken or condemned by a~~ temporary or permanent public or quasi-public use so as to interfere with ~~Lessee's use,~~ Lessee may at its option terminate this Lease and, in such event, any ~~unearned~~ rent paid in advance shall be returned to Lessee, but nothing ~~herein contained shall~~ prevent Lessee from recovering any damages sustained by Lessee ~~due to such taking.~~

SEE RIDER, CLAUSE 10

**MORTGAGE SUBORDINATION**

At Lessor's option                              now existing or
EIGHTEENTH: ~~That~~ this Lease shall be subject and subordinate to the lien of any mortgage ~~hereto~~ after placed on the premises and Lessee agrees to execute and deliver upon demand, in confirmation of such subordination, such further instruments as shall be required by any mortgagees or proposed mortgagees. Provided, that if and when such mortgage or mortgages are placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the premises in the event of foreclosure, Lessee's quiet possession of the premises will not be disturbed on account of said mortgage or by reason of anything done thereunder so long as Lessee pays the rent and is not in default under the other covenants on its part to be performed. Lessor agrees that in the event a mortgage is placed on the premises and a collateral assignment is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

**WAIVER OF SUBROGATION**

NINETEENTH: The Lessor and the Lessee waive all rights, each against the other, and against those holding under or through the Lessor and Lessee, for damages caused by fire or other perils covered by insurance where such damages are sustained in connection with the occupancy of the leased premises.

**NOTICES**  **TWENTIETH**: at all notices to be given hereunder ~~sh~~ be in writing and given by personal delivery to the Lessor ~~or~~ to one of the executive officers of the Le~~sse~~e or shall be sent by ~~telegram~~ or mailgram for by ~~or certified~~ registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government or, in the case of a telegram/mailgram when given to an employe of the telegraph company for transmission. Provided, however, that it is mutually agreed that the Lessee appoints the President, the Executive Vice Presidents ~~and~~ the Vice President in Charge of Real Estate, *~~General Motors Corporation, and the~~ Executive in Charge of Real Estate, the Manager and the Director, Real Estate Department of Argonaut Realty Division~~, General Motors Corporation, Argonaut Building, 485 West Milwaukee Avenue, Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor.

\* Director, GM Facilities, and the Director of Real Estate,

**EXTENSION** ~~TWENTY-FIRST: That the Lessee may at its option extend the term of this Lease for~~ further period(s) of ............................................. upon all the same terms and conditions contained herein, or as hereafter ~~amended, by giving~~ Lessor written notice.................

SEE RIDER, CLAUSE 11

**ALTERATIONS BY LESSOR**  ~~TWENTY-SECOND: That the Lessor, at the Lessor's own expense, shall make the alterations,~~ changes and improvements, according to the plan annexed hereto and made a part hereof, ~~and~~ shall fully complete the same, in a good workmanlike manner and shall have the ~~premises ready~~ for lawful occupancy by the Lessee in the condition herein provided on or ~~before~~...........................19.......... In the event said work is not completed as above provided, ~~the Lessee~~ may, at its option, (a) enter and complete said work and deduct the cost and ~~expense thereof~~ from the rent reserved hereunder, or (b) cancel this Lease. In no event, however, ~~shall~~ rent accrue until the above alterations, changes and improvements have been ~~completed and the premises have been made ready for lawful occupancy by the Lessee as herein provided.~~

**CANCELLATION**  ~~TWENTY-THIRD: That the Lessee may cancel this Lease effective~~................................. ~~or at any time thereafter by giving Lessor~~................................. ~~days' written notice prior to such cancellation.~~

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

*In Witness Whereof,* Lessor has signed and sealed this instrument this ___29___ day of ___April___ A.D. 19_86_ and Lessee has signed and sealed this instrument this ___5th___ day of ___September___ A.D. 19_86_.

WITNESSES:

___T. A. Solly___

___Jennie C. Healy___

LESSOR: M-TECH ASSOCIATES, a Michigan partnership

BY ___[signature]___
   ___Elton L. Yacon, Gen'l Partner___

LESSEE: GENERAL MOTORS CORPORATION

BY ___C. J. Brady___
              Vice President

ATTEST ___[signature] R. Rojas___
                 Assistant Secretary

STATE OF MICHIGAN   )
                    ) ss:
COUNTY OF OAKLAND   )

The foregoing instrument was acknowledged before me this ___day of _____, 1986, by _____, _____, of M-Tech Associates, a Michigan partnership on behalf of said partnership.

