Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :        09-50026 (REG)
     f/k/a General Motors Corp., et al.  :
                                    :
                    Debtors.        :        (Jointly Administered)
                                    :
------------------------------------------------------------x
```

**DEBTORS' COMBINED (1) REPLY TO RESPONSE TO DEBTORS'
(i) OBJECTION TO PROOFS OF CLAIM NOS. 1206, 7587, AND 10162
AND, IN THE ALTERNATIVE, (ii) MOTION TO ESTIMATE PROOFS OF
CLAIM NOS. 1206, 7587, AND 10162 AND (2) RESPONSE TO
CROSS-MOTION UNDER RULE 9014 FOR RULE 7023 CLASS TREATMENT**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................... 1

The Cross-Motion Should Be Denied as Untimely ................................................................ 3

Debtors' Reply in Support of Their Objection to Disallow the Apartheid-Related Putative Class
Claims .................................................................................................................................. 6

I.      The Apartheid-Related Putative Class Claims Should Be Disallowed Because
        Adequate Notice of the Chapter 11 Cases and the Bar Date Was Provided to All
        Members of the Putative Classes ...................................................................................... 6

II.     If the Court Disallows the Apartheid-Related Putative Class Claims, No
        Additional Notice of the Bar Date Is Necessary ............................................................ 10

III.    The Apartheid-Related Putative Class Claims Should Be Disallowed Because
        They Were Not Certified Prior to the Commencement Date........................................... 12

IV.     The Apartheid-Related Putative Class Claims Should Be Disallowed Because
        They Cannot Satisfy the Requirements of Rule 23......................................................... 15

        A.      Numerous Individual Issues Predominate Over Common Questions.................. 15

        B.      Despite the Plaintiffs' Change in the Putative Class Definitions, the
                Members of the Putative Classes Remain Unidentifiable................................... 21

        C.      Neither "Commonality" Nor "Typicality" Can Be Established by the
                Plaintiffs ........................................................................................................... 22

Conclusion and Requested Relief .............................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Agent Orange Prods. Liab. Litig.*,
    818 F.2d 145 (2d Cir.), *cert. denied*, 484 U.S. 1004 (1988)......................................20, 21

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ...................................................................................23

*In re Am. Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988) ..............................................................................11, 13, 14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................................15, 17

*In re Amdura Corp.*,
    170 B.R. 445 (D. Colo. 1994) ........................................................................................11

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).........................6, 8

*Barnett v. Bowen*,
    794 F.2d 17 (2d Cir. 1986)..............................................................................................22

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .........................................................................................15

*Cape Henry Bird Club v. Laird*,
    359 F. Supp. 404 (W.D. Va.), *aff'd*, 484 F.2d 453 (4th Cir. 1973) ..................................10

*Castleman v. Liquidating Tr.*,
    No. 6:06-CV-1077 (LEK), 2007 WL 2492792
    (N.D.N.Y. Aug. 28, 2007) .............................................................................................8, 12

*In re Charter Co.*,
    125 B.R. 650 (M.D. Fla. 1991) .......................................................................................9

*In re Charter Co.*,
    876 F.2d 866 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990)...............................4

*Cimino v. Raymark Indus., Inc.*,
    151 F.3d 297 (5th Cir. 1998) .........................................................................................16

## TABLE OF AUTHORITIES
### (continued)

Page

*In re CommonPoint Mortg. Co.*,
  283 B.R. 469 (Bankr. W.D. Mich. 2002) ...........................................................................13

*In re Computer Learning Ctrs, Inc.*,
  344 B.R. 79 (Bankr. E.D. Va. 2006) ...................................................................................3

*DePippo v. Kmart Corp.*,
  335 B.R. 290 (S.D.N.Y. 2005) ............................................................................................9

*Does I v. The Gap, Inc.*,
  No. CV-01-0031, 2002 WL 1000073 (D. N. Mar. I. May 10, 2002) ...................15, 19, 20

*Does I v. Karadzic*,
  176 F.R.D. 458 (S.D.N.Y. 1997). .....................................................................................15

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ...............................23

*Dukes v. Walmart, Inc.*,
  509 F.3d 1168 (9th Cir. 2007) ..........................................................................................22

*In re Ephedra Prods. Liab. Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005).................................................................................................4

*In re Fibreboard Corp.*,
  893 F.2d 706 (5th Cir. 1990) ............................................................................................16

*In re First Alliance Mortgage Co.*,
  269 B.R. 428 (C.D. Cal. 2001) ....................................................................................14, 16

*In re First Interregional Equity Corp.*
  227 B.R. 358 (Bankr. D.N.J. 1998) ..................................................................................14

*Gortat v. Capala Bros., Inc.*,
  No. 07-CV-3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ........................................22

*Hilao v. Estate of Ferdinand Marcos*,
  103 F.3d 767 (9th Cir. 1996) ................................................................................ 3, 15-19

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) *reh'g and suggestion for reh'd en banc denied*,
  167 F.3d 542 (11th Cir. 1998) ..........................................................................................15

# TABLE OF AUTHORITIES
### (continued)

Page

*In re Jamesway Corp.*,
  No. 95-44821, 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ...............................6, 8

*James v. City of Dallas, Tex.*,
  254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002)....................................23

*Kiobel v. Royal Dutch Petroleum Co.*,
  No. O2 Cir. 7618, 2004 WL 5719589 (S.D.N.Y. Mar. 31, 2004) ..............................18, 22

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005)...............................15

*Kpadeh v. Emmanuel*,
  261 F.R.D. 687 (S.D. Fla. 2009) .................................................................................16, 18

*Krueger v. N.Y. Tel. Co.*,
  163 F.R.D. 433 (S.D.N.Y. 1995) ........................................................................................23

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)................................................................................................22

*Mateo v. M/S Kiso*,
  805 F. Supp. 761 (N.D. Cal. 1991) .....................................................................................10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)...................................................................................................2, 7, 9

*In re Musicland Holding Corp.*,
  362 B.R. 644 (Bankr. S.D.N.Y. 2007)................................................................3, 4, 13, 14

*O'Sullivan v. Countrywide Home Loans, Inc.*,
  319 F.3d 732 (5th Cir. 2003), *reh'g and reh'g en banc denied*,
