Michael Hausfeld
Steig Olson (appearing)
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Tel (212) 830-9850
Fax (212) 480-8560

*Attorney for Sakwe Balintulo, et al.,
on behalf of all those similarly situated*

Diane Sammons (appearing)
NAGEL RICE LLP
103 Eisenhower Parkway
Roseland, NJ  07068
Tel (973) 618-0400
Fax (973) 618-9194

*Attorney for Lungisile Ntsebeza et al.,
on behalf of all those similarly situated*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*,<br>         f/k/a General Motors Corp., *et al.*<br><br>         **Debtors.** | **Chapter 11 Case No.**<br><br>**09-50026 (REG)**<br><br>**Jointly Administered** |

**CLASS PLAINTIFFS' RESPONSE TO DEBTORS' COMBINED (1) REPLY TO
RESPONSE TO DEBTORS' (i) OBJECTION TO PROOFS OF CLAIM NOS. 1206, 7587,
AND 10162 AND, IN THE ALTERNATIVE, (ii) MOTION TO ESTIMATE PROOFS OF
CLAIM NOS. 1206, 7587, AND 10162 AND (2) RESPONSE TO CROSS-MOTION
<u>UNDER RULE 9014 FOR RULE 7023 CLASS TREATMENT</u>**

## TABLE OF CONTENTS

**Page(s)**

Argument ...........................................................................................................................................1

A.  Class Plaintiffs' Cross-Motion Is Timely ............................................................................1

B.  Notice to the Absent Class Members Was Inadequate, Necessitating
    Class Treatment ....................................................................................................................5

C.  Common Questions of Fact and Law Predominate Over Individual
    Issues.....................................................................................................................................8

D.  The Named Plaintiffs Are Typical of the Class .................................................................13

Conclusion & Request for Relief....................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alderwoods v. Garcia,*
  420 B.R. 609 (Bankr. S.D. Fla. 2009) .................................................................................. 7

*Alegria v. United States,*
  945 F.2d 1523 (11th Cir. 1991) ...........................................................................................6

*Brown v. Kelly,*
  2010 WL 2520040, -- F.3d -- (2d Cir. June 24, 2010)..................................................10, 11

*Castleman v. Liquidating Trustee,*
  No. 6:06-1077, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007).........................................7

*Collins v. Olin Corp.,*
  248 F.R.D. 95 (D. Conn. 2008)..........................................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007)................................................................................................. 12

*Dupler v. Costco Wholesale Corp,*
  249 F.R.D. 29 (E.D.N.Y. 2008).........................................................................................10

*In re American Reserve Corp.,*
  840 F.2d 487 (7th Cir. 1988) ..............................................................................................4

*In re Blackwell ex rel I.G. Servs. Ltd,*
  267 B.R. 741 (Bankr. W.D. Tex. 2001).............................................................................6

*In re Buttes Bas & Oil Co.,*
  182 B.R. 493 (Bankr. S.D. Tex. 1994) ..............................................................................7

*In re Charter Co.,*
  876 F.2d 866 (11th Cir. 1989) ............................................................................................4

*In re Chateaugay Corp.,*
  104 B.R. 626 (S.D.N.Y. 1989), *appeal dismissed for lack of jurisdiction,*
  930 F.2d 245 (2d Cir. 1991)................................................................................................4

*In re Drexel Burnham Lambert Grp.,*
  148 B.R. 1002 (S.D.N.Y. 1993) .........................................................................................3

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) ...................................................................................................2

*In re First Alliance Mortgage Co.*,
    269 B.R. 428 (C.D. Cal. 2001) ..............................................................................................4

*In re Hillsborough Holdings Corp.*,
    172 B.R. 108 (Bankr. M.D. Fla. 1994) ..................................................................................3

*In re Kaiser Group Int'l, Inc.*,
    278 B.R. 58 (Bankr. D. Del. 2002) ........................................................................................3

*In re MTBE Prods. Liability Litig.*,
    241 F.R.D. 435 (S.D.N.Y. 2007) .........................................................................................10

*In re S. African Apartheid Litig.*,
    No. 02-MDL-1499 (Dkt No. 148) (April 29, 2009) ..............................................................2

*In re Spring Ford Indus., Inc.*,
    No. 02-15015, 2004 WL 231010 (Bankr. E.D. Pa. Jan. 20, 2004) ........................................3

*In re United Companies Financial Corp.*,
    276 B.R. 368 (Bankr. D. Del. 2002) ......................................................................................3

*In re Visa Check/Master Money Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ...........................................................................................12, 13

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ...................................................................................2

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ...........................................................................................9

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) ...............................................................................................9

*Jean v. Nelson*,
    727 F.2d 957 (11th Cir.), *r'hrg denied*,
    733 F.2d 908 (11th Cir. 1984), *aff'd on other grounds*,
    472 U.S. 846 (1985) ...............................................................................................................6

*Klay v. Humana, Inc.*,
    382 F.3d. 1241 (11th Cir. 2004) ..................................................................................... 9, 10

*Koss v. Wackenhut Corp.*,
    No. 03-7679, 2009 WL 928087 (S.D.N.Y. March 30, 2009) ..............................................10

*McGee v. Gold,*
   Nos. 1:04- 335, 1:05-231, 2006 WL 2975752 (D. Vt. Oct. 16, 2006)................10

*Mullane v. Cen. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950)..........................................................................................7

*New Pentax Film Inc. v. Trans World Airlines, Inc.,*
   936 F. Supp. 142 (S.D.N.Y. 1996)...................................................................6

*Pfizer, Inc. v. Lord,*
   522 F.2d 612 (8th Cir. 1975), *cert. denied*,
   424 U.S. 950 (1976)..........................................................................................6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
   226 F.R.D. 456 (S.D.N.Y. 2005) ...............................................................11, 13

*Romano v. SLS Residential Inc.,*
   246 F.R.D. 432 (S.D.N.Y. 2007) ....................................................................10

*Russian Volunteer Fleet v. United States,*
   282 U.S. 481 (1931)..........................................................................................6

*Rutstein v. Avis Rent-A-Car Sys., Inc.,*
   211 F.3d 1228 (11th Cir. 2000) ........................................................................9

*Tulsa Prof'l Collection Servs., Inc. v. Pope,*
   485 U.S. 478 (1988)..........................................................................................7

*United States v. Pink,*
   315 U.S. 203 (1942)..........................................................................................6

*Vancouver Women's Health Collective Society v. A.H. Robins,*
   820 F.2d 1359 (4th Cir. 1987) ..........................................................................5

**STATUTES AND RULES**

Federal Rules of Bankruptcy Procedure,
   Rule 7023.................................................................................................1, 6, 14
   Rule 9014..........................................................................................................1, 6

Federal Rules of Civil Procedure,
   Rule 23(a)(2)...................................................................................................13
   Rule 23(a)(3)...................................................................................................13
   Rule 23 (b)(1)....................................................................................................4
   Rule 23(c)(4) ..................................................................................................12

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUTPCY JUDGE:

The *Balintulo* and *Botha* Named-Plaintiffs ("**Class Plaintiffs**") file this response to Motors Liquidation Company's (f/k/a General Motors Corporation) ("**MLC**") Combined (1) Reply To Response to Debtors' (i) Objection to Proofs of Claim Nos. 1206, 7587, and 10162 And, in the Alternative, (ii) Motion To Estimate Proofs Of Claim Nos. 1206, 7587, and 10162 and (2) Response To Cross-Motion Under Rule 9014 For Rule 7023 Class Treatment ("**MLC Response**"). Pursuant to the agreement between MLC and Class Plaintiffs, specified in the Amended Notice of Matters Scheduled for Hearing on June 29, 2010 at 9:45 A.M., Dkt. No. 6167, at 18 (June 28, 2010), Class Plaintiffs respond only to matters raised in MLC's response[1] and represent to the Court the following:

## ARGUMENT

### A. Class Plaintiffs' Cross-Motion Is Timely.

1.  MLC's assertion that Class Plaintiffs' filing of their Cross-Motion now is untimely lacks factual and legal support. Even if MLC's claim that "caselaw is clear that claimants should not delay until an objection is filed before moving for class certification" were correct (which it is not since, at a minimum, the case law is ambiguous), and even though some

---

[1] After Plaintiffs agreed with MLC, at MLC's suggestion, to style their initial briefing as a Response and Cross-Motion rather than file a separate motion with duplicative briefing, Class Plaintiffs and MLC agreed that Plaintiffs would respond only to issues raised by MLC in its *response* to Plaintiffs' Cross-Motion. To the extent that MLC's styling of all the issues in its response to Plaintiffs' Cross-Motion (with the lone exception of timeliness) as a "*Reply* in Support of Their Objection to Disallow the Apartheid-Related Putative Class Claims," MLC Response at 6, seeks to prevent Plaintiffs from replying to MLC's arguments relevant to the Cross-Motion, that is inconsistent with good faith and spirit of the agreement.

courts have held that claimants have the legal *right* to file prior to an objection, neither proposition addresses *when* a motion for class treatment comes so late as to prejudice a party or unduly delay administration of the estate—the standard adopted by courts addressing timeliness—such that it should be denied.  *See, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4, 6 (S.D.N.Y. 2005) (undue delay); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) (undue delay and prejudice).

2.    In all of its briefing, MLC has not provided any specific explanation as to why, in *this* case, where Class Plaintiffs seek class treatment well before a distribution plan has been proposed, much less confirmed, class treatment would unduly delay the administration of the estate.  Even if discovery were required for this Court to consider class certification, MLC Response at 23 n.23, such discovery could be completed expeditiously because various discovery deadlines were rapidly approaching in the District Court proceedings when the stay was imposed, and GM was undoubtedly well into discovery preparation.  *See* Scheduling Order, *In re S. African Apartheid Litig.*, No. 02-MDL-1499 (Dkt No. 148) (April 29, 2009).  Discovery would by no means have to begin from scratch.

3.    Similarly, adjudication of the merits of the class claims will be required regardless of whether the class proofs are permitted because each of the personal injury claims on behalf of the many named plaintiffs filing proofs of claim will *individually* proceed to discovery and trial.[2]  Class treatment therefore is superior because it precludes duplicative discovery and multiple adjudications of the predominant issue in this case: GM's liability for aiding and abetting

---

[2] Class Plaintiffs do not understand that MLC is seeking to expunge the *individual* claims filed by the named plaintiffs, although MLC's briefing is ambiguous on this point.  MLC has provided no reason to expunge such individual claims.

apartheid and its constituent human rights violations alleged here. Class treatment thus permits a more efficient resolution of the contingent and unliquidated claims.

4. MLC's implied assertion that *any* delay is prejudicial does not comport with the standards courts have used to determine *legal* prejudice in the bankruptcy context. Prejudice results where, because of delay, the debtor and other creditors are unable to take into account the claim in formulating the plan; the plan was already negotiated and confirmed without contemplation of the unliquidated and contingent claims, such that permitting the claim at issue would dilute anticipated distributions; or plan distributions had already begun.[3] Here, where MLC was unquestionably aware of the class claims as a result of Class Plaintiffs' timely filing of proofs of claim prior to the Bar Date and the motion comes prior to the development of a distribution plan such that MLC and creditors can take into account the claims in formulating a plan, no prejudice results. Accordingly, Class Plaintiffs' cross-motion is timely.[4]

---

[3] *See, e.g., In re Spring Ford Indus., Inc.*, No. 02-15015, 2004 WL 231010, at *5 (Bankr. E.D. Pa. Jan. 20, 2004) (no prejudice though plan was confirmed and some distributions were made where Debtor was aware of the class claim before formulating the plan, and took it into account in designing the plan); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 63-64 (Bankr. D. Del. 2002) (no prejudice where Debtors had notice of the existence of the class claim before the bar date); *In re Hillsborough Holdings Corp.*, 172 B.R. 108, 110-11 (Bankr. M.D. Fla. 1994) (no prejudice where confirmation was months away and claims litigation was expected to continue beyond confirmation); *In re Drexel Burnham Lambert Grp.*, 148 B.R. 1002, 1008 (S.D.N.Y. 1993) (prejudice where the plan was negotiated, confirmed and distribution had begun before the proof of claim was filed and allowing claim would dilute remaining unpaid claims).

[4] MLC makes a number of overheated and unsubstantiated comments about Class Plaintiffs' misrepresenting case law, including the serious but inaccurate accusation that Class Plaintiffs "*blatantly misrepresented* that the court in *In re United Companies Financial Corp.* certified a class despite the motion for class certification being filed at least nine months after the bar date. " MLC Response at 4, n.3 (citing to 276 B.R. at 607) (emphasis added). MLC erroneously asserts that the court actually denied certification. MLC is clearly wrong as the *United Companies* court unquestionably certified the class under precisely those circumstances. 276 B.R. 368, 376-77 (Bankr. D. Del. 2002) (certifying the class to permit the class proof of claim). Indeed, the page MLC cites to support its allegation appears in neither the *United*

3

5.    MLC's assertion that class treatment is inappropriate because creditors might have to wait longer for distribution rests on the flawed presumption that unliquidated and contingent claims are inferior to other claims. *See* MLC Response ¶ 7. Unquestionably the bankruptcy code is designed to promote broad participation by all creditors in bankruptcy, including holders of contingent and unliquidated claims. *See In re Chateaugay Corp.*, 104 B.R. 626, 631-32 (S.D.N.Y. 1989), *appeal dismissed for lack of jurisdiction*, 930 F.2d 245 (2d Cir. 1991); *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989). "[O]ther creditors have no right to the higher share of the debtor's assets they can achieve by excluding rival creditors." *In re American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir. 1988). The relevant question is not whether there is *any* delay, but whether it is so significant relative to the amount of compensation to the class that it cannot be justified. *See id.* at 491. No doubt other creditors eagerly await their distributions. But Class Plaintiffs with substantial claims, no less creditors here, are also awaiting their day in court and the accountability and compensation that it may bring.

---

*Companies* decision nor, for that matter, in any case addressing class treatment. MLC should be more circumspect before making such a serious charge in court filings.

MLC's various other accusations are no more warranted. For example, MLC claims Class Plaintiffs "mis-cited" *In re First Alliance Mortgage Co.*, 269 B.R. 428 (C.D. Cal. 2001), for the proposition that pre-petition certification is not a prerequisite for class treatment. MLC Response ¶ 25. There the court first analyzed whether class treatment for the *un*certified class was appropriate, finding it was, *before* addressing whether certification requirements were met, rendering the nature of the action as a 23(b)(1) claim irrelevant to the initial discretionary decision to permit the claim despite the lack of pre-petition certification. 269 B.R. at 443-47.

**B. Notice to the Absent Class Members Was Inadequate, Necessitating Class Treatment.[5]**

6.  First, this Court should reject any suggestion by MLC that foreign claimants do not have due process rights to bankruptcy notice. MLC Response ¶ 11. MLC relies entirely on the decision in *Vancouver Women's Health Collective Society v. A.H. Robins*, 820 F.2d 1359, 1363 (4th Cir. 1987), which stated that the "Constitution does not extend its guarantees to nonresident aliens living outside the United States" such that foreign claimants may not challenge the constitutional sufficiency of notice. But no court, bankruptcy or otherwise, in the 23 years since *A.H. Robins* was decided has ever relied on that statement. Moreover, the *A.H. Robins* court *did* engage in a lengthy analysis of the extensive international notice program in that case. *Id.* at 1361-65. That program did not involve paid publication in a handful of sparsely distributed international publications, but instead relied on a broad-based, international, multi-language public relations and outreach campaign involving nearly 6,000 community organizations, every government, and every daily news outlet worldwide. *Id.* Unsurprisingly, the court found that such notice—a far cry from the notice here—met constitutional and statutory standards. *Id.*[6]

---

[5] Plaintiffs rest on their prior briefing regarding the importance of pre-petition certification and only point out here that MLC's assertion that no Second Circuit court has ever permitted class treatment of an uncertified class carries little weight. MLC has presented no Second Circuit decision *denying* class treatment under circumstances comparable to those here. MLC's attempts to distinguish those cases where other courts permitted non-certified classes in bankruptcy, MLC Response ¶¶ 22-25, does not negate the fact that the law is clear that pre-petition certification is a relevant but not dispositive factor. *See* Resp. ¶ 46.

[6] Class Plaintiffs do not assert a comparable program is required; they seek only constitutionally sufficient notice published in a South African national publication of general circulation.

5

7.   Not only have the Supreme Court and Circuit courts found non-resident aliens are entitled to due process in other contexts,[7] bankruptcy courts have required adequate notice to foreign claimants.[8] *See, e.g., New Pentax Film Inc. v. Trans World Airlines Inc.*, 936 F. Supp. 142, 148 & n.1 (S.D.N.Y. 1996) (declining to dismiss late filed claim where foreign claimant residing abroad did not receive adequate notice); *In re Blackwell ex rel I.G. Servs. Ltd.*, 267 B.R. 741, 754 (Bankr. W.D. Tex. 2001) (noting foreign claimants residing in Mexico were entitled to due process protection in U.S. bankruptcy proceeding).

8.   Further, MLC's argument that notice was adequate here amounts to little more than an assertion that *any* publication notice, no matter how unlikely it is to reach unknown creditors and regardless of the circumstances of the case, is sufficient. *See* MLC Response ¶ 14 (discussing futility of publication notice). MLC must resort to this argument because it cannot seriously claim that its notice program was "reasonably calculated" to provide notice to any of the absent class members. The legal fiction of constructive notice may stretch far, but there must be boundaries and MLC has crossed them here. "[P]ublication notice in a bankruptcy case is not

---

[7]   *See, e.g., United States v. Pink,* 315 U.S. 203, 228 (1942) (finding "aliens as well as citizens are entitled to the protection of the Fifth Amendment"); *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489 (1931) (alien corporation was protected by the Fifth Amendment); *Alegria v. United States*, 945 F.2d 1523, 1527 (11th Cir. 1991) (per curiam) (nonresident alien has right to challenge IRS assessment without venue bar because "to hold otherwise would constitute a violation of due process and equal protection"); *Jean v. Nelson*, 727 F.2d 957, 972 (11th Cir.) (noting that "courts have also recognized that aliens can raise constitutional challenges to deprivations of liberty or property outside the context of entry or admission [to the United States], when the plenary authority of the political branches is not implicated"), *r'hrg denied*, 733 F.2d 908 (11th Cir. 1984), *aff'd on other grounds,* 472 U.S. 846 (1985). *Cf. Pfizer, Inc. v. Lord*, 522 F.2d 612, 619-20 (8th Cir. 1975) (noting nonresident aliens may have due process rights to notice and opportunity to participate in or exclude themselves from antitrust litigation against a U.S. company because "when rights of non-residents to property within the United States are adjudicated in U.S. courts, nonresident aliens may well be entitled to due process protections"), *cert. denied*, 424 U.S. 950 (1976).

[8]   Even if foreign claimants lack due process rights, this court retains the discretion under Rule 9014 to permit class treatment under Rule 7023. Fed. R. Bankr. P. 9014.

a mere formality." *Alderwoods v. Garcia*, 420 B.R. 609, 618 (Bankr. S.D. Fla. 2009). And notice that is a "mere gesture" does not suffice. *Mullane v. Cen. Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950). Instead, as MLC itself notes, it is obligated to act reasonably in selecting the means of notice. MLC Response ¶ 13. But "whether a particular method of notice is reasonable depends on the particular circumstances." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988). The method chosen must not be, as here, "substantially *less* likely to bring home notice than other of the feasible and customary substitutes." *Mullane*, 339 U.S. at 315 (emphasis added).

9. Given its knowledge of the claims by the class members, all of whom MLC knew were located in South Africa and some of whom it knew to be former and current employees of its South African operation, MLC cannot credibly contend that publication in *only* international publications targeted at affluent business people was reasonable and not substantially *less* likely to provide notice than publication in even one South African paper of general circulation.[9] *See In re Buttes Bas & Oil Co.*, 182 B.R. 493, 497 (Bankr. S.D. Tex. 1994) (noticed published only in the *International Herald Tribune*—the global edition of the *New York Times*—was insufficient for unknown creditors in California where debtor's operations were located, debtor had previous environmental infractions that gave rise to the claim, and debtor could have published in a California or National paper); *Alderwoods*, 420 B.R. at 622-23 (finding notice in only national publications rather than local South Florida newspapers was insufficient notice to unknown

---

[9] *Castleman v. Liquidating Trustee*, cited by MLC, is inapposite because there the court found publication notice in a local newspaper unnecessary because the debtor had no reason to believe that the plant employees residing there had claims against it since no claims had been filed and it otherwise had no basis to believe any claims were likely. No. 6:06-1077, 2007 WL 2492792 at *1, *8 (N.D.N.Y. Aug. 28, 2007). Here, MLC knew both of the claims by its former South African employees and that those and other claimants were in South Africa.

7

creditors where debtor knew of the problems at its South Florida property that were likely to give rise to claims there). Nor can MLC assert that publication in even one South African publication (local or national) was not a feasible substitute for its international publication. Indeed, it appears that publication of even a *sizable* notice in the *main* body of South Africa's most widely circulated national newspaper—*The Sunday Times*—would have cost less than $10,000, and publication of the same in *The Herald*, the home town newspaper for GM's South African subsidiary, would have cost about $1,000.[10]

### C. Common Questions of Fact and Law Predominate Over Individual Issues.

10.    MLC's argument that common questions do not predominate here is flawed because it ignores that fundamentally this case is about the systematic oppression and abuse of a group of persons based *entirely* on their class status. This systematic oppression of a class of people relied on specific practices—torture, CIDT and extrajudicial killing—to enforce that system common to all class members and which produced a common injury that differs only in the severity of physical and psychological harm. The essential purpose of the system was to oppress black and coloured South Africans and the fundamental question of whether GM's conduct arose to aiding and abetting that system is the predominant issue here that determines the outcome of this litigation and swamps any individual questions regarding injury. Relitigating that core liability question multiple times is inefficient and could result in different outcomes. This is precisely the scenario that class actions were designed to address.

---

[10]    *See Sunday Times*, Rate Card 2010, http://www.pushprint.co.za/common/pdf/sundaytimes_2010.pdf ; *The Herald*, Rate Card 2009, http://www.avusa.co.za/PDFs/3343%20Herald%20Ratecard%202009%20final.pdf. Rates are converted into U.S. dollars based on a conversion rate of 7.4 Rand = $1.00 applicable in September 2009. *See* Federal Reserve Statistical Release, H.10 Foreign Exchange Conversion Rates (Weekly), http://www.federalreserve.gov/releases/h10/Hist/dat00_sf.htm. Estimates are based on an advertisement 5 columns wide by 27 centimeters high.

11. MLC's suggestion that determining the specific factual scenario associated with each instance of abuse by the regime outweighs the overwhelming inquiry of whether GM's conduct constitutes aiding and abetting is undermined by the very case law it cites. MLC Response at 15 n.13 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay*, 382 F.3d at 1255 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)). *Klay v. Humana* concluded that common questions predominated for federal RICO and aiding and abetting claims where the claims do not merely represent "individual allegations [of the violation] lumped together" but instead allege "an official corporate policy or conspiracy that is not simply a piece of the circumstantial evidence being used to support" each separate violation and instead "constitute[s] essential elements" of each plaintiff's claims. 382 F.3d at 1257. Similar to *Klay,* Class Plaintiffs' claim that GM had a purposeful policy to support and sustain the Apartheid system and aided and abetted the crimes occurring under that system, and establishing that fact determines each class member's ability to recover damages.[11] In *Klay*, the "existence of . . . a pattern and practice of aiding and abetting [other conspirators'] violations [was] an essential element of each individual plaintiff's . . . claim[]." *Id.*

12. Here too, whether GM had a pattern and practice of collaborating with apartheid security forces to oppress its employees engaged in unionizing and anti-apartheid activities and of customizing, supplying and servicing security vehicles that were used by apartheid forces to

---

[11] *Klay* itself distinguished the other cases MLC cites at note 13 in its Response, *Rutstein v. Avis Rent-A-Car Systems, Inc.,* 211 F.3d 1228 (11th Cir. 2000) and *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997), because in those cases the requisite *intent* had to be proven as to each individual allegation of discrimination. *Klay*, 382 F.3d at 1256-57. Whether there was a corporate policy was ancillary to each claim. *Id.* at 1257.

9

injure or kill black and coloured South Africans[12] is the overarching question for those subclasses. And whether GM's conduct in collaborating with the apartheid regime makes it liable for apartheid's constituent elements of torture, CIDT and extrajudicial killing—the injuries of the broader class of plaintiffs here[13]—will be determined by whether that conduct rose to the level of aiding and abetting such that GM is liable for the constituent crimes.  As in *Klay*, whether GM engaged in this pattern or practice and whether its conduct arose to aiding and abetting is an essential element of each claim and "constitute[s] the very heart" of the claims here.  *Klay*, 382 F.3d at 1257.  And "even if many plaintiffs' claims require corroboration and individualized consideration, such inquiries are outweighed by the predominating" liability determination.  *Id.* at 1260.  Unquestionably, where a common policy or practice is essential to each claim, common questions predominate over the individual circumstances of each injury.[14]

---

[12]     *See, e.g., Botha* Complaint, Objection at Ex. A, ¶¶ 8, 9 & 153(a).

[13]     *See, e.g., Balintulo Complaint*, Objection at Ex. C, ¶¶ 42, 303-311.

[14]     *See, e.g., Brown v. Kelly*, 2010 WL 2520040, -- F.3d --, at *11-14 (2d Cir. June 24, 2010) (certifying citywide 23(b)(3) class of arrestees for common practice of enforcement of anti-loitering law though individualized issues of liability for some class members would arise because common liability issues were central to each claim); *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 446 (S.D.N.Y. 2007)*(*class certified of psychiatric patients at residential facility who were subject to illegal assault, restraint, punishment and isolation because of defendants policies and failure to train); *Collins v. Olin Corp,* 248 F.R.D. 95, 101-06 (D. Conn. 2008) (class certified of homeowners suffering diminution in value of property, loss of use and enjoyment of property, negligence, public nuisance, and infliction of emotional distress due to hazardous waste contamination by firearm manufacturer); *Koss v. Wackenhut Corp,* 2009 WL 928087, at *11 (S.D.N.Y. March 30, 2009) (class certified of former employees of Wackenhut and two subclasses for defendants' failure to provide  certain ERISA and other employment benefits)*; Dupler v. Costco Wholesale Corp,* 249 F.R.D. 29, 34 (E.D.N.Y. 2008) (class certified of Costco customers subject to company policy of backdating of annual membership renewals resulting in loss of value of full membership); *In re MTBE Prods. Liability Litig.,* 241 F.R.D 435, 447-48 (S.D.N.Y 2007) (certain subclasses certified of homeowners seeking tort damages for contamination of their real property and water sources); *McGee v. Gold*, 2006 WL 2975752, at *5 (D. Vt. Oct. 16, 2006) (classes certified of inmates subjected to constant illumination by state).

13.     *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005), does not provide support for MLC's arguments on causation and predominance. There, because of Sudan's long history of inter-tribal warfare and civil war between the Sudanese government and rebel forces, defendant questioned whether each instance of abuse of persons living in the vicinity of the Talisman operation was the result of a systematic plan to extinguish those persons based on ethnicity, religion, or residence near the protected oil fields. 226 F.R.D. at 461-63. Talisman Energy alleged that the "victimization of civilians was common place in the ongoing struggle for regional power" between the Sudanese government, the Sudan People's Liberation Army, the South Sudan United Movement, and the South Sudan Independence Movement. *Id.* at 462-63. Thus, even after common questions of whether Talisman and the Government jointly planned a military strategy to displace tribal groups forcibly and whether Talisman provided support for that campaign were answered, whether each class member was injured by *government security forces* or its allied militias or instead by the warring factions was an individualized defense. *Id.* at 482. Even assuming *arguendo* that Talisman came to the correct conclusion, MLC has not argued here that the injuries alleged were caused by anyone other than the apartheid security forces. Therefore, here, once the common question of aiding and abetting liability is proven, individual causation issues do not arise.[15]

---

[15]     Importantly, preliminary legal questions as to what, if anything, must be proven to establish GM's liability as to each class member under Class Plaintiffs' legal theory beyond whether GM's conduct amounted to aiding and abetting and the fact of injury by apartheid security forces is a threshold legal question yet to be decided, and uncertainty in that regard is insufficient to defeat class certification now. *See Brown v. Kelly*, 2010 WL 2520040, -- F.3d -- , at *14 (2d Cir. June 24, 2010) (affirming class certification of city-wide class of plaintiffs where a common policy of malicious prosecution was alleged because whether maliciousness must be proven individually is a threshold legal question). Thus, MLC's assertions that, for example, individualized proof that a specific vehicle was used in a particular attack will be required for each plaintiff is unavailing at this stage. MLC Response ¶ 29.

14. And though individual questions of injury-in-fact may arise, that alone is not enough to defeat predominance. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) ("Even if the district court concludes that the issue of injury-in-fact presents individual questions, however, it does not necessarily follow that they predominate over common ones . . . ."). That is especially so here where establishing the fact of injury *at the hands of the apartheid security forces* does not require a detailed and difficult inquiry because the systematic nature of the regime's violent oppression, including specific incidents of violent massacres of innocent civilians and individual instances of victimization by regime security forces is well-established and documented. Once a pattern and practice of GM's collaboration with the apartheid regime as to the abuse of its pro-union and anti-apartheid employees is established, determining whether GM's employees were abused by apartheid forces does not overwhelm the common liability question. Similarly, once it is established that GM vehicles were used by apartheid security forces in violently controlling and suppressing dissent in incidents already well-documented as being perpetrated by the apartheid regime, establishing who the victims of those incidents are will not overwhelm the common liability question. Even if individual questions of injury are significant, the class can be certified for liability issues alone. *See* Fed. R. Civ. P. 23 (c)(4); *Cordes*, 502 F.3d at 108-09.

15. Likewise, MLC's suggestion that any individualized determination of damages defeats certification is unavailing. Individualized damages determinations rarely defeat certification where liability issues can be determined on a classwide basis. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (citing circuit cases). Moreover, in *Visa Check*, the Second Circuit named special devices the courts can use to manage the damages phase including: bifurcation of liability and damages; appointment of a magistrate

judge or special master to preside at individual damage proceedings; decertification of the class after the liability phase; creation of subclasses; and/or alteration of the class. *Id.* at 141.

### D. The Named Plaintiffs Are Typical of the Class.[16]

16. MLC's arguments regarding typicality are simply unavailing: the scope of the class period and disparate instances of alleged violence do not go to typicality. Even *Talisman*, despite its purported difficulties with individualized causation defenses not present here, held typicality and commonality were satisfied. *Talisman*, 226 F.R.D. at 467. And MLC is simply incorrect that case law regarding typicality of classes certified under 23(b)(1) or (2) are inapposite. MLC Response ¶ 35 & n.22. The standards for typicality and commonality under Rule 23(a) are the same for all 23(b) classes. Fed. R. Civ. P. 23(a)(2) & (3).

17. MLC's assertion that typicality is defeated because some plaintiffs have no claims against GM holds no force. MLC simply ignores the definitions of the proposed classes in the action *against GM*. Clearly all the plaintiffs in the *Botha* sub-class of GM employees have a claim against GM. *See Botha Complaint*, Objection at Ex. A, ¶ 89. Similarly all persons who were injured by the use of equipment provided by GM to the South African security forces have claims against GM. *See, e.g.*, *Botha Complaint*, Objection at Ex. A ¶¶ 87, 149-50. Finally, *Balintulo* Plaintiffs allege that GM substantially assisted the South African security forces in

---

[16] MLC's argument on ascertainability is flawed. First, contrary to MLC's claim, cases cited by Class Plaintiffs are not inapposite merely because they are 23(b)(2) actions since ascertainability must be determined for all types of classes. MLC Response ¶ 34. Second, regardless of how MLC attempts to parse the class definitions here, fundamentally, the class members are defined in terms of injury by South African security forces. That establishing injury-in-fact—an element of virtually every type of claim—might ultimately determine who is able to recover damages in a class action does not render a class unascertainable. Otherwise, no class, no matter how it was defined, could be certified. Third, to the extent any class definition overlaps with the merits, merits inquiries relevant to certification requirements are not barred in this Circuit. *See Cordes*, 502 F.3d at 108.

maintaining and enforcing apartheid through campaigns of violence and terror, including committing the crimes of extrajudicial killing, torture and CIDT, and continued to provide assistance for the purpose of facilitating the commission of those crimes. *See, e.g., Balintulo Complaint*, Objection, Ex. C at ¶ 42, 303-311. Thus, despite debtor's assertion to the contrary, all plaintiffs allege harms caused by GM.

## CONCLUSION & REQUEST FOR RELIEF

FOR THE FOREGOING REASONS, Class Plaintiffs respectfully ask this Court to deny MLC's request that it disallow and expunge class proofs of claims 1206/7587 and 10162 and grant Class Plaintiffs' cross-motion for class treatment under Rule 7023, or, in the alternative, order additional and adequate notice to the absent class members.

Dated: July 12, 2010
      New York, New York

Submitted by:

/s/ Michael Hausfeld
Michael Hausfeld
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, D.C. 20006
Tel (202) 540-7200
Fax (202) 540-7201

Steig Olson
**HAUSFELD LLP**
11 Broadway, Suite 615
New York, NY 10004
Tel (212) 830-9850
Fax (212) 480-8560

*Attorneys for Balintulo Plaintiffs*

Diane E. Sammons
**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel (973) 618-0400
Fax (973) 618-9194

Paul L. Hoffman
**SCHONBRUN DESIMONE
SEPLOW HARRIS & HOFFMAN**
723 Ocean Front Walk
Venice, California 90291
Tel (310) 396-0731

Judith Brown Chomsky
**LAW OFFICES OF JUDITH
BROWN CHOMSKY**
P.O. Box 29726
Elkins Park, Pennsylvania 19027
Tel (215) 782-8367

Tyler Giannini
International Human Rights Clinic
Human Rights Program
**HARVARD LAW SCHOOL**
Pound Hall 401
1563 Massachusetts Ave.
Cambridge, Massachusetts 02138
Tel (617) 495-93622

*Attorneys for Ntsebeza (Botha)
Plaintiffs*

4814-5824-9478, v.  1