**HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

## NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF OF CLAIM NO. 44887 AND IMPLEMENTING CLASS SETTLEMENT

PLEASE TAKE NOTICE that upon the annexed Motion, dated July 13, 2010 (the

"**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 23 of the Federal

Rules of Civil Procedure ("**Rule 23**") approving the Agreement Resolving Proof of Claim No.

44887 (the "**Agreement**"), attached to the Motion as **Exhibit "A,"** between the Debtors, class

action plaintiff Donna Soders ("**Soders**"), on behalf of herself and all others similarly situated

(the "**Soders Class**"), and RodaNast P.C. ("**RodaNast**") and implementing the Soders Class

Action Settlement, as defined and as more fully set forth in the Motion, a hearing will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **August 6, 2010 at 9:45 a.m. (Eastern Time),** or as soon

thereafter as counsel may be heard.

    PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn: Ted Stenger);  (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.);  (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.);  (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.);  (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) The Gibson Law Firm, attorneys for The Gibson Law Firm and George and Karen Kairis, 319 West Front Street, Media, Pennsylvania 19063 (Attn: Robert T. Gibson, Esq.); and (xiii) RodaNast, P.C., lead class action attorneys for class action plaintiff Donna Soders and all others similarly situated, 801 Estelle Drive, Lancaster, Pennsylvania 17601 (Attn: Joseph Roda, Esq. and Michelle Burkholder, Esq.), so as to be received no later than **July 30, 2010 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

3

Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
July 13, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

4

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                        :
                Debtors.                :        (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**MOTION OF DEBTORS FOR ENTRY**
**OF ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF OF**
**CLAIM NO. 44887 AND IMPLEMENTING CLASS SETTLEMENT**

# TABLE OF CONTENTS

Page

Relief Requested ............................................................................................................ 1

Preliminary Statement.................................................................................................... 2

Jurisdiction..................................................................................................................... 4

Background ..................................................................................................................... 4

    A.    The Soders Class Action................................................................................ 4

    B.    The Agreement............................................................................................... 9

The Relief Requested Should Be Approved by the
Court Pursuant to Bankruptcy Rule 9019 ..................................................................... 12

The Relief Requested Should Be Approved by the Court
Under Federal Rule 23 ................................................................................................... 14

    (a)    The Soders Class Satisfies Rules 23(a) and 23(b) ................................... 15

    (b)    The Settlement Satisfies Rule 23(e)......................................................... 17

    (c)    The Settlement is Fair and Reasonable to the Soders Class .................... 17

    (d)    No Additional Notice Is Required ........................................................... 19

    (e)    The Award of Attorneys' Fees is Fair and Reasonable ........................... 21

Notice ............................................................................................................................ 22

i

## TABLE OF AUTHORITIES

### <u>CASES</u>

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001)...............................................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..........................................................................................15

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..........................................................................................20

*In re Dow Corning Corp.*,
    198 B.R. 214 (Bankr. E.D. Mich. 1996) .......................................................................13

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ...............................13

*Green v. Am. Express Co.*,
    200 F.R.D. 211 (S.D.N.Y. 2001) ..............................................................................19, 21

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D.Ohio 2007) .........................................................................21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
    (S.D.N.Y. Sept. 29, 2003)............................................................................................15

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)....................................13

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007)..........................................................................................13

*Kromnick v. State Farm Ins. Co.*,
    112 F.R.D. 124 (E.D. Pa. 1986)....................................................................................16

*Lewis v. Ford Motor Co.*,
    685 F. Supp. 2d 557 (W.D. Pa. 2010)...........................................................................16

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................................15

Page

*Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.),*
    313 F.2d 447 (6th Cir. 1963) ........................................................................13

*In re Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993) ....................................................................15

*In re Nazi Era Cases Against German Defendants Litig.,*
    198 F.R.D. 429 (D.N.J. 2000)........................................................................19

*Park v. Thomson Corp.,*
    633 F. Supp. 2d 8 (S.D.N.Y. 2009) ...............................................................12

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.
    Anderson,* 390 U.S. 414 (1968) *reh'd denied,* 391 U.S. 909 (1968) ..................12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    962 F. Supp. 450 (D.N.J. 1997)....................................................................20

*In re Purofied Down Prods. Corp.,*
    150 B.R. 519 (S.D.N.Y. 1993)......................................................................13

*Rosenberg v. XO Comm'n, Inc. (In re XO Comm'n, Inc.),*
    330 B.R. 394 (Bankr. S.D.N.Y. 2005).............................................................19

*Selby v. Principal Mut. Life Ins. Co.,*
    No. 98 Civ. 5283 (RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003).......................21

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham
    Lambert Group, Inc.),* 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ...................12, 13

*In re Visa Check/MasterMoney,*
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd,* 396 F.3d 96 (2d Cir.),
    *cert. denied,* 544 U.S. 1044 (2005). (a) ............................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir.), *cert. denied,* 544 U.S. 1044 (2005)........................14, 15

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983).......................15

*In re Westinghouse Sec. Litig.,*
    218 F. Supp. 2d 657 (W.D. Pa. 2002)............................................................12

Page

*White v. Auerbach,*
    500 F.2d 828 (2d Cir. 1974)............................................................................................12

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)....................................................................................................14

*Wurtzel v. Park Towne Place Assocs. Ltd. P'ship,*
    Nos. 3511, 2002 WL 31487894 (Pa. Com. Pl. Nov. 5, 2002) ...........................................16

## STATUTES/RULES

28 U.S.C. §§ 157................................................................................................................4

28 U.S.C. §§ 1334..............................................................................................................4

Fed. R. Bankr. P. 9019..................................................................................................2, 12

Fed. R. Civ. P. 23 ...............................................................................................2, 14, 16, 17

Pa. R. Civ. P. 1702..........................................................................................................16

Pa. R. Civ. P. 1708..........................................................................................................16

## MISCELLANEOUS

9 Collier on Bankruptcy ¶ 9019.02 ....................................................................................12

William B. Rubenstein, Alba Conte & Herbert Newberg, 4 Newberg on Class Actions §
    11:38 ......................................................................................................................12

William B. Rubenstein, Alba Conte & Herbert Newberg, 4 Newberg on Class Actions §
    11.72.......................................................................................................................19

HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                      :
**In re**                             :        **Chapter 11 Case No.**
                                      :
**MOTORS LIQUIDATION COMPANY, et al.,** :     **09-50026 (REG)**
    **f/k/a General Motors Corp., et al.** :
                                      :
        **Debtors.**         :        **(Jointly Administered)**
                                      :
------------------------------------------------------------x

## MOTION OF DEBTORS FOR ENTRY
## OF ORDER PURSUANT TO FED. R. BANKR. P. 9019
## AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF OF
## CLAIM NO. 44887 AND IMPLEMENTING CLASS SETTLEMENT

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

### Relief Requested

      1.      Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**") and Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), the

Debtors respectfully request entry of that certain Order Pursuant to Fed. R. Bankr. P. 9019 and

Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 44887 and

Implementing Class Settlement (the "**Order**") approving and ratifying that certain agreement

(the "**Agreement**") between class action plaintiff Donna Soders ("**Soders**"), on behalf of herself

and all others similarly situated (the "**Soders Class**"), RodaNast P.C. ("**RodaNast,**") and

together with Soders and the Soders Class, the "**Soder Parties**"), and the Debtors (Soders, the

Soders Class, and RodaNast, together with the Debtors, the "**Parties**"). The Agreement is

attached hereto as **Exhibit "A"** and the Order is attached hereto as **Exhibit "B."**

    2.   Among other things, the Agreement sets forth the proposed settlement

and resolution of Claim No. 44887 (the "**Soders Proof of Claim**"), which is based on a

settlement reached in a class action lawsuit brought by Donna Soders, on behalf of herself and

the Soders Class against General Motors Corporation ("**GM**") on April 26, 2000, in the Court of

Common Pleas, Lancaster County, Pennsylvania (the "**Pennsylvania Court**"), alleging that GM

violated the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.1, *et seq.* (the "**Soders Class

Action**"). Entry of the Order will result in (a) the resolution of approximately $1,281,346 in

claims against the Debtors' estates;[1] (b) the return of $1,281,346 in cash to the Debtors' estate,

which is currently being held in escrow; and (c) the alleviation of the financial burden, time, and

uncertainty associated with litigation of the Soders Proof of Claim and the Soders Class Action.

**Preliminary Statement**

    3.   By this Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr.

P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim No. 44887 and

Implementing Class Settlement (the "**Motion**"), the Debtors seek to implement the Soders Class

Action Settlement previously reached in the Soders Class Action in the Pennsylvania Court, with

---

[1] The Soders Proof of Claim also sought certain coupons for the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC, or Pontiac vehicle from the Debtors' estates.

2

the requested modification contained herein.  The Soders Class has already been certified,

extensive notice was given to the Soders Class, and the Soders Class Action Settlement was

approved by the Pennsylvania Court under the Pennsylvania Rules of Civil Procedure—rules

which are patterned after the Federal Rules of Civil Procedure and are either similar or generally

more rigorous than the Federal Rules.  Specifically the Pennsylvania Court approved the Soders

Class Action Settlement as fair, reasonable, and adequate, and GM transferred $1,281,346 in

escrow to make payment of attorneys' fees, costs, and amounts due under the Soders Class

Action Settlement.  On May 5, 2009, before the Soders Class Action Settlement was finally

effective, an appeal was filed by the Gibson Law Firm ("**Gibson**") (the "**Gibson Appeal**").  A

final determination of the Gibson Appeal could not be made because, on June 1, 2009, certain of

the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**"), which stayed all proceedings related to the Gibson Appeal and the

implementation of the Soders Class Action Settlement.

> 4.      As a result of the commencement of these chapter 11 cases, the Debtors

are unable to provide the original consideration contemplated under the Soders Class Action to

the participating members of the class—coupons to be used toward the purchase or lease of

certain GM vehicles—but the Parties have reached an agreement to provide alternative treatment

that is reasonably equivalent or may be more favorable to the Participating Soders Class

Members.  Moreover, the Agreement will result in a reduction of general unsecured claims

against the Debtors' estates and the return of the escrow money back to the Debtors' estates.

Accordingly, the Debtors respectfully request that this Motion be granted and the Agreement be

implemented.

US_ACTIVE:\43424456\18\72240.0639

### Jurisdiction

5.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**A.    The Soders Class Action**

6.    On April 26, 2000, Soders filed a class action complaint against GM on

behalf of herself and the Soders Class in the Pennsylvania Court, Case No. CI-00-04255,

alleging that GM violated the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.1, *et seq.* (the

"**PBVA**"); a copy of the Complaint is attached hereto as **Exhibit "C."**  In the Soders Class

Action, Soders asserted that GM violated the PBVA due to certain marketing initiatives whereby

GM allegedly added a mandatory assessment of one percent (1%) of the Manufacturer's

Suggested Retail price to the invoice of each vehicle that GM sold to a dealer, which fee Soders

alleged was improperly passed on to consumers and used for the funding of GM advertising

campaigns.

7.    On October 3, 2001, the Pennsylvania Court certified a class in the

Soders Class Action.[2]  A copy of the October 3, 2001 Order certifying the Soders Class is

attached hereto as **Exhibit "D."**

---

[2] The Soders Class included "all persons who purchased at retail from a franchised GM dealer in Pennsylvania a
new vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or
Pontiac Divisions of General Motors Corporation."  The class included "only persons whose franchised GM dealers
previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a)
September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b)
July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1,
1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990 for new vehicles
manufactured or distributed by the Buick Division."  The class included "natural persons and business entities of
any kind," but did not include: "(a) GM employees who purchased vehicles under the GM Employee Purchase
Plans; (b) GM qualified fleet purchasers; (c) government entities; or (d) attorneys of record in the this case."  The
definition of Class agreed upon in the Soders Class Action Settlement differs slightly from this language.  The Class
is defined as "all persons who purchased at retail from a franchised GM dealer in Pennsylvania a new **and not
previously titled** vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile,
Buick or Pontiac Divisions of General Motors Corporation."  The class included "only persons whose franchised

4

8.      The Pennsylvania Court determined that the Soders Class satisfied Pennsylvania Rule of Civil Procedure Rule 1702 ("**Rule 1702**"), because: (i) the Soders Class was so numerous that joinder of all members was impracticable; (ii) there were questions of law or fact common to the Soders Class; (iii) Soders' claim was typical of the claim of the Soders Class members' claims; (iv) Soders would fairly and adequately assert and protect the interests of the Soders Class under the criteria set forth in Pennsylvania Rule of Civil Procedure Rule 1709; and (v) a class action provided a fair and efficient method for adjudication of the controversy under the criteria set forth in Pennsylvania Rule of Civil Procedure Rule 1708.

9.      On October 3, 2001, the Pennsylvania Court also appointed RodaNast as lead counsel for the Soders Class.

10.      On December 15, 2008, after more than nine years of litigation, a settlement was reached in the Soders Class Action (the "**Soders Class Action Settlement**"). The Soders Class Action Settlement provided that all eligible Soders Class members would receive certain rebate certificates in the amount of $200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC, or Pontiac vehicle (the "**Settlement Certificate**"). GM also agreed to separately pay the costs associated with administering the settlement, reimbursement of RodaNast's out-of-pocket costs up to $500,000, and $5,000 to class representative Soders. The Soders Class Action Settlement also provided attorneys' fees of up to $1,886,000 to RodaNast.

---

GM dealers previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990 for new vehicles manufactured or distributed by the Buick Division." The class included "natural persons and business entities of any kind," but did not include: "(a) **persons** who purchased vehicles under the GM Employee Purchase Plans; (b) GM qualified fleet purchasers; (c) government entities; (d) attorneys of record in the this case; **or (e) lessees**." (*See* Dec. 15, 2008 Settlement Agreement, attached hereto as **Exhibit F**) (emphasis added).)

5

11.    On December 19, 2008, the Pennsylvania Court preliminarily approved the Soders Class Action Settlement, set a final fairness hearing, and ordered that notice be given to the Soders Class for their consideration of the Soders Class Action Settlement.

12.    Notice of the proposed Soders Class Action Settlement ("**Notice of Settlement**") was published twice in weekday newspaper editions and was also published once each in the Pennsylvania state editions of Newsweek and People. In addition to notice by publication, the claims administrator also sent direct mail notice to each potential Soders Class member who was either: (i) a recipient of an Absent Class Member Questionnaire in connection with discovery in the Soders Class Action; (ii) made direct contact with RodaNast as class counsel; or (iii) was otherwise identifiable as having a specific interest in the Soders Class Action. A copy of such notice is attached hereto as **Exhibit "E."**

13.    Members of the Soders Class were required to submit a claim form ("**Claim Form**") to obtain the Settlement Certificate. Approximately 1,879 Claim Forms were submitted by Soders Class members (the "**Participating Soders Class Members**"). The Soders Class members were encouraged to submit, and did submit, multiple claims on the same Claims Form. The Garden City Group, Inc. ("**Garden City**") estimates that approximately 3,166 claims were submitted on the 1,879 Claim Forms.[3]

14.    Prior to the final approval of the Soders Class Action Settlement, RodaNast voluntarily reduced its requested attorneys' fees from $1,886,000 to $843,929.37.

15.    On April 26, 2009, Gibson filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of

---

[3] The Parties do not have a complete count of the total number of claims submitted on the 1,879 Claim Forms because the bankruptcy filing stayed Garden City's administration activities before it could fully process the Claims Forms. However, Garden City conducted a sampling of 200 Claim Forms and found 337 claims had been filed on the 200 Claim Forms reviewed. Extrapolating, Garden City determined that there were an average of 1.68 claims per Claim Form, resulting in approximately 3,166 total claims.

the Soders Class, based on, among other things, allegations that the award of attorneys' fees to

RodaNast in the Soders Class Action Settlement was excessive in relation to the consideration

provided to the Soders Class in the Soders Class Action Settlement.

16.    On April 28, 2009, the Pennsylvania Court entered a final judgment

approving the Soders Class Action Settlement as fair, reasonable, and adequate, a copy of such

order is attached as **Exhibit "G."**  Specifically, the Pennsylvania Court determined:

- the Notice of Settlement was made in accordance with the instructions provided by the Pennsylvania Court's Order Setting Fairness Hearing on Proposed Class Action Settlement;

- all Soders Class members were provided with a sufficient opportunity to submit objections to the proposed Soders Class Action Settlement and participate in the final fairness hearing, and all submissions and presentations by members of the Soders Class were given due consideration;

- the Soders Class Action Settlement was fair, reasonable, adequate, and in the best interest of the Soders Class as a whole considering the complexity, expense and likely duration of the litigation; the reaction of the Soders Class to the proposed settlement; the stage of the proceedings and the amount of discovery completed; the risk of establishing liability and damages and maintaining the Soders Class through trial; the ability of GM to withstand a greater judgment; and the range of reasonableness of the Soders Class Action Settlement in light of the best possible recovery and all the attendant risks of litigation;

- the Soders Class Action Settlement was not the product of collusion between the parties and their respective counsel, but was the result of bona fide, good faith, arm's length negotiations between experienced counsel after sufficient discovery was obtained;

- a payment of $5,000 to Soders as class representative was fair and reasonable;

- a fee award of $843,929.37 to RodaNast was fair and reasonable considering the time and efforts reasonably expended by RodaNast in the litigation, the quality of services rendered, the results achieved and benefits conferred upon the Soders Class, the magnitude, complexity and uniqueness of the litigation, and the contingent nature of the fee; and

7

- the requested reimbursement of total costs of $437,416.92 to RodaNast was fair and reasonable.

17.    On or about May 7, 2009, GM deposited $1,281,346 in cash in an account of Carpenter, Lipps & Leland, GM's counsel in the Soders Class Action (the "**Trust Account Deposit**") where the funds remain to date.  The Trust Account Deposit included anticipated payments for:  (i) $843,929.37 in attorneys' fees and (ii) $437,416.92 in costs relating to the Pennsylvania Court's approval of the Soders Class Action.[4]

18.    On May 5, 2009 Gibson filed the Gibson Appeal, appealing the Soders Class Action Settlement.

19.    The commencement of these chapter 11 cases on June 1, 2009, stayed all proceedings relating to the Gibson Appeal and the implementation of the Soders Class Action Settlement.

20.    On September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Bankruptcy Procedure Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof [Docket No. 4079] establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against the Initial Debtors based on prepetition claims.

21.    On November 24, 2009, the Soders Proof of Claim, based on the Soders Class Action Settlement, was filed with this Court, purportedly on behalf of the Soders Class, and assigned claim number 44887.  The Soders Proof of Claim asserted a claim in the amount of (a) $1,281,346, representing payment for: (1) $843,929.37 in attorneys' fees allegedly owed to

---

[4] Notably, the Trust Account Deposit was made less than ninety days prior to Debtors' bankruptcy filing.

8

RodaNast; (2) $437,416.92 in total out-of-pocket costs by RodaNast relating to the Soders Class

Action; and (3) a $5,000 award to Soders individually for her role as representative of the Soders

Class, and (b) coupons to the Soders Class members to be used toward the purchase of new GM

vehicles in an amount not yet determined.

## B.    **The Agreement**

22.    Since the filing of the Soders Proof of Claim, the Parties have engaged

in good-faith, arms'-length negotiations, and, without any admission of liability by any Party,

have reached an agreement to resolve the Soders Proof of Claim and implement the Soders Class

Action Settlement (the "**Settlement**") with this Court's approval, as modified by the Agreement.

23.    Because of the commencement of these chapter 11 cases, the Debtors

are unable to provide the Participating Soders Class Members with the Settlement Certificates,

and accordingly, the Parties request that the Court approve the Agreement to provide, among

other things, the Participating Soders Class Members with the Participating Soders Class

Members Allowed General Unsecured Claim (defined below), a claim that is equivalent to the

approximate value of the Settlement Certificates that would have been provided to the

Participating Soders Class Members under the Soders Class Action Settlement, consideration

that may be more favorable to the Participating Soders Class Members in light of these chapter

11 cases.

24.    Additionally, RodaNast has voluntarily agreed to reduce its attorneys'

fees, further, from $843,929.37 to an allowed general unsecured claim in the amount of

$526,348.

9

25.    Specifically, the salient provisions of the Agreement are summarized as follows:

a.    Subject to and upon execution of the Agreement by the Parties and upon entry of the Order, the Soders Proof of Claim shall be resolved and the Soders Parties shall receive in the aggregate an allowed general unsecured claim against MLC in the amount of $1,522,824.92 (the "**Total Allowed Unsecured Claim**").

b.    The Total Allowed Unsecured Claim is allocated as follows: (i) an allowed general unsecured claim by the Participating Soders Class Members against MLC for $554,050 as class consideration as the distributable share; (ii) an allowed general unsecured claim against MLC by RodaNast for $526,348 for attorneys' fees; (iii) an allowed general unsecured claim against MLC by RodaNast in the amount of $437,416.92 for out-of-pocket costs; and (iv) an allowed general unsecured claim against MLC by Soders for $5,000 for her role as a representative of the Soders Class. The Participating Soders Class Members' portion of the Total Allowed Unsecured Claim will be distributed by RodaNast on a pro rata basis with respect to the total claims submitted by the Participating Soders Class Members (estimated at approximately 3,166 total claims). The $554,050 allowed general unsecured claim to the Participating Soders Class Members was derived by an agreement of the Parties to distribute an allowed general unsecured claim of $175 for each of the 3,166 total estimated claims.

c.    The Parties agree, notwithstanding any challenge to the Agreement or failure of the Agreement to become effective for any reason, that the Soders Proof of Claim shall be estimated to be $1,522,824.92 for all purposes, including for Plan confirmation and distribution purposes. In conjunction with the Agreement, the Parties will ask the Court to enter an Estimation Order estimating the Soders Proof of Claim in the amount of $1,522,824.92 for all purposes, including for Plan confirmation and distribution purposes.

d.    RodaNast shall be authorized to dispose of the Total Allowed Unsecured Claim, or any portion thereof, in its sole reasonable discretion such that he can make the proper pro rata distribution of consideration to the Participating Soders Class Members. RodaNast will bear all costs associated with administration of the Total Allowed Unsecured Claim.

e.    With respect to the Soders Proof of Claim, other than the right to receive distributions on account of the Total Allowed Unsecured

10

Claim under the Plan (defined below), Soders, the Soders Class, and RodaNast and their affiliates, successors and assigns, and their past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys, shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including General Motors Company or its successors in interest (collectively, the "**Debtor Parties**"). With respect to the Soders Proof of Claim, except as set forth in the Agreement, the Soders Parties irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), complaints, grievances, liabilities, obligations, promises, agreements, damages, causes of action, rights, debts, demands, controversies, costs, losses, and expenses (including attorneys' fees and expenses) whatsoever, including, but not limited to, claims under the PBVA, under any municipal, local, state, or federal law, common or statutory, whether known or unknown, and connected with the Agreement and/or the Soders Class Action Settlement against any of the Debtor Parties, and will be barred from asserting any and all claims whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of the Agreement by the Soders Parties.

f.    RodaNast and Soders, as representatives of the Soders Class, acknowledge and agree that the Trust Account Deposit is the sole and exclusive property of the Debtors and agree to take all actions necessary, if any, to release such funds to the Debtors upon the execution of the Agreement.

g.    All distributions on account of the Total Allowed Unsecured Claim shall be in the form set forth in and pursuant to the terms of a confirmed chapter 11 plan or plans in these chapter 11 cases (the "**Plan**").

h.    Upon receipt of such distributions on account of the Total Allowed Unsecured Claim as set forth in the Plan, the Soders Proof of Claim shall be deemed satisfied in full.

i.    Soders, the Soders Class, and/or RodaNast will not make or file any objections to the Plan, nor will Soders, the Soders Class, and/or RodaNast aid, support, or participate in any objections to the Plan.

26.    Additionally, the Debtors and Gibson have resolved the Gibson Appeal and Gibson's Objection to Proof of Claim No. 44887 (Amended) filed with the Court on July 7,

11

2010. As part of this settlement, Gibson will receive an allowed general unsecured claim in the amount of $24,931 (the "**Gibson Fee**") and his client objectors, the Kairises, will receive an allowed general unsecured claim in the amount of $2,771 (the "**Kairis Payment**"). Such Gibson Fee and the Kairis Payment are appropriate based on applicable law. *See White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *see also Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009); *In re Westinghouse Sec. Litig.*, 218 F. Supp. 2d 657, 660 (W.D. Pa. 2002); William B. Rubenstein, Alba Conte & Herbert Newberg, 4 Newberg on Class Actions § 11:38 n. 6.5 (4th ed. 2008).

### The Relief Requested Should Be Approved by the Court Pursuant to Bankruptcy Rule 9019

27.      Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Id.*; *see also* 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505.

28.      Relying on the guiding language of the *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), *reh'd denied*, 391 U.S. 909 (1968), courts in this Circuit have set forth the following factors regarding the reasonableness of such settlements:

    (1)     the probability of success in the litigation;

12

(2)    the difficulties associated with collection;

(3)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(4)    the paramount interests of the creditors.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. *Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). It is the responsibility of the court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *In re Dow Corning Corp.*, 198 B.R. 214, 222 (Bankr. E.D. Mich. 1996). For the reasons set forth below, the Debtors respectfully submit that the Agreement meets this standard.

29.    The Agreement falls well within the range of reasonableness, as it is fair and equitable and in the paramount interest of the Debtors and their creditors. While the Parties dispute factual and legal issues relevant to the disposition of some or all of each other's claims, and, therefore, dispute the probability of success, the Settlement represents a fair compromise of the Soders Proof of Claim. Settlement at this stage avoids the expense, inconvenience, uncertainty, and delay that would be caused by relitigating any of the issues resolved by the Soders Class Action Settlement and further negotiated in the Settlement to the benefit of the Debtors' estates.

13

30.    Further, the Agreement provides for the prompt and efficient resolution of the Soders Proof of Claim for MLC, thereby extinguishing further possible claims and litigation against the Debtors related to the Soders Class Action and the Soders Proof of Claim.

31.    Finally, the Agreement provides for $1,281,346 in cash to be returned to the Debtors' estates.

32.    The Agreement will result in an immediate financial benefit to the Debtors and their estates, while at the same time alleviating the financial burden, time, and uncertainty associated with continued litigation of the Soders Proof of Claim, the Soders Class Action Settlement, and entitlement to the Trust Account Deposit.

33.    The Debtors believe that the Settlement falls well within the range of reasonableness, is in the best interests of the Debtors' estates and their creditors, and should be approved as a sound exercise of the Debtors' business judgment.  Accordingly, the Debtors respectfully request the entry of the proposed Order.

### The Relief Requested Should Be Approved by the Court
### Under Federal Rule 23

34.    The Agreement should also be approved pursuant to Rule 23.

35.    Federal courts have long expressed a preference for the negotiated resolution of litigation. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").  A general policy favoring settlement exists, especially with respect to class actions. *See, e.g., In re AMC Realty Corp.*, 270 B.R. 132, 145-46 (Bankr. S.D.N.Y. 2001) (recognizing that "settlements are favored in federal law and the prompt resolution of claims and disputes makes the compromise of claims of particular importance in the bankruptcy reorganization") (internal quotation marks omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.) ("We are mindful of the

14

'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation

omitted), *cert. denied*, 544 U.S. 1044 (2005); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

1982) ("There are weighty justifications, such as reduction of litigation and related expenses, for

the general policy favoring the settlement of litigation."), *cert. denied*, 464 U.S. 818 (1983).

36.     The standard for reviewing the proposed settlement of a class action in

the Second Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable

and adequate." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006);

*see In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist.

LEXIS 17090, at *9 (S.D.N.Y. Sept. 29, 2003). In assessing a settlement, the court should

neither substitute its judgment for that of the parties who negotiated the settlement, nor conduct a

mini-trial on the merits of the action. *See Weinberger*, 698 F.2d at 74; *In re Milken & Assocs.*

*Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). Recognizing that a settlement represents an

exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a

court should not give "rubber stamp approval" to a settlement, "it must stop short of the detailed

and thorough investigation that it would undertake if it were actually trying the case." *City of*

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *see also In re Visa*

*Check/MasterMoney*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003), *aff'd*, 396 F.3d 96 (2d Cir.),

*cert. denied*, 544 U.S. 1044 (2005).

### (a)    The Soders Class Satisfies Rules 23(a) and 23(b)

37.     As a preliminary matter, the Parties stipulate, solely for the purposes of

settlement, that the Soders Class meets the standards of Rules 23(a) and 23(b). Specifically, the

Parties submit that the Court should adopt the Pennsylvania Court's findings with respect to the

certification of the Soders Class under Pennsylvania Rule of Civil Procedure 1707 and find that

the Soders Class meets the standards of Rule 23.

15

38.     In its October 3, 2001 Order, the Pennsylvania Court found that:

- The Soders Class is so numerous that joinder of all members is impracticable;

- There are questions of law or fact common to the Soders Class;

- Soders' claim, as a representative party, is typical of the claims of the Soders Class Members;

- Soders will fairly and adequately assert and protect the interests of the Soders Class; and

- The Soders Class Action provides a fair and efficient method for adjudication of the controversy.

39.     The Pennsylvania Rules of Civil Procedure (the "**Pennsylvania Rule(s)**") regarding the certification of class actions "were patterned after the Federal Rules of Civil Procedure" and contain criteria either similar to or generally more rigorous than the Federal Rules. *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 128 (E.D. Pa. 1986); *see Lewis v. Ford Motor Co.*, 685 F. Supp. 2d 557, 563 (W.D. Pa. 2010) ("Pennsylvania Rules of Civil Procedure 1701-1716 . . . incorporate criteria essentially identical to those of Federal Rule 23(a)."); *Wurtzel v. Park Towne Place Assocs. Ltd. P'ship*, Nos. 3511, 2002 WL 31487894, at *7 (Pa. Com. Pl. Nov. 5, 2002) ("Since Pennsylvania's rules for class actions are modeled on the federal rules, this analysis of Federal Rule 23 is relevant to Pennsylvania."). More specifically, Pennsylvania Rule 1702 is the equivalent of Rule 23(a) and copies its text verbatim, with the exception of adding one additional requirement (*see* Pa. R. Civ. P. 1702),[5] and Pennsylvania Rule 1708 is the equivalent of Fed. R. Civ. P. 23(b). *See* Explanatory Comments to Pa. R. Civ. P. No. 1708 ("The criteria in subdivisions (1) to (5) of subdivision (a) are taken almost verbatim from Federal Rule 23(b)(1), (2) and (3).").

---

[5] Pennsylvania imposes an additional requirement that the class action provide a fair and efficient method of adjudication under the criteria set forth in Rule 1708. *See* Pa. R. Civ. P. No. 1702.

16

40.        Accordingly, the Court should adopt the findings of the Pennsylvania

Court's October 3, 2001 Order and find that the Soders Class satisfies Rules 23(a) and 23(b)

solely for the purposes of the Settlement.

### (b)    The Settlement Satisfies Rule 23(e)

41.        The Court should further find that the Settlement meets the standards of

Rule 23(e).

42.        First, the Settlement was the result of arms'-length negotiations.  On

April 28, 2009, the Pennsylvania Court previously held that Soders Class Action Settlement was

not the product of collusion between the parties and their respective counsel, but was the result

of bona fide, good faith, arm's-length negotiations between experienced counsel after sufficient

discovery was obtained.  (*See* Final Judgment (Ex. D).)  Further, following the bankruptcy the

Agreement was agreed to only after extensive arms'-length negotiations between the Debtors and

the Soders Parties.

### (c)    The Settlement Is Fair and Reasonable to the Soders Class

43.        Based upon the results of the Parties' arms'-length negotiations and the

review of documentary and statistical evidence reviewed by the Pennsylvania Court in the

Soders Class Action, the Parties believe that the ensuing compromise is fair and reasonable to the

Soders Class such that Rule 23(e) is satisfied.

44.        On April 28, 2009, the Pennsylvania Court issued a final judgment

approving the Soders Class Action Settlement as fair, reasonable, and adequate.  (*See* Final

Judgment (Ex. D).)  Specifically, the Pennsylvania Court held that the Soders Class Action

Settlement was fair, reasonable, adequate, and in the best interest of the Soders Class as a whole

considering the complexity, expense, and likely duration of the litigation; the reaction of the

Soders Class to the proposed settlement; the stage of the proceedings and the amount of

US_ACTIVE:\43424456\18\72240.0639

discovery completed; the risk of establishing liability and damages and maintaining the class

through trial; the ability of GM to withstand a greater judgment; and the range of reasonableness

of the settlement in light of the best possible recovery and all the attendant risks of litigation.

(*Id.*)

45.     As described above, the Soders Class Action Settlement provided that

all Participating Soders Class Members would receive Settlement Certificates in the amount of

$200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC, or Pontiac

vehicle.  GM also agreed to separately pay the costs associated with administering the settlement,

reimbursement for RodaNast's out-of-pocket costs up to $500,000, $5,000 to class representative

Soders, and attorneys' fees of $843,929.31 to RodaNast.

46.     As stated above, Debtors are unable to provide the Participating Soders

Class Members with the Settlement Certificates.  In other words, the Debtors cannot provide the

class consideration set forth in the Soders Class Action Settlement.  Accordingly, the Parties

request that the Court now approve the Agreement—the key modification being that the

Agreement provides the Participating Soders Class Members with the Participating Soders Class

Members Allowed General Unsecured Claim in the amount of $554,050, as an alternative award

that is perhaps more favorable to the Participating Soders Class Members in light of these

chapter 11 cases.

47.     Further, the Agreement provides for RodaNast to reduce its attorneys'

fees, *again*, from $843,929.37 to a general allowed unsecured claim in the amount of $526,348,

which is also a more favorable result for the Debtors.

18

48.      Finally, having RodaNast administer the Settlement as a pro rata

disbursement to the Participating Soders Class Members is a benefit to the estate and does not

negatively impact the Soders Class.

### (d)  No Additional Notice Is Required

49.      The Notice of Settlement adopted and approved by the Parties and the

Pennsylvania Court was in full compliance with the notice requirements of Due Process, federal

law, the Constitution of the United States, and any other applicable law, and this Court need not

require any new notice to be given to the Soders Class. *See Green v. Am. Express Co.*, 200

F.R.D. 211, 212 (S.D.N.Y. 2001); *In re Nazi Era Cases Against German Defendants Litig.*, 198

F.R.D. 429, 441 (D.N.J. 2000); Newberg on Class Actions § 11.72.

50.      In *Rosenberg v. XO Communications, Inc. (In re XO Communications,*

*Inc.)*, the Southern District of New York Bankruptcy Court approved a stipulation that the debtor

need not provide new notice to all potential class action members of a Rule 9019 motion settling

the class action when notice of class action settlement had already been provided in the state

court settlement.  *See* 330 B.R. 394, 409-410 (Bankr. S.D.N.Y. 2005).

51.      Here, the Pennsylvania Court previously ordered that the Notice of

Settlement be effected as follows: (a) notice publication twice in weekday newspaper editions

and once each in the Pennsylvania state editions of *Newsweek* and *People* and (b) direct mail

notice to each potential Soders Class member who was either (i) a recipient of an Absent Class

Member Questionnaire in connection with discovery in the Soders Class Action; (ii) made direct

contact with RodaNast as class counsel; or (iii) was otherwise identifiable as having a specific

interest in the Soders Class Action.

52.      Further, the Pennsylvania Court held that the Notice of Settlement

informed the Soders Class members of the pendency of the action, the relevant terms of the

19

proposed settlement, their options in connection with the action and settlement, and their

opportunity to present objections.

      53.     On April 28, 2009, the Pennsylvania Court determined that the Notice

of Settlement had been provided in accordance with the instructions contained in the

Pennsylvania Court's Order Setting Fairness Hearing on Proposed Class Action Settlement and

that all Soders Class members were provided with a sufficient opportunity to submit objections

to the proposed Soders Class Action Settlement and participate in the final fairness hearing, and

all submissions and presentations by members of the Soders Class were given due consideration.

(*See* Final Judgment (Ex. D).)

      54.     This Court should also find that the Notice of Settlement was in full

compliance with the notice requirements of Due Process, federal law, the Constitution of the

United States, and all other applicable law.

      55.     Further, the changes to the Soders Class Action Settlement that the

Parties agreed to in order to implement the Soders Class Action Settlement after GM's

bankruptcy do not require that any new or additional notice be given, particularly, whereas here,

the changes resulted in terms that could result in *more favorable* class consideration. *See In re*

*Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 473 n. 10 (D.N.J. 1997)

("Class members have already received adequate notice both of the pendency of this class action

and of the Proposed Settlement.  Class members need not be informed of the Final

Enhancements to the settlement because the Proposed Settlement is only more valuable with

these changes."); *cf. Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("We

conclude that there was no abuse of discretion in the district court's refusal to provide a second

opt-out period when the terms for nonsettling parties improved.").

56.     Moreover, requiring the Parties to issue new notice at this juncture would result in the Agreement being void. Specifically, the Debtors have not agreed to pay for any further notice to the Soders Class; in fact the Agreement will be void if any further notice is required by the Court. Additionally, the Debtors have already paid for notice to the Soders Class, at a cost of approximately $437,416.92. In these circumstances, additional notice should not be required. *See Green,* 200 F.R.D. at 213 (ordering that "no notice be served when the cost of notice, to say nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement agreement that the parties have presented to this Court"); *cf. Hainey v. Parrott,* 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007) ("Furthermore, establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution.").

57.     Finally, there is no evidence of any collusion between the Parties to the Agreement, further indicating that no additional notice is required. *See Green,* 200 F.R.D. at 213 (ordering no notice of settlement be given when "[f]irst, and most significantly, there is no evidence of collusion between the parties"); *Selby v. Principal Mut. Life Ins. Co.,* No. 98 Civ. 5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (ordering no notice of settlement be given "where is no evidence of collusion between the parties, and the settlement negotiations were conducted at arms-length").

58.     As such, this Court should find that the dissemination of the Notice of Settlement satisfied the requirements of Rule 23(e) and Due Process, and no new notice need be given regarding the Agreement.

### (e)    The Award of Attorneys' Fees is Fair and Reasonable

59.     Finally, the attorneys' fee award of a general allowed unsecured claim in the amount of $526,348 to RodaNast is fair and reasonable.

21

60.    On April 28, 2009, the Pennsylvania Court held that the fee award of

$843,929.37 to RodaNast was fair and reasonable considering the time and efforts reasonably

expended by RodaNast in the litigation, the quality of services rendered, the results achieved and

benefits conferred upon the Soders Class, the magnitude, complexity, and uniqueness of the

litigation, and the contingent nature of the fee. (*See* 4/28/2009 Order (Ex. D).)  In doing so, the

Pennsylvania Court approved the use of the lodestar method to determine the attorneys' fees

award in the Soders Class Action.  The Pennsylvania Court noted that RodaNast had participated

in nine years of hard-fought litigation with GM and that RodaNast's voluntary reduction of the

award of attorneys' fees from $1,866,000 to $843,929.37, resulted in a blended hourly rate of

only $134.

61.    This Court should also find that the fee award to RodaNast of a general

allowed unsecured claim in the amount of $526,348 is fair and reasonable.  The RodaNast fee

award has been reduced, again, to from $843,929.37 in cash to a general unsecured claim of

$526,348.

62.    Further, Gibson's objection to the fee award to RodaNast was examined

and overruled by the Pennsylvania Court.

### Notice

63.    Notice of this Motion has been provided to (i) RodaNast, P.C., attorneys

for Soders and the Soders Class, 801 Estelle Drive, Lancaster, Pennsylvania 17601 (Attn. Joseph

F. Roda, Esq. and Michele S. Burkholder, Esq.);  (ii) The Gibson Law Firm, attorneys for The

Gibson Law Firm and George and Karen Kairis, 219 West Front Street, Media, Pennsylvania

19063 (Attn. Robert T. Gibson, Esq.);  (iii) parties in interest in accordance with that certain

Order pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and

9019(b) Authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish

22

Procedures for Settling Certain Claims, dated October 6, 2009; and (iv) all Participating Soders

Class Members.  The Debtors submit that such notice is sufficient and no other or further notice

need be provided.

    64.   No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

    WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
   July 13, 2010

           /s/ Joseph H. Smolinsky_____
           Harvey R. Miller
           Stephen Karotkin
           Joseph H. Smolinsky
           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

US_ACTIVE:\43424456\18\72240.0639

# EXHIBIT A

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                          :
**In re**                                 :    **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,* :    **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.* :
                                          :
                **Debtors.**              :    **(Jointly Administered)**
                                          :
------------------------------------------------------------x

## AGREEMENT RESOLVING PROOF OF CLAIM NO. 44887
## AND IMPLEMENTING CLASS SETTLEMENT

This Agreement Resolving Proof of Claim No. 44887 and Implementing Class Settlement (the "Agreement") is entered into as of [   ], 2010 (the "Effective Date") by and among Motors Liquidation Company ("MLC") and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), RodaNast, P.C. ("RodaNast"), and Plaintiff Donna Soders ("Soders"), on behalf of herself and the Soders Class (defined below) (Soders, together with RodaNast and the Debtors, collectively, the "Parties").

WHEREAS Soders filed a class action complaint on behalf of herself and the Soders Class against General Motors Corporation ("GM") on April 26, 2000, in the Court of Common Pleas, Lancaster County, Pennsylvania (the "Pennsylvania Court"), Case No. CI-00-04255, alleging that GM violated the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.1, *et seq.* (the "Soders Class Action"), a copy of which is attached as Exhibit "A";

WHEREAS on October 3, 2001, the Pennsylvania Court certified a class in the Soders Class Action. The class includes "all persons who purchased at retail from a franchised GM dealer in Pennsylvania a new vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac Divisions of General Motors Corporation." The class includes "only persons whose franchised GM dealers previously purchased the new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a) September 1,

1988, for new vehicles manufactured or distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990 for new vehicles manufactured or distributed by the Buick Division." The class includes "natural persons and business entities of any kind, but does not include: (a) GM employees who purchased vehicles under the GM Employee Purchase Plans; (b) GM qualified fleet purchasers; (c) government entities; or (d) attorneys of record in this case" (the "Soders Class"). A copy of the October 3, 2001 Order certifying the Soders Class is attached hereto as Exhibit "B";

WHEREAS the Pennsylvania Court determined that the Soders Class satisfied Pennsylvania Rule of Civil Procedure Rule 1702 ("Rule 1702"), namely that: (a) the Soders Class was so numerous that joinder of all members was impracticable; (b) there were questions of law or fact common to the Soders Class; (c) Soders' claim was typical of the claim of the Soders Class members; (d) Soders would fairly and adequately assert and protect the interests of the Soders Class under the criteria set forth in Pennsylvania Rule of Civil Procedure Rule 1709; and (e) a class action provided a fair and efficient method for adjudication of the controversy under the criteria set forth in Pennsylvania Rule of Civil Procedure Rule 1708;

WHEREAS on October 3, 2001, the Pennsylvania Court also appointed RodaNast as lead counsel for the Soders Class;

WHEREAS, after more than seven years of litigation, a settlement was reached in the Soders Class Action on December 15, 2008 the ("Soders Class Action Settlement"). The Soders Class Action Settlement provided that all eligible class members who accurately completed and timely returned a claim form would receive certain rebate certificates in the amount of $200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC, or Pontiac vehicle ("Settlement Certificate"). GM also agreed to separately pay the costs associated with administering the settlement, reimbursement for attorneys' out-of-pocket costs up to $500,000, and $5,000 to class representative Soders. The Soders Class Action Settlement also provided attorneys' fees of up to $1,886,000 to RodaNast;

WHEREAS on December 19, 2008, the Pennsylvania Court preliminarily approved the Soders Class Action Settlement, set a final fairness hearing, and ordered that notice be given to the Soders Class for their consideration of the Soders Class Action Settlement;

WHEREAS notice of the proposed Soders Class Action Settlement ("Notice of Settlement") was published twice in weekday newspaper editions and was also published once each in the Pennsylvania state editions of *Newsweek* and *People*. In addition to notice by publication, the claims administrator also sent direct mail notice to each potential Soders Class member who was either (i) a recipient of an Absent Class Member Questionnaire in connection with discovery in the Soders Class Action; (ii) made direct contact with RodaNast as class counsel; or (iii) was otherwise identifiable as having a specific interest in the Soders Class Action, a copy of such notice is attached hereto as Exhibit "C";

WHEREAS, as described in the October 3, 2001 Order, the Soders Class Members were required to timely submit a claim form ("Claim Form") to obtain the Settlement

Certificate. Approximately 1,879 Claim Forms were timely submitted by the Soders Class members (the "Participating Soders Class Members"). Certain of the Participating Soders Class Members submitted multiple claims on the same form. Therefore, Garden City Group ("Garden City") estimates that approximately 3,166 claims were submitted;

WHEREAS prior to the final approval of the Soders Class Action Settlement, RodaNast voluntarily reduced its requested attorneys' fees to $843,929.31;

WHEREAS on April 26, 2009, the Gibson Law Firm ("Gibson") filed an objection to the settlement in the trial court, purportedly on behalf of Karen and George Kairis, who allegedly were members of the Soders Class, based on, among other things, allegations that the award of attorneys' fees to RodaNast was excessive in relation to the class consideration;

WHEREAS a final judgment approving the Soders Class Action Settlement as fair, reasonable, and adequate was entered by the Pennsylvania Court on April 28, 2009, a copy of which is attached as Exhibit "D;"

WHEREAS the Pennsylvania Court determined:

- the Notice of Settlement was made in accordance with the instructions provided by the Pennsylvania Court's Order Setting Fairness Hearing on Proposed Class Action Settlement, attached hereto as Exhibit "E";

- all Soders Class members were provided with a sufficient opportunity to submit objections to the proposed Soders Class Action Settlement and participate in the final fairness hearing, and all submissions and presentations by members of the Soders Class were given due consideration;

- the Soders Class Action Settlement was fair, reasonable, adequate, and in the best interest of the Soders Class as a whole considering the complexity, expense and likely duration of the litigation; the reaction of the Soders Class to the proposed settlement; the stage of the proceedings and the amount of discovery completed; the risk of establishing liability and damages and maintaining the class through trial; the ability of GM to withstand a greater judgment; and the range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation;

- the Soders Class Action Settlement was not the product of collusion between the parties and their respective counsel, but was the result of bona fide, good faith, arm's length negotiations between experienced counsel after sufficient discovery was obtained;

- a payment of $5,000 to Soders as class representative was fair and reasonable;

- a fee award of $843,929.37 to RodaNast was fair and reasonable considering the time and efforts reasonably expended by the attorneys in the litigation, the quality of services rendered, the results achieved and benefits conferred upon the Soders Class, the magnitude, complexity and uniqueness of the litigation, and the contingent nature of the fee; and

- the requested reimbursement of total costs of $437,416.92 to RodaNast was fair and reasonable;

WHEREAS on or about May 7, 2009, GM deposited $1,286,346.00 in an account of Carpenter, Lipps & Leland, GM's counsel in the Soders Class Action (the "Trust Account Deposit"). The Trust Account Deposit included anticipated payments for: (1) $843,929.37 in attorneys' fees and (2) $437,416.92 in costs relating to the Soders Class Action;

WHEREAS on May 5, 2010 Gibson filed an appeal of the Soders Class Action Settlement (the "Gibson Appeal");

WHEREAS, on June 1, 2009, certain of the Debtors, including GM (the "Initial Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 09-50026 (REG). The bankruptcy stayed all proceedings relating to the Gibson Appeal and the implementation of the Soders Class Action Settlement[1];

WHEREAS, The Trust Account Deposit was made less than ninety days prior to Debtors' bankruptcy filing.

WHEREAS, on September 16, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against the Initial Debtors based on prepetition claims;

WHEREAS on November 24, 2009 a proof of claim based on the Soders Class Action Settlement was filed with this Court on behalf of the Soders Class and assigned claim number 44887 (the "Soders Proof of Claim") asserting a claim in the amount of (a) $1,286,346.00, representing payment for: (1) $843,929.37 in attorneys' fees allegedly owed to RodaNast; (2) $437,416.92 in total out-of-pocket costs by RodaNast relating to the Soders Class Action; and (3) a $5,000.00 award to Soders individually for her role as representative of

---

[1] As discussed further in the Motion (as defined below), the Debtors and Gibson have resolved the Gibson Appeal and Gibson's Objection to Proof of Claim No. 44887 (Amended) filed in the Court on July 7, 2010. As part of this settlement, Gibson will receive an allowed general unsecured claim in the amount of $24,931 (the "**Gibson Fee**") and his client objectors, the Kairises, will receive an allowed general unsecured claim in the amount of $2,771 (the "**Kairis Payment**").

the Soders Class Action, and (b) coupons to the Soders Class members to be used toward the purchase of new GM vehicles in an amount not yet determined (the "Claim");

WHEREAS due to GM's bankruptcy, Debtors are unable to provide the Participating Soders Class Members with the Settlement Certificates, and accordingly, the Parties request that the Court approve this Agreement to provide the Participating Soders Class Members with the Participating Soders Class Members Allowed General Unsecured Claim (defined below), a claim that is equivalent to the approximate value of the Settlement Certificates and that is more favorable to the Participating Soders Class Members than the Settlement Coupons in light of GM's bankruptcy;

WHEREAS RodaNast has voluntarily agreed to reduce its attorneys' fees, further, from $843,929.37 to an allowed general unsecured claim in the amount of $526,348 in light of GM's bankruptcy to implement the Soders Class Action Settlement;

WHEREAS after good-faith, arms' length negotiations, the Parties have reached an agreement to resolve the Soders Proof of Claim and implement the Soders Class Action Settlement (the "Settlement");

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by the Parties that:

1.     The Parties will jointly seek Court approval of this Agreement and seek to secure any factual findings or legal conclusions necessary to effectuate the purposes and goals of this Agreement and final approval thereof. In particular, the Parties will jointly file a Motion for Rule 9019 Settlement Approval to Approve the Allowed Claim and Setting a Date for a Hearing ("Motion"). The Motion will contain a stipulation that under the terms of this Agreement, the only relief sought by the Soders Class is the Total Allowed Unsecured Claim (as defined below) and that no other claims or amounts are sought from Debtors or asserted by the Soders Parties (as defined below) against Debtors. The Motion will contain a stipulation by the Parties that, for purposes of the Court approving this Agreement only, the Parties acknowledge and stipulate to the validity of the Soders Class's certification in the Soders Class Action, that the Court, for purposes of granting the Motion may take judicial notice of the October 3, 2001 order issued in the Soders Class Action certifying the Soders Class under Rule 1702, and that the Court, in considering the Motion and implementation of the Soders Class Action Settlement, need only address the class-action settlement factors addressed in Federal Rule Civil Procedure 23(e) ("Rule 23(e)"). Specifically, the Parties agree to request the Court adopt the Notice of Settlement in the Soders Class Action as sufficient under Rule 23(e) and find that it is not necessary to provide any further notice to the Soders Class. Since the Court previously provided notice to the Soders Class and the Debtors have agreed (as part of this Agreement) to pay the costs associated with such prior notice (as an allowed general unsecured claim in the amount of $437,416.92 as set forth below), the Soders Parties hereby acknowledge and agree that the Debtors shall not be responsible for any costs related to any further notice that the Court may order in connection with the implementation of this Agreement. The Parties further acknowledge and agree that, in the unlikely event that the Court requires any further notice to the Soders Class, this Agreement shall be void and the Parties shall no longer be bound by this Agreement. It is acknowledged by the Parties that the Debtors' agreement not to challenge

certification or RodaNast's authority to proceed under Rule 7023 of the Federal Rules of Bankruptcy Procedure to file the Proof of Claim as class counsel is based solely on the unique facts and circumstances of this particular Claim.

2.    The Parties will jointly request that a hearing on the Motion be held before the Court to determine whether this Agreement should be approved.

3.    This Agreement is subject to and shall be binding on the Parties only upon Court approval. "Court Approval" shall mean the entry by the Court in *In re Motors Liquidation Company, et al.*, Chapter 11 Case No. 09-50026 (REG), after notice and a hearing, of an order approving this Agreement (the "Court Order"). "Court Approval Date" shall mean the date upon which the Court Order becomes Final (as defined below). In the event Court Approval is not granted or similar relief is not otherwise provided by the Court or in the event that the Court Approval Date does not occur, this Agreement shall be deemed to be null and void and no Party shall have any obligations to another Party arising out of this Agreement, save and except for the obligations and/or provisions set forth in Paragraphs 10, 11, 13, 15, 17, and 18 hereof, which provisions are intended to survive the expiration or earlier termination of this Agreement. "Final" shall mean that the Court Order has been entered by the Court and (i) the time to appeal or petition for certiorari has expired and no timely appeal or petition for certiorari shall then be pending, or (ii) if a timely appeal or writ of certiorari thereof has been sought, that the Court Order shall have been affirmed by the highest court to which such Court Order was appealed, or certiorari shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no material modification of such Court Order, and the time to take any further appeal, petition for certiorari, or move for modification of such Court Order, or move for reargument or rehearing, or move for a new trial or to amend the judgment under Rule 59 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, may be filed with respect to such Court Order shall not cause such Court Order not to be Final.

4.    Subject to and upon execution by all Parties to this Agreement and upon the Court Approval Date, the Soders Proof of Claim shall be treated as an allowed general unsecured claim against MLC in the amount of $1,522,824.92 (the "Total Allowed Unsecured Claim").

5.    The Total Allowed Unsecured Claim shall constitute, in the aggregate: (i) an allowed general unsecured claim by the Participating Soders Class Members against MLC for $554,050 ("Participating Soders Class Members Allowed General Unsecured Claim")[2]; (ii) an allowed general unsecured claim against MLC by RodaNast in the amount of $526,348 for class counsel in attorneys' fees; (iii) an allowed general unsecured claim against MLC by RodaNast in the amount of $437,416.92 for out-of-pocket costs; and (iv) an allowed general unsecured claim against MLC by Soders in the amount of $5,000 for her role as representative of the Soders

---

[2] The Participating Soders Class Members' Allowed General Unsecured Claim will be distributed pro rata with respect to the total claims submitted by the Participating Soders Class (estimated to be approximately 3,166 claims).

Class. Regardless of any challenge to this Agreement or the failure of this Agreement to become effective the Parties hereby agree that the Soders Proof of Claim shall be estimated to be $1,522,824.92 for all purposes, including for Plan confirmation and distribution purposes. The Parties further agree that they will seek an order permitting RodaNast to sell the Total Allowed Unsecured Claim and make distributions to the Participating Class Members as provided in this Paragraph 5.

6.    All distributions on account of the Total Allowed Unsecured Claim shall be in the form set forth in and pursuant to the terms of a confirmed chapter 11 plan or plans in these chapter 11 cases (the "Plan").

7.    Upon receipt of such distributions on account of the Total Allowed Soders Unsecured Claim as set forth in the Plan, (i) the Claim shall be deemed satisfied in full, and the Soders Proof of Claim is deemed satisfied and expunged; and (ii) the Soders Parties (as defined below) will move the Pennsylvania Court for entry of judgment dismissing with prejudice the Claim against the Debtor Parties in the Soders Class Action.

8.    RodaNast and Soders, as a representative of the Soders Class, hereby acknowledge and agree that the Trust Account Deposit is the sole and exclusive property of the Debtors, and RodaNast and Soders hereby agree that they shall take all actions necessary, if any, to release such funds to the Debtors upon execution of this Agreement.

9.    With respect to the Soders Proof of Claim, other than the right to receive distributions on account of the Total Allowed Unsecured Claim under the Plan, Soders, the Soders Class, and RodaNast and their affiliates, successors and assigns, and their past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Soders Parties"), shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest ("New GM") (collectively, the "Debtor Parties"). With respect to the Claim, except as set forth in this Agreement, the Soders Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), complaints, grievances, liabilities, obligations, promises, agreements, damages, causes of action, rights, debts, demands, controversies, costs, losses, and expenses (including attorneys' fees and expenses) whatsoever, including but not limited to claims under the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.1, *et seq.*, under any municipal, local, state, or federal law, common or statutory, whether known or unknown, and connected with this Agreement and/or the Soders Class Action Settlement against any of the Debtor Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Agreement by the Soders Parties. Nothing herein shall be construed as a release or waiver of any Party's obligations under this Agreement. The Soders Parties fully understand that the facts upon which the Agreement are based may hereafter be other than or different from facts now believed by either Party to be true, expressly accept and assume the risks of such possible differences in facts, and agree that this Agreement shall remain effective notwithstanding any such differences in facts.

10.    By executing this Agreement, the Parties acknowledge that they (a) are not

relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (b) have made their own investigation of the facts and are relying solely upon their own knowledge and the advice of their own legal counsel; (c) knowingly waive any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown; and (d) are entering into this Agreement voluntarily, of their own free will, and without any coercion, undue influence, threat, or intimidation of any kind or type whatsoever. The Parties stipulate that each Party is relying upon these representations and warranties in entering into this Agreement. The representations and warranties contained in this Paragraph 10 shall survive the execution of this Agreement indefinitely.

11.    By entering into this Agreement, the Parties do not admit, and specifically deny, any violation of any contract, municipal, local, state, or federal law, common or statutory. Neither the execution of this Agreement nor compliance with its terms, nor the consideration provided for herein shall constitute or be construed as an admission by any Party (or any Party's agents, representatives, attorneys, or employers) of any fault, wrongdoing, or liability whatsoever, and the Parties acknowledge that all such liability is expressly denied by the Debtors. This Agreement has been entered into in release and compromise of claims as stated herein and to avoid the expense and burden of litigation.

12.    If any provision or term of this Agreement, other than those set forth in Paragraphs 8 and 9 above, is held to be illegal, invalid, or unenforceable, such provision or term shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision or term there shall be added automatically as a part of this Agreement another provision or term as similar to the illegal, invalid, or unenforceable provision as may be possible and that is legal, valid, and enforceable.

13.    As a condition precedent to any obligations or liabilities of the Debtor Parties, Soders expressly represents and warrants to the Debtor Parties that (a) she is the lawful owner of certain of the claims and the potential claims released in this Agreement and release; (b) she has full capacity and authority to settle, compromise, and release the Soders Class claims and potential claims and to enter into this Agreement on behalf of the Soders Class; (c) no other person or entity has acquired or has been assigned, or will in the future acquire or have any right to assert, against any of the Debtor Parties any portion of the Soders Class Action claims or any other potential claims released in this Agreement; and (d) she knows of no other person or entity that intends to assert a claim by, through, under, or on behalf of any of the Soders Parties. The representations and warranties contained in this Paragraph 13 shall survive the execution of this Agreement indefinitely. As a condition precedent to any obligations or liabilities of the Debtor Parties, RodaNast expressly represents and warrants to the Debtor Parties that (a) it is the lawful owner of the certain of the claims and the potential claims released in this Agreement and release; (b) it has full capacity and authority to settle, compromise, and release all claims and potential claims against the Debtor Parties and to enter into this Agreement; (c) no other person or entity has acquired or has been assigned, or will in the future acquire or have any right to

assert, against any of the Debtor Parties any portion of the Soders Class Action claims or any other potential claims released by RodaNast in this Agreement; and (d) it knows of no other person or entity that intends to assert a claim by, through, under, or on behalf of any of the Soders Parties or RodaNast. The representations and warranties contained in this Paragraph 13 shall survive the execution of this Agreement indefinitely.

14.    This Agreement, which expressly incorporates the Soders Class Action Settlement (as modified herein), contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto. This Agreement is subject in all respects to Creditor Committee Consent, and if such consent is not obtained by the Debtors, then the Debtors may determine, in their sole discretion, whether to proceed forward with seeking Court approval of the Agreement or abandon the Agreement.

15.    This Agreement may not be modified other than by signed writing executed by the Parties or by order of the Court.

16.    Each person who executes this Agreement represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Agreement.

17.    This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Agreement to present any copy, copies, or facsimiles signed by the Parties hereto.

18.    This Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. The Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Agreement.

19.    Soders and RodaNast agree that they will not make or file any objections to the Plan, nor will Soders or RodaNast aid, support, or participate in the filing of any objection to the Plan.

20.    Each of the Parties understands, agrees, and acknowledges that all of the Parties shall be deemed to be the drafters of this Agreement and any ambiguity in or dispute regarding the interpretation of this Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party that causes the uncertainty to exist or against any party as the drafter.

21.    If notice need be given to the Parties for the purposes of this Agreement, any performance thereunder, or any motions or orders related to the Agreement, under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or otherwise, notice shall be transmitted as follows:

If to the Soders Parties, delivered or faxed to:

Joseph F. Roda
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA  17601

If to Debtors, delivered or faxed to:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinksy
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York New York 10153

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS AGREEMENT.**

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]**

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS: | DONNA SODERS, ON BEHALF OF HERSELF AND THE SODERS CLASS |
|---|---|
| By: _Adrianne J. Basle_ | By: _____ |
| Print Name: _Adrianne J M Basle_ | Print Name: _____ |
| Title: _Vice President_ | Title: _____ |
| _July 13 2010_ | |
| Dated: ___, 2010 | Dated: ___, 2010 |

| RODANAST, P.C. |
|---|
| By: _____ |
| Print Name: _____ |
| Title: _____ |
| Dated: ___, 2010 |

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | DONNA SODERS, ON BEHALF OF HERSELF AND THE SODERS CLASS |
|---|---|
| By: _____ | By: Donna m Soders |
| Print Name: _____ | Print Name: Donna M. Soders |
| Title: _____ | Title: _____ |
| Dated: ___, 2010 | Dated: 7/13, 2010 |

| RODANAST, P.C. |
|---|
| By: _Joseph Roda_ |
| Print Name: _Joseph Roda_ |
| Title: _President_ |
| Dated: 7/13, 2010 |

US_ACTIVE\M243241\\N6\072240.0639

11