# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| DONNA SODERS, on behalf of herself and all others similarly situated, | : | No. CI-00-04255 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS CORPORATION, | : | CLASS ACTION |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Donna Soders, on behalf of herself and a class of all others similarly situated, brings this action for damages under the Pennsylvania Board of Vehicles Act, 63 P.S. §§ 818.1 et seq., demands a trial by jury, and in support hereof avers as follows:

### The Parties

1.    Plaintiff, Donna Soders, is an adult individual, residing at 709 East Chestnut Street, Lancaster, Pennsylvania 17602.

2.    Defendant, General Motors Corporation ("GM"), is a Delaware corporation that is qualified to do and does do business throughout the Commonwealth of Pennsylvania, regularly transacts business in Lancaster County, and maintains its registered office in the Commonwealth of Pennsylvania, c/o CT Corporation System, 1635 Market Street, Philadelphia, Pennsylvania 19103.

## Operative Facts

3.    GM operates through unincorporated divisions that are in the business of assembling and selling new and unused motor vehicles.

4.    Beginning in the 1960's and continuing until the late 1980's and early 1990's, some GM dealers, but not all, formed associations to engage in the local advertising of GM products.

5.    The dealers who belonged to these associations funded them through voluntary assessments that the dealers paid when they bought new vehicles from GM.

6.    The dealers initially paid these voluntary assessments directly to their associations, but it subsequently developed that GM, at the dealers' request, undertook to collect these assessments from the dealers when it sold them new vehicles, and then remitted to the dealers' associations all such voluntary assessments that it collected.

7.    The dealers' voluntary assessments were in no fixed or set amount. Dealers could pay whatever assessment they wanted, or pay none at all. Dealers did not have to pay any assessment in order to buy a vehicle from GM.

8.    In or about the fall of 1988, GM decided to change dealer participation in advertising programs from voluntary to mandatory, throughout the country.

9.    To effect this change and to implement mandatory dealer participation in advertising programs, GM began to initiate in the fall of 1988 programs called "Marketing Initiatives" for

2

each of its six divisions. The Marketing Initiatives applied to all GM franchised dealers (hereinafter the "dealers"), including those in Pennsylvania.

10. The Marketing Initiatives for the Chevrolet and GMC Truck Division became effective in September 1988 with the introduction of those Divisions' 1989 model year vehicles.

11. The Marketing Initiatives for the Cadillac and Oldsmobile Divisions became effective in July 1989 with the introduction of those Divisions' 1990 model year vehicles.

12. The Marketing Initiatives for the Pontiac and Buick Divisions became effective in July and August 1990 with the introduction of those Divisions' 1991 model year vehicles.

13. The Marketing Initiative for GM's Saturn Division became effective when the Saturn Division was created.

14. Under the Marketing Initiatives, GM added a mandatory assessment of one percent (1%) of the Manufacturer's Suggested Retail Price ("MSRP") to the invoice of each vehicle that GM sold to a dealer. The 1% assessments applied to all GM vehicles except those sold:

      a)   for resale under the GM Employee Purchase Plan;

      b)   to GM qualified fleet purchasers; and

      c)   to government purchasers.

15. GM's dealers had no choice about paying the 1% assessments under the Marketing Initiatives. The dealers had to pay the 1% assessments for each new vehicle that the dealers bought from GM in order to obtain those vehicles.

3

16. The funds created by the 1% assessments were designated and required to be used for advertising campaigns, just as the voluntary assessments had been before the Marketing Initiatives.

17. After paying the mandatory 1% assessments to GM, GM's dealers passed these assessments onto the purchasers of GM's vehicles, by adding the 1% assessments to the retail prices of the vehicles covered by the assessments.

18. GM continued the Marketing Initiatives and the 1% assessments until April 1, 1999, when GM terminated the Initiatives because of litigation brought by GM dealers against GM.

19. On December 2, 1997, while the Pontiac Marketing Initiative was in effect, Plaintiff purchased a new 1998 Pontiac Grand Am model vehicle from Jones Pontiac GMC Truck Co. ("Jones Pontiac"), P.O. Box 4426, 1335 Manheim Pike, Lancaster, Pennsylvania 17604.

20. Under the Pontiac Marketing Initiative, GM added one percent (1%) of the GM MSRP to the invoice that GM charged Jones Pontiac for Plaintiff's vehicle, and Jones Pontiac then added that one percent (1%) charge to the retail price of Plaintiff's car.

## COUNT I

## Pennsylvania Board of Vehicles Act

21. On December 22, 1983, the Pennsylvania General Assembly enacted the Board of Vehicles Act, 63 P.S. §818.1, et seq., which

4

became effective January 1, 1984, and was amended on April 19,
1996.

22.    The Board of Vehicles Act, 63 P.S. §818.12, provides in
relevant part:

> It shall be a violation for any manufacturer
> (or) distributor...licensed under this act to
> require...any new vehicle dealer in this
> Commonwealth to:
>
> *                    *                    *
>
> (3) Participate monetarily in an advertising
> campaign...at the expense of the new vehicle
> dealer.

23.    GM is a "manufacturer" and "distributor" under the Board
of Vehicles Act, 63 P.S. §818.2.

24.    Jones Pontiac is a "new vehicle dealer" under the Board
of Vehicles Act, 63 P.S. §818.2.

25.    The Marketing Initiative of GM's Pontiac Division
required Jones Pontiac to participate monetarily in an
advertising campaign at Jones Pontiac's expense, in violation of
the Board of Vehicles Act, through the 1% charge that GM required
its dealers to pay for use in advertising campaigns.

26.    The Board of Vehicles Act further provides in relevant
part:

> ...any person who is or may be injured by a
> violation of a provision of this act or any
> party to a franchise who is so injured in his
> business or property by a violation of a
> provision of this act relating to that
> franchise...may bring an action for
> damages...in any court of competent
> jurisdiction.

63 P.S. §818.29 (emphasis added).

5

27.  Plaintiff is a "person" under the <u>Board of Vehicles</u> <u>Act</u>, 63 P.S. §818.2, and Plaintiff has been "injured" by the charge of one percent (1%) of the MSRP that GM added to the invoice for Plaintiff's car in violation of the <u>Board of Vehicle</u> <u>Act</u>, because Plaintiff ultimately had to bear that charge.

### Class Action Allegations

28.  Plaintiff incorporates the preceding allegations contained in paragraphs 1 through 27 as though set forth here in full.

29.  Plaintiff brings this case on behalf of:

> All persons who purchased at retail from a franchised GM dealer in Pennsylvania a new vehicle that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick, Pontiac and Saturn Divisions of General Motors Corporation and that was covered under a Marketing Initiative of any of those Divisions.  The class includes natural persons and business entities of any kind, but does not include GM employees who purchased vehicles under the GM Employee Purchase Plans, GM qualified fleet purchasers and governmental agencies.

30.  The above defined class is so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown, it is believed and therefore averred to be in the thousands.

31.  All questions of law and fact are common to all members of the class.  These questions involve:

a)  whether GM required its Pennsylvania dealers to participate monetarily in advertising campaigns;

6

b)    whether GM added one percent (1%) of the MSRP to the invoices of vehicles sold to GM's Pennsylvania dealers during the Marketing Initiatives;

c)    whether the 1% charge that GM added to the invoices for its vehicles were used in advertising campaigns;

d)    whether the one percent (1%) charge that GM added to the invoices of its vehicles violated the Board of Vehicles Act; and

e)    whether Plaintiff and the class were "injured" as that term is used in the Board of Vehicles Act.

32.    Plaintiff's claim is typical of the claims of all members of the class. Indeed, Plaintiff's claim is identical. The only difference between Plaintiff's claim and the claims of the members of the class is the amount of damages to which Plaintiff and each class member would be respectively entitled.

33.    The defenses of GM to Plaintiff's claim are identical to the defenses of GM to each class member's claim.

34.    Plaintiff and her attorneys will fairly and adequately assert and protect the interests of the class under the criteria of Pennsylvania Rule of Civil Procedure 1709, which criteria are incorporated herein by reference.

35.    This class action provides a fair and efficient method for adjudication of this controversy under the criteria set forth of Pennsylvania Rule of Civil Procedure 1708, which criteria are incorporated herein by reference.

7

WHEREFORE, Plaintiff respectfully requests that the class requested above be certified, and that judgment be entered in favor of Plaintiff and the class and against Defendant GM for damages consistent with the Board of Vehicles Act.

JOSEPH F. RODA
Atty. I.D. No. 20615

RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

PAUL I. GUEST, JR.
Atty. I.D. No. 30488

P.O. Box 353
Newtown Square, PA 19073
(610) 353-7859

Attorneys for Plaintiff

DATE: April 25, 2000

# EXHIBIT B

00-04255

## O R D E R

**AND NOW**, this ___3___ day of October, 2001, upon consideration of plaintiff Donna

Soders' motion for class certification and defendant General Motors Corporation's response

thereto, and after hearing as mandated by Pa.R.C.P. 1707, it is hereby ORDERED and

DIRECTED that the motion is granted, as follows:

1. Plaintiff's motion for class certification is granted;

2. A class is hereby certified and defined as follows:

All persons who purchased at retail from a franchised GM dealer in
Pennsylvania a new vehicle that was manufactured or distributed by
the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac
Divisions of General Motors Corporation. This includes only persons
whose franchised GM dealers previously purchased the new vehicle
from GM or any of its divisions on or before March 31, 1999, but after
(a) September 1, 1988, for new vehicles manufactured or distributed by
the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new
vehicles manufactured or distributed by the Cadillac or Oldsmobile
Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed
by the Pontiac Division; and (d) August 1, 1990, for new vehicles
manufactured or distributed by the Buick Division.

The Class includes natural persons and business entities of any kind,
but does not include: (a) GM employees who purchased vehicles under
the GM Employee Purchase Plans; (b) GM qualified fleet purchasers;
(c) government entities; or (d) attorneys of record in this case.

3. The Court finds that the requirements of Pa.R.C.P. 1702 are satisfied, namely:

   a.  The class is so numerous that joinder of all members is

impracticable;

   b.  There are questions of law or fact common to the class;

   c.  The claim of the representative party is typical of the claim of

the class;

12

DO-04255

d. The representative party will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

e. A class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

4. Plaintiff is designated as the representative of this class.

5. Plaintiff's counsel, Joseph F. Roda, Esquire, is appointed lead counsel for the class.

BY THE COURT:

LOUIS J. FARINA
JUDGE

ATTEST: Ezra Colmn

COPIES TO:
Joseph F. Roda, Esq. ( 1 )
Christopher S. Underhill, Esq. ( 1 )
Michael H. Carpenter, Esq. ( 1 )

J. FArina ( 3 )

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA.R.C.P. NO.236
NOTIFICATION-THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE:
OCT 0 4 2001

13

# EXHIBIT C

<u>COURT-ORDERED LEGAL NOTICE</u>

# If you bought a new GM vehicle in Pennsylvania, you could get benefits from a class action settlement.

*A court authorized this notice. It is not a solicitation from a lawyer.*

- A proposed settlement has been reached in a class action settlement involving the marketing programs of the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick and Pontiac Divisions of General Motors Corporation ("GM"), as well as prices paid for new vehicles.

- Generally, the settlement includes anyone who bought a new Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick and Pontiac ("GM vehicle") in Pennsylvania between September 1, 1988 and March 31, 1999 (*see* Questions 5 and 6). The settlement provides rebate certificates worth up to $200 towards the purchase or lease of new GM vehicles.

- Your legal rights are affected whether you act or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a rebate certificate. |
| OBJECT | Write to the Court about why you do not like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no rebate certificate. Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Rebate certificates will be mailed if the Court approves the settlement and after appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................................... **PAGE 3**

    1.   Why did I get this notice package?
    2.   What is this lawsuit about?
    3.   What is a class action?
    4.   Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ..................................................................................... **PAGE 3**

    5.   Am I part of the settlement?
    6.   Are there exceptions to being included?
    7.   I am still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ..................................................... **PAGE 4**

    8.   What does the settlement provide?
    9.   How many rebate certificates will I receive?
   10.  How long will the rebate certificates be valid?
   11.  Can I give my rebate certificates to someone else?
   12.  Can I combine my rebate certificates or use them with other discount programs?
   13.  Can I get out of the settlement?
   14.  What am I giving up as part of the settlement?

**HOW YOU GET A REBATE CERTIFICATE—SUBMITTING A CLAIM FORM** ...................................... **PAGE 5**

   15.  How can I get my rebate certificate(s)?
   16.  What if I can't provide all of the requested information or documents?
   17.  What if I purchased my vehicle with someone else?
   18.  When would I get my rebate certificate(s)?

**THE LAWYERS REPRESENTING YOU** .......................................................................... **PAGE 6**

   19.  Do I have a lawyer in this case?
   20.  How will the lawyers be paid?
   21.  Should I get my own lawyer?

**OBJECTING TO THE SETTLEMENT** ............................................................................. **PAGE 7**

   22.  How do I tell the Court that I do not like the settlement?

**THE COURT'S FAIRNESS HEARING** ........................................................................... **PAGE 7**

   23.  When and where will the Court decide whether to approve the settlement?
   24.  Do I have to come to the hearing?
   25.  May I speak at the hearing?

**IF YOU DO NOTHING** ..................................................................................................... **PAGE 8**

   26.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** .................................................................................... **PAGE 8**

   27.  How do I get more information?

# BASIC INFORMATION

### 1. Why did I get this notice package?

You received this notice package because records show that you may have purchased a new GM vehicle in Pennsylvania between September 1, 1988 and March 31, 1999. Because of this, you have a right to know about the proposed settlement of this class action lawsuit, and about your options, before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

### 2. What is this lawsuit about?

This case is about GM adding 1% of the Manufacturer's Suggested Retail Price ("MSRP") to the invoice of certain new vehicles it sold to its dealers, as part of its "Marketing Initiative" programs. The lawsuit claims that GM required dealers to use the 1% for advertising, and that this violated the Pennsylvania Board of Vehicles Act, which says that manufacturers cannot require new vehicle dealers to financially participate in advertising campaigns. The lawsuit also claims that dealers passed the 1% on to customers when they purchased vehicles.

GM denies any wrongdoing, and states that the 1% was a legal, wholesale price increase to its dealers. GM also states that the dealers did not necessarily pass on the 1% to customers. The Court has not decided whether the Class or GM is right. The settlement does not mean that GM did anything wrong or violated any laws.

The class action is known as *Soders v. General Motors Corporation*, No. CI-00-04255. Judge Louis J. Farina of the Court of Common Pleas of Lancaster County, Pennsylvania is overseeing this class action. The person who sued is called the "Plaintiff," and the company she sued, General Motors Corporation, is called "GM" or the "Defendant."

### 3. What is a class action?

In a class action, one or more people called "Class Representatives" (in this case, Donna Soders) sue on behalf of people who have similar claims. All of these people are a "Class" or "Class Members." In a class action lawsuit, one court resolves the issues for everyone in the Class—except for those who excluded themselves (*see* Question 13).

### 4. Why is there a settlement?

The Court did not decide in favor of the Class or GM. Instead, both sides agreed to a settlement. The settlement provides benefits to Class Members, and avoids the costs, risks and delays of a trial. The Class Representative, her lawyers and GM believe that the settlement is fair, reasonable, adequate, and in the best interests of all Class Members.

# WHO IS IN THE SETTLEMENT

To see if you can receive a rebate, you have to determine if you are a Class Member.

### 5. Am I part of the settlement?

The Court has decided that the Class includes everyone who purchased a new vehicle at retail in Pennsylvania from a franchised GM dealer that was made or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile,

QUESTIONS? CALL **1-888-866-1738** TOLL FREE, OR VISIT WWW.ONEPERCENTCASE.COM

- 3 -

Buick or Pontiac divisions of GM.  The GM dealer must have purchased the new vehicle from GM or any of its divisions between the following dates:

| VEHICLE | DATE OF PURCHASE |
|---------|------------------|
| Chevrolet or GMC Truck | September 1, 1988 and March 31, 1999 |
| Cadillac or Oldsmobile | July 1, 1989 and March 31, 1999 |
| Pontiac | July 1, 1990 and March 31, 1999 |
| Buick | August 1, 1990 and March 31, 1999 |

## 6. Are there exceptions to being included?

You are not a Class Member if you:

- leased your new vehicle
- purchased your vehicle under the GM Employee Purchase Plans, as a GM-qualified fleet purchaser, or as a government entity
- are an attorney in this case
- previously asked to be excluded from the Class

## 7. I am still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help.  You can call 1-888-866-1738 or visit www.onepercentcase.com.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8. What does the settlement provide?

GM will provide all eligible Class Members with rebate certificates worth up to $200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC Truck or Pontiac vehicle.  GM will also separately pay the costs associated with administering the settlement, lawyers' fees and costs, and an amount to the Class Representative.  More details are in a document called the Settlement Agreement, which is available at www.onepercentcase.com.

## 9. How many rebate certificates will I receive?

You will receive one rebate certificate worth up to $200 for each new Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile or Pontiac vehicle that you purchased during the periods listed in Question 5 above.  Only one rebate certificate will be issued for each vehicle.

## 10. How long will the rebate certificates be valid?

The certificates will be valid until three years after the settlement receives final court approval.

## 11. Can I give my rebate certificates to someone else?

If you do not plan to buy or lease a new vehicle within the next three years, you may transfer your rebate certificate(s) to your immediate household members (anyone living at the same address), your parents or your children at any time, as long as the certificate(s) have not expired.

During the last two years that the rebate certificates are valid, you may transfer your rebate certificate(s) directly to anyone. The rebate certificates will contain all the instructions you need and, once transferred, will be worth 75% of the value of the original certificate.

Each rebate certificate can be transferred only once, and it must be a direct transfer from you to another person. The transferred certificates may be used with any other available discount for the purchase or lease of a new GM vehicle, except other rebate certificates distributed as part of this settlement and GM Employee Discount Programs, unless those programs are being extended to all customers.

## 12. Can I combine my rebate certificates or use them with other discount programs?

As long as you received your certificates directly through this settlement and they were not transferred to you from someone else, up to two rebate certificates may be used at one time towards the purchase or lease of one vehicle. Any additional certificates must be used toward the purchase or lease of another vehicle. You may also use your rebate certificates along with any other available discount programs, except the GM Employee Discount Programs, unless that program is being extended to all consumers.

## 13. Can I get out of the settlement?

No. Class Members were already given an opportunity in an earlier notice to exclude themselves from this class action. Class Members who did not previously submit an exclusion request may **not** be excluded from the settlement now. This means that you are legally bound by the class action and cannot sue GM about the claims in this lawsuit ever again.

## 14. What am I giving up as part of the settlement?

If the settlement becomes final, Class Members will be releasing GM from all of the claims described and identified in section 3 (D) of the Settlement Agreement. This means you will not be able to sue GM regarding any of the claims described in the Settlement Agreement. The Settlement Agreement is available at www.onepercentcase.com. The Settlement Agreement describes the released claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can contact the lawyers representing the Class (see Question 19) for free by calling the toll-free number or you can talk to your own lawyer, at your own expense, if you have any questions about the released claims or what they mean.

# HOW YOU GET A REBATE CERTIFICATE—SUBMITTING A CLAIM FORM

## 15. How can I get my rebate certificate(s)?

To get your rebate certificate(s), you must submit a valid claim form. You can use the enclosed claim form or you may get a claim form on the internet at www.onepercentcase.com, or by sending a written request to:

*Soders v. GM* - Claim Form Request
PO Box 91196
Seattle, WA 98111-9296

**QUESTIONS? CALL 1-888-866-1738 TOLL FREE, OR VISIT WWW.ONEPERCENTCASE.COM**

Read the instructions on the claim form carefully, fill out the form, attach copies of any documents you may have, and mail it to the address on the form so that it is postmarked no later than **June 15, 2009**.

After you submit your claim form, you may be asked to provide additional information or documents.

## 16. What if I can't provide all of the requested information or documents?

If you are not able to complete every portion of the claim form or provide supporting documents, your claim may still be accepted, if: (1) you or a co-purchaser listed on your claim form appears on the list of new vehicle deliveries that GM produced in this case; or (2) you list a VIN that matches a qualifying new vehicle that was sold to you during one of the periods listed in Question 5 above.

If you are not on the list and you cannot provide documents or a qualifying VIN, but you complete all other sections of the claim form, you could receive a certificate worth $200, $100, or none at all, depending on how many other Class Members submit this type of undocumented claim.  The certificate would be worth $200 if 10% or less of all claims submitted are this type of undocumented claim, or $100 if more than 10%, but less than 20%, are this type of undocumented claim.  If more than 20% of all claims are this type of undocumented claim, you will not receive a certificate.

## 17. What if I purchased my vehicle with someone else?

If you purchased a vehicle with someone else and you both submit a claim form, the rebate certificate will be sent to: (1) the person whose name appears on the list of new vehicle deliveries; or (2) if none of your names appear on the list, the person whose name appears first on the purchase documents; or (3) if none of your names appear on the list and the purchase documents have not been provided, the person with the earliest postmark date for his or her claim form.

## 18. When would I get my rebate certificate(s)?

Your rebate certificate(s) will be mailed if the settlement is approved, and after any appeals are resolved.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a claim form will be informed of the progress of the settlement, and updates will also be posted on www.onepercentcase.com.  Please be patient.

# THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in this case?

Judge Farina has decided that Joseph F. Roda and Michele S. Burkholder of RODANAST, P.C. in Lancaster, Pennsylvania are qualified to represent you and all Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

## 20. How will the lawyers be paid?

You will not be personally charged for Class Counsel's fees or costs.  Class Counsel will ask the Court to approve a payment to them of up to $1,886,000 for attorneys' fees, for their work in investigating the facts, litigating the case, and negotiating the settlement.  This is less than their actual fees from the eight and a half years they have been working on this case.  They will also ask the Court to approve a payment of up to $500,000 as reimbursement for the out-of-pocket expenses that they paid to litigate the case, and a payment of $5,000 to the Class Representative, who helped the lawyers on behalf of the whole Class.  The Court may award less than these amounts. These fees, costs and expenses will be paid separately by GM, as part of the

settlement. These payments will not affect the amounts available for rebates. GM has agreed not to object to these requests for fees and costs.

## 21. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. However, you may hire your own lawyer at your own expense.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

## 22. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like any part of it. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to the *Soders v. GM* settlement. Be sure to include your name, address, telephone number, signature, and the reasons why you object to the settlement. Mail the objection no later than **March 16, 2009** to:

*Soders v. GM Class Counsel*
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601

Any objections postmarked after that date may not be considered.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to.

## 23. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 9:00 a.m. on Tuesday, **April 28, 2009**, in Courtroom 10 at the Lancaster County Courthouse, 50 North Duke Street, Lancaster, Pennsylvania 17602. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. Judge Farina will listen to people who have asked to speak at the hearing (*see* Question 25). After the hearing, Judge Farina will decide whether to approve the settlement. We do not know how long these decisions will take.

## 24. Do I have to come to the hearing?

No. Class Counsel will answer questions that Judge Farina may have. But you are welcome to come at your own expense, or pay your own lawyer to attend. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.

## 25. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter via first class U.S. mail saying that it is your "Notice of Intention to Appear in *Soders v. GM*." Be sure to include

your name, address, telephone number, and signature. Your Notice of Intent to Appear must be postmarked no later than **March 16, 2009,** and must be sent to:

*Soders v. GM Class Counsel*
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601.

You may not be able to speak at the hearing if your Notice of Intent to Appear is not postmarked by that date.

# IF YOU DO NOTHING

### 26. What happens if I do nothing at all?

If you do nothing, you will not receive a rebate certificate. You will be bound by all orders and judgments of the Court in this case, which means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against GM about the legal issues in this case.

# GETTING MORE INFORMATION

### 27. How do I get more information?

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement, and find answers to common questions about the settlement, a claim form, and other information, by visiting www.onepercentcase.com. You can also get more information by calling 1-888-866-1738, or by writing to:

*Soders v. General Motors Corp.*
PO Box 91196
Seattle, WA 98111-9296

# EXHIBIT D

COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

DONNA SODERS, on Behalf of Herself          :
and all Others Similarly Situated           :
                                            :
            VS.                             :      CI-00-04255
                                            :
GENERAL MOTORS CORPORATION                  :

### JUDGMENT ENTRY

AND NOW, this 28th day of April, 2009, upon consideration of Plaintiff's

Motion for Final Approval of Settlement, Class Representative Payments, Fee Award and

Costs; Plaintiff's supporting memoranda and exhibits; and oral presentations at the final

fairness hearing held on April 28, 2009, it is hereby ORDERED, ADJUDGED and

DECREED that:

　　　1.　　Notice of the proposed settlement was made in accordance with the

instructions provided in this Court's Order Setting Fairness Hearing on Proposed Class

Action Settlement.

　　　2.　　All class members have been provided with a sufficient opportunity to

submit objections to the proposed settlement and participate in the final fairness hearing,

and all submissions and presentations by members of the class in this action have been

given due consideration.

　　　3.　　The Court has held a hearing to consider the fairness, reasonableness

and adequacy of the proposed Settlement, and has considered, *inter alia*, the complexity,

expense and likely duration of the litigation; the reaction of the class to the proposed

settlement; the stage of the proceedings and the amount of discovery completed; the risk

of establishing liability and damages and maintaining the class through trial; the ability of

Defendant General Motors corporation to withstand a greater judgment; and the range of

reasonableness of the settlement in light of the best possible recovery and all the

attendant risks of litigation.

4.    The Court has also given significant weight to the belief of experienced

counsel appointed to represent the interests of the class that the proposed settlement is in

the best interest of the class.

5.    The Court finds that the proposed settlement is not the product of

collusion between the parties and their respective counsel, but rather was the result of

bona fide, good faith, arm's length negotiations between experienced counsel after

sufficient discovery was obtained.

6.    A review of all relevant factors supports the proposed settlement, and the

same is hereby approved and found to be, in all respects, fair, reasonable and adequate

and in the best interests of the class as a whole.

7.    The requested payment of $5,000 to the class representative is found to be

fair and reasonable in light of her efforts, and is hereby approved.

8.    The requested total fee award of $1,687,858.75, voluntarily reduced by ½

by class counsel at the final fairness hearing to $843,929.37, is found to be fair and

reasonable, and is approved, in light of the time and efforts reasonably expended by the

attorneys in the litigation; the quality of services rendered; the results achieved and

benefits conferred upon the class; the magnitude, complexity and uniqueness of the

litigation; and the contingent nature of their fee.

-2-

9.    The requested reimbursement of total costs of $437,416.92 to class

counsel is found to be fair and reasonable, and is hereby approved.

10.    The parties are bound by all terms in the Settlement Agreement, including

the Release of Claims provisions in Subparagraphs 3.22 through 3.27 of the Settlement

Agreement, and shall take all steps necessary to implement and effectuate the terms in

the Settlement Agreement.

11.    This action is dismissed with prejudice.

12.    The termination of the above-captioned action is subject only to the

Court's continuing jurisdiction solely and exclusively to enforce the terms of the Settlement

Agreement.

BY THE COURT:

LOUIS J. FARINA
PRES. JUDGE
LOUIS J. FARINA
PRESIDENT JUDGE

Attest:

Copies to:

Joseph F. Roda, Esq.; Michele S. Burkholder, Esq.
Christopher S. Underhill, Esq.
Michael H. Carpenter., Esq.; Jeffrey A. Lipps, Esq.

CERTIFIED THAT THIS COPY
AND ... ... ...
FOREGOING ... ... ... D DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY, ... ... ER CO., PA
DATE: 4/28/09

-3-

# EXHIBIT E

IN THE COURT OF COMMON PLEAS
LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

DONNA SODERS, on behalf of            :
herself and all others similarly situated,    :        NO. CI-00-04255

      Plaintiff,                          :        JUDGE FARINA

        v.                                :

GENERAL MOTORS CORPORATION,           :

      Defendant.                         :

## ORDER SETTING FAIRNESS HEARING
## ON PROPOSED CLASS ACTION SETTLEMENT

AND NOW, this _19th_ day of December, 2008, upon consideration of Plaintiff's Unopposed

Motion for Preliminary Approval of Settlement and its supporting memorandum and exhibits, and oral

presentations at the preliminary approval hearing held on December 19, 2008, it is hereby,

ORDERED, ADJUDGED AND DECREED that:

    1.    The proposed settlement between the plaintiff Class and the defendant appears to

have been reached as a result of bona fide, good faith, arm's length negotiations between

experienced counsel after sufficient discovery was obtained, and to be within the range of

reasonableness to be approved preliminarily. Accordingly, the proposed settlement shall be

submitted to the members of the Class for their consideration and for a final fairness hearing.

    2.    A final fairness hearing shall be held before this Court, on _April_ ,

_20_ , 2009, _at 9 AM_ in Courtroom _10_ at the Lancaster County Courthouse, 50 North Duke Street,

Lancaster, Pennsylvania 17602 (the "Court") to consider whether the settlement should be given

final approval by the Court.

00·04255

3.    The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.  Accordingly, the Court directs that Notice shall be completed pursuant to the terms of the Settlement Agreement.

4.    GM or an entity mutually acceptable to the plaintiff Class and GM shall be appointed Claims Administrator, and shall perform the duties outlined in the Settlement Agreement.

5.    Class member objections and notices of intent to appear at the final fairness hearing shall be handled pursuant to the terms of the Settlement Agreement.

6.    At least five days before the final fairness hearing, Class Counsel shall file a motion seeking final approval of the proposed settlement and approval of payments to the Class Representative and Class Counsel.

SO ORDERED.

Dated:

attest : Diane Dunn, Clerk
copies : michelle S. Burkholder, Eric
(3)
pium al Counter

BY THE COURT:

Louis J. Farina, J.

COPIES TO:

Joseph F. Roda, Esquire; Michele S. Burkholder, Esquire ( )
Christopher S. Underhill, Esquire ( )
Michael H. Carpenter, Esquire; Jeffrey A. Lipps, Esquire ( )

12-19-08

00·04285

## CERTIFICATE OF SERVICE

I hereby certify that I am this day causing the foregoing document to be served upon the

persons and in the manner indicated below:

Service in person as follows:
The Honorable Louis J. Farina (717) 295-3525
Lancaster County Courthouse
50 North Duke Street
Lancaster, Pennsylvania 17602
        (Assigned Judge)

Service by first class mail and email as follows:
Christopher S. Underhill, Esquire (717) 299-7254
Hartman Underhill & Brubaker, LLP
221 E. Chestnut Street
Lancaster, PA 17602
chrisu@hublaw.com
        (Counsel for Defendant General Motors Corporation)

Jeffrey A. Lipps, Esquire (614) 365-4100
Carpenter & Lipps LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
lipps@CarpenterLipps.com
        (Counsel for Defendant General Motors Corporation)

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center, P.O. Box 400
Detroit, Michigan 48254-4000
lawrence.s.buonomo@gm.com
        (Of Counsel for Defendant General Motors Corporation)

JOSEPH F. RODA

DATED: December 17, 2008

# EXHIBIT B

HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                :
**In re**                                       :       **Chapter 11 Case No.**
                                                :
**MOTORS LIQUIDATION COMPANY,** *et al.,*       :       **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.* :
                                                :
                    **Debtors.**                :       **(Jointly Administered)**
                                                :
-----------------------------------------------------------x

## ORDER PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. RULE 23 APPROVING AGREEMENT RESOLVING PROOF OF CLAIM NO. 44887 AND IMPLEMENTING CLASS SETTLEMENT

Upon the Motion, dated July 13, 2010 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**") and Federal Rule of Civil Procedure 23(e), for entry of an

order approving the agreement Resolving Proof of Claim No. 44887 and Implementing Class

Settlement (the "**Agreement**"), attached to the Motion as **Exhibit "A,"** between the Debtors,

Plaintiff Donna Soders ("**Soders**"), on behalf of herself and all others similarly situated (the

"**Soders Class**"), and RodaNast P.C. ("**RodaNast**"), as more fully set forth in the Motion; and

due and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided to any party; and the Court having found and determined that (i)

the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest; (ii) the Settlement is fair, reasonable, adequate, and in the best interest of

the Soders Class considering the complexity, expense, and likely duration of the Soders Class

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Action litigation; the reaction of the Soders Class to the proposed settlement; the stage of the

proceedings and the amount of discovery completed; the risk of establishing liability and

damages and maintaining the class through trial; the ability of the Debtors to withstand a greater

judgment; and the range of reasonableness of the settlement in light of the best possible recovery

and all the attendant risks of litigation; (iii) the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; (iv) the settlements and compromise embodied

in the Agreement are within the range of reasonableness; (v) the Settlement was not the product

of collusion between the parties and their respective counsel, but was the result of bona fide,

good faith, arm's-length negotiations between experienced counsel after sufficient discovery was

obtained; (vi) and the Notice of Settlement provided to the Soders Class was adequate and

satisfied the Federal Rules of Civil Procedure; and after due deliberation and sufficient cause

appearing therefore, it is

      ORDERED that the Motion is granted as provided herein; and it is further

      ORDERED that the Debtors' entry into the Agreement is in the best interests of

the Debtors and their estates; and it is further

      ORDERED that the Debtors' entry into the Agreement is authorized, ratified, and

directed; and it is further

      ORDERED that the Court will apply Rule 7023 of the Federal Rules of

Bankruptcy Procedure solely for the purposes of settlement in granting the Motion; and it is

further

      ORDERED that the Court adopts the Pennsylvania Court's certification of the

Soders Class solely for the purposes of settlement; and it is further

2

ORDERED that an award of a general unsecured claim in the amount of $554,050 to the Participating Soders Class Members is fair and reasonable; and it is further

ORDERED that RodaNast is permitted to sell, transfer, or otherwise liquidate the Total Allowed Unsecured Claim and make pro rata distributions to the Participating Class Members, as necessary; and it is further

ORDERED that a payment of a general unsecured claim of $5,000 to Soders as the Soders Class representative is fair and reasonable; and it is further

ORDERED that an attorneys' fee award of a general unsecured claim in the amount of $526,348 is fair and reasonable considering the time and efforts reasonably expended by RodaNast in the litigation, the quality of services rendered, the results achieved and benefits conferred upon the Soders Class, the magnitude, complexity and uniqueness of the litigation, and the contingent nature of the fee; and it is further

ORDERED that the reimbursement of costs incurred by RodaNast in the Soders Class Action of a general unsecured claim in the amount of $437,416.92 to RodaNast is fair and reasonable, and it is further

ORDERED that no further notice of (i) the Settlement, (ii) the Debtors' entry into the Agreement, or (iii) Soders' entry into the Agreement on behalf of the Soders Class is required; and it is further

ORDERED that upon entry of this Order, all terms and conditions of the Agreement shall become effective; and it is further

ORDERED that to the extent any conflict exists between the terms and conditions of the Agreement and this Order, this Order shall control; and it is further

3

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation, and/or enforcement of this

Order.

Dated: New York, New York
      [_____], 2010

                                        _____
                                        United States Bankruptcy Judge

# EXHIBIT C

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| DONNA SODERS, on behalf of herself and all others similarly situated, | : | No. CI-00-04255 |
| | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS CORPORATION, | : | CLASS ACTION |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Donna Soders, on behalf of herself and a class of all others similarly situated, brings this action for damages under the Pennsylvania Board of Vehicles Act, 63 P.S. §§ 818.1 et seq., demands a trial by jury, and in support hereof avers as follows:

### The Parties

1.    Plaintiff, Donna Soders, is an adult individual, residing at 709 East Chestnut Street, Lancaster, Pennsylvania 17602.

2.    Defendant, General Motors Corporation ("GM"), is a Delaware corporation that is qualified to do and does do business throughout the Commonwealth of Pennsylvania, regularly transacts business in Lancaster County, and maintains its registered office in the Commonwealth of Pennsylvania, c/o CT Corporation System, 1635 Market Street, Philadelphia, Pennsylvania 19103.

## Operative Facts

3.    GM operates through unincorporated divisions that are
in the business of assembling and selling new and unused motor
vehicles.

4.    Beginning in the 1960's and continuing until the late
1980's and early 1990's, some GM dealers, but not all, formed
associations to engage in the local advertising of GM products.

5.    The dealers who belonged to these associations funded
them through voluntary assessments that the dealers paid when
they bought new vehicles from GM.

6.    The dealers initially paid these voluntary assessments
directly to their associations, but it subsequently developed
that GM, at the dealers' request, undertook to collect these
assessments from the dealers when it sold them new vehicles, and
then remitted to the dealers' associations all such voluntary
assessments that it collected.

7.    The dealers' voluntary assessments were in no fixed or
set amount.  Dealers could pay whatever assessment they wanted,
or pay none at all.  Dealers did not have to pay any assessment
in order to buy a vehicle from GM.

8.    In or about the fall of 1988, GM decided to change
dealer participation in advertising programs from voluntary to
mandatory, throughout the country.

9.    To effect this change and to implement mandatory dealer
participation in advertising programs, GM began to initiate in
the fall of 1988 programs called "Marketing Initiatives" for

2

each of its six divisions.  The Marketing Initiatives applied to all GM franchised dealers (hereinafter the "dealers"), including those in Pennsylvania.

10.  The Marketing Initiatives for the Chevrolet and GMC Truck Division became effective in September 1988 with the introduction of those Divisions' 1989 model year vehicles.

11.  The Marketing Initiatives for the Cadillac and Oldsmobile Divisions became effective in July 1989 with the introduction of those Divisions' 1990 model year vehicles.

12.  The Marketing Initiatives for the Pontiac and Buick Divisions became effective in July and August 1990 with the introduction of those Divisions' 1991 model year vehicles.

13.  The Marketing Initiative for GM's Saturn Division became effective when the Saturn Division was created.

14.  Under the Marketing Initiatives, GM added a mandatory assessment of one percent (1%) of the Manufacturer's Suggested Retail Price ("MSRP") to the invoice of each vehicle that GM sold to a dealer.  The 1% assessments applied to all GM vehicles except those sold:

> a)  for resale under the GM Employee Purchase Plan;
>
> b)  to GM qualified fleet purchasers; and
>
> c)  to government purchasers.

15.  GM's dealers had no choice about paying the 1% assessments under the Marketing Initiatives.  The dealers had to pay the 1% assessments for each new vehicle that the dealers bought from GM in order to obtain those vehicles.

3

16.  The funds created by the 1% assessments were designated and required to be used for advertising campaigns, just as the voluntary assessments had been before the Marketing Initiatives.

17.  After paying the mandatory 1% assessments to GM, GM's dealers passed these assessments onto the purchasers of GM's vehicles, by adding the 1% assessments to the retail prices of the vehicles covered by the assessments.

18.  GM continued the Marketing Initiatives and the 1% assessments until April 1, 1999, when GM terminated the Initiatives because of litigation brought by GM dealers against GM.

19.  On December 2, 1997, while the Pontiac Marketing Initiative was in effect, Plaintiff purchased a new 1998 Pontiac Grand Am model vehicle from Jones Pontiac GMC Truck Co. ("Jones Pontiac"), P.O. Box 4426, 1335 Manheim Pike, Lancaster, Pennsylvania 17604.

20.  Under the Pontiac Marketing Initiative, GM added one percent (1%) of the GM MSRP to the invoice that GM charged Jones Pontiac for Plaintiff's vehicle, and Jones Pontiac then added that one percent (1%) charge to the retail price of Plaintiff's car.

## COUNT I

### Pennsylvania Board of Vehicles Act

21.  On December 22, 1983, the Pennsylvania General Assembly enacted the Board of Vehicles Act, 63 P.S. §818.1, et seq., which

became effective January 1, 1984, and was amended on April 19,
1996.

    22. The <u>Board of Vehicles Act</u>, 63 P.S. §818.12, provides in
relevant part:

> It shall be a violation for any manufacturer
> (or) distributor...licensed under this act to
> require...any new vehicle dealer in this
> Commonwealth to:
>
>      *            *            *
>
> (3) Participate monetarily in an advertising
> campaign...at the expense of the new vehicle
> dealer.

    23. GM is a "manufacturer" and "distributor" under the <u>Board
of Vehicles Act</u>, 63 P.S. §818.2.

    24. Jones Pontiac is a "new vehicle dealer" under the <u>Board
of Vehicles Act</u>, 63 P.S. §818.2.

    25. The Marketing Initiative of GM's Pontiac Division
required Jones Pontiac to participate monetarily in an
advertising campaign at Jones Pontiac's expense, in violation of
the <u>Board of Vehicles Act</u>, through the 1% charge that GM required
its dealers to pay for use in advertising campaigns.

    26. The <u>Board of Vehicles Act</u> further provides in relevant
part:

> ...any person who is or may be injured by a
> violation of a provision of this act or any
> party to a franchise who is so injured in his
> business or property by a violation of a
> provision of this act relating to that
> franchise...may bring an action for
> damages...in any court of competent
> jurisdiction.

63 P.S. §818.29 (emphasis added).

27. Plaintiff is a "person" under the <u>Board of Vehicles</u>
<u>Act</u>, 63 P.S. §818.2, and Plaintiff has been "injured" by the
charge of one percent (1%) of the MSRP that GM added to the
invoice for Plaintiff's car in violation of the <u>Board of Vehicle</u>
<u>Act</u>, because Plaintiff ultimately had to bear that charge.

### Class Action Allegations

28. Plaintiff incorporates the preceding allegations
contained in paragraphs 1 through 27 as though set forth here in
full.

29. Plaintiff brings this case on behalf of:

> All persons who purchased at retail from a
> franchised GM dealer in Pennsylvania a new
> vehicle that was manufactured or distributed
> by the Chevrolet, GMC Truck, Cadillac,
> Oldsmobile, Buick, Pontiac and Saturn
> Divisions of General Motors Corporation and
> that was covered under a Marketing Initiative
> of any of those Divisions.  The class
> includes natural persons and business
> entities of any kind, but does not include GM
> employees who purchased vehicles under the GM
> Employee Purchase Plans, GM qualified fleet
> purchasers and governmental agencies.

30. The above defined class is so numerous that joinder of
all members is impracticable.  While the exact number of class
members is unknown, it is believed and therefore averred to be in
the thousands.

31. All questions of law and fact are common to all members
of the class.  These questions involve:

a)    whether GM required its Pennsylvania dealers to
participate monetarily in advertising campaigns;

b)    whether GM added one percent (1%) of the MSRP to the invoices of vehicles sold to GM's Pennsylvania dealers during the Marketing Initiatives;

c)    whether the 1% charge that GM added to the invoices for its vehicles were used in advertising campaigns;

d)    whether the one percent (1%) charge that GM added to the invoices of its vehicles violated the Board of Vehicles Act; and

e)    whether Plaintiff and the class were "injured" as that term is used in the Board of Vehicles Act.

32.    Plaintiff's claim is typical of the claims of all members of the class.  Indeed, Plaintiff's claim is identical. The only difference between Plaintiff's claim and the claims of the members of the class is the amount of damages to which Plaintiff and each class member would be respectively entitled.

33.    The defenses of GM to Plaintiff's claim are identical to the defenses of GM to each class member's claim.

34.    Plaintiff and her attorneys will fairly and adequately assert and protect the interests of the class under the criteria of Pennsylvania Rule of Civil Procedure 1709, which criteria are incorporated herein by reference.

35.    This class action provides a fair and efficient method for adjudication of this controversy under the criteria set forth of Pennsylvania Rule of Civil Procedure 1708, which criteria are incorporated herein by reference.

7

WHEREFORE, Plaintiff respectfully requests that the class requested above be certified, and that judgment be entered in favor of Plaintiff and the class and against Defendant GM for damages consistent with the Board of Vehicles Act.

JOSEPH F. RODA
Atty. I.D. No. 20615

RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

PAUL I. GUEST, JR.
Atty. I.D. No. 30488

P.O. Box 353
Newtown Square, PA 19073
(610) 353-7859

Attorneys for Plaintiff

DATE: April 25, 2000