# EXHIBIT D

00-04255

# O R D E R

**AND NOW**, this ___3___ day of October, 2001, upon consideration of plaintiff Donna

Soders' motion for class certification and defendant General Motors Corporation's response

thereto, and after hearing as mandated by Pa.R.C.P. 1707, it is hereby ORDERED and

DIRECTED that the motion is granted, as follows:

1. Plaintiff's motion for class certification is granted;

2. A class is hereby certified and defined as follows:

All persons who purchased at retail from a franchised GM dealer in
Pennsylvania a new vehicle that was manufactured or distributed by
the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac
Divisions of General Motors Corporation. This includes only persons
whose franchised GM dealers previously purchased the new vehicle
from GM or any of its divisions on or before March 31, 1999, but after
(a) September 1, 1988, for new vehicles manufactured or distributed by
the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new
vehicles manufactured or distributed by the Cadillac or Oldsmobile
Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed
by the Pontiac Division; and (d) August 1, 1990, for new vehicles
manufactured or distributed by the Buick Division.

The Class includes natural persons and business entities of any kind,
but does not include: (a) GM employees who purchased vehicles under
the GM Employee Purchase Plans; (b) GM qualified fleet purchasers;
(c) government entities; or (d) attorneys of record in this case.

3. The Court finds that the requirements of Pa.R.C.P. 1702 are satisfied, namely:

   a.  The class is so numerous that joinder of all members is

impracticable;

   b. There are questions of law or fact common to the class;

   c. The claim of the representative party is typical of the claim of

the class;

12

DO-04255

d. The representative party will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

e. A class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

4. Plaintiff is designated as the representative of this class.

5. Plaintiff's counsel, Joseph F. Roda, Esquire, is appointed lead counsel for the class.

BY THE COURT:

LOUIS J. FARINA
JUDGE

ATTEST:

COPIES TO:
Joseph F. Roda, Esq. ( 1 )
Christopher S. Underhill, Esq. ( 1 )
Michael H. Carpenter, Esq. ( 1 )
J. Farina ( 3 )

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA.R.C.P. NO:236
NOTIFICATION-THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE:
OCT 0 4 2001

13

# EXHIBIT E

<u>COURT-ORDERED LEGAL NOTICE</u>

# If you bought a new GM vehicle in Pennsylvania, you could get benefits from a class action settlement.

*A court authorized this notice.  It is not a solicitation from a lawyer.*

- A proposed settlement has been reached in a class action settlement involving the marketing programs of the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick and Pontiac Divisions of General Motors Corporation ("GM"), as well as prices paid for new vehicles.

- Generally, the settlement includes anyone who bought a new Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick and Pontiac ("GM vehicle") in Pennsylvania between September 1, 1988 and March 31, 1999 (*see* Questions 5 and 6).  The settlement provides rebate certificates worth up to $200 towards the purchase or lease of new GM vehicles.

- Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a rebate certificate. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no rebate certificate.  Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Rebate certificates will be mailed if the Court approves the settlement and after appeals are resolved.  Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................................................................ **PAGE 3**

   1.  Why did I get this notice package?
   2.  What is this lawsuit about?
   3.  What is a class action?
   4.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ............................................................................... **PAGE 3**

   5.  Am I part of the settlement?
   6.  Are there exceptions to being included?
   7.  I am still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................................................. **PAGE 4**

   8.  What does the settlement provide?
   9.  How many rebate certificates will I receive?
  10.  How long will the rebate certificates be valid?
  11.  Can I give my rebate certificates to someone else?
  12.  Can I combine my rebate certificates or use them with other discount programs?
  13.  Can I get out of the settlement?
  14.  What am I giving up as part of the settlement?

**HOW YOU GET A REBATE CERTIFICATE—SUBMITTING A CLAIM FORM** ..................... **PAGE 5**

  15.  How can I get my rebate certificate(s)?
  16.  What if I can't provide all of the requested information or documents?
  17.  What if I purchased my vehicle with someone else?
  18.  When would I get my rebate certificate(s)?

**THE LAWYERS REPRESENTING YOU** ...................................................................... **PAGE 6**

  19.  Do I have a lawyer in this case?
  20.  How will the lawyers be paid?
  21.  Should I get my own lawyer?

**OBJECTING TO THE SETTLEMENT** ......................................................................... **PAGE 7**

  22.  How do I tell the Court that I do not like the settlement?

**THE COURT'S FAIRNESS HEARING** ....................................................................... **PAGE 7**

  23.  When and where will the Court decide whether to approve the settlement?
  24.  Do I have to come to the hearing?
  25.  May I speak at the hearing?

**IF YOU DO NOTHING** ............................................................................................. **PAGE 8**

  26.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** ............................................................................. **PAGE 8**

  27.  How do I get more information?

QUESTIONS? CALL **1-888-866-1738** TOLL FREE, OR VISIT WWW.ONEPERCENTCASE.COM

# BASIC INFORMATION

## 1. Why did I get this notice package?

You received this notice package because records show that you may have purchased a new GM vehicle in Pennsylvania between September 1, 1988 and March 31, 1999. Because of this, you have a right to know about the proposed settlement of this class action lawsuit, and about your options, before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

## 2. What is this lawsuit about?

This case is about GM adding 1% of the Manufacturer's Suggested Retail Price ("MSRP") to the invoice of certain new vehicles it sold to its dealers, as part of its "Marketing Initiative" programs. The lawsuit claims that GM required dealers to use the 1% for advertising, and that this violated the Pennsylvania Board of Vehicles Act, which says that manufacturers cannot require new vehicle dealers to financially participate in advertising campaigns. The lawsuit also claims that dealers passed the 1% on to customers when they purchased vehicles.

GM denies any wrongdoing, and states that the 1% was a legal, wholesale price increase to its dealers. GM also states that the dealers did not necessarily pass on the 1% to customers. The Court has not decided whether the Class or GM is right. The settlement does not mean that GM did anything wrong or violated any laws.

The class action is known as *Soders v. General Motors Corporation,* No. CI-00-04255. Judge Louis J. Farina of the Court of Common Pleas of Lancaster County, Pennsylvania is overseeing this class action. The person who sued is called the "Plaintiff," and the company she sued, General Motors Corporation, is called "GM" or the "Defendant."

## 3. What is a class action?

In a class action, one or more people called "Class Representatives" (in this case, Donna Soders) sue on behalf of people who have similar claims. All of these people are a "Class" or "Class Members." In a class action lawsuit, one court resolves the issues for everyone in the Class—except for those who excluded themselves (*see* Question 13).

## 4. Why is there a settlement?

The Court did not decide in favor of the Class or GM. Instead, both sides agreed to a settlement. The settlement provides benefits to Class Members, and avoids the costs, risks and delays of a trial. The Class Representative, her lawyers and GM believe that the settlement is fair, reasonable, adequate, and in the best interests of all Class Members.

# WHO IS IN THE SETTLEMENT

To see if you can receive a rebate, you have to determine if you are a Class Member.

## 5. Am I part of the settlement?

The Court has decided that the Class includes everyone who purchased a new vehicle at retail in Pennsylvania from a franchised GM dealer that was made or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile,

**QUESTIONS? CALL 1-888-866-1738 TOLL FREE, OR VISIT WWW.ONEPERCENTCASE.COM**

- 3 -

Buick or Pontiac divisions of GM. The GM dealer must have purchased the new vehicle from GM or any of its divisions between the following dates:

| VEHICLE | DATE OF PURCHASE |
|---|---|
| Chevrolet or GMC Truck | September 1, 1988 and March 31, 1999 |
| Cadillac or Oldsmobile | July 1, 1989 and March 31, 1999 |
| Pontiac | July 1, 1990 and March 31, 1999 |
| Buick | August 1, 1990 and March 31, 1999 |

## 6. Are there exceptions to being included?

You are not a Class Member if you:

- leased your new vehicle
- purchased your vehicle under the GM Employee Purchase Plans, as a GM-qualified fleet purchaser, or as a government entity
- are an attorney in this case
- previously asked to be excluded from the Class

## 7. I am still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-888-866-1738 or visit www.onepercentcase.com.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8. What does the settlement provide?

GM will provide all eligible Class Members with rebate certificates worth up to $200 towards the purchase or lease of a new Buick, Cadillac, Chevrolet, GMC Truck or Pontiac vehicle. GM will also separately pay the costs associated with administering the settlement, lawyers' fees and costs, and an amount to the Class Representative. More details are in a document called the Settlement Agreement, which is available at www.onepercentcase.com.

## 9. How many rebate certificates will I receive?

You will receive one rebate certificate worth up to $200 for each new Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile or Pontiac vehicle that you purchased during the periods listed in Question 5 above. Only one rebate certificate will be issued for each vehicle.

## 10. How long will the rebate certificates be valid?

The certificates will be valid until three years after the settlement receives final court approval.

## 11. Can I give my rebate certificates to someone else?

If you do not plan to buy or lease a new vehicle within the next three years, you may transfer your rebate certificate(s) to your immediate household members (anyone living at the same address), your parents or your children at any time, as long as the certificate(s) have not expired.

During the last two years that the rebate certificates are valid, you may transfer your rebate certificate(s) directly to anyone. The rebate certificates will contain all the instructions you need and, once transferred, will be worth 75% of the value of the original certificate.

Each rebate certificate can be transferred only once, and it must be a direct transfer from you to another person. The transferred certificates may be used with any other available discount for the purchase or lease of a new GM vehicle, except other rebate certificates distributed as part of this settlement and GM Employee Discount Programs, unless those programs are being extended to all customers.

## 12. Can I combine my rebate certificates or use them with other discount programs?

As long as you received your certificates directly through this settlement and they were not transferred to you from someone else, up to two rebate certificates may be used at one time towards the purchase or lease of one vehicle. Any additional certificates must be used toward the purchase or lease of another vehicle. You may also use your rebate certificates along with any other available discount programs, except the GM Employee Discount Programs, unless that program is being extended to all consumers.

## 13. Can I get out of the settlement?

No. Class Members were already given an opportunity in an earlier notice to exclude themselves from this class action. Class Members who did not previously submit an exclusion request may not be excluded from the settlement now. This means that you are legally bound by the class action and cannot sue GM about the claims in this lawsuit ever again.

## 14. What am I giving up as part of the settlement?

If the settlement becomes final, Class Members will be releasing GM from all of the claims described and identified in section 3 (D) of the Settlement Agreement. This means that you will not be able to sue GM regarding any of the claims described in the Settlement Agreement. The Settlement Agreement is available at www.onepercentcase.com. The Settlement Agreement describes the released claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can contact the lawyers representing the Class (*see* Question 19) for free by calling the toll-free number or you can talk to your own lawyer, at your own expense, if you have any questions about the released claims or what they mean.

# HOW YOU GET A REBATE CERTIFICATE—SUBMITTING A CLAIM FORM

## 15. How can I get my rebate certificate(s)?

To get your rebate certificate(s), you must submit a valid claim form. You can use the enclosed claim form or you may get a claim form on the internet at www.onepercentcase.com, or by sending a written request to:

*Soders v. GM* - Claim Form Request
PO Box 91196
Seattle, WA 98111-9296

**QUESTIONS? CALL 1-888-866-1738 TOLL FREE, OR VISIT WWW.ONEPERCENTCASE.COM**

Read the instructions on the claim form carefully, fill out the form, attach copies of any documents you may have, and mail it to the address on the form so that it is postmarked no later than **June 15, 2009**.

After you submit your claim form, you may be asked to provide additional information or documents.

## 16. What if I can't provide all of the requested information or documents?

If you are not able to complete every portion of the claim form or provide supporting documents, your claim may still be accepted, if: (1) you or a co-purchaser listed on your claim form appears on the list of new vehicle deliveries that GM produced in this case; or (2) you list a VIN that matches a qualifying new vehicle that was sold to you during one of the periods listed in Question 5 above.

If you are not on the list and you cannot provide documents or a qualifying VIN, but you complete all other sections of the claim form, you could receive a certificate worth $200, $100, or none at all, depending on how many other Class Members submit this type of undocumented claim. The certificate would be worth $200 if 10% or less of all claims submitted are this type of undocumented claim, or $100 if more than 10%, but less than 20%, are this type of undocumented claim. If more than 20% of all claims are this type of undocumented claim, you will not receive a certificate.

## 17. What if I purchased my vehicle with someone else?

If you purchased a vehicle with someone else and you both submit a claim form, the rebate certificate will be sent to: (1) the person whose name appears on the list of new vehicle deliveries; or (2) if none of your names appear on the list, the person whose name appears first on the purchase documents; or (3) if none of your names appear on the list and the purchase documents have not been provided, the person with the earliest postmark date for his or her claim form.

## 18. When would I get my rebate certificate(s)?

Your rebate certificate(s) will be mailed if the settlement is approved, and after any appeals are resolved. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement, and updates will also be posted on www.onepercentcase.com. Please be patient.

# THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in this case?

Judge Farina has decided that Joseph F. Roda and Michele S. Burkholder of RODANAST, P.C. in Lancaster, Pennsylvania are qualified to represent you and all Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

## 20. How will the lawyers be paid?

You will not be personally charged for Class Counsel's fees or costs. Class Counsel will ask the Court to approve a payment to them of up to $1,886,000 for attorneys' fees, for their work in investigating the facts, litigating the case, and negotiating the settlement. This is less than their actual fees from the eight and a half years they have been working on this case. They will also ask the Court to approve a payment of up to $500,000 as reimbursement for the out-of-pocket expenses that they paid to litigate the case, and a payment of $5,000 to the Class Representative, who helped the lawyers on behalf of the whole Class. The Court may award less than these amounts. These fees, costs and expenses will be paid separately by GM, as part of the

settlement. These payments will not affect the amounts available for rebates. GM has agreed not to object to these requests for fees and costs.

### 21. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. However, you may hire your own lawyer at your own expense.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

### 22. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like any part of it. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to the *Soders v. GM* settlement. Be sure to include your name, address, telephone number, signature, and the reasons why you object to the settlement. Mail the objection no later than **March 16, 2009** to:

*Soders v. GM* Class Counsel
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601

Any objections postmarked after that date may not be considered.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to.

### 23. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 9:00 a.m. on Tuesday, **April 28, 2009**, in Courtroom 10 at the Lancaster County Courthouse, 50 North Duke Street, Lancaster, Pennsylvania 17602. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. Judge Farina will listen to people who have asked to speak at the hearing (*see* Question 25). After the hearing, Judge Farina will decide whether to approve the settlement. We do not know how long these decisions will take.

### 24. Do I have to come to the hearing?

No. Class Counsel will answer questions that Judge Farina may have. But you are welcome to come at your own expense, or pay your own lawyer to attend. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.

### 25. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter via first class U.S. mail saying that it is your "Notice of Intention to Appear in *Soders v. GM*." Be sure to include

your name, address, telephone number, and signature. Your Notice of Intent to Appear must be postmarked no later than **March 16, 2009,** and must be sent to:

*Soders v. GM Class Counsel*
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601.

You may not be able to speak at the hearing if your Notice of Intent to Appear is not postmarked by that date.

# If You Do Nothing

### 26. What happens if I do nothing at all?

If you do nothing, you will not receive a rebate certificate. You will be bound by all orders and judgments of the Court in this case, which means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against GM about the legal issues in this case.

# Getting More Information

### 27. How do I get more information?

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement, and find answers to common questions about the settlement, a claim form, and other information, by visiting www.onepercentcase.com. You can also get more information by calling 1-888-866-1738, or by writing to:

*Soders v. General Motors Corp.*
PO Box 91196
Seattle, WA 98111-9296

# EXHIBIT F

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this 15th day of December, 2008, by and

between General Motors Corporation (hereinafter "GM") and Plaintiff in *Soders v. General*

*Motors Corporation*, Case No. CI-00-04255, pending in the Court of Common Pleas of

Lancaster County, Pennsylvania, by and through their undersigned attorneys.

1.    **DEFINIITIONS**

1.1.    "Action" means the lawsuit captioned *Soders v. General Motors Corporation*,

Case No. CI-00-04255, pending in the Court of Common Pleas of Lancaster County,

Pennsylvania.

1.2.    "Certificate" means a coupon or otherwise documented right, in a form acceptable

to GM and Class Counsel, that shall entitle the holder to a discount in the amount of $200.00 on

the purchase or lease of a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle during the

Claim Period as set forth in subparagraphs 3.1 through 3.12 below.

1.2.a.    "Assignable Certificate" means an alternative form of the Certificate, in a

form acceptable to GM and Class Counsel, that shall have a value of seventy-five percent (75%)

of the initial Certificate ($150.00) or Undocumented Certificate ($75.00), and shall be available

to the Claimant as set forth in subparagraph 3.13 below.

1.2.b.    "Undocumented Certificate" means an alternative form of the Certificate,

in a form acceptable to GM and Class Counsel, that shall have a value of fifty (50%) of the initial

Certificate, or $100.00, and shall be available to the Claimant as set forth in subparagraph 3.4

below.

1.3.    "Claim" means a claim to receive a Certificate under subparagraphs 3.1 through

3.12 below.

1

1.3.a.    "Undocumented Claim" means a Claim listed on a Claim Form by a Claimant who has completed all but the VIN portion of the Claim Form, but after the period to cure deficiencies as outlined in subparagraph 3.7 below, has not provided any of the following: (1) Proof of Purchase; or (2) a VIN matching a new and previously untitled vehicle sold to the Claimant or a co-purchaser of the Claimant listed on the Claim Form; or (3) the name of the Claimant or a co-purchaser of the Claimant listed on the Claim Form appearing on the list of new vehicle deliveries produced in discovery in this Action.

1.4.    "Claimant" means a Class Member, or if the Class Member is deceased, his/her executor or administrator, who submits a Claim.

1.5.    "Claim Deadline" means one hundred twenty (120) days from the last date of published notice of the Settlement, as approved and ordered by the Court.

1.6.    "Claim Form" means a document that Class Members must submit to request a Certificate, in a form acceptable to GM and Class Counsel.

1.7.    "Claims Administrator" means GM or an entity mutually acceptable to Plaintiff and GM, retained and paid for by GM, to administer the Settlement and the Claims process set forth in subparagraphs 3.1 through 3.13 below, by, among other things, sending direct mail notices as outlined in subparagraph 3.20 below; receiving and processing Claims; determining which Claims are valid; assisting Class Members with the completion and submission of Claims in accordance with procedures established by, and mutually acceptable to, Plaintiff and GM; issuing and mailing Certificates and Undocumented Certificates; receiving and exchanging Certificates and Undocumented Certificates for Assignable Certificates; and ensuring that Claims fulfillment is properly implemented.

2

1.8.    "Class" means all persons who purchased at retail from a franchised GM dealer in

Pennsylvania a new and not previously titled vehicle that was manufactured or distributed by the

Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick or Pontiac Divisions of General Motors

Corporation. This includes only persons whose franchised GM dealers previously purchased the

new vehicle from GM or any of its divisions on or before March 31, 1999, but after (a)

September 1, 1988, for new vehicles manufactured or distributed by the Chevrolet or GMC

Truck Divisions; (b) July 1, 1989, for new vehicles manufactured or distributed by the Cadillac

or Oldsmobile Divisions; (c) July 1, 1990, for new vehicles manufactured or distributed by the

Pontiac Division; and (d) August 1, 1990, for new vehicles manufactured or distributed by the

Buick Division. The Class includes natural persons and business entities of any kind, but does

not include: (a) persons who purchased vehicles under the GM Employee Purchase Plans; (b)

GM-qualified fleet purchasers; (c) government entities; (d) attorneys of record in this case; or (e)

lessees.

1.9.    "Class Counsel" means Joseph F. Roda and Michele S. Burkholder of

RODANAST, P.C.

1.10.    "Class Member" means a member of the Class.

1.11.    "Class Representative" means the named plaintiff, Donna Soders, in the Action.

1.12.    "Court" means the Court of Common Pleas of Lancaster County, Pennsylvania.

1.13.    "Effective Date of Settlement" means the latest of the following dates: (i) if no

appeal from the Judgment is filed, the date of expiration of the time for the filing or noticing of

any appeal from the Judgment; or (ii) if an appeal from the Judgment is filed, and the Judgment

is affirmed or the appeal dismissed, the date beyond which Pennsylvania Supreme Court review

is no longer available; or (iii) if the Superior Court of Pennsylvania issues a judgment affirming

3

the Judgment or dismissing the appeal ("Appellate Judgment"), and a petition for review of the Appellate Judgment is filed and denied by the Pennsylvania Supreme Court, the date beyond which United States Supreme Court review is no longer available; or (iv) if a petition for review of the Appellate Judgment is filed and granted by the Pennsylvania Supreme Court, or the Pennsylvania Supreme Court orders review of the Appellate Judgment on its own motion, and the Appellate Judgment is affirmed or the review proceeding dismissed, and no petition for a writ of certiorari with respect to the Supreme Court's judgment affirming the Appellate Judgment or dismissing the review proceeding ("Review Judgment") is filed, the date of expiration of the time for the filing of such a petition for a writ of certiorari; or (v) if such a petition for a writ of certiorari is filed and denied, the date the petition is denied; or (vi) if such a petition for a writ of certiorari is filed and granted, the date of final affirmance of the Review Judgment or final dismissal of the review proceeding initiated by the petition for a writ of certiorari. This Settlement shall not become Effective, and this definition of Effective Date of Settlement shall not be met, and GM shall have the option and right to rescind this Settlement at its sole discretion by filing with the Court written notice of such election, with proof of service on Class Counsel, if Class Counsel is awarded attorneys' fees exceeding $1.886 million and/or costs exceeding $500,000. Notwithstanding the above, and for the sole purpose of avoiding unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal from the Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment awarding (i) an amount of $5,000.00 to the Representative Plaintiff, (ii) attorneys' fees in an amount not to exceed $1.886 million and/or (iii) documented costs in an amount not to exceed $500,000, and (b) could not result in the reversal and/or modification of the Judgment (including the release provisions contained in paragraphs 3.25 through 3.30), then GM and Class Counsel

4

may, acting in good faith and upon mutual agreement, agree that the Settlement is otherwise

Effective and that implementation of the Settlement, including distribution of the settlement

benefits, should proceed.

    1.14.  "GM Product" means a new Chevrolet, Cadillac, Buick, Pontiac or GMC vehicle.

    1.15.  "Judgment" means the judgment to be entered by the Court pursuant to this

Settlement, in a form acceptable to GM and Class Counsel, which shall include final approval of

the Settlement, dismissal of the Action with prejudice, and approval and entry of the provisions

contained in Section 3(D), Release, below (i.e., subparagraphs 3.25 through 3.30).

    1.16.  "Notice Order" means an Order in a form acceptable to GM and Class Counsel,

providing for, among other things, preliminary approval of the Settlement, dissemination of the

notice of the Settlement to the Class, and setting of the Fairness Hearing.

    1.17.  "Parties" means the Class Representative and Defendant GM.

    1.18.  "Proof of Purchase" means contemporaneous documentary proof of the purchase

at retail from a franchised GM dealer in Pennsylvania of a new and not previously titled vehicle

that was manufactured or distributed by the Chevrolet, GMC Truck, Cadillac, Oldsmobile, Buick

or Pontiac Divisions of General Motors Corporation. Each such purchase must have occurred on

or before March 31, 1999, but after (a) September 1, 1988, for new vehicles manufactured or

distributed by the Chevrolet or GMC Truck Divisions; (b) July 1, 1989, for new vehicles

manufactured or distributed by the Cadillac or Oldsmobile Divisions; (c) July 1, 1990, for new

vehicles manufactured or distributed by the Pontiac Division; and (d) August 1, 1990, for new

vehicles manufactured or distributed by the Buick Division. Acceptable forms of Proof of

Purchase may include a copy of (i) the retail invoice; (ii) original finance documentation; (iii) the

title; (iv) insurance documentation; (v) a cancelled check; and/or (vi) similar documentation

sufficient to reasonably establish that Claimant purchased, rather than leased, a new and not

previously titled vehicle that is subject to this Settlement.

## 2.    RECITALS

2.1.    GM is a corporation organized under the laws of the State of Delaware and is

engaged in the business of, among other things, manufacturing automotive products.

2.2.    Class Counsel, on behalf of the foregoing Class Representative, commenced the

Action against GM, alleging that GM violated the Pennsylvania Board of Vehicles Act.

2.3.    Defendant GM has vigorously defended the Action and denies all allegations of

wrongdoing asserted in the Action and denies liability under any cause of action asserted therein.

2.4.    The Parties recognize that the outcome of the Action is uncertain and that

pursuing the Action to litigated judgments would entail substantial cost, risk and delay.

2.5.    The Class Representative and Class Counsel have conducted an investigation and

evaluation of the factual and legal issues raised by the claims asserted in the Action and the

defenses asserted by GM thereto, and believe that, in light of the cost, risk and delay of

continued litigation balanced against the benefits of the Settlement set forth in this Agreement,

such Settlement is in the best interests of, and is fair, reasonable, and adequate for the Class as a

whole.

2.6.    Through this Settlement, the Parties desire to compromise and settle all issues and

claims that have been or could have been brought in the Action by or on behalf of members of

the Class.

2.7.    The Parties agree to undertake all reasonable efforts, including all steps and

efforts that may become necessary by order of the Court, to effectuate the terms and purpose of

this Agreement, to secure the Court's approval of it, and to oppose any objections to and appeals from any order of final approval.

2.8.    It is specifically understood that nothing herein shall limit GM in making its business decisions, including, but not limited to, decisions at any time regarding marketing and/or the use of monies derived from the sale of vehicles; nothing herein shall require GM to adjust its wholesale prices, manufacturer suggested retail prices or dealer discounts in any way; and nothing herein shall affect in any way GM's freedom to establish prices to dealers, manufacturer suggested retail prices or any other pricing terms.

3.    **SETTLEMENT CONSIDERATION**

NOW, THEREFORE, GM and the Class Representative and the Class, by and through Class Counsel, in consideration of the mutual covenants and agreements herein, agree to follows:

A.    **Claims Reimbursement**

3.1.    All Claimants who submit a proper Claim Form and, where available and feasible through the Claimant's best efforts, Proof of Purchase, will be eligible to receive one Certificate from the Claims Administrator for each new Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile or Pontiac vehicle that they purchased during the periods listed in subparagraph 1.8 above. The Claim Form must be submitted by the Claimant via ordinary U.S. Mail, and must be postmarked by the Claim Deadline.

3.2.    All Claimants must complete all sections of the Claim Form, except that they shall not be required to fill in the VINs for the listed vehicles if the VINs are not reasonably known or available to the Claimants, and must use their best efforts to submit, along with the Claim Form, Proof of Purchase of the vehicle. Failure to complete the Claim Form in its entirety shall not be a sufficient basis to deny the Claim, provided that: (i) the Claimant submits Proof of

7

Purchase, which contains information sufficient to confirm the authenticity of the Claim; or (ii)

the Claimant or a co-purchaser listed on the Claim Form appears on the list of new vehicle

deliveries produced in discovery in this Action.

    3.3.    If a Claimant who has completed all but the VIN portion of the Claim Form (i.e.,

the "required responses") is unable to submit any Proof of Purchase, GM will nevertheless

accept the Claim if there is no evidence that the Claimant is not eligible and: (i) the Claimant or a

co-purchaser listed on the Claim Form appears on the list of new vehicle deliveries produced in

discovery in the Action; or (ii) the Claimant provides a VIN matching a new and previously

untitled vehicle sold to the Claimant during the pertinent period. Notwithstanding the foregoing,

in the event a Claimant completes the Claim Form and provides either Proof of Purchase or a

qualifying VIN, the failure of that Claimant to appear on the list of new vehicle deliveries shall

not constitute evidence that the Claimant is not eligible.

    3.4.    In no circumstance will more than one Certificate or Undocumented Certificate be

issued in relation to a single vehicle purchase. If two or more co-purchasers submit Claim Forms

that would otherwise be valid, the Certificate or Undocumented Certificate will be provided to:

(1) the purchaser whose name appears on the list of new vehicle deliveries; or (2) if none of the

co-purchasers' names appear on the list, the purchaser whose name appears first on the purchase

documents; or (3) if none of the co-purchasers' names appear on the list, and the purchase

documents have not been produced, the purchaser with the earliest postmark date for his or her

Claim Form.

    3.5.    Within thirty (30) days after expiration of the period for the last of all Claimants

to cure deficiencies (as defined in subparagraph 3.7 below), the Claims Administrator shall

aggregate the total number of Claims received and calculate the percentage of those Claims that

constitute Undocumented Claims. The Undocumented Claims would be rejected under this Settlement. However, GM agrees to provide one Certificate for each Undocumented Claim if the Undocumented Claims do not exceed 10% of the total aggregate of Claims received. In the event the Undocumented Claims exceed 10%, but do not exceed 20%, of the total aggregate of Claims received, GM hereby agrees to provide one Undocumented Certificate for each Undocumented Claim. In the event the Undocumented Claims exceed 20% of the total aggregate of Claims received, the Parties agree that the Undocumented Claims will be rejected and will not be entitled to any Certificate or Undocumented Certificate.

3.6.    The Claims Administrator has the right, if it reasonably suspects a potentially invalid Claim or fraud, to request additional information. In addition, GM has the right to perform a review of Claims and, in the event that GM reasonably suspects a potentially invalid Claim or fraud, to request additional documentation before the Claim is approved and the Certificate is issued.

3.7.    Within thirty (30) days after receiving a Claim Form, the Claims Administrator must determine whether to conditionally accept the Claim subject to the provisions in subparagraph 3.4 above, deny the Claim, or request additional information or materials, and if the latter, send a written request to the Claimant for any additional information or materials. After giving the Claimant a reasonable opportunity of forty-five (45) days to cure a deficient Claim, the Claims Administrator shall determine the sufficiency or deficiency of the Claim. GM and Class Counsel will work with the Claims Administrator to develop a mutually-accepted process by which the sufficiency or deficiency of Claims are determined, including GM's ability to challenge Claims that it suspects are invalid, and Class Counsel's ability to challenge the anticipated denial of Claims before a final determination is made. The Claims Administrator

9

must follow the procedures outlined in this Settlement Agreement and the agreed-upon process in making its determination of the sufficiency or deficiency of a Claim. Its determination shall be final and not subject to appeal by any party.

3.8.    Claims may not be assigned and must be made in the name of the Class Member (i.e., vehicle purchaser), or in the event the Class Member is deceased, the Claim can be made by the Class Member's executor or administrator.

3.9.    Within sixty (60) days after the (i) date that the Claims Administrator calculates the percentage of Undocumented Claims and completes the corresponding procedures set forth in subparagraph 3.5 above, or (ii) the Effective Date of Settlement, whichever occurs later, the Claims Administrator shall mail the Certificates and Undocumented Certificates, as appropriate, issued to the Claimants, to be used towards the purchase or lease of a new GM Product.

3.10.    Certificates and Undocumented Certificates shall be stackable with any other available discount for the purchase or lease of a GM Product, except (i) the GM employee discount programs (except in a circumstance where such program is extended to all consumers) and (ii) the Assignable Certificate, as set forth in subparagraph 3.13 below. No more than two Certificates or Undocumented Certificates can be used in any single vehicle transaction.

3.11.    The Certificates and Undocumented Certificates shall be valid for thirty-six (36) months after final approval of the Settlement.

3.12.    Certificates and Undocumented Certificates shall be non-transferable during the first twelve (12) months after final approval of the Settlement, except to immediate household members (i.e., persons living at the same address as the Class Member) or to the parents or children of Class Members. Such transfers to immediate household members, parents and

10

children may be made at any time during the thirty-six (36) months that the Certificates and
Undocumented Certificates are valid.

3.13.   After the first twelve (12) months, Class Members who have received a
Certificate or Undocumented Certificate but have not availed themselves of the right to use it for
the purchase or lease of a new GM Product may convert the Certificate or Undocumented
Certificate into an Assignable Certificate. The Assignable Certificate shall be valid until thirty-
six (36) months after final approval of the Settlement. Only one Assignable Certificate can be
utilized with respect to any GM vehicle lease or purchase transaction. Assignable Certificates
shall be stackable with any other available discount for the purchase or lease of a GM Product,
except (i) the GM employee discount programs (except in a circumstance where such program is
extended to all consumers); (ii) Certificates; or (iii) Undocumented Certificates. The Assignable
Certificate may be transferred by the Claimant only once to a specific individual without the
involvement of third parties and shall be subject to procedures by which the Claims
Administrator and/or GM, at its option, shall be entitled to verify that the transfer is valid.

3.14.   GM will pay the Class Representative the amount of $5,000.00 by delivering a
check in that amount payable to "RODANAST, P.C., as attorneys for Donna Soders" within seven
(7) business days after (i) the Effective Date of the Settlement or (ii) delivery of a properly-
completed IRS W-9 Form, whichever occurs later.

**B.**    **Costs and Fees**

3.15.   GM will pay all costs and fees of the Claims Administrator and Claims
administration.

3.16.   GM will pay all costs, not to exceed $441,000, associated with disseminating the
publication notice of the Settlement to the Class. Class Counsel shall contract with the entity

11

responsible for disseminating notice, with GM signing the retention agreement as the responsible party for any publication notice costs up to and including $441,000. GM will pay the funds directly to the entity responsible for disseminating notice in accordance with the terms of the retention agreement.

3.17.    GM will not object to, and will pay, Class Counsel's attorneys' fees in an amount to be approved by the Court but not to exceed the total aggregate amount of $1.886 million. This represents less than the amount of fees that Class Counsel have incurred in litigating this Action. In no event shall GM be obligated to pay for attorneys' fees in excess of $1.886 million. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is conditioned upon the attorneys' fee award not exceeding $1.886 million and in the event it does, the Settlement Agreement will not become Effective, as set forth in subparagraph 1.13 above.

3.18.    GM will not object to, and will pay, Class Counsel's documented costs in an amount to be approved by the Court but not to exceed the total aggregate amount of $500,000. In no event shall GM be obligated to pay for documented costs in excess of $500,000. GM will pay this amount in an interest-bearing escrow account within seven (7) business days after entry of the Court's final Judgment approving the Settlement, and shall release this amount to Class Counsel, along with any interest accrued, within seven (7) business days after the Effective Date of Settlement. Notwithstanding the foregoing, GM's agreement to the terms of the Settlement is

12

conditioned upon the cost award not exceeding $500,000 and in the event it does, the Settlement

Agreement will not become Effective, as set forth in subparagraph 1.13 above.

C.    **Notice to Class Members; Objections**

3.19.    Class notice of the Settlement shall be primarily by publication, using a

publication notice in a form acceptable to GM and Class Counsel and a notice plan identical to

the notice plan used after initial certification of the Class, except that notice shall be published

twice, rather than once, in the weekday newspaper editions, and shall also be published once

each in the Pennsylvania state editions of Newsweek and People. The notice plan may be further

revised as may be mutually acceptable to the Parties and approved by the Court.

3.20.    In addition to notice by publication, no later than the last published notice date,

the Claims Administrator shall send direct mail notice to each Class Member who (i) was a

recipient of the Absent Class Member Questionnaire in connection with discovery in the Action;

(ii) has made direct contact with Class Counsel; or (iii) is otherwise identifiable as having a

specific interest in the Action. If any such direct mail notice is returned as undeliverable and/or

unclaimed, within fourteen (14) business days, the Claims Administrator shall attempt to

determine a valid address for such Class Member through the National Change of Address

database and mail the direct mail notice to any valid address that is found for the Class Member.

This mail notice shall be in a form acceptable to GM and Class Counsel.

3.21.    The Settlement notice plan shall be implemented within forty-five (45) days after

its approval by the Court unless otherwise agreed to by the Parties.

3.22.    Subject to Court approval, the Settlement notice shall give Class Members thirty

(30) days from the last published notice of the Settlement to object to the proposed Settlement.

Class Members shall submit any objections in writing, along with any supporting papers, to

Class Counsel, who shall provide copies to GM. The objections must state the reasons therefore, and must be postmarked by the deadline date. Any Class Member who fails to make objection in the manner provided shall be deemed to have waived any such objection and shall be foreclosed from making any objection (at the Settlement Fairness Hearing, by appeal or otherwise) to this Settlement.

3.23.    Subject to Court approval, the Settlement notice shall give at least forty-five (45) days advance notice of the final Fairness Hearing. Class Members shall submit copies of any notices of intent to appear and speak at the final Fairness Hearing to Class Counsel, who shall provide copies to GM. Such notices must be postmarked by the deadline date, which shall be thirty (30) days from the date of the last published notice of the Settlement. Any Class Member who fails to submit a notice of intent to appear and speak at the hearing in the manner provided shall be foreclosed from speaking at the hearing.

3.24.    The Settlement notice shall give each Class Member one hundred twenty (120) days from the date of the last published notice to submit a Claim. Class Members shall be entitled to submit Claims immediately upon receipt of notice, subject to final approval by the Court of the Settlement.

**D.    Release of Claims**

3.25.    If the Settlement is approved by the Court and the Action is dismissed with prejudice, each Class Member shall be bound thereby and shall have only the relief provided in this Settlement. Said dismissal will bar all claims that were or could have been asserted in the Action, or which arise out of or could be based on the allegations of the class action complaint filed in the Action, or which were based upon any of the acts or transactions set forth in the complaint, provided, however, that nothing herein shall restrict the right to bring claims based on

14

unrelated conduct of GM that could not have been asserted in the Action, or on a breach of any terms set forth in this Settlement Agreement.

3.26.    In consideration of the benefits described above, the Class Representative promises, covenants and agrees, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Class Representative and the Class Members, including without limitation any of their present or former affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, assigns, officers, directors, trustees, employees, agents, attorneys, representatives, shareholders, heirs, spouses, executors, administrators, or insurers and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its present or former subsidiaries, divisions, affiliates, associates, general or limited partners or partnerships, predecessors, successors, assigns, officers, directors, trustees, employees, agents, attorneys, representatives, shareholders, heirs, executors, administrators, or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, under state statutory or common law, federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, claims arising under the Pennsylvania Board of Vehicles Act, whether or not such claims were or could have been raised or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct or matters in the Action, including but not limited to those based on: (i) the portion of price previously labeled on dealer vehicle invoices as the "GM Marketing Adjustment" in the amount of 1% of

15

the vehicle's MSRP exclusive of freight and destination charges; and (ii) the various GM

divisional marketing initiatives and/or programs at issue in the Action.

3.27.    Upon the Effective Date of Settlement, for the consideration provided for herein

and by operation of the Judgment, the Class Representative shall have, and each Class Member

and the Class shall be deemed to have, covenanted and agreed that he or she shall not, at any

time, institute, cause to be instituted, assist in instituting, or permit to be instituted on his or her

behalf any proceeding, in any state or federal court, in or before any administrative agency, or

otherwise, or otherwise allege or assert any of the claims released against the Released Persons,

individually or collectively, in subparagraph 3.26 above.

3.28.    Release language shall be included on the Claim Form and on the reverse side of

the check issued to the Class Representative.

3.29.    The Class Representative, by and through Class Counsel, agrees to seek Court

approval of this Settlement Agreement and the complete dismissal with prejudice of all claims of

the Class against GM in the Action.  The Class Representative and Class Counsel shall take such

steps as may be necessary or as may be requested by the Court, and otherwise shall use their best

efforts to effectuate this Settlement Agreement and the settlement herein provided.  Likewise,

GM agrees, where appropriate, to take such steps as may be necessary or as may be requested by

the Court, and otherwise shall use its best efforts to effectuate this Settlement Agreement and the

settlement herein provided.  The Class Representative Plaintiff and Class Counsel will move the

Court for entry of Judgment dismissing with prejudice all claims asserted against GM by the

Class Representative and the Class in the Action.

3.30.    The sole remedy for default of this Agreement by either of the Parties is an action

for breach of this Agreement.  Following entry by the Court of a Judgment and completion of all

16

obligations and undertakings set forth therein, no default by any party shall affect the final

dismissal of the Action with prejudice and the discharge and release of GM as set forth in

subparagraphs 3.25 through 3.30.

## 4. DENIAL OF WRONGDOING OR LIABILITY

    4.1.    This Agreement constitutes the resolution of disputed claims, is for settlement

purposes only, and shall not be used by any Party or Class Counsel for any other purpose. GM

expressly denies that it has violated any law, or injured the Class Representative or the Class in

any way, or engaged in any wrongdoing with respect to the Class Representative or the Class.

GM denies that it is liable to the Class Representative or the Class for any claims, causes of

action, costs, expenses, attorneys' fees or damages of any kind relating to the Action. GM denies

that any of the claims were appropriate for maintenance as a class action through trial. Neither

this Agreement nor any actions undertaken by GM in satisfaction of this Agreement shall

constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the

validity of any allegation of fact or law made by the Class Representative or the Class in the

Action. This Agreement, even when Effective, shall not be offered or be admissible in evidence

against GM or cited or referred to in any action or proceeding, except in an action or proceeding

brought to enforce its terms or by GM in defense of any claims brought by the Class

Representative, the Class or by any Class Members.

## 5. MISCELLANEOUS PROVISIONS.

    5.1.    The Class Representative and GM expressly agree that the terms of this

Agreement and all provisions hereof, including all representations, promises, agreements,

covenants, and warranties, are contractual and not a mere recital and shall survive the execution

of this Agreement and entry of the Judgment and shall continue in full force and effect. All

exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

5.2.    This Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement, the sole exception being the term sheet attached hereto as Exhibit A. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part or all of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. No modification or waiver of any provisions of this Agreement shall be effective unless made in writing and signed by or on behalf of the person against whom enforcement of the Agreement is sought.

5.3.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

5.4.    The Parties have negotiated all of the terms and conditions of this Agreement at arm's length. None of the Parties or their respective counsel will be deemed the drafter of this Agreement or its exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Party as the drafter thereof.

5.5.    The Parties hereto warrant and represent that no promise or inducement has been offered or made for the release and covenants in subparagraphs 3.25 through 3.30 except as herein set forth, that the releases and covenants are executed without reliance on any statements

18

or any representations not contained herein, and that the release and covenants reflects the entire

agreement among the Parties with respect to the terms of the releases and covenants.

    5.6.    The Parties acknowledge and agree and specifically warrant to each other that

they have fully read this Agreement and the releases and covenants contained in subparagraphs

3.25 through 3.30, received independent legal advice with respect to the advisability of entering

into this Agreement with those releases and covenants and the legal effect of this Agreement and

the releases and covenants, and fully understand their effect.

    5.7.    GM and Class Counsel may agree, on behalf of the Parties and subject to approval

of the Court where required, to reasonable extensions of time to carry out the provisions of this

Agreement.

    5.8.    This Agreement shall be binding upon and inure to the Parties' successors and

assigns. This Agreement is not intended to create any third-party beneficiaries other than

persons (including Class Members) for which a direct benefit is specifically provided for

hereunder.

    5.9.    In the event that the release and covenants contained in subparagraphs 3.25

through 3.30 of this Agreement shall for any reason be held in whole or material part to be

invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability

shall not affect any other provision of this Agreement if GM elects in writing to Class Counsel to

proceed as if such invalid, illegal or unenforceable provision had never been included in this

Agreement. If no such election is made, then the Agreement shall be null and void. If one or

more of the other material provisions contained in this Agreement is held to be invalid, illegal or

unenforceable, such invalidity, illegality or unenforceability will not affect other provisions if

GM and the Class Representative, on behalf of the Class, both elect to proceed as if such invalid, illegal or unenforceable provision were not contained in this Agreement.

5.10.  No consideration or amount or sum paid, credited, offered or expended by GM in its performance of this Agreement constitutes a penalty, fine, punitive damage or other form of assessment for any alleged claim or offense.

5.11.  For purposes of this Agreement, the Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information ("Protective Orders") remain in effect and all Parties and counsel remain bound to comply with the provisions of those Protective Orders.  Within thirty (30) days of the Effective Date of Settlement, each of the Parties agrees to use its best efforts to return or destroy all confidential documents produced in the Action and all copies thereof, and each of the Parties' counsel will certify in writing that it used its best efforts to return or destroy all such documents.

5.12.  The Parties hereto understand, acknowledge and agree that they (i) have each performed an independent investigation of the allegations of fact and law made in connection with the Action, and (ii) that they each may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Agreement.  Nevertheless, it is the Parties' intention to resolve their disputes pursuant to the terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any change or difference in facts or law.

5.13.  This Agreement shall be governed and construed in accordance with the laws of

the Commonwealth of Pennsylvania, without regard to any conflict of law provision that could

require the application of the law of any other jurisdiction.

5.14.  In the event the Court issues the Order approving this Settlement Agreement and

the Action is dismissed with prejudice, the Action will be terminated subject only to the Court's

inherent powers solely and exclusively to enforce the terms of the Settlement Agreement.

5.15.  Whenever under the terms of this Agreement, a Party is required to provide

written notice to the other, such notice must be directed to the individual at the address specified

below, unless that individual or the individual's successor gives notice to the other Party in

writing of another individual or address to whom such notice should be directed.

Written notice to the Class Representative or Class Counsel must be given to:

>Joseph F. Roda, Esq.
>Michele S. Burkholder, Esq.
>RODANAST, P.C.
>801 Estelle Drive
>Lancaster, PA 17601

Written notice to GM must be given to:

>Jeffrey A. Lipps, Esq.
>Angela M. Paul Whitfield, Esq.
>CARPENTER LIPPS & LELAND LLP
>280 Plaza, Suite 1300
>280 North High Street
>Columbus, Ohio 43215

With a copy to:

>Lawrence S. Buonomo, Esq.
>General Motors Legal Staff
>400 Renaissance Center
>MC 482-026-601
>Detroit, MI 48265

5.16.  If this Settlement Agreement is not approved by the Court or if any such approval

is reversed on appeal, the Settlement Agreement shall be null and void, shall have no further

force and effect, and shall not be offered in evidence or under the Action for any purpose,
including for the purpose of arguing for or against the existence, certification, or maintenance of
any purposed class. In such event, the Settlement Agreement and all negotiations, proceedings,
documents prepared and statements made in connection herewith shall be deemed to have been
made without prejudice to GM or the Class Representative, shall not be deemed or construed to
be an admission or confession by any party of any fact, matter, or proposition of law, and shall
not be used in any manner for any purpose. Thus, all Parties to the Action shall stand in the
same position as if the Settlement Agreement had not been negotiated, made or filed with the
Court. If the Settlement is not approved, the Parties may elect to move the Court to vacate any
and all orders entered by the Court pursuant to the provisions of this Settlement Agreement, and
GM expressly reserves the right to continue to challenge and to pursue appealing of the orders
regarding the certification of the Class in the Action, and Class Counsel expressly reserve the
right to oppose any such challenges on appeal by GM.

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their
duly authorized attorneys below.

*Michael S. Burkholder*

Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

Joseph F. Roda, Esq. (20615)
Michele S. Burkholder, Esq. (78063)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000

Attorneys for Plaintiff Donna Soders, on
behalf of herself and all others similarly
situated

Michael H. Carpenter, Esq.
Jeffrey A. Lipps, Esq.
Angela M. Paul Whitfield, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100

Christopher S. Underhill, Esq. (07013)
HARTMAN, UNDERHILL & BRUBAKER LLP
221 East Chestnut Street
Lancaster, Pennsylvania 17602
(717) 299-7254

Lawrence S. Buonomo, Esq.
General Motors Legal Staff
General Motors Corporation
400 Renaissance Center
P. O. Box 400
Detroit, Michigan 48254-4000

Attorneys for Defendant
General Motors Corporation

# EXHIBIT G

COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

DONNA SODERS, on Behalf of Herself :
and all Others Similarly Situated :
                         :
           VS.                :        CI-00-04255
                         :
GENERAL MOTORS CORPORATION :

## JUDGMENT ENTRY

AND NOW, this 28th day of April, 2009, upon consideration of Plaintiff's

Motion for Final Approval of Settlement, Class Representative Payments, Fee Award and

Costs; Plaintiff's supporting memoranda and exhibits; and oral presentations at the final

fairness hearing held on April 28, 2009, it is hereby ORDERED, ADJUDGED and

DECREED that:

      1.    Notice of the proposed settlement was made in accordance with the

instructions provided in this Court's Order Setting Fairness Hearing on Proposed Class

Action Settlement.

      2.    All class members have been provided with a sufficient opportunity to

submit objections to the proposed settlement and participate in the final fairness hearing,

and all submissions and presentations by members of the class in this action have been

given due consideration.

      3.    The Court has held a hearing to consider the fairness, reasonableness

and adequacy of the proposed Settlement, and has considered, *inter alia*, the complexity,

expense and likely duration of the litigation; the reaction of the class to the proposed

settlement; the stage of the proceedings and the amount of discovery completed; the risk

of establishing liability and damages and maintaining the class through trial; the ability of

Defendant General Motors corporation to withstand a greater judgment; and the range of

reasonableness of the settlement in light of the best possible recovery and all the

attendant risks of litigation.

4.    The Court has also given significant weight to the belief of experienced

counsel appointed to represent the interests of the class that the proposed settlement is in

the best interest of the class.

5.    The Court finds that the proposed settlement is not the product of

collusion between the parties and their respective counsel, but rather was the result of

bona fide, good faith, arm's length negotiations between experienced counsel after

sufficient discovery was obtained.

6.    A review of all relevant factors supports the proposed settlement, and the

same is hereby approved and found to be, in all respects, fair, reasonable and adequate

and in the best interests of the class as a whole.

7.    The requested payment of $5,000 to the class representative is found to be

fair and reasonable in light of her efforts, and is hereby approved.

8.    The requested total fee award of $1,687,858.75, voluntarily reduced by ½

by class counsel at the final fairness hearing to $843,929.37, is found to be fair and

reasonable, and is approved, in light of the time and efforts reasonably expended by the

attorneys in the litigation; the quality of services rendered; the results achieved and

benefits conferred upon the class; the magnitude, complexity and uniqueness of the

litigation; and the contingent nature of their fee.

9.    The requested reimbursement of total costs of $437,416.92 to class

counsel is found to be fair and reasonable, and is hereby approved.

10.    The parties are bound by all terms in the Settlement Agreement, including

the Release of Claims provisions in Subparagraphs 3.22 through 3.27 of the Settlement

Agreement, and shall take all steps necessary to implement and effectuate the terms in

the Settlement Agreement.

11.    This action is dismissed with prejudice.

12.    The termination of the above-captioned action is subject only to the

Court's continuing jurisdiction solely and exclusively to enforce the terms of the Settlement

Agreement.

BY THE COURT:

LOUIS J. FARINA
PRES. JUDGE
LOUIS J. FARINA
PRESIDENT JUDGE

Attest:

Copies to:

Joseph F. Roda, Esq.; Michele S. Burkholder, Esq.
Christopher S. Underhill, Esq.
Michael H. Carpenter., Esq.; Jeffrey A. Lipps, Esq.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA R.C.P. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 4/28/09

-3-