**Hearing Date:** August 6, 2010 at 9:45 AM (ET)
**Objection Deadline:** July 30, 2010 by 5:00 PM (ET)

KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

-   and   -

MEYER AND WILLIAMS,
ATTORNEYS AT LAW, P.C.
P. Richard Meyer
Robert N. Williams
350 E. Broadway, P.O. Box 2608
Jackson, WY 83001
 (307) 733-8300

*Co-Counsel to Julie and David Brittingham*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                            :
In re                                                       :    Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY, et al.,                         :    Case No. 09-50026 (REG)
f/k/a GENERAL MOTORS, CORP. *et al*.,                       :
                                                            :
                        Debtors.                            :
-----------------------------------------------------------------X

**MOTION OF JULIE AND DAVID BRITTINGHAM FOR RELIEF FROM THE**
**AUTOMATIC STAY TO ALLOW THE COMPLETION**
**OF A PENDING PERSONAL INJURY ACTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..……………………….…………………………...… 3

JURISDICTION AND VENUE ……………………………………………………… 4

BACKGROUND …………………………………………………………….…... 4

CERTIFICATION ………………………………………………………………….. 8

GROUNDS TO LIFT THE AUTOMATIC STAY …………………………………………. 8

## TABLE OF AUTHORITIES

CASES                                                                                              Page #

In re Bally Total Fitness of Greater N.Y.,
        402 B.R. 616 (Bankr. S.D.N.Y. 2009) …………………………………………….. 9


In re Curtis,
        40 B.R. 795 (Bankr. D. Utah 1984) ……………………………………….………12


In re Dryja,
        425 B.R. 608 (Bankr. D. Colo. 2010) ...……………………………………… 10, 12, 13


In re Ingle,
        259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) ..……………………...…………...… 11, 15


In re MarketXT Holdings Corp.,
        2009 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. 2009) …………………...……………… 9


In re Morris,
        2010 Bankr. LEXIS 1875 (Bankr. N.D.N.Y. May 27, 2010) ..………………….11, 12, 15


In re Wapotish,
        2009 Bankr. LEXIS 1851 (Bankr. N.D. Ill. July 1, 2009) ………………………………10


Mazzeo v. Lenhart (In re Mazzeo),
        167 F.3d 139 (2nd Cir. 1999) …………….…………………………………….…… 9


Metz v. Poughkeepsie Sav. Bank, FSB (In re Metz),
        165 B.R. 769 (Bankr. E.D.N.Y. 1994) **...**………………………………10, 12, 13, 14, 15


Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),
        907 F.2d 1280 (2d Cir. 1990) ………………………………………………….. 9, 10, 11, 12



OTHER AUTHORITIES

28 U.S.C. § 157 ………………………………………………………………..……….. 4, 12

28 U.S.C. § 1334 …………………………………………………………………………… 4

28 U.S.C. §§ 1408 & 1409 ………………………………………………………………… 4

11 USC §362 ……………………………………………………………………………... 4, 8, 9

Local Rule of Bankruptcy Procedure §4001-1 ...……………………………………….. 3

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

Julie Brittingham ("Mrs. Brittingham") and her husband, David Brittingham (Mr.

Brittingham, and collectively with Mrs. Brittingham as the "Brittinghams" or "Plaintiffs"), by

their attorneys, hereby submit this motion for an order, pursuant to 11 U.S.C. Section 362(d)(1)

and Section 105, modifying the automatic stay to allow them to proceed with their state law

personal injury action, pending in the Court in the Common Pleas of Montgomery County, Ohio

("Ohio State Court"), *Brittingham v. General Motors Corporation, et al.*, Case No. 2001 CV

00664 (the "Ohio Litigation"), against, *inter alia*, Dr. Virginia Stull ("Dr. Stull"), and the Motors

Liquidation Corporation et al. (f/k/a General Motors Corporation et al.)(the "Debtors").   In

support of this Motion, the Brittinghams respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b). Venue is proper in the

Court pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory predicate for the relief

requested herein is section 362(d) of the Bankruptcy Code and Local Rule of Bankruptcy

Procedure 4001-11.

## BACKGROUND

(i) Ohio Litigation

2.      On February 8, 2001, through Meyer & Williams, P.C., the Brittinghams

commenced the Ohio Litigation.  A copy of the amended complaint ("Complaint") is annexed

hereto as **Exhibit "A".**

3.      In the Ohio Litigation, the Brittinghams have asserted claims against the Debtors

and Dr. Stull for, *inter alia*, (i) negligently conducting Mrs. Brittingham's *pre-employment*

physical examination ("Examination"), (ii) negligently failing to notify Mrs. Brittingham that her lung function was severely abnormal, (iii) negligently approving Mrs. Brittingham for employment for which she was not physically fit, and (iv) negligently failing to refer her to a qualified physician as a result of her impairment as required by the Debtors' policies and procedures.[1]

4.      The Ohio Litigation revolves around the pre-employment examination of Mrs. Brittingham. Mrs. Brittingham applied for employment at GM in July 1997. On August 1, 1997, she underwent a pre-employment physical examination that included pulmonary function tests. After the first test showed Mrs. Brittingham's lung function to be 57% of predicted value, the test was repeated and again it showed diminished lung function, this time at 55% of predicted value. In her deposition, Mrs. Brittingham testified that no one explained to her why the test had to be repeated. After reviewing two abnormal pulmonary function tests, Dr. Stull did not discuss the results and their significance with Mrs. Brittingham. Instead, Dr. Stull had Mrs. Brittingham sign a printout of the results and then approved her for employment in a GM plant. This occurred in spite of the existence of a specific GM policy mandating that Mrs. Brittingham's results required that she be referred to a specialist. Subsequently, Mrs. Brittingham worked full-time for GM from September 11, 1997, until August 11, 1999, when she became physically unable to continue working.

5.      In September 1999, Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency Syndrome ("AAD"), also known as "acquired emphysema." AAD is an inherited condition resulting from the liver's failure to produce a sufficient amount of the protein alpha-1 antritrypsin. To extend her shortening life expectancy, Mrs. Brittingham is awaiting a double

---

[1] The facts and allegations are set forth herein for informational purposes. In the event of a dispute, the Brittinghams respectfully refer the Court to the Complaint itself, which shall govern.

lung transplant which carries a fifty percent, five-year death rate. Mrs. Brittingham maintains that if Dr. Stull had informed her of the abnormal test results and referred her to a physician, she would have sought immediate treatment.

6.      After nearly <u>eight years</u> of litigation, Mrs. Brittingham is still waiting for her lung transplant and her health is continuing to deteriorate.  She is on full time supplemental oxygen and rarely leaves her home[2].

7.      As a result of the foregoing negligence, the Brittinghams have asserted claims for their damages of several million dollars.

8.      Since 2001, the parties have litigated this matter, including several appeals, removal to the Federal Court, and remand back to Ohio State Court.  As of the Debtors' Bankruptcy Filing, the case was in the final stages of readiness for trial in the Ohio State Court.

  (ii) <u>Indemnification and Insurance Coverage</u>

9.      After Mrs. Brittingham's January 1, 1999 Examination, she was employed by the Debtors, but was transferred and/or assigned as an employee to Delphi Automotive Systems Corporation ("<u>Delphi</u>") pursuant to an agreement between the Debtors and Delphi.

10.      As indicated by Delphi in the motion filed in the United States Court of Appeals for the Sixth Circuit to stay the Ohio Litigation ("<u>Sixth Circuit Stay Motion</u>"), Delphi agreed to assume "financial responsibility for employment related claims … incurred *before or after* [January 1, 1999]"[3].  A copy of selected pages from the Sixth Circuit Stay Motion is annexed hereto as **Exhibit "B"**.  The Sixth Circuit Stay Motion also indicates that Delphi's assumption of liability was affirmed in the Master Separation Agreement ("<u>MSA</u>") between Delphi and the

---

[2] Travel to New York to liquidate her claim would be essentially impossible for her.
[3] This was a motion by General Motors Corporation and Virginia Stull M.D. (Defendants – Appellees) to stay proceedings and rescind briefing schedule pending resolution of Delphi Corporation's Chapter 11 case. In the almost nine years that the Ohio Litigation has been proceeding, it has two trips, on two separate issues, to the United States Court Of Appeals for The Sixth Circuit.

MLC. Thus, as of January 1, 1999, Delphi contractually assumed ultimate responsibility for defending and indemnifying the Debtors and Dr. Stull with respect to the Ohio Litigation.

11.    In addition to, or in furtherance of, the express indemnification agreement by Delphi, Delphi maintained policies of insurance ("Delphi Policy") insuring the Debtors and Dr. Stull for the acts and omissions complained of in the Ohio Litigation[4].

12.    On or about October 8, 2005, Delphi filed a chapter 11 bankruptcy petition, and thereafter filed its First Amended Joint Plan of Reorganization on or about December 10, 2007 ("Delphi Plan"). Pursuant to Exhibit 7.20(a) Delphi-GM Master Restructuring Agreement filed December 10, 2007 to Delphi Plan, Delphi assumed the aforesaid Indemnification Agreement and specifically assumed all obligations related to the Ohio Litigation.

13.    In fact, notwithstanding Delphi's bankruptcy filing, the Delphi Insurance Carrier defended the Debtors and Dr. Stull in the Ohio Litigation from its inception in 2001 until the Ohio Litigation was stayed as a result of the filing ("Bankruptcy Filing") of the Debtors' chapter 11 case ("Bankruptcy Case") on June 1, 2009 in the Southern District of New York Bankruptcy Court ("Bankruptcy Court")[5].

14.    As a result of Debtors' Bankruptcy Filing, Plaintiffs' prosecution of the Ohio Litigation was automatically stayed pursuant to section 362 of the Bankruptcy Code[6].

---

[4] The Delphi Policy, numbered AUL 5104184, by and between Delphi and Allianz Underwriters Insurance Co. Policy (the "Delphi Insurance Carrier"), was a policy covering claims made between May 28, 1999 through October 1, 2002, and having general policy coverage limits of $50 Million of coverage in excess of $1 million, and a self-insured retention of $1 million. Reliance National Indemnity Company (now defunct) held the underlying policy for the time period between May 28, 1999 and October 1, 2001, originally affording $1 million in coverage to the named insured, Delphi. Endorsement No. 2 to this policy indicates that the named insured is self-insured for $1 million and that the Allianz policy will provide $50 million of coverage after that $1 million has been exhausted.

[5] Thereafter, unbeknownst to the Brittinghams, by Order dated July 30, 2009, the Delphi Plan was modified ("Modified Delphi Plan"), and pursuant to the Supplement to the Plan Modification Approval Motion, specifically Exhibit 7.7 "Master Disposition Agreement" dated as of July 26, 2009, the Indemnification Agreement was purportedly rejected. It is currently unclear whether Delphi or the Delphi Insurance Carrier has a continuing obligation to defend the Debtors and Dr. Stull in the Ohio Litigation or whether their purported disclaimer after 8 years of litigation is permitted.

[6] Since that date, and as a result of the shifting of parties and obligations due to the bankruptcy filings, the

15.     On or about August 5, 2009, the Brittinghams filed an Application for

Examination Pursuant to Federal Rules of Bankruptcy Procedure 2004 [Docket No. 3665] in

these chapter 11 proceedings (the "2004 Application").  In response to the 2004 Application the

Debtors provided certain insurance policies ("New GM Policy") evidencing that General Motors,

LLC ("New GM") has assumed the defense of Dr. Stull in the Ohio Litigation.

16.     The New GM Policy indicates that Dr. Stull's actions are covered by a fronting

policy issued by National Union Fire Insurance, American Home Assurance Company, the

Insurance Company of the State of Pennsylvania (all member companies of AIG) (collectively

the "New GM Insurance Carrier") providing for $10 million in coverage applicable to

"occurrences" during the policy period September 1, 1996 through September 1, 1997.

Endorsement H ("Incidental Malpractice" effective Sept. 1, 1996) amends the definitions of

"occurrence" and "insured" to include claims such as those alleged in the Ohio Litigation.

## CERTIFICATION

17.     For at least the last six months, the Brittinghams' counsel, have been conferring

with counsel for Debtors in attempt to agree to a stipulation to modify the stay.  However, the

parties have been unable to reach agreement on the terms.  As a result of the continued

deterioration of Mrs. Brittingham's health, Brittinghams' counsel are now compelled to seek an

order modifying the automatic stay to allow them proceed with the Ohio Litigation.

## GROUNDS TO LIFT THE AUTOMATIC STAY

18.     Section 362 provides the court the authority to modify or lift the automatic stay to

proceed as against the debtor in a few instances. Applicably, section 362(d)(1) provides that the

stay may be modified or lifted "for cause, including the lack of adequate protection of an interest

---

Brittinghams have attempted to discover which entity, if any, will be defending this action, and whether or not there
is any insurance coverage for the actions of the Debtors and Dr. Stull therein.

in property of such party in interest." 11 U.S.C. §362(d)(1) (2009). Since neither the statute nor legislative history define "cause," In re Sonnax Indus., 907 F.2d 1280, 1285 (2d. Cir. 1990), the court found that bankruptcy courts are empowered to make such a determination on a case-by-case basis.

19.    The court is accorded broad discretion to modify the automatic stay. Sonnax, 907 F.2d at 1288. A very fact-specific inquiry, weighing a number of factors, is required in determining a motion on such grounds. Id. The common factors employed by this Circuit, coined the *Sonnax* factors, include:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*See also* In re MarketXT Holdings Corp., 2009 Bankr. LEXIS 1897, at * 11-12 (Bankr. S.D.N.Y. July 20, 2009) (citing Sonnax, 907 F.2d at 1286); In re Bally Total Fitness of Greater N.Y., 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (same).  "Not all of these factors will be relevant in every case." Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2nd Cir. 1999).

20.    The applicable factors in this case weigh in favor of granting a lifting of the stay in this instance:

(a)    Relief would result in complete resolution of claim:  The Debtors are a necessary party to the Ohio Litigation and the ability to enforce any award against

applicable insurance proceeds, however, as set out previously, the Brittinghams'

claim also involves three important non-debtor parties, including New GM, Dr.

Stull and Delphi.   Granting relief requested in this Motion would result in

complete resolution of the Ohio Litigation because all parties will be or will have

the opportunity to be represented in Ohio State Court. Metz v. Poughkeepsie Sav.

Bank, FSB (In re Metz), 165 B.R. 769, 772 (Bankr. E.D.N.Y. 1994) (in lifting the

stay after an analysis of the *Sonnax* factors the court considered the "complete

resolution of the issues" an important factor).

(b)    No Interference with Bankruptcy Case:   This matter is in the final stages of

readiness for trial after 8 years of litigation.  New GM will be defending Dr. Stull

in the Ohio Litigation, and the Debtors have represented on numerous occasions

that any discoverable information is within the control of New GM. As such,

there will be minimum interference with the Bankruptcy Case.  In fact, if the stay

is not lifted, the case will have to be litigated in Bankruptcy Court which may

result in a greater interference with the Bankruptcy Case, as a result of the Court's

need to familiarize itself with the record of the Ohio Litigation that spans more

than 8 years.  In re Wapotish, 2009 Bankr. LEXIS 1851 (Bankr. N.D. Ill. July 1,

2009) (the court considered whether "there will be *greater interference* with

bankruptcy case if stay is not lifted because matters will have to be litigated in

bankruptcy court" *(emphasis added)*). Moreover, if it is determined that the

Delphi Policy is not applicable, any judgment that the Brittinghams are awarded

against the MLC would be enforced according to the rulings of this Court.  In re

Dryja, 425 B.R. 608, 612 (Bankr. D. Colo. 2010) (in deciding to lift the stay the

10

court reasoned that the interference with the bankruptcy court would be minimal because although the state court would decide on how certain property would be divided, the bankruptcy court would still retain its jurisdiction to adjudicate the impact of the state court's division of property on the bankruptcy case.)

(c) <u>Debtors as fiduciary</u>: The stay should be lift because in the Ohio Litigation the Brittinghams have claimed that the Debtors had a fiduciary obligation to Mrs. Brittingham. <u>See</u> <u>In re Morris</u>, 2010 Bankr. LEXIS 1875 (Bankr. N.D.N.Y. May 27, 2010) (the court found that the debtors' position as a fiduciary in the state action was a favorable factor in lifting the stay)**;** <u>also</u> <u>see</u> <u>In re Sonnax Indus.</u>, 907 F.2d at 1286 ("[g]enerally, proceedings in which the debtor is a fiduciary … need not be stayed because they bear no relationship to the purpose of the automatic stay, which is protection of the debtor and his estate from his creditors. S. Rep. No. 989, 95th Cong., 2d Sess. 52, reprinted in 1978 U.S. Code Cong. & Admin. News 5838.")

(d) <u>Specialized Tribunal</u>: This Court should allow the completion of the Ohio Litigation because it revolves around personal injury issues based on Ohio State Law, and the Brittinghams are seeking a <u>trial by jury</u>. <u>In re Ingle</u>, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) (in lifting the stay to allow a personal injury and wrongful death action to continue in state court, the court's overriding consideration was the nature of movant's claim, specifically a personal injury or wrongful death claim, <u>cannot</u> be tried in the bankruptcy court.); <u>see</u> 28 U.S.C. § 157[7]. Thus, in the case *sub judice,* although it is not technically a

---

[7] 28 USCS Section 157, in relevant part, states that a core proceeding of the bankruptcy court includes " …

11

specialized tribunal, the Ohio State Court's significant expertise and experience[8]
is necessary. <u>Sonnax</u>, 907 F.2d at 1286 (court should consider whether another
tribunal with necessary expertise exists to hear cause of action) (citing <u>In re
Curtis</u>, 40 Bankr. 795, 799-800 (Bankr. D. Utah 1984)); <u>In re Metz</u>, 165 B.R. at
772 (lifting the stay based on the *Sonnax* factors, and specifically on the fact that
the "expertise of the bankruptcy court is unnecessary"); <u>In re Morris</u>, 2010 Bankr.
LEXIS 1875 (Bankr. N.D.N.Y. May 27, 2010) ("state court is the proper tribunal
to hear the state law causes of action against [the Debtors] as one of several
defendants"); <u>see generally In re Dryja</u>, 425 B.R. 608, 611 (Bankr. D. Colo.
2010)**.**

(e)     <u>Insurance Defense</u>:  As set forth above, New GM has assumed the defense of Dr.
Stull in the Ohio Litigation.  There is a question as to whether there is insurance
coverage for the Debtors, which issue will be determined after trial by the Ohio
State Court.

(f)     <u>The action primarily involves third parties</u>: One of the main purposes of the Ohio
Litigation is to determine the culpability of Dr. Stull's actions, and New GM or its
carrier that has assumed the defense of Dr. Stull. <u>In re Morris</u>, 2010 Bankr.
LEXIS 1875 (Bankr. N.D.N.Y. May 27, 2010) (lifting the stay based on the fact
that the state court action involves non-debtor parties, for which liability will need
to be apportioned.)  Furthermore, as for the actions of the Debtors, Debtors'

---

allowance or disallowance of claims against the estate or exemptions from property of the estate … but <u>not</u> the liquidation or estimation of contingent or <u>unliquidated personal injury tort</u> or wrongful death <u>claims against the estate</u> … (emphasis added)".

[8] The Ohio State Court also has been involved in this action since 2001 which makes it better situated to make a determination on this matter than Bankruptcy Court.

counsel has represented that all relevant discoverable documents or information are now under the possession or control of New GM.

(g)     The Pending Litigation would not affect or prejudice the other creditors of the Debtors:  For the following reasons it is clear that allowing the completion of the Ohio Litigation would not prejudice other creditors: (i) New GM already acknowledged that they, or their insurance carrier, will be assuming responsibility for Dr. Stull's defense; (ii) Debtors' counsel has represented that all relevant discoverable documents or information are now under the possession or control of New GM[9]; (iii) this matter is in the final stages of readiness for trial after 8 years of litigation; and (iv) any defenses that the Debtors' would raise in opposition to the Brittinghams' claim will have to be made and will be the same whether asserted in this Court or Ohio State Court. In re Metz, 165 B.R. at 772.  Thus, any prejudice that the Ohio Litigation would have on other creditors would be negligible.

(h)     Interest of Judicial Economy: The interests of judicial economy and the expeditious and economical resolution of the litigation require that the Ohio Litigation be allowed to proceed to final determination. In In re Dryja, 425 B.R. 608, 612 (Bankr. D. Colo. 2010), the court lifted the stay and held that it would serve judicial economy to have the state court, that is familiar with the facts and circumstances of the case, to proceed because the action has been pending in state court for more than a year. A fortiori, here, with the Ohio Litigation ongoing for more than 8 years prior to the Debtors' Bankruptcy Filing, it is an understatement

---

[9] In re Ingle, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) (the court weighed the completion of discovery, which related to less additional costs for the debtor to defend the case, in favor of lifting the stay).

13

to claim that the Ohio State Court's involvement in this case for all those years

has given it an enormous advantage over any other court.

(i)     The parties are ready for trial:  The Brittinghams have only filed a Proof of Claim

in this Court.  In contrast, the parties have been litigating this matter for more than

8 years in Ohio State Court, and the case was in the final stages of readiness for

trial when the action was stayed by Debtors' Bankruptcy Filing.  In re Metz, 165

B.R. 769, 772 (Bankr. E.D.N.Y. 1994) (lifting the stay based on the fact that the

parties were more ready to litigate the issue before the state court where the

litigation is pending).

(j)     Balancing of Harms Weighs Heavily in Favor of the Brittinghams:  After more

than 8 years of litigation, Mrs. Brittingham is still waiting for her lung transplant

and her health is continuing to deteriorate, every day that the stay is in place

lessens the chances that Mrs. Brittingham will ever have her day in court.

Furthermore, as a result of the stay and the continuing shifting of insurance

coverage, the Brittinghams have been unable to seek a determination of available

insurance proceeds. On the other hand, there would be almost no harm to the

Debtors, the impact of modifying the stay to allow the Brittinghams to proceed

with the Ohio Litigation is minimal because (i) New GM already acknowledged

that they will be assuming responsibility for Dr. Stull's defense; and (ii) Debtors

have represented on numerous occasions that any discoverable information is

within the control of New GM.  It is possible that the Debtors will have to incur

some attorneys' fees and costs if New GM's representation is insufficient or if

they do in fact have discoverable information, however, that possibility alone

14

does not preclude the Brittinghams from lifting the stay because the Debtors will need to incur some attorneys' fees and costs in this Court also if they were to attempt to liquidate the claim. In re Morris, 2010 Bankr. LEXIS 1875 (Bankr. N.D.N.Y. May 27, 2010) (the court rejected the debtors argument that lifting the stay would cause the debtors to suffer a financial hardship because they would incur attorneys' fees and costs, should they find it necessary to defend the state action, the court noted that those expenses would be incurred regardless of whether or not the stay is lifted because the Debtors would still have to defend against the claim in bankruptcy court); In re Ingle, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) (in lifting the stay the court noted that the cost of defending a personal injury action in state court is but one factor for the court to consider which alone does not constitute grounds for denying a movant relief from the automatic stay); In re Metz, 165 B.R. at 772 (Bankr. E.D.N.Y. 1994) ("The drafters envisioned lifting the stay to allow other proceedings to continue, where appropriate: It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere. S. REP. NO. 989, 95th CONG.2d. SESS. ")

21.     It is respectfully submitted that *Sonnax* factors weigh in favor of the Brittinghams in this matter. As such, it is respectfully requested that the Court enter an order, in substantially the form attached hereto as **Exhibit "C",** modifying the automatic stay to permit the Brittinghams to prosecute the Ohio Litigation.

**WHEREFORE**, it is respectfully requested that the Motion be granted in all respects,

together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        July 12, 2010

KLESTADT & WINTERS, LLP
By: _/s/ Samir P. Gebrael_____
     Tracy L. Klestadt
     Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

   -    and   -

MEYER AND WILLIAMS,
ATTORNEYS AT LAW, P.C.
P. Richard Meyer
Robert N. Williams
350 E. Broadway, P.O. Box 2608
Jackson, WY 83001
(307) 733-8300

*Co-Counsel to the Brittinghams*

16