**HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
MOTORS LIQUIDATION COMPANY, et al.,                          :    09-50026 (REG)
    f/k/a General Motors Corp., et al.                       :
                                                             :
                                    Debtors.                 :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x
```

**NOTICE OF HEARING ON MOTION OF DEBTORS**
**FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. § 363 AUTHORIZING THE DEBTORS TO AMEND THE**
**TERMS OF THEIR ENGAGEMENT LETTER WITH AP SERVICES, LLC**

PLEASE TAKE NOTICE that upon the annexed Motion, dated July 16, 2010 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to section 363 of title 11, United States Code, authorizing an amendment to the terms of the engagement letter between the Debtors and AP Services, LLC, all as more fully set forth in the Motion, a hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York

10004, on **August 6, 2010 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin

Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); and (xii) AP Services, LLC, 2000 Town Center, Suite 2400, Southfield, Michigan 48075 (Attn: Albert A. Koch), so as to be received no later than **July 30, 2010, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE if no objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       July 16, 2010

      /s/ Stephen Karotkin
      Harvey R. Miller
      Stephen Karotkin
      Joseph H. Smolinsky

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

**HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, et al.,           :   09-50026 (REG)
    f/k/a General Motors Corp., et al.        :
                                              :
                         Debtors.             :   (Jointly Administered)
                                              :
------------------------------------------------------------x
```

**MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. § 363 AUTHORIZING THE DEBTORS TO AMEND THE**
**TERMS OF THEIR ENGAGEMENT LETTER WITH AP SERVICES, LLC**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully represent:

**Relief Requested**

1.    The Debtors request authority to further amend the terms of their engagement letter with AP Services, LLC ("**APS**") under section 363 of title 11, United States Code (the "**Bankruptcy Code**"), as reflected in that certain letter agreement, dated June 7, 2010,

a copy of which is annexed hereto as **Exhibit "A"** (the "**Third Amendment**").  Pursuant to the Third Amendment, the terms of APS's engagement are to be amended to adjust various payment terms as agreed to by the United States Department of the Treasury ("**UST**").  Notably, all amounts payable to APS pursuant to its engagement by the Debtors are payable from the proceeds of the DIP Agreement (as hereinafter defined) provided by the UST.  The amounts payable to APS have no impact whatsoever on the consideration that will be distributed to general unsecured creditors or other parties in interest in these cases.

## Jurisdiction

2.   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

3.   On July 2, 2009, this Court entered an Order[1] (the "**Engagement Order**") authorizing the Debtors to employ and retain APS to provide crisis management services, *nunc pro tunc* to June 1, 2009 (the "**Commencement Date**"), on the terms set forth in the engagement letter between APS and the Debtors, dated May 29, 2009 (the "**Engagement Letter**"), and as modified by that order.  The Engagement Letter included, among other things, a success fee (the "**Sale Success Fee**") of $13 million with respect to the below defined 363 Transaction  (of which $6.5 was paid in August 2009 and $6.5 million is payable in July 2010 subject to Court approval) and provision for additional success fees in amounts to be determined.  Such to be determined discretionary fees were negotiated with parties in interest and are documented in the first and third amendments to the Engagement Letter.

---

[1] Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, *Nunc Pro Tunc* to the Petition Date dated July 2, 2009 [Docket No. 2949].

4. On July 5, 2009, this Court entered its Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser (the "**Purchaser**"); (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (the **"363 Transaction"**) [Docket No. 2968].

5. In connection with the consummation of the sale pursuant to the 363 Transaction and by Order dated July 5, 2009, the Court approved that certain Amended and Restated Secured Superpriority Debtor-in-Possession Credit Agreement (the "**DIP Agreement**"), pursuant to which $1,175,000,000 (the "**DIP Facility**") was loaned to MLC to fund the wind-down of the Debtors' estates.

6. On August 18, 2009, this Court entered its Order (the "**First Amendment Order**") Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC (the **"First Amendment"**) [Docket No. 3831]. On November 12, 2009, APS, the Debtors and General Motors Strasbourg SAS ("**GMS**"), a non-Debtor foreign subsidiary of the Debtors, entered into a Second Amendment to the Engagement Letter (the "**Second Amendment**") to clarify (i) the services that APS and its affiliates would be providing to GMS and (ii) the payment arrangements to APS with respect to such services.[2]

7. Pursuant to the terms of the Engagement Letter, as amended by the First and Second Amendments (the "**Amended Engagement Letter**"), APS was retained to provide crisis management services and essentially administer the wind-down of the Debtors with the following material compensation elements:

---

[2] The Second Amendment addressed services provided only for GMS, which had no economic impact on the Debtors' estates, because GMS would pay APS for such services directly.

**(1)    Hourly Fees:**  APS's standard hourly fees contemplated by section 1 of Schedule 1 of the Engagement Letter would be reduced as follows: (i) for fees incurred after the effective date up to the aggregate amount of $60 million (calculated using 100% of standard hourly rates), APS will discount each bill to 85% of total incurred standard hourly fees; and (ii) for fees incurred after the effective date exceeding $60 million (calculated using 100% of standard hourly rates), APS will discount each bill to 75% of total incurred standard hourly fees.

**(2)    Discretionary Fees:**  In addition to the Sale Success Fee of $13 million that was approved in the Engagement Order and affirmed in the First Amendment, APS will also receive certain fees (the "**Discretionary Fees**") based on APS meeting certain milestones in connection with the administration of these cases:

   (a)    Total Unsecured Creditor Claims.  In the event that the total unsecured claims pool (including bond claims) is less than $35 billion, APS shall be paid a Discretionary Fee of $5.0 million.  In the event that the total unsecured claims pool (including bond claims) is equal to or greater than $35 billion but less than $42 billion, APS shall be paid a Discretionary Fee of $2.5 million.  In the event that the total unsecured claims pool exceeds $42 billion, APS shall not be paid a Discretionary Fee;

   (b)    Confirmation of a Plan.  In the event that the Debtors confirm a plan and such plan is effective on or before May 28, 2010, APS shall be paid a Discretionary Fee of $2.5 million; and

   (c)    Distribution of Stock and Warrants.  In the event that 70% or more of each of the common stock and warrants of the Purchaser, received by the Debtors in connection with the 363 Transaction is distributed to unsecured creditors within 60 days of the effective date of a plan, APS shall be paid a Discretionary Fee of $2.5 million.

**(3)    Incentive Payments:**  APS will be paid certain incentive payments (the "**Incentive Payments**") in the event that (i) the amount of allowed priority claims is reduced; or (ii) the costs associated with the wind-down of the Debtors are less than contemplated by the DIP facility.  These payments are as follows:

   (a)    Reduction of Priority Claims.  In the event that allowed priority claims, which are currently estimated at $100 million, are reduced by at least $25 million, APS shall

US_ACTIVE:\43431721\07\72240.0639                    4

        receive 5% of such reduction in excess of $25 million at such time as any excess monies are returned to the DIP Lenders under the DIP Agreement; and

    (b)    <u>Reduction of All Other Net Costs of the Wind-Down</u>. APS shall receive 15% of each dollar that is returned to the Lenders in respect of the DIP Facility. Provided, however, that in calculating monies returned to the DIP Lenders, any fees and expenses paid to the professionals and advisors retained by the Creditors' Committee and any ad hoc committees in excess of $17.2 million shall be treated as if such excess were available for return to the DIP Lenders. Further provided that calculations pursuant to this paragraph 3(b) shall exclude any monies returned in 3(a) above.

## **The Third Amendment**

8.    As the administration of the cases has progressed, it has become apparent that the compensation structure contained in the Amended Engagement Letter was not appropriately designed and, in fact, provided inappropriate incentives for APS. Simply by way of example, APS's ability to obtain as an Incentive Payment a portion of the funds returned to the Lenders in respect of the DIP Facility did not serve to promote a prompt and efficient resolution of environmental-related issues as to property owned by the Debtors. Additionally, Incentive Payments based on expeditious distributions to prepetition creditors did not necessarily promote the orderly administration of these estates and the appropriate manner to address disputed or unliquidated claims.

9.    Recognizing these factors, the Third Amendment was formulated. It has the full support of the UST, which, as stated, is the party with the real economic stake in the compensation structure of the engagement of APS by the Debtors. The Third Amendment provides for certain modifications to the Amended Engagement Letter which, in principal part, are summarized as follows:

**(1)   Hourly Fees Reductions:** The Hourly Fee Reductions provided in the Amended Engagement Letter shall be deleted and replaced with the following:

**Hourly Fees:** Hourly fees shall be paid at rates as set forth in the Engagement Letter, as such rates have been updated in the ordinary course for the 2010 calendar year and as they may be further modified. The hourly rate changes shall be retroactive to July 10, 2009, and through April 30, 2010 this adjustment aggregates approximately $5.3 million. This retroactive adjustment shall be payable by the Debtors upon approval of the Third Amendment.

**(2)   Discretionary Fees:** The existing discretionary fees provided for in the Amended Engagement Letter shall be replaced in their entirety with the following:

(a)   <u>Total Unsecured Creditor Claims</u>. If the total unsecured claims pool is less than $35 billion, APS shall be paid a Discretionary Fee of $5.0 million. If the total unsecured claims pool is equal to or greater than $35 billion but less than $42 billion, APS shall be paid a Discretionary Fee of $2.5 million. If such claims pool is between $35 billion and $42 billion the Discretionary Fee shall be adjusted proportionately. In the event that the total unsecured claims pool exceeds $42 billion, APS shall not be paid a Discretionary Fee; and

(b)   <u>Distribution of Stock and Warrants</u>. At such time as 70% or more of each of the common stock and warrants of the Purchaser, received by the Debtors in connection with the 363 Transaction, is distributed to the Debtors' unsecured creditors under a plan, APS shall be entitled to a Discretionary Fee of $2.5 million.

**(3)   Incentive Payments:** The Incentive Payments provided for in the Amended Engagement Letter shall be replaced in their entirety with the following:

**Incentive Payments:** In the event that the Debtors confirm a plan of liquidation that becomes effective, APS shall be paid an Incentive Fee of $7 million.

Notably, as stated, all of the foregoing discretionary and incentive fees that may be payable to APS are payable from the proceeds of the DIP Facility and would not in any way impact distribution to unsecured creditors or other parties in interest in these cases.

### The Third Amendment Should Be Approved by the Court

10. The Debtors request the Court approve the amendment to the Engagement Letter, as set forth in the Third Amendment (the Engagement Letter, as subsequently amended by the First Amendment, Second Amendment, and Third Amendment, is hereinafter referred to as the "**APS Agreement**"). The Third Amendment is in the best interests of the Debtors and their estates in that it provides the proper incentives and compensation structure for APS and will promote the efficient and expeditious administration of these cases.

11. As this Court is well aware, since the Commencement Date, APS has rendered valuable services to the Debtors, and following the sale of substantially all of the Debtors' assets to the Purchaser, APS has continued to execute the Debtors' orderly wind-down with the goal of proposing a liquidating chapter 11 plan as expeditiously as practicable. APS is the day-to-day management of the Debtors, responsible for a multitude of activities including, inter alia, addressing substantial environmental liabilities, interfacing with the federal government and the states to achieve fair and equitable resolution of how the Debtors' obligations in respect of their owned property will be addressed in a plan, addressing literally tens of thousands of filed claims, and liquidating the Debtors' remaining assets. This is a Herculean task which APS has managed efficiently and economically.

12. The Third Amendment represents the result of negotiations between APS and the UST and provides a compensation structure for APS properly designed to promote the appropriate, effective, and economical administration of these estates. Moreover, the Board of

Directors of MLC, all of whom are independent and have no relationship with APS, have unanimously approved the Third Amendment.

13. It also should be noted that, as set forth in the Third Amendment, although the proposed amended compensation terms provide APS with accelerated payment and certainty of amounts to be paid, it is estimated by APS that the incentive payments provided for in the Third Amendment are likely to result in 35% less in amount than would be paid to APS if the Third Amendment did not become effective.

14. Based on all of the foregoing, the Debtors believe that the Third Amendment is appropriate and should be approved. Of particular note in this regard is the approval of the UST to the terms and provisions of the Third Amendment and the fact that the proposed amendments will have no economic impact on other creditors and should serve to expedite the administration of the cases.

## Notice

15. Notice of this Motion has been provided to parties in interest in accordance with the Third Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated April 29, 2010 [Docket No. 5670]. The Debtors submit that such notice is sufficient and no other or further notice need be provided.

16. Other than the Motion which resulted in the July 2, 2009 Order authorizing APS's retention and the Motion which resulted in the August 18, 2009 Order amending APS's retention, no previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
July 16, 2010

/s/ Stephen Katorkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Third Amendment**

US_ACTIVE:\43431721\07\72240.0639

    Chicago  Dallas  Detroit  Los Angeles  New York  San Francisco  Washington, DC

June 7, 2010

Board of Directors
Motors Liquidation Company
f/k/a General Motors Corporation
500 Renaissance Center
Suite 1400
Detroit, MI 48243

Re:   Agreement for Interim Management & Restructuring Services – Third Amendment

Dear Sirs:

This letter represents the third amendment (the "Third Amendment") to the agreement between AP Services, LLC, a Michigan limited liability company ("APS") and Motors Liquidation Company f/k/a General Motors Corporation ("Motors Liquidation," the "Company" or the "Debtor") dated May 29, 2009 (the "Engagement Letter" and, along with the First Amendment dated July 23, 2009, the Second Amendment dated November 12, 2009, and this Third Amendment, the "Agreement").

APS was retained by the Company and certain of its affiliates to act as crisis managers in connection with their chapter 11 reorganization proceeding. In addition, Albert A. Koch was appointed to serve as the Debtor's Chief Restructuring Officer. On or about July 10, 2009 (the "Closing Date"), upon the closing of the sale of the majority of the Debtor's assets to General Motors Company, Mr. Koch was appointed Chief Executive Officer of Motors Liquidation.

This Third Amendment shall be effective immediately upon approval by the Bankruptcy Court in the bankruptcy proceeding of Motors Liquidation and certain of its affiliates pending in the United States Bankruptcy Court for the Southern District of New York, being Case No. 09-50026 (the "Bankruptcy Case"). The Hourly Rate Changes, as subsequently defined, shall be retroactive to the Closing Date.

Background

The First Amendment was entered into effective on the Closing Date after negotiations with the United States Department of Treasury (the "U.S. Treasury") and the Official Committee of Unsecured Creditors (the "Committee"). The First Amendment was in anticipation of the wind-down of the Debtor as contemplated by the Wind-Down Financing Order.[1] Since the Closing Date, APS has worked diligently and in close cooperation with the United States

---

[1] The Wind-Down Financing Order shall mean that certain Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving Amendment to DIP Credit Facility to Provide For Debtors' Post-Petition Wind-Down Financing.

APServices LLC

Motors Liquidation Company
June 7, 2010
Page 2 of 4

Treasury, the United States Department of Labor, the United States Department of Justice, and the United States Environmental Protection Agency, as well as governmental agencies in more than a dozen states, to develop a liquidating plan of reorganization for the Debtor that will adequately meet the interests of these stakeholders. It became increasingly apparent to APS over the past months that the originally designed incentives were not working as intended and, in fact, at times were presenting an obstacle to gaining acceptance by the various stakeholders of the proposed plan structure and implementation.

Accordingly, APS entered into negotiations with the U.S. Treasury and the Committee to further amend the financial terms of the APS engagement. This letter documents the results of those negotiations. The U.S. Treasury agreed not to object to an amendment, provided that the overall cost to the taxpayer of the APS engagement was likely to be lower than the cost contemplated under the First Amendment. By way of information, APS and the Debtor estimate that the incentive structure in this Third Amendment will likely provide approximately 35% less in compensation to APS than would have been the case with the incentives established in the First Amendment. The incentives in the Third Amendment, however, provide APS with acceleration of payment and certainty of amount.

Changes to Numbered Paragraphs in the First Amendment

1. **Hourly Fee Reductions:** The Hourly Fee Reductions outlined in paragraph 1 of the First Amendment are hereby deleted and replaced with the following:

    **Hourly Fees:** Hourly fees shall be paid at rates as set forth in the Engagement Letter, as such rates have been updated in the ordinary course for the 2010 calendar year and as they may be further modified by Supplemental Declarations or order of the Bankruptcy Court (the "Hourly Rate Changes"). The Hourly Rate Changes shall be retroactive to July 10, 2009. APS wishes to disclose that the retroactive amount to be billed to the Company through April 30, 2010 is approximately $5.3 million. Additional retroactive amounts to be billed to the Company will continue to accrue after April 30, 2010 through the date of approval of this Third Amendment. APS shall bill the retroactive amounts, and such amounts shall be due and payable promptly upon approval of this Third Amendment.

2. **Discretionary Fees**: Paragraphs 2 a. and b. of the First Amendment are deleted and replaced in their entirety as follows:

    Total Unsecured Creditor Claims. In the event that the total unsecured claims pool (including bond claims) is less than $35 billion, APS shall be entitled to a Discretionary Fee of $5.0 million. In the event that the total unsecured claims pool (including bond claims) is equal to or greater than $35 billion but less

APServices LLC

Motors Liquidation Company
June 7, 2010
Page 3 of 4

> than $42 billion, APS shall be entitled to a Discretionary Fee of $2.5 million. Between $35 billion and $42 billion the Discretionary Fee shall be adjusted pro rata. For example, if the total unsecured claims are $38.5 billion, the Discretionary Fee under this paragraph would be $3.75 million. In the event that the total unsecured claims pool exceeds $42 billion, APS shall not be entitled to a Discretionary Fee for this milestone; and

> Paragraph 2 c. of the First Amendment is amended to read as follows:

>> c. **Distribution of Stock and Warrants.** At such time as APS and the Trustee distributes 70% or more of each of the Common Stock and Warrants of the Purchaser, received by the Debtors in connection with the Related 363 Sale Transactions, to the Debtors' unsecured creditors following the effective date of a plan of liquidation, APS shall be entitled to a Discretionary Fee of $2.5 million.

3. **Incentive Payments**: The Incentive Payments outlined in paragraph 3 of the First Amendment are hereby deleted and replaced in their entirety with the following:

> **Incentive Payments:** In the event that the Debtors confirm a plan of liquidation that becomes effective, APS shall be entitled to an Incentive Fee of $7 million that is payable upon confirmation of the plan of liquidation.

Each of the U.S. Treasury, the Debtor and APS has consented to this Third Amendment, including providing pre-approval for the Incentive Payment, the retroactive Hourly Rate Changes and the Discretionary Fees. In addition, the U.S. Treasury, the Debtor and APS continue to consent to pre-approval of the Second Payment of the Success Fee (as defined in the Engagement Letter). The Debtor agrees that as soon as practicable, it will file a motion to approve this Third Amendment.

Except as otherwise modified by this Third Amendment, the terms of the Engagement Letter, as amended, remain in full force and effect.

\* \* \* \* \*

**APServices** LLC

Motors Liquidation Company
June 7, 2010
Page 4 of 4

If these terms meet with your approval, please sign and return a copy of this Third Amendment. We look forward to our continuing relationship with you.

Sincerely yours,

AP SERVICES, LLC

By: Albert A. Koch
Its: Authorized Representative


Acknowledged and Agreed to:
MOTORS LIQUIDATION COMPANY
By: _____
Its: Chair
Dated: 16 June 10

HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :     09-50026 (REG)
    f/k/a General Motors Corp., *et al.*  :
                                          :
                Debtors.                  :     (Jointly Administered)
                                          :
---------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 363 AUTHORIZING
THE DEBTORS TO AMEND THE TERMS OF THEIR
ENGAGEMENT LETTER WITH AP SERVICES, LLC**

Upon the Motion, dated July 16, 2010 (the "**Motion**"),[1] of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to section 363 of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing the amendment of the terms of the Engagement Letter, dated May 29, 2009, as amended, between the Debtors and AP Services, LLC ("**APS**"), all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

ORDERED that the Third Amendment is authorized and approved and the Debtors are authorized to enter into the Third Amendment and pay APS the hourly rate adjustments provided in the Third Amendment; and it is further

ORDERED that all references to the Engagement Letter in the Engagement Order shall be deemed to include the Third Amendment; and it is further,

ORDERED that except to the extent modified by the Third Amendment, the terms and provisions of the Amended Engagement Letter remain in full force and effect; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____ \_\_, 2010

_____
United States Bankruptcy Judge