**Presentment Date and Time: August 3, 2010 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time: August 3, 2010 at 11:30 a.m. (Prevailing Eastern Time)**

Elihu Inselbuch, Esq.
(ei@capdale.com)
Rita C. Tobin, Esq.
(rct@capdale.com)
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Trevor W. Swett III
(tws@capdale.com)
Kevin C. Maclay
(kcm@capdale.com)
James P. Wehner
(jpw@capdale.com)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle
Washington, D.C. 20005
(202) 862-5000

*Attorneys for the Official Committee of*
*Unsecured Creditors Holding Asbestos-Related Claims*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | ) | |
| f/k/a GENERAL MOTORS CORP., *et al.*, | ) | |
| | ) | Case No. 09-50026 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

------------------------------------------------------------X

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS HOLDING ASBESTOS-RELATED CLAIMS CLAIMANTS
FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING
THE TAKING OF DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY
FROM THE DEBTORS AND FROM GENERAL MOTORS, LLC, ITS
SUBSIDIARIES AND AFFILIATED COMPANIES**

TO:    THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY COURT

The Official Committee of Unsecured Creditors Holding Asbestos-Related Claims

("**ACC**") hereby moves the court for entry of an order, pursuant to Rule 2004 of the Federal

#355435

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the ACC to commence

discovery for purposes of estimating the value of the Debtors' aggregate liability for pending

and future claims for asbestos-related personal injury and wrongful death. In support of the

this application (**"Application"**), the ACC respectfully represents as follows:

### PRELIMINARY STATEMENT

1.     The Debtors currently contemplate a chapter 11 plan that will provide for a trust

to be established for processing, liquidating, and paying present and future claims for asbestos-

related personal injury and wrongful death ("**Asbestos Claims**"). They have acknowledged

that such a plan will require estimation of their aggregate liability for Asbestos Claims. To that

end, the United States Trustee appointed the members of the ACC, and the Court, on the

Debtors' motion, appointed a representative for unknown future asbestos claimants ("**Future

Claimants' Representative**"). The ACC, the Future Claimants' Representative, the Official

Committee of Unsecured Creditors, and the Debtors with the Court's approval, have each

retained consultants to estimate and value the Debtors' liability for Asbestos Claims.

2.     The Debtors have provided the ACC with certain data concerning their Asbestos

Claims history. Much information that would ordinarily be collected by an asbestos defendant

for claims management purposes however, has not been provided. To support a reliable

liability estimate, moreover, the data provided, or still to be provided, require analysis and

explication in the context of other documentary evidence and testimony that will shed light on

the trends and patterns that shaped the Debtors' historical claims experience and thus make

possible a reasonable forecast of the number, timing, and value of future claims expected to be

asserted over the next several decades.

3.     Upon information and belief, much and perhaps most of the information within the scope of the discovery needed for claims estimation purposes is in the hands of General Motors, LLC, or subsidiaries or affiliates thereof (individually and collectively, **"New GM"**). Indeed, it appears that the data already received by the ACC came from New GM through the Debtors, rather than from the Debtors directly.

4.     The ACC also anticipates that the persons most knowledgeable about the data and about the claims history of Old GM are employees of, or otherwise within the control of, New GM. Accordingly, the ACC proposes to serve discovery requests by appropriate means on New GM as well as on the Debtor.

## FACTS

5.     On June 1, 2009 (the **"Petition Date"**), Motors Liquidation Company and certain of its affiliates (the **"Debtors"**) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6.     On June 1, 2009, the Court entered an order directing the joint administration of the Debtors' Chapter 11 cases. The Debtors' cases are consolidated for procedural purposes only.

7.     On March 2, 2010, the United States Trustee appointed the ACC.

8.     On April 8, 2010, the Court entered its order appointing the Future Claimants' Representative.

## PREDICATES FOR RELIEF

9.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this

district under 28 U.S.C. §§ 1408 and 1409. The legal predicate for the relief sought herein is

Bankruptcy Rule 2004.

## RELIEF REQUESTED

10.    By this Application, the ACC seeks an order authorizing it to elicit document

discovery and deposition testimony from the Debtors and from New GM.

11.    Bankruptcy Rule 2004 provides, in relevant part:

(a)    Examination on Motion. On motion of any party in interest, the
court may order the examination of any entity.

(b)    Scope of Examination. The examination of an entity under this
rule or of the debtor under §343 of the Code may relate only to the acts,
conduct, or property or to the liabilities and financial condition of the
debtor, or to any matter which may affect the administration of the
debtor's estate, or to the doctor's right to a discharge * * * [I]n a case
under chapter 11 of the Code, . . . the examination may also relate to
* * * any other matter relevant to the case or to the formulation of a
plan.

(c)    Compelling Attendance and Production of Documentary
Evidence. The attendance of any entity for examination and the
production of documentary evidence may be compelled in the manner
provided in Rule 9016 for the attendance of witnesses at a hearing or
trial.

12.    The ACC is a "party in interest" entitled to conduct examinations and to request

documents under Rule 2004. *See* 11 U.S.C. § 1103 (providing that a statutory committee may

"investigate the * * * liabilities * * * of the debtor").

13.    Estimation of the Debtors' aggregate liability for Asbestos Claims is an essential

step in formulating a plan of liquidation that provides for the funding of a trust to process,

liquidate, and pay Asbestos Claims.

[A]n estimation of asbestos liability for the limited purposes of plan formulation
is a fruitful endeavor because it promotes the speed and efficiency goals of the

Bankruptcy Code, while not implicating the procedural rights of individual claimants.

*In re Federal-Mogul Global, Inc.*, 330 B.R. 133, 154-55 (D. Del. 2005). *See id.* at 155 (noting that the inquiry focused on the debtor's "historical claims-handling practices, and expert testimony on trends and developments in the asbestos tort system.") (citing *Owens Corning v. Credit Suisse (In re Owens Corning)*, 322 B.R. 719 (D. Del. 2005)).

14.    Here, the ACC wishes to examine the Debtors and New GM and to obtain production of their documents relevant to estimation of the Debtors' liability for Asbestos Claims. Such an inquiry is clearly authorized by Rule 2004 and appropriate in the circumstances of these bankruptcy cases.

15.    Pursuant to Rule 2004(c), the ACC proposes to commence discovery by serving Debtors with a set of document requests along the lines set forth as Exhibit A[1]. The ACC also intends to serve a substantially similar set of document requests upon New GM by means of a subpoena *duces tecum* or other appropriate procedural means.

16.    The ACC also requests authority pursuant to Bankruptcy Rule 2004(c) to issue subpoenas *ad testificandum* to the Debtors and New GM. These subpoenas will require these companies to designate, respectively, individuals to testify on their behalf regarding subject matters along the lines set forth in Exhibit B to this Application.

---

[1]    The draft discovery requests attached hereto as Exhibits A and B are intended as exemplars. They are subject to modification and are not intended to preclude such other discovery as may be appropriate for the purposes of claims estimation or other aspects of these bankruptcy cases or related proceedings. The ACC expressly reserves all of its rights with respect to the scope and processes of discovery.

## NOTICE

17.    Notice of this Application has been given in accordance with Rules 2004, 9014, and 7004 of the Federal Rules of Bankruptcy Procedure.  The ACC respectfully submits that such notice is adequate.

## RESERVATION OF RIGHTS

18.    The ACC expressly reserves the right to seek such further discovery from the Debtors, New GM, and other entities as may be appropriate for the purposes of estimating Asbestos Claims or for other aspects of these bankruptcy cases or related proceedings.

## REQUEST FOR RELIEF

WHEREFORE, the ACC respectfully requests entry of an order, pursuant to Bankruptcy Rule 2004:

(a)    granting the relief requested in this Application;

(b)    authorizing the ACC to serve, and directing the Debtors and New GM to respond to, document requests along the lines set forth in Exhibit A to this Application;

(c)    authorizing the ACC to serve, and directing the Debtors and New GM to respond to, subpoenas directing them, respectively, to designate individuals to testify on their behalf with respect to subject matters along the lines of those set out in Exhibit B;

(d)    authorizing the ACC to serve in due course, pursuant to Bankruptcy Rule 2004, without further Order of the Court, such additional discovery requests upon any person as the ACC may deem appropriate for the purposes of estimating the Debtors' aggregate liability for Asbestos Claims, subject, however, to the right of persons receiving such requests to raise objections and be heard for the resolution of the same; and

(e)      granting the ACC such other and further relief as the Court deems just and

proper.

Date:  July 20, 2010

<div style="margin-left: 40%;">

CAPLIN & DRYSDALE, CHARTERED

By:  /s/ Trevor W. Swett III
Trevor W. Swett III
(tws@capdale.com)
Kevin C. Maclay
(kcm@capdale.com)
James P. Wehner
(jpm@capdale.com)
One Thomas Circle, N.W.
Washington, D.C.  20005
(202) 862-5000

Elihu Inselbuch (EI-2843)
(ei@capdale.com)
Rita C. Tobin
(rct@capdale.com)
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY  10152-3500

*Attorneys for the Official Committee of Unsecured
Creditors Holding Asbestos-Related Claims*

</div>

# EXHIBIT A

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                    :

**In re**                             :        **Chapter 11 Case No.**
                                      :

**GENERAL MOTORS CORP.,** *et al.*     :        **09-50026 (REG)**
                                      :

              **Debtors.**      :        **(Jointly Administered)**
                                      :
-------------------------------------------------------------X

## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE DEBTORS BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims ("ACC") hereby requests that Motors Liquidation Company, for itself and all other debtors in the above-captioned jointly administered bankruptcy cases, produce the documents described in the Document Requests below for inspection and copying at the offices of Caplin & Drysdale, Chartered, 375 Park Avenue, 35th Floor, New York, NY 10152, within 30 days of the date of service of these Requests or at such other time and place as may be ordered by the Court or agreed to by counsel.

## DEFINITIONS AND INSTRUCTIONS

1.      These Requests hereby incorporate by reference the standard definitions provided by Rule 7026-1 of the Local Rules of the United States Bankruptcy Court for

#355421

the Southern District of New York and Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

2.      These Requests shall be continuing and if, at any time after the date on which you respond to these Requests, you discover, obtain, or otherwise come into possession of additional information or documents responsive to these Requests, you must promptly supplement your response hereto by producing such information or documents.

3.      "Document" is defined as broadly as permitted under Rule 34 of the Federal Rules of Civil Procedure, and includes all materials and things, in whatever form recorded or maintained, subject to production under that rule. These Requests specifically require the production of all non-identical copies of Documents, including drafts and copies upon which notations or additional writings have been made.

4.      Each Request set forth herein refers to all Documents and property in Debtors' custody, control, and possession, as well as Documents and property in the custody, control and possession of Debtors' counsel, representatives, agents, servants, employees, investigators or consultants and, unless otherwise privileged, their counsel, representatives, agents, servants, employees, investigators or consultants. A Document is in Debtors' "possession, custody and control" if Debtors have the legal right to obtain the Document, regardless of its source or present location.

5.      With respect to any of the Documents or property requested, should any such Document or property be presently unavailable and/or if any such Document is not

2

presently in Debtors' possession, please identify each Document including: (a) the type or character of the Document (e.g., letter, memorandum, a signed statement, etc.); (b) the title, if any, of the Document; (c) the name and address of the addressee of the Document; (d) the names and addresses of all recipients of copies of the Document; (e) all information contained in each such Document; (f) the date and circumstances under which each such Document ceased to be in your possession; (g) the time period during which each such Document was maintained; (h) the locations of each such Document; and (i) the person or persons from which each such Document may be obtained, including his or her name, present or last known business and home address and business and home telephone numbers.

6.    "Or" is used in the all inclusive sense. If, for example, a request calls for any Documents which indicate x or y, any Documents which indicate both x and y should be produced, as well as any Documents that indicate either x or y. "Any" is also used in the inclusive sense; that is "any" means "any and all".

7.    "You" and "your" refer to Debtors as defined below.

8.    As used herein, "Debtors" and "any Debtor" refer individually and collectively to Motors Liquidation Company and all of its subsidiaries, affiliates, divisions, and predecessors (including but not limited to the company formerly known as General Motors Corporation), its and their present and former officers, representatives, employees, agents, servants, counsel, investigators, consultants, and all other persons acting on its or their behalf.

3

9.    As used herein, "New GM" refers individually and collectively to General Motors, LLC and all of its subsidiaries, affiliates, and divisions, its and their present and former officers, representatives, employees, agents, servants, counsel, investigators, consultants, and all other persons acting on its or their behalf.

10.    As used herein, the present tense shall include the past tense and the past tense shall include the present tense.

11.    As used herein, the singular shall include the plural and the plural shall include the singular.

12.    "Asbestos" as used herein shall include all Asbestos or asbestiform minerals of either the amphibole or serpentine group, and shall include chrysotile, amosite, crocidolite, tremolite, anthophyllite and actinolite.

13.    "Asbestos-Containing Product" is an inclusive term and includes, but is not limited to, Asbestos in any form or variety and any compound, material, manufactured or fabricated thing or equipment containing Asbestos in any form or variety. "Asbestos-Containing Product" is specifically not limited with respect to product type or form, such as thermal insulation, refractories, mastics, raw Asbestos, etc. and shall include all product types and forms.

14.    An "Asbestos Claim" means any lawsuit, workers' compensation claim, civil action, demand letter, notice of claim, proof of claim or any other similar assertion brought by an individual (or an individual's personal representative) against any Debtor alleging bodily injuries or wrongful death allegedly caused by exposure to Asbestos or

4

Asbestos-Containing Products.  "Asbestos Claim" includes any claim or demand ever asserted against any Debtor regardless of how such claim was resolved (by settlement, dismissal, or otherwise) and regardless of whether such claim resulted in the filing of a civil lawsuit by the claimant.

15.    "GM Entity" means Old GM (as defined below) and any subsidiary, affiliate, or predecessor thereof.

16.    "Old GM" means the entity formerly known as General Motors Corporation and now known as Motors Liquidation Company, the lead Debtor in the above-captioned bankruptcy case.

## DOCUMENT REQUESTS

Debtors are requested to produce for inspection and copying the following Documents:

1.    All databases or other data compilations concerning past, pending, or future Asbestos Claims against any GM Entity.  This request seeks databases or other data compilations that accumulate or summarize, on an aggregate basis or on a claim-by-claim basis, information regarding Asbestos Claims against any GM Entity, and information about resolved or unresolved Asbestos Claims that have been asserted against any GM Entity, such as the names of the claimants, their social security numbers (or the last four digits of such numbers), the filing dates for the claims, the nature and dates of the claimants' alleged exposure to asbestos, the respective jurisdictions in which the claims were filed, the nature of the asbestos-related diseases

5

or conditions asserted, the present status of the claims, the dates of any claim resolutions, the manner in which any such resolution was achieved (*e.g.*, by trial, settlement, or dismissal of the claim), the amount of any related judgments entered in favor of the claimant, defense costs, and the dollar amounts paid to resolve the claims.

2.    All instructions, specifications, or other documentation concerning any database responsive to Request No. 1.

3.    Any software necessary to use any database responsive to Request No. 1.

4.    Any data, forecast, projection, report or analysis that Old GM relied on in computing its recorded liabilities or reserves for asbestos-related matters.

5.    Documents sufficient to show the calculation of recorded liabilities or reserves for Asbestos Claims or related defense costs of any GM Entity.

6.    Any data, forecast, projection, valuation, report or analysis concerning the number or value of Asbestos Claims filed against, to be filed against, resolved, or to be resolved by any GM Entity, including pending claims and claims projected or anticipated to be asserted at any future time.

7.    With respect to any prepetition engagement of Hamilton Rabinovitz & Associates Inc. or Dr. Francine Rabinovitz (collectively, "Hamilton Rabinowitz") by any GM Entity:

a.    any document setting forth the terms of Hamilton Rabinovitz's engagement;

b.    any forecast, projection, valuation, report or analysis made by

6

Hamilton Rabinovitz pursuant to such engagement with respect to the past, present, or future liability of any GM Entity for Asbestos Claims; and

      c.     all documents, data, assumptions, or other information provided to Hamilton Rabinovitz.

8.     With respect to any prepetition engagement of Bates White LLC or Dr. Charles E. Bates (collectively, "Bates White") by any GM Entity:

      a.     any document setting forth the terms of Bates White's engagement;

      b.     any forecast, projection, valuation, report or analysis made by Bates White pursuant to such engagement with respect to the past, present, or future liability of any GM Entity for Asbestos Claims; and

      c.     all documents, data, assumptions, or other information provided to Bates White.

9.     With respect to any prepetition engagement by any GM Entity of any expert other than Hamilton Rabinovitz or Bates White for the forecasting, projection, valuation, or analysis of Asbestos Claims or aggregate liability for Asbestos Claims:

      a.     any document setting forth the terms of the expert's engagement;

      b.     any forecast, projection, valuation, report or analysis made by the expert pursuant to such engagement with respect to the past, present, or future liability of any GM Entity for Asbestos Claims; and

c.      all documents, data, assumptions, or other information provided

to the expert for use or reference in its prepetition engagement.

10.    All documents concerning economic, financial or budgetary aspects of

the management, defense, or resolution of Asbestos Claims by any GM Entity.

11.    All documents concerning strategies or processes used by any GM Entity

for the management, defense, or resolution of Asbestos Claims.

12.    All documents concerning changes or trends in the filing, management,

valuation, defense or resolution of Asbestos Claims against any GM Entity.

13.    All documents concerning any GM Entity's experience with personal

injury Asbestos litigation in the tort system of the United States including, but not

limited to (a) the supervision and conduct of any GM Entity's asbestos litigation

defense; (b) the litigation and settlement strategies and experience of any GM Entity or

those of any other Entity; (c) defenses raised or considered by any GM Entity to defend

itself in personal injury Asbestos litigation; (d) settlements and judgments paid by any

GM Entity in connection with Asbestos personal injury litigation; and (e) Asbestos

Claims that were disposed of without payment by any GM Entity.

14.    Documents sufficient to identify each lead trial counsel who defended

any GM Entity in a jury trial of an Asbestos Claim after January 1, 2000.

15.    Documents sufficient to identify any verdict rendered during the period

January 1, 2000, through May 31, 2009, in the trial of an Asbestos Claim for which a

GM Entity was a remaining defendant when the verdict was rendered, including the

8

court and jurisdiction in which the matter was tried, the name and social security number (or last four digits thereof) of each plaintiff, the identity of plaintiff's counsel, the identity of lead trial counsel for the GM Entity, the disease alleged by the plaintiff, whether a verdict was returned in favor of the plaintiff against the GM Entity, the amount of the verdict as to all defendants, the amount of the verdict allocated to the GM Entity, and the amount of any post-verdict settlement or judgment paid by the GM Entity (or bonded if the case was appealed).

16.     Documents sufficient to identify any lawyer, risk manager, claims adjuster, or other representative or employee who represented any GM Entity in the settlement or resolution of a group of 500 or more Asbestos Claims entered into between January 1, 2000 and May 31, 2009.

17.     Documents sufficient to identify all lawyers, risk manager, claims adjusters, or other representatives or employees of any GM Entity who had substantial responsibility for the management of Asbestos Claim matters at any time between January 1, 2000, and May 31, 2009.

18.     Documents sufficient to identify any lawyer, risk manager, claims adjuster, or other representative or employee of any GM Entity who had substantial responsibility for Asbestos Claims involving mesothelioma at any time from January 1, 2000, until May 31, 2009.

19.    Documents sufficient to identify any lawyer, risk manager, claims adjuster, or other representative who represented any GM Entity in the settlement of any Asbestos Claim between January 1, 2006, and May 31, 2009.

20.    Documents sufficient to identify all individuals who had a substantial role in recommending or deciding on behalf of any GM Entity whether to settle or try Asbestos Claims at any time from January 1, 2000, until May 31, 2009.

21.    Documents sufficient to identify all in-house personnel who at any time from January 1, 2000, until May 31, 2009, had a substantial role in making recommendations or decisions on:

(a)    Strategies followed by any GM Entity for the management, defense, or resolution of Asbestos Claims;

(b)    Economic, financial, and budgetary aspects of the management, defense, or resolution of Asbestos Claims by any GM Entity.

22.    All documents concerning communication with any insurer concerning the number, size, timing, estimation, value, management, defense or resolution of Asbestos Claims against any GM Entity.

23.    Documents concerning any audits of settled Asbestos Claims against any GM Entity performed by or at the request of any insurer.

24.    Documents sufficient to identify every Asbestos-Containing Product that any GM Entity ever manufactured, sold, distributed, marketed, or used, and to show as to each such product, the following:

10

(a)    the entity that engaged in the manufacture, sale, distribution, marketing or use of the Asbestos-Containing Product (e.g., Old GM itself or specified subsidiaries, affiliates, or predecessors thereof);

(b)    the brand name(s) of the product;

(c)    the date the product first went into production;

(d)    the last date the product was produced;

(e)    the last date the product was sold;

(f)    all manufacturing locations;

(g)    dates of manufacture at each location;

(h)    the percentage of Asbestos, and the dates and all reasons for any modification thereto;

(i)    the type of Asbestos and any chemical analysis of the composition of such product;

(j)    the source of supply for Asbestos used in the product and the period of time (e.g., 1970 to 1975) during which the relevant GM Entity drew upon that source for Asbestos;

(k)    the color, physical characteristics, and appearance of the product;

(l)    a full and precise description of all forms of packaging in which the product was sold or distributed, including, but not limited to, type of package, size, color(s), and writings thereon;

11

(m)    all other names under which the product was sold, including without limitation, pursuant to the licensing of any entity unrelated to Old GM for sale of the product;

(n)    the number and date of each patent or patent application pertaining to the product;

25.    Documents concerning whether or in what circumstances any Asbestos-containing brake product manufactured, sold, distributed, marketed, or used by any GM Entity caused, contributed to causing, or is or was capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

26.    Documents concerning whether or in what circumstances any Asbestos-containing friction products other than brakes, including without limitation clutch facings, manufactured, sold, distributed, marketed, or used by any GM Entity is or was capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

27.    All documents concerning the number, value, and timing of Asbestos Claims asserted or forecasted to be asserted against any GM Entity based on alleged exposure to locomotive brakes or insulation used in locomotives.

28.    Documents sufficient to identify each GM Entity that manufactured, installed, serviced, replaced, marketed, or distributed Asbestos-containing locomotive brakes or insulation used in locomotives.

29.    All documents concerning whether or in what circumstances locomotive brakes or insulation manufactured, installed, serviced, replaced, marketed, sold, distributed, or used by any GM Entity caused, contributed to causing, or is or was capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

30.    All documents concerning the number, value, and timing of Asbestos Claims asserted or forecasted to be asserted against any GM Entity based on alleged exposure to Asbestos as Asbestos-containing products located in premises owned, leased, or controlled by a GM Entity.

31.    Documents sufficient to identify the premises of any GM Entity that have been alleged or shown to be a source of Asbestos exposure resulting in any Asbestos-related disease or health condition, including the location of each such premises, the nature of the business or industrial activities conducted there during the periods in which individuals have allegedly been exposed there to Asbestos, and the nature and purpose of the Asbestos or Asbestos-containing products alleged to have been the sources of such exposures.

13

32.    All documents concerning whether or in what circumstances Chrysotile Asbestos caused, contributed to causing, or is or was capable of causing or contributing to the causation of mesothelioma.

33.    All documents indexes or written lists of documents relating to Asbestos or Asbestos-containing products that are or were at any time in the possession of any GM Entity.

34.    Documents sufficient to identify any document repositories, locations or facilities of any GM Entity or New GM, including electronic or on-line facilities, that contain documents concerning Asbestos or Asbestos-containing products.

35.    Documents concerning any document retention policy or procedure adopted by any GM Entity or New GM.

14

36.    All documents that the Debtors or New GM have provided to Remy International, Inc. in the course of these bankruptcy cases.

Dated: August ____, 2010

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED

_____
Trevor W. Swett
tws@capdale.com
Kevin C. Maclay
kcm@capdale.com
James P. Wehner
jpw@capdale.com
One Thomas Circle, NW
Washington, DC  20005
Tel: (202) 862–5000
Fax: (202) 429-3301

Elihu Inselbuch
ei@capdale.com
Rita C. Tobin
rct@capdale.com
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY  10022–4614
Tel: (212) 319–7125
Fax: (212) 644-6755

*Attorneys for the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims*

15

# EXHIBIT B

## EXHIBIT B

### Subject Matters of Testimony by Designated Corporate Representatives

1.      The identification of each data base in your possession, custody, or control, that

collects or compiles in digital or electronic form any information or details concerning

Asbestos Claims (each, an "Asbestos Claims Database").  The identification of any Asbestos

Claims Database should include the following information:

(a)      any name or designation by which your employees or representatives

routinely refer to the Asbestos Claims Database;

(b)      the period of time to which the information contained in the database,

taken as a whole, relates;

(c)      identification of each GM Entity that is or was a defendant to any

Asbestos Tort Claim reflected in the data that is contained in the Asbestos Claims Database;

(d)      identification and description of all data fields or categories of

information the Asbestos Claims Database was designed to include (for example, claimant's

name, date of birth, and social security number; date of first asbestos exposure; period of

asbestos exposures; place(s) of exposure(s); products alleged to be sources of exposure; open

or closed claim; if applicable, date of settlement, date of judgment, plaintiff's or defendant's

verdict, amount of payment and date of payment);

(e)      whether New GM has provided the Asbestos Claims Database in whole

or in part to the Debtors and, if so, the date(s) on which the Asbestos Claims Database or

portions of its contents were so provided; the identity of each individual who was responsible

#355320

for providing the Debtors with that information; and the identity of each individual who was responsible for receiving that information on behalf of the Debtors; and

(f)    If any New GM has provided any Asbestos Claims Database to the Debtors in part, but not in whole, identification of which data fields or categories of information were withheld and the reasons for withholding them.

2.    For each Asbestos Claims Database identified in response to Interrogatory No. 1, identification of the individual New GM considers most knowledgeable about the design, contents, and capabilities of the Asbestos Claims Database, the sources of information drawn upon in compiling the data, the processes and procedures employed in compiling and maintaining the Asbestos Claims Database, and the uses New GM or Old GM have made of the Asbestos Claims Database.

3.    Identification of each lead trial counsel who defended an Old GM Entity in the jury trial of an Asbestos Tort Claim at any time after January 1, 2000.

4.    For the time period January 1, 2000, through May 31, 2009, identification of each trial of an Asbestos Tort Claim that went to verdict at a time when an Old GM Entity was a remaining defendant, and for each such trial the following information:  the court and jurisdiction in which the matter was tried, the name of plaintiff, the identity of plaintiff's counsel, the identity of lead trial counsel for the Old GM Entity, the disease alleged by plaintiff, whether a verdict was returned in favor of plaintiff, the amount of the verdict as to all defendants, the amount of the verdict allocated to the Old GM Entity, and the amount of any post-verdict settlement or judgment paid by the Old GM Entity (or bonded by the Old GM

Entity if the case was appealed); and the identification of source materials from which this information was obtained.

5.    Identification of any lawyer, claims adjuster, or other representative who represented any Old GM Entity in the settlement or resolution of a group of 500 or more Asbestos Tort Claims entered into between January 1, 2000, and May 31, 2000.

6.    Identification of any lawyer, claims adjuster, or other representative who represented any Old GM Entity in the settlement of any Asbestos Tort Claim which was entered into between January 1, 2006, and May 31, 2009.

7.    Identification of all lawyers, risk managers, claims adjusters, or other representatives or employees of any Old GM Entity who had substantial responsibility for Asbestos Tort Claim matters at any time between January 1, 2000, and May 31, 2009.

8.    Identification of all lawyers, risk managers, claims adjusters, or other representatives or employees of any GM Entity who had substantial responsibility for Asbestos Claims involving mesothelioma at any time from January 1, 2000, until May 31, 2009.

9.    Identification of all individuals who had a substantial role in recommending or deciding on behalf of an Old GM Entity whether to settle or try Asbestos Tort Claims at any time from January 1, 2000, until May 31, 2009.

10.    Identification of all individuals who, at any time from January 1, 2000, until May 31, 2009, had a substantial role in making recommendations or decisions upon (a) strategies followed by Old GM Entities for the management, defense, or resolution of Asbestos Tort Claims, or (b) economic, financial, or budgetary aspects of the management, defense, or resolution of Asbestos Tort Claims by Old GM Entities.

11.    The identification and description of every Asbestos-Containing Product that any Old GM Entity ever manufactured, sold, distributed, marketed, or used, including for each such product the following information:

(a)    the identity of each Old GM Entity that engaged in the manufacture, sale, distribution, marketing or use of the Asbestos-Containing Product (e.g., GM itself or specified subsidiaries, affiliates, or predecessors);

(b)    the brand name(s) of the product;

(c)    the date the product first went into production;

(d)    the last date the product was produced;

(e)    the last date the product was sold;

(f)    all manufacturing locations;

(g)    dates of manufacture at each location;

(h)    the percentage of Asbestos, and the dates and all reasons for any modification thereto;

(i)    the type of Asbestos and any chemical analysis of the composition of such product;

(j)    the specific source of Asbestos with dates;

(k)    the color, physical characteristics, and appearance of the product;

(l)    a full and precise description of all forms of the package in which the product was sold or distributed, including, but not limited to, type of package, size, color(s), and writings thereon;

(m)    all other names under which the product was sold, including without limitation, pursuant to a GM Licensed Product;

(n)    the number and date of each patent or patent application as to the product.

12.    The number, value, and timing of Asbestos Claims asserted or forecasted to be asserted against any GM Entity based on alleged exposure to locomotive brakes or insulation used in locomotives.

13.    Identification of each GM Entity that manufactured, installed, serviced, replaced, marketed, or distributed Asbestos-containing locomotive brakes or insulation used in locomotives.

14.    Whether or in what circumstances locomotive brakes or insulation manufactured, installed, serviced, replaced, marketed, sold, distributed, or used by any GM Entity is or was capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

15.    The number, value, and timing of Asbestos Claims asserted or forecasted to be asserted against any GM Entity based on alleged exposure to Asbestos in premises owned, leased, or controlled by a GM Entity.

16.    Identification of the premises of any GM Entity that has been alleged or shown to be a source of Asbestos exposure resulting in any Asbestos-related disease or health condition, including the location of each such premises, the nature of the business or industrial activities conducted there during the periods in which individuals have allegedly been exposed

there to Asbestos, and the nature and purpose of the Asbestos-containing products alleged to have been the sources of such exposures.

17.    Whether or in what circumstances any Asbestos-containing brake products manufactured, sold, distributed, marketed, or used by any Old GM Entity have caused, contributed to the causation of, or are or were capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs;

18.    Whether or in what circumstances any Asbestos-containing friction products other than brakes, including without limitation clutch facings, manufactured, sold, distributed, marketed, or used by any Old GM Entity have caused, contributed to the causation of, or are or were capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs; and

19.    Whether or in what circumstances Chrysotile Asbestos is or was capable of causing or contributing to the causation of mesothelioma.

20.    Whether or in what circumstances Asbestos-containing locomotive brakes or insulation products used in locomotives have caused, contributed to the causation of, or are or were capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

21.     Whether or in what circumstances exposures to Asbestos or Asbestos-containing products in premises owned, leased, or controlled by any GM Entity have caused, contributed to the causation of, or was capable of causing or contributing to the causation of mesothelioma, lung cancer, any other form of cancer or malignant disease, asbestosis, pleural effusions, pleural plaques, or any other non-malignant disease or abnormal condition of the lungs.

22.     The identification of all documents or other sources from which the information provided with respect to the foregoing subject matters was obtained.

23.     The conduct and results of searches for documents responsive to discovery requests issued by the ACC.

**PRESENTMENT DATE AND TIME: August 3, 2010 at 12:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE: August 3, 2010 at 11:30 a.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re                                          :
MOTORS LIQUIDATION COMPANY, et al.,            :      Chapter 11 Case No.
        f/k/a General Motors Corp., et al.     :
                                               :      09-50026 (REG)
                                               :
                                               :      (Jointly Administered)
                                               :
                                               :
-----------------------------------------------------------x
```

## ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS TO TAKE DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY FROM THE DEBTORS AND FROM GENERAL MOTORS, LLC, ITS SUBSIDIARIES AND AFFILIATED COMPANIES

Upon the application (the "**Application**") of the Official Committee of Unsecured

Creditors Holding Asbestos-Related Claims (the "**Asbestos Claimants Committee**" or

"**ACC**") of Motors Liquidation Company and its affiliated debtors and debtors in possession

(collectively, the "**Debtors**") for entry of an order pursuant to Rule 2004 of the Federal Rules

of Bankruptcy Procedure authorizing the ACC to take document discovery and deposition

testimony from the Debtors and from General Motors, LLC, its subsidiaries and affiliated

companies (individually and collectively, "**New GM**"); and good and sufficient notice of the

Application having been given; and no other or further notice being required; and sufficient

cause appearing therefor; it is

ORDERED that the Application is **GRANTED**;

**ORDERED** that the ACC is authorized to serve, and the Debtors and New GM are directed to respond to, document requests along the lines set forth in Exhibit A to the Application;

**ORDERED** that the ACC is authorized to serve, and the Debtors and New GM are directed to respond to, subpoenas directing them, respectively, to designate individuals to testify on their behalf with respect to subject matters along the lines of those set out in Exhibit B to the Application;

**ORDERED** that the ACC is authorized to serve, pursuant to Bankruptcy Rule 2004, without further Order of the Court, such additional discovery requests upon any person as the ACC may deem appropriate for the purposes of estimating the Debtors' aggregate liability for Asbestos Claims, subject, however, to the right of persons receiving such requests to raise objections and be heard for the resolution of the same;

**ORDERED** that this Court shall retain jurisdiction to resolve any issues with respect to this Order.

Dated:   New York, New York
         August ____, 2010

_____
HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE