**Hearing Date and Time: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Deadline: July 30, 2010 at 4:00 p.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt
Philip Bentley

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                              :
In re:                                                        :    Chapter 11 Case No.:
                                                              :
MOTORS LIQUIDATION COMPANY, et al.                            :    09-50026 (REG)
          f/k/a General Motors Corp., et al.                  :
                                                              :
                     Debtors.                                 :    (Jointly Administered)
                                                              :
------------------------------------------------------------------ X


# NOTICE OF HEARING ON THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING PRODUCTION OF DOCUMENTS BY (I) THE CLAIMS PROCESSING FACILITIES FOR CERTAIN TRUSTS CREATED PURSUANT TO BANKRUPTCY CODE SECTION 524(g), AND (II) <u>GENERAL MOTORS LLC AND THE DEBTORS</u>

PLEASE TAKE NOTICE that a hearing will be held before the Honorable Robert E.

Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for

the Southern District of New York (the "**<u>Bankruptcy Court</u>**"), Alexander Hamilton Custom

House, One Bowling Green, New York, New York 10004-1408, on August 6, 2010, at 9:45 a.m.

(prevailing Eastern Time) to consider the Motion of The Official Committee of Unsecured

Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004

Directing Production of Documents by (I) the Claims Processing Facilities for Certain Trusts

Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors (the "**2004 Motion**").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the 2004 Motion must be made in writing, with a hard copy to Chambers; conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court Southern District of New York; be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended); and be served upon: (i) Kramer Levin Naftalis & Frankel LLP, counsel to the Official Committee of Unsecured Creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Robert T. Schmidt, Esq. and Philip Bentley, Esq.), (ii) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.), (iii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan 48243 (Attn: Ted Stenger), (iv) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.), (v) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.), (vi) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.), (vii) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.), (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.), (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.), (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.), and (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq; so as to be received not later than **4:00 p.m. (prevailing Eastern Time) on July 30, 2010** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that only responses made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the hearing and that if no responses to the 2004 Motion are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter an order granting the 2004 Motion without further notice.

Dated:   New York, New York
       July 20, 2010

                  KRAMER LEVIN NAFTALIS & FRANKEL LLP

                  By:  /s/ Philip Bentley
                     Thomas Moers Mayer
                     Philip Bentley
                     David Blabey Jr.
                     1177 Avenue of the Americas
                     New York, New York 10036
                     Phone: (212) 715-3275
                     Fax: (212) 715-8000

                     Counsel for the Official Committee of
                     Unsecured Creditors of Motors Liquidation
                     Company., *et al.*

**Hearing Date and Time: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Deadline: July 30, 2010 at 4:00 p.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Philip Bentley
David Blabey, Jr.

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- X
                                                         :
In re:                                                   :        Chapter 11 Case No.:
                                                         :
MOTORS LIQUIDATION COMPANY., et al.,                     :        09-50026 (REG)
f/k/a General Motors Corp., et al.                       :
                                                         :
                                 Debtors.                :        (Jointly Administered)
                                                         :
-------------------------------------------------------- X
```

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING PRODUCTION OF DOCUMENTS BY (I) THE CLAIMS PROCESSING FACILITIES FOR CERTAIN TRUSTS CREATED PURSUANT TO BANKRUPTCY CODE SECTION 524(g) AND (II) GENERAL MOTORS LLC AND THE DEBTORS

# **TABLE OF CONTENTS**

Preliminary Statement................................................................................................................2

Background ...................................................................................................................................3

    A.   Procedural Background.................................................................................................3

    B.   Old GM's Historical Asbestos Liabilities.................................................................5

    C.   Old GM's Future Asbestos Liabilities .......................................................................6

Jurisdiction...................................................................................................................................9

Relief Requested .........................................................................................................................9

Basis for Relief Requested.........................................................................................................10

    A.   Information from the Claims Processing Facilities ..................................................13

    B.   Information from New GM and the Debtors ...........................................................14

        1.   Social Security Numbers.................................................................................14

        2.   Complaints, Interrogatory Responses and Deposition Transcripts in the
            Mesothelioma Cases ......................................................................................15

Notice........................................................................................................................................16

KL2 2659777.5

## <u>TABLE OF AUTHORITIES</u>

### CASES

*In re Arkin-Medo, Inc.*,
  44 B.R. 138 (Bankr. S.D.N.Y. 1984) ....................................................................12

*In re Bakalis*,
  199 B.R. 443 (Bankr. E.D.N.Y. 1996) .................................................................11

*In re Countrywide Home Loans, Inc.*,
  384 B.R. 373 (Bankr. W.D. Pa. 2008) ............................................................10, 11

*In re Drexel Burnham Lambert Group, Inc.*,
  123 B.R. 702 (Bankr. S.D.N.Y. 1991) .................................................................11

*In re Ecam Publications, Inc.*,
  131 B.R. 556 (Bankr. S.D.N.Y. 1991) .................................................................11

*In re GHR Companies Inc.*,
  41 B.R. 655 (Bankr. D. Mass. 1984) ...................................................................12

*In re Hammond*,
  140 B.R. 197 (Bankr.  S.D. Ohio 1992) ........................................................ 11-12

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (Bankr. S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994) ............11

*In re Lev*,
  2008 WL 207523 (Bankr. D.N.J. 2008) ...............................................................11

*In re Lufkin*,
  255 B.R. 204 (Bankr. E.D. Tenn. 2000) ......................................................... 10-11

*In re Sutera*,
  141 B.R. 539 (Bank. D. Conn. 1992) ...................................................................12

*In re Symington*,
  209 B.R. 678 (Bankr. D. Md. 1997) .....................................................................11

*In re Valley Forge Plaza Assocs.*,
  109 B.R. 669 (E.D. Pa. 1990) ..............................................................................11

*In re W.R. Grace & Co.*,
  Case No. 01-1139 (Bankr. D. Del. Oct. 3, 2007) ...........................................12, 13

KL2 2659777.5

*In re W.R. Grace & Co.*,
    Case No. 01-1139 (Bankr. D. Del. Aug. 29, 2007) ...........................................................13

*In re Wilson*,
    2009 WL 304672 (Bankr. E.D. La. 2009) ...........................................................................11

## STATUTES

11 U.S.C. § 105(a) ...............................................................................................................16

11 U.S.C. § 524(g) ..................................................................................................................2

28 U.S.C. § 1408 .....................................................................................................................9

28 U.S.C. § 1409 .....................................................................................................................9

28 U.S.C. § 157 .......................................................................................................................9

28 U.S.C. § 1334 .....................................................................................................................9

Fed. R. Bankr. P. 1015(c) .....................................................................................................16

Fed. R. Bankr. P. 2004 ..........................................................................................................10

Fed. R. Bankr. P. 9007 ..........................................................................................................16

## MISCELLANEOUS

Charles E. Bates & Charles H. Mullin, *Having Your Tort and Eating it Too?,* 6 Mealey's
    Asbestos Bankruptcy Report at 4 (November 2006) ...............................................................7

Mark A. Behrens, *What's New in Asbestos Litigation?*, 28 Rev. of Litig. 501 (Spring 2009)........7

Stephen J. Carroll et al., *Asbestos Litigation,* (RAND Corporation 2005)
    (available at http://www.rand.org/pubs/monographs/2005/RAND_MG162.pdf)....................6

KL2 2659777.5

**Hearing Date and Time: August 6, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Deadline: July 30, 2010 at 4:00 p.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Philip Bentley
David Blabey, Jr.

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                                          :
In re:                                                    :        Chapter 11 Case No.:
                                                          :
MOTORS LIQUIDATION COMPANY., et al.,                      :        09-50026 (REG)
f/k/a General Motors Corp., et al.                        :
                                                          :
                                    Debtors.              :        (Jointly Administered)
                                                          :
--------------------------------------------------------- X


## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING PRODUCTION OF DOCUMENTS BY (I) THE CLAIMS PROCESSING FACILITIES FOR CERTAIN TRUSTS CREATED PURSUANT TO BANKRUPTCY CODE SECTION 524(g) AND (II) GENERAL MOTORS LLC AND THE DEBTORS


TO:    THE HONORABLE ROBERT E. GERBER,
         UNITED STATES BANKRUPTCY JUDGE

              The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") of

the above captioned debtors and debtors-in-possession in these chapter 11 cases (collectively, the

"**Debtors**" or "**Old GM**"), by and through its undersigned counsel, hereby moves for entry of an

order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), substantially in the form annexed as **Exhibit A** hereto, authorizing the service of subpoenas compelling the production of documents by (i) the claims processing facilities for certain trusts created pursuant to Bankruptcy Code § 524(g), and (ii) General Motors LLC ("**New GM**") and the Debtors.

### Preliminary Statement

As part of the consideration for the sale of substantially all of the Debtors' assets, New GM issued certain stock and warrants to the Debtors. It is currently expected that these securities of New GM will be available for distribution to the Debtors' general unsecured creditors pursuant to a chapter 11 plan of liquidation. One of the factors determining the value of creditor recoveries will be the allowed amount of general unsecured claims. To that end, the Creditors' Committee has been working with the Debtors to analyze and object to certain significant disputed claims to maximize recoveries for general unsecured creditors.

Among the largest disputed claims are the present and future asbestos claims against the Debtors. In their Form 10-K filed a few months prior to this bankruptcy, the Debtors recorded a liability of $648 million for asbestos-related matters, and if past experience is any guide, the official asbestos claimants' committee in this case is likely to claim that the Debtors' true liability is many times that amount. It is expected that the Debtors' chapter 11 plan will provide for the establishment and funding of an asbestos trust responsible for the liquidation and payment of all asbestos claims. To determine the amount of funding required for that trust, the Debtors, the Creditors' Committee and representatives of the Debtors' current and future asbestos claimants have each retained an estimation expert to value the universe of asbestos claims against the Debtors. Following the experts' analysis of the claims, the parties intend to

2

engage in settlement negotiations and, if those negotiations are unsuccessful, to commence an estimation proceeding in this Court to determine the Debtors' aggregate asbestos liability.

The Debtors and New GM have provided the Creditors' Committee with certain information (principally, the Debtors' asbestos claims database) concerning Old GM's asbestos claims history.  This information is not sufficient, however, to accurately estimate the Debtors' asbestos liabilities.  As we explain below, additional information is needed from several sources: principally, from the claims processing facilities for trusts established pursuant to Code § 524(g) in the bankruptcy cases of a number of former asbestos defendants; and secondarily, from New GM and the Debtors.

Because the Debtors' asbestos liabilities are not yet the subject of a contested matter, the Creditors' Committee seeks the needed information by way of this motion, pursuant to Rule 2004.  The Creditors' Committee is prepared to enter into an appropriate confidentiality agreement with the various claims processing facilities and associated trusts, as well as with New GM and the Debtors, and to work with the parties to minimize the burden imposed by the necessary document requests.

## **BACKGROUND**

### A.    **Procedural Background**

1.    The Debtors, with input from the Creditors' Committee and other constituents, are in the process of formulating a chapter 11 plan.  The Debtors currently contemplate that the plan will provide for the establishment of a trust to resolve and pay present and future asbestos-related personal injury claims.  The trust will receive its appropriate ratable share of the consideration to be distributed to holders of general unsecured claims.  *See* Motion Pursuant to Sections 105 and 1109 of the Bankruptcy Code for an Order Appointing Dean M.

Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants (the "**Future Claimants' Representative Motion**") [Docket No. 5214] at ¶ 5.

2.      The aggregate amount of the Debtors' asbestos liabilities is hotly disputed. In the Form 10-K they filed a few months prior to this bankruptcy, the Debtors recorded a liability of $648 million for asbestos-related matters.  To judge by the estimates advanced by official asbestos claimants' committees in prior bankruptcies, the official committee of asbestos claimants appointed in this case (the "**Asbestos Committee**") is likely to assert an estimate five or ten times greater than the Debtors' estimate – i.e., in the billions of dollars.  The Creditors' Committee believes that the Debtors' true liability is substantially less than the recorded reserve.

3.      The Debtors, the Creditors' Committee, the Asbestos Committee and the representative for holders of future asbestos personal injury claims (the "**Future Claimants' Representative**") have each retained asbestos estimation expert to evaluate the amount of the Debtors' asbestos liabilities.  The various retained experts and professionals are in the process of gathering information and analyzing data relating to the Debtors' asbestos liabilities.

4.      The Debtors have made certain information concerning their asbestos liabilities – principally, their asbestos claims database – available to the various experts. However, as discussed below, several claims processing facilities for section 524(g) trusts established in connection with prior asbestos-driven bankruptcies are in possession of documents highly relevant to the estimation of the Debtors' asbestos liabilities.  In addition, New GM and the Debtors are in possession of certain documents, some of them confidential, that they are as yet unwilling to turn over to the Creditors' Committee or other parties, at least without the protections provided by a court order.  (The Creditors' Committee is engaged in discussions with New GM and the Debtors, and hopes to be able to reach agreement with them concerning the

KL2 2659777.5

requested documents prior to the hearing on this motion.)  As a result, the Creditors' Committee

is required to obtain the documents it needs by means of the service of subpoenas.  Because a

formal estimation proceeding has not yet been commenced,[1] the Committee seeks leave, by this

Rule 2004 motion, to serve such subpoenas on the claims processing facilities, and on New GM

and the Debtors.

**B.      Old GM's Historical Asbestos Liabilities**

5.      Historically, Old GM was a peripheral defendant in asbestos litigation.

Although brake linings used in Old GM's automobiles incorporated small amounts of

encapsulated asbestos, a significant body of scientific data demonstrates that these asbestos-

containing products are safe and do not create an increased risk of asbestos-related disease.

Among other things, the asbestos used in these products was chrysotile asbestos, as distinct from

the much more toxic amphibole asbestos formerly used in many insulation products.  Moreover,

the amount of exposure to asbestos fibers caused by brake linings is vastly less (one-one

thousandth, by some estimates) than the exposure caused by other asbestos-containing products,

such as insulation.

6.      Until recently, the principal defendants in asbestos litigation were

"traditional" defendants, such as those involved in the mining and manufacturing of asbestos or

in the shipbuilding, railroad and construction industries.  Automobile manufacturers, such as Old

GM, were named infrequently as asbestos defendants and, when named, were only very rarely

the primary target of litigation.  Claims, when asserted, could generally be settled for very small

---

[1] As noted above, in the absence of a consensual resolution of the allowed amount of asbestos claims, the parties will proceed to a contested confirmation hearing on this issue.  *See* Future Claimants' Representative Motion at ¶ 6.

KL2 2659777.5

amounts – a reflection of the plaintiff bar's recognition that car manufacturers bore little, if any, responsibility for the plaintiffs' ailments.

7.      This pattern changed dramatically over the course of the past decade, principally due to one overriding reason:  Virtually all of the traditional asbestos defendants that had not previously filed for bankruptcy did so in the years 2000 through 2003.  *See generally* Stephen J. Carroll, et al., *Asbestos Litigation* at xxiii, xxv (RAND Corporation 2005) (available at  http://www.rand.org/pubs/monographs/2005/RAND_MG162.pdf).   As the major asbestos defendants disappeared from the tort system, claimants began to name new defendants, and once-peripheral defendants such as Old GM increasingly became "target" defendants.  *See id.*

8.      The result of this new development was a dramatic increase in Old GM's asbestos-related expenditures – particularly for mesothelioma claims, which accounted for more than 80% of its asbestos liabilities – in the early and mid-2000s.  Between 1990 and 1999, fewer than 40 mesothelioma claims per year, on average, were filed against Old GM, and its average annual asbestos-related indemnity expenditures were less than $2 million per year.  In sharp contrast, between 2002 and 2008, an average of more than 850 mesothelioma claims per year were filed against Old GM (a more than 20-fold increase), and Old GM's annual average asbestos-related indemnity expenditures exceeded $30 million (a more than 15-fold increase).  Old GM's total asbestos-related expenditures peaked in 2003, and declined thereafter.  Similarly, the average value of a mesothelioma claim against Old GM peaked in 2002 and then declined.

## C.      Old GM's Future Asbestos Liabilities

9.      The Creditors' Committee believes that the mesothelioma claim values that prevailed during the first decade of this century were artificially high – a temporary spike, due principally to the absence from the tort system of the defendants that filed for bankruptcy in the early years of the decade.  That short-term development is now nearing its end:  Most of

these recent asbestos-driven bankruptcies have now concluded or will do so soon.  Moreover,

unlike in prior asbestos-driven cases, these recent bankruptcies have resulted in the creation of

extremely well-funded Section 524(g) trusts.

10.    The magnitude of the funding of the recently-formed section 524(g) trusts

is striking.  The Creditors' Committee's expert, Charles E. Bates of Bates White, LLC, estimates

that section 524(g) trusts confirmed during the years 2004 through 2009 have been funded with

aggregate assets in excess of $30 billion, with trusts holding an additional $9 billion in assets

expected to be confirmed in the near future.  And the funding of these trusts is likely to increase

– possibly to as much as $60 billion – based on future contributions from insurance receivables

and other sources.  *See* Charles E. Bates & Charles H. Mullin, *Having Your Tort and Eating it*

*Too?,* 6 Mealey's Asbestos Bankruptcy Report at 4 (November 2006) ("**Bates & Mullin**") (copy

annexed as **Exhibit B** hereto); Mark A. Behrens, *What's New in Asbestos Litigation?*, 28 Rev. of

Litig. 501, 554 (Spring 2009) (citing Bates & Mullin at 4) (copy annexed as **Exhibit C** hereto).[2]

By way of comparison, the aggregate future liability of *all* asbestos defendants, according to

some estimates, totals only $30 billion on a net present value basis – less than the likely

aggregate funding of the trusts.  *See* Bates & Mullin at 4.

11.    The availability of between $30 billion and $60 billion in payments from

section 524(g) trusts has enormous implications for the estimation of Old GM's asbestos

liabilities.  A central issue in any estimation proceeding will be the determination of the value of

the future claims (particularly mesothelioma claims) against Old GM.  In particular, should those

claims be valued at their 1990's levels, at the much higher levels that prevailed after 2000, or at

---

[2] Indeed, some section 524(g) trusts pay more per claim than the debtor's average historical settlement
amounts – a surprising phenomenon, which has been attributed both to the relatively strong financial
condition of these recent debtors and to their need to pay handsomely to obtain the 75% acceptance by
asbestos claimants required by Code § 524(g).  *See* Bates & Mullin at 4.

KL2 2659777.5

some intermediate level?  The Creditors' Committee expects to show that the claim values that prevailed in the 1990's represent (or at least, are much closer than more recent values to) the "true" values of the claims against Old GM.  That is, the 1990's values are the values that would likely have prevailed had Old GM remained in the tort system, and that this Court should employ in its estimation decision.

12.     Specifically, the Creditors' Committee expects to show that, with the recent and continuing establishment of deep-pocketed section 524(g) trusts, the decrease in Old GM's annual asbestos expenditures since its 2003 peak would have continued, had Old GM remained in the tort system rather than filing for bankruptcy.  This is so for several reasons:

- It is likely that a large number (perhaps the vast majority) of Old GM claimants have filed claims against multiple section 524(g) trusts over the past several years, as these trusts have begun to pay claims.  Moreover, these claims presumably assert – as they must in order to recover from the trusts – that the claimant was exposed to asbestos used in these defendants' products.  (We expect that these facts will be established by the requested discovery from the trusts' claims processing facilities.)

- Old GM's litigation defenses against plaintiffs who have filed claims against section 524(g) trusts are much stronger than its defenses against plaintiffs who have not filed such claims.  As noted above, the asbestos used in many of these other defendants' products was of a much more dangerous type than that encapsulated in Old GM's brake linings (amphibole, rather than the less toxic chrysotile), and the degree of exposure to these other defendants' asbestos was as much as a thousand times greater than the exposure to asbestos in Old GM brake linings.  Consequently, against a claimant who has alleged exposure to such other products, Old GM has a strong basis to argue that the principal, or even sole, cause of the claimant's disease was his exposure to the other defendants' products.  Moreover, in many jurisdictions, Old GM would also be entitled to reduce any potential verdict by the amount of all recoveries obtained by the plaintiff from other sources, including section 524(g) trusts.

- Not surprisingly, claims against Old GM by claimants who have also filed claims against section 524(g) trusts tend to have much lower settlement values than the claims of those who have not filed such claims.

13.     Together, these factors would have operated to reduce the value of asbestos claims against Old GM.  As a result, the recent prepetition downward trends in Old

GM's mesothelioma claim values and total asbestos-related expenditures most likely would have continued.

## JURISDICTION

14.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

15.     Pursuant to Rule 2004 of the Bankruptcy Rules, the Creditors' Committee seeks the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing it to serve document subpoenas substantially in the form attached as **Exhibits D   and   E**, on (i) the Delaware Claims Processing Facility and Claims Resolution Management Corporation (together, the "**Claims Processing Facilities**"), as claims processing facilities for Armstrong World Industries Asbestos Personal Injury Settlement Trust, Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, Celotex Asbestos Settlement Trust, DII Industries, LLC Asbestos PI Trust, Owens Corning Fibreboard Asbestos Personal Injury Trust – FB Subfund, Owens Corning Fibreboard Asbestos Personal Injury Trust – OC Subfund, United States Gypsum Asbestos Personal Injury Settlement Trust and Manville Personal Injury Settlement Trust (collectively, the "**Trusts**");[3] and (ii) New GM and the Debtors.

16.     Specifically, the Creditors' Committee seeks to obtain from the Claims Processing Facilities (and, if necessary, from the Trusts) (i) any and all claims forms and other

---

[3] The Creditors' Committee has been informed that all of the requested Trust-related documents are in the possession of the Claims Processing Facilities, and that subpoenas directed to the Trusts will therefore not be necessary.  In light of the possibility that the Claims Processing Facilities may assert that some or all of the requested documents are not in their possession but instead are in the Trusts' possession, the Creditors' Committee seeks authorization to subpoena the Trusts for these documents to the extent they are not in the Claims Processing Facilities' possession.

filings submitted to each of the Trusts by the plaintiffs in each of the pre-petition asbestos personal injury actions against Old GM in which the plaintiffs alleged they suffered from mesothelioma (the "**Mesothelioma Cases**"); and (ii) the amounts paid by each of the Trusts to the plaintiffs in the Mesothelioma Cases.

17.    In addition, the Creditors' Committee seeks to obtain from New GM and/or the Debtors (i) the last four digits of the social security numbers of the plaintiffs who filed pre-petition asbestos personal injury actions against Old GM; and (ii) the complaints, the case-specific interrogatory responses served by plaintiffs, and transcripts of the depositions of the plaintiffs in the Mesothelioma Cases.[4]

## BASIS FOR RELIEF REQUESTED

18.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Bankruptcy Rule 2004(a). Pursuant to Bankruptcy Rule 2004, a party in interest may seek both document and oral discovery related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Bankruptcy Rule 2004(b), (c). *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (inquiry into liability of a debtor and into any matter which may affect the administrative of the estate "comfortably falls within the allowed limits under Rule 2004"); *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is

---

[4] The Creditors' Committee believes that, while New GM is in possession of plaintiffs' social security numbers and the complaints in the Mesothelioma Cases, Old GM and its outside counsel are in possession of the interrogatory responses and deposition transcripts in those cases. For simplicity's sake, the Creditors' Committee seeks leave to serve a subpoena seeking all of these documents from both New GM and the Debtors.

As noted above, the Creditors' Committee is hopeful that it may be able to reach an agreement with New GM and the Debtors, in advance of the hearing on this motion that would eliminate the need for the service of subpoenas on either of these parties.

KL2 2659777.5

to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors").

19.    Unlike discovery under the Federal Rules of Civil Procedure, discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009).  As such, a Bankruptcy Rule 2004 motion need not be tied to specific factual allegations at issue between parties. *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

20.    Moreover, the scope of a Bankruptcy Rule 2004 examination is broader than that of discovery under the Federal Rules. *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad.  Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure.").  Courts have recognized that Bankruptcy Rule 2004 examinations may be "broad [and] unfettered," in the nature of a "fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. at 400; *see also In re Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa. 1990). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432, (Bankr. S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994).

21.    The decision whether to authorize the requested discovery rests within the sound discretion of the bankruptcy court. *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr.

KL2 2659777.5

S.D. Ohio 1992).  Among other things, courts authorize discovery under Bankruptcy Rule 2004

to assist in examining claims filed against the estate.  *See In re Sutera*, 141 B.R. 539, 541 (Bank.

D. Conn. 1992) ("It is well settled that a Rule 2004 examination is a proper procedure to inquire

into the basis for a filed proof of claim"); *In re Arkin-Medo, Inc.*, 44 B.R. 138 (Bankr. S.D.N.Y.

1984) (allowing Rule 2004 examination of all facts and circumstances surrounding a disputed

claim); *In re GHR Companies Inc.*, 41 B.R. 655 (Bankr. D. Mass. 1984) (granting Rule 2004

request by a secured bank to ascertain debtors' tax liability stemming from claims filed  by the

IRS).

22.    Here, the requested relief is well within the scope of Bankruptcy Rule

2004.  The estimated amount of the Debtors' asbestos liabilities will significantly impact

distributions to all general unsecured creditors.  The requested relief will allow the Creditors'

Committee to evaluate the true extent of the Debtors' asbestos liabilities and to propose an

accurate estimate of asbestos claims for purposes of funding an asbestos trust.

23.    Relief similar to that sought herein was granted in the bankruptcy

proceedings of W.R. Grace & Co.  There, the bankruptcy court authorized the debtors to take

discovery from the Celotex Asbestos Settlement Trust to obtain information relevant to the

estimation of the debtors' asbestos liabilities.  *See In re W.R. Grace & Co.*, Case No. 01-1139

(Bankr. D. Del. Oct. 3, 2007) (Order Regarding W.R. Grace & Company's Motions to Compel

Discovery Materials from the Celotex Asbestos Settlement Trust) (a copy of the court's order is

attached hereto as **Exhibit F**).[5]  In particular, the court authorized discovery regarding Grace

---

[5] Judge Fitzgerald's order compelling discovery resulted from a contested matter between W.R. Grace and
Celotex Asbestos Settlement Trust.  On June 20, 2007, W.R. Grace filed a motion on notice to compel
discovery from Celotex Asbestos Settlement Trust.  Celotex Asbestos Settlement Trust filed an
opposition to the motion, and the Official Committee of Asbestos Personal Injury Claimants filed an
objection together with the Legal Representative for Future Asbestos Personal Injury Claimants.  The

KL2 2659777.5

claimants' "exposure history" and ordered the Celotex Trust to produce the data contained in claimants' responses to certain sections of the trust's claim form. *See id.; see also In re W.R. Grace & Co.,* Case No. 01-1139 (Bankr. D. Del. Aug. 29, 2007) (Transcript of Hearing at page 98) (excerpts from the August 29, 2007 hearing transcript are attached hereto as **Exhibit G**).

24.      For the reasons set forth below, each of the categories of information sought herein is properly discoverable and is necessary for a thorough and accurate estimation of the Debtors' asbestos liabilities.

**A.      Information from the Claims Processing Facilities**

25.      As discussed above, the Creditors' Committee believes that, had Old GM remained in the tort system rather than filing for bankruptcy, the value of mesothelioma claims against it would have continued to fall from their 2002-03 peak as a result, among other things, of the ability of claimants to recover from the section 524(g) trusts that have recently begun to pay claims. To establish this, the Creditors' Committee must show that Old GM's asbestos claimants – especially the approximately 7,400 prepetition mesothelioma claimants – have, in fact, asserted claims against and received payments from section 524(g) trusts.

26.      In addition, the claims forms and other submissions may provide important additional information concerning the 2,400 unresolved prepetition mesothelioma claims. The Debtors have not maintained information on diagnosis date and age of claimant for these claims. This information is critical to an accurate estimation because (i) younger claimants typically hold more valuable claims, and (ii) "stale" claims, i.e., claims that are filed years after the date of diagnosis, are typically less valuable. The Creditors' Committee hopes to obtain certain of this information from the complaints, interrogatory responses and deposition

parties argued the motion on August 29, 2007. On October 3, 2007, Judge Fitzgerald entered her order compelling discovery.

transcripts that it expects to receive from New GM and Old GM. However, it is likely that much of this information will not be included in these documents either. Thus, the prepetition mesothelioma claimants' submissions to the Trusts will enable Bates White to obtain important additional information relevant to the valuation of these existing claims against Old GM.

27.    The Creditors' Committee is prepared to work with the Claims Processing Facilities, the Trusts and other parties to the estimation proceeding to determine the most cost-effective and least burdensome method for obtaining the information requested herein. In addition, the Creditors' Committee is prepared to enter into an appropriate confidentiality agreement with each of the Claims Processing Facilities and Trusts.

**B.    Information from New GM and the Debtors**

     **1.    Social Security Numbers**

28.    It is standard for social security numbers (either the complete numbers or the last four digits) to be provided to experts that have been retained to estimate a debtor's asbestos liabilities. The provision of such numbers serves a number of valuable purposes, including enabling estimation experts to eliminate duplicate claims and to match claimant information from multiple sources.

29.    Here, the last four digits of the social security numbers of the plaintiffs who filed prepetition asbestos personal injury actions against Old GM are needed for at least three reasons. First, comparing social security numbers is the only sure way to weed out duplicative claims against Old GM. Second, in light of certain deficiencies of the information contained in the Debtors' asbestos claims database, it is necessary for Bates White to use the social security numbers to supplement data on Old GM's asbestos claimants with information that is available from other databases. In particular, Bates White expects that it will be able to obtain from other sources information on date of diagnosis and age of claimant. Third, social

security numbers will provide the most effective method of matching claimant information from Old GM with claimant information from these sources.

30.    The Creditors' Committee has been engaged in discussions with New GM regarding the production of social security numbers and understands that New GM has certain concerns regarding disclosure of this sensitive information.  However, the Creditors' Committee understands that New GM would be willing to produce the last four digits of the social security numbers pursuant to the protections of an order from this Court.  In addition, the Creditors' Committee is prepared to enter into an appropriate confidentiality agreement.

### 2.    Complaints, Interrogatory Responses and Deposition Transcripts in the Mesothelioma Cases

31.    As noted above, the Creditors' Committee's estimation case rests, in part, on the fact that defendant-naming patterns have changed over time.  Among other things, the defendants whose departure from the tort system accounted for the steep rise in claim values against Old GM at the turn of the century are now returning to the tort system in the form of section 524(g) trusts.  Without access to the complaints in the Mesothelioma Cases, Bates White will be unable to determine the ways in which Old GM's co-defendants have changed over time and the implications of such changes.

32.    In addition, to properly value existing mesothelioma claims against Old GM, it is necessary for Bates White and the other estimation experts to have information on the age and the exposure history of the existing mesothelioma claimants, including the sources and extent of each claimant's exposure to asbestos.  Work history is particularly revealing in this regard.  For instance, a claimant who worked as a brake mechanic and had no other sources of asbestos exposure will tend to have a much higher claim value than a claimant who (a) never

worked as a brake mechanic and/or (b) had other sources of asbestos exposure (e.g., occupation in the construction, shipbuilding or railroad industries).

33.     Unfortunately, while such information is typically made available to experts in estimation proceedings, the Debtors' database is deficient in several respects. Among other things, the database does not contain information on date of diagnosis or age of claimant, and the work history data is incomplete. This information is not obtainable solely from the complaints in the Mesothelioma Cases. In order to get such information, the estimation experts must have access to the deposition transcripts and interrogatory responses in these cases.

## NOTICE

34.     Notice of this motion has been provided to counsel to the Debtors, counsel to New GM, counsel to the Asbestos Committee, counsel to the Future Claimants' Representative, the Claims Processing Facilities, the Trusts, the Consumer Privacy Ombudsman and parties in interest in accordance with the Third Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated April 29, 2010 [Docket No. 5670]. The Creditors' Committee submits that such notice is sufficient and no other or further notice need be provided.

35.     No prior request for the relief sought in this motion has been made by the Creditors' Committee to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

16

KL2 2659777.5

WHEREFORE, the Creditors' Committee respectfully requests that this Court

(i) enter an order substantially in the form attached hereto as **Exhibit A** granting the relief sought

herein, and (ii) grant such other and further relief as the Court may deem proper.

Dated:    July 20, 2010
          New York, New York


                         KRAMER LEVIN NAFTALIS & FRANKEL LLP

                         By:   /s/ Philip Bentley
                         Thomas Moers Mayer
                         Philip Bentley
                         David Blabey, Jr.
                         1177 Avenue of the Americas
                         New York, New York 10036
                         Phone: (212) 715-9100
                         Fax: (212) 715-8000

                         Counsel for the Official Committee
                         of Unsecured Creditors of Motors Liquidation
                         Company , et al.

KL2 2659777.5