**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                      :
In re                                 :        Chapter 11
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :        Case No. 09-50026 (REG)
        f/k/a General Motors Corp., et al.   :
                                      :
                Debtors.              :        (Jointly Administered)
                                      :
-------------------------------------------------------------x
```

## SUPPLEMENT TO APPLICATION BY AP SERVICES, LLC, AS CRISIS MANAGERS TO THE DEBTORS, FOR APPROVAL OF THE SUCCESS FEE

TO THE HONORABLE ROBERT GERBER
UNITED STATES BANKRUPTCY JUDGE:

        On July 16, 2010, AP Services, LLC ("**APS**"), as crisis managers to Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), filed the *Application by AP Services, LLC as Crisis Managers to the Debtors for Approval of the Success Fee* [Docket No. 6363] (the "**APS Application**"), which referenced documents filed in other chapter 11 cases in which performance-based fees previously awarded to APS and its affiliates, as well as to other turnaround and restructuring specialists, were approved (the "**Documents**").  In accordance with the Third Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated April 29, 2010 [Docket No. 5670], attached are true and correct copies of the Documents.

Dated: July 23, 2010

By:    /s/ Albert A. Koch
      **Albert A. Koch**
      Authorized Representative
      AP Services, LLC
      2000 Town Center, Suite 2400
      Southfield, MI 48075

## TABLE OF CONTENTS

Exhibit A       *In re Enron Corp.*, Ch. 11 Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 12, 2006)

Exhibit B       *In re Calpine Corporation*, Ch. 11 Case No. 05-60200 (Bankr. S.D.N.Y. Mar. 27, 2008)

Exhibit C       *In re Chrysler LLC*, Ch. 11 Case No. 09-50002 (Bankr. S.D.N.Y. May 20, 2009)

Exhibit D       *In re Northwest Airlines*, Ch. 11 Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 14, 2007)

Exhibit E       *In re Interstate Bakeries Corp.*, Ch. 11 Case No. 04-45814 (Bankr. W.D. Mo. May 26, 2009 )

Exhibit F       *In re Dana Corp.*, Ch. 11 Case No. 06-10354 (Bankr. S.D.N.Y. May 28, 2008)

Exhibit G       *In re Bearing Point*, Ch. 11 Case No. 09-10691 (Bankr. S.D.N.Y. Sept. 18, 2009)

Exhibit H       *In re Semcrude, L.P.*, Ch. 11 Case No. 08-11525 (Bankr. D. Del. Mar. 4, 2010)

Exhibit I       *In re Readers Digest*, Ch. 11 Case No. 09-23529 (Bankr. S.D.N.Y. May 10, 2010)

## **EXHIBIT A**

IN RE ENRON CORP., CASE NO. 01-16034

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
                                             :

In re                            :          **Chapter 11**
                                    :

**ENRON CORP., et al.,**          :          **Case No. 01-16034 (AJG)**
                                    :

                                    :          **Jointly Administered**

                  **Reorganized Debtors.**    :
----------------------------------------------------------------X

**ORDER APPROVING THE MOTION OF**
**STEPHEN FORBES COOPER, LLC FOR**
**ALLOWANCE FOR PAYMENT OF SUCCESS FEE**

Upon consideration of the motion, dated September 2, 2004 (the

"Motion"), of Stephen Forbes Cooper, LLC ("LLC") for allowance and payment of a

success fee; and due and adequate notice of the Motion and the relief requested therein

having been given pursuant to the Federal Rules of Bankruptcy Procedure and the fee

procedures order of this Court; and the Court having jurisdiction to consider and

determine the Motion and the relief requested therein; and the Court having held a

hearing to consider, among other motions and applications, the Motion on November 16,

2005 (the "Hearing"); and after due consideration of the objections thereto filed by

Upstream Energy, the Maharashtra Foundation, certain Enron Corp. creditors who were

employees of CrossCounty Energy and an unknown individual (collectively, the

"Objections"); and the Court having entered that certain Stipulation and Order Approving

Settlement Between the United States Trustee and Stephen Forbes Cooper, LLC for Entry

of an Order Authorizing and Approving the Payment of Success Fee, dated March 24,

2006 (the "Stipulation"), wherein (a) LLC amended its request for a success fee to the

amount of $12.5 million and (b) the United States Trustee for Region 2 agreed, among

other things, not to object to the Motion and the relief requested therein, as amended; and

the Court having overruled certain of the Objections at the Hearing; and upon the

testimony provided and the arguments presented at the Hearing and the record of all the

proceedings in these chapter 11 cases; and based upon the findings of fact and

conclusions of law set forth in the Court's Opinion, annexed hereto as Exhibit "A"; it is

hereby

      ORDERED that the Objections, to the extent not overruled at the Hearing,

withdrawn or otherwise rendered moot or incorporated into the Court's determination, are

hereby overruled in their entirety; and it is further

      ORDERED that the Motion, as amended pursuant to the Stipulation, is

hereby granted to the extent set forth herein; and it is further

      ORDERED that LLC is hereby awarded, and has hereby earned, the total

sum of $ 12.5 million dollars as a success fee (the "Success Fee"); and it is further

      ORDERED that the Reorganized Debtors are authorized and directed to

pay the Success Fee to LLC.


Dated:  New York, New York
      April 12, 2006

                    _s/ Arthur J. Gonzalez_____
                    HONORABLE ARTHUR J. GONZALEZ
                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**Opinion**

EXHIBIT A

On September 2, 2004, Stephen Forbes Cooper, LLC ("LLC") filed a motion (the "Motion") seeking a success fee ("Success Fee") in accordance with section 4(c) of the April 4, 2002 agreement (the "Agreement") among LLC, Stephen Forbes Cooper ("Cooper") and Enron Corp. which was effective, nunc pro tunc, to January 28, 2002. A hearing on the Motion was scheduled for September 27, 2004, and the deadline for filing objections was set for the same day. Thereafter, the hearing was adjourned by the Court, *sua sponte*, to November 15, 2005. (The Court adjourned the hearing to November 15, 2005 to coincide with the Section 330 applicants' final fee hearing.)

A number of objections were filed prior to the originally-set September 27, 2004 deadline and, subsequently, additional objections were filed prior to the amended deadline. By agreement between LLC and the US Trustee, the objection deadline for the US Trustee was adjourned to various dates after the November 15, 2005 hearing, and ultimately to March 24, 2005. On March 24, 2005, a stipulation (the "Stipulation") was filed and entered by the Court resolving any issues the US Trustee would have asserted.

On April 4, 2002, the Court entered an Order, pursuant to 11 U.S.C. §363, authorizing the Debtors to employ Stephen Forbes Cooper, LLC as an Independent Contractor to Provide Management Services for the Debtors Nunc Pro Tunc, to January 28, 2002 (the "Original Order"). As stated above, pursuant to the Agreement, the Debtors employed Cooper and LLC to provide and perform management services on the terms and conditions set forth in the Agreement. Under the Agreement, the Debtors engaged Cooper as Acting Chief Executive Officer and chief Restructuring Officer. Subsequently, the Board of Directors of Enron named Cooper the President of Enron.

1

The Agreement further authorized LLC to designate up to fifteen (15) individuals

provided by LLC to serve as Associate Directors of Restructuring (the "Associate

Directors") to work for the Debtors.  These fifteen Associate Directors served as integral

members of the Debtors' senior management team and provided the following

management services:

> a) Overseeing and directing the liquidation of the Debtors' wholesale and retail
> trading book;
> b) Overseeing and directing the sale of Enron's non-core assets by the Debtors;
> c) Overseeing and directing the business planning and section 363 sales efforts
> related to the Debtors' core power generation, transportation and exploration
> production businesses;
> d) Overseeing, directing and performing chapter 11 related activities of the
> Debtors, including, but not limited to cash management, claims mapping, special
> purpose vehicle analysis, chapter 11 reporting and fulfilling information requests
> from the Official Committee of Unsecured Creditors ("Creditors' Committee"),
> investigatory agencies and the Enron Examiner; and
> e) Overseeing, directing and performing litigation support activities for the
> Debtors.

> With respect to compensation, the relevant language in the Agreement references

> a fee to be requested by Cooper and LLC, subject to Bankruptcy Court
> approval for reasonableness, to be fixed and paid promptly after the earlier
> of either (i) termination of this Agreement, (ii) disposition of substantially
> all Enron's material assets or (iii) confirmation of a chapter 11 plan for
> Enron or separate plans or a joint plan for two or more of Enron's major
> subsidiaries, in an amount to take into account, among other things,
> Cooper's dedication of himself and LLC to Enron, on short notice, to the
> exclusion of other business, comparable fees, results achieved, value
> maximization, and diligent progress and efforts.

Agreement, at 4(c).  The foregoing fee shall hereinafter be referred to as the "Success

Fee."

Over the course of the restructuring effort, LLC deployed 34 Associate Directors,

plus Cooper, to perform services for Enron, as well as 4 employees from Kroll, Inc.,

through a separate retention order.

2

By the Motion, Cooper and LLC request the entry of an order authorizing and approving payment of a Success Fee in the amount of $25 million, in accordance with a certain payment schedule attached to the Motion.  In reaching the proposed amount, the Debtors' then-board of directors, LLC and the Creditors' Committee engaged in extensive negotiation regarding (i) the results achieved by LLC, (ii) the appropriate amount of a Success Fee, in light of those results, and (iii) the timing of payment of such Success Fee.  The Success Fee as proposed reflected the results of that negotiation and the acquiescence of the Creditors' Committee.

The relief sought by the Motion was to be paid according to the following schedule:

| AMOUNT | THRESHOLD | DATE |
|---|---|---|
| 25% or $6.25m | Plan Effective Date | 11/17/04 |
| 25% or $6.25m | Initial Distribution | 04/01/05 |
| 25% or $6.25m | Cumulative Distributions-$1B | 10/01/05 |
| 25% or $6.25m | Cumulative Distributions-$2B | 04/03/06 |

Although each of the referenced events has occurred, no payments have been made awaiting the Court's ruling on this Motion as to the amount, if any, of the Success Fee request that would be approved by the Court.

Although a comparison of the Success Fee to the plan total enterprise value is merely one of the factors the Court considers in evaluating the Motion, the Court notes that the Success Fee of $25 million sought by LLC equates to approximately 20 basis points of the plan total enterprise value.  *See*, Debtor's Exhibit 3 (comparing success fees according to basis points).  As a point of comparison, LLC presented as evidence a chart setting forth the success fees paid to other CEO's or restructuring officers (fiduciaries) in comparable bankruptcy cases.  Those fees ranged from 8 basis points, on the low end, to

3

more than 300 basis points, on the high end, with the median being 54 basis points, and the mean 95 basis points of the plan total enterprise value.

As set forth in the Motion, Enron has reviewed the results achieved and Success Fee as requested, and supports its allowance and payment. Additionally, the Creditors' Committee supports approval and payment of the Success Fee, as sought, pursuant to the payment schedule. Finally, Enron's present board of directors, who took office after the Motion was filed, do not oppose the relief sought.

In the Motion, for discussion purposes, Cooper and LLC classified their efforts into a number of major headings. Cooper alleges that his and LLC's efforts and accomplishments warrant the award as sought. The headings mentioned in the Motion are as follows:

- maximizing value
- distributing value
- preserving jobs and pro-actively managing transition

Evidence was presented at the Hearing further refining these accomplishments into several sub-headings allegedly achieved by LLC. They are

- overall stability of company
- the development of a litigation strategy for the Mega complaint
- management of wholesale/retail trading book resolution process
- crafting of a largely consensual plan
- realizing value of Portland General Electric
- formation and stabilization of Prisma Energy
- resolution and estimation of contingent and unliquidated claims
- resolution of complex litigation

There was no challenge to the evidence presented at the hearing concerning LLC's accomplishments, or the alleged added value resulting therefrom. Nor was there any challenge to LLC's characterization of the creditors' general expectations at the

4

outset of these cases for a meaningful distribution of assets.

Regarding the objections filed, only one of the objectors, Upstream Energy Services ("Upstream") participated in the November 15, 2005 hearing.  Counsel for Upstream cross-examined the witnesses testifying in support of the Success Fee and argued in opposition to the Motion.  However, neither Upstream, nor any other objector presented any witnesses or other evidence to support their opposition to the Success Fee.

Certain other objectors (identified as a group of current and former employees) have argued that the results achieved, specifically regarding CrossCounty Energy, should not be attributed to LLC but, rather, to that entities' employees.  As a general statement, their objections are that LLC essentially received what it bargained for and that is enough.

An objection was also filed by the Maharashtra Foundation of New York on behalf of the Dabhol-Niramaya Hospital community project.  This objector argues that LLC did not "deliver the significant and unique expertise" as it claims.  The objection also seeks an order requiring that a portion of any success fee that may be awarded be used to fund the building of a hospital that Enron previously funded under an agreement regarding the Dabhol Power Company.

Still another objecting creditor has argued that LLC performed no better here than any other trustee from any other firm would have performed.  Further, this objector has argued that:

> - $25 million results from greed;
> - the amount already paid is excessive;
> - a 19¢ on the dollar recovery is not a success; and
> - a trustee would have been less costly.

In sum, this objector's position is that the Enron bankruptcy, as it currently stands, should be viewed as a complete failure of the bankruptcy process. Also, this objector takes issue with the allegation that $840 billion of claims were resolved and contends that LLC's claim to have saved jobs is a complete fiction.

The objection by Upstream (the "Upstream Objection"), while taking issue with whether LLC's contribution to the alleged achievement warrants the amount requested, also seeks to preclude payment of any Success Fee from ENA. Upstream argues that:

> - a success fee was not payable for a liquidating plan under the terms of the original employment contract reached in January 2002, attached to the original motion (the "Original Agreement")
> - no amount should be paid because ENA creditors have yet to receive a significant payment

In addition, Upstream raises certain intercompany conflict of interest and related issues. Regarding these assertions, this Court ruled on those issues previously at the Confirmation Hearing and at an earlier hearing concerning a request for separate counsel for ENA. Furthermore, at the November 15, 2005 hearing, the Court recalls that it overruled that portion of the Upstream Objection as it applied to Debtors' counsel and to Cooper and LLC, based upon the rationale expressed in the above rulings. However, to the extent there is any doubt as to the Court's ruling on these issues, that portion of the objection is overruled for the reasons set forth previously in the aforementioned rulings.

As to that portion of the Upstream Objection in which it is argued that no Success Fee is due because the Confirmed Plan is a liquidating plan as opposed to a rehabilitation/restructuring plan, this objection fails for a number of reasons. The Original Agreement provided for a minimum guaranteed success payment of $5 million if there were a successful rehabilitation or reorganization, an award that could be

6

increased with the agreement of the Debtors and the approval of the Creditors'

Committee.  The Original Agreement further provided that if a plan other than a

rehabilitation/restructuring plan was confirmed, the parties could agree upon a success

fee.  Upstream infers, therefore, that the award for a liquidating plan should be less than

the award for a rehabilitation or reorganization plan.  However, this argument ignores the

possibility that even under the Original Agreement, the award for a successful liquidation

could have been greater than the minimum guaranteed success payment, if the liquidation

realized substantial value.  Moreover, while the Original Agreement thus linked the

minimum guaranteed success award to a successful rehabilitation or restructuring plan,

the Agreement as modified and finally approved by the Court eliminated that element.

Instead, the Agreement set forth a reasonableness standard, not tied to any specific

minimum amounts, but which also required Court approval for whatever award was

sought.  It is the modified Agreement that is before the Court and it provides for a

Success Fee, subject to the Court's approval.  The Upstream Objection on this ground is,

therefore, without merit.

Insofar as Upstream now asserts that the modification to the Agreement was not

adequately noticed, such objection is overruled as untimely.  In sum, the request for a

Success Fee is timely and in accordance with the Agreement.

Upstream and, in essence, most of the other objectors raise the issue that many of

the tasks performed by LLC were done with the assistance of an advisor or broker, and

others.  Related to this point, the objections focus on the issue of who should receive

credit for any success.  It may be appropriate to put the term "success"in its proper

context.

7

Both sections 363 and 330 as paid under section 503 reflect congressional intent that ordinary and reasonable expenses be based upon marketplace criteria for the services provided during the administration of the case.  Thus, under both 363 and 330, through 503, the Court looks to the marketplace to determine the reasonableness of any payment.  However, the standard applied to awarding these two types of fees in the marketplace is fundamentally different.

In a request for section 330 compensation, the rate charged by the professional is set by the marketplace, which  incorporates the professional's high level of skill and expertise into the rate.  When such a professional seeks a fee enhancement, premium or bonus, it is necessary to determine whether the professional exceeded the high level of skill and expertise built into the market price, and whether any extraordinary success was achieved that was unanticipated.  Although a professional may be retained under section 330 based upon a contingency fee or rate plus contingency arrangement, as at least one professional was retained in these cases, nevertheless, as a general matter, section 330 professionals are retained on an hourly basis and any bonus, etc., is reviewed as set forth above.

The term "success" is referenced in the Agreement but not defined.  The determination is left to the Debtor, Creditor's Committee and LLC to agree upon a reasonable amount, if any, for an award subject to Court approval.  A success fee, as referenced in the Agreement, is not a "bonus," "premium" or "fee enhancement" as such terms are often used to describe a request by a section 330 professional based upon extraordinary results, inter alia, not otherwise compensated for in the hourly rates, etc. of the professional.  *See* Transcript of hearing held on December 21, 2004 in *WorldCom*

8

*Inc. et al.*, attached to Order entered in *In re WorldCom, Inc, et al.,* Docket No. 02-

13533 (Banrk. S.D.N.Y. Dec. 28, 2004) (Order Denying Request by Akin Gump Strauss

Hauer & Feld, LLP Counsel for the Official Committee of Unsecured Creditors for

Award of a Premium).

      However, when retaining a CEO or top management, the marketplace ordinarily

includes a salary component as well as a success fee based upon performance. The

success component operates as an incentive to enhance value for the benefit of the

enterprise. Here the enterprise stakeholders are the pre-petition creditors. Thus,

regarding the Success Fee, the Court is asked to rule under a section 363 analysis

consistent with the standard used to approve the Agreement. As noted, the concept of

additional consideration is built into the Agreement to incentivize performance and was

part of the original fee structure from the outset of these cases. The role of LLC was to

provide management to the Debtors. In conjunction with the size and complexity of

Enron, the CEO was retained with certain incentives built into the relevant employment

contract. As previously indicated, the Agreement is reviewed under the section 363

standard as applied to an employment agreement with a corporate officer. Ultimately,

the standard is a reasonable amount as established by the relevant marketplace.

      The measure of success is certainly not precise and often subject to much debate.

Nevertheless, the initial measuring point, or in other words the time at which one must

assess the debtor's status as a reference point to measure progress, is more precise. A

number of objectants have, in effect, argued that success should be measured based upon

a comparison of Enron's status at confirmation with what "Enron once was." Although it

is understandable that some creditors, employees, and equity holders may well measure

the success factor by a comparison with what Enron once meant to them - economic

stability and growth - it is not a true measure of success in the context of the bankruptcy

process.

On December 2, 2001, the bankruptcy process began and soon thereafter it was

readily apparent that any effort to stabilize these cases to achieve value was not a task

that could be accomplished by its then top management. Each day brought further

erosion of their ability to lead the Debtors in a meaningful way. The Creditors'

Committee took the lead, in many respects, to find a stabilizing force. Although a

motion for a Chapter 11 trustee was filed with respect to Enron Corp., and a similar

motion was also filed, among other types of fiduciary relief sought, in the ENA case, it

was apparent to the Creditors' Committee, the Debtors, and to many other constituents,

that retaining a restructuring professional and an Enron Corp. Examiner would resolve

the Enron Corp. trustee motion without engaging in disruptive litigation. Apparently,

this view was shared by the Enron's parties in interest, as evidenced by the fact that after

the retention of LLC and the appointment of the Enron Corp. Examiner, no party,

including state and federal government officials, commissions, agencies or departments,

and equity holders sought to prosecute the Enron Corp. trustee motion. In addition, this

resolution and the appointment of the ENA Examiner virtually eliminated innumerable

motions that would have ensued as creditors rushed to file motions in the other Enron-

debtor cases.

Although it is uncertain how much litigation would have ensued, it is certain that

embarking on that course of action would have been extremely disruptive, and the efforts

to preserve value greatly undermined. This conclusion was fully supported by the record

10

of the November 15, 2005 hearing and the Confirmation hearing.  In terms of the costs of

a chapter 11 trustee, even assuming that there were only one such trustee, the fee

structure of section 326 does not support the conclusion that a fee sought under that

section would have been less than any of the amounts paid, to be paid or requested by

LLC.  Moreover, any such compensation still would be subject to the same

"reasonableness standard" as would be applied to a fiduciary such as a CEO or other

management staff.

Therefore, regarding the general issue of stabilizing the Debtor, LLC must be

given substantial credit for those efforts.  It was under its leadership that numerous

governmental agencies, departments and commissions found sufficient confidence in

LLC's management not to take action, which may well have been within their power and

authority, but which would have had a negative impact on efforts to stabilize the Debtors.

Regarding the Portland General and the Mega Complaint achievements, the

argument that many highly compensated advisors and brokers aided the process in

varying degrees warrants consideration.  These matters have employed highly qualified

professionals whose skills, whether they be in investment banking and related issues or in

litigation strategies, have played a greater role in the decision process by management

than in other areas where management may rely more on its own expertise than outside

advisors.

Regarding the largely consensual plan and energy trading settlements and

preservation of value, the same analysis is appropriate - in essence, how much of the

achievement it these areas is attributable to LLC in such a manner as to warrant a portion

of the Success Fee.  The record of the November 15, 2005 hearing and the confirmation

11

hearing fully support the conclusion that the economic attributes of rehibilitation were achieved through the overall preservation of value, including the orderly and timely sale of business units, during the administration of these and cases and under the plan as confirmed in July 2004.

Cooper and LLC provided substantial value to the estates from the perspective of what would have happened to these cases. The key to the success of this bankruptcy proceeding, from the prospects foreseeable in January 2002 to the confirmation, is due largely to the stabilization of the Debtors with its concomitant benefits. For that effort, as well as the confidence that was restored in the operational ability of the Debtors, in addition to the other areas of success in varying degrees, the credit belongs in substantial measure to LLC.

The other professionals, Creditors' Committee, and employees of the Debtors brought about the results achieved as well. But, just as the failure of the cases would have been, in large measure, placed upon the shoulders of LLC, so too should much of the success be placed there.

Regarding the US Trustee's Office, the objection deadline, as mentioned, was extended because the US Trustee needed additional time to receive certain records it had requested from LLC.

As the time neared for the US Trustee to file its objection, the Court had a conference in February 2006, with the Debtor, LLC and the US Trustee in which the Court encouraged the parties to reach an economic settlement if one were possible to avoid a protracted litigation.

As the Court has done on a number of occasions, it sought assistance of another

12

judge to act as mediator in an attempt to resolve any and all issues that might have been raised regarding LLC's compensation, or any matter related thereto.

Judge Lifland thereafter conducted a mediation with the parties as set forth above. Ultimately, his efforts resulted in the Stipulation entered into by LLC and the US Trustee, whereby LLC agreed to reduce its Success Fee request to $12.5 million and the US Trustee agreed to accept such as a resolution of any issue it might have raised concerning Cooper's compensation. Further, in consideration of the terms of the Stipulation, the US Trustee does not object to the payment to LLC of the $12.5 million Success Fee. Thus, as mediator, Judge Lifland assisted the parties in achieving an economic resolution reflecting a Success Fee that falls within a range of reasonableness taking into consideration all the facts and circumstances.

Under congressional mandate, marketplace-based rates are paid to those who provide services during the administration of a bankruptcy proceeding. Often in large, complex chapter 11 cases, the administrative services are provided by highly skilled, highly paid professionals. The payment of market-based rates ensures that an estate receives the level of expertise necessary in order to preserve value and, ultimately, to return the maximum amount of value possible to the prepetition constituencies. Needless to say, the extraordinary complexity of these cases with respect to the corporate financial structure and unique legal issues all required the retention of professionals with a comparable level of expertise and the concomitant associated costs.

As previously noted, this policy, by which the actual and necessary costs of administration are measured and paid under a reasonableness standard as referenced by the marketplace, prevails the relevant Code sections and the case law. Recently, by

13

amendment, Congress has limited the amount that may be paid to induce an insider to remain with the debtor during the administration of the case.  11 U.S.C. § 503(c)(1)  This restriction, however, neither by language nor intent, alters the marketplace compensation policy underlying section 503 and related sections regarding the post-petition retention of professionals or management who provide services to debtors.

In sum, the Court has considered the record of the November 15, 2005 hearing and the entire record of these cases, including the Stipulation, and the issues resolved therein, and the objections.  The Court finds that based upon a comparison of the prospects envisioned at the time of the commencement of these cases with the results actually achieved, the relevant standard in the marketplace and other evidence in support of the Success Fee, none of which was challenged by the submission of any evidence to the contrary, the Success Fee in the reduced amount of $12.5 million (10 basis points under Debtors' Exhibit 3) is within the range of reasonableness in the context of the Debtors' size, corporate structure and financial complexities.

Therefore, the Court will enter an order directing and authorizing the Reorganized Debtors to pay a $12.5 million Success Fee to LLC.

## **EXHIBIT B**

IN RE CALPINE CORPORATION, CASE NO. 05-60200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| Calpine Corporation, <u>et al.</u>, | ) | |
| | ) | Case No. 05-60200 (BRL) |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER GRANTING APPLICATIONS OF PROFESSIONALS FOR ALLOWANCE OF
EIGHTH INTERIM AND FINAL COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

Upon consideration of the applications (the "Applications") for allowance of interim

compensation for professional services and reimbursement of actual and necessary expenses

incurred for the period from October 1, 2007 through January 31, 2008 and for final

compensation for professional services and reimbursement of actual and necessary expenses

incurred for the period from December 21, 2005 through January 31, 2008 pursuant to sections

330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of

the Federal Rules of Bankruptcy Procedure, filed by each of the professionals listed on **Exhibit**

**A** annexed hereto (collectively, the "Professionals") who have been retained in these chapter 11

cases; and upon this Court's consideration of the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

this Court on April 19, 1995, the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996, and the Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, dated February 28, 2005 [Docket No. 617] (the

"Interim Compensation Procedures Order"); and upon consideration of the supporting papers and

the files and records in these cases; and upon the arguments and statements in support of the

Applications presented at the hearing before the Court, and upon the objection of the United States Trustee for the Southern District of New York to the Application of AP Services, LLC having been overruled, and upon any other objections to the Applications having been resolved or withdrawn, this Court finds and concludes that (i) this Court has jurisdiction to consider the Applications and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) notice of the Applications is sufficient, and no other or further notice need be provided; (v) the compensation requested in the Applications is reasonable; (vi) the reimbursements for expenses detailed in the Applications represent reimbursements for actual and necessary expenses incurred by the Professionals in connection with these cases; and (vii) the legal and factual bases set forth in the Applications and at the hearing establish just cause for the relief granted herein.

Based upon the above findings and conclusions, and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Applications of the Professionals as set forth on **Exhibit A** annexed hereto are hereby approved on a final basis.

2.      Compensation to the Professionals for professional services rendered during the time periods set forth in the Applications is hereby allowed on a final basis in the amounts set forth on **Exhibit A** in the column entitled "Fees Awarded."

3.      As part of the compensation for AP Services, LLC ("APS") for professional services rendered, payment to APS of an Emergence Incentive Bonus is hereby allowed on a final basis in the amount of $6 million.

2

4.      Reimbursements to the Professionals for expenses incurred during the time period set forth in the Applications are hereby allowed on a final basis in the amounts set forth on **Exhibit A** in the column entitled "Expenses Awarded."

5.      The Debtors are authorized to pay each Professional the amount set forth on **Exhibit B** in the column entitled "Fees Held Back" and, in the case of APS, the Emergence Incentive Bonus in satisfaction of fees that have not otherwise been paid by the Debtors to the Professionals pursuant to the Interim Compensation Procedures Order or the Court's prior interim compensation orders entered in these chapter 11 cases.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

7.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.      The requirement set forth in Rule 9013-1(b) of the Local Rules that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Applications or otherwise waived.

10.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Applications in these cases, the terms of this Order shall govern.

3

11.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated:  New York, New York
        March 27, 2008

_____/s/Burton R. Lifland_____
United States Bankruptcy Judge

## EXHIBIT A

Case No.: 05-60200 (BRL)
Case Name: Calpine Corporation, et al.

**INTERIM FEE PERIOD: OCTOBER 1, 2007 THROUGH JANUARY 31, 2008**

| APPLICANT | DATE AND DOCUMENT NO. OF APPLICATION | FEES REQUESTED[1] | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| Kirkland & Ellis LLP[2] | March 6, 2008, Docket No. 7686 | $18,825,816.50 | $18,825,816.50 | $1,347,296.00 | $1,347,296.00 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | February 28, 2008, Docket No. 7639 | 1,457,264.50 | 1,457,264.50 | 31,426.17 | 31,426.17 |
| Covington & Burling LLP | March 4, 2008, Docket No. 7664 | 34,342.20 | 34,342.20 | 238.76 | 238.76 |
| Thelen Reid Brown Raysman & Steiner LLP | February 28, 2008, Docket No. 7636 | 1,693,070.50 | 1,693,070.50 | 26,371.89 | 26,371.89 |
| Bracewell & Giuliani LLP | February 27, 2008, Docket No. 7631 | 439,164.10 | 439,164.10 | 7,259.72 | 7,259.72 |
| Lenczner Slaght Royce Smith Griffin LLP | March 4, 2008, Docket No. 7665 | 741,958.20 | 741,958.20 | 130,692.65 | 130,692.65 |
| Dickstein Shapiro LLP | March 4, 2008, Docket No. 7660 | 93,455.00 | 93,455.00 | 461.03 | 461.03 |
| Sutherland Asbill & Brennan LLP | March 4, 2008, Docket No. 7675 | 284,901.50 | 284,901.50 | 727.85 | 727.85 |
| AP Services, LLC | March 4, 2008, Docket No. 7674 | 6,111,250.75 | 6,111,250.75 | 379,401.12 | 379,401.12 |
| Sirius Solutions, LLLP | March 4, 2008, Docket No. 7673 | 771,315.00 | 771,315.00 | 15,331.95 | 15,331.95 |
| Cornerstone Management, LLC | March 4, 2008, Docket No. 7667 Amended, Docket No. 7700 | 647,325.00 | 647,325.00 | 51,698.88 | 51,698.88 |
| Deloitte Tax LLP | March 4, 2008, Docket No. 7670 | 1,446,949.13 | 1,446,949.13 | 6,572.30 | 6,572.30 |
| Deloitte Consulting LLP | March 4, 2008, Docket No. 7668 | 1,421,411.00 | 1,421,411.00 | 97,030.28 | 97,030.28 |
| Deloitte Financial Advisory Services LLP | March 4, 2008, Docket No. 7669 | 1,330,592.18 | 1,330,592.18 | 102,798.54 | 102,798.54 |
| Davis Wright Tremaine LLP | March 5, 2008, Docket No. 7679 | 436,196.60 | 436,196.60 | 5,441.44 | 5,441.44 |
| KPMG LLP | March 3, 2008, Docket No. 7658 | 4,638,435.13 | 4,638,435.13 | 59,871.00 | 59,871.00 |

---

[1]   After the Applications were filed, certain of the professionals voluntarily agreed to reduce the amount of fees and/or expenses sought in their respective Applications.

[2]   Notwithstanding the fact that this is the final fee application, Kirkland & Ellis LLP is authorized to supplement its application for certain fees and expenses that were not available for inclusion in its application.

| APPLICANT | DATE AND DOCUMENT NO. OF APPLICATION | FEES REQUESTED[1] | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| PA Consulting Group, Inc. | March 4, 2008, Docket No. 7659 | 11,211,727.50 | 11,211,727.50 | 787,892.78 | 787,892.78 |
| Miller Buckfire & Co., LLC | March 4, 2008, Docket No. 7661 | 17,531,910.00 | 17,531,910.00 | 38,677.71 | 38,677.71 |
| PricewaterhouseCoopers LLP | March 4, 2008, Docket No. 7672 | 4,228,780.90 | 4,228,780.90 | 57,583.89 | 57,583.89 |
| Akin Gump Strauss Hauer & Feld LLP | March 6, 2008, Docket No. 7687 | 8,366,969.55 | 8,366,969.55 | 809,101.49 | 809,101.49 |
| Lazard Frères & Co., LLC | March 6, 2008, Docket No. 7688 | 10,900,000.00 | 10,900,000.00 | 48,270.31 | 48,270.31 |
| FTI Consulting, Inc. | March 5, 2008, Docket No. 7682 | 429,533.25 | 429,533.25 | 5,608.85 | 5,608.85 |
| Morgenstern Jacobs & Blue, LLC | February 28, 2008, Docket No. 7648 | 131,466.50 | 131,466.50 | 10,083.33 | 10,083.33 |
| Fasken, Martineau, DuMolin LLP | March 5, 2008, Docket No. 7681 | 64,806.50 | 64,806.50 | 4,488.41 | 4,488.41 |
| ICF Resources, LLC | March 6, 2008, Docket No. 7683 | 2,266,520.00 | 2,266,520.00 | 59,507.19 | 59,507.19 |
| Fried Frank Harris Shriver & Jacobson LLP | February 29, 2008, Docket No. 7653 | 5,734,628.50 | 5,734,628.50 | 740,863.43 | 740,863.43 |
| Altos Management Partners Inc. | February 29, 2008, Docket No. 7656 | 876,493.75 | 876,493.75 | 17,135.52 | 17,135.52 |
| Perella Weinberg Partners LP | February 29, 2008, Docket No. 7655 | 675,000.00 | 675,000.00 | 11,998.63 | 11,998.63 |
| Togut, Segal & Segal LLP | February 28, 2008, Docket No. 7644 | 499,284.50 | 499,284.50 | 4,244.78 | 4,244.78 |
| MRW & Associates | February 28, 2008, Docket No. 7646 | 328,761.04 | 328,761.04 | 26,829.77 | 26,829.77 |
| Bridge Associates, LLC | February 28, 2008, Docket No. 7645 | 667,841.50 | 667,841.50 | 78,148.42 | 78,148.42 |
| The Garden City Group, Inc. | March 7, 2008, Docket No. 7695 | 90,045.64 | 90,045.64 | 2,009.34 | 2,009.34 |

SCHEDULE A(1)                    DATE: 3/ 27/08   INITIALS                    INITIALS:  /s/BRL  USBJ

K&E 12611147.4

## EXHIBIT A

Case No.: 05-60200 (BRL)
Case Name: Calpine Corporation, et al.

### FINAL FEE PERIOD: DECEMBER 21, 2005 THROUGH JANUARY 31, 2008

| APPLICANT | DATE AND DOCUMENT NO. OF APPLICATION | FEES REQUESTED[1] | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| Kirkland & Ellis LLP[2] | March 6, 2008, Docket No. 7686 | $87,733,072.50 | $87,733,072.50 | $4,912,412.90 | $4,912,412.90 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | February 28, 2008, Docket No. 7639 | 11,570,442.80 | 11,570,442.80 | 665,427.73 | 665,427.73 |
| Covington & Burling LLP | March 4, 2008, Docket No. 7664 | 1,008,713.05 | 1,008,713.05 | 12,250.11 | 12,250.11 |
| Thelen Reid Brown Raysman & Steiner LLP | February 28, 2008, Docket No. 7636 | 12,266,537.50 | 12,266,537.50 | 333,124.78 | 333,124.78 |
| Bracewell & Giuliani LLP | February 27, 2008, Docket No. 7631 | 1,278,624.35 | 1,278,624.35 | 22,775.51 | 22,775.51 |
| Lenczner Slaght Royce Smith Griffin LLP | March 4, 2008, Docket No. 7665 | 2,992,256.63 | 2,992,256.63 | 457,740.10 | 457,740.10 |
| Dickstein Shapiro LLP | March 4, 2008, Docket No. 7660 | 288,358.89 | 288,358.89 | 4,290.90 | 4,290.90 |
| Sutherland Asbill & Brennan LLP | March 4, 2008, Docket No. 7675 | 790,741.90 | 790,741.90 | 3,532.72 | 3,532.72 |
| AP Services, LLC | March 4, 2008, Docket No. 7674 | 52,571,747.10[3] | 52,571,747.10 | 4,022,520.04 | 4,022,520.04 |
| Sirius Solutions, LLLP | March 4, 2008, Docket No. 7673 | 5,658,070.00 | 5,658,070.00 | 78,777.78 | 78,777.78 |
| Cornerstone Management, LLC | March 4, 2008, Docket No. 7667 | 5,834,540.50 | 5,834,540.50 | 405,262.78 | 405,262.78 |
| Deloitte Tax LLP | March 4, 2008, Docket No. 7670 | 14,926,837.65 | 14,926,837.65 | 276,237.90 | 276,237.90 |
| Deloitte Consulting LLP | March 4, 2008, Docket No. 7668 | 2,458,608.50 | 2,458,608.50 | 172,799.97 | 172,799.97 |
| Deloitte Financial Advisory Services LLP | March 4, 2008, Docket No. 7669 | 2,979,921.93 | 2,979,921.93 | 239,683.12 | 239,683.12 |
| Davis Wright Tremaine LLP | March 5, 2008, Docket No. 7679 | 2,739,291.68 | 2,739,291.68 | 59,647.46 | 59,647.46 |
| KPMG LLP | March 3, 2008, Docket No. 7658 | 30,316,909.03 | 30,316,909.03 | 994,349.87 | 994,349.87 |
| PA Consulting Group, Inc. | March 4, 2008, Docket No. 7659 | 49,178,322.29 | 49,178,322.29 | 3,022,718.98 | 3,022,718.98 |

---

[1]  After the Applications were filed, certain of the professionals voluntarily agreed to reduce the amount of fees and/or expenses sought in their respective Applications.

[2]  Notwithstanding the fact that this is the final fee application, Kirkland & Ellis LLP is authorized to supplement its application for certain fees and expenses that were not available for inclusion in their application.

[3]  Includes $145,325.00 in fees withdrawn without prejudice from the 5th, 6th and 7th fee application periods.

| APPLICANT | DATE AND DOCUMENT NO. OF APPLICATION | FEES REQUESTED[1] | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| Miller Buckfire & Co., LLC | March 4, 2008, Docket No. 7661 | 28,718,090.00 | 28,718,090.00 | 629,085.02 | 629,085.02 |
| PricewaterhouseCoopers LLP | March 4, 2008, Docket No. 7672 | 29,458,415.69 | 29,458,415.69 | 724,409.70 | 724,409.70 |
| Akin Gump Strauss Hauer & Feld LLP | March 6, 2008, Docket No. 7687 | 30,088,002.15 | 30,088,002.15 | 1,887,144.41 | 1,887,144.41 |
| Lazard Frères & Co., LLC | March 6, 2008, Docket No. 7688 | 15,560,000.00 | 15,560,000.00 | 256,958.76 | 256,958.76 |
| FTI Consulting, Inc. | March 5, 2008, Docket No. 7682 | 5,790,572.50 | 5,790,572.50 | 89,023.76 | 89,023.76 |
| Morgenstern Jacobs & Blue, LLC | February 28, 2008,Docket No. 7648 | 356,721.50 | 356,721.50 | 17,994.16 | 17,994.16 |
| Fasken, Martineau, DuMolin LLP | March 5, 2008, Docket No. 7681 | 730,648.00 | 730,648.00 | 59,261.16 | 59,261.16 |
| ICF Resources, LLC | March 6, 2008, Docket No. 7683 | 7,834,397.50 | 7,834,397.50 | 154,220.13 | 154,220.13 |
| Fried Frank Harris Shriver & Jacobson LLP | February 29, 2008,Docket No. 7653 | 10,139,742.00 | 10,139,742.00 | 1,050,426.49 | 1,050,426.49 |
| Altos Management Partners Inc. | February 29, 2008, Docket No. 7656 | 2,792,017.50 | 2,792,017.50 | 60,426.85 | 60,426.85 |
| Perella Weinberg Partners LP | February 29, 2008, Docket No. 7655 | 2,670,967.74 | 2,670,967.74 | 28,542.92 | 28,542.92 |
| Togut, Segal & Segal LLP | February 28, 2008, Docket No. 7644 | 499,284.50 | 499,284.50 | 4,244.78 | 4,244.78 |
| MRW & Associates | February 28, 2008, Docket No. 7646 | 328,761.04 | 328,761.04 | 26,829.77 | 26,829.77 |
| Bridge Associates, LLC | February 28, 2008, Docket No. 7645 | 667,841.50 | 667,841.50 | 78,148.42 | 78,148.42 |
| The Garden City Group, Inc. | March 7, 2008, Docket No. 7695 | 90,045.64 | 90,045.64 | 2,009.34 | 2,009.34 |

SCHEDULE A(1)                    DATE: 3/ 27/08                    INITIALS: /s/BRL  USBJ

# EXHIBIT B

Case No.: 05-60200 (BRL)
Case Name: Calpine Corporation, et al.

## SUMMARY FEES HELD BACK

| APPLICANT | FEES HELD BACK |
|---|---|
| Kirkland & Ellis LLP | $1,086,116.00 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | 129,089.30 |
| Covington & Burling LLP | 3,001.55 |
| Thelen Reid Brown Raysman & Steiner LLP | 105,312.55 |
| Bracewell & Giuliani LLP | 13,400.08 |
| Lenczner Slaght Royce Smith Griffin LLP | 49,867.34 |
| Dickstein Shapiro LLP | 7,690.05 |
| Sutherland Asbill & Brennan LLP | 23,911.65 |
| AP Services, LLC | 419,301.78 |
| Sirius Solutions, LLLP | 65,139.75 |
| Cornerstone Management, LLC | 45,798.75 |
| Deloitte Tax LLP | 104,071.06 |
| Deloitte Consulting LLP | 70,070.25 |
| Deloitte Financial Advisory Services LLP | 79,339.68 |
| Davis Wright Tremaine LLP | 36,092.98 |
| KPMG LLP | 489,289.51 |
| PA Consulting Group, Inc. | 672,794.91 |
| Miller Buckfire & Co., LLC | 251,462.50 |
| PricewaterhouseCoopers LLP | 233,641.81 |

| APPLICANT | FEES HELD BACK |
|---|---:|
| Akin Gump Strauss Hauer & Feld LLP | 389,618.90 |
| Lazard Frères & Co., LLC | 67,500.00 |
| FTI Consulting, Inc. | 53,473.95 |
| Morgenstern Jacobs & Blue, LLC | 11,120.70 |
| Fasken, Martineau, DuMolin LLP | 10,339.30 |
| ICF Resources, LLC | 100,544.38 |
| Fried Frank Harris Shriver & Jacobson LLP | 204,082.00 |
| Altos Management Partners Inc. | 133,772.75 |
| Perella Weinberg Partners LP | 67,500.00 |
| Togut, Segal & Segal LLP | 130,005.70 |
| MRW & Associates | 328,761.04 |
| Bridge Associates, LLC | 143,642.30 |
| The Garden City Group, Inc. | 24,883.34 |

SCHEDULE B

## **EXHIBIT C**

IN RE CHRYSLER LLC, CASE NO. 09-50002

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11
                                          :
Chrysler LLC, et al.,                     :   Case No. 09-50002 (AJG)
                                          :
                         Debtors.         :   (Jointly Administered)
                                          :
----------------------------------------------------------------x
```

<u>**ORDER, PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE**
**BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND 2016(b) AND LOCAL**
**BANKRUPTCY RULE 2014-1, AUTHORIZING THE DEBTORS AND DEBTORS**
**IN POSSESSION TO RETAIN AND EMPLOY CAPSTONE ADVISORY GROUP,**
**LLC AS FINANCIAL ADVISOR, *NUNC PRO TUNC* AS OF THE PETITION DATE**</u>

This matter coming before the Court on the Application of Debtors and Debtors in

Possession, Pursuant to Sections 327(a), 328(a) and 364 of the Bankruptcy Code, Bankruptcy

Rules 2014(a) and 2016(b) and Local Bankruptcy Rule 2014-1, for an Order Authorizing Them

to Retain and Employ Capstone Advisory Group, LLC as Financial Advisor, *Nunc Pro Tunc* as

of the Petition Date (Docket No. 174) (the "<u>Application</u>"),[1] filed by the above-captioned debtors

and debtors in possession (collectively, the "<u>Debtors</u>"); the Court having reviewed:

      (a)      the Application;

      (b)      the Declaration of Robert Manzo attached thereto (the "<u>Manzo</u>
             <u>Declaration</u>");

      (c)      the Notice of Filing Schedules 1 and 2 of the Declaration of Robert Manzo
             Included in the Application of Debtors and Debtors in Possession,
             Pursuant to Sections 327(a), 328(a) and 364 of the Bankruptcy Code,
             Bankruptcy Rules 2014(a) and 2016(b) and Local Bankruptcy Rule 2014-
             1, for an Order Authorizing Them to Retain and Employ Capstone
             Advisory Group, LLC as Financial Advisor, *Nunc Pro Tunc* as of the
             Petition Date (Docket No. 345) (the "<u>Schedules Notice</u>");

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

(d)      the Notice of Amendment to Engagement Letter of Capstone Advisory Group, LLC (Docket No. 927) (the "<u>Amendment Notice</u>"); and

(e)      the Notice of Filing of First Supplement to Schedule of Interested Parties that Currently Employ or Have Formerly Employed Capstone Advisory Group, LLC in Matters Unrelated to the Debtors or Their Chapter 11 Cases (Docket No. 1260) (together with the Schedules Notice and the Amendment Notice, the "<u>Notices</u>");

the Court having considered the statements of counsel and the evidence adduced with respect to the Application at a hearing before the Court (the "<u>Hearing</u>"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) notice of the Application and the Hearing was sufficient under the circumstances, (iv) Capstone does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327 of the Bankruptcy Code, (v) the terms and conditions of Capstone's employment, as described in the Application and the Engagement Letter, as amended on May 14, 2009 as set forth in the Amendment Notice (the "<u>Amended Engagement Letter</u>"), are reasonable (as that term is used in section 328(a) of the Bankruptcy Code) and (vi) the Application and all related papers fully comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules; and the Court having determined that the legal and factual bases set forth in the Application, the Manzo Declaration, the Notices and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized to retain Capstone Advisory Group, LLC ("<u>Capstone</u>"), <u>nunc pro tunc</u> as of the Petition Date, as their financial advisor on the terms and conditions set forth in the Amended Engagement Letter and the Application, as modified by this

Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy

Rule 2014.

3.     Capstone shall be compensated for its services and reimbursed for any

related expenses in accordance with applicable provisions of the Bankruptcy Code (including

sections 328, 330 and 331 thereof), the Bankruptcy Rules, the Local Bankruptcy Rules and any

other applicable orders or procedures of this Court, including any order of this Court establishing

procedures for interim monthly compensation and reimbursement of expenses for professionals.

Subject to the foregoing, Capstone shall file applications for interim and final allowance of

compensation and reimbursement of expenses.

4.     The U.S. Trustee retains all rights to object to Capstone's interim and final

fee applications (including expense reimbursement) on all grounds, including, but not limited to,

the reasonableness standard provided for in section 330 of the Bankruptcy Code.

5.     The Official Committee of Unsecured Creditors (the "Committee") retains

all rights to object to Capstone's interim and final fee applications (including expense

reimbursements) for services rendered, other than the services for which the Transaction Fee is

due, on all grounds, including, but not limited to, the reasonableness standard provided for in

section 330 of the Bankruptcy Code.  The Committee retains all rights to review the Transaction

Fee pursuant to the standards provided for in section 328 of the Bankruptcy Code.

6.     The Amended Engagement Letter is hereby further amended to provide

that Capstone will continue to provide professional services to the Debtors' estates after the

consummation of the Fiat Transaction, including, but not limited to, services relating to the

winddown of the Debtors' estates and the development of an orderly liquidation plan or other

alternative liquidation scenario (the "Post-Sale Services").  Capstone shall be compensated for

NYI-4182209v4

the Post-Sale Services on an hourly basis at rates indicated in the Amended Engagement Letter,

plus reimbursement of Capstone's actual, necessary expenses incurred.  Capstone shall maintain

time records for Post-Sale Services in accordance with the U.S. Trustee's guidelines for

compensation and reimbursement of expenses.  Capstone has agreed not to be reimbursed on a

monthly, interim or final basis in connection with the Post-Sale Services until after

September 30, 2009; *provided that* the Transaction Fee shall paid at the closing of the underlying

sale transaction subject to subsequent review consistent with paragraphs 3 through 5 above.

   7. The unapplied portion of the Retainer shall constitute a general security

retainer for postpetition services and expenses, and shall be held by Capstone subject to further

order of the Court.  Upon an Order of this Court approving an interim and final fee application,

Capstone shall apply the Retainer against its then-unpaid fees and expenses in respect of

Capstone's fee applications filed and approved in accordance with the applicable provisions of

the Bankruptcy Code.  Further, prior to seeking reimbursement for any outstanding fees and

expenses against any carve-outs established in any financing orders, Capstone shall apply the

remaining portion of its Retainer against those outstanding fees.  The Retainer shall not be

replenished as it is depleted during the course of these bankruptcy cases.

   8. The Debtors shall indemnify Capstone, and hold Capstone harmless

against any and all claims for losses, damages or liabilities (including without limitation

reasonable attorneys fees and expenses in connection with Capstone's engagement in the

Debtors' chapter 11 cases and the cost of Capstone's professional time, reimbursed at Capstone's

standard hourly rates) (collectively, the "Liabilities") to which Capstone may become subject

arising in any manner out of or in connection with the rendering of services by Capstone under

the Amended Engagement Letter in a lawful manner, unless it is finally judicially determined

     -4-

that such losses, claims, damages or liabilities resulted from Capstone's gross negligence, willful

misconduct or breach of fiduciary duty.  Subject to the foregoing and notwithstanding anything

in the Amended Engagement Letter to the contrary, all requests of Capstone for payment of

indemnity pursuant to the Amended Engagement Letter shall be made by means of an

application (interim or final as the case may be) and shall be subject to review by the Court to

ensure that payment of such indemnity conforms to the terms of the Amended Engagement

Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of

which indemnity is sought, provided, further, that in no event shall Capstone be indemnified if it

is finally judicially determined that the Liabilities resulted from Capstone's gross negligence,

willful misconduct or breach of fiduciary duty.

9.      In the event that Capstone seeks reimbursement for attorneys' fees from

the Debtors pursuant to the Amended Engagement Letter, the invoices and supporting time

records from such attorneys shall be included in Capstone's own applications (both interim and

final) and such invoices and time records shall be subject to the U.S. Trustee's guidelines for

compensation and reimbursement of expenses and the approval of the Bankruptcy Court under

the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such

attorney has been retained under section 327 of the Bankruptcy Code and without regard to

whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10.     Except as otherwise provided herein, the terms and conditions of

Capstone's retention, including, without limitation, the fee and expense structure and the

Indemnification Provisions, are approved pursuant to section 328(a) of the Bankruptcy Code.

11.     To the extent that this Order is inconsistent with the Amended

Engagement Letter, the terms of this Order shall govern.

      12.     The Court retains jurisdiction with respect to all matters arising from or

related to the implementation, interpretation and enforcement of this Order.

Dated: May 20, 2009
      New York, New York

                              **s/Arthur J. Gonzalez**
                              UNITED STATES BANKRUPTCY JUDGE

CAPSTONE ADVISORY GROUP, LLC
1020 19th Street, NW
Suite 350
Washington, DC 20036
Telephone: (202) 507-7101
Facsimile: (202) 507-7118
Peter Chadwick

Financial Advisor for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                            :
In re                                       :   Chapter 11
                                            :
Old Carco LLC                               :   Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), et al.,               :
                                            :   (Jointly Administered)
                         Debtors.           :
                                            :
------------------------------------------------------------x
```

**THIRD INTERIM AND FINAL APPLICATION OF CAPSTONE ADVISORY GROUP, LLC,**
**AS FINANCIAL ADVISORS FOR DEBTORS AND DEBTORS IN POSSESSION, FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FOR THE PERIOD APRIL 30, 2009 THROUGH APRIL 30, 2010**

Name of Applicant:                          Capstone Advisory Group, LLC

Authorized to Provide
Professional Services to:                   Debtors and Debtors in Possession

Date of Retention:                          April 30, 2009

Period for Which Compensation
and Reimbursement is Sought:                April 30, 2009 through April 30, 2010

Amount of Compensation Requested:           $12,251,119.00

Amount of Expense Reimbursement
Requested:                                  $1,011,208.31

Total Compensation and Expenses
Previously Requested and Awarded:          $11,801,493.26

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|-------|-------|----------------|----------------|--------------------|---------------|--------------------|
| 6/29/10 | 6/29/10 | 4/30/09 to 4/30/10 | $12,251,119.00 | $1,007,611.46 | $12,251,119.00 | $1,007,611.46 |

**Old Carco, LLC, (f/k/a Chrysler, LLC) et al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional**
**For the Periods 1/1/10 – 4/30/10 and 4/30/09 - 4/30/10**

| Professional | Position | Billing Rate | Third Interim Period 1/1/10 - 4/30/10 | | Final Fee Period 4/30/09 - 4/30/10 | |
|---|---|---|---|---|---|---|
| | | | Hours | Fees | Hours | Fees |
| **DIP Collateral** | | | | | | |
| R. Manzo | Executive Director | $795 | - | $ - | 1,487.3 | $ 1,182,403.50 |
| R. Manzo | Executive Director | $850 | 286.9 | $ 243,865.00 | 286.9 | $ 243,865.00 |
| E. Ordway | Executive Director | $760 | 3.2 | $ 2,432.00 | 3.2 | $ 2,432.00 |
| P. Chadwick | Executive Director | $625 | - | $ - | 1,425.5 | $ 890,937.50 |
| P. Chadwick | Executive Director | $670 | 717.7 | $ 480,859.00 | 717.7 | $ 480,859.00 |
| D. Quackenbush | Executive Director | $570 | - | $ - | 489.2 | $ 278,815.50 |
| D. Quackenbush | Executive Director | $600 | 463.8 | $ 278,280.00 | 463.8 | $ 278,280.00 |
| J. Rooney | Managing Director | $510 | - | $ - | 602.2 | $ 307,122.00 |
| J. Rooney | Managing Director | $540 | 102.0 | $ 55,080.00 | 102.0 | $ 55,080.00 |
| K. Schweninger | Contractor | $500 | 280.9 | $ 140,450.00 | 466.6 | $ 233,300.00 |
| M. Markevics | Contractor | $500 | 183.5 | $ 91,750.00 | 183.5 | $ 91,750.00 |
| J. Jacob | Managing Director | $450 | - | $ - | 1,715.3 | $ 771,862.50 |
| J. Jacob | Managing Director | $495 | 737.3 | $ 364,963.50 | 737.3 | $ 364,963.50 |
| J. Kiley | Director | $495 | 355.3 | $ 175,873.50 | 355.3 | $ 175,873.50 |
| B. Aronson | Director | $440 | - | $ - | 1,250.1 | $ 550,044.00 |
| B. Aronson | Director | $465 | 650.8 | $ 302,622.00 | 650.8 | $ 302,622.00 |
| J. Ruth | Contractor | $450 | 399.3 | $ 179,685.00 | 1,933.0 | $ 869,850.00 |
| T. Sell | Director | $405 | - | $ - | 443.0 | $ 179,415.00 |
| S. Tajuddin | Director | $365 | - | $ - | 368.7 | $ 134,575.50 |
| D. Tsui | Director | $335 | - | $ - | 1,680.6 | $ 563,001.00 |
| D. Tsui | Director | $360 | 848.8 | $ 305,568.00 | 848.8 | $ 305,568.00 |
| R. Wintersteen | Consultant | $320 | - | $ - | 47.8 | $ 15,296.00 |
| A. Chonich | Consultant | $315 | - | $ - | 1,129.8 | $ 355,887.00 |
| A. Chonich | Consultant | $335 | 260.5 | $ 87,267.50 | 260.5 | $ 87,267.50 |
| C. Hoang | Consultant | $335 | 374.0 | $ 125,290.00 | 374.0 | $ 125,290.00 |
| S. Cheffetz | Director | $335 | 45.7 | $ 15,309.50 | 45.7 | $ 15,309.50 |
| P. Barnes | Contractor | $295 | 177.3 | $ 52,303.50 | 656.9 | $ 193,785.50 |
| K. Pike | Associate Director | $285 | - | $ - | 446.2 | $ 127,167.00 |
| K. Pike | Associate Director | $300 | 762.9 | $ 228,870.00 | 762.9 | $ 228,870.00 |
| M. O'Neal | Consultant | $250 | - | $ - | 1,549.1 | $ 387,267.50 |
| M. O'Neal | Consultant | $270 | 630.2 | $ 170,154.00 | 630.2 | $ 170,154.00 |
| O. Freidzon | Managing Director | $250 | - | $ - | 20.5 | $ 5,125.00 |
| M. DeSalvio | Consultant | $170 | 2.0 | $ 340.00 | 42.3 | $ 7,191.00 |
| R. Boyce | Consultant | $125 | - | $ - | 434.8 | $ 54,343.75 |
| L. Hirschman | Paraprofessional | $110 | - | $ - | 89.8 | $ 9,878.00 |
| L. Hirschman | Paraprofessional | $120 | 47.5 | $ 5,700.00 | 47.5 | $ 5,700.00 |
| N. Backer | Paraprofessional | $110 | - | $ - | 30.4 | $ 3,344.00 |
| N. Backer | Paraprofessional | $120 | 2.8 | $ 336.00 | 2.8 | $ 336.00 |
| P. Foose | Paraprofessional | $120 | 1.5 | $ 180.00 | 1.5 | $ 180.00 |
| **Subtotal** | | | **7,333.9** | **$3,307,178.50** | **22,783.5** | **$10,055,011.25** |
| | | | | | | |
| **FLL Collateral** | | | | | | |
| R. Manzo | Executive Director | $795 | - | $ - | 71.1 | $ 56,524.50 |
| R. Manzo | Executive Director | $850 | 10.9 | $ 9,265.00 | 10.9 | $ 9,265.00 |
| P. Chadwick | Executive Director | $625 | - | $ - | 179.2 | $ 112,000.00 |
| P. Chadwick | Executive Director | $670 | 91.7 | $ 61,439.00 | 91.7 | $ 61,439.00 |
| D. Quackenbush | Executive Director | $600 | 13.3 | $ 7,980.00 | 13.3 | $ 7,980.00 |
| J. Rooney | Managing Director | $510 | - | $ - | 376.4 | $ 191,964.00 |
| J. Rooney | Managing Director | $540 | 401.6 | $ 216,864.00 | 401.6 | $ 216,864.00 |
| J. Jacob | Managing Director | $450 | - | $ - | 96.5 | $ 43,425.00 |
| J. Jacob | Managing Director | $495 | 125.8 | $ 62,271.00 | 125.8 | $ 62,271.00 |
| J. Ruth | Consultant | $450 | 55.7 | $ 25,065.00 | 70.4 | $ 31,680.00 |
| B. Aronson | Director | $440 | - | $ - | 694.4 | $ 305,536.00 |
| B. Aronson | Director | $465 | 330.2 | $ 153,543.00 | 330.2 | $ 153,543.00 |
| T. Sell | Director | $405 | - | $ - | 1.8 | $ 729.00 |
| S. Mclean | Contractor | $350 | - | $ - | 223.0 | $ 78,050.00 |
| D. Tsui | Director | $335 | - | $ - | 280.0 | $ 93,800.00 |
| D. Tsui | Director | $360 | 65.6 | $ 23,616.00 | 65.6 | $ 23,616.00 |
| A. Chonich | Consultant | $315 | - | $ - | 840.8 | $ 264,852.00 |
| A. Chonich | Consultant | $335 | 675.7 | $ 226,359.50 | 675.7 | $ 226,359.50 |
| C. Hoang | Consultant | $335 | 46.4 | $ 15,544.00 | 46.4 | $ 15,544.00 |
| P. Barnes | Contractor | $295 | 47.3 | $ 13,953.50 | 131.2 | $ 38,704.00 |
| M. O'Neal | Consultant | $250 | - | $ - | 538.8 | $ 134,700.00 |
| M. O'Neal | Consultant | $270 | 265.9 | $ 71,793.00 | 265.9 | $ 71,793.00 |
| R. Boyce | Consultant | $125 | - | $ - | 43.8 | $ 5,468.75 |
| **Subtotal** | | | **2,130.1** | **$887,693.00** | **5,574.5** | **$2,206,107.75** |
| | | | | | | |
| **Total for the Periods** | | | **9,464.0** | **$4,194,871.50** | **28,358.0** | **$12,261,119.00** |

CAPSTONE ADVISORY GROUP, LLC
1020 19th Street, NW
Suite 350
Washington, DC 20036
Telephone: (202) 507-7101
Facsimile: (202) 507-7118
Peter Chadwick

Financial Advisor for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11
                                          :
Old Carco LLC                             :   Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), et al.,             :
                                          :   (Jointly Administered)
                          Debtors.        :
                                          :
------------------------------------------------------------x
```

**THIRD INTERIM AND FINAL APPLICATION OF CAPSTONE ADVISORY GROUP, LLC**
**AS FINANCIAL ADVISORS FOR DEBTORS AND DEBTORS IN POSSESSION, FOR**
**ALLOWANCE AND APPROVAL OF COMPENSATION FOR SERVICES RENDERED**
**AND EXPENSES INCURRED FOR THE PERIOD FROM**
**APRIL 30, 2009 THROUGH AND INCLUDING APRIL 30, 2010**

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Capstone Advisory Group, LLC ("Capstone"), financial advisor to the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), submits this application (the

"Application") pursuant to (i) sections 328(a), 330(a) and 331 of title 11 of the United States

Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) Rule 2016-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court of the Southern District of New York (the "Local Rules"), (iv) the Order

1

Pursuant to sections 105(a) and 331 of the Bankruptcy Code establishing procedures for Interim Monthly Compensation for Professionals, entered May 20, 2009 [Docket No. 1334] (the "Interim Compensation Order"), (v) the Administrative Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated November 25, 2009 (the "Local Guidelines"), (vi) the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §§ 330, effective January 30, 1996 (together with the Interim Compensation Order and the Local Guidelines, the "Guidelines"), and (vii) Section II.A.1.d.ii of the Plan (as defined below) and Paragraphs K and 44 of the Order Confirming the Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified, which was entered by the Court on April 23, 2010 (Docket No. 6875) (the "Confirmation Order").  In support of this Application, Capstone represents as follows:

### JURISDICTION

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, Section VIII.A of the Plan and Paragraphs FF and 75 of the Confirmation Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.      On April 30, 2009 (the "Petition Date"), Old Carco LLC (f/k/a Chrysler LLC) ("Old Carco") and 24 of its affiliated Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On May 19, 2009, Debtor Alpha Holding LP ("Alpha") commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.  By orders of the Court (Docket Nos. 97 and

2

2188), the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered.

3.     The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On May 5, 2009, the Office of the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors (the "Committee"), pursuant to section 1102 of the Bankruptcy Code.

5.     As of the Petition Date, the Debtors and their nondebtor direct and indirect subsidiaries (collectively, the "Old Carco Companies") comprised one of the world's largest manufacturers and distributors of automobiles and other vehicles, together with related parts and accessories.  On the Petition Date, the Old Carco Companies employed approximately 55,000 hourly and salaried employees worldwide, 70% of whom were based in the United States.

6.     For the 12 months ended December 31, 2008, the Old Carco Companies recorded revenue of more than $48.4 billion and had assets of approximately $39.3 billion and liabilities totaling $55.2 billion.

7.     In connection with the commencement of these cases, Old Carco and its Debtor subsidiaries, Fiat S.p.A. ("Fiat") and New Chrysler (as defined below) entered into a Master Transaction Agreement dated as of April 30, 2009 (as amended and collectively with other ancillary and supporting documents, the "Purchase Agreement").  The Purchase Agreement provided, among other things, that:  (a) Old Carco would transfer the majority of its operating assets to New CarCo Acquisition LLC n/k/a Chrysler Group LLC ("New Chrysler"), a newly established Delaware limited liability company formed by Fiat; and (b) in exchange for those

3

assets, New Chrysler would assume certain of the Debtors' liabilities and pay to Old Carco $2 billion in cash (collectively with the other transactions contemplated by the Purchase Agreement, the "Fiat Transaction").

8.      On May 31, 2009, this Court issued:  (a) an Opinion Granting the Debtors' Motion Seeking Authority to Sell, Pursuant to § 363, Substantially All of the Debtors' Assets (Docket No. 3073) (the "Sale Opinion"); and (b) an Opinion and Order Regarding Emergency Economic Stabilization Act of 2008 and Troubled Asset Relief Program [Docket Nos. 3074 and 3229] (together with the Sale Opinion, the "Opinions").  On June 1, 2009 and consistent with the Sale Opinion, this Court entered an Order authorizing the Fiat Transaction [Docket No. 3232] (the "Sale Order").  Certain parties, including three Indiana pension funds that purchased a small amount of the Debtors' prepetition first lien debt (the "Objecting Indiana Lenders") immediately appealed the Sale Order, which was certified for direct appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit") at the request of the Debtors.  After a hearing on June 5, 2009, the Second Circuit affirmed the Opinions and the Sale Order that same day.  The Objecting Indiana Lenders subsequently moved the United States Supreme Court to stay the Sale Order.  On June 9, 2009, the U.S. Supreme Court issued an order denying the application for a stay of the Fiat Transaction and permitted the sale to close.  Consistent with the Sale Order, the Fiat Transaction was consummated on June 10, 2009.

9.      On April 23, 2010, the Court entered the Confirmation Order.  Attached to the Confirmation Order as Annex I is the confirmed Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified, which was further modified by an Order of

4

the Court dated April 28, 2010 [Docket No. 6923] (collectively with all exhibits thereto, the "Plan").[1]

10.     The Plan became effective in accordance with its terms on April 30, 2010 (the "Effective Date").  See Notice of (A) Entry of Order Confirming Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified and (B) Occurrence of Effective Date [Docket No. 6980].  On the Effective Date, (a) all of the Debtors, other than Alpha, were dissolved, and (b) Old Carco Liquidation Trust (the "Liquidation Trust") was established pursuant to and in accordance with the Plan for the purpose of, among other things, liquidating the Debtors' assets that were transferred to the Liquidation Trust, resolving all Disputed Claims, pursuing any Recovery Actions (including the Daimler Litigation), making all distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan.

## CAPSTONE'S RETENTION

11.     On May 20, 2009, this Court entered an order [Docket No. 1301] (the "Capstone Retention Order") with the support of all interested parties approving the Debtors' retention of Capstone as financial advisor for the Debtors *nunc pro tunc* to April 30, 2009, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 (a) and 2016 (b) and Local Rule 2014-1.

12.     As described in the application to approve Capstone's retention as financial advisor to the Debtors [Docket No. 174], Capstone's fees in the case are based on its ordinary and customary hourly rates and are billed in accordance with Capstone's existing billing rates and procedures in effect from April 30, 2009 until April 30, 2010 (the "Compensation

---

[1]    Capitalized terms not otherwise defined herein have the meaning given to them in the Plan.

Period"). The rates Capstone charges for services rendered by its professionals and support staff in these chapter 11 cases are the same rates Capstone charges for professional and support staff services rendered in comparable non-bankruptcy matters.

## CAPSTONE'S FIRST INTERIM FEE APPLICATION AND APPLICATION FOR PAYMENT OF HOLDBACK FEES

13.    On September 29, 2009, Capstone filed its First Interim Application of Capstone Advisory Group, LLC Financial Advisors for the Debtors and Debtors in Possession, for Allowance and Approval of Compensation for Services Rendered and Expenses Incurred for the Period from April 30, 2009 through August 31, 2009 [Docket No. 5694] (the "First Interim Fee Application"). On October 26, 2009, the Court entered an Order approving the First Interim Fee Application [Docket No. 5852] (the "First Interim Fee Order") awarding, on an interim basis, compensation for professional services rendered in an amount of $4,576,604.50 and reimbursement of actual and necessary expenses in the amount of $ 390,312.03, incurred during the period from April 30, 2009 through August 30, 2009.[2] Pursuant to the First Interim Fee Order, the awarded fees were subject to a 10% holdback pending further Order of this Court.

14.    On November 30, 2009, after substantial progress was made in these cases and the Winddown Orders[3] had been entered, Capstone, Jones Day, and Togut, Segal & Segal, LLP ("Togut") filed a Joint Application for Payment of Fee Holdbacks for the Period April 30, 2009 through August 31, 2009 [Docket No. 6033] (the "Holdback Application"). By

---

[2]    The allowed interim amount reflects a voluntary reduction of $10,000.00 in fees and $2,489.89 in expenses from the amounts originally sought by Capstone in the First Interim Fee Application.

[3]    The "Winddown Orders" are: (a) the Agreed Order, Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 9014 and 9019 and Local Bankruptcy Rule 4001-2 Approving (A) Winddown Funding for the Debtors' Estates and (B) Related Matters [Docket No. 5982] (the "DIP Lender Winddown Order"); and (b) the Agreed Order, Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001 and Local Bankruptcy Rule 4001-2, (A) Authorizing Debtors to Use Cash Collateral of the Prepetition Secured Lenders in Support of the Administration and Disposition of Their Collateral and (B) Granting Related Relief [Docket No. 5981] (the "First Lien Winddown Order").

6

an Order dated December 18, 2009 [Docket No. 6111] (the "Holdback Order"), the Holdback

Application was granted, and the Debtors were authorized to pay Capstone the remaining

10% holdback for approved fees in the amount of $457,660.45.

### CAPSTONE'S SECOND INTERIM FEE APPLICATION

14.    On January 28, 2010, Capstone filed its Second Interim Application of

Capstone Advisory Group, LLC Financial Advisors for the Debtors and Debtors in Possession,

for Allowance and Approval of Compensation for Services Rendered and Expenses Incurred for

the Period from September 1, 2009 through December 31, 2009 [Docket No. 6295] (the "Second

Interim Fee Application").   On February 25, 2010, the Court entered an Order approving the

Second Interim Fee Application [Docket No. 6477] (the "Second Interim Fee Order") awarding,

on an interim basis, compensation for professional services rendered in an amount of

$3,479,643.00 and reimbursement of actual and necessary expenses in the amount of

$285,056.22, incurred during the period from September 1, 2009 through December 31, 2009.[4]

### CAPSTONE'S TRANSACTION FEE

15.    Pursuant to the Capstone Retention Order, Capstone would fully earn a fee

associated with the consummation of a transaction (the "Transaction Fee"), whether or not in a

bankruptcy. In particular, if the Debtors were successful in effectuating a restructuring or sale of

a majority of its assets, Capstone would fully earn and be paid a Transaction Fee of $17 million.

16.    In connection with its engagement including its work associated with the

Fiat Transaction, Capstone:  (a) acted as sole financial advisor to the Debtors' management in the

Debtors' prepetition and postpetition restructuring efforts with various parties including the

United States Department of the Treasury (the "U.S. Treasury"), Export Development Canada

---

[4]    The allowed interim amount reflects a voluntary reduction of $1,106.93 in expenses from the amounts
originally sought by Capstone in the Second Interim Fee Application.

7

("EDC"), the United Auto Workers union (the "UAW"), the First Lien Agent and the First Lien Lenders,[5] and Fiat; (b) analyzed the Debtors' liquidity and projected cash flows; (c) acquainted itself with the Debtors' businesses, operations, properties and finances; (d) assisted the Debtors in obtaining a $4 billion emergency bridge financing under TARP; (e) assisted the Debtors in their efforts to negotiate, document and pursue implementation of the Fiat Transaction; (f) assisted the Debtors in their efforts to negotiate, document and pursue implementation of the U.S. Treasury's Supplier Assistance Program; (g) assisted the Debtors in their efforts to negotiate, document and pursue implementation of the U.S. Treasury's Customer Warranty Program; (h) assisted the Debtors in their preparation of their business plans, viability plans and presentations to the U.S. Treasury; and (i) assisted the Debtors in their preparations for the commencement of these chapter 11 cases.

17.    Capstone expended significant time and resources in assisting the Debtors in negotiating the Fiat Transaction, pursuant to §363 of the Bankruptcy Code, and the related transition services agreement between Old Carco and New Chrysler (the "TSA").

18.    Capstone also assisted the Debtors in negotiating the various financing arrangements, including the debtor-in-possession financing, the § 363 buyer's financing and the Debtors' post-Fiat Transaction financing.

19.    In connection with its work related to the Fiat Transaction, Capstone performed analyses of the sold and retained assets, the assumed and retained liabilities and other analyses required to support of the Fiat Transaction.    Additionally, Capstone prepared a liquidation analysis to support the sufficiency of the consideration received by the Debtors. Capstone also provided expert testimony in support of the Fiat Transaction.

---

[5]    The "First Lien Lenders" are the lenders party to the Amended and Restated First Lien Credit Agreement, dated as of November 29, 2007 (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents).

20.    With the closing of the Fiat Transaction on June 10, 2009, Capstone fully earned and was paid the Transaction Fee as authorized in the Capstone Retention Order.

**Sources of Funding for Services Rendered and Expenses Incurred by Capstone**

*Fees and Expenses Paid from the First Lien Collateral*

21.    In accordance with the Plan and the First Lien Winddown Order, of the total amount requested herein, the portion of the compensation for professional services rendered and the reimbursement of related expenses (the "First Lien Lender Fees" and the "First Lien Lender Expenses," respectively, and collectively, the "First Lien Lender Amount") that are incurred after September 1, 2009 in support of the administration and disposition of the property in the Debtors' Estates for which the First Lien Lenders have a first priority lien (the "First Lien Collateral"), is to be funded from the First Lien Collateral.  Specifically, the First Lien Lender Amount is payable out of the First Lien Reserve established by the First Lien Winddown Order, except that, pursuant to the First Lien Winddown Order, only 80% of the costs for the liquidation of the vehicles owned by the Debtors (the "Company Cars") after September 1, 2009 are to be paid by the First Lien Lenders.  See Plan, Section II.B.2.d; First Lien Winddown Order, ¶ 15(d). Capstone has separately accounted for all time and expenses related to the First Lien Lender Amount, as shown in the description of Capstone's services below.

*Fees and Expenses Paid from the DIP Collateral*

22.    In accordance with the Plan and the DIP Lender Winddown Order, the portion of the fees and expenses that does not constitute the First Lien Lender Amount consists of fees for professional services rendered and reimbursement of expenses incurred (the "DIP

9

Lender Fees" and the "DIP Lender Expenses," respectively, and collectively, the "DIP Lender Amount") that are payable from collateral of the DIP Lenders[6] (the "DIP Collateral").

## INTERIM COMPENSATION ORDER

23.     On May 20, 2009, this Court signed the Interim Compensation Order, pursuant to which, on or before twenty days following the month for which compensation is sought, a retained professional seeking compensation pursuant to this order shall file with the court and serve a monthly statement (a "Monthly Statement") on certain notice parties.  Further, approximately every 120 days (but not less frequently than every 150 days), each retained professional shall serve and file with the Court, pursuant to sections 330 and 331 of the Bankruptcy Code, an application for interim or final (as the case may be) Court approval and allowance of the compensation and reimbursement of expenses.

## RELIEF REQUESTED

24.     Capstone seeks relief to receive payment of:  (a) on an interim and final basis, compensation for professional services rendered to the Debtors during the period from January 1, 2010 through April 30, 2010 (the "Third Interim Compensation Period") in the aggregate amount of $4,194,871.50 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Third Interim Compensation Period in the aggregate amount of $332,243.24 as set forth in Exhibit B; and (b) on a final basis, compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $12,251,119.00 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Compensation Period in the aggregate amount of $1,007,611.46 as set forth in Exhibit B.  During the Compensation Period, Capstone rendered professional services

---

[6]     The "DIP Lenders" are, collectively, the U.S. Treasury and EDC, as lenders under that certain Second Lien Secured Priming Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2009, as amended, and related documents (the "DIP Facility").

10

aggregating a total of 28,358.0 hours as the financial advisor to the Debtors. With respect to these amounts, as of the date of the Application, Capstone has received the following payments:

| Total Requested | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed (Docket Number) | For the Period | Fees (100%) | Expenses (100%) | Fees Paid to Date | Expenses Paid to Date | Total Unpaid Fees and Expenses |
| September 29, 2009 (5694) | 4/30/09 - 8/31/09 | $4,586,604.50 | $392,801.92 | $4,118,944.05 | $390,312.00 | $0.00 |
| November 30, 2009 (6033) | HoldBack Fees | $0.00 | $0.00 | $457,660.45 | $0.00 | $0.00 |
| January 28, 2010 (6295) | 9/1/09 - 12/31/09 | $3,479,643.00 | $286,163.15 | $3,479,643.00 | $285,056.22 | $0.00 |
| February 22, 2010 (6452) | 1/1/10 - 1/31/10 | $1,094,983.50 | $103,237.67 | $875,986.80 | $103,237.67 | $218,996.70 |
| March 30, 2010 (6702) | 2/1/10 - 2/28/10 | $1,030,163.50 | $77,346.11 | $824,130.80 | $77,346.11 | $206,032.70 |
| April 20, 2010 (6855) | 3/1/10 - 3/31/10 | $1,122,194.50 | $86,196.28 | $897,755.60 | $86,196.28 | $224,438.90 |
| May 20, 2010 (7070) | 4/1/10 - 4/30/10 | $947,530.00 | $65,463.18 | $758,024.00 | $65,463.18 | $189,506.00 |
| Totals for Period | | $12,261,119.00 | $1,011,208.31 | $11,412,144.70 | $1,007,611.46 | $838,974.30 |

## SUMMARY OF SERVICES RENDERED

25.     Capstone is a firm of financial advisors specializing in insolvency, restructuring, forensic accounting and related matters. Since being retained by the Debtors, Capstone has rendered professional services to the Debtors as requested and as necessary and appropriate in furtherance of the interests of Debtors; including the highly contested Fiat Transaction and the subsequent liquidation of the Debtors' Estates. Capstone respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and have directly benefited the Debtors.

26.     Capstone submits that the interim and final fees applied for herein for professional services rendered in performing restructuring and advisory services for the Debtors are fair and reasonable in view of the time spent, the extent of work performed, and the complexity of the bankruptcy proceedings and the liquidation of the Debtors' remaining assets after the consummation of the Fiat Transaction.

27.     Capstone expended an aggregate of 28,358.0 hours (please see Exhibit A for detailed breakout by Professional by Task Code separated by First Lien Collateral and DIP Collateral in accordance with the Plan and the First Lien Winddown Order), substantially all of which was expended by the professional staff of Capstone. The work involved, and thus the time expended,

11

was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors has been utilized where practical and prudent.

28.    Capstone has been engaged in all aspects of the Debtors' management of these cases.  As further discussed below, Capstone has (i) lead the marketing efforts of the 21 properties retained by the Debtors after the closing of the Fiat Transaction, (ii) managed the sale of the Company Cars owned by the Debtors, (iii) managed the recovery efforts related to recovery of other assets of the Debtors, including derivative contracts, tax receivables and other assets, (iv) negotiated the Plan, including the establishment of the Environmental Reserve Trust pursuant to the Plan, and (v) managed the secured, administrative and other priority claims' reconciliation process.

29.    The Debtors retained 21 properties after the Fiat Transaction.  These properties included 12 properties that were First Lien Collateral, and 9 properties that were subject to liens of the DIP Lenders.  Capstone started the marketing of these properties immediately after the closing of the Fiat Transaction.  To date, 13 of these properties were sold and purchase agreements to sell 4 additional properties are being finalized.  The gross sale proceeds from these transactions were $89.9 million for the properties constituting First Lien Collateral and $4.6 million for properties constituting DIP Collateral.  Many of these properties were marketed solely by Capstone resulting in gross proceeds in the amount of $65.5 million that were not subject to brokers' commissions, saving the Debtors' significant costs. Capstone was also able to negotiate the acquisition of the intellectual property for the Kenosha engine plant during the sale of the Sterling Heights Assembly Plant thereby making the plant more marketable as an operating business.

30.    During the Compensation Period] Capstone has recovered $116,762,315 from the sale of Company Cars and $10,843,606 through ongoing lease management. Capstone worked with New Chrysler to set up a process to efficiently auction off all remaining Company Cars. Capstone negotiated the sale of the majority of the non-revenue Company Cars back to New Chrysler at a rate competitive with current auction figures.

31.    To date Capstone has negotiated settlement on a rhodium [hedge] contract, recovering more than $500,000 for the Estates, while retaining rights to pursue additional recoveries. In total, the Estates recovered $21.1 million from settled derivative/commodity contracts.

32.    Capstone has identified early in the cure process that the Magna lease and New Venture gear facility had significant value (due to the lease) to the Estates and DIP Lenders. Capstone was able to negotiate and obtain $1.4 million in a "cure" payment, all past due amounts that Magna owed for its lease of the facility. In addition, Capstone has collected, on behalf of the DIP Lenders, another $3.4 million in monthly lease revenues.

33.    Capstone successfully negotiated the unwinding of the Debtors' workers' compensation insurance agreements resulting in recovery of $7.3 million of DIP Collateral, with potential for additional recoveries.

34.    Capstone identified and collected $22 million of security deposits and insurance proceeds, including $1.7 million in a return of deposit from utilities companies.

35.    Capstone and counsel have negotiated with New Chrysler on a split of assets securing non-qualified plans. The proposed allocation of the rabbi trust funds, reflective of the obligations assumed by New Chrysler, will result in approximately $8 million of additional recoveries to the Debtors.

36.    In assisting the Debtors in negotiating the Plan, Capstone successfully negotiated the funding of certain secured and tax claims including approximately $63 million to satisfy certain sales and use taxes, Michigan business taxes, pre-2009 property taxes and other taxes.    Additionally, Capstone negotiated the funding of $21 million to satisfy certain pre-petition taxes entitled to priority status.    As of May 20, 2010, consistent with the authority granted in the Tax Escrow Order and the Tax Procedures Order, Capstone has settled claims with estimated tax liabilities of approximately $62.0 million for $29.3 million, saving the Estates and its creditors over $32 million.

37.    Capstone has initiated and led a workgroup that includes New Chrysler Tax that is in the process of documenting up to $170 million of potential tax refunds from the various federal and state taxing authorities. This documentation will assist the Liquidation Trustee in pursuing the recovery of these assets for the account of the First Lien Lenders.

38.    More than 28,000 claims were filed against the Debtors.    Capstone's efforts in connection herewith were focused principally upon the approximately 3,500 claims, valued at $236.2 billion, filed as secured, administrative or priority claims.    As of the Effective Date, Capstone reconciled and the Debtors successfully objected to more than 1,300 of such claims, valued at $10.6 billion, as well as more than 1,000 unsecured duplicate or amended claims.    In addition, Capstone's reconciliation efforts have identified over 500 claims, valued at $186.3 billion, that have been objected to after the Effective Date.

39.    Capstone's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost.    In addition, Capstone's per diem rates for professionals of comparable experience are 10% to 20%

14

lower than its competitors, the "Big-Four" accounting firms and certain other nationally-recognized specialty firms.

40.    Because Capstone's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum.

41.    Robert Manzo is an Executive Director of the firm and was responsible for directing the activities of the Capstone team, calling upon his more than 25 years of experience in restructuring and insolvency matters.

42.    Capstone believes that there has been no duplication of services between Capstone and any other professionals or consultants to the Debtors.

43.    Capstone's travel time policy is for professional personnel to travel outside of business hours when possible.  Such time is not charged to a client unless productive work is performed during the travel period.  In this engagement, non-productive travel time is not being charged to the Debtors.

44.    Capstone's time records for the Compensation Period were previously submitted in the Monthly Statements (Docket numbers: 4232, 4909, 5251, 5586, 5793, 6010, 6118, 6252, 6452, 6702, 6855 and 7070) for the Compensation Period.

45.    No agreement or understanding exists between Capstone and any other person for the sharing of compensation received or to be received for services rendered in connection with the Debtors' chapter 11 cases.

46.    Capstone also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  Capstone's meal expense policy is for professional personnel to expense meals when traveling out of town

overnight.   All meals expensed were incurred by Capstone professionals when working on specific tasks for the Debtors while working at the Debtors' locations or while traveling at the Debtors' request.

47.    Capstone respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and have contributed to the effective administration of the case.

48.    The general summary of the services rendered by Capstone during the Compensation Period based on tasks and number of hours is set forth below.

### Asset Acquisition/Disposition – Task Code 01

49.    This task code is divided in two subcategories ((i) 12 properties constituting First Lien Collateral including but not limited to Twinsburg stamping plant and Detroit axle property, and (ii) 9 properties constituting DIP Collateral, including but not limited to Huntsville and Toledo Jeep Parkway properties) and includes Capstone's discussion with the Debtors, the Debtors' counsel, the First Lien Agent and its professionals, and the Committee's professionals regarding the disposition of assets and financial matters associated with the Debtors' proposed sale of their remaining properties.   Capstone spent considerable time during the Compensation Period working closely with the Debtors, the First Lien Agent's advisors and the Committee's advisors to evaluate strategic options with respect to the sale/disposition of the Debtors' remaining assets.   Specifically, Capstone marketed the 21 properties that Fiat chose not to buy as part of the Fiat Transaction.   The marketing efforts included preparation of diligence materials, identifying interested parties and conducting tours of facilities for interested parties.

50.    Capstone evaluated third party bids for the real properties remaining in the Debtors' estate after the consummation of the Fiat Transaction, advised as to the stalking horse

bid, and advised the Debtors and Debtors' counsel on issues related thereto through detailed meetings, memoranda and numerous telephonic conferences.

51.    During the Compensation Period, Capstone also prepared analyses of the assets and liabilities to be sold or assumed in the Fiat Transaction and the assets and liabilities retained by the Estates.

52.    Capstone also provided deposition and expert testimony with respect to the Fiat Transaction.   Robert Manzo, an Executive Director with Capstone, submitted four declarations with the Court in support of the Fiat Transaction and testified extensively during the hearing to consider the Fiat Transaction or other competing sales transaction (the "Sale Hearing").

53.    In addition to the marketing of properties constituting First Lien Lender Collateral, the "Bank Collateral, Service Category 01 Asset Acquisitions/Disposition" includes $149,595.50 (393.9 hours) relating to Company Cars Disposition.   An amount of $29,919.10 represents 20% of the Company Cars Disposition costs, to be paid from the DIP Collateral pursuant to the Plan and the First Lien Winddown Order.   See, e.g., First Lien Winddown Order, ¶ 15(d).

54.    During the Compensation Period, Capstone has expended 4,355.0 hours on this category for a fee of $1,715,405.50 relating to the First Lien Collateral and 3,892.7 hours for a fee of $1,572,877.25 relating to the DIP Collateral.

## Case Administration – Task Code 02

55.    This task code includes Capstone's senior management case workplan updates as well as Capstone's internal meetings with professionals to ensure the chapter 11 cases progressed in the most efficient matter with the least cost to the Estates.  Capstone ensured that it

coordinated its activities with those of the Debtors' attorneys and the professionals acting on behalf of the First Lien Agent, the Committee and the U.S. Treasury.

56.    During the Compensation Period, Capstone has expended 3.9 hours on this category for a fee of $2,446.50 relating to the First Lien Collateral and 629.4 hours for a fee of $308,858.50 relating to the DIP Collateral.

### General – Task Code 03

57.    This task code relates to general time spent related to bankruptcy case matters.  During the Compensation Period, Capstone reviewed multiple motions and docket items related to the Debtors' bankruptcy filing.  Internal meetings with professionals were also conducted to ensure these cases progress in the most efficient matter with the least cost to the estate.  Capstone ensured that it coordinated its activities with those of the Debtors' attorneys and the professionals acting on behalf of the First Lien Lenders and the Committee.

58.    During the Compensation Period, Capstone has expended 4.5 hours on this category for a fee of $1,782.00 relating to the First Lien Collateral and 531.5 hours for a fee of $200,612.00 relating to the DIP Collateral.

### DIP Financing – Task Code 04

59.    This task code relates to the preparation, negotiation, review and analysis and compliance with the DIP Facility.  Capstone's participation of such activities included preparation of cash budgets to quantify the level of financing required, participation in negotiation of terms of the financing and monitoring and reporting the use of the DIP Facility. Capstone's activities included numerous discussions with the U.S. Treasury and EDC, assisting the Debtors with incorporating covenants into their cash disbursement process, analysis of weekly cash flow funding requirements and DIP Facility reporting matters.

60.     During the Compensation Period, Capstone has expended 1.9 hours on this category for a fee of $855.00 relating to the First Lien Collateral and 186.1 hours for a fee of $86,374.50 relating to the DIP Collateral.

### Professional Retention/Fee Application – Task Code 05

61.     This task code for the Compensation Period relates to Capstone's efforts in connection with its application to be retained as financial advisor to the Debtors, the preparation of Capstone's interim fee applications and Monthly Statements in accordance with the Interim Compensation Order.  Capstone was required to submit requests for fee allowances and expense reimbursements in the manner prescribed by the Court.  These requirements include preparing and reviewing Monthly Statements as well as preparing quarterly interim fee applications for payment of fees and reimbursement of actual and necessary expenses.

62.     During the Compensation Period, Capstone has expended 6.7 hours on this category for a fee of $2,539.50 relating to the First Lien Collateral and 736.2 hours for a fee of $239,964.00 relating to the DIP Collateral.

### Attend Hearings/Related Activities – Task Code 06

63.     This task code for the Compensation Period relates to Capstone's preparation for and attendance at hearings and other proceedings and review of court filed documents in cooperation with Debtors' counsel.   This task code includes Capstone's participation in the Court proceedings including those related to the first day orders, including DIP financing, and the section 363 Sale Hearing, the Fiat Transaction, the Winddown Orders, the hearing on confirmation of the Plan, and asset sales.  Capstone's participation of such activities was necessary to protect the interests of the Estates.

64.    During the Compensation Period, Capstone has expended 6.1 hours on this category for a fee of $3,883.50 relating to the First Lien Collateral and 196.1 hours for a fee of $134,403.00 relating to the DIP Collateral.

### Interaction/Meetings with Debtors/Counsel – Task Code 07

65.    This task code relates to teleconferences and meetings with the Debtors and the Debtors' counsel regarding all matters of the Debtors' cases.  The time expended includes various communications in connection with information requests and Debtors' presentations to the various constituencies on other important case matters.  Telephone meetings and in-person meetings were conducted with the Debtors and/or their professionals during the Compensation Period that were necessary to proceed with critical areas including:  DIP financing, cash management, the Fiat Transaction, intercompany transactions, property sales, environmental matters, the Winddown Orders, the negotiation and development of the Plan, including the exhibits thereto, and a variety of other matters.

66.    During the Compensation Period, Capstone has expended 31.8 hours on this category for a fee of $12,138.00 relating to the First Lien Collateral and 1,137.0 hours for a fee of $555,940.75 relating to the DIP Collateral.

### Interaction/Meetings with Creditors – Task Code 08

67.    This task code relates to meetings and conference calls with the Committee, the First Lien Lenders, and the First Lien Agent and its counsel and financial advisors.  In addition, during the Compensation Period, Capstone had numerous in-person meetings and telephonic conferences with the Committee and the First Lien Agent's financial advisors.  Capstone participated in meetings with the Committee and First Lien Agent's professionals in order to apprise the Committee and First Lien Agent of developments in the chapter 11 cases, to negotiate the funding of the winddown of the Estates and the disposition of

20

the remaining assets, and to facilitate the efficient administration of the chapter 11 cases.  In preparation for these meetings, Capstone reviewed pending matters to be discussed with the Committee and the First Lien Agent's professionals, prepared multiple budgets at the Committee and First Lien Agent's request and reviewed and reported on underlying documentation in connection with pending matters.

68.     During the Compensation Period, Capstone has expended 96.6 hours on this category for a fee of $58,059.00 relating to the First Lien Collateral and 470.6 hours for a fee of $279,134.00 relating to the DIP Collateral.

**Employee Issues/KEIP – Task Code 09**

69.     This task code relates to time spent by Capstone analyzing the insurance and compensation needs of the Old Carco board member and CEO, the Debtors' plans for reductions in force with multiple conversations and follow-up analyses assessing the level and timing.  Capstone also analyzed pension and healthcare related matters as they related to the Debtors' plans, including participating in the negotiations related to the UAW-related plans and the voluntary employee beneficiary association that was established in connection with the Fiat Transaction.

70.     During the Compensation Period, Capstone has expended 67.9 hours on this category for a fee of $30,524.50 relating to the DIP Collateral.

**Recovery/SubCon/Lien Analysis – Task Code 10**

71.     This task code relates to time spent analyzing and updating the collateral schedule in connection with the Winddown Orders.

72.     During the Compensation Period, Capstone has expended 39.7 hours on this category for a fee of $14,716.50 relating to the First Lien Collateral and 117.6 hours for a fee of $52,764.50 relating to the DIP Collateral.

21

### Claim Analysis/Accounting – Task Code 11

73.     This task code relates to time spent by Capstone analyzing liabilities assumed in the Fiat Transaction and liabilities retained.  The time spent also includes analyses related to potential cure claims and other potential vendor claims, and the review and adjudication of claims filed before and after the September 28, 2009 and October 17, 2009 bar dates (including tax claims, other priority claims, environmental claims, employee claims and dealership claims).

74.     During the Compensation Period, Capstone has expended 10.5 hours on this category for a fee of $5,174.50 relating to the First Lien Collateral and 3,370.1 hours for a fee of $1,351,876.25 relating to the DIP Collateral.

### Statements and Schedules – Task Code 12

75.     This task code relates to time spent by Capstone on the preparation of accounting reporting and the analysis of the reporting received from the Debtors.  Throughout the Compensation Period, Capstone advised, assisted and counseled the Debtors and their accountants on the preparation of financial and operating statements including the Statement of Financial Affairs, Statement of Assets and Liabilities, monthly operating reports, and cash flow forecasts for the Debtors.

76.     During the Compensation Period, Capstone has expended 2.6 hours on this category for a fee of $1,170.00 relating to the First Lien Collateral and 998.4 hours for a fee of $452,739.50 relating to the DIP Collateral.

### Intercompany Transactions/Balances and Transfer Pricing – Task Code 13

77.     This task code relates to time spent by Capstone to analyze intercompany transactions and balances.  The analysis included the review of cash forecasts of various non-Debtor affiliates to consider potential liquidity needs of these entities.  Documentation of the

22

Debtors' intercompany transactions was reviewed, along with historical financial statements and cash flow projections.

78.    During the Compensation Period, Capstone has expended 59.5 hours on this category for a fee of $26,885.00 relating to the DIP Collateral.

## Executory Contracts – Task Code 14

79.    This task code relates to time expended analyzing executory contracts for assumption or rejection.  Capstone reviewed and conducted due diligence on all major contract rejections or assumptions, including speaking with the Debtors regarding business logic of each assumption or rejection and the potential impact on creditor recoveries.  Capstone conducted meetings in-person or via conference calls with parties-in-interest including New Chrysler, the Committee, and the First Lien Agent and its professionals to provide periodic situational updates.

80.    During the Compensation Period, Capstone has expended 23.1 hours on this category for a fee of $8,753.50 relating to the First Lien Collateral and 631.6 hours for a fee of $280,057.50 relating to the DIP Collateral.

## Analysis of Historical Results – Task Code 17

81.    This task code relates to time expended in connection with the analysis of the monthly operating reports, including corresponding with PricewaterhouseCoopers, as well as time expended in connection with the analysis of the Debtors' historical financial results for purposes of obtaining understanding of the Debtors' past performance as a basis for forecasting future performance.  The sources of this analysis were the Debtors' documents and summary financial statements prepared and provided by the Debtors.  The docket and relevant documents were reviewed and findings were conveyed to counsel.

82.    During the Compensation Period, Capstone has expended 49.3 hours on this category for a fee of $21,821.00 relating to the DIP Collateral.

23

### Operating and Other Reports – Task Code 18

83.     This task code relates to time spent by Capstone to prepare various reports related to the analyses of the monthly operating reports and asset sales in connection with the liquidation of the Debtors' remaining assets after the Fiat Transaction.

84.     During the Compensation Period, Capstone has expended 10.2 hours on this category for a fee of $4,367.50 relating to the First Lien Collateral and 405.9 hours for a fee of $193,868.00 relating to the DIP Collateral.

### Cash Flow/Cash Management Liquidity – Task Code 19

85.     This task code relates to Capstone's time spent on weekly cash flow analyses and daily cash flow reports that were provided for various Debtor entities.  This included, but was not limited to, assistance in preparing the Debtors' weekly 13-week cash flow forecast and weekly variance reports for various entities and participation in related calls with the Debtors.  This task code includes Capstone's participation in cash requirements meetings and communication of cash requirements to Debtors' management and DIP Lenders.  The task code also includes the review and analysis of the monthly fee and expense statements of the other retained professionals and invoices of ordinary course professionals and any other service providers asking for payment from the Debtors.

86.     During the Compensation Period, Capstone has expended 181.9 hours on this category for a fee of $78,130.00 relating to the First Lien Collateral and 3,359.4 hours for a fee of $1,519,673.00 relating to the DIP Collateral.

### Projections/Business Plan/Other – Task Code 20

87.     This task code relates to Capstone's time spent preparing and analyzing various updated reports. During the Compensation Period, Capstone engaged in numerous discussions with Debtors' management team in the preparation and the continuous refining of

24

financial projections, including financial projections reflecting the Fiat Transaction. This task code also includes the preparation of multiple winddown budgets based on various assumptions as to assets and liabilities retained by the Debtors and various funding levels.

88.    During the Compensation Period, Capstone has expended 9.7 hours on this category for a fee of $4,300.00 relating to the First Lien Collateral and 536.2 hours for a fee of $250,637.50 relating to the DIP Collateral.

### Reclamation – Task Code 21

89.    This task code relates to time spent reviewing the potential reclamation claims and determining the process for claim analysis and resolution.

90.    During the Compensation Period, Capstone has expended 10.3 hours on this category for a fee of $4,831.50 relating to the DIP Collateral.

### Preference/Avoidance Actions – Task Code 22

91.    This task code relates to time spent reviewing the activities of the rejected dealers.

92.    During the Compensation Period, Capstone has expended 4.2 hours on this category for a fee of $1,890.00 relating to the DIP Collateral.

### Environmental Matters – Task Code 23

93.    This task code relates to time spent reviewing potential environmental liability issues of the Debtors including discussions related to the Debtors' obligations under the TSA. During the Compensation Period, Capstone engaged in numerous discussions with New Chrysler in reviewing historical environmental accounting reserves established for appropriateness, and requested and studied historical environmental information regarding the Debtors' sites in preparation for a sale process for 21 properties that remained owned by the Debtors after the Fiat Transaction. This task code also relates to time spent responding to

25

New Chrysler's facility extension date requests and addressing matters in connection with the Plan with the Department of Justice, Environmental Protection Agency, and the U.S. Treasury. This task code also includes time relating to observation of the New Chrysler decommissioning process in order to ensure that the facilities were returned to the Debtors in a manner that complies with the Purchase Agreement.

94.    During the Compensation Period, Capstone has expended 570.3 hours on this category for a fee of $198,168.50 relating to the First Lien Collateral and 2,107.4 hours for a fee of $822,592.00 relating to the DIP Collateral.

**Liquidation Analysis – Task Code 24**

95.    This task code relates to time spent on the preparation of the liquidation/winddown budget of the Debtors.  During the Compensation Period, Capstone spent significant time attending meetings with the Debtors' management, the Committee and the First Lien Agent and their professionals and prepared, reviewed and updated the liquidation analysis of the Debtors.  This task code also relates to the time spent by Capstone in preparing and negotiating the winddown budget of the Debtors following the Fiat Transaction.

96.    During the Compensation Period, Capstone has expended 5.5 hours on this category for a fee of $1,477.00 relating to the First Lien Collateral and 606.3 hours for a fee of $337,329.50 relating to the DIP Collateral.

**Litigation – Task Code 25**

97.    This task code relates to time spent on the settlement of the Debtors' litigation matters.    During the Compensation Period, Capstone assisted in the settlement of various litigations on behalf of the Debtors.

26

98.     During the Compensation Period, Capstone has expended 4.8 hours on this category for a fee of $3,144.00 relating to the First Lien Collateral and 59.2 hours for a fee of $38,445.00 relating to the DIP Collateral.

### Tax Issues – Task Code 26

99.     This task code relates to time spent analyzing the tax issues including with respect to income taxes, business taxes, sales and uses taxes, property taxes and other tax-related issues with an impact on the Debtors.  During the Compensation Period, Capstone continued to assist in continuing an analysis of various tax issues affecting the Debtors.   In connection therewith, Capstone participated in numerous conferences with the Debtors' counsel to discuss tax issues in the context of the Debtors' liquidation and property disposition.

100.     During the Compensation Period, Capstone has expended 166.2 hours on this category for a fee of $68,944.25 relating to the First Lien Collateral and 1,496.7 hours for a fee of $588,130.75 relating to the DIP Collateral.

### Plan of Reorganization/Disclosure Statement – Task Code 27

101.     This task code relates to time spent negotiating, developing and reviewing the Debtors' Plan and related Disclosure Statement with Respect to the Joint Plan of Liquidation of Debtors and Debtors in Possession [Docket No. 6078] (as amended on January 19, 2010 [Docket No. 6237] and January 22,  2010 [Docket No. 6273] (the "Disclosure Statement"). During the Compensation Period, Capstone attended meetings with the Committee professionals and the Debtors' main constituencies regarding, and reviewed, analyzed and commented on, the Plan (including previous versions thereof that were filed with the Court), the related Disclosure Statement, the liquidation budget and the Winddown Orders.

102.    During the Compensation Period, Capstone has expended 30.3 hours on this category for a fee of $17,353.00 relating to the First Lien Collateral and 908.3 hours for a fee of $597,134.00 relating to the DIP Collateral.

## **Valuation Analysis – Task Code 28**

103.    This task code relates to time spent on the valuation of certain assets in the Debtors' remaining facilities.  During the Compensation Period, Capstone reviewed valuation analyses on certain machinery and equipment in order to ensure that the bids received from equipment brokers were in line with industry comparables.

104.    During the Compensation Period, Capstone has expended 13.2 hours on this category for a fee of $3,300.00 relating to the First Lien Collateral and 6.7 hours for a fee of $1,769.50 relating to the DIP Collateral.

## **Exit Financing – Task Code 30**

105.    This task code relates to time spent by Capstone reviewing the Debtors' agreements related to exit financing.  During the Compensation Period, Capstone participated in various meeting with Debtors' management and the U.S. Treasury to review the Debtors' exit financing arrangements and their covenants and compliance issues.  Capstone also assessed the impact of the exit financing arrangements on the Fiat Transaction.

106.    During the Compensation Period, Capstone has expended 33.9 hours on this category for a fee of $18,706.50 relating to the DIP Collateral.

## **Planning – Task Code 31**

107.    This task code relates to Capstone's time spent updating the engagement work plan, coordinating that work plan with the Debtors' other advisors to ensure there was no duplication of services, and to provide staff guidance on an ongoing basis.

28

108.    During the Compensation Period, Capstone has expended 61.9 hours on this category for a fee of $45,286.50 relating to the DIP Collateral.

## Document Review – Task Code 32

109.    This task code includes Capstone's review and analysis of various documents related to the Debtors.  During the Compensation Period, Capstone reviewed various court motions and dockets related to the Debtors' bankruptcy filing.

110.    During the Compensation Period, Capstone has expended 50.5 hours on this category for a fee of $27,289.50 relating to the DIP Collateral.

## Research – Task Code 33

111.    This task code includes Capstone's time spent on research related to the Debtors' bankruptcy case.  During the Compensation Period, among other things, Capstone performed a comparative analysis on stalking horse breakup fees for potential use in connection with the Fiat Transaction.

112.    During the Compensation Period, Capstone has expended 62.7 hours on this category for a fee of $12,612.50 relating to the DIP Collateral.

## ACTUAL AND NECESSARY EXPENSES

113.    Capstone incurred actual and necessary out-of-pocket expenses in connection with the rendition of the professional services to the Debtors, as summarized above and as set forth in more detail in Exhibit B hereto, in the sum of $1,007,611.46 for which Capstone respectfully requests reimbursement in full.

114.    The disbursements and expenses have been incurred in accordance with Capstone's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Capstone to devote time beyond

29

normal office hours to the disposition of assets and other matters, which imposed extraordinary time demands. Capstone has endeavored to minimize these expenses to the fullest extent possible.

115. Capstone's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, secretarial overtime, postage and certain other office services, because Capstone charges each of its clients only for the costs actually incurred related to performing services for such client. Capstone has endeavored to minimize these expenses to the fullest extent possible and does not consider such charges to constitute "overhead."

116. Consistent with this Courts' Guidelines, Capstone charges (a) $.10 per page for in-house photocopying services, (b) the actual cost from the vendor for computerized charges, and (c) $1.00 per page for out-going facsimile transmissions, with no charge for incoming facsimiles.

117. In providing a reimbursable service such as copying or telephone, Capstone does not make a profit on that service. In charging for a particular service, Capstone does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which Capstone justifiably purchased or contracted for from a third party, Capstone requests reimbursement only for the amount billed to Capstone by such third party vendor and paid by Capstone to that vendor.

*[Remainder of this Page Intentionally Left Blank]*

WHEREFORE, Capstone respectfully requests that: (a) Capstone be allowed on an interim and final basis (i) fees in the amount of $4,194,871.50 for reasonable, actual and necessary services rendered by it on behalf of the Debtors during the Third Interim Compensation Period and (ii) reimbursement of $332,243.24 for reasonable, actual and necessary expenses incurred during the Third Interim Compensation Period; (b) Capstone be allowed on a final basis (i) fees in the amount of $12,251,119.00[7] for reasonable, actual and necessary services rendered by it on behalf of the Debtors during the Compensation Period, (ii) the Transaction Fee of $17 million and (iii) reimbursement of $1,007,661.46[8] for reasonable, actual and necessary expenses incurred during the Compensation Period; and (c) the Liquidation Trust, as successor in interest to the Debtors, be authorized and directed to pay to Capstone the amount of $30,258,730.46, which is equal to the sum of 100% of Capstone's fees and 100% of Capstone's expenses incurred during the Compensation Period.

Dated: June 29, 2010
      Washington, DC

/s/ Peter Chadwick
_____
Peter Chadwick
CAPSTONE ADVISORY GROUP, LLC
1020 19th Street, NW
Suite 350
Washington, DC 20036
Telephone: (202) 507-7101
Facsimile: (202) 507-7118

Financial Advisor for Debtors
and Debtors in Possession

---

[7] The amount excludes the voluntary reduction of $10,000 taken in the first interim period.

[8] The amount excludes the voluntary reduction of $2,489.89 taken in the first interim period and $1,106.93 taken in the second interim period.

**EXHIBIT A**

# Old Carco, LLC, (f/k/a Chrysler, LLC), et. al.
## Capstone Advisory Group, LLC
## Summary of Fees by Task Code
## For the Periods 1/1/10 – 4/30/10 and 4/30/09 – 4/30/10

| Service Category | Third Interim Period (1/1/10 - 4/30/10) | | | | Final Fee Period (4/30/09 - 4/30/10) | | | |
| | DIP Collateral | | FLL Collateral | | DIP Collateral | | FLL Collateral | |
| | Hours | Fees Incurred | Hours | Fees Incurred | Hours | Fees Incurred | Hours | Fees Incurred |
|---|---|---|---|---|---|---|---|---|
| 01. Asset Acquisition/Disposition | 868.0 | $358,620.50 | 1,689.0 | $703,172.50 | 3,892.7 | $1,572,877.25 | 4,355.0 | $1,715,405.50 |
| 02. Case Administration | 268.0 | $132,381.00 | 1.6 | $618.00 | 629.4 | $308,858.50 | 3.9 | $2,446.50 |
| 03. General | 48.3 | $19,936.50 | 2.0 | $793.00 | 531.5 | $200,612.00 | 4.5 | $1,782.00 |
| 04. DIP Financing | 24.5 | $12,730.50 | - | $0.00 | 186.1 | $86,374.50 | 1.9 | $855.00 |
| 05. Professional Retention/Fee | 204.3 | $66,899.00 | - | $0.00 | 736.2 | $239,964.00 | 6.7 | $2,539.50 |
| 06. Attend Hearings/Related | 20.5 | $14,606.00 | - | $0.00 | 196.1 | $134,403.00 | 6.1 | $3,883.50 |
| 07. Interaction/Mtgs w | 1.1 | $935.00 | 2.7 | $1,336.50 | 1,137.0 | $555,940.75 | 31.8 | $12,138.00 |
| 08. Interaction/Mtgs w Creditors | 15.2 | $9,926.50 | 15.5 | $8,070.00 | 470.6 | $279,134.00 | 96.6 | $58,059.00 |
| 09. Employee Issues/KEIP | 5.6 | $2,772.00 | - | $0.00 | 67.9 | $30,524.50 | - | $0.00 |
| 10. Recovery/SubCon/Lien | 44.3 | $24,543.00 | 12.7 | $6,286.50 | 117.6 | $52,764.50 | 39.7 | $14,716.50 |
| 11. Claim Analysis/Accounting | 2,024.4 | $829,211.50 | 4.9 | $2,592.00 | 3,370.1 | $1,351,859.50 | 10.5 | $5,174.50 |
| 12. Statements and Schedules | 179.9 | $87,606.00 | - | $0.00 | 998.4 | $452,739.50 | 2.6 | $1,170.00 |
| 13. Intercompany | 10.7 | $5,296.50 | - | $0.00 | 59.5 | $26,885.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 106.8 | $57,932.50 | - | $0.00 | 631.6 | $280,057.50 | 23.1 | $8,753.50 |
| 17. Analysis of Historical Results | - | $0.00 | - | $0.00 | 49.3 | $21,821.00 | - | $0.00 |
| 18. Operating and Other Reports | 256.5 | $136,982.00 | 6.0 | $3,127.50 | 405.9 | $193,868.00 | 10.2 | $4,367.50 |
| 19. Cash Flow/Cash Mgmt Liquidity | 855.0 | $407,817.50 | 128.2 | $54,004.00 | 3,359.4 | $1,519,673.00 | 181.9 | $78,130.00 |
| 20. Projections/Business | 97.5 | $62,940.50 | - | $0.00 | 536.2 | $250,637.50 | 9.7 | $4,300.00 |
| 21. Reclamation/503(b)(9) | 3.3 | $1,633.50 | - | $0.00 | 10.3 | $4,831.50 | - | $0.00 |
| 22. Pref/Avoidance Actions | - | $0.00 | - | $0.00 | 4.2 | $1,890.00 | - | $0.00 |
| 23. Environmental Matters | 1,201.1 | $489,396.00 | 143.6 | $53,417.50 | 2,107.4 | $822,592.00 | 570.3 | $198,168.50 |
| 24. Liquidation Analysis | - | $0.00 | 1.2 | $402.00 | 606.3 | $337,329.50 | 5.5 | $1,477.00 |
| 25. Litigation | 0.4 | $198.00 | 3.2 | $2,144.00 | 59.2 | $38,445.00 | 4.8 | $3,144.00 |
| 26. Tax Issues | 500.9 | $211,490.00 | 98.0 | $41,372.50 | 1,496.7 | $588,130.75 | 166.2 | $68,944.25 |
| 27. Plan of Reorg/Discl Stmt | 597.7 | $373,324.50 | 21.5 | $10,357.00 | 908.3 | $597,134.00 | 30.3 | $17,353.00 |
| 28. Valuation Analysis | - | $0.00 | - | $0.00 | 6.7 | $1,769.50 | 13.2 | $3,300.00 |
| 30. Exit Financing | - | $0.00 | - | $0.00 | 33.9 | $18,706.50 | - | $0.00 |
| 31. Planning | - | $0.00 | - | $0.00 | 61.9 | $45,286.50 | - | $0.00 |
| 32. Document Review | - | $0.00 | - | $0.00 | 50.5 | $27,289.50 | - | $0.00 |
| 33. Research | - | $0.00 | - | $0.00 | 62.7 | $12,612.50 | - | $0.00 |
| **Total** | **7,333.9** | **$  3,307,178.50** | **2,130.1** | **$   887,693.00** | **22,783.5** | **$ 10,055,011.25** | **5,574.5** | **$ 2,206,107.75** |

| Combined Totals | Hours | 9,464.0 | | Hours | 28,357.9 | |
|---|---|---|---|---|---|---|
| | Fees | $  4,194,871.50 | | Fees | $ 12,261,119.00 | |

**Old Carco, LLC, (f/k/a Chrysler, LLC), et. al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional by Task**
**For the Period 1/1/2010 through 4/30/2010**

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **A. Chonich** | | | | |
| 01. Asset Acquisition/Disposition | 47.1 | $15,778.50 | 607.4 | $203,479.00 |
| 02. Case Administration | 9.8 | $3,283.00 | 1.2 | $402.00 |
| 03. General | 26.3 | $8,810.50 | 1.4 | $469.00 |
| 05. Professional Retention/Fee App | 131.8 | $44,153.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | - | $0.00 | 0.3 | $100.50 |
| 11. Claim Analysis/Accounting | 11.6 | $3,886.00 | 1.6 | $536.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 30.7 | $10,284.50 | 34.4 | $11,524.00 |
| 23. Environmental Matters | - | $0.00 | 24.7 | $8,274.50 |
| 24. Liquidation Analysis | - | $0.00 | 1.2 | $402.00 |
| 26. Tax Issues | 3.2 | $1,072.00 | 3.5 | $1,172.50 |
| **Subtotal - A. Chonich** | **260.5** | **$87,267.50** | **675.7** | **$226,359.50** |
| | | | | |
| **B. Aronson** | | | | |
| 01. Asset Acquisition/Disposition | 316.7 | $147,265.50 | 267.4 | $124,341.00 |
| 02. Case Administration | 6.3 | $2,929.50 | - | $0.00 |
| 12. Statements and Schedules | 1.6 | $744.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 2.5 | $1,162.50 | - | $0.00 |
| 18. Operating and Other Reports | 14.4 | $6,696.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 44.4 | $20,646.00 | 41.6 | $19,344.00 |
| 23. Environmental Matters | 245.1 | $113,971.50 | 12.1 | $5,626.50 |
| 26. Tax Issues | 16.3 | $7,579.50 | 9.1 | $4,231.50 |
| 27. Plan of Reorg/Discl Stmt | 3.5 | $1,627.50 | - | $0.00 |
| **Subtotal - B. Aronson** | **650.8** | **$302,622.00** | **330.2** | **$153,543.00** |
| | | | | |
| **C. Hoang** | | | | |
| 01. Asset Acquisition/Disposition | 3.6 | $1,206.00 | 14.8 | $4,958.00 |
| 02. Case Administration | 3.4 | $1,139.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 2.6 | $871.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 8.8 | $2,948.00 | 6.9 | $2,311.50 |
| 23. Environmental Matters | 355.6 | $119,126.00 | 24.7 | $8,274.50 |
| **Subtotal - C. Hoang** | **374.0** | **$125,290.00** | **46.4** | **$15,544.00** |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **D. Quackenbush** | | | | |
| 01. Asset Acquisition/Disposition | 21.9 | $13,140.00 | 5.6 | $3,360.00 |
| 02. Case Administration | 19.0 | $11,400.00 | - | $0.00 |
| 03. General | 1.7 | $1,020.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 0.5 | $300.00 | 4.8 | $2,880.00 |
| 10. Recovery/SubCon/Lien Analysis | 24.9 | $14,940.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 6.5 | $3,900.00 | - | $0.00 |
| 12. Statements and Schedules | 2.0 | $1,200.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 3.0 | $1,800.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 70.7 | $42,420.00 | - | $0.00 |
| 18. Operating and Other Reports | 92.2 | $55,320.00 | 1.5 | $900.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 90.2 | $54,120.00 | 1.4 | $840.00 |
| 20. Projections/Business Plan/Othe | 41.8 | $25,080.00 | - | $0.00 |
| 23. Environmental Matters | 1.4 | $840.00 | - | $0.00 |
| 26. Tax Issues | 1.3 | $780.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 86.7 | $52,020.00 | - | $0.00 |
| **Subtotal - D. Quackenbush** | **463.8** | **$278,280.00** | **13.3** | **$7,980.00** |
| **D. Tsui** | | | | |
| 01. Asset Acquisition/Disposition | 18.5 | $6,660.00 | 16.2 | $5,832.00 |
| 02. Case Administration | 12.4 | $4,464.00 | - | $0.00 |
| 03. General | 13.2 | $4,752.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | | | 1.3 | $468.00 |
| 11. Claim Analysis/Accounting | 233.0 | $83,880.00 | 0.5 | $180.00 |
| 12. Statements and Schedules | 13.3 | $4,788.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 5.9 | $2,124.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 234.2 | $84,312.00 | 8.5 | $3,060.00 |
| 23. Environmental Matters | 1.0 | $360.00 | - | $0.00 |
| 26. Tax Issues | 315.1 | $113,436.00 | 39.1 | $14,076.00 |
| 27. Plan of Reorg/Discl Stmt | 2.2 | $792.00 | - | $0.00 |
| **Subtotal - D. Tsui** | **848.8** | **$305,568.00** | **65.6** | **$23,616.00** |
| **E. Ordway** | | | | |
| 03. General | 2.0 | $1,520.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 1.2 | $912.00 | - | $0.00 |
| **Subtotal - E. Ordway** | **3.2** | **$2,432.00** | **-** | **$0.00** |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | **Hours** | **Fees** | **Hours** | **Fees** |
| **J. Jacob** | | | | |
| 01. Asset Acquisition/Disposition | 16.8 | $8,316.00 | 31.0 | $15,345.00 |
| 02. Case Administration | 49.2 | $24,354.00 | - | $0.00 |
| 03. General | 0.8 | $396.00 | - | $0.00 |
| 04. DIP Financing | 20.3 | $10,048.50 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | - | $0.00 | 2.7 | $1,336.50 |
| 08. Interaction/Mtgs w Creditors | 0.9 | $445.50 | 6.5 | $3,217.50 |
| 09. Employee Issues/KEIP | 5.6 | $2,772.00 | - | $0.00 |
| 10. Recovery/SubCon/Lien Analysis | 19.4 | $9,603.00 | 12.7 | $6,286.50 |
| 11. Claim Analysis/Accounting | 142.5 | $70,537.50 | - | $0.00 |
| 12. Statements and Schedules | 36.8 | $18,216.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 0.7 | $346.50 | - | $0.00 |
| 14. Executory Contracts/Leases | 5.2 | $2,574.00 | - | $0.00 |
| 18. Operating and Other Reports | 43.6 | $21,582.00 | 4.5 | $2,227.50 |
| 19. Cash Flow/Cash Mgmt Liquidity | 249.8 | $123,651.00 | 32.5 | $16,087.50 |
| 20. Projections/Business Plan/Othe | 8.7 | $4,306.50 | - | $0.00 |
| 21. Reclamation/503(b)(9) | 3.3 | $1,633.50 | - | $0.00 |
| 23. Environmental Matters | 6.0 | $2,970.00 | - | $0.00 |
| 25. Litigation | 0.4 | $198.00 | - | $0.00 |
| 26. Tax Issues | 104.1 | $51,529.50 | 35.9 | $17,770.50 |
| 27. Plan of Reorg/Discl Stmt | 23.2 | $11,484.00 | - | $0.00 |
| **Subtotal - J. Jacob** | **737.3** | **$364,963.50** | **125.8** | **$62,271.00** |
| **J. Kiley** | | | | |
| 02. Case Administration | 1.9 | $940.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 230.0 | $113,850.00 | - | $0.00 |
| 18. Operating and Other Reports | 62.6 | $30,987.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 60.8 | $30,096.00 | - | $0.00 |
| **Subtotal - J. Kiley** | **355.3** | **$175,873.50** | **-** | **$0.00** |
| **J. Rooney** | | | | |
| 01. Asset Acquisition/Disposition | 30.5 | $16,470.00 | 373.1 | $201,474.00 |
| 02. Case Administration | 47.9 | $25,866.00 | 0.4 | $216.00 |
| 03. General | 0.7 | $378.00 | 0.6 | $324.00 |
| 06. Attend Hearings/Related Activi | 4.1 | $2,214.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 0.5 | $270.00 | 2.6 | $1,404.00 |
| 11. Claim Analysis/Accounting | 0.6 | $324.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 0.3 | $162.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 0.9 | $486.00 | 0.2 | $108.00 |
| 23. Environmental Matters | 7.5 | $4,050.00 | 22.5 | $12,150.00 |
| 26. Tax Issues | - | $0.00 | 2.2 | $1,188.00 |
| 27. Plan of Reorg/Discl Stmt | 9.0 | $4,860.00 | - | $0.00 |
| **Subtotal - J. Rooney** | **102.0** | **$55,080.00** | **401.6** | **$216,864.00** |

| Professional | DIP Collateral | | FLL Collateral | |
| --- | --- | --- | --- | --- |
| | Hours | Fees | Hours | Fees |
| **J. Ruth** | | | | |
| 01. Asset Acquisition/Disposition | 2.2 | $990.00 | 37.3 | $16,785.00 |
| 02. Case Administration | 42.8 | $19,260.00 | - | $0.00 |
| 03. General | 0.6 | $270.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 13.6 | $6,120.00 | - | $0.00 |
| 12. Statements and Schedules | 101.0 | $45,450.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 7.0 | $3,150.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 13.2 | $5,940.00 | - | $0.00 |
| 18. Operating and Other Reports | 27.1 | $12,195.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 11.1 | $4,995.00 | - | $0.00 |
| 23. Environmental Matters | 13.4 | $6,030.00 | - | $0.00 |
| 26. Tax Issues | 8.9 | $4,005.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 158.4 | $71,280.00 | 18.4 | $8,280.00 |
| **Subtotal - J. Ruth** | **399.3** | **$179,685.00** | **55.7** | **$25,065.00** |
| **K. Pike** | | | | |
| 02. Case Administration | 6.7 | $2,010.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 756.2 | $226,860.00 | - | $0.00 |
| **Subtotal - K. Pike** | **762.9** | **$228,870.00** | - | $0.00 |
| **K. Schweninger** | | | | |
| 02. Case Administration | 7.7 | $3,850.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 273.2 | $136,600.00 | - | $0.00 |
| **Subtotal - K. Schweninger** | **280.9** | **$140,450.00** | - | $0.00 |
| **L. Hirschman** | | | | |
| 05. Professional Retention/Fee App | 47.5 | $5,700.00 | - | $0.00 |
| **Subtotal - L. Hirschman** | **47.5** | **$5,700.00** | **-** | **$0.00** |
| **M. Desalvio** | | | | |
| 01. Asset Acquisition/Disposition | 2.0 | $340.00 | - | $0.00 |
| **Subtotal - M. Desalvio** | **2.0** | **$340.00** | **-** | **$0.00** |
| **M. Markevics** | | | | |
| 02. Case Administration | 3.2 | $1,600.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 180.3 | $90,150.00 | - | $0.00 |
| **Subtotal - M. Markevics** | **183.5** | **$91,750.00** | **-** | **$0.00** |
| **M. O'Neal** | | | | |
| 01. Asset Acquisition/Disposition | 158.1 | $42,687.00 | 204.7 | $55,269.00 |
| 02. Case Administration | 22.5 | $6,075.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 24.5 | $6,615.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 6.2 | $1,674.00 | - | $0.00 |
| 18. Operating and Other Reports | 2.3 | $621.00 | - | $0.00 |

| | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| Professional | Hours | Fees | Hours | Fees |
| **M. O'Neal - continued** | | | | |
| 19. Cash Flow/Cash Mgmt Liquidity | 29.5 | $7,965.00 | 2.7 | $729.00 |
| 20. Projections/Business Plan/Othe | 2.4 | $648.00 | - | $0.00 |
| 23. Environmental Matters | 376.9 | $101,763.00 | 52.1 | $14,067.00 |
| 26. Tax Issues | 7.8 | $2,106.00 | 6.4 | $1,728.00 |
| **Subtotal - M. O'Neal** | **630.2** | **$170,154.00** | **265.9** | **$71,793.00** |
| **N. Backer** | | | | |
| 05. Professional Retention/Fee App | 2.8 | $336.00 | - | $0.00 |
| **Subtotal - N. Backer** | **2.8** | **$336.00** | **-** | **$0.00** |
| **P. Barnes** | | | | |
| 01. Asset Acquisition/Disposition | 175.1 | $51,654.50 | 47.3 | $13,953.50 |
| 02. Case Administration | 2.2 | $649.00 | - | $0.00 |
| **Subtotal - P. Barnes** | **177.3** | **$52,303.50** | **47.3** | **$13,953.50** |
| **P. Chadwick** | | | | |
| 01. Asset Acquisition/Disposition | 55.9 | $37,453.00 | 73.3 | $49,111.00 |
| 02. Case Administration | 13.3 | $8,911.00 | - | $0.00 |
| 04. DIP Financing | 3.6 | $2,412.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 11.4 | $7,638.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 8.6 | $5,762.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 13.3 | $8,911.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 104.8 | $70,216.00 | 2.8 | $1,876.00 |
| 12. Statements and Schedules | 23.4 | $15,678.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 2.8 | $1,876.00 | - | $0.00 |
| 18. Operating and Other Reports | 14.3 | $9,581.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 67.2 | $45,024.00 | - | $0.00 |
| 20. Projections/Business Plan/Othe | 27.8 | $18,626.00 | - | $0.00 |
| 23. Environmental Matters | 133.4 | $89,378.00 | 7.5 | $5,025.00 |
| 25. Litigation | | | 3.2 | $2,144.00 |
| 26. Tax Issues | 36.6 | $24,522.00 | 1.8 | $1,206.00 |
| 27. Plan of Reorg/Discl Stmt | 201.3 | $134,871.00 | 3.1 | $2,077.00 |
| **Subtotal - P. Chadwick** | **717.7** | **$480,859.00** | **91.7** | **$61,439.00** |
| **P. Foose** | | | | |
| 02. Case Administration | 1.5 | $180.00 | - | $0.00 |
| **Subtotal - P. Foose** | **1.5** | **$180.00** | **-** | **$0.00** |
| **R. Manzo** | | | | |
| 01. Asset Acquisition/Disposition | 19.6 | $16,660.00 | 10.9 | $9,265.00 |
| 02. Case Administration | 18.2 | $15,470.00 | - | $0.00 |
| 03. General | 3.6 | $3,060.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 9.6 | $8,160.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 7.8 | $6,630.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 1.1 | $935.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 0.7 | $595.00 | - | $0.00 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **R. Manzo - continued** | | | | |
| 12. Statements and Schedules | 1.8 | $1,530.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 27.4 | $23,290.00 | - | $0.00 |
| 20. Projections/Business Plan/Othe | 16.8 | $14,280.00 | - | $0.00 |
| 23. Environmental Matters | 59.3 | $50,405.00 | - | $0.00 |
| 26. Tax Issues | 7.6 | $6,460.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 113.4 | $96,390.00 | - | $0.00 |
| **Subtotal - R. Manzo** | **286.9** | **$243,865.00** | **10.9** | **$9,265.00** |
| | | | | |
| **S. Cheffetz** | | | | |
| 11. Claim Analysis/Accounting | 44.2 | $14,807.00 | - | $0.00 |
| 23. Environmental Matters | 1.5 | $502.50 | - | $0.00 |
| **Subtotal - S. Cheffetz** | **45.8** | **$15,309.50** | **-** | **$0.00** |
| | | | | |
| **Grand Total** | **7,333.9** | **$3,307,178.50** | **2,130.1** | **$887,693.00** |

**Old Carco, LLC, (f/k/a Chrysler, LLC), et. al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional by Task**
**For the Period 4/30/2009 through 4/30/2010**

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **A. Chonich** | | | | |
| 01. Asset Acquisition/Disposition | 209.3 | $66,871.50 | 1,420.3 | $459,542.50 |
| 02. Case Administration | 17.9 | $5,834.50 | 1.2 | $402.00 |
| 03. General | 225.5 | $71,558.50 | 1.4 | $469.00 |
| 04. DIP Financing | 6.9 | $2,173.50 | - | $0.00 |
| 05. Professional Retention/Fee App | 406.8 | $130,778.00 | 4.5 | $1,417.50 |
| 06. Attend Hearings/Related Activi | 2.1 | $661.50 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 7.3 | $2,299.50 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 21.6 | $6,804.00 | 7.1 | $2,242.50 |
| 11. Claim Analysis/Accounting | 71.9 | $22,880.50 | 1.6 | $536.00 |
| 12. Statements and Schedules | 1.9 | $598.50 | - | $0.00 |
| 18. Operating and Other Reports | 24.3 | $7,654.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 250.3 | $79,458.50 | 35.8 | $11,965.00 |
| 20. Projections/Business Plan/Othe | 77.2 | $24,318.00 | - | $0.00 |
| 23. Environmental Matters | 25.0 | $7,875.00 | 35.5 | $11,676.50 |
| 24. Liquidation Analysis | 4.3 | $1,354.50 | 1.2 | $402.00 |
| 26. Tax Issues | 38.0 | $12,034.00 | 7.9 | $2,558.50 |
| **Subtotal - A. Chonich** | **1,390.3** | **$443,154.50** | **1,516.5** | **$491,211.50** |
| **B. Aronson** | | | | |
| 01. Asset Acquisition/Disposition | 819.2 | $368,365.50 | 862.2 | $386,053.00 |
| 02. Case Administration | 16.5 | $7,417.50 | - | $0.00 |
| 03. General | 21.9 | $9,636.00 | - | $0.00 |
| 04. DIP Financing | 7.0 | $3,080.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 7.5 | $3,300.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 73.5 | $32,340.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 3.1 | $1,364.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 23.4 | $10,296.00 | - | $0.00 |
| 12. Statements and Schedules | 4.4 | $1,976.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 32.9 | $14,476.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 75.8 | $33,414.50 | 6.3 | $2,772.00 |
| 17. Analysis of Historical Results | 7.3 | $3,212.00 | - | $0.00 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **B. Aronson - continued** | | | | |
| 18. Operating and Other Reports | 24.2 | $11,008.00 | 1.0 | $440.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 184.2 | $82,158.00 | 63.9 | $29,156.00 |
| 20. Projections/Business Plan/Othe | 15.1 | $6,644.00 | - | $0.00 |
| 23. Environmental Matters | 468.1 | $212,091.50 | 77.1 | $34,226.50 |
| 24. Liquidation Analysis | 9.6 | $4,224.00 | - | $0.00 |
| 26. Tax Issues | 100.4 | $44,583.50 | 14.1 | $6,431.50 |
| 27. Plan of Reorg/Discl Stmt | 3.5 | $1,627.50 | - | $0.00 |
| 30. Exit Financing | 3.3 | $1,452.00 | - | $0.00 |
| **Subtotal - B. Aronson** | **1,900.9** | **$852,666.00** | **1,024.6** | **$459,079.00** |
| | | | | |
| **C. Hoang** | | | | |
| 01. Asset Acquisition/Disposition | 3.6 | $1,206.00 | 14.8 | $4,958.00 |
| 02. Case Administration | 3.4 | $1,139.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 2.6 | $871.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 8.8 | $2,948.00 | 6.9 | $2,311.50 |
| 23. Environmental Matters | 355.6 | $119,126.00 | 24.7 | $8,274.50 |
| **Subtotal - C. Hoang** | **374.0** | **$125,290.00** | **46.4** | **$15,544.00** |
| | | | | |
| **D. Quackenbush** | | | | |
| 01. Asset Acquisition/Disposition | 24.5 | $14,622.00 | 5.6 | $3,360.00 |
| 02. Case Administration | 26.3 | $15,561.00 | - | $0.00 |
| 03. General | 35.9 | $20,514.00 | - | $0.00 |
| 04. DIP Financing | 9.1 | $5,187.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 21.0 | $11,970.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 4.5 | $2,565.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 1.0 | $570.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 4.6 | $2,637.00 | 4.8 | $2,880.00 |
| 10. Recovery/SubCon/Lien Analysis | 24.9 | $14,940.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 6.5 | $3,900.00 | - | $0.00 |
| 12. Statements and Schedules | 3.0 | $1,770.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 3.0 | $1,800.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 70.7 | $42,420.00 | - | $0.00 |
| 18. Operating and Other Reports | 92.2 | $55,320.00 | 1.5 | $900.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 477.6 | $274,909.50 | 1.4 | $840.00 |
| 20. Projections/Business Plan/Othe | 41.8 | $25,080.00 | - | $0.00 |
| 23. Environmental Matters | 1.4 | $840.00 | - | $0.00 |
| 26. Tax Issues | 2.8 | $1,635.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 86.7 | $52,020.00 | - | $0.00 |
| 30. Exit Financing | 10.3 | $5,871.00 | - | $0.00 |
| 32. Document Review | 5.2 | $2,964.00 | - | $0.00 |
| **Subtotal - D. Quackenbush** | **953.0** | **$557,095.50** | **13.3** | **$7,980.00** |

| Professional | DIP Collateral | | FLL Collateral | |
| --- | --- | --- | --- | --- |
| | Hours | Fees | Hours | Fees |
| **D. Tsui** | | | | |
| 01. Asset Acquisition/Disposition | 266.2 | $89,622.75 | 239.8 | $80,738.00 |
| 02. Case Administration | 34.4 | $11,834.00 | - | $0.00 |
| 03. General | 53.0 | $18,085.00 | - | $0.00 |
| 04. DIP Financing | 4.4 | $1,474.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 7.5 | $2,512.50 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 215.4 | $72,142.25 | 17.0 | $5,695.00 |
| 08. Interaction/Mtgs w Creditors | 16.2 | $5,427.00 | 1.3 | $468.00 |
| 10. Recovery/SubCon/Lien Analysis | 0.9 | $301.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 405.8 | $141,768.00 | 3.0 | $1,017.50 |
| 12. Statements and Schedules | 57.5 | $19,595.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 89.9 | $30,264.00 | 5.9 | $1,976.50 |
| 17. Analysis of Historical Results | 3.0 | $1,005.00 | - | $0.00 |
| 18. Operating and Other Reports | 24.7 | $8,274.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 520.8 | $180,323.00 | 14.7 | $5,137.00 |
| 20. Projections/Business Plan/Othe | 8.0 | $2,680.00 | - | $0.00 |
| 23. Environmental Matters | 63.6 | $21,331.00 | - | $0.00 |
| 24. Liquidation Analysis | 139.8 | $46,833.00 | - | $0.00 |
| 26. Tax Issues | 607.9 | $211,524.00 | 63.9 | $22,384.00 |
| 27. Plan of Reorg/Discl Stmt | 5.0 | $1,730.00 | - | $0.00 |
| 30. Exit Financing | 3.6 | $1,206.00 | - | $0.00 |
| 33. Research | 1.9 | $636.50 | - | $0.00 |
| **Subtotal - D. Tsui** | **2,529.4** | **$868,569.00** | **345.6** | **$117,416.00** |
| **E. Ordway** | | | | |
| 03. General | 2.0 | $1,520.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 1.2 | $912.00 | - | $0.00 |
| **Subtotal - E. Ordway** | **3.2** | **$2,432.00** | **-** | **$0.00** |
| **J. Jacob** | | | | |
| 01. Asset Acquisition/Disposition | 96.7 | $44,271.00 | 87.6 | $40,815.00 |
| 02. Case Administration | 68.7 | $33,129.00 | - | $0.00 |
| 03. General | 17.5 | $7,911.00 | - | $0.00 |
| 04. DIP Financing | 94.3 | $43,348.50 | 1.9 | $855.00 |
| 05. Professional Retention/Fee App | 20.7 | $9,315.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 5.7 | $2,565.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 230.2 | $103,567.50 | 9.3 | $4,306.50 |
| 08. Interaction/Mtgs w Creditors | 6.4 | $2,920.50 | 6.5 | $3,217.50 |
| 09. Employee Issues/KEIP | 15.1 | $7,047.00 | - | $0.00 |
| 10. Recovery/SubCon/Lien Analysis | 68.5 | $31,698.00 | 21.1 | $10,066.50 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **J. Jacob - continued** | | | | |
| 11. Claim Analysis/Accounting | 321.1 | $150,907.50 | 1.1 | $495.00 |
| 12. Statements and Schedules | 100.6 | $46,926.00 | 2.6 | $1,170.00 |
| 13. Intercompany Transactions/Bal | 0.7 | $346.50 | - | $0.00 |
| 14. Executory Contracts/Leases | 131.6 | $59,454.00 | 0.5 | $225.00 |
| 17. Analysis of Historical Results | 38.1 | $17,145.00 | - | $0.00 |
| 18. Operating and Other Reports | 85.1 | $40,257.00 | 4.5 | $2,227.50 |
| 19. Cash Flow/Cash Mgmt Liquidity | 731.8 | $340,551.00 | 40.9 | $19,867.50 |
| 20. Projections/Business Plan/Othe | 67.2 | $30,631.50 | - | $0.00 |
| 21. Reclamation/503(b)(9) | 5.5 | $2,623.50 | - | $0.00 |
| 22. Pref/Avoidance Actions | 4.2 | $1,890.00 | - | $0.00 |
| 23. Environmental Matters | 8.7 | $4,185.00 | - | $0.00 |
| 24. Liquidation Analysis | 18.1 | $8,145.00 | - | $0.00 |
| 25. Litigation | 11.8 | $5,328.00 | - | $0.00 |
| 26. Tax Issues | 274.0 | $127,984.50 | 46.3 | $22,450.50 |
| 27. Plan of Reorg/Discl Stmt | 28.9 | $14,049.00 | - | $0.00 |
| 32. Document Review | 1.4 | $630.00 | - | $0.00 |
| **Subtotal - J. Jacob** | **2,452.6** | **$1,136,826.00** | **222.3** | **$105,696.00** |
| | | | | |
| **J. Kiley** | | | | |
| 02. Case Administration | 1.9 | $940.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 230.0 | $113,850.00 | - | $0.00 |
| 18. Operating and Other Reports | 62.6 | $30,987.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 60.8 | $30,096.00 | - | $0.00 |
| **Subtotal - J. Kiley** | **355.3** | **$175,873.50** | **-** | **$0.00** |
| | | | | |
| **J. Rooney** | | | | |
| 01. Asset Acquisition/Disposition | 147.8 | $76,293.00 | 707.8 | $372,171.00 |
| 02. Case Administration | 64.5 | $34,332.00 | 0.4 | $216.00 |
| 03. General | 36.8 | $18,789.00 | 2.0 | $1,038.00 |
| 04. DIP Financing | 11.0 | $5,610.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 17.6 | $8,976.00 | 2.2 | $1,122.00 |
| 06. Attend Hearings/Related Activi | 15.7 | $8,130.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 154.3 | $78,693.00 | 2.3 | $1,173.00 |
| 08. Interaction/Mtgs w Creditors | 72.3 | $36,888.00 | 23.2 | $11,910.00 |
| 11. Claim Analysis/Accounting | 2.5 | $1,293.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 2.5 | $1,284.00 | - | $0.00 |
| 17. Analysis of Historical Results | 0.9 | $459.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 15.0 | $7,677.00 | 0.5 | $261.00 |
| 20. Projections/Business Plan/Othe | 30.6 | $15,606.00 | - | $0.00 |
| 23. Environmental Matters | 30.0 | $15,525.00 | 27.0 | $14,445.00 |
| 24. Liquidation Analysis | 79.1 | $40,341.00 | - | $0.00 |
| 26. Tax Issues | 11.3 | $5,763.00 | 12.6 | $6,492.00 |
| 27. Plan of Reorg/Discl Stmt | 12.3 | $6,543.00 | - | $0.00 |
| **Subtotal - J. Rooney** | **704.2** | **$362,202.00** | **778.0** | **$408,828.00** |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **J. Ruth** | | | | |
| 01. Asset Acquisition/Disposition | 267.7 | $120,465.00 | 43.3 | $19,485.00 |
| 02. Case Administration | 112.2 | $50,490.00 | - | $0.00 |
| 03. General | 28.8 | $12,960.00 | - | $0.00 |
| 04. DIP Financing | 5.3 | $2,385.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 4.5 | $2,025.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 13.6 | $6,120.00 | 2.8 | $1,260.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 91.3 | $41,085.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 5.9 | $2,655.00 | - | $0.00 |
| 09. Employee Issues/KEIP | 40.7 | $18,315.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 43.7 | $19,665.00 | - | $0.00 |
| 12. Statements and Schedules | 655.1 | $294,795.00 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 22.4 | $10,080.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 207.8 | $93,510.00 | 5.9 | $2,655.00 |
| 18. Operating and Other Reports | 31.2 | $14,040.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 81.5 | $36,675.00 | - | $0.00 |
| 20. Projections/Business Plan/Othe | 2.6 | $1,170.00 | - | $0.00 |
| 23. Environmental Matters | 19.5 | $8,775.00 | - | $0.00 |
| 24. Liquidation Analysis | 12.9 | $5,805.00 | - | $0.00 |
| 25. Litigation | 2.0 | $900.00 | - | $0.00 |
| 26. Tax Issues | 117.1 | $52,695.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 167.2 | $75,240.00 | 18.4 | $8,280.00 |
| **Subtotal - J. Ruth** | **1,933.0** | **$869,850.00** | **70.4** | **$31,680.00** |

| Professional | DIP Collateral | | FLL Collateral | |
| --- | --- | --- | --- | --- |
| | Hours | Fees | Hours | Fees |
| **K. Pike** | | | | |
| 02. Case Administration | 9.4 | $2,779.50 | - | $0.00 |
| 03. General | 0.4 | $114.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 1,179.0 | $347,358.00 | - | $0.00 |
| 23. Environmental Matters | 18.7 | $5,329.50 | - | $0.00 |
| 26. Tax Issues | 1.6 | $456.00 | - | $0.00 |
| **Subtotal - K. Pike** | **1,209.1** | **$356,037.00** | **-** | **$0.00** |
| **K. Schweninger** | | | | |
| 02. Case Administration | 10.5 | $5,250.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 455.8 | $227,900.00 | - | $0.00 |
| 23. Environmental Matters | 0.3 | $150.00 | - | $0.00 |
| **Subtotal - K. Schweninger** | **466.6** | **$233,300.00** | **-** | **$0.00** |
| **L. Hirschman** | | | | |
| 03. General | 3.6 | $396.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 133.7 | $15,182.00 | - | $0.00 |
| **Subtotal - L. Hirschman** | **137.3** | **$15,578.00** | **-** | **$0.00** |
| **M. Desalvio** | | | | |
| 01. Asset Acquisition/Disposition | 2.0 | $340.00 | - | $0.00 |
| 33. Research | 40.3 | $6,851.00 | - | $0.00 |
| **Subtotal - M. Desalvio** | **42.3** | **$7,191.00** | **-** | **$0.00** |
| **M. Markevics** | | | | |
| 02. Case Administration | 3.2 | $1,600.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 180.3 | $90,150.00 | - | $0.00 |
| **Subtotal - M. Markevics** | **183.5** | **$91,750.00** | **-** | **$0.00** |
| **M. O'Neal** | | | | |
| 01. Asset Acquisition/Disposition | 522.5 | $133,787.00 | 561.8 | $144,544.00 |
| 02. Case Administration | 70.2 | $18,000.00 | - | $0.00 |
| 03. General | 19.5 | $4,867.50 | 1.1 | $275.00 |
| 04. DIP Financing | 19.4 | $4,850.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 86.9 | $21,725.00 | 2.9 | $725.00 |
| 08. Interaction/Mtgs w Creditors | 13.5 | $3,375.00 | 2.3 | $575.00 |
| 09. Employee Issues/KEIP | 6.4 | $1,600.00 | - | $0.00 |
| 10. Recovery/SubCon/Lien Analysis | 23.3 | $5,825.00 | 18.6 | $4,650.00 |
| 11. Claim Analysis/Accounting | 90.2 | $23,040.00 | - | $0.00 |
| 12. Statements and Schedules | 50.7 | $12,675.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 34.3 | $8,699.00 | 4.5 | $1,125.00 |
| 18. Operating and Other Reports | 34.3 | $8,621.00 | 3.2 | $800.00 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **M. O'Neal - continued** | | | | |
| 19. Cash Flow/Cash Mgmt Liquidity | 209.4 | $52,940.00 | 9.8 | $2,504.00 |
| 20. Projections/Business Plan/Othe | 130.7 | $32,723.00 | 4.7 | $1,175.00 |
| 23. Environmental Matters | 767.4 | $199,388.00 | 171.9 | $44,017.00 |
| 24. Liquidation Analysis | 26.7 | $6,675.00 | 4.3 | $1,075.00 |
| 26. Tax Issues | 41.2 | $10,456.00 | 6.4 | $1,728.00 |
| 27. Plan of Reorg/Discl Stmt | 1.7 | $425.00 | - | $0.00 |
| 28. Valuation Analysis | 4.6 | $1,150.00 | 13.2 | $3,300.00 |
| 31. Planning | 7.2 | $1,800.00 | - | $0.00 |
| 32. Document Review | 19.2 | $4,800.00 | - | $0.00 |
| **Subtotal - M. O'Neal** | **2,179.3** | **$557,421.50** | **804.7** | **$206,493.00** |
| | | | | |
| **N. Backer** | | | | |
| 05. Professional Retention/Fee App | 33.2 | $3,680.00 | - | $0.00 |
| **Subtotal - N. Backer** | **33.2** | **$3,680.00** | **-** | **$0.00** |
| | | | | |
| **O. Freidzon** | | | | |
| 33. Research | 20.5 | $5,125.00 | - | $0.00 |
| **Subtotal - O. Freidzon** | **20.5** | **$5,125.00** | **-** | **$0.00** |
| | | | | |
| **P. Barnes** | | | | |
| 01. Asset Acquisition/Disposition | 578.4 | $170,628.00 | 131.2 | $38,704.00 |
| 02. Case Administration | 3.0 | $885.00 | - | $0.00 |
| 03. General | 8.6 | $2,537.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 8.6 | $2,537.00 | - | $0.00 |
| 12. Statements and Schedules | 10.4 | $3,068.00 | - | $0.00 |
| 23. Environmental Matters | 44.9 | $13,245.50 | - | $0.00 |
| 26. Tax Issues | 0.9 | $265.50 | - | $0.00 |
| 28. Valuation Analysis | 2.1 | $619.50 | - | $0.00 |
| **Subtotal - P. Barnes** | **656.9** | **$193,785.50** | **131.2** | **$38,704.00** |
| | | | | |
| **P. Chadwick** | | | | |
| 01. Asset Acquisition/Disposition | 351.2 | $222,015.50 | 207.7 | $133,111.00 |
| 02. Case Administration | 69.3 | $43,911.00 | - | $0.00 |
| 03. General | 19.0 | $11,875.00 | - | $0.00 |
| 04. DIP Financing | 26.5 | $16,724.50 | - | $0.00 |
| 05. Professional Retention/Fee App | 44.3 | $28,200.50 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 54.6 | $34,512.00 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 58.4 | $36,500.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 151.6 | $95,348.50 | 24.1 | $15,062.50 |
| 09. Employee Issues/KEIP | 5.7 | $3,562.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 196.0 | $127,216.00 | 4.8 | $3,126.00 |
| 12. Statements and Schedules | 84.3 | $53,740.50 | - | $0.00 |
| 14. Executory Contracts/Leases | 12.2 | $7,751.00 | - | $0.00 |
| 18. Operating and Other Reports | 27.3 | $17,706.00 | - | $0.00 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | **Hours** | **Fees** | **Hours** | **Fees** |
| **P. Chadwick - continued** | | | | |
| 19. Cash Flow/Cash Mgmt Liquidity | 254.8 | $162,274.00 | 1.6 | $1,000.00 |
| 20. Projections/Business Plan/Othe | 117.5 | $74,688.50 | 5.0 | $3,125.00 |
| 21. Reclamation/503(b)(9) | 1.2 | $750.00 | - | $0.00 |
| 23. Environmental Matters | 209.9 | $137,190.50 | 9.9 | $6,525.00 |
| 24. Liquidation Analysis | 16.3 | $10,187.50 | - | $0.00 |
| 25. Litigation | 22.8 | $14,250.00 | 4.8 | $3,144.00 |
| 26. Tax Issues | 115.3 | $73,709.50 | 9.9 | $6,268.50 |
| 27. Plan of Reorg/Discl Stmt | 289.3 | $189,871.00 | 3.1 | $2,077.00 |
| 30. Exit Financing | 15.7 | $9,812.50 | - | $0.00 |
| **Subtotal - P. Chadwick** | **2,143.2** | **$1,371,796.50** | **270.9** | **$173,439.00** |
| | | | | |
| **P. Foose** | | | | |
| 02. Case Administration | 1.5 | $180.00 | - | $0.00 |
| **Subtotal - P. Foose** | **1.5** | **$180.00** | **-** | **$0.00** |
| | | | | |
| **R. Boyce** | | | | |
| 01. Asset Acquisition/Disposition | 222.0 | $27,750.00 | 38.7 | $4,837.50 |
| 02. Case Administration | 13.5 | $1,687.50 | - | $0.00 |
| 03. General | 21.9 | $2,737.50 | - | $0.00 |
| 05. Professional Retention/Fee App | 0.5 | $62.50 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 1.0 | $125.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 20.7 | $2,587.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 4.5 | $562.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 1.9 | $237.50 | - | $0.00 |
| 26. Tax Issues | 148.8 | $18,593.75 | 5.1 | $631.25 |
| **Subtotal - R. Boyce** | **434.8** | **$54,343.75** | **43.8** | **$5,468.75** |
| | | | | |
| **R. Manzo** | | | | |
| 01. Asset Acquisition/Disposition | 223.8 | $178,999.00 | 32.4 | $26,357.50 |
| 02. Case Administration | 80.8 | $65,237.00 | 2.3 | $1,828.50 |
| 03. General | 8.4 | $6,876.00 | - | $0.00 |
| 04. DIP Financing | 1.6 | $1,272.00 | - | $0.00 |
| 05. Professional Retention/Fee App | 18.6 | $15,315.00 | - | $0.00 |
| 06. Attend Hearings/Related Activi | 99.9 | $79,849.50 | 3.3 | $2,623.50 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 201.6 | $160,332.50 | 0.3 | $238.50 |
| 08. Interaction/Mtgs w Creditors | 145.4 | $115,593.00 | 27.3 | $21,703.50 |
| 11. Claim Analysis/Accounting | 29.2 | $23,252.50 | - | $0.00 |
| 12. Statements and Schedules | 14.8 | $11,865.00 | - | $0.00 |
| 14. Executory Contracts/Leases | 1.3 | $1,033.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 120.4 | $97,225.00 | 6.4 | $5,088.00 |
| 20. Projections/Business Plan/Othe | 45.5 | $37,096.50 | - | $0.00 |
| 23. Environmental Matters | 92.8 | $77,037.50 | 1.2 | $954.00 |
| 24. Liquidation Analysis | 242.9 | $193,105.50 | - | $0.00 |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **R. Manzo - continued** | | | | |
| 25. Litigation | 22.6 | $17,967.00 | - | $0.00 |
| 26. Tax Issues | 33.4 | $26,971.00 | - | $0.00 |
| 27. Plan of Reorg/Discl Stmt | 313.7 | $255,628.50 | 8.8 | $6,996.00 |
| 31. Planning | 54.7 | $43,486.50 | - | $0.00 |
| 32. Document Review | 22.8 | $18,126.00 | - | $0.00 |
| **Subtotal - R. Manzo** | **1,774.2** | **$1,426,268.50** | **82.0** | **$65,789.50** |
| | | | | |
| **R. Wintersteen** | | | | |
| 03. General | 4.2 | $1,344.00 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 43.6 | $13,952.00 | - | $0.00 |
| **Subtotal - R. Wintersteen** | **47.8** | **$15,296.00** | **-** | **$0.00** |
| | | | | |
| **S. Tajuddin** | | | | |
| 01. Asset Acquisition/Disposition | 156.7 | $57,195.50 | - | $0.00 |
| 02. Case Administration | 8.5 | $3,102.50 | - | $0.00 |
| 03. General | 25.1 | $9,161.50 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 5.8 | $2,117.00 | - | $0.00 |
| 11. Claim Analysis/Accounting | 16.2 | $5,913.00 | - | $0.00 |
| 12. Statements and Schedules | 15.7 | $5,730.50 | - | $0.00 |
| 13. Intercompany Transactions/Bal | 0.5 | $182.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 78.6 | $28,689.00 | - | $0.00 |
| 24. Liquidation Analysis | 56.6 | $20,659.00 | - | $0.00 |
| 26. Tax Issues | 4.0 | $1,460.00 | - | $0.00 |
| 30. Exit Financing | 1.0 | $365.00 | - | $0.00 |
| **Subtotal - S. Tajuddin** | **368.7** | **$134,575.50** | **-** | **$0.00** |
| | | | | |
| **S. Mclean** | | | | |
| 23. Environmental Matters | - | $0.00 | 223.0 | $78,050.00 |
| **Subtotal - S. Mclean** | **-** | **$0.00** | **223.0** | **$78,050.00** |
| | | | | |
| **T. Sell** | | | | |
| 01. Asset Acquisition/Disposition | 1.1 | $445.50 | 1.8 | $729.00 |
| 02. Case Administration | 13.7 | $5,548.50 | - | $0.00 |
| 05. Professional Retention/Fee App | 19.1 | $7,735.50 | - | $0.00 |
| 07. Interaction/Mtgs w Dbtrs/Couns | 16.2 | $6,561.00 | - | $0.00 |
| 08. Interaction/Mtgs w Creditors | 3.5 | $1,417.50 | - | $0.00 |
| 11. Claim Analysis/Accounting | 58.5 | $23,692.50 | - | $0.00 |
| 14. Executory Contracts/Leases | 5.5 | $2,227.50 | - | $0.00 |
| 19. Cash Flow/Cash Mgmt Liquidity | 319.9 | $129,559.50 | - | $0.00 |
| 21. Reclamation/503(b)(9) | 3.6 | $1,458.00 | - | $0.00 |
| 32. Document Review | 1.9 | $769.50 | - | $0.00 |
| **Subtotal - T. Sell** | **443.0** | **$179,415.00** | **1.8** | **$729.00** |

| Professional | DIP Collateral | | FLL Collateral | |
|---|---|---|---|---|
| | Hours | Fees | Hours | Fees |
| **S. Cheffetz** | | | | |
| 11. Claim Analysis/Accounting | 44.2 | $14,807.00 | - | $0.00 |
| 23. Environmental Matters | 1.5 | $502.50 | - | $0.00 |
| **Subtotal - S. Cheffetz** | **45.8** | **$15,309.50** | **-** | **$0.00** |
| **Grand Total** | **22,783.5** | **$ 10,055,011.25** | **5,574.5** | **$ 2,206,107.75** |

**EXHIBIT B**

**Old Carco, LLC, (f/k/a Chrysler, LLC), et. al.**
**Capstone Advisory Group, LLC**
**Expenses Summarized by Expense Type**
**For the Periods 1/1/10 – 4/30/10 and 4/30/09 – 4/30/10**

| Disbursement | Third Interim Period (1/1/10 - 4/30/10) | | Final Fee Period (4/30/09 - 4/30/10) | |
|---|---|---|---|---|
| | DIP Collateral Amount | FLL Collateral Amount | DIP Collateral Amount | FLL Collateral Amount |
| Airfare/Train | $133,227.32 | $13,413.00 | $390,443.58 | $28,574.32 |
| Auto Rental/Taxi | $45,196.26 | $5,863.20 | $142,252.51 | $12,530.87 |
| Copies | $0.00 | $0.00 | $409.33 | $118.54 |
| Hotel | $59,433.92 | $3,588.68 | $211,368.32 | $11,294.31 |
| Meals | $17,216.60 | $1,419.11 | $68,956.55 | $3,053.31 |
| Mileage | $4,157.85 | $64.00 | $13,463.85 | $2,340.45 |
| Office Supplies | $13,669.65 | $0.00 | $37,090.53 | $575.03 |
| Other | $2,381.16 | $87.05 | $14,984.53 | $93.55 |
| Parking/Tolls | $2,520.85 | $374.00 | $9,929.55 | $616.25 |
| Postage/FedEx | $10,436.82 | $0.00 | $13,744.00 | $237.40 |
| Research | $0.00 | $0.00 | $647.79 | $0.00 |
| Scans | $0.00 | $0.00 | $378.57 | $0.00 |
| Telecom | $18,633.12 | $560.65 | $47,460.36 | $644.81 |
| **TOTAL** | **$306,873.55** | **$25,369.69** | **$951,129.47** | **$60,078.84** |
| **COMBINED TOTAL** | **$332,243.24** | | **$1,011,208.31** | |

**EXHIBIT C**

CAPSTONE ADVISORY GROUP, LLC
1020 19th Street, NW
Suite 350
Washington, DC 20036
Telephone:  (202) 507-7101
Facsimile:  (202) 507-7118
Peter Chadwick

Financial Advisor for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11
                                        :
Old Carco LLC                           :   Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), et al.,           :
                                        :   (Jointly Administered)
                        Debtors.        :
                                        :
-------------------------------------------------------------x
```

**CERTIFICATION OF PETER CHADWICK**

I, Peter Chadwick, hereby certify as follows:

1.  I am an Executive Director at the applicant firm, Capstone Advisory Group, LLC.  I submit this certification with respect to the Third Interim and Final Application of Capstone Advisory Group, LLC, Financial Advisors for Debtors and Debtors in Possession, for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred for the Period April 30, 2009 through April 30, 2010 (the "Application").[1]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Application.

2. I make this certification in accordance with General Order M-151, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

3. In connection therewith, I hereby certify that:

a) I have read the Application;

b) To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Local Guidelines and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines");

c) Except to the extent that fees or disbursements are prohibited by the Local Guidelines or the U.S. Trustee Guidelines, the fees and disbursements sought are billed at rates customarily employed by Capstone Advisory Group, LLC and generally accepted by Capstone Advisory Group LLC's clients;

d) In providing a reimbursable service, Capstone Advisory Group, LLC does not make a profit on that service, whether the service is performed by Capstone Advisory Group, LLC in house or through a third party; and

e) The Debtors, the United States Trustee for the Southern District of New York, counsel to the Committee, counsel to the agent for the First Lien Lenders and counsel to each of the DIP Lenders will each be provided with a copy of the Application simultaneously with the filing thereof, and will have at least ten days to review such Application prior to any objection deadline with respect thereto.

2

Dated: June 29, 2010
      Washington, DC

/s/ Peter Chadwick
_____

Peter Chadwick
CAPSTONE ADVISORY GROUP, LLC
1020 19th Street, NW
Suite 350
Washington, DC 20036
Telephone:  (202) 507-7101
Facsimile:  (202) 507-7118

Financial Advisor for Debtors
and Debtors in Possession

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11
                                                            :
Old Carco LLC                                               :    Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), *et al.*,                             :
                                                            :    (Jointly Administered)
                                Debtors.                    :
                                                            :
------------------------------------------------------------x

**ORDER APPROVING THIRD INTERIM AND FINAL APPLICATION OF CAPSTONE
ADVISORY GROUP, LLC, AS FINANCIAL ADVISORS FOR DEBTORS AND
DEBTORS IN POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF
ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD
APRIL 30, 2009 THROUGH APRIL 30, 2010**

Upon the Third Interim and Final Application of Capstone Advisory Group, LLC,

Financial Advisors for Debtors and Debtors in Possession, for Allowance of Compensation for

Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred for the Period April 30, 2009 through April 30, 2010 (the "Application"),[1] the Court

having reviewed the Application, the certification by Peter Chadwick and having heard the

statements of counsel regarding the relief requested in the Application at a hearing before the

Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); (c) notice of the Application and the Hearing was sufficient under the

circumstances; (d) the compensation requested in the Application is reasonable and for actual

and necessary services rendered by Capstone Advisory Group, LLC during the Compensation

Period and the expenses for which reimbursement is sought in the Application are actual and

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings given to them in the
Application.

necessary expenses; (e) the Application fully complies with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and the Guidelines and (f) cause exists for the granting of the

relief requested in the Application;

IT IS HEREBY ORDERED THAT:

1.    (a) Capstone Advisory Group, LLC is awarded, on an interim and final basis,

compensation for professional services rendered during the Third Interim Compensation

Period in the amount of $4,194,871.50 and reimbursement for actual and necessary

expenses incurred by Capstone Advisory Group, LLC during the Third Interim

Compensation Period in the amount of $332,243.24.


(b) With respect to the Third Interim Compensation Period, to the extent not previously

paid, the First Lien Lender Fees in the amount of $887,693.00, the First Lien Lender

Expenses in the amount of $25,369.69, the DIP Lender Fees in the amount of

$3,307,178.50 and the DIP Lender Expenses in the amount of $306,873.55 shall be paid

by the Liquidation Trust in accordance with the Plan and the Winddown Orders.


2.    (a) Capstone Advisory Group, LLC is awarded on a final basis compensation for

professional services rendered during the Aggregate Compensation Period (which

includes the Third Interim Compensation Period) in the amount of $29,251,119.00[2] and

reimbursement for actual and necessary expenses incurred by Capstone Advisory Group,

LLC during the Aggregate Compensation Period in the amount of $1,007,661.46[3].

---

[2] The amount excludes the voluntary reduction of $10,000 taken in the first interim period.

[3] The amount excludes the voluntary reduction of $2,489.89 taken in the first interim period and $1,106.93 taken in the second interim period.

(b) With respect to the Aggregate Compensation Period, to the extent not previously paid, the First Lien Lender Fees in the amount of $2,206,107.75, the First Lien Lender Expenses in the amount of $60,078.84, the DIP Lender Fees in the amount of $27,045,011.25 (which includes the Transaction Fee) and the DIP Lender Expenses in the amount of $947,582.62 shall be paid by the Liquidation Trust in accordance with the Plan and the Winddown Orders.

3.    Capstone Advisory Group, LLC is authorized to invoice and seek payment from the Liquidation Trust for the fees and actual and necessary expenses incurred in connection with the preparation of the Final Application.

4.    This Court shall retain jurisdiction to hear and determine all matters arising from, in connection with or related to the implementation, interpretation or enforcement of this Order.

Dated: New York, New York
_____, 2010
_____
UNITED STATES BANKRUPTCY JUDGE

**Old Carco LLC (f/k/a Chrysler LLC),** *et al.***,**
**Chapter 11 Case No. 09-50002 (AJG)**

**FINAL PROFESSIONAL FEE PERIOD**
**Fee Period:  April 30, 2009 Through April 30, 2010**

| APPLICANT | DATE AND DOCKET NO. | FINAL FEES SOUGHT | FINAL FEES AWARDED | INTERIM FEE HOLDBACK (10%) | FINAL FEES ALLOWED | FINAL EXPENSES SOUGHT | FINAL EXPENSES AWARDED |
|---|---|---|---|---|---|---|---|
| CAPSTONE ADVISORY GROUP, LLC<br>Financial Advisor to Debtors and Debtors in Possession | 6/29/10 D.I. | $12,251,119.00 | $12,251,119.00 | | $12,251,119.00 | $1,007,611.46 | $1,007,611.46 |

| Old Carco LLC (f/k/a Chrysler LLC), *et al.*,<br>Chapter 11 Case No. 09-50002 (AJG)<br><br>**FINAL PROFESSIONAL FEE PERIOD**<br>**All Fee Periods** | | | | | | |
|---|---|---|---|---|---|---|
| APPLICANT | FINAL FEES SOUGHT | FINAL FEES AWARDED | INTERIM FEE HOLDBACK (10%) | FINAL FEES ALLOWED | FINAL EXPENSES SOUGHT | FINAL EXPENSES AWARDED |
| CAPSTONE ADVISORY GROUP, LLC<br>Financial Advisor to Debtors and Debtors in Possession | $12,251,119.00 | $12,251,119.00 | | $12,251,119.00 | $1,007,611.46 | $1,007,611.46 |

**DATE:**                                                                 **INITIALS: ___USBJ**

# **EXHIBIT D**

IN RE NORTHWEST AIRLINES, CASE NO. 05-17930

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In re:                                                          :        **Chapter 11**

                                                               :        **Case No. 05-17930 (ALG)**

**NORTHWEST AIRLINES CORPORATION, et al.,**     :        **Jointly Administered**

                Debtors.                                        :

-------------------------------------------------------------------- x

## ORDER GRANTING INTERIM AND FINAL ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Upon consideration of the applications of (i) Cadwalader, Wickersham & Taft LLP, counsel for Northwest Airlines Corporation and certain of its direct and indirect subsidiaries, that were debtors and debtors in possession (collectively, the "Reorganized Debtors" or "Northwest"),[1] (ii) Huron Consulting Group, accounting and restructuring consultants for the Debtors, (iii) Ernst & Young LLP, auditors, accountants and tax service providers for the Debtors, (iv) Briggs and Morgan, P.A., attorneys for the Debtors, (v) Seabury Group LLC, financial advisors for the Debtors, (vi) Paul, Hastings, Janofsky & Walker LLP, special counsel for the Debtors, (vii) Groom Law Group, Chartered, special employee benefits counsel for the Debtors, (viii) Arnold & Porter LLP, special bankruptcy labor counsel for the

---

[1]    In addition to NWA Corp., the Reorganized Debtors consist of: Northwest Airlines, Inc., NWA Fuel Services Corporation, Northwest Aerospace Training Corp., MLT Inc., Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NW Red Baron LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc. and NWA Aircraft Finance, Inc. The preceding entities, together with Northwest Airlines Holdings Corporation and NWA Inc., were the debtors and debtors in possession (the "Debtors") in these cases prior to May 31, 2007, the Effective Date of the Debtors' Plan (as defined herein). On the Effective Date, Northwest Airlines Holdings Corporation merged into NWA Inc. and thereafter, NWA Inc. merged into Northwest Airlines, Inc. and went out of existence.

Debtors, (ix) Curtis, Mallet-Prevost, Colt & Mosle LLP, conflicts counsel for the Debtors, (x)

Boies, Schiller & Flexner LLP, special antitrust and litigation counsel for the Debtors, (xi)

Deloitte Tax LLP, tax service providers for the Debtors, (xii) O'Melveny & Myers LLP,

ordinary course professional, (xiii) CRA International, Inc., ordinary course professional, (xiv)

R.A. Brodin LLC, ordinary course professional, (xv) Otterbourg, Steindler, Houston & Rosen,

P.C., counsel to the Official Committee of Unsecured Creditors (the "Creditors Committee"),

(xvi) Committee Member Reimbursement, (xvii) Jenner & Block LLP, counsel to the Section

1114 Committee of Retired Employees (the "1114 Committee"), (xviii) The Segal Company,

Actuarial Consultants for the 1114 Committee, (xix) Kroll Zolfo Cooper LLC, Financial

Advisors to the 1114 Committee, (xx) Simpson Thacher & Bartlett LLP, Special Corporate

Counsel to the Debtors, (xxi) KPMG LLP, ordinary course professional, (xxii) Evercore Group

L.L.C., Financial Advisor for the Debtors, (xxiii) Hughes Hubbard & Reed LLP, ordinary course

professional, (xxiv) Troutman Sanders LLP, ordinary course professional, (xxv) Olgetree,

Deakins, Nash, Smoak & Stewart, P.C., ordinary course professional, (xxvi) Ducharme,

McMillen & Associates, Inc., ordinary course professional, (xxvii) Navigant Capital Advisors

LLC, Appraiser and Consultant for the Debtors, (xxviii) L.E.K. Consulting LLC, Airline

Industry Advisors for the Debtors, (xxix) Daugherty, Fowler, Peregin, Haught & Jenson,

ordinary course professional, (xxx) Dr. Zanick/Park Nicollet Airport Clinic, ordinary course

professional, (xxxi) LECG LLC, Expert Consultants for the Debtors, (xxxii) Dorsey & Whitney

LLP, Special Litigation, ERISA and Commercial Law Counsel for the Debtors, and (xxxiii) 1114

Committee Member Reimbursement, each filed on or about July 23, 2007 through July 30, 2007

(collectively, the "Applicants") seeking, as applicable, (i) allowance of fifth interim and final

compensation for professional services rendered and reimbursement for actual and necessary

expenses incurred in the period from February 1, 2007 through May 31, 2007; (ii) allowance of

final compensation for professional services rendered and reimbursement for actual and necessary expenses incurred in the period from September 14, 2005 through May 31, 2007; and (iii) authorizing and directing the Reorganized Debtors to pay the holdback amount provided for in this Court's Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members (the "Administrative Order") and any other amounts due to each professional; and a hearing having been held on September 11, 2007 before this Court to consider the Applications (the "Hearing"); and the Court having jurisdiction to consider the Applications and the relief requested therein, and the objections filed thereto, in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Applications having been provided pursuant to Rule 2002(a)(6) of the Federal Rules of Bankruptcy Procedure; and it appearing that no other or further notice of the Applications need be provided; and based on the record of these cases and for the reasons set forth on the record of the Hearing, including the Court's finding that the fees and expenses allowed pursuant to this Order are fair, reasonable and appropriate, and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that pursuant to 11 U.S.C. §§ 330 and 331 the fees and expenses requested by each of the Applications be, and hereby are, finally allowed in the amounts set forth in Schedule A annexed hereto and the Reorganized Debtors shall release all of the holdback amounts provided for by the Administrative Order; and it is further

ORDERED that the "fee enhancements" requested by Cadwalader, Wickersham & Taft LLP and Otterbourg, Steindler, Houston & Rosen, P.C. in the respective amounts of $3,500,000 and $700,000 be, and they hereby are, denied; and it is further

ORDERED that the Reorganized Debtors be, and hereby are, directed and authorized, within five business days after the entry of this Order, and receipt of appropriate wire

transfer instructions from each Applicant, to wire-transfer to each Applicant the respective amounts as set forth in Schedule A under the column "Total Fees and Expenses Remaining to Be Paid;" and it is further

ORDERED that, consistent with Section 11.1 of the Plan, the Reorganized Debtors are authorized and directed to pay as and when due, professionals fees, disbursements, expenses or related support services (including fees relating to the preparation of professional fee applications) incurred after the Effective Date without application to, or approval of, the Bankruptcy Court; and it is further

ORDERED that the hearing on the final fee applications of FTI Consulting, Inc. and Lazard Freres & Co., LLC. are adjourned without date, pending reassignment of one or both of such applications to another Judge of this Court.

Dated:     New York, New York
           September 14, 2007


                              _/s/ Allan L. Gropper_ _____
                               UNITED STATES BANKRUPTCY JUDGE

## Schedule A: Fifth Interim Period

### In re Northwest Airlines, Inc., et al., Bankruptcy Case No. 05-17930 (ALG)

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| Cadwalader, Wickersham & Taft LLP Docket No. 7427 | $9,274,699.00 | $9,274,699.00 | $689,619.44 | $667,969.44 |
| Arnold & Porter LLP Docket No. 7361 | $212,634.50 | $212,634.50 | $6,695.13 | $6,291.48 |
| Boies, Schiller & Flexner LLP Docket No. 7396 | $1,707,378.90 | $1,707,378.90 | $25,668.85 | $25,668.85 |
| Paul, Hastings, Janofsky & Walker LLP Docket No. 7342 | $161,229.50 | $161,229.50 | $6,883.67 | $6,883.67 |
| Simpson Thacher & Bartlett LLP[1] Docket No. 7432 | $728,748.50 | $728,748.50 | $45,749.45 | $45,749.45 |
| Groom Law Group, Chartered Docket No. 7410 | $226,420.50 | $226,420.50 | $4,160.78 | $4,160.78 |

1    Pursuant to the Debtors' request, and the agreement of the Trustee, Simpson Thacher & Bartlett LLP did not submit interim fee applications in order to maintain the confidentiality of the project the firm was employed to handle.

USActive 10277105.2

Sep-18-2007 04:54 PM Cadwalader Wickersham Taft 212 993 3709          3/7

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| Curtis, Mallet-Prevost, Colt & Mosle LLP Docket No. 7422 | $6,980.00 | $6,980.00 | $116.52 | $116.52 |
| LECG LLC[2] Docket No. 7344 | $0.00 | $0.00 | $0.00 | $0.00 |
| Evercore Group L.L.C.[3] Docket No. 7372 | $3,800,000.00 | $3,800,00.00 | $43,452.16 | $43,281.20 |
| Huron Consulting Group Docket No. 7386 | $2,004,160.50 | $2,004,160.50 | $209,187.55 | $209,187.55 |
| Seabury Group LLC[4] Docket No. 7391 | $14,995,211.00 | $14,995,211.00 | $15,630.00 | $15,630.00 |
| Ernst & Young LLP Docket No. 7394 | $1,517,951.00 | $1,517,951.00 | $13,476.00 | $13,476.00 |
| Navigant Capital Advisors LLC[5] Docket Nos. 7417 & 7542 | $677,340.00 | $677,340.00 | $188,654.10 | $188,654.10 |

2    LECG LLC ("LECG") filed three interim fee applications. LECG did not perform services in the fourth or fifth interim periods.

3    Evercore Group L.L.C. ("Evercore") was retained on November 1, 2006, and has not previously requested any interim fees or expenses. Fees include a deferred advisory fee of $3,000,000.00. Evercore's fees and expenses are granted subject to the Trustee's right to dispute the detail provided regarding the fees and the attorneys' fees for which Evercore has sought reimbursement.

4    Fees include various success fees totaling $13,500,000.

5    Navigant Capital Advisors LLC's fees and expenses cover the period from September 18, 2006 through May 31, 2007.

Sep-18-2007 04:55 PM Cadwalader Wickersham Taft 212 993 3709

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| L.E.K. Consulting LLC[6] Docket No. 7421 | $2,614,896.00 | $2,614,896.00 | $534,582.00 | $534,582.00 |
| Deloitte Tax LLP Docket No. 7412 | $282,981.00 | $282,981.00 | $1,364.00 | $1,364.00 |
| Otterbourg, Steindler, Houston & Rosen, P.C. Docket No. 7429 | $2,478,245.00 | $2,473,245.50 | $90,971.63 | $90,971.63 |
| Committee Member Reimbursement Docket No. 7428 | | | $39,588.98 | $39,588.98 |
| Jenner & Block LLP[7] Docket Nos. 7433 &7579) | $303,784.50 | $303,784.50 | $81,949.23 | $81,949.23 |
| The Segal Company[8] Docket No. 7434 | $120,435.00 | $120,435.00 | $6,872.16 | $6,872.16 |

6    L.E.K. Consulting, L.L.C. ("LEK") was retained by order dated September 21, 2006. Such retention was extended by order dated May 10, 2007. After discussions with the Trustee, LEK's first interim fee application was adjourned and merged with its final fee application.

7    Jenner & Block LLP ("Jenner") was retained effective December 5, 2005. Total final fees includes supplemental final fees and expenses of $6,500 for the period of June 1, 2007 through August 31, 2007. Jenner has submitted time records relating to its retention of The Labor Bureau to the Trustee. To the extent the matter is not resolved by the Trustee and Jenner, adjustment to this amount may be made upon further Order of the Court.

8    The Segal Company was retained effective January 1, 2006.

4/7

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| Kroll Zolfo Cooper LLC[9] Docket Nos. 7387 & 7576 | $117,435.00 | $117,435.00 | $4,336.32 | $4,336.32 |
| Briggs and Morgan, P.A. [*] Docket No. 7362 | $115,707.00 | $115,707.00 | $5,329.79 | $5,329.79 |
| O'Melveny & Myers LLP[*10] Docket No. 7357 | $644,628.00 | $644,628.00 | $21,963.98 | $21,963.98 |
| CRA International, Inc. [*11] Docket No. 7356 | $106,642.00 | $106,642.00 | $7,856.30 | $7,856.30 |
| R.A. Brodin LLC[*12] Docket No. 7404 | $160,000.00 | $160,000.00 | | |

[9] Kroll Zolfo Cooper LLC was retained effective December 5, 2005. Fees and expenses include $6,546.13 in fees and expenses for the period of June 1, 2007 through August 31, 2007.

[*] This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order"). Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

[10] O'Melveny & Myers LLP filed three previous interim fee applications.

[11] CRA International, Inc. filed two previous interim applications for fees and expenses.

[12] R.A. Brodin LLC was retained by the Debtors effective October 1, 2006 and filed one previous interim application for fees and expenses.

USActive 10277105-2

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| KPMG LLP* Docket No. 7359 | $338,293.05 | $338,293.05 | $1,544.00 | $1,544.00 |
| Hughes Hubbard & Reed LLP* Docket No. 7379 | $496,259.65 | $496,259.65 | $8,148.25 | $8,148.25 |
| Troutman Sanders LLP* Docket No. 7384 | $830,427.00 | $830,427.00 | $6,089.94 | $6,089.94 |
| Ogletree, Deakins, Nash, Smoak & Stewart, P.C. * Docket No. 7413 | $158,790.50 | $158,790.50 | $1,973.89 | $1,973.89 |
| Dunkamme, McMillan & Associates, Inc.* Docket No. 7416 | $492,053.56 | $492,053.56 | $0.00 | $0.00 |
| Daugherty, Fowler, Peregin, Haught & Jenson* Docket No. 7424 | $595,295.55 | $595,295.55 | $242,383.95 | $43,127.45 |
| Dr. Zaniok / Park Nicollet Airport Clinic* Docket No. 7375 | $1,262,067.83 | $1,262,067.83 | $0.00 | $0.00 |

* This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order"). Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

A-5

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES REQUESTED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) |
|---|---|---|---|---|
| Dorsey & Whitney LLP Docket No. 7380 | $856,207.00 | $856,207.00 | $44,641.20 | $44,641.20 |
| 1114 Committee Member Reimbursement[13] Docket No. 7435 | | | 3,071.81 | 3,071.81 |

---

[13] Expenses cover the period of November 17, 2005 through July 30, 2007. To the extent any expenses have not yet been paid, they shall be paid in accordance with this Order.

* This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order"). Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

USActive 10277105.2

Sep-18-2007 04:55 PM Cadwalader Wickersham Taft 212 993 3709    7/7

**Schedule B**

**In re Northwest Airlines, Inc., et al., Bankruptcy Case No. 05-17930 (ALG)**

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FEES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL EXPENSES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL FEES AND EXPENSES ALLOWED | TOTAL FEES AND EXPENSES REMAINING TO BE PAID (September 14, 2005 through May 31, 2007) |
|---|---|---|---|---|---|---|
| Cadwalader, Wickersham & Taft LLP | $9,274,699.00 | $667,969.44 | $35,402,190.00 | $2,142,435.57[2] | $37,544,625.57 | $7,080,437.90 |
| Arnold & Porter LLP | $212,634.50 | $6,291.48 | $5,881,626.50 | $362,690.41 | $6,244,316.91 | $1,176,325.30 |
| Boies, Schiller & Flexner LLP | $1,707,378.90 | $25,668.85 | $5,251,969.50 | $141,804.12 | $5,393,773.62 | $1,050,393.90 |
| Paul, Hastings, Janofsky & Walker LLP | $161,229.50 | $6,883.67 | $678,428.50 | $39,649.13 | $718,077.63 | $175,066.46 |
| Simpson Thacher & Bartlett LLP[3] | | | $728,748.50 | $45,749.45 | $774,497.95 | $774,497.95 |
| Groom Law Group, Chartered | $226,420.50 | $4,160.78 | $1,746,903.00 | $105,629.45 | $1,852,532.45 | $273,035.00 |

---

[2]   In accordance with its agreement with the United States Trustee (the "Trustee"), Cadwalader, Wickersham & Taft LLP ("CWT") reduced the total expenses requested by $21,650 (covering managing attorney charges).  CWT continues to work with the Trustee to resolve a dispute regarding documentation of expenses in the amount of approximately $237,710.79.  To the extent the matter is not resolved by the Trustee and CWT, adjustment to this amount may be made upon further Order of the Court.

[3]   Pursuant to the Debtors' request, and the agreement of the Trustee, Simpson Thacher & Bartlett LLP did not submit interim fee applications in order to maintain the confidentiality of the project the firm was employed to handle.

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FEES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL EXPENSES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL FEES AND EXPENSES ALLOWED | TOTAL FEES AND EXPENSES REMAINING TO BE PAID (September 14, 2005 through May 31, 2007) |
|---|---|---|---|---|---|---|
| Curtis, Mallet-Prevost, Colt & Mosle LLP | $6,980.00 | $116.52 | $145,126.50 | $4,405.72 | $149,532.22 | $28,403.10 |
| LECG LLC[4] | | | $596,745.00 | $23,646.95 | $620,391.95 | $94,263.85 |
| Evercore Group L.L.C.[5] | $800,00.00 | $43,281.20 | $3,800,000.00 | $43,281.20 | $3,843,281.20 | $3,180,000.00. |
| Huron Consulting Group | $2,004,160.50 | $209,187.55 | $6,317,069.00 | $717,050.27 | $7,034,119.27 | $1,263,413.80 |
| Seabury Group LLC[6] | $14,995,211.00 | $15,630.00 | $21,582,151.00 | $153,231.00 | $21,735,382.00 | $2,648,018.00 |
| Ernst & Young LLP | $1,517,951.00 | $13,476.00 | $6,613,835.00 | $39,300.00 | $6,653,135.00 | $2,001,975.00 |
| Navigant Capital Advisors LLC[7] | | | $677,340.00 | $188,654.10 | $865,994.10 | $118,373.77 |
| L.E.K. Consulting LLC[8] | | | $2,614,896.00 | $534,582.00 | $3,149,478.00 | $483,899.90 |
| Deloitte Tax LLP | $282,981.00 | $1,364.00 | $1,341,622.00 | $11,124.00 | $1,352,746.00 | $268,324.00 |

---

[4]    LECG LLC ("LECG") filed three interim fee applications. LECG did not perform services in the fourth or fifth interim periods.

[5]    Evercore Group L.L.C. ("Evercore") was retained on November 1, 2006, and has not previously requested any interim fees or expenses. Fees include a deferred advisory fee of $3,000,000.00. Evercore's fees and expenses are granted subject to the Trustee's right to dispute the detail provided regarding the fees and the attorneys' fees for which Evercore has sought reimbursement.

[6]    Fees include various success fees totaling $13,500,000.

[7]    Navigant Capital Advisors LLC's fees and expenses cover the period from September 18, 2006 through May 31, 2007.

[8]    L.E.K. Consulting L.L.C. ("LEK") was retained by order dated September 21, 2006. Such retention was extended by order dated May 10, 2007. After discussions with the Trustee, LEK's first interim fee application was adjourned and merged with its final fee application.

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FEES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL EXPENSES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL FEES AND EXPENSES ALLOWED | TOTAL FEES AND EXPENSES REMAINING TO BE PAID (September 14, 2005 through May 31, 2007) |
|---|---|---|---|---|---|---|
| Otterbourg, Steindler, Houston & Rosen, P.C. | $2,473,245.50 | $90,971.63 | 7,034,480.50 | $210,231.82 | 7,244,712.32 | $1,401,241.10 |
| Committee Member Reimbursement | | $39,588.98 | | $56,553.82 | $56,553.82 | N/A |
| Jenner & Block LLP[9] | $303,784.50 | $81,949.23 | $1,094,794.50 | $150,000.84 | $1,244,795.34 | $429,793.11 |
| The Segal Company[10] | $120,435.00 | $6,872.16 | $411,988.33 | $15,404.58 | $427,392.91 | $138,588.62 |
| Kroll Zolfo Cooper LLC[11] | $117,435.00 | $4,336.32 | $607,524.50 | $25,541.50 | $633,066.00 | $126,756.03 |
| Briggs and Morgan, P.A. * | $115,707.00 | $5,329.79 | $1,108,821.00 | $56,809.85 | $1,165,630.85 | $223,001.72 |
| O'Melveny & Myers LLP*[12] | $644,628.00 | $21,963.98 | $1,685,630.40 | $45,580.03 | $1,731,210.43 | $636,008.04 |

---

[9]   Jenner & Block LLP ("Jenner") was retained effective December 5, 2005.  Total final fees includes supplemental final fees and expenses of $6,500 for the period of June 1, 2007 through August 31, 2007.  Jenner has submitted time records relating to its retention of The Labor Bureau to the Trustee.  To the extent the matter is not resolved by the Trustee and Jenner, adjustment to this amount may be made upon further Order of the Court.

[10]   The Segal Company was retained effective January 1, 2006.

[11]   Kroll Zolfo Cooper LLC was retained effective December 5, 2005.  Fees and expenses include $6,546.13 in fees and expenses for the period of June 1, 2007 through August 31, 2007.

*   This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order").  Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

[12] O'Melveny & Myers LLP filed three previous interim fee applications.

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FEES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL EXPENSES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL FEES AND EXPENSES ALLOWED | TOTAL FEES AND EXPENSES REMAINING TO BE PAID (September 14, 2005 through May 31, 2007) |
|---|---|---|---|---|---|---|
| CRA International, Inc. *[13] | $106,642.00 | $7,856.30 | $477,871.00 | $32,875.04 | $510,746.04 | $59,532.50. |
| R.A. Brodin LLC*[14] | $160,000.00 | | $320,000.00 | | $320,000.00 | $68,000.00 |
| KPMG LLP* | | | $338,293.05 | $1,544.00 | $339,837.05 | $246,517.85 |
| Hughes Hubbard & Reed LLP* | | | $496,259.65 | $8,148.25 | $504,407.90 | $165,615.45 |
| Troutman Sanders LLP* | | | $830,427.00 | $6,089.94 | $836,516.94 | $63,845.00 |
| Olgetree, Deakins, Nash, Smoak & Stewart, P.C. * | $158,790.50 | $1,973.89 | $403,552.50 | $26,215.42 | $429,767.92 | $30,525.90 |
| Ducharme, McMillen & Associates, Inc.* | | | $492,053.56 | | $492,053.56 | $98,410.71 |
| Daugherty, Fowler, Peregin, Haught & Jenson* | $27,547.65 | $6,656.19 | $595,295.55 | $43,127.45 | $638,423.00 | $41,187.41 |

---

[13] CRA International, Inc. filed two previous interim applications for fees and expenses.

[14] R.A. Brodin LLC was retained by the Debtors effective October 1, 2006 and filed one previous interim application for fees and expenses.

* This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order"). Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

| APPLICANT | TOTAL FIFTH INTERIM PERIOD FEES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FIFTH INTERIM PERIOD EXPENSES ALLOWED (February 1, 2007 through May 31, 2007) | TOTAL FEES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL EXPENSES ALLOWED (September 14, 2005 through May 31, 2007) | TOTAL FEES AND EXPENSES ALLOWED | TOTAL FEES AND EXPENSES REMAINING TO BE PAID (September 14, 2005 through May 31, 2007) |
|---|---|---|---|---|---|---|
| Dr. Zanick / Park Nicollet Airport Clinic* | | | $1,262,067.83 | | $1,262,067.83 | $132,384.65 |
| Dorsey & Whitney LLP | $856,207.00 | $44,641.20 | $3,227,885.88 | $171,753.24 | $3,399,639.12 | $35,172.75 |
| 1114 Committee Member Reimbursement[15] | | | $3,071.81 | | $3,071.81 | N/A |

---

[15] Expenses cover the period of November 17, 2005 through July 30, 2007. To the extent any expenses have not yet been paid, they shall be paid in accordance with this Order.

* This applicant was employed by the Debtors as an Ordinary Course Professional (as defined in the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business, dated October 19, 2005 (the "OCP Order"). Each Ordinary Course Professional was required to receive the Court's approval of its fees and expenses to the extent they exceeded the $50,000 per month limit as set forth in the OCP Order.

## **EXHIBIT E**

IN RE INTERSTATE BAKERIES CORP., CASE NO. 04-45814

# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI
## KANSAS CITY DIVISION

```
------------------------------------------------   x
                                                    :
In re:                                              :   Chapter 11
                                                    :
INTERSTATE BAKERIES                                 :   Case No. 04-45814 (JWV)
   CORPORATION, et al.,                             :   Jointly Administered
                                                    :
              Debtors.                              :   Hearing Date: April 15, 2009
                                                    :   Hearing Time: 1:30 p.m.
                                                    :   Obj. Deadline: April 8, 2009
------------------------------------------------   x
```

## FINAL APPLICATION AND FEE AND EXPENSE SUMMARY OF ALVAREZ & MARSAL NORTH AMERICA, LLC, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED

| | |
|---|---|
| Name of Firm: | Alvarez & Marsal North America, LLC, previously Alvarez & Marsal, LLC |
| Authorized to Provide Professional Services to: | Interstate Bakeries Corporation and Subsidiaries (collectively, "Debtors" or "Company") |
| Date of Retention: | Motion filed September 22, 2004.  Order entered October 25, 2004 |
| Period Covered by Fee & Expense Summary: | September 22, 2004, to February 3, 2009 |

| | |
|---|---|
| Monthly Fees | $30,486,673.25 |
| Transaction / Incentive Fee | 3,850,000.00 |
| Expense Reimbursement | 1,642,214.77 |
| Subtotal | 35,978,888.02 |
| Less: Amounts Previously Paid | (35,978,888.02) |
| Amount Outstanding | $          0.00 |

COMES NOW Alvarez & Marsal North America, LLC, previously Alvarez & Marsal, LLC ("A&M"), and for the Final Application and Fee and Expense Summary for Services Rendered and Reimbursement of Expenses Incurred ("Final Application"), respectfully states:

1.    On September 22, 2004, eight of the Debtors each filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Petition Date").  Further, on January 14, 2006, the ninth debtor, Mrs. Cubbison's Foods, Inc., also filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.  The cases of the Debtors are jointly administrated pursuant to Orders of the Court.

2.    On December 5, 2008, this Court entered its Order Confirming Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and its Affiliated Debtors and Debtors-In-Possession Dated October 31, 2008.  On February 3, 2009, the Debtors filed a notice that the Effective Date of the Amended Joint Plan of Reorganization had occurred.

3.    On October 25, 2004, this Court entered the Order Pursuant to 11 U.S.C. §363 Authorizing the Debtors to Enter Into An Agreement with Alvarez & Marsal, LLC Providing for the Placement of Certain Restructuring Managers (the "Order"), effective as of the Petition Date.  Pursuant to the Order, the Debtors were authorized to enter into and perform under the Amended and Restated Engagement Letter dated October 14, 2004 (the "Engagement Letter"), which was also attached to the Order.

4.    Pursuant to paragraph 6 of the Order, throughout the pendency of these cases, A&M has prepared monthly statements (individually, "Monthly Statement," and collectively, "Monthly Statements") summarizing the services provided and (a) setting forth (i) the identity of

each A&M officer working on the engagement during the month, (ii) the number of hours worked by each A&M officer other than the Chief Executive Officer during the month, and (iii) the amounts of compensation received or requested by A&M for the month with respect to each of the executive officers, and (b) a summary of expenses incurred by A&M during the month. Copies of the Monthly Statements were served on counsel for:  the agents for the Debtors prepetition and postpetition secured lenders, the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders (which committee was disbanded on October 1, 2008, by the United States Trustee due to the resignation of certain members), Q Investments, LP, and the United States Trustee.  Under the Order, the parties were provided ten days after receipt of each Monthly Statement within which to notify the Debtors and A&M in writing of any objection to it and describe the nature of their objection.  No such objections to the Monthly Statements were received during the pendency of these cases and, as such, the Monthly Statements were deemed under the Order as approved on an interim basis.  Accordingly, the Debtors have paid the fees and expenses set forth in each Monthly Statement.  A summary with respect to certain data reflected in the Monthly Statements is marked Exhibit A attached hereto and incorporated herein by reference.

5.    The Engagement Letter approved pursuant to the Order included a provision under which A&M was entitled to receive incentive compensation, to be based on 5% of value created, the definition of which was to be approved by the Board of Directors and served to the notice parties noted in the preceding paragraph.  In addition, under all circumstances other than a liquidation of the Company, A&M's incentive compensation was to be a minimum of $3.85 million.  The incentive compensation was to be paid on the earlier of (x) a consummation of a plan of reorganization, (y) a sale of all or substantial portion of the assets of the Company in one or more transactions, or (z) a liquidation of the Company (it being understood that in the case of

a liquidation, the minimum incentive fee would not be subject to the $3.85 million guarantee).

The definition of value created was never finalized by A&M and the notice parties. As such,

upon consummation of the Plan on February 3, 2009, A&M only sought and was paid the $3.85

million minimum guarantee due pursuant to the approved Engagement Letter.

6.   This Final Application summarizing the fees and expenses paid to A&M

during the pendency of the Debtors' cases, including the minimum incentive compensation, is

being provided pursuant to and in accordance with paragraph 9 of the Order. A copy of the final

fee and expense summary has been served on counsel for: the agents for the Debtors prepetition

and postpetition secured lenders, the Official Committee of Unsecured Creditors, Q Investments,

LP and the United States Trustee. The Order provides that this Final Application shall be

considered by the Court at either the next regularly scheduled monthly omnibus hearing that is at

least twenty (20) days after A&M files this report or the hearing to consider professionals' final

fee applications, as the case may be.

7.   A&M asserts that the amount of services provided by A&M and

compensation requested above, including incentive compensation, is reasonable in light of the

size of the Debtors, the length of these cases and complexity of the issues and problems

addressed. In addition, the cost of services rendered is comparable to the cost of similar services

by comparably skilled practitioners. The Debtors, through the senior management team and the

pre-emergence Board of Directors, have approved and paid all amounts included in this Final

Application.

8.   A&M currently holds a retainer in the amount of $242,778.77. Since, as

noted on the cover page to this Final Application, no fees or expenses remain outstanding, the

retainer will be refunded to the Company.

9.    All services were performed by A&M for and on behalf of the Debtors and no other persons.

10.    During the period from the commencement of these cases to the Effective Date of the confirmed Plan, A&M performed necessary, reasonable and valuable services for Debtors with a total of approximately 67,148.9 hours expended therefore.

11.    The fixed fee and hourly rates charged by A&M are comparable to those charged with respect to comparable engagements.  Based on such fixed fee, hourly rates and the minimum incentive compensation, the aggregate value of the services rendered during the period of this Application is $34,336,673.25.   In an effort to minimize the expense of the services provided, A&M, wherever possible, avoided duplication of effort and delegated appropriate tasks to persons with a lesser billing rate.

12.    A&M incurred expenses during the period from the commencement of these cases to the Effective Date of the confirmed Plan in the amount of $1,642,214.77, which were itemized in the Monthly Statements.  The expenses for which reimbursement is sought by A&M are expenses normally billed to its clients with respect to comparable engagements.  No agreement or understanding prohibited by 11 U.S.C. §504 of the Bankruptcy Code exists between A&M and any other person or entity for the sharing of compensation or the reimbursement received or to be received for services rendered in connection with these cases.

13.    A&M hereby reserves its right to amend and modify this Final Application as may be necessary or appropriate.

WHEREFORE, A&M respectfully requests that this Court enter an Order granting the relief requested above which approves this Final Application and:  (a) determines that the services rendered and expenses incurred by A&M for the entire period from the commencement of these cases through the Effective Date of the confirmed Plan were actual and

Case 02-45814-jwv11 Doc 10065 Filed 03/18/09 Entered 03/18/09 09:30:13 Desc
Main Document Page 6 of 6

necessary within the meaning of 11 U.S.C. §§330(a)(1) and 503(b); (b) pursuant to 11 U.S.C.

§§328, 330(a)(1) and 503(b), allows compensation for services rendered by A&M for the entire

period from the commencement of these cases through the Effective Date of the confirmed Plan

in the total sum of $34,336,673.25, and determines that the same is entitled to priority under 11

U.S.C. §507(a)(2); (c) pursuant to 11 U.S.C. §§328, 330(a)(1) and 503(b), allows reimbursement

for actual and necessary expenses incurred by A&M for the entire period from the

commencement of these cases through the Effective Date of the confirmed Plan in the total sum

of $1,642,214.77, and determines that the same is entitled to priority under 11 U.S.C. §507(a)(2);

and (d) grants such other and further relief as is necessary or appropriate.


GALLAS & SCHULTZ


/s/ Jerald S. Enslein
Jerald S. Enslein    MO#30040
9140 Ward Parkway
Suite 200
Kansas City, Missouri  64114
816.822.8100 Telephone
816.822.8222 Facsimile
jsenslein@gallas-schultz.com

ATTORNEYS FOR ALVAREZ &
 MARSAL NORTH AMERICA, LLC

**Interstate Bakeries Corporation**
**Summary of Monthly Fees and Expenses**

| | Period Covered | Fees | Expenses |
|---|---|---|---|
| 1 | September 22 - 30, 2004 | $ 233,725.00 | $ 12,829.37 |
| 2 | October 2004 | 1,160,937.50 | 48,634.92 |
| 3 | November 2004 | 1,225,137.50 | 111,468.02 |
| 4 | December 2004 | 999,450.00 | 81,470.77 |
| 5 | January 2005 | 1,109,025.00 | 72,758.13 |
| 6 | February 2005 | 868,687.50 | 59,894.82 |
| 7 | March 2005 | 958,362.50 | 70,847.06 |
| 8 | April 2005 | 854,312.50 | 48,173.18 |
| 9 | May 2005 | 842,862.50 | 44,675.99 |
| 10 | June 2005 | 807,412.50 | 44,126.40 |
| 11 | July 2005 | 703,937.50 | 43,256.13 |
| 12 | August 2005 | 795,312.50 | 28,156.16 |
| 13 | September 2005 | 832,837.50 | 43,083.24 |
| 14 | October 2005 | 848,675.00 | 64,225.76 |
| 15 | November 2005 | 936,870.00 | 52,755.71 |
| 16 | December 2005 | 766,747.50 | 38,923.36 |
| 17 | January 2006 | 903,150.00 | 42,868.68 |
| 18 | February 2006 | 790,090.00 | 49,182.07 |
| 19 | March 2006 | 922,430.00 | 58,231.78 |
| 20 | April 2006 | 707,985.00 | 46,394.56 |
| 21 | May 2006 | 799,305.00 | 50,139.43 |
| 22 | June 2006 | 844,747.50 | 42,395.82 |
| 23 | July 2006 | 635,332.50 | 25,534.57 |
| 24 | August 2006 | 758,125.00 | 30,483.35 |
| 25 | September 2006 | 661,262.50 | 23,807.28 |
| 26 | October 2006 | 699,202.50 | 23,996.72 |
| 27 | November 2006 | 730,052.50 | 53,448.93 |
| 28 | December 2006 | 571,064.00 | 24,073.01 |
| 29 | January 2007 | 628,775.00 | 17,437.83 |
| 30 | February 2007 | 461,700.00 | 33,175.92 |
| 31 | March 2007 | 438,312.50 | 26,797.43 |
| 32 | April 2007 | 382,462.50 | 32,818.97 |
| 33 | May 2007 | 432,678.00 | 35,196.84 |
| 34 | June 2007 | 194,587.50 | 13,075.43 |
| 35 | July 2007 | 54,425.00 | 1,121.54 |
| 36 | August 2007 | 202,762.50 | 6,498.70 |
| 37 | September 2007 | 244,687.50 | 8,408.11 |
| 38 | October 2007 | 221,412.50 | 7,410.53 |
| 39 | November 2007 | 286,275.00 | 16,834.57 |
| 40 | December 2007 | 203,062.50 | 6,210.01 |
| 41 | January 2008 | 377,350.00 | 17,560.65 |
| 42 | February 2008 | 238,325.00 | 7,697.90 |
| 43 | March 2008 | 304,231.25 | 8,778.46 |
| 44 | April 2008 | 367,275.00 | 16,103.51 |
| 45 | May 2008 | 319,825.00 | 11,769.08 |
| 46 | June 2008 | 262,675.00 | 8,691.33 |
| 47 | July 2008 | 318,212.50 | 1,274.18 |
| 48 | August 2008 | 296,037.50 | 9,394.58 |
| 49 | September 2008 | 258,637.50 | 2,672.82 |
| 50 | October 2008 | 244,812.50 | 2,407.68 |
| 51 | November 2008 | 278,650.00 | 7,694.79 |
| 52 | December 2008 | 226,225.00 | 5,976.27 |
| 53 | January 1 - February 3, 2009 | 276,237.50 | 1,372.42 |
| | | $ 30,486,673.25 | $ 1,642,214.77 |

**Interstate Bakeries Corporation (IBC)**
**Summary of Monthly Fees By Service Line and Professional**

| | Alvarez & Marsal Title [1] | Functional Role(s) / Title at IBC | Total Hours | Average Rate | Total Fees | Years on IBC |
|---|---|---|---|---|---|---|
| **Chief Executive Officer** [2] | | | | | | |
| T. Alvarez II | Managing Director | Chief Executive Officer | 4,520.0 | (2) | $ 4,320,000.00 | 2.4 |
| **Restructuring Division:** | | | | | | |
| J. Suckow | Managing Director | Chief Restructuring Officer | 6,428.5 | 603 | 3,878,050.00 | 2.8 |
| R. Campagna | Managing Director | SVP Restructuring, Financial Planning & Analysis | 9,619.0 | 554 | 5,333,562.50 | 4.4 |
| C. Reeves | Senior Director | Cost Reduction | 2,471.5 | 450 | 1,112,175.00 | 1.5 |
| P. Nguyen | Senior Associate | Financial Planning & Analysis | 1,378.5 | 414 | 570,387.50 | 0.7 |
| A. Morissette | Director | Shared Services | 6,132.3 | 410 | 2,516,587.50 | 2.7 |
| J. Roizen | Director | Chief Marketing Officer | 2,911.0 | 408 | 1,187,700.00 | 1.7 |
| R. Schipani | Director | Financial Planning & Analysis | 3,622.0 | 423 | 1,531,412.50 | 1.9 |
| E. Kessler | Senior Associate | Financial Planning & Analysis | 12.5 | 400 | 5,000.00 | 0.1 |
| J. Sciametta | Director | Labor Relations, Financial Planning & Analysis | 6,011.5 | 379 | 2,279,212.50 | 2.7 |
| C. Bryan | Senior Associate | Financial Planning & Analysis | 2,174.0 | 350 | 760,900.00 | 1.0 |
| K. Hessenthaler | Associate | Financial Planning & Analysis | 1,327.5 | 346 | 459,750.00 | 0.8 |
| V. Alvarez | Associate | Financial Planning & Analysis | 5,645.5 | 273 | 1,543,675.00 | 2.4 |
| A. Schlanger | Associate | Labor Relations | 3,468.0 | 264 | 915,079.50 | 1.9 |
| R. Novak | Analyst | Financial Planning & Analysis | 317.8 | 250 | 79,437.50 | 0.2 |
| | Subtotal - Restructuring Division | | 51,519.5 | 430 | 22,172,929.50 | |
| **Real Estate Division:** | | | | | | |
| G. Gotthardt | Managing Director | Sale of Idle Properties | 78.5 | 500 | 39,250.00 | 0.2 |
| A. Benoit | Senior Associate | Assistance to Real Estate Dept | 37.8 | 425 | 16,043.75 | 0.6 |
| R. Aulabaugh | Director | Sale of Idle Properties | 351.5 | 400 | 140,600.00 | 0.2 |
| R. Bullen | Senior Director | Head of Real Estate, Sale of Idle Properties | 1,133.5 | 375 | 425,250.00 | 1.2 |
| B. Kennedy | Director | Assistance to Real Estate Dept | 5,034.5 | 372 | 1,874,012.50 | 3.3 |
| K. Robey | Analyst | Assistance to Real Estate Dept | 748.5 | 257 | 192,625.00 | 0.9 |
| B. Abbott | Analyst | Sale of Idle Properties | 291.5 | 225 | 65,587.50 | 0.2 |
| D. Johnstone | Analyst | Sale of Idle Properties | 68.3 | 200 | 13,650.00 | 0.2 |
| | Subtotal - Real Estate Division | | 7,744.0 | 357 | 2,767,018.75 | |
| **Business Consulting Division:** | | | | | | |
| D. Redfern | Senior Director | Information Technology | 14.0 | 550 | 7,700.00 | 0.1 |
| J. Diehl | Senior Director | Supply Chain | 118.0 | 450 | 53,100.00 | 0.2 |
| M. Davidson | Senior Director | Chief Information Officer | 955.0 | 450 | 429,750.00 | 0.6 |
| T. Pilegge | Senior Director | Human Resouces | 808.0 | 450 | 363,600.00 | 0.4 |
| W. Clarkson | Senior Director | Supply Chain | 21.0 | 450 | 9,450.00 | 0.1 |
| M. Paling | Director | Information Technology | 28.0 | 400 | 11,200.00 | 0.1 |
| P. Bray | Associate | Supply Chain | 1,284.4 | 250 | 321,100.00 | 0.6 |
| O. Price | Analyst | Information Technology | 137.0 | 225 | 30,825.00 | 0.2 |
| | Subtotal - Business Consulting Division | | 3,365.4 | 365 | 1,226,725.00 | |
| **Total Hours / Monthly Fees** | | | 67,148.9 | $ 454 | $ 30,486,673.25 | |

(1) For professionals promoted during the project, reflects level at conclusion of professional's involvement
(2) Compensation for Mr. Alvarez serving as CEO was a fixed fee of $150,000 per month. Time was estimated at 160 hours per month.

09-50026-mg Doc 6418 Filed 07/27/10 Entered 03/18/09 09:53:10 Desc
Pg 128 of 154

**Interstate Bakeries Corporation**
**Summary of Expenses**

|  | Total Expenses |
|---|---|
| Transportation | $ 1,055,783.32 |
| Hotels | 399,477.23 |
| Meals | 113,638.98 |
| Telecommunications | 30,025.24 |
| Other | 43,290.00 |
| **Total** | $ 1,642,214.77 |

In re: INTERSTATE BAKERIES CORPORATION, et al., Case No. Case No. 04-45814 (JWV)

| Filing Date | # | Docket Text |
|---|---|---|
| 05/26/2009 | 12171 | Order of the Court Granting the Final Application for Compensation for Alvarez & Marsal North America LLC, Other Professional, Fees awarded: $34,336,673.2, Expenses awarded: $1,642,214.77; Awarded on 5/26/2009. So ORDERED by /s/ *Jerry W. Venters*. (related document(s) 11965 ) (Hinkle, Jamie) **THE MOVING PARTY IS TO SERVE THIS ORDER ON PARTIES NOT RECEIVING ELECTRONIC NOTICE.**<br><br>File the Certificate of Service and relate it to the **epo** category.<br><br>*This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*<br><br>(Entered: 05/26/2009) |

# **EXHIBIT F**

IN RE DANA CORPORATION, CASE NO. 06-10354

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                                    :     Chapter 11
                                                         :
Dana Corporation, *et al.,*                              :     Case No. 06-10354 (BRL)
                                                         :
                          Debtors.                       :     (Jointly Administered)
                                                         :
------------------------------------------------------------x

**ORDER GRANTING APPLICATIONS OF PROFESSIONALS FOR**
**ALLOWANCE OF INTERIM AND FINAL COMPENSATION FOR SERVICES**
<u>**RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**</u>

Upon consideration of the applications of (i) Jones Day, as Attorneys for the Reorganized

Debtors (collectively, the "<u>Debtors</u>") for the period commencing March 3, 2006 through January

31, 2008; (ii) Miller Buckfire & Co., LLC, as Financial Advisor and Investment Banker to the

Debtors for the period commencing March 3, 2006 through January 31, 2008 (iii) Pachulski

Stang Ziehl & Jones LLP, as Conflicts Counsel for Debtors for the period commencing March 3,

2006 through January 31, 2008; (iv) Hunton & Williams LLP, as Special Counsel to the Debtors

for the period commencing March 3, 2006 through January 31, 2008; (v) Ernst & Young LLP, as

Risk Advisory, Due Diligence and Tax Advisory Services Providers for the Debtors for the

period commencing March 3, 2006 through January 1, 2008; (vi) Katten Muchin Rosenman

LLP, as Special Securities and Litigation Counsel for the Debtors for the period commencing

March 3, 2006 through January 31, 2008; (vii) PricewaterhouseCoopers LLP, as Auditors for the

Debtors for the period commencing March 3, 2006 through January 31, 2008; (viii) Skadden,

Arps, Slate, Meagher & Flom LLP, as Special Counsel for the Debtors for the period

commencing July 1, 2007 through October 31, 2007; (ix) Skadden, Arps, Slate, Meagher & Flom

LLP, as Special Counsel for the Debtors for the period commencing March 3, 2006 through

January 31, 2008; (x) Hilco Appraisal Services as Appraisers for the Debtors for the period

commencing August 8, 2007 through January 31, 2008; (xi) Cushman & Wakefield of Oregon,

Inc., as Appraisers for the Debtors for the period commencing September 1, 2007 through

December 31, 2007; (xii) AP Services, LLC, as Crisis Managers for the Debtors for the period

commencing March 3, 2006 through January 31, 2008; (xiii) Dorsey & Whitney LLP, as Special

International Counsel for the Debtors for the period commencing March 3, 2006 through January

31, 2008; (xiv) Signature Associates, as Real Estate Consultants for the Debtors for the period

commencing March 3, 2006 through January 31, 2008; (xv) Kramer Levin Naftalis & Frankel

LLP, as Attorneys for the Official Committee of Unsecured Creditors (the "Creditors'

Committee") for the period commencing March 10, 2006 through January 31, 2008;

(xvi) Halperin Battaglia Raicht, LLP, as Conflicts Counsel to the Creditors' Committee for the

period commencing March 31, 2006 through January 31, 2008; (xvii) UBS Securities LLC, as

Financial Advisor to the Creditors' Committee for the period commencing March 14, 2006

through January 31, 2008; (xviii) McDermott Will & Emery LLP, as Special Labor Counsel to

the Creditors' Committee for the period commencing July 25, 2007 through January 31, 2008;

(xix) Analysis, Research, and Planning Corporation, as Asbestos Claims Evaluation Consultants

to the Creditors' Committee and Former Equity Committee for the period commencing July 28,

2006 through December 31, 2007; (xx) FTI Consulting, Inc. as Financial Advisor to the

Creditors' Committee for the period commencing March 14, 2006 through January 31, 2008;

(xxi) Berwin Leighton Paisner LLP, as Special European Counsel to the Creditors' Committee

for the period commencing November 1, 2006 through February 25, 2007; (xxii) Fried, Frank,

Harris, Shriver & Jacobson LLP, as Counsel for Official Committee of Equity Security Holders

(the "Equity Committee") for the period commencing June 30, 2006 through March 15, 2008;

(xxiii) Jefferies & Company, Inc., as Financial Advisor to Equity Committee for the period

commencing July 11, 2006 through February 9, 2007; (xxiv) Stahl Cowen Crowley LLC,

Attorneys for the Official Non-Union Retiree Committee (the "Retiree Committee") for the

period commencing September 5, 2006 through February 29, 2008; (xxv) Development

Specialists, Inc., as Financial Advisors for the Retiree Committee for the period commencing

September 12, 2006 through January 31, 2008; (xxvi) The Segal Company, as Actuarial

Professional for the Retiree Committee for the period commencing October 1, 2006 through

January 31, 2008, seeking allowance of interim and final compensation for professional services

rendered and reimbursement of actual and necessary expenses incurred in connection therewith

in the above-captioned chapter 11 cases (collectively, the "Applications"); and a hearing having

been held before this Court to consider the Applications (the "Hearing");

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     The Court has jurisdiction to consider the Applications and the relief requested

therein in accordance with sections 157 and 1334 of Title 28 of the United States Code

(the "Judicial Code") and section IX.B of the Third Amended Joint Plan of Reorganization of

Debtors and Debtors in Possession.

B.     Proper and adequate notice of the Applications and the Hearing was given and no

other or further notice is required.

C.     This is a core proceeding pursuant to section 157(b)(2) of the Judicial Code.

D.     Venue for proceedings on the Applications is proper pursuant to section 1409 of

the Judicial Code.

E.     The compensation requested in the Applications is fair and reasonable given:

(a) the complexity of these chapter 11 cases, (b) the time expended, (c) the nature and extent of

3

the services rendered, (d) the value of the services and (e) the costs of comparable services other than in a case under Title 11 of the United States Code.

F.        The reimbursement for expenses detailed in the Applications represent reimbursements for actual and necessary expenses incurred by the professionals in connection with these chapter 11 cases.

G.        The legal and factual bases set forth in the Applications and at the Hearing establish just cause for the relief granted herein.

IT IS HEREBY ORDERED THAT:

1.        The Applications are GRANTED on a final basis as set forth herein.

2.        All fees and expenses approved by previously entered orders of the Court on an interim basis since the commencement of these chapter 11 cases are hereby approved on a final basis.

3.        Subject to the provisions of the following sentence, the Debtors are authorized and directed to pay the applicants promptly the sums set forth in Schedules "A(1)" and "A(2)" under the column headings "Fees to be Paid to the Extent Currently Unpaid" and "Expenses Allowed" to the extent such amounts have not been paid previously.  Applicants shall apply any retainers that they currently hold from any of the Debtors to the unpaid amounts set forth in Schedules "A(1)" and "A(2)," and the Debtors shall pay to the relevant Applicant the difference between the unpaid amounts set forth in such Schedules and the retainer held by such Applicant.

4.      The Court shall retain jurisdiction over any and all disputes arising or otherwise

relating to the interpretation, performance, and enforcement of the terms and provisions of this

Order.


Dated: New York, New York
       May 28, 2008

                                        /s/Burton R. Lifland_____
                                        UNITED STATES BANKRUPTCY JUDGE

**SCHEDULE A(1)**

CURRENT FEE PERIOD: November 1, 2007 through January 31, 2008
CASE NUMBER: 06-10354 (BRL)
CASE NAME: Dana Corporation, et al.

| APPLICANT | DATE/DOC. NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED | FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED |
|---|---|---|---|---|---|---|
| Jones Day<br>Attorneys for the Debtors | 3/26/08<br>No. 7904 | $8,591,356.00 | $8,591,356.00 | $8,591,356.00 | $551,468.55 | $551,468.55 |
| Miller Buckfire & Co., LLC<br>Financial Advisor and Investment Banker to the Debtors | 3/31/08<br>No. 7950 | $16,033,125.00 | $16,033,125.00 | $16,033,125.00 | $20,547.63 | $20,547.63 |
| Pachulski Stang Ziehl & Jones LLP<br>Conflicts Counsel for Debtors | 3/31/08<br>No. 7949 | $126,463.00 | $126,463.00 | $126,463.00 | $11,368.05 | $11,368.05 |
| Hunton & Williams LLP<br>Special Counsel to the Debtors | 3/28/08<br>Nos. 7930, 7931, 7933, 7934, 7936, 7937, 7938 & 7939 | $301,379.20 | $301,379.20 | $301,379.20 | $4,078.59 | $4,078.59 |
| Ernst & Young LLP<br>Risk Advisory, Due Diligence and Tax Advisory Services Providers for the Debtors | 3/31/08<br>No. 7941 | $8,010,475.00 | $8,010,475.00 | $8,010,475.00 | $452,737.00 | $452,737.00 |
| Katten Muchin Rosenman LLP<br>Special Securities and Litigation Counsel for the Debtors | 3/26/08<br>No. 7903 | $556,643.25 | $556,643.25 | $556,643.25 | $19,722.44 | $19,722.44 |
| PricewaterhouseCoopers LLP<br>Auditors for the Debtors (Sixth Interim) | 2/29/08<br>No. 7788 | $2,282,144.50 | $2,282,144.50 | $2,282,144.50 | $50,694.14 | $50,694.14 |
| PricewaterhouseCoopers LLP[1]<br>Auditors for the Debtors (Final) | 3/28/08<br>No. 7916 | $14,721,262.82 | $14,721,262.82 | $14,721,262.82 | $655,849.50 | $655,849.50 |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Special Counsel for the Debtors (Fifth Interim) | 12/20/07<br>No. 7491 | $366,559.50 | $366,559.50 | $366,559.50 | $2,914.49 | $2,914.49 |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Special Counsel for the Debtors (Sixth Interim) | 3/28/07<br>No. 7911 | $63,073.00 | $63,073.00 | $63,073.00 | $2,679.73 | $2,679.73 |

[1] Retained Professional is requesting final allowance of compensation and reimbursement of expenses for compensation and expenses previously approved or requested in this current fee period on an interim basis, but is not requesting approval of any additional interim compensation and expenses in its fee application.

| APPLICANT | DATE/DOC. NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED | FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED |
|---|---|---|---|---|---|---|
| Hilco Appraisal Services Appraisers for the Debtors | 3/25/08 No. 7901 | $597,500.00 | $597,500.00 | $597,500.00 | $106,296.38 | $106,296.38 |
| Cushman & Wakefield of Oregon, Inc. Appraisers for the Debtors | 3/28/08 No. 7918 | $300,000.00 | $300,000.00 | $300,000.00 | $0 | $0 |
| AP Services, LLC Crisis Manager for the Debtors, Success Fee | 3/31/08 No. 7947 | $4,000,000.00 | $4,000,000.00 | $4,000,000.00 | $0 | $0 |
| Dorsey & Whitney Special International Counsel for the Debtors | 4/25/08 No. 8023 | $11,699.50 | $11,699.50 | $11,699.50 | $186.24 | $186.24 |
| Signature Associates Real Estate Consultants for the Debtors | 4/25/08 No. 8024 | $983,250.09 | $983,250.09 | $983,250.09 | $0 | $0 |
| Kramer Levin Naftalis & Frankel LLP Attorneys for the Official Committee of Unsecured Creditors | 3/28/08 No. 7935 | $977,053.50[2] | $977,053.50 | $977,053.50 | $212,160.51[3] | $212,160.51 |
| Halperin Battaglia Raicht, LLP Conflicts Counsel to the Official Committee of Unsecured Creditors | 3/14/08 No. 7852, Supplement No. 7989 | $119,656.00 | $119,656.00 | $119,656.00 | $11,152.38 | $11,152.38 |
| UBS Securities LLC Financial Advisor to the Official Committee of Unsecured Creditors | 3/31/08 No. 7945 | $799,193.55 | $799,193.55 | $799,193.55 | $1,060.84 | $1,060.84 |
| McDermott Will & Emery LLP Special Labor Counsel to the Official Committee of Unsecured Creditors | 3/28/08 No. 7912 | $15,298.50 | $15,298.50 | $15,298.50 | $1,044.60 | $1,044.60 |
| Analysis, Research, and Planning Corporation Asbestos Claims Evaluation Consultants to the Official Committee of Unsecured Creditors and the Former Official Committee of Equity Security Holders | 3/28/08 No. 7919 | $44,487.50 | $44,487.50 | $44,487.50 | $0 | $0 |
| FTI Consulting, Inc. Financial Advisor to the Official Committee of Unsecured Creditors | 3/19/08 No. 7881 | $1,600,000.00 | $1,600,000.00 | $1,600,000.00 | $966.43 | $966.43 |

---

[2] This amount reflects a voluntary reduction of fees by $5,434.00.

[3] This amount reflects a voluntary reduction of expenses by $10,418.00.

| APPLICANT | DATE/DOC. NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED | FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED |
|---|---|---|---|---|---|---|
| Berwin Leighton Paisner LLP[4]<br>Special European Counsel to the Official Committee of Unsecured Creditors | 3/28/08<br>No. 7914 | $126,777.00 | $126,777.00 | $126,777.00 | $5,517.49 | $5,517.49 |
| Fried, Frank, Harris, Shriver & Jacobson LLP<br>Counsel for the Official Committee of Equity Security Holders | 3/28/08<br>No. 7917 | $613,270.50 | $613,270.50 | $613,270.50 | $34,655.43 | $34,655.43 |
| Jefferies & Company, Inc.<br>Financial Advisor to the Official Committee of Equity Security Holders | 6/14/07<br>No. 5519,<br>Amended No. 6702 | $540,000.00 | $540,000.00 | $540,000.00 | $24,033.30 | $24,033.30 |
| Stahl Cowen Crowley, LLC<br>Attorneys for the Official Non-Union Retiree Committee | 3/28/08<br>No. 7924 | $133,924.50 | $133,924.50 | $133,924.50 | $11,110.42 | $11,110.42 |
| Development Specialists, Inc.[5]<br>Financial Advisors for the Official Non-Union Retiree Committee | 3/28/08<br>No. 7929 | $1,236,579.75 | $1,236,579.75 | $1,236,579.75 | $68,578.82 | $68,578.82 |
| The Segal Company<br>Actuarial Professionals for the Official Non-Union Retiree Committee | 3/28/08<br>No. 7928<br>Supplement No. 7944 | $10,878.75 | $10,878.75 | $10,878.75 | $0 | $0 |

Initials: /s/BRL   USBJ            Date:  5/28/2008

---

[4]Retained Professional is requesting final allowance of compensation and reimbursement of expenses for compensation and expenses previously approved on an interim basis, but is not requesting approval of any additional interim compensation and expenses in its fee application.

[5] Retained Professional is requesting final allowance of compensation and reimbursement of expenses for compensation and expenses previously approved on an interim basis, but is not requesting approval of any additional interim compensation and expenses in its fee application.

**SCHEDULE A(2)**

**SUMMARY: ALL FEE PERIODS**
**(INCLUDING THIS PERIOD)**

| APPLICANT | TOTAL FEES REQUESTED | TOTAL FEES ALLOWED | TOTAL FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED[6] |
|---|---|---|---|---|---|
| Jones Day<br>Attorneys for the Debtors | $57,352,805.00[7] | $57,026,501.50[8] | $57,026,501.50 | $2,621,882.86 | $2,598,005.31 |
| Miller Buckfire & Co., LLC<br>Financial Advisor and Investment Banker to the Debtors | $27,750,000.00 | $27,750,000.00 | $27,750,000.00 | $716,144.36 | $658,781.28 |
| Pachulski Stang Ziehl & Jones LLP<br>Conflicts Counsel for Debtors | $2,082,594.25 | $2,082,594.25 | $2,082,594.25 | $114,203.98 | $111,303.88 |
| Hunton & Williams LLP<br>Special Counsel to the Debtors | $4,914,951.13 | $4,914,951.13 | $4,914,951.13 | $116,149.39 | $116,149.39 |
| Ernst & Young LLP<br>Risk Advisory, Due Diligence and Tax Advisory Services Providers for the Debtors | $34,114,418.00 | $34,114,418.00 | $34,114,418.00 | $1,621,261.00 | $1,612,174.00 |
| Katten Muchin Rosenman LLP<br>Special Securities and Litigation Counsel for the Debtors | $2,883,621.35 | $2,883,621.35 | $2,883,621.35 | $111,509.08 | $111,429.08 |
| PricewaterhouseCoopers LLP<br>Auditors for the Debtors | $14,721,262.82 | $14,721,262.82 | $14,721,262.82 | $655,849.50 | $655,849.50 |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Special Counsel for the Debtors | $1,713,285.00 | $1,713,285.00 | $1,713,285.00 | $107,964.26 | $107,964.26 |
| Hilco Appraisal Services<br>Appraisers for the Debtors | $597,500.00 | $597,500.00 | $597,500.00 | $106,296.38 | $106,296.38 |

---

[6]Reflects all voluntary reductions to expenses made in connection with prior applications, including as described in the Order Granting Interim Applications of Professionals for Reimbursement of Actual and Necessary Expenses [Docket Nos. 3292, 4405, 4662, 5174, 6121 and 7591].

[7] As described in Jones Day's Application, this amount reflects certain voluntary reductions made in connection with the sixth interim period.

[8] Pursuant to an agreement with the U.S. Trustee, Jones Day reduced its fees in its second interim fee application by $35,097.00.  In addition, Jones Day voluntarily reduced its fees requested on a final basis by $291,206.50.

4

| APPLICANT | TOTAL FEES REQUESTED | TOTAL FEES ALLOWED | TOTAL FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED[6] |
|---|---|---|---|---|---|
| Cushman & Wakefield of Oregon, Inc. Appraisers for the Debtors | $300,000.00 | $300,000.00 | $300,000.00 | $0 | $0 |
| AP Services, LLC Crisis Manager for the Debtors, Success Fee | $4,000,000.00 | $4,000,000.00 | $4,000,000.00 | $0 | $0 |
| Dorsey & Whitney LLP Special International Counsel for the Debtors | $771,876.74 | $771,876.74 | $771,876.74 | $13,045.22 | $11,265.50 |
| Signature Associates Real Estate Consultants for the Debtors | $993,105.09 | $993,105.09 | $993,105.09 | $0 | $0 |
| Kramer Levin Naftalis & Frankel LLP Attorneys for the Official Committee of Unsecured Creditors | $10,878,509.80 | $10,878,509.80 | $10,878,509.80 | $686,835.12 | $670,267.60 |
| Halperin Battaglia Raicht, LLP Conflicts Counsel to the Official Committee of Unsecured Creditors | $1,196,981.50 | $1,196,981.50 | $1,196,981.50 | $41,712.84 | $40,967.50 |
| UBS Securities LLC Financial Advisor to the Official Committee of Unsecured Creditors | $4,225,806.45 | $4,225,806.45 | $4,225,806.45 | $96,619.29 | $94,724.87 |
| McDermott Will & Emery LLP Special Labor Counsel to the Official Committee of Unsecured Creditors | $58,967.00 | $58,967.00 | $58,967.00 | $1,044.60 | $1,044.60 |
| Analysis, Research, and Planning Corporation Asbestos Claims Evaluation Consultants to the Official Committee of Unsecured Creditors and the Former Official Committee of Equity Security Holders | $671,988.25 | $671,988.25 | $671,988.25 | $5,363.98 | $5,363.98 |
| FTI Consulting, Inc. Financial Advisor to the Official Committee of Unsecured Creditors | $5,592,311.83 | $5,592,311.83 | $5,592,311.83 | $65,641.67 | $65,641.67 |
| Berwin Leighton Paisner LLP Special European Counsel to the Official Committee of Unsecured Creditors | $126,777.00 | $126,777.00 | $126,777.00 | $5,517.49 | $5,517.49 |
| Fried, Frank, Harris, Shriver & Jacobson LLP Counsel for the Official Committee of Equity Security Holders | $1,819,870.50 | $1,819,870.50 | $1,819,870.50 | $59,484.86 | $59,484.86 |

| APPLICANT | TOTAL FEES REQUESTED | TOTAL FEES ALLOWED | TOTAL FEES TO BE PAID TO THE EXTENT CURRENTLY UNPAID | EXPENSES REQUESTED | EXPENSES ALLOWED[6] |
|---|---|---|---|---|---|
| Jefferies & Company, Inc. Financial Advisor to the Official Committee of Equity Security Holders | $540,000.00 | $540,000.00 | $540,000.00 | $24,033.30 | $24,033.30 |
| Stahl Cowen Crowley, LLC Attorneys for the Official Non-Union Retiree Committee | $2,376,923.75 | $2,360,368.50[9] | $2,360,368.50 | $267,020.85 | $267,020.85 |
| Development Specialists, Inc. Financial Advisors for the Official Non-Union Retiree Committee | $1,236,579.75 | $1,236,579.75 | $1,236,579.75 | $68,578.82 | $68,578.82 |
| The Segal Company Actuarial Professionals for the Official Non-Union Retiree Committee | $651,162.85 | $551,162.85[10] | $551,162.85 | $75,002.40 | $6,055.86 |

Initials: /s/BRL_ USBJ          Date: 5/28/2008

---

[9] This amount reflects a reduction of $16,555.25 on account of a computational error in fees sought for the period March 1, 2007 through June 30, 2007.

[10] The Segal Company reduced its fees in its second interim fee application by $100,000.00.

6

# **EXHIBIT G**

IN RE BEARING POINT, CASE NO. 09-10691

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
<u>In re</u>                                               :          **Chapter 11 Case No.**
:
**BEARINGPOINT, INC., <u>et al.</u>,**                    :          **09 - 10691 (REG)**
:
    **Debtors.**                       :          **(Jointly Administered)**
:
-------------------------------------------------------------x

**ORDER GRANTING APPLICATION OF AP SERVICES, LLC**
**AS CRISIS MANAGER AND CHIEF FINANCIAL OFFICER**
**<u>TO THE DEBTORS, FOR APPROVAL OF THE CONTINGENT SUCCESS FEE</u>**

Upon the application, dated August 28, 2009 (the "*Application*"), of AP Services,

LLC ("*APS*") as crisis managers and Chief Financial Officer to BearingPoint, Inc. and its direct

and indirect subsidiaries, debtors and debtors in possession in these chapter 11 cases

(collectively, the "*Debtors*"), seeking entry of an order approving the Contingent Success Fee[1]

pursuant to sections 330 and 331 of the Bankruptcy Code and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "*Bankruptcy Rules*"), all as more fully described in the Application,

the Court finds and determines the following:

    A.    Consideration of the Application and the relief requested therein is a core

proceeding pursuant to 28 U.S.C. § 157(b).

    B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

    C.    The Court has jurisdiction to consider the Application and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 of

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Application.

the United States District Court for the Southern District of New York, dated July 10, 1984

(Ward, Acting C.J.).

    D.  The Debtors have provided due and proper notice of the Application to

parties in interest (the "***Notice Parties***") in accordance with the *Order Pursuant to Section 105(a)*

*of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice*

*and Case Management Procedures*, dated March 5, 2009 [Docket No. 117], and no further notice

is necessary.

    E.  The legal and factual bases set forth in the Application establish just and

sufficient cause to grant the relief requested therein.

    F.  The relief granted herein is in the best interests of the Debtors, their

estates, creditors, and all parties in interest.

Therefore, it is hereby ORDERED that:

    1.  The Application is granted to the extent set forth herein.

    2.  The Application is granted in the amount of $4,500,000.00 for the

Contingent Success Fee.

    3.  The amount of $4,500,000.00 is reasonable compensation for services

rendered by APS.

    4.  The Debtors are authorized and directed to pay the allowed amounts sets

forth above, to the extent such amounts have not yet been paid.

    5.  This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

Dated: **September 18**, 2009

         ***s/ Robert E. Gerber***
         UNITED STATES BANKRUPTCY JUDGE

2

## **EXHIBIT H**

IN RE SEMCRUDE, L.P., CASE NO. 08-11525

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11
                                                      :
SEMCRUDE, L.P., et al.,¹                              :        Case No. 08-11525 (BLS)
                                                      :
              Reorganized Debtors.                    :        Jointly Administered
                                                      :
                                                      :        Re: Docket No. 7201
------------------------------------------------------x
```

### ORDER GRANTING APPLICATION BY AP SERVICES, LLC AS CRISIS MANAGERS TO THE DEBTORS FOR APPROVAL OF THE CONTINGENT SUCCESS FEE

Upon the application (the "Application"²) of AP Services, LLC ("APS") for entry of an order allowing APS the success fee (the "Contingent Success Fee") provided for in the Second Amendment, dated August 15, 2008, to the engagement letter entered into between APS and the Debtors, dated July 19, 2008; and upon the *Declaration of Lisa Donahue* filed in support of the Application; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article XXI of the *Fourth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 27, 2009 [Docket No. 6329] (the "Plan"); and it appearing that the Application is a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that venue of this proceeding and the Application in this District is

---

¹ The Debtors in these chapter 11 cases, along with the last four (4) digits of each debtor's federal tax identification number, are: SemCrude, L.P. (7524), Chemical Petroleum Exchange, Incorporated (8866), Eaglwing, L.P. (7243), Grayson Pipeline, L.L.C. (0013), Greyhawk Gas Storage Company, L.L.C. (4412), K.C. Asphalt L.L.C (6235), SemCanada II, L.P. (3006), SemCanada L.P. (1091), SemCrude Pipeline, L.L.C. (9811), SemFuel Transport LLC (6777), SemFuel, L.P. (1015), SemGas Gathering LLC (4203), SemGas Storage, L.L.C. (0621), SemGas, L.P. (1095), SemGroup Asia, L.L.C. (5852), SemGroup Finance Corp. (3152), SemGroup, L.P. (2297), SemKan, L.L.C (8083), SemManagement, L.L.C. (0772), SemMaterials Vietnam, L.L.C. (5931), SemMaterials, L.P. (5443), SemOperating G.P., L.L.C. (5442), SemStream, L.P. (0859), SemTrucking, L.P. (5355), Steuben Development Company, L.L.C. (9042), and SemCap, L.L.C. (5317). To date, SemGroup Holdings, L.P. (Case No. 08-12504) has not been consolidated with the Debtors' aforementioned chapter 11 cases for procedural purposes through joint administration.
² Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Application.

RLF1 3543591v 1

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application and the opportunity for a hearing on the Application was appropriate under the particular circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, that the Application is GRANTED, to the extent set forth herein; and it is further

ORDERED, that, in full and final resolution of the Application, APS is allowed, on a final basis, the Contingent Success Fee in the amount of $6,825,000.00 (the "Allowed Success Fee"); and it is further

ORDERED, that the above-captioned reorganized debtors (collectively, the "Reorganized Debtors"[3]) are hereby authorized to pay the Allowed Success Fee to APS; and it is further

ORDERED, that to the extent that this Order is inconsistent with any prior order or pleading with respect to the Application in the chapter 11 cases, the terms of this Order shall govern; and it is further

ORDERED, that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March 4, 2010
      Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

---

[3] Prior to the occurrence of the effective date of the Plan on November 30, 2009, the Reorganized Debtors were debtors and debtors-in-possession in these chapter 11 cases (the "Chapter 11 Cases").

2

## **EXHIBIT I**

IN RE READERS DIGEST, CASE NO. 09-23529

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| THE READER'S DIGEST ASSOCIATION, | ) | Case No. 09-23529 (RDD) |
| INC., *et al.*, | ) |  |
|  | ) |  |
| Reorganized Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER GRANTING APPLICATIONS OF RETAINED PROFESSIONALS FOR
FINAL ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
FOR THE PERIOD FROM AUGUST 24, 2009 THROUGH FEBRUARY 19, 2010**

Upon the applications (the "*Applications*") filed by the professionals (the

"*Professionals*") listed on **Exhibit A** attached hereto and retained in the chapter 11 cases of The

Reader's Digest Association, Inc. and certain of its affiliates, as debtors and debtors in

possession (collectively, the "*Debtors*" and, on and after February 19, 2010, the "*Reorganized*

*Debtors*")[1] seeking final allowance under 11 U.S.C. § 330 of compensation for professional

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alex Inc. (5531); Allrecipes.com, Inc. (3797); Ardee Music Publishing, Inc. (2291); Christmas Angel Productions, Inc. (2729); CompassLearning, Inc. (6535); Direct Entertainment Media Group, Inc. (2306); Direct Holdings Americas Inc. (1045); Direct Holdings Custom Publishing Inc. (7452); Direct Holdings Customer Service, Inc. (9015); Direct Holdings Education Inc. (5535); Direct Holdings Libraries Inc. (7299); Direct Holdings U.S. Corp. (4998); Funk & Wagnalls Yearbook Corp. (3787); Gareth Stevens, Inc. (2742); Home Service Publications, Inc. (9525); Pegasus Asia Investments Inc. (0077); Pegasus Investment, Inc. (4252); Pegasus Sales, Inc. (3259); Pleasantville Music Publishing, Inc. (2289); R.D. Manufacturing Corporation (0230); RD Large Edition, Inc. (1489); RD Publications, Inc. (9115); RD Walking, Inc. (6509); RDA Holding Co. (7045); RDA Sub Co. (0501); Reader's Digest Children's Publishing, Inc. (6326); Reader's Digest Consumer Services, Inc. (8469); Reader's Digest Entertainment, Inc. (4742); Reader's Digest Financial Services, Inc. (7291); Reader's Digest Latinoamerica, S.A. (5836); Reader's Digest Sales and Services, Inc. (2377); Reader's Digest Sub Nine, Inc. (2727); Reader's Digest Young Families, Inc. (6158); Reiman Manufacturing, LLC (8760); Reiman Media Group, Inc. (1192); Retirement Living Publishing Company, Inc. (9118); Saguaro Road Records, Inc. (2310); Taste of Home Media Group, Inc. (1190); Taste of Home Productions, Inc. (1193); The Reader's Digest Association, Inc. (6769); Travel Publications, Inc. (2927); W.A. Publications, LLC (0229); WAPLA, LLC (9272); Weekly Reader Corporation (3780); Weekly Reader Custom Publishing, Inc. (3276); World Almanac Education Group, Inc. (3781); World Wide Country Tours, Inc. (Continued…)

services and reimbursement of actual and necessary expenses incurred for the period from

August 24, 2009 through February 19, 2010 (the "**Final Fee Period**"); and the Court having

considered the Amended Guidelines for Fees and Disbursements for Professionals in the

Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995, the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996, and the

*Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for*

*Professionals*, dated September 17, 2009 [Docket No. 90] (the "**Interim Compensation Order**");

and the Court having jurisdiction to consider the Applications and the relief requested therein

pursuant to 28 U.S.C. § 1334; and venue in this district being proper pursuant to 28 U.S.C. §

1408; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that

due and proper notice of the Applications has been given; and the Court having reviewed the

Applications, the *Response of the United States Trustee Regarding Applications for Final*

*Compensation* [Docket No. 735] (the "**Response**") and the various pleadings filed and statements

made in open court at the May 10, 2010 hearing on the Applications (the "**Hearing**"); and the

Court having determined that the relief requested in the Applications is in the best interests of the

Debtors, their estates and their creditors; and after due deliberation and good and sufficient cause

appearing therefor, it is hereby ORDERED THAT:

1.    The Applications, as described on **Exhibit A** attached hereto, are hereby approved

to the extent set forth herein.

---

(1189); WRC Media, Inc. (6536). The location of the Reorganized Debtors' corporate headquarters is:  1
Reader's Digest Road, Pleasantville, NY 10570.

2.      Compensation to the Professionals for services rendered during the time periods set forth in the Applications is hereby allowed on a final basis in the amounts set forth on **Exhibit A** in the column entitled "Fees Allowed."

3.      Reimbursement to Professionals for expenses incurred during the time periods set forth in the Applications is hereby allowed on a final basis in the amounts set forth on **Exhibit A** in the column entitled "Expenses Allowed."

4.      The Debtors are authorized and directed to pay each Professional the fees and expenses set forth on **Exhibit A** in the column entitled "Total To Be Paid," to the extent that such amounts have not already been paid pursuant to the Interim Compensation Order or the *Order Granting Applications of Retained Professionals for Allowance of Interim Compensation for Services Rendered and for Reimbursement of Actual and Necessary Expenses for the Period from August 24, 2009 Through November 30, 2009* [Docket No. 676] (the "***First Interim Fee Period Order***").

5.      In addition to the amounts authorized and set forth on **Exhibit A** hereto, the Debtors are hereby authorized and directed to pay to AlixPartners, LLP ("***AlixPartners***") the EBITDA Contingent Success Fee, as defined in the *Second Interim and Final Fee Application for Final Allowance and Approval of (A) Compensation for Hourly-Based Fees Earned and Reimbursement for Expenses Incurred, as Well as, (B) the EBITDA Contingent Success Fee Relating to the Retention of AlixPartners, LLP During the Period of August 24, 2009, Through February 19, 2010* [Docket No. 708] (the "***AlixPartners Application***"), if and when due, based on the Debtors' June 30, 2010 EBITDA, as more specifically set forth in the formula and metrics in the AlixPartners Application and the Engagement Letter (as defined in the AlixPartners Application), without further order of this Court.  Prior to the Debtors' payment of the EBITDA

3

Contingent Success Fee to AlixPartners, AlixPartners shall provide to the Unsecured Creditors'

Committee (to the extent it remains in existence) and the United States Trustee documentation

that demonstrates the calculation of the EBITDA Contingent Success Fee, consistent with the

formula and metrics set forth in the Application and the Engagement Letter.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order.

7.      Notwithstanding the possible applicability of Rules 6004(h), 7062, and 9014 of

the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order

shall be immediately effective and enforceable upon its entry.

8.      The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated:  May 10, 2010                        /s/Robert D. Drain
         White Plains, New York            United States Bankruptcy Judge

4

## Exhibit A

Case No.: 09-23529 (RDD)
Case Name: The Reader's Digest Association, Inc., *et al.*

### FINAL FEE PERIOD: AUGUST 24, 2009 THROUGH FEBRUARY 19, 2010

| PROFESSIONAL | DATE OF APPLICATION | APPLICATION PERIOD | FEES REQUESTED | FEES REDUCED[1] | FEES ALLOWED | EXPENSES REQUESTED | EXPENSES REDUCED[2] | EXPENSES ALLOWED | TOTAL TO BE PAID |
|---|---|---|---|---|---|---|---|---|---|
| Kirkland & Ellis LLP (Counsel to the Debtors) | 4/5/2010 (Docket No. 706) | 8/24/09 - 2/19/10 | $8,414,431.19 | $8,224.55 | $8,406,206.64 | $446,028.46 | $11,775.45 | $434,253.01 | $8,840,459.65 |
| KPMG LLP (Accounting & Financial Reporting Advisors and Tax Consultants for the Debtors) | 3/30/2010 (Docket No. 700) | 10/19/09 - 2/19/10 | $1,455,457.00 | $0.00 | $1,455,457.00 | $111,824.00 | $6,500.00 | $105,324.00 | $1,560,781.00 |
| Otterbourg, Steindler, Houston & Rosen, P.C. (Counsel to the Official Committee of Unsecured Creditors) | 4/5/2010 (Docket No. 702) | 8/31/09 - 2/19/10 | $1,589,931.75 | $3,341.50 | $1,586,590.25 | $41,638.01 | $0.00 | $41,638.01 | $1,628,228.26 |
| BDO (U.K.), LLP (Special UK Pension Advisor to the Official Committee of Unsecured Creditors) | 3/31/2010 (Docket No. 703) | 9/14/09 - 2/19/10 | $96,305.61 | $0.00 | $96,305.61 | $0.00 | $0.00 | $0.00 | $96,305.61 |
| Trenwith Securities, LLP (Investment Banker to the Official Committee of Unsecured Creditors) | 4/2/2010 (Docket No. 704) | 9/1/09 - 2/19/10 | $278,975.00 | $0.00 | $278,975.00 | $7,924.09 | $0.00 | $7,924.09 | $286,899.09 |

Date: <u>May 10, 2010</u>                    Initials: <u>/s/RDD, USBJ</u>

---

[1]   The amounts in this column reflect voluntary reductions of fees by the relevant Professionals to resolve concerns raised by the U.S. Trustee.

[2]   The amounts in this column reflect voluntary reductions of expenses by the relevant Professionals to resolve concerns raised by the U.S. Trustee.

| PROFESSIONAL | DATE OF APPLICATION | APPLICATION PERIOD | FEES REQUESTED | FEES REDUCED[1] | FEES ALLOWED | EXPENSES REQUESTED | EXPENSES REDUCED[2] | EXPENSES ALLOWED | TOTAL TO BE PAID |
|---|---|---|---|---|---|---|---|---|---|
| BDO Seidman LLP (Financial Advisor to the Official Committee of Unsecured Creditors) | 4/1/2010 (Docket No. 705) | 9/1/09 - 3/31/10 | $1,280,149.07 | $0.00 | $1,280,149.07 | $2,781.63 | $198.00 | $2,583.63 | $1,282,732.70 |
| Miller Buckfire & Co., LLC (Financial Advisor and Investment Banker to the Debtors) | 4/5/2010 (Docket No. 707) | 8/24/09 - 2/19/10 | $7,055,000.00 | $0.00 | $7,055,000.00 | $67,758.44 | $2,636.31 | $65,122.13 | $7,120,122.13 |
| AlixPartners LLP (Restructuring Advisor to the Debtors) | 4/5/2010 (Docket No. 708) | 8/24/09 - 2/19/10 | $10,347,829.20 | $0.00 | $10,347,829.20 | $573,461.54[3] | $25,000.00 | $548,461.54 | $10,896,290.74 |
| Milbank, Tweed, Hadley & McCloy (Ordinary Course Professional) | 4/5/2010 (Docket No. 710) | 8/24/09 - 2/19/10 | $542,367.02 | $0.00 | $542,367.02 | $7,502.91 | $3,625.71 | $3,877.20 | $546,244.22 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP (Conflicts Counsel to the Debtors) | 4/5/2010 (Docket 711) | 8/24/09 - 2/19/10 | $185,153.50 | $0.00 | $185,153.50 | $6,460.42 | $0.00 | $6,460.42 | $191,613.92 |
| Duff & Phelps, LLC (Valuation Services Provider to the Debtors) | 4/5/2010 (Docket No. 712) | 10/1/09 - 2/19/2010 | $424,290.00 | $0.00 | $424,290.00 | $7,391.87 | $1,217.50 | $6,174.37 | $430,464.37 |
| Ernst & Young LLP (Tax Services Providers and Accountants to the Debtors) | 4/5/2010 (Docket No. 713) | 8/24/09 - 2/19/10 | $4,072,013.70 | $0.00 | $4,072,013.70 | $36,252.83 | $2,117.12 | $34,135.71 | $4,106,149.41 |

Date: May 10, 2010                                    Initials: /s/RDD, USBJ

---

[3]  Total expenses requested include $21,843.72 submitted pursuant to *AlixPartners' Notice of Additional Expenses Filed in Connection with AlixPartners' Second Interim and Final Fee Application Relating to the Retention of AlixPartners, LLP During the Period of August 24, 2009, Through February 19, 2010* [Docket No. 726].