HEARING DATE AND TIME:  August 6, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: July 30, 2010 at 4:00 p.m. (Eastern Time)

Gerrit M. Pronske
Rakhee V. Patel
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Counsel for Boyd Bryant, On Behalf of Himself
And All Others Similarly Situated

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :          Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :          09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                        :
                 Debtors.               :          (Jointly Administered)
                                        :
------------------------------------------------------------x
                                        :
BOYD BRYANT, on behalf of himself and   :          Adversary No. 09-00508 (REG)
    all others similarly situated,      :
                       Plaintiffs,      :
                                        :
vs.                                     :
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :
      f/k/a General Motors Corp., et al. :
                                        :
                 Defendant.             :
------------------------------------------------------------x
```

CLASS ACTION PLAINTIFF BOYD BRYANT'S MEMORANDUM
AND EVIDENCE IN SUPPORT OF DEBTORS' MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT, INCLUDING CLAIMS ESTIMATION, FOR
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS,
TO APPROVE CASH DISBURSEMENT AND FORMS OF NOTICE,
AND TO SET FAIRNESS HEARING

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Mr. Boyd Bryant, Class Action Plaintiff herein ("**Mr. Bryant**"), and files

his Memorandum And Evidence In Support Of Debtors' Motion For Preliminary Approval Of

Settlement, Including Claims Estimation, For Conditional Certification Of Settlement Class, To

Approve Cash Disbursement And Forms Of Notice, And To Set Fairness Hearing (the

"**Memorandum**"), and respectfully alleges and shows unto the Court the following:

### Summary of Mr. Bryant's Memorandum

1.      Mr. Bryant and Class Counsel[1] have been involved in litigation over the

Parking Brake in 1999-2001 year-model Class vehicles since February, 2005.  This litigation has

been an extraordinarily hard-fought and time-consuming endeavor for all involved.  This Court,

for example, is the seventh different judicial tribunal to address the Parking Brake claims of Mr.

Bryant and the Class.  Although many of the vehicles at issue in this class action are now over

ten (10) years old, with the Settlement Agreement and the reimbursement relief it provides,

Settlement Class members can achieve finality and, in all likelihood, significant Parking Brake

reimbursements.

2.      The case was originally certified as a nationwide class action against

General Motors Corporation ("GMC") by the late Hon. James Hudson in the Arkansas State

Court.  Mr. Bryant and the Class then prevailed on two consecutive appeals of the Certification

Order.  The Parties unsuccessfully attempted to mediate and settle the case in the fall of 2008 and

in early 2009.  GMC filed for bankruptcy June 1, 2009, effectively ending any talks at that time.

3.      Because the Class had been certified pre-petition by the Arkansas State

Court, Mr. Bryant and the Class filed the Bryant Proofs of Claim and simultaneously sought

Court permission for Class participation in Debtors' bankruptcy with their Motion to File Class

Proof of Claim.  Proximate to these filings, Class Counsel and Debtors' Counsel resumed talks

---

[1] All capitalized terms not otherwise defined in this Memorandum shall have the meanings ascribed to them in the
Settlement Agreement and/or in Debtors' Motion For Preliminary Approval Of Settlement, Including Claims
Estimation, For Conditional Certification Of Settlement Class, To Approve Cash Disbursement And Forms Of
Notice, And To Set Fairness Hearing ("**Debtors' Motion**").

about possible areas of settlement.  Since early 2010, Class Counsel and Debtors' Counsel have

been involved in good-faith, arms' length negotiations in an effort to resolve this matter on a

class-wide basis.  Through the good work of many, and after Mr. Bryant and Class Counsel have

fully considered the consequences to the Class of not reaching a settlement with Debtors, the

matter has now been resolved for what is believed to be fair and adequate consideration for the

Class.

       4.     In this Memorandum, Mr. Bryant will not address the Debtors' issues and

arguments set forth in Debtors' Motion For Preliminary Approval Of Settlement, Including

Claims Estimation, For Conditional Certification Of Settlement Class, To Approve Cash

Disbursement And Forms Of Notice, And To Set Fairness Hearing ("**Debtors' Motion**").

Instead, Mr. Bryant will argue and adduce evidence as to why, for preliminary approval

purposes, the Settlement Agreement easily meets all Rule 23(e) fairness factors; why, at this

preliminary approval stage, Class Counsel's Attorney Fee Award is reasonable and justified;

why the Reimbursable Costs and Expenses Awarded are appropriate; and why the Incentive

Award to Boyd Bryant is deserved.

### Rule 23(e) Settlement Factors

       5.     Rule 23(e) requires court approval for a class action settlement to ensure

that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  *In

re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000) (citing *Weinberger

v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982)), *aff'd*, 424 F.3d 132 (2d Cir. 2005).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche

Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, Courts determine

3

whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).[2]

        8.        Courts examine procedural and substantive fairness in light of the fact there is a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *see also In re PaineWebber Ltd. P'ships Litig*, 147 F.3d 132, 138 (2d Cir. 1998) (same); *In re WorldCom, Inc. Sec. Litig*., 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).  Further, "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist LEXIS 18913, at *9-10 (S.D.N.Y. Mar. 3, 2010)(citation omitted).  In the final analysis, the Court

---

[2] The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness  of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

should give weight to the parties' judgment that the settlement is fair and reasonable. *See Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *9 (S.D.N.Y. May 28, 2009); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *13 (S.D.N.Y. Mar. 31, 2009).

### Standard at Preliminary Approval Stage

9.      Preliminary approval is the first step in the class-action settlement process, through which the Court determines "whether notice of the proposed settlement pursuant to Rule 23(e) should be given to class members . . . and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement." 4 NEWBERG ON CLASS ACTIONS § 11:25 (4th ed.); *see Chin v. RCN Corp.*, No. 08 Civ. 7349, 2010 U.S. Dist. LEXIS 31272 at *9 (S.D.N.Y. Mar. 12, 2010); *In re Prudential Sec. Inc. Ltd. Partnership Litig*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make this determination, the Court must evaluate whether the proposed settlement contains "obvious deficiencies, such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys," or whether it "appears to fall within the range of possible approval[.]" MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed.) (1995); *see* MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.) (2004) (mentioning "inadequate compensation" of the class and "the need for subclasses" as circumstances which may cause the district court to doubt the fairness of a proposed settlement during a preliminary fairness review). Preliminary approval of a class action settlement "is not tantamount to a finding that the settlement is fair and reasonable." *In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). In fact, "a full fairness analysis is neither feasible nor appropriate" when evaluating a proposed settlement agreement for preliminary approval. *Authors Guild v. Google, Inc.*, No. 05 Civ. 8136, 2009 U.S. Dist. LEXIS 116175, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009).

10.     Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC Pick-Up Truck Fuel Tank Prods, Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995); *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 54553 (E.D.N.Y. June 26, 2009) (conditionally certifying multi-state wage and hour settlement class and granting preliminary approval to nationwide wage and hour settlement).

## Preliminary Approval Warranted

### A.  No Obvious Deficiencies In Settlement Agreement

11.     In Debtors' Motion, Debtors have adequately explained the nature and terms of the Settlement Agreement.  In support of the Settlement Agreement's overall fairness, Class Counsel attaches to this Memorandum declaration evidence recounting the general history of this litigation, including the discovery conducted; the Certification Order and appeals thereafter; the procedural events and multiple mediations ensuing both during and after GMC's petition for writ of *certiorari* to the United States Supreme Court; the settlement negotiations with Debtors following the commencement of bankruptcy proceedings; and the reasons for eventually arriving at a settlement of this matter.  *See* **Exhibit "A"** (Declaration of John W. Arnold Under Penalty of Perjury); **Exhibit "B"** (Declaration of Jim Wyly Under Penalty of Perjury).

12.     Although this matter was originally filed in February 2005 before CAFA's[3] effective date, Mr. Bryant and Class Counsel were initially confronted with GMC removing on CAFA grounds to the United States District Court for the Western District of

---

[3] Class Action Fairness Act of 2005.  *See* 28 U.S.C. §§1332(d); 1453; and 1711-1715.

Arkansas.  Following remand to the Arkansas State Court, which took approximately five (5)

months to obtain, Class Counsel conducted extensive document discovery regarding the Parking

Brake defect, retained and designated multiple engineer expert witnesses, and fully briefed the

issue of class certification to the Arkansas State Court.  Following a day-long certification

hearing in September 2006, and entry of the Certification Order by the Arkansas State Court in

January 2007, Class Counsel moved into a year-and-a-half long phase of successfully contesting

appeals of the Certification Order by GMC both to the Arkansas Supreme Court and the United

States Supreme Court.

        13.     In October 2008, during the pendency of GMC's petition for writ of

*certiorari*, Class Counsel and GMC participated in two-day mediation in New Orleans,

Louisiana.  The mediation was conducted by the Hon. Edward Infante, an experienced class-

action mediator.   While unsuccessful in its entirety, the parties and Judge Infante were able to

work through several substantive matters, including major elements of the Class reimbursement

tier-structure and the notice plan provisions that are now, in large measure, contained in the

Settlement Agreement.  A second mediation was conducted in San Francisco in early November

2008, again by Judge Infante.   Despite the occurrence of these two mediations, no settlement

was reached.

        14.     In December 2008 and January 2009 Class Counsel drafted responsive

briefing and attended a hearing regarding a motion for summary judgment filed by GMC.

Further, because the Arkansas State Court was pressing to set the matter for trial on the merits in

mid-to-late 2009, Class Counsel spent over four (4) different days in late 2008 and early 2009

deposing multiple employees of GMC at Renaissance Center, GMC's world headquarters in

Detroit.

15.    During the spring of 2009, the Arkansas State Court appointed a new mediator, Mr. John Mercy of Texarkana, Texas.  While Mr. Mercy entertained and relayed informal discussions between the parties in an attempt to hold settlement talks together, it was becoming increasingly evident to all involved that GMC was in dire financial straits, and that it would likely commence bankruptcy proceedings.

16.    Following the commencement of Debtors' bankruptcy on June 1, 2009, and the entry of the Court's Sale Order involving General Motors Company[4], Debtors removed the Arkansas Action to the Arkansas Bankruptcy Court.  In response, Class Counsel retained bankruptcy counsel and moved for a remand to the Arkansas State Court under both mandatory and discretionary abstention principles.  GMC then moved to transfer the removed action to this Court.  On October 1, 2009, over stringent opposition from Mr. Bryant and the Class, the Arkansas Bankruptcy Court entered a transfer order.  On October 14, 2009, the transfer to this Court occurred, resulting in the captioned adversary proceeding.  Mr. Bryant's remand motion remains pending for resolution and an appeal of the transfer order has been filed with the United States District Court for the Western District of Arkansas.

17.    On November 27, 2009 Mr. Bryant filed the Bryant Proofs of Claim in this matter.  That same date, Mr. Bryant filed the "Plaintiffs' Motion to Allow Plaintiffs to File a Class Proof of Claim and Alternative Motion, Subject to Motion for an Order Allowing Plaintiffs to File a Class Proof of Claim, For the Application of Federal Rule of Bankruptcy Procedure 7023 Pursuant to Federal Rule of Bankruptcy Procedure 9014."  *See* Docket Entry No. 4560. Based upon the pre-petition Certification Order, Mr. Bryant, on the Class's behalf, asked this Court to allow Mr. Bryant and the Class to seek class-wide relief in Debtors' bankruptcy.  *Id.*

---

[4] General Motors Company is referred to as **"New GM"** in the Settlement Agreement.  *See* Settlement Agreement, ¶ 1.30.

8

18.    In September 2009, Class Counsel began to engage in discussions with Debtors' Counsel regarding the nature of Mr. Bryant's case, and whether there was interest in trying to resolve it.   In January 2010, Class Counsel and Debtors' Counsel began more substantive and earnest settlement discussions and negotiations.  Debtors, at that time, indicated that while they were interested in reaching a settlement, a strong argument existed to de-certify the Class in the context of challenging Mr. Bryant's Motion to Allow Plaintiffs to File a Class Proof of Claim.  Class Counsel, of course, recognized and appreciated the time, costs, and risks associated with any de-certification fight.  Prolonged litigation over the de-certification issue, including potential appeals associated with it, might not conclude until well after Debtors' plan had been confirmed, and after Debtors' bankruptcy estate is depleted of assets.  In addition, they recognized that if Debtors were successful in their effort to de-certify, Class Members could be unable to obtain any Parking Brake reimbursements whatsoever, given potential enforcement of the Court's November 30, 2009 claims bar date.  Accordingly, Class Counsel concluded the pursuit of a settlement was in the best interests of the Class.

19.    The settlement negotiations between Class Counsel and Debtors' Counsel initially dealt with the Class reimbursement components that had mostly been resolved in the pre-petition mediation sessions.  As reflected in the Settlement Agreement, which now provides a *pro rata* reimbursement to Settlement Class Members, the Class-reimbursement mechanism of any settlement has always been of paramount concern to Mr. Bryant and Class Counsel.  While Class Counsel and Debtors' Counsel were, in general, able to resolve issues related to the Class-reimbursement, Debtors, in early 2010, indicated to Class Counsel that the only settlement consideration they could provide is an allowed, general unsecured claim in Debtors' bankruptcy proceedings.  Due to this unique form of non-cash settlement consideration, Class Counsel began

9

contemplating the creation of a cash settlement fund by assigning or selling any allowed claim received from Debtors to a third party, or *via* the receipt of plan distributions of New GM stock or other consideration in satisfaction of the allowed claim, and liquidation of same in the applicable markets, or otherwise.

20.     To implement a settlement out of this contemplated cash settlement fund, it was thought Class Members would be reimbursed from the fund under the settlement-tier structure, and attorneys' fees, expenses, and an incentive award to Mr. Bryant would also be paid from the fund.  To further implement the settlement, the costs of notice and administratively handling the settlement was also considered.  Following lengthy conversations about all of these issues, Class Counsel and Debtors' Counsel eventually arrived at the Allowed Claim amount of twelve million dollars ($12,000,000), and the Cash Disbursement of one hundred thousand dollars ($100,000) to defray Administration Expenses and certain expenses associated with implementing the Plan of Notice.

21.     Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness."  *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110, 122 (S.D.N.Y. 2009).  Based on the prolonged and contentious history of this litigation; the course of settlement negotiations, both pre and post-petition; the different factors considered by experienced Class Counsel in determining whether to advise Mr. Bryant, as Class representative, to settle; and the overall soundness of the economic relief projected to be available to the Settlement Class, there exists no procedural impropriety associated with the Settlement Agreement.  That is, there is nothing in the record to rebut or that is inconsistent with the

10

"presumption of fairness" associated with these negotiations, and the Settlement Agreement as a whole.  The Settlement Agreement, again, is fair and is in the best interests of the Class, especially because its *pro rata* tier reimbursement structure and Final Unclaimed Fund provision offers Class Members the real possibility of substantial Parking-Brake reimbursement relief, including the possibility of some Class Members being made completely whole.

22.    Moreover, the Settlement Agreement, at least in part, was the product of multiple prepetition mediation attempts between the parties, utilizing experienced class-action mediators Judge Infante and Mr. Mercy.  As indicated above, the reimbursement-tier structure and the Plan of Notice derived from these sessions are an integral part of the Settlement Agreement.  Courts have recognized a mediator's involvement as an important factor when determining whether a class-action settlement is procedurally appropriate.  *See e.g. In re Currency Conversion Fee Antitrust Litig.*,263 F.R.D. at 122;  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (finding the use of an experienced mediator supports fairness).

23.    Finally, the duration of pre and post-petition negotiations, and certain disagreements and breakdowns that arose during those negotiations, is evidence the Settlement Agreement represents an arms-length, non-collusive transaction.  *See e.g. Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 336-37 (S.D.N.Y. 2005); *Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951 at *13 (Sept. 19, 2008 E.D.N.Y.).  As shown, the parties have negotiated the terms of the Settlement Agreement for months, strictly on an arms-length basis.

24.    To briefly address substantive fairness, the Settlement Agreement provides Settlement Class members the benefit of the twelve million dollar ($12,000,000)

11

Allowed Claim.  As explained above, it is contemplated this Allowed Claim will be monetized

and that its monetary proceeds will create the Cash Settlement Fund.  Following the Cash

Settlement Fund's reduction by payment of the Attorney Fee Award, Reimbursable Costs and

Expenses Awarded, and the Incentive Award to Boyd Bryant, Settlement Class members, if

eligible, will be reimbursed for their out-of-pocket Parking Brake repairs on a pro-rata basis

under the three (3) settlement tiers.  If sufficient funds exist in the Net Cash Settlement Fund,

eliminating the need for any *pro rata* reduction, eligible Settlement Class Members in the first

tier will be made fully whole at the outset.  Then, if a Final Unclaimed Fund eventually exists, it

is possible that Settlement Class Members in all tiers, if not yet made whole, can achieve full

reimbursement for their out-of-pocket Parking Brake repairs.

       25.      Laying aside Class Counsel's Attorney Fee Award, the Reimbursable

Costs and Expenses Awarded, and the Incentive Award to Boyd Bryant (all of which will be

separately discussed, *infra*), there are no obvious deficiencies in the Settlement Agreement

counseling against preliminary approval under Rule 23(e).  For preliminary approval purposes,

the Settlement Agreement is both procedurally and substantively fair, especially given the

"presumption of fairness" that has attached to the Settlement Agreement and which, given the

unique circumstances presented by Debtors' bankruptcy, cannot be rebutted.  *In re Austrian &*

*German Bank Holocaust Litig*., 80 F. Supp. 2d at 173-74.

### B. No Excessive Compensation for Attorneys

       26.      In calculating a reasonable attorney's fee, the Court has discretion to

choose between the lodestar method and the percentage of recovery method.  *In re WorldCom,*

*Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2005 U.S. Dist. LEXIS 28686, 2005 WL 3101769, at

*7 (S.D.N.Y. Nov. 21, 2005).  However, "[t]he trend in this Circuit is toward the percentage

method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *WorldCom*, 2005 U.S. Dist. LEXIS 28686, 2005 WL 3101769, at *7 (quoting *Wal-Mart*, 396 F.3d at 121). This "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process' of loadstar computation." *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003)(quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Even where the percentage method is used, the lodestar method remains useful as a "cross-check on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 47, 50. Regardless of the method that is applied, the Court is guided by the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.

27.    The Settlement Agreement contemplates the Attorney Fee Award be paid from the Cash Settlement Fund derived from monetizing the Allowed Claim. The Supreme Court, as well as courts in this Circuit, have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (citing 100 years of precedent); *see also In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a **class** are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee -- set by the court -- to be taken from the fund'") (citation omitted). The rationale for the common fund doctrine is an equitable one: it prevents unjust enrichment of

those benefiting from a lawsuit without contributing to its cost. *Goldberger,* 209 F.3d 43 at 47

(citing *Boeing,* 444 U.S. at 478); *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695 (CM),

2007 U.S. Dist. LEXIS 85554, at *7 (S.D.N.Y. Nov. 7, 2007) ("Fees and expenses are paid from

the common fund so that class members contribute equally towards the costs associated with

litigation pursued on their behalf."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369

(S.D.N.Y. 2002) (citing *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 536, 26 L. Ed.

1157 (1881)) (a traditional purpose of the common fund doctrine is to make "fair and just

allowances" to plaintiffs' counsel). Moreover, public policy supports payment of fees from the

common fund. "Private actions to redress real injuries … could not be sustained if plaintiffs'

counsel were not to receive remuneration from the settlement fund for their efforts on behalf of

the class." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS

24890, at *27 (S.D.N.Y. Oct. 24, 2005).

        28.    As per the Settlement Agreement, Class Counsel, in essence, seeks from

this Court approval of payment of their contingency fee[5] in an amount of thirty-three percent

(33%) of the benefit to the Settlement Class, which is the Allowed Claim. As the Settlement

Agreement reflects, Class Counsel, for their Attorney Fee Award, first asks to be awarded thirty-

three percent (33%) of the Cash Settlement Fund. Following Parking Brake-repairs

reimbursement payments to the Settlement Class Members, an analysis will be conducted to

determine whether a Final Unclaimed Fund exists. If such a fund exists, then eligible Settlement

Class Members not yet made whole will be paid additional monies, limited only by their being

---

[5] "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of
litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11
(S.D.N.Y. May 14, 2004); *see also In re American Bank Note Holographic*s, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y.
2001) (concluding that it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate
fee to award"). The risk of litigation is often cited as the "most important Goldberger factor." *In re Ashanti
Goldfields Sec. Litig.*, Civil Action No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *9 (E.D.N.Y. Nov. 15,
2005) (internal citation omitted).

made completely whole.  If, after these additional Final Unclaimed Fund payments, money still

remains in the Final Unclaimed Fund, Class Counsel will then receive payment of the remaining

Attorney Fee Award, capped at a total of four million dollars ($4,000,000).

        29.     Class Counsel's fee request is typical in class action settlements in the

Second Circuit. *See e.g., Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS

47036 at **27-28 (S.D.N.Y. May 11, 2010) ("Class Counsel's request for one-third of the Fund

is reasonable and 'consistent with the norms of class litigation in this circuit.')(citing *Gilliam v.

Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y.

Mar. 24, 2008); *Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F.Supp.2d at 262 (33 1/3% of

settlement fund approved for attorneys' fees); I*n re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002

U.S. Dist. LEXIS 23170, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of

settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97

Civ. 5874, 1999 U.S. Dist. LEXIS 17627, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999)

(33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.*, No. 89

Civ. 0076, 1993 U.S. Dist. LEXIS 5211, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33

1/3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer

Litig.,* 142 F.R.D. 588, 596-597 (S.D.N.Y. 1992) (33 1/3% of settlement fund approved for

attorneys' fees); *In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement

fund approved for attorneys' fees, plus costs).  The Attorney Fee Award has been entirely

contingent upon success.  Class Counsel has risked time and effort and advanced costs and

expenses, but never had an ultimate guarantee of compensation.  For these reasons, alone, the

requested Attorney Fee Award is reasonable and should be preliminarily approved.

15

30.    Further, Class Counsel's request of a percentage of the Allowed Claim, rather than strictly a percentage of the monetized amount of the Allowed Claim, is proper in this setting.  Indeed, "[a] Second Circuit panel [has] held that attorneys' fees awarded as a percentage of a common fund must take into consideration the entirety of the fund, not only that portion received directly by class members." *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 264-265 (E.D.N.Y. 2009)(citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)).

31.    Finally, any lodestar crosscheck will yield a finding that Class Counsel is not receiving excessive compensation.  In conducting such a crosscheck, the Court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate: and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. *See e. g. Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in, *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc).

32.    Class Counsel anticipates submitting fee evidence revealing lawyers  in their respective firms, over more than five (5) years, having spent over seven thousand six hundred (7,600)  hours on this matter.  Given the length of time this matter has been on file, the tasks necessary to successfully prosecute it, the unique nature of the various forums in which these matters have been dealt, and the quality of representation received by the Class, the hours expended justify the Attorney Fee Award.  Moreover, regardless of any reasonable hourly rate applied to these hours, the resulting lodestar crosscheck calculation will easily establish the

16

reasonableness of the Attorney Fee Award, and only reaffirm that the Attorney Fee Award does
not constitute excessive compensation for Class Counsel.

### C.  No Undue Preferential Treatment of Boyd Bryant

33.  "[Incentive or] service awards are common in class action cases and are
important to compensate plaintiffs for the time and effort expended in assisting the prosecution
of the litigation, the risks incurred by becoming and continuing as a litigant, and any other
burdens sustained by the plaintiff."   *Clark,* 2010 U.S. Dist. LEXIS 47036 at **30-31 (citing
*Khait v. Whirlpool Corp.*, No. 06-6381 2010 U.S. Dist. LEXIS 4067 at **26-27 (E.D.N.Y. Jan.
20, 2010)(awarding $15,000 service awards each to 5 named plaintiffs and $10,000 service
awards each to 10 named plaintiffs); and *Mohney*, 2009 U.S. Dist. LEXIS 27899 at **18-
19)(awarding $ 6,000 service awards each to 14 named plaintiffs)).  As discussed in Class
Counsel's declarations, Mr. Bryant has subjected his vehicle to multiple inspections and testing
by different parties; has given his deposition; has attended a portion of the September 2006 class
certification hearing in the Arkansas State Court; has participated in settlement talks, including
those during mediation; and has maintained contact with Class Counsel and monitored the
overall progress of this matter throughout the years of this litigation.  Mr. Bryant deserves
compensation both for his participation and service as Class representative, and in light of the
risks Mr. Bryant has incurred by becoming and continuing as a class-action litigant.  The amount
of ten thousand dollars ($10,000.00) awarded to Mr. Bryant is neither excessive nor unduly
preferential.

### D.  Requested Reimbursable Costs And Expenses Awarded Are Reasonable

34.  Finally, "courts typically allow counsel to recover their reasonable out-of-
pocket expenses."  *Clark,* 2010 U.S. Dist. LEXIS 47036 at *30 (citing

*Holdings PLC Sec. Litig*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).  In their declarations, Class Counsel notes that they will submit evidence supporting their request for two hundred ninety thousand dollars ($290,000.00) in Reimbursable Costs and Expenses Awarded.  Given the lengthy history of this litigation, and the extensive work performed by Class Counsel, the Court should view this request as eminently reasonable, and as no barrier to preliminary approval of the Settlement Agreement.

      **WHEREFORE**, Mr. Bryant and Class Counsel, on behalf of the Class, respectfully request entry of the Order granting the relief requested in Debtors' Motion, and such other and further relief which is just.

Dated:  July 29, 2010.
Dallas, Texas

/s/ Rakhee V. Patel
Gerrit M. Pronske
Rakhee V. Patel
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier

David W. Crowe
Tex. Bar No. 05164250 (*pro hac vice* pending)
John W. Arnold (*pro hac vice* pending)
Ark. Bar No. 94163
BAILEY/CROWE & KUGLER, L.L.P.
6550 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 231-0555 -- Telephone
(214) 231-0556 -- Telecopier

James C. Wyly
Arkansas Bar No. 90158 (*pro hac vice* pending)
Sean F. Rommel
Arkansas Bar No. 94158 (*pro hac vice* pending)
WYLY-ROMMEL, PLLC
2311 Moores Lane
Texarkana, Texas 75503
(903) 334-8646 -- Telephone
(903) 334-8645 -- Telecopier

COUNSEL FOR BOYD BRYANT, ON
BEHALF OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, *et al.*,         :    09-50026 (REG)
          f/k/a General Motors Corp., *et al.*  :
                                              :
                    Debtors.                  :    (Jointly Administered)
                                              :
-------------------------------------------------------------x
                                              :
BOYD BRYANT, on behalf of himself and         :    Adversary No. 09-00508 (REG)
          all others similarly situated,      :
                            Plaintiffs,       :
                                              :
vs.                                           :
                                              :
MOTORS LIQUIDATION COMPANY, *et al.*,         :
          f/k/a General Motors Corp., *et al.*  :
                                              :
                    Defendant.                :
-------------------------------------------------------------x

### Declaration of John W. Arnold Under Penalty of Perjury

STATE OF TEXAS           §
                         §
COUNTY OF DALLAS         §

     1.     "My name is John W. Arnold. I am over age eighteen (18), of sound mind, and

am competent to make this declaration. The facts stated in this declaration are within my

personal knowledge and are true and correct.

     2.     "David W. Crowe and I are partners in our law firm, Bailey/Crowe & Kugler,

LLP. Mr. Crowe and I, along with Jim Wyly and Sean Rommel of Wyly-Rommel, PLLC in

Texarkana, Texas (collectively "Class Counsel"), have represented Plaintiff Boyd Bryant ("Mr.

Bryant") and the class certified in the Arkansas State Court ("the Class") throughout the entirety

1

of the captioned litigation, and have all worked on the case. Each of us has been appointed Class

Counsel by the Arkansas State Court in connection with the Certification Order.

3.      "Mr. Crowe and I have other class-action experience, and consider ourselves to be

experienced class-action attorneys. We negotiated and achieved a successful class-action

settlement in the matter of *McNeely v. National Mobile Health Care, LLC. See e.g. McNeely v.*

*Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741 (W.D. Okla.

Oct. 27, 2008). In commenting on the adequacy of class counsel there, the *McNeely* Court

remarked, "The Court's review of the work performed in this matter, and the class-certification

evidence, shows Ms. McNeely's counsel are experienced litigators, including class action

litigators. They are eminently capable of conducting this matter as a class action. . . ." *Id.* at *20.

The Court in *McNeely* also wrote, in the context of approving the requested fee, that, "Class

counsel are qualified to handle these issues and, in the Court's view, have done a competent and

thorough job of navigating their way through the different phases of this difficult litigation, as

well as through the different certification and merits-related arguments NMHC and Security Life

have raised." *Id.* at *44.

4.      "In addition to the *McNeely* and *Bryant* matters, Mr. Crowe and I have defended

one class action in federal court in Texarkana, Texas, and have prosecuted two others in

Oklahoma federal courts, one of which is still pending. During the past fourteen (14) years I

have also assisted other members of my firm with the prosecution and defense of other class

actions. Finally, Mr. Crowe and I have handled many complex commercial and other forms of

cases in the state and federal trial and appellate court systems during the past decade or more,

and feel both competent and comfortable handling larger, complex cases such as Mr. Bryant's

class action here.

5.      "Class Counsel represents Ms. McNeely on a pure contingent-fee basis. Under

the written contingent-fee agreement between Mr. Bryant and Class Counsel, the latter is

permitted to apply to the presiding court for an attorney fee to be evaluated either on a lodestar

basis or calculated based on any common fund determined to exist. Mr. Bryant is not required to

front any case expenses. Case expenses are also to be paid from any class recovery. Finally, Mr.

Bryant, under the contingent-fee agreement, is not required to pay Class Counsel any fee or other

form of reimbursement in the event he does not prevail in his class-action case.

6.      "As described in the Settlement Agreement, ¶4.1, Class Counsel seeks a

contingent-fee-based Attorney Fee Award of thirty-three percent (33%) of the benefit to the

Settlement Class, which is the Allowed Claim of twelve million dollars ($12,000,000.00). As

the Settlement Agreement reflects, Class Counsel, for their Attorney Fee Award, first asks to be

awarded thirty-three percent (33%) of the Cash Settlement Fund. Following Parking Brake-

repairs reimbursement payments to the Settlement Class Members, an analysis will be conducted

to determine whether a Final Unclaimed Fund exists. If such a fund exists, then eligible

Settlement Class Members not yet made whole will be paid additional monies, limited only by

their being made completely whole. If, after these additional Final Unclaimed Fund payments,

money still remains in the Final Unclaimed Fund, Class Counsel will then receive payment of the

remaining Attorney Fee Award, capped at a total of four million dollars ($4,000,000).

7.      "Based on a review of relevant case law, class action treatises, and other

resources, the Attorney Fee Award, as proposed, is a commonly awarded fee and is an

appropriate common-fund fee in this case. Moreover, in the event the Court wishes to perform a

lodestar crosscheck of the Attorney Fee Award, Class Counsel asserts that lawyers in their

respective firms have spent more than seven thousand six hundred (7,600) hours working on this

matter since its inception in early 2005. Even using a conservative lodestar calculation

crosscheck, the fee to be requested is reasonable and should be approved at this stage. In

addition, Class Counsel contemplates submitting statements for expenses to be reimbursed in an

amount not to exceed $290,000.

8.      "To the extent the Court may need a general overview of what has occurred in the

Bryant litigation during the past five (5) years, both to determine settlement fairness (procedural

and substantive), and to determine whether Class Counsel's requested fee is appropriate, I will

provide it in the next several paragraphs.

9.      "Although this matter was originally filed in February 2005 before CAFA's[1]

effective date, Mr. Bryant and Class Counsel were initially confronted with GMC removing on

CAFA grounds to the United States District Court for the Western District of Arkansas.

Following remand to the Arkansas State Court, which took approximately five (5) months to

obtain, Class Counsel conducted extensive document discovery regarding the Parking Brake

defect, retained and designated multiple engineer expert witnesses, and fully briefed the issue of

class certification to the Arkansas State Court. Following a day-long certification hearing in

September 2006, and entry of the Certification Order by the Arkansas State Court in January

2007, Class Counsel moved into a year-and-a-half long phase of successfully contesting appeals

of the Certification Order by GMC both to the Arkansas Supreme Court and the United States

Supreme Court.

10.     "In October 2008, during the pendency of GMC's petition for writ of *certiorari*,

Class Counsel and GMC participated in a two-day mediation in New Orleans, Louisiana. The

mediation was conducted by the Hon. Edward Infante, an experienced class-action mediator.

While unsuccessful in its entirety, the parties and Judge Infante were able to work through

---

[1] Class Action Fairness Act of 2005. *See* 28 U.S.C. §§1332(d); 1453; and 1711-1715.

4

several substantive matters, including major elements of the Class reimbursement tier-structure
and the notice plan provisions that are now, in large measure, contained in the Settlement
Agreement. A second mediation was conducted in San Francisco in early November 2008, again
by Judge Infante. Despite the occurrence of these two mediations, no settlement was reached.

11.    "In December 2008 and January 2009 Class Counsel drafted responsive briefing
and attended a hearing regarding a motion for summary judgment filed by GMC. Further,
because the Arkansas State Court was pressing to set the matter for trial on the merits in mid-to-
late 2009, Class Counsel spent over four (4) different days in late 2008 and early 2009 deposing
multiple employees of GMC at Renaissance Center, GMC's world headquarters in Detroit.

12.    "During the spring of 2009, the Arkansas State Court appointed a new mediator,
Mr. John Mercy of Texarkana, Texas. While Mr. Mercy entertained and relayed informal
discussions between the parties in an attempt to hold settlement talks together, it was becoming
increasingly evident to all involved that GMC was in dire financial straits, and that it would
likely commence bankruptcy proceedings.

13.    "Following the commencement of Debtors' bankruptcy on June 1, 2009, and the
entry of the Court's Sale Order involving General Motors Company[2], Debtors removed the
Arkansas Action to the Arkansas Bankruptcy Court. In response, Class Counsel retained
bankruptcy counsel and moved for a remand to the Arkansas State Court under both mandatory
and discretionary abstention principles. GMC then moved to transfer the removed action to this
Court. On October 1, 2009, over stringent opposition from Mr. Bryant and the Class, the
Arkansas Bankruptcy Court entered a transfer order. On October 14, 2009, the transfer to this
Court occurred, resulting in the captioned adversary proceeding. Mr. Bryant's remand motion

---

[2] General Motors Company is referred to as **"New GM"** in the **Settlement Agreement**. *See* **Settlement Agreement**, ¶ 1.30.

remains pending for resolution and an appeal of the transfer order has been filed with the United

States District Court for the Western District of Arkansas.

14.    "On November 27, 2009 Mr. Bryant filed the Bryant Proofs of Claim in this

matter. That same date, Mr. Bryant filed the "Plaintiffs' Motion to Allow Plaintiffs to File a

Class Proof of Claim and Alternative Motion, Subject to Motion for an Order Allowing Plaintiffs

to File a Class Proof of Claim, For the Application of Federal Rule of Bankruptcy Procedure

7023 Pursuant to Federal Rule of Bankruptcy Procedure 9014." *See* Docket Entry No. 4560.

Based upon the pre-petition Certification Order, Mr. Bryant, on the Class's behalf, asked this

Court to allow Mr. Bryant and the Class to seek class-wide relief in Debtors' bankruptcy. *Id.*

15.    "In September 2009, Class Counsel began to engage in discussions with

Debtors' Counsel regarding the nature of Mr. Bryant's case, and whether there was interest in

trying to resolve it.  In January 2010, Class Counsel and Debtors' Counsel began more

substantive and earnest settlement discussions and negotiations. Debtors, at that time, indicated

that while they were interested in reaching a settlement, a strong argument existed to de-certify

the Class in the context of challenging Mr. Bryant's Motion to Allow Plaintiffs to File a Class

Proof of Claim. Class Counsel, of course, recognized and appreciated the time, costs, and risks

associated with any de-certification fight. Prolonged litigation over the de-certification issue,

including potential appeals associated with it, might not conclude until well after Debtors' plan

had been confirmed, and after Debtors' bankruptcy estate is depleted of assets. In addition, they

recognized that if Debtors were successful in their effort to de-certify, Class Members could be

unable to obtain any Parking Brake reimbursements whatsoever, given potential enforcement of

the Court's November 30, 2009 claims bar date. Accordingly, Class Counsel concluded the

pursuit of a settlement was in the best interests of the Class.

16. "The settlement negotiations between Class Counsel and Debtors' Counsel initially dealt with the Class reimbursement components that had mostly been resolved in the pre-petition mediation sessions. As reflected in the Settlement Agreement, which now provides a potentially lucrative *pro rata* reimbursement to Settlement Class Members, the Class-reimbursement mechanism of any settlement has always been of paramount concern to Mr. Bryant and Class Counsel. While Class Counsel and Debtors' Counsel were, in general, able to resolve issues related to the Class-reimbursement, Debtors, in early 2010, indicated to Class Counsel that the only settlement consideration they could provide is an allowed, general unsecured claim in Debtors' bankruptcy proceedings. Due to this unique form of non-cash settlement consideration, Class Counsel began contemplating the creation of a cash settlement fund by assigning or selling any allowed claim received from Debtors to a third party, or *via* the receipt of plan distributions of New GM stock or other consideration in satisfaction of the allowed claim, and liquidation of same in the applicable markets, or otherwise.

17. "To implement a settlement out of this contemplated cash settlement fund, it was thought Class Members would be reimbursed from the fund under the settlement-tier structure, and attorneys' fees, expenses, and an incentive award to Mr. Bryant would also be paid from the fund. To further implement the settlement, the costs of notice and administratively handling the settlement was also considered. Following lengthy conversations about all of these issues, Class Counsel and Debtors' Counsel eventually arrived at the Allowed Claim amount of twelve million dollars ($12,000,000), and the Cash Disbursement of one hundred thousand dollars ($100,000) to defray Administration Expenses and certain expenses associated with implementing the Plan of Notice.

18.    Now that the Settlement Agreement has been executed, Mr. Bryant and Class Counsel continue to believe it represents the best possible outcome for the Class in the circumstances, especially given the numerous difficulties presented by Debtors' bankruptcy.

19.    "During the course of the Bryant litigation, Mr. Bryant has subjected his vehicle to multiple inspections and testing by different parties; has given his deposition; has attended a portion of the September 2006 class certification hearing in the Arkansas State Court; has participated in settlement talks, including those during mediation; and has maintained contact with Class Counsel and monitored the overall progress of this matter throughout the years of this litigation. Mr. Bryant deserves compensation both for his participation and service as Class representative, and in light of the risks Mr. Bryant has incurred by becoming and continuing as a class-action litigant. The amount of ten thousand dollars ($10,000.00) awarded to Mr. Bryant is neither excessive nor unduly preferential.

20.    "I, John W. Arnold, under penalty of perjury state that the foregoing is true and correct."

EXECUTED on this the ___29___ day of July, 2010.

_____
John W. Arnold

8

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                       :

**In re**                               :      **Chapter 11 Case No.**

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :      **09-50026 (REG)**
        f/k/a **General Motors Corp.,** *et al.*  :

                          :

                **Debtors.**       :      **(Jointly Administered)**

                          :
-----------------------------------------------------------x
                          :

**BOYD BRYANT, on behalf of himself and**  :      **Adversary No. 09-00508 (REG)**
    **all others similarly situated,**       :
                **Plaintiffs,**     :
**vs.**                            :
                          :

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :
        f/k/a **General Motors Corp.,** *et al.*  :

                          :

               **Defendant.**     :
-----------------------------------------------------------x

### Declaration of James C. Wyly Under Penalty of Perjury

STATE OF TEXAS          §
                            §
COUNTY OF BOWIE       §

    1.    "My name is James C. Wyly. I am over age eighteen (18), of sound mind, and am competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

    2.    "Sean Rommel and I are founding co-members of our law firm, Wyly-Rommel, PLLC. Mr. Rommel and I, along with David Crowe and John Arnold in Dallas, Texas (collectively "Class Counsel"), have represented Plaintiff Boyd Bryant ("Mr. Bryant") and the class certified in the Arkansas State Court ("the Class") throughout the entirety of the captioned

litigation, and have all worked on the case. Each of us has been appointed Class Counsel by the

Arkansas State Court in connection with the Certification Order.

3.    "Mr. Rommel and I have other class-action experience, and consider ourselves to

be experienced class-action attorneys. We have been counsel of record for both plaintiffs and

defendants in the following representative class action matters:

- *Smajlaj v. Brocade Communications, et al.*, Consolidated Case No. C05-02233, United States District Court for the Northern District of California, San Francisco Division;
- *In Re Salomon Analyst Metromedia Litigation*, Case No. 02CV7966, United States District Court for the Southern District of New York;
- *Bradford et al. v. Union Pacific Railroad Company*, Case No. 4:05CV4075, United States District Court for the Western District of Arkansas, Texarkana Division;
- *Vickers et al., v. Union Pacific Company*, Case No. CV-2005-5-2, Circuit Court of Lafayette County, Arkansas;
- *Whitehead et al., v. The Nautilus Group, Inc. et al.*, Case No. CV-2005-66-2, Circuit Court of Miller County, Arkansas;
- *Gene Leslie, et al. v. Champion Parts, Inc., et al.*, Case No. 08CV4024, United States District Court for the Western District of Arkansas, Texarkana Division;
- *Kenneth Luke and A.C. Brooks, et al. v. The Lincoln National Life Ins. Co., et al.*, Case No. 5:03CV0256, United States District Court for the Eastern District of Texas, Texarkana Division;
- *Lane's Gifts and Collectibles, L.L.C., et al. v. Yahoo! Inc., et al.*, Case No. CV-2005-52-1, Circuit Court of Miller County, Arkansas;
- *William Duffer, et al. v. TYCO Internation Ltd, et al.*, Case No. 4:07CV4070, United States District Court for the Western District of Arkansas, Texarkana Division;
- *Mystic Thompson, et al. v. Bayer Corp., et al.*, Case No. 4:07CV00017, United States District Court for the Eastern District of Arkansas, Western Division;
- *Bluetooth Headset Products Liability Litigation*, Case No. 2:07ML01822, United States District Court for the Central District of California; and
- *Terry Walker, et al. v. Rent-A-Center, Inc., et al.*, Case No. 5:02CV3, United States District Court for the Eastern District of Texas, Texarkana Division

4.    "Class Counsel represents Mr. Bryant on a pure contingent-fee basis. Under the

written contingent-fee agreement between Mr. Bryant and Class Counsel, the latter is permitted

2

to apply to the presiding court for an attorney fee to be evaluated either on a lodestar basis or calculated based on any common fund determined to exist. Mr. Bryant is not required to front any case expenses. Case expenses are also to be paid from any class recovery. Finally, Mr. Bryant, under the contingent-fee agreement, is not required to pay Class Counsel any fee or other form of reimbursement in the event he does not prevail in his class-action case.

5.    "As described in the Settlement Agreement, ¶4.1, Class Counsel seeks a contingent-fee-based Attorney Fee Award of thirty-three percent (33%) of the benefit to the Settlement Class, which is the Allowed Claim of twelve million dollars ($12,000,000.00). As the Settlement Agreement reflects, Class Counsel, for their Attorney Fee Award, first asks to be awarded thirty-three percent (33%) of the Cash Settlement Fund. Following Parking Brake-repairs reimbursement payments to the Settlement Class Members, an analysis will be conducted to determine whether a Final Unclaimed Fund exists. If such a fund exists, then eligible Settlement Class Members not yet made whole will be paid additional monies, limited only by their being made completely whole. If, after these additional Final Unclaimed Fund payments, money still remains in the Final Unclaimed Fund, Class Counsel will then receive payment of the remaining Attorney Fee Award, capped at a total of four million dollars ($4,000,000).

6.    "Based on a review of relevant case law, class action treatises, and other resources, the Attorney Fee Award, as proposed, is a commonly awarded fee and is an appropriate common-fund fee in this case. Moreover, in the event the Court wishes to perform a lodestar cross-check of the Attorney Fee Award, Class Counsel asserts that lawyers in their respective firms have spent more than seven thousand six hundred (7,600) hours working on this matter since its inception in early 2005. Even using a conservative lodestar calculation crosscheck, the fee to be requested is reasonable and should be approved at this stage. In

addition, Class Counsel contemplates submitting statements for expenses to be reimbursed in an amount to not exceed $290,000.

7.    "To the extent the Court may need a general overview of what has occurred in the Bryant litigation during the past five (5) years, both to determine settlement fairness (procedural and substantive), and to determine whether Class Counsel's requested fee is appropriate, I will provide it in the next several paragraphs.

8.    "Although this matter was originally filed in February 2005 before CAFA's[1] effective date, Mr. Bryant and Class Counsel were initially confronted with GMC removing on CAFA grounds to the United States District Court for the Western District of Arkansas. Following remand to the Arkansas State Court, which took approximately five (5) months to obtain, Class Counsel conducted extensive document discovery regarding the Parking Brake defect, retained and designated multiple engineer expert witnesses, and fully briefed the issue of class certification to the Arkansas State Court.  Following a day-long certification hearing in September 2006, and entry of the Certification Order by the Arkansas State Court in January 2007, Class Counsel moved into a year-and-a-half long phase of successfully contesting appeals of the Certification Order by GMC both to the Arkansas Supreme Court and the United States Supreme Court.

9.    "In October 2008, during the pendency of GMC's petition for writ of *certiorari*, Class Counsel and GMC participated in a two-day mediation in New Orleans, Louisiana.  The mediation was conducted by the Hon. Edward Infante, an experienced class-action mediator. While unsuccessful in its entirety, the parties and Judge Infante were able to work through several substantive matters, including major elements of the Class reimbursement tier-structure and the notice plan provisions that are now, in large measure, contained in the Settlement

---

[1] Class Action Fairness Act of 2005.  *See* 28 U.S.C. §§1332(d); 1453; and 1711-1715.

Agreement. A second mediation was conducted in San Francisco in early November 2008, again by Judge Infante. Despite the occurrence of these two mediations, no settlement was reached.

10.    "In December 2008 and January 2009 Class Counsel drafted responsive briefing and attended a hearing regarding a motion for summary judgment filed by GMC. Further, because the Arkansas State Court was pressing to set the matter for trial on the merits in mid-to-late 2009, Class Counsel spent over four (4) different days in late 2008 and early 2009 deposing multiple employees of GMC at Renaissance Center, GMC's world headquarters in Detroit.

11.    "During the spring of 2009, the Arkansas State Court appointed a new mediator, Mr. John Mercy of Texarkana, Texas. While Mr. Mercy entertained and relayed informal discussions between the parties in an attempt to hold settlement talks together, it was becoming increasingly evident to all involved that GMC was in dire financial straits, and that it would likely commence bankruptcy proceedings.

12.    "Following the commencement of Debtors' bankruptcy on June 1, 2009, and the entry of the Court's Sale Order involving General Motors Company[2], Debtors removed the Arkansas Action to the Arkansas Bankruptcy Court. In response, Class Counsel retained bankruptcy counsel and moved for a remand to the Arkansas State Court under both mandatory and discretionary abstention principles. GMC then moved to transfer the removed action to this Court. On October 1, 2009, over stringent opposition from Mr. Bryant and the Class, the Arkansas Bankruptcy Court entered a transfer order. On October 14, 2009, the transfer to this Court occurred, resulting in the captioned adversary proceeding. Mr. Bryant's remand motion remains pending for resolution and an appeal of the transfer order has been filed with the United States District Court for the Western District of Arkansas.

---

[2] General Motors Company is referred to as "New GM" in the Settlement Agreement. *See* Settlement Agreement, ¶ 1.30.

5

13.    "On November 27, 2009 Mr. Bryant filed the Bryant Proofs of Claim in this matter. That same date, Mr. Bryant filed the "Plaintiffs' Motion to Allow Plaintiffs to File a Class Proof of Claim and Alternative Motion, Subject to Motion for an Order Allowing Plaintiffs to File a Class Proof of Claim, For the Application of Federal Rule of Bankruptcy Procedure 7023 Pursuant to Federal Rule of Bankruptcy Procedure 9014." *See* Docket Entry No. 4560. Based upon the pre-petition Certification Order, Mr. Bryant, on the Class's behalf, asked this Court to allow Mr. Bryant and the Class to seek class-wide relief in Debtors' bankruptcy. *Id.*

14.    "In September 2009, Class Counsel began to engage in discussions with Debtors' Counsel regarding the nature of Mr. Bryant's case, and whether there was interest in trying to resolve it. In January 2010, Class Counsel and Debtors' Counsel began more substantive and earnest settlement discussions and negotiations. Debtors, at that time, indicated that while they were interested in reaching a settlement, a strong argument existed to de-certify the Class in the context of challenging Mr. Bryant's Motion to Allow Plaintiffs to File a Class Proof of Claim. Class Counsel, of course, recognized and appreciated the time, costs, and risks associated with any de-certification fight, to include potential appeals that in probability would not conclude until well after Debtor's plan had been confirmed. In addition, we recognized that if Debtors were successful in their effort to de-certify, Class Members could be unable to obtain any Parking Brake reimbursements whatsoever, given potential enforcement of the Court's November 30, 2009 claims bar date. Accordingly, Class Counsel concluded the pursuit of a settlement was in the best interests of the Class.

15.    "The settlement negotiations between Class Counsel and Debtors' Counsel initially dealt with the Class reimbursement components that had mostly been resolved in the pre-petition mediation sessions. As reflected in the Settlement Agreement, which now provides

6

a *pro rata* reimbursement to Settlement Class Members, the Class-reimbursement mechanism of any settlement has always been of paramount concern to Mr. Bryant and Class Counsel. While Class Counsel and Debtors' Counsel were, in general, able to resolve issues related to the Class-reimbursement, Debtors, in early 2010, indicated to Class Counsel that the only settlement consideration they could provide is an allowed, general unsecured claim in Debtors' bankruptcy proceedings. Due to this unique form of non-cash settlement consideration, Class Counsel began contemplating the creation of a cash settlement fund by assigning or selling any allowed claim received from Debtors to a third party, or *via* the receipt of plan distributions of New GM stock or other consideration in satisfaction of the allowed claim, and liquidation of same in the applicable markets, or otherwise.

16.    "To implement a settlement out of this contemplated cash settlement fund, it was thought Class Members would be reimbursed from the fund under the settlement-tier structure, and attorneys' fees, expenses, and an incentive award to Mr. Bryant would also be paid from the fund. To further implement the settlement, the costs of notice and administratively handling the settlement was also considered. Following lengthy conversations about all of these issues, Class Counsel and Debtors' Counsel eventually arrived at the Allowed Claim amount of twelve million dollars ($12,000,000), and the Cash Disbursement of one hundred thousand dollars ($100,000) to defray Administration Expenses and certain expenses associated with implementing the Plan of Notice.

17.    "Now that the Settlement Agreement has been executed, Mr. Bryant and Class Counsel continue to believe it represents the best possible outcome for the Class in the circumstances, especially given the numerous difficulties presented by Debtors' bankruptcy.

18.    "During the course of the Bryant litigation, Mr. Bryant has subjected his vehicle to multiple inspections and testing by different parties; has given his deposition; has attended a portion of the September 2006 class certification hearing in the Arkansas State Court; has participated in settlement talks, including those during mediation; and has maintained contact with Class Counsel and monitored the overall progress of this matter throughout the years of this litigation.   Mr. Bryant deserves compensation both for his participation and service as Class representative and in light of the risks Mr. Bryant has incurred by becoming and continuing as a class-action litigant.   The amount of ten thousand dollars ($10,000.00) awarded to Mr. Bryant is neither excessive nor unduly preferential.

19.    "I, James C. Wyly, under penalty of perjury state that the foregoing is true and correct."

EXECUTED on this the 29th day of July, 2010.

James C. Wyly