David V. Scott
1338 Miller Lane
P.O. Box 99
New Albany, IN 47151-0099

*Counsel for Claimant Billie England*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | **ELECTRONICALLY** |
| SOUTHERN DISTRICT OF NEW YORK | **FILED** |

-------------------------------------------------x
                                                 :
In re                                            Chapter 11 Case No.
                                                 :
MOTORS LIQUIDATION COMPANY, *etal,*              09-50026 (REG)
flk/a General Motors Corp., *et al*              :
                                                 (Jointly Administered)
                        Debtors.                 :

                                                 :
-------------------------------------------------x

### BILLIE ENGLAND'S RESPONSE TO DEBTORS' THIRTY-SEVENTH OMNIBUS OBJECTION REGARDING HIS CLAIM

In support of Billy England's claim and in response to the Debtors'

objection to his Claim states as follows:

### THE FACUTAL BAISIS FOR THE CLAIM

1. Billie England's claim against General Motors Corporation arises as the result of a products liability claim his wife, Fannie England filed in The Metcalf County Circuit Court, which was removed to the Western District of Kentucky.  GM filed its bankruptcy before the statue of limitations had run against it.

2. On or about August 17, 2007, at about 1:30 P.M. on Ernie England Road, in or near Edmonton, Kentucky, Fannie L. England was the restrained operator of  a 1995 Chevrolet, Model K10753, pick-up truck, VIN number:  2GCEK19K2S1210107 when she was struck by another vehicle traveling in the opposite direction.

3. That when Fannie L. England's vehicle left the road it struck a tree with its left front with sufficient force to cause serious injury to her

lower extremities, including but not limited to an open tibial plafond fracture and an open fracture of her tibia, her air bag did not deploy.

4. In addition to the airbag's failure to deploy, there was an intrusion the foot well of the driver's side of the vehicle which increased the likelihood that she would sustain the severe, disabling lower extremity resulting from this collision.

5. The forces in this collision were well within the forces expected to be experienced by people involved in collisions on our highways.

6. Offset collisions are recognized as a frequent collision mode for motor vehicles and intrusion into the foot well is known to cause serious lower extremity injuries of the type sustained by Fannie L. England.

7. As a result of the injuries she sustained Fannie England incurred, and her husband was responsible for medical expenses totaling $155,687.42.

8. On February 24, 2009 Fannie L. England filed her complaint against General Motors and other defendants in the Metcalf County Circuit Court in Edmonton, KY and was, subsequently, removed to the United States District Court for the Western District Court for the Western District of Kentucky Bowling Green Division.

9. On March 11, 2009 Fannie L. England died of causes believed to be unrelated to the injuries she sustained in the collision of August 17, 2007.

10. On June 24, 2009, the District Court ordered the matter stayed because "General Motors Corporation, has filed for relief under Chapter 11 of Title 11, United States Code, with the United States Bankruptcy Court, for the Southern District of New York. Bankruptcy Court Case Number 09-50026(REG)."

11. On November 30, 2009 Billie England filed his claim in this matter in the amount of $250,000.00.

12. Under Kentucky law he is the sole party to have any right of recovery in any survival action, he is entitled to recover for loss of spousal consortium and he was jointly responsible for the medical bills incurred by her for her treatment as a result of the injuries sustained in the event at issue.

## THE LEGAL BASIS FOR THE CLIAM

Billy England's claim arises as a result of injuries sustained by his wife and expenses he incurred for her medical treatment for the injuries described above.  An action was filed on Mrs. England's behalf alleging that she sustained her injuries as a result of the design and/or manufacture of a vehicle designed and manufactured by General Motors Corporation.  The England's claim is controlled by Kentucky Law. Kentucky, as most jurisdictions, recognizes an automotive manufacturer may be liable for an "enhanced injury" or for "crashworthiness claims, *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35 (Ky. 2004).  As explained by the court, these claims arise not as a result of the collision, but arise because the vehicle did not provide proper protection in reasonably foreseeable collisions:

> In a crashworthiness or enhanced injury case, the plaintiff claims not that a defect in a motor vehicle caused a collision, but that a defect in the vehicle caused injuries over and above those which would have been expected in the collision absent the defect. The claim, in essence, is that the design of the vehicle failed to reasonably protect the occupant in a collision. These cases are also known as second impact cases, the first impact being the vehicle's collision with another object, and the second impact being the occupant's contact with interior structures or components of the vehicle.  *Id.* p. 41

Gregory also sets forth the plaintiff's burden in these cases:

> The elements of a *prima facie* crashworthiness claim are:  (1) an alternative safer design, practical under the circumstances;  (2) proof of what injuries, if any, would have resulted had the alternative, safer design been used;  and (3) some method of establishing the extent of enhanced injuries attributable to the defective design.  *Id.*

There can be no dispute that that despite forces sufficient to cause the injuries described above, the air bag in Mrs. England's 1995 1500 pickup did not deploy.  Here GM can not dispute that that the first element is met.  A "safer alternative design" would be an air bag that worked.



Photo showing the steering wheel with air bag still in the steering wheel.

This was at least a factor in the severity of the injuries she received. As will be seen, in addition to the failure of the air bag, is also the failure of to maintain the integrity of the occupant compartment.  It might be argued that the air bag's failure to deploy was not a direct cause of her injuries; however, that argument can not be made concerning the structural failure of the vehicle.

The primary cause of her injury was the failure of the vehicle to maintain occupant compartment integrity in the foot well.  The importance of maintaining occupant compartment integrity and the methods by which this is accomplished have been long known.  In 1969 a paper was published at the Society of Automotive Engineers (SAE) Annual Congress, entitled, appropriately, "The Crash Survival Space," E. Franchini, Chief Structure Dept., Auto Avio Research Laboratories, FIAT, SAE 69005 it was concluded that:

> The provision of ensuring a "survival space" is of primary importance among the measures taken to obtain a reduction in decelerations through the controlled deformability of the structure. The advantage of this deformability, on the other hand, can be exploited only if occupants wear a safety belt.  In present, well-designed cars, it seems generally possible to preserve a survival space in several types of collision at least up to a speed of 30 mph.

Most directly on point as to all issues in this case is the presentation made to the 1992 Congress.  "Biomechanics of Injuries to the Foot and Ankle Joint of Car Drivers and Improvements for an Optimal Car Floor

Development," D.Otte, H. von Rheinbaben & H. Zwipp, SAE 922514.  The

authors address all aspects of the plaintiff's proof in this case:

> This study clearly demonstrates that foot fractures are induced in
> direct connection with the deformation of the footroom. They are
> definitely car-specific injuries which are only caused by the mechanism
> direct impact load and relative body movement. By this mechanism
> the feet are loading in leg direction and the body relative movement
> set against this. Therefore the foot glides off the brake pedal or under
> the brake pedal causing a rotation of the foot. Then when the footwell
> deformation is going far the feet are jammed in the deformed
> footroom and in this way are exposed to bending as well as to
> compression pressure.
>
> An avoidance of foot fractures appears to be possible when the
> footroom is not subjected to a deformation. This justifies the demand
> for a stable passenger compartment in the region of the footroom.
> First steps in this construction direction can already be seen with some
> new vehicle models.  *Id.*

The paper included a crude drawing that, while crude, clearly shows

the mechanism of injury when there is intrusion into the foot well:



This is exactly what happened to Mrs. England:

 







This article also addressed the issue of reasonable alternative design:

> First steps in this construction direction can already be seen with some new vehicle models (fig. 10).

Fig. 10: Example of a modern construction of the frame for force transmission to the footwell by Daimler-Benz



A copy of the full article is filed with this response and marked Exhibit A.

Mrs. England's injuries are described in the hospital discharge summary as:

PRINCIPAL FINAL DIAGNOSIS:

1. Open right tibia fracture.

2. Open right tibial pilon fracture.

These injuries are different than the ones described in "Biomechanics of Injuries to the Foot and Ankle Joint of Car Drivers and Improvements for an Optimal Car Floor Development," but the mechanism of these injuries are clearly related to this event.  The very term pilon (hammer) fracture, was introduced to describe these compression injuries.  The mechanism of the injury involves vertical loading driving the talus into the distal tibia; position of foot & rate of loading affect injury pattern, Duke Orthopedics,  Wheeless' Textbook of Orthopaedics

http://www.wheelessonline.com/ortho/tibial_plafond_fracture

Mrs. England received excellent treatment at the University of Louisville Hospital and its excellent trauma team, but her recover was long and arduous .  This is the nature if these injuries.  Operative treatment of complex intraarticular fractures of the distal tibia remain fraught with difficulty and the complication rates and need for further reconstructive surgery remains high "Open Reduction and Internal Fixation Of Tibial Plafond Fractures;  Variables Contributing to Poor Results and Complications".  SM Teeny and DA Wiss.  *CORR*. Vol 292. 1993. p 108-117.



Examples of tibial plafond fractures.



An example of an open tibial pilon fracture

Copies of excerpts of Mrs. England's medical records are filed with this

response and marked Exhibit B.

**THE VALUE OF THE CLAIM**

As indicted Mrs. England sustained significant injuries in this event.

Her medical expenses were as follows:

**SUMMARY OF MEDICAL EXPENSES**

| DATE | MEDICAL PROVIDER | TREATMENT | AMOUNT |
|------|------------------|-----------|--------|

| | | | |
|---|---|---|---|
| 8/17/2007 | StatCare | Helicopter transport | $16,609.00 |
| 8/17/2007-8/25/2007 | University of Louisville Hospital | Emergency Treatment, medications, room & board | $118,509.32 |
| 8/17/2007 | University Emergency Medical Associates | Emergency Room attending physician | $810.00 |
| 8/23/2007 | University Surgical Associates | Surgical disinfection of wound | $8205.00 |
| 8/18/2007 | University Orthopedic Associates | Orthopedic evaluation and surgery | $3194.00 |
| 8/27/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $134.57 |
| 8/28/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $170.73 |
| 8/31/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 9/01/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $23.80 |
| 9/04/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $165.66 |
| 9/07/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 9/11/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $165.66 |
| 9/14/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 9/17/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $165.66 |
| 09/18/2007 | Campbell Medical Group | Follow-up w/ Dr. Campbell | $117.00 |
| 9/21/2007 | T.J. Samson Home | Skilled nursing | $125.00 |

|  |  | Health Care |  |
| --- | --- | --- | --- |
| 9/22/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $7.48 |
| 9/25/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $167.88 |
| 9/28/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 10/02/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $167.88 |
| 10/05/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 10/09/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $141.78 |
| 10/12/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 10/16/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $126.40 |
| 10/19/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 10/23/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $126.40 |
| 10/26/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $125.00 |
| 10/30/2007 | T.J. Samson Home Health Care | Skilled nursing and wound care | $140.52 |
| 11/1/2007 | University Orthopedic Associates | Orthopedic evaluation and treatment | $3647.00 |
| 11/03/2007 | T.J. Samson Home Health Care | Skilled nursing | $125.00 |
| 11/05/2007 | T.J. Samson Home Health Care | Skilled nursing | $125.00 |

| | | | |
|---|---|---|---|
| 11/07/2007 | T.J. Samson Home Health Care | Skilled nursing | $125.00 |
| 11/09/2007 | T.J. Samson Home Health Care | Skilled nursing | $125.00 |
| 11/13/2007 | T.J. Samson Home Health care | Skilled nursing | $125.00 |
| 11/14/2007 | T.J. Samson Home Health Care | Skilled nursing & supplies | $19.14 |
| 11/15/2007 | Center for Orthotic and Prosthetic Care | Fitting and placement of right RTB fracture orthosis | $1039.00 |
| 11/29/2007 | Campbell Medical Group | Follow-up with Dr. Campbell | $87.00 |
| **TOTAL** | | | **$155,687.42** |

Copies of her medical bills are filed with this response as Exhibit C.

As can be seen from the medical records, medical bills and the known course of these type injuries Mrs. England required ongoing treatment of a significant injury for a long period of time.  During that time Billie England was required to take care of her.  Fannie England's death was unexpected and, not clearly connected to the injuries she sustained in this collision. Still, it meant that the last years that Billie had with his wife were spent with him taking care of her.  It should be seen that his claim for $250,000.00 was quite conservative and should be approved as it stands.

### CONCLUSION

For the reasons set forth above, the debtor's objection to Billie England's claim should be overruled and his claim returned to the process where by he may receive, likely, some small portion of what he is entitled to for what he and his wife endured.

David V. Scott
1338 Miller Lane
P.O. Box 99
New Albany, IN 47151-0099
Telephone:  (812) 945-5222
E-Mail:  dave@davescott.us

By:  s/ David V. Scott
Counsel For Creditor, Billie England

## CERTIFICATE OF SERVICE

I certify that on this 30th day of 2010, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system.

Paper copies of this response were mailed to:

Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Ted Stenger
c/o Motors Liquidation Company
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243

Lawrence S. Buonomo, Esq.
General Motors, LLC
400 Renaissance Center
Detroit, Michigan 48265

John J. Rapisardi, Esq.

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281

Joseph Samarias, Esq.
United States Department of the Treasury
1500 Pennsylvania Avenue NW, Room 2312
Washington, D.C. 20220

Michael J. Edelman, Esq.
Michael L. Schein, Esq.
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, New York 10019

Thomas Moers Mayer, Esq.
Amy Canton, Esq.
Lauren Macksound, Esq
Jennifer Sharret, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

Diana G. Adams, Esq.
Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York 10004

David S. Jones, Esq.
Natalie Kuehler, Esq.
U.S. Attorney's Office, S.D.N.Y
86 Chambers Street, 3rd Floor
New York, New York 10007

Elihu Inselbuch, Esq.
Rita C. Tobin, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, New York 10152-3500

Trevor W. Swett III, Esq.
Kevin C. Maclay, Esq.
One Thomas Circle, N.W., Suite 1100
Washington, D.C. 20005

Sandra L. Esserman, Esq.
Robert T. Brousseau, Esq.
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201