Jan Alan Brody, Esq.      HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)
Jeffrey A. Cooper, Esq.
Marc D. Miceli, Esq.
CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for 295 Park Avenue Corp., John L. Remsen, Personal Representative of the Estate of Robert J. DeMassi, Robert A. DeMassi, Executor of the Estate of Arnold A. DeMassi, Jr., DeMassi Cadillac Co., Inc., DeMassi Enterprises, and Pauline DeMassi*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

| | |
|---|---|
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | **Chapter 11** |
|    f/k/a General Motors Corp, *et al*. | Case No. 09-50026 (REG) |
|                      **Debtors.** | **(Jointly Administered)** |

-------------------------------------------------------------x

**RESPONSE TO (1) DEBTORS' TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS;**
**(2) DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS; AND (3) DEBTORS'**
**THIRTY-SECOND OMNIBUS OBJECTION TO CLAIMS**
**(Incorrectly Classified Claims)**

      295 Park Avenue Corp. ("295 Park"), John L. Remsen, Personal Representative of the Estate of Robert J. DeMassi, Robert A. DeMassi, Executor of the Estate of Arnold A. DeMassi, Jr., DeMassi Cadillac Co., Inc., DeMassi Enterprises, and Pauline DeMassi (collectively, "Claimants"), by and through their undersigned counsel, hereby file this response (the "Response") to (1) Debtors' Twenty-Ninth Omnibus Objection to Claims; (2) Debtors' Thirtieth Omnibus Objection to Claims; and (3) Debtors' Thirty-Second Omnibus Objection to Claims (collectively, the "Motion") as follows:

1.  On November 24, 2009, Claimants filed identical secured proofs of claim (the "Claims") in the amount of $90,000 "[p]lus damages, remediation of Property, indemnification and other obligations."[1]

2.  On or about July 2, 2010, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, "Debtors") filed and served the Motion upon the Claimants to reclassify their filed secured Claims as unsecured claims and to limit their unliquidated Claims to $90,000.

3.  Specifically, Debtors asserted the following objection to each of the Claims:

> This claim arises from litigation against the Debtors. It is not secured by the property of the Debtors' estates. Accordingly, this claim should be reclassified as a non-priority, general unsecured claim.

The Motion at Exhibit A, page 1.

4.  The Motion also references, in a footnote on each page of Exhibit A, that "[w]here the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00." Accordingly, Debtors seek to reclassify each of the Claimants' Claims to a general unsecured claim of $90,000.

5.  As set forth in more detail below, the Claimants' Claims against Debtor, Motor Liquidation Company, f/k/a General Motors Corp. ("GM"), arise from a settlement agreement entered into in August 2008 (the "Settlement") between the Claimants, Nacht Cadillac, Inc.

---

[1] The Claimants each filed identical proofs of claim on November 24, 2009. Specifically, the Claim Numbers are as follows: 295 Park Avenue Corp. (Claim No. 45107); John L. Remsen, Personal Representative of the Estate of Robert J. DeMassi (Claim No. 45108); Robert A. DeMassi, Executor of the Estate of Arnold A. DeMassi, Jr. (Claim No. 45108); DeMassi Cadillac Co., Inc. (Claim No. 45110); DeMassi Enterprises (Claim No. 45111); and Pauline DeMassi (Claim No. 45112).

("Nacht"), a Delaware corporation, and GM, which resolved a certain state court action in New Jersey more particularly described below (the "Action").

6. There are issues of fact and law concerning whether or not the Claimants have a secured interest in the proceeds of the sale of the real property located at 380 Sylvan Avenue, Englewood Cliffs, New Jersey (the "Property") by Nacht, one of the defendants in the Action, to Argonaut Holdings, Inc. ("Argonaut"), which, upon information and belief, was a subsidiary or affiliate of GM at the time of the sale.

7. The Claimants' position is that GM was a shareholder of Nacht and that, under Delaware law, Nacht was required to hold the sale proceeds for the benefit of creditors who had commenced a lawsuit against it, such as the Claimants in the Action. Instead, GM, as a shareholder of Nacht, received, among other things, those proceeds in violation of Delaware law, and, as such, holds those proceeds in a constructive trust for the benefit of the Claimants.

8. The Claimants also take the position that GM's environmental remediation obligations are not subject to discharge in bankruptcy.

9. Accordingly, the Claimants respectfully ask this Court to rule that the Claimants' Claims are not limited to $90,000 and deny the Debtors' Motion as premature. The Claimants further request that this Court enter an order setting discovery in the context of this Motion.

## Background

10. By way of background, the Claimants filed identical Claims alleging damages based on the Settlement of the Action captioned <u>295 Park Avenue Corp., a New Jersey Corporation; DeMassi Cadillac Co., Inc., a New Jersey corporation; John L. Remsen, Personal Representative of the Estate of Robert J. DeMassi, and Robert A. DeMassi, Executor of the Estate of Arnold A. DeMassi, Jr., individually and trading as DeMassi Enterprises; and Pauline</u>

<u>DeMassi. v. Nacht Cadillac, Inc., a New Jersey corporation; and General Motors Corporation, a Delaware corporation</u>, Superior Court of New Jersey, Chancery Division, in Bergen County, Docket No. C-161-07.

11.    The Action involved, <u>inter alia</u>, certain obligations of the parties in connection with the environmental remediation of the former DeMassi Cadillac automobile dealership at the Property, which was originally sold in 1988 by plaintiff 295 Park to Nacht, which, upon information and belief, was an entity of which GM was a stockholder.

12.    On December 16, 2003, Nacht conveyed the Property to Argonaut for $3,602,454 (the "Sale").

13.    On December 12, 2004, Nacht filed its certificate of dissolution with the Delaware Secretary of State.

14.    Pursuant to Section 278 of the Delaware Corporation Law (the "DCL"), all dissolved corporations shall continue for three years or more to, <u>inter alia</u>, prosecute and defend suits, discharge their liabilities and distribute their remaining assets, if any, to stockholders. "With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purposes of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed ...."  <u>Id.</u> (Copies of all cited Sections of the DCL are attached hereto as Exhibit A.)

15.    The Action was the successor of prior actions that were dismissed and re-filed with Nacht's and GM's consent for calendar purposes because of the delays surrounding the

environmental remediation of the Property. The filing dates of the complaints, the docket numbers and the dates of the dismissal orders are as follows:

| Filing Date | Docket No. | Date of Dismissal Order |
| --- | --- | --- |
| 1989 | C-3931-89 | 12/31/03 |
| 03/26/04 | C-109-04 | 01/20/06 |
| 02/10/06 | C-64-06 | 02/13/07 |
| 05/17/07 | C-161-07 | N/A |

16. Thus, based upon the existence of the 2004 action on December 12, 2004, the date the certificate of dissolution was filed, and the filing of the 2006 action and the Action within three years of December 12, 2004, Nacht has been continued as a body corporate pursuant to the DCL.

17. A Delaware corporation has the option to dissolve in accordance with Section 280 of the DCL. If it elects to do so, it is required to serve notices of the dissolution upon all claimants that are not litigating their claims in a pending action, DCL §280(a)(1), and to "petition the Court of Chancery to determine the amount and form of security that will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding". DCL §280(c)(1). The Claimants did not receive any such notice or a petition to determine the amount and form of security.

18. If a Delaware corporation follows the procedures of Section 280, it is required to pay claims made that are not rejected and post the security required for pending actions. DCL §281(a). If a corporation does not follow the procedures of Section 280, it must adopt a dissolution plan pursuant to which it shall pay claimants and "make such provisions as will be reasonably likely to be sufficient to provide compensation for any claim against the corporation

which is the subject of a pending action, suit or proceeding to which the corporation is a party ...." DCL §281(b).

19. Directors of corporations that do not comply with Section 281(a) or (b) are personally liable to claimants. DCL §281(c). The liability of stockholders to claimants is limited to the lesser of the stockholder's pro rata share of the claim or the amount distributed to the stockholder, unless the corporation did not comply with the provisions of Section 281(a) or (b). DCL §282.

20. Since Nacht never served a DCL §280(a)(1) notice upon the Claimants, GM, as a shareholder of Nacht, is liable to the Claimants.

21. In or about August 2008, the Claimants, Nacht and GM entered into the Settlement.[2] The terms of the Settlement, inter alia, were as follows:

   a. Nacht and GM, jointly and severally, shall pay $90,000 to the Claimants.

   b. Nacht and GM, jointly and severally, shall be fully, completely and solely responsible to complete the remediation of the Property and to satisfy all claims for natural resource damages including, but not limited to, the securance of a No Further Action Letter and a covenant not to sue from the New Jersey Department of Environmental Protection (the "DEP") for the Claimants.

   c. Nacht and GM, jointly and severally, shall indemnify the Claimants against, hold them harmless from, and defend them against, all costs, fees, liabilities, fines, violations, lawsuits, penalties, remediation expenses, natural resources damages claims and all other obligations associated and/or in connection with the remediation, including, but not limited to, Claimants' reasonable attorneys' fees and costs.

   d. Nacht and GM, jointly and severally, shall enter into a memorandum of agreement with the DEP which shall provide that they, jointly and severally, shall be responsible for the remediation and any natural resource damages.

---

[2] A dispute exists between the Claimants and Argonaut as to whether or not Argonaut agreed to be jointly and severally liable with Nacht and GM under the terms of the Settlement.

**Response to Debtors' Motion**

 A. **The Amount of the Claimants' Claims Are Not Limited to $90,000**

 22. The Claimants emphasize that the claim amount is <u>not</u> $90,000, as Debtors allege, but rather an amount that is <u>not less</u> than $90,000. The full claim consists of (1) the $90,000 settlement payment, (2) compliance by GM with its obligations to complete the remediation of the Property and to satisfy all claims for natural resource damages including, but not limited to, the securance of a No Further Action Letter and a covenant not to sue from the DEP for the Claimants; (3) compliance by GM with its obligations to indemnify the Claimants against, hold them harmless from, and defend them against, all costs, fees, liabilities, fines, violations, lawsuits, penalties, remediation expenses, natural resources damages claims and all other obligations associated and/or in connection with the remediation, including, but not limited to, Claimants' reasonable attorneys' fees and costs, and (4) compliance by GM with its obligation to enter into a memorandum of agreement with the DEP which shall provide that GM shall be responsible for the remediation and any natural resource damages.

 B. **Under Delaware Law, The Claimants Are Secured Against the Sale Proceeds Held By GM**

 23. The Claimants allege that they are secured against the proceeds of the Sale that were received by GM. Under Delaware law, a constructive trust is imposed upon such proceeds. <u>See</u> <u>e.g.</u> <u>Transamerica Airlines, Inc. v. Akande</u>, 2006 WL 587846 (Del.Ch. 2006) (Unpublished Opinion). In <u>Transamerica Airlines, Inc.</u>, the Court stated:

> Additionally, if Akande succeeds in this action, a constructive trust conceivably could constitute an appropriate form of relief. Specifically, on dissolution corporate directors have obligations to creditors and, in appropriate circumstances, 'creditors of whom the corporation had reason to know, have equitable right to follow corporate assets and to impress a constructive trust upon them in the hands of shareholders.

7

Transamerica Airlines, Inc., 2006 WL 587846, at 9; citing In re Rego, 623 A.2d 92, 95, 18 Del. J. Corp. L. 1082 (Del.Ch.1992).

24.     The Debtors' secured liability arises from the Sale because, upon information and belief, GM was a stockholder of Nacht at that time.  Since Nacht did not comply with DCL §§280 and 281 when it attempted to dissolve its corporate charter, its transmittal of the real estate sale proceeds to GM, as a shareholder of Nacht, was wrongful as against the Claimants. Accordingly, the Claimants maintain a secured claim upon that fund in the hands of the Debtors.

**C.     GM's Environmental Remediation Obligations Are Not Claims Subject to Discharge in Bankruptcy**

25.     The environmental contamination at the Property is ongoing.  As such, GM's environmental remediation obligations as set forth in the Settlement are not claims subject to discharge in bankruptcy.  See In re Torwico Electronics, Inc., 8 F.3d. 146, 150 (3rd Cir. 1993) (standing for the proposition that an obligation to ameliorate an ongoing environmental hazard is not a "claim" subject to discharge in bankruptcy).  See also In re Chateaugay Corp., 944 F.2d. 997 (2d Cir. 1991).

## **Conclusion**

26.    For purposes of this Response, the Claimants respectfully ask this Court to recognize that issues of fact and issues of law exist as to the liability of Debtors in connection with the Sale proceeds.

27.    Accordingly, this Court should enter an order recognizing that the Claimants' Claim is not limited to $90,000. The Claimants also respectfully request that this Court deny the Debtors' Motion as to the Claimants as premature and enter a scheduling order by which the appropriate discovery can be conducted in a claims objection proceeding.

                                    CARELLA, BYRNE, CECCHI, OLSTEIN,
                                        BRODY & AGNELLO, P.C.

*Attorneys to 295 Park Avenue Corp., John L. Remsen, Personal Representative of the Estate of Robert J. DeMassi, Robert A. DeMassi, Executor of the Estate of Arnold A. DeMassi, Jr., DeMassi Cadillac Co., Inc., DeMassi Enterprises, and Pauline DeMassi*

                              BY:   Jeffrey A. Cooper
                                          JEFFREY A. COOPER, ESQ.

Dated: July 30, 2010

#400103v6