**Hearing Date and Time: August 9, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Deadline: August 2, 2010 at 8:00 p.m. (Eastern Time)**
**Reply Deadline: August 5, 2010 at 12:00 p.m. (Eastern Time)**

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
Emily A. Stubbs
*Counsel for Manville Personal Injury Settlement Trust*
*and Claims Resolution Management Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re: :
:     Chapter 11 Case No: 09-50026 (REG)
MOTORS LIQUIDATION, et al.       :     (Jointly Administered)
    f/k/a General Motors Corp., et al.   :
:
           Debtors.    :
:
------------------------------------------------------------x

**OBJECTION OF MANVILLE PERSONAL INJURY SETTLEMENT
TRUST AND CLAIMS RESOLUTION MANAGEMENT CORPORATION
TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MOTORS LIQUIDATION COMPANY FOR AN
ORDER PURSUANT TO BANKRUPTCY RULE 2004
<u>DIRECTING PRODUCTION OF DOCUMENTS</u>**

904616.1

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................... iii

Preliminary Statement ................................................................................................................... 1

Background .................................................................................................................................... 3

    A.  The Manville Trust, the CRMC, and the Trust Distribution Process ............................... 3

    B.  The Manville Trust's Information Disclosure Procedures ............................................... 4

    C.  The Rule 2004 Motion ...................................................................................................... 5

Incorporation of Arguments .......................................................................................................... 5

Argument ....................................................................................................................................... 6

    I.   Responding to the Proposed Subpoena Would Impose an Undue
        Burden Upon the Manville Trust and CRMC .................................................................. 6

    II.  The Proposed Subpoena Would Impose an Undue Burden Insofar
        as it Requests Privileged and Confidential Documents ................................................. 10

    III. The Proposed Subpoena Seeks Documents and Data That May Be
        Available Through Less Burdensome Means ................................................................. 13

Reservation of Rights .................................................................................................................. 15

Conclusion ................................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

In re Continental Forge Co., Inc.,
    73 B.R. 1005 (Bankr. W.D. Pa. 1987). ........................................................................... 12

In re Countrywide Home Loans, Inc.,
    384 B.R. 373 (Bankr. W.D. Pa. 2009). ............................................................................ 12

In re Drexel Burnham Lambert, Inc.,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991). ......................................................................... 6, 7

In re Duratech Indus., Inc.,
    241 B.R. 291 (Bankr. E.D.N.Y. 1999). ............................................................................ 7

In re Eagle-Picher Indus., Inc.,
    169 B.R. 130 (Bankr. S.D. Ohio 1994). ........................................................................... 6

In re Express One Int'l, Inc.,
    217 B.R. 215 (Bankr. E.D. Tex. 1998) ............................................................................ 7

Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,
    332 F.3d 976 (6th Cir. 2003) .......................................................................................... 12

Guy Chem. Co., Inc. v. Romaco AG,
    243 F.R.D. 310 (N.D. Ind. 2007) ..................................................................................... 9

In re Hammond,
    140 B.R. 197 (Bankr. S.D. Ohio 1992) ............................................................................ 7

Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,
    254 F.R.D. 568 (N.D. Cal. 2008) ................................................................................... 12

**RULES AND STATUTES**

11 U.S.C § 524(g) ..................................................................................................................... 5

Fed. R. Bankr. P. 2004 ...................................................................................................... *passim*

Fed. R. Bankr. P. 9016 ............................................................................................................ 11

Fed. R. Civ. P. 45 .................................................................................................................... 11

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Manville Personal Injury Settlement Trust ("Manville Trust" or the "Trust") and the Claims Resolution Management Corporation ("CRMC"), by and through their undersigned counsel, file this objection to the Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "Creditors' Committee") for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents by (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors (Doc. No. 6383, the "Motion" or the "Rule 2004 Motion"), and state:

## PRELIMINARY STATEMENT

1. The Manville Trust was established to provide for the fair, adequate and equitable compensation of individuals who suffered personal injuries from exposure to asbestos or asbestos-containing products sold or manufactured by Johns Manville Corporation ("JM"). The Creditors' Committee's Motion seeks to use the Manville Trust's resources for an entirely unrelated purpose that is not only inconsistent with the Trust's fundamental mission, but is impermissible under Bankruptcy Rule 2004 ("Rule 2004").

2. The Motion should be denied for three independent reasons. First, it would impose an undue burden on the Manville Trust and the CRMC to comply with a subpoena in the form attached to the Motion as Exhibit D (the "Proposed Subpoena" or the "Subpoena"). The Proposed Subpoena appears to seek information related to 7,400 individuals who filed claims against GM alleging mesothelioma. Simply providing

904616.1

notice to all the claimants whose data is sought by the Proposed Subpoena or to their counsel – a process required by Manville Trust and CRMC's information disclosure procedures if evidence of notice is not provided with the subpoena – would require the Trust and CRMC to expend significant resources intended for the Trust's beneficiaries.

3. <u>Second</u>, the scope of the requested discovery appears to be overbroad on its face. Without explanation or justification, the Proposed Subpoena appears to seek disclosure of confidential internal deliberation and negotiation records that may contain protected attorney-client communications or attorney work product. These documents, under the CRMC and Manville Trust's policies, are not ordinarily produced absent a court order specifically directing their production. To the extent that the Subpoena seeks production of these documents, it would result in an extraordinary burden on the Manville Trust and the CRMC to review all such documents to ensure their privileges are protected.

4. <u>Third</u>, the Motion seeks information that may be obtained by the Creditors' Committee through other, less burdensome means. The Creditors' Committee is well aware that the Manville Trust has established a licensing policy that permits professionals retained for bankruptcy estimation proceedings to obtain and use certain Manville Trust data. In fact, the Creditors' Committee's advisor has recently submitted an application for a license pursuant to this policy. Until that application is reviewed and acted upon, the Motion is premature because the Creditors' Committee cannot show that it is unable to obtain the requested information through alternative, less burdensome means.

904616.1            2

# BACKGROUND[1]

## A. The Manville Trust, the CRMC, and the Trust Distribution Process

5. The Manville Trust is not a party or claimant in the Motors Liquidation proceedings before this Court.

6. The Manville Trust was established in 1988 to resolve asbestos personal injury claims against JM. JM had been the largest North American producer of asbestos and asbestos-containing products. It filed a petition under Chapter 11 of the Bankruptcy Code in 1982 due to its projected personal injury liabilities, and its reorganization was completed in 1988. Austern Decl. ¶6.

7. The goal of the Manville Trust is to treat all claimants equitably. Austern Decl. ¶9. In order to further that goal, the Manville Trust owns a claims processing facility, Claims Resolution Management Corporation ("CRMC"), which provides claims processing services for the Manville Trust and for other similar trust funds established to resolve asbestos personal injury claims. Austern Decl. ¶7. CRMC resolves Manville Trust claims pursuant to a Trust Distribution Process ("TDP"). *Id.*; s*ee* Ex. A.[2] The TDP includes procedures for processing and evaluating claims generally on an impartial, first-in-first-out basis, with the intention of paying all claimants over time as equivalent a share as possible of their claims' values. Austern Decl. ¶9.

---

[1] The factual basis for this Objection is set forth in the Declaration of David T. Austern, General Counsel to the Manville Trust (the "Austern Declaration" or "Austern Decl.").

[2] References herein to "Ex. __" are to the Exhibits to the Austern Declaration.

904616.1                                    3

**B.     The Manville Trust's Information Disclosure Procedures**

8.      The TDP sets forth procedures for the release of information concerning claims filed with CRMC. *See* Austern Decl. ¶¶12-14. In addition, the Manville Trust has adopted procedures relating to the release of information and documents, and it publishes a guide to those procedures on its website (the "Procedures"). *Id.*; s*ee* Ex. B.

9.      The TDP and the Procedures require the Manville Trust to comply with the rules of discovery pertaining to non-parties under applicable law. When CRMC receives a valid subpoena for claimants' data, the Procedures require CRMC to confirm, among other things, whether the individual claimants or their counsel received notice that their information had been requested. If it is not clear whether claimants' counsel has been served with the subpoena, CRMC will contact claimants or their counsel to determine whether they consent to CRMC's release of information and documents, or intend to move to quash the subpoena. Austern Decl. ¶13; Ex. A.

10.     The Manville Trustees have approved and implemented a policy for the distribution of Manville Trust data for use solely by other trusts. Austern Decl. ¶¶24-26; s*ee* Ex. D. The policy provides that the Manville Trust will consider (in consultation with certain beneficiaries' representatives through a process more fully described in the Austern Declaration) distribution of individual claims data to professionals who have been retained to estimate asbestos liabilities in a court proceeding involving a bankruptcy plan. Austern Decl. ¶¶24-26; s*ee* Ex. D.

11.     On June 24, 2010, Bates White, advisor to the Creditors' Committee, submitted an application for distribution of Manville Trust data. That

904616.1                                                        4

application is currently under review in accordance with the Trust's data license policy. Austern Decl. ¶27.

### C. The Rule 2004 Motion

12. On July 20, 2010, the Creditors' Committee filed its Motion seeking the Court's leave to serve subpoenas for discovery from certain 524(g) asbestos trusts, including the Manville Trust, as well as the Debtors.

13. The Creditors' Committee did not advise the Manville Trust or CRMC that it would be filing the instant motion. Nor, before filing the Motion, did the Creditors' Committee attempt to confer with the Manville Trust or CRMC regarding the possibility of a mutually agreeable resolution to the discovery matters presented by the Motion.

14. The Proposed Subpoena that the Creditors' Committee seeks leave to serve upon the Manville Trust would compel the production of three categories of documents: (1) Any and all claims forms and other Documents submitted by each of the Claimants (*i.e.*, the plaintiffs in all asbestos personal injury cases filed against GM prior to the petition date in which the claimants alleged mesothelioma) to each of the Trusts; (2a) All documents relating to payments made or to be made to each of the Claimants by each of the Trusts; and (2b) All documents reflecting decisions or resolutions concerning the Claimants' claims against the Trusts.

### INCORPORATION OF ARGUMENTS

15. To the extent any Objection filed by the Asbestos Committee sets forth the reasons that the discovery sought from the 524(g) trusts and their claims processing services (including the Manville Trust and CRMC) is irrelevant to the

904616.1      5

Creditors' Committee's purported investigation into the Debtors' asbestos liabilities and otherwise inappropriate under Rule 2004, the Manville Trust and CRMC adopt those arguments as if set forth fully herein.

16.  To the extent any Objection filed by Armstrong World Industries, Inc., Asbestos Personal Injury Settlement Trust, Celotex Asbestos Settlement Trust, Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, Owens Corning/Fibreboard Asbestos Personal Injury Trust, DII Industries, LLC Asbestos PI Trust, United States Gypsum Asbestos Personal Injury Settlement Trust, and Delaware Claims Processing Facility sets forth reasons that the discovery sought would pose an undue burden and is otherwise improper as against those 524(g) trusts, and to the extent those arguments apply to the Manville Trust and/or the CRMC, the Manville Trust and CRMC adopt them as if set forth fully herein.

## ARGUMENT

### I.
### RESPONDING TO THE PROPOSED SUBPOENA WOULD IMPOSE AN UNDUE BURDEN UPON THE MANVILLE TRUST AND CRMC

17.  As set forth in the Asbestos Committee's objection, the discovery sought in the Motion is not relevant to any matter that could be the proper subject of a Rule 2004 examination. *See, e.g.,* In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("one seeking to conduct a 2004 examination has the burden of showing good cause for the examination it seeks"); *cf.* In re Drexel Burnham Lambert, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) ("That the documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production."). On that basis alone, the Motion should be denied.

904616.1                                                   6

18.     However, "even if the discovery is within the bounds of Rule 2004, discovery is not permitted where the cost and burden of disclosure outweigh the interest of the party requesting such discovery." In re Hammond, 140 B.R. 197, 201 (Bankr. S.D. Ohio 1992) (*quoting* In re Drexel Burnham Lambert, Inc., 123 B.R. at 712; In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)).  Indeed, it is well recognized the Rule 2004 is not without limits.  *See, e.g.*, In re Duratech Indus., Inc., 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) ("[h]owever vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits even to this free-and-easy practice"); In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("[a]lthough the scope of a Rule 2004 examination is very broad, there are important limits to the scope of the examination").

19.     One of these well-recognized limits on Rule 2004 discovery is that it must not be unduly burdensome to the party against whom it is sought.  Thus, courts routinely observe that Rule 2004 discovery requests "should 'not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party].'"  Hammond, 140 B.R. at 201 (quoting In re Texaco, Inc., 79 B.R. at 553).  Here, the Proposed Subpoena would impose an enormous and undue burden on the Manville Trust.

20.     As described in the Austern Declaration (*see* Austern Decl. ¶13), the Manville Trust or CRMC typically provides notice to *each claimant* whose information is the subject of a subpoena.  The only exception to this notification procedure is where the subpoena or its accompanying documents confirm how and when the subpoena has been served upon the claimant or his counsel.  This exception would not

904616.1                                             7

apply here, as neither the Motion nor the Proposed Subpoena provides that the Subpoena would, if issued, be served on the particular claimants or their counsel. Thus, the Manville Trust or CRMC would be required to provide notice to every Manville claimant whose information is requested by the Proposed Subpoena, or his counsel.

21. Merely *identifying* these Manville claimants who must receive such notice (*i.e.*, the individuals who made claims to the Manville Trust) from among the *7,400 claimants* covered by the Rule 2004 Motion and among the approximately *800,000 claimants* in the Manville Trust's database would impose a substantial burden upon the Manville Trust and the CRMC. *See* Austern Decl. ¶¶14-16. There will be a significant burden and expense in confirming that the correct individual is identified in any search of the Manville Trust data – which includes approximately 800,000 individual claimants. Austern Decl. ¶15.

22. The Rule 2004 Motion does not provide a single reason why the Manville Trust or CRMC – and ultimately the Trust's beneficiaries, those injured by asbestos – should bear the enormous burden associated with the Creditors' Committee's purported investigation into General Motors' asbestos liabilities. The Creditors' Committee is not a Trust beneficiary; it will obtain resources from the Trust only to the extent it shifts the cost and burden of its information gathering efforts over to the Trust.[3]

---

[3] Although the Rule 2004 Motion suggests that the Trust is over-funded (and thus could comfortably bear the costs of this invasive and unnecessary document request) (*see* Motion at 7), this is plainly untrue. Because the Manville Trust has insufficient funds to pay all present and future claimants the full value of their claims, the TDP directs the Trust to pay each claimant a pro rata percentage of his claim's liquidated value. The initial pro rata payment percentage was 10%, and it is now 7.5%. Therefore, except for the payment for "other asbestos disease," which is a cash payment of $600, any Manville

904616.1                                          8

Likewise, the Manville Trust and CRMC are not parties to the Motors Liquidation bankruptcy proceedings; these proceedings will impact the Manville Trust and CRMC only to the extent of the burden imposed by the Rule 2004 Motion.

23. Because complying with the Proposed Subpoena would impose an unreasonable and disproportionate burden upon the Manville Trust and CRMC, the Court should deny the Rule 2004 Motion in its entirety. If the Court does not deny the Rule 2004 Motion in its entirety, it should require the Creditors' Committee to provide actual notice of the Proposed Subpoena – with adequate time for objections to be heard – to each of the claimants for whom it seeks data from the Manville Trust and/or CRMC. In addition, the Court should require the Creditors' Committee to fully compensate the Manville Trust and CRMC for the resources (including legal fees) they devote to responding to the Subpoena.[4] In any event, the Court should make any production contingent on the negotiation and entry of a protective order that is satisfactory to all relevant entities (including, at a minimum, the Manville Trust, CRMC and the Creditors' Committee).[5]

---

Trust claimant who establishes eligibility for one of the scheduled disease levels in the TDP can expect to receive an initial settlement payment of 7.5% of the value set forth for that disease in the TDP. *See* Austern Decl. ¶11.

[4] *See, e.g.,* Guy Chem. Co., Inc. v. Romaco AG, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (noting that "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue" and ordering requesting party to bear cost of production where it could not show that the cost to the non-party was *de minimis*).

[5] The Creditors' Committee has already stated that it consents to the entry of a protective order. In particular, the Rule 2004 Motion states that the Creditors' Committee "is prepared to enter into an appropriate confidentiality agreement with the

## II.
## THE PROPOSED SUBPOENA WOULD IMPOSE AN UNDUE BURDEN INSOFAR AS IT REQUESTS PRIVILEGED AND CONFIDENTIAL DOCUMENTS

24.    In addition to imposing extraordinary burdens with respect to notifying the claimants or their counsel of the Subpoena if it issues, the Subpoena appears to seek information that may contain privileged material. The Motion suggests that the requested discovery is targeted and implies that the Proposed Subpoena relates to basic factual information, such as: (a) the mere fact that certain mesothelioma claimants "have, in fact, asserted claims against and received payments from Section 524(g) trusts"; and (b) "information on diagnosis date and age" of certain claimants. *See* Motion ¶¶ 25-26.

25.    However, the Proposed Subpoena appears to sweep far more broadly than the Motion suggests. The Proposed Subpoena seeks in Request 2 "[a]ll documents . . . reflecting decisions or resolutions concerning the Claimants' claims against the Trust." This request appears to seek documents relating to claim evaluation by CRMC and documents relating to negotiation by and between CRMC and claimants or their counsel. Such documents may include legal advice from counsel to the Manville Trust concerning liability issues. In addition, the work product called for by that request would necessarily reveal confidential information regarding the manner in which the Manville Trust evaluates and settles asbestos claims.[6] *See* Austern Decl. ¶21-23.

---

various claims processing facilities and associated trusts." Motion at 3.

[6] It is black-letter law that the Manville Trust and the CRMC could assert the attorney-client privilege and the attorney work product doctrine as bases to quash a subpoena issued in the event the Court were to grant the Motion. Federal Rule of Civil Procedure 45, which governs the issuance of subpoenas to compel testimony and the production of

26. To the extent the Court permits the Subpoena to be issued in its current form – including the request for documents related to claim evaluation and settlement – responding to the request would pose an enormous burden on the Manville Trust. The Manville Trust would be obligated to review all the documentation potentially responsive to this request to ensure that its privileges and confidences are protected. This review would consume significant Trust resources, which should properly be directed toward processing and payment of legitimate claims from individuals injured by exposure to asbestos. *Id.*

27. Moreover, to the extent the Proposed Subpoena seeks correspondence or documents that relate to claim evaluation and negotiation by and between CRMC and claimants or their counsel, it seeks information that Manville Trust and CRMC consider strictly confidential and never disclose. *See* Austern Decl. ¶22; Ex. B at 2, 4-5. In addition, CRMC does not release its own internal evaluation and operational processing information. *See* Austern Decl. ¶22; Ex. B at 2, 4-5. The Creditors' Committee has not shown good cause to circumvent these information privacy policies and procedures and obtain confidential information about Manville Trust, CRMC and individual claimants. *See, e.g.,* In re Continental Forge Co., Inc., 73 B.R. 1005, 1006 (Bankr. W.D. Pa. 1987) (Rule 2004 cannot "be used as a vehicle for gathering

---

documents, "applies in adversary proceedings, contested matters, contested or involuntary petitions, *Rule 2004 examinations*, and all other matters in a bankruptcy case in which testimony may be compelled." 10 Collier on Bankruptcy ¶ 9016.01 (15th ed. rev.1996) (*citing* In re Mantolesky, 14 B.R. 973, 979 (Bankr. D. Mass.1981) (emphasis added)); Fed. R. Bankr. P. 9016 ("Fed. R. Civ. P. 45 applies in cases under the Code."). Under FRCP 45(c)(3)(A)(iii), an issuing court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

904616.1                                           11

confidential information for which no reasonable need is shown"); In re Countrywide Home Loans, Inc., 384 B.R. 373, 393-94 (Bankr. W.D. Pa. 2009) (Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs").

28.     In addition, to the extent the Proposed Subpoena seeks documents reflecting negotiations with claimants and/or their counsel, those documents are confidential settlement negotiation records that federal law and policy[7] – as well as the parties to the negotiations – intend to remain confidential. Absent a court order specifically directing their production, in no event would these negotiation documents be disclosed by the Manville Trust or CRMC.

29.     Therefore, in the event the Court does not deny the Rule 2004 Motion in its entirety, it should preclude the Creditors' Committee from seeking "[a]ll documents . . . reflecting decisions or resolutions concerning the Claimants' claims against the Trust" and any documents reflecting confidential settlement communications or negotiations with claimants. In addition, the Court should require the Creditors' Committee to fully compensate the Manville Trust and CRMC for the resources (including legal fees) they devote to reviewing its files to exclude privileged materials from any production.

---

[7] See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003) (concluding that statements made during settlement negotiations are privileged and protected from third-party discovery and stating "There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties."); but see Phoenix Solutions Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568 (N.D. Cal. 2008) (declining to recognize settlement privilege in discovery dispute).

## III.
## THE PROPOSED SUBPOENA SEEKS DOCUMENTS AND DATA
## THAT MAY BE AVAILABLE THROUGH LESS BURDENSOME MEANS

30. Where, as here, the production of documents would be unduly burdensome, good cause does not exist if the information can be obtained by other means. *See* Freeman, 405 F.2d at 1337 (holding that a determination of good cause necessitates that all practical alternatives be explored). Here, there are less expensive, less burdensome means by which the Creditors' Committee and its advisor may be able to obtain most of the information they seek from the Manville Trust and CRMC.

31. The Manville Trust has a policy under which it will consider distribution of individual claims data – what the Creditors' Committee seeks here – to professionals who have been retained to estimate asbestos liabilities in a court proceeding involving a bankruptcy plan. Indeed, as of October 27, 2009, the Manville Trustees approved a policy for the distribution of Manville Trust data for use solely by other trusts. Austern Decl. ¶¶24-28; s*ee* Ex. D. Pursuant to that policy, the Trust will separately review and decide each request, and will provide Trust data only after concurrence of the Selected Counsel for the Beneficiaries (the "SCB") and the Legal Representative of Future Claimants (the "LRFC").

32. The Creditors' Committee's advisor, Bates White, has applied for a license for much of the information encompassed in the Motion. That application has been brought to the attention of the SCB and the LRFC. Austern Decl. ¶27. If that license is granted, much of the Motion would be moot as to the Manville Trust and CRMC. In addition, following this licensing process, as opposed to permitting issuance of the Proposed Subpoena, would significantly reduce the burden to the Manville Trust

904616.1                                13

and CRMC for two reasons.  First, the Manville Trust is not obligated under its licensing policy to contact counsel for each claimant whose information is released because the licensing agreement contains, *inter alia*, strict contractual limitations governing how the data can be used, confidentiality provisions, and a comprehensive data protection plan. *See* Ex. E.  Second, information provided under the Manville Trust's licensing policy does not include the internal claim evaluation and settlement documents apparently requested in the Proposed Subpoena.

33.    Oddly, the Rule 2004 Motion does not acknowledge that this licensing process has been initiated with the Manville Trust.  Nor does it suggest that the licensed data would be inadequate or insufficient to accomplish the Creditors' Committee's stated objectives.  Nor, for that matter, does the Motion identify any specific efforts the Creditors' Committee has undertaken to identify or employ less burdensome means to collect the information it now purports to seek from the Manville Trust and CRMC.

34.    On that basis, if the Court does not deny the Motion, it should hold it in abeyance until, at a minimum, the license application has been acted upon.  In the event the license is granted, most of the information sought by the Rule 2004 Motion would be provided through an efficient and established process.  At that time, the parties and the Court will be in a better position to evaluate the Creditors' Committee's requests, if any, for broader documents or data.  In the event the license is not granted, the parties and the Court will be in a better position to evaluate the Creditors' Committee's motion in light of the burdens it imposes, the privileges it implicates, and any efforts the Creditors' Committee has undertaken to gather the requested information through

alternative means.[8]

## RESERVATION OF RIGHTS

35.    In the event the Court permits the Creditors Committee to seek the issuance of a subpoena against the Manville Trust or CRMC, the Trust and CRMC reserve their right to move to quash the subpoena before any appropriate court on any and all grounds, including grounds not discussed herein.[9]

---

[8] In addition, the parties could, at that time, consider alternative and less burdensome methods by which the Creditors' Committee may be able to obtain the information it seeks. For example, the Motion does not indicate any reason that the information the Creditors' Committee seeks would not be available from the claimants.

[9] The Manville Trust and CRMC respectfully request leave to supplement the instant Objection with any additional, relevant factual information that may hereinafter become available to them.

**CONCLUSION**

36. For the foregoing reasons, as well as the reasons set forth in the Austern Declaration, the Manville Trust and CRMC respectfully request that the Court deny the Creditor's Committee's Motion in its entirety. In the event the Court does not deny the Motion in its entirety, it should hold the Motion in abeyance as to the Manville Trust and CRMC until the Creditor's Committee's advisor's licensing application has been acted upon. If the Court is inclined to grant the Motion at this time, it should preclude the Creditor's Committee from seeking "[a]ll documents . . . reflecting decisions or resolutions concerning the Claimants' claims against the Trust" and any documents reflecting confidential settlement communications or negotiations with claimants. In addition, the Court should require the Creditors' Committee to compensate the Manville Trust and CRMC for the costs (including legal fees) associated with responding to the Subpoena. Finally, the Court should make any production contingent on the negotiation and entry of a protective order that is satisfactory to all relevant entities (including, at a minimum, the Manville Trust, CRMC and the Creditors' Committee).

Dated:   New York, New York
         August 2, 2010

                                    Respectfully submitted,

                                    FRIEDMAN KAPLAN SEILER &
                                       ADELMAN LLP

                                       /s/ Emily A. Stubbs
                                    Emily A. Stubbs
                                    1633 Broadway
                                    New York, NY 10019-6708
                                    (212) 833-1100

                                    *Attorneys for Manville Personal Injury
                                    Settlement Trust and Claims Resolution
                                    Management Corporation*

904616.1                           16