UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :   Case No. 09-50026 (REG)
MOTORS LIQUIDATION COMPANY, et al.            :   Jointly Administered
         f/k/a General Motors Corp., et al    :
                                              :
         Debtors.                             :
                                              :
                                              :
------------------------------------------------------------x

## DECLARATION OF DAVID T. AUSTERN

DAVID T. AUSTERN, under penalty of perjury, declares:

      1.    I am General Counsel to the Manville Personal Injury Settlement Trust (the "Manville Trust"). I make this declaration in support of the Manville Trust's objection to the Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents by (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors (the "Motion"). I am fully familiar with the facts set forth herein.

**The Creditors' Committee's Proposed Subpoena**

      2.    I have reviewed the Motion, and the proposed subpoena attached as Exhibit D thereto. The proposed subpoena attached as Exhibit D to the Creditors' Committee's motion (the "Subpoena") seeks three categories of documents: (1) Any and all claims forms and other Documents submitted by each of the Claimants (*i.e.*, the plaintiffs in all asbestos personal injury cases filed against GM prior to the petition date

904617.1

in which the claimant alleged mesothelioma) to each of the Trusts; (2a) All documents relating to payments made or to be made to each of the Claimants by each of the Trusts; and (2b) All documents reflecting decisions or resolutions concerning the Claimants' claims against the Trusts.

3.  If the Court grants the Motion permitting issuance of the Subpoena, it would place an extraordinary burden on the Manville Trust. The Manville Trust's policy for the release of information requires that it confirm that when any subpoena is received from a non-party requesting information specific to a claimant, the claimant or his counsel be notified so that he may have an opportunity to move to quash the subpoena. Given the Manville Trust's limited resources, which must be used for the Trust's beneficiaries, it should not be required to confirm notice of the Creditors' Committee's subpoena with each of these 7,400 claimants' counsel or the claimants themselves. In other words, the Manville Trust's assets should not be used for the benefit of the GM Creditors' Committee in its dispute with the Asbestos Committee, but for its own beneficiaries.

4.  In addition, the Subpoena appears to seek production of privileged and confidential documents. Specifically, in document request 2, the Subpoena seeks "All documents .. reflecting decisions or resolutions concerning the Claimants's claims against the Trusts." This request appears to include internal evaluation documents and settlement communications that are protected from disclosure by, at a minimum, the attorney-client, work product and settlement privileges. The Manville Trust's policy also prohibits the disclosure of these documents.

2

904617.1

5.  Further, the requested data may be available through less burdensome (and less expensive) means. In particular, the Manville Trustees have approved a policy permitting the distribution of certain Manville Trust data for limited use. This policy provides a mechanism by which individual claims data may be distributed, upon approval, to professionals who have been retained to estimate asbestos liabilities in a court proceeding involving a bankruptcy plan. As explained below, the advisor to the Creditors' Committee, Bates White, has already submitted an application to the Manville Trust. The Manville Trust is currently reviewing that application. It is therefore possible that the application may be granted, pursuant to which Bates White will obtain access to most of the information which the Creditors' Committee seeks through the Motion and service of the Subpoena.

**The Manville Trust and the Manville Trust Distribution Process**

6.  The Manville Trust was established in 1988 to resolve asbestos personal injury claims against the Johns Manville Corporation ("JM"). JM had been the largest North American producer of asbestos and asbestos-containing products. It filed a petition under Chapter 11 of the Bankruptcy Code in 1982 due to its projected personal injury liabilities, and its reorganization was completed in 1988.

7.  The Manville Trust owns a claims processing facility, Claims Resolution Management Corporation ("CRMC"), which provides claims processing services for the Manville Trust and for other similar trust funds established to resolve asbestos personal injury claims. CRMC resolves Manville Trust claims pursuant to the Manville Trust Distribution Process ("TDP").

8. The first TDP for the Manville Trust was approved in 1995 by Judge Jack B. Weinstein, sitting for the Eastern and Southern Districts of New York, and Judge Burton R. Lifland of the Bankruptcy Court for the Southern District of New York, as part of a court-approved class action settlement (the TDP replaced the Claims Resolution Procedures originally approved by the Bankruptcy Court). *See In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 485-512 (E. & S.D.N.Y. 1995), *aff'd in part*, 78 F.3d 764 (2d Cir.1996). The TDP was modified in 2002. *See In re Joint E. & S. Dist. Asbestos Litig.*, 237 F. Supp. 2d 297 (E. & S.D.N.Y. 2002). The 2002 TDP, as revised in January 2010, is the TDP currently in effect. A copy of the 2002 TDP is attached hereto as Exhibit A.

9. The goal of the Manville Trust is to treat all claimants equitably. The TDP furthers that goal by including procedures for processing and evaluating claims generally on an impartial, first-in-first-out basis, with the intention of paying all claimants over time as equivalent a share as possible of their claims' values.

10. Generally, the TDP establishes an efficient process to resolve claims, in which the CRMC automatically makes a scheduled value settlement if a claimant provides evidence that he or she has an injury that meets the exposure and medical criteria for one of eight scheduled diseases. The scheduled liquidated values for the eight scheduled diseases range from $600 for "other asbestos disease" to $350,000 for mesothelioma. If a claim does not meet the categorization criteria for a scheduled disease, or the claimant decides to reject the scheduled value for a scheduled disease, and in certain other circumstances, the claimant may elect to have the claim individually evaluated by the Manville Trust based on factors set forth in the TDP.

904617.1

11.     CRMC does not pay claimants the full settlement value of their Manville Trust claims, however. Because the Manville Trust has insufficient funds to pay all future claimants the full value of their claims, the TDP directs the Trust to pay each claimant a pro rata percentage of his or her claim's liquidated value. The initial pro rata payment percentage was 10%, and it is now 7.5%. Therefore, except for the payment for "other asbestos disease," which is a cash payment of $600, any Manville Trust claimant who establishes eligibility for one of the scheduled disease levels in the TDP can expect to receive an initial settlement payment of 7.5% of the value set forth for that disease in the TDP.

**The Manville Trust's Policy for Release of Information and Documents**

12.     The Manville Trust TDP sets forth certain procedures for the release of information concerning claims filed with the CRMC. In addition, the Manville Trust has adopted procedures relating to the release of information and documents, and it publishes a guide to those procedures on its website. A copy of this guide, entitled *Frequently Asked Questions related to the Release of Information and Documents Pursuant to the 2002 Manville Trust TDP*, is attached hereto as Exhibit B.

13.     As explained in Section I of the TDP, the Manville Trust is obligated to comply with the rules of discovery pertaining to non-parties under applicable law. Pursuant to the Manville Trust's procedures, when CRMC receives a valid subpoena, CRMC requires confirmation of when and how notice of the request was given to the relevant claimants as well as the claimants' deadline for moving to quash the subpoena. *See* Ex. B at 2. In most instances, the documents served on the Manville Trust or CRMC indicate that claimants' counsel also have been served. *See id.* However, if it

is not clear from the documents whether claimants' counsel have been served, or if the CRMC staff is aware of issues between the parties to the litigation, claimants' counsel are contacted to determine whether they consent to CRMC's release of information and documents, or intend to move to quash the subpoena. *See id.*

14. Accordingly, if CRMC receives a subpoena in the form requested by the Creditors' Committee, it will be obligated pursuant to its procedures to ensure when and how notice of the subpoena was provided to each claimant's counsel or to the individual claimant for whom information is requested. Although it is unclear from the Creditors' Committee's motion exactly how many claimants' records the Creditors' Committee is seeking, its papers refer to "approximately 7,400 prepetition mesothelioma claimants." To the extent that the Creditors' Committee does not provide notice to these 7,400 claimants or their counsel, or to any other claimants whose records the Creditors' Committee seeks or their counsel, the Manville Trust will be obligated to contact each individual claimant, or his counsel, to confirm notice.

15. In addition, here will be a significant burden and expense in confirming that the correct individual is identified in any search of the Manville Trust data – which includes approximately 800,000 individual claimants.

16. Plainly, this burden is too great to place upon the Manville Trust, which was established in this Court for the purpose of using "the assets in the Trust Estate to deliver fair, adequate and equitable compensation to bona fide Beneficiaries." *See* Second Amended and Restated Manville Personal Injury Settlement Trust Agreement § 2.02, attached as Exhibit C hereto. Furthermore, to the extent that the information requested will benefit the Creditors' Committee of Old GM, any cost of producing that

information, and complying with the Manville Trust's policy of confirming notice to the claimants' counsel, should be borne by the Creditors' Committee itself, and not the Manville Trust, as the Creditors' Committee is not a Manville Trust Beneficiary.

**CRMC Produces Only Certain Categories of Information
In Response to Non-Party Subpoenas**

17. CRMC uses a proprietary processing system for claims called e-Claims™, in which certified users at law firms enter claims information electronically. Currently, approximately 90% of the claims filed against the Manville Trust are filed electronically through e-Claims™. For the approximately 10% of the claims that are filed on paper proof of claim forms, the information is entered into e-Claims™ by a CRMC employee.

18. In response to non-party discovery requests, CRMC releases only specific categories of information as described below, as well as documentation and information submitted by the claimant. Generally, the Manville Trust produces "screenshots" of three electronic "screens," Screens D, E and I. Screen D includes the following categories of information, including the injured party's demographics and claim status information:

> Law Firm Name, Claimant Name, Social Security Number (or International ID number if the claimant is foreign), date of birth, gender, address and contact information; date of death and personal representative (if any); Smoking History; and Claim Status (claim status identifiers are attached), including POC number, name of trust against which the claim is filed, date filed, disease level, claim type (FIC = first injury claim; SIC = second injury claim); and value.

Screen "E" includes some of the same claimant identification information as Screen D, but also adds law firm information, litigation history and exposure history (including

7

904617.1

occupation and industry codes). If the claimant seeks compensation at a level for which significant occupational exposure is required, and if the claimant was exposed by working in close proximity to a co-worker who was working directly with asbestos, additional information may be included. Screen "I" summarizes the key information that affects the processing and payment of a claim.

19. In addition to the "screenshots" of Screens D, E and I from the e-Claims™ processing system, upon receipt of a valid non-party subpoena, CRMC provides copies of the medical records, exposure affidavits, death certificates and similar documents submitted in support of a claim. These documents are imaged upon receipt and filed by proof of claim number in a document management system. *See* Ex. B at 5. For claims filed on paper, CRMC typically provides copies of the proof of claim form and supporting submissions.

**The Subpoena Appears to Seek Production of Claim Evaluation or Negotiation Documents Which the Manville Trust and CRMC's Policies Protect From Disclosure**

20. Although the Creditors' Committee does not address the request directly in its motion papers (*see* Creditors' Committee Br. at 9-10), as noted above, its proposed Subpoena seeks "All documents ... reflecting decisions or resolutions concerning the Claimants' claims against the Trusts."

21. This request appears to seek documents relating to claim evaluation by CRMC and documents relating to negotiation by and between CRMC and claimants or their counsel. Such documents may include legal advice from counsel to the Manville Trust concerning liability issues. In addition, the work product called for by

8

904617.1

that request would necessarily reveal confidential information regarding the manner in which the Manville Trust evaluates and settles asbestos claims.

22. It is Manville Trust's and CRMC's strict policy not to release correspondence or documents that relate to claim evaluation and negotiation by and between CRMC and claimants or their counsel. *See* Ex. B at 2, 4-5. In addition, CRMC does not release its own internal evaluation and operational processing information. *Id.* The Manville Trust believes that this information is protected by the work product and settlement privileges, and is not discoverable.

23. To the extent the Court permits the Subpoena to be issued in its current form including the request for documents related to claim evaluation and settlement, responding to the request would pose an enormous burden on the Manville Trust. The Manville Trust would be obligated to review all the documentation responsive to this request to ensure that its work product privilege and the settlement privilege are protected. This would consume significant Trust resources, which should properly be directed toward processing and payment of legitimate claims from individuals injured by exposure to asbestos.

**Much of the Information Sought May Be Available
Through Other Less Burdensome, Less Expensive Sources**

24. Much of the information sought by the Creditors' Committee through its Subpoena may be available through an alternative less burdensome and less expensive source. In particular, information – other than documents reflecting decisions or resolutions concerning the claimants' claims against the Trust – may be available through the Manville Trust's licensing policy.

25. As of October 27, 2009, the Manville Trustees approved a policy for the distribution of Manville Trust data for use solely by other trusts. The policy is attached hereto as Exhibit D.

26. The policy provides that the Manville Trust will consider distribution of individual claims data – what the Creditors' Committee seeks here – to professionals who have been retained to estimate asbestos liabilities in a court proceeding involving a bankruptcy plan. *See* Ex. D. Pursuant to that policy, the Trust will separately review and decide each request, and will provide Trust data only after concurrence of the Selected Counsel for the Beneficiaries (the "SCB") and the Legal Representative of Future Claimants (the "LRFC").

27. On June 24, 2010, Bates White, advisor to the Creditors' Committee, submitted an application for distribution of Manville Trust data. That application has been brought to the attention of the SCB and LRFC. A response has not yet been received. If the application is approved, Bates White must agree to the terms provided in the policy and sign the Manville Trust Single Use Data License Agreement. The form of the license agreement is attached hereto as Exhibit E.

28. Accordingly, there is an alternative means by which the Creditors' Committee's advisors may be able to obtain much of the information sought in the Subpoena (other than documents relating to claim evaluation by the CRMC and documents relating to negotiation by and between CRMC and claimants or their counsel). If the license application is granted, this alternative would be both less expensive and less burdensome to the Manville Trust and CRMC than the requested Subpoena for two reasons. First, the Manville Trust is not obligated under its licensing policy to contact

counsel for each claimant whose information is released because the licensing agreement contains, *inter alia*, strict contractual limitations governing how the data can be used, confidentiality provisions, and a comprehensive data protection plan. *See* Ex. E. Second, information provided under the Manville Trust's licensing policy does not include the internal claim evaluation and settlement documents apparently requested in the Proposed Subpoena and to which the Manville Trust objects.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2010 at Falls Church, Virginia.

_____
David T. Austern

904010.1