# Frequently Asked Questions
related to the
# Release of Information and Documents
# Pursuant to the 2002 Manville Trust TDP

1.  **What does CRMC require for the release of Manville Trust information and documents?**

CRMC releases information as directed by the 2002 Manville Trust Distribution Process (2002 Manville TDP), Section I.1, which governs litigation between Trust Beneficiaries. The information and documents released are to be used solely as provided by applicable law in the jurisdiction in which their production has been sought. The relevant provisions of the 2002 Manville TDP Section I are as follows:

   **I. All Trust Beneficiaries Treated Alike.**

   In order to conserve the assets of the Trust, except as set forth below, Trust Beneficiaries – both plaintiffs and defendants – will dismiss, without prejudice, all present cases, are enjoined from filing future litigation against Manville or the Trust, and are required to pursue their claims against the Trust only as provided in this TDP. Except as provided in Section F above and subsection 1(c) below, the Trust will make no appearance in any court, and no Trust Beneficiary will be permitted to proceed in any manner against the Trust or Manville in any state or federal court.

   **1. Litigation between Trust Beneficiaries.**

   **(b) Right to introduce evidence.** In any litigation between Trust Beneficiaries, all Beneficiaries shall retain their respective rights provided by applicable law to introduce evidence at trial in state or federal court.

   **(e) Discovery and informational issues.** The Trust shall comply with the rules of discovery pertaining to non-parties under applicable law.

   **(f) Verification of settlement information.** In response to a Co-Defendant request, the Trust and the claimant shall promptly verify, no later than the start of jury selection in the trial of an action by the claimant against the Co-Defendant, the fact of any settlement or any filing by the claimant of a claim with the Trust; and shall provide information regarding the amount and terms of any such settlement at the time and with the detail required by applicable law.

Pursuant to Section I.1.(f), in response to a phone, e-mail or other written inquiry, CRMC verifies whether a claim has been filed and settled.  Other information and documents can be obtained based upon any of the following:

1. Written consent of the claimant;
2. A court order; or
3. A subpoena that complies with procedural requirements in the jurisdiction in which it is issued.

**2.     When does CRMC respond to a subpoena?**

CRMC requires that requests made by subpoena confirm when and how notice of the request was given to claimants as well as their deadline for moving to quash the subpoena.  In most instances, the documents served on the Manville Trust indicate that claimants' counsel also have been served.  If it is not clear from the documents whether claimants have been served, or if the CRMC staff is aware of issues between the parties to the litigation, claimants' counsel are contacted to determine whether they consent to CRMC's release of information and documents or intend to move to quash the subpoena.

Jurisdictions vary greatly as to the timing and extent of information and documents to which Co-Defendants are entitled.  For jurisdictions in which claimants' counsel routinely do not object to release of the information or documents, CRMC has not insisted that Co-Defendants incur the time or expense associated with serving subpoenas issued by other courts through a Virginia court.  If claimants' counsel do object, CRMC will not release the information or documents without full compliance with procedural requirements and will await a court's determination of the issue or confirmation of an agreement between the parties.  In all instances, copies of materials sent to Co-Defendants also are sent to claimants' counsel.

**3.     What information does CRMC release?**

On January 28, 2002, CRMC launched its e-Claims™ processing system.  This system includes an option for interactive web-based electronic claim filing by law firms.  Since this option became available, CRMC has trained and certified more than 400 e-Claims™ Users representing more than 90 law firms.  In response to a series of questions or prompts that appear on the e-Claims™ screens, these law firm representatives enter information for about seventy-five percent (75%) of the claims filed against the Manville Trust.  For the approximately twenty-five percent (25%) of the claims that are filed on paper proof of claim (POC) forms, the information is entered into the e-Claims™ system by a CRMC Customer Relations Analyst (CRA).

In response to Third Party discovery requests, CRMC releases information maintained in the e-Claims™ system as described below, and documentation and information submitted by the claimant.  CRMC does not release correspondence that relates to claim evaluation and negotiation by and between CRMC and claimant/counsel.  CRMC also does not release CRMC internal evaluation and operational processing information.

- 2 -

Unless a claimant alleges SOE (disease levels III, IV, V and VII) or their claim is selected for Quality Control (QC) or other audit review, only limited medical and exposure evidence must be submitted to CRMC for claims that are resolved through the categorization process (about 98 percent of all claims filed against the Manville Trust). Only about 2 percent of all claimants request Individual Evaluation or Arbitration.

The letters highlighted below are listed on the e-Claims™ screen printouts under the heading 'Action/View.' CRMC provides printouts of screens D, E and I, but does not provide printouts of the remaining screens, all of which relate to internal CRMC claim evaluation processes and negotiation. The following information is captured on these screens:

**D =    Injured party demographics and claim status information:**

Law Firm Name, Claimant Name, Social Security Number (or International ID number if the claim is foreign), date of birth, gender, address and contact information; date of death and personal representative (if any); Smoking History; and Claim Status (claim status identifiers are attached), including POC number, name of trust against which the claim is filed, date filed, disease level, claim type (FIC = first injury claim; SIC = second injury claim); and value. Claims filed after June 20 2001, with FIFO numbers greater than 445,000 have all received initial pro rata offers that are five percent (5%) of their liquidated settlement value. Prior to that date, most claimants received a ten percent (10%) pro rata payment.

**E =**    Includes some of the same claimant identification information as the "D" screen and adds the following:

Law Firm information, litigation history and exposure history (the occupation and industry codes are attached). If claimant is seeking compensation at a disease level for which evidence of SOE is required, and if claimant was exposed by working in close proximity to a co-worker who was directly working with asbestos, the nature of their co-worker's exposure will be indicated by vicinity occupation (Vic Occ), the occupation of the worker through whom they were exposed, and vicinity type (Vic Type), the co-worker's exposure type. The exposure types are set forth in the 2002 Manville TDP, Section E.2.(b):

Significant Occupational Exposure. "Significant Occupational Exposure" [SOE] means employment for a cumulative period of at least five years, in an industry and an occupation in which the claimant:

  (i)    handled raw asbestos fibers on a regular basis;
  (ii)   fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers;

- 3 -

    (iii)    altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or

    (iv)    was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (i), (ii) and/or (iii).

    (v)    none of the above

**I =**     **Claim Detail.** This is a summary of the key information that affects the processing and payment of a claim.

The following remaining screens, which CRMC does not routinely provide, all relate to CRMC's internal claim evaluation and negotiation processes.

**C =**     **Categorization Decision Tree (CDT).** The CDT is the 'heart' of the CRMC's proprietary e-Claims™ system. Based on claim specific information entered in this part of the program, the system automatically categorizes the claim based on the categorization criteria set forth in the 2002 Manville TDP, Section D.

**O =**     **Offer Status.** The Offer Status Screen provides the date, amount of settlement and the disease compensated. Information on this screen, which includes a link to an "Explanation of Value Screen," is duplicated on the Claim Detail Screen (**I**) (discussed below; **I** is one of the screens CRMC routinely provides in response to Third Party subpoena requests), which indicates the disease level, the Scheduled ("Base") Value for that disease level, factors that would adjust the claim's value (such as Manville employee, which would double a Scheduled Value offer, or foreign exposure, which would result in a lower offer), any adjustment based on a prior claim filing, the applicable pro rata payment percentage, and the Trust payment amount.

**H =**     **History.** The history screen includes 'milestone' dates for key activities related to CRMC's processing of the claim. These include the dates a claim is filed and resolved, which are included on other screens that are produced.

**A =**     **Activity Notes**. As part of the internal claim evaluation process, the Activity Notes are accessible only to CRMC.

**U =**     **Claim Hold Information**. Claims may be placed in a hold status for a variety of reasons, such as law firm representation disputes.

**S =**     **CDT Summary.** As part of the claim evaluation and negotiation process, the CDT screens are accessible only to the Law Firm that enters the information and CRMC.

**Q =**   **Quality Control (QC).**  As part of the internal claim evaluation process, the QC screens are accessible only to CRMC.

**P =**   **Payment history**.  Relevant information on this screen is released on other screens.

In addition to the D, E and I "screenshots" from the e-Claims™ processing system, CRMC provides copies of the medical records, exposure affidavits, death certificates and similar documents submitted in support of the claim.  These documents are imaged upon receipt and filed by POC number in a document management system (DMS).  Except in the case of claims that are audited or claims that are filed in paper form, CRMC does not routinely receive medical documents in support of mesothelioma claims.

For claims filed on paper, CRMC will provide copies of the POC form and supporting submissions.  Unless specifically ordered by a court, CRMC will not provide correspondence that relates to claim evaluation and negotiation by and between CRMC and claimant/counsel.  CRMC does not provide copies of settlement checks, electronic fund transfer (EFT) reports, or releases.  In most cases, law firms maintain the releases pursuant to a law firm affidavit/agreement.

Additional information concerning CRMC and claims against the Manville Trust, including the 2002 Manville TDP, sample claim forms and releases, SOE Occupation and Industry charts, and the CRMC's Asbestos Claims Research Facility in Denver, is available on the CRMC website, www.claimsres.com.  You also may contact Senior Attorney Jared Garelick:  jgarelick@claimsres.com; (703) 205-0836 or CRMC Paralegal Alek Pivec, alek.pivec@claimsres.com; (703) 205-0821.