Hearing Date and Time: August 9, 2010 at 10:30 a.m. (EST)
Objection Deadline: August 2, 2010 at 8:00 p.m. (EST)
Reply Deadline: August 5, 2010 at 12:00 p.m. (EST)

MORVILLO, ABRAMOWITZ, GRAND, IASON
ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, New York 10036
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)
Stephen M. Juris
David C. Austin

*Attorneys for Armstrong World Industries, Inc.
Asbestos Personal Injury Settlement Trust, Celotex
Asbestos Settlement Trust, Babcock & Wilcox
Company Asbestos Personal Injury Settlement Trust,
Owens Corning/Fibreboard Asbestos Personal Injury
Trust, DII Industries, LLC Asbestos PI Trust, United
States Gypsum Asbestos Personal Injury Settlement
Trust, and Delaware Claims Processing Facility*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

| | |
|---|---|
| In re: | : |
| | : |
| | : Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al. | : |
| f/k/a General Motors Corp., et al. | : Case No. 09-50026 (REG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

------------------------------------------------------------------ x

**OPPOSITION OF ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS
PERSONAL INJURY SETTLEMENT TRUST, CELOTEX ASBESTOS
SETTLEMENT TRUST, BABCOCK & WILCOX COMPANY ASBESTOS
PERSONAL INJURY SETTLEMENT TRUST, OWENS CORNING/FIBREBOARD
ASBESTOS PERSONAL INJURY TRUST, DII INDUSTRIES, LLC ASBESTOS
PI TRUST, UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY
SETTLEMENT TRUST, AND DELAWARE CLAIMS PROCESSING
FACILITY TO THE MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR AN ORDER PURSUANT
TO FED. R. BANKR. P. 2004 DIRECTING THE
<u>PRODUCTION OF DOCUMENTS</u>**

# TABLE OF CONTENTS

|  | | Page(s) |
|---|---|---|
| FACTUAL AND PROCEDURAL BACKGROUND | | 1 |
| A. | The Trusts And DCPF | 2 |
| B. | The Committee's Proposed Subpoena Requests | 7 |
| C. | The Significant Burdens Imposed By The Committee's Requested Subpoenas | 8 |
| ARGUMENT | | 9 |
| I. | Rule 2004 Serves A Limited Purpose Not Applicable Here | 9 |
| II. | The Committee's Proposed Subpoena Does Not Meet The Requirements Of Either Rule 2004 Or Fed. R. Civ. P. 45 | 12 |
| A. | The Committee's Proposed Subpoena Would Impose An Undue Burden On The Objectors | 13 |
| B. | The Records Requested Are Highly Confidential And Entitled To Heightened Protection As Settlement Materials | 15 |
| C. | The Committee Has Not Demonstrated Corresponding Need For Non-Party Discovery | 20 |
| CONCLUSION | | 22 |

## TABLE OF AUTHORITIES

### Cases

Page(s)

In re Am. Preferred Prescription, Inc., 186 B.R. 350 (E.D.N.Y. 1995)...................    20

Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407, 624 N.E.2d
1007 (N.Y. 1993)..............................................................................    20

In re Bakalis, 199 B.R. 443 (E.D.N.Y. 1996)...............................................    10

Block Drug Co., Inc. v. Sedona Laboratories, Inc., No. Civ A 06-350,
2007 WL 1183828 (D. Del. April 19, 2007)................................................    19

In re Coffee Cupboard, Inc., 128 B.R. 509 (Bankr. E.D.N.Y. 1991)..................    10

Cohen v. City of New York, 255 F.R.D. 110 (S.D.N.Y. 2008)..........................    21

In re Columbia Valley Regional Med. Center, 41 S.W.3d 797
(Tex. App. 2001)...............................................................................    17

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44 (S.D.N.Y. 1996)...........    13, 15

In re Continental Forge Co., Inc., 73 B.R. 1005 (Bankr. W.D. Penn. 1987).........    11

Crowhorn v. Nationwide Mut. Ins. Co., No. Civ. A. 00C-06-010WLW,
2002 WL 1767529 (Del. Super. July 10, 2002).........................................    17-18

In re DG Acquisition Corp., 208 B.R. 323 (Bankr. S.D.N.Y. 1997),
aff'd, 213 B.R. 883 (S.D.N.Y. 1997), aff'd, 151 F.3d 75 (2d Cir. 1998)..............    12, 13

In re Dinubilo, 177 B.R. 932 (E.D. Cal. 1993).............................................    10

Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994)...............................    16

In re Eagle-Picher Indus., Inc., 169 B.R. 130 (Bankr. S.D. Ohio 1994)...............    10, 11

In re Enron Corp., 281 B.R. 836 (Bankr. S.D.N.Y. 2002)................................    9, 10, 11

In re Fuller-Austin Insulation Co., No. 02-1661-JJF, 2010 WL 2802609
(D. Del. July 15, 2010).......................................................................    16

In re GHR Energy Corp., 35 B.R. 534 (Bankr. D. Mass. 1983)..........................    11

Guy Chem. Co., Inc. v. Romaco AG, 243 F.R.D. 310 (N.D. Ind. 2007)................... 21

In re Johns-Manville Corp., 42 B.R. 362 (S.D.N.Y. 1984)................................. 10, 11

Link v. Ahlstrom Pumps, LLC, No. 06M-10-061 (Del. Super. Ct.
Dec. 7, 2006) (Transcript of Oral Argument)................................................ 22

Mannington Mills, Inc. v. Armstrong World Indus., Inc.,
206 F.R.D. 525 (D. Del. 2002)............................................................. 22

In re Mantolesky, 14 B.R. 973 (Bankr. D. Mass, 1981)...................................... 12, 13

Matsushita Elecs. Corp. v. Loral Corp., No. 92 Civ 5461,
1995 WL 527640 (S.D.N.Y. Sept.7, 1995)............................................... 19

MGM Studios, Inc. v. Grokster, Ltd., 218 F.R.D. 423 (D. Del. 2003).................... 13

Mullins v. Prudential Ins. Co. of Am., 267 F.R.D. 504 (W.D. Ky. 2010)................. 17

In re New York County Data Entry Worker Product Liability Litig.,
162 Misc. 2d 263, 616 N.Y.S.2d 424 (Sup. Ct. N.Y. Co. 1994).......................... 19

Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575 (N.D. Cal. 2007)................... 22

Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923
(7th Cir. 2004)................................................................................. 16

Ortiz v. Ikeda, No. C.A. 99C-10-032-JTV, 2001 WL 660107
(Del. Super. Mar. 26, 2001).................................................................. 17

Pollock v. Superior Court, 113 Cal. Rptr. 2d 453 (Cal. Ct. App. 2001)................... 18

Riddell Sports, Inc. v. Brooks, No. 92 Civ 7851, 1995 WL 20260
(S.D.N.Y. Jan. 19, 1995)..................................................................... 19

Standard Chlorine of Del., Inc. v. Sinibaldi, 821 F. Supp. 232 (D. Del. 1992)........... 21

In re Summit Global Logistics, No. 08-11566, 2008 WL 1446722
(Bankr. D.N.J. Apr. 9, 2008)................................................................. 12-13

In re Texans CUSO Ins. Group, LLC, 426 B.R. 194 (Bankr. N.D. Tex. 2010)........... 12

In re Valley Forge Plaza Assoc., 109 B.R. 669 (Bankr. E.D. Penn. 1990)................ 11

In re Western Asbestos Co., Bankr. Nos. 02-46284 T, 02-46285 T,
02-46286 T., Adversary No. 07-4141 AT, 2008 WL 1734577
(Bankr. N.D. Cal. April 11, 2008)................................................ 16

United States v. Westinghouse Elec. Corp., 638 F.2d 570 (3d Cir. 1980)............... 17

Matter of Wilcher, 56 B.R. 428 (Bankr. N.D. Ill. 1985)................................. 10

In re W.R. Grace & Co., No. 01-1139 (Bankr. D. Del. Aug. 29, 2007)
(Transcript of Oral Argument)................................................... 21

In re W.R. Grace & Co., No. 01-1139 (Bankr. D. Del. Oct. 3, 2007).................... 21

## Statutes

5 U.S.C. § 552............................................................. 17

42 U.S.C. § 1320d-6....................................................... 17

Del. Code Ann. R. Evid. 503.............................................. 17

Del. Code Ann., tit. 6, § 2001............................................. 19-20

Fed. R. Bankr. P. 2004.................................................... *passim*

Fed. R. Bankr. P. 7026.................................................... 2

Fed. R. Bankr. P. 9014.................................................... 2, 10-11, 12

Fed. R. Bankr. P. 9016.................................................... 2, 12

Fed. R. Civ. P. 45......................................................... *passim*

Fed. R. Evid. 408......................................................... 18

N.Y. C.P.L.R. 4505....................................................... 17

Tex. R. Evid. 509......................................................... 17

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Non-parties Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, the Celotex Asbestos Settlement Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust, the United States Gypsum Asbestos Personal Injury Settlement Trust (collectively, the "**Trusts**"), and the Delaware Claims Processing Facility ("**DCPF**"), by and through their undersigned counsel, hereby submit this Opposition to the *Motion of the Official Committee Of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents* (Docket No. 6383) (the "**Motion**"). As set forth below, the non-party discovery sought by the Committee of Unsecured Creditors (the "**Committee**") is inappropriate under Rule 2004, unduly burdensome, and wholly improper given the confidential nature of the claimant files requested.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      On July 20, 2010, the Committee filed its Motion, serving multiple non-party asbestos personal injury settlement trusts by overnight mail. Included among the non-parties served were the Trusts and DCPF (collectively, the "**Objectors**").

2.      Prior to the filing of the Committee's Motion, the Objectors had no involvement whatsoever with the specific discovery matters presented by that Motion or any other aspect of this case. Nor did the Committee advise the Objectors that it would be filing the instant Motion. Given the short briefing schedule imposed by the Committee's chosen hearing date, the Objectors submit this Opposition and the accompanying Declarations of Stephen M. Juris and

John L. Mekus without prejudice to their rights to further challenge issuance of the requested

subpoenas under the applicable Bankruptcy Rules, including Rules 7026, 9014(c), and 9016.[1]

### A.    The Trusts And DCPF

3.    The Trusts are non-for-profit entities established pursuant to Section 524(g) of

Chapter 11 of the Bankruptcy Code.  Their creation was the result of confirmed plans of

reorganization overseen by U.S. Bankruptcy Courts requiring the creation and funding of trusts

to compensate asbestos claimants.[2]  (See, e.g., Juris Decl. Ex. A at 57-58 (Owens Corning plan

confirmation order), Ex. B at §§ 13.1-13.2 (excerpts from Owens Corning plan of

reorganization); Ex. C. at 13-16 (USG Corp. plan confirmation order); Ex. D. at 23-26 (USG

Corp. plan of reorganization).)

4.    Consistent with those plans of reorganization, Section 524(g), and the specific

Trust Distribution Procedures ("**TDPs**") that govern the various Trusts' payment of claims, the

Trusts are responsible for ensuring that claimants are treated fairly, equitably, and reasonably in

light of the limited assets available to satisfy qualified asbestos personal injury claims.  As

qualified settlement trusts under Section 524(g), the Trusts' central purpose is to process and,

when appropriate, settle asbestos personal injury claims in accordance with Bankruptcy Court

directives.  DCPF is a Delaware limited liability company formed in 2006 to administer and

---

[1] Pursuant to good-faith consultations between counsel for the Committee and the undersigned counsel, the Committee did extend customary courtesies and agreed to adjourn its original hearing date (August 6, 2010) to August 9, 2010.

[2] The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust resulted from a plan confirmation order issued by the U.S. District Court for the Eastern District of Louisiana, but is subject to the continuing jurisdiction of the U.S. Bankruptcy Court for the Eastern District of Louisiana. The DII Industries, LLC Asbestos PI Trust and Celotex Asbestos Settlement Trust resulted respectively from plans confirmed by the U.S. Bankruptcy Courts for the Western District of Pennsylvania and the Middle District of Florida.  The other Trusts were formed as a result of bankruptcies pending before the U.S. Bankruptcy Court for the District of Delaware.

process asbestos-related personal injury claims on behalf of multiple asbestos personal injury settlement trusts, including the Trusts. (See Mekus Decl. ¶¶ 1-3.)

5.    As part of the claims process, asbestos claimants submit medical and other records to the Trusts for review and analysis by DCPF personnel. Those materials include proofs of claim, medical records, discovery responses, tax records, deposition transcripts, and affidavits, and are maintained by DCPF for each of the Trusts. (See id. at ¶ 4.) At present, most claims are submitted to the Trusts using DCPF's proprietary electronic filing system, Trust On-line. However, many of the earlier claims against the Celotex Asbestos Settlement Trust exist only in paper form. (See id.) Each trust's claims information is maintained in confidence by DCPF and is not shared by DCPF with the other trusts. (See id. at ¶ 7.)

6.    The materials typically submitted by claimants and their legal representatives are highly personal and confidential. These submissions typically include medical records, which often include sensitive personal information unrelated to asbestos injuries, such as histories of drug and alcohol abuse, HIV status, sexual or emotional dysfunction, or other highly confidential health information. (See id. at ¶ 5.) These materials also frequently include confidential details concerning claimants' personal finances, Personally Identifiable Information (such as social security numbers), or information concerning claimants' family members. For example, economic loss reports may contain descriptions of claimants' children, including dependents' mental and/or physical disabilities or drug addiction. (See id.)

7.    In addition to medical and financial data, claims files often include Personally Identifiable Information, social security numbers, and other confidential information relating to non-claimants, including spouses, children, other third parties (including co-workers), and administrators or executors of trusts and estates. (See id. at ¶ 6.) Moreover, DCPF

- 3 -

communicates with the Trusts and their respective counsel with regard to the processing and

settlement of claims. (See id.) Documents reflecting those communications are often contained

within the claim files maintained by DCPF on behalf of the Trusts. (See id.)

8.    DCPF's staff evaluates claimants' submissions in light of the Trusts' TDPs.

Under DCPF's agreements with the Trusts, DCPF is obligated to maintain the confidentiality of

these submissions. (See id. at ¶ 7.) Moreover, pursuant to the standard Electronic Filer

Agreements ("**EFAs**") that govern submission of electronic claims to the Trusts by asbestos

claimants' representatives, any claims-related materials submitted to DCPF and the Trusts are

considered confidential information submitted for settlement purposes only. (See id.) For

example, the current EFA for the United States Gypsum Asbestos Personal Injury Settlement

Trust expressly states that materials submitted by claimants "shall remain confidential

information submitted for settlement purposes only." (Juris Decl. Ex. E, at § 5.5.) Other EFAs

contain virtually identical restrictions. (See, e.g., Juris Decl. Ex. F, at § 5.5 (Owens

Corning/Fibreboard EFA); Ex. G, at § 5.5 (Armstrong World Industries EFA)). In addition, the

relevant EFAs require claimants' representatives to maintain copies of each claims document

submitted to the Trusts. (See, e.g., Juris Decl. Ex. E, at § 5.4; Ex. F, at § 5.4; Ex. G, at § 5.4.)

9.    The TDPs require that all submissions to the Trusts be treated as confidential

settlement communications. (See Mekus Decl. ¶ 8.) For example, in connection with the

approval of Owens Corning's September 26, 2006 plan of reorganization, the court approved a

proposed TDP stating the following:

> All submissions to the PI Trust by a holder of a PI Trust Claim or a
> proof of claim form and materials related thereto shall be treated as
> made in the course of settlement discussions between the holder
> and the PI Trust and intended by the parties to be confidential and
> to be protected by all applicable state and federal privileges,
> including, but not limited to, those directly applicable to settlement

discussions. The PI Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, with the permission of the holder, to another trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or other applicable law, to such other persons as authorized by the holder, or in response to a valid subpoena of such materials issued by the Bankruptcy Court. Furthermore, the PI Trust shall provide counsel for the holder a copy of any such subpoena immediately upon being served. The PI Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privilege[s] before the Bankruptcy Court and before those courts having appellate jurisdiction related thereto.

(Juris Decl. Ex. H, at § 6.5 (Owens Corning/Fibreboard Form of Asbestos Personal Injury Distribution Procedures).) The court likewise approved proposed guidelines requiring that all materials exchanged in the course of ADR proceedings involving Owens Corning asbestos claims "will be confidential" and "shall be deemed a settlement conference pursuant to Rule 408 of the Federal Rules of Evidence." (Juris Decl. Ex. I, at 8-9, 19-20 (Owens Corning/Fibreboard Alternative Dispute Resolution Procedures).) At present, all of the Trusts operate pursuant to TDPs imposing substantially similar restrictions regarding the disclosure of confidential claimant materials. (See, e.g., Juris Decl. Ex. J, at § 6.5 (Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures, as revised Feb. 2, 2010); Ex. K, at § 6.5 (USG Asbestos Personal Injury Settlement Trust Distribution Procedures).) Moreover, several of the relevant TDPs affirmatively require the Trusts to notify claimants' representatives upon the receipt of a subpoena. (See Mekus Decl. ¶ 8; see, e.g., Juris Decl. Ex. J, at § 6.5; Ex. K, at § 6.5.)

10.    In addition to the above-referenced confidentiality restrictions, the claims resolution processes and databases utilized by DCPF are highly confidential and proprietary. (See Mekus Decl. ¶ 9.) For example, Trust On-line is a proprietary electronic claims filing system developed -- at significant expense -- in order to effectively manage the claims DCPF has

been tasked to process for the Trusts.  (See id.)  All information and materials submitted by claimants to the Trusts, together with all other information and materials relating to the resolution of those claims, are maintained in DCPF's proprietary computer system.  In particular, the structure of the databases themselves, including the logically defined relationships between relational and various object data fields, is considered proprietary business information.  (See id.)

11.    DCPF uses sophisticated software to organize and maintain a master database containing information related to claims filed against each of the Trusts.  (See id. at ¶ 10.)  The master database comprises a collection of "virtual" databases containing each of the Trusts' data. (See id.)  Pursuant to the agreement by which DCPF licenses its software, DCPF owns any and all derivative works it generates from the software, including all modifications and upgrades. (See id.)  DCPF has modified and upgraded the software as it relates to the organization, categorization, and storage of data relating to claims against the Trusts.  (See id.)  The Trusts and DCPF have invested considerable time, money, and energy in order to implement and protect the confidentiality of materials submitted by claimants.  Among other things, these efforts have included software audit trails, internal processes, engaging third-party vendors to test and strengthen security, data security integrity testing, complying with ISO 27002 standards relating to information security and control, systemic personal controls over data access, and using appropriate firewalls and encryption technology.  (See id. ¶ 12.)

12.    Production of the Trusts' claims databases therefore will reveal confidential research, development, and/or valuable commercial information relating to the collection, sorting, processing, and storing of claims data by the Trusts and/or DCPF to DCPF's competitors.  For this reason, the EFAs supplied to claimants' representatives stipulate that the Trust On-line system shall be the exclusive proprietary property of DCPF and that both the

software and any reports generated by Trust On-line will be maintained in confidence by the

filing firm.  (See Juris Decl. Ex. E at § 1.3, Ex. F, at § 1.3.)

### B.    The Committee's Proposed Subpoena Requests

13.    Pursuant to Fed. R. Bankr. P. 2004, the Committee requests an order authorizing

it to serve the Objectors and another Section 524(g) settlement trust with subpoenas requiring the

production of a broad range of documents relating to asbestos claims.

14.    Specifically, the Committee requests permission to serve subpoenas requesting

the following documents:  (1) "Any and all claims forms and other documents submitted by each

of the [GM pre-petition mesothelioma] Claimants to each of the Trusts"; and (2) "All documents

relating to payments made or to be made to each of the [GM pre-petition mesothelioma]

Claimants by each of the trusts, or reflecting decisions or resolutions concerning the [GM pre-

petition mesothelioma] Claimants' claims against the Trusts."[3]  (Mot. Ex. D at 1 (proposed

subpoena annex); see Mot. ¶ 16; Mot. Ex. A.)  The Committee asserts that there are

approximately 7,400 such claimants.  (See Mot. ¶ 25.)  However, it does not specify when -- or,

more importantly, from which court -- it expects its requested subpoenas to be issued.  It also

does not explain why it would be incapable of securing the information it seeks directly from the

parties to this proceeding or the claimants themselves.  Nor has it supplied the Objectors as of yet

with a complete list of the mesothelioma claimants whose information it seeks.[4]

---

[3] The Committee's Motion seeks other Rule 2004 disclosures from the Debtor.  The Objectors
take no position on that request, which appears to have been preceded by substantive discussions between
the Debtor and the Committee.  (See Mot. ¶ 30.)

[4] The Trusts do not know how many of the 7,400 GM mesothelioma claimants may have asserted
claims against any of the Trusts.  The Committee has indicated that it is willing to provide the Objectors
with a detailed list of the GM claimants following execution of a confidentiality agreement.  The
Objectors respectfully request leave to supplement the instant Objection with any additional, relevant
information that may hereinafter become available to them as a result of the Committee's disclosure of
this information.

C.     **The Significant Burdens Imposed By The Committee's Requested Subpoenas**

15.     Responding to the Committee's proposed subpoena requests would impose an extraordinary burden on the Objectors. (See Mekus Decl. ¶¶ 13-26.) Requiring them to respond to such a subpoena would also directly impact the many asbestos claimants whose claims remain pending before the Trusts. (See id. at ¶¶ 12, 24-26.) Those claimants and their representatives undoubtedly have access to the very same claims information that the Committee seeks, and they should have the right to object and be heard regarding the Committee's request.

16.     For example, responding to the Committee's first proposed request ("[a]ny and all claims forms and other Documents submitted by each of the Claimants to each of the Trusts") would require DCPF personnel to search through a large number of claim files and review all documents from the identified files to ensure that the files produced -- electronic or otherwise -- actually match the GM claimants referenced and that any inadvertently-included or privileged materials are redacted from any claims files produced. (See id. at ¶¶ 15-20.) Given the scale of the materials maintained in claimant files, this could require the review of hundreds of thousands of documents even for those files that are presently maintained in electronic form. (See id. at ¶ 17.) Moreover, because Celotex claims files are available predominantly in paper form, locating and retrieving the relevant claimant files would require the manual retrieval and review of files from storage boxes. (See id. at ¶ 18.) We respectfully direct the Court to Mr. Mekus' Declaration for a more detailed description of the specific burdens imposed by the Committee's document requests.

17.     Separate and apart from the tasks required to locate, review, and produce claimants' own submissions to the Trusts, the documents called for by the Committee's proposed subpoena would appear to call for far more than claimant submissions. (See id. at ¶ 21.) The

documents called for by that request could potentially reveal confidential information and work product regarding the manner in which each trust evaluates and (if applicable) settles asbestos claims.  (See id. at ¶¶ 21-23.)

18.     The Committee characterizes Section 524(g) trusts as "deep-pocketed," but the Trusts' resources are sharply limited when balanced against their present and future asbestos liabilities.  (See Mekus Decl. ¶ 24.)  As a result, each Trust's TDP is periodically revised to apply set "payment percentages" that are well short of 100 percent in order to safeguard trust assets for future claimants.  (See id.)  Trusts such as the Owens Corning/Fibreboard Asbestos Personal Injury Trust and the other Trusts presently pay as little as 10 percent of each qualifying claim.  (See Juris Decl. Ex. L, at 12 (Owens Corning/Fibreboard Asbestos Personal Injury Trust Annual Report and Account for 2009).)  Every dollar spent on document review and production is therefore a dollar less for qualifying claimants.  (See Mekus Decl. ¶ 24.)  Moreover, having DCPF's staff conduct the review and production requested here would necessarily divert key personnel from their claims processing responsibilities and delay the processing of pending claims.  (See id. at ¶¶ 25-26.)

## ARGUMENT

### I.     Rule 2004 Serves A Limited Purpose Not Applicable Here

19.     Fed. R. Bankr. P. 2004 permits courts to order an examination of any entity in a non-adversary bankruptcy proceeding.  While the scope of the rule is broad, it "is not unlimited." In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (internal quotations omitted).

20.     First, under its express terms, Rule 2004 is limited to information relating to the "acts, conduct, or property or to the liability and financial condition of the *debtor*, or to any matter which may affect the administration of the *debtor's* estate, or to the *debtor's* right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).  The Committee therefore cannot use

- 9 -

Rule 2004 to "stray into matters not relevant to [that] basic inquiry." In re Bakalis, 199 B.R.

443, 448 (E.D.N.Y. 1996).

21.     Second, Rule 2004 imposes an affirmative burden on the Committee to

demonstrate "good cause" for its document requests. See In re Coffee Cupboard, Inc., 128 B.R.

509, 514 (Bankr. E.D.N.Y. 1991).  Rule 2004 inquiries fail to meet this standard where their true

purpose involves something other than discovery of the debtor's assets. See, e.g., In re Johns-

Manville Corp., 42 B.R. 362, 365 (S.D.N.Y. 1984) ("facilitation of negotiation" not a proper

ground for Rule 2004 examination); In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr.

S.D. Ohio 1994) (Rule 2004 improperly invoked to develop alternate plan of reorganization).

22.     These limitations are especially applicable to non-parties because the

"examination of third parties is at best ancillary to [the Rule's] main purpose." Matter of

Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).  Thus, examination of non-parties about

matters having no reasonable relationship to the debtor's own affairs or the administration of its

estate is improper. See In re Johns-Manville Corp., 42 B.R. at 364; see also In re Dinubilo, 177

B.R. 932, 940 (E.D. Cal. 1993) (Rule 2004 examination limited to those non-parties with

"knowledge of the debtor's acts, conduct or financial affairs") (internal quotations omitted).

Courts likewise have refused to allow discovery where Rule 2004 is "used as a device to launch

into a wholesale investigation of a non-debtor's private business affairs." Matter of Wilcher, 56

B.R. at 434.

23.     Finally, Rule 2004 does not apply to contested matters. See In re Enron Corp.,

281 B.R. at 840.  Discovery in contested matters and adversary proceedings is instead governed

by the Federal Rules of Civil Procedure, which provide "numerous procedural safeguards against

unfairness to the party from which discovery is sought." Matter of Wilcher, 56 B.R. at 434; see

Fed. R. Bankr. P. 9014. The Committee thus cannot use Rule 2004 to "circumvent" the discovery rules ordinarily applicable to adversary proceedings or contested matters. In re Valley Forge Plaza Assoc., 109 B.R. 669, 675 (Bankr. E.D. Penn. 1990); see In re GHR Energy Corp., 35 B.R. 534, 538 (Bankr. D. Mass. 1983) (precluding use of Rule 2004 to "circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure").

24.    Here, neither of the two stated purposes for the Committee's discovery requests meets Rule 2004's requirements. To the extent that the Committee says it needs claimant files and the Objectors' settlement information in order to facilitate a "settlement negotiation" with other parties regarding Old GM's asbestos liabilities, (see Mot. at 3), the law is clear that this is not a permissible use of Rule 2004. See In re Johns-Manville Corp., 42 B.R. at 365; see also In re Eagle-Picher Indus., Inc., 169 B.R. at 134. Nor is Rule 2004 disclosure appropriate to secure advance discovery for an estimation proceeding that the Committee already anticipates initiating. (See Mot. at 2-3 (noting Committee's intent "to commence an estimation proceeding in this Court to determine the Debtor's aggregate asbestos liability").)[5] Rule 2004 may not be used as a shortcut for discovery on contested matters, claims, or defenses that a party already intends to assert. See In re Enron Corp., 281 B.R. at 841; In re GHR Energy Corp., 35 B.R. at 538; see also In re Continental Forge Co., Inc., 73 B.R. 1005, 1006 (Bankr. W.D. Penn. 1987) (precluding disclosure of proprietary information sought by debtor, holding that the "relevancy of the requested materials ought to be weighed in the context of a civil law suit for breach of contract or misrepresentation rather than a search for assets in the Bankruptcy Court").

---

[5] Elsewhere in its Motion the Committee notes that "[t]he aggregate amount of the Debtor's asbestos liabilities is *hotly disputed*" and that the parties already have retained experts to gather and analyze data relevant to that dispute. (Mot. ¶¶ 2-3 (emphasis added).)

25.    Estimation proceedings are "contested matters" to which Rule 2004 simply does not apply.  See In re Texans CUSO Ins. Group, LLC, 426 B.R. 194, 202-03 (Bankr. N.D. Tex. 2010).  Thus, if the Committee wishes to obtain discovery to assist its experts and counsel in connection with a contested claims estimation proceeding, it is to Rule 9014 and the Federal Rules of Civil Procedure that it must look for relief.

## II.    The Committee's Proposed Subpoena Does Not Meet The Requirements Of Either Rule 2004 Or Fed. R. Civ. P. 45

26.    Regardless of whether Rule 2004 or Rule 9014 applies, the Committee has failed to carry its required burden.  As explained below and in the accompanying Mekus Declaration, the burdens sought to be imposed on the Objectors are great and the information being sought has nothing to do with the *Debtor's* own pre-petition claims experience.  By any measure this cannot be considered "good cause" under Rule 2004, particularly where the mesothelioma claims information being sought could be obtained from the claimants themselves.

27.    Moreover, as the Committee itself acknowledges (see Mot. ¶ 15), the Rule 2004 order it seeks is not self-executing.  Subpoenas issued pursuant to Rule 2004 are instead governed by Fed. R. Bankr. P. 9016, which wholly incorporates Fed. R. Civ. P. 45 and equally applies to Rule 2004 requests from non-parties.  See Fed. R. Bankr. P. 2004(c); see also In re Mantolesky, 14 B.R. 973, 979 (Bankr. D. Mass, 1981).  DCPF is located in Delaware.  Thus, any subpoenas issued to obtain its claims materials ultimately must issue from the District of Delaware *and* satisfy Rule 45.[6]  See, e.g., In re Summit Global Logistics, No. 08-11566, 2008

---

[6] Consistent with relevant authority, the Objectors reserve their rights to assert any and all appropriate objections to such subpoenas in the event that they are ultimately issued.  See In re DG Acquisition Corp., 208 B.R. 323, 332 (Bankr. S.D.N.Y. 1997), aff'd, 213 B.R. 883 (S.D.N.Y. 1997), aff'd, 151 F.3d 75 (2d Cir. 1998) (granting objection to subpoena issued pursuant to Rule 2004 order by U.S. Bankruptcy Court for the District of Delaware).  All but one of the Trusts (the DII Industries, LLC Asbestos PI Trust) is located in Delaware.  That trust is organized in Pennsylvania and headquartered in Texas.

WL 1446722, at **3-5 (Bankr. D.N.J. Apr. 9, 2008) (quashing subpoena issued pursuant to Rule

2004, in part under Rule 45's "undue burden" standard); In re DG Acquisition Corp., 208 B.R.

323, 332 (Bankr. S.D.N.Y. 1997) (finding that Rule 45 protected non-parties from turning over

privileged documents requested under Rule 2004); In re Mantolesky, 14 B.R. at 979 (disallowing

bankruptcy examination under former Rule 205 where deponent was not subject to jurisdiction

under Rule 45).

28.     Under Rule 45, courts are required to quash or modify subpoenas that impose an

undue burden or require the disclosure of privileged or otherwise protected information. See

Fed. R. Civ. P. 45(c)(3)(A). This is particularly so where compliance with a subpoena would

result in undue expense or inconvenience for a non-party. See, e.g., MGM Studios, Inc. v.

Grokster, Ltd., 218 F.R.D. 423, 424 (D. Del. 2003) (quashing subpoena where relevant evidence

was otherwise available without forcing non-party to transport witnesses from outside court's

jurisdiction); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49-50 (S.D.N.Y. 1996)

(quashing subpoena given expense and inconvenience to non-party). Rule 45 likewise authorizes

courts to quash subpoenas that require disclosure of trade secrets or other confidential

commercial information. The Committee's proposed subpoena implicates all of these concerns.

A.    **The Committee's Proposed Subpoena Would Impose An Undue Burden On
The Objectors**

29.     As the Committee's own Motion acknowledges, the question of how Old GM's

asbestos-related liabilities should be measured appears to be a matter of significant disagreement

between the Committee and the Asbestos Committee. (See Mot. at 2-3.) The Objectors hereby

adopt and incorporate by reference any objections that the Asbestos Committee may assert

concerning the relevance of the Committee's proposed discovery requests. Because the

particular discovery being sought from the Objectors has *nothing* to do with GM's actual pre-

petition experience in the tort system, it is difficult to see how that discovery could be relevant to the instant proceeding or anything other than a costly and burdensome distraction.

30.    Moreover, even if the discovery sought by the Committee could be considered relevant, the difficulties that this discovery would visit upon the Objectors are extraordinary. In essence, the Committee seeks all claimant submissions and other materials maintained by six different trusts in connection with 7,400 claimants. As indicated above and in the accompanying Mekus Declaration, the costs of such a production -- both financially and in terms of lost productivity -- would be significant. (See Mekus Decl. ¶¶ 24-26.) Many of the requested claimant files (with the exception of Celotex claims) have been scanned electronically. However, reviewing those materials for production and extracting non-responsive, privileged, or otherwise confidential documents would nonetheless require a significant undertaking by DCPF staff and counsel. (See id. at ¶¶ 14-20.)

31.    Several of the Trusts operate pursuant to TDPs expressly requiring them to notify claimants' representatives upon the receipt of a subpoena for claimant materials, and claimants against all of the Trusts should have an opportunity to object and be heard regarding the Committee's proposed subpoena. (See supra ¶¶ 8-9.) Providing such notice to claimants would impose additional -- and unwarranted -- burdens on the Trusts.

32.    These burdens are exacerbated by the broad scope of the subpoena being requested here. In addition to requesting all *claimant* submissions and the "amounts paid by each of the Trusts to the plaintiffs," the Committee also seeks "[a]ll Documents relating to payments made or to be made to each of the Claimants by each of the Trusts, or reflecting decisions or resolutions concerning the Claimants' claims against the Trusts." (Mot. Ex. D, at ¶¶ 1-2.) The Committee suggests at points that it merely seeks claimant submissions and settlement

- 14 -

amounts. (Mot. ¶¶ 9-10.) However, its proposed subpoena appears to call for documentation --

internal or otherwise -- relating to the Objectors' internal claims assessment and resolution

process. Responding to this request as drafted would dramatically interfere with the Trusts'

ability to candidly assess and evaluate asbestos claims. Such documents are also far more likely

to include attorney-client communications and other privileged documents. (See Mekus Decl. at

¶ 21-22.)

33.    The breadth of these requests would be reason alone to deny the Committee's

Motion. See Concord, 169 F.R.D. at 51 (quashing "overbroad" subpoena because of the burdens

it would impose on non-party). More importantly, however, responding to the Committee's

inquiries will consume time and resources that could be better spent reviewing and paying

claims. (See Mekus Decl. ¶¶ 24-26.) The Trusts are not-for-profit entities created by the courts

to perform an important public service:  evaluating and settling claims brought by asbestos

claimants. And no amount of money can compensate the Trust or the DCPF for the loss in time

and diversion of resources that compliance with the subpoena will cause. If litigants in this and

other cases could look to the Objectors, rather than the parties (or claimants themselves) for

claims information on this extensive scale, the Trusts' court-mandated function would be wholly

subverted and Section 524(g) settlement trusts would be transformed into data repositories

available for any and every third party dispute.

**B.    The Records Requested Are Highly Confidential And Entitled To
Heightened Protection As Settlement Materials**

34.    In addition to imposing significant practical burdens on the DCPF and its staff,

the Committee's proposed subpoena would compromise the legitimate privacy and

confidentiality interests of at *least* 7,400 asbestos claimants -- and likely many more non-

claimants or asbestos claimants without pending claims against Old GM. (See Mot. Ex. D, at ¶¶

1-2; Mekus Decl. ¶¶ 8, 16.)  Because anyone submitting a claim to the Trusts must also supply

DCPF with detailed medical records, turning over this information would require the release of

tens of thousands of pages of extremely sensitive personal information.  Included in these

medical records, among other items, are details regarding claimants' HIV status and alcohol or

drug dependence.  (See Mekus Decl. ¶ 5.)  The proposed subpoena will also entail disclosure of

confidential information relating to claimants' financial status and tax records.  (See id. at ¶¶ 5-

6.)

       35.     This disclosure would not only affect the claimants themselves.  Many claims

files include medical, financial, social security, and other personal information concerning

spouses, dependent children, and co-workers.  (See id.).  Claims files also can include social

security numbers and other personal information for third parties supplying supporting affidavits

or administrators and executors of trusts and estates.  (See id. at ¶ 6.)

       36.     These materials are highly confidential and should be protected from disclosure in

the absence of notice and/or consent by the claimants themselves.  See In re Fuller-Austin

Insulation Co., No. 02-1661-JJF, 2010 WL 2802609, at *2 (D. Del. July 15, 2010) (rejecting

request for retention of claimant medical and social security information given the "sensitive

nature" of materials requested); In re Western Asbestos Co., Bankr. Nos. 02-46284 T, 02-46285

T, 02-46286 T., Adversary No. 07-4141 AT, 2008 WL 1734577, at **4, 8 (Bankr. N.D. Cal.

April 11, 2008) (rejecting insurance company's request to use asbestos claimant's personal

information); Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 928-33 (7th Cir. 2004)

(quashing subpoena for production of hospital records); Doe v. City of New York, 15 F.3d 264,

267 (2d Cir. 1994) (noting that "the right to confidentiality includes the right to protection

regarding information about the state of one's health").  As the Third Circuit has explained,

medical records and information "stand on a different plane" than other relevant material and are

entitled to enhanced privacy protections. United States v. Westinghouse Elec. Corp., 638 F.2d

570, 577 (3d Cir. 1980) (requiring government to provide individuals with notice and

opportunity to raise personal privacy claim before accessing medical records).

37.    Moreover, such information is subject to multiple statutory protections under state

and federal law. See, e.g., Del. Code Ann. R. Evid. 503 (creating patient privilege restricting

disclosure of medical records and related materials); Tex. R. Evid. 509(c) (prohibiting disclosure

of medical records); Westinghouse Elec., 638 F.2d at 574 (recognizing privacy concerns

associated with production of medical records and granting employer standing to assert

employees' privacy rights); Ortiz v. Ikeda, No. C.A. 99C-10-032-JTV, 2001 WL 660107 (Del.

Super. Mar. 26, 2001) (prohibiting discovery of patients' medical records because of privilege

and noting that, even if the material were not privileged, redaction of names fails to adequately

protect a patient's legitimate expectation of privacy); In re Columbia Valley Regional Med.

Center, 41 S.W.3d 797, 800-03 (Tex. App. 2001) (holding that trial court abused its discretion by

ordering production of redacted non-party medical records and that medical records are within a

zone of privacy protected by the United States Constitution); see also 5 U.S.C. § 552(b)(6)

(exempting medical files from Freedom of Information Act); 42 U.S.C. § 1320d-6 (imposing

criminal penalties for improper use or disclosure of individually identifiable health information);

N.Y. C.P.L.R. 4505(a) (preserving medical privilege even where information is disclosed for

purpose of making insurance claims).[7]

---

[7] These privacy concerns do not disappear merely because medical records are submitted to insurers or others as part of a claims process. See N.Y. C.P.L.R. 4505(a) (patient disclosure of medical records for purpose of obtaining insurance benefits does not waive applicable privileges); see also Mullins v. Prudential Ins. Co. of Am., 267 F.R.D. 504, 522 (W.D. Ky. 2010) (finding that employee disability benefit plan and administrator may withhold confidential medical and health information, disclosure of which would implicate "privacy concerns"); Crowhorn v. Nationwide Mut. Ins. Co., No. Civ. A. 00C-06-

38.    Likewise, granting the Committee's Motion would violate both the letter and the spirit of the Trusts' TDPs.  Each and every one of the Trusts at issue here collects information from claimants pursuant to EFAs and/or TDPs *requiring* claimant submissions to be treated as confidential material protected by all applicable state and federal privileges, including any privileges directly applicable to settlement discussions.  (See, e.g., Juris Decl. Ex. J, at § 6.5, Ex. K, at § 6.5; Ex. F, at § 5.5, Ex. G, at § 5.5, Ex. M, at § 5.3.)  Other plan-related documents approved in connection with plan confirmation for certain of the trusts similarly stipulated that all ADR proceedings concerning asbestos claims "will be confidential" and "shall be deemed a settlement conference pursuant to Rule 408 of the Federal Rules of Evidence."  (Juris Decl. Ex. I, at 8-9, 19-20.)

39.    These well-considered disclosure restrictions should be respected.  Rule 408 of the Federal Rules of Evidence provides that settlement-related evidence is not admissible "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."  Fed. R. Evid. 408.  Rule 408 ultimately is an evidentiary rule, but the particular claims information being requested here can only be of any value to the Committee if it can be affirmatively *used* in connection with the parties' claims estimation dispute.  This is its purpose according to the Committee, as the Committee has declared its intention to use the Objectors' claims files to determine the validity and amount of asbestos claims made against Old GM.  (See Mot. at 2, 13.)  However, this is precisely what Rule 408 forbids.  Moreover, the underlying settlement materials submitted to *other* settlement trusts, or the amount of settlements by *those* trusts, has no probative value whatsoever to Old GM's pre-petition tort liabilities.

---

010WLW, 2002 WL 1767529, at *10 (Del. Super. July 10, 2002) (permitting insurance company to assert physician-patient privilege on behalf of claimants); Pollock v. Superior Court, 113 Cal. Rptr. 2d 453, 457 (Cal. Ct. App. 2001) (privilege applicable to medical information not waived by submitting insurance claims).

40.     Moreover, multiple courts in both this District and the District of Delaware have recognized heightened discovery protections for settlement materials. See, e.g., Block Drug Co., Inc. v. Sedona Labs., Inc., No. Civ. A 06-350, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007) (noting heightened standard applicable to settlement materials); Matsushita Elecs. Corp. v. Loral Corp., No. 92 Civ. 5461, 1995 WL 527640, at *4 (S.D.N.Y. Sept. 7, 1995) (denying discovery of settlement materials because requesting party must, "as the price for obtaining such potentially disruptive disclosure, make a fairly compelling showing that it needs the information").

41.     Public policy generally favors settlements and keeping settlement-related communications confidential. The Committee therefore must make a more particularized showing that admissible evidence will result from its proposed subpoena requests and that its need for the requested documents outweighs the significant burdens those requests would impose on the Objectors. See Block Drug, 2007 WL 1183828, at *1 ("Courts in this circuit and others, to effectuate the goals of both rules, have required a more particularized showing that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence.") (internal quotations omitted); Riddell Sports, Inc. v. Brooks, No. 92 Civ. 7851, 1995 WL 20260, at *1 (S.D.N.Y. Jan. 19, 1995) (holding that "absent a particularized showing of their relation to admissible evidence, documents concerning settlement are presumed irrelevant and need not be produced") (internal quotations omitted); see also In re New York County Data Entry Worker Product Liability Litig., 162 Misc. 2d 263, 267, 616 N.Y.S.2d 424, 427 (Sup. Ct. N.Y. Co. 1994) (rejecting discovery of settlement agreements). This it cannot do.[8]

---

[8] Additionally, Fed. R. Civ. P. 45(c)(3)(B)(i) precludes the Committee from seeking the Objectors' trade secrets or other confidential business information. DCPF's Trust On-line claims software and internal claims resolution systems constitute trade secrets under both Delaware and New York law. See Del Code Ann., tit. 6, § 2001(4)(a) (defining trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and

C.    **The Committee Has Not Demonstrated Corresponding Need For Non-Party Discovery**

42.    Finally, the Committee fails to demonstrate that its professed future need for the documents it requests outweighs the present costs and other burdens its contemplated subpoena would impose. Relevance (or, more appropriately, the lack thereof) aside, discovery regarding the Debtor's asbestos liabilities has yet to begin in earnest. As its own Motion makes clear, the parties anticipate some negotiation before any formal claims estimation proceeding begins. (See Mot. at 2-3.) The Committee likewise has yet to obtain and review detailed claims-related information from the Debtor in this case. Depending on what happens during those negotiations or initial litigation concerning the appropriate scope of the claims estimation process, third-party discovery from the Objectors may ultimately prove unnecessary.

43.    Nor has the Committee demonstrated that it cannot obtain the same basic information through less burdensome or intrusive means. Notably, the Committee's Motion does not indicate that the Committee has been unable to gather necessary information from the actual parties to this case or from the claimants themselves regarding Old GM's asbestos liabilities. Indeed, all of the claims information that the Committee seeks here is in the possession of Old GM's asbestos creditors. The mesothelioma claimants whose files the Committee seeks are in the best position to either supply those materials or object. The Committee's motion likewise does not explain why its various experts must have non-public claims files and settlement information from the Objectors given the information that is already made publicly available by

---

use"); Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1013 (N.Y. 1993) (defining trade secret to include "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it") (citations omitted). Similarly, DCPF's proprietary databases and any associated compilations of claimant-related data are protected as trade secrets. See In re Am. Preferred Prescription, Inc., 186 B.R. 350, 357 (E.D.N.Y. 1995) (compilations of physician-related information gathered from public sources constitute protected trade secrets).

the Trusts. This is not at all surprising. The Committee's own Motion makes clear that the

Committee had not even *received* the Debtor's own historical claims data before asking

permission to issue a subpoena to the Objectors and other Section 524(g) trusts.

44.     Unlike the <u>W.R. Grace</u> case invoked by the Committee, the Committee has not

made any effort whatsoever to demonstrate its inability to obtain necessary and relevant

information from the parties or other sources. In that case, the discovery ultimately granted to

the debtor -- basic identifying information and summary information regarding asbestos

claimants' occupational exposure to asbestos -- was far less intrusive than the discovery being

sought here. (<u>See</u> Mot., Ex. F, at 1 (Order dated Oct. 3, 2007 in <u>In re W.R. Grace & Co.</u>, No. 01-

1139 (Bankr. D. Del.) (Fitzgerald, J.).)[9]

45.     For example, excluded from the discovery granted to the debtor in that case,

among other items, were underlying medical records, economic loss reports, and any of the other

sensitive claimant information customarily maintained in DCPF's claims files. Nor did the court

require production of any information regarding the trusts' own internal evaluation or settlement

of asbestos claims. The limited trust-related discovery in that case was instead authorized only

after the requesting party had tried for over a year to gather sufficient data from the parties or

other sources -- including the asbestos claimants themselves. (<u>See</u> Mot., Ex. G. (Transcript of

Aug. 29, 2007 Oral Argument in <u>In re W.R. Grace & Co.</u>, No. 01-1139 (Bankr. D. Del.) at 93.)

None of those disclosures included the confidential claimant files or work product requested

here.

---

[9] The <u>W.R. Grace</u> court also ordered the debtor to pay all of the costs incurred in complying with
the order, together with "a reasonable fee for the use of the electronic data." (Mot., Ex. F at 2.) To the
extent that the Court decides to grant the relief sought by the Committee, the Objectors respectfully
request that the Committee be ordered to bear the full costs of responding to the Committee's proposed
subpoena. <u>See, e.g.</u>, Fed. R. Civ. P. 45(c), (d); <u>Cohen v. City of New York</u>, 255 F.R.D. 110, 123
(S.D.N.Y. 2008); <u>Guy Chem. Co., Inc. v. Romaco AG</u>, 243 F.R.D. 310, 313 (N.D. Ind. 2007); <u>Standard
Chlorine of Del., Inc. v. Sinibaldi</u>, 821 F. Supp. 232, 265-66 (D. Del. 1992).

46.    By contrast, the Committee began its efforts here with a broad and burdensome
request to non-parties.  Forcing each of six Section 524(g) trusts to review and produce more
than 7,400 claims files (and notify the claimants' representatives) under these circumstances
would be wholly inappropriate. (See Juris Decl. Ex. N at 39-40 (Transcript of December 7, 2006
Oral Argument in Link v. Ahlstrom Pumps, LLC, 06-M-10-061 (Del. Sup. Ct.) (White,
Comm'r)) (rejecting request by asbestos defendant to obtain plaintiffs' asbestos claim records
from non-party asbestos trust when the same claim records could be obtained directly from
plaintiff)); see also Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 577 (N.D. Cal. 2007)
(holding that "there is simply no reason to burden nonparties when the documents sought are in
the possession of the party defendant"); Mannington Mills, Inc. v. Armstrong World Indus., Inc.,
206 F.R.D. 525, 532 (D. Del. 2002) (quashing subpoena where similar information was
obtainable from parties).

## CONCLUSION

47.    For the reasons set forth above, as well as for the reasons set forth in the
accompanying Declarations of John L. Mekus and Stephen M. Juris, the Objectors respectfully
request that the Court deny the Committee's Motion.  Alternatively, the Objectors respectfully
request that the Court defer ruling on that Motion until after issue has been joined concerning the
parties' claims estimation disputes and all opportunities for discovery from the parties have been
fully exhausted.

- 22 -

Dated: August 2, 2010
       New York, New York

MORVILLO, ABRAMOWITZ, GRAND, IASON,
ANELLO & BOHRER, P.C.

By: _____ /s/ Stephen M. Juris _____

Stephen M. Juris
David C. Austin
565 Fifth Avenue
New York, NY 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)

*Attorneys for Armstrong World Industries, Inc.
Asbestos Personal Injury Settlement Trust, Celotex
Asbestos Settlement Trust, Babcock & Wilcox
Company Asbestos Personal Injury Settlement Trust,
Owens Corning/Fibreboard Asbestos Personal Injury
Trust, DII Industries, LLC Asbestos PI Trust, United
States Gypsum Asbestos Personal Injury Settlement
Trust, and Delaware Claims Processing Facility*