# EXHIBIT 1

09-50026-mg    Doc 6488-1    Filed 08/02/10    Entered 08/02/10 20:01:10    Exhibit 1
Pg 1 of 10

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-11233(REG)

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


CHEMTURA CORPORATION, et al.


            Debtors.


- - - - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            April 7, 2010

            9:50 AM


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1
2  HEARING re Debtors' Motion for Entry of an Order Authorizing
3  the Estimation of Diacetyl Claims, Establishing Estimation
4  Procedures, and Granting Certain Related Relief
5
6  HEARING re Objection of the Official Committee of Unsecured
7  Creditors of Chemtura Corporation, et al., to the Counsel for
8  Education and Research on Toxics' Claim Nos. 12051, 12053, and
9  12055
10
11 HEARING re Debtors' Eleventh Omnibus Tier I Objection to
12 Certain Proofs of Claim (Amended and Superseded Claims)
13
14 HEARING re Debtors' Fifteenth Omnibus Objection to Certain Tier
15 I Proofs of Claim (Amended and Superseded, Docketed in Error,
16 Duplicate, Equity Interests, Facially Defective, Paid in Full
17 and Partially Paid Claims)
18
19 HEARING re Debtors' Sixteenth Tier I Omnibus Objection to
20 Certain Proofs of Claim (Insufficient Information)
21
22 HEARING re Debtors' Seventeenth Tier I Omnibus Objection to
23 Certain Proofs of Claim (Insufficient Information)
24
25

```
                                                                          3
 1
 2     HEARING re Debtors' Eighteenth Tier I Omnibus Objection to
 3     Certain Proofs of Claim (Insufficient Information)
 4
 5     HEARING re Debtors' Nineteenth Tier I Omnibus Objection to
 6     Certain Proofs of Claim (Insufficient Information)
 7
 8     HEARING re Debtors' Twentieth Omnibus Tier I Objection to
 9     Certain Proofs of Claim (Wrong Debtor Claims)
10
11     HEARING re Motion for Extension of Time to File Late Proofs of
12     Claim
13
14
15
16
17
18
19
20
21
22
23
24
25     Transcribed by:  Lisa Bar-Leib
```

1  ongoing.

2  MR. LIESEMER: That's correct.

3  THE COURT: Okay. So this is your next point after
4  those two?

5  MR. LIESEMER: Yes, yes. I have another point.

6  THE COURT: All right. Go on.

7  MR. LIESEMER: The other -- we're still early in this
8  process. And I don't think the parties have fully formed what
9  their estimation case is going to be. The debtors are trying
10  to establish a streamline process and basically provide in the
11  CMO that the only individuals who can testify are experts. And
12  I think that really deprives the parties of putting on the kind
13  of case that they might need to. In other words, I think there
14  are certain circumstances --

15  THE COURT: I saw that contention in your brief and in
16  the reply to it but I was scratching my head in figuring out
17  why in the world I might want to hear from document custodians
18  --

19  MR. LIESEMER: Well, it's not --

20  THE COURT: -- and why in the world anybody could have
21  anything else that could be relevant to an estimation which is
22  a macroeconomic process which is intended to avoid the very
23  kinds of prolonged litigation that at least some of the people
24  in the room may have in mind.

25  MR. LIESEMER: Correct, Your Honor. We're not just

34

1   THE COURT:  I would think if you're going to be
2   analyzing 375 individual claims, it wouldn't be realistic.  But
3   I thought that's the exact opposite of what we're trying to do.
4   MR. LIESEMER:  Well, that's my understanding, Your
5   Honor.  But we received the limited objection of the equity
6   committee in which they say that they may "request discovery
7   relating to pulmonary function tests, imaging studies, other
8   clinical or lab tests, copies of medical records relating to
9   pulmonary issues, alternative causes of disease such as
10  smoking, information regarding date of birth, height and weight
11  of the claimant, product id information, dates of exposure,
12  results of environmental or personal exposure monitoring for
13  diacetyl and other organic vapors."  This is in footnote 2 of
14  their limited objection.
15  And, Your Honor, I don't think the schedule, as the
16  debtors have crafted it, is built to accommodate that kind of
17  thing.  After all, we're not -- this isn't about the allowance
18  of individual claims.
19  THE COURT:  I understand your point.
20  MR. LIESEMER:  And --
21  THE COURT:  You don't need to say anymore on that.
22  MR. LIESEMER:  Thank you, Your Honor.
23  (Pause)
24  MR. LIESEMER:  I have two more points, Your Honor.
25  Another one -- this has come out of the response and we're

38

1  litigation going on and that Your Honor's estimation decision
2  is not going to bind them in any way then we're really talking
3  about a proceeding that's not going to yield a reliable result
4  that's not going to be helpful for the debtor or to this Court
5  and could be prejudicial at the end of the day to my clients.
6        THE COURT:  Well, what do you think the guy in the
7  robe should do then?  I mean, do you think I should just
8  scuttle the entire estimation proceeding --
9        MR. LIESEMER:  No.
10       THE COURT:  -- because I am pretty firm in my view
11 that I can't screw insurers as part of this?  I mean, I -- this
12 estimation procedure, as I've understood it, has about four
13 purposes:  feasibility, voting, reserves and crafting a plan
14 which also includes getting our arms around whether claims are
15 low enough so there might be something for equity.  And unless
16 I'm going to put blinders over my eyes and forget about the
17 fact that the insurers have policies, whether or not they cover
18 anything, what do you think I should do --
19       MR. LIESEMER:  Your Honor, I think --
20       THE COURT:  -- other than throw up my arms in
21 frustration?
22       MR. LIESEMER:  I'm not asking the Court to throw up
23 its arms in frustration.  There certainly should be an
24 aggregate estimate of the liability.  My concern is that if we
25 go hard to try to estimate the insurance coverage, it's not

73

1  is on the protective order.  We certainly have no problem with

2  allowing Citrus's or Unger's bankruptcy counsel, as long is

3  it's okay with the claimants, we have no problem with them

4  seeing the settlement-related information so they can

5  participate in this process.  And I think that's easy to craft.

6          With that, Your Honor, I've tried to hit the issues.

7  If you have any other questions, otherwise we're finished.

8          THE COURT:  All right, just a minute, please.

9          MR. ZOTT:  Yes, sir.

10     (Pause)

11          THE COURT:  No, I have no further questions, Mr. Zott.

12          All right, we'll take a recess.  I want everybody back

13 here in ten minutes.  We're in recess.

14     (Recess from 12:08 p.m. until 12:22)

15          THE COURT:  All right.  Ladies and gentlemen, the

16 recommendations of the debtors vis-a-vis how we're going to

17 proceed with this estimation hearing as modified before today's

18 hearing and as further modified by matters that Mr. Zott said

19 he would agree to, are approved, subject to the refinements

20 that I'll articulate as part of the remarks that follow.

21          The following are the bases for the exercise of my

22 discretion in this regard:

23          I agree with the determination that two weeks, but no

24 more, than that should be added to the schedule.  Except to the

25 relatively minor extent to which implementing certain changes

74

1  that I'll prefer on briefing and expert reports would require
2  adjustments to that.  The whole idea of an estimation
3  proceeding is to avoid the prejudice to the stakeholders in a
4  case that would result but for the presence of the estimation
5  proceeding.
6        We defeat the purpose of that if we put too much slack
7  into the schedule or we approach the work that we need to do
8  into a leisurely fashion.  An extension of two weeks, but no
9  more than that, is necessary to achieve the objectives of an
10 estimation proceeding.  And should be sufficient to get done
11 what we need to do once we proceed on the assumption, which I
12 am articulating expressly, that we are talking about a
13 macroeconomic approach, and not looking at individual claims
14 and defense.  Either vis-a-vis claims by diacetyl claimants
15 against the estate, or to the extent relevant, which now
16 appears to be less relevant, as between the estate and any
17 insurers.
18       There will be no change in the schedule vis-a-vis
19 first wave expert reports.  As my questions to counsel
20 indicated, I have a different view of expert reports than some
21 in the courtroom may.  As far as I look at the matter they're a
22 value to help people prepare for live expert depositions and to
23 determine the extent to which they need to get their own expert
24 reports, or own experts to say the kinds of things they hope
25 their experts will say.  For that reason, I am less sure than

77

1  except only for -- if the equity committee can convince the

2  debtors' counsel that some of the extra stuff they wanted is

3  consistent with a macroeconomic approach.  And the equity

4  committee has convinced the debtors that there's a good reason

5  for it.  I won't say no.  But I want to underscore that I am

6  looking for the high altitude approach here.  I am not,

7  consistent with my earlier rulings, looking to decide the

8  individual entitlements of any particular injured party against

9  the estate.  And I have material doubts as to how any such

10 discovery would advance the ball within the context of the type

11 of proceeding that I envision.

12         The next matter and the one that is potentially most

13 debatable even though the creditors' committee articulate

14 fairly strong reasons for its position, is whether or not the

15 reserve will be a cap on the entitlements of individual

16 claimants down the road.  I'm not going to decide that issue

17 today.  I was persuaded by Mr. Zott's point that it's

18 premature.  Everybody will have a reservation of rights on that

19 issue.  And it's at least possible that I'm going to want to

20 get further briefing on it.  But I'm not going to decide that

21 today.

22         I understand where both sides are coming from with

23 respect to their respective positions, and my decision is

24 likely going to be based not on who's got the more sympathetic

25 positions, but what the case law tells me in way of how issues