# **EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, <u>et al.</u>, | : | **Jointly Administered** |
| | : | Misc. No. _____ |
| Debtors. | : | |
| | : | |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, <u>et al.</u>,[1] | : | **Jointly Administered** |
| | : | Case No. 01-2094 (JKF) |
| Debtors. | : | |
| | : | **Related to Dkt. No. 10810** |

ORDER CONFIRMING THE FIRST AMENDED JOINT
PLAN OF REORGANIZATION OF USG CORPORATION
AND ITS DEBTOR SUBSIDIARIES, AS MODIFIED

---

[1]    The Debtors are the following 11 entities:  USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

# TABLE OF CONTENTS

Page

I. GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS. ........................... 5

    A. MODIFICATIONS TO THE PLAN. ................................................. 5

    B. CONFIRMATION OF THE PLAN. ................................................. 5

    C. CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN. .................................................................................. 5

    D. EFFECTS OF CONFIRMATION. .................................................. 6

    E. APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS. .................................................... 6

II. CLAIMS BAR DATES AND OTHER CLAIMS MATTERS. ....................... 7

    A. GENERAL BAR DATE PROVISIONS FOR ADMINISTRATIVE CLAIMS. .................................................................................. 7

    B. BAR DATE FOR PROFESSIONAL FEE CLAIMS. ......................... 8

    C. BAR DATE FOR REJECTION DAMAGES CLAIMS. ...................... 9

    D. RESOLUTION OF POSTPETITION INTEREST DISPUTES. ............ 9

    E. REINSTATEMENT OF CERTAIN CONTINGENT CLAIMS. ......... 10

    F. ENFORCEMENT OF BAR DATE ORDER. .................................. 10

III. APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES. .................................... 11

IV. MATTERS RELATING TO IMPLEMENTATION OF THE PLAN. ........... 11

    A. ACTIONS IN FURTHERANCE OF THE PLAN. ........................... 11

    B. APPROVAL OF NEW INVESTOR DOCUMENTS AND RIGHTS OFFERING. ............................................................................ 13

    C. CREATION OF ASBESTOS PERSONAL INJURY TRUST. ............ 13

    D. TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PERSONAL INJURY TRUST. ............... 14

        1. Transfer of Books and Records to the Asbestos Personal Injury Trust. .................................................................................. 14

        2. Funding the Asbestos Personal Injury Trust. ........................... 14

        3. Transfer of the Asbestos Personal Injury Insurance Asset. ...... 15

        4. Assumption of Certain Liabilities by the Asbestos Personal Injury Trust. .................................................................................. 15

        5. Indemnification by the Asbestos Personal Injury Trust. ........... 16

# TABLE OF CONTENTS
(continued)

Page

E.    RELEASE OF LIENS........................................................................................ 16

F.    EXEMPTIONS FROM TAXATION. ................................................................. 16

V.    RELEASES AND EXCULPATION PROVISIONS........................................................ 17

VI.   OBJECTIONS TO CONFIRMATION............................................................................ 17

A.    RESOLUTION OF CERTAIN OBJECTIONS TO CONFIRMATION............ 17

B.    OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION............ 19

VII.  DISCHARGE AND INJUNCTIONS. ............................................................................ 19

A.    DISCHARGE OF CLAIMS. ............................................................................. 19

B.    INJUNCTIONS.................................................................................................. 19

      1.    Issuance of the Asbestos Permanent Channeling Injunction and the
            Asbestos Personal Injury Insurance Asset Entity Injunction................... 19

      2.    Protected Parties Under the Asbestos Permanent Channeling
            Injunction. ............................................................................................... 20

      3.    Asbestos Permanent Channeling Injunction. ........................................... 21

      4.    Asbestos Personal Injury Insurance Asset Entity Injunction.................... 23

      5.    General Injunctions Related to Discharge or Releases Granted
            Pursuant to the Plan. ............................................................................... 25

VIII. DISSOLUTION OF THE COMMITTEES AND DISCHARGE OF THE
      ASBESTOS PERSONAL INJURY FUTURES REPRESENTATIVE. ......................... 26

IX.   RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND
      THE DISTRICT........................................................................................................... 27

A.    RETENTION OF EXCLUSIVE JURISDICTION BY THE
      BANKRUPTCY COURT.................................................................................. 27

B.    EXCLUSIVE JURISDICTION OF THE DISTRICT COURT........................... 27

C.    JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY
      CLAIMS. .......................................................................................................... 28

X.    WAIVER OF THE STAY OF BANKRUPTCY RULE 3020(E). ................................. 28

XI.   NOTICE OF ENTRY OF CONFIRMATION ORDER. ................................................ 28

XII.  ORDERS OF THE BANKRUPTCY COURT AND THE DISTRICT COURT ............ 30

## TABLE OF EXHIBITS

| Exhibit | Exhibit Name |
|---------|--------------|
| A | Plan |
| B | Modifications |
| C | Confirmation Notice |
| D | Confirmation Notice — Publication Version |

## INTRODUCTION

WHEREAS, USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc., the above-captioned debtors (collectively, the "Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"), proposed the First Amended Joint Plan of Reorganization of USG Corporation and Its Debtor Subsidiaries, dated March 27, 2006, as modified by the modifications set forth in Exhibit B attached hereto and incorporated herein by reference (as it may be further modified, the "Plan");[2]

WHEREAS, the Bankruptcy Court, on April 7, 2006, entered its Order Approving (A) Disclosure Statement, (B) Notice of Disclosure Statement Hearing, (C) Contents of Plan Solicitation Packages, (D) Procedures for the Distribution of Solicitation Packages and the Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Plan of Reorganization and (E) Certain Related Relief (D.I. 10847) (the "Disclosure Statement Order"), by which the Bankruptcy Court, among other things, approved the Debtors' proposed disclosure statement (the "Disclosure Statement"), established procedures for the solicitation and tabulation of votes to accept or reject the Plan and scheduled a hearing to consider Confirmation of the Plan for June 15, 2006 at 9:00 a.m., to be continued on June 16, 2006 if necessary (the "Confirmation Hearing");

---

[2]    Capitalized terms and phrases used herein have the meanings given to them in the Plan. The rules of interpretation set forth in Section I.B.1 of the Plan apply to the Findings of Fact and Conclusions of Law (the "Findings and Conclusions"), which are being entered concurrently herewith, and to this Order (this "Confirmation Order"). In addition, in accordance with Section I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

A copy of the Plan (without the exhibits thereto) is attached hereto as Exhibit A and incorporated herein by reference.

WHEREAS, affidavits of service were executed by Kathleen M. Logan with respect to the mailing of notice of the Confirmation Hearing and solicitation materials in respect of the Plan in accordance with the Disclosure Statement Order (collectively, the "Affidavits of Service") and were filed with the Bankruptcy Court on May 31, 2006 (D.I. 11487), May 31, 2006 (D.I. 11488), May 31, 2006 (D.I. 11489); May 31, 2006 (D.I. 11490) and June 1, 2006 (D.I. 11523);

WHEREAS, the Affidavit of Katherine Kinsella Outlining Implementation of the Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Joint Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Joint Plan of Reorganization and (C) Related Matters (D.I. 11338) (the "Publication Affidavit") was filed with the Bankruptcy Court on May 16, 2006, regarding the publication of the Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Joint Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Joint Plan of Reorganization and (C) Related Matters and/or the other form of publication notice approved by the Bankruptcy Court in certain magazines and newspapers as set forth in the Disclosure Statement Order;

WHEREAS, Logan & Company, Inc., the Bankruptcy Court-appointed solicitation and tabulation agent in respect of the Plan, filed the Declaration of Kathleen M. Logan Certifying the Methodology for Tabulating Votes on, and the Results of Voting with Respect to, the First Amended Joint Plan of Reorganization of USG Corporation and Its Debtor Subsidiaries (D.I. 11650) (the "Voting Declaration") on June, 14, 2006, attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

**Class 7 Claimants.** The Debtors received 252,469 acceptances out of 253,136 votes from holders of Claims under Class 7 (Asbestos Personal Injury Claims), with Class 7

claimants who voted in favor of the Plan holding Claims in the amount of $3,002,987,928 for

voting purposes, such acceptances being 99.74 percent in number and 99.68 percent in amount of

all ballots received from holders of Class 7 Claims (Voting Declaration ¶¶ 18-19);

WHEREAS, objections to Confirmation of the Plan (collectively, the

"Objections") were filed by: the Nevada Department of Taxation (D.I. 11427); the New York

State Department of Taxation and Finance (not listed on docket); New Jersey Self-Insurers

Guaranty Association (D.I. 11447); Wilmington Trust Company (D.I. 11452); United States

Trustee (D.I. 11455); and Wells Fargo Bank, N.A. (D.I. 11456);

WHEREAS, the Debtors filed modifications to the Plan (D.I. 11602, which are set

forth in Exhibit B attached hereto (collectively, the "Modifications");

WHEREAS, the Debtors filed a memorandum of law in support of Confirmation

of the Plan and in response to certain of the Objections (D.I. 11603) (the "Memorandum of

Law);

WHEREAS, the declarations of Matthew R. Rosenberg (D.I. 11599), Richard H.

Fleming (D.I. 11600), Stanley L. Ferguson (D.I. 11601), Dean M. Trafelet (D.I. 11598) and

Mark A. Peterson (D.I. 11597) were submitted in support of the Plan (collectively,

the "Declarations");

WHEREAS the expert report of Mark A. Peterson, which was included as

Exhibit 2 to the Peterson Declaration, was submitted in support of the Plan (the "Peterson

Report") and was uncontradicted at the Confirmation Hearing;

WHEREAS, the Bankruptcy Court and the District Court have reviewed the Plan,

the Disclosure Statement, the Disclosure Statement Order, the Voting Declaration, the Affidavits

of Service, the Publication Affidavit, the Objections, the Memorandum of Law, the Declarations

and the other papers before the Bankruptcy Court and the District Court in connection with the Confirmation of the Plan;

WHEREAS, the Bankruptcy Court and the District Court, sitting jointly together for purposes of the Confirmation Hearing, (1) heard the statements of counsel and the testimony of Stanley L. Ferguson in support of Confirmation and (2) considered the Declarations submitted into evidence, all as reflected in the record made at the Confirmation Hearing;

WHEREAS, the Bankruptcy Court and the District Court have considered all evidence presented at the Confirmation Hearing;

WHEREAS, the Bankruptcy Court and the District Court have taken judicial notice of the papers and pleadings on file in these chapter 11 cases;

WHEREAS, the Bankruptcy Court has separately entered the Findings and Conclusions, including the findings that (i) the Bankruptcy Court and the District Court have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) the Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code and (iv) venue of the Reorganization Cases in the United States Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper; and

WHEREAS, the Findings and Conclusions establish just cause for the relief granted herein;

THE BANKRUPTCY COURT AND THE DISTRICT COURT HEREBY

ORDER THAT:

I.    **GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.**

    A.    **MODIFICATIONS TO THE PLAN.**

The Modifications to the Plan are approved in all respects.  Accordingly, the Debtors are authorized to make the Modifications to the Plan.

    B.    **CONFIRMATION OF THE PLAN.**

The Plan and each of its provisions (whether or not specifically approved herein) and all exhibits thereto are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code; *provided, however*, that if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of the Plan shall control.  The record of the Confirmation Hearing is closed.

    C.    **CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Nothing in this Confirmation Order or in the Findings and Conclusions shall in any way affect the provisions of Article VIII of the Plan, which includes provisions regarding (1) the conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan, (2) the waiver of any such conditions and (3) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Confirmation Order.  Upon the satisfaction or waiver of the conditions contained in Section VIII.B of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur.

D.    **EFFECTS OF CONFIRMATION.**

Subject to Section I.C of this Confirmation Order, notwithstanding any otherwise

applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan and

this Confirmation Order shall be binding upon all Entities, including the Debtors, the

Reorganized Debtors, any and all holders of Claims, Demands or Interests (irrespective of

whether such Claims or Interests are impaired under the Plan or whether the holders of such

Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any

and all nondebtor parties to Executory Contracts and Unexpired Leases with any of the Debtors

and any and all Entities who are parties to or are subject to the settlements, compromises,

releases, waivers, discharges and injunctions described herein and in the Findings and

Conclusions and the respective heirs, executors, administrators, trustees, affiliates, officers,

directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if

any, of any of the foregoing.

E.    **APPROVAL, MODIFICATION AND EXECUTION**
      **OF PLAN-RELATED DOCUMENTS.**

1.    The Plan and all exhibits thereto, substantially in the form as they exist at

the time of the entry of this Confirmation Order, including the documents relating to the

Asbestos Personal Injury Trust, are approved in all respects.

2.    All relevant parties, including the Debtors and the Asbestos Personal

Injury Trustees, shall be authorized, without further action by the Bankruptcy Court, to execute

the applicable Plan-Related Documents (as such capitalized term is defined in Section IV.A of

this Confirmation Order) and make modifications to such documents in accordance with the

Plan's terms, including Section XI.C of the Plan, and the terms of the Plan-Related Documents, if

applicable, between the time of entry of this Confirmation Order and the Effective Date of the Plan.

3.    The Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section XI.C of the Plan.  In addition, without the need for a further order or authorization of the Bankruptcy Court or further notice to any Entities, but subject to the express provisions of this Confirmation Order and Section XI.C of the Plan, the Debtors shall be authorized and empowered to make modifications to the documents Filed with the Bankruptcy Court, including exhibits to the Plan or documents forming part of the evidentiary record at the Confirmation Hearing, consistent with the terms of such documents in their reasonable business judgment as may be necessary.

## II.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    GENERAL BAR DATE PROVISIONS FOR ADMINISTRATIVE CLAIMS.

Except as otherwise provided in Section III.A.1.e.ii of the Plan and Sections II.B and II.C below, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.H of the Plan no later than 60 days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by 120 days after the Effective Date.

B.    **BAR DATE FOR PROFESSIONAL FEE CLAIMS.**

Professionals or other Entities asserting a Fee Claim for services rendered before
the Effective Date must File and serve on the Reorganized Debtors and such other Entities who
are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of
the Bankruptcy Court a Final Fee Application no later than the last business day of the month
following the month in which the Effective Date occurs; *provided, however,* that any
professional who may receive compensation or reimbursement of expenses pursuant to the
Ordinary Course Professionals Order may continue to receive such compensation and
reimbursement of expenses for services rendered before the Effective Date, without further
Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A
Professional may include any outstanding, non-Filed monthly or interim request for payment of a
Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee
Application must be Filed and served on the Reorganized Debtors and the requesting party no
later than 30 days after the deadline for Filing Final Fee Applications.  The fee auditor in these
Reorganization Cases (the "Fee Auditor") shall provide initial reports ("Initial Reports") to all
Final Fee Applications no later than 30 days after the deadline for Filing Final Fee Applications,
and any response to an Initial Report shall be provided within 30 days of the Filing of the
applicable Initial Report.  If a Professional or other Entity fails to respond timely to an Initial
Report, the Fee Auditor is authorized to File a final report ("Final Report") immediately with
respect to such Final Fee Application.  Regardless of whether a Professional provides a response
to an Initial Report, the Fee Auditor shall File all Final Reports regarding Final Fee Applications
no later than 90 days after the deadline for Filing Final Fee Applications.  Any replies to the Fee
Auditor's Final Report shall be Filed within seven days of the Filing of the applicable Final

Report. The December 18, 2006 omnibus hearing shall be the final hearing on all Final Fee

Applications. To the extent necessary, this Confirmation Order shall amend and supersede any

previously entered order of the Bankruptcy Court, including the Fee Order, regarding the

payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee

Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in

connection with the particular Professional's Final Fee Application.

### C.     BAR DATE FOR REJECTION DAMAGES CLAIMS.

Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of

an Executory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a

Claim by the other party or parties to such contract or lease, such Claim shall be forever barred

and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective

successors or their respective properties unless a proof of Claim is Filed and served on the

Reorganized Debtors at the addresses set forth in Section XI.H of the Plan, on the later to occur

of (1) 60 days after the Effective Date or (2) 30 days after the date of entry of an Order rejecting

such Executory Contract or Unexpired Lease.

### D.     RESOLUTION OF POSTPETITION INTEREST DISPUTES.

To the extent any holder of a Class 6 Claim believes that it is entitled to

Postpetition Interest at an interest rate other than the rate described in Section I.A.99.f.i of the

Plan, the holder of such Claim must timely File and serve on the Debtors at the addresses set

forth in Section XI.H of the Plan a Postpetition Interest Rate Determination Notice no later than

June 26, 2006. Any disputes relating to a Postpetition Interest Rate Determination Notice shall

be resolved in accordance with Section IV.P of the Plan.

### E.    REINSTATEMENT OF CERTAIN CONTINGENT CLAIMS.

1.    Timely Claims (other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims or Litigation Claims) (a) that remain contingent Claims as of the Effective Date (including, any liability or Claim for withdrawal liability under 29 U.S.C. §§ 1383 and/or 1385 of the Debtors or any third-party) and (b) that have not been objected to or disallowed under section 502(e)(1)(b) of the Bankruptcy Code or otherwise on or before the Claims Objection Bar Date shall be Reinstated and left unimpaired under the Plan.

2.    Such treatment as referenced in Section II.D.1 above includes any such Claim or liability of the Debtors or any third-party to Central States, Southeast and Southwest Area Pension Fund ("Central States"), a multi-employer plan as that term is defined by 29 U.S.C. § 1301(a)(3) (the "Central States Plan"), which Claim shall be left unimpaired, shall not be discharged and shall continue unaltered as if the Reorganization Cases had not been commenced. No third-party shall be released from any liability or Claim that Central States may have against that third-party as a result of the Debtors' participation in the Central States Plan.

### F.    ENFORCEMENT OF BAR DATE ORDER.

In accordance with the Bar Date Order and section 502(b)(9) of the Bankruptcy Code, any Entity that failed to File a proof of Claim by the applicable Bar Date or was not otherwise permitted to File a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim against the Debtors (1) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent and liquidated; or (2) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity. All Claims Filed after the applicable Bar Date and for which no Final Order has been entered by

the Bankruptcy Court determining that such Claims were timely Filed shall be disallowed and

expunged. Any Distribution on account of such Claims shall be limited to the amount, if any,

listed in the applicable Schedules as undisputed, noncontingent and liquidated.

## III.    APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

A.    The Executory Contract and Unexpired Lease provisions of Article V of

the Plan are specifically approved.

B.    This Confirmation Order shall constitute an order of the Bankruptcy Court

approving the assumptions, assumptions and assignments and rejections described in

Sections V.A and V.C of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the

Effective Date.

## IV.    MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A.    ACTIONS IN FURTHERANCE OF THE PLAN.

1.    Pursuant to section 1142 of the Bankruptcy Code, section 303 of the

Delaware General Corporation Law and any comparable provisions of the business corporation

law of any other state (collectively, the "Reorganization Effectuation Statutes"), without further

action by the Bankruptcy Court or the stockholders, members, managers or board of directors of

any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors, as well as the

Chairman of the Board, Chief Executive Officer, President, Executive Vice President, Chief

Financial Officer, Chief Operating Officer, Executive Vice President, Senior Vice President or

any Vice President (collectively, the "Responsible Officers") of the appropriate Debtor or

Reorganized Debtor, are authorized to:  (a) take any and all actions necessary or appropriate to

implement, effectuate and consummate the Plan, this Confirmation Order or the transactions

contemplated thereby or hereby, including those transactions identified in Article IV of the Plan;

and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan (collectively, the "Plan-Related Documents"), including those contracts, instruments, releases, agreements and documents identified in Article IV of the Plan.

2.      To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor or Reorganized Debtor.

3.      The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby.  In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted in this Confirmation Order, each of the Debtors and the Reorganized Debtors is authorized and empowered, without further action in the Bankruptcy Court or its directors, managers, trustees, members or stockholders, to take any and all such actions as any of its Responsible Officers may determine are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby.

**B.    APPROVAL OF NEW INVESTOR DOCUMENTS AND RIGHTS OFFERING.**

1.    The New Investor Documents are ratified and approved in all respects.

2.    As of the Confirmation Date, the Debtors may enter into and effectuate any Rights Offering Documents, if applicable, perform under the New Investor Documents and take any actions appropriate or necessary to consummate the Rights Offering.

**C.    CREATION OF ASBESTOS PERSONAL INJURY TRUST.**

1.    On the Effective Date, the Asbestos Personal Injury Trust shall be created in accordance with the Plan and the Asbestos Personal Injury Trust Agreement. The Asbestos Personal Injury Trust and the Asbestos Personal Injury Trustees are authorized and empowered to receive the property to be transferred to the Asbestos Personal Injury Trust pursuant to Section IV.G of the Plan.

2.    Pursuant to the Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal Entities and section 1142(b) of the Bankruptcy Code, without further action by the Bankruptcy Court or the directors, managers, trustees, partners, members or stockholders of any Reorganized Debtor, the Reorganized Debtors are authorized and directed to execute, deliver and perform their obligations under the Asbestos Personal Injury Trust Agreement and to execute, deliver, file and record all such other contracts, instruments, agreements or documents and take all such other actions as any of the Responsible Officers of the Reorganized Debtors may determine are necessary, appropriate or desirable in connection therewith. The Asbestos Personal Injury Trust Agreement, as in effect on the Effective Date, shall be substantially in the form of Exhibit I.A.18 to the Plan. The Asbestos Personal Injury Trust Distribution Procedures shall be substantially in the form of Exhibit I.A.19; *provided, however*, that any holder of an Asbestos Personal Injury

Claim in Class 7 submitting a ballot to accept or reject the Plan after June 2, 2006 but on or

before June 13, 2006 shall not be disqualified from being considered a "PI Trust Voting Claim"

for purposes of the Asbestos Personal Injury Trust Distribution Procedures on account of such

holder's submission of a ballot after the June 2, 2006 voting deadline.

D.   **TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PERSONAL INJURY TRUST.**

    1.   **Transfer of Books and Records to the Asbestos Personal Injury Trust.**

        a.   As described in Section IV.G.1 of the Plan, on the Effective Date

or as soon thereafter as is reasonably practicable, on the terms of the Cooperation

Agreement and in accordance with written instructions provided to the Reorganized

Debtors by the Asbestos Personal Injury Trust, the Reorganized Debtors shall transfer

and assign, or cause to be transferred and assigned, to the Asbestos Personal Injury Trust

copies of those books and records agreed upon by the parties that pertain directly to

Asbestos Personal Injury Claims that have been asserted against any Debtor.

        b.   In furtherance of Section IV.G.1 of the Plan, the Cooperation

Agreement, in substantially the form of Exhibit IV.G.1 to the Plan, is approved and the

Reorganized Debtors are authorized to enter into and perform under such agreement.

        c.   Pursuant to the Plan and this Confirmation Order, to the extent the

Debtors or Reorganized Debtors provide any privileged books and records under

Section IV.G.1 of the Plan, such transfer shall not result in the destruction or waiver of

any applicable privileges pertaining to such books and records.

    2.   **Funding the Asbestos Personal Injury Trust.**

The Reorganized Debtors shall fund the Asbestos Personal Injury Trust in

accordance with Section IV.G.2 of the Plan.

3.    **Transfer of the Asbestos Personal Injury Insurance Asset.**

On the Effective Date, the Reorganized Debtors shall transfer to the Asbestos

Personal Injury Trust the Asbestos Personal Injury Insurance Asset.

4.    **Assumption of Certain Liabilities by the Asbestos Personal Injury Trust.**

On the Effective Date, upon creation of the Asbestos Personal Injury Trust, the

Asbestos Personal Injury Trust, in consideration for the property transferred to the Asbestos

Personal Injury Trust pursuant to Sections IV.G.2 and IV.G.3 of the Plan and in furtherance of

the purposes of the Asbestos Personal Injury Trust and the Plan, shall, automatically and without

further act or deed, assume all Liabilities and responsibility for all Asbestos Personal Injury

Claims, and the Reorganized Debtors shall have no further financial or other responsibility or

liability therefor.  The Asbestos Personal Injury Trust also shall, automatically and without

further act or deed, assume all liability for premiums, deductibles, retrospective premium

adjustments, security or collateral arrangements, or any other charges, costs, fees or expenses (if

any) that become due to any insurer in connection with the Asbestos Personal Injury Insurance

Asset as a result of Asbestos Personal Injury Claims against Entities insured under policies

included in the Asbestos Personal Injury Insurance Asset by reason of vendor's endorsements, or

under the indemnity provisions of settlement agreements that any Debtor made with various

insurers prior to the Petition Date to the extent that those indemnity provisions relate to Asbestos

Personal Injury Claims, and the Reorganized Debtors shall have no further financial or other

responsibility or liability for any of the foregoing.  Except as otherwise provided in the Plan, the

Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution

Procedures, the Asbestos Personal Injury Trust shall have all defenses, cross-claims, offsets and

recoupments, as well as rights of indemnification, contribution, subrogation and similar rights,

CHI-1538405v3

- 15 -

regarding such Asbestos Personal Injury Claims that the Debtors or the Reorganized Debtors

have or would have had under applicable law.

   5.    **Indemnification by the Asbestos Personal Injury Trust.**

   The Asbestos Personal Injury Trust shall protect, defend, indemnify and hold

harmless, to the fullest extent permitted by applicable law, each Protected Party from and against

any Asbestos Personal Injury Claim and any related damages.

   E.    **RELEASE OF LIENS.**

   Except as otherwise provided in the Plan (including with respect to those

Industrial Revenue Bonds that are Reinstated pursuant to Section III.B.5 of the Plan) or in any

contract, instrument, release or other agreement or document entered into or delivered in

connection with the Plan, on the Effective Date and concurrently with the applicable

Distributions made pursuant to Article III of the Plan, all mortgages, deeds of trust, liens or other

security interests against the property of any Estate shall be fully released and discharged, and all

of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other

security interests, including any rights to any collateral thereunder, shall revert to the applicable

Reorganized Debtor and its successors and assigns and the former holder thereof will, upon

request of any Debtor, execute such documents evidencing such release and discharge as such

Debtor may reasonably request.

   F.    **EXEMPTIONS FROM TAXATION.**

   Pursuant to section 1146(a) (formerly 1146(c)) of the Bankruptcy Code, (1) the

following shall not be subject to any stamp tax or similar tax:  (a) the issuance, transfer or

exchange of the Additional Common Stock, the Note or the Contingent Payment Note; (b) the

creation of any mortgage, deed of trust, lien or other security interest; (c) the making or

assignment of any lease or sublease; (d) any Restructuring Transaction; or (e) the making or

delivery of any deed or other instrument of transfer under, in furtherance of or in connection with

the Plan, including any merger agreements, agreements of consolidation, restructuring,

disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection

with any Restructuring Transaction pursuant to the Plan; and (2) the appropriate state or local

governmental officials or agents are hereby directed to forego the collection of any such tax and

to accept for filing and recordation any of the foregoing instruments or other documents without

the payment of any such tax.

## V.    RELEASES AND EXCULPATION PROVISIONS.

The Plan release, exculpation and injunction provisions as set forth in, among

others, Sections IV.H.3 and XI.B of the Plan are approved in all respects, are incorporated herein

in their entirety, are so ordered and shall be immediately effective on the Effective Date of the

Plan without further action by the Bankruptcy Court, any of the parties to such releases or any

other party.

## VI.    OBJECTIONS TO CONFIRMATION.

### A.    RESOLUTION OF CERTAIN OBJECTIONS TO CONFIRMATION.

Certain of the Objections to Confirmation, whether informal or filed, to the extent

not satisfied by the Plan Modifications or by a separate agreement, are hereby resolved on the

terms and subject to the conditions set forth below.  The compromises and settlements

contemplated by each resolution to an Objection are fair, equitable and reasonable, are in the best

interests of the Debtors and their respective Estates and creditors and are expressly approved

pursuant to Bankruptcy Rule 9019.

1.    <u>Informal Objections of Safeco Insurance Company of America.</u>  Nothing

in the Plan or this Confirmation Order shall alter the rights of Safeco Insurance Company of

America ("Safeco") under the Collateral Pledge Agreement (the "CPA") executed by USG on

January 24, 2001 and the letter of credit issued in connection therewith, and the issuer of the

letter of credit referenced in that agreement shall not be discharged from its obligations under

such letter of credit.  Moreover, to the extent that any such letter of credit issued for the benefit

of Safeco is drawn in full, any remaining Claim of Safeco for attorneys' fees that relate to the

"Bond(s)" referenced in the CPA or which are otherwise payable under the CPA will be satisfied

by the Reorganized Debtors in the ordinary course of business.

2.    <u>Informal Objections of the IRS.</u>  The Plan shall not be deemed to

extinguish, waive or otherwise prejudice the rights of the IRS under section 553 of the

Bankruptcy Code in respect of prepetition indebtedness owed by the IRS to the Debtors.  With

respect to any Priority Tax Claim of the IRS, Postpetition Interest will be paid up through the

date of payment.

3.    <u>Filed Objection of the Nevada Department of Taxation.</u>  The Nevada

Department of Taxation's two proofs of claim — (a) proof of claim number 1213, consisting of a

Priority Tax Claim in the amount of $1,474.89 and a General Unsecured Claim in the amount of

$50.00, and (b) proof of claim number 1345, consisting of a Priority Tax Claim in the amount of

$7,551.63 — shall be Allowed Claims and shall be paid, in accordance with Plan, with

applicable Postpetition Interest.

4.    <u>Agreement with Federal Insurance Company.</u>  Subject to the satisfaction

of Federal Insurance Company's obligations under the Settlement Agreement and Mutual

Release with Federal Insurance Company (the "Federal Settlement") and the entry of an order

approving the Federal Settlement, the Federal Parties (as defined in the Federal Settlement) shall

be "Settling Insurers" and "Protected Parties" under the Plan and entitled to receive the benefits

and protections of the Asbestos Permanent Channeling Injunction.

     **B.**     **OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION.**

     All Objections not otherwise addressed herein or previously withdrawn are hereby

overruled for the reasons set forth on the record at the Confirmation Hearing and in Section II.G

of the Findings and Conclusions.

**VII.**     **DISCHARGE AND INJUNCTIONS.**

     **A.**     **DISCHARGE OF CLAIMS.**

     1.     The Plan discharge provisions as set forth in Section IX.A of the Plan are

approved in all respects, are incorporated herein in their entirety, are so ordered and shall be

immediately effective on the Effective Date of the Plan without further action by the Bankruptcy

Court or any other party.

     2.     Except as specifically set forth in Section IX.A of the Plan, as of the

Effective Date, pursuant to sections 524 and 1141 of the Bankruptcy Code, the Reorganized

Debtors shall be discharged of all Claims and other debts and Liabilities, in accordance with

Section IX.A of the Plan.

     **B.**     **INJUNCTIONS.**

     **1.**     **Issuance of the Asbestos Permanent Channeling Injunction and the
Asbestos Personal Injury Insurance Asset Entity Injunction.**

     In connection with the creation of the Asbestos Personal Injury Trust, the

Asbestos Permanent Channeling Injunction shall be, and hereby is, issued as of the Effective

Date, pursuant to section 524(g) of the Bankruptcy Code.  In connection with the creation of the

Asbestos Personal Injury Trust and to supplement the injunctive relief of a discharge under

section 524 of the Bankruptcy Code, the Asbestos Personal Injury Insurance Asset Entity

Injunction shall be, and hereby is, issued as of the Effective Date, pursuant to section 105(a) of

the Bankruptcy Code.

> **2.      Protected Parties Under the Asbestos Permanent Channeling Injunction.**

In connection with the Asbestos Permanent Channeling Injunction set forth

below, "Protected Party" means any of the following parties:

> a.      any Debtor, Reorganized Debtor or any Affiliate of the foregoing;

> b.      any former or present director, officer or employee of any Debtor,

Reorganized Debtor or any Affiliate of the foregoing but only in their capacity as such;

> c.      any stockholder of any Debtor but only in their capacity as such;

> d.      any Entity that, pursuant to the Plan or on or after the Effective

Date, becomes a direct or indirect transferee of, or successor to, any assets of any Debtor,

Reorganized Debtor or the Asbestos Personal Injury Trust (but only to the extent that

liability is asserted to exist by reason of it becoming such a transferee or successor);

> e.      any Entity that, pursuant to the Plan or on or after the Effective

Date, makes a loan to any Debtor, Reorganized Debtor or the Asbestos Personal Injury

Trust or to a successor to, or transferee of, any assets of any Debtor, Reorganized Debtor

or the Asbestos Personal Injury Trust (but only to the extent that liability is asserted to

exist by reason of such Entity becoming such a lender or to the extent any pledge of

assets made in connection with such a loan is sought to be upset or impaired);

> f.      any Entity to the extent such Entity is alleged to be directly or

indirectly liable for the conduct of, Claims against or Demands on any Debtor,

Reorganized Debtor or the Asbestos Personal Injury Trust to the extent that such alleged

liability arises by reason of one or more of the following:

(i)    such Entity's ownership of a financial interest in any Debtor, Reorganized Debtor, a Past Affiliate, a present Affiliate of any Debtor or Reorganized Debtor, or Predecessor in Interest;

(ii)    such Entity's involvement in the management of any Debtor, any Reorganized Debtor or any Predecessor in Interest;

(iii)    such Entity's service as an officer, director or employee of any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, any Predecessor in Interest or any Entity that owns or at any time has owned a financial interest in any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, or any Predecessor in Interest; or

(iv)    such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, any Reorganized Debtor or any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, any Predecessor in Interest or any Entity that owns or at any time has owned a financial interest in any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, or any Predecessor in Interest, including (A) involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction or (B) acquiring or selling a financial interest in any Entity as part of such transaction; or

g.    any Settling Insurer.

3.    **Asbestos Permanent Channeling Injunction.**

Pursuant to section 524(g) of the Bankruptcy Code, all Entities shall be

permanently and forever stayed, restrained and enjoined from taking any actions against any

Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving

payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be

channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos

Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution

Procedures, including:

a.     commencing, conducting or continuing in any manner, directly or

indirectly, any suit, action or other proceeding (including a judicial, arbitral,

administrative or other proceeding) in any forum against any Protected Party or any

property or interests in property of any Protected Party;

b.     enforcing, levying, attaching (including any prejudgment

attachment), collecting or otherwise recovering by any means or in any manner, whether

directly or indirectly, any judgment, award, decree or other order against any Protected

Party or any property or interests in property of any Protected Party;

c.     creating, perfecting or otherwise enforcing in any manner, directly

or indirectly, any Encumbrance against any Protected Party or any property or interests in

property of any Protected Party;

d.     setting off, seeking reimbursement of, contribution from or

subrogation against, or otherwise recouping in any manner, directly or indirectly, any

amount against any liability owed to any Protected Party or any property or interests in

property of any Protected Party; and

e.     proceeding in any manner in any place with regard to any matter

that is subject to resolution pursuant to the Asbestos Personal Injury Trust, except in

conformity and compliance therewith.

4.    **Asbestos Personal Injury Insurance Asset Entity Injunction.**

a.        Subject to the provisions of Section IX.B.3.a of the Plan, all

Entities (not including the Asbestos Personal Injury Trust or the Reorganized Debtors)

that have held or asserted, that hold or assert or that may in the future hold or assert any

Claim, Demand or cause of action (including any Asbestos Personal Injury Claim

assumed by the Asbestos Personal Injury Trust) against any Asbestos Personal Injury

Insurance Asset Entity based upon, relating to, arising out of or in any way connected

with any Asbestos Personal Injury Claim or Asbestos Personal Injury Insurance Asset

whenever and wherever arisen or asserted (including all Claims in the nature of or

sounding in tort, or under contract, warranty or any other theory of law, equity or

admiralty) shall be stayed, restrained and enjoined from taking any action for the purpose

of directly or indirectly collecting, recovering or receiving payments, satisfaction or

recovery with respect to any such Claim, Demand or cause of action, including:

(i)        commencing, conducting or continuing, in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including a judicial, arbitration, administrative or other proceeding) in any forum with respect to any such Claim, Demand, or cause of action against any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action;

(ii)       enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action;

(iii)    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Personal Injury Insurance Asset Entity, or the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action; and

(iv)    setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any obligation of any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand and or cause of action.

b.    Notwithstanding anything to the contrary above, the Asbestos Personal Injury Insurance Entity Injunction shall not enjoin:

(i)    the rights of Entities to the treatment accorded them under Articles II and III of the Plan, as applicable, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Asbestos Personal Injury Trust, in accordance with the Asbestos Personal Injury Trust Distribution Procedures and the terms of the Plan;

(ii)    the rights of Entities to assert any Claim, debt, obligation or liability for payment of Asbestos Personal Injury Trust-related expenses against the Asbestos Personal Injury Trust;

(iii)    the rights of the Asbestos Personal Injury Trust and the Reorganized Debtors, as applicable, to prosecute any action based on or arising from Asbestos Personal Injury Insurance Asset;

(iv)    the rights of the Asbestos Personal Injury Trust to assert any claim, debt, obligation or liability for payment against an Asbestos Personal Injury Insurance Asset Entity based on or arising from the Asbestos Personal Injury Insurance Asset; and

(v)    the rights of Entities to assert any claim, debt, right, obligation or liability that (A) arises or relates to any insurance policy or any portion of any insurance policy that

is not an Asbestos Personal Injury Insurance Asset and
(B) is not subject to the Asbestos Permanent Channeling
Injunction.

5.      **General Injunctions Related to Discharge or
Releases Granted Pursuant to the Plan.**

a.      In addition to the Asbestos Permanent Injunction and Asbestos

Personal Injury Insurance Asset Entity Injunction set forth above, except as provided in

the Plan or this Confirmation Order, as of the Effective Date, all Entities that have held,

currently hold or may hold a Claim or other debt or liability that is discharged pursuant to

the terms of the Plan shall be permanently enjoined from taking any of the following

actions on account of any such discharged Claims, debts or liabilities:  (i) commencing or

continuing in any manner any action or other proceeding against the Debtors, the

Reorganized Debtors or their respective property, other than to enforce any right pursuant

to the Plan to a Distribution; (ii) enforcing, attaching, collecting or recovering in any

manner any judgment, award, decree or order against the Debtors, the Reorganized

Debtors or their respective property, other than as permitted pursuant to (i) above;

(iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, the

Reorganized Debtors or their respective property; (iv) asserting a setoff, right of

subrogation or recoupment of any kind against any debt, liability or obligation due to the

Debtors or the Reorganized Debtors; and (v) commencing or continuing any action, in

any manner, in any place that does not comply with or is inconsistent with the provisions

of the Plan.

b.      In addition to the Asbestos Permanent Injunction and Asbestos

Personal Injury Insurance Asset Entity Injunction set forth above, except as provided in

the Plan or this Confirmation Order, as of the Effective Date, all Entities that have held,

currently hold or may hold any Claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action or liabilities that are released pursuant to the Plan shall be

permanently enjoined from taking any of the following actions against any released

Entity or its property on account of such released claims, obligations, suits, judgments,

damages, demands, debts, rights, causes of action or liabilities: (i) commencing or

continuing in any manner any action or other proceeding; (ii) enforcing, attaching,

collecting or recovering in any manner any judgment, award, decree or order;

(iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff,

right of subrogation or recoupment of any kind against any debt, liability or obligation

due to any released Entity; and (v) commencing or continuing any action, in any manner,

in any place that does not comply with or is inconsistent with the provisions of the Plan.

## VIII.   DISSOLUTION OF THE COMMITTEES AND DISCHARGE OF THE ASBESTOS PERSONAL INJURY FUTURES REPRESENTATIVE.

In accordance with Section XI.A of the Plan, on the Effective Date, each of the

Creditors' Committee, Asbestos Personal Injury Committee, Asbestos Property Damage

Committee and Equity Committee shall dissolve and the members of such committees shall be

released and discharged from all duties and obligations arising from or related to the

Reorganization Cases. Similarly, on the Effective Date, the Asbestos Personal Injury Futures

Representative shall be deemed released and discharged from all duties and obligations from or

related to the Reorganization Cases; *provided, however*, that the Asbestos Personal Injury

Futures Representative may continue to serve or have obligations under the Asbestos Personal

Injury Trust Agreement and be paid solely from the Asbestos Personal Injury Trust. As of the

Effective Date, the Reorganized Debtors' obligations to indemnify or provide liability insurance

for the Asbestos Personal Injury Futures Representative shall terminate. The Professionals

retained by such committees and the members thereof or by the Asbestos Personal Injury Futures

Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses

incurred after the Effective Date, except for services rendered and expenses incurred in

connection with any applications for allowance of compensation and reimbursement of expenses

pending on the Effective Date or Filed and served after the Effective Date pursuant to

Section III.A.1.e.ii.A of the Plan and in connection with any appeal of the Confirmation Order.

## IX.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND THE DISTRICT.

### A.    RETENTION OF EXCLUSIVE JURISDICTION BY THE BANKRUPTCY COURT.

Notwithstanding the entry of this Confirmation Order and the occurrence of the

Effective Date, pursuant to Section X.A of the Plan and subject to Section X.B of the Plan, the

Bankruptcy Court shall retain such exclusive jurisdiction over the Reorganization Cases and any

matter related to the Reorganization Cases after the Effective Date as is legally permissible,

including exclusive jurisdiction over the matters described in Sections X.A.1 through X.A.13 of

the Plan.  To the extent that it is not legally permissible for the Bankruptcy Court to have

exclusive jurisdiction over any of the matters described in Section X.A of the Plan, the

Bankruptcy Court shall have nonexclusive jurisdiction over such matters to the extent legally

permissible.

### B.    EXCLUSIVE JURISDICTION OF THE DISTRICT COURT.

Notwithstanding the entry of this Confirmation Order, the occurrence of the

Effective Date and anything to the contrary in Section X.A of the Plan, the District Court shall

retain exclusive jurisdiction over matters relating to section 524(g) of the Bankruptcy Code and

the Asbestos Permanent Channeling Injunction, including exclusive jurisdiction to determine

matters that may be set forth in the Asbestos Permanent Channeling Injunction, or that may arise

in connection with the Asbestos Permanent Channeling Injunction.

### C.    JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY CLAIMS.

Notwithstanding anything in this Section IX or Article X of the Plan to the

contrary, the resolution of Asbestos Personal Injury Claims and the forum in which such

resolution shall be determined shall be governed by and in accordance with the Asbestos

Personal Injury Trust Distribution Procedures and the Asbestos Personal Injury Trust Agreement.

### X.    WAIVER OF THE STAY OF BANKRUPTCY RULE 3020(e).

Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order shall not be stayed

and shall be immediately effective upon entry on the docket of the Bankruptcy Court and the

District Court.

### XI.    NOTICE OF ENTRY OF CONFIRMATION ORDER.

A.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors or the

Reorganized Debtors are directed to serve, within 10 days after the occurrence of the Effective

Date, a notice of the entry of this Confirmation Order, which shall include notice of the bar dates

established by the Plan and this Confirmation Order and notice of the Effective Date,

substantially in the form of Exhibit C attached hereto and incorporated herein by reference

(the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing;

*provided, however*, that, with respect to Asbestos Personal Injury Claims, the Reorganized

Debtors shall be obligated to serve the Confirmation Notice only to counsel to holders of

Asbestos Personal Injury Claims, to the extent that the holders of such claims are represented by

known counsel, unless such counsel requests otherwise in writing within 10 days of service of

the Confirmation Notice.

B.    As soon as practicable after the entry of this Confirmation Order, the

Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on

the Debtors' website.

C.    No later than 20 Business Days after the Effective Date, the Debtors are

directed to publish the version of the Confirmation Notice attached hereto as Exhibit D once in

the national editions of *The Wall Street Journal*, *The New York Times* and *USA Today* and once

in the national edition of a Canadian newspaper (either *The Globe & Mail* or *National Post*).

The Debtors are authorized to pay all fees associated with the publication program described in

this paragraph to Kinsella/Novak Communications, Ltd., which will coordinate publication of the

Confirmation Notice for the Debtors.

## XII.    ORDERS OF THE BANKRUPTCY COURT AND THE DISTRICT COURT

The Plan is hereby confirmed in its entirety pursuant to section 1129 of the

Bankruptcy Code, and the Asbestos Permanent Channeling Injunction is hereby issued pursuant

to section 524(g) of the Bankruptcy Code.  To the extent necessary, the District Court withdraws

the reference for purposes of entering this Confirmation Order.

> THIS ORDER IS HEREBY DECLARED TO BE IN
> RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY
> RECORDING OFFICER FOR FILING AND RECORDING
> PURPOSES WITHOUT FURTHER OR ADDITIONAL
> ORDERS, CERTIFICATIONS OR OTHER SUPPORTING
> DOCUMENTS.

**Dated: 6/15/2006**

Dated: 16:45:19 _____, 2006

_Judith K. Fitzgerald_
UNITED STATES BANKRUPTCY JUDGE

Dated: [June 15], 2006

/s/ Joy Flowers Conti    Digitally signed by /s/ Joy Flowers Conti
DN: CN = /s/ Joy Flowers Conti, C = US
Date: 2006.06.15 16:55:49 -04'00'

UNITED STATES DISTRICT JUDGE