# EXHIBIT I

ATTACHMENT A

## OWENS CORNING/FIBREBOARD

## ASBESTOS PERSONAL INJURY TRUST

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

DOC# 259379

# OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Pursuant to Section 5.10 of the Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures (the "TDP"), the Owens Corning/Fibreboard Asbestos Personal Injury Trust (the "PI Trust") hereby establishes the following alternative dispute resolution ("ADR") procedures. All capitalized terms herein shall be as defined and/or referenced within the TDP.

## I.    OVERVIEW

The PI Trust shall appoint a Private Adjudication Center, at the cost of the PI Trust, to administer the ADR proceedings. To initiate these procedures, the claimant must make a written request to the PI Trust. Within twenty (20) days of a claimant's request for ADR, the PI Trust will send the claimant an ADR packet containing the documents necessary to pursue the ADR process. The ADR procedures shall not be construed as imparting to any claimant any substantive or procedural rights beyond those conferred by the TDP.

The ADR process available to the claimant includes both non-binding and binding elements. In addition, there are mandatory as well as voluntary options that can/will be utilized by the claimant and the PI Trust in proceeding toward settlement. As a general matter, the ADR procedures must be pursued by claimants on an individual basis. As a general matter, claims of different claimants cannot be grouped together even if the claimants are represented by the same counsel, unless the PI Trust, in its sole discretion, decides it would be expeditious to conduct ADR proceedings with respect to more than one claim involving differently exposed claimants with those claimants' representative. In such a case, however, the arbitrator, mediator or other neutral party must individually value each such claim using the valuation factors set forth in Section 5.3(b)(2) of the TDP, and the claimants' positions in the PI Trust's FIFO Processing and Payment Queues must be separately maintained. The requisite steps in the process are as follows, in order:

### Mandatory ADR Proceedings (Two Stages)

**Stage One (Claimant Must Select One):**

1.    Pro Bono Evaluation
2.    Mediation

**Stage Two: Arbitration (Binding or Non-Binding)**

**Initiation of ADR**
Within twenty (20) days of a claimant's request for ADR, the PI Trust will send the claimant an ADR packet containing a copy of these procedures and the following:

1.    A Summary Outline of the ADR procedures with the time limits identified;
2.    Form Affidavit of Completeness;
3.    Election Form for Pro Bono Evaluation;
4.    Request for Mediation Form;
5.    Election Form and Agreement to submit to Binding Arbitration; and
6.    Election Form and Agreement to submit to Non-binding Arbitration.

A claimant who wishes to proceed through the ADR process must engage in one of the two ADR options (pro bono evaluation or mediation) before any form of arbitration. Only after either party rejects a non-binding arbitration award, may a claimant proceed to then commence a lawsuit in the tort system. It is the claimant's responsibility to comply with the ADR time deadlines. Although the deadlines may be extended by agreement or for cause shown, failure to comply with a deadline without obtaining an extension may result in withdrawal of the claim. Promptly after a claimant fails to comply with a specified deadline without obtaining an extension, the PI Trust shall send the claimant written notice of the failure to comply. If the claimant does not take any action on the claim, then thirty (30) days thereafter the claim will be deemed withdrawn under Section 6.3 of the TDP.

If the claimant requests arbitration, either binding or non-binding, then the PI Trust shall execute the appropriate election form and agreement. If the claimant requests binding arbitration, then the claimant and the PI Trust waive their respective rights to seek a jury trial as set forth in the TDP upon execution of the Agreement for Binding Arbitration.

If either party rejects a non-binding arbitration award, and the claimant has otherwise complied with the requirements of these ADR/Arbitration procedures and the Plan, then the claimant may commence a lawsuit against the PI Trust in the Claimant's Jurisdiction as that term is defined in Section 5.3(b)(2) of the TDP.

## II.    ADR PROCEEDINGS SUMMARY

### A.    Showing Required

As set forth in the TDP, in order to establish a valid PI Trust Claim, a claimant must among other things make a demonstration of exposure to OC and/or Fibreboard asbestos-containing products.

### B.    Pro Bono Evaluation

This ADR alternative consists of an evaluation of the claim by an evaluator selected from a pro bono panel. The panel shall be comprised of asbestos litigation attorneys as mutually agreed upon between the PI Trust Advisory Committee (the "TAC") and the PI Trustees. The TAC will be provided, on a quarterly basis, with a list of the pro bono panelists. Each evaluation will have a pro bono evaluator randomly selected by the Private Adjudication Center from the

- 2 -

list of pro bono panelists. Within fifteen (15) days of the claimant's request for the pro bono evaluation, the individual pro bono evaluator shall be randomly chosen from the approved panel.

A pro bono evaluation will be done by document submission. The identity of the pro bono evaluator will not be disclosed to the claimant and the claimant's attorney. The PI Trust encourages identification of and not anonymity as to the alleged injured party so that medical records can be transmitted in their original form. The Private Adjudication Center will communicate to the parties the pro bono evaluator's written evaluation. The parties will communicate their respective rejection or acceptance of settlement upon the terms of the written evaluation. If either or both parties reject settlement upon those terms, then the claimant may submit an Election Form and Agreement for Binding or Non-binding Arbitration.

## C.    Mediation

The claimant may request telephone mediation as an ADR alternative. This process will require detailed written submissions to familiarize the mediator with the respective positions. The PI Trust shall establish and maintain a list of qualified regional mediators compensated by the PI Trust. The Private Adjudication Center shall select a qualified mediator from the list based upon location of claimant within fifteen (15) days after receipt of the Request for Mediation Form signed by the claimant and the PI Trust.

Claims shall be handled by each mediator in the order received by him or her, to the extent practicable. Any party may be represented by legal counsel. The mediator shall review the claim and the positions of the parties, such information as the parties may wish to submit as to a fair and equitable settlement, and all documents and medical reports relevant to the claim as submitted by the parties. At least five (5) business days prior to the mediation conference, claimant and the PI Trust shall each submit to the mediator a detailed written submission consisting of a confidential statement outlining the claimant's medical condition, exposure to OC and/or Fibreboard products and each party's detailed position on overall claim value.

The mediator shall confer with the parties and/or their legal representatives, individually and jointly. Such conference shall be conducted by telephone unless both parties agree otherwise. A representative of the PI Trust with settlement authority must participate in the conference. The mediator may request, but not require, that the claimant personally participate in the conference. Such conference shall be in the nature of a settlement conference. The mediator shall work with both sides toward reaching an acceptable, reasonable settlement. The mediator does not have the authority to impose a settlement on the parties. Ten (10) days after the conclusion of the mediation, if the parties have not settled the

matter, the claimant may submit to the PI Trust an Election Form and Agreement for Binding or Non-binding Arbitration.

**D.    Binding and Non-binding Arbitration Procedures**

Upon completion of either pro bono evaluation or mediation, the claimant may request non-binding and/or binding arbitration.   Binding arbitration will be conducted in the "final offer" format also known as "baseball style" arbitration. If the claim is arbitrated in either the binding or non-binding format, then the arbitrator shall return an award no greater than the Maximum Value for the category in which the claim properly falls in the Tables set forth in the TDP, unless the Extraordinary Claims Panel has previously determined that the claim should receive extraordinary claim treatment. In that case, the arbitrator shall return an award no greater than the Maximum Value for such claim as set forth in Section 5.4(a) of the TDP.

If the claimant requests arbitration, either binding or non-binding, then the PI Trust shall execute the appropriate Election Form and Agreement. The PI Trust may not decline the claimant's election of either binding or non-binding arbitration, but reserves all rights to reject any award in a non-binding arbitration proceeding. If the parties agree to engage in binding arbitration, then the claimant and the PI Trust waive their respective rights to seek a jury trial as set forth in the TDP.

## III.    RULES GOVERNING PRO BONO EVALUATION AND MEDIATION

Within ninety (90) days of a claimant's receipt of the ADR packet from the PI Trust, the claimant must elect one of the two ADR procedures and return the appropriate form to the PI Trust along with an executed Affidavit of Completeness.

**A.    Rules Governing Pro Bono Evaluation**

**1.    Election and Time Limits**

    a.    If the claimant chooses pro bono evaluation, then within ninety (90) days of claimant's receipt of the ADR packet, the claimant must send the PI Trust the Election Form for Pro Bono Evaluation. (See Attachment A).   The claimant or his/her attorney shall personally sign the Election Form for Pro Bono Evaluation.

    b.    The claimant must also sign an Affidavit of Completeness (See Attachment B) and return it to the PI Trust with a copy to the Private Adjudication Center within ninety (90) days of receipt of the ADR packet. The claim will not proceed until the PI Trust has received a completed Election Form and Affidavit of Completeness from the claimant. The Affidavit of Completeness shall verify that

- 4 -

all information to be considered in the ADR process has been provided to the PI Trust while the claim was under review by the PI Trust.

c.  After receiving the signed Election Form and Affidavit of Completeness, the PI Trust shall review and sign the Election Form within five (5) business days of receipt.

d.  Within fifteen (15) days from the date the PI Trust notifies the claimant's counsel of the PI Trust's consent to the Election Form, the PI Trust shall send a copy of the signed Election Form, the Affidavit of Completeness together with complete copies of all materials submitted to the PI Trust by the claimant and factual information in the PI Trust file, if any, gathered by the PI Trust from other sources, and a completed Affidavit of Accuracy to the claimant's counsel and the Private Adjudication Center who will forward the materials to the selected pro bono evaluator at the time the evaluator is selected. The PI Trust may not send the Private Adjudication Center any materials in the PI Trust file that have not previously been provided to the claimant.

2.  **Selection of the Pro Bono Evaluator**

Within fifteen (15) days of the date the Private Adjudication Center receives the claimant's election agreement, the Private Adjudication Center shall randomly select the pro bono evaluator from the list of pro bono panelists and notify the parties that the evaluator has been designated without disclosing the identity of the evaluator. The pro bono evaluator shall be selected from a panel of asbestos litigation plaintiff attorneys who have volunteered to serve the PI Trust at the request of the TAC. Pro bono assignments will be made on a rotating basis.

The identity of the pro bono evaluator shall not be disclosed to the claimant and the claimant's attorney. The injured party should not be anonymous so that medical records can be transmitted in their original form.

3.  **Submission of Written Arguments**

Fifteen (15) days after the PI Trust sends the complete file materials to the Private Adjudication Center, the claimant and the PI Trust shall simultaneously exchange and submit written arguments to the Private Adjudication Center. The Private Adjudication Center will immediately forward the written arguments to the pro bono evaluator. The written arguments shall comply with the following rules:

- 5 -

a.  The argument shall not exceed ten (10) double spaced typewritten pages. In order to preserve anonymity in a pro bono evaluation, the name of counsel should not be mentioned. The argument may not introduce factual matter not contained in the documents in the PI Trust's file. The evaluator shall disregard any argument that does not comply with this rule.

b.  When a party fails to submit the written argument within the fifteen (15) days, the party waives written argument and the pro bono evaluator shall disregard any argument received after that time.

## 4.  Evaluation of Documents

The pro bono evaluation is only a document review with complete anonymity preserved between claimant's counsel and the pro bono evaluator. The documents that the pro bono evaluator may consider shall be limited to the following:

a.  The documents in PI Trust's file forwarded to the pro bono evaluator.

b.  The claimant's Affidavit of Completeness and the PI Trust's Affidavit of Accuracy.

c.  The written arguments of the claimant and the PI Trust that comply with the rules for written arguments set forth above.

d.  Before the Private Adjudication Center forwards any documents to the pro bono evaluator it will redact all references to claimant's counsel.

## 5.  Written Evaluation and Procedure for Acceptance/Rejection

Within fifteen (15) days after the submission of written arguments, the pro bono evaluator shall submit a written evaluation of the claim to the Private Adjudication Center who will promptly mail it to the parties.

Within fifteen (15) days after receipt of the pro bono evaluator's written evaluation, the claimant and the PI Trust will each communicate in writing to the Private Adjudication Center whether they will accept the amount of the pro bono evaluator's written evaluation to settle the claim. If both parties accept, then the Private Adjudication Center will immediately inform both parties that they have achieved a settlement and the PI Trust shall pay the claim pursuant to the TDP. If either or both parties reject the pro bono evaluator's written evaluation, then within five (5) business days

- 6 -

of receipt of both parties' written communication, the Private Adjudication Center shall send each party a notice of rejection of pro bono evaluator's written evaluation that will not indicate whether the opposing party has accepted or rejected the pro bono evaluator's written evaluation amount.

6. **Arbitration May Proceed After Rejection of Pro Bono Evaluator's Written Evaluation**

Within sixty (60) days after receipt of the notice of rejection of pro bono evaluator's written evaluation, the claimant may request arbitration by returning to the PI Trust a signed Election Form and Agreement for either Binding or Non-binding Arbitration.

B. **Rules Governing Mediation**

1. **Election**

If the claimant chooses mediation, then the claimant shall submit to the PI Trust a signed Request for Mediation Form (Attachment C) along with an executed Affidavit of Completeness within ninety (90) days of claimant's receipt of the ADR packet. Within five (5) business days of the PI Trust's receipt of the signed Request for Mediation Form, the PI Trust shall review and sign the form and forward a signed copy along with an executed Affidavit of Accuracy to the claimant and the Private Adjudication Center.

2. **Selection of Mediator**

Within fifteen (15) days of the signed Request for Mediation Form, the Private Adjudication Center shall retain a mediator from the approved list of mediators. The Private Adjudication Center shall select the mediator based upon the region in which the claimant is located. The mediator shall be compensated by the PI Trust. The Private Adjudication Center shall schedule a mediation conference within sixty (60) days after receipt of the signed Request for Mediation Form. The mediation will be conducted by telephone conference unless the parties agree otherwise. Scheduling of the conference shall be coordinated with the mediator and the conferences shall take place in the order received by the mediator, to the extent practicable.

3. **Submission of Materials to Mediator**

At least five (5) business days prior to the mediation conference, the claimant and the PI Trust shall each submit to the mediator a detailed written submission consisting of a confidential statement outlining the claimant's medical condition, exposure to OC and/or Fibreboard products,

- 7 -

and each party's position on overall claim value. The parties may also submit to the mediator documents and medical reports that they believe are relevant to the claim. The mediator shall review the claim and the positions of the parties and the other information that the parties submit prior to the mediation conference. The mediation briefs shall comply with the following rules:

a.  The confidential statement should not exceed ten (10) double spaced typewritten pages exclusive of attachments.

b.  The submission may not introduce factual matter not contained in the documents in the PI Trust's file as certified by the Affidavit of Completeness.

## 4.  Mediation Conference

Any party may be represented by legal counsel at the mediation conference. The mediator shall confer with the parties' legal representatives and, if the claimant is present and consents, with the claimant. A representative of the PI Trust with settlement authority must participate in the conference. The mediator may request, but not require, that the claimant personally participate in the conference.

## 5.  Negotiations at the Mediation Conference

The mediator may facilitate settlement in any manner the mediator believes is appropriate. The mediator will help the parties focus on their underlying interests, explore resolution alternatives and develop settlement options. The mediator will decide when to hold joint conferences, and when to confer separately with each party.

The parties are expected to initiate and convey to the mediator proposals for settlement. Each party shall provide a rationale for any settlement terms proposed. Finally, if the parties fail to develop mutually acceptable settlement terms, before terminating the procedure, and only with the consent of the parties, (a) the mediator may submit to the parties a final settlement proposal; and (b) if the mediator believes he/she is qualified to do so, the mediator may give the parties an evaluation (which if all parties choose, and the mediator agrees, may be in writing) of the likely outcome of the case if it were tried to final judgment, subject to any limitations under the Plan, the TDP and ethical codes.

## 6.  Confidentiality of Mediation

The entire mediation process is confidential. Unless agreed among all the parties or required to do so by law, the parties and the mediator shall not

- 8 -

disclose to any person who is not associated with participants in the process, including any judicial officer, any information regarding the process (including pre-process exchanges and agreements), contents (including written and oral information), settlement terms or outcome of the proceeding.

Under this procedure, the entire process is a compromise negotiation subject to Federal Rule of Evidence 408 and all state counterparts, together with any applicable statute protecting the confidentiality of mediation. All offers, promises, conduct and statements, whether oral or written, made in the course of the proceeding by any of the parties, their agents, employees, experts and attorneys, and by the mediator are confidential.

Such offers, promises, conduct and statements are privileged under any applicable mediation privilege and are inadmissible and not discoverable for any purpose, including impeachment, in litigation between the parties. However, any written or oral information or other materials submitted to the mediator by either the PI Trust or the claimant may be submitted by either party to the arbitrator in an arbitration that takes place under these ADR procedures.

In addition, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable solely as a result of its presentation or use during the mediation. The exchange of any tangible material shall be without prejudice to any claim that such material is privileged or protected as work-product within the meaning of Federal Rule of Civil Procedure 26 and all state and local counterparts.

The mediator and any documents and information in the mediator's possession will not be subpoenaed in any such investigation, action or proceeding, and all parties will oppose any effort to have the mediator or documents subpoenaed. The mediator will promptly advise the parties of any attempt to compel him/her to divulge information received in mediation.

7.    **Submission of Written Offers After Mediation**

At the conclusion of the mediation, the mediator shall require the parties to exchange written settlement offers that shall remain open for ten (10) days. If after the expiration of that ten (10) day period neither party accepts the other's written offer or the parties do not otherwise settle the matter, then the claimant may request binding or non-binding arbitration by sending to the PI Trust the appropriate signed Election Form and Agreement for either Binding or Non-binding Arbitration.

- 9 -

## IV.    RULES GOVERNING NON-BINDING AND BINDING ARBITRATION

### A.    Election by the Claimant

The PI Trust shall review the Election Form and Agreement for Binding or Non-binding Arbitration (Attachments D and E) and within five (5) business days of receipt the PI Trust shall sign the Agreement and shall immediately send a fully signed Arbitration Agreement to the Private Adjudication Center.

### B.    Selection of the Arbitrator

1.    As soon as reasonably possible after the receipt of the signed Arbitration Agreement, but no more than fifteen (15) days after the receipt of the signed Arbitration Agreement, the Private Adjudication Center shall select three potential arbitrators from a rotating list kept by the Private Adjudication Center. Assignments of arbitrators will be made on a rotating basis nationally, by the Private Adjudication Center. The Private Adjudication Center shall promptly notify the arbitrators and the parties of the potential arbitrators' selection. If a potential arbitrator is unable or unwilling to serve, then a replacement selection will be made prior to notifying the PI Trust and the claimant of the potential arbitrators selected.

2.    Within seven (7) days of receipt of the list of potential arbitrators, the PI Trust may select, and identify to the Private Adjudication Center, one potential arbitrator to be stricken from the list. The Private Adjudication Center shall then promptly notify the claimant of the PI Trust's selection, whereupon, within seven (7) days of the receipt of such notification, the claimant may select, and identify to the Private Adjudication Center, a second potential arbitrator to be stricken from the list. The Private Adjudication Center shall then notify all parties which potential arbitrator remains and will conduct the arbitration. If either the PI Trust or the claimant, or both, fails to exercise the right to strike an arbitrator from the list of potential arbitrators, the Private Adjudication Center shall appoint from those potential arbitrators remaining the arbitrator next in rotation on the PI Trust's rotating list.

3.    Any appointed arbitrator shall disclose to the Private Adjudication Center any circumstances likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or representatives. Upon receipt of such information from the arbitrator or another source, the Private Adjudication Center shall communicate the information to the parties and, if the administrator deems necessary, to the arbitrator and others. Upon objection of a party to the continued service, the Private Adjudication

- 10 -

Center shall determine whether the arbitrator should be disqualified and shall inform the parties of the decision, which shall be final.

**C.     Extraordinary Claims and Those Reviewed by the Extraordinary Claims Panel**

In the event that the Extraordinary Claims Panel has deemed the claim worthy of extraordinary treatment, the Private Adjudication Center shall forward to the arbitrator the written decision of the Extraordinary Claims Panel, and the parties may submit a final request that exceeds the values ascribed to the type of injury in the TDP. In such circumstances, the arbitrator may issue an award in accordance with such a final offer/request.

In the event that the Extraordinary Claims Panel declined to give extraordinary treatment to the claim, the arbitrator shall not be informed of the Extraordinary Claims Panel's decision, and the claimant must confine his/her award to the values ascribed to the type of injury in the TDP because the arbitrator may not award an amount in excess of the Maximum Value assigned to the appropriate category for the injury in the TDP. The PI Trust will not engage in non-binding or binding arbitration, and reserves the unilateral right to withdraw from a signed non-binding or binding arbitration agreement at any time, where the claimant's final offer and award demand exceeds the Maximum Value assigned to the type of injury in the TDP and the Extraordinary Claims Panel has declined to give extraordinary treatment to the claim.

**D.     Final Offer or "Baseball Style" Binding Arbitration**

All binding arbitration shall be conducted in the "final offer" format also known as "baseball style" arbitration. In the course of submitting the arbitration materials, as explained in these rules, the parties shall submit their final offer of settlement which shall also serve as the party's demand for arbitration award. The arbitrator must choose from one of these two demands in determining the amount of the arbitration award.

**E.     Submission of Pre-Hearing Statements**

Within twenty (20) days of the appointment of an arbitrator each party shall submit to the opposing party and to the arbitrator a written statement (not to exceed ten (10) double spaced pages) containing that party's positions and arguments. Each party may then submit a supplement to its written statement (not to exceed five (5) double spaced pages) following the initial pre-hearing conference to respond to the opposing party's positions and arguments and addressing issues raised at the initial pre-hearing conference. Supplements must be sent to the opposing party and to the arbitrator within ten (10) days after the date of the pre-hearing conference.

- 11 -

The Private Adjudication Center will provide the arbitrator with a complete schedule of categories of injuries and Scheduled, Average and Maximum Values therefor in the TDP.

F.    Initial Pre-Hearing Conference, Scheduling Hearing Date, Optional Video Conference for Arbitration Hearing

1.    Within fifteen (15) calendar days of the receipt of both party's briefs, the Private Adjudication Center shall contact the claimant, the arbitrator, and the PI Trust to schedule the initial pre-hearing conference. The pre-hearing conference shall be presided over by the arbitrator and held by telephone conference call.

2.    During the initial pre-hearing conference, the arbitrator shall schedule the date and select the location of the arbitration hearing either at the location of the arbitrator or a location mutually agreeable to the parties. The arbitration hearing should be scheduled not less than forty-five (45) days, and not more than sixty (60) days, from the date of the initial pre-hearing conference. The Private Adjudication Center will mail a confirmation notice of this date to the claimant and the PI Trust.

3.    At the election of the claimant, the arbitration hearing may be conducted by video conference. If the claimant so elects, then the claimant must state that election in writing prior to the initial pre-hearing conference. The Private Adjudication Center will make appropriate arrangements for the PI Trust and the arbitrator to participate by video conference. The PI Trust shall pay for its and the arbitrator's cost for use of video conference equipment and facilities. The claimant shall only be responsible for his/her costs (including participation by claimant's counsel).

4.    During the initial pre-trial conference, the arbitrator shall seek to achieve agreement between the parties on:

a.    narrowing the issues (through methods including but not limited to stipulation of facts);

b.    whether the claimant will appear at the hearing (at the claimant's sole discretion);

c.    any legal issues;

d.    and any other matters that will expedite the arbitration proceedings.

If appropriate or if the parties do not agree on these issues, then the arbitrator must issue orders governing the process.

G.    No Discovery With Limited Exceptions

- 12 -

There shall be no discovery except as specifically provided below. The purpose of the arbitration is to resolve differences between the PI Trust and the claimant based only on the documents that have been previously submitted to the PI Trust by the claimant and any other documents relied upon by the PI Trust to make a settlement offer to the claimant or to disallow the claim. However, if the PI Trust commissions an independent medical examination or a third-party medical review upon which the PI Trust relies in evaluating the claimant's claim, then the claimant may depose the medical professional conducting the review or examination after having a reasonable opportunity to study any report or written opinion generated by the medical professional.

## H.    No Record of Proceedings Unless Requested by Arbitrator

There will be no record or transcript of the proceedings unless the arbitrator requests a transcript to assist him/her in reviewing the evidence or otherwise to aid in the decision making process. In the event an arbitrator requests a transcript prior to the arbitration, then the PI Trust shall arrange for a court reporter and shall pay all expenses associated with the preparation of the transcript. In no event, however, will the transcript be made available to the parties, nor shall any time required for preparation of the transcript affect the time for the arbitrator to render a decision.

## I.    Postponement of Hearing

The arbitrator for good cause may postpone any hearing upon the request of a party or upon the arbitrator's own initiative, and shall also grant such postponement when all of the parties agree.

## J.    Duration of Hearings

The arbitrator shall complete the hearing in one day except for good cause shown. The arbitrator shall set time limits on the respective presentations, and shall enforce those set limits. The parties shall request no more than three hours apiece for presentation of their cases.

## K.    Procedure at Arbitration Hearing

### 1.    Testimony Under Oath or Affirmation

If the claimant or any other witness testifies, such testimony shall be under oath or affirmation administered by the arbitrator.

### 2.    Conduct of Hearing

- 13 -

At the opening of the arbitration hearing, the arbitrator shall make a written record of the time, place, and date of the hearing, and the presence of the parties and counsel.

3.  **Evidence**

    a.    **Rules of Evidence:** The arbitrator is not required to apply the rules of evidence used in judicial proceedings, provided, however that the arbitrator shall apply the attorney-client privilege and the work product privilege. The arbitrator shall determine the applicability of any privilege or immunity and the admissibility, relevance, materiality and weight of the evidence offered.

    b.    **Admission of Evidence:** The evidence that the arbitrator may consider shall be limited to the following:

        (i)    The documents supplied to the PI Trust prior to the execution of the Affidavit of Completeness;

        (ii)    Non-binding or binding arbitration election agreement;

        (iii)    Testimony of the claimant. The claimant may offer evidence regarding the nature and extent of compensable damages, including physical injuries, and/or the market share of OC and/or Fibreboard products, if there is a claim of greater than average market share. The PI Trust may cross-examine on these issues. At the claimant's option, a claimant's deposition, including videotaped testimony, shall be admissible into evidence in lieu of live testimony.

        (iv)    Any additional deposition testimony taken by the PI Trust or the claimant, and provided to both sides, prior to the initiation of ADR.

        (v)    Any evidence submitted in mediation.

        (vi)    Closing arguments of the claimant and the PI Trust. The arguments shall be limited to the evidence contained and the issues raised in the documents or testimony referred to above and shall be limited to ½ hour for each party. The arbitrator shall disregard any effort to introduce further evidence or issues in argument.

L.    **Arbitration in the Absence of a Party or Representative**

- 14 -

The claimant may choose whether or not to attend the arbitration in person in his/her sole discretion. The arbitration may proceed in the absence of any party or representative who, after due notice, chooses not to be present, fails to be present or fails to obtain a postponement if he/she desires to be present but cannot. An award shall not be made against a party solely for the failure to appear. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

**M.    Conclusion of Hearing and Submission of Post-Hearing Briefs**

When the parties state that they have no further evidence or witnesses to offer, and after the parties have made their closing arguments, if any, the arbitrator shall declare the hearing closed. Post-hearing briefs will be permitted only upon order of the arbitrator and shall be served upon the arbitrator no later than ten (10) days after the hearing is closed. Such briefs shall be no longer than five (5) double spaced pages. The time limit within which the arbitrator is required to make the award shall commence to run upon the closing of the hearing or the submission of post-hearing briefs, whichever is later.

**N.    Option to Waive Oral Hearings**

The parties may request a waiver of oral hearings. Oral hearings will only be waived if all parties consent.

**O.    Arbitration Decision**

1.    The arbitrator shall issue a decision no later than fifteen (15) calendar days after the date of the close of the hearing or submission of post-hearing briefs, whichever is later.

2.    The decision shall state only the amount of the award, if any. The decision shall not state reasons for the award. An arbitrator shall not be permitted to award punitive, exemplary, trebled or other like damages or attorneys' fees, and prejudgment and post-judgment interest and costs shall not be sought or allowed. The award shall dispose of all monetary claims presented to the arbitrator and shall determine fully the only issue to be decided pursuant to the arbitration agreement: the amount, if any, at which the claim value should be fixed. To assist the arbitrator, the Private Adjudication Center will provide the arbitrator with a schedule setting forth the Disease Levels and the Scheduled, Average and Maximum Values associated with each category. Unless the Extraordinary Claims Panel has determined that a claim is entitled to extraordinary treatment during the claims review process, the arbitrator's award shall **not** exceed the Maximum Value amount for the appropriate Category in the TDP.

**P.    Payment of Award**

- 15 -

Pursuant to the terms of the arbitration agreement, the PI Trust will promptly send to the claimant the appropriate release. The PI Trust will then pay the claim based upon the binding or, if accepted by both parties, the non-binding award, in accordance with the TDP in effect at that time.

Q.    Rejection of Non-binding Award

1.    A party in a non-binding arbitration proceeding that wishes to reject the award must notify the other party within thirty (30) days from the date a non-binding award is issued. If no rejection is received or sent by the PI Trust, then the decision will stand and the award will be deemed accepted by both parties and the PI Trust will promptly send to the claimant the appropriate release. The PI Trust will then pay the claim in accordance with the Claim Resolution Procedures in effect at that time.

2.    Procedure for Rejected Award

a.    Rejection by Claimant

If claimant has sent the PI Trust timely notification of rejection of a non-binding award and wishes to pursue the claim, then the claimant must notify the PI Trust through correspondence postmarked no later than sixty (60) days from the date of the non-binding award. If notification is received within the sixty (60) day deadline and claimant wishes to pursue the claim, then the PI Trust will within fifteen (15) days of receipt of this notification send the claimant an authorization to commence litigation.

b.    Rejection by PI Trust

If the PI Trust rejects the non-binding award, then claimant may elect binding arbitration or request that the PI Trust forward the authorization to commence litigation.

V.    GENERAL ADR PROCEDURES GOVERNING PRO BONO EVALUATION, MEDIATION, NON-BINDING ARBITRATION, AND BINDING ARBITRATION

A.    ADR Submissions

The claimant's submissions (with the exception of the binding arbitration's written argument) will be reviewed by the ADR administrator before they are submitted to the pro bono evaluator, mediator or arbitrator. If they contain materials not previously submitted in support of the claim, then the PI Trust claims department will review the additional information and determine the effect, if any, it would have on the PI Trust's evaluation of the claim. In appropriate situations, a new offer may be made to the claimant.

- 16 -

If an attorney or other agent represents the claimant, both the attorney _and_ the claimant must also sign the Election and Agreement for Binding Arbitration. The attorney or agent may not sign in place of, or for, the claimant unless the claimant is incapacitated, incompetent or deceased and the attorney or agent has been designated legally to act on the claimant's behalf. Documentation of this legal designation will be required.

**B.    No Grouping or Bundling of Claims**

As a general matter, there shall be no grouping or bundling of claims by separate claimants at any stage of the ADR or arbitrations even if the claims are related and/or the claimants have the same counsel. Each claimant must proceed individually through the ADR and arbitration processes with all claims that claimant may have or represent. This provision is intended to separate claims of different exposed persons and has no effect upon multiple claims brought by a claimant's representative, such as heirs of a deceased worker. However, the PI Trust, in its sole discretion, may decide that it would be expeditious to allow the conduct of arbitration proceeding with respect to more than one claim of different exposed persons, provided that the arbitrator individually values each such claim in accordance with the valuation factors set forth in Section 5.3(b)(2) of the TDP, and the respective claimants' separate positions in the PI Trust's FIFO Processing and Payment Queues are maintained.

**C.    No Ex Parte Communication**

There shall be no ex parte communication between the arbitrator or pro bono evaluator and any counsel or party in any matter. All correspondence between the arbitrator or pro bono evaluator and the parties will be facilitated by the Private Adjudication Center.

**D.    Claims and Defenses**

All available claims and defenses which exist under the law subject to the claimant's election under the TDP shall be available to both sides.

**E.    Costs of ADR**

**1.    ADR expenses**

The PI Trust will pay the arbitrator's fee for non-binding or binding arbitration up to two thousand dollars ($2000.00) per claim depending on the length of the hearing. The pro bono evaluator is a volunteer and thus no fee will be incurred. The PI Trust will assume costs of meeting and hearing facilities for arbitration. Claimants will pay their costs and attorney fees, including any expenses incurred should the claimant testify.

- 17 -

2.    **Filing Fee**

No filing fee is required of the claimant for any ADR selection, unless the PI Trust with the consent of the TAC and the Future Claimants' Representative decide that it would be in the best interests of the PI Trust and its beneficiaries to adopt such a fee.

F.    **Waiver of Objection to Rules Infraction**

Either party who continues with the pro bono evaluation, mediation, non-binding arbitration, or binding arbitration proceeding after knowing that any provision or requirement of the applicable rules has not been complied with, and who fails to state a timely objection in writing to the arbitrator, mediator or pro bono evaluator, shall be deemed to have waived the right to object. A timely objection by a claimant must be stated in writing and mailed to the PI Trust with instructions to forward the objection to the Private Adjudication Center and to the arbitrator, mediator or pro bono evaluator. A timely objection by the PI Trust will be mailed to the claimant and to the Private Adjudication Center with instructions to forward to the arbitrator, mediator or pro bono evaluator.

G.    **Serving of Notices and Other Papers**

Each party to the ADR and arbitration agreements shall be deemed to have consented that any papers, notices, or processes necessary or proper for the initiation or continuation of ADR and Arbitration proceedings under these rules may be served upon such party as follows:

1.    By regular U.S. mail or overnight courier addressed to such party or their attorneys at their last known address;

2.    By facsimile transmission or electronic mail, if a copy of the transmitted papers is mailed addressed to the party or their attorney at their last known address within twenty-four (24) hours of the facsimile transmission or electronic mail; or,

3.    By personal service, within or without the state where the pro bono evaluation, mediation or arbitration is to be held, whether the party is within or without the United States of America.

H.    **Time Limits Triggered Upon Receipt**

1.    Documents sent by U.S. mail under these rules shall be deemed received three (3) business days after the date of postmark. Documents sent via overnight mail shall be deemed received on the next business day after mailing.

    2.    Documents sent via facsimile transmission or electronic mail shall be deemed received on the business day that the transmission is sent.

**I.**    **Exclusion of Liability**

Neither the Private Adjudication Center nor the mediator, nor the arbitrator nor pro bono evaluator shall be liable to any party for any act or omission in connection with any evaluation conducted under these rules.

**J.**    **Relationship of Rules to Election Form for Pro Bono Evaluation, Request for Mediation, Non-binding Arbitration Agreement or Binding Arbitration Agreement**

These Rules shall be deemed a part of, and incorporated by reference in, every duly executed ADR agreement or arbitration agreement and shall be binding on all parties.

**K.**    **Arbitrator/Mediator/Pro Bono Evaluator Immunity**

Arbitrators, mediators or pro bono evaluators who serve pursuant to these rules shall have the same immunity as judges for their official acts.

**L.**    **Jurisdiction**

Any dispute under these rules shall be subject to the jurisdiction of the United States Bankruptcy Court for the District of Delaware.

**M.**    **Statement of Confidentiality**

    1.    All ADR and arbitration proceedings and information relating to the proceeding will be confidential. Neither party shall disclose the information obtained during the proceedings, nor the valuation placed on the case by an arbitrator or pro bono evaluator, to anyone or use such information or valuation in any further proceeding except as necessary to maintain the PI Trust's obligation to report to the Bankruptcy Court and to provide ongoing evaluation by the PI Trust and TAC. Except for documents prepared by a non-party which are introduced as evidence before an arbitrator or pro bono evaluator, any document prepared by another party, attorney or other participant in anticipation of the ADR is privileged and shall not be disclosed to any court or arbitrator/pro bono evaluator or construed for any purpose as an admission against interest.

    2.    All ADR and arbitration proceedings shall be deemed a settlement conference pursuant to Rule 408 of the Federal Rules of Evidence. Except by agreement of the parties, the parties will not introduce into evidence in any other proceedings the fact that there was an arbitration, the nature or

amount of the award, and written submissions may not be used for purposes of showing accord and satisfaction or res judicata. In binding arbitration, the decision of the arbitrator may be admissible in the event the claimant improperly seeks to litigate the claim. The binding arbitration award shall be admissible in support of a motion to enjoin such litigation. No arbitrator or pro bono evaluator will ever be subpoenaed or otherwise required by any party or any third party, to testify or produce records, notes or work product in any future proceedings.

### N.    Amendments

Except as otherwise ruled by the Bankruptcy Court, these rules, as they may from time to time be amended by the PI Trustees with the consent of the TAC and the Future Claimants' Representative, will be binding on all parties in the form in which they are in force on the date the claimant signs the election agreement.

### O.    Time Limits

The time limits included in these procedures are to be strictly enforced. Any time limit set forth herein may be extended by agreement of the parties or for cause shown to the neutral party presiding over the particular ADR or arbitration proceeding. Any request for extension, however, shall first be made to the opposing party and then if the parties cannot agree, shall be submitted to the Private Adjudication Center who will request a ruling from the pro bono evaluator, mediator, or arbitrator as the case may be.

Although the deadlines may be extended by agreement or for cause shown, failure to comply with a deadline without obtaining an extension may result in withdrawal of the claim. Promptly after a claimant fails to comply with a specified deadline without obtaining an extension, the PI Trust shall send the claimant written notice of the failure to comply. If the claimant does not take any action on the claim, then thirty (30) days thereafter the claim will be deemed withdrawn under Section 6.3 of the TDP.