# **<u>EXHIBIT L</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

ANNUAL REPORT AND ACCOUNT OF THE
OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2009

Harry Huge, D. LeAnne Jackson, and Dean M. Trafelet, the Trustees of the Owens Corning/Fibreboard Asbestos Personal Injury Trust (the "Trust"), created pursuant to the Sixth Amended Joint Plan of Reorganization for Owens Corning and Its Affiliated Debtors and Debtors-in-Possession, as modified (the "Plan") submit this Annual Report, Financial Statements, and Claims Summary for the fiscal year ended December 31, 2009.

I.      INTRODUCTION

The purpose of this Annual Report is to comply with the reporting requirements of the Owens Corning/Fibreboard Asbestos Personal Injury Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustees on behalf of the Trust during the period from January 1, 2009 to December 31, 2009 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustees shall timely account to the Bankruptcy Court as follows:

> (i)      The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "Annual Report") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and

{D0174890.1 }

a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such report to the TAC,[1] the Future Claimants' Representative, and Reorganized OC when such reports are filed with the Bankruptcy Court.

(ii) Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC, the Future Claimants' Representative, and Reorganized OC when such report is filed.

(iii) All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the District of Delaware.

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court. See Sections 4.5(c), 5.6, and 6.5.

II.  BACKGROUND

On October 5, 2000, Owens Corning and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. On September 26, 2006, the Court entered an order in these cases confirming the Plan (the "Plan"). On September 28, 2006, the United States District Court for the District of Delaware affirmed this Court's confirmation order. On October 31, 2006 (the "Effective Date"), the Plan became effective and the Trustees began to operate the Trust.

---

[1] Trust Advisory Committee

On or after the Effective Date, the OC and FB Sub-Accounts of the Trust were funded as provided for in Sections 3.3(f)(iii) and 3.4(d)(iii) of the Plan respectively. The purpose of the Trust is to assume the liabilities of OC and Fibreboard, their predecessors and successors in interest, for all Asbestos Personal Injury Claims, as defined in the Plan, and to use the assets and income of the Trust to pay both present and future asbestos claimants in accordance with the Trust Agreement and the Trust Distribution Procedures in such a way that holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the limited assets available to satisfy such claims. See Trust Agreement, Section 1.2

III. TRUST ADMINISTRATION

A. Trustees

Harry Huge, D. LeAnne Jackson, and Dean M. Trafelet served as the Trustees of the Trust during the Reporting Period. Dean M. Trafelet served as the Managing Trustee during the Reporting Period.

1. Meetings

During the Reporting Period, the Trustees held formal meetings in accordance with the requirements of the Owens Corning/Fibreboard Asbestos Personal Injury Trust Agreement. These meetings were designated as "regular meetings" under the Trust's By-laws. Each meeting was in person and was attended by representatives of the Trust Advisory Committee and the Future Claimants' Representative. In addition to these formal meetings, the Trustees held regularly scheduled weekly teleconferences, met individually with Trust advisors, held executive session and special purpose meetings, including meetings to address Trust policies and claims processing matters and meetings with the Trust's investment advisor, investment managers and investment bankers as well as with the management of Owens Corning, and devoted

considerable time to Trust matters outside of scheduled meetings. Activities included exercising oversight over the investment and liquidation of Trust assets to pay claims and the Trust's processes to receive, process, and pay claims pursuant to the Trust Distribution Procedures, communicating with claimants regarding the processing of claims, continual monitoring of the claims and investment processes and supervising various insurance related matters.

    2.    Compensation

The compensation and expenses paid to the Trustees during the Reporting Period is set forth in the Trust's financial statements attached hereto as Exhibit "A." The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 4.5 of the Trust Agreement. All distributions related to Trustee compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines and applicable By-laws.

    B.    Trust Officers

Analysis Research Planning Consulting ("ARPC") served as the Trust's Executive Director during the Reporting Period.

    C.    Trust Advisory Committee

Matthew P. Bergman, Russell W. Budd, John D. Cooney, James L. Ferraro, Steven Kazan, Joseph F. Rice, Armand J. Volta, Jr., and Perry Weitz served as Members of the Trust Advisory Committee (the "TAC Members") during the Reporting Period. Theodore Goldberg served as a TAC Member during the Reporting Period until appointing his successor, Mark C. Meyer who served as a TAC Member through the remainder of the Reporting Period. The compensation and expenses paid to the TAC Members during the Reporting Period is set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 5.6 of the Trust Agreement. All distributions

related to TAC Member compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines and applicable By-laws.

D.  Future Claimants' Representative

Michael J. Crames served as the Future Claimants' Representative (the "FCR") during the Reporting Period. The compensation paid to the FCR during the Reporting Period is set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 6.5 of the Trust Agreement. All distributions related to FCR compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines and applicable By-laws.

E.  Claims Processing

The Delaware Claims Processing Facility, LLC continues to process the Owens Corning/Fibreboard Asbestos Personal Injury Trust Claims. The terms of the Trust's ownership interest in the Delaware Claims Processing Facility are detailed in the Audited Financial Statements.[2] In addition, on March 1, 2007 the Trust engaged MFR Claims Processing, Inc, a Pennsylvania corporation to process Pre-Petition Liquidated Claims.

F.  Investment Management

During the Reporting Period, the Trust continued to engage Cambridge Associates, LLC of Boston, Massachusetts as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has experience advising such trusts regarding investment management. Cambridge Associates advises the Trust on, among other things, asset allocation, monetizing assets to provide funds to meet liquidity needs for the payment of claims and Trust expenses, and the selection and oversight of individual investment managers for the investable portions of the Trust's portfolio.

---

[2] Audited Financial Statements at Note 3.

The Trust Agreement contains certain general investment guidelines that primarily address credit quality and asset concentration. Additionally, the Trust's investments are invested in fixed income and equity investments in accordance with a targeted allocation policy recommended by Cambridge Associates after consideration of the currently forecasted timing of the liquidity needs of the Trust to pay claims and expenses, diversification, the Trust's concentrated investment in Owens Corning common stock, the Trust's status as a federal tax paying "qualified settlement fund," and such other factors as Cambridge Associates considers relevant to forming its recommendation. Due to fluctuations in market prices of the Trust's investments, particularly its equity investments, and the regular liquidation of fixed income investments to meet the cash needs of the Trust's two sub-accounts to pay claims and operating expenses, actual allocations may vary from target allocations at any single point in time.

The Trust engages multiple investment managers for each of the asset classes in which it invests in order to achieve additional diversification. The investment managers are selected by the Trust with the assistance, and upon the recommendation, of Cambridge Associates. At December 31, 2009, the following investment managers were retained by the Trust:

| Equity | Tax Exempt Municipal Bonds |
|---|---|
| Northern Trust Global Investments | Eaton Vance Tax Advantaged Bond Strategy |
| Grisanti Brown & Partners LLC | Schroders Investment Management |
| Sanderson Asset Management, Inc. | T. Rowe Price |
| Gryphon International Investment Corporation | Brown Brothers Harriman |
| | Goldman Sachs |

For investment and tax purposes each of the Trust's two sub-accounts, the Owens Corning sub-account and the Fibreboard sub-account, are treated as separate "qualified settlement funds," although they have similar investment target allocations and employ the same mix of asset managers.

During the Reporting Period, the Trustees regularly met with Cambridge Associates to review investment performance, economic conditions and investment strategy. In addition, during March 2009, as part of an annual review process, the Trustees and Cambridge Associates met with each of the Trust's investment managers to review changes to the manager's organization, the manager's investment strategy and investment performance, and the manager's market outlook and expectations for the upcoming year.

The Bank of New York Mellon serves as custodian for the Trust's separately-managed investment accounts. The Trust's actively managed non-U.S. equity portfolios are invested through commingled vehicles that have a separate custodian (selected by the investment manager) for each of the respective vehicles. The Trust utilizes custodian accounts, wire transfers and zero-balance banking accounts to reduce its exposure to systemic banking system risk.

In February 2009 the Trust retained Rothschild Inc. as its financial advisor with respect to its ownership of Owens Corning common stock. Prior to this date, the Trust had engaged Blackstone Advisory Services, LLP to advise it with respect to the Owens Corning common stock. During the Reporting Period, the Trustees met regularly with Rothschild Inc. to review matters relating to its equity interest in Owens Corning. The Trustees and their advisors also met with the management of Owens Corning to discuss matters of interest to shareholders.

G.    Insurance Coverage Litigation

Upon the Effective Date, pursuant to the Plan, the Trust received the right to pursue certain unsettled insurance coverage and the rights to certain proceeds paid pursuant to Asbestos PI Insurance Settlement Agreements. The Trust retained the firm of Anderson Kill & Olick, P.C. as Special Insurance Counsel to the Trust. Prior to the Effective Date of the Plan of

Reorganization, the Debtors and other Plan Proponents reached settlement agreements with many of the Debtor's historical insurance companies that required the settling insurance companies to make cash payments to or for the benefit of the Trust. Certain of those agreements required the settling insurance companies to make payments into escrow accounts during the pendency of the bankruptcy case, and those escrow accounts were released to the Trust in the first quarter of 2006. Certain other settlement agreements required the insurance companies to pay settlement proceeds to the Trust after the Plan's Effective Date in 2006, and the Trust received from insurance companies substantial payments in 2007, 2008 and 2009. In addition, some of these settlement agreements require the settling insurance companies to make payments to the Trust on agreed-to payment schedules that extend beyond 2009. As a result, the Trust anticipates receiving additional payments through 2015 under these settlement agreements. Although the Plan Proponents settled with many of the Debtors' insurance companies prior to the Plan's Effective Date, they did not settle with all of the Debtors' insurance companies. Accordingly, in 2007, the Trust initiated settlement discussions with some unsettled solvent and insolvent domestic insurance companies (and state insurance guaranty associations) and continued in 2009 to participate in mediation and arbitration pursuant to the Wellington Agreement with others. The Trust anticipates that its efforts to secure coverage from unsettled insurance companies will continue at least through 2010.

    H.    General Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware continues to serve as general counsel to the Trust. Kaplan, Strangis & Kaplan, P.A. of Minneapolis, Minnesota continues to serve as Special Corporate Counsel and Anderson Kill & Olick, P.C. of New York, New York continues to serve as Special Insurance Counsel to the Trust

IV.  ANNUAL REPORT AND ACCOUNT

   A.  Summary of Claims

As of December 31, 2009, the Trust had paid a total of 47,206 Owens Corning Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 4,883 malignancy claims and 42,323 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust had paid approximately $345.28 million to asbestos victims in settlement of their Owens Corning Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Owens Corning Pre-Petition Liquidated PI Trust Claims paid in number was 1/9 and the malignant to nonmalignant ratio of the Owens Corning Pre-Petition Liquidated Trust Claims in dollars paid was 1.3/1.

As of December 31, 2009, the Trust had received 324,270 Owens Corning Unliquidated PI Trust Claims and paid a total of 113,340 claims. Of the claims paid, there were 20,724 malignancy claims and 92,616 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust had paid approximately $1,400.13 million to asbestos victims in settlement of their Owens Corning Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Owens Corning Unliquidated PI Trust Claims paid in number was 1/5 and the malignant to nonmalignant ratio of the Owens Corning Unliquidated Trust Claims in dollars paid was 1.6/1.

During the reporting period, the Trust paid a total of 8,887 Owens Corning Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 720 malignancy claims and 8,167 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $15.84 million to asbestos victims in settlement of their Owens Corning Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of

the Owens Corning Pre-Petition Liquidated PI Trust Claims paid in number was 1/12 and the malignant to nonmalignant ratio of the Owens Corning Pre-Petition Liquidated Trust Claims in dollars paid was 4/5.

During the reporting period, the Trust received 76,063 Owens Corning Unliquidated PI Trust Claims and paid a total of 44,294 claims. Of the claims paid, there were 13,674 malignancy claims and 30,620 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $647.67 million to asbestos victims in settlement of their Owens Corning Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Owens Corning Unliquidated PI Trust Claims paid in number was 4/9 and the malignant to nonmalignant ratio of the Owens Corning Unliquidated Trust Claims in dollars paid was 3.1/1.

As of December 31, 2009, the Trust had paid a total of 42,200 Fibreboard Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 3,864 malignancy claims and 38,336 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust had paid approximately $133.58 million to asbestos victims in settlement of their Fibreboard Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Fibreboard Pre-Petition Liquidated PI Trust Claims paid in number was 1/10 and the malignant to nonmalignant ratio of the Fibreboard Pre-Petition Liquidated Trust Claims in dollars paid was 1.3/1.

As of December 31, 2009, the Trust had received 300,857 Fibreboard Unliquidated PI Trust Claims and paid a total of 124,839 claims. Of the claims paid, there were 19,367 malignancy claims and 105,472 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust had paid approximately $586.92

million to asbestos victims in settlement of their Fibreboard Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Fibreboard Unliquidated PI Trust Claims paid in number was 1/5 and the malignant to nonmalignant ratio of the Fibreboard Unliquidated Trust Claims in dollars paid was 2/1.

During the reporting period, the Trust paid a total of 10,821 Fibreboard Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 597 malignancy claims and 10,224 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $9.42 million to asbestos victims in settlement of their Fibreboard Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Fibreboard Pre-Petition Liquidated PI Trust Claims paid in number was 1/17 and the malignant to nonmalignant ratio of the Fibreboard Pre-Petition Liquidated Trust Claims in dollars paid was 3/4.

During the reporting period, the Trust received 81,614 Fibreboard Unliquidated PI Trust Claims and paid a total of 72,419 claims. Of the claims paid, there were 13,714 malignancy claims and 58,705 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $350.48 million to asbestos victims in settlement of their Fibreboard Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Fibreboard Unliquidated PI Trust Claims paid in number was 1/5 and the malignant to nonmalignant ratio of the Fibreboard Unliquidated Trust Claims in dollars paid was 3/1.

A summary of the claims processing procedures and policies may be found at the Trust website at www.ocfbasbestostrust.com.

B.  Reconsideration of Payment Percentage

1.  Owens-Corning Sub-Account

Section 4.2 of the Trust Distribution Procedures requires that the Trustees reconsider the payment percentage for a Sub-Account if they deem such reconsideration to be appropriate in order, among other things, to assure that the Trust will be able to pay similarly situated current and future claimants against such Sub-Account as equitably as reasonably possible. After such a reconsideration, on June 4, 2009, the Trustees proposed to the Trust Advisory Committee and the Future Claimants' Representative of the Trust, whose consent to the payment percentage reduction is required by Section 2.2 (f)(iii) of the Trust's Trust Agreement, a reduction to the Payment Percentage applicable to the Owens Corning Sub-Account to 10%. In accordance with Section 4.3 of the Trust's Trust Distribution Procedures, during the pendency of the consent process, the payment percentage for the Owens Corning Sub-Account will be 10%.

As required by Section 4.2 of the Trust Distribution Procedures, the Trustees have based their decision to propose a reduction in the payment percentage for the Owens Corning Sub-Account on current estimates of the number, types and values of present and future claims against the respective Sub-Accounts, the value of assets currently available to the respective Sub-Accounts for claims payments, anticipated processing, administrative and legal expenses of the respective Sub-Accounts, and other material matters that the Trustees and their advisors considered to be reasonably likely to affect the sufficiency of the respective Sub-Account's assets to pay a comparable percentage of full value to all holders of claims against the Sub-Accounts.

2.  Fibreboard Sub-Account

Section 4.2 of the Trust Distribution Procedures requires that the Trustees reconsider the payment percentage for a Sub-Account if they deem such reconsideration to be appropriate in order, among other things, to assure that the Trust will be able to pay similarly situated current and future claimants against such Sub-Account as equitably as reasonably possible. After such a reconsideration, on August 7, 2009, the Trustees proposed to the Trust Advisory Committee and the Future Claimants' Representative of the Trust, whose consent to the payment percentage reduction is required by Section 2.2 (f)(iii) of the Trust's Trust Agreement, a reduction to the Payment Percentage applicable to the Fibreboard Sub-Account to 11%. In accordance with Section 4.3 of the Trust's Trust Distribution Procedures, during the pendency of the consent process the payment percentage for the Fibreboard Sub-Account will be 11%.

As required by Section 4.2 of the Trust Distribution Procedures, the Trustees have based their decision to propose a reduction in the payment percentage for the Fibreboard Sub-Account on current estimates of the number, types and values of present and future claims against the respective Sub-Accounts, the value of assets currently available to the respective Sub-Accounts for claims payments, anticipated processing, administrative and legal expenses of the respective Sub-Accounts, and other material matters that the Trustees and their advisors considered to be reasonably likely to affect the sufficiency of the respective Sub-Account's assets to pay a comparable percentage of full value to all holders of claims against the Sub-Accounts

C.  Financial Information

The Trust's audited financial statements for the Reporting Period are attached hereto as Exhibit "A." The financial statements were audited by Argy, Wiltse & Robinson, LLC.

Date: April 30, 2010                      CAMPBELL & LEVINE, LLC


*/s/ Kathleen Campbell Davis*
Marla Rosoff Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
800 N. King Street, Suite 300
Wilmington, DE 19801
Tel. 302.426.1900
Fax 302.426.9947

-and-

Douglas A. Campbell
Stanley E. Levine
Philip E. Milch
1700 Grant Building
Pittsburgh, PA 15219
Tel. 412.261.0310
Fax 412.261.5066

*Counsel to Owens Corning/Fibreboard Asbestos Personal Injury Trust*