HEARING: August 6, 2010 (9:45 a.m.)
OBJECTIONS: August 4, 2010 (4:00 p.m.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                               :
                                                     : Chapter 11
MOTORS LIQUIDATION COMPANY, *et al.*,                :
*f/k/a* General Motors Corp., *et al.*,              : Case No. 09-50026 (REG)
                                                     :
                Debtors.                             : (Jointly Administered)
                                                     :
------------------------------------------------------- x

# RESPONSE OF THE UNITED STATES TRUSTEE TO MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 363 AUTHORIZING THE DEBTORS TO AMEND THE TERMS OF THEIR ENGAGEMENT LETTER WITH AP SERVICES, LLC[1]

**TO:   THE HONORABLE ROBERT E. GERBER,
         UNITED STATES BANKRUPTCY JUDGE:**

Tracy Hope Davis, the Acting United States Trustee for Region 2 (the **"United States Trustee"**), hereby respectfully files her response (the **"Response"**) and reservation of rights with respect to the Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC (the **"Motion"**). Docket No. 6362. In support of her Response, the United States Trustee represents as follows:

---

[1] The response deadline has been extended to August 4, 2010 (4:00 p.m.) as to the United States Trustee.

## I. PRELIMINARY STATEMENT

The Motion seeks this Court's approval of a substantially-revised compensation scheme for AP Services, LLC ("AP Services"), the crisis manager for Motors Liquidation Company and its affiliated debtors (collectively, the "Debtors"). Although the Debtors have met with counsel to the United States Trustee and attempted to explain the proposed changes to the terms of AP Services' current engagement, the United States trustee still has basic questions about the new terms, particularly with respect to the Debtors' assertions that the new compensation structure is more favorable to the bankruptcy estates than the current compensation structure. In this regard, as discussed below, several features of the proposed compensation scheme need further elaboration to enable a determination on whether the revised compensation structure is a sound exercise of the Debtors' business judgment. The Motion should be supplemented to address these concerns prior to approval. The United States Trustee reserves her right to object to the relief sought in the Motion, pending the Debtors' submission of supplemental information as requested herein.

## II. BACKGROUND

1. On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed voluntary cases under Chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate and manage their business and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

3.  On June 3, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the **"Creditors' Committee"**). Docket No. 356. On November 30, 2009, the United States Trustee filed the First Amended Appointment of Official Committee of Unsecured Creditors. Docket No. 4552.

4.  On March 5, 2010, the United States Trustee appointed the Committee of Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**). Docket No. 5206.

5.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee entered into a stipulation for the appointment of Brady C. Williamson as fee examiner (the **"Fee Examiner"**). Docket No. 4707. Pursuant to the Stipulation and Order With Respect to Appointment of a Fee Examiner (the **"Fee Examiner Order,"** entered December 23 2009), the Court approved the appointment.

### III. THE COMPENSATION PROPOSED FOR AP SERVICES

6.  On July 16, 2010, the Debtors filed the Motion. The new compensation scheme proposed for AP Services generally consists of two forms of remuneration. The first form of compensation consists of hourly fees. The second form consists of so-called "discretionary fees," which are categorized into three tranches, with fees in each tranche to be earned by AP Services upon the occurrence of a specific event. A table comparing the features current and proposed compensation is attached hereto as Exhibit A.

7.  <u>Hourly Fees</u>. AP Services is proposing that its hourly rates for the year 2010 be made retroactive to July 10, 2009. These fees, which the firm estimates at approximately $5.3 Million, appear to be payable upon the approval of the Application. Under the terms of its

currently-approved retention, however, AP Services has previously-agreed to reduce its hourly fees to 85 percent for the first $60.0 Million of fees incurred by the firm (calculated at 100 percent), with fees chargeable at 75 percent after that. Motion, at 6.

8. <u>Discretionary Fees</u>.

a. <u>Claims Pool Compensation</u>. The first type of discretionary fee proposed to be earned by AP Services is based on the size of the unsecured claims pool in the Debtors' cases. This fee has not been changed from the current terms of AP Services' compensation. If the pool is less than $35.0 Billion, the discretionary fee is $5.0 Million. If the pool falls between $35.0 Billion and less than $42.0 Billion, the fee is to be adjusted proportionately downwards. And, if the unsecured claims pool equals or exceeds $42.0 Billion, no claims-based discretionary fee will be payable to AP Services. Motion, at 4 and 6.

b. <u>Confirmation-Based Compensation</u>. The second type of discretionary fee for AP Services is based on confirmation of a plan of reorganization. The fee is now called an "Incentive Payment." At such time as a confirmed plan becomes effective, AP Services shall earn and be paid a fee of $7.0 Million. Motion, at 6-7.

This tranche of discretionary fees is a departure from AP Services' current fee structure. The current scheme calls for payment of a confirmation-based fee in the substantially-lower amount of $2.5 Million, if a plan of reorganization of the Debtors is confirmed on or before May 28, 2010. That date passed without the filing of a plan. Motion, at 4.

AP Services has raised the amount of compensation tied to confirmation of a plan and called it an "Incentive Payment," in lieu of two current "Incentive Payments" slated for elimination. Motion, at 4 and 6. With respect to the first of the current Incentive Payments, if

priority claims asserted against the Debtors are reduced by $25.0 Million or more (based on an original priority claims estimate of $100.0 Million), a fee equal to five percent of the amount of priority claims reductions exceeding $25.0 million is payable to AP Services (to be paid from funds otherwise returnable to the U.S. Treasury under the DIP facility approved in these cases). Motion, at 4-5.  Under the second incentive payment to be eliminated, AP Services would receive 15 percent of every dollar returned to the U.S. Treasury under the DIP facility.  Motion, at 5.

          c.    <u>Incentive Payments</u>.  The third type of discretionary fee proposed for AP Services is tied to the distribution of stocks and warrants received by the Debtors from their sale of assets to "New GM."  Under the new proposal, when the Debtors' unsecured creditors receive 70 percent or more of each of the stock and warrants of New GM, AP Services is to be paid a fee of $2.5 Million.  Motion, at 6.  Under the current compensation structure, this same amount is payable if unsecured creditors received the same percentage of stocks and warrants within 60 days of the effective date of a plan.  Motion, at 4.  Thus, the current proposal has essentially eliminated the current 60-day trigger.

## IV. RESPONSE

The Second Circuit has held that, in applying section 363 of the Bankruptcy Code, the Court must find that the debtor's proposed use of estate assets is based upon a sound exercise of the debtor's business judgment.  <u>In re Chateaugay Corp.</u>, 973 F.2d 141 (2d Cir.1992).  In this regard, the Court must find from the evidence presented that a good business reason exists to grant the relief requested.  <u>Id</u>.; <u>Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)</u> 722 F.2d 1063, 1071 (2d Cir. 1983).

In several important respects, however, the Motion does not satisfy the Debtors' burden of proof regarding their exercise of business judgment. As set forth above in para. 7, part of AP Services' new compensation scheme provides for a retroactive change in the firm's previously-discounted hourly fee, which provides the firm with an additional estimated $5.3 Million in hourly compensation. It is not clear how the Debtors arrived at this $5.3 Million figure. In light of the public interest in these bankruptcy cases, of the substantial period of time during which parties in interest have relied on AP Services' initial discount of fees, and of the Court's reliance on that discount in initially approving that and all other features of AP Services' current retention, it is imperative that this calculation be made public.[2] Because the full impact of the retroactive rate change cannot be assessed until such time as the Debtors confirm a plan of reorganization, the Debtors should also explain how and why this specific rate increase is of benefit to the bankruptcy estates.

Another part of the proposed compensation scheme provides AP Services with a new $7.0 million incentive payment whenever a plan of reorganization may go effective, in place of a prior confirmation incentive payment of $2.5 Million, and in place of other current incentive payments. As set forth above in more detail in para. 8, those other incentive payments are based on reductions of priority claims, and also call for payment of 15 percent of each dollar returned to the U.S. Treasury under the DIP facility. In order for parties in interest to determine the impact of these changes from the current version of AP Services' retention, and to determine the depth of the incentive payments being replaced, it is necessary to determine the extent to which priority

---

[2] In response to the request of the Office of the United States Trustee, AP Services has provided a calculation of the increased fees. The United States Trustee recommends that the calculation (or a similar version) be filed, and made part of the public record.

claims are asserted against the Debtors, the extent to which priority claims are reduced, and the best information currently available regarding the amount of money projected to be returned to the U.S. Treasury.  In this regard, the disclosure statement, which will shed light on all of the foregoing, will be critical in examining these features of AP Services' revised retention.  Alternatively, the Debtors should undertake a supplemental filing setting forth the foregoing information concerning priority claims and return to the U.S. Treasury.

In addition to the foregoing, substantial uncertainty surrounds the Debtors' assertion that "the incentive payments provided for in the Third Amendment are likely to result in 35 percent less than would be paid to [AP Services] if the Third Amendment did not become effective." Motion, ¶ 13, at 8.  Similar to the concerns of the United States Trustee with respect to the increase in the hourly fee now proposed by the firm, and with respect to priority claims and returns to the U.S. Treasury, how AP Services arrived at this 35 percent reduction, and the incentive fees at issue, has not been publicly disclosed.  These features of the new compensation structure proposed for AP Services should be set forth with clarity in order for the Motion to fulfill the Debtors' burdens under Bankruptcy Code § 363.[3]

---

[3] In response to the request of the Office of the United States Trustee, AP Services has delivered copies of a calculation of this 35 percent figure.  That calculation, however, should be filed, and made part of the public record.  Furthermore, because the 35 percent figure is comprised of several features (*see* Exhibit A hereto), it should be explained in detail at the hearing on the Motion.

## V. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court consider this Response, deny the Motion at this time, reserve the United States Trustee's rights to object to the Motion as amended, and grant such other relief as is just.

Dated: New York, New York
       August 4, 2010

                                        Respectfully submitted,
                                        TRACY HOPE DAVIS
                                        ACTING UNITED STATES TRUSTEE

                              *By:*   *Andrew D. Velez-Rivera*
                                        Trial Attorney
                                        33 Whitehall Street, 21st Floor
                                        New York, New York 10004
                                        Tel. No. (212) 510-0500
                                        Fax No. (212) 668-2255

# EXHIBIT A

| Component | Old Compensation - AP Services | New Compensation - AP Services |
|---|---|---|
| Hourly Fees | Post Effective-Date hourly fees reduced:<br>(1) down to 85%, for first $60 M of fees incurred (calculated at 100%);<br>(2) down to 75% after that. | AP Services' hourly rates for 2010 made retroactive to July 10, 2009. Payable upon approval of new terms, and estimated at $5.3 million. |
| Discretionary Fee | Consists of three separate "discretionary fees," triggered by three different events and measured differently.<br><br>Size of Unsecured Claims Pool<br>(1) If pool is under $35 B, fee is $5 M;<br>(2) If pool b/w $35 B and ≺$42 B, fee adjusted proportionately downwards;<br>(3) If pool $42 B or more, no fee.<br><br>Confirmation of Plan<br>If Plan confirmed on or before May 28, 2010, fee was $2.5 M.<br><br>Distribution of Stocks & Warrants Received by MLC From the Sale<br>If unsecured creditors receive 70% or more of each of stock and warrants of New GM w/in 60 days of the Effective Date, fee was $2.5 M. | Changed to two separate fees triggered by two separate events:<br><br>Size of Unsecured Claims Pool<br>No change.<br><br><br><br><br>Confirmation of Plan<br>Re-named as "Incentive Payment" (*see* below) and fee raised. Now, whenever Plan goes effective, fee is $7 M.<br><br>Distribution of Stocks & Warrants Received by MLC From the Sale<br>When unsecured creditors receive 70% or more of each of stock and warrants of New GM, fee is $2.5 M. Sixty-day trigger eliminated. |
| Incentive Payments | Two triggers:<br><br>Priority Claims Reductions<br>If priority claims (initially estimated at $100 M) reduced by $25 M or more, fee is 5% of reductions over $25 M, from money otherwise returnable to U.S. Treasury under the DIP facility.<br><br>Wind-Down Costs<br>AP gets 15% of each dollar returned under DIP facility. | Incentive payments eliminated. Replaced with $7 M fee when plan goes effective. *See* above. |