HEARING DATE AND TIME:  August 6, 2010 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                              :    **Chapter 11 Case No.**
                                       :
**MOTORS LIQUIDATION COMPANY,** *et al.*,   :    **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*   :
                                       :
                         Debtors.      :    **(Jointly Administered)**
                                       :
------------------------------------------------------------x

**REPLY OF MOTORS LIQUIDATION COMPANY TO OBJECTION OF
UNITED STATES TRUSTEE, OBJECTION OF UNSECURED CREDITORS
COMMITTEE, AND  THE RESPONSE AND MOTION TO DEFER OF FEE
EXAMINER TO (A) APPLICATION BY AP SERVICES, LLC FOR
APPROVAL OF SUCCESS FEE AND (B) MOTION BY DEBTORS TO
AMEND TERMS OF THEIR ENGAGEMENT LETTER WITH AP SERVICES, LLC**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), hereby files this

reply in support of the Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363

Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services,

LLC [Docket No. 6362] (the "**Amendment Motion**") and the Application by AP Services, LLC

as Crisis Managers to the Debtors For Approval of the Success Fee [Docket No. 6363] ("**Success Fee Application**").

## Objections Should Be Overruled

1.     Following the sale of substantially all their assets in July 2009 (the "**363 Transaction**"), the Debtors were left with no employees. The Debtors rely on AP Services, LLC ("**APS**") to manage all of their affairs and the process of winding down their estates. But they are not without oversight. MLC maintains an independent board of directors (the "**Board**") made up of highly respected restructuring and industry professionals. All matters of APS's compensation are fully vetted with and approved by the Board and all of APS's time records are routinely and carefully reviewed by the Board. In addition, as required by its retention order, APS files with the Court and serves upon the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") and the statutory committee of general unsecured creditors (the "**Committee**") a monthly staffing report identifying the individuals working in the matter, their hours, and a description of the services being provided. In addition, APS files with the Court a quarterly report of compensation earned which is subject to a twenty-day objection period.

2.     The U.S. Trustee argues that it must review all of APS's time records to determine the reasonableness of the Success Fee.[1] With respect to the Success Fee, the only relevant time records are those relating to the period from June 1, 2009, the date the Debtors commenced their chapter 11 cases, to July 10, 2009, the closing date of the 363 Transaction. Nevertheless, on July 29, 2010, the U.S. Trustee requested additional information, including all

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in either the Success Fee Application or the Amendment Motion.

of APS's time records.  That same day, the Debtors provided to the U.S. Trustee all time records from July 1, 2009 through the last monthly invoices, comprising approximately 4,000 pages.  The Debtors recently provided APS's June 2009 invoice and time records.

3. The U.S. Trustee's objection with respect to the Third Amendment is equally curious.  On July 29, 2010, the U.S. Trustee also asked for detail on the economics of the Third Amendment.  This followed an in-person meeting among the U.S. Trustee, the Debtors, and APS on May 27, 2010 where APS reviewed and explained the proposed amendments in detail, and another in-person meeting with the U.S. Trustee on July 15, 2010 after the Amendment Motion was filed, at which APS provided additional economic analyses and offered to answer any remaining questions or concerns.  Additional information was requested by the U.S. Trustee on July 29th, and on Friday, July 30, 2010, the Debtors transmitted to the U.S. Trustee the additional analyses annexed hereto as **Exhibit "A."**  These documents were directly responsive to the inquiry regarding the comparison of costs between the old and new arrangements and demonstrate the approximately $6 million of expected savings to the Debtors' estates under the Third Amendment assuming results fall within the midpoint of expected ranges.  The Debtors believe that all of the U.S. Trustee's questions have been addressed and are not aware of any substantive objections to the Amendment Motion or the Success Fee Application.

4. The Fee Examiner's response is not a formal objection but rather a request to defer consideration of these matters.  The Debtors do not see the benefit to any party of a further delay.  Despite an initial delay in filing the Motion due to the timing of final approval by the United States Department of the Treasury (the "**U.S. Treasury**"),[2] the party funding the fees

---

[2] It should be noted that the genesis of the Third Amendment began upon the request of the U.S. Treasury in early 2010.

in these chapter 11 cases, and other stakeholders of the agreement memorializing the Third Amendment, APS has been operating with the understanding that the Third Amendment would be implemented since March 2010.  At this juncture, all parties should have all of the necessary information pertinent to the matter before the Court and the status of APS's retention should be resolved.

5. The Fee Examiner has not raised any specific concerns and, in fact, concedes that the Amendment Motion may not properly be in his area of review.  Nevertheless, at the request of the Fee Examiner, the Debtors provided the documents contained in Exhibit "A" on Friday, July 30, 2010.

6. With respect to the Committee's response requesting public disclosure by APS regarding the status of these chapter 11 cases, the Debtors agree with the Committee that public disclosure is important but disagrees that APS, in its capacity as a firm supplying interim management, should be issuing any reports regarding case status.  The Debtors will continue to work cooperatively with the Committee to explore potential avenues of public disclosure by the Debtors and the Committee regarding the status of these cases that are helpful and not potentially misleading.

WHEREFORE, the Debtors respectfully request that the Success Fee Application and the Amendment Motion be granted in all respects.

Dated: New York, New York
August 5, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# **EXHIBIT A**

US_ACTIVE:\43466942\05\72240.0639

| PROPOSED TO U.S. TREASURY - MARCH 2010 | | | | | | |
|---|---|---|---|---|---|---|
| ALIXPARTNERS<br>Incentive Fee Proposal to US Treasury<br>March 25, 2010<br>(millions of US dollars) | | | | | | |
| | Potential Outcome | | | Potential Outcome | | |
| Existing Agreement | Low | High | Proposed Revisions | Low | High | Comments |
| Hourly Rate Discount<br>   85% to $60 million in total fees<br>   75% above $60 million | (10.0) | (9.0) | 100% Effective Retroactively | | | Approximately $5.5 million thru 3/31/10<br>Discount estimate at $9 to $10 million thru Dec. 2010 |
| Unsecured Claims<br>   Less than $35 billion = $5 million<br>   $35 to $42 billion = $2.5 million<br>   More than $42 billion = $0 | 2.5 | 5.0 | No change other than to clarify that<br>between $35 and $42 billion is pro rata | 2.5 | 5.0 | |
| Confirm POR by 5/28/10 | 0.0 | 2.5 | Eliminate | | | Time driven date may incent behavior that does<br>not benefit the estate or the US Treasury |
| Distribution of 70% of stock and<br>warrants within 60 days of<br>Effective Date of POR | 2.5 | 2.5 | No change; appropriate for creditors | 2.5 | 2.5 | |
| Reduction of Priority Claims from<br>$100 million<br>   5% of excess over $25 million | 3.0 | 3.5 | Eliminate | | | Estimate $85 to $95 million returned |
| Reduction of all other Wind-Down<br>Costs<br>   15% of amounts returned to UST<br>   million at Effective Date(range of<br>   $16 million to $106 million)<br>   NPV of 15% on funds returned in out years<br>   (range of $124 million to $59 million)<br>   Sub total | <br><br><br><br>2.4<br><br>12.6<br>15.0 | <br><br><br><br>15.9<br><br>5.7<br>21.6 | Fixed bonus payable upon confirmation<br>of POR | 7.0<br><br><br><br><br><br>7.0 | 7.0<br><br><br><br><br><br>7.0 | Estimated assuming intial funding for remediation<br>ranges from $460 (High) to $550 (Low) including a<br>range of monies for settlement of alledged<br>administrative liabilities at 9 sites. Funds returned in<br>High case results in significantly higher return of<br>funds to UST at closing. The Low case has a lower<br>amount returned and it is shifted to the out years. |
| **Total Range of Original Terms** | **13.0** | **26.1** | **Total Range of Proposed Revised Terms** | **12.0** | **14.5** | |
| *Memo Only:*<br>Previously court approved incentive<br>fee payable July 2010 | 6.5 | 6.5 | No change | 6.5 | 6.5 | Previously earned and listed here for full disclosure |

ALIXPARTNERS
Summary of Discounts to Invoices Billed
July 10, 2009 to April 30, 2010

| Period | Fees at Regular Billing Rates | Discounted Fees Billed | Reduction in Fees |
|---|---|---|---|
| July 10 -31 | $ 3,182,538.92 | $ 2,705,158.08 | $ 477,380.84 |
| August | 4,578,728.89 | 3,891,919.56 | 686,809.33 |
| September | 4,639,438.94 | 3,943,523.10 | 695,915.84 |
| October | 4,728,992.94 | 4,019,644.00 | 709,348.94 |
| November | 3,613,719.32 | 3,071,661.42 | 542,057.90 |
| December | 3,581,194.86 | 3,044,015.63 | 537,179.23 |
| January | 3,621,376.47 | 3,078,170.00 | 543,206.47 |
| February | 3,277,574.66 | 2,785,938.46 | 491,636.20 |
| March | 3,865,703.98 | 3,285,548.39 | 579,802.66 |
| Subtotal thru March | $ 35,089,268.98 | $ 29,825,578.64 | $ 5,263,337.41 |
| April | 3,292,866.67 | 2,798,936.67 | 493,930.00 |
| Total | $ 38,382,135.65 | $ 32,624,515.31 | $ 5,757,267.41 |