Harvey R. Milller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                       :
In re                                  :      Chapter 11 Case No.
                                       :
MOTORS LIQUIDATION COMPANY, et al.,    :      09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                       :
                        Debtors.       :      (Jointly Administered)
                                       :
-----------------------------------------------------------------x
```

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**THIRD INTERIM FEE APPLICATION**

| Name of Applicant: | Weil, Gotshal & Manges LLP |
|---|---|
| | |
| Time Period: | February 1, 2010 through and including May 31, 2010 |
| | |
| Role in the Case: | Attorneys for the Debtors and Debtors in Possession |
| | |
| Current Application: | Total Fees Requested:  $5,316,122.75 |
| | Total Expenses Requested:  $141,489.52 |
| | |
| Prior Applications: | First Interim Fee Application, filed January 13, 2010 [Docket No. 4803], for the period June 1, 2009 through and including September 30, 2009<br>    Total Fees & Expenses Requested:  $18,506,169.92<br>    Total Fees & Expenses Allowed:  $18,236,706.92 |

| | Second Interim Fee Application, filed March 17, 2010 [Docket No. 5295], for the period October 1, 2009 through and including January 31, 2010 |
| --- | --- |
| | Total Fees & Expenses Requested:  $6,302,627.06 |
| | Total Fees & Expenses Allowed:  $6,181,559.86 |

**SUMMARY OF THIRD INTERIM FEE APPLICATION OF
WEIL, GOTSHAL & MANGES LLP FOR SERVICES RENDERED
FOR THE PERIOD FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1] Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSEL:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00 | 75.10 | $ 74,349.00 |
| Berz, David R. | LR | 1973 | $900.00 | 658.40 | $ 592,560.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 30.40 | $ 30,096.00 |
| Guy, Ray T. | LR | 1976 | $885.00 | 70.10 | $ 59,162.25 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 230.70 | $ 219,730.50 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 81.90 | $ 81,081.00 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 34.20 | $ 33,858.00 |
| Nave, Douglas A.(London Office) | LR | 1985 | $1,000.00 | 17.50 | $ 17,500.00 |
| Kam, Michael K. | TAX | 1987 | $900.00 | 11.30 | $ 10,170.00 |
| Beagles, Vance L. | LR | 1993 | $845.00 | 190.10 | $ 141,664.25 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 338.10 | $ 304,290.00 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 128.40 | $ 120,298.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $845.00 | 11.40 | $ 9,633.00 |
| Albanese, Anthony J. | LR | 1997 | $820.00 | 12.00 | $ 9,840.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 54.40 | $ 38,961.00 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 72.80 | $ 52,780.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 13.00 | $ 9,360.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 524.50 | $ 367,150.00 |
| Other Partners and Counsel (fewer than 10 hours per person) | | | $700 - $990.00 | 48.30 | $ 43,565.50 |
| **Total Partners and Counsel** | | | | **2,602.60** | **$ 2,216,049.00** |

[1] BFR- Business Finance & Restructuring,  CORP – Corporate,  LR – Litigation/Regulatory,  TAX – Tax,      S – Securitisation,  LS – Litigation Support,  * Not yet admitted to the bar.

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the first day of the month for each billing period.

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED | | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| ASSOCIATES: | Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | | | |
| Smith, Leslie S. | CORP | 1995 | $695.00 | 194.30 | $ 135,038.50 |
| Heyliger, Adelaja | CORP | 1998 | $665.00 | 49.70 | $ 33,050.50 |
| Dummer, David W. | LR | 1999 | $695.00 | 50.80 | $ 32,526.00 |
| Shiffman, Jonathan | LR | 2000 | $695.00 | 34.90 | $ 24,255.50 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 62.30 | $ 42,987.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 235.90 | $ 156,374.75 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 40.10 | $ 26,666.50 |
| Eckols, Erin D. | LR | 2003 | $665.00 | 54.10 | $ 35,976.50 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 260.30 | $ 154,878.50 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 37.60 | $ 25,004.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 103.90 | $ 65,457.00 |
| Goodman, Max A. | TAX | 2004 | $665.00 | 49.90 | $ 33,183.50 |
| Kotcher, Liani G. | LR | 2004 | $630.00 | 62.60 | $ 39,438.00 |
| Greifeneder, Stefanie (Munich Office) | LR | 2004 | $470.00 | 10.30 | $ 4,841.00 |
| Godhard, Peter | CORP | 2005 | $550.00 | 13.00 | $ 7,150.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 477.90 | $ 284,350.50 |
| Christensen, Evert J. | LR | 2007 | $515.00 | 29.40 | $ 15,141.00 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 49.80 | $ 27,390.00 |
| O'Connor, John T. | LR | 2007 | $515.00 | 166.90 | $ 85,953.50 |
| Wine, Jennifer L. | LR | 2007 | $550.00 | 62.60 | $ 34,430.00 |
| Benfield, Brianna N. | LR | 2008 | $455.00 | 432.70 | $ 194,944.75 |
| Burns, Gregory C. | TAX | 2008 | $550.00 | 69.00 | $ 37,950.00 |
| Laken, Lacey | BFR | 2008 | $515.00 | 360.20 | $ 185,503.00 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 56.90 | $ 29,303.50 |
| Pruzansky, Jason | LR | 2008 | $515.00 | 19.30 | $ 9,939.50 |
| Arons, Andrew | CORP | 2009 | $455.00 | 155.90 | $ 70,934.50 |
| Liroff, Alexander R. | CORP | 2009 | $395.00 | 19.60 | $ 7,742.00 |
| Falabella, Pablo | BFR | 2009 | $515.00 | 733.60 | $ 377,572.25 |

| Falabella, Pablo | BFR | 2009 | $415.00 | 1.50 | $ | 622.50 |
|---|---|---|---|---|---|---|
| Hatcher, R. Todd T. | TAX | 2009 | $455.00 | 14.70 | $ | 6,688.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 75.90 | $ | 34,534.50 |
| Vermynck, Alexandre (Paris Office) | LR | 2009 | $275.00 | 23.00 | $ | 6,325.00 |
| Brooks, Russell | BFR | 2010 | $455.00 | 628.90 | $ | 285,694.50 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 132.80 | $ | 52,456.00 |
| Law, Erin J. | LR | 2000 | $695.00 | 104.30 | $ | 72,488.50 |
| Griffiths, David N. | BFR | 2007 | $515.00 | 21.70 | $ | 11,175.50 |
| Byeff, David P. | LR | 2009 | $455.00 | 110.60 | $ | 50,323.00 |
| Limmer, Sam | CORP | 2010 | $395.00 | 12.20 | $ | 4,819.00 |
| Other Associates (fewer than 10 hours per person) | | | $395 - $695.00 | 89.10 | $ | 48,700.00 |
| **Total Associates** | | | | **5,108.20** | **$** | **2,751,808.75** |

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTALf COMPENSATION |
|---|---|---|---|---|
| **LAW CLERKS**: | | | | |
| Rosen, Chelsea | BFR – N/A | $225.00 | 20.50 | $ 4,612.50 |
| Scetbon, Benjamin (Paris Office) | LR – N/A | $180.00 | 10.00 | $ 1,800.00 |
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 70.50 | $ 12,690.00 |
| Rapp, Alexis (Paris Office) | BFR – N/A | $180.00 | 14.00 | $ 2,520.00 |
| **Total Law Clerks** | | | **115.00** | **$ 21,622.50** |

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| **Paralegals, Clerks, Library Staff and Other Non-Legal Staff:** | | | | | |
| Lee, Kathleen | BFR – N/A | $275.00 | 107.90 | $ | 29,672.50 |
| Shrestha, Christine | CORP – N/A | $275.00 | 57.20 | $ | 15,730.00 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 25.10 | $ | 6,526.00 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 95.70 | $ | 24,882.00 |
| Ellsworth, John A. | CORP – N/A | $260.00 | 13.50 | $ | 3,510.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 27.50 | $ | 7,150.00 |
| Burns, Jo N. | LR – N/A | $260.00 | 16.20 | $ | 4,212.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 10.40 | $ | 2,600.00 |
| Flinn, Deborah C. | LR – N/A | $240.00 | 10.10 | $ | 2,424,00 |
| George, Camille A. | BFR – N/A | $240.00 | 30.00 | $ | 7,200.00 |
| Roberts, Sarah B. | BFR – N/A | $230.00 | 203.60 | $ | 46,828.00 |
| Schell, Peter | CORP – N/A | $225.00 | 79.30 | $ | 17,842.50 |
| Maravilla, Mel C. | CORP – N/A | $225.00 | 38.70 | $ | 8,707.50 |
| Aliseo, Nicole K. | BFR – N/A | $210.00 | 87.30 | $ | 18,333.00 |
| Chettri, Anupama | LR – N/A | $200.00 | 15.00 | $ | 3,000.00 |
| Potter, Lougran | LR – N/A | $200.00 | 24.30 | $ | 4,860.00 |
| Rodriguez, Ilusion | BFR – N/A | $200.00 | 308.20 | $ | 61,640.00 |
| Prindle, Kaitlin C. | BFR – N/A | $200.00 | 36.00 | $ | 7,200.00 |
| Castillero, Francene S. | LR – N/A | $190.00 | 18.30 | $ | 3,477.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 26.80 | $ | 5,092.00 |
| Aliseo, Nicole K. | BFR – N/A | $180.00 | 13.40 | $ | 2,412.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 75.60 | $ | 13,608.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 28.00 | $ | 4,760.00 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 75.00 | $ | 10,500.00 |
| Other Paraprofessionals and Other Staff (fewer than 10 hours per person) | | $75 - $275.00 | 72.50 | $ | 14,476.00 |
| **Total Paraprofessionals and Other Staff** | | | **1,495.60** | **$** | **326,642.50** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $851.48 | 2,602.60 | $    2,216,049.00 |
| Associates | $538.70 | 5,108.20 | $    2,751,808.75 |
| Law Clerks | $188.02 | 115.00 | $        21,622.50 |
| Paraprofessionals and Other Staff | $218.40 | 1,495.60 | $       326,642.50 |
| **Total Fees Incurred** | | 9,321.40 | $    5,316,122.75 |
| **Blended Attorney Rate (excluding law clerks)** | **$644.27** | | |
| | | | |
| **Grand Total Fees Requested** | | **9,321.40** | **$    5,316,122.75** |

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**THIRD APPLICATION OF WEIL, GOTSHAL & MANGES LLP, AS**
**ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1 2010 THROUGH MAY 31, 2010**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Background ................................................................................................................ 4

Summary of Professional Compensation and Reimbursement of Expenses Requested ............... 5

Summary of Services Performed by WGM During the Third Compensation Period ................... 8

Actual and Necessary Disbursements of WGM ......................................................... 25

The Requested Compensation Should Be Allowed .................................................... 27

Notice ....................................................................................................................... 28

Conclusion ............................................................................................................... 29

# TABLE OF AUTHORITIES

**Statutes & Rules**                                                                                          **Page**

11 U.S.C. § 327 .................................................................................................................27

11 U.S.C. § 330 .................................................................................................................27

11 U.S.C. § 330(a) ..............................................................................................................1

11 U.S.C. § 330(a)(1) ........................................................................................................27

11 U.S.C. § 330(a)(3) ........................................................................................................27

11 U.S.C. § 331 .............................................................................................................1, 27

11 U.S.C. § 363(b) ..............................................................................................................2

Fed. R. Bank. P. 1015(c) ..................................................................................................28

Fed. R. Bank. P. 2016 ........................................................................................................1

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("**WGM**"), attorneys for Motors Liquidation

Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors in these chapter

11 cases, as debtors and debtors in possession (together with MLC, the "**Debtors**"), for its third

application (the "**Application**"), pursuant to sections 330(a) and 331 of title 11, United States

Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), for the interim allowance of compensation for professional services

performed by WGM for the period commencing February 1, 2010 through and including May

31, 2010 (the "**Third Compensation Period**"), and for reimbursement of its actual and

necessary expenses incurred during the Third Compensation Period, respectfully represents:

**<u>Preliminary Statement</u>**

1.      Through WGM's efforts during the Third Compensation Period, the

Debtors have made substantial progress implementing strategies and procedures to efficiently and

economically resolve these cases, address the approximately 68,000 proofs of claim that have

been filed, and maximize recoveries to creditors.  Specifically, WGM's advice and services were

critical in enabling the Debtors to obtain numerous forms of relief important to the administration

of these cases, including several significant achievements, such as:

- orders granting seven omnibus objections to claims, expunging approximately 660 proofs of claim, aggregating approximately $15.7 billion;

- a supplemental order approving alternative dispute resolution procedures, which provides for the inclusion of certain unliquidated/litigation claims under the procedures;

- an order disallowing and expunging in its entirety the $86 billion proof of claim of Rudolph V. Towns;

- a stipulation and agreed order resulting in the Debtors' assumption of certain insurance policies and agreements of ACE American Insurance Company;

- a withdrawal of proof of claim filed by Susan B. Angell and Prudence Reid, with a total claim value of $615 million;

- an order disallowing and expunging two proofs of claim filed by Lafonza Earl Washington, with a total claim value of $1.6 billion;

- an order disallowing and expunging proofs of claim filed by Theresa L. Marchbanks with a total claim value of $2.5 billion;

- a stipulation and order denying Sang Chul Lee and Dukson Lee from filing a late-filed claim for $40 million;

- orders by the United States District Court for the Southern District of New York (the "**District Court**") affirming the order (the "**363 Transaction Order**") approving the sale of substantially all the Debtors' assets pursuant to section 363(b) of the Bankruptcy Code to NGMCO, Inc. (n/k/a General Motors, LLC), a purchaser sponsored by the United States Department of the Treasury ("**U.S. Treasury**") (the "**363 Transaction**") with respect to appeals of the 363 Transaction filed by (1) Callan Campbell, Kevin Chadwick, *et al.*, Edwin Agosto, Kevin Junso, *et al.*, and Joseph Berlingieri (collectively, the "**Individual Accident Litigants**") (Judge Buchwald) and (2) Oliver Addison Parker (Judge Sweet);

- an order extending the Debtors' exclusive periods to file and solicit acceptances of a chapter 11 plan through and including September 27, 2010 and November 29, 2010, respectively; and

- orders denying several requests for relief from the automatic stay.

These critical achievements and others will permit the Debtors to continue to make significant progress in the administration of these cases, are key to the plan and disclosure statement process, and will facilitate the successful administration of these chapter 11 cases.

2.      During the Third Compensation Period, WGM continued to formulate various scenarios and strategies in conjunction with AP Services, LLC ("**APS**"), the Debtors' interim managers and restructuring experts, regarding a chapter 11 plan for the Debtors. In that regard, WGM expended substantial resources researching, investigating, and counseling the Debtors on issues that will have a significant impact on the Debtors' chapter 11 plan and how it

will be implemented.  Indeed, during the Third Compensation Period the plan and disclosure statement drafting process has begun in earnest and is well on its way.

3.    In addition to these significant accomplishments, during the Third Compensation Period, WGM was required to prepare, review, or respond to the more than 1,000 motions, notices, applications, objections, briefs, orders, and other pleadings in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented.  Further, during the Third Compensation Period, WGM participated in seven court hearings.  Certain of the pleadings addressed or filed by the Debtors included:

- responding to three motions for relief from the automatic stay;

- drafting and filing seven omnibus objections to claims;

- drafting and filing a motion to sell the Wilmington Assembly Plant to Fisker Automotive, Inc. for $20,000,000;

- drafting and filing a motion to object to the proof of claim filed by New United Motor Manufacturing, Inc. ("**NUMMI**"), with an aggregate claim value of $500 million;

- achieving the withdrawal of an appeal of the 363 Transaction in the District Court by Jin Ah Lee, Jungil Lee, Sang Chul Lee, and Dukson Lee (Judge Batts);

- drafting and filing a motion to appoint Dean M. Trafelet as legal representative for future asbestos personal injury claimants ("**Future Claims Representative**"); and

- drafting and filing two omnibus motions to reject executory contracts and unexpired leases of nonresidential real property.

4.    Because regular and open communication with creditors is a fundamental goal of the Debtors, throughout the Third Compensation Period, WGM continued to represent the Debtors in their formal and informal meetings and conferences with the U.S. Trustee, the statutory committee of general unsecured creditors (the "**Creditors' Committee**"), the statutory committee of unsecured creditors holding asbestos-related claims, and the Future Claims Representative, and

their respective professionals and in numerous meetings or communications with individual

claimants and parties in interest.  Additionally, the Debtors and WGM have continued to make

every effort to keep such entities informed of developments in these cases on a real-time basis

through their published websites, www.motorsliquidation.com and

www.motorsliquidationdocket.com.  Further, together with the chief executive officer, Al Koch,

and other APS temporary employees, WGM has continued to respond to direct inquiries from

numerous creditors, many of which have been received through a hotline WGM established for

MLC-related inquiries.

     5. WGM's efforts to advise and represent the Debtors in all facets of these

cases and with respect to the affairs of the entire MLC enterprise during the Third Compensation

Period were necessary and of substantial benefit to the administration of the chapter 11 estates.

The professional services performed and expenses incurred were actual and necessary to preserve

and protect the value of the Debtors' assets.  In the perspective of the complexity and scale of

these cases, WGM's charges for professional services performed and expenses incurred are

reasonable under the applicable standards.  WGM respectfully asks that the Court grant the

Application and allow interim compensation for professional services performed and

reimbursement for expenses as requested.

## Background

     6. On June 12, 2009, the Debtors filed an application to employ WGM as their

attorneys [Docket No. 949].  No objections were filed to WGM's retention, and, pursuant to an

order, dated June 25, 2009, the Debtors were authorized to retain WGM as their attorneys to

render legal services in the prosecution of their chapter 11 cases [Docket No. 2546].

7.      On December 23, 2009, the Court appointed Brady C. Williamson as the

Fee Examiner (the "**Fee Examiner**"), pursuant to the Stipulation and Order with Respect to

Appointment of a Fee Examiner [Docket No. 4708].

8.      The Debtors have advised WGM that, to date, all quarterly fees due to the

U.S. Trustee have been paid.

9.      The Debtors have advised WGM that, to date, all monthly operating reports

have been filed.

**Summary of Professional Compensation
and Reimbursement of Expenses Requested**

10.     WGM seeks allowance of interim compensation for professional services

performed during the Third Compensation Period in the amount of $5,316,122.75, and for

reimbursement of expenses incurred in connection with the rendition of such services in the

amount of $141,489.52.  During the Third Compensation Period, WGM attorneys and

paraprofessionals expended a total of approximately 9,300 hours in connection with the necessary

services performed.

11.     This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on November 25, 2009 (the "**Local Guidelines**"), the

U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines**"), and

the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the

"**Administrative Order**," and together with the Local Guidelines and the UST Guidelines, the

"**Guidelines**").  Pursuant to the UST Guidelines, the Debtors have been provided with a copy of

the Application for their review and will have completed their review of the same prior to the

hearing on the Application.

12.      In accordance with the Administrative Order, WGM received payments

totaling $1,096,987.86 for the Third Compensation Period, consisting of $1,060,679.22,

representing 80% of the fees, and $36,308.64, representing 100% of the expenses, invoiced for

February 2010.  WGM now seeks payment[1] by the Debtors of all amounts allowed but previously

held back pursuant to the Administrative Order.  WGM has not yet received payment for either

the fees or the expenses invoiced for March 2010, April 2010 or May 2010.

13.      There is no agreement or understanding between WGM and any other

person, other than members of the firm, for the sharing of compensation to be received for

services rendered in these cases.  Except as explained in the following paragraph, during the Third

Compensation Period, other than pursuant to the Administrative Order, WGM has received no

payment and no promises of payment from any source for services rendered or to be rendered in

any capacity whatsoever in connection with the matters covered by this Application.

14.      Prior to the commencement of these chapter 11 cases, General Motors

Corporation ("**GM**," now know as Motors Liquidation Company) paid WGM an aggregate

amount of approximately $54 million in respect of professional services rendered and as retainers

for services to be rendered and for disbursements incurred and expenses advanced for

disbursements to be incurred in connection with (i) GM's efforts prior to the commencement of

these chapter 11 cases to restructure its obligations out of court, (ii) the preparation for GM's

---

[1] New GM agreed to pay 50% of the fees and expenses associated with the services rendered by WGM in
connection with the appeals of this Court's order approving the 363 Transaction (the "**Appeals**").  Although the full
amount of WGM's fees and expenses for services rendered in connection with the Appeals have been and continue
to be billed to the Debtors, New GM will reimburse the Debtors for 50% of such fees and expenses paid by the
Debtors to WGM.  Total fees and expenses for services rendered in connection with the Appeals during the Third
Compensation Period are $249,300.00 and $6,500.00, respectively.  Therefore, New GM will reimburse the Debtors
50% of such amounts.

chapter 11 cases, and (iii) certain other related matters.  As of the Commencement Date, WGM

had a retainer balance in the amount of approximately $5.9 million that may be applied against

payment for services to be rendered and expenses to be incurred.  WGM will file further

disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement

Date results in further charges.

15.    The fees charged by WGM in these cases are billed in accordance with

WGM's existing billing rates and procedures in effect during the Third Compensation Period.

The rates WGM charges for the services rendered by its professionals and paraprofessionals in

these chapter 11 cases are the same rates WGM charges for professional and paraprofessional

services rendered in comparable bankruptcy and nonbankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

16.    Annexed hereto as **Exhibit "A"** is a certification regarding compliance with

the Guidelines.

17.    Annexed hereto as **Exhibit "B,"** pursuant to the UST Guidelines, is a

schedule of WGM professionals and paraprofessionals who have performed services for the

Debtors during the Third Compensation Period, the capacities in which each such individual is

employed by WGM, the department in which each individual practices, the hourly billing rate

charged by WGM for services performed by such individuals, the year in which each professional

was first licensed to practice law, and the aggregate number of hours expended in this matter and

fees billed therefor.

18.    Annexed hereto as **Exhibit "C"** is a schedule specifying the categories of

expenses for which WGM is seeking reimbursement and the total amount for each such expense

category.  An itemized schedule of all such expenses has been provided to the Debtors, the Court,

the attorneys for the Creditors' Committee, and the U.S. Trustee.

19.    Annexed hereto as **Exhibit "D,"** pursuant to the UST Guidelines, is a

summary of WGM's time records billed during the Third Compensation Period using project

categories hereinafter described.  WGM maintains computerized records of the time spent by all

WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

11 cases.  Copies of these computerized records have been furnished to the Debtors and, subject to

redaction or modification for the attorney-client privilege where necessary to protect the Debtors'

estates, the Court, the attorneys for the Creditors' Committee, the Fee Examiner, and the U.S.

Trustee in the format specified by the UST Guidelines.

20.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Third Compensation Period, but were not processed prior to

the preparation of this Application, WGM reserves the right to request additional compensation

for such services and reimbursement of such expenses in a future application.

### Summary of Services Performed by
### WGM During the Third Compensation Period

21.    As described above, during the Third Compensation Period, WGM

continued to render an extraordinary level of professional services in order to efficiently and

economically administer the Debtors' chapter 11 cases, address the approximately 68,000 proofs

of claim that have been filed, support the Debtors' administration of their properties and of these

estates, coordinate activities to protect the value of the Debtors' assets, and begin the plan

formulation and drafting process.  During this period, WGM was required to render a substantial

amount of professional services, often under extraordinary time constraints, to deal with various

critical issues.  The following are descriptions of some of the most significant tasks performed by WGM.

22.    The 363 Transaction.  During the Third Compensation Period, WGM successfully defended the 363 Transaction Order against two appeals.  Judge Buchwald of the District Court affirmed the 363 Transaction Order with respect to the appeal filed by the Individual Accident Litigants.  Judge Sweet similarly affirmed the 363 Transaction Order with respect to the appeal filed by Oliver Addison Parker.  Additionally, WGM was instrumental in the withdrawal of the appeal of the 363 Transaction Order in the District Court by Jin Ah Lee, Jungil Lee, Sang Chul Lee, and Dukson Lee.

23.    WGM also assisted the Debtors in prosecuting a motion seeking a settlement clarifying certain terms of that certain Master Sale and Purchase Agreement By and Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet Saturn of Harlem, as Sellers, and NGMCO, Inc. (n/k/a General Motors, LLC) as Purchaser (the "**MSPA**"), and authorizing the Debtors to enter into similar future settlements with New GM with respect to similar issues.

24.    Chapter 11 Plan.  WGM continues to assist the Debtors in formulating a plan of liquidation to economically and efficiently liquidate the Debtors' estates and provide a distribution to claimants as soon as reasonably practicable.  The basic structure of the plan has been formulated, and, as stated, the drafting of the plan and accompanying disclosure statement is proceeding.  A key element of this process is interfacing with the U.S. Government and state representatives to reach a consensus on how the plan will address environmental issues with respect to the Debtors' owned properties.

25.     In addition, in order to avoid the distraction and delay that would inevitably result were competing plans filed, WGM assisted the Debtors in requesting an extension of the exclusive period to file a chapter 11 plan.  While the Debtors desire to complete the chapter 11 plan process as quickly and efficiently as possible, the requested extension will facilitate the confirmation of a plan that will be in the best interests of all stakeholders and appropriately address the Debtors' liabilities.

26.     <u>Wind-Down Process</u>.  WGM continued to assist the Debtors in conducting an orderly liquidation and wind-down of the Debtors' remaining assets and properties.  Notably, WGM assisted the Debtors in prosecuting a motion to sell the Wilmington Assembly Plant to Fisker Automotive, Inc. for $20,000,000, free and clear of liens, claims, interests, and encumbrances, and the assumption and assignment of certain executory contracts and unexpired leases in connection with this sale.

27.     The Debtors' wind-down process, of course, is ongoing and, in addition to the physical assets owned by the Debtors, has involved analyzing the assets and obligations of MLC's numerous remaining subsidiaries to determine the most appropriate means of liquidating each subsidiary.  This has included reviewing and analyzing (i) the corporate and organizational documents of MLC's subsidiaries and (ii) agreements such as promissory notes, dealership agreements, and other agreements to which MLC or its subsidiaries are a party to determine the correct procedure for properly liquidating the stock and/or assets of such subsidiaries.

28.     <u>Claims Reconciliation</u>.  As of the date on which these chapter 11 cases were commenced, the Debtors had approximately 2,500,000 creditors and equity security holders and were parties to more than 700,000 executory contracts (many of which were assumed and assigned to New GM).  Streamlined procedures for reconciling claims remains a critical aspect of

the administration of these estates and key to confirmation and consummation of a plan.  WGM, during the Third Compensation Period, continued to develop and refine its approach and strategy for addressing various claims issues, including the approximately 68,000 proofs of claim filed in these cases.  During the Third Compensation Period, WGM implemented its comprehensive alternative dispute resolution procedure to facilitate the expeditious and economic resolution of more than 30,000 litigation-related proofs of claim filed to date.  WGM also obtained a supplemental order approving the inclusion of certain unliquidated/litigation claims under the alternative dispute resolution procedures.  This effort is critical to the chapter 11 plan process and a necessary prerequisite to any ability to make distributions to holders of prepetiton unsecured claims.  More importantly, this process will greatly facilitate the economic resolution of claims and expedite achieving confirmation of a plan.  WGM also assisted in the formation of a statutory committee of asbestos claimants and provided information and resources to facilitate reaching a resolution as to how present and future asbestos claims will be treated under a chapter 11 plan.

29.     In addition, WGM completed seven omnibus objections to claims, expunging approximately 660 proofs of claim, aggregating approximately $15.7 billion.  WGM drafted, filed, and prosecuted an objection to the proof of claim filed by Rudolph V. Towns resulting in the disallowance and expungement of Mr. Towns' proof of claim asserted in the amount of $80 billion.  WGM also achieved a withdrawal of the proof of claim filed by Susan B. Angell and Prudence Reid, in the amount of $615 million.  WGM assisted the Debtors in successfully prosecuting the disallowance and expungement of two proofs of claim filed by Lafonza Earl Washington, in the aggregate amount of $1.6 billion.  WGM also successfully prosecuted the disallowance and expungement of proofs of claim filed by Theresa L. Marchbanks with a total claim value of $2.5 billion.  WGM also drafted, filed, and prosecuted a motion to

object to the proof of claim filed by New United Motor Manufacturing, Inc., asserted in the

aggregate claim amount of $500 million.

30.    <u>Dealership Matters.</u>  The Debtors had approximately 6,000 dealerships in

their network at the commencement of these chapter 11 cases.  During the Third Compensation

Period, WGM continued to prosecute and defend the rejection of multiple dealership agreements,

including engaging in settlement negotiations and extensive discovery.  WGM also continued to

respond to substantive inquires from dealers, reviewed and analyzed dealer-related agreements

and documents and worked with the Debtors to evaluate numerous proofs of claim filed by

dealers.

31.    <u>Executory Contracts and Unexpired Leases.</u>  As of the Commencement

Date, the Debtors were parties to in excess of 700,000 executory contracts and unexpired leases of

real and personal property.  WGM has continued to play a pivotal role in the assumption and

assignment process, which was critical to the 363 Transaction and the continuation of the GM

enterprise.  During the Third Compensation Period, WGM continued to work with the Debtors to

evaluate numerous remaining executory contracts and unexpired leases to determine the

appropriate disposition of them in the context of the ongoing wind-down of the Debtors.  To this

end, WGM prepared two omnibus motions to reject certain executory contracts and unexpired

leases of nonresidential real property.  In addition, WGM negotiated various settlement

agreements with contract counterparties relating to contract rejection claims, and continued to

draft and review assumption and assignment agreements in conjunction with counsel for New GM

and in furtherance of the 363 Transaction.

32.    <u>Environmental Issues.</u>  As stated, an appropriate resolution of

environmental issues with respect to the Debtors' owned properties continues to be critical to the

administration of these estates and the formulation and consummation of a chapter 11 plan.

Accordingly, during the Third Compensation Period, WGM continued to assist the Debtors in

their interactions with appropriate Federal and State governmental entities, regulators, and other

parties in interest to discuss environmental-remediation obligations at the properties now under

the Debtors' control and the manner in which such obligations should be addressed in a way that

protects public health and the environment while being consistent with the interests of creditors in

these chapter 11 cases and the Debtors' responsibilities and rights as debtors in possession under

the Bankruptcy Code.  WGM has continued to assist the Debtors and their other retained

professionals in analyzing environmental liabilities at owned sites, superfund sites, and other

third-party owned sites, and worked extensively with environmental consultants on estimating

potential environmental liabilities, including reviewing site reports and studies to project

remediation costs.  WGM has also continued to assist the Debtors in various discussions with

governmental regulators and U.S. Treasury officials regarding estimates and approaches for

resolving environmental claims and liabilities. WGM also participated in the preparation of

presentations to Federal and State officials regarding environmental obligations and appropriate

methods for resolution, including the United States Environmental Protection Agency, the United

States Department of Justice (the "**USDOJ**"), and State officials from New York, New Jersey,

Ohio, Michigan, and Indiana.  Throughout all of this, WGM has focused on achieving the most

efficient and prudent manner to address these issues in the context of a chapter 11 plan and

consistent with the Debtors' obligations and responsibilities under the Bankruptcy Code.  WGM is

pleased to report that it believes a consensus has been achieved among the Federal government,

the States and the Debtors as to how these claims will be addressed in a plan and the

documentation currently is being drafted to memorialize the same.

33.     <u>Retention of Ordinary Course and Other Professionals</u>.  WGM continued to assist the Debtors in their interactions with the retained professionals and the ordinary course professionals.  WGM devoted a significant amount of time to working with and preparing certain applications for these professionals' retention, assisting retained professionals in the fee application process, as well as reviewing monthly statements of retained professionals.  WGM has continued to work with the U.S. Trustee to ensure that the requisite disclosures and retention applications were adequate and appropriate.  WGM also prepared applications to employ Plante & Moran, PLLC as accountants for the Debtors, Great American Group and Advisory & Valuation Services, L.L.C. ("**Great American**") as appraiser for the Debtors, Hamilton, Rabinovitz & Associates, Inc. ("**HRA**") as consultants to the Debtors with respect to asbestos claims, and Deloitte Tax LLP ("**Deloitte**") as tax advisors to the Debtors.

34.     <u>Asset Sales Other than the 363 Transaction</u>.  During the Third Compensation Period WGM assisted MLC in the completion of certain de minimis asset sales.  WGM also continued to review and revise agreements relating to General Motors Strasbourg S.A.S. ("**GM Strasbourg**"), with respect to product supply, technology licensing, and engineering services.  In addition, WGM assisted the Debtors in evaluating alternative uses for various parcels of real estate.  WGM assisted the Debtors in selling various plants and facilities.  It also assisted the Debtors in engaging a marketing and sales agent, Hilco Industrial LLC and Maynards Industries (1991) Inc. ("**Hilco/Maynards**"), in connection with certain assets to be sold, as well as engaging an appraiser for various assets.

35.     <u>Additional Services</u>.  During the Third Compensation Period, WGM rendered professional services in furtherance of the foregoing activities and others, including, among other things, (i) meeting and discussing numerous issues and matters with the Creditors'

Committee; (ii) responding to the myriad of creditor inquiries concerning these chapter 11 cases;

(iii) conferences and negotiations with the U.S. Treasury and the Creditors' Committee regarding

the Debtors' ongoing efforts to wind down and dispose of their properties with the goal of

formulating and confirming a liquidating plan; and (iv) addressing, on behalf of the Debtors, the

various motions and disputed matters initiated by third parties.  In this regard, during the Third

Compensation Period, WGM prepared, assisted in the filing of, and/or filed, on behalf of the

Debtors, numerous motions, applications, stipulations, and related court pleadings.

36.    <u>Summary of Services</u>.  The following is a summary of the significant

professional services rendered by WGM during the Third Compensation Period, organized in

accordance with WGM's internal system of project or work codes.

a.    Case Administration Issues

(i)    General Case Administration

- conducted internal team meetings, conferences, and teleconferences with the Debtors, their professionals, the Creditors' Committee, and other parties in interest regarding case administration, status of the chapter 11 cases, and various business-related issues;
- responded to numerous requests for information from parties in interest;
- coordinated with Garden City Group, Inc. ("**GCG**"), the Debtors' noticing and claims agent, to maintain and update master service list;
- conducted document review in connection with assets and liabilities of the Debtors and their affiliates, and ongoing and potential litigations;
- prepared and maintained various corporate structure charts for the Debtors and their respective subsidiaries;
- assisted APS and GCG in establishing and maintaining websites containing information regarding the Debtors, their professionals and management, meetings of creditors, and copies of relevant documents, including proofs of claim;
- engaged in various e-mail and telephone communications with the Debtors, the Creditors' Committee, and the U.S. Trustee;
- maintained case calendar; and
- organized and participated in weekly meetings and conference calls with WGM professionals and client to promote efficiency in the administration of the chapter 11 cases.

(ii)    Hearings and Court Matters

- prepared for and attended 7 court hearings;
- coordinated with the Court regarding hearings and agenda items;
- prepared agenda letters;
- revised case management order for notice and other hearing procedures; and
- monitored dockets for main cases, adversary proceedings, and various state and federal court dockets for Debtor-related matters.

(iii)    U.S. Trustee

- conferred on a regular basis with U.S. Trustee regarding all case matters, including retention issues, employee matters, hearing items, and schedules and statements;
- ensured compliance with U.S. Trustee Guidelines; and
- assisted the Debtors in preparation and filing of monthly operating reports and reports pursuant to Bankruptcy Rule 2015.3.

b.    Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- prepared for and participated in meetings and teleconferences with the Creditors' Committee and its retained professionals regarding the status and administration of the cases, the development and formulation of the structure of a chapter 11 plan, and various other issues;
- continued to respond to telephone and e-mail inquiries from foreign and domestic creditors regarding the chapter 11 cases and the 363 Transaction.

c.    Secured Creditors Issues/Meetings/Communications

- analyzed lien issues.

d.    Schedules/Statements of Financial Affairs

- reviewed drafts of and participated in conferences and teleconferences with APS regarding preparation of amendment to schedules of MLC and affiliated debtors.

e.    Corporate Governance/Corporate/Securities

- dissolved various corporate entities and prepared and maintained dissolution tracking charts tracking the execution and filing of board resolutions and certificates of dissolution, and conducted related research;
- analyzed alternatives for wind-down and dissolution of certain non-Debtor subsidiaries;

- conducted lien searches and analyzed results;
- prepared for and attended meetings of the Debtors' and the non-Debtors' subsidiaries' boards of directors and drafted resolutions, minutes, and consents for same;
- researched various corporate governance issues;
- prepared various documents, including Forms 8-K and S-3, for filing with the Securities and Exchange Commission;
- established document retention policy for MLC;
- advised the Debtors with respect to their joint venture arrangements;
- prepared for and attended meetings with the Debtors and APS regarding reporting, compliance, organizational, and related matters and conducted research regarding same;
- reviewed and revised various corporate organization charts;
- reviewed documents related to numerous transactions with respect to the Debtors' businesses and investments and provided related advice; and
- advised the Debtors with respect to strategic alternatives in connection with certain subsidiaries.

f.    Financing

(i)    Debtor in Possession ("**DIP**") Financing/Cash Collateral

- reviewed documentation and researched issues related to wind-down facility; and
- coordinated compliance with reporting requirements under DIP financing agreement.

(ii)    General Business Operations

- assisted the Debtors with respect to the possible sale of GM Strasbourg assets, including reviewing and revising related engagement letters, agreements and contracts, and various conferences with APS and the Creditors' Committee; and
- reviewed and analyzed various issues and documents related to NUMMI.

g.    Employee/ERISA/Benefits

- analyzed workers' compensation liabilities in various states and issues related to surety bonds, and advised Debtors with respect to state workers' compensation bureaus;
- analyzed and advised the Debtors with respect to potential settlement agreements with the International Association of Machinists and Aerospace Workers, and the International Brotherhood of Teamsters;

- assisted in responding to requests for information on workers' compensation benefits by the U.S. Department of Health and Human Services and assisted in fulfilling such requests;
- assisted in responding to employee benefit claims and challenges to the automatic stay; and
- advised Debtors on payment of multiemployer plan pension withdrawal liabilities in connection with wind down of car dealerships.

h.    Asset Dispositions/Section 363

(i)    363 Transaction

- assisted the Debtors in completing requirements and satisfying obligations under the Master Sale and Purchase Agreement ("**MSPA**"); and
- researched, monitored dockets, and prepared briefs in response to the various appeals of the order approving the 363 Transaction filed by (1) the Individual Accident Litigants, (2) Radha R.M. Narumanchi, and (3) Oliver Addison Parker.

(ii)    Sales of Assets Other than the 363 Transaction

- coordinated with MLC on the execution of de minimis asset sales, including drafting and negotiating sale agreements, and potential sales of shares in subsidiary dealerships;
- assisted the Debtors in establishing the terms of their engagement of Hilco/Maynards as exclusive marketing and sales agent with respect to certain assets;
- reviewed and revised agreements relating to GM Strasbourg, with respect to product supply, technology licensing, and engineering services, and reviewed and commented on documents relating to the marketing of GM Strasbourg;
- assisted the Debtors in establishing the terms of the engagement of Merrill Lynch to provide services in connection with the marketing of GM Strasbourg; and
- evaluated alternative uses for real estate.

i.    Executory Contracts/365 Issues/Contracts/Leases/Real Property

- reviewed and analyzed executory contracts and unexpired leases of nonresidential real property;
- drafted two omnibus motions to reject executory contracts and unexpired leases of nonresidential real property, and reviewed and responded to related objections;
- negotiated and drafted stipulations and settlement agreements regarding the rejection and/or assumption and assignment of executory contracts and unexpired leases of nonresidential real property;

- researched issues regarding various contract assumption and rejection issues;
- reviewed and revised various sale agreements for certain real property of the Debtors;
- reviewed and analyzed the termination and setoff provisions of various swap agreements and facilitated resolution of various issues regarding same;
- provided detailed analyses regarding potential rejection damages claims;
- negotiated and entered into various settlement agreements with lessors, owner participants, indenture trustees, and New GM relating to fixed and mobile equipment leases, including legal research in connection therewith; and
- responded to and negotiated resolutions with various creditors regarding objections to cure amounts and rejection damages claims

j.    Bar Date and Claims Reconciliation

(i)    Claims Objection Litigation

- conducted research regarding class actions and class proofs of claim in bankruptcy;
- achieved a withdrawal of proof of claim filed by Susan B. Angell and Prudence Reid, in the amount of $615 million;
- responded to motion by Boyd Bryant to allow plaintiffs to file a class proof of claim;
- prepared objection to Apartheid-related putative class claims;
- prepared response to objection to claim of settlement agreement in *Soders v. General Motors Corporation and RodaNast, P.C.*; and
- prepared response to motion of Genoveva Bermudez to file late proof of claim or amend informal proof of claim.

(ii)    Bar Date Motion and General Claims Reconciliation

- prosecuted the successful disallowance and expungement of two proofs of claim filed by Lafonza Earl Washington;
- prepared and prosecuted objection to proof of claim filed by Rudolph V. Towns, resulting in the disallowance and expungement of Mr. Towns' proof of claim in the amount of $80 billion;
- drafted filed, and prosecuted 7 omnibus objections to claims, resulting in the expungement of approximately 660 proofs of claim, aggregating approximately $15.7 billion;
- drafted, filed and prosecuted a motion to object to the proof of claim filed by New United Motor Manufacturing, Inc., in the aggregate amount of $500 million;
- obtained a stipulation and order denying Sang Chul Lee and Dukson Lee from filing a late-filed claim for $40 million;

- obtained an order disallowing and expunging proofs of claim filed by Theresa L. Marchbanks in the amount of $2.5 billion;
- obtained supplemental order approving alternative dispute resolution procedures, providing for the inclusion of certain unliquidated/litigation claims under the procedures;
- obtained an order denying the motion of Lisa Gross for leave to file a claim and for relief from the automatic stay;
- drafted, filed and prosecuted motion to prevent Robert T. Gibson from intervening in alternative dispute resolution procedures involving the proof of claim related to the settlement agreement in *Soders v. General Motors Corporation and RodaNast, P.C.*;
- responded to various inquiries regarding the filing of proofs of claim and bar dates;
- worked with GCG to establish and maintain a claims reconciliation process;
- implemented ADR Procedures involving capping claims, mediation and arbitration of claims;
- engaged with nationwide panels of dozens of mediators for the ADR Procedures; and
- implemented procedures through the American Arbitration Association to administer the ADR Procedures.

(iii)    Reclamation and 503(b)(9)

- analyzed and continued to resolve remaining 503(b)(9) and reclamation claims.

(iv)    Administrative Expenses

- reviewed and responded to motion for payment of administrative expenses filed by William Hardee and conducted related legal research; and
- reviewed motions for payment of administrative expenses filed by Salas Automotive Group, Inc. and Napleton Investment Partnership LP;
- reviewed letter motion of D&M for payment of administrative expense.

k.    Automatic Stay

- reviewed and analyzed motions seeking relief from automatic stay, and researched and drafted objections to and/or stipulations resolving certain of such motions;
- researched and drafted memorandum regarding applicability of automatic stay to various litigation issues, and advised the Debtors and outside counsel accordingly;

- drafted and sent numerous letters to prepetition and postpetition plaintiffs advising of automatic stay of litigation; and
- responded to numerous questions from plaintiffs and outside counsel regarding effect of automatic stay on litigation and possible stipulations to modify the automatic stay.

l.    Plan and Disclosure Statement

- drafted, filed, and prosecuted motion to obtain and subsequently obtained a third extension of the Debtors' exclusive period to file chapter 11 plans and solicit acceptances thereof;
- researched various issues regarding structure of the Debtors' chapter 11 plan and related disclosure statement; and
- continued process of drafting proposed chapter 11 plan and disclosure statement.

m.    Tax

- assisted in responding to state taxing authorities with respect to certain of the Debtors' state tax liabilities;
- analyzed certain property tax issues and prepetition tax issues;
- analyzed tax issues in connection with the liquidation of the Debtors' estates;
- analyzed and researched plan-related tax considerations; and
- conferred with tax counsel to the Creditors' Committee regarding plan-related considerations.

n.    Insurance

- evaluated various insurance programs and policies for insurance coverage of certain liabilities;
- participated in discussions and meetings with the Creditors' Committee regarding available coverage;
- obtained a stipulation and agreed order resulting in the Debtors' assumption of certain insurance policies and agreements of ACE American Insurance Company;
- participated in discussions and meetings with New GM with respect to insurance coverage issues; and
- participated in discussions and meetings with the Debtors regarding the availability of insurance to cover certain claims.

o.    Customer/Vendor/Supplier/Dealer

- reviewed monthly critical vendor payment reports submitted to the U.S. Trustee;
- assisted with various issues relating to the wind down of certain dealerships;

- addressed issues and responded to substantive inquiries from customers, vendors, suppliers and dealers; and
- coordinated the termination of dealership franchise agreements with several bankrupt dealerships.

p.    Utilities

- assisted the Debtors in maintaining utility services for each of their respective properties; and
- prepared for litigation and advised in settlement negotiations in connection with Shreveport Red River Utilities, LLC's motion to enforce adequate assurance of payment.

q.    Litigation

- monitored and researched issues related to Narumanchi's appeal of the order dismissing his complaint alleging breach of fiduciary duty and deepening insolvency;
- addressed issues related to adversary proceeding against BMW and researched related legal issues;
- reviewed and responded to non-bankruptcy litigation claims, class action issues, and discovery requests;
- coordinated with various state courts regarding non-bankruptcy litigation; and
- responded to document requests, motions, and applications pursuant to Bankruptcy Rule 2004.

r.    International

- researched corporate governance issues under French law;
- reviewed and researched various issues related to GM Strasbourg;
- continued assisting in the ongoing marketing and sale activities for GM Strasbourg, including reviewing and revising contracts and agreements;
- researched various issues relating to BMW;
- reviewed and analyzed various documents and agreements relating to deliveries, developments, licensing, engineering, environmental servicing and other business operations;
- reviewed and analyzed various issues and drafted memorandum relating to General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"); and
- conferred with the Debtors and the Creditors' Committee regarding various issues relating to GM Nova Scotia.

s.    Environmental

- drafted strategy memoranda and conducted legal research regarding environmental claims;

- analyzed environmental liabilities at owned sites, superfund sites, and other third-party owned sites;
- worked with environmental consultants on analysis of environmental liabilities, including review of site reports and studies to project environmental liabilities;
- attended meetings with governmental regulators and U.S. Treasury officials regarding budget for resolving environmental claims and liabilities;
- assisted in the preparation of presentations to Federal and State officials regarding environmental issues; and
- attended meetings with environmental staff and attorneys regarding environmental liabilities.

t.    WGM Retention/Billing/Fee Applications

- prepared WGM's second interim fee application;
- respond to various requests from the Fee Examiner;
- maintained and updated list of parties in interest for conflicts purposes for WGM and other retained professionals; and
- reviewed monthly billing summary report and prepared monthly fee statements in compliance with the Guidelines.

u.    Retention of Professionals

(i)    Ordinary Course Professionals

- conferred with the Debtors and ordinary course professionals regarding retention procedures and conflicts issues;
- assisted the Debtors in negotiating engagement letters with ordinary course professionals and reviewed historic payment terms;
- assisted the Debtors in retaining ordinary course professionals and the preparation of the retention questionnaire and form declaration; and
- conferred with U.S. Trustee regarding ordinary course professional issues and confirmed compliance with the Guidelines.

(ii)    Other Professionals

- prosecuted the Debtors' applications to retain a marketing and sales agent (Hilco/Maynards) and an appraiser;
- prosecuted the Debtors' application to appoint Dean M. Trafelet as legal representative for future asbestos personal injury claimants;
- prosecuted the Debtors' application to retain Plante & Moran, PLLC as accountants for the Debtors;
- prosecuted the Debtors' application to employ Great American as appraiser for the Debtors;
- prosecuted the Debtors' application to employ HRA as consultants to the Debtors with respect to asbestos claims;

- prosecuted the Debtors' application to employ Deloitte as tax advisors to the Debtors;
- reviewed retention applications for professionals retained by the Creditors' Committee;
- conferred with various applicants regarding scope of retention, terms of compensation, and related issues;
- conferred with various applicants regarding requests from the Fee Examiner;
- conferred with U.S. Trustee regarding various retention issues; and
- reviewed monthly fee statements of various professionals.

37.     The foregoing professional services performed by WGM were actual, necessary, and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by WGM were in the best interests of the Debtors and other parties in interest.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

38.     The professional services performed by members and associates of WGM were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in several offices.  WGM has a preeminent Business Finance & Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations, restructurings of troubled entities, and chapter 11 cases, with approximately 115 attorneys that specialize in this area of law.

39.     The professional services performed by WGM on behalf of the Debtors during the Third Compensation Period required an aggregate expenditure of 9,321.40 recorded hours by WGM's members, counsel, associates, law clerks, and paraprofessionals.  Of the aggregate time expended, 2,602.60 recorded hours were expended by partners and counsel of WGM, 5,108.20 recorded hours were expended by associates, 115 recorded hours were expended by law clerks, and 1,495.60 recorded hours were expended by paraprofessionals of WGM.

40.     During the Third Compensation Period, WGM billed the Debtors for time expended by attorneys based on hourly rates ranging from $395 to $990 per hour for domestic attorneys and $275 to $1,000 for foreign attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $644.27 (based on 7,710.80 recorded hours for attorneys at WGM's regular billing rates in effect at the time of the performance of services).

**Actual and Necessary Disbursements of WGM**

41.     As set forth in Exhibit C hereto, WGM has disbursed $141,489.52 as expenses incurred in providing professional services during the Third Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.

42.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required WGM's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.  Such services were essential to maximize value, timely respond to motions and objections, and to address the demands involved in the wind-down of the Debtors' affairs and the administration of these complex chapter 11 cases.

43.     While WGM has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of WGM who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.  WGM's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the UST Guidelines.

44.     With respect to photocopying expenses, WGM charges all of its clients $.10 per page.  With respect to facsimile expenses, in compliance with the UST Guidelines, WGM does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the UST Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the UST Guidelines.  These charges are intended to cover WGM's direct operating costs, which costs are not incorporated into the WGM hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit B are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow WGM to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

45.     In addition, because of the global scope of the Debtors' affairs, frequent long distance and international telephone calls were required.  On many occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in WGM's overhead for the purpose of setting billing rates.  WGM has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

## The Requested Compensation Should Be Allowed

46.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  *Id.*

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be
> awarded to [a] professional person, the court shall consider the nature, the
> extent, and the value of such services, taking into account all relevant
> factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the
> administration of, or beneficial at the time at which the
> service was rendered toward the completion of, a case
> under this title;
>
> (D)     whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem, issue,
> or task addressed; and
>
> (E)     with respect to a professional person, whether the
> person is board certified or otherwise has demonstrated
> skill and experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on
> the customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

47.     In the instant case, WGM submits that the services for which it seeks

compensation and the expenditures for which it seeks reimbursement in this Application were

necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' chapter 11 estates. WGM has worked assiduously to anticipate or respond to the issues that have arisen and has played and continues to play a critical role in assuring that the Debtors' chapter 11 cases are administered expeditiously and economically. Such services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

48.     Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.

49.     In sum, the services rendered by WGM were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## Notice

50.     Notice of this Application has been provided to parties in interest in accordance with the Third Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated April 29, 2010

[Docket No. 5670].  WGM submits that such notice is sufficient and no other or further notice need be provided.

51.    No previous request for the relief sought herein has been made by the WGM to this or any other Court.

### Conclusion

52.    WGM respectfully requests the Court enter an Order authorizing (i) an interim allowance of compensation for professional services rendered during the Third Compensation Period in the aggregate amount of $5,457,612.27, consisting of $5,316,122.75, representing 100% of fees incurred during the Third Compensation Period, and reimbursement of $141,489.52, representing 100% of actual and necessary expenses incurred during the Third Compensation Period; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Third Compensation Period, which were not processed at the time of this Application; (iii) directing payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order; and (iv) such other and further relief as is just.

WHEREFORE WGM respectfully requests that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
       August 5, 2010

                                 /s/ Stephen Karotkin
                                 Harvey R. Miller
                                 Stephen Karotkin
                                 Joseph H. Smolinsky

                                 WEIL, GOTSHAL & MANGES LLP
                                 767 Fifth Avenue
                                 New York, New York 10153
                                 Telephone: (212) 310-8000
                                 Facsimile: (212) 310-8007

                                 Attorneys for Debtors
                                 and Debtors in Possession

## Exhibit A

## Certification

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                          :
                         Debtors.         :        (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------x
```

## CERTIFICATION UNDER GUIDELINES FOR FEES
## AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT
## OF THIRD APPLICATION OF WEIL, GOTSHAL & MANGES LLP
## FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Stephen Karotkin, hereby certify that:

1.      I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("**WGM**"), with responsibility for the chapter 11 cases of Motors Liquidation Company (f/k/a

General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors and debtors in

possession in the above-captioned cases (collectively with MLC, the "**Debtors**"), in respect of

compliance with the Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009

(the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on

January 30, 1996 (the "**UST Guidelines**") and the Order Pursuant to 11 U.S.C. §§ 105(a) and 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals [Docket No. 3711] (the "**Administrative Order**," and together with the Local

Guidelines and the UST Guidelines, the "**Guidelines**").

       2.      This certification is made in respect of WGM's application, dated August 5,

2010 (the "**Application**"), for interim compensation and reimbursement of expenses for the period

commencing February 1, 2010 through and including May 31, 2010 (the "**Third Compensation

Period**") in accordance with the Guidelines.

       3.      In respect of section C.1 of the Local Guidelines, I certify that:

       a.      I have read the Application;

       b.      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

       c.      the fees and disbursements sought are billed at rates in accordance with those customarily charged by WGM and generally accepted by WGM's clients; and

       d.      in providing a reimbursable service, WGM does not make a profit on that service, whether the service is performed by WGM in-house or through a third party.

       4.      In respect of section A.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"**Creditors' Committee**") and the Debtors, with a statement of WGM's fees and disbursements

accrued during the previous month, although, due to the exigencies of these cases, such statements

were not always provided within the exact timetables set forth in the Administrative Order.

5.      In respect of section A.3 of the Local Guidelines, I certify that the Debtors,

attorneys for the Creditors' Committee, and the United States Trustee for the Southern District of

New York are each being provided with a copy of the Application.

Dated: New York, New York
       August 5, 2010


/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit B**

**Summary of Third Interim Fee Application of
Weil, Gotshal & Manges LLP for Services Rendered
for the Period February 1, 2010 Through May 31, 2010**

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1]<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSELS:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00 | 75.10 | $    74,349.00 |
| Berz, David R. | LR | 1973 | $900.00 | 658.40 | $   592,560.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 30.40 | $    30,096.00 |
| Guy, Ray T. | LR | 1976 | $885.00 | 70.10 | $    59,162.25 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 230.70 | $   219,730.50 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 81.90 | $    81,081.00 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 34.20 | $    33,858.00 |
| Nave, Douglas A.(London Office) | LR | 1985 | $1,000.00 | 17.50 | $    17,500.00 |
| Kam, Michael K. | TAX | 1987 | $900.00 | 11.30 | $    10,170.00 |
| Beagles, Vance L. | LR | 1993 | $845.00 | 190.10 | $   141,664.25 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 338.10 | $   304,290.00 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 128.40 | $   120,298.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $845.00 | 11.40 | $     9,633.00 |
| Albanese, Anthony J. | LR | 1997 | $820.00 | 12.00 | $     9,840.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 54.40 | $    38,961.00 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 72.80 | $    52,780.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 13.00 | $     9,360.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 524.50 | $   367,150.00 |
| Other Partners and Counsel (fewer than 10 hours per person) | | | $700 - $990.00 | 48.30 | $    43,565.50 |

---

[1] BFR- Business Finance & Restructuring,  CORP – Corporate,  LR – Litigation/Regulatory,  TAX – Tax,
S – Securitisation,  LS – Litigation Support,  * Not yet admitted to the bar.

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the first day of the month for each billing period.

| Total Partners and Counsel | | | | 2,602.60 | $ | 2,216,049.00 |
|---|---|---|---|---|---|---|

| NAME OF PROFESSIONAL PERSON<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|---|
| Smith, Leslie S. | CORP | 1995 | $695.00 | 194.30 | $ | 135,038.50 |
| Heyliger, Adelaja | CORP | 1998 | $665.00 | 49.70 | $ | 33,050.50 |
| Dummer, David W. | LR | 1999 | $695.00 | 50.80 | $ | 32,526.00 |
| Shiffman, Jonathan | LR | 2000 | $695.00 | 34.90 | $ | 24,255.50 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 62.30 | $ | 42,987.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 235.90 | $ | 156,374.75 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 40.10 | $ | 26,666.50 |
| Eckols, Erin D. | LR | 2003 | $665.00 | 54.10 | $ | 35,976.50 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 260.30 | $ | 154,878.50 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 37.60 | $ | 25,004.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 103.90 | $ | 65,457.00 |
| Goodman, Max A. | TAX | 2004 | $665.00 | 49.90 | $ | 33,183.50 |
| Kotcher, Liani G. | LR | 2004 | $630.00 | 62.60 | $ | 39,438.00 |
| Greifeneder, Stefanie (Munich Office) | LR | 2004 | $470.00 | 10.30 | $ | 4,841.00 |
| Godhard, Peter | CORP | 2005 | $550.00 | 13.00 | $ | 7,150.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 477.90 | $ | 284,350.50 |
| Christensen, Evert J. | LR | 2007 | $515.00 | 29.40 | $ | 15,141.00 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 49.80 | $ | 27,390.00 |
| O'Connor, John T. | LR | 2007 | $515.00 | 166.90 | $ | 85,953.50 |
| Wine, Jennifer L. | LR | 2007 | $550.00 | 62.60 | $ | 34,430.00 |
| Benfield, Brianna N. | LR | 2008 | $455.00 | 432.70 | $ | 194,944.75 |
| Burns, Gregory C. | TAX | 2008 | $550.00 | 69.00 | $ | 37,950.00 |
| Laken, Lacey | BFR | 2008 | $515.00 | 360.20 | $ | 185,503.00 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 56.90 | $ | 29,303.50 |
| Pruzansky, Jason | LR | 2008 | $515.00 | 19.30 | $ | 9,939.50 |
| Arons, Andrew | CORP | 2009 | $455.00 | 155.90 | $ | 70,934.50 |

| Liroff, Alexander R. | CORP | 2009 | $395.00 | 19.60 | $ | 7,742.00 |
|---|---|---|---|---|---|---|
| Falabella, Pablo | BFR | 2009 | $515.00 | 733.60 | $ | 377,572.25 |
| Falabella, Pablo | BFR | 2009 | $415.00 | 1.50 | $ | 622.50 |
| Hatcher, R. Todd T. | TAX | 2009 | $455.00 | 14.70 | $ | 6,688.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 75.90 | $ | 34,534.50 |
| Vermynck, Alexandre (Paris Office) | LR | 2009 | $275.00 | 23.00 | $ | 6,325.00 |
| Brooks, Russell | BFR | 2010 | $455.00 | 628.90 | $ | 285,694.50 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 132.80 | $ | 52,456.00 |
| Law, Erin J. | LR | 2000 | $695.00 | 104.30 | $ | 72,488.50 |
| Griffiths, David N. | BFR | 2007 | $515.00 | 21.70 | $ | 11,175.50 |
| Byeff, David P. | LR | 2009 | $455.00 | 110.60 | $ | 50,323.00 |
| Limmer, Sam | CORP | 2010 | $395.00 | 12.20 | $ | 4,819.00 |
| Other Associates (fewer than 10 hours per person) | | | $395 - $695.00 | 89.10 | $ | 48,700.00 |
| **Total Associates** | | | | **5,108.20** | **$** | **2,751,808.75** |

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED  Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| **LAW CLERKS**: | | | | | |
| Rosen, Chelsea | BFR – N/A | $225.00 | 20.50 | $ | 4,612.50 |
| Scetbon, Benjamin (Paris Office) | LR – N/A | $180.00 | 10.00 | $ | 1,800.00 |
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 70.50 | $ | 12,690.00 |
| Rapp, Alexis (Paris Office) | BFR – N/A | $180.00 | 14.00 | $ | 2,520.00 |
| Other Law Clerks (fewer than 10 hours per person) | | | 0.00 | $ | 0.00 |
| **Total Law Clerks** | | | **115.00** | **$** | **21,622.50** |

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| | **Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise** | | | | |
| **Paralegals, Clerks, Library Staff and Other Non-Legal Staff:** | | | | | |
| Lee, Kathleen | BFR – N/A | $275.00 | 107.90 | $ | 29,672.50 |
| Shrestha, Christine | CORP – N/A | $275.00 | 57.20 | $ | 15,730.00 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 25.10 | $ | 6,526.00 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 95.70 | $ | 24,882.00 |
| Ellsworth, John A. | CORP – N/A | $260.00 | 13.50 | $ | 3,510.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 27.50 | $ | 7,150.00 |
| Burns, Jo N. | LR – N/A | $260.00 | 16.20 | $ | 4,212.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 10.40 | $ | 2,600.00 |
| Flinn, Deborah C. | LR – N/A | $240.00 | 10.10 | $ | 2,424,00 |
| George, Camille A. | BFR – N/A | $240.00 | 30.00 | $ | 7,200.00 |
| Roberts, Sarah B. | BFR – N/A | $230.00 | 203.60 | $ | 46,828.00 |
| Schell, Peter | CORP – N/A | $225.00 | 79.30 | $ | 17,842.50 |
| Maravilla, Mel C. | CORP – N/A | $225.00 | 38.70 | $ | 8,707.50 |
| Aliseo, Nicole K. | BFR – N/A | $210.00 | 87.30 | $ | 18,333.00 |
| Chettri, Anupama | LR – N/A | $200.00 | 15.00 | $ | 3,000.00 |
| Potter, Lougran | LR – N/A | $200.00 | 24.30 | $ | 4,860.00 |
| Rodriguez, Ilusion | BFR – N/A | $200.00 | 308.20 | $ | 61,640.00 |
| Prindle, Kaitlin C. | BFR – N/A | $200.00 | 36.00 | $ | 7,200.00 |
| Castillero, Francene S. | LR – N/A | $190.00 | 18.30 | $ | 3,477.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 26.80 | $ | 5,092.00 |
| Aliseo, Nicole K. | BFR – N/A | $180.00 | 13.40 | $ | 2,412.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 75.60 | $ | 13,608.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 28.00 | $ | 4,760.00 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 75.00 | $ | 10,500.00 |
| Other Paraprofessionals and Other Staff (fewer than 10 hours per person) | | $75 - $275.00 | 72.50 | $ | 14,476.00 |
| **Total Paraprofessionals and Other Staff** | | | **1,495.60** | **$** | **326,642.50** |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| **TOTALS:** | | | |
| Partners and Counsel | $851.48 | 2,602.60 | $ 2,216,049.00 |
| Associates | $538.70 | 5,108.20 | $ 2,751,808.75 |
| Law Clerks | $188.02 | 115.00 | $ 21,622.50 |
| Paraprofessionals and Other Staff | $218.40 | 1,495.60 | $ 326,642.50 |
| **Total Fees Incurred** | | 9,321.40 | $ 5,316,122.75 |
| **Blended Attorney Rate (excluding law clerks)** | **$644.27** | | |
| | | | |
| **Grand Total Fees Requested** | | **9,321.40** | **$ 5,316,122.75** |

**Exhibit C**

**Expense Summary by Weil, Gotshal & Manges LLP**
**for the Period February 1, 2010 Through May 31, 2010**

| EXPENSES | AMOUNTS |
|---|---|
| Local Transportation | $ 6,531.56 |
| Domestic Travel/Domestic Travel Meals | $ 33,028.19 |
| Meals | $ 4,582.58 |
| Postage | $ 85.44 |
| Telecommunications | $ 397.47 |
| Telecommunications – Court Call | $ 93.00 |
| Facsimile – (Outside) | $ 351.00 |
| Duplicating – Firm | $ 19,371.09 |
| Duplicating – Firm Color Copies | $ 4,795.76 |
| Duplicating – External – Court House Printing | $ 32.00 |
| Duplicating – External | $ 993.88 |
| Air Courier/Express Mail/UPS | $ 3,177.70 |
| Computerized Research | $ 41,134.38 |
| E-Discovery Services | $ 0.00 |
| Filing Fees | $ 50.46 |
| Filing Fees – Deposit Accounts | $ 43.55 |
| Court Reporting | $ 5,148.75 |
| Outside Document Service Bureau | $ 1,534.26 |
| Edgar Filings | $ 680.00 |
| Clipping Service/SEC Watch | $ 510.00 |
| Corporation Services | $ 16,852.57 |
| Business Meals | $ 667.12 |
| Meetings and Conference Meals | $ 1,428.76 |
| **Total Expenses Requested:** | **$ 141,489.52** |

**Exhibit D**

**Compensation by Work Task Code for Services
Rendered by Weil, Gotshal & Manges LLP for the
Period February 1, 2010 Through May 31, 2010**

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 010 | Case Administration | 210.50 | $ 70,935.00 |
| 020 | Unsecured Creditors Issues/Meetings/Communications | 69.10 | $ 36,779.00 |
| 030 | Secured Creditors Issues/Meetings/Communications | .60 | $ 458.00 |
| 040 | General Case Strategy | 187.60 | $ 121,153.50 |
| 050 | Hearings and Court Matters | 383.20 | $ 183,990.50 |
| 060 | WG&M Monthly Fee Statement/BSR Review | 633.80 | $ 173,545.00 |
| 061 | WG&M Fee Applications/Retention | 216.80 | $ 107,994.00 |
| 070 | Retention/Fee Application: Ordinary Course Professionals | 15.20 | $ 8,741.50 |
| 080 | Retention/Fee Application: Other Professionals | 294.80 | $ 166,367.50 |
| 090 | Schedules/Statement of Financial Affairs | 26.70 | $ 12,392.00 |
| 100 | US Trustee Issues/Meetings/Communications | 41.10 | $ 20,211.50 |
| 120 | DIP Financing / Cash Collateral | 6.00 | $ 3,289.00 |
| 130 | Exit Financing | 0.00 | $ 0.00 |
| 140 | Insurance Issues | 94.90 | $ 56,691.00 |
| 150 | Employee/ERISA/Benefits Issues | 184.80 | $ 115,126.00 |
| 160 | 363 Sale / Asset Dispositions | 527.80 | $ 324,989.00 |
| 161 | 363/Use/Sale/Lease of Property Excluding Real Property/MSPA | 128.20 | $ 73,822.50 |
| 162 | Real Property Issues (including 363 and 365) | 454.80 | $ 287,851.00 |
| 170 | 365/Executory Contracts/ Personal Property Leases | 231.70 | $ 124,976.00 |
| 190 | Adversary Proceedings | 161.60 | $ 113,653.00 |
| 200 | Bar Date/Claims Reconciliation/Claims Objection Litigation | 2,070.90 | $ 1,194,696.00 |
| 220 | Automatic Stay | 251.80 | $ 121,409.50 |
| 230 | Business Operations | 11.60 | $ 7,620.50 |
| 240 | Disclosure Statement/Solicitation/Voting | 111.80 | $ 77,373.50 |
| 250 | Exclusivity | 54.30 | $ 30,738.00 |
| 260 | Plan of Reorganization/Plan Confirmation | 272.70 | $ 209,602.00 |

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 270 | Tax Issues | 175.60 | $ 109,228.00 |
| 280 | Delphi Chapter 11 Cases | 32.30 | $ 13,682.50 |
| 290 | Customer/Vendor/Supplier/Dealer Issues | 21.30 | $ 11,952.50 |
| 300 | Utility Issues | 1.50 | $ 881.50 |
| 310 | Reclamation & 503(b)(9) Issues | 6.50 | $ 3,116.50 |
| 320 | Corporate/Securities/Corporate Governance | 415.40 | $ 212,003.50 |
| 330 | Non-Bankruptcy Litigation | 260.30 | $ 102,015.00 |
| 340 | Non-Working Travel | 100.90 | $ 40,918.75 |
| 350 | Communications with Client | 25.90 | $ 20,857.00 |
| 360 | Administrative Claims | 75.20 | $ 43,679.50 |
| 380 | Europe | 356.20 | $ 250,282.50 |
| 390 | Asia Pacific | 0.00 | $ 0.00 |
| 400 | Mexico | 0.00 | $ 0.00 |
| 410 | LAAM | 0.00 | $ 0.00 |
| 420 | Canada | 17.80 | $ 9,848.50 |
| 430 | Environmental Issues | 1,108.30 | $ 807,882.00 |
| 440 | 2004 Examinations/Other Investigatory Matters | 81.90 | $ 45,370.50 |
| **TOTAL** | | **9,321.40** | **$ 5,316,122.75** |