**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                          :
                                                               :    Chapter 11
MOTORS LIQUIDATION COMPANY, et al.                             :
    f/k/a General Motors Corp., et al.,    :    Case No. 09-50026 (REG)
                                                               :
               Debtors. :    (Jointly Administered)
                                                               :
-----------------------------------------------------------------x

### Declaration Of STEPHEN H. CASE In Support Of Motion To Amend The Terms Of The Engagement Letter Of AP SERVICES, LLC

      STEPHEN H. CASE, declares pursuant to section 1746 of title 28 of the United States Code, as follows:

      1.    I am Chairman of the Board of Directors of MOTORS LIQUIDATION COMPANY (f//k/a General Motors Corporation ) ("**MLC**") and have held that position since July 10, 2009.

      2.    I submit this Declaration in support of the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC* (the "**Motion**") [Docket No. 6362] and in accordance with the statements of this Court at a hearing on the Motion held on August 6, 2010 at 9:45 a.m., a transcript of which I have read and which was supplied to me by WEIL, GOTSHAL & MANGES LLP, counsel for MLC. I have also read the Motion (including a copy of the unsworn chart referred to by Mr. Smolinsky in his presentation to this Court in support of the Motion) and the responsive papers to the Motion filed by (i) the statutory committee of unsecured creditors ("**Creditors' Committee**") [Docket No. 6451]; (ii) the fee examiner [Docket No. 6497]; and (iii) the Office of the United States Trustee for the Southern District of New York [Docket No. 6517].

3. Except as otherwise indicated, this Declaration is based upon my personal knowledge and experience and my review of relevant documents and information supplied to me by Mr. ALBERT A. KOCH ("**Mr. Koch**"), the Chief Executive Officer of MLC, other members of MLC's management team or professionals retained by MLC. If called upon to testify, I could and would testify to the facts set forth in this Declaration.

4. Subject to supervision of the Court, MLC is governed by an independent five-member Board of Directors (the "**Board**"). I do not now have, and have never had, any affiliation or other relationship with AP SERVICES, LLC ("**APS**") or any of its affiliates. None of the other four directors, to my knowledge, are or have been affiliated or have or have had any other type of relationship with APS, except for Mr. ALAN M. JACOBS, a Board member, who was elected to that position by the Board after I became incumbent. Mr. Jacobs was recommended for election by the Creditors' Committee in these cases. Mr. Jacobs has advised me that in certain other matters he also has a role in determinations of compensation for APS or one of its affiliates (collectively, "**Alix**"), i.e., (a) he currently serves as the trustee for the *New Century Liquidating Trust* in connection with the chapter 11 cases of *New Century TRS Holdings, Inc. et al.* (Case No. 07-10416 (KJC), a case presently pending in the United States Bankruptcy Court for the District of Delaware), in which case Mr. Jacobs engaged Alix and in which case the retention and compensation of Alix are subject to "Oversight Committee" approval; (b) he served as trustee in for the *Communication Dynamics, Inc. et al. Liquidating Trust* in connection with the chapter 11 cases of *Communication Dynamics, Inc. et al.* (Case No. 02-12753 through 02-12759 (MFW) in the United States Bankruptcy Court for the District of Delaware and closed by final decree in December 2008 ), in which case Mr. Jacobs engaged Alix and in which case the retention and compensation of Alix was subject to "Oversight Committee" approval; and (c)

within the last several days he was appointed "Plan Administrator and Disbursing Agent" in the chapter 11 case of *Texas Rangers Baseball Partners* (Case No. 10-43400 (DML)-11, presently pending in the United States Bankruptcy Court Northern District of Texas Fort Worth Division) in which case, prior to his appointment thereto, Alix had already been engaged to serve as claims agent and will continue in that capacity with Alix' compensation to be subject to court approval prior to the effective date of the plan.

5. The Motion seeks approval of the Third Amendment (the "**Third Amendment**") to the Engagement Letter between APS and MLC dated May 29, 2009 and as amended by that First Amendment dated July 23, 2009 (the "**First Amendment**"). The First Amendment, which I signed on behalf of MLC, provided for hourly rate reductions along with incentive payments, including but not limited to, (i) a percentage recovery to APS on monies returned to the United States Treasury (the "**U.S. Treasury**"); and (ii) an incentive payment tied to confirmation of a plan of liquidation. The Second Amendment addressed the compensation of APS for services related to an MLC subsidiary, now in the process of being sold, which operates an automatic-transmission manufacturing facility in France.

6. The Third Amendment when and if approved by the Court would modify the compensation structure in the First Amendment by, among other things, providing APS with a retroactive return to its standard rates, deleting the percentage recovery on monies returned to the US Treasury, and increasing the amount of the incentive payment tied to confirmation of the plan of liquidation without tying that incentive payment to a plan-confirmation date.

7. The Board considered and unanimously approved the Third Amendment at a meeting of the Board held in Detroit, MI on June 16, 2010 ("**Board Meeting**"). An executed

copy of the Third Amendment, which I signed after approval by the Board, is attached to this Declaration as **Exhibit "A."**

8.  I have reviewed the Declaration of Mr. Koch dated August 16, 2010 ("**Koch Declaration**") and to the best of my knowledge I believe that the facts contained in the Koch Declaration are, in all material respects, true, accurate, complete and consistent with the facts Mr. Koch presented to the Board at the Board meeting to approve the Third Amendment.

9.  In advance of the Board meeting to consider the Third Amendment, the Board was provided with relevant materials, including a draft of the Third Amendment, which I read before the Board Meeting. I believe that each of my Board colleagues each read the Third Amendment prior to the Board Meeting. At the Board meeting, Mr. Koch and other management and advisors of MLC explained in detail the background behind the Third Amendment and provided the Board with an opportunity to ask questions and receive answers regarding the Third Amendment. I understood the terms of the Third Amendment and related issues and all my questions were answered to my satisfaction. I believe that each of my colleagues had a similar understanding, was equally satisfied and had each of his questions answered to his satisfaction. Accordingly, after open deliberation, consideration of the facts and having reviewed the terms of the Third Amendment, the Board concluded that the Third Amendment was in the best interests of the estate of MLC and unanimously decided to approve it.

10. The Board agreed with the statements of APS, made at the Board Meeting, that the cost to the MLC estate under the Third Amendment would be lower than the cost to the MLC estate under the First Amendment. Based on the facts presented to the Board, which are accurately reported in the Koch Declaration, I understand that the savings to the MLC estate are

4

significant. APS and the Debtor estimate that the incentive structure under the Third Amendment will likely provide approximately $6.3 million less in compensation to APS than would have been the case under the First Amendment.

11. At the Board Meeting, the Board was also advised that the U.S. Treasury and the Creditors' Committee had previously considered and approved the Third Amendment.

12. The Debtors and APS have worked diligently and in close cooperation with the U.S. Treasury, the United States Department of Labor, the United States Department of Justice, and the United States Environmental Protection Agency, as well as governmental agencies in more than a dozen states ("**State Governmental Agencies**") to develop a liquidating plan of reorganization for the Debtor that would adequately address the interests of all stakeholders. I believe that APS' personnel have been doing a splendid job in a first-class effort to achieve confirmation of a liquidating plan of reorganization at the earliest practicable date. From my conversations with other Board members and statements they have made at various Board meetings, I believe they agree with me, 100%.

13. The Board was informed by MLC Management that the originally-designed incentives in the First Amendment were presenting an obstacle to gaining acceptance of all relevant Federal agencies and from the State Governmental Agencies. Hence, the Board concluded that the incentives in the Third Amendment, which would delete the percentage recoveries to APS and modify the timing for the incentive payment tied to plan confirmation, were more closely aligned with the interests of stakeholders.

14. For the foregoing reasons, the Board determined in the exercise of its business judgment to approve and to authorize me to execute and deliver the Third Amendment.

5

15. In addition, the Board approved, subject to approval of this Court, payment to APS of the retroactive hourly rate charges through the date of Court approval of the Third Amendment ("**Retroactive Payment**"). The Board understood that, through and including April 20, 2010, that amount of the Retroactive Payment was approximately $5.8 million. The Board was informed by AP Services that receipt by APS of the Retroactive Payment was an important factor in APS' decision to agree to reduce incentive payments, as provided in the Third Amendment. The Board's determination was based on (i) its desire to continue to incentivize APS whose continued services I believe are essential to the orderly and efficient administration of the MLC cases; (ii) the Board's understanding that the amounts paid to APS would not affect the distributions to general unsecured creditors in this case; and (iii), as I mentioned above, the Board's understanding that the US Treasury played an integral role in designing the incentives in the Third Amendment and had no objection either to the Third Amendment or the Retroactive Payment.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 16, 2010
New York, New York

_____
Stephen H. Case

**Exhibit A**

APServices LLC              Chicago  Dallas  Detroit  Los Angeles  New York  San Francisco  Washington, DC

June 7, 2010

Board of Directors
Motors Liquidation Company
f/k/a General Motors Corporation
500 Renaissance Center
Suite 1400
Detroit, MI 48243

Re:    Agreement for Interim Management & Restructuring Services – Third Amendment

Dear Sirs:

This letter represents the third amendment (the "Third Amendment") to the agreement between AP Services, LLC, a Michigan limited liability company ("APS") and Motors Liquidation Company f/k/a General Motors Corporation ("Motors Liquidation," the "Company" or the "Debtor") dated May 29, 2009 (the "Engagement Letter" and, along with the First Amendment dated July 23, 2009, the Second Amendment dated November 12, 2009, and this Third Amendment, the "Agreement").

APS was retained by the Company and certain of its affiliates to act as crisis managers in connection with their chapter 11 reorganization proceeding. In addition, Albert A. Koch was appointed to serve as the Debtor's Chief Restructuring Officer. On or about July 10, 2009 (the "Closing Date"), upon the closing of the sale of the majority of the Debtor's assets to General Motors Company, Mr. Koch was appointed Chief Executive Officer of Motors Liquidation.

This Third Amendment shall be effective immediately upon approval by the Bankruptcy Court in the bankruptcy proceeding of Motors Liquidation and certain of its affiliates pending in the United States Bankruptcy Court for the Southern District of New York, being Case No. 09-50026 (the "Bankruptcy Case"). The Hourly Rate Changes, as subsequently defined, shall be retroactive to the Closing Date.

Background

The First Amendment was entered into effective on the Closing Date after negotiations with the United States Department of Treasury (the "U.S. Treasury") and the Official Committee of Unsecured Creditors (the "Committee"). The First Amendment was in anticipation of the wind-down of the Debtor as contemplated by the Wind-Down Financing Order.[1] Since the Closing Date, APS has worked diligently and in close cooperation with the United States

---

[1] The Wind-Down Financing Order shall mean that certain Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving Amendment to DIP Credit Facility to Provide For Debtors' Post-Petition Wind-Down Financing.

**APServices** LLC

Motors Liquidation Company
June 7, 2010
Page 2 of 4

Treasury, the United States Department of Labor, the United States Department of Justice, and the United States Environmental Protection Agency, as well as governmental agencies in more than a dozen states, to develop a liquidating plan of reorganization for the Debtor that will adequately meet the interests of these stakeholders. It became increasingly apparent to APS over the past months that the originally designed incentives were not working as intended and, in fact, at times were presenting an obstacle to gaining acceptance by the various stakeholders of the proposed plan structure and implementation.

Accordingly, APS entered into negotiations with the U.S. Treasury and the Committee to further amend the financial terms of the APS engagement. This letter documents the results of those negotiations. The U.S. Treasury agreed not to object to an amendment, provided that the overall cost to the taxpayer of the APS engagement was likely to be lower than the cost contemplated under the First Amendment. By way of information, APS and the Debtor estimate that the incentive structure in this Third Amendment will likely provide approximately 35% less in compensation to APS than would have been the case with the incentives established in the First Amendment. The incentives in the Third Amendment, however, provide APS with acceleration of payment and certainty of amount.

Changes to Numbered Paragraphs in the First Amendment

1. **Hourly Fee Reductions:** The Hourly Fee Reductions outlined in paragraph 1 of the First Amendment are hereby deleted and replaced with the following:

   **Hourly Fees:** Hourly fees shall be paid at rates as set forth in the Engagement Letter, as such rates have been updated in the ordinary course for the 2010 calendar year and as they may be further modified by Supplemental Declarations or order of the Bankruptcy Court (the "Hourly Rate Changes"). The Hourly Rate Changes shall be retroactive to July 10, 2009. APS wishes to disclose that the retroactive amount to be billed to the Company through April 30, 2010 is approximately $5.3 million. Additional retroactive amounts to be billed to the Company will continue to accrue after April 30, 2010 through the date of approval of this Third Amendment. APS shall bill the retroactive amounts, and such amounts shall be due and payable promptly upon approval of this Third Amendment.

2. **Discretionary Fees:** Paragraphs 2 a. and b. of the First Amendment are deleted and replaced in their entirety as follows:

   Total Unsecured Creditor Claims. In the event that the total unsecured claims pool (including bond claims) is less than $35 billion, APS shall be entitled to a Discretionary Fee of $5.0 million. In the event that the total unsecured claims pool (including bond claims) is equal to or greater than $35 billion but less

APServices LLC

Motors Liquidation Company
June 7, 2010
Page 3 of 4

> than $42 billion, APS shall be entitled to a Discretionary Fee of $2.5 million. Between $35 billion and $42 billion the Discretionary Fee shall be adjusted pro rata. For example, if the total unsecured claims are $38.5 billion, the Discretionary Fee under this paragraph would be $3.75 million. In the event that the total unsecured claims pool exceeds $42 billion, APS shall not be entitled to a Discretionary Fee for this milestone; and

> Paragraph 2 c. of the First Amendment is amended to read as follows:

>> c. Distribution of Stock and Warrants. At such time as APS and the Trustee distributes 70% or more of each of the Common Stock and Warrants of the Purchaser, received by the Debtors in connection with the Related 363 Sale Transactions, to the Debtors' unsecured creditors following the effective date of a plan of liquidation, APS shall be entitled to a Discretionary Fee of $2.5 million.

3. **Incentive Payments**: The Incentive Payments outlined in paragraph 3 of the First Amendment are hereby deleted and replaced in their entirety with the following:

  > **Incentive Payments:** In the event that the Debtors confirm a plan of liquidation that becomes effective, APS shall be entitled to an Incentive Fee of $7 million that is payable upon confirmation of the plan of liquidation.

Each of the U.S. Treasury, the Debtor and APS has consented to this Third Amendment, including providing pre-approval for the Incentive Payment, the retroactive Hourly Rate Changes and the Discretionary Fees. In addition, the U.S. Treasury, the Debtor and APS continue to consent to pre-approval of the Second Payment of the Success Fee (as defined in the Engagement Letter). The Debtor agrees that as soon as practicable, it will file a motion to approve this Third Amendment.

Except as otherwise modified by this Third Amendment, the terms of the Engagement Letter, as amended, remain in full force and effect.

* * * * *

**APServices** LLC

Motors Liquidation Company
June 7, 2010
Page 4 of 4

If these terms meet with your approval, please sign and return a copy of this Third Amendment. We look forward to our continuing relationship with you.

Sincerely yours,

AP SERVICES, LLC

*[signature]*

By: Albert A. Koch
Its: Authorized Representative


Acknowledged and Agreed to:
MOTORS LIQUIDATION COMPANY
By: *[signature]*
Its: Chair
Dated: 16 June 10