Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026-reg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   MOTORS LIQUIDATION COMPANY, et al.

9           f/k/a General Motors Corporation, et al.,

10

11             Debtors.

12

13   - - - - - - - - - - - - - - - - - - - -x

14

15             United States Bankruptcy Court

16             One Bowling Green

17             New York, New York

18

19             February 23, 2010

20             9:19 AM

21

22

23   B E F O R E:

24   HON. ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

Page 2

1    HEARING re Motion of Debtors for Entry of Order Pursuant to 11

2    U.S.C. Section 105(a) and General Order M-390 Authorizing

3    Implementation of Alternative Dispute Resolution Procedures,

4    Including Mandatory Mediation - Status Conference.

5

6    HEARING re Debtors' Objection to Proofs of Claim Nos. 04620 &

7    07291 Filed by Theresa L. Marchbanks - Status Conference.

8

9    HEARING re Debtors' Sixth Omnibus Objection to Claims (Amended

10   and Superseded Claims)

11

12   Debtors' Seventh Omnibus Objection to Claims (Duplicate Claims)

13

14   HEARING re Debtors' Eighth Omnibus Objection to Claims (Claims

15   with Insufficient Documentation)

16

17   HEARING re Debtors' Ninth Omnibus Objection to Claims (Claims

18   with Insufficient Documentation)

19

20   HEARING re Motion to Withdraw as Counsel for NIDEC Motors &

21   Actuators and Proposed Order Authorizing the Withdrawal of

22   Erman, Teicher, Miller, Zucker & Freedman, P.C. as Attorney for

23   NIDEC Motors & Actuators.

24

25   Transcribed by:  Sharona Shapiro

Page 3

```
 1
 2   A P P E A R A N C E S :
 3   WEIL, GOTSHAL & MANGES LLP
 4        Attorneys for the Debtors
 5        767 Fifth Avenue
 6        New York, NY 10153
 7
 8   BY:  JOSEPH SMOLINSKY, ESQ.
 9
10   GREENBERG TRAURIG, LLP
11        Attorneys for Nova Scotia Noteholders
12        MetLife Building
13        200 Park Avenue
14        New York, NY 10166
15
16   BY:  NANCY A. MITCHELL, ESQ.
17
18   KRAMER LEVIN NAFTALIS & FRANKEL LLP
19        Attorneys for the Official Committee of Unsecured
20         Creditors
21        1177 Avenue of the Americas
22        New York, NY 10036
23
24   BY:  LAUREN M. MACKSOUD, ESQ.
25
```

Page 4

1

2    LECLAIRRYAN

3          830 Third Avenue

4          Fifth Floor

5          New York, NY 10022

6

7    BY:  KWAME N. CAIN, ESQ.

8

9    LOWENSTEIN SANDLER PC

10          65 Livingston Avenue

11          Roseland, NJ 07068

12

13    BY:  ERIN S. LEVIN, ESQ.

14

15    SCHNADER HARRISON SEGAL & LEWIS LLP

16          140 Broadway  Suite 3100

17          New York, NY 10005

18

19    BY:  BENJAMIN P. DEUTSCH, ESQ.

20

21

22

23

24

25

Page 5

```
 1

 2    SIDLEY AUSTIN LLP

 3          Attorneys for TPC Vendors

 4          One South Dearborn

 5          Chicago, IL 60603

 6

 7    BY:  JENNIFER E. NOVOSELSKY, ESQ.

 8

 9    UNITED STATES DEPARTMENT OF JUSTICE

10          U.S. Attorney's Office

11          86 Chambers Street

12          3rd Floor

13          New York, NY 10007

14

15    BY:  JOSEPH N. CORDARO, DEPUTY CHIEF, AUSA

16          NATALIE N. KUEHLER, AUSA

17

18

19

20

21

22

23

24

25
```

09-50026-mg    Doc 6797    Filed 08/24/10    Entered 08/25/10 10:41:36    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 6 of 30

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  Okay, well start with GM Motors

3    Liquidation Company.

4            Mr. Smolinsky, good morning, come on up, please.

5            MR. SMOLINSKY:  Good morning, Your Honor.  If I may,

6    I'd like to run through the agenda that was delivered to Your

7    Honor yesterday, the final agenda.

8            First on the agenda, the only contested matter, which

9    is now uncontested, is the ADR motion.  Your Honor, everyone

10   close to this case has recognized over the last several months

11   that what this case needed is a process to resolve the

12   thousands of unliquidated and litigation claims that have been

13   filed against the company.  We have tried to resolve claims on

14   a one-off basis.  We've had some success but minimal success.

15   So we're very anxious to get started with a process, primarily

16   in the product liability and torts area where most of the

17   unliquidated claims reside.  Even prosecuting this motion and

18   speaking with the various claimants have given us significant

19   insight into the claims pool and how best to approach them.  Of

20   course the attempt would be to try to resolve it before we get

21   into the mediation process.

22           THE COURT:  Pause, please, Mr. Smolinsky.  In

23   ballpark terms, what's the order of magnitude of the number of

24   the claims that you have to wrestle with -- not the dollar

25   amount; I know that's one of the things you're trying to

MOTORS LIQUIDATION COMPANY, et al.

Page 7

1    accomplish by this motion, but the number of them, how many of

2    these claims you've got to get your arms around.

3                MR. SMOLINSKY:  About 10,000.

4                THE COURT:  Okay.  Continue then.

5                MR. SMOLINSKY:  And obviously, Your Honor, we can't

6    mediate or arbitrate 10,000 claims.  So this is going to be

7    hopefully a collaborative effort with a lot of give and take to

8    try to get to a consensual resolution.  The fact that we have

9    basically self-insured status up to twenty-five or thirty-five

10   million dollars makes it more difficult than the average case

11   to deal with these issues.

12               The procedures that we propose in the motion are

13   procedures that have been used in other cases in this district.

14   The one exception is the capping mechanism.  In order to avoid

15   what otherwise would be a very difficult estimation process at

16   confirmation, we've tried a fairly unique procedure, given the

17   large number of unliquidated claims, to allow claimants to

18   voluntarily come in and agree to cap their claim to a number

19   that we believe works for us in connection with moving forward

20   with confirmation.  And the give and take of that is because

21   they're willing to cap their claim we would be willing to deal

22   with their claim first in the mediation process, try to resolve

23   their claims.  Secondly, we'd agree to pay for the mediation

24   for both sides of the mediation or arbitration.  So there is

25   hopefully incentive on both sides.  We have heard some very

1   positive reports back with respect to this procedure.  We're

2   hoping that this will also assist us going forward to try to

3   make meaningful distributions to creditors as quickly as

4   possible.

5          The capping procedure allows a party to deliver an

6   offer, a capping offer, and we can accept it or we can come

7   back with a counter-offer, and hopefully we would reside on a

8   number which is more representative of the underlying damages.

9   And then in exchange for agreeing to that cap we would agree to

10  fast-track them through the process.

11         There have been, Your Honor, eighteen formal and

12  eleven informal objections to the procedures.  A number of

13  these objections have been resolved simply by talking to the

14  claimants about the procedure.  We've made a number of

15  revisions to deal with the other objections that brings us to

16  an uncontested hearing this morning.

17         I just want to highlight five modifications that have

18  been made since the original motion was proposed.  First of

19  all, for purposes of today's hearing we're limiting the ADR

20  procedures to the primary focus of the motion, which is

21  personal injury, product liability, torts claims, rejection of

22  contract damage claims and certain indemnity claims.

23         The other types of claims which are like indemnity

24  claims that are related to asbestos and certain other claims

25  are going to be adjourned to a hearing.  We proposed April 8th,

MOTORS LIQUIDATION COMPANY, et al.

Page 9

1   which is another GM hearing, which we'll confirm with your

2   chambers.  But with that we've knocked out a host of objections

3   and it's given us an opportunity to talk to them about the

4   procedure.

5          Second, Your Honor, we've carved out environmental

6   claims totally.  We've notified all the parties that have

7   environmental claims that we will not being going forward in

8   this motion with respect to environmental claims.  We need to

9   rethink the process of dealing with super-fund claims and the

10  like.  And so, obviously reserving our rights to propose

11  another ADR program with respect to those claims, we're carving

12  them out.

13         Third, Your Honor, we filed with this Court weeks ago

14  a schedule of proposed mediators for the process.  The ad hoc

15  committee of tort claimants have provided additional names.

16  We've now added those names.  Also, in speaking with the ad hoc

17  committee we have agreed to provide them with a cap for each

18  mediator that would be a cap on the amount that could be

19  charged to a claimant.

20         THE COURT:  Is that Mr. Bressler's ad hoc committee

21  or a different one?

22         MR. SMOLINSKY:  That is, Your Honor.  And with that

23  cap that they've now reviewed we are in agreement with that

24  group, which is a very large group of plaintiffs, as to the

25  appropriate caps that could be charged to an individual

Page 10

1    claimant.  When the ADR notice is sent out they'll get a list

2    of ADR mediators with schedules of cost and a cap, and they can

3    pick whichever mediator they want for their particular area of

4    need, whether it's personal injury or business claims,

5    rejection damage claims and the like.

6        Independently, Your Honor, we did add a provision

7    that we thought might be helpful to allow us to pay for the

8    full amount of any mediator or arbitrator where we've been

9    provided with evidence of substantial hardship.  We thought

10   that that was something that should be added to ease the

11   burden.

12       Number four, we've revised the procedures to better

13   accommodate a free flow of information.  There's been a lot of

14   discussions with the ad hoc committee about how they could get

15   the information that we have, we could get the information that

16   they have to make the mediation more productive.  And so there

17   are some changes in the ADR procedures that focus on that.

18       And then finally, we've added some language just to

19   make sure, which was our original -- certain -- our original

20   intent that it doesn't preclude a claimant from going after any

21   non-debtor party if they're subject to the ADR procedures.

22       Your Honor, there are three objections which I just

23   agreed to make a quick statement on the record to resolve their

24   objection.  Two of them, the Nova Scotia bondholders and the

25   Andorra Bank, we've agreed, as we always anticipated, the debt

09-50026-mg   Doc 6797   Filed 08/24/10   Entered 08/25/10 10:41:36   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 11 of 30

Page 11

1    claims were not part of this procedure.  So we made clear that

2    their claims under their bonds, and in respect of Nova Scotia

3    their deficiency claims, are not governed by this ADR motion.

4         Lastly, Your Honor, with respect to Getrag, which is

5    a vendor, we've agreed to adjourn their claim -- the motion

6    with respect to their claim to the April hearing to allow their

7    discussions with New GM with respect to certain contract

8    terminations to conclude.  And hopefully that would resolve any

9    claims that exist between Getrag and the estate.

10        And Your Honor, I think that's the summary.  If Your

11   Honor has any questions, but I don't believe that there are any

12   pending objections from third parties.

13        THE COURT:  All right.  And under my case management

14   order any objections would have been -- had to have been

15   previously filed and articulated to the debtor, so we're not

16   taking any new objections today.  I will, however, hear from

17   anybody who you announced a deal with or an understanding with

18   to comment on whether or not you got it right.

19        Anybody in that category who wishes to be heard?

20        MS. NOVOSELSKY:  Good morning, Your Honor.  This is

21   Jenn Novoselsky at Sidley Austin.  We represent the TPC

22   vendors, and we have previously discussed this with counsel for

23   GM, but just wanted to get it on the record as well that both

24   parties have agreed that TPC claims also are not governed by

25   this ADR motion as well.

                                                              Page 12

1              MR. SMOLINSKY:  Your Honor, I believe that that is

2     one of the claims that are adjourned to April 8th, and in the

3     definition of subject claims we exclude the category that would

4     include TPC's claim.

5              THE COURT:  Okay.  Anyone else?

6              Pause, please, Mr. Smolinsky.

7              Your appearance, please?

8              MS. MITCHELL:  Nancy Mitchell from Greenberg Traurig

9     on behalf of the Nova Scotia noteholders.  And I only wanted to

10    say that Mr. Smolinsky did get it right.

11             THE COURT:  Okay, fair enough.

12             All right, everybody who wanted to be heard has now

13    had that chance.

14             Okay, Mr. Smolinsky, I'm grateful for your ability to

15    consensually resolve the objections.  The underlying merit of

16    the procedure is obvious to anyone who has reviewed the papers.

17    Even with the procedures you put in place, the fact that there

18    may be some that will eventually not be susceptible to ADR

19    resolutions in one way or another when we're starting with

20    10,000 is enough to get my attention.  I don't know how many of

21    those 10,000 may remain, but obviously this is something that's

22    appropriate, it's fair, it's good all around, and it's

23    approved.

24             MR. SMOLINSKY:  Thank you, Your Honor.  We'll submit

25    an order.

Page 13

1           THE COURT:  Very good.  Do you have other stuff you'd

2     like to bring to my attention, Mr. Smolinsky?

3           MR. SMOLINSKY:  Not with respect to that motion, but

4     we have several other matters that I'd like to run through.

5     After the next one they'll run very quickly.

6           THE COURT:  Sure, go ahead.

7           MR. SMOLINSKY:  Your Honor, the next motion is an

8     objection to two claims filed by Ms. Marchbanks.  This motion

9     is representative of a host of claims, which I think Your Honor

10    just mentioned, may not be susceptible to ADR.  These are -- we

11    have dozens of claims filed by individuals for outrageous

12    amounts, and we've tried to do the appropriate thing to try to

13    give full deference to the fact that they're pro se, that we

14    want to give them every bit of due process that we agree on and

15    that Your Honor agrees on.  We've sensitized the whole claim

16    team in this case, not only at the law firms but also with the

17    company to be patient with every claimant and to try to get at

18    the basis for the claim as best that they could.

19          Your Honor, these claims which each were -- one was

20    filed in the amount of 2.5 billion dollars.  The other --

21          THE COURT:  With a B?

22          MR. SMOLINSKY:  B, yes.  The other one just said

23    22.5; I don't know what that is, but it may be a reference to

24    the same 2.5 billion.

25          Your Honor, attached to the motion is a letter that

09-50026-mg    Doc 6797    Filed 08/24/10    Entered 08/25/10 10:41:36    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 14 of 30

Page 14

1    we had sent to Ms. Marchbanks prior to bringing this motion

2    asking her to provide background on the claim.  The claim is --

3    it just says "personal injury" but nothing else, and it also

4    seeks a 10,950 dollar priority for wages.  We've looked at our

5    records.  We don't have any record of an action that has been

6    brought by Ms. Marchbanks or the fact that she was an employee.

7            After exchanging e-mails with her where she did --

8    she said 'I gave you everything you need, what else do you

9    need?'  We again sent an e-mail explaining why we needed it and

10   tried to avoid this hearing.  We got no reply to that e-mail.

11   We then filed the motion.  We got no reply to the motion.  We

12   attempted to e-mail -- to call her on February 8th, two days

13   before this motion was originally scheduled.  The number that

14   she provides in her proof of claim is no longer in service.  We

15   e-mailed her to the same address that she e-mailed us on the

16   8th and the 9th and we got no response.  After this hearing was

17   adjourned as a result of the snowstorm we then sent her a

18   letter on February 16th, again requesting her to contact us to

19   provide us with information and reminding her of the hearing

20   today for which we received no response.  Ordinarily that would

21   clearly be grounds for taking a default.

22           I did want to highlight for this Court the fact that

23   in connection with the ADR motion she did take the attachment

24   from the ADR motion, which is the ADR notice and the settlement

25   procedures, she mailed it back to us and checked off that she

Page 15

1    accepted our settlement offer even though the settlement offer

2    of course was blank.  And she checked off that she's willing to

3    go into binding arbitration.  Yet we received no response or no

4    information relative to her claim in connection with the

5    objection motion.

6            And Your Honor, we're now faced with a decision as to

7    whether to go forward today and take the default or to try one

8    more time to reach out to her.  But so far our attempts have

9    failed.  I don't think that this claim is necessarily

10   susceptible to binding arbitration where we would go into the

11   arbitration not knowing any background as to the basis of her

12   claim.

13           So Your Honor, you know, we're prepared to go forward

14   today but we're also prepared to listen to Your Honor.  Perhaps

15   Your Honor has had experience in other cases that we can use in

16   this case.  Again, this is not a one-off situation but

17   something that we're going to have in the future.

18           THE COURT:  Mr. Smolinsky, is this the same claimant

19   or a different one than the claimant as to whom I issued an

20   endorsed order a day or two ago where after reading the

21   claimant's submission quite carefully I determined that the

22   motion was denied for failure to establish a prima facie

23   entitlement to relief?

24           MR. SMOLINSKY:  If that's the one, Your Honor, that

25   questioned whether or not Your Honor was an active judge for

Page 16

1    this court, that is a different claimant.  That is Lefonso

2    Washington (ph.) --

3              THE COURT:  Right.

4              MR. SMOLINSKY:  -- which will be on before you on the

5    2nd of March.

6              THE COURT:  Fair enough.

7              MR. SMOLINSKY:  At least he gives thousands of pages

8    of information that we could try to glean a claim.  A lot of

9    these claims are simply just cover sheets.

10             THE COURT:  Including the fact that I don't have

11   jurisdiction to sit in a bankruptcy court?

12             MR. SMOLINSKY:  That's right.

13             THE COURT:  Okay.  Mr. Smolinsky, I'm grateful that

14   you and your colleagues have given special attention to the

15   needs of pro se claimants, and although it's costing you extra

16   time and resources and ultimately creditor money to do it, I

17   would like that to continue.  But there comes a time when I

18   think that you and your folks have done all that we can

19   reasonably expect, and I don't think it's fair to the other

20   creditors to ask you to do any more.

21             If I were sitting on the Supreme Court and not way

22   down on the bankruptcy court, I would have stuck with the

23   standards of Conley v. Gibson in evaluating claims to see

24   whether the judge can ascertain a basis for awarding relief.

25   And in those cases where the pro se claimant has expressed his

Page 17

1   or her claim inarticulately or has given you some but less than

2   all of the documentation you need, I'm inclined to cut people

3   some slack and give them a chance to get their house in order.

4        But in the case of Ms. Marchbanks where you don't get

5   any showing of an entitlement or where they don't respond to

6   your e-mails or your other messages, I think you've done all

7   that the fairness of the system should require, and I'm going

8   to give you the default in that situation.  And give the word

9   to the folks that going forward that if you're imperfect in

10  documenting your claim I'll likely give you a chance to cure

11  but if you don't respond to the estate at all I'll be entering

12  further defaults similar to the one I'm doing today.

13       MR. SMOLINSKY:  Thank you, Your Honor.  Do you want

14  us to settle an order or just submit it?

15       THE COURT:  Well, if there had been a response I

16  would have required you to settle the order.  There having been

17  no response, you may submit it.

18       MR. SMOLINSKY:  Thank you, Your Honor.

19       THE COURT:  Okay.

20       MR. SMOLINSKY:  And as with all other orders of claim

21  objections, we'll serve a copy of the order out to the

22  claimant.

23       THE COURT:  The rule of thumb being if the person

24  tried to get my attention and ultimately did not prevail I'll

25  want you to settle.  If they don't meet you halfway you can

09-50026-mg   Doc 6797   Filed 08/24/10   Entered 08/25/10 10:41:36   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 18 of 30

Page 18

1    submit.

2             MR. SMOLINSKY:  Thank you, Your Honor.

3             THE COURT:  Okay.

4             MR. SMOLINSKY:  Moving to item number 3 on the

5    agenda, that's omnibus debtors' motion number 6, amended and

6    superseded claims.  We've received no responses to that motion,

7    no objections, and we'd like to move forward.

8             THE COURT:  Granted.

9             MR. SMOLINSKY:  Item number 4, a debtors' seventh

10   omnibus objection that is duplicate claims.  We received two

11   responses, one from Atlas Technologies, which we've spoken to

12   and it's not an objection to the relief requested in the

13   motion.  And secondly from the Casmalia Resources Site Steering

14   Committee.  We've agreed to withdraw the motion with respect to

15   Casmalia, and we'd like the rest of the relief granted.

16             THE COURT:  Okay, that's fine.

17             MR. SMOLINSKY:  Thank you, Your Honor.

18             The next item on the agenda, item number 5, debtors'

19   eighth omnibus objection.  These are claims with insufficient

20   documentation.  Your Honor, we have made clear to claimants

21   that if they give any type of information in response to this

22   motion that we've excluded them from the treatment in the

23   motion and have withdrawn the motion and we notified them of

24   that effect.

25             There are two claims with insufficient documentation

09-50026-mg   Doc 6797   Filed 08/24/10   Entered 08/25/10 10:41:36   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 19 of 30

Page 19

1    motions.  It's the eighth and then the ninth, which is item

2    number 6.  We've added to those orders, just to make clear --

3    we really don't know what those claims are about but we added

4    language making it clear that the expungement of the claim

5    doesn't effect any workers' compensation claims that would be

6    entitled to treatment from New GM, just to make clear because

7    we suspect that some of them may be workers' comp claims.

8                We've also added to the order an order paragraph

9    which provides that if you hold a debt security and your claim

10   is being expunged it does not preclude you from participating

11   in recoveries under claims that are filed by the indenture

12   trustees.

13               THE COURT:  Um-hum.

14               MR. SMOLINSKY:  So hopefully that will give comfort

15   to -- there were some accounts that were IRA accounts.  I think

16   you could kind of maybe figure out that it's some kind of

17   security.  So we've added that language to make clear, and as

18   again, we'll serve a copy of the order on all the claimants.

19               THE COURT:  In fact, obligations on debt securities

20   were scheduled by the debtors as well, weren't they?

21               MR. SMOLINSKY:  That's correct, Your Honor, and we're

22   working on stipulations.

23               THE COURT:  Right, okay.

24               MR. SMOLINSKY:  So that takes care of items number 5

25   and number 6.

MOTORS LIQUIDATION COMPANY, et al.

Page 20

1       Your Honor, just one note on the seventh omnibus

2   objection.  There is a claim filed by Nidec Motors.  It's a

3   100,000 dollar claim and it's a duplicative claim which we're

4   getting rid of.  In connection with that motion that was filed

5   we got a call from counsel to Nidec Motors -- and I'm now

6   moving to item number 7 on the agenda.  Counsel told us that he

7   has not been able to contact his client and therefore filed a

8   motion to withdraw as counsel.

9       We have no objection to him withdrawing.  We did want

10  to note that he could not reach his client even before the

11  claim was filed so he filed a protective claim in the amount of

12  100,000 dollars, a 503(b)(9) and for goods sold.  He had no

13  idea when he was filing that motion whether or not there was

14  any obligation.  This is -- Nidec is not a U.S. company.  And

15  we would like his help in trying to withdraw the claim or at

16  least provide us with information that would allow us to

17  expunge that claim, given the fact that there's no real

18  background or basis for the claim in the first place.

19      MR. EISENBERG:  Your Honor, this is David Eisenberg

20  from Erman, Teicher, Miller, Zucker & Freedman --

21      THE COURT:  Yes.

22      MR. EISENBERG:   -- and I am the attorney that Mr.

23  Smolinsky talked to regarding our motion to withdraw.  And I

24  just want to note that up to the bar date for the 503(b)(9)

25  claims we had contact initially with our client who had

MOTORS LIQUIDATION COMPANY, et al.

Page 21

1   indicated that they had unsecured claims in this proceeding and

2   they also believed they had a 503(b)(9) claim.

3           Leading up to the bar date to file the 503(b)(9)

4   claim we were not able to contact our client.  We had

5   repeatedly requested information on the 503(b)(9) claim,

6   repeatedly advised of the impending bar date, and were not able

7   to get any information.  So we did in fact file an estimated

8   503(b)(9) proof of claim.

9           I did not -- we did not file the claim with

10  absolutely no information and having no knowledge that there

11  was a claim at all.  Rather, when we began the engagement with

12  our client they had indicated that they did have a twenty-day

13  claim.  However, at the time that the bar date arose we didn't

14  have any of the backup information or the exact figures.

15          THE COURT:  Um-hum.

16          MR. EISENBERG:  So when I -- earlier when speaking

17  with Mr. Smolinsky and some other attorneys at Weil, they had

18  indicated that should the Court grant our motion to withdraw

19  they would provide an extra thirty-day notice on the claims

20  objection to Nidec.

21          THE COURT:  Okay.  Well, Mr. Eisenberg, I didn't hear

22  Mr. Smolinsky asking for any 901(1) relief, and recognizing the

23  practical box you are in I'm not of a mind to do anything on my

24  own motion.  But here's what I want to do because, again, I

25  have to consider not just the fairness to Nidec but to the

Page 22

1    remainder of the creditor community.  But a question first to

2    either you, Mr. Eisenberg, or Mr. Smolinsky.  How much time has

3    Nidec now had to respond to your motion to withdraw?

4         MR. EISENBERG:  They've had at least -- well, they've

5    probably had four weeks or so.

6         THE COURT:  And to the knowledge of either you or Mr.

7    Smolinsky there has been no response to that request?

8         MR. EISENBERG:  Well, Your Honor, I can provide some

9    additional information.  After we filed the motion to

10   withdraw -- now, previous to the motion to withdraw we had

11   communicated with Nidec requesting that they stipulate to allow

12   us to withdraw.  We ended up filing the motion because we got

13   no response.  And in the interim, prior to the original

14   February 3rd response deadline we got an e-mail from our client

15   contact acknowledging that she had received the motion,

16   requesting that we reconsider.  And I replied to the e-mail

17   saying that we did not want to reconsider, we wanted to move

18   forward with the motion, and considering as much whether they

19   would, again, stipulate to our withdrawal.  I did not receive a

20   response to that e-mail.  I advised our client contact of the

21   response deadline, the original hearing date, and when the

22   hearing date was rescheduled I again used the same e-mail and

23   advised of the new hearing date.

24        THE COURT:  Okay.  All right, Mr. Smolinsky, any

25   further comments before I rule?

09-50026-mg    Doc 6797    Filed 08/24/10    Entered 08/25/10 10:41:36    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 23 of 30

Page 23

1          MR. SMOLINSKY:  Your Honor, the only other comment is

2    I referred to omnibus motion number 7 because that is a

3    duplicative claim that we are seeking to expunge.  In theory,

4    Mr. Eisenberg filed two claims and we should be able to expunge

5    one as part of omnibus 7.  If you'd like the thirty days that

6    Mr. Eisenberg was talking about we can re-notice that motion

7    with respect to the Nidec duplicative claim for another thirty

8    days, but it doesn't undo the fact that we still would have a

9    second claim out there.

10          THE COURT:  Well, the duplicative claim, it seems to

11   me, is a no-brainer --

12          MR. SMOLINSKY:  Um-hum.

13          THE COURT:  -- because by definition the underlying

14   claim would remain.  The question may be for today or may be

15   for another day but I assume that either you or the creditors'

16   committee is going to want to knock out the original claim at

17   some time going in the future.  And Mr. Eisenberg, Mr.

18   Smolinsky was just nodding yes but it wasn't audible.  And

19   that's where Mr. Eisenberg's motion is going to become more

20   relevant.

21          The motion to strike the duplicative claim is

22   granted.

23          Mr. Eisenberg, if your motion to withdraw has been

24   pending for the four weeks you said -- and I have no reason to

25   doubt your representation to me in that regard -- I am going to

Page 24

1    grant your motion asking -- excuse me, directing that you

2    settle an order so providing, at your earliest reasonable

3    convenience.

4            Now, on the underlying motion -- excuse me, claim,

5    the one that remains after me having stricken the duplicative

6    one, my tentative, subject to people's rights to be heard,

7    given what Mr. Eisenberg acknowledged, is that I should today

8    be issuing an order that strikes the original claim as well,

9    unless people are concerned about its due process implications,

10   and providing that Nidec has a fixed period of time -- and I'm

11   thinking thirty days -- to file a new claim that's properly

12   documented that will be deemed to have been as timely as the

13   original one.  But I have concerns about the integrity of the

14   process with that claim lying out there.  And I'll hear from

15   you, Mr. Smolinsky, and you, Mr. Eisenberg, as to whether that

16   cuts due process a little too fine and whether you have a

17   preferred approach, or whether you would like to simply tee

18   this up going forward for a dismissal, Mr. Smolinsky, with

19   notice to Nidec with Mr. Eisenberg having been excused from

20   having to participate any further.

21           MR. SMOLINSKY:  Your Honor, I'm not sure I have a due

22   process concern because we're effectively setting a new bar

23   date.  I would be concerned to the extent that they could file

24   a claim in excess of 100,000 dollars which was the amount of

25   the original claim.  I don't think that there's a basis to get

Page 25

1   a benefit from what they've done and to allow them to file a

2   claim in excess of that that's already on file.

3          THE COURT:  Mr. Eisenberg, it wasn't audible, but I

4   was kind of nodding in agreement to what Mr. Smolinsky said.

5   Do you want to be heard on that?

6          MR. EISENBERG:  Well, I don't really have the

7   objection on the due process grounds either, but I'm not

8   exactly sure what to say to what Mr. Smolinsky said.  I suppose

9   it's up to Your Honor.  Having no idea of what the -- you know,

10  what the true amount is, if any, I would hate to have Nidec be

11  limited to 100,000 dollars or less if in fact it is greater.

12         THE COURT:  Well, folks, the problem I have is that

13  when a claim has been filed in good faith the amount for which

14  the claim has been originally filed is not always a cap on its

15  ultimate allowance.  But I certainly don't want to pre-judge

16  that issue now. Ultimately what I'm going to do is divert a

17  little bit from my tentative.

18         Your motion to be -- authorize to withdraw is

19  granted, Mr. Eisenberg.

20         MR. EISENBERG:  Thank you, Your Honor.

21         THE COURT:  Mr. Smolinsky, have one of your folks tee

22  up the underlying claim for expungement at such time as you

23  want to do it.  The original claim in that 100,000 dollar

24  amount will remain for the time being.  And then you'll

25  certainly have the -- if there is a response then we'll see

Page 26

1    what Nidec says about what their claim is.  And there will have

2    to be a time, to state the obvious, at which Nidec will have to

3    show its entitlement to the allowance of the claim which has

4    been filed, not to mention any additional incremental amount

5    for which it might seek relief.  Your right to contend that it

6    shouldn't exceed 100,000 will be reserved, and if Nidec has

7    arguments to the contrary I'll hear what it has to say as well.

8            MR. SMOLINSKY:  Thank you, Your Honor.  I think that

9    that's prudent to just file an objection to the claim.  I would

10   only ask Your Honor to direct -- and it doesn't need to be in

11   the order -- that within five or ten days Mr. Eisenberg

12   delivers to us all the addresses and contact people that he has

13   been dealing with because we only have his law firm as

14   appropriate address to serve that objection.

15           THE COURT:  Mr. Eisenberg, I'll take your oral

16   promise, if you want to give it to me.  Otherwise I'll -- I

17   think I'll want it in the order.

18           MR. EISENBERG:  I will provide the information I

19   have, Your Honor.

20           THE COURT:  Okay.  Then you don't need to put it in

21   the order since he told us that, Mr. Smolinsky.

22           Okay.  Mr. Eisenberg, does that take care of that

23   seventh omnibus objection?

24           MR. EISENBERG:  Yes, it does, Your Honor.

25           THE COURT:  Then you can drop off the phone if you

MOTORS LIQUIDATION COMPANY, et al.

Page 27

 1   care to.

 2         MR. EISENBERG:  All right, thank you, Your Honor.

 3         THE COURT:  Okay.  What else have we got, Mr.

 4   Smolinsky?

 5         MR. SMOLINSKY:  I think that's it, Your Honor.

 6         THE COURT:  Okay, very good.  Thank you.  And anybody

 7   who was here just on GM is free to leave and I'm going to just

 8   sit in place; we're going to start in on the 9:45 calendar now.

 9         MR. SMOLINSKY:  Thank you, Your Honor.

10         THE COURT:  Thank you.

11       (Whereupon these proceedings were concluded at 9:52 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1

2                          I N D E X

3

4                          RULINGS

5                                              Page      Line

6   Debtors' motion for authority to implement    12       23

7   alternative dispute resolution procedures,

8   including mandatory mediation - approved

9

10  Debtors' objection to proofs of claim          17        8

11  filed by Theresa L. Marchbanks - granted

12

13  Debtors' sixth omnibus objection to amended    18        8

14  and superseded claims - granted

15

16  Debtors' seventh omnibus objection to          18       16

17  Duplicate claims - granted

18

19  Debtors' eighth and ninth omnibus              19       23

20  objections to claims with insufficient

21  documentation - granted

22

23  Debtors' seventh omnibus objection to          23       21

24  duplicate claims of Nidec Motors - granted

25

Page 29

1

2                              I N D E X

3

4                          RULINGS (Contd.)

5

6    Motion for Erman, Teicher, Miller, Zucker        23      23

7    Zucker & Freedman, P.C. to withdraw

8    as counsel for Nidec Motors & Actuators

9    - granted

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

1

2                  C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    SHARONA SHAPIRO

9    AAERT Certified Electronic Transcriber (CET**D-492)

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  August 24, 2010

17

18

19

20

21

22

23

24

25