HEARING DATE AND TIME: September 7, 2010 at 9:45 a.m.

S. Robert Schrager
Garry Graber
HODGSON RUSS LLP
One Grand Central Place
60 East 42nd Street
New York, New York 10165
212-661-3535

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY,** *et at.,* **f/k/a General Motors Corp.,** *et at.* | 09-50026 (REG) |
| | (Jointly Administered) |
| *Debtors.* | |

**LIMITED OBJECTION TO DEBTORS' MOTION
PURSUANT TO SECTIONS 105, 363, AND 365 OF THE
BANKRUPTCY CODE FOR AN ORDER AUTHORIZING
(I) THE DEBTORS TO ENTER INTO THE STOCK
PURCHASE AGREEMENT WITH GENERAL MOTORS
HOLDINGS, S.L., AND (II) THE ASSUMPTION AND
ASSIGNMENT OF THE BMW CONTRACT IN
CONNECTION WITH THE DEBTORS' ENTRY INTO THE
STOCK PURCHASE AGREEMENT**

Punch Corporation ("Punch"), by and though its counsel, Hodgson Russ LLP, hereby files this limited objection[1] to the Debtor's motion to (I) enter into a stock purchase agreement with General Motors Holdings, S.L., and (II) assign a certain contract in connection with the stock purchase agreement (the "Sale Motion"). Rather than approve the motion, Punch respectfully requests that this Court require that the Debtors submit the proposed General Motors Holdings, S.L. transaction (the "GMH Proposal") and the Punch binding offer to acquire all the

---

[1] Hodgson Russ LLP was retained by Punch, a European entity, early this morning with any objections to the Sale Motion due at 4.00 pm today. Movants would not adjourn the motion. Accordingly, Punch respectfully requests the opportunity to revise this objection if further review presents additional facts.

- 1 -

shares of General Motors Strasburg SAS (the "Company") and assume a BMW contract (the "Punch Proposal") to an independent fiduciary to evaluate the competing offers. In support hereof, Punch states as follows:

1. As set forth in the Debtor's motion, over the past twelve months the Debtor has attempted to market the Company's assets consisting primarily of an engineering, manufacturing, and die-cast facility located near the French/German border in Strasbourg, France. That facility employs approximately 1,060 assembly workers and managers.

2. Punch is a diversified manufacturing company with historic roots in manufacturing services, specifically the manufacture of plastic and metal components and the production of component assemblies for third-parties, such as Philips and Sony. Punch is an international business, with manufacturing capacity in Belgium, Slovakia, Mexico, Hong Kong, and mainland China, as well as sales and distribution operations in a number of markets, including Germany, France, the Netherlands, Ireland, the United Kingdom, and the United States. The company has been listed on the Euronext Brussels Stock Exchange since 1999.

3. Punch entered into discussions with the Debtor, had several meetings and made several revised offers to acquire the assets at issue. At one point, Punch was the last interested party. However, during those negotiations, there was a critical issue—obtaining a Supply Agreement with General Motors Corporation ("GMC").

4. During these discussions, GMC stated that it would not continue to purchase new products from the Company past 2013. The negotiations therefore concerned the supply of current products during the period 2010 through 2013.

5. In addition, GMC requested that certain amounts needed to be paid to it, in order to secure continued supplies and to convince GMC to maintain production of current products in Strasbourg instead of transferring production to Mexico.

6. Based on these statements from GMC, assuming no future business and products would be given by GMC to the Company, Punch explained its future strategy and products to the Debtors, and made several offers. As late as May 25th, 2010, Punch sent a revised proposal to Debtors of 1 €, based upon the assumption that GMC would not continue business with the Company past 2013. However, due to the uncertainty, no transaction could be concluded.

7. Hence, in Paragraph 11 of the Sale Motion, Debtors can state that "Both candidates submitted non-binding offers of one euro (1€) for the common stock of the Company, but these offers contained specific conditions and proposed new projects that MLC and the Company concluded were fraught with risk." What Debtors fail to reveal is that Punch's offer assumed that GMC would stop purchasing products from Company and that Punch had to budget and plan for investments of over €200 Million in the Company for the development of new products.

8. Thus, the Debtors state, "Accordingly, both parties withdrew their interest in purchasing the Company and negotiations with these two parties ceased, leaving no potential buyers for the Company remaining". (Sales Motion, ¶11).

9. Instead, on May 26th, 2010, the day after the Punch offer, it appears that the Debtors entered into a term sheet setting forth the principal terms of the transfer of the Company's shares. Debtors base the motion at bar to approve that transfer on their claim that, "Subsequently, New GM proposed to MLC terms under which New GM would purchase the shares of the Company for a purchase price of one euro (1), the same price that had been offered

- 3 -

by the two previous potential buyers. Such a transaction appeared as the best, and indeed only, option for the sale of the Company". (Sale Motion, ¶12).

10. It now appears that Punch was negotiating with only part of the facts available to it. Based upon the new facts revealed in the Sale Motion, Punch has submitted a written, binding, unconditional offer to acquire the shares of the Company. A copy of the Punch Proposal is annexed hereto as Exhibit A.

11. The Punch Proposal is, in brief summary,

a. US$3 Million for the Company's shares; and
b. Assignment and assumption of the BMW contract and payment to the Debtors of 50% of all future cash proceeds arising from the related litigation (which is estimated to be between €35 Million to in excess of €One Billion.)

12. In addition, under French law, the Works Council of the Company has the right to be heard in cases of any acquisition of the Company and has the right to give advice. Punch agrees to honor all the negotiated and agreed collective bargaining agreements and working conditions already in place and willing to commit to additional steps to ensure the future of the Company. Punch is prepared to have immediate meetings with the representatives of the Works Council.

13. It is now clear that the Sale Motion, the sale process and the outcome proposed by the Debtor will benefit only a few selected entities. Accordingly, it is submitted that in order to have a fair and equitable means of ensuring that the proposed sale will bring the greatest benefit to the creditors it is necessary that an independent fiduciary be appointed who will fully evaluate the competing offers.

WHEREFORE, for all the foregoing reasons, it is respectfully requested that the Court enter an order denying the Debtors' motion and appointing an independent fiduciary to evaluate between the GMH Proposal and the Punch Proposal.

Dated: New York, New York
       August 30, 2010

                                      Respectfully submitted,

                                      ___*s/S. Robert Schrager*
                                      S. Robert Schrager
                                      Garry Graber
                                      **HODGSON RUSS LLP**
                                      *Attorneys for Punch Corporation*
                                      One Grand Central Place
                                      60 East 42nd Street
                                      New York, NY 10165
                                      212-661-3535