UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re:                                                   :
                                                         : Chapter 11
MOTORS LIQUIDATION COMPANY, *et al.*,                    :
*f/k/a/* General Motors Corp., *et al.*,                 : Case No. 09-50026 (REG)
                                                         :
                    Debtors.                             : (Jointly Administered)
                                                         :
-------------------------------------------------------- x

# RESPONSE OF THE UNITED STATES TRUSTEE REGARDING APPLICATION BY AP SERVICES, LLC, AS CRISIS MANAGERS TO THE DEBTORS FOR APPROVAL OF SUCCESS FEE AND REIMBURSEMENT OF EXPENSES

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | Summary Statement | | 1 |
| II. | Jurisdiction, Venue and Statutory Predicates | | 1 |
| III. | Factual Background | | 2 |
| IV. | Legal Standards | | 5 |
| | A. | Reasonableness | 5 |
| | B. | Interim Compensation | 7 |
| | C. | Actual and Necessary Expenses | 9 |
| V. | Response | | 10 |
| | A. | AP Services, LLC | 10 |
| VI. | Conclusion | | 14 |

## TABLE OF AUTHORITIES

**Reported Decisions**

| | |
|---|---:|
| In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002) | 8 |
| In re American Preferred Prescription, Inc., 218 B.R. 680 (Bankr. E.D.N.Y. 1998) | 9 |
| In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987) | 7-8 |
| In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007) | 7 |
| In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997) | 7, 8, 9 |
| In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988) | 7 |
| In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007) | 2 |
| In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) | 7 |
| In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995) | 7, 8 |
| Matter of Codesco, Inc., 15 B.R. 354 (Bankr. S.D.N.Y. 1981) | 9 |
| In re Engel, 124 F.3d 567 (3d Cir. 1997) | 5 |
| In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982) | 8-9 |
| In re General Coffee Corp., 39 B.R. 7 (Bankr. S.D. Fla. 1984) | 9 |
| In re Hillsborough Holdings Corp., 125 B.R. 837 (Bankr. M.D. Fla. 1991) | 9 |
| Howard & Zukin Capital v. High River Ltd. P'ship, 2007 WL 1217268 (S.D.N.Y., Apr. 24, 2007) | 6 |
| Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19 (Bankr. 2d Cir. 1997) | 6 |
| In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) | 6-7 |
| In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005) | 9 |
| In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993) | 5 |
| In re National Buy-Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981) | 9 |

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008)     6

In re Spanjer Bros., Inc., 191 B.R. 738 (Bankr. N.D. Ill. 1996)     8

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987)     9

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995)     7

In re UNR Indus., Inc., 72 B.R. 796 (Bankr. N.D. Ill. 1987)     9

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253 (3d Cir. 1995)     7

### Statutes

11 U.S.C. § 101 et seq., the "Bankruptcy Code"
    11 U.S.C. § 327     7
    11 U.S.C. § 328     5, 7
    11 U.S.C. § 330     1, 2, 5
    11 U.S.C. § 330(a)(1)     5
    11 U.S.C. § 330(a)(1)(A)     5
    11 U.S.C. § 330(a)(1)(B)     5
    11 U.S.C. § 330(a)(3)     5, 6
    11 U.S.C. § 331     1, 4, 7, 8
    11 U.S.C. § 1107(a)     2
    11 U.S.C. § 1108     2
28 U.S.C. § 157     1
28 U.S.C. § 157(b)     1
28 U.S.C. § 1334     1
28 U.S.C. § 1408     1

### Federal Rules, Local Rules, Local Orders & Other Guidelines

Federal Rule of Bankruptcy Procedure 2016     2, 6

Local Bankruptcy Rules for the Southern District of New York, Rule 2016-1     2

Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases     2

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330     2

**RESPONSE OF THE UNITED STATES TRUSTEE
REGARDING APPLICATION FOR SUCCESS FEE
AND REIMBURSEMENT OF EXPENSES**

TO: **THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:**

Tracy Hope Davis, the United States Trustee for Region 2 (the **"United States Trustee"**), has reviewed the Second Supplement to Application by AP Services, LLC, which seeks a Success Fee and reimbursement of out-of-pocket expenses for the period from June 1, 2009 through July 10, 2009.

## I. SUMMARY STATEMENT

As set forth in the tables below, for services performed from June 1, 2009 through July 10, 2009, AP Services seeks a Success Fee in the amount of $13,000,000.00 and reimbursement of out-of-pocket expenses totaling $444,647.31.

| Applicant | *Period* | Fees | Expenses | Hours |
|---|---|---|---|---|
| AP Services, LLC | 06/1/09-07/10/09 | $11,872,878.420 | $444,647.31 | 23,787.95 |
| Success Fee | | $13,000,000.00 | | |

## II. JURISDICTION, VENUE AND STATUTORY PREDICATES

1.  The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

2.  The statutory predicates for the relief sought in the Applications are sections 330 and 331 of title 11, United States Code (the **"Bankruptcy Code"**). This matter was initiated

pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the **"Local Rules"**), Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the **"Local Guidelines"**), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the **"UST Guidelines,"** together with the Local Guidelines, are referred to herein collectively as the **"Guidelines"**).[1]

### III. FACTUAL BACKGROUND

3. On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed voluntary cases under Chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate and manage their business and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5. On June 3, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Docket No. 356. On November 30, 2009, the United States Trustee filed the First Amended Appointment of Official Committee of Unsecured Creditors. Docket No. 4552.

6. On March 5, 2010, the United States Trustee appointed the Committee of Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**). Docket

---

[1] The Bankruptcy Court for this judicial district has adopted the UST Guidelines. *See* In re Brous, 370 B.R. 563, 569 at n.8. (Bankr. S.D.N.Y. 2007); and General Order M-389, at 1.

No. 5206.

7. On June 1, 2009, the Debtors filed a motion seeking the entry of an order authorizing and approving the sale of substantially all of their assets to NGMCO, Inc., a U.S. Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, together with all documents and agreements as well as all exhibits, schedules and addenda thereto (as amended, the **"MPA"**). Docket No. 92.

8. On July 5, 2009, the Court entered an Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief was entered (the **"Sale Order"**). Docket No. 2968.

9. On July 9, 2009, NGMCO, Inc. filed the required documentation to change its name to General Motors Company ("**GMCo.**").

10. On July 10, 2009, pursuant to the MPA and this Court's Sale Order, GMCo. acquired substantially all of the assets of the Debtors.

11. Since then, under the jurisdiction and supervision of this Court, the Debtors have engaged in an orderly wind-down of their remaining assets and business affairs.

12. On June 25, 2009, the Court entered the Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers. Docket No. 2534.

13. On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee entered into a stipulation for the appointment of Brady C. Williamson as fee examiner (the **"Fee Examiner"**). Docket No. 4707. Pursuant to the Stipulation and Order With

Respect to Appointment of a Fee Examiner (the **"Fee Examiner Order,"** entered December 23 2009), the Court approved the appointment.

14. On February 16, 2010, under the Fee Examiner Order, the Fee Examiner filed his First Status Report and Advisory, which summarizes the applicable standards and guidelines for the Fee Examiner's review of applications to approve reasonable fees and reimburse reasonable costs in the Debtors' bankruptcy cases (the **"First Advisory"**). Docket No. 5002.

15. On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory (the **"Second Advisory"**), which broadens the First Advisory. Docket No. 5463.

16. On August 7, 2009, the Court entered its Order, Pursuant to §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the **"Interim Compensation Order"**). Docket No. 3711.

17. The Applications generally reflect that, pursuant to the Interim Compensation Order, the Retained Professionals have received payment of 80 percent of fees accrued during the First and Second Fee Periods.

18. The Debtors are current with the filing of their monthly operating reports, as of July 2010. Docket No. 6727. The "Condensed Combined Debtors-In-Possession Statement of Net Assets" (the **"Net Asset Sheet"**), which is contained in the Debtors' monthly operating report for the period ended July 31, 2010 (the **"July Operating Report"**), indicates "Cash and Cash Equivalents" of $976,565,000.00, and accrued professional fees of $39,894,000.00 as of July 31, 2010. *Id*., at 5.

19. The Net Asset Sheet also indicates that total assets of the combined estates are $1.20 billion. *Id*. However, excluding pre-petition liabilities of approximately $32.2 billion, the

total liabilities of the estates were the greater figure of approximately $1.29 billion as of July 31, 2010. *Id.*

21.  The Debtors are current with the payment of quarterly fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2010.

### IV.  LEGAL STANDARDS

**A.  <u>Reasonableness</u>**

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

As set forth above, section 330 focuses on reasonableness and benefit to the estate of the professionals' services. <u>In re Lederman Enter., Inc.</u>, 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and made a beneficial contribution to the estate or its creditors. <u>In re Engel</u>, 124 F.3d 567, 573 (3d Cir. 1997). To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

Each applicant bears the burden of proof for its claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y., Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (Bankr. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y.

1997). To satisfy its burden under Bankruptcy Rule 2016, an applicant must justify its charges with detailed, specific, itemized documentation. In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

To ensure that fee determinations are "as fair as possible, the judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995). Accordingly, the Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (*quoting* In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)). Further, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v.Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

**B.      Interim Compensation**

Interim compensation to professionals, as reflected in section 331, finds its origins in the equity powers of the bankruptcy court. In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987). Therefore, the bankruptcy court has broad discretion in the course of examining and awarding

interim fee applications. *Id*.; *see also* In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (interim fee awards are discretionary).

In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." *Id*. Because the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion. *Id*. Furthermore, the Court also has the discretion to defer ruling on any or all of the Applications, until the time for final applications is proper. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation. *See* Bennett Funding, 213 B.R. at 244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award." Child World, 185 B.R. at 17. Bankruptcy Code section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." *Id*. Thus, the statute "authorizes the award of interim compensation, but does not mandate it." In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); *see also* Barron, 73 B.R. at 814 (Congressional intent underlying section 331 "was only to give officers of the estate an *opportunity* to apply for reimbursement." Italics in orig.)

Historically, the solvency of a bankruptcy estate has also weighed heavily in the judiciary's exercise of discretion in fee matters. In particular, "where there are insufficient funds in the debtor's estate to pay interim allowances, these allowances may be deferred until a time when unencumbered funds become available for payment." First Hartford, 23 B.R. at 732 (due to lack of unencumbered assets, granting interim allowances, but deferring payment until

confirmation of reorganization plan); Matter of Codesco, Inc., 15 B.R. 354, 356 (Bankr. S.D.N.Y. 1981) (payment deferred until unencumbered funds available for payment); In re National Buy-Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981) (where the amount of administrative claims exceeds the value of estate assets, professionals are not entitled to immediate payment of interim compensation).

Similarly, courts have denied interim compensation where professionals have "yet to produce any cognizable and tangible results." In re Hillsborough Holdings Corp., 125 B.R. 837, 840 (Bankr. M.D. Fla. 1991). Interim compensation has also been denied, and moratoriums on interim compensation imposed until, courts have been convinced the case is "moving towards a point of resolution." In re UNR Indus., Inc., 72 B.R. 796, 799 (Bankr. N.D. Ill. 1987); *see also* In re General Coffee Corp., 39 B.R. 7, 8 (Bankr. S.D. Fla. 1984) (denying all interim compensation on grounds that allowances would be premature pending the resolution of chapter 11 case).

**C.    Actual and Necessary Expenses**

Under section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (*quoting* In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation. Bennett Funding, 213 B.R. at 398. Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client." In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

## V.  RESPONSE

### A.  <u>AP Services, LLC</u>

The United States Trustee did not object to the deferral of the second installment of the Success Fee based upon the expectation that the Debtors' plan of liquidation (the "Plan") would be confirmed by the time the second installment of the Success Fee became due.  Based upon the United States Trustee's understanding that the Disclosure Statement and Plan will be filed in the near future, the United States Trustee does not object to the Success Fee.

#### <u>Expenses</u>

The Applicant incurred expenses totaling $444,647.31 from June 1, 2009 through June 30, 2009.[2]

#### <u>Lack of Adequate Description or Explanation</u>

Several of the expense items were not adequately described and further explanation is required before the reasonableness of the expenses can be determined.  The Applicant requests reimbursement for "Airfare Change Fees" in the amount of $2,954.28, without providing an explanation justifying the need for the indicated expense.  The Applicant requests reimbursement of "Airfare Service Charge" in the amount of $4,070.40, and has advised this office that a service charge is imposed on every airfare ticket purchase.

In a similar fashion, with respect to the following travel expenses, for the most part, the origin and/or destination information has not been identified:  "Gas/Fuel" in the amount of $1,740.27, "Mileage" in the amount of $6,335.25, and "Parking & Tolls" in the amount of

---

[2]The Application lists expenses incurred prior to the Petition Date, and the Applicant has advised the United States Trustee that any pre-petition expenses shall be reconciled against its pre-petition retainer of $20 million.  Docket No. 952, p. 14.

-10-

$7,972.87. The reasonableness of the expenses cannot be determined without the required detail.

Additional information and explanation are also needed for the following expenses: "Cell Phone" expenses in the amount of $225.20; "Computer Supplies/Support" in the amount of $163.94; "Phone-Internet Access" in the amount of $416.40; "Other" expenses in the amount of $1,291.28; "Long Distance Calls" in the amount of $226.67; "Research" in the amount of $121.94; "Subscription/Books" in the amount of $148.01; and "Supplies" in the amount of $203.58. Among the expenses identified as "Other," there were significant expenses incurred by various individuals:

| Date | Individual | Description | Amount |
|---|---|---|---|
| 06/04/09 | Roberto Mastrigli | Other | $100.00 |
| 06/14/09 | Natalie Meuche | Other | $92.98 |
| 06/14/09 | Susanna Kim | Other | $66.32 |
| 06/14/09 | Torrey Jordan | Other | $51.81 |

**Meals**

The Applicant incurred the following meal expenses aggregating $24,841.17: "Client Meals & Entertainment" in the amount of $784.15, "Meals and Tips" in the amount of $17,232.77, and "Meals - Engagement Team" in the amount of $6,824.25. A large number of the meals exceeded $20.00 per meal and should be reduced. The Applicant should also limit the total amount spent on meals during a single day for each recordkeeper. The following charges appear to be in error or are excessive:

-11-

| Date | Individual | Description | Amount |
|---|---|---|---|
| 06/12/09 | James Redwine | Meal & Tips - Dinner | $11.50 |
| 06/12/09 | James Redwine | Meal & Tips - Dinner | $17.37 |
| 06/12/09 | James Redwine | Meal & Tips - Dinner | $13.66 |
| 06/12/09 | James Redwine | Meal & Tips - Dinner | $20.00 |
| 06/12/09 | James Redwine | Meal & Tips - Dinner | $37.86 |
| 06/12/09 | James Redwine | Meal & Tips - Breakfast | $4.25 |
| 06/12/09 | | Total | $104.64 |
| | | | |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $8.45 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $15.55 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $8.35 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $13.43 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $5.00 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $12.43 |
| 06/12/09 | Alexander Deligtisch | Meal & Tips - Breakfast | $13.91 |
| 06/12/09 | | Total | $77.12 |
| | | | |
| 06/18/09 | Garry Brown[3] | Meal & Tips - Dinner | $34.00 |
| 06/18/09 | Garry Brown | Meal & Tips - Dinner | $20.37 |
| 06/18/09 | Garry Brown | Meal & Tips - Dinner | $13.94 |
| 06/18/09 | Garry Brown | Meal & Tips - Breakfast | $8.00 |
| 06/18/09 | | Total | $76.31 |

---

[3]This individual is not listed as providing any services to the Debtor, and according, as set forth below on page 13 of this Response, the United States Trustee objects to the reimbursement of any expenses incurred by Garry Brown.

-12-

**Cab Fare/Ground Transportation**

The Applicant requests reimbursement for "Cab Fare/Ground Transportation" expenses totaling $ 27,955.38. The Applicant should confirm that no expenses for commuting between an individual's residence and his or her regular place of business are being sought. The Applicant should also confirm whether transportation expenses to an individual's residence were incurred because the employee was required to work overtime. See Local Guidelines, Sec. E(5).

**Non-Timekeeper Expenses**

The Application should identify and describe all individuals requesting reimbursement of expenses whether or not such individual performs any billable services for the Debtors. There appears to be a significant number of expenses incurred by "Garry Brown," although no such individual appears to be listed among the personnel providing services for the Debtors. Expenses by individuals who have not provided any billable services or who are not administrative personnel entitled to reimbursement of expenses should not be reimbursed to the Applicant.

**Miscellaneous Expenses**

The reimbursement request for "Bank Charges" in the amount of $5.00 and "Credit Card Annual Fees" in the amount of $13.15. These do not appear to be expenses that should be borne by the Debtors and accordingly should not be reimbursed to the Applicant.

## VI.  CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court enter an order sustaining the requested reductions, substantiations, an explanations raised herein and granting such other relief as is just.

Dated: New York, New York
       August 30, 2010

>                                         Respectfully submitted,
>                                         TRACY HOPE DAVIS
>                                         UNITED STATES TRUSTEE
>
> *By:*    */s/ Brian S. Masumoto*
>          Brian S. Masumoto
>          Trial Attorney
>          33 Whitehall Street, 21st Floor
>          New York, New York 10004
>          Tel. No. (212) 510-0500
>          Fax No. (212) 668-2255