# EXHIBIT A

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                                    :          **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY**, *et al.*,  :          **09-50026 (REG)**
         **f/k/a General Motors Corp.,** *et al.*   :
:
                                      **Debtors.**     :          **(Jointly Administered)**
:
------------------------------------------------------------x

**NOTICE OF HEARING ON
MOTION OF DEBTORS FOR ENTRY OF
ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)
AUTHORIZING EXERCISE OF STOCK POWERS TO APPROVE AMENDMENT
TO CERTIFICATE OF INCORPORATION OF GENERAL MOTORS COMPANY**

**PLEASE TAKE NOTICE** that on August 27, 2010, Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), filed a motion (the "**Motion**") for an order authorizing the Debtors,

as holders of common stock in General Motors Company f/k/a NGMCO, Inc. ("**New GM**"), to

exercise their common stock powers to approve a Certificate of Amendment to the Amended and

Restated Certificate of Incorporation of New GM (the "**Charter Amendment**"). The Charter

Amendment places certain restrictions on large shareholders of New GM, but will not affect the

distributions of securities in New GM to creditors of the Debtors under a chapter 11 plan of

liquidation.  The Debtors believe that the Charter Amendment will preserve and enhance the value of New GM's securities, which they hold as a result of the sale of substantially all of their assets to New GM.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **September 24**, **2010 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that the Motion may be accessed on the website maintained by the Debtors' claims agent, www.motorsliquidationdocket.com.  A link to the Court docket is located under the "Court Docket" tab.  Creditors without access to the Internet may request a copy of the Motion by mail to The Garden City Group, Inc., Motors Liquidation Company Claims Agent, P.O. Box 9386, Dublin, Ohio 43017-4286 or by calling The Garden City Group, Inc. at 1-703-286-6401.

PLEASE TAKE FURTHER NOTICE that any responses or objections to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi)

Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), so as to be received no later than **September 17, 2010, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

           **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       August 27, 2010

           /s/ Joseph H. Smolinsky
           Harvey R. Miller
           Stephen Karotkin
           Joseph H. Smolinsky

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :    09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                    :
                    Debtors.        :    (Jointly Administered)
                                    :
-------------------------------------------------------x
```

**MOTION OF DEBTORS FOR ENTRY OF**
**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)**
**AUTHORIZING EXERCISE OF STOCK POWERS TO APPROVE AMENDMENT**
**TO CERTIFICATE OF INCORPORATION OF GENERAL MOTORS COMPANY**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

**Relief Requested**

1.      As a result of the sale of substantially all of the Debtors' assets to General

Motors Company (f/k/a NGMCO, Inc.) ("**New GM**") (the "**363 Transaction**"), the Debtors are

significant stockholders of New GM.  New GM is soliciting support for an amendment to its

Amended and Restated Certificate of Incorporation[1] (the "**Charter**") in an attempt to preserve

certain tax benefits which are of substantial value to New GM.  By this Motion, the Debtors seek

entry of an order (the "**Stock Powers Order**"), pursuant to sections 105(a) and 363(b) of title 11,

United States Code (the "**Bankruptcy Code**"), authorizing MLC to exercise its stock powers to

vote its shares in favor of an amendment to the Charter of New GM (the "**Charter**

**Amendment**"), substantially in the form of that certain Certificate of Amendment (the

"**Amendment Certificate**") annexed hereto as **Exhibit "A,"** and to take such actions as are

necessary in furtherance thereof.  The proposed Stock Powers Order is annexed hereto as

**Exhibit "B."**

### Jurisdiction

2.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

3.    On June 1, 2009, four of the Debtors (the "**Initial Debtors**")[2] commenced

with this Court voluntary cases under chapter 11 of the Bankruptcy Code, and on October 9,

2009, two additional Debtors (the "**Realm/Encore Debtors**")[3] commenced with this Court

voluntary cases under chapter 11 of the Bankruptcy Code, which cases are jointly administered

with those of the Initial Debtors under Case Number 09-50026 (REG).

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Amendment Certificate (as defined below).

[2] The Initial Debtors are Motors Liquidation Company (f/k/a General Motors Corporation), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.).

[3] The Realm/Encore Debtors are Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc.

4.      Because of the structure of the 363 Transaction, New GM has succeeded to the net operating losses and other tax attributes previously held by MLC (collectively, the "**Tax Benefits**").  These Tax Benefits are believed to aggregate approximately $42 billion as of December 31, 2009.

5.      As described further in Section 3(b) of the Amendment Certificate, the purpose of the Charter Amendment is to reduce the risk of an ownership change with respect to New GM that would limit New GM's ability to utilize its Tax Benefits.  New GM's Tax Benefits are valuable assets because the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), generally permits corporations to carry over their losses and tax credits to offset future income, thereby reducing tax liability in future periods.  *See* 26 U.S.C. §§ 39, 172, 904(c).  The Tax Benefits potentially allow New GM to significantly reduce future U.S. federal income tax liability, depending upon its future operating results.  Moreover, it is the Debtors' understanding that New GM's underwriter has determined that the trade restrictions to be imposed under the Charter Amendment generally are expected by the market and that the intended savings from the Tax Benefits could substantially enhance New GM's cash position and therefore enhance the equity value of New GM for the benefit of MLC and other shareholders of New GM.

6.      The ability of New GM to use the Tax Benefits to reduce future tax liability is subject to certain statutory limitations.  Sections 382 and 383 of the Tax Code limit a corporation's use of its net operating losses, tax credits, and certain other tax attributes to offset future income or tax after the corporation experiences an "ownership change."  For purposes of section 382, an ownership change generally occurs when the percentage of a corporation's equity held by one or more "5-percent shareholders" (as such term is defined in section 382 of the Tax Code) increases by more than 50 percentage points over the lowest percentage of stock owned by

such shareholder(s) at any time during the relevant testing period (usually three years). As a result of the 363 Transaction and after taking into account any transactions and distributions expected to result from MLC's contemplated chapter 11 plan, New GM will have experienced a substantial percentage point increase of the type described in the preceding sentence for section 382 purposes. Accordingly, unrestricted stock trading would impose a significant risk of a section 382 ownership change occurring as a result of or after an initial public offering of New GM stock (the "**IPO**"). Such ownership change could substantially limit the ability of New GM to use the Tax Benefits, thereby resulting in a significant loss of value, which would impact MLC as a stockholder in New GM, as well as the creditors of the Debtors, who are expected to receive distributions in the form of, among other things, New GM stock and warrants to purchase additional shares of New GM stock.

7.      Accordingly, through the Charter Amendment, New GM is seeking the ability to preclude certain transfers of, and to allow it to monitor and possibly object to other changes in the ownership of, Corporation Securities (as defined in the Amendment Certificate), to protect against a section 382 ownership change after the IPO. In order to put the Charter Amendment in place with maximum effectiveness, New GM requires the unanimous vote of all stockholders, including MLC, in favor of the Charter Amendment. For that reason, shareholder approval is being sought prior to an IPO by New GM. New GM has indicated that in the absence of the Charter Amendment, New GM would be compelled to institute a more restrictive program to preserve the Tax Benefits, such as the issuance of stock purchase rights intended to make a transaction that could cause an ownership change prohibitively expensive to the buyer (a form of "poison pill").

8.      The Board of Directors of New GM approved the Charter Amendment in substantially the form annexed hereto as **Exhibit "A"** on August 3, 2010, subject to its rights to further revise the Charter Amendment.  New GM has now scheduled a shareholder meeting to vote on the Charter Amendment on September 28, 2010.

### The Charter Amendment

9.      The Amendment Certificate inserts a new Tenth Article into the Charter, and provides in relevant part:[4]

> **Transfer and ownership restrictions**: From and after the day prior to the IPO, any attempted transfer of Corporation Securities prior to the Expiration Date[5] (a "**Transfer**") shall be prohibited *ab initio* to the extent that, as a result of such Transfer, either (i) any Person would become a Five Percent Stockholder, or (ii) the Percentage Stock Ownership in New GM of any Five Percent Stockholder would be increased so as to become a Five Percent Transaction.  A Transfer by any MLC Entity to its creditors, beneficiaries or another MLC Entity is excluded from the Transfer and ownership restrictions.

> **Exceptions**: Any Transfer that would otherwise be prohibited under the Amendment Certificate shall be permitted if (i) prior to the Transfer, the Board of Directors of New GM approves such Transfer in accordance with the provisions of the Amendment Certificate; (ii) such Transfer is pursuant to any transaction which involves a party acquiring a majority of the outstanding shares of Common Stock in New GM; or (iii) such Transfer is to an underwriter for distribution in a public offering.

---

[4]  The description of the terms of the Amendment Certificate in this Motion is for summary purposes only, and, in the event of any conflict between this description and the Amendment Certificate, the Amendment Certificate shall control.

[5]  "**Expiration Date**" means the earliest of (i) the Close of Business (as defined in the Amendment Certificate) on December 31, 2013, subject to extension in accordance with Section 2(b) of the Amendment Certificate; (ii) the date upon which the Board of Directors determines by resolution that due to the repeal of section 382 of the Tax Code, or any other change in law, the Charter Amendment is no longer necessary for the preservation of Tax Benefits; (iii) the first day of any taxable year of New GM to which the Board of Directors determines by resolution that no Tax Benefits may be carried forward; or (iv) such date as the Board of Directors determines for the restrictions set forth in Section 2 of the Amendment Certificate to terminate.

**Authority of the Board of Directors:** The Board of Directors of
New GM shall have the power to determine all matters necessary
for compliance with the Charter Amendment.

### The Relief Requested Should Be Approved by the Court

10.    While voting MLC's shares would likely be deemed to be in the ordinary
course of its business for votes such as re-electing members of the board of directors or
appointing auditors, in an abundance of caution, the Debtors are seeking Court authorization to
exercise MLC's stock powers to vote in favor of the Charter Amendment. Section 363(b)(1) of
the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may
use, sell, or lease, other than in the ordinary course of business, property of the estate." 11
U.S.C. § 363(b)(1). It could be argued that by voting its shares for an extraordinary purpose
such as this, MLC is using property of the estate outside the ordinary course of its business. It is
for this reason that this Motion is brought.

11.    Although section 363 of the Bankruptcy Code does not set forth a standard
for determining when it is appropriate for a court to authorize the sale, use, or disposition of a
debtor's assets, courts in the Second Circuit and elsewhere have required such use to be based
upon the sound business judgment of the debtor. *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d
141 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from
the evidence presented before him a good business reason to grant such application); *Comm. of
Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983)
(same); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that
"bankruptcy court can authorize [an action] under section 363(b)(1) when a sound business
purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del.
1991) (noting that section 363 of the Bankruptcy Code requires that the debtor's decision be
supported by a "sound business purpose"); *In re Montgomery Ward Holding Corp.*, 242 B.R.

147, 153 (Bankr. D. Del. 1999) (same); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason).

12.    It is generally understood that "[w]hen the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

13.    The Debtors submit that authorizing the Charter Amendment is a valid exercise of their business judgment and in the best interests of their estates.  MLC is a stockholder in New GM, and the protection of New GM's Tax Benefits will ultimately benefit MLC through the potential increase in New GM's cash position, which may in turn maintain or increase New GM's equity value.  Failure to authorize the Charter Amendment could have a material adverse effect on New GM's cash position, in that it could increase New GM's tax payments.  Accordingly, the Debtors submit that their authorization of the Charter Amendment represents the sound exercise of their business judgment and should be approved in all respects.

**<u>Notice</u>**

14.    Notice of this Motion has been provided to parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr.

P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24, 2010 [Docket No. 6750].  In addition, notice of this Motion (without a copy of the Motion) will be served on all known creditors of the Debtors, along with instructions as to how to obtain a copy of the Motion.

15.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       August 27, 2010

                    /s/ Joseph H. Smolinsky
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

## Exhibit A

**The Amendment Certificate**

CERTIFICATE OF AMENDMENT
OF
AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
OF
GENERAL MOTORS COMPANY

General Motors Company, a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), does hereby certify that:

1.    The name of the Corporation is General Motors Company.

2.    The date of filing of the Corporation's original Certificate of Incorporation with the Secretary of State of the State of Delaware was August 11, 2009.

3.    The date of filing of the Amended and Restated Certificate of Incorporation of the Corporation with the Secretary of State of the State of Delaware was October 15, 2009.

4.    This amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

5.    This Certificate of Amendment shall be effective upon filing.

6.    The Amended and Restated Certificate of Incorporation of the Corporation, as amended, be, and it hereby is, amended to add the following provisions as ARTICLE TENTH thereof:

TENTH.

Section 1. Definitions. As used in this ARTICLE TENTH, the following capitalized terms have the following meanings when used herein with initial capital letters (and any references to any portions of Treasury Regulation §1.382–2T shall include any successor provisions):

"Agent" has the meaning set forth in Section 5 of this ARTICLE TENTH.

"Board of Directors" or "Board" means the board of directors of the Corporation.

"Business Day" shall mean any day other than a Saturday, a Sunday, or a day on which banking institutions in the State of New York are authorized or obligated by law or executive order to close.

"Close of Business" on any given date shall mean 5:00 p.m., New York time, on such date; provided, however, that, if such date is not a Business Day, it shall mean 5:00 p.m., New York time, on the next succeeding Business Day.

"Code" means the United States Internal Revenue Code of 1986, as amended, including any successor statute.

"Common Stock" means the common stock, par value $0.01 per share, of the Corporation, and any Security Entitlement with respect to such Common Stock.

"Corporation Security" or "Corporation Securities" means (i) shares of Common Stock, (ii) shares of Preferred Stock (other than preferred stock described in Section 1504(a)(4) of the Code or treated as so described pursuant to Treasury Regulation §1.382−2(a)(3)(i)), (iii) warrants, rights, or options (including options within the meaning of Treasury Regulation §1.382−2T(h)(4)(v)) to purchase Securities of the Corporation and (iv) any Stock; provided, however, that "Corporation Security" or "Corporation Securities" shall not mean shares of Series A Fixed Rate Cumulative Perpetual Preferred Stock, par value $0.01 per share, of the Corporation.

"Effective Date" means the date of filing of this Certificate of Amendment of Amended and Restated Certificate of Incorporation with the Secretary of State of the State of Delaware.

"Excess Securities" has the meaning given such term in Section 4(a) of this ARTICLE TENTH;

"Expiration Date" means the earliest of (i) the Close of Business on December 31, 2013, subject to extension in accordance with Section 2(b) of this ARTICLE TENTH; (ii) the date upon which the Board of Directors determines by resolution that due to the repeal of Section 382 of the Code, or any other change in law, this ARTICLE TENTH is no longer necessary for the preservation of Tax Benefits; (iii) the first day of any taxable year of the Corporation to which the Board of Directors determines by resolution that no Tax Benefits may be carried forward; or (iv) such date as the Board of Directors determines for the restrictions set forth in Section 2 of this ARTICLE TENTH to terminate.

"Exchange Act" means the Securities Exchange Act of 1934, as amended.

"Five Percent Transaction" has the meaning set forth in Section 2(a) of this ARTICLE TENTH.

"Five Percent Stockholder" means a Person with a Percentage Stock Ownership of *[4.9%]* or more.

"MLC Entity" means Motors Liquidation Company or any trust (whether one or more) created pursuant to a chapter 11 plan of Motors Liquidation Company, as amended or modified from time to time, which has been confirmed by the United States Bankruptcy Court for the Southern District of New York.

2

"Percentage Stock Ownership" means the percentage stock ownership interest of any Person for purposes of Section 382 of the Code as determined in accordance with Treasury Regulation §§1.382–2T(g), (h) and (k) and 1.382–4; provided, that (1) for purposes of applying Treasury Regulation §1.382–2T(k)(2), the Corporation shall be treated as having "actual knowledge" of the beneficial ownership of all outstanding shares of Stock that would be attributed to any individual or entity, and (2) for the sole purpose of determining the Percentage Stock Ownership of any entity (and not for the purpose of determining the Percentage Stock Ownership of any other Person), Corporation Securities held by such entity shall not be treated as no longer owned by such entity pursuant to Treasury Regulation §1.382–2T(h)(2)(i)(A).

"Person" means any individual, firm, corporation, business trust, joint stock company, partnership, trust, limited liability company, limited partnership, governmental or other entity, or any group of Persons making a "coordinated acquisition" of shares or otherwise treated as an entity within the meaning of Treasury Regulation §1.382–3(a)(1), and shall include any successor (by merger or otherwise) of any such entity; provided, however, that a Person shall not mean a Public Group.

"Preferred Stock" means the preferred stock, par value $0.01 per share, of the Corporation.

"Prohibited Distributions" means any and all dividends or other distributions paid by the Corporation with respect to any Excess Securities received by a Purported Transferee.

"Prohibited Transfer" means any Transfer or purported Transfer of Corporation Securities to the extent that such Transfer is prohibited and/or void under this ARTICLE TENTH.

"Proposed Transaction" has the meaning set forth in Section 3(b) of this ARTICLE TENTH.

"Public Group" has the meaning set forth in Treasury Regulation §1.382–2T(f)(13).

"Purported Transferee" has the meaning set forth in Section 4(a) of this ARTICLE TENTH.

"Request" has the meaning set forth in Section 3(b) of this ARTICLE TENTH.

"Requesting Person" has the meaning set forth in Section 3(b) of this ARTICLE TENTH.

3

"Securities" and "Security" each has the meaning set forth in Section 7 of this ARTICLE TENTH.

"Security Entitlement" has the meaning set forth in Section 8-102(17) of the Uniform Commercial Code.

"Stock" means any interest or Security Entitlement that would be treated as "stock" of the Corporation pursuant to Treasury Regulation §1.382–2T(f)(18).

"Subsidiary" or "Subsidiaries" of any Person means any corporation or other entity of which securities or other ownership interests having ordinary voting power sufficient to elect a majority of the board of directors or other Persons performing similar functions are beneficially owned, directly or indirectly, by such Person, and any corporation or other entity that is otherwise controlled by such Person.

"Tax Benefits" means the net operating loss carryovers, capital loss carryovers, general business credit carryovers, alternative minimum tax credit carryovers and foreign tax credit carryovers, as well as any loss or deduction attributable to a "net unrealized built-in loss" of the Corporation or any of its Subsidiaries as of December 31, 2009, within the meaning of Section 382 of the Code.

"Transfer" means, any direct or indirect sale, transfer, assignment, conveyance, pledge or other disposition or other action taken by a Person, other than the Corporation, that alters the Percentage Stock Ownership of any Person. A Transfer also shall include the creation or grant of an option (including an option within the meaning of Treasury Regulation §1.382–2T(h)(4)(v)). Notwithstanding anything to the contrary, a Transfer shall not include any Transfer (determined without regard to this sentence) by any MLC Entity to its creditors, beneficiaries or another MLC Entity. For the avoidance of doubt, a Transfer shall not include (i) the creation or grant of an option by the Corporation or (ii) the issuance or grant of Stock by the Corporation (including, but not limited to, the exercise of any warrant issued by the Corporation).

"Transferee" means, with respect to any Transfer, any Person to whom Corporation Securities are, or are proposed to be, Transferred.

"Transferor" means, with respect to any Transfer, any Person by or from whom Corporation Securities are, or are proposed to be, Transferred.

"Treasury Regulations" means the regulations, including temporary regulations or any successor regulations promulgated under the Code, as amended from time to time.

4

Section 2. <u>Transfer and Ownership Restrictions</u>.

(a)  In order to preserve the Tax Benefits, from and after the day prior to the Initial Public Offering (as defined in ARTICLE NINTH), any attempted Transfer of Corporation Securities prior to the Expiration Date and any attempted Transfer of Corporation Securities pursuant to an agreement entered into prior to the Expiration Date shall be prohibited and void *ab initio* to the extent that, as a result of such Transfer (or any series of Transfers of which such Transfer is a part), either (i) any Person would become a Five Percent Stockholder or (ii) the Percentage Stock Ownership in the Corporation of any Five Percent Stockholder would be increased (any such Transfer that would have the result described in clauses (i) or (ii), a "Five Percent Transaction").  The prior sentence is not intended to prevent the Corporation Securities from being DTC-eligible or CDS-eligible and shall not preclude either the transfer to DTC, CDS or to any other securities intermediary, as such term is defined in § 8-102(14) of the Uniform Commercial Code, of Corporation Securities not previously held through DTC, CDS or such intermediary or the settlement of any transactions in the Corporation Securities entered into through the facilities of a national securities exchange or any national securities quotation system; <u>provided</u> that if such transfer or the settlement of the transaction would result in a Prohibited Transfer, such Transfer shall nonetheless be a Prohibited Transfer subject to all of the provisions and limitations set forth in the remainder of this ARTICLE TENTH.

(b)  The Expiration Date is subject to extension for two (2) additional one (1) year terms (*i.e.*, until December 31, 2014, and December 31, 2015) if, in each case, the Board of Directors determines by a resolution adopted not more than three (3) months prior to the then scheduled Expiration Date that the extension of the transfer restrictions provided in Section 2(a) of this ARTICLE TENTH is reasonably necessary in order to preserve the Tax Benefits and would be in the best interests of the Corporation and its stockholders.

Section 3.  <u>Exceptions; Waiver of Transfer and Ownership Restrictions</u>.

(a)    Any Transfer of Corporation Securities that would otherwise be prohibited pursuant to Section 2(a) of this ARTICLE TENTH shall nonetheless be permitted if (i) prior to such Transfer being consummated (or, in the case of an involuntary Transfer, as soon as practicable after the transaction is consummated), the Board of Directors approves the Transfer in accordance with Sections 3(b) or 3(c) of this ARTICLE TENTH (such approval may relate to a Transfer or series of identified Transfers), (ii) such Transfer is pursuant to any transaction, including, but not limited to, a merger or consolidation, in which all holders of Corporation Securities receive, or are offered the same opportunity to receive, cash or other consideration for all such Corporation Securities, and upon the consummation of which the acquiror will own at least a majority of the outstanding shares of Common Stock or (iii) such Transfer is a Transfer to an underwriter for distribution in a public offering; <u>provided</u>, <u>however</u>, that Transfers

5

by such underwriter to purchasers in such offering remain subject to this ARTICLE TENTH.

(b)   The restrictions contained in this ARTICLE TENTH are for the purposes of reducing the risk that any "ownership change" (as defined in the Code) with respect to the Corporation may limit the Corporation's ability to utilize its Tax Benefits.   The restrictions set forth in Section 2(a) of this ARTICLE TENTH shall not apply to a proposed Transfer that is a Five Percent Transaction if the Transferor or the Transferee obtains the authorization of the Board of Directors in the manner described below.   In connection therewith, and to provide for effective policing of these provisions, any Person who desires to effect a Five Percent Transaction (a "Requesting Person") shall, prior to the date of such transaction for which the Requesting Person seeks authorization (the "Proposed Transaction"), request in writing (a "Request") that the Board of Directors review the Proposed Transaction and authorize or not authorize the Proposed Transaction in accordance with this Section 3(b).   A Request shall be mailed or delivered to the Secretary of the Corporation at the Corporation's principal place of business. Such Request shall be deemed to have been received by the Corporation when actually received by the Corporation.   A Request shall include:  (i) the name, address and telephone number of the Requesting Person; (ii) the number and Percentage Stock Ownership of Corporation Securities then beneficially owned by the Requesting Person; (iii) a reasonably detailed description of the Proposed Transaction or Proposed Transactions for which the Requesting Person seeks authorization; and (iv) a request that the Board of Directors authorize the Proposed Transaction pursuant to this Section 3(b). The Board of Directors shall endeavor to respond promptly to each Request.   The Board of Directors may authorize a Proposed Transaction if it determines that the Proposed Transaction would jeopardize the Corporation's ability to preserve and use the Tax Benefits. Any determination by the Board of Directors not to authorize a Proposed Transaction shall cause such Proposed Transaction to be deemed a Prohibited Transfer.   The Board of Directors may impose any conditions that it deems reasonable and appropriate in connection with authorizing any Proposed Transaction.   In addition, the Board of Directors may require an affidavit or representations from such Requesting Person or opinions of counsel to be rendered by counsel selected by the Requesting Person (and reasonably acceptable to the Board of Directors), in each case, as to such matters as the Board of Directors may reasonably determine with respect to the preservation of the Tax Benefits.   Any Requesting Person who makes a Request to the Board of Directors shall reimburse the Corporation, within thirty (30) days of demand therefor, for all reasonable out-of-pocket costs and expenses incurred by the Corporation with respect to any Proposed Transaction, including, without limitation, the Corporation's reasonable costs and expenses incurred in determining whether to authorize the Proposed Transaction, which costs may include, but are not limited to, any expenses of counsel and/or tax advisors engaged by the Board of Directors to advise the Board of Directors or deliver an opinion thereto.   Any authorization of the Board of Directors hereunder may be

1877884.20

given prospectively or retroactively. Furthermore, the Board of Directors shall approve within ten (10) Business Days of receiving a Request as provided in this Section 3(b) any proposed Transfer: (x) that does not add to any aggregate increase in Percentage Stock Ownership by one or more Five Percent Stockholders over the lowest Percentage Stock Ownership by such Five Percent Stockholders at any time during the relevant testing period, in all cases for purposes of Section 382 of the Code, or (y) if such proposed Transfer and all prior and anticipated Transfers effected or expected to be effected during the relevant testing period do not result in an aggregate "owner shift" (as defined in the Code) of more than 25% for purposes of Section 382 of the Code. For purposes of clause (x) of the preceding sentence, any MLC Entity's ownership shall be considered as having been acquired during the relevant testing period.

(c) Notwithstanding the foregoing, the Board of Directors may determine that the restrictions set forth in Section 2(a) of this ARTICLE TENTH shall not apply to any particular transaction or transactions, whether or not a request has been made to the Board of Directors, including a Request pursuant to Section 3(b) of this ARTICLE TENTH, subject to any conditions that it deems reasonable and appropriate in connection therewith. Any determination of the Board of Directors hereunder may be made prospectively or retroactively.

(d) The Board of Directors, to the fullest extent permitted by law, may exercise the authority granted by this ARTICLE TENTH through duly authorized officers or agents of the Corporation. Nothing in this Section 3 shall be construed to limit or restrict the Board of Directors in the exercise of its fiduciary duties under applicable law.

Section 4. <u>Excess Securities</u>.

(a) No employee or agent of the Corporation shall record any Prohibited Transfer, and the purported Transferee of such a Prohibited Transfer (the "Purported Transferee") shall not be recognized as a stockholder of the Corporation for any purpose whatsoever in respect of the Corporation Securities which are the subject of the Prohibited Transfer (the "Excess Securities"). Until the Excess Securities are acquired by another Person in a Transfer that is not a Prohibited Transfer, the Purported Transferee shall not be entitled to any rights of stockholders of the Corporation with respect to such Excess Securities, including, without limitation, the right to vote such Excess Securities and to receive dividends or distributions, whether liquidating or otherwise, in respect thereof, if any, and the Excess Securities shall be deemed to remain with the Transferor unless and until the Excess Securities are transferred to the Agent pursuant to Section 5 of this ARTICLE TENTH or until an approval is obtained under Section 3 of this ARTICLE TENTH. After the Excess Securities have been acquired in a Transfer that is not a Prohibited Transfer, the Corporation Securities shall cease to be Excess Securities. For this purpose, any Transfer of Excess

Securities not in accordance with the provisions of this Section 4 or Section 5 of this ARTICLE TENTH shall also be a Prohibited Transfer.

(b) The Corporation may make such arrangements or issue such instructions to its stock transfer agent as may be determined by the Board of Directors to be necessary or advisable to implement this ARTICLE TENTH, including, without limitation, authorizing, in accordance with Section 9 of this ARTICLE TENTH, such transfer agent to require an affidavit from a Purported Transferee regarding such Person's actual and constructive ownership of stock and other evidence that a Transfer will not be prohibited by this ARTICLE TENTH as a condition to registering any Transfer.

Section 5. <u>Transfer to Agent</u>.   If the Board of Directors determines that a Transfer of Corporation Securities constitutes a Prohibited Transfer then, upon written demand by the Corporation sent within thirty (30) days of the date on which the Board of Directors determines that the attempted Transfer constitutes a Prohibited Transfer, the Purported Transferee shall transfer or cause to be transferred any certificate or other evidence of ownership of the Excess Securities within the Purported Transferee's possession or control, together with any Prohibited Distributions, to an agent designated by the Board of Directors (the "Agent"). The Agent shall thereupon sell to a buyer or buyers, which may include the Corporation, the Excess Securities transferred to it in one or more arm's-length transactions (on the public securities market on which such Excess Securities are traded, if possible, or otherwise privately); <u>provided</u>, <u>however</u>, that any such sale must not constitute a Prohibited Transfer and <u>provided</u>, <u>further</u>, that the Agent shall effect such sale or sales in an orderly fashion and shall not be required to effect any such sale within any specific time frame if, in the Agent's discretion, such sale or sales would disrupt the market for the Corporation Securities, would otherwise adversely affect the value of the Corporation Securities or would be in violation of applicable securities laws. If the Purported Transferee has resold the Excess Securities before receiving the Corporation's demand to surrender Excess Securities to the Agent, the Purported Transferee shall be deemed to have sold the Excess Securities for the Agent, and shall be required to transfer to the Agent any Prohibited Distributions and proceeds of such sale, except to the extent that the Corporation grants written permission to the Purported Transferee to retain a portion of such sales proceeds not exceeding the amount that the Purported Transferee would have received from the Agent pursuant to Section 6 of this ARTICLE TENTH if the Agent rather than the Purported Transferee had resold the Excess Securities.

Section 6. <u>Application of Proceeds and Prohibited Distributions</u>.   The Agent shall apply any proceeds of a sale by it of Excess Securities and, if the Purported Transferee has previously resold the Excess Securities, any amounts received by the Agent from a Purported Transferee, together, in either case, with any Prohibited Distributions, as follows: (a) first, such amounts shall be paid to the Agent to the extent necessary to cover its costs and expenses incurred in

8

connection with its duties hereunder; (b) second, any remaining amounts shall be paid to the Purported Transferee, up to the amount paid by the Purported Transferee for the Excess Securities (or the fair market value at the time of the Transfer, in the event the purported Transfer of the Excess Securities was, in whole or in part, a gift, inheritance or similar Transfer, such fair market value to be calculated on the basis of the closing market price for the Corporation Securities on the principal U.S. stock exchange on which the Corporation Securities are listed or admitted for trading on the day before the Prohibited Transfer, provided, however, that (1) if the Corporation Securities are not listed or admitted for trading on any U.S. stock exchange but are traded in the over-the-counter market, such fair market value shall be calculated based upon the difference between the highest bid and lowest asked prices, as such prices are reported by the National Association of Securities Dealers through its NASDAQ system or any successor system on the day before the Prohibited Transfer or, if not so reported, on the last preceding day for which such quotations exist, or (2) if the Corporation Securities are neither listed nor admitted to trading on any U.S. stock exchange and are not traded in the over-the-counter market, then such fair market value shall be determined in good faith by the Board of Directors); and (c) third, any remaining amounts shall be paid to the Transferor that was party to the subject Prohibited Transfer, or, if the Transferor that was party to the subject Prohibited Transfer cannot be readily identified, to one or more organizations qualifying under section 501(c)(3) of the Code (or any comparable successor provision) selected by the Board of Directors. The Purported Transferee of Excess Securities shall have no claim, cause of action or any other recourse whatsoever against any Transferor of Excess Securities. The Purported Transferee's sole right with respect to such shares shall be limited to the amount payable to the Purported Transferee pursuant to this Section 6.  In no event shall the proceeds of any sale of Excess Securities pursuant to this Section 6 inure to the benefit of the Corporation or the Agent, except to the extent used to cover costs and expenses incurred by the Agent in performing its duties hereunder.

Section 7.  Modification of Remedies for Certain Indirect Transfers. In the event of any Transfer that does not involve a transfer of securities of the Corporation within the meaning of Delaware law ("Securities," and individually, a "Security") but which would cause (i) any Person to become a Five Percent Stockholder or (ii) the Percentage Stock Ownership in the Corporation of any Five Percent Stockholder to be increased, the application of Section 5 and Section 6 of this ARTICLE TENTH shall be modified as described in this Section 7.  In such case, no such Five Percent Stockholder shall be required to dispose of any interest that is not a Security, but such Five Percent Stockholder and/or any Person whose ownership of Securities is attributed to such Five Percent Stockholder shall be deemed to have disposed of and shall be required to dispose of sufficient Securities (which Securities shall be disposed of in the inverse order in which they were acquired) to cause such Five Percent Stockholder, following such disposition, not to be in violation of this ARTICLE TENTH.   Such disposition shall be deemed to occur simultaneously with the Transfer giving rise

9

to the application of this provision, and such number of Securities that are deemed to be disposed of shall be considered Excess Securities and shall be disposed of through the Agent as provided in Sections 5 and 6 of this ARTICLE TENTH, except that the maximum aggregate amount payable either to such Five Percent Stockholder, or to such other Person that was the direct holder of such Excess Securities, in connection with such sale shall be the fair market value of such Excess Securities at the time of the purported Transfer. All expenses incurred by the Agent in disposing of such Excess Securities shall be paid out of any amounts due such Five Percent Stockholder or such other Person. The purpose of this Section 7 is to extend the restrictions in Sections 2 and 5 of this ARTICLE TENTH to situations in which there is a Five Percent Transaction without a direct Transfer of Securities, and this Section 7, along with the other provisions of this ARTICLE TENTH, shall be interpreted to produce the same results, with differences as the context requires, as a direct Transfer of Corporation Securities.

Section 8. <u>Legal Proceedings; Prompt Enforcement</u>. If the Purported Transferee fails to surrender the Excess Securities or the proceeds of a sale thereof, in either case, with any Prohibited Distributions, to the Agent within thirty (30) days from the date on which the Corporation makes a written demand pursuant to Section 5 of this ARTICLE TENTH (whether or not made within the time specified in Section 5 of this ARTICLE TENTH), then the Corporation may take any actions it deems necessary to enforce the provisions hereof, including the institution of legal proceedings to compel the surrender. Nothing in this Section 8 shall (a) be deemed inconsistent with any Transfer of the Excess Securities provided in this ARTICLE TENTH being void *ab initio*, (b) preclude the Corporation in its discretion from immediately bringing legal proceedings without a prior demand or (c) cause any failure of the Corporation to act within the time periods set forth in Section 5 of this ARTICLE TENTH to constitute a waiver or loss of any right of the Corporation under this ARTICLE TENTH. The Board of Directors may authorize such additional actions as it deems advisable to give effect to the provisions of this ARTICLE TENTH.

Section 9. <u>Obligation to Provide Information</u>. As a condition to the registration of the Transfer of any Stock, any Person who is a beneficial, legal or record holder of Stock, and any proposed Transferee and any Person controlling, controlled by or under common control with the proposed Transferee, shall provide an affidavit containing such information, to the extent reasonably available and legally permissible, as the Corporation may reasonably request from time to time in order to determine compliance with this ARTICLE TENTH or the status of the Tax Benefits of the Corporation.

Section 10. <u>Legends</u>. The Board of Directors may require that any certificates issued by the Corporation evidencing ownership of shares of Stock that are subject to the restrictions on transfer and ownership contained in this ARTICLE TENTH bear the following legend:

10

"THE TRANSFER OF SECURITIES REPRESENTED HEREBY IS SUBJECT TO RESTRICTION PURSUANT TO ARTICLE TENTH OF THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION OF GENERAL MOTORS COMPANY, AS AMENDED AND IN EFFECT FROM TIME TO TIME, A COPY OF WHICH MAY BE OBTAINED FROM THE CORPORATION UPON REQUEST."

The Board of Directors may also require that any certificates issued by the Corporation evidencing ownership of shares of Stock that are subject to conditions imposed by the Board of Directors under Section 3 of this ARTICLE TENTH also bear a conspicuous legend referencing the applicable restrictions.

The Corporation shall have the power to make appropriate notations upon its stock transfer records and to instruct any transfer agent, registrar, securities intermediary or depository with respect to the requirements of this ARTICLE TENTH for any uncertificated Corporation Securities or Corporation Securities held in an indirect holding system.

Section 11. <u>Authority of Board of Directors</u>.

(a)   All determinations and interpretations of the Board of Directors shall be interpreted or determined, as the case may be, by the Board of Directors in its sole discretion.

(b)   The Board of Directors shall have the power to determine all matters necessary for assessing compliance with this ARTICLE TENTH, including, without limitation, (i) the identification of Five Percent Stockholders, (ii) whether a Transfer is a Five Percent Transaction or a Prohibited Transfer, (iii) the Percentage Stock Ownership in the Corporation of any Five Percent Stockholder, (iv) whether an instrument constitutes a Corporation Security, (v) the amount (or fair market value) due to a Purported Transferee pursuant to Section 6 of this ARTICLE TENTH, and (vi) any other matters which the Board of Directors determines to be relevant; and the good faith determination of the Board of Directors on such matters shall be conclusive and binding for all the purposes of this ARTICLE TENTH.  In addition, the Board of Directors may, to the extent permitted by law, from time to time establish, modify, amend or rescind by-laws, regulations and procedures of the Corporation not inconsistent with the provisions of this ARTICLE TENTH for purposes of determining whether any Transfer of Corporation Securities would jeopardize the Corporation's ability to preserve and use the Tax Benefits and for the orderly application, administration and implementation of this ARTICLE TENTH.

(c)   Nothing contained in this ARTICLE TENTH shall limit the authority of the Board of Directors to take such other action to the extent permitted by law as it deems necessary or advisable to protect the Corporation and its stockholders in preserving the Tax Benefits.  Without limiting the generality of the foregoing,

11

in the event of a change in law making one or more of the following actions necessary or desirable, the Board of Directors may, by adopting a written resolution, (i) modify the ownership interest percentage in the Corporation or the Persons covered by this ARTICLE TENTH, (ii) modify the definitions of any terms set forth in this ARTICLE TENTH or (iii) modify the terms of this ARTICLE TENTH as appropriate, in each case, in order to prevent an ownership change for purposes of Section 382 of the Code as a result of any changes in applicable Treasury Regulations or otherwise; provided, however, that the Board of Directors shall not cause there to be such modification unless it determines, by adopting a written resolution, that such action is reasonably necessary or advisable to preserve the Tax Benefits or that the continuation of these restrictions is no longer reasonably necessary for the preservation of the Tax Benefits; provided, further, that notwithstanding anything to the contrary herein, the Board of Directors shall not amend this ARTICLE TENTH so as to prohibit, restrict or condition a Transfer described in the penultimate sentence of the definition of "Transfer," nor amend this proviso. Stockholders of the Corporation shall be notified of such determination through a filing with the Securities and Exchange Commission or such other method of notice as the Secretary of the Corporation shall deem appropriate.

(d)    In the case of an ambiguity in the application of any of the provisions of this ARTICLE TENTH, including any definition used herein, the Board of Directors shall have the power to determine the application of such provisions with respect to any situation based on its reasonable belief, understanding or knowledge of the circumstances. In the event this ARTICLE TENTH requires an action by the Board of Directors but fails to provide specific guidance with respect to such action, the Board of Directors shall have the power to determine the action to be taken so long as such action is not contrary to the provisions of this ARTICLE TENTH.    All such actions, calculations, interpretations and determinations that are done or made by the Board of Directors in good faith shall be conclusive and binding on the Corporation, the Agent, and all other parties for all other purposes of this ARTICLE TENTH.    The Board of Directors may delegate all or any portion of its duties and powers under this ARTICLE TENTH to a committee of the Board of Directors as it deems necessary or advisable and, to the fullest extent permitted by law, may exercise the authority granted by this ARTICLE TENTH through duly authorized officers or agents of the Corporation. Nothing in this ARTICLE TENTH shall be construed to limit or restrict the Board of Directors in the exercise of its fiduciary duties under applicable law.

Section 12. Reliance. To the fullest extent permitted by law, the Corporation and the members of the Board of Directors shall be fully protected in relying in good faith upon the information, opinions, reports or statements of the chief executive officer, the chief financial officer, the chief accounting officer or the corporate controller of the Corporation or of the Corporation's legal counsel, independent auditors, transfer agent, investment bankers or other employees and agents in making the determinations and findings contemplated by this ARTICLE

TENTH, and the members of the Board of Directors shall not be responsible for any good faith errors made in connection therewith. For purposes of determining the existence and identity of, and the amount of any Corporation Securities owned by any stockholder, the Corporation is entitled to rely on the existence and absence of filings of Schedule 13D or 13G under the Exchange Act (or similar filings), as of any date, subject to its actual knowledge of the ownership of Corporation Securities.

Section 13. <u>Benefits of This ARTICLE TENTH</u>. Nothing in this ARTICLE TENTH shall be construed to give to any Person other than the Corporation or the Agent any legal or equitable right, remedy or claim under this ARTICLE TENTH. This ARTICLE TENTH shall be for the sole and exclusive benefit of the Corporation and the Agent.

Section 14. <u>Severability</u>. The purpose of this ARTICLE TENTH is to facilitate the Corporation's ability to maintain or preserve its Tax Benefits. If any provision of this ARTICLE TENTH or the application of any such provision to any Person or under any circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision of this ARTICLE TENTH.

Section 15. <u>Waiver</u>. With regard to any power, remedy or right provided herein or otherwise available to the Corporation or the Agent under this ARTICLE TENTH, (a) no waiver will be effective unless expressly contained in a writing signed by the waiving party, and (b) no alteration, modification or impairment will be implied by reason of any previous waiver, extension of time, delay or omission in exercise, or other indulgence.

[Signature Page Follows]

1877884.20

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Amendment as of this [___] day of [_____], 2010

GENERAL MOTORS COMPANY

By: _____
Name:
Title:

## **Exhibit B**

**Stock Powers Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
| | : | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**ORDER GRANTING**
**MOTION OF DEBTORS FOR ENTRY OF**
**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)**
**AUTHORIZING EXERCISE OF STOCK POWERS TO APPROVE AMENDMENT**
**TO CERTIFICATE OF INCORPORATION OF GENERAL MOTORS COMPANY**

Upon the motion, dated August 27, 2010 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11, United States

Code (the "**Bankruptcy Code**"), for an order authorizing MLC to exercise its stock powers to

approve that certain Certificate of Amendment (the "**Amendment Certificate**") of Amended and

Restated Certificate of Incorporation (the "**Charter**") of General Motors Company ("**New

GM**"), and take such actions as are necessary in furtherance thereof (the "**Charter

Amendment**"); and due and proper notice of the Motion having been provided, and it appearing

that no other or further notice need be provided; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

---

[1] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion.

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

        ORDERED that the Motion is granted as provided herein; and it is further

        ORDERED that the Debtors are authorized and empowered, but not directed,

pursuant to section 363(b) of the Bankruptcy Code, to use their stock powers to cause the Charter

Amendment substantially in the form annexed to the Motion as Exhibit "A"; and it is further

        ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
          _____, 2010

                                      _____
                                      United States Bankruptcy Judge