HEARING DATE AND TIME: September 7, 2010 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
**In re**                                          :     Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY,** *et al.*,  :     09-50026 (REG)
     f/k/a **General Motors Corp.,** *et al.*   :
:
                    **Debtors.**                :     (Jointly Administered)
:
------------------------------------------------------------x

**REPLY OF DEBTORS TO LIMITED OBJECTION**
**OF PUNCH CORPORATION TO DEBTORS' MOTION PURSUANT**
**TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY**
**CODE FOR AN ORDER AUTHORIZING (I) THE DEBTORS TO**
**ENTER INTO THE STOCK PURCHASE AGREEMENT**
**WITH GENERAL MOTORS HOLDINGS, S.L., AND (II) THE**
**ASSUMPTION AND ASSIGNMENT OF THE BMW CONTRACT IN**
**CONNECTION WITH THE DEBTORS' ENTRY INTO THE**
<u>**STOCK PURCHASE AGREEMENT**</u>

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully represent:[1]

## Preliminary Statement

1. The Debtors have evaluated the Punch Proposal (which, at best, constitutes a non-binding term sheet) and have determined, in their business judgment, that the Punch Proposal is fraught with substantial risk and uncertainty regarding Punch's ability to consummate the transaction, and contains only a nominal and largely illusory increase in purchase price. On the other hand, the Pending Transaction currently before the Court for approval will ensure the ongoing operations of the Company and the employment of more than 1,200 people who currently work for the Company, as well as avoid the substantial shutdown costs if the Company cannot continue operations.

2. Among other considerable advantages compared to the Punch Proposal, the Pending Transaction: (a) includes a fully executed and binding SPA that provides for the continuation of the Company's substantial business relationship with New GM; (b) has cleared the French regulatory process necessary to close the transaction, including obtaining a favorable opinion from the Company's Works Council and obtaining anti-trust clearance in France, Germany, and Italy; (c) includes a fully negotiated revised collective bargaining agreement with the Company's unions and enjoys the support of the Company's workers; (d) would eliminate any potential wind-

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

down costs of the Company, which the Debtors estimate could reach €200 million if the Debtors abandon the Pending Transaction and the Punch Proposal does not close; and (e) enjoys the support of the *Mandataire ad hoc*, a receiver appointed by the President of the Commercial Chamber of the Civil Court of Strasbourg.

3. The Punch Proposal provides none of this certainty. The only arguable benefit of the Punch Proposal – if, indeed, it were consummated – is a relatively nominal increase in the purchase price of approximately $3 million. Simply stated, the Debtors do not believe that this speculative benefit when weighed against the obvious risks and disruptions attendant to abandoning the Pending Transaction, warrant any serious consideration of the Punch Proposal which constitutes nothing more than a pure option on Punch's behalf at a nominal price with no protection to the Debtors if the proposed deal fails to close for any reason.

4. Accordingly, in the exercise of the Debtors' sound business judgment and consistent with their fiduciary duties, the Debtors have determined that the Punch Proposal is not an acceptable alternative to the Pending Transaction. In addition, the Debtors have been advised that the Unsecured Creditors Committee (the "**UCC**") appointed in these chapter 11 cases concur with the Debtors' business judgment and support proceeding with seeking approval of the Pending Transaction at the Sale Hearing. The Debtors therefore request that the Court overrule the Punch Limited Objection and approve the Sale, which must close under the terms of the SPA on or before September 30, 2010.

**Background**

5.      On August 13, 2010, MLC filed a motion (the "**Sale Motion**") requesting entry of an order (the "**Sale Approval Order**") pursuant to sections 105(a), 363(b), and 365(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving (i) the sale of the Transferred Stock of General Motors Strasbourg, SAS (the "**Company**") to a wholly owned subsidiary of General Motors, LLC  ("**New GM**") pursuant to the SPA (the "**Pending Transaction**"), and (ii) the assumption and assignment of the BMW Contract to the Company in connection with the Sale.

6.      On August 30, 2009, Punch Corporation ("**Punch**") filed a limited objection (the " **Punch Limited Objection**") to the Sale Motion and annexed to the Punch Limited Objection a purported "binding" alternative offer to purchase the shares of the Company and assume the BMW Contract (the "**Punch Proposal**").  No other offers or expressions of interest have been received by the Debtors other than the Punch Proposal.

**The Pending Transaction Is the Best Offer and Should Be Approved**

7.      As discussed in detail in the Sale Motion, the Pending Transaction materialized following a robust Sale Process conducted by investment bank Merrill Lynch & Co., which lasted approximately one year and included contacting more than 50 potential buyers. Indeed, during the Sale Process, MLC engaged in extensive negotiations with Punch concerning a potential transaction.  However, after many months of back and forth, Punch was unable to reach a satisfactory accommodation with New GM with respect to a definitive supply agreement and other matters, and Punch decided to

withdraw its interest in the Company by way of e-mail dated May 26, 2010.  It is only on the eve of MLC's seeking approval of the Pending Transaction that Punch, curiously, has now expressed a renewed interest in pursuing a potential transaction with respect to the Company, despite the fact that no circumstances relevant to Punch have changed.

8.   After almost a year of intense marketing and failed negotiations with Punch and other potential buyers, it became clear that the stock of the Company could not be sold for a meaningful amount in the context of these chapter 11 cases. Accordingly, the focus of the sale turned to avoidance of the potential exposure for MLC and the Company that would occur upon a shutdown of its operations and to preserving employment at the facility.  As discussed in detail below, the Pending Transaction accomplishes these goals and has the support of every major constituency in these chapter 11 cases and in France; whereas, the Punch proposal merely constitutes an inexpensive option with no certainty of closing with the obvious risks associated with abandoning the Pending Transaction.

9.   The Pending Transaction includes a fully negotiated and committed SPA, which was annexed to the Sale Motion and summarized therein.  The SPA resulted from extensive arm's-length, good faith negotiations between MLC and New GM that took place over many months.  Approval of the Pending Transaction ensures that the Company's second largest customer, which accounts for almost half of its current revenue, will continue its ongoing business relationship with the Company and provides the best avenue for the long term viability of the Company's manufacturing facility.  Absent approval of the Pending Transaction, there is no guarantee that New GM, which does not have an executed supply agreement with the Company, will

continue to purchase transmissions from the Company,[2] and there is a material risk that the Company will no longer be able to continue as a going concern.  The Debtors' detailed estimates put any such wind-down costs of the Company at approximately €200 million.[3]  Conversely, the Pending Transaction assures the preservation of the employment of approximately 1,200 French workers and also completely mitigates the risk of plant closure and the substantial costs associated therewith.  A conditional $3 million in additional consideration hardly warrants the assumption of these risks.

10. In addition to ensuring the continued operation of the Company, the Pending Transaction has also obtained all of the necessary French regulatory approvals, including, most importantly, the issuance of a favorable opinion from the Company's Works Council[4].  Under Article L 2323-6 of the French Labor Code, the Works Council must be informed and consulted on any project of reorganization or change of control of a French company before the signing of any binding documentation.  The sale of a French company cannot be completed until the Works Council has been consulted and issues a formal opinion on the proposed transaction.  In order to obtain

---

[2] Punch asserts in the Punch Proposal that it can bind New GM to continue purchasing transmissions and other products from the Company even in the absence of a written contract.  The Debtors have been informed by New GM that they vehemently oppose any such assertion and would vigorously litigate this issue if necessary, during which time the supply of transmission from the Company to New GM would be jeopardized and may result in financial issues for the Company.

[3] While it is the opinion of MLC that under French law, a major share, if not all, of any such wind down costs would normally be borne by the plant's two major customers – New GM and BMW– it is unclear whether New GM and BMW still could be required to pay the wind down costs if they resulted from MLC's failing to pursue and close the Pending Transaction (where such transaction mitigated in its entirety any potential wind down costs).

[4] Under French law, companies with more than 50 employees must set up a works council (the "**Comité d'Entreprise**"), whose members are elected by the employee's workforce.  The works council is composed of (i) the employer (or the legal representative or a manager duly empowered for this purpose), who convenes and chairs over the meetings and (ii) the workers' representatives, elected by all the employees of the company.

such an opinion from the Works Council, a company must remit to the Works Council a so-called "economic note" describing the economic grounds for the transaction, any proposed reorganization of the company by the new owners, and a description of any consequences on employment at the company. There is no time limit to complete this process, and the Works Council is entitled to comprehensive information and to receive answers to all questions they may have to understand the transaction and the economic rational before issuing an opinion. The noncompliance with this obligation prior to the closing of a sale is a criminal offence under French law (punished by a fine and/or imprisonment) for which the President of the company is personally liable.

11. The Pending Transaction has completed this process and obtained a favorable opinion from the Works Council, thereby clearing the path for the Pending Transaction to close expeditiously upon approval by this Court. In addition to obtaining a favorable opinion from the Works Council, the Pending Transaction has obtained anti-trust clearance in all relevant European Union member states –France, Germany, and Italy. Punch has not commenced either the Works Council or the anti-trust clearance process, leaving MLC, the Company, its employees, and other stakeholders uncertain about the fate of any Punch transaction.

12. Unlike the Punch Proposal, the Pending Transaction also has the support of the Company's labor unions, which is codified in a new collective bargaining agreement scheduled to be implemented after the close of the Pending Transaction. The collective bargaining agreement is the result of many months of negotiations between MLC, the Company, the relevant labor unions, and New GM. The collective bargaining agreement is contingent on the Pending Transaction closing and is not binding in the

event MLC pursues an alternative transaction, such as the Punch Proposal. Accordingly, the assertion in the Punch Proposal that it will simply implement the collective bargaining agreement negotiated by the aforementioned parties is not accurate. That agreement is unique to the Pending Transaction involving New GM and would have to be renegotiated under any alternative transaction. This again likely would be a time consuming and expensive endeavor with no certainty of success.

13.    At bottom, the Pending Transaction currently before the Court can promptly be consummated, eliminates all risks, assures the continued operation of the Company's manufacturing facility, and avoids the substantial shut down costs that will be incurred if a viable sale cannot be promptly achieved. This clearly is more beneficial to MLC, its creditors, and the Company than the Punch Proposal which has no certainty of closing and poses significant risks.[5] The Pending Transaction also enjoys the support of every relevant constituency in these chapter 11 cases and in France –the UCC, the Company's Works Council, the Company's labor unions, and the *Mandataire ad hoc*.

---

[5] In response to the Punch Proposal and to protect the Debtors in the event that the Punch Proposal did not close for the reasons discussed herein or otherwise, the Debtors requested that as part of the Punch Proposal Punch fund into escrow €200 million (the estimated costs associated with any wind-down of the Company). This escrow would be refundable to Punch upon the consummation of the Punch Proposal. Punch, however, refused to include any such escrow as part of the Punch Proposal.

Accordingly, the Debtors submit that the Pending Transaction represents a sound exercise of their business judgment and should be approved by the Court at the Sale Hearing.

Dated: New York, New York
September 2, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession
