**HEARING DATE AND TIME: September 24, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: September 17, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :    09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                    :
                        Debtors.    :    (Jointly Administered)
                                    :
------------------------------------------------------------x
```

**NOTICE OF HEARING ON SECOND MOTION**
**OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. §§ 105(a) AND 363 RESOLVING DISPUTES, MUTUAL MISTAKES, AND**
**AMBIGUITIES ARISING UNDER MASTER SALE AND PURCHASE AGREEMENT**

PLEASE TAKE NOTICE that upon the annexed Motion, dated September 2,

2010 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), for an

entry of an order, pursuant to sections 105(a) and 363 of title 11, United States Code (the

"**Bankruptcy Code**") approving and ratifying that certain stipulation of settlement (the

"**Stipulation of Settlement**") between the Debtors and General Motors, LLC (f/k/a General

Motors Company) ("**New GM,**" and together with the Debtors, the "**Parties**") resolving certain

disputes, mutual mistakes, and ambiguities arising in connection with the terms of that certain

Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC,

Saturn Distribution Corporation and Chevrolet Saturn of Harlem, as Sellers, and NGMCO, Inc.

(n/k/a General Motors, LLC) as Purchaser, all as more fully set forth in the Motion, a hearing

will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room

621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, New York, New York 10004, on **September 24**, **2010 at 9:45 a.m. (Eastern Time),** or

as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.), so as to be received no later than **September 17, 2010, at 4:00 p.m.**

**(Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated:  New York, New York
          September 2, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**HEARING DATE AND TIME: September 24, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: September 17, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

### SECOND MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 RESOLVING DISPUTES, MUTUAL MISTAKES, AND AMBIGUITIES ARISING UNDER MASTER SALE AND PURCHASE AGREEMENT

# TABLE OF CONTENTS

**Page**

Relief Requested ........................................................................................................ 1

Jurisdiction ............................................................................................................... 1

Background ............................................................................................................... 1

The Stipulation of Settlement ................................................................................... 3

    CVO Willow Run. ............................................................................................. 3

    Saginaw Landfill. .............................................................................................. 5

    Environmental Remediation Invoices. .............................................................. 6

    Idled Plant Transportation and Disposal Costs. ............................................... 7

    Property Tax. ..................................................................................................... 7

    Properties. .......................................................................................................... 8

    Deutsche Bank Settlement. ............................................................................... 9

The Relief Requested Should Be Approved by the Court ....................................... 11

Notice ...................................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

*Adelphia Commc'ns Corp. v. The Am. Channel (In re Adelphia Comm'ns Corp.)*,
    345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006)......................................................................11

*Lyondell Chemical Co. v. Centerpoint Energy Gas Services Inc. (In re Lyondell
    Chemical Co.)*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009)................................................11

### STATUTES

11 U.S.C. § 105....................................................................................................1, 3, 11, 12

28 U.S.C. § 157.................................................................................................................1

28 U.S.C. § 1334...............................................................................................................1

### BANKRUPTCY RULES

Fed. R. Bankr. P. 1015(c) ...............................................................................................12

Fed. R. Bankr. P. 9007.....................................................................................................12

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

### Relief Requested

1.      Pursuant to sections 105(a) and 363 of title 11, United States Code (the

"**Bankruptcy Code**"), the Debtors request entry of an order approving and ratifying that certain

stipulation of settlement (the **"Stipulation of Settlement"**) between the Debtors and General

Motors, LLC (f/k/a NGMCO, Inc.) ("**New GM,**" and together with the Debtors, the "**Parties**"

and each individually, a "**Party**") resolving certain mutual mistakes by the Parties and

ambiguities and disputes arising under the terms of that certain Master Sale and Purchase

Agreement By and Among General Motors Corporation, Saturn LLC, Saturn Distribution

Corporation, and Chevrolet Saturn of Harlem, as Sellers, and NGMCO, Inc. (n/k/a General

Motors, LLC) as Purchaser (the "**MSPA**") with respect to ownership of and environmental

liabilities associated with certain real property, property taxes, and the Swap Debt (as defined

below).  A copy of the Stipulation of Settlement is annexed to the proposed order as **Exhibit

"A."**

### Jurisdiction

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

3.      On June 26, 2009 the Debtors entered into the MSPA, and on July 10,

2009, the Debtors consummated the sale (the "**Closing**") of substantially all of their assets

pursuant thereto (the "**Sale**").  Under the MSPA, the Debtors' assets were divided into two

categories – Excluded Assets (as defined in the MSPA), which were assets retained by the

Debtors, and Purchased Assets (as defined in the MSPA), which were assets purchased from the

Debtors by New GM.  (MSPA §§ 2.2(a), 2.2(b).)  The Purchased Assets include Owned Real

Property, which is defined in the MSPA to mean all real property owned by the Debtors, other

than Excluded Real Property.  (*Id.* § 1.1.)  Liabilities arising out of, relating to, in respect of, or

in connection with the use, ownership, or sale of the Purchased Assets after the Closing are

among the Assumed Liabilities (as defined in the MSPA).  (*Id.* § 2.3(a).)  On the other hand,

Excluded Real Property (as defined in the MSPA) is any real property set forth in an exhibit or

schedule to the MSPA, which, therefore, is retained by the Debtors.  (*Id.* § 2.2(b).)  In addition,

the Debtors retained the Retained Liabilities (as defined in the MSPA), which include all

Liabilities related to the Excluded Assets, including Liabilities arising out of, relating to, in

respect of, or in connection with Excluded Assets, except as provided in the MSPA.  (*Id.*

§ 2.3(b).)

        4.      Following the Closing, it became apparent that certain real property and

environmental liabilities associated with certain property were transferred, retained, or assumed,

in certain instances, by the improper Party as result of mutual mistake by the Parties and/or

ambiguities under the terms of the MSPA.  Because of the size of the Debtors' organization and

the segregation of duties within different business areas, certain schedules to the MSPA were

modified to add or delete properties without a complete understanding of the intentions and

undertakings within other areas of the organization.  Following the Closing, certain disputes,

mutual mistakes, and ambiguities relating to the MSPA, as further described herein, arose or

became apparent to the Parties.

5.     Throughout these cases, the Debtors and New GM have engaged in good faith arm's-length negotiations, which have resulted in the Stipulation of Settlement embodying a settlement of certain disputes, mutual mistakes, and ambiguities described herein.  Every effort has been made to ensure that the Stipulation of Settlement provides for a value-for-value exchange between the Debtors and New GM.  The statutory committee of unsecured creditors appointed in these cases have been kept apprised of the status of these negotiations.

6.     This Motion represents the second time that the Debtors have come before the Court for approval of a settlement with New GM over the provisions of the MSPA.  While the Debtors have authorization to consensually resolve minor ambiguities under the MSPA pursuant to that certain Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code in Aid of Implementation of Sale, dated March 5, 2010 [Docket No. 5198] (the "**First Agreed Order**"), the Debtors indicated at the March 2, 2010 hearing that they would nevertheless come to Court by separate motion in instances such as these where the matters were material or involved real estate issues.  By this Motion, the Debtors seek approval of the Stipulation of Settlement.

## The Stipulation of Settlement

7.     The Debtors and New GM have reached agreement with respect to the resolution of various mutual mistakes, ambiguities, and disputes relating to ownership of certain real property, the environmental remediation of certain real property, certain property taxes, and the Swap Debt, and seek the Court's approval of the Stipulation of Settlement.  The salient terms of the settlement are as follows:

- CVO Willow Run.  The Debtors historically maintained their Willow Run Company Vehicle Operations ("**CVO Willow Run**") from a facility located at

2901 Tyler Road, Ypsilanti, Michigan 48198, which functioned as, among other things, a staging area for company vehicles being produced at their large powertrain facility located at 2930 Ecorse Road, Ypsilanti, Michigan 48198 (the "**Willow Run Facility**").  While the Parties intended to classify CVO Willow Run as Excluded Real Property, along with the Willow Run Facility, CVO Willow Run was not listed in an exhibit or schedule to the MSPA because of a mutual mistake by the Parties.  In evidence of this mistake, New GM vacated and idled CVO Willow Run and the Debtors contemplated that CVO Willow Run would be part of a group of properties for which they retained liability for remediation, and prepared a budget accordingly.  At Closing, a deed transferring CVO Willow Run from the Debtors to New GM was delivered to a title company, but the deed was held by the title company and not recorded when the mutual mistake was discovered by the Parties.  To resolve the mutual mistake related to CVO Willow Run, the Stipulation of Settlement provides that CVO Willow Run is Excluded Real Property and all Liabilities related thereto are Retained Liabilities, as further provided herein; *provided, however*, that the Liabilities relating to CVO Willow Run arising out of, relating to, in respect of, or in connection with the use of CVO Willow Run by New GM during the period commencing on the date of the Closing and continuing through the Saginaw Landfill Transfer Date (as defined below) shall be Assumed Liabilities; and *provided further* that the effectiveness of this provision and the designation of CVO Willow Run as Excluded Real Property and related Liabilities as Retained Liabilities is conditioned upon the successful transfer of the Saginaw Landfill (as

defined below), in accordance with the terms set forth below.  The value of the avoided cost of remediation and maintenance provided to New GM in respect of this transfer is approximately $7,500,000.

- Saginaw Landfill.  Saginaw Nodular Iron Landfill (the "**Saginaw Landfill**"), located at 2100 Veterans Memorial Parkway, Saginaw, Michigan 48603, was historically used for waste disposal in connection with manufacturing facilities previously operated by the Debtors and GMPT – Saginaw Metal Casting, which is now operated by New GM.  Pursuant to the MSPA, the Saginaw Landfill was designated as an Excluded Real Property and remained property of the Debtors' estates.  However, in connection with operations at its facilities, New GM requires the Saginaw Landfill for waste disposal and is prepared, in the context of this settlement, to assume the Liabilities relating to the Saginaw Landfill, as further described herein.  New GM has agreed to exercise its option to acquire the Saginaw Landfill pursuant to the MSPA and the Master Lease Agreement (Subdivision Properties) dated July 10, 2010 between MLC and New GM.  Accordingly, as of the date on which the Saginaw Landfill is conveyed to New GM (the "**Landfill Transfer Date**"), the Saginaw Landfill shall be deemed Owned Real Property (a subset of Purchased Assets comprising real property) and all Liabilities relating thereto arising out of, relating to, in respect of, or in connection with, the use, ownership, or sale of the Saginaw Landfill after the Landfill Transfer Date shall be deemed Assumed Liabilities; *provided, however*, that in the event that the Saginaw Landfill is not successfully transferred to New GM, for any reason whatsoever (other than the Debtors' refusal to transfer the

Saginaw Landfill to New GM or to use commercially reasonable efforts to cooperate with New GM in obtaining the necessary third-party approvals applicable to the transfer of the Saginaw Landfill), including, but not limited to New GM's failure to subdivide and satisfy the relevant regulatory requirements relating to the transfer, CVO Willow Run and the Liabilities in connection therewith shall remain Owned Real Property (a subset of Purchased Assets comprising real property) and Assumed Liabilities, respectively. The Parties have agreed to use their commercially reasonable best efforts to effectuate the transfer of the Saginaw Landfill in a timely manner. The transfer of the Saginaw Landfill to New GM will release the Debtors' estates of approximately $3,800,000 in expected remediation and maintenance obligations.

- <u>Environmental Remediation Invoices</u>. Environmental remediation services (the "**Services**") were provided by third-party contractors to Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc. (the "**REALM/ENCORE Debtors**") with respect to property that was transferred to New GM under the MSPA. The invoices (the "**Invoices**") for such Services have been designated as Retained Liabilities. New GM and the REALM/ENCORE Debtors each require the ongoing services of the third parties providing the Services whose Invoices have not yet been paid. Pursuant to the Stipulation of Settlement, New GM will pay the amounts due under the Invoices, thereby relieving the REALM/ENCORE Debtors of $1,513,658 in claims related to same. Given the importance of third party contractors to the REALM/ENCORE Debtors' ongoing environmental cleanup efforts, the

REALM/ENCORE Debtors believe that in the absence of this settlement, they would be required to satisfy the obligations under the Invoices in full as a condition to such contractors' future performance.

- Idled Plant Transportation and Disposal Costs.  Under the MSPA and related documents including, without limitation, the Transition Services Agreement (as defined in the MSPA), an ambiguity arose regarding which Party is required to pay costs associated with the removal of hazardous waste from certain idled manufacturing facilities owned by the Debtors and listed in the Stipulation of Settlement (the "**Facilities**").  To resolve this dispute, New GM has agreed, under the Stipulation of Settlement, to pay for approximately half of the costs associated with the removal of hazardous waste from the Facilities, and the Debtors have agreed to pay for the remainder, thereby relieving the Debtors' estates of $859,625 in potential administrative expenses related to environmental obligations.

- Property Tax.  Under the MSPA, an ambiguity also arose with respect to the Parties' liability for the payment of property taxes for the 2009 calendar year (the "**Property Taxes**") relating to real property owned or leased by the Debtors and leased or occupied by New GM after the Closing, but handed back to the Debtors during the 2009 calendar year.  The Parties have agreed to prorate the Property Taxes owing in respect of such properties for the period beginning as of the date that New GM handed over the respective properties to the Debtors, through December 31, 2009 (the "**Prorated Tax Periods**").  Upon payment of the assumed Property Taxes by New GM, the Parties have agreed that the allocation

of Property Taxes on the Facilities for the 2009 calendar year between New GM

and the Debtors will be complete and final, except to the extent that adjustment is

required due to changes after the date hereof in the underlying total property tax

due for such periods to taxing authorities.  Pursuant to the Stipulation of

Settlement, the Parties have agreed that New GM and the Debtors will each be

liable for an equal portion of the Property Taxes arising during the Prorated Tax

Periods.  The value provided by New GM in favor of the Debtors is $696,145.41.

- Properties.  The Parties intended to designate the properties set forth on Schedule

  VIII to the Stipulation of Settlement (collectively, the "**Properties**") as Excluded

  Real Property, but, because of a mutual mistake of the Parties, did not specifically

  list certain of the Properties on an exhibit or schedule to the MSPA.[1]  As evidence

  of the intention of the Parties to treat the Properties as Excluded Real Property, (i)

  the Properties were not conveyed to New GM at Closing and the Debtors remain

  the owner of the Properties, (ii) the Debtors have conducted regular remediation

  work on the Properties, and (iii) the Debtors allocated funds for the anticipated

  cost of remediating the Properties.  The Stipulation of Settlement provides that the

  Properties are Excluded Real Property, and, consequently, all liabilities relating

  thereto are Retained Liabilities.  The value of the avoided cost of remediation and

  maintenance provided to New GM in respect of this transfer is approximately

  $9,000,000.

---

[1] Certain of the Properties denoted on Schedule VIII to the Stipulation of Settlement were already designated as Excluded Real Property on the schedule annexed to the MSPA as Section 2.2(b)(v) of the Sellers' Disclosure Schedule (as defined in the MSPA).  With respect to those properties, Schedule VIII to the Stipulation of Settlement seeks to add further precision to the description provided on Section 2.2(b)(v) of the Sellers' Disclosure Schedule (as defined in the MSPA).

- <u>Deutsche Bank Settlement</u>.  On November 23, 2009, Deutsche Bank AG ("**Deutsche Bank**") filed a motion  [Docket No. 4529] for relief from the automatic stay, asserting a right to setoff $24,040,404 (the "**Swap Debt**") that it owes in respect of interest rate swap debt, against its claim for $24,073,200 (the "**Bond Claim**") relating to the face value of the Debtors' bonds it held as of the Commencement Date.  The Swap Debt became due and owing when Deutsche Bank terminated a Master Agreement, dated September 19, 2004 (the "**Master Agreement**"), governing two interest rate swap transactions, due to the Debtors' chapter 11 filings (an event of default under the Master Agreement).  It has been asserted by New GM that the $24,040,404 receivable from Deutsche Bank was sold to New GM under the MSPA, free and clear of all liens, claims, and encumbrances, with any setoff rights to apply to the proceeds of the Sale. Deutsche Bank asserts that this would result in a lien in the New GM stock and warrants that were delivered to the Debtors upon closing as proceeds of the Sale. In order to avoid the cost of litigation with New GM on these issues and the Debtors' risk of losing the benefit of the Swap Debt altogether (should it be determined that the Swap Debt should be paid to New GM), the Parties have agreed to split any proceeds of the Swap Debt as follows.  Pursuant to the Stipulation of Settlement, to the extent that the Debtors are successful in defeating Deutsche Bank's claim for setoff, the Debtors will receive the first $9 million of the Swap Debt proceeds, and any further recover will be split evenly between the Parties.  The value provided to the Debtors in respect of this settlement will range from $0 to approximately $16.5 million, and the value to provided to New GM

will range from $0 to approximately $7.5 million.  Additionally, if the setoff is

permitted, it will be applied against the Bond Claims, and, therefore, as a result of

the settlement, under no circumstances would Deutsche Bank receive a lien in the

sale consideration.  The agreement with respect to the Swap Debt confers

substantial consideration to the Debtors' estates and is a significant factor in the

Debtors' agreement to designate the Indiana Properties as Excluded Real

Property.

8.        As indicated above, as there is no certainty that the Saginaw Landfill can

be subdivided or that New GM can obtain all necessary regulatory approvals relating to the

transfer of the Saginaw Landfill, the Parties have agreed that the designation of CVO Willow

Run as an Excluded Real Property and the retention of Liabilities relating thereto by the Debtors,

as further described herein, and the designation of the Saginaw Landfill as Owned Real Property

(a subset of Purchased Assets comprising real property) and the assumption of Liabilities relating

thereto by New GM shall be expressly conditioned upon the successful transfer of the Saginaw

Landfill, as further provided herein, and if the transfer of the Saginaw Landfill is not effectuated

(other than as a result of the Debtors' refusal to transfer the Saginaw Landfill to New GM or to

use commercially reasonable efforts to cooperate with New GM in obtaining the necessary third-

party approvals applicable to the transfer of the Saginaw Landfill), the status quo of the two

properties and their related Liabilities will be maintained, as further described above; *provided,*

*however,* that the failure of such conditions with respect to CVO Willow Run and the Saginaw

Landfill, as set forth in the Stipulation of Settlement, shall not cause to be delayed, void, or

impact in any other way whatsoever, any other terms of the Stipulation of Settlement.

## **The Relief Requested Should Be Approved by the Court**

9.      Ample authority exists for approval of the Stipulation of Settlement under

sections 363 and 105(a) of the Bankruptcy Code.  By Order dated July 5, 2009, this Court

approved the Sale and entered the Order (I) Authorizing Sale of Assets Pursuant to Amended and

Restated Master Sale and Purchase Agreement; (II) Authorizing Assumption and Assignment of

Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III)

Granting Related Relief [Docket No. 2968] (the "**Sale Order**").  Paragraph 71 of the Sale Order

provides that this Court retains jurisdiction with respect to any dispute that arises under the Sale

Order.  Further, the Court has authorized the Debtors to enter into settlements resolving certain

disputes arising under the MSPA pursuant to the Order in Aid of Implementation of Sale [Docket

No. 5198] without Court approval.  However, due to the materiality of the issues addressed

herein, the Debtors seek relief by way of this Motion.

10.      In addition, the Bankruptcy Code grants bankruptcy courts authority to

"issue any order, process, or judgment that is necessary or appropriate" to ensure that bankruptcy

cases are "handled expeditiously and economically"  11 U.S.C. §§ 105(a), 105(d)(2).  *See also*

*Adelphia Commc'ns Corp. v. The Am. Channel (In re Adelphia Comm'ns Corp.)*, 345 B.R. 69,

85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a [b]ankruptcy

[c]ourt to maintain its own jurisdiction and to facilitate the [chapter 11] process"); *Lyondell*

*Chem. Co. v. Centerpoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571

(Bankr. S.D.N.Y. 2009).

11.      The Debtors' decision to enter into the Stipulation of Settlement and

resolve amicably the differences in interpretation of the MSPA and the mutual mistakes and

disputes relating to the MSPA is clearly in the best interests of the Debtors' estates, reflects the

sound business judgment of the Debtors, and is fair and equitable and in the interest of the

Debtors and their creditors.  Based on the costs and uncertainty associated with litigating these

disputes, the agreed-upon settlement is a fair compromise.  Settlement at this juncture avoids the

expense, inconvenience, uncertainty, and delay that would be caused by pushing off a resolution

of these matters further.  The Debtors believe that the Stipulation of Settlement falls well within

the range of reasonableness, is in the best interests of the Debtors' estates and their creditors and

should be approved as a sound exercise of the Debtors' business judgment.

### Notice

12.     Notice of this Motion has been provided to parties in interest in

accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr.

P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24,

2010 [Docket No. 6750], New GM, and the Attorney General for each state in which property

affected by this Motion is located.  The Debtors submit that such notice is sufficient and no other

or further notice need be provided.

13.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court except for the motion filed in connection with the First Agreed

Order.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       September 2, 2010

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                        :

In re                         :         **Chapter 11 Case No.**
                         :

**MOTORS LIQUIDATION COMPANY,** *et al.*,  :        **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*  :
                         :

                  **Debtors.**    :         **(Jointly Administered)**
                         :
---------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a)**
**AND 363 RESOLVING DISPUTES, MUTUAL MISTAKES, AND**
**AMBIGUITIES ARISING UNDER MASTER SALE AND PURCHASE AGREEMENT**

Upon the Motion, dated September 2, 2010 (the "**Motion**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), for an entry of an order, pursuant to sections

105(a) and 363 of title 11, United States Code (the "**Bankruptcy Code**"), approving and

ratifying that certain stipulation of settlement (the **"Stipulation of Settlement"**), annexed hereto

as **Exhibit "A,"** between the Debtors and General Motors, LLC (f/k/a NGMCO, Inc.) ("**New**

**GM,**" and together with the Debtors, the "**Parties**") resolving certain disputes, mutual mistakes,

and ambiguities arising under the terms of that certain Master Sale and Purchase Agreement By

and Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and

Chevrolet Saturn of Harlem, as Sellers, and NGMCO, Inc. (n/k/a General Motors, LLC) as

Purchaser (the "**MSPA**"), all as more fully described in the Motion; and due and proper notice of

the Motion having been provided, and it appearing that no other or further notice need be

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

1

provided; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, their estates, creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtors are authorized to enter the Stipulation of Settlement,

annexed hereto as **Exhibit "A"**, and the Stipulation of Settlement is hereby approved in all

respects; and it is further

ORDERED that the designation of CVO Willow Run as an Excluded Real

Property, and all Liabilities related thereto as Retained Liabilities, is conditioned upon the

successful transfer of the Saginaw Landfill to New GM, as set forth in the Stipulation of

Settlement; *provided, however*, that the failure of such conditions with respect to CVO Willow

Run and Saginaw Landfill, as set forth in the Stipulation of Settlement, shall not cause to be

delayed, void, or impact, in any other way whatsoever, any other terms of the Stipulation of

Settlement; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
_____, 2010

_____
United States Bankruptcy Judge

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                            :
**In re**                                   :          **Chapter 11 Case No.**
                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*   :          **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*   :
                                            :
        **Debtors.**                :          **(Jointly Administered)**
                                            :
-------------------------------------------------------------x

## STIPULATION OF SETTLEMENT REGARDING
## MASTER SALE AND PURCHASE AGREEMENT

This stipulation of settlement (the "**Stipulation of Settlement**") is entered into by

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**") and General Motors, LLC (f/k/a

NGMCO, Inc.) ("**New GM**" and together with the Debtors, the "**Parties**"), for the purpose of

resolving certain mutual mistakes by the Parties and disputes and ambiguities arising under the

terms of that certain Master Sale and Purchase Agreement, by and among MLC, Saturn LLC,

Saturn Distribution Corporation and Chevrolet Saturn of Harlem, as Sellers, and New GM as

Purchaser, dated as of June 26, 2009 (the "**MSPA**").

### RECITALS

**WHEREAS**, on June 26, 2009 the Parties entered into the MSPA and on July 10,

2009, the Debtors consummated the sale (the "**Closing**") of substantially all of their assets

pursuant thereto (the "**Sale**"); and

**WHEREAS** certain issues arose by virtue of (i) mutual mistake by the Parties as

to the scheduling of certain assets under the MSPA, (ii) ambiguities or disputes under the MSPA

regarding property taxes and the allocation of responsibility with respect to environmental

services or remediation associated with certain real property, and (iii) ambiguity under the

MSPA regarding the Parties' rights with respect to certain claims arising under interest rate

swaps with Deutsche Bank AG ("**Deutsche Bank**"); and

**WHEREAS** in order to avoid the costs and uncertainties attendant to the

litigation of these issues, the Parties seek to resolve certain mutual mistakes, disputes, and

ambiguities with respect to and arising under the MSPA on the terms and conditions set forth

herein.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED** by and between

the Parties that:

## AGREEMENT

1.      CVO Willow Run.  Willow Run Company Vehicle Operations ("**CVO Willow**

**Run**") is located at 2901 Tyler Road, Ypsilanti, Michigan 48198.  Annexed hereto as Schedule I

is a legal description and map of the CVO Willow Run property.  Annexed hereto as Schedule II

is a schedule of the Debtors' estimates of the costs associated with environmental remediation

activities and monitoring of CVO Willow Run.  CVO Willow Run and all Liabilities[1] relating

thereto will constitute, respectively, Excluded Real Property and Retained Liabilities under the

MSPA; *provided, however*, that any liabilities relating to CVO Willow Run arising out of,

relating to, in respect of, or in connection with the use of CVO Willow Run by New GM during

the period commencing on the date of the Closing and continuing through the Saginaw Landfill

Transfer Date (as defined below), if such date occurs, shall be Assumed Liabilities; and *provided*

*further* that the effectiveness of this Paragraph 1 and the designation of CVO Willow Run as

Excluded Real Property and related liabilities as Retained Liabilities is expressly conditioned

---

[1] Capitalized terms used herein but not otherwise defined will have the meaning ascribed to such terms in the
MSPA.

upon the successful transfer of the Saginaw Landfill (as defined below), as set forth in Paragraph 2 hereof.

2.      <u>Saginaw Landfill</u>.  Under the MSPA, New GM has the option to acquire the landfill owned by the Debtors and located at 2100 Veterans Memorial Parkway, Saginaw, Michigan 48603 (the "**Saginaw Landfill**").  Annexed hereto as <u>Schedule III</u> is a legal description and map of the Saginaw Landfill property.  Annexed hereto as <u>Schedule IV</u> is a schedule of the Debtors' estimates of the costs associated with the maintenance and environmental remediation of Saginaw Landfill.  Upon finalization of the subdivision and separation of the properties commonly known as GMPT – Saginaw Metal Casting and Saginaw Nodular Iron pursuant to the MSPA and the Master Lease Agreement (Subdivision Properties) dated July 10, 2010 between MLC and New GM,  and upon satisfaction of the regulatory requirements relating to the transfer of the Saginaw Landfill, New GM shall exercise the option to acquire the Saginaw Landfill in accordance with the MSPA.  On the date on which the Saginaw Landfill is conveyed to New GM (the "**Landfill Transfer Date**"), which shall only occur upon (i) the subdivision of the Saginaw Landfill in accordance with applicable law and (ii) the satisfaction of all regulatory requirements relating to the transfer, the Saginaw Landfill shall become Owned Real Property (a subset of Purchased Assets comprising real property) and all Liability arising out of, relating to, in respect of, or in connection with the use, ownership, or sale of the Saginaw Landfill after the Landfill Transfer Date shall be Assumed Liabilities; *provided, however*, that without affect on any other provision in this Stipulation of Settlement (except as to Paragraph 1 as set forth herein) in the event that the Saginaw Landfill is not successfully transferred to New GM, for any reason whatsoever (other than the Debtors' refusal to transfer the Saginaw Landfill to New GM or to use commercially reasonable efforts to cooperate with New

GM in obtaining the necessary third-party approvals applicable to the transfer of the Saginaw

Landfill), including, but not limited to New GM's failure to subdivide and satisfy the relevant

regulatory requirements relating to the transfer, (i) CVO Willow Run and the liabilities in

connection therewith shall remained Owned Real Property (a subset of Purchased Assets

comprising real property) and Assumed Liabilities to the extent set forth in this paragraph, and

(ii) the Saginaw Landfill and the Liabilities in connection therewith shall remain Excluded Real

Property and Retained Liabilities.  The Parties agree to use their commercially reasonable best

efforts to effectuate the transfer of the Saginaw Landfill in a timely manner.

3.     <u>Invoices</u>.  Annexed hereto as <u>Schedule V</u> is a schedule of invoices (the

"**Invoices**") for environmental remediation services provided by third-party contractors with

respect to property (i) that was transferred to New GM pursuant to the MSPA and (ii) owned by

the Debtors.  New GM will assume liability for $1,513,658 in respect of the Invoices.

4.     <u>Idled Plant Transportation and Disposal Costs</u>.  Annexed hereto as <u>Schedule VI</u> is

a list of facilities (the "**Idled Facilities**") and historical costs associated with the transportation

and disposal of hazardous waste produced in connection with the Facility Idling Process (as such

term is defined in that certain Master Lease Agreement (Excluded Manufacturing Assets) dated

July 10, 2009 between MLC and New GM) at the Idled Facilities (the "**Idled Plant**

**Transportation and Disposal Costs**").  New GM will assume one half of the Idled Plant

Transportation and Disposal Costs, which shall amount to $859,625.  Upon payment of its share

of the Idled Plant Transportation and Disposal Costs, New GM will have no further obligation to

pay the Debtors any amounts relating to the transportation and disposal of hazardous waste

produced in connection with the Facility Idling Process.

5.      Property Tax.  Annexed hereto as Schedule VII is a schedule of estimated real

property taxes (the "**Property Taxes**") relating to real property owned or leased by the Debtors,

and leased or occupied by New GM after the Closing, but handed back to the Debtors during the

2009 calendar year (the "**Facilities**").  New GM will assume liability for $696,145.41 in respect

of the Property Taxes relating to the period beginning as of the date that New GM handed over

the respective properties to the Debtors through December 31, 2009.  Upon payment of the

assumed Property Taxes by New GM, the allocation of Property Taxes on the Facilities for the

2009 calendar year between New GM and Debtors will be complete and final, except to the

extent that adjustment is required due to changes after the date hereof in the underlying total

property tax due for such period to taxing authorities.

6.      Properties.  Annexed hereto as Schedule VIII is a list of properties (the

"**Properties**") located in Indiana and Ohio. The Parties Agree that the Properties and all

liabilities relating thereto shall be Excluded Real Properties and Retained Liabilities,

respectively, and the titles to the Properties shall remain vested in the Debtors.

7.      Deutsche Bank Settlement.  On November 24, 2009, Deutsche Bank filed a

motion [Docket No. 4529] for relief from the automatic stay, asserting a right to setoff

$24,040,404 (the "**Swap Debt**") that it owes in respect of interest rate swap debt, against its

claim for $24,073,200 (the "**Bond Claim**") relating to the face value of the Debtors' bonds it

held as of the Commencement Date.  Upon completion of litigation with Deutsche Bank with

respect to the setoff, and to the extent that any proceeds of the Swap Debt become available to

either the Debtors or New GM, the Parties agree that (i) the Debtors will receive the first $9

million of such proceeds, and (ii) the balance of the recovery will be split evenly between the

Parties.  To the extent Deutsche Bank's right to setoff is validated, the Parties Agree that the

Swap Debt may be used to effectuate the setoff against the Bond Claim.

8.      This Stipulation is subject in all respects to approval by the Bankruptcy Court.

Upon such approval, this Stipulation and Settlement shall be binding upon the Parties, and may

not be changed, altered, or modified except in writing, signed by the Parties or their duly

authorized attorneys and approved by the Bankruptcy Court.

9.      The Bankruptcy Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation and/or enforcement of this

Stipulation of Settlement.

10.      This Stipulation of Settlement may be executed in counterparts.


Stipulated and Agreed:

Dated:  September 2, 2010

**MOTORS LIQUIDATION COMPANY**          **GENERAL MOTORS, LLC**

By: /s/ Thomas A. Morrow_____          By: /s/ Russel S. Bratley_____
    Name: Thomas A. Morrow                         Name:  Russel S. Bratley
    Title: Vice President                          Title:  Director - Corporate Financial
                                                   Planning and Analysis

## Schedule I

### Legal Description and Map of CVO Willow Run Property

Tax ID Number: **11-12-300-006**

Land situated in the **Township** of **Ypsilanti**, in the County of **Washtenaw**, State of **Michigan** is described as follows:

Part of Southeast 1/2, Section 12, Town 3 South, Range 7 East, Ypsilanti Township, Washtenaw County, Michigan commencing at Southeast corner of Section 12, thence South 87 degrees, 46 minutes, 46 seconds West along South line of Section 935.33 feet to point of beginning; thence continuing South 87 degrees, 46 minutes, 46 seconds West along South line of Section which is also the centerline of Tyler Road (proposed 120 feet wide) 1397.50 feet; thence North 00 degrees 00 minutes 25 seconds West 732.97 feet; thence North 89 degrees, 53 minutes, 1 minute East 192.96 feet; thence North 33 degrees, 3 minutes, 21 seconds East 305.54 feet to point that approximately the centerline of Willow Run Creek; thence along centerline in a Southerly direction in the Willow Run Creek the following courses and distance; South 16 degrees 47 minutes, 55 seconds East 173.21 feet; thence South 42 degrees, 9 minutes, 5 seconds East 284.61 feet; thence South 86 degrees, 11 minutes, 10 seconds East 300.66 feet; thence South 74 degrees, 6 minutes, 15 seconds East 157 feet; thence North 83 degrees, 10 minutes, 55 seconds East 185.31 feet; thence South 82 degrees, 54 minutes, 10 seconds East 250.92 feet; thence South 45 degrees, 40 minutes, 10 seconds East 181.74 feet; thence South 4 degrees, 51 minutes, 50 seconds West 188.68 feet; thence leaving the approximate centerline of the Willow Run Creek on course of South 61 degrees, 16 minutes, 45 seconds West 232.01 feet to a point that is on the North line of Tyler Road; thence South 1 degree, 16 minutes, 17 seconds East 60.01 feet; to point of beginning containing 22.06 more or less acres of land.

**Commonly known as:** 2901 Tyler Road, Ypsilanti, MI  48198

## Ypsilanti, MI –CVO – Vehicle Center
## 2901 Tyler Road, Ypsilanti, MI



## Schedule II

**CVO Willow Run Environmental Remediation and Monitoring Costs**

| Activities Related to Clean-up and Monitoring of CVO Willow Run | $ 7,542,403 |
|---|---|
| -Agreements/Work Plans/Risk Assessment/Reports | |
| -PACO 24 | |
| -PAOC 23 | |
| -PAOC 19 (Site Wide GW) | |
| -PAOC 18/29 - DNAPL/LNAPL | |
| -Contingency Cost | |

## Schedule III

### Legal Description and Map of Saginaw Landfill

PART OF THE NORTHEAST QUARTER OF SECTION 5, TOWN 12 NORTH, RANGE 5 EAST, BUENA VISTA TOWNSHIP, SAGINAW COUNTY, MICHIGAN; DESCRIBED AS COMMENCING AT THE SOUTHEAST CORNER OF SAID SECTION; THENCE N00°02'00"W 313.43 FEET TO THE POINT OF BEGINNING; THENCE S40°49'28"W 406.25 FEET; THENCE N88°42'22"W 1397.64 FEET; THENCE N19°49'03"W 1729.07 FEET; THENCE N71°48'13"E 384.20 FEET; THENCE N82°11'16"E 203.32 FEET; THENCE N89°00'10"E 967.66 FEET; THENCE S75°52'26"E 130.59 FEET; THENCE S45°59'32"E 160.63 FEET; THENCE S35°52'45"E 287.47 FEET; THENCE S53°09'33"E 139.38 FEET; THENCE S82°25'28"E 194.04 FEET; THENCE S00°02'00"E 1029.72 FEET TO THE POINT OF BEGINNING. CONTAINING 75.63 ACRES.

AND

PART OF THE NORTHEAST QUARTER OF SECTION 8, TOWN 12 NORTH, RANGE 5 EAST, BUENA VISTA TOWNSHIP, SAGINAW COUNTY, MICHIGAN; DESCRIBED AS BEGINNING AT THE EAST QUARTER CORNER OF SAID SECTION; THENCE S89°44'00"W 530.01 FEET ALONG THE EAST WEST QUARTER LINE; THENCE N00°00'00"E 1502.00 FEET; THENCE N89°44'00"E 530.01 FEET; THENCE S00°00'00"W 1502.00 FEET ALONG THE EAST SECTION LINE TO THE POINT OF BEGINNING. CONTAINING 18.28 ACRES.

# Saginaw, MI – Nodular Iron - Landfill and Clay Cap Area



## Schedule IV

**Saginaw Iron Landfill Environmental Remediation and Maintenance Costs**

| | |
|---|---|
| **Cost Estimate for Entire SNI Property**<br>(Net present value of future remediation) | **$8,355,199** |
| | |
| **Portion of Estimate Attributable to the Landfill**<br>Activities Attributable to the Landfill<br>-Agency Oversight<br>-Landfill Cap OM&M<br>-Landfill Closure<br>-Contingency | **$3,758,193** |
| | |
| **Non-landfill Related Portion of Estimate** | **$4,597,006** |

## Schedule V

### Invoices

| Date | Number | Site | Vendor | Amount |
|------|--------|------|--------|--------|
| 6/30/2009 | 236-200906 | Allison Eagle Creek | Encore Environmental Consortium | 384.36 |
| 7/31/2009 | 236-200907 | Allison Eagle Creek | Encore Environmental Consortium | 356.80 |
| 6/26/2009 | 027-200906 | Allison Transmission | Encore Environmental Consortium | 20,721.05 |
| 7/27/2009 | E027-200907 | Allison Transmission | Encore Environmental Consortium | 39,590.22 |
| 6/26/2009 | OMM-027-200906 | Allison Transmission | Encore Environmental Consortium | 28,155.51 |
| 7/27/2009 | OMM027B-200907 | Allison Transmission | Encore Environmental Consortium | 39,114.06 |
| 6/10/2009 | 72 | Bedford | Sevenson Environmental Services, Inc. | 133,602.28 |
| 6/19/2009 | 73 | Bedford | Sevenson Environmental Services, Inc. | 95,613.39 |
| 7/2/2009 | 74 | Bedford | Sevenson Environmental Services, Inc. | 83,884.26 |
| 7/17/2009 | 75 | Bedford | Sevenson Environmental Services, Inc. | 85,595.03 |
| 6/30/2009 | 117A-200906 | Bedford | Encore Environmental Consortium | 289,052.70 |
| 7/31/2009 | 117A-200907 | Bedford | Encore Environmental Consortium | 279,192.66 |
| 7/8/2009 | 280667 E117 | Bedford | Encore Environmental Consortium | 7,810.88 |
| 7/31/2009 | OMM117B-200907 | Bedford | Encore Environmental Consortium | 29,570.87 |
| 6/12/2009 | OMM-E119-200906 | Defiance | Encore Environmental Consortium | 4,400.19 |
| 7/17/2009 | OMME119-PM406_200907 | Defiance | Encore Environmental Consortium | 12,734.98 |
| 7/31/2009 | 099-200907 | Desert Proving Grounds | Encore Environmental Consortium | 86,415.23 |
| 6/27/2009 | 31842E | Desert Proving Grounds | WDC Exploration & Wells | 6,375.00 |
| 6/30/2009 | 094-200906 | Doraville | Encore Environmental Consortium | 3,863.84 |
| 7/27/2009 | 123_PM036_200907 | Flint V8 | Encore Environmental Consortium | 436.80 |

| 6/19/2009 | E123-PM036_200906 | Flint V8 | Encore Environmental Consortium | 1,022.80 |
|---|---|---|---|---|
| 5/31/2009 | OMM053109F1246 | Flint V8 | Global Environmental Engineering, Inc. | 4,136.50 |
| 6/30/2009 | OMM063009F1246 | Flint V8 | Global Environmental Engineering, Inc. | 4,136.50 |
| 6/30/2009 | OMM123B-200906 | Flint V8 | Encore Environmental Consortium | 5,367.15 |
| 7/31/2009 | omm123b-200907 | Flint V8 | Encore Environmental Consortium | 10,382.49 |
| 6/19/2009 | 32629 | GMNA - Flint on Van Slyke | General Oil Company, Inc. | 1,340.00 |
| 7/11/2009 | 32718 | GMNA - Flint on Van Slyke | General Oil Company, Inc. | 1,528.75 |
| 6/30/2009 | 104B-200906 | GMNA - Flint on Van Slyke | Encore Environmental Consortium | 5,105.86 |
| 7/31/2009 | 104B-200907 | GMNA - Flint on Van Slyke | Encore Environmental Consortium | 2,801.08 |
| 6/8/2009 | 277765 E117 | GMPT - Bedford | Encore Environmental Consortium | 2,182.51 |
| 6/30/2009 | OMM117B-200906 | GMPT - Bedford | Encore Environmental Consortium | 24,941.88 |
| 6/30/2009 | 132-200906 | GMPT - Toledo | Encore Environmental Consortium | 1,848.03 |
| 7/31/2009 | 132-200907 | GMPT - Toledo | Encore Environmental Consortium | 3,117.99 |
| 6/30/2009 | OMM133B-200906 | GMPT - Tonawanda | Encore Environmental Consortium | 2,213.96 |
| 6/19/2009 | OMME133_PM412_200906 | GMPT - Tonawanda | Encore Environmental Consortium | 4,393.79 |
| 7/21/2009 | OMME133-PM412-200907 | GMPT - Tonawanda | Encore Environmental Consortium | 6,845.75 |
| 6/30/2009 | 134B-200906 | GMPT - Warren | Encore Environmental Consortium | 848.53 |
| 7/31/2009 | 134B-200907 | GMPT - Warren | Encore Environmental Consortium | 637.93 |
| 7/27/2009 | 088-200907 | Lansing 1 & 2 | Encore Environmental Consortium | 10,428.90 |
| 6/30/2009 | 088E-200906 | Lansing 1 & 2 | Encore Environmental Consortium | 902.80 |
| 7/27/2009 | 088E-200907 | Lansing 1 & 2 | Encore Environmental Consortium | 2,132.20 |
| 6/30/2009 | E_088D_130_200906 | Lansing 1 & 2 | Encore Environmental Consortium | 22,134.08 |
| 6/30/2009 | OMM088F-200906 | Lansing 1 & 2 | Encore Environmental Consortium | 7,417.99 |

| 7/31/2009 | OMM088F-200907 | Lansing 1 & 2 | Encore Environmental Consortium | 12,499.74 |
|---|---|---|---|---|
| 7/31/2009 | 109-200907 | Linden Assembly | Encore Environmental Consortium | 1,008.12 |
| 7/31/2009 | 090B-200907 | Lordstown | Encore Environmental Consortium | 5,479.62 |
| 7/17/2009 | OMME090-PM402_200907 | Lordstown | Encore Environmental Consortium | 1,809.22 |
| 2/25/2009 | E_090_PM402_200902 | Lordstown | Encore Environmental Consortium | 4,082.04 |
| 6/30/2009 | E_029_126_200906 | Metal Fab Grand Blanc | Encore Environmental Consortium | 3,837.11 |
| 7/31/2009 | E_029_126_200907 | Metal Fab Grand Blanc | Encore Environmental Consortium | 12,567.00 |
| 6/30/2009 | 097-200906 | Mid/Lux - Tarrytown | Encore Environmental Consortium | 19,870.24 |
| 7/29/2009 | 097-200907 | Mid/Lux - Tarrytown | Encore Environmental Consortium | 24,760.27 |
| 6/30/2009 | 101-200906 | Milford Proving Grounds | Encore Environmental Consortium | 3,038.85 |
| 6/30/2009 | 101A-200906 | Milford Proving Grounds | Encore Environmental Consortium | 8,710.64 |
| 7/31/2009 | 101A-200907 | Milford Proving Grounds | Encore Environmental Consortium | 5,446.75 |
| 7/31/2009 | 101G-200907 | Milford Proving Grounds | Encore Environmental Consortium | 133.43 |
| 7/31/2009 | 101I-200907 | Milford Proving Grounds | Encore Environmental Consortium | 1,652.26 |
| 8/14/2009 | 284448 | Milford Proving Grounds | Arcadis | 5,817.26 |
| 6/30/2009 | 131-200906 | SMCO | Encore Environmental Consortium | 8,372.80 |
| 7/31/2009 | 131-200907 | SMCO | Encore Environmental Consortium | 8,895.70 |
| 6/30/2009 | 143A-200906 | SPO (various) | Encore Environmental Consortium | 2,300.76 |
| 6/30/2009 | 167A-200906 | Tech Center | Encore Environmental Consortium | 6,799.29 |
| 7/31/2009 | 167A-200907 | Tech Center | Encore Environmental Consortium | 3,839.61 |
| | | | **Total** | **$1,513,658.29** |

## <u>Schedule VI</u>

### Idled Plant Transportation and Disposal Costs

**Historical transportation and disposal (T&D) costs experienced by GM:**

|  |  |  | Remove outliers |
|---|---|---|---|
| Doraville | $ | 82,074 | $ 82,074 |
| Grand Rapids | $ | 87,519 | $ 87,519 |
| Janesville | $ | 150,723 | $ 150,723 |
| Livonia | $ | 41,813 | low |
| Moraine | $ | 159,613 | high |
| Massena | $ | 138,176 | $138,176 |

| | |
|---|---|
| Average (rounded) | $115,000 |
| 15% Risk Management fee (Suggested by Greg Mischley) | $ 17,250 |
| **Total est. T&D costs/plant** | **$132,250** |
| **Remaining Total Est. T&D Costs** | **$1,719,250** |

**Plants to be idled**

1. Wilmington Assembly
2. Pontiac Assembly
3. Mansfield Stamping
4. Parma Powertrain
5. Willow Run Powertrain
6. Fredericksburg Powertrain
7. Flint North
8. Pontiac Stamping
9. Grand Rapids Stamping
10. Livonia Powertrain
11. Indy Stamping
12. Shreveport Assembly
13. Shreveport Stamping

## <u>Schedule VII</u>

**Real Property Taxes**

**[Content on following page]**

| Line Number | File Number | State | Juris Cd | Parcel / Account | Location ID | 2009 Tax Year Real Property Taxes Paid During 2009 | 2009 Tax Year Real Property Taxes due after 12/31/09 | Turnover Date | MLC Days | MLC Tax Allocation | Estimated Settlement Value From GM | GM Tax Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 247 | IN | Delaware | 116378009000 | RG0900000-XXXX-XX-G | $ - | $ 299.70 | 8/28/2009 | 125 | $ 102.64 | $ 102.64 | 248.38 |
| 2 | 252 | IN | Delaware | 116326001000 | RG2700000-XXXX-XX-G | $ - | 23,168.40 | 8/28/2009 | 125 | 7,934.38 | 3,967.19 | 19,201.21 |
| 3 | 253 | IN | Delaware | 116328002000 | RG1000000-XXXX-XX-G | $ - | 29,496.00 | 8/28/2009 | 125 | 10,101.37 | 5,050.69 | 24,445.32 |
| 4 | 254 | IN | Delaware | 116327001000 | RG1200000-XXXX-XX-G | $ - | 300.20 | 8/28/2009 | 125 | 102.81 | 51.41 | 248.80 |
| 5 | 255 | IN | Delaware | 116327003000 | RG1300000-XXXX-XX-G | $ - | 463.90 | 8/28/2009 | 125 | 158.87 | 79.44 | 384.47 |
| 6 | 256 | IN | Delaware | 116328001000 | RG1400000-XXXX-XX-G | $ - | 279.20 | 8/28/2009 | 125 | 95.62 | 47.81 | 231.39 |
| 7 | 257 | IN | Delaware | 116328002000 | RG1500000-XXXX-XX-G | $ - | 195.20 | 8/28/2009 | 125 | 66.85 | 33.43 | 161.78 |
| 8 | 258 | IN | Delaware | 116328003000 | RG1600000-XXXX-XX-G | $ - | 393.90 | 8/28/2009 | 125 | 134.90 | 67.45 | 326.45 |
| 9 | 259 | IN | Delaware | 116328004000 | RG1700000-XXXX-XX-G | $ - | 205.70 | 8/28/2009 | 125 | 70.45 | 35.23 | 170.48 |
| 10 | 260 | IN | Delaware | 116328005000 | RG1800000-XXXX-XX-G | $ - | 331.70 | 8/28/2009 | 125 | 113.60 | 56.80 | 274.90 |
| 11 | 261 | IN | Delaware | 116328006000 | RG1900000-XXXX-XX-G | $ - | 170.70 | 8/28/2009 | 125 | 58.46 | 29.23 | 141.47 |
| 12 | 262 | IN | Delaware | 116328007000 | RG0800000-XXXX-XX-G | $ - | - | 8/28/2009 | 125 | - | - | - |
| 13 | 263 | IN | Delaware | 116328008000 | RG2000000-XXXX-XX-G | $ - | 170.70 | 8/28/2009 | 125 | 58.46 | 29.23 | 141.47 |
| 14 | 264 | IN | Delaware | 116328009000 | RG2300000-XXXX-XX-G | $ - | 174.20 | 8/28/2009 | 125 | 59.66 | 29.83 | 144.37 |
| 15 | 265 | IN | Delaware | 116354001000 | RG2100000-XXXX-XX-G | $ - | - | 8/28/2009 | 125 | - | - | - |
| 16 | 266 | IN | Delaware | 116378001000 | RG2200000-XXXX-XX-G | $ - | 11,661.78 | 8/28/2009 | 125 | 3,993.76 | 1,996.88 | 9,664.90 |
| 17 | 267 | IN | Delaware | 116378003000 | RG2400000-XXXX-XX-G | $ - | - | 8/28/2009 | 125 | - | - | - |
| 18 | 268 | IN | Delaware | 116378004000 | RG2500000-XXXX-XX-G | $ - | 299.70 | 8/28/2009 | 125 | 102.64 | 51.32 | 248.38 |
| 19 | 269 | IN | Delaware | 116378005000 | RG2600000-XXXX-XX-G | $ - | 299.70 | 8/28/2009 | 125 | 102.64 | 51.32 | 248.38 |
| 20 | 329 | IN | Delaware | 1116376002000-7000 | RG2300000-XXXX-XX-G | $ - | 10.00 | 8/28/2009 | 125 | 3.42 | 1.71 | 8.29 |
| 21 | 364 | MA | Framingham | 176.0-0431-0002.0 | R8260000X-XXXX-NF-G | $ - | - | 9/25/2009 | 97 | - | - | - |
| 22 | 271 | MA | Sherborn | 0001-0000-0004 (6911-572) | R8270000X-XXXX-NF-G | $ 2,047.77 | 2,047.77 | 9/25/2009 | 97 | 1,088.40 | 544.20 | 3,551.34 |
| 23 | 97 | MI | Burton | 59-10-100-030 | RE3400000-XXXX-NF-G | $ 179.89 | 191.79 | 9/25/2009 | 97 | 98.78 | 49.39 | 322.29 |
| 24 | 98 | MI | Burton | 59-10-100-031 | RE3500000-XXXX-NF-G | $ 7,047.67 | 7,502.70 | 9/25/2009 | 97 | 3,866.81 | 1,933.41 | 12,616.97 |
| 25 | 511 | MI | Burton | 59-29-300-021 | R0320000X-XXXX-NF-G | $ - | - | 9/18/2009 | 104 | - | - | - |
| 26 | 73 | MI | Burton | 59-29-300-024 | R0330000X-XXXX-NF-G | $ 4,245.75 | 1,983.06 | 9/18/2009 | 104 | 1,774.78 | 887.39 | 5,341.42 |
| 27 | 11 | MI | Delta Chtr Twnshp | 23-040-027-100-050-00 | RF8100000-XXXX-NF-G | $ 19,156.50 | 26,867.04 | 9/25/2009 | 97 | 12,230.91 | 6,115.46 | 39,908.09 |
| 28 | 241 | MI | Detroit | 14010133 | R0870000X-XXXX-NF-G | $ 24,518.98 | - | 9/18/2009 | 104 | 6,986.23 | 3,493.12 | 21,025.87 |
| 29 | 242 | MI | Detroit | 16012943 | R0930000X-XXXX-NF-G | $ 12,422.02 | - | 9/18/2009 | 104 | 3,539.42 | 1,769.71 | 10,652.31 |
| 30 | 243 | MI | Detroit | 24001402 | R0920000X-XXXX-NF-G | $ 1,028.14 | - | 9/18/2009 | 104 | 292.95 | 146.48 | 881.67 |
| 31 | 293 | MI | Detroit | 02002155-6 | R1410000X-XXXX-NF-G | $ 11,637.68 | - | 9/18/2009 | 104 | 3,315.94 | 1,657.97 | 9,979.71 |
| 32 | 380 | MI | Flint City | 20-00-189-132-4 | Flint Engine North | $ 720.20 | 438.13 | 8/28/2009 | 125 | 396.69 | 198.35 | 959.99 |
| 33 | 457 | MI | Flint City | 40-13-154-002-5 | Delphi Flint West | $ - | - | 10/31/2009 | 61 | - | - | - |
| 34 | 101 | MI | Flint City | 40-13-177-002-0 | Delphi Flint West | $ 455.02 | 274.53 | 10/31/2009 | 61 | 121.92 | 60.96 | 668.59 |
| 35 | 100 | MI | Flint City | 40-13-254-008-8 | BOC Die & Engineering | $ 4.74 | 2.85 | 10/31/2009 | 61 | 1.27 | 0.64 | 6.96 |
| 36 | 460 | MI | Flint City | 40-14-279-013-3 | Delphi Flint West | $ 527.68 | 318.16 | 10/31/2009 | 61 | 141.36 | 70.68 | 775.16 |
| 37 | 108 | MI | Flint City | 41-06-179-048-4 | R2010000X-XXXX-NF-G | $ 2,210.70 | 1,344.95 | 8/28/2009 | 125 | 1,217.69 | 608.85 | 2,946.81 |
| 38 | 109 | MI | Flint City | 41-06-180-007-2 | R2070000X-XXXX-NF-G | $ 37,177.00 | 22,817.86 | 8/28/2009 | 125 | 20,546.18 | 10,273.09 | 49,721.77 |
| 39 | 111 | MI | Flint City | 41-06-326-050-4 | R2090000X-XXXX-NF-G | $ 14,959.22 | 9,100.90 | 8/28/2009 | 125 | 8,239.77 | 4,119.89 | 19,940.24 |
| 40 | 112 | MI | Flint City | 41-06-376-008-6 | R2100000X-XXXX-NF-G | $ 9,635.06 | 5,861.76 | 8/28/2009 | 125 | 5,307.13 | 2,653.57 | 12,843.26 |
| 41 | 113 | MI | Flint City | 41-06-377-027-8 | R2110000X-XXXX-NF-G | $ 234.18 | 141.25 | 8/28/2009 | 125 | 128.57 | 64.29 | 311.15 |
| 42 | 114 | MI | Flint City | 41-06-379-009-0 | R2130000X-XXXX-NF-G | $ 8,142.82 | 4,963.92 | 8/28/2009 | 125 | 4,488.61 | 2,244.31 | 10,862.44 |
| 43 | 95 | MI | Flint City | 41-06-401-019 | R9910000X-XXXX-NF-G | $ 19,318.02 | 11,752.74 | 8/28/2009 | 125 | 10,640.67 | 5,320.34 | 25,750.43 |
| 44 | 206 | MI | Flint City | 41-06-451-003-2 | R2150000X-XXXX-NF-G | $ 1,197.46 | 728.50 | 8/28/2009 | 125 | 659.58 | 329.79 | 1,596.17 |
| 45 | 206 | MI | Flint City | 41-30-276-019-7 | R2210000X-XXXX-NF-G | $ 100.90 | 123.73 | 9/18/2009 | 104 | 63.43 | 31.72 | 190.92 |
| 46 | 494 | MI | Flint City | 47-31-452-045-4 | R1960000X-XXXX-NF-G | $ 73,837.26 | 44,921.36 | 9/25/2009 | 97 | 31,560.51 | 15,780.26 | 102,978.37 |
| 47 | 314 | MI | Flint Township | 07-17-200-028(REALM) | RD9200000-XXXX-NF-G | $ - | - | 9/11/2009 | 111 | - | - | - |
| 48 | 330 | MI | Genesee | 11-18-100-002 | RE0400000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 49 | 331 | MI | Genesee | 11-18-200-010 | RE0500000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 50 | 332 | MI | Genesee | 11-18-200-011 | RE0600000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 51 | 333 | MI | Genesee | 11-18-200-012 | RE0700000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 52 | 334 | MI | Genesee | 11-18-400-006 | RE0800000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 53 | 335 | MI | Genesee | 11-18-400-007 | RE0900000-XXXX-UL-G | $ - | - | 9/4/2009 | 118 | - | - | - |
| 54 | 14 | MI | Lansing City-Ingham | 33-01-01-17-101-023 | R2600000X-XXXX-NF-G | $ 28,421.65 | 3,871.20 | 9/4/2009 | 118 | 10,439.88 | 5,219.94 | 27,072.91 |
| 55 | 15 | MI | Lansing City-Ingham | 33-01-01-17-176-001 | R2620000X-XXXX-NF-G | $ 200.19 | 27.24 | 9/4/2009 | 118 | 73.53 | 36.77 | 190.67 |
| 56 | 185 | MI | Lansing Ctr Township | 33-021-01-07-426-001 | R2940000X-XXXX-NF-G | $ 34,377.20 | 29,128.38 | 9/4/2009 | 118 | 20,530.57 | 10,265.29 | 53,240.30 |
| 57 | 186 | MI | Lansing Ctr Township | 33-021-01-18-226-001 | R2960000X-XXXX-NF-G | $ 621.11 | 526.26 | 9/4/2009 | 118 | 370.93 | 185.47 | 961.91 |
| 58 | 187 | MI | Lansing Ctr Township | 33-021-01-18-227-001 | R2880000X-XXXX-NF-G | $ 17,986.24 | 15,240.04 | 9/4/2009 | 118 | 10,741.65 | 5,370.83 | 27,855.46 |
| 59 | 188 | MI | Lansing Ctr Township | 33-021-01-18-176-001 | R2980000X-XXXX-NF-G | $ 37.93 | 32.38 | 9/4/2009 | 118 | 22.73 | 11.37 | 58.95 |
| 60 | 189 | MI | Lansing Ctr Township | 33-021-01-18-276-002 | R2880000X-XXXX-NF-G | $ 91.70 | 77.87 | 9/4/2009 | 118 | 54.82 | 27.41 | 142.16 |
| 61 | 190 | MI | Lansing Ctr Township | 33-021-01-18-276-003 | R2890000X-XXXX-NF-G | $ 9,595.59 | 8,312.64 | 9/4/2009 | 118 | 5,789.51 | 2,894.76 | 15,013.48 |
| 62 | 191 | MI | Lansing Ctr Township | 33-021-01-18-277-001 | R2800000X-XXXX-NF-G | $ 111.97 | 94.93 | 9/4/2009 | 118 | 66.89 | 33.45 | 173.46 |
| 63 | 192 | MI | Lansing Ctr Township | 33-021-01-18-277-002 | R2910000X-XXXX-NF-G | $ 111.97 | 94.93 | 9/4/2009 | 118 | 66.89 | 33.45 | 173.46 |
| 64 | 193 | MI | Lansing Ctr Township | 33-021-01-18-278-007 | R2920000X-XXXX-NF-G | $ 10,016.12 | 8,932.98 | 9/4/2009 | 118 | 6,126.01 | 3,063.01 | 15,886.10 |
| 65 | 476 | MI | Livonia | 46-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-001 | R2690000X-XXXX-NF-G | $ 123,984.42 | 105,747.09 | 9/11/2009 | 111 | 79,899.18 | 39,949.59 | 193,356.03 |
| 66 | 525 | MI | Milford Township | 63-L-16-19-100-030 | RF8300000-XXXX-NF-G | $ 8,959.03 | 1,873.50 | 9/4/2009 | 118 | 3,502.02 | 1,751.01 | 9,081.52 |
| 67 | 526 | MI | Milford Township | 63-L-16-19-100-048 | RF8800000-XXXX-NF-G | $ 14,049.43 | 2,849.94 | 9/4/2009 | 118 | 5,463.36 | 2,731.68 | 14,167.69 |
| 68 | 331 | MI | Pontiac | 63-64-14-17-384-003 | R3520000X-XXXX-NF-G | $ 10,253.38 | 225.99 | 12/31/2009 | 0 | - | - | 10,479.37 |
| 69 | 133 | MI | Pontiac | 63-64-14-19-432-003 | R3550000X-XXXX-NF-G | $ 2,625.69 | 57.87 | 9/11/2009 | 111 | 816.10 | 408.05 | 2,275.51 |
| 70 | 138 | MI | Pontiac | 63-64-14-19-432-004 | R3560000X-XXXX-NF-G | $ 28,859.38 | 622.41 | 9/11/2009 | 111 | 8,965.70 | 4,482.85 | 24,998.94 |
| 71 | 139 | MI | Pontiac | 63-64-14-19-453-004 | R3580000X-XXXX-NF-G | $ 542,736.76 | 11,963.38 | 9/11/2009 | 111 | 168,691.14 | 84,344.82 | 470,355.33 |
| 72 | 30 | MI | Pontiac | 63-64-14-20-201-001 | R3610000X-XXXX-NF-G | $ 316.08 | 6.95 | 9/11/2009 | 111 | - | - | 323.03 |
| 73 | 31 | MI | Pontiac | 63-64-14-20-202-002 | R3610000X-XXXX-NF-G | $ 81.35 | 1.78 | 12/31/2009 | 0 | - | - | 83.12 |
| 74 | 32 | MI | Pontiac | 63-64-14-20-205-005 | R3620000X-XXXX-NF-G | $ 151.71 | 3.32 | 12/31/2009 | 0 | - | - | 155.03 |
| 75 | 33 | MI | Pontiac | 63-64-14-20-206-006 | R3630000X-XXXX-NF-G | $ 65.51 | 1.42 | 12/31/2009 | 0 | - | - | 67.03 |
| 76 | 514 | MI | Pontiac | 63-64-14-29-206-017 | R3740000X-XXXX-NF-G | $ 113.40 | 2.44 | 9/11/2009 | 104 | 33.02 | 16.51 | 99.37 |
| 77 | 513 | MI | Pontiac | 63-64-14-29-228-008 | R3750000X-XXXX-NF-G | $ 223.13 | 4.89 | 9/11/2009 | 104 | 64.97 | 32.49 | 195.54 |
| 78 | 34 | MI | Pontiac | 63-64-14-29-452-017 | R3760000X-XXXX-NF-G | $ 34,669.47 | 764.18 | 9/18/2009 | 104 | 10,096.16 | 5,048.08 | 30,385.57 |
| 79 | 35 | MI | Pontiac | 63-64-14-33-302-001 | R3790000X-XXXX-NF-G | $ 21,023.57 | 463.40 | 8/28/2009 | 125 | 6,128.61 | 3,864.30 | 17,807.70 |
| 80 | 515 | MI | Pontiac | 63-64-14-33-302-002 | R3810000X-XXXX-NF-G | $ 4,735.72 | 104.36 | 8/28/2009 | 125 | 1,385.23 | 692.61 | 4,011.55 |
| 81 | 516 | MI | Pontiac | 63-64-14-33-302-003 | R3810000X-XXXX-NF-G | $ 1,000.93 | 22.05 | 8/28/2009 | 125 | 121.30 | 60.65 | 293.66 |
| 82 | 153 | MI | Pontiac | 63-64-14-33-303-017 | R3820000X-XXXX-NF-G | $ 316.08 | 6.95 | 8/28/2009 | 125 | 1,568.23 | 784.12 | 267.72 |
| 83 | 151 | MI | Pontiac | 63-64-14-33-351-001 | R3830000X-XXXX-NF-G | $ 1,480.50 | 98.73 | 8/28/2009 | 125 | 2,341.46 | 1,170.73 | 3,791.42 |
| 84 | 152 | MI | Pontiac | 63-64-14-33-351-012 | R3840000X-XXXX-NF-G | $ 8,403.84 | 185.18 | 8/28/2009 | 125 | 2,947.68 | 1,470.73 | 7,118.33 |
| 85 | 135 | MI | Pontiac | 63-64-19-04-126-002 | R3850000X-XXXX-NF-G | $ - | 28.34 | 9/11/2009 | 111 | 892.36 | 446.18 | 24.03 |
| 86 | 141 | MI | Pontiac | 63-64-19-04-126-008 | R4660000X-XXXX-NF-G | $ 1,124.27 | 24.76 | 8/28/2009 | 125 | 393.51 | 196.76 | 952.29 |
| 87 | 198 | MI | Pontiac | 63-64-19-04-126-009 | R4680000X-XXXX-NF-G | $ 2,141.50 | 47.18 | 8/28/2009 | 125 | 749.55 | 374.78 | 1,813.91 |
| 88 | 196 | MI | Pontiac | 63-64-19-04-126-010 | R4690000X-XXXX-NF-G | $ 4,524.67 | 99.64 | 8/28/2009 | 125 | 1,583.02 | 791.51 | 3,830.72 |
| 89 | 140 | MI | Saginaw City | 08-0002-0000 | R3870000X-XXXX-NF-G | $ 1,269.34 | 157.38 | 9/11/2009 | 111 | 561.32 | 280.66 | 1,196.10 |
| 90 | 165 | MI | Saginaw City | 19-2231-0000 | R4880000X-XXXX-NF-G | $ 337,690.71 | 41,880.46 | 8/28/2009 | 125 | 129,990.12 | 64,995.06 | 314,576.10 |
| 91 | 370 | MI | Saginaw City | 19-2231-001-00 | R6090000X-XXXX-NF-G | $ - | - | 9/11/2009 | 111 | - | - | - |
| 92 | 35 | MI | Saginaw City | 19-2232-0000 | R4780000X-XXXX-NF-G | $ 32,525.77 | 4,033.81 | 8/11/2009 | 125 | 12,520.40 | 6,260.20 | 30,298.38 |
| 93 | 385 | MI | Saginaw City | 21-08758-015-00 | R4840000X-XXXX-FG-G | $ 2,261.23 | 1,313.10 | 8/28/2009 | 125 | 1,361.07 | 680.53 | 3,293.80 |
| 94 | 448 | MO | Jackson | 31-140-03-03-00-0-00-000 | R8440000X-XXXX-20-G | $ 19.80 | - | 10/6/2009 | 86 | 6.40 | 3.20 | 16.60 |
| 95 | 448 | MO | Jackson | 31-140-03-04-00-0-00-000 | R8440000X-XXXX-20-G | $ - | - | 10/6/2009 | 86 | - | - | - |
| 96 | 449 | MO | Jackson | 31-140-03-10-00-0-00-000 | R8450000X-XXXX-20-G | $ 2,591.38 | - | 10/6/2009 | 86 | 837.76 | 418.88 | 2,172.50 |
| 97 | 9 | NJ | Clark | 143-1 | R6840000X-XXXX-35-G | $ 313,199.47 | - | 8/28/2009 | 125 | 107,260.09 | 53,630.05 | 259,569.43 |
| 98 | 26 | NJ | Cranford | 541-001 | R8650000X-XXXX-XL-G | $ 93,460.05 | - | 8/28/2009 | 125 | 32,006.87 | 16,003.44 | 77,456.62 |
| 99 | 658 | NJ | Ewing | BLOCK 343 LOT 7 | R9010000X-XXXX-NF-G | $ 77,221.26 | - | 10/6/2009 | 86 | 20,521.81 | 10,260.91 | 66,960.36 |
| 100 | 16 | NY | Massena Town | 405689 6002-1-1 | R9010000X-XXXX-NF-G | $ 376,722.98 | - | 10/6/2009 | 86 | 86,585.03 | 43,292.52 | 332,937.44 |
| 101 | 17 | NY | Massena Town | 405889 6004-2-1 | R9020000X-XXXX-NF-G | $ 523.67 | - | 10/6/2009 | 86 | 120.52 | 60.26 | 463.41 |
| 102 | 178 | OH | Montgomery | J244-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 | R0300000X-XXXX-20-G | $ - | 24,546.00 | 10/26/2009 | 66 | 5,648.94 | 2,824.47 | 21,721.53 |
| 103 | 179 | OH | Montgomery | J441-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 | RD6300000-XXXX-20-G | $ - | 254,155.83 | 10/26/2009 | 66 | 58,490.62 | 29,245.31 | 224,910.52 |
| 104 | 179 | OH | Montgomery | J441-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 | RD6300000-XXXX-20-G | $ - | 145,464.34 | 10/26/2009 | 66 | 33,476.72 | 16,738.36 | 128,725.98 |
| 105 | 180 | OH | Montgomery | J44-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 | R1100000X-XXXX-20-G | $ - | 8,055.78 | 10/26/2009 | 66 | 1,853.95 | 926.98 | 7,128.83 |
| 106 | 181 | OH | Montgomery | J44-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 | R4110000X-XXXX-20-G | $ - | 7,756.40 | 10/26/2009 | 66 | 1,786.27 | 893.14 | 6,863.13 |
| 107 | 660 | OH | Montgomery | N64-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 | R6100000X-XXXX-20-G | $ - | 13,557.50 | 10/26/2009 | 66 | 3,120.08 | 1,560.04 | 11,997.46 |
| 108 | 163 | OH | Montgomery | N84-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 | R4200000X-XXXX-20-G | $ - | - | 10/26/2009 | 66 | - | - | - |
| 109 | 669 | OH | Montgomery | R72-00904-0033 | RE0200000-XXXX-NF-G | $ - | 19.44 | 10/6/2009 | 86 | 4.47 | 2.24 | 17.21 |
| 110 | 510 | PA | Allegheny | 385-H-400 | R9180000X-XXXX-B2-G | $263,747.79 | - | 10/6/2009 | 66 | 60,698.11 | 30,349.06 | 233,398.73 |
| | | IN | | 1236 | 332 Breezy Hill Lane Bedford | $ - | 1,876.20 | 8/28/2009 | 125 | 642.52 | 321.27 | 1,554.94 |
| | | IN | | 1236 | 1609 mount pleasant bedford | $ - | 1,870.76 | 8/28/2009 | 125 | 640.66 | 320.33 | 1,550.24 |
| | | IN | | 1302 | former delco chassis plant | $ 5,795.03 | 5,109.60 | 8/28/2009 | 125 | 3,714.48 | 1,857.24 | 5,093.75 |
| | | IN | | 1288 | 1723 n washington kokomo | $ - | 12,312.00 | 8/28/2009 | 125 | 4,216.44 | 2,108.22 | 10,203.78 |
| | | IN | | 1288 | 1725 n washington kokomo | $ - | 6,810.00 | 8/28/2009 | 125 | 2,332.19 | 1,166.10 | 5,643.91 |
| | | MI | | | modular property | $ - | - | | | - | - | - |
| | | MI | | | Pontiac | $ 1,112,767.24 | - | 9/11/2009 | 112 | 341,457.87 | 170,725.94 | 942,041.31 |
| | | MI | | 63-64-19-03-126-008 | Pontiac | $ (408,953.60) | - | 9/11/2009 | 112 | (125,487.13) | (62,743.57) | (346,210.04) |
| | | MI | | 63-64-19-03-126-008 | | $ - | - | | | - | - | - |
| | | | | | | | | | | $ - | $ - | |
| | | | | | | | | | | $ - | $ - | |
| | | | | | | | | | | $ - | $ - | |
| | | | | | | $ 3,372,409.15 | $ 1,460,717.38 | | | $ 1,392,290.81 | $ 696,145.41 | $ 4,136,981.13 |

## Schedule VIII

### Properties

| TAX ID NUMBER | ADDRESS / LOCATION | Excluded Property List (if applicable) |
|---|---|---|
| Unknown | Allison Gas Turbine campus, having as an address 2701 West Raymond, Indianapolis, Indiana | |
| Unknown | Delphi Electrical and Electronic Management Systems campus, having as an address 2900 Scatterfield Road, Anderson, Indiana | |
| R72 00904 0033 | Dayton, Ohio parcel on Webster Street | |
| 47-06-11-100-048.000-009 | 1081 Breckenridge | |
| 47-06-11-100-064.000-009*[1] | 1119 Breckenridge | 1119 Breckinridge |
| 47-06-12-300-041.000-010* | 112 Bailey Scales Rd | 112 Bailey Scales; 115 Bailey Scales |
| 47-06-12-300-002.000-010*[2] | 126 Bailey Scales Rd | 126 Bailey Scales |
| 47-06-12-403-027.000-010 | 133 Bailey Lane | |
| 47-06-11-400-002.000-010* | 130 M St | "M" Street Church - 132 "M" Street |
| 47-06-11-400-003.000-010* | 132 M St | "M" Street Parsonage - 134 "M" Street |
| 47-06-02-400-069.000-009 | 145 Broomsage | |
| 47-06-02-200-035.000-009* | 1585 Peerless | 1585 Peerless |
| 47-06-02-200-001.000-009* | 1589 Peerless | 1589 Peerless |
| 47-06-11-400-063.000-010* | 222 N Madison | 228 Madison Street |
| 47-06-11-400-062.000-010* | 224 Madison | 224 Madison |
| 47-06-11-400-060.000-010* | 228 Madison | 222 Madison Street |
| 47-06-12-300-064.000-010* | 330 Robbins Way | 330 Robins Way |

[1] (*) Denotes a property already designated as an Excluded Real Property pursuant to the MSPA, as set forth on Section 2.2(b)(v) of the Sellers' Disclosure Schedule (as defined in the MSPA).

[2] This Property also includes the parcel designated as "Tract 14" on the plat mat following this schedule of Properties.

| | | |
|---|---|---|
| 47-06-12-200-008.000-009 | 452 Broomsage | |
| 47-06-12-200-009.000-009 | 472 Broomsage | |
| 47-06-11-100-027.000-009 | 530 North Jackson | |
| 47-06-12-300-078.000-010* | 624,626, 628 & 638 Riley | 624 Riley A; 624 Riley B; 626 Riley A; 626 Riley B; 628 Riley A; 628 Riley B; 638 Riley A; 638 Riley B |
| 47-06-12-300-067.000-010* | 630 Riley | 630 Riley A; 630 Riley B |
| 47-06-12-300-085.000-010* | 632 Riley | 632 Riley A; 632 Riley B; 634 Riley A; 634 Riley B; 636 Riley A; 636 Riley B; 637 Riley A; 637 Riley B |
| 47-06-12-300-087.000-010* | 634 Riley | 632 Riley A; 632 Riley B; 634 Riley A; 634 Riley B; 636 Riley A; 636 Riley B; 637 Riley A; 637 Riley B |
| 47-06-12-300-086.000-010* | 636 Riley | 632 Riley A; 632 Riley B; 634 Riley A; 634 Riley B; 636 Riley A; 636 Riley B; 637 Riley A; 637 Riley B |
| 47-06-12-300-079.000-010* | 637 Riley | 632 Riley A; 632 Riley B; 634 Riley A; 634 Riley B; 636 Riley A; 636 Riley B; 637 Riley A; 637 Riley B |
| 47-06-12-300-063.000-010* | 639 Riley | 639 Riley Blvd |
| 47-06-11-100-072.000-009* | 640 Jackson | 640 North Jackson |
| 47-06-12-300-077.000-010* | 640 Riley | 640 Riley A |
| 47-06-12-300-082.000-010* | 641 Riley | 641 Riley A; 641 Riley B; |
| 47-06-12-300-059.000-010* | 645 Riley | 643 Riley A; 643 Riley B; 645 Riley A; 645 Riley B |
| 47-06-12-300-089.000-010* | 659 Riley | 659 Riley |
| 47-06-11-100-076.000-009* | Bailey Scales Rd | Five Acres (Danny Wall's) – Vacant Lot Bailey Scales Road |
| 47-06-12-300-009.000-010* | Bailey Scales Rd | 402 Bailey Scales |
| 47-06-12-300-011.000-010* | Bailey Scales Rd | 402 Bailey Scales |
| 47-06-12-300-043.000-010 | Bailey Scales Rd | |
| 47-06-12-300-010.000-010* | 402 Bailey Scales Road | 402 Bailey Scales |
| 47-06-11-100-049.000-009* | Breckenridge | 1081 Breckinridge |
| 47-06-11-100-063.000-009* | Breckridge | 1119 Breckinridge |
| 47-06-12-200-006.000-009* | Broomsage Rd | 572 Broomsage |
| 47-03-34-900-002.000-006 | Bud Iked Rd | |
| 47-03-34-300-008.000-006 | Bud Iked Rd | |
| 47-03-33-100-005.000-006 | Bud Ikerd Rd | |

| | | |
|---|---|---|
| 47-03-34-400-010.000-006 | Bud Ikerd Rd | |
| 47-03-34-300-007.000-006 | Bud Ikerd Rd | |
| 47-06-02-400-071.000-009* | Dive Rd | 145 Broomsage |
| 47-06-02-400-012.000-009 | Dive Rd | |
| 47-06-03-200-004.000-009 | East Oolitic | |
| 47-06-02-400-080.000-009 | Mt Pleasant Rd | |
| 47-03-35-300-014.000-006 | Peerless Rd | |
| 47-03-35-300-021.000-006 | Peerless Rd | |
| 47-06-02-400-081.000-009 | Rawlins Mill Rd | |
| 47-06-11-100-013.000-009 | Rawlins Mill Rd | |
| 47-06-11-500-068.000-009* | Redbud St | Vacant Lot North of GM Plant – Breckenridge Road |
| 47-06-11-100-060.000-009* | Redbud St | 1081 Breckinridge |
| 47-06-11-100-061.000-009* | Redbud St | 1081 Breckinridge |
| 47-06-12-300-070.000-010* | Riley Blvd | 641 Riley Blvd. |
| 47-06-12-300-099.000-010* | Riley Blvd | 640 Riley B |
| 47-06-12-300-065.000-010 | Riley Blvd | |
| 47-06-12-300-081.000-010 | Riley Blvd | |
| 47-06-12-403-035.000-010 | Riley Blvd | |
| 47-06-12-403-042.000-010 | Riley Blvd | |
| 47-06-03-100-011.000-009 | RR 19 East Oolitic | |
| 47-06-11-100-074.000-009 | Vacant Lot on Breckinridge | |

