# EXHIBIT B

1  SEC. 747. (a) DEFINITIONS.—For purposes of this
2  section the following definitions apply:
3      (1) The term "covered manufacturer" means—
4          (A) an automobile manufacturer in which
5          the United States Government has an owner-
6          ship interest, or to which the Government has
7          provided financial assistance under title I of the
8          Emergency Economic Stabilization Act of 2008;
9          or
10         (B) an automobile manufacturer which ac-
11         quired more than half of the assets of an auto-
12         mobile manufacturer in which the United States
13         Government has an ownership interest, or to
14         which the Government has provided financial
15         assistance under title I of the Emergency Eco-
16         nomic Stabilization Act of 2008.
17     (2) The term "covered dealership" means an
18     automobile dealership that had a franchise agree-
19     ment for the sale and service of vehicles of a brand
20     or brands with a covered manufacturer in effect as
21     of October 3, 2008, and such agreement was termi-
22     nated, not assigned in the form existing on October
23     3, 2008 to another covered manufacturer in connec-
24     tion with an acquisition of assets related to the man-

U:\2010rept\CONF\03rept\sec747.xml                              SEN. APPRO.

2

1    ufacture of that vehicle brand or brands, not re-
2    newed, or not continued during the period beginning
3    on October 3, 2008, and ending on December 31,
4    2010.
5        (b) A covered dealership that was not lawfully termi-
6    nated under applicable State law on or before April 29,
7    2009, shall have the right to seek, through binding arbi-
8    tration, continuation, or reinstatement of a franchise
9    agreement, or to be added as a franchisee to the dealer
10   network of the covered manufacturer in the geographical
11   area where the covered dealership was located when its
12   franchise agreement was terminated, not assigned, not re-
13   newed, or not continued. Such continuation, reinstate-
14   ment, or addition shall be limited to each brand owned
15   and manufactured by the covered manufacturer at the
16   time the arbitration commences, to the extent that the cov-
17   ered dealership had been a dealer for such brand at the
18   time such dealer's franchise agreement was terminated,
19   not assigned, not renewed, or not continued.
20       (c) Before the end of the 30-day period beginning on
21   the date of the enactment of this Act, a covered manufac-
22   turer shall provide to each covered dealership related to
23   such covered manufacturer a summary of the terms and
24   the rights accorded under this section to a covered dealer-
25   ship and the specific criteria pursuant to which such deal-

3

er was terminated, was not renewed, or was not assumed and assigned to a covered manufacturer.

(d) A covered dealership may elect to pursue the right to binding arbitration with the appropriate covered manufacturer. Such election must occur within 40 days of the date of enactment. The arbitration process must commence as soon as practicable thereafter with the selection of the arbitrator and conclude with the case being submitted to the arbitrator for deliberation within 180 days of the date of enactment of this Act. The arbitrator may extend the time periods in this subsection for up to 30 days for good cause. The covered manufacturer and the covered dealership may present any relevant information during the arbitration. The arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer. The factors considered by the arbitrator shall include (1) the covered dealership's profitability in 2006, 2007, 2008, and 2009, (2) the covered manufacturer's overall business plan, (3) the covered dealership's current economic viability, (4) the covered dealership's satisfaction of the performance objectives established pursuant to the

1  applicable franchise agreement, (5) the demographic and
2  geographic characteristics of the covered dealership's mar-
3  ket territory, (6) the covered dealership's performance in
4  relation to the criteria used by the covered manufacturer
5  to terminate, not renew, not assume or not assign the cov-
6  ered dealership's franchise agreement, and (7) the length
7  of experience of the covered dealership. The arbitrator
8  shall issue a written determination no later than 7 busi-
9  ness days after the arbitrator determines that case has
10 been fully submitted. At a minimum, the written deter-
11 mination shall include (1) a description of the covered
12 dealership, (2) a clear statement indicating whether the
13 franchise agreement at issue is to be renewed, continued,
14 assigned or assumed by the covered manufacturer, (3) the
15 key facts relied upon by the arbitrator in making the de-
16 termination, and (4) an explanation of how the balance
17 of economic interests supports the arbitrator's determina-
18 tion.
19     (e) The arbitrator shall be selected from the list of
20 qualified arbitrators maintained by the Regional Office of
21 the American Arbitration Association (AAA), in the Re-
22 gion where the dealership is located, by mutual agreement
23 of the covered dealership and covered manufacturer. If
24 agreement cannot be reached on a suitable arbitrator, the
25 parties shall request AAA to select the arbitrator. There

U:\2010rept\CONF\03rept\sec747.xml                               SEN. APPRO.

5

1 will be no depositions in the proceedings, and discovery
2 shall be limited to requests for documents specific to the
3 covered dealership. The parties shall be responsible for
4 their own expenses, fees, and costs, and shall share equally
5 all other costs associated with the arbitration, such as ar-
6 bitrator fees, meeting room charges, and administrative
7 costs. The arbitration shall be conducted in the State
8 where the covered dealership is located. Parties will have
9 the option of conducting arbitration electronically and tele-
10 phonically, by mutual agreement of both parties. The arbi-
11 trator shall not award compensatory, punitive, or exem-
12 plary damages to any party. If the arbitrator finds in favor
13 of a covered dealership, the covered manufacturer shall as
14 soon as practicable, but not later than 7 business days
15 after receipt of the arbitrator's determination, provide the
16 dealer a customary and usual letter of intent to enter into
17 a sales and service agreement. After executing the sales
18 and service agreement and successfully completing the
19 operational prerequisites set forth therein, a covered deal-
20 ership shall return to the covered manufacturer any finan-
21 cial compensation provided by the covered manufacturer
22 in consideration of the covered manufacturer's initial de-
23 termination to terminate, not renew, not assign or not as-
24 sume the covered dealership's applicable franchise agree-
25 ment.

U:\2010rept\CONF\03rept\sec747.xml                               SEN. APPRO.

6

1    (f) Any legally binding agreement resulting from a
2 voluntary negotiation between a covered manufacturer and
3 covered dealership(s) shall not be considered inconsistent
4 with this provision and any covered dealership that is a
5 party to such agreement shall forfeit the right to arbitration established by this provision.
7    (g) Notwithstanding the requirements of this provision, nothing herein shall prevent a covered manufacturer
9 from lawfully terminating a covered dealership in accordance with applicable State law.