# EXHIBIT C

# AMERICAN ARBITRATION ASSOCIATION
# AUTOMOBILE INDUSTRY SPECIAL BINDING ARBITRATION PROGRAM

In the Matter of the Arbitration between:

Re: 72 532 01370 09
    Rally Auto Group, Inc.
    VS
    General Motors, LLC

## Written Determination of Arbitrator

I, the undersigned Arbitrator, having been designated pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117) (the "Act"), enacted December 16, 2009, and having been duly sworn and having heard the proofs and allegations of the parties, do hereby make my Written Determination pursuant to the Act.

### Background

The Act affords a "covered dealership" (as defined in Section 747(a)(2)) the right to challenge by binding arbitration the decision of a "covered manufacturer" (as defined in Section 747(a)(1)(A) and (B)) to terminate, or not to assign, renew or continue, the covered dealership's franchise agreement. This case was filed in accordance with the Act's provisions and I held hearings and heard testimony on May 13, 14 and 17, 2010. The parties submitted closing briefs on May 28, 2010, and the arbitrator determined that the case had been fully submitted as of May 28, 2010. Set forth below is my "written determination" (as provided for in 747(d) of the Act) of the issue to be decided under the Act, namely "whether or not the covered dealership should be added to the dealer network of the covered manufacturer." This Determination is being issued within seven (7) business days after the case was fully submitted.

I. <u>**The Parties**</u>

This proceeding concerns the automobile dealership known as Rally Auto Group located at 39012 Carriage Way Palmdale, California 93551 ("Rally"). Rally is a "covered dealership" as defined in Section 747(a)(2).

The "covered manufacturer" for purposes of this arbitration is General Motors, LLC, which is the current owner of the General Motors automobile manufacturing business. For convenience, the terms "General Motors" and "GM" is refers to both General Motors, LLC and General Motors Corporation.

90080241.1                                                                                     1

## II. Determination

Rally, the covered dealership described above in Section I, shall be added to the dealer network of General Motors, LLC, as to the Cadillac, Buick and GMC brands, in the manner provided for by the Act and in accordance with the terms and conditions of the Act.

Rally, the covered dealership described above in Section I, shall not be added to the dealer network of General Motors, LLC, with respect to the Chevrolet brand.

## III. Key Facts Relied on by the Arbitrator in Making the Determination

In accordance with Section 747, I considered the following factors:

1. The covered dealership's profitability in 2006, 2007, 2008 and 2009;

2. The covered manufacturer's overall business plan;

3. The covered dealership's current economic viability;

4. The covered dealership's satisfaction of the performance objectives established pursuant to the applicable franchise agreement;

5. The demographic and geographic characteristics of the covered dealership's market territory;

6. The covered dealership's performance in relation to the criteria used by the covered manufacturer to terminate, not renew, not assume or not assign the covered dealership's franchise agreement, and

7. The length of experience of the covered dealership.

In making the determination, I relied upon the following key facts:

General Motors' overall business plan includes reducing the total number of GM dealers nationwide, for the purpose of increasing the sales volumes ("throughput"), and thus the profitability, of the remaining GM dealers. The plan anticipates that this increase in dealer profitability will enable dealers to invest in better facilities, provide better customer service and, in general, compete more effectively with non-GM brands. General Motors' plan for the Palmdale area is to replace Rally as the Chevrolet dealer with a dealership owned and operated by Lou Gonzalez, operator of a successful Saturn dealership in Palmdale, which is being wound down with the elimination by GM of the

Saturn brand. GM plans to remove the Cadillac, Buick and GMC brands from the Palmdale GM dealership.

Rally has many years of experience as a General Motors dealer in Palmdale, California, and has been operated by its current owner/operator, Larry Mayle, for around 20 years. It currently sells the Cadillac, Buick, GMC and Chevrolet brands, from two facilities. Rally's facilities are adequate, and it is currently economically viable. It has sufficient working capital, availability of inventory financing and adequate staffing. During the years 2006 through 2009 Rally's operations were profitable. (See below for further discussion of 2008 profitability).

The Dealer Sales and Service Agreement between Rally and General Motors, which is the applicable franchise agreement, establishes a variety of performance objectives. (Ex. 1) In Article 5.1(f) of the agreement Rally agreed "to comply with the retail sales standards established by General Motors, as amended from time to time." Ex. 1, p. 6. Article 9 of the agreement ("Review of Dealer's Sales Performance") provides that "Satisfactory performance of Dealer's sales obligations under Article 5.1 requires Dealer to achieve a Retail Sales Index equal or greater than 100." Ex. 1, p. 17. The Retail Sales Index ("RSI") is the ratio of a dealer's reported retail sales to the sales necessary to equal the state average expected market share for the brand in question in the dealer's Area of Primary Responsibility ("APR"), adjusting for the popularity of various types and sizes of vehicles in the APR.

Rally did not achieve an RSI of 100 for any of its Chevrolet, Cadillac, Buick and GMC brands for the years 2006 through 2008, except for an RSI of 102.82 for Cadillac in 2008. These RSI scores ranked Rally low in sales performance as compared with other General Motors dealers. Rally's RSI has been particularly low for the Chevrolet brand. For Chevrolet its RSI in 2006 was 53.60, in 2007 was 50.36, and in 2008 was 53.07.

During 2006-2008, and in prior years, General Motors regularly communicated to Rally that General Motors considered Rally's levels of sales, particularly Chevrolet, to be inadequate and in need of substantial improvement. (Exs. 88, 201-203). After Rally received a "wind down" letter from General Motors in May 2009,[1] its sales performance improved, but that performance, under threat of termination, may not be as indicative of future performance as is Rally's historical sales record.

The demographic factors in Rally's area of principal responsibility ("APR") include high levels of unemployment, a working population that largely commutes "down the hill" to the greater Los Angeles area, with long commuting times. Rally contends that

---

[1] In its "wind down" letter to Rally dated May 14, 2009, GM advised Rally that it did not expect its contractual relationship with Rally to continue past October 2010. The wind down letter was followed by a Wind Down Agreement, allowing Rally to operate its GM dealership through October 31, 2010, but imposing certain restrictions, including inability of Rally to purchase new GM vehicles from GM.

90080241.1                                  3

these factors make the state-wide RSI scores misleading as applied to Rally. However, the comparatively high sales levels and RSI scores of the General Motors dealership in Victorville, California, a community comparable in many respects to Palmdale, tends to show that the RSI scores, based on General Motors' state-wide market share for various vehicle categories, provide a realistic measure for dealer sales performance in the Palmdale market  The Palmdale Saturn dealership, operated by Lou Gonzalez, also has consistently achieved high RSI scores, again confirming that General Motors' RSI measure is applicable in Rally's market.

One of the criteria used by GM in deciding to terminate or not assign a dealer's franchise agreement is the Dealer Performance Score ("DPS"). This score measures the dealer's performance in four categories, which are weighted as follows:

| | |
|---|---|
| Sales | 50% |
| Customer Satisfaction Index | 30% |
| Capitalization | 10% |
| Profitability | 10% |

GM treats a score of 100 as average, and a score below 70 as poor performance. GM publicly stated that "Dealers with a score less than 70 received a wind-down agreement." (Ex. 26).

For 2008, GM calculated a DPS score for Rally of 55.27. (Ex. 31). The evidence showed, however, that this score depended on using an estimated LIFO adjustment to Rally's profits for 2008, rather than pre-LIFO profits or the actual, not estimated, LIFO profits. Using the latter two profit figures, Rally's DPS score was approximately 85.

### IV. Balance of Economic Interests

The balance of economic interests of the covered dealership, of the covered manufacturer and of the public supports this determination for the reasons set forth below.

General Motors' decision to replace Rally as a Chevrolet dealer with a dealership operated by GM's former Saturn dealer in the Palmdale market is consistent with General Motors' plan to develop a stronger dealer network. Although there is no assurance of the new dealers' success, there is a reasonable basis, based on prior performance, for concluding that General Motors will obtain significantly stronger representation in the Palmdale area through that dealer than through Rally. The public will benefit by having a more active and aggressive Chevrolet sales effort in that market. In addition, there is some basis in Rally's customer satisfaction scores to conclude that customer service from the new Chevrolet dealer will be improved.

In the arbitrator's view, the balance of economic interests supports a determination that Rally should be able to retain its dealership for the Cadillac, Buick and GMC brands. Rally has a long history as a GM dealer, with millions of dollars invested in its business and facilities. Its sales performance has been somewhat better for these

brands than for the Chevrolet brand. The public will benefit by continuing to be able to purchase these brands in Palmdale, without having to drive at least 37 miles to the nearest dealer selling these brands. Because General Motors has decided to retain one GM dealer in the Palmdale area, it will likely not achieve the cost savings in that area that it expects to achieve by large-scale reductions in the number of its dealers. The evidence did not show a benefit to either GM or the public by eliminating these brands from the Palmdale market. Also, the evidence showed that there is some uncertainty about the physical capacity of the new Chevrolet dealer to provide parts and service for the full range of GM brands, and the public will benefit by the continued availability of parts and service from Rally.

## VI. Costs

In accordance with the statute, the administrative fees and expenses, and the arbitrator's fees and expenses, shall be borne equally.

This Award is in full settlement of all claims submitted to this arbitration.

Date: June 8, 2010.

*Richard Mainland*
Richard Mainland, Arbitrator