# EXHIBIT D

1  **FERRUZZO & FERRUZZO, LLP**
   GREGORY J. FERRUZZO, SBN 165782
2     A Limited Liability Partnership,
   including Professional Corporations
3       3737 Birch Street, Suite 400
   Newport Beach, California 92660
4       Telephone (949) 608-6900

5  **MORGANSTERN, MAC ADAMS & DE VITO CO., L.P.A.**
   CHRISTOPHER M. DE VITO, OH BAR 47118
6  623 West Stain Clair Avenue
   Cleveland, Ohio 44113
7  Telephone 9216) 687-1212
   **Attorneys for Petitioner, Rally Auto Group, Inc.**

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  RALLY AUTO GROUP, INC.                )   Case No. SACV10-01236 DOC (Ex)
                                          )
12        Petitioner-Covered Dealership,  )   **PETITION TO MODIFY OR,**
                                          )   **ALTERNATIVELY, VACATE AN**
13  v.                                    )   **ARBITRATION AWARD**
                                          )
14  GENERAL MOTORS, LLC                   )   **(Hearing   and   Oral   Argument**
                                          )   **Requested)**
15        Respondent-Covered Manufacturer. )
                                          )
16

17        The Petitioner-Covered Dealership Rally Auto Group, Inc. hereby submits this Petition

18  to modify or, alternatively, to vacate a June 8, 2010 American Arbitration Association Award

19  ("Award") involving Respondent-Covered Manufacturer, General Motors, LLC.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

1. PARTIES ........................................ -1-

2. JURISDICTION ................................. -1-

3. VENUE ........................................ -1-

4. BACKGROUND ................................ -1-

   A.  Section 747 of the Consolidated Appropriations Act of 2010 ............ -1-

   B.  Procedural and Factual History ................................ -4-
      Award in Favor of Rally ..................................... -4-
      Award Exceeds Powers and Scope of Authority ...................... -5-
      Award on Matters Not Submitted ................................ -5-
      Award's Remedy Beyond Authority Because Involves Non-Party ......... -6-
      GM Agreed to Allow Original Dealer to Represent Needed Market ........ -6-
      Judicial Estoppel ........................................... -7-

5. STATEMENT OF LAW ........................... -8-

   A.  Modifying or Correcting Arbitration Awards ....................... -8-

   B.  Vacating Arbitration Awards ................................. -10-
      Misconduct and Misbehavior, Section 10(a)(3) ...................... -10-
      Exceeded and Imperfectly Executed Powers, Section 10(a)(4) .......... -11-
      Corruption, Fraud, and Undue Means by GM, Section 10(a)(1) .......... -11-
      GM Promised to Allow the Original Dealer to Continue in a Needed Market ................................................. -12-
      GM Represented an "Objective" DPS Standard to Bankruptcy Court and Congress ................................................ -12-

6. ARGUMENT OF LAW AND FACT .................. -13-

7. CONCLUSION ................................. -16-

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                 **Page(s)**

3

*Greer-Burger v. Temesi,*
   116 Ohio St. 3de 324, 879 N.E. 2d 174, 2007-Ohio-6442 . . . . . . . . . . . . . . . . . . 7, 12

4

*Hall Street Associates, LLC v. Mattel, Inc.,*
   552 U.S. 576, 585, 128 S.Ct. 1396, 1404 (2008) . . . . . . . . . . . . . . . . . . . . . 1, 10

5

6

*International Brotherhood of Electrical Workers, Local No. 265 v.*
   *O.K. Electric Co.,* 793 F.2d 214 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . 11

7

*Kyocera Corporation v. Prudential-Bache Trade Services*
   (2003) 34 F.3d 987 at 997-998. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8

*Madison Hotel v. Hotel and Restaurant Employees, Local 25,*
   *AFL-CIO,* 128 F.3d 743, 749 (C.A. D.C. 1997) . . . . . . . . . . . . . . . . . . . . 8

9

10

*Matteson v. Rider Sys., Inc.,* 99 F3d 108, 113 (C.A. 3 1996) . . . . . . . . . . . . . . 8

11

*Metromedia Energy, Inc. v. Ensearch Energy Services,*
   409 F.3d 574, 579 (C.A. 3 205) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

*Michigan Family Resources, Inc. v. Service Employees*
   *International Union Local 517M,* 475 F.3d 746, 760 (C.A. 6 2007) . . . . . . . . . 8

13

14

*NCR Corporation v. SAC-CO., Inc.,* 43 F.3d 1076, 1080 (6th Cir. 1995) . . . . . . 11, 14

15

*Off Shore Marine Towing v. MR23,* 412 F.3d 1254 (2005) . . . . . . . . . . . . . . . . . 9, 15

16

*Orion Shipping and Trading Company v. Eastern States*
   *Petroleum Corp. of Panama,* 312 F.2d 299 (2d Cir.), *cert. denied,*
   373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed. 2d 705 (1963) . . . . . . . . . . . . . . . . 11

17

18

*Santa Fe Pacific Corporation v. Centra States, Southwest*
   *Areas Pension Fund,* 22 F.3d 725 (C.A. 7 1994) . . . . . . . . . . . . . . . . . . . . 8

19

*Schoenduve Corporation v. Lucent Technologies, Inc.,*
   442 F. 3d 737, 731 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

20

21

*Stark v. Sandberg, Phoenix & von Gontard, P.C.,*
   381 F. 3d 793, 799 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

23

*Totem Marine Tug and Barge, Inc. v.*
   *North American Towing, Inc.,* 607 F.2d 649 (1979) . . . . . . . . . . . . . . . . . . 9

24

25

**Statutes**                                                              **Page(s)**

26

9 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8-10, 13

27

9 U.S.C. § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28

9 U.S.C. § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10, 11, 13

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone (949) 608-6900

9 U.S.C. § 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9

27 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities**                                                        **Page(s)**

Congressional Record-House, H14477 (December 10, 2009) . . . . . . . . . . . . . . . . . . . . . 3, 6

Consolidated Appropriations Act of 2010 (Public Law 111-117) . . . . . . 1-4, 6, 9-11, 14-15

House of Representatives, Subcommittee on Commercial and Administrative
Law, Committee of the Judiciary, "*Ramifications of Auto Industry
Bankruptcies (Part III)*," Serial No. 111-55, p. 1 (July 22, 2009) . . . . . . . . . . . . . . . . . . . 2

July 19, 2009, the Office of the Special Inspector General for TARP confirmed
Congress' concerns in a report entitled, "*Factors Effecting the Decisions of
General Motors and Chrysler to Reduce Their Dealership Networks* . . . . . . . . . . . . . 2, 3

June 10, 2009, Senate Banking Committee-Full Committee: *The
State of the Domestic Automobile Industry: Impact of Federal Assistance* . . . . . . . . . . . 2

June 12, 2009, House Energy and Commerce Committee-Subcommittee
on Oversight, Investigations: *GM and Chrysler Dealership Closures and
Restructuring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 12

June 3, 2009, State Senate Commerce Committee-Full Committee:
*GM And Chrysler Dealership Closures: Protecting Dealers and Consumers* . . . . . . . . . 2

September 16, 2009, House Small Business Committee-Subcommittee on
Rural Development, Entrepreneurship and Trade: *The Role of Automobile
Dealerships in Rural Economies* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1. **PARTIES**

Petitioner Rally Auto Group, Inc. ("Rally") is an automobile dealership located at 39012 Carriage Way, Palmdale, California 93551.  Rally is a "covered dealership," as defined in Section 747(a)(2) of the Consolidated Appropriations Act of 2010 (Public Law 111-117) (the "Act" or "Section 747"), enacted December 16, 2009.  (A true and correct copy of the Act is attached as Exhibit "1" to Petitioner's Appendix of Authorities in Support of Petition to Modify / Vacate Arbitration Award and Request for Judicial Notice filed concurrently herewith [hereinafter "Appendix"].)

Respondent General Motors, LLC ("GM") is the current owner of the General Motors automobile manufacturing business and has its principal place of business in Detroit, Michigan. GM is a "covered manufacturer" as defined by Section 747(a)(1) of the Act.

2. **JURISDICTION**

While the Federal Arbitration Act's ("FAA") standards apply to this dispute, the FAA "bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1402, 170 L.Ed.2d 254 (2008), citing *Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. 927.  The District Court, however, has federal question jurisdiction in this case under 27 U.S.C. § 1331 because it involves Section 747 of the Act, a law enacted by Congress (Public Law 111-117).  (Appendix Exhibit "1.")

3. **VENUE**

Venue is proper in this Court, pursuant to 9 U.S.C.A. § 10 and § 11, because the Arbitration was conducted in the City of Orange and the Award at issue was made within the Court's geographical district.

4. **BACKGROUND**

A. **Section 747 of the Consolidated Appropriations Act of 2010**

The underlying arbitration proceeding was timely initiated pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117, 123 Stat. 3034 (2009)) ("Section 747" or "Act" [Appendix Exhibit "1"]).  The genesis of Section 747 was the voluntary

1  petitions for bankruptcy filed by GM and Chrysler Corporation in the summer of 2009. Both

2  GM and Chrysler previously applied for and received loans from the U.S. Government through

3  the Troubled Asset Relief Program ("TARP") emergency funding program.

4      In the bankruptcy proceedings, both GM and Chrysler used a provision in the Bankruptcy

5  Code to circumvent state franchise laws and summarily terminate or "wind down" (under the

6  threat of termination) the franchises of over 2,000 independent auto dealers throughout the

7  United States.

8      The House of Representatives, Committee on the Judiciary, held three (3) days of hearings

9  on the *Ramifications of Auto Industry Bankruptcies*." The stated <u>purpose</u> of the hearings was

10  to review "the ramifications of auto bankruptcies <u>and their effect on dealers and other issues</u>"

11  (emphasis added).[1]  Other Congressional committees also conducted investigations, hearings,

12  and gathered evidence regarding the manufacturer's "expedited bankruptcy proceedings."[2]

13  Congress passed Section 747 of the Act because of the "bipartisanship concern in Congress of

14  the <u>mass closure of GM and Chrysler dealerships</u>." (Emphasis added.) (*Id.*)

15      Recently, on July 19, 2009, the Office of the Special Inspector General for TARP

16  ("SIGTARP") <u>confirmed</u> Congress' concerns in a report entitled, "*Factors Effecting the*

17  *Decisions of General Motors and Chrysler to Reduce Their Dealership Networks.*" SIGTARP

18

---

19      [1]    House of Representatives, Subcommittee on Commercial and Administrative

20  Law, Committee of the Judiciary, "*Ramifications of Auto Industry Bankruptcies (Part III)*," Serial No. 111-55, p. 1 (July 22, 2009) [Appendix Exhibit "7"; this subcommittee also

21  held hearings on May 21, 2009, and July 21, 2009].

22      [2]    June 3, 2009, State Senate Commerce Committee-Full Committee [Appendix Exhibit "6"]:

23          *GM And Chrysler Dealership Closures: Protecting Dealers and Consumers;*

24  June 10, 2009, Senate Banking Committee-Full Committee:
        *The State of the Domestic Automobile Industry: Impact of Federal*

25          *Assistance;*
June 12, 2009, House Energy and Commerce Committee-Subcommittee on

26  Oversight, Investigations [Appendix Exhibit "5"]:
        *GM and Chrysler Dealership Closures and Restructuring;*

27  September 16, 2009, House Small Business Committee-Subcommittee on
Rural Development, Entrepreneurship and Trade:

28          *The Role of Automobile Dealerships in Rural Economies.*

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

R403.2\254920v1

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1 concluded that its review "demonstrates that GM did not consistently follow its stated criteria"

2 regarding the wind-down and termination of dealerships.  (Appendix Exhibit "4," p. 30.)

3 SIGTARP also found, just as troubling, the fact that GM had "little or no documentation of the

4 decision-making process to terminate or retain dealerships... ." (*Id.*) The SIGTARP report also

5 held that GM's acceleration of dealership closings "was not done with any explicit cost savings

6 to the manufacturer in mind." (Appendix Exhibit "4," p. 29.)

7     It is precisely because of the arbitrary and capricious actions of GM and Chrysler in the

8 Bankruptcy Court, after acceptance of Federal TARP loans, that Section 747 mandated that any

9 manufacturer who accepted money from the Federal government had to provide the "specific

10 criteria" for their rejection or wind-down of dealerships.  The Act further required these

11 American Arbitration Association ("AAA") proceedings, if a dealer made demand on the

12 manufacturer, for a hearing before a neutral arbitrator to protect the parties' due process rights.

13     Section 747(b) states "[A] covered dealership that was not lawfully terminated under

14 applicable state law on or before April 29, 2009, shall have the right to seek, through binding

15 arbitration, continuation or reinstatement of a franchise agreement... ."  The Petitioner herein

16 was not lawfully terminated and sought arbitration. That legal prerequisite to these proceedings

17 has been met.

18     Section 747(c) provides a legal and factual prerequisite upon the covered manufacturer

19 (*i.e.* GM): provide the covered dealer, within thirty (30) days of the enactment of the Act,

20 "specific criteria" as to why the dealer was terminated.  The Congressional Record explained:

21         "We intend this process to provide transparency and avoid the
excessive costs and delays of litigation and discovery disputes. **The**

22 **manufacturer should provide the respective covered dealers with
each and every detail and criteria related to the evaluations of the**

23 **dealership** and the decisions to terminate, not assign, not renew or
discontinue.   It is anticipated that the manufacturers will be

24 cooperative and forthcoming and that all relevant information will be
provided promptly."

25

26 Congressional Record-House, H14477 (December 10, 2009) [Appendix Exhibit "2"].

27 (Emphasis added.)  There must be compliance with the legal and factual prerequisites in order

28 to frame the issues at the arbitration hearing.

R403.2\254920v1

1    The Federal legislation is clear that there is a <u>tri-partite</u> balancing test, which must be

2    performed by the arbitrator, regarding "the economic interest of the covered dealership, the

3    economic interest of the covered manufacturer, and the economic interest of the public at

4    large." Section 747 (d). The Act sets forth seven (7) <u>required</u> factors[3] that the arbitrator must

5    consider **AND** "that the covered dealership may present any relevant information during the

6    arbitration." Section 747(d). The law provides the remedy of "continuation," as well as

7    "reinstatement," of the covered dealership's franchise agreement. Section 747(b) and (d).

8    Petitioner sought the remedy of "continuation" as well as "reinstatement" or "addition"

9    of the covered dealership's franchise agreement pursuant to Section 747(b) and (e) of the Act.

10    **B.    Procedural and Factual History**

11    On January 13, 2010, GM provided its required notice regarding the specific criteria

12    which it used to issue the covered dealership (*i.e.* Rally) a wind-down agreement for its

13    Chevrolet, Buick, Pontiac, GMC, and Cadillac brands. The only two (2) criteria listed were as

14    follows: "2008 overall DPS total dealership score under 70" and "2008 overall RSI total

15    dealership score under 70."

16    Rally timely commenced an arbitration with AAA. The matter was assigned AAA Case

17    No. 72-532-01370-09 and Arbitrator Richard Mainland. Testimony was heard at the hearings

18    held on May 13, 14, and 17, 2010. The parties submitted closing briefs on May 28, 2010.

19    **Award in Favor of Rally**

20    In this matter, the Arbitrator determined that Rally <u>exceeded</u> GM's publicly stated and

21    sworn criteria (*i.e.* DPS) for terminating the covered dealership, based upon the Dealer

22

23    [3]    "The factors considered by the arbitrator shall include:
       (1) the covered dealership's profitability in 2006, 2007, 2008, and 2009,
       (2) the covered manufacturer's overall business plan,

24     (3) the covered dealership's current economic viability,
       (4) the covered dealership's satisfaction of the performance objectives established

25    pursuant to the applicable franchise agreement,

26     (5) the demographic and geographic characteristics of the covered dealership's market
       territory,

27     (6) the covered dealership's performance in relation to the criteria used by the covered
       manufacturer to terminate, not renew, not assume or not assign the covered dealership's

28    franchise agreement, and
       (7) the length of experience of the covered dealership." (Section 747(d).)

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

R403.2\254920v1

1  Performance Score ("DPS") being <u>below</u> the 70 DPS index average. (Appendix Exhibit "8,"

2  p. 4.) <u>The Award held that "Rally's DPS score was approximately 85.</u>"  (Appendix Exhibit

3  "8," p. 4.)  Rally should <u>not</u> have been given a wind-down agreement based on GM's stated

4  specific criteria.  The Award's calculation of Rally's DPS score <u>included all five (5) brands</u> of

5  the covered dealership: Chevrolet, Buick, Pontiac, GMC, and Cadillac.  The Rally dealership

6  has <u>one (1)</u> GM Business Activity Code for all five (5) GM brands.  The Rally dealership has

7  one GM Dealer Sales and Service Agreement which allows it to sell and service all five (5)

8  brands.  The Rally dealership submits <u>one (1)</u> Operating Statement to GM every month.  The

9  Rally dealership is evaluated by GM (*i.e.* profitability, working capital, sales and service

10  satisfaction, etc.) as <u>one (1)</u> dealership.  The Award should be modified and/or vacated

11  regarding the *dicta* attempting to <u>take</u> the Chevrolet brand from the covered dealership's

12  franchise and <u>give</u> it to a former Saturn dealer.  (Appendix Exhibit "8," p. 4.)

13  **Award Exceeds Powers and Scope of Authority**

14      On June 8, 2010, AAA disseminated Arbitrator Richard Mainland's Award to the parties.

15  (Appendix Exhibit "8.")  The Award held that the covered dealership (*i.e.* Rally) "shall be

16  added to the dealer networks of General Motors, LLC, as to the Cadillac, Buick and GMC

17  brands, in the manner provided for by the Act and in accordance with the terms and conditions

18  of the Act." (Appendix Exhibit "8," p. 2.)  The Award also determined that the Chevrolet brand

19  should be continued in Rally's market.  However, the Arbitrator exceeded the scope of his

20  authority by attempting to **remove** the Chevrolet brand from the "covered dealership" and <u>give</u>

21  it to a <u>non</u>-party, a former Saturn dealer.[4]

22  **Award on Matters <u>Not</u> Submitted**

23      The Act does <u>not</u> allow for the splitting of brands within the "covered dealership" and

24  only grants the Arbitrator the authority to "decide, based on that balancing, whether or not the

25  *<u>covered dealership</u>* should be added to the dealer network of the covered manufacturer."

26  (Emphasis added.) (Section 747(d).)  The Act defined "covered dealership" as "an automobile

27

28      [4]      Specifically, the Award stated that, with respect to the Chevrolet brand Rally
"shall not be added to the dealer network of General Motors, LLC." (*Id.*)

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

R403.2\254920v1

1  dealership that had a franchise agreement for the sale and service of vehicles of **a brand or**
2  **brands** with a covered manufacturer." (Emphasis added.) (Section 747(a)(2).) Congress
3  intended that the "covered dealership," with or without all brands desired by the manufacturer,
4  should be added back to the dealer network.[5] The Award held that Chevrolet should be added
5  back to GM's dealer network. Thus, Rally should keep its Chevrolet brand.

6  ### Award's Remedy Beyond Authority Because Involves <u>Non</u>-Party

7  The Arbitrator exceeded the scope of the authority granted by Section 747(d) of the Act
8  and it must be modified and/or vacated in part to conform with the Federal law. The Award
9  impermissibly provides the remedy of taking Rally's Chevrolet brand and giving it to "GM's
10 former Saturn dealer in the Palmdale market." (Appendix Exhibit "8," p. 4.) The Arbitrator
11 did not have the authority to take a brand away from a covered dealership and give it to another
12 dealer within the same marketplace. (Section 747(b) and (d).) To the contrary, since GM's
13 overall business plan is to maintain representation and the Award determined that Rally and the
14 Chevrolet brand should be continued in this market[6], the Arbitrator could not "cherry pick" one
15 brand to take from Rally and give it to a former Saturn dealer. (*Id.*)

16 ### GM <u>Agreed</u> to Allow Original Dealer to Represent Needed Market

17 GM's CEO, Fritz Henderson, testified to Congress that "in the event we need to put a
18 place—put a location back, one of the things that we committed to the Senate and I'll commit
19 to you today, is that if we need to relocate a spot there, *we will provide the existing operator*
20 *the opportunity to actually look at that first*."[7] (Emphasis added.) [Appendix Exhibit "5," p.

---

21   [5]   Congressional Record, H14478 (Appendix Exhibit "2").

22

23   [6]   The Award found in favor of Rally to maintain its Buick, GMC, and Cadillac
   brands. (Appendix Exhibit "8," p. 2.) The Award also held that the Chevrolet brand should
24 be maintained in this market. (Appendix Exhibit "8," p. 4.) The Award admitted that the
   "evidence showed that there is some uncertainty about the physical capacity of the new
25 Chevrolet dealer to provide parts and service for the full range of GM brands, and the public
   will benefit by the continued availability of the parts and service from Rally." (Emphasis
26 added.) (Appendix Exhibit "8," p. 5.) Thus, Rally's "covered dealership" facility is
   necessary to sell and service the Chevrolet brand in this market, in addition to the Buick,
27 GMC, and Cadillac brands.

28   [7]   June 12, 2009, House Committee on Energy and Commerce, Subcommittee on
   Oversight and Investigations, *Hearing on GM and Chrysler Dealership Closures and*

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California  92660
Telephone: (949) 608-6900

R403 2\254920v1

1    66]

2    GM's CEO, Fritz Henderson, testified a <u>second</u> time and reiterated that "if we've made

3    mistakes in the future, we've concluded we cannot take care of customers in the location and

4    a point needs to be put back. ***We would go to whoever the individual was effected and give***

5    ***them the first chance to do that.***"[8] (Emphasis added.) [Appendix Exhibit "5," p. 66] The

6    Award has determined that GM needs Chevrolet representation and Rally is entitled to continue

7    representation as the "covered dealership" in the Palmdale market.

8                                  **Judicial Estoppel**

9    GM is judicially estopped from arguing a contrary position since it was successful during

10    the bankruptcy proceeding and consummated its 363 sale. *Greer-Burger v. Temesi*, 116 Ohio

11    St. 3de 324, 879 N.E. 2d 174, 2007-Ohio-6442, ¶ 25 ["Courts apply judicial estoppel in order

12    to 'preserve the integrity of the courts by preserving a party from abusing the judicial process

13    through cynical gamesmanship, achieving success on one position, then arguing the opposing

14    to suit an exigency of the moment," quoting *Telendyne Industries, Inc. v. NLRB* (C.A. 6, 1990),

15    911 F. 2d 1214, 1218.]

16    GM achieved its 363 sale by promising to "***provide the existing operator the opportunity***"

17    and "***give them the first chance***" to be added back to represent GM in the market. GM took

18    a contrary position in this arbitration and through "undue means" obtained an arbitration award

19    seeking to <u>take</u> the Chevrolet brand from Rally and <u>give</u> it to the former Saturn dealer in the

20    same market. Similarly, GM achieved its 363 sale by representing to the bankruptcy court that

21    it used an "objective" DPS index standard of below 70. GM took a contrary position during the

22    arbitration and "cherry-picked" the Retail Sales Index ("RSI") from the DPS index <u>and</u> errantly

23    calculated Rally's DPS score. GM is legally bound to follow its "objective" and "stated

24    criteria" (i.e. DPS) regarding Rally, which requires continuation and/or reinstatement of the

25    Chevrolet brand.

26

27    *Restructuring* (Appendix Exhibit "5").

28         [8]    (*Id.*)

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

*Rally Auto Group, Inc. v. General Motors, LLC*         -7-         PETITION TO MODIFY OR, ALTERNATIVELY,
VACATE AN ARBITRATION AWARD

5.    **STATEMENT OF LAW**

        This matter involves the FAA (Federal Arbitration Act), which was Congressionally enacted and codified at 9 U.S.C.A. § 1, *et seq.*, as it applies to Petitioner Rally and Respondent GM's Federally mandated automobile industry special binding arbitration, pursuant to Section 747 of the Act. This matter seeks modification or, alternatively, partial vacation of a June 8, 2010 Award based upon 9 U.S.C.A. §§ 10 and 11.

        Congress has limited the ability of Federal courts to review arbitration awards in order to promote the policy of favoring arbitration as an expeditious and relatively inexpensive means of resolving disputes. See 9 U.S.C. § 9; see also, *Schoenduve Corporation v. Lucent Technologies, Inc.*, 442 F. 3d 737, 731 (3rd Cir. 2006). However, the Circuit Courts[9] have cautioned that the district court is **neither "entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators."**

        Recently, the Eight District explained that the deference owed to arbitration awards "**is not the equivalent of a grant of limitless power.**" *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F. 3d 793, 799 (8th Cir. 2004) (citation omitted) (emphasis added). Congress has enacted protections to (1) modify or correct and/or (2) vacate an arbitration award pursuant to certain enumerated circumstances. (9 U.S.C. §§ 10-11.) In this matter, valid grounds exist on the face of the arbitration Award to modify or, alternatively, partially vacate the June 8, 2010 Award.

A.    **Modifying or Correcting Arbitration Awards**

        The FAA delineates in 9 U.S.C. § 11 the District Court's power to modify or correct an arbitration award as follows:

> **§11.  Same; modification or correction; grounds; order**
> In either of the following cases the United States court in and

---

[9]    *Matteson v. Rider Sys., Inc.*, 99 F3d 108, 113 (C.A. 3 1996) (citations omitted); *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746, 760 (C.A. 6 2007); *Metromedia Energy, Inc. v. Ensearch Energy Services*, 409 F.3d 574, 579 (C.A. 3 205); *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 799 (C.A. 8 2004); *Madison Hotel v. Hotel and Restaurant Employees, Local 25, AFL-CIO*, 128 F.3d 743, 749 (C.A. D.C. 1997); *Santa Fe Pacific Corporation v. Centra States, Southwest Areas Pension Fund*, 22 F.3d 725 (C.A. 7 1994).

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1    for the district wherein the award was made may make an order
2    modifying or correcting the award upon the application of any party
     to the arbitration -
          (a)    Where there was an evident material miscalculation of
3    figures or an **evident material mistake in the description** of any
     person, thing, or property referred to in the award.
4          (b)    Where the arbitrators have **awarded upon a matter
     not submitted** to them, unless it is a matter not affecting the merits
5    of the decision upon the matter submitted.
          (c)    Where the award is imperfect in matter of form not
6    affecting the merits of the controversy.
          **The order may modify and correct the award**, so as to
7    effect the intent thereof **and promote justice between the parties**."
     (Emphasis added.)
8

9    In this matter, Rally seeks modification and correction, pursuant to Section 11(a), based

10   upon the material mistake in the description in the Award (*i.e.* "covered dealership" versus

11   Chevrolet brand) and Section 11(b) based upon the fact that there was a determination upon a

12   matter not submitted — or could have been submitted — regarding (1) the severing of a brand

13   from the "covered dealership" franchise and (2) the remedy to take away the Chevrolet brand

14   from Rally's Buick, Pontiac, GMC, and Cadillac covered dealership business and give it to a

15   former Saturn dealer in the same marketplace.    Both separate modification grounds,

16   independently or together, justify - as a matter of law - correcting the Award to promote justice

17   between the parties and promote the remedial purpose of Section 747.

18   Circuit Courts have held that a district court may modify an award and strike the portion

19   of the award on a matter not submitted to the arbitrator for determination. *Off Shore Marine*

20   *Towing v. MR23*, 412 F.3d 1254 (2005); *Totem Marine Tug and Barge, Inc. v. North American*

21   *Towing, Inc.*, 607 F.2d 649 (1979).    Similarly, an award which evidently mistakes the

22   description of the matter being considered, also allows modification by a district court.

23   Congress specifically explained through the plain language of the FAA, that any modification

24   by a district court should "promote justice between the parties." (9 U.S.C. § 11.)

25   In this matter, justice requires modification to remove the Award's *dicta*, which

26   inappropriately attempts to take the Chevrolet brand from the "covered dealership" and give it

27   to a former Saturn dealers in the same marketplace.    Since the Award determined that

28   Chevrolet, Buick, GMC, and Cadillac should be maintained in the Palmdale market, the

1   "covered dealership" (*i.e.* Rally) has the right to continue with <u>all</u> four (4) brands.  There exists

2   an (1) evident material mistake in the description of the "covered dealership," which errantly

3   excluded the Chevrolet brand, and (2) an award upon a matter not submitted or authorized for

4   consideration, which gave the Chevrolet brand to a <u>non</u>-party and fashioned a remedy beyond

5   the authority established in Section 747 of the Act.  Once the Award determined that the

6   Chevrolet brand should be continued in the local market and that Rally should be maintained,

7   the arbitrator's responsibility was completed.

8   **B.    Vacating Arbitration Awards**

9   The FAA also delineates the following four (4) bases for a District Court to vacate or

10  partially vacate an arbitration award in 9 U.S.C. § 10, as follows:

11  **§10. Same; vacation; grounds; rehearing**
        (a)    In any of the following cases, the United States court

12  in an for the district wherein the award was made may make an order
    vacating the award upon the application of any party to the

13  arbitration-
        (1)    Where the award was procured by **corruption, fraud,**

14  **or undue means;**
        (2)    Where there was evident partiality or corruption in the

15  arbitrators, or either of them;
        (3)    Where the **arbitrators were guilty of misconduct** in

16  refusing to postpone the hearing, upon sufficient cause shown, or in
    refusing to hear evidence pertinent and material to the controversy;

17  **or of any other misbehavior by which the rights of any party
    have been prejudiced; or**

18      (4)    Where the **arbitrators exceeded their powers, or so
    imperfectly executed them** that a mutual, final, and definite award

19  upon the subject matter submitted was not made."

20  In this matter, Rally seeks partial vacation pursuant to Subsections (a)(1), (3), and (4).

21  The subsections authorizing vacating an award, when an arbitrator is "guilty of misconduct" or

22  "misbehavior" (*i.e.* 10(a)(3)) and/or "exceeded their powers" or "so imperfectly executed them"

23  (*i.e.* 10(a)(4)), have <u>collectively</u> been described as the "manifest disregard" of the law by the

24  United States Supreme Court.  *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 585,

25  128 S.Ct. 1396, 1404 (2008).

26  **Misconduct and Misbehavior, Section 10(a)(3)**

27  The Arbitrator in this matter was guilty of misconduct, misbehavior, and exceeded his

28  power (*i.e.* "manifest disregard") by (1) ruling on a matter <u>not</u> submitted for determination and

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1   (2) attempting to fashion a remedy not authorized by Section 747 of the Act. Specifically, the

2   Award attempts to carve out and take one GM brand (i.e. Chevrolet) from the "covered

3   dealership" and give it to a former Saturn dealer (i.e. non-party) within the same market

4   territory. Section 747 of the Act clearly limits the Arbitrator's authority to only determine

5   whether the "covered dealership" (i.e. not GM brands) should be continued, reinstated, or added

6   "as a franchisee to the dealer network of the covered manufacturer in the geographical area

7   where the covered dealership was located ... ." (Section 747(b).)

8                    **Exceeded and Imperfectly Executed Powers, Section 10(a)(4)**

9         Furthermore, even if the Arbitrator could sever a brand from within the "covered

10  dealership," which is not specifically authorized by the Act, the remedy fashioned in the Award

11  exceeds the Arbitrator's power. Circuit Courts have held that arbitrators exceed or imperfectly

12  execute their powers when they determine rights and obligations of individuals who are not

13  parties to the arbitration proceedings. *NCR Corporation v. SAC-CO., Inc.*, 43 F.3d 1076, 1080

14  (6th Cir. 1995); *International Brotherhood of Electrical Workers, Local No. 265 v. O.K.*

15  *Electric Co.*, 793 F.2d 214 (8th Cir. 1986); *Orion Shipping and Trading Company v. Eastern*

16  *States Petroleum Corp. of Panama,* 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct.

17  1679, 10 L.Ed. 2d 705 (1963). In this matter, the former Saturn dealer was awarded the

18  franchise, even though it was not a party to the arbitration proceedings. The Award, as a matter

19  of law, cannot determine the "rights and obligations" of a non-party regarding Rally's Chevrolet

20  brand and its "covered dealership" facility in Palmdale.

21                     **Corruption, Fraud, and Undue Means by GM, Section 10(a)(1)**

22        Subsection 10(a)(1) allows for the vacation of an arbitration award if it was procured by

23  "corruption, fraud, or undue means." Respondent GM procured the Award in this matter

24  through its "corruption, fraud and undue means." (1) GM publicly stated to Congress that if its

25  dealer network plans determined a brand needed representation in a market, then the original

26  dealership would have the opportunity to continue in the local market. (2) GM also publicly

27  stated to Congress and represented to the bankruptcy court that it used an "objective" DPS

28  standard to evaluate and determine which dealerships were terminated. **BOTH** of these

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1    statements were underlined contradicted by GM in this AAA matter and require partial vacation of the

2    Award as a matter of law and equity as to the Chevrolet brand.

3         **GM Promised to Allow the Original Dealer to Continue in a Needed Market**

4         GM's CEO, Fritz Henderson, testified to Congress that "in the event we need to put a

5    place—put a location back, one of the things that we committed to the Senate and I'll commit

6    to you today, is that if we need to relocate a spot there, *we will provide the existing operator*

7    *the opportunity to actually look at that first."*[10] (Emphasis added.) [Appendix Exhibit "5,"

8    p. 66.] GM's CEO, Fritz Henderson, testified a second time and reiterated that "if we've made

9    mistakes in the future, we've concluded we cannot take care of customers in the location and

10   a point needs to be put back. *We would go to whoever the individual was effected and give*

11   *them first chance to do that."*[11] (Emphasis added.) [Appendix Exhibit "5," p. 66.]

12        The Award established that GM needs and plans on having Chevrolet representation in

13   this market (Award, p. 4). However, the Award failed to apply this undisputed fact to this

14   matter. GM needs Chevrolet representation in Palmdale and Rally is legally entitled to continue

15   representation, as the operator and the "covered dealership," to follow GM's business plan and

16   sworn statements to other tribunals (*i.e.* Bankruptcy Court, Congress).

17        **GM Represented an "Objective" DPS Standard to Bankruptcy Court and Congress**

18        GM is judicially estopped from arguing a contrary position since it was successful during

19   the bankruptcy proceeding and consummated its 363 sales of assets. *Greer-Burger v. Temesi,*

20   116 Ohio St. 3d 324, 8789 N.E. 3d 174, 2007-Ohio-6442. ¶ 25, quoting *Teledyne Industries,*

21   *Inc. v. NLRB* (C.A. 6, 1990), 911 F.2d 1214, 1218. GM achieved its 363 sale by representing

22   to the bankruptcy court and Congress that it used an "objective" DPS index standard of below

23   70 to terminate a covered dealership."[12]   GM took a contrary position during the AAA

24

25        [10]    June 12, 2009, House Committee on Energey and Commerce, Subcommittee
     on Oversight and Investigations, *Hearing on GM and Chrysler Dealership Closures and*
26   *Restructuring* (Appendix Exhibit "5").

27        [11]    (*Id.*)

28        [12]    GM Dealer Network analysis presented to House Committee on Energy and
     Commerce, Subcommittee on Oversight and Investigations on June 12, 2009.

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1   Arbitration and "cherry-picked" the RSI of the Chevrolet brand from the DPS as justification

2   to take the Chevrolet brand from Rally and give it to a former Saturn dealer in the same market.

3   GM also errantly calculated Rally's DPS score. The Award determined that properly taking into

4   consideration legitimate LIFO accounting adjustments, Rally's DPS score was approximately

5   85 and that Rally should be maintained in the market.  (Appendix Exhibit "8," p. 4.)

6      GM took a contrary position in this arbitration and through "undue means" obtained an

7   arbitration award taking the Chevrolet brand because Rally allegedly had a low RSI Score. As

8   a matter of law and equity, the Chevrolet brand must be continued with the "covered

9   dealership" because (1) Rally exceeded GM's "objective" DPS standard and (2) GM plans on

10   maintaining Chevrolet representation in this local market.

11   **6.   ARGUMENT OF LAW AND FACT**

12      That portion of the Arbitration Award which allows GM to "replace" Rally as a Chevrolet

13   dealership with another dealership in the Palmdale market exceeds the authority of the

14   Arbitrator.

15      The Federal Arbitration Act allows the District Court to strike a portion of an Arbitrator's

16   Award pertaining to an issue not subject to arbitration.

17         "In sum, the Federal Arbitration Act allows a federal court to
           correct a technical error, to strike all or a portion of an award
18         pertaining to an issue not at all subject to *998 arbitration, and to
           vacate an award that evidences affirmative misconduct in the arbitral
19         process or the final result or that is completely irrational or exhibits
           a manifest disregard for the law."

20
         *Kyocera Corporation v. Prudential-Bache Trade Services* (2003) 34
21         F.3d 987 at 997-998.

22      Specifically, 9 USC §10(a)(4) permits the United States Court in the District wherein the

23   award was made to vacate that part of an award where the Arbitrator exceeds their powers.

24         "Section 10(a)(4) provides that an award may be vacated
           where the arbitrators exceeded their powers.  Some circuits have
25         specifically held that arbitrators exceed their powers when they
           determine rights and obligations of individuals who are not parties to
26         the arbitration proceedings."

27

28   (http://energycommerce.house.gov/Press_111/20090612/gmnetworkanalysis.pdf) [Appendix
     Exhibit "3"]

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

*NCR Corporation v. SAC-CO., Inc.* (1995) 43 F.3d 1076 at 1080

1

2    The case of NCR Corporation (*supra*) arises out of a contract dispute between a

3   manufacturer of electronic cash registers and one of its dealers. The arbitrator in that case

4   awarded punitive damages against the manufacturer which were ordered to be paid to dealers

5   who were not parties to the arbitration. In that case the District Court Magistrate vacated the

6   punitive damages part of the arbitrator's award on the grounds that the arbitrator exceeded the

7   scope of his authority by awarding the recovery of punitive damages payable to non-parties.

8   In its decision, the Court of Appeals, Sixty Circuit, affirmed the judgment vacating part of the

9   arbitrator's award which exceeded his authority. The present case is analogous in that the

10   Arbitrator exceeded his authority by allowing GM "to replace Rally as a Chevrolet dealer with

11   a dealership operated by GM's former Saturn dealer in the Palmdale market".

12    The case of *Schoenduve Corporation v. Lucent Technologies, Inc.* (2006) 442 F.3d 727

13   examined the scope of the arbitrator's authority to award relief. In its decision the Court

14   considered the contract requiring arbitration and the parties' demand for arbitration to determine

15   the scope of the arbitrator's authority. In the present case the scope of the Arbitrator's authority

16   is very narrow and specific. The federal law, Section 747(d), which authorizes this arbitration

17   proceeding states that "the arbitrator shall balance the economic interest of the covered

18   dealership, the economic interest of the covered manufacturer, and the economic interest of the

19   public at large **and shall decide, based on that balancing, whether or not the covered**

20   **dealership should be added to the dealer network of the covered manufacturer**" (Emphasis

21   added). This is the only determination which the arbitrator is authorized to make. This

22   arbitration proceeding does _not_ authorize the arbitrator to decide if Rally should be replaced as

23   the Chevrolet dealer by another dealer in Palmdale.

24    As part of the chain of events which led to the enactment of Section 747, GM has asserted

25   that it was critical to the reorganization of the company to _reduce_ the size of its dealer network.

26   The Business Plans which GM submitted to the government set forth a need to reduce the

27   number of dealerships in its dealer network. The bankruptcy of GM allowed the company the

28   ability to threaten the rejection of dealer franchise agreements and enabled GM to obtain the

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1    "Wind-down Agreements" by which GM sought to reduce the size of its dealer body. The

2    Answering Statement submitted by GM in the arbitration hearings, which were conducted under

3    Section 747, details GM's plan to reduce the total number of dealers by eliminating those

4    dealers who had inadequate facilities or undesirable locations. The issue to be determined by

5    the arbitrator was whether Rally should be eliminated. The premise behind Section 747 and the

6    scope of the arbitrator's authority was not whether underperforming dealers should be replaced

7    with other dealers who GM believes might perform better. To include this determination in the

8    arbitrator's decision improperly expands the scope of the arbitrator's authority and required

9    modification.

10        Where an arbitrator includes in their award a form of relief or remedy not submitted to

11    the arbitrator, the District Court may properly modify the award to exclude any such provision.

12    In the case of *Offshore Marine Towing v. MR23* (2005) 412 F.3d 1254, the plaintiff, Offshore

13    Marine Towing, Inc., sought to enforce a maritime salvage lien against a vessel. The District

14    Court ordered the parties to arbitration. The arbitrator awarded plaintiff its claim under the lien

15    and also awarded plaintiff the recovery of attorneys fees and costs. The owner of the vessel

16    moved to modify or vacate the award of attorneys fees. The District Court modified the

17    arbitration award to exclude the attorneys fees because attorneys fees may not be awarded in

18    an *in rem* action for a salvage lien.

19        The Court of Appeals, Eleventh Circuit, affirmed the finding that

20        "Because attorney's fees may not be awarded in an *in rem*
       action for a salvage lien and the issue of attorney's fees was not
21    submitted to the arbitrator, the district court correctly modified the
       arbitration award in favor of OMT to exclude attorney's fees and
22    costs".

23        *Offshore Marine Towing Inc. (supra)* at page 1258.

24        In the present case, Petitioner Rally respectfully submits that the determination of whether

25    or not the Chevrolet franchise at issue here might do better if the dealer (Rally) was replaced

26    with another dealer (the former Saturn dealer) was not an issue properly before the Arbitrator

27    and this determination exceeds the authority of the Arbitrator. (Section 747(d).)

28        In his Decision, the Arbitrator found that Rally had been a GM dealer for many years, that

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

1   its dealership facilities were adequate and that the business was economically viable.  The

2   Arbitrator determined that after taking into account the LIFO accounting conversion employed

3   in the dealership's operating statements that the dealership's total DPS score was approximately

4   87, not 55 which GM used as justification for terminating the dealership.  As a result, the

5   Arbitrator concluded that the dealership should be reinstated.  The arbitrator also determined

6   that the public needed Chevrolet representation in the Palmdale market.  The Arbitrator's

7   inquiry should have ended there.  Rally, as the covered dealership, should have been reinstated

8   for all GM brands including Chevrolet.

9   **7.   CONCLUSION**

10       Petitioner Rally seeks the remedy of modifying and partially vacating the AAA Award's

11   *dicta* attempting to take the Chevrolet brand from the covered dealership and give it to a non-

12   party, a former Saturn dealer, in the same local Palmdale market.  Rally also requests any and

13   all other equitable relief the Court deems appropriate and necessary, in order to effectuate its

14   decision, including, but not limited to, maintaining the *status quo* until a final determination

15   requiring GM to continue/add back the Chevrolet brand with Rally's existing and reinstated

16   Buick, GMC, and Cadillac GM lines of new motor vehicles.

17

18   Dated:  August 13, 2010        **FERRUZZO & FERRUZZO, LLP**

19

20                      By: _____
                                Gregory J. Ferruzzo
21

22                      **MORGANSTERN, MAC ADAMS & DE VITO
                            CO., LPA**
23

24                      By: _s/ Christopher M. DeVito_
                                Christopher M. DeVito
25

26

27

28

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

R403.2\254920v1

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| RALLY AUTO GROUP, INC. | GENERAL MOTORS, LLC |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| FERRUZZO & FERRUZZO LLP   (949) 608-6900<br>3737 Birch Street, Suite 400<br>Newport Beach, California 92660 (SEE ATTACHED CO-COUNSEL INFORMATION) | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
9 USC Sections 10 and 11 - Petition to Modify/Vacate Arbitration Award

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: **SACV10-01236 DOC (Ex)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | City of Palmdale, County of Los Angeles |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | State of Michigan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  August 13, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

1   **FERRUZZO & FERRUZZO, LLP**
    GREGORY J. FERRUZZO, SBN 165782
2   A Limited Liability Partnership,
    including Professional Corporations
3   3737 Birch Street, Suite 400
    Newport Beach, California 92660
4   Telephone (949) 608-6900
    **MORGANSTERN, MAC ADAMS & DE VITO CO., L.P.A.**
5   CHRISTOPHER M. DE VITO, OH BAR 47118
    623 West Stain Clair Avenue
6   Cleveland, Ohio 44113
    Telephone 9216) 687-1212
7   **Attorneys for Petitioner, Rally Auto Group, Inc.**

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  RALLY AUTO GROUP, INC.            )   Case No.
                                      )
12        Petitioner-Covered Dealership,   )
                                      )   **PLAINTIFF COUNSEL**
13  v.                                )   **INFORMATION**
                                      )
14  GENERAL MOTORS, LLC               )
                                      )
15        Respondent-Covered Manufacturer. )
                                      )
16

17

18

19

20

21

22

23

24

25

26

27

28

                                      1

FERRUZZO & FERRUZZO, LLP
3737 Birch Street, Suite 400
Newport Beach, California 92660
Telephone: (949) 608-6900

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1236 DOC (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
FERRUZZO & FERRUZZO LLP
Gregory J. Ferruzzo, SBN 165782
3737 Birch Street, Suite 400
Newport Beach, California 92660
(949) 608-6900 (SEE ATTACHED CO-COUNSEL INFORMATION)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RALLY AUTO GROUP, INC.

PLAINTIFF(S)

v.

GENERAL MOTORS, LLC

DEFENDANT(S)

CASE NUMBER

**SACV10-01236 DOC (Ex)**

**SUMMONS**

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, FERRUZZO & FERRUZZO LLP * , whose address is 3737 Birch Street, Suite 400, Newport Beach, California 92660 * . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.
(* SEE ATTACHED CO-COUNSEL INFORMATION)

Clerk, U.S. District Court

Dated: AUG 1 3 2010

By: _____ ROLLS ROYCE PASCHAL

Deputy Clerk

*(Seal of the Court)*

1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY

1    **FERRUZZO & FERRUZZO, LLP**
     GREGORY J. FERRUZZO, SBN 165782
2    A Limited Liability Partnership,
     including Professional Corporations
3    3737 Birch Street, Suite 400
     Newport Beach, California 92660
4    Telephone (949) 608-6900
     **MORGANSTERN, MAC ADAMS & DE VITO CO., L.P.A.**
5    CHRISTOPHER M. DE VITO, OH BAR 47118
     623 West Stain Clair Avenue
6    Cleveland, Ohio 44113
     Telephone 9216) 687-1212
7    **Attorneys for Petitioner, Rally Auto Group, Inc.**

8                **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11   RALLY AUTO GROUP, INC.                )    Case No.
                                           )
12            Petitioner-Covered Dealership,    )
                                           )    **PLAINTIFF    COUNSEL**
13   v.                                    )    **INFORMATION**
                                           )
14   GENERAL MOTORS, LLC                   )
                                           )
15            Respondent-Covered Manufacturer.    )
                                           )
16

17

18

19

20

21

22

23

24

25

26

27

28

                                    1

FOR OFFICE USE ONLY