HEARING DATE AND TIME: September 24, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: September 17, 2010 at 4:00 p.m. (Eastern Time)

KING & SPALDING
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330
Gregory R. Oxford

Attorneys for General Motors LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**MOTORS LIQUIDATION COMPANY**, *et al.*, : **09-50026 (REG)**
    **f/k/a General Motors Corp.**, *et al.* : 
: 
            **Debtors.** : **(Jointly Administered)**
: 
------------------------------------------------------------x

**MOTION OF GENERAL MOTORS LLC**
**PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE 363 SALE ORDER**
**<u>AND APPROVED DEFERRED TERMINATION (WIND-DOWN) AGREEMENT</u>**

## TABLE OF CONTENTS

**Page**

Requested Relief .................................................................................................................. 1

Jurisdiction ........................................................................................................................... 4

Factual Background ............................................................................................................. 5

      A.     The Sale of Assets to New GM Pursuant to Section 363 of the Bankruptcy Code ............................................................................................................. 5

      B.     The Wind Down of Rally and GM's Attempt To Establish a New Chevrolet Dealership ........................................................................................... 5

      C.     GM-Rally Arbitration Under the Dealer Arbitration Act ....................................... 6

      D.     Ignoring This Court's Exclusive Jurisdiction, Rally Files the California Action ............................................................................................................ 7

      E.     Rally's Apparent Efforts to Thwart Appointment of a Replacement Dealer .......... 9

The Requested Relief Should Be Approved By the Court ........................................... 10

Notice ................................................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**

Back v. AM Gen. Corp. (In re Chateaugay Corp.),
  213 B.R. 633 (S.D.N.Y. 1997) ................................................................................ 12

Balanoff v. Glazier (In re Steffan),
  97 B.R. 741 (Bankr. N.D.N.Y. 1989) ..................................................................... 14

In re Cont'l Airlines, Inc.,
  236 B.R. 318 (Bankr. D. Del. 1999) ....................................................................... 12

Travelers Indemn. Co. v. Bailey,
  129 S. Ct. 2195 (2009) ............................................................................................ 13

U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),
  68 B.R. 690 (Bankr. S.D.N.Y. 1986) ...................................................................... 12

**STATUTES**

9 U.S.C. § 1 *et seq.* ........................................................................................................ 7

9 U.S.C. § 2 ................................................................................................................... 7

9 U.S.C. § 10 ................................................................................................................. 7

9 U.S.C. § 11 ................................................................................................................. 7

11 U.S.C. § 105 ........................................................................................................ 3, 12

11 U.S.C. § 363 .............................................................................................................. 3

28 U.S.C. § 157(b) ......................................................................................................... 5

28 U.S.C. § 1334 ............................................................................................................ 4

28 U.S.C. § 1408 ............................................................................................................ 5

28 U.S.C. § 1409 ............................................................................................................ 5

Consolidated Appropriations Act 2010, Pub. Law 111-117, 123 Stat. 3034 (2009) ........... 6, 7, 8

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9011 ................................................................................................. 14

i

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC f/k/a General Motors Company ("**New GM**") respectfully represents:

**Requested Relief**

1. After notice and a comprehensive, three day evidentiary hearing, on July 5, 2009, this Court entered that certain Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief (the "**363 Sale Order**"). The 363 Sale Order, *inter alia*, authorized and approved that certain Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (the "**MSPA**"), by and among General Motors Corporation, n/k/a Motors Liquidation Company and certain of its affiliates (collectively, the "**Debtor**") and General Motors LLC f/n/a General Motors Company, f/k/a NGMCO, Inc. ("**New GM**"). Pursuant to the MSPA and the 363 Sale Order, New GM, on July 10, 2009, purchased substantially all of the assets of the Debtor free and clear of the Debtor's liabilities, except as expressly assumed by New GM under the MSPA.

2. As part of the transactions approved by the 363 Sale Order, the Debtor entered into and assigned to New GM certain Wind-Down and other Deferred Termination Agreements between the Debtor and certain of its authorized new motor vehicle dealers. The Debtor offered these agreements to dealers as an alternative to outright rejection of their General Motors Dealer Sales and Service Agreements ("**Dealer Agreements**") under section 365 of the Bankruptcy Code. These agreements provided, among other things, that in exchange for certain

payments and other consideration, the dealers' Dealer Agreements would terminate no later than October 31, 2010.

3. This Court, over objection by the Greater New York Automobile Dealers Association, approved the Wind-Down and other Deferred Termination Agreements and specifically found in Paragraph 31 of the 363 Sale Order that these agreement "represent[ed] valid and binding contracts, enforceable in accordance with their terms." This Court further retained exclusive jurisdiction to enforce and implement these agreements. As stated in paragraph 71 of the 363 Sale Order:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the MPA [MSPA], … and each of the agreements executed in connection therewith, including the Deferred Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to … (f) resolve any disputes with respect to or concerning the Deferred Termination Agreements.

In Recital JJ of the Sale Approval Order, the term "Deferred Termination Agreements" is defined to include "Wind-Down Agreements." Consistent with these provisions, the form of Wind-Down Agreement approved by the Court provides as follows in section 13:

> <u>Continuing Jurisdiction</u>. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain, full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 13 shall survive the termination of this Agreement.

Thus, to the extent that a Dealer asserts any claim that it is not required to comply with its obligations under the Wind-Down Agreement, including but not limited to sections 2(a), 5(d) and 7(a) of the Wind-Down Agreement, it must assert that claim in this Court, and not elsewhere.

4. By this Motion, as described more particularly below, New GM seeks to enforce the Wind-Down Agreement against Rally Auto Group, Inc. ("**Rally**"), a wind-down dealer located in Palmdale, California, which has asserted in an action filed in the United States District Court for the Central District of California, Southern Division (the "**California Action**"), that it is not required to comply with its obligation under Section 2(a) of its Wind-Down Agreement to terminate its Chevrolet Dealer Agreement by no later than October 31, 2010.  Rally further has taken certain steps in violation of section 7(a) of the Wind-Down Agreement, including instigation of litigation by the City of Palmdale, to prevent, delay and interfere with New GM's attempt to establish a new Chevrolet dealership in the Antelope Valley area.  This location is very important to New GM.  It includes the cities of Palmdale and Lancaster, about 35 miles north of Los Angeles, and has more than 400,000 residents.

5. Because Rally is refusing to abide by the 363 Sale Order and the Court-approved Wind-Down Agreement, New GM requests the entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code: (a) enforcing the 363 Sale Order and the terms of the Wind-Down Agreement, including but not limited to sections 2(a) (termination of the Chevrolet Dealer Agreement by October 31, 2010), 5(d) (covenant not to sue New GM), 7(a) (no protest by Rally regarding establishment of new dealer) and 13 (exclusive jurisdiction of the Bankruptcy Court) thereof, and directing Rally to specifically perform its obligations thereunder pursuant to, *inter alia*, sections 5(d) and 17 thereof; (b) directing Rally and all persons acting in concert with it to cease and desist (1) from further prosecuting, or otherwise pursuing the claims asserted in, the California Action against New GM, (2) from attempting to prevent, delay or interfere with New GM's establishment of a new Chevrolet dealership in the area previously served by Rally and (3) from attempting to aid or assist the City of Palmdale and others in attempting to prevent,

3

delay or interfere with New GM's establishment of the new dealership; (c) directing Rally to dismiss the California Action with prejudice forthwith; and (d) granting such other relief as may be mandated by, among other things, section 5(e) of the Wind-Down Agreement (the indemnification provision).

## Jurisdiction

6. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, Paragraph 71 of the 363 Sale Order, and Article IX, Section 9.13 of the MSPA, as well as section 13 of the Wind-Down Agreement approved by the Court. Specifically, the 363 Sale Order states that:

> This Court retains *exclusive jurisdiction to enforce and implement the terms and provisions of this Order*, the M[S]PA, . . . and each of the agreements executed in connection therewith, including the Deferred Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to . . . (f) *resolve any disputes with respect to or concerning the Deferred Termination Agreements.*

363 Sale Order, ¶ 71 (emphasis added).

7. Section 9.13 of the MSPA provides:

*Section 9.13 Venue and Retention of Jurisdiction.* Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court for any litigation arising out of or in connection with this Agreement and the transactions contemplated hereby (and agrees not to commence any litigation relating thereto except in the Bankruptcy Court, other than actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any such court as described herein) . . . .

8. Section 13 of the Wind-Down Agreement provides:

<u>Continuing Jurisdiction</u>. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain, full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and

4

any other matter related thereto.  The terms of this Section 13 shall
survive the termination of this Agreement.

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Factual Background**

**A.    The Sale of Assets to New GM Pursuant
to Section 363 of the Bankruptcy Code**

10. On June 26, 2009, the Debtor entered into the MSPA with New GM.  On July 5, 2009, the Court entered the 363 Sale Order, and on July 10, 2009, the Debtor consummated the sale of substantially all of its assets pursuant thereto to New GM (the "**363 Sale**").

11. Paragraph 31 of the 363 Sale Order specifically approved the form of Wind-Down Agreement that Rally executed and now is attempting to repudiate in the California Action, and found that it is valid and enforceable in accordance with its terms.

**B.    The Wind Down of Rally and GM's
Attempt To Establish a New Chevrolet Dealership**

12. At the time the Debtor filed for bankruptcy, Rally operated authorized Chevrolet, Buick, Cadillac, GMC Truck and Pontiac dealerships at two dealership facilities located in the Antelope Valley Auto Mall in Palmdale, California pursuant to separate General Motors Dealer Sales and Service Agreements ("**Rally Dealer Agreements**") for these vehicle lines.  Rally's new vehicle sales performance had been exceedingly poor for more than ten years, and the Debtor accordingly decided not to retain Rally as an authorized GM dealership.  The Debtor as an alternative to outright rejection of the various Rally Dealer Agreements offered Rally a Wind-Down Agreement which Rally accepted, executed and returned to the Debtor in June 2009.  Under this agreement, a true and correct copy of which is attached hereto as Exhibit

5

A, Rally agreed among other things to terminate its Dealer Agreements for the surviving GM vehicle lines (Chevrolet, Buick, Cadillac and GMC) no later than October 31, 2010. The Rally Dealer Agreements and the Wind-Down Agreement between the Debtor and Rally were assigned to New GM as part of the 363 Sale.

13. Anticipating the termination of the Rally Dealer Agreements, New GM in late 2009 decided to appoint a new Chevrolet dealer in the Antelope Valley and selected a candidate, Mr. Juan Lou Gonzales, to establish the new dealership. Mr. Gonzales had operated a very successful Saturn dealership in the same Auto Mall as Rally and was losing his dealership as the result of New GM's discontinuation of the Saturn line of vehicles.

C.  **GM-Rally Arbitration Under the Dealer Arbitration Act**

14. In December 2009, after New GM had selected Mr. Gonzales to establish the new Chevrolet dealership, Congress passed and the President signed into law the Consolidated Appropriations Act 2010, Pub. Law 111-117, 123 Stat. 3034 (2009), which in section 747 (the "**Dealer Arbitration Act**") gave "wind-down" dealers such as Rally the opportunity to seek reinstatement to the GM dealer network through binding arbitration which was to be conducted and completed no later than July 14, 2010. For the Court's convenience, a copy of the Dealer Arbitration Act is attached hereto as Exhibit B.

15. Rally filed a timely demand for arbitration in accordance with the provisions of the Dealer Arbitration Act and an arbitration hearing was held on May 13, 14 and 17, 2010 before arbitrator Richard Mainland. On June 8, 2010, the arbitrator issued an award directing New GM to reinstate Rally's Buick, Cadillac and GMC Dealer Agreements but ordering that Rally's Chevrolet Dealer Agreement not be reinstated. A true and correct copy of the arbitrator's award is attached hereto as Exhibit C. As a result of this award, the Wind-Down Agreement between New GM and Rally remains in effect as to Rally's Chevrolet Dealer

6

Agreement and, pursuant to section 2(a) of the Wind-Down Agreement, Rally's Chevrolet Dealer Agreement must terminate no later than October 31, 2010.

**D.    Ignoring This Court's Exclusive Jurisdiction,
       Rally Files the California Action**

16.    As noted above, the Dealer Arbitration Act provided for binding arbitration and the completion of all proceedings under the Dealer Arbitration Act no later than July 14, 2010.  There is no statutory authority either in the Dealer Arbitration Act or elsewhere in federal law for judicial review of awards issued under the Dealer Arbitration Act.  This is completely consistent with the manifest intent of Congress that the arbitration proceedings be binding and that they be completed within a very short period of time, *i.e.*, that awards not be subject to drawn out court proceedings and appeals.  In contrast, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("**FAA**"), does contain provisions permitting very limited judicial review of awards issued in contractual arbitration proceedings.  *See* 9 U.S.C. §§ 10, 11.  But the Dealer Arbitration Act does not refer to the FAA at all, let alone incorporate its provisions authorizing limited judicial review.  The FAA, by its terms, has no application to this matter.  It governs only *contractual* arbitration.  *See* 9 U.S.C. § 2 ("A *written provision in ... a contract* evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…, or the refusal to perform the whole or any part thereof, *or an agreement in writing to submit to arbitration* an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract") (emphasis added).  Thus, the provisions of the FAA which authorize limited judicial review of arbitration awards (9 U.S.C. §§ 10 and 11) *only* apply to the contractual arbitration awards described in FAA section 2.  Those provisions do not apply to arbitration under the Dealer Arbitration Act because the obligation of

7

"covered manufacturers" to arbitrate with "covered dealerships" did not have its source in any contract or written agreement but instead was imposed by Congress.

17. Despite the lack of any provision for judicial review of arbitration awards issued under the Dealer Arbitration Act, and despite Paragraph 71 of the 363 Sale Order and section 13 of the Wind-Down Agreement which give this Court exclusive jurisdiction of any dispute concerning the Wind-Down Agreement, Rally, on August 13, 2010, filed the California Action seeking to vacate or modify the arbitration award and prevent termination of its Chevrolet Dealer Agreement as required by paragraph 2(a) of the Wind-Down Agreement. A true and correct copy of Rally's "Petition To Modify or, Alternatively, Vacate Arbitration Award" (the "**Petition**") in the California Action is attached hereto as Exhibit D.

18. Because federal law does not authorize judicial review of arbitration awards issued under the Dealer Arbitration Act, the California Action in reality is nothing more than an attempt to nullify, and constitutes an improper collateral attack upon, the provisions of the 363 Sale Order that approved the Wind-Down Agreement. Rally should, therefore, be required to dismiss the California Action, with prejudice.

19. Alternatively, even if judicial review of the arbitration award is somehow available, Rally may not "end run" around this Court; such judicial review must be done by this Court. Pursuant to the 363 Sale Order and the Wind-Down Agreement, this Court has "retained *exclusive* jurisdiction" to enforce and implement the terms of the 363 Sale Order and the Wind-Down Agreement, and resolve any disputes concerning these Court-approved documents. 363 Sale Order, ¶ 71 (emphasis added); *see* Wind-Down Agreement, § 13.

8

### E. Rally's Apparent Efforts to Thwart Appointment of a Replacement Dealer

20. Mr. Gonzales' original proposal to establish a new Chevrolet dealership in Palmdale, California provided that he would utilize the existing Saturn facility, augmented through the acquisition of adjacent vacant land owned by the City of Palmdale. The City of Palmdale refused to sell him the vacant lot in the Auto Mall which he planned to use for construction of the permanent Chevrolet dealership on acceptable terms and refused to allow him to use the service bays at a local Nissan dealership on a temporary basis during construction. Instead, the City encouraged Mr. Gonzales to negotiate with Larry Mayle, the owner and dealer-operator of Rally, to lease one of Rally's two dealership facilities, which will soon be vacant. Mr. Gonzales, however, was unable to negotiate a satisfactory lease with Mr. Mayle, who demanded excessive rent.

21. In the meantime, Mr. Mayle and his counsel repeatedly requested New GM and its counsel to rescind the Wind-Down Agreement and reinstate Rally's Chevrolet Dealer Agreement, arguing among other things that Mr. Gonzales did not have the money or dealership site to successfully establish the new Chevrolet dealership. Eventually Mr. Gonzales reached an agreement with the City of Lancaster, a larger municipality adjacent to Palmdale, to establish the new Chevrolet dealership in the City of Lancaster utilizing a vacant former Toyota dealership. Mr. Mayle promptly communicated with New GM, asking that it reject the Gonzales proposal and reinstate Rally's Chevrolet Dealer Agreement on the grounds, *inter alia*, that implementation of the plan to locate the new Chevrolet Dealership would result in litigation between the City of Palmdale and the City of Lancaster.

22. As "predicted" by Mr. Mayle, after New GM declined to abandon the Gonzales proposal for the new Chevrolet dealership, the City of Palmdale, supported by an

9

affidavit from Mr. Mayle, filed suit against the City of Lancaster in the Superior Court of the State of California for the County of Los Angeles claiming that the terms of the agreement between Lancaster and Mr. Gonzales violated a state law that prevents cities from engaging in "bidding wars" to lure automobile dealers and other large sales tax generating businesses to "relocate" from one city to another. According to Palmdale, Mr. Gonzales' closing of his defunct Saturn dealership in Palmdale and establishment of a brand new Chevrolet dealership in Lancaster constituted a "relocation" of his Saturn dealership in violation of this state law. A copy of the City of Palmdale's Complaint is attached as Exhibit E.

        23.    Although New GM does **not** contend that this Court has jurisdiction over the claims asserted by the City of Palmdale, on information and belief those claims were asserted at the instigation of Rally for the purpose of avoiding its obligations under the Wind-Down Agreement. Such actions are in direct violation of section 7 of the Wind-Down Agreement.

## The Requested Relief Should Be Approved By the Court

        24.    Rally's California Action and efforts to thwart appointment of Mr. Gonzales as Dealer-Operator of a new Chevrolet dealership in the Antelope Valley directly violate and contravene the 363 Sale Order, as well as sections 2(a), 5(d), 7(a) and 13 (the exclusive jurisdiction provision) of the Wind-Down Agreement. Specifically, section 2(a) of the Wind-Down Agreement provides in relevant part:

> 2. Termination of Dealer Agreements. Subject to the terms of Section 1 above:
>
> (a) Dealer hereby covenants and agrees to conduct the Subject Dealership Operations until the effective date of termination of the Dealer Agreements, which shall not occur earlier than January 1, 2010 or later than October 31, 2010, under and in accordance with the terms of the Dealer Agreements, as supplemented by the terms of this Agreement. Accordingly, Dealer hereby terminates the Dealer Agreements by written agreement in accordance with Section 14.2 thereof, such termination to be effective on October

31, 2010. Notwithstanding the foregoing, either party may, at its option, elect to cause the effective date of termination of the Dealer Agreements to occur (if not terminated earlier as provided herein) on any date after December 31, 2009, and prior to October 31, 2010, upon thirty (30) days written notice to the other party. In addition, and notwithstanding the foregoing, if Dealer has sold of all of its new Motor Vehicle inventory on or before December 31, 2009 and wishes to terminate the Dealer Agreements prior to January 1,2010, Dealer may request that OM or the 363 Acquirer, as applicable, approve such termination and, absent other limiting circumstances, OM or the 363 Acquirer, as applicable, shall not unreasonably withhold its consent to such termination request, subject to the terms of this Agreement.

25. Section 5(d) of the Wind-Down Agreement provides in relevant part:

Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreements or this Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. As a result of the foregoing, any such breach shall absolutely entitle GM or the 363 Acquirer, as applicable, to an immediate and permanent injunction to be issued by any court of competent jurisdiction, precluding Dealer from contesting GM's or the 363 Acquirer's, as applicable, application for injunctive relief and prohibiting any further act by Dealer in violation of this Section 7. In addition, GM or the 363 Acquirer, as applicable, shall have all other equitable rights in connection with a breach of this Section 7 by Dealer, including, without limitation, the right to specific performance.

26. Moreover, section 7(a) of the Wind-Down Agreement provides that Rally

covenants and agrees that it will not commence, maintain, or prosecute, or assist in the prosecution of any action … whether federal, state, or otherwise, to challenge, protest, prevent, impede, or delay, directly or indirectly, any establishment or relocation whatsoever of motor vehicle dealerships for any of the [surviving GM] Model Lines.

11

27. Under these circumstances, the Court should enforce the terms of the 363 Sale Order by ordering Rally to specifically perform all of its obligations under the Wind-Down Agreement (including, but not limited to sections 2(a), 5(d) and 7(a) thereof), and direct Rally to promptly dismiss the California Action with prejudice, cease and desist from all efforts to assert the claims attempted to be asserted in the California Action, and cease and desist from taking any action or attempting in any way to avoid the terms of the Wind-Down Agreement, including any effort to prevent, delay or interfere with establishment of the new Chevrolet dealership, or to aid or assist the City of Palmdale or anyone else in attempting to prevent, delay or interfere with establishment of the new Chevrolet dealership, in Lancaster or elsewhere.

28. Bankruptcy Courts have the inherent authority to enforce their orders: "[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order." U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.), 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) (Buschman, J.). Section 105 of the Bankruptcy Code also provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders." Back v. AM Gen. Corp. (In re Chateaugay Corp.), 213 B.R. 633, 640 (S.D.N.Y. 1997) (Lifland, J.); 11 U.S.C. § 105(a).

29. More specifically, this Court retains subject matter jurisdiction to enforce the 363 Sale Order, as it "is axiomatic that a court possesses the inherent authority to enforce its own orders" and agreements approved by the court. In re Cont'l Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently,

12

held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order."), *aff'd*, No. 09-932, Adv. 99-47, Civ. A. 99-795-SLR, 2000 WL 1425751 (D. Del. Sep. 12, 2000), *aff'd*, 279 F.3d 226 (3d Cir. 2002), *cert. denied*, 537 U.S. 944 (2002); Travelers Indemn. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) ("as the Second Circuit recognized, . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."), *on remand to*, ___F.3d ___, 2010 WL 1007932 (2d Cir. March 22, 2010).

30. Additionally, pursuant to Paragraph 71 of the 363 Sale Order, Section 9.13 of the MSPA, and section 13 of the Wind-Down Agreement, this Court retained exclusive jurisdiction "to enforce and implement the terms and provisions of this [363 Sale] Order, the M[S]PA, … and … the Deferred Termination Agreements." *See* 363 Sale Order ¶ 71; MSPA Art. IX, § 9.13.

31. As plainly demonstrated above, the MSPA and 363 Sale Order specifically shield New GM from any claim that its Wind-Down Agreement with Rally is not valid and enforceable according to its terms. Under these incontrovertible facts and circumstances, the relief requested in this Motion clearly is appropriate.

32. New GM has suffered harm by reason of the California Action. New GM has been forced to incur unwarranted costs and expenses and has had to deal with the distraction and imposition of baseless litigation. In view of the clear provisions of the 363 Sale Order and Court-approved Wind-Down Agreement, New GM should not be under any obligation to defend itself and its rights in the Central District of California. Rather, this Court should enforce the terms and provisions of the 363 Sale Order and Court-approved Wind-Down Agreement, and direct Rally to dismiss the California Action against New GM, with prejudice, forthwith.

33. Even aside from this indisputable harm, settled law holds that when a party unilaterally violates a Bankruptcy Court order, that violation, standing alone, constitutes the only harm necessary for a new order specifically enforcing the prior order. *See, e.g.*, Balanoff v. Glazier (In re Steffan), 97 B.R. 741, 746 (Bankr. N.D.N.Y. 1989) (Gerling, J.) (noting that "the usual equitable grounds for relief, such as irreparable damage, need not be shown" in injunctions in bankruptcy cases) (quotation omitted).

34. As noted above, prior to filing this Motion, New GM requested in writing that Rally comply with this Court's 363 Sale Order and dismiss the California Action. A copy of New GM's counsel's letter making this request is attached hereto as Exhibit F. In a letter from its counsel, Rally refused to do so and even threatened to seek Rule 11 sanctions based on GM counsel's stated intent to seek enforcement of the 363 Sale Order and Wind-Down Agreement. A copy of Rally's counsel's letter is attached hereto as Exhibit G. Accordingly, as provided in section 5(e) of the Wind-Down Agreement, New GM is entitled to indemnification from Rally for its costs and reasonable attorney's fees based on Rally's knowing violation of the 363 Sale Order and Court-approved Wind-Down Agreement, including the full amount of all costs and fees incurred in connection with the filing of this Motion and continued defense of the California Action.

35. New GM proposes to establish its damages at a separate inquest hearing that New GM will request.

## Notice

36. Notice of this Motion has been provided (a) to counsel for Rally and (b) parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management

Procedures, dated August 24, 2010 [Docket No. 6750]. New GM submits that such notice is sufficient and no other or further notice need be provided.

37. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as Exhibit H, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem proper.

Dated: September 10, 2010
New York, New York

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Gregory R. Oxford
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330

Attorneys for General Motors LLC
f/k/a General Motors Company