**Return Date: September 17, 2010, 9:45 a.m.**

Ronald G. Blum
Kimo S. Peluso
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
Telephone: (212) 790-4500
Facsimile: (212) 790-4545

*Attorneys for Transferee The Seaport Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al.,<br>    f/k/a General Motors Corp., et al., | Case No. 09-50026 (REG) |
| Debtor. | (Jointly Administered) |

**THE SEAPORT GROUP LLC'S RESPONSE TO**
**OBJECTION TO NOTICE OF TRANSFER OF CLAIM NO. 70347**

The Seaport Group LLC ("Seaport"), through its undersigned counsel, submits this Response to the Objection by Dale Earnhardt, Inc. ("DEI") to the Notice of Transfer of Claim No. 70347.

## PRELIMINARY STATEMENT

This contested matter reflects the second time that DEI has attempted to back out of a deal to sell its bankruptcy claim to Seaport.  DEI was the record owner of a claim for roughly $3,000,000 in this bankruptcy action.  DEI contracted to sell the claim to Seaport in late 2009, but DEI reneged on that deal, prompting Seaport to file suit in federal district court.  In July 2010, Seaport and DEI were able to settle the lawsuit through a written settlement agreement that assigned DEI's bankruptcy claim in full to Seaport. There is no question that the written, fully-executed settlement and assignment agreement was valid and binding or that the assignment was effective on signing.  Seaport filed its notice of transfer on July 20, 2010.  DEI now asserts, however, that it had the right to unilaterally cancel that assignment, and it filed the instant objection on August 10, 2010. DEI's position rests on a plain misreading of the assignment agreement, and this Court should reject DEI's objection.

The written assignment of DEI's claim to Seaport provides termination rights to DEI, which are expressly conditional.  DEI could terminate the assignment _only_ if a particular third-party broker-dealer, Deutsche Bank AG, filed a claim against DEI "objecting to the transfer" of the bankruptcy claim to Seaport.  Specifically, Section 4 of the agreement, which relates to the 20-day period after Seaport filed a notice of transfer with this Court, provides as follows:

> [I]n the event during the 20 Day Period Deutsche Bank does file or
> serve a claim against Assignor ***objecting to the transfer***, then
> Assignor may elect in a written notice to Assignee within two (2)

1

>calendar days after such 20 Day Period to terminate and declare
>this Assignment and Settlement Agreement null and void . . . .

(emphasis added.)  Deutsche Bank did not serve or file any objection to the transfer,

within that 20-day period or otherwise.  Accordingly, the express condition for DEI's

termination rights never occurred, and DEI could not terminate the assignment.

Nonetheless, DEI has purported to terminate the assignment because Deutsche

Bank brought a civil suit against DEI solely for money damages.  The Deutsche Bank suit

is not a claim "objecting to the transfer," as expressly required to trigger DEI's

termination rights. The Deutsche Bank suit does not challenge Seaport's ownership of the

claim, does not ask for specific performance or an injunction against the Seaport transfer,

and does not assert that Deutsche Bank has any title or ownership interest in the claim.

Rather, Deutsche Bank merely seeks compensation for DEI's alleged broken promises to

sell Deutsche Bank the same bankruptcy claim that DEI had previously sold Seaport.

DEI's objection has no merit and the transfer should be allowed.

DEI's position here disregards the plain language of the assignment agreement

and is directly contrary to the parties' expressed intent.  Its interpretation would render

the phrase "objecting to the transfer" meaningless.  If the parties had intended to

condition DEI's Section 4 termination rights on *any* Deutsche Bank suit regarding the

claim, they could have easily done so.  Indeed, an unrelated section of the agreement

(Section 7) contains a defined term that clearly covers such monetary claims by Deutsche

Bank.  But the parties decided not to use that defined term or broader language to

describe the conditions on DEI's Section 4 termination rights.  Seaport, moreover, would

never have agreed that DEI could cancel the assignment merely because of a lost profits

lawsuit.  Deutsche Bank's suit has no legal or logical impact on DEI's already-effective

assignment of the bankruptcy claim to Seaport or on this Court's substitution of Seaport

as the claim owner.  There are no contested issues of fact, and DEI's position is plainly

wrong under the parties' contract and as a matter of law.  Because DEI had no right to

terminate the assignment, DEI's objection is legally meritless and should be rejected.

## FACTUAL BACKGROUND[1]

The relevant facts are not in dispute.  Rather, DEI's objection (Dkt. No. 6377, the

"Objection") and this Response exclusively concern facts established by a paper record,

primarily the executed assignment agreement and Deutsche Bank's federal court filing.

### A.    Seaport Sues DEI for Reneging on
an Agreement to Assign the Claim

Seaport is a limited liability company based in New York, New York and a

registered broker-dealer.  Among other things, Seaport buys and sells trade claims,

including creditor claims pending in bankruptcy court.  Seaport has purchased, sold and

brokered the sale of numerous such claims, and it is well-known among the companies

that handle such transactions.  (Peluso Decl. ¶ 3 & Ex. 1)

DEI is a corporation based in Mooresville, North Carolina.  DEI is a part owner of

the professional NASCAR racing team Earnhardt Ganassi Racing and is also in the

business of selling products related to, and licensing the name and likeness of, late

professional NASCAR racer, Dale Earnhardt.  (Peluso Decl. ¶ 4 & Exs. 1, 2)

DEI filed a claim in this bankruptcy action for a value of $3,252,706.80, which

claim was later amended to a value of 3,031,180.00 (the "Claim").  (Peluso Decl. Ex. 4)

In November 2009, Seaport and DEI entered into a written confirmation for DEI to sell

the Claim to Seaport.   Thereafter, DEI refused to close.  Seaport then filed suit against

---

[1] The Factual Statement is based on the exhibits to the accompanying Declaration of Kimo S. Peluso
("Peluso Decl."), dated September 10, 2010.

3

DEI in an action captioned, *The Seaport Group LLC v. Dale Earnhardt, Inc.*, No. 10-cv-1599 (DAB) (S.D.N.Y. filed Feb. 25, 2010) (the "Seaport Action").[2]

Seaport's complaint alleges that on November 18, 2009, DEI and Seaport entered into a Trade Claim Confirmation – a written agreement to sell to Seaport the bankruptcy Claim, with a formal assignment to be executed thereafter.  (Peluso Decl. ¶ 5 & Ex. 1, Seaport Complaint at Ex. A)  Seaport alleged that DEI, however, attempted to renege on the sale and refused to execute a formal assignment, as required by the parties' Trade Claim Confirmation.  In its complaint, Seaport sought declaratory relief, specific performance to compel DEI to assign the Claim to Seaport, and in the alternative, compensatory damages.  (*Id.*)

> ### B.    Settling the Dispute, DEI Assigns the Claim to Seaport and Seaport Files the Notice of Transfer

After it filed its lawsuit, Seaport was able to reach a settlement with DEI.  The parties entered into an Assignment of Claim and Settlement Agreement, effective July 16, 2010 (the "Assignment Agreement"), to "resolve their dispute and to fully and finally settle the [Seaport] Action."  (Peluso Decl. Ex. 3, Assignment Agreement at p.1)  The Assignment Agreement is governed by New York law.  (*Id.* at § 15)  On terms consistent with the parties' original Trade Claim Confirmation, the Assignment Agreement assigned to Seaport "all of [DEI's] right, title and interest in and to" the Claim, effective "as of the date of this Assignment."  (*Id.* § 1)  Thus, the Claim was transferred to Seaport as of July 16, 2010.

---

[2] Seaport's allegations in the Seaport Action are summarized here for background purposes only.  Judge Deborah A. Batts, presiding over the Seaport Action, stayed that case to allow Court's determination of DEI's Objection, which may moot the pending lawsuit. (Peluso Decl. ¶ 25 & Ex. 14, Order dated Aug. 27, 2010)

In addition to assigning the Claim to Seaport as of July 16, 2010, the Assignment Agreement provided for Seaport to be substituted as the Claim owner before this Court and on the debtor's books. The Assignment Agreement required Seaport to file a Notice of Transfer in this Court reflecting the Assignment; and required Seaport to deliver its initial payment for the Claim following a 20-day waiting period thereafter. (Peluso Decl. Ex. 3, Assignment Agreement § 4) In the Evidence of Transfer of Claim attached to the Assignment Agreement, DEI expressly agreed to "waive[] any objection to the transfer of the Assigned Claim to Assignee on the books and records of the Debtor . . . ." (Peluso Decl. Ex. 3, Assignment Agreement at Ex. A) The Assignment Agreement also states that "[DEI] stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and [Seaport] herein as the valid owner of the Assigned Claim." (*Id.*, Assignment Agreement § 17)

The Assignment Agreement provided both parties with conditional termination rights if, after the Notice of Transfer was filed, Deutsche Bank or its affiliates (collectively, "Deutsche Bank") objected to the transfer of the Claim to Seaport. DEI's termination rights would be triggered only by Deutsche Bank specifically filing a claim against DEI "objecting to the transfer" and doing so within a specific time period:

> If during the 20 Day Period [after the Notice of Transfer appears on the docket], Deutsche Bank, AG or any of its affiliates, assignees or designees (collectively, "Deutsche Bank") files or serves a notice with the Bankruptcy Court objecting to the transfer, then Assignee may elect in a written notice to Assignor within two (2) calendar days after such 20 Day Period to not pay the Purchase Price to Assignor and to terminate and declare this Assignment and Settlement Agreement null and void. *Further, in the event during the 20 Day Period Deutsche Bank does file or serve a claim against Assignor **objecting to the transfer**, then Assignor may elect in a written notice to Assignee within two (2) calendar days after such 20 Day Period to terminate and declare this Assignment and*

5

> *Settlement Agreement null and void,* in which event Assignee shall
> be relieved of its obligation to pay the Purchase Price to Assignor
> hereunder.

(*Id.* § 4 (italics and emphasis added))

Additionally, Section 7 of the Assignment Agreement also addresses the

possibility that Deutsche Bank might assert that DEI had promised to sell it the same

Claim.  Section 7 has nothing to do with DEI's termination rights under Section 4.

Rather, Section 7 is a carve-out to representations that DEI owned the Claim "free and

clear of all liens [or] claims . . . of any kind," and that DEI "has not previously sold or

assigned the Assigned Claim." (*Id.* § 5(iii), (v))  Notably, the language used in Section 7

is not limited by the "objecting to the transfer" phrase found in Section 4.  Instead,

Section 7 disclaims that Deutsche Bank might commence "*any* legal proceedings or

claims" (emphasis added) asserting that DEI had previously agreed to sell it the Claim:

> Notwithstanding the foregoing, none of the representations and
> warranties contained in this Sections 5 and 6 shall be deemed to
> have been breached as a result of (i) *the existence or threat of any*
> *legal proceedings or claims by Deutsche Bank, its designees,*
> *assignees, transferees, or affiliates, alleging that a binding*
> *agreement in respect of the sale of all or any portion of the Claim*
> *exists or existed between Assignor and any such party, making any*
> *other similar allegation*, (ii) any testimony presented or evidence
> associated with any such proceedings, claims, or allegations,
> and/or (iii) an order or finding by any court that such binding
> agreement existed (collectively, "Third Party Broker Claims").

(Peluso Decl. Ex. 3, Assignment Agreement § 7(a) (emphasis added))

In accordance with the Assignment Agreement, Seaport filed the Notice of

Transfer, executed in relevant part by DEI, in this Court on July 20, 2010.  (Dkt. No.

6377; Peluso Decl. Ex. 5)  As set forth in the Evidence of Transfer of Claim attached to

the Notice of Transfer filed with this Court, DEI expressly "waive[d] any objection to the

transfer of the Assigned Claim to Assignee on the books and records of the Debtor . . . ."

6

(Peluso Decl. Ex. 3, Assignment Agreement at Ex. A; Peluso Decl. Ex. 5, Notice of Transfer at p.2)

Under Section 4 of the Assignment Agreement, the 20-Day Period for Deutsche Bank to file or serve a claim or notice "objecting to the transfer" expired on August 9, 2010.  During that period, Deutsche Bank did not file or serve any claim against DEI objecting to the transfer, or seek to prevent or interfere in any manner with the transfer of the Claim.  (Peluso Decl. ¶ 14)  Rather, on August 5, 2010, Deutsche Bank filed a complaint in federal court against DEI seeking only monetary damages.  (*Id.* Ex. 6, Deutsche Bank Cplt.)  As discussed below, that lawsuit mentions the notice of transfer that Seaport filed in this court, but it does not object to that transfer.  Deutsche Bank did not file the action as "related" to Seaport's lawsuit.  Deutsche Bank's lawsuit is the subject of DEI's present Objection.

### C.      Deutsche Bank Sues DEI for Money Damages

The Deutsche Bank lawsuit, captioned *Deutsche Bank Securities Inc. v. Dale Earnhardt, Inc.*, No. 10-cv-5910 (PGG) (S.D.N.Y. filed Aug. 5, 2010) (the "Deutsche Bank Action"), asserted a breach of contract claim for DEI's failure to assign the Claim to Deutsche Bank.  (Peluso Decl. Ex. 6, Deutsche Bank Cplt.) The Deutsche Bank Action does not seek title to the Claim, and does not pray for specific performance or injunctive relief.  Deutsche Bank's complaint mentions the July 2010 Seaport Notice of Transfer as part of the factual story surrounding the Claim, but it does not allege that the assignment to Seaport is invalid and does not object to the Notice of Transfer.  Indeed, the Deutsch Bank Action alleges a breach that has been ongoing since January 2010.

The gist of the Deutsche Bank Action is that DEI breached an agreement to Deutsche Bank regarding the Claim, and caused Deutsche Bank lost profits.  The

complaint alleges that DEI signed a written "Confirmation" on January 18, 2010 for DEI

to sell the Claim to Deutsche Bank, which Confirmation required the parties to close the

transaction through a "mutually agreeable Assignment of Claim" and to do so "[a]s soon

as practicable." (Peluso Decl. Ex. 6, Deutsche Bank Cplt. at ¶¶ 9, 13 & Ex. B) Deutsche

Bank alleges that DEI "materially breached the terms of the contract by failing to close

the transaction 'as soon as practicable' and failing to deliver the Claim to Deutsche Bank,

as promised in the Confirmation." (*Id.* ¶ 20) Deutsche Bank's compliant also asserts a

second count, a parallel claim for breach of the implied covenant of good faith and fair

dealing. (*Id.* ¶¶ 24-31) Deutsche Bank asserts that DEI's breach cost it the opportunity

to sell the Claim at a profit or to collect distributions from the debtor. (*Id.* ¶ 16) Thus,

Deutsche Bank's suit is an action for money damages based on DEI's failure to assign the

Claim to Deutsche Bank "as soon as practicable" after signing the January 2010

agreement. The Deutsche Bank Action does not object to the July 2010 Assignment

Agreement with Seaport or to the publicly filed Notice of Transfer. Notably, Deutsche

Bank has not in any other way availed itself of the opportunity to object to the publicly

filed Notice of Transfer.

### D.    DEI Purports to Exercise its "Termination Rights" Contrary to the Assignment Agreement's Terms

DEI notified Seaport's outside counsel of the Deutsche Bank Action by letter

dated Friday, August 6, 2010, and threatened to exercise its termination rights under

Section 4 of the Assignment Agreement. (Peluso Decl. ¶ 18 and Ex. 7) Thus, DEI

appeared to take the position that the Deutsche Bank complaint, contrary to its plain

language, was a claim "objecting to the transfer" under Section 4 of the Assignment

Agreement. Seaport responded by letter on Tuesday, August 10, 2010, disagreeing that

DEI had any right to terminate the Assignment Agreement.[3]  (Peluso Decl. ¶ 19 & Ex. 8)

DEI nonetheless filed the instant Objection on August 10, 2010 and sent a letter to

Seaport's outside counsel purporting to terminate the Assignment Agreement on August

18, 2010.  (*Id.* ¶ 20 & Ex. 10)

### E.    The District Court Denies DEI's Motion to Consolidate and Stays the Seaport Action, Pending Determination of DEI's Objection by This Court

On August 17, 2010, DEI wrote to District Judge Deborah A. Batts, who presides

over the Seaport Action, and to District Judge Paul G. Gardephe, who presides over the

Deutsche Bank Action, and requested that the two actions be consolidated.  (Peluso Decl.

Ex. 11)  Deutsche and Seaport opposed that request.  (*Id.* ¶ 22 & Exs. 12, 13)

On August 27, 2010, counsel of record in the Seaport Action appeared for a

scheduling conference before Judge Batts.  Judge Batts ordered that the Deutsche Bank

Action not be transferred to her and not be consolidated with the Seaport Action.

(Peluso Decl. ¶¶ 23-24 & Ex. 14)

More importantly, Judge Batts declined to enter a case schedule for the Seaport

Action, and instead suspended the case for 90 days to allow this Court to decide the

merits of DEI's Objection to the notice of transfer.  Specifically, Judge Batts ordered that

the Seaport Action "be put on suspense for 90 days to await determination by Judge

Gerber on July 2010 Settlement and Assignment objection, which could resolve this

case."  (Peluso Decl. ¶ 25 & Ex. 14, Order dated Aug. 27, 2010 at 2, Seaport Action Dkt.

No. 10)  Judge Batts further ordered the parties to report back to her after the 90-day

period on the status of the instant Objection.  (*Id.*)  Accordingly, the Seaport Action has

---

[3] Although any formal termination notice would have been due on August 11, 2010, the parties' counsel agreed to extend that deadline to August 18, 2010, without prejudice to Seaport's position that no termination rights had been triggered.  (Peluso Decl. ¶ 19 & Ex. 9)

been stayed for the express purpose of allowing this Court to determine DEI's purported

right to terminate the July 2010 Assignment and Settlement Agreement.  If DEI had no

such termination rights, the Seaport Action has already been settled and is moot.

Because DEI's Objection is without merit, this Court should find that DEI had no

right to terminate the Assignment Agreement and approve the transfer to Seaport.

### ARGUMENT

Deutsche Bank's action for money damages is not a suit "objecting to the

transfer" of the Claim from DEI to Seaport, as expressly required for DEI's termination

rights under Section 4.  It is simply a suit for money damages.  Seaport agreed to DEI's

conditional termination rights only in the event that Deutsche Bank objected to the

transfer, thereby posing a potential challenge Seaport's recently acquired title to the

Claim.  The parties never agreed, and Seaport never would have agreed, that DEI's mere

exposure to monetary liability would permit DEI to undo the assignment.  DEI does not

have any termination rights, and the Notice of Transfer should be allowed.

### A.    Because DEI's Termination Rights Are Conditional, DEI Has the Burden of Establishing that the Condition Has Occurred

Seaport is entitled to an order substituting it for DEI as the Claim owner if "the

court finds, after notice and a hearing, that the claim has been transferred."  Fed. R.

Bankr. P. 3001(e)(2).  DEI's Objection and disputed termination of the Assignment

Agreement are thus properly resolved by this Court.  *See In re NutriPlus, LLC*, No. 99-

44743, 2002 Bankr. LEXIS 1325, at *30-31 (Bankr. S.D.N.Y. Sept. 20, 2002) (where

timely objection is filed, "the court's role is to determine whether a transfer has been

made that is enforceable under nonbankruptcy law."), citing Fed. R. Bankr. P. 3001,

Advisory Committee Notes to 1991 Amendments.

New York governs the Assignment Agreement, and New York contract law principles of conditional termination rights, and express conditions generally, are well established. DEI's termination rights in the Assignment Agreement embody a condition subsequent. That is, "where a party has the option either to terminate the contract upon the occurrence of an event or not to terminate - and where the contract does not expire by its own limitation upon such occurrence - then the contract contains a condition subsequent." *In re St. Casimir Dev. Corp.*, 358 B.R. 24, 39 (S.D.N.Y. 2007); *see also Benincasa v. Garrubbo*, 141 A.D.2d 636, 638 (2d Dep't 1988) (conditions subsequent is one that allows for contract to be set aside if condition is not fulfilled.). The party relying on a condition subsequent has the burden of proving that the condition occurred. *See Blandford Land Clearing Corp. v. National Union Fire Ins. Co.*, 260 A.D.2d 86, 91 (1st Dep't 1999) ("the party seeking to be relieved from its contractual obligation" bears burden "to demonstrate that the requisite condition has arisen"); *G.C.M. Metal Indus. v. J.B.C. Contr. Co.*, No. 73807/04, 2005 NY Slip Op 50835U, 2005 N.Y. Misc. LEXIS 1110, at *10 (N.Y. Civ. Ct. June 3, 2005) ("party relying on a condition subsequent . . . has the burden of proving the occurrence of the condition").

It is also well established that an express condition, as opposed to an implied condition, "requires strict compliance." *Prosperity Partners, Inc. v. Bonilla*, 374 F. Supp. 2d 290, 292 (E.D.N.Y. 2005); *see also Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690-91 (1995). "Substantial" fulfillment of an express condition is not sufficient: "the equitable doctrine of substantial compliance may not be employed effectively to nullify express conditions of contract performance . . . ." *Pine v. Coppola*

11

*N.Y.C., Inc.*, 299 A.D.2d 227, 227-28 (1st Dep't 2002).  Thus, as Professor Williston has

explained, and as the Court of Appeals has adopted:

> "Since an express condition … depends for its validity on the
> manifested intention of the parties, it has the same sanctity as the
> promise itself. Though the court may regret the harshness of such a
> condition, as it may regret the harshness of a promise, it must,
> nevertheless, generally enforce the will of the parties unless to do
> so will violate public policy."

*Oppenheimer*, 86 N.Y.2d at 690-91 (quoting 5 Williston, Contracts § 669, at 154 (3d

ed.)).

Additionally, the non-occurrence of a contractual condition may be resolved as a

matter of law.  *See David Fanarof, Inc. v. Dember Constr. Corp.*, 195 A.D.2d 346, 348

(1st Dep't 1993) ("Since the condition precedent to plaintiff's right to receive payment

under the subcontracts did not take place, . . . defendant's cross motion for summary

judgment dismissing the complaint should have been granted.").

Based on these  principles, the Court should reject DEI's Objection.  DEI

assigned the Claim to Seaport effective July 16, 2010, the Deutsche Bank Action is not a

suit "objecting to the transfer" of the Claim, and DEI has no right to terminate the

agreement or undo the assignment.

### B.    DEI's Purported Termination Contravenes
### Section 4 of the Assignment Agreement

#### 1.    Deutsche Bank's Money Damages Action is
#### Not a Claim "Objecting to the Transfer"

Deutsche Bank's lawsuit does not trigger DEI's conditional termination rights

under Section 4 of the Assignment Agreement.  Section 4 provides DEI the right to

terminate the agreement only "in the event during the 20 Day Period Deutsche Bank does

file or serve a claim against Assignor *objecting to the transfer*."  (Assignment

Agreement, § 4) (emphasis added)  By its plain, ordinary meaning, the phrase "objecting

to the transfer" refers to some claim or notice intended to prevent the transfer from being

effective or challenging its validity, such as an action by Deutsche Bank to establish title

to the Claim or compelling DEI to file an objection in this Court.  The Deutsche Bank

suit makes no such claim and seeks no such relief.  Indeed, it does not challenge the

Seaport assignment in any way.  Nor could Deutsche Bank credibly assert priority over

Seaport, as Seaport's original agreement with DEI was executed in November 2009,

months before Deutsche Bank's alleged contract.  The Deutsche Bank Action seeks only

money damages and the Court should find that DEI had no right to terminate the

Assignment Agreement.

   DEI's contrary interpretation defies not only the language of the agreement, but

also common sense.  Seaport would have never agreed that a third party's monetary

claims would allow DEI to reverse the assignment, *ex post facto*.  DEI's potential

financial liability to Deutsche Bank has no logical impact on the Claim or on Seaport's

ownership interest in the Claim.  The parties intended and expressly agreed to a limited

termination right only in the event that Deutsche Bank challenged Seaport's right to the

Claim.  That has not occurred.  Accordingly, the Court should find that the Assignment

Agreement remains in force and enter an order substituting Seaport as the owner.

   Particularly in the context of Section 4, a claim "objecting to the transfer," is not

broad enough to encompass a money damages action.  Section 4 deals entirely with the

Notice of Transfer.  The parties agreed the Section 4 conditions could be satisfied only in

the 20-day period following the Notice of Transfer filings – which mirrors the traditional

20-day objection period under Federal Rule of Bankruptcy Procedure 3002(e)(1) and

Local Bankruptcy Rule 2002-2(b) (amended to 21 days last year).  Notably, the parties

also use the phrase "objecting to the transfer" in the preceding sentence of Section 4 to

refer expressly to Deutsche Bank filing an objection with this Court.  (Assignment

Agreement, § 4)  The condition "objecting to the transfer" thus plainly refers to a notice

or filing that attempts to prevent this Court from entering an order of substitution or that

specifically challenges the Seaport assignment.  *See Maryland Cas. Co. v. W.R. Grace &*

*Co.*, 128 F.3d 794, 799 (2d Cir. 1997) ("Terms in a document, especially terms of art,

normally have the same meaning throughout the document in the absence of a clear

indication that different meanings were intended."); *Cohanzick Partners, L.P. v. FTM*

*Media, Inc.*, 120 F. Supp. 2d 352, 359 (S.D.N.Y. 2000) ("[A] word used in one portion of

a contract is presumed to have the same meaning when it is used in another portion of the

contract."); *Streamline Capital, LLC v. Hartford Cas. Ins. Co.*, No. 02-civ-8123, 2003

U.S. Dist. LEXIS 14677, at *25 (S.D.N.Y. Aug. 22, 2003) (same).  Deutsche Bank has

not challenged Seaport's ownership of the Claim, and DEI has no right to terminate the

Assignment Agreement.  The Court should find that the assignment remains effective.

2.      The Parties Expressly Declined to Extend
<u>DEI's Termination Rights to Damages Actions</u>

If the parties had intended to trigger DEI's termination rights based on a Deutsche

Bank suit for only damages, they could have easily done so with appropriate language.

Instead, as discussed below, the condition described in Section 4 is much narrower,

especially compared to language in Section 7 describing potential Deutsch Bank claims.

In opting to use the more specific language found in Section 4, the parties eliminated any

doubt as to their intent.

14

As the Southern District has acknowledged, there is a strong presumption that when sophisticated parties use different words in separate parts of an agreement, they were intended to have a different meaning. *See International Fid. Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000) ( "Sophisticated lawyers . . . must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning.").

Here, Seaport and DEI specifically avoided using language in Section 4 that would have allowed termination based on a money damages suit.  By contrast, in Section 7 of the Assignment Agreement, a provision (unrelated to Section 4) that limits DEI's representations and warranties, the parties defined the term "Third Party Broker Claims." That term includes legal claims by "Deutsche Bank . . . alleging that a binding agreement in respect of the sale of all or any portion of the Claim exists or existed between Assignor and [Deutsche Bank], [or] making any other similar allegation."  (Assignment Agreement § 7(a))  Deutsche Bank's Action falls under Section 7, but not under Section 4.  The parties chose **not** to use the broader Section 7 language when they drafted Section 4 to define DEI's conditional termination rights.  Instead, DEI's termination rights can arise only from a Deutsche Bank claim against DEI "*objecting to the transfer*" from DEI to Seaport.  The parties' use of much narrower language in Section 4 expresses their intent and agreement upon a much narrower condition.  The language of Section 4, compared with language used elsewhere, refutes DEI's argument entirely.

3.      DEI's Interpretation is Contrary to the Purpose
of Section 4 and the Agreement as a Whole

It is hornbook New York law that "A written contract should be read as a whole

and every part should be interpreted with reference to the whole, and if possible it should

be so interpreted as to give effect to its general purpose."  22 N.Y. Jur. 2d, *Contracts*

§ 248; *In re Best Payphones, Inc.*, No. 1-B-15472, 2007 Bankr. LEXIS 1677, at *70

(Bankr. S.D.N.Y. May 8, 2007) ("The primary objective when interpreting a contract is

to give effect to the parties' intent as revealed in the language that they used.").  In

resolving conflicting interpretations, or deciding whether an agreement is ambiguous,

New York courts consider the agreement's broader context and the parties' overall intent:

> courts should examine the entire contract and consider the relation of the parties
> and the circumstances under which it was executed.  Particular words should be
> considered, not as if isolated from the context, but in the light of the obligation as
> a whole and the intention of the parties as manifested thereby.  Form should not
> prevail over substance and a sensible meaning of words should be sought.

*Kass v. Kass*, 91 N.Y.2d 554, 566 (1998) (internal quotation marks omitted); *see also id.*

at 567 ("Where the document makes clear the parties' over-all intention, courts

examining isolated provisions . . . should then choose that construction which will carry

out the plain purpose and object of the [agreement].") (internal quotation marks omitted);

*RM Realty Holdings Corp. v. Moore*, 64 A.D.3d 434, 436 (1st Dep't 2009) (motion to

dismiss properly granted, and no discovery was appropriate, where plaintiff's proffered

interpretation was unreasonable in light of contract language and parties' intent).  DEI's

position here not only disregards express language in the Assignment Agreement, it does

substantial violence to the purpose of Section 4 and of the agreement as a whole.

DEI's proffered interpretation of Section 4 would turn that very provision on its

head.  DEI's objects to the transfer because *DEI* wants to prevent it, not because

16

Deutsche Bank does.  The agreement's contingent termination rights arise only if Deutsche Bank objected to DEI's transfer of the claim to Seaport.  Deutsche Bank, however, as reflected in its lawsuit and its failure to seek or assert title to the Claim (either in its civil lawsuit or in this Court), literally has *no* objection to the Claim transfer.  Today's situation – where Deutsche Bank does not oppose the transfer, but one of the parties does – is the exact reverse of the condition stated in Section 4.  DEI cannot rewrite the agreement in this fashion, and its objection should be rejected.

Indeed, an express and critical purpose of the Assignment Agreement as a whole was to achieve finality.  The parties sought to "fully and finally settle" their dispute. (Peluso Decl. Ex. 3, Assignment Agreement at p.1)  Thus, DEI Assigned the Claim to Seaport effective immediately as of the July 16, 2010 execution (*id.* § 1), it expressly consented to an order effecting an unconditional assignment (*id.* § 17), and it agreed to execute the Evidence of Transfer of Claim (*id.* § 12), thereby waiving all objections to the Notice of Transfer (*id.* p.12, Exhibit A to Assignment of Claim).  The Assignment Agreement plainly did not contemplate that DEI could terminate the agreement or object to the transfer based on a purely monetary concerns arising from a third-party damages suit.  Seaport did not agree, and would never have agreed, to such an open-ended termination right.

It is clear that the parties intended and agreed that DEI could terminate the Assignment Agreement only if Deutsche Bank filed a claim that threatened DEI's ability to transfer title, free and clear, to Seaport – i.e., a claim "objecting to the transfer."  No such claim was filed.  The Objection is meritless and the Court should find that the Claim was transferred to Seaport.

17

C.    **This Court Should Rule on DEI's Termination
Rights or, Alternatively, Allow the Transfer without
Prejudice to DEI's Non-Bankruptcy Remedies**

Under the Federal Rules of Bankruptcy Procedure, "the transfer process was designed to be straightforward and final." *In re Northwest Airlines Corp.*, No. 05-17930, 2007 Bankr. LEXIS 521, at *9 (Bankr. S.D.N.Y. Feb. 9, 2007). This Court has proper authority to resolve the contractual dispute between Seaport and DEI, as it relates to a disputed transfer of claim. *See* Fed. R. Bankr. P. 3001(e)(2), Advisory Committee Notes to 1991 Amendments ("the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law"); *cf. In re Casual Male Corp.*, 317 B.R. 472, 478 (Bankr. S.D.N.Y. 2004) (noting in *dicta* that bankruptcy court resolution of nonbankruptcy law disputes under Fed. R. Bankr. P. 3001(e)(2) are generally necessary or desirable "to direct the estate as to the appropriate recipient of the distribution on the claim").

Despite the related pending litigation in the District Court, this Court is the proper forum to resolve, fully and finally, the binding effect of the Assignment Agreement. DEI's Objection and assertion of termination rights arise directly under Rule 3001(e)(2). The Assignment Agreement, moreover, and DEI's purported termination thereof, are not addressed by the Seaport Action pleadings. Judge Batts has stayed the Seaport Action pending this Court's ruling on the 2010 Assignment Agreement, as it may render the Seaport Action moot altogether. (Peluso Decl. Ex. 14, Order dated Aug. 27, 2010). The discrete issue of DEI's purported termination, moreover, would be more efficiently resolved here than in the context of a broader federal lawsuit that covers a range of other matters. For these reasons, notwithstanding related litigation elsewhere, a final ruling on the merits of DEI's termination rights by this Court is appropriate.

If, for some reason, this Court concludes that DEI's termination rights cannot be resolved here, the Court should, in the alternative, approve the transfer without prejudice to DEI's nonbankruptcy remedies. *Cf. Northwest Airlines*, 2007 Bankr. LEXIS 521, at *13 (where transferor objection raising contract law issues was untimely, denial of objection was without prejudice to transferor's state court remedies).

There is no dispute that DEI transferred the Claim to Seaport on July 16, 2010, pursuant to the Assignment Agreement. The assignment was complete, notwithstanding a contractual provision for a conditional termination. *See Benincasa v. Garrubbo*, 141 A.D.2d at 638 ("A condition subsequent does not delay the enforceability of a contract . . . ."); *cf. Cohen v. Drexel Burnham Lambert Group*, 138 B.R. 687, 710 (Bankr. S.D.N.Y. 1992) ("We conclude that under the terms of the parties' contract, Cohen held both legal title and the equitable interest in the escrowed bonds. The Debtor's only prepetition interest in the portfolios was a contingent right, in the form of a condition subsequent, to repurchase them in the event Cohen's employment was terminated for cause."). The requirement for approval under Rule 3001(e)(2) has been satisfied because, unquestionably, "the claim has been transferred," Fed. R. Bankr. P. 3001(e)(2), even if subject to conditional termination rights. *See also Northwest Airlines Corp.*, 2007 Bankr. LEXIS 521, at *7, n.2 ("The amended version of Rule 3001(e)(2) also eliminates the requirement that claims be transferred 'unconditionally.'"). Short of resolving DEI's termination rights, therefore, the Court should approve the transfer, subject to DEI's non-bankruptcy remedies to establish its termination rights and assertions of title in the Claim.

Accordingly, the Court should approve the transfer and find that DEI had no right to terminate the Assignment Agreement or, in the alternative, without prejudice to DEI's

non-bankruptcy remedies to enforce its purported termination rights.  Either way, DEI's

objection should be rejected and the transfer should be approved.

## CONCLUSION

For the reasons stated above, the Court should reject DEI's Objection to the

Notice of Transfer, find that the Claim has been transferred to Seaport, and enter an order

substituting Seaport for DEI as the owner of Claim No. 70347.

Dated: New York, New York.
      September 10, 2010

Respectfully submitted,

MANATT PHELPS & PHILLIPS, LLP

By: _____
     Ronald G. Blum
     Kimo S. Peluso
7 Times Square
New York, NY  10036
(212) 790-4500

*Attorneys for Transferee The Seaport Group LLC*

200031280.7