**Return Date: September 17, 2010, 9:45 a.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, et al.,<br>f/k/a General Motors Corp., et al.,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**DECLARATION OF KIMO S. PELUSO
IN SUPPORT OF THE SEAPORT GROUP LLC RESPONSE TO
OBJECTION TO NOTICE OF TRANSFER OF CLAIM NO. 70347**

I, KIMO S. PELUSO, hereby declare pursuant to 28 U.S. C. § 1746 as follows:

1. I am a partner at Manatt, Phelps & Phillips, LLP, attorneys for The Seaport Group LLC ("Seaport") in this matter and in an action Seaport filed against Dale Earnhardt, Inc., in the U.S. District Court for the Southern District of New York against Dale Earnhardt, Inc. ("DEI"), *The Seaport Group LLC v. Dale Earnhardt, Inc.*, No. 10-cv-1599 (DAB) (the "Seaport Action"). Except where stated otherwise, I have personal knowledge of the facts stated herein. I respectfully submit this Declaration in support of Seaport's Response to DEI's Objection to Notice of Transfer of Claim No. 70347 (the "Objection").

2. A true and correct copy of Seaport's complaint in the Seaport Action is attached at **Exhibit 1**.

3. As set forth in the complaint in the Seaport Action, Seaport is a limited liability company based in New York, New York and a registered broker-dealer. Among other things, Seaport buys and sells trade claims, including creditor claims pending in

bankruptcy court. Seaport has purchased, sold and brokered the sale of numerous such claims, and it is well-known among the companies that handle such transactions. (Ex. 1, Seaport Complaint ¶ 2)

4. DEI answered the complaint in the Seaport Action on April 30, 2010. A true and correct copy of DEI's Answer is attached at **Exhibit 2**. As DEI has admitted, DEI is a corporation based in Mooresville, North Carolina. DEI is a part owner of the professional NASCAR racing team Earnhardt Ganassi Racing and is also in the business of selling products related to, and licensing the name and likeness of, late professional NASCAR racer, Dale Earnhardt. (Ex. 1, Seaport Cplt. at ¶ 3; Ex. 2, DEI Answer at ¶ 3)

5. The Seaport complaint alleges that on November 18, 2009, DEI and Seaport entered into a Trade Claim Confirmation – a written agreement to sell to Seaport the bankruptcy claim at issue here, with a formal assignment to be executed thereafter. (Ex. 1, Seaport Complaint at Exhibit A) Seaport alleged that DEI, however, attempted to renege on the sale and refused to execute a formal assignment, as required by the parties' Trade Claim Confirmation. In its complaint, Seaport sought declaratory relief, specific performance to compel DEI to assign the bankruptcy claim to Seaport, and in the alternative, compensatory damages. (*Id.*)

6. After it filed its lawsuit, Seaport was able to reach a settlement with DEI. The parties entered into the Assignment of Claim and Settlement Agreement, dated July 16, 2010 (the "Assignment Agreement"). A true and correct copy of the Assignment Agreement is attached at **Exhibit 3**. The parties' stated purpose of the Assignment Agreement was to "resolve their dispute and to fully and finally settle the [Seaport]

2

Action." (Ex. 3, Assignment Agreement at p.1)  The Assignment Agreement is governed by New York law.  (*Id.* at § 15)

7.   The Agreement states that DEI filed a claim in this bankruptcy action for a value of $3,252,706.80, which claim was later amended to a value of 3,031,180.00 (the "Claim").  In finalizing the Assignment Agreement, on July 19, 2010, DEI's counsel sent me by email a copy of DEI's Amended Proof of Claim, a true and correct copy of which is attached at **Exhibit 4**.  Under the Assignment Agreement (Ex. 3), the Claim was transferred to Seaport effective July 16, 2010.

8.   On terms consistent with the parties' original Trade Claim Confirmation, the Assignment Agreement assigned to Seaport "all of Assignor's [DEI's] right, title and interest in and to" the Claim, effective "as of the date of this Assignment."  (*Id.* § 1)  Thus, the Claim was transferred to Seaport as of July 16, 2010.  The Assignment Agreement also settled and resolved the Seaport Action.

9.   In addition to assigning the Claim to Seaport as of July 16, 2010, the Assignment Agreement provided for Seaport to be substituted as the Claim owner before this Court and on the debtor's books.  The Assignment Agreement required Seaport to file a Notice of Transfer in this Court reflecting the Assignment; and required Seaport to deliver its initial payment for the Claim following a 20-day waiting period thereafter.  (Ex. 3, Assignment Agreement § 4)

10.   In the Evidence of Transfer of Claim attached to the Assignment Agreement, DEI expressly agreed to "waive[] any objection to the transfer of the Assigned Claim to Assignee on the books and records of the Debtor . . . ."  (Ex. 3, Assignment Agreement at Exhibit A)  The Assignment Agreement also states that "[DEI]

3

stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and [Seaport] herein as the valid owner of the Assigned Claim." (Ex. 3, Assignment Agreement § 17)

11. The Assignment Agreement reflected the possibility that Deutsche Bank AG or its affiliates (collectively, "Deutsche Bank") might assert that DEI had promised to sell it the same Claim. DEI generally represented in the Assignment Agreement that it owned the Claim "free and clear of all liens [or] claims . . . of any kind," and that DEI "has not previously sold or assigned the Assigned Claim." (Ex. 3, Assignment Agreement § 5(iii), (v)) The agreement, however, specifically excused from such representations any adverse claims by Deutsche Bank that it has or ever had a binding agreement to purchase the Claim:

> Notwithstanding the foregoing, none of the representations and warranties contained in this Sections 5 and 6 shall be deemed to have been breached as a result of (i) *the existence or threat of any legal proceedings or claims by Deutsche Bank, its designees, assignees, transferees, or affiliates, alleging that a binding agreement in respect of the sale of all or any portion of the Claim exists or existed between Assignor and any such party, making any other similar allegation*, (ii) any testimony presented or evidence associated with any such proceedings, claims, or allegations, and/or (iii) an order or finding by any court that such binding agreement existed (collectively, "Third Party Broker Claims").

(Ex. 3, Assignment Agreement § 7(a) (emphasis added))

12. Separately, the Assignment Agreement provided both parties with conditional termination rights if, after the Notice of Transfer was filed, Deutsche Bank objected to the transfer of the Claim to Seaport. DEI's termination rights would be triggered only by Deutsche Bank specifically filing a claim against DEI "objecting to the transfer" and doing so within a specific time period:

> If during the 20 Day Period [after the Notice of Transfer appears

4

> on the docket], Deutsche Bank, AG or any of its affiliates, assignees or designees (collectively, "Deutsche Bank") files or serves a notice with the Bankruptcy Court objecting to the transfer, then Assignee may elect in a written notice to Assignor within two (2) calendar days after such 20 Day Period to not pay the Purchase Price to Assignor and to terminate and declare this Assignment and Settlement Agreement null and void. *Further, in the event during the 20 Day Period Deutsche Bank does file or serve a claim against Assignor **objecting to the transfer**, then Assignor may elect in a written notice to Assignee within two (2) calendar days after such 20 Day Period to terminate and declare this Assignment and Settlement Agreement null and void*, in which event Assignee shall be relieved of its obligation to pay the Purchase Price to Assignor hereunder.

(Ex. 3, Assignment Agreement § 4 (emphasis added))

13.  Seaport filed the Notice of Transfer, executed in relevant part by DEI, in this Court on July 20, 2010. A true and correct copy of the Notice of Transfer filed at Dkt. No. 6377 is attached at **Exhibit 5**. As set forth in the Evidence of Transfer of Claim attached to the Notice of Transfer filed with this Court, DEI expressly "waive[d] any objection to the transfer of the Assigned Claim to Assignee on the books and records of the Debtor . . . ." (Ex. 5, Notice of Transfer at p.2)

14.  Under Section 4 of the Assignment Agreement, the 20-Day Period for Deutsche Bank to file or serve a claim or notice "objecting to the transfer" was scheduled to, and did, expire August 9, 2010. (Ex. 3, Assignment Agreement § 4) During that period, Deutsche Bank did not file or serve any claim against DEI objecting to the transfer, or seek to prevent or interfere in any manner with the transfer of the Claim.

15.  Rather, on August 5, 2010, Deutsche Bank filed a complaint in federal court against DEI seeking only monetary damages. A true and correct copy of the complaint filed by Deutsche Bank (the "Deutsche Complaint") in *Deutsche Bank Securities Inc. v. Dale Earnhardt, Inc.*, No. 10-cv-5910 (PGG) (S.D.N.Y. filed Aug. 5,

5

2010), is attached at **Exhibit 6**. Deutsche Bank did not file its lawsuit (the "Deutsche Bank Action") as a related case to the Seaport Action. The Deutsche Bank Action is the subject of DEI's present Objection.

16.     The gist of the Deutsche Bank Action is that DEI breached an agreement to Deutsche Bank regarding the Claim, and caused Deutsche Bank lost profits. The complaint alleges that DEI signed a written "Confirmation" on January 18, 2010 for DEI to sell the Claim to Deutsche Bank, which Confirmation required the parties to close the transaction through a "mutually agreeable Assignment of Claim" and to do so "[a]s soon as practicable." (Ex. 6, Deutsche Bank Cplt. at ¶¶ 9, 13 & Exhibit B) Deutsche Bank alleges that DEI "materially breached the terms of the contract by failing to close the transaction 'as soon as practicable' and failing to deliver the Claim to Deutsche Bank, as promised in the Confirmation." (*Id.* ¶ 20) Deutsche Bank's compliant also asserts a second count, a parallel claim for breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 24-31) Deutsche Bank asserts that DEI's breach cost it the opportunity to sell the Claim at a profit or to collect distributions from the debtor. (*Id.* ¶ 16)

17.     Thus, Deutsche Bank's suit is an action for money damages based on DEI's failure to assign the Claim to Deutsche Bank "as soon as practicable" after signing the January 2010 agreement. The Deutsche Bank Action does not object to the July 2010 Assignment Agreement with Seaport or to the publicly filed Notice of Transfer.

18.     DEI's counsel notified me of the Deutsche Bank Action by letter dated Friday, August 6, 2010, and threatened to exercise DEI's termination rights under Section 4 of the Assignment Agreement. A true and correct copy of DEI counsel's August 6, 2010 letter is attached at **Exhibit 7**.

6

19. I responded on behalf of Seaport by letter on Tuesday, August 10, 2010, disagreeing that DEI had any right to terminate the Assignment Agreement. A true and correct copy of my August 10, 2010 letter to DEI's counsel is attached at **Exhibit 8**. Although any formal termination notice would have been due on August 11, 2010, I agreed with DEI's counsel to extend that deadline to August 18, 2010, without prejudice to Seaport's position that no termination rights had been triggered. A true and correct copy of my August 11, 2010 email confirming this agreement is attached at **Exhibit 9**.

20. DEI nonetheless filed the instant Objection on August 10, 2010 and sent a letter to me purporting to terminate the Assignment Agreement on August 18, 2010. A true and correct copy of DEI's August 18, 2010 letter is attached at **Exhibit 10**.

21. On August 17, 2010, DEI wrote to District Judge Deborah A. Batts, who presides over the Seaport Action, and to District Judge Paul G. Gardephe, who presides over the Deutsche Bank Action, and requested that the two actions be consolidated. A true and correct copy of DEI's August 17, 2010 letter to Judges Batts and Gardephe is attached at **Exhibit 11**.

22. Deutsche opposed DEI's request for consolidation by letter dated August 19, 2010. A true and correct copy of Deutsche Bank's August 19, 2010 letter to Judges Batts and Gardephe is attached at **Exhibit 12**. On behalf of Seaport, my firm submitted a letter opposing DEI's request. A true and correct copy of my firm's August 20, 2010 letter to Judges Batts and Gardephe is attached at **Exhibit 13**.

23. On August 27, 2010, I appeared for a scheduling conference in the Seaport Action before Judge Batts. Counsel for DEI also appeared. A true and correct copy of

the order issued by Judge Batts following the conference, Docket No. 10 in the Seaport Action, is attached at **Exhibit 14**.

24. Judge Batts ordered that the Deutsche Bank Action not be transferred to her and not be consolidated with the Seaport Action.

25. Judge Batts also declined to enter a case schedule for the Seaport Action, and instead suspended the case for 90 days to allow this Court to decide the merits of DEI's Objection to the notice of transfer. Specifically, Judge Batts ordered that the Seaport Action "be put on suspense for 90 days to await determination by Judge Gerber on July 2010 Settlement and Assignment objection, which could resolve this case." (Ex. 14, Order dated Aug. 27, 2010 at 2) Judge Batts further ordered the parties to report back to her after the 90-day period on the status of the instant Objection. (*Id.*)

26. Because DEI had no right to terminate the Assignment Agreement, I submit this Declaration in support of Seaport's Response to DEI's Objection.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Dated September 10, 2010.

_____
Kimo S. Peluso

200032701.2