# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SEAPORT GROUP LLC, | Case No. 10-cv- |
| Plaintiff, | COMPLAINT |
| -against- | ECF CASE |
| DALE EARNHARDT, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

RECEIVED FEB 25 2010 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff The Seaport Group LLC ("Seaport"), by its attorneys Manatt Phelps & Phillips, LLP, complaining in this action against Defendant Dale Earnhardt, Inc. ("DEI"), alleges as follows:

## NATURE OF THE ACTION

1. Seaport's causes of action arise from DEI's reneging on a written agreement to sell Seaport a claim pending in the General Motors bankruptcy action. After DEI signed a binding contract to sell its claim to Seaport, the value of the claim increased dramatically, and DEI refused to honor the deal. Seaport seeks specific performance of the contract, or alternatively, money damages for its losses resulting from DEI's breach.

## THE PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Seaport is a limited liability company organized under the laws of the state of Delaware with its principal place of business in New York, New York. Its has two members – Michael Meagher, a resident of New York, New York, and Stephen Smith, a resident of Palm Beach, Florida. Among other things, Seaport buys and sells trade claims, including creditor claims pending in bankruptcy court. Seaport has purchased, sold and brokered the sale

of numerous such claims, and it is well-known among the companies that handle such transactions.

3. Upon information and belief, Defendant DEI is a corporation organized under the laws of the state of North Carolina with its principal place of business in Mooresville, North Carolina. Upon information and belief, DEI is a part owner of the professional NASCAR racing team Earnhardt Ganassi Racing and is also in the business of selling products related to, and licensing the name and likeness of, late professional NASCAR racer, Dale Earnhardt.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and this dispute is between citizens of different states.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to Plaintiff Seaport's claims occurred in this judicial district.

## FACTUAL BACKGROUND

6. On November 18, 2009, DEI entered into an agreement to sell to Seaport a bankruptcy claim that DEI had filed in the bankruptcy action captioned *In re Motors Liquidation Co., et al., f/k/a General Motors Corp., et al.*, U.S. Bankr. Ct. S.D.N.Y., Ch. 11 No. 09-50026 (REG) (the "Bankruptcy Action"). DEI had filed its claim in the Bankruptcy Action, claim number 1649, for a value of $3,252,706.89 (the "Claim").

7. The agreement was memorialized in a Trade Claim Confirmation (the "Confirmation") executed by the parties. A copy of the executed Confirmation is attached hereto as Exhibit 1.

8.	As set forth in the Confirmation, DEI agreed to sell Seaport the full value of its Claim, in two components mirroring the proof of claim that DEI had filed with the Bankruptcy Court. This included (i) an unsecured bankruptcy claim for $2,419,373.56 for a sale price to Seaport equal to 10% of that claim, and (ii) an administrative priority claim for $833,333.33 for a sale price to Seaport equal to 10% of that claim plus an additional 55% upon formal recognition as an administrative priority claim by the Bankruptcy Court.

9.	In short, DEI agreed to sell Seaport its $3,252,706.89 Claim for a price of no more than $783,604.02.

10.	As set forth in the Confirmation, the parties agreed to close the sale of the claim "as soon as practicable, but no later than December 15, 2009." (Ex. 1, Confirmation at 2)

11.	The Confirmation also provides that the sale of the claim was subject to and contingent upon "the execution and delivery of an Assignment of Claim Agreement reasonably acceptable to both Buyer and Seller." (Ex. 1, Confirmation at 2)

12.	By its terms, the Confirmation is governed by New York law. (*Id.* at 3)

13.	Both the express terms of the Confirmation and the implied covenant of good faith and fair dealing required DEI to attempt to close the sale of its claim "as soon as practicable," to cooperate with Seaport in drafting and executing an Assignment of Claim Agreement, and not to reject any such assignment unreasonably.

14.	On November 20, 2009, two days after the parties executed the Confirmation, Seaport delivered to DEI a proposed Assignment of Claim Agreement (the "Assignment"). The Assignment spelled out standard terms that Seaport and other experienced parties have used in purchasing and selling countless claims from creditors in other bankruptcy proceedings.

15. Having secured DEI's agreement to close the sale "as soon as practicable," and having provided DEI with a draft Assignment two days after the parties executed the Confirmation, Seaport fully expected DEI would execute the Assignment as written or provide any proposed changes quickly, and well in advance of the December 15, 2009 closing deadline.

16. DEI, however, did not respond to or propose any changes to the draft Assignment for weeks. Starting in early December, Seaport reminded DEI to send any proposed changes to the draft Assignment, so that the parties could close the transaction.

17. Finally, on December 15, 2009, the day of the Confirmation's originally agreed-upon closing deadline, DEI sent Seaport a long list of objections to Seaport's draft Assignment. DEI told Seaport that DEI was "surprised" by many provisions in the draft Assignment, although DEI had never previously expressed any such sentiment, despite receiving the draft nearly a month beforehand and several reminders from Seaport thereafter.

18. Thus, DEI first complained about the terms of the Assignment drafted by Seaport on the settlement date deadline. Its complaints and demands, however, were unreasonable and not made in good faith. Among its objections, DEI refused to agree to refund the purchase price if the Claims were "avoided, subordinated, reduced, disputed objected to, enjoined or otherwise impaired," even though the Confirmation expressly stated that such a provision would be part of the Assignment. *See* Ex. 1, Confirmation at 2 (requiring DEI to repay the purchase price, with interest, "in the event all or any part of the Claims is or becomes subject to an impairment or is disallowed, rejected, reduced or objected to, in whole or in part"). As another example, DEI demanded that Seaport modify the assignment to include a venue provision for DEI's home state of North Carolina, even though the parties had already agreed that New York law would govern the Confirmation, and even though the Bankruptcy Action

-4-

(and the Claim) is pending in the Southern District of New York. Many of DEI's other comments were similarly unreasonable and were not made in good faith.

19. Also on December 15, 2009, DEI made clear that it was not honoring its commitment under the Confirmation. DEI informed Seaport that it was negotiating a new deal with General Motors, including General Motors' request that DEI reduce its Claim. DEI further stated that DEI's top priority was to maintain its relationship with General Motors.

20. In fact, as later disclosed by DEI, the negotiations with General Motors contemplated by DEI could reduce its $3.25 million Claim to as little as $100,000 or eliminate it altogether. Any such reduction was directly contrary to the Confirmation, in which DEI promised to assign to Seaport the full value of the $3.25 million Claim submitted in the Bankruptcy Action.

21. By these negotiations with General Motors and its announcement to Seaport on December 15, 2009 that DEI intended to reduce or eliminate its Claim, DEI anticipatorily breached and repudiated the Confirmation.

22. Consistent with its announced intention not to honor the Confirmation and to reduce or eliminate its Claim, DEI's December 15, 2009 comments included the warning, "we are looking into mistake defenses," referring to a defense to any breach of contract action by Seaport.

23. In response to DEI's long list of objections to the draft Assignment, Seaport requested that DEI prepare a revised draft reflecting the changes and specific language acceptable to DEI for Seaport's review. DEI refused even this basic request.

24. In response to DEI's announcement of its negotiations with General Motors, Seaport reminded DEI by telephone and email that it had already sold its Claim to Seaport as a result of the November 18, 2009 Confirmation.

25. On February 2, 2010, DEI announced by email, "We have decided not to pursue / sell our claim in the interest of the new agreement with GM." Thus, DEI purported to use the Claim in negotiations with General Motors rather than honor its agreement to sell the Claim to Seaport.

26. For the first time, DEI also declared that the Confirmation was not binding because the parties had not executed an Assignment by the closing deadline.

27. To the extent the Confirmation was conditioned on a final Assignment, that condition was waived or excused because DEI refused to cooperate in, unreasonably interfered with, and made impossible the execution of an Assignment, including in the following ways: (i) DEI neglected for weeks to respond to the draft Assignment prepared by Seaport; (ii) DEI waited until the day of the Confirmation's closing deadline to provide numerous objections to Seaport's draft Assignment; (iii) DEI intentionally delayed and avoided delivering and executing an Assignment so that it could back out of the Confirmation and reduce its claim to appease General Motors; (iv) DEI otherwise prevented the parties from closing the transaction "as soon as practicable," as set forth in the Confirmation; (v) DEI refused even to provide Seaport with a proposed revision to the draft Assignment; and (vi) DEI's objections to the Assignment were unreasonable, contrary to the parties' intent expressed in the Confirmation and not made in good faith.

28. Any condition of an Assignment was also excused because DEI anticipatorily breached and repudiated the Confirmation, including on or before December 15, 2009. DEI's

anticipatory breach and repudiation was complete and covered the entire performance to which DEI was bound under the Confirmation. As DEI admitted in an email on February 2, 2010 regarding the parties' earlier discussion of the draft Assignment, "It is moot since we are not selling our claim . . . ."

29. Seaport was damaged by DEI's breach, including, losing the opportunity to sell the Claim to another buyer at a profit, and/or losing the ability to collect any distribution that General Motors has made, will make or could have made on the Claim.

### COUNT I (Specific Performance)

30. Seaport repeats and realleges each allegation contained in paragraphs 1 through 29 as if fully set forth herein.

31. Seaport seeks specific performance of the Confirmation, requiring DEI to deliver and assign to Seaport its $3,252,706.89 Claim in the Bankruptcy Action.

32. Seaport and DEI entered into a binding contract, the November 18, 2009 Confirmation, for the sale of the full value of its Claim to Seaport.

33. Seaport duly performed, and has been at all times ready, willing and able to perform, its obligations under the contract.

34. DEI materially breached the terms of the Confirmation by refusing to assign its Claim to Seaport, by failing to close the transaction "as soon as practicable," by failing to deliver or execute an Assignment reasonably acceptable to Seaport and DEI, and by negotiating with General Motors to reduce or eliminate the Claim.

35. Defendant DEI expressly repudiated the Confirmation, including on or before December 15, 2009.

36. On information and belief, it is within DEI's power to perform its obligations.

37. Any unsatisfied conditions on which DEI's performance was conditioned were excused because DEI unreasonably interfered with and made impossible the satisfaction of those conditions. Any conditions were likewise excused because DEI repudiated the parties' agreement.

38. Seaport has been injured and is being injured by DEI's failure to perform its obligations under the Confirmation.

39. For DEI's breach of the parties' agreement, Seaport has no adequate remedy at law.

40. Therefore, Seaport is entitled to equitable relief of specific performance in the form of an order compelling DEI to perform its obligations under the Confirmation and assigning DEI's Claim to Seaport *nunc pro tunc* to December 15, 2009.

## COUNT II (Breach of Contract)

41. Seaport repeats and realleges each allegation contained in paragraphs 1 through 40 as if fully set forth herein.

42. Seaport and DEI entered into a binding contract for the sale of the full value of its Claim to Seaport, to wit the Confirmation.

43. Seaport duly performed, and was at all times ready, willing and able to perform, its obligations under the Confirmation.

44. DEI materially breached the terms of the Confirmation by refusing to assign its Claim to Seaport, by failing to close the transaction "as soon as practicable," by failing to attempt to deliver or execute an Assignment reasonably acceptable to Seaport and DEI, and by negotiating with General Motors to reduce or eliminate the Claim.

45. Defendant DEI expressly repudiated the Confirmation, including on or before December 15, 2009.

46. Any unsatisfied conditions on which DEI's performance was conditioned were excused because DEI unreasonably interfered with and made impossible the satisfaction of those conditions. Any conditions were likewise excused because DEI repudiated the parties' agreement.

47. By reason of DEI's breach, Seaport has been damaged in an amount to be determined at trial, but in no event less than $2,469,102.87.

48. Therefore, DEI is liable to Seaport for breach of contract and, as alternative relief, Seaport is entitled to an award of monetary damages.

## COUNT III (Breach of the Implied Covenant of Good Faith and Fair Dealing)

49. Seaport repeats and realleges each allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50. Seaport and DEI entered into a binding contract for the sale of the full value of its Claim to Seaport, to wit the Confirmation.

51. Seaport at all times acted in good faith in its performance of the Confirmation.

52. DEI acted in bad faith and unfairly to deprive Seaport of the Claim or to prevent Seaport from carrying out the closing. DEI's bad faith and unfair conduct includes, but is not limited to, the following: (i) DEI neglected for weeks to respond to the draft Assignment prepared by Seaport; (ii) DEI waited until the day of the Confirmation's closing deadline to provide numerous objections to Seaport's draft Assignment; (iii) DEI intentionally delayed and avoided delivering and executing an Assignment so that it could back out of the Confirmation and reduce its claim to appease General Motors; (iv) DEI otherwise prevented the parties from

-9-

closing the transaction "as soon as practicable," as set forth in the Confirmation; (v) DEI refused to provide Seaport with a proposed revision to the draft Assignment; (vi) DEI's objections to the Assignment were unreasonable and not made in good faith; (vii) DEI otherwise made execution and delivery of an Assignment impossible; and (viii) DEI negotiated with General Motors to reduce or eliminate the Claim that it had already sold, in full, to Seaport.

53. By its conduct, DEI deprived Seaport of the benefit of its bargain under the Confirmation and/or prevented Seaport from carrying out the terms of the Confirmation.

54. DEI's conduct was contrary to the intent of the parties as expressed in the Confirmation.

55. By reason of DEI's breach, Seaport has been damaged in an amount to be determined at trial, but in no event less than $2,469,102.87.

56. Therefore, DEI is therefore liable to Seaport for breach of the implied covenant of good faith and fair dealing.

## COUNT IV (Declaratory Relief)

57. Seaport repeats and realleges each allegation contained in paragraphs 1 through 58 as if fully set forth herein.

58. A real and justiciable controversy exists between Seaport and DEI in that (a) DEI contends that the Confirmation is not binding because the parties did not execute and deliver a reasonably acceptable Assignment of Claim Agreement; whereas (b) Seaport contends that the Confirmation is binding and any requirement of an Assignment of Claim Agreement is excused because DEI interfered with and rendered impossible the execution or delivery of an Assignment of Claim Agreement and/or because DEI anticipatorily breached and repudiated the Confirmation Agreement.

-10-

59. Seaport seeks a judgment declaring that the Confirmation is binding and that any conditions on DEI's performance are excused.

### PRAYER FOR RELIEF

WHEREFORE, Seaport demands judgment against DEI awarding Seaport the following relief:

(a) specific performance of the Confirmation and an order compelling DEI to deliver the Claim to Seaport;

(b) in the alternative, monetary damages in an amount to be determined at trial, but in no event less than $2,469,102.87;

(c) a judicial declaration that the Confirmation is binding, that any conditions on DEI's performance are excused;

(d) awarding Seaport its costs and disbursements for this action;

(e) awarding Seaport interest on any money judgment; and

(f) awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York.
February 25, 2010

Respectfully submitted,

MANATT PHELPS & PHILLIPS, LLP

By: /s/ Kimo S. Peluso
Ronald G. Blum
Kimo S. Peluso

7 Times Square
New York, NY 10036
(212) 790-4500

Attorneys for Plaintiff The Seaport Group LLC

20012386.3

-11-

EXHIBITS

A

# TheSeaportGroup

The Seaport Group, LLC
360 Madison Avenue 22nd Floor
New York NY 10017
T 212 616 7700 F 212 616 7733

## Trade Claim Trade Confirmation

**To:**   Dale Earnhardt, Inc.
Attention: Christian Chad Warpula, Executive Vice President & General Counsel
Phone No.: (704) 662-8926
Fax No.: (704) 663-7945
E-mail: cwarpula@dei-zone.com

**From:**   The Seaport Group LLC
360 Madison Ave, 22nd Floor
New York, NY 10017
Attention: Scott Friedberg
Phone: (212) 616-7728
Fax: (646) 786-4071
E-mail: sfriedberg@theseaportgroup.com

We are pleased to *confirm* the following transaction:

**Trade Date:**   November 18, 2009

**Seller:**   Dale Earnhardt, Inc

**Buyer:**   The Seaport Group LLC

**Debtor:**   Motors Liquidation Company (f/k/a General Motors Corporation)

**Bankruptcy Case:**   In re Motors Liquidation Company, et al., Case No. 09-50026 (REG) (jointly administered), filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

**Claims:**

1. Seller's valid and enforceable claims (Claim No.: 1649) against the Debtor in the amount of $2,419,373.56 ("Unsecured Claim Amount") arising from that certain executory contract referred to as Motorsports Team Agreement dated October 26, 2007 and as amended on February 3, 2009 between Seller and Debtor.

2. Seller's valid and enforceable claim (Claim No.: 1649) against the Debtor arising from contractual payments due and owed post-commencement of the Bankruptcy Case in the aggregate amount of $833,333.33 (the "Admin Claim Amount") and allowable as an administrative priority claim.

# TheSeaportGroup

The Seaport Group, LLC
360 Madison Avenue, 22nd Floor
New York NY 10017
T 212 616 7700 F 212 616 7733

| | |
|---|---|
| **Unsecured Claim Purchase Rate:** | 10% |
| **Admin Claim Purchase Rate:** | 10% (additional 55% if / when formally recognized by the Bankruptcy Court) |
| **Purchase Prices:** | Buyer shall pay to Seller a Purchase Price for the Unsecured Claim on the Settlement Date equal to Unsecured Claim Purchase Rate multiplied by the Unsecured Claim Amount. |
| | Buyer shall pay to Seller a Purchase Price for the Admin Claim on the Settlement Date equal to Admin Claim Purchase Rate multiplied by the Admin Claim Amount. If / when the Admin Claim is formally recognized by the Bankruptcy Court as an Administrative Priority claim an additional payment will be made by Buyer to Seller as defined in the Admin Claim Purchase Rate section above |
| **Form of Purchase:** | Assignment via Assignment of Claim Agreement. |
| **Settlement:** | Payment of the Purchase Prices shall be made by wire transfer in immediately available funds on the date of execution of the Assignment of Claim Agreement. |
| **Settlement Date:** | As soon as practicable, but no later than December 15th, 2009. |
| **Other Terms of Trade:** | Parties agree that this transaction shall also be subject to and contingent upon (i) Buyer's due diligence of the Claims and Seller's delivery to Buyer of any consents or lien releases as may be reasonably requested by Buyer and (ii) the execution and delivery of an Assignment of Claim Agreement reasonably acceptable to both Buyer and Seller. |
| | The Assignment of Claim Agreement shall contain a provision stating that in the event all or any part of the Claims is or becomes subject to an impairment or is disallowed, rejected, reduced or objected to, in whole or in part, (collectively, a "Disallowance"), Seller agrees to repay, on demand of Buyer, an amount equal to the amount of the respective Claim subject to the Disallowance multiplied by the applicable Purchase Rate, plus interest at 5% per annum from the date of the Assignment of Claim Agreement to the date of repayment. For |

**TheSeaportGroup**

The Seaport Group, LLC
360 Madison Avenue 22nd Floor
New York NY 10017
T 212 616 7700  F 212 616 7733

the sake of clarity, this Disallowance refers only to the amount and validity of the Allowed Claims, and *not* the distribution on account of the Allowed Claims.

Any and all payments or distributions made on account of the Claims from and after the Trade Date are for the benefit of Buyer.

Seller shall have the right, but not the obligation, in coordination with the Buyer, to contest any disallowance or rejection of its Claims. Buyer shall take no action without the prior consent of the Seller which results in the disallowance or reduction of the Claims, in whole or in part. If such disallowance or reduction is not resolved within 90 days from the date first objected to by Debtor, Buyer shall have the right to demand repayment of the Purchase Price plus interest to that point.

**Non-Reliance:**   Each of Buyer and Seller represents and warrants to the other that (i) it is a sophisticated buyer or seller (as the case may be) with respect to the transaction, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the Debtor's businesses and financial condition, and the Bankruptcy Case to make an informed decision regarding the transfer of the Claims, and (iii) it has independently and without reliance on the other party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into the transaction. Each of Buyer and Seller acknowledges that the other has not given it any investment advice or opinion on whether the transaction is prudent.

**Governing Law:**   This trade confirmation shall be governed by and construed in accordance with the laws of the State of New York.

**Binding Effect:**   This Trade Confirmation may be executed in multiple counterparts and such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier, facsimile or other form of electronic transmission of an executed counterpart of this Trade Confirmation shall be deemed to constitute due and sufficient delivery of such counterpart.

# TheSeaportGroup

The Seaport Group, LLC
360 Madison Avenue 22nd Floor
New York NY 10017
T 212 616 7700 F 212 616 7733

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Jay Sommer, at the following fax number: (212) 616-7733 or by email to jsommer@theseaportgroup.com.

DALE EARNHARDT, INC.
_[signature]_, as Seller
EVP & General Counsel

By: Dale Earnhardt, Inc.
Name: Christian Chad Warpula
Title: EVP & General Counsel
11/18/09

_[signature]_, as Buyer

By: The Seaport Group LLC
Name: ~~Jonathan Silverman~~ Steve Smith
Title: ~~General Counsel~~ Managing Member

# TheSeaportGroup

The Seaport Group, LLC
360 Madison Avenue 22nd Floor
New York NY 10017
T 212 616 7700  F 212 616 7733

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Jay Sommer, at the following fax number: (212) 616-7733 or by email to jsommer@theseaportgroup.com.

Dale Earnhardt, Inc.

BY: _____, as Seller
    EVP + General Counsel

By: Dale Earnhardt, Inc.
Name: Christian Chad Warpula
Title: EVP & General Counsel

_____, as Buyer

By: The Seaport Group LLC
Name: Steve Smith
Title: Managing Member