# Exhibit 3

## ASSIGNMENT OF CLAIM AND SETTLEMENT AGREEMENT

This Assignment of Claim and Settlement Agreement (this "Assignment and Settlement Agreement" or "Assignment") is entered into between Dale Earnhardt, Inc. and its successors and assigns ("Assignor"), a North Carolina corporation located at 1675 Dale Earnhardt Highway, No. 3, Mooresville, North Carolina 28115 and The Seaport Group LLC and its successors and assigns ("Assignee"), a Delaware limited liability company with an address at 360 Madison Avenue, New York, New York 10017 as of July 16, 2010. Each of Assignor and Assignee is a "Party" to this Assignment and Settlement Agreement, and Assignor and Assignee are collectively the "Parties."

WHEREAS, on or about November 18, 2009, Assignor and Assignee entered into a Trade Claim Confirmation;

WHEREAS, a dispute arose among the Parties regarding the November 18, 2009 Trade Claim Confirmation;

WHEREAS, on or about February 25, 2010, Assignee filed an action in United States District Court for the Southern District of New York, styled *The Seaport Group LLC v. Dale Earnhardt, Inc.*, No. 10-cv-1599 (the "Action");

WHEREAS, the Parties wish to resolve their dispute and to fully and finally settle the Action;

WHEREFORE, the Parties hereby agree as follows:

1.    Assignor for good and valuable consideration the sufficiency of which is hereby acknowledged, hereby, subject to the terms of this Assignment and Settlement Agreement, sells, transfers and assigns to Assignee, as of the date of this Assignment, all of Assignor's right, title and interest in and to, or arising under or in connection with, the claim of Assignor (the "Claim") against Motors Liquidation Company (f/k/a General Motors Corporation) (the "Debtor"), the debtor-in-possession in Case No. 09-50026 (the "Case") under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et. seq.) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") represented by the proof of claim filed by Assignor in the Case in the aggregate amount of $3,252,706.80, but which amount was incorrect due to a typographical error and which proof of claim was subsequently amended (prior to the date hereof) in the corrected amount of $3,031,180.00 (such proof of claim, as amended, the "Proof of Claim", the amount of the claim set forth in the amended Proof of Claim, the "Assigned Claim Amount"), including without limitation, (i) all of Assignor's right, title and interest in and to the Proof of Claim filed in respect of the Claim; (ii) all of Assignor's right, title and interest in said receivables, all agreements, instruments, invoices, purchase orders and other documents evidencing, or relating to the Claim (the "Documents"); (iii) all of Assignor's right to receive principal, interest, fees, expenses, damages, penalties and other amounts in respect of or in connection with the Claim; and (iv) all other claims, causes of action against the Debtor, its affiliates, any guarantor or other third party, together with voting and other rights and benefits arising from, under or relating to any of the foregoing receivables, including, without limitation, all of Assignor's rights to receive cash, securities, instruments and/or other property or

distributions issued in connection with any of the foregoing  or under the Bankruptcy Code (collectively, the "Assigned Claim"). The Claim includes all "Cure Amounts" as such term is defined in Section 365 of the Bankruptcy Code. For the avoidance of doubt and subject to the terms and conditions set forth herein, Assignee shall not assume, and Assignor shall retain, any and all obligation or liability under or in respect of the Assigned Claim existing on or prior to the date of this Assignment.

2.    As used herein, (a) a "Final Order" shall mean an order of a court which has not been reversed, stayed, modified, amended or vacated and as to which (i) any appeal taken, petition for certiorari or motion for rehearing or reconsideration that has been filed, has been finally determined or dismissed or (ii) the time to appeal, seek certiorari or move for reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reconsideration or rehearing has been timely filed; (b) "Schedule of Liabilities" shall mean the Schedule of Liabilities prepared and filed by the Debtor in the Case pursuant to Section 521 of the Bankruptcy Code in accordance with Rule 1007 of the Bankruptcy Rules, and (c) "Business Day" means any day that is not a Saturday, Sunday, or any other day on which commercial banks in New York, New York are authorized or required by law to be closed.

3.    On the Payment Date (as defined in Paragraph 4 below), in accordance with the wire transfer instructions set forth on Schedule A hereto, Assignee shall pay to Assignor an amount (the "Purchase Price") equal to the rate of cents per dollar set forth as the "Unsecured Purchase Rate" on Schedule B, multiplied by the amount of the Assigned Claim Amount currently allowed. Subject to Section 4 below, Assignor shall hold the Purchase Price. The wire transfer shall also include an additional five thousand dollars ($5,000) settlement payment, which shall not be included in the Purchase Price for purposes of this Agreement or included in any Repayment Amount as set forth herein. In addition, if the alleged administrative portion of the Assigned Claim of $833,333.33 is allowed in part or in full as an administrative Claim, Assignee will, within five (5) Business Days of official notification from the Debtor or its representatives that the administrative Claim is allowed and in accordance with the wire transfer instructions set forth on Schedule A hereto, pay to Assignor an amount (the "Additional Purchase Price") equal to the rate of cents per dollar set forth as the "Additional Administrative Purchase Rate" on Schedule B, multiplied by the amount of the allowed administrative Claim portion (the "Administrative Claim").

4.    Within two (2) Business Days of the execution and delivery of this Assignment, Assignee shall cause to be filed a Notice of Transfer, or similarly titled document, in the Bankruptcy Court.  For twenty (20) calendar days (such period, the "20 Day Period") commencing the day after the Notice of Transfer or similarly titled document appears on the docket of the Bankruptcy Court, Assignee shall hold and reserve the Purchase Price for payment hereunder. If during the 20 Day Period, Deutsche Bank, AG or any of its affiliates, assignees or designees (collectively, "Deutsche Bank") files or serves a notice with the Bankruptcy Court objecting to the transfer, then Assignee may elect in a written notice to Assignor within two (2) calendar days after such 20 Day Period to not pay the Purchase Price to Assignor and to terminate and declare this Assignment and Settlement Agreement null and void. Further, in the event during the 20 Day Period Deutsche Bank does file or serve a claim against Assignor objecting to the transfer, then Assignor may elect in a written notice to Assignee within two (2) calendar days after such 20 Day Period to terminate and declare this Assignment and Settlement

2

Agreement null and void, in which event Assignee shall be relieved of its obligation to pay the Purchase Price to Assignor hereunder. For the avoidance of doubt, any termination of this Assignment and Settlement Agreement shall have no effect on the Action. In the event that neither Assignor, nor Assignee has notified the other in writing of termination of this Assignment and Settlement Agreement in accordance with the foregoing within two (2) calendar days of the end of the 20 Day Period Assignee shall immediately pay the Purchase Price to Assignor (the "Payment Date"), which payment shall then be subject to all of the provisions of this Assignment and Settlement Agreement.

5.     Assignor represents and warrants to Assignee that: (i) it is duly authorized and empowered to execute and perform this Assignment; (ii) this Assignment constitutes a valid, legal and binding agreement of Assignor, enforceable against it in accordance with its terms; (iii) Assignor is the sole owner of and has good legal and beneficial title to the Assigned Claim, free and clear of all liens, claims, security interests or encumbrances of any kind or nature whatsoever, including without limitation, pursuant to any factoring or other financing agreement; (iv) Assignor has obtained and delivered to Assignee releases (in form and substance satisfactory to Assignee) by any secured party of any security interest in the Assigned Claim held by such party; (v) Assignor has not previously sold or assigned the Assigned Claim, in whole or in part, to any party; (vi) neither the execution, delivery or performance of this Assignment and Settlement Agreement nor the consummation of the transactions contemplated hereby, will violate any law, rule, regulation, order, agreement, or instrument affecting the Assignor or the Assigned Claim; (vii) the Assigned Claim is a valid, allowable, undisputed, noncontingent, liquidated claim in the Case in the amount of $3,031,180.00; (viii) no objections have been actually received by Assignor or threatened to Assignor in respect of the Assigned Claim; (ix) no notice of any avoidance action under Section 547 of the Bankruptcy Code has been actually received by Assignor and no such actions have been threatened to Assignor in respect of the Assigned Claim, or any portion thereof; (x) no payment has been received by or on behalf of Assignor in full or partial satisfaction of the Claim; (xi) Assignor has not engaged in any acts or conduct that might result in Assignee receiving proportionately less in payments or distributions under, or less favorable treatment (including the timing of payments or distributions) for, the Assigned Claim than other general unsecured creditors holding the same type or class of claims; (xii) Assignor is not an insider within the meaning of Section 101(31) of the Bankruptcy Code, and it is not now nor has it ever been a member of any creditors' committee appointed in the Case; (xiii) at Assignee's expense, Assignor agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as Assignee may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Assignment and Settlement Agreement; (xiv) Assignor has delivered to Assignee true, correct and complete copies of the Documents; and (xv) Assignor has duly and timely filed a Proof of Claim in the Case; provided, that Assignor thereafter amended the Proof of Claim as set forth in Section 1 above.

6.     Assignee represents and warrants that (i) it is duly authorized and empowered to execute and perform this Assignment; (ii) this Assignment constitutes a valid, legal and binding agreement of Assignee, enforceable against it in accordance with its terms; (iii) it has fully and finally conducted all due diligence investigation of the Assigned Claim, Documents, and Assigned Claim Amount prior to the effective date hereof, and hereby waives any right to reject,

3

dispute, object to, offset or otherwise raise defenses to its obligations hereunder based on its review of same after the effective date hereof.

       7.      (a)    Notwithstanding the foregoing, none of the representations and warranties contained in this Sections 5 and 6 shall be deemed to have been breached as a result of (i) the existence or threat of any legal proceedings or claims by Deutsche Bank, its designees, assignees, transferees, or affiliates, alleging that a binding agreement in respect of the sale of all or any portion of the Claim exists or existed between Assignor and any such party, making any other similar allegation, (ii) any testimony presented or evidence associated with any such proceedings, claims, or allegations, and/or (iii) an order or finding by any court that such binding agreement existed (collectively, "Third Party Broker Claims").

           (b)    In the event of any Third Party Broker Claims, Assignee shall have the option, at its sole discretion, to treat the assertion or existence of any Third Party Broker Claims as a Disallowance of the Assigned Claim for purposes of the repayment remedies set forth in Section 9, below.

           (c)    In the event that all or any part of the Assigned Claim for which Assignee has paid Assignor pursuant to this Assignment of Claim is subject to a Final Order requiring specific performance to transfer any or all of the Assigned Claim to another party with respect to any Third Party Broker Claim (an "Order for Specific Performance"), then upon an Order for Specific Performance, the Assigned Claim subject to such Order for Specific Performance shall be a Disallowance for purposes of the repayment remedies set forth in Section 9, below.

       8.      Assignor is aware that the consideration being paid by Assignee hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Assigned Claim pursuant to the Bankruptcy Code or otherwise. Assignor represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale of the Assigned Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate, made its own decision to enter into this Assignment and Settlement Agreement. Assignor and Assignee may each have access to or possess confidential material information regarding the Debtor not known to the other, including, without limitation, information received from the Debtor on a confidential basis or information received on a privileged basis from legal counsel and financial advisors representing the Debtor. Each party hereby waives any claim against the other party deriving from or relating to any assertion that they did not have access to the same confidential information. Assignor acknowledges that Assignee may receive on a current basis material non-public information about Debtor, which is not known by Assignor. Notwithstanding Assignee not disclosing such confidential information to Assignor, Assignor desires to enter into this Assignment and Assignee shall have no liability whatsoever to Assignor based on Assignee's use, knowledge, possession or non-disclosure of such information and Assignor releases Assignee from liability therefrom.

       9.      (a)    In the event that all or any part of the Assigned Claim for which Assignee has paid Assignor pursuant to this Assignment is disallowed, avoided, subordinated, reduced, objected to, or otherwise impaired, in whole or in part, or if an order is entered in the Court disapproving the transfer of all or any part of Claim, or if the Court does not substitute Assignee

4

for Assignor as the holder of the Claim or if payments or distributions on the Claim are not made at the same time and in the same manner as any other claim of the same class, for any reason whatsoever or if any or all of the Claim is allowed against any debtor or entity other than the Debtor (any such event or occurrence, a "Disallowance"), Assignor agrees to repay, five (5) Business Days from the request of and at the option of Assignee, an amount equal to (x)(A) that portion of the Assigned Claim subject to the Disallowance (the "Disallowed Claim") multiplied by (B) the applicable Purchase Rate, plus (y) interest on such amount at five percent (5%) per annum from the applicable date or dates of Assignee's payment to the date of repayment, excluding any time period between Disallowance and request of repayment by Assignee (the "Repayment Amount"). If any action is taken that may have the result of causing the Disallowance of the Claim, in whole or in part (the "Disallowance Action") and Assignor asserts its right (pursuant to Section 12 below) to contest the Disallowance Action, then Assignee agrees to delay any demand for the Repayment Amount for a period of 90 days after such Disallowance Action is commenced. If the Disallowance Action is NOT resolved within 90 days of the commencement of such action, Assignee shall have the sole option to demand a termination of this Assignment and shall be entitled to restitution of the Purchase Price plus five percent (5%) per annum. Upon Assignee's receipt of the Repayment Amount, (i) Assignor and Assignee shall release each other of all and any obligations or liabilities regarding this Assignment, and (ii) Assignee hereby agrees that the Assigned Claim, or such portion thereof, subject to the Disallowance is immediately, fully and irrevocably assigned back to Assignor (the "Reassigned Claim"), and Assignee shall take all such prompt other action necessary to effectuate such reassignment back to Assignor. All rights herein granted with respect to the Assigned Claim shall immediately terminate with respect to the Reassigned Claim on the date of the Repayment Amount. For the sake of clarity, the term "Disallowance" refers only to the disallowance of the amount and validity of the Assigned Claim, and not the amount of distribution or payout with regard to the allowed Assigned Claim even if less than the face amount of the Assigned Claim Amount.

(b)    For the avoidance of doubt, in the event that the portion of the Assigned Claim that is alleged to be administrative is re-classified as general unsecured, such re-classification shall not constitute a Disallowance.

10.    In the event of a Disallowance or any breach of this Assignment and Settlement Agreement, Assignee acknowledges and agrees that its sole and exclusive remedies, in lieu of all other rights and remedies at law, in equity or otherwise, will be specific performance of Assignor's obligations under this Assignment and Settlement Agreement or, at the option of assignee, as a liquidated damage and not as a penalty, the repayment of the Repayment Amount. IN NO EVENT WILL A PARTY, OR ITS RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, ASSIGNS OR SUCCESSORS-IN-INTEREST BE LIABLE TO ANY OTHER PARTY FOR ANY LOSS OF PROFITS, OR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

11.    Assignor agrees that in the event Assignor shall receive payments or distributions or notices with respect to or relating to the Assigned Claim after the date hereof, Assignor shall accept the same as Assignee's agent and shall hold the same in trust on behalf of and for the sole

benefit of Assignee, and shall promptly deliver the same forthwith to Assignee in the same form received (free of any withholding, set-off, claim or deduction of any kind, except to the extent Assignee has not paid any monies due and owing to Assignor, in which event Assignor can offset such amounts due to it against the amounts due under this Section 11 to Assignee or withhold same until Assignee has paid such amounts due to Assignor), within five (5) Business Days in the case of cash and within ten (10) Business Days in the case of securities, which are in good deliverable form, with the endorsement of Assignor (without recourse, representations or warranties except as set forth herein) when necessary or appropriate. To the extent that the payment distribution made by the Debtor on account of the Assigned Claim is in the form of securities (the "Securities Distribution") and to the extent such Securities Distribution is issued in the name of Assignor, then within two (2) Business Days of Assignor's receipt of such Securities Distribution, Assignor shall, at Assignee's expense, take whatever steps are reasonably necessary to have such Securities Distribution reissued to or the ownership thereof transferred to Assignee.

12.    Assignor hereby irrevocably appoints Assignee with full power of substitution as its true and lawful attorney and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable necessary to enforce the Assigned Claim and the Assignor's rights thereunder or related thereto pursuant to this Assignment and Settlement Agreement. Assignor agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Assignee. Assignee shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Assigned Claim or otherwise in the Case; provided, that Assignee shall take no affirmative action to impair or cause a Disallowance of the Assigned Claim, in whole or in part. In the event of a Disallowance, Assignor shall assist Assignee (at Assignee's expense) in the defense of the Disallowed Claim. Assignor agrees at Assignee's expense to execute, acknowledge and deliver all such further certificates, instruments and other documents, and if requested by Assignee prepare a proof of claim, and to take all such further action as may be reasonably necessary or appropriate to effect assignment of the Assigned Claim and all interests therein to Assignee, including without limitation the "Evidence of Transfer of Claim" attached as Exhibit A. Notwithstanding the foregoing, Assignor shall have the right, in coordination with Assignee, to contest any Disallowance of the Assigned Claim.

13.    If this agreement has not been terminated pursuant to Paragraph 4, then within three (3) business days after the Payment Date, the Parties shall, through their respective counsel, execute a Stipulation of Dismissal of the Action, with prejudice, in the form attached hereto as Exhibit B. Thereafter, Assignor, or Assignor's counsel, shall immediately file Stipulation of Dismissal of the Action. Pending the effectiveness of such dismissal, and thereafter, the Parties shall forbear from asserting, commencing, filing, prosecuting or otherwise attempting to recover any relief in the Action, other than as ordered by the court or as necessary to avoid default.

14.    As of the date of this Assignment and Settlement Agreement, and without the need for any further act by any Party, and without a separate release being executed, (i) Assignor shall have, and shall be deemed to have fully, finally and forever released, waived relinquished and discharged Assignee from all Released/Waived Actions (as defined below) that it, whether directly, representatively, derivatively or in any other capacity, ever had, now has, or hereafter

6

can, shall or may have against Assignee; and (ii) Assignee shall have, and shall be deemed to have fully, finally and forever released, waived relinquished and discharged Assignor from all Released/Waived Actions that it, whether directly, representatively, derivatively or in any other capacity, ever had, now have, or hereafter can, shall or may have against Assignor.

(a)    "Released/Waived Actions" means all claims, rights, causes of action, notes, debts, accounts payable, monies due, rights of reimbursement or contribution, demands, judgments, suits, matters and issues, known or unknown, whether individual, class, derivative, representative, legal, equitable, or any other type, or in any other capacity, of a releasing party, arising or accruing from the beginning of the world to the date of this Assignment and Settlement Agreement, whether due now or due in the future, whether known or unknown, including claims that may be incapable of discovery until hereafter, that arise out of or relate to the Assigned Claim or that were asserted or could have been asserted in the Action, including in any counterclaims that could have been asserted by Assignor.

(b)    Notwithstanding anything above to the contrary, the Released/Waived Actions shall not include a Party's covenants, obligations, representations, commitments and duties under this Assignment and Settlement Agreement or any action based on any breach of this Assignment and Settlement Agreement.

(c)    Each reference to a Party as a releasor or releasee shall include his or its past and present related or affiliated entities or joint ventures, successors and assigns, and their respective employees, officers, directors, agents and attorneys.

(d)    Each Party hereby expressly agrees that the above release may include claims that the Party does not know or does not suspect exist, including claims that, if known by him or it, would have materially affected his or its willingness to execute this Settlement and Assignment Agreement, and each Party expressly waives his or its rights under any common law or statutory law or rule inconsistent with such release of unknown claims.

15.    All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and the purchase and sale of the Assigned Claim and the payment of the Purchase Price, but shall expire on the earlier of (i) the date of Repayment, and (ii) allowance of the Assigned Claim. Notwithstanding anything to the contrary, the releases set forth in Section 14, above, shall survive the expiration of this Assignment and Settlement Agreement. This Assignment shall inure to the benefit of, be binding upon and enforceable by the parties hereto and their respective successors and assigns. This Assignment and Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles.

16.    EACH PARTY TO THIS ASSIGNMENT AND SETTLEMENT AGREEMENT HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK, COUNTY OF NEW YORK AND OF THE BANKRUPTCY COURT IN ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISION OF THIS ASSIGNMENT AND SETTLEMENT AGREEMENT OR OF ANY OTHER AGREEMENT OR DOCUMENT DELIVERED IN CONNECTION WITH THIS ASSIGNMENT AND SETTLEMENT

AGREEMENT, AND ALSO HEREBY IRREVOCABLY WAIVES ANY DEFENSE OF IMPROPER VENUE, FORUM NON CONVENIENS OR LACK OF PERSONAL JURISDICTION TO ANY SUCH ACTION BROUGHT IN SUCH COURTS. EACH PARTY FURTHER IRREVOCABLY AGREES THAT ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISIONS OF THIS ASSIGNMENT AND SETTLEMENT AGREEMENT WILL BE BROUGHT ONLY IN SUCH COURTS AND EACH PARTY WAIVES ITS RIGHT TO TRIAL BY JURY.

17.    Assignee hereby agrees to give Assignor prompt notice of any notices, disputes, objections, or hearings related to the Assigned Claim. Any inadvertent failure by Assignee to provide such notice shall not constitute a breach of this Assignment. Assignor stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Assignee herein as the valid owner of the Assigned Claim.

18.    This Assignment and Settlement Agreement shall constitute the complete agreement of the parties hereto with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated into this Assignment and Settlement Agreement. This Assignment and Settlement Agreement cannot be amended, modified, or supplemented except by an instrument in writing executed by both parties hereto. By executing this Assignment and Settlement Agreement, the Parties represent that, except for those statements, representations, and promises contained in this Assignment and Settlement Agreement, neither they nor the attorneys acting on their behalf have made or relied upon any assumption, statement, representation, omission or promise in entering into this Assignment and Settlement Agreement.

19.    This Assignment and Settlement Agreement may be executed by telecopy in multiple counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier of this Assignment and Settlement Agreement shall be deemed to constitute due and sufficient delivery of such counterpart. Each fully executed counterpart of this Assignment and Settlement Agreement shall be deemed to be a duplicate original.

20.    It is expressly understood and agreed that this Assignment and Settlement Agreement shall not be construed as an admission of wrongdoing, or an admission as to any of the factual allegations made in the Action, by the Parties or anyone else, and each of the Parties expressly denies that it has engaged in any wrongdoing, negligence, illegal act or tortious conduct of any type or nature.

21.    Assignor and Assignee agree to maintain the confidentiality of this Assignment and Settlement Agreement, including the form and structure of the within agreement and any drafts thereof, including but not limited to maintaining such confidentiality with respect to Debtor, except to the extent required by applicable laws, regulations, or rules of any stock exchange, or by the order of any court; provided that either party may disclose this Assignment and the transactions contemplated hereby to permitted assignees hereunder; provided further, either party may disclose this Assignment and the transactions contemplated hereby to permitted

8

assignees hereunder, or to their retained legal and other professional consultants, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein.

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment and Settlement Agreement by its duly authorized representative dated as of July *16*, 2010.

ASSIGNOR

Dale Earnhardt, Inc.

By: _____
Name: *Jeffrey Steiner*
Title: *EVP & General Manager*

ASSIGNEE:

The Seaport Group LLC

By: _____
Name:
Title:        Jonathan Silverman        *7/16/10*
General Counsel

9

## SCHEDULE A TO
## ASSIGNMENT OF CLAIM

### Payment and Delivery Instructions

To Assignor:

    Notices and Deliveries:

    Dale Earnhardt, Inc.
    1675 Dale Earnhardt Highway #3
    Mooresville, NC  28115

    Attention: Jeffrey P. Steiner
    Phone: 704-662-8003
    Fax: 704-663-7945
    jsteiner@dei-zone.com

    Wire Transfer Instructions:

    Bank – Bank of America
    Bank Address – New York, NY
    Bank Telephone No. – 617-434-4425
    Account name – Mintz Levin Cohn Ferris Glovsky and Popeo, PC IOLTA Account
    Account number – 000053466888
    Routing number – 026009593
    Reference – Francis J. Earley, internal client-matter: 41190-001
    Contact Address – Linda Shea, Finance Dept., Mintz, Levin, Cohn, Ferris, Glovsky and
    Popeo, P.C., One Financial Center, Boston, MA 02111
    Contact Telephone – 617-348-4817


To Assignee:

    Notices and Deliveries:

    The Seaport Group LLC
    360 Madison Avenue, 22nd Floor
    New York, NY  10017

    Attention: Jonathan R. Silverman
    Phone: 212-616-7713
    email: jsilverman@theseaportgroup.com

10

## SCHEDULE B TO
## ASSIGNMENT OF CLAIM

### Purchase Rate

Unsecured Purchase Rate:

10%


Additional Administrative Purchase Rate:

55%

11

## EXHIBIT A TO
## ASSIGNMENT OF CLAIM

## EVIDENCE OF TRANSFER OF CLAIM

## TO: THE DEBTOR AND THE BANKRUPTCY COURT

For value received, the adequacy and sufficiency of which are hereby acknowledged, Dale Earnhardt, Inc. ("Assignor") hereby unconditionally and irrevocably sells, transfers and assigns to The Seaport Group LLC ("Assignee") all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, claims in the aggregate amount of $3,031,180.00 (the "Assigned Claim"), against Motors Liquidation Company (f/k/a General Motors Corporation) ("Debtor"), the debtor-in-possession in Case No. 09-50026 (the "Case") under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et. seq.) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any and all proofs of claim filed by Assignor with the Bankruptcy Court in respect of the foregoing claim.

Assignor hereby waives any objection to the transfer of the Assigned Claim to Assignee on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing claim and recognizing the Assignee as the sole owner and holder of the Assigned Claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Assigned Claim, and all payments or distributions of money or property in respect of claim, shall be delivered or made to the Assignee.

IN WITNESS WHEREOF, this Evidence of Transfer of Claim is executed on July __, 2010.

By: _____

Name of person signing _____

Title of person signing _____

12

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SEAPORT GROUP LLC, | Case No. 10-cv-1599 |
| Plaintiff, | ECF CASE |
| -against- | STIPULATION OF DISMISSAL |
| DALE EARNHARDT, INC., | |
| Defendant. | |

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, Plaintiff The Seaport Group LLC and Defendant Dale Earnhardt, Inc., by their undersigned counsel, hereby stipulate and agree that the above action, including all claims and counterclaims asserted therein, is dismissed with prejudice in its entirety, with each party to bear its own costs, attorney fees and expenses except that nothing herein shall affect the parties' rights to enforce the terms of the Assignment of Claim and Settlement Agreement, dated July __, 2010.

Dated: July __, 2010

Jointly submitted and agreed to by:
MANATT, PHELPS & PHILLIPS, LLP

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By:_____
    Ronald G. Blum
    Kimo S. Peluso
7 Times Square
New York, New York 10036

By:_____
    Dominic Picca
    Frank Earley
666 Third Avenue
New York, New York 10017

Attorneys for Plaintiff The Seaport
Group LLC

Attorneys for Defendant Dale Earnhardt, Inc.

4973961v.1

13