# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO
LAWRENCE S. BADER
BARRY A. BOHRER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
STEPHEN M. JURIS
JUDITH L. MOGUL
ROBERT G. MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
JOHN J. TIGUE, JR.
BARBARA L. TRENCHER
CYRUS R. VANCE, JR.
RICHARD D. WEINBERG

*ALSO ADMITTED IN CALIFORNIA AND WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

565 FIFTH AVENUE
NEW YORK, N.Y. 10017

TELEPHONE
(212) 856-9600

www.maglaw.com

FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL
(212) 880-9475
sjuris@maglaw.com

COUNSEL
CHRISTOPHER J. MORVILLO
E. SCOTT MORVILLO
GREGORY MORVILLO

SENIOR ATTORNEY
THOMAS M. KEANE

MICHAEL C. SILBERBERG
1940-2002

September 14, 2010

**By ECF and Hand Delivery**

Honorable Robert E. Gerber
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

      Re:    <u>In re Motors Liquidation Company, et al., Case No. 09-50026 (REG)</u>

Dear Judge Gerber:

      We are attorneys for non-parties Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, the Celotex Asbestos Settlement Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust, the United States Gypsum Asbestos Personal Injury Settlement Trust, and the Delaware Claims Processing Facility ("DCPF") in the above-captioned matter. I write with respect to your Honor's Order, dated August 24, 2010 (the "Order"), regarding the production of claims information submitted by GM mesothelioma claimants to multiple Section 524(g) asbestos settlement trusts.

      Specifically, I write to advise your Honor regarding our views on the outstanding dispute between the Official Committee of Unsecured Creditors ("UCC") and the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims ("ACC") regarding the "Anonymity Protocol" contemplated by paragraphs 8-9 of the Order and your Honor's comments at the parties' August 9th oral argument. We join in the ACC's request for a conference to resolve that dispute, the outcome of which ultimately will impact the interests of the individual trust claimants. The trusts and DCPF continue to believe that the dual objectives of anonymity and claims estimation can readily be accomplished in an expeditious and cost-conscious manner. To this end, the trusts and DCPF stand ready to work with the ACC and UCC to achieve a positive outcome.

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Robert E. Gerber
September 14, 2010
Page 2 of 4

### The Order and the "Anonymity Protocol"

Pursuant to your Honor's Order, on August 27th the UCC supplied the various trusts and DCPF (through counsel) with a dataset reflecting various items of personally identifiable information relating to GM mesothelioma claimants. This information included names, social security numbers, and dates of birth, although for some claimants this information was not coextensive.

Following receipt of this information, the DCPF staff undertook to analyze and match the data supplied by the UCC against the trusts' databases. This process is well underway, and the trusts are preparing for a production of a dataset reflecting claim-related information for more than 5000 distinct GM mesothelioma claimants who were identified using the information supplied by the UCC. My clients are in the process of refining and finalizing the matching process, but we do not expect this process to occasion any delay in production if and when subpoenas ultimately are issued in accordance with your Honor's Order.

Consistent with the ACC's Notice filed earlier today pursuant to paragraph 8 of the Order, however, we likewise believe that the UCC has unreasonably refused to agree to the various anonymity protocols proposed by the ACC over the past few weeks. The UCC denominated its correspondence regarding the parties' negotiations as confidential "settlement" material. As a result, we do not revisit the specific content of those communications in this letter. However, the Court should know that the ACC and the trusts made multiple proposals to the UCC. Each of these proposals reflected modifications designed to respond to concerns expressed by the UCC. By contrast, the UCC made a single proposal that would not have materially changed any of the information made available to its experts or offered any anonymity protection whatsoever.

Specifically, the ACC offered the UCC three iterations of an anonymity protocol, all of which would be acceptable to the above-referenced trusts and the DCPF. These included the following two principal proposals:

(1) A protocol under which the trusts would produce their data to a neutral third-party capable of merging the trusts' data with any claimant data supplied by GM and the UCC's expert (Bates White), after which the neutral would provide all parties with aggregate claims information and statistical data in response to queries by the parties' experts; and

(2) A protocol under which a neutral third-party would merge the same data as above, but would thereafter return the merged dataset to the parties' experts after "anonymizing" the dataset by removing or redacting fields containing names, street addresses (but not state), social security numbers, and other personally

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Robert E. Gerber
September 14, 2010
Page 3 of 4

identifiable information not needed to analyze the data in the aggregate for claims estimation purposes.

While the trusts and DCPF would have accepted any of these proposals, they were -- and continue to be -- willing to meet the UCC's concerns.

Each of these proposals of course has its advantages and disadvantages, but taken together they provide a framework for this issue to be resolved as a matter of compromise. For example, the strongest anonymity protection would be provided by the first listed approach, since all queries for information would be made directly to the neutral and framed in the aggregate. This approach also has the virtue of approximating the kind of aggregate statistical effort, or "statistical abstract," that your Honor appeared to contemplate at oral argument on August 9th. See Tr. at 36, 41-42, 71, 101-02. However, because this approach would not allow the parties' experts to work directly with the data, other proposed protocols have been offered by the ACC in the interests of compromise. For example, the second approach identified above would allow the parties' experts to work directly with a dataset that merges the trusts' data production with GM or other data regarding the same identifiable GM claimants, while still stripping out personally identifiable information. This approach offers less absolute anonymity, but this is something that the trusts (along with the ACC) would accept in the interests of compromise.

The trusts, like the ACC, also are open to a dialogue regarding which particular data fields are necessary to the parties' estimation analysis and which data fields could be redacted or removed by the neutral in the interests of anonymity. The Trusts likewise are not insisting upon a particular third-party neutral, although we believe the firm proposed by the ACC, Alvarez & Marsal, would be more than capable of serving in that capacity. Unfortunately, the UCC has indicated that none of these approaches is acceptable. And the only alternative advanced to-date by the UCC -- which consists of having Bates White maintain claimant names and other personally identifiable information in a separate table linked to the rest of the information supplied by the trusts -- is effectively no "anonymity" protocol at all.

We continue to believe that there is room for a mutually acceptable resolution that will enable the UCC to make use of this information while simultaneously rendering the data "anonymous" at the individual claimant level. As your Honor recognized at oral argument, that is a resolution worth pursuing and one which would benefit from your Honor's intervention.

Respectfully,

Stephen M. Juris

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Robert E. Gerber
September 14, 2010
Page 4 of 4

Copies (by ECF and First-Class Mail):

Diana Adams, Esq.
Philip Bentley, Esq.
Robert Brousseau, Esq.
Lawrence S. Buonomo, Esq.
Michael J. Edelman, Esq.
Sander Esserman, Esq.
Elihu Inselbuch, Esq.
David S. Jones, Esq.
Stephen Karotkin, Esq.
Natalie Kuehler, Esq.
Joseph Samarias, Esq.
John J. Rapsiardi, Esq.
Michael L. Schein, Esq.
Ted Stenger, Esq.
Trevor Swett III, Esq.
Rita C. Tobin, Esq.
James P. Wehner, Esq.