Hearing Date and Time:  September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time:  September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
:
In re:                                                         :    Chapter 11
                                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,  :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,       :    (Jointly Administered)
                                                               :
                          Debtors.    :    Honorable Robert E. Gerber
                                                               :
--------------------------------------------------------- x

**FEE EXAMINER'S PRELIMINARY REPORT ON THE THIRD**
**INTERIM FEE APPLICATION OF BROWNFIELD PARTNERS, LLC**

**TO:    THE HONORABLE ROBERT E. GERBER**
        **UNITED STATES BANKRUPTCY JUDGE**

       The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Preliminary Report* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Third Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period from February 1, 2010 through May 31, 2010* [Docket No. 6541] (the "**Third Fee Application**").

With this *Preliminary Report*, the Fee Examiner summarizes his initial analysis of the Third Fee Application, which requests a total of $431,329.27, but makes no concurrent recommendations in light of his negotiations with Brownfield Partners, LLC ("**Brownfield**"). Instead, Brownfield has agreed the Third Fee Application will remain subject to review and recommendations by the Fee Examiner after Brownfield provides its supplemental response. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

In general, the Third Fee Application appears substantively sound. Nonetheless, after reviewing the Third Fee Application, counsel for the Fee Examiner raised preliminary observations with Brownfield by letter dated September 3, 2010. Thereafter, the parties agreed to adjourn the hearing on the Third Fee Application to allow Brownfield time to compile additional supporting documentation. As such, Brownfield and the Fee Examiner agreed to a *Stipulation and Order for Adjournment of September 24, 2010 Hearing on Third Interim Fee Application of Brownfield Partners, LLC* [Docket No. 6951] (the "**Stipulated Adjournment**").

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or not long after—year-end.

3. On November 16, 2009, Brownfield submitted its *First Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period from June 1, 2009 through September 30, 2009* [Docket No. 4457] (the "**First Fee Application**") seeking fees and expenses in the amount of $230,209.55.

4. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Preliminary Report on the First Interim Fee Application of Brownfield Partners, LLC* [Docket No. 5565]. That report is incorporated by reference.

5. On March 17, 2010, Brownfield filed its *Second Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period from October 1, 2009 through January 31, 2010* [Docket No. 5291] (the "**Second Fee Application**"), seeking fees in the amount of $381,757.40 and expenses in the amount of $27,480.81, for total requested compensation of $409,238.21.

6. On March 19, 2010, the Court entered the *Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5313] (the "**Authorization to Amend**"), approving a fee cap increase from $200,000.00 to $1,100,000.00. On June 9, 2010, the Court entered a *Supplemental Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5980], which authorized an increase in Brownfield's hourly rates.

7. On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to First and Second Interim Fee Applications of Brownfield*

3

*Partners, LLC* [Docket No. 6084] (the "**Objection**"), identifying $2,914.31 in fees and expenses in connection with the First Fee Application and $12,421.06 in fees and expenses in connection with the Second Fee Application that were objectionable. That report and statement is incorporated by reference.

8. On July 6, 2010, this Court issued an oral ruling that granted Brownfield's First and Second Fee Applications in part but required a holdback of 10 percent of Brownfield's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the applications submitted by Brownfield. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to Brownfield of $584,493.40 for fees (which included the 10 percent holdback) and $24,849.50 for expenses.

9. On August 5, 2010, Brownfield filed its Third Fee Application, seeking fees in the amount of $416,398.80 and expenses in the amount of $14,930.47, for total requested compensation of $431,329.27.

10. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Brownfield reports it has previously submitted monthly statements and received payments from the Debtors totaling

4

$306,025.69 for the period covered by the Third Fee Application, consisting of approximately 80 percent of requested fees for the months of February, March, and April 2010, and 100 percent of requested expenses, s*ee* Third Fee Application, ¶ 14, and has an outstanding request for $125,303.58 that remains unpaid in connection with the Third Fee Application. *Id*. at ¶ 15.

11.     By correspondence dated September 3, 2010, counsel to the Fee Examiner requested supplemental information from Brownfield as part of its review of specific matters in the Third Fee Application. The supplemental information requested included:

   A.   Additional detail for vague time entries;

   B.   Explanations of administrative or clerical tasks;

   C.   Clarification of billing for non-working travel;

   D.   Breakdown of block billed time entries; and

   E.   Input on compensation issues and expenses.

## APPLICABLE STANDARDS

12.     The Third Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, on July 28, 2010, the Fee Examiner provided all of the

5

professionals in this proceeding with a draft memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

13. **Project Staffing**. Services provided by Brownfield have been provided by five job titles at five billing rates: Principal—$330.00; Partner—$300.00; Senior Associate—$264.00; Planner—$198.00; and Administrative—$66.00. Approximately 73 percent of the hours billed on this project were at the highest two billing rates. In addition, nearly 43 percent of the hours billed were at the Principal rate. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with work principally performed at the lowest appropriate billing rate.

*Brownfield, a boutique firm consisting of three partners, an associate, and minimal part-time non-professional support staff, has demonstrated that its staffing is limited to the personnel employed by the firm, and the services provided by Mr. McMurtry, a principal, that were specifically requested by the Debtors. Staffing is appears appropriate based on the specialized services provided.*

*Suggested disallowance: None.*

14. **Vague Time Entries**. The Fee Examiner has identified specific billing entries, totaling $13,234.20, that inadequately describe the communications involved or vaguely describe the completed tasks.

*Brownfield has not yet provided a substantive response.*

15. **Clerical and Administrative Tasks**. The Fee Examiner has identified charges in the amount of $12,472.20, that appear to be administrative or clerical tasks that might more appropriately have been absorbed as overhead.

*Brownfield has not yet provided a substantive response.*

16. **Block Billing**. Block billing is prohibited by the UST Guidelines. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent

6

on each discrete task.  The Fee Examiner identified entries by Brownfield professionals that do not comply with this guideline totaling $28,512.60.

*Brownfield has not yet provided a substantive response.*

17.     **Travel Time**.  Non-working travel time will be compensable at 50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted).  The Advisories have requested that travel time be itemized separately.  However, a few time entries in the Third Fee Application appear to reflect total travel time—without the 50 percent reduction noted on the other entries.

18.     **Services Provided**.  Continued services have been provided by Brownfield relating to insurance issues during the third interim fee period.

*The Fee Examiner will defer any evaluation of the expenditure of time in connection with environmental insurance issues until the results of the services are ascertainable.*

19.     **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**.  Brownfield reports 111.9 billable hours, representing $20,701.99 in fees, billed for all fee matters including retention matters, the preparation of Brownfield's monthly fee statements and fee applications, and its communications with the Fee Examiner.

20.     This Court has established that some billing and fee application-related activities are compensable; others not.

> Drafting the narrative that is part of any fee app and preparation of the application itself and tables and proposed orders that accompany the application or follow it are activities that are unique to the bankruptcy process and are plainly compensable.

Tr. 07-06-2010 at 8:14-18.

[P]reparing timesheets in the first instance and preparing a bill for the client are services that are required for any client, bankruptcy or non-bankruptcy, and are plainly not compensable.

….

While it's also correct that firms should ensure that their timekeeping practice keep[s] up with refinements in the law, as evidenced most obviously by rulings by the judge on any earlier fee apps.  It's at least appropriate if not also essential that firms submitting fee apps ensure that they're consistent with any ruling issued earlier in the case that may determine what's compensable or reimbursable or not, and what levels of detail or other formality are required as part of the data underlying the fee application. . . .

Outside of bankruptcy, lawyers needn't record their time in tenth of an hour increments, record their time in the detail we require, avoid bunching their time entries or otherwise comply with the more rigid requirements we impose in the bankruptcy system.

….

Lawyers providing services in a bankruptcy case should comply with the timekeeping rules and guidelines, getting it right the first time.  While mistakes and failures in compliance are foreseeable and perhaps inevitable, the issue isn't whether correcting them is necessary or appropriate, it's whether the estate should . . . pay for the necessary corrections.  Of course corrections must be made, but if the lawyers or paralegals working on the matter don't do it right the first time, this consideration requires that the law firm and not the estate bear the expense of correcting what should have been done right in the first place.

….

Dealing with these concerns, which cut against each other, requires some kind of allocation, analogous, analytically, to what we do with compensation for nonworking travel time in bankruptcy, where the professional on the plane is unavailable to work on other matters yet is not doing anything that directly benefits the client.  And where, as a consequence, we provide that travel time be compensable at the rate of fifty percent.  A similar approach is necessary here.

On balance, and recognizing that some of the work that was done in this category would be unique to bankruptcy, some of the work would be done for any client and that costs of fixing mistakes shouldn't be borne by the estate, I believe that under normal

8

> circumstances and going forward, an adjustment of fifty percent, five-zero percent, as we do with travel time, would be appropriate. But the law in this area has been evolving in increasing detail. And with increasing limitations and I think that it's unfair to the professionals to make them take a full hit in such . . . amount retroactively.
>
> For this time period, recognizing that much of what I said is not new and could be inferred by, for example, by review of CF&I and SonicBlue, I think that a reduction of only thirty-five percent for this kind of review during this time period would be appropriate. . . .

Tr. 07-06-2010 at 8:20-23; 11:14-22; 12:7-11, 24-25; 13:1-10; 14:5-25; 15:1-2.

21. Brownfield has not identified or voluntarily reduced its time entries pursuant to the Court's comments.

22. This question remains: is time spent remedying deficiencies in fee applications and time records, communicating—primarily with a fee examiner, and presenting such matters to the court compensable? The cases appear to reflect a split of authority. *See* 3 Collier on Bankruptcy ¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). *See also In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (J. Bernstein, noting split of authority and permitting compensation where fee applicant has "substantially prevailed.").

   **A.** Limited Authority for Denying Compensation for the Fee Review Process

   - Defending a fee application is a different activity than preparing the application. *E.g.*, *In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991); *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); *In re Brous*, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007).

   - Absent statutory or other authority, the American Rule—each party paying its own litigation costs—generally applies. *E.g.*, *St. Rita's*, 260 B.R. at 652.

   - Responding to objections "filed in good faith and ultimately resulting in a partial disallowance of the requested fees" should not normally be

9

        compensable. *Teraforce Tech. Corp.*, 347 B.R. 838 (Bankr. N. D. Tex. 2006).

**B.**    Limited Authority for Allowing Compensation for the Fee Review Process

- Under the right facts, compensation for responding to fee objections may be appropriate. *E.g.*, *Riverside-Linden*, 945 F.2d at 323 (leaving open whether fee litigation might be "necessary"—and compensable—within the meaning of the Code); *St. Rita's*, 260 B.R. at 652 (same).

- "[R]equiring counsel who has *successfully* defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application." *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005) (emphasis added); *see also In re Ahead Commc'ns Sys., Inc.*, No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. 2006); *In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002).

- Denial of compensation for contested fee awards would "reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." *In Re Smith*, 317 F.3d at 928 (Cudahy, J., noting that objections had been found "frivolous" and that counsel had successfully defended its fee award), *discussing In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

    "Reviewing objections filed against a fee application and the time spent appearing in court to present the application is compensable, as long as a certain amount of discretion is used." *In re CF&I Fabricators*, 131 B.R. 474 (Bankr. D. Utah 1991).

**C.**    The Fee Examiner's Proposed Approach

- A general reasonableness standard should apply to disallow compensation for defending a fee request that contained errors or omissions on established points of law while not penalizing a professional who could not have known that specific billing practices would not be approved. Such an approach may distinguish between professionals whose billing practices provoked questions or objections due to their relative inexperience with bankruptcy and experienced bankruptcy professional who incurred fees defending objections for errors and omissions it could have or should have known could trigger an objection.

*Brownfield has not provided a substantive response.*

23. **Expenses**. Brownfield's requested expense reimbursements are generally unobjectionable, subject to the following comments:

    A. **Federal Express Charges**. The Fee Examiner has requested additional detail relating to nine entries for express courier services totaling $274.29.

*Brownfield has not yet provided a substantive response.*

    B. **Meals**. The Fee Examiner has identified certain meals exceeding the $20.00 meal allowance in the aggregate amount of $71.54.

*Brownfield has not yet provided a substantive response.*

    C. **Hotels**. The Fee Examiner has requested further information in connection with (i) an apparent mathematical overcharge based upon amounts indicated on the receipts provided for hotel expenses, and (ii) one hotel stay that may be excessive.

*Brownfield has not yet provided a substantive response.*

## CONCLUSION

This *Preliminary Report* is intended to advise the Court, the professionals, and the U.S. Trustee of the Fee Examiner's preliminary observations, subject to the supplemental detail provided by Brownfield. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on this or any subsequent interim fee applications or final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

11

WHEREFORE, the Fee Examiner respectfully submits this *Preliminary Report* on the Third Fee Application.

Dated: Green Bay, Wisconsin
September 17, 2010.

GODFREY & KAHN, S.C.

By:    /s/ *Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5408100_1