Hearing Date and Time: September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time: September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
:
In re: : Chapter 11
:
MOTORS LIQUIDATION COMPANY, *et al.,* : Case No. 09-50026
f/k/a General Motors Corp., *et al.,* : (Jointly Administered)
:
Debtors. : Honorable Robert E. Gerber
:
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**THIRD INTERIM FEE APPLICATION OF THE CLARO GROUP**

TO:   THE HONORABLE ROBERT E. GERBER
      UNITED STATES BANKRUPTCY JUDGE

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Third Interim Application of The Claro Group, LLC as Environmental Management Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period February 1, 2010 through May 31, 2010* [Docket No. 6506 ] (the "**Third Fee Application**"). With this *Report and Statement of Limited Objection,* the Fee Examiner identifies certain objectionable fees and expenses requested in the

Third Fee Application, which requests a total of $535,202.01. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Third Fee Application, counsel for the Fee Examiner raised a series of concerns about the application by letter dated September 2, 2010 to The Claro Group, LLC ("**Claro**"). By telephone on September 9, 2010, and in response to counsel's letter, Claro addressed some—but not all—of these concerns. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $15,163.29 in fees and expenses of the total requested. Most of these recommended reductions are attributable to the improper use of time increments in billing, vague communications, and compensation issues.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or not long after—year-end.

3. On November 20, 2009, Claro filed its *First Interim Application of The Claro Group, LLC as Environmental Management Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period June 1, 2009 through*

*September 30, 2009* (the "**First Fee Application**") [Docket No. 4506], seeking fees and expenses in the amount of $190,451.05.

4.	On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of The Claro Group, LLC* [Docket No. 5558] (the "**First Objection**"), identifying $41,336.47 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

5.	On April 29, 2010, this Court issued an oral ruling that granted Claro's First Fee Application in part but required a continued holdback of 10 percent of Claro's requested fees. On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834], approving a series of interim fee applications, including the application submitted by Claro. The Omnibus Order authorized payment to Claro of $172,013.59 for fees (which included the 10 percent holdback) and $437.46 for expenses.

6.	On March 17, 2010, Claro filed its *Second Interim Application of The Claro Group, LLC as Environmental Management Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period October 1, 2009 through January 31, 2010* [Docket No. 5290] (the "**Second Fee Application**"), seeking fees in the amount of $652,010.50 and expenses in the amount of $9,138.41, for total requested compensation of $661,148.91.

7.	On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of The Claro Group* [Docket

No. 6094] (the "**Second Objection**"), identifying $15,856.30 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

8.  On July 6, 2010, this Court issued an oral ruling that granted Claro's Second Fee Application in part but required a continued holdback of 10 percent of Claro's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by Claro. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to Claro of $645,889.20 for fees (which included the 10 percent holdback) and $9,138.41 for expenses.

9.  On August 4, 2010, Claro filed its Third Fee Application, seeking fees in the amount of $527,315.50 and expenses in the amount of $7,886.51, for total requested compensation of $535,202.01.

10. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Claro reports it has previously submitted monthly statements and received payments from the Debtors totaling $92,755.23 for the period covered by the Third Fee Application, consisting of 80 percent of requested fees and 100 percent of requested expenses for April 2010. Claro has not yet received payment for February, March, or May fees or expenses, *see* Third Fee Application, ¶¶ 7, 8, and has an

4

outstanding request for $442,446.78 that, it states, remains unpaid in connection with the Third Fee Application. *Id*. at ¶ 8.

11. By correspondence dated September 2, 2010, counsel for the Fee Examiner provided Claro with his preliminary analysis of the fees requested in the Third Fee Application, inviting Claro to submit any additional information in support of the application. The preliminary analysis included information related to:

    A.    Clerical or administrative charges;

    B.    Compensation relating to fee applications;

    C.    Specificity of billing entries;

    D.    Timekeeping issues; and

    E.    Hotel and meal expenses.

Claro provided information in response to this preliminary analysis by telephone on September 9, 2010 and by correspondence dated September 10, 2010.

12. On September 10, 2010, the Fee Examiner sent Claro a draft of this *Report and Statement of Limited Objection* (the "**Draft Report**") with a limited objection to Claro's fees, offering yet another opportunity for discussion. All of the information provided by Claro has been considered by the Fee Examiner.

**APPLICABLE STANDARDS**

13. The Third Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the

5

"**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, on July 28, 2010, the Fee Examiner provided all of the professionals in this proceeding with a draft memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

14. **Scope of Retention**. As discussed in the First Objection and the Second Objection, Claro's retention is governed by the *Order Pursuant to 11 U.S.C. §§ 327(a) and 330 and Fed. R. Bankr. P. 2014 Authorizing the Retention and Employment of The Claro Group, LLC as Environmental Consultants to the Debtors Nunc Pro Tunc to the Commencement Date* (the "**Retention Order**") [Docket No. 3632], which, in turn, is further defined by the Debtors' engagement letter, as amended, with Claro. The Retention Order authorizes Claro to perform a defined scope of work for an estimated $185,000.00. The retention application states that Claro will spend approximately 550 hours completing the work described in the engagement letter.

15. However, to date, Claro has been compensated in excess of $170,000.00 in connection with its First Fee Application and $650,000.00 in connection with its Second Fee Application. It now seeks in excess of $530,000.00 in its Third Fee Application.

*The Retention Order provides guidance to the Fee Examiner regarding the services Claro is authorized to perform and a reasonable estimated cost of those services. That amount has been exceeded without Court authorization. As such, the Fee Examiner reiterates his pointed suggestions that Claro seek an amendment to its Retention Order, including an increased fee estimate.*

16. **Time Increment Analysis**. The applicable guidelines require professionals to bill in increments of one-tenth of an hour. Claro's compliance with this guideline has improved significantly.

6

*Suggested disallowance for time increment analysis:  None.*

17.     **Block Billing**.  Block billing is prohibited by the UST Guidelines at (b)(4)(v).  "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  *Id*.  The Fee Examiner identified some entries by Claro professionals for multiple tasks in excess of .5 hours in aggregate time that do not comply with this guideline.  The entries indicating block billing total $6,970.00.

*Suggested disallowance for block billing:  $1,742.50 (25 percent).*

18.     **Clerical and Administrative Charges**.  Numerous billing entries, totaling $2,023.50 in fees, describe clerical or administrative non-compensable services that might more appropriately be charged as overhead.

*Suggested disallowance for non billable clerical and administrative tasks:  $2,023.50.*

19.     **Vague Tasks**.  The Fee Examiner has identified specific billing entries aggregating $10,260.00 that contain an insufficient description of a task and are non-compensable.

*Claro has provided revised time entries that resolve many of the vague tasks, reducing the entries of concern to $6,024.00*

*Suggested disallowance for vague tasks:  $903.60 (15 percent).*

20.     **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**.  Claro reports 130.25 billable hours, representing $40,799.00 in fees, billed for all fee matters including retention matters, the preparation of Claro's monthly fee statements and fee applications, its communications with the Fee Examiner, and "other job administration."

21.     This Court has established that some billing and fee application-related activities are compensable; others not.

> Drafting the narrative that is part of any fee app and preparation of the application itself and tables and proposed orders that

7

> accompany the application or follow it are activities that are unique to the bankruptcy process and are plainly compensable.

Tr. 07-06-2010 at 8:14-18.

> [P]reparing timesheets in the first instance and preparing a bill for the client are services that are required for any client, bankruptcy or non-bankruptcy, and are plainly not compensable.
>
> ….
>
> While it's also correct that firms should ensure that their timekeeping practice keep[s] up with refinements in the law, as evidenced most obviously by rulings by the judge on any earlier fee apps. It's at least appropriate if not also essential that firms submitting fee apps ensure that they're consistent with any ruling issued earlier in the case that may determine what's compensable or reimbursable or not, and what levels of detail or other formality are required as part of the data underlying the fee application. . . .
>
> Outside of bankruptcy, lawyers needn't record their time in tenth of an hour increments, record their time in the detail we require, avoid bunching their time entries or otherwise comply with the more rigid requirements we impose in the bankruptcy system.
>
> ….
>
> Lawyers providing services in a bankruptcy case should comply with the timekeeping rules and guidelines, getting it right the first time. While mistakes and failures in compliance are foreseeable and perhaps inevitable, the issue isn't whether correcting them is necessary or appropriate, it's whether the estate should . . . pay for the necessary corrections. Of course corrections must be made, but if the lawyers or paralegals working on the matter don't do it right the first time, this consideration requires that the law firm and not the estate bear the expense of correcting what should have been done right in the first place.
>
> ….
>
> Dealing with these concerns, which cut against each other, requires some kind of allocation, analogous, analytically, to what we do with compensation for nonworking travel time in bankruptcy, where the professional on the plane is unavailable to work on other matters yet is not doing anything that directly benefits the client. And where, as a consequence, we provide that travel time be compensable at the rate of fifty percent. A similar approach is necessary here.

8

> On balance, and recognizing that some of the work that was done in this category would be unique to bankruptcy, some of the work would be done for any client and that costs of fixing mistakes shouldn't be borne by the estate, I believe that under normal circumstances and going forward, an adjustment of fifty percent, five-zero percent, as we do with travel time, would be appropriate. But the law in this area has been evolving in increasing detail. And with increasing limitations and I think that it's unfair to the professionals to make them take a full hit in such . . . amount retroactively.
>
> For this time period, recognizing that much of what I said is not new and could be inferred by, for example, by review of CF&I and SonicBlue, I think that a reduction of only thirty-five percent for this kind of review during this time period would be appropriate. . . .

Tr. 07-06-2010 at 8:20-23; 11:14-22; 12:7-11, 24-25; 13:1-10; 14:5-25; 15:1-2.

22.     Claro has not identified or voluntarily reduced its time entries pursuant to the Court's comments and direction.

23.     This question remains: is time spent remedying deficiencies in fee applications and time records, communicating—primarily with a fee examiner—and presenting such matters to the court compensable? The cases appear to reflect a split of authority. *See* 3 Collier on Bankruptcy ¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); s*ee also In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (J. Bernstein, noting split of authority and permitting compensation where fee applicant has "substantially prevailed.").

        **A.**     Limited Authority for Denying Compensation for the Fee Review Process

- Defending a fee application is a different activity than preparing the application. *E.g., In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991); *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); *In re Brous*, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007).

9

- Absent statutory or other authority, the American Rule—each party paying its own litigation costs—generally applies. *E.g., St. Rita's*, 260 B.R. at 652.

- Responding to objections "filed in good faith and ultimately resulting in a partial disallowance of the requested fees" should not normally be compensable. *Teraforce Tech. Corp.,* 347 B.R. 838 (Bankr. N. D. Tex. 2006).

**B.**  Limited Authority for Allowing Compensation for the Fee Review Process

- Under the right facts, compensation for responding to fee objections may be appropriate. *E.g.*, *Riverside-Linden*, 945 F.2d at 323 (leaving open whether fee litigation might be "necessary"—and compensable—within the meaning of the Code); *St. Rita's*, 260 B.R. at 652 (same).

- "[R]equiring counsel who has *successfully* defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application." *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005) (emphasis added); *see also In re Ahead Commc'ns Sys., Inc.*, No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. 2006); *In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002).

- Denial of compensation for contested fee awards would "reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." *In Re Smith*, 317 F.3d at 928 (Cudahy, J., noting that objections had been found "frivolous" and that counsel had successfully defended its fee award), *discussing In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

    "Reviewing objections filed against a fee application and the time spent appearing in court to present the application is compensable, as long as a certain amount of discretion is used." *In re CF&I Fabricators*, 131 B.R. 474 (Bankr. D. Utah 1991).

**C.**  The Fee Examiner's Proposed Approach

- A general reasonableness standard should apply to disallow compensation for defending a fee request that contained errors or omissions on established points of law while not penalizing a professional who could not have known that specific billing practices would not be approved. Such an approach may distinguish between professionals whose billing practices provoked questions or objections due to their relative inexperience with bankruptcy and experienced bankruptcy professional who incurred fees defending objections for

10

errors and omissions it could have or should have known could trigger an objection.

24. The Fee Examiner's objections to Claro's Second Fee Application were sustained in part and overruled in part. It probably would waste time and resources to try to determine, item by item, or on a percentage basis, which objections were sustained, which were denied, and which were resolved without dispute by the parties, or to try to parse the time attributable to each of them.

25. Professionals should not, as a matter of course, be fully compensated for participating in a fee review process that results in material and sustained objections. In addition, it is not incumbent on the Fee Examiner to segregate compensable time from "job administration" within this billing category.

*Suggested disallowance for fees related to fee review process: $10,199.75 (25 percent).*

26. **Expenses**. The Third Fee Application, Exhibit C, contains an expense summary. The expenses are generally unobjectionable with limited exception:

    A. **Meal Expenses**. Claro's meal expenses either exceeded the $20.00 allowance identified in the Advisories or did not comply with the requirement that the individual requesting reimbursement work more than minimal hours on the date in question.

*Suggested disallowance for meals: $63.56.*

    B. **Hotel Expenses**. A request for hotel reimbursement in the amount of $1,030.38 appears to be excessive. The Fee Examiner has requested additional detail relating to this two night stay in Washington, D.C.

*Suggested disallowance for hotel expense: $230.38.*

11

> *Total fees suggested for disallowance:  $14,869.35.*
>
> *Total expenses suggested for disallowance:  $293.94.*
>
> *Total fees and expenses recommended for disallowance:  $15,163.29.*

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Third Fee Application.  It is not intended to be an exhaustive or exclusive list of *possible* objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to The Claro Group's Third Fee Application.

Dated: Green Bay, Wisconsin
       September 17, 2010.

                              GODFREY & KAHN, S.C.

                    By:      /s/ *Carla O. Andres*
                            Carla O. Andres (CA 3129)
                            Timothy F. Nixon (TN 2644)

                            GODFREY & KAHN, S.C.
                            780 North Water Street
                            Milwaukee, Wisconsin 53202
                            Telephone: (414) 273-3500
                            Facsimile: (414) 273-5198
                            E-mail: candres@gklaw.com
                                         tnixon@gklaw.com

                            *Attorneys for Fee Examiner*

5375704_3