Hearing Date and Time: September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time: September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
 : 
In re: : Chapter 11
 : 
MOTORS LIQUIDATION COMPANY, *et al.,* : Case No. 09-50026
 f/k/a General Motors Corp., *et al.,* : (Jointly Administered)
 : 
     Debtors. : Honorable Robert E. Gerber
 : 
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION**
**TO SECOND INTERIM FEE APPLICATION OF**
**<u>PLANTE & MORAN, PLLC</u>**

**TO:** **THE HONORABLE ROBERT E. GERBER**
   **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Second Application of Plante & Moran, PLLC, as Accountants for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 through May 31, 2010* [Docket No. 6527] (the "**Second Fee Application**").

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $1,920.83 in objectionable fees and expenses requested in the Second Fee Application, which requests a total of $338,275.41. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Second Fee Application, counsel for the Fee Examiner raised preliminary observations with Plante & Moran, PLLC ("**P&M**") by letter dated August 24, 2010. On September 9, 2010, P&M provided supplemental detail in response to the Fee Examiner's concerns.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $1,920.83 in fees and expenses of the total requested in connection with the Second Fee Application. Most of these recommended reductions are attributable to vague time entries and compensation matters.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or not long after—year-end.

3. On March 17, 2010, P&M filed its first interim fee application (the "**First Fee Application**") seeking fees in the amount of $354,195.70 and expenses of $5,247.32, for total requested compensation of $359,443.02.

4. On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to First Interim Fee Application of Plante & Moran, PLLC* identifying $94.77 in expenses that were objectionable. [Docket No. 6092] That report and statement is incorporated by reference.

5. On July 6, 2010, this Court issued an oral ruling that granted P&M's First Fee Application in part but required a holdback of 10 percent of P&M's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by P&M. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to P&M of $354,195.70 for fees (which included the 10 percent holdback) and $5,152.55 for expenses.

6. On August 5, 2010, the Second Fee Application was filed, seeking fees in the amount of $332,405.34 and expenses in the amount of $5,870.07, for total requested compensation of $338,275.41. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), P&M reports that it has

3

previously submitted monthly statements and received payments from the Debtors totaling $268,554.02 in fees and expenses, consisting of approximately 80 percent of requested fees and 100 percent of requested expenses, subject to Court review and approval, leaving a combined request of unpaid fees and expenses in the amount of $69,721.39 as of the date of the Second Fee Application. *See* Second Fee Application, ¶¶ 9, 10.

7. By correspondence dated August 24, 2010, counsel for the Fee Examiner provided P&M with his preliminary analysis of the fees requested in the Second Fee Application, inviting P&M to submit any additional information in support of the Second Fee Application. The preliminary analysis included information related to an explanation of certain services provided and further explanation of clerical or administrative charges. The information provided by P&M in response to this inquiry, on September 10, 2010, also was considered by the Fee Examiner.

8. On September 10, 2010, the Fee Examiner sent P&M a draft of this *Report and Statement of Limited Objection*, offering further opportunity for discussion.

## APPLICABLE STANDARDS

9. The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"); the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"); the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"); and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"); as well as this Court's Compensation Order—including the extent, if any, that variation has been

4

expressly permitted by order. In addition, on July 28, 2010, the Fee Examiner provided all of the professionals in this proceeding with a draft memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

10. **Project Staffing**. The services provided by P&M required an aggregate expenditure of 1,442.7 reported hours. The breakdown of those hours by job category is: Partners—515.8 hours; associates—434.3 hours; paraprofessionals—115.0 hours; staff—377.6 hours. The requested amount for fees yields an hourly billing rate of approximately $230.00, with a blended rate for partners only of $360.00 per hour.

*Suggested disallowance: None.*

11. **Scope of Work**. The Fee Examiner has identified one time entry—for 3.3 hours—spent on an analysis and summary of the Fee Examiner's objections to compensation requests from other professionals. This work, while not without purpose, is not of benefit to the estate and not properly expensed to the estate.

*Agreed disallowance for research of other fee applications: $132.00 (50 percent).*

12. **Travel Time**. Non-working travel time will be compensable at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Advisories have requested that travel time be itemized separately. Travel time has been reduced accordingly in the Second Fee Application.

13. **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**. P&M reports 245 billable hours, representing $52,374.24 in fees (Work Codes RET, FEX, FAP, and

5

FEE), billed for retention matters, the preparation of P&M's monthly fee statements and second interim fee application and its communications with the Fee Examiner regarding the firm's First Fee Application.

14.     This Court has established that some billing and fee application-related activities are compensable; others not.

> Drafting the narrative that is part of any fee app and preparation of the application itself and tables and proposed orders that accompany the application or follow it are activities that are unique to the bankruptcy process and are plainly compensable.

Tr. 07-06-2010 at 8:14-18.

> [P]reparing timesheets in the first instance and preparing a bill for the client are services that are required for any client, bankruptcy or non-bankruptcy, and are plainly not compensable.
>
> ….
>
> While it's also correct that firms should ensure that their timekeeping practice keep[s] up with refinements in the law, as evidenced most obviously by rulings by the judge on any earlier fee apps.  It's at least appropriate if not also essential that firms submitting fee apps ensure that they're consistent with any ruling issued earlier in the case that may determine what's compensable or reimbursable or not, and what levels of detail or other formality are required as part of the data underlying the fee application. . . .
>
> Outside of bankruptcy, lawyers needn't record their time in tenth of an hour increments, record their time in the detail we require, avoid bunching their time entries or otherwise comply with the more rigid requirements we impose in the bankruptcy system.
>
> ….
>
> Lawyers providing services in a bankruptcy case should comply with the timekeeping rules and guidelines, getting it right the first time.  While mistakes and failures in compliance are foreseeable and perhaps inevitable, the issue isn't whether correcting them is necessary or appropriate, it's whether the estate should . . . pay for the necessary corrections.  Of course corrections must be made, but if the lawyers or paralegals working on the matter don't do it right the first time, this consideration requires that the law firm and not

> the estate bear the expense of correcting what should have been done right in the first place.
>
> ….
>
> Dealing with these concerns, which cut against each other, requires some kind of allocation, analogous, analytically, to what we do with compensation for nonworking travel time in bankruptcy, where the professional on the plane is unavailable to work on other matters yet is not doing anything that directly benefits the client. And where, as a consequence, we provide that travel time be compensable at the rate of fifty percent. A similar approach is necessary here.
>
> On balance, and recognizing that some of the work that was done in this category would be unique to bankruptcy, some of the work would be done for any client and that costs of fixing mistakes shouldn't be borne by the estate, I believe that under normal circumstances and going forward, an adjustment of fifty percent, five-zero percent, as we do with travel time, would be appropriate. But the law in this area has been evolving in increasing detail. And with increasing limitations and I think that it's unfair to the professionals to make them take a full hit in such . . . amount retroactively.
>
> For this time period, recognizing that much of what I said is not new and could be inferred by, for example, by review of CF&I and SonicBlue, I think that a reduction of only thirty-five percent for this kind of review during this time period would be appropriate. . . .

Tr. 07-06-2010 at 8:20-23; 11:14-22; 12:7-11, 24-25; 13:1-10; 14:5-25; 15:1-2.

15. In recognition of the Court's comments, P&M has reduced, by 35 percent, all hours billed to the FEE work code, identified as "review of detail time entries and preparation of monthly statements." Second Fee Application, Project and Work Code Descriptions, Exhibit E, Second Fee Application, ¶ 54. In addition, P&M has voluntarily written off $16,000.00, reflecting approximately 45 hours of professional services relating to the initial fee application, fee statements, and review and editing of time entries. Second Fee Application, ¶ 11.

7

16. This question remains: is time spent remedying deficiencies in fee applications and time records, communicating—primarily with a fee examiner—and presenting such matters to the court compensable? The cases appear to reflect a split of authority. *See* 3 Collier on Bankruptcy ¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); s*ee also In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (J. Bernstein, noting split of authority and permitting compensation where fee applicant has "substantially prevailed.").

    **A.**    Limited Authority for Denying Compensation for the Fee Review Process

- Defending a fee application is a different activity than preparing the application. *E.g.*, *In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991); *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); *In re Brous*, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007).

- Absent statutory or other authority, the American Rule—each party paying its own litigation costs—generally applies. *E.g.*, *St. Rita's*, 260 B.R. at 652.

- Responding to objections "filed in good faith and ultimately resulting in a partial disallowance of the requested fees" should not normally be compensable. *Teraforce Tech. Corp.,* 347 B.R. 838 (Bankr. N. D. Tex. 2006).

    **B.**    Limited Authority for Allowing Compensation for the Fee Review Process

- Under the right facts, compensation for responding to fee objections may be appropriate. *E.g., Riverside-Linden*, 945 F.2d at 323 (leaving open whether fee litigation might be "necessary"—and compensable—within the meaning of the Code); *St. Rita's*, 260 B.R. at 652 (same).

- "[R]equiring counsel who has *successfully* defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application." *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005) (emphasis added); *see also In re Ahead Commc'ns Sys., Inc.*, No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. 2006); *In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002).

8

- Denial of compensation for contested fee awards would "reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." *In Re Smith*, 317 F.3d at 928 (Cudahy, J., noting that objections had been found "frivolous" and that counsel had successfully defended its fee award), *discussing In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

"Reviewing objections filed against a fee application and the time spent appearing in court to present the application is compensable, as long as a certain amount of discretion is used." *In re CF&I Fabricators*, 131 B.R. 474 (Bankr. D. Utah 1991).

**C.**   The Fee Examiner's Proposed Approach

- A general reasonableness standard should apply to disallow compensation for defending a fee request that contained errors or omissions on established points of law while not penalizing a professional who could not have known that specific billing practices would not be approved. Such an approach may distinguish between professionals whose billing practices provoked questions or objections due to their relative inexperience with bankruptcy and experienced bankruptcy professional who incurred fees defending objections for errors and omissions it could have or should have known could trigger an objection.

17.   The Fee Examiner's initial objections to P&M's First Fee Application were sustained in part and overruled in part. It probably would waste time and resources to try to determine, item by item, or on a percentage basis, which objections were sustained, which were denied, and which were resolved without dispute by the parties, or to try to parse the time attributable to each of them.

18.   Professionals should not, as a matter of course, be fully compensated for participating in a fee review process that results in material and sustained objections. Altogether, 6.8 hours, totaling $2,788.00, of the total time billed to work code FEX, was for reviewing the Fee Examiner's position for other professionals or for reviewing and responding to the Fee Examiner's inquiries.

9

*Suggested disallowance for research or responding to the Fee Examiner: $1,394.00 (50 percent). This amount takes into account P&M's voluntary reduction of time related to fee issues.*

19. **Clerical and Administrative Charges**. The Fee Examiner has identified charges in the amount of $680.00 that appear to be administrative or clerical tasks that might more appropriately have been absorbed as overhead.

*P&M has provided additional detail of the questioned services, resolving this concern.*

*Suggested disallowance for clerical and administrative charges: None.*

20. **Vague Tasks**. The Fee Examiner has identified seven specific billing entries, aggregating $1,997.00, that contain an insufficient description of a task and are non-compensable.

*P&M has provided revised time entries that resolve the majority of the vague tasks, and proposed a 50 percent deduction for "self-review" entries.*

*Agreed disallowance for vague tasks: $322.50 (50 percent).*

21. **Expenses**. P&M's requested expense reimbursements are generally unobjectionable, with the exception of meal expenses. P&M has requested reimbursement of meal expenses in the amount of $308.68. *See* Second Fee Application, Exhibit C. The Fee Examiner has identified certain meals exceeding the $20.00 meal allowance set forth in the Advisories in the aggregate amount of $72.33. P&M accepted this disallowance.

*Agreed disallowance for meals: $72.33.*

> *Total fees suggested for disallowance: $1,848.50.*
>
> *Total expenses suggested for disallowance: $72.33.*
>
> *Total fees and expenses recommended for disallowance: $1,920.83.*

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the Fee Examiner's preliminary observations, subject to the supplemental detail provided by P&M. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on this or any subsequent interim fee applications or final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* on the Second Fee Application.

Dated:  Green Bay, Wisconsin
         September 17, 2010.

>                    GODFREY & KAHN, S.C.
>
>     By:     /s/ *Carla O. Andres*
>             Carla O. Andres (CA 3129)
>             Timothy F. Nixon (TN 2644)
>
>             GODFREY & KAHN, S.C.
>             780 North Water Street
>             Milwaukee, Wisconsin 53202
>             Telephone: (414) 273-3500
>             Facsimile: (414) 273-5198
>             E-mail: candres@gklaw.com
>                     tnixon@gklaw.com
>
>             *Attorneys for Fee Examiner*

5374707_3

11