Hearing Date and Time:  September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time:  September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.,*                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*                  :    (Jointly Administered)
                                                           :
                    Debtors.                               :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED**
**OBJECTION TO THE THIRD INTERIM FEE APPLICATION OF**
<u>**KRAMER LEVIN NAFTALIS & FRANKEL LLP**</u>

**TO:   THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Third Interim Application of Kramer Levin Naftalis & Frankel LLP, as Counsel for the Official Committee of Unsecured Creditors, for Allowance of Compensation for Professional Services Rendered and For Reimbursement of Actual and Necessary Expenses Incurred for the Period from February 1, 2010 Through May 31, 2010* [Docket No. 6538] ("**Third Fee Application**").  With this *Report and Statement of Limited*

*Objection*, the Fee Examiner identifies specific objectionable fees and expenses in the Third Fee Application, which requests $644,939.25 in fees and $7,592.26 in costs. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

Reviewing the Third Fee Application, counsel for the Fee Examiner raised a series of concerns about the application by letter to Kramer Levin dated September 2, 2010. On September 13, 2010, and in response to counsel's letter, the firm addressed these concerns. The Fee Examiner and Kramer Levin engaged in additional communications by email correspondence on September 13 and 14, 2010.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $52,401.50 in fees and expenses. Most of these recommended reductions are attributable to time billed for Kramer Levin's communications, primarily with the Fee Examiner, and Kramer Levin's "defense" of its first interim fee application.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or not long after—year-end.

3. On November 16, 2009, Kramer Levin filed its first interim fee application [Docket No. 4459], seeking fees and expenses in the amount of $4,678,958.27 ("**First Fee Application**").

4. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of Kramer Levin Naftalis & Frankel LLP* (the "**First Kramer Levin Report**"), identifying $520,863.97 in fees and expenses that were objectionable. [Docket No. 5555] That report and statement is incorporated by reference.

5. On April 29, 2010, this Court issued an oral ruling that granted Kramer Levin's first interim fee application in part but required a continued holdback of 10 percent of Kramer Levin's requested fees. On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by Kramer Levin. *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834]. The Omnibus Order authorized payment to Kramer Levin of $4,479,062.50 for fees (which included the 10 percent holdback) and $84,569.10 for expenses.

6. On March 17, 2010, Kramer Levin filed its second interim fee application, seeking fees in the amount of $1,149,758.75 and expenses in the amount of $31,383.31. On

3

May 18, 2010, Kramer Levin filed an amendment to its second interim fee application, seeking fees in the amount of $1,148,977.75 and expenses in the amount of $31,103.29, for total requested compensation of $1,180,081.04.

7.  On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of Kramer Levin Naftalis & Frankel LLP* (the "**Second Kramer Report**"), identifying $58,851.45 in fees and expenses that were objectionable [Docket No. 6091]. That report and statement is incorporated by reference.

8.  On July 6, 2010, this Court issued an oral ruling that granted Kramer Levin's second interim fee application in part but required a continued holdback of 10 percent of Kramer Levin's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by Kramer Levin. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "Second Omnibus Order") [Docket No. 6402]. The Second Omnibus Order authorized payment to Kramer Levin of $5,597,375.38 for fees (which included the 10 percent holdback) and $112,437.93 for expenses.

9.  As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Kramer Levin reports that as of the date of the Third Fee Application, it has previously submitted monthly statements and

4

received payments from the Debtors totaling $457,177.77 for the period covered by the Third Fee Application, consisting of 80 percent of requested fees and 100 percent of requested expenses for that period.

10. By correspondence dated September 2, 2010, counsel for the Fee Examiner provided Kramer Levin with a summary of his preliminary analysis of the fees requested in the Third Fee Application, inviting Kramer Levin to submit any additional information. The preliminary analysis included questions primarily related to billing rate increases and the fee review process.

11. Kramer Levin provided information in response to this preliminary analysis by correspondence dated September 13, 2010.

12. On September 14, 2010, the Fee Examiner sent Kramer Levin a draft of this *Report and Statement of Limited Objection* (the "**Draft Report**") with a limited objection to Kramer Levin's fees, offering yet another opportunity for discussion. All of the information provided by Kramer Levin has been considered by the Fee Examiner.

**APPLICABLE STANDARDS**

13. The Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the

5

extent, if any, that variation has been expressly permitted by order. In addition, on July 28, 2010, the Fee Examiner provided all of the professionals in this proceeding with a draft memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

14. **Voluntary Deductions**. Pursuant to this Court's prior rulings, Kramer Levin has voluntarily reduced its billings for the third interim fee period by more than $75,000. *See* Third Interim Fee application at ¶ 17. Descriptions of those activities, appropriately "written off," do not appear in Kramer Levin's detailed description of services rendered.

15. **Billing Rates**. For the third interim fee period, Kramer Levin seeks nearly $40,000 in fees that are the direct result of hourly rate increases in September 2009 and January 2010. Kramer Levin has represented that the September 2009 rate increase was the result of associates' advancing seniority, and the January 2010 rate increase was a firm-wide market adjustment. Kramer has further represented that both the original and increased billable rates charged in this bankruptcy matter are the same rates charged in comparable non-bankruptcy matters during the same time frame.

    A.    Based on Kramer Levin's direct representations, the Fee Examiner does not object to the rates for the third interim fee period.

    B.    However, the bankruptcy estate has already absorbed two rate increases from Kramer Levin since the inception of this matter. *See* First Kramer Report [Docket No. 5555] at ¶ 43(B); Second Kramer Report [Docket No. 6091] at ¶¶ 11-12. Accordingly, the Fee Examiner will seek guidance from the Court on whether further rate

increases are appropriate as the case approaches the time-intensive disclosure statement, solicitation and confirmation phase.[1]

      C.      The question of increases in hourly rates during the course of a chapter 11 proceeding, particularly serial increases, has been a significant issue in the Lehman Brothers proceeding. The Fee Committee there, in its last report, said this:

> Increases to 2009 billing rates [in 2010] will be reviewed for reasonableness in accordance with the standards set forth under Bankruptcy Code 11 U.S.C §330(a)(3). If the fees requested are not found to be reasonable[,] they will be opposed effective on January 1, 2010 and increases will be deducted and reflected in the Fifth Interim Fee Application and all subsequent fee applications.

*In re Lehman Brothers Holdings Inc., et al.*, Fee Committee Report Pertaining to the Fourth Interim Fee Applications of All Retained Professionals at 3, No. 08-13555 (Bankr. S.D.N.Y. Aug. 20, 2010) [Lehman Docket No. 10947].

      D.      There may be no precedential basis for a *per se* prohibition against rate increases during a chapter 11 case, but significant rate increases necessarily should, like other fee matters, be subject to reasonableness review. *See*, *e.g.*, *In re Teraforce Tech. Corp.*, 347 B.R. 838, 860 (Bankr. N.D. Tex. 2006); *In re Hale Halsell Co.*, 391 B.R. 459, 462 (Bankr. N.D. Okla. 2008); *In re Lee Tractor Co., Inc.*, 2008 WL 2788413, at *2 (Bankr. E.D.N.C. 2008) (not reported).

      E.      At the least, any application that reflects an increase of more than five percent per year should be accompanied by an appropriate certification that, at a

---

[1] At least one retained professional in these cases has provided a form of notice of its rate increases before implementing them. *See Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 327(a) and 330 Authorizing the Debtors to Amend the Terms of their Engagement with Brownfield Partners, LLC* [Docket No. 5207], dated March 5, 2010. In response to that motion, the Fee Examiner requested additional information on proposed the fee increase and, in response, the Debtors provided an affidavit supporting the proposed rate increase. [Docket No. 5934]. In other bankruptcy proceedings, retained professionals likewise have provided notice of increases to their hourly billing rates. *See*, *e.g.*, *In re Saint Vincents Catholic Medical Centers of New York*, *et al.,* Notice of Change of Hourly Billing Rates of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. as Special Counsel to the Debtors, No. 10-11963 (Bankr. S.D.N.Y. Sept. 10, 2010) [Saint Vincents Docket No. 856].

7

minimum, describes the previous increases for that time-keeper, verifies that the rate increase was part of a firm-wide adjustment that resulted in the same increases to comparable clients, or that some special circumstance justifies the rate increase. *See*, *e.g.*, *In re Computer Learning Centers, Inc.*, 285 B.R. 191, 201 (Bankr. E.D. Va. 2002). *Suggested disallowance for billing rates: none.*

16. **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**. The Fee Examiner identified 285.3 hours, representing $124,773.00 in fees (Billing Code 0019), billed for the preparation of Kramer Levin's second interim fee application and its communications with the Fee Examiner (and, in some instances, the U.S. Trustee) regarding the firm's first interim fee application. In addition, Kramer Levin billed more than 120 additional hours (Billing Code 0020) for the preparation of monthly fee statements.

17. This Court has established that some billing and fee application related activities are compensable; others not.

> Drafting the narrative that is part of any fee app and preparation of the application itself and tables and proposed orders that accompany the application or follow it are activities that are unique to the bankruptcy process and are plainly compensable.

Tr. 07-06-2010 at 8:14-18.

> [P]reparing timesheets in the first instance and preparing a bill for the client are services that are required for any client, bankruptcy or non bankruptcy, and are plainly not compensable.
>
> ….
>
> While it's also correct that firms should ensure that their timekeeping practice keep[s] up with refinements in the law, as evidenced most obviously by rulings by the judge on any earlier fee apps. It's at least appropriate if not also essential that firms submitting fee apps ensure that they're consistent with any ruling issued earlier in the case that may determine what's compensable

8

or reimbursable or not, and what levels of detail or other formality are required as part of the data underlying the fee application. . . .

Outside of bankruptcy, lawyers needn't record their time in tenth of an hour increments, record their time in the detail we require, avoid bunching their time entries or otherwise comply with the more rigid requirements we impose in the bankruptcy system.

….

Lawyers providing services in a bankruptcy case should comply with the timekeeping rules and guidelines, getting it right the first time. While mistakes and failures in compliance are foreseeable and perhaps inevitable, the issue isn't whether correcting them is necessary or appropriate, it's whether the estate should . . . pay for the necessary corrections. Of course corrections must be made, but if the lawyers or paralegals working on the matter don't do it right the first time, this consideration requires that the law firm and not the estate bear the expense of correcting what should have been done right in the first place.

….

Dealing with these concerns, which cut against each other, requires some kind of allocation, analogous, analytically, to what we do with compensation for nonworking travel time in bankruptcy, where the professional on the plane is unavailable to work on other matters yet is not doing anything that directly benefits the client. And where, as a consequence, we provide that travel time be compensable at the rate of fifty percent. A similar approach is necessary here.

On balance, and recognizing that some of the work that was done in this category would be unique to bankruptcy, some of the work would be done for any client and that costs of fixing mistakes shouldn't be borne by the estate, I believe that under normal circumstances and going forward, an adjustment of fifty percent, five zero percent, as we do with travel time, would be appropriate. But the law in this area has been evolving in increasing detail. And with increasing limitations and I think that it's unfair to the professionals to make them take a full hit in such . . . amount retroactively.

For this time period, recognizing that much of what I said is not new and could be inferred by, for example, by review of *CF&I* and *SonicBlue*, I think that a reduction of only thirty five percent for

> this kind of review during this time period would be
> appropriate. . . .

Tr. 07-06-2010 at 8:20-23; 11:14-22; 12:7-11, 24-25; 13:1-10; 14:5-25; 15:1-2.

18. In recognition of the Court's comments, Kramer Levin has reduced, by 50 percent, its billing rates for the "monthly fee statement" category of billing. Kramer Levin has, however, charged at full rates for time spent responding to all of the Fee Examiner and U.S. Trustee communications and related tasks.

19. This question remains: is time spent remedying deficiencies in fee applications and time records, communicating—primarily with a fee examiner, and presenting such matters to the court compensable? The cases appear to reflect a split of authority. *See* 3 Collier on Bankruptcy ¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); *see also In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (J. Bernstein, noting split of authority and permitting compensation where fee applicant has "substantially prevailed.").

    A.    Limited Authority for Denying Compensation for the Fee Review Process

- Defending a fee application is a different activity than preparing the application. *E.g.*, *In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991); *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); *In re Brous*, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007).

- Absent statutory or other authority, the American Rule—each party paying its own litigation costs—generally applies. *E.g.*, *St. Rita's*, 260 B.R. at 652.

- Responding to objections "filed in good faith and ultimately resulting in a partial disallowance of the requested fees" should not normally be compensable. *Teraforce Tech. Corp.*, 347 B.R. 838 (Bankr. N. D. Tex. 2006).

    B.    Limited Authority for Allowing Compensation for the Fee Review Process

10

- Under the right facts, compensation for responding to fee objections may be appropriate. *E.g.*, *Riverside-Linden*, 945 F.2d at 323 (leaving open whether fee litigation might be "necessary"—and compensable—within the meaning of the Code); *St. Rita's*, 260 B.R. at 652 (same).

- "[R]equiring counsel who has *successfully* defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application." *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005) (emphasis added); *see also In re Ahead Commc'ns Sys., Inc.*, No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. 2006); *In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002).

- Denial of compensation for contested fee awards would "reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." *In Re Smith*, 317 F.3d at 928 (Cudahy, J., noting that objections had been found "frivolous" and that counsel had successfully defended its fee award), *discussing In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

- "Reviewing objections filed against a fee application and the time spent appearing in court to present the application is compensable, as long as a certain amount of discretion is used." *In re CF&I Fabricators*, 131 B.R. 474 (Bankr. D. Utah 1991).

C. The Fee Examiner's Proposed Approach

- A general reasonableness standard should apply to disallow compensation for defending a fee request that contained errors or omissions on established points of law while not penalizing a professional who could not have known that specific billing practices would not be approved. Such an approach may distinguish between professionals whose billing practices provoked questions or objections due to their relative inexperience with bankruptcy and experienced bankruptcy professional who incurred fees defending objections for errors and omissions it could have or should have known could trigger an objection.

20. The Fee Examiner's objections to Kramer Levin's first interim fee application were sustained in part and overruled in part. It probably would waste time and resources to try to determine, item by item, or on a percentage basis, which objections were sustained, which were denied, and which were resolved without dispute by the parties, or to try to parse the time attributable to each of them.

11

21.     Professionals should not, as a matter of course, be fully compensated for participating in a fee review process that results in material and sustained objections. As Kramer Levin noted, it spent significant time "defending" the role of the Committee in these cases and voluntarily wrote off more than $20,000 in fees related to responding to the Fee Examiner's inquiries. In light of theses factors, along with Kramer Levin firm's significant experience in bankruptcy cases and the nature of the guideline compliance issues the Court has addressed, a fifty percent deduction in this billing category is appropriate—further adjusted in recognition of the amounts already voluntarily written off by Kramer Levin.

*Suggested disallowance for fee examiner and objection process: $52,386.50.*

22.     **Expenses**. The Third Fee Application seeks reimbursement for $1,116.32 in cab fares, almost all for local travel and all of which appear to correspond appropriately to billing days that exceed six hours. The Third Fee Application seeks $75 in reimbursement for a case related meal on February 23, 2010. Kramer Levin has agreed to voluntarily reduce that request to $60, reflecting a $20 per person limitation.

*Voluntary reductions for unnecessary expenses: $15.00.*

***Total fees suggested for disallowance: $52,386.50.***

***Total expenses suggested for disallowance: $15.00.***

***Total fees and expenses recommended for disallowance: $52,401.50.***

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Third Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on subsequent interim fee applications or on final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee

Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Third Fee Application.

Dated: Madison, Wisconsin
September 17, 2010.

                GODFREY & KAHN, S.C.

By:     /s/ *Katherine Stadler*
       Katherine Stadler (KS 6831)
       Timothy F. Nixon (TN 2644)

       GODFREY & KAHN, S.C.
       780 North Water Street
       Milwaukee, Wisconsin 53202
       Telephone: (414) 273-3500
       Facsimile: (414) 273-5198
       E-mail: kstadler@gklaw.com
              tnixon@gklaw.com

*Attorneys for Fee Examiner*

5418596_1