**Hearing Date and Time:  September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :    Case No. 09-50026
     f/k/a General Motors Corp., *et al.*,                 :    (Jointly Administered)
                                                           :
                    Debtors.                               :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

### FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO THE FIRST INTERIM FEE APPLICATION OF <u>CAPLIN & DRYSDALE, CHARTERED</u>

TO:    **THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Quarterly Application of Caplin & Drysdale, Chartered For Interim Compensation and Reimbursement of Expenses With Respect to Services Rendered As Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims, for the Period From October 6, 2009 Through May 31, 2010* [Docket No. 6553] (the "**Fee Application**").  The Court appointed the Fee

Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $14,433.61 in fees and expenses, from a total of $547,260.88 requested in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements in the applicable guidelines and bankruptcy rules.

After reviewing the Fee Application, counsel for the Fee Examiner raised significant concerns about the application of Caplin & Drysdale, Chartered ("**Caplin**") by letter dated September 2, 2010. On September 15 and 16, 2010, and in response to counsel's letter, Caplin voluntarily agreed to reduce its fee request by $249.50. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a total suggested disallowance of $14,433.61 in fees and expenses from a total request of $547,260.88 in compensation and expenses.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors

2

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].  Plan confirmation is anticipated before—or soon after—year-end.

3.  On March 5, 2010, Diana G. Adams, then the United States Trustee for the Southern District of New York, appointed the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims  (the "**Asbestos Claimants' Committee**") [Docket No. 5206] pursuant to 11 U.S.C. § 1102.

4.  On March 18, 2010, the Asbestos Claimants' Committee filed its *Application to Retain and Employ Caplin & Drysdale, Chartered, As Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims Nunc Pro Tunc to October 6, 2009* (the "**Retention Application**") [Docket No. 5304].

5.  On April 21, 2010, the Court entered an *Order Approving and Authorizing the Retention and Employment of Caplin & Drysdale, Chartered, As Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims to March 5, 2010* (the "**Initial Retention Order")** [Docket No. 5534].

6.  On July 16, 2010, the Court entered a *Bench Decision and Order on Retroactivity of Caplin & Drysdale Retention and Compensation* ("the **Amended Retention Order**") [Docket No. 6360], extending the *nunc pro tunc* date of Caplin's retention to October 6, 2009.

7.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the

3

above-captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

8.  On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

9.  The Debtors report that Caplin has received payments of approximately $99,000 for services rendered between October 6, 2009 and May 31, 2010.

10. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, the Amended Retention Order, the *Declaration of Elihu Inselbuch Under Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure and Section 328 of the U.S. Bankruptcy Code in Support of the Application for Order Authorizing the Employment and Retention of Caplin & Drysdale, Chartered, Nunc Pro Tunc to October 6, 2009, as Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims* [Docket No. 5304, Ex. A] (the "**Inselbuch Declaration**"), the *United States Trustee's Objections to Application for Retention and Employment of Caplin & Drysdale, Chartered, As Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-related Claims Nunc Pro Tunc to October 6, 2009*, (the "**UST Objection**") [Docket No. 5389], the *Reply Memorandum of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims In Support of Application to Retain and Employ Caplin & Drysdale, Chartered, Nunc Pro Tunc to October 6, 2009*, (the "**Caplin Reply**") [Docket No. 5420]**,** and the *Supplemental Declaration of Elihu Inselbuch in Further Support of Application for Order Authorizing the Employment and*

4

*Retention of Caplin & Drysdale, Chartered, Nunc Pro Tunc to October 6, 2009, as Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims* [Docket No. 5420, Attachment] (the "**Supplemental Inselbuch Declaration**").

11. By correspondence dated September 2, 2010, counsel to the Fee Examiner requested supplemental information from Caplin as part of the review of specific matters in the Fee Application. The supplemental information involved:

    A. Billing Rates and Work Allocation;

    B. Overhead;

    C. Task Code Descriptions;

    D. Dates of Admission;

    E. Retention of Epiq Solutions, Inc.;

    F. Vague Communications and Tasks;

    G. Time Increments;

    H. Block Billing;

    I. Billing Discrepancies; and

    J. Expenses.

Caplin provided information in response to these inquiries by letter dated September 15, 2010. On September 16, 2010, Caplin provided a revised response which corrected numerical discrepancies due to the initial exclusion of hours worked during Caplin's *nunc pro tunc* appointment period from Caplin's calculations ("**Caplin Response**"). Caplin also provided information in a series of telephone conversations and e-mails, all of which the Fee Examiner has considered.

**APPLICABLE STANDARDS**

12. The Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order. In addition, on July 28, 2010, the Fee Examiner provided all of the professionals in this proceeding with a draft memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

**COMMENTS**

13. **Task Allocation and Billing Rates**. Services have been provided by three position titles for attorneys and one position title for non-attorneys. The blended rate for Caplin's professional services was not disclosed in the application but appears to have been a total blended rate, not including paraprofessionals, of $517.29 an hour. This rate corresponds to a partner-level billing rate. *See* Retention Application at 8 ($410-$950 rate range for Members and Of Counsel). The Fee Examiner notes that the Fee Application includes charges associated with rate increases ranging from 2.3 to 3.3 percent. *See* Fee Application at 7-8. Caplin adjusts its billing rates on an annual basis. Retention Application, at 7 n.1.

    A. A comparison of billing rates among the law firms providing services in this case suggests that Caplin's rates at most experience levels are on a par with their

6

most expensive peers. In addition, 60 percent of the firms work was performed by "Member" and "Of Counsel" attorneys, supported by a single associate performing 21 percent of the work and a group of paralegals performing the remaining 19 percent of the work.

  B. In response to the Fee Examiner's inquiry, Caplin noted that more than half the total attorney time—878.5 hours—in this matter was spent by a junior partner working with an associate. Caplin also stated that it does not believe it is appropriate for the Fee Examiner to second guess its, or any other professional's, staffing decisions. Caplin did not specifically address any of the examples of apparently routine legal services the Fee Examiner noted that were provided by partner-level attorneys.

  C. A fee applicant may only be compensated for services "performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed." 11 U.S.C. § 330(a)(3)(D). Each professional bears the burden to show that its staffing decisions are consistent with that requirement. Caplin has not met that burden.

  D. Caplin did not respond to the Fee Examiner's invitation, for example, to explain the necessity of a member-level attorney (with billing rates of $660-$675) performing such tasks as: significant routine research and drafting of memoranda;[1] setting up files; submitting requests for ECF registration; working on intake forms; and reviewing models for Caplin's fee application. Caplin's staffing decisions, in conjunction with the lack of any explanation for staffing decisions resulting in a partner-

---

[1] Caplin objects to the Fee Examiner's characterization of some of the research and drafting performed at partner rates as "routine." The detailed time descriptions, however, lead to no other conclusion: for example, drafting a memorandum on "publicly available information concerning GM asbestos litigation" or "[l]egal research re Delaware procedure for funding future obligations of dissolving corporation."

7

level blended rate, raise significant issues about the reasonableness of the rates Caplin is requesting for some of the services it has provided. *See*, *e.g.*, *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (the test for reasonableness is an objective one that considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances.") (citations omitted).

*In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel. However, since this is Caplin's first fee application in this case, the Fee Examiner recommends no reduction based on task allocation at this time.*

14. **Overhead**. Caplin professionals billed for tasks that may have been clerical or administrative in nature, including $2,520 for 10.5 hours of paralegal work devoted to computer hardware issues. Such tasks are part of a professional's overhead and should not be billed at professional rates to the estate. In response to the Fee Examiner's inquiry, Caplin explained that the services were related to restoring files to Caplin's computer system for work performed for Unsecured Creditors' Committee member Mr. Cooney. Caplin also explained that the retrieval and research in the files required legal judgment and could not have been performed by a clerical worker or administrator. In light of Caplin's explanation, no disallowance is suggested.

*Suggested disallowance for overhead expenses: none.*

15. **Review of time entries**. Caplin professionals billed $3,723.50 in fees related to reviewing and editing Caplin's time entries and time and expense exhibits for the Fee Application. This Court has held that such activities are compensable at half the time keeper's usual billing rate. *In re Motors Liquidation Co., et. al*, Tr. of Hr'g at 14:5-19, No. 09-50026, (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369].

*Suggested disallowance for time entry review: $1,861.75 (50 percent).*

8

16.     **Matter Descriptions**.  The Fee Examiner noted that Caplin divided its billing descriptions into 13 different task codes.  The services provided in each code are summarized, generally by a single sentence, in Exhibit B to the Fee Application.  Under the UST Guidelines, 28 C.F.R. Part 58, App. A, a fee applicant is to provide "a description of the project, its necessity and benefit to the estate, and the status of the project including all pending litigation for which compensation and reimbursements are requested."  UST Guidelines,  (b)(4)(iii)(A).

17.     The absence of a descriptive explanation of the services Caplin performed in each task code, in conjunction with the number of timekeepers who routinely described the tasks they performed in vague terms, makes it difficult to determine the necessity of some of the services.

18.     In its retention application and associated briefing, Caplin represented that it provided necessary services, where time was of the essence, prior to the creation of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims such that *nunc pro tunc* retention to October 2009 was appropriate.  The Court approved the retention application without the benefit of Caplin's detailed time entries.  Now that that information is available, it is particularly important to be able to determine the substantive work performed and ensure that all billable activities are properly identified.

19.     In response to the Fee Examiner's inquiry, Caplin stated that its task code descriptions, when read in conjunction with the individual time entries, satisfy the UST Guidelines' requirement for a narrative description of each project.  The Fee Examiner reminds professionals that in the interest of efficiency during the mandatory fee review process, each applicant should ensure that all required information is provided in such a way that the Fee Examiner, U.S. Trustee or the Court, is not required to search for necessary elements to the Fee Application.

*The Fee Examiner does not recommend a deduction for non-descriptive project categories; however, the applicant probably will want to adjust its task codes before submitting another fee application.*

20. **Retention of Epiq Solutions, Inc**. Caplin seeks $2,396 in fees related to preparing for the retention of Epiq Solutions, Inc. ("Epiq"). No such application has been filed, suggesting in the absence of explanation—that the services were unnecessary. In response, Caplin stated that it has not yet filed the Epiq retention application due to ongoing negotiations regarding the proposed retention terms, but that the application will be filed soon. In light of this explanation and in anticipation of such filing, the Fee Examiner does not suggest any disallowance of these fees at this time.

*Suggested disallowance for retention of Epiq Solutions: none at this time.*

21. **Vague Communications and Tasks**. Several Caplin professionals billed many hours to vaguely-described repetitive tasks (for example, "review/analyze filings to evaluate impact on ACC interests") or failed to adequately describe the tasks they performed (for example, "legal research re substantive legal issue" or "legal research re procedural legal issue"). This lack of detail not only makes a review of that professional's time more difficult, it also impedes the review of the fees billed by that professional's colleagues.

22. In response to the Fee Examiner's inquiry on this issue, Caplin stated that the entries identified by the Fee Examiner were lacking "more detail in order to protect work product privilege," and that some were also lacking detail "because to have provided less detail would have been unduly time-consuming." Caplin Response at 9. Finally, Caplin also has provided edited time detail to correct two time entries using the non-descriptive phrase "attention to."

23. This Court has ruled that professionals may submit time records with time entries sufficiently vague to prevent the disclosure of protected information. Tr. 07-06-2010 at 10:24-11:6. Professionals who rely on a privilege defense when submitting vague time

records may wish to certify, for example in the narrative description for a task code, that it has examined all entries to ensure that only those entries that—on an individualized basis—raise privilege issues have been described in either vague terms or redacted. In the absence of such certification, the Fee Examiner, U.S. Trustee or the Court may conclude that the fee applicant's reliance on the privilege defense is a *post-hoc* rationalization of a professional's improper time keeping instead of an assertion of a legitimate assertion of privilege. *E.g.*, *United States v. International Brotherhood of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.").

> *In light of Caplin's representation that the entries identified by the Fee Examiner could not be described in more detail due to work product privilege concerns, no disallowance is suggested.*

24. **Time Increments**. One Caplin paraprofessional routinely billed in half-hour or full-hour increments more than half of the time. The paraprofessional's colleagues, in contrast, billed in half-hour or full-hour increments approximately 32 percent of the time. Billing in tenth of an hour increments is required, and this Court has noted that repeated use of half- and full-hour increments does not comply with the billing increments guidelines. Tr. 07-06-2010 at 16:16-17:3.

25. In response to the Fee Examiner's inquiry, Caplin responded that,

> [Although it] recognizes the law of probabilities, we submit that, unlike, for example, a simple coin toss, the activities of paralegals and other professionals are not random; but rather that such professionals budget their time based on their overall work load and the difficulty of an assignment. We do not believe that [REDACTED]'s time entries are mere estimates. Rather, we believe that such time entries reflect the amount of time that [REDACTED] budgeted to, and spent upon, the activities in question.

Caplin Response at 7.

11

26. This response does not address the disparity between this paraprofessional's billing increments and those of her colleagues, nor does it address why so many of this paraprofessional's instances of half-hour and full-hour billing occurred nearly as a continuous string over a short period of time.

*Suggested disallowance for failing to keep time in tenths of an hour: $2,284.00 (10 percent of SJD billings).*[2]

27. **Block Billing**. Pursuant to the UST Guidelines, time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Fee Examiner has identified several Caplin timekeepers that routinely failed to comply fully with this guideline.

28. The Fee Examiner has applied (and the Court in this proceeding has enforced against other fee applicants) the "anti-lumping" standard in the UST Guidelines, 28 C.F.R. Part 58, App. A:

> Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimus amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.

(b)(4)(v). Numerous Caplin time entries fail to meet this standard. In response to the Fee Examiner's general inquiry regarding Caplin professionals' block billing, Caplin provided amended time descriptions for the block-billed entries which it identified, totaling approximately six percent of their total time entries, by their calculations.[3] The amended time descriptions meet the UST Guidelines' prohibition against lumping.

---

[2] The Fee Examiner's calculations for this paraprofessional's billings—as well as her colleagues'—does not include time spent in the docket review task code.

[3] Caplin also stated that it believed that many of the block billed entries may have resulted "from an accounting department 'glitch' that occurred on the day the Fee Application was filed." Caplin Response at 8.

29.     The Fee Examiner notes that Caplin's remedial time entries do not span the entire compensation period, nor do they remedy all block-billed time. *E.g.*, (12/22/2009, "Review memo re insurance issues and brief research re FCR issue" (1.1 hours); 03/08/2010, "Review/analyze correspondence and communicate with TWS and PVNL re case status and work agenda" (0.8 hours)).  Moreover, the Bankruptcy Code requires contemporaneous timekeeping, and the Fee Examiner necessarily questions the accuracy of time segregation taking place, in some instances, nine months after the work was completed.

*Suggested disallowance for block billing:  $9,943.81 (two percent of total fees billed).*

30.     **Billing Discrepancies**.  Caplin erroneously billed for $249.50 as a result of errors in individual time entries.  Caplin has agreed to voluntarily reduce its Fee Application by this amount.

*Suggested disallowance for billing discrepancies:  $249.50.*

31.     **Cab Fares/Car Service**.  The Fee Application seeks $293.69 for local cab fares. This Court has established a "safe-harbor" rule allowing professionals to charge after-hours cab fare to the estate if they have worked on the case more than six hours in a single day or "if the facts reveal[] any special circumstances such as a crisis that arose late in the day." *See* Tr. 07-06-2010 at 24:11-13.  Only two of the requested reimbursements comply with the Court's requirement.  Caplin responded that the remaining cab fare reimbursements appear to have been misdated.  Caplin confirmed that only one cab fare—for $40.25—does not meet the Court's safe-harbor rule and has voluntarily agreed to reduce its request by that amount.

*Suggested disallowance for local travel:  $40.25.*

32.     **Out of Town Meals**.  Caplin's Fee Application requests $106.51 in reimbursement for out-of-town meals with no documentation.  Caplin has since provided the necessary documentation which shows that its meal reimbursement requests exceed $20 per

13

person per meal for two meals. In addition, the documentation shows a $9.50 charge for a travel snack that includes a $6.00 charge for liquor, which the Fee Examiner suggests is noncompensable.

*Suggested for disallowance for out of town meals: $54.30 (for meals in excess of $20 and liquor accompanying a travel snack).*

33. **Professional Fees & Expert Witness Fees**. Caplin identified $20,856.00 in "Professional Fees & Expert Witness Fees" in its request for reimbursement. In response to the Fee Examiner's inquiry about possible subretentions by the firm, Caplin provided documentation that the expenses were, in fact, transcript fees that had been misclassified as fees to professionals or experts. In light of the documentation, no disallowance is suggested.

*Suggested disallowance for misclassified expenses: none.*

34. **Vendor Photocopying**. In response to the Fee Examiner's request for documentation of photocopying expenses, Caplin provided a satisfactory itemization of charges.

35. **Hotel Long Distance**. Caplin has charged the estate $43.90 for long distance calls in a hotel room and in response to the Fee Examiner's inquiry, explained that the charge was incurred due to poor cell phone reception.

*Suggested for disallowance for hotel long distance: none.*

> *Total Fees Suggested for Disallowance: $14,339.06.*
>
> *Total Expenses Suggested for Disallowance: $94.55.*
>
> *Total Fees and Expenses Suggested for Disallowance: $14,433.61.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of

review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.  The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Madison, Wisconsin
September 17, 2010.

GODFREY & KAHN, S.C.


By:    /s/ *Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5380605_1