**Hearing Date and Time:  September 24, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  September 17, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Eric J. Wilson (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
                                                         :
In re:                                                   :     Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, et al.,                      :     Case No. 09-50026
      f/k/a General Motors Corp., et al.,                :     (Jointly Administered)
                                                         :
                  Debtors.                               :     Honorable Robert E. Gerber
                                                         :
-------------------------------------------------------- x
```

### FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO THE THIRD INTERIM FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP

**TO:    THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Third Application of Weil, Gotshal & Manges LLP, as Attorneys for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From February 1, 2010, Through May 31, 2010* [Docket No. 6554] (the "**Third Fee Application**").  With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $284,467.99 in fees and

expenses, from a total of $5,457,612.27 requested in the Third Fee Application, that are

objectionable.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Third Fee Application, counsel for the Fee Examiner raised a series

of concerns about the application by letter to Weil, Gotshal & Manges LLP ("**Weil**") dated

August 31, 2010, and then in a draft of this report sent to Weil on September 10, 2010.  Other

than noting a computer error with regard to time entries for reviewing billing records, Weil did

not respond to either the letter or the draft report.  Summarized in **Exhibit A**, this *Report and

Statement of Limited Objection* suggests disallowance of $282,079.09 in fees and $2,388.90 in

expenses for a total suggested reduction of $284,467.99, from a total request of $5,457,612.27 in

interim compensation.

Like the last fee application submitted by Weil, a single component of the recommended

fee disallowance—a 75 percent suggested deduction for time spent reviewing billing records—

accounts for more than 45 percent of the total recommended fee disallowance.  In addition,

almost $600,000 of the fees in the Third Fee Application (or more than 10 percent of the fees

requested) are attributable to hourly rate increases unilaterally implemented by Weil during the

course of the Third Compensation Period.  These increases require, at the least, further

explanation.

## BACKGROUND

1.       Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates

("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated procedurally and are being jointly

administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are

authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].  Plan confirmation is anticipated before—or soon after—year-end.

3.      On January 13, 2010, Weil filed its first interim fee application [Docket No. 4803] (the "**First Fee Application**"), seeking fees and expenses in the amount of $18,506,169.92 for the period from June 1, 2009, through September 30, 2009 (the "**First Compensation Period**").

4.      On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of Weil, Gotshal & Manges LLP* (the "**Fee Examiner's First Report**"), identifying $1,290,391.90 in fees and expenses that were objectionable [Docket No. 5563].  That report and statement is incorporated by reference.

5.      On April 29, 2010, this Court issued an oral ruling that granted the First Fee Application in part but required a continued holdback of 10 percent of Weil's requested fees.  On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by Weil.  *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**First Omnibus Order**") [Docket No. 5834].  The First Omnibus Order authorized payment to Weil of $17,686,445.97 for fees (which included the 10 percent holdback) and $550,260.95 for expenses.

6.      On March 17, 2010, Weil filed its second interim fee application [Docket No. 5295] (the "**Second Fee Application**"), seeking fees and expenses in the amount of

$6,302,627.06 for the period from October 1, 2009, through January 31, 2010 (the "**Second Compensation Period**").

7.    On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the Second Interim Fee Application of Weil, Gotshal & Manges LLP* (the "**Fee Examiner's Second Report**"), identifying $194,352.31 in fees and expenses that were objectionable [Docket No. 6095]. That report and statement is incorporated by reference.

8.    On July 6, 2010, this Court issued an oral ruling that granted the Second Fee Application in part but continued to require a holdback of 10 percent of Weil's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the Second Fee Application submitted by Weil. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to Weil of $5,807,621.90 for fees (which included the 10 percent holdback) and $373,937.96 for expenses.

9.    In the Third Fee Application, as a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Weil reports it has previously submitted monthly statements and received payments from the Debtors totaling $1,096,987.86 for the Third Compensation Period, consisting of 80 percent of

4

the requested fees and 100 percent of the requested expenses invoiced for February 2010.  *See*

Third Fee Application, ¶ 12.  As of the date of the Third Fee Application, Weil reported it had

not yet received payment for the fees or expenses invoiced for March, April, or May 2010.  *Id.*

10.    After reviewing the Third Fee Application and supporting documentation, counsel

for the Fee Examiner sent Weil a letter dated August 31, 2010 (the "**August 31 Letter**"), which

sought additional information regarding the following issues:

A.    Hourly rates;

B.    Time billed to review time records;

C.    Time billed in half-hour and whole-hour increments;

D.    Block billing;

E.    Time entries billed with vague task descriptions;

F.    Legal research tasks;

G.    Clerical and administrative tasks;

H.    Transient billers;

I.    Non-working travel time;

J.    Pre-retention expenses;

K.    Potential double billing;

L.    Meal expenses;

M.    Local transportation expenses; and

N.    Certain expenses that appeared to be administrative overhead.

11.    On September 10, 2010, the Fee Examiner sent Weil a draft of this *Report and*

*Statement of Limited Objection*, offering yet another opportunity for discussion.

5

12.    In an email to counsel for the Fee Examiner dated September 15, 2010, Weil

acknowledged a computer error with regard to its time entries for reviewing its billing records.

*See infra* at ¶ 27.  Otherwise, Weil expressly declined to respond either to the August 31 Letter

or to the draft of this report.

## APPLICABLE STANDARDS

13.    The Fee Application has been reviewed for compliance with the *Amended*

*Guidelines for Fees and Disbursements for Professionals in Southern District of New York*

*Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local**

**Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement*

*of Expenses Filed Under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST**

**Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the

"**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket

No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the

extent, if any, that variation has been expressly permitted by order.  In addition, on July 28,

2010, the Fee Examiner provided all of the professionals in this proceeding with a draft

memorandum summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and

expenses.

## COMMENTS

14.    **Project Staffing**.  Services provided by Weil reflect three position titles for

attorneys (partner, counsel and associate) and various titles for non-attorneys (law clerks,

paralegals, clerks, library staff and "other non-legal staff").  The hourly billing rates for

partner-level attorneys ranged from $390 to $1,000—with a blended rate of $890.86 for all

36 partner-level attorneys providing services in the Third Compensation Period.  *See* **Exhibit B**,

at 2.  The hourly billing rate for counsel-level attorneys ranged from $700 to $925—with a

blended rate of $700.65 for all four counsel-level attorneys providing services during the same

period. *See id.* The hourly billing rate for associate-level attorneys ranged from $227.50 to

$695—with a blended rate of $538.70 for all 66 associate-level attorneys providing services

during the same period. *See id.* at 4. The hourly billing rate for the non-attorneys providing

services ranged from $75 to $275. *See id.* at 4-6.

15.    Similar to the first two compensation periods, as a general matter, Weil continued

to distribute work during the Third Compensation Period appropriately between timekeepers of

varying seniority levels. As outlined in Exhibit B, 22.11 percent of the hours billed during the

Third Compensation Period were at partner-level rates. *See id.* at 2. In contrast, 54.82 percent of

the hours billed during the same time frame were at associate-level rates. *See id.* at 4.

   *Suggested disallowance for project staffing:  None.*

16.    **Billable Rates**. Weil seeks nearly $600,000 in fees—more than 10 percent of the

total requested—that are the direct result of hourly rate increases implemented during the Third

Compensation Period. *See* **Exhibit C**. The Fee Examiner's First Report observed that Weil's

rates at most experience levels were already higher than many other law firms providing services

in this case. *See* Fee Examiner's First Report, ¶ 22. Noting that other law firms retained by the

Debtors voluntarily provided a discount from their customary billing rates, the Fee Examiner

suggested that the Court apply a five percent discount to Weil's rates, *id.* at ¶ 24, which the Court

declined to do.

17.    The hourly rates billed by Weil have steadily increased during these proceedings.

Although project staffing has remained relatively constant between senior level and junior level

attorneys in the firm, the overall blended rate for all Weil timekeepers has nonetheless increased

by approximately 17 percent—from $487.12 during the First Compensation Period to $570.31

during the Third Compensation Period.  *See* Ex. B at 6; Fee Examiner's First Report, Ex. B at 16.

18.    The hourly rate increases during the Third Compensation Period (a period

beginning in February, presumably after annual rate increases that ordinarily might have

occurred at the beginning of the year) were sometimes significant with respect to particular

timekeepers.  For example, the hourly rate for one associate increased by nearly 20 percent, from

$500 to $595, resulting in an additional $45,400 in fees during the Third Compensation Period.

*See* Exhibit C at 1.  Other examples are easily found.  In total, $593,240 of the fees requested in

the Third Fee Application result from rate increases that Weil implemented during this latest

compensation period.  *See id.* at 4.

19.    The question of increases in hourly rates during the course of a chapter 11

proceeding, particularly serial increases, has been a significant issue in the *Lehman Brothers*

proceeding.  The Fee Committee there, in its last report, said this:

> Increases to 2009 billing rates [for 2010] will be reviewed for
> reasonableness in accordance with the standards set forth under
> Bankruptcy Code 11 U.S.C. §330(a)(3).  If the fees requested are
> not found to be reasonable they will be opposed effective on
> January 1, 2010 and increases will be deducted and reflected in the
> Fifth Interim Fee Application and all subsequent fee applications.

*In re Lehman Brothers Holdings Inc. et al.*, Fee Committee Report Pertaining to the Fourth

Interim Fee Applications of All Retained Professionals, at 3, No. 08-13555 (Bankr. S.D.N.Y.

Aug. 20, 2010) [*Lehman Brothers* Docket No. 10947].

20.    There may be no precedential basis for a *per se* prohibition against rate increases

during a chapter 11 case, but significant rate increases should, like other fee matters, be

affirmatively disclosed and subject to reasonableness review.  *See*, *e.g.*, *In re Teraforce Tech.*

*Corp.*, 347 B.R. 838, 860 (Bankr. N.D. Tex. 2006); *In re Hale-Halsell Co.*, 391 B.R. 459, 462

(Bankr. N.D. Okla. 2008); *In re Lee Tractor Co., Inc.*, 2008 WL 2788413, at *2 (Bankr.

E.D.N.C. 2008) (not reported).  Without such review, a firm's unilateral decisions to increase its

billable rates—even those done repetitively and in significant amounts—remain unchecked.

21.     At the least, any application that reflects an increase of more than five percent per

year for a timekeeper or group of timekeepers should be accompanied by an appropriate

certification that, at a minimum, describes previous increases, verifies that the rate increase was

part of a firm-wide adjustment that resulted in the same increases for comparable clients, or that

some special circumstance justifies the rate increase.  *See, e.g., In re Computer Learning*

*Centers, Inc.*, 285 B.R. 191, 201 (Bankr. E.D. Va. 2002) (disallowing billable rate increase

where no evidence was presented as to its reasonableness).[1]

22.     In the August 31 Letter, the Fee Examiner asked Weil to explain the rationale for

the amounts and timing of the rate increases for particular timekeepers during the Third

Compensation Period.  The Fee Examiner also asked Weil to confirm that the rate increases were

applicable to Weil's non-bankruptcy clients.  Lastly, to the extent that timekeepers billed time to

both this matter and non-bankruptcy matters during the same time frame, the Fee Examiner

asked Weil to confirm that the billable rates for the timekeepers in the bankruptcy case were no

more than the billable rates for those same timekeepers in non-bankruptcy matters.  Weil chose

not to respond to any of these requests.

---

[1] With respect to the need for or, at the least, desirability of providing notice of rate increases, the Debtors did file a
*Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend
the Terms of their Engagement with Brownfield Partners, LLC* [Docket No. 5207], dated March 5, 2010, which
included disclosure of a proposed hourly rate increase.  The Fee Examiner requested additional information on that
increase and, in response, the Debtors provided an affidavit of Ted Stenger [Docket No. 5934].  In other bankruptcy
proceedings, retained professionals likewise have provided notice of increases to their hourly billing rates.  *See, e.g.,
In re Saint Vincents Catholic Medical Centers of New York et al.*, Notice of Change of Hourly Billing Rates of
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. as Special Counsel to the Debtors, No. 10-11963 (Bankr.
S.D.N.Y. Sept. 10, 2010) [Saint Vincents Docket No. 856].  This Court has recently entered retention orders in other
matters requiring such notice.  *See In re Basilicata Realty Corp.*, Order Authorizing the Retention and Employment
of the Law Office of Cesar A. Fernandez, P.C. as Counsel to Debtor *Nunc Pro Tunc* to the Petition Date, at ¶ 4,
No. 10-11887 (Bankr. S.D.N.Y. Sept. 9, 2010) [Basilicata Realty Docket No. 13].

*Suggested disallowance for billing rates: None at this time, subject to certification and further review.*

23.    **Review of Billing Records**.  During the Third Compensation Period, Weil billed more than $300,000 on matters relating to its own compensation.  *See* **Exhibit D**.  Many of these entries relate to time spent preparing its own fee application (as such), or preparing budgets to forward to the Fee Examiner, or compiling data in LEDES format to submit to the Fee Examiner. The Fee Examiner does not recommend a disallowance for time spent on these tasks.

24.    Nonetheless, the Fee Examiner notes that the amount of time Weil has spent on these matters has increased.  During the first two interim compensation periods, the total fees that related to Weil's own compensation were less than two percent and less than five percent, respectively, of the total fees requested during those two periods.  In contrast, during the Third Compensation Period, approximately 5.8 percent of the fees requested by Weil relate to its own compensation.

25.    During the Third Compensation Period, Weil billed time corresponding to its review of fee statements or billing records to a separate task code, identified as task code 60. **Exhibit E** contains these entries, as well as $3,302 of other entries that the Fee Examiner identified as corresponding to review of fee statements or billing records.

26.    In its prior ruling, the Court said it would apply a 50 percent disallowance to prospective fee applications for time spent reviewing billing records.  Tr. 07-06-2010 at 14:13-19.[2]  Exhibit E – containing a total of $176,847 in fees – contains the time entries to

---

[2] *See also In re CCT Communications, Inc.*, Memorandum Decision Regarding Final Fee Applications by Robinson Brog Leinwand Greene Genovese & Gluck P.C. and Wiley Rein LLP, at 19, No. 07-10210 (Bankr. S.D.N.Y. Aug. 24, 2010) ("[T]he review and editing of time records—as opposed to fee applications—is not compensable. Outside of bankruptcy, lawyers presumably do not charge their clients for preparing time records.") (Bernstein, J.).

which the Court should apply this 50 percent disallowance.[3]  Weil submitted its time for these

activities without applying any discount.  In an email dated September 15, 2010, Weil explained

that it intended to bill entries for task code 60 (for review of its fee statements and billing

records) at half-rate.  Because of a computer error, however, that did not occur.  Weil has not

amended its fee request.

27.      In addition to the 50 percent disallowance applied due to the inherent nature of the

billable activity, the time entries for reviewing billing records are also subject to review for their

reasonableness.  Weil does not appear, based on the face of its application, to have altered its

timekeeping practices in response to prior rulings by the Court.  In reports filed with respect to

the first two interim compensation periods, the Fee Examiner noted his concern regarding the

total amount of time spent by Weil timekeepers (and timekeepers at other firms) reviewing their

own billing records.  *See*, *e.g.*, *Fee Examiner's Report and Statement of Limited Objection to the

First Interim Fee Application of Weil, Gotshal & Manges LLP* [Docket No. 5563], ¶ 28 (noting

that 26 Weil timekeepers billed 940.00 hours during the First Compensation Period for reviewing

billing records); *Fee Examiner's Report and Statement of Limited Objection to the Second

Interim Fee Application of Weil, Gotshal & Manges LLP* [Docket No. 6095], ¶ 15 (noting that

15 Weil timekeepers billed 670.40 hours during the Second Compensation Period for reviewing

billing records).  Given the exigencies of the first few months of these proceedings, the Fee

Examiner chose not to object to the time spent reviewing billing records during the First

Compensation Period.  For the Second Compensation Period, however, the Court agreed that the

total amount of time spent by Weil reviewing billing records was "plainly inappropriate."  *In re*

---

[3] The draft report submitted to Weil included an exhibit that focused solely on review of time entries, and did not contain all of the fees that Weil billed to task code 60.  Exhibit E contains all of the entries for review of time entries, but also contains other entries billed to task code 60, relating primarily to review of monthly fee statements.

*Motors Liquidation Company, et al.*, Second Interim Fee Ruling Tr. at 15:22-24, No. 09-50026

(Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369] (hereinafter "Tr. 07-06-2010").

28.     The Third Fee Application presents the same issue.  Exhibit E details the work of

18 timekeepers who billed a total of 645.20 hours related to the examination of Weil's own

billing records.  When printed, the time and expense entries submitted by Weil in connection

with the Third Fee Application spanned 627 pages.  To spend the amount of time that Weil

timekeepers logged in connection with review of their own billing records (645.20 hours), one

would have to spend more than an hour looking at *each page* of these billing records.

29.     Given the large amount of time spent on these activities by Weil timekeepers, the

Fee Examiner again requests an adjustment.  In addition to the 50 percent reduction already

applied by the Court to the review of billing records by all professionals in these proceedings,

Tr. 07-06-2010 at 14:13-19, the Fee Examiner recommends an additional 25 percent reduction.

As reflected in Exhibit E, the total amount of time Weil billed to these matters was $176,847.

A 75 percent disallowance amounts to $132,635.25.

> *Suggested disallowance for time billed to reviewing billing records:  $132,635.25.*

30.     **Responses to Fee Examiner and U.S. Trustee**.  The Third Fee Application also

includes $48,370.50 of fees for time entries responding to concerns raised by the U.S. Trustee,

by the Fee Examiner, or in hindsight by the Court about prior applications.  *See* **Exhibit F**.

31.     The Bankruptcy Code permits a retained professional to seek compensation for

preparing a fee application but only based on "the level and skill reasonably required to prepare

the application."  11 U.S.C. § 330(a)(6).  That leaves open the question, however, whether time

is compensable that has been spent remedying deficiencies in fee applications and time records,

communicating with a fee examiner or the U.S. Trustee, and presenting such matters to the

Court.  The cases appear to reflect a split of authority.  *See* 3 Collier on Bankruptcy

¶ 330.03[16][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); *see also In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (Bernstein, J., noting split of authority and permitting compensation where fee applicant has "substantially prevailed.").

32.    Courts that have denied compensation have often reasoned that defending a fee application is a different activity—within the meaning of Code—than preparing the application. *E.g.*, *In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991); *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); *In re Brous*, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007).  Some of those courts have also noted that absent explicit statutory or other authority, the American Rule—where each party pays its own litigation costs—generally applies.  *E.g.*, *St. Rita's*, 260 B.R. at 652.  Those courts embracing this position, however, have generally left open the possibility that, under the right facts, compensation may be appropriate nonetheless.  *E.g.*, *Riverside-Linden*, 945 F.2d at 323 (leaving open whether fee litigation might be "necessary"—and compensable—within the meaning of the Code); *St. Rita's*, 260 B.R. at 652 (leaving open whether compensation could be had where the objection was itself not meritorious); *In re Teraforce Tech. Corp.*, 347 B.R. 838, 867 (Bankr. N.D. Tex. 2006) (noting that "counsel should not normally be able to recover" and disallowing fees for defending objections filed in good faith and largely meritorious).

33.    Judge Bernstein, writing in *Brous* three years ago, analyzed the relatively few cases on the issue and denied the compensation requested by a chapter 7 trustee for responding to a "good faith" fee objection.  He noted both the force of the American Rule and the fact that the objecting party had "substantially prevailed."  370 B.R. at 572.  In *Teraforce Tech. Corp.*, cited in *Brous*, Judge Houser noted the division of authority, cited *St. Rita's* with approval, and

emphasized the American Rule, concluding that the objections "were filed in good faith and ultimately resulted in a partial disallowance of the requested fees." 347 B.R. at 866. The Code's silence on the issue led her to conclude that "counsel should not normally be able to recover fees for defending a fee application...." *Id*. at 867.

34.    Other courts have ruled differently. "[R]equiring counsel who has *successfully* defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application." *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005) (emphasis added); *see also In re Ahead Commc'ns Sys., Inc.*, No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. 2006); *In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002). Again, however, those courts permitting compensation have often noted that a *per se* rule is nonetheless not appropriate because it could encourage meritless fee requests. *Worldwide Direct*, 334 B.R. at 112; *Smith*, 317 F.3d at 928-29 (distinguishing *Riverside-Linden* on the basis of the merits of the defense and granting fees based in part over a concern of fee dilution).

35.    The Code's silence on the availability of estate compensation for defending a fee application led Judge Cudahy (a senior 7th Circuit judge sitting in the 9th Circuit) in *In Re Smith* to reach precisely the opposite conclusion several bankruptcy judges had reached. Relying on section 330(a)(4)(A), he said the denial of compensation for contested fee awards would "reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." 317 F.3d at 928. The Court emphasized as well that the objections had been found "frivolous" and that counsel had successfully defended its fee award. *Id*. at 929, citing *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

14

36.     A general reasonableness standard should apply to disallow compensation for defending a fee request that contained errors on established points of law while not penalizing a professional who could not have known that specific billing practices would not be approved. Such an approach may distinguish between professionals whose billing practices provoked questions or objections due to their relative inexperience with bankruptcy and experienced bankruptcy professional who incurred fees defending objections for errors or omissions it could have or should have known could trigger an objection or a request for more information.

37.     The Fee Examiner's objections to the First Fee Application were sustained in part and overruled in part.  It probably would waste time and resources to try to determine, item by item, or on a percentage basis, which objections were sustained, which were denied, and which were resolved without dispute by the parties, or to try to parse the time attributable to each of them.

38.     Professionals should not, as a matter of course, be fully compensated for participating in a fee review process that results in material and sustained objections.  In light of Weil's significant experience in bankruptcy cases and the nature of the guideline compliance issues this Court has addressed, a 50 percent deduction in this billing category is appropriate.

*Suggested disallowance for responses to Fee Examiner and the U.S. Trustee: $24,185.25.*

39.     **Objection to NUMMI Proof of Claim.**  During the Third Compensation Period, Weil timekeepers billed a large amount of time—resulting in fees of more than $240,000—responding to a Proof of Claim filed by New United Motor Manufacturing, Inc. ("NUMMI"). The claim, filed by an automobile and component parts manufacturer, sought $500 million from Debtors stemming from alleged breaches of contract and fiduciary duty by Motors Liquidation Company.

40.    On April 2, 2010, Weil filed a lengthy objection to the claim on behalf of the

Debtors. *See Debtors' Objection to Proof of Claim No. 67357 Filed by New United Motor*

*Manufacturing, Inc.* [Docket No. 5404]. Hearings have been set and adjourned on the matter,

and it remains pending. Counsel to the Fee Examiner has examined the time spent by Weil

timekeepers on this matter. Given the size of the claim and its complexity, the time spent by

Weil in responding to the claim was reasonable.

*Suggested disallowance for responding to NUMMI Proof of Claim: None.*

41.    **Time Increments**. The UST Guidelines require time entries to be recorded in

tenths of an hour. *See* UST Guidelines, (b)(4)(v). During the First Compensation Period, several

Weil timekeepers recorded their time entries in half-hour or whole-hour increments with unusual

frequency. *See* Fee Examiner's First Report, ¶ 32. During the Second Compensation Period,

this issue was far less prevalent with only one timekeeper, a paralegal, continuing to submit

problematic time entries. *See* Fee Examiner's Second Report, ¶ 22. The Court approved the

recommended 10 percent discount for the fees associated with these entries, a recommendation

the Court viewed as "very reasonable under the circumstances." Tr. 07-06-2010 at 17:4-7.

42.    During the Third Compensation Period, four Weil timekeepers have submitted a

large percentage (in each case, more than 50 percent) of their time entries in half-hour and

full-hour increments. *See* **Exhibit G**. Given the number of time entries involved for each

timekeeper, it is reasonable to conclude that these timekeepers have not recorded their time

accurately in tenth of an hour increments as required by the UST Guidelines.

43.    Among these four timekeepers is the same paralegal who submitted challenged

time entries during the first two compensation periods and with respect to whom the Court

applied a ten percent disallowance in the Second Compensation Period. Because of the

repetitive nature of this issue for Weil timekeepers, and one individual in particular, the Fee

Examiner recommends an increase in the disallowance applied to such entries for this latest interim compensation period. The Fee Examiner suggests a 25 percent disallowance of the $100,742.50 in fees recorded in half-hour and full-hour increments by these timekeepers.

*Suggested disallowance for time increments: $25,185.63 (25 percent of fees recorded in half-hour and whole-hour increments).*

44.    **Block Billing**. In **Exhibit H**, the Fee Examiner has identified $211,683 in fees where the timekeeper appears to have combined multiple tasks into one time entry of longer than one-half hour. *See* UST Guidelines, (b)(4)(v) ("Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed 0.5 hours on a daily aggregate."). The Fee Examiner recommends a 25 percent disallowance for these entries.

*Suggested disallowance for block billing: $52,920.75.*

45.    **Vague Entries**. To be compensable, all time entries must be sufficiently detailed to allow the Court to determine their compliance with applicable codes, rules, standards, and guidelines. With respect to time entries for "telephone calls, letters and other communications," the UST Guidelines require the entries to "give sufficient detail to identify the parties to and the nature of the communication." UST Guidelines, (b)(4)(v). The Fee Examiner has identified $28,385.50 of time entries that do not appear to meet these standards. *See* **Exhibit I**. Given the repetitive nature of these entries, the Fee Examiner recommends a 15 percent disallowance for these entries.

*Suggested disallowance for vague entries: $4,257.83.*

46.    **Legal Research**. On the whole, the time spent on legal research during the Third Compensation Period appeared appropriate. There were two separate legal research projects,

however, for which the Fee Examiner sought further clarification.  The entries for those two projects, which resulted in $55,647.50 of total fees, are summarized in **Exhibit J**.

47.    As detailed in the exhibit, over the course of approximately one week in March, a junior associate (with a 2009 bar admission date) spent more than 30 hours researching the legal effect of the vacated judgment in the *Chrysler* case.  Likewise, during two weeks in February, a more senior associate (with a 2001 bar admission date) recorded more than 50 hours researching and preparing a memorandum on the "risk of litigation to trust."

48.    Given the time spent on these tasks and the vague nature of the entries, the Fee Examiner requested further clarification regarding the tasks performed to evaluate the reasonableness of the fees.  Weil did not respond.  The Fee Examiner recommends a 15 percent disallowance, the same percentage disallowance suggested for vague entries.

*Suggested disallowance for legal research:  $8,347.13.*

49.    **Transient Billers**.  Several Weil professionals billed fewer than five hours during the Third Compensation Period.  *See* **Exhibit K**.  The fees for these timekeepers total $33,358.  While certain of these timekeepers appear to have worked on discrete tasks that may have added value to the estate commensurate with the fees charged, other timekeepers in this category performed tasks that were likely unnecessary in light of efforts by the many others devoted to the case full-time.  The Fee Examiner recommends a 50 percent disallowance for timekeepers who billed fewer than five hours during this compensation period.

50.    The Fee Examiner also notes that Weil has again grouped several timekeepers together in the summary sheet of the Third Fee Application, when those timekeepers each billed fewer than ten hours.  The UST Guidelines require a summary sheet that lists the hours billed for "each person" who billed time during the fee period.  *See* UST Guidelines, at (b)(3)(iv).  In subsequent fee applications, to comply with the UST Guidelines, Weil should identify "each"

timekeeper in its summary sheet.  The Fee Examiner has made this same request in his report on

Weil's first two interim fee applications.  *See* Fee Examiner's First Report, ¶ 40; Fee Examiner's

Second Report, ¶ 29.

*Suggested disallowance for transient billers:  $16,679.*

51.    **Clerical and Administrative Tasks**.  Clerical and administrative tasks that are

most appropriate for secretarial staff should be considered part of a law firm's overhead

expenses.  **Exhibit L** details time entries that appear to fit in this category, corresponding to

$16,565 in fees.  The Fee Examiner recommends disallowance of these fees in their entirety.

*Suggested disallowance for clerical and administrative tasks:  $16,565.*

52.    **Double Billing**.  **Exhibit M** outlines time entries that appear to have been double-

billed, presumably as the result of clerical errors, with the questioned amount totaling $577 in

fees.

*Suggested disallowance for double billing:  $577.*

53.    **Non-Working Travel Time**.  Non-working travel time is compensable at

50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time

should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp.

276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel

time at fifty percent of their hourly rates") (citations omitted).

54.    In accordance with this authority, Weil used a special project code for

non-working travel time and billed time recorded under this code at half its normal billing rates.

Two time entries for non-working travel were not billed to this code, however, resulting in

charges at full rates.  **Exhibit N** shows questionably coded time entries billed at full rates, which

totaled $1,452.50.  If properly coded, those entries would have been billed at half the normal

billing rate, for a total of $726.25.

*Suggested disallowance for non-working travel time:  $726.25.*

55.    **Pre-Retention Expenses**.  **Exhibit O** identifies one nominal $13 expense for a cab fare incurred prior to the filing of the bankruptcy petition on June 1, 2009.

*Suggested disallowance for pre-retention expenses:  $13.*

56.    **Administrative Expenses**.  **Exhibit P** outlines $252.10 in expenses for velobinding and coil binding are more properly considered overhead.

*Suggested disallowance for administrative expenses:  $252.10.*

57.    **Meal Expenses**.  Weil did not submit any meal expense for reimbursement where the meal expense exceeded the $20 per person limit, and the number of people at the meal was identified.  There were a few meal expenses, however, for which Weil did not disclose the number of people present.  *See* **Exhibit Q**.  With respect to these meals, the Fee Examiner recommends disallowance of $626.67, or the amount in excess of the $20 per person limit if one person were present at each of the meals.

*Suggested disallowance for meal expenses:  $626.67.*

58.    **Local Transportation Expenses**.  **Exhibit R** details $837.30 of expenses for apparent overtime transportation where the timekeeper invoiced fewer than six hours on that day. In accordance with the Court's prior ruling, the Fee Examiner recommends disallowance of these expenses as overhead.  Tr. 07-06-2010 at 24:1-2.

59.    Also enclosed as **Exhibit S** is a chart showing $659.83 of local transportation expenses incurred by a partner in Weil's Paris office.  Counsel for the Fee Examiner has requested further explanation from Weil regarding these expenses, but thus far has not received any.  Accordingly, the Fee Examiner recommends disallowance of these expenses in their entirety.

*Suggested disallowance for local transportation expenses:  $1,497.13.*

60.  **Travel Expenses**.  In the Third Fee Application, Weil only submitted compensable travel expenses.  For example, although Weil submitted several requests to reimburse airfare expenses, in each case that fare was either for economy class travel, or Weil adjusted the fare to a corresponding economy fare.  Likewise, all of the hotel expenses submitted by Weil were reasonable and compensable.

*Suggested disallowance for travel expenses:  None.*

*Total fees suggested for disallowance:  $282,079.09.*

*Total expenses suggested for disallowance:  $2,388.90.*

*Total fees and expenses recommended for disallowance:  $284,467.99.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Third Fee Application.  It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Third Fee Application.

Dated:  Madison, Wisconsin
             September 17, 2010.

GODFREY & KAHN, S.C.

By:      /s/ *Eric J. Wilson*
         Timothy F. Nixon (TN 2644)
         Eric J. Wilson (EW 1047241)

         GODFREY & KAHN, S.C.
         780 North Water Street
         Milwaukee, Wisconsin 53202
         Telephone: (414) 273-3500
         Facsimile: (414) 273-5198
         E-mail: tnixon@gklaw.com
                     ewilson@gklaw.com

         *Attorneys for Fee Examiner*

5381877_5