Max A. Moseley, Esq.
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
420 20th Street North
1600 Wachovia Tower
Birmingham, Alabama 35203
Telephone: (205) 244-3817
Facsimile: (205) 488-3817
mmoseley@bakerdonelson.com

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.,*<br>f/k/a General Motors Corp., *et al.,*<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 09-50026 (REG)**<br><br>**(Jointly Administered)** |

### RESPONSE OF CREDITOR SERRA CHEVROLET, INC. TO DEBTORS' THIRTY-NINTH OMNIBUS OBJECTION TO CLAIMS (DEALERSHIP CLAIMS)

Serra Chevrolet, Inc. ("Serra"), a creditor of Motors Liquidation Company, f/k/a General Motors Corporation ("GM"), respectfully responds to the Debtors' Thirty-Ninth Omnibus Objection to Claims (Dealership Claims) (the "Debtors' Objection") as follows:

#### I. INTRODUCTION

Serra has operated a Chevrolet dealership in Birmingham, Alabama for approximately 30 years. Serra has asserted a valid claim against GM in this bankruptcy case for damages caused to Serra by GM's pre-petition tortious interference with Serra's business dealings with a third party. The Debtors' Objection seeks to disallow or expunge Serra's claim based on GM's argument that Serra waived its claims by executing a dealership termination agreement on or around June 12, 2009 (the "Wind-Down Agreement") and a modification to this agreement on August 16, 2010 (the "Amendment"). GM's argument fails because the documents relied upon by GM do not waive the type of claim Serra asserted in this bankruptcy case, because the Wind-Down

Agreement and Amendment are void as a result of Serra's prevailing in binding arbitration, and because Serra returned all consideration paid by GM.

## II. BACKGROUND

### A. Serra's and GM's Involvement in This Bankruptcy Case

1. On June 1, 2009 (the "Petition Date"), GM commenced with this Court a voluntary bankruptcy case under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.§101, *et seq.* (the "Bankruptcy Code"). This Court is jointly administering GM's bankruptcy case with those of multiple other debtors under Chapter 11 Case Number 09-50026 (REG).

2. On December 11, 2009, Serra timely filed an amended proof of claim against GM in this case in the amount of $1,950,800.00 (claim number 69381). This claim represents the amount of damages Serra sought from GM in a state court lawsuit related to GM's pre-petition tortious interference with Serra's business relations with a third party.

### B. GM's Attempted Termination of Serra's Dealership

3. Prior to the Petition Date, Serra was an authorized Chevrolet dealer in Birmingham, Alabama for approximately thirty years pursuant to the terms of a "Dealer Agreement."

4. In a letter dated June 1, 2009—the same date as the Petition Date—GM advised Serra that GM was unilaterally terminating its thirty-year contractual business relationship with Serra and requested that Serra execute the Wind-Down Agreement enclosed with the letter and return it to GM on or before June 12, 2009. True and accurate copies of GM's June 1, 2009 letter and the Wind-Down Agreement are attached hereto collectively as **Exhibit A**. GM stated that if GM did not receive Serra's executed Wind-Down Agreement on or before June 12, 2009, GM would apply to the bankruptcy court to reject Serra's Dealer Agreement, in which case, GM would not "offer any wind-down or termination assistance in connection with such Dealer Agreement."

5.      The Wind-Down Agreement states on page 1 that by executing the agreement, Serra released GM from "any and all liability **arising out of or connected with the Dealer Agreement** . . . ." (emphasis added). Section 5 of the Wind-Down Agreement contains a general release of claims against GM. In consideration for Serra executing the Wind-Down Agreement, GM agreed to pay Serra $582,723.00 in wind-down assistance.

6.      Serra executed the Wind-Down Agreement on or about June 12, 2009 and returned it to GM.

C.      **Arbitrator's Reinstatement of Serra's Dealership**

7.      On December 16, 2009, the United States Congress enacted the Consolidated Arbitrations Act of 2010 (Public Law 111-117) (the "Arbitration Act") establishing that dealerships such as Serra that were "not lawfully terminated under applicable State law . . . shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement . . . ." Arbitration Act at § 747(b). The new law also provided that "[i]f the arbitrator finds in favor of a covered dealership, the covered manufacturer **shall** as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales and service agreement." Arbitration Act at § 747(e) (emphasis added).

8.      Serra requested that the status of its business relationship with GM be resolved by binding arbitration pursuant to its rights under the Arbitration Act. On July 1, 2010, the arbitrator issued a written, binding arbitration award in which it directed GM to reinstate Serra as a dealer of GM automobiles. A true and correct copy of the arbitrator's award in Serra's favor is attached hereto as **Exhibit B**. After the issuance of this binding arbitration award, GM was legally obligated to reinstate Serra as a GM dealer if certain conditions were met. *See* Arbitration Act at § 747(e).

9. On July 9, 2010, pursuant to its legal obligations under the Arbitration Act, GM sent Serra a letter of intent in which it agreed to reinstate Serra as a GM dealer. Subsequent to its receipt of this letter, Serra returned all of the $145,680.75 that GM had paid Serra in Wind-Down costs pursuant to the Wind-Down Agreement.

10. GM enclosed the Amendment to the Wind-Down Agreement with the Letter of Intent and both GM and Serra subsequently executed both the Amendment and the Letter of Intent. True and correct copies of the July 9, 2010 letter of intent and the enclosed Amendment are attached hereto collectively as **Exhibit C**.

### D.   Debtors' Objection to Claims

11. On August 13, 2010, GM and the other debtors in this bankruptcy case filed the Debtors' Objection, which seeks an order from the Court "disallowing and expunging from the claims register" numerous claims, including that of Serra. (Doc. No. 6646). GM argues that Serra's claim should be disallowed and expunged because it seeks recovery of money for which GM is not liable. *See* Debtors' Objection at p. 2. GM's reasoning is that by executing the Wind-Down Agreement and the Amendment, Serra released all claims against GM, including the claim asserted by Serra in its proof of claim for GM's tortious interference with Serra's business relationships with a third party.

### III.   ARGUMENT

12. This Court should deny GM the relief sought against Serra in the Debtors' Objection because any waiver that was executed by Serra was invalidated by the arbitrator's reinstatement of Serra as a GM dealer and by Serra's return of all funds paid by GM to GM, and because Serra's claim is not the type of claim contemplated by the documents executed by Serra. GM therefore remains liable to Serra for injuries caused by GM's pre-petition tortious acts, and this Court should allow Serra's claim to proceed.

B SKP1 936275 v3
2916456-000001 09/17/2010

### A.   The Wind-Down Agreement Does Not Bind Serra

13.   Because the arbitrator's reinstatement of Serra as a GM dealer effectively invalidated the Wind-Down Agreement, any releases contained in the Wind-Down Agreement are invalid and do not bind Serra.  Because Serra has not released or waived its right to pursue claims against GM, Serra's claim for the damages caused by GM's pre-petition tortious acts is enforceable against GM, and the Court should deny the relief sought by GM in the Debtors' Objection.

### 1.   The Arbitrator's Binding Award Invalidated the Wind-Down Agreement

14.   After Serra and GM entered into the Wind-Down Agreement, Congress passed the Arbitration Act in order to provided a new avenue for dealers like Serra to challenge GM's decision to terminate Serra's Dealership Agreement.  Pursuant to the rights created by the Arbitration Act, Serra challenged GM's termination of Serra's Dealership Agreement, and the arbitrator issued a binding order directing GM to reinstate Serra as a GM dealer if certain conditions were met.  By doing so, the arbitrator in effect invalidated the Wind-Down Agreement and placed GM and Serra in the same positions they occupied prior to the entry of the Wind-Down Agreement.

15.   Because the Wind-Down Agreement between Serra and GM was invalidated by the arbitrator, GM cannot now rely on waiver clauses in the Wind-Down Agreement to disclaim its liability to Serra for GM's pre-petition tortious actions.  To give effect to the Wind-Down Agreement in spite of the arbitrator's reinstatement of Serra as a GM dealer would be to undermine Congress' intent in passing the Arbitration Act. The Debtors' Objection fails to even mention the Arbitration Act, much less that an arbitrator entered a binding arbitration award pursuant to the Arbitration Act reinstating Serra as a GM dealer and thereby effectively invalidating the Wind-Down Agreement.  The arguments in the Debtors' Objection are not valid

against Serra insofar as they rely on the continued validity of the Wind-Down Agreement following the issuance of the arbitration award in Serra's favor.

**2.    The First Amendment to the Wind-Down Agreement Is Ineffective Because GM Gave No Consideration**

16.    The Amendment to the Wind-Down Agreement is unenforceable against Serra because GM did not give any consideration to Serra in exchange for Serra executing this document. "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Furthermore, the "promise to perform an existing legal or contractual obligation is, without more, insufficient consideration to support a new contract." *International Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997); *see also General Citrus Int'l Inc. v. Remien*, 2009 WL 2486164 (N.D. Ill. Aug. 10, 2009) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment."); *Johnson v. Seacor Marine*, 404 F.3d 871 (5th Cir 2005); *International Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989); *Holcomb v. United States*, 622 F.2d 937, 941 (7th Cir. 1980).

17.    The only act GM took or promised to take in the Amendment was to reinstate Serra's dealership if Serra performed certain tasks. GM was legally obligated to take the promised actions regardless of whether or not Serra agreed to the terms of the First Amendment and therefore GM did not give any consideration to Serra that would support GM's attempt to bind Serra to the terms of the Amendment. *See* Arbitration Act at § 747(e); *International Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997). Further, Serra provided consideration to GM for nullifying the Wind-Down Agreement by returning funds to GM. Because the Amendment is not enforceable against Serra, and because the arbitrator's award invalidated the Wind-Down

Agreement, GM has no basis to argue that the terms of the Wind-Down Agreement prevent Serra from enforcing its claim against GM, or that GM is not liable for damages GM caused to Serra by GM's pre-petition tortious actions.

**3. Even in the Absence of the Arbitration Award, GM Could Not Enforce the Wind-Down Agreement Because GM Did Not Give Any Consideration**

18. Even if the arbitrator had not reinstated Serra's dealership, GM could not enforce the Wind-Down Agreement because GM did not give any consideration to induce Serra to enter into the Wind-Down Agreement. While GM initially agreed to pay Serra certain funds if Serra executed the Wind-Down Agreement, GM never paid the full amount of the promised funds and the funds that were paid were all returned to GM after execution of the Amendment. GM has therefore not given any consideration that would allow it to enforce the Wind-Down Agreement against Serra. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F. 3d 1126, 1130 (7th Cir. 1997).

**B. The Language of the Wind-Down Agreement Only Waives Claims Related to the Dealership Agreement**

19. Even if the Wind-Down Agreement remained valid, it would not bar Serra's claim because Serra's claim is not related to the Dealer Agreement entered into between Serra and GM. The Recitals on page 1 of the Wind-Down Agreement explicitly state that the agreement only contemplates the waiver of Serra's claims insofar as they are "arising out of or connected with the Dealer Agreement." The Court should read this language in conjunction with the general waiver language of Section 5 of the Wind-Down Agreement when the Court interprets the scope of Section 5's waiver language. *See KMS Fusion, Inc. v. U.S.*, 36 Fed.Cl. 68, 77 (Fed. Cl. 1996) ("recitals may be read in conjunction with the operative portions of a contract in order to ascertain the intention of the parties"). Finally, when the Court interprets the scope of Section 5's waiver language, it should interpret any ambiguities against GM because GM unilaterally drafted all of

B SKP1 936275 v3
2916456-000001 09/17/2010

the language in the Wind-Down Agreement without input from, or negotiation with Serra. *Doynow Sales Associates, Inc. v. Rocheux Intern. of New Jersey, Inc.*, 647 F. Supp. 2d 296, 308 (S.D.N.Y. 2009) ("When a contract term is ambiguous, that rule of contract interpretation requires a court to adopt the meaning that is most favorable to the non-drafting party.") (quoting *Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007)).

20. While the Wind-Down Agreement contains some broad waiver language, the narrowing language in the Wind-Down Agreement's recitals shows that the Wind-Down Agreement intended the waiver to apply only to claims related to the Dealer Agreement. Serra's claim against GM is not related in any way to the Dealer Agreement but instead arises out of GM's pre-petition tortious interference with Serra's business relations with a third party. Because Serra's claim is unrelated to its Dealer Agreement with GM, the claim would not fall under the purview of the Wind-Down Agreement's waiver even if the agreement remained valid.

WHEREFORE, Serra respectfully requests that the Court deny the Debtors' Objection to the extent that it seeks entry of an order invalidating Serra's claim against GM and requests such other and further relief as the Court deems just.

Dated: Birmingham, Alabama
September 17, 2010

/s/     Max A. Moseley
Max A Moseley
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
Attorney for Creditor Serra Chevrolet, Inc.
420 20th Street North
1600 Wachovia Tower
Birmingham, Alabama 35203
Phone: 205-244-3817
mmoseley@bakerdonelson.com

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing has been served via electronic mail using the CM/ECF system, or via the United States Postal Service, first class mail in postage pre-paid envelopes to all those who have appeared and requested notice, on this 17th day of September, 2010.

                                      /s/ Max A. Moseley
                                      Of Counsel

B SKP1 936275 v3
2916456-000001 09/17/2010