COURT CLERK

**Hearing Date: September 24, 2010**
**Hearing Time: 9:45 a.m. (prevailing Eastern Time)**
**Hearing Place: New York, N.Y.**
**Objection Deadline: September 17, 2010, at 4:00 p.m. (prevailing Eastern Time)**

Walter J. Lawrence
#103
2609 N. Forest Ridge Blvd.
Hernando, Fl 34442
Telephone (269) 838-5076
Secured creditor in pro per

SEP 1 4 2010

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

**CHAPTER 11**
**CASE NO. 09-50026(REG)**

**MOTORS LIQUIDATION COMPANY,** *et al.,*    (Jointly Administered)
**f/k/a General Motors Corp.,** *et al.*

**Debtors.**

---

## SECURED CREDITOR, WALTER J. LAWRENCE'S REPLY IN OPPOSITION TO "DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION TO CLAIMS"

### I.     Facts

1.     On   February 10, 2010, the debtor, Motors Liquidation Company, et al., f/k/a/

General Motors Corp., et al filed with the United States District Court, Southern

District of New York, chapter 11 Case No, 09-50026(REG), Case No. 10-CV-

00036-RJH, Answering Brief of Motors Liquidation Company in Opposition to

Appeal of Walter J. Lawrence (**exhibit "1"**).

**The Relief Requested By Debtors Should Not Be Approved by the Court**

2,     A flied proof of claim is "deemed allowed, unless a party in interest...objects." 11

U. S. C. § 502(a). If an objection refuting at lease one of the claims' essential

allegations is asserted, the claimant has the burden to demonstrate the validity of

the claim. *See In re Oneida Ltd.* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re*

*Adelphia Commc'ns Corp.,* Ch. 11 Case No. 02-41729 (REG), 2007 Bankr

LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*

272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Here, in order for debtors to meet

their "burden to demonstrate the validity of the claim," id, Debtors first have to

show that the GM/UAW ERISA and IRC qualified pension plan payment is

property of the estate, second that the May 8, 2001, Bankruptcy Court order

(exhibit #3) is not binding on debtors, third that the provisions of 29 U.S.C. §

1144(d), 1.401(a)-13(b)(I), 26 U.S.C. § 6331(d)(4) and 26 C.F.R. § 301.6331-

2(a)(1), 26 C.F.R. § 1.401(a)-13(e) are not binding on Debtors, fourth, why the

provisions of 29 U.S.C. §1056(d)(1), 26 U.S.C.§ 401(a)(13A), 26 C.F.R.

§1.401(a)-13(1) ( i ), (ii), 26 U.S.C. § 6065, 6061,  Treasury Reg. § 1.6061-1, are

not binding on Debtors.

3.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under any agreement  or applicable law." 11

U.S.C. § 502(b)(1). The "agreement" is the  GM/UAW ERISA and IRC qualified

pension plan. It is this "agreement" that stands as a bar that Debtors. Further, the

"applicable law," id, is  29 U.S.C. § 1144(d), 1.401(a)-13(b)(I), 26 U.S.C. §

6331(d)(4), 26 C.F.R. § 301.6331-2(a)(1), 26 C.F.R. § 1.401(a)-13(e), 29 U.S.C.

§1056(d)(1), 26 U.S.C.§ 401(a)(13A), 26 C.F.R. §1.401(a)-13(1) ( i ), (ii), 26

U.S.C. § 6065, 6061,  Treasury Reg. § 1.6061-1, and 26 U.S.C. § 61(a).

4.      Debtors reply brief (**exhibit "1"**) clearly establishes that the issues involved in

the pending appeal is a mirror image of the issues involved in this proceeding. For

example, in Answering Brief of Motors Liquidation Company in Opposition to

Appeal of Walter J. Lawrence (**exhibit "1"**), Debtors stated at page #5 that:

> Appellant is the plaintiff in civil action number 07-408 pending in the
> United    States District Court for the Middle District of Florida (the
> 'Florida Court') against MLC and the General Motors Hourly-Rate
> Employees Pension Plan (the 'Pension Plan'). [CD-4 at 3]. Appellant
> commenced the Florida Action pro se on October 9, 2007. [*Id.*] The Florida
> Action alleges that Appellant is a former MLC hourly employee who, upon
> his retirement from MLC in 1993, began receiving a monthly pension
> benefit. [Id.] The Florida Action further alleges that MLC and the Pension
> Plan violated the Employees Retirement Income Security Act ("ERISA")
> by remitting Appellant's pension benefits to the Internal Revenue ("IRS")
> pursuant to a garnishment obtained by the IRS and by reducing Appellant's
> pension payments by 50 0/0 to reimburse the Pension Plan for previous
> overpayments it had made to Appellant. [*Id.*}

5.  On  May 19, 1999, the IRS  issued a Notice of Levy.  The Debtor and the IRS  has

used and is using the May 19, 1999, Notice of Levy as a restrictive document to restrict secured

creditor, Walter J. Lawrence  from having complete dominion and control over the GM/UAW

ERISA and IRC qualified pension plan payments. The IRS  has used  and is using the May 19,

1999, Notice of Levy,  which is credible evidence,   as an instrument  to determine an  income tax

deficiency liability against secured creditor, Walter J. As a result of execution of this restrictive

document to restrict secured creditor, Walter J. Lawrence  from having complete dominion and

control over the GM/UAW ERISA and IRC qualified pension plan payments  has thus   resulted

in the debtor's and the IRS  acts being invalid, arbitrary and capricious..

Page 3 of 31

6.    Starting with the May 19, 1999, Notice of Levy executed by Debtor on secured

creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRC qualified pension plan

payments and social security payments which has been ordered barred by the May 19, 1999,

Notice of Levy and the order of eh United States Bankruptcy Court, Northern District of Florida,

Tallahassee, case no. 01-70047-TLH2, entered on the eighth (8th) day of May, 2001. The list of

exemptions referred to in that order, which is credible evidence, includes "Debtor's interest in

the GM/UAW Pension Plan Payments" and "Social Security Payments" which are "Debtor's

exemption claimed in Schedule C of [secured creditor, Walter J. Lawrence's Bankruptcy Court ]

petition" were automatically granted when there was no objections to those claimed exemptions

within thirty days of the completion of the section 341 meeting of the creditors." This levy

constitutes the violation of the Bankruptcy Court order entered o the eighth (8th) day of May,

2001, which involved "Debtor's interest in the GM/UAW Pension Plan Payments" and "Social

Security Payments." See attached **exhibit "2"**. The Bankruptcy court in the United States

Bankruptcy Court, Northern District of Florida, Tallahassee, case no. 01-70047-TLH2, entered an

order on the eighth (8th) day of May, 2001 **(exhibit "3" and Schedule C)**, intended to deny

attribution of income of secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA

and IRC Supplemental pension plan payments and social security payments. Yet, debtor

launched ahead and attributed to itself secured creditor, Walter J. Lawrence's interest in the

GM/UAW ERISA and IRC Supplemental pension plan payments by flying in the face of that

Court order. Now Debtor is attempting to attribute to itself the GM/UAW ERISA and IRC

Supplemental pension plan payments, while at the same time enjoying the tax exempt status as a

result of including within the terms of the GM/UAW ERISA and IRC Supplemental pension plan

the anti-assignment and anti-alienation clause.

7.    Subsequent to issuance of the IRS Notice of Levy dated May 19, 1999, the IRS served as an instrument to execute the Notice of Levy on petitioner's interest in the GM/UAW ERISA and IRC qualified pension plan payments and social security payments which included the tax years involved here, 2003, 2004, and 2005..

8.    At no time has secured creditor, Walter J. Lawrence's ever had unrestricted, unfettered, complete dominion and control over the GM/UAW ERISA and IRC qualified pension plan payments and social security payments as those payments relate to the IRS Notice of Levy dated May 19, 1999, and the execution of that Notice of Levy over the GM/UAW ERISA and IRC qualified pension plan payments and social security payments for the tax years 2003, 2004, and 2005.

9.    Based on the execution of the restrictive seizure document, Notice of Levy dated May 19, 1999, secured creditor, Walter J. Lawrence's had no guarantee that he would be entitled to enjoy complete dominion and control over the GM/UAW ERISA and IRC qualified pension plan payments and social security payments since that Notice of Levy dated May 19, 1999, was first executed on or near May 19, 1999.

10.    Given that secured creditor, Walter J. Lawrence has been denied complete control and dominion over the GM/UAW ERISA and IRC qualified pension plan payments and social security payments, the restrictive nature of the Notice of Levy dated May 19, 1999, which is credible evidence, has barred secured creditor, Walter J. Lawrence from actually or constructively receiving any income.

11.     The burden of proof is on the Debtor to prove with credible and admissible
evidence that income although not actually reduced to secured creditor, Walter J. Lawrence's
possession and is not constructively received by secured creditor, Walter J. Lawrence. However,
where, as is the case here, the GM/UAW ERISA and IRC qualified pension plan payments has
not been actually or constructively received by secured creditor, Walter J. Lawrence given that
secured creditor, Walter J. Lawrence's control of its receipt is and has been denied to secured
creditor, Walter J. Lawrence by Debtor since May 19, 1999, subject to the substantial limitations
and restrictions of the May 19, 1999, Notice of Levy there has not been, therefore, any income
that can conceivably be attributed to secured creditor, Walter J. Lawrence . Further, the seizure by
the May 19, 1999, Notice of Levy barred secured creditor, Walter J. Lawrence from any intention
to withdraw the levied on the GM/UAW ERISA and IRC qualified pension plan payments.. 26
USC 6502(b) provides that the date "..on which a levy on property or rights to property is made
shall be the date on which the notice of seizure provided in section 6335(a) is given. " Here, that
date is May 19, 1999. Thus, no intention to withdraw could have been given where here the
Notice of Levy barred secured creditor, Walter J. Lawrence from withdrawing from the
GM/UAW ERISA and IRC qualified pension plan payments. .

12.     The GM/UAW Pension Plan, Section 3. Non-alienation of Benefits, paragraph (d)
provides that;

> "...any pensioner [ not "employee"], or surviving spouse, entitled to a
> monthly benefit under the Plan:
> (D) may have amounts of not less than $40.00, but in no event more than
> 10% of the retired employee's monthly *pension*, withheld to repay any
> outstanding overpayment owing to any benefits plan of the Corporation,
> ***pursuant to written authorization and direction acceptable to the***
> ***Corporation***. ( Italics and bold by Plaintiff).

Secured creditor, Walter J. Lawrence has never signed any "....**written authorization and direction acceptable to the Corporation**," or otherwise thereby authorizing an alienation or reduction of Plaintiff's pension plan payments.

13.     Every dollar that Debtor has extracted from secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRC qualified pension plan has been illegally extracted. For example, **exhibit 2**, the Notice of Levy dated 05-19-1999, provides near the middle of that document the "procedures applicable" to that Notice of Levy as provided for in 26 U.S.C. § 6331(d)(4)(B) and 26 C.F.R. § 301.6331-2(a)(2)(i)-(iv). 26 U.S.C. § 6331(d)(4)(A)-(F) provides that;

> **(4)    Information included with notice.**– The notice required under paragraph (1) shall include a brief statement which sets forth in simple and nontechnical terms–
>> (A) the provisions of this title relating to levy and sale of property,
>> (B) the procedures applicable to the levy and sale of property under this title,
>> ( C ) the administrative appeals available to the taxpayer with respect to such levy and sale and the procedures relating to such appeals,
>> (D)   the alternative available t taxpayers which could prevent levy on the property (including installment agreements under section 6159,
>> (E)   the provisions of this title relating to redemption of property and release of liens on property, and
>> (F)   the procedures applicable to the redemption of property and hte release of a lien on property under [title 26].

26 C.F.R. § 301.6331-2(a)(2)(i)-(iv), in turn, provides that:

> **(2) Contents of Notice**— The notice of intent to levy is to contain a brief statement in nontechnical terms including the following information–
>> **(i)** the internal Revenue code provisions and the procedures relating to levy and sale of property;
>> **(ii)** The administrative appeals available with respect ti the levy and sale of property and the procedures relating to such appeals;
>> **(iii)** The alternatives available that could prevent levy on the property (including the use of an installment agreement under section 6159; and
>> **(iv)** The Internal Revenue Code provisions and the procedures relating to redemption of property and release of liens on property.

The May 19, 1999, Notice of Levy complies with 26 U.S.C. § 6331(d)(4)(B)- " the

procedures applicable to the levy." The problem here is that Debtor has arrogantly refused to

comply, not only with the terms of the GM/UAW ERISA and IRC qualified pension plan but also

with the terms of the May 19, 1999, Notice of Levy. Further, the May 19, 1999, Notice of Levy

complies with the provisions of 26 C.F.R. § 301.6331-2(a)(2)(i) - "the procedures relating to

levy." Those "procedures applicable to the levy," id, and those "procedures relating to levy," are

the only provisions of 26 U.S.C. § 6331(d)(4)(A)-(F) and 26 C.F.R. § 301.6331-2(a)(2)(i)-(iv).

Those provisions are, as set forth, in the May 19, 1999, Notice of Levy are:

### THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED BY THE BLOCK TO THE RIGHT.

In the pending United States District Court, Middle District of Florida case, Debtor filed

it's document titled "DEFENDANTS MOTION AND BRIEF IN OPPOSITION T PLAINTIFF'S

MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY

JUDGMENT." At page number three #3, Debtor assets that:

> In 1999 GM received a notice from the Internal Revenue service ("IRS") that
> Plaintiff had failed to pay his income taxes in 11 different years. Plaintiff's failure
> to pay his income taxes resulted in a tax liability and penalties of over #267,000.00
> (Defs.' Cross-Motion for Summary Judgment,( Ex A). The IRS' notice included a
> levy against Plaintiff's pension benefits. ***Based on the levy, GM remitted
> Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's
> monthly benefit to $0.00.*** (Italics and bold added by Petitioner).

Debtors' "( Ex A)," a copy of which was attached to "DEFENDANTS MOTION AND

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND

CROSS-MOTION FOR SUMMARY JUDGMENT," is the IRS's May 19, 1999, Notice of Levy,

a copy of which is attached hereto as **exhibit " 4"**. If, as Debtor stated, *"Based on the levy,"*

Debtor was under a duty to alienate secured creditor, Walter J. Lawrence's interest in the

GM/UAW ERISA and IRC qualified pension plan payments income, Debtor would never have

alienated and assigned   secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA

and IRC qualified pension plan payments income. The IRS gave very objectively clear and

objectively plain instructions to Debtor in the May 19, 1999, Notice of Levy **(exhibit "2")**  that:

> **THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED
> INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT
> PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED
> BY THE BLOCK TO THE RIGHT.**

The block to the right of the Notice of Levy dated 05-19-1999,  is not signed.  **Exhibit**

**"2"** Yet, even though the Internal Revenue Service has instructed Debtors  that secured creditor,

Walter J. Lawrence's  interest in the GM/UAW ERISA and IRC qualified pension plan "WON'T

ATTACH" to the GM/UAW Supplemental Pension Plan payments, General Motors Corp.

steadily and consistently attached the GM/UAW pension plan payments when  Internal Revenue

Service has instructed Debtors  by way of the 05-19-1999 Notice of Levy, not to attach those

funds. General Motors Corportion's . own exhibit that they introduced into evidence in the

pending United States District Court for the Middle District of Florida is the May 19, 1999,Notice

of Levy.  By attaching that Notice of Levy to "DEFENDANTS MOTION AND BRIEF IN

OPPOSITION T PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-

MOTION FOR SUMMARY JUDGMENT," Debtor tacitly admitted that Debtor chose to

blatantly violate the terms of the May 19, 1999, Notice of Levy. It is this  tacit provision in the

May 19, 1999, Notice of Levy, that Debtors have chosen to violate that results in Debtors' being

liable to secured creditor, Walter J. Lawrence's for the violation of the terms of the GM/UAW

ERISA and IRC qualified pension plan payments income, the terms of the May 19, 1999, Notice

of Levy,

. Basically what General Motors Corp is saying vis-a-vis Claim that they are not liable to

secured creditor, Walter J. Lawrence, is that we don't care what the IRS says on the IRS Notice

of Levy we are going to violate the Notice of Levy and we are going to do it with impunity!

General Motors Corp. is dong the same with the GM/UAW pension plan agreement that was in

effect on March 1, 1993, when secured creditor, Walter J. Lawrence retired from General

Motors Corp. place of employment after spending 31 years with General Motors as a tool and die

maker, building the tooling that produced the vehicles.

Secured creditor, Walter J. Lawrence, filed an Amended Complaint in the United States

District Court, Middle District of Florida. Debtors' have answered secured creditor, Walter J.

Lawrence allegations at item #18, 19 and defendants' reply to the same (D.E. #55 in the U.S.

District Court pending action and the May 19, 1999, Notice of Levy **(exhibit "2"** in this

document) provides :

> 18.    Plaintiff and Defendant have never entered into any agreement or
> arrangement thereby authorizing Defendants to extract, alienate or
> reduce any amount of the pension plan payments that Defendant is
> obligated to pay to Plaintiff under the GM/UAW Pension Plan
> Agreement.
>
> 18.    Omitted
> 19.    Defendant voluntarily elected to pay to the Internal Revenue
> Service the amount of $32,985.00, the same amount that Defendant
> is now alienating under Plaintiff's rights under General
> Motors/United Auto Workers ("GM/UAW") Pension Plan

Agreement
19    Omitted

For purposes of Fed. R. Civ. P, Rule 8(a), these replies constitutes an admission on

the part of defendants' that:

18.    Plaintiff and Defendant have never entered into any agreement or
arrangement thereby authorizing Defendants to extract, alienate or reduce
any amount of the pension plan payments that Defendant is obligated to
pay to Plaintiff under the  GM/UAW Pension Plan Agreement

and that:

19.    [Debtor]  voluntarily elected to pay to the Internal Revenue Service the
amount of  $32,985.00, the same amount that [Debtor] is now alienating
under [secured creditor, Walter J. Lawrence's]  rights under General
Motors/United Auto Workers ("GM/UAW") Pension Plan

Defendants' have now admitted that there never was any written authorization under the

terms of the plan authorizing the alienation that is now and has been ongoing and that Debtor is

alienating secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRC

qualified pension plan payments income. .

11. At item #4 of Petitioner's Complaint in the District Court  action, secured creditor,

Walter J. Lawrence,   alleged that:

4.    Plaintiff, WALTER J. LAWRENCE, receives pension benefits from the
General Motors/United Auto Workers ("GM/UAW") Pension Plan
Agreement and has received those payments since March 1, 1993, after
approximately 31 years of employment with General Motors Corporation.

At item #4 of General Motors Corp. Answer to Plaintiff's  Complaint in the District

Court action, General Motors Corp. answered  that:

Defendants admit that Plaintiff is entitled to pension benefits under the GM

Pension Plan based on his prior service of 30.0 years of credited service with general Motors. Defendant further admits that Plaintiff retired with pension benefits commencing on March 1, 1993. Except as so admitted.

15.    On May 8, 2001, the U.S. Bankruptcy Court, Northern District of Florida entered an order(**Exhibit "2 and schedule C")"**). General Motors Corp. knew of this court order and has had actual knowledge of this order since General Motors Corp. was served with Petitioner's complaint. For example, when the Broward County, State of Florida, sheriff's department served the Complaint on General Motors Corp. registered agent , the Sheriff's Deputy also served Petitioners 's Index of Exhibits Re: Complaint For Damages. Among this list of exhibits was  the U.S. Bankruptcy Court, Northern District of Florida order entered on May 8, 2001 (**Exhibit "2"**). In addition Schedule C was also included with the list of exhibits. ( **attached to Exhibit "2"**). That part of Schedule C which is applicable here provides that:

The above items listed on Schedule C  which was allowed by the Bankruptcy Court in it's order of May 8, 2001, that is relevant to this case  are Plaintiff's GM/UAW pension plan payments; The Bankruptcy Court order of May 8, 2001 provides that:

> "THIS CASE is before the Court on the debtor's Motion to Strike the United States Objections to Debtor's Claimed exemptions ( docket entry #20). The United States of America did not object to the Debtor's claimed exemptions. See Docket Entry #17, page 3, lines 16-17 and page 4, lines 2-3. **The Debtor's exemptions claimed in Schedule C of his petition were automatically granted when there was no objection to those claimed exemptions within thirty days of the completion of the 341 meeting of the creditors.** (emp added by Lawrence). Therefore, it is hereby
>
> ORDERED AND ADJUDGED that the Debtor's motion to strike objections to his claimed exemptions is MOOT, and therefore is DENIED.
>
> DONE AND ORDERED at Tallahassee, Florida this 8th day of May, 2001.
>
> (Signed)
> Lewis M. Killian, Jr."

16.    Secured creditor, Walter J. Lawrence is involved in litigation with General Motors

Corp., in an action commenced by Petitioner. The case is currently pending in the

U.S. District Court, Middle District of Florida, case no. 5;07-CV-408 OC. In that

action, General Motors Corp filed DEFENDANT' ANSWER AND BRIEF IN

OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY

JUDGMENT RE: AMENDED COMPLAINT (exhibit "6") at page .2, General

Motors Corp alleges that:

A. The Events That Led to the Overpayment of Pension Benefits to
Plaintiff in the Amount of $32,985
The complete, relevant facts have already been presented to the Court in
Defendant' Initial Brief in Opposition to Plaintiff's first Motion for
Summary Judgment and Cross-Motion for Summary Judgment. Therefore,
a condensed version of the facts follows simply to refresh the Court's
recollection of this case.
        Plaintiff is a former general Motors hourly employee whose terms
and conditions of employment were governed by the GM-UAW Collective
Bargaining Agreements, and its Supplemental Agreements. Plaintiff retired
from General Motors with benefits commencing on March 1, 1993. Upon
his retirement Plaintiff bean receiving a monthly pension benefits of
$1.045.50 per month.
        In 1999 GM received a notice from the Internal Revenue service
("IRS") that Plaintiff had failed to pay his income taxes in 11 different
years. Plaintiff's failure to pay his income taxes resulted in a tax liability
and penalties of over #267,000.00 (Defs.' Cross-Motion for Summary
Judgment, EX A). The IRS' notice included a levy against Plaintiff's
pension benefits. ***Based on the levy, GM remitted Plaintiff's monthly
pension benefits to the IRS, thereby reducing Plaintiff's monthly benefit
to $0.00.*** (Italics and bold added by Petitioner).
In 2003 the Plan switched claims administrators from Electronics Date
Systems corporation ("EDS") to Fidelity Investment Institutional
Operations Company, Inc., ("Fidelity"). In approximately January 2005,
due to a mis-communication between ED and Fidelity, Plaintiff's monthly
benefits of $1,045.50 was restored. However, Fidelity continued to remit to
the IRS $1,99.50 per month on behalf of Plaintiff to satisfy his tax
liability., without concurrently reducing his pension. Fidelity continued to
make these payments to the IRS without the concurrent deduction from
Plaintiff's pension benefits until June 2007, when the error was discovered.
In total $32,985.00 was paid to the IRS, thus resulting in an overpayment to
Plaintiff in that amount.

However, it Debtor's reply was *'Based on the levy'* the May 19, 1999, Notice of Levy, there would never have been a levy.  For example, the Bankruptcy Court order of May 8, 2001, in part, provides that:

> **The Debtor's exemptions claimed in Schedule C of his petition were**
>
> **automatically granted when there was no objection to those claimed**
>
> **exemptions within thirty days of the completion of the 341 meeting of the**
>
> **creditors**. (emp added by Lawrence).

And its is this "Schedule C" (attached to exhibit 2) which  sets forth *the exemptions which "...* **were automatically granted when there was no objection to those claimed exemptions within thirty days of the completion of the 341 meeting of the creditors**." Thus, Debtor's alienation of secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRC pension plan payments could not have been *"Based on the [may 19, 1999, Notice of ]levy"* because if alienation  would have been *"Based on the levy"*, there neve would have been a levy or a continuous ongoing levy.

In "DEFENDANTS' MOTION AND BRIEDF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JDUGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT." Debtor being the Defendant in the United States District Court, Middle District of Florida case, Debtor asserted as page #3, first full paragraph that;

> In 1999 GM received a notice from the Internal Revenue Service ("IRS") that secured creditor, Walter J. Lawrence  had failed to pay his income taxes in 11 different years. Secured creditor, Walter J. Lawrence's  failure to pay his income taxes resulted in a tax liability and penalties of over $267,000.00 (Ex A). The IRS' notice included a levy against Plaintiff's pension benefits. Base on the levy, Gm remitted Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's monthly benefit to $0.00.

The May 19, 1999, Notice of Levy exhibit "2" states that:

**THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED BY BLOCK TO THE RIGHT.**

The block to the right of the Notice of Levy dated 05-19-1999, is not signed in " **BLOCK TO**

**THE RIGHT.** "

The Point in bringing the above proceeding to this Court is to further inform this

Court of the alienation of the GM/UAW ERISA and IRC qualified pension plan payments income

is to show that starting with the May 19, 1999, Notice of Levy and the execution of that seizure

device, General Motors Corp, EDS, Fidelity and the IRS has entered into a conspiracy to engage

in exercising unfettered actual and constructive receipt, command and control over the

GM/UAW ERISA and IRC qualified pension plan payments income by using the May 19, 1999,

Notice of Levy, General Motors Corp May 14, 2007, **(exhibit "7")** letter and the letter from

General Motors to plaintiff dated September 5, 2007, **(exhibit "8")** in an ongoing and

continuing basis to deny to secured creditor, Walter J. Lawrence any guarantee of attribution of

the GM/UAW ERISA and IRC qualified pension plan payments income with full guarantee to

Respondent..

17.    On May 14, 2007, secured creditor, Walter J. Lawrence received a letter from

General Motors Corp. . This letter, in part, states that:

> Our records indicate you have received an overpayment of retirement benefits from 01-01-2005 through 06/01-2007, a total of 30 month(s). The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA Qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund.
> Please made your check or money order payable to General Motors Corporation and sent it to the Benefit Service Center in the self addressed envelope enclosed for your convenience. On the check or money order, indicate that this is to repay an overpayment, clearly print your full name and include your Social Security Number.

18.    Secured Creditor, WALTER J. LAWRENCE, has received GM/UAW ERISA and

IRS qualified pension plan income from Debtor starting with March 1, 1993 and ending on May

19, 1999, when the IRS issued on served on General Motors Corp.

Commissioner/Secretary/Respondent May 19, 1999, Notice of Levy. Here,

19.    Article VII, Section 3 of the GM/UAW Pension Plan Agreement page #57,

provides that:

> The pension fund shall not in any manner be liable for or subject to
> the debts or liability of any employee, separated employee, retired
> employee, pensioner, or surviving spouse. No right, benefit, pension or
> supplement at any time under the Plan shall be subject in any manner to
> alienation, sale, transfer, assignment t, pledge or encumbrances of any kind
> except in accord with the provisions of a Qualified Domestic Relations
> Order within the meaning of I.R.C. Section 414(p). If any person shall
> attempt to, or shall, alienate, sell, transfer, assign, pledge or otherwise
> encumber accrued rights, benefits, pensions, or supplements under the Plan
> or any part thereof, or if by reason of bankruptcy or other event happening
> at any time such benefits would otherwise be received or enjoyed by
> anyone else, the Corporation may terminate the interest of such employee,
> pensioner or surviving spouse in any such benefit and instruct the trustee to
> hold or apply it to or for the benefit of such employee, pensioner or
> surviving spouse, spouse, children or other dependents, or any of them as
> the Corporation may instruct, provided, however, that any pensioner, or
> surviving spouse, entitled to a monthly benefit under the Plan:

> (d) may have amounts of not less than $80.00, but in no event more than
> 10% of the retired employee's monthly pension, withheld to repay any
> outstanding overpayment owing to any benefit plan of the Corporation,
> pursuant to written authorization and direction acceptable to the
> corporation.(Page #58)

20.    Secured creditor, Walter J. Lawrence and General Motors Corp. have never

entered into any agreement or arrangement thereby authorizing Defendants to

extract, alienate or reduce any amount of the pension plan payments that

Defendant is obligated to pay to Plaintiff under the GM/UAW Pension Plan

Agreement.

21.    General Motors Corp. voluntarily elected to pay to the Internal Revenue Service

the amount of $32,985.00, the same amount that Debtor is now alienating under

secured creditor, Walter J. Lawrence's rights under General Motors/United Auto

Workers ("GM/UAW") Pension Plan Agreement which is incorporated herein by

reference as though fully stated, is a letter to secured creditor, Walter J. Lawrence

from Defendant, General Motors Corporation's Benefit & Service Center, a letter

dated May 14, 2007..

22.    The General Motors corp. sent a second letter to secured creditor, Walter J.

Lawrence . This second letter from General Motors Corp. to Petitioner is dated

September 5, **2007** states in part that:

> Our records indicate you have received an overpayment of retirement
> benefits. The total amount of the overpayment is $32,985.00. Because the
> Plan is an ERISA qualified Plan, we required to collect overpayments and
> return them to the Plan's Trust Fund.
> Please make your check or money order payable to **FHOC** "Fidelity
> Investments Institutional Operating Company" and send it to the Benefit
> Service Center in the self addressed envelope enclosed for your
> convenience. On the check or money order, indicate that this is to repay an
> overpayment, clearly print your full name and include your Social Security
> number.
> If the payment in a lump sum is not received, beginning 10-01-2007, your
> monthly benefit will be reduced by 50% until the total amount of the
> overpayment has been recovered. This means that your gross monthly
> benefit will be $418.75 until 03/01-2014. On 04/01/2014, you will receive
> $515.00 completing the recovery of your overpayment of $32,985.00.
> Thereafter, your gross monthly benefit of $837.50 will be restored.

23.    Starting with May 19, 1999, and continuing each month thereafter that the Debtor

executed the May 19, 1999, Notice of Levy on secured creditor, Walter J. Lawrence's interest in

the GM/UAW ERISA and IRS qualified pension plan income and Social Security income. This

levy attributed to the Debtor and the IRS an undeniable accession to wealth, clearly realized and over which [ Debtor and the IRS] has complete dominion,

24. The May 19, 1999, Notice of Levy placed a "restriction" on secured creditor, Walter J. Lawrence's from receiving each month the GM/UAW ERISA and IRS qualified pension plan income and Social Security income thereby setting in place a guarantee of attribution of undeniable accessions to wealth, clearly realized and over which the Debtor and the IRS has complete dominion, to the exclusion of secured creditor, Walter J. Lawrence.

25. Starting with October 1, 2007, based on General Motors Corp erroneous application of the May 19, 1999, Notice of Levy General Motors Corp. erroneously withheld from, alienated, and levied from secured creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRS qualified pension plan payments the amounts of $680.75. General Motors Corp has alienated the GM/UAW ERISA and IRC qualified pension plan payments by reducing those payments of $1,099.50 from $1,099.50 to $418.75 in General Motors attempt at violating the provisions of the General Motors/United Auto Workers ("GM/UAW") Pension Plan Agreement and the procedures applicable to the IRS may 19, 1999, Notice of Levy. Thus, contrary to Debtors assertion that it has no liability for to secured creditor, Walter J. Lawrence which secured creditor, Walter J. Lawrence seeks recovery of is false based upon the facts and applicable case law, statutory law and regulatory developed herein.

26. Based on the reduction of secured creditor, Walter J. Lawrence's **$1,099.50** from the $1,099.50 to $418.75 General Motors Corp. has denied the pension benefits of secured creditor, Walter J. Lawrence to recover an alleged overpayment of pension plan benefits all in violation of General Motors/United Auto Workers ("GM/UAW") Pension Plan Agreement and

29 U.S.C. § 1056(d)(1) in an exercise unfettered command over such property of Petitioner. Here, there is no genuine issue of material fact and Petitioner is entitled to judgment as a matter of law.

27. There is no genuine issue of material fact that the IRS issued a Notice of Levy on May 19, 1999, and that Notice of Levy was served on General Motors Corp.

28. There is no genuine issue of material fact that the monetary proceeds arising out of and from the May 19, 1999, Notice of Levy starting with May 19, 1999, and continuing each and every month thereafter constituted execution of the May 19, 1999, Notice of Levy on Secured Creditor, Walter J. Lawrence's interest in the GM/UAW ERISA and IRS qualified pension plan payments income.

29. On November 24, 2009, the United States Bankruptcy Court for the Southern district of New York entered a final order which is currently under appeal in the United States District Court for the Southern District of New York.

30. The issue involved in the appeal in the United States District Court for the Southern District of New York .is:

> Whether the outcome of the Motion to Lift the Stay proceeding could alter the rights, liabilities, options, or freedom from action (whether positively or negatively) and which in any way impacts or has any conceivable effect upon the handling and administration of the bankrupt estate and where the anti-alienation provision contained in the ERISA-qualified plan at issue here satisfies the literal terms of 541(c)(2) resulting in a denial of "related to" jurisdiction of the Bankruptcy Court Motion to Lift the Stay proceeding.

## II.    Argument

Secured Creditor, Walter J. Lawrence contends that filing of the notice of appeal on divested the Bankruptc Court of jurisdiction over any matters involved in the controversy between the Debtor and the Secured Creditor, Walter J. Lawrence, and therefore, this Court does

not haeve jurisdiction to entertain the "DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION

TO CLAIMS." In support of this contention, Secured Creditor, Walter J. Lawrence, relies on the

case of *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74

L.Ed.2d 225 (1982). In *Griggs,* the Supreme Court held that the filing of a notice of appeal

divests the trial court of jurisdiction over those aspects of the case which are incolved in the

appeal and this principle equally applies to proceedings in bankruptcy. In re Bialac, 15 B.R. 901,

903 (9th cir. BAP 1981), aff'd 694 F.2d 625 (9th Cir. 1982); In re Urban Develoment Ltd., Inc., 42

B.R. 741, 743 (Bankr M.D.Fla. 1984). Here, Secured Creditor, Walter J. Lawrence, contends that

the appeal which is now pending before the United States District Court for the Southern District

of New York involves the very issues which are involved in the appeal under consideration now

pending before the United States District Court for the Southern District of New York. *Securities*

*and Exchange Commission v. American Board of Trade, Inc.*, 829 F.2d 341 (CA2, 1987) ("...the

filing of a timely and sufficient notice of appeal 'confers jurisdiction on the court of appeals and

divests the district court of its control over those over those aspects of the case involved in the

appeal.' Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 1203 S.Ct. 400, 402, 74

L.Ed. 2d 225 (1982) (per curiam."). Same, Peabody & Co., v. Maxus Energy corp., 825 F.2d 556

(CA2, 1991). Hence, because " those aspects of the case involved in the appeal" in  the United

States District Court for the Southern District of New York are the same as 'those aspects of "

DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION TO CLAIMS, " and because a timely

and effective appeal was filed, and just as this Court was without jurisdiction regarding the

matters currently on appeal, this court is again faced a divestiture of jurisdiction as it was in the

now pending appeal.

    In  Secured Creditor, Walter J. Lawrence's  appeal which is now pending before the United

States District Court for the Southern District of New York, this Court is divested of jurisdiciton

so long as the exercise of jurisdiction by this Court is to consider matters which are in aid of

appeal and do not violate the *Griggs* rule, it is appropriate to exercise jurisdiciton. Cochran v.

Birkel, 651 F.2d 1219, 1221 (CA6, 1981). However, "DEBTORS' EIGHTY-SECOND

OMNIBUS OBJECTIONS TO CLAIMS," does not involve matters which are in aid of the

pending appeal. Fore example,   "DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTIONS

TO CLAIMS,"  provides at page #5: "Claim #21225" "No liability: Claims seek recovery of

amounts for which the Debtors are not liable." **Exhibit "9".**

Courts generally apply the final judgment rule to distinct disputes within an overarching

bankruptcy case, rather than to the whole bankruptcy case itself. The decisions construing finality

somewhat more broadly and flexibly in bankruptcy cases are legion. Among the Court adopting

the discrete dispute appraoach to bankruptcy appeals are: *Bowers v. Connecticut Nat. Bank.* 847

F.2d 1019, 1022 (CA2, 1988); *In re Charter Co.*, 778 F.2d 617, 621 (CA11, 1985); *In re Olson*,

730 F.2d 1109, 1110 (CA8, 1984); *In re Farmland Industries, Inc.*, 397 F.3d 647 (CA8, 2005);

*Matter of UNR Industries, Inc.*, 725 F.2d1111, 1114 (CA7, 1984); In re Bennett Funding Group,

Inc., 439 F.3d 155, 160 (CA2, 2006).

The determination of whether the bankruptcy court final order that is currently on appeal is

final for purposes of appelal depends, in this case, on whether such order completely and finally

resolves the distinct, discrete  aspect of whether the GM/UAW ERISA and IRC qualified pension

plan income is or is not property of the estate. Here, the Bankruptcy Courts order of  ------is a

final appealable order.

Consider the case of *United States v. Snyder,* 343 F.3d 1171, (CA9, 2003)

Pursuant to 11 U.S.C. § 541(a)(1), the property of a bankruptcy estate includes "all

legal or equitable interest of the debtor in property as of the commencement of the case,"
"[e]xcept as provided in subsections (b) and (c)(2)." 11 U.S.C. § 541(a)(1). Subsection
(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a
trust that is enforceable under applicable non-bankruptcy law is enforceable in a case
under this title." Id. § 541(c)(2). In Patterson v. Shumate, 504 U.S. 753 (1992), the
Supreme Court was asked to decide whether "applicable non-bankruptcy law" includes
federal as well as state law. The Court held that federal law, including ERISA, was
included, and therefore that the anti-alienation clause required for ERISA qualification
constitutes a restriction on transfer enforceable under "applicable non-bankruptcy law"
within the meaning of § 541(c)(2). Id. at 75960; see 29 U.S.C. § 1056(d)(1) ("Each
pension plan shall provide that benefits provided under the plan may not be assigned or
alienated."). Accordingly, the Court held that a debtor's interest in an ERISA-qualified
plan is excluded from the property of the bankruptcy estate. 504 U.S. at 765.

Like Snyder, id, the Debtor's alleged interest in the "ERISA-qualified plan is excluded

from the property of the bankruptcy estate. 504 U.S. at 765," id because the GM/UAW "ERISA-

qualified plan" contains the anti-alienation provision as mandated by law. However, "applicable

nonbankruptcy law" applies here. For example, "ERISA expressly provides that it "shall [not] be

construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States,"

29 U.S.C. § 1144(d), including federal tax law." Id. The provisions of 1.401(a)-13(b)(I), 26

U.S.C. § 6331(d)(4) and 26 C.F.R. § 301.6331-2(a)(1), 26 C.F.R. § 1.401(a)-13(e) are federal

laws and they are each "applicable nonbankruptcy law," for purposes of the alienation of

Movant's pension plan payments where, as is the case and as admitted by Debtor (See attached

**exhibit "5"**, Debtor's Answer to Movant's Amended Complaint) in the pending District Court

action, there have never been any document signed by any authorized agent of Debtor, any

authorized agent of Fidelity Investment or Movant that would be in accordance with the Article

VII, Section 3 of the GM/UAW Pension Plan Agreement, and "applicable nonbankruptcy law",

i.e. 29 U.S.C. §1056(d)(1), 26 U.S.C.§ 401(a)(13(A), 26 C.F.R. §1.401(a)-13(1) ( i ), (ii), 26

U.S.C. § 6065, 6061, Treasury Reg. § 1.6061-1. Each of these "applicable nonbankruptcy

law[s]," will be developed in full below.

In the present instance, the "DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION T

CLAIMS," seeking entry of an order disallowing expunging the debt and liability that Debtor

owes to secured creditor, Walter J. Lawrence would be to exercise jurisdiction over these aspects

of the issues on appeal which are one i he same with "DEBTORS' EIGHTY-SECOND

OMNIBUS OBJECTION T CLAIMS," . Thus, the entry of the Order reqeusted by Debtor would

place this Court in a position to resolve the entire controversy, that is, whether this Court has

subject matter jurisdiction. This certainly would not serve judicial economy and would not avoid

the necessity of a double appeal.

In sum, Secured Creditor, Walter J. Lawrence, is not satisfied that Debtor's argument that

it's liability to secured creditor, Walter J. Lawrence's is not one in the same with the pending

appeal and appeal that results in this Court being divested of jurisdiciton except to rule that it

does not have jurisdiciton. Based upon the foregoing and Secured Creditor, Walter J. Lawrence's

appeal brief which is incorported herein by reference as though fully stated completely develops

Secured Creditor, Walter J. Lawrence's jurisdictional arguments.

The May 19, 1999, Notice of Levy **(exhibit "2"0** states that:

> **THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED
> INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT PLANS
> IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED BY BLOCK TO
> THE RIGHT.**

The block to the right of the Notice of Levy dated 05-19-1999, is not signed in " **BLOCK**

**TO THE RIGHT. "   exhibit "E"** This genuine issue of material fact stands unrebuked by

Respondent. The resolution of this genuine issue of material fact affect the outcome of this case

as a matter of law because it is this genuine issue material fact that is unrebuked by Respondent

that clearly results in the income deficiency at issue in the Commissioner/Secretary/Respondent's

determination is attributable strictly to Respondent.

In Debtor/Appellee's "Answering Brief of Motors Liquidation Company in Opposition to

Apppeal of Walter J. Lawrence **(exhibit "1")**, at page #22 that" "by its plain language, section

362(d)(2) only applies when the movant is seeking relief from the 'stay of an *act against*

*property."* (Italics in original). In order to escape the fact that Debtor is  liable to Secured

Creditor, Walter J. Lawrence for all of the monies illegally extracted from  Secured Creditor,

Walter J. Lawrence's interest in the GM/UAW ERISA and IRC qualified pension plan payment

and thus Secured Creditor, Walter J. Lawrence's Motion for Relief from the stay, Debtor

truncates 11 U.S.C. 362(d)(2) by deleting "property [of the estate] under subsection (a) of this

section." Stated another way, 11 U.S.C. 362(d)(2) provides that:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant
> relief from the stay provided under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay--
>
> > **(1)** for cause, including the lack of adequate protection of an interest in property of
> > such party in interest;
> >
> > **(2)** with respect to a stay of an act ***against property under subsection (a) of this***
> > ***section,*** if--
> >
> > > **(A)** the debtor does not have an equity in such property; and
> > >
> > > **(B)** such property is not necessary to an effective reorganization;

Given that 11 U.S.C. 362(d) provides that " [O]n request of a party in interest, " "the court

shall grant relief from the stay provided under subsection (a) of this section," and given that

"subsection (a)" provides for "property of the estate" and given that the GM/UAW ERISA and

IRC qualified pension plan has been excluded from "property of he estate," "the court shall grant

relief from the stay" only ...(2) with respect to an act against property of the estate of section 362,

if "(B) such [property of the estate] under subsection (a) of this section is not necessary " to an

effective reorganization, it necessarily follows that the Court has no subject matter jurisdiction to

grant relief fro the stay. Put another way, the conceivable way that the Court has subject matter

jurisdiction at any stage of the proceedings is if GM/UAW ERISA and IRC qualified pension

plan is property of the estate. Given that the GM/UAW ERISA and IRC qualified pension plan is

not property of the estate because GM agreed to include within the terms of the GM/UAW

ERISA and IRC qualified pension plan and given that 26 U.S.C. § 401(13)(A), in pertinent part,

provides that "[A] trust shall lnot constitute a qualified trust unde this section unless the plan of

which suc trust is a part provies that benefits provided under the plan may not be assigned or

alienated," the monies that debtor transferred to the GM/UAW ERISA and IRC qualified pension

plan is exempt from taxation, the income  that Debtors transferred to the IRS that should have

been transferred to secured creditor, Walter J. Lawrence, the Debtor should be compelled to  be

liable to secured creditor, Walter J. Lawrence for such funds.

The "debtor does not have an equity" in the GM/UAW ERISA and IRC qualified pension

plan payments and "such property," the GM/UAW ERISA and IRC qualified pension

plan payments, "not necessary to an effective reorganization," of the Debtor because Debtor and

the UAW agreed to include the anti-alienation provision in the  GM/UAW ERISA and IRC

qualified pension plan payments as provided for in 26 U.S.C. § 401(13)(A). Thus, the Court had

subject matter jurisdiction to lift the automatic stay because the GM/UAW ERISA and IRC

qualified pension plan is not "property of the setate."

11 U.S.C. 362(a), which is referred to in 11 U.S.C. 362(d)(2) ("with respect to a stay of an

act *against property under subsection (a) of this section,"),* provides that:

(a) Except as provided in subsection (b) of this section, a petition filed under <u>section 301, 302,</u> or <u>303</u> of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Thus, Congress has made it crystal plain and clear that relief from the automatic stay in this case does  apply here, because automatic stay only applies to "property of the estate" and the GM/UAW ERISA and IRC qualified pension plan payments is not "property of the estate".When the above statutory provisions are taken together with the May 19, 1999, Notice of levy, 26 U.S.C. § 6331(d)(4)(A)-(F), 26 C.F.R.§ 301.6331-2(a)(2)(i)-(iv), it is plain and clear that the

Internal Revenue Service, vis-à-vis it's May 19, 1999, Notice of Levy does not comply with 26

U.S.C. § 6331(d)(4)(A)-(F) or  26 C.F.R.§ 301.6331-2(a)(2)(i)-(iv) and that the Internal Revenue

service never intended the May 19, 1999, Notice of Levy to be used as a seizure device to levy on

the GM/UAW ERISA and IRC qualified pension plan payments. This is the liability that Debtor

is attemptint to avoid in " DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION TO

CLAIMS, " where Debtors stated at page #5, Debtor's "Exhibit A" that: "No Liability: Claims

seek recovery for which for which the Debtors are not liable." (exhibit "9").

Section 541()(7) excludes from the Debtors bankruptcy estate ERISA employee pension

plans and other types of benefit plans such as GM/UAW ERISA and IRC qualified pension plan.

or tax-sheltered trusts or plans referred to in several Internal Revenue Code sections.

In a unanimous opinion, the U..S. Supreme Court resolved the conflict between the circuits

in Patterson v. Shumate, 504 U.S. 753 (1992) holding that debtors' interest in an ERISA-qualified

pension plan is excluded from the bankruptcy estate under the "applicable nonbankruptcy law"

language of section 541( c )(2). Relying on the "plain language" of the statute, the Court, in an

opinion by Justice Balckmun, rejected the restrictive language of suc cases Goff, Graham, Daniel,

Lichstrahl which, relyig o the legislative history, ad held that the exclusionary language "under

applicable nonbankruptcy law" included on state spendthrift trusts. The Court concluded that

"applicable nonbankruptcy law is not limited to state law but includes federal law as well. The

Court further concluded that the anti-alienation provisions contained in the ERISA-qualified plan,

such as is the case here with the GM/UAW ERISA and IRC qualified pension plan, came within

the literal terms of section 541( c )(2) and that such terms were enforceable as required by that

section. I re Dubroff, 119 F.3d 75 (CA2, 1997) ("Our conclusion finds further support in Patterso

v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In Patterson, the Supreme

Page 27 of 31

Court decided that 'an anti-alienation provision in an [Employee retirement income Security Act of 1974 ('ERISA')] qualified pension plan constitute[d] a restriction on transfer enforceable under 'applicable nonbankruptcy law.' Id at 757, 112 S.Ct. at 2246, thereby allowing a debtor to exclude the plan under [section] 541( c ) (20), which permits the enforcement in a bankruptcy case of restrictions enforceable under 'applicable nonbankruptcy law,' rendered [section ] 522(d)(10(E) of the Bankruptcy Code 'superflous.' Patterson, 504 U.S. at 762, 112 S.Ct. at 2248-49."); Matter of McClellan, 99 f3d. 1420 (CA7, 1996) ("In Patterson, the Court held tht ERISA-qualified plans are not considered part of the bankruptcy estate."); In re Yates, 287 F.3d 521 (CA6, 2002) ("ERISA contains a provision stating that '[e]ach pension plan shll provide tht benefits provided under the plan may not be assigned or alienated.' 29 U.S.C. 1056(d)(10. This provision 'clearly imposes a 'restriction on the transfer' of a debtor's 'beneficial interest' in the trust.' *Patterson v. Shumate*, 504 U.S. 753, 759, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).").

In *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed. 833 and it's progeny, the James Court held that:

> The starting point in all cases dealing with question of the scope of what is included in 'gross income' begins with the basic premise that the purpose of congress was 'to use the full measure of its taxing power. * * * And the Court has given a liberal construction to the broad phraseology of the 'gross income' definition statues in recognition of the intention of Congress to tax all gains except those specifically exempted. * * * The language of § 22(a) of the 1939 code, gains or profits and income derived from any source whatever,' and the more simplified language of § 61(a) of the 1954 Code, 'all income from whatever source derived.' have been held to encompass all 'accessions to wealth, clearly realized, and over which the taxpayer have complete dominion.' * * * A gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.' ( Citations omitted.) * * *'

Here, the  it is the GM/UAW ERISA and IRC qualified pension plan payments and social security

payments that encompass all "accessions to wealth, clearly realized, and over which the [ Debtor has] complete

dominion," and over which the Debtor has guaranteed that these funds can never be attributable to secured creditor,

Walter J. Lawrence as "accessions to wealth, clearly realized, and over which the [ secured creditor, Walter J.

Lawrence has] complete dominion." Thus, the Debtor erred in its determination that secured creditor, Walter J.

Lawrence had "accessions to wealth, clearly realized, and over which the [ Debtor has] complete dominion,"

which could conceivably be attributed to secured creditor, Walter J. Lawrence.

Similarly, in a case citing *James*, id, the Court in *C.I.R. v. Banks*, 543 U.S. 426 (2005), held that:

> In an ordinary case attribution of income is resolved by asking whether a taxpayer exercises complete dominion over the income in question. Glenshaw Glass Co., supra, at 431, 99 L. Ed. 2d 483, 75 S. Ct. 473; see also Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 209, 107 L. Ed. 2d 591, 110 S. Ct. 589 (1990); Commissioner v. First Security Bank of Utah, N. A., 405 U.S. 394, 403, 31 L. Ed. 2d 318, 92 S. Ct. 1085 (1972).

In the context of assignment by levy , in this case the IRS May 19, 1999, Notice of Levy, secured creditor, Walter J.

Lawrence, did not have dominion over the income at the moment of receipt based upon the May 19, 1999, Notice of

Levy. In that instance the question becomes whether the Respondent retains dominion over the pension plan

payments , because it is the Debtor  "who owns or controls the source of the income, also controls the  disposition

of that which he could have received himself and  diverts the payment from himself  to others  as the means of

procuring the satisfaction of his wants." Horst, supra, at 116-117, 85 L. Ed. 75, 61 S.

Ct. 144. See also Lucas, supra, at 114-115, 74 L. Ed. 731, 50 S. Ct. 241; Helvering v. Eubank, 311 U.S.

122, 124-125, 85 L. Ed. 81, 61 S. Ct. 149, 1940-2 C.B. 209 (1940); Sunnen, supra, at 604, 92 L. Ed. 898, 68 S.

Page 29 of 32

Ct. 715. Looking to control over the income- generating asset, then, preserves the principle that income should

be taxed to the party who earns the income and enjoys the consequent benefits. Baum v. United States, 1975 WL

601 (S.D.N.Y. 1975) ("Upon service of a notice of levy the 'effects a seizure that is tantamount to a transfer of

ownership' citing U.S. v. Pittman, 4 449 F.2d 623, 626 (CA7, 1971) ("The levy therefore gave the United States

full legal right to the [property] levied upon as against the claim of the petitioner receiver.' Phelps v. United States,

421 U.S. 330.").

Similarly, in *Brewer v. United States*, 1991 WL 338331 (S.D.N.Y., 1991), the Court held that:

> The government contends, however, that title to intangible property such as cash or cash equivalents passes whe
> the notice of levy is served. "Notice of levy and demand are equivalent to seizure." Phelps v. United States [75-1
> USTC § 9467], 421 U.S. 330, 337 (1975). Under the Government's scenario, because the levy was made on Mr.
> Brewer's benefits held by the Union on February 21, 1990, title passed to the Government at that time. We agree
> with the Government's position. "In the situation where a taxpayer's property is held by another, a notice of levy
> upon the custodian...give the IRS the right to all property levied upon, and creates a custodial relationship between
> the person holding the property and [the] IRS so that the property comes into the constructive possession of the
> Government." United States v. National Bank of Commerce [85-2 USTC § 94821, 472 U.S. 713, 720 (1985)
> (citations omitted). Here, the government acquired the right to the funds held for Mr Brewer's benefit at the Iron
> Workers' Union prior to the filing of the complaint.

In re Reese 14 B.R. 113 (Bkrtcy., N.Y. 1981) (" A levy effects a seizure of the delinquent taxpayer's property, United

States v. Sullivan, (3rd.) 333 F.2d 100. Having seized the property prior to the filing of the taxpayer's petition fo relief

under Chapter 7, the United States acquired full legal right to the funds as against the trustee in bankruptcy. Phelps v.

United States, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201. The $2,173.74 in question should be turned over to the

United States and it is so ordered."). Same Chevron, U.S.A., Inc. V. United States, 705 F.2d 1487 (CA9, 1983).").

Similarly, in American Acceptance Corp v. Glendora, 550 F. 2d 1220 (CA9, 1977) the Ninth circuit held that:

The Supreme Court recently analyzed the effect of a notice of levy in Phelps v. United States, 421 U.S. 330,

95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). When faced with competing claims of the IRS and a receiver

bankruptcy, it held that the IRS's notice of levy served before bankruptcy gave the IRS' full legal right' to the money

against the receiver's claim. Id. at 337, 95 S.Ct. 1728. It further held that 'actual possession' of the money

was not necessary because 'Historically, service of notice has been sufficient to seize a debt, and notice of

levy and demand are equivalent to seizure.' Id. at 336-37, 95 S.Ct. At 1732 (citations omitted). Accord,

United States v. Pittman, 449 F.2d 623, 627 )7 cir. 1971); United States v. Eiland, 223 F.2d 118, 123-24

(4 Cir. 1955).

WHEREFORE, for the foregoing, secured creditor, Walter J. Lawrence prays that this Court enter an ord

thereby denying Debtor's request that Debtor not be held liable for the sums alienated from secured creditor, Walter

Lawrence's interest in the GM/UAW ERISA and IRC qualified pension plan payments.

Secured creditor,
Walter J. Lawrence

## CERTIFICATE OF SERVICE

This is to certify that on September 13, 2010, secured creditor, Walter J. Lawrence did place a copy of

**SECURED CREDITOR, WALTER J. LAWRENCE'S REPLY IN OPPOSITION TO "DEBTORS'**

**EIGHTY- SECOND OMNIBUS OBJECTION TO CLAIMS,"** in a U.S. postal receptacle with U.S.

postage first being fully prepaid for first class delivery and addressed to:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Page 31 of 32

Attorney for Debtors
and Debtors in Possession

Page 32 of 32