**Hearing Date: September 24, 2010**
**Hearing Time: 9:45 a.m. (prevailing Eastern Time)**
**Hearing Place: New York, N.Y.**
**Objection Deadline: September 17, 2010, at 4:00 p.m. (prevailing Eastern Time)**

Walter J. Lawrence
#103
2609 N. Forest Ridge Blvd.
Hernando, Fl 34442
Telephone (269) 838-5076
Secured creditor in pro per

SEP 14 2010

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| | **CASE NO. 09-50026(REG)** |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | **(Jointly Administered)** |
| f/k/a General Motors Corp., *et al.* | |
| **Debtors.** | |

## INDEX OF EXHIBITS RE: SECURED CREDITOR, WALTER J. LAWRENCE'S REPLY IN OPPOSITION TO "DEBTORS' EIGHTY-SECOND OMNIBUS OBJECTION TO CLAIMS"

1. ANSWERING BRIEF OF MOTORS LIQUIDATION COMPANY IN OPPOSITION TO APPEAL OF WALTER J. LAWRENCE

2. IRS May 19, 1999, Notice of Levy

3. Bankruptcy Court Order of May 8, 2001 and schedule C.

4. DEFENDANTS MOTION AND BRIEF IN OPPOSITION T PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    AND CROSS-MOTION FOR SUMMARY JUDGMENT."

5. Debtors Answer to Plaintiff's Amended Complaint pending in the United States Bankruptcy Court, Northern District of Florida.

6. DEFENDANT' ANSWER AND BRIEF IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY    JUDGMENT RE: AMENDED COMPLAINT

7.   Debtors letter to secured creditor, Walter J. Lawrence, dated May 14, 2007

8.   Debtors letter to secured creditor, Walter J. Lawrence, dated September 5, 2007

9.   Exhibit A, Page #5, of Debtor's Eighty-Second Omnibus Objection to Claims.

10.  Debtors letter to secured creditor, Walter J. Lawrence, dated May 14, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

-----------------------------------------------x

| | | |
|---|---|---|
| WALTER J. LAWRENCE, | : | Case No. 10-CV-00036-RJH |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| MOTORS LIQUIDATION COMPANY, | : | |
| | : | |
| Appellee. | : | |

-----------------------------------------------x

---

## ANSWERING BRIEF OF MOTORS LIQUIDATION COMPANY IN OPPOSITION TO APPEAL OF WALTER J. LAWRENCE

---

*Stephen Karotkin*
*David R. Berz*
*Michele J. Meises*
*Evan S. Lederman*
*Brianna N. Benfield*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212-310-8000 (T)
212-310-8007 (F)

*Attorneys for Motors Liquidation Company -
Appellee*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

COUNTER-STATEMENT OF THE ISSUE ON APPEAL......................................................... 3

STANDARD OF APPELLATE REVIEW.................................................................................... 3

STATEMENT OF THE CASE...................................................................................................... 4

ARGUMENT................................................................................................................................. 8

I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN
      DENYING THE MOTION TO LIFT THE AUTOMATIC STAY................................... 8

II.   THE BANKRUPTCY COURT HAD SUBJECT MATTER JURISDICTION
      OVER APPELLANT'S MOTION TO LIFT THE STAY .............................................. 19

III.  APPELLANT'S RELIANCE ON 11 U.S.C. § 362(d)(2) AS GROUNDS FOR
      RELIEF FROM THE STAY IS INAPPOSITE .............................................................. 21

CONCLUSION........................................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),*
   117 B.R. 789 (Bankr. S.D.N.Y. 1990) ............................................................9

*In re Bally Total Fitness of Greater N. Y., Inc.,*
   402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd,* 411 B.R. 142 (S.D.N.Y. 2009) .................14, 15

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) ............................................................10

*In re Country Squire Assocs. of Carle Place, L.P.,*
   1996 Bankr. LEXIS 1939 (Bankr. N.D.N.Y. September 3, 1996) ...................21

*Dale Funding Corp. v. Garner (In re Garner),*
   18 B.R. 369 (S.D.N.Y. 1982) ......................................................................22

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,*
   57 F.3d 1215 (3d Cir. 1995) .........................................................................3

*Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors),*
   550 F.2d 47 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093 (1977) .........................9

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),*
   896 F.2d 1384 (2d Cir. 1990) .......................................................................3

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
   456 U.S. 844 (1982) ...................................................................................4

*In re Kaplan Breslaw Ash, LLC,*
   264 B.R. 309 (Bankr. S.D.N.Y. 2001) ...........................................................22

*Mazzeo v. Lenhart (In re Mazzeo),*
   167 F.3d 139 (2d Cir. 1999) .......................................................................10

*Midlantic Nat'l Bank v. N. J. Dep't of Envt'l Protection,*
   474 U.S. 494 (1986) ...................................................................................9

*Morgan Guar. Trust Co. v. Hellenic Lines, Ltd.,*
   38 B.R. 987 (S.D.N.Y. 1984) .....................................................................11

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart
    Convenience Stores, Inc.),*
    351 F.3d 86 (2d Cir. 2003)................................................................................4

*In re N.W. Airlines Corp.,* Ch. 11  Case No. 05-17930, 2006 WL 687163 (Bankr.
    S.D.N.Y. Mar. 10, 2006)...............................................................................15

*Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential
    Lines, Inc.),*
    114 B.R. 27 (Bankr. S.D.N.Y. 1989) ..............................................................9

*Siskin v. Complete Aircraft Servs., Inc. (In re Siskin),*
    258 B.R. 554 (Bankr. E.D.N.Y. 2001)...........................................................21

*Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),*
    907 F.2d 1280 (2d Cir. 1990)............................................1, 4, 10-13, 15-18, 22

*In re Touloumis,*
    170 B.R. 825 (Bankr. S.D.N.Y. 1994) ...........................................................11

## STATUTES

11 U.S.C. § 362.............................................................................................22

11 U.S.C. § 362(a) .......................................................................................8-9

11 U.S.C. § 362(d)(1) .........................................................................9-10, 21-22, 24

11 U.S.C. § 362(d)(2) .........................................................................9-10, 21-23

11 U.S.C. § 363.............................................................................................5

28 U.S.C. § 157...........................................................................................21

28 U.S.C. § 157(a) .....................................................................................19-20

28 U.S.C. § 157(b) .....................................................................................19-20

28 U.S.C. § 157(b)(1) .....................................................................................20

28 U.S.C. § 157(b)(2) .....................................................................................20

28 U.S.C. § 157(b)(2)(G) .............................................................................3, 20-21

28 U.S.C. § 1334.......................................................................................19, 21

28 U.S.C. § 1334(a) ............................................................................................................ 3, 20-21

H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6297 ................. 9

## PRELIMINARY STATEMENT

Dissatisfied with the well-reasoned and well-articulated decision (the "Decision")

and order (the "Order") of the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court") denying the motion for relief from the automatic stay (the

"Motion") filed by Appellant Walter J. Lawrence ("Lawrence" or "Appellant"), Appellant now

seeks an order from this Court reversing the Bankruptcy Court Order. Appellant's Motion

sought relief from the broad protections of the automatic stay imposed under section 362(a) of

title 11, United States Code (the "Bankruptcy Code") to proceed with his prepetition action

pending in the Middle District of Florida styled *Walter J. Lawrence v. General Motors Hourly-*

*Rate Employee Pension Plan and General Motors Corporation*, 5:07-cv-00408-WTH-GRJ (the

"Florida Action"). After full briefing and conducting a hearing on the merits, the Bankruptcy

Court properly exercised its discretion and denied the Motion.

As set forth more fully below, in denying the Motion, the Bankruptcy Court

properly analyzed and applied the factors mandated by *Sonnax Industries, Inc. v. Tri Component*

*Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) for relief

from the automatic stay and concluded that Appellant could not and did not satisfy his

considerable burden of establishing cause sufficient to truncate the statutorily imposed

"breathing spell" to which the Debtors are entitled (See Section I below). In particular, the

Bankruptcy Court properly concluded that Appellant's case is one of thousands of prepetition

litigation cases pending against the Debtors across the country and that Appellant cannot

articulate any special facts or circumstances warranting relief from the stay to allow him to

proceed with his case against the Debtors at this time. As noted by the Bankruptcy Court,

requiring the Debtors to litigate the Florida Action at this juncture in these chapter 11 cases

1

would not only deplete estate resources, thereby prejudicing other creditors, but also expose the Debtors to having to defend countless other lift stay motions. This would impose a heavy burden on the Debtors' valuable time and scarce resources when the Debtors' focus should be on, among other things, determining how to dispose of their remaining assets in an orderly and value-maximizing manner and proceeding with an organized chapter 11 claims resolution process.[1]

Further, the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend against the Florida Action far outweighs any potential gain to Appellant in proceeding with the Florida Action against the Debtors at this time. At best, any judgment Appellant may receive in the Florida Action would entitle him to a general unsecured claim to be paid on a pro rata basis along with the thousands of other such claims pursuant to a confirmed chapter 11 plan. There is no reason Appellant must liquidate his general unsecured claim ahead of the thousands of similarly-situated creditors at this critical time in the Debtors' chapter 11 cases. This is especially true considering Appellant, as the Bankruptcy Court noted, may easily sever MLC from the Florida Action and proceed with his lawsuit against the General Motors Hourly-Rate Employees Pension Plan, the non-Debtor codefendant and the real party in interest, that presumably could satisfy any judgment fully. Thus, Appellant is not prejudiced in any material respect by maintenance of the automatic stay at this time.

Unable to articulate sufficient cause for lifting the automatic stay, Appellant now argues that the Bankruptcy Court lacked subject matter jurisdiction over the Motion notwithstanding that Appellant himself filed the Motion with the Bankruptcy Court. Appellant

---

[1] Through the Debtors' proposed claims resolution process, for which the Debtors currently are seeking Bankruptcy Court approval to utilize settlement and alternative dispute resolution procedures (the "ADR Procedures"), the Debtors will be able to address all prepetition claims, including Appellant's, efficiently, fairly, and in a centralized fashion as contemplated by chapter 11 of the Bankruptcy Code, rather than being forced to litigate such claims in a piecemeal, *ad hoc* manner in courts across the country.

further argues that the Bankruptcy Court abused its discretion in denying the Motion because the Debtors lack equity in the property Appellant seeks to regain in the Florida Action and because such property is not necessary for an effective reorganization. Appellant simply is wrong as a matter of law. First, the Bankruptcy Court has core subject matter jurisdiction over motions to terminate the automatic stay under the plain language of 28 U.S.C. § 157(b)(2)(G). (See Section II below). Second, Appellant is misguided in his attempt to argue that the Debtors lack equity in the property he seeks in the Florida Action and that such property is not necessary for an effective reorganization as these factors are irrelevant to a court's decision of whether to lift the stay to allow litigation to proceed. (See Section III below).

Appellant cannot meet his burden of establishing that the Bankruptcy Court abused its discretion in denying the Motion, and the Debtors respectfully request that this Court affirm the Bankruptcy Court's Order.

## COUNTER-STATEMENT OF THE ISSUE ON APPEAL

Has Appellant met his burden of establishing that the Bankruptcy Court abused its discretion in denying Appellant's Motion for relief from the automatic stay?

## STANDARD OF APPELLATE REVIEW

While the Bankruptcy Court's legal conclusions are reviewed *de novo*, its findings of fact are reviewed only for clear error. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir. 1990). A reviewing court must "accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (citation omitted). Where there are two permissible views of the evidence, the choice between them cannot be

clearly erroneous. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 857 (1982). The

decision to deny a motion for relief from the automatic stay is committed to the discretion of the

Bankruptcy Judge, and denial of a motion to lift the automatic stay may only be overturned upon

a showing of abuse of that discretion. *New England Dairies, Inc. v. Dairy Mart Convenience*

*Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91 (2d Cir. 2003); *Sonnax*

*Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d

Cir. 1990).

## STATEMENT OF THE CASE

### MLC's Bankruptcy

On June 1, 2009, Motors Liquidation Company (f/k/a General Motors

Corporation) ("MLC") and certain of its subsidiaries (collectively, the "Debtors") commenced a

voluntary case under chapter 11 of the Bankruptcy Code. [CD-1 at 1][2] The commencement of

the Debtors' chapter 11 cases triggered the automatic stay of all litigation pending against the

Debtors pursuant to section 362 of the Bankruptcy Code.

These chapter 11 cases are among the largest and most complex ever filed in the

United States. [CD-1] Before commencing these chapter 11 cases, the Debtors were the largest

Original Equipment Manufacturer of automobiles in the United States and the second largest in

the world, employed approximately 235,000 employees worldwide, and had, as of March 31,

2009, consolidated reported global assets and liabilities of approximately $82,290,000,000 and

$172,810,000,000 respectively. [*Id.* at 11, 42] On July 10, 2009, the Debtors implemented the

only available means to preserve and maximize the value, viability, and continuation of their

---

[2] All references to MLC's Statement of Issues Presented on Appeal and Counterdesignation of Additional Items to
be Included in the Record on Appeal in Connection with the Appeal of Walter J. Lawrence shall be referred to
herein as "CD-__."

business by consummating the sale (the "363 Sale") of substantially all of their assets to

NGMCO, Inc. (n/k/a General Motors, LLC), a United States Treasury-sponsored purchaser,

pursuant to section 363 of the Bankruptcy Code and that certain Amended and Restated Master

Sale and Purchase Agreement ("MSPA"). [CD-2]

**The Florida Action**

Appellant is the plaintiff in civil action number 07-408 pending in the United

States District Court for the Middle District of Florida (the "Florida Court") against MLC and

the General Motors Hourly-Rate Employees Pension Plan (the "Pension Plan"). [CD-4 at 3 ]

Appellant commenced the Florida Action *pro se* on October 9, 2007. [*Id.*] The Florida Action

alleges that Appellant is a former MLC hourly employee who, upon his retirement from MLC in

1993, began receiving a monthly pension benefit. [*Id.*] The Florida Action further alleges that

MLC and the Pension Plan violated the Employee Retirement Income Security Act ("ERISA")

by remitting Appellant's pension benefits to the Internal Revenue Service ("IRS") pursuant to a

garnishment obtained by the IRS and by reducing Appellant's pension payments by 50% to

reimburse the Pension Plan for previous overpayments it had made to Appellant. [*Id.*]

MLC is not the Pension Plan fiduciary; the fiduciary is the Investment Committee

of the Board of Directors. [*Id.*] It is the Debtors' understanding that the Pension Plan remitted

Appellant's pension benefits to the IRS in response to an IRS notice of deficiency and levy

against Appellant's pension benefits stating that Appellant had failed to pay his income taxes in

eleven different years. [*Id.*] Indeed, upon receipt of the levy, the Pension Plan was obligated to

remit Appellant's pension benefits to the IRS to satisfy the tax levy. [*Id.*]

Since commencing the Florida Action, Appellant has filed no fewer than 23

motions in the Florida Action, including two motions for summary judgment dated February 12,

2008, and April 28, 2008, respectively. [*Id.*] Defendants in the Florida Action cross-moved for summary judgment on March 7, 2008. [*Id.*] The Florida Court has not ruled on the motions and cross-motion for summary judgment, nor has any discovery been completed, or properly initiated, in the Florida Action.[3] [*Id.* at 4]. On May 12, 2008, the Florida Court ordered that the parties shall not file any further memoranda relating to the pending motions for summary judgment. [CD-3 at 34]  Nevertheless, Appellant has filed at least six subsequent motions in the Florida Action.

## Proceedings in the Bankruptcy Court

On October 5, 2009, Appellant filed the Motion in the Debtors' chapter 11 cases, seeking relief from the automatic stay to "enable Movant's Motion for Summary Judgment and other pending motions to be heard" in the Florida Action. [CD-3 at 1]  The Motion alleged that "cause for relief from the stay may be found based on Movant's desire to proceed to completion in the United States District Court, Middle District of Florida and on a lack of adequate protection." [CD-3 at 35]

On October 30, 2009, the Debtors filed their Opposition to the Motion [CD-4], and on November 4, 2009, Appellant filed his Reply to the Debtors' Opposition. [CD-5]  On November 5, 2009, the Bankruptcy Court heard oral argument on the Motion.  After hearing lengthy arguments from both the Appellant and the Debtors, the Bankruptcy Court delivered a comprehensive oral decision denying the Motion. [CD-6]  In denying the Motion, the Bankruptcy Court made the following findings, among others:

- "there can be no serious question that there is subject matter jurisdiction over Mr. Lawrence's claim.  By the same token, the Court also has subject matter jurisdiction

---

[3] Appellant has issued discovery requests to Defendants, however, the Florida Court granted Defendants' motion to quash. Defendants have not issued any discovery requests.

vis-à-vis efforts to enforce the automatic stay or to seek relief from the automatic stay." [CD-6 at 36:23-37:1];

- "when you're talking about requests to continue litigation against the estate, that doesn't invoke the same considerations as efforts to grab debtor property do. Instead, it invokes what we call in the Second Circuit the *Sonnax* factors." [CD-6 at 38:24-39:3];

- "allowing litigation in the Middle District of Florida to proceed and to require the debtor to have to devote the resources to address that litigation, would require the debtor to write out checks in postpetition dollars for the lawyers and other defense costs associated with the defense of that case, which would raise the risk, if not the certainty, of taking money out of all of the other members of the unsecured creditor community who have an understandable desire that the estate shepherd its resources to the maximum extent possible." [CD-6 at 40:9 -18];

- "nobody is going to be depriving Mr. Lawrence of his day in court. The issue, rather, is which court will decide the issue." [CD-6 at 41:6-8];

- "Bankruptcy litigation is typically as efficient or more efficient than litigation in the district courts in connection with plenary litigation." [CD-6 at 41:18-20];

- "The chances that this motion is going to result in . . . complete resolution of the issues is remote." [CD-6 at 42:15-17];

- "the Middle District of Florida has no particular expertise . . . that I don't have." [CD-6 at 43:13-14];

- "the interest of judicial economy and the expeditious and economical resolution of litigation warrants and weighs in favor of denial of the motion. . . . [T]he economical

7

way of doing it is dealing with it by the claims allowance process, as all of the other

thousands of claims against this estate are." [CD-6 at 44:20-25];

- "[I]f I were ever to allow relief from the stay on a garden variety claim of this type

there would indeed be the risk, if not the certainty, that every other party who thinks

he or she has a good claim against the estate pending in another jurisdiction would be

asking me to . . . provide relief from the stay." [CD-6 at 45:2-7]

On November 24, 2009, the Bankruptcy Court signed the Order consistent with its oral decision

denying the Motion. [CD-7]  On December 3, 2009, Appellant filed a Notice of Appeal of the

Order.  [CD-8]

## ARGUMENT

### I.

### THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION TO LIFT THE AUTOMATIC STAY

The appeal should be denied because Appellant cannot satisfy his burden of

establishing that the Bankruptcy Court abused its discretion in denying Appellant's Motion for

relief from the automatic stay.  In fact, the decision of the Bankruptcy Court is fully supported by

applicable law.  Section 362(a) of the Bankruptcy Code provides in pertinent part that the filing

of a bankruptcy petition:

> operates as a stay, applicable to all entities, of –
>
> > (1) the commencement or continuation, including the
> > issuance or employment of process, of a judicial,
> > administrative, or other action or proceeding against the
> > debtor that was or could have been commenced before the
> > commencement of the case under this title, or to recover a
> > claim against the debtor that arose before the
> > commencement of the case under this title . . . .

11 U.S.C. § 362(a).  The automatic stay affords a debtor fundamental protections under the

Bankruptcy Code.  *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Protection*, 474 U.S.

494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code … has been described

as 'one of the fundamental debtor protections provided by the bankruptcy laws.'") (quoting S.

Rep. No. 95-989 at 54 (1978); H.R. Rep. No. 95-595 at 340 (1977)).

       The broad protection of the automatic stay extends to all matters that may have an

effect on a debtor's estate and is designed to relieve "the financial pressures that drove [the

debtors] into bankruptcy."  H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978

U.S.C.C.A.N. 5963, 6297; *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re*

*Prudential Lines, Inc.)* 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989).  The automatic stay provides the

debtor with a "breathing spell" after the commencement of a chapter 11 case, shielding the

debtor from creditor harassment at a time when the debtor's personnel should be focusing on the

administration of the chapter 11 case.  *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In*

*re Fidelity Mortgage Investors)*, 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case), *cert.*

*denied*, 429 U.S. 1093 (1977).  Further, it "prevents creditors from reaching the assets of the

debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims

can be assembled in the bankruptcy court for a single organized proceeding."  *AP Indus., Inc. v.*

*SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990).

       Section 362(d) of the Bankruptcy Code provides specific grounds under which

relief from the stay shall be granted:

> On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if –

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d)(1)-(2).[4]

Section 362(d)(1) does not define "cause." However, courts in this Circuit have determined that in examining whether cause exists they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983). The seminal decision in this Circuit on whether cause exists to lift the automatic stay is *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating District Court order granting stay relief where Bankruptcy Court had not applied *Sonnax* factors, made only sparse factual findings, and ultimately did not provide appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). In *Sonnax*, the Second Circuit outlined twelve factors to be considered when deciding whether to lift the automatic stay:

(1) whether relief would result in a partial or complete resolution of the issues;

---

[4] Sections 362(d)(3)-(4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to the Motion or this appeal.

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. Only those factors relevant to a particular case need be considered, and the court need not assign them equal weight. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. *Sonnax,* 907 F.2d at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. *Id.* Further, the cause demonstrated must be "good cause." *Morgan Guar. Trust Co. v. Hellenic Lines, Ltd.*, 38 B.R. 987, 998 (S.D.N.Y. 1984). As the Bankruptcy Court correctly decided, Appellant failed to meet his burden of establishing good cause for lifting the automatic stay under the *Sonnax* analysis. Indeed,

Appellant's Brief does not even mention the *Sonnax* factors. Because, as stated, Appellant cannot meet his burden of establishing cause to lift the stay, the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. *Sonnax,* 907 F.2d at 1285. Nevertheless, as the Bankruptcy Court found, the *Sonnax* factors relevant to this case plainly weigh against lifting the automatic stay to allow the Florida Action to proceed at this juncture.[5]

The First Factor. The first *Sonnax* factor weighs in favor of preserving the automatic stay because lifting the stay would not result in a complete resolution of the Florida Action. The motions and cross-motion for summary judgment have been pending before the Florida Court for almost two years. The Florida Court has given no indication that it is poised to rule on summary judgment, but for the automatic stay. Indeed, nothing is preventing the Florida Court from ruling on the pending summary judgment motions as to the Pension Plan, yet the Florida Court has not yet done so. Further, as the Bankruptcy Court observed, "perhaps, the most likely of all the facts [is] that the Middle District of Florida court, if it got around to deciding this, at such time as it could it having its own burdens, would merely find that [there are] issues of fact." [CD-6 at 42:11-15] If the Florida Court were to deny summary judgment it would require the parties to engage in discovery, pre-trial requirements, and ultimately trial. Even if Appellant were to prevail on summary judgment or trial, he would still have to submit his judgment to the Bankruptcy Court to be paid his pro rata share with all other unsecured creditors. Accordingly, the Bankruptcy Court did not abuse its discretion in finding that the "chances that this [M]otion is going to result in . . . complete resolution of the issues is remote." [*Id.* at 42:15-17]

---

[5] As noted by the Bankruptcy Court, the third, eighth, and ninth *Sonnax* factors are not applicable to the Motion (CD-6 at 43: 4-8; 44:14-19) and, therefore, are not substantively addressed herein.

     The Second Factor. The second *Sonnax* factor also supports preserving the automatic stay because allowing the Florida Action to proceed obviously would interfere with the Debtors' chapter 11 cases. Appellant incorrectly asserts that "the Bankruptcy Court could not find that the lifting of the stay would have any 'conceivable effect' on Debtor's estate." (Appellant Br. 1). Appellant fails to recognize, however, the time, attention, and expense that would be required in proceeding with litigating the Florida Action. The Debtors' chapter 11 cases constitute the second largest industrial bankruptcy in history. The cases have been active for less than eight months, and during the initial stages of these cases, the Debtors' resources were consumed by executing a massive sale of assets in accordance with the MSPA. Given the complexity of these chapter 11 cases, the Debtors are still in the early stages of the claims resolution process and are currently seeking Bankruptcy Court approval for ADR Procedures, including offer and compromise, mediation, and arbitration to resolve the more than 70,000 claims filed against the Debtors.

     This process is made even more complex given that, with the closing of the MSPA, the Debtors no longer have the employees, resources, and funding of an active business. In light of the 363 Sale, the Debtors no longer have any legal staff or employ the individuals whose conduct may be implicated in the Florida Action, and do not now physically possess the other records and documents necessary to defend the Florida Action. As such, lifting the automatic stay to allow the Florida Action to proceed at this juncture would impose a significant burden on the small team of managers remaining with the Debtors who are focused on maximizing recovery for the estate's creditors and moving the Debtors efficiently through the chapter 11 process. Given Appellant's history of filing a plethora of motions in the Florida Action, it is likely that he would continue filing motions, seeking discovery, and initiating other

actions necessitating ongoing participation, expense, and distraction on the part of the Debtors while the parties await a ruling on summary judgment. Indeed, Appellant's Motion stated that if the stay is lifted he may once again seek a Writ of Mandamus from the Eleventh Circuit Court of Appeals. [CD-3 at 33] This is precisely what the automatic stay is designed to prevent. The burden imposed on the Debtors' estates would be further magnified if the Florida Action proceeds to trial. As the Bankruptcy Court astutely noted, "allowing litigation in the Middle District of Florida to proceed and to require the debtor to have to devote the resources to address that litigation, would require the debtor to write out checks in postpetition dollars for the lawyers and other defense costs associated with the defense of that case." [CD-6 at 40:9-14]

Additionally, allowing the Florida Action to proceed would set a negative precedent patently harmful to the Debtors' estates. The Florida Action is just one of thousands of cases pending against the Debtors across the country at the time that these chapter 11 cases were commenced. The Bankruptcy Court was correct in noting that if the Appellant is granted relief from the automatic stay, it would expose the Debtors to a flood of similar motions seeking to lift the stay in other cases across the country. [*Id.* at 45:2-10] ("The floodgates concern that the estate articulated is indeed a very serious one."). Litigating the motions alone, much less litigating the underlying lawsuits, would substantially drain the estates' assets and harm the recovery prospects of all creditors in direct contravention of the intent and purpose of the Bankruptcy Code. Meanwhile, the Debtors are not sitting on their hands; they are working diligently to gain approval of and to implement efficient ADR Procedures to address a large number of unliquidated claims and maximize value for all parties in interest.

In similar circumstances courts have held that lifting the automatic stay is not warranted. *See, e.g., In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr.

14

S.D.N.Y.) (denying motion for relief from automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re N.W. Airlines Corp.*, Ch. 11 Case No. 05-17930, 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar. 10, 2006) (maintaining the automatic stay because "lifting the automatic stay . . . would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11"). Given the thousands of lawsuits pending against the Debtors across the country and the flood of litigation likely to ensue if relief from the stay is granted, the Bankruptcy Court did not abuse its discretion in maintaining the automatic stay.

The Fourth Factor. The fourth *Sonnax* factor also does not support lifting the automatic stay because the Florida Court is not a specialized tribunal that has been established to hear the Florida Action. As the Bankruptcy Court correctly noted, "the Middle District of Florida has no particular expertise . . . that I don't have." [CD-6 at 43:13-14] The Bankruptcy Court, on the other hand, is more familiar with the Debtors' chapter 11 cases and the ADR Procedures being implemented to resolve claims such as Appellant's.

The Fifth Factor. The fifth *Sonnax* factor, as the Bankruptcy Court correctly concluded, "doesn't warrant relief from the stay" because the Debtors do not possess insurance over Appellant's claims in the Florida Action, nor does Appellant argue that insurance is at issue. [*Id.* at 43:19-21]

The Sixth Factor. The sixth *Sonnax* factor similarly does not militate towards lifting the stay because MLC easily can be severed from the Florida Action and Appellant can proceed as to a third party in the Florida Action. Appellant named the Pension Plan as a

codefendant in the Florida Action, and the automatic stay does not bar Appellant's ability to

proceed as to the Pension Plan. Indeed, the Bankruptcy Court observed:

> the option . . . is plainly present here, of allowing the litigation to
> proceed against the third parties, against whom [the litigation is]
> primarily asserted . . . it's no big deal to allow the debtor to be
> severed and to allow the litigation to proceed in the other forum
> against the remaining parties . . .
>
> *[Appellant's] principal target should be, if it's anybody, the
> [Pension Plan. . . . [W]hat he should do is simply continue his
> litigation against the [Pension Plan] and if he wishes to proceed
> with his claim here.*

[*Id.* at 44:1-13 (emphasis added)]

The Seventh Factor. The seventh *Sonnax* factor weighs in favor of preserving the

automatic stay. As discussed above with respect to the second *Sonnax* factor, allowing the

Florida Action to proceed would deplete the estates' resources and, therefore, would prejudice

the interests of other creditors. Requiring the Debtors to litigate the flood of lift stay motions

that would likely follow if the stay is lifted with respect to the Florida Action would further

deplete the estates' resources. This result would be unjust because, as the Bankruptcy Court

correctly observed:

> when managing a bankruptcy case a bankruptcy judge has to
> consider everybody [in] the case, including the universe of
> unsecured creditors and where applicable secured creditors, and
> has to address the needs and concerns of the movant in the context
> of the needs of all of the other creditors in this case. As the debtor
> has properly recognized, *allowing litigation in the Middle District
> of Florida to proceed . . . would raise the risk, if not the certainty,
> of taking money out of all of the other members of the unsecured
> creditor community.*

[*Id.* at 40:3-16 (emphasis added)]  In light of the Bankruptcy Code's mandate that similarly-

situated creditors be treated equitably and the Bankruptcy Court's duty to assist in maximizing

the value of the estates, the Bankruptcy Court did not abuse its discretion in finding that lifting

16

the stay to allow the Florida Action to proceed would prejudice other creditors and in denying Appellant's Motion.

The Tenth Factor. The tenth *Sonnax* factor likewise supports preserving the automatic stay because the interests of judicial economy and the expeditious resolution of litigation are best served by resolving Appellant's claims along with the tens of thousands of similar prepetition, contingent, unliquidated, disputed, and unsecured claims in the centralized process contemplated by the Bankruptcy Code. As the Bankruptcy Court noted, the "economical way of doing it is dealing with it by the claims allowance process, as all of the other thousands of claims against this estate are." [*Id.* at 44:23-25] As stated above, the Debtors have requested Bankruptcy Court approval of the ADR Procedures to resolve claims in an expeditious and economical fashion that will preserve and maximize value for all stakeholders. The Bankruptcy Court aptly noted, "[b]ankruptcy litigation is typically as efficient or more efficient than litigation in the district courts in connection with plenary litigation. And the very reason that we have a claims allowance process is to deal with these matters . . . in the most economical way possible." [*Id.* at 41:18-23] The Bankruptcy Court further noted that permitting the Florida Action to proceed would have "the consequences of requiring the estate to defend the claim in an inefficient fashion." [*Id.* at 41:2-3] Accordingly, the Bankruptcy Court did not abuse its discretion in finding that the interests of judicial economy were best served by denying Appellant's Motion.

The Eleventh Factor. The eleventh *Sonnax* factor does not support lifting the stay because the parties are not ready for trial in the Florida Action. As noted above, summary judgment motions are pending in the Florida Action and no discovery or other trial preparations have been commenced. As the Bankruptcy Court concluded with respect to the Florida Action,

17

"this case is in the earliest stages." [*Id.* at 46:23]  If the stay were lifted in the Florida Action, the parties would still have to proceed through all trial preparations which would be a lengthy and expensive process.

      The Twelfth Factor.  The twelfth *Sonnax* factor supports preserving the automatic stay because lifting the stay would significantly burden the Debtors and their creditors whereas preserving the stay does not harm Appellant by comparison.  As discussed above, allowing the Florida Action to proceed would impose a significant burden on the Debtors in terms of the time, attention, and expense that would be required to litigate both the Florida Action and the flood of lift stay motions likely to follow if Appellant is granted relief from the stay.  The Debtors should not be compelled to use their resources to litigate prepetition, general unsecured claims in courts across the country.  In fact, to permit the Florida Action to proceed under the circumstances that exist here would be antithetical to the intent and purpose of the Bankruptcy Code.  Moreover, as stated, Appellant may continue to proceed with the Florida Action against the Pension Plan, which is the real party interest, because MLC was not the Pension Plan fiduciary.  Finally, Appellant is still able to proceed with his claim against MLC as he filed a proof of claim in the Debtors' chapter 11 cases.  Indeed, resolving claims such as Appellant's claim in the Bankruptcy Court is precisely what is contemplated by the Bankruptcy Code.  Accordingly, the Bankruptcy Court was correct in noting that "[h]ere nobody is going to be depriving Mr. Lawrence of his day in court." [*Id.* at 41:6-7]

      In sum, the Bankruptcy Court correctly and thoroughly analyzed and addressed each of the applicable *Sonnax* factors and appropriately denied Appellant's Motion for relief from the automatic stay.

## II.

## THE BANKRUPTCY COURT HAD SUBJECT MATTER JURISDICTION OVER APPELLANT'S MOTION TO LIFT THE STAY

Appellant devotes much of his appeal brief to arguing that "the nontenured bankruptcy judge has no subject matter jurisdiction over the Motion to Lift the Stay." (Appellant Br. 14). While the Debtors understand that the Appellant is *pro se* in this matter, Appellant's argument that the Bankruptcy Court lacked jurisdiction over the Motion is nonsensical and belied by applicable law and by Appellant's own action in filing the Motion with the Bankruptcy Court. First, 28 U.S.C. §§ 1334 and 157(a) grant the Bankruptcy Court federal subject matter jurisdiction. Second, 28 U.S.C. § 157(b) grants the Bankruptcy Court the authority to make final determinations and enter appropriate orders with respect to motions, like Appellant's Motion, seeking relief from the automatic stay.

Section 1334 of title 28 of the United State Code grants federal subject matter jurisdiction to federal courts over bankruptcy cases. Specifically, 28 U.S.C. § 1334(a) states that district courts "have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), the district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *Id.* § 157(a). The United States District Court for the Southern District of New York provided that all cases and proceedings under title 11 are referred to the Bankruptcy Judges in the District pursuant to the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. Appellant's argument that there is no "jurisdiction that the District Court could have referred to this Court in the District Court order of July 10, 1984" (Appellant's Br. 1) is erroneous because the Debtors' chapter 11 cases are cases under title 11 and Appellant's Motion to lift the

automatic stay, which he filed in the Debtors' chapter 11 cases, is a proceeding arising under title

11, and, therefore, it is properly "referred to the bankruptcy judges for the district." 28 U.S.C.

§ 157(a).

Section 157(b) of title 28 grants Bankruptcy Judges the authority to "enter

appropriate orders and judgments" in select matters arising under or arising in a case under title

11. *Id.* § 157(b)(1). These select matters are known as "core proceedings." *Id.* Specifically,

section 157(b) provides:

> (1) Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title.

> (2) Core proceedings include, but are not limited to –

> . . . .

> (B) allowance or disallowance of claims against the estate . . . .

> . . . .

> (G) *motions to terminate, annul, or modify the automatic stay* . . . .

*Id.* § 157(b) (emphasis added). As the Bankruptcy Court explained, "under (b)(2)(B),

matters involving the allowance or disallowance of claims against the estate are a core

matter. Additionally . . . under (b)(2)(G), motions to terminate or annul the automatic

stay are likewise core matters." [CD-6 at 37:18-22] Accordingly, pursuant to 28 U.S.C.

§ 157(b)(2), the Bankruptcy Court had core jurisdiction over both Appellant's proof of

claim filed in the Debtors' chapter 11 cases and Appellant's Motion seeking relief from

the automatic stay. Appellant's Motion arose in a case under title 11 because the Motion

was filed in the Debtors' chapter 11 cases and because Appellant sought relief from the

automatic stay imposed as a result of the commencement of the Debtors' chapter 11

cases. Appellant's Motion sought to terminate or annul the automatic stay to allow him

to proceed with the Florida Action and, therefore, falls squarely into the category of core

proceedings covered by 28 U.S.C. § 157(b)(2)(G), in which a Bankruptcy Judge may

exercise jurisdiction and enter appropriate orders and judgments. *See Siskin v. Complete

Aircraft Servs., Inc. (In re Siskin)*, 258 B.R. 554, 556 (Bankr. E.D.N.Y. 2001) ("it is

undisputed that only a bankruptcy court has jurisdiction to 'terminate, annul or modify'

the automatic stay"); *In re Country Squire Assocs. of Carle Place, L.P.*, Ch. 11 Case No.

94-14377, 1996 Bankr. LEXIS 1939, at *1 (Bankr. N.D.N.Y. September 3, 1996)

(finding that motion to lift stay "falls within the court's core subject matter jurisdiction

pursuant to 28 U.S.C. § 157(b)(2)(G) . . . ."). Significantly, Appellant filed his Motion

with the Bankruptcy Court and admitted in the Motion that "[t]his Court has jurisdiction

over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This motion is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(G)." [CD-3 at 2], thereby acknowledging

that the Bankruptcy Court has subject matter jurisdiction over the Motion. Accordingly,

there is no basis whatsoever to vacate the Bankruptcy Court's Order for lack of subject

matter jurisdiction.

### III.

### APPELLANT'S RELIANCE ON 11 U.S.C. § 362(d)(2) AS GROUNDS FOR RELIEF FROM THE STAY IS INAPPOSITE

Although Appellant's Motion was styled a motion for "Relief From the

Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)" [CD-3 at 1], Appellant's Brief cites to, and

relies exclusively on, 11 U.S.C. § 362(d)(2) as grounds for granting relief from the automatic

stay. (*See, e.g.*, Appellant Br. 2). Specifically, Appellant argues that "the reason why Appellant

met his burden of proof of under 11 U.S.C. 362 is because Debtor has no equity in the property

that is excluded from the estate." (*Id.*) Appellant further states that "there is no reasonable

prospect that the GM/UAW ERISA and IRC qualified supplemental pension plan payments can

be used in aid of an effective reorganization." (*Id.* at 4.) Appellant's reliance on section

362(d)(2) is misguided as that section is inapplicable to motions seeking to lift the stay solely to

proceed with a judicial proceeding.

By its plain language, section 362(d)(2) only applies when the movant is seeking

relief from the "stay of an act *against property.*" 11 U.S.C.§ 362(d)(2) (emphasis added). The

law is clear that section 362(d)(2) is only intended to provide a basis for stay relief where a

movant is attempting to enforce a security interest in a debtor's property, such as by repossessing

or foreclosing on the property. *See, e.g., Dale Funding Corp. v. Garner (In re Garner)*, 18 B.R.

369, 370 (S.D.N.Y. 1982) ("The Legislative Statements following 11 U.S.C. § 362 state in the

most general terms that § 362(d)(2) 'is intended to solve the problem of real property mortgage

foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure.'"); *In re*

*Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 312 (Bankr. S.D.N.Y. 2001) (granting relief from stay

under section 362(d)(2) to permit mortgage holder to foreclose on mortgage encumbering

warehouse owned by debtor). Conversely, section 362(d)(1), which provides for lifting the stay

"for cause," is the applicable provision for lifting the stay to proceed with litigation. *Sonnax*

*Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d

Cir. 1990) ("Because the instant case concerns a stay of a judicial proceeding, only Section

362(d)(1) is applicable."). [6]

---

[6] The Bankruptcy Court appropriately explained the distinction between sections 362(d)(2) and 362(d)(1) to
Appellant at the hearing on the Motion:

Here, Appellant seeks relief from the stay solely "to allow the United States

District Court, Middle District of Florida, case #5:07-CV-408 to proceed to final judgment."

(Appellant Br. 25). Appellant does not seek to repossess or foreclose upon collateral securing a

loan to the Debtors, nor is collateral, a loan, or a security interest in any way implicated in the

Florida Action. Accordingly, Appellant's reliance on section 362(d)(2) in support of his request

to lift the stay is misguided and inapplicable. It is completely irrelevant whether the Debtors

hold an equity interest in the Pension Plan or whether the Pension Plan is necessary to a

successful reorganization. Because the Motion sought to lift the stay to proceed with prepetition

litigation, the Bankruptcy Court appropriately applied the *Sonnax* factors to determine whether

---

The automatic stay applies to people's efforts to assert interests in debtor property, most commonly by attempting to enforce security interests or to grab assets of the debtor's property. When the effort is to go after debtor property then the debtor's equity in its property or its ownership of the property can, and often does, make the critical difference. But the automatic stay applies in addition to efforts to enforce debt or to collect on alleged debts, matters that don't involve property to the same extent and, as relevant here, to continue with litigation against the estate. And when you're talking about requests to continue litigation against the estate, that doesn't invoke the same considerations as efforts to grab debtor property do. Instead, it invokes what we call in the Second Circuit the *Sonnax* factors.

(CD-6 at 38:13- 39:3)

23

or not cause existed under section 362(d)(1) to lift the stay, and appropriately denied Appellant's

Motion.

## CONCLUSION

The Order should be affirmed in all respects.

Dated: New York, New York
February 18, 2010

WEIL, GOTSHAL & MANGES LLP
Attorneys for Motors Liquidation Company –
Appellee

By: /s/ Stephen Karotkin
       Stephen Karotkin
       A Member of the Firm

767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*David R. Berz*
*Michele J. Meises*
*Evan S. Lederman*
*Brianna N. Benfield*
    *Of Counsel*

24

## AFFIDAVIT OF SERVICE

I, Ilusion Rodriguez, certify under penalty of perjury that I am over the age of eighteen and am not a party to the above-captioned proceeding. On February 18, 2010, I caused a true and correct copy of the foregoing ANSWERING BRIEF OF MOTORS LIQUIDATION COMPANY IN OPPOSITION TO APPEAL OF WALTER J. LAWRENCE to be served by e-mail and FedEx, unless otherwise indicated, upon the parties that are listed below.

| | |
|---|---|
| Walter J. Lawrence<br>#103<br>2609 N. Forest Ridge Blvd.<br>Hernando, FL 34442<br>(by Federal Express Mail Only) | Diana G. Adams, Esq.<br>Brian Masumoto, Esq.<br>Office of the U.S. Trustee<br>For the Southern District of NY<br>33 Whitehall St. , 21st Floor<br>New York, New York 1004<br>(by Federal Express Mail Only) |
| Thomas Moers Mayer, Esq.<br>Kramer Levin Naftalis & Frankel, LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>tmayer@kramerlevin.com | |

Ilusion Rodriguez

Sworn to before me this
18th day of February 2010

Notary Public

NICOLE ALISEO
Notary Public, State of New York
No. 01AL6186782
Qualified in Richmond County
Commission Expires May 12, 20_12_

## Notice of Levy

DATE: 04/19/1999    DISTRICT:

REPLY TO:    Michigan
INTERNAL REVENUE SERVICE
GARY R. SNYDER   38-04082
GROUP 26
22600 HALL RD. - STE 102
CLINTON TWP, MI 48036

TELEPHONE NUMBER
OF IRS OFFICE:
(810)493-4540

NAME AND ADDRESS OF TAXPAYER:

WALTER J LAWRENCE
23205 GRATIOT APT 188
EASTPOINTE, MI 48021-1641

TO:

GENERAL MOTORS CORPORATION
NBD BANK TRUSTEE
P.O. BOX 330222
DETROIT, MI 48232-6222

IDENTIFYING NUMBER(S):    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
LAWR

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/1980 | 21199.79 | 14107.64 | 35307.43 |
| 1040 | 12/31/1981 | 38726.27 | 25903.66 | 64629.93 |
| 1040 | 12/31/1982 | 24736.99 | 2570.63 | 27307.62 |
| 1040 | 12/31/1983 | 62684.71 | 12640.20 | 75324.91 |
| 1040 | 12/31/1988 | 3933.44 | 3320.84 | 7254.28 |
| 1040 | 12/31/1989 | 3448.37 | 4862.96 | 8311.33 |
| 1040 | 12/31/1990 | 7109.23 | 8133.12 | 15242.35 |
| 1040 | 12/31/1991 | 5954.81 | 1384.82 | 7339.63 |
| 1040 | 12/31/1992 | 7808.55 | 1874.66 | 9683.21 |
| 1040 | 12/31/1993 | 6489.26 | 1603.95 | 8093.21 |
| 1040 | 12/31/1994 | 7515.38 | 1919.63 | 9435.01 |

IRS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT
PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS
IT IS SIGNED IN THE BLOCK TO THE RIGHT.

Total Amount Due ▶    267928.91

We figured the interest and late payment penalty to _____ 05-19-1999

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have (or are already obligated for) when they would have paid you.

If you decide to pay the amount you owe now, please bring a guaranteed payment (cash, cashier's check, certified check, money order) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

Signature of Service Representative _____    Title
GARY R. SNYDER   38-04082                  REVENUE OFFICER

Part 2 - FOR TAXPAYER

FORM 668-A(c) (DO) (Rev. 9-97)    1570

2

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

IN RE:

WALTER J. LAWRENCE,

    Debtor

CASE NO.:   01-70047-TLH4

_____/

## ORDER DENYING DEBTORS MOTION TO STRIKE THE UNITED STATES' OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS

THIS CASE is before the Court on the Debtor's Motion to Strike the United States' Objections to Debtor's Claimed Exemptions (Docket Entry #20). The United States of America did not object to the Debtor's claimed exemptions. *See* Docket Entry #17, page 3, lines 16-17 and page 4, lines 2-3. The Debtor's exemptions claimed in Schedule C of his petition were automatically granted when there was no objection to those claimed exemptions within thirty days of the completion of the section 341 meeting of the creditors. Therefore, it is hereby

ORDERED AND ADJUDGED that the Debtor's motion to strike objections to his claimed exemptions is MOOT, and therefore is DENIED.

DONE AND ORDERED at Tallahassee, Florida this _____8TH_____ day of May, 2001.

*[signature]*

Lewis M. Killian, Jr.
United States Bankruptcy Judge

U.S. BANKRUPTCY COURT
Northern District of Florida
DATE ENTERED ON DOCKET
5/8/01

01 MAY -8 AM 9:11

FORM 96C (600)

In re  WALTER J. LAWRENCE   S.S #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
           Debtor

Case No. 01-70047TLIH  4  wJL.
(If known)

## SECOND AMENDED
## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
(Check one box)

o   11U.S.C. §522(b)(1): Exemptions provided in 11 U.S.C., § 522(d). Note: These exemptions are available only in certain states.

o   11U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal law, state or local law where the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
| --- | --- | --- | --- |
| 1992 Chevrolet Van | F.S #222.25(1) ($1,000.00) plus Florida Constitution Article X Sec 4(A)(2) ($1,000.00) = | $2,000.00 | $2,000.00 |
| Debtor's interest in GM/UAW ERISA Qualified Pension Plan payments | 29 USC 1144(D) 11 USC 522 (d)(10)(E) F.S. 222(a) F.S. 222.21(2)(a) F.S. 222.20 | undetermined | " |
| Debtor's interest is excluded from property of the estate pursuant to 11 USC 541(a)(1), ( c )(2). | | | |
| Social Security Payments | 11 USC 522 (d)(10)(A) | " | " |
| Debtor's interest is excluded from property of the estate pursuant to 11 USC 541(a)(1), ( c )(2). | | | |
| 32' Travel Trailer | F.S. 222.25 F.S. 222.25 FL Const Article Section 4(A)(1) F.S 133.02 F.S. 222.01 | $4,000.00 | $4,000.00 |
| Life Insurance | F.S. 222.13 | $150,000.00 | $150,000.00 |

I declare that this document [?]
of one (1) sheet is true + correct and [?]
under the Penalties of perjury.

Dated: 2-20-01[?]

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

WALTER J. LAWRENCE,

    Plaintiff,

vs.

GENERAL MOTORS HOURLY-RATE EMPLOYEES PENSION PLAN, and GENERAL MOTORS CORPORATION,

    Defendants.

Case No. 5:07-CV-408 OC

Hon. William Terrell Hodges
Magistrate Judge Gary R. Jones

---

Walter J. Lawrence, In Pro Per
3101 SW 34th Avenue, # 905
Ocala, Florida 34474

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800

Cynthia L. May (0029297)
Co-Counsel for Defendants
Greenberg Taurig, P.A.
625 E. Twiggs Street, Ste. 100
Tampa, FL 33602
Telephone: (813) 318-5700

---

# DEFENDANTS' MOTION AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
G OLD WOODWARD AVE
SUITE 400
MINGHAM, MI 48009-6629

(248) 645-0800

△ 14

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   The Events That Led to the Overpayment of Pension Benefits to Plaintiff in the
Amount of $32,985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.   Description of the Available Appeal Procedure Under the General Motors
Hourly-Rate Employees Pension Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    The Arbitrary and Capricious Standard of Review Applies to the Review of
Determinations Made Under the GM Pension Plan . . . . . . . . . . . . . . . . . . . . 5

A.   Courts Have Determined The Arbitrary And Capricious Standard Is
Applicable To Determinations Made Under the GM Pension Plan . . . . . 5

B.   The Eleventh Circuit Has Adopted The Arbitrary And Capricious
Review Standard When The Plan Is Granted Authority To Interpret
The Plan's Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.   Defendants' Decision To Remit Plaintiff's Pension To The IRS Was Not
Arbitrary And Capricious Because It Was Mandated By Law . . . . . . . . . . . . 8

II.   Defendants Are Entitled To Summary Judgment Because Plaintiff Failed To
Exhaust His Available Contractual Administrative Remedies . . . . . . . . . . . . . 11

A.   The appeal procedure contained in the GM Supplemental Agreement
Covering Pension Plan is applicable to Plaintiff . . . . . . . . . . . . . . . . . . 11

B.   Even if the Court Determines Defendants Failed to Comply with the
Technical Requirements of ERISA, Summary Judgment is Still
Warranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.   Plaintiff Failed to Exhaust his Administrative Remedies and Thus His
Claims Should be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  Plaintiff's Remaining Arguments Are Insufficient To Warrant A Grant Of
Summary Judgment In His Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LAW OFFICES
**HARDY, LEWIS
& PAGE, P.C.**
1 S OLD WOODWARD AVE
SUITE 400
IMINGHAM, MI 48009-6629
(248) 645-0800

A.    Defendants Had a Right to Recoup the Overpayment from Plaintiff's
Pension Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.    Likewise, Defendants Did Not Violate ERISA by Remitting his Pension
Benefits to the IRS While Plaintiff was in Bankruptcy . . . . . . . . . . . . . . 16

C.    Defendants Were Not Limited to Only Recouping 10% of Plaintiff's
Pension Benefits to Satisfy the Overpayment . . . . . . . . . . . . . . . . . . . . . . . 17

D.    Plaintiff's Claim for Breach of Fiduciary Duty has No Merit and Should
Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
31 S OLD WOODWARD AVE
SUITE 400
RMINGHAM, MI 48009 6629
(248) 645-0800

# TABLE OF AUTHORITIES

**Cases**

Adams v. Thiokol Corporation,
231 F.3d 837 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bickley v. Caremark RX, Inc.,
461 F.3d 1325 (11th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Brown v. General Motors Corporation,
152 B.R. 935 (W.D.Wisc. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Busby v. IRS, et al.,
1997 WL 364507 (S.D.Fla.1997) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Carnaghi v. Phoenix American Life Insurance Company,
238 F.Supp. 1373 (N.D.Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Coar v. Kazimir,
990 F.2d 1413 (3rd Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Duncan v. General Motors Corp.,
2006 WL 375343 (W.D.Ark. 2006)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Firestone Tire and Rubber Co. v. Bruch,
489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Hawkins-Dunn v. General Motors Corp.,
225 Fed.Appx. 358 (6th Cir.2007) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Chastang,
116 B.R. 833 (Bkrtcy.M.D.Fla.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In Re Jones,
289 B.R. 188 (Bankr.M.D.Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Katz v. Comprehensive Plan of Group Insurance, ALLTEL,
197 F.3d 1084, 1088-1089 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lawler v. Suntrust Securities, Inc. et al.,
740 So.2d 592 (Fla. App 5 Dist.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al.,
1 Fed.Appx 789 (10th Cir. 2001)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

LAW OFFICES

HARDY, LEWIS

& PAGE, P.C.

1 5 OLD WOODWARD AVE

SUITE 400

IRMINGHAM, MI 48009-6629

(248) 645 0800

Lord v. General Motors Corp.,
39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) . . . . . . . . . . . . . . . . . . . . 5

Mertens v. Hewitt Assoc.,
508 U.S. 248, 258-259, 113 S.Ct. 2063, 2069-2070 (1993) . . . . . . . . . . . . . . . . . . . . 19

Miles v. United States,
1999 WL 501000 (N.D.Tex.1999) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ogden v. Blue Bell Creameries, U.S.A., Inc.,
348 F.3d 1284 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pawlowske v. Chrysler Corp.,
623 F.Supp. 569 (N.D.Ill.1985), aff'd 799 F.2d 753 (7th Cir.1986) . . . . . . . . . . . . . . . 9

Perrino v. Southern Bell Telephone & Telegraph Co.,
209 F.3d 1309 (11th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

Pitchford v. General Motors Corp.,
248 F.Supp.2d 675 (W.D. Mich.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Purk v. United States,
747 F.Supp. 1243 (S.D.Ohio.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reyher v. Trans World Airlines, Inc,
881 F.Supp. 574 (M.D.Fla.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Roberson v. General Motors Corporation,
801 F.2d 176 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ryiz v. First Bankers, N.A.,
516 So.2d 1069 (Fla.App 4 Dist. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shanbaum v. United States
32 F.3d 180 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Ruff,
99 F.3d 1559 (11th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Varity Corporation v. Howe,
516 U.S. 489, 116 S.Ct. 1065 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Varity Corporation v. Howe,
516 U.S. 489, 116 S.Ct. 1065 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Weiler v. United States,
82 F.3d 424 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
)1 S OLD WOODWARD AVE
SUITE 400
RMINGHAM, MI 48009-6629
(248) 645-0800

## Statutes

Bankruptcy Code, 11 U.S.C. § 362 .................................................

ERISA, 29 U.S.C. §§ 1001, *et seq.* ........................................... 14, 15

ERISA, § 206, 29 U.S.C. § 1056. ............................................. 1, 2, 16

ERISA, § 206(d)(1), 29 U.S.C. § 1056(d)(1) .................................... 18

ERISA, § 206(d)(2), 29 U.S.C. § 1056(d)(2) .................................... 17

ERISA, § 502(a)(!)(B), 29 U.S.C. § 1132(a)(1)(B) .............................. 17

ERISA, § 503, 29 U.S.C. § 1133 ........................................... 5, 6, 19

I.R.C., 26 U.S.C. § 523 ....................................................... 11

I.R.C., 26 U.S.C. § 6332(a) ................................................... 16

I.R.C., 26 U.S.C. § 6332(d)(1) ................................................ 8

I.R.C., 26 U.S.C. § 6332(d)(2) ................................................ 9

I.R.C., 26 U.S.C. § 6332(e) ................................................... 9
                                                                            9

## Federal Regulations

26 C.F.R. § 1.401(a)-13(b)(2) ................................................. 8

26 C.F.R. §1.401(a)-13(c)(2)(iii) .............................................. 18

26 C.F.R. § 1.401(a)-13(c)(2)(iii) ............................................. 18

26 C.F.R. §301.6331-1(a) ..................................................... 8

26 C.F.R. §301.6332-1(c)(3) ................................................. 10

26 C.F.R. § 301.6871(a)-2(a) ................................................. 17

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
11 S  OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On February 12, 2008 Plaintiff Walter Lawrence ("Plaintiff") filed the instant Motion for Summary Judgment. Plaintiff's claims for summary judgment are premised on the following: (1) that Defendants General Motors and the General Motors Hourly-Rate Pension Plan ("Defendants") improperly alienated his pension in violation of the Employee Retirement Income Security Act of 1974, as amended, ERISA, 29 U.S.C. §§1001, *et seq.* by remitting pension benefits to the Internal Revenue Service ("IRS") after Defendants received a Notice of Tax Levy, and (2) that Defendants are not entitled to recover a $32,985.00 overpayment of pension benefits received by Plaintiff which resulted from Defendants' error. Although the claims administrator forwarded $32,985.00 to the IRS pursuant to the Levy, it failed to make the appropriate deduction from Plaintiff's pension benefits. Both of Plaintiff's claims are without merit. In fact, as explained herein, it is Defendants, not Plaintiff, who are entitled to summary judgment in this matter.

First, Plaintiff cannot recover from Defendants any monies they remitted to the IRS pursuant to the Notice of Levy. Upon receipt of the Levy, Defendants were obligated to abide by it and remit Plaintiff's pension benefits to the IRS to satisfy his tax liability. Once Defendants complied with the tax levy, they are immune from liability to Plaintiff for any monies remitted to the IRS. To the extent that Plaintiff contends the Notice of Levy contained a procedural deficiency, he should have pursued that issue with the IRS, not Defendants.

Plaintiff erroneously contends that Defendants should not have remitted his pension benefits to the IRS because a box on the Levy indicating that the levy applied to pension benefits was left unsigned. If Defendants had ignored the Levy, they would have been subject to substantial penalties. Moreover, Defendants do not have an obligation to contest any possible procedural deficiencies in the Notice of Levy. Regardless, a procedural defect in the Notice of Levy does not discharge the employer's obligation to honor an IRS levy. Even if the Plaintiff may have a defense premised upon

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
11 S OLD WOODWARD AVE.
SUITE 400
RMINGHAM, MI 48009-6629
(248) 645-0800

1

a procedural defect, such defect does not entitle him to sue Defendants for recovery of the pension benefits forwarded to the IRS.

Second, Defendants, not Plaintiff, are entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies under the GM Pension Plan with respect to the recovery of the $32,985.00 overpayment. Under ERISA, a claimant who fails to exhaust his administrative remedies prior to filing suit should have his case dismissed.

Here, the GM/UAW Supplemental Agreement Covering Pension Plan contains a detailed appeal procedure. This procedure specifies how (on the proper form) and to whom (Secretary, Pension Board of Administration) appeals for a denial of benefits must be submitted. Plaintiff did not exhaust his administrative remedies. At no time did Plaintiff ever submit an appeal on the proper form and forward it to the proper place. Rather, Plaintiff sent all his "appeals" to the Plan Administrator or the GM Benefits & Service Center, not to the Secretary, Pension Board of Administration. Therefore, Plaintiff's claims should be dismissed.

Plaintiff erroneously suggests that he did not have to follow the appeal procedure in the Supplemental Agreement Covering Pension Plan because it is only applicable to employees. Such an argument is without merit. Courts have previously dismissed other cases brought against General Motors because the retiree and/or other non-employee (surviving spouse of a retiree) had failed to exhaust the available appeal procedure in the Supplemental Agreement. The result should be no different in this case.

## COUNTER STATEMENT OF FACTS.

A.    The Events That Led to the Overpayment of Pension Benefits to Plaintiff in the Amount of $32,985

On October 9, 2007 Plaintiff filed the instant three count complaint against Defendants alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 USC §§1001, *et seq.* Plaintiff alleges that Defendants violated ERISA by remitting his pension benefits to the IRS and by reducing his pension by 50% to recover an overpayment of $32,985.00.

Plaintiff is a former General Motors hourly employee whose terms and conditions of employment were governed by the GM-UAW Collective Bargaining Agreements, and its supplements.

LAW OFFICES

HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009-6629

(248) 645-0800

2

Plaintiff retired from General Motors with benefits commencing on March 1, 1993. Upon his retirement Plaintiff began receiving a monthly pension benefit of $1,045.50 per month.

In 1999 GM received a notice from the Internal Revenue Service ("IRS") that Plaintiff had failed to pay his income taxes in 11 different years. Plaintiff's failure to pay his income taxes resulted in a tax liability and penalties of over $267,000.00 (Ex A). The IRS' notice included a levy against Plaintiff's pension benefits. Based on the levy, GM remitted Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's monthly benefit to $0.00.

In 2005 the Plan switched claims administrators from Electronic Data Systems Corporation ("EDS") to Fidelity Investments Institutional Operations Company, Inc., ("Fidelity"). In approximately January 2005, due to a mis-communication between EDS and Fidelity, Plaintiff's monthly pension benefit of $1,045.50 was restored. However, Fidelity continued to remit to the IRS $1,099.50 per month on behalf of Plaintiff to satisfy his tax liability, without concurrently reducing his pension. Fidelity continued to make these payments to the IRS without the concurrent deduction from Plaintiff's pension benefits until June 2007, when the error was discovered. In total, $32,985.00 was paid to the IRS, thus resulting in an overpayment to Plaintiff in that amount.

On May 14, 2007 the Fidelity / GM Benefits & Service Center advised Plaintiff of the overpayment and informed him of the steps to be taken to recover the overpayment. The Fidelity letter, copy attached as Exhibit B, stated:

> This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:
>
> - Benefits were not adjusted by the Tax Levy Amount of $1,099.50
> - Pension Overpayment
>
> * * * *
>
> Our records indicate you have received an overpayment of retirement benefits from 01/01/2005 through 06/01/07, a total of 30 months. The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund. (Ex B, 5/14/07 Letter).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
101 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645 0900

Effective July 1, 2007, Plaintiff's monthly pension benefit was reduced to $0.00 to recoup the overpayments. Id. Subsequently, on September 5, 2007 Plaintiff was informed that he would receive 50% of his pension until the overpayment was recouped. (Ex C, 9/5/07 Letter).

B.    Description of the Available Appeal Procedure Under the General Motors Hourly-Rate Employees Pension Plan

The GM/UAW Supplemental Agreement covering Pension Plan contains, at Appendix D, Section K, the appeal procedure available to participants to contest computation of their pension benefits or partial or complete suspension of their pension benefits:

1.    Any employee who disputes a determination with respect to such employee's...(iii) computation of pension benefits or supplements under the Pension Plan, (iv) partial or complete suspension of supplements...may file with the Center a written claim on form BA 1, "Employee Claim to Pension Committee". Such claim shall be filed within 60 days, including the 60th day, or receipt of such determination.

2.    In all cases where the employee has filed a claim on form BA 1, the Pension Committee shall review such claim with the employee, return one copy of form BA 1 to the employee with a written answer to the claim and, if the claim is rejected, the reasons therefor.

3.    If the employee is not satisfied with the answer, such employee may request the Pension Committee, in writing on form BA 1, to refer the case to the Board for decision. Such claim shall be filed with the Pension Committee within 60 days, including the 60th day, of the employee's receipt of such answer. The Pension Committee shall then forward form BA 1, with material pertinent to the case and the answer to the employee's claim, to the Board.

4.    If the Pension Committee should fail to agree upon the disposition of any application or authorization, or of any claim filed by an employee, the case shall be referred to the Board for determination on form BA 2, "Notice of Appeal to Board of Administration." A written signed statement setting forth all the facts and circumstances surrounding the case, and any material pertinent to the case, shall accompany the referral. Such statement may be submitted jointly by the members of the Pension Committee or separate signed statements may be submitted provided such statements are exchanged by the Pension Committee members prior to being submitted to the Board.

5.    All material with respect to cases referred to the Board shall be submitted in duplicate and shall be mailed to the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

6.    The Board shall advise the Pension Committee in writing of the disposition of any case referred to the Board by the Pension Committee. The Pension Committee shall forward a copy of such disposition to the employee.

7.    Forms BA 1 and BA 2 for each appeal must be requested from the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000. (Ex D at 117-118).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009-6629
—
(248) 645-0800

4

In the present case Plaintiff failed to utilize the above appeal procedure. He never submitted the designated form, or any other documents, to the Secretary of the Pension Board of Administration as required under the procedure. Instead, Plaintiff mailed letters to the Plan Administrator and the GM Benefits & Service Center on June 16, 2007 (45 pages), June 25, 2007 (55 pages) and July 11, 2007 (106 pages) (plus attachments) (*See* Pl. Exs I, J, K). When Plaintiff failed to receive a response to his liking, he filed the instant lawsuit.

## LAW AND ARGUMENT

I.    The Arbitrary and Capricious Standard of Review Applies to the Review of Determinations Made Under the GM Pension Plan

Plaintiff, In his Motion, erroneously suggests that the applicable standard of review for determinations made under the GM Pension Plan is *de novo* (Pl. Motion at 10). However, when a plan grants discretionary authority to the plan administrator, as in this case, the proper standard of review is arbitrary and capricious.

A.    Courts Have Determined The Arbitrary And Capricious Standard Is Applicable To Determinations Made Under the GM Pension Plan

The GM-UAW Supplemental Agreement Covering Pension Plan delegates to the Board of Administration the responsibility for considering appeals arising from a denial of benefits, such as in this case. The parties have collectively bargained that decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors:

(9)    There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union, its members, the employee or employees involved, and on the Corporation, subject only to the arbitrary and capricious standard of judicial review. (Ex D at 9-10).

Three decisions have considered the applicable standard of review for determinations made by the Board under the above procedures. In Lord v. General Motors Corp., 39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) the Court reviewed the decision of the Pension Board of Administration which denied a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Court explained:

Section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. The "arbitrary and capricious" standard of review applies when

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
RMINGHAM, MI 48009-6629
(248) 645-0800

5

a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies. Lord, slip opinion p. at 2 (citations omitted)

Similarly in <u>Roberson v. General Motors Corporation</u>, 801 F.2d 176 (6th Cir. 1986), the Court reviewed a section 502(a)(1)(B) claim for benefits arising from a decision under the GM Pension Plan. Again the Court explained that the standard of review was whether the determination was arbitrary and capricious:

> The district court properly concluded that the appropriate standard of review of the board's denial of disability pension benefits to appellant is whether such action was arbitrary or capricious. "The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith." <u>Id.</u> at 180 (citations omitted)

*See also* <u>Hawkins-Dunn v. General Motors Corp.</u>, 225 Fed.Appx. 358, 360 (6th Cir.2007) (Court found that the GM Pension Plan "gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious.")

In summary, the Court's review of determinations made by the Board of Administration under the GM Pension Plan are subject to the arbitrary and capricious standard. Further, Plaintiff cannot avoid the application of this standard merely because he failed to exhaust the available appeal procedure.

    B.    The Eleventh Circuit Has Adopted The Arbitrary And Capricious Review Standard When The Plan Is Granted Authority To Interpret The Plan's Terms

In <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), the United States Supreme Court defined the standard of review applicable to an administrator's decision to deny benefits under an ERISA-covered plan:

> [A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. <u>Id.</u> at 115.

The Court reasoned that general principles of trust law should govern the choice of the standard of

LAW OFFICES

HARDY, LEWIS
& PAGE, P.C.

01 S OLD WOODWARD AVE

SUITE 400

RMINGHAM, MI 48009-6629

(248) 645 0800

6

review. Because a trustee's discharging of his duties under a trust agreement is accorded deferential treatment only when the instrument grants the trustee discretion, the Court concluded that deference to an administrator's decision is appropriate when discretion is delegated to the decision maker. Id. at 108-15.

In Adams v. Thiokol Corporation, 231 F.3d 837 (11th Cir. 2000), the Court explained the application of Firestone:

> In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court discussed the appropriate standard of review in 29 U.S.C. § 1132(a)(1)(B) actions challenging a denial of benefits based on plan interpretations. A review under the arbitrary and capricious standard is appropriate where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Bruch, 489 U.S. at 115, 109 S.Ct. 948. However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " Id. (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). "[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary." Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556, 1565 (11th Cir.1990) (quoting Fulton Nat'l Bank v. Tate, 363 F.2d 562, 571 (5th Cir.1966) (underlined emphasis added, italicized emphasis in original)). Id. at 842.

Nevertheless, even under the heightened standard, the Court explained that when the issue involves interpretation of a plan provision, if the administrator's interpretation was correct, the inquiry ends:

> Under the heightened standard, we must first determine the legally correct interpretation of the disputed plan provision. Brown, 898 F.2d at 1570; Newell, 904 F.2d at 651. If the administrator's interpretation was legally correct, the inquiry ends. Collins v. American Cast Iron Pipe Co., 105 F.3d 1368, 1370 (11th Cir.1997). If the administrator's interpretation differs, we must then determine whether the administrator was arbitrary and capricious in employing a different interpretation. Brown, 898 F.2d at 1570; Newell, 904 F.2d at 651. Id. at 843. (emphasis added)

In Carnaghi v. Phoenix American Life Insurance Company, 238 F.Supp. 1373 (N.D.Ga. 2002), the Court, relying on Eleventh Circuit precedent, explained that in cases, such as this, dealing with the interpretation of a plan provision, if the administrator's interpretation is legally correct the inquiry ends:

> As the court explained in Jones [v. Champion International Corporation, Civil Action No. 00-CV-1186-JOF]:

> > Under the line of cases dealing with the legal interpretation of the plan, if the administrator's interpretation was legally correct, the inquiry ends because the

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
IRNINGHAM, MI 48009-6629
(248) 645-0800

7

conclusion would be the same under any of the three standards of review. *See, e.g.,* *Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000) (per curiam); *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997); *Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir.1995). <u>Id.</u> at 1376.

As explained above, in this case the Board of Administrators has the authority to interpret and apply the provisions of the General Motors Hourly-Rate Pension Plan. Thus, the question here is whether the determination of General Motors was arbitrary and capricious. Because that question will be answered based on a review of the administrative record, Plaintiff's Motion for Summary Judgment should be denied at this time.

     C.    Defendants' Decision To Remit Plaintiff's Pension To The IRS Was Not <u>Arbitrary And Capricious Because It Was Mandated By Law</u>

In 1999 General Motors Corporation received a Notice of Levy from the IRS regarding Plaintiff (Ex A). That Notice required Defendants to remit Plaintiff's pension benefits to the IRS in order to satisfy his substantial outstanding tax liability. As detailed above, GM has complied with the tax levy and remitted Plaintiff's pension benefits to the IRS.

On the tax levy a box appears which states:

This levy won't attach funds in IRAs, self-employed individuals' retirement accounts or any other retirement plans in your possession or control, unless it is signed in the block to the right. (Ex A).

Because this box was not signed, Plaintiff now erroneously claims in his motion that Defendants violated ERISA by alienating his pension benefits when it remitted them to the IRS. (Pl. Motion at 2). This argument is without merit.

First, upon receipt Defendants were obligated to comply with the IRS levy:

...<u>[A]ny person in possession of (or obligated with respect to) property or rights subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary,</u> except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process. Internal Revenue Code ("I.R.C."), <u>26 U.S.C. §6332(a)</u> (emphasis added).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
101 S. OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
—
(248) 645-0800

An IRS levy extends to property and rights to property which exist "at the time the levy is made," including a person's pension benefit. 26 C.F.R. § 301.6331-1(a); 26 C.F.R. § 1.401(a)-13(b)(2) (Provision providing for no assignment or alienation of benefits does not prevent enforcement of a Federal tax

levy).[1]

An employer who refuses to honor a federal tax levy is liable to the IRS for the value of the employee's wages (or pension benefit) not surrendered, together with costs and interest from the date of such levy. I.R.C., 26 U.S.C. §6332(d)(1). In addition, unless Defendants can show "reasonable cause" why the levy was not honored, it must pay the Government a penalty equal to 50% of the amount stated above. I.R.C., 26 U.S.C. §6332(d)(2). *See also* United States v. Ruff, 99 F.3d 1559, 1563 (11th Cir. 1996) ("Those individuals who fail to honor the Service's levy incur liability to the government equal to the full value of the property not surrendered.").

Second, Plaintiff cannot hold Defendants liable, or recover from them, the money remitted to the IRS for complying with the IRS levy. By complying with the IRS levy, any liability Defendants may have to Plaintiff is discharged:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or right to property arising from such surrender or payment. I.R.C., 26 U.S.C. §6332(e) (emphasis added).

In Lawler v. Suntrust Securities, Inc. et al., 740 So.2d 592 (Fla. App 5 Dist. 1999), a taxpayer brought suit against the bank who held her IRA account after the bank complied with a notice of levy and remitted $123,870.61 from her IRA to the IRS. Applying federal law, the court dismissed the plaintiff's claims and found the bank was immune from liability to the plaintiff:

> If a bank or trust company is in possession of an account or funds belonging to the taxpayer against whom the levy is sought, and if that property is not subject to a judicial attachment or execution, that entity must comply with the levy or face penalties. After compliance, the custodian is immune from liability to the taxpayer." Id. at 593 (emphasis added, citations omitted).[2]

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
101 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

---

[1] *See also* Shanbaum v. United States 32 F.3d 180, 183 (5th Cir. 1994)("Section 6334, which specifically exempts certain property from levy, does not exempt pension benefits from collection...[thus] Shanbaum's argument that the IRS levy authority yields to the later enacted non-alienation provision [of ERISA] is without merit."); Weiler v. United States, 82 F.3d 424 (9th Cir. 1996).

[2] *See also* Busby v. IRS, et al., 1997 WL 364507 (S.D Fla. 1997) (copy attached) ("The mere fact of compliance by Principal Mutual with the Notice of Levy filed by the IRS does not give rise to a claim upon which relief may be granted..."); Pawlowske v. Chrysler Corp., 623 F.Supp. 569, 570 (N.D Ill. 1985), *aff'd* 799 F.2d 753 (7th Cir. 1986) (Notice of levy by the

Third, Plaintiff claims that the IRS' Notice of Levy was deficient because the box on the form was not signed. He contends this box had to be signed in order for the levy to attach to his pension (Pl. Motion at 2). Contrary to Plaintiff's belief, a procedural defect in the Notice of Levy does not discharge the employer's obligation to honor an IRS levy. Purk v. United States, 747 F.Supp. 1243, 1249 (S.D.Ohio.1989). In other words, when Defendants received the Notice of Levy, they were obligated to turn over his pension benefits to the IRS. That Plaintiff may have a defense in the nature of a procedural defect in the levy does not entitle Plaintiff to sue Defendants. See Miles v. United States, 1999 WL 501000 (N.D.Tex.1999) (Plaintiff's suit to enjoin his employer from remitting his salary to the IRS dismissed despite plaintiff's claim that the levy suffered from procedural defects). If Plaintiff believed there was a problem with the Notice of Levy or that Defendants should not have remitted his pension benefits to the IRS, his proper course of action is to seek relief from the IRS or file suit against the Government:

> (3) *Remedy.* In situations described in paragraphs (c)(1) and (c)(2) of this section, taxpayers and third parties who have an interest in property surrendered in response to a levy may secure from the Internal Revenue Service the administrative relief provided for in section 6343(b) or may bring suit to recover the property under section 7426. 26 C.F.R. § 301.6332-1(c)(3).[3]

Fourth, even if any liability against Defendants was not discharged, the Defendants' decision to comply with the IRS levy and remit Plaintiff's pension benefits to the IRS cannot be overturned. By remitting Plaintiff's pension to the IRS, Defendants complied with the law and the Notice of Levy. Complying with the law can hardly be characterized as arbitrary and capricious conduct. Accordingly, Plaintiff's claims should be dismissed in their entirety.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
101 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

IRS on employee's salary was sufficient to require employer to pay the money demanded, so that employee had no right to recover anything from employer because of his compliance with the levy).

[3] *See also* Ryiz v. First Bankers, N.A., 516 So.2d 1069, 1071 (Fla.App 4 Dist. 1987) ("The appropriate remedy for one who believes he has been wrongly served with a Notice of Levy is to surrender the property and bring an action against the government.").

II.     Defendants Are Entitled To Summary Judgment Because Plaintiff Failed To Exhaust
        His Available Contractual Administrative Remedies

        A.     The appeal procedure contained in the GM Supplemental Agreement Covering
               Pension Plan is applicable to Plaintiff

In his Motion Plaintiff erroneously contends that he does not meet the definition of "employee" under the Supplemental Agreement Covering Pension Plan and therefore was not required to exhaust his administrative remedies prior to filing suit (Pl. Motion at 17-25). Such a claim has no merit and should be rejected.

Section 503 of ERISA, 29 U.S.C. § 1133, requires every employee benefit plan to include a procedure affording participants review of an adverse decision of a claim for benefits. The law is clear that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir.2006). This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself. Id. (citations omitted). Exhaustion of administrative remedies is a jurisdictional defense that when proven results in dismissal of the plaintiff's claims. Reyher v. Trans World Airlines, Inc, 881 F.Supp. 574, 576 (M.D.Fla.1995). The 11th Circuit strictly enforces the exhaustion requirement on ERISA claims with certain caveats reserved for exceptional circumstances. Perrino v. Southern Bell Telephone & Telegraph Co., 209 F.3d 1309, 1315 (11th Cir.2000).

As stated above, Plaintiff claims the appeal procedure in the Supplemental Agreement Covering Pension Plan does not apply to him because he is not an "employee." Contrary to his belief, courts have found that the appeal procedure contained in the Supplemental Agreement applies to retirees and even other non-employees despite those individuals not being specifically identified in the appeal procedure.[4]

Furthermore, an examination of the appeal procedure itself shows it is applicable to retirees.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
31 S. OLD WOODWARD AVE.
SUITE 400
RMINGHAM, MI 48009-6629
(248) 645-0800

_____

[4] See Pitchford v. General Motors Corp., 248 F.Supp.2d 675, 678 fn.1 (W.D. Mich.2003) (Even if former employee properly brought his claims under ERISA, such claims would have failed because he failed to exhaust his administrative remedies under Section K of Appendix D under the Plan); Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al., 1 Fed.Appx 789, 790 (10th Cir. 2001) (Retiree's claims dismissed because he failed to exhaust the administrative remedies available to him.); Duncan v. General Motors Corp., 2006 WL 375343 (W.D.Ark. 2006) (Surviving spouse who sought benefits had her case terminated to enable her to exhaust her administrative remedies under the Supplemental Agreement Covering Pension Plan).

Many of the appealable issues identified in the Supplemental Agreement are clearly issues which would only impact a retiree. These issues include: computation of pension benefits or supplements under the Pension Plan; partial or complete suspension of supplements; and credited service under the Pension Plan (Ex. D at 117). Despite his attempts to wriggle out from the appeal procedure in the Supplemental Agreement, the appeal procedure is applicable to Plaintiff and had to be exhausted before he filed this present action.

Plaintiff also claims that Defendants cannot rely upon the summary plan description ("SPD") to show he failed to exhaust his administrative remedies because the SPD was never integrated into the Plan (Pl. Motion at 24-25). However, the SPD also contains appeal procedure:

> If you do not agree with a GM decision that has been made with respect to (1) your age, (2) the amount of your credited service, or (3) the computation of your benefits, you may appeal this decision to your local pension committee. If (1) the local pension committee is unable to agree on your appeal, or (2) the committee agrees but you do not, your case may be referred to the GM-UAW Pension Board of Administration. If the Board members fail to agree, the Board may appoint an impartial chairman to resolve the dispute. The decision of the (1) Board, or (2) impartial chairman, will be binding on all parties. (Ex E).

Plaintiff's pension benefits are payable under the GM Pension Plan, incorporated within the Supplemental Agreement Covering Pension Plan, and he is subject to, and must utilize, the appeal procedure set forth at Section K of the Supplemental Agreement. Plaintiff should be in the same position as other GM retirees who have attempted to sue Defendants without exhausting their administrative remedies and hence, his claims should be dismissed.

> B.    Even if the Court Determines Defendants Failed to Comply with the Technical Requirements of ERISA, Summary Judgment is Still Warranted

Even if Plaintiff is correct, which he is not, and Defendants failed to comply with the technical requirements of ERISA by not delineating an appeal procedure, it still does not excuse Plaintiff's failure to exhaust his administrative remedies.

In <u>Perrino v. Southern Bell Telephone & Telegraph Co.</u>, *supra*, the plaintiffs attempted to claim they were excused from exhausting their administrative remedies because the defendants failed to comply with ERISA by providing a summary plan description or a formal claims procedure. The court soundly rejected this argument, holding that non-compliance with ERISA does not excuse a retiree's

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
101 S OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009 6629
(248) 645-0800

12

duty to exhaust his administrative remedies:

> We find Appellants' arguments unpersuasive. After reviewing the relevant federal regulations and our prior precedent, we decline to create an exception to the exhaustion requirement in this case.

> \* \* \* \*

> Our prior precedent makes clear that the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy. Perrino, 209 F.3d at 1316-1317.

The result should be no different in this case. Although Plaintiff sent multiple letters to GM's Service & Benefit Center and the Plan Administrator, apparently in an attempt to exhaust administrative remedies, he did not follow the proper procedure set forth in the Supplemental Agreement and in the Summary Plan Description. Thus, Plaintiff failed to exhaust his administrative remedies before filing suit and as explained below, his claims should be dismissed.

> C.    Plaintiff Failed to Exhaust his Administrative Remedies and Thus His Claims Should be Dismissed

In the present case, Plaintiff was a participant in the GM Pension Plan. That Plan is incorporated within the Supplemental Agreement covering Pension Plan. Both documents were collectively bargained between General Motors and the International Union, UAW. Appendix D of the Supplemental Agreement contains the detailed procedure for employees to contest decisions with which they disagree, including computation of pension benefits and/or partial or complete suspension of payments (See Section I(B); Ex. D at 117). By law Plaintiff had to exhaust this procedure before filing the instant suit. If not, his suit can be dismissed. See Section II(A), supra.

Plaintiff failed to exhaust his administrative remedies and his claims should be dismissed. The appeal procedure in the Supplemental Agreement Covering Pension Plan is very specific. All appeals must be submitted on the designated form and mailed to the Secretary, Pension Board of Administration (Ex. D at 118). Here, Plaintiff sent letters to the GM Benefits & Service Center and the Plan Administrator. That is not the proper procedure. Plaintiff was required to strictly comply with the appeal procedure contained in the GM/UAW Supplemental Agreement covering Pension Plan if he wished to challenge Defendants' decision to recover an overpayment by reducing his pension. Plaintiff's

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 5 OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009-6629
(248) 645 0800

failure to exhaust his administrative remedies should result in the dismissal of his claims.[5]

### III. Plaintiff's Remaining Arguments Are Insufficient To Warrant A Grant Of Summary Judgment In His Favor

In addition to the above, Plaintiff also alleges (1) that GM cannot recover its overpayment from his pension because the bankruptcy court exempted it from capture (Pl. Motion at 3-4) and (2) that GM violated the Supplemental Agreement Covering Pension Plan by recovering more than 10% of his pension benefits to satisfy the overpayment (Pl. Motion at 1, 6, 12, 13). Neither of these arguments have any merit and should be rejected.

### A. Defendants Had a Right to Recoup the Overpayment from Plaintiff's Pension Benefits.

Recovery of the overpayment of pension benefits is under the doctrine of recoupment and is not affected by the filing of a petition in bankruptcy. Further, the suspension of pension benefits in these circumstances is not subject to the automatic stay under section 362 (11 U.S.C. § 362).

In Brown v. General Motors Corporation, 152 B.R. 935 (W.D.Wisc.1993), the Court considered almost identical circumstances. Brown commenced an action in the state court seeking a declaration that General Motors was barred by plaintiff's bankruptcy discharge from recovering past benefit overpayments from his future pension benefits. The Court in Brown explained that the doctrine of recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff that arises under the same circumstances and cannot be discharged through bankruptcy:

Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction. In re Holford, 896 F.2d 176, 178 (5th Cir.1990). Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted. In re Rooster, Inc., 127 B.R. 560, 569 (Bankr.E.D.Pa.1991), 20 Am.Jur.2d Counterclaim, Recoupment, and Setoff, § 11 (1965).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S. OLD WOODWARD AVE
SUITE 400
RMINGHAM, MI 48009-6629
(248) 645-0800

[5] Pitchford v. General Motors Corp., 248 F.Supp.2d 675, 678 fn.1 (W.D. Mich.2003)(Even if former employee properly brought his claims under ERISA, such claims would have failed because he failed to exhaust his administrative remedies under Section K of Appendix D under the Plan); Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al., 1 Fed.Appx 789, 790 (10th Cir. 2001) (Retiree's claims dismissed because he failed to exhaust the administrative remedies available to him.); Duncan v. General Motors Corp., 2006 WL 375343 (W.D.Ark. 2006) (Surviving spouse who sought benefits had her case terminated to enable her to exhaust her administrative remedies under the Supplemental Agreement Covering Pension Plan).

14

Because of its unique nature as a limited equitable defense the right of recoupment does not constitute a claim within the meaning of 11 U.S.C. § 101(5) which defines a claim as follows:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment....

Since the right of recoupment carries with it no right to payment, it is not a claim. *See Mullen v. United States*, 696 F.2d 470, 472 (6th Cir.1983). It naturally follows that the potential assertion of recoupment against a claim by the debtor does not constitute a "debt" within the meaning of 11 U.S.C. § 101(12), which defines debt as "liability on a claim."

Since the right of recoupment is not a claim and its potential assertion is not a debt, the right is unaffected by a discharge in bankruptcy which operates as an injunction against actions to collect any *debt* discharged under § 727. 11 U.S.C. § 524(a)(2).

*    *    *    *

Since the right of recoupment likewise provides no basis for an independent claim against the assets of the debtor or the estate, the right to recover against future benefits is not discharged. *See Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *In re Hiler*, 99 B.R. 238, 243 (Bankr.D.N.J.1989). (emphasis added). *Id.* at 938.

After examining the provisions of the GM Pension Plan, the Court in <u>Brown</u> concluded that the Pension Plan had a right to recoupment that was unaffected by the plaintiff's bankruptcy. Id. at 939.

Similarly in <u>In Re Jones</u>, 289 B.R. 188 (Bankr.M.D.Fla. 2002), the Court considered whether the State Patrol was allowed to reduce future disability benefits payable to the debtor to recoup overpayments resulting from the receipt of other income that was properly deductible from disability benefits. The debtor filed a Motion to Impose Sanctions against the State Patrol. The Court first advised that if recoupment applied, the automatic stay of 11 U.S.C. § 362 is not applicable:

> It is well established that the automatic stay does not prohibit recoupment, as distinguished from setoff. This is of course, a correct statement of the law; however, it has no application whatsoever once a debtor receives a discharge, by virtue of 11 U.S.C. § 362(c)(2)(C). This section provides, in general, that a stay of any other act under subsection (a) of that section continues until the earliest of the time a discharge is granted. Thus, it is evident from the forgoing that cases dealing with recoupment, in a chapter 7 context for violations of the automatic stay, are of no significance to the facts of this case. Id. at 191.

The Court next held that the action of the State Patrol in reducing future benefits to recover an

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009-6629
(248) 645-0800

15

overpayment is a recoupment and not a set-off:

> It should be noted, at the outset, that the action of the State Patrol is clearly a recoupment and not a set-off. Next, while the discharge prohibits a setoff of any debt as to the personal liability of a debtor, Section 524(a)(2) of the Code does not prohibit a recoupment. Moreover, the term "debt" is defined by 11 U.S.C. § 101(12) as a liability of a claim, which in turn is defined by 11 U.S.C. § 101(5), to mean a "right to payment." Recoupment is a defensive mechanism, which does not seek affirmative relief but merely seeks to defeat or reduce the claim by the entity who seeks recoupment. Several courts have considered this exact issue in the context of discharged obligations. Id.

The Court in Jones, citing other precedent, concluded by holding that the actions of the State Patrol was a proper exercise of recoupment and denied the debtor's Motion to Impose Sanctions:

> Based upon the foregoing, under either analysis as set forth in Brown or Izaguirre, this Court is satisfied that the State Patrol is exercising a proper recoupment of its disability benefits, notwithstanding that the debt in the Final Judgment has been discharged. Regardless of whether or not the State Patrol obtained a judgment against the Debtor, the fact remains that the State Patrol has the ability to properly exercise its defense of recoupment to the future disability payments received by the Debtor with respect to the prior overpayments in benefits. Inasmuch as this Court finds that the recoupment is proper, it is not necessary for this Court to determine whether or not the State Patrol properly asserted a sovereign immunity defense.

> Accordingly, it is
> ORDERED, ADJUDGED AND DECREED that the Motion to Impose Sanctions for Violation of 11 U.S.C. § 524 (Doc. No. 17) be, and the same is hereby, denied. Id. at 193.

In summary, under the above rationale, Defendants, as Administrator of the GM Pension Plan, had a right to recoup the overpayment of pension benefits from Plaintiff, regardless of any prior order from the bankruptcy court. Such right of recoupment is not subject to any automatic stay and is not dischargeable. Thus, Plaintiff's claim that General Motors violated Bankruptcy laws by recouping the $32,985.00 overpayment has no merit and should be dismissed.

> B.    Likewise, Defendants Did Not Violate ERISA by Remitting his Pension Benefits to the IRS While Plaintiff was in Bankruptcy

Plaintiff's Motion appears to allege that Defendants also violated ERISA by remitting his pension benefits to the IRS after the bankruptcy court found his pension benefits exempt from capture by creditors (Pl. Motion at 3–4). Defendants did not violate ERISA, or any other law, by remitting his pension benefits to the IRS during, or after, Plaintiff's bankruptcy. A tax debt is not dischargeable during bankruptcy and can continue to be collected during that time. See 26 U.S.C. §523;    In re

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
01 S OLD WOODWARD AVE
SUITE 400
IRMINGHAM, MI 48009-6629
(248) 645-0800

16

<u>Chastang</u>, 116 B.R. 833, 834 (Bkrtcy.M.D.Fla.1990)(Debtor's federal income taxes for years in which he failed to file a return were non-dischargeable in bankruptcy).

Moreover, as Plaintiff points out, his pension benefits were exempt from the bankruptcy proceeding (Pl. Motion at 4). Hence, the pension benefits were not under control of the bankruptcy court and were subject to levy. 26 C.F.R. §301.6871(a)-2(a) ("...[G]enerally the assets of a taxpayer are under control of the court in which such [bankruptcy] proceeding is pending, and the collection of taxes cannot be made by levying upon such assets. However, any assets which under applicable provisions of law are not under the control of the court, may be subject to levy."). Accordingly, Plaintiff's claims should be dismissed.

      C.     Defendants Were Not Limited to Only Recouping 10% of Plaintiff's Pension Benefits to Satisfy the Overpayment

Plaintiff erroneously suggests that Defendants could not reduce his pension benefits to recover the $32,985.00 overpayment unless he gave them written authorization to do so. Even with written authorization, Plaintiff erroneously claims Defendants could recoup no more than 10% from his pension benefits each week. He claims that these actions alienate his pension benefits and violate the GM Pension Plan. Plaintiff's interpretation of Article 7, Section 3 of the GM Pension Plan is incorrect. Defendants are not limited to reducing his pension by only 10% when recouping an overpayment and do not alienate his pension when doing so.

As required under section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), the GM Pension Plan contains a provision prohibiting the assignment or alienation of pension benefits (Ex. D at 67-68). Consistent with ERISA, section 206(d)(2), the Plan does allow a revocable assignment not to exceed 10% of any benefit payment. However, Plaintiff misinterprets this section as it is applicable to situations where the participant has received an overpayment from another GM benefit plan and has authorized a deduction from his monthly pension benefit to repay such overpayment (e.g. Extended Disability Benefits under the General Motors Life and Disability Benefits Program):

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
11 S. OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

The pension fund shall not in any manner be liable for or subject to the debts or liabilities of any employee, separated employee, retired employee, pensioner or surviving spouse. No right, benefit, pension or supplement at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrances of any kind except in accord with provisions of a Qualified Domestic Relations Order

within the meaning of IRC, Section 414(p). If any person shall attempt to, or shall alienate, sell, transfer, assign, pledge or otherwise encumber accrued rights, benefits, pension or supplements under the Plan or any part thereof, or if by reason of bankruptcy or other event happening at any time such benefits would otherwise be received or enjoyed by anyone else, the Corporation may terminate the interest of such employee, pensioner or surviving spouse in any such benefit and instruct the trustee to hold or apply it to or for the benefit of such employee, pensioner or surviving spouse, spouse, children, or other dependents, or any of them as the Corporation may instruct; provided, however, that any pensioner, or surviving spouse, entitled to a monthly benefit under the Plan:

\* \* \* \*

(c)    may have amounts of not less than $80.00, but in no event more than 10% of the retired employee's monthly pension, withheld to repay any outstanding overpayment owing to any benefit plan of the Corporation, pursuant to written authorization and direction acceptable to the Corporation. (Ex. D at 68)(emphasis added)[6].

Here, Defendants reduced Plaintiff's pension benefit to recoup an overpayment from the Pension Plan itself, not another General Motors benefit plan. This present situation is akin to an employee who is receiving a social security disability award that results in a pension benefit overpayment. In those cases, General Motors also reduces the pensioner's benefit by 50%, just as it did in this case:

If the pensioner received an overpayment of benefits because of a receipt of a retroactive Social Security Disability Insurance Benefit award and the amount of overpayment is not promptly repaid in a lump sum, a deduction shall be made from future monthly benefits equal to 50% of the total amount of such monthly benefits until the total amount of suspended equals the overpayment. (Ex D at 112).

Furthermore, the Treasury Regulations do not consider the recoupment of an overpayment to be as assignment or alienation of a person's pension benefit and expressly permit a benefit plan to withhold benefits to compensate for prior overpayments.

(2) Specific arrangements not considered an assignment or alienation. The terms "assignment" or "alienation" do not include...the following arrangements:

\* \* \* \*

(iii) Any arrangement for the recovery by the plan of overpayments of benefits previously made to a participant. 26 C.F.R. §1.401(a)-13(c)(2)(iii).

See also Coar v. Kazimir, 990 F.2d 1413, 1422 (3rd Cir.1993) (Noting that clause 13(c)(2)(iii) excludes from the anti-alienation restrictions an action by a benefits plan to offset overpayments against benefits.)

Therefore, in this case a recoupment is authorized by the Treasury Regulations. GM was not limited

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
11 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

---

[6] This section closely tracks the language of 29 U.S.C. §1056.

18

ERISA-covered plan, he cannot maintain a claim for breach of fiduciary duty under § 502(a)(3) providing for "other appropriate equitable relief." Thus, Plaintiff's claim for breach of fiduciary duty has no merit and should be dismissed.

## CONCLUSION

Plaintiff's Motion for Summary Judgment should be denied. He is unable to establish that Defendants are liable for reducing his pension benefits to recoup an overpayment. Further, Plaintiff cannot show that any other action taken by Defendants violated either the Supplemental Agreement Covering Pension Plan, ERISA, or any other law.

In fact, it is Defendants who are entitled to summary judgment. The statutes, regulations and case law all discharge any liability Defendants may have to Plaintiff for monies they remitted to the IRS from his pension benefits pursuant to a Notice of Levy. Also, Plaintiff's claims should fail because he failed to exhaust his administrative remedies under the Supplemental Agreement. Plaintiff did not follow the appeal procedure. He neither submitted his appeal on the designated form nor did he send his "appeal" to the Secretary, Pension Board of Administration as required by the appeal procedure.

Accordingly, Plaintiff's claims should be dismissed in their entirety and Defendants should be awarded any and all applicable costs, sanctions and attorney fees for having to defend this action.

Respectfully submitted,

/s/Mark D. Filak
David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800
E-mail: mdf@hardylewis.com

Dated: March 7, 2008
00204804.WPD

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
31 S  OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

vs.

                                      Case No. 5:07-CV-408 OC

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

                                      Hon. William Terrell Hodges
                                  Magistrate Judge Gary R. Jones

---

Walter J. Lawrence, In Pro Per
3101 SW 34th Avenue, # 905
Ocala, Florida 34474

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800

Cynthia L. May (0029297)
Co-Counsel for Defendants
Greenberg Traurig, P.A.
625 E. Twiggs Street, Ste. 100
Tampa, FL 33602
Telephone: (813) 318-5700

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant: Walter J. Lawrence, #162, 3101 S.W. 34th Avenue, #90 Ocala, FL 34474.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

                                      /s/Mark D. Filak
                                    Mark D. Filak (MI Bar No. P61633)
                                    Attorney for Defendants
                                    Hardy, Lewis & Page, P.C.
                                    401 South Old Woodward Avenue, Ste. 400
Dated: March 7, 2008                        Birmingham, Michigan 48009
                                    Telephone: (248) 645-0800
                                    E-mail: mdf@hardylewis.com

*nom, Hod*
*3-17-2008*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

vs.

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

Case No. 5:07-CV-408 OC

Hon. William Terrell Hodges
Magistrate Judge Gary R. Jones

---

Walter J. Lawrence, In Pro Per
3101 SW 34th Avenue, # 905
Ocala, Florida 34474

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800

Cynthia L. May (0029297)
Co-Counsel for Defendants
Greenberg Taurig, P.A.
625 E. Twiggs Street, Ste. 100
Tampa, FL 33602
Telephone: (813) 318-5700

---

## DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

    Defendants General Motors Corporation and the General Motors Hourly-Rate Pension Plan

(hereinafter "Defendants") through its attorneys, Hardy, Lewis & Page, P.C., state as follows for its

Answer to Plaintiff's Amended Complaint:

    1.    In response to Paragraph One of Plaintiff's Amended Complaint, Defendants neither

admit nor deny the allegations contained therein for the reason that said allegations do not contain

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

5

any factual allegations but merely summarize the content of the Amended Complaint and therefore no answer is required.

2.    In response to Paragraph Two of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff is a participant in the GM Pension Plan by virtue of his prior employment with General Motors Corporation. With respect to any and all remaining allegations contained in Paragraph Two, Defendants deny said allegations as untrue.

3.    In response to Paragraph Three of Plaintiff's Amended Complaint, upon information and belief Defendants admit the allegations contained therein.

4.    In response to Paragraph Four of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff is entitled to pension benefit under the GM Pension Plan based on his prior service of 30.0 credited years of service with General Motors. Further, Defendants admit that Plaintiff retired with pension benefits commencing on March 1, 1993. With respect to any and all remaining allegations contained in Paragraph Four, Defendants deny said allegations as untrue.

5.    In response to Paragraph Five of Plaintiff's Amended Complaint, Defendants admit the allegations contained therein.

6.    In response to Paragraph Six of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required. Further, Defendants deny that they have violated any provision of the Employee Retirement Security Act of 1974, as amended, ERISA, 29 USC 1001 et seq., or that Plaintiff is entitled to any damages based on the conduct of Defendants.

## II. VENUE

7.    In response to Paragraph Seven of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

a conclusion of law and therefore no answer is required. Nevertheless, if a response is required, Defendants contend that a more convenient venue for this action is the United States Federal District Court, Eastern District of Michigan, Southern Division.

8.    In response to Paragraph Eight of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required. Nevertheless, if a response is required, Defendants contend that a more convenient venue for this action is the United States Federal District Court, Eastern District of Michigan, Southern Division.

## III. JURISDICTION

9.    In response to Paragraph Nine of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required. Nevertheless, if a response is required, Defendants admit that section 502(e)(1) of ERISA, 29 USC 1132(e)(1) confers jurisdiction on the federal district courts.

## IV. FACTUAL ALLEGATIONS

10.    In response to Paragraph Ten of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

11.    In response to Paragraph Eleven of Plaintiff's Amended Complaint, Defendants admits the allegations contained therein.

12.    In response to Paragraph Twelve of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff has forwarded documents to the General Motors Benefits & Service Center, Cincinnati, Ohio and has received responses. Defendants deny the allegation that Plaintiff has exhausted his administrative remedies as untrue. With respect to any and all remaining allegations

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

-3-

contained in Paragraph Twelve, Defendants deny said allegations as untrue.

13.     In response to Paragraph Thirteen of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

14.     In response to Paragraph Fourteen of Plaintiff's Amended Complaint, Defendants admit only that Plaintiff retired under the GM Pension Plan and commenced receiving pension payments effective March 1, 1993. With respect to any and all remaining allegations contained in Paragraph Fourteen, Defendants deny said allegations as untrue.

15.     In response to Paragraph Fifteen of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

16.     In response to Paragraph Sixteen of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

17.     In response to Paragraph Seventeen of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that the GM-UAW Supplemental Agreement Covering Pension Plan speaks for itself. Further, Defendants state that tax levies asserted against pension plan benefits supersede any non-alienation provisions set forth in pension plans.

18.     Omitted.

19.     Omitted.

20.     In response to Paragraph Twenty of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that Plaintiff's Amended Complaint does not contain the full text of said Paragraph. Hence, Defendants are not in possession of the knowledge or information sufficient to form a belief as to the truth of the specific allegations and therefore leaves Plaintiff to his proofs.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

-4-

21.    In response to Paragraph Twenty-One of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

22.    In response to Paragraph Twenty-Two of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

23.    In response to Paragraph Twenty-Three of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced documents speak for themselves.

24.    In response to Paragraph Twenty-Four of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced documents speak for themselves.

25.    In response to Paragraph Twenty-Five of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced documents speak for themselves.

26.    In response to Paragraph Twenty-Six of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced documents speak for themselves.

27.    In response to Paragraph Twenty-Seven of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein with respect to the language of Article X, Section 11(a) of the GM-UAW Supplemental Agreement Covering Pension Plan for the reason that the document speaks for itself. With respect to any and all remaining allegations contained in Paragraph Twenty-Seven, Defendants deny said allegations as untrue.

28.    In response to Paragraph -Eight of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced section of the GM-UAW

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

-5-

Supplemental Agreement Covering Pension Plan speaks for itself.

29.     In response to Paragraph Twenty-Nine of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that is without sufficient information or belief to form a belief as to the truth thereof and therefore, leaves Plaintiff to his proofs. Nevertheless, if a response is required, Defendants deny said allegations because a signed authorization is not needed to recoup an overpayment of pension benefits.

30.     In response to Paragraph Thirty of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced document speaks for itself.

31.     In response to Paragraph Thirty-One of Plaintiff's Amended Complaint, Defendants admit only that they complied with a levy received from the IRS in 1999 by remitting Plaintiff's pension benefit to the IRS to satisfy his outstanding tax liability. With respect to any and all remaining allegations contained in Paragraph Thirty-One, Defendants deny said allegations for the reason that the referenced document speaks for itself.

32.     In response to Paragraph Thirty-Two of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

33.     In response to Paragraph Thirty-Three of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced section of the GM-UAW Supplemental Agreement Covering Pension Plan speaks for itself.

34.     In response to Paragraph Thirty-Four of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein with respect to the allegation pertaining to the GM-UAW Supplemental Agreement Covering Pension Plan for the reason that the referenced document speaks for itself. With respect to any and all remaining allegations contained in Paragraph Thirty-Four, Defendant neither admits nor denies said allegations because they call for a legal conclusion and

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

therefore no answer is required.

35.     In response to Paragraph Thirty-Five of Plaintiff's Amended Complaint, Defendant admits only that Plaintiff is not currently employed by General Motors Corporation.

36.     In response to Paragraph Thirty-Six of Plaintiff's Amended Complaint, upon information and belief Defendants admit the allegations contained therein.

37.     In response to Paragraph Thirty-Seven of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that they are without sufficient knowledge or information to form a belief as to the truth thereof and therefor leaves Plaintiff to his proofs.  Further, Defendant states that Plaintiff failed to exhaust his administrative remedies under the appeal procedures contained within the GM-UAW Supplemental Agreement Covering Pension Plan.

38.     In response to Paragraph Thirty-Eight of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced document speaks for itself.

39.     In response to Paragraph Thirty-Nine of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced document speaks for itself.

40.     In response to Paragraph Forty of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced document speaks for itself.  With respect to any and all remaining allegations contained in Paragraph Forty, Defendants neither admit nor deny the allegations contained therein for the reason that they are without sufficient knowledge or information to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.

41.     In response to Paragraph Forty-One of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that the referenced section of the GM-UAW Supplemental Agreement Covering Pension Plan speaks for itself.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

-7-

42.    In response to Paragraph Forty-Two of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

43.    In response to Paragraph Forty-Three of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

## V. CAUSES OF ACTION

### Count I - Wrongful Denial of Benefits Under ERISA, 29 USC 1056, 1132

44.    In response to Paragraph Forty-Four of Plaintiff's Amended Complaint, Defendants incorporate and re-allege each and every answer stated in response to Paragraphs One through Forty-Three as if fully stated and set forth herein.

45.    In response to Paragraph Forty-Five of Plaintiff's Amended Complaint, including subparts (a) through (d), Defendants deny the allegations contained therein for the reason that said allegations are untrue.

46.    In response to Paragraph Forty-Six of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

47.    In response to Paragraph Forty-Seven of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

48.    In response to Paragraph Forty-Eight of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

49.    In response to Paragraph Forty-Nine of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

50.    In response to Paragraph Fifty of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

51.    In response to Paragraph Fifty-One of Plaintiff's Amended Complaint, Defendants admit only that the GM Pension Plan is a qualified plan under section 401(a) of the Internal Revenue Code, 26 USC 401(a).  With respect to any and all remaining allegations contained in Paragraph Fifty-One, Defendant deny said allegations as untrue.

WHEREFORE, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed with prejudice; that Plaintiff take nothing by the filing of his Amended Complaint; that Defendants be allowed to recover their costs, including attorney fees, incurred in defending this action; and for further and other relief as the Court deems appropriate.

## Count II - Breach of Fiduciary Duties Under ERISA 29 USC 1132

52.    In response to Paragraph Fifty-Two of Plaintiff's Amended Complaint, Defendants incorporate and re-allege each and every answer stated in response to Paragraphs One through Fifty-One as if fully stated and set forth herein.

53.    In response to Paragraph Fifty-Three of Plaintiff's Amended Complaint, including subparts (a) through (d), Defendants deny the allegations contained therein for the reason that said allegations are untrue.

54.    In response to Paragraph Fifty-Four of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

55.    In response to Paragraph Fifty-Five of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

-9-

56.     In response to Paragraph Fifty-Six of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

57.     In response to Paragraph Fifty-Seven of Plaintiff's Amended Complaint, Defendants admit that General Motors is the Administrator of the GM Pension Plan and that it has authority to construe and interpret plan provisions and make determinations regarding benefit eligibility and as such is a fiduciary with respect to the GM Pension Plan. With respect to any and all remaining allegations contained in Paragraph Fifty-Seven, Defendants deny said allegations as untrue.

58.     In response to Paragraph Fifty-Eight of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that they are without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.

59.     In response to Paragraph Fifty-Nine of Plaintiff's Amended Complaint, and all its subparts, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

60.     In response to Paragraph Sixty of Plaintiff's Amended Complaint, Defendants deny the allegations contained therein for the reason that said allegations are untrue.

WHEREFORE, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed with prejudice; that Plaintiff take nothing by the filing of his Amended Complaint; that Defendants be allowed to recover their costs, including attorney fees, incurred in defending this action; and for further and other relief as the Court deems appropriate.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

## Count III - Liquidated Damages Claim under ERISA 29 USC 1132

61.     In response to Paragraph Sixty-One of Plaintiff's Amended Complaint, Defendants

-10-

repeat and re-allege each and every answer stated in response to Paragraphs One through Sixty as if fully stated and set forth herein.

62.      In response to Paragraph Sixty-Two of Plaintiff's Amended Complaint, Defendants refer specifically to Plaintiff's letter dated June 25, 2007, and further aver that the letter was improperly addressed such that it was not sent to the Plan Administrator at its proper address and further that Plaintiff has not followed the correct procedure to contest the determination regarding the recovery of pension overpayments. Except as so averred, the allegations of Paragraph Sixty-Two of the Complaint are denied and Plaintiff is left to his proofs.

63.      In response to Paragraph Sixty-Three of Plaintiff's Amended Complaint, Defendants refer specifically to Plaintiff's letter dated July 10, 2007, and further aver that the letter was improperly addressed such that it was not sent to the Plan Administrator at its proper address and further that Plaintiff has not followed the correct procedure to contest the determination regarding the recovery of pension overpayments. Except as so averred, the allegations of Paragraph Sixty-Three of the Complaint are denied and Plaintiff is left to his proofs.

64.      In response to Paragraph Sixty-Four of Plaintiff's Amended Complaint, Defendants admit that to the extent Plaintiff did not receive requested Pension Plan documents, he failed to make a proper request and send such request to the proper address. Except as so admitted, the allegations of Paragraph Sixty-Four of the Complaint are denied and Plaintiff is left to his proofs.

65.      In response to Paragraph Sixty-Five of Plaintiff's Amended Complaint, Defendants neither admit nor deny the allegations contained therein for the reason that said allegations constitute a conclusion of law and therefore no answer is required.

66.      In response to Paragraph Sixty-Six of Plaintiff's Amended Complaint, Defendant denies the allegations contained therein for the reason that said allegations are untrue.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

-11-

67.    In response to Paragraph Sixty-Seven of Plaintiff's Amended Complaint, Defendant denies the allegations contained therein for the reason that said allegations are untrue.

WHEREFORE, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice; that Plaintiff take nothing by the filing of his Complaint; that Defendants be allowed to recover their costs, including attorney fees, incurred in defending this action; and for further and other relief as the Court deems appropriate.

### AFFIRMATIVE DEFENSES

1.    Plaintiff has failed to state a claim.

2.    Plaintiff has failed to state a claim upon which relief can be granted.

3.    Plaintiff cannot maintain his claims because he has failed to fully exhaust administrative appeals available under the Supplemental Agreement Covering Pension Plan.

4.    Plaintiff cannot maintain his claim for pension benefits under the GM Pension Plan because the recovery of pension benefit overpayments is authorized under the Plan, was made in good faith, and was neither arbitrary nor capricious.

5.    Defendants have discharged their duties under the GM Pension Plan, in the interest of such Plan, participants and their beneficiaries, and, in doing so, Defendants have acted in accordance with the documents and instruments governing the GM Pension Plan as well as applicable law.

6.    Defendants have fully performed their contractual duties under the GM Pension Plan, as well as other duties, if any, owed to the Plaintiff, and Plaintiff is estopped from asserting any cause of action against Defendants.

7.    Plaintiff's claim for damages beyond the benefits available under the GM Pension Plan cannot be maintained under ERISA.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629
—————
(248) 645-0800

-12-

8.    Plaintiff has no entitlement to a trial by jury.

9.    Defendants are no liable to Plaintiff for any damages as a result of complying with and IRS Levy.

10.    Defendants have a right of recoupment of any pension benefit overpayment received by Plaintiff.

11.    Defendants reserve the right to add additional affirmative defenses as may be ascertained during the defense of this action.

Respectfully submitted,

David M. Davis
Mark D. Filak
Attorneys for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
E-mail: mdf@hardylewis.com

Date: March 17, 2008

00205220.WPD

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

-13-

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

                                      Case No. 5:07-CV-408 OC

vs.

                                      Hon. William Terrell Hodges

GENERAL MOTORS HOURLY-RATE        Magistrate Judge Gary R. Jones
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

---

Walter J. Lawrence, In Pro Per          David M. Davis (MI Bar No. P24006)
3101 SW 34th Avenue, # 905            Mark D. Filak (MI Bar No. P61633)
Ocala, Florida 34474                   Attorney for Defendants
                                      Hardy, Lewis & Page, P.C.
                                      401 South Old Woodward Avenue, Ste. 400
                                      Birmingham, Michigan 48009
                                      Telephone: (248) 645-0800

                                      Cynthia L. May (0029297)
                                      Co-Counsel for Defendants
                                      Greenberg Taurig, P.A.
                                      625 E. Twiggs Street, Ste. 100
                                      Tampa, FL 33602
                                      Telephone: (813) 318-5700

---

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on March 17, 2008, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail to the following non-CM/ECF

participant: Walter J. Lawrence, #162, 3101 S.W. 34th Avenue, #90 Ocala, FL 34474.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S. OLD WOODWARD AVE.
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

                                         /s/Mark D. Filak
                                        Mark D. Filak (MI Bar No. P61633)
                                        Attorney for Defendants
                                        Hardy, Lewis & Page, P.C.
                                        401 South Old Woodward Avenue, Ste. 400
                                        Birmingham, Michigan 48009
                                        Telephone: (248) 645-0800
Dated: March 17, 2008                              E-mail: mdf@hardylewis.com

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

vs.

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

Case No. 5:07-CV-408 OC

Hon. William Terrell Hodges
Magistrate Judge Gary R. Jones

---

Walter J. Lawrence, In Pro Per
3101 SW 34th Avenue, # 905
Ocala, Florida 34474

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800

Cynthia L. May (0029297)
Co-Counsel for Defendants
Greenberg Taurig, P.A.
625 E. Twiggs Street, Ste. 100
Tampa, FL 33602
Telephone: (813) 318-5700

---

## DEFENDANTS' ANSWER AND BRIEF IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT RE: AMENDED COMPLAINT

INTRODUCTION

        Plaintiff, Walter Lawrence, filed his original Complaint in this matter on October 9, 2007,

alleging that Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C.

§§ 1001 et seq. by reducing his pension benefits following payment by General Motors Corporation

of an outstanding IRS tax levy incurred by Plaintiff.

        Defendants filed their Answer and Affirmative Defenses thereto on November 16, 2007. In

Affirmative Defense No. 3, Defendants asserted that "Plaintiff cannot maintain his claims because

6

he has failed to fully exhaust administrative appeals available under the Supplemental Agreement Covering Pension Plan."

On February 12, 2008, Plaintiff filed his initial Motion for Summary Judgment. Shortly thereafter, on February 29, 2008, Plaintiff filed an Amended Complaint. The amendments included a substantial number of additional factual allegations, but the legal causes of action asserted in the Amended Complaint are essentially the same as in the original Complaint, with the exception of additional claims in Count II of the Amended Complaint wherein Plaintiff contends that he was denied adequate notice of and opportunity to respond to the denial of his pension benefit claims and a "full and fair review"(Amended Complaint, Paras. 58-60).

On March 7, 2008, Defendants filed a Response in Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment (hereafter, Defs' Cross-Motion for Summary Judgment). Both Plaintiff's initial Motion for Summary Judgment and Defendants' Cross-Motion remain pending for decision by the Court.

On March 17, 2008, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint. Again, in Affirmative Defense No. 3, Defendants asserted that "Plaintiff cannot maintain his claims because he has failed to fully exhaust administrative appeals available under the Supplemental Agreement Covering Pension Plan."

Now, on April 28, 2008, Plaintiff has filed yet another Motion for Summary Judgment regarding his Amended Complaint. Defendants respond to this latest Motion as follows:

STATEMENT OF FACTS

A.    The Events That Led to the Overpayment of Pension Benefits to Plaintiff in the Amount of $32,985

The complete, relevant facts have already been presented to the Court in Defendants' initial Brief in Opposition to Plaintiff's first Motion for Summary Judgment and Cross-Motion for Summary Judgment. Therefore, a condensed version of the facts follows simply to refresh the Court's recollection of this case.

- 2 -

Plaintiff is a former General Motors hourly employee whose terms and conditions of employment were governed by the GM-UAW Collective Bargaining Agreements, and its Supplemental Agreements. Plaintiff retired from General Motors with benefits commencing on March 1, 1993. Upon his retirement Plaintiff began receiving a monthly pension benefit of $1,045.50 per month.

In 1999 GM received a notice from the Internal Revenue Service ("IRS") that Plaintiff had failed to pay his income taxes in 11 different years. Plaintiff's failure to pay his income taxes resulted in a tax liability and penalties of over $267,000.00 (Defs.'Cross-Motion for Summary Judgment, Ex A). The IRS' notice included a levy against Plaintiff's pension benefits. Based on the levy, GM remitted Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's monthly benefit to $0.00.

In 2005 the Plan switched claims administrators from Electronic Data Systems Corporation ("EDS") to Fidelity Investments Institutional Operations Company, Inc., ("Fidelity"). In approximately January 2005, due to a mis-communication between EDS and Fidelity, Plaintiff's monthly pension benefit of $1,045.50 was restored. However, Fidelity continued to remit to the IRS $1,099.50 per month on behalf of Plaintiff to satisfy his tax liability, without concurrently reducing his pension. Fidelity continued to make these payments to the IRS without the concurrent deduction from Plaintiff's pension benefits until June 2007, when the error was discovered. In total, $32,985.00 was paid to the IRS, thus resulting in an overpayment to Plaintiff in that amount.

On May 14, 2007 the Fidelity / GM Benefits & Service Center advised Plaintiff of the overpayment and informed him of the steps to be taken to recover the overpayment. (Defs.' Cross-Motion for Summary Judgment, Ex B.)

Effective July 1, 2007, Plaintiff's monthly pension benefit was reduced to $0.00 to recoup the overpayments. Id. Subsequently, on September 5, 2007, Plaintiff was informed that he would

receive 50% of his pension until the overpayment was recouped. (Defs.' Cross-Motion for Summary

Judgment, Ex C).

B.    Description of the Available Appeal Procedure Under the General Motors Hourly-
Rate Employees Pension Plan

The GM/UAW Supplemental Agreement Covering Pension Plan contains, at Appendix D,

Section K, the appeal procedure available to participants to contest computation of their pension

benefits or partial or complete suspension of their pension benefits:

1.    Any employee who disputes a determination with respect to such employee's...(iii) computation of pension benefits or supplements under the Pension Plan, (iv) partial or complete suspension of supplements...may file with the Center a written claim on form BA 1, "Employee Claim to Pension Committee". Such claim shall be filed within 60 days, including the 60th day, or receipt of such determination.

2.    In all cases where the employee has filed a claim on form BA 1, the Pension Committee shall review such claim with the employee, return one copy of form BA 1 to the employee with a written answer to the claim and, if the claim is rejected, the reasons therefor.

3.    If the employee is not satisfied with the answer, such employee may request the Pension Committee, in writing on form BA 1, to refer the case to the Board for decision. Such claim shall be filed with the Pension Committee within 60 days, including the 60th day, of the employee's receipt of such answer. The Pension Committee shall then forward form BA 1, with material pertinent to the case and the answer to the employee's claim, to the Board.

4.    If the Pension Committee should fail to agree upon the disposition of any application or authorization, or of any claim filed by an employee, the case shall be referred to the Board for determination on form BA 2, "Notice of Appeal to Board of Administration." A written signed statement setting forth all the facts and circumstances surrounding the case, and any material pertinent to the case, shall accompany the referral. Such statement may be submitted jointly by the members of the Pension Committee or separate signed statements may be submitted provided such statements are exchanged by the Pension Committee members prior to being submitted to the Board.

5.    All material with respect to cases referred to the Board shall be submitted in duplicate and shall be mailed to the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

6.    The Board shall advise the Pension Committee in writing of the disposition of any case referred to the Board by the Pension Committee. The Pension Committee shall forward a copy of such disposition to the employee.

7.    Forms BA 1 and BA 2 for each appeal must be requested from the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

Defs.' Cross-Motion for Summary Judgment, Ex D at pp. 117-118.

In the present case, Plaintiff failed to utilize the above appeal procedure. He never submitted the designated form, or any other documents, to the Secretary of the Pension Board of Administration as required under the procedure.    Instead, Plaintiff mailed letters to the Plan Administrator and the GM Benefits & Service Center on June 16, 2007 (45 pages), June 25, 2007 (55 pages) and July 11, 2007 (106 pages) (plus attachments) (*See* Pls' Rule # 11 Motion for Sanctions, Exs I, J, K).

## LEGAL ARGUMENT

In his present Motion, which is extremely repetitive in its unfounded factual and legal allegations, and, to the extent Defendants comprehend his convoluted claims, Plaintiff now takes the position that he had no obligation to exhaust his administrative remedies because 1) Defendants had no procedures in place pursuant to which he could pursue his benefit claim; 2) the parties never entered into a "written authorization" which permitted Defendants to "alienate" Plaintiff's pension benefits; and 3) Defendants allegedly never responded to Plaintiff's "administrative claims of appeal" on three alleged occasions.    Because of these alleged violations of ERISA, Plaintiff maintains that he should be "deemed" to have exhausted his administrative remedies such that his civil lawsuit may be maintained.    In fact, Plaintiff asserts that "deemed exhausted" is the *standard of review* that should be applied in this case.    (Pl's Motion, p. 2)

I.    Defendants Had Clear and Specific Procedures Pursuant to Which Benefit Claims Could Be Appealed

In the present case, Plaintiff asserts that "defendants' [sic] failed to have any procedures through which plaintiff could have pursued his benefit claim." (Pl's Motion, p. 4).   To the contrary, Defendants' Pension Plan fully complies with the ERISA Regulations which mandate that an employee benefit plan establish and maintain "reasonable procedures governing the filing of benefit

- 5 -

claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29
C.F.R. § 2560.503-1(b). Because Plaintiff's allegations pertain only to his appeal of an adverse
benefit decision, the applicable provision for appeals is set forth above in The GM-UAW
Supplemental Agreement Covering Pension Plan, Appendix D, Section K. Defendants' ERISA-
mandated appeal procedures are unassailable in this case. In addition, contrary to Plaintiff's
argument, these procedures existed long before Plaintiff filed his suit for benefits in federal court
(Pl's Brief, p. 4).

Even if Plaintiff is correct, which he is not, and Defendants failed to comply with the
technical requirements of ERISA by not delineating an appeal procedure, it still does not excuse
Plaintiff's failure to exhaust his administrative remedies.

In Perrino v. Southern Bell Telephone & Telegraph Co., 209 F.3d 1309 (11th Cir. 2000), the
plaintiffs attempted to claim they were excused from exhausting their administrative remedies
because the defendants failed to comply with ERISA by providing a summary plan description or
a formal claims procedure. The Court soundly rejected this argument, holding that non-compliance
with ERISA does not excuse a retiree's duty to exhaust his administrative remedies:

> We find Appellants' arguments unpersuasive. After reviewing the relevant federal
> regulations and our prior precedent, we decline to create an exception to the
> exhaustion requirement in this case.
> * * * *
> Our prior precedent makes clear that the exhaustion requirement for ERISA claims
> should not be excused for technical violations of ERISA regulations that do not deny
> plaintiffs meaningful access to an administrative remedy procedure through which
> they may receive an adequate remedy.

209 F.3d at 1316-1317.

The result should be no different in this case. Although Plaintiff sent multiple letters to
GM's Service & Benefit Center and the Plan Administrator, apparently in an attempt to exhaust
administrative remedies, he did not follow the proper procedure set forth in the Supplemental
Agreement and in the Summary Plan Description. Thus, Plaintiff failed to exhaust his administrative
remedies before filing suit and his claims should be dismissed.

- 6 -

II.    The Summary Plan Description is Binding

Next, Plaintiff alleges that he should be deemed to have exhausted his administrative remedies because he appealed the denial of his claims by using the addresses contained in the Summary Plan Description ("SPD"). He asserts that not only is the SPD a document which was not agreed to, negotiated by the Defendants or incorporated into the Pension Plan, but contends Defendants have "rejected" the SPD and therefore, his reliance on those addresses should be excused (Pl's Motion, pp. 3-4). Plaintiff could not be more wrong.

First, SPDs are *required* to be maintained and furnished to every plan participant and beneficiaries. ERISA, 29 U.S.C. § 1102(a)(1); 29 U.S.C. § 1024(b). SPDs are also required to be filed in compliance with ERISA's reporting and disclosure requirements. It is the "statutorily established means of informing participants of the terms of the plan and its benefits." 29 U.S.C. §§ 1022(a) and 1102; 29 C.F.R. § 2520.102-2. SPDs are generally considered part of the ERISA plan documents. Alday v. Container Corp., 906 F.2d 660, 665 (11th Cir. 1990).

In addition, the SPD in this case specifically states in its preamble that "This booklet summarizes all of the outstanding benefit plans covering you and your family. Changes resulting from the GM-UAW negotiations are included in the benefit program descriptions contained in this booklet." (AR p.92)[1] Not only is the SPD a summary of the Pension Plan itself, but contrary to Plaintiff's belief, it is not an "amendment" to the Plan that must be negotiated or agreed to. Nonetheless, the SPD specifically states:

> "The GM-UAW Pension Board of Administration and the GM-UAW SUB and GIS Boards of Administration have reviewed and approved the explanatory material related to pensions, supplemental unemployment benefits and guaranteed income stream benefits, respectively. The International Union, UAW, has reviewed and approved the material related to life and disability and health care coverages, the Profit Sharing Plan and the Personal Savings Plan."

---

[1]    AR refers to the Administrative Record filed in this case.

- 7 -

(AR p. 94) Plaintiff erroneously allege that the SPD terms were not "negotiated," when it fact the SPD is simply a summary of the *negotiated* Pension Plan terms.

Plaintiff relies on Shaw v. Connecticut General Life Ins. Co., 353 F.3d 1276 (11th Cir. 2003), and Slomcenski v. Citibank, N.A., 432 F.3d 1271 (11th Cir. 2005), for the proposition that the SPD is not part of the underlying Pension Plan. In Shaw, the underlying plan did not grant the administrator discretionary authority to decide claims for benefits, but the SPD did grant such authority. However, the plan expressly provided for an "amendment" procedure and also contained an "integration clause" precluding changes unless done in compliance with the amendment procedure. The court held that because the employer and insurance company in Shaw did not follow the amendment procedure and there was "integration" language, they could not rely on the discretionary language provision contained in the SPD. Id. at 1284.

Shaw is easily distinguished Here the grant of discretionary authority in this case is clearly spelled out in the Pension Plan itself (Defs.' Cross-Motion for Summary Judgment, Ex D, p. 9). Similarly, in Slomcenski, the disputed language was present in the SPD but not in the underlying or original disability benefits plan. The Slomcenski court, although acknowledging the holding in Shaw, *supra*, nonetheless held that the "SPD is sufficiently formal to meet the amendment procedure requirements of the both [sic] ERISA and our circuit..." Id. at 1279. Therefore, Slomcenski does not support Plaintiff's position in this case. See also, Campbell v. Chevron Phillips Chemical Co., 2006 WL 2380896 (E.D.Tex. 2006) (summary plan descriptions are considered ERISA documents, and may serve as a written plan the terms of which are binding, citing Alday v. Container Corp., *supra*, 906 F.2d 660, 665 (11th Cir. 1990).

Finally, Plaintiff's argument that the Pension Plan contains a "zipper clause" which does not provide for an SPD is wholly meritless, where, as stated above, SPDs are a *requirement* under ERISA.

- 8 -

III.    Defendants Did Not Violate the Notification Provision of ERISA

Finally, Plaintiff relies on the "deemed exhausted" language based on his misguided belief that Defendants did not timely respond to his appeals, allegedly in violation of 29 C.F.R. § 2560.503-1(f) which states that "the plan administrator shall notify the claimant...of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim..." Id. In the present case, Plaintiff contends that Defendants did not respond at all to his appeals, and therefore "the 90 day time period was ignored." (Pl's Motion, p. 2-3). However, this argument is without merit because Defendants have no legal obligation to respond to improperly submitted appeals. Plaintiff did not file his appeals according to the correct procedure, thereby obviating Defendants' need to comply with 29 C.F.R. § 2560.503-1(f). The language in the Regulation is clear that, for the ninety day period to apply, there must be "receipt of the claim by the plan." This presupposes that the claim must be properly submitted to the appropriate entity in order to entitle the claimant to the notification period set forth in Section 2560.503-1(f). Because Plaintiff did not properly follow the claim procedures, he cannot justifiably rely on the ninety day notice of denial period.

IV.    The Arbitrary and Capricious Standard of Review Applies to the Review of Determinations Made Under the GM Pension Plan

Because Shaw does not govern the facts of this case, the discretionary authority granted to the Plan administrator must be honored by the court, unless the administrator's decision is determined to have been arbitrary or capricious. The arbitrary and capricious standard of review applies in this case.

First, it must be pointed out that Plaintiff argues that the applicable standard of review in this case is the 'deemed exhausted' standard. However, the "deemed exhausted" principle is not a standard of review, but is a Department of Labor Regulation implemented in 2000 and applicable to ERISA claims filed on or after January 1, 2002. 29 C.F.R. § 2560.503-1(l). The Regulation provides:

(l) Failure to establish and follow reasonable claims procedures. In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502 (a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

Moreover, contrary to Plaintiff's claim, it remains proper for the Court to apply the "abuse of discretion" standard of review when reviewing the administrative record even if the plaintiff is deemed to have exhausted his administrative remedies. See e.g., Hardt v. Reliance Standard Life Ins. Co., 494 F. Supp.2d 391 (E.D. Va. 2007); Neathery v. Chevron Texaco Corp., 2006 WL 4690902 (S.D. Cal. 2006).

In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the United States Supreme Court defined the standard of review applicable to an administrator's decision to deny benefits under an ERISA-covered plan:

[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Id. at 115.

The Court reasoned that general principles of trust law should govern the choice of the standard of review. Because a trustee's discharging of his duties under a trust agreement is accorded deferential treatment only when the instrument grants the trustee discretion, the Court concluded that deference to an administrator's decision is appropriate when discretion is delegated to the decision maker. Id. at 108-15.

The GM-UAW Supplemental Agreement Covering Pension Plan delegates to the Board of Administration the responsibility for considering appeals arising from a denial of benefits, such as in this case. The parties have collectively bargained that decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors:

(9)    There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union, its members, the employee or employees involved, and on the Corporation, subject only to the

- 10 -

arbitrary and capricious standard of judicial review. (Defs.' Cross-Motion for Summary Judgment, Ex D at pp. 9-10).

Three decisions have considered the applicable standard of review for determinations made by the Board under the above procedures. In Lord v. General Motors Corp., 39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) the Court reviewed the decision of the Pension Board of Administration which denied a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Court explained:

> Section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. The "arbitrary and capricious" standard of review applies when a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies. Lord, slip opinion at p.2 (citations omitted)

Similarly, in Roberson v. General Motors Corporation, 801 F.2d 176 (6th Cir. 1986), the Court reviewed a section 502(a)(1)(B) claim for benefits arising from a decision under the GM Pension Plan. Again the Court explained that the standard of review was whether the determination was arbitrary and capricious:

> The district court properly concluded that the appropriate standard of review of the board's denial of disability pension benefits to appellant is whether such action was arbitrary or capricious. "The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith." Id. at 180 (citations omitted).

See also Hawkins-Dunn v. General Motors Corp., 225 Fed.Appx. 358, 360 (6th Cir.2007) (Court found that the GM Pension Plan "gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious.")

The Eleventh Circuit has taken the same approach.    In Adams v. Thiokol Corporation, 231 F.3d 837 (11th Cir. 2000), the Court explained the application of Firestone:

> In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court discussed the appropriate standard of review in 29

- 11 -

> U.S.C. § 1132(a)(1)(B) actions challenging a denial of benefits based on plan interpretations. <u>A review under the arbitrary and capricious standard is appropriate where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."</u> *Bruch,* 489 U.S. at 115, 109 S.Ct. 948. However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Id.* (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959)). "[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest *might* conflict with the interest of the beneficiary." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1565 (11th Cir.1990) (quoting *Fulton Nat'l Bank v. Tate,* 363 F.2d 562, 571 (5th Cir.1966) (underlined emphasis added, italicized emphasis in original)).

<u>Id.</u> at 842. Nevertheless, even under the heightened standard, the Court explained that when the issue involves interpretation of a plan provision, if the administrator's interpretation was correct, the inquiry ends:

> Under the heightened standard, we must first determine the legally correct interpretation of the disputed plan provision. *Brown,* 898 F.2d at 1570; *Newell,* 904 F.2d at 651. <u>If the administrator's interpretation was legally correct, the inquiry ends.</u> *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997). If the administrator's interpretation differs, we must then determine whether the administrator was arbitrary and capricious in employing a different interpretation. *Brown,* 898 F.2d at 1570; *Newell,* 904 F.2d at 651.

<u>Id.</u> at 843. (emphasis added). <u>See also</u> <u>Carnaghi v. Phoenix American Life Insurance Company,</u> 238 F.Supp. 1373 (N.D.Ga. 2002), where the Court, relying on Eleventh Circuit precedent, explained:

> As the court explained in *Jones [v. Champion International Corporation,* Civil Action No. 00- CV-1186-JOF]:
>
>> Under the line of cases dealing with the legal interpretation of the plan, if the administrator's interpretation was legally correct, the inquiry ends because the conclusion would be the same under any of the three standards of review. *See, e.g., Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000) (per curiam); *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997); *Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir.1995).

<u>Id.</u> at 1376.

As explained above, in this case the Board of Administrators has the authority to interpret and apply the provisions of the General Motors Hourly-Rate Pension Plan. Thus, the question here

- 12 -

is whether the determination of General Motors was arbitrary and capricious. That question cannot be answered until the Court conducts its review of the Administrative Record.

In summary, the Court's review of determinations made by the Board of Administration under the GM Pension Plan is subject to the arbitrary and capricious standard. Further, Plaintiff cannot avoid the application of this standard merely because he failed to exhaust the available appeal procedure.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff's Second Motion for Summary Judgment should be denied. Plaintiff's claims should fail because he failed to exhaust his administrative remedies under the Supplemental Agreement. There was, at all relevant times, a valid, enforceable and binding appeal procedure in place which Plaintiff did not follow. He neither submitted his appeal on the designated form nor did he send his "appeal" to the Secretary, Pension Board of Administration as required by the appeal procedure.

Further, Defendants' Cross Motion for Summary Judgment filed on March 7, 2008 should be granted. Accordingly, Plaintiff's claims should be dismissed in their entirety and Defendants should be awarded any and all applicable costs, sanctions and attorney fees for having to defend this action.

Respectfully submitted:

s/ David M. Davis
David M. Davis (MI Bar No. P24006)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue,
Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800
E-mail: dmd@hardylewis.com

Dated: May 12, 2008
00206218.WPD

- 13 -

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

vs.

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

Case No. 5:07-CV-408 OC

Hon. William Terrell Hodges
Magistrate Judge Gary R. Jones

---

| | |
|---|---|
| Walter J. Lawrence, In Pro Per<br>3101 SW 34th Avenue, # 905<br>Ocala, Florida 34474 | David M. Davis (MI Bar No. P24006)<br>Attorney for Defendants<br>Hardy, Lewis & Page, P.C.<br>401 South Old Woodward Avenue, Ste. 400<br>Birmingham, Michigan 48009<br>Telephone: (248) 645-0800<br><br>Cynthia L. May (0029297)<br>Co-Counsel for Defendants<br>Greenberg Taurig, P.A.<br>625 E. Twiggs Street, Ste. 100<br>Tampa, FL 33602<br>Telephone: (813) 318-5700 |

---

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 12, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant: Walter J. Lawrence, #162, 3101 S.W. 34th Avenue, #90 Ocala, FL 34474.

           /s/ David M. Davis
           David M. Davis (MI Bar No. P24006)
           Attorney for Defendants
           Hardy, Lewis & Page, P.C.
           401 South Old Woodward Avenue, Ste. 400
           Birmingham, Michigan 48009
           Telephone: (248) 645-0800

Dated: May 12, 2008
           E-mail: dmd@hardylewis.com

# EXHIBIT G



*Supplemental
Agreement*

Covering

**PENSION PLAN**

Exhibit A
to
AGREEMENT
between
GENERAL MOTORS CORPORATION
and
UAW
dated
September 18, 2003

(g)   the extent to which the trust fund assets as of the valuation date would be sufficient to cover the pension liabilities, as determined in accordance with SFAS 87.

(iv)   A statement, certified by the Actuary, that the amount of the trust fund is or is not less than the amount then required by Section 2(b) hereof to be in such fund.

(v)   A statement setting forth:

(aa) The value of the trust fund computed on the basis of market value as of the previous anniversary date of the Plan.

(bb) Additions during Plan year:

(i)   payments by General Motors into the fund

(ii)   interest and dividends received by the fund

(iii)   net investment gains, and

(iv)   total additions.

(cc)   Pension payments and supplements to retired employees and surviving spouses during Plan year.

(dd) The value of the trust fund computed on the basis of market value as of the anniversary date of the Plan for the year for which the statement is being submitted.

(vi)   A schedule setting forth as of March 31 of each year:

(aa) the amount of investment of the pension fund in residential real estate mortgages, by type, in communities with General Motors plants and in other communities,

(8)

(bb) the amount invested in such residential real estate mortgages during the preceding year in comparison with total new money investments during that year, and

(cc)   a description of such residential mortgages in which funds were invested during the preceding year, by type, separately by plant city areas and in total for other areas.

(vii)   A copy of Form 5500 reports and attendant schedules for the Plan will be furnished as soon as practicable after General Motors has filed such report with the Internal Revenue Service.

(6)   The Board of Administration shall have no power to add to or subtract from or modify any of the terms of this agreement or the Plan, nor to change or add to any benefit provided by said agreement or Plan, nor to waive or fail to apply any requirement of eligibility for a benefit under said agreement or Plan.

(7)   Any case referred to the Board of Administration on which it has no power to rule shall be referred back to the parties without ruling.

(8)   No ruling or decision of the Board of Administration in one case shall create a basis for a retroactive adjustment in any other case prior to the date of written filing of each such specific claim.

(9)   There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union and its members, the employee or employees involved, and on the Corporation, subject only to the arbitrary and capricious standard of judicial review.

The Union will discourage any attempt of its members and will not encourage or cooperate with any of its members, in any appeal to any Court or

(9)

Administrative Board or Agency from a ruling of the Board of Administration.

**(b)  Impartial Chairperson**

(1)  The Corporation and the Union shall mutually agree upon and select an Impartial Chairperson, who shall serve until requested in writing to resign by three Board members.

(2)  The Impartial Chairperson will not be counted for the purpose of a quorum, and will vote only in case of a failure of the Corporation and the Union by vote through their representatives on the Board to agree upon a matter which is properly before the Board and within the Board's authority to determine; provided that the Impartial Chairperson may vote only on matters involving the processing of individual cases, not on the development of procedures.

(3)  The fees and expenses of the Impartial Chairperson will be paid one-half by the Corporation and one-half by the Union.

(c)  The Union and Corporation members of the Board of Administration have, in Appendix D, agreed to matters such as but not limited to:  (1) procedures for establishing Pension Committees at the Divisions or plants involved; (2) the authority and duties of such Pension Committees; (3) the procedures for reviewing applications for pensions; (4) the handling of complaints regarding the determination of age, service credits, and computation of benefits; (5) procedures for making appeals to the Board; (6) means of verifying service credits to which employees are entitled under the Plan; (7) methods of furnishing information to employees regarding past and future service credits; (8) the amount of time the Union members of the committees may be permitted to leave their work to attend meetings of the Pension Committees; (9) how disputes over total and

(10)

permanent disability claims will be handled, including disputes, if any, with respect to whether a disabled pensioner engages in gainful employment; (10) the review of pertinent information about the Plan for dissemination to employees; (11) how pension payments will be authorized by the Board. All such matters are consistent with all other provisions of the Plan and this agreement. The working out of the procedures outlined in this section shall be the responsibility of the Corporation and Union members of the Board, and the Impartial Chairperson shall have no power to decide any question with respect thereto.

(d)  Except as provided otherwise in this agreement, the general administration of the provisions of the Plan shall be the responsibility of the Corporation.

(e)  The Board and any member of the Board, or the Pension Committees or any member of the Pension Committees, shall be entitled to rely upon the correctness of any information furnished by the Union or the Corporation   Neither the Board nor any of its members, nor the Pension Committees nor any of its members, nor the Union nor any officer or other representative of the Union, nor the Corporation nor any officer or other representative of the Corporation shall be liable because of any act, or failure to act, on the part of the Board or any of its members, or the Pension Committees or any of its members or any person, except that nothing herein shall be deemed to relieve any such individual from any liability for the individual's own fraud or bad faith.

(f)  No matter respecting the Plan as modified and supplemented by this agreement or any difference arising thereunder shall be subject to the grievance procedure established in the collective bargaining agreement between the Corporation and the Union, except as expressly provided in Paragraph (46) of such collective bargaining agreement.

(11)



**GM Benefits & Services Center**
gmbenefits.com
1-800-489-4646
**International Access**
Dial AT&T Direct® Service Access Code, then 877-833-9900
**TDD Service for the Hearing Impaired**
1-877-347-5225

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE. #905
OCALA, FL 34474-0000

September 5, 2007

Re: Recalculation of Pension Benefits

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:

- Tax Levy Amended to $208 as per IRS Guidelines
- Pension Overpayment

| | Current Benefit Amount | New Benefit Amount as of 10/01/2007 |
|---|---|---|
| Benefit to Participant: | $0.00 | $837.50 |

Our records indicate you have received an overpayment of retirement benefits. The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund.

Please make your check or money order payable to FIIOC "Fidelity Investments Institutional Operating Company" and send it to the Benefit Service Center in the self addressed envelope enclosed for your convenience. On the check or money order, indicate that this is to repay an overpayment, clearly print your full name and include your Social Security number.

If the payment in a lump sum is not received, beginning 10/01/2007, your monthly benefit will be reduced by 50% until the total amount of the overpayment has been recovered. This means that your gross monthly benefit will be $418.75 until 03/01/2014. On 04/01/2014, you will receive $515.00 completing the recovery of your overpayment of $32,985.00. Thereafter, your gross monthly benefit of $837.50 will be restored.

D

8

**Additional Information**
If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,

**GM Benefits & Services Center**

Eighty-Second Omnibus Objection

Motors Liquidation Company, et al.
Case No. 09-50026 (REG), Jointly Administered

## Exhibit A

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| RICHARDSON SR, JOE S<br>1108 BERKLEY AVE<br>PONTIAC, MI 48341 | 68058 | Motors Liquidation Company | $47,000,000.00 | (S) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $0.00 | (U) | | |
| | | | $47,000,000.00 | (T) | | |
| WALTER J LAWRENCE<br>2609 N FOREST RIDGE BLVD #103<br>HERNANDO, FL 34442 | 21225 | Motors Liquidation Company | $160,600.00 | (S) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $0.00 | (U) | | |
| | | | $160,600.00 | (T) | | |

| CLAIMS TO BE DISALLOWED AND EXPUNGED | 26 | | | |
|---|---|---|---|---|
| | | $48,386,600.00 | (S) | |
| | | $800,000.00 | (A) | |
| | | $8,742,376.47 | (P) | |
| | | $47,125,000.00 | (U) | |
| | | $105,053,976.47 | (T) | |

(1) In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = cured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2) Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.



GM Benefits & Services Center
gmbenefits.com
1-800-489-4646
International Access
Dial AT&T Direct® Service Access Code, then 877-833-9900
TDD Service for the Hearing Impaired
1-877-347-5225

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE. #905                                    May 14, 2007
OCALA, FL 34474-0000

**Re: Recalculation of Pension Benefits**

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and
reason for the Pension Benefit Recalculation is:

- Benefits were not adjusted by the Tax Levy Amount of $1,099.50
- Pension Overpayment

|  | Current Benefit Amount | New Benefit Amount as of 07/01/2007 |
| --- | --- | --- |
| Benefit to Participant: | $1,045.50 | $0.00 |

Our records indicate you have received an overpayment of retirement benefits from 01/01/2005
through 06/01/2007, a total of 30 month(s). The total amount of the overpayment is $32,985.00.
Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return
them to the Plan's Trust Fund.

Please make your check or money order payable to General Motors Corporation and send it to the
Benefit Service Center in the self addressed envelope enclosed for your convenience. On the
check or money order, indicate that this is to repay an overpayment, clearly print your full name
and include your Social Security number.

**Additional Information**

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,

**GM Benefits & Services Center**