*The Law Offices of*

(SPACE BELOW FOR FILING STAMP ONLY)

**BARRY NOVACK**

8383 WILSHIRE BLVD. SUITE 830

BEVERLY HILLS, CALIFORNIA 90211-2407

(323) 852-1030    (323) 852-9855 FAX

CA STATE BAR NO. 57911 (ADMITTED PRO HAC VICE)

-and-

**NORRIS MCLAUGHLIN & MARCUS, PA**

875 THIRD AVE., 8TH FLOOR

NEW YORK, NY 10022

(212) 808-0700

MELISSA PEÑA (MP-3320)

ATTORNEYS FOR PLAINTIFF SANFORD DEUTSCH

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>MOTORS LIQUIDATION COMPANY, et al.,<br>    f/k/a General Motors Corp., et al.<br><br>                    Debtors. | Chapter 11 Case No.<br><br>09-50026 (REG)<br><br>(Jointly Administered) |

### REPLY BRIEF OF SANFORD DEUTSCH TO SUPPLEMENTAL SUBMISSION OF GENERAL MOTORS, LLC, RE: MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. SECTION 105 ENFORCING 363 SALE ORDER

1. **INTRODUCTION.**

1.  This Motion was continued to permit supplementation of the record to show the intent behind the assumed liabilities provisions of the Master Sale and Purchase Agreement

1

REPLY BRIEF TO SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR ORDER ENFORCING
363 SALE ORDER

("MSPA"). However, General Motors, LLC (hereinafter "New GM") has not submitted any new evidence in support of its Motion. Nor has New GM submitted any textual support or legal authority for the position set forth in its supplemental briefing. In the circumstances, there is no more reason to grant the Motion now than there was when the Court first expressed doubts about the Motion.

2. Despite the absence of any new evidence, the Court can deny the Motion based on the current state of the record. The assumed liabilities provisions of the MSPA clearly show that New GM assumed liability for claims arising from Old GM products after the cut-off date. The purpose of this cut-off date was to provide a bright line date beyond which New GM did not assume liability so there would be some limit and order to the processing of claims against New GM. Since Beverly Deutsch's death occurred *after* the cut-off date, it is properly an assumed liability of New GM and it does not upset the apple-cart with respect to New GM's evaluating and processing of claims.

3. New GM sets forth only argument that its preferred interpretation of the MSPA should be followed. New GM drafted the MSPA. If New GM wished to express an intention in the agreement, it had the ability to do so. Instead, it left open a significant ambiguity. An ambiguity in a writing such as the MSPA should not be construed so as to void the rights of an injured person or decedent's heirs, such as in this case, whose ability to recover for those injuries will be cut off based on an ambiguous writing. The ambiguity should be read *against* the drafter (in this case, New GM) consistent with traditional principles of contractual interpretation, and the words of the agreement should be given full effect.

4. Sanford Deutsch thus respectfully requests that the Court deny New GM's Motion with respect to his claim for the wrongful death of Beverly Deutsch.

2. **ALL THE TERMS IN THE AGREEMENT SHOULD BE GIVEN MEANING AND EFFECT, AND ANY AMBIGUITY SHOULD BE CONSTRUED IN FAVOR OF ONE WHO HAD NO VOICE IN DRAFTING THE AGREEMENT.**

5. This Court noted at the hearing on June 1, 2010, that New York law applies to the interpretation of the MSPA. The applicable principles of New York contract law are set

forth below.

6. The Court cited Benvenuto v. Rodriguez, 279 A.D. 162 (1951), which provides as follows: "[T]he well-settled rules of construction require the giving of due consideration to all parts of a contract to the end that the particular covenant involved be so construed, when possible, **to give effect and meaning to every word and expression contained in the agreement.** Particular terms and expressions are to be considered in their context and in the light of the intention of the parties as manifested by the agreement as a whole." *Id.* at 164 (emphasis added).

7. Furthermore,

"Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." Kass v. Kass, 91 N.Y.2d 554, 567 (1998) (citing Williams Press v. State of New York, 37 N.Y.2d 434, 440) (internal quotation marks omitted).

8. Finally:

"In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and **favorably to a party who had no voice in the selection of its language.**" Jacobson v. Sassower, 66 N.Y.2d 991, 993 (1985) (emphasis added).

9. Applying these principles to the MSPA, it is clear that New GM's interpretation must be rejected.

3. **THE MSPA REFERS TO "ACCIDENTS *OR* INCIDENTS" AND CREATES A DISTINCTION BETWEEN THE TWO CATEGORIES.**

10. As initially set forth in Sanford Deutsch's Objection, and acknowledged by New GM in its briefing, the MSPA provides that the New GM assumes liability for product liability claims "which arise directly out of death, personal injury or other injury to Persons . . . caused by accidents or incidents first occurring on or after the Closing Date . . ." MSPA, Section 2.3(a)(ix) (as amended).

11. Neither of the terms "accident" nor "incident" are defined in the MSPA. Both terms are used, along with the conjunction "or." A plain reading of the MSPA thus leads to the

3

REPLY BRIEF TO SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR ORDER ENFORCING 363 SALE ORDER

|   |   |
|---|---|
| 1 | inevitable conclusion that "accidents" and "incidents" are not synonymous. Otherwise, there |
| 2 | would be no reason to refer to both categories of occurrences, and there would not be an "or" |
| 3 | between them. |
| 4 | 12. New GM states, without any support either from the MSPA itself or from legal authority, |
| 5 | that "it is abundantly clear . . . that a Product Liability Claim arising from a death (no matter |
| 6 | when such death actually takes place) caused by an accident or incident that occurred prior |
| 7 | to the closing of the 363 Transaction on July 10, 2009, is not an assumed liability of New |
| 8 | GM." Supp. Brief at p. 2. |
| 9 | 13. With all due respect, this intention is not clear at all from the language of the MSPA! The |
| 10 | MSPA makes a clear distinction between "accidents" and "incidents." |
| 11 | 14. Beverly Deutsch was in an automobile *accident* that occurred on June 27, 2007. However, |
| 12 | her death was due to an *incident* on August 2, 2009. These are two distinct events. |
| 13 | 15. Webster's Dictionary defines "incident" broadly as "A separate and definite occurrence: |
| 14 | EVENT." *Webster's II New College Dictionary* (1999), p. 559. An incident is something |
| 15 | that *happens*. Since the term is broad enough to encompass the death of Beverly Deutsch |
| 16 | as an "incident," the term should be interpreted broadly to include the death. |
| 17 | 16. In fact, the plain meaning of the MSPA contradicts New GM's argument because it refers |
| 18 | to two distinct categories: "accidents" and "incidents." |
| 19 | 17. In order to give full force and effect to *all* the words of the MSPA, without ignoring terms |
| 20 | that New GM would read out of the agreement when it is convenient, it is necessary to make |
| 21 | a distinction between "accidents" and "incidents." |

**4. NEW GM'S INTERPRETATION WOULD IGNORE THE LANGUAGE OF THE AGREEMENT, ITS INTENT, AND UNFAIRLY CUT OFF SANFORD DEUTSCH'S CLAIM FOR WRONGFUL DEATH WHEN HE HAD NO VOICE IN DRAFTING THE AGREEMENT.**

18. The principles of contractual interpretation require that all the terms in the MSPA must be given meaning and effect. New GM's interpretation reads the term "incident" out of the agreement and re-interprets the MSPA so that only "accident" remains.

19. But, as noted above, "incident" is clearly a category separate from "accident" because it is separated by the conjunction "or." New GM did not define "incident," so the term is ambiguous, but it must nevertheless be given some meaning.

20. This broad reading is not only consistent with giving the term "incident" meaning, it is consistent with the policy of reading a contract against the drafter and in favor of someone who had no voice in the choice of language. In this case, Sanford Deutsch's rights are being seriously affected, because his right to recover from New GM may be cut off. Sanford Deutsch had no hand in drafting the agreement: he is an innocent individual who had nothing to do with GM or its bankruptcy until those circumstances collided with his attempt to obtain compensation for his wife's death. It would be manifestly unfair to cut off his right to recover by reading the agreement so narrowly as to read out the term "incident" altogether.

21. Nor is this interpretation inconsistent with the intention of the parties to the agreement. New GM has been given a chance to provide evidence of this intent, but has declined to do so. However, this Court is well aware of the circumstances: Old GM entered bankruptcy, and its assets were sold.

22. The cut-off date was obviously intended to create a bright line that would separate liabilities retained by Old GM and assumed by New GM. This bright line benefited both parties because it would create some order to the processing of those claims.

23. Moreover, the agreement clearly contemplates that New GM will assume liability for products manufactured by the Old GM. That is the whole purpose of the assumed liabilities portion of the agreement. So there was no intent to protect New GM from *all* claims for personal injuries or death due to products manufactured by Old GM, only to insulate it from personal injuries or death that occurred before the date of July 10, 2009.

24. If Beverly Deutsch had died before July 10, 2009, Sanford Deutsch could not have brought a claim against New GM because the death would have been an incident that occurred before the cut-off date and for which New GM did not assume liability.

25. However, since Beverly Deutsch passed away on August 2, 2009, her death was an incident

5

REPLY BRIEF TO SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR ORDER ENFORCING
363 SALE ORDER

1. that occurred after the cut-off date, and for which New GM assumed liability.

26. Thus, interpreting "incident" to include the death does not subvert the intention of the MSPA to provide a bright line concerning assumed liabilities.

**5.    CONCLUSION.**

27. Sanford Deutsch's action against New GM is not in violation of the 363 Sale Order because New GM expressly assumed liability for *incidents* occurring after the Closing Date. Mr. Deutsch thus respectfully requests that the Court deny the Motion with respect to his cause of action against New GM.

THE LAW OFFICES OF BARRY NOVACK

DATED: September 13, 2010        By: _____
                                         BARRY NOVACK
                                 Attorneys for Plaintiff Sanford Deutsch

REPLY BRIEF TO SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR ORDER ENFORCING 363 SALE ORDER

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age 18 and not a party to this action. My business address is: 8383 Wilshire Blvd., Suite 830, Beverly Hills, California 90211.

On the date indicated below I served the attached: **Reply Brief to Supplemental Submission in Support of Motion for Order Enforcing 363 Sale Order** on the interested parties by placing a true copy in a sealed envelope addressed as follows:

| | |
|---|---|
| Harvey R. Miller, Esq.<br>Stephen Karotkin, Esq.<br>Joseph H. Smolinksy, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>(212) 310-8000<br>(212) 310-8007 FAX | Attorneys for Debtors and Debtors in Possession |
| The Garden City Group, Inc.<br>P.O. Box 9386<br>Dublin, OH 43017-4286<br>(631) 940-6554 FAX | Noticing Agent |

Attn:   Motors Liquidation Company
         Claims Processing

_X_ BY MAIL: I caused such envelope to be deposited in the U.S. Postal Service at Beverly Hills, CA with postage thereon fully prepaid. I am familiar with the firm's practice of collection and processing of correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business.

_X_ BY FAX SERVICE: I caused such document to be fax served to the office of the addressee.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Beverly Hills, California on September 13, 2010.

_____
Christina Mirzaie