UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                 :
In re                                                            :     Chapter 11 Case No.
                                                                 :
MOTORS LIQUIDATION COMPANY, et al.,                              :
                                                                 :
     :        09-50026 (REG)
f/k/a General Motors Corp., et al.                               :
                                                                 :
Debtors.                                                         :     (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x

### EXHIBIT A

re: I THOMAS SMALLEY (GUC) "OBJECT" .

In general, while a typical bankruptcy reorganization plan allows the "new" company to distribute new shares under a new trading symbol, holders of the common stock of the "old" company generally do not receive any of these shares. A company must pay off existing debt before it emerges from bankruptcy—and creditors, including bondholders,AND UNSECURED CREDITORS usually receive shares in the new company as partial payment.

Management of more than 70,000 claims, totaling more than $275 billion, with more than $150 billion in claims already eliminated or resolved.

a.) MORE THAN 1/2 RESOLVED ,WHERE IS PLAN TO RESOLVE THE REST ?
b.) land use issues may take 5 years
c.) General Unsecured Claims may take 2 years
d.) more than 1/2 the valued claims have been resolved in less than "1 year"
e.) does land use clean up take presidence over Personal Injury Claims? this plan sounds like it does?

4.3 Class 3 - General Unsecured Claims.
(a) As soon as is reasonably practicable after the Effective Date (but no earlier than the first Business Day following the Distribution Record Date), each holder of an Allowed General Unsecured Claim as of the Distribution Record Date shall

receive from the GUC Trust its Pro Rata Share of (i) the New GM Securities and (ii) the GUC Trust Units, in accordance with the terms of the GUC Trust and the GUC Trust Agreement.

The GUC Trust shall make subsequent distributions of New GM Securities and GUC Trust Units to holders of Disputed General Unsecured Claims as of the Distribution Record Date whose Claims are subsequently Allowed. The GUC Trust shall make additional distributions of New GM Securities to holders of GUC Trust Units in accordance with the terms of the GUC Trust and the GUC Trust Agreement.

IS ABOVE THE ADDITIONAL 2% THAT IS TALKED ABOUT?

(b) If any proceeds of the Term Loan Avoidance Action and/or the Asbestos Insurance Assets are received prior to the Avoidance Action Trust Transfer Date, then, to the extent it is determined that the holders of Allowed General Unsecured Claims are entitled to any proceeds of the Term Loan Avoidance Action and the Asbestos Insurance Assets, either by (i) mutual agreement between the U.S. Treasury and the Creditors' Committee prior to the Effective Date, (ii) mutual agreement between the U.S. Treasury and the GUC Trust Administrator on or after the Effective Date, or (iii) Final Order,

    (A) each holder of an Allowed General Unsecured Claim as of the Distribution Record Date shall receive its Pro Rata Share of such proceeds, net of any expenses incurred by the Debtors on or after the Effective Date, and

    (B) the Debtors shall make subsequent distributions of the net proceeds of the Term Loan Avoidance Action and the Asbestos Insurance Assets to holders of Disputed General Unsecured Claims and Disputed Asbestos Personal Injury Claims as of the Distribution Record Date whose Claims are subsequently Allowed. Holders of Disputed General Unsecured Claims and Disputed Asbestos Personal Injury Claims on the Distribution Record Date whose Claims are subsequently Allowed prior to the initial distribution of proceeds of the Term Loan Avoidance Action and the Asbestos Insurance Assets shall be deemed to be holders of Allowed General Unsecured Claims as of the Distribution Record Date for the purpose of this Section 4.3(b).

(c) As soon as is reasonably practicable after the Avoidance Action Trust Transfer Date, to the extent it is determined that the holders of Allowed General Unsecured Claims are entitled to any proceeds of the Term Loan Avoidance Action and the Asbestos Insurance Assets, either by (i) mutual agreement between the U.S. Treasury and the Creditors' Committee prior to the Effective Date, (ii) mutual agreement between the U.S. Treasury and the GUC Trust Administrator on or after the Effective Date, or (iii)

Final Order, (A) each holder of an Allowed General Unsecured Claim as of the Distribution Record Date shall receive from the Avoidance Action Trust, to the extent not already distributed, its Pro Rata Share of such proceeds in accordance with the terms of the Avoidance Action Trust and the Avoidance Action Trust Agreement and (B) the Avoidance Action Trust shall make subsequent distributions of any proceeds of the Term Loan Avoidance Action and the Asbestos Insurance Assets to holders of Disputed General Unsecured Claims and Disputed Asbestos Personal Injury Claims as of the Distribution Record Date whose Claims are subsequently Allowed. The Avoidance Action Trust shall make additional distributions of any proceeds of the Term Loan Avoidance Action and of the Asbestos Insurance Assets to the Avoidance Action Trust Beneficiaries in accordance with the terms of the Avoidance Action Trust and the Avoidance Action Trust Agreement. Holders of Disputed General Unsecured Claims and Disputed Asbestos Personal Injury Claims on the Distribution Record Date whose Claims are subsequently Allowed prior to the Avoidance Action Trust Transfer Date shall be deemed to be holders of Allowed General Unsecured Claims as of the Distribution Record Date for the purpose of this Section 4.3(c).

(d) Holders of Unliquidated Litigation Claims, at the option of the Debtors or the GUC Trust Administrator, as applicable, shall be subject to the ADR Procedures in order to determine the Allowed amount of their respective General Unsecured Claims.

(e) The Note Claims shall be Allowed in the respective amounts listed next to each Indenture set forth in Exhibit "B" annexed hereto (the "Fixed Allowed Note Claims"). The Fixed Allowed Note Claims shall override and supersede any individual Claims filed by record or by beneficial holders of debt securities arising out of or relating to the Note Claims.

(f) The Eurobond Claims under (i) that certain Fiscal and Paying Agency Agreement, dated as of July 3, 2003, among MLC, Deutsche Bank AG London, and Banque Générale du Luxembourg S.A. shall be Allowed in the amount of $_____, (ii) that certain Fiscal and Paying Agency Agreement, dated as of July 10, 2003, among General Motors Nova Scotia Finance Company, MLC, Deutsche Bank Luxembourg S.A., and Banque Générale du Luxembourg S.A. shall be Allowed in the amount of $_____, and (iii) that certain Bond Purchase and Paying Agency Agreement, dated May 28, 1986, between General Motors Corporation and Credit Suisse, shall be Allowed in the amount of $_____ (together, the "Fixed Allowed Eurobond Claims"). The Fixed Allowed Eurobond Claims shall override and supersede any individual Claims filed by record or by beneficial holders of debt securities arising out of or relating to the Eurobond Claims.

(g) Notwithstanding anything to the contrary in this Section 4.3, all proceeds of the Term Loan Avoidance Action and/or the Asbestos Insurance Assets shall be applied first to pay the U.S. Treasury (i) all amounts expended on and after the Effective Date to fund the costs and expenses associated with realizing such proceeds and

(ii) without duplication, the amount of the Avoidance Action Trust Administrative Cash.

# EXHIBIT B
## Motors Liquidation Company Files Joint Chapter 11 Plan

If the Plan is confirmed, substantially all of the Debtors' assets and liabilities will be transferred to four trusts, including one, the Environmental Remediation Trust, or "ERT," that provides funds for the continuing environmental remediation of the Debtors' remaining properties, and another, the General Unsecured Creditors Trust, that will be responsible for resolving the outstanding claims of the Debtors' unsecured creditors and distributing the General Motors Company ("New GM" or "General Motors") common stock and warrants owned by MLC to those unsecured creditors whose claims are allowed. MLC presently owns 10% of General Motors' common stock, plus warrants that are exercisable for a further 15% of General Motors' common stock on a fully diluted basis. MLC will be issued up to an additional 2% of General Motors' common stock if the final estimated aggregate amount of the Debtors' unsecured claims exceeds certain thresholds. A third trust will handle both present and future asbestos-related claims against the Debtors, while a fourth trust will deal with certain litigation-related claims of the Debtors.

One of the most significant aspects of the Plan is the ERT, which MLC was instrumental in crafting. If the Plan is confirmed, the ERT will make $536 million available to handle environmental-remediation activities at the Debtors' remaining properties.

"SEEMS SALE OF THESE ASSETS COULD BE FOR "future asbestos-related claims against the Debtors"
AND A PLAN SHOULD FIRST RESOLVE physical-remediation activity?"

"A significant number of these properties are old industrial sites that have a need for substantial environmental remediation," said Ted Stenger, executive vice president of MLC. "It is nearly impossible to redevelop such properties for productive, job-creating purposes unless environmental remediation is complete or the buyer can be assured the funding and procedures exist to do the remediation. The Plan establishes a framework that will provide this assurance."

The ERT's assets will consist of cash, the Debtors' remaining unsold real properties, and the equipment that is located at those properties. The ERT differs from the structure that has been used in some other large environmental bankruptcies in that it provides an

overall "national" remediation solution backed up by significant funds, while also providing a strong voice to the states involved in the process. If the Plan is confirmed, MLC anticipates that within a few years most of the real properties transferred to the ERT will be sold to third parties or otherwise prepared for redevelopment. In this regard, the Debtors have already received a number of expressions of interest regarding properties and are presently in negotiations to sell 17 properties, in addition to those already sold.

MLC anticipates that the majority of the environmental remediation contemplated in the ERT should be completed or well underway within five years, and that the ERT will have adequate funding to complete further remediation activities (such as periodic site testing and maintenance) for up to 100 years.

## EXHIBIT C

1) In my objection i use this "environmental-remediation activity" OVER my lack of "physical-remediation activity" and could be added as an amendment

2) MLC will be issued up to an additional 2% of General Motors' common stock if the final estimated aggregate amount          of the Debtors' unsecured claims exceeds certain thresholds.

   a.) WHAT IS THIS THRESHOLD? and will the 2% be returned if in the final                                      estimated aggregate amount will/would be unallowable? or put in a mediation
          account for disputes that arrise in a "Disputed General Unsecured Claim "

Honorable Robert E. Gerber

I therefore object to this plan or lack of plan and reserve the right to amend or withdraw my objection upon further review and or a satisfactory plan that will cover my damages and loss I have suffered over the last 13 years and any future damages and losses that I will occur, Thank you in advance for what this objection may or may not bring but to this date I have still not been aproached to resolve my breach of performance ,my right of any payment and my right to an equitable remedy for my
damages and losses!

Thomas M Smalley
pob 93
Lynnville,Iowa 50153-0093