<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

</div>

GENERAL MOTORS CORPORATION,
a Delaware corporation, GM DE MEXICO               Case No. 2:08-cv-12671
S. DE R.L. DE C.V., a Mexican entity, and
GM OF CANADA LTD., a Canadian entity,
                                                   Hon. Lawrence P. Zatkoff
       Plaintiffs,

v.

ALBERT WEBER GMBH,
a German entity, and
WEBER AUTOMOTIVE CORPORATION,
a South Carolina corporation,

       Defendants.

_____/

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Plaintiffs
By:    Robert B. Weiss (P28249)
       Mark A Stern (P36812)
       Adam L. Kochenderfer (P65757)
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
(313) 465-7562

_____/

<div align="center">

**FIRST AMENDED COMPLAINT**
**SEEKING DECLARATORY JUDGMENT AND OTHER RELIEF**

</div>

Plaintiffs General Motors Corporation ("GM"), GM de Mexico S. de R.L. de C.V. ("GM

Mexico"), and GM of Canada Ltd. ("GM Canada," collectively with GM and GM Mexico,

"Plaintiffs"), by their attorneys, Honigman Miller Schwartz and Cohn LLP, for their First

Amended Complaint Seeking Declaratory Judgment and Other Relief, state:

## PRELIMINARY STATEMENT

Plaintiffs and Defendants Albert Weber GmbH ("Weber GmbH") and Weber Automotive Corporation ("Weber South Carolina," collectively with Weber GmbH, "Defendants") are party to a number of contracts pursuant to which Defendants agreed to supply and Plaintiffs agreed to purchase automotive components (the "Purchase Orders"), subject to various terms and conditions stated therein. Defendants are in breach of those contracts. In particular, and without limitation, Defendants (i) refused and/or indicated that they are unable to supply component parts in accordance with the Purchase Orders without support from and contract adjustments by Plaintiffs that exceed Plaintiffs' obligations, (ii) failed to develop the production capacity for particular components that are subject to individual Purchase Orders, (iii) failed to provide adequate assurances, as requested by Plaintiffs, as to Defendants' capacity to honor the terms of the Purchase Orders in the future, (iv) repeatedly failed to meet deadlines, and otherwise breached the Purchase Orders in material respects. Defendants' breaches and prevailing circumstances threatened Plaintiffs' production and forced Plaintiffs to seek parts elsewhere at a significantly higher cost. In consequence, Plaintiffs have given notice terminating the Purchase Orders. On information and belief, Defendants dispute Plaintiffs' right to terminate the Purchase Orders and otherwise contend that Plaintiffs have obligations to Defendants which Plaintiffs dispute. Accordingly, there exists a current controversy between the parties, and Plaintiffs bring this action seeking an adjudication of the parties' respective rights and responsibilities.

## PARTIES, JURISDICTION, AND VENUE

1.      GM is a Delaware corporation with its principal place of business in Detroit, Michigan.

2.      GM Mexico is a legal entity organized under the laws of Mexico.

2

3.    GM Canada is a legal entity organized under the laws of Canada.

4.    Weber GmbH is a legal entity organized under the laws of Germany that conducts business in the State of Michigan.

5.    Weber South Carolina is a South Carolina corporation with its principal place of business in South Carolina and that conducts business in the State of Michigan.

6.    Defendants have consented to this Court's jurisdiction under the terms of contracts they entered into with Plaintiffs.  See General Terms and Conditions of Purchase Orders ("Terms and Conditions"), ¶ 29 ("Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures.").  Additionally, this Court has personal jurisdiction over Defendants because Defendants conduct a continuous and systematic part of their general business in the State of Michigan and/or because Defendants have transacted business within the State of Michigan or entered into contracts for materials to be furnished in the State of Michigan and this action arises out of that business and/or those contracts.

7.    This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and this is an action between citizens of a State and citizens of foreign states, as well as citizens of different States, under 28 U.S.C. § 1332.

8.    Venue is proper in this Court because Defendants have consented to having this action heard in this Court under the terms of contracts it entered into with Plaintiffs.  See Terms and Conditions, ¶ 29.  Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district under 28 U.S.C. § 1391(a) and Defendants reside in this district under 28 U.S.C. § 1391(c).

3

## GENERAL ALLEGATIONS

### The Parties' Contractual Relationship

9.      GM is an original equipment manufacturer of motor vehicles.

10.     GM Mexico and GM Canada are both affiliates of GM.

11.     Weber GmbH and Weber South Carolina are both in the business of manufacturing specialized component parts for vehicles.

12.     Plaintiffs issued, and Defendants accepted, the Purchase Orders.  Each Purchase Order is governed by its Terms and Conditions.

13.     Under the Purchase Orders, Defendants agreed to and are obligated to manufacture Plaintiffs' requirements of certain component parts (the "Component Parts") according to the material, design and process specifications of Plaintiffs.

14.     The Component Parts Defendants are obligated to supply, consisting primarily of engine parts, are unique and essential components of Plaintiffs' manufacturing operations.  They include, among other things, four types of crankshafts used in one or more engines: the HFV6 3.6L, the HFV6 3.0L, the LS9, the LSA, and the LS7.  Pursuant to the Purchase Orders, and as originally contemplated by the Parties, Defendants were to be the sole supplier to Plaintiffs of the Component Parts.  Due to the critical nature of the Component Parts, disruption in supply could cause a shutdown of Plaintiffs' manufacturing operations, disrupting not only Plaintiffs' business, but the operations of countless other suppliers, dealers, customers, and other stakeholders.

### Weber GmbH Has Not Performed And Cannot
### Perform According to the Purchase Order Terms

15.     Commencing not later than Fall 2007, Weber GmbH has suffered significant financial difficulties.  As a result, Weber GmbH informed GM and GM Mexico that it was

unable to comply with its obligations under the Purchase Orders unless GM and GM Mexico
provided support beyond their obligations under those contracts.

16.     In order to assist Weber GmbH, and to mitigate the damages that would otherwise
be suffered by reason of Weber GmbH's inability to perform, GM and GM Mexico provided
certain accommodations including expedited payments for tooling, expedited payments for
Component Parts, the bailment of certain materials at GM's and GM Mexico's expense, and the
sharing of increased material costs.  GM and GM Mexico also indicated their willingness to
extend their support and otherwise assist Weber GmbH in respects not required under the
Purchase Orders, subject to enumerated terms and conditions including Weber GmbH's ability to
demonstrate financing and other requisites to assure GM and GM Mexico that Weber GmbH
would be able to perform its obligations under the Purchase Orders.  Despite repeated requests,
at no time has Weber GmbH  provided any such evidence.   To date, Weber GmbH has provided
no reason to believe that it will have the ability to produce the Component Parts as required
under the Purchase Orders according to their terms.

17.     In particular, in letters dated April 3, 2008, June 3, 2008, and June 5, 2008,  GM
and GM Mexico requested from Weber GmbH adequate assurance of performance under the
Purchase Orders.  Weber GmbH did not provide and has not provided such assurances.  To the
contrary, Weber GmbH has repeatedly informed GM and GM Mexico that it cannot perform the
Purchase Orders without special accommodations beyond the consideration due under the
Purchase Orders, and has repeated its demands for concessions from GM and GM Mexico in
exchange for production of the Component Parts.   As a result of their inability to rely on Weber
GmbH, GM and GM Mexico have had no option but to develop a replacement supplier at
substantial cost.

18. Additionally, Weber GmbH continues to hold certain forgings that GM bailed with Weber GmbH (the "Inventory") and that Weber GmbH acknowledges GM "paid for directly." On October 7, 2008, counsel for GM sent a letter to Weber GmbH's counsel requesting the return of all Inventory. To date, Weber GmbH has refused to return the Inventory.

**Weber South Carolina Has Not Performed And
Cannot Perform According To the Purchase Order Terms**

19. Weber South Carolina also has repeatedly demonstrated that it is either unwilling or unable to perform its obligations under the terms of Purchase Orders issued by Plaintiffs. Weber South Carolina's deficient performance includes missed shipping dates, recurring failure to meet part approval schedules, and continued inability to meet the capacity requirements established by the Purchase Orders. In addition, Weber South Carolina refused to produce certain Component Parts at the prices stated in the Purchase Orders and to which all parties agreed. In order to mitigate the damages that Plaintiffs would otherwise suffer by reason of Weber South Carolina's refusal to perform, GM and GM Canada had no choice but to accede to Weber South Carolina's demands for price increases.

20. In a letter dated August 21, 2008, Plaintiffs requested from Weber South Carolina adequate assurance of performance under the Purchase Orders. Plaintiffs repeated this request for adequate assurances in a letter dated August 27, 2008 and another letter dated September 9, 2008. Weber South Carolina did not provide and has not provided such adequate assurances that it will perform according to the Purchase Orders' terms. Instead, Weber issued a single letter dated September 11, 2008 in which Weber asserts it will perform pursuant to "the agreement between Weber and GM," but then asserts that Plaintiffs' interpretation of the parties' agreement "is not binding." Plaintiffs' request is not an "interpretation," but mirrors the express terms of the Purchase Orders' requirements. Weber South Carolina's refusal to timely produce the

6

Component Parts in accordance with governing Purchase Orders' terms is not "adequate assurance," and threatens to disrupt GM's and GM Canada's operations and countless employees, vendors, and dealers who rely on them. As a result of their inability to rely on Weber South Carolina, GM and GM Canada have had no option but to develop a replacement supplier at substantial cost.

**Weber GmbH Breached Its Contracts Related to the HFV6 Engine Parts**

21.     As part of Plaintiffs' mandatory quality control processes, Component Parts must successfully meet the requirements of a Production Part Approval Process (often referred to as "PPAP"). In order to secure PPAP approval, Defendants must, among other things, provide Plaintiffs with sample Component Parts that meet all the requisite specifications before full-scale production of the Component Parts can begin. Failure to obtain timely PPAP approval for a particular Component Part constitutes a breach of the relevant Purchase Order, because it represents a failure to establish that a supplier can timely deliver parts which meet Plaintiffs' specifications.

22.     Weber GmbH has agreed and was obligated to obtain full PPAP approval for the Component Parts related to the HFV6 3.6L and HFV6 3.0L engines (collectively, the "HFV6 Engine Parts") by certain dates. Timely completion of PPAP approval is critical because it ties into production schedules, and GM Mexico needs to receive an adequate supply of parts meeting their specifications to maintain planned production schedules.

23.     Weber GmbH has been unable to obtain full PPAP approval for the HFV6 Engine Parts by any of the dates to which it agreed, placing GM Mexico's production at risk.

7

24.    Weber GmbH has also failed to reach the production capacity required by each Purchase Order related to the HFV6 Engine Parts.  Weber GmbH has not presented any viable plan to reach the required capacity for producing the HFV6 Engine Parts in the future.

25.    As a result of Weber GmbH's continued inability to meet GM Mexico's requirements for HFV6 Engine Parts, GM Mexico has been forced to rely on more costly alternatives.

26.    Weber GmbH has also refused to honor the contractual price for the HFV6 Engine Parts.

**Both Defendants Breached Their Contracts Related to the LS9 Engine Parts**

27.    Defendants have agreed that they will obtain full PPAP approval for the Component Parts related to the LS9 engine (the "LS9 Engine Parts") by certain dates.

28.    Defendants failed to obtain full PPAP approval for the LS9 Engine Parts by at least three of the dates to which they agreed.

29.    Defendants' failure to timely obtain full PPAP approval for the LS9 Engine Parts is the direct result of Defendants' refusal or failure to produce the LS9 Engine Parts in conformance with GM's specifications to which the parties agreed.

30.    Defendants' failure to timely obtain full PPAP approval for the LS9 Engine Parts placed the quality of GM's production at risk.

31.    Weber South Carolina has also refused to honor the contractual price for the LS9 Engine Parts.

32.    Weber South Carolina has also failed to reach the production capacity required by each Purchase Order issued to Weber South Carolina and related to the LS9 Engine Parts.

Weber South Carolina has not presented any viable plan to reach the required capacity for producing the LS9 Engine Parts in the future.

33.   As a result of Weber South Carolina's continued inability to meet GM's requirements for LS9 Engine Parts, GM has been forced to develop an alternative supplier at significant cost.

34.   Furthermore, some of the LS9 Engine Parts that Weber South Carolina produced contained serious quality defects which forced GM to recall engines and incur additional costs.

**Both Defendants Breached Their Contracts Related to the LSA Engine Parts**

35.   Defendants have agreed that they will obtain full PPAP approval for the Component Parts related to the LSA engine (the "LSA Engine Parts") by certain dates.

36.   Defendants failed to obtain full PPAP approval for the LSA Engine Parts by at least three of the dates to which they agreed.

37.   Defendants' failure to timely obtain full PPAP approval for the LSA Engine Parts is the direct result of Defendants' refusal or failure to produce the LSA Engine Parts in conformance with Plaintiffs' specifications to which the parties agreed.

38.   Defendants' failure to timely obtain full PPAP approval for the LSA Engine Parts placed the quality of Plaintiffs' production at risk.

39.   Weber South Carolina has also failed to reach the production capacity required by each Purchase Order related to the LSA Engine Parts.  Weber South Carolina has not presented any viable plan to reach the required capacity for producing the LSA Engine Parts in the future.

40.   As a result of Weber South Carolina's continued inability to reach the production capacity required by the Purchase Orders related to the LSA Engine Parts, GM and GM Canada have been forced to develop an alternative supplier at significant cost.

**Weber GmbH Breached Its Contracts Related to the LS7 Engine Parts**

41.     Weber GmbH agreed to produce Component Parts related to the LS7 engine (the
"LS7 Engine Parts") by certain dates.

42.     Weber GmbH failed to deliver the LS7 Engine Parts by at least three dates to
which it agreed.

43.     Weber GmbH's repeated failure to deliver any LS7 Engine Parts threatened to
shut down Plaintiffs' production.

44.     In order to ensure that GM's assembly operations continued, GM had no choice
but to enter into a temporary agreement with another supplier to produce the LS7 Engine Parts at
substantially higher cost.

**GM Terminated the Purchase Orders**

45.     Each of the Purchase Orders includes the following provision (at paragraph 12 of
the Purchase Order Terms and Conditions):

> **TERMINATION FOR BREACH OR NONPERFORMANCE; SALE
> OF ASSETS OR CHANGE IN CONTROL:**
>
> Buyer reserves the right to terminate all or any part of this contract,
> without liability to Seller, if Seller:  (a) repudiates or breaches any of the
> terms of this contract, including Seller's warranties; (b) fails to perform
> services or deliver goods as specified by Buyer; (c) fails to make progress
> so as to endanger timely and proper completion of services or delivery of
> goods; and does not correct such failure or breach within 10 days (or such
> shorter period of time if commercially reasonable under the
> circumstances) after receipt of written notice from Buyer specifying such
> failure or breach.  In addition, Buyer may terminate this contract upon
> giving at least 60 days notice to Seller, without liability to Seller, if Seller
> (i) sells, or offers to sell, a material portion of its assets, or (ii) sells or
> exchanges, or offers to sell or exchange, or causes to be sold or
> exchanged, a sufficient amount of its stock that effects a change in the
> control of Seller.

46.     By notice dated June 18, 2008, GM and GM Mexico notified Weber GmbH that they were terminating certain Purchase Orders pursuant to paragraph 12 of the Terms and Conditions thereof, as well as for Weber GmbH's failure to provide adequate assurance of performance and any and all other contractual provisions or legal doctrines that may also be applicable.

47.     By notice dated September 24, 2008, Plaintiffs notified Weber South Carolina that they were terminating certain Purchase Orders pursuant to paragraph 12 of the Terms and Conditions thereof, as well as for Weber South Carolina's failure to provide adequate assurance of performance and any and all other contractual provisions or legal doctrines that may also be applicable.

48.     Each of the Purchase Orders also includes the following provision (at paragraph 11 of the Purchase Order Terms and Conditions):

> **INSOLVENCY:**
>
> Buyer may immediately terminate this contract without liability to Seller in any of the following or any other comparable events: (a) insolvency of Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of any involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; or (e) execution of an assignment for the benefit of creditors by Seller, provided that such petition, appointment or assignment is not vacated or nullified within 15 days of such event. Seller shall reimburse Buyer for all costs incurred by Buyer in connection with any of the foregoing, including, but not limited to, all attorney's or other professional fees

49.     On information and belief, Weber GmbH is insolvent and Plaintiffs were entitled to terminate the Purchase Orders issued to Weber GmbH by reason of that condition as well.

## COUNT I - REQUEST FOR DECLARATORY JUDGMENT RE
## VALID TERMINATION OF CONTRACT

50.     Plaintiffs reallege and incorporate in full paragraphs 1 through 49 above.

51.     The Purchase Orders were valid and binding contracts.

52.     The Purchase Orders, among other things, require Defendants to timely produce Component Parts according to Plaintiffs' specifications at the contract price.

53.     Defendants have refused and/or failed to timely produce the Component Parts under the prices, conditions and specifications to which the parties agreed.

54.     Defendants have repudiated the Purchase Orders by clearly communicating that they will be unable to perform the Purchase Orders according to their terms in the future.

55.     Defendants have failed to give adequate assurance of future performance when such assurances were properly requested by Plaintiffs.

56.     Defendants have failed to make progress in their performance so as to endanger timely and proper completion of services or delivery of goods.

57.     As a result of these breaches and failures, Plaintiffs were entitled to terminate the Purchase Orders.

58.     On information and belief, Defendants dispute Plaintiffs' right to terminate the Purchase Orders and otherwise contend that Plaintiffs have obligations to Defendants which Plaintiffs dispute.

59.     By reason of the foregoing, there is a case of actual controversy between the parties within the jurisdiction of this Court as required by 28 U.S.C. § 2201(a), and the Court can declare the rights and other legal relations of the parties.

WHEREFORE, Plaintiffs request this Honorable Court enter a declaratory judgment in favor of Plaintiffs and against Defendants, declaring that the Purchase Orders were validly

terminated and that Plaintiffs have no further obligation to Defendants thereunder, and granting
Plaintiffs such further relief as the Court deems proper and just.

## COUNT II – BREACH OF CONTRACTS RELATED TO THE HFV6 ENGINE PARTS

60.    Plaintiffs reallege and incorporate in full paragraphs 1 through 59 above.

61.    The Purchase Orders related to the HFV6 Engine Parts (the "HFV6 Purchase
Orders"), among other things, require Weber GmbH to timely produce the HFV6 Parts according
to GM Mexico's specifications at the contract price.

62.    Weber GmbH has refused and/or failed to timely produce the HFV6 Engine Parts
under the prices, conditions and/or specifications to which the parties agreed.

63.    Weber GmbH's refusal and/or failure to perform in accordance with the terms of
the HFV6 Purchase Orders constitutes a material breach of the HFV6 Purchase Orders.

64.    GM Mexico has been damaged by Weber's breach of the HFV6 Purchase Orders.

WHEREFORE, GM Mexico requests this Honorable Court enter a judgment in favor of
GM Mexico and against Weber GmbH in the amount of GM Mexico's damages arising from
Weber GmbH's breach of the HF Purchase Orders, and grant GM Mexico such further relief as
is proper and just.

## COUNT III – BREACH OF CONTRACTS RELATED TO THE LS9 ENGINE PARTS

65.    Plaintiffs reallege and incorporate in full paragraphs 1 through 64 above.

66.    The Purchase Orders related to the LS9 Engine Parts (the "LS9 Purchase
Orders"), among other things, require Defendants to timely produce the LS9 Engine Parts
according to GM's specifications at the contract price.

67.    Defendants have refused and/or failed to timely produce the LS9 Engine Parts
under the prices, conditions and/or specifications to which the parties agreed.

68.     Defendants' refusal and/or failure to perform in accordance with the terms of LS9 Purchase Orders constitutes a material breach of the LS9 Purchase Orders.

69.     GM has been damaged by Defendants' breach of the LS9 Purchase Orders.

WHEREFORE, GM requests this Honorable Court enter a judgment in favor of GM and against Defendants in the amount of GM's damages arising from GM's breach of the LS9 Purchase Orders, and grant GM such further relief as is proper and just.

## COUNT IV – BREACH OF CONTRACTS RELATED TO THE LSA ENGINE PARTS

70.     Plaintiffs reallege and incorporate in full paragraphs 1 through 69 above.

71.     The Purchase Orders related to the LSA Engine Parts (the "LSA Purchase Orders"), among other things, require Defendants to timely produce the LSA Engine Parts according to Plaintiffs' specifications at the contract price.

72.     Defendants have refused and/or failed to timely produce the LSA Engine Parts under the prices, conditions and/or specifications to which the parties agreed.

73.     Defendants' refusal and/or failure to perform in accordance with the terms of the LSA Purchase Orders constitutes a material breach of the LSA Purchase Orders.

74.     Plaintiffs have been damaged by Weber's breach of the LSA Purchase Orders.

WHEREFORE, Plaintiffs request this Honorable Court enter a judgment in favor of Plaintiffs and against Defendants in the amount of Plaintiffs' damages arising from Defendants' breach of the LSA Purchase Orders, and grant Plaintiffs such further relief as is proper and just.

## COUNT V – BREACH OF CONTRACTS RELATED TO THE LS7 ENGINE PARTS

75.     Plaintiffs reallege and incorporate in full paragraphs 1 through 74 above.

76.     The Purchase Orders related to the LS7 Engine Parts (the "LS7 Purchase Orders"), among other things, require Weber GmbH to timely produce the LS7 Engine Parts according to GM's specifications at the contract price.

77.     Weber GmbH has refused and/or failed to timely produce the LS7 Engine Parts under the prices, conditions and/or specifications to which the parties agreed.

78.     Weber GmbH's refusal and/or failure to perform in accordance with the terms of the LS7 Purchase Orders constitutes a material breach of the LS7 Purchase Orders.

79.     GM has been damaged by Weber GmbH's breach of the LS7 Purchase Orders.

WHEREFORE, GM requests this Honorable Court enter a judgment in favor of GM and against Weber GmbH in the amount of GM's damages arising from Weber GmbH's breach of the LS7 Purchase Orders, and grant GM such further relief as is proper and just.

## COUNT VI – CLAIM AND DELIVERY

80.     Plaintiffs reallege and incorporate in full paragraphs 1 through 79 above.

81.     GM entered into a bailment agreement with Weber GmbH (the "Bailment Agreement") under which GM agreed to bail the Inventory with Weber GmbH.

82.     For purposes of MCR 3.105(C)(2), the value of the Inventory is $1,157,756.75.

83.     Each piece of Inventory is an independent piece of property under MCR 3.105(C)(3).

84.     The Bailment Agreement provides that "GM may take possession of the Inventory at any time and for any reason."

85.     GM has requested the return of all Inventory, but Weber GmbH has refused to relinquish possession of the Inventory.

86.     Under the express terms of the Bailment Agreement and remedies provided in MCL § 600.2920 and/or MCR 3.105, GM is entitled to return of the Inventory.

WHEREFORE, GM requests this Honorable Court enter a judgment in favor of GM and against Weber GmbH (a) ordering Weber GmbH to specifically perform its obligations under the Bailment Agreement, including, but not limited to, granting GM and its designees immediate possession of the Inventory; (b) granting GM recovery of damages sustained by the unlawful detention of the Inventory; and (c) granting GM such other relief as the Court deems proper.

## COUNT VII – CONVERSION

87.     Plaintiffs reallege and incorporate in full paragraphs 1 through 86 above.

88.     GM owns the Inventory.

89.     GM, as owner of the Inventory and pursuant to its rights under the Bailment Agreement, requested that Weber GmbH grant GM immediate possession of the Inventory.

90.     Weber GmbH has wrongfully exerted dominion and control over GM's property by refusing to surrender possession of the Inventory to GM.

91.     As a result of Weber GmbH's wrongful assertion of dominion and control over the Inventory, GM has been damaged.

WHEREFORE, GM requests this Honorable Court enter a judgment in favor of GM and against Weber GmbH (a) granting GM recovery of damages arising from Weber GmbH's

conversion of the Inventory; (b) granting GM treble damages pursuant to statute; and (c) granting

GM such other relief as the Court deems proper.

<div style="margin-left: 40%;">

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Plaintiffs

</div>

Dated: October 16, 2008

<div style="margin-left: 40%;">

By:____/s Adam L. Kochenderfer_____
Robert B. Weiss (P28249)
Mark A Stern (P36812)
Adam L. Kochenderfer (P65757)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7562
Facsimile: (313) 465-7563
E-Mail: akochenderfer@honigman.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2008, I electronically filed the foregoing paper(s)

with the Clerk of the Court using the ECF system which will send notification of such filing to

all attorneys of record.

<div style="margin-left: 40%;">

s/ Adam L. Kochenderfer
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, MI   48226
(313) 465-7562
akochenderfer@honigman.com
(P65757)

</div>

DETROIT.3173577.10

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GENERAL MOTORS CORPORATION,
a Delaware corporation, GM DE MEXICO
S. DE R.L. DE C.V., a Mexican entity, and
GM OF CANADA LTD., a Canadian entity,

       Plaintiffs,

v.

ALBERT WEBER GMBH, a German entity,
and WEBER AUTOMOTIVE CORPORATION,
a South Carolina corporation,

       Defendants,

- and -

ALBERT WEBER GMBH, a German entity,
WEBER AUTOMOTIVE CORP. f/k/a
ALBERT WEBER MANUFACTURING CO.,
a South Carolina corporation,

       Defendants/Counter-Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
a Delaware corporation, and GM DE MEXICO
S. DE R.L. DE C.V., a Mexican entity,

       Plaintiffs/Counter-Defendants.

Case No. 2:08-cv-12671

Hon. Lawrence P. Zatkoff
Mag. Steven D. Pepe

_____/

## CASE SUMMARY

Pursuant to the Court's Notice of Scheduling Conference dated June 3, 2009 and Fed. R.

Civ. P. 26(f), the parties submit the following:

1.    **Statement of claim or claims of plaintiff(s),**
      **including legal theories, and basis of federal jurisdiction.**

General Motors Corporation, GM de Mexico S. de R.L. de C.V. and GM of Canada Ltd.

(collectively, "GM") seek a declaratory judgment stating the parties' rights and responsibilities

09-50026-mg   Doc 7047-3   Filed 09/21/10   Entered 09/21/10 17:01:41   Exhibit 1 -
Amended Complaint and Case Summary   Pg 19 of 30
Case 2:08-cv-12671-LPZ-SDP   Document 14   Filed 07/30/2009   Page 2 of 13

with respect to certain contracts with Albert Weber GmbH and Weber Automotive Corporation
(collectively, "Weber"). Under these contracts (the "Purchase Orders"), Weber agreed to supply
and GM agreed to purchase automotive components, subject to various terms and conditions.
GM alleges that Weber, among other things, (i) refused and/or indicated that they were unable to
supply component parts in accordance with the Purchase Orders without support from and
contract adjustments by GM that exceeded GM's obligations, (ii) failed to develop the
production capacity for particular components that are subject to individual Purchase Orders, (iii)
failed to provide adequate assurances, as requested by GM, as to Weber's capacity to honor the
terms of the Purchase Orders in the future, (iv) repeatedly failed to meet deadlines, and otherwise
breached the Purchase Orders in material respects. As a result of these breaches, GM gave
notice terminating the Purchase Orders.

Jurisdiction is vested with this Court because the amount in controversy, exclusive of
interest and costs, exceeds $75,000 and this is an action between citizens of a State and citizens
of foreign states, as well as citizens of different States, under 28 U.S.C. § 1332.

2.    **Statement of claim or claims and defense of defendant(s), and  third-party
      plaintiff(s), and defense of third-party defendant(s), including legal theories.**

In 2006 and 2007, Weber and GM entered into a series of purchase order contracts for the
supply of engine components on several GM programs. Specifically, GM Corp issued purchase
orders to Weber for the supply of cylinder blocks for the LSA and LS9 programs and for the
supply of crankshafts for the LST, LS8 and LS7 programs.

In addition, after significant negotiations, GM Mexico issued three purchase orders to
Weber for the supply of crankshafts for High Feature V6 engines ("HFV6") to be assembled in
Ramos, Mexico. Weber alleges that as consideration for Weber's significant capital investment
involved in both creating and dedicating a crankshaft assembly line largely for the HFV6 engines

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 20 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 3 of 13

for GM Mexico's benefit, GM Mexico agreed (1) to delete the provision of its terms and conditions which would have allowed it to terminate Weber for convenience, and (2) to make Weber the exclusive supplier of the HFV6 crankshafts to GM Mexico's Ramos, Mexico facility.

Weber claims that thereafter, it performed its material obligations under the purchase orders, but nonetheless, in 2008, GM formally terminated all purchase orders for crankshafts, including the HFV6 Purchase Orders, and certain other engine components. GM filed this lawsuit the same day that it terminated Weber, and took an offset against payable to Weber for "professional fees" in the amount of $800,000.00. GM's claim of breach by Weber, and its Declaratory Action, are merely a pretext to attempt to justify its wrongful termination of Weber.

Accordingly, Weber disputes GM's right to terminate the Purchase Orders and otherwise contends that GM has obligations to Weber which GM disputes. As a result, Weber counterclaimed against GM de Mexico S. de R.L. de C.V. ("GM Mexico") and General Motors Corporation (collectively, "Counter-Defendants"). Weber acknowledges that its Counterclaims against General Motors Corporation cannot go forward at this time as a result of the automatic stay imposed by 11 U.S.C. § 362, but is proceeding on its Counterclaim against GM Mexico.

In sum, Weber alleges the termination of the Purchase Orders was a breach of contract, and seeks damages for Counter-Defendants' alleged breaches of contract.

## 3.    Actual damages sought.

GM seeks a declaratory judgment, as well as treble damages for the conversion of inventory valued at approximately $1,157,756.75.

Weber seeks damages of $211,729,659.00, comprising:

      1.    $162,136,455 against GM Mexico for breach of the HFV6 Purchase Orders, comprising:

        a.     $52,320,608 for the HFV6 3.0L; and

        b.     $109,815,847 for the HFV6 3.6L.

2.     $29,350,661 against GM Mexico for breach of the V8 LSA, LST, and LS8 Crankshaft Purchase Orders;

3.     $9,499,419 against GM Corp for breach of the V8 LS7 Crankshaft Purchase Order;

4.     $1,859,210 against GM Corp for breach of the V8 LS9 Crankshaft Purchase Order;

5.     $5,214,686 against GM Mexico for breach of the V8 LSA and LS7 Cylinder Block Purchase Order; and

6.     $3,669,228 against GM Corp for breach of the V8 LS9 Cylinder Block Purchase Order.

Weber acknowledges that the claims against GM Corp are stayed under 11 U.S.C. § 362.

**4.**     **Expected witnesses.**

     **A.**     **GM**

General Motors Corporation's recent bankruptcy filing makes it difficult for GM to identify each and every possible witness at this early stage of the litigation. Former employees with knowledge of the relevant facts may be difficult to locate. GM will continue its efforts to identify such witnesses and, state the following list of known likely witnesses that will be supplemented as discovery progresses:

     1.     Robert Strimpel

     2.     Jackie Averett

     3.     Mark Fischer

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 22 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 5 of 13

4.    Henry Hall

5.    Venky Srinivasan

6.    John Berg

7.    Nancy Shilling

8.    Ben Long

9.    Arthuro Peniche

10.    Rafael Morado

11.    Antero Rodarte

12.    Saber Haidous

13.    Collette Shakespear

14.    Hans-Michael Wittmann

15.    Wolfgang Wiest

16.    Maik Walther

17.    Daniel Weber

18.    Christian Weber

19.    Paulino Bispo

20.    Udo Hahnel

21.    Markus Lamprecht

22.    Albert Weber

23.    Christine Pregler

24.    Daniela Wolf

B.    **Weber**

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 23 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 6 of 13

Weber interprets the Court's "expected witnesses" requirement as requesting only those witnesses actually expected to testify at trial, as opposed to every conceivable witness as would be listed on a witness list. Most of the witnesses that Weber is most likely to call are subsumed within the GM's list above. Weber also expects to call: (1) third parties to testify regarding the issue of responsibility for purchasing the forgings; (2) third parties to testify regarding the dispute on the resourcing of the LS9 Bearing Cap, and

1.    Kari Kuvaja

2.    Rafael Morado

3.    Jim Cremonesi

4.    Diane Terrian

5.    Martin Horneck

6.    Stuart Johnson

7.    Peter Emling'

8.    Mark Chapin

9.    Paul Gelazin

10.    Victor Meseguer

11.    Jennifer.o.Daneshgari

12.    Richard Sun

13.    Kumar Vedamuthu

14.    Jim Chicosky

15.    Daniel Ganger

16.    Ryan Demers

17.    Dave Thompson

18.    Dan Wilson

19.    John Berg

20.    Gary Carlyle

21.    Markus Kramer

22.    ~~Robert Strimpel~~ ( u b v )

23.    Roland Heuke

24.    Randy West

25.    Arnhold Ludwig

5.    <u>Whether any expert witnesses are anticipated and in what subject area.</u>

The parties anticipate that expert witnesses may be necessary to address, among other

things, damages, liability, industry standards, and industry practices.

6.    <u>Amount of time needed for discovery and summary of discovery conducted to date.</u>

(a)    Discovery will be needed on, among others, issues of liability and
damages on the claims in the complaint, the claims in the counterclaim,
and the various defenses. The primary issues are the terms of the various
contracts at issue, whether the contracts were breached or properly
terminated, and the damages that flow from any breach.

(b)    All fact discovery shall commence in time to be completed by February
26, 2010. All expert discovery shall commence in time to be completed
by April 23, 2010. The parties state these dates based on the Court's
practice guidelines, but believe that the complexities of this case may
necessitate additional time for discovery. Those complexities include: (1)
the parties are located in four different countries; (2) the volume of
information in electronic documents that must be searched and produced;
(3) the high volume of all documents, regardless of form; and (4) the
belief that many documents may be written in foreign languages that will
require translation.

(c)    Both GM and Weber already issued interrogatories and requests for
documents.

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 25 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 8 of 13

(d)    Maximum of twenty-five (25) interrogatories by GM and Weber each. Responses shall be due thirty (30) days after service absent an agreement of the parties regarding any particular responses.

(e)    Maximum of twenty-five (25) requests for admission by GM and Weber each, except for requests that relate solely to the authentication of documents, which shall be unlimited. Responses shall be due thirty (30) days after service absent an agreement of the parties regarding any particular responses.

(f)    Maximum of twelve (12) depositions of fact witnesses by GM and twelve (12) depositions of fact witnesses by Weber. At this time, GM does not stipulate that Weber may take the depositions of twenty-two fact witnesses, despite Weber's list of twenty-two anticipated deponent witnesses stated herein. Maximum of three (3) depositions of retained expert witnesses by GM and three (3) depositions of retained expert witnesses by Weber. This limitation on retained expert depositions does not apply to any necessary translator or preclude the calling of employees of any party for opinion testimony.

(g)    The duration of each deposition will be limited to a maximum of seven (7) hours.

(h)    Reports from experts under Rule 26(a)(2) are due March 5, 2010. Any rebuttal reports are due by March 26, 2010. Expert depositions will be taken between March 29 and April 23, 2010.

(i)    Supplementations will be made seasonably per Fed. R. Civ. P. 26(e), with final supplementation due by August 2, 2010.

## 7.    **Anticipated depositions.**

### A.    **GM**

General Motors Corporation's recent bankruptcy filing makes it difficult for GM to identify each and every possible deposition that it will take at this early stage of the litigation. The parties are still in the process of identifying deponents who were formerly employed by GM. At this stage, GM states the following list of witnesses that it may wish to depose, which will be supplemented as discovery progresses:

1.    Hans-Michael Wittmann

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 26 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 9 of 13

    2.     Wolfgang Wiest

    3.     Malik Walther

    4.     Daniel Weber

    5.     Christian Weber

    6.     Paulino Bispo

    7.     Udo Hahnel

    8.     Markus Lamprecht

    9.     Albert Weber

    10.    Christine Pregler

    11.    Daniela Wolf

**B.    Weber**

Like GM, Weber will not know exactly which deposition it wants until discovery progresses further. At this time, Weber anticipates the following possible deponents:

    1.     Nancy Shilling

    2.     Kari Kuvaja

    3.     Jackie Averett

    4.     Henry Hall

    5.     Ben Long

    6.     Arthuro Peniche

    7.     Antero Rodarte

    8.     Jim Cremonesi

    9.     Diane Terrian

    10.    Martin Horneck

09-50026-mg   Doc 7047-3   Filed 09/21/10   Entered 09/21/10 17:01:41   Exhibit 1 -
Amended Complaint and Case Summary   Pg 27 of 30
Case 2:08-cv-12671-LPZ-SDP   Document 14   Filed 07/30/2009   Page 10 of 13

11.  Peter Emling

12.  Mark Chapin

13.  Paul Gelazin

14.  Jennifer.o.Daneshgari

15.  Richard Sun

16.  Kumar Vedamuthu

17.  John Berg

18.  Gary Carlyle

19.  Markus Kramer

20.  Robert Strimpel

21.  Roland Heuke

22.  Arnhold Ludwig

## 8.  Relationship to other cases.

Other than the bankruptcy case of General Motors Corporation and the effect of the automatic stay of 11 U.S.C. § 362, there is no relationship between this litigation and other cases.

## 9.  Necessity of amendments to pleadings:<br>additional parties, third-party complaints, etc.

Weber may wish to file an Amended Counter-Claim.  The parties propose to file any amended pleadings or join any additional parties by September 1, 2009.

## 10.  Anticipated motions, including whether dispositive motions are anticipated.

Both parties anticipate that they will file at least one dispositive motion as the litigation progresses.

## 11.  Anticipated cost of litigation.

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 28 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 11 of 13

Due to the complexities of the case, the large number of documents and witnesses, and the fact that the parties are located in four different countries, the parties anticipate significant costs to this litigation. Discovery has only recently commenced, and the parties have not formulated estimated costs at this stage.

**12.    Whether case evaluation is desired.**

Neither party wishes to participate in case evaluation at this time, but do not object to reconsidering the issue once litigation progresses.

**13.    Initial Disclosures.**

The parties will complete by August 25, 2009, the initial disclosures required by Rule 26(a)(1).

**14.    The parties have further agreed upon the following:**

(a)    A final pretrial conference shall be held before the trial at a time to be scheduled by the Court.

(b)    All potentially dispositive motions shall be filed by May 28, 2010.

(c)    The parties have engaged in settlement discussions that have been unsuccessful to date, but remain open to the possibility of settlement at a later juncture.

(d)    The parties may consider the use of mediation or other forms of alternative dispute resolution as the litigation progresses.

(e)    The parties will file Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists on or before August 2, 2010.

(f)    Any objections under Rule 26(a)(3)(B) must be filed on or before August 16, 2010.

(g)    The proceeding should be ready for trial by September 1, 2010. The trial is expected to take approximately ten days.

(h)    No party requested a trial by jury, and the right to a jury is therefore waived by all parties.

09-50026-mg    Doc 7047-3    Filed 09/21/10    Entered 09/21/10 17:01:41    Exhibit 1 -
Amended Complaint and Case Summary    Pg 29 of 30
Case 2:08-cv-12671-LPZ-SDP    Document 14    Filed 07/30/2009    Page 12 of 13

(i)    Electronically stored information that any party is required to produce
under the Federal Rules of Civil Procedure will be produced in a hard
copy form or its native format. No party is required to produce metadata
unless a party requests metadata in connection with a specific, individual
document.

(j)    GM and Weber shall each call no more than three (3) retained expert
witnesses at trial. This limitation on retained expert testimony does not
apply to any necessary translator or preclude the calling of employees of
any party for opinion testimony.

(k)    The parties will attempt to agree on the terms of a protective order before
the date that any discovery responses are due to address issues of
confidentiality as well as inadvertent disclosure of privileged material.


**SUBMITTED BY:**

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Plaintiffs/Counter-Defendants


By:    /s/ Adam L. Kochenderfer
       Robert B. Weiss (P28249)
       Mark A Stern (P36812)
       Adam L. Kochenderfer (P65757)
2290 First National Building
Detroit, MI 48226
(313) 465-7000
akochenderfer@honigman.com


BROOKS WILKINS SHARKEY & TURCO PLLC
Attorneys for Defendants/Counter-Plaintiffs


By:    /s/ Daniel N. Sharkey w/consent
       Daniel N. Sharkey (P53837)
401 South Old Woodward, Suite 460
Birmingham, Michigan 48009
(248) 971-1712
Sharkey@bwst-law.com


12

09-50026-mg   Doc 7047-3   Filed 09/21/10   Entered 09/21/10 17:01:41   Exhibit 1 -
Case 2:08-cv-120PHLF-2-SDPP   Document 14   Filed 07/30/2009   Page 13 of 13
Amended Complaint and Case Summary   Pg 30 of 30

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2009, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ Adam L. Kochenderfer
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, MI  48226
(313) 465-7562
akochenderfer@honigman.com
(P65757)

DETROIT.3780660.1