Hearing Date and Time:  October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Deadline:  October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                             :
In re:                           :     Chapter 11
                             :
MOTORS LIQUIDATION COMPANY, *et al.,* :     Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*     :     (Jointly Administered)
                             :
             Debtors.        :     Honorable Robert E. Gerber
                             :
------------------------------------------------------- x

## NOTICE OF HEARING ON FIRST CONSOLIDATED APPLICATION OF BRADY C. WILLIAMSON, FEE EXAMINER, AND GODFREY & KAHN, S.C., COUNSEL TO THE FEE EXAMINER, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED FROM DECEMBER 28, 2009 THROUGH MAY 31, 2010 AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES <u>INCURRED FROM DECEMBER 28, 2009 THROUGH AUGUST 31, 2010</u>

**PLEASE TAKE NOTICE** that upon the September 27, 2010 *First Consolidated*

*Application of Brady C. Williamson, Fee Examiner, and Godfrey & Kahn, S.C., Counsel to the*

*Fee Examiner, for Interim Allowance of Compensation for Professional Services Rendered from*

*December 28, 2009 Through May 31, 2010 and Reimbursement of Actual and Necessary*

*Expenses Incurred From December 28, 2009 Through August 31, 2010* (the "**Application**") of

the Fee Examiner in the above-referenced chapter 11 cases, appointed on December 23, 2009, a

hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in

Room 621 of the United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, New York 10004, on **October 26, 2010 at 9:45 a.m. (Prevailing**

**Eastern Time)**, or as soon thereafter as counsel may be heard.

       **PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, if

any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the

Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds, shall be filed with the

Bankruptcy Court electronically in accordance with General Order M-242 (which may be found

at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and

by all other parties in interest, on 3.5 inch disk, preferably in Portable Document Format (PDF),

or any other Windows-based word processing format (with two hard copies delivered directly to

Chambers) and shall be served upon: (i) the chambers of the Honorable Robert E. Gerber, One

Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges,

LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Stephen Karotkin, and Joseph H. Smolinsky); (iii) the Debtors, c/o Motors Liquidation

Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (iv) General

Motors Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S.

Buonomo); (v) Cadwalader, Wickersham & Taft LLP, attorneys for the United States

Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn:

John J. Rapisardi); (vi) the United States Department of the Treasury, 1500 Pennsylvania

Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias); (vii) Vedder Price,

P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New

York, 10019 (Attn: Michael J. Edelman and Michael L. Schein); (viii) Kramer Levin Naftalis &

Frankel LLP, attorneys for the statutory committee of unsecured creditors (the **"Committee"**),

1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer,

Robert Schmidt, Lauren Macksound, and Jennifer Sharret); (ix) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York, 10004 (Attn: Tracy Hope Davis); (x) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers

Street, Third Floor, New York, New York, 10007 (Attn: David S. Jones and Natalie Kuehler);

(xi) Caplin & Drysdale, Chartered, attorneys for the Official Committee of Unsecured Creditors

Holding Asbestos Related Claims (the **"Asbestos Claimants' Committee"**), 375 Park Avenue,

35th Floor, New York, New York 10152-3505 (Attn: Elihu Inselbuch and Rita C. Tobin);

(xii) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for

Dean M. Trafelet, the legal representative for holders of future asbestos personal injury claims

(the **"Future Claimants' Representative"**), 2323 Bryan Street, Suite 2200, Dallas, Texas 75201

(Attn: Sander L. Esserman and Robert T. Brousseau), and (xiii) Godfrey & Kahn, S.C., 780

North Water Street, Milwaukee, Wisconsin 53202 (Attn: Timothy F. Nixon), **so as to be filed**

**and received no later than** <u>**October 19, 2010, at 4:00 p.m.**</u> **(Prevailing Eastern Time)** (the

"**Objection Deadline**").

       **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served

with respect to the Application, the Fee Examiner may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order that

accompanies the Application, which order may be entered with no further notice or opportunity

to be heard offered to any party.

Dated:  Madison, Wisconsin
         September 27, 2010.

                              GODFREY & KAHN, S.C.


                    By:      */s/ Katherine Stadler*
                              Timothy F. Nixon (TN 2644)
                              Katherine Stadler (KS 6831)

                              GODFREY & KAHN, S.C.
                              780 North Water Street
                              Milwaukee, Wisconsin 53202
                              Telephone: (414) 273-3500
                              Facsimile: (414) 273-5198
                              E-mail: tnixon@gklaw.com
                                      kstadler@gklaw.com

                              *Attorneys for the Fee Examiner*


5457786_1

4

**Hearing Date and Time:  October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                     :

In re:                                :     Chapter 11
                                      :

MOTORS LIQUIDATION COMPANY, *et al.,*   :     Case No. 09-50026
        f/k/a General Motors Corp., *et al.,*     :     (Jointly Administered)
                                      :
                 Debtors.            :     Honorable Robert E. Gerber
                                      :
--------------------------------------------------------- x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FILED UNDER**
**11 U.S.C. § 330 FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**FIRST INTERIM FEE APPLICATION**

Name of Applicants:            Brady C. Williamson, Fee Examiner
                                   Godfrey & Kahn, S.C., Counsel to the Fee Examiner

Time Period:                 December 28, 2009 through May 31, 2010

Current Application:          Total Fees Requested:  $673,271.50
                                       (through May 31, 2010)

                                       Total Expenses Requested:  $59,699.73
                                       (through August 31, 2010)

Prior Applications:            None.

Interim Payments from Debtors:    None.

## Summary of Professionals and Paraprofessionals Providing Services

| Name of Professional | Practice Group(s) and Year of Attorney Admission | | Hourly Billing Rate | Total Billed Hours | Total Proposed Compensation |
|---|---|---|---|---|---|
| **Shareholders** | | | | | |
| Brady C. Williamson | Bankruptcy | 1975 | $495 | 190.2 | 94,149.00 |
| Timothy F. Nixon | Bankruptcy | 1991 | $450 | 18.5 | 8,325.00 |
| Katherine Stadler | Litigation/Bankruptcy | 1997 | $410 | 290.8 | 119,228.00 |
| Eric J. Wilson | Litigation | 1994 IL<br>2003 WI | $390 | 204.1 | 79,599.00 |
| **Special Counsel** | | | | | |
| Carla O. Andres | Bankruptcy | 1989 OH<br>1993 WI | $350 | 478.7 | 167,545.00 |
| **Associates** | | | | | |
| Monica Santa Maria | Litigation | 2008 | $205 | 197.9 | 40,569.50 |
| Claire Finando | Corporate | 2008 | $205 | 18.6 | 3,813.00 |
| Peggy L. Heyrman | Bankruptcy | 2009 | $205 | 74.2 | 15,211.00 |
| **Paraprofessionals** | | | | | |
| Jill Bradshaw | Research | | $170 | 23.7 | 4,029.00 |
| Zerithea G. Raiche | Bankruptcy paralegal | | $160 | 414.2 | 66,272.00 |
| Nicole Talbot Settle | Litigation paralegal | | $160 | 259.0 | 41,440.00 |
| Maribeth Roufus | Bankruptcy paralegal | | $160 | 97.6 | 15,616.00 |
| Jenna Stiegler | Litigation paralegal | | $150 | 116.5 | 17,475.00 |

**Blended Hourly Rates:**

**All attorneys:  $358.75**

**All professionals/paraprofessionals:  $282.41**

2

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         :
In re:                                                   :    Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.,*  :    Case No. 09-50026
        f/k/a General Motors Corp., *et al.,*            :    (Jointly Administered)
                                                         :
                              Debtors.                   :    Honorable Robert E. Gerber
                                                         :
-------------------------------------------------------- x

**FIRST CONSOLIDATED APPLICATION OF BRADY C. WILLIAMSON, FEE
EXAMINER, AND GODFREY & KAHN, S.C., COUNSEL TO THE FEE EXAMINER,
FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED FROM DECEMBER 28, 2009 THROUGH MAY 31, 2010
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
<u>FROM DECEMBER 28, 2009 THROUGH AUGUST 31, 2010</u>**

**TO:    THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

(the "**Fee Examiner**"), and Godfrey & Kahn, S.C. ("**Godfrey & Kahn**"), Counsel to the Fee

Examiner (collectively, the "**Applicants**"), submit this *First Consolidated Application of*

*Brady C. Williamson, Fee Examiner, and Godfrey & Kahn, S.C., Counsel to the Fee Examiner,*

*for Interim Allowance of Compensation for Professional Services Rendered from December 28,*

*2009 Through May 31, 2010 and Reimbursement of Actual and Necessary Expenses Incurred*

*From December 28, 2009 Through August 31, 2010* (the "**Fee Application**") pursuant to

11 U.S.C. §§ 330 and 331 and Fed. R. Bankr. P. 2016.  The Fee Application requests interim

allowance of compensation for professional services from December 28, 2009 through May 31,

2010 and reimbursement of necessary and actual expenses from December 28, 2009 through

August 31, 2010 (the "**Compensation Period**").

## BACKGROUND

1.    Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates

("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors

are authorized to operate their businesses and manage their properties as debtors in possession

pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.    On June 3, 2009, the United States Trustee for the Southern District of New York

appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the

"**Creditors' Committee**").

3.    On August 7, 2009, the Court entered its *Order Pursuant to 11 U.S.C. §§ 105(a)*

*and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of*

*Professionals* [Docket 3711] (the "**Compensation Order**").

4.    As of September 1, 2010, twenty-two professionals either have or have had

applications for compensation pending before the Court for approval (collectively, the "**Retained**

**Professionals**").

5.    On December 23, 2009, the United States Trustee, the Debtors, and the Creditors'

Committee proposed by stipulation the appointment of Brady C. Williamson as examiner (the

"**Fee Examiner**") and, without objection and through the Fee Examiner order entered that same

4

day, the Court approved the appointment. Pursuant to that order, the Fee Examiner was charged with submitting periodic reports to the Court, the U.S. Trustee, the Debtors, the Creditors' Committee and each Retained Professional applying for compensation and reimbursement of expenses pursuant to the Compensation Order. He also was charged with addressing with each Retained Professional any issue relating to the professional's application for compensation and reimbursement of expenses in advance of filing a report regarding that application.

6.      On January 5, 2010, the Fee Examiner submitted an *Application for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

7.      On January 29, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010* ("**Stuart Maue**" or the "**Auditor**") [Docket No. 4910]. The Court entered an order authorizing Stuart Maue's limited retention on February 17, 2010 [Docket No. 5005], and it has since twice extended that retention. *See In re Motors Liquidation Company*, First Interim Fee Hr'g Tr. at 15:1-4, No. 09-50026 (Bankr. S.D.N.Y. April 29, 2010, 5:24 P.M.) [Docket No. 5699]; *In re Motors Liquidation Company*, Second Interim Fee Ruling Tr. at 38:21-39:2, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369]. The Court also has entered an order [Docket No. 6342] approving Stuart Maue's first application for compensation, totaling $199,266.21.

8.      On August 31, 2010, the Debtors filed a plan and disclosure statement. Plan confirmation is expected before—or soon after—year-end.

5

## SUMMARY STATEMENT

This Fee Application covers the first five months of the Fee Examiner's work and that of his legal counsel from December 28, 2009 through May 31, 2010.  During that period, 15 professionals submitted fee applications and reimbursement requests, totaling $67,267,095.18. The Court conducted its first hearing on the applications on April 29, 2010 and, during May, the Fee Examiner and his counsel began their analysis of the second round of fee applications, which the Court then heard on June 29, 2010.

9.      The Fee Examiner and his counsel request Court approval—pursuant to the U.S. Bankruptcy Code, the U.S. Trustee Guidelines, and the orders approving the Fee Examiner's retention and that of his counsel—of a total of $673,271.50 in fees and $59,699.73 in expenses. With the accompanying detailed statement of time spent and expenses incurred, the Fee Examiner and his counsel submit this application and summary:

- In the exercise of billing judgment, the Fee Examiner and his counsel have written off 320.6 hours, representing $86,609.50, to avoid billing the estate for duplicative time, time appropriately characterized as introductory, or time that is otherwise non-compensable.  Most of those entries do not appear on the time detail submitted with this application.  The Fee Examiner and his counsel also have not charged time, in this interim request, attributable to the memorandum they prepared generally summarizing the law applicable to the fee approval process [Docket No. 5463].  The time spent on that memorandum still appears on the detailed time records, but the entries are marked as not charged.

- Travel time has been discounted 50 percent (pursuant to local practice).  There are no charges for local ground transportation, except in connection with travel to and from airports.

- Time recorded by transient billers—those who spent fewer than 10 hours on the case over the compensation period—has been eliminated.

- There has been no increase in the hourly rates established in the Applicants' retention orders.  In addition, no timekeeper has been billed at a higher rate for services provided in this case than their respective rate for Milwaukee-based clients[1] in

---

[1] Godfrey & Kahn, S.C. is a Milwaukee-based law firm.

non-bankruptcy cases.  Some timekeepers have been billed at lower rates in these cases than rates generally applicable to Milwaukee-based clients in non-bankruptcy cases.

- Computerized legal research has been generally billed as an expense only when the research session has exceeded $250.  For sessions exceeding $250, the subject matter of the research has been disclosed.

- Where the time entries reflect meetings or conferences, whether in person or by telephone, the subject matter of the meeting and the participants are generally noted—unless the meetings are purely internal between or among members of the Godfrey & Kahn team (*see infra*, ¶ 15) in which case only the subject matter is noted to reduce redundancy and length.

- No hotel charge exceeds $475.00, and no reimbursement request for a meal charge exceeds $20.00 for each meal and for each person.[2]  Travel has been in coach class accommodations, except on one leg of the Fee Examiner's January 11, 2010 trip to New York, which was upgraded using personal frequent flyer miles at no expense to the estate.

- The fee application and detail include no time for reviewing, editing, or categorizing daily time records.  The preparation of the time records themselves has not been—and will not be—billed in any way to the estate.

## PRELIMINARY STATEMENT

10.    Debtors' cases are, by any measure,  among the largest and most complex chapter 11 filings in history.  They are largely funded by U.S. taxpayers.

11.    In light of the size and complexity of the cases and the potential costs and expenses of administering the compensation system for professionals, the U.S. Trustee proposed to the Debtors and to the Creditors' Committee that a Fee Examiner be appointed to review applications for compensation and reimbursement filed by professionals and to draft reports regarding those fee applications.  The stated goal was to assist the U.S. Trustee and, ultimately,

---

[2] In one instance, a travel meal charge (dated May 26, 2010) totaling $27.40 was inadvertently left unadjusted.  The same day, however, the same attorney charged only one other meal for $4.44.  In all other cases, meal charges have been reduced to no more than $20.00 a person per meal.

the Court in determining the compensation for professionals retained to provide services and to help provide transparency and accountability in the administration of these cases.

12.    To date, the Applicants have examined 42 first, second and third interim fee applications, consisting of more than 10,000 pages describing the services provided, detailed time records and supporting documentation for expenses.  That review has been supported, in some instances, by the electronic auditing expertise provided by Stuart Maue.  However, many of the applications were not subject to Stuart Maue audit—with the Fee Examiner and Godfrey & Kahn performing every aspect of bill review.

13.    The fee review process has involved multiple steps.  On the basis of the prevailing case law and standards, Godfrey & Kahn developed a list of billing practices of potential concern—incorporating them into a protocol for fee and expense review.  That protocol has substantially evolved, and the underlying research has been periodically updated and shared with the Retained Professionals to address and incorporate their questions and responses to the Fee Examiner as well as this Court's application of the fee standards.  The protocol has been applied to each fee application to identify an initial universe of billing practices involving the reasonableness or necessity of work.  Extensive discussion between the Fee Examiner and his counsel narrowed the issues for each application.

14.    The Fee Examiner, through his counsel and directly, engaged in communications with all Retained Professionals regarding their fee applications; sought additional explanations and supporting documentation from many of them; and negotiated significant stipulated reductions.  In many instances, these efforts—documented in a series of letters, advisory reports and filed reports ("**Recommendation Reports**")—avoided the need for a contested hearing.  Of the 42 applications filed to date and subject to review by the Fee Examiner, the Fee Examiner

8

and the Retained Professional have consensually resolved or expect to resolve objections

involving more than half.

15.    Only a small number of Godfrey & Kahn professionals work on these matters,

and their assignments have been designed to reduce, to the extent possible, duplication of effort.[3]

The bulk of the work has been performed by the Fee Examiner along with Katherine Stadler,

Carla O. Andres, Eric J. Wilson, Monica Santa Maria, Peggy L. Heyrmann, Zerithea G. Raiche,

and Nicole Talbot Settle.

16.    Brady C. Williamson is a member of the National Bankruptcy Conference, the

American College of Bankruptcy, and the American Bankruptcy Institute.  In 1996 and 1997, he

chaired the National Bankruptcy Review Commission on the appointment of the President of the

United States.  He has more than 30 years experience as an attorney, and he has appeared before

the U.S. Supreme Court, the U.S. Courts of Appeal, and federal district and bankruptcy courts in

a variety of jurisdictions.

17.    Eric J. Wilson, a shareholder, has been almost exclusively responsible for

reviewing the applications of Weil, Gotshal & Manges LLP, refining the Auditor reports,

communications, and drafting the Recommendation Reports for that firm.  Carla O. Andres,

Special Counsel, has been almost exclusively responsible for reviewing  fee applications from

non-legal firms and several smaller law firms.  Finally, Katherine Stadler, a shareholder, worked

almost exclusively reviewing fee applications from several legal firms, particularly Kramer

Levin Neftalis & Frankel, LLP, as well as assisting the Fee Examiner in his efforts to ensure

---

[3] The billing records have also been reviewed in detail to try to ensure that duplicative or otherwise unproductive time has not been charged to the estate.

uniformity of treatment.  Each of these attorneys also worked with litigation and bankruptcy associates and paralegals, as appropriate, to increase efficiency and reduce the cost to the estate.

18.    Each of these three supervising attorneys brings a different background and perspective to their work.  Mr. Wilson, a former (Wisconsin) Assistant Attorney General and Assistant United States Attorney in Chicago, has more than 12 years of courtroom experience. Ms. Andres, a former corporate CEO, has more than ten years' corporate and transactional bankruptcy experience in addition to litigation experience as a former Special Assistant United States Attorney.  Ms. Stadler, an appellate and litigation attorney, has more than ten years of bankruptcy and complex commercial litigation experience.

19.    Most of the legal research for the fee review process has been conducted by a 2008 law school graduate and litigation team associate, Monica Santa Maria.  Ms. Santa Maria and Ms. Heyrman, a 2009 bankruptcy associate, also helped draft and review Recommendation Reports for the legal and non-legal professionals, respectively.

20.    Two paralegals provided the majority of the paraprofessional services during the Compensation Period.  Zerithea G. Raiche, a bankruptcy paralegal with more than 20 years of experience, maintained the electronic docket, attended team meetings, and had primary responsibility for coordinating filing and service as well as communications with the Court's staff.  Ms. Talbot Settle, a paralegal with 15 years of experience in complex litigation, provided support in maintaining a non-electronic library of case-related documents, including binders of materials related to each professional fee applicant.  Ms. Talbott Settle assisted with the retention of and communication with the Auditor and supported the team in preparation for hearings and in the production of reports.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES

21.     The Fee Examiner and Godfrey & Kahn seek allowance of $673,271.50 in

compensation for professional services performed from the date of their retention, December 28,

2009,[4] through May 31, 2010 and $59,699.73 in reimbursement for actual and necessary

expenses incurred during the same period and through August 31, 2010.  The Fee Examiner has

not sought, received or been promised any payment from the Debtors pursuant to the

Compensation Order, or from any other entity or source, in connection with these cases.

22.     As previously disclosed, Godfrey & Kahn was co-counsel with Jones Day for

General Motors in a dealer termination administrative proceeding.  *In the Matter of 4J's Inc.,*

*d/b/a Great Country Motors v. General Motors*, Case No. TR-09-0015, State of Wisconsin

Division of Hearings and Appeals.  On June 10, 2009, Godfrey & Kahn submitted a Notice of

Bankruptcy to the Division of Hearings and Appeals, which stayed the administrative

proceeding.  Godfrey & Kahn billed and was paid $230 for its work to prepare and file that

notice.

23.     Neither the Fee Examiner nor Godfrey & Kahn holds any retainer related to these

cases.

24.     The combined amounts requested, $673,271.50 in fees for services rendered and

$59,699.73 in reimbursement for actual and necessary expenses, reflect the Applicants'

voluntary reductions.  For the convenience of the Court and interested parties, many (but not all)

of the charges and expenses for which the Applicants do not seek compensation or

reimbursement—which total $86,609.50 in fees and $16,211.39 in expenses—are nonetheless

---

[4] The Fee Examiner's retention order is dated December 23, 2009; however, this application includes only charges
incurred after December 28, 2009.

described in the detailed time records with a "no charge" notation.  The fees and expenses for which the Applicants generally do not seek reimbursement include:  travel time and expenses for attorneys without a participating role at hearings, most computer research charges under $250, interoffice travel, most in-house meals and some travel-related meals, long distance telephone charges (including conference calls), and secretarial and paralegal overtime.[5]

25.    The fees and expenses billed in these cases are in accordance with Godfrey & Kahn's existing billing rates and practices in effect during the Compensation Period.  It is Godfrey & Kahn's standard practice to evaluate its professionals' billing rates for market- and seniority-based adjustments that routinely take effect January 1st of each year; however, the rates disclosed in Godfrey & Kahn's retention application have not and will not change for this engagement—except on notice and an opportunity to be heard.

26.    There is no agreement or understanding between the Fee Examiner or Godfrey & Kahn and any other entity, other than shareholders of Godfrey & Kahn, for the sharing of compensation to be received for services rendered in or in connection with these cases.

27.    Attached to this Fee Application as **Exhibit A** is a certification of compliance with Administrative Order M-389.

28.    Attached as **Exhibit B** is a chart identifying each professional who provided services during the Compensation Period, organized by project category.

29.    Attached as **Exhibit C** are the detailed time records summarizing the services provided by the Applicants during the Compensation Period, separated by project category.

---

[5] As part of the Applicants' standard billing practice, certain fees and expenses—for example, fees incurred for the attendance of a junior attorney at an internal conference where the intended benefit is not primarily for the client— have been removed from the billing records entirely.  Consistent with Administrative Order M-389, however, all such fees are included in the Applicants' calculation of total voluntary reductions.

30.     Attached as **Exhibit D** is a chart identifying the expense categories for which the Applicants are seeking reimbursement and the total amount for each such category.

31.     Attached as **Exhibit E** are the detailed expense records summarizing the expenses for which the Applicants request reimbursement.[6]

32.     The Fee Examiner and Godfrey & Kahn reserve the right to seek compensation in subsequent applications, including their final fee application, for fees and/or expenses not yet processed or for which they have chosen, in this application, not to seek compensation or reimbursement.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED
### DURING THE COMPENSATION PERIOD

33.     The Applicants provided 2,704 hours of services necessary to the administration of the Debtors' cases.  The services were provided primarily by professionals and paraprofessionals in Godfrey & Kahn's Bankruptcy and Litigation practice groups with additional support by Corporate practice group members—at billing rates ranging from $150 to $495 an hour.  The Applicants have voluntarily declined to bill 320 hours of services and seek compensation for only 88 percent of the legal services provided.  Allowance of the requested compensation would result in a blended rate for all attorneys of $358.75 and a total blended rate of $282.41.

34.     The services for which the Applicants request compensation have been provided in six project categories, summarized here.

---

[6] Additional documentation of expenses and disbursements indicated with asterisks in the detailed expense records has not been filed with this Application but has been compiled and will be provided to the U.S. Trustee, the Debtors, counsel to the Debtors and counsel to the Creditors' Committee.  The documentation has been redacted, as necessary, to remove personal information or information relating to other clients and matters.

35.    <u>Analysis, Reports and Recommendations Regarding Professionals' Fee</u>
<u>Applications:  $447,452.00</u>.

A.    During the Compensation Period, the Applicants reviewed 15 fee applications for services during the first interim fee period and 10 for the second interim fee period.  Of these, nine were reviewed with the assistance of Stuart Maue, and the balance of the applications was reviewed manually.  The fee applications were divided into three groups and, to reduce the likelihood of duplication, each group was assigned to a single supervising attorney.  *See supra*, ¶¶ 17-18.

B.    In general, each fee application, and supporting expense or other documentation was initially reviewed by one attorney for compliance with established case law, guidelines, local rules and this Court's orders.  Questionable billing practices were identified—either through Stuart Maue's filtering based on the Applicants' protocol or through a manual review.  After the initial review, the members of the team exchanged information—through meetings, memoranda, e-mail, and conferences, about the practices they had identified.  Through internal consultations, they identified mitigating or aggravating circumstances surrounding each application and winnowed the list of practices to those that would be brought to each Retained Professional's, the U.S. Trustee's and the Court's attention.

C.    Team members kept each other apprised of the issues in the applications they examined to ensure as consistent an application of fee standards as possible.  The majority of these communications were by e-mail.  The Applicants established a practice of keeping the relatively small team informed of case-related issues and developments.  To reduce redundancy, the detailed time records for internal communications and

14

conferences involving the team do not invariably identify each team participant.  External and internal communications *not* involving the practice team itself are identified both by participant and subject matter in the detailed billing records.

D.      The Applicants' analysis of the 25 fee applications reviewed during the Compensation Period have directly resulted in at least $1,244,481.12 in reductions— whether stipulated or court-ordered.  All applications reviewed during the Compensation Period have been resolved, subject to the final fee application process, though several applications have been adjourned by agreement.

E.      The Applicants began communicating—and first met—with the Auditor in late January and early February to develop and implement a fee review protocol that could be applied to the fee applications subjected to electronic audit.  As part of this process, the Auditor sent two employees, W. Andrew Dalton and David Brown, to Godfrey & Kahn's Madison, Wisconsin office for a meeting to discuss fee standards and the capabilities of Stuart Maue's proprietary auditing software.

F.      For Retained Professionals whose applications have been electronically audited, a team member reviewed each of the draft exhibits produced by the Auditor. This review often resulted in requests to the Auditor that certain entries be removed from the draft exhibits or that the exhibits be regenerated applying a different standard.  In some cases, the Auditor on request generated new exhibits and conducted specific analysis with those new exhibits.  This review was necessary to ensure that only the subset of questionable billing practices that merited attention were included in the exhibits and to ensure a consistent application of standards.

G.      Retained Professionals received at least two opportunities, for each application, to comment and respond to the Fee Examiner's concerns—although many professionals have had a continuing dialogue with the Fee Examiner and his counsel.  No later than three weeks before the Fee Examiner filed any Recommendation Report, the Godfrey & Kahn attorney responsible for that Retained Professional's fee application sent a letter to the professional, previewing most or all of the issues to be included in the Recommendation Report.[7]  Each Retained Professional was also provided with a draft copy of the Auditor's reports or, whenever possible, an itemization of the questioned time entries.  The letter and draft invited each professional's response.  Most professionals did respond—by telephone, e-mail or letter—and either provided additional documentation, explained the billing practice identified, or agreed to a voluntary reduction of their fee request.  All of the information provided by the professional fee applicants was reflected in the draft Recommendation Report.

H.      At least two weeks before the compensation hearings, the Fee Examiner sent to each Retained Professional a draft Recommendation Report followed by a final report filed with the Court one week before the hearing.  Again, the Fee Examiner invited a response to any outstanding concerns, and those who responded had the further opportunity to address concerns with the Fee Examiner up to and including the day of the hearing.

I.      The Recommendation Reports were intended to help provide transparency, and each report explains the basis for any objection, including citations to

---

[7] On several occasions, by agreement, a Retained Professional and the Fee Examiner have agreed to slight variances from this schedule.

legal authority when applicable rather than merely quantifying the proposed or

agreed-upon reduction.

36.     <u>Prepare for and Attend Hearings: $33,570.00</u>.  The Fee Examiner and his counsel

attended the April 29 and June 29 hearings on the first and second interim applications in person.

The Applicants seek compensation and reimbursement only for the time of those professionals

who had a participating role at the April 29 hearing.  The Fee Examiner or his counsel have also

attended, by telephone, other hearings at which fee-related issues have been addressed.

37.     <u>Travel: $15,643.50</u>.  Consistent with the practice in the Southern District of New

York, charges for all non-working travel time have been reduced by half.  The Fee Examiner

traveled to New York in January for initial meetings with some of the Retained Professionals and

with the United States Trustee.  In addition to traveling to the two fee hearings referenced above,

early in the retention the Fee Examiner and one of his counsel traveled to Detroit to meet with

AP Services as representatives of the Debtors to, among other things, gain a better understanding

of the Debtors' operations and its own efforts to manage the fees and expenses in these cases.

38.     <u>General Case Administration: $149,245.00</u>.  Services provided in this category

include general case management activities that do not fit easily into one substantive category—

including, for a time, weekly meetings where the Applicants discussed procedural as well as

substantive issues related to the consistent application of standards across professionals.  Now

discontinued, the meetings are only scheduled periodically.

39.     <u>Firm Retention/Disclosure Issues: $26,273.00</u>.  Services included in this category

include the preparation and filing of the Applicants' retention documents and conducting detailed

conflicts checks.  The Applicants also researched, drafted and filed the *Fee Examiner's Motion

for Clarification of Appointment Order* to obtain clarification of the Fee Examiner's authority to

comment on fee-related issues related to proposed retentions of other case professionals.

Activities related to the Fee Examiner's retention of the Auditor also appear in this task category.

40.     Fee Application Preparation:  $1,088.00.  Services provided in this project

category include reviewing and helping to prepare the first interim fee application for the Auditor

as well as initial activities related to the Fee Examiner's and his counsel's own fee application.

In particular, creating and refining the project categories for the eventual preparation of fee

applications was a significant task during this Compensation Period.

### SUMMARY OF ACTUAL AND NECESSARY EXPENSES INCURRED DURING THE COMPENSATION PERIOD

41.     The Applicants incurred total expenses in the amount of $75,911.12, of which

$16,211.39 have been voluntarily assumed and not billed to the estate.  Exhibits D and E contain

the expense categories for which the Applicants seek reimbursement and the detailed expense

records, respectively.  The expenses for which the Applicants seek reimbursement include only

some of those routinely charged to the Applicants' clients.  The Applicants are not making a

profit on any expense incurred as a result of services provided by a third party and have made a

reasonable estimate of the actual cost for expenses incurred for any services provided in-house.

The Applicants' charges in these cases are at the same rates or rates lower than those routinely

charged to, and paid by, the Applicants' clients.

42.     The largest expenditure, totaling $28,848.31, was for photocopies provided

through a vendor, including copies made and mailed by The Garden City Group as noticing

agent.  For internal copies, Godfrey & Kahn typically charges clients $0.15 for each black and

white copy and $0.50 for each color copy; however, both rates have been reduced to $0.10 a

copy in this case.  Photocopies provided by third-party vendors have been paid at rates of $0.08

to $0.125 per page for black-and-white and $1.00 per page for color.[8]  The Applicants have made

supporting documentation available for all external photocopies and all internal photocopying

charges that exceed $300.00.  The next largest expenses (other than travel) were for research and

overnight mail services primarily related to providing Retained Professionals with hard copies of

draft and final Recommendation Reports with exhibits.  In addition, voluminous materials were

express mailed to and from New York for the April 29, 2010 hearing.

43.     The Applicants have voluntarily written off many computer research charges

under $250 for each research session.  In addition, the Applicants used computer research

services available for free to members of the Wisconsin Bar whenever possible to reduce the

research costs to the estate.  The Applicants are not seeking reimbursement for any staff

overtime, most in-house meals, and many travel meals.

44.     The expenses requested are actual, reasonable and necessary in light of the scope

of the Applicants' retention to aid in the administration of these cases.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

45.     Interim compensation to professionals is governed by 11 U.S.C. §§ 330 and 331.

The Court is authorized to grant "reasonable compensation for actual, necessary services

rendered by the [professional person] and reimbursement for actual, necessary expenses."

46.     The Applicants respectfully maintain that the services provided were actual and

necessary to the administration of the fee examination process in these cases.  The fee review

process is a statutory mandate in all chapter 11 cases.  Given the size and complexity of these

cases, however, the U.S. Trustee proposed the appointment of a fee examiner to aid both the U.S.

---

[8] Photocopies made at the New York Marriott Downtown Hotel Business Center in preparation for the April 29, 2010 hearing were $.50 a page, plus a connection charge.  The Fee Examiner has subsequently made arrangements with a local vendor to obtain a more competitive rate for such services.

Trustee and the Court. The Debtors and Creditors' Committee concurred in the U.S. Trustee's

proposal that a fee examiner be appointed.

47. In reviewing whether a compensation request should be granted, the Court should

be guided by the following factors:

> [T]he nature, the extent, and the value of such services, taking into
> account all relevant factors, including--
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration
> of, or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity, importance,
> and nature of the problem, issue or task addressed;
>
> (E) with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and experience
> in the bankruptcy field; and
>
> (F) whether the compensation is reasonable, based on the
> customary compensation charged  by comparably skilled
> practitioners in cases other than cases under this title;

11 U.S.C. § 330.

48. The Applicants respectfully submit that the requested compensation and

reimbursement meet the statutory requirements for allowance. The Applicants have completed

their work in a timely and efficient manner commensurate with the complexity, importance and

nature of the issues involved. The projects were staffed by several professionals and

paraprofessionals with demonstrated skill in the bankruptcy context, and all work has been

assigned consistent with the need to prevent unnecessary duplication and to ensure that work is

performed by the least senior person competent to handle the matter efficiently.

49.     Moreover, the requested compensation is reasonable because it is based on the customary compensation charged by comparably skilled professionals in the Applicants' Milwaukee market and paid by the Applicants' non-bankruptcy clients.  The Applicants have also thoroughly reviewed their time and expense detail and have voluntarily written off more than $102,000 in combined charges.

50.     Accordingly, approval of the requested compensation is warranted.

**NOTICE**

51.     Notice of this Fee Application has been provided to parties in interest in accordance with the *Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated August 24, 2010 [Docket No. 6750].  The Fee Examiner and Godfrey & Kahn submit that such notice is sufficient and no other or further notice need be provided.

52.     No previous request for the relief sought herein has been made by the Fee Examiner or Godfrey & Kahn to this or any other Court for these matters.

**CONCLUSION**

53.     The Fee Examiner and Godfrey & Kahn respectfully request the Court enter an Order authorizing (i) interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $732,971.23, consisting of $673,271.50 in fees and $59,699.73 in actual and necessary expenses incurred during the Compensation Period; (ii) directing payment forthwith by the Debtors of the amounts authorized; and (iii) such other and further relief as is just.

Dated: Madison, Wisconsin
September 27, 2010.

GODFREY & KAHN, S.C.

By:        /s/ *Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5143519_2