

| | Caplin & Drysdale, Chartered |
|---|---|
| **Caplin&Drysdale** | One Thomas Circle, NW, Suite 1100 |
| ATTORNEYS | Washington, DC 20005 |
| | 202-862-5000  202-429-3301 Fax |
| | www.caplindrysdale.com |

202-862-5081 Direct
tws@capdale.com

October 1, 2010

*Via ECF and Hand Delivery*

Honorable Robert E. Gerber
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 621
New York, New York 10004-1408

    Re:   *In re Motors Liquidation Company, et al.*, No. 09-50026 (REG) (Bankr. S.D.N.Y.)

Dear Judge Gerber:

    As counsel for the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims ("**ACC**"), we respectfully submit a proposed order (attached as Exhibit 1) implementing a protocol by which information produced by certain asbestos personal injury trusts (the "**Trusts**") pursuant to discovery authorized by the Court's August 24, 2010 Order (the "**UCC 2004 Order**"), would be rendered anonymous (the "**Anonymity Protocol**"). The ACC also hereby replies to the letter of September 20, 2010, from Philip Bentley, counsel to the Official Committee of Unsecured Creditors ("**Creditors' Committee**").

    In accordance with the UCC 2004 Order, the ACC, the Creditors' Committee, the Legal Representative for Future Asbestos Claimants (the "**FCR**") and representatives of the Trusts attempted to reach agreement on an Anonymity Protocol. Those discussions led to impasse, and pursuant to the procedure spelled out in the UCC 2004 Order, the ACC filed a notice so advising the Court (attached as Exhibit 2). The ACC also filed a letter laying out the issues surrounding the Anonymity Protocol and describing two options for such a protocol. Letter to Hon. Robert E. Gerber from T. Swett. (Sept. 17, 2010) ("**ACC Letter**") (attached as Exhibit 3). The Creditors' Committee responded on September 20, arguing that no Anonymity Protocol should be implemented. Letter to Hon. Robert E. Gerber from P. Bentley, Esq. (Sept. 20, 2010) (the "**UCC Response**") (attached as Exhibit 4). A hearing on the matter is set for October 21, 2010 at 2:00 p.m.

Caplin&Drysdale
CHARTERED

Honorable Robert E. Gerber
October 1, 2010
Page 2

Building on the Court's experience in the *Chemtura* bankruptcy, Your Honor directed the parties to attempt to agree upon a way for the third-party Trusts to make any production in response to the Creditors' Committee's proposed subpoenas in a fashion that would render the productions anonymous in the sense that the claims information provided would not be associated with the identity of any particular claimant. As the Court noted in the hearing on August 9, 2010:

> The second issue, and ultimately the most important, in my view, is protection of the legitimate needs and concerns of individual tort litigants in one-on-one litigation with New GM or anyone else with whom they might be involved in one-on-one litigation, all as contrasted to the macroeconomic estimation that we have before us here.

*See* Hr'g Tr. at 102 (Aug. 9, 2010). The Court also observed that an Anonymity Protocol would be most in keeping with the nature of the aggregate estimation of the Debtors' asbestos liability that the Court intends to conduct. *Id.* at 105.

Unfortunately, the Creditors' Committee's approach in negotiations on this subject has been to reject out of hand any proposal in the interest of maximizing the amount of information going to its expert and the flexibility accorded the expert in the use of that information. It is not surprising, of course, that an adversary would attempt to maximize its position in a discovery matter. But the task the Court has identified is to strike a reasonable balance between the discovery sought by the adversary and the protection of the rights of non-party individuals —individuals towards whose interests the Creditors' Committee and its expert are avowedly hostile, as the materials referenced in our letter of September 17, 2010, make clear. (*See* ACC Letter at 1-2.) Because the Creditors' Committee has been unwilling to strike such a balance voluntarily, protection of the absent claimants depends upon the Court's intervention.

1. **The Proposed Anonymity Protocol**

In the interests of moving the process forward, the ACC offers a proposed order implementing the compromise proposal in its previous letter. (*See* Exhibit 1.) Under this proposed Anonymity Protocol, the Trusts would submit their respective data to the neutral third-party. Bates White, the Creditors' Committee's claims estimation expert who has indicated that it wishes to merge certain information with the Trusts' data, would also submit its data to the neutral. The neutral would merge the Trusts' and Bates White's data to create a single database, then remove identifying data from the merged database and provide that anonymous database to the parties. Such a procedure provides a reasonable level of anonymity

Caplin & Drysdale
CHARTERED

Honorable Robert E. Gerber
October 1, 2010
Page 3

while permitting the experts to handle the data themselves and run whatever analyses they deem appropriate.

Alvarez & Marsal ("**A&M**"), a well-known, global professional services firm with extensive forensic data analysis and technology capabilities, is available to serve as the neutral under this proposal and has the necessary resources to do so efficiently. No serious objection to using that firm as the neutral has been raised. A&M would be jointly retained by the Debtors, the Creditors' Committee, the ACC, and the FCR, and its duties would run to the Court under a retention order delineating its responsibilities. A&M has estimated that charges for its services, at normal hourly rates, would be in the range of $150,000 to $225,000.

2. **The Anonymity Protocol is Necessary for the Protection of Tort Claimants and Appropriate to the Purposes of the Estimation Proceedings**

When the Court directed the parties to negotiate an Anonymity Protocol, it had already ruled that the order granting the Creditors' Committee's discovery would include a strict confidentiality agreement. Nevertheless, the Court recognized the desirability of implementing additional protections through procedures for rendering the production anonymous as to claimants. *See* Hr'g Tr. at 105 (Aug. 9, 2010). In part, this reflected the Court's intention that the estimation of the Debtors' total asbestos liability will be in the nature of a high-level statistical extrapolation from available data. In such a process, the identity of particular claimants is essentially beside the point. Furthermore, an analysis that focuses too closely on individual claims risks triggering the due process rights of the absent claimants. In addition to the Anonymity Protocol's consistency with the task at hand, anonymity provides reasonable additional protection to individual claimants, many of whom are currently in the tort system facing solvent defendants who would seek advantage from the Trusts' claimant data. While the confidentiality order provides some protection, the nature and extent of the claimant data to be provided, the number of persons involved in the transmission, receipt, and use of that information, and the stated intention of the Creditors' Committee's expert to "merge" the Trust's data with databases that the expert already possesses, all make the policing of compliance with a confidentiality order difficult. The Creditors' Committee's assurances that it and its expert intend to comply with the Confidentiality Order are no substitute for the objective and verifiable protections of an Anonymity Protocol.[1]

---

[1]   The Creditors' Committee's letter does not deny that it has stood silent in the face of the ACC's pointed request for assurance that, if an Anonymity Protocol is decreed by the Court, the Creditors' Committee and its expert will refrain from efforts at circumventing the
*(Footnote continued on next page.)*

Caplin & Drysdale
CHARTERED

Honorable Robert E. Gerber
October 1, 2010
Page 4

Ironically, when it comes to its own interests, and that of its expert, the Creditors' Committee argues that a confidentiality order is not enough. It complains, for example, that the neutral administering the Anonymity Protocol should not be permitted to become "aware of the analyses being performed by each expert," and that "[e]nsuring that the analyses of each expert remain confidential until expert reports are filed would be of utmost concern." (UCC Response at 6.) On behalf of its expert, the Creditors' Committee also expresses anxiety that if the expert were required to submit data queries to a neutral in sole possession of the Trusts' production, the neutral would be in a position to misappropriate confidential methods and know-how. (*Id.*) The order now proposed, however, embraces the alternative Anonymity Protocol under which, disclosure of analyses and methods to the neutral would not be an issue, because the experts would receive the data for their use in private, and the neutral's only function would be to render the data anonymous before turning it over. But the telling point is that, when it comes to their own purposes, the Creditors' Committee and its expert are not willing to trust entirely to confidentiality strictures alone. Non-party tort claimants should not be required to do so either.

To deprecate the need for enhanced protections, the Creditors' Committee says that "[s]tate courts regularly require asbestos plaintiffs to disclose amounts they have recovered from settled co-defendants, including trusts." (UCC Response at 4.) This is a misleading half-truth. Such payments typically are disclosed, if at all, only *after* the non-settling defendant has suffered an adverse verdict and the trial court addresses the task of molding a judgment with whatever offsets for prior settlements are appropriate under applicable law.[2] Thus, the

---

*(Footnote continued from previous page.)*
protocol. What the Creditors' Committee has said instead is that they will abide by the confidentiality order. (*See* UCC Response at 8 n.3.) That is not the same thing.

[2] *See, e.g.*, 44A N.Y. Jur. 2d Disclosure § 214 ("in an action against multiple defendants, non-settling defendants are not entitled to discover the terms of confidential settlement agreements between the plaintiffs and codefendants . . . [they] need not be disclosed until a verdict in the plaintiffs' favor and the apportionment of damages under the Joint Obligations Act"). And the Supreme Court has clearly held that the law that would shape the value of a claim if there were no bankruptcy controls valuation of the claim in a bankruptcy process as well. *E.g., Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Travelers Cas. and Sur. Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 451 (2007). Historically, of course, General Motors tried very few asbestos cases, but instead achieved consensual resolutions of almost all of them. No one contends that this pattern would have
*(Footnote continued on next page.)*

Caplin&Drysdale
CHARTERED

Honorable Robert E. Gerber
October 1, 2010
Page 5

Creditors' Committee cannot fairly contend that its discovery of settlement payment information from the responding Trusts is anything but an unusual foray into sensitive information that plaintiffs and co-defendants generally do not provide in pre-trial discovery in the tort system. Indeed, historically, when General Motors settled claims jointly with other defendants, it deemed settlement information so sensitive that it would not disclose its own individual settlement contribution *even to the settling plaintiffs themselves.* Ensuring that the Trusts' payment information will not be misused to the detriment of individual tort claimants is therefore an important goal, as this Court has already recognized. An Anonymity Protocol is a reasonable, and indeed indispensable, means to that end.

> 3. **The UCC's Objections are Unpersuasive and Its Rejection of an Anonymity Protocol in any Meaningful Form is Unreasonable**

In urging that any form of Anonymity Protocol would hinder its expert's analysis, the Creditors' Committee emphasizes the detailed particulars of individual claims — what its letter refers to as "granularity." (UCC Response at 7.) Whether this approach is compatible with the needs of aggregate liability is a question for another day. The point now is that the Creditors' Committee has not even come close to substantiating its overblown arguments that claimants' names, social security numbers, and other identifying details must be revealed in order for the expert to perform the tasks described. For example, the Creditors' Committee's argument that it requires individuals' job site information suggests strongly that its purpose here is to collect as much information as possible, rather than conduct a macroeconomic estimation of the Debtors' liability. (*Id.*) It is inconceivable that any experts' analysis will turn on, or this Court will entertain, estimation arguments that distinguish a particular auto repair shop from a second shop down the street.[3] The idea that the value of a claim would depend on the month and day of its filing is likewise farfetched. The Creditors' Committee's suggestion that an anonymity protocol will "likely bias the resultant estimate high," (*id.*), is rhetoric unsupported by analysis or fact.

---

*(Footnote continued from previous page.)*
changed in the future if General Motors remained in the tort system. There will be, moreover, no tort "judgment molding" in the estimation process in this bankruptcy case.

[3] The Creditors' Committee's stated desire to differentiate between the claims of brake mechanics and the claims of non-mechanics will be accommodated by the applicable occupation and industry codes that would be available under the Anonymity Protocol proposed in the attached order.

Caplin&Drysdale
CHARTERED

Honorable Robert E. Gerber
October 1, 2010
Page 6

The Creditors' Committee's own proposal for an "anonymity protocol" (UCC Response at 8) is nothing of the sort, but mere window-dressing. Under that proposal, all the Trusts' claimant data, including personal identifiers, is produced to everyone. The only gesture towards anonymity is that the data in the hands of the experts is shuffled into different linked data tables. It is a change in form, rather than substance, and would have no practical effect.

Finally, the Court should not be deterred from requiring a genuine Anonymity Protocol by complaints that such a procedure would impose costs. The cost estimates provided by the proposed neutral ($150,000 to $225,000) are modest in the overall scheme of a case involving billions of dollars in assets and liabilities. That estimate is undoubtedly far less than what the Creditors' Committee itself has spent in pursuit of its discovery, to say nothing of the costs it has already inflicted upon the respondent Trusts. Devoting modest resources to the protection of the legitimate interests of thousands of non-party claimants whose information is to be discovered from the Trusts is essential to the fairness and legitimacy of the process.

For all the foregoing reasons and those set forth in our letter of September 17, 2010, the ACC respectfully requests that the Court enter the attached proposed order implementing the Anonymity Protocol.

Respectfully submitted,

Trevor W. Swett

Enclosures

cc:   (with enclosures)
      Steven Karotkin, Esq., *Counsel to Debtors*
      Robert Weiss, Esq.
      Joseph Sgroi, Esq., *Counsel to New GM*
      Philip Bentley, Esq., *Counsel to the Unsecured Creditors Committee*
      Sander L. Esserman, Esq.
      Robert Brousseau, Esq., *Counsel to the Future Claims Representative*
      Steven M. Juris, Esq., *Counsel to Certain Trusts*
      Emily Stubbs, Esq., *Counsel to Manville Trust*