# EXHIBIT Q



# State of Louisiana
## LOUISIANA MOTOR VEHICLE COMMISSION

Bobby Jindal
Governor

Lessie A. House
Executive Director

September 15, 2010

### CERTIFIED MAIL #7008 1140 0003 8430 7066
### Return Receipt Requested

### NOTICE OF HEARING
### #2010-040

General Motors LLC
c/o its Registered Agent for Service of Process
C T Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, Louisiana 70808

Gentlemen:

This is your formal notice to be present at a hearing of the Louisiana Motor Vehicle Commission at 10:00 a.m., Monday, October 29, 2010, in the offices of said Commission, 3519 12th Street, Metairie, Louisiana, or such other date and time to which said action may be continued. This hearing is held under the authority of and in accordance with LSA-R.S. 49:950, et seq. and LSA-R.S. 32:1251, et seq. and is to be conducted by the Three Commissioners appointed pursuant to LSA-R.S. 32:1253(A)(3).

At the hearing you will be asked to answer the charges addressed in the enclosed complaint filed by Edwin A. Stoutz, Jr., Esq., on behalf of Leson Chevrolet Company, Inc., 1501 Westbank Expressway, Harvey, Louisiana 70058.

You are advised that in the event the evidence and testimony submitted at the hearing indicates that you have committed the violation(s), the Louisiana Motor Vehicle Commission may impose penalties under the provisions of LSA-R.S. 32:1258.

To review the Louisiana Motor Vehicle Law, the Louisiana State Administrative Procedure Act, and the Louisiana Motor Vehicle Commission's Rules and Regulations, please go to the Louisiana Motor Vehicle Commission's website: www.lmvc.la.gov and chose the topic: Laws & Rules.

Under the rules of the Louisiana Motor Vehicle Commission, your written response to the complaint should be filed with this agency within ten (10) days of your receipt of this notice. If you do not file a reply and do not appear at the hearing, the allegations in the complaint will be considered to be true and a default order may be entered against you.

General Motors LLC
c/o its Registered Agent for Service of Process
C T Corporation System
Baton Rouge, Louisiana 70808
September 15, 2010
Page 2

**CERTIFIED MAIL #7008 1140 0003 8430 7066**
**Return Receipt Requested**

**HEARING #2010-040**

At the hearing, you will be accorded the following rights:

(1)   You may appear on your own behalf, or the counsel of your choice may represent you.

(2)   You may present and enter into the record evidence on all issues of fact.

(3)   You may examine the evidence entered into the record.

(4)   You may present arguments on all issues of law and fact.

(5)   You may cross-examine, as appropriate, witnesses.

(6)   You may request from the Commission office that subpoenas be issued commanding the appearance of witnesses or the production of documents at the hearing. However, if you wish to issue subpoenas, you should contact the Commission office no later than Tuesday, October 19, 2010.

Pursuant to the American with Disabilities Act, assistance will be provided in completing any documents required by the Commission.

If you would like to discuss the possibility of resolving this matter without the necessity of a formal hearing, please contact the undersigned at (504) 838-5207.

**Additionally, a pre-hearing conference for the above-referenced matter has been scheduled for Tuesday, October 19, 2010, at 1:00 p.m., in the offices of the Commission.**

LOUISIANA MOTOR VEHICLE COMMISSION

L. A. House
Executive Director

Enclosures

cc:   Commission and Counsel
      Edwin A. Stoutz, Jr., Esq., *Certified Mail - #7008 1140 0003 8430 7134*
      Thomas A Casey, Jr., Esq., *Certified Mail - #7008 1140 0003 8430 7141*

# STOUTZ & STOUTZ
### ATTORNEYS AT LAW
3606 Canal Street
New Orleans, Louisiana 70119

Edwin A. Stoutz, Jr.
W. Clifton Stoutz

Telephone: (504) 524-0000
(504) 899-0000
Fax: (504) 485-0123
Notary Public

September 13, 2010

Louisiana Motor Vehicle Commission
3519 12th Street
Metairie, Louisiana 70002-3427
ATTN: Lessie House, Executive Director

**LMVC**

SEP 1 4 2010

Re: Leson Chevrolet Company, Inc. v. General Motors, LLC

Dear Ms. House:

Leson Chevrolet Company, Inc. ("Leson") submits this Complaint against General Motors, LLC ("GM") and seeks to have the Louisiana Motor Vehicle Commission issue a cease and desist order prohibiting GM from terminating Leson's Sales and Service Agreement pursuant to La. R.S. 32:1259. Leson further seeks all other appropriate and equitable relief to which it may be entitled. GM has caused and continues to cause substantial and irreparable harm to Leson by violating multiple legislative provisions enacted to protect automobile dealers, including but not limited to the requirements of Section 747 of the Consolidated Appropriations Act of 2010, H.R. 3288 (the "Act"). La. R.S. 32:1261(1)(d) & (v), La. Civ. Code art. 1959 *et seq.* and its obligations of good faith and fair dealing.

### I.    Factual Background

For nearly eighty (80) years, Leson has been engaged in the business of operating an automobile dealership selling and servicing GM-manufactured automobiles on the West Bank of Jefferson Parish, Louisiana. On or about May 14, 2009, Leson received a letter from GM's predecessor, General Motors Corporation ("Old GM"), advising that Leson's existing Dealer Agreement would not be continued beyond October of 2010, as a result of Old GM's pending bankruptcy. On June 1, 2009, Old GM filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York under 11 U.S.C. § 363 of the Bankruptcy Code. As a result of the bankruptcy proceeding, GM terminated many dealer franchise agreements of Old GM, including that of Leson. Since receiving its "Wind Down" notice, Leson has been precluded from buying new GM motor vehicles from GM or participating in GM programs. But for GM's bankruptcy, GM's termination of Leson's Dealership Agreement would be unlawful under applicable state law, including but not limited to the various provisions of La. R.S. 32:1261(1)(d).

In response to concerns from the public and the automobile industry that many dealer terminations were arbitrary or unjust, Congress passed Section 747 of the Consolidated

1



Appropriations Act of 2010, H.R. 3288 (the "Act"). A copy of the applicable provisions is attached for your reference as Exhibit "A." The Act gave "covered dealerships," such as Leson, the right to challenge GM's termination decision through binding arbitration.

## II.    Leson's Arbitration with GM

Firmly believing that its dealership was wrongfully terminated, Leson filed a demand for arbitration against GM with the American Arbitration Association ("AAA"). Pursuant to the Act, an arbitration hearing between Leson and GM was held in New Orleans, Louisiana, on June 3 and 4, 2010. After having heard the allegations and evidence of both Leson and GM, the arbitrator ruled in Leson's favor and ordered that Leson "shall be added to the dealer network of General Motors, LLC." This determination and order for reinstatement was made without conditions. *See* Arbitration Award, attached as Exhibit "B," at p. 2.

Pursuant to the clear and unambiguous express provisions of the Act:

> If the arbitrator finds in favor of a covered dealership, the covered manufacturer (GM) shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales and service agreement.

The clear intent of the Act was to restore improperly rejected dealers to the same position as they were prior to Old GM's bankruptcy filing and not to provide GM with the opportunity to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as Leson.

## III.    GM Refuses to Issue Leson a Customary and Usual Letter of Intent

To date, GM has refused to issue to Leson a "customary and usual letter of intent," although more than seven (7) days have passed since GM's receipt of the arbitrator's determination in favor of Leson. Instead, GM demanded that Leson execute a "Letter of Intent" that was neither reasonable nor customary. Leson attempted to negotiate with GM concerning the terms and conditions of the Letter of Intent. GM has refused to meaningfully change the terms set forth in its Letter of Intent and imposed its own unreasonable and arbitrary deadlines to comply despite that no such deadline is required by the Act. Leson signed and returned GM's adhesionary Letter of Intent under duress. See La. Civ. Code art. 1959.

GM's letter of intent requires, *inter alia*, Leson to provide working capital in the amount of $2,850,000 within sixty (60) days. Leson maintains that its compliance with GM's working capital standard and other requirements has already been adjudicated and no further action is required on Leson's part for its reinstatement. The arbitrator's order recognizes that, "Leson has also met GM's capital requirements as these standards have not changed since 2003." *See* Exhibit "B" at p. 4.

If additional requirements for working capital were imposed upon Leson, GM's method of calculating the working capital standard is inappropriate, unfair and inequitable. Leson has

2

been unable to order inventory or participate in GM programs since it was wrongfully terminated in June of 2009. GM, however, refuses to take into account Leson's profits and losses during the GM imposed wind-down period for purposes of calculating Leson's working capital requirements. Significantly, Leson's inability to be as profitable as in years past or generate substantial "cash flow" in 2009 and 2010 was the direct result of GM's wrongful termination. Although Leson and other dealers can borrow their working capital needs if it is secured by real property pursuant to GM's accounting guidelines, no bank or other lender can ignore Leson's financial performance during the wind-down, when it was unable to be as profitable because of the inability to order any inventory or participate in GM's incentive programs.

Under the Act and Louisiana law, GM has an implied duty of good faith and fair dealing toward Leson in reinstating its GM franchise. GM's refusal to consider the last 18 months in which Leson was in wind down status in determining Leson's working capital requirement is a breach of good faith and fair dealing, ignores the commercial realities facing Leson which were directly created by GM and its wrongful termination, and does not comport with the required standards of commercial reasonableness. Wrongfully, GM seeks to ignore completely the financial hardship it imposed upon Leson in 2009 and 2010 through its unlawful termination and instead requires Leson to capitalize the dealership based on its 2008 performance. The unreasonable and inequitable position taken by GM is a de facto and wrongful termination of Leson in violation of the Act and La. R.S. 32:1261(1)(d). The Act envisioned the "reinstatement" of a dealership (*i.e.*: the restoration of a dealer to its previous position in GM's dealer network), not an opportunity for GM to impose upon the prevailing dealers onerous requirements that never applied to the parties' previous relationship. Thus, Leson must be allowed to order inventory and sell cars again before GM's working capital standards can be applied or considered.

Congress intended that those dealers who prevailed in their arbitrations under the Act would be reinstated as dealers within GM's dealer network. By conditioning Leson's reinstatement on its execution of GM's unconscionable Letter of Intent, GM is intentionally, knowingly, and willfully violating the Act and thwarting the law. As a direct and proximate result of GM's misconduct, as aforesaid, Leson has sustained, and is continuing to sustain, substantial losses, the amount of which is not presently known, due to its inability to sell new GM vehicles.

## V.    Prayer

Based upon the above facts, Leson is entitled to an order of this Commission:

a.    Issuing a cease and desist order prohibiting La. R.S. 32:1259 GM from terminating Leson's Dealer Sales and Service Agreement;

b.    Confirming that Leson has satisfied the criteria for reinstatement and will be immediately reinstated with the ability to order inventory and participate in all GM programs in the same manner as any dealer who was not under a wind down agreement;


LMVC

SEP 1 4 2010

3

c.    Declaring the actions of GM tantamount to a termination in violation of La. R.S. 32:1261(1)(d);

d.    Declaring the actions of GM to be unfair and in violation of LA R.S. 32:1261 (1) (v);

e.    Declaring GM's refusal to reinstate Leson until it posts working capital in the amount of $2.85 million as inconsistent with the intent of the Act, the ruling of the Arbitrator and Louisiana law, which now governs the relationship between the parties; and

f.    After due proceedings had an Order be issued mandating General Motors, LLC to reinstate Leson to its status quo immediately prior to its wind down letter.

g.    That the commission set a prehearing conference be set at your earliest convenience;

h.    That the commission assign this for hearing before the 3 member panel as provided for by L.R.S. 32:1233 A (3) (a) & (b);

i.    Providing any other relief as this Commission deems just and proper.

Very truly yours,

Edwin A. Stoutz, Jr.

Enclosures

cc:  Leson Chevrolet Company, Inc.
    Mark Beebe, Esq.
    Johnny L. Domiano, Jr., Esq.

LMVC
SEP 1 4 2010

4

# AMERICAN ARBITRATION ASSOCIATION

LESON CHEVROLET COMPANY, INC.    )
                                        )
              Claimant        )       Case No.  69 532 00046 10 JMLE
                                          )
V.                                    )       Arbitrator: A. J. Krouse
                                        )
GENERAL MOTORS LLC         )
                                        )
             Respondent     )

LMVC

SEP 1 4 2010

## <u>WRITTEN DETERMINATION OF ARBITRATOR</u>

     I, the undersigned Arbitrator, having been designated pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117) (the "Act"), enacted December 16, 2009, and having been duly sworn and having heard the proofs and allegations of the parties, do hereby provide the Written Determination of Arbitrator pursuant to the Act.

### Background

The Act affords a "covered dealership" (as defined in Section 747(a)(2)) the right to challenge by binding arbitration the decision of a "covered manufacturer: (as defined in Section 747(a)(1)(A) and (B)) to terminate, or not to assign, renew or continue, the covered dealership's franchise agreement. This case was filed in accordance with the Act's provisions. The arbitrator inspected with counsel the entire Leson dealership, including new and used cars, the service center, collision center, parts and customer service, prior to the hearing. An evidentiary hearing was held on June 3 and 4, 2010 in New Orleans, Louisiana, where testimony from both parties was heard from 9:00 a.m. – 9:00 p.m. each day. Stipulated Exhibits were offered and introduced into the record. Pre-hearing and post-hearing briefs were carefully reviewed by the arbitrator. Set

COPY

7

forth below is the "written determination" (as provided for in 747(d) of the Act) of the issue to be decided under the Act, namely "whether or not the covered dealership should be added to the dealer network of the covered manufacturer."

I.    **The Covered Dealership**

This proceeding concerns the automobile dealership known as Leson Chevrolet Company, Inc. located in Harvey, Louisiana.

**LMVC**

**SEP 1 4 2010**

II.    **Determination**

The covered dealership described above in Section I shall be renewed and therefore shall be assumed by the covered manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act, and shall be added to the dealer network of General Motors, LLC.

III.    **Statutory Factors Relied Upon by the Arbitrator in Making the Determination**

In accordance with Section 747, the following factors were carefully considered:

1.    **The covered dealership's profitability in 2006, 2007, 2008 and 2009.**

Leson Exhibit 45 established that Leson was one of the top 300 Chevy dealerships in the United States in January 2009, according to Leson's District Sales manager. The testimony and exhibits presented by Leson established that the dealership was profitable in 2006 and 2008. Leson sold more retail and GM certified used vehicles than any other Chevrolet dealer in the greater New Orleans area in 2007 (2202 vehicles) and 2008 (1831 vehicles) by a significant margin. Leson maintains more than $1 million in parts inventory and serviced more than 13,000 vehicles in 2008.

2

GM's profits generated by Leson from 2006-2008 were significant. In 2006, Leson was ranked No. 5 in Louisiana in new car sales (1958 vehicles) with a profit to GM from $11.29-$13.51 million dollars.

In 2007, Leson was ranked No. 11 in new car sales in Louisiana (1472 vehicles) with a profit to GM at $8.88 - $10.62 million dollars. In 2008, Leson was ranked No.16 in new car sales (810) with profits to GM at $6.17 – $7.35 million.

2.    **The covered manufacturer's overall business plan.**

GM plans to focus on its four core North American brands: Chevrolet, Buick, GMC and Cadillac. GM had about 6000 dealership franchises when it filed for bankruptcy in June 2009. "Wind-down" agreements were sent to approximately 2,000 dealerships whose franchises were not being renewed, including Leson. GM contends that fewer dealerships will result in greater profitability for the manufacturer.

LMVC

SEP 1 4 2010

3.    **The covered dealership's current economic viability.**

Expert testimony presented by Leson by Joe Roesner and Carl Woodward that the dealership is economically viable. Leson's net worth was almost $5.6 million in 2008. Leson's net worth is 2.5 times the average net worth of dealers in the region.

Leson owns the 14 acre property located at the corner of Manhattan Boulevard and the Westbank Expressway where the dealership is located. Although mortgaged, Leson has more than $5 million in equity in the property. Further, Leson recently invested approximately $2.1 million of its money into the dealership in a renovation of its service and parts center following Hurricane Katrina. GM failed to consider this factor in their termination decision.

3

4.    The covered dealership's satisfaction of the performance objectives
established pursuant to the applicable franchise agreement.

GM was required by Section 747 to provide Leson with "the specific criteria
pursuant to which such dealer was terminated." The "specific criteria" GM provided to Leson
was that Leson's 2008 DPS score was under 70 and its RSI score was under 70. GM Exhibit 29.

Testimony at the hearing established that Leson made an accounting error that
negatively affected its DPS score. Leson provided testimony from Lisa Rebowe, Leson's
General Manager and a CPA, that insurance proceeds had mistakenly been booked in Leson's
accounting ledger. Leson provided data to GM to recalculate the score on March 18, 2010. GM
refused to recalculate the score and, more disturbing, refused to reconsider their termination
decision of Leson in 2009. See Exhibit 31 (recalculating Leson's overall score at 76.5 – above
the passing rate in 2008).

In this instance, the arbitrator recognizes the "good faith" explanation of the
accounting error and finds that Leson exceeded the DART/DPS criteria in 2008.

Testimony also established that Leson's service facilities are in the top 10% of the
Region's dealers. An impressive array of General Motors products were being serviced in every
available service bay at Leson during the dealership inspection owned by several governmental
entities, Fortune 500 companies and small businesses in New Orleans and Jefferson Parish.
Failing to reinstate Leson would be severely detrimental to the entities that rely upon the region's
only dealership who can service midsize and large GM vehicles.

Leson has also met GM's capital requirements as these standards have not
changed since 2003.

LMVC

SEP 1 4 2010

4

After the termination letter, a new management team committed to the success of Leson was brought on board. Leson has secured one of the nation's best general service managers, Rick Harp, and finance manager, John Burress, to provide effective leadership and fiscal responsibility for the requirements of the new General Motors. They have a business plan in place that will serve Leson and GM with increased sales volume in the future and a proven track record in management.

The arbitrator finds that Leson has met or exceeded the performance objectives established pursuant to the franchise agreement between the parties for the time period at issue.

5.    **The demographic and geographic characteristics of the covered dealership's market territory.**

Jefferson Parish, Louisiana is the largest parish in Louisiana located adjacent to New Orleans, Louisiana, and has a population of approximately 450,000 residents. Leson Chevrolet L.L.C. is located at the intersection of the Westbank Expressway and Manhattan Boulevard adjacent to the Jefferson Parish Sheriff's Department Headquarters and near several industrial companies along the Harvey Canal. The geographic location of Leson is a prime location in one of the fastest growing areas in the New Orleans Metropolitan area and the State of Louisiana.

**LMVC**    **The covered dealership's performance in relation to the criteria used by the covered covered dealership's franchise agreement.**

**SEP 1 4 2010**

In responding to its RSI score, the dealership presented compelling and credible testimony that GM substantially deviated from its own standards when deciding to terminate similarly situated dealerships in the region. Leson Exhibits 40A and 40B. The testimony of GM's corporate representative, David Bott, established only two of ten "unsatisfactory" dealers were terminated. Bott testified that one dealership in the region which sold only 74 vehicles and

· 5

ranked with a lower "unsatisfactory" ranking than Leson was not terminated  because it failed to

provide GM complete financial records.

The arbitrator finds that GM failed to consider "…other relevant factors" in the

franchise agreement deciding to proceed under the provisions of Article 13.2 [dealer termination

provision] in addition to the Retail Sales Index when it made its decision to terminate Leson.

The other relevant factors GM failed to consider were:

(1)    Recovering from the devastating effects of Hurricanes Katrina, Rita,
       Gustav and Ike.

(2)    Displaced key employees and managers at Leson and customers due to
       mandatory hurricane evacuations.

(3)    Relying upon the good faith representations of GM management in 2008
       not to "worry" about the DPI and RSI scores since Leson was one the top
       300 Chevy dealerships in the nation.

(4)    Loyalty to GM management and the Chevrolet product line.  This is a
       family owned Chevy dealer since 1931.  Leson is the only Chevy
       dealership on the Westbank of Jefferson Parish.  Lisa Rebowe, general
       manager, and successor in interest to her 78 year old father is poised to
       become one of the few female Chevrolet dealers in the nation.

(5)    Outstanding sales and service performance by Leson Chevrolet during a
       time when General Motors was rapidly toward bankruptcy in 2009, this
       factor cannot be understated because in 2006 – 2009.  The American
       public had lost confidence in the GM and Chevrolet product lines during
       that time.

7.    The length of experience of the covered dealership.

Leson Chevrolet is the oldest Chevy dealer in New Orleans.  Leson is a family

owned dealership since 1931, located in Harvey, Louisiana.



LMVC

SEP 1 4 2010

6

8.    **How the economic interests of the dealership, the manufacturer and the public are supported by the above factors.**

On balance the Arbitrator finds that the economic interests weighs heavily in favor of reinstating Leson Chevrolet to the dealer network at its present location in Harvey, Louisiana.

In regard to the economic interest of the public at large outside of the immediate area, reinstatement will serve to increase GM profits as well as providing a viable economic anchor for Jefferson Parish in the future. In the first quarter 2010, GM earned $865 million, its first profit since 2007, with revenue up 40 percent, to $31.5 billion, and a positive cash flow of $1 billion. The company's May 2010 financial results show that it is on track to become a public company again, allowing the federal government to recover more of the $57.6 billion dollars loaned to GM under the Troubled Asset Relief Program (TARP).

9.    **Any additional facts to be considered by the arbitrator in making the determination.**

The dealership has secured drawings for a new car showroom and a commitment letter from a local bank for prospective financing once it is reinstated by General Motors.

Leson Chevrolet has secured letters from key elected public officials including U.S. Representative, Steve Scalia, Jefferson Parish President Steve Theriot and State Senator J.P. Morrell in support of the dealership and its reinstatement.

LMVC

SEP 1 4 20

10.    Specifically whether the covered dealership is to be renewed, continued, assigned or assumed by the covered manufacturer.

The arbitrator finds that Leson Chevrolet has met its burden of proof by establishing by a preponderance of the evidence that it should be reinstated to the dealer network of General Motors, L.L.C. in accordance to the provisions of the Act.

## V.  Costs

In accordance with the statute, the administrative fees and expenses, the arbitrator's fees and expenses shall be borne equally between GM and Leson Chevrolet.

This Award is in full settlement of all claims submitted to this arbitration.

Dated: 6/18/2010

A.J. Krouse, Arbitrator
American Arbitration Association
New Orleans, Louisiana

LMVC

SEP 1 4 2010

8



UNITED STATES POSTAGE
02 1A
0004306535    SEP 15 2010
$ 06.05
PITNEY BOWES
MAILED FROM ZIP CODE 70002



CERTIFIED MAIL

7008 1140 0003 8430 7066

LOUISIANA MOTOR VEHICLE COMMISSION
3519 12TH STREET
METAIRIE, LOUISIANA 70002

General Motors LLC
c/o its Registered Agent for Service of Process
C T Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, Louisiana 70808