HEARING DATE AND TIME: October 26, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: October 19, 2010 at 4:00 p.m. (Eastern Time)

Steve Jakubowski
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone:  (312) 606-8641
Facsimile:   (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorney for Kevin Junso, Nikki Junso,
Matt Junso, Cole Junso, and the Estate of
Tyler Junso

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                          :   Chapter 11 Case No.
                                                             :
MOTORS LIQUIDATION COMPANY, et al.,  :   09-50026 (REG)
      f/k/a General Motors Corp., et al.       :
                                                             :
                                    Debtors.   :   (Jointly Administered)
                                                             :
-------------------------------------------------------------x
```

**MOTION OF THE JUNSOS TO BE DEEMED TO HAVE FILED**
**AN INFORMAL PROOF OF CLAIM OR, ALTERNATIVELY,**
<u>**FOR LEAVE TO LATE FILE A PROOF OF CLAIM**</u>

Kevin Junso, Nikki Junso, Matt Junso, Cole Junso, and the estate of Tyler Junso (collectively, the "**Junsos**"), by and through their attorneys, file this motion (the "**Motion**") under Bankruptcy Code sections 105(a) and 501(a), and Bankruptcy Rules 3002 and 9006(b), to be deemed to have filed an informal proof of claim or, alternatively, for leave to late file a proof of claim.  In support thereof, the Junsos state as follows:

**Preliminary Statement**

The personal injury claims of Kevin Junso and his family have been ever-present in this case since, 19 days after the Debtors' cases were commenced, the Junsos joined with four other personal injury claimants in objecting to the 363 sale of the Debtors' assets to New GM. In their objection, they described the nature and extent of their injuries and their intent to hold GM—and New GM—liable for their injuries. Their objection to the 363 sale having been overruled by this Court, the Junsos appealed to the District Court. On appeal, the Junsos and their co-appellants argued that the appeal was not statutorily moot because Bankruptcy Code section 363(m) does not prevent a reviewing court from reversing provisions of a sale order that were "not even colorably within its jurisdiction." The Junsos argued that if this Court misinterpreted the ability of Section 363 to bar successor liability claims, then it lacked subject-matter jurisdiction to enter an order extinguishing products claims because prosecution of such claims by the Junsos against New GM had no "conceivable effect" on the bankruptcy estate.

While the appeal to the District Court was pending, and following the conclusion of the submission of briefs on the merits, the bar date for claims passed and the Junsos—concerned that filing a formal proof of claim would moot out their appeal because the filing of such claim would create "related to" jurisdiction over them—voluntarily determined, despite their low odds of success, not to file a formal proof of claim. The Junsos' other four co-appellants, however, filed timely proofs of claim.

The District Court entered its memorandum opinion affirming this Court's ruling and dismissing the appeal on April 13, 2010. In its decision, the District Court relied on the Supreme Court's recent ruling in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), which seemed to agree with cases that stand for the proposition that matters lacking an "arguable

basis" for jurisdiction "must be distinguished from [matters] involving an error in the exercise of jurisdiction … and only rare instances of a clear usurpation of power will render a judgment void." *Id.* at 1377. The Supreme Court also cited to law from the Second Circuit to support the proposition that errors of law alone do not create an "arguable basis" for federal jurisdiction. *Id.*

Having carefully considered the District Court's ruling and its rationale, the Junsos and the other co-appellants determined they could not, particularly in light of *Espinosa*, state in good faith that this Court lacked an "arguable" or "colorable" basis for jurisdiction, and so they all stipulated to the voluntarily dismissal of their appeal before the Second Circuit. Concurrently, the Debtors and the Junsos entered into a stipulation [Docket No. 6905] in which the Debtors agreed to neither object to nor oppose this Motion.

In this Motion, the Junsos seek to have their objections to the 363 Sale be deemed informal proofs of claim, or—alternatively—to be granted leave to submit a late-filed proof of claim. When considering the uniqueness of their position as the only personal injury claimants who appealed the 363 Sale but did not file a proof of claim, the tragic circumstances giving rise to their claims for relief, and their agreement to submit to the ADR Procedures and cap their aggregate claims at no more than approximately $11 million, it is clear that the balance of hardships here clearly weighs in favor of granting the Junsos the relief requested so that they too can share in distributions on a *pro rata* basis with other creditors of the Debtors' estate.

3

## Background

1. On June 1, 2009 (the "**Petition Date**"), General Motors Corporation ("**GM**") and certain of its affiliates each commenced a case in this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. Prior to the Petition Date, Junso had initiated certain litigation against GM alleging injury on account of accidents sustained by him involving a GM-branded vehicle.

3. Junso was one of five individual products liability claimants represented by the undersigned counsel who filed extensive objections to the sale (the "**363 Sale**") of substantially all of the Debtors' assets to NGMCO, Inc. (n/k/a General Motors, LLC). [Dkt. Nos. 2176 and 2177].

4. In the objection, the nature and extent of the Junsos' claims were described as follows:

> Kevin and Nikki Junso are the parents of Tyler, Matt, and Cole Junso. On April 25, 2006, Tyler and Kevin Junso were involved a single car rollover accident while driving a 2003 GMC Envoy. During the rollover, the windshield and side windows were knocked out, reducing the strength of the roof structure. The Envoy sustained catastrophic damage to the roof structure, which buckled violently inwardly toward Tyler and Kevin. Despite being belted, both occupants were partially ejected from the vehicle during the roll over. Seventeen year old Tyler, the driver, sustained massive skull and neck injuries and died at the scene of the accident. The evidence showed that Tyler's head was partially outside the vehicle during the roll over sequence, due to the broken window and lateral displacement of the roof structure, and made contact with both the ground and the roof during the accident. The paramedics found Kevin, the passenger, with his left leg out the windshield and his right leg out the passenger side window. Kevin sustained serious injuries to his arms and legs, which eventually led to the amputation of his right leg below the knee.

*See* Junso Objection, Dkt. No. 2176, at pp. 5-6. These facts are confirmed in the Junso Affidavit attached hereto as **Exhibit 1**.[1]  Junso Affidavit at ¶¶ 2-4.

---

[1] The affidavit of Kevin Junso (the "**Junso Affidavit**") is attached hereto as **Exhibit 1**.

5.On July 5, 2009, the Bankruptcy Court entered an Order [Docket No. 2968] (the "**Sale Order**") approving the 363 sale. On July 6, 2009, Junso, together with certain other claimants, filed a Notice of Appeal of the Sale Order [Docket No. 2970] (the "**District Court Appeal**"). The District Court Appeal, docketed as case number 09-CV-6818 (NRB), was before the United States District Court for the Southern District of New York (the "**District Court**"). In the District Court Appeal, the Junsos argued that its appeal was not statutorily or equitably moot because if the Second Circuit's decision in *Chrysler* was wrongly decided or distinguishable on its facts, then the Bankruptcy Court lacked subject matter jurisdiction to preclude the Junsos from asserting successor claims against New GM since resolution of those claims could have no conceivable effect on the Debtors' estates.

6.On September 16, 2009, while the appeal was still pending, the Bankruptcy Court entered an order [Docket No. 4079] establishing November 30, 2009 (the "**Bar Date**") as the deadline for each person or entity to file a proof of claim against the Debtors.

7.The Junsos believed that filing a proof of claim before the Bar Date would result in their appeal being automatically rendered moot based on the argument that the filing of the proof of claim provided the requisite "related to" subject matter jurisdiction over the Junsos' successor liability claims against New GM since success on those claims would necessarily have reduced the Junsos' claims against the Debtors. Junso Affidavit at ¶ 7.

8.To avoid the potential that their appeal would be mooted without even a chance to be heard on the merits of the arguments presented in the District Court Appeal, the Junsos determined not to file a proof of claim against the Debtors prior to the Bar Date. Junso Affidavit at ¶ 8.

5

9. On April 13, 2010, Judge Buchwald issued an order dismissing the appeal on grounds of statutory and equitable mootness. *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.),* 428 B.R. 43 (S.D.N.Y. 2010). For support, Judge Buchwald cited to the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), which stated in the analogous context of Fed. R. Civ. P. 60(b) motions for relief from final judgments that matters lacking an "arguable basis" for jurisdiction "must be distinguished from [matters] involving an error in the exercise of jurisdiction … and only rare instances of a clear usurpation of power will render a judgment void." *Id.* at 1377 (*quoting United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 661 (1st Cir. 1990)). The Supreme Court also cited to case law from the Second Circuit in support of the proposition that errors of law alone do not provide a basis for saying the court lacked an "arguable basis" for jurisdiction. *Id.* (*citing Nemaizer v. Baker,* 793 F.2d 58, 65 (2d Cir 1986) ("Since a court has power to determine its own jurisdiction and, in fact, is required to exercise that power *sua sponte*, it does not plainly usurp jurisdiction when it merely commits an error in the exercise of that power.")).

10. The Junsos and the other appellants timely appealed the decision to the Second Circuit. Having carefully considered the District Court's ruling and rationale, along with the Supreme Court's *Espinosa* decision, the Junsos and the other co-appellants determined they could not proceed in good faith with the appeal. On September 13, 2010, the Junsos and the Debtors jointly stipulated to the voluntary dismissal of the appeal before the Second Circuit under Rule 42(b) of the Federal Rules of Appellate Procedure, and the Second Circuit "so ordered" the appeal dismissed by order entered on September 23, 2010.

11. Concurrently with the agreement to dismiss their appeal, the Debtors and the Junsos entered into a stipulation with the Debtors [Docket No. 6905] in which the Debtors

6

agreed to neither object to nor oppose this Motion. In the Stipulation, the Debtors agreed they will not object to or oppose the relief requested in this Motion (without prejudice to any and all rights to object to the allowance of any proof of claim the Court grants leave to file). The Stipulation also provided that it is without prejudice to any rights of any party in interest other than the Debtors to oppose or object to the relief requested in the Motion (and without prejudice to any and all rights of any interested party to object to the allowance of any proof of claim the Court grants leave to file). A copy of the Stipulation is attached hereto as **Exhibit 2**.

12.     In discussions leading to the final executed Stipulation, the attorney for the Junsos in the underlying state court litigation sent a confirming letter (the "**Capping Claim Letter**") to the Debtors dated July 23, 2010 in which the Junsos agreed to (A) submit their claims to the procedures established in this Court's order authorizing the implementation of ADR procedures (the "**ADR Procedures**"), including mandatory arbitration, and (B) cap their aggregate at $10,955,655.98. A copy of the Capping Claim Letter is attached hereto as **Exhibit 3**.

### The Junsos Should Be Deemed to Have Filed an Informal Proof of Claim Through Their Objection to the Sale

13.     Support for finding that the Junsos' objection to the 363 Sale constituted an informal proof of claim can be found in *In re The Float, Inc.*, 163 B.R. 18, 20-21 (Bankr. N.D.N.Y. 1993), and *In re Rowe Furniture, Inc.*, 384 B.R. 732, 738 (Bankr. E.D. Va. 2008), both of which held that a claimant's objection to sale of debtor's assets could serve as amendable informal proof of claim. Judge Gerling's opinion in *Float* is especially instructive because it cites to a long line of precedent in the Second Circuit and the Southern District of New York that recognizes the validity of filed documents serving as informal proofs of claim where they "set forth the nature and amount of the claim and the intent on the part of the claimant to hold the debtor liable." *Id.* (*citing In re Lipman,* 65 F.2d 366 (2d Cir.1933), *In re Gibraltor Amusements,*

7

*Ltd.,* 315 F.2d 210 (2d Cir.1963), *In re W.T. Grant Co.,* 53 B.R. 417 (Bankr. S.D.N.Y. 1985), and *In re Nutri-Bevco, Inc.,* 117 B.R. 771 (Bankr. S.D.N.Y. 1990)).

14. More recently, bankruptcy courts in this district have liberally allowed filed objections to serve as informal proofs of claim provided they (1) have been timely filed with the bankruptcy court and have become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt. *See, e.g., In re Enron Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007) (*citing Houbigant, Inc. v. ACB Mercantile, Inc., (In re Houbigant Inc.,* 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995)); *In re Northwest Airlines Corp.*, 05-17930 (ALG) (S.D.N.Y. Feb. 9, 2010).

15. Here, the Junsos' filed objection to the 363 Sale meets all four criteria for being deemed a valid informal proof of claim.

- First, their objection to the 363 Sale, filed on June 22, 2009, was filed in advance of the Bar Date and part of the judicial record in this case.

- Second, their objection explained in detail the nature and extent of the injuries suffered by them at the hands of GM.

- Third, given that the Junsos' personal injury claims had not yet been fixed by experts in the underlying case, and so was unliquidated, a specific dollar amount could not be referenced in the filed objection. Still, the extreme nature of the injuries suffered, including a fatality, was sufficient to provide the requisite notice that a large dollar amount was involved. As noted above, however, the Junsos have agreed to cap their claims individually and in the aggregate in the amounts set forth in the Capping Letter.

- Fourth, though the objection's primary focus was on holding New GM liable for the debt as successor, the filed objection expressly manifested the Junsos' intent to hold the Debtors liable for the debt, and it was on that basis that the Junsos had the requisite standing to object to the 363 Sale.

16. Given the representations in the Capping Letter that the Junsos will cap their aggregate claim at approximately $11 million, the substantial number of comparable products

8

liability claims that remain unresolved, and the absence of a material adverse effect on total distributions to any one party even if the Junsos' claims were allowed in full, granting the Junsos' request to have their objection to the 363 Sale deemed an informal proof will not prejudice the estate or other unsecured creditors entitled to plan distributions. Conversely, the Junsos will suffer great prejudice and additional painful loss if their requested relief is denied, particularly since there is no other source of recovery available to them to cover the pain, suffering, and other damages they have suffered.

17. Additionally, there is no principled basis to treat the Junsos' objection to the 363 Sale any differently from the matter involving Sang Chul Lee and Dukson Lee, whose lift stay motion filed before the bar date provided the basis for the Court's approval of a stipulation and agreed order in which the Lees' claims were deemed timely filed despite their having failed to file a timely proof of claim. [*See* Docket No. 5807.]

**Alternatively, the Junsos Should Be Granted Leave to Submit a Late-Filed Proof of Claim**

18. The U.S. Supreme Court has held that a late filed claim may be permissible if a creditor can show the existence of excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship,* 507 U.S. 380, 382-83 (1993). In *Pioneer*, the Supreme Court set forth four factors that should be considered when contemplating a motion to allow a late filed proof of claim under Rule 9006(b): (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the delay was in good faith. Id. at 395. Not all factors, however, must favor the moving party. *In re XO Communications, Inc.,* 301 B.R. 782, 796 (Bankr. S.D.N.Y. 2003).

19. The Second Circuit has stated that it takes a "hard line" regarding requests under Bankruptcy Rule 9006(b)(1) to permit late-filed proofs of claim to be submitted. *Midland*

9

*Cogeneration Venture Ltd. P'ship v. Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005). Significantly, however, in all the cases cited by the Second Circuit in *Enron,* inadvertence or mistake by the claimant or its counsel was fatal. Here, conversely, the Junsos' failure to file a proof of claim was not because of inadvertence or mistake, but because of a legitimate concern that their appeal of the 363 Sale to the District Court—centering on the argument that this Court lacked subject matter jurisdiction to enter an order barring the claims against the successor—would be mooted on "related to" jurisdictional grounds if they had filed a proof of claim before their appeal rights had been exhausted. *See, e.g., Michigan Empl. Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1143 (6th Cir. 1991) (court had "related to" jurisdiction to enter an order approving a 363 sale where the party challenging the 363 sale "filed a claim and obtained creditor status").

20. The Junsos are not trying to have it "both ways" here by not filing a claim originally for tactical purposes only, while all the time anticipating they would assert claims against the Debtors regardless of the outcome. In point of fact, had the Junsos been successful in their appeal, they would not have pursued their claims against the Debtors. Junso Affidavit at ¶ 9. Having lost on the merits of their appeal, however, they should not be denied the right to recover like all other creditors on claims they made known to the Debtors and parties in interest during the 363 Sale proceedings and well in advance of the bar date. Further, given the extremely low odds the Debtors and others following the appeal placed on the likelihood of Junsos' appeal being successful, the Junsos should not be penalized for having pursued a longshot strategy, particularly given the extraordinary loss they suffered from the tragic death of Tyler Junso and the permanent disabilities suffered by his father, Kevin Junso.

21. Regarding the other "excusable neglect" factors identified above, the following points make clear that neither the Debtors nor their estate be prejudiced in any meaningful way if the Junsos are allowed to submit a late-filed claim.

- The Junsos have agreed to submit to the ADR Procedures and have agreed to cap their claim at approximately $11 million. The absence of prejudice is also evident from the Debtors' agreement in the Stipulation to neither object to nor oppose the relief requested in this Motion. Additionally, the Junsos are listed as products liability claimants on the bankruptcy schedules filed by GM. *See In re Ginther*, 2008 Bankr. LEXIS 1728 at *7 (Bankr. S.D. Tex. 2008) (late claim allowed where claim was listed on debtor's schedules as contingent, unliquidated and disputed); *In re Bruno Machinery Corp.*, 2007 U.S. Dist. LEXIS 51201 at *10 (N.D.N.Y. 2007) (late claim permitted because "Debtor had advance knowledge of the claim as they included it in Schedule F and [the creditor] had filed suit against it or this claim").

- The Junsos' claims will have only a negligible impact on the distributions of the Debtors' remaining assets to unsecured creditors and represent a very small fraction of the more than $35 billion in unsecured claims originally estimated to be allowed in these cases. Also, the Debtors have only recently filed their plan of reorganization and disclosure statement, and the claims resolution process remains in its very early stages. *See In re McKissick*, 298 B.R. 535, 540 (Bankr. W.D. Pa. 2003) (permitting late claim where "delay did not impair balloting on a proposed plan or the disclosure statement and/or the confirmation process"). Neither the Debtors nor their respective estates, therefore, will be prejudiced if the Junsos request for relief is granted.

- Also, the Junsos have not unreasonably delayed the filing of their request for relief. The Stipulation between the Debtors and the Junsos relating to this Motion was executed and filed on September 13, 2010 and the order of dismissal of the Junsos' appeal to the Second Circuit was entered on September 23, 2010. Further, given the unique circumstances surrounding the Junsos' request for relief, granting the Motion also will not open this case to a floodgate of potential claims since no other products liability claimant both objected to the 363 Sale and failed to file a proof of claim on the basis that doing so alone might moot their rights on appeal.[2]

---

[2] The four other appellants in the Junso appeal of the 363 Sale all filed timely proofs of claim.

11

**Notice**

22.     No prior request for the relief sought in this Motion has been made to this or any other Court. Notice of this Motion has been provided (a) parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24, 2010 [Docket No. 6750] (the "**Procedures Order**"), except that on account of the prohibitive cost associated with service by mail upon all the parties on the master service list, service was effected (i) by email transmission to all parties on the master service list for which email addresses existed, (ii) by regular mail to all parties on the master service list for which email addresses did not exist, and (iii) by email and regular mail to the 11 main parties-in-interest listed in Section b), Subsection a. of the *Notice and Filing Procedures* section of the Procedures Order. The Junsos submit that such notice is sufficient and no other or further notice need be provided given the limited nature of the relief requested and the great personal expense the Junsos would have to incur to effectuate mail service of this lengthy pleading on the 480 parties listed on the master service list as of October 8, 2010.

WHEREFORE, the Junsos respectfully request that the Court enter an order in substantially the form attached as **Exhibit 4** hereto (i) granting their motion to deem them as having filed an informal proof of claim and having submitted to the ADR Procedures with capped aggregate claims in an amount not to exceed $10,955,655.98 and capped individual claims in the amounts set forth in the Capping Letter, (ii) alternatively, granting their motion under Bankruptcy Rule 9006(b)(1) to submit a late filed proof of claim (subject to the ADR Procedures and capped aggregate claims not to exceed $10,955,655.98 and capped individual claims not to exceed the amounts set forth in the Capping Letter), and (iii) granting such other and further relief as is just and equitable.

| | |
|---|---|
| Dated:  October 12, 2010 | KEVIN JUNSO, NIKKI JUNSO, MATT JUNSO, COLE JUNSO, AND THE ESTATE OF TYLER JUNSO |

By:     /s/ Steve Jakubowski
    One of Their Attorneys

Steve Jakubowski (admitted *pro hac vice*)
THE COLEMAN LAW FIRM
77 West Wacker Drive, Suite 4800
Chicago, IL  60601
Tel:   (312) 606-8641
Fax:  (312) 444-1028
sjakubowski@colemanlawfirm.com