**Hearing Date: October 21, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Deadline:  October 14, 2010 at 4:00 p.m. (Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Daniel H. Golden
Philip C. Dublin
Natalie E. Levine

*Counsel for Green Hunt Wedlake, Inc.,*
*Trustee of General Motors Nova Scotia Finance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Motors Liquidation Company., *et al.,* | : | Case No. 09-50026 (REG) |
| *f/k/a General Motors Corp., et al.,* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |

**LIMITED OBJECTION OF GREEN HUNT WEDLAKE, INC., TRUSTEE OF
GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY, TO
<u>DEBTORS' PROPOSED DISCLOSURE STATEMENT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1
BACKGROUND ........................................................................................................................... 2
LIMITED OBJECTION ................................................................................................................ 5
    A.    The Disclosure Statement Fails to Provide Adequate Information Regarding the Debtors' Obligations Under the Lock Up Agreement and the Related Wind Up Claim ............................................................................................. 6
    B.    Inconsistencies in the Defined Terms Leave Creditors Unclear on their Treatment Under the Plan .................................................................................. 8
    C.    The Disclosure Statement Must be Amended to Include the Missing Claim Amounts ................................................................................................................ 9
CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Copy Crafters Quickprint, Inc.*,
  92 B.R. 973 (Bankr. N.D.N.Y. 1988) ................................................................. 5, 6

*In re Feldman*,
  53 B.R. 355 (Bankr. S.D.N.Y. 1985) ..................................................................... 5

*In re Ionosphere Clubs, Inc.*,
  179 B.R. 24 (S.D.N.Y. 1995) ................................................................................ 6

*In re Malek*,
  35 B.R. 443 (Bankr. E.D. Mich, 1983) ................................................................. 6

*In re Scioto Valley Mortg. Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988) ............................................................... 5, 6

*Kunica v. St. Jean Fin. Inc.*,
  233 B.R. 46 (S.D.N.Y. 1999) ................................................................................ 5

*Momentum Mfg. Corp. v. Empl. Creditors Comm. (In re Momentum Mfg. Corp.)*,
  25 F.3d 1132 (2d Cir. 1994) .................................................................................. 5

**STATUTES**

11 U.S.C. § 1125(a)(1) ................................................................................................ 5

Green Hunt Wedlake, Inc., in its capacity as trustee (the "**Nova Scotia Trustee**") for General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"), by and through its undersigned counsel, hereby submits this limited objection (the "**Limited Objection**") to the *Debtors' Motion for an Order (i) Approving Notice of Disclosure Statement Hearing; (ii) Approving Disclosure Statement; (iii) Establishing a Record Date; (iv) Establishing Notice and Objection Procedures for Confirmation of the Plan; (v) Approving Solicitation Packages; and Procedures for Distribution Thereof; (vi) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (vii) Approving the Form of Notices to Non-Voting Classes under the Plan* (Docket No. 6854) (the "**Motion**").  In support of this Limited Objection, the Nova Scotia Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  By the Motion, the Debtors[1] ask this Court to approve a disclosure statement (Docket No. 6830) (the "**Disclosure Statement**") that contains material omissions, not only with respect to the Nova Scotia Trustee's claim, but also with respect to the treatment of similarly situated unsecured creditors.  The Nova Scotia Trustee has provided the Debtors with proposed language to resolve each of its objections to the Disclosure Statement (aside from Claims estimate information, which only the Debtors possess).  To date, the Debtors have refused to incorporate the Nova Scotia Trustee's requested disclosures.  Attached hereto as Exhibit A is the proposed language that would resolve this Limited Objection.

2.  Without revision and supplemental information—such as a description of the Nova Scotia Trustee's Claim and the amount in which the Nova Scotia Trustee's Claim may be

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Proposed Debtors' Joint Chapter 11 Plan, dated August 31, 2010 (Docket No. 6829) (the "**Plan**") and Disclosure Statement.

Allowed—creditors will not be able to make an informed judgment whether to vote to accept or reject the Plan.

## BACKGROUND

3. The Nova Scotia Trustee is the statutory trustee appointed under the Bankruptcy and Insolvency Act in Canada (the "**BIA**") to oversee the winding up proceedings of GM Nova Scotia. GM Nova Scotia is a Nova Scotia unlimited company and a direct, wholly owned subsidiary of MLC. GM Nova Scotia was formed to issue debt and allow the General Motors group to benefit from favorable tax treatment in both the United States and Canada. GM Nova Scotia is the issuer of notes under the Fiscal and Paying Agency Agreement among GM Nova Scotia, General Motors Corp., Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Général du Luxembourg S.A., as paying agent, dated as of July 10, 2003 (the "**Fiscal and Paying Agency Agreement**"). According to the proofs of claim filed in these cases by the Noteholders (as defined below), as of the date of GM Nova Scotia's bankruptcy order, there were approximately $1.07 billion in notes outstanding under the Fiscal and Paying Agency Agreement (the "**GM Nova Scotia Notes**"). GM Nova Scotia is the primary obligor on the GM Nova Scotia Notes and MLC is a guarantor of the GM Nova Scotia Notes. Accordingly, the holders of the GM Nova Scotia Notes (the "**Noteholders**") have a claim against MLC on account of such guarantee (the "**Guarantee Claim**").

4. Prior to the Commencement Date, GM Nova Scotia was also party to a currency swap arrangement (the "**Swap Arrangement**") with MLC. MLC assumed the Swap Arrangement in connection with the 363 Transaction and assigned such arrangement to New GM. New GM has filed a claim in the Winding Up Proceeding (defined below) alleging that GM Nova Scotia's liability under the Swap Arrangement as of October 9, 2009 was approximately $564 million (the "**Swap Liability**").

2

5. On October 9, 2009, the Supreme Court of Nova Scotia entered an order declaring GM Nova Scotia bankrupt under the BIA and appointing the Nova Scotia Trustee to oversee GM Nova Scotia's winding up (the "**Wind Up Proceeding**"). The Nova Scotia Trustee, as an officer of the Supreme Court of Nova Scotia, has obligations to the creditors of GM Nova Scotia, including the obligation to examine claims against GM Nova Scotia and maximize GM Nova Scotia's assets for distribution to its creditors.

6. The Nova Scotia Trustee's claim against MLC arises out of section 135 of the *Companies Act* Nova Scotia (the "**Companies Act**"). Because GM Nova Scotia is an unlimited company, upon its winding up, its members are exposed to unlimited liability for its obligations, including unpaid debts and the costs of administering the winding up proceeding. *Companies Act*, R.S.N.S. 1989, c. 81 (Nova Scotia). In connection with the Wind Up Proceeding, the Noteholders have asserted claims against GM Nova Scotia for in excess of $1.04 billion. MLC's obligations to the Noteholders and in respect of the Swap Liability, which aggregate $1,607,647,592.49, plus additional windup costs (collectively, the "**Wind Up Claim**"), are assertable against MLC as the sole member of GM Nova Scotia pursuant to the Companies Act.

7. On November 25, 2009, the Nova Scotia Trustee filed a proof of claim (claim no. 65814) against MLC for not less than $1,607,647,592.49 in respect of the Wind Up Claim. On November 30, 2009, the Nova Scotia Trustee filed an amended claim (claim no. 66319), providing additional detail regarding the Wind Up Claim.[2]

8. GM Nova Scotia is also party to a prepetition agreement with GM Canada, MLC and certain of the Noteholders providing for their mutual cooperation in connection with the 363

---

[2] By an omnibus objection dated September 17, 2010, the Debtors objected to the claim no. 65814 as duplicative of claim no. 66319. The Nova Scotia Trustee has not contested this non-substantive objection, but reserves all rights with respect to the amended proof of claim.

3

Transaction and MLC's Chapter 11 Cases (the "**Lock Up Agreement**").[3] The Lock Up Agreement, the product of extensive negotiation among the MLC, GM Canada and their significant creditor constituencies, was signed on June 1, 2009 and contained the following material terms:

- GM Nova Scotia, GM Canada and MLC agreed that (i) the Wind Up Claim is enforceable against MLC as a general unsecured claim, (ii) the GM Nova Scotia Notes are enforceable against GM Nova Scotia in their full amount, and (iii) the Guarantee Claim is enforceable against MLC as a general unsecured claim. *See* Lock Up Agreement at ¶ 6(a), 6(b)(ii), (iii).

- GM Nova Scotia agreed to consent to entry of an order under the BIA and appointment of the Nova Scotia Trustee. *See* Lock Up Agreement at ¶ 6(b)(i).

- GM Canada funded a fee (the "**Consent Fee**") into an escrow account, which would be payable to the Noteholders upon their passing an extraordinary resolution. *See* Lock Up Agreement at ¶ 2.

- GM Canada was relieved of its liability under certain intercompany loans to GM Canada (the "**GM Canada Loans**"), *provided*, *however*, that if the Consent Fee is successfully challenged, the full amount owing under the GM Canada Loans will be immediately due and payable by GM Canada to GM Nova Scotia. *See* Lock Up Agreement at ¶ 5(b).

- The Noteholders agreed to discontinue prosecution of certain litigation against GM Nova Scotia, GM Canada, GM and their respective officers and directors, *provided*, *however*, that the action may be reinstituted if the Consent Fee is required to be disgorged. *See* Lock Up Agreement at ¶ 5(a).

- MLC agreed that if, for any reason, any portion of the Wind Up Claim is disallowed, GM Nova Scotia's liability to MLC on the Swap Claim would be subordinated to full repayment of the GM Nova Scotia Notes. MLC further agreed not to assert any setoff rights with respect to the Wind Up Claim. *See* Lock Up Agreement at ¶ 6(b)(v), (vi).

The Lock Up Agreement also contained termination provisions in the event any party to the Lock Up Agreement failed to uphold its obligations. *See* Lock Up Agreement at ¶3. As noted

---

[3] A copy of the Lock Up Agreement is attached hereto as <u>Exhibit B</u>.

4

above, in connection with the 363 Transaction, MLC assumed and assigned the Lock Up Agreement to New GM.

9. On July 2, 2010, the Official Committee of Unsecured Creditors filed its *Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* (Docket No. 6248) (the "**Claims Objection**"). Through the Claims Objection, the Committee is seeking disallowance of or, in the alternative, equitable subordination of the Wind Up Claim and certain of the Noteholders' Claims. A hearing on the Claims Objection is currently scheduled for November 18, 2010. Despite their obligations under the Lock Up Agreement, to date, the Debtors and New GM have remained silent regarding the Claims Objection.

10. On August 31, 2010, the Debtors filed the Plan and Disclosure Statement, neither of which references either the Wind Up Claim or the Lock Up Agreement.

## LIMITED OBJECTION

11. Bankruptcy Code section 1125 defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records… that would enable … a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The disclosure statement is the primary source of information upon which creditors rely in making an informed judgment about a plan of reorganization and, accordingly, it must provide sufficient information to enable an impaired class to evaluate a plan. *Momentum Mfg. Corp. v. Empl. Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Feldman*, 53 B.R. 355, 358-59 (Bankr. S.D.N.Y. 1985); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988). A disclosure statement should not be approved "if it does not contain such information so that all creditors and equity shareholders can make an

5

intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (N.D.N.Y. 1988); *see also Kunica v. St. Jean Fin. Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (citing *In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert denied*, 488 U.S. 967 (1988)) ("The importance of full disclosure is underlaid [sic] by the reliance placed upon the disclosure statement by the creditors and the court.").

12. What constitutes adequate information in any particular instance must be determined based on the facts and circumstances presented by each case. *In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 29 (S.D.N.Y. 1995) (adequacy of a disclosure statement is to be determined on a case by case basis); *Quickprint,* 92 B.R. at 979 (same). In virtually every circumstance, however, a debtor must disclose all claims and liabilities in order to comply with Bankruptcy Code section 1125(a). *See*, *e.g.*, *In re Malek*, 35 B.R. 443, 444 (Bankr. E.D. Mich, 1983) ("The Debtor must also provide financial information sufficient to inform the creditors of all liens, encumbrances, security interests, loans or other financial obligations which may impair the Debtor or his assets."); *Scioto*, 88 B.R. at 170-71 (finding that "information regarding claims against the estate" should be included in a disclosure statement). In sum, despite the fluid definition of adequate information, there is little disagreement that material claims against the estate must be disclosed.

**A.  The Disclosure Statement Fails to Provide Adequate Information Regarding the Debtors' Obligations Under the Lock Up Agreement and the Related Wind Up Claim**

13. As drafted, the Disclosure Statement omits any reference to the Debtors' obligations under the Lock Up Agreement and in respect of the Wind Up Claim. Without appropriate disclosure of these issues, creditors entitled to vote on the Plan will be unable to evaluate the plan properly or make an informed judgment when voting to accept or reject the Plan.

6

14.     As discussed above, the Wind Up Claim is a statutory claim, the validity of which is mandated by applicable non-bankruptcy law and the allowance of which MLC confirmed prepetition. For the benefit of creditors entitled to vote on the Plan, it is crucial that the Disclosure Statement elaborate on the allowance of the Wind Up Claim and the potential consequences of MLC's failure to abide by its obligations under the Lock Up Agreement.

15.     The Debtors' compliance with the terms of the Lock Up Agreement was material to the resolution of the Noteholders' prepetition litigation against MLC, GM Canada, and GM Nova Scotia. The Debtors' failure to continue to comply with the entirety of the Lock Up Agreement not only materially and negatively impacts the Nova Scotia Trustee, but also may give rise to additional causes of action against MLC, GM Canada and/or New GM that could adversely impact creditor recoveries. First, the Lock Up Agreement specifically obligates MLC (and, following assumption and assignment of the agreement, New GM) to support the allowance of the Wind Up Claim. Lock Up Agreement at ¶ 6(b)(iii), (viii). Failure to comply with this obligation could subject MLC and/or New GM to litigation and postpetition liability. Second, upon a material breach of the Lock Up Agreement by MLC or New GM, the Noteholders may, among other things, terminate the Lock Up Agreement and reinstate litigation against GM, GM Nova Scotia and GM Canada. Third, to the extent the Consent Fee is required to be disgorged, GM Canada (and ultimately New GM) will be subject to additional liabilities for the full amount of the GM Canada Loans (approximately CAN$1.3 billion), which may impact the value of securities to be distributed to unsecured creditors of MLC under the Plan. Without disclosure of the Wind Up Claim, the obligations in the Lock Up Agreement (including the requirement to allow the Wind Up Claim) and the consequences for the breach of the Lock Up

7

Agreement by MLC and/or New GM, creditors will not have sufficient information to vote on the Debtors' Plan.

**B.    Inconsistencies in the Defined Terms Leave Creditors Unclear on their Treatment Under the Plan**

16.    The Disclosure Statement must be modified to remedy certain drafting errors that could confuse creditors about the nature and amounts of their Claims, and whether such Claims will be Allowed under the Plan. Specifically:

- The definition of Eurobond Claims is overly broad, encompassing all Claims against the Debtors "*arising under or in connection with* [the applicable agreements]." Plan, Art. 1.72 (emphasis added). Because the definition is vague and could be read to improperly encompass both the Guarantee Claim and the Wind Up Claim, the Plan and Disclosure Statement should be modified to define the Guarantee Claim separately from the Wind Up Claim.

- The Disclosure Statement provides that the Eurobond Claims will be Allowed. Disclosure Statement III.C. However, the definition of "Disputed" suggests that the Wind Up Claim and the Guarantee Claim, each of which are subject to an objection, are Disputed for purposes of the Plan. Plan, Art. 1.53. The Disclosure Statement and Plan should be modified to specifically allow the Guarantee Claim and the Wind Up Claim.

- The Disclosure Statement explains that the GUC Trust Administrator will have the authority to sell New Warrants that are set to expire, including the New Warrants held in the Disputed Claims Reserve, and distribute the proceeds to holders of Allowed General Unsecured Claims. Disclosure Statement at III.F.6; Plan, Art. 5.2(e). The Disclosure Statement does not, however, indicate that the proceeds from New Warrants in the Disputed Claims Reserve will be held for the benefit of Disputed Claims, pending resolution of such Claims. The Disclosure Statement should thus specify that the appropriate proceeds will be maintained in the Disputed Claims Reserve.

- The Disclosure Statement explains that the GUC Trust Administrator will have the authority to sell the GUC Trust Assets. Disclosure Statement at III.G.2.f; Plan, Art. 6.2(f). The Disclosure Statement fails, however, to explain whether the GUC Trust Administrator will be authorized to sell GUC Trust Assets held on account of Disputed Claims. The Disclosure Statement should specify that the GUC Trust Administrator will not have the power to sell the GUC Trust Assets being held on account of Disputed Claims, except in accordance with Article 5.2(e) of the Plan.

- The Disclosure Statement fails to adequately describe the disputed claims reserve that will be created for holders of Disputed General Unsecured Claims.

8

>Specifically, the Debtors fail to disclose the amount of New GM Securities and Cash that will be retained for Disputed Claims. Disclosure Statement at III.C.; Plan, Art. 4.3(a). The Disclosure Statement must, therefore, be amended to disclose the percentage of New GM Securities and Cash that will be retained, pending resolution of the Disputed Claims.

- Although the Disclosure Statement includes estimation procedures, the current language fails to indicate whether the proposed process for estimation of Claims is intended to fix the amount of the Claims for voting purposes or distribution purposes. Disclosure Statement at III.H.3; Plan, Art. 7.3. Creditors are entitled to clear notice regarding potential limitations of their Claims. Accordingly, the procedures should be revised to specify the purposes for which the estimated Claim amount will be used. In addition, the Wind Up Claim and the Guarantee Claim should be specifically excluded from the estimation procedures and deemed Allowed under the Plan.

- The Disclosure Statement explains that the Plan provides for the payment of the reasonable fees and expenses of the Indenture Trustees, but it fails to describe (i) the mechanism for distribution to the Noteholders and (ii) whether the Debtors will provide for the payment of the reasonable fees and expenses of the Fiscal and Paying Agents. Plan, Art. 2.5. The Plan must be amended to specifically provide for distributions to be made through the Fiscal and Paying Agents, as required by the Fiscal and Paying Agency Agreement, and to provide for payment of the associated fees. To the extent such expenses will not be paid by the estates, the Noteholders' recoveries will be proportionally reduced to cover such costs. The Debtors must therefore disclose why the Noteholders will be treated differently from similarly situated unsecured creditors.

The Nova Scotia Trustee has provided the Debtors with language that would resolve each of the foregoing objections, but as of the filing of this Limited Objection, the Debtors have not agreed to revise the Plan and Disclosure Statement.

**C.    The Disclosure Statement Must be Amended to Include the Missing Claim Amounts**

17.    The Disclosure Statement must be modified in order to give all creditors a range of recoveries or, at a minimum, the quantum of creditors who will share in the limited assets at each class.[4] As drafted, the Disclosure Statement does not allow creditors to make an informed judgment on the Plan because it omits (i) Allowed Claim amounts with respect to material

---

[4] The Debtors believe estimates of recoveries are unnecessary because of the liquidating nature of the Plan. See Disclosure Statement at Art. III.

9

Claims (including the Wind Up Claim) and (ii) estimated total Allowed Claims in each class. Without estimates of the amounts of Allowed Claims that will share in the distributions to each Class, the Disclosure Statement fails to meet the standards set forth in Bankruptcy Code section 1125 and cannot be approved.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the Nova Scotia Trustee respectfully requests that the Court (i) deny the relief requested in the Motion or, in the alternative, require the Debtors to modify the Disclosure Statement to incorporate the Nova Scotia Trustee's proposed revisions before the Disclosure Statement can be approved and (ii) grant the Nova Scotia Trustee such other and further relief as this Court deems just, proper and equitable.

Dated: October 14, 2010

                                            Respectfully Submitted,

                                            */s/*   Philip C. Dublin
                                            Daniel H. Golden
                                            Philip C. Dublin
                                            Natalie E. Levine
                                            Akin Gump Strauss Hauer & Feld LLP
                                            One Bryant Park
                                            New York, NY 10036
                                            Telephone:  (212) 872-1000
                                            Facsimile:  (212) 872-1002

                                            *Counsel to Green Hunt Wedlake, Inc. as Trustee of Nova Scotia Finance Company*