**Hearing Date and Time:  October 21, 2010 at 9:20 a.m. (Eastern Time)**
**Objection Deadline:  October 14, 2010 at 4:00 p.m. (Eastern Time)**

STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter C. D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
Jacob L. Newton (Admitted *Pro Hac Vice* )
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Facsimile:  214-969-4999

Counsel for Dean M. Trafelet in his
Capacity as Legal Representative for Future Asbestos
Personal Injury Claimants

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| MOTORS LIQUIDATION COMPANY, *et al.,* | ) | Case No. 09-50026 (REG) |
|  | ) |  |
| f/k/a General Motors Corp., *et al.* | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

-------------------------------------------------------------X

## OBJECTION OF THE LEGAL REPRESENTATIVE
## FOR FUTURE ASBESTOS CLAIMANTS TO THE
## DISCLOSURE STATEMENT FOR DEBTORS' JOINT CHAPTER 11 PLAN

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................i

TABLE OF AUTHORITIES....................................................................ii

I.     INTRODUCTION ...................................................................... 1

II.    THE FUTURE CLAIMANTS' REPRESENTATIVE ............................. 2

III.   GROUNDS FOR THE OBJECTION.................................................. 4

    A.    Requirements for a Disclosure Statement .................................. 4

    B.    The Disclosure Statement Fails to Provide
         Adequate Information and Should Not be Approved .................. 6

         1.    *There is no information regarding the
               Debtors' attempts to discharge non-debtor
               third parties*.......................................................... 6

         2.    *The Debtors' Disclosure Regarding Its
               Asbestos Claims Is Wholly Inadequate*............................. 8

             a.    *The Debtors' disclosures regarding the
                    funding of the Asbestos Trust and the
                    projected recoveries for asbestos
                    creditors are wholly inadequate*.............................. 9

             b.    *There is no information regarding the
                    nature of the Debtors' asbestos-related
                    liability in the Disclosure Statement*.................... 10

             c.    *The Disclosure Statement does not
                    provide a discussion of the effort to
                    quantify the Debtors' aggregate
                    asbestos-related liability*........................................ 12

             d.    *A simple, unambiguous description of
                    the Debtors' Asbestos Insurance
                    Assets and the Debtors' other
                    insurance assets should be provided in
                    the Disclosure Statement*........................................ 13

    C.    The Disclosure Statement Cannot be Approved
         Because it Discloses an Unconfirmable Plan.............................. 16

    D.    The Disclosure Statement Should Be Amended if
         Material Modifications are Made to the Plan............................. 17

IV.   RESERVATION OF RIGHTS ...................................................... 17

V.    CONCLUSION ...................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*In re Combustion Eng'g, Inc.,*
    391 F.3d 190 (3d Cir. 2004) .................................................................. 16

*In re Ionosphere Clubs, Inc.,*
    179 B.R. 24 (S.D.N.Y. 1995) ..................................................................... 5

*In re Metromedia Fiber Network, Inc.*
    416 F.3d 136 (2d Cir. 2005) ................................................................. 6, 7

*In re Phoenix Petroleum Co,*
    278 B.R. 385 (Bankr. E.D. Pa. 2001) .................................................... 4, 5

*In re Quigley Co.,*
    377 B.R. 110 (Bankr. S.D.N.Y. 2007) .................................................... 16

*In re Scioto Valley Mortgage Co.,*
    88 B.R. 168 (Bankr. S.D. Ohio 1988) .................................................. 4, 5

*In re 266 Washington Assocs.,*
    141 B.R. 275 (Bankr. E.D.N.Y. 1992), *aff'd, In re*
    *Washington Asssocs.,* 147 B.R. 827 (E.D.N.Y. 1992) ........................... 16

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
    848 F.2d 414 (3d Cir. 1998), *cert. denied by* 488 U.S. 967
    (1988) ........................................................................................................ 5

## STATUTES

11 U.S.C. § 105(a) ............................................................................................ 16
11 U.S.C. § 524(g) ............................................................................................ 16
11 U.S.C. § 1125(a)(1) ........................................................................................ 4
11 U.S.C. § 1125(b) ............................................................................................ 4

## OTHER AUTHORITIES

General Motors Corp., 2008 Annual Report (2009) ........................................... 2

ii

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Dean M. Trafelet, in his capacity as the legal representative for holders
of future asbestos personal injury claims against the Debtors (the "**Future
Claimants' Representative**") in the above-captioned jointly administered
chapter 11 cases, submits this Objection to the Disclosure Statement for
Debtors' Joint Chapter 11 Plan (the "**Objection**").

## I.   INTRODUCTION

1.   The Future Claimants' Representative has a crucial role in the
Debtors' efforts to confirm a joint plan of liquidation that provides payments
to holders of current and future Asbestos Personal Injury Claims.[1]  The
Future Claimants' Representative has reviewed the Disclosure Statement for
Debtors' Joint Chapter 11 Plan [Doc. No. 6830] (the "**Disclosure Statement**")
and believes that modifications are necessary to provide creditors and other
parties in interest with adequate information to enable them to decide
whether to support the Debtors' Joint Chapter 11 Plan [Doc. No. 6830] (the
"**Plan**").  The Future Claimants' Representative files this Objection to address
specific revisions that he believes are necessary in order to provide adequate
disclosure.

---

[1] Capitalized terms not defined herein are accorded the meaning ascribed to them in Debtors'
Joint Chapter 11 Plan.

1

## II.    THE FUTURE CLAIMANTS' REPRESENTATIVE

2.      Motors Liquidation Company f/k/a General Motors Corporation
("**MLC**") historically incurred significant liability with respect to asbestos
personal injury claims.  *See* MLC's Motion Pursuant to Sections 105 and 1109
of the Bankruptcy Code for an Order Appointing Dean M. Trafelet as Legal
Representative for Future Asbestos Personal Injury Claimants [Doc. No.
5214] (the "FCR Motion") at p. 2, ¶ 3.  At the time these cases were
commenced, approximately 29,000 asbestos personal injury claims were
pending against MLC, and MLC's consolidated books and records reflected a
reserve of approximately $660 million with respect to its liability for present
and future asbestos claims.  *Id.*  MLC's $660 million asbestos reserve,
however, is not an estimate of MLC's aggregate asbestos liability, but is
instead merely a reserve for MLC's current and future asbestos liability over
a ten-year period.  *See, e.g.,* General Motors Corp., 2008 Annual Report 206
(2009).  Accordingly, the true extent of MLC's aggregate asbestos liability
may be much higher than MLC's reserve.

3.      MLC recognized that because of the nature of exposure to
asbestos-containing products, there are people who have been exposed to such
products that have not yet manifested a disease but may do so in the future.
FCR Motion at p. 2, ¶ 4.  In order to assure that the interests of such future
claimants were addressed and to afford them due process, the Debtors seek to

establish a trust that provides for payment to holders of present and future asbestos-related personal injury claims. *Id.* at p.3, ¶ 5.

4.      Accordingly, the Debtors believed that it was appropriate to have the interests of future asbestos-related personal injury claimants represented by the Future Claimants' Representative in connection with the formulation, negotiation and confirmation of a chapter 11 plan. *Id.* at p. 3, ¶ 6. The Debtors and the Official Committee of Unsecured Creditors (the "**Committee**") anticipated that the Future Claimants' Representative and the Official Committee of Asbestos Claimants (the "**ACC**") would employ professionals—including asbestos claims valuation experts—who would interact and negotiate with the Debtors and the Committee and their respective retained professionals in connection with the chapter 11 plan and the consideration to be distributed to the trust for the benefit of holders of present and future asbestos-related personal injury claims. *Id.*

5.      The Court entered an order on April 8, 2010 appointing the Future Claimants' Representative and ordering that the Future Claimants' Representative shall have standing to be heard as a party in interest in all matters relating to these jointly administered chapter 11 cases. *See* Order Pursuant to Sections 105 and 1109 of the Bankruptcy Code Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claims [Doc. No. 5459].

3

### III.    GROUNDS FOR THE OBJECTION

**A.    Requirements for a Disclosure Statement**

6.    The purpose of a Disclosure Statement is to provide the creditors and shareholders of a debtor and other parties in interest with sufficient information to understand and evaluate the debtor's proposed plan of reorganization.  *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) ("The disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization.").

7.    To achieve that purpose, Section 1125(b) of the Bankruptcy Code requires that each holder of a claim or interest receive a written disclosure statement that has been approved by the court as containing adequate information.  11 U.S.C. § 1125(b).  "Adequate information" is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, … that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan....

11 U.S.C. § 1125(a)(1).

8.    "Adequate information" is determined on a case-by-case basis.

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed of solicitation and confirmation, and, of course, the need for investor protection.

4

*In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001)
(citations omitted).

9.      While there is no formula to determine precisely what
information should be included in a disclosure statement, "[g]enerally, the
disclosure statement should set forth 'all those factors presently known to the
plan proponent that bear upon the success or failure of the proposals
contained in the plan.'" *Scioto Valley*, 88 B.R. at 170 (citation omitted).

10.     The Third Circuit Court of Appeals articulated what it
characterized as "the debtor's express obligation of candid disclosure" as
follows:

> The importance of full disclosure is underlaid by the reliance
> placed upon the disclosure statement by the creditors and the
> court.   Given this reliance, we cannot over emphasize the
> debtor's obligation to provide sufficient data to satisfy the Code's
> standard of "adequate information."

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.
1988), cert denied by 488 U.S. 967 (1988).

11.     The United States District Court for the Southern District of
New York has described the appropriate review of a disclosure statement by
the bankruptcy court as involving:

> a fact-specific inquiry into the particular plan to determine
> whether it [the disclosure statement] possesses "adequate
> information" under § 1125.

*In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 29 (S.D.N.Y. 1995).

12.     In other words, to contain adequate information, a disclosure
statement must describe the chapter 11 plan being proposed with enough

5

specificity and clarity to enable a hypothetical reasonable investor to make

an informed judgment as to whether to support or vote in favor of the plan.

13.    As demonstrated below, the Disclosure Statement does not

provide adequate information to enable the Future Claimants'

Representative or the Debtors' creditors to understand and evaluate the Plan.

**B.    The Disclosure Statement Fails to Provide Adequate Information and Should Not Be Approved.**

### 1.    *There is no information regarding the Debtors' attempts to discharge non-debtor third parties*

14.    The Disclosure Statement fails to disclose to creditors that the

Debtors' Plan may impermissibly seek to release non-debtor third parties,

including New GM, from future asbestos liability and to enjoin creditors from

bringing lawsuits against those non-debtor parties.

15.    The Plan provides that the "sole recourse" of all holders of

Asbestos Personal Injury Claims—including future asbestos claimants—is

the Asbestos Trust, and that future asbestos claimants "shall have no right

whatsoever" to assert their future asbestos claims against any Protected

Party.  *See* Plan, § 4.5.  The definition of "Protected Party", however, is not

limited to the Debtors and the Debtors' agents as it should be in the context

of a non-Section 524(g) bankruptcy case.  Instead, "Protected Party" is overly

broad[2] and could arguably encompass New GM and other non-debtor third

parties that should not be protected from future asbestos claims.  *See In re*

---

[2] *See* Plan, § 1.108.

*Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-42 (2d Cir. 2005) (finding that because the Bankruptcy Code does not expressly authorize non-debtor releases except pursuant to Section 524(g), and because such releases are subject to abuse, third party releases and injunctions are proper "only in rare cases"). In fact, the Second Circuit in *Metromedia* recognized that "[n]o case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique." *Id.* at 142. The Future Claimants' Representative might agree to protection for New GM should New GM make a substantial contribution to the Asbestos Trust, but as of the present date the Future Claimants' Representative is not aware of any funds being paid by New GM to the Asbestos Trust.

16.     Here, there are no rare and unique circumstance justifying the overly broad release and injunction of a "Protected Party" in the current case. Moreover, the Bankruptcy Court has already recognized the constitutional problems involved with any attempt to enjoin future asbestos claimants from pursuing non-debtor third parties. *See* Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle Acquisition Holdings LLC; (2) Assumption and Assignment of Related Executory Contracts; and (3) Entry Into UAW Retiree Settlement Agreement, p. 63 [Dkt. No. 2967, entered July 5, 2009] (recognizing the constitutional problems associated with enjoining the rights of future asbestos claimants to assert future asbestos claims against non-debtor third parties). Hence, these provisions will likely cause

7

the Plan to be unconfirmable, yet no disclosure of these issues is included in

the Disclosure Statement.  The Future Claimants' Representative seeks

additional disclosure as follows:

- The Plan purports to release nondebtor third parties, including New GM, from all asbestos liability and to enjoin creditors from filing suit on account of such asbestos liability.  Based on prior statements from the Bankruptcy Court and other courts, there is a significant risk that the release and injunction provisions in the Plan will be determined to be Constitutionally impermissible, thus rendering the Plan unconfirmable.

- By providing that the "sole recourse" of all holders of Asbestos Personal Injury Claims—including future asbestos claimants—is the Asbestos Trust, the Plan arguably precludes those holders from pursuing unrelated third parties for their own, independent involvement with asbestos.  There is a significant risk that the Bankruptcy Court will not confirm any plan that includes this or similar provisions.

- The definition of "Protected Party" in the Plan includes New GM, thus releasing New GM from all asbestos liability and precluding creditors from suing New GM despite the fact that New GM is paying no consideration for its release and the injunction.  There is a significant risk that the Bankruptcy Court will not confirm any plan that includes this or similar provisions.

Further, all objections herein are reserved and may be reasserted as

confirmation objections.

### 2.    *The Debtors' Disclosure Regarding Its Asbestos Claims Is Wholly Inadequate.*

17.    The Disclosure Statement does not contain adequate

information regarding the Debtors' asbestos-related liabilities.  Although the

Plan contemplates the creation of a trust (the "**Asbestos Trust**") to process,

8

liquidate and pay Asbestos Personal Injury Claims, no information is given to asbestos creditors regarding the funding being provided to the Asbestos Trust, the estimated amount of the Allowed Asbestos Personal Injury Claims that will share in such funding, the proposed treatment of such claims by the Asbestos Trust, or the estimated recovery that individual asbestos claimants may expect. In addition, the Disclosure Statement does not include any discussion of the nature and extent of the Debtors' asbestos-related liabilities, the efforts to quantify those liabilities, or a description of the Debtors' insurance assets.

> **a.    *The Debtors' disclosures regarding the funding of the Asbestos Trust and the projected recoveries for asbestos creditors are wholly inadequate.***

18.    The Disclosure Statement fails to provide asbestos creditors (and other creditors) with any information about the ultimate funding of the Asbestos Trust, the estimated amount of Allowed Asbestos Personal Injury Claims (Class 5), the proposed treatment of such claims by the Asbestos Trust, or the projected recovery of individual asbestos creditors (current *and future*) under the Plan. These same deficiencies carry over into the defined terms under the Debtors' Plan, including the "Asbestos Trust Claim" and the "Asbestos Trust Assets," both of which fail to provide any information to asbestos creditors. Absent meaningful disclosure of such information in the Disclosure Statement, current asbestos creditors cannot determine what distribution they are likely to receive, when they are likely to receive it, and

the potential contingencies that may impact their recovery. Likewise, the Debtors' failure to disclose this information significantly impairs the Future Claimants' Representative's ability to evaluate whether the Plan provides a fair and equitable treatment for the future asbestos creditors whose interests the Future Claimants' Representative is charged with protecting.

19.     The absence of any meaningful information regarding the funding of the Asbestos Trust and the projected recoveries of asbestos creditors highlights one of the fundamental problems with the Debtors' Plan, *i.e.*, the Debtors' improper attempts to confirm their Plan *prior to* resolving the Debtors' substantial asbestos liabilities. It is inappropriate and inequitable to force asbestos creditors to vote on a Plan that contains basically no information about the extent of the Debtors' asbestos liabilities, the proposed funding of the Asbestos Trust, and the estimated recoveries that each asbestos creditor may receive on account of his or her asbestos-related disease, and this Court should not approve any Disclosure Statement that fails to contain this basic information.

>    ***b.***     ***There is no information regarding the nature of the Debtors' asbestos-related liability in the Disclosure Statement.***

20.     The Disclosure Statement should include a description of the Debtors' historical business operations and the Debtors' use of asbestos and asbestos-containing products. The Debtors' Plan contemplates the channeling of all of the Debtors' current and future asbestos liability to the

Asbestos Trust, and more complete information regarding the Debtors' use of
asbestos and asbestos-containing products in all of their operations,
including, but not limited to, the Debtors' automotive manufacturing
operations, should be provided.

21.    A preliminary review of publicly available documents reveals
that the Debtors have significant asbestos liability based on the Debtors' use
of asbestos and asbestos-containing products in a variety of different business
segments.  For example, the Debtors should acknowledge in the Disclosure
Statement that they manufactured locomotives, locomotive engines, and
other locomotive parts that contained asbestos or asbestos-containing
products, and that the Debtors have been named as a defendant in no fewer
than seven jurisdictions for claims related to exposure to asbestos or
asbestos-containing products used in the production of Debtors' locomotives
and locomotive engines.  The Debtors' should also disclose that their
asbestos-related liabilities also stem from the use of asbestos in various parts
found in their locomotives such as exhaust stack gaskets, pipe insulation,
brake shoes, insulating tape, steam generators and air lines.  The Disclosure
Statement should also disclose the Debtors' potential liability relating to the
Debtors' use of asbestos or asbestos-containing products in motors, engines,
engine powered generators and other propulsion devices within the maritime
industry.  The Disclosure Statement should be amended to clearly identify all
the various sources of the Debtors' asbestos-related liabilities, including its

11

automotive products, locomotive products, marine products, and premises

liability.  Such information is necessary to give possible holders of Asbestos

Personal Injury Claims notice of the types of products manufactured or used

by the Debtors to which they might have been exposed.  All holders of

potential current and future Asbestos Personal Injury Claims should have

notice that the Asbestos Trust is being established to process and, if

appropriate, pay those current and future Claims.

> c.    *The Disclosure Statement does not provide a discussion of the effort to quantify the Debtors' aggregate asbestos-related liability.*

22.    The Disclosure Statement fails to provide any information

regarding the Debtors' estimated liability for present and future Asbestos

Personal Injury Claims or the methods that were or will be used to arrive at

such an estimate.  While the number and value of the asbestos-related proofs

of claim filed against the Debtors are included in the Disclosure Statement,

no explanation is provided about the fact that the Debtors' aggregate liability

for Asbestos Personal Injury Claims may be determined to be significantly

different from that number.

23.    The limited information provided is not sufficient to evaluate

the Plan, the Debtors' potential asbestos-related liabilities, and the potential

recovery available to holders of Asbestos Personal Injury Claims.

Information should be provided regarding the Debtors' estimated liability for

both current and future asbestos-related personal injury claims, as well as at

12

least a rough estimate of the value of the assets available to satisfy those claims.

24.    A discussion of the Debtors' current and future asbestos-related liabilities should also describe the method or methods that were or will be used to estimate the aggregate value of the Debtors' liability for current and future Asbestos Personal Injury Claims—which will ultimately determine the amount of the Asbestos Trust Claim.  The Disclosure Statement should identify the asbestos claims valuation consultants retained by the Debtors, the Committee, the ACC, and the Future Claimants' Representative.  It also should briefly describe the work of the various claims valuation consultants in evaluating the Debtors' asbestos-related liabilities.

25.    The Disclosure Statement also should report the status of the estimation process and efforts to arrive at an agreed valuation of the Debtors' asbestos-related liabilities.  The Disclosure Statement also should inform creditors and other parties in interest that if an agreement cannot be reached regarding the valuation of the Debtors' liability for Asbestos Personal Injury Claims, that valuation will be determined by a contested estimation proceeding.

> **d.    *A simple, unambiguous description of the Debtors'***
> ***Asbestos Insurance Assets and the Debtors' other***
> ***insurance assets should be provided in the Disclosure***
> ***Statement.***

26.    The Disclosure Statement fails to provide adequate information regarding the Debtors' Asbestos Insurance Assets and the Debtors' other

13

insurance assets.  No description is given about the Debtors' insurance

policies (asbestos or otherwise), the value of any such policies, and the

potential risks associated with collecting from such policies.  Moreover, no

information or analysis is provided by the Debtors of any prepetition

insurance settlements that may be challenged under 11 U.S.C. §§ 544 and/or

548.  Moreover, the Disclosure Statement fails to disclose the reasons for

contributing the Asbestos Insurance Assets to the Avoidance Action Trust.

27.    The Debtors have simply denied creditors any meaningful

information about the Debtors insurance.  For example, Section 1.7 of the

Plan, which defines "Asbestos Insurance Assets," excludes from this

definition "any rights or claims that the Debtors have or may have against

any insurers with respect to amounts the Debtors have already paid on

account of Asbestos Claims."  *See* Plan, § 1.7.  No information is provided in

the Disclosure Statement about any such claims that the Debtors' may

possess, and creditors are left having to guess at exactly what this language

is intended to encompass.  The Debtors should provide full disclosure about

the scope of the Debtors' insurance policies (asbestos or otherwise), including

a complete list of all policies and insurers including policy limits, the value of

any such policies, any claims that the Debtors or other entities may be able to

assert against such policies, the potential risks associated with collecting

from such policies, and the Debtors' analysis of any prepetition insurance

settlements and the potential for challenging any such settlements as avoidable transfers.

28.    Furthermore, the Debtors should provide additional disclosure regarding Section 4.3(g) of the Plan (discussed on p. 45 of the Disclosure Statement), which provides that the proceeds of the Asbestos Insurance Assets will be applied first to pay the U.S. Treasury for any amount expended in connection with prosecuting the Term Loan Avoidance Action.  Because no disclosure is given for the rationale or justification behind this provision, creditors are precluded from evaluating the fairness of such a provision.

29.    Finally, the Plan and Disclosure Statement provide that the Asbestos Insurance Assets shall vest in the Avoidance Action Trust, yet the Plan at § 6.3 unfairly allocates 100% of any liability for premiums, deductibles, and all other charges, costs, fees, and expenses that may become due to any insurer in connection with the Asbestos Insurance Assets to the Asbestos Trust (rather than the Avoidance Action Trust).  The Disclosure Statement fails to provide any information regarding this allocation.  The Debtors should disclose the reasoning behind and justifications supporting this patently unfair allocation.

30.    For the reasons set forth above, the Debtors should supplement the Disclosure Statement to provide more adequate information concerning the Debtors' Asbestos Insurance Assets and the Debtors' other insurance assets.

### C. The Disclosure Statement Cannot Be Approved Because It Discloses An Unconfirmable Plan.

31.     In evaluating a disclosure statement that describes a patently unconfirmable plan, courts typically refuse to approve the disclosure statement. *See In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile."); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."), *aff'd*, *In re Washington Assocs.*, 147 B.R. 827 (E.D.N.Y. 1992).

32.     Here, the Debtors' Disclosure Statement should not be approved by the Court because it discloses a patently unconfirmable Plan. Notwithstanding the fact that the Debtors have taken great pains to attempt to distance their Plan from 11 U.S.C. § 524(g), the Plan still purports to mirror the injunctive language in 11 U.S.C. § 524(g) without complying with the necessary prerequisites of that section. Section 105(a), the sole authority for the Debtors' Plan and its accompanying channeling trust for asbestos claim, cannot be used to circumvent the mandatory prerequisites of Section 524(g). *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 n. 50 (3d Cir. 2004) ("Whatever may be the limits of § 105(a) in other contexts, we hold only that § 105(a) cannot be used to achieve a result not contemplated by the more

16

specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor.").

33.    The Debtors' Plan impermissibly purports to grant pseudo-524(g) protections to non-debtors like New GM who are not contributing funds into the Asbestos Trust. The Plan also fails to condition the creation of the Asbestos Trust on the requisite 75% approval of current asbestos claimants and the consent of the Future Claimants' Representative. The Plan, therefore, is patently unconfirmable and the Court should not condone the waste of estate resources by approving the Disclosure Statement.

**D.    The Disclosure Statement Should Be Amended if Material Modifications Are Made to the Plan.**

34.    The Debtors, the Committee, the ACC, the Future Claimants' Representative and various other parties-in-interest are engaged in negotiations regarding the structure of the Plan. These negotiations may result in modifications to the Plan. Before the Plan and Disclosure Statement are distributed for solicitation, the Disclosure Statement should be amended to reflect any material modifications made to the Plan to ensure that creditors and other parties in interest have accurate information regarding the Plan for which acceptance is being solicited.

## IV.    RESERVATION OF RIGHTS

35.    The Future Claimants' Representative reserves all of his rights to amend and/or supplement this Objection.

## V.    CONCLUSION

For all of the foregoing reasons, the Future Claimants' Representative respectfully requests the Court to enter an order denying approval of the Disclosure Statement and granting him such other and further relief to which the Court finds he is justly entitled.

Dated:  October 14, 2010
Dallas, Texas

> **STUTZMAN, BROMBERG**
> **ESSERMAN & PLIFKA,**
> **A Professional Corporation**
>
> */s/ Sander L. Esserman*
> Sander L. Esserman (Admitted *Pro Hac Vice*)
> Robert T. Brousseau (Admitted *Pro Hac Vice*)
> Peter C. D'Apice
> Jo E. Hartwick (Admitted *Pro Hac Vice*)
> Jacob L. Newton (Admitted *Pro Hac Vice* )
>
> 2323 Bryan Street, Suite 2200
> Dallas, Texas 75201
> Telephone: 214-969-4900
> Facsimile:  214-969-4999
>
> **Counsel for Dean M. Trafelet in his**
> **Capacity as Legal Representative for Future**
> **Asbestos Personal Injury Claimants**

18