HEARING DATE AND TIME: October 21, 2010 at 9:45 A.M. (Eastern Time)

Elihu Inselbuch
Rita C. Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York  10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

Trevor W. Swett III
Kevin C. Maclay
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Suite 1100
Washington, D.C.  20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Attorneys for Official Committee
of Unsecured Creditors Holding Asbestos-Related Claims*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, : | Chapter 11 Case No. |
|        f/k/a General Motors Corp., *et al.* : | |
| : | 09-50026 (REG) |
| : | |
| : | (Jointly Administered) |
| : | |
| : | |
---------------------------------------------------------------x

**OBJECTION TO DISCLOSURE STATEMENT**

DOC# 360432

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………………………………………………………ii

PRELIMINARY STATEMENT ………………………………………………………………1

ARGUMENT …………………………………………………………………………………1

I.     The Disclosure Statement Does Not Provide Adequate Information ……………………1

     A.     The Governing Legal Standards Demonstrate the Inadequacy of the Disclosure Statement …………………………………………………………1

     B.     The Disclosure Statement Fails to Provide Asbestos Personal Injury Creditors with Any Information Regarding their Potential Recoveries under the Plan …………………………………………………………………3

     C.     The Disclosure Statement Fails to Disclose that the Plan is Attempting to Insulate New GM from Liability …………………………………………6

II.     The Disclosure Statement Should be Rejected Because the Plan is Unconfirmable on its Face ………………………………………………………………8

     A.     Courts Will Not Approve Disclosure Statements Where it is Clear that the Plan is Unconfirmable …………………………………………………8

     B.     The Plan is Unconfirmable On Its Face ……………………………………8

CONCLUSION ……………………………………………………………………………12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re 266 Washington Assocs.*,
    141 B.R. 275 (Bankr. E.D.N.Y. 1992)………………………………………………… 8

*In re Adelphia Commc'ns Corp.*,
    352 B.R. 592 (Bankr. S.D.N.Y. 2006)………………………………………………… 2

*In re Combustion Eng'g, Inc.*,
    391 F.3d 190 (3d Cir. 2004) ………………………………………………………… 9

*In re Copy Crafters Quickprint, Inc.*,
    92 B.R. 973 (Bankr. N.D.N.Y. 1988)………………………………………………… 4

*In re Edwards*,
    2009 WL 2823325 (Bankr. N.D. Cal. May 5, 2009)………………………………… 7

*In re J.D. Mfg., Inc.*,
    2008 WL 4533690 (Bankr. S.D. Tex. Oct. 2, 2008) ………………………………7, 8

*In re New Haven Radio, Inc.*,
    18 B.R. 977 (Bankr. D. Conn. 1982)………………………………………………4, 5

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) …………………………………………………………1, 2

*In re Quigley Co.*,
    377 B.R. 110 (Bankr. S.D.N.Y. 2007)………………………………………………… 8

*In re Quigley Co.*,
    383 B.R. 19 (Bankr. S.D.N.Y. 2008) ………………………………………………… 5

*In re Quigley Co.*,
    __ B.R.__, 2010 WL 3528818 (Bankr. S.D.N.Y. Sept. 8, 2010) ……………………9, 10

*Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996)…………………………………………………………… 2

*In re Williams*,
    1992 WL 521537 (D. Md. Sept. 1, 1992)…………………………………………… 4

*In re Young Broad. Inc.*,
    430 B.R. 99 (Bankr. S.D.N.Y. 2010) ………………………………………………… 11

**DOCKETED CASES**

*In re Babcock & Wilcox Co.*,
  No. 00-10992 (Bankr. E.D. La.) ............................................................................... 5

*In re Owens Corning*,
  No. 00-03837 (Bankr. D. Del.) ................................................................................ 5

*In re USG Corp.*,
  No. 01-02094 (Bankr. D. Del.) ................................................................................ 5

*In re W.R. Grace*,
  No. 01-01139 (Bankr. D. Del.) ................................................................................ 5

**STATUTES**

11 U.S.C. § 105(a) ........................................................................................................ 9

11 U.S.C. § 524(g) ............................................................................................. 6, 7, 8, 9

11 U.S.C. § 524(g)(4)(A)(ii) ......................................................................................... 7

11 U.S.C. § 524(g)(4)(B)(ii) ......................................................................................... 9

11 U.S.C. § 1125 .......................................................................................................... 4

11 U.S.C. § 1125(a)(1) ................................................................................................. 2

11 U.S. C. § 1125(b) .................................................................................................... 2

11 U.S.C. § 1129(a)(2) ................................................................................................. 2

11 U.S.C. § 1129(b)(1) .......................................................................................... 10, 11

**OTHER AUTHORITIES**

*Collier on Bankruptcy* (16th ed. 2010) ..................................................................... 10

**PRELIMINARY STATEMENT**

1.  The Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "**Asbestos Claimants Committee**" or "**ACC**"), by and through the undersigned, hereby objects (the "**Objection**") to the Disclosure Statement (the "**Disclosure Statement**") [D.I. 6830]. In an understandable desire to get to a confirmation hearing as soon as possible, the Debtors have filed a Disclosure Statement that omits critical information that asbestos creditors will need before deciding whether to vote for or against a plan of liquidation.

2.  The Disclosure Statement completely fails to give asbestos creditors any basis on which to evaluate their potential recoveries and how their claims will be treated under the Debtors' Joint Chapter 11 Plan (the "**Plan**"). To the contrary, the Plan seeks to have those issues put off and resolved *after* confirmation. This is unacceptable and contrary to law.

3.  The Disclosure Statement also fails to inform creditors that Debtors are apparently attempting, under the Plan, to give General Motors Company ("**New GM**") additional protections and injunctions to protect it from liability that go beyond the 363 Sale Order's provisions (the "**Sale Order**") [D.I. 2968].

4.  For these reasons alone, the Plan is unconfirmable on its face, and the Disclosure Statement should be rejected for that reason as well.

**ARGUMENT**

**I.   The Disclosure Statement Does Not Provide Adequate Information**

   **A.   The Governing Legal Standards Demonstrate the Inadequacy of the Disclosure Statement**

5.  An adequate disclosure statement is a precondition to confirmation of a Chapter 11 plan. *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) (citing section

- 1 -

1129(a)(2) of the Bankruptcy Code). Pursuant to section 1125(b) of the Bankruptcy Code, acceptance or rejection of a plan may not be solicited unless the court has first approved it, after notice and a hearing, as containing "adequate information." *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (J. Gerber); 11 U.S.C. § 1125(b). "Adequate information," in turn, is defined in relevant part as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor * * * that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan * * * and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information * * *." 11 U.S.C. § 1125(a)(1).

6.  The analysis of whether a disclosure statement contains adequate information is critical for the integrity of the bankruptcy process. "Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996).

7.  As set forth by the Debtors themselves, "[t]he bottom-line requirement of a disclosure statement is that it must clearly and succinctly inform the average unsecured creditor *what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.*" Debtors' Motion for an Order (I) Approving Notice of Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Establishing a Record Date; (IV)

Establishing Notice and Objection Procedures for Confirmation of the Plan; (V) Approving Solicitation Packages; and Procedures for Distribution Thereof; (VI) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (VII) Approving the Form of Notices to Non-Voting Classes Under the Plan (the "**Disclosure Statement Motion**" cited as "**Motion**") at 7 (quotations omitted and emphasis added) [D.I. 6854]. The Disclosure Statement fails utterly in this regard, especially in regard to asbestos claimants.

### B. The Disclosure Statement Fails to Provide Asbestos Personal Injury Creditors with Any Information Regarding their Potential Recoveries under the Plan

8. The Disclosure Statement fails to inform asbestos claimants what funding is being provided for the Asbestos Trust, and leaves a blank for the estimated amount of the Allowed Asbestos Personal Injury Claims (Class 5). Disclosure Statement at 46. In fact, no determination of the estimated amount of the asbestos liability or of the appropriate amount to fund the Asbestos Trust has been made, and the definitions of "Asbestos Trust Assets" and "Asbestos Trust Claim" in the Plan fail to set forth the amount of the Debtors' aggregate asbestos liability that, under the currently-proposed Plan, will determine the funding of the Asbestos Trust. Plan at 4-5. Not only does the Disclosure Statement fail to inform Asbestos Personal Injury Claimants what amounts will fund the Asbestos Trust, but the Disclosure Statement also provides no information as to how their claims will ultimately be treated by the Asbestos Trust if the Plan is confirmed, because the operative Plan documents (the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures)[1] have not yet been drafted.

---

[1] The Asbestos Trust Agreement is defined in the Plan as "that certain Asbestos Trust Agreement executed by the Debtors and the Asbestos Trust Administrator(s), substantially in the form included in the Plan Supplement," and the Asbestos Trust Distribution Procedures are defined as "the distribution procedures to be *(Footnote continued on next page.)*

Absent description of the amount of funding of the Asbestos Trust and of the methodology of the Trust's evaluation of their claims, there is simply no basis for holders of Asbestos Personal Injury Claims to know what they are likely to receive, when they are likely to receive it, and the contingencies that may affect their recovery. This is contrary to the Debtors' own recognition of what a disclosure statement must do. Motion at 7.

9. Indeed, the list of factors also cited by Debtors as information that may be relevant and appropriate to require in a disclosure statement includes "information regarding claims against the estate." Motion at 8. *See also In re Williams*, 1992 WL 521537, *2 (D. Md. Sept. 1, 1992) ("A disclosure statement must provide the Debtors' creditors with a *full* knowledge of the assets and liabilities being dealt with.") (emphasis in original) (citing 11 U.S.C. § 1125 Notes of Committee on the Judiciary); *In re New Haven Radio, Inc.*, 18 B.R. 977, 980 (Bankr. D. Conn. 1982) (disclosure statement was defective where it "provide[d] little or no information about the debtor's assets and liabilities."). Yet, rather than providing such information so that creditors can make an informed vote on the Plan, the Debtors are attempting to have their Disclosure Statement approved and their Plan confirmed *prior* to the basic resolution of the appropriate funding for the Asbestos Trust, and completion of trust evaluation documents. This also violates the requirement of Debtors' own cited case, *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973 (Bankr. N.D.N.Y. 1988), cited in Motion at 7, that "it is important for these average investors/general unsecured creditors that the Disclosure

---

*(Footnote continued from previous page.)*

implemented by the Asbestos Trust Administrator(s) pursuant to the Plan and the Asbestos Trust Agreement to process, liquidate, and pay Asbestos Personal Injury Claims, substantially in the form included in the Plan Supplement." Plan §§ 1.12, 1.15. According to the Plan, the Plan Supplement need not be filed until "no later than ten (10) days prior to the Confirmation Hearing." Plan § 1.99.

Statement contain simple and clear language delineating the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the Plan." *Id.* at 981.

10. We are aware of no similar case where the amount of asbestos trust funding was not including in the disclosure statement. Moreover, asbestos trust agreements and asbestos trust distribution procedures are routinely negotiated, drafted and attached to the disclosure statement sent out to asbestos creditors to inform their vote.[2] Proceeding in that fashion provides asbestos creditors with the information they need to evaluate how their claims will be treated if the plan is confirmed, as those documents set forth, among other things, exactly how the trust will evaluate asbestos claims presented to it.

11. Under the Plan here, it is doubly critical that votes not be solicited from asbestos claimants until those documents have been drafted and are available to be distributed, because at least in the case of the Asbestos Trust Agreement, it *overrides* provisions of the proposed Plan with which it is in conflict. "In the event of any conflict between the terms of this Section 6.3 [addressing "The Asbestos Trust"] and the terms of the Asbestos Trust Agreement, the terms of the Asbestos Trust Agreement shall govern." Plan at 37. The Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures must be part of any ultimate solicitation packet sent out to asbestos creditors.

---

[2] *See, e.g.*, Disclosure Statement for the First Amended Joint Plan, at Exhibits 1 & 4, *In re W.R. Grace*, No. 01-01139 (Bankr. D. Del. Feb. 27, 2009) [D.I. 20873 & 20874]; Disclosure Statement with Respect to Sixth Amended Joint Plan, at Exhibits D & D-1, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. July 10, 2006) [D.I. 18339]; Disclosure Statement, at Exhibit I.A.18 & I.A.19, *In re USG Corp.*, No. 01-02094 (Bankr. D. Del. Mar. 27, 2006) [D.I. 10710]; Third Amended Disclosure Statement for the Second Amended Joint Plan, at 122 & Plan, at Exhibits D & E, *In re Babcock & Wilcox Co.*, No. 00-10992 (Bankr. E.D. La. June 25, 2003) [D.I. 4293 & 4294]; *see also In re Quigley Co.*, 383 B.R. 19, 22 (Bankr. S.D.N.Y. 2008) (setting out the scheduled values, derived from the trust distribution procedures, for all 7 disease types for the asbestos PI claims).

### C. The Disclosure Statement Fails to Disclose that the Plan is Attempting to Insulate New GM from Liability

12. It is inarguable that the Disclosure Statement does not explain to asbestos or other creditors that the current Plan language is attempting to insulate New GM from liability in ways that go beyond the Sale Order. In the Sale Order, this Court made clear that claims of successor or other liability asserted against New GM by future asbestos claimants were only barred to the extent constitutionally permissible. Sale Order at 23 (noting that "with respect to future claims or demands based on exposure to asbestos" that such a bar only applied "to the fullest extent constitutionally permissible").

13. The language of the Plan, however, no matter how obliquely written, would insulate New GM from all liability not only to present but also to future asbestos claimants. First, the definition of "Asbestos Personal Injury Claim" in the Plan includes a "Demand," which is itself defined, echoing the language of Section 524(g) of the Code, as "a demand for payment that (i) *was not a Claim* during the Chapter 11 Cases, (ii) arises out of the same or similar conduct or events that gave rise to Asbestos Personal Injury Claims addressed by the Asbestos Trust, and (iii) is to be paid or otherwise addressed by the Asbestos Trust pursuant to the Plan." Plan ¶¶ 1.8, 1.47 (emphasis added). Second, the Plan states that all Asbestos Claims "shall be channeled to the Asbestos Trust and *all Asbestos Personal Injury Claims shall be satisfied in accordance with the terms of the Asbestos Trust, the Asbestos Trust Distribution Procedures, and the Asbestos Trust Agreement. The sole recourse of the holders of Asbestos Personal Injury Claims shall be from the Asbestos Trust*, and such holders shall have no right whatsoever at any time to assert their respective Asbestos Personal Injury Claims against any Protected Party." Plan ¶ 4.5 (emphasis added).

14.  Third, the Plan makes New GM a "Protected Party."  The definition of "Protected Party" is multi-page and cumbersome.  With respect to Asbestos Personal Injury Claims in particular it includes "any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtors or the Asbestos Trust on account of Asbestos Personal Injury Claims by reason of one or more of the following:                *    *    *    *

> (e) such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the Debtors, any past or present affiliate of the Debtors, any predecessor in interest of the Debtors, or any Entity that owns or at any time has owned a financial interest in the Debtors, any past or present affiliate of the Debtors, or any predecessor in interest of the Debtors."

Plan ¶ 1.108.

15.  This definition largely tracks the language of Section 524(g)(4)(A)(ii) of the Bankruptcy Code (of course, as noted below, the Plan does not include the mandatory protections of 524(g)).  While New GM is not expressly identified within or excluded from the definition of "Protected Party" within the meaning of the Plan, the inclusion of the Section 524(g) language generally, and subsection (e) above in particular, appear to be an attempt to make New GM a Protected Party under the Plan based on New GM's involvement in the Section 363 Sale, yet no description of this inclusion is contained in the Disclosure Statement.  This kind of "hiding the ball" is inappropriate in a disclosure statement.  *See, e.g., In re Edwards*, 2009 WL 2823325, *1 (Bankr. N.D. Cal. May 5, 2009) (denying approval of Disclosure Statement and noting that "[t]he most serious problem with the Disclosure Statement is that it does not coherently disclose what payments the debtors intend to make and does not adequately discuss the feasibility of the debtors making those payments"); *In re J.D.*

*Mfg., Inc.*, 2008 WL 4533690, *2 (Bankr. S.D. Tex. Oct. 2, 2008) (not approving disclosure statement that failed to include "a schedule of liabilities, subtotaled within the classes of creditors that the Plan creates.").

16.   Significantly, this attempt to protect New GM through importation of Section 524(g)'s language likewise renders the Plan unconfirmable.

## II.   The Disclosure Statement Should be Rejected Because the Plan is Unconfirmable on its Face

### A.   Courts Will Not Approve Disclosure Statements Where it is Clear that the Plan is Unconfirmable

17.   While ordinarily plan defects that may preclude confirmation await resolution until after a confirmation hearing, it is likewise well-established that when evaluating a disclosure statement addressing a plan that is unconfirmable on its face, courts will not approve the disclosure statement. *See In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile."); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) (rejecting a disclosure statement having found "patent legal defects in the Amended Plan" and stating that "[a] disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation").

### B.   The Plan is Unconfirmable On Its Face

18.   First, it is not clear that a plan can successfully channel future asbestos claims to a trust absent the use of Section 524(g) of the Bankruptcy Code. "Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of a channeling injunction-

- 8 -

and sets out the specific requirements that must be met in order to permit inclusion, the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g)." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236-37 (3d Cir. 2004).[3] What is clear from the foregoing, however, is, at very least, that Section 105(a), and a plan relying on that provision of the Bankruptcy Code or others, cannot be used to emulate Section 524(g)'s results without also incorporating Section 524(g)'s protections.

19.    Accordingly, the Plan's failure to satisfy Section 524(g)'s requirements precludes 524(g)-like relief. For example, the Plan fails to contain a 75% voting requirement for the voting of present asbestos creditors who act as a surrogate for the future claimants. To the contrary, the Debtors contemplate a potential cramdown of the asbestos constituency. Disclosure Statement at 116-18. This precludes confirmation of the Plan.

20.    Importantly, the attempt to insulate New GM from liability to future asbestos claimants, without New GM's contributing funds to the Asbestos Trust to pay for such freedom from liability, likewise renders the Plan unconfirmable. Section 524(g) requires that a channeling injunction under the plan be "fair and equitable with respect to the persons that might subsequently assert * * * demands, in light of the benefits provided, or to be provided, to such trust on behalf of such debtor or debtors or such third party." 11 U.S.C. § 524(g)(4)(B)(ii). As another judge of this Court recently noted, "The phrase implies, at least where the trust does not propose to pay 100%, that there must be a relationship between the benefits received and the contributions made by the third-party that receives the benefit of the

---

[3]    *See also id.* at 237 n.50 ("Whatever may be the limits of § 105(a) in other contexts, we hold only that § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor.").

injunction." *In re Quigley Co.*, __ B.R.__, 2010 WL 3528818, at *19 (Bankr. S.D.N.Y. Sept. 8, 2010); *see also* 4 *Collier on Bankruptcy* ¶ 524.07[2], at 524-59 (16th ed. 2010) ("In the case of third parties, the court should afford them the protection of the injunction only if they contribute to the trust in amounts that are consistent with their likely liability * * * outside of bankruptcy.").

21.  Accordingly, in the *Quigley* case, the Court ruled that the Plan was unconfirmable because, in relevant part, "[a]s discussed, the third-party must contribute amounts consistent with its likely liability, at least where the plan will pay less than 100% of the scheduled amount of the asbestos claims," and the non-party's contribution to the trust was "less than 25% of the benefit that [the non-party] will receive, and is not 'fair and equitable.'" *Quigley*, 2010 WL 3528818, at *23, 25.  Similarly, New GM could not receive immunity from suit under the Plan without contributing a sufficient amount to the Asbestos Trust.  Here, it has not proposed to contribute anything.

22.  The Plan is also unconfirmable because it unfairly discriminates against the asbestos claimants, contrary to Section 1129(b)(1) and other provisions of the Bankruptcy Code.  For example, the Plan currently contemplates that the Asbestos Trust will receive, not shares or warrants of New GM stock directly, but a claim in the GUC Trust controlled by those whose economic interests are directly adverse to asbestos creditors.  Plan § 1.14.

23.  The Plan also unfairly discriminates because it provides that the UCC and others have undue control over the procedures and content of distributions to Asbestos Personal Injury Creditors.  For example, the UCC gets to weigh in and approve the form of the Asbestos Trust Agreement, as does the U.S. Treasury under the current Plan.  Plan ¶ 6.3(a)

- 10 -

("On the Effective Date, the Asbestos Trust Agreement, in a form reasonably acceptable to the Debtors, the Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, and the U.S. Treasury, as lender under the DIP Credit Agreement, shall be executed * * *").  But the ACC has no equivalent approval right as to the GUC Trust Agreement.  Plan ¶ 6.2(a) ("On or before the Effective Date, the GUC Trust Agreement, in a form acceptable to the Debtors, the Creditors' Committee, the U.S. Treasury, as lender under the DIP Credit Agreement, and the GUC Trust Administrator, shall be executed * * *").  There is no legitimate basis for such disparate treatment.[4]

24.     Such disparate treatment is inappropriate, and precludes confirmation of the Plan as currently drafted.  *See, e.g., In re Young Broad. Inc.*, 430 B.R. 99, 139-40 (Bankr. S.D.N.Y. 2010) ("[u]nder 1129(b)(1), a plan unfairly discriminates when it treats similarly situated classes differently without a reasonable basis for the disparate treatment").

---

[4]     Similarly, the UCC has consent rights over the appointment of the Avoidance Action Trust Administrator, Plan ¶ 1.20, the identities of the Avoidance Action Trust Beneficiaries, Plan ¶ 1.23, the appointment of the Avoidance Action Trust Monitor, Plan ¶ 1.25, and the selection of the Avoidance Action Trust Transfer Date, Plan ¶ 1.26.  The UCC also gets to appoint the GUC Trust Monitor, Plan ¶ 1.82, and to appoint the GUC Trust Administrator, Plan ¶ 1.78, has consent rights over the form of the GUC Trust Agreement, Plan ¶ 6.2(a), and has the power under the Plan to agree with the U.S. Treasury that certain lenders under the DIP Credit Agreement are entitled to proceeds of the Term Loan Avoidance Action *and the Asbestos Insurance Assets*.  Plan ¶ 2.4.  In none of those decisions is the ACC given any role, notwithstanding the fact that such decisions will at least equally affect the ACC's constituency under the Plan as currently drafted.

**CONCLUSION**

25. The Disclosure Statement and Plan constitute significant overreaching by the Debtors. Debtors want to channel future asbestos personal injury claimants to the trust, and they want to extend the protections of that channeling injunction to New GM even though New GM has not proposed to pay for such protection. Debtors are attempting to accomplish this by submitting a Plan for a vote by asbestos personal injury claimants who (1) do not know how much money is going into the trust that is proposed to be their only source of recovery (and do not even know the aggregate asbestos liability number that will drive such funding), and (2) do not know the timing, procedures applicable to, conditions of, and limitations or prohibitions on any potential payments they may receive from the Asbestos Trust. The Disclosure Statement does not provide adequate information to Asbestos Personal Injury Creditors, and the ACC respectfully requests that this Court not approve it.

Dated: New York, New York
       October 14, 2010

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED

/s/ Elihu Inselbuch
Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755
E-mail: ei@capdale.com; rct@capdale.com

Trevor W. Swett III
Kevin C. Maclay
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
E-mail: tws@capdale.com; kcm@capdale.com

*Attorneys for Official Committee of
Unsecured Creditors Holding Asbestos-
Related Claims*