UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| *In re* | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, f/k/a General Motors Corp., et al., | Case No. 09-50026 (REG) |
| Debtors | (Jointly Administered) |
| | Objection Deadline: October 14, 2010 at 4:00 p.m. |
| | Hearing Date: October 21, 2010 at 9:45 a.m. |

------------------------------------------------------------x

**OBJECTIONS OF THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL TO DEBTORS' MOTION FOR AN ORDER (I) APPROVING NOTICE OF DISCLOSURE STATEMENT HEARING; (II) APPROVING DISCLOSURE STATEMENT; (III) ESTABLISHING A RECORD DATE; (IV) ESTABLISHING NOTICE AND CONFIRMATION PROCEDURES FOR CONFIRMATION OF THE PLAN; (V) APPROVING SOLICITATION PACKAGES; (VI) APPROVING THE FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN; AND (VII) APPROVING THE FORM OF NOTICES TO NON-VOTING CLASSES UNDER THE PLAN [DOCKET # 6854]**

The California Department of Toxic Substances Control (DTSC) submits the following objection to Debtors' motion to approve the "Disclosure Statement for Debtors' Joint Chapter 11 Plan"[1] ("Disclosure Statement"). DTSC objects because Debtors' request for approval of the Disclosure Statement is premature and the Disclosure Statement fails to comply with the requirement of section 1125 of the Bankruptcy Code to provide adequate information to creditors. Debtors' have circulated a materially deficient Disclosure Statement regarding Debtors' Joint Chapter 11 Plan ("Debtors' Joint Plan"). Several critical documents and other material information are missing from the Disclosure Statement and Debtors' Joint Plan. The missing documents include the GUC Trust Agreement, the Environmental Response Trust

---

[1] Debtors distributed the proposed Disclosure Statement and Joint Chapter 11 Plan on August 31, 2010. [Docket Nos. 6830, 6829, respectively.]

1

Consent Decree and Settlement Agreement, the Environmental Response Trust Agreement, the Avoidance Action Trust Agreement and the Asbestos Trust Agreement. Without these documents, the Disclosure Statement does not and cannot provide "adequate information" that would enable creditors to make an "informed judgment" about the plan as required by 11 U.S.C. § 1125, subdivisions (a) and (b). In addition, the Disclosure Statement omits essential information from several material provisions. For example, in the discussion on Debtors' assets, the amount of cash remaining in Motors Liquidation Corporation (MLC) after funding the aforementioned trusts is left blank. Of the six classes of claims listed in the Debtors' Joint Plan, Debtors provide estimates of the allowed claims in only one class. Finally, Debtors do not explain why consolidating the Debtors will have no material impact on the holder of any allowed claim.

Further, Debtors' request for approval of the Disclosure Statement is premature because the hearing for the approval of Debtors' Disclosure Statement is on the same day as the hearing on the Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company to Enforce (A) the Final DIP Order; (B) the Wind-down Order; and (C) the Amended DIP Facility (the Avoidance Action Motion (Docket Number: 7226). The outcome of the hearing on that motion could materially affect key provisions proposed by Debtors' Disclosure Statement and Joint Plan.

Asking the Court to approve a Disclosure Statement where material documents and information regarding the Debtors' Joint Plan have not been provided in a timely manner to creditors is waste of resources, including judicial resources, and should not be allowed. Accordingly, for the reasons set forth herein, DTSC objects to Debtors' Motion to Approve the

Disclosure Statement and urges the Court to adjourn the matter until such date and time when Debtors have provided creditors with adequate information as required under 1125(c) of the Bankruptcy Code and creditors have had a reasonable amount of time to review that information.

I.  **DTSC IS A PARTY IN INTEREST**

1.  DTSC is a California state government agency mandated to enforce laws related to hazardous wastes and the cleanup of hazardous substances in California. Cal. Health & Safety Code § 25100 et seq. (the Hazardous Waste Control Law (HWCL)), § 25300 (the Hazardous Substances Account Act (HSAA)); Cal. Health & Safety Code § 58000 et seq. The HWCL is a state statute which regulates the cradle to grave handling of hazardous wastes. The HSAA, like its federal counterpart, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 establishes a comprehensive program for the cleanup of hazardous substances that have been released, or are threatened to be released, into the environment. DTSC filed a timely proof of claim in the bankruptcy proceeding of MLC. DTSC's proof of claim, numbered 50606, concerns several sites in California for which Debtors are liable to DTSC under federal and state environmental laws: Debtors are liable to DTSC as a generator of hazardous substances and as former owners of permitted facilities at the time that hazardous substances were released or threatened to be released at the facilities.

II.  **THE REQUEST FOR APPROVAL OF DEBTORS' DISCLOSURE STATEMENT IS PREMATURE BECAUSE THAT DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED UNDER THE BANKRUPTCY CODE**

2.  DTSC objects to approval of the Debtors' Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, 11 U.S.C. § 1125 and Bankruptcy Rule 3017(a). DTSC objects on the ground that the Disclosure Statement fails to satisfy the statutory requirement of

providing "adequate information" to creditors mandated under Bankruptcy Code section 1125(a) and (b). Because the Disclosure Statement fails to satisfy the requirements of section 1125 of the Bankruptcy Code, it should not be approved by this Court in its present deficient form.

A disclosure statement must contain "adequate information" to allow holders of claims or interests to make an informed judgment whether to accept or reject the proposed plan of reorganization. 11 U.S.C. § 1125 (a) and (b). *See also Sure-Snap Corp. v. State Street Trust, Co.*, 948 F.2d 869, 873 (2nd Cir. 1991). The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(b). *See also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361-62 (3d Cir. 1996). Adequate information will be determined by the facts and circumstances of each case. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).

3.  Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing "adequate information" to "enable a creditor to make 'an informed judgment' about the Plan." 11 U.S.C. § 1125(a)(1); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321-323 (3d Cir. 2003). "Disclosure is the 'pivotal' concept of a Chapter 11 reorganization." *Id.* (Citations omitted.) The importance of full disclosure is underlain by the reliance placed upon the

4

disclosure statement by the creditors and the court. On the facts before this court, it is clear that the Disclosure Statement fails to meet the requirements of section 1125(a).

**The Disclosure Statement Omits Key Documents**

4.  The Disclosure Statement references several key documents, but does not include them, and despite requesting the documents from counsel for Debtor, as of the date for filing these objections, DTSC has been unable to obtain these documents from the Debtors. Missing documents include: (1) the GUC Trust Agreement; (2) the Environmental Response Trust Agreement; (3) the Environmental Response Trust Consent Decree and Settlement Agreement; (4) the Avoidance Action Trust Agreement; and (5) the Asbestos Trust Agreement. Pursuant to Bankruptcy Rule 3017(a), DTSC is entitled to receive these documents, which are referenced in the Disclosure Statement and Joint Plan, 28 days before the October 21, 2010 hearing date. Yet, as of the date set for objection to the Disclosure Statement, DTSC has not received from the Debtors these documents which are central to the Disclosure Statement and the Debtors' Joint Plan.

5.  The GUC Trust Agreement is material to the Joint Plan and to unsecured creditors. The GUC Trust is described by the Disclosure Statement as a "Means for Implementation and Execution of the Plan." *See* Disclosure Statement [DS] p. 59. The GUC Trust is discussed and referenced throughout the Disclosure Statement. *See e.g.* DS p. 20, pp. 41-47, pp. 59-63. Distribution of Debtors' assets under GUC Trust is referenced in the "Summary Table of Classification and Treatment of Claims and Equity Interests Under the Plan." *See* DS pp. 4-8.

5

6.   Omission of the GUC Trust Agreement is significant to DTSC as the holder of a general unsecured claim. The Disclosure Statement says, "holders of Allowed General Unsecured Claims shall receive, inter alia, from the GUC Trust their pro rata share of (i) New GM Securities, and (ii) the GUC Trust Unit in accordance with the GUC Trust and the GUC Trust Agreement." DS p. 6. But, DTSC does not know what the GUC Trust Agreement says so it is unable to evaluate how its claims will be treated.

7.   The Disclosure Statement likewise does not include the Environmental Response Trust Agreement and the Environmental Response Trust Consent Decree and Settlement Agreement. Both documents govern the Environmental Response Trust. DS p. 67. Like the GUC Trust, the Environmental Response Trust is referenced throughout the Disclosure Plan. *See e.g.* DS pp. 39-45, 53-55, 63-68, 98. Also like the GUC Trust, the Environmental Response Trust is discussed in the "Summary Table of Classification and Treatment of Claims and Equity Interests Under the Plan." *See* DS pp. 4-8. But, as a creditor, DTSC cannot evaluate the Joint Plan if it is unable to review the terms of the Environmental Response Trust Agreement.

8.   Further, the Disclosure Statement does not include the Avoidance Action Trust Agreement. The Avoidance Action Trust Agreement, too, is discussed throughout the Disclosure Statement. *See e.g.* DS pp. 69-76, 97, 105. Distributions from the Avoidance Action Trust are also discussed in the "Summary Table of Classification and Treatment of Claims and Equity Interests Under the Plan." DS pp. 4-8. The Avoidance Action Motion highlights that the Avoidance Action Trust could affect the rights of holders of general unsecured claims (such as DTSC). Further, in the summary explaining creditors' treatment under the Plan, the Disclosure Statement says, "holders of Allowed General Unsecured Claims shall receive from the Avoidance Action Trust their Pro Rata Share of the Term Loan Avoidance Action and/or the

Asbestos Insurance Assets, to the extent not already distributed, in accordance with the Avoidance Action Trust and the Avoidance Action Trust Agreement." DS p. 6. But, as with the other two trusts, DTSC does not know what the Avoidance Action Trust Agreement says and so is unable to evaluate how its claims will be treated.

9. Finally, the Asbestos Trust Agreement is missing from the Disclosure Statement. DTSC does not know what it says, and therefore cannot determine how it impacts DTSC. Creditors are entitled to see this Trust document to see how it impacts distributions under the plan.

**The Disclosure Statement Omits Key Information**

10. In addition to omitting key documents, the Disclosure Statement leaves several material provisions blank. For example, in the discussion on Debtors' assets, the amount of cash remaining in MLC after funding the trusts is left blank. See DS p. 20. Moreover, Debtors do not provide estimates of the amount of claims in each class, instead leaving all but one of those estimates blank. See DS pp. 4-7 [Summary Table of Treatment of Classification and Treatment Claims and Equity Interests Under the Plan]. DTSC's interests include Class 3 claims. Not only do Debtors fail to provide an estimate of the amount of claims in Class 3, but Debtors also leave several terms blank under the section describing "Class 3, General Unsecured Claims." See DS pp. 43-45. DTSC cannot evaluate the Disclosure Statement and the Plan without that information.

11. Debtors fail to explain why they do not believe that "substantive consolidation of the Debtors . . . will have a material impact on the holder of any Allowed Claim." DS pp. 58-69. The contrary appears obvious instead: consolidation will lessen the recovery of holders of

7

allowed claims of certain Debtors. The Disclosure Statement should provide an explanation of what creditors of the Debtors would receive if there is no substantive consolidation so that creditors can evaluate to what extent substantive consolidation impacts their recovery. Creditors should not have to rely on the unexplained belief of the Debtors.

12. Given the omissions of key documents and material information in Debtors' Disclosure Statement, there is no way to evaluate each class of creditors' claims, what funds will be available to pay those claims, and ultimately what the pro rata value of each claim is. *Cf. In re Metrocraft*, 39 B.R. at 569 (disapproving a Disclosure Statement that did not "suggest[] the percentage at which unsecured creditors will be paid under the plan"); *In re Ferretti*, 128 B.R. at 19 (disclosure statement should inform creditors of the nature of undisputed and disputed claims, and attempt to estimate the projected dollar amount of claims). Accordingly, Debtors' Disclosure Statement fails to provide "adequate information" that would enable creditors to make an "informed judgment" about the plan as required by 11 U.S.C. § 1125, and should be rejected.

III. **THE REQUEST FOR APPROVAL OF THE DISCLOSURE STATEMENT IS PREMATURE BECAUSE ISSUES MATERIAL TO THE DISCLOSURE STATEMENT AND JOINT PLAN WILL BE ADJUDICATED BY THE COURT AT A HEARING ALSO SCHEDULED FOR OCTOBER 21, 2010.**

13. Another reason approval of Debtors' Disclosure Statement is premature is because the hearing on Debtors' Disclosure Statement is scheduled to be heard on the same day as the hearing on the Official Committee of Unsecured Creditors motion regarding ownership of the Term Loan Litigation. Avoidance Action Motion, Docket No. 7226, pp. 14-16. The outcome of the hearing on this motion will materially affect key provisions proposed by the Disclosure Statement and Joint Plan, which are important to creditors.

14. The outcome of the Term Loan Litigation is material to the Disclosure Statement and Joint Plan.[2] For example, the proposed Joint Plan provides that the Term Loan Litigation will be included in the Avoidance Action Trust as an Avoidance Action Trust Asset. Debtors' Joint Plan at § 1.22. As discussed above, the (missing) Avoidance Action Trust Agreement is significant to the Joint Plan, and is referenced throughout the Disclosure Statement and Plan. The Term Loan Litigation is discussed in the Disclosure Statement section discussing execution of the Avoidance Action Trust Agreement. Debtors' Joint Plan at § 6.5. Also, distribution of proceeds from the Term Loan Litigation is discussed in the Disclosure Statement provisions pertaining to Class 3 General Unsecured Claims. Debtors' Joint Plan at § 4.3. It is therefore important to unsecured creditors.

15. The Avoidance Action Motion seeks an order that the U.S. Treasury has no interest in the Term Loan Litigation, and instead, the interests in the Avoidance Action Trust shall be distributed to unsecured creditors. Avoidance Action Motion, Docket No. 7226, ¶ 28. If the unsecured creditors receive the proceeds from the Term Loan Litigation, unsecured creditors will increase their overall recovery. Avoidance Action Motion, Docket No. 7226, ¶ 37. If the U.S. Treasury gets the money, the litigation will decrease unsecured creditor recoveries. Avoidance Action Motion, Docket No. 7226, ¶ 38. Accordingly, resolution of the motion is important and material to the Disclosure Statement and the Joint Plan.

### Conclusion

For the reasons set forth above, the filing of Debtors' request for approval of the Disclosure Statement is premature. Material documents and information are missing from

---

[2] The Disclosure Statement defines the Term Loan Avoidance Action, as the action brought by the Official Unsecured Creditors Committee, on July 31, 2009. Although the names differ, DTSC understands that they concern the avoidance action filed by the Committee. Debtors' Joint Plan at § 1.116.

Pg 10 of 10

Debtors' Disclosure Statement and Debtor's Joint Plan. Accordingly, because the Disclosure Statement fails to provide adequate information as required under the Bankruptcy Code, the court should deny the Debtors' motion for approval of the Disclosure Statement and adjourn the matter to a date and time after Debtors have corrected the material deficiencies and afforded creditors a reasonable amount of time to review a complete Disclosure Statement which complies with the requirements of Section 1125 of the Bankruptcy Code. The court should order Debtors to cure the deficiencies and re-notice the hearing on the Disclosure Statement to comport with section 1125. Creditors should have the opportunity to review a complete and proper disclosure statement and submit objection thereto as provided in section 1125 and Bankruptcy Rule 3017(a).

DTSC reserves the right to join in objections filed by other creditors or parties in interest and to supplement this objection.

Dated: October 14, 2010                     Respectfully Submitted,

*Olivia W. Karlin*

EDMUND G. BROWN JR.
Attorney General of California
DON ROBINSON
MARGARITA PADILLA
Supervising Deputy Attorneys General
OLIVIA W. KARLIN
Deputy Attorney General
State Bar No. 150432
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2637
Fax: (213) 897-2802
E-mail: Olivia.Karlin@doj.ca.gov
Attorneys for Claimant California Department of Toxics Substances Control