Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026-reg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, et al.

9           f/k/a General Motors Corporation, et al.,

10

11             Debtors.

12

13  - - - - - - - - - - - - - - - - - - - -x

14

15             United States Bankruptcy Court

16             One Bowling Green

17             New York, New York

18

19             October 4, 2010

20             3:06 PM

21

22

23  B E F O R E:

24  HON. ROBERT E. GERBER

25  U.S. BANKRUPTCY JUDGE

1

2     HEARING re Motion of General Motors LLC Pursuant to 11 U.S.C.

3     §§ 105 and 363 to Enforce 363 Sale Order and Approved Deferred

4     Termination (Wind-Down) Agreement

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Lisa Bar-Leib

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for the Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  EVAN S. LEDERMAN, ESQ.

9

10   KRAMER LEVIN NAFTALIS & FRANKEL LLP

11        Attorneys for the Official Committee of Unsecured

12         Creditors

13        1177 Avenue of the Americas

14        New York, NY 10036

15

16   BY:  JENNIFER SHARRET, ESQ.

17        (TELEPHONICALLY)

18

19   KING & SPALDING LLP

20        Attorneys for General Motors LLC a/k/a New GM

21        1185 Avenue of the Americas

22        New York, NY 10036

23

24   BY:  ARTHUR J. STEINBERG, ESQ.

25        SCOTT DAVIDSON, ESQ.

1

2   ISAACS CLOUSE CROSE & OXFORD LLP

3        Attorneys for General Motors LLC a/k/a New GM

4        21515 Hawthorne Boulevard

5        Suite 950

6        Torrance, CA 90503

7

8   BY:  GREGORY R. OXFORD, ESQ.

9        (TELEPHONICALLY)

10

11  WILK AUSLANDER LLP

12        Attorneys for Rally Auto Group Inc.

13        675 Third Avenue

14        New York, NY 10017

15

16  BY:  ERIC J. SNYDER, ESQ.

17

18  BELLAVIA GENTILE & ASSOCIATES, LLP

19        Attorneys for Rally Auto Group Inc.

20        200 Old Country Road

21        Mineola, NY 11501

22

23  BY:  STEVEN H. BLATT, ESQ.

24

25

Page 5

1

2  MORGANSTERN, MACADAMS & DEVITO CO., L.P.A.

3        Attorneys for Rally Auto Group Inc.

4        636 West St. Clair Avenue

5        Cleveland, OH 44113

6

7  BY:  CHRISTOPHER M. DEVITO, ESQ.

8        (TELEPHONICALLY)

9

10  U.S. DEPARTMENT OF JUSTICE

11        U.S. Attorney's Office

12        Southern District of New York

13        86 Chambers Street

14        New York, NY 10007

15

16  BY:  DAVID S. JONES, DEPUTY CHIEF, CIVIL DIVISION

17

18

19

20

21

22

23

24

25

Page 6

                    P R O C E E D I N G S

1

2            THE CLERK:  All rise.

3            THE COURT:  Good morning -- or afternoon.  Have

4     seats, please.  All right.  GM.  Motors Liquidation Company.

5     Rally Motors.  Mr. Lederman, do we have some preliminary

6     matters that I had become unaware of?

7            MR. LEDERMAN:  No, Your Honor, we don't.  The only

8     matter before you is a matter that you just introduced.  So I

9     was just going to introduce the parties and turn over the

10    lectern to them.

11           THE COURT:  All right.  Well, I know Mr. Steinberg

12    and Mr. Snyder.  Why don't the remainder of you folks introduce

13    yourselves.

14           MR. DAVIDSON:  Scott Davidson from King & Spalding --

15           THE COURT:  All right.

16           MR. DAVIDSON:  -- for New GM.

17           MR. OXFORD (TELEPHONICALLY):  Greg Oxford, Isaac

18    Clouse --

19           MR. BLATT:  Steven Blatt from Bellavia --

20           THE COURT:  Just a minute, please.  First, I need the

21    folks in the courtroom to introduce themselves.

22           MR. OXFORD:  Okay, Your Honor.

23           THE COURT:  And then if people are on the phone, I'm

24    going to have to ask that they defer to people in the courtroom

25    unless people in the courtroom hand off to them.

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 7 of 84

Page 7

1           MR. BLATT:  Steve --

2           THE COURT:  All right.  Just a minute, please,

3    gentlemen.

4           MR. BLATT:  Yes, Your Honor.

5           THE COURT:  All right.  With Mr. Snyder?

6           MR. BLATT:  Yes.

7           MR. SNYDER:  Yes, Your Honor.  I'm sorry.  Go ahead.

8           MR. BLATT:  Steven Blatt, Bellavia Gentile, 200 Old

9    Country Road, Mineola, New York, on behalf of Rally Auto Group.

10          THE COURT:  Right, Mr. Blatt.  Okay.

11          THE COURT:  Now, is there a gentleman on the phone

12   who wanted to introduce himself?

13          MR. OXFORD:  Yes, Your Honor.  It's Greg Oxford,

14   Isaac Clouse Crose & Oxford also appearing with Mr. Steinberg

15   on behalf of General Motors LLC.

16          THE COURT:  All right, Mr. Oxford.  Okay.  Gentlemen,

17   make your presentations as you see fit.  But I'm going to need

18   you to address the following needs and concerns.  But first,

19   let me lay on my frustration with you guys, both sides.  I

20   cannot, for the life of me, understand, Mr. Snyder and Mr.

21   Blatt, why you can't follow the requirements of my case

22   management orders and give me a table of cases and table of

23   authorities as those rules require in baby talk.  When I'm

24   trying to compare the two submissions and see what you guys

25   said about a particular case or, for that matter, how you

Page 8

1   organized your arguments, that is a source of incredible

2   difficulty and frustration for me.  And, Mr. Steinberg and Mr.

3   Oxford -- Mr. Oxford, I think you at least have been in this

4   case before.  How many times have I said that I don't want to

5   use -- see the word "passum" especially when it refers to the

6   most important case in your whole brief on a lot of these

7   issues?  I'm not expecting a response now.  You can address it

8   when it's your turn.

9           Gentlemen -- Mr. Snyder and Mr. Blatt, if you want to

10  make your subject matter jurisdictions, you can, but it doesn't

11  seem to me that this is about subject matter jurisdiction in

12  any way, shape or form.  Frankly, I think you missed the boat

13  when you were talking about related-to jurisdiction.  It seems

14  to me that this is a poster child for arising-in jurisdiction

15  and the principle that bankruptcy judges have the authority to

16  enforce their own orders.  And when an agreement says that the

17  bankruptcy court will have exclusive jurisdiction to deal with

18  a particular matter and then the order implements that, I have

19  some trouble seeing how it can be to the contrary.  If you

20  nevertheless want to continue to the contrary, you got to help

21  me with Petrie Retail and Millenium Seacarriers on those

22  points.

23          Now, I sense that both sides agree that there is no

24  right of judicial review under the Dealer Arbitration Act and

25  that the Federal Arbitration Act applies only to contractual

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 9 of 84

Page 9

1   agreements to arbitrate.  So therefore, we're on a little bit

2   of -- or totally implied remedies if and to the extent they

3   exist.  Now, Mr. Steinberg, I want to see whether your argument

4   proves too much.  And you can help me with that if I posit to

5   you a situation where the arbitrator is taking bribes or he's

6   taking an ex parte communication because my belly would tell me

7   that even if there weren't an expressed right of judicial

8   review in that situation that Rally Motors, if it were on the

9   losing end of that type of situation and, of course, if it came

10  to me, could come and say, Judge, I need relief from that kind

11  of thing.  But, of course, Mr. Snyder and Mr. Blatt, that isn't

12  what you're alleging here.  In essence, you're alleging that

13  the arbitrator made an error of law.  And you haven't shown me

14  any case in which the arbitrator was told that he had to deal

15  with these franchise agreements double or nothing.  And it

16  strikes me as a garden variety claim of legal error.  So help

17  me if I'm wrong on that.

18          Now, I don't know how many times I and the other

19  bankruptcy judges in this district have had 363 orders and

20  confirmation orders provide for continuing jurisdiction

21  typically to follow up on the implementation of things that

22  were in the sale order and in the plan or agreements that were

23  provided under either.  Counterparties come into the court all

24  the time putting their money on the line to get benefits by

25  dealing with the bankruptcy court.  And that's an important

Page 10

```
 1    reason, as at least one of the cases that was quoted to me

 2    says, why we have provisions of this character.  And I need

 3    your help in understanding why I should say "Never mind" to

 4    provisions of that type.  But if there is authority for some

 5    kind of implied judicial review that I, in contrast to a

 6    district judge exercising diversity jurisdiction, could issue,

 7    or even if it were deemed to be 1331 federal question

 8    jurisdiction -- though I don't see the provision of the U.S.C.

 9    under which the federal right arises.  I mean, I see why you

10    could compel GM to arbitrate but New GM didn't quarrel with

11    your right to arbitrate that I need help on that.

12             So, Mr. Snyder, will it be you or Mr. Blatt?

13             MR. SNYDER:  It'll be me, Your Honor.

14             THE COURT:  Okay.

15         (Pause)

16             MR. SNYDER:  Your Honor, as I think the analogy for

17    our purposes or the point where we start is the AAA commercial

18    rules.  And I focus on those, Your Honor, only because, as the

19    Court pointed out, I don't think anyone disputes that when both

20    parties sat down to the arbitration that the commercial rules

21    apply.  Now, GM states that it objected to the use of the

22    commercial rules.  But be that as it may, the scheduling order,

23    in particular, paragraph 1, which is annexed to our objection

24    as Exhibit F, specifically states that the commercial rules

25    apply.  And one of those rules, Your Honor, is 48(c) which we
```

Page 11

1    relied on extensively in our papers but it states, and I

2    quote -- it's short:  "Parties to an arbitration under this

3    rule shall be deemed to have consented.  A judgment upon the

4    arbitration award may be entered into any federal, state or

5    court of competent jurisdiction."  Now it doesn't say they have

6    to agree.  It says that they've deemed to have consented.  And

7    so our argument is, Your Honor, that if the AAA commercial

8    rules apply and GM is deemed to have consented then, naturally,

9    there is a -- the arbitration award is final and binding and

10   there has to be a right of judicial review under the terms of

11   48(c).  Now we cited to the Idea Nuova case for the proposition

12   that although that was a contract case, where the contract is

13   silent as to whether the rights of judicial review apply, the

14   Courts will impute 48(c) not because the parties agreed to

15   arbitrate, Your Honor, but because by going forward with the

16   arbitration, because the commercial rules themselves apply,

17   they're deemed to have consented to both the arbitration and

18   the entry of a final judgment.  And, Your Honor, that's based

19   solely on facts that are not in dispute.

20            THE COURT:  Mr. Oxford, do you want to mute your

21   phone, please?

22            MR. OXFORD:  I'm not sure I know how to do that.  We

23   could --

24            THE COURT:  All right.  CourtCall, mute them.  Go

25   ahead, Mr. Snyder.

Page 12

1           MR. OXFORD:  I didn't hear you, Your Honor.  I'm

2    sorry.

3           THE COURT:  I'm telling CourtCall to mute you, Mr.

4    Oxford.  Go ahead, Mr. Snyder.

5           MR. SNYDER:  Thank you, Your Honor.  Now we agree,

6    Your Honor, as GM has pointed out that the Dealer Arbitration

7    Act is silent as to judicial review.  But we contend in

8    addition to the AAA commercial rules giving the federal court

9    subject matter jurisdiction that, as Your Honor pointed out,

10   that if a federal question presents itself under 28 U.S.C. 1331

11   then the California district court can rely on that federal

12   question to possess subject matter jurisdiction.  And that

13   federal question is presented here, to wit.  Is the removal of

14   a Chevrolet brand the granting of a "covered dealership" as

15   that term is defined under 747(a) and (d)?  It's stated

16   specifically, Your Honor, in Rally's statement.  Does the

17   removal of a Chevrolet brand constitute a "covered dealership"?

18   So we have a federal statute that Rally is asking a federal

19   court to interpret and we have the Vaden case which I cite to

20   at -- and -- 129 S. Ct. 1262.  In that case, the Supreme Court

21   held that a federal court could look through the arbitration,

22   Your Honor, to determine whether the controversy in question

23   arises under the federal law so that the court has federal

24   question jurisdiction.  That's all we're asking the federal

25   court to do.  Interpret a federal statute on a federal

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 13 of 84

Page 13

1    question.

2           And in addition, Your Honor, we believe the federal

3    court has jurisdiction for the issue that Your Honor has raised

4    and is the most troubling, at least to me, that there is no

5    right to judicial review.  GM doesn't cite to any federal

6    statute, while may be silent or limited, that did not allow for

7    judicial review.  Which goes right to the due process argument

8    and the constitutionality of the statute itself.

9           Your Honor, the arbitrator didn't have to take

10   bribes.  Let's just say we end this hearing and regardless of

11   what happens GM says, I'm not reinstating you.  I don't care

12   what Judge Gerber says or anyone else says.

13          THE COURT:  Well, isn't that the easier case because

14   wouldn't you, Mr. Snyder, be able to come back to me in about

15   ten minutes and say that New GM isn't complying with the

16   arbitration award?  And to the extent that I understood your

17   48(c) argument, the language is "deemed to have consented to

18   enforcement".  And if you say -- let's take what I understand

19   to be the case.  You won three-quarters of -- or your client

20   won three-quarters of the arbitration before the arbitrator.

21   And suppose GM stiffs you on those three-quarters where you

22   prevailed -- your client prevailed.  I would have thought --

23   and maybe Mr. Steinberg should be heard on this because if he

24   contends to the contrary, I guess I should know it.  But I

25   would have thought that you could come back to me and say make

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 14 of 84

Page 14

1    GM -- New GM comply with the arbitrator's award.  But you're

2    not trying to enforce the arbitrator's award.  You're trying to

3    attack it.  You're trying to attack the one-quarter of it you

4    don't like.

5              MR. SNYDER:  Your Honor, we're trying to say that if

6    there is judicial review of a statute that does not allow for

7    judicial review that the constitutionality of the statute, the

8    due process argument is the district court possesses

9    jurisdiction to that.  There's a crucial difference, Your Honor

10   -- and to me, this is the crux of our argument.  Putting the

11   core related and Petrie aside for the moment, whether this

12   Court has jurisdiction or not is to me not the issue.  The

13   issue is whether the California court has jurisdiction.  What

14   GM is saying is this Court has sole and exclusive jurisdiction.

15   That means of the 600 dealers that had their claims arbitrated

16   with GM, if they are unhappy with a portion of the award then

17   all 600 nondebtors with New GM, a nondebtor, that this Court

18   has sole and exclusive jurisdiction to determine under the

19   Federal Arbitration Act what a covered dealership is.  And I'm

20   suggesting that the California district court, whether as a

21   federal question or for constitutionality purposes, might also

22   have that jurisdiction because it can't be that as a result of

23   the wind-down agreements, when the Dealer Arbitration Act was

24   passed that the Court was willing to say we're going to pass

25   the Dealer Arbitration Act to give you dealers another bite at

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 15 of 84

Page 15

1    the apple.  But you have to go back to the bankruptcy court if

2    you want it enforced.  Now maybe this Court does have related-

3    to jurisdiction but it couldn't be, Your Honor, that there is

4    no right of judicial review and Congress' intent was that

5    everybody has to come back here.  And that's --

6         THE COURT:  I don't want to interpret you, Mr.

7    Snyder, but it wasn't related-to jurisdiction that I think is

8    in play here.  I think it's arising-in jurisdiction, the second

9    of the three prongs under 1334.

10        MR. SNYDER:  Understood, Your Honor.  And again, even

11   if this Court has arising-to jurisdiction, that is not what

12   we're arguing.  They are arguing -- and remember, Your Honor,

13   the motion seeks to compel us to withdraw a lawsuit in federal

14   court because the district court does not have jurisdiction.

15   And I think for the three reasons I've stated, the plain

16   language of 48(c), the introduction of a federal question and

17   the constitutionality of a law that does not allow for judicial

18   review, gives the California district court jurisdiction.  It's

19   not to say that this Court doesn't have jurisdiction but we

20   didn't start in this court.  We started in the federal court in

21   California.  They filed an answer.  They didn't move to

22   dismiss.  And then three days later, they filed the motion

23   here.  Not by order to show cause because they were so

24   concerned about the California's court jurisdiction but by

25   regular motion.  The -- we, in deference to this Court, didn't

Page 16

1    go into the California court to seek a stay.  We told them that

2    we would come here and explain to this Court why the Court, the

3    California court, has federal court jurisdiction.  They don't

4    reply to our arguments about Vaden and the ability of a federal

5    court to go through -- look through an arbitration.  The

6    decision is powerful, Your Honor, to the extent it allows you

7    to look through the arbitration and see if a federal question

8    is presented.  That's our issue, that federal questions are

9    presented, constitutionality presented.  Normally not an issue

10   but in a case where a statute is silent as to the right of

11   judicial review, the implication or the logical extension of

12   their argument is that everybody has to come back here.  And it

13   is submitted, Your Honor, that that's not what Congress

14   intended by leaving the statute silent.  We believe what they

15   intended is that the arbitration rules will allow the dealer,

16   the aggrieved dealer, to go into a court of competent

17   jurisdiction to get the relief they seek.

18          And although the judicial estoppel argument has gone

19   up and back, Your Honor, in their complaint, in paragraph 3 in

20   the Santa Monica case, they don't just rely on diversity when

21   they seek to compel Santa Monica to execute the settlement

22   agreement.  They rely on 28 U.S.C. 1331 to get the district

23   court's attention.  They rely on the Dealer Arbitration Act to

24   get the Court to execute -- to restrain Santa Monica.  Then

25   they come here and say this Court has sole and exclusive

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 17 of 84

Page 17

1    jurisdiction with respect to matters in the Dealer Arbitration

2    Act.  They didn't come here, Your Honor, when Santa Monica

3    sought to exercise jurisdiction and refused to sign that

4    settlement agreement.  They went to the California district

5    court.  And so, to argue that sole and exclusive jurisdiction

6    sits here but to rely on federal jurisdiction not just

7    diversity, 28 U.S.C. 1331 jurisdiction in California, to me,

8    rises to the level of judicial estop.

9            The last argument, Your Honor, which was the first

10    one you raised, is the applicability of Petrie and the ability

11    of the Court to enforce its orders.  And there's no doubt that

12    buyers have expectations and they want this Court to enforce

13    them and they have a right to come in here and seek that.  But

14    they have -- every provision of the wind-down agreement that

15    they have pointed to, other than the covenant to sue, is not

16    being implicated.  We were able to sue, commence an

17    arbitration, because the Dealer Arbitration Act allowed us to.

18    They actually state in their papers that us going into

19    California district court violated the covenant to sue.  Well,

20    how can that be?  How can that be that the statute allows us to

21    go to Califor -- and commence an arbitration but doesn't allow

22    it to enforce it anywhere?

23            The wind-down agreement is still the wind-down

24    agreement.  The dealer, Rally, and the other 600 dealers still

25    have certain obligations that they need to fulfill by October

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 18 of 84

Page 18

 1    31st.  But the covenant not to sue is not one of them because

 2    the statute that was codified in December 2009 gave the dealer

 3    certain rights.  And they are limited rights.  They're not

 4    happy with the outcome.  Rally believes that the definition of

 5    covered dealer was inappropriately misinterpreted by the

 6    arbitrator.  There is nothing in the wind-down agreement or the

 7    363 order, Your Honor, that suggests they would have to come

 8    back here for that.

 9         Now, it's unfortunate that the statute is silent.

10    But issues of due process and federal question as well as the

11    AAA rules allow Rally to go into court in California to redress

12    those arguments.  That's our position.  Again, we're not

13    suggesting or it's minimally relevant that this Court has

14    jurisdiction.  Our question is does the California court have

15    jurisdiction.  GM thought it did under 28 U.S.C. 1331.  So do

16    we.  And that's the reason we object to them saying this Court

17    has sole and exclusive jurisdiction under the wind-down

18    agreements as if the Dealer Arbitration Act didn't exist.

19         THE COURT:  Well, you hit on something that I'm glad

20    you did, Mr. Snyder, because I want both you and Mr. Steinberg

21    to address it when it's your respective turns.  And, of course,

22    it's your turn now.  I would have thought that the Dealer

23    Arbitration Act trumps my order and the wind-down agreements to

24    the extent they're inconsistent.  But that the duty of any

25    Court is to try to construe them together to achieve harmony

MOTORS LIQUIDATION COMPANY, et al.

Page 19

1    between them so there is the minimal clashing between the two

2    and that where, of course, the later Dealer Arbitration Act

3    speaks to something, it controls over my order but only to that

4    extent.  Do you think I'm off base from that?

5           MR. SNYDER:  I do not, Your Honor.

6           THE COURT:  All right.  Keep going.

7           MR. SNYDER:  And, Your Honor, I or Rally do not see

8    the ability to confirm a judgment, as that term is defined in

9    48(c), or if the district court should allow, modify or vacate

10   the judgment under the commercial arbitration rules as being

11   anything other than an extension of the arbitration which was

12   codified in the Dealer Arbitration Act.  It isn't a violation

13   of the covenant not to sue under the wind-down agreements

14   because under the wind-down agreements in July 2009, this was

15   not a sparkle in anybody's eye.  No one knew what Congress

16   would end up doing six months later.  They're looking to

17   prohibit us from doing something that wasn't even contemplated

18   at the time Your Honor entered that order.  This came six

19   months later.  And so the rules changed partially.  I'm not

20   suggesting the wind-down agreements are -- they say aggregated

21   -- none of that.  But the covenant to sue was.  And they were

22   allowed to commence arbitrations against New GM in order to get

23   rights back, thumbs up or thumbs down.

24          THE COURT:  Do you think it covers all covenants or

25   all suits or can you harmonize them by saying that if you win

Page 20

1     in the arbitrations that Congress has now given you, of course

2     you have the right to enforce that if your opponent, which in

3     this case is New GM, is so dumb as to try to welsh on the

4     arbitrator's ruling.  But that's really how they -- separate

5     provisions are best read together.

6             MR. SNYDER:  Your Honor, there's a reason why -- you

7     call it dumb, but there's a reason why the fifty states and

8     every federal statute except this one that I've seen has the

9     right of judicial review.  It's because if there is no

10    enforcement of a final or binding arbitration then the other

11    side could say, ha, forget it, I'm not doing anything 'cause

12    you have no place to go.

13            THE COURT:  Again, I remain troubled by the

14    distinction between enforcing the award which my tentative,

15    California style subject to your opponent's right to be heard,

16    is that if New GM hadn't complied with the arbitrator's award,

17    I would make it, and to attack the arbitrator's award which

18    invokes separate policy considerations.

19            MR. SNYDER:  Well, Your Honor, I would say that it

20    seems as if the rules which required findings of fact were set

21    up for judicial review.  If the arbitrator had simply said,

22    Your Honor, we're ruling against Rally because I know Larry

23    Mayle, the president, and I don't like him, where could we go?

24    If the Court is suggesting if that was the ruling that we could

25    go into this court to overturn or vacate an arbitration for

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 21 of 84

Page 21

1    manifest disregard of fact and law out of an arbitration coming

2    out of the Dealer Arbitration Act, I don't see it.  I see it as

3    being a federal question that allows judicial review for

4    manifest disregard of facts and law through a federal court.

5    That's what the Supreme Court said in Vaden, that you can look

6    through the arbitration to see if a federal question exists.

7    GM doesn't even cite to Vaden in their reply brief.  But that

8    is uniquely a federal question.  Is Chevy a covered brand as

9    that term is defined under 747(a) and (d)?  What could be more

10   of a federal question than citing to the statute itself.  This

11   is not an abstract referral, Your Honor, where Rally was trying

12   to get around state jurisdiction.  This is questioning the

13   words of a federal statute.  And Rally would have never thought

14   to come to this court, Your Honor, as a result of an

15   arbitration to enforce or to ask this Court to make findings of

16   fact as to whether Chevy is a covered dealership as that term

17   is defined under 747(a) because although this Court might have

18   jurisdiction, the California court certainly has jurisdiction.

19          And, Your Honor, that's what we see as the

20   difference.  When I speak about losing or diminishing

21   jurisdiction in the sales process, I'm not suggesting that

22   buyers can't come back to get the benefit of their bargain.

23   But this was not the benefit of anybody's bargain because the

24   Dealer Arbitration Act wasn't even in existence at the time.

25   They couldn't have said we want this statute because we want no

MOTORS LIQUIDATION COMPANY, et al.

1   judicial review from the dealers.  What are you talking about?

2   There's no right to review anyway.  There's a covenant to not

3   to sue.  The Dealer Arbitration Act hadn't even been introduced

4   yet.  So they can't say they didn't get their expectation

5   'cause there was no expectation.  This was six months later.

6   So I don't see this as an enforcement of an order 'cause there

7   was no expectation that they would have that right.

8        (Pause)

9            THE COURT:  Okay.  Mr. Snyder, I'm going to give you

10  a chance to reply but is this a good time to hear from Mr.

11  Steinberg?

12           MR. SNYDER:  Yes, Your Honor.  Thank you.

13           THE COURT:  Thank you.

14       (Pause)

15           MR. STEINBERG:  Good afternoon, Your Honor.  I think

16  Your Honor's questions were very incisive and I will try to

17  answer them as best as I can and to try to point out why I

18  think my colleague has not fully answered Your Honor's inquiry.

19  I think Your Honor is correct that the real issue here is there

20  was a wind-down agreement.  Your Honor approved the wind-down

21  agreement that was part of the sale process.  And then

22  subsequently, Congress acted under the Dealer Arbitration Act.

23  So how do you mesh what you had done versus the later

24  congressional statute?

25           And I think it's important to distinguish what does

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 23 of 84

Page 23

1    the Dealer Arbitration Act do and what it specifically did not

2    do.  And the thing that it did, and I think my colleague has

3    agreed with this, is it provided dealers who either signed the

4    wind-down agreements or had their dealership agreements

5    rejected in either the Chrysler or General Motors cases a new

6    right created by a federal statute to be reinstated to the

7    dealer network of the debtor or the purchaser of the debtor's

8    assets.  And in order to avail themselves of that right, they

9    had to file timely notices in accordance with the Dealer

10   Arbitration Act for binding arbitration.  And I think my

11   colleague was correct.  It was either up or down.  Either

12   you're reinstated or you're not reinstated.  And the Dealer

13   Arbitration Act told arbitrators they had seven factors,

14   nonexclusive, to take a look at for purposes of making that

15   determination.  And there was specific and very, very tight

16   deadlines that were put in for the arbitration.  You had to act

17   to ask for arbitration within forty days.  You had six months

18   to complete the arbitration.  The arbitrator had seven days to

19   make its ruling and that everything had to be done by July 14th

20   because the legislative intent of the statute which was to try

21   to create what Congress thought was a better balance between

22   the rights of dealers and the rights of the manufacturers, the

23   legislative intent was we need to have a streamlined process

24   that would not otherwise get bogged down with discovery or

25   litigation.  We both quote -- at least our reply quotes from

MOTORS LIQUIDATION COMPANY, et al.

Page 24

1    the legislative history to the statute which is fairly sparse.

2    But the legislative history refers to the need to have

3    something streamlined and quick and the statute does not

4    provide for judicial review unlike the Federal Arbitration Act

5    in Section 9, 10, 11 and 12.  There are specific provisions

6    which talk about what a Court can do or not do in connection

7    with something that is governed by the FAA.  This clearly is

8    not governed by the FAA.  The FAA governs agreements where the

9    parties had agreed to arbitrate.  This was not one of those

10   situations.  This was a case where Congress had imposed the

11   obligation or the right for the dealer to seek arbitration

12   under specific circumstances but it wasn't a contractual

13   obligation that the parties had bargained for.  So the FAA,

14   which is leadered (sic), the cases relating to the FAA, the

15   judicial review relating to an FAA, which my adversary recites

16   in his papers, they really have no relevance here.  And I think

17   Your Honor was right.  There is no judicial review.  And that

18   was, I think, intentional.  And I think my adversary says where

19   is it that you can never get judicial review?  You know,

20   Congress passes a statute not -- imposing a new right and then

21   says that's -- we'll have a procedure to implement that statute

22   and that's it.  And there's no more judicial review.

23            THE COURT:  Well, pause, Mr. Steinberg, because I'm

24   wondering if that proves too much.  Suppose the arbitrator's

25   taking bribes.  And suppose the forum is this court and the

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 25 of 84

Page 25

1    dealer's been victimized by the arbitrator taking bribes.

2    You're telling me that I can't look at that?

3            MR. STEINBERG:  I'm not sure if the right remedy

4    would have been to go to the AAA and say that there was an

5    invalid arbitration and seek the remedy there to invalidate the

6    results of the arbitration.  But --

7            THE COURT:  So you're going to take that and -- bring

8    it down and give it to the marshals and then you can return to

9    the courtroom.

10            MR. STEINBERG:  But I will say, Your Honor, that the

11    hypothetical that you posed which is that if there was a

12    violation of what Congress had enacted because they had bribed

13    the arbiter of the resolution, it would seem to me that there

14    needs to be some kind of review.  And maybe it would be Your

15    Honor who has the review.  I'm not sure whether it would be the

16    AAA that would review it.  But it would seem to me in a bribe

17    circumstance that that would be the case.

18            But I think critical for what my adversary has argued

19    which is that he's raised the potential for the

20    constitutionality of the Dealer Arbitration Act because there

21    is no judicial review, I don't know where that argument goes

22    for him because the Dealer Arbitration Act was a right given to

23    the dealers to potentially seek reinstatement.  If you declare

24    the statute unconstitutional then they don't have that right.

25    If he's asking you to put in to the statute that which doesn't

Page 26

```
 1   exist which is to, in effect, write the judicial review section

 2   when Congress didn't write it, I don't think Your Honor has the

 3   ability to do that.

 4            And I don't think -- you know, they spend ten pages

 5   of their brief saying how we didn't comply with provisions that

 6   is the judicial standard under the Federal Arbitration Act.

 7   And I would say to Your Honor that that's irrelevant because

 8   that's not -- there is no standard of judicial review.  And you

 9   can't pick something from another statute and say that's what

10   I'm going to use here in order to make it constitutional.

11            Now, there is situations where Congress has given a

12   right to a party and there is no judicial review.  We cited in

13   our papers the Switchmen case which was actually quoted in

14   Thomas.  And we specifically highlighted the language which

15   said that "A review by the federal district court of the

16   board's determination is not necessary to preserve or protect

17   that right."  Congress, for its reasons on its own, decided

18   upon the protection of the right which it created.  And if you

19   look at Thomas itself, they talked about the concept of where

20   Congress has written legislation where it asked an agency to

21   make a decision.  And the issue was if the agency did something

22   wrong, can it get judicial review.  And there are certain

23   statutes that provide that there is no judicial review.  So the

24   Thomas case when it was written referred to Medicare

25   reimbursement and said that an agency's review relating to
```

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 27 of 84

Page 27

```
 1    Medicare reimbursement is not subject to judicial review.

 2    So --

 3              THE COURT:  And Switchmen dealt with the Railway

 4    Labor Act?

 5              MR. STEINBERG:  Yes.

 6              THE COURT:  And it was at least Thomas that was the

 7    use of your "passum" if I recall.

 8              MR. STEINBERG:  Yes.  And I apologize for that, Your

 9    Honor.

10              So we have a situation here where there was a

11    legislative reason why things were done on a streamlined basis.

12    There is no language that talks about judicial review and there

13    is no issue I believe relating to constitutionality.  But if it

14    is, I don't think it gets them anywhere.  And it was nice that

15    they made this a central part of their oral argument when it

16    was relegated to a footnote in their brief which -- without any

17    real challenge other than just a throw-away that they question

18    whether it could be constitutional if there's no judicial

19    review.

20              Your Honor --

21              THE COURT:  At least it got your attention enough for

22    you to cover it from pages 8 through 10 of your reply.

23              MR. STEINBERG:  Yes, Your Honor, because I did think

24    it was an important issue and that Your Honor would want the

25    benefit of some briefing.  But I did not think that that was
```

Page 28

1    the center of the argument.

2         Similarly, you'll notice how their argument is

3    morphed because their papers said Your Honor didn't have

4    jurisdiction, didn't have core jurisdiction, didn't have

5    related jurisdiction, asked you to defer to the public policy

6    of the Federal Arbitration Act, to defer to an arbitration when

7    they weren't prepared to necessarily defer to arbitration.  And

8    now they, today, said well, we really didn't say you didn't say

9    you didn't have jurisdiction.  You just don't have exclusive

10   jurisdiction.  We think it may be concurrent jurisdiction.  So

11   they did move as well on that.

12        But I think, Your Honor, that the reason why you do

13   have exclusive jurisdiction and the reason why the wind-down

14   agreement is implicating is because there is no judicial review

15   of what the arbitrator did.  If there is no judicial review --

16   I think everybody agrees that the statute doesn't provide for

17   it explicitly.  If there isn't then what's left?  Because the

18   other thing that was critical as to the interplay between the

19   Dealer Arbitration Act and the wind-down agreement, the other

20   thing that's critical is that the Dealer Arbitration Act didn't

21   abrogate totally the wind-down agreement.  I think my

22   colleague, my adversary, has agreed that it didn't totally

23   abrogate it.  There are specific provisions that survive.  And

24   so, that if you have an arbitration which has been completed

25   because all the arbitrations had to be completed by July 14th,

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 29 of 84

Page 29

1    and that's it then what's left on the areas where there was no

2    reinstatement, the thumbs down for the Chevrolet dealership,

3    you're back to being governed by the wind-down agreement.  The

4    wind-down agreement provided that you couldn't sue New General

5    Motors.  That still applies.  There (sic) was abrogated solely

6    to the extent that the Dealer Arbitration Act allowed for this

7    binding arbitration remedy to be afforded to dealers who

8    availed themselves of the opportunity to seek arbitration

9    within forty days of the enactment of the Act.  Otherwise, the

10   wind-down agreement stayed in effect.  And the wind-down

11   agreement stayed in effect now for purposes for this entire

12   period of time that the Rally dealership was not entitled to

13   buy New General Motors vehicles because the wind-down provision

14   for that still stayed in effect.

15            THE COURT:  Mr. Steinberg, do you agree that if New

16   GM hadn't complied with the arbitrator's award on the three

17   brands for which the arbitrator ruled in Rally's favor that

18   Rally could have come back here to enforce it with or without

19   the no-sue clause?

20            MR. STEINBERG:  Yes.

21            THE COURT:  All right.

22            MR. STEINBERG:  Yes.  I agree with that because

23   there, the provision, I believe, is ancillary to the

24   arbitration decision.  They're looking to implement and enforce

25   the arbitration decision.  And I think that if it wasn't being

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 30 of 84

Page 30

1   done since the arbitration is over, they do need to have some

2   kind of remedy.  And they should be able to come back to this

3   Court.  But I do think it's this Court because I do think that

4   part and parcel of the reason why there was exclusive

5   jurisdiction language in the sale order, exclusive jurisdiction

6   in the wind-down agreement that everybody who signed the wind-

7   down agreement signed was that New General Motors had bargained

8   for as part of the sale process -- had bargained for one forum,

9   this Court who had approved the transaction, to handle anything

10  relating to an enforcement or dispute relating to these

11  agreements.  And to take it more broadly, to handle anything

12  that related to, in effect, the assignment and the continuation

13  of the dealership network from Old GM to New GM.  And I think

14  that that was what New GM had bargained for here.  And I think

15  Rally understood that because they not only were passive on the

16  entry of the sale order but in the wind-down agreement they

17  specifically recognized the exclusive jurisdiction.  And that

18  didn't change.  That didn't change.  That's what New GM had

19  bargained for.

20        The issue, Your Honor, with regard to judicial

21  estoppel I think could be easily dealt with by the fact that in

22  the case where New General Motors went to a court, it was to

23  enforce a settlement agreement.  The Dealer Arbitration Act

24  specifically says that if you're going to settle then there is

25  no arbitration and that the arbitrator has nothing to do.  So

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 31 of 84

Page 31

1    when parties settle, they take themselves out of the Dealer

2    Arbitration Act totally based on the expressed language of the

3    statute.  Then if someone --

4              THE COURT:  Why didn't New GM come to me to enforce

5    that order?

6              MR. STEINBERG:  We could have, for sure, Your Honor.

7              THE COURT:  I'm sorry?

8              MR. STEINBERG:  We could have, for sure, done that.

9              Your Honor, the issue with regard to Rule 48(c) of

10   the Commercial Arbitration Rules, we did indicate that we

11   weren't fully adopting the Commercial Arbitration Rules.  The

12   Commercial Arbitration Rule, Rule 48(c), is for purposes of

13   seeking enforcement of an arbitration award and they are not

14   seeking enforcement of an arbitration award.  And the AAA rules

15   itself say that the rules will be applied only to the extent

16   that it's not inconsistent with the Dealer Arbitration Act.

17   And we believe to try to, in effect, implicitly put in a

18   judicial review concept through a rule that says that you can

19   move for enforcement where we had protested it is inconsistent

20   with the Dealer Arbitration Act which didn't provide for

21   judicial review.

22              Now, the fact that -- I think my adversary pointed

23   out to the fact that October 31 is fast approaching.  And under

24   the wind-down agreement, the Chevrolet dealership will be

25   terminated.  And the new dealership that New GM had promised to

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 32 of 84

Page 32

1    -- an entity that used to be a Saturn dealership that operated

2    in the area is going to be given.  And there are rights that

3    people have because of that unless something happens in this

4    court or another court.  But there is this ticking deadline

5    that is there.  And they never -- they filed a motion -- a

6    complaint in August.  They themselves have never moved for an

7    injunction or for a stay or to try to continue the October 31

8    deadline.  And I don't think that they can.  I think that they

9    had agreed that it would get terminated.  I think even the

10   Dealer Arbitration Act specifically wanted finality to these

11   issues and to have finality because it's not only New GM's

12   rights that are being implicated but we've had a dealer who's

13   effectively been on hold since December of 2009 waiting to go

14   in on November 1st.  And their rights will be implicated as

15   well.

16          I think that, Your Honor, that with regard to the

17   interplay between the wind-down agreement and the Dealer

18   Arbitration Act -- the two most critical things is that there

19   is no judicial review that's specified in the statute.  And

20   because there's no judicial review, you're left with a wind-

21   down agreement that had not been, in effect, modified at all

22   except for the overlay of allowing for binding arbitration on a

23   right given by Congress.  And therefore, the commencement of

24   the lawsuit after the award had been given by the arbitrator is

25   a violation of the wind-down agreement and the provisions that

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 33 of 84

Page 33

1    say that you should not sue and you should not interfere.

2          I will note, because it hasn't been said, that the

3    arbitrator gave his award in June and New General Motors gave a

4    letter of intent for the other four dealerships that the

5    arbitrator said had to be reinstated.  And Rally has been

6    reinstated for those other four dealerships.  And this --

7          THE COURT:  Oh.  So when I said it won three-

8    quarters, actually it won four-fifths?  Or with respect to four

9    of the five franchises that it once owned?

10         MR. STEINBERG:  That's correct.  So they are

11   operating right now.  And they got their letter of intent which

12   was supposed to be given by New General Motors, I think, with

13   ten days of the arbitration award.  It was only after that they

14   were well down the road to getting the four in place that they

15   decided to sue for the fifth.  And, Your Honor, our brief tries

16   to strip away the layers.  And to some extent when you orally

17   argue, you try to figure out how much of all the arguments you

18   have to make.  But this was even governed by the Federal

19   Arbitration Act.  I'm not even sure whether -- what they're

20   arguing about would be subject to any kind of judicial review

21   anyway.  We do set forth in our brief the arguments that we

22   think show that there was -- that the arbitration award was

23   consistent with what should have been done because there was

24   not one franchise agreement but there were five franchises

25   agreement.  And it's been dealt with because they've taken four

MOTORS LIQUIDATION COMPANY, et al.

Page 34

1    of the five and we still have one that's outstanding.  And we

2    point to the language of the sales agreement which talk about

3    "General Motors separately on behalf of its division

4    identified" and talk about the "separate" nature of each of

5    these agreements.  The wind-down agreements uses the plural,

6    doesn't use the singular for purposes of talking about these

7    agreements.  And not to be overly cute about the argument, but

8    if they were right that this was one agreement and not five

9    agreements and the arbitrator found a taint with regard to one

10   portion of an integrated agreement then the result would be the

11   same as if it was an executory contract under the Bankruptcy

12   Code with five lease schedules as part of one integrated

13   agreement where the debtor couldn't perform all five.  It's an

14   all-up or nothing.  And if that's the case, there would not

15   have been a reinstatement for all five instead of one.  That's

16   the natural outflow of what their argument is which is that if

17   you've got a taint on an integrated agreement which is

18   nonsoluble then the whole agreement falls not that the whole

19   agreement becomes good.  And so, what you have here is someone

20   who got the benefits of four dealerships.  Then after they got

21   the four dealerships on the reinstatement decided to sue and is

22   now making an argument which is I want my cake, I want to eat

23   it, too, in the context of a statute that doesn't provide for

24   this type of relief.

25           Your Honor, if you'd just bear with me just one

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 35 of 84

Page 35

1    second, I just want to check my notes to see if I --

2            THE COURT:  Sure.

3            MR. STEINBERG:  -- have answered your questions.

4        (Pause)

5            MR. STEINBERG:  I think, Your Honor, when you said --

6    you asked my adversary the question did the Dealer Arbitration

7    Act trump the wind-down agreement for all purposes and he

8    answered no that it was incumbent on you to try to make the two

9    consistent and coherent that he was essentially making the

10   argument that I'm asking Your Honor to, as well, which is that

11   the wind-down agreement had vitality and it was modified for

12   purposes of the covenant not to sue solely for the purposes of

13   doing the binding arbitration procedure consistent with the

14   statute that Congress had subsequently passed.  Thank you.

15           THE COURT:  Okay.  Thank you.  Mr. Snyder, reply?

16           MR. SNYDER:  Your Honor, to first argue what is a

17   covered dealership, what is a not covered dealership to use

18   executory contract analyses versus using franchise law

19   analyses, using California law versus Title 11 law, that's

20   another reason why the California court has jurisdiction

21   because, again, what Mr. Steinberg is doing is saying well,

22   look, Judge, you have jurisdiction.  You can apply bankruptcy

23   law between two nondebtor parties as to what means a covered

24   dealership under the Federal Arbitration Act.  And any of the

25   600 dealers who applied for arbitration under GM could do that

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 36 of 84

Page 36

 1   as well.  And it seems to me that if Congress meant to give

 2   dealers and the AAA jurisdiction over these acts then by a

 3   natural extension, he meant them to be final and binding.

 4   Counsel for New GM sort of takes the car and then he hits a

 5   brake.  He says the covenant not to sue was abrogated by the

 6   Dealer Arbitration Act but it stops there, that there is no

 7   right after the arbitration.  And that is not true and also

 8   doesn't address the question of federal question jurisdiction

 9   that the federal court can possess jurisdiction over.

10          And he raised the Thomas case, Your Honor, but the

11   statute involved in the Thomas case is the Federal Insecticide

12   Fungicide and Rodenticide Act.  In that statute, Your Honor,

13   and I cite to Section 136a(c)(1)(F)(iii) of Title 7:  "The

14   FIFRA arbitration scheme allows judicial review of 'the

15   findings and determinations of the arbitrator' only in the

16   instance of fraud, misrepresentation or other misconduct by one

17   of the parties to the arbitration or the arbitrator.  This

18   provision protects against arbitrators who abuse or exceed the

19   powers or willfully misconstrue their mandate under the

20   governing law."  So Title 7 allowed for judicial review or

21   allowed for a response to Your Honor's question as to what

22   happens when an arbitrator acts inappropriately.  Those last

23   quotes, by the way, Your Honor, were the Thompson v. Union

24   Carbide, 473 U.S. at 592.

25          Here there's nothing.  There's no ability for Rally

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 37 of 84

Page 37

 1   or any of the 600 dealers to get redress as a direct result of

 2   the arbitrator's conduct no matter what it is.  And so what

 3   they're saying is everybody, come back here.  And we just don't

 4   believe that's appropriate under the case law.  It's not

 5   appropriate under Union Carbide.  It's not appropriate under

 6   Vaden.  And it's not appropriate, we would suggest, under the

 7   Second Circuit law.

 8           Your Honor, the statute is less than a year old.  Of

 9   course, the cases we need to use are cases by analogy which are

10   the FAA statutes.  So under the FAA -- I'm sorry -- line of

11   cases, there are agreements.  Agreed.  But that doesn't mean

12   the arguments aren't consistent because the AAA rules assume

13   that if you're a party to the arbitration you've agreed to

14   consent to the outcome.  In the Second Circuit case, in the

15   Idea Nuova case, the statute is silent just like the statute --

16   I'm sorry -- the agreement is silent just like the statute here

17   is silent.  AAA rules apply and we're not saying anything else.

18   And the Second Circuit said if the AAA rules apply then

19   whatever the arbitrator says is final and binding and the

20   unhappy party can then go to the district court and try to

21   confirm that arbitration.  Makes sense.  That's all we're

22   seeking to do here.  The statute is silent.  To suggest that we

23   have no right of judicial review of an arbitration belies the

24   fact that every stage plus Title 9 allow for confirmation,

25   vacature, review of arbitrations.

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 38 of 84

Page 38

1          Now, Mr. Steinberg is right.  The statute 48(c) only

2     speaks to judgment.  And maybe the California district court'll

3     say you can only seek to confirm the judgment.  You can't seek

4     to vacate it.  You can't seek to modify it.  And interprets

5     Rule 48(c) that way as counsel did.  But why can't Rally have

6     the chance to allow California law to do that?

7          Your Honor, this is important.  I'd like to go

8     through the wind-down agreement and the jurisdiction sections

9     because they are not inconsistent with the relief we're seeking

10     here.  This is from GM's own motion.  "The Court retains

11     exclusive jurisdiction to enforce and implement the terms of

12     this order, the MSPA," which is the wind-down agreements, "and

13     each of the agreements executed in connection therewith,

14     including the deferred termination agreement in all respects

15     including, but not limited to, retaining jurisdiction to

16     resolve any disputes with respect to or concerning the deferred

17     termination agreements."

18          There's no dispute regarding the deferred termination

19     agreements at all.  There's a dispute as to whether Chevy is a

20     covered dealership under the Dealer Arbitration Act.  We take

21     no position as to whether this Court -- the sale order speaks

22     for itself.  Section 13 of the wind-down agreement.

23     "Continuing jurisdiction.  By executing this agreement, Dealer

24     hereby consents and agrees that the bankruptcy court shall

25     retain full complete and exclusive jurisdiction to interpret,

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 39 of 84

Page 39

1    enforce and adjudicate disputes concerning the terms of this

2    agreement and any matters related therein and survives

3    termination."

4            Absolutely.  There's an October 31st deadline.  The

5    wind-down agreement sets that out.  We're bound to the extent

6    we're bound under the wind-down agreement.  We've asked GM to

7    extend the October 31st date because of the late hour.  They've

8    refused.  So now we have to deal with the October 31st deadline

9    or get an extension by a court of competent jurisdiction.

10           But we're not addressing any of those provisions.

11   Our -- we are seeking jurisdiction based on the Dealer

12   Arbitration Act and not on the sale order and not on the wind-

13   down agreements.  This Court still has jurisdiction over those.

14           Your Honor, the argument about timing -- no good deed

15   goes unpunished.  They answered on September 7th and came into

16   this court on September 10th.  And then when we tried to get a

17   hearing date as quickly as possible, we agreed we wouldn't go

18   to the court in California to seek a stay if we could get a

19   hearing date on October 4th.  And we've abided by our agreement

20   and we're anxiously awaiting whatever the Court's determination

21   is going to be.  But we deferred to this Court first because

22   that's where New GM went.  And nobody delayed here.  As soon as

23   the motion was filed, we sought a quick hearing and we got one

24   thanks to chambers and Your Honor's courtesy.  But -- I believe

25   I'm finished.

1          THE COURT:  All right.  Very well.  All right.  We're

2     going to take a recess.  I don't know how long it's going to

3     take me.  But you needn't be here before 4:30.  And I'll come

4     out with a ruling as soon thereafter as I can.  We're in

5     recess.

6          (Recess from 4:04 p.m. until 5:30 p.m.)

7          THE COURT:  Have seats, please.  I apologize for

8     keeping you all waiting.  In these jointly administered cases

9     under Chapter 11 of the Code, General Motors LLC, which I'll

10    normally refer to as New GM, moves for an order enjoining Rally

11    Dealership from interfering with New GM's ability to, as it was

12    put, to reform its dealership platform pursuant to a previous

13    order I entered, from vacating or modifying an arbitration

14    decision and from pursuing that effort in California district

15    court.

16          Rally was a GM dealership that was being closed

17    pursuant to an agreement that was acquired by New GM from Old

18    GM.  The Dealer Arbitration Act, which was subsequently signed

19    into law, provided an opportunity for dealers such as Rally to

20    become reinstated as New GM dealers, if they were successful in

21    a binding arbitration proceeding, with New GM.

22          Rally won its arbitration proceeding with respect to

23    three of its brands but not its Chevrolet brand.  Rally is

24    attempting to have this arbitration award modified or vacated

25    in a federal district court in California.  New GM argues that

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 41 of 84

Page 41

```
1    there is no right to modify the arbitration award and,

2    additionally, that my Court is the only forum that can hear

3    this issue.  In addition, New GM argues that Rally has been

4    interfering with New GM's establishment of an alternate Chevy

5    dealership in violation of its agreement with New GM.

6            While I understand the difficulties faced by dealers

7    such as Rally as a consequence of the events of last year, the

8    motion must be granted.  The following are my findings of fact

9    and conclusions of law in connection with this determination.

10           As facts, I find that on July 5th, 2009, I entered

11   the 363 sale order.  That sale order authorized and approved a

12   master purchase agreement dated as June 26, 2009, often

13   referred by the parties as the MPA, between Old GM and an

14   entity that later became New GM.  Pursuant to the MPA and the

15   363 sale order, on July 10, 2009, New GM purchased

16   substantially all of Old GM's assets free and clear of Old GM's

17   liabilities except as expressly assumed by New GM under the

18   MPA.

19           As part of the transactions that were approved under

20   the 363 sale order, Old GM entered into and assigned to New GM

21   certain deferred termination agreements, which we refer to as

22   wind-down agreements, which had originally been entered into

23   between Old GM and certain of its authorized dealers.  These

24   agreements had been offered to dealers as an alternative to

25   outright rejection of their dealer sales and service
```

MOTORS LIQUIDATION COMPANY, et al.

Page 42

1   agreements, which we sometimes refer to as dealer agreements

2   under the rights afforded to debtors to reject executory

3   contracts under 365 of the Code.  The wind-down agreements

4   provided, among other things, that in exchange for certain

5   payments and other consideration, the affected dealers' dealer

6   agreements would terminate no later than October 31, 2010.

7            In December 2009, Congress enacted into law a new

8   statute called the Dealer Arbitration Act which gave wind-down

9   dealers such as Rally the opportunity to seek reinstatement to

10  the GM dealer network through a binding arbitration process.

11  Rally timely filed a request for arbitration and an arbitration

12  was held in May before an arbitration -- arbitrator in

13  California.  On June 8, 2010, the arbitrator issued an award

14  directing New GM to reinstate Rally's Buick, Cadillac and GMC

15  dealer agreements but ruling that Rally's Chevrolet dealer

16  agreement should not be reinstated.  New GM is now currently

17  attempting to establish another Chevrolet dealership in the

18  Palmdale, California area where Rally is located.  During this

19  process, the owner of Rally has continued to lobby New GM to

20  reinstate his Chevy dealership.  After various proceedings, New

21  GM determined to relocate the Chevy dealership to Lancaster,

22  California which triggered an action by Palmdale against the

23  city of Lancaster in the Superior Court of California.

24  Palmdale claims that the terms of an agreement between

25  Lancaster and the new Chevy dealership violated a state law

Page 43

1   that prevent cities from engaging in bidding wars to lure auto

2   dealers and other large sales techs generating businesses to

3   relocate them from one city to another.  The owner of Rally,

4   one Mr. Mayle, provided an affidavit on behalf of Palmdale in

5   that action.  New GM argues that Rally, through its agent, Mr.

6   Mayle, is providing assistance in litigation against New GM and

7   is interfering with the establishment of a new dealership in

8   violation of the wind-down agreement.

9           Rally argues that the arbitrator was bound by the

10  Dealer Arbitration Act to either reject or accept the entire

11  dealer contract and that the arbitrator exceeded his authority

12  by not reinstating the Chevy brand as well.  Thus, on August

13  13, 2010, Rally filed suit in California district court seeking

14  to vacate or modify the arbitration award and to prevent

15  termination of his Chevy dealer agreement though presumably

16  wishing to maintain intact the other aspects of the

17  arbitrator's award which maintained his dealerships for the

18  other three brands, Cadillac, Buick and GMC.

19          Rally alleges, in substance, that the arbitrator's

20  award in not giving him a complete victory was erroneous as a

21  matter of law in its failure to accept its position that all of

22  the separate brands had to be considered together in the

23  species of double or nothing.  He has not alleged that the

24  arbitration award was the result of bribery, fraud, corruption,

25  manifest disregard of settled law or any other ground that

Page 44

1    would be a basis for vacating an arbitration award if the

2    Federal Arbitration Act applied.

3            I'll now turn to my conclusions of law.  Turning

4    first to jurisdiction and within the jurisdiction umbrella,

5    first, to subject matter jurisdiction.  First, it's plain that

6    the district courts and bankruptcy courts in this district have

7    subject matter jurisdiction over this controversy.  The

8    applicable subject matter jurisdiction statute is 28 U.S.C.,

9    Section 1334, the section of the judicial code that follows the

10   judicial code sections relating to federal question, diversity

11   and admiralty jurisdiction.  1334 deals with subject matter

12   jurisdiction with respect to bankruptcy cases and proceedings.

13   That section provides, in relevant part, subsection (b), with

14   exceptions not relevant here, "the district courts shall have

15   original but not exclusive jurisdiction of all civil

16   proceedings arising under title 11, or arising in or related to

17   cases under title 11".

18           Rally addresses the issue of "related-to"

19   jurisdiction under 1334 but that isn't the relevant subject

20   matter jurisdiction issue.  Rather it's the "arising in" prong

21   of 1334 where New GM relies on an order I entered last year in

22   this case under which this Court retained exclusive

23   jurisdiction in paragraph 71(f) to "resolve any disputes with

24   respect to or concerning the deferred termination agreements".

25   The deferred termination agreements, which as I noted are also

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 45 of 84

Page 45

1   referred to as the wind-down agreements, included provisions by

2   which dealers and New GM contractually agreed that this Court

3   retained full and exclusive jurisdiction to enforce them as

4   well as to specifically preclude Rally and other wind-down

5   dealers from filing suit against New GM and taking any action

6   to interfere with New GM's establishment of additional

7   dealerships.  I'll note parenthetically that there was nothing

8   in the Dealer Arbitration Act to modify the subject matter

9   jurisdiction of the federal courts nor to modify any of my

10   earlier orders other than to provide what amounted to a defense

11   to enforcement of the deferred termination agreements if and to

12   the extent that a dealer prevailed in the arbitration process

13   for which Congress provided.

14          Rally did prevail in the arbitration process with

15   respect to three of its franchises and, presumably, would like

16   to avail itself and enforce that part of the arbitration award.

17   But it wishes to upset the arbitration result as to which it

18   didn't prevail and used the hoped-for alternative result, that

19   is, a reinstatement of its Chevy franchise, as a defense to its

20   duties under the deferred termination agreement which duties

21   otherwise obligated it to give up its Chevy dealership, that

22   being a classic "dispute with respect to or concerning the

23   deferred termination agreements".

24          Now, Rally may have come to an agreement by the end

25   of oral argument.  But in any event, I so rule that this Court

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 46 of 84

Page 46

1    does have subject matter jurisdiction over this controversy.

2         Similarly, I find that this is a core matter.  Under

3    28 U.S.C., Section 157(a)(2)(N), core matters include, with

4    exceptions not relevant here, orders approving the sale of

5    property.  The 363 sale order and my approval of the wind-down

6    agreement documented the outcome of those core proceedings.

7    And a proceeding such as the motion now before me which seeks

8    relief predicated on a "retained jurisdiction" clause in my

9    order resolving a core matter is a core matter as well.  The

10   decision in Eveleth Mines, 312 B.R. at pages 644 to 645, is

11   directly on point.  In that case, the Court noted the motion

12   that barred directly and necessarily comes out of a core

13   proceeding in this case, the debtors' motion for authority to

14   conduct a sale of assets of the estate free and clear of liens.

15   Court proceedings under 28 U.S.C., Section 157(b) fall under

16   the "arising under" or "arising in" jurisdiction of 28 U.S.C.

17   Section 1334(b).  Then the enforcement of orders resulting from

18   core proceedings are themselves considered core proceedings.

19        The Second Circuit has held similarly.  It's held

20   that bankruptcy courts are empowered to enforce the sale orders

21   that they enter and to protect the rights which were

22   established by the sale order.  See Millenium Seacarriers, 419

23   F.3d at 97; and Petrie Retail, 304 F.3d at 229-230.  Petrie

24   Retail is particularly instructive because it also dealt with a

25   dispute between two nondebtors addressing rights that were

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 47 of 84

Page 47

1    created by the sale order.  Though Petrie Retail was not

2    unanimous, it's no less binding on the lower courts for that

3    reason.

4            Now there can be no dispute what the sale order

5    actually said.  Nor can there be any dispute as to the wind-

6    down agreement said.  Section 13 of the wind-down agreement had

7    that continuing jurisdiction clause providing that the dealer

8    hereby consented to and agreed that the bankruptcy court would

9    retain full complete and exclusive jurisdiction to interpret,

10   enforce and adjudicate disputes concerning the terms of this

11   agreement and any other matter related thereto.

12           Here and to the extent Rally was successful in the

13   arbitration, of course that would be a defense to win any

14   effort to make it terminate its agreement.  And to the extent

15   that it wishes to either enforce the agreement as it has the

16   right to do with the three franchises for which it prevailed or

17   to defeat the agreement with respect to the one agreement where

18   it lost, in any event they concern the terms of the agreement

19   and, in particular, any other matter related thereto.  I don't

20   think that's subject to serious dispute.

21           Finally, I've considered and ultimately rejected

22   Rally's suggestion that I exercise discretionary abstention on

23   that.  Plainly, there is a right to invoke discretionary

24   invention under 1334(c)(1) of the judicial code.  That's 28

25   U.S.C. Section 1334(c)(1) which provides that nothing in this

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 48 of 84

Page 48

1    section prevents a district court in the interest of justice or

2    in the interest of comity with state courts or respect for

3    state law from abstaining or hearing a particular proceeding

4    arising under Title 11 or arising in or related to a case until

5    Title 11.  And while it speaks principally of state courts and

6    state law, I accept for the purposes of this analysis that we,

7    bankruptcy courts have the power to abstain in favor of other

8    federal courts when the circumstances so warrant.  But I don't

9    believe that the factors here so warrant.  Standards that have

10   been articulated for the exercise of discretionary abstention

11   include of the efficient administration of the bankruptcy

12   estate, comity, the degree of relatedness or remoteness of the

13   proceeding to the main bankruptcy case, the existence of the

14   right a trial and prejudice to the involuntarily removed party.

15   Some of these, obviously, come in removal cases.

16          Here, I think the factor that is most important is

17   the effect of the effect deficient administration of the

18   bankruptcy estate.  This was a procedure that needed to be

19   resolved quickly as evidenced by the very tight time frames

20   that Congress imposed.  As important or more so, the bidders of

21   the world that come in to bid for assets in the bankruptcy

22   court must have knowledge that bankruptcy courts will stand by

23   the documents as they were then drafted to give the parties to

24   those agreements the predictability in their relations for

25   which they are binding and upon which they justifiably rely.

MOTORS LIQUIDATION COMPANY, et al.

Page 49

1    The Court in Eveleth Mines explained "as applied to a sale free

2    and clear of liens, there are also good policy reasons for

3    making a derivative core proceeding classification.  Active

4    bidding on assets from bankruptcy estates will be promoted if

5    prospective purchasers have the assurance that they may go back

6    to the originally forum that authorized the sale for a

7    construction or clarification of the terms of the sale that it

8    approved.  Relegating post-sale disputes to a different forum

9    injects an uncertainty into the sale process which would dampen

10   interest and hinder the maximization of value.  A purchaser

11   that relies on the terms of a bankruptcy court's order and

12   whose title and rights are given life by that order should have

13   a forum in the issuing court."  That is very strong guidance

14   that suggests that a Court, like me, should not abstain in

15   favor of another jurisdiction.

16         Similarly, comity is a factor that I would take into

17   account if there were, as contrasted to here, strong state law

18   concerns.   But here, of course, there are not.  I, no less

19   than a district court, either in New York or California, can

20   determine that which is just in determining whether or not to

21   enforce or, as more relevant here, to undercut an arbitration

22   award.

23         The degree of relatedness or remoteness of the

24   proceeding to the main bankruptcy court is subject to a double

25   entendre.  On the one hand, this is not going to affect the

Page 50

1   assets and order of its liquidation in court.  But the factors

2   articulated in Eveleth Mines likewise cause Courts here to be

3   slow to abstain because giving purchasers of assets the comfort

4   that their needs and concerns are going to be addressed is

5   pretty important.

6          I consider the existence of the right to a jury trial

7   inapplicable because I assume that this would be decided

8   without a jury trial in either events and I also consider

9   prejudice to the involuntary removed party under the facts of

10  this case.

11         So for all of these reasons, I decline to exercise

12  discretionary abstention.

13         Now turning to what I should do with this controversy

14  before me.  Both sides now seem to agree that the Federal

15  Arbitration Act doesn't apply because it implements contractual

16  agreements to arbitrate.  And here, the right to compel

17  arbitration comes not from a contract but from the Dealer

18  Arbitration Act itself.  And it also now appears to be

19  undisputed that the Dealer Arbitration Act doesn't provide for

20  judicial review of arbitration awards issued after the

21  mechanisms for which the Dealer Arbitration Act provides.

22         Nor do I think that I can or should find an applied

23  right to judicial review under that statute.  First, as you

24  know from reading many earlier decisions that I've issued, I

25  start with textural analysis where I note the significant

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 51 of 84

Page 51

1    absence of such a provision when federal statutes routinely

2    provide for rights to federal -- to judicial review when that

3    is the congressional intent.  If I were to imply such a

4    provision here that would be a species of judicial legislation.

5    Second, assuming without deciding that I could appropriately

6    look at legislative history on a matter where the statute is

7    not in any way ambiguous, judicially in grafting rights under

8    that statute would be particularly inappropriate when they'd be

9    inconsistent with the congressional desire to establish this

10   mechanism to avoid the excessive costs and delays of litigation

11   and to impose tight deadlines to get the arbitration process

12   completed.

13          Nor can I accept Rally's argument that New GM

14   conceded a right to judicial review by reason of its

15   willingness to proceed under the AAA's commercial arbitration

16   rules.  In responding to Rally's arbitration demand, New GM

17   expressly stated that it did not waive any objections it might

18   have to the arbitration or to any of the AAA's commercial

19   arbitration rules including, in particular, where such rules

20   would be inconsistent with the provisions or purposes of the

21   Dealer Arbitration Act.  For that same reason, I can't find a

22   waiver on the part of New GM of its rights based on a failure

23   to protest again after its initial reservation of rights was

24   put on the record.

25          Then even if New GM had agreed to AAA arbitration

Page 52

1   rules, the arbitration rules called for a mechanism to enforce

2   an award not to attack it.  Those rules provided that parties

3   to an arbitration under these rules shall be deemed to have

4   consented the judgment upon the arbitration award may be

5   entered in any federal or state court having jurisdiction

6   thereof.  See Rule 48(c) of the AAA Commercial Rules quoted at

7   paragraph 29 of the Rally brief.

8           But that language conveys a right to enforce the

9   arbitration award not to attack it.  For example, if New GM had

10  failed notwithstanding the arbitration award that Rally doesn't

11  complain about to let Rally keep the three franchises the

12  arbitrator said Rally could keep, Rally could have, at least

13  arguably if not plainly in my view, come back to me and say

14  make New GM do what the arbitrator said it should do.  But this

15  is the exact opposite of what we have here and one that's not

16  authorized by the federal statute.

17          As I indicated in oral argument, and I think both

18  sides agreed, the reasonable course for a judge in my position

19  would be to construe the Court's earlier order and the

20  subsequently enacted federal legislation to achieve as much

21  harmony as possible and to honor the congressional intent to

22  the extent that the federal legislation trumped my earlier

23  order.  But it would also be appropriate in my view to honor

24  the congressional intent only to the extent that the federal

25  legislation trumped my earlier order.  Congress did say, of

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 53 of 84

Page 53

1    course, with respect to providing for a defense to enforcement

2    of the wind-down agreements with respect to any areas where the

3    arbitrator ruled in the dealer's favor.  And I think that if

4    New GM had failed to honor the arbitrator's award, as I

5    indicated a moment ago, I'd almost certainly enforce it.  But

6    that is the way by which we'd maintain harmony between my

7    earlier order and the new Dealer Arbitration Act providing for

8    the rights of dealers to invoke the arbitration mechanism in

9    the fashion for which Congress provided.  It doesn't provide

10   for a blank check from me to rewrite the Dealer Arbitration

11   Act.

12           Nor do I think that Rally can get around what is, in

13   essence, an effort to achieve a quasi-appellate review of the

14   arbitration award by saying that it's asking the California

15   district court to make a federal question type determination

16   under the Dealer Arbitration Act.  That might be the case if

17   Congress hadn't established the arbitration mechanism and if it

18   had conferred on the district court's jurisdiction to decide

19   issues as to what is or is not a dealership franchise.  But the

20   whole point of the statutory scheme was that New GM and dealers

21   would proceed by arbitration.  And while, if New GM had refused

22   to arbitrate in the first place, I think that at least I would

23   have had jurisdiction to order New GM to do so.  But now that

24   each of New GM and Rally have engaged in the arbitration

25   process, presumably without any Court forcing either to do so,

Page 54

1    we can't make the underlying arbitration award evaporate.  We

2    can only consider the circumstances, if any, under which the

3    arbitration award is subject to judicial review.  And I've

4    already noted, of course, that the statute doesn't provide for

5    such review.

6         Now, in that connection, I do not believe that under

7    the allegations we have here, this construction raises

8    constitutional issues.  I assume without deciding that

9    procedural due process requires a quasi-judicial determination,

10   like an arbitration, to be conducted by a decider who isn't

11   taking bribes or conspiring with one or another of the parties

12   or, though it's more debatable, who ignored facts or binding

13   authority on point.  If there were such a contention, I'd at

14   least have to consider whether I'd address it.  And I think

15   it's better to construe the Dealer Arbitration Act in such a

16   fashion as to avoid any constitutional issues that would

17   otherwise be relevant.

18        But I have no allegations of bribes, conspiracy,

19   fraud or even manifest disregard of existing law in the matter

20   before me.  Though, if there were such allegations, I think I'd

21   have to seriously consider whether there might be some implied

22   right to remedy such a wrong or that in exercising my exclusive

23   to jurisdiction to enforce or, impliedly, deny enforcement of

24   the deferred termination agreements, I should take such facts

25   into account.  But once more, I emphasize that I have no such

1    allegations here.

2          In the absence of issues of that character, I think

3    that Thomas and, particularly, Switchmen, the two decisions by

4    the Supreme Court, apply to establish a rule that where an

5    arbitrator was given the power to resolve controversies under a

6    statute, that is, the Dealer Arbitration Act, where dealers and

7    New GM were given rights under that statute, reviewed by the

8    federal district courts or, of course, bankruptcy courts that

9    are arms of the district court and have the power to issue

10   final orders on core matters, of the arbitrator's determination

11   is not necessary to protect those rights.  I think I should

12   restate it because I put too many parentheticals in there.

13   Where dealers and New GM were given rights under the statute

14   reviewed by the federal district courts of the arbitrator's

15   determination is not necessary to protect those rights.  And,

16   of course, that's a paraphrase of Thomas, 473 U.S. at 588

17   quoting Switchmen where I'm analytically substituting the

18   Dealer Arbitration Act for the Railroad Labor Act and where I'm

19   substituting arbitrator's determination for board's

20   determination.

21          So I don't believe that judicial review is necessary

22   except in those cases not presented here, and here only

23   arguably, where there are allegations of fraud, corruption or

24   manifest disregard of an existing decision.  And for reasons I

25   described above, I think the exclusive jurisdiction provisions

MOTORS LIQUIDATION COMPANY, et al.

Page 56

1    of the sale order must stick.

2           First, of course, they're res judicata so they remain

3    binding in the absence of an appellate ruling changing them for

4    a legislative pronouncement that does so.  Second, I assume

5    without deciding that Congress could, if it wished, to have

6    taken my exclusive jurisdiction away just as Congress can take

7    away jurisdiction from the lower federal courts on other

8    matters.  But Congress didn't do that.  If we temporarily put

9    aside issues as to the right to judicial review and decisions

10   as to the merits, I assume, without deciding, that a California

11   district court could under its diversity jurisdiction have

12   subject matter jurisdiction over a controversy like this one.

13   But if it did, it would be foreclosed from exercising its

14   subject matter jurisdiction by reason of the final exclusive

15   jurisdiction order that I entered back in July of 2009.  This

16   is no different analytically than the effect that an exclusive

17   jurisdiction order would have over a state court proceeding.

18   Most state courts don't need an expressed grant of subject

19   matter jurisdiction to hear controversies before them.  They

20   normally have subject matter jurisdiction over whatever comes

21   through their doors.  But that doesn't mean that they can hear

22   controversies when a court order or other federal law, like

23   some federal antitrust laws or securities laws, give a federal

24   court exclusive jurisdiction.  Some federal statutes and the

25   order that I entered into are limits on jurisdiction that might

1    otherwise exist.

2            Then Rally makes a judicial estoppel argument noting

3    that in a proceeding against another dealer, New GM brought an

4    action in federal court in California invoking diversity and

5    federal question jurisdiction, the latter under the Dealer

6    Arbitration Act, seeking to require that dealer to comply with

7    a settlement agreement and to drop its efforts to proceed under

8    the Dealer Arbitration Act.  Frankly, I'm not impressed with

9    the wisdom of that approach and, for the life of me, can't

10   understand why New GM sought relief that way instead of coming

11   to me.  But I don't think its effort in that regard rises to a

12   level of a judicial estoppel.

13           Rally depends on three statements to establish its

14   claim of judicial estoppel.  They are that the district court

15   would have jurisdiction under 28 U.S.C. 1332; that the district

16   court would have federal question jurisdiction under 28 U.S.C.

17   1331 because the controversy there allegedly arose under the

18   Dealer Arbitration Act; and that arbitrators would only be

19   empowered to decide whether or not the specific dealership

20   should be added back to the GM dealer network and that "all

21   other issues that arise under the Act must be addressed by a

22   Court of competent jurisdiction".

23           I don't think that any of these are particularly to

24   the point.  I've noted before that I assume that diversity

25   jurisdiction provides subject matter jurisdiction to the

Page 58

1   California court here.  But I've also ruled that that can't

2   trump the bankruptcy court's exclusive jurisdiction provision.

3   And while I disagree that there and here would be federal

4   question jurisdiction under the Dealer Arbitration Act for the

5   particular claim there and here asserted, even if there were

6   such federal question jurisdiction, once more, it wouldn't

7   trump the bankruptcy court's exclusive jurisdiction provision.

8   And I don't think there's anything particularly inconsistent

9   between New GM's third point in that Santa Monica action and

10  the points it's making here given the difference between the

11  facts in each of those cases and the context in which New GM

12  made its observations.  There, an attempt to enforce a

13  settlement agreement under which the namees (ph.) agreed to

14  dismiss their arbitration and New GM was saying that

15  arbitration wasn't appropriate at all rather than dealing with

16  the consequences of a completed arbitration in which there was

17  an arbitration award.

18          But even if there were, I'd see other problems in

19  invoking judicial estoppel as well.  As Rally notes, at page 23

20  in its brief, citing the Second Circuit's decision in Uneeda

21  Doll Company, "judicial estoppel prevents a party from

22  asserting a factual position in one legal proceeding that's

23  contrary to a position that it successfully advanced in another

24  proceeding".  Here, aside from the lack of inconsistencies, the

25  positions that have been taken are legal not factual.  And

Page 59

1    there, New GM didn't ask the Santa Monica Motors court to

2    interpret or enforce the wind-down agreement or, indeed, to

3    interpret or enforce the Dealer Arbitration Act at all.  The

4    latter point is why I think that New GM was just wrong when it

5    then tried to invoke the latter as a basis for 1331

6    jurisdiction.  I'm not sure what it was thinking.  But under

7    the standards of New Hampshire v. Maine, I find that the

8    positions are not clearly inconsistent and I cannot find any

9    perception that either the first or the second Court was misled

10   or that New GM would derive an unfair advantage here if not

11   estopped.

12           Finally, I think that even if judicial review were

13   available of the arbitrator's award, I couldn't vacate the

14   arbitrator's award here.  First, even if the arbitrator was

15   wrong, I don't see the arbitrator having been so wrong that the

16   error would warrant bucking fundamental principles limiting the

17   scope of review of arbitration awards.  There was no case

18   supporting Rally on this issue.  Rally is, in substance, asking

19   the Court or the Courts to, in essence, make new law on this

20   point.

21           And assuming, though for reasons I just noted, I

22   think this assumption is unwarranted, that I could provide ab

23   initio review of the arbitrator's decision, I think the

24   arbitrator got it right at least on the arbitrator's assumption

25   that he could rule one way with respect to the Buick, GMC and

Page 60

1    Cadillac franchises and differently with respect to the Chevy

2    franchise.  I think the dealer's sales and service agreements

3    have to be read separately.  Each stated that it was executed

4    by GM "separately" on behalf of its division identified in the

5    specific addendum.  And each dealer agreement provided that the

6    agreement for each line make is independent and separately

7    enforceable by each party and the use of the common form is

8    intended solely to simplify execution of the agreements.  So I

9    think that in light of that, Rally had five franchise

10   agreements under which the arbitrator's ruling focusing on each

11   brand separately would be more than merely reasonable.  If

12   otherwise warranted by the underlying facts, it would be right.

13            For the foregoing reasons, New GM is to settle an

14   order in accordance with the foregoing as quickly as reasonably

15   possible, that order to be settled on no less than two business

16   days' notice by hand, fax or e-mail.  I assume that New GM will

17   use one of those methods so I don't have to provide for an

18   alternative mechanism if it were to use snail mail.  The time

19   to appeal from this determination will run from the time of

20   that order's entry and not from the time of this dictated

21   decision.

22            All right.  Not by way of reargument, are there any

23   matters that I failed to address or any questions?

24            MR. SNYDER:  No, Your Honor.

25            THE COURT:  Hearing none, we're adjourned.  Good

Page 61

1    evening, folks.

2            MR. SNYDER:  Your Honor, if I may just quickly?

3            THE COURT:  Yes, Mr. Snyder?

4            MR. SNYDER:  Your Honor, under Bankruptcy Rule 8005,

5    to the extent we seek a stay pending appeal and that would be a

6    necessary predicate for an award, for the reasons set forth in

7    our papers and in the oral argument, I request -- am making

8    this oral application for a stay of Your Honor's order pending

9    appeal.

10            THE COURT:  I'll accept the oral application for a

11   stay but we'll do it after a ten minute recess.  And each of

12   you can make your points at that point in time.

13            MR. SNYDER:  Thank you, Your Honor.

14       (Recess from 6:19 p.m. until 6:37 p.m.)

15            THE COURT:  Have seats, please.  Okay.  Mr. Snyder,

16   your application for a stay.

17            MR. SNYDER:  Thank you, Your Honor.  Your Honor, in

18   your decision, I believe the Court stated -- and I apologize if

19   I'm putting words in the Court's mouth -- that areas such as

20   manifest disregard for the law and fraud were not areas that

21   were alleged here.  And that might be properly the province if

22   not exclusively the province of the district court in

23   California.  And I would ask the Court to turn to, Your Honor,

24   Exhibit I which is Rally's petition to modify.  And in Exhibit

25   I, Your Honor, starting on page 10, whether appropriately or

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 62 of 84

Page 62

 1   not, Rally uses the Federal Arbitration Act as a guide as to

 2   what the district court can look to when determining whether it

 3   has jurisdiction.  And it starts at the bottom of page 10, and

 4   I'm quoting, "that the arbitrator in this matter was guilty of

 5   misconduct, misbehavior and exceeded his power, i.e., manifest

 6   disregard by ruling on a matter not submitted for determination

 7   and, (2)attempting to fashion a remedy not authorized by

 8   Section 747 of the Act."  And the argument goes on and a little

 9   farther down, it addresses corruption, fraud and undue means by

10   GM which, again, although it mirrors a section of the FAA, is

11   also grounds that Rally sought in the California district court

12   in order to vacate and modify the arbitration.  So I wanted the

13   record clear that the manifest disregard of the law, fraud and

14   the usual grounds that a party would seek whether under a state

15   statute or the federal arbitration statute to undo the

16   arbitration were pled by Rally in the California action.  And

17   so, I believe that those types of matters, and I believe Your

18   Honor pointed this out, matters of manifest disregard, fact and

19   law as well as fraud, corruption, mistake and exceeding powers

20   are matters that the California district court should hear --

21   can hear, excuse me, and should hear.

22        Your Honor, has basically said that you have sole and

23   exclusive jurisdiction even though the district court may have

24   jurisdiction over these matters.  And as respectfully submitted

25   that the Court may have concurrent jurisdiction but over

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 63 of 84

Page 63

1   matters such as manifest disregard of the law that the federal

2   district court in California also has jurisdiction over this

3   matter.  And it's properly before it now.

4           With respect to the federal question, again, Your

5   Honor seemed to indicate in his decision that the sole and

6   exclusive jurisdiction was given to the bankruptcy court as a

7   result of the wind-down orders.  The Court did not address as

8   we go through in detail, starting at page 28 of our objection,

9   the decision of the Supreme Court in Vaden v. Discover Bank.

10  And I alluded to it, Your Honor, in the original argument.  But

11  the Supreme Court, overturning, I believe, four circuit courts

12  in Vaden, specifically held that they can look through the

13  petition to look at the parties' underlying substantive

14  controversy.  And, Your Honor -- and this is where the Court

15  and Rally might differ.  The substantive controversy, the

16  predicate of the petition arises under the Dealer Arbitration

17  Act.  It does not arise under the wind-down agreement because

18  it was created not from the wind-down agreement but the Dealer

19  Arbitration Act.  So I think there's compelling reasons as a

20  result of the recent Supreme Court case in Vaden to allow the

21  federal district court to hear a federal controversy arising

22  out of a federal statute.  And I've been practicing here for a

23  long time, Your Honor.  To the extent that it's an issue

24  involving a purchaser wanting to get its -- the value of what

25  it bargained for, we are not saying this Court does not have

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 64 of 84

Page 64

1    jurisdiction.  The Court has already held that it has arising-

2    to jurisdiction and it may well have that jurisdiction.

3              But I think I've pointed to at least two, the federal

4    question issue as well as the due process constitutionality

5    issue as to why the California district court has strong --

6    strong subject matter -- rights to exercise its subject matter

7    jurisdiction.  This is not a cursory -- a statute that only

8    cursorily affects the federal court, but it directly affects

9    the federal court.  And I believe, Your Honor, for those

10   reasons, the Court not entertaining or analyzing that and then

11   not seeing that the petition itself does seek -- does allege

12   manifest errors of law as well as fraud and improper powers by

13   the arbitrator that we would be successful on the merits.  And

14   we would be able to, Your Honor, obtain a stay of Your Honor's

15   order to the extent it would give us additional time to seek a

16   stay or to seek a determination in either the district court

17   here or in California.

18             THE COURT:  Well, I understand your desire to go to

19   the district court here.  I have more trouble trying to go to

20   the district court in California.  In fact, that walks, talks

21   and quacks a lot about the actions that Judge Weinfeld found so

22   objectionable in Teachers Insurance v. Butler before the Second

23   Circuit said what it said in Teachers Insurance v. Butler where

24   there was never to collaterally attack his judgment by going to

25   another court.  I mean, I don't claim to be infallible, Mr.

MOTORS LIQUIDATION COMPANY, et al.

1    Snyder, but it seems to me that if somebody's going to say that

2    I'm wrong, it's got to be either the district court or the

3    Second Circuit.

4            MR. SNYDER:  Your Honor, we were in front of the

5    California district court before GM was here.  We can always go

6    back to the filing of the bankruptcy case.  But this is clearly

7    different than Teachers.  Here, we have already commenced an

8    action in the California district court.  We're not forum

9    shopping and running to California because we don't like what

10   the Court is saying.  We deferred in this case because they

11   made the motion that we were going to defer to the bankruptcy

12   court before we took any action in California.  But we're not

13   looking around for a second bite of the apple.  We're already

14   in California.  Issues already been joined.  They've already

15   answered.  So we're at summary judgment stage anyway in

16   California and we have a ticking clock of October 31st.  That's

17   very different than going to another Court when you don't like

18   what this Court has to say, Your Honor.  I mean, I don't know

19   if we need to address that here.  But that's not what we're

20   looking to do.  It's for powers other than I to decide whether

21   we seek a stay here or we go back to the Court where there's

22   been a complaint and answer filed and seek a stay there.  I'm

23   being straightforward with the Court.  It's not our intent and

24   I know the Court might have discomfort with that, but the

25   action was already commenced there.  And that's what led to GM

MOTORS LIQUIDATION COMPANY, et al.

Page 66

1    coming here.

2         THE COURT:  Well, forgive me, Mr. Snyder.  The reason

3    that you can truthfully say it's discomfort is because I try

4    very hard to consume my anger and to maintain my demeanor.  I

5    fully understand the rights of any litigant before me to take

6    me up the street.  But going to another Court right after

7    you've litigated before me for the last three hours and I've

8    given you a ruling which may or may not be right but which was

9    after a lot of thought and effort is one that is more than a

10   source of discomfort.

11        Why don't you continue with the remainder of the

12   three bullets on the applicable case law on an entitlement to a

13   stay and address, if you will, what you're prepared to offer in

14   the way of a bond if I grant a stay?

15        MR. SNYDER:  Your Honor, the argument with respect to

16   the constitutionality -- I had made the argument with respect

17   to whether a federal question exists vis-à-vis the

18   interpretation of the federal statute and going behind the

19   arbitration.  I made as well -- I would point out, Your Honor,

20   actually there are four grounds.  The third one is diversity.

21   And I think although GM was silent on it, the Court, I believe,

22   in its decision, admitted that diversity exists but, again,

23   stated that the sale order would trump the district court even

24   though diversity might existed there.  And the fourth argument,

25   Your Honor, is 48(c) and Your Honor is correct.  It does just

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 67 of 84

Page 67

1    refer to judgment.  It does not refer to the right to vacate or

2    amend or to modify.  It's respectfully submitted, though, Your

3    Honor, that the district court can make that decision as well.

4    Your Honor may be right in all they can do is say thumbs up or

5    thumbs down with respect to a judgment.  But at least with

6    respect, I believe, to the fifty state laws, with respect to

7    arbitration and the FAA, it's not so limited, that applicants

8    are usually allowed by statute, certainly under the FAA, to not

9    only seek a judgment but to modify or vacate.  But that's

10   something the California district court may hold as well, Your

11   Honor.

12          And because there are five sep -- four separate

13   grounds, the constitutionality, the federal question, the

14   diversity and Rule 48(c), in Rally's mind, is more than a

15   compelling reason to hold that concurrent jurisdiction exists

16   and not simply exclusive jurisdiction exists.  That Your

17   Honor's sale order says what it says but that the Arbitration

18   Act raises issues that need to be addressed.  And it's

19   submitted by saying diversity exists but the sale order trumps

20   it, Your Honor, I would suggest that the district court in

21   California does have jurisdiction and does also have the

22   authority to hear these issues.  And for those reasons, I think

23   the Court or Rally would be successful in arguing that it would

24   be successful on the merits on those four particular grounds.

25          I would state also, Your Honor, that the judicial

Page 68

1   estoppel argument is just fascinating to me.  I -- you asked a

2   question of GM and it was your last question, I believe, which

3   was are you saying you could have gone to New York or

4   California but you decided to go to California.  And they said

5   yes.  And so, what they're basically saying is we can go to

6   California or New York but you can't.  And that argument is, in

7   essence, saying we've waived subject matter jurisdiction by

8   entering into the wind-down agreements.  And I don't believe

9   that's correct.  And I believe if GM can go into New York and

10  California then Rally can go into New York and California.  And

11  to simply say that we're -- our fortunes rise and fall here,

12  well, neither -- GM's fortunes didn't rise and fall here

13  either.  They chose not to come here.  And so I think we should

14  have that same right.

15           And for those reasons, Your Honor, we'd like a stay

16  of Your Honor's order until there is an appropriate order of

17  the district court.

18           THE COURT:  All right.  Mr. Steinberg?

19           MR. STEINBERG:  Your Honor, in the context of the

20  order that you've indicated that you will enter, a stay pending

21  appeal makes no sense.  And the whole oral argument that you

22  heard here before was really a reargument motion and was not a

23  stay pending appeal motion.

24           Your Honor has indicated that it was inappropriate

25  for them to go to California and to continue to prosecute the

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 69 of 84

Page 69

1    action in California.  So if you're going to stay the entry of

2    the order, what does that mean as a practical matter?  After

3    having ruled that it was improper to go to California, he now

4    is actually asking you to stay that order so he can go to

5    California?  Which is 180 degrees of the relief you just

6    granted?  This is not like he has a judgment and he wants to

7    stop us from enforcing the judgment because he wants to take

8    his appellate rights.  I'm trying to collect on a monetary

9    judgment.  This is started because he shouldn't have gone to

10   California in the first place.  He shouldn't have violated the

11   wind-down agreement.  He should have done -- he didn't have a

12   judicial right.  And now he's asking Your Honor to stay it so

13   he can, in effect, do what he started to do which was the

14   reason why we brought the motion in the first place.

15        But I think he didn't answer your question what are

16   the four prongs for a stay pending appeal.  He did talk about

17   the likelihood of success on the merits.  And I don't think he

18   said anything today other than try to reargue what Your Honor

19   had just ruled upon as to the likelihood of success on the

20   merits.

21        Frankly, the other three grounds all, I think, favor

22   New General Motors.  The harm to the appellant -- well, on the

23   surface, one could say he's harmed because the Chevrolet

24   dealership will be terminated on October 31st.  The actual harm

25   is that he didn't have a judicial right and you're not

Page 70

1   depriving him of a judicial right.  Conversely, the harm to

2   others being the appellee, which is New General Motors and the

3   new dealership, are dramatic if Your Honor's order is not

4   enforced.  And Your Honor's opinion addressed the public

5   interest element which is the necessity of protecting buyers in

6   a Section 363 order and the Court's exclusive jurisdiction and

7   the public interest that's involved there.

8         I think the only other thing I would add, and it has

9   nothing to do with the stay pending appeal other than the

10  likelihood of success, I'll just point out that he wants to

11  refer to the complaint that was -- the petition that was filed

12  by Rally in California.  On the corruption, fraud and undue

13  means by General Motors, that's just a label that he put on a

14  caption in a petition.  He does not allege one thing about

15  fraud corruption in connection with the arbitration process.

16  He's saying that there were public statements made by Fritz

17  Henderson as to, in general, the importance of a dealership

18  network, and he's saying that that was misleading.  But it has

19  nothing to do with actually what happened in the arbitration

20  and under the Dealer Arbitration Act.  And as far as the

21  misconduct being beyond prec -- established precedent, if you

22  read the paragraph, what he's saying is that the award goes

23  beyond Section 747 because they believe that that statute,

24  which is absolutely silent on the issue, doesn't allow for the

25  assumption of one dealership -- the rejection of one dealership

MOTORS LIQUIDATION COMPANY, et al.

Page 71

1    agreement and the assumption or the reinstatement for the other

2    three.  That's the misconduct of going beyond what is

3    established precedent.

4           Your Honor's decision ruled that if you had to

5    address the merits, even though you weren't, you thought that

6    New GM and the arbitrator was right on that issue.  So he can

7    point to a petition, which is based on the Federal Arbitration

8    Act, citing standards but have no application to the facts of

9    this case and then everything else on the standards for a stay

10   pending appeal warrant for the denial of the stay.

11          And he purposely didn't answer your question as to a

12   bond because, at this point in time, the bond -- we're not

13   looking for a bond.  We're looking for the relief that we

14   brought our motion for.  And a stay pending appeal is, in

15   effect, a denial of our motion which Your Honor just granted.

16        (Pause)

17          THE COURT:  Stand by, everybody.  Sit in place.

18        (Pause)

19          THE COURT:  Gentlemen, in this supplemental

20   proceeding, Rally moves by oral motion, with my consent, for a

21   stay pending appeal.  And I am granting its motion to the

22   extent of providing for a seven calendar day stay to permit

23   Rally to go to the district court in this district.  And the

24   motion is otherwise denied.  The following are the bases for my

25   exercise of discretion in this regard.

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 72 of 84

Page 72

1          Though I have no memory of hearing it expressly

2     invoked, a motion of this character is governed by Federal Rule

3     of Bankruptcy Procedure 8005.  It provides in relevant part

4     that "A motion for a stay of the judgment order or decree of a

5     bankruptcy judge for relief pending appeal must ordinarily be

6     presented to the bankruptcy judge in the first instance...A

7     motion for such relief" granted by -- "or for modification or

8     termination of relief granted by a bankruptcy judge may be made

9     to the district court but the motion shall show why the relief,

10    modification or termination was not obtained from the

11    bankruptcy judge.  The district court...may condition the

12    relief it grants under this rule on the filing of a bond or

13    other appropriate security with the bankruptcy court."

14          As the language I just quoted makes clear, the rule

15    is not terribly helpful with respect to the standards for

16    considering a motion of that character.  Rather, for that, we

17    look to the case law which, in the bankruptcy appellate arena,

18    takes a considerable amount of guidance from similar issues

19    presented under the FRAP, the Federal Rules of Appellate

20    Procedure.

21          I exercise my discretion in accordance with my

22    earlier decision, coincidentally in General Motors, at 409 B.R.

23    24, and the affirmants by Judge Kaplan of the district court in

24    2009 U.S. District Court Lexis 61279.  As I stated in my ruling

25    there, in GM, the decision as to whether or not to grant the

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 73 of 84

Page 73

1    stay of an order pending appeal lies with the sound discretion

2    of the Court.  See, for example, In re Overmyer, 53 B.R. at

3    955.  Though the factors that must have to be satisfied have

4    been stated in slightly different ways and sometimes in a

5    different order, it's established that to get a stay pending

6    appeal under Rule 8005, a litigant must demonstrate it would

7    suffer irreparable injury if a stay were denied; there is a

8    substantial possibility, although less than a likelihood of

9    success on the merits of a movant's appeal; other parties would

10   suffer no substantial injury if the stay were granted; and that

11   the public interest favors a stay.  See, for example,

12   Hirschfeld v. Board of Elections, 984 F.2d at page 39.  It's a

13   decision of the Second Circuit in 1992; In re DJK Residential,

14   2008 U.S. Dist. LEXIS 19801; and 2008 WL 650389, a decision by

15   Judge Lynch back when he was a district judge; and In re

16   Westpoint Stevens, 2007 U.S. Dist. LEXIS 33725, 2007 WL

17   1346616, a decision by Judge Swain of the district court.

18          The burden on the movant is a "heavy one".  See, for

19   example, DJK at *2.  See also U.S. v. Private Sanitation

20   Industrial Assoc., 44 F.3d 1082 at page 1084, another decision

21   of the Second Circuit.  To be successful, the party must "show

22   satisfactory evidence of all four criteria".  In re Turner, 207

23   B.R. at page 375, a decision of the former Second Circuit BAP

24   in 1997.  Moreover, if the movant seeks the imposition of a

25   stay without a bond, the applicant has the burden of

Page 74

1   demonstrating why the Court should deviate from the ordinary

2   full security requirement.  See DJK at *2, Westpoint Stevens at

3   *4.

4          While, as Judge Lynch noted in DJK, the Second

5   Circuit BAP has held that the failure to satisfy any prong of

6   the four-circuit test "will doom the motion," with Jerry Lynch

7   having cited Turner.  The Circuit in more recent cases have

8   engaged in a balancing process with respect to the four factors

9   as opposed to adopting a rigid rule.  In my earlier ruling in

10  GM, I assumed without deciding that the balancing approach

11  would be more appropriate.  And I'm going to do likewise here.

12  I also note that when Judge Kaplan affirmed me in GM in the

13  decision that I described a few minutes ago, I think he took a

14  similar approach.

15         Let me start with injury first.  Obviously, I take

16  the loss of a franchise seriously.  And indeed, early in the

17  decision that I dictated -- I guess it's now an hour or an hour

18  and a half ago -- I did hopefully express my empathy to dealers

19  losing their franchises.  However, what caused the lack of the

20  franchise, or the loss of the franchise, is not the ruling that

21  I issued tonight.  It was the dealer termination agreement that

22  was entered into over a year ago.  What we have here is

23  Congress recognizing the injury to dealers as a consequence of

24  either rejection of dealership agreements, as was the case in

25  Chrysler, or even the soft landing termination agreements that

Page 75

1    we had here, provided dealers with an arbitration remedy to, in

2    essence, undo that which otherwise would happen.  And Rally

3    took advantage of that and it won in three-quarters -- or four-

4    fifths -- Pontiac, I guess, ultimately not being relevant -- of

5    the matters which it took before the arbitrator.  Now, in

6    essence, what it's asking for is to avoid the injury from a

7    year ago and at the same time to avail itself of the benefits

8    of the arbitration to the extent that it won.  With it having

9    won with respect to Buick, Cadillac and GMC, I don't think

10   there is irreparable injury to it by reason of its not having

11   shot the moon in its litigation efforts before the arbitrator.

12          Frankly, folks, I tried very hard to get it right.

13   And we're going to get to a likelihood of success in a minute.

14   But I do not believe that my ruling today causes irreparable

15   injury.  And I think really all we're talking about is the

16   results of an arbitration system that was made available for

17   Rally and for which it only succeeded in part.

18          I will, however, assume that there is a -- at least a

19   peppercorn of irreparable injury.  I'm certainly not going to

20   disqualify Rally for not showing more in the way of irreparable

21   injury.  And I'm not, as I indicated, going to require it to

22   make a strong showing on all fours.  I am going to take a

23   balancing approach so I'm going to turn to that next.

24          So let's talk then about likelihood of success which

25   is where Rally spent the bulk of its argument.  Although we

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 76 of 84

Page 76

1    talk about likelihood of success, that's a shorthand for a more

2    nuanced analysis.  The technical standard is there is a

3    substantial possibility although less than a likelihood of

4    success on the merits.  Well, let's slice and dice the various

5    aspects of my earlier ruling.

6              First, the propriety of my conclusion that I do have

7    subject matter jurisdiction and that I have core

8    jurisdiction -- core, of course, not being the subject matter

9    jurisdiction issue but talking about the power of a bankruptcy

10   judge in contrast to a district judge to decide.  Those two

11   rulings now seem to be accepted or at least unchallenged.  And

12   although there was no express discussion of my decision not to

13   abstain, I didn't hear any argument on that.  And, frankly,

14   discretionary abstention is called discretionary for a reason.

15   There would have to be an abusive discretion in my electing not

16   to abstain.  And I think that there would not be a material

17   likelihood of success on that and would be far short of a

18   substantial possibility.

19             On the merits, it's undisputed that we're not talking

20   about the Federal Arbitration Act, that the Dealer Arbitration

21   Act provides no right to appeal.  And my ruling did not go so

22   far as to say that under no circumstances under anything that

23   might ever be alleged would I deny the right to appeal.  What I

24   have said is that to the extent, if any, to which there would

25   be such a right, a construction to, in essence, save the

09-50026-mg   Doc 7348   Filed 10/06/10   Entered 10/15/10 10:15:05   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 77 of 84

Page 77

1    constitutionality of the statute if it were otherwise put in

2    question, there would have to be something seriously wrong with

3    the arbitration in the way of fraud, corruption, bribery being

4    a species of corruption, or, and I articulated it differently,

5    disregard of applicable authority.  I went on to provide two

6    additional levels -- you can call it dictum; you can call it

7    alternative grounds, whatever, which caused me to believe that

8    it's not likely that there's going to be a reversal.

9            And as far as whether there's a substantial

10   possibility, on the facts that were put before me, I don't

11   think there's even that.  To be sure, words were put before the

12   district judge triggering responses that if this were an action

13   under the Federal Arbitration Act would get a judge's

14   attention.  But as the recent decisions by the Supreme Court in

15   Bell Atlantic v. Twombly and, especially, Ashcroft v. Iqbal

16   tell us, just invoking words making conclusory allegations in a

17   pleading isn't enough.  You can't talk about corruption without

18   giving the Court some facts as to lead the Court to believe

19   there was corruption.  And we're not talking about corruption

20   by GM.  We're talking about corruption by the arbitrator.  I

21   used the example before of taking bribes.  There are no

22   allegations of ex parte communication.  There are no

23   allegations of any irregularities in the proceedings before the

24   arbitrator other than the assertion that, as a matter of law,

25   the arbitrator got it wrong.  And even then, there's no

Page 78

1    allegation that the arbitrator disregarded any particular case

2    that would suggest to the arbitrator that he got it wrong.  So

3    while I think there would be a substantial possibility of

4    success on appeal if I were somehow to rule that there is no

5    right to appeal and that I got to close my eyes to

6    irregularities of the type that I just described if they were

7    shown, it doesn't affect the outcome here because I don't have

8    any facts suggesting any of those things.  Bottom line, folks,

9    I do not find a substantial possibility.

10           Third factor.  Other parties would suffer no

11   substantial injury if the stay were granted.  And here, I think

12   there are potential injuries, at least if we go past October

13   31st, of one type, for sure, and another which more properly

14   may be regarded as being a public interest concern rather than

15   a private prejudice.  For GM's benefit, I'll say that I see no

16   prejudice in staying for five days to allow the district court

17   to second guess me on the stay application.  And for that

18   reason, I am going to grant a stay to the extent of five days.

19           But we have a new dealer who's taking over on the

20   31st of October.  I don't have evidence on it, but I got to

21   assume that the existing franchisee's gain is going to be the

22   new one's loss.  They're either going to be competing with each

23   other or that other guy is going to be made to wait if this

24   thing can't proceed past October -- if this somehow proceeds

25   past October 31st.  And we have a nationwide program which was

09-50026-mg    Doc 7348    Filed 10/06/10    Entered 10/15/10 10:15:05    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 79 of 84

Page 79

1    judicially blessed back in July of last year for these dealer

2    unwinds and I think it's prejudicial to New GM to put this

3    system in play to any greater extent than Congress did by its

4    statutory enactment.  And Congress didn't say everything you're

5    doing is undone.  What it did was say well, we're going to set

6    up this arbitration mechanism.  And that's exactly what we got.

7    And it goes without saying that I comply with the congressional

8    but I don't think we should be going beyond what Congress said.

9            Lastly, the public interest favors a stay.  That's

10   the final factor.  While I quoted the language before, and I

11   think Rally acknowledged its importance, that we deliver to the

12   purchasers of assets in bankruptcy sales that which we have

13   promised.  And if and to the extent that the counterparty to a

14   deal with an estate comes back and says I need you to enforce

15   it so I get the benefit of what I had bargained for, we do

16   that.

17           I talked back at the time of the original 363

18   determination and my separate ruling on the stay application

19   that followed my 363 ruling by a couple of days about how

20   important GM's survival is to the public interest and the

21   interest not just of the federal taxpayers but the needs and

22   concerns of the states of Michigan and Ohio and the communities

23   in which GM plants operate.  We made decisions then about that

24   which was necessary to give New GM the maximum opportunity to

25   thrive.  We made rulings then which are res judicata.  I don't

MOTORS LIQUIDATION COMPANY, et al.

Page 80

1    think the public interest is served by interfering with what we

2    then put in place in any way.

3            Certainly, there is no public interest in allowing

4    this collateral attack.  It's a private interest to the extent

5    it's any interest.  And when a party that was offered and

6    availed itself the opportunity to arbitrate then wishes to take

7    the portion for which it did not win and put the earlier system

8    in play beyond getting the arbitration opportunity for which

9    Congress provided, that is, at the least, not in the public

10   interest and may fairly be regarded as being contrary to the

11   public interest.  At best, looking at it most favorably to

12   Rally, it is a wash because it is private interests that are

13   being sought to be advanced and not public ones.

14           So, as my discussion indicates, folks, I think we got

15   to go by the book and deal with it as I did in my decision

16   dictated just a moment ago by the four enumerated factors

17   articulated in the case law for the grant of a stay.  And it is

18   stayed to permit a second opportunity to go to the district

19   court for those seven calendar days.  And so as not to put a

20   gun to the head of the district court having to issue a

21   decision, like Judge Kaplan did where he had to work all night

22   on it, I don't want to do that to the district court again if I

23   can avoid it.

24           But beyond that, it is denied.  Rally is authorized

25   and requested, not ordered, but requested to advise the

Page 81

 1   district court that an application was made to the bankruptcy

 2   court, that the bankruptcy court denied it except to the extent

 3   of the five days for the reasons that it dictated into the

 4   record and that any further application to the bankruptcy court

 5   is dispensed with and waived.  From now on, we're in the

 6   district court, folks.

 7           Yes, sir?

 8           MR. STEINBERG:  Your Honor, I just have some brief

 9   moments and I thank you for staying so late for today.  In your

10   presentation in connection with the stay pending appeal, you

11   said seven calendar days but I believe you also said at one

12   point in time five days.  So --

13           THE COURT:  If I did, it was a reference to five

14   business days.  Seven calendar days transposes into five --

15           MR. STEINBERG:  Okay.

16           THE COURT:  -- business days.  And ever since we

17   amended the federal rules of many different types last

18   December, we now go on bunches of seven calendar days.

19           MR. STEINBERG:  The second thing, Your Honor, is that

20   while I'm not exactly sure what I would have otherwise done

21   during the seven calendar day period because the wind-down

22   agreement is fairly passive, I do want to make sure that I'm

23   still able to present to Your Honor the order that you had

24   asked for --

25           THE COURT:  Of course you can.

Page 82

1          MR. STEINBERG:  Okay.  And I think that's it.  I

2    understand that the only activity that will happen from this

3    point on is in the district court of this district.

4          THE COURT:  Correct.  All right.  It's been a long

5    day.  Good evening, gentlemen.  We're adjourned.

6       (Whereupon these proceedings were concluded at 7:23 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 83

1

2                                 I N D E X

3

4                              R U L I N G S

5    DESCRIPTION                                      PAGE     LINE

6    Motion of New GM for an order enjoining Rally     41        8

7    Dealership from interfering with New GM's

8    ability to reform its dealership platform,

9    from vacating or modifying an arbitration

10   decision and from pursuing that effort in

11   California district court granted

12   Court declines to exercise its discretionary     50       12

13   abstention

14   Oral motion by Rally Auto for a stay pending     71       21

15   appeal granted for five business days to permit

16   Rally to go to district court;

17   but denied in all other respects                 71       24

18

19

20

21

22

23

24

25

Page 84

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    LISA BAR-LEIB

9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  October 6, 2010

17

18

19

20

21

22

23

24

25