IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Motors Liquidation Company, et al., Debtors
Chapter 11 Case No. 09-50026 (REG)
(Jointly Administered)

October 5, 2010

Hon. Robert E. Gerber, Bankruptcy Judge
United States Bankruptcy Court - Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: *Objection to nondisclosure of a potential added financial liability by Named Defendants in a $303 million "In Re GM Securities and Derivative Litigation" settlement.*

Dear Judge Gerber:

In response to the Notice of Hearing to Consider Approval of Debtors' Proposed Disclosure Statement with Respect to Debtors' Joint Chapter 11 Plan, I am submitting for the Court's consideration the accompanying six documents describing a recently identified--but still not publicly acknowledged--element of the above referenced litigation.

Taken together, I believe these enclosures suggest a clear potential for the future imposition of a significant added financial liability on some or all of the Named Defendants (including General Motors Corporation) in conjunction with the January 6, 2009 District Court-authorized Class Action negotiated settlement in the lawsuit entitled, "In Re GM Securities and Derivative Litigation" (MDL No. 1749, Master Case No. 06-md-1749).

The likelihood of incurring this additional expense is, in my judgment, sufficiently compelling as to constitute a *material investment consideration* which should be disclosed in any forthcoming Debtors' Joint Chapter 11 Plan.

Accordingly, I would respectfully object to any Disclosure Statement which does not incorporate a clear and sufficient notice of this contingency.

Sincerely,

Robert W. Hartnagel
7605 Carta Valley Drive
Dallas, Texas  75248
(972) 233-8090

Enclosures: SEC and TARP Inspector General letters dated August 9 and August 16, 2010
respectively, and Exhibits 3 - 6 showing excerpts from a presentation
submitted to the Securities and Exchange Commission on May 10, 2010.

## CERTIFICATE OF SERVICE

I hereby certify that, on October 9, 2010, copies of the foregoing letter and enclosures have been timely served by U.S. Postal Service Priority Mail on the parties listed below.

Robert W. Hartnagel

H. David Kotz, SEC Inspector General, 100 F Street, N.E., Washington, D.C. 29549-6041

Hon. Neil M. Barofsky, SIGTARP Special Inspector General, 1801 L Street, N.W., Washington D.C. 20220

Clerk of the Bankruptcy Court, Southern District of New York, One Bowling Green
New York, NY 10004-1408

Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, NY 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkn, Esq., and Ajoseph H. Smoinsky, Esq.)

The Debtors, C/O Motors Liquidation Company, 500 Renaissance Center, Detroit, MI 48265
(Attn: Ted Stenger, Esq.)

General Motors LLC, 400 Renaissance Center, Detroit, MI 48265, (Attn. L. S. Buonomo, Esq.)

The United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.
(Attn: Joseph Samarias, Esq.)

Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser
One World Financial Center, New York, NY 10281 (Attn: John J. Rapisardi, Esq.)

Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor
New York, NY 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.)

Kramer Levin Naritalis & Frankel LLP, Attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, NY 10036 (Attn. Thomas Moers Mayer, Esq. Lauren Macksoud, Esq., and Jennifer Sharret, Esq.)

Office of the United StatesTrustee of the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Tracy H. Davis, Esq.)

The U.S. Attorney's Office, S.D.N.Y.. 86 Chambers Street, Third Floor, New York, NY 10007
(Attn. David S. Jones, Esq. and Natalie Kuehler, Esq.)

Chaplin & Drysdale, Attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, NY 10152-3500.
(Attn. Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.)

One Thomas Circle, N.W., Suite 1100, Washington, DC 20005, (Attn. Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.)

Stutzman, Brombert, Esserman & Plifka, A Professional Corporation, Attorneys for Dean M. Trafelet, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, (Attn. Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.)

<u>**Via Electronic Transmission to (202) 622-4559**</u>

August 16, 2010

The Honorable Neil M. Barofsky
Special Inspector General
Troubled Asset Relief Program
1500 Pennsylvania Avenue, NW, Suite 1064
Washington, D.C. 20220

Dear Special Inspector General Barofsky:

    I am contacting you in connection with the article I read in Saturday's Wall Street Journal concerning Senator Charles E. Grassley's letter of August 13, 2010, which states in pertinent part:

> "In the interest of transparency and accountability it is essential that American taxpayers know whether they are getting a fair deal on the GM IPO and how large a financial loss they are likely to suffer. There is no reason that this should not be determined before, rather than after, the transaction is complete."

    In support of these same objectives, I am attaching a copy of the letter I mailed last week to Securities and Exchange Commission Inspector General H. David Kotz emphasizing the need for promptly addressing a serious injustice that I believe has been inflicted on thousands of (former) General Motors Corporation shareholders as a result of a series of events that occurred shortly before the company entered bankruptcy proceedings. In my opinion, the subject of my presentation to the SEC is directly relevant to GM's (reportedly imminent) public stock offering.

    A copy of the (very detailed) information I forwarded to Mr. Kotz on May 10, 2010 explaining the nature of this *highly time sensitive* injustice is being sent to your attention by Express Mail today in the hope that this matter can somehow be expeditiously resolved.

    Thank you for whatever consideration you may feel this matter deserves.

Sincerely,

Robert W. Hartnagel
7605 Carta Valley Drive
Dallas, TX 75249
(972) 233-8090

EG200425460US

<u>**Via Electronic Transmission to (202) 772-9265**</u>

August 9, 2010

H. David Kotz, Inspector General
U. S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-6041

Dear Sir:

This is a follow-up to my previous correspondence with the SEC Inspector General Staff regarding certain deceitful and thoroughly improper provisions that were included in the Notice of Proposed Settlement that was distributed to thousands of General Motors Corporation $1 2/3 par Common Stock shareholders to supposedly "explain" the meaning and effect of last year's $303 million negotiated settlement of "In Re GM Securities and Derivative Litigation" (MDL No. 1749, Master Case No. 06-md-1749).

In this connection, you may recall that the information that was supplied to your office (three months ago) included the following cautionary statement:

> *"Your staff's immediate consideration of this presentation is urgently requested because—as was clearly intended by the negotiating parties—the remaining limitations period for initiating remedial shareholder action is rapidly slipping away. Obviously, the massive commitment of TARP funding and extensive direct involvement of U.S. government officials in General Motors operations—both before and after this settlement was approved—could give this matter special significance."* (emphasis added)

The purpose of this letter is to once again respectfully call your attention to the importance of this same point, since as far as I am aware (and despite my unequivocal identification of the particular language which created this clearly *material deception*), the affected shareholders still have not been informed of its existence in any way that could enable them to take remedial action before the possible expiration of the existing time limit for doing so.

I believe that the shareholders who lost their entire investments in GM stock are *entitled* to receive notification of this situation, and moreover, that the SEC has a responsibility to insure that this notice is promptly provided. It also seems to me that this same notification is entirely pertinent to the expected imminent public offering of newly-issued GM common stock, since these same directly related recent *shareholder communication practices* of General Motors management obviously constitute an entirely *material investment consideration* for anyone who might be contemplating the purchase of "new" shares of this *ongoing* corporate enterprise.

Sincerely,

Robert W. Hartnagel
7605 Carta Valley Drive
Dallas, TX 75249

*Excerpts Only*

# EXHIBITS

*For presentation to*
**H. David Kotz, Inspector General**
**U. S. Securities and Exchange Commission**
**100 F Street, N.E.**
**Washington, D.C. 20549-6041**

*by*
**Robert W. Hartnagel**
**7605 Carta Valley Drive**
**Dallas, TX  75249**

**May 10, 2010**

*SPECIAL NOTE:* I am not an attorney and no representation to the contrary is intended. All of the opinions, conclusions and calculations included in this presentation are my own, and while they are believed to be accurate as stated, no such assurance is being offered or should be presumed. My objective has been to attempt to explain a serious injustice which I believe former General Motors shareholders are experiencing due to the extension, within the context of an investor publication, of an inappropriate *contracting practice* which has been used by members of GM management in other ways over a considerable period of time. I hope this information will be useful in encouraging reconsideration of the SEC's role in assessing and responding to this injustice.

Robert W. Hartnagel

<u>**VERBATIM DEFINITION of the term "UNKNOWN CLAIMS" as shown in SECTION 11 of "The Notice" entitled, "WHAT AM I GIVING UP TO RECEIVE MY PAYMENT IN THE SETTLEMENT?"**</u>

"Unknown Claims" means any and all claims that any of the Lead Plaintiffs or Class Members do not know or suspect to exist in his, her or its favor as of the Effective Date of the settlement, and any and all claims that Defendants do not know or suspect to exist in their favor as of the Effective Date, which if known by him, or her or it might have affected his, her or its decision(s) with respect to the Settlement.

## What's wrong with this picture?

### <u>SCOPE OF INDEMNIFICATION</u>

**1.** Claims that were *SPECIFICALLY IDENTIFIED* in the "In Re GM" securities action;

**2.** Claims that <u>*Lead Plaintiffs*</u> and <u>*Class Members*</u> did <u>*NOT*</u> know or suspect to exist in their favor;

**3.** Claims that <u>*Defendants*</u> did <u>*NOT*</u> know or suspect to exist in their favor;



**4.** Claims that <u>*Defendants*</u> *DID KNOW* to exist, *BUT WERE NOT DISCLOSED TO INVESTORS* in "The Notice."

---

**KEY POINT:** This ingeniously-worded provision permitted Defendants to <u>*EVADE DISCLOSURE*</u> of claims that <u>*WERE KNOWN TO EXIST,*</u> while at the same time inducing <u>*GM SHAREHOLDERS*</u> to surrender any future right to litigate <u>*THESE SAME ISSUES*</u>. This clearly constitutes a <u>*MATERIAL OMISSION*</u> of information that was–and is–directly relevant to the scope of financial indemnification that recipients of The Notice were asked to authorize. It also should be noted that, as far as both "known" and "unknown" <u>Proxy Statement-related (Section 14a-9) claims</u> are concerned, the interests of <u>GM Shareholders</u> are very different from those of the <u>Debt Security Investors</u> who both selected the issues that were actually examined in the "In Re GM" pleadings AND <u>*hired the attorneys*</u> who later represented these distinctly separate groups in <u>*settlement negotiations*</u>.

## THE $303 MILLION QUESTION:

**11.  What am I giving up to receive my payment in the Settlement?**

## THIS IS THE ANSWER OPPOSING COUNSEL PROVIDED IN "THE NOTICE":

**11.  What am I giving up to receive my payment in the Settlement?**

Unless you exclude yourself, you are agreeing to remain in the Class and that means that if the Settlement is approved you will release all "Settled Claims" against the "Released Parties" (as defined below and in the Stipulation, which is available through the mail upon request, and in the Proof of Claim Form). This means that you no longer have the right to pursue these claims in a court of law against Defendants or any of the Released Parties. If you remain a member of the Class, all of the Court's orders will apply to you and legally bind you.

"Settled Claims" means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated; at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted in the GM Securities Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them or the successors and assigns of any of them against any of the Released Parties which arise out of, are based upon, or relate to the same subject matter, allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the GM Securities Action and related to the purchase, acquisition or holding of GM Securities.

"Released Parties" means GM, GMAC, Peter R. Bible, Walter G. Borst, John M. Devine, G. Richard Wagoner, Jr., Alan G. Lafley, Philip A. Laskawy, Eckhard Pfeiffer, Deloitte & Touche, Deloitte Touche Tohmatsu, a Swiss Verein ("DTT"), and DTT associate and member firms, and all their respective, past, present and future parent companies, subsidiaries, affiliates, divisions, related entities, joint ventures, subcontractors, agents, attorneys, insurers, subrogees, co-insurers, reinsurers and servants, all their respective, past, present and future officers, directors, employees, members, partners, principals, shareholders and owners and all their respective heirs, executors, administrators, personal representatives, predecessors, successors, transferees and assigns.

"Unknown Claims" means any and all claims that any of the Lead Plaintiffs or Class Members do not know or suspect to exist in his, her or its favor as of the Effective Date of the Settlement, and any and all claims that Defendants do not know or suspect to exist in their favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and Defendants shall expressly waive, and each Class Member shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs and Class Members and the Released Parties may hereafter discover facts in addition to or different from those that he, she, it or they now know or believe to exist or to be true with respect to the subject matter of the Settled Claims, but the Lead Plaintiffs and Defendants shall have, and each Class Member and Released Party, upon the occurrence of the Effective Date and by operation of the Final Judgment, shall be deemed to have fully, finally, and forever settled and released any and all Settled Claims, including Unknown Claims. Lead Plaintiffs and Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims was separately bargained for and was a key element of the Settlement.



# " SETTLED CLAIMS "

The fundamental uncertainty created by overlapping and contradictory possible interpretations of the term "*SETTLED CLAIMS*" IS THE *K E Y* to understanding the injustice that GM shareholders are experiencing:

### LIMITED INDEMNIFICATION

"*SETTLED CLAIMS* mean any and all claims...that ...have been asserted...or...that could have been asserted in any forum...that are...BASED UPON, OR RELATE TO THE SAME SUBJECT MATTER ...REFERRED TO IN THE SECURITIES ACTION..."

### UNLIMITED INDEMNIFICATION

"*SETTLED CLAIMS*" means any and all claims...including both known claims *AND UNKNOWN CLAIMS (AS DEFINED HEREIN)* ...(i) that have been asserted in the GM Securities Action... OR (ii) that could have been asserted in any forum by the Class Members...which arise out of...OR RELATE TO...the same...*FACTS* ...referred to....in the GM securities Action. AND related to the...HOLDING of GM securities.

**?**

### MATERIAL OMISSION

"UNKNOWN CLAIMS" means...



*VERBATIM DEFINITION of the term "UNKNOWN CLAIMS" as shown in SECTION 11 of "The Notice" entitled, "WHAT AM I GIVING UP TO RECEIVE MY PAYMENT IN THE SETTLEMENT?"*

"Unknown Claims" means any and all claims that any of the Lead Plaintiffs or Class Members do not know or suspect to exist in his, her or its favor as of the Effective Date of the settlement, and any and all claims that Defendants do not know or suspect to exist in their favor as of the Effective Date, which if known by him, her or her or it might have affected his, her or its decision(s) with respect to the Settlement.

#### What's wrong with this picture?

##### SCOPE OF INDEMNIFICATION

1. Claims that were *SPECIFICALLY IDENTIFIED* in the "In Re GM" securities notice;
2. Claims that *Lead Plaintiffs* and *Class Members* did *NOT* know or suspect to exist in their favor;
3. Claims that *Defendants* did *NOT* know or suspect to exist in their favor;
4. Claims that *Defendants DID KNOW* to exist, *BUT WERE NOT DISCLOSED TO INVESTORS* in "The Notice."

---

## *(UNANSWERED)*
## *THE* ⋀ *$303 MILLION QUESTION:*

### *WHO DECIDES* WHICH COMBINATION OF THESE *FUNDAMENTALLY* * *CONTRADICTORY* * INTERPRETATIONS IS "*CONTROLLING*"...

### AND *EXACTLY WHEN* DOES THAT DETERMINATION *GET MADE* ?

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE GENERAL MOTORS CORP. SECURITIES AND DERIVATIVE LITIGATION _____/ | MDL No. 1749 Master Case No. 06-md-1749 Hon. Gerald E. Rosen This Document Relates to: 2:06-cv-12258-GER 2:06-cv-12259-GER |



FILED

DEC 1 0 2008

CLERK'S OFFICE
DETROIT

▶ **REQUEST TO INVALIDATE THE PROPOSED SETTLEMENT NOTICE BECAUSE**
**IT COMPROMISES THE FIFTH AMENDMENT RIGHTS OF GM SHAREHOLDERS** ◀

*THE DOCUMENT SHOWN ABOVE WAS FILED AS AN* <u>*OBJECTION*</u> *IN CONJUNCTION*

*WITH A "FAIRNESS HEARING" HELD PRIOR TO THE COURT'S FINAL ORDER*

*APPROVING THE PROPOSED SETTLEMENT AGREEMENT ON JANUARY 6, 2009.*

*THE FULL TEXT OF THE REQUEST IS INCLUDED IN THE OFFICIAL CASE RECORD,*

*ALONG WITH THOSE OF THE FOLLOWING DOCUMENTS:*

| Date Filed | # | Docket Text        *** Excerpts Only *** |
|---|---|---|
| 12/22/2008 | | Letter (Objection) from Robert Hartnagel (SSch) (Entered: 12/31/2008) |
| 12/22/2008 | 134 | Letter (Objection) from Pennsylvania State Employees' Retirement System (SSch) (Entered: 12/31/2008) |
| 12/29/2008 | 132 | Letter (Objection) from Ralph Cioffi, Jonathan Lee Riches and Matthew Tannin (SSch) (Entered: 12/30/2008) |
| 01/05/2009 | 137 | STATEMENT in Response to Plaintiff Co-Counsel's "Memorandum of Law" Concerning RW Hartnagel's Objections (SSch) (Entered: 01/06/2009) |
| 01/05/2009 | 138 | SUPPLEMENTAL STATEMENT of in Response to Plaintiff Co-Counsel's "Memorandum of Law" Concerning RW Hartnagel's Objections (SSch) (Entered: 01/06/2009) |