Hearing Date and Time: October 21, 2010
Reply Deadline: October 14, 2010[1]

Milissa A. Murray
Admitted PHV
**Bingham McCutchen LLP**
2020 K Street, NW
Washington, DC 20007
Telephone: 202.373.6000
Facsimile: 202.373.600

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

# OBJECTION OF ENVIRONMENTAL CLAIMANT BKK JOINT DEFENSE GROUP TO THE DEBTOR'S PROPOSED DISCLOSURE STATEMENT

**The BKK Joint Defense Group ("BKK Group")**, a creditor of the Debtors and party in interest in these proceedings, submits this Objection to the Disclosure Statement with Respect to the Joint Chapter 11 Plan Proposed by Motors Liquidation Company, f/k/a General Motors Corp., and respectfully states as follows:

## BACKGROUND

---

[1] The deadline for response was extended to October 15, 2010 for BKK Group.

1. The Debtors filed Voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009.

2. On August 31, 2010, the Debtors filed a Disclosure Statement with respect to the Debtors' Joint Chapter 11 Plan (the "Disclosure Statement") and Joint Chapter 11 Plan (the "Plan").

3. The BKK Group's Proof of Claim asserts claims against Debtors for expenses, damages and response costs arising out of, or otherwise related to, directly or indirectly, liabilities in connection with a 583-acre landfill facility located at 2210 South Azusa Avenue, West Covina, California (the "Facility"). Liabilities related to the Facility are collectively referred to herein as the "BKK Liabilities."

4. The Facility consists of a hazardous waste landfill, a municipal waste landfill, and associated treatment and control facilities and includes any and all surrounding areas where hazardous substances have come to be located including any area above contaminated groundwater or soil vapor. The overseeing state agency, the California Department of Toxic Substances Control ("DTSC") has estimated total response costs at the BKK Landfill to be in excess of $700,000,000.

5. On December 3, 2004, the ("DTSC") issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order No. 1/SE-D 04/05-004 (the "ISE Order") with respect to the Facility to fifty-one (51) separate entities (collectively, "ISE Respondents"), including BKK Corporation, the current owner and operator of the facility ("BKK"); Washington Mutual Bank, the former owner and operator of the Facility, (as successor to Home Savings of America, FSB and an affiliate of WMI), the Debtor and certain other

members of the BKK Group. The ISE Order required the Respondents to perform certain response actions and to reimburse DTSC for certain response costs incurred at the Facility.

6. Prior to the Petition Date and without admitting liability, the BKK Group members, including Debtors, reached an agreement with DTSC in the case of *California Department of Toxic Substances Control, et al. v. American Honda Motor Co., et al., United States District Court, Central District of California*, Case No. CV05-7746 CAS (JWJx) (the "BKK Litigation"), which was memorialized in a consent decree, approved and entered by the District Court on March 9, 2006, as amended (the "Consent Decree"). The Consent Decree did not resolve all of the liabilities of the Settling Defendants for the Facility.

7. A disclosure statement must contain sufficiently "adequate information" to "enable a creditor to make 'an informed judgment' about the Joint Plan." 11 U.S.C. § 1125(a)(1); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321-323 (3d. Cir. 2003) ("[C]reditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization Joint Plan, [therefore] the importance of full and honest disclosure cannot be overstated.") Adequate information is defined as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....

11 U.S.C. § 1125(a)(1). Meaningful and accurate disclosure is at the heart of the Bankruptcy process. Effective disclosure requires the dissemination of "adequate information," *Knupfer v. Wolfberg* (*In re Wolfberg*), 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000).

3

8. Approval of a Disclosure Statement should be withheld "if it does not contain such information so that all creditors and equity shareholders can make an intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (N.D. N.Y. 1988). For the reasons outlined below, the Debtors' Disclosure Statement should not be approved at this time due to the Disclosure Statement's failure to provide the BKK Group with "adequate information" necessary to make an informed judgment about the Debtors' Plan.

*Inadequate Information*

9. The proposed Disclosure Statement does not contain information and/or detail necessary to allow the BKK Group to make an informed decision on the proposed Plan. It lacks an adequate liquidation analysis showing the expected return to credits and the accounting and valuation methods used to produce the financial information in the disclosure statement, and information relevant to the risks being taken by creditors and interest holders. *See "In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

10. Class 3 Claims are treated in the Debtors' Disclosure Statement and the Debtors' Plan by providing for the establishment of a GUC Trust. See Debtors' Disclosure Statement, Section III (G), at p. 59. Payments from the GUC Trust to Class 3 Claimants contemplates the payment of the Claimants' *pro rata* share of: (i) the new GM Securities, as defined therein, (the "New GM Stock"); and (ii) the GUC Trust Units, in accordance with the terms of the GUC Trust and the GUC Trust Agreement. Pursuant to the Disclosure Statement, the GUC Trust Agreement is to be executed on or before the Effective Date, in a form acceptable to the Debtors, the Creditors' Committee, the U.S. Treasury and the GUC Trust Administrator.

11. Regarding the payment via New GM Stock, the Disclosure statement provides insufficient information as to the valuation (actual or potential) of the contemplated stock transfers, the basis for and support for any such valuation, provisions in place or proposed to preserve that value, privileges of holders and the right of holders to transfer and other such

information necessary to determine whether the proposed arrangement is in any way either capable or adequate to actually provide for resolution of the environmental liabilities.

12. BKK is unable to determine any specific information regarding the GUC Trust, since that document is not yet finalized or filed. While Class 3 Claimants are to receive new GM Stock and "the GUC Trust Units in accordance with the GUC Trust and the GUC Trust Agreement," it is simply not possible to determine how BKK Group's rights and distributions may be affected when the GUC Trust documents are not available for review.

13. Moreover, it is impossible for the BKK Group to make any type of analysis or informed judgment about the Debtors' Plan when there is absolutely no disclosure of even an estimated aggregate amount of allowed claims in Class 3 or the estimated value of the New GM Stock and recovery for that class. The Disclosure Statement does not even provide a range of estimated percentages or values. Such estimates are crucial for BKK Group to make an informed decision about the Debtors' Plan.

14. In addition, without an estimation of claims and percentage of recovery, the BKK Group cannot determine if the Debtors' Plan meets the best interests of creditors test. *See* 11 U.S.C. § 1129(a)(7).

15. The Debtors' Disclosure Statement provides that Class 4 Environmental Claims relating to a select few sites will receive 100% of their allowed claims under the Environmental Response Trust based on a list attached to the Environmental Trust as Attachment "A". However, the Environmental Response Trust Agreement and Environmental Response Trustee Consent Decree and Settlement Agreement have not been finalized and filed, so it is impossible to determine what sites are included in that Trust; what amount of cash is expected to fund the trust either in the aggregate or based on assigned amounts for each individual site (as that amount is left blank in the Disclosure Statement). Without the ability to review the Environmental Trust documents, or be informed of the amounts relative to the trust and the settlement of the claims related to the Priority Sites, it is impossible to determine how the treatment of those claims may impact the BKK Group or other similarly situated claimants.

5

16.     Further, with respect to the Environmental Trust, the Debtors' Disclosure Statement does not explain how the Class 4 Claimants differ from the Class 3 Claimants and the justification for the separate classification of the environmental creditors seemingly having identical claims. Such a discussion is critical to any analysis of the apparent disparate treatment between the Class 4 Environmental Claims that are stated to receive 100% repayment, versus the Class 3 Claimants such as the BKK Group which is reported to receive some unknown non-cash pre-rata amount as settlement of its claim.  Equally important to the BKK Group is to understand why DTSC is to receive inferior treatment on account of Debtors' BKK Liabilities as compared to its governmental counterparts in Class 4 on account of substantially similar liabilities. Recovery by the DTSC could benefit the BKK Group if the funds are earmarked for use at the BKK Landfill.  The Disclosure Statement is silent on these points.  Again, because the terms of the environmental settlements and consent decrees referenced in the Disclosure are not disclosed, it is impossible for BKK Group to evaluate the different treatments among seemingly similar stake holders.

17.     Pursuant to Section III (H) (1) (b) of the Debtors' Disclosure Statement on page 82, the GUC Trust Administrator will be responsible for the prosecution of objections to General Unsecured Claims. It is unclear if the Debtors are attempting to have the ADR procedures imposed upon the BKK Group for the establishment of the amount of its claims. The BKK Group previously objected to the ADR Procedures Motion and was specially excluded from the ADR Procedures Order when it was entered. Therefore the prior Order should still preclude ADR Procedures from being utilized by the GUC Trust Administrator when seeking to establish or object to the BKK Claims.

18.     Finally, although significant environmental settlements and consent decrees are referred to repeatedly in the Disclosure Statement and Plan, none are attached and the material terms are not disclosed.  Such information is critical to BKK Group's ability to understand the effect, if any, of such a settlement upon its claim.  For example, if a governmental settlement is anticipated with EPA or DTSC relating to the BKK Site, critical to BKK Group would be the

6

amount of consideration to the governmental unit on account of the claim; whether the distribution will be in cash or stock; whether the distribution is characterized as a cash payment or merely an allowed claim; whether and to what extent the settlement will purport to grant the Debtors contribution protection that could potentially bar BKK Group's claim, and if so, whether the purported contribution protection purports to bar contribution claims for past response costs incurred by the BKK Group from the Petition Date or from the Effective Date of the Plan; and whether by the settlement and Plan releases Debtors or New GM are attempting to improperly avoid the Debtors' nondischargeable injunctive obligations at the BKK Site.

19. The BKK Group adopts as applicable each additional objection to the Disclosure Statement asserted by the DTSC in the Objection of the California Department of Toxic Substances Control to Debtors' Motion for Order Approving Disclosure Statement.

*Conclusion*

19. The Debtors' Disclosure Statement does not contain adequate information because it does not provide sufficient details to permit the BKK Group to determine whether it would be in its best interests to vote in favor of, or against, the Plan. Because the requirements of 11 U.S.C. §1125 have not been met, the Court should not approve the Debtors' Disclosure Statement and should require the Debtors to provide additional information that is necessary to address the inadequacies as outlined in this Objection, starting with the information referred to but not actually provided with this version of the Disclosure Statement.

20. Nothing contained herein shall be deemed to be a waiver by the BKK Group of any rights it may have under applicable law and it reserves the right to amend and supplement this Objection, and to object or otherwise respond to the approval, confirmation and implementation of the Debtors' Plan on any grounds available.

**WHEREFORE**, the BKK Group respectfully requests entry of an Order (i) denying

approval of the Debtors' Disclosure Statement; and (ii) for such other and further relief as this Court deems just and proper.

Dated:   October 15, 2010

                            Attorneys for Claimant
                            the BKK Joint Defense Group

                            By: / s / Milissa A. Murray.
                                Milissa A. Murray
                                Bingham McCutchen LLP
                                2020 K Street, NW
                                Washington, DC 20007
                                Telephone: 202.373.6500

CERTIFICATTE OF SERVICE

**I, MILISSA A. MURRAY, OF BINGHAM MCCUTCHEN LLP. HEREBY CERTIFY THAT ON THE 15TH DAY OF OCTOBER, 2010, THIS OFFICE ELECTRONICALLY FILED THE OBJECTION OF ENVIRONMENTAL CLAIMANT ILCO SITE REMEDIATION GROUP TO THE DEBTOR'S PROPOSED DISCLOSURE STATEMEN IN THE ABOVE-REFERENCED MATTER, WITH THE CLERK OF THE BANKRUPTCY COURT USING THE CM/ECF SYSTEM, WHICH SENT NOTIFICATION TO THE CM/ECF PARTICIPANTS.**

I further hereby certify that on said date, I caused service of the above-referenced

document, by first class mail, postage prepaid on the following parties:

Clerk of the United States Bankruptcy Court
One Bowling Green
New York, New York 10004-1408

Weil Gotshal & Manges, LLP
Attn: Harvey R. Miller, Esq.,
Stephen Karotkin, Esq. and
Joseph H. Smolinsky, Esq.
767 Fifth Avenue
New York, New York 10153

Motors Liquidation Company
Attn: Ted Stenger
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243

General Motors, LLC
Attn: Lawrence S. Buonomo, Esq.
400 Renaissance Center
Detroit, Michigan 48243

Cadwalader Wickersham & Tarf, LLP
Attn: John J. Rapisardi, Esq.
One World Financial Center
New York, New York 10281

U.S. Dept. of Treasury
Attn: Joseph Samarias, Esq.
1500 Pennsylvania Ave
NW Room 2312
Washington, DC 20220

Vedder Price, P.C.
Attn: Michael J. Edelman, Esq.
And Michael L. Schein, Esq.
1633 Broadway, 47th Floor
New York, New York 10019

Kramer Levin Naftalis & Frankel, LLP
Attn: Thomas Moers Mayer, Esq.,
Robert Schmidt, Esq.
Lauren Macksoud, Esq. & Jennifer Sharret, Esq.
1177 Avenue of the Americas
New York, New York 10036

Office of the U.S. Trustee

For the Southern District of NY
Attn: Tracy H. Davis, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

U.S. Attorney's Office S.D.N.Y.
Attn: David S. Jones, Esq. & Natalie Kuehler, Esq.
86 Chamber Street, Third Floor
New York, New York 10007

Caplin & Drysdale, Chartered
Attn: Elihu Inselbuch, Esq. & Rita C. Tobin, Esq.
375 Park Avenue, 35th Floor
New York, New York 10152-3500

Caplin & Drysdale, Chartered
Attn: Trevor W. Swett, III, Esq., Kevin C. Maclay, Esq.
One Thomas Circle, N.W. Suite 1100
Washington, DC 20005

Stutzman, Bromberg, Esserman & Plifka
Attn: Sander L. Esserman, Esq.
And Robert T. Brousseau, Esq.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

October 15, 2010

/s/ Milissa A. Murray