Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :      09-50026 (REG)
     f/k/a General Motors Corp., et al. :
                                    :
                        Debtors.    :      (Jointly Administered)
                                    :
----------------------------------------------------------x
```

### NOTICE OF PRESENTMENT OF ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328 AND FED. R. BANKR. P. 2014 AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS VOTING AND SOLICITATION AGENT FOR PUBLICLY-HELD SECURITIES NUNC PRO TUNC TO SEPTEMBER 1, 2010

PLEASE TAKE NOTICE that upon the annexed Application, dated October 18,

2010 (the "**Application**"), of Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**"), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), for an

order pursuant to sections 327(a) and 328 of title 11, United States Code (the "**Bankruptcy**

**Code**") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy**

**Rules**"), authorizing the retention and employment of Epiq Bankruptcy Solutions, LLC ("**Epiq**")

as voting and solicitation agent for publicly-held securities ("**Voting and Solicitation Agent**")

nunc pro tunc to September 1, 2010, all as more fully set forth in the Application, MLC will

present the attached proposed order to the Honorable Robert E. Gerber, United States

Bankruptcy Judge, for signature on **November 1, 2010 at 12:00 noon (Eastern Time)**.

            PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan 48243

(Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan

48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys

for the United States Department of the Treasury, One World Financial Center, New York, New

York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury,

1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias,

Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th

Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein,

Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of

unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas

Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.);

(viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman &

Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); and (xii)

Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, Third Floor, New York, New York 10017

(Attn. Ron Jacobs), so as to be received no later than **11:30 a.m.** on **November 1, 2010 (Eastern**

**Time)** (the "**Objection Deadline**").

Unless objections are received by the Objection Deadline, the order may be signed.

Dated: New York, New York
October 18, 2010

/s/ Joseph H. Smolinsky

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                                      :       **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY**, *et al.*,    :       **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*          :
:
          **Debtors.**          :       **(Jointly Administered)**
:
---------------------------------------------------------------x

**APPLICATION OF MOTORS LIQUIDATION COMPANY
FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND
328 AND FED. R. BANKR. P. 2014 AUTHORIZING THE RETENTION
AND EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC
AS VOTING AND SOLICITATION AGENT FOR PUBLICLY-
<u>HELD SECURITIES NUNC PRO TUNC TO SEPTEMBER 1, 2010</u>**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

**<u>Relief Requested</u>**

        1.     Pursuant to sections 327(a) and 328 of title 11, United States Code (the

"**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District

of New York (the "**Local Rules**"), MLC submits this application (the "**Application**") for entry

of an order authorizing the retention and employment of Epiq Bankruptcy Solutions, LLC

("**Epiq**") as its voting and solicitation agent for publicly-held securities (the "**Voting and

Solicitation Agent**"), pursuant to the terms and conditions of an engagement agreement, dated

September 2, 2010 (the "**Epiq Agreement**"), a copy of which in annexed hereto as **Exhibit A**.

In support of the Application, the Debtors submit the Declaration of Jane Sullivan (the "**Sullivan

Declaration**"), a copy of which is annexed hereto as **Exhibit B**.

### Jurisdiction

2.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

3.       On June 1, 2009, MLC commenced with this Court voluntary cases under

chapter 11 of the Bankruptcy Code.  On August 31, 2010, the Debtors filed their Joint Chapter

11 Plan (as it may be further amended, modified, and supplemented, the "**Plan**") [Docket No.

6829], and their related Proposed Disclosure Statement for Debtors' Joint Chapter 11 Plan (as it

may be amended, modified, and supplemented, the "**Disclosure Statement**") [Docket No. 6830].

In accordance with Rule 3017(a) of the Bankruptcy Rules, the Debtors have obtained from the

Court a date and time for a hearing to consider, inter alia, approval of the Disclosure Statement,

which will be held at 9:45 a.m. (Eastern Time) on October 21, 2010 (the "**Disclosure Statement

Hearing**").  The Plan provides for, inter alia, the liquidation of certain of the Debtors' remaining

assets and the establishment of certain trusts to address certain environmental remediation

obligations and to make distributions to creditors holding allowed claims.

## Relief Requested

4.      The Debtors respectfully request the entry of an order under sections

327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014 and 3017 authorizing the

Debtors to employ and retain Epiq, nunc pro tunc, as their voting and solicitation agent for

publicly-held securities pursuant to the terms and conditions of the Epiq Agreement.

## Authorization to Retain Epiq Bankruptcy Solutions, LLC as Voting and Solicitation Agent

5.      The solicitation of votes on the Debtors' Plan will be a complicated

process due both to the volume of claims asserted in these chapter 11 cases and the amount of

publicly-traded debt and equity securities issued prior to the Commencement Date.  The debt

instruments include not only dollar denominated instruments issued under debentures where

there is a trustee to assist in solicitation matters, but also euro denominated instruments where

there is only a fiscal paying agent to interact with.  Various issues of industrial reserve bonds

also create solicitation challenges.  To ensure the solicitation of appropriate parties and the

accurate tabulation of ballots, the Debtors have determined in the exercise of their business

judgment that it is necessary and appropriate to retain the services of experts to assist in the

solicitation of holders of publicly-held securities.

6.      To this end, the Debtors seek approval of the retention and employment of

Epiq's Financial Balloting Group to assist with, among other things, the solicitation and

tabulation of votes of certain debt holders in connection with the Plan confirmation process.

Because of Epiq's vast experience in facilitating the solicitation process of holders of public

securities, Epiq will be retained for the limited purpose of assisting the Debtors with Plan-related

solicitation services including, among other things, the noticing, consultation, solicitation and

tabulation of votes <u>solely</u> for holders of the Debtors' public securities, all pursuant to the terms and conditions set forth in the Epiq Agreement.

7.      The Debtors' proposed retention of Epiq as Voting and Solicitation Agent shall not affect the Debtors' prior retention of Garden City Group ("**GCG**").  *See* Order Authorizing the Retention of Garden City Group as Notice and Claims Agent for the Debtors [Docket No. 2549].  The Debtors have coordinated with Epiq and GCG and the two will work together rather than duplicating efforts.

8.      Under a prior order of this Court, dated August 3, 2009, the Court authorized the retention of Epiq as the information agent to the Creditors' Committee [Docket No. 3625], but the Creditors' Committee is comfortable with these dual roles.  In fact, the Creditors' Committee as well as the United States Trustee have indicated that they have no objection to this Application.

9.      In chapter 11 cases, the solicitation of votes from holders of public securities and the distribution of solicitation materials to such holders present complexities which do not exist with respect to other types of creditors.  These complexities stem from the fact that public securities often are held in a "Street" name by a custodian (such as a bank, broker, or other nominee) rather than in the name of the beneficial owner.  In most instances, the identities of beneficial owners of public securities entitled to receive notices and solicitation materials are not easily known or determinable.

10.      The successful dissemination of solicitation materials to beneficial owners of public securities requires close coordination with numerous parties (including banks, brokerages or other nominees) to ensure that these entities properly forward solicitation materials to their customers.  The collection of votes from beneficial holders of public securities similarly

requires close coordination and cooperation with the record holders of these securities.  The

Debtors submit that retaining a special balloting and noticing agent with specialized knowledge

regarding the solicitation of pubic security holders is necessary to ensure that the Debtors satisfy

applicable requirements under the Bankruptcy Code and Bankruptcy Rules in a cost-effective

and efficient manner.

11.    The Debtors submit that Epiq is well-qualified to act as the Debtors'

publicly-held securities plan balloting, solicitation, and information agent.  Epiq specializes in

transactions involving public securities.  Epiq is highly familiar with the necessary processes

involved and uniquely qualified to perform the services needed in these cases.

### Services to be Rendered

12.    Pursuant to the Epiq Agreement, Epiq has agreed, among other things, to:

(a) Advise the Debtors and their counsel regarding all aspects of the Plan
solicitation to holders of publicly-held securities, including timing
issues, solicitation issues and documents related to the same, and
voting and tabulation procedures;

(b) Review the voting portions of the Disclosure Statement, ballots, and
other documents, particularly as they may relate to holders of publicly
held securities;

(c) Work with the Debtors to request appropriate information from The
Depository Trust Company ("DTC") and the trustee(s) under the
public debt issues to obtain appropriate information necessary to
solicit the votes of holders of publicly-held securities;

(d) Coordinate the distribution of voting documents to holders in **"street"**
name of any voting securities by forwarding the appropriate
documents and instructions to the banks and brokerage firms holding the
securities (or their agent), who in turn will forward it to the beneficial
owners for voting and follow up with banks and brokers to help ensure
compliance with Epiq's instructions;

(e) Distribute copies of the master ballots and instructions  to the
appropriate nominees so that firms may cast votes on behalf of beneficial

owners of publicly-held securities and follow up with nominees to ensure compliance with Epiq's instructions;

(f) Prepare a certificate of service for filing with this Court;

(g) Handle requests for documents from parties-in-interest, including brokerage firms, banks, and institutional holders;

(h) Work with the Debtors and their counsel to establish a protocol for, and respond to, telephone inquiries from holders and nominees regarding the disclosure statement and the voting procedures;

(i) If requested to do so, make telephone calls to non-objecting holders and nominees to confirm receipt of the plan documents and respond to questions about voting procedures;

(j) Receive and examine all ballots and master ballots cast by holders of bonds and date-stamp the originals of all such ballots upon receipt;

(k) Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with this Court;

(l) Complete any notice mailings to holders of securities that may be required apart from solicitation; and

(m) Consult as needed with respect to plan distributions to holders of public securities.

## **Fees and Expenses**

13.     The Debtors request authority to compensate and reimburse Epiq in

accordance with the Epiq Agreement, as summarized below, for all services rendered and

expenses incurred in connection with these chapter 11 cases.

(a) For acting as solicitation and information agent for holders in **"street"** name: a project fee of $15,000, plus $3,000 for each debt issue of public securities entitled to vote on the Plan (currently estimated at 34 issues); $1,500 for each debt issue not entitled to vote on the Plan but entitled to receive notice (currently estimated at 0 issues); and $7,500 for old common stock if not entitled to vote but entitled to receive notice;

(b) For assembly and mailing of solicitation packages (per mailing) to

registered record holders of stock and any other voting party: $1.75 -$2.25 per package ($750 minimum);

(c) For notice mailings to holders of debt and equity securities in **"street"** name: $7,500 plus $500 per cusip to be noticed;

(d) For notice mailings to any registered record holders of securities (or other individual parties): $0.50-$0.65 per envelope (for up to two paper notices that fold into an envelope) ($250 minimum);

(e) To tabulate ballots: $1,000 set up fee for each tabulation element plus a charge of $125 per hour for labor;

(f) For consulting services for matters including the review and development of materials, including the disclosure statement, plan, ballots, and master ballots; participation in telephone conferences, strategy meetings, and the development of strategy relative to the project; efforts related to special balloting procedures, including issues that may arise during the balloting or tabulation process; computer programming or other project-related data processing services; visits to cities outside New York for client meetings or legal or other matters; efforts related to the preparation of testimony and attendance at court hearings; and the preparation of affidavits, certifications, fee applications, invoices, and reports: standard hourly consulting fee rates; and

(g) Additional out-of-pocket expenses for printing, messengers, telephone usage, copies ($0.10 per copy), and postage.

14.    Epiq's current hourly consulting fee rates, which are subject to adjustment based on Epiq's ordinary billing practices, are as follows:

| | |
|---|---|
| Executive Director | $410 per hour |
| Vice President | $360 per hour |
| Senior Case Manager/ Senior Consultant | $300 per hour |
| Case Manager | $185 – 240 per hour |
| IT Programming Consultant | $140 – 195 per hour |
| Case Analyst | $190 per hour |
| Clerical | $40 – 65 per hour |

15.    Epiq will receive a retainer of $50,000 in connection with its engagement. The Debtors believe that such compensation rates are reasonable and appropriate for services of this nature and comparable to those charged by other providers of similar services.  In an effort

to reduce administrative expenses relating to Epiq's retention, the Debtors seek authorization to pay Eqiq's fees and expenses, as set forth in the Epiq Agreement, without necessity of Epiq's filing formal fee applications.

## **Indemnification**

16.     Pursuant to the terms of the Epiq Agreement, the Debtors have agreed to indemnify and hold Epiq harmless against any loss, damage, expense, liability or claim arising out of Epiq's fulfillment of the Epiq Agreement, provided, however, that should such loss, damage, expense, liability, or claim arise as a result of Epiq's gross negligence or willful misconduct, the Debtors will not indemnify Epiq for any such loss, damage, expense, liability or claim.

## **Disinterestedness**

17.     To the best of the Debtors' knowledge, information, and belief, except as may be set forth in the Sullivan Declaration, Epiq has and represents no interests adverse to the Debtors, their estates or any class of creditors or interest holders, or their respective attorneys or accountants, in the matters for which Epiq is proposed to be retained.  The Debtors believe that the retention of Epiq as Voting and Solicitation Agent will be in the best interests of the Debtors and their estates, creditors, and equity interest holders.

18.     As set forth in the Sullivan Declaration, Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.  In light of the above, the Debtors submit that the retention of Epiq is necessary and in the best interests of the Debtors, their estates and creditors.

## __Notice__

19.     Notice of this Application has been provided to all parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24, 2010 [Docket No. 6750].  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

20.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
      October 18, 2010

          /s/ Joseph H. Smolinsky_____
          Harvey R. Miller
          Stephen Karotkin
          Joseph H. Smolinsky

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

**EXHIBIT A**



# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("Epiq") and Motors Liquidation Company and related entities (collectively, the "Client"), as of September 2, 2010.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on Exhibit A hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of the Client. Charges for the Services will be based on the pricing schedule set forth on Exhibit B hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by the Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to the Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3. Charges.**

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill the Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective

1



January 2nd of each year.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client of such proposed increases.

3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    Client shall pay Epiq a retainer in the amount of $50,000 (the "Retainer").  The Retainer shall be applied in satisfaction of fees, costs and expenses incurred pursuant to this Agreement.  To the extent the Client seeks relief under the Bankruptcy Code, any unapplied portion of the Retainer as of the petition date shall be applied immediately against post-petition date invoices until exhausted.

## 4.    Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



**5.  Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.  Disposition of Data.**

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, Client warrants that it has full authority to deliver the Client Data to Epiq.  Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.



### 7. Indemnification.

The Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

NOTHWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED, EPIQ SHALL HAVE NO OBLIGATION OR LIABILITY TO THE CLIENT (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THE TOTAL LIABILITY OF EPIQ TO THE CLIENT FOR ALL CLAIMS, LOSSES, COSTS, FINES, SETTLEMENTS, PENALTIES OR DAMAGES, INCLUDING COURT COSTS AND REASONABLE ATTORNEY'S FEES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES (COLLECTIVELY, "CLAIMS") SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE CLAIMS.  TO THE EXTENT CERTAIN JURISDICTIONS GOVERNING THIS AGREEMENT LIMIT THE EXCLUSION OF DAMAGES OR LIMITATION OF LIABILITY HEREUNDER OR OTHERWISE RENDER ANY PART OF THE EXCLUSIONS OF DAMAGES OR LIMITATIONS OF LIABILITY UNENFORCABLE, THE ABOVE EXCLUSIONS AND LIMITATIONS SHALL BE MODIFIED TO THE MAXIMUM EXTENT PERMITTED BY LAW, EVEN IF ANY REMEDY FAILS ITS ESSENTIAL PURPOSE.



**8.  Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**9.  Confidential On-Line Workspace**

Upon request of the Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Client pursuant to this Agreement; and (b) with the consent of the Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**10.  General**

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

10.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.6  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.



10.7  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.8  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.9  This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.10  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

10.11  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>
>> Epiq Bankruptcy Solutions, LLC
>> 757 Third Avenue, Third Floor
>> New York, New York 10017
>> Attn:  Ron Jacobs
>
> If to Client:
>
>> Motors Liquidation Company
>> 500 Renaissance Center, Suite 1400
>> Detroit, MI  48243
>> Attn:
>
> With a copy to:
>
>> Weil, Gotshal & Manges LLP
>> 767 Fifth Avenue
>> New York, NY 10153
>> Attn:  Stephen Karotkin, Esq.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

_____
Name:  Daniel C. McElhinney
Title:   Executive Director

**MOTORS LIQUIDATION COMPANY**

By: _____
Name:  Carrianne Basler
Title:   Vice President

7



**EXHIBIT A**

**SERVICES SCHEDULE**

- Provide advice to the company and its counsel regarding all aspects of the plan vote, including timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review the voting portions of the disclosure statement and ballots, particularly as they may relate to beneficial owners of securities held in Street name, with special attention to the non-U.S. issues.

- Work with the company to request appropriate information with respect to the U.S. bonds from The Depository Trust Company and the indenture trustee(s).

- Work with the non-U.S. depositories (Euroclear, Clearstream, and SIS), in connection with the non-U.S. issues.

- Mail voting documents to any registered record holders of bonds.

- Coordinate the distribution of voting documents to Street name holders of U.S. bonds by forwarding the appropriate documents to the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to beneficial owners for voting.

- Distribute voting documents to the non-U.S. depositories in accordance with the approved procedures.

- Distribute copies of the master ballots to the appropriate nominees after the initial mailing, so that firms may cast votes on behalf of beneficial owners.

- Prepare a certificate of service for filing with the court.

- Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from security holders and nominees regarding the disclosure statement and the voting procedures. Epiq will restrict its answers to the information contained in the plan documents. We will seek assistance from the company or its counsel on any questions that fall outside of the voting documents.

8

- If requested to do so, Epiq will make telephone calls to non-objecting beneficial owners and/or registered holders of bonds to confirm receipt of plan documents and respond to questions about the voting procedures.

- Receive and examine all ballots and master ballots cast by holders of bonds.  Epiq will date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court.

- Complete any notice mailings to holders of securities that may be required apart from the solicitation.

- Consult as needed with respect to plan distributions to holders of public securities.

- Undertake such other duties as may be agreed upon by Epiq and Client.

9



## EXHIBIT B

## PRICING SCHEDULE

Epiq will charge for its services on the following basis:

- Epiq's standard fees include a project fee of $15,000, plus $3,000 for each debt issue (i.e., each cusip number or ISIN number) of public securities entitled to vote on the Plan; $1,500 for each debt issue not entitled to vote on the Plan but entitled to receive notice; $18,000 for the old common stock if it is entitled to vote; and/or $7,500 for the old common stock if it is not entitled to vote but entitled to receive notice. This covers the distribution of voting and related materials to brokerage firms and banks, or their agent, and assumes one distribution of materials, which will be directed to the firms' proxy departments (for voting only, and no election or subscription), a single plan, and no extensions of the voting deadline. (Depending upon the number of securities ultimately entitled to vote or receive notice, Epiq may review its per cusip fees or apply a cap for this segment of fees.)

- For the mailing of solicitation documents to any registered record holders of bonds and lenders, we would estimate labor charges at $1.75 - $2.25 per voting or exchange package, depending on the complexity of the mailing, with a $750 minimum for each file. The charge indicated assumes the package would include the disclosure statement, a ballot/exchange form, a return envelope, and one other document. It also assumes that a window envelope will be used for the mailing, and will therefore not require a matched mailing. (It is very possible that there are no registered holders of notes, and that this charge will not apply.)

- A charge of $125 per hour for the tabulation of ballots and master ballots, plus set up charges of $1,000 for each tabulation element (e.g., each security or plan class). Standard hourly rates (as enumerated below) will apply for any time spent by senior executives reviewing and certifying the tabulation and dealing with special issues that may develop. A surcharge of $2,500 will apply for a voting or exchange deadline of later than 8:00 P.M., Eastern time.

- Notice mailings to any registered record holders of securities (or other individual parties) would be charged at $0.50 - $0.65 per holder, for up to two paper notices included in the same envelope, with a $250 minimum. This assumes that labels and/or electronic data for these holders would be provided by the transfer agent, trustee, or other party maintaining the records.

10



- Notice mailings to holders of debt and equity securities in Street name would be $7,500 plus $500 per cusip to be noticed. (Depending upon the number of securities entitled to receive notice, Epiq may review its per cusip fees or apply a cap for this segment of fees.)

- Epiq reserves the right request advance payment for any significant expenses (including, but not limited to, postage advances.

- Epiq will bill for consulting hours at our then applicable standard hourly rates. Listed below are our current standard hourly rates. Consulting services by Epiq would include the review and development of materials, including the disclosure statement, plan, ballots, master ballots; participation in telephone conferences, strategy meetings or the development of strategy relative to the project; efforts related to special balloting procedures, including issues that may arise during the balloting or tabulation process; calls to or from creditors and nominees; computer programming or other project-related data processing services; visits to cities outside of New York for client meetings or legal or other matters; efforts related to the preparation of testimony and attendance at court hearings; and the preparation of affidavits, certifications, fee applications (if required by the court), invoices, and reports.

| | |
|---|---|
| Executive Vice President | $410 per hour |
| Vice President | $360 per hour |
| Senior Case Manager/Senior Consultant | $300 per hour |
| Case Manager | $185 - $240 per hour |
| IT Programming Consultant | $140 - $195 per hour |
| Case Analyst | $190 per hour |
| Clerical | $40 - $65 per hour |

### Call Center Services

| | |
|---|---|
| Standard Call Center Setup | $2,500 |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.19 per minute |
| Support/Maintenance | $200 per month |

### Virtual Data Room Services

| | |
|---|---|
| Confidential On-line Workspace | $1.30 per page per 9 months |

11



**Printing**

| | |
|---|---|
| Printing | $0.10 per image (plus envelope face) |
| CD-Roms | Maximum of $5.00 per CD-Rom, depending upon volume (quote may be provided) |

**All Other Noticing Services**

| | |
|---|---|
| Printing | $0.10 per image (plus envelope face) |
| Collate, fold and insert | $0.10 per piece |
| Postage/Overnight Delivery | At Cost |
| E-Mail Noticing | $0.02 per page |
| Fax Noticing | $0.20 per page |
| Publication Noticing | TBD |

Note:  Fees and costs associated with publication of a legal notice will vary depending on the size, timing and breadth of publication, as well as the periodicals selected for publication.  Epiq will obtain quotes for publication upon request of the Client.

**<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
 :
In re                                        :                    **Chapter 11 Case No.**
 :
**MOTORS LIQUIDATION COMPANY,** *et al.,*    :                    **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.*  :
 :
                            **Debtors.**      :                   **(Jointly Administered)**
 :
------------------------------------------------------------------x

### DECLARATION OF JANE SULLIVAN IN SUPPORT OF DEBTORS' RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS VOTING AND SOLICITATION AGENT FOR PUBLICLY-HELD SECURITIES NUNC PRO TUNC TO SEPTEMBER 1, 2010

I, Jane Sullivan, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am an Executive Vice President of Epiq Bankruptcy Solutions, LLC[1] ("**Epiq**") which maintains offices at 757 Third Avenue, 3rd Floor, New York, New York 10017.

2.      I submit this declaration (the "**Declaration**") on behalf of Epiq in support of the Debtors' employment and retention of Epiq Bankruptcy Solutions, LLC as official voting and solicitation agent (the "**Voting and Solicitation Agent**").

3.      By prior order dated August 3, 2009, the Court authorized the retention of Epiq as the information agent to the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").  The order does not expressly preclude the Debtors from filing an application for the retention of Epiq's Financial Balloting Group subject to the establishment of appropriate ethical walls.  *See Order Authorizing Employment and Retention of Epiq Bankruptcy Solutions,*

---

[1] As of January 1, 2010, Financial Balloting Group LLC (previously a subsidiary of Epiq Systems, Inc.) combined with Epiq Bankruptcy Solutions, LLC and is currently doing business as Epiq Bankruptcy Solutions, LLC.

*LLC as Information Agent for the Official Committee of Unsecured Creditors* [Docket No. 3625]. In this case, the Creditors' Committee does not object to Epiq handling these roles.

4.       Epiq is a firm with significantly experienced employees in all areas of bankruptcy voting and related assignments, and with a specialization in soliciting, tabulating, and noticing holders of public debt and equity securities.

5.       Epiq has had significant experience providing services to debtors and debtors-in-possession in matters relating to communicating with public security holders and creditors with respect to voting and solicitation issues. I have provided such services in over 150 cases, including *CIT Group, Charter Communications, Aleris International, Finlay Enterprises, Smurfit-Stone Container, American Capital, Simmons, Calpine, Delphi, Hawaiian Telecom, Mirant, Silicon Graphics, Vertis, Footstar, WorldCom, Enron, Pacific Gas and Electric, Global Crossing, Fruit of the Loom, Regal Cinemas, Chiquita Brands, Armstrong World Industries, Kmart, America West Airlines, Barney's, Eagle-Picher Industries, Federated Department Stores, First Republic Bank, I.C.H. Corporation, MCorp* and *Resorts International.* Accordingly, I believe Epiq is well qualified to act as the voting and tabulation agent for these chapter 11 cases.

6.       As set forth in the Epiq Agreement annexed to the Application as **Exhibit A**, Epiq agreed to perform as the Voting and Solicitation Agent in connection with the Plan confirmation process. Within the context of the Epiq Agreement, Epiq proposes to render the following services to the Debtors as the Voting and Solicitation Agent:

- Provide advice to the Debtors and their counsel regarding all aspects of the Plan vote, including timing issues, voting and tabulation procedures, and/or treatment election, and related documents;

- Review the relevant portions of the disclosure statement, ballots, election forms and other documents particularly as they may relate to beneficial owners of securities held in Street name;

- Work with the company to request appropriate information with respect to the debt and equity securities from The Depository Trust Company ("**DTC**"), the transfer agent of the equity, the indenture trustee(s) for the relevant debt securities, and/or other agent;

- Mail voting documents to any registered record holders of equity, and, if requested, bank debt or other parties entitled to vote;

- Coordinate the distribution of any election documents to Street name holders of debt securities by forwarding the appropriate documents to the reorganization departments of the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to the beneficial owners for action.

- Distribute copies of the master ballots to the appropriate nominees after the initial mailing, so that firms may cast votes on behalf of beneficial owners of equity.

- Prepare certificates of service for filing with the Court;

- Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders;

- Respond to telephone inquiries from security holders, nominees, and voting parties regarding the disclosure statement and the voting and election procedures. Epiq will restrict its answers to the information contained in the Plan documents. We will seek assistance from the company or its counsel on any questions that fall outside of the voting and election documents;

- If requested to do so, Epiq will make telephone calls to voting parties to confirm receipt of Plan documents and respond to questions about the voting procedures;

- Receive and examine all ballots and master ballots cast by holders of equity. Epiq will date-stamp the originals of all such ballots and master ballots upon receipt;

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court; and

- Undertake such other duties as may be agreed upon by the Debtors and Epiq.

7.      Subject to this Court's approval, Epiq and the Debtors have agreed to the terms for compensation and reimbursement of Epiq as set forth in the Epiq Agreement.  Such terms are consistent with Epiq's usual and customary billing rates and practices.  These rates are at least as favorable as those Epiq charges to other chapter 11 debtors for similar services.  The Debtors and Epiq have proposed the Debtors pay Epiq in the ordinary course of their business without further application to this Court.

8.      Epiq is not a prepetition creditor of the Debtors.

9.      In connection with Epiq's services as Voting and Solicitation Agent,  Epiq has requested a retainer of $50,000.  Epiq will use the retainer to fund out of pocket and other charges on a rolling basis.  Epiq will apply the retainer to the final bill and refund any difference at the end of the engagement.

10.     Other than as set forth in the Epiq Agreement, no other arrangement is proposed for compensation to be paid in connection with Epiq's retention as Voting and Solicitation Agent.

11.     Epiq has no agreement to share compensation received with any person or entity, except as permitted under Bankruptcy Code section 504(b)(1).

12.     To the best of my knowledge, and except as set forth in this Declaration, (a) neither Epiq nor any employee thereof holds or represents an interest adverse to the Debtors, their affiliates, their creditors or any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed thereby, and (b) Epiq is a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

13.     To the best of my knowledge, information and belief, and except as otherwise provided in this declaration, Epiq does not have any relationship with the Debtors, their

creditors, or any other party in interest, and does not represent or hold any interest adverse to the

Debtors' estates that would impair Epiq's ability to serve as Voting and Solicitation Agent.  Epiq

has relationships with certain of the Debtors' creditors, but they are in matters completely

unrelated to these cases, either as vendors or in cases where Epiq serves in a neutral capacity as a

bankruptcy claims and noticing agent or class action settlement claims administrator.

14.    Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Epiq

professionals working on this matter have no connection to the U.S. Trustee or to any known

employee in the office thereof.  Employees of Epiq may have had business associations with

certain creditors or other parties in interest in the Debtors' cases, but such associations were (or

are) in no way connected with Epiq's rendering of services for the Debtors.[2]

15.    Epiq does not currently maintain any relationships or interests, and does not

intend to develop additional relationships or interests during its retention as Voting and

Solicitation Agent in these chapter 11 cases, in matters that would be adverse to the Debtors'

estates.

16.    Pursuant to the Court's order authorizing the employment and retention of Epiq as

Information Agent for the Creditors' Committee, Epiq has established and will maintain

appropriate ethical walls to ensure that the Epiq professionals involved in Epiq's role as

information agent to the Creditors' Committee are screened completely from the Epiq

professionals responsible for Epiq's proposed role as Voting and Solicitation Agent.  None of the

professional involved in Epiq's role as information agent to the Creditors' Committee will be

involved with Epiq's proposed retention as Voting and Solicitation Agent, as described in detail

in paragraph 6 above.

---

[2] For example, employees of Epiq may now have, or may have had in the past, banking, investment, trust
or other customer relationships with certain creditors or other parties in interest.

17.     I understand that the Creditors' Committee has been notified of Epiq's proposed

retention as the Debtors' Voting and Solicitation Agent and has not indicated any objection to

the retention.

I declare under penalty of perjury that the foregoing is true and correct.  Executed

at New York, New York this 18th day of October, 2010.

/s/ Jane Sullivan
Jane Sullivan

PRESENTMENT DATE AND TIME: November 1, 2010 at 12:00 noon (Eastern Time)
OBJECTION DEADLINE:  November 1, 2010 at 11:30 a.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :          **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.* :
                                          :
                    **Debtors.**          :          **(Jointly Administered)**
                                          :
---------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328 AND**
**FED. R. BANKR. P. 2014 AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC**
**AS VOTING AND SOLICITATION AGENT FOR PUBLICLY-**
**HELD SECURITIES NUNC PRO TUNC TO SEPTEMBER 1, 2010**

Upon the Application, dated October 18, 2010 (the "**Application**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 327(a) and 328 of title

11, United States Code ("**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy

Procedure ("**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "**Local Rules**") for entry of an order authorizing the

retention and employment of Epiq Bankruptcy Solutions, LLC ("**Epiq**") as voting and

solicitation agent for publicly-held securities ("**Voting and Solicitation Agent**"), in accordance

with the terms and conditions set forth in the engagement agreement, dated September 1, 2010,

(the "**Epiq Agreement**"), all as more fully described in the Application; and due and proper

notice of the Application having been provided, and it appearing that no other or further notice

need be provided; and the Court having found and determined that the relief sought in the

---
[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that, pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Debtors are authorized to retain, compensate and reimburse Epiq as Voting and Solicitation Agent in accordance with the terms and conditions set forth in the Epiq Agreement; and it is further

ORDERED that all requests of Epiq for payment of indemnity pursuant to the Epiq Agreement shall be made by means of an application and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Epiq Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in no event shall Epiq be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that to the extent this Order is inconsistent with the Epiq Agreement, this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____ __, 2010

_____
United States Bankruptcy Judge