**Hearing Date and Time: October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :   Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,                 :   (Jointly Administered)
                                                           :
                       Debtors.                          :   Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED**
**OBJECTION TO THE FIRST INTERIM FEE APPLICATION OF**
**<u>BATES WHITE, LLC</u>**

**TO:    THE HONORABLE ROBERT E. GERBER**
         **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Application of Bates White, LLC as Asbestos Liability Consultant to the Official Committee of Unsecured Creditors, for Allowance of Compensation for Professional Services Rendered and For Reimbursement of Actual and Necessary Expenses Incurred for the Period From March 16, 2010 Through May 31, 2010* [Docket No. 6537] (the "**Fee Application**").  The Court appointed the

Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $4,905.88 in fees and expenses, from a total of $199,396.00 requested in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

The applicant and the Fee Examiner have reached agreement and resolved all concerns about the Fee Application. As adjusted, the amount sought can be approved by the Court.

In general, the Fee Application appears substantively sound. It requests a total of $199,396.00. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary concerns with Bates White, LLC ("**Bates White**") by letter dated October 5, 2010. By telephone conference and e-mail correspondence on October 12 and 13, 2010, Bates White provided additional information and the parties have reached a consensual resolution.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a total suggested disallowance of $4,905.88 in fees and expenses from a total request of $199,396.00 in compensation and expenses.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors

2

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.	On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or soon after—year-end.

3.	On April 12, 2010, counsel for the Creditors Committee filed the *Application of the Official Committee of Unsecured Creditors of Motors Liquidation Company for Entry of an Order Authorizing the Employment and Retention of Bates White, LLC as the Committee's Consultant on the Valuation of Asbestos Liabilities Nunc Pro Tunc to March 16, 2010* (the "**Retention Application**") [Docket No. 5480]. On April 30, 2010, the Court approved the retention [Docket No. 5683].

4.	According to the Debtors' Monthly Operating Reports, Bates White has not received any payments from the Debtors for services and reimbursement of expenses incurred between March 16, 2010 and May 31, 2010.

5.	The Fee Examiner has evaluated the Fee Application, the Retention Application, the retention order, and the *Declaration of Dr. Charles E. Bates in Support of the Application of the Official Committee of Unsecured Creditors of Motors Liquidation Company for Entry of an Order Authorizing the Employment and Retention of Bates White, LLC as the Committee's Consultant on the Valuation of Asbestos Liabilities Nunc Pro Tunc to March 16, 2010* [Docket No. 5480, Ex. B] (the "**Bates Declaration**").

6.	By correspondence dated October 5, 2010, counsel to the Fee Examiner requested supplemental information from Bates White as part of the review of specific matters in the Fee Application. The supplemental information involved:

3

      A.      Project Code Descriptions;

      B.      Scope of Work Performed;

      C.      Billing Rates and Task Allocation;

      D.      Vague Task Descriptions;

      E.      Billing Increments;

      F.      Retention, Fee Application, and Billing Activities; and

      G.      Non-working Travel Time.

On October 12 and 13, 2010, Bates White provided information in response to these inquiries and the parties have resolved all outstanding concerns.

## APPLICABLE STANDARDS

7.      The Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner provided Bates White with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

8.      **Project Code Descriptions**. The services performed by Bates White during the Fee Application period are segregated into seven project codes, many of which have very similar

4

descriptions. The Retention Application describes Bates White's role, generally, as providing consulting services to analyze and estimate mass tort claims.

9. Given the scope of Bates White's retention, many of the task categories overlap, leading the Fee Examiner to largely disregard the task categories because of timekeepers' inconsistent segregation of time among them. For example, Bates White did not segregate retention, fee application, and billing activities from its substantive work. It also failed to provide a summary identifying the number of hours worked and fees requested for each individual providing services by project category. *Compare* UST Guidelines at (b)(4)(iii)(B) and (C) *with* Fee Application, Exhibit D-1.

10. In response to the Fee Examiner's inquiry, Bates White provided a summary chart identifying the number of hours worked by employee and category, further stating that this summary and a description of project categories would be provided in subsequent fee applications.

*Retained professionals should ensure that their time segregation and project categories do not impede the mandatory fee review process. In particular, billing related activities should be segregated into a project category of their own. This is Bates White's first fee application in this case; no disallowance is suggested.*

11. **<u>Scope of Work Involved</u>**. The Retention Application states that the Creditors' Committee selected Bates White "based upon its considerable experience with, and knowledge of, asbestos claims and valuation." That application discloses Bates White's extensive experience in bankruptcy asbestos matters, listing 20 significant bankruptcies in which Bates White has served as a consultant or expert. With that expertise in mind, the Fee Examiner questioned the need for such activities as "gathering information on asbestos litigation environment," "gathering information on assets in asbestos [11 U.S.C. §] 524(g) trusts," "reviewing state tort laws with respect to various court rulings," "gathering background

5

information about asbestos claims valuation in bankruptcy cases," and "gathering information on bankrupt asbestos defendants."

12. These tasks, and others like them, appear in the "Analysis" and "Research" task categories, which together total nearly $60,000, or 30 percent of Bates White's Fee Application request. Research on basic principles and issues within a retained professional's expertise—as stated in the professional's retention application—are not compensable because they provide at least a partial basis for the Court's approval of the professional's retention and hourly rate. *See In re Fibermark*, 349 B.R. 385, 397 (Bankr. Vt. 2006).

13. In response to the Fee Examiner's inquiry, Bates White explained that the research tasks performed by its professionals updated the firm's existing knowledge. It explained that the asbestos litigation environment is not static—state tort laws change, for example. In light of Bates White's representation about the necessity of the research, no disallowance is suggested, although the concern remains.

*Suggested disallowance for scope of work: none.*

14. **Billing Rates and Task Allocation**. The Fee Application inaccurately states the firm's blended rate at $395.34. The Fee Examiner and Bates White calculate the correct overall blended rate as $386.50 per hour, which corresponds to a "Manager" billing rate. The Retention Application disclosed billing rates for nine levels of employees, ranging from Research Assistants at $160 per hour to Senior Partners at $850 per hour.

15. Bates White did not utilize any timekeepers in the three least expensive categories (Research Assistant, Project Assistant, and Project Coordinator), relying instead exclusively on professionals with higher hourly rates. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel. In

response, Bates White explained that the tasks performed during the fee period could not be performed by lower billing professionals because, it said, the research activities required skilled consultants with knowledge of the state of the art and litigation environment. It also noted that beginning in the next fee period, its fee applications will include services—such as document review—performed by lower billing professionals.

*Suggested disallowance for billing rates: none.*

16. **Vague Task Descriptions**. At least one Bates White timekeeper recorded time in vague terms on numerous occasions. The failure to provide sufficient detail about the nature of the services performed impedes the analysis of the necessity of the services. In response to the Fee Examiner's inquiry, Bates White provided additional detail about the services of the timekeeper identified.

*The Fee Examiner necessarily questions the accuracy of time detail produced more than six months after the work was completed. The Fee Examiner does not recommend any reductions at this time, but retains the right to amend this recommendation in light of Bates White's subsequent fee applications.*

*Suggested disallowance for vague timekeeping: none.*

17. **Block Billing**. Bates White timekeepers generally avoided listing more than one activity in each time entry—thereby satisfying on a general level the UST Guidelines rule to avoid block billing. *See* UST Guidelines at § (b)(4)(v).

*Suggested disallowance for block billing: none.*

18. **Billing Increments**. Several Bates White timekeepers recorded a disproportionate amount of time in half or full hour increments. The UST Guidelines require time entries to be recorded in tenths of an hour, and compliance with that guideline is not voluntary. *See In re Motors Liquidation Company*, Hr'g Tr. at 16-17, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369]. Bates White responded that part of the reason for

7

billing patterns may be due to timekeepers working around internal meetings—which are routinely scheduled in half- and full-hour increments. This explanation is unsatisfying, however, because the billing increment issue is concentrated in the time detail of a limited number of professionals. Bates White stated it would review the time detail and discuss the matter with the timekeepers to ensure they understand the requirement to bill contemporaneously in tenths of an hour increments.

19. While this is Bates White's first fee application in this case, it has significant experience in bankruptcy cases. The Fee Examiner does not recommend any disallowance for billing increment issues at this time but retains the right to amend the recommendation in light of Bates White's subsequent fee applications.

*Suggested disallowance for billing increments: none at this time.*

20. **Retention, Fee Application, and Billing Activities**. The Fee Application discloses work associated with the firm's retention application in at least three task categories: Expert Time, Research, and Project Management. In addition, Bates White has billed $3,807.00 to tasks described variously as "writing engagement letter, reviewing timekeeping guidelines, and reviewing time records to ensure compliance with timekeeping protocols." In response to the Fee Examiner's inquiry about billing-related services, Bates White stated that it would segregate its billing activities in subsequent fee applications and discount its fee for reviewing time detail by 50 percent, as required by this Court's ruling. *See In re Motors Liquidation Company et al.*, Second Interim Fee Ruling Tr. at 9-15, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369]. Bates White calculated that it spent $1,345.75 in fees conducting bill review; it agreed to reduce its request for compensation by 50 percent of those fees.

*Agreed reduction for billing-related fees: $672.88.*

8

21. **Non-working Travel Time.** Travel time is compensable at half the professional's usual hourly rate. *In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) (holding in a nonbankruptcy context that "courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). Bates White calculated the non-working time included in the Fee Application as 13.6 hours billed at full rates and has agreed to a voluntary reduction of 50 percent.

*Agreed reduction for non-working travel: $4,233.00.*


*Total Fees Suggested for Disallowance: $4,905.88.*

*Total Expenses Suggested for Disallowance: $0.*

*Total Fees and Expenses Suggested for Disallowance: $4,905.88.*

### CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Madison, Wisconsin
October 19, 2010.

              GODFREY & KAHN, S.C.

         By:  */s/ Katherine Stadler*
             Katherine Stadler (KS 6831)
             Timothy F. Nixon (TN 2644)

             GODFREY & KAHN, S.C.
             780 North Water Street
             Milwaukee, Wisconsin 53202
             Telephone: (414) 273-3500
             Facsimile: (414) 273-5198
             E-mail: kstadler@gklaw.com
                 tnixon@gklaw.com

             *Attorneys for Fee Examiner*

5497522_3