**Hearing Date and Time: October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :   Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,                  :   (Jointly Administered)
                                                           :
                            Debtors.                       :   Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED**
**OBJECTION TO THE FIRST INTERIM FEE APPLICATION OF**
<u>**LEGAL ANALYSIS SYSTEMS**</u>

TO:    THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Quarterly Application of Legal Analysis Systems, Inc. for Interim Compensation and Reimbursement of Expenses with Respect to Services Rendered as Consultant on the Valuation of Asbestos Liabilities to the Official Committee of Unsecured Creditors Holdings* [sic] *Asbestos-Related Claims for the Period April 28, 2010 Through May 31, 2010* [Docket No. 6555] (the "**Fee**

**Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $14.00 in fees and expenses, from a total of $35,201.19 requested in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

The applicant and the Fee Examiner have reached agreement and resolved all concerns about the Fee Application. As adjusted, the amount sought can be approved by the Court.

In general, the Fee Application appears substantively sound. It requests a total of $35,201.19. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary concerns with Legal Analysis Services, Inc. ("**LAS**") by letter dated October 4, 2010. LAS provided additional information by letter dated October 17, 2010 and the parties have reached a consensual resolution.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a total suggested disallowance of $14.00 in expenses from a total request of $35,201.19 in compensation and expenses.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors

2

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.   On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or soon after—year-end.

3.   On March 18, 2010, the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims ("**Asbestos Claims Committee**") filed the *Application to Retain and Employ Legal Analysis Systems, Inc. as Consultant on the Valuation of Asbestos Liabilities to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims Nunc Pro Tunc to March 15, 2010* (the "**Retention Application**") [Docket No. 5306]. On April 6, 2010, the Court approved the retention [Docket No. 5435].

4.   LAS does not report whether it has received payments from the Debtors pursuant to the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711]. According to the Debtors' Monthly Operating Reports, LAS has not received any payments for services rendered between April 28, 2010 and May 31, 2010.

5.   The Fee Examiner has evaluated the Fee Application, the Retention Application, the retention order, and the *Declaration of Mark A. Peterson Under Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure and Section 328 of the U.S. Bankruptcy Code in Support of the Application for Order Authorizing the Employment and Retention of Legal Analysis Systems, Inc. Nunc Pro Tunc to March 15, 2010 as Consultant on the Valuation of Asbestos Liabilities to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims*.

6. By correspondence dated October 4, 2010, counsel to the Fee Examiner requested supplemental information from LAS as part of the review of specific matters in the Fee Application. The supplemental information involved:

    A.    Project Code Descriptions;

    B.    Billing Rates and Bar Admissions;

    C.    Write-offs;

    D.    Overhead;

    E.    Training; and

    F.    Expenses.

LAS provided information in response to these inquiries by letter dated October 17, 2010 and the parties have resolved all outstanding concerns.

## APPLICABLE STANDARDS

7. The Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner provided LAS with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

**COMMENTS**

8. **Project Code Descriptions**. The services performed by LAS during the Fee Application period are segregated into four project codes. The services provided in each code category are not summarized, however, contrary to the United States Trustee Guidelines:

> a description of the project, its necessity and benefit to the estate, and the status of the project including all pending litigation for which compensation and reimbursements are requested;

UST Guidelines, § (b)(4)(iii)(A) (2010). Instead of a summary of LAS' project codes, LAS included in the Fee Application a copy of the statement from its retention application of the (non-exclusive) services it proposed to perform. A summary description is usually insufficient to comply with the guideline, making the fee review process less efficient. In response to the Fee Examiner's inquiry, LAS provided the required project descriptions.

9. The Fee Examiner also noted that LAS disclosed services related to "estimation of the Debtors' liability for Asbestos Claims…that will be filed in the future." Fee Application, at 6. Given LAS' retention as consultant to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims—with its retention limited to pending asbestos claimants—and the concurrent appointment of Dean Trafelet as representative of future asbestos claimants, the Fee Examiner questioned the necessity of LAS' estimation services related to future asbestos claims.

10. LAS explained that an estimation expert must consider both pending and future claims together for practical and analytical purposes whether its work is for a client whose interests are pending claims or future claims. The explanation is reasonable.

*Suggested disallowance for project descriptions: none at this time.*

11. **Billing Rates and Bar Admissions**. LAS did not provide a blended hourly rate, as required by the UST Guidelines. UST Guidelines, § (b)(3)(v). The Fee Examiner calculates,

5

and LAS confirmed, that blended rate for services is $411.94.  LAS also explained that a professional identified as an attorney in the Fee Application, who was admitted to the bar in 1970, did not provide any legal services in this case.

*Suggested disallowance for billing rates:  none.*

12.    **Write-offs**.  The earliest service for which LAS seeks compensation is dated April 28, 2010; however, according to Caplin & Drysdale's application to retain LAS, that firm requested that LAS begin providing services to the Asbestos Claims Committee on March 15, 2010.  *See* Fee Application, at 3.  LAS confirmed that the earliest date of work performed by any LAS professional in the case was April 28, 2010.

13.    **Overhead**.  The Fee Examiner identified some activities in the Fee Application that might be better classified as non-compensable administrative tasks, instead of as professional services.  Those activities include more than 13 hours related to retrieving and organizing data performed by a statistician with 42 years experience, at a billing rate of $475, under the "Analyses of Claims Database" project code.

14.    In response to the Fee Examiner's inquiry, LAS explained that although the time detail did not show the level of work and skill required, these services could not have been performed efficiently by a less experienced professional.  Preparing the initial data sets required an understanding of the analytic issues in the case and the data's subsequent use.  LAS stated it would endeavor to draft more robust task descriptions in future applications to reflect the required skill necessary for each task.  In light of this explanation, no disallowance is suggested.

*Suggested disallowance for overhead:  none.*

15.    **Training**.  The Fee Examiner identified training activities for "claims data coders," both in the form of fees for services and expense reimbursements.  In the absence of a detailed explanation for the necessity of the services, training provided to a professional's

6

employees is non-compensable. LAS explained, however, that the term "training" has a special meaning with the field of empirical data collection. The "training" services that were provided were to introduce experienced coders—employees of Dahl Consulting—to the specific documents they were to review. The purpose of the training is to teach the coders how to identify and extract from the documents the data necessary for LAS's analyses.

16. The Fee Examiner notes that LAS, although apparently working with a professional it has retained—Dahl Consulting—has not sought compensation for expenses incurred by that retention, quite appropriately as that retention has not been approved by the Court.

*Suggested disallowance for training:  none.*

17. **Expenses—Out-of-Town Meals**. The Fee Examiner identified a travel meal that exceeded $20 per person. and LAS agreed to voluntarily reduce its request by $14.00.

*Suggested disallowance for excessive meal charges:  $14.00.*

> *Total Fees Suggested for Disallowance:  none.*
>
> *Total Expenses Suggested for Disallowance:  $14.00.*
>
> *Total Fees and Expenses Suggested for Disallowance:  $14.00.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of

7

professionals in this case, some degree of subjective judgment will always be required. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Madison, Wisconsin
October 19, 2010.

GODFREY & KAHN, S.C.

By: */s/ Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5497548_3