**Hearing Date and Time:  October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :   Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,            :   (Jointly Administered)
                                                           :
               Debtors.                            :   Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

### FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO THIRD INTERIM FEE APPLICATION OF BUTZEL LONG, A PROFESSIONAL CORPORATION

**TO:   THE HONORABLE ROBERT E. GERBER**
        **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Third Application of Butzel Long, a Professional Corporation, as Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 Through May 31, 2010* [Docket No. 6542 ] (the "**Third Fee Application**").  With this *Report and Statement of Limited Objection,* the Fee

Examiner identifies objectionable fees and expenses requested in the Third Fee Application, which requests a total of $450,636.10. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Third Fee Application, counsel for the Fee Examiner raised a series of concerns about the application by letter dated October 5, 2010 to Butzel Long ("**BL**"). In response to counsel's letter, BL addressed some—but not all—of these concerns by providing supplemental expense detail on October 5 and 6, 2010 and a responsive narrative on October 11, 2010. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $17,864.78 in fees and expenses of the total requested. $5,385.03 of this disallowance is stipulated, and BL agrees that the remaining $12,479.75 relating to its compensation should be addressed by this Court.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830]. Plan confirmation is anticipated before—or not long after—year-end.

3. On November 16, 2009, BL filed its *Application of Butzel Long, a Professional Corporation, As Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation, for Interim Allowance of*

2

*Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From June 10, 2009 Through September 30, 2009* [Docket No. 4450] (the "**First Fee Application**"), seeking fees and expenses in the amount of $259,041.37.

4. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to First Interim Fee Application of Butzel Long* [Docket No. 5548] (the "**First Objection**"), identifying $46,105.81 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

5. On April 29, 2010, this Court issued an oral ruling that granted BL's first interim fee application in part but required a continued holdback of 10 percent of BL's requested fees. On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834] approving a series of interim fee applications, including the application submitted by BL. The Omnibus Order authorized payment to BL of $236,158.74 for fees (which included the 10 percent holdback) and $20,996.55 for expenses.

6. On March 17, 2010, BL filed the *Second Application of Butzel Long, a Professional Corporation, As Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From October 1, 2009 Through January 31, 2010* [Docket No. 5293] (the "**Second Fee Application**"), seeking fees in the amount of $258,825.50 and expenses in the amount of $12,188.98, for total requested compensation of $271,014.48.

3

7. On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of Butzel Long* [Docket No. 6081] (the "**Second Objection**"), identifying $28,251.14 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

8. On July 6, 2010, this Court issued an oral ruling that granted BL's Second Fee Application in part but required a continued holdback of 10 percent of BL's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by BL. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to BL of $253,659.37 for fees (which included the 10 percent holdback) and $11,109.70 for expenses.

9. On August 5, 2010, BL filed its Third Fee Application, seeking fees in the amount of $429,844.75 and expenses in the amount of $20,791.35, for total requested compensation of $450,636.10.

10. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), BL reports it has previously submitted monthly statements and received payments from the Debtors totaling $365,641.09 for the period covered by the Third Fee Application, consisting of 80 percent of requested fees and

4

100 percent of requested expenses. *See* Third Fee Application, ¶ 16. BL reports that it has an outstanding request for $84,995.01 that, it states, remains unpaid in connection with the Third Fee Application. *Id.* at ¶ 16.

11. By correspondence dated October 5, 2010, counsel for the Fee Examiner provided BL with his preliminary analysis of the fees requested in the Third Fee Application, inviting BL to submit any additional information in support of the application. The preliminary analysis included information related to:

    A.    Clerical or administrative charges;

    B.    Compensation relating to fee applications;

    C.    Billing rate increases;

    D.    Specificity of billing entries;

    E.    Timekeeping issues;

    F.    Multiple attendees at hearings; and

    G.    Hotel and meal expenses.

BL provided some information in response to this preliminary analysis as it related to expenses by correspondence dated October 5 and 6, 2010, and it provided a narrative supplement dated October 11, 2010.

12. On October 12, 2010, the Fee Examiner sent BL a draft of this *Report and Statement of Limited Objection* (the "**Draft Report**") with a limited objection to BL's fees, offering yet another opportunity for discussion.

13. By correspondence dated October 14, 2010, BL stipulated to all proposed disallowances other than those related to compensation issues, acknowledging that those issues

are best left for resolution by this Court. All of the information provided by BL has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

14. The Third Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided BL with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

## COMMENTS

15. **Scope of Work**. The Fee Examiner notes that project codes utilized by BL focused on the JPMorgan Avoidance Complaint and the Nova Scotia litigation—in addition to fee applications addressed in this *Report and Statement of Limited Objection*.

*The Fee Examiner necessarily will defer any evaluation of the expenditure of time in connection with the JPMorgan adversary proceeding and the Nova Scotia litigation until the progress of the proceedings is more readily ascertainable.*

16. **Billing Rate Change**. The Third Fee Application increases the hourly rate of one BL attorney from $395.00 to $435.00 per hour, an increase of approximately 10 percent. The Second Fee Application identified two attorneys and one paralegal who had increased billing rates for 2010, effective January 1, 2010, stating that, "As of the period beginning January 1,

6

2010, BL has billed all professionals and paraprofessionals at their standard 2010 rates." Second Interim Fee Application, Exhibit D, n.2, 3. The Fee Examiner requested BL's comment on the increased hourly rate for this individual beyond what appears to be her standard 2010 rate. This timekeeper provided substantial services in connection with the First and Second Fee Applications but billed only .3 hours in connection with the Third Fee Application.

*BL's supplemental response does not explain the increase, stating only that the increase "was consistent with firm policy." However, due to the nominal time billed by this timekeeper on the Third Fee Application, no disallowance is suggested.*

17. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Advisories have requested that travel time be itemized separately. *See* First Advisory, at 6, ¶ 15. No travel time has been identified by BL in the Third Fee Application—although travel expenses have been submitted for reimbursement. No deduction is noted for travel time, as required in this district, and the Fee Examiner recognizes that travel time may have been billed at full hourly rates. However, in light of the nominal travel expenses indicating limited travel time, no disallowance is suggested.

*Suggested disallowance for travel time: none.*

18. **Block Billing**. Block billing is prohibited by the UST Guidelines at § (b)(4)(v). "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *Id*. The Fee Examiner identified some entries by BL professionals for multiple tasks in excess of .5 hours in aggregate time that do not comply with this guideline. The entries indicating block billing total $2,446.50.

*BL has provided amended time entries, resolving this concern.*

7

*Suggested disallowance for block billing:  none.*

19. **Clerical and Administrative Charges**.  Some billing entries describe non-compensable clerical or administrative services.  These entries total $7,490.50.

*BL has provided a supplemental explanation of these services, reducing this concern.*

*Agreed disallowance for non-billable clerical and administrative tasks:  $144.00.*

20. **Duplicate Time Entries**.  The Fee Examiner identified time entries that appear to describe duplicate services relating to the destruction of documents, totaling $488.50

*BL has provided supplemental detail, resolving this concern.*

*Suggested disallowance for duplicate entries:  none.*

21. **Vague Time Entries**.  The Fee Examiner has identified specific billing entries aggregating $5,781.00 that contain an insufficient description of a task or failure to identify parties and subject matter of a communication.  Such entries are non-compensable.

*Agreed disallowance for vague tasks:  $1,734.30 (30 percent).*

22. **Multiple Attendees**.  The Fee Examiner has requested an explanation for the attendance of three attorneys at two pre-motion conferences in connection with the JPMorgan Adversary proceeding and in connection with the Court's ruling on the Second Interim Fee Applications.  This same issue was raised in the Second Objection.  The Fee Examiner recommended disallowance of one of the partners' time.

*The Fee Examiner recognizes there may be instances when the presence of multiple attorneys is appropriate.  Neither a pre-motion conference nor a bench ruling on fee applications is one of those instances.  Because the associate is a bankruptcy practitioner, and has a stated purpose for attendance, and the litigation expert is also a bankruptcy professional, the suggested disallowance is for time expended by the senior bankruptcy expert.  In this instance, the senior bankruptcy expert's fees are also recommended for disallowance in connection with the pre-motion conferences, and the litigation partner's time is suggested for disallowance in connection with the ruling on the fee hearing that he did not attend.*

*Agreed disallowance:  $3,377.50.*

8

23. **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**. BL has categorized fee issues into three project codes: 10 - Monthly Fee Statement; 5 – Fee Applications and Monthly Budgets; 8 – Defending Fee Applications. BL reports 29.7 billable hours, representing approximately $10,000.00, billed for the preparation of BL's monthly fee statements. BL has voluntarily reduced this billing by $5,379.75 (50 percent) pursuant to the Court's comments and direction. Project Code 5, "Fee Applications and Monthly Budgets," has not been reduced, and the Fee Examiner agrees that reduction is not required. The final category, Project Code 8, "Defending Fee Applications," has not been reduced and has been evaluated by the Fee Examiner. BL does note, however, that it has not billed the estate for responses to the Fee Examiner that require nominal attention.

24. No one underestimates the amount of time it has taken to respond to the correspondence and draft reports involving fees and expenses, whether from the U.S. Trustee or the Fee Examiner, in the first rounds of applications. Of the 20 applications now pending, many if not most reflect a significant amount of time for this activity. Moreover, the case law is split on the question of whether a retained professional should be compensated—fully, partially or not at all—for this activity. *See e.g.*, *In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (Bernstein, J.) (citing cases); *In re Motors Liquidation Company et al.*, No. 09-50026, Fee Examiner's Report and Statement of Limited Objection to the Third Interim Fee Application of Weil, Gotshal & Manges LLP, ¶¶ 30-38 [Docket No. 6984] (summarizing case law and Fee Examiner's proposed approach). On the one hand, the American rule generally applies to professionals outside the bankruptcy system forced to litigate their fees; *see In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); on the other hand, failing to compensate a professional who

9

successfully prosecutes its own fee application may be no different than cutting the professional's rate. *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005). This issue may be particularly difficult to resolve by a bright-line rule applicable equally to all retained professionals in this case. They have varying levels of expertise with billing requirements unique to bankruptcy; moreover, some objections were based on established points of law, whereas others were more novel; some objections were resolved consensually, some were contested and sustained, and some overruled.

25. The Fee Examiner's objections to the Second Fee Application were sustained in part and overruled in part. It probably would waste time and resources to try to determine, item by item, or on a percentage basis, which objections were sustained, which were denied, and which were resolved without dispute by the parties, or to try to parse the time attributable to each of them.

26. Professionals should not, as a matter of course, be fully compensated for participating in a fee review process that results in material and sustained objections. In light of BL's significant experience in bankruptcy cases and the nature of the guideline compliance issues in its First and Second Fee Applications, a 50 percent deduction in this billing category is appropriate.

*Suggested disallowance for fees related to defending fee applications: $12,479.75 (50 percent).*

27. **<u>Expenses</u>**. The Third Fee Application contains an Expense Summary. *See* Third Fee Application, Exhibit E. Although the detail of some expenses was initially insufficient to be compensable, BL has produced documentation at the request of the Fee Examiner to substantiate most of these expenses. BL has also voluntarily reduced its copy charges to $0.10 per page, consistent with the First Advisory, at 7, ¶ 17. The remaining concern relates to BL's meal

expenses, which either exceed the $20.00 allowance identified in the Advisories or do not comply with the requirement that the individual requesting reimbursement work more than minimal hours on the date in question.

*Agreed disallowance for meals: $129.23.*

*Total fees suggested for disallowance: $17,735.55.*

*Total expenses suggested for disallowance: $129.23.*

*Total fees and expenses recommended for disallowance: $17,864.78.*

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Third Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to BL's Third Fee Application.

Dated: Green Bay, Wisconsin
       October 19, 2010.

                                        GODFREY & KAHN, S.C.

                    By:     */s/ Carla O. Andres*
                            Carla O. Andres (CA 3129)
                            Timothy F. Nixon (TN 2644)

                            GODFREY & KAHN, S.C.
                            780 North Water Street
                            Milwaukee, Wisconsin 53202
                            Telephone: (414) 273-3500
                            Facsimile: (414) 273-5198
                            E-mail: candres@gklaw.com
                                          tnixon@gklaw.com

                            *Attorneys for Fee Examiner*

5506711_4