**Hearing Date and Time:  October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 19, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                                         :
In re:                                                             :     Chapter 11
                                                                         :
MOTORS LIQUIDATION COMPANY, *et al.,*     :     Case No. 09-50026
      f/k/a General Motors Corp., *et al.,*              :     (Jointly Administered)
                                                                         :
                     Debtors.                               :     Honorable Robert E. Gerber
                                                                         :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**THIRD INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**

**TO:   THE HONORABLE ROBERT E. GERBER**
**        UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of*

*Limited Objection* in connection with the *Third Interim Application of FTI Consulting, Inc. for*

*Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the*

*Case for the Period February 1, 2010 Through May 31, 2010* [Docket No. 6536] (the "**Third**

**Fee Application**").  With this *Report and Statement of Limited Objection,* the Fee Examiner

identifies certain objectionable fees and expenses requested in the Third Fee Application, which

requests a total of $2,011,713.21.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Third Fee Application, counsel for the Fee Examiner raised a series

of concerns about the application by letter dated October 5, 2010 to FTI Consulting, Inc.

("**FTI**").  In response to counsel's letter, FTI addressed some—but not all—of these concerns by

providing time detail and explanations of expenses by correspondence dated October 6 and 8,

2010.  This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis

in support of a suggested disallowance of $72,888.29 in fees and expenses of the total requested.

Most of these recommended reductions are attributable to vague communications, multiple

attendees, and compensation issues.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates

("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated procedurally and are being jointly

administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are

authorized to operate their businesses and manage their properties as debtors-in-possession

pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure

Statement [Docket Nos. 6829 and 6830].  Plan confirmation is anticipated before—or not long

after—year-end.

3.      On November 16, 2009, FTI filed its *First Interim Application of FTI Consulting,*

*Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered*

*in the Case for the Period June 3, 2009 Through September 30, 2009* (the "**First Fee**

**Application**") [Docket No. 4455], seeking fees and expenses in the amount of $4,509,537.09.

4.      On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of FTI Consulting, Inc.* [Docket No. 5557] (the "**First Objection**"), identifying $191,972.53 in fees and expenses that were objectionable.  That report and statement is incorporated by reference.

5.      On April 29, 2010, this Court issued an oral ruling that granted FTI's First Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees.  On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834] approving a series of interim fee applications, including the application submitted by FTI.  The Omnibus Order authorized payment to FTI of $4,435,036.25 for fees (which included the 10 percent holdback) and $73,248.33 for expenses.

6.      On March 16, 2010, FTI filed its *Second Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1, 2009 Through January 31, 2010* [Docket No. 5279] (the "**Second Fee Application**"), seeking fees in the amount of $2,066,666.00 and expenses in the amount of $18,756.18, for total requested compensation of $2,085,422.18.

7.      On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of FTI Consulting, Inc.* [Docket No. 6082] (the "**Second Objection**"), identifying $173,990.82 in fees and expenses that were objectionable.  That report and statement is incorporated by reference.

8.    On July 6, 2010, this Court issued an oral ruling that granted FTI's Second Fee

Application in part but required a continued holdback of 10 percent of FTI's requested fees.  On

July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the

Court entered an omnibus order approving a series of interim fee applications, including the

application submitted by FTI.  *Order Granting (I) Applications for Allowance of Interim*

*Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred*

*from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim*

*Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred*

*from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket

No. 6402].  The Second Omnibus Order authorized payment to FTI of $2,066,666.00 for fees

(which included the 10 percent holdback) and $18,688.23 for expenses.

9.    On August 5, 2010, FTI filed its Third Fee Application, seeking fees in the

amount of $2,000,000.00 and expenses in the amount of $11,713.21[1], for total requested

compensation of $2,011,713.21 for the period February 1, 2010 through May 31, 2010 (the

"**Third Interim Period**").

10.    As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331*

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses of*

*Professionals* [Docket No. 3711] (the "**Compensation Order**"), FTI reports it has previously

submitted monthly statements and received payments from the Debtors totaling $1,208,128.05

for the period covered by the Third Fee Application, consisting of 80 percent of requested fees

and 100 percent of requested expenses for the months of February, March, and April.  As of the

---

[1] Expenses requested reflect a voluntary reduction of $40.00 to reflect the capping of meal costs at $20.00 per person.

date of the Third Fee Application, FTI reported it had not yet received payment for May fees or

expenses. *See* Third Fee Application, Exhibit C.

11.     By correspondence dated October 5, 2010, counsel for the Fee Examiner provided

FTI with his preliminary analysis of the fees and expenses requested in the Third Fee

Application, inviting FTI to submit any additional information in support of the application.  The

preliminary analysis included information related to:

        A.     Failure to provide time detail;

        B.     Travel expenses; and

        C.     Hotel and meal expenses.

FTI provided information, including the missing time detail that had not been provided in its

application, in response to this preliminary analysis by correspondence dated October 6 and 8,

2010.

12.     On October 12, 2010, the Fee Examiner sent FTI a draft of this *Report and*

*Statement of Limited Objection* (the "**Draft Report**") with a limited objection to FTI's fees and

expenses, offering yet another opportunity for discussion.

13.     On October 14, 2010, FTI provided a written response to the Draft Report.  All of

the information provided by FTI has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

14.     The Third Fee Application has been evaluated for compliance with the *Amended*

*Guidelines for Fees and Disbursements for Professionals in Southern District of New York*

*Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local**

**Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement*

*of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST**

**Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the

"**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket

No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as

well as this Court's Compensation Order—including the extent, if any, that variation has been

expressly permitted by order.  In addition, the Fee Examiner has provided FTI with a draft

memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

### COMMENTS

15.    **Compensation Structure**.  FTI's compensation structure provides for payment of

a $500,000 fixed fee (the "**Monthly Fixed Fee**") for each month of service during the third

interim fee period.  During the Monthly Fixed Fee period, FTI is required to maintain time

records only in half hour increments.  In addition to the Monthly Fixed Fee, FTI will receive

reimbursement of actual and necessary expenses.  For the purposes of calculating suggested

disallowances, the Fee Examiner has used FTI's blended rate from its First Fee Application of

$588.26 (the "**Blended Rate**").[2]

From the outset, it should be noted that one aspect of evaluating a flat fee for

reasonableness is to divide the flat fee by the hours of service provided for the flat fee period.

During the period of time covered by the Monthly Fixed Fee in the First Fee Application, this

calculation yielded $475.46.  In the Second Application, this calculation yielded $588.21.  For

the Third Interim Period, this calculation yielded $677.83, if no recommended disallowances are

ultimately accepted.

The Fee Examiner does not anticipate that the suggested disallowances will result in a

reduction of the Monthly Fixed Fee.  It is appropriate, however, for a record to be made of the

recommendations and concerns because, at the least, they are relevant to FTI's final fee

application and an understanding of the reasonableness of the requested fees.  For these reasons,

---

[2] FTI was engaged on an hourly basis between June 3 and July 10, 2009. *See* Second Fee Application at ¶ 8.

FTI's customary response—that where and how staff spends its time is irrelevant when a firm is compensated on a fixed fee basis—does not preclude interim review or comment.

16.    **Scope of Work**.  FTI is the financial consultant for the Committee of Unsecured Creditors (the "**Creditors Committee**"), and it has negotiated a Monthly Fixed Fee for its remaining representation of the Creditors' Committee.  The Fee Examiner has concerns about the scope of the work to be performed by FTI, as financial consultant for the Creditors' Committee, in light of the Committee's defined statutory role and the unique nature of this proceeding.

17.    In connection with the Second Fee Application, the Fee Examiner noted that one timekeeper reported a focus on understanding GM sales programs, marketing campaigns, and presenting the results of the programs on GM's sales data.  During the Third Interim Period, 165.6 hours were expended by eight timekeepers on matters categorized as Project Code 1, "Current Operating Results and Events."[3]  These services, provided at the request of the Creditors' Committee, are intended to "outline potential recovery ranges to unsecured creditors." *Id*.

Similarly, 773.9 hours were spent on Project Code 17, "Wind Down Monitoring," which includes, in part, "monitor[ing] the court docket for any key filings as well as news articles that may impact the potential recoveries to the Unsecured Creditors." *Id*., p. 8.  The month of February 2010, alone, contained 54 time entries, totaling 42.3 hours, generally of the following nature:

"Review court docket, GM news re Saab and Spyker";

---

[3] Services provided under Project Code 1 are described this way:  "FTI reviewed and analyzed New GM's public filings of financial statements to assess their impact on recoveries to unsecured creditors.  FTI reviewed and developed analyses based on analyst reports on New GM and prepared reports to the Committee on same.  FTI reviewed and analyzed New GM's operating results, including monthly vehicle sales by brand.  FTI prepared detailed reports to the committee analyzing GM's vehicle sales trends and market share information.  These services were essential to ensure the Committee had a complete understanding of these issues and to ensure that value was being maximized."  Third Fee Application, p. 5, ¶ 9.

"Review court docket and case related news re Delphi plant and Saab";

"Review docket filings for updates, SEC filings, and news re Spyker and Opel"; and

"Review court docket and case related news re Plant reopening and Saab."

*These services were provided at the request of the Creditors' Committee, according to FTI, and are an effort to value the assets available for distribution to the unsecured creditors. However, since the composition of assets will not change, the Fee Examiner continues to question whether the tasks are an appropriate use of FTI resources by the Creditors' Committee.*

*Suggested disallowance to be determined.*

18.    **Project Categories**.  The project categories utilized by FTI do not include a category for administrative matters as required by the UST Guidelines at § (b)(4)(i).  The utilization of these categories facilitates the Court's review.

19.    **Time Increment Analysis**.  The Local Guidelines require professionals to bill in increments of one-tenth of an hour.  However, during periods covered by the Monthly Fixed Fee, FTI is required only to maintain time records in half hour increments.  Nonetheless, on most occasions FTI has provided time detail in tenth of an hour increments.

20.    **Vague Communications**.  The Fee Examiner has identified specific billing entries that fail to comply with the UST Guidelines, aggregating 39.5 hours or $23,236.27, at the Blended Rate.  Specifically, "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication."  UST Guidelines at § (b)(4)(v).

*Suggested disallowance for vague communications:  $6,970.88 (30 percent at Blended Rate).*

21.    **Travel Time**.  Non-working travel time will be compensated at 50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (nonproductive travel time should

be billed at one-half the professional's customary rate); *Wilder v. Bernstein,* 975 F. Supp. 276,

283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at

fifty percent of their hourly rates") (citations omitted).  In accordance with the Advisories, FTI

has itemized travel time separately and reduced travel time accordingly in the Fee Application.

>        *Suggested disallowance for travel time:  none.*

>        22.       **Vague Tasks**.  The Fee Examiner has identified specific billing entries

aggregating five hours, or $2,941.30 at the Blended Rate, that contain an insufficient description

of a task and are non-compensable.

>        *FTI has provided supplemental detail, resolving this concern.*

>        23.       **Multiple Attendees**.  While there were many instances of note where the number

of FTI professionals attending a single meeting or telephone conference declined from the First

and Second Fee Applications, multiple attendance remains a concern.  The following entries

appear to have more FTI professionals in attendance than reasonably necessary—without

explanation.

| Time Reported | Date | Description |
|---|---|---|
| 1.5 – 1.7 | 2/04/2010 | Participate in Committee update call, eight FTI professionals |
| .7 – 1.2 | 3/16/2010 | Participate in Committee update call, seven FTI professionals |
| .9 – 1.0 | 3/03/2010 | Environmental update calls with Kramer & Debtor (4-5 persons) |
| .8 – 1.3 | 3/10/2010 | Environmental update calls with Kramer & Debtor (4-5 persons) |
| .9 – 1.2 | 3/17/2010 | Environmental update calls with Kramer & Debtor (4-5 persons) |
| .9 – 1.0 | 3/24/2010 | Environmental update calls with Kramer & Debtor (4-5 persons) |

It is also noteworthy that broad and divergent ranges of time are reported by individual

timekeepers for these events—without explanation.

*Suggested disallowance for multiple attendees: $7,647.38 (reduction of 13 hours reducing meetings to three attendees; assumed one hour duration of each event).*

24.    **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**.  FTI reports 78.8 billable hours, representing $46,354.88 in fees at the Blended Rate, billed for Project Code 33, "Response to Fee Examiner."  In addition, 231.5 billable hours, representing $136,182.19 at the Blended Rate, were expended on Project Code 24, "Preparation of Fee Application."  It is noteworthy that many entries in Project Code 24 related to responding to the Fee Examiner.

25.    No one underestimates the amount of time it has taken to respond to the correspondence and draft reports involving fees and expenses, whether from the U.S. Trustee or the Fee Examiner, in the first rounds of applications.  Of the 20 applications now pending, many if not most reflect a significant amount of time for this activity.  Moreover, the case law is split on the question of whether a retained professional should be compensated—fully, partially or not at all—for this activity.  *See e.g.*, *In re: CCT Communications, Inc.*, No. 07-10210, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010) (Bernstein, J.) (citing cases); *In re Motors Liquidation Company et al.*, No. 09-50026, Fee Examiner's Report and Statement of Limited Objection to the Third Interim Fee Application of Weil, Gotshal & Manges LLP, ¶¶ 30-38 [Docket No. 6984] (summarizing case law and Fee Examiner's proposed approach).  On the one hand, the American rule generally applies to professionals outside the bankruptcy system forced to litigate their fees; *see In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); on the other hand, failing to compensate a professional who successfully prosecutes its own fee application may be no different than cutting the professional's rate. *In re Worldwide Direct, Inc.*, 334 B.R. 108, 112 (D. Del. 2005).  This issue may be particularly difficult to resolve by a bright-line rule applicable equally to all retained

professionals in this case.  They have varying levels of expertise with billing requirements

unique to bankruptcy; moreover, some objections were based on established points of law,

whereas others were more novel; some objections were resolved consensually, some were

contested and sustained, and some overruled.

26.    FTI has not identified or voluntarily reduced its time entries pursuant to the

Court's comments and direction.

27.    The Fee Examiner's objections to the Second Fee Application were sustained in

part and overruled in part.  It probably would waste time and resources to try to determine, item

by item, or on a percentage basis, which objections were sustained, which were denied, and

which were resolved without dispute by the parties, or to try to parse the time attributable to each

of them.

28.    Professionals should not, as a matter of course, be fully compensated for

participating in a fee review process that results in material and sustained objections.  Moreover,

perhaps peculiar to FTI, the full impact of objections may not be quantified until FTI's final fee

application.

*Suggested disallowance for fees related to fee review process:  $57,222.99.*

*(50 percent of Response to Fee Examiner; 25 percent of
Preparation of Fee Application; both at the Blended Rate).*

29.    **<u>Expenses</u>**.  The Third Fee Application, Exhibit F, contains an expense summary.

The expenses are generally unobjectionable with limited exception:

A.    <u>Meal Expenses</u>.  FTI has voluntarily reduced meal expenses that exceeded

the $20.00 allowance identified in the Advisories.

*Suggested disallowance for meals:  none.*

11

B.      Hotel Expenses.  Requests for hotel reimbursement in the amount of

$556.38 and $474.83 per night in New York appear to be excessive.  FTI's additional

detail indicated only that these rates were not atypical for short notice business stays in

New York.  This comment does not provide an adequate basis for allowance.

*Suggested disallowance for hotel expense:  $150.00.*

C.      Airfare Expenses.  One employee has booked airfare at a business class

rate of $1,346.20, on short notice, because FTI reported that no other flights were

available from Atlanta to New York.  No explanation has been provided on the exigency

of the travel plans.  The Fee Examiner has also expressed concern that routine flights

from New York to Atlanta are billed at $800.00-900.00

*Agreed disallowance for airfare expense:  $500.00.*

D.      Ground Transportation.  One employee has utilized a car service, at a rate

significantly in excess of the rate for a taxi, on multiple occasions.

*FTI agrees that disallowance of car service is appropriate for city travel, but
maintains that taxi service is not available or reliable in Atlanta suburbs.*

*Suggested disallowance for ground transportation to reduced rate for taxi
service:  $397.04.  ($268.33 of this disallowance is stipulated.)*

E.      Research.  FTI has provided detail for $301.06 of requested research

charges of $424.55.

*Upon request of the Fee Examiner, FTI has provided supplemental detail of the
remaining charges.*

*Suggested disallowance for undocumented research charge:  none.*

**Total fees suggested for disallowance:  $71,841.25.**

**Total expenses suggested for disallowance:  $1,047.04.**

**Total fees and expenses recommended for disallowance:  $72,888.29.**

12

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the

professionals, and the U.S. Trustee of the limited basis for objections to the Third Fee

Application.  It is not intended to be an exhaustive or exclusive list of *possible* objections and

does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee

applications or on final fee applications.  All professionals subject to the Fee Examiner's review

should be aware, as well, that while the Fee Examiner has made every effort to apply standards

uniformly across the universe of professionals in this case, some degree of subjective judgment

will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of*

*Limited Objection* to FTI's Third Fee Application.

Dated:  Green Bay, Wisconsin
October 19, 2010.

GODFREY & KAHN, S.C.

By:      */s/ Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5506155_4