**Terrie Sizemore RN DVM**
**PO Box 23**
**Sullivan, Ohio 44880**
**440-241-3126**

Clerk of Courts                                          October 9, 2010
Unites States Bankruptcy Court SDNY
One Bowling Green
New York, New York 10004

To Whom It May Concern:

Please find enclosed a copy of my "Objections to the Debtors' Proposed Disclosure
Statement with Respect to Debtors' Joint Charter 11 Plan.

I have enclosed a copy for Judge Gerber. Thank you for your attention to this matter.

Sincerely,

Dr. Terrie Sizemore RN DVM

RECEIVED
OCT 1 3 2010
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK



Dr. Terrie Sizemore RN DVM
PO Box 23
Sullivan, Ohio 44880
440-241-3126

Pro se

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

————————————————— x
:
In re                                                    :    **Chapter 11 Case no.**
:
**MOTORS LIQUIDATION COMPANY, et al** :    09-50026(REG)
**F/k/a General Motors Corp., et al.**    :
:
**Debtors,**              :    **(Jointly administered)**
:
:
:
:
————————————————— :


### OBJECTION TO THE DEBTORS' PROPOSED DISCLOSURE STATEMENT
### WITH RESPECT TO DEBTORS' JOINT CHAPTER 11 PLAN

Now comes one party, Dr. Terrie Sizemore RN DVM, sent the above captioned

Notice of Hearing scheduled for October 21, 2010 to approve the Debtors' proposed

disclosure statement with respect to the Debtors' joint Chapter 11 plan.

Dr. Sizemore respectfully wishes to assert that if she is not permitted to object,

she apologizes and requests the Court disregard her objections and this entire filing.

Information she received has been slightly confusing and if permitted and for the

following reasons, she presents this Objection to this Disclosure Statement being

presented for approval.

**TABLE OF CONTENTS**

Relief requested...................................................................................1
Jurisdiction........................................................................................3
Factual background...............................................................................3
Law and Argument ..............................................................................8
Items Objected to in the Plan..................................................................17
The Relief Requested Should be granted.......................................................28
Notice..............................................................................................29

## TABLE OF AUTHORITIES
### CASES

1. *99 Pratt St. Corp. v. Stand Realty Corp.*, 27 Conn. Supp. 101, 230 A.2d 613 Super. Ct. 1966). Page 11

2. *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 98 Cal. Rptr. 2d 176 (2d Dist. 2000). Page 13

3. *American Mfg. Co. v. Crescent Drug Co.*, 113 Miss. 130, 73 So. 883 (1917). Page 11

4. *Ballard's Inc. v. North American Land Development Corp.*, 677 So. 2d 648 (La. Ct. App. 2d Cir. 1996). Page 10

5. *Bishop v. General Motors Corp.* 925 F. Supp. 294 (D.N.J. 1996)(applying N.J. law). Page 12

6. *Burlingham v. Crouse*, 228 U.S. 459, 33 S. Ct. 564, 57 L. Ed. 920 (1913). Page 14

7. *Butner v. U.S.* 440 U.S. 48, 99 S. Ct. 914, 50 L. Ed. 2d 136 (1979) Page 14

8. *Daniel v. Post*, 181 S.C., 468, 187 S.E. 915 (1936). Page 10

9. *Ed Peters Jewelry Co. Inc., v. C & J Jewelry Co. Inc.*, 215 F.3d 182 (1st Cir. 2000.) Page 10

10. *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904 (Ind. Ct. App. 1999). Page 13

11. *Harris v. Key Bank Nat. Ass'n*, 89 F. Supp. 2d 408, 41 U.C.C. Rep. Serv. 2d 1266 (W.D.N.Y. 2000) (applying NY law). Page 13

12. *In re Baskowitz*, 194 B.R. 839 (Bankr. E.D. Mo. 1996) Page 15

13. *In re First Central Financial Corp.*, 377 F.3d 209 (2d Cir. 2004).

14. *In re Hodge*, 220 B.R. 386 (D. Idaho 1998) Page 15

15. *In re S.E. Hornsby & Sons Sand and Gravel Co. Inc.*, (E.I. No. 72-0792818), 45 B.R. 988, (Bankr. M.D. La. 1985.) Page 14

16. *In re L.T. Ruth Coal Co. Inc.*, 66 B.R. 735 (Bankr. E.D. Ky, 1986). Page 14

17. *In re Maddigan,* 312 F.3d 589 (2d Cir. 2002*); In re Baskowitz*, 194 B.R. 839 (Bankr. E.D. Mo. 1996) Page 15

18. *In re Mirant Corp.*, 316 B.R. 234 (Bankr. N.D. Tex. 2004) Page 15

19. *In re Pommerer,* 10 B.R. 935 (Brankr. D. Minn. 1981). Page 13

20. *In re PBS Insurance Group Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001). Page 15

21. *In re Sacred Heart Hosp. Of Norristown,* 209 B.R. 650 (E.D. Pa. 1997). Page 16

22. *In re Slater*, 318 B.R. 881 (Bankr. M.D. Fla. 2004). Page 15

23. *In re Vair,* 240, B.R. 247 (Bankr. W.D. Tex. 1999). Page 18

24. *In re Wazeter*, 209, B.R. 222 (W.D. Mich. 1997). Page 17

25. *In re Weber*, 209 B.R. 793 (Bankr. D. Mass. 1997).Page 17

26. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct 1020, 85 L. Ed. 1477 (1941) Page 29

27. *Kuehner v. Irving Trust Co.* 299 U.S. 445, 57 S. Ct. 298, 81, L. Ed. 340 (1937) Page 15

28. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). Page 17

29. *Libhart v. Copeland*, 949 S.W.2d 783 (Tex. App. Waco 1997). Page 11

30. *Matter of Elcona Homes Corp.* 863 F2d, 483 (7th Cir. 1988) Page 14

31. *Morgan v. McNiff*, 797 F. Supp. 325 (S.D.N.Y. 1992)(applying N.Y. law).

   Page 12

32. *People v. Federated Radio Corporation*, 216 A.D. 250, 214 N.Y.S. 670 (2d

   Dep't 1926), aff'd, 244 N.Y. 33, 154 N.E. 655 (1926).  Page 12

33. *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904, 85 L.

   Ed. 1293 (1941). Page 16

34. *Security Ins. Co. of Hartford v. Kevin Tucker & Associates Inc.*, 64 F. 3d

   1001, 32 Fed. R. Serv. 3d 619, 1995 FED App. 0271P (6th Cir. 1995) Page 29

35. *Seven Cases v. U.S.*, 239 U.S. 510, 36 S. Ct. 190, 60 L. Ed. 411 (1916) Page

   11

36. *U.S. v. Kras*, 409, U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973). Page 17

37. *Vela v. Marywood*, 17 S.W.3d 750 (Tex. App. Austin 2000).  Pages 12/13

38. *Williams v. U.S. Fidelity & Guaranty Co.* 236 U.S. 549, 35 S. Ct. 289, 59 L.

   Ed. 713 (1915) Page 15

## STATUTES/RULES

| | |
|---|---|
| U.S. Constitution Art. I | 17 |
| Report of the Commission on the Bankruptcy Laws | 15,16 |
| H.R. Rep. No. 95-595, pg 10 | 14 |

## RELIEF REQUESTED

1. Dr. Terrie Sizemore RN DVM, respectfully requests the Bankruptcy Court consider all argument presented regarding the presented Disclosure statement. She would like to assert she is aware much of her argument has already been presented prior-particularly in the *Campbell* brief and also in the "Objection of Shane J. Robley to Motion of General Motors, LLC for Entry of Order Pursuant to 11 U.S.C. sect. 105 Enforcing 363 Sale Order-docket no. 5864. In this objection, counsel for Mr. Robley asserts, "The general rule of successor liability is that when two or more entities enter into an asset purchase agreement, the purchasing entity is not liable for the debts of the selling entity **unless**.....( c) the facts indicate that the successor company purchasing the assets is a mere continuation of the selling company, or (d) the transaction was entered into fraudulently for the purpose of defeating creditors' claims, see, *Schumacher v. Richards Shear* Co., 451 N.E.2d 195, 198, (N.Y. 1983). Counsel for Robley cites many authorities to support his position and also cites *Brabham v. Southern Express Co.*, 117 S.E. 368 (S.C. 1922) to support his position regarding parties 'dodging the damages.'

2. Dr. Sizemore asserts she has viewed the Debtors' Joint Chapter 11 Plan, dated August 31, 2010 (docket no. 6829) and the proposed Disclosure Statement for the Debtors' Joint Chapter 11 Plan, dated August 31, 2010 (docket no. 6830) pursuant to title 11 of the United States Bankruptcy Code.

3. Dr. Sizemore asserts she finds the documents listed in paragraph 2 above are brilliantly written and are exhaustive in content, (and admits some parts are

confusing to her), however, her objections/observations are not limited to what 'is' contained in the documents, but more importantly are for what is 'not' contained in them. Dr. Sizemore admits she has not been able to locate 'where' the information she contends is missing can be found-if it is available.

4. Dr. Sizemore asserts she disagrees that these documents contain "adequate information" within the meaning of section 1125 of the Bankruptcy Code for reasons below.

5. Dr. Sizemore asserts she is in receipt of notice for hearing on October 21, 2010 and that any responses/objections to this notice must be submitted per instruction, however, no specific party has apparently been included or excluded in this notice for hearing, therefore Dr. Sizemore has drafted this objection for submission. She is aware she is not a 'voting' party.

6. Dr. Sizemore's main objections revolve around the exercise of Bankruptcy as well as contentions she has regarding fraud and negligence; which are elaborated on below.

7. Dr. Sizemore contends that many other laws, rules, and acts have been ignored during the process of General Motors electing to engage in the bankruptcy process and asserts their importance in deciding matters and she understands bankruptcy is not a shield for any party.

8. Dr. Sizemore asserts she understands all information regarding the Debtors' financial aspects of this process are a matter of public record, therefore any party should be able to present legitimate questions with the expectation that answers will be provided elaborating on details of the assets retained and sold.

9. Dr. Sizemore also asserts that in the event this 'Plan' and 'Disclosure Statement' are approved by the Bankruptcy Court, she understands this will not affect her appeal in the District Court SDNY or her action for discoveries in Ohio because the laws pertaining to her actions are the ones in effect at the time of her filing both her appeal and her action for discovery. It is Dr. Sizemore's understanding any denial of her action for discovery conflicts with the terms and provisions of the 363 Transaction.

## JURISDICTION

10. Dr. Sizemore understands this Court has jurisdiction over Bankruptcy issues including to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

## FACTUAL BACKGROUND

11. Dr. Sizemore acknowledges all factual information regarding dates of filing of Bankruptcy listed in the Plan.

12. Dr. Sizemore asserts she has been informed exhaustively that General Motors-Corp. or Co.- will retain and pay counsel any fee required to deny an injured party such as herself compensation for injury as they are financially capable of doing so-using bankruptcy and nonbankruptcy means to do so.

13. Per the "Plan," Motors Liquidation LLC's counsel has confirmed that this corporation apparently mismanaged funds and accrued an astronomical amount of debt-apparently in the multi billions.

14. General Motors Corporation was a Detroit, Michigan based business in the business of manufacturing and selling automobiles. This party understands General Motors Company continues to occupy the same offices.

15. General Motors Corporation, when in business, employed autoworkers to accomplish the task of manufacturing automobiles for sale.

16. General Motors Corporation, when in business, was required to conform to National Motor Vehicle Safety Standards pursuant to Title 49 of the USC Chpt 301 mandating safety standards for all vehicles manufactured and sold and while doing business in essentially every state in the United States as a foreign corporation, General Motors Corporation was required to conform to all products liability laws and honor Consumer Protection Laws –both State and Federal, the Consumer Product Safety Act, the Product Liability Act, the National Highway Traffic and Safety Act, Safety Standards for Motor Vehicles, the National Traffic and Motor Vehicle Safety Act, Consumer Sales Practices Act, the Code Of Federal Regulations, and the Uniform Commercial Code and other acts/laws/regulations-these were not suggestions, but laws.

17. While doing business, General Motors Corporation was required to manufacture safe and reliable automobiles and their workers were required to assist in the manufacturing of these vehicles.

18. It is the automobile consumers that have provided the financial means for General Motors Corporation to employ every employee they employ and give each of them their salary, benefits, home purchasing ability, child rearing and educating, retirement, etc. If not for the consumer and the taxpayer, no funds would be provided for such expenses and it is the consumers and the taxpayers who continue to fund these parties' lifestyles.

19. General Motors Corporation, through advertising and express warranties guaranteed each and every purchaser of their vehicles that they had complied with the above requirements and assured the consumers they would stand behind these State and Federal requirements/laws and would be liable for any defect in their product and it appears to this objecting party they have not.

20. When General Motors Corporation allowed their financial situation to decline to a deplorable level, they filed bankruptcy.

21. It appears all the assets were transferred to 'the Trustees'? It is this party's request that counsel for Motors Liquidation, LLC disclose which party determined the 'value' of all the 'assets' and the actual 'assets themselves.' Dr. Sizemore is requesting the value placed on each and every asset of the Corporation purchased by the Company or other purchasers. Also, Dr. Sizemore is formally requesting counsel disclose any luxury items, such as private jets retained/sold, etc and also the salaries of the executives and their retirement packages, etc-which should all be a matter of public record since the filing of bankruptcy and the fact that tax dollars have been utilized to support and maintain operations within this company.

22. In the process, parties involved, allotted funds to 'pay taxes,' 'pay union workers,' 'clean up the environment that had never been cleaned up before,' 'pay asbestos related claims,' 'pay full salaries to all professionals, who would never work for 'bankruptcy rated pay,' ' and others they deemed 'worthy creditors/claimants' but apparently and essentially walked out on persons who purchased GM vehicles and were allegedly injured by the product manufactured-which is the prime reason they were in business- to sell 'safe' automobiles-this is not a company that sells nails or paint and the market is not supporting the product, they sell automobiles.

23. This Objecting party, Dr. Sizemore, contends that General Motors Corporation only changed 'names' and even if a few of the personnel have changed, the personnel are essentially 'unchanged.' Therefore the 'assets' were essentially **sold to themselves**, they just cleverly renamed themselves, General Motors Company, a change so subtle very few U.S. citizens would even realize-GM keeping the name to support sales. Dr. Sizemore contends if the 'assets' were sold to themselves, instead of an innocent 'other' party not involved in their bankruptcy, then GM should still be held accountable for ALL liability for ALL product GM generated revenue from and the union workers manufactured because they were the actual manufacturers of the product, even if they just changed their name. Also, they received and continue to receive salaries and retirements from product purchased. Dr. Sizemore contends their extravagant lifestyles have been essentially unaltered

by the entire process. At no time in the two documents has counsel for Motors Liquidation cited any loss for any employee of GM.

24. This Objecting party also contends that General Motors Corporation has withheld assets-such as private planes-and many other assets that were never included in the bankruptcy process, but Dr. Sizemore contends 'should have been.'

25. This Objecting party, Dr. Sizemore, contends this 'corporation' only changed its name and sold all its assets essentially to themselves-because as counsel has stated-**no other option was available**. In this Objecting party's opinion, this would be the very essence of fraud. It would be as if she possessed land and equipment and a business worth, say $250,000.00, declared bankruptcy, and then turned around and sold everything-all assets- to herself for, say $30,000.00 and continued in business with another name and just walked out on $220,000.00 because it is 'legal' and she could not 'find' another buyer. She doesn't think that would be considered legal for her to do.

26. Also, Dr. Sizemore is quite confident that the "New" GM would never have had the financial resources to pay what everything was 'worth' as they obtained all the 'assets free and clear'-which actually applies to separate parties purchasing from a bankrupt party without being in danger of the bankrupt parties liability coming along with what they purchased. Dr. Sizemore contends this is trickery and fraud and not what bankruptcy was intended for-and Bankruptcy was NEVER intended to be a shield from the other laws and requirements and that is precisely what appears to be

happening. Dr. Sizemore contends as she has been involved with producers in the State of Ohio-aka the 'farmers'- the only viable way most farmers are able to maintain a business profit is because they are already in possession of the land, buildings and some equipment. If an average party decided to become a farmer, the investments (land, equipment, seed, animals, etc.) would be so huge they would most likely be unable to generate profit for the extreme overhead costs encountered. This is the general foundation for Dr. Sizemore's belief that the "New" GM could not possibly have purchased everything at market cost for the high costs involved and furthermore, if the original business failed, what makes any party think the public thinks the 'New' business will succeed. As claimed over and over in the 'Plan,' the only hope for them TO succeed was to evade responsibility from product liability cases as they availed themselves to via the 363 Order. However, the 363 Order appears to apply to parties that were not original parties to the bankruptcy, just purchasing assets 'free and clear' for themselves to use.

## LAW AND ARGUMENT

27. Dr. Sizemore asserts she is certain she is not presenting any legal argument not already known to all parties regarding her position of fraud and general bankruptcy issues.

28. Fraud is not limited to misrepresentations and misleading omissions, embraces *all* of the multifarious means that human ingenuity can devise and that are resorted to by one individual to gain advantage over another by false suggestions or by suppression of the truth.  In fact, the fertility of people's

invention in devising new schemes of fraud is so great that courts have always

declined to define the term, reserving to themselves the liberty to deal with

fraud in whatever form it may present itself, citing *New York Life Ins. Co. v.*

*Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749, 59 A.L.R.2d 1086

(1956).

29. Definitions of fraud include:

    a)    all surprise, trick, cunning, dissembling, and any unfair way by

        which another is cheated, see *In re Young*, 120 B.R. 429 (Bankr.

        S.D. Ohio 1990); *McClellen v. Cantrell*, 217 F.3d 890, 42 U.C.C.

        Rep. Serv. 2d 284 (7th Cir. 2000);

    b)    an act or omission, or concealment in breach of legal duty, trust, or

        confidence justly imposed, when the breach causes injury to another

        or the taking of an undue and unconscientious advantage, see *Hanes*

        *v. Giambrone,*, 14 Ohio App. 3d. 400, 471 N.E.2d 801 (2d Dist.

        Montgomery County 1984);

    c)    deceitful practices in depriving or endeavoring to deprive another of

        his or her known right by means of some artful device or plan

        contrary to the rules of common honesty, see *Nichoalds v.*

        *McGlothlin*, 330 F.2d 454 (10th Cir. 1964); *Hall v. Geiger-Jones Co.*

        242 U.S. 539, 37 S. Ct. 217, 61 L. Ed. 480 (1917);

    d)    a deception deliberately practiced with a view to gaining an

        unlawful or unfair advantage, see *Eliason v. Wilborn*, 335 Ill. 352,

167 N.E. 101, 68 A.L.R. 350 (1929) aff'd, 281 U.S. 457, 50 S. Ct.
382, 74 L.Ed. 962 (1930);

e)    a deceit, trick, or other artifice by which the right or interest of
another is injured, see *Eliason v. Wilborn*, above and *Puller Mortg.*
*Associates, Inc. v. Keegan*, 829 F. Supp. 1507 (S.D. Ind. 1993);

f)    a misrepresentation or suppression of the truth made with the
intention either to obtain an unjust advantage for one party or to
cause loss or inconvenience to the other, see *Ballard's Inc. v. North*
*American Land Development Corp.*, 677 So. 2d 648 (La. Ct. App.
2d Cir. 1996);

g)    unfair dealing, see *Daniel v. Post*, 181 S.C., 468, 187 S.E. 915
(1936).

30. As stated in paragraphs above, fraud in its general sense, is deemed to
comprise **anything** calculated to deceive, including all acts, omissions, and
concealments involving a breach of legal duty, trust, or confidence justly
reposed, resulting in damage to another, see *New York Life Ins. Co. v.*
*Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749, 59 A.L.R.2d
1086(1956) (the hallmarks of fraud are misrepresentation or deceit, citing *Ed*
*Peters Jewelry Co. Inc., v. C & J Jewelry Co. Inc.*, 215 F.3d 182 (1st Cir.
2000.) or by which an undue an unconscientious advantage is taken of
another, see *New York Life Ins. Co. v. Nashville Trust Co.* 200 Tenn. 513,
S.W.2d 749, 59 A.L.R.2d.

31. Dr. Sizemore contends Acts and conduct are stigmatized as being fraud on the public where false representations are addressed to all the world, citing *Seven Cases v. U.S.*, 239 U.S. 510, 36 S. Ct. 190, 60 L. Ed. 411 (1916) and a court will not lend its aid to enforce a transaction that would work a fraud on the public, citing *American Mfg. Co. v. Crescent Drug Co.*, 113 Miss. 130, 73 So. 883 (1917).

32. She also contends Fraud vitiates every transaction and all contracts, see *Libhart v. Copeland*, 949 S.W.2d 783 (Tex. App. Waco 1997). Fraud destroys the validity of everything into which it enters, and that it vitiates the most solemn contracts, documents, and even judgments, see *99 Pratt St. Corp. v. Stand Realty Corp.*, 27 Conn. Supp. 101, 230 A.2d 613 Super. Ct. 1966).

33. Dr. Sizemore also asserts there are legislation/provisions against fraud. Under the police power, the legislature may provide against frauds upon the public. See *People v. Federated Radio Corporation*, 216 A.D. 250, 214 N.Y.S. 670 (2d Dep't 1926), aff'd, 244 N.Y. 33, 154 N.E. 655 (1926). A state consumer fraud statute and a cause of action for legal fraud under common law are both aimed at prohibiting misrepresentations upon which others rely, see. *Bishop v. General Motors Corp.* 925 F. Supp. 294 (D.N.J. 1996)(applying N.J. law). In fact, consumer protection concepts may have some persuasive impact, even though not directly applicable, in situations in which less knowledgeable parties are allegedly defrauded by being lured into a sophisticated multiparty legal net, see *Morgan v. McNiff*, 797 F. Supp. 325 (S.D.N.Y. 1992)(applying N.Y. law).

34. In furtherance of her argument for fraud, Dr. Sizemore contends that constructive fraud, defined as an act done or omitted that amounts to positive fraud, or is construed as fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate positive fraud or injury upon other persons, see *Vela v. Marywood*, 17 S.W.3d 750 (Tex. App. Austin 2000).

35. Otherwise stated, "constructive fraud" arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud, citing *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904 (Ind. Ct. App. 1999).

36. Constructive fraud, sometimes called legal fraud, is nevertheless fraud, although it rests upon presumption and rests less upon furtive intent than does moral or actual fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place, citing *Vela v. Marywood*-above. Constructive fraud arises from on a breach of duty by one in a confidential or fiduciary relationship to another that induces justifiable reliance by the other to his or her prejudice, citing *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 98 Cal. Rptr. 2d 176 (2d Dist. 2000). ..... the law declares fraudulent because of its tendency to **deceive others**, to **injure public interests**, or to **violate public or private confidence**, citing *Harris v. Key Bank Nat. Ass'n*, 89 F. Supp. 2d 408, 41 U.C.C. Rep.

Serv. 2d 1266 (W.D.N.Y. 2000) (applying NY law). Until General Motors Company/Corporation actually addresses the consumers and advises them that they do not intend to *'deal'* with certain claims their product is defective, the public is assuming they will-no matter when an accident or purchase occurred.

37. The additional reasons Dr. Sizemore contends actions by General Motors Corporation and Company have been fraudulent are:

38. As all parties are already aware, the essence of bankruptcy laws is to rearrange rights and liabilities between debtors and creditors, citing *In re Pommerer,* 10 B.R. 935 (Brankr. D. Minn. 1981).

39. Since the variety of legal issues encountered in bankruptcy proceedings is almost endless… the bankruptcy courts are called on to apply not only bankruptcy law, but also state and general federal law in such areas as … torts.. and constitutional law. H.R. Rep. No. 95-595, pg. 10.

40. Where many, if not most of the issues determined by a bankruptcy court depend on state law, citing *In re S.E. Hornsby & Sons Sand and Gravel Co. Inc.,* (E.I. No. 72-0792818), 45 B.R. 988, (Bankr. M.D. La. 1985.), which like nonbankruptcy federal law, citing *Matter of Elcona Homes Corp.* 863 F2d, 483 (7th Cir. 1988) creates and defines the property interests, citing *Butner v. U.S.* 440 U.S. 48, 99 S. Ct. 914, 50 L. Ed. 2d 136 (1979)-so it is evident counsel for Motors Liquidation cannot include a statement claiming 'only New York law will be pertinent.'

41. The bankruptcy case operates as a collective executioner on **behalf of creditors** and **all** the assets of the debtor , whether such assets are in

possession of the debtor or in possession of a third party. Citing *In re L.T. Ruth Coal Co. Inc.*, 66 B.R. 735 (Bankr. E.D. Ky, 1986). It is Dr. Sizemore's understanding that ALL assets belong to the "Trustee" or the Bankruptcy Court and are subject to sale for market value to satisfy creditors.

42. Although expressed by the courts in varying terms, two fundamental goals or purposes of a bankruptcy act are to (1) convert the estate of the debtor into cash and distribute it among creditors and (2) give the debtor a fresh start with such exemptions and rights as the bankruptcy statute leaves untouched. Citing *Burlingham v. Crouse*, 228 U.S. 459, 33 S. Ct. 564, 57 L. Ed. 920 (1913).

43. The goals have sometimes been expressed as making the **equitable** distribution of the debtor's assets among his or her creditors, citing *Kuehner v. Irving Trust Co.* 299 U.S. 445, 57 S. Ct. 298, 81, L. Ed. 340 (1937); *In re Maddigan,* 312 F.3d 589 (2d Cir. 2002); *In re Baskowitz*, 194 B.R. 839 (Bankr. E.D. Mo. 1996); *In re Mirant Corp.*, 316 B.R. 234 (Bankr. N.D. Tex. 2004) and relieving the **HONEST** debtor from the weight of oppressive indebtedness to permit the debtor to start afresh, citing *Williams v. U.S. Fidelity & Guaranty Co.* 236 U.S. 549, 35 S. Ct. 289, 59 L. Ed. 713 (1915); *In re Hodge*, 220 B.R. 386 (D. Idaho 1998); *In re Slater*, 318 B.R. 881 (Bankr. M.D. Fla. 2004). GM appears to be excluding accident victims and only paying certain creditors. Some of these creditors, Dr. Sizemore contends she views as legitimate per 11 U.S.C.A. statute, however, she contends disregarding the injured is a miscarriage of justice.

44. The purposes of bankruptcy law also include placing a debtor's property, wherever found, under the control of the court for **equal** distribution among creditors, citing *In re First Central Financial Corp.*, 377 F.3d 209 (2d Cir. 2004).

45. The Bankruptcy Code is designed to bring a **debtor's affairs to light**, not hide them, citing *In re PBS Insurance Group Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001).

46. The Report of the Commission on the Bankruptcy Laws of the United States identified both internal and external goals of the bankruptcy process, see Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93rd Congr., 1st Sess., Part I, 68 (1973) and Identified as INTERNAL goals by the Report were: (1) open access of both debtor and creditor to the bankruptcy process, (same ref. Part I, 75) (2) fair and equitable treatment of creditors' claims, (Part I, 76) (5) deterrence and sanctions against fraud and other dishonest conduct, (Part I, 81) (6) production of information concerning the outcomes and effects of bankruptcy cases. (Part I, 83)

47. Equality of distribution is the theme of a bankruptcy act, citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941). The bankruptcy system is designed to distribute an estate as equally as possible among similarly situated creditors, citing *In re Sacred Heart Hosp. Of Norristown*, 209 B.R. 650 (E.D. Pa. 1997). It is Dr. Sizemore's position that the most important party to consider is the injured. She realizes the government requires compliance with tax laws and the unions possess unique

bargaining methods, however, the purchasers rely on the Courts to protect their rights regarding liability are at the Court's mercy for consideration. They are helpless without the Courts to obtain justice for their expectations and their injuries when related to product made by an automobile manufacturer. However, bankruptcy is shielding this company from their liability in this area after these consumers have paid high prices for vehicles- the vehicle were not free.

48. The congressional power to enact bankruptcy legislation comes from the Bankruptcy Clause in the Constitution which provides that Congress shall have the power to establish "uniform laws on the subject of Bankruptcies throughout the United States." (U.S. Const. Art. I, sect. 8, cl. 4) and Congress is given by the Constitution the general grant of power to 'make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers.' U.S Const. Art. I, sect. 8, cl. 18. Dr. Sizemore contends she understands neither the Bankruptcy Court nor the attorneys create the laws, they are bound to enforce the laws in existence and as counsel for Motors Liquidation has already asserted, 'words and phrases ....should be given their plain meaning,' citing *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). Parts of the "Plan" seem to give the bankruptcy court powers not apparently given by the Constitution.

49. Protection in bankruptcy court is not a fundamental right, citing *In re Wazeter*, 209, B.R. 222 (W.D. Mich. 1997). There is no constitutional right to obtain a

discharge of one's debt in bankruptcy, citing *U.S. v. Kras*, 409, U.S. 434, 93

S. Ct. 631, 34 L. Ed. 2d 626 (1973).

50. The purpose of the Bankruptcy Code is to provide a debtor with a fresh start,

not to preserve a debtor's extravagant lifestyle. Citing *In re Weber*, 209 B.R.

793 (Bankr. D. Mass. 1997).

51. A court will not allow the Bankruptcy Code to be utilized as an implement to

evade creditors simply as a result of the timing of the debtor's successive

bankruptcy filings, *In re Vair,* 240, B.R. 247 (Bankr. W.D. Tex. 1999).

### ITEMS OBJECTED TO IN THE PLAN

52. Dr. Sizemore viewed the entire plan, and while much of it is confusing, it

appears the parties voting are the parties benefiting financially from its

acceptance.

53. ""**UAW**" represented the largest portion of GM's U.S. unionized employees,

which totaled approximately 61,000 employees." **Dr. Sizemore formally

requests counsel provide the details of salaries, benefits, retirement

monies, etc. paid to these union workers that has been 'preserved' in the

bankruptcy process for all parties to view.**

54. "…the UAW Settlement Agreement provided that GM was required to

contribute approximately $34 billion into the UAW VEBA. In addition, if

annual cash flow projections reflected that the UAW VEBA would become

insolvent on a rolling 25-year basis, GM would have been required to

contribute $165 million annually, limited to a maximum of twenty payments.

As of the commencement Date, General Motors' UAW VEBA-related

obligations aggregated approximately $20.56 billion in principal amount....."

**Dr. Sizemore requests details of the money source-is it the consumers and**

**tax-payers providing this for GM workers?**

55. "As of March 31, 2009, GM had consolidated global recorded assets and

liabilities of approximately $82,290,000,000 and $172,810,000,000,

respectively. Global revenues recorded for fiscal year 2008 aggregated

approximately $150 billion." **Dr. Sizemore requests the reasons liabilities**

**rose to such an astronomical level before someone noticed.**

56. "The Chapter 11 Cases were the result of the economic collapse and liquidity

crisis that began to surface during the end of 2007 and exploded in 2008,

which materially and adversely affected General Motors' business, combined

with a substantial increase in international competitive forces." **Dr. Sizemore**

**formally requests how this allows legal justification for allegedly not**

**complying with Federal regulations and other requirements cited above**

**as an automobile manufacturer manufactures and sell automobiles.**

57. "Notwithstanding the critical need for emergency funding by domestic OEMs,

Congress did not act, and GM was compelled to seek immediate financial

support from the United States Department of the Treasury (the "**U.S.**

**Treasury**") or confront suspension of operations." **Dr. Sizemore requests if**

**this is referring to 'tax' dollars?**

58. "The U.S. Treasury Facility required that General Motors develop a proposal

to transform its business and demonstrate future viability. However,

subsequent to December 2, 2008, when GM submitted Viability Plan I, economic conditions continued to worsen globally, which, combined with public speculation about GM's future and survival, further reduced General Motors' sales, volume, revenue, and cash flow." **This is indicative of a business that cannot sustain itself, however, does not justify walking out on the injured parties.**

59. "The 363 Transaction and the MSPA. In connection with providing financing, the U.S. Treasury advised GM that, if an out-of-court restructuring was not possible, GM should consider pursuing the bankruptcy process to implement a transaction under which substantially all the assets of GM would be purchased by a U.S. Treasury-sponsored purchaser (subject to any higher or better offer) in an *expedited process* under section 363 of the Bankruptcy Code. Under this scenario, **the purchaser would acquire the purchased assets, create a New GM, and operate New GM free of any entanglement with the bankruptcy cases, and** thereby preserve the going concern value, avoid systemic failure, provide employment, protect the many communities dependent on the continuation of the business, and **restore consumer confidence." Dr. Sizemore contends the public is essentially unaware that if they are injured by the product most likely they will not recover compensation.**

60. "….assure the long-term viability of GM's North American enterprise and to (i) preserve value of the business, restore consumer confidence, and mitigate the devastating damage that GM and the industry would suffer if GM's major business operations were to remain in bankruptcy and (ii) avoid the enormous

costs of financing a lengthy chapter 11 case. The U.S. Treasury also agreed
that it would provide New GM with adequate postacquisition financing that
would further GM's long-term viability. Based upon the circumstances, it
became evident that the **only available option** was the sale of substantially all
the assets of GM and its debtor subsidiaries, and the assumption of certain
executory contracts and unexpired leases of personal property and
nonresidential real property, to a U.S. Treasury-sponsored purchaser pursuant
to section 363 of the Bankruptcy Code (the "**363 Transaction**"). The 363
Transaction was embodied in a Master Sale and Purchase Agreement among
GM and its debtor subsidiaries (the "**Sellers**") and Vehicle Acquisition
Holdings LLC, a purchaser sponsored by the U.S. Treasury (the
"**Purchaser**"), dated as of June 1, 2009 (the"MSPA")." **The ONLY**
**AVAILABLE OPTION appears to be released of liability to injured**
**parties-even though I am certain other parties were negatively affected.**

61. "The 363 Transaction was a material element of the U.S. Treasury program to
revitalize the domestic automotive industry. It contemplated that substantially
all of GM's **core operating assets, which were essential for New GM to be**
**a profitable and competitive operating entity (including the capital stock**
of the majority of its subsidiaries), would be sold and transferred to the
Purchaser, which could immediately begin operations. A fundamental premise
of the U.S. Treasury program was to revive consumer confidence in GM
products and services for the benefit of GM's employees, its extended supplier
and dealer network, and the families and communities that depend on GM

operations. Knowing that GM's business would exist and be supported in the form of New GM, consumers would have **confidence that if they purchased a GM vehicle,** there would be a dealer network and U.S. Government support to assure parts, warranty service, and a market for future used GM vehicle trade-ins. Moreover, a viable company would help preserve and support jobs and benefits, not only for GM's employees, but also for the employees of GM's suppliers and dealers, all of which would help support the market for GM vehicles." **Dr. Sizemore contends the public is not aware of the details of these arrangements-the same as she and many others were not-particularly in the area of product liability. She formally requests counsel INCLUDE all parties declined compensation or court action regarding injuries as well as all parties negatively affected by the Bankruptcy.**

62. "the 363 Transaction was the **only remaining and viable alternative** to save GM's operations and prevent the immediate liquidation of GM and the catastrophic impact on the economy that would result from the loss of hundreds of thousands of jobs if the GM assets and business were not sold and transferred in accordance with the MSPA..." **It appears the Courts allowed the Debtors to focus on the salvation of the jobs for the employees who built the product that did not perform as expected and resulted in death or injury to consumer parties, but has rejected claims by the injured parties themselves and possibly future injured parties because there is no evidence to support the "New" GM will take responsibility for product**

**liability for an occurrence after July, 2009 and this Objecting party owns
and is paying for a 2007 model Silverado truck.**

63. "Many of the properties that are owned by MLC are old industrial properties
   that have a need for substantial environmental remediation. It is difficult to
   redevelop such kinds of property unless environmental remediation has been
   completed or the buyer otherwise can be satisfied that adequate funding and
   procedures are in place for As of July 30, 2010, MLC executed an agreement
   to sell 100% of its shares in GM Strasbourg to General Motors Automotive
   Holdings, S.L., a wholly-owned subsidiary of New GM. The closing is
   scheduled to occur prior to September 30, 2010.... necessary environmental
   remediation. One of the key aspects of developing the Plan has been
   satisfactory completion of the work necessary to provide this assurance. In
   preparation for assuming management of MLC, the work on assessing
   properties began before the 363 Transaction was finalized. Since that time,
   environmental staff at MLC and three of the consultants the Debtors
   retained..." **It is amazing the amount of money allotted to this concern
   how the "New" GM is released financially from this-they just purchased
   what would not be expensive to complete apparently-leaving the "New"
   GM with more funds for operation, but not to the injured parties.**

64. "363 Transaction. On June 1, 2009, immediately after commencing the
   Chapter 11 Cases, the Debtors filed a motion with the Bankruptcy Court to
   approve the sale of substantially of their assets to a U.S. Treasury-sponsored
   Purchaser, NGMCO, Inc. n/k/a General Motors, LLC ("**New GM**") pursuant

to sections 105(a), 363, and 365 of the Bankruptcy Code (the "**363 Motion**")
in consideration of a purchase price of over $90 billion (the "**Sale**"). As
discussed above, the Debtors filed the 363 Motion to preserve the going
concern value of GM's assets and business. The Purchaser, in return, would
acquire the subject assets, assume certain specified liabilities, and create a
New GM free of any entanglement with the Debtors' Chapter 11 Cases." **Dr.
Sizemore understands this to allow the Debtors and the Purchasers to
decide between themselves value of assets, etc, and assume only certain
debts and minimize the injured claims.**

65. "Numerous objections to the Sale were served and considered at the sale
hearing. **No other offers** of any kind were received by GM. **No alternative** to
the Sale was proffered, nor was it argued that the Sale was not in GM's best
interests." **Again, it is apparent that everyone can see this company is not
truly viable and this Objecting party contends this type of bankruptcy
should not be allowed to have occurred while not addressing the product
liability issues which should be paramount in matters relating to a
company that manufactures automobiles for revenue.**

66. "the 363 Transaction was **the only viable means** of preserving and
maximizing GM's value. There **was no other option**, as the only alternative
to an immediate Sale was liquidation. Only the U.S. Treasury was prepared to
finance the administration of the…" **It appears the ONLY option was to
avoid the possible millions of dollars required to address injured parties
whose lives have been ended or permanently altered as a result of alleged**

product failure. It is Dr. Sizemore's belief that all parties to GM should
be court ordered to visit the homes of the injured parties alleging injuries
due to product failure to see them and how they are challenged each day
in wheelchairs, etc and tell them how this was the ONLY way they could
stay in business and fly the country in private jets and maintain their
retirements, etc...

67. "The Bankruptcy Court found that the MSPA was the product of intense,
good-faith negotiations between the Debtors and their key stakeholders,
including the U.S. Treasury and the UAW." **It appears some parties should
be very happy with the terms of the bankruptcy, however, counsel for
GM/Motors Liquidation should be required to disclose each and every
party negatively affected by the process as a matter of public record and
presenting the entire truth about the process.**

68. "GM produced several hundred thousand pages of documents and responded
to dozens of interrogatories. Objectors deposed three witnesses. An
evidentiary hearing was held before the Bankruptcy Court..." **Dr. Sizemore
apologizes she is unable to locate these documents for viewing-which she
realizes may contain some information she presently seeks and may have
been disclosed all along.**

69. "Notice of the Bar Dates was given as required. The time within which to file
claims against the Debtors has expired. To date, over 70,000 proofs of claim
have been filed against the Debtors." **How was notice of the Bar Dates
given? Dr. Sizemore knew nothing of this and was in litigation prior to**

**the closing of the Bar Dates. Counsel for GM has no proof of her being notified. This information does not include the specific outcomes of the proofs of claims.**

70. "…11 plan over the dissent of any class of claims or equity interests as long as the standards in section 1129(b) are met. This power to confirm a plan over dissenting classes – often referred to as "cram down" – is an important part of the reorganization process. It assures that no single group (or multiple groups) of claims or interests can block a restructuring that otherwise meets the requirements of the Bankruptcy Code and is in the interests of the other constituents in the case. The Debtors **reserve the right to seek confirmation** of the Plan **notwithstanding the rejection** of the Plan by any Class entitled to vote." **It appears the vote will not determine the acceptance of the plan?**

71. "that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date. 6. Injunction. On and after the Confirmation Date, all persons are permanently enjoined from commencing **or continuing** in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or **respecting any claim, debt, right, or cause of action of the Debtors** for which the Debtors or the GUC Trust Administrator retains sole and exclusive authority to pursue in accordance with the Plan. 7. Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers,

directors, or principals, shall be enjoined from taking any actions to interfere

with the implementation or consummation of the Plan." **This is confusing to**

**Dr. Sizemore and if it pertains to any actions of hers in the District Court**

**or in Ohio-other than product liability, she asserts this is not**

**constitutional and should have the language clarified to pertain only to**

**matters of bankruptcy and only Motors Liquidation and not other**

**matters or the "New" GM.**

72. "that the Plan "does not discriminate unfairly" and is "fair and equitable" as to

such Class and as to the impaired Classes of Claims and Equity Interests that

are deemed to reject the Plan, (ii) feasible, and (iii) in the "best interests" of

the holders of Claims and Equity Interests impaired under the Plan." **Dr.**

**Sizemore disagrees with the content here and claims the best interests of**

**the injured parties has been ignored.**

73. **"1.35 Causes of Action** means the Avoidance Actions and any and all

actions, causes of action, liabilities, obligations, rights, suits, damages,

judgments, claims, and demands whatsoever, whether known or unknown,

existing or hereafter arising, in law, equity, or otherwise, based in whole or in

part on any act or omission or other event occurring **prior** to the

Commencement Date or **during the course** of the Chapter 11 Cases,

including through the Effective Date, except to the extent the prosecution of

any Causes of Action are prohibited by the DIP Credit Agreement." **If this**

**section pertains to any of the Objecting party's appeal to the District**

**Court SDNY or to her Actions for Discovery in Medina, Ohio, she asserts**

she is permitted certain claims-just not a product liability claim against the "New" GM and bankruptcy does not retain jurisdiction over nonbankruptcy issues and counsel has not provided legal justification for anything contrary.

74. "9.3 Satisfaction and Waiver of Conditions. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decide that any of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such conditions is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the...." **If this section is stating any past actions are null and void, Dr. Sizemore asserts this is not legal and counsel has provided no law to support this and this plan was not in effect in the 'past' and all 'past' actions that were legal at the time of execution are evaluated by what law/orders were in place at the time of filing because no party is entitled to reach into the future to justify or change past filings.**

75. "10.6 Injunction. On and after the Confirmation Date, all persons are permanently enjoined from commencing or **continuing in any manner** any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any claim, debt, right, or cause of action of the Debtors for which the Debtors..." **This appears to "Old" GM and has**

nothing to do with "New" GM and legitimate action with "New" GM or it is in conflict with the 363 transaction-stating it will be 'business as usual.'

76. "12.13 Governing Law. Except to the extent the Bankruptcy Code or other U.S. federal law is applicable, or to the extent an Exhibit to the Plan or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof." **This appears illegal because "where no conflict of law exists, the Appellant alleges a Federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, see *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct 1020, 85 L. Ed. 1477 (1941); *Security Ins. Co. of Hartford v. Kevin Tucker & Associates Inc.*, 64 F. 3d 1001, 32 Fed. R. Serv. 3d 619, 1995 FED App. 0271P (6th Cir. 1995) indicating other States' laws may be applicable and valid. GM conducts business in each state, so it would follow they are required to comply with and should be able to be judged by individual states.**

## THE REQUESTED RELIEF SHOULD BE GRANTED

77. Dr. Sizemore respectfully requests the Bankruptcy Court consider all contents of this objection. Her personal issues with GM pertain to their honesty in filing this bankruptcy, however, on another personal note, she pleads with the Court to not hold it against her that she is not an attorney. The truth is that in her medical profession, care is provided every person-no matter what they

know or don't know. The medical teams she has worked with protect the

parties who are not able to protect themselves and she hopes the same with the

Court. The injured parties are helpless without the impartial court.

**NOTICE**

78. Notice of this Objection has been provided to all parties listed:

Clerk of the Bankruptcy Court and a Chambers copy to Judge Gerber United States
Bankruptcy Court SDNY One Bowling Green New York, New York 10004-1408
Harvey Miller Esq. Stephen Karotkin Esq. Joseph Smolinsky Esq. WEIL, GOTSHAL, &
MANGES LLP 767 Fifth Ave. New York, New York 10153 Attorneys for General
Motors, LLC The Debtors C/o Motors Liquidation Company, the Debtors 500
Renaissance Center Suite 1400 Detroit, Michigan 48243 Attn. Ted Stenger General
Motors, LLC, 400 Renaissance Center Detroit, Michigan 48265 Attn Lawrence S.
Buonomo Esq. Cadwalader, Wickersham & Taft One World Financial Center
New York, New York 10281Attorneys for the United States Dept. of the Treasury
Attn; John J. Rapisardi, Esq. The United States Dept of the Treasury
1500 Pennsylvania Ave. NW Room 2312 Washington, D.C. 20220
Attn. Joseph Samarias, Esq. Vedder Price, P.C. 1633 Broadway, 47th Floor
New York, New York 10019 Attorneys for Export Development Canada
Attn; Michael J. Edelman, Esq and Michael L. Schein, Esq. Kramer Levin Naftalis &
Frankel LLP 1177 Avenue of the Americas New York, New York 10036
Attorneys for the statutory committee of unsecured creditors
Attn; Thomas Moers Mayer, Esq, Robert Schmidt, Esq., Lauren Macksoud, Esq. and
Jennifer Sharret, Esq. The Office of the United States Trustee for the Southern District of
New York 33 Whitehall Street, 21st Floor New York, New York 10004 Attn; Tracy H.
Davis, Esq. The U.S. Attorney's Office S.D.N.Y 86 Chambers Street, Third Floor
New York, New York 10007 Attn: David S. Jones, Esq, and Natalie Kuehler, Esq.
Caplin & Drysdale, Chartered 375 Park Avenue, 35th Floor New York, New York 10152-
3500 Attorneys for the official committee of unsecured creditors holding asbestos related
claims Attn; Elihu Inselbuch, Esq and Rita C. Tobin Esq. One Thomas Circle, N.W. Suite
1100 Washington D.C. 20005 Attn; Trevor W. Swett III Esq and Kevin Maclay, Esq.
Stutzman, Bromberg, Esserman & Plifka, A Professional Corp. 2323 Bryan Street, Suite
2200 Dallas, Texas 75201 Attorneys for Dean M. Trafelet in his capacity as the legal
representative for future as bestos personal injury claimants Attn; Sander L. Esserman
Esq. and Robert T. Brousseau, Esq.

Dated October 9, 2010

Respectfully submitted,

Dr. Terrie Sizemore RN DVM