HEARING DATE AND TIME: October 26, 2010 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re** : **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY,** *et al.*, : **09-50026 (REG)**
 **f/k/a General Motors Corp.,** *et al.* :
:
 **Debtors.** : **(Jointly Administered)**
:
------------------------------------------------------------x

**RESPONSE OF WEIL, GOTSHAL & MANGES LLP**
**TO FEE EXAMINER'S REPORT AND STATEMENT**
**OF LIMITED OBJECTION TO THE THIRD INTERIM**
**FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("**WG&M**"), attorneys for Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), hereby responds to the Fee Examiner's Report and Statement of

Limited Objection to the Third Interim Fee Application of Weil, Gotshal & Manges LLP, dated

September 17, 2010 [Docket No. 6095] (the "**Report and Objection**"). On August 5, 2010,

WG&M filed the Third Application of Weil, Gotshal & Manges LLP, as Attorneys for the

Debtors, for Interim Allowance of Compensation For Professional Services Rendered and

Reimbursement of Actual and Necessary Expenses Incurred From February 1, 2010 Through

May 31, 2010 [**Docket No. 6554**] (the "**Third Interim Fee Application**").

<u>**The Fee Examiner's Report and Objection**</u>

1.      The following addresses the items raised in the Report and Objection.

<u>Billable Rates</u>

2.      At the beginning of each year, WG&M revises hourly rates of timekeepers

to match the new seniority of the attorneys.  WG&M also periodically adjusts its rates as do all

law firms.  The amounts of the increases reflect market rates of increase.  The billable rates for

timekeepers in these chapter 11 cases are no more than the billable rates for those same

timekeepers in non-bankruptcy matters.  Any billable rate increases seen here are applicable to

WG&M's non-bankruptcy clients.  Moreover, in its retention application, WG&M stated that its

billable rates are periodically adjusted.

<u>Review of Billing Records</u>

3.      Due to a computer error, the time entries under task code 060, which

covers time spent reviewing billable records, were not billed at a 50% discount per the Court's

prior interim ruling.  It was WG&M's intention, however, to bill these amounts at the discounted

rate and WG&M had no intention to diverge from this Court's prior ruling.  As reflected in the

Report and Objection, WG&M promptly notified the Fee Examiner that the adjustment would be

made resulting in a decrease of $86,772.50.  WG&M disagrees that an additional 25% reduction

is appropriate.  Such request for a further reduction does not comport with this Court's ruling.

This Court stated as follows:  ". . . I believe that under normal circumstances and going forward,

an adjustment of fifty percent, five-zero percent, as we do with travel time, would be appropriate." Tr. 07-06-2010 at 14: 16-19.

Fees for Investigating and Responding to the Fee Examiner and the U.S. Trustee

4.      The Fee Examiner has requested a 50% reduction for all fees incurred by WG&M in responding to inquiries and defending fee objections interposed by the Fee Examiner and the U.S. Trustee. Similar discounts have been sought from other professionals. The theory espoused to justify this request is the "American Rule" in litigation where each side is responsible for its own litigation costs. The Fee Examiner also cites to WG&M's "significant experience in bankruptcy cases and the nature of the guideline compliance issues this Court has addressed." WG&M does not believe that here, any reduction is warranted.

5.      We do not take issue with the Fee Examiner's role of ensuring compliance with the fee guidelines. And WG&M in the ordinary course is generally quick to resolve issues where departure from those guidelines has been identified. But the depth and breadth of the Fee Examiner's investigation and challenges require almost constant activity by WG&M in responding and makes resolution without Court intervention virtually impossible. The most significant challenges – such as the objection to WG&M's billable rates – go well beyond the issue of compliance with billing guidelines. To the best of WG&M's knowledge, other significant challenges by the Fee Examiner involve matters that have not previously been addressed by this Court in a manner that has resulted in a successful challenge.

6.      The only case in this district cited by the Fee Examiner for the "American Rule" being applied in a bankruptcy setting was a situation involving a challenge by a creditor when it could be argued it was inappropriate for a creditor to pay from its own pocket to challenge what it thought was excessive fees, only to be met with a law firm which could utilize

the unlimited funds of a debtor to mount a defense. *In re Brous*, 370 B.R. 563 (Bankr. S.D.N.Y. 2007). Other cases cited by the Fee Examiner similarly involve an objection by a creditor. *See, e.g., In re Teraforce Tech. Corp.*, 347 B.R. 838, 867 (Bankr. N.D. Tex. 2006); *In re Ahead Commc'ns Sys.*, Inc., No. 02-30574, 2006 WL 2722752 (Bankr. D. Conn. 2006). The instant case raises opposite considerations. The Fee Examiner has access to the vast resources of the Debtors and it would exert undue leverage on the professionals in these cases were the Fee Examiner given a blank check to pick apart every time entry and expense while the professionals incur a quarterly "penalty" for investigating and responding. This inevitably would lead to an effective automatic discount. Moreover, the Fee Examiner has no client directing its actions who can balance the cost of pursuing each objection with the benefits likely to be achieved. For this reason, the American Rule, even if it could be applied, would not be appropriate here.

7.      The professionals in this case have a duty to work efficiently, maximize the value of the estate, and comply with various established guidelines. WG&M and the other professionals have to date discharged those duties appropriately and should not be charged for a significant share of the overall administrative costs of having a Fee Examiner in these cases.

Time Increments

8.      WG&M believes that such time entries were properly recorded by the individual timekeeper and no reduction is appropriate. Nevertheless, for the subject time entries, WG&M would be prepared to apply a 10% discount consistent with this Court's prior ruling for a paralegal who no longer works for WG&M.

Block Billing

9.      The Fee Examiner's objection to block billing defies customary convention in billing procedures. Unlike the requirement to "delump" which involves a

separation of time entries for disparate activities, this challenge focuses on the separation of

single activities.  For example, the time entry "prepared for and participated on call with ____ re:

____" is a standard time entry regularly utilized by restructuring and other professionals,

historically without challenge.  The review of relevant materials just prior to a call or meeting,

typically comprising only a few minutes of review time, would put an unnecessary burden on

billing professionals.

10.     The purpose behind delumping is to allow third parties to consider the

reasonableness of time expended on a particular activity.  Permitting preparation time to be

included in a time entry for a meeting or a call does not detract from a third party's ability to

assess the reasonableness of the aggregate amount of time spent on that matter.  Accordingly, no

discount is appropriate here.

Vague Time Entries

11.     With respect to alleged vague time entries in WG&M's second interim fee

application, Judge Gerber indicated that ". . . the detail was for the most part satisfactory."  Tr.

07-06-2010 at 22.10-12.  Despite efforts to cause all WG&M attorneys to prepare activity

descriptions that the Fee Examiner, who is not intimately familiar with the matters, could fully

understand, the Fee Examiner still is not satisfied.  We have requested additional information

from the reporting timekeepers and offer the additional detail below except where noted for

privilege (additional description underlined):

    i.  M. Goodman:  More description of this time entry would reveal privileged
       information.

    ii.  R. Guy:

- 2/8:
    - Email communication with Dr. Vietze <u>re: upcoming meeting between BMW and MLC</u>
    - Conference with C. Cook <u>re: proposed MLC/BMW meeting</u>

- 3/26:
    - Call to and conference with C. Cook <u>concerning witness interviews and arrangements for same</u>

- 3/30:
    - Meet with S. Jenkins <u>concerning background facts and potential course of action with BMW</u>
    - Interview of J. Kiefer <u>concerning background facts and potential course of action with BMW</u>
    - Conference with C. Cook <u>concerning results of interviews</u>

- 3/31:
    - Confer with V. Beagles <u>concerning results of employee interviews and next steps in BMW litigation</u>

- 4/5:
    - Conference with V. Beagles <u>re: status, confidentiality agreement, anticipated third-party discussions, and other issues</u>

- 4/22:
    - Email communication to Mr. Atamian <u>to discuss effectuating agreement reached between clients</u>

- 4/26:
    - Confer with <u>opposing counsel S.Butler-Farkus re: interim settlement and dismissal</u>
    - Confer with C. Cook et al. <u>re: interim settlement and dismissal</u>
    - Confer with A. Koch et al <u>re: interim settlement and dismissal</u>

- 4/29:
    - Confer with S. Butler-Farkus <u>to communicate agreement to dismiss without prejudice</u>

- 5/11:
    - Review correspondence from <u>opposing counsel Mayer Brown re: time for responding to summons</u>
    - Review and respond to message from C. Cook <u>concerning new developments in settlement and sale discussions</u>
    - Conference call with A. Koch and C. Cook <u>concerning new developments in settlement and sale discussions</u>

iii. <u>R. Hatcher</u>:

- 2/1/10
  - o research re: trust structure <u>involving section 468(b) of the Internal Revenue Code and the preferred liquidating structure of a trust</u> (2.8 hours)
- 2/2/10
  - o research re: trust structure <u>involving section 468(b) of the Internal Revenue Code and the preferred liquidating structure of a trust</u> (1.2 hours)
- 2/3/10
  - o research re: trust structure <u>involving section 468(b) of the Internal Revenue Code and the preferred liquidating structure of a trust</u> (.3 hours)
- 2/22/10
  - o research re: trust structure <u>involving section 468(b) of the Internal Revenue Code and the preferred liquidating structure of a trust</u> (.4 hours)
- 2/26/10
  - o research re: trust structure <u>involving section 468(b) of the Internal Revenue Code and the preferred liquidating structure of a trust</u> (.2 hours)

iv. <u>S. Karotkin</u>: These time entries describe time spent reviewing and responding to various emails received on a daily basis. These time entries occurred prior to this Court's ruling on this issue on July 6, 2010. Therefore, it is inappropriate to penalize WG&M for these entries.

v. <u>E. Lederman</u>: Judge Gerber said that "follow up. . . when coupled with a description of what was being followed up. . . would not be materially deficient." Tr. 07-06-2010 at 21. 19-21. All these time entries provided a related description, and, hence, were not vague, by referring to the earlier time entry using the word "related" or "re:". For sake of clarity, the time entries have been reprinted below, with the addition of the related description which was referenced to by the word "related" or "re:" in the original time entry.

- 2/1//10
  - o related follow up <u>re: case hearing/calendar for February and March</u> calling various associates to get updates on their matters scheduled for hearing and to opposing counsel
- 2/2/10

- - related follow up <u>re: settlement of leveraged lease TIA claims</u> <u>including follow up calls with M. Terrien counsel to New GM,</u> <u>T. Lomaza counsel to Wells Fargo and reviewing revised</u> <u>settlement documents</u>
- 2/12/10
  - related follow up <u>re:  TIA claim negotiations and leveraged</u> <u>lease settlement</u> including <u>follow up calls with R. Smolev,</u> <u>counsel to Philip Morris Capital and D. Head of MLC</u>
- 3/23/10
  - related follow up <u>re: analysis of NUMMI 500MM claim</u> <u>including reviewing Proof of Claim and supplemental</u> <u>supporting documentation related thereto and call with M.</u> <u>McKane, counsel to NUMMI</u>
- 3/23/10
  - perform related follow up <u>re: NUMMI shareholders agreement</u> <u>including conference with A. Arons and reviewing emails re:</u> <u>same</u>
- 3/25/10
  - related follow up re: <u>GM Strasbourg issues including</u> <u> conference with C. Cook re: alternative sales and legal</u> <u>research re: french labor law issues</u>
- 4/8/10
  - related follow up <u>re: State Street</u> including conference with T. Morrow
- 4/12/10
  - related follow up <u>re: NUUMI discovery requests including TC</u> <u>with E. LAW and D. Head and L. Buonomo of New GM</u>
- 4/13/10
  - related follow up re: REMY 2004 requests <u>including TC with</u> <u>J. Wine and reviewing rejection motions related thereto</u>
- 4/15/10
  - follow up re: same <u>re: Toyota NUMMI $500MM proof of</u> <u>claim, shareholders agreement and assumed contracts including</u> <u>reviewing Proof of Claim and supplemental supporting</u> <u>documentation related thereto and call with M. McKane</u> <u>counsel to NUMMI and M. Smith of MLC</u>
- 4/21/10
  - follow up with various associates re: same <u>re: including calling</u> <u>various associates to get updates on their matters scheduled for</u> <u>hearing and to opposing counsel</u>
- 4/21/10
  - handle related follow up <u>re: CRA settlement re: payment of</u> <u>postpetition environmental services including TC with T.</u> <u>Goslin re: same</u>

- 4/22/10
  - related follow up <u>re: Suntrust claims against MLC relating to rejection of aircraft leases</u> including TC with conflicts counsel and D. Head of MLC
- 4/26/10
  - related follow up <u>re: forward metals pricing curves relating to pricing of $60MM proof of claim filed by Stillwater Mining Company</u> including reviewing financial reports regarding metals future pricing
- 4/27/10
  - related follow up <u>re: NUMMI $500MM proof of claim</u> including conference with E. Law and D. Head and reviewing supplemental supporting documentation relating to NUMMI proof of claim
- 4/29/10
  - related follow up <u>re: environmental contacts remaining with potential indemnity obligations</u> including conference with M. Smith and T. Goslin
- 5/24/10
  - related follow up and document review <u>re: claims of Alphera against MLC and New GM in Bill Heard litigation</u> including conference with opposing counsel

12.  <u>P. Schell</u>:  This work by a paralegal involved organizing and updating the database of Motors Liquidation Company entities with respect to resolutions, certificates of dissolutions and other Delaware filings.

<u>Legal Research</u>

13.  Fees incurred in these time entries were appropriate and necessary and should not be subject to a reduction.  Below is a more fulsome description of the legal research tasks, though WG&M believes the initial descriptions were adequately descriptive and warrant no reduction in fees.

i.  <u>P. Falabella</u>:  This research involved analyzing the vacated judgment for the 363 asset sale order in the Chrysler chapter 11 cases and its applicability, if any, to these chapter 11 cases, namely with respect to the appeals of the 363 asset sale in these chapter 11 cases.

ii.  <u>M. Morton</u>:  This research involved answering concerns raised by the U.S. Government and the client regarding the viability of a single trust structure for environmental liabilities, and was aimed at providing the states with certainty that the money in the trust would be properly protected.  The

memorandum was detailed and involved analysis of trust law, successor liability law, and tort law.

Transient Billers

14.     These chapter 11 cases are complex and involve a large number of professionals.  The demands of the client in setting tight deadlines and the preparation and filing of dozens of pleadings per month require the periodic expansion and contraction in work teams in order to meet those demands in the most efficient and cost effective manner possible for the client.  These timekeepers provided valuable services to these chapter 11 cases, and provided helpful analysis and expertise, albeit at only discrete points in the case.  The Debtors benefited from these services, and the fees are appropriate.  During the engagement time period, every timekeeper is not fully engaged but the hours properly reflect the time devoted.  Nevertheless, WG&M is prepared to accept a $5,000 deduction for any inefficiencies caused by these timekeepers.

Clerical and Administrative Tasks

15.     The tasks described in these time entries required the level of analysis and case-knowledge that a paralegal provides.  Furthermore, many of the tasks were part of larger assignments, requiring the skill of a paralegal to handle the entire assignment.  Therefore, it would be inappropriate to have a secretary perform these services.  Activities such as designating documents for confidentiality and pulling docket information are clearly activities that are appropriate for paralegals.  Moreover, managing WG&M's professional liability dictates that certain activities be completed by para-professionals and not by secretaries.

Double Billing

16.    None of these time entries were double-billed, but rather address different

activities though with a similar description.

    i. <u>R. Berkovich</u>:  Due to a data entry error, the 0.6 time entry should have read "participate in weekly update call."  This was for a separate call from the weekly <u>real estate</u> meeting by phone.  Hence, these entries are not duplicative.

    ii. R. Brooks:

        1. <u>Respond to calls from creditors</u>:  Two time entries were notated because two calls were made, one each to separate creditors.

        2. <u>Review March monthly operating report</u>:  These two time entries should have been combined, but they do represent that two separate time periods were spent in the same day reviewing the March monthly operating report.

    iii. T. Goslin

        1. <u>Draft email to client re: same</u>:  Two time entries were notated because two emails were drafted, though each email concerned the same topic which was the Wilmington sale agreement.

<u>Non-Working Travel Time</u>

17.    WG&M agrees that this was a clerical error, and the identified time entries

should have been billed at 1/2 the rate, as non-working travel time.  This results in a reduction of

$726.25.

<u>Pre-Retention Expenses</u>

18.    This was a clerical error, and WG&M agrees that the $13 cab ride should

be written off.

<u>Administrative Expenses</u>

19.    WG&M has agreed to write off the cost for spiral binding, velobinding,

and coil binding during the application period.

<u>Meal Expenses</u>

20.    The chart that follows reflects the additional individuals that shared in meal expenses, justifying compliance with the $20 per person guideline.  In the last instance, WG&M has not yet received confirmation of all people attending the meal.  Due to the small dollar amounts involved, WG&M will agree to write off those amounts that may be in excess of the $20 per person guideline, resulting in a total reduction of reimbursable expenses of $152.42. WG&M believes only the amounts listed in the column entitled "Amount in Excess of $20/Attendee" should be written off.

| Disbursement ID | Date | # of Attendees | Attendees | Amount | Amount in Excess of $20/Attendee |
|---|---|---|---|---|---|
| 15814965 | 3//10 | 4 | P. Druon, L. Petizon, C. Cook, and S. Jenkins | $60.00 | $0.00 |
| 15784805 | 1/20/10 | 8 | D. Berz, J. Redwine, T. Stenger, M. Dowd, A. Tenenbaum, P. Casey, N. Kuehler, M. Morton | $117.80 | $0.00 |
| 15788119 | 2/3/10 | 3 | D. Berz, J. Redwine, M. Dowd | $152.86 | $92.86 |
| 15915667 | 3/31/10 | 1 | A. Vermynck] | $24.91 | $4.91 |
| 15865041 | 3/2/10 | 6 | D. Berz, J. Redwine, T. Stenger, J. Selzer, A. Fu, M. Dowd | $87.00 | $0.00 |
| 15865035 | 3/9/10 | 4 | D. Berz, J. Redwine, T. Morrow, J. Selzer | $71.60 | $0.00 |
| 15865034 | 3/10/10 | 5 | D. Berz, M. Dowd, J. Redwine, T. Goslin, M. Morton | $54.00 | $0.00 |
| 15921259 | 4/13/10 | 7 | D. Berz, A. Koch, J. Redwine, T. Stenger, D. McMurtry, G. Hansen, S. Gaito | $129.86 | $0.00 |
| 15921256 | 4/12/10 | 3 | D. Berz, T. Goslin, M. Morton | $54.00 | $0.00 |
| 15968258 | 5/27/10 | 1 | D. Berz | $74.64 | $54.65 |

Local Transportation Expenses

21.    Local Transportation:  WG&M believes that it has substantially complied with billing guidelines and prior Court direction on local transportation.  In some instances, the records reflect a single time entry for multiple rides that are submitted in a single expense report

and the multiple dates are reflected in the billing summary reports. The "amount" charged for a given local transportation disbursement entry often includes multiple charges for taxi rides, and the multiple days are listed. Yet, the Fee Examiner's objection seeks to deduct the <u>entire</u> amount, instead of deducting only the amount relating to a day when fewer than six hours were billed. Also, some of the days were on a weekend, and WG&M believes that taxi rides required for work on a weekend are fully compensable, and not subject to a six hour time limit. The dates where the attorneys billed at least 6 hours or when the date is on a weekend are circled on **Exhibit "A"** annexed hereto. Based on the foregoing, WG&M believes these amounts should not be written off.

22.     <u>Druon Local Transportation</u>: The five transportation expense entries totaling $659.83 cited to by the Fee Examiner involve taxi expenses on March 1, 2, 3, 5, 8, 10, 24, and 25. The Debtors will write off any amount for a given day where Mr. Druon did not bill at least 6 hours. The taxi expense on March 8 was for 141.02 euros ($191.79 at 3/8/10 exchange rate of 1.36), actually included 3 separate taxi rides for Mr. Druon and the client in connection with a trip to Strasbourg, and Mr. Druon billed 9.2 hours that day. Mr. Druon did not bill more than 6 hours on the other days. Therefore, the Debtors will write off $468.04 ($659.83 - $191.79).

### The U.S. Trustee's Response

23.     The response filed by the U.S. Trustee requests, as before, a 10% holdback on fees. WG&M has no objection to this holdback at this time although the Debtors, with the assistance of WG&M, are making substantial progress in reaching the milestones established by this Court, after which the Court has indicated it would likely release the holdbacks.

**Conclusion**

24.   WG&M has expended great efforts in preparing applications that reflect

prior rulings of this Court.  Many of the rulings require manual adjustments.  We will continue

striving to ensure that we comply with this Court's rulings after a judicial determination that

adjustments are warranted and appropriate.

WHEREFORE WG&M respectfully requests that the compensation and

reimbursement requested in the Third Interim Fee Application be allowed, subject to the

adjustments WG&M has agreed to, and that it be granted such other and further relief as is just.

Dated: New York, New York
        October 19, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

## Local Transportation (Fee Examiner's Exhibit "R")

EXHIBIT N

Local Transportation
Weil, Gotshal & Manges

| Invoice Number | Entry Number | Invoice Entry Date | Timekeeper ID | Timekeeper Name (based on ID) | Passenger Name (if different) | Amount | Description | Firm Category | Date of Service | Time of Service (hh:mm) | Total Hours Billed (for Relevant Day) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10412961 | 1559 | 02/04/10 | 80 | Stephen Karotkin | | $ 27.60 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100203, DATE: 2/4/2010 - NY PETTY CASH 02/03/10 S. KAROTKIN - TAXIS HOME 12/15, 01/11, 01/28, 02/01/10 | 11 | Multiple | not provided | 3.1; 4.0; 4.2; 4.8 |
| 10412961 | 1605 | 02/05/10 | 80 | Stephen Karotkin | | $ 8.00 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100208, DATE: 2/5/2010 - NY PETTY CASH 02/08/10, S. KAROTKIN - TAXI HOME, 02/01/10 | 11 | 02/01/10 | not provided | 4.8 |
| 10412961 | 1664 | 02/17/10 | 80 | Stephen Karotkin | | $ 29.60 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100217, DATE: 2/17/2010 - NY PETTY CASH 02/17/10 S. KAROTKIN - TAXIS HOME, 02/08, 02/11, 02/15/10 | 11 | Multiple | not provided | 3.8; 1.9; 1.8; 1.4 |
| 10411188 | 1427 | 03/24/10 | 487 | Michele J. Meises | | $ 43.13 | TAXI SERVICE - LEGAL VENDOR: XYZ INVOICE# 1380234 DATE: 3/17/2010 XYZ 1010220558 781 MICHELE MEISES 0487 RIDE DATE: 2010-03-09 FROM: M 767 S AVE TO: QU 192 ST RIDE TIME: 20:10 | 14 | 03/09/10 | 20:10 | 5.9 |
| 10411188 | 1653 | 05/17/10 | 487 | Michele J. Meises | | $ 49.23 | TAXI SERVICE - LEGAL VENDOR: XYZ INVOICE# 1385197 DATE: 5/5/2010 XYZ 1010225650 727 MICHELE MEISES 0487 RIDE DATE: 2010-04-22 FROM: M 767 S AVE TO: QU 192 ST RIDE TIME: 20:19 | 14 | 04/22/10 | 20:19 | 5.8 |
| 10411188 | 1621 | 05/14/10 | 487 | Michele J. Meises | | $ 43.13 | SKYLINE TAXI - LEGAL VENDOR: SKYLINE CREDIT RIDE, INC INVOICE# 611138 DATE: 3/5/2010 SKYLINE 1010218904 224 MEISES 'VIP MICHELE 0487 RIDE DATE: 2010-02-24 FROM: M 767 S AVE TO: QU 192 ST RIDE TIME: 20:21 | 014B | 02/24/10 | 20:21 | 5.5 |
| 10411188 | 1665 | 05/20/10 | 1200 | Pablo Falabella | | $ 36.78 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100519, DATE: 5/20/2010 - NY PETTY CASH 05/19/10 D.FALABELLA - TAXIS HOME, 05/06, 05/10, 05/13, 05/17/10 | 11 | Multiple | not provided | 7.8; 10.8; 10.5; 5.2 |
| 10411188 | 1871 | 05/28/10 | 1200 | Pablo Falabella | | $ 24.06 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100528, DATE: 5/28/2010 - NY PETTY CASH 05/28/10 P.FALABELLA - TAXIS HOME, 05/25, 05/26, 05/27/10 | 11 | Multiple | not provided | 11.5; 0.7; 10.0 |
| 10411188 | 1627 | 05/14/10 | 1455 | Joonbeom Pae | | $ 56.08 | SKYLINE TAXI - LEGAL VENDOR: SKYLINE CREDIT RIDE, INC. INVOICE# 611163 DATE: 3/12/2010 SKYLINE 1010220672 257 PAE JOONBEOM 1455 RIDE DATE: 2010-03-04 FROM: M 767 S AVE TO: NJ WEST NEW YORK AVENUE AT PORT IMPER RIDE TIME: 22:58 | 014B | 03/04/10 | 22:58 | 5.8 |
| 10412961 | 1480 | 01/31/10 | 1531 | no fee entries | A. S. Noury | $ 4.92 | TAXI SERVICE - LEGAL VENDOR: TAXI G7, INVOICE# 100110127, DATE: 1/31/2010 TAXIS USED BY A S NOURY | F014 | not provided | not provided | |
| 10412961 | 1481 | 01/31/10 | 1531 | no fee entries | A. S. Noury | $ 4.96 | TAXI SERVICE - LEGAL VENDOR: TAXI G7, INVOICE# 100120127, DATE: 1/31/2010 COURSES TAXIS PAYEES DS LE TAXI JANVIER 2010 TAXIS AS NOURY | F014A | not provided | not provided | |
| 10412961 | 1610 | 02/11/10 | 3331 | Ronit J. Berkovich | | $ 50.84 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100209, DATE: 2/11/2010 - NY PETTY CASH 02/09/10 R. BERKOVICH - TAXIS HOME, 01/11, 01/20, 01/28, 02/01/10 | 11 | Multiple | not provided | 3.5; 2.5; 3.0 |
| 10412961 | 1658 | 02/16/10 | 3331 | Ronit J. Berkovich | | $ 10.92 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100212, DATE: 2/16/2010 NY PETTY CASH 02/12/10 R BERKOVICH - TAXI HOME, 02/10/10 | 11 | 02/10/10 | not provided | 4.4 |
| 10412961 | 1597 | 02/08/10 | 3628 | Max A. Goodman | | $ 15.00 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE# 20100205, DATE: 2/8/2010 - NY PETTY CASH 02/05/10. M. GOODMAN - TAXIS HOME, 02/01, 07/02/10 | 11 | Multiple | not provided | 3.4; 2.9 |

EXHIBIT N

Local Transportation
Weil, Gotshal & Manges

| Invoice Number | Entry Number | Invoice/ Service Entry Date | Timekeeper ID | Timekeeper Name (Based on ID) | Passenger Name (if different) | Amount | Description | Firm Category | Date of Service | Time of Service (military) | Total Hours Billed Per Relevant Day |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10412961 | 1602 | 02/08/10 | 5318 | Andrew Arons | Mel Maravilla | $ 68.74 | SKYLINE - SUPPORT STAFF VENDOR: SKYLINE CREDIT RIDE, INC. INVOICE#: 602985 DATE: 12/18/2009 SKYLINE 1009210758 30 MARAVILLA MEL 6563 RIDE DATE 2009-12-19 FROM: M TO: QU RIDE TIME: 21:44 | 0158 | 12/10/09 | 21:44 | 3.0 |
| 10412961 | 1531 | 02/04/10 | 5334 | Russell Brooks | | $ 46.00 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100202; DATE: 2/4/2010 - NY PETTY CASH 02/02/10. R. BROOKS - TAXIS TO & FROM OFFICE 01/30, 02/01/10 | 11 | Multiple | not provided | 2.6, 12.0 |
| 10412961 | 1660 | 02/17/10 | 5334 | Russell Brooks | | $ 94.16 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100216; DATE: 2/17/2010 - NY PETTY CASH 02/16/10. R. BROOKS - TAXIS HOME 02/05, 02/07, 02/08, 02/07, 02/06/10 | 11 | Multiple | not provided | 8.6, 11.0, 1.7, 6.7, 1.7 |
| 10412961 | 1663 | 02/17/10 | 5334 | Russell Brooks | | $ 66.05 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100217; DATE: 2/17/2010 - NY PETTY CASH 02/17/10. R BROOKS - TAXIS HOME 02/08, 02/12, 02/11, 02/10/10 | 11 | Multiple | not provided | 8.2, 5.2, 10.4, 11.0 |
| 10412961 | 1615 | 02/11/10 | 5460 | R. Todd T. Hatcher | | $ 8.04 | LOCAL TRANSPORTATION VENDOR: HATCHER, R. TODD INVOICE#: CREX00252B200211201B DATE: 2/11/2010 TAXI/CAR SERVICE FEB 01, 2010 - RESEARCH RE: TRUST STRUCTURE. - FROM/TO: OFFICE/HOME | 11 | 02/01/10 | not provided | 4.0 |
| 10412961 | 1616 | 02/11/10 | 5460 | R. Todd T. Hatcher | | $ 10.30 | LOCAL TRANSPORTATION VENDOR: HATCHER, R. TODD INVOICE#: CREX00252B200211201B DATE: 2/11/2010 TAXI/CAR SERVICE FEB 02, 2010 - RESEARCH RE: TRUST STRUCTURE. - FROM/TO: OFFICE/HOME | 11 | 02/02/10 | not provided | 2.6 |
| 10412961 | 1713 | 02/23/10 | 5492 | Peter M. Milligan | | $ 10.00 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100223; DATE: 2/23/2010 - NY PETTY CASH 02/23/10 - P. MILLIGAN - TAXI HOME 2/09/10 | 11 | 02/09/10 | not provided | 4.8 |
| 10412961 | 1804 | 02/26/10 | 5560 | Brianna N. Benfield | | $ 6.00 | TAXI SERVICE - LEGAL VENDOR: WG&M LLP - DC PETTY CASH; INVOICE#: 20100116; DATE: 1/16/2010 REPLENISH PETTY CASH BATCH 1/16/2010 - 2/26/2010 - TAXI WGM/RESIDENCE (B. BENFIELD) | 14 | not provided | not provided | |
| 10412961 | 1805 | 02/26/10 | 5560 | Brianna N. Benfield | | $ 6.00 | TAXI SERVICE - LEGAL VENDOR: WG&M LLP - DC PETTY CASH; INVOICE#: 20100116; DATE: 1/16/2010 REPLENISH PETTY CASH BATCH 1/16/2010 - 2/26/2010 - TAXI WGM/RESIDENCE RE: WORK LATE (B. BENFIELD) | 14 | not provided | not provided | |
| 10412961 | 1680 | 02/19/10 | 5673 | Chelsea Rosen | | $ 10.50 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100219; DATE: 2/19/2010 - NY PETTY CASH 02/19/10. C. ROSEN - TAXI HOME, 02/11/10 | 11 | 02/11/10 | not provided | 1.0 |
| 10412961 | 1718 | 02/24/10 | 5673 | Chelsea Rosen | | $ 10.00 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100224; DATE: 2/24/2010 - NY PETTY CASH 02/24/10. C. ROSEN - TAXI HOME, 02/23/10 | 11 | 02/23/10 | not provided | 5.4 |
| 10412962 | 1694 | 01/29/10 | 6998 | Alice Brogi | | $ 18.28 | TAXI SERVICE - LEGAL VENDOR: BROGI ALICE; INVOICE#: EXPENSE-05/02/2010, DATE: 1/29/2010 - NOTE DE FRAIS TAXIS A. BROGI / EXPENSE REPORT | F014 | not provided | not provided | |
| 10412963 | 1593 | 03/19/10 | 6998 | Alice Brogi | | $ 51.62 | TAXI SERVICE - LEGAL VENDOR: BROGI ALICE; INVOICE#: EXPENSE1903; DATE: 3/19/2010 - NOTE DE FRAIS A. BROGI - EXPENSE REPORT TAXIS | F014 | not provided | not provided | |
| 10412963 | 1608 | 03/30/10 | 700A | Marie Robineau (no fee entries) | | $ 20.12 | TAXI SERVICE - LEGAL VENDOR: ROBINEAU MARIE; INVOICE#: EXPENSE303010, DATE: 3/30/2010 - NOTES DE FRAIS M ROBINEAU - EXPENSE REPORT TAXI | F014 | not provided | not provided | |
| 10412961 | 1649 | 02/12/10 | 7364 | Mona V. Mehta | | $ 7.24 | LOCAL TRANSPORTATION VENDOR: WG&M LLP - PETTY CASH NY, INVOICE#: 20100211; DATE: 2/12/2010 - NY PETTY CASH 02/11/10. M. MEHTA - TAXI HOME 02/09/10 | 11 | 02/09/10 | not provided | 0.0 |

Total $ 837.30

Page N. 2 of 2