# EXHIBIT A

PUBLIC LAW 111–117—DEC. 16, 2009              123 STAT. 3219

(i) EXECUTIVE AGENCY DEFINED.—In this section, the term "executive agency" has the meaning given the term in section 4 of the Office of Federal Procurement Policy Act (41 U.S.C. 403).

SEC. 744. (a) The adjustment in rates of basic pay for employees under the statutory pay systems that takes effect in fiscal year 2010 under section 5303 of title 5, United States Code, shall be an increase of 1.5 percent, and the overall average percentage of the adjustments taking effect in such fiscal year under sections 5304–5304a of such title 5 shall be an increase of 0.5 percent (with comparability payments to be determined and allocated among pay localities by the President). Adjustments under the preceding sentence shall also apply to civilian employees in the Department of Homeland Security and in the Department of Defense. All adjustments under this subsection shall be effective as of the first day of the first applicable pay period beginning on or after January 1, 2010. [President. Determination. 5 USC 5303 note. Applicability. Effective date.]

(b) Notwithstanding section 710, the adjustment in rates of basic pay for the statutory pay systems that take place in fiscal year 2010 under sections 5344 and 5348 of title 5, United States Code, shall be no less than the percentages in subsection (a) as employees in the same location whose rates of basic pay are adjusted pursuant to the statutory pay systems under section 5303 and 5304–5304a of title 5, United States Code. Prevailing rate employees at locations where there are no employees whose pay is increased pursuant to sections 5303 and 5304–5304a of such title 5 and prevailing rate employees described in section 5343(a)(5) of such title 5 shall be considered to be located in the pay locality designated as "Rest of U.S." pursuant to section 5304 of such title 5 for purposes of this subsection.

(c) Funds used to carry out this section shall be paid from appropriations, which are made to each applicable department or agency for salaries and expenses for fiscal year 2010.

SEC. 745. (a) Section 5538 of title 5, United States Code, is amended by striking subsection (b) and inserting the following:

"(b) Amounts under this section shall be payable with respect to each pay period (which would otherwise apply if the employee's civilian employment had not been interrupted)—

"(1) during which such employee is entitled to re-employment rights under chapter 43 of title 38 with respect to the position from which such employee is absent (as referred to in subsection (a)); and

"(2) for which such employee does not otherwise receive basic pay (including by taking any annual, military, or other paid leave) to which such employee is entitled by virtue of such employee's civilian employment with the Government.".

(b) The amendments made by this section shall take effect on the first day of the first applicable pay period beginning on or after the date of the enactment of this Act. [Effective date. 5 USC 5538 note.]

SEC. 746. Except as expressly provided otherwise, any reference to "this Act" contained in any title other than title IV or VIII shall not apply to such title IV or VIII.

SEC. 747. (a) DEFINITIONS.—For purposes of this section the following definitions apply:

(1) The term "covered manufacturer" means—

(A) an automobile manufacturer in which the United States Government has an ownership interest, or to which the Government has provided financial assistance under



123 STAT. 3220          PUBLIC LAW 111–117—DEC. 16, 2009

title I of the Emergency Economic Stabilization Act of 2008; or

(B) an automobile manufacturer which acquired more than half of the assets of an automobile manufacturer in which the United States Government has an ownership interest, or to which the Government has provided financial assistance under title I of the Emergency Economic Stabilization Act of 2008.

(2) The term "covered dealership" means an automobile dealership that had a franchise agreement for the sale and service of vehicles of a brand or brands with a covered manufacturer in effect as of October 3, 2008, and such agreement was terminated, not assigned in the form existing on October 3, 2008 to another covered manufacturer in connection with an acquisition of assets related to the manufacture of that vehicle brand or brands, not renewed, or not continued during the period beginning on October 3, 2008, and ending on December 31, 2010.

(b) A covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued. Such continuation, reinstatement, or addition shall be limited to each brand owned and manufactured by the covered manufacturer at the time the arbitration commences, to the extent that the covered dealership had been a dealer for such brand at the time such dealer's franchise agreement was terminated, not assigned, not renewed, or not continued.

Deadline.

(c) Before the end of the 30-day period beginning on the date of the enactment of this Act, a covered manufacturer shall provide to each covered dealership related to such covered manufacturer a summary of the terms and the rights accorded under this section to a covered dealership and the specific criteria pursuant to which such dealer was terminated, was not renewed, or was not assumed and assigned to a covered manufacturer.

Deadlines.

(d) A covered dealership may elect to pursue the right to binding arbitration with the appropriate covered manufacturer. Such election must occur within 40 days of the date of enactment. The arbitration process must commence as soon as practicable thereafter with the selection of the arbitrator and conclude with the case being submitted to the arbitrator for deliberation within 180 days of the date of enactment of this Act. The arbitrator may extend the time periods in this subsection for up to 30 days for good cause. The covered manufacturer and the covered dealership may present any relevant information during the arbitration. The arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer. The factors considered by the arbitrator shall include (1) the covered dealership's profitability in 2006, 2007, 2008, and 2009, (2) the

PUBLIC LAW 111–117—DEC. 16, 2009          123 STAT. 3221

covered manufacturer's overall business plan, (3) the covered dealership's current economic viability, (4) the covered dealership's satisfaction of the performance objectives established pursuant to the applicable franchise agreement, (5) the demographic and geographic characteristics of the covered dealership's market territory, (6) the covered dealership's performance in relation to the criteria used by the covered manufacturer to terminate, not renew, not assume or not assign the covered dealership's franchise agreement, and (7) the length of experience of the covered dealership. The arbitrator shall issue a written determination no later than 7 business days after the arbitrator determines that case has been fully submitted. At a minimum, the written determination shall include (1) a description of the covered dealership, (2) a clear statement indicating whether the franchise agreement at issue is to be renewed, continued, assigned or assumed by the covered manufacturer, (3) the key facts relied upon by the arbitrator in making the determination, and (4) an explanation of how the balance of economic interests supports the arbitrator's determination. *[Determination. Deadline.]*

(e) The arbitrator shall be selected from the list of qualified arbitrators maintained by the Regional Office of the American Arbitration Association (AAA), in the Region where the dealership is located, by mutual agreement of the covered dealership and covered manufacturer. If agreement cannot be reached on a suitable arbitrator, the parties shall request AAA to select the arbitrator. There will be no depositions in the proceedings, and discovery shall be limited to requests for documents specific to the covered dealership. The parties shall be responsible for their own expenses, fees, and costs, and shall share equally all other costs associated with the arbitration, such as arbitrator fees, meeting room charges, and administrative costs. The arbitration shall be conducted in the State where the covered dealership is located. Parties will have the option of conducting arbitration electronically and telephonically, by mutual agreement of both parties. The arbitrator shall not award compensatory, punitive, or exemplary damages to any party. If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales and service agreement. After executing the sales and service agreement and successfully completing the operational prerequisites set forth therein, a covered dealership shall return to the covered manufacturer any financial compensation provided by the covered manufacturer in consideration of the covered manufacturer's initial determination to terminate, not renew, not assign or not assume the covered dealership's applicable franchise agreement. *[Deadline. Contracts.]*

(f) Any legally binding agreement resulting from a voluntary negotiation between a covered manufacturer and covered dealership(s) shall not be considered inconsistent with this provision and any covered dealership that is a party to such agreement shall forfeit the right to arbitration established by this provision.

(g) Notwithstanding the requirements of this provision, nothing herein shall prevent a covered manufacturer from lawfully terminating a covered dealership in accordance with applicable State law.