# EXHIBIT B
# PART 2

MOTORS LIQUIDATION COMPANY, et al.

Page 43

1    that prevent cities from engaging in bidding wars to lure auto

2    dealers and other large sales techs generating businesses to

3    relocate them from one city to another.  The owner of Rally,

4    one Mr. Mayle, provided an affidavit on behalf of Palmdale in

5    that action.  New GM argues that Rally, through its agent, Mr.

6    Mayle, is providing assistance in litigation against New GM and

7    is interfering with the establishment of a new dealership in

8    violation of the wind-down agreement.

9            Rally argues that the arbitrator was bound by the

10   Dealer Arbitration Act to either reject or accept the entire

11   dealer contract and that the arbitrator exceeded his authority

12   by not reinstating the Chevy brand as well.  Thus, on August

13   13, 2010, Rally filed suit in California district court seeking

14   to vacate or modify the arbitration award and to prevent

15   termination of his Chevy dealer agreement though presumably

16   wishing to maintain intact the other aspects of the

17   arbitrator's award which maintained his dealerships for the

18   other three brands, Cadillac, Buick and GMC.

19           Rally alleges, in substance, that the arbitrator's

20   award in not giving him a complete victory was erroneous as a

21   matter of law in its failure to accept its position that all of

22   the separate brands had to be considered together in the

23   species of double or nothing.  He has not alleged that the

24   arbitration award was the result of bribery, fraud, corruption,

25   manifest disregard of settled law or any other ground that

MOTORS LIQUIDATION COMPANY, et al.

Page 44

1    would be a basis for vacating an arbitration award if the

2    Federal Arbitration Act applied.

3        I'll now turn to my conclusions of law.  Turning

4    first to jurisdiction and within the jurisdiction umbrella,

5    first, to subject matter jurisdiction.  First, it's plain that

6    the district courts and bankruptcy courts in this district have

7    subject matter jurisdiction over this controversy.  The

8    applicable subject matter jurisdiction statute is 28 U.S.C.,

9    Section 1334, the section of the judicial code that follows the

10   judicial code sections relating to federal question, diversity

11   and admiralty jurisdiction.  1334 deals with subject matter

12   jurisdiction with respect to bankruptcy cases and proceedings.

13   That section provides, in relevant part, subsection (b), with

14   exceptions not relevant here, "the district courts shall have

15   original but not exclusive jurisdiction of all civil

16   proceedings arising under title 11, or arising in or related to

17   cases under title 11".

18       Rally addresses the issue of "related-to"

19   jurisdiction under 1334 but that isn't the relevant subject

20   matter jurisdiction issue.  Rather it's the "arising in" prong

21   of 1334 where New GM relies on an order I entered last year in

22   this case under which this Court retained exclusive

23   jurisdiction in paragraph 71(f) to "resolve any disputes with

24   respect to or concerning the deferred termination agreements".

25   The deferred termination agreements, which as I noted are also

MOTORS LIQUIDATION COMPANY, et al.

Page 45

1    referred to as the wind-down agreements, included provisions by

2    which dealers and New GM contractually agreed that this Court

3    retained full and exclusive jurisdiction to enforce them as

4    well as to specifically preclude Rally and other wind-down

5    dealers from filing suit against New GM and taking any action

6    to interfere with New GM's establishment of additional

7    dealerships.  I'll note parenthetically that there was nothing

8    in the Dealer Arbitration Act to modify the subject matter

9    jurisdiction of the federal courts nor to modify any of my

10   earlier orders other than to provide what amounted to a defense

11   to enforcement of the deferred termination agreements if and to

12   the extent that a dealer prevailed in the arbitration process

13   for which Congress provided.

14           Rally did prevail in the arbitration process with

15   respect to three of its franchises and, presumably, would like

16   to avail itself and enforce that part of the arbitration award.

17   But it wishes to upset the arbitration result as to which it

18   didn't prevail and used the hoped-for alternative result, that

19   is, a reinstatement of its Chevy franchise, as a defense to its

20   duties under the deferred termination agreement which duties

21   otherwise obligated it to give up its Chevy dealership, that

22   being a classic "dispute with respect to or concerning the

23   deferred termination agreements".

24           Now, Rally may have come to an agreement by the end

25   of oral argument.  But in any event, I so rule that this Court

MOTORS LIQUIDATION COMPANY, et al.

Page 46

1   does have subject matter jurisdiction over this controversy.

2          Similarly, I find that this is a core matter.  Under

3   28 U.S.C., Section 157(a)(2)(N), core matters include, with

4   exceptions not relevant here, orders approving the sale of

5   property.  The 363 sale order and my approval of the wind-down

6   agreement documented the outcome of those core proceedings.

7   And a proceeding such as the motion now before me which seeks

8   relief predicated on a "retained jurisdiction" clause in my

9   order resolving a core matter is a core matter as well.  The

10  decision in Eveleth Mines, 312 B.R. at pages 644 to 645, is

11  directly on point.  In that case, the Court noted the motion

12  that barred directly and necessarily comes out of a core

13  proceeding in this case, the debtors' motion for authority to

14  conduct a sale of assets of the estate free and clear of liens.

15  Court proceedings under 28 U.S.C., Section 157(b) fall under

16  the "arising under" or "arising in" jurisdiction of 28 U.S.C.

17  Section 1334(b).  Then the enforcement of orders resulting from

18  core proceedings are themselves considered core proceedings.

19         The Second Circuit has held similarly.  It's held

20  that bankruptcy courts are empowered to enforce the sale orders

21  that they enter and to protect the rights which were

22  established by the sale order.  See Millenium Seacarriers, 419

23  F.3d at 97; and Petrie Retail, 304 F.3d at 229-230.  Petrie

24  Retail is particularly instructive because it also dealt with a

25  dispute between two nondebtors addressing rights that were

MOTORS LIQUIDATION COMPANY, et al.

Page 47

1    created by the sale order.  Though Petrie Retail was not

2    unanimous, it's no less binding on the lower courts for that

3    reason.

4            Now there can be no dispute what the sale order

5    actually said.  Nor can there be any dispute as to the wind-

6    down agreement said.  Section 13 of the wind-down agreement had

7    that continuing jurisdiction clause providing that the dealer

8    hereby consented to and agreed that the bankruptcy court would

9    retain full complete and exclusive jurisdiction to interpret,

10   enforce and adjudicate disputes concerning the terms of this

11   agreement and any other matter related thereto.

12           Here and to the extent Rally was successful in the

13   arbitration, of course that would be a defense to win any

14   effort to make it terminate its agreement.  And to the extent

15   that it wishes to either enforce the agreement as it has the

16   right to do with the three franchises for which it prevailed or

17   to defeat the agreement with respect to the one agreement where

18   it lost, in any event they concern the terms of the agreement

19   and, in particular, any other matter related thereto.  I don't

20   think that's subject to serious dispute.

21           Finally, I've considered and ultimately rejected

22   Rally's suggestion that I exercise discretionary abstention on

23   that.  Plainly, there is a right to invoke discretionary

24   invention under 1334(c)(1) of the judicial code.  That's 28

25   U.S.C. Section 1334(c)(1) which provides that nothing in this

MOTORS LIQUIDATION COMPANY, et al.

Page 48

1    section prevents a district court in the interest of justice or

2    in the interest of comity with state courts or respect for

3    state law from abstaining or hearing a particular proceeding

4    arising under Title 11 or arising in or related to a case until

5    Title 11.  And while it speaks principally of state courts and

6    state law, I accept for the purposes of this analysis that we,

7    bankruptcy courts have the power to abstain in favor of other

8    federal courts when the circumstances so warrant.  But I don't

9    believe that the factors here so warrant.  Standards that have

10   been articulated for the exercise of discretionary abstention

11   include of the efficient administration of the bankruptcy

12   estate, comity, the degree of relatedness or remoteness of the

13   proceeding to the main bankruptcy case, the existence of the

14   right a trial and prejudice to the involuntarily removed party.

15   Some of these, obviously, come in removal cases.

16        Here, I think the factor that is most important is

17   the effect of the effect deficient administration of the

18   bankruptcy estate.  This was a procedure that needed to be

19   resolved quickly as evidenced by the very tight time frames

20   that Congress imposed.  As important or more so, the bidders of

21   the world that come in to bid for assets in the bankruptcy

22   court must have knowledge that bankruptcy courts will stand by

23   the documents as they were then drafted to give the parties to

24   those agreements the predictability in their relations for

25   which they are binding and upon which they justifiably rely.

MOTORS LIQUIDATION COMPANY, et al.

Page 49

1    The Court in Eveleth Mines explained "as applied to a sale free

2    and clear of liens, there are also good policy reasons for

3    making a derivative core proceeding classification.  Active

4    bidding on assets from bankruptcy estates will be promoted if

5    prospective purchasers have the assurance that they may go back

6    to the originally forum that authorized the sale for a

7    construction or clarification of the terms of the sale that it

8    approved.  Relegating post-sale disputes to a different forum

9    injects an uncertainty into the sale process which would dampen

10    interest and hinder the maximization of value.  A purchaser

11    that relies on the terms of a bankruptcy court's order and

12    whose title and rights are given life by that order should have

13    a forum in the issuing court."  That is very strong guidance

14    that suggests that a Court, like me, should not abstain in

15    favor of another jurisdiction.

16            Similarly, comity is a factor that I would take into

17    account if there were, as contrasted to here, strong state law

18    concerns.   But here, of course, there are not.  I, no less

19    than a district court, either in New York or California, can

20    determine that which is just in determining whether or not to

21    enforce or, as more relevant here, to undercut an arbitration

22    award.

23            The degree of relatedness or remoteness of the

24    proceeding to the main bankruptcy court is subject to a double

25    entendre.  On the one hand, this is not going to affect the

MOTORS LIQUIDATION COMPANY, et al.

Page 50

1    assets and order of its liquidation in court.  But the factors

2    articulated in Eveleth Mines likewise cause Courts here to be

3    slow to abstain because giving purchasers of assets the comfort

4    that their needs and concerns are going to be addressed is

5    pretty important.

6            I consider the existence of the right to a jury trial

7    inapplicable because I assume that this would be decided

8    without a jury trial in either events and I also consider

9    prejudice to the involuntary removed party under the facts of

10   this case.

11           So for all of these reasons, I decline to exercise

12   discretionary abstention.

13           Now turning to what I should do with this controversy

14   before me.  Both sides now seem to agree that the Federal

15   Arbitration Act doesn't apply because it implements contractual

16   agreements to arbitrate.  And here, the right to compel

17   arbitration comes not from a contract but from the Dealer

18   Arbitration Act itself.  And it also now appears to be

19   undisputed that the Dealer Arbitration Act doesn't provide for

20   judicial review of arbitration awards issued after the

21   mechanisms for which the Dealer Arbitration Act provides.

22           Nor do I think that I can or should find an applied

23   right to judicial review under that statute.  First, as you

24   know from reading many earlier decisions that I've issued, I

25   start with textural analysis where I note the significant

MOTORS LIQUIDATION COMPANY, et al.

Page 51

1    absence of such a provision when federal statutes routinely

2    provide for rights to federal -- to judicial review when that

3    is the congressional intent.  If I were to imply such a

4    provision here that would be a species of judicial legislation.

5    Second, assuming without deciding that I could appropriately

6    look at legislative history on a matter where the statute is

7    not in any way ambiguous, judicially in grafting rights under

8    that statute would be particularly inappropriate when they'd be

9    inconsistent with the congressional desire to establish this

10   mechanism to avoid the excessive costs and delays of litigation

11   and to impose tight deadlines to get the arbitration process

12   completed.

13          Nor can I accept Rally's argument that New GM

14   conceded a right to judicial review by reason of its

15   willingness to proceed under the AAA's commercial arbitration

16   rules.  In responding to Rally's arbitration demand, New GM

17   expressly stated that it did not waive any objections it might

18   have to the arbitration or to any of the AAA's commercial

19   arbitration rules including, in particular, where such rules

20   would be inconsistent with the provisions or purposes of the

21   Dealer Arbitration Act.  For that same reason, I can't find a

22   waiver on the part of New GM of its rights based on a failure

23   to protest again after its initial reservation of rights was

24   put on the record.

25          Then even if New GM had agreed to AAA arbitration

MOTORS LIQUIDATION COMPANY, et al.

Page 52

1    rules, the arbitration rules called for a mechanism to enforce

2    an award not to attack it.  Those rules provided that parties

3    to an arbitration under these rules shall be deemed to have

4    consented the judgment upon the arbitration award may be

5    entered in any federal or state court having jurisdiction

6    thereof.  See Rule 48(c) of the AAA Commercial Rules quoted at

7    paragraph 29 of the Rally brief.

8            But that language conveys a right to enforce the

9    arbitration award not to attack it.  For example, if New GM had

10   failed notwithstanding the arbitration award that Rally doesn't

11   complain about to let Rally keep the three franchises the

12   arbitrator said Rally could keep, Rally could have, at least

13   arguably if not plainly in my view, come back to me and say

14   make New GM do what the arbitrator said it should do.  But this

15   is the exact opposite of what we have here and one that's not

16   authorized by the federal statute.

17           As I indicated in oral argument, and I think both

18   sides agreed, the reasonable course for a judge in my position

19   would be to construe the Court's earlier order and the

20   subsequently enacted federal legislation to achieve as much

21   harmony as possible and to honor the congressional intent to

22   the extent that the federal legislation trumped my earlier

23   order.  But it would also be appropriate in my view to honor

24   the congressional intent only to the extent that the federal

25   legislation trumped my earlier order.  Congress did say, of

MOTORS LIQUIDATION COMPANY, et al.

Page 53

1    course, with respect to providing for a defense to enforcement

2    of the wind-down agreements with respect to any areas where the

3    arbitrator ruled in the dealer's favor.  And I think that if

4    New GM had failed to honor the arbitrator's award, as I

5    indicated a moment ago, I'd almost certainly enforce it.  But

6    that is the way by which we'd maintain harmony between my

7    earlier order and the new Dealer Arbitration Act providing for

8    the rights of dealers to invoke the arbitration mechanism in

9    the fashion for which Congress provided.  It doesn't provide

10   for a blank check from me to rewrite the Dealer Arbitration

11   Act.

12        Nor do I think that Rally can get around what is, in

13   essence, an effort to achieve a quasi-appellate review of the

14   arbitration award by saying that it's asking the California

15   district court to make a federal question type determination

16   under the Dealer Arbitration Act.  That might be the case if

17   Congress hadn't established the arbitration mechanism and if it

18   had conferred on the district court's jurisdiction to decide

19   issues as to what is or is not a dealership franchise.  But the

20   whole point of the statutory scheme was that New GM and dealers

21   would proceed by arbitration.  And while, if New GM had refused

22   to arbitrate in the first place, I think that at least I would

23   have had jurisdiction to order New GM to do so.  But now that

24   each of New GM and Rally have engaged in the arbitration

25   process, presumably without any Court forcing either to do so,

MOTORS LIQUIDATION COMPANY, et al.

Page 54

1    we can't make the underlying arbitration award evaporate.  We

2    can only consider the circumstances, if any, under which the

3    arbitration award is subject to judicial review.  And I've

4    already noted, of course, that the statute doesn't provide for

5    such review.

6         Now, in that connection, I do not believe that under

7    the allegations we have here, this construction raises

8    constitutional issues.  I assume without deciding that

9    procedural due process requires a quasi-judicial determination,

10   like an arbitration, to be conducted by a decider who isn't

11   taking bribes or conspiring with one or another of the parties

12   or, though it's more debatable, who ignored facts or binding

13   authority on point.  If there were such a contention, I'd at

14   least have to consider whether I'd address it.  And I think

15   it's better to construe the Dealer Arbitration Act in such a

16   fashion as to avoid any constitutional issues that would

17   otherwise be relevant.

18        But I have no allegations of bribes, conspiracy,

19   fraud or even manifest disregard of existing law in the matter

20   before me.  Though, if there were such allegations, I think I'd

21   have to seriously consider whether there might be some implied

22   right to remedy such a wrong or that in exercising my exclusive

23   to jurisdiction to enforce or, impliedly, deny enforcement of

24   the deferred termination agreements, I should take such facts

25   into account.  But once more, I emphasize that I have no such

MOTORS LIQUIDATION COMPANY, et al.

Page 55

1   allegations here.

2            In the absence of issues of that character, I think

3   that Thomas and, particularly, Switchmen, the two decisions by

4   the Supreme Court, apply to establish a rule that where an

5   arbitrator was given the power to resolve controversies under a

6   statute, that is, the Dealer Arbitration Act, where dealers and

7   New GM were given rights under that statute, reviewed by the

8   federal district courts or, of course, bankruptcy courts that

9   are arms of the district court and have the power to issue

10  final orders on core matters, of the arbitrator's determination

11  is not necessary to protect those rights.  I think I should

12  restate it because I put too many parentheticals in there.

13  Where dealers and New GM were given rights under the statute

14  reviewed by the federal district courts of the arbitrator's

15  determination is not necessary to protect those rights.  And,

16  of course, that's a paraphrase of Thomas, 473 U.S. at 588

17  quoting Switchmen where I'm analytically substituting the

18  Dealer Arbitration Act for the Railroad Labor Act and where I'm

19  substituting arbitrator's determination for board's

20  determination.

21           So I don't believe that judicial review is necessary

22  except in those cases not presented here, and here only

23  arguably, where there are allegations of fraud, corruption or

24  manifest disregard of an existing decision.  And for reasons I

25  described above, I think the exclusive jurisdiction provisions

MOTORS LIQUIDATION COMPANY, et al.

Page 56

1    of the sale order must stick.

2            First, of course, they're res judicata so they remain

3    binding in the absence of an appellate ruling changing them for

4    a legislative pronouncement that does so.  Second, I assume

5    without deciding that Congress could, if it wished, to have

6    taken my exclusive jurisdiction away just as Congress can take

7    away jurisdiction from the lower federal courts on other

8    matters.  But Congress didn't do that.  If we temporarily put

9    aside issues as to the right to judicial review and decisions

10   as to the merits, I assume, without deciding, that a California

11   district court could under its diversity jurisdiction have

12   subject matter jurisdiction over a controversy like this one.

13   But if it did, it would be foreclosed from exercising its

14   subject matter jurisdiction by reason of the final exclusive

15   jurisdiction order that I entered back in July of 2009.  This

16   is no different analytically than the effect that an exclusive

17   jurisdiction order would have over a state court proceeding.

18   Most state courts don't need an expressed grant of subject

19   matter jurisdiction to hear controversies before them.  They

20   normally have subject matter jurisdiction over whatever comes

21   through their doors.  But that doesn't mean that they can hear

22   controversies when a court order or other federal law, like

23   some federal antitrust laws or securities laws, give a federal

24   court exclusive jurisdiction.  Some federal statutes and the

25   order that I entered into are limits on jurisdiction that might

MOTORS LIQUIDATION COMPANY, et al.

Page 57

1    otherwise exist.

2              Then Rally makes a judicial estoppel argument noting

3    that in a proceeding against another dealer, New GM brought an

4    action in federal court in California invoking diversity and

5    federal question jurisdiction, the latter under the Dealer

6    Arbitration Act, seeking to require that dealer to comply with

7    a settlement agreement and to drop its efforts to proceed under

8    the Dealer Arbitration Act.  Frankly, I'm not impressed with

9    the wisdom of that approach and, for the life of me, can't

10   understand why New GM sought relief that way instead of coming

11   to me.  But I don't think its effort in that regard rises to a

12   level of a judicial estoppel.

13             Rally depends on three statements to establish its

14   claim of judicial estoppel.  They are that the district court

15   would have jurisdiction under 28 U.S.C. 1332; that the district

16   court would have federal question jurisdiction under 28 U.S.C.

17   1331 because the controversy there allegedly arose under the

18   Dealer Arbitration Act; and that arbitrators would only be

19   empowered to decide whether or not the specific dealership

20   should be added back to the GM dealer network and that "all

21   other issues that arise under the Act must be addressed by a

22   Court of competent jurisdiction".

23             I don't think that any of these are particularly to

24   the point.  I've noted before that I assume that diversity

25   jurisdiction provides subject matter jurisdiction to the

MOTORS LIQUIDATION COMPANY, et al.

Page 58

1   California court here.  But I've also ruled that that can't

2   trump the bankruptcy court's exclusive jurisdiction provision.

3   And while I disagree that there and here would be federal

4   question jurisdiction under the Dealer Arbitration Act for the

5   particular claim there and here asserted, even if there were

6   such federal question jurisdiction, once more, it wouldn't

7   trump the bankruptcy court's exclusive jurisdiction provision.

8   And I don't think there's anything particularly inconsistent

9   between New GM's third point in that Santa Monica action and

10  the points it's making here given the difference between the

11  facts in each of those cases and the context in which New GM

12  made its observations.  There, an attempt to enforce a

13  settlement agreement under which the namees (ph.) agreed to

14  dismiss their arbitration and New GM was saying that

15  arbitration wasn't appropriate at all rather than dealing with

16  the consequences of a completed arbitration in which there was

17  an arbitration award.

18          But even if there were, I'd see other problems in

19  invoking judicial estoppel as well.  As Rally notes, at page 23

20  in its brief, citing the Second Circuit's decision in Uneeda

21  Doll Company, "judicial estoppel prevents a party from

22  asserting a factual position in one legal proceeding that's

23  contrary to a position that it successfully advanced in another

24  proceeding".  Here, aside from the lack of inconsistencies, the

25  positions that have been taken are legal not factual.  And

MOTORS LIQUIDATION COMPANY, et al.

Page 59

1    there, New GM didn't ask the Santa Monica Motors court to

2    interpret or enforce the wind-down agreement or, indeed, to

3    interpret or enforce the Dealer Arbitration Act at all.  The

4    latter point is why I think that New GM was just wrong when it

5    then tried to invoke the latter as a basis for 1331

6    jurisdiction.  I'm not sure what it was thinking.  But under

7    the standards of New Hampshire v. Maine, I find that the

8    positions are not clearly inconsistent and I cannot find any

9    perception that either the first or the second Court was misled

10    or that New GM would derive an unfair advantage here if not

11    estopped.

12         Finally, I think that even if judicial review were

13    available of the arbitrator's award, I couldn't vacate the

14    arbitrator's award here.  First, even if the arbitrator was

15    wrong, I don't see the arbitrator having been so wrong that the

16    error would warrant bucking fundamental principles limiting the

17    scope of review of arbitration awards.  There was no case

18    supporting Rally on this issue.  Rally is, in substance, asking

19    the Court or the Courts to, in essence, make new law on this

20    point.

21         And assuming, though for reasons I just noted, I

22    think this assumption is unwarranted, that I could provide ab

23    initio review of the arbitrator's decision, I think the

24    arbitrator got it right at least on the arbitrator's assumption

25    that he could rule one way with respect to the Buick, GMC and

MOTORS LIQUIDATION COMPANY, et al.

Page 60

1    Cadillac franchises and differently with respect to the Chevy

2    franchise.  I think the dealer's sales and service agreements

3    have to be read separately.  Each stated that it was executed

4    by GM "separately" on behalf of its division identified in the

5    specific addendum.  And each dealer agreement provided that the

6    agreement for each line make is independent and separately

7    enforceable by each party and the use of the common form is

8    intended solely to simplify execution of the agreements.  So I

9    think that in light of that, Rally had five franchise

10   agreements under which the arbitrator's ruling focusing on each

11   brand separately would be more than merely reasonable.  If

12   otherwise warranted by the underlying facts, it would be right.

13          For the foregoing reasons, New GM is to settle an

14   order in accordance with the foregoing as quickly as reasonably

15   possible, that order to be settled on no less than two business

16   days' notice by hand, fax or e-mail.  I assume that New GM will

17   use one of those methods so I don't have to provide for an

18   alternative mechanism if it were to use snail mail.  The time

19   to appeal from this determination will run from the time of

20   that order's entry and not from the time of this dictated

21   decision.

22          All right.  Not by way of reargument, are there any

23   matters that I failed to address or any questions?

24          MR. SNYDER:  No, Your Honor.

25          THE COURT:  Hearing none, we're adjourned.  Good

MOTORS LIQUIDATION COMPANY, et al.

Page 61

1    evening, folks.

2         MR. SNYDER:  Your Honor, if I may just quickly?

3         THE COURT:  Yes, Mr. Snyder?

4         MR. SNYDER:  Your Honor, under Bankruptcy Rule 8005,

5    to the extent we seek a stay pending appeal and that would be a

6    necessary predicate for an award, for the reasons set forth in

7    our papers and in the oral argument, I request -- am making

8    this oral application for a stay of Your Honor's order pending

9    appeal.

10        THE COURT:  I'll accept the oral application for a

11   stay but we'll do it after a ten minute recess.  And each of

12   you can make your points at that point in time.

13        MR. SNYDER:  Thank you, Your Honor.

14     (Recess from 6:19 p.m. until 6:37 p.m.)

15        THE COURT:  Have seats, please.  Okay.  Mr. Snyder,

16   your application for a stay.

17        MR. SNYDER:  Thank you, Your Honor.  Your Honor, in

18   your decision, I believe the Court stated -- and I apologize if

19   I'm putting words in the Court's mouth -- that areas such as

20   manifest disregard for the law and fraud were not areas that

21   were alleged here.  And that might be properly the province if

22   not exclusively the province of the district court in

23   California.  And I would ask the Court to turn to, Your Honor,

24   Exhibit I which is Rally's petition to modify.  And in Exhibit

25   I, Your Honor, starting on page 10, whether appropriately or

MOTORS LIQUIDATION COMPANY, et al.

Page 62

1    not, Rally uses the Federal Arbitration Act as a guide as to

2    what the district court can look to when determining whether it

3    has jurisdiction.  And it starts at the bottom of page 10, and

4    I'm quoting, "that the arbitrator in this matter was guilty of

5    misconduct, misbehavior and exceeded his power, i.e., manifest

6    disregard by ruling on a matter not submitted for determination

7    and, (2)attempting to fashion a remedy not authorized by

8    Section 747 of the Act."  And the argument goes on and a little

9    farther down, it addresses corruption, fraud and undue means by

10    GM which, again, although it mirrors a section of the FAA, is

11    also grounds that Rally sought in the California district court

12    in order to vacate and modify the arbitration.  So I wanted the

13    record clear that the manifest disregard of the law, fraud and

14    the usual grounds that a party would seek whether under a state

15    statute or the federal arbitration statute to undo the

16    arbitration were pled by Rally in the California action.  And

17    so, I believe that those types of matters, and I believe Your

18    Honor pointed this out, matters of manifest disregard, fact and

19    law as well as fraud, corruption, mistake and exceeding powers

20    are matters that the California district court should hear --

21    can hear, excuse me, and should hear.

22          Your Honor, has basically said that you have sole and

23    exclusive jurisdiction even though the district court may have

24    jurisdiction over these matters.  And as respectfully submitted

25    that the Court may have concurrent jurisdiction but over

MOTORS LIQUIDATION COMPANY, et al.

Page 63

1    matters such as manifest disregard of the law that the federal

2    district court in California also has jurisdiction over this

3    matter.  And it's properly before it now.

4            With respect to the federal question, again, Your

5    Honor seemed to indicate in his decision that the sole and

6    exclusive jurisdiction was given to the bankruptcy court as a

7    result of the wind-down orders.  The Court did not address as

8    we go through in detail, starting at page 28 of our objection,

9    the decision of the Supreme Court in Vaden v. Discover Bank.

10   And I alluded to it, Your Honor, in the original argument.  But

11   the Supreme Court, overturning, I believe, four circuit courts

12   in Vaden, specifically held that they can look through the

13   petition to look at the parties' underlying substantive

14   controversy.  And, Your Honor -- and this is where the Court

15   and Rally might differ.  The substantive controversy, the

16   predicate of the petition arises under the Dealer Arbitration

17   Act.  It does not arise under the wind-down agreement because

18   it was created not from the wind-down agreement but the Dealer

19   Arbitration Act.  So I think there's compelling reasons as a

20   result of the recent Supreme Court case in Vaden to allow the

21   federal district court to hear a federal controversy arising

22   out of a federal statute.  And I've been practicing here for a

23   long time, Your Honor.  To the extent that it's an issue

24   involving a purchaser wanting to get its -- the value of what

25   it bargained for, we are not saying this Court does not have

MOTORS LIQUIDATION COMPANY, et al.

Page 64

1    jurisdiction.  The Court has already held that it has arising-

2    to jurisdiction and it may well have that jurisdiction.

3              But I think I've pointed to at least two, the federal

4    question issue as well as the due process constitutionality

5    issue as to why the California district court has strong --

6    strong subject matter -- rights to exercise its subject matter

7    jurisdiction.  This is not a cursory -- a statute that only

8    cursorily affects the federal court, but it directly affects

9    the federal court.  And I believe, Your Honor, for those

10   reasons, the Court not entertaining or analyzing that and then

11   not seeing that the petition itself does seek -- does allege

12   manifest errors of law as well as fraud and improper powers by

13   the arbitrator that we would be successful on the merits.  And

14   we would be able to, Your Honor, obtain a stay of Your Honor's

15   order to the extent it would give us additional time to seek a

16   stay or to seek a determination in either the district court

17   here or in California.

18             THE COURT:  Well, I understand your desire to go to

19   the district court here.  I have more trouble trying to go to

20   the district court in California.  In fact, that walks, talks

21   and quacks a lot about the actions that Judge Weinfeld found so

22   objectionable in Teachers Insurance v. Butler before the Second

23   Circuit said what it said in Teachers Insurance v. Butler where

24   there was never to collaterally attack his judgment by going to

25   another court.  I mean, I don't claim to be infallible, Mr.

MOTORS LIQUIDATION COMPANY, et al.

Page 65

1    Snyder, but it seems to me that if somebody's going to say that

2    I'm wrong, it's got to be either the district court or the

3    Second Circuit.

4          MR. SNYDER:  Your Honor, we were in front of the

5    California district court before GM was here.  We can always go

6    back to the filing of the bankruptcy case.  But this is clearly

7    different than Teachers.  Here, we have already commenced an

8    action in the California district court.  We're not forum

9    shopping and running to California because we don't like what

10   the Court is saying.  We deferred in this case because they

11   made the motion that we were going to defer to the bankruptcy

12   court before we took any action in California.  But we're not

13   looking around for a second bite of the apple.  We're already

14   in California.  Issues already been joined.  They've already

15   answered.  So we're at summary judgment stage anyway in

16   California and we have a ticking clock of October 31st.  That's

17   very different than going to another Court when you don't like

18   what this Court has to say, Your Honor.  I mean, I don't know

19   if we need to address that here.  But that's not what we're

20   looking to do.  It's for powers other than I to decide whether

21   we seek a stay here or we go back to the Court where there's

22   been a complaint and answer filed and seek a stay there.  I'm

23   being straightforward with the Court.  It's not our intent and

24   I know the Court might have discomfort with that, but the

25   action was already commenced there.  And that's what led to GM

MOTORS LIQUIDATION COMPANY, et al.

Page 66

1    coming here.

2         THE COURT:  Well, forgive me, Mr. Snyder.  The reason

3    that you can truthfully say it's discomfort is because I try

4    very hard to consume my anger and to maintain my demeanor.  I

5    fully understand the rights of any litigant before me to take

6    me up the street.  But going to another Court right after

7    you've litigated before me for the last three hours and I've

8    given you a ruling which may or may not be right but which was

9    after a lot of thought and effort is one that is more than a

10   source of discomfort.

11        Why don't you continue with the remainder of the

12   three bullets on the applicable case law on an entitlement to a

13   stay and address, if you will, what you're prepared to offer in

14   the way of a bond if I grant a stay?

15        MR. SNYDER:  Your Honor, the argument with respect to

16   the constitutionality -- I had made the argument with respect

17   to whether a federal question exists vis-à-vis the

18   interpretation of the federal statute and going behind the

19   arbitration.  I made as well -- I would point out, Your Honor,

20   actually there are four grounds.  The third one is diversity.

21   And I think although GM was silent on it, the Court, I believe,

22   in its decision, admitted that diversity exists but, again,

23   stated that the sale order would trump the district court even

24   though diversity might existed there.  And the fourth argument,

25   Your Honor, is 48(c) and Your Honor is correct.  It does just

MOTORS LIQUIDATION COMPANY, et al.

Page 67

1    refer to judgment.  It does not refer to the right to vacate or

2    amend or to modify.  It's respectfully submitted, though, Your

3    Honor, that the district court can make that decision as well.

4    Your Honor may be right in all they can do is say thumbs up or

5    thumbs down with respect to a judgment.  But at least with

6    respect, I believe, to the fifty state laws, with respect to

7    arbitration and the FAA, it's not so limited, that applicants

8    are usually allowed by statute, certainly under the FAA, to not

9    only seek a judgment but to modify or vacate.  But that's

10   something the California district court may hold as well, Your

11   Honor.

12          And because there are five sep -- four separate

13   grounds, the constitutionality, the federal question, the

14   diversity and Rule 48(c), in Rally's mind, is more than a

15   compelling reason to hold that concurrent jurisdiction exists

16   and not simply exclusive jurisdiction exists.  That Your

17   Honor's sale order says what it says but that the Arbitration

18   Act raises issues that need to be addressed.  And it's

19   submitted by saying diversity exists but the sale order trumps

20   it, Your Honor, I would suggest that the district court in

21   California does have jurisdiction and does also have the

22   authority to hear these issues.  And for those reasons, I think

23   the Court or Rally would be successful in arguing that it would

24   be successful on the merits on those four particular grounds.

25          I would state also, Your Honor, that the judicial

MOTORS LIQUIDATION COMPANY, et al.

Page 68

1    estoppel argument is just fascinating to me.  I -- you asked a

2    question of GM and it was your last question, I believe, which

3    was are you saying you could have gone to New York or

4    California but you decided to go to California.  And they said

5    yes.  And so, what they're basically saying is we can go to

6    California or New York but you can't.  And that argument is, in

7    essence, saying we've waived subject matter jurisdiction by

8    entering into the wind-down agreements.  And I don't believe

9    that's correct.  And I believe if GM can go into New York and

10   California then Rally can go into New York and California.  And

11   to simply say that we're -- our fortunes rise and fall here,

12   well, neither -- GM's fortunes didn't rise and fall here

13   either.  They chose not to come here.  And so I think we should

14   have that same right.

15          And for those reasons, Your Honor, we'd like a stay

16   of Your Honor's order until there is an appropriate order of

17   the district court.

18          THE COURT:  All right.  Mr. Steinberg?

19          MR. STEINBERG:  Your Honor, in the context of the

20   order that you've indicated that you will enter, a stay pending

21   appeal makes no sense.  And the whole oral argument that you

22   heard here before was really a reargument motion and was not a

23   stay pending appeal motion.

24          Your Honor has indicated that it was inappropriate

25   for them to go to California and to continue to prosecute the

MOTORS LIQUIDATION COMPANY, et al.

Page 69

1    action in California.  So if you're going to stay the entry of

2    the order, what does that mean as a practical matter?  After

3    having ruled that it was improper to go to California, he now

4    is actually asking you to stay that order so he can go to

5    California?  Which is 180 degrees of the relief you just

6    granted?  This is not like he has a judgment and he wants to

7    stop us from enforcing the judgment because he wants to take

8    his appellate rights.  I'm trying to collect on a monetary

9    judgment.  This is started because he shouldn't have gone to

10    California in the first place.  He shouldn't have violated the

11    wind-down agreement.  He should have done -- he didn't have a

12    judicial right.  And now he's asking Your Honor to stay it so

13    he can, in effect, do what he started to do which was the

14    reason why we brought the motion in the first place.

15          But I think he didn't answer your question what are

16    the four prongs for a stay pending appeal.  He did talk about

17    the likelihood of success on the merits.  And I don't think he

18    said anything today other than try to reargue what Your Honor

19    had just ruled upon as to the likelihood of success on the

20    merits.

21          Frankly, the other three grounds all, I think, favor

22    New General Motors.  The harm to the appellant -- well, on the

23    surface, one could say he's harmed because the Chevrolet

24    dealership will be terminated on October 31st.  The actual harm

25    is that he didn't have a judicial right and you're not

MOTORS LIQUIDATION COMPANY, et al.

Page 70

1    depriving him of a judicial right.  Conversely, the harm to

2    others being the appellee, which is New General Motors and the

3    new dealership, are dramatic if Your Honor's order is not

4    enforced.  And Your Honor's opinion addressed the public

5    interest element which is the necessity of protecting buyers in

6    a Section 363 order and the Court's exclusive jurisdiction and

7    the public interest that's involved there.

8         I think the only other thing I would add, and it has

9    nothing to do with the stay pending appeal other than the

10   likelihood of success, I'll just point out that he wants to

11   refer to the complaint that was -- the petition that was filed

12   by Rally in California.  On the corruption, fraud and undue

13   means by General Motors, that's just a label that he put on a

14   caption in a petition.  He does not allege one thing about

15   fraud corruption in connection with the arbitration process.

16   He's saying that there were public statements made by Fritz

17   Henderson as to, in general, the importance of a dealership

18   network, and he's saying that that was misleading.  But it has

19   nothing to do with actually what happened in the arbitration

20   and under the Dealer Arbitration Act.  And as far as the

21   misconduct being beyond prec -- established precedent, if you

22   read the paragraph, what he's saying is that the award goes

23   beyond Section 747 because they believe that that statute,

24   which is absolutely silent on the issue, doesn't allow for the

25   assumption of one dealership -- the rejection of one dealership

MOTORS LIQUIDATION COMPANY, et al.

Page 71

1    agreement and the assumption or the reinstatement for the other

2    three.  That's the misconduct of going beyond what is

3    established precedent.

4           Your Honor's decision ruled that if you had to

5    address the merits, even though you weren't, you thought that

6    New GM and the arbitrator was right on that issue.  So he can

7    point to a petition, which is based on the Federal Arbitration

8    Act, citing standards but have no application to the facts of

9    this case and then everything else on the standards for a stay

10   pending appeal warrant for the denial of the stay.

11          And he purposely didn't answer your question as to a

12   bond because, at this point in time, the bond -- we're not

13   looking for a bond.  We're looking for the relief that we

14   brought our motion for.  And a stay pending appeal is, in

15   effect, a denial of our motion which Your Honor just granted.

16       (Pause)

17          THE COURT:  Stand by, everybody.  Sit in place.

18       (Pause)

19          THE COURT:  Gentlemen, in this supplemental

20   proceeding, Rally moves by oral motion, with my consent, for a

21   stay pending appeal.  And I am granting its motion to the

22   extent of providing for a seven calendar day stay to permit

23   Rally to go to the district court in this district.  And the

24   motion is otherwise denied.  The following are the bases for my

25   exercise of discretion in this regard.

MOTORS LIQUIDATION COMPANY, et al.

Page 72

1            Though I have no memory of hearing it expressly

2    invoked, a motion of this character is governed by Federal Rule

3    of Bankruptcy Procedure 8005.  It provides in relevant part

4    that "A motion for a stay of the judgment order or decree of a

5    bankruptcy judge for relief pending appeal must ordinarily be

6    presented to the bankruptcy judge in the first instance...A

7    motion for such relief" granted by -- "or for modification or

8    termination of relief granted by a bankruptcy judge may be made

9    to the district court but the motion shall show why the relief,

10   modification or termination was not obtained from the

11   bankruptcy judge.  The district court...may condition the

12   relief it grants under this rule on the filing of a bond or

13   other appropriate security with the bankruptcy court."

14           As the language I just quoted makes clear, the rule

15   is not terribly helpful with respect to the standards for

16   considering a motion of that character.  Rather, for that, we

17   look to the case law which, in the bankruptcy appellate arena,

18   takes a considerable amount of guidance from similar issues

19   presented under the FRAP, the Federal Rules of Appellate

20   Procedure.

21           I exercise my discretion in accordance with my

22   earlier decision, coincidentally in General Motors, at 409 B.R.

23   24, and the affirmants by Judge Kaplan of the district court in

24   2009 U.S. District Court Lexis 61279.  As I stated in my ruling

25   there, in GM, the decision as to whether or not to grant the

MOTORS LIQUIDATION COMPANY, et al.

Page 73

1   stay of an order pending appeal lies with the sound discretion

2   of the Court.  See, for example, In re Overmyer, 53 B.R. at

3   955.  Though the factors that must have to be satisfied have

4   been stated in slightly different ways and sometimes in a

5   different order, it's established that to get a stay pending

6   appeal under Rule 8005, a litigant must demonstrate it would

7   suffer irreparable injury if a stay were denied; there is a

8   substantial possibility, although less than a likelihood of

9   success on the merits of a movant's appeal; other parties would

10  suffer no substantial injury if the stay were granted; and that

11  the public interest favors a stay.  See, for example,

12  Hirschfeld v. Board of Elections, 984 F.2d at page 39.  It's a

13  decision of the Second Circuit in 1992; In re DJK Residential,

14  2008 U.S. Dist. LEXIS 19801; and 2008 WL 650389, a decision by

15  Judge Lynch back when he was a district judge; and In re

16  Westpoint Stevens, 2007 U.S. Dist. LEXIS 33725, 2007 WL

17  1346616, a decision by Judge Swain of the district court.

18        The burden on the movant is a "heavy one".  See, for

19  example, DJK at *2.  See also U.S. v. Private Sanitation

20  Industrial Assoc., 44 F.3d 1082 at page 1084, another decision

21  of the Second Circuit.  To be successful, the party must "show

22  satisfactory evidence of all four criteria".  In re Turner, 207

23  B.R. at page 375, a decision of the former Second Circuit BAP

24  in 1997.  Moreover, if the movant seeks the imposition of a

25  stay without a bond, the applicant has the burden of

MOTORS LIQUIDATION COMPANY, et al.

Page 74

1   demonstrating why the Court should deviate from the ordinary

2   full security requirement.  See DJK at *2, Westpoint Stevens at

3   *4.

4           While, as Judge Lynch noted in DJK, the Second

5   Circuit BAP has held that the failure to satisfy any prong of

6   the four-circuit test "will doom the motion," with Jerry Lynch

7   having cited Turner.  The Circuit in more recent cases have

8   engaged in a balancing process with respect to the four factors

9   as opposed to adopting a rigid rule.  In my earlier ruling in

10  GM, I assumed without deciding that the balancing approach

11  would be more appropriate.  And I'm going to do likewise here.

12  I also note that when Judge Kaplan affirmed me in GM in the

13  decision that I described a few minutes ago, I think he took a

14  similar approach.

15          Let me start with injury first.  Obviously, I take

16  the loss of a franchise seriously.  And indeed, early in the

17  decision that I dictated -- I guess it's now an hour or an hour

18  and a half ago -- I did hopefully express my empathy to dealers

19  losing their franchises.  However, what caused the lack of the

20  franchise, or the loss of the franchise, is not the ruling that

21  I issued tonight.  It was the dealer termination agreement that

22  was entered into over a year ago.  What we have here is

23  Congress recognizing the injury to dealers as a consequence of

24  either rejection of dealership agreements, as was the case in

25  Chrysler, or even the soft landing termination agreements that

MOTORS LIQUIDATION COMPANY, et al.

Page 75

1   we had here, provided dealers with an arbitration remedy to, in

2   essence, undo that which otherwise would happen.  And Rally

3   took advantage of that and it won in three-quarters -- or four-

4   fifths -- Pontiac, I guess, ultimately not being relevant -- of

5   the matters which it took before the arbitrator.  Now, in

6   essence, what it's asking for is to avoid the injury from a

7   year ago and at the same time to avail itself of the benefits

8   of the arbitration to the extent that it won.  With it having

9   won with respect to Buick, Cadillac and GMC, I don't think

10  there is irreparable injury to it by reason of its not having

11  shot the moon in its litigation efforts before the arbitrator.

12          Frankly, folks, I tried very hard to get it right.

13  And we're going to get to a likelihood of success in a minute.

14  But I do not believe that my ruling today causes irreparable

15  injury.  And I think really all we're talking about is the

16  results of an arbitration system that was made available for

17  Rally and for which it only succeeded in part.

18          I will, however, assume that there is a -- at least a

19  peppercorn of irreparable injury.  I'm certainly not going to

20  disqualify Rally for not showing more in the way of irreparable

21  injury.  And I'm not, as I indicated, going to require it to

22  make a strong showing on all fours.  I am going to take a

23  balancing approach so I'm going to turn to that next.

24          So let's talk then about likelihood of success which

25  is where Rally spent the bulk of its argument.  Although we

MOTORS LIQUIDATION COMPANY, et al.

Page 76

1    talk about likelihood of success, that's a shorthand for a more

2    nuanced analysis.  The technical standard is there is a

3    substantial possibility although less than a likelihood of

4    success on the merits.  Well, let's slice and dice the various

5    aspects of my earlier ruling.

6           First, the propriety of my conclusion that I do have

7    subject matter jurisdiction and that I have core

8    jurisdiction -- core, of course, not being the subject matter

9    jurisdiction issue but talking about the power of a bankruptcy

10   judge in contrast to a district judge to decide.  Those two

11   rulings now seem to be accepted or at least unchallenged.  And

12   although there was no express discussion of my decision not to

13   abstain, I didn't hear any argument on that.  And, frankly,

14   discretionary abstention is called discretionary for a reason.

15   There would have to be an abusive discretion in my electing not

16   to abstain.  And I think that there would not be a material

17   likelihood of success on that and would be far short of a

18   substantial possibility.

19          On the merits, it's undisputed that we're not talking

20   about the Federal Arbitration Act, that the Dealer Arbitration

21   Act provides no right to appeal.  And my ruling did not go so

22   far as to say that under no circumstances under anything that

23   might ever be alleged would I deny the right to appeal.  What I

24   have said is that to the extent, if any, to which there would

25   be such a right, a construction to, in essence, save the

MOTORS LIQUIDATION COMPANY, et al.

Page 77

1   constitutionality of the statute if it were otherwise put in

2   question, there would have to be something seriously wrong with

3   the arbitration in the way of fraud, corruption, bribery being

4   a species of corruption, or, and I articulated it differently,

5   disregard of applicable authority.  I went on to provide two

6   additional levels -- you can call it dictum; you can call it

7   alternative grounds, whatever, which caused me to believe that

8   it's not likely that there's going to be a reversal.

9          And as far as whether there's a substantial

10  possibility, on the facts that were put before me, I don't

11  think there's even that.  To be sure, words were put before the

12  district judge triggering responses that if this were an action

13  under the Federal Arbitration Act would get a judge's

14  attention.  But as the recent decisions by the Supreme Court in

15  Bell Atlantic v. Twombly and, especially, Ashcroft v. Iqbal

16  tell us, just invoking words making conclusory allegations in a

17  pleading isn't enough.  You can't talk about corruption without

18  giving the Court some facts as to lead the Court to believe

19  there was corruption.  And we're not talking about corruption

20  by GM.  We're talking about corruption by the arbitrator.  I

21  used the example before of taking bribes.  There are no

22  allegations of ex parte communication.  There are no

23  allegations of any irregularities in the proceedings before the

24  arbitrator other than the assertion that, as a matter of law,

25  the arbitrator got it wrong.  And even then, there's no

MOTORS LIQUIDATION COMPANY, et al.

Page 78

1    allegation that the arbitrator disregarded any particular case

2    that would suggest to the arbitrator that he got it wrong.  So

3    while I think there would be a substantial possibility of

4    success on appeal if I were somehow to rule that there is no

5    right to appeal and that I got to close my eyes to

6    irregularities of the type that I just described if they were

7    shown, it doesn't affect the outcome here because I don't have

8    any facts suggesting any of those things.  Bottom line, folks,

9    I do not find a substantial possibility.

10        Third factor.  Other parties would suffer no

11   substantial injury if the stay were granted.  And here, I think

12   there are potential injuries, at least if we go past October

13   31st, of one type, for sure, and another which more properly

14   may be regarded as being a public interest concern rather than

15   a private prejudice.  For GM's benefit, I'll say that I see no

16   prejudice in staying for five days to allow the district court

17   to second guess me on the stay application.  And for that

18   reason, I am going to grant a stay to the extent of five days.

19        But we have a new dealer who's taking over on the

20   31st of October.  I don't have evidence on it, but I got to

21   assume that the existing franchisee's gain is going to be the

22   new one's loss.  They're either going to be competing with each

23   other or that other guy is going to be made to wait if this

24   thing can't proceed past October -- if this somehow proceeds

25   past October 31st.  And we have a nationwide program which was

MOTORS LIQUIDATION COMPANY, et al.

Page 79

1    judicially blessed back in July of last year for these dealer

2    unwinds and I think it's prejudicial to New GM to put this

3    system in play to any greater extent than Congress did by its

4    statutory enactment.  And Congress didn't say everything you're

5    doing is undone.  What it did was say well, we're going to set

6    up this arbitration mechanism.  And that's exactly what we got.

7    And it goes without saying that I comply with the congressional

8    but I don't think we should be going beyond what Congress said.

9         Lastly, the public interest favors a stay.  That's

10   the final factor.  While I quoted the language before, and I

11   think Rally acknowledged its importance, that we deliver to the

12   purchasers of assets in bankruptcy sales that which we have

13   promised.  And if and to the extent that the counterparty to a

14   deal with an estate comes back and says I need you to enforce

15   it so I get the benefit of what I had bargained for, we do

16   that.

17        I talked back at the time of the original 363

18   determination and my separate ruling on the stay application

19   that followed my 363 ruling by a couple of days about how

20   important GM's survival is to the public interest and the

21   interest not just of the federal taxpayers but the needs and

22   concerns of the states of Michigan and Ohio and the communities

23   in which GM plants operate.  We made decisions then about that

24   which was necessary to give New GM the maximum opportunity to

25   thrive.  We made rulings then which are res judicata.  I don't

MOTORS LIQUIDATION COMPANY, et al.

Page 80

1   think the public interest is served by interfering with what we

2   then put in place in any way.

3           Certainly, there is no public interest in allowing

4   this collateral attack.  It's a private interest to the extent

5   it's any interest.  And when a party that was offered and

6   availed itself the opportunity to arbitrate then wishes to take

7   the portion for which it did not win and put the earlier system

8   in play beyond getting the arbitration opportunity for which

9   Congress provided, that is, at the least, not in the public

10  interest and may fairly be regarded as being contrary to the

11  public interest.  At best, looking at it most favorably to

12  Rally, it is a wash because it is private interests that are

13  being sought to be advanced and not public ones.

14          So, as my discussion indicates, folks, I think we got

15  to go by the book and deal with it as I did in my decision

16  dictated just a moment ago by the four enumerated factors

17  articulated in the case law for the grant of a stay.  And it is

18  stayed to permit a second opportunity to go to the district

19  court for those seven calendar days.  And so as not to put a

20  gun to the head of the district court having to issue a

21  decision, like Judge Kaplan did where he had to work all night

22  on it, I don't want to do that to the district court again if I

23  can avoid it.

24          But beyond that, it is denied.  Rally is authorized

25  and requested, not ordered, but requested to advise the

MOTORS LIQUIDATION COMPANY, et al.

Page 81

1    district court that an application was made to the bankruptcy

2    court, that the bankruptcy court denied it except to the extent

3    of the five days for the reasons that it dictated into the

4    record and that any further application to the bankruptcy court

5    is dispensed with and waived.  From now on, we're in the

6    district court, folks.

7              Yes, sir?

8              MR. STEINBERG:  Your Honor, I just have some brief

9    moments and I thank you for staying so late for today.  In your

10   presentation in connection with the stay pending appeal, you

11   said seven calendar days but I believe you also said at one

12   point in time five days.  So --

13             THE COURT:  If I did, it was a reference to five

14   business days.  Seven calendar days transposes into five --

15             MR. STEINBERG:  Okay.

16             THE COURT:  -- business days.  And ever since we

17   amended the federal rules of many different types last

18   December, we now go on bunches of seven calendar days.

19             MR. STEINBERG:  The second thing, Your Honor, is that

20   while I'm not exactly sure what I would have otherwise done

21   during the seven calendar day period because the wind-down

22   agreement is fairly passive, I do want to make sure that I'm

23   still able to present to Your Honor the order that you had

24   asked for --

25             THE COURT:  Of course you can.

MOTORS LIQUIDATION COMPANY, et al.

Page 82

1          MR. STEINBERG:  Okay.  And I think that's it.  I

2    understand that the only activity that will happen from this

3    point on is in the district court of this district.

4          THE COURT:  Correct.  All right.  It's been a long

5    day.  Good evening, gentlemen.  We're adjourned.

6      (Whereupon these proceedings were concluded at 7:23 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 83

1

2                          I N D E X

3

4                          R U L I N G S

5   DESCRIPTION                                    PAGE      LINE

6   Motion of New GM for an order enjoining Rally      41         8

7   Dealership from interfering with New GM's

8   ability to reform its dealership platform,

9   from vacating or modifying an arbitration

10  decision and from pursuing that effort in

11  California district court granted

12  Court declines to exercise its discretionary     50        12

13  abstention

14  Oral motion by Rally Auto for a stay pending     71        21

15  appeal granted for five business days to permit

16  Rally to go to district court;

17  but denied in all other respects                 71        24

18

19

20

21

22

23

24

25

Page 84

CERTIFICATION

I, Lisa Bar-Leib, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

LISA BAR-LEIB

AAERT Certified Electronic Transcriber (CET**D-486)


Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501


Date:  October 6, 2010