# EXHIBIT C

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LESON CHEVROLET COMPANY, INC. ) <br> ) <br> Claimant ) <br> ) <br> v. ) <br> ) <br> ) <br> GENERAL MOTORS LLC ) <br> ) <br> Respondent ) | Case No. 69 532 00046 10 JMLE <br><br> Arbitrator: A. J. Krouse |

## WRITTEN DETERMINATION OF ARBITRATOR

I, the undersigned Arbitrator, having been designated pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117) (the "Act"), enacted December 16, 2009, and having been duly sworn and having heard the proofs and allegations of the parties, do hereby provide the Written Determination of Arbitrator pursuant to the Act.

### Background

The Act affords a "covered dealership" (as defined in Section 747(a)(2)) the right to challenge by binding arbitration the decision of a "covered manufacturer: (as defined in Section 747(a)(1)(A) and (B)) to terminate, or not to assign, renew or continue, the covered dealership's franchise agreement. This case was filed in accordance with the Act's provisions. The arbitrator inspected with counsel the entire Leson dealership, including new and used cars, the service center, collision center, parts and customer service, prior to the hearing. An evidentiary hearing was held on June 3 and 4, 2010 in New Orleans, Louisiana, where testimony from both parties was heard from 9:00 a.m. – 9:00 p.m. each day. Stipulated Exhibits were offered and introduced into the record. Pre-hearing and post-hearing briefs were carefully reviewed by the arbitrator. Set

EXHIBIT C

forth below is the "written determination" (as provided for in 747(d) of the Act) of the issue to be decided under the Act, namely "whether or not the covered dealership should be added to the dealer network of the covered manufacturer."

### I.  The Covered Dealership

This proceeding concerns the automobile dealership known as Leson Chevrolet Company, Inc. located in Harvey, Louisiana.

### II.  Determination

The covered dealership described above in Section I shall be renewed and therefore shall be assumed by the covered manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act, and shall be added to the dealer network of General Motors, LLC.

### III.  Statutory Factors Relied Upon by the Arbitrator in Making the Determination

In accordance with Section 747, the following factors were carefully considered:

**1.  The covered dealership's profitability in 2006, 2007, 2008 and 2009.**

Leson Exhibit 45 established that Leson was one of the top 300 Chevy dealerships in the United States in January 2009, according to Leson's District Sales manager. The testimony and exhibits presented by Leson established that the dealership was profitable in 2006 and 2008. Leson sold more retail and GM certified used vehicles than any other Chevrolet dealer in the greater New Orleans area in 2007 (2202 vehicles) and 2008 (1831 vehicles) by a significant margin. Leson maintains more than $1 million in parts inventory and serviced more than 13,000 vehicles in 2008.

GM's profits generated by Leson from 2006-2008 were significant. In 2006, Leson was ranked No. 5 in Louisiana in new car sales (1958 vehicles) with a profit to GM from $11.29-$13.51 million dollars.

In 2007, Leson was ranked No. 11 in new car sales in Louisiana (1472 vehicles) with a profit to GM at $8.88 - $10.62 million dollars. In 2008, Leson was ranked No.16 in new car sales (810) with profits to GM at $6.17 – $7.35 million.

### 2. The covered manufacturer's overall business plan.

GM plans to focus on its four core North American brands: Chevrolet, Buick, GMC and Cadillac. GM had about 6000 dealership franchises when it filed for bankruptcy in June 2009. "Wind-down" agreements were sent to approximately 2,000 dealerships whose franchises were not being renewed, including Leson. GM contends that fewer dealerships will result in greater profitability for the manufacturer.

### 3. The covered dealership's current economic viability.

Expert testimony presented by Leson by Joe Roesner and Carl Woodward that the dealership is economically viable. Leson's net worth was almost $5.6 million in 2008. Leson's net worth is 2.5 times the average net worth of dealers in the region.

Leson owns the 14 acre property located at the corner of Manhattan Boulevard and the Westbank Expressway where the dealership is located. Although mortgaged, Leson has more than $5 million in equity in the property. Further, Leson recently invested approximately $2.1 million of its money into the dealership in a renovation of its service and parts center following Hurricane Katrina. GM failed to consider this factor in their termination decision.

3

4. **The covered dealership's satisfaction of the performance objectives established pursuant to the applicable franchise agreement.**

GM was required by Section 747 to provide Leson with "the specific criteria pursuant to which such dealer was terminated." The "specific criteria" GM provided to Leson was that Leson's 2008 DPS score was under 70 and its RSI score was under 70. GM Exhibit 29.

Testimony at the hearing established that Leson made an accounting error that negatively affected its DPS score. Leson provided testimony from Lisa Rebowe, Leson's General Manager and a CPA, that insurance proceeds had mistakenly been booked in Leson's accounting ledger. Leson provided data to GM to recalculate the score on March 18, 2010. GM refused to recalculate the score and, more disturbing, refused to reconsider their termination decision of Leson in 2009. See Exhibit 31 (recalculating Leson's overall score at 76.5 – above the passing rate in 2008).

In this instance, the arbitrator recognizes the "good faith" explanation of the accounting error and finds that Leson exceeded the DART/DPS criteria in 2008.

Testimony also established that Leson's service facilities are in the top 10% of the Region's dealers. An impressive array of General Motors products were being serviced in every available service bay at Leson during the dealership inspection owned by several governmental entities, Fortune 500 companies and small businesses in New Orleans and Jefferson Parish. Failing to reinstate Leson would be severely detrimental to the entities that rely upon the region's only dealership who can service midsize and large GM vehicles.

Leson has also met GM's capital requirements as these standards have not changed since 2003.

4

After the termination letter, a new management team committed to the success of Leson was brought on board. Leson has secured one of the nation's best general service managers, Rick Harp, and finance manager, John Burress, to provide effective leadership and fiscal responsibility for the requirements of the new General Motors. They have a business plan in place that will serve Leson and GM with increased sales volume in the future and a proven track record in management.

The arbitrator finds that Leson has met or exceeded the performance objectives established pursuant to the franchise agreement between the parties for the time period at issue.

5. **The demographic and geographic characteristics of the covered dealership's market territory.**

Jefferson Parish, Louisiana is the largest parish in Louisiana located adjacent to New Orleans, Louisiana, and has a population of approximately 450,000 residents. Leson Chevrolet L.L.C. is located at the intersection of the Westbank Expressway and Manhattan Boulevard adjacent to the Jefferson Parish Sheriff's Department Headquarters and near several industrial companies along the Harvey Canal. The geographic location of Leson is a prime location in one of the fastest growing areas in the New Orleans Metropolitan area and the State of Louisiana.

6. **The covered dealership's performance in relation to the criteria used by the covered covered dealership's franchise agreement.**

In responding to its RSI score, the dealership presented compelling and credible testimony that GM substantially deviated from its own standards when deciding to terminate similarly situated dealerships in the region. Leson Exhibits 40A and 40B. The testimony of GM's corporate representative, David Bott, established only two of ten "unsatisfactory" dealers were terminated. Bott testified that one dealership in the region which sold only 74 vehicles and

· 5

ranked with a lower "unsatisfactory" ranking than Leson was not terminated because it failed to provide GM complete financial records.

The arbitrator finds that GM failed to consider "...other relevant factors" in the franchise agreement deciding to proceed under the provisions of Article 13.2 [dealer termination provision] in addition to the Retail Sales Index when it made its decision to terminate Leson.

The other relevant factors GM failed to consider were:

(1) Recovering from the devastating effects of Hurricanes Katrina, Rita, Gustav and Ike.

(2) Displaced key employees and managers at Leson and customers due to mandatory hurricane evacuations.

(3) Relying upon the good faith representations of GM management in 2008 not to "worry" about the DPI and RSI scores since Leson was one the top 300 Chevy dealerships in the nation.

(4) Loyalty to GM management and the Chevrolet product line. This is a family owned Chevy dealer since 1931. Leson is the only Chevy dealership on the Westbank of Jefferson Parish. Lisa Rebowe, general manager, and successor in interest to her 78 year old father is poised to become one of the few female Chevrolet dealers in the nation.

(5) Outstanding sales and service performance by Leson Chevrolet during a time when General Motors was rapidly toward bankruptcy in 2009, this factor cannot be understated because in 2006 – 2009. The American public had lost confidence in the GM and Chevrolet product lines during that time.

7. **The length of experience of the covered dealership.**

Leson Chevrolet is the oldest Chevy dealer in New Orleans. Leson is a family owned dealership since 1931, located in Harvey, Louisiana.

6

8. **How the economic interests of the dealership, the manufacturer and the public are supported by the above factors.**

On balance the Arbitrator finds that the economic interests weighs heavily in favor of reinstating Leson Chevrolet to the dealer network at its present location in Harvey, Louisiana.

In regard to the economic interest of the public at large outside of the immediate area, reinstatement will serve to increase GM profits as well as providing a viable economic anchor for Jefferson Parish in the future. In the first quarter 2010, GM earned $865 million, its first profit since 2007, with revenue up 40 percent, to $31.5 billion, and a positive cash flow of $1 billion. The company's May 2010 financial results show that it is on track to become a public company again, allowing the federal government to recover more of the $57.6 billion dollars loaned to GM under the Troubled Asset Relief Program (TARP).

9. **Any additional facts to be considered by the arbitrator in making the determination.**

The dealership has secured drawings for a new car showroom and a commitment letter from a local bank for prospective financing once it is reinstated by General Motors.

Leson Chevrolet has secured letters from key elected public officials including U.S. Representative, Steve Scalia, Jefferson Parish President Steve Theriot and State Senator J.P. Morrell in support of the dealership and its reinstatement.

10. **Specifically whether the covered dealership is to be renewed, continued, assigned or assumed by the covered manufacturer.**

The arbitrator finds that Leson Chevrolet has met its burden of proof by establishing by a preponderance of the evidence that it should be reinstated to the dealer network of General Motors, L.L.C. in accordance to the provisions of the Act.

## V. Costs

In accordance with the statute, the administrative fees and expenses, the arbitrator's fees and expenses shall be borne equally between GM and Leson Chevrolet.

This Award is in full settlement of all claims submitted to this arbitration.

Dated: 6/18/2010

_____
A.J. Krouse, Arbitrator
American Arbitration Association
New Orleans, Louisiana