# EXHIBIT G

**GM**

General Motors LLC

**VIA OVERNIGHT MAIL**

**PERSONAL & CONFIDENTIAL**

June 21, 2010

Mr Donald R Trapp
LESON CHEVROLET COMPANY, INC.
1501 WESTBANK EXPY
HARVEY, LA 70058

Dear Mr Donald R Trapp:

Your dealership filed for arbitration (the "Arbitration") under Section 747 of the Consolidated Appropriations Act, 2010 (H.R. 3288, as signed by President Obama on December 16, 2009) (the "Arbitration Statute"). As a result of the arbitrator's decision in the Arbitration, General Motors LLC ("GM") is offering your dealer company this letter of intent, as provided for in the Arbitration Statute (this "Letter of Intent") concerning the Chevrolet brand(s) (the "Reinstated Brand(s)"). Upon compliance with the terms and conditions of this Letter of Intent, LESON CHEVROLET COMPANY, INC. ("Dealer Company" or "Applicant")'s Reinstated Brands, will be reinstated into GM's dealer network with Mr Donald R Trapp, as the Dealer Operator.

This will be accomplished by amending the existing Wind-Down Agreement in place between Dealer Company and GM for the Reinstated Brand(s) vehicles. Within 15 days of Dealer Company's completion of the conditions and requirements of this Letter of Intent, GM will execute and deliver to Dealer Company an amendment to the Wind-Down Agreement in substantially the form attached as Exhibit A (the "Wind-Down Amendment"), which will allow Dealer Company to resume normal dealership operations for the Reinstated Brand(s).

Please note that the term of this Letter of Intent is sixty (60) days. If Dealer Company does not provide GM with satisfactory evidence of compliance with all of the terms and conditions of this Letter of Intent within 60 days from your execution of this letter, then this Letter of Intent will expire and GM shall have no obligation to execute the Wind-Down Amendment.

The following are the terms, conditions, and requirements for reinstatement:

1. **Facility (Space/Premises) Requirements:** Dealer Company must establish and maintain facilities in accordance with GM's facilities requirements as set forth in GM Dealer Bulletin GM 01-18 (copy attached as Exhibit B). To comply with this facility requirement and space guideline for the purposes of this Letter of Intent, Dealer Company must provide dealership facilities which meet the space and facility requirements outlined in the Dealer Company's Location and Premises Addendum ("GMMS 1016") executed with the Dealer Company's most recent GM Dealer Sales and Service Agreement ("Dealer Agreement(s)").

2. **Approved Location:** The Dealer Company must confirm that the location specified in Dealer Company's most recent Dealer Agreement(s) will be the same location for the resumed Dealer Company operations for the Reinstated Brand(s). If that location is no longer available or Dealer Company wishes to propose another location, Dealer Company must provide a location acceptable to GM within the 60-day timeframe specified in this Letter of Intent. The Dealer Company must submit documentation to GM within the 60 day timeframe confirming dealership location.

{ 00923401.1 07131-ARB 6/21/2010 10:19:45 AM }
3670_Arbloi_062110_SCJC.doc                                                                    114302

EXHIBIT

G

BAC# 114302

3. **Non-GM Dual Policy:** Dealer Company will be allowed to use the same facility arrangement previously identified in the Dealer Company's most recent GMMS 1016; however, the GM policy prohibiting non-GM products from being sold and serviced from approved GM dealer premises remains in place. If Dealer Company wishes to participate in the voluntary Essential Brand Elements (EBE) program, then Dealer Company must separate all non-GM dealership operations from the approved GM showroom facilities by October 31, 2010 to be eligible for the EBE facility element. In addition, to continue to be compliant with the EBE program, Dealer Company must separate all non-GM dealership operations from the service write-up and waiting areas located at the approved GM facilities by September 30, 2011. If Dealer Company subsequently complies with the EBE program guidelines, then Dealer Company will be eligible for EBE payouts in accord with the EBE program. For complete details for your Dealer Company go to the EBE website at www.gmexcellence.com.

4. **Facility Image:** Dealer Company will be allowed to use the same facility arrangement previously identified in the Dealer Company's most recent GMMS 1016; however, GM expects Dealer Company to comply with applicable facility image requirements. Please refer to gmfacilityimage.com for image requirements. Dealer Company agrees that to be eligible for the EBE program, with respect to facility image, it must comply with the applicable EBE Program requirements.

5. **Technology Infrastructure Standards:** The Dealer Company must comply with GM's information technology infrastructure standards for dealerships as described on the following GM website at www.gmdit.com  .

6. **Line of Credit:** The Dealer Company must obtain a separate line of credit from a creditworthy financial institution approved by GM, to enable the Dealer Company to finance the purchase of a sufficient number of new GM motor vehicles, for all GM vehicle lines, including the Reinstated Brand(s) which GM is offering to reinstate pursuant to this Letter of Intent, to meet its obligations under the Dealer Agreement(s). The Dealer Company must submit documentation to GM within the 60-day time frame to demonstrate that it has obtained a sufficient line of credit (see Exhibit C).

7. **Net Working Capital:** The Dealer Company shall establish and maintain for use in its GM sales and service business unencumbered net working capital in the amount of **$2,850,000**. Dealer Company must provide GM with documentation that Dealer Company has satisfied this Net Working Capital Standard by October 31, 2010 when the current Dealer Agreement(s) expires. If Dealer Company fails to meet this requirement, dealer agrees GM shall have no obligation to offer a replacement dealer agreement to dealer upon the expiration of the current Dealer Agreement(s).

8. **Licenses:** Dealer Company must obtain all necessary licenses under applicable statutes and regulations to conduct the Reinstated Brand(s) dealership operations at the approved location. GM shall not be responsible for any costs, expenses, damages or delays incurred as a result of Dealer Company's efforts to obtain such licenses. The Dealer Company must submit documentation to GM within the 60-day timeframe that it has obtained all necessary licenses.

9. **Return of Wind-Down Payments:** Upon Dealer Company's compliance with all of the terms and conditions of this Letter of Intent and GM's execution of the Wind-Down Amendment, Dealer Company hereby expressly authorizes GM to debit Dealer Company's open account maintained on the General Motors Dealer Payment System for all amounts previously paid by GM to Dealer Company under the Wind-Down Agreement for Reinstated Brand(s). This amount is **$263,716.50**. The Dealer Company shall not be able to order new vehicles from GM until all wind down amounts received by Dealer Company related to the Reinstated Brands have been repaid.

10. **Completeness and Accuracy:** Dealer Company and Dealer Operator represent that all documents submitted to GM under this Letter of Intent, are complete, true and accurate.

11. **Term:** This Letter of Intent shall expire sixty (60) days after execution by Dealer Company unless an extension is agreed to in writing by the Parties.

12. **No Assignment or Transfer:** This Letter of Intent may not be transferred or assigned, in whole or in part, without the express written consent of GM.

{00923401.1 07131-ARB 6/21/2010 10:19:45 AM }         2

BAC# 114302

Dealer Company acknowledges and represents that (i) the decision to enter into this Letter of Intent is based upon an independent analysis of the business opportunity, costs, and risks associated with re-instatement, (ii) they are not relying on any representations, promises, guaranties, or information provided by GM or any employee, agent or representative of GM, except as expressly set forth in this Letter of Intent, and (iii) there are no other agreements or understandings written or verbal between the parties concerning the matters covered by this Letter of Intent, its references, and its Attachments.

Please indicate your agreement to terms and conditions of this Letter of Intent by signing the two attached originals. Retain one signed original for your records and return the other signed original to Johnny Collins, whose telephone number is (313) 665-1798, at General Motors LLC, 100 Renaissance Center, MC: 482-A06-C66, Detroit, Michigan 48265, within ten days (10) days of receipt by Dealer Company of this Letter of Intent. Once executed, this Letter of Intent cannot be modified except in writing by the parties. If Dealer Company does not execute and return an unaltered counterpart of this Letter of Intent to the undersigned within the ten (10) day period, then this Letter of Intent shall be deemed rescinded and this Letter of Intent shall be null and void and GM shall have no further obligations.

We look forward to your completion of the requirements and to the subsequent reinstatement of your dealership in the GM dealer network.

Very truly yours,

**GENERAL MOTORS LLC**

Attachments: Sample Wind-Down Amendment Agreement – Exhibit A
GM Bulletin 01-18 – Exhibit B
Wholesale Floorplan Package – Exhibit C

Acknowledged and agreed this _1st_ day of _July_, 2010.

LESON CHEVROLET COMPANY, INC.                 Mr Donald R Trapp

By: _[signature]_                              _[signature]_
                                               Individually
Title: _Dealer_

{00923401.1 07131-ARB 6/21/2010 10:19:45 AM}        3

PAGE 4/10 * RCVD AT 7/2/2010 3:56:50 PM [Central Daylight Time] * SVR:ARRIGHTFAX/0 * DNIS:66550 * CSID:5043740240    * DURATION (mm-ss):03-48