# EXHIBIT I



Edwin A. Stoutz, Jr.
W. Clifton Stoutz

**STOUTZ & STOUTZ**
ATTORNEYS AT LAW
3606 Canal Street
New Orleans, Louisiana 70119

Telephone: (504) 524-6000
(504) 899-0000
Fax: (504) 485-0123
Notary Public

September 13, 2010

Louisiana Motor Vehicle Commission
3519 12th Street
Metairie, Louisiana 70002-3427
ATTN: Lessie House, Executive Director

**LMVC**

SEP 14 2010

Re: Leson Chevrolet Company, Inc. v. General Motors, LLC

Dear Ms. House:

Leson Chevrolet Company, Inc. ("Leson") submits this Complaint against General Motors, LLC ("GM") and seeks to have the Louisiana Motor Vehicle Commission issue a cease and desist order prohibiting GM from terminating Leson's Sales and Service Agreement pursuant to La. R.S. 32:1259. Leson further seeks all other appropriate and equitable relief to which it may be entitled. GM has caused and continues to cause substantial and irreparable harm to Leson by violating multiple legislative provisions enacted to protect automobile dealers, including but not limited to the requirements of Section 747 of the Consolidated Appropriations Act of 2010, H.R. 3288 (the "Act"), La. R.S. 32:1261(1)(d) & (v), La. Civ. Code art. 1959 *et seq.* and its obligations of good faith and fair dealing.

## I.  Factual Background

For nearly eighty (80) years, Leson has been engaged in the business of operating an automobile dealership selling and servicing GM-manufactured automobiles on the West Bank of Jefferson Parish, Louisiana. On or about May 14, 2009, Leson received a letter from GM's predecessor, General Motors Corporation ("Old GM"), advising that Leson's existing Dealer Agreement would not be continued beyond October of 2010, as a result of Old GM's pending bankruptcy. On June 1, 2009, Old GM filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York under 11 U.S.C. § 363 of the Bankruptcy Code. As a result of the bankruptcy proceeding, GM terminated many dealer franchise agreements of Old GM, including that of Leson. Since receiving its "Wind Down" notice, Leson has been precluded from buying new GM motor vehicles from GM or participating in GM programs. But for GM's bankruptcy, GM's termination of Leson's Dealership Agreement would be unlawful under applicable state law, including but not limited to the various provisions of La. R.S. 32:1261(1)(d).

In response to concerns from the public and the automobile industry that many dealer terminations were arbitrary or unjust, Congress passed Section 747 of the Consolidated

1

COPY

3

EXHIBIT I

Appropriations Act of 2010, H.R. 3288 (the "Act"). A copy of the applicable provisions is attached for your reference as Exhibit "A." The Act gave "covered dealerships," such as Leson, the right to challenge GM's termination decision through binding arbitration.

## II.   Leson's Arbitration with GM

Firmly believing that its dealership was wrongfully terminated, Leson filed a demand for arbitration against GM with the American Arbitration Association ("AAA"). Pursuant to the Act, an arbitration hearing between Leson and GM was held in New Orleans, Louisiana, on June 3 and 4, 2010. After having heard the allegations and evidence of both Leson and GM, the arbitrator ruled in Leson's favor and ordered that Leson "shall be added to the dealer network of General Motors, LLC." This determination and order for reinstatement was made without conditions. See Arbitration Award, attached as Exhibit "B," at p. 2.

Pursuant to the clear and unambiguous express provisions of the Act:

> If the arbitrator finds in favor of a covered dealership, the covered manufacturer (GM) shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales and service agreement.

LMVC SEP 14 2010

The clear intent of the Act was to restore improperly rejected dealers to the same position as they were prior to Old GM's bankruptcy filing and not to provide GM with the opportunity to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as Leson.

## III.   GM Refuses to Issue Leson a Customary and Usual Letter of Intent

To date, GM has refused to issue to Leson a "customary and usual letter of intent," although more than seven (7) days have passed since GM's receipt of the arbitrator's determination in favor of Leson. Instead, GM demanded that Leson execute a "Letter of Intent" that was neither reasonable nor customary. Leson attempted to negotiate with GM concerning the terms and conditions of the Letter of Intent. GM has refused to meaningfully change the terms set forth in its Letter of Intent and imposed its own unreasonable and arbitrary deadlines to comply despite that no such deadline is required by the Act. Leson signed and returned GM's adhesionary Letter of Intent under duress. See La. Civ. Code art. 1959.

GM's letter of intent requires, inter alia, Leson to provide working capital in the amount of $2,850,000 within sixty (60) days. Leson maintains that its compliance with GM's working capital standard and other requirements has already been adjudicated and no further action is required on Leson's part for its reinstatement. The arbitrator's order recognizes that, "Leson has also met GM's capital requirements as these standards have not changed since 2003." See Exhibit "B" at p. 4.

If additional requirements for working capital were imposed upon Leson, GM's method of calculating the working capital standard is inappropriate, unfair and inequitable. Leson has

2

been unable to order inventory or participate in GM programs since it was wrongfully terminated in June of 2009. GM, however, refuses to take into account Leson's profits and losses during the GM imposed wind-down period for purposes of calculating Leson's working capital requirements. Significantly, Leson's inability to be as profitable as in years past or generate substantial "cash flow" in 2009 and 2010 was the direct result of GM's wrongful termination. Although Leson and other dealers can borrow their working capital needs if it is secured by real property pursuant to GM's accounting guidelines, no bank or other lender can ignore Leson's financial performance during the wind-down, when it was unable to be as profitable because of the inability to order any inventory or participate in GM's incentive programs.

Under the Act and Louisiana law, GM has an implied duty of good faith and fair dealing toward Leson in reinstating its GM franchise. GM's refusal to consider the last 18 months in which Leson was in wind down status in determining Leson's working capital requirement is a breach of good faith and fair dealing, ignores the commercial realities facing Leson which were directly created by GM and its wrongful termination, and does not comport with the required standards of commercial reasonableness. Wrongfully, GM seeks to ignore completely the financial hardship it imposed upon Leson in 2009 and 2010 through its unlawful termination and instead requires Leson to capitalize the dealership based on its 2008 performance. The unreasonable and inequitable position taken by GM is a de facto and wrongful termination of Leson in violation of the Act and La. R.S. 32:1261(1)(d). The Act envisioned the "reinstatement" of a dealership (i.e.: the restoration of a dealer to its previous position in GM's dealer network), not an opportunity for GM to impose upon the prevailing dealers onerous requirements that never applied to the parties' previous relationship. Thus, Leson must be allowed to order inventory and sell cars again before GM's working capital standards can be applied or considered.

Congress intended that those dealers who prevailed in their arbitrations under the Act would be reinstated as dealers within GM's dealer network. By conditioning Leson's reinstatement on its execution of GM's unconscionable Letter of Intent, GM is intentionally, knowingly, and willfully violating the Act and thwarting the law. As a direct and proximate result of GM's misconduct, as aforesaid, Leson has sustained, and is continuing to sustain, substantial losses, the amount of which is not presently known, due to its inability to sell new GM vehicles.

### V.   Prayer

Based upon the above facts, Leson is entitled to an order of this Commission:

   a.   Issuing a cease and desist order prohibiting La. R.S. 32:1259 GM from terminating Leson's Dealer Sales and Service Agreement;

   b.   Confirming that Leson has satisfied the criteria for reinstatement and will be immediately reinstated with the ability to order inventory and participate in all GM programs in the same manner as any dealer who was not under a wind down agreement;

LMVC
SEP 14 2010

3

    c.    Declaring the actions of GM tantamount to a termination in violation of La. R.S. 32:1261(1)(d);

    d.    Declaring the actions of GM to be unfair and in violation of LA R.S. 32:1261 (1) (v);

    e.    Declaring GM's refusal to reinstate Leson until it posts working capital in the amount of $2.85 million as inconsistent with the intent of the Act, the ruling of the Arbitrator and Louisiana law, which now governs the relationship between the parties; and

    f.    After due proceedings had an Order be issued mandating General Motors, LLC to reinstate Leson to its status quo immediately prior to its wind down letter.

    g.    That the commission set a prehearing conference be set at your earliest convenience;

    h.    That the commission assign this for hearing before the 3 member panel as provided for by L.R.S. 32:1233 A (3) (a) & (b);

    i.    Providing any other relief as this Commission deems just and proper.

Very truly yours,

Edwin A. Stoutz, Jr.

Enclosures

cc: Leson Chevrolet Company, Inc.
    Mark Beebe, Esq.
    Johnny L. Domiano, Jr., Esq.

LMVC
SEP 14 2010