# EXHIBIT K

09-50026-mg Doc 7435-8 Filed 10/19/10 Entered 10/19/10 06:26:31 Exhibit K Pg 2 of 11
Case 2:10-cv-03290-EEF-KWR Document 1-11 Filed 09/27/10 Page 1 of 10

09-50026-mg Doc 7435-8 Filed 10/19/10 Entered 10/19/10 06:26:31 Exhibit K Pg 2 of 11
Case 2:10-cv-03290-EEF-KWR Document 1-11 Filed 09/27/10 Page 1 of 10

09-50026-mg Doc 7435-8 Filed 10/19/10 Entered 10/19/10 06:26:31 Exhibit K Pg 2 of 11
Case 2:10-cv-03290-EEF-KWR Document 1-11 Filed 09/27/10 Page 1 of 10

09-50026-mg Doc 7435-8 Filed 10/19/10 Entered 10/19/10 06:26:31 Exhibit K
Case 2:10-cv-03290-EEF-KWR Document 1-11 Filed 09/27/10 Page 1 of 10
Pg 2 of 11

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LESON CHEVROLET COMPANY, INC. | CIVIL ACTION NO. |
| VERSUS | |
| GENERAL MOTORS LLC | SECTION " " <br> JUDGE <br><br> MAG. DIV. " " <br> MAGISTRATE |

### NOTICE OF REMOVAL

The Notice of Removal of Defendant, General Motors LLC ("GM"), removing this civil action from the Louisiana Motor Vehicle Commission, and to the extent required, reserving any and all rights, objections, and defenses, respectfully represents as follows:

### BACKGROUND

1.

Plaintiff, Leson Chevrolet Company, Inc. ("Leson"), at all pertinent times herein was and is a Chevrolet motor vehicle dealer, and which since June of 2009 has been operating under a "Wind-down Agreement" specifically approved and authorized by the United States Bankruptcy Court for the Southern District of New York.

2.

In 2008 and 2009, General Motors Corporation ("Old GM"), which was the manufacturer and distributor of Chevrolet products, experienced severe financial distress. One of the causes of Old GM's financial situation was its legacy dealer network. *See In re General Motors Corp.*,

EXHIBIT K

407 B.R. 463, 513-14 (Bankr. S.D.N.Y. 2009) ("All concerned with GM's future knew that GM had to slim down and improve its dealer network.").

3.

After extensive discussions with the United States Government, Old GM commenced a Chapter 11 bankruptcy proceeding to implement a sale of substantially all of its assets under §363 of the Bankruptcy Code. *See* 11 U.S.C. §363. The bankruptcy case was filed on June 1, 2009 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

4.

As part of the bankruptcy process, a new company (now known as GM), was formed. GM purchased some of Old GM's assets. GM agreed to assume the dealer agreements of some, but not all, of Old GM's dealers. As the Bankruptcy Court stated, the sale from Old GM to GM "contemplated the assumption by GM and the assignment to . . . GM of dealer franchise agreements relating to 4,100 of its 6,000 dealerships, modified in ways to make GM more competitive . . . But GM cannot take all of the dealers on the same basis." *In re General Motors Corp.*, 407 B.R. at 476.

5.

In preparation for the bankruptcy proceedings, Old GM used objective criteria to identify the poorly performing dealers who would not become part of GM's dealer network on a continuing basis.

6.

Old GM identified Leson as one of the poorly performing dealers who would not become part of GM's dealer network.

7.

Although Old GM, during the bankruptcy, could have simply terminated its agreements with the non-retained dealers, such as Leson, Old GM instead offered these non-retained dealers a "Wind-down Agreement." The purpose of the "Wind-down Agreement" was to provide the non-retained dealers with an opportunity to avoid an abrupt termination of their operations and also to provide them with financial assistance.

8.

When it filed for bankruptcy on June 1, 2009, Old GM sent Leson a letter notifying Leson of the decision that it would not be retained as part of GM's dealer network. Ex. 1. Old GM also provided Leson with a "Wind-down Agreement," which Leson signed. Ex. 2. In the agreement:

- Leson was given until October 31, 2010 within which to wind down its operations.

- Old GM agreed that Leson would be paid a very substantial sum as financial assistance.[1]

- The parties agreed that the Bankruptcy Court would have "exclusive jurisdiction" concerning the "Wind-down Agreement" and "any other matter relating thereto."

- Leson agreed not to institute "any proceeding in any court or administrative proceeding" against Old GM or its assignee.

- The parties agreed that Old GM or its assignee would have the right to "an immediate and permanent injunction to be issued by any court of competent jurisdiction" to prevent a breach of the agreement by Leson.

- Leson agreed that it would be obligated to pay attorney's fees to Old GM or its assignee in any action relating to Leson's breach of the agreement.

---

[1] The amount of the wind-down payment has been redacted in Exs. 2, 4 and 5.

{N2205125.1}                                    3

9.

As a part of the bankruptcy sale of certain assets from Old GM to GM, the Bankruptcy Court approved Old GM's assignment of its rights and obligations under the Leson "Wind-down Agreement" to GM.

10.

After the bankruptcy proceedings, certain GM dealers who had executed "Wind-down Agreements" sought relief from Congress and various bills were introduced that would have provided expansive rights to dealers who were part of the pre-bankruptcy networks. Congress chose not to proceed with any of those, however. Instead, Congress enacted a narrowly tailored right of review under Section 747 of the Consolidated Appropriations Act, 2010 (Pub. L. No. 111-117, 123 Stat. 3034 (2009)) (the "Arbitration Act" or "§ 747"). Ex. 3. That statute allowed these dealers to file arbitration claims applying to be reinstated or added to GM's dealer network.

11.

Under §747, an arbitrator was required to consider seven statutory factors and three balancing interests for determining whether a dealer "should be added to the [GM] dealer network." §747(d). If a dealer prevailed at the arbitration, the statute then required that GM issue "a customary and usual letter of intent to enter into a sales and service agreement" to the dealer. §747(e).

12.

Leson chose to arbitrate under §747. On June 18, 2010, the arbitrator determined that Leson had satisfied the factors and balancing interests under §747.

13.

As a result, in compliance with §747, GM sent its form "customary and usual letter of intent" to Leson (hereinafter "the LOI"). Ex. 4. The LOI outlines GM's standard business

{N2205125.1}                                  4

requirements to be a dealer. These requirements include, by way of example: a requirement that the dealer maintain a certain level of net working capital and a requirement that the dealer obtain a sufficient line of credit (normally referred to as "floor plan" financing) to finance the purchase of new vehicles from GM.

14.

The LOI provided that its terms would be implemented by means of an amendment to the "Wind-down Agreement."

15.

Leson signed the LOI on July 1, 2010. Ex. 5.

16.

Despite having signed the LOI, Leson later complained that certain terms of the LOI were "unfair." For example, Leson complained that the provision in the LOI that Leson maintain net working capital in the amount of $2.85 million was unfair. Additionally, Leson has apparently been unable to obtain a commitment for floor plan financing as is required by the LOI.

17.

The LOI required Leson to satisfy the terms of the LOI within sixty (60) days of the date of signature (meaning that the requirements under Leson's LOI would need to be satisfied by September 1, 2010).[2] However, at Leson's request, GM agreed to grant several extensions, with the most recent extension allowing Leson until the end of September, 2010, within which to satisfy the requirements in the LOI.

---

[2] The deadline for satisfying the net working capital requirement is October 31, 2010.

18.

Without prior notice to GM, Leson filed a complaint with the Louisiana Motor Vehicle Commission ("Commission") on September 14, 2010 (hereinafter "Commission Complaint"). Ex. 6. The Commission Complaint repeatedly avers that the LOI violates §747. The Commission Complaint expressly asks the Commission to interpret and apply federal law, *i.e.*, what Congress intended in §747.

19.

Also without prior notice to GM, Leson sought and obtained an ex parte order from the Commission. Ex. 7. The ex parte order prohibits GM from terminating its relationship with Leson until further proceedings are held before the Commission. The order was signed by the Executive Director of the Commission apparently without a meeting or vote of the Commission. This order is in direct conflict with the "Wind-down Agreement" which remains in full force and effect.

## JURISDICTION

20.

This matter, including all claims and causes of action herein, are removable to this Court pursuant to the following provisions, by way of example only: 28 U.S.C. §§157, 1331, 1332, 1334, 1441 and 1452.

21.

This Court has federal question jurisdiction under 28 U.S.C. §1331 in that this civil action arises under the laws of the United States. For example, on the face of the Commission Complaint, Leson seeks an interpretation of §747, which is a federal statute. Interpretation of that provision is the threshold and controlling issue in this matter.

22.

Furthermore, a federal question is not merely raised on the face of the Commission Complaint, state law is completely preempted under any scenario. As noted above, during its bankruptcy, Old GM executed and assigned "Wind-down Agreements" to GM under the Bankruptcy Court's orders covering non-retained dealers such as Leson. The Bankruptcy Court approved these "Wind-down Agreements." *See In re Gen. Motors Corp.*, 407 B.R. at 513-14. In that decision, the Bankruptcy Court found that to the extent that "dealer protection laws" (either state or federal) "impair the ability to reject, or to assume and assign, they must be trumped by federal bankruptcy law. And to the extent that non-bankruptcy law prohibits debtors and their contract counterparties from finding mutually satisfactory less draconian alternatives to rejection, it likewise must be trumped." *Id.* at 515; *see also id.* at 516. Thus, Leson's ultimate wind-down of operations was determined as a matter of federal bankruptcy law, and no state law claim could disrupt that order.

23.

Rather than undo the effect of these orders, §747 created a *limited* right for certain dealers to apply to be reinstated or added back to GM's network if they prevailed in the arbitration proceedings. It established a very narrow, specific form of relief for prevailing dealers: GM was to provide them with GM's "customary and usual letter of intent to enter into a sales and service agreement." *See* § 747(e). Section 747 does not mention any additional state law remedies. Section 747 occupies the entire field of whether and how a prevailing arbitrating dealer must be treated by GM, leaving no room for state laws. Thus, Leson's challenge to the LOI and the "Wind-down Agreement" is a matter of federal law.

24.

This Court also has bankruptcy jurisdiction under 28 U.S.C. §1334 because this action arises in, arises under, and/or is related to Old GM's bankruptcy proceeding, pending in Case No. 09-50026 on the docket of the United States Bankruptcy Court for the Southern District of New York. This matter is also a "core proceeding."

25.

By way of example, in the "Wind-Down Agreement" executed by Leson and Old GM, which was subsequently assigned to and assumed by GM and approved by the Bankruptcy Court, the Bankruptcy Court retained "exclusive jurisdiction" over any disputes concerning the issues in that agreement "and any other matter relating thereto." Ex. 2, ¶13.

26.

The current business relationship between Leson and GM continues to be governed by the "Wind-down Agreement" and, thus, this matter relates to that agreement. Indeed, until Leson timely fulfills the requirements of the LOI, Leson's relationship with GM is solely governed by the "Wind-down Agreement." Yet the Commission Complaint and the ex parte order entered by the Commission seek relief which is in direct conflict with the terms of that agreement.

27.

Moreover, the LOI itself provides that Leson's reinstatement will be controlled by an amendment to the "Wind-down Agreement." Exs. 4 and 5. That amendment retains the provision of the "Wind-down Agreement" pertaining to *exclusive* bankruptcy court jurisdiction. *Id.*

28.

This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332. The parties are diverse and the amount in controversy exceeds $75,000.00.

29.

Leson is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Harvey, Louisiana.

30.

GM is and was a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Michigan.

31.

The amount in controversy exceeds $75,000.00 because the subject of the Commission Complaint (that is, Leson's dealership interest) is significantly greater than $75,000.00.

## **REMOVAL IS PROPER**

32.

GM was served with the Commission Complaint on September 17, 2010. Thus, this Notice of Removal is timely.

33.

The United States District Court for the Eastern District of Louisiana is the federal judicial district embracing the Louisiana Motor Vehicle Commission, where this matter was originally filed (the Commission is based in Metairie, Louisiana). Venue, therefore, is proper in this district.

34.

GM attaches a copy of any and all process, pleadings, and orders served upon it. Exs. 6 – 8.

35.

GM certifies, through undersigned counsel, that the Notice of Removal will be served promptly on Leson and will be filed with the Commission.

WHEREFORE, Defendant, General Motors LLC, prays that its Notice of Removal be deemed good and sufficient.

Respectfully submitted,

/s/ *Thomas A. Casey, Jr.*
DAVID G. RADLAUER (LA 11058)
THOMAS A. CASEY, JR. (LA 01291)
Jones, Walker, Waechter, Poitevent
  Carrere & Denegre, LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8518
Facsimile: (504) 589-8518
E-mail: dradlauer@joneswalker.com
E-mail: tcaseyjr@joneswalker.com

Counsel for Defendant, General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of September, 2010, I caused a copy of the foregoing Notice of Removal to be sent by telecopy and via first class mail, postage pre-paid to the following:

Leson Chevrolet Company, Inc.
through its counsel of record:

EDWIN A. STOUTZ, JR.
Stoutz & Stoutz
3606 Canal Street
New Orleans, Louisiana 70119

/s/ *Thomas A. Casey, Jr.*
THOMAS A. CASEY, JR. (#1291)

{N2205125.1}                                10