# EXHIBIT L

1  GREGORY R. OXFORD (SGN 62333)    U FILED
   goxford@icclawfirm.com
2  ISAACS CLOUSE CROSE & OXFORD LLP
   21515 Hawthorne Boulevard, Suite 950
3  Torrance, California 90503                10 JUN 28 PM 3: 09
   Telephone: (310) 316-1990
4  Facsimile: (310) 316-1330          CLERK U.S. DISTRICT COURT
                                      CENTRAL DIST. OF CALIF.
                                           LOS ANGELES
5  Attorneys for Plaintiff
   General Motors LLC              BY:_____

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  GENERAL MOTORS LLC, a          )  CASE NO. CV10 4787-DMG
    Delaware limited liability company,  )            -CRC
13                                  )
            Plaintiff,              )  COMPLAINT FOR
14                                  )  (1) DECLARATORY
       vs.                         )  JUDGMENT THAT WRITTEN
15                                  )  SETTLEMENT AGREEMENT
    SANTA MONICA GROUP, INC., a    )  IN BINDING AND
16  California corporation; KAYVAN )  ENFORCABLE ; (2) SPECIFIC
    NAIMI, an individual; FARINAZ  )  PERFORMANCE OF WRITTEN
17  NAIMI, an individual; KAMRAN   )  SETTLEMENT AGREEMENT;
    NAIMI, an individual; and NILOFAR )  (3) INJUNCTIVE RELIEF
18  NAIMI, an individual,          )
                                    )
19          Defendants.            )

20

21        Plaintiff General Motors LLC, for its complaint herein, alleges as follows:

22                    **The Parties and Jurisdiction**

23        1.    Plaintiff General Motors LLC (hereinafter "plaintiff" or "GM"), is a

24  limited liability company organized and existing under the laws of the State of

25  Delaware with its principal place of business in Detroit, Michigan.  GM is in the

26  business of manufacturing and distributing new motor vehicles and related products

27  through a network of independent retail dealers throughout the United States,

28  including California.

                                                              Complaint

1        2.    Defendant Santa Monica Group, Inc. (hereinafter "SMG") is a

2    corporation organized and existing under the laws of the State of California, with its

3    principal place of business in Santa Monica, California. SMG operates as an

4    authorized Chevrolet and Buick dealer in Santa Monica, California pursuant to the

5    terms of a General Motors Dealer Sales and Service Agreement ("Dealer

6    Agreement"). Defendants Kayvan Naimi, Farinaz Naimi, Kamran Naimi and

7    Nilofar Naimi are citizens of the State of California and are the owners of SMG and

8    of the real property which is utilized in SMG's dealership operations.

9        3.    This Court has jurisdiction of this action under 28 U.S.C. § 1331(a)

10    because it arises under federal law, specifically the dealer arbitration provisions

11    contained in Section 747, Consolidated Appropriations Act, 2010, Pub. L. No. 111-

12    117, 123 Stat. 3034 (2009) ("Dealer Arbitration Act").

13        4.    Alternatively, this Court has jurisdiction under 28 U.S.C. §1332(a)(1)

14    because plaintiff and defendant are citizens of different states and the amount in

15    controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000)

16    exclusive of interest and costs.

17                    **Venue**

18        5.    Venue is proper in this district under 28 U.S.C. §1391(a)(1) because

19    defendant has its place of business within this district and, alternatively, pursuant to

20    28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving

21    rise to GM's claims against defendants occurred within this district.

22              **FACTUAL BACKGROUND**

23              Bankruptcy of General Motors Corporation

24        6.    General Motors Corporation n/k/a Motors Liquidation Company ("Old

25    GM") once was one of the world's largest corporations as a global manufacturer

26    and distributor of new motor vehicles and related products.

27        7.    Due to the rise of foreign competition, changing market conditions,

28    and other factors, Old GM gradually lost market share in the United States.

1      8.      When the financial markets collapsed in the fall of 2008, Old GM

2   faced a financial crisis. It did not have sufficient liquid assets to meet its short term

3   obligations and could not obtain sufficient credit to address its liquidity needs.

4      9.      Caught in a difficult situation, Old GM sought assistance from the

5   United States government. The government responded by authorizing a $ 13.4

6   billion loan to Old GM under the Troubled Asset Relief Program. In connection

7   with this loan, Old GM was required to present a restructuring plan to the

8   government no later than February 17, 2009.

9      10.     In its restructuring plan, Old GM proposed many significant business

10  changes, including a substantial reduction in the number of authorized GM

11  dealerships in the United States. Simply put, given Old GM's reduced market

12  share, it had too many dealerships; as a result, many dealerships had difficulty

13  maintaining the new vehicle sales volume necessary for them to be profitable and

14  reinvest in GM's retail automotive sales business.

15     11.     On March 30, 2009, the President's Automotive Task Force rejected

16  Old GM's restructuring plan, stating among other things that Old GM needed to

17  speed up and increase the proposed reductions in its dealer network.

18     12.     On June 1, 2009, Old GM was forced to file a voluntary petition for

19  bankruptcy in the United States Bankruptcy Court for the Southern District of New

20  York (the "Bankruptcy Court").

21     13.     The Bankruptcy Court subsequently approved the sale of certain assets

22  of Old GM to GM under section 363 of the Bankruptcy Code (11 U.S.C. § 363).

23  As part of this sale, the Bankruptcy Court approved further efforts to scale back Old

24  GM's dealer network.

25     14.     In most cases, Old GM executed and then assigned to GM "Wind-

26  Down Agreements" with virtually all GM dealers who were not going to be

27  retained by GM, including SMG. Under the Wind-Down Agreements, non-retained

28  dealers like SMG received compensation and were permitted to continue certain

3

1   dealership operations until October 31, 2010, when they were required to terminate

2   their Dealer Agreements. In a few cases in which non-retained dealers declined to

3   execute Wind-Down Agreements, Old GM successfully moved to reject the

4   dealers' executory Dealer Agreements under section 365 of the Bankruptcy Code

5   (11 U.S.C. § 365).

6       15.   After the section 363 sale closed on July 10, 2009, GM began doing

7   business outside bankruptcy under the terms and conditions approved by the

8   Bankruptcy Court.

9                              **The Arbitration Act**

10      16.   In December 2009, Congress passed and President Obama signed the

11  Dealer Arbitration Act which permitted "wind-down dealers" such as SMG to file

12  demands for arbitration and, if successful in arbitration, receive a "normal and

13  customary letter of intent" from GM that would permit them, assuming certain

14  conditions were satisfied, to be added back to the GM dealer network.

15      17.   SMG did file a demand for arbitration and, pursuant to procedures

16  contemplated by Congress and implemented by the American Arbitration

17  Association, an arbitration hearing was held before Arbitrator Lawrence J. Kaplan

18  on June 8 and 9, 2010 in Santa Ana, California. During the course of these

19  proceedings, GM and SMG entered into a confidential settlement and settlement

20  documentation was prepared which was executed on behalf of SMG on June 18,

21  2010 and delivered by counsel for SMG to counsel for GM on June 21, 2010. A

22  copy of the signed agreement ("Settlement Agreement") is submitted herewith with

23  an application permitting it to be filed under seal as Exhibit A to this complaint.

24      18.   On June 22, 2010, counsel for SMG, Michael M. Sieving, verbally

25  informed counsel for GM, Gregory R. Oxford, that, contrary to the Settlement

26  Agreement which requires SMG to request that AAA immediately dismiss the

27  arbitration proceedings, his clients had instructed him to attempt to schedule an

28

4

**sblatt**

| | |
|---|---|
| **From:** | Eric Snyder [esnyder@wilkauslander.com] |
| **Sent:** | Thursday, September 16, 2010 11:57 AM |
| **To:** | John Gentile; Steve Blatt |
| **Subject:** | FW: Westlaw Results : 2010 WL 2740166 |

See attached case. When GM could not get a dealer to execute an agreed to settlement, what did it do: it went into district court in California to restrain the continuation of the arbitration.

The name of the firm has changed to Wilk Auslander LLP. My new email address is esnyder@wilkauslander.com

Eric J. Snyder
Wilk Auslander LLP
675 Third Avenue
New York, New York 10017
Phone: (212) 421-2233
Direct Dial: (212) 981-2328
Facsimile: (212) 752-6380

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed within.

NOTES: The contents of this electronic mail message and any attachments are confidential, possibly privileged, and intended for the addressee(s) only. Only the addressee(s) may read, disseminate, retain or otherwise use this message and any attachments, and any Wilk Auslander LLP employee may do so only in accordance with Wilk Auslander's email and internet use policies and procedures from time to time in effect. If received in error, please immediately inform the sender and then delete this message without disclosing its contents to anyone or retaining a copy. Wilk Auslander LLP reserves the right to monitor and review the content of all e-mail communications sent to and received by its employees. Internet communications cannot be guaranteed to be secure or error-free as information could arrive late or contain viruses or be intercepted, corrupted, or lost. The sender, therefore, does not accept liability for any errors or omissions in the content of this message which arise as a result of Internet transmission. If verification is required please request a hard-copy version.

**From:** westlaw@westlaw.com [mailto:westlaw@westlaw.com]
**Sent:** Thursday, September 16, 2010 11:33 AM
**To:** Eric Snyder
**Subject:** Westlaw Results : 2010 WL 2740166

### Westlaw Delivery Summary Report for SNYDER,ERIC

| | |
|---|---|
| Your Search: | "Dealer Arbitration Act" |
| Date/Time of Request: | Thursday, September 16, 2010 10:33 Central |
| Client Identifier: | RALLY |
| Database: | ALLFEDS |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 213 |
| Documents: | 1 |
| Images: | 0 |
| Recipient(s): | esnyder@wilkauslander.com |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

1    additional hearing day with Arbitrator Kaplan in order to complete the arbitration

2    hearing.

3        19.    Under the Dealer Arbitration Act, arbitration hearings must be

4    completed no later than June 14, subject to the Arbitrator's power to extend this

5    deadline for up to 30 days. Arbitrator Kaplan has granted such an extension. As a

6    result, the arbitration between SMG and GM must be completed, if at all, no later

7    than July 14, 2010.

8        20.    SMG's failure to request immediate dismissal of the arbitration

9    proceedings and apparent attempt to repudiate the Settlement Agreement constitute

10   material breaches of the Settlement Agreement.

11       21.    GM has performed each and all of its obligations pursuant to the

12   Settlement Agreement except to the extent such performance has been prevented by

13   SMG's material breaches. The Settlement Agreement is a valid, binding and

14   enforceable contract that requires SMG to request dismissal of the arbitration

15   proceedings forthwith.

16       22.    Congress deliberately chose to limit the scope of arbitration under the

17   Dealer Arbitration Act. Arbitrators are only empowered to decide whether or not

18   the specific dealership should be added back to the GM dealer network. All other

19   issues that arise under the Act must be addressed by a court of competent

20   jurisdiction.

21       23.    Absent a prompt order from this Court (a) requiring SMG to

22   specifically perform its obligations under the Settlement Agreement, including its

23   obligation to request dismissal of the arbitration proceedings, or (b) enjoining SMG

24   from continuing to prosecute the arbitration proceedings, GM will be required to

25   complete the arbitration proceedings within a very short period of time at

26   significant expense and, more importantly, will be required to run the risk of

27   suffering an adverse determination – the precise risk that the parties mutually

28   agreed to avoid by entering into the Settlement Agreement.

1    24. Beyond SMG's agreement to request immediate dismissal of the

2 AAA arbitration proceedings, Paragraphs 4.1 and 4.2 of the Settlement Agreement

3 include a broad form of release in which SMG releases and discharges (with

4 specified exceptions) all known and unknown claims against GM. Paragraph 4.3

5 includes a "covenant not to sue" GM which includes SMG's commitment not to

6 "assert any claim that is covered by the release provision in paragraphs 4.1 and

7 4.2," which obviously includes SMG's claim under the Dealer Arbitration Act

8 which it is now attempting to revive.

9    25. Paragraph 4.3 goes on to provide that, in the event that SMG attempts

10 to assert a claim that is barred by the broad form of release found in paragraphs 4.1

11 and 4.2, GM will suffer irreparable harm and therefore shall be entitled to

12 immediate equitable relief:

13    "Notwithstanding anything to the contrary, the Dealer Parties [*i.e.*,

14    SMG and the Naimis] acknowledge and agree that any breach of this

15    covenant not to sue will cause irreparable harm to GM and therefore

16    agree that GM shall be entitled to available equitable remedies,

17    including, without limitation, injunctive relief, upon the breach of

18    such covenant not to sue by any of the Dealer Parties."

19    26. Finally, paragraph 4.4 of the Settlement Agreement provides that

20    "SMG ... shall indemnify, defend and hold GM, its Affiliates

21    and their respective members, partners, venturers, stockholders,

22    officers, directors, employees, agents, spouses, legal representatives,

23    successors and assigns (the "GM Indemnified Parties") harmless,

24    from and against any and all claims, demands, fines, penalties, suits,

25    causes of action, liabilities, losses, damages, costs of settlement, and

26    expenses (including, without limitation, reasonable attorneys' fees and

27    costs) which may be imposed upon or incurred by the GM

28    Indemnified Parties, or any of them, arising from, relating to, or

1    caused by [SMG's] breach of this Agreement or SMG's execution or

2    delivery of or performance under this Agreement."

### FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

5    27.    GM repeats and incorporates by reference its allegations contained in

6    paragraphs 1 through 26 *supra*.

7    28.    SMG by its repudiation and material breach of the Settlement

8    Agreement has created an actual controversy concerning the enforceability of that

9    agreement. By virtue of the clear provisions of the Settlement Agreement, GM is

10    entitled pursuant to 28 U.S.C. § 2201 *et seq.* to a judicial declaration that the

11    Settlement Agreement is a valid, binding and enforceable contract and obligation of

12    SMG and that SMG accordingly is required to request immediate dismissal of the

13    AAA arbitration proceedings and perform its other obligations under the Settlement

14    Agreement, including the submission to the California New Motor Vehicle Board,

15    of a proposed Stipulated Decision in order that the terms of the settlement can be

16    fully implemented as soon as possible.

### SECOND CLAIM FOR RELIEF

### (Specific Performance of Settlement Agreement)

19    29.    GM repeats and incorporates by reference its allegations contained in

20    paragraphs 1 through 28 *supra*.

21    30.    The Settlement Agreement is a valid, binding and enforceable contract

22    between SMG and GM.

23    31.    SMG has materially breached and repudiated the contract.

24    32.    SMG's breach threatens GM with irreparable harm inasmuch as

25    without judicial intervention enforcing the Settlement Agreement GM will be

26    forced to complete the arbitration proceedings which SMG has agreed to dismiss

27    and to run the risk of an adverse determination which it bargained to avoid.

28

7

33.    GM has no adequate remedy at law, as damages will not adequately compensate if for the risk of an adverse determination in the arbitration, which will force GM to continue involuntarily and indefinitely its unsatisfactory contractual relationship with SMG.  Absent the beneficial provisions of the Settlement Agreement, SMG's continued status as a Buick and Chevrolet dealer will injure GM in an amount not readily calculable but certainly in excess of $75,000 exclusive of interest and costs inasmuch as (a) SMG does not effectively sell Buick and Chevrolet vehicles in its assigned market in Santa Monica and West Los Angeles; in fact, its new vehicle sales performance for Chevrolet in 2008 was the worst of any Chevrolet dealer in the State of California which remains in business; and (b) SMG due to state franchise laws (which are preempted by the Dealer Arbitration Act) would, absent the beneficial provisions of the Settlement Agreement, be in a position to block the appointment of additional Buick and Chevrolet dealers in or near its assigned market area by prosecuting "protest" proceedings with the California New Motor Vehicle Board ("Board") under Veh. Code § 3062, further damaging GM's efforts to improve the sales of new Chevrolet and Buick vehicles in Santa Monica, West Los Angeles and Culver City and their environs for an indefinite time.

34.    GM has performed, or stands ready to perform, its obligations under the Settlement Agreement contingent upon a judgment and decree from this Court ordering SMG to specifically perform its obligations under that agreement.

35.    GM based on the facts stated above is entitled to a judgment and decree requiring SMG to perform each and all of its obligations under the Settlement Agreement forthwith.

### THIRD CLAIM FOR RELIEF
### (Preliminary and Permanent Injunction)

36.    GM repeats and incorporates by reference its allegations contained in paragraphs 1 through 35 *supra*.

8

1    37.    By reason of the foregoing alleged facts, including the threatened

2    irreparable harm to GM which SMG has conceded in paragraph 4.3 of the

3    Settlement Agreement, GM is entitled to a preliminary and permanent injunction

4    prohibiting SMG from prosecuting its arbitration claim under the Dealer Arbitration

5    Act, including without limitation scheduling a third day of hearing before Arbitrator

6    Kaplan or otherwise continuing to prosecute its arbitration claim against GM.

7    WHEREFORE, GM prays judgment as follows:

8    (A)    For a declaratory judgment that the Settlement Agreement is a valid,

9    binding and enforceable contract and obligation of SMG which requires it to

10    request immediate dismissal of the AAA arbitration proceedings and take all other

11    steps which that agreement requires SMG to take in order to fully implement the

12    terms of the settlement;

13    (B)    For an order requiring SMG to perform all of its obligations under

14    the Settlement Agreement forthwith, including without limitation its obligation to

15    request that the American Arbitration Association dismiss the arbitration

16    proceedings before Arbitrator Kaplan and take all other steps which the agreement

17    requires SMG to take in order to fully implement the terms of the settlement;

18    (C)    For a preliminary and permanent injunction commanding SMG to

19    cease and desist forthwith from any further prosecution of the AAA arbitration

20    proceedings;

21    (D)    For an award of attorney's fees and costs of suit incurred herein

22    pursuant to paragraph 4.4 of the Settlement Agreement and applicable law; and

23    (E)    For such other or further relief as the Court may deem proper.

24    DATED: June 28, 2010          GREGORY R. OXFORD
                                     ISAACS CLOUSE CROSE & OXFORD LLP
25

26                                   By: _____
27                                        Gregory R. Oxford
                                     Attorneys for Plaintiff
28                                   General Motors LLC

9

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 21515 Hawthorne Blvd., Suite 950, Torrance, California 90503.

X   VIA U.S. MAIL on June 28, 2010, I served the foregoing documents described as **COMPLAINT; APPLICATION FOR ORDER PERMITTING FILING OF EXHIBIT A UNDER SEAL; EXHIBIT A; CERTIFICATION OF INTERESTED PARTIES** on the parties in this action by U.S. mail, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

X   VIA ELECTRONIC MAIL on June 28, 2010, I served the foregoing documents described as **COMPLAINT; APPLICATION FOR ORDER PERMITTING FILING OF EXHIBIT A UNDER SEAL; EXHIBIT A; CERTIFICATION OF INTERESTED PARTIES** on the parties in this action by U.S. mail, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

X   VIA FAXSIMILE on June 28, 2010, I served the foregoing documents described as **COMPLAINT; APPLICATION FOR ORDER PERMITTING FILING OF EXHIBIT A UNDER SEAL; EXHIBIT A; CERTIFICATION OF INTERESTED PARTIES** on the parties in this action by U.S. mail, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Michael M. Sieving
1801 Parkcourt Place, Suite F-101
Santa Ana, CA 92701

Executed on June 28, 2010 at Torrance, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gwendolyn Oxford

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV10- 4787 DMG (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address: Gregory R. Ox    d SBN 62???
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
(310) 316-1990
(310) 316-1330 (facsimile)

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL MOTORS LLC,<br>*see attached*<br>v.<br>SANTA MONICA GROUP, INC.,<br>*See Attached* | CASE NUMBER<br><br>**CV10 4787**-DMG(RCx)<br><br><br>**SUMMONS** |

PLAINTIFF(S)

DEFENDANT(S).

TO:    DEFENDANT(S): Santa Monica Group, Inc., Kayvan Naimi, Farinaz Naimi, Kamran Naimi and
Nilofar Naimi

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Gregory R. Oxford_____, whose address is _21515 Hawthorne Boulevard, Suite 950, Torrance, California 90503_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __**2 8 JUN 2010**.__

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1  GREGORY R. OXFORD (SGN 62333)
   goxford@icclawfirm.com
2  ISAACS CLOUSE CROSE & OXFORD LLP
   21515 Hawthorne Boulevard, Suite 950
3  Torrance, California 90503
   Telephone: (310) 316-1990
4  Facsimile: (310) 316-1330

5  Attorneys for Plaintiff
   General Motors LLC
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12  GENERAL MOTORS LLC, a            )    CASE NO.
    Delaware limited liability company,  )
13                                    )
            Plaintiff,                )    COMPLAINT FOR
14                                    )    (1) DECLARATORY
        vs.                          )    JUDGMENT THAT WRITTEN
15                                    )    SETTLEMENT AGREEMENT
    SANTA MONICA GROUP, INC., a       )    IN BINDING AND
16  California corporation; KAYVAN    )    ENFORCABLE ; (2) SPECIFIC
    NAIMI, an individual; FARINAZ    )    PERFORMANCE OF WRITTEN
17  NAIMI, an individual; KAMRAN      )    SETTLEMENT AGREEMENT;
    NAIMI, an individual; and NILOFAR )    (3) INJUNCTIVE RELIEF
18  NAIMI, an individual,            )
                                     )
19            Defendants.            )

20

21     Plaintiff General Motors LLC, for its complaint herein, alleges as follows:

22                    **The Parties and Jurisdiction**

23         1.    Plaintiff General Motors LLC (hereinafter "plaintiff" or "GM"), is a

24  limited liability company organized and existing under the laws of the State of

25  Delaware with its principal place of business in Detroit, Michigan.  GM is in the

26  business of manufacturing and distributing new motor vehicles and related products

27  through a network of independent retail dealers throughout the United States,

28  including California.

                                                        Complaint

Case 2:10-cv-04787-DMG-PLA    Document 1    Filed 06/28/10    Page 15 of 19    Page ID #:15

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| GENERAL MOTORS LLC | SANTA MONICA GROUP, INC.; KAYVAN NAIMI; FARINAZ NAIMI; KAMRAN NAIMI; and NILOFAR NAIMI |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Gregory R. Oxford, Isaacs Clouse Crose & Oxford LLP<br>21515 Hawthorne Boulevard, Suite 950, Torrance CA 90503<br>(310) 316-1990 | Michael M. Sieving, Law Offices of Michael M. Sieving<br>1801 Park Court Place, Suite F-101, Santa Ana CA 92701<br>(714) 541-0034 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Consolidated Appropriations Act, sec. 747, 2010, P.L.111-117; declaratory relief; specific performance; injunction; enforcement of written settlement agreement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV10 4787**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Incorporated in Delaware; principal place of business in Michigan |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles (all defendants) |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date June 28, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# EXHIBIT M

Westlaw

Not Reported in F.Supp.2d, 2010 WL 2740166 (C.D.Cal.)
**(Cite as: 2010 WL 2740166 (C.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
GENERAL MOTORS LLC, a Delaware limited li-
ability company, Plaintiff,
v.
SANTA MONICA GROUP, INC., et al., Defendants.
**No. CV 10-04787 DMG (RCx).**

July 9, 2010.

Gregory R. Oxford, Issacs Clouse Crose & Oxford
LLP, Torrance, CA, for Plaintiff.

**ORDER GRANTING PRELIMINARY
INJUNCTION**

DOLLY M. GEE, District Judge.

*1 This matter is before the Court on the Order to
Show Cause why a preliminary injunction should not
issue, which was set for hearing on July 9, 2010. For
the reasons set forth below, the preliminary injunc-
tion is GRANTED.

**I.**

**BACKGROUND**

On June 28, 2010, Plaintiff filed a complaint in this
Court seeking (1) declaratory judgment, (2) specific
performance, and (3) preliminary and permanent in-
junction. On June 29, 2010, Plaintiff filed an applica-
tion for temporary restraining order ("TRO") and
order to show cause why a preliminary injunction
should not issue seeking to restrain Defendants Santa
Monica Group, Inc. ("SMG"), Kayvan Naimi, Fari-
naz Naimi, Kamran Naimi and Nilofar Naimi from
continuing to prosecute **arbitration** proceedings
pending before the AAA and **Arbitrator** Kaplan,
Case No. 72-532-00050-10 pursuant to the **Dealer
Arbitration Act.**. Defendants filed an opposition on
July 1, 2010, and on the same day, Plaintiff filed its
reply. According to Defendants' opposition, the **arbi-
tration** is scheduled to resume on July 13, 2010. In
its reply, GM urged the Court to grant the TRO or,

alternatively, schedule a prompt preliminary injunc-
tion hearing in advance of the July 13 hearing date
set by the **Arbitrator**. On July 2, 2010, in light of the
resumption date for the **arbitration** and Plaintiff's
alternative request for a prompt hearing on its request
for preliminary injunction, this Court, rather than
ruling on the TRO application, ordered Defendants to
appear on July 9, 2010 to show cause why a prelimi-
nary injunction should not issue.

**II.**

**LEGAL STANDARD GOVERNING
PRELIMINARY INJUNCTIONS**

Federal Rule of Civil Procedure 65 governs the issu-
ance of preliminary injunctions. The purpose of such
injunctions is to preserve the rights and relative posi-
tions of the parties, *i.e.,* the *status quo,* until a final
judgment issues. *See* U.S. Philips Corp. v. KBC Bank
N.V., 590 F.3d 1091, 1094 (9th Cir.2010) (citing
Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101
S.Ct. 1830, 68 L.Ed.2d 175 (1981)). In light of this
purpose and because the factual record under consid-
eration at the preliminary injunction stage may differ
materially from the fully developed factual record,
preliminary injunctions frequently provide little guid-
ance as to the appropriate disposition on the merits.
*See* Marlyn Nutraceuticals, Inc. v. Mucos Pharma
GmbH & Co., 571 F.3d 873, 876-77 (9th Cir.2009);
*see also* Brown v. Chote, 411 U.S. 452, 456, 93 S.Ct.
1732, 36 L.Ed.2d 420 (1973).

Plaintiffs seeking a preliminary injunction in a case
involving the public interest must show that (1) they
are likely to succeed on the merits; (2) they are likely
to suffer irreparable harm in the absence of prelimi-
nary relief; (3) the balance of equities tips in their
favor; and (4) an injunction is in the public interest.
Dominguez v. Schwarzenegger, 596 F.3d 1087, 1092
(9th Cir.2010), petition for cert. filed, 78 USLW
3581 (Mar. 24, 2010); *see also* Winter v. Natural Res.
Def. Council, Inc., --- U.S. ----, 129 S.Ct. 365, 374,
172 L.Ed.2d 249 (2008).

**III.**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2740166 (C.D.Cal.)
**(Cite as: 2010 WL 2740166 (C.D.Cal.))**

### DISCUSSION

**\*2** Plaintiff seeks a preliminary injunction restraining and enjoining Defendant SMG, based on a valid and binding written settlement agreement, from continuing to prosecute **arbitration** proceedings now pending before the American **Arbitration** Association ("AAA") as AAA Case No. 72-532-0050-10 ("AAA **Arbitration**") pursuant to section 747, Consolidated Appropriations Act, 2010, Pub. Law 11-117, 123 Stat. 3034 (2009) (the "Dealer **Arbitration** Act").

### A. Plaintiff Has Demonstrated A Likelihood Of Success On The Merits

All parties agree that pursuant to a request for **arbitration** by SMG, the parties herein were involved in **arbitration** proceedings before **Arbitrator** Kaplan on June 8 and 10, 2010. In **arbitration**, Defendants brought their claims for reinstatement of their franchise thereby challenging SMG's "Wind-Down Agreement," [FN1] under which non-retained **dealers** like SMG were permitted to continue certain dealership operations until October 31, 2010, at which time they were required to terminate their **Dealer** Agreement. During the course of these proceedings, the parties engaged in settlement negotiations. All parties executed the Settlement and Deferred Termination Agreement and Release, which states that "[t]his Settlement and Deferred Termination Agreement and Release ('Agreement') is entered into as of June 9, 2010 by and between General Motors LLC ('GM'), on the one hand, and Santa Monica Group, Inc. ('SMG') and SMG's owners Kayvan Naimi, Farinaz Naimi, Kamran Naimi and Nilofar Naimi ('Owners'), on the other hand, collectively the 'Parties.' Among its terms, the Agreement provides that "[u]pon execution and delivery of this Agreement (a) SMG shall immediately request that the American **Arbitration** Association dismiss the **Arbitration** ...."

> FN1. GM's predecessor, General Motors Corporation n/k/a Motors Liquidation Company ("Old GM"), as part of its bankruptcy proceedings, entered into these "Wind-Down Agreements" with dealerships Old GM chose not to retain. These dealerships were given the right to file **arbitration** claims under the **Dealer Arbitration** Act.

Although Defendants concede that they executed the

Agreement, their sole contention on the merits is that the settlement contemplated the execution and/or filing of other documents, which Defendants have not done. However, as explained by Plaintiff in its reply brief, "[w]hile it is true that the Settlement Agreement contemplates preparation and execution of additional documents, *the Settlement Agreement obligates the parties, including defendants, to prepare and execute those documents* ...." (GM Reply, ¶ 2 [Doc. # 1] )

As such, Plaintiff has established that it has a binding written settlement agreement under which SMG is obligated to request that the American Arbitration Association dismiss the Arbitration.[FN2] Evidence presented by defendants that they have not executed subsequent documents or performed subsequent acts does not negate the formation of a binding contract. Instead, it is evidence of defendants' breach thereof.

> FN2. In their opposition to the preliminary injunction, Defendants, referring to the Settlement and Deferred Termination Agreement and Release as the "initial settlement agreement," concede that they executed the agreement on June 18, 2010. It is unclear why they make a point of saying that they notified counsel for GM "(prior to the execution by GM of the initial settlement agreement) that, upon reviewing the terms of what the initial settlement agreement required, they could not execute or authorize the execution of the remainder of the documents necessary to complete the settlement terms." [Doc. # 15.] Defendants do not argue that this prior notification to GM's counsel was a revocation of their offer prior to GM's execution in acceptance thereof. Defendants do not controvert Plaintiff's evidence that prior to Defendants' execution of the "initial settlement agreement," Defendants were informed by GM's counsel that the draft which Defendants subsequently signed was acceptable to GM. As such, Defendants' execution and delivery of the "initial settlement agreement" constituted acceptance of GM's offer. "Parties may engage in preliminary negotiations, oral or written, in order to reach an agreement. These negotiations ordinarily result in a binding contract when all of the terms are definitely under-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2740166 (C.D.Cal.)
**(Cite as: 2010 WL 2740166 (C.D.Cal.))**

stood, even though the parties intended that a formal writing embodying these terms was to be executed later." 1 B.E. Witkin, *Summary of California Law* § 133 (10th ed. 2005) (Citations omitted).

**B. *Plaintiff Is Likely To Suffer Irreparable Harm In The Absence Of Preliminary Relief***

Issuance of a preliminary injunction will maintain the *status quo.* In the absence of a preliminary injunction, the arbitration proceedings will resume on July 13, 2010, which would completely deprive GM of an important benefit of its bargain. Moreover, absent a preliminary injunction, GM would face the risk of an adverse arbitration award which, during the pendency of this action, could prevent GM from establishing a planned Chevrolet dealership in Culver City-a harm for which legal compensation is not easily ascertainable.

\*3 Consequently, Plaintiff has demonstrated a likelihood of irreparable harm unless a preliminary injunction is issued.

**C. *The Balance Of Equities Tips In Plaintiff's Favor***

In assessing whether a plaintiff has met its burden of establishing that the balance of equities tips in its favor, the district court has a duty to balance the interests of all parties and weigh the damage to each. *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138 (9th Cir.2009).

As stated above, a preliminary injunction will maintain the *status quo,* in the absence of which Plaintiff is likely to suffer irreparable harm. On the other hand, if a preliminary injunction issues, Defendants will lose its opportunity to reopen arbitration proceedings. This potential harm Defendants face is lessened because they do not controvert the fact that they voluntarily entered into the Agreement promising that "[u]pon execution and delivery of this Agreement (a) SMG shall immediately request that the American Arbitration Association dismiss the Arbitration ...." (Settlement Agreement, ¶ 2.1)

Accordingly, the Court finds that the balance of equities tips in favor of Plaintiff.

**D. *An Injunction Is In The Public Interest***

When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction. *Stormans, 586 F.3d at 1138-39.* If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction. *Id. at 1139.* In this case, the public interest is served by the enforcement of a valid and binding contract.

Plaintiff has demonstrated that (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Consequently, the Court grants Plaintiff's Motion for Preliminary Injunction.

**E. *Posting of A Bond***

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding the seemingly mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Couturier,* 572 F.3d 1067, 1086 (9th Cir.2009) (internal quotation marks omitted). A district court may dispense with the filing of a bond if it concludes that there is no realistic likelihood of harm to the defendant from the injunction. *Id.* The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the defendant. *Philips Elecs. N. Am. Corp. v. Hope,* 631 F.Supp.2d 705, 724 n. 14 (M.D.N.C.2009) (citing *Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir.1996).

\*4 Here, Defendants identify no costs or damages that they would sustain as a result of an injunction, except for their attorneys' fees and costs, which Defendants estimate to be approximately $50,000. The Court therefore orders that Plaintiff post a security

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2740166 (C.D.Cal.)
**(Cite as: 2010 WL 2740166 (C.D.Cal.))**

bond in connection with the injunction in the amount of $50,000.

### IV.

### *CONCLUSION*

In light of the foregoing, the Court GRANTS a Preliminary Injunction as follows: Defendants Santa Monica Group, Inc., Kayvan Naimi, Farinaz Naimi, Kamran Naimi and Nilofar Naimi, their officers, agents, servants, employees, attorneys and all those in active concert or participation with Defendants are hereby restrained and enjoined, pending trial on the merits herein, from continuing to prosecute **arbitration** proceedings now pending before the AAA and **Arbitrator** Kaplan, Case No. 72-532-00050-10, pursuant to the **Dealer Arbitration Act**.

Defendant shall post a bond in the amount of $50,000.

IT IS SO ORDERED.

C.D.Cal.,2010.
General Motors LLC v. Santa Monica Group, Inc.
Not Reported in F.Supp.2d, 2010 WL 2740166 (C.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT N

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LESON CHEVROLET COMPANY, INC.   CIVIL ACTION NO.

VERSUS

GENERAL MOTORS LLC     SECTION "   "
             JUDGE

             MAG. DIV. "   "
             MAGISTRATE

## NOTICE OF REMOVAL

The Notice of Removal of Defendant, General Motors LLC ("GM"), removing this civil action from the Louisiana Motor Vehicle Commission, and to the extent required, reserving any and all rights, objections, and defenses, respectfully represents as follows:

## BACKGROUND

1.

Plaintiff, Leson Chevrolet Company, Inc. ("Leson"), at all pertinent times herein was and is a Chevrolet motor vehicle dealer, and which since June of 2009 has been operating under a "Wind-down Agreement" specifically approved and authorized by the United States Bankruptcy Court for the Southern District of New York.

2.

In 2008 and 2009, General Motors Corporation ("Old GM"), which was the manufacturer and distributor of Chevrolet products, experienced severe financial distress. One of the causes of Old GM's financial situation was its legacy dealer network. *See In re General Motors Corp.,*

{N2205125.1}          1

407 B.R. 463, 513-14 (Bankr. S.D.N.Y. 2009) ("All concerned with GM's future knew that GM
had to slim down and improve its dealer network.").

3.

After extensive discussions with the United States Government, Old GM commenced a
Chapter 11 bankruptcy proceeding to implement a sale of substantially all of its assets under
§363 of the Bankruptcy Code. *See* 11 U.S.C. §363. The bankruptcy case was filed on June 1,
2009 in the United States Bankruptcy Court for the Southern District of New York (the
"Bankruptcy Court").

4.

As part of the bankruptcy process, a new company (now known as GM), was formed.
GM purchased some of Old GM's assets. GM agreed to assume the dealer agreements of some,
but not all, of Old GM's dealers. As the Bankruptcy Court stated, the sale from Old GM to GM
"contemplated the assumption by GM and the assignment to . . . GM of dealer franchise
agreements relating to 4,100 of its 6,000 dealerships, modified in ways to make GM more
competitive . . . But GM cannot take all of the dealers on the same basis." *In re General Motors
Corp.*, 407 B.R. at 476.

5.

In preparation for the bankruptcy proceedings, Old GM used objective criteria to identify
the poorly performing dealers who would not become part of GM's dealer network on a
continuing basis.

6.

Old GM identified Leson as one of the poorly performing dealers who would not become
part of GM's dealer network.

7.

Although Old GM, during the bankruptcy, could have simply terminated its agreements with the non-retained dealers, such as Leson, Old GM instead offered these non-retained dealers a "Wind-down Agreement." The purpose of the "Wind-down Agreement" was to provide the non-retained dealers with an opportunity to avoid an abrupt termination of their operations and also to provide them with financial assistance.

8.

When it filed for bankruptcy on June 1, 2009, Old GM sent Leson a letter notifying Leson of the decision that it would not be retained as part of GM's dealer network. Ex. 1. Old GM also provided Leson with a "Wind-down Agreement," which Leson signed. Ex. 2. In the agreement:

- Leson was given until October 31, 2010 within which to wind down its operations.

- Old GM agreed that Leson would be paid a very substantial sum as financial assistance.[1]

- The parties agreed that the Bankruptcy Court would have "exclusive jurisdiction" concerning the "Wind-down Agreement" and "any other matter relating thereto."

- Leson agreed not to institute "any proceeding in any court or administrative proceeding" against Old GM or its assignee.

- The parties agreed that Old GM or its assignee would have the right to "an immediate and permanent injunction to be issued by any court of competent jurisdiction" to prevent a breach of the agreement by Leson.

- Leson agreed that it would be obligated to pay attorney's fees to Old GM or its assignee in any action relating to Leson's breach of the agreement.

---

[1] The amount of the wind-down payment has been redacted in Exs. 2, 4 and 5.

{N2205125.1}                                    3

9.

As a part of the bankruptcy sale of certain assets from Old GM to GM, the Bankruptcy
Court approved Old GM's assignment of its rights and obligations under the Leson "Wind-down
Agreement" to GM.

10.

After the bankruptcy proceedings, certain GM dealers who had executed "Wind-down
Agreements" sought relief from Congress and various bills were introduced that would have
provided expansive rights to dealers who were part of the pre-bankruptcy networks. Congress
chose not to proceed with any of those, however. Instead, Congress enacted a narrowly tailored
right of review under Section 747 of the Consolidated Appropriations Act, 2010 (Pub. L. No.
111-117, 123 Stat. 3034 (2009)) (the "Arbitration Act" or "§ 747"). Ex. 3. That statute allowed
these dealers to file arbitration claims applying to be reinstated or added to GM's dealer network.

11.

Under §747, an arbitrator was required to consider seven statutory factors and three
balancing interests for determining whether a dealer "should be added to the [GM] dealer
network." §747(d). If a dealer prevailed at the arbitration, the statute then required that GM
issue "a customary and usual letter of intent to enter into a sales and service agreement" to the
dealer. §747(e).

12.

Leson chose to arbitrate under §747. On June 18, 2010, the arbitrator determined that
Leson had satisfied the factors and balancing interests under §747.

13.

As a result, in compliance with §747, GM sent its form "customary and usual letter of
intent" to Leson (hereinafter "the LOI"). Ex. 4. The LOI outlines GM's standard business

4

requirements to be a dealer. These requirements include, by way of example: a requirement that

the dealer maintain a certain level of net working capital and a requirement that the dealer obtain

a sufficient line of credit (normally referred to as "floor plan" financing) to finance the purchase

of new vehicles from GM.

14.

The LOI provided that its terms would be implemented by means of an amendment to the

"Wind-down Agreement."

15.

Leson signed the LOI on July 1, 2010. Ex. 5.

16.

Despite having signed the LOI, Leson later complained that certain terms of the LOI

were "unfair." For example, Leson complained that the provision in the LOI that Leson maintain

net working capital in the amount of $2.85 million was unfair. Additionally, Leson has

apparently been unable to obtain a commitment for floor plan financing as is required by the

LOI.

17.

The LOI required Leson to satisfy the terms of the LOI within sixty (60) days of the date

of signature (meaning that the requirements under Leson's LOI would need to be satisfied by

September 1, 2010).[2] However, at Leson's request, GM agreed to grant several extensions, with

the most recent extension allowing Leson until the end of September, 2010, within which to

satisfy the requirements in the LOI.

---

[2] The deadline for satisfying the net working capital requirement is October 31, 2010.

18.

Without prior notice to GM, Leson filed a complaint with the Louisiana Motor Vehicle Commission ("Commission") on September 14, 2010 (hereinafter "Commission Complaint"). Ex. 6. The Commission Complaint repeatedly avers that the LOI violates §747. The Commission Complaint expressly asks the Commission to interpret and apply federal law, *i.e.,* what Congress intended in §747.

19.

Also without prior notice to GM, Leson sought and obtained an ex parte order from the Commission. Ex. 7. The ex parte order prohibits GM from terminating its relationship with Leson until further proceedings are held before the Commission. The order was signed by the Executive Director of the Commission apparently without a meeting or vote of the Commission. This order is in direct conflict with the "Wind-down Agreement" which remains in full force and effect.

### JURISDICTION

20.

This matter, including all claims and causes of action herein, are removable to this Court pursuant to the following provisions, by way of example only: 28 U.S.C. §§157, 1331, 1332, 1334, 1441 and 1452.

21.

This Court has federal question jurisdiction under 28 U.S.C. §1331 in that this civil action arises under the laws of the United States. For example, on the face of the Commission Complaint, Leson seeks an interpretation of §747, which is a federal statute. Interpretation of that provision is the threshold and controlling issue in this matter.

22.

Furthermore, a federal question is not merely raised on the face of the Commission

Complaint, state law is completely preempted under any scenario. As noted above, during its

bankruptcy, Old GM executed and assigned "Wind-down Agreements" to GM under the

Bankruptcy Court's orders covering non-retained dealers such as Leson. The Bankruptcy Court

approved these "Wind-down Agreements." *See In re Gen. Motors Corp.*, 407 B.R. at 513-14. In

that decision, the Bankruptcy Court found that to the extent that "dealer protection laws" (either

state or federal) "impair the ability to reject, or to assume and assign, they must be trumped by

federal bankruptcy law. And to the extent that non-bankruptcy law prohibits debtors and their

contract counterparties from finding mutually satisfactory less draconian alternatives to rejection,

it likewise must be trumped." *Id.* at 515; *see also id.* at 516. Thus, Leson's ultimate wind-down

of operations was determined as a matter of federal bankruptcy law, and no state law claim could

disrupt that order.

23.

Rather than undo the effect of these orders, §747 created a *limited* right for certain dealers

to apply to be reinstated or added back to GM's network if they prevailed in the arbitration

proceedings. It established a very narrow, specific form of relief for prevailing dealers: GM was

to provide them with GM's "customary and usual letter of intent to enter into a sales and service

agreement." *See* § 747(e). Section 747 does not mention any additional state law remedies.

Section 747 occupies the entire field of whether and how a prevailing arbitrating dealer must be

treated by GM, leaving no room for state laws. Thus, Leson's challenge to the LOI and the

"Wind-down Agreement" is a matter of federal law.

24.

This Court also has bankruptcy jurisdiction under 28 U.S.C. §1334 because this action

arises in, arises under, and/or is related to Old GM's bankruptcy proceeding, pending in Case

No. 09-50026 on the docket of the United States Bankruptcy Court for the Southern District of

New York. This matter is also a "core proceeding."

25.

By way of example, in the "Wind-Down Agreement" executed by Leson and Old GM,

which was subsequently assigned to and assumed by GM and approved by the Bankruptcy

Court, the Bankruptcy Court retained "exclusive jurisdiction" over any disputes concerning the

issues in that agreement "and any other matter relating thereto." Ex. 2, ¶13.

26.

The current business relationship between Leson and GM continues to be governed by

the "Wind-down Agreement" and, thus, this matter relates to that agreement. Indeed, until Leson

timely fulfills the requirements of the LOI, Leson's relationship with GM is solely governed by

the "Wind-down Agreement." Yet the Commission Complaint and the ex parte order entered by

the Commission seek relief which is in direct conflict with the terms of that agreement.

27.

Moreover, the LOI itself provides that Leson's reinstatement will be controlled by an

amendment to the "Wind-down Agreement." Exs. 4 and 5. That amendment retains the

provision of the "Wind-down Agreement" pertaining to *exclusive* bankruptcy court jurisdiction.

*Id.*

28.

This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332. The parties are

diverse and the amount in controversy exceeds $75,000.00.

29.

Leson is a corporation organized and existing under the laws of the State of Louisiana

with its principal place of business in Harvey, Louisiana.

30.

GM is and was a limited liability company organized and existing under the laws of the

State of Delaware with its principal place of business in Michigan.

31.

The amount in controversy exceeds $75,000.00 because the subject of the Commission

Complaint (that is, Leson's dealership interest) is significantly greater than $75,000.00.

## REMOVAL IS PROPER

32.

GM was served with the Commission Complaint on September 17, 2010. Thus, this

Notice of Removal is timely.

33.

The United States District Court for the Eastern District of Louisiana is the federal

judicial district embracing the Louisiana Motor Vehicle Commission, where this matter was

originally filed (the Commission is based in Metairie, Louisiana). Venue, therefore, is proper in

this district.

34.

GM attaches a copy of any and all process, pleadings, and orders served upon it. Exs. 6 –

8.

35.

GM certifies, through undersigned counsel, that the Notice of Removal will be served

promptly on Leson and will be filed with the Commission.

WHEREFORE, Defendant, General Motors LLC, prays that its Notice of Removal be deemed good and sufficient.

Respectfully submitted,

/s/ Thomas A. Casey, Jr.
DAVID G. RADLAUER (LA 11058)
THOMAS A. CASEY, JR. (LA 01291)
Jones, Walker, Waechter, Poitevent
  Carrere & Denegre, LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8518
Facsimile: (504) 589-8518
E-mail: dradlauer@joneswalker.com
E-mail: tcaseyjr@joneswalker.com

Counsel for Defendant, General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of September, 2010, I caused a copy of the foregoing Notice of Removal to be sent by telecopy and via first class mail, postage pre-paid to the following:

Leson Chevrolet Company, Inc.
through its counsel of record:

EDWIN A. STOUTZ, JR.
Stoutz & Stoutz
3606 Canal Street
New Orleans, Louisiana  70119

/s/ Thomas A. Casey, Jr.
THOMAS A. CASEY, JR. (#1291)