UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**HEARING:**    **October 26, 2010 (9:45 a.m.)**
**OBJECTIONS:**    **October 19, 2010**

-------------------------------------------------------- x

In re:                                                                    :

                                                                          : Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,    :

f/k/a/ General Motors Corp., et al.,                      : Case No. 09-50026 (REG)

                                                                          :

                                          Debtors.         : (Jointly Administered)

                                                                          :

-------------------------------------------------------- x

# RESPONSE OF THE UNITED STATES TRUSTEE

# REGARDING THIRD INTERIM APPLICATIONS

# FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

## (October 26, 2010 HEARING)

# TABLE OF CONTENTS

I.      Summary Statement                                                          1

II.     Jurisdiction, Venue and Statutory Predicates                               4

III.    Factual Background                                                         5

IV.     Legal Standards                                                            8

        A.      The United States Trustee Has a Duty to Review and
                Comment Upon Applications for Compensation and
                Object When Appropriate

        B.      Each Professional Seeking Compensation Bears the               9
                Burden of Establishing That Its Requested Compensation
                is Reasonable, and the Court's Review for Reasonableness
                Protects the Estate from Overreaching

        C.      Interim Compensation                                          12

        D.      Actual and Necessary Expenses                                 14

V.      Response                                                              14

        A.      General Statement Applicable to All Professionals             14

        B.      Specific Response Regarding the Individual Applications       15

                1.      Hourly Rate Increases                                 16

                2.      Compensation for the Fee Review Process               17

VI.     Conclusion                                                           20

## TABLE OF AUTHORITIES

### Reported Decisions

In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002)      13

In re American Preferred Prescription, Inc., 218 B.R. 680      14
    (Bankr. E.D.N.Y. 1998)

In re Bank of New England Corp., 134 B.R. 450 (Bankr. D. Mass. 1991),      15
    aff'd, 142 B.R. 584 (D. Mass. 1992)

In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987)      12

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007)      11

In re Benassi, 72 B.R. 44 (D.Minn.1987)      12

In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997)      11, 12, 14

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988)      11

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007)      5

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994)      12

CCT Commc'ns, Inc., No. 07-10210, 2010 WL 3386947      18
    (Bankr. S.D.N.Y. Aug. 24, 2010)

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995)      12, 13, 15

In re Codesco, Inc., 15 B.R. 354 (Bankr. S.D.N.Y. 1981)      13

Cohen & Thiros v Keen Enters., 44 B.R. 570 (N.D. Ind.1984)      12

Matter of Consolidated Bancshares, Inc., 785 F.2d 1249 (5th Cir.1986)      11

In re Engel, 124 F.3d 567 (3d Cir. 1997)      10

In re Evans, 153 B.R. 960 (Bankr. E.D. Pa. 1993)      12

In re Fibermark, Inc., 349 B.R. 385 (Bnkr. D. Vt. 2006)      18

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982)                    13

In re General Coffee Corp., 39 B.R. 7 (Bankr. S.D. Fla. 1984)                     13

In re Hillsborough Holdings Corp., 125 B.R. 837 (Bankr. M.D. Fla. 1991)           13

Howard & Zukin Capital v. High River Ltd. P'ship,                                 11
        No. 05 Civ. 5726 (BSJ), 2007 WL 1217268 (S.D.N.Y., Apr. 24, 2007)

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.),                 10
        210 B.R. 19 (Bankr. 2d Cir. 1997)

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997)                            10

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005)         14

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993)                       10

In re Lee Tractor Co., Inc., 2008 WL 2788413 (Bankr. E.D.N.C. 2008)               17

In re Manoa Fin. Co., Inc., 853 F.2d 687 (9th Cir. 1998)                          11

In re Meade Land and Dev. Co., 527 F.2d 280 (3rd Cir.1975)                        12

In re National Buy-Rite, Inc., 10 B.R. 380 (Bankr. N.D. Ga. 1981)                 13

In re National Paragon Corp., 87 B.R. 11 (E.D. Pa.1988)                           11

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008)               10

In re Reconversion Techs, Inc., 216 B.R. 46 (Bankr. N.D. Okla. 1997)              17

In re Spanjer Bros., Inc., 191 B.R. 738 (Bankr. N.D. Ill. 1996)                   11, 13

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987)                      14

In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650 (Bankr. W.D.N.Y. 2001)   18

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995)                            11

In re Temple Retirement Community, Inc., 97 B.R. 333 (Bankr. W.D.Tex.1989)        12

In re Teraforce Tech. Corp., 347 B.R. 838 (Bankr. N.D. Tex. 2006)                 17

<u>In re UNR Indus., Inc.</u>, 72 B.R. 796  (Bankr. N.D. Ill. 1987)                    13

<u>Zolfo, Cooper & Co. v.Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253 (3d Cir. 1995)        11

## **Statutes**

11 U.S.C. § 101 et seq., the "Bankruptcy Code"
    11 U.S.C. § 105(a)                                          7
    11 U.S.C. § 326                                             9
    11 U.S.C. § 327                                             9
    11 U.S.C. § 328                                             9
    11 U.S.C. § 329                                             9
    11 U.S.C. § 330                              4, 9,10,12,18
    11 U.S.C. § 330(a)(1)                                       9
    11 U.S.C. § 330(a)(1)(A)                                    9
    11 U.S.C. § 330(a)(1)(B)                                 9 , 14
    11 U.S.C. § 330(a)(3)                                    9, 10
    11 U.S.C. § 330(a)(3)(E)                                   18
    11 U.S.C. § 330(a)(3)(F)                                   18
    11 U.S.C. § 331                                 4, 7,12, 13
    11 U.S.C. § 586                                             8
    11 U.S.C. § 1103                                            9
    11 U.S.C. § 1107(a)                                         5
    11 U.S.C. § 1108                                            5
    11 U.S.C. § 1121(d)                                         7
28 U.S.C. § 157                                                 4
28 U.S.C. § 157(b)                                              4
28 U.S.C. § 586(a)(3)(A)(i)-(ii)                                9
28 U.S.C. § 1334                                                4
28 U.S.C. § 1408                                                4
28 U.S.C. §  1930(a)(6)                                         8

## **Federal Rules, Local Rules, Local Orders & Other Guidelines**

Federal Rule of Bankruptcy Procedure 2016                            4, 10, 18

Federal Rule of Bankruptcy Procedure 2016(a)                              10

Local Bankruptcy Rules for the Southern District of New York, Rule 2016-1      4

Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in      4, 5
Southern District of New York Bankruptcy Cases

United States Trustee Guidelines for Reviewing Applications for Compensation and                4
Reimbursement of Expenses Filed Under 11 U.S.C. § 330

**RESPONSE OF THE UNITED STATES TRUSTEE REGARDING SECOND INTERIM
APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES (October 26, 2010 Hearing)**

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the **"United States Trustee"**),

has reviewed the third interim applications for compensation and reimbursement of expenses (the

**"Applications"**) filed by eight of the retained professionals (the **"Retained Professionals"**).[1]

With exceptions involving three recently-approved Retained Professionals, the Applications seek

awards of compensation and reimbursement of out-of-pocket expenses for the period from

February 1, 2010, through May 31, 2010 (the **"Third Fee Period"**).[2]

## I. SUMMARY STATEMENT

As set forth in the table below, for services performed during the Third Fee Period, the

Retained Professionals seek interim allowances of fees totaling $13,716,403.54, and

reimbursement of out-of-pocket expenses totaling $843,931.67, for total compensation of

$14,560,335.21 for the Third Fee Period.[3]

---

[1]  Eight of 19 fee applications filed by the Retained Professionals for the Third Fee Period
were originally scheduled to be considered at the September 24, 2010 hearing.  At present, the
hearing on the initial 8 applications plus the remaining 11 fee applications has been calendared
for October 26, 2010.  See Docket No. 6472.

[2]  The three exceptions are:  (1) Caplin & Drysdale, whose Application covers services
beginning October 6, 2009; (2) Stutzman Bromberg Esserman & Plifka, for services beginning
February 24, 2010; and (3) Dean M. Trafelet, as of November 13, 2009.  At issue are the first
interim Applications filed by these Retained Professionals (rather than third interim
applications).

[3]  Adding in the 11 Applications to be heard on October 26, 2010 (see n. 1 above), all 18
Retained Professionals (LFR, Inc. has filed fee applications for its Second and Third Fee Periods)
are seeking interim allowances totaling $14,560,335.21 for the Third Fee Period (aggregating

The United States Trustee objects to two broad categories of fees sought in the Applications.  First, certain Retained Professionals unilaterally implemented hourly rate increases during the case, but they have not proved that the increases are reasonable, particularly as measured against similarly-skilled non-bankruptcy practitioners.  Second, the fees sought for responding to United States Trustee or Fee Examiner inquiries about or objections to fees and expenses–so-called "fees on fees"–are likewise unreasonable.  Outside of bankruptcy, professionals do not bill their clients for responding to and resolving fee questions and disputes. Not only are fees on fees not compensable outside of bankruptcy, but permitting recovery for fees incurred by Professionals not preparing compliant fee applications in the first instance establishes the wrong incentive.  Omissions and deficiencies can be cured without consequence, and the cost of curing will yield additional compensation to the professional.  That is, unless fees on fees are disallowed as unreasonable.

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Weil Gotshal & Manges, Debtors' counsel | Feb. 1, 2010 - May 31, 2010 | $5,316,122.75[4] | $141,489.52 | 9,321.40 |

$13,716,403.54 in fees, plus $843,931.67 in expenses).  Together with the fees and expenses of AP Services, LLC for the period December 1, 2009 through May 31, 2010, the fees and expenses for 19 professionals total $33,996,428.79 (aggregating $31,937,216.64 in fees, plus $2,059,212.15 in expenses).

[4]  It is the understanding of the United States Trustee that, due to computer error, Weil Gotshal's fee application inadvertently includes fees for time billed at the full rate for time sheet review, rather than at half rate in accordance with the Court's prior ruling.  Transcript for Hearing on the Second Interim Fee Applications dated July 6, 2010, at 16. Docket No. 6369. Though not yet memorialized, the Office of the United States Trustee has been advised that the firm intends to charge only half of the applicable fees.  The amount set forth in this table does not include the proposed reduction of $86,772.50.

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Plante & Moran, PLLC, Debtors' accountants | Feb. 1, 2010 - May 31, 2010 | $332,405.34 | $5,870.07 | 1,442.70 |
| Brownfield Partners, Debtors' environmental consultant | Feb. 1, 2010 - May 31, 2010 | $416,398.80 | $14,930.47 | 1,413.50 |
| Claro Group, LLC, Debtors' environmental consultant | Feb. 1, 2010 - May 31, 2010 | $527,315.50 | $7,886.51 | 1,796.40 |
| Kramer Levin Naftalis & Frankel, Committee's counsel | Feb. 1, 2010 - May 31, 2010 | $644,939.25 | $7,592.26 | 1,226.10 |
| Dean M. Trafelet, Legal Representative | Nov. 13, 2009 - May 31, 2010 | $38,936.00 | $2,050.61 | 49.60 |
| Stutzman Bromberg, Esserman & Plifka, Legal Representative's counsel | Feb. 24, 2010 - May 31, 2010 | $63,314.50 | $3,712.78 | 140.00 |
| Caplin & Drysdale, Asbestos Committee's counsel | Oct. 6, 2009 - May 31, 2010 | $497,190.50 | $50,070.63 | 1,088.70 |
| Analysis Research Planning Corp. | Mar. 1, 2010 - May 31, 2010 | $16,034.50 | $0.00 | 52.00 |
| Bates White LLC | Mar. 16, 2010- May 31, 2010 | $198,620.00 | $776.00 | 513.90 |
| Butzel Long, a Professional Corporation | Feb. 1, 2010 - May 31, 2010 | $429,844.75 | $20,791.35 | 1,009.50 |
| Deloitte Tax, LLP | Jan. 1, 2010 - May 31, 2010 | $579,353.00 | $135.00 | 908.60 |
| FTI Consulting, Inc. | Feb. 1, 2010 - May 31, 2010 | $2,000,000.00 | $11,713.21 | 2,950.60 |
| Hamilton Rabinovitz & Associates, Inc. | Feb. 1, 2010 - May 31, 2010 | $7,970.00 | $0.00 | 18.20 |

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Jenner & Block, LLP | Feb. 1, 2010 - May 31, 2010 | $38,943.30 | $2,390.68 | 90.70 |
| Legal Analysis Systems, Inc. | Apr. 28, 2010- May 31, 2010 | $34,232.00 | $969.19 | 83.10 |
| LFR, Inc. | Oct. 1, 2009- Jan. 31, 2010 | $1,034,548.40 | $182,730.34 | 6,805.77 |
| LFR, Inc. | Feb. 1, 2010 - May 31, 2010 | $1,010,871.20 | $387,715.62 | 6,398.40 |
| Togut Segal & Segal, LLP | Dec. 21, 2009- May 31, 2010 | $529,364.00 | $3,107.43 | 270.90 |
| Totals | | $13,716,403.79 | $843,931.67 | |

## II. JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the relief sought in the Applications are sections 330

and 331 of title 11, United States Code (the **"Bankruptcy Code"**).  This matter was initiated

pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**),

Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the **"Local**

**Rules"**), Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals

in Southern District of New York Bankruptcy Cases (the **"Local Guidelines"**), and the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 (the **"UST Guidelines,"** together with the Local

-4-

Guidelines, are referred to herein collectively as the **"Guidelines"**).[5]

### III.  FACTUAL BACKGROUND

3.      On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed voluntary cases under Chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate and manage their business and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5.      On June 3, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the **"Creditors' Committee"**).  Docket No. 356.  On November 30, 2009, the United States Trustee filed the First Amended Appointment of Official Committee of Unsecured Creditors.  Docket No. 4552.

6.      On March 5, 2010, the United States Trustee appointed the Committee of Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**).  Docket No. 5206.

7.      On June 1, 2009, the Debtors filed a motion seeking the entry of an order authorizing and approving the sale of substantially all of their assets to NGMCO, Inc., a U.S. Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, together with all documents and agreements as well as all exhibits, schedules and addenda thereto (as amended, the **"MPA"**).  Docket No. 92.

---

[5] The Bankruptcy Court for this judicial district has adopted the UST Guidelines.  See In re Brous, 370 B.R. 563, 569 at n.8. (Bankr. S.D.N.Y. 2007); and General Order M-389, at 1.

8.      On July 5, 2009, the Court entered an Order (I) Authorizing Sale of Assets

Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a

U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain

Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting

Related Relief was entered (the **"Sale Order"**).  Docket No. 2968.

9.      On July 9, 2009, NGMCO, Inc. filed the required documentation to change its

name to General Motors Company ("**GMCo.**").

10.     On July 10, 2009, pursuant to the MPA and this Court's Sale Order, GMCo.

acquired substantially all of the assets of the Debtors.

11.     Since then, under the jurisdiction and supervision of this Court, the Debtors have

engaged in an orderly wind-down of their remaining assets and business affairs.

12.     On December 23, 2009, the United States Trustee, the Debtors, and the Creditors'

Committee entered into a stipulation for the appointment of Brady C. Williamson as fee

examiner (the **"Fee Examiner"**).  Docket No. 4707.  Pursuant to the Stipulation and Order With

Respect to Appointment of a Fee Examiner (the **"Fee Examiner Order,"** entered December 23

2009), the Court approved the appointment.

13.     On February 16, 2010, under the Fee Examiner Order, the Fee Examiner filed his

First Status Report and Advisory, which summarizes the applicable standards and guidelines for

the Fee Examiner's review of applications to approve reasonable fees and reimburse reasonable

costs in the Debtors' bankruptcy cases (the **"First Advisory"**).  Docket No. 5002.

14.     On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory

(the **"Second Advisory"**), which broadens the First Advisory.  Docket No. 5463.

15.     On July 30, 2010, the Court entered the Order Authorizing the Extended

Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner to cover

the Third Fee Period.  Docket No. 6375.

16.     On August 7, 2009, the Court entered its Order, Pursuant to §§ 105(a) and 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (the **"Interim Compensation Order"**).  Docket No. 3711.

17.     The Applications generally reflect that, pursuant to the Interim Compensation

Order, the Retained Professionals have received payment of 80 percent of the fees accrued during

the First, Second, and Third Fee Periods.

18.     On May 27, 2010, the Court entered the "Order Granting Debtors' Third Motion

Pursuant to 11 U.S.C. § 1121(d) Extending Exclusive Periods in which Debtors May File chapter

11 Plan and Solicit Acceptance Thereof," extending the time by which the Debtors could file a

chapter 11 plan to September 27, 2010, and extending the Debtors' time to solicit acceptances of

their chapter 11 plan to November 29, 2010.  Docket No. 5986.

19.     On August 31, 2010, the Debtors filed the Debtors' Joint Chapter 11 Plan (the

"Plan") and the Disclosure Statement for Debtors' Joint Chapter 11 Plan (the "Disclosure

Statement"), Docket Nos. 6829 and 6830, respectively.  The Disclosure Statement has been

calendared for a hearing to be held on October 21, 2010.  Docket No. 6854.

20.     The Debtors are current with the filing of their monthly operating reports as of

August 2010.  Docket No. 7220.  The "Condensed Combined Debtors-In-Possession Statement

of Net Assets" (the **"Net Asset Sheet"**), which is contained in the Debtors' monthly operating

report for the period ending August 2010 (the **"August 2010 Operating Report"**), provides that

"Cash and Cash Equivalents" are $964,172,000.  Id., at 5.

21.    The Net Asset Sheet also indicates that total assets of the combined estates are

approximately $1.17 billion.  Id.

22.    The August 2010 Operating Report sets forth accrued professional fees of

$37,991,000 as of August, 2010.[6]  Id. at 5.  Measured differently, the Office of the United States

Trustee calculates that the total fees sought by the Retained Professionals as of the entry of the

Order granting the second interim applications, and certain adjourned first interim applications

(see Docket No. 6402), are $48,002,899, with expenses of $1,659,951.

23.    The Debtors are current with the payment of quarterly fees due to the United

States Trustee pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2010.

## IV.  LEGAL STANDARDS

A.    **The United States Trustee Has a Duty to Review and to Comment
Upon Applications for Compensation and to Object When Appropriate.**

Among the duties imposed upon a United States Trustee pursuant to 11 U.S.C. § 586, is

the duty, when appropriate, to review and object to fee applications:

> (a)    Each United States Trustee, within the region for which such United States
> Trustee is appointed, shall –
>      . . . .
>           (3) supervise the administration of cases and trustees in
> cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever the
> United States Trustee considers it to be appropriate –
>
>           (A)(i) reviewing, in accordance with procedural
>           guidelines adopted by the Executive Office of the
>           United States Trustee (which guidelines shall be
>           applied uniformly by the United States Trustee

---

[6]The monthly operating report for the period ending July 2010, identified accrued
professional fees for the period since the commencement of the cases of $39,894,000.

-8-

except when circumstances warrant different treatment), applications for compensation and reimbursement under section 330 of title 11; and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

. . . .

28 U.S.C. § 586(a)(3)(A)(i)-(ii).

**B.      Each Professional Seeking Compensation Bears the Burden of Establishing That Its Requested Compensation is Reasonable, and the Court's Review for Reasonableness Protects the Estate from Overreaching.**

Bankruptcy Code Section 330(a)(1) provides that only reasonable compensation and

necessary expenses may be allowed:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

. . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

-9-

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward thecompletion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[7]

11 U.S.C. § 330(a)(3).

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993).  To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (Bankr. 2d Cir. 1997);  In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008)

---

[7]      Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

(citations omitted); Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ),

2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); In re Keene Corp., 205 B.R. 690, 695

(Bankr. S.D.N.Y. 1997). The professional's burden of proof to show entitlement to fees should

"not be taken lightly, especially given that every dollar expended on legal fees results in a dollar

less that is available for distribution to the creditors." In re Spanjer Bros., Inc., 191 B.R. 738,

747 (Bankr. N.D. Ill. 1996). To satisfy its burden, an applicant must justify its charges with

detailed, specific, itemized documentation. In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y.

2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the

application for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to

the benefit to the estate. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo,

Cooper & Co. v.Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower

courts' denial of improperly documented and inadequately detailed expenses).

Courts serve a vitally important gate-keeping role in enforcing the Code's requirements

that only reasonable fees be approved and paid as well as maintaining public confidence in the

bankruptcy system itself:

> The affixing of a judge's signature to an order is not an empty formality. It
> is a judicial confirmation that the fees in question are in fact reasonable and do in
> fact represent compensation for actual and necessary services, measured against
> the various factors set out in the case law. In re Manoa Fin. Co., Inc., 853 F.2d
> 687, 690 (9th Cir.1988). See Matter of Consolidated Bancshares, Inc., 785 F.2d
> 1249, 1257 (5th Cir.1986). Because fees can be paid only upon court order, the
> court which signs that order must therefore be prepared to accept responsibility for
> its judicial actions by independently determining that court authorization for the
> fees is warranted. See In re National Paragon Corp., 87 B.R. 11, 13 (E.D.

Pa.1988); In re Benassi, 72 B.R. 44 (D. Minn. 1987); Cohen & Thiros v. Keen Enters., 44 B.R. 570, 574 (N.D. Ind. 1984), (citing In re Meade Land and Dev. Co., 527 F.2d 280, 284 (3rd Cir. 1975)).

In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr.W.D.Tex. 1989).  "[T]he judiciary should retain control of fees, given the sensitivies they generate and the need to promote public confidence in the system."  In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).  Other courts concur in the importance of judicial fee review and approval to maintaining public confidence in the bankruptcy system:

> The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law. We frequently read in newspaper stories that the public has a perception that bankruptcies are too expensive and that high professional fees are a significant cause of these high expenses.  Nothing better serves to allay these perceptions and fulfill public expectations than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to carefully review same and find it personally acceptable, irrespective of the (always welcomed) observation of the UST or other interested parties.

In re Evans, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993).  As the Third Circuit so aptly stated, "the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."  In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994).

## C.    Interim Compensation

Bankruptcy Code Section 331, permitting but not requiring interim compensation for professionals, incorporates the reasonableness requirements of 11 U.S.C. § 330.  See Bennett Funding, 213 B.R. at 244.  Even if the fee request is reasonable, however, whether interim compensation will be allowed, as well as the amount and timing of any payment, rests within the discretion of the bankruptcy court.   In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987); see

also, Spanjer Bros., 191 B.R. at 747 (interim fee awards are discretionary).  Bankruptcy Code

Section 331 "is permissive, nothing in that provision requires a court to grant an application for

interim compensation."  Child World, 185 B.R. at 17.  Thus, the statute "authorizes the award of

interim compensation, but does not mandate it,"  In re First Hartford Corp., 23 B.R. 729, 732

(Bankr. S.D.N.Y. 1982), and the Court may defer ruling until final application.  In re ACT Mfg.,

Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

    Whether fees allowed on an interim basis are also paid on an interim basis historically has

depended on the solvency of the bankruptcy estate.  In particular, "where there are insufficient

funds in the debtor's estate to pay interim allowances, these allowances may be deferred until a

time when unencumbered funds become available for payment."  First Hartford, 23 B.R. at 732

(granting interim allowances, but deferring payment until confirmation of reorganization plan

due to lack of unencumbered assets); In re Codesco, Inc., 15 B.R. 354, 356 (Bankr. S.D.N.Y.

1981) (payment deferred until unencumbered funds available for payment); In re National Buy-

Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981) (where the amount of administrative claims

exceeds the value of estate assets, professionals are not entitled to immediate payment of interim

compensation).

    Similarly, courts have denied interim compensation where professionals have "yet to

produce any cognizable and tangible results."  In re Hillsborough Holdings Corp., 125 B.R. 837,

840 (Bankr. M.D. Fla. 1991).  Interim compensation has also been denied, and moratoriums on

interim compensation imposed, until courts have been convinced the case is "moving towards a

point of resolution."  In re UNR Indus., Inc., 72 B.R. 796, 799 (Bankr. N.D. Ill. 1987); see also,

In re General Coffee Corp., 39 B.R. 7, 8 (Bankr. S.D. Fla. 1984) (denying all interim

compensation on grounds that allowances would be premature pending the resolution of the

chapter 11 case).

### D.      Actual and Necessary Expenses

Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are

actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish

enough specificity for the Court to establish whether a given expense was both actual and

necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005)

(quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are

"actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding,

213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper

representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87

(Bankr. E.D.N.Y. 1998).

### V.  RESPONSE

### A.      General Response Applicable to All Professionals

Meaningful fee discipline and control are critical here.  The total fees sought by the

Retained Professionals as of July 31, 2010, were $37,991,000, and $14,560,335.21 of these fees

and expenses were incurred during the Third Fee Period.[8]  Accordingly, consistent with prior

practice, the United States Trustee again respectfully requests a 10 percent deferral of payment,

or "holdback," of fees.  The imposition of a uniform, percentage holdback, while not statutorily

required, is appropriate as an incentive for timely resolution of the cases and as a check on

---

[8]This figure excludes AP Services' fees of $18,220,813.00 and expenses of $1,215,280.48
for the period of December 1, 2009, through May 31, 2010.  See note 3, supra.

-14-

potentially excessive interim allowances.  Child World, 185 B.R. at 18; see also, In re Bank of

New England Corp., 134 B.R. 450, 458-59 (Bankr D. Mass. 1991) (because of the difficulty in

determining whether services were actual and necessary when reviewing interim applications,

bankruptcy courts routinely require percentage reductions until the end of the case), aff'd, 142

B.R. 584 (D. Mass. 1992).

The deferral or holdback from any interim award is justified here both by the magnitude

of the cases and fees, as well as by the current status–the Disclosure Statement[9] has not been

approved, voting has not occurred, and the Plan has not been confirmed.  The outcome of the

confirmation process remains unknown despite positive developments regarding funding for the

four post-confirmation trusts proposed in the Plan.  Consequently, whether the Retained

Professionals performed services during the Third Fee Period that were beneficial toward

completion of the cases cannot be fully assessed at this time, and a 10% holdback is appropriate.

## B.   **Specific Response Regarding Individual Applications**

The Fee Examiner submitted draft reports and statements of limited objection

(collectively, the **"Reports"**) to the United States Trustee and each of the Retained Professionals

before filing the Reports with the Court.  The Reports identify various fee and expense issues

with respect to the applications for compensation and reimbursement of out-of-pocket expenses

to be considered on October 26, 2010.  Based upon the Office of the United States Trustee's

review of the Applications and the Fee Examiner's Reports, and consultations with the Fee

Examiner, the United States Trustee concurs with, and supports the fee and expense allowances

---

[9]As noted in paragraph 19 supra, a hearing to determine the adequacy of the Disclosure
Statement is scheduled to be held on October 21, 2010.

and disallowances recommended by the Fee Examiner in the Reports.

In particular, the United States Trustee objects to certain fees with respect to two specific issues identified by the Fee Examiner. The first issue is the reasonableness of a professional raising its hourly rates during the course of the bankruptcy proceedings. The second issue pertains to requests by the professionals for compensation for time spent responding to inquiries and objections from the United States Trustee and the Fee Examiner.

### 1.     Hourly Rate Increases

The United States Trustee objects to the rate increases unilaterally implemented by the professionals in these cases. For example, the Fee Examiner noted that Weil Gotshal seeks nearly $600,000 in fees – more than 10 percent of the total requested – attributable to hourly rate increases implemented during the Third Fee Period. See Fee Examiner's Objection to Third Interim Fee Application of Weil Gotshal ¶ 18, at 7, Docket No. 6984. The Fee Examiner recommends that approval of the rate increases implemented during the Third Fee Period be conditioned upon an affidavit and certification that permits the Court to determine the reasonableness of the rate increases. Fee Examiner's Summary and Recommendations for the Applications Covering the Third Fee Period, at 5-6, Docket No. 7009. Prospectively, the Fee Examiner requests that the Court require a formal notice for any rate increases. Id. at 6.

As discussed above, the applicant bears the burden of proving the reasonableness of its requested compensation. This burden should include justifying that any rate increase is reasonable. Stated differently, Retained Professionals that seek approval of rate increases in their fee applications for the Third Fee Period are not automatically entitled to it. Although there is no per se prohibition against rate increases during a Chapter 11 case, there is similarly no automatic

-16-

entitlement.  Any rate increase should, like other fee matters, be subject to a reasonableness

review, with the burden on the applicant to prove reasonableness, including, that comparable

non-bankruptcy practitioners are paid similar increased rates.  See In re Lee Tractor Co., Inc.,

2008 WL 2788413 at *2 (Bankr. E.D.N.C. 2008) (at a hearing on debtor's attorney's application

for compensation, the court found the rate increases reasonable considering the experience and

quality of the work performed and the rates charged by attorneys with comparable experience

among the local bankruptcy bar, but noting that "such percentage increases may not be so

justified in future applications."); In re Teraforce Tech. Corp., 347 B.R. 838, 860 (Bankr. N.D.

Tex. 2006) (holding that the reasonableness of the attorneys' hourly rate increases required a

comparison with the local market); In re Reconversion Techs., Inc., 216 B.R. 46, 54-55 (Bankr.

N.D. Okla. 1997) (disallowing rate increase because original hourly rates represented "the

highest hourly rate which has been approved by this Court to date.").

The United States Trustee maintains that a proper evaluation of the reasonableness of the

compensation requested, including any increase in rates, can only be undertaken in the context of

a review of the professional's fee application.  While the first step in satisfying the burden of

proving that rate increases are reasonable may be commenced by the filing of a notice and

certification, the fee application review process must serve as the ultimate medium by which the

reasonableness of the compensation requested is determined.  The United States Trustee reserves

the right to investigate through discovery, the reasonableness of the requested compensation,

including any rate increases and the justification for them.

### 2.    Compensation for the Fee Review Process

As a general rule, professionals should not be compensated for responding to inquiries or

objections from the United States Trustee regarding professional fees.  See, e.g., In re St. Rita's

Assocs. Private Placement, L.P., 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001) (citing Section

330(a)(3)(E)).[10]  As the court in St. Rita's found, lawyers outside of bankruptcy are not

compensated for defending against fee disputes by clients.  Id.; see also, In re Fibermark, Inc.,

349 B.R. 385, 398 (Bankr. D. Vt. 2006) (time spent defending a fee application that does not

conform to Section 330, Fed. Bankr. P. 2016, the U.S. Trustee's Guidelines, or pertinent case law

is not compensable).  Although an exception should be available for responding to vexatious or

frivolous objections, such an exception should be narrowly construed.  Thus, the United States

Trustee objects to requests for compensation for services rendered in responding to inquiries and

objections raised by the United States Trustee and the Fee Examiner.[11]  See Fee Examiner's

Objection to Third Interim Fee Application of Weil Gotshal, ¶¶ 31-8, pp. 12-5.  Docket No.

6984.

The Fee Examiner identified a split in authority over whether "fees on fees" should be

allowed, citing 3 COLLIER ON BANKRUPTCY ¶ 330.03[16][a][ii] (Alan Resnick and Henry J.

Sommer eds., 16th ed. 2010) and CCT Commc'ns, Inc., No. 07-10210, 2010 WL 3386947, at *9

_____

[10] The St. Rita's decision was rendered before the enactment of BAPCPA.  The bankruptcy section to which the Court in St. Rita's referred is now Section 330(a)(3)(F).

[11]In its ruling on July 6, 2010, the Court found that "[l]awyers providing services in a bankruptcy case should comply with timekeeping rules and guidelines, getting it right the first time."  Transcript for Hearing on the Second Interim Fee Applications dated July 6, 2010, at 12-3.  Docket No. 6369.  On a going forward basis, recognizing that some of the work performed would be unique to bankruptcy, the Court found that a reduction of 50 percent would be appropriate.  Id. at 14.  It is the United States Trustee's interpretation of the Court's findings that the Court did not intend to allow any fees for correcting errors.  Upon information and belief, however, based upon conversations with the Fee Examiner, some professionals have taken the position that these fees are allowable subject to a 50% reduction.

(Bankr. S.D.N.Y. Aug. 24, 2010).  <u>See</u> Fee Examiner's Objection to Third Interim Fee

Application of Weil Gotshal, ¶ 31, pp. 12-3, Docket No. 6984.  The Fee Examiner's detailed

discussion will not be duplicated here.  The Fee Examiner–after noting that similar objections to

the First Fee Application [of Weil Gotshal] were sustained in part and overruled in

part–concluded that it would be inefficient and wasteful to identify the disposition of individual

objections.  <u>See</u> Fee Examiner's Objection to Third Interim Fee Application of Weil Gotshal,

¶¶ 37-8, p. 15, Docket No. 6984.  Accordingly, the Fee Examiner proposed a 50 percent

reduction with respect to "fees on fees." <u>Id.</u>

Notwithstanding the split in authority, the United States Trustee objects to the recovery of

"fees on fees" and believes that the professionals should be put on notice that they will not

normally be able to recover these charges.  Without that expectation, particularly in large and

complex cases where the fee applications can be quite voluminous, professionals will have little

incentive to abide by the rules and guidelines established by case law, the Court, and the United

States Trustee.  Rather, from the professional's perspective, omissions or deficiencies may be

cured, and the cost for coming into compliance will yield additional compensation to the

professional.  Permitting "fees on fees" does not discourage professionals from filing deficient or

inaccurate applications and inevitably results in an additional, unnecessary expense to the estate.

Without the deterrent posed by the possibility of having to absorb the entire cost of correcting or

responding to challenges to deficient time entries or improper expenses, there will be no

incentive to prepare compliant fee applications at the outset.  The United States Trustee is

concerned that the Fee Examiner's proposed 50 percent reduction will be insufficient to ensure

full compliance by the professionals and, therefore, seeks a 100 percent disallowance for this

category of fees.

### VI. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court enter an

Order (i) consistent with the United States Trustee's recommendation or, in the alternative,

(ii) consistent with the Fee Examiner, and (iii) granting such other relief as is just.

Dated: New York, New York
      October 19, 2010

                                                 Respectfully submitted,

                                                 TRACY HOPE DAVIS
                                                 UNITED STATES TRUSTEE

**By:**    */s/ Linda A. Riffkin*
                                               Linda A. Riffkin
                                               Assistant United States Trustee
                                                 Brian Masumoto
                                                 Trial Attorney
                                                 33 Whitehall Street, 21st Floor
                                                 New York, New York 10004
                                                 Tel. No. (212) 510-0500
                                                 Fax No. (212) 668-2255