Hearing Date and Time: October 21, 2010
at 9:45 a.m., ET
Reply Deadline: October 14, 2010
at 4:00 p.m., ET

**The Wladis Law Firm, P.C.**
PO Box 245
5795 Widewaters Parkway
Syracuse, NY 13214
Telephone: (315) 445-1700
Kevin C. Murphy, Esq.

-and-

**Department of Law**
**Onondaga County, New York**
John H. Mulroy Civic Center, 19th Floor
421 Montgomery Street
Syracuse, New York 13202
Telephone: (315)435-2170
Luis A. Mendez
Senior Assistant County Attorney

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Chapter 11<br>Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF ENVIRONMENTAL CLAIMANT**
**ONONDAGA COUNTY, NEW YORK TO THE DEBTOR'S**
**PROPOSED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT,**
**DATED AUGUST 31, 2010**

**The County of Onondaga, State of New York** (the "County" or

"Onondaga County"), by and through its undersigned counsel, submits this

Objection to the Disclosure Statement with Respect to the Joint Chapter 11 Plan Proposed by Motors Liquidation Company, f/k/a General Motors Corp., and respectfully states as follows:

## BACKGROUND

1. The Debtors filed Voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On or about August 31, 2010, the Debtors filed a Disclosure Statement with respect to the Debtors' Joint Chapter 11 Plan (the "Debtors' Disclosure Statement") and Joint Chapter 11 Plan (the "Debtors' Plan"). Pursuant to the Notice of Hearing to Consider Approval of Debtors' Proposed Disclosure Statement dated September 3, 2010, a hearing to approve the Disclosure Statement is scheduled for October 21, 2009, and opposition must be filed by October 14, 2010 at 4:00 p.m.

3. The County filed a three-pronged proof of claim for reimbursement and/or the payment of funds resulting from environmental contamination of various Debtor-owned or Debtor-contaminated sites located in Onondaga County, New York premised on the Debtors' liability under federal statutory law and/or purchase/sale and indemnification agreements entered into by the County and the Debtors.

4. Specifically, the claims concern (a) the so-called PCB Dredge Spoil Site that is owned by the Debtor which is contaminated with PCBs originally

2

discharged from the Debtor's environmentally impacted Inland Fisher Guide (IFG) facility located in Onondaga County adjacent to Ley Creek; (b) a United States Environmental Protection Agency (EPA) claim with respect to PCB contamination detected in Lower Ley Creek, down stream of the former IFG facility and extending to the mouth of the Creek where its discharges into Onondaga Lake, and (c) a joint EPA/State of New York claim with respect to the overall Onondaga Lake Superfund site, including PCB contamination of Onondaga Lake sediments.

5. On or about January 11, 2010, the Debtors filed a Motion for an Order for authorization to implement alternative dispute resolution procedures, including mandatory mediation, to establish a procedure for resolving Unliquidated/Litigation claims in order to quantify the sum of general unsecured claims (the "ADR Procedures Motion").

6. On or about February 2, 2010, the County filed an objection to the ADR Procedures Motion (the "ADR Objection") solely as to the proposed handling of environmental claims. As a result of other similar objections, and perhaps due to the first reports of on-going negotiations of environmental claims issues between the Debtors and federal and state environmental officials, the County's claims were excluded from the ADR procedures pursuant to Court Order dated February 23, 2010 (the "ADR Procedures Order").

7. Meaningful and accurate disclosure is at the heart of the Bankruptcy process. Effective disclosure requires the dissemination of

"adequate information," *Knupfer v. Wolfberg* (*In re Wolfberg*), 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000), and is defined under the Bankruptcy Code to include:

> information of a kind, and in sufficient detail, as far as is Reasonably practicable in light of the nature and history Of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable Investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

8.   For the reasons outlined below, the Debtors' Disclosure Statement should not be approved at this time due to the Disclosure Statement's failure to provide Onondaga County and other claimants with "adequate information" necessary to make an informed judgment about the Debtors' Plan.

*A.   Lack of Adequate Information*

9.   Approval of a Disclosure Statement should be withheld "if it does not contain such information so that all creditors and equity shareholders can make an intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 980 (N.D. N.Y. 1988)

10.   The County generally opposes the approval of the proposed Disclosure Statement due to the glaring absence of information and/or detail necessary to allow the County, and likely other creditors, to make an informed decision on the proposed Plan.

11.   Information that should be contained in a disclosure statement includes: "[a] complete description of the available assets and their value; . . .

4

[a] liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to produce the financial information in the disclosure statement;. . . [and] [i]nformation relevant to the risks being taken by creditors and interest holders . . . ." In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

12. The Debtors' Disclosure Statement fails to satisfy the adequate disclosure requirement for the categories of information set forth in Paragraph 11 above.

13. The first deficiency is the failure of the Plan to identify which environmental claims are classified as Class 3 Claims and which are Classified as Class 4 Claims.

14. Upon information and belief, pursuant to Section III (C) on page 43, the Debtors' Disclosure Statement apparently seeks to classify all or a portion of the County Claims as Class 3 "General Unsecured Claims includ[ing] environmental claims subject to discharge under Environmental Laws to pay money to private and governmental entities for cleanup or remediation of property not owned by the Debtors, including Superfund liabilities." See Debtors' Disclosure Statement, Section III (C), at p. 43.

15. Class 4 "Property Environmental Claims" that are identified as "civil Claims or Causes of Action by the Governmental Authorities against the Debtors under Environmental Laws with respect to the Properties except for any General Unsecured Claims reserved in the Environmental Response Trust

Consent Decree and Settlement Agreement or the Priority Order Sites Consent Decrees and Settlement Agreements." See Debtors' Disclosure Statement, Section III (C) at p. 45.

16. It is not possible from the Disclosure Statement to determine if the County claim or a portion of the County claim is or may be a Class 4 claim, because a portion of the County Claim has as its genesis a State Consent Order related to the PCB Dredge Spoil Site.

17. In addition, it is not possible from reading the draft Disclosure Statement for the County to determine how or to what extent its Claims might be subsumed within or impacted by any potential concurrent Class IV federal and state environmental claims that address "certain of the Properties, including the migration of hazardous substances emanating from certain of the Properties." See Debtors' Disclosure Statement, Section III (C) at p. 67.

18. Those certain Properties (i.e., the IFG facility) are or may be the subject of certain or all portions of the County's claim. Specifically, the Disclosure Statement does not identify whether the IFG facility located in Onondaga County and adjacent to Ley Creek is one of the "certain Properties" classified as a Class IV federal or state environmental claim.

19. If yes, the Disclosure Statement does not state whether the IFG facility also is one of the "certain Properties" that also includes "the migration of hazardous substances emanating from" the Property.

6

20.     If yes concerning migration, the Disclosure Statement does not disclose to what extent the full and complete migration of contamination from the IFG facility will be treated as a Class IV claim.

21.     The County notes these deficiencies and lack of adequate information because it has been suggested to representatives of the County by representatives of both the Debtors and the federal government that the IFG site and some portion, but not all, of the migrating contamination from the IFG site may fall within Class IV. The draft Disclosure Statement provides no answer to these or similar such disclosure questions and thus, is inadequate to enable a hypothetical reasonable investor to make an informed judgment about the Debtors' Plan.

22.     While the counsel for the County has been informed that at least a portion of the County's claims are being treated as Class 3 General Unsecured Claims, the Debtors' Disclosure Statement does not either: (a) separately classify such Claims; or (b) clearly identify that some portion or all of the County's Unsecured Claims are, in fact, considered a Class 3 claim.  It is submitted that a more specific description of the classification of each type of claim is exactly the type of information that must be included in a disclosure statement, especially in light of the discussion and establishment of the Environmental Response Trust, in Section III (G) (4) of the Debtors' Disclosure Statement.

23.     Class 3 Claims are treated in the Debtors' Disclosure Statement and the Debtors' Plan by providing for the establishment of a GUC Trust.  See

Debtors' Disclosure Statement, Section III (G), at p. 59.  Payments from the GUC Trust to Class 3 Claimants contemplates the payment of the Claimants' *pro rata* share of: (i) the new GM Securities, as defined therein, (the "New GM Stock");  and (ii) the GUC Trust Units, in accordance with the terms of the GUC Trust and the GUC Trust Agreement.  Pursuant to the Disclosure Statement, the GUC Trust Agreement is to be executed on or before the Effective Date, in a form acceptable to the Debtors, the Creditors' Committee, the U.S. Treasury and the GUC Trust Administrator.

24. Regarding the payment via New GM Stock, the Disclosure statement provides insufficient information as to the valuation (actual or potential) of the contemplated stock transfers, the basis for and support for any such valuation, provisions in place or proposed to preserve that value, privileges  of holders and the right of holders to transfer other such information necessary to determine whether the proposed arrangement is in any way either capable or adequate to actually provide for resolution of the environmental liabilities.

25. Not only is the value of the non-cash settlement amount not known, estimated or calculable, but it is the United States, itself, that is seeking recovery from the County and the Debtors. The Disclosure Statement is silent as to whether or to what extent the United States will, in turn, accept a transfer of the non-cash settlement from the County or other holders of such securities in resolution of the United States' claim, to potentially include shares

of New GM stock an entity in which the United States holds the largest or among the largest equity stake.

26.  Assuming, *arguendo*, that the County is a Class 3 Claimant, the County is unable to determine any specific information regarding the GUC Trust, since that document is not yet finalized or filed.  While Class 3 Claimants are to receive new GM Stock and "the GUC Trust Units in accordance with the GUC Trust and the GUC Trust Agreement," it is simply not possible to determine how the County's rights and distributions may be affected when the GUC Trust documents are not available for review.

27.  Moreover, it is impossible for the County, or any general unsecured creditor, to make any type of analysis or informed judgment about the Debtors' Plan when there is absolutely no estimation of the aggregate amount of allowed claims in Class 3 or the estimated value of the New GM Stock and recovery for that class.  The County is not suggesting there must be precision in any such valuations, but the Disclosure Statement does not even provide a range of estimated percentages or values. Such estimates are crucial for the County to make an informed decision about the Debtors' Plan.

28.  In addition, without an estimation of claims and percentage of recovery, the County cannot determine if the Debtors' Plan meets the best interests of creditors test.  See 11 U.S.C. § 1129(a)(7).

29.  As discussed above, it has been suggested to the County its claim will potentially be subdivided into both Class 3 and Class 4.  The Debtors' Disclosure Statement provides that Class 4 Environmental Claims on certain

9

GM properties will receive 100% of their allowed claims under the Environmental Response Trust based on a list attached to the Environmental Trust as Attachment "A".  However, the Environmental Response Trust Agreement and Environmental Response Trustee Consent Decree and Settlement Agreement have not been finalized and filed, so it is impossible to determine what properties are included in that Trust.  This information is critical to the County because the clean up of contiguous, related or identical contaminated sites will impact the County's claims.  For example, the extent to which the IFG facility and contamination migrating into Ley Creek may, as a Class 4 Claim, be 100% remediated and continuing discharges of PCBs to Ley Creek terminated, it may reduce or otherwise duplicate the amount of the Lower Ley Creek Claim. Without the ability to review the Environmental Trust documents, it is impossible to determine how the treatment of those claims may impact the County or other similarly situated claimants.

30.    Further, with respect to the Environmental Trust, the Debtors' Disclosure Statement does not explain how the Class 4 Claimants differ from the Class 3 Claimants.  Such a discussion is critical to justifying the disparate treatment between the Class 4 Environmental Claims that are stated to receive 100% repayment, versus the Class 3 Claimants such as the County that is reported to receive some unknown non-cash amount as settlement of its Lower Ley Creek claim.

31.    Lastly, pursuant to Section III (H)(1)(b) of the Debtors' Disclosure Statement on page 82, the GUC Trust Administrator will be responsible for the

10

prosecution of objections to General Unsecured Claims.  It is unclear if the Debtors are attempting to have the ADR procedures imposed upon the County for the establishment of the amount of its claims.  As outlined above, the County previously objected to the ADR Procedures Motion and was specially excluded from the ADR Procedures Order when it was entered. Therefore the prior Order should still preclude ADR Procedures from being utilized by the GUC Trust Administrator when seeking to establish or object to the County Claims.

B.    *The County is Unable to Accept and Hold the New GM Stock*

32.    As outlined above, the Debtors' Disclosure Statement and the Debtors' Plan provides for payments from the GUC Trust of Class 3 Claimants' pro rata share of: (i) the new GM Securities, as defined therein; and (ii) the GUC Trust Units, in accordance with the terms of the GUC Trust and the GUC Trust Agreement.

33.    Because the documents have not been filed, the County cannot determine if the GUC Trust Units are for a public corporation, but clearly the New GM Stock will be an equity stake in a publicly traded corporation. Pursuant to Article VIII § 1 of the New York Constitution, the County may be precluded from accepting and owning the New GM Stock as that distribution is proposed under the Debtors' Plan.

34. The New York Constitution generally prohibits a municipality from directly or indirectly owning stock in any private corporation. The New York State Constitution provides:

> "No county, city, town, village or school district shall... become directly or indirectly the owner of stock in, or bonds of, any private corporation or association . . .

New York Constitution Art. VIII § 1. In interpreting this constitutional provision, the New York State Comptroller has found that the ownership of stock in private corporations violates Article VIII § 1. See N.Y. Opns. St. Comp. 68-51 (1968)

35. The Debtors' Disclosure Statement is silent regarding the New York State Constitutional restrictions, and the impact those restrictions may have on the municipal Claimants and their proposed distributions under the Debtors' Plan. While the County is willing to work with the Debtors to determine if there is a viable alternative that provides the County with the financial benefit that would have been associated with the acquisition of the New GM Stock, it respectfully submits that it would be a windfall for the other general unsecured claimants to benefit from those restrictions at the expense of the County and other New York municipalities. Clearly, such a result would not be equitable, especially since the County and its taxpayers will be forced to bear the burden of the additional environmental clean up that the Debtors are walking away from under the current Debtors' Plan.

C.     *Conclusion*

36.    In sum, the Debtors' Disclosure Statement does not contain adequate information since it does not provide sufficient details to permit the County or other similarly situated creditors to determine whether it would be in its best interests to vote in favor of, or against, the Plan.  Because the requirements of 11 U.S.C. §1125 have not been met, the Court should not approve the Debtors' Disclosure Statement and should require the Debtors to provide additional information that is necessary to address the inadequacies as outlined in this Objection.

37.    Nothing contained herein shall be deemed to be a waiver by the County of any rights it may have under applicable law and the County of Onondaga reserves the right to amend and supplement this Objection, and to object or otherwise respond to the approval, confirmation and implementation of the Debtors' Plan on any grounds outlined herein and any other grounds available.

*[Intentionally left blank]*

WHEREFORE, the County of Onondaga respectfully requests entry of an Order (i) denying approval of the Debtors' Disclosure Statement; and (ii) for such other and further relief as this Court deems just and proper.

Dated: October 13, 2010

Dated: Syracuse, New York
October 13, 2010

          Attorneys for Claimant
          Onondaga County, New York

By: /s/Luis A. Mendez, Esq.
    Luis A. Mendez
    Senior Deputy County Attorney
    John H. Mulroy Civic Center, 19th Floor
    421 Montgomery Street
    Syracuse, New York 13202
    Telephone: (315)435-2170

By: /s/Kevin C. Murphy, Esq.
    Kevin C. Murphy
    The Wladis Law Firm, P.C.
    PO Box 245
    Syracuse, NY 13214
    Telephone: (315) 445-1700