# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

THYS CHEVROLET, INC. and
FAMILY AUTO CENTER, INC.,

      Plaintiffs,

vs.

GENERAL MOTORS LLC,

      Defendant.

No. 10-CV-46-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    A.    *Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    B.    *GM's Bankruptcy and Wind-Down Agreements* . . . . . . . . . . . . . . **4**
    C.    *The Bankruptcy Court Approves the Sale* . . . . . . . . . . . . . . . . . **5**
    D.    *Section 747 Arbitration* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
    E.    *Family Auto Sells its Assets to Joel Thys* . . . . . . . . . . . . . . . . **7**
    F.    *Letter of Intent* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    G.    *Arbitral Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
    H.    *Plaintiffs' Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

IV.    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    A.    *Bankruptcy Court's Jurisdiction* . . . . . . . . . . . . . . . . . . . **12**
        1.    *Bankruptcy court jurisdiction* . . . . . . . . . . . . . . . **13**
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
            a.    *Related to jurisdiction* . . . . . . . . . . . . . . . **15**
            b.    *Core proceeding* . . . . . . . . . . . . . . . . . . **16**
    B.    *Dismissal or Transfer* . . . . . . . . . . . . . . . . . . . . . . . . **18**
        1.    *Sections 1412 and 1404* . . . . . . . . . . . . . . . . . . **18**
        2.    *Transfer analysis* . . . . . . . . . . . . . . . . . . . . . **19**
            a.    *Interest of justice* . . . . . . . . . . . . . . . . . **19**

|  | *b.* | *Convenience of the parties* . . . . . . . . . . . . . . . . . . | 22 |
| *C.* | *Plaintiffs' Other Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
|  | *1.* | *Adhesion contract or economic duress* . . . . . . . . . . . . . . . | 22 |
|  | *2.* | *Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
|  | *3.* | *Withdrawal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
|  | *4.* | *Judicial estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
|  | *5.* | *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |

| *V.* | *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |

## I.  INTRODUCTION

The matters before the court are Defendant General Motors LLC's "Motion to Dismiss or, in the Alternative, Transfer Venue to the United States Bankruptcy Court for the Southern District of New York" ("Motion to Dismiss") (docket no. 12) and "Motion for Leave to Submit Ruling from Monday Enjoining Dealer Action Issued by the United States Bankruptcy Court for the Souther District of New York" ("Motion for Leave") (docket no. 34).

## II.  PROCEDURAL BACKGROUND

On August 26, 2010, Plaintiffs Thys Chevrolet, Inc. ("Thys Chevrolet") and Family Auto Center, Inc. ("Family Auto") filed a Complaint (docket no. 2) seeking injunctive relief. That same date, Plaintiffs filed a "Verified Complaint and Motion for Preliminary and Permanent Injunctive Relief" ("Motion for Injunctive Relief") (docket no. 3). Plaintiffs requested expedited relief. On August 31, 2010, the court entered an Order (docket no. 5) setting a hearing on the Motion for Injunctive Relief for September 16, 2010.

On September 10, 2010, Defendant General Motors LLC ("New GM") filed a "Motion to Postpone Preliminary Injunction Hearing Scheduled for September 16, 2010, Hold an Expedited Status Conference, and Establish Briefing Schedule on Legal Issues" ("Motion to Continue") (docket no. 7). In the Motion to Continue, New GM indicated that it would seek dismissal of the instant action on the grounds that the Bankruptcy Court

for the United States District Court for the Southern District of New York ("Bankruptcy Court") "has exclusive jurisdiction to resolve the issues raised in the Complaint." Motion to Continue at 1.

On September 10, 2010, the court held a telephonic status conference to address the issues raised in the Motion to Continue. That same date, the court entered an Order (docket no. 10) granting the Motion to Continue to the extent it sought to postpone the hearing on the Motion for Injunctive Relief. The court directed the parties to file simultaneous briefing on or before September 14, 2010 to address the court's jurisdiction.

On September 14, 2010, New GM filed the Motion to Dismiss. That same date, Plaintiffs filed a "Brief in Support of Exclusive Subject Matter Jurisdiction Over This Matter in the United States District Court" ("Plaintiffs' Brief") (docket no. 14). On September 15, 2010, New GM filed a brief ("New GM's Brief") (docket no. 20) in support of the Motion to Dismiss. On September 23, 2010, New GM filed a supplemental brief ("New GM's Supp. Brief") (docket no. 24) in support of the Motion to Dismiss. That same date, Plaintiffs filed a supplemental brief ("Plaintiffs' Supp. Brief") (docket no. 25) in support of their resistance to the Motion to Dismiss.

On September 27, 2010, the court held a telephonic hearing ("Hearing") on the Motion to Dismiss. Attorneys James Arenson and Harry Zanville appeared on behalf of Plaintiffs. Attorneys Jeffrey Jones and Greg Lederer appeared on behalf of New GM. At the conclusion of the Hearing, the court reserved ruling on the Motion to Dismiss pending the instant order. That same date, Plaintiffs filed a "Supplemental Filing" (docket no. 29) in reference to an exhibit discussed at the Hearing. On September 30, 2010, New GM filed a "Response to Plaintiffs' Supplemental Response/Addendum" (docket no. 33).

## III. FACTUAL BACKGROUND

### A. Players

Family Auto is an Iowa corporation with its principal place of business in Toledo, Iowa. Family Auto used to be an automobile dealership and was licensed by the State of

3

Iowa to sell new Chevrolet and Buick automobiles.  Edward Polaco owns Family Auto.

Thys Chevrolet is an Iowa corporation with its headquarters in Toledo, Iowa.  It is
an automobile dealership owned by Joel Thys and licensed by the State of Iowa to sell new
Chevrolet and Buick automobiles.

New GM is a Delaware limited liability company with its principal place of business
in Michigan.  New GM designs, manufactures, distributes and sells motor vehicles and
parts to authorized GM dealerships.  Buick Motor Division ("Buick") is a division of New
GM.  "[New] GM and Buick conduct business in the Northern District of Iowa, pursuant
to numerous franchise dealer sales and service agreements ("DSSA") with GM dealers."
Motion for Injunctive Relief at ¶ 7.

### B.  GM's Bankruptcy and the Wind-Down Agreements

On June 1, 2009, General Motors Corporation ("Old GM") filed for bankruptcy in
the Bankruptcy Court, Case No. 09-50026.  In the bankruptcy proceedings, Old GM
sought to sell certain assets to a new company (the "363 Acquirer") under Section 363 of
the Bankruptcy Code pursuant to certain conditions approved by the Bankruptcy Court (the
"Section 363 Sale").

As part of Old GM's reorganization, it executed "wind-down agreements" with
numerous GM dealers.  On June 12, 2009, Old GM and Family Auto executed a "Wind-
Down Agreement" in which Family Auto agreed to wind-down its Buick operations by
October 31, 2010, in exchange for monetary payments and other terms.[1]  Exhibit A to
Affidavit of Michael Poindexter (docket no. 20-2) at 5.  In the Wind-Down Agreement,
Family Auto agreed it would not propose or consummate a change in ownership or a
transfer of its business or assets:

> [Family Auto] shall not, and shall have no right to, propose to
> [Old] GM or the 363 Acquirer . . . or consummate a change

---

[1]  Family Auto's Chevrolet operations were not subject to the Wind-Down
Agreement and are not at issue in the instant action.

> in Dealer Operator, a change in ownership, or, subject to
> [Old] GM's or the 363 Acquirer's, as applicable, option, a
> transfer of the dealership business or its principal assets to any
> Person . . . .   Accordingly, neither [Old] GM nor the 363
> Acquirer, as applicable, shall have any obligation . . . to
> review, process, respond to, or approve any application or
> proposal to accomplish any such change, except as expressly
> otherwise provided in the preceding sentence.

*Id.* at 9-10.   The Wind-Down Agreement also provided that:

> 13.  Continuing Jurisdiction.       B y  e x e c u t i n g  t h i s
> Agreement, [Family Auto] hereby consents and agrees that the
> Bankruptcy Court shall retain full, complete and exclusive
> jurisdiction to interpret, enforce, and adjudicate disputes
> concerning the terms of this Agreement and any other matter
> related thereto.  The terms of this [clause] shall survive the
> termination of this Agreement.

*Id.* at 11.

### C. The Bankruptcy Court Approves the Sale

On June 1, 2009, Old GM and other affiliates (collectively, the "Debtors") filed a
motion under § 363 seeking the Bankruptcy Court's approval to proceed with the sale.  On
July 5, 2009, the Bankruptcy Court issued an order ("Sale Order") approving the proposed
sale of Old GM's assets.  The Sale Order provides, in relevant part:

> The transfer of the Purchased Assets to the Purchaser will be
> a legal, valid, and effective transfer of the Purchased Assets
> and, except for the Assumed Liabilities, will vest the
> Purchaser with all right, title, and interest of the Sellers to the
> Purchased Assets free and clear of liens, claims,
> encumbrances, and other interests . . . .

New GM's Exhibit B (docket no. 7-3) at 14.  The Bankruptcy Court found that "[t]he
Purchaser would not have entered into the [Master Sale and Purchase Agreement] and
would not consummate the 363 Transaction . . . if the sale of the Purchased Assets was
not free and clear of all liens, claims, encumbrances, and other interests (other than
Permitted Encumbrances), . . . ." *Id.* at 16.

5

The Bankruptcy Court found that Old GM offered wind-down agreements to many dealers "as an alternative to rejection of the [dealers'] existing Dealer Sales and Service Agreements" and found that the wind-down agreements "provide substantial additional benefits to dealers which enter into such agreements." *Id.* at 20. The Bankruptcy Court noted that "[a]pproximately 99% of the dealers offered Deferred Termination Agreements[2] accepted and executed those agreements and did so for good and sufficient consideration." *Id.* (footnote added). Accordingly, the Bankruptcy Court approved Old GM's entrance into the wind-down agreements and found that they "represent valid and binding contracts, enforceable in accordance with their terms." *Id.* at 35.

The Bankruptcy Court also reserved exclusive jurisdiction over matters concerning the Sale Order and the wind-down agreements:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Master Sale and Purchase Agreement], all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, including the Deferred Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to . . . resolve any disputes with respect to or concerning the Deferred Termination Agreements.

*Id.* at 49. Upon the Bankruptcy Court's approval of the Section 363 Sale, the 363 Acquirer was reorganized and assigned the wind-down agreements to New GM.

### D. Section 747 Arbitration

In December of 2009, Congress enacted § 747 of the Consolidated Appropriations Act, 2010, Pub. Law No. 11-117, 123 Stat. 3034 (2009) ("Dealer Arbitration Act" or

---

[2] The Sale Order provides that the term "Deferred Termination Agreements" includes "Wind-Down Agreements." *Id.* at 19.

"§ 747"). Section 747 gives a "covered dealership"[3] the right to seek, through binding arbitration, continuation or reinstatement to the dealer network. § 747(b). In deciding whether a dealer should be reinstated or continued, the arbitrator must balance the economic interest of the covered dealership, the covered manufacturer and the public at large. § 747(d). The arbitrator must consider a variety of factors, including the dealer's profitability, the "manufacturer's overall business plan," the dealer's "economic viability," the "demographic and geographic characteristics" of the dealer's market territory and "the length of experience of the covered dealership." *Id.*

If the arbitrator finds in favor of a dealer, "the covered manufacturer shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales and service agreement." § 747(e). "After executing the sales and service agreement and successfully completing the operational prerequisites set forth therein," the dealer must return to the manufacturer any financial compensation the manufacturer provided in consideration of its initial decision "to terminate, not renew, not assign or not assume the covered dealership's applicable franchise agreement." *Id.*

On January 25, 2010, Family Auto submitted its notice of intent to arbitrate pursuant to § 747.

### E. *Family Auto Sells its Assets to Joel Thys*

On February 27, 2010, with the arbitration pending, Family Auto executed an Asset Purchase Agreement with Joel Thys. Specifically, Joel Thys contracted to buy Family Auto's assets—defined as its "[s]eller goodwill in connection with its General Motors

---

[3] A "covered dealership" is "an automobile dealership that had a franchise agreement for the sale and service of vehicles . . . in effect as of October 3, 2008, and such agreement was terminated, not assigned[,] . . . not renewed, or not continued during the period beginning on October 3, 2008, and ending on December 31, 2010." § 747(a)(2).

business and its rights, as they may exist, to operate the Chevrolet and Buick franchises"—for $750. Plaintiffs' Exhibit 4 (docket no. 2-2) at 22 (emphasis removed). On March 3, 2010, Family Auto and Joel Thys closed on the Asset Purchase Agreement. On March 5, 2010, Family Auto and Joel Thys executed a "Management Contract" under which Family Auto granted Joel Thys the right to operate the GM franchise, use all equipment and inventory, and "operate the dealership under Family Auto Center['s] Iowa dealer['s] license DL1130." Plaintiffs' Exhibit 6 (docket no. 2-2) at 29. Additionally, Joel Thys agreed "to lease the property on a month to mont[h] basis for the amount of $100.00[.]" *Id.*

### F. *Letter of Intent*

On March 11, 2010, New GM offered Family Auto a letter of intent ("Letter of Intent" or "Letter"). In the Letter of Intent, New GM stated that it had "carefully reviewed [Family Auto's] situation in light of the provisions of the Arbitration Statute to determine if [New GM] wish[ed] to proceed with the arbitration process." Plaintiffs' Exhibit 10 (docket no. 2-2) at 37. New GM stated it was "pleased to offer [Family Auto] this letter of intent, as provided for in the Arbitration Statute . . . concerning the Buick brand(s) . . . ." *Id.*

In the Letter of Intent, New GM offered to reinstate Family Auto's Buick franchise if Family Auto complied with certain conditions set forth in the Letter. If Family Auto satisfied the conditions, New GM agreed to reinstate Family Auto's Buick franchise by "amending the existing Wind-Down Agreement in place between [Family Auto] and GM for the [Buick] vehicles." *Id.* Among other conditions, New GM asked Family Auto to: (1) withdraw its § 747 arbitration claim by April 30, 2010; (2) comply with certain space/premises requirements; (3) confirm its location for resumed operations; (4) establish and maintain $296,000 of net working capital; (5) obtain all applicable licenses to conduct Buick franchise operations; and (6) return its wind-down payments. New GM asked Family Auto to sign and return the Letter of Intent within 10 days of receipt. If Family

8

Auto failed to do so, the Letter of Intent would be "deemed rescinded" and New GM would have "no further obligations." *Id.* at 39.

If Family Auto executed the Letter of Intent, it would have sixty days to satisfy the conditions set forth in the Letter:

> If [Family Auto] does not provide GM with satisfactory evidence of compliance with all of the terms and conditions of this Letter of Intent within 60 days from [the] execution of this letter, then this Letter of Intent will expire and GM shall have no obligation to execute the Wind-Down Amendment.

*Id.* at 37. If Family Auto satisfied the Letter's conditions, New GM offered to amend the existing Wind-Down Agreement within 15 days:

> Within 15 days of [Family Auto's] completion of the conditions and requirements of this Letter of Intent, GM will execute and deliver to [Family Auto] an amendment to the Wind-Down Agreement . . . , which will allow [Family Auto] to resume normal dealership operations for [the Buick] Brand(s).

*Id.* The Letter of Intent stated that it could "not be transferred or assigned, in whole or in part, without the express written consent of GM." *Id.* at 39.

According to New GM, it offered similar letters of intent to "hundreds" of dealers that had filed arbitration demands due to "the number of arbitrations pending, the short time permitted under the statute, the resources available to GM, the resources devoted to resolving a similar number of Chrysler arbitrations, and the limited number of witnesses available to attend the hearings[.]" New GM's Brief at 8. The Letter of Intent reflects that, on March 13, 2010, Polaco executed the Letter of Intent on Family Auto's behalf.[4]

---

[4] The parties seem to dispute whether Family Auto ever executed the Letter of Intent. Plaintiffs contend that the Letter of Intent "expired because it was not timely accepted." Plaintiffs' Brief in Support of Motion for Preliminary and Permanent Injunction (docket no. 2-1) at 6. To support this assertion, Plaintiffs cite to a brief that New GM filed in the arbitration proceedings, in which New GM asserted that it "never

(continued...)

## G. Arbitral Order

On June 17, 2010, Arbitrator Edward C. Stringer entered an order ("Arbitral Order") stating, in its entirety:

> 1.  I have jurisdiction of this § 747 proceeding because
>
>     a.  Family Auto Center, Inc. is a covered dealer;
>
>     b.  Family Auto Center, Inc. filed a timely demand for arbitration; and
>
>     c.  I have acted within the time period described.
>
> 2.  General Motors LLC submitted this Order which requests that I issue an Order continuing Family Auto Center, Inc. as a Buick dealer pursuant to the terms of § 747.
>
> WHEREFORE, IT IS THE ORDER OF THE ARBITRATOR that Family Auto Center, Inc. should be and hereby is continued.
>
> Having no other powers in this matter, this arbitration is now dismissed and this is a final order.

Plaintiffs' Exhibit 15 (docket no. 2-2) at 52.

---

[4](…continued) received a response to the [Letter of Intent] and the [Letter of Intent] has since expired by its terms." Plaintiffs' Exhibit 11 (docket no. 2-2) at 42. New GM acknowledges making this statement, but asserts it was a mistake because, "[a]t the time of GM's filing [in the arbitration proceeding], counsel was unaware that the [Letter of Intent] had been returned." New GM's Brief at 8 n.2. New GM directs the court to Family Auto's response in the arbitration proceedings, in which Family Auto disputed New GM's position, stating it was "simply not true" that the Letter of Intent had expired. Exhibit 7 to Affidavit of J. Todd Kennard (docket no. 20-1) at 149. In the same filing, Joel Thys stated that "I have copies of the postal documentation that is proof that GM received the signed [Letter of Intent]." *Id.* Family Auto also stated that it had complied with many conditions set forth in the Letter of Intent and that it would comply with the remaining terms. The court also notes that Plaintiffs submitted a copy of the Letter of Intent as an exhibit in support of their Motion for Injunctive Relief. *See* docket no. 2-2 at 37-39. The Letter of Intent reflects that Edward Polaco executed it, on Family Auto's behalf, on March 13, 2010.

The parties have different views about what led to the Arbitral Order and, unsurprisingly, its legal effect. According to Plaintiffs, the parties agreed to the Arbitral Order "in lieu of proceeding to try the case" through arbitration. Motion for Injunctive Relief at ¶ 21. Plaintiffs contend that the Arbitral Order simply requires New GM to continue Family Auto's Buick franchise, and that New GM is "[i]gnoring" this directive. *Id.* at ¶ 22.

New GM, on the other hand, provides this explanation:

> Given the fact that New GM had already offered a [Letter of Intent] to Family Auto, the parties simply submitted an agreed order to the Arbitrator authorizing continued operations "in accordance with § 747"—i.e., awarding Family Auto a letter of intent to seek reinstatement to New GM's dealer network under the terms and conditions of the [Letter of Intent]. In fact, Family Auto had *already received* and executed the [Letter of Intent] called for by § 747. Family Auto, however, never satisfied or otherwise complied with the Letter of Intent. As a Result of Family Auto's failure to comply with the Family Auto [Letter of Intent], the Wind-Down Agreement between [Old GM] and Family Auto—which was assumed and assigned to New GM under the Bankruptcy Court's orders—remains in effect as to Family Auto's Buick operations.

New GM's Brief at 9 (emphasis in original) (citations omitted).

## H. *Plaintiffs' Claims*

In the instant action, Plaintiffs claim that New GM has ignored the Arbitral Order by refusing to continue Family Auto's Buick franchise and taking the position that the "wind-down process remains in effect with respect to the Buick franchise." Motion for Injunctive Relief at ¶ 22. Plaintiffs also contend that New GM has "refused to give effect to the transfer of [Family Auto's] Buick franchise to Thys as required by the Iowa Motor Vehicle Franchise Act." *Id.* at ¶ 23. Accordingly, Plaintiffs ask the court to "issue a permanent injunction enjoining GM to extend formal recognition of the change in

11

ownership and the management and transfer of the Buick dealer franchise from Family [Auto] to Thys, and treat Thys, for all purposes, as the dealer owner and dealer operator on terms previously held by Family [Auto]." *Id.* at 9.

## IV.  ANALYSIS

New GM asks the court to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(3) for improper venue.   Alternatively, New GM asks the court to transfer this case to the Bankruptcy Court pursuant to 28 U.S.C. §§ 1412 and/or 1404.

### A.  Bankruptcy Court's Jurisdiction

New GM contends that, in light of the Bankruptcy Court's reservation of exclusive jurisdiction and the Wind-Down Agreement's reservation of exclusive jurisdiction in the Bankruptcy court, "the Bankruptcy Court is the only forum with jurisdiction to proceed." New GM's Brief at 16.   Plaintiffs contend that the Complaint alleges "three clear traditional and unchallengeable grounds for this [c]ourt's jurisdiction in this case." Plaintiffs' Brief at 3.  Namely, federal question, diversity and supplemental jurisdiction. In addition, Plaintiffs argue that the Bankruptcy Court lacks jurisdiction over the instant action.

Although the Bankruptcy Court clearly reserved exclusive jurisdiction to enforce and implement its Sale Order and resolve disputes relating to the wind-down agreements, "bankruptcy courts are unable to expand their own jurisdiction by order."   *U.S. Commodity Futures Trading Comm'n v. NRG Energy, Inc.*, 457 F.3d 776, 780 (8th Cir. 2006); *see also Binder v. Price Waterhouse & Co., LLP*, (*In re Resorts Int'l, Inc.*) 372 F.3d 154, 161 (3d Cir. 2004) ("[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket.").   In other words, the Bankruptcy Court's retention of jurisdiction is meaningless unless the Bankruptcy Court could exercise jurisdiction over the instant action in the first place.   Therefore, the court turns to consider whether the Bankruptcy Court has jurisdiction over Plaintiffs' claims.

### 1.  *Bankruptcy court jurisdiction*

Bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1).  In these "core proceedings," the bankruptcy court may enter appropriate orders and judgments, subject to appellate review by the district court.  *Id.*  Although not core proceedings, bankruptcy courts also have jurisdiction to hear proceedings that are "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).  In contrast to core proceedings, the bankruptcy court's role in "related to" proceedings is limited to submitting "proposed findings of fact and conclusions of law to the district court," which must enter any final order or judgment.  *Id.*

As the foregoing explains, "[b]ankruptcy courts have jurisdiction over civil proceedings 'arising under,' 'arising in,' or 'related to' title 11." *GAF Holdings, LLC v. Rinaldi*, (*In re Farmland Indus., Inc.*) 567 F.3d 1010, 1017 (8th Cir. 2009) (quoting 28 U.S.C. § 157(b)(1), (c)(1)).  "'Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings.'" *Id.* (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995)).  "Core proceedings are those cases 'arising under' or 'arising in' a case under Title 11." *Id.* (quoting 28 U.S.C. § 157(b)(1)).  "Non-core 'related to' proceedings 'could conceivably have an effect on the estate being administered in bankruptcy.'" *Id.* (quoting *Specialty Mills*, 51 F.3d at 774).

"Claims 'arising under' Title 11 are 'those proceedings that involve a cause of action created or determined by a statutory provision of title 11.'" *Id.* at 1018 (quoting *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)).  Claims "'arising in'" Title 11 "'are those that are not based on any right expressly created by title 11, but nonetheless, would have no existence outside of the bankruptcy.'" *Id.* (quoting *In re Wood*, 825 F.2d at 97).  In other words, "'claims that arise in a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy

case.'" *Id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006)).

With respect to "related to" jurisdiction, the Eighth Circuit Court of Appeals applies the "conceivable effect" test, which provides that a civil proceeding is "related to" bankruptcy where "'the outcome of that proceeding could *conceivably have any effect on the estate* being administered in the bankruptcy . . . .'" *Id.* at 1019 (quoting *Specialty Mills*, 51 F.3d at 774) (emphasis in *Farmland Indus.*). Thus, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.'" *Id.* "Related to" proceedings include actions between third parties which have an effect on the bankruptcy estate. *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995)). "The conceivable effect test implements a fairly broad interpretation of the scope of a bankruptcy court's 'related to' jurisdiction . . . ." *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993); *see also Farmland Indus.*, 567 F.3d at 1019 (describing jurisdictional grant as "extremely broad").

### 2.    *Analysis*

New GM argues that the Bankruptcy Court has jurisdiction under all three doctrines—arising under, arising in and related to. Unsurprisingly, Plaintiffs contend that the Bankruptcy Court lacks jurisdiction under any theory. The court need only consider whether Plaintiffs' claims are at least related to the bankruptcy proceedings. *See Wood*, 825 F.2d at 93 ("For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."); *see also Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc.*, (*In re Dogpatch U.S.A., Inc.*) 810 F.2d 782, 785-786 (8th Cir. 1987) (noting that, although the parties likely consented to bankruptcy court's jurisdiction and the plaintiffs' claims were likely core proceedings, the court "need not

rely" on either theory "because the bankruptcy court properly held that [the claims] were related to a case under chapter 11 and thus were within the jurisdiction of the bankruptcy court"). For the reasons explained below, the Bankruptcy Court has jurisdiction over the instant action.

### a. *Related to jurisdiction*

Here, Plaintiffs' claims are related to the bankruptcy because the relief they seek—a permanent injunction directing New GM to extend "formal recognition" to the transfer of ownership from Family Auto to Thys Chevrolet—runs contrary to the Wind-Down Agreement, which the Bankruptcy Court approved in its Sale Order. Motion for Injunctive Relief at 9. In the Wind-Down Agreement, Family Auto agreed that it would not propose or consummate a change in ownership or transfer the assets of its dealership. In the instant action, Plaintiffs ask the court to give effect to just that: a transfer of its assets to Thys Chevrolet. The Bankruptcy Court approved of Old GM's wind-down agreements with many dealers, including Family Auto, and ordered that the 363 Acquirer take the purchased assets—including the wind-down agreements—"free and clear" of all "liens, claims, encumbrances, and other interests (other than Permitted Encumbrances) . . . ." New GM's Exhibit B at 14. Because the relief that Plaintiffs seek could impact the handling and administration of the bankruptcy estate—by altering New GM's obligations with respect to the assets sold in the bankruptcy—Plaintiffs' claims could conceivably have an effect on the bankruptcy estate. *See Farmland Indus.*, 567 F.3d at 1019 (stating that the court must determine whether the plaintiff's claims "could conceivably have an effect" on the bankruptcy estate). Accordingly, the Bankruptcy Court has, at minimum, related to jurisdiction over Plaintiffs' claims.

Plaintiffs arguments against related to jurisdiction are unpersuasive. The fact that New GM is not the bankruptcy debtor is of no consequence, because "related to" actions include those "'between third parties which have an effect on the bankruptcy estate.'" *Id.* (quoting *Celotex Corp.*, 514 U.S. at 307 n.5). Plaintiffs also speculate that, because

Congress has been an "advocate and savior" to Old and New GM, "[i]t is unlikely and illogical that Congress, the group which saved New GM from bankruptcy through billions of dollars in TARP funds, would [enact] a law like § 747 if it altered Old GM's rights, liabilities, options, or freedom of action in the handling of the estate's administration." Plaintiffs' Supp. Brief at 4 n.2. In addition to again overlooking the fact that related to jurisdiction extends to suits between third parties if they could conceivably affect the bankruptcy *estate* (not just the debtor), Plaintiffs cite no authority for this proposition and the court gives it no weight.[5]

        **b.**    **Core proceeding**

While it need not reach the issue, the court notes that, in addition to being "related to" the bankruptcy, this case constitutes a core proceeding. In its Sale Order, the Bankruptcy Court expressly retained "exclusive jurisdiction to enforce and implement the terms and provisions" of its Sale Order, the wind-down agreements, and to "resolve any disputes with respect to or concerning the Deferred Termination Agreements[6] . . . ." New GM's Exhibit B at 49. As the United States Supreme Court recently explained, "the Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2205 (2009) (noting that, "when the Bankruptcy Court issued [its prior orders,] it explicitly retained jurisdiction" to enforce

---

[5] Plaintiffs also characterize § 747 as representing "Congress' specific intent to reverse the Bankruptcy Court order of massive terminations of auto dealerships[.]" Plaintiffs' Brief at 5; *see also* Plaintiffs' Supp. Brief at 5 (stating that § 747 "overruled" the Bankruptcy Court's orders). However, the plain language of the statute makes clear it was not intended to "reverse" or "overrule" any wind-down agreements or any of the Bankruptcy Court's orders. Rather, it merely provided certain dealers with a forum and opportunity to seek reinstatement or continuation based upon the arbitrator's consideration of numerous factors and interests.

[6] As previously noted, the Bankruptcy Court defined "Deferred Termination Agreements" to include the wind-down agreements.

them); *see also United Taconite, L.L.C. v. Minnesota*, (*In re Eveleth Mines, L.L.C.*) 318 B.R. 682, 687 (B.A.P. 8th Cir. 2004) (noting that there is "ample precedent" for the proposition that "since the [bankruptcy] court had jurisdiction to enter the Sale Order, it must also have jurisdiction to interpret and enforce that order").

Because Plaintiffs' claims appear contrary to the Wind-Down Agreement and the Bankruptcy Court's Sale Order approving such agreements, they certainly fall within the Bankruptcy Court's reservation of jurisdiction to enforce and implement its Sale Order and, more specifically, resolve disputes "with respect to or concerning" the wind-down agreements. In other words, Plaintiffs' claims turn, at least in part, on the interpretation and enforcement of the Bankruptcy Court's orders.

"[O]rders approving the sale of property" are core proceedings. 28 U.S.C. § 157(b)(2)(N). Therefore, courts generally treat as a core proceeding any action that depends on an interpretation or enforcement of the bankruptcy court's sale orders. *See In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 95 (2d Cir. 2006) ("Orders approving the sale of property constitute core proceedings and the [lawsuit at issue], which turns on the terms of the Sale Order, amounts to a request that the bankruptcy court enforce that order. We therefore deem the [lawsuit] a core proceeding and conclude that the bankruptcy court's initial decision to exercise jurisdiction over that action was not error.") (internal citation and quotation marks omitted); *In re Allegheny Health Educ. and Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders."); *In re Eveleth Mines, LLC*, 312 B.R. 634, 644-45 (Bankr. D. Minn. 2004) (observing that "'the enforcement of orders resulting from core proceedings'" is itself a core proceeding) (quoting *In re Williams*, 256 B.R. 885, 892 (8th Cir. B.A.P. 2001)).

Applying this principle here, the court concludes that the instant action constitutes a core proceeding within the Bankruptcy Court's jurisdiction. Plaintiffs attempt to sever

their claims here from the bankruptcy by portraying the instant action as being heavily predominated by § 747. *See* Plaintiffs' Brief at 8 (stating that Bankruptcy Court lacks jurisdiction because Plaintiffs' claims "are based wholly upon the ruling of the arbitrator acting under section 747 authority and Section 322A of the Iowa Code"). However, Plaintiffs' view of the case ignores the fact that § 747 and, more importantly, the relief they seek in this case, is inextricably intertwined with the bankruptcy for a variety of reasons. Plaintiffs seek a permanent injunction directing New GM to recognize the transfer of ownership from Family Auto to Thys. The court agrees with New GM that the gravamen of this case is the propriety of the claimed transfer from Family Auto to Thys, which "goes to the very heart of the bankruptcy case . . . ." New GM's Brief at 16-17. Simply put, Plaintiffs ask the court to order New GM to take action that appears to be at odds with both the Wind-Down Agreement and the Bankruptcy Court's Sale Order. Because a resolution of Plaintiffs' claims will turn on the interpretation and enforcement of the Bankruptcy Court's Sale Order, the court concludes that the instant action is a core proceeding.

### B. Dismissal or Transfer

New GM asks the court to dismiss the instant action without prejudice, noting that Plaintiffs can then bring their claims in the Bankruptcy Court. Alternatively, New GM asks the court to transfer this case to the Bankruptcy Court. For the reasons explained below, the court finds that transfer is appropriate.

### 1. Sections 1412 and 1404

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Similarly, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). There is some confusion among federal courts as to when either statute is applicable. *See Oil Tool Rentals, Co. v.*

18

*SH Exploration, LLC*, No. 4:10CV00324 SWW, 2010 WL 2949673, at *1 n.2 (E.D. Ark. July 22, 2010) (noting that some courts hold that § 1404 applies to cases that are "only 'related to' a bankruptcy case as opposed to proceedings arising in or under a bankruptcy case"); *Creekridge Capital, LLC v. Louisiana Hosp. Ctr., LLC*, 410 B.R. 623, 628 (D. Minn. 2009) (detailing split of authority and concluding that § 1412 also applies to actions "related to a bankruptcy proceeding in another forum"). At least two district courts in the Eighth Circuit have held that § 1412 also governs the transfer of "related to" actions. *See Creekridge Capital*, 410 B.R. at 628; *Quick v. Viziqor Solutions, Inc.*, No. 4:06CV637SNL, 2007 WL 494924, at *3 (E.D. Mo. Feb. 12, 2007). Accordingly, the court shall apply § 1412 in its transfer analysis.[7]

   **2.    Transfer analysis**

   Transfer under § 1412 is discretionary. *Creekridge Capital*, 410 B.R. at 629; *see also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997) (stating that district courts possess "much discretion" in deciding whether to transfer a case under § 1404). As the party moving for transfer, New GM has the burden to show by a preponderance of the evidence that transfer is warranted. *Creekridge Capital*, 410 B.R. at 629.

   **a.    Interest of justice**

   In *Creekridge Capital*, the court identified the factors most courts consider under § 1412's "interest of justice" prong:

> (1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency,

---

   [7] The court notes that the statutes are virtually identical and the court would transfer the instant action under either statute. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3843 at 245 (3d ed. 2007) ("[C]ourts have held that [§ 1412] requires essentially the same analysis and turns on the same issues as the transfer of civil actions under Section 1404(a).")

> (4) the ability to receive a fair trial, (5) the state's interest in
> having local controversies decided within its borders by those
> familiar with its laws, (6) the enforceability of any judgment
> rendered, and (7) the plaintiff's original choice of forum.

410 B.R. at 629 (citing *In re Bruno's, Inc.*, 227 B.R. 311, 324-25 nn. 45-51 (Bankr. N.D. Ala. 1998)).

The court finds that several of these factors weigh in favor of transfer. Transfer to the Bankruptcy Court will promote the economical and efficient administration of the bankruptcy because the Wind-Down Agreement and the Bankruptcy Court's orders will undoubtedly play a central role in this litigation. It stands to reason that the court responsible for these orders is better positioned to interpret and enforce them. Presumably, that is why the Bankruptcy Court retained exclusive jurisdiction to do so.

Transfer will also promote judicial efficiency because of the Bankruptcy Court's relative familiarity with the issues Plaintiffs raise in this action. The core of Plaintiffs' claims is the Wind-Down Agreement. In its Sale Order, the Bankruptcy Court specifically approved of such agreements, finding them to be "valid and binding contracts, enforceable in accordance with their terms." New GM's Exhibit B at 35. The court also agrees with New GM that "[t]he Bankruptcy Court has already advanced along a substantial 'learning curve' with respect to the Wind-Down Agreements." New GM's Brief at 19. The Bankruptcy Court's relative familiarity with the wind-down agreements and all related issues weighs in favor transfer. *Cf. Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (affirming denial of transfer under § 1412, in part because "the bankruptcy court had developed a substantial 'learning curve' and . . . transferring venue would have delayed the final resolution of the bankruptcy case").

There is also "a strong presumption in favor of placing venue in the district court where the bankruptcy case is pending." *Quick*, 2007 WL 494924, at *3. Plaintiffs concede that this so-called "home court" presumption weighs in favor of transfer. *See*

Plaintiffs' Supp. Brief at 4 ("Other than favorability of the home court, there is absolutely no reason why transferring this matter is in the 'interest of justice.'"). While this factor is less important where the debtor is a non-movant in the motion to transfer venue, *Quick*, 2007 WL 494924, at *3, the court finds that it is entitled to some weight in favor of transfer.

Other factors are largely irrelevant or, if relevant, appear neutral. Neither side suggests they could not receive a fair trial in the Bankruptcy Court or that they would face difficulties in enforcing a judgment. The court's familiarity with local controversies and laws is of minimal importance here, as this case centers primarily on bankruptcy issues and § 747. Plaintiffs contend that this court's familiarity with Iowa law on issues of "dealership franchise law" make this forum more fair and efficient. Plaintiffs' Supp. Brief at 5. However, to the extent Plaintiffs' claims implicate Iowa law,[8] the Bankruptcy Court confronted similar statutes from a variety of jurisdictions in connection with the wind-down agreements and could do so in this case.

The only factor that arguably weighs against transfer is the deference ordinarily owed to Plaintiffs' choice of forum. However, this factor is entitled to less weight when "the transaction or underlying facts did not occur in the chosen forum." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (considering transfer under § 1404(a)) (internal citation omitted). While some underlying facts—such as the purported transfer from Family Auto to Joel Thys—occurred in this forum, other important transactions, including the Wind-Down Agreement and the Bankruptcy Court's Sale Order originate in the Southern District of New York. Regardless, on balance, the factors

---

[8] Plaintiffs claim that New GM has failed to comply with Iowa Code Section 322A.12, which governs a franchiser's duty to give effect to a transfer of a franchisee's dealership. The court notes that the Bankruptcy Court found similar statutes to be "trumped" by federal bankruptcy law. *See* New GM's Exhibit A (docket no. 7-2) at 90 (holding that state laws that "impair the ability to reject, or to assume and assign" contracts "must be trumped by federal bankruptcy law").

discussed above strongly outweigh Plaintiffs' choice of forum. Accordingly, the court finds that transferring this case to the Bankruptcy Court would be in the interest of justice.

### b. *Convenience of the parties*

Section 1412 is stated in the disjunctive. Thus, a court may transfer a case "under *either* the interest of justice rationale or the convenience of the parties rationale." *In re Dunmore Home, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (emphasis in original); *Creekridge Capital*, 410 B.R. at 629 (noting disjunctive phrasing and stating that § 1412 transfer is appropriate upon a sufficient showing under either prong). In light of the court's conclusion that transfer serves the interest of justice, it need not address the convenience of the parties.

### C. *Plaintiffs' Other Arguments*

Plaintiffs raise a host of other arguments against the Bankruptcy Court's jurisdiction and/or transfer of the instant action. The court addresses each of them here.

### 1. *Adhesion contract or economic duress*

Plaintiffs contend that the Wind-Down Agreement is a voidable contract of adhesion. Similarly, Plaintiffs claim the Wind-Down Agreement is voidable due to economic duress. The Bankruptcy Court considered and rejected similar arguments in the course of approving the wind-down agreements. *See* New GM's Exhibit A at 90 ("There is no basis in law or fact for holding these contractual modifications were unlawfully 'coerced.'"). The Bankruptcy Court reasoned that similar contract modifications with bankruptcy debtors have "never been regarded as unlawful coercion." *Id.* at 89. "Rather, it has been recognized as an appropriate use of the leverage that Congress has given to debtors for the benefit of all of the other creditors who are not contract counterparties, and for whom the restructuring of contractual arrangements is important to any corporate restructuring." *Id.* The court need not address the merits of these arguments, as the

Bankruptcy Court is fully capable of doing so upon transfer.[9]

## 2. Estoppel

Plaintiffs argue that New GM is estopped from claiming that Plaintiffs are bound by the Wind-Down Agreement. The gist of this argument is that when New GM agreed to the Arbitral Order, it "waived any rights to rely on provisions of the Wind-Down Agreement" because "[t]wo authorities in direct conflict with one another cannot logically exist—one must give way." Plaintiffs' Brief at 13. Plaintiffs cite no authority in support of this argument. Additionally, this argument presupposes that the Wind-Down Agreement and Arbitral Order are in direct conflict, an issue the Bankruptcy Court will likely confront as part of this case. Accordingly, the court need not address it here.

## 3. Withdrawal

Plaintiffs contend that, if the court referred this case to the Bankruptcy court, it would be mandatory for the district court to withdraw it. Withdrawal is governed by 28 U.S.C. § 157(d), which states, in part: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The court agrees with New GM that this issue is not ripe, as Plaintiffs have not filed a motion to withdraw, either in this court or in the Southern District of New York. The appropriate court may address this issue if and when Plaintiffs raise it.[10]

---

[9] While the court notes the Wind-Down Agreement's forum selection clause, it does not rely on that provision as a basis for transferring this case. The court finds that transfer is appropriate based on the factors discussed in Section IV.B, *supra*, independent of the forum selection clause.

[10] Plaintiffs argue that withdrawal would be mandatory here because "only non-[bankruptcy] [c]ode matters are at issue" and the claim for enforcement of the Arbitral Order "dominates" this action. Plaintiffs' Brief at 12. As previously stated, Plaintiffs'

(continued...)

### 4. Judicial estoppel

At the Hearing, Plaintiffs argued that the doctrine of judicial estoppel may bar New GM from contesting the issue of jurisdiction. Specifically, Plaintiffs contend that New GM has taken an inconsistent position in *General Motors LLC v. Santa Monica Group, Inc., et al.*, Case No 10-CV-4784-DMG-RC (C.D. Cal. 2010) ("California Action"). *See* New GM's Complaint in California Action (docket no. 29-1). In the California Action, New GM argued that the district court had federal question jurisdiction because its claims arose under § 747. New GM also asserted diversity jurisdiction.

Plaintiffs' argument for judicial estoppel is unconvincing. In the California Action, New GM alleged that the defendant breached a settlement agreement reached during a § 747 arbitration by later refusing to dismiss the arbitration proceedings. Accordingly, New GM brought claims for a declaratory judgment, specific performance and injunctive relief. "The doctrine of judicial estoppel 'protects the integrity of the judicial process.'" *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 738 n.6 (8th Cir. 1987)). In deciding whether to apply the doctrine, a court should consider at least three factors, the first of which requires that "'a party's later position must be clearly inconsistent with its earlier position.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). New GM's position in this case is not clearly inconsistent with its position in the California Action, which did not involve potential breaches of a wind-down agreement or the

---

[10](…continued)

claims in this case are inextricably intertwined with the Wind-Down Agreement and the Bankruptcy Court's orders. Furthermore, courts take a narrow view of the mandatory withdrawal statute, holding that "[w]ithdrawal is mandated only where the issues presented require significant interpretation of federal laws." *Wittes v. Interco Inc.*, 137 B.R. 328, 329 (E.D. Mo. 1992) (internal quotation marks and citation omitted). [A] literal reading of the statute 'would eviscerate much of the work of the bankruptcy courts' . . . ." *Id.* (quoting *O'Connell v. Terranova* (*In re Adelphi Inst., Inc.*), 112 B.R. 534, 536 (S.D.N.Y. 1990)).

Bankruptcy Court's orders.  Simply put, the cases are not comparable.  Accordingly, the court declines to apply judicial estoppel.

>    **5.    *Summary***

As the foregoing explains, Plaintiffs' additional arguments lack merit and do not alter the court's conclusion with respect to the Bankruptcy Court's jurisdiction or the appropriateness of transferring this case.  Accordingly, the court shall transfer the instant action to the Bankruptcy Court.

## V.  CONCLUSION

In light of the foregoing, it is **HEREBY ORDERED THAT** Defendant General Motors LLC's Motion to Dismiss (docket no. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows:

>    (1)    The Motion to Dismiss is **DENIED** to the extent it seeks dismissal of the instant action;

>    (2)    The Motion to Dismiss is **GRANTED** to the extent it seeks transfer of the instant action to the United States District Court for the Southern District of New York; and

>    (3)    This action shall be **TRANSFERRED** to the United States District Court for the Southern District of New York for reference to the Bankruptcy Court.

Defendant General Motors LLC's  Motion for Leave (docket no. 34) is **DENIED AS MOOT**.  Upon transfer, the Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 12th day of October, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA