# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| ROSE CHEVROLET, INC., | ) | Case Nos.: | 1:10 CV 2140 |
| HALLEEN CHEVROLET, INC., | ) | | 1:10 CV 2097 |
| ANDY CHEVROLET CO. | ) | | 1:10 CV 2153 |
| *doing business as* SIMS | ) | | |
| CHEVROLET, INC., | ) | | |
| | ) | | |
| Petitioners | ) | | |
| | ) | | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. | |
| | ) | | |
| GENERAL MOTORS, LLC | ) | | |
| | ) | | |
| Respondent | ) | ORDER | |

On October 8, 2010, Petitioners Rose Chevrolet, Inc., Halleen Chevrolet, Inc., and Sims Chevrolet, Inc. ("Plaintiffs"), each moved for an emergency stay and declaratory judgment through a temporary restraining order, preliminary injunction, and/or permanent injunction ("TRO"), in their respective cases because Respondent, General Motors LLC threatened to collaterally attack this Article III court's federal question and diversity jurisdiction through an Article I Bankruptcy Vourt in the Southern District of New York by 3:00 p.m. on Friday, October 8. 2010. (ECF No. 5.)[1]

The court held a teleconference with counsel for both parties to this case on October 8, 2010, during which the court heard oral argument on the TRO Motion. Since that time, the court has also reviewed the extensive briefing submitted by Petitioners and Respondent, as well as the various

---

[1] As all the filings are the same in each case, the court will use the numbering in Case No. 1:10-cv-2097 to represent all of the filings.

exhibits attached to the filings. For the reasons stated below, the Motion for a TRO is denied.

On June 1, 2009, General Motors Corporation n/k/a Motors Liquidation Company ("Old GM"), filed a voluntary Chapter 11 petition for relief from the Bankruptcy Court. (General Motors LLC's Opposition to Emergency Motion for Stay and Declaratory Judgment Through a TRO and Injunction, at 5, ECF No. 7.) In order to preserve the value of its assets, Old GM sold most of its assets to a new company with new ownership. (*Id.*) The alternative to the sale would have been liquidation, which would have created "appalling consequences for [Old GM's] creditors, its employees, and our nation." *In re Gen. Motors Corp.*, 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009). Following an evidentiary hearing, the Bankruptcy Court entered an order authorizing sale of assets pursuant to amended and restated master sale and purchase agreement with NGMCO, Inc., authorizing assumption and assignment of certain executory contracts and unexpired leases in connection with the sale, and granting related relief. (GM Opp. at 5.) This order is known as the 363 Sale Order. (*Id.*) The 363 Sale Order authorized and approved the Amended and Restated Master Sale and Purchase Agreement ("MSPA), by Old GM and General Motors LLC ("New GM"). (*Id.*) The United States Treasury, the Canadian government, a deed of trust, and unsecured claimants of Old GM, made up New GM's ownership. (*Id.*) The Bankruptcy Court found that the purchaser acquired the assets, "free and clear of liens, encumbrances, and other interests (other than Permitted encumbrances)...". (363 Sale Order, Ex. A, at 45-46, ECF No. 7.) The Bankruptcy Court stated that the purchaser would not have entered into the MSPA and proceeded to complete the transaction had the sale of the purchased assets not been free and clear. (*Id.* at 59.)

In order to ensure long-term viability of New GM, the Section 363 Sale allowed New GM to strengthen integral parts of its business, including New GM's dealer network. (GM Opp. at 6.)

-2-

"Old GM, government officials, the Auto Task Force, and industry commentators, determined that the dealer network needed to be reduced, realigned, and modernized to allow New GM to compete more efficiently in the marketplace." (*Id.*) Old GM applied a set of factors to identify poorly performing dealerships that would not become a part of the New GM network. (*Id.*) The dealers that were not retained were offered Wind-Down agreements, "which provided monetary payments that allowed the continuance of selling and servicing GM vehicles under certain conditions until October 31, 2010." (*Id.*) The Bankruptcy Court approved the Wind-Down Agreements and found in the 363 Sale Order that the agreements were "valid and binding contracts, enforceable in accordance with their terms." (*Id.*)

The Wind-Down agreements were used with over 2,000 dealerships throughout the United States. (TRO, at 3.) Concerned by the effects of the auto industry's bankruptcies, the House of Representatives, Committee on the Judiciary, held three days of hearings on these issues. (*Id.*) Congressional committees also conducted investigations, hearings, and gathered evidence. (*Id.*) Because of the concerns over the closures of a significant number of dealerships, the resulting unemployment that would ensue, and damage to the livelihoods of the dealership owners, Congress passed the Dealership Arbitration Act. (*Id.* at 4; GM Opp. at 9.) Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117 (2009)) ("Section 747"), commonly known as the Dealership Arbitration Act, provided dealerships that had been terminated pursuant to a Wind-Down Agreement the opportunity to seek reinstatement to the New GM dealer network through binding arbitration. (GM Opp. at 9.) Prior to arbitration "covered manufacturers"(those auto manufacturers which the United States Government has an ownership interest), such as New GM, were required to provide each "covered dealership" (those affected by Wind-Down Agreements), with a summary

of terms and the rights given by the statute, as well as the specific criteria used to terminate the dealership, not renew the dealership contract, or to determine why the contract was not assumed or assigned by New GM. (Section 747.) All the arbitrations were to be conducted and fully completed by June 14, 2010, or July 14, 2010, at the latest, if the arbitrator determined an additional 30 days was warranted. (GM Opp. at 9.; Section 747.) Under Section 747, Congress mandated that there would be no depositions in the proceedings and discovery was limited to requests for documents specific to the dealership. (Section 747.) Congress also stated that the arbitrator could not award compensatory, punitive, or exemplary damages to any party. (*Id.*) Congress provided criteria to be used by the arbitrator in determining if the dealership would be reinstated**:**

> (1) the covered dealership's profitability in 2006, 2007, 2008, and 2009, (2) the covered manufacturer's overall business plan, (3) the covered dealership's current economic viability, (4) the covered dealership's satisfaction of the performance objectives established pursuant to the applicable franchise agreement, (5) the demographic and geographic characteristics of the covered dealership's market territory, (6) the covered dealership's performance in relation to the criteria used by the covered manufacturer to terminate, not renew, not assume or not assign the covered dealership's franchise agreement, and (7) the length of experience of the covered dealership.

*(Id.)* Congress also stated that the arbitrator should "balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer." *(Id.)* Additionally, Congress provided the for the arbitrators to be chosen from the list of qualified arbitrators maintained by the Regional Office of the American Arbitration Association. *(Id.)* It also provided for the time frame the arbitrator had to reach a decision and what factors should be included in the written determination. *(Id.)* Further, Congress established the process by which a covered dealership

-4-

should be reinstated, continued, or added to the dealership network, should the arbitrator find in their favor. (*Id.*)

Old GM offered the Petitioners Wind-Down Agreements as an alternative to "outright rejection of the Dealer Agreement". (GM Opp. at 10.) These agreements were accepted, executed, and returned to Old GM in June of 2009. (*Id.*) Under the agreements, each Petitioner agreed to terminate its Dealership Agreement no later than October 31, 2010. (*Id.*) The Petitioners' Wind-Down Agreements were assigned to New GM under the terms of the 363 Sale. (*Id.*)

On January 13, 2010, New GM provided its required notice regarding Section 747 and the criteria it used in deciding to issue Wind-Down Agreements for the Petitioners' dealerships. (TRO at 5.) Each of the Petitioners timely filed a demand for arbitration, and their matters were assigned to Arbitrator Dale A. Crawford, a former state court judge. (*Id.*) Testimony was provided at consolidated hearings on June 8-11, 2010. (GM Opp. at 10.) Closing briefs were submitted on June 24, 2010, and the Arbitrator's award was disseminated to the parties on June 30, 2010. (TRO at 5.) Arbitrator Dale Crawford, heard the claims of four dealerships, one of which was decided against New GM, requiring that dealership to be reinstated. (*Id.*) The arbitrator provided a lengthy legal analysis which contains "multiple errors, bias, and requires the Award to be vacated", according to Petitioners. (*Id.*) On September 20, 2010, Petitioners filed Applications to Vacate with this court. (ECF No. 1.) Petitioners assert this court has federal question jurisdiction stemming from Section 747 and diversity jurisdiction because of the parties are of different states. (TRO at 6.)

New GM filed a motion on September 10, 2010 in the Bankruptcy Court in the Southern District of New York to enforce the 363 Sale Order against Rally Auto Group, Inc., as a result of its arbitration award in its favor, enabling it to enforce the terms of the 363 Sale Order and Wind

-5-

Down Agreement. (Objection of Rally Auto Group, Inc. to Proposed Orders Submitted by General Motors LLC's Motion to Enforce the 363 Sale Order and For Related Relief and the Order Granting the Oral Application of Rally for a Stay Pending Appeal of the Order Granting GM's Motion, ECF No. 9-5.; GM Opp. at 18.) Rally is a dealership that had been seeking to have the arbitration award vacated or modified in the Central District of California. (Obj. Of Rally, at 2.) Rally submitted a 32 page objection with over 130 pages of exhibits on September 23, 2010. (GM Opp. at 18.) New GM filed a reply, and a hearing was held on October 4, 2010. (*Id.*) Bankruptcy Judge Gerber issued a lengthy decision, during which he stated that he had exclusive jurisdiction over the dispute, had core subject matter jurisdiction, and that there was no right to appeal under the Dealer Arbitration Act. (*Id.* at 18-19.) He stated that because there was nothing in the Dealer Arbitration Act to modify the subject matter jurisdiction of the courts or previous orders he had issued, he had core subject matter jurisdiction over the issue. (*Id.* at 19.) Additionally, as both parties appeared to agree, the Federal Arbitration Act ("FAA") does not apply because it implicates contractual agreements to arbitration which is not the case here since arbitration was compelled by Congress. (*Id; see* 9 U.S.C. § 2.) He also stated that he did not find a right to judicial review under the Dealership Arbitration Act. He indicated that since federal statutes routinely provide for such review, its absence was instructive in this instance. (*Id.*) He concluded that Congress chose not to create a right to judicial review as a means of avoiding the excessive costs and delays of litigation. (*Id.*) He also disagreed with Rally's conclusion that New GM conceded its right to judicial review by its willingness to proceed under the American Arbitration Association's ("AAA") commercial arbitration rules, since New GM expressly stated it was not waiving any objections it may have to the arbitration or the AAA's rules, by participating in the arbitration. (*Id.* at 20.) Therefore,

Bankruptcy Judge Gerber found, any issues relating to the 363 Sale Order and Wind Down Agreements, such as the arbitrations stemming from the Dealership Arbitration Act, should be brought in front of his court, and no other court. *(Id.)* Rally requested and was granted a stay of the order in order to appeal to the district court. (*Id.*) The parties have not provided any further information regarding this stay and appeal.

Based on the Rally decision, New GM sent Petitioners a letter on October 6, 2010, requesting that they dismiss their actions in this court in order to comply with the Bankruptcy Court's 363 Sale Order. (Motion of General Motors LLC to Enforce 363 Sale Order and Approved Deferred Termination Agreements Against Rose Chevrolet, Inc., Halleen Chevrolet, Inc., Andy Chevrolet Inc., and Leson Chevrolet Company, Inc., at 2, ECF No. 9-1.) New GM threatened to collaterally attack this court's subject matter jurisdiction in the Bankruptcy Court by Friday, October 8, 2010 at 3:00 p.m, if these actions were not dismissed by Petitioners before that time. (TRO at 6.) The Petitioners' actions herein were not withdrawn and New GM filed their motion in the Bankruptcy Court in the Southern District of New York on October 8, 2010. (Mot. to Enforce 363 Sale Order and Approved Deferred Termination Agreements.) Petitioners were given until Tuesday, October 19, 2010 to make any objections to the motion. The hearing on the motion has been set for October 26, 2010. Petitioners filed a renewed motion for emergency relief with this court on October 18, 2010, requesting an order as soon as possible because of the imminent Tuesday, October 19, 2010 briefing deadline. (ECF No. 16.) Petitioners are requesting that this court enjoin the Bankruptcy Court from proceeding with the matters which are the subject of their actions before this court. They assert that if such relief is not granted they will suffer irreparable harm. For the foregoing reasons, this request is hereby denied.

The court has grave doubts as to its jurisdiction to hear the current actions in front of it. The Petitioners assert the Federal Arbitration Act ("FAA") and the Dealer Arbitration Act ("DAA") as bases of jurisdiction for the court. The FAA encompasses agreements among parties to arbitrate. This arbitration was not a result of an agreement among parties, rather it was compelled by Congress. Therefore the FAA is likely not a jurisdictional basis for this court to confer subject matter jurisdiction. Similarly, the DAA is likely not a basis either, as it fails to authorize or suggest a right to judicial review, but instead appears to indicate a desire by Congress to avoid the courts, while providing a limited remedy to covered dealerships. Petitioners alternatively claim an implied right to judicial review based on New GM's consent to arbitrate. This argument too is not well taken, as New GM provided in its Answering Statement it was not waiving any objections to the proceedings or the AAA's commercial arbitration rules.

Given the truncated time frame and the fact that the court has not been provided with authority by the petitioners which support the conclusion that this court may/should enjoin the parallel proceeding in the Bankruptcy Court, the court does not find that it has such authority at this time. While the court has not ruled out the possibility that it may have concurrent jurisdiction, no authority has been provided to this court to support petitioners' claims that this court has exclusive jurisdiction. Additionally, it appears that the challenges to the Wind-Down Agreements and the decisions of the arbitrators under the Dealer Arbitration Act have some relationship to the Bankruptcy Court's orders. Thus, it also appears that if the court were to assert exclusive jurisdiction or seek to prohibit litigation in Bankruptcy Court, this will affect the Wind-Down Agreements and the October 31, 2010 deadlines, part of the 363 Sale Order. Therefore, the Petitioners' Motion for a Temporary Restraining Order (ECF No. 5) and Motion for Temporary

Restraining Order/Renewed/and Injunction with New Information (ECF No. 16) are denied because Petitioners have not shown they are likely to succeed on the merits. Further, they do have an avenue of review of the orders of the Bankruptcy Court as they may do so in the United States District Court for the Southern District of New York. Even if the court were to have concurrent jurisdiction, there is no showing that the court would have authority to enjoin the Bankruptcy Court's proceedings. This is without regard to any suggestion that the Bankruptcy Court does or does not have the power to enjoin proceedings in this court.

  IT IS SO ORDERED.

            /S/ SOLOMON OLIVER, JR.
            CHIEF JUDGE
            UNITED STATES DISTRICT COURT

October 18, 2010