Hearing Date: October 26, 2010 at 9:45 a.m.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt

*Counsel for the Official Committee
of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
                                                        :
In re:                                                  :   Chapter 11 Case No.:
                                                        :
MOTORS LIQUIDATION COMPANY., et al.,                    :   09-50026 (REG)
f/k/a General Motors Corp., et al.                      :
                                                        :
                          Debtors.                      :   (Jointly Administered)
                                                        :
------------------------------------------------------- X

**RESPONSE TO THE FEE EXAMINER'S REPORT AND STATEMENT OF
LIMITED OBJECTION TO THE THIRD INTERIM FEE APPLICATION OF
KRAMER LEVIN NAFTALIS & FRANKEL LLP**

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

Kramer Levin Naftalis & Frankel LLP ("**Kramer Levin**" or the "**Applicant**"), counsel for the Official Committee of Unsecured Creditors (the "**Committee**") of the above captioned debtors and debtors-in-possession in these chapter 11 cases (collectively, the "**Debtors**"), hereby submits this response (the "**Response**") to the Report and Statement of Limited Objection (the "**Report and Limited Objection**") of the Fee Examiner ("**Fee Examiner**") to the Third Interim

KL2 2667259.7

Fee Application ("**Third Interim Fee Application**") of Kramer Levin.[1] In support of its Response, Kramer Levin represents as follows:

## PRELIMINARY STATEMENT

1.  Throughout this case, Kramer Levin has consistently made a good faith effort to work with the Fee Examiner to address any and all areas of concern that the Fee Examiner has brought to our and the Court's attention. As the Fee Examiner acknowledged in the Report and Limited Objection, Kramer Levin has communicated with the Fee Examiner extensively throughout the fee application process. The only open dispute related to the Third Interim Fee Application concerns time expended in connection with responding to the Fee Examiner and "defending" prior fee applications. As the Court will recall, in connection with the prior fee applications, the Fee Examiner aggressively challenged Kramer Levin's fees and went so far as to question the role of the Committee in the GM case. The Fee Examiner's positions required that Kramer Levin expend significant time and effort responding to objections and defending the very existence of the Committee. Such activity is above and beyond what occurs in non-bankruptcy cases and now the Fee Examiner seeks yet another arbitrary 50% reduction for engaging in this bankruptcy-specific process. Kramer Levin submits that the fees and expenses requested in the Third Interim Fee Application are appropriate in all respects. Set forth below is a more detailed response to the area of dispute.[2]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Third Interim Fee Application.

[2] In the Report and Limited Objection, the Fee Examiner makes a variety of statements and arguments on billing rates for which it presently seeks no fee reductions. This Response focuses on areas for which the Fee Examiner is currently seeking a reduction. By not addressing each of the Fee Examiner's statements and arguments Kramer Levin does not concede that it agrees with the Fee Examiner. Indeed, the opposite is true and we reserve all rights in connection with future fee applications.

2

## RESPONSE

*Fee Applications, Fee Examiner Issues, and Monthly Fee Statements*

2. The Fee Examiner seeks a fifty (50) percent deduction in the fee application billing category for time spent on responding to the Fee Examiner (seeking disallowance of $52,386.50 in fees).[3] *See Report and Limited Objection*, pages 11-12. Kramer Levin disagrees with the Fee Examiner's contention that time spent responding to the Fee Examiner and defending one's fee application should result in half-billing rates.

3. At the July 6, 2010 hearing on the Second Interim Fee Applications, the Court addressed issues related to fee applications and billing practices. The Court appropriately distinguished between (i) drafting the narrative that is part of any fee application and preparation of the application and accompanying tables ("activities that are unique to the bankruptcy process and are plainly compensable") and (ii) preparing initial timesheets and preparing a bill for the clients ("services that are required for any client, bankruptcy or non-bankruptcy, and are plainly non-compensable.") Transcript of July 6, 2010 Hearing at 8:14-18, 8:20-23. This Court held that matters falling between these two bright line rules (including the additional detailed review of monthly fee statements necessary to comply with U.S. Trustee Guidelines) should prospectively be billed to the estate with a fifty percent reduction. Kramer Levin promptly complied with the Court's direction by dividing work spent on fee applications/responding to the Fee Examiner/preparation of budgets into one matter category and work spent on routine billing and the preparation of monthly fee statements into another matter category, which was billed to

---

[3] It appears from the Report and Limited Objection that the Fee Examiner is not questioning the fees incurred in preparing the Second Interim Fee Application that occurred during this time period. However, Kramer Levin notes that there are other matters in this category (such as preparing and submitting monthly budgets as required by the Fee Examiner's First Status Report and Advisory [Docket No. 5002]) for which the Fee Examiner is seeking a whole-sale 50% reduction.

3

the estate at only fifty percent (resulting in a reduction of $10,235.00 for the Second Interim Fee Period). While the Court did not directly address the treatment of time and expenses incurred defending fee applications, Kramer Levin submits that such time is unique to the bankruptcy process and is clearly compensable.[4]

        4.      In contrast to the preparation of monthly fee statements, the extensive discussions and preparation of responses to the Fee Examiner's inquiries and objections are unique to the bankruptcy process and should be fully compensated. As the Court may recall, in connection with the First Interim Fee Application (which was subject of extensive discussion with the Fee Examiner in April 2010), the Fee Examiner questioned the role of the Committee in these cases and, in particular, why time was spent on the following: (i) DIP/Cash Collateral Issues; (ii) Creditor Communications; (iii) Environmental Issues; (iv) Discovery/Depositions; (v) Appellate Issues (vi) Pre-Petition Collateral Review and (vii) negotiation of the 363 Sale and related matters. As we argued at the First Interim Fee hearing, it was necessary for the Committee to take a very active role in these cases in order to protect the rights of general unsecured creditors. As such, it was critical for Kramer Levin to aggressively respond and to defend the Committee's actions and role in the face of the Fee Examiner's objections to Kramer Levin's activity on behalf of the Committee. In addition, two members of the Committee (Wilmington Trust Company and Law Debenture Trust Company of New York) filed statements in support of Kramer Levin's fee application with regard to these issues [Docket No. 5634 and 5635]. At the conclusion of the hearing, the Court found that "Kramer Levin's services were substantial, necessary and reasonable" (Transcript of April 29, 2010 Hearing at 33:17-20); and did not reduce the fees for any of these categories. *See also* Transcript of April 29, 2010 Hearing

---

[4] Kramer Levin notes that in an exercise of billing discretion it determined to take a $20,729.50 voluntary reduction to time charged in the fee application matter.

4

KL2 2667259.7

at 31 – 36.

5. In addition to questioning the statutory duties of the Committee, the Fee Examiner questioned a variety of other issues in Kramer Levin's fee application, including (i) use of Matter Descriptions; (ii) attendance at hearings; (iii) billing rates and rate increases (suggesting an across the board five percent reduction); (iv) use of summer associates and attorneys not yet admitted; (v) overcharges/undercharges; (vi) clerical and administrative tasks; (vii) block billing; (viii) billing and retention matters; (ix) legal research; (x) repetitive and vague tasks; (xi) attendance on Committee calls and external communications; (xiii) details on Lexis & Westlaw contracts; and (xiv) a variety of expenses, including transportation, meals, and photocopying. It was necessary for Kramer Levin to expend significant time and effort providing detailed explanations and supplemental documentation responsive to the Fee Examiner's questions.

6. Kramer Levin acted in good-faith and provided explanations of these charges to the Fee Examiner during each step of the process. Below is a summary of Kramer Levin's correspondence with the Fee Examiner, the compensation for which the Fee Examiner is now questioning:

- March 31, 2010: Kramer Levin receives initial Fee Examiner letter (questioning all of the above-mentioned categories; although the initial letter did not suggest a specific disallowance, the Fee Examiner questioned categories aggregating over $2.5 million in fees of Kramer Levin's $4.5 million First Interim Fee Application).

- April 9, 2010: Kramer Levin submits detailed letter response, providing explanations for all the questioned categories. Kramer Levin agrees to write-off approximately $230 for pre-retention expenses inadvertently billed to the estate.

- April 13, 2010: Kramer Levin submits additional details on meals and car services and agrees to write-off approximately $248 for expenses inadvertently billed to the estate. Kramer Levin has telephonic conversation with Fee Examiner to discuss the letter response.

- April 15, 2010: Kramer Levin received the Fee Examiner's draft Report and Limited Objection (suggesting disallowance of approximately $709,293 in fees and expenses).

5

- April 19 – 20, 2010: Kramer Levin submits additional information in response to the draft Report and Limited Objection including details on billing rates and attorneys not yet admitted, library research expenses, further explanation on a variety of legal research issues, scope of involvement in discovery/depositions, and a response to and/or further detail on each time entry questioned for "block billing," "repetitive tasks" or "vague communications."

- April 22, 2010: Fee Examiner files Report and Limited Objection (suggesting disallowance of approximately $520,864 in fees and expenses).

- April 27, 2010: Kramer Levin files Response.

- April 27 – 28, 2010: Kramer Levin prepares demonstrative exhibits to be presented at hearing.

- April 29, 2010: Hearing on First Interim Fee Applications. The Court reduced Kramer Levin's fees by approximately $114,848 for summer associates, clerical and administrative tasks, and certain block billing and vague entries.

7. In our experience, such an extensive back-and forth discussion only occurs the bankruptcy context, and rarely to such extreme levels as in this case. In the first instance, the client defines the scope of the work in the engagement letter and would unlikely question why the law firm spent time on a specific issue (unlike here where the Fee Examiner retroactively questioned why the Committee negotiated aspects of the 363 sale or participated in the expedited discovery and appeals). Second, if a private client disputed the amount of time billed, there would be informal communications sometimes resulting in an agreed-upon accommodation. Here, the Fee Examiner has routinely brought certain issues to the Court as a matter of policy, notwithstanding repeated explanations by the Applicant (including the across-the-board 5% reduction in fees, billing rates, role of the Committee and time spent on billing and retention matters). If the Applicant is required to respond to these inquiries and Reports, the Applicant should be compensated for its time and effort.

8. Kramer Levin acknowledges the split in the case-law on compensation for defending a fee application mentioned by the Fee Examiner in his Report and Limited Objection, but respectfully submits that it should be compensated for preparing and defending its fee

6

applications in this case. Kramer Levin was required to go above and beyond its normal practices in defense of its work in connection with the First Interim Fee Application. Kramer Levin submits that the $114,000 reduction in fees on its $4.5 million First Interim Fee Application, where over $2.5 million in fees were questioned as the outset, is certainly a "successful" defense that should be compensated. *See In re Worldwide Direct, Inc.,* 334 B.R. 108, 112 (D.Del. 2005) ("[R]equiring counsel who has successfully defended a fee claim to bear the costs of that defense is no different than cutting counsel's rate or denying compensability on an earlier fee application."). In addition, as noted in Kramer Levin's Third Interim Fee Application (p. 18), Kramer Levin has previously exercised reasonable billing discretion and reduced its request for compensation for responding to the Fee Examiner by $20,729.50. *See In re CF&I Fabricators*, 131 B.R. 474 (Bankr. D. Utah 1991) ("Reviewing objections filed against a fee application and the time spent appearing in court to present the application is compensable, as long as a certain amount of discretion is used."). While Kramer Levin recognizes the important role of the Fee Examiner in these cases, we respectfully submit that Kramer Levin should not be penalized for responding in good faith to the Fee Examiner's reports and requests for further information and defending our fee applications before the Bankruptcy Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

KL2 2667259.7

**CONCLUSION**

9. For all of the reasons set forth above, Kramer Levin respectfully requests that the compensation and reimbursement requested in its Third Interim Fee Application be allowed, subject to the adjustments to which Kramer Levin has agreed, and that it be granted such other and further relief as is just.

Dated: October 21, 2010
      New York, New York

                                  **KRAMER LEVIN NAFTALIS & FRANKEL LLP**

                                  By: /s/ Robert T. Schmidt
                                  Thomas Moers Mayer
                                  Robert T. Schmidt
                                  1177 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 715-9100

                                  *Counsel for the Official Committee of Unsecured Creditors*