UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 11 Case No.:
                                                         :
MOTORS LIQUIDATION COMPANY., et al.,                     :    09-50026 (REG)
f/k/a General Motors Corp., et al.,                      :
                                                         :
                         Debtors.                        :    (Jointly Administered)
                                                         :
-------------------------------------------------------- X

### ORDER CONCERNING ACC'S REQUEST
### FOR AN ANONYMITY PROTOCOL

On August 24, 2010, the Court entered an Order (the "**UCC 2004 Order**") [Dkt. No. 6749], pursuant to Bankruptcy Rule 2004, granting the Motion (the "**UCC 2004 Motion**") [Dkt. No. 6383] of the Official Committee of Unsecured Creditors of Motors Liquidation Company (the "**Creditors' Committee**") for an Order authorizing the Creditors' Committee, among other things, to obtain certain discovery from (i) the Delaware Claims Processing Facility and Claims Resolution Management Corporation (the "**Claims Processing Facilities**") and (ii) the Armstrong World Industries, Inc., Asbestos Personal Injury Settlement Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust, the United States Gypsum Asbestos Personal Injury Settlement Trust and the Manville Personal Injury Settlement Trust (collectively, the "**Trusts**").

The UCC 2004 Order required, before service of the Subpoenas[1] by the Creditors' Committee on the Claims Processing Facilities and Trusts, the parties, including the Official

---

[1] Terms not defined herein shall have the meanings ascribed to them in the UCC 2004 Order.

1

KL2 2671736.2

Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "**ACC**"), to attempt to reach agreement on the terms of a protocol (an "**Anonymity Protocol**") that would enable the Creditors' Committee to obtain the information it seeks from the Claims Processing Facilities and/or the Trusts in a form that maintains the anonymity of the claimants whose data is produced, while at the same time enabling the Creditors' Committee and other parties to a potential contested estimation hearing in these cases to make use of such information in the manner described in the UCC 2004 Motion and at the August 9, 2010 hearing on the UCC 2004 Motion.

The UCC 2004 Order provided that any party was authorized to notify the Court in the event an Anonymity Protocol had been proposed and, in the party's view, the Creditors' Committee had unreasonably refused to agree to its terms, and, in the event of such notification, the Creditors' Committee was not to issue any subpoenas to the Claims Processing Facilities or Trusts pending further direction from the Court.

On September 14, 2010, the ACC filed a notice with the Court in which it asserted that the Creditors' Committee had unreasonably refused to agree to the terms of its proposed Anonymity Protocol, and the parties subsequently filed written submissions with the Court regarding that proposed Anonymity Protocol.

NOW, THEREFORE, the Court having reviewed and considered the various submissions of the parties regarding the ACC's proposed Anonymity Protocol and the record at the hearing of October 21, 2010, and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that notice of the briefing schedule and hearing on an Anonymity

2

Protocol were appropriate and no further notice thereof is necessary, IT IS HEREBY ORDERED THAT:

1.   The ACC's request that the Court order the implementation of its proposed Anonymity Protocol is denied in part and granted in part on the terms and conditions set forth below. Subject to this Order, the Creditors' Committee is authorized to issue the Subpoenas forthwith.

2.   In producing the Trust Information, the Claims Processing Facilities and the Trusts shall be permitted to redact or otherwise withhold the following fields (in addition to those data fields that may be withheld pursuant to the UCC 2004 Order):  (a) claimant address, phone, fax and email (except state); (b) personal representative name, Social Security Number ("**SSN**"), address, phone, fax and email; (c) occupationally exposed person address, phone, fax and email (except state); (d) dependent name (except number of dependents); (e) dependent date of birth (except year); (f) attorney address; and (g) contact name, address, phone, fax and email.

3.   Each of the claims estimation experts retained in these cases – namely, Bates White LLC, Legal Analysis Systems, Inc., Analysis, Research and Planning Corporation, and Hamilton, Rabinovitz & Associates, Inc. (each an "**Expert**") – shall use the names and Social Security Numbers of the Mesothelioma Claimants only for the following purposes ("**Permitted Matching Purposes**"):  (i) matching and combining the Trust Information, on a claimant-by-claimant basis, with data from General Motors LLC or other sources, (ii) verifying the accuracy of other Experts' matching of such data, and (iii) defending challenges to the accuracy of the Expert's matching of such data. To enforce this limitation, each Expert shall be subject to the data security restrictions set forth in this Order and such additional restrictions as

3

may be agreed upon by the parties to the asbestos estimation proceeding in this case (namely, the ACC, the FCR, the Debtors and the UCC), the Trusts, and the Claims Processing Facilities.

      a.     A defined period of time shall be provided for matching and combining the data as described in paragraph 3 above (the "**Matching Period**"), as follows:

      (i)     Within 2 weeks of the production of the Trust Information, the Experts shall exchange (a) a list of claimants (identified by their unique identifiers within the data produced by GM, but not name or Social Security Number) that each Expert believes is the unique set of Mesothelioma Claimants, and (b) for each unique claimant, a list of the Trusts' records to which the Expert believes the claimant matches.

      (ii)     Following the exchange of such lists, the Experts and counsel to the parties shall make a good faith effort to reconcile their views concerning the exchanged lists. As part of these efforts, each Expert shall promptly provide the other Experts and counsel to the parties with any additional data relied upon for his or her position with respect to any disagreement concerning the exchanged lists.

      (iii)     By no later than 4 weeks after the production of the Trust Information, the Experts shall collectively determine the extent of their agreement and disagreement on these lists.

      (iv)     Within 6 weeks of the production of the Trust Information, the Experts will exchange reports.

4

b. The results of each Expert's matching (the "**Matched Data**") shall be isolated from the original sources from which they are derived and may be preserved only in a new, discrete database. At the conclusion of the Matching Period, each Expert may assign a unique numeric identifier to each claimant included in his or her Matched Data and create a separate file (a "**Linked IDs File**") that will link these identifiers to the identifiers of each dataset that was incorporated into the Matched Data. Subsequently, each Expert shall delete the following fields from the Matched Data:

> Claimant name, SSN, address, phone, fax, email;
> Personal Representative name, SSN, address, phone, fax, email;
> Occupationally exposed person name, SSN, address, phone, fax, email;
> Other exposed person name, SSN, address, phone, fax, email;
> Exposure affiant name;
> Dependent name;
> Dependent date of birth (except year for each dependent);
> Lawsuit case numbers (except jurisdiction); and
> The identifiers of each dataset that was incorporated into Matched Data.

The databases that have been subjected to these required deletions are referred to below as the "**Anonymized Databases**."

c. Immediately after the creation of the Anonymized Databases, each Expert shall remove the Trust Information and the Linked IDs File, and all excerpts thereof (but not the Anonymized Databases), from his or her firm's computer network, put such data on an external storage device, and keep it in a secured location. Thereafter, each Expert shall use such data only for Permitted Matching Purposes. Except to the extent necessary for Permitted Matching Purposes, each Expert (a) shall not in any way, directly or indirectly, retain, copy, link, reflect, or use the Trust Information or the Linked IDs File, or use any portion or element thereof, in any database, report, document, or statement other than in the Anonymized Databases,

5

and (b) shall not retain any record of any kind linking any unique identifier used in an Anonymized Database to any information outside the Anonymized Database.

        d.      Pursuant to section 105(a) of the Bankruptcy Code, none of the Trust Information, Matched Data, Linked IDs Files, or the Anonymized Databases shall be subject to subpoena or otherwise discoverable by any person or entity other than the Debtor, the Creditors' Committee, the ACC, and the FCR.

        e.      For the avoidance of doubt, the Trust Information, any Matched Data, any Linked IDs Files, and any Anonymized Database shall be Confidential Estimation-Related Information for purposes of the Confidentiality Agreement and Protective Order entered in the above-captioned cases on or about August 24, 2010.

        f.      No claimant-specific data from, or derived from, the Trust Information shall be (i) placed on the public record, or (ii) filed with the Bankruptcy Court, the District Court, or any reviewing court, except under seal.

        g.      At the conclusion of the estimation litigation in this case, each Expert shall destroy the Trust Information and the Linked IDs File, and all excerpts thereof, without in any way retaining, preserving, or copying the Trust Information or the Linked IDs File. In addition, the provisions of paragraph 18 of the Confidentiality Agreement and Protective Order of August 24, 2010 shall apply, without limitation.

        4.      Nothing in this Order shall constitute a waiver by the ACC, the FCR, the Trusts, or the Claims Processing Facilities of any objection previously asserted with respect to the UCC 2004 Motion.

6

Dated: New York, New York
       October 22, 2010

*s/ Robert E. Gerber*
UNITED STATES BANKRUPTCY JUDGE