**Hearing Date and Time: October 26, 2010 at 9:45 a.m. (Prevailing Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re:                                                       :    Chapter 11 Case No.:
                                                             :
MOTORS LIQUIDATION COMPANY., et al.,                         :    09-50026 (REG)
f/k/a General Motors Corp., et al.                           :
                                                             :
                            Debtors.                         :    (Jointly Administered)
                                                             :
------------------------------------------------------------ X

**RESPONSE TO THE FEE EXAMINER'S REPORT AND STATEMENT OF
LIMITED OBJECTION TO THE THIRD INTERIM FEE APPLICATION OF
FTI CONSULTING, INC.**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

FTI Consulting, Inc. ("**FTI**"), financial advisors for the Official Committee of Unsecured Creditors of Motors Liquidation Company, et al., (f/k/a General Motors Corporation), submits this response to the Fee Examiner's Report and Statement of Limited Objection to the Third Interim Fee Application[1] of FTI Consulting, Inc., dated October 19, 2010 (the "**Objection**").

1. The observations made, limited objections raised, and suggested disallowances requested by the Fee Examiner related to the Third Interim Fee Application, dated August 5, 2010 (the "**Third Fee Application**") generally consist of the same issues that were previously raised and ruled upon by this Court at the hearings to consider the First Interim and Second Interim Fee Applications, these hearings occurred on April 29, 2010 and June 29, 2010, respectively.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Third Fee Application or the Objection.

2. FTI appreciates the purpose and value of the Fee Examiner's role in ensuring that the applicable rules, including the Local Guidelines and UST Guidelines, are followed and that the fees and expenses of court retained professionals are reasonable, necessary and appropriate. However, FTI continues to believe that the Fee Examiner's approach in developing the suggested disallowances to FTI's fees is nonsensical.

3. The Fee Examiner's approach has been to; (i) raise issues with the scope of certain work, certain individual task descriptions and in certain instances the overall number of professionals attending meetings or participating in conference calls, (ii) arbitrarily determine an "appropriate" number of hours that the Fee Examiner believes should have been incurred, and (iii) seek to impose a fee reduction by applying the "excess" hours to a "blended hourly rate".

4. The Fee Examiner continues to ignore the fact that when a firm is billing on a fixed fee basis, they are not "charging" the estate by the hour. FTI does not receive any additional compensation based on the incurrence of additional time needed to competently meet its obligations to the client.

5. Making multiple attendees available for meetings and conference calls generally results in better service and increased value to the Committee. Instead of commending FTI for investing additional time and attention to the matter, which does not result in increased cost to the Committee or to the Estate, the Fee Examiner seeks to penalize FTI for this.

6. Indeed, the Court has already ruled on this matter twice in connection with the previous fee hearings:

*Referring to specific reductions requested by the Fee Examiner related to time spent performing specific tasks*

2

> "FTI argues that its fee was based on a fixed fee arrangement. And that when FTI did more work, as it might […] FTI wouldn't get anymore compensation for doing so." [Referring to the Fee Examiner's position, the Judge states] "I've never seen [this position taken] in the thirty-seven years since I started in the bankruptcy business, I agree with FTI as to this issue."

*See* Transcript of Record at 37: 2-11, In re Motors Liquidation Corp., Case. No. 09-50026 (Bankr. S.D.N.Y. Apr. 29, 2010, afternoon session).

*Commentary regarding FTI's fixed fee arrangement*

> "Where the fee is on a fixed fee basis irrespective of hours worked […] I see no basis in law or equity for docking the professional based on a perception that the professional put in more work on retention or anything else…"

*See* Transcript of Record at 37: 17-21, In re Motors Liquidation Corp., Case. No. 09-50026 (Bankr. S.D.N.Y. Apr. 29, 2010, afternoon session).

*Commentary at the second fee hearing regarding FTI's fixed fee arrangement*

> "… I don't see a basis, subject to your rights to be heard, to dock FTI when it's getting a fixed monthly fee anyway. Now if, at the end of the case, we look at the totality of FTI's services to see whether it got a windfall then it would seem to me that you folks might be heard to see if that should be a basis for a distinction. But I don't see that as an issue now. So if, by way of example, FTI spent too much time doing one thing or another, performed unnecessary services or another, I don't see why this is any different than my earlier ruling."

*See* Transcript of Record at 28: 14-23, In re Motors Liquidation Corp., Case. No. 09-50026 (Bankr. S.D.N.Y. June. 29, 2010).

7. The Fee Examiner seems to acknowledge the Court's prior rulings in paragraph 15 of the Objection, where he states "The Fee Examiner does not anticipate that the suggested disallowances will result in a reduction of the Monthly Fixed Fee" yet the Objection

3

clearly contradicts this position and recommends specific "suggested fee disallowances" totaling $71,841.25.

8. Notwithstanding FTI's position that the suggested disallowances should be overruled and the Court's prior rulings that are consistent with that position, FTI feels compelled to specifically address and respond to the comments made by the Fee Examiner in connection with the Third Fee Application.

9. Regarding the comments on FTI's "Scope of Work" contained in the Objection at paragraph 17, the Fee Examiner takes issue with several essential functions that the Committee's financial advisor has undertaken at the direction of its client. For example, the Fee Examiner questions FTI's role in monitoring the financial health and financial performance of General Motors Company ("NewGM").

10. While we have explained our position several times, the Fee Examiner naïvely states at the end of paragraph 17 that "…since the composition of assets will not change, the Fee Examiner continues to question whether the tasks are an appropriate use of FTI resources by the Creditors' Committee. Suggested disallowance to be determined"

11. The scope of FTI's work related to these two areas is completely justified and appropriate. Further we believe that determining the scope of work and deciding which issues are appropriate for the Committee's review and monitoring is more appropriately left up to the collective judgment of the Committee. It is frankly beyond the scope of the Fee Examiner's work to attempt to dictate which issues the Committee should evaluate when fulfilling its fiduciary duties to all creditors.

12. The Fee Examiner's continued belief that because the composition of assets (i.e., Common Stock and Warrants) will not change, this should equate to a situation where the

4

Committee should simply ignore or neglect to monitor the ongoing performance of NewGM. This view is completely misinformed and erroneous.

13. The Fee Examiner has failed to realize that the unsecured creditors will own nearly 25% of NewGM, on a fully diluted basis. This asset will represent substantially all of the creditors' recoveries in this case. The Committee, as the court appointed representative of these creditors, has determined that the continued monitoring of NewGM's performance is wholly appropriate in this situation.

14. Furthermore, pursuant to that certain Equity Registration Rights Agreement dated as of October 15, 2009 the Estate was granted the right to register its NewGM common stock and thereby participate in the public offering of shares. Therefore, in order to appropriately make a determination regarding this election, it continues to be necessary for the Committee to monitor and be aware of the financial performance of NewGM. If the Committee chose simply to not monitor NewGM's performance, there would be no way it could make an informed decision regarding the registration of the shares and participation in the public offering.

15. In paragraph 20 the Fee Examiner alleges Vague Communications, as stated in our October 14, 2010 letter to the Fee Examiner, we disagree with that characterization.

16. In paragraph 23 the Fee Examiner seeks a suggested disallowance for Multiple Attendees at meetings or telephone conferences. As described herein, and in our previous two responses to interim fee reports, we believe this position is nonsensical.

17. In addition, in paragraph 23, the Fee Examiner states "It is also noteworthy that broad and divergent ranges of time are reported by individual timekeepers for these events—without explanation." We respectfully disagree with that statement. Our October 14,

5

2010 letter to the Fee Examiner explained that "…not all the professionals attending would participate for the entirety of such call or meeting".

18. The Objection also seeks certain disallowance of expenses related to hotel stays, airfare and ground transportation totaling $1,047.04. Rather than consume the courts time and the estates resources squabbling over such de minimis amounts, FTI agreed to an additional voluntary reduction of $768.33 as noted in the Objection.

19. **FTI's Fees and Expenses are Reasonable and Should be Allowed in their Entirety**.

    a. FTI's fees are reasonable based upon the services that FTI has provided to the Committee. Under a fixed fee structure, a professional firm should be afforded the flexibility to spend as much time as warranted on any relevant issue as requested by its client and which is within the scope of its retention, without concern that the Fee Examiner will propose a reduction based upon the incurrence of time that is alleged to be excessive.

    b. For all the reasons set forth above, FTI respectfully requests that the compensation and reimbursement requested in the Third Fee Application, as adjusted for the voluntary expense reduction describe above, be allowed, and that the Court grant such other and further relief as it deems just and proper.

Dated: October 22, 2010
       New York, New York

                                    By:  /s/ Michael Eisenband
                                    Michael Eisenband
                                    Senior Managing Director
                                    FTI Consulting, Inc.
                                    Three Times Square
                                    New York, NY 10036
                                    (212) 499-3647
                                    Financial Advisors to the Committee of
                                    Unsecured Creditors

6