_____
Notary Public
_____ County, Michigan
My Commission Expires: _____

STATE OF MICHIGAN   )
                    ) ss:
COUNTY OF _Wayne_   )

The foregoing instrument was acknowledged before this _5th_ day of _September_, 1986 by _C. J. Brady_, _Vice President_, of General Motors Corporation, a Delaware corporation, on behalf of said Corporation.

_____
Notary Public
_____ County, Michigan
My Commission Expires: _____

W. ESTER WILSON
Notary Public, Wayne County, MI
My Commission Expires Feb. 25, 1987

RIDER ATTACHED TO ... MADE A PART OF LEASE AGREEMEN. ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

1.  USE OF PREMISES: ... office, heavy manufacturing, research, development,
die machining, tooling and related uses only and for no other purpose without
the written consent of Landlord, which consent shall not be unreasonably
withheld. Lessee agrees that it will not use or permit any person to use the
Demised Premises or any part thereof for any use or purposes in violation of
the laws of the United States, the State of Michigan, the ordinances or other
regulations of the City of Sterling Heights, Michigan, or of any other lawful
authority.

2.  TERM:   For a term of ten (10) years commencing upon the earlier of the
time of Lessee's beneficial occupancy on issuance of temporary Certificate of
Occupancy, anticipated to occur between April and July, 1987; if it occurs
between September 1, 1987 and December 31, 1987, Lessee will occupy the space
rent free, not including utilities, for a period equal to the time period
later than September 1, 1987. After December 31, 1987, Lessee may at its
option cancel this Lease. The foregoing dates will be extended for such
periods as performance by Lessor is frustrated due to strikes, war, acts of
God, fire or other casualty or happening, governmental restrictions, or any
similar contingencies beyond the reasonable control of Lessor.

3.  RENT:    (A) Any rent unpaid for more than ten (10) days after such rent is
due (after the execution of this written lease by the parties) and any rent
received and accepted more than ten (10) days after such rent is due (after
the execution of this written lease by the parties) shall be subject to a late
charge in an amount equal to the interest rate set forth in Clause 2(B),
below, and such late charges shall be due from Lessee to Lessor as additional
rent on or before the next rental due date. Any default in the payment of
rent shall not be considered cured unless and until such late charges are paid
by Lessee to Lessor. On default of payment of such late charges, Lessor shall
have the same remedies as on default in payment of rent. Such late charges
shall be in addition to any other rights or remedies Lessor may have as
provided by this Lease or as allowed by law.

        (B) If any rent, any late charges, or any other sums payable by
Lessee to Lessor under this lease are not paid within thirty (30) days after
such rent, late charges or other sums are due (after the execution of this
written lease by the parties), such rent, late charges or other sums shall
bear interest at the rate of four percentage points above the effective prime
interest rate per annum charged by National Bank of Detroit to its best
commercial customers; provided, however, that such rate of interest shall
never be less than eleven (11%) percent per annum. Such interest shall be due
from Lessee to Lessor as additional rent on or before the next rental due date
and shall accrue from the date that such rent, late charges or other sums are
payable under the terms of this lease. Such interest for rent, late charges
and other sums shall continue to accrue through the date such rent, late
charges or other sums are paid by lessee. Any default in the payment of rent,
late charges or other sums shall not be considered cured unless and until such
interest is paid by Lessee to Lessor. On default of payment of such interest,
Lessor shall have the same remedies as on default in payment of rent. Such
interest shall be in addition to any other rights or remedies Lessor may have
as provided by this Lease or as allowed by law.

        (C) All rentals to be paid pursuant to this Lease shall be fully
paid without any deduction or set-off whatsoever.

4.  ALTERATIONS BY LESSEE: Notwithstanding any other provision of the Lease,
from and after the Lessee has taken occupancy of the Demised Premises any
additions or alterations to the building or any of its systems (e.g., plumb-
ing, electrical, mechanical), structural or nonstructural, which are required
by any law, statute, ordinance, rule, regulation or governmental authority or
insurance carrier, including, without limitation, OSHA, as the direct result
of use or uses made of the Demised Premises by Lessee shall be the obligation
of the Lessee.

RIDER ATTACHED TO   MADE A PART OF LEASE AGREEMEN  ATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

5. DELIVERY OF POSSESSION:

(A) That the Lessor covenants and agrees that the possession of the premises will be delivered to the Lessee upon the commencement of the term of this Lease in as good condition as required to be built hereunder, free from all tenancies and occupancies, and free from all violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority, and free from any existing condition which might be the basis for any future complaints or violations. Lessor agrees that it will transmit copies of such notices or violations to Lessee forthwith upon Lessor's receipt thereof.

(B) Within ten (10) days after delivery of possession Lessee will furnish Lessor with a written statement of any deficiencies in the premises and after they are corrected to Lessee's satisfaction, Lessee will promptly furnish a written statement that Lessee has examined the premises, and knows the condition thereof, and that no representations as to the condition or the state of repairs thereof have been made by Lessor or Lessor's agents which are not expressly therein contained and Lessee thereby accepts the Demised Premises in their condition at that time.

6. ASSIGNMENT: Notwithstanding anything contained in Paragraph Fourth of the Lease, Lessee's rights thereunder shall be effective only if Lessee is not in default under the terms and conditions of this Lease, and further, the assignee or sublessee shall execute an instrument in writing assuming all of the obligations and liabilities of this Lease and further provided that such assignment or subletting shall not operate to release Lessee of its obligations under this Lease.

7. DAMAGE BY FIRE OR OTHER CASUALTIES AND INSURANCE:

(A) That if the premises shall be so damaged by fire, the elements, ~~~~~~~~~~ty, war, insurrection, riot, public disorder, act, authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it. In case of only partial damage or destruction of the premises or of other portions of the building or building containing the premises, then said premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition, but the rent herein reserved shall not abate while the said premises are being so restored and put in proper condition for use and occupancy. T~~~~~~~~~~~~~~~~~~~~~~~~~~~ sup~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ th~~~~~rementioned provisions of this clause. If any authority having ju~~~~iction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.

(B) At and after the commencement of the original term of this Lease, Lessee agrees to defend, indemnify and save Lessor harmless from any liability for damages and any costs and reasonable attorney fees of Lessor, to any person or property which occurs on the Premises from any cause whatsoever, except for liabilities and damages caused by Lessor's neg~~~~~~~~~~~~~~~~~~~~~~~~~~. L~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ general public liability insurance, including blanket contractual coverage against claims for or arising out of personal injury, death or property damage, occurring in, on or about the Premises or property in, on, or about the streets, sidewalks or premises adjacent to the Premises, such insurance to afford protection to the limit at the beginning of the term of not less than One Million ($1,000,000) Dollars with respect to injury or death of a single person, and to the limit of not less than Two Million ($2,000,000) Dollars

- 2 -

RIDER ATTACHED TO AND MADE A PART OF LEASE AGREEMENT DATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

with respect to any one occurrence and to the limit of not less than Two Hundred Fifty Thousand ($250,000) Dollars with respect to any one occurrence of property damage and thereafter in such changed amounts as Lessor may reasonably require. Lessee agrees to submit evidence to Lessor of such property and liability insurance coverage periodically upon Lessor's request to indicate continuous insurance coverage, and to have Lessor added as an additional Insured.

8. RIGHTS UPON DEFAULT: Lessor, in addition to other rights or remedies it may have, shall have the immediate right to reentry and may remove all persons and property from the Demised Premises; such property may be removed and stored in any other place for the account of and at the risk of Lessee. Lessee hereby waives all claims for damages which may be caused by the reentry of Lessor and taking possession of the premises or moving or storing of furniture, trade fixtures, and all other property of Lessor, and will save Lessor harmless from any loss, costs or damages occasioned Lessor thereby, and no such reentry shall be considered or construed to be a forceable entry.

Should Lessor elect to reenter as herein provided for or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may either terminate this Lease or it may from time to time, without terminating this Lease, relet the premises or any part thereof for such term or terms and at such rental or rentals and upon such other terms and conditions as Lessor in its sole discretion may deem advisable, with the right to make alterations and repairs to the premises. Rentals received by Lessor from such reletting shall be applied as follows:

First, to the payment of any indebtedness, other than rent due hereunder from Lessee to Lessor, including all damages sustained by Lessor as a result of the default of Lessee;

Second, to the payment of rent due and unpaid hereunder;

Third, to the payment of all costs, expenses and charges of every kind and nature owing Lessee, exclusive of rent, pursuant to the provisions of this Lease;

Fourth, to the payment of any costs of such reletting;

Fifth, to the payment of the costs of any alterations or repairs to the premises;

and the residue, if any, shall be held by Lessor and applied in payment of future rent as the same may become due and payable hereunder. Should such rentals received from such reletting during any month be less than that amount agreed to be paid that month by Lessee hereunder, the Lessee shall pay such deficiency to Lessor. Such deficiency shall be calculated and paid monthly.

No such reentry or taking possession of the premises by Lessor shall be construed as an election on its part to terminate this Lease unless a written notice of such intention be given to Lessee or unless the termination thereof be decreed by a Court of competent jurisdiction. Notwithstanding any such reletting without termination, Lessor may at any time thereafter elect to terminate this Lease for such previous breach. Should Lessor at any time terminate this Lease for any breach, in addition to any other remedy, it may recover from Lessee all damages it may incur by reason of such breach, including the cost of recovering the premises, and including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the stated term, over the then reasonable rental value of the premises for the remainder of the stated term.

9. TAXES, ASSESSMENTS AND UTILITIES:

(A) Lessee agrees to pay as additional rent for the Demised

- 3 -

RIDER ATTACHED TO ) MADE A PART OF LEASE AGREEMENT DATED AUGUST 28, 1986
BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR
PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

Premises all taxes and assessments ("assessments" as used herein shall be defined as improvements and betterments which generally benefit a portion of the neighborhood in which the Demised Premises is located), general and special, and all water rates, and all other governmental impositions which may be levied upon said premises or any part thereof, or upon any building or improvements at any time situated thereon, until the termination of the original term and of any extended terms of this Lease. All of such taxes, assessments, water rates, and other impositions shall be paid by Lessee before they shall become delinquent and Lessee shall send copies of all paid tax bills to Lessor forthwith after payment. The property taxes for the first and last year of the original term or any extended term, as the case may be, shall be prorated between Lessor and Lessee so that Lessee shall be responsible for any such tax attributable to the period during which Lessee has possession of the premises in the year in which this Lease is terminated. The so-called "due date" method of proration shall be used, it being presumed that taxes are payable in advance. In the event that during the term of this Lease (i) the real property taxes levied or assessed against the real property shall be reduced or eliminated, whether the cause thereof is a judicial determination of unconstitutionality, a change in the nature of the taxes imposed, or otherwise, and (ii) there is levied, assessed or otherwise imposed upon the Lessor, in substitution for all or part of the tax thus reduced or eliminated, a tax (hereinafter called the "Substitute Tax") which imposes a burden upon Lessor by reason of its ownership of the real property, then to the extent of such burden the Substitute Tax shall be deemed a real estate tax for purposes of this paragraph. Notwithstanding the foregoing, in the event any assessments are imposed against the demised premises during the term of this Lease, Lessee shall be responsible to pay only such installments of such special assessments that shall become due and payable during the term of this Lease or during any extended term of this Lease.

(B) Lessee also agrees to pay all charges made against the premises for gas, heat, electricity and all other utilities furnished to the Demised Premises during the continuance of this Lease as the same shall become due.

10. CONDEMNATION: If the whole or any substantial part (including a substantial part which materially interferes with the Lessee's continued use and enjoyment of the Demised Premises) of the Demised Premises hereby leased shall be taken by any public authority under the power of eminent domain, then the term of this Lease shall cease from the day the possession shall be required for any public purpose, and the rent shall be paid up to that day. All damages awarded for such taking shall belong to and be the property of the Lessor, whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the Demised Premises herein leased; provided, however, that the lessor shall not be entitled to any portion of the award made to the Lessee for removal and reinstallation of Lessee's fixtures or for the cost of Lessee's immovable fixtures.

11. OPTION FOR EXTENSION OF LEASE TERM: Provided that Lessee shall not be in default in the terms and conditions of this Lease at the time of exercise, Lessor hereby grants to Lessee the right and option to extend the Lease for one (1) additional period of five (5) years. Lessee shall notify Lessor in writing whether or not it will extend this Lease for such renewal period at least three hundred (300) days prior to the commencement of the renewal period.

Notice of Lessee's intentions shall be deemed sufficient if given in the manner hereinbefore provided for notices. The five (5) year renewal period (hereinafter defined as the "Option Term") shall be upon the same terms, covenants and conditions as are contained in the Lease except that the yearly net rental for such renewal period shall be in accordance with Exhibit "B" and shall be paid monthly.

12. SERVICES BY LESSOR AND REPAIRS: The Lessor shall, for the rent and as provided in this section, provide for all services required by Lessee as

- 4 -

RIDER ATTACHED TO A. MADE A PART OF LEASE AGREEMENT  TED AUGUST 28, 1986 BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

outlined herein, including any maintenance, repairs or replacement specified in Paragraph Second of the Lease, janitor services, snow removal during ordinary business hours, periodic window and glass partition washing, cleaning of toilet facilities, landscape maintenance as required, and trash removal. All such services will be provided for a Twelve Thousand Dollar ($12,000.00) per year allowance, as additional rent, to be paid at the rate of One Thousand Dollars ($1,000.00) per month in addition to the monthly rents provided in Exhibit "B," except that the cost to Lessor of maintaining, repairing and replacing the exterior walls and roof of the building shall be Lessor's sole responsibility for the rent reserved and not part of the $12,000.00 allowance.

Lessee will agree to reimburse Lessor for any costs which exceed the Twelve Thousand Dollar ($12,000.00) annual allowance. In addition, Lessee will reimburse the Lessor for the entire cost of any real estate taxes and insurance paid by the Lessor. The Lessor will manage the building during the term of the Lease for a fee of Ten Percent (10%) of the yearly operating costs exclusive of real estate taxes, utility and insurance charges paid by the Lessor. It is expressively agreed that the level of services provided hereunder will be at the full discretion of the Lessee. In addition, if during the term of the Lease the Lessee is dissatisfied with the services provided hereunder by the Lessor, the Lessee may direct the Lessor as to who will provide the services on behalf of the Lessor.

13. EARLY OCCUPANCY BY LESSEE: In the event Lessee desires to enter upon the Demised Premises prior to commencement of the Lease Term for purposes of fixturing or installation of furnishings and equipment (not including such entry for purposes of storage of crated or boxed fixtures, furnishings and equipment preliminary to such fixturing or installation), Lessee shall do so only upon the following conditions:

(A) The Lease Term shall be deemed to have commenced upon the date that Lessee so enters upon the Demised Premises.

(B) Lessee agrees that it shall not interfere with the work of Lessor, its general contractor, subcontractors, agents or representatives in completing any items of construction in, on or about the Demised Premises.

14. LIENS: After the commencement of the term of this Lease, the Lessee will keep the premises free of liens of any sort and will hold the Lessor harmless from any liens which may be placed upon the premises except those attributable to the acts of the Lessor.

15. PERFORMANCE BY LESSOR OF THE COVENANTS OF LESSEE: Should Lessee at any time fail to do any of the things required to be done by it under the provisions of the Lease, Lessor at its option, and in addition to any and all other rights and remedies of Lessor in such event, may (but shall not be required to) do the same or cause the same to be done, and the reasonable amount of any money expended by Lessor in connection therewith shall be due from Lessee to Lessor as additional rent on or before the next rental due date bearing interest at the rate set forth in Clause 2(B) above from the date of payment by Lessor until the repayment to Lessor by Lessee. On default in such payment, Lessor shall have the same remedies as on default in payment of rent. Lessor shall not make any such expenditures without giving prior written notice thereof to Lessee.

16. MISCELLANEOUS:

(A) Each and every of the rights, remedies and benefits provided by this Lease shall be cumulative and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

(B) One or more waivers of any covenant or condition by Lessor

- 5 -

RIDER ATTACHED TO AND MADE A PART OF LEASE AGREEMENT DATED AUGUST 28, 1986 BETWEEN M-TECH ASSOCIATES, LESSOR, AND GENERAL MOTORS CORPORATION, FOR PREMISES TO BE KNOWN AS 33500 MOUND ROAD, STERLING HEIGHTS, MICHIGAN

shall not be construed as a waiver of a further or subsequent breach of the same covenant or condition, and the consent or approval by Lessor to or of any act by Lessee requiring Lessor's (or Lessee's as the case may be ) consent or approval shall not be deemed to waive or render unnecessary Lessor's consent or approval to or of any subsequent similar act by Lessee. The foregoing Sub-Paragraph (B) shall be equally applicable to Waivers, etc., by Lessee.

(C) This Lease shall be construed and enforced in accordance with the laws of the State of Michigan.

(D) If any term or provision of this Lease shall to any extent be held invalid or unenforceable, the remaining terms and provisions shall not be affected thereby but each term and provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

(E) The captions of this Lease are for convenience only and are not to be construed as part of this Lease and shall not be construed as defining or limiting in any way the scope or intent of the provisions hereof.

(F) Whenever herein the singular is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.

(G) This Lease contains the entire agreement between the parties hereto and previous negotiations leading thereto and it may be modified only by an agreement in writing signed by Lessor and Lessee. Lessor and Lessee hereby expressly declare that no representations have been made other than those expressly set forth herein.

17. In the event that any of the terms and conditions of this Rider shall conflict with any terms or provisions of the lease to which this Rider is attached, then, this Rider shall be deemed to supercede the terms and provisions of the printed Lease.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Rider on the day and year first above written.

WITNESSES:                          LESSOR:
                                    M-TECH ASSOCIATES, a Michigan Partnership
_____             BY _____
                                    ITS _____


WITNESSES:                          LESSEE:
                                    GENERAL MOTORS CORPORATION
_____             BY _____
_____             ITS _____

                                    BY _____

- 6 -

EXHIBIT "A"
LEGAL DESCRIPTION

T. 2 N., R. 12 E., SEC. 33, COMMENCING AT A POINT 1,067.72 FEET N.0°30'E. FROM THE S.W. CORNER OF SAID SEC. 33; THENCE N.0°30'E. 247.66 FEET ALONG SAID SEC. LINE; THENCE N.89°26'15"E. 794.94 FEET; THENCE S.00°25'00"W. 261.23 FEET; THENCE N.89°35'W. 795.20 FEET TO POINT OF BEGINNING, EXCLUDING THE R.O.W. HERETOFORE CONVEYED FOR THE WIDENING OF MOUND RD., THE NET ACREAGE BEING 4.06 ACRES.

8419-6
4-8-86
Revised 5-8-86

## RENT SCHEDULE
For Office/Industrial Facility
29,640 Square Feet
33500 Mound Road, Sterling Heights, Michigan

| Period | Annual Rent | Payment Arrangement | |
|---|---|---|---|
| First 12 Months | $ 391,200 | 6-7-87 $ 195,600 / 5-7-87 | Semi-annually (1) |
| Second 12 Months | 400,200 | 33,350 | Per Month |
| Third 12 Months 1989 | 409,200 | 34,100 | Per Month |
| Fourth 12 Months 1990 | 418,800 | 34,900 | Per Month |
| Fifth 12 Months 1991 | 428,400 | 35,700 | Per Month |
| Sixth 12 Months 1992 | 438,000 | 36,500 | Per Month |
| Seventh 12 Months 1993 | 448,200 | 37,350 | Per Month |
| Eighth 12 Months 1994 | 458,400 | 38,200 | Per Month |
| Ninth 12 Months 1995 | 469,200 | 39,100 | Per Month |
| Tenth 12 Months 1996 | 480,000 | 40,000 | Per Month |

If Lessee does not exercise their option to extend the Lease for years eleven through fifteen, Lessee will pay Lessor the sum of $1,500,000. That sum is to compensate Lessor for unamortized cost of extraordinary improvements.
If Lessee exercises their option to extend the Lease for years eleven through fifteen, the annual rents will be as follows:

| Period | Annual Rent | Payment Arrangement | |
|---|---|---|---|
| Eleventh 12 Months | $ 495,600 | $ 41,300 | Per Month |
| Twelth 12 Months | 511,200 | 42,600 | Per Month |
| Thirteenth 12 Months | 526,800 | 43,900 | Per Month |
| Fourteenth 12 Months | 543,600 | 45,300 | Per Month |
| Fifteenth 12 Months | 560,400 | 46,700 | Per Month |

If Lessee does not extend the Lease after the Fifteenth year, the Lessee will pay Lessor the sum of $1,400,000. That sum is to compensate Lessor for unamortized cost of extraordinary improvements.

(1) To be paid at the end of the sixth month and twelfth month for preceding six-month period. Subsequent rent to be paid at beginning of each month.