  64 Fed. Appx. 419 (5th Cir. 2003)......................................................................................15

*Ortiz v. Fireboard Corp.*,
  527 U.S. 815 (1999).............................................................................................................14

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  226 F.R.D. 456 (S.D.N.Y. 2005) ..........................................................3, 16-18, 20, 21, 23

*Reliable Elec. Co., Inc. v. Olson Constr. Co.*,
  726 F.2d 620 (10th Cir. 1984) ..............................................................................................6

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Retirement Builders, Inc.*,
    96 B.R. 390 (Bankr. S.D. Fla. 1988)................................................................14

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000), *cert. denied*, 532 U.S. 919 (2001)..................15

*In re Sacred Heart Hosp. of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ............................................................6, 12

*Spinner v. City of, N.Y.*,
    No. 01-2715, 2003 WL 23648356 (E.D.N.Y. Oct. 10, 2003)...........................22

*In re Spring Ford Industries, Inc.*
    No. 02-15015DWS, 2004 WL 231010 (Bankr. E.D. Pa. Jan. 20, 2004) ......................4, 5

*Steering Comm. v. Exxon Mobil Corp.*,
    461 F.3d 598 (5th Cir. 2006) ........................................................................15

*In re Thomson McKinnon Secs Inc.*,
    133 B.R. 39 (Bankr. S.D.N.Y. 1991), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992)....................4, 5

*In re Tronox Inc.*,
    No. 09-10156, 2010 WL 1849394 (Bankr. S.D.N.Y. May 6, 2010) ............................5, 13

*In re United Cos. Fin. Corp.*,
    276 B.R. 368 (Bankr. D. Del. 2002) ................................................................4

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*,
    820 F.2d 1359 (4th Cir. 1987) ........................................................................7

*In re W. Coast Video Entrps., Inc.*,
    174 B.R. 906 (Bankr. E.D. Pa. 1994) ..............................................................9

*In re Waterman S.S. Corp.*,
    157 B.R. 220 (S.D.N.Y. 1993)................................................................6, 8, 12

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989)......................8

*In re XO Commcn's, Inc.*,
    301 B.R. 782 (Bankr. S.D.N.Y. 2003), *aff'd*, No. 04 CIV. 01489 LAK,
    2004 WL 2414815 (S.D.N.Y. June 14, 2004) ..................................................9

## TABLE OF AUTHORITIES
### (continued)

Page

### <u>STATUTES/RULES</u>

Fed. R. Bankr. P. 7023.................................................................................................................4

Fed. R. Civ. P. 23.........................................................................................................................4

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), file this combined (i)

reply (the "**Reply**") to the response  (the "**Response**") interposed to their objection (the

"**Objection**"), dated May 21, 2010, for an order disallowing and expunging Proofs of Claim Nos.

1206 and 7587 filed by Tozamile Botha, William Daniel Peters, Msitheli Wellington Nonyukela,

Mantoa Dorothy Molefi, Nothini Betty Dyonashe, Nonkululeko Sylvia Ngcaka, Mirriam

Mzamo, Mncekeleli Henyn Simangentloko, and Hans Langford Phiri (the "**Botha Plaintiffs**")

and Proof of Claim No. 10162, filed by Sakwe Balintulo, Dennis Vincent Frederick Brutus,

Mark Fransch, Elsie Gishi, Lesiba Kekana, Archington Madondo, Mpho Alfred Masemola,

Michael Mbele, Mamosadi Catherine Mlangeni, Reuben Mphela, Thulani Nunu, Thandiwe

Shezi, and Thobile Sikani (the "**Balintulo Plaintiffs**," and with the Botha Plaintiffs, the

"**Plaintiffs**"), and (ii) response to the Plaintiffs' Cross-Motion under Rule 9014 for Rule 7023

Class Treatment (the "**Cross-Motion**") and respectfully represent:

## **Preliminary Statement**

1.    In their Response, Plaintiffs provide no viable grounds – and cite no

applicable authority – to defeat the Debtors' request that this Court exercise its discretion to

disallow and expunge the Apartheid-Related Putative Class Claims.[1]  Plaintiffs' arguments in

support of the allowance of the Apartheid-Related Putative Class Claims are defective in three

main respects.[2]

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Objection.

[2] Plaintiffs' arguments are defective in other respects as well, but in the interest of brevity and in
respect of this Court's time, the Debtors will not refute all of the numerous misstatements of law
and fact in Plaintiffs' Response.  Further, as stated in the Objection, the Debtors reserve all

2.      First, despite Plaintiffs' statements to the contrary, the notice of the Bar

Date satisfies any applicable requirements of Due Process, and no further notice is necessary.

Notice of the chapter 11 filing of General Motors Corporation and the Bar Date was published

internationally in over 90 countries, including in and throughout South Africa, and the Bar Date

notice and the claim form were, and remain, posted internationally on the MLC website.  (*See*

Bar Date Order at 7.)  Plaintiffs' arguments that the notice was inadequate are without merit, as

courts routinely hold that publication notice to unknown claimants – even pursuant to less

extensive notice programs and in lower-profile bankruptcies – is constitutional, "however great

the odds that publication will never reach the eyes of such unknown parties."  *See Mullane v.*

*Cent. Hanover Bank & Tr. Co.*, 339 U.S 306, 317 (1950).

3.      Second, application of Bankruptcy Rule 7023 to a class proof of claim is

discretionary and should be denied here because allowing the Apartheid-Related Putative Class

Claims – which are unliquidated and admittedly relate to tens of thousands of potential class

members – to proceed would result in extreme prejudice to the Debtors' estates and be unfair to

other creditors, as a portion of the Debtors' estates would have to be set aside while the litigation

of the Apartheid-Related Putative Class Claims grinds on.  Such a reservation of the Debtors'

estates is particularly inappropriate where, as here, the Putative Classes were not certified as a

class action by any court prepetition.  ***Plaintiffs are unable to cite any bankruptcy case within***

***the Second Circuit in which a pre-certification class claim was allowed.***  Further, the cases that

Plaintiffs do cite fail to support allowance of the Apartheid-Related Putative Class Claims here,

given the obvious complexities and need for individualized proofs in their case alleging

---

rights to object to the Apartheid-Related Class Claims on substantive and procedural grounds,
including, but not limited to, their failure to state a claim for relief.

thousands of *individual* instances of torture, cruel treatment, extrajudicial killing, and other injuries caused by the Apartheid regime involving thousands of people over a span of decades.

4.     Third, the Apartheid-Related Putative Class Claims should be disallowed because they cannot meet the requirements of Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**").  Pursuant to Second Circuit precedent under *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005) (which specifically disclaimed and criticized Plaintiffs' keystone Ninth Circuit case, *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767 (9th Cir. 1996)), the individualized proof required to be presented on behalf of thousands of members of the Putative Classes would swamp the proof regarding any common issues. Moreover, although Plaintiffs' Response tries to more narrowly define Putative Classes as to the Debtors than as presented in the Complaint, even the purported revised class definitions would require this Court to perform an improper merits inquiry merely to determine who is included in the proposed classes.

5.     Accordingly, for the reasons set forth in the Objection and this Reply, the Court should disallow the Apartheid-Related Putative Class Claims in their entirety and deny the Cross-Motion.

### The Cross-Motion Should Be Denied as Untimely

6.     Initially, Plaintiffs' Cross-Motion under Bankruptcy Rule 9014 should be denied as untimely.  Plaintiffs implore the Court to overlook their failure to comply with basic requirements of the Bankruptcy Code, but they do not provide the Court with any reasonable explanation as to why they failed to do so.  A Bankruptcy Rule 7023 motion "should be filed as soon as practicable" and should be denied if it comes so late as to prejudice any party.  *See In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007) (citing *In re Computer Learning Ctrs., Inc.*, 344 B.R. 79 (Bankr. E.D. Va. 2006)).  Further, Bankruptcy Rule 7023, by

incorporating Rule 23, requires that the class certification decision be made "at an early practicable time." *See* Fed. R. Bankr. P. 7023; Fed. R. Civ. P. 23(c)(1)(A). And Second Circuit caselaw is clear that claimants should not delay until an objection is filed before moving for class certification. *See In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (disagreeing and distinguishing *In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990) and holding claimants had right to move for class certification from moment debtors' chapter 11 petition was filed); *see also In re Musicland Holding Corp.*, 362 B.R. at 652 (where claimants moved for certification before debtor filed claim objection, court noted that claimants "could have made the motion sooner," and "[a]lthough the delay does not automatically disqualify the class claim, it bears on the exercise of the discretion whether to apply Rule 23"). In fact, the United States Bankruptcy Court for the Southern District of New York has disallowed class claims where claimants disregarded compliance with Rule 9014, specifically recognizing that such claims should not be allowed to "grind on" while other creditors wait for their anticipated distributions pursuant to a plan liquidation. *See In re Thomson McKinnon Secs Inc.*, 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (disallowing class claim for failure to file motion under Rule 9014 because "the costs and delay associated with class actions are not compatible with liquidation cases where the need for expeditious administration of assets is paramount so that all creditors, including those not within the class, may receive a distribution as soon as possible"), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992).[3]

---

[3] Moreover, Plaintiffs' blatantly misrepresent that the court in *In re United Companies Financial Corp.* certified a class despite the motion for class certification being filed at least nine months after the bar date. (*See* Resp. ¶ 40 (citing *In re United Cos. Fin. Corp.*, 276 B.R. 368 (Bankr. D. Del. 2002).) In that case, the court actually *denied* the motion for class certification. *See In re United Cos. Fin. Corp.*, 276 B.R. at 607. Further, the court in *In re Spring Ford Industries, Inc.* found no prejudice to the debtor or other creditors, not because of the timing of the motion for class treatment as Plaintiffs' intimate, but rather because the debtor was able to (and did) take the

7.      Here, the Botha Plaintiffs filed their proof of claim over ten months ago, the Balintulo Plaintiffs filed their claim over eight months ago, and these chapter 11 cases have been pending over a year.  Plaintiffs even admit their delay was due to conscious and intentional disregard of the Bankruptcy Rules 9014 and 7023.[4]  Plaintiffs' inexplicable delay in seeking class treatment, coupled with Plaintiffs' requests to provide the putative class members with a second publication notice and a second opportunity to assert claims, would result in prejudice to the Debtors and other creditors, who timely and properly filed their claims, but would be forced to wait longer distribution, and should not be tolerated by this Court.  *See In re Thomson McKinnon Secs Inc.*, 133 B.R. at 41 (expunging class claim where claimant waited to file motion pursuant to Rule 9014 requesting that Rule 7023 apply because "[t]he debtor is no longer in business and the creditors are anxiously awaiting distribution with respect to their allowed claims").  Further, should the Apartheid-Related Putative Class Claims be allowed at this late stage, the confirmation of a plan of liquidation and the distribution of the Debtors' assets could be delayed while the Apartheid-Related Putative Class Claims are litigated and liquidated.

8.      Accordingly, because Plaintiffs have failed to timely comply with Rule 9014, the Apartheid Putative Class Claims should be expunged.

---

class claim into account in formulating its plan and the class claim would have to exceed $9 million before it would affect the 100 percent distribution to unsecured creditors.  No. 02-15015DWS, 2004 WL 231010, at *5 (Bankr. E.D. Pa. Jan. 20, 2004).

[4] (*See* Resp. ¶ 4 (attempting to explain that Plaintiffs' delayed in seeking class treatment to avoid waste of judicial resources because underlying claims "are on appeal and stayed in federal court").)  Plaintiffs' failure to properly prosecute their claims in these chapter 11 cases because they thought they might lose in the Second Circuit does not excuse them from complying with the Bankruptcy Rules. *Cf. In re Tronox Inc.*, No. 09-10156, 2010 WL 1849394, at *2 (Bankr. S.D.N.Y. May 6, 2010) (denying putative class counsel's request to extend bar date based on plaintiffs' excuse that they thought it better to wait to file proof of claim on behalf of the putative class until after their appointment as lead putative class counsel in the underlying lawsuit).

**Debtors' Reply in Support of Their Objection to Disallow the
Apartheid-Related Putative Class Claims**

I.  **The Apartheid-Related Putative Class Claims Should Be Disallowed Because
    Adequate Notice of the Chapter 11 Cases and the Bar Date Was Provided to All
    Members of the Putative Classes**

9.      In their Response, Plaintiffs argue that the Court should permit them to
prosecute a class claim because MLC failed to provide adequate notice to the members of the
proposed class in the chapter 11 cases.  Plaintiffs allege that the majority of class members were
unlikely to read *The Wall Street Journal*, *The Financial Times*, or *USA Today*, as they likely
reside "in highly segregated townships and ghettos," speak a variety of languages, including
English, IsuZulu, IsiXhosa, Afrikaans, and "other native languages," and no publication notice
was issued in the eleven South African newspapers identified by Plaintiffs.  (*See* Resp. at 10 n.6,
12 n.7, ¶ 33.)

10.     However, Plaintiffs fail to cite a single case where a bankruptcy court
permitted class treatment of a proof of claim because the absent class members did not receive
actual or constructive notice of the bar date.  (*See* Resp. ¶¶ 27-34.)  In fact, all of their cited cases
are inapposite.   Several of the cited cases disallowed the class claims at issue.[5]  Others did not
involve class claims at all.[6]  The rest did not hold that the class claim was appropriate because
notice was inadequate.[7]

---

[5] *See* Resp. ¶¶ 29, 34 (citing *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616 (Bankr.
S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009), *In re Jamesway Corp.*, No. 95-44821, 1997 WL
327105 (Bankr. S.D.N.Y. June 12, 1997), *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16
(Bankr. E.D. Pa. 1995)).

[6] *See* Resp. ¶¶ 28-29 (citing *Reliable Elec. Co., Inc. v. Olson Constr. Co.*, 726 F.2d 620 (10th
Cir. 1984); *Mullane*, 339 U.S. 306).

[7] *See* Resp. ¶ 28 (citing *In re Waterman S.S. Corp.*, 157 B.R. 220 (S.D.N.Y. 1993)).

6

11.    For example, although the Plaintiffs cite to *Mullane* (*see* Resp. ¶ 28), in that case, the Supreme Court specifically held notice by publication was constitutional in the case of unknown persons, "however great the odds that publication will never reach the eyes of such unknown parties":

> This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect ***and even a probably futile means of notification*** is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

*See Mullane*, 339 U.S. at 317 (emphasis added).  Moreover, the Fourth Circuit has held that, because foreign claimants are not protected by the U.S. Constitution, there is no merit to the constitutional claim that notice of a bar date is defective as to foreigners.  *See Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*, 820 F.2d 1359, 1363 (4th Cir. 1987) (affirming denial of motion to extend or abolish bar date for foreign claimants because "[t]he Constitution does not extend its guarantees to nonresident aliens living outside the United States").

12.    In *A.H. Robins*, claimants alleged that the foreign notice program was inadequate because it relied solely on notice by publication to advise unknown potential tort claimants of the bar date and cited the low foreign response rate as evidence of the program's inadequacy.  *Id.*  The Fourth Circuit held that the notice program was reasonable and adequate, and it noted that the discrepancy between the number of claims filed from other countries and the number of claims filed from the United States likely resulted from cultural differences, including, *inter alia*, "a simple absence of the litigious nature which characterizes the American public."  *A.H. Robins Co., Inc.*, 820 F.2d at 1363.

13.    Even if the members of the Putative Classes in South Africa *were* entitled to adequate notice under Due Process, the law is clear that the proper inquiry in evaluating the adequacy of notice is whether a party "acted reasonably in selecting means to inform persons affected . . ., not whether each claimant actually received notice." *In re Jamesway Corp.*, 1997 WL 327105, at *1 (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989)); *In re Waterman S.S. Corp.*, 157 B.R. at 221.  Further, the Southern District of New York has affirmed this Court's refusal to permit class proofs of claim to proceed on a class basis even when members of the class received notice by publication.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 411 B.R. 142, 146 (S.D.N.Y. 2009) (affirming denial of motion for leave to file class claim where part of putative class received only notice by publication and holding such notice "was still legally adequate"); *see also In re Jamesway Corp.*, 1997 WL 327105, at *8 (denying class certification in adversary proceeding even though putative class members alleged they failed to receive notice because "the fact that these plaintiffs or other Proposed Class members may not have received a Claim Package that was mailed to them or read published notice of the Bar Date is irrelevant as a matter of due process").

14.    Plaintiffs' arguments that the publication notice should have been issued in regional and local South African newspapers or that notice was otherwise inadequate are without merit, as "[c]ourts consistently reject the argument that a publication of 'general circulation,' such as the New York Times or Wall Street Journal, must be available in the particular locality where the objecting party resides," and hold that it is impracticable to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.  *See Castleman v. Liquidating Tr.*, No. 6:06-CV-1077 (LEK), 2007 WL 2492792, at *3 (N.D.N.Y. Aug. 28, 2007); *see also id.* (holding adequate notice to unknown creditors did not require debtor

to publish notice in the many locations where it conducted business because it "would have been onerous and too costly"). Rather, it is well-settled that "when a creditor is unknown, employment of an indirect and even probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *DePippo v. Kmart Corp.*, 335 B.R. 290, 296 (S.D.N.Y. 2005) (citing *Mullane*, 339 U.S. at 317); *see also In re XO Commcn's, Inc.*, 301 B.R. 782, 792-93 (Bankr. S.D.N.Y. 2003) (concluding publication of the bar date satisfies requirements of Due Process with respect to providing notice to unknown creditors), *aff'd*, No. 04 CIV. 01489 LAK, 2004 WL 2414815 (S.D.N.Y. June 14, 2004). In this regard, notification by publication is reasonable even where a creditor is unsophisticated, foreign, and would not necessarily read the publication. *In re Charter Co.*, 125 B.R. 650, 658 (M.D. Fla. 1991) (finding one-time-only notice by publication in the *New York Times* and four other U.S.-based journals, was reasonable to inform foreign creditor of bar date even though such publications would not necessarily be subscribed to by creditor because "publication notice is legally adequate notice to unknown creditors, whether they be sophisticated trade creditors or individual tort claimants").

15.     Additionally, where, as here, the notice is in regards to a high-profile bankruptcy case, courts are even more likely to find constructive notice is adequate with respect to unknown claimants. *See, e.g., In re W. Coast Video Entrps., Inc.*, 174 B.R. 906, 910-11 (Bankr. E.D. Pa. 1994) (holding that unknown creditors received reasonable notice of debtor's bankruptcy filing through media publicity of case, and thus, were precluded from pursuing potential claims against debtor, even though debtor did not publish notice and claimants alleged they were unaware of filing).

16.     Here, notice of the Bar Date was published internationally, in over 90

countries, in *The Financial Times* (Worldwide Edition – distributed throughout South Africa),

*The Wall Street Journal* (Global Edition – distributed throughout South Africa), *USA Today*

(Monday through Thursday, distributed throughout South Africa), *The New York Times*

(National), *Detroit Free Press*, *Detroit News*, *LeJournal de Montreal* (French), *Montreal Gazette*

(English), *The Globe and Mail*, (National), and *The National Post*.  (*See* Bar Date Order at 7.)

Further, the claim form and Bar Date notice were published on the MLC website

(www.motorsliquidationdocket.com and www.motorsliquidation.com).  Additionally, the chapter

11 filing of General Motors Corporation was "high-profile" and received international media

attention.  Accordingly, Plaintiffs' arguments that there was not adequate notice to members of

the Putative Classes fail.[8]

## II.     If the Court Disallows the Apartheid-Related Putative Class Claims, No Additional Notice of the Bar Date Is Necessary

17.     Plaintiffs argue, in the alternative, that if the Court does not recognize the

Apartheid-Related Putative Class Claims, it should order additional notice and provide absent

putative class members with another opportunity to file proofs of claim against MLC.  Plaintiffs

fail to cite any authority that requires the extraordinary measure of extending the Bar Date and

providing additional notice in these circumstances.  In fact, the only cases cited by Plaintiffs on

---

[8] In the alternative, and in the event this Court finds that notice of the Bar Date to the members
of the Putative Classes was inadequate, the Debtors submit that the Plaintiffs have not and cannot
meet their burden of demonstrating that notice can be effected consistent with the basic
requirements of Due Process, and therefore, no class proof of claim should be permitted.  *See
Mateo v. M/S Kiso*, 805 F. Supp. 761, 774 (N.D. Cal. 1991) (denying certification of a class of
seamen who were foreign nationals on the basis that "[i]t will be difficult, if not impossible, to
provide class members appropriate notices or otherwise communicate with the class"); *Cape
Henry Bird Club v. Laird*, 359 F. Supp. 404, 410 (W.D. Va. 1973) (denying certification where
the "members of the class cannot reasonably be determined, and [where] there is no reasonable
method of giving such people proper notice as required by due process and Rule 23(c)(2)"),
*aff'd*, 484 F.2d 453 (4th Cir. 1973).

this issue involved situations in which the debtor has easy access to the identity and addresses of the potential claimants, and accordingly, the courts ruled that Due Process required individualized notice for these *identifiable* potential claimants.  (*See* Resp. ¶ 56 (citing *In re Amdura Corp.*, 170 B.R. 445 (D. Colo. 1994) (stockholders' actual identities were known and addresses were "easily ascertainable" and could be obtained from class representatives); *In re Am. Reserve Corp.*, 840 F.2d 487, 491 (7th Cir. 1988) (stating that trial court judge "might consider" directing additional notice and invite individual proofs of claim as opposed to allowing class proof of claim where debtor insurance company could "identify its own policyholders without difficulty" in order to mail individuals notice)).)  Here, unlike *In re American Reserve Corp.* or *In re Amdura*, neither the Debtors *nor class counsel* know the identities or addresses of the members of the Putative Classes.

18.     Plaintiffs argue that a second publication notice should be issued, ostensibly in the eleven South African newspapers they identify, as the majority of class members likely reside in segregated areas and speak a variety of languages.  (*See* Resp. at 10 n.6, 12 n.7, ¶ 33, ¶ 56.)  Plaintiffs further argue that the Debtors should be required to engage "non-governmental organizations" to work as intermediaries to help potential claimants file individual proofs of claim.  (*See* Resp. ¶ 56 ("There is no reason to believe that class claimants, properly notified, *and working through non-governmental organizations as intermediaries*, would not file individual proofs of claim.") (emphasis removed and added).)

19.     Plaintiffs fail to cite to *any authority* holding that a publication notice was inadequate where it failed to be issued in multiple languages, in newspapers peculiar to different countries, or absent the help of "non-governmental organizations" to work as intermediaries, and the Debtors have been unable to find a single case so holding.  Such extraordinary notice

procedures would be unnecessary, unduly burdensome, and costly. The Debtors have already

published notice internationally and mailed over 1.7 million individual notices, at a cost of over

$1.3 million to the Debtors' estates. As stated above, even if members of the Putative Classes

were entitled to Due Process, the initial notice of the Bar Date was adequate, and to require the

Debtors to re-issue publication notice to *unknown* potential creditors in a variety of publications

and regional tongues is not necessary to satisfy Due Process. *See Castleman*, 2007 WL 2492792,

at *3; *In re Charter Co.*, 125 B.R. at 658; *see also In re Waterman S.S. Corp.*, 157 B.R. at 221

("[T]he debtor is not required to search out each conceivable or possible creditor and urge the

creditor to file a proof of claim.").

## III.    The Apartheid-Related Putative Class Claims Should Be Disallowed Because They Were Not Certified Prior to the Commencement Date

20.    Although courts may, in their discretion, find that the use of the class

claim device may be appropriate in certain contexts, "such contexts should be chosen most

sparingly." *In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 22. Courts routinely refuse to

allow class claims where the putative class was not certified prepetition because of the threat of

undue delay and prejudice to the Debtors' estates and other claimants. Here, the Putative Classes

in the Apartheid-Related Putative Class Claims were not certified at the time of the Debtors'

chapter 11 filing, and they remain uncertified today. In this instance, lack of prepetition

certification of the Putative Classes should be fatal.

21.    Plaintiffs falsely assert that "MLC misrepresents the nature and import of

prepetition certification in cases where the lack thereof was a substantial basis for the decision,"

and that cases so holding do so only out of concerns about the "adequacy of the class

representatives." (*See* Resp. ¶ 45.) In this regard, it is Plaintiffs – not MLC – who misrepresent

the relevant caselaw. Plaintiffs are unable to proffer ***any bankruptcy case within the Second***

12

*Circuit* in which a pre-certification class claim was allowed, and the cases they do cite fail to support allowance of the uncertified Apartheid-Related Putative Class Claims at issue here.  (*See* Resp. ¶¶ 45-49.)

22.    For instance, Plaintiffs represent that the bankruptcy court in *In re CommonPoint Mortgage Co.* certified "a class where [a] class action was not certified by a federal court under Rule 23."  (Resp. ¶ 48 (emphasis added) (citing *In re CommonPoint Mortg. Co.*, 283 B.R. 469 (Bankr. W.D. Mich. 2002)).)  But the class in that case had been previously certified by a state court against the debtors' co-defendants, and the state court had already rendered judgment in the class' favor.  *See In re CommonPoint Mortg. Co.*, 283 B.R. at 472-73.

23.    Similarly, *In re Tronox, Inc.* does not stand for the proposition that a class claim could be allowed despite the lack of prepetition certification.  *See In re Tronox Inc.*, 2010 WL 1849394.  In that case, the bankruptcy court refused to extend the bar date for claimants who wished to file a proof of claim on behalf of a putative class on the basis of excusable neglect. Putative class counsel averred that they missed the deadline because they had to wait to file the proof of claim on behalf of the putative class until after their appointment as putative class counsel in the underlying lawsuit.  In refusing to accept that excuse, the bankruptcy court stated that "*[r]ecognition of class status in securities litigation does not guaranty recognition of class status in a bankruptcy case*, nor is the pendency of class securities litigation a prerequisite to the filing of a class proof of claim in this court, *although it may be relevant*."  *See id.* at *2 (emphasis added).

24.    Further, in the two other cases cited by Plaintiffs, neither court held that the claim at issue could proceed on behalf of a class.  (*See* Resp. ¶ 46 (citing *In re Am. Reserve Corp.*, 840 F.2d 487; *In re Musicland Holding Corp.*, 362 B.R. 644 (Bernstein, J.)).)  Indeed, the

*Musicland* court *denied* the claimants' motion for class certification,[9] and the *In re American Reserve Corp.* court merely found that class claims could be permissible under the Bankruptcy Code, but left the determination as to whether that particular class claim should be allowed in the hands of the bankruptcy court.[10]

25.    In another case mis-cited by Plaintiffs, *In re First Alliance Mortgage Co.*, although the class was not certified prepetition, the plaintiffs sought certification under the "limited fund" provision under Rule 23(b)(1)(B), which the court acknowledged contains a much lower bar to certification with regard to predominance requirements than Rule 23(b)(3). *See* 269 B.R. 428, 447 (C.D. Cal. 2001) (under Rule 23(b)(1)(B), unlike Rule 23(b)(3), "[c]ommon issues need not 'predominate,' but there need be only a single issue common to the class members").[11] Likewise, in *In re First Interregional Equity Corp.*, although the class was not certified prepetition, the plaintiffs filed their motion for class certification at the time of the filing of the class proof of claim, and as a result, undue delay and ensuing costs to the administration of the estate were not at issue. *See* 227 B.R. 358, 371 (Bankr. D.N.J. 1998).[12]

---

[9] *In re Musicland Holding Corp.*, 362 B.R. at 657.

[10] *In re Am. Reserve Corp.*, 840 F.2d at 493 ("Although we conclude that a representative may file a proof of claim on behalf of a class of similarly-situated persons, this does not necessarily mean that the Huddlestons may represent a class of policyholders. The bankruptcy judge has not certified the class; he has decided only that Rule 23 is applicable.").

[11] Further, Rule 23(b)(1)(B) was not intended to be used to certify class actions for unliquidated tort claims, as the claims alleged by the Putative Classes are here. *See Ortiz v. Fireboard Corp.*, 527 U.S. 815, 844-45 (1999).

[12] Additionally, Plaintiffs argue that *In re Retirement Builders, Inc.*, 96 B.R. 390 (Bankr. S.D. Fla. 1988) did not hold or "even suggest[]" that actions lacking prepetition certification were inappropriate for class treatment in bankruptcy. (*See* Resp. at 19-20 n.17.) This is incorrect. In allowing class treatment where the class had been certified prepetition, the court specifically distinguished another case barring class treatment because in that case the "***movant did not obtain the required [prepetition] class certification***." *See In re Ret. Builders, Inc.*, 96 B.R. at 391-92 (emphasis added).

## IV.    The Apartheid-Related Putative Class Claims Should Be Disallowed Because They Cannot Satisfy the Requirements of Rule 23

### A.    Numerous Individual Issues Predominate Over Common Questions

26.    When, as here, the determination of liability and damages requires a case-by-case inquiry for each prospective member of the putative class, courts routinely find that the predominance and superiority requirements of Rule 23 are not satisfied.[13]  Underscoring how far they seek this Court to stretch the certification requirement under Rule 23, Plaintiffs are only able to cite to three other cases in the country under the Alien Tort Claims Act in which class certification has ever been granted, none of which were in the bankruptcy context.  (*See* Resp. ¶¶ 71, 82 (citing *Hilao*, 103 F.3d at 774; *Does I v. The Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073 (D. N. Mar. I. May 10, 2002); *Doe I v. Karadzic*, 176 F.R.D. 458 (S.D.N.Y. 1997).)

---

[13] *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 608-610 (1997) (affirming vacatur of class certification order where damages determination required inquiry into nature of each individual plaintiffs' exposure to asbestos); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1276 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005) (holding that common questions regarding defendants' alleged pattern and practice of criminal conduct predominated as to federal RICO claims, but that district court abused its discretion in certifying class for all state-law claims, given case-specific inquiry necessary for their resolution); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000), *cert. denied*, 532 U.S. 919 (2001) ("Whether Avis maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class."); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (holding that plaintiffs alleging racial discrimination had failed to show "predominance" because proof concerning existence of a general policy of racial discrimination could not establish discrimination as to any individual plaintiff), *reh'g and suggestion for reh'd en banc denied*, 167 F.3d 542 (11th Cir. 1998); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 605 (5th Cir. 2006) (affirming denial of class certification under Rule 23(b)(3) because proceedings required a case-by-case determination of damages); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 745 (5th Cir. 2003) (holding that district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"), *reh'g and reh'g en banc denied*, 64 Fed. Appx. 419 (5th Cir. 2003); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th Cir. 1998) (concluding that, where claims of members of a putative class of antitrust plaintiffs are "inherently individualized, . . . the need for individual proof of damages" precludes class certification).

But all three of these cases have been widely criticized,[14] and they do not support allowance of the Apartheid-Related Putative Class Claims here.

27.    In *Hilao,* a divided panel of the Ninth Circuit affirmed the district court's certification of a class of plaintiffs with claims under the Alien Tort Claims Act pursuant to the "limited fund" provision of Rule 23(b)(1)(B) (which, as described above, contains a much lower bar to certification than Rule 23(b)(3)).[15]  The class members in *Hilao* were victims of the deposed Philippine dictator, Ferdinand Marcos, with claims for human rights abuses ranging from torture to summary execution.  Without addressing any of the Rule 23(b) factors, the Ninth Circuit held that the district court had not abused its discretion in certifying the class.  *See Hilao*, 103 F.3d at 774.  Because each plaintiff required individualized proof of causation and damages and the certified class exceeded 10,000 victims, the district court had appointed a special master to oversee the depositions of 137 members of the proposed class who were selected at random.  Based on the testimony of this statistically random sample, the special master developed a formula to apportion damages for the entire class of 10,000.  The Ninth Circuit noted the "profound" concerns of the Fifth Circuit with a similar procedure in an asbestos case, *In re Fibreboard Corp.*, 893 F.2d 706, 710 (5th Cir. 1990), rooted in the statistical certainty that such a procedure would ensure that some invalid claims would receive a recovery, thereby reducing

---

[14] *See, e.g.*, *Kpadeh v. Emmanuel*, 261 F.R.D. 687, 692 (S.D. Fla. 2009) (criticizing *Hilao* and *Karadzic* because "courts in those cases did not engage in intellectually rigorous analyses of the class certification requirements"); *Cimino v. Raymark Indus., Inc.* 151 F.3d 297, 319 (5th Cir. 1998) (criticizing *Hilao* and agreeing with Judge Rymer's dissenting opinion that "[e]ven in the context of a class action, individual causation and individual damages must still be proved individually"); *Talisman Energy*, *Inc.*, 226 F.R.D. at 471-72 (criticizing and distinguishing *Hilao*, *Karadzic*, and *The Gap, Inc.*).

[15] *See In re First Alliance Mortgage Co.*, 269 B.R. at 447 (under Rule 23(b)(1)(B), unlike Rule 23(b)(3), "[c]ommon issues need not 'predominate,' but there need be only a single issue common to the class members").

the recovery for some class members with valid claims compared to the recovery they would have received had they pursued their claims individually, and that the defendants would be exposed to liability not just to claimants whose cases were tried, but to many additional claimants "whose claims were indexed to those tried." *Hilao*, 103 F.3d at 785.  Nevertheless, the Ninth Circuit rejected these concerns, contending that individual trials of all 9,541 claims would be "impossible," that the risk of invalid claims was small, that the defendant's payout was already reduced to reflect the existence of a number of invalid claims, and that the procedure was "justified by the extraordinarily unusual nature of this case." *Id.* at 786.

28.    The Honorable Judge Cote of the Southern District of New York specifically criticized *Hilao* and its "creative use of phased proceedings and sampling methods to quantify the damages owed by Marcos to almost ten thousands Filipinos," noting that its failure to consider the need for individualized proof "preceded [the Supreme Court decision in] *Amchem*[16] and would be unlikely to survive today."  *See Talisman Energy, Inc.*, 226 F.R.D at 483.  Judge Cote further stated that the "dissent in *Hilao* was the better reasoned decision,"[17] as it

---

[16] *See Amchem Prods., Inc.*, 521 U.S. 591.

[17] Dissenting from the panel's opinion in Hilao, Judge Rymer expressed concern at the result reached by her colleagues on the issue of class certification, and she argued that the procedure used by the district court to manage the class ran afoul of fundamental notions of Due Process:

> This leaves me "with a profound disquiet[.]" ... Although I cannot point to any authority that says so, I cannot believe that a summary review of transcripts of a selected sample of victims who were able to be deposed for the purpose of inferring the type of abuse, by whom it was inflicted, and the amount of damages proximately caused thereby, comports with fundamental notions of due process.  *Even in the context of a class action, individual causation and individual damages must still be proved individually*.

> There is little question that Marcos caused tremendous harm to many people, but the question is which people, and how much.  That, I think, is a question on which the defendant has a right to due process.  If due process in the form of a real prove-up of causation and damages cannot be accomplished because

identified the very problems that infect applications for class certification in the context of the

claims under the Alien Tort Claims Act:  namely, "there may be very little question that the

Government of Sudan caused tremendous harm to the people of southern Sudan, but the question

is which people and how much." *See Talisman Energy, Inc.*, 226 F.R.D. at 483; *see also Kiobel

v. Royal Dutch Petroleum Co.*, No. O2 Cir. 7618, 2004 WL 5719589, at *10 (S.D.N.Y. Mar. 31,

2004) (Pitman, Mag. J.).  Similarly, here, the Debtors do not doubt that the Apartheid regime

cause tremendous harm to the people of South Africa, but *Talisman Energy* makes clear that

common issues of law and fact cannot predominate over individual issues peculiar to

individualized members of the Putative Classes, who allege a startlingly diverse range of

injuries, including extrajudicial killing, torture, and cruel, inhuman, and degrading treatment over

many decades across an entire country.[18]

---

the class is too big or to do so would take too long, then (as the Estate
contends) the class is unmanageable and should not have been certified in the
first place.

*Id.* at 788 (Rymer, J., dissenting in part) (emphasis added).  In addition to the Southern District
of New York, several other district courts have agreed with Judge Rymer that a summary review
of the deposition transcripts of a sample of the class plaintiffs to determinate liability and award
damages falls below the standard of Due Process owed to the putative class.  *See, e.g.*, *Kpadeh*,
261 F.R.D. at 692 ("[T]his method would transform a federal district court--an institution that is
tasked above all else with doing justice and safeguarding the due process rights of the litigants
who appear before it--into a mechanical claims adjustor or a risk assessment center, callously
assigning arbitrary awards based on tables developed through statistical sampling of atrocities
(*e.g.*, $X for each instance of rape; $Y for genital mutilation; $Z per month of torture and
confinement).").

[18] In this regard, the sheer difficulty in estimating the Apartheid-Related Putative Class Claims is
reason enough to disallow them.  Plaintiffs argue that estimation can be accomplished without
undue delay by following the statistical methodology used in *Hilao*.  (*See* Resp. ¶ 95.)  As stated,
the method used in *Hilao* – which was not a bankruptcy case – required, *inter alia*, (i)
publication notice and claim forms to be issued to the putative class members, (ii) analysis of the
claims forms returned by putative class members, (iii) the taking of 137 depositions of putative
class members, who were chosen at random from those who returned claim forms, and (iv)
detailed statistical analysis consisting of the extrapolation of the data gathered from such
depositions across the 10,000-member class.  *Hilao*, 103 F. 3d at 772, 782-84.  Such an extensive

29.     Further, Plaintiffs' assertion that the Putative Classes are not plagued by the same individualized issues of fact and causation that beset the class in *Talisman Energy* because the factual issue allegedly common to the class is "the degree to which GM aided and abetted the apartheid security forces' crimes" does not bear scrutiny.  Here, the Court would need to determine, *inter alia*, whether an individual's arrest, detainment, interrogation, or torture was caused by such individual's union activity at GM and/or GM's alleged collaboration with the government, or whether persons murdered over 20 years ago were shot by security force officers driving vehicles purportedly manufactured by GM.  Indeed, it is difficult to fathom that persons forced to witness the tragedy of a family member's murder will remember the make of a particular automobile at the scene, or how the Plaintiffs intend to prove, let alone parse through the individual factual issues that will arise when attempting to prove, that someone at GM "with knowledge and intent" to support the Apartheid security force's crimes reported an employee due to the employee's union activity to the government, and such report resulted in that employee's arrest.  (*See* Resp. ¶ 79.)

30.     Plaintiffs' remaining cases prove unavailing.  In *Does I v. The Gap, Inc.*, the court granted a motion for class certification under Rule 23(b)(3) for approximately 30,000 factory garment workers in Saipan, Northern Mariana Islands who alleged that they were held in a system of peonage and involuntary servitude created through a conspiracy among garment manufacturers in the district.  2002 WL 1000073, at *2, 9.  The court rejected the defendants' argument that "at least one element of each of the plaintiffs' claims requires individualized proof and inquiry into the plaintiffs' mental states, alleged injuries, and causes of the alleged injuries."

---

procedure would surely result in "undue delay," especially given Plaintiffs' acknowledgement that most of the members of the Putative Classes do not speak English, are "poorly educated," and live in "ghettos and segregated townships" in a country thousands of miles away.

19

*Id.* at *7.  Rather, the court held that "this is a lawsuit challenging the garment production system on Saipan based upon allegations of peonage, not a case involving 30,000 individual tort actions."  *Id.*  Consequently, the court found that common issues would predominate over individual issues because it would be unnecessary to engage in "the separate adjudication of each class members' individual claim or defense."  *Id.*  Like *Hilao*, *The Gap, Inc.* was distinguished by Judge Cote of the Southern District of New York in *Talisman Energy*, as "the class suffered an identical injury—peonage—from a common source, the garment production system on one island . . .  If the plaintiffs succeeded in sharing that the factories enslaved their workers, then liability was established *vis-a-vis* each worker, and all that remained to be shown would be the amount of an individual's damages."  *See Talisman Energy, Inc.*, 226 F.R.D. at 483.

31.    Similarly, *Karadzic* does not support certification here.  In that case, the court certified a plaintiff class pursuant to the "limited fund" provision of Rule 23(b)(1)(B).  Although the Plaintiffs had also moved for certification under 23(b)(3), the court did not reach that issue.  Further, the court expressed "grave doubts" about plaintiffs' ability to demonstrate that common questions of law and fact would predominate and that the proposed class action would be manageable pursuant to Rule 23(b)(3), but it did not reach the merits of those questions.  *See* 176 F.R.D. 458.

32.    In addition, Plaintiffs cite to *In re Agent Orange Products Liability Litigation* in support of the assertion that common defenses satisfy the predominance requirement.  (*See* Resp. ¶ 80 (citing *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145 (2d Cir.), *cert. denied*, 484 U.S. 1004 (1988)).)  But Plaintiffs gloss over the question at hand:  It is not whether a common defense exists, but rather whether such common defense *predominates* over individual issues.  The court in *In re Agent Orange Products Liability Litigation* approved

certification of a settlement class consisting of armed forces personnel who were injured by exposure to Agent Orange in Vietnam, despite extreme skepticism that common issues would predominate. 818 F.2d at 168. It overcame that skepticism because the "military contractor defense" was central to the case, and the court observed that if the action had been brought by civilians, as opposed to military personnel, whose issues as to personal characteristics and nature of exposure were not as individualized, a class could *not* have been certified. *Id.* at 167.

33.    *Talisman Energy* involved a putative class similar to the Putative Classes here as it entailed hundreds of disparate attacks inflicted by government security forces allegedly aided and abetted by the corporate defendant. In *Talisman Energy*, the Southern District of New York specifically distinguished *In re Agent Orange Products Liability Litigation* on these very bases, and the court refused to find predominance was satisfied. *See Talisman Energy, Inc.* , 226 F.R.D. at 476 (distinguishing *In re Agent Orange Prods. Liab. Litig.* on these same grounds). Thus, the common defenses raised by the Debtors and other defendants will not predominate over these individualized issues.

### B.    Despite the Plaintiffs' Change in the Putative Class Definitions, the Members of the Putative Classes Remain Unidentifiable

34.    In an last-ditch effort to defend their definitions of the Putative Classes from legitimate attacks of over breadth and lack of ascertainability, Plaintiffs attempt to circumscribe their expansive class definitions[19] and allege that the Putative Classes were subject to the same "course of conduct." (*See* Resp. ¶ 59.) These attempts fail. First, the definitions of

---

[19] For instance, Plaintiffs contend that the Botha Putative Class Claim's broad class definition actually "includes two subclasses: GM employees and union members who suffered injuries at the hands of apartheid forces assisted by GM, limited in scope to only current or former employees . . ., and individuals who were killed or injured by security forces using military vehicles manufactured by GM." (*See* Resp. ¶ 63 (internal citations omitted).) But the Botha Complaint makes no mention of these purported "sub-classes." (*See generally* Botha Compl., attached to Debtors' Obj. at Ex. A.)

the Putative Classes remain reflexive – *i.e.*, they still would require the Court to determine if

General Motors Corporation aided and abetted the Apartheid regime and who was harmed by

such acts to determine class membership – and, thus, would necessitate this Court to conduct an

improper merits inquiry to determine who is included in the proposed class.[20]  Second, all of the

cases cited by Plaintiffs that allowed class definitions based on the same alleged "course of

conduct" are in the context of Rule 23(b)(2) classes, not Rule 23(b)(3), and thus are inapposite

here. [21]  (*See* Resp. ¶¶ 64-65 (citing *Barnett v. Bowen*, 794 F.2d 17, 23 (2d Cir. 1986) (Rule

23(b)(2) class); *Spinner v. City of N.Y.*, No. 01-2715, 2003 WL 23648356 (E.D.N.Y. Oct. 10,

2003) (same); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (same); *Dukes v.

Walmart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) (same)).)

###        C.        Neither "Commonality" Nor "Typicality" Can Be Established by the Plaintiffs

35.        The Plaintiffs' arguments as to typicality and commonality also fail.

Plaintiffs argue that typicality is satisfied because each putative class member's claim "arises

from the same course of events, and each class member makes similar legal arguments to prove

the defendant's liability."  (*See* Resp. ¶ 69.)  But the cases cited by Plaintiffs do not support a

---

[20] *See Kiobel*, 2004 WL 5719589, at *5 (recommending denial of class certification because class of "all persons in or from Ogoni who suffered various types of enumerated injuries, between October 1990 and May 1999 by Nigerian military, police or security services acting in support of Royal Dutch Petroleum Company and Shell Transport and Trading Company's operations" was not ascertainable where class membership could not be ascertained until it was determined whether the individual at issue suffered one of the enumerated injuries at the hands of officials of the Nigerian government acting in support of defendants).

[21] Further, the decision Plaintiffs cite regarding ascertainability is not on point given Plaintiffs' broad definitions of the Putative Classes.  (*See* Resp. ¶ 61 (citing *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010).)  In *Gortat*, the court found the class was ascertainable because it was "limited to persons employed by the defendants during a definite period of time."  2010 WL 1423018, at *2.

finding of typicality here,[22] especially given that Plaintiffs allege a "course of events" spanning

decades over an entire country and involving hundreds, if not thousands, of disparate instances of

alleged victimization.  Further, contrary to Plaintiffs' assertion that typicality is satisfied because

"each plaintiff's claim arises from GM's conduct" and "depends upon the legal argument that

GM aided and abetted the violations," the Putative Classes include plaintiffs with a wide variety

of claims, including plaintiffs who have no claim against General Motors Corporation.  Notably,

Plaintiffs' broad, unsupported arguments regarding commonality and typicality are not supported

by any evidence regarding the nature of the putative class members' claims.[23]

### Conclusion and Requested Relief

WHEREFORE, for the reasons set forth above and in the Objection, the Debtors

respectfully request that the Court (i) deny the Cross-Motion; (ii) disallow and expunge the

---

[22] *See* Resp. ¶¶ 68-71 (citing *James v. City of Dallas, Tex.*, 254 F.3d 551, 573 (5th Cir. 2001) (alleging Rule 23(b)(2) class of African-Americans whose homes were demolished in a four-year period by the city without proper notice), *cert. denied*, 534 U.S. 1113 (2002); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291-92 (2d Cir. 1992) (approving Rule 23(b)(1)(B) limited fund settlement class of securities investors who were victims of securities fraud), *cert. dismissed*, 506 U.S. 1088 (1993); *In re Alstom SA Sec. Litig.*, 253 F.R.D 266, 276-99 (S.D.N.Y. 2008) (alleging Rule 23(b)(2) class of securities investors who purchased stock at artificially inflated prices due to misstatements in public disclosures); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 444 (S.D.N.Y. 1995) (alleging Rule 23(b)(2) class of employees of one company for age discrimination and wrongful denial of pension benefits)).  Moreover, although the Plaintiffs again attempt to hang their hat on the Ninth Circuit's decision in *Hilao*, (Resp. ¶ 71), the Second Circuit has already disclaimed that Ninth Circuit decision and opined that it would be unlikely to survive today in the wake of the Supreme Court's decision in *Amchem*.  *See Talisman Energy*, 226 F.R.D at 483 (noting *Hilao* "preceded *Amchem* and would be unlikely to survive today").

[23] Prior to the Debtors' filing, class certification discovery was contemplated but had not occurred.  The Debtors should not be burdened now with such time consuming and costly discovery given the Plaintiffs' failure to meet Rule 23 as explained herein.  However, the absence of such discovery has permitted the Plaintiffs to make sweeping, unsubstantiated representations about the nature of the class members' allegations that would not have been possible in the District Court after the contemplated discovery.

Apartheid-Related Putative Class Claims in their entirety; and (iii) grant such other and further

relief as is just.

Dated: New York, New York
July 7, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession