# Exhibit C: UAW Motion to Strike

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,**

                  Plaintiff,

    v.

**GENERAL MOTORS LLC,**

                Defendant.

2:10-cv-11366-AC-MJH

**Honorable Avern Cohn**
**Magistrate Judge Michael Hluchaniuk**

---

## PLAINTIFF'S MOTION TO STRIKE "AFFIRMATIVE DEFENSE" OF LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") moves to strike the "affirmative defense" of lack of subject matter jurisdiction asserted by Defendant General Motors LLC ("GM") in its Answer (Dkt. 5). The grounds for this Motion to Strike are fully set forth in the accompanying Memorandum of Law.

Pursuant to Local Rule 7.1, undersigned counsel states that he had a telephone conference with counsel for GM in which he explained the nature of this Motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

Jeffrey D. Sodko (P65076)                    /s/ ANDREW D. ROTH
jsodko@uaw.net                               Andrew D. Roth (DC Bar 414038)
**Associate General Counsel,**               aroth@bredhoff.com
**International Union, UAW**                  Ramya Ravindran (DC Bar 980728)
8000 East Jefferson Avenue                   rravindran@bredhoff.com
Detroit, MI 48214                            **Bredhoff & Kaiser, PLLC**
(313) 926-5216                               805 Fifteenth Street, N.W., Suite 1000
                                             Washington, DC 20005
                                             (202) 842-2600

Dated:  October 21, 2010                     *Counsel for Plaintiff UAW*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Robert S. Walker
rswalker@jonesday.com
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

/s/ ANDREW D. ROTH
Andrew D. Roth (DC Bar 414038)
**Bredhoff & Kaiser, PLLC**
805 Fifteenth Street, N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
aroth@bredhoff.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,** | 2:10-cv-11366-AC-MJH |
| Plaintiff, | |
| v. | **Honorable Avern Cohn** |
| **GENERAL MOTORS LLC,** | **Magistrate Judge Michael Hluchaniuk** |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE UAW's MOTION TO STRIKE GM's "AFFIRMATIVE DEFENSE" OF LACK OF SUBJECT MATTER JURISDICTION

## STATEMENT OF ISSUE PRESENTED

Whether this Court should strike GM's "affirmative defense" of lack of subject matter jurisdiction and affirm that subject matter jurisdiction over this action lies under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

## MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

There is no case law authority on point, but the existence of this Court's jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the invalidity of GM's asserted "affirmative defense" of lack of subject matter jurisdiction is shown on the face of the relevant labor agreements and the corroborating facts set forth in the attached Declaration of Daniel Sherrick.

Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") submits this Memorandum of Law in support of its Motion to Strike the "affirmative defense" of lack of subject matter jurisdiction asserted by Defendant General Motors LLC ("GM") in its Answer to the UAW's Complaint. *See* Answer (Dkt. 5), ¶¶ 16, 29.

As set out below, this Court plainly has jurisdiction over this action for breach of a 2007 labor contract between the parties under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. And, contrary to GM's assertion, this action does **not** present any "dispute" of the kind that lies within the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York pursuant to a separate, 2009 labor contract between the parties. GM's asserted "affirmative defense" of lack of subject matter jurisdiction therefore is insufficient as a matter of law, and should be stricken by this Court under Federal Rule of Civil Procedure 12(f).

## INTRODUCTION AND SUMMARY OF ARGUMENT

UAW filed this action against GM in this Court on April 6, 2010.[1] The sole claim asserted by the UAW in its Complaint is that GM is in breach of a 2007 labor contract between the parties (and Delphi Corporation) under which GM is obligated to make a specified, $450 million payment to an entity known as the "DC VEBA." *See* Compl. (Dkt. 1), ¶¶ 8, 10-11, 14.

The "DC VEBA" – the Defined Contribution Voluntary Employees' Beneficiary Association – is a trust created in 2006 pursuant to a settlement agreement approved by the court in the class action lawsuit *Int'l Union, UAW v. General Motors Corp.*, Civil Action No. 05-

---

[1] The Court approved a stipulation between the parties extending the time for the UAW to serve the Complaint until October 4, 2010 (Dkt. 3). Service of the Complaint was accomplished on September 17, 2010 (Dkt. 4).

73991 (E.D. Mich.) – a lawsuit commonly referred to by the parties as *Henry I. See UAW v. General Motors Corp.*, 497 F.3d 615, 624 (6th Cir. 2007). The purpose of the DC VEBA was to help fund retiree health benefits, by providing dental coverage and mitigating the costs that GM retirees would have to bear going forward for retiree medical coverage. *See* Ex. 1, Declaration of Daniel Sherrick ("Sherrick Dec."), at ¶ 5.[2] As alleged in the Complaint, GM was obligated to make a $450 million payment to the DC VEBA when the conditions triggering that obligation were satisfied on October 6, 2009. Compl. (Dkt. 1), ¶ 10. GM's failure to make this $450 million payment to the DC VEBA in response to an October 29, 2009 demand letter from the UAW prompted this lawsuit to enforce and collect upon that payment obligation to the DC VEBA.

On October 8, 2010, GM filed its Answer to the Complaint (Dkt. 5). GM's Answer begins with a "Preliminary Statement" asserting that the instant lawsuit by the UAW presents a "dispute" that lies within the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York pursuant to the terms of a 2009 agreement between the parties approved by that Bankruptcy Court on July 5, 2009. *See* Answer (Dkt. 5), at 1-2. Consistent with this assertion, GM's Answer purports to state an "affirmative defense" of lack of subject matter jurisdiction over the UAW's Complaint. *Id.* at ¶¶ 16, 29. The UAW has now moved to strike this purported "affirmative defense" pursuant to Federal Rule of Civil Procedure 12(f).

Although motions to strike affirmative defenses generally are disfavored, *see Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953), "lack of subject matter jurisdiction" is not genuinely in the nature of an "affirmative defense" to a plaintiff's cause of action. *See* Fed. R. Civ. P. 8(c). Had GM the courage of its convictions regarding this

---

[2] The district court approved the *Henry I* settlement agreement, and that district court decision was affirmed by the Sixth Circuit in the published opinion cited in text.

Court's putative "lack of subject matter jurisdiction" over this action, GM presumably would have raised that jurisdictional issue in the normal course through a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Having decided for whatever strategic reasons to eschew such a Rule 12(b)(1) motion to dismiss, GM hardly can maintain that the UAW's Motion to Strike is an inappropriate procedural vehicle for raising and having this Court resolve the basic, threshold issue—drawn into question by GM's Answer—of whether this Court has subject matter jurisdiction over this action.

Furthermore, while courts ordinarily will not consider matters outside the pleadings in ruling on a motion to strike, that general rule has no application where, as here, the issue presented by the motion is one of subject matter jurisdiction. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.").

That being said, we note at the outset that almost all of the evidentiary materials relevant to the UAW's Motion to Strike are already part of the record that may properly be considered by this Court in ruling on the Motion, because those evidentiary materials are specifically referenced in the pleadings and are integral to the claims or defenses raised by the parties. *See Greenburg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (noting that even when ruling on a Rule 12(b)(6) motion, the court may consider documents referenced in the pleadings and integral to the claim where the authenticity of those documents is not in dispute). The 2007 labor contract setting forth GM's $450 million payment obligation to the DC VEBA is specifically referenced in the UAW's Complaint and is, of course, integral to the UAW's breach

of contract claim.  *See* Compl. (Dkt. 1), ¶¶ 6-10.  Likewise, the 2009 agreement that GM invokes

as the basis of its putative "affirmative defense" of lack of subject matter jurisdiction is

specifically referenced in GM's Answer and is integral to that asserted "affirmative defense."

*See* Answer (Dkt. 5), at 1-2.  Nevertheless, to buttress and confirm the conclusion readily

apparent on the face of these 2007 and 2009 labor agreements that this Court **does** have subject

matter jurisdiction over this action, this Motion is accompanied by the Declaration of Daniel

Sherrick making a few additional factual points that bear on this jurisdictional issue, as is

perfectly appropriate under the well-established case law cited above.

      As we develop below, GM's contention that this Court lacks subject matter jurisdiction

over this action is wholly lacking in merit.  This lawsuit is a garden-variety,

breach-of-a-labor-contract action brought by the UAW to resolve a dispute between the UAW

and GM over the proper interpretation and application of a 2007 labor agreement between the

parties (and Delphi Corporation) – *i.e.*, a dispute over whether, under the terms of that 2007 labor

agreement, the conditions necessary to trigger GM's $450 million payment obligation to the DC

VEBA have been satisfied, such that GM's failure to make that payment to the DC VEBA

constitutes a breach of the 2007 agreement.  This contract dispute between the UAW and GM

falls squarely within this Court's subject matter jurisdiction under Section 301 of the LMRA,

which confers jurisdiction on the district courts over suits for "violation of contracts between an

employer and a labor organization."  29 U.S.C. § 185.

      At the same time, GM's reliance on the provisions of a subsequent, 2009 agreement

between the parties is entirely misplaced.  That 2009 agreement sets forth and limits GM's

payment obligations to a different retiree health benefit fund altogether – the so-called "New

VEBA" – and says nothing at all about the existence *vel non* of the previously-negotiated $450

million payment obligation to **the DC VEBA** that the UAW seeks to enforce and collect upon in this lawsuit. That being so, it is plain that, contrary to GM's assertion, *see* Answer (Dkt. 5), at 2, this LMRA § 301 action does **not** present any "dispute" regarding "the enforcement, implementation, application or interpretation" of the 2009 agreement that lies within the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York under the terms of that 2009 agreement.

## FACTUAL BACKGROUND

### A.    The 2007 MOU

The UAW is a labor organization that represents the employees of various employers in collective bargaining, including GM employees. Compl. (Dkt. 1), ¶ 4. On June 22, 2007, the UAW, GM's predecessor corporation (General Motors Corporation, or "Old GM"), and Delphi Corporation ("Delphi") entered into a tripartite Memorandum of Understanding ("2007 MOU") to resolve a number of outstanding labor issues that had arisen during the course of Delphi's then-ongoing bankruptcy proceedings. *Id.* at ¶ 6. In addition to establishing lower wage and benefit rates for UAW-represented Delphi employees and granting Delphi additional flexibility to close or sell many UAW-represented facilities, the 2007 MOU allowed Delphi to terminate its obligation to provide retiree medical benefits and to freeze its pension plan. *See* Ex. 1, Sherrick Dec., at ¶ 7. Those actions would trigger the "GM-UAW Benefit Guarantee," which had been negotiated by the UAW in 1999 and provided for Old GM to take over Delphi's obligations regarding retiree health care, and would result in many new participants in the DC VEBA that had been established in 2006 pursuant to the *Henry I* settlement. *Id.* at ¶¶ 4-7.

Thus, in Section J of the 2007 MOU, the parties agreed to several provisions "in partial consideration for the UAW entering into this Agreement and in consideration for the releases to

be provided" in that Agreement, including that Old GM would make a payment of $450 million

"to be paid directly to the DC VEBA." Sherrick Dec. Ex. A, 2007 MOU, at § J. This payment

was specifically for the purpose of settling a claim by the UAW "in the amount of $450 million

as a result of the modifications encompassed by this Agreement and various other UAW

agreements during the course of Delphi's bankruptcy." Compl. (Dkt. 1), ¶ 8 (quoting Section J.2

of 2007 MOU).

    Pursuant to the terms of the 2007 MOU, this $450 million payment obligation to the DC

VEBA would be triggered upon the occurrence of the following events:

> (a) execution by Delphi and GM of a comprehensive settlement agreement
> resolving the financial, commercial, and other matters between them; and
>
> (b) the substantial consummation of a plan of reorganization proposed by Delphi
> in its Chapter 11 cases and confirmed by the Bankruptcy Court which
> incorporates, approves and is consistent with all of the terms of this Agreement
> and the comprehensive settlement agreement between Delphi and GM.

*Id.* at ¶ 9 (quoting Section K.2 of 2007 MOU).

    The 2007 MOU was approved by the bankruptcy court presiding over the Delphi

bankruptcy on July 19, 2007. *Id.* at ¶ 6.

### B.    The 2008 Settlement Agreement

    On February 21, 2008, the UAW and Old GM entered into a settlement agreement to

resolve the class action lawsuit *Int'l Union, UAW, et. al. v. General Motors Corp.*, Civil Action

No. 07-14074 (E.D. Mich.) ("2008 Settlement Agreement") – a lawsuit commonly referred to by

the parties as *Henry II*. The *Henry II* court approved the 2008 Settlement Agreement on July 31,

2008. *See* Ex. 1, Sherrick Dec., at ¶ 8.

    Pursuant to the terms of the 2008 Settlement Agreement, a new VEBA – aptly named

"New VEBA" – was created. Sherrick Dec. Ex. B, 2008 Settlement Agreement, at § 1 (defining

"New VEBA").  The 2008 Settlement Agreement eliminated GM's obligation to provide retiree medical insurance benefits with respect to claims incurred on or after January 1, 2010, when the New VEBA would go into effect and begin providing those benefits.  Ex. 1, Sherrick Dec., at ¶ 8 & Ex. B at § 2.

The 2008 Settlement Agreement set forth the full extent of GM's payment obligations to the New VEBA, and thus barred the imposition of any "additional" payment obligations to that New VEBA.  Sherrick Dec. Ex. B, 2008 Settlement Agreement, at §§ 2, 5.B, 8, 14.  In addition, fifteen days after the New VEBA became operational (*i.e.*, on January 16, 2010), the DC VEBA – referred to as the "Existing External VEBA" in the 2008 Settlement Agreement – would transfer all of its assets and liabilities to the New VEBA, and would then be terminated.  *Id.* at § 12.C.  But although the 2008 Settlement Agreement took cognizance of the DC VEBA in this respect (and other respects not relevant here), it was completely silent on the issue of the $450 million payment obligation to the DC VEBA set forth in the 2007 MOU:  it did **not** purport to modify or extinguish that payment obligation to the DC VEBA, or otherwise deal with that payment obligation to the DC VEBA in **any** way.

## C.    The 2009 Settlement Agreement

In June 2009, Old GM filed for bankruptcy, and from that bankruptcy emerged a new operating company, Defendant GM.  Compl. (Dkt. 1), ¶ 7.  Pursuant to a sales agreement approved by the bankruptcy court in the Old GM bankruptcy proceedings, GM assumed the obligations of Old GM with respect to its labor contracts with the UAW, including the obligations in the 2007 MOU.  *Id.*

On July 10, 2009, UAW and GM entered into another settlement agreement ("2009 Settlement Agreement") that superseded the 2008 Settlement Agreement and modified some of

9

its terms in order to resolve certain outstanding issues that had arisen during the Old GM

bankruptcy.  *See* Sherrick Dec. Ex. C, 2009 Settlement Agreement.

Like the 2008 Settlement Agreement, the 2009 Settlement Agreement dealt

"comprehensively and definitively," *see* Answer (Dkt. 5), at 1, with the issue of GM's payment

obligations to **the New VEBA**.  *See* Sherrick Dec. Ex. C, at §§ 2, 5.B, 8, 14.  And, like the 2008

Settlement Agreement, the 2009 Settlement Agreement provided that the New VEBA would

become operational on January 1, 2010, and that fifteen days later (*i.e.*, on January 16, 2010), the

DC VEBA – again referred to as the "Existing External VEBA" in the agreement – would

transfer all assets and liabilities into the New VEBA and would terminate at that point.  *Id.* at § 1

(defining "Implementation Date"), §§ 2, 12.C.

Moreover, like the 2008 Settlement Agreement, the 2009 Settlement Agreement is

completely silent on the issue of the $450 million payment obligation to the DC VEBA set forth

in the 2007 MOU:  it does **not** purport to modify or extinguish that payment obligation to the DC

VEBA, or otherwise deal with that payment obligation to the DC VEBA in **any** way.

The 2009 Settlement Agreement was approved by the bankruptcy court presiding over

the Old GM bankruptcy on July 5, 2009.  *See* Ex. 1, Sherrick Dec., at ¶ 12.  And, section 26.B of

the 2009 Settlement Agreement provides that the GM bankruptcy court shall retain exclusive

jurisdiction "to resolve disputes arising out of or relating to the enforcement, implementation,

application or interpretation of this Settlement Agreement."  Sherrick Dec. Ex. C, 2009

Settlement Agreement, at § 26.B.

### D.    Satisfaction of the Conditions Precedent to GM's $450 Million Payment Obligation to the DC VEBA

On July 30, 2009, the bankruptcy court in the Delphi bankruptcy entered an order

confirming a plan of reorganization for Delphi, and on October 6, 2009, the bankruptcy court

issued another order finding that the Delphi plan of reorganization "was substantially consummated." Compl. (Dkt. 1), ¶ 10. That plan of reorganization incorporated, approved, and was consistent with (1) all the terms of the 2007 MOU; and (2) a comprehensive settlement agreement previously entered into by Delphi and Old GM in September 2008 that resolved the financial, commercial, and other matters between them. *Id.* Accordingly, the conditions set forth in Section K.2 of the 2007 MOU were satisfied as of October 6, 2009, and GM's contractual obligation under the 2007 MOU to make the $450 million payment to the DC VEBA became effective as of that date. *Id.*

By letter dated October 29, 2009, UAW made a written demand to GM to honor this contractual obligation and make the required payment to the DC VEBA. *Id.* at ¶ 11. By letter dated November 11, 2009, GM refused to do so, *id.*, and that payment obligation to the DC VEBA thus remains outstanding.

## ARGUMENT

Federal Rule of Civil Procedure 12(f) is the procedural mechanism by which a party may move to strike an affirmative defense. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). An affirmative defense may be stricken when it is "insufficient as a matter of law." *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 689 (N.D. Ohio 2010). A defense is insufficient when "it is impossible for a defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint." *United States v. Quadrini*, No. CIV. 07-13227, 2008 WL 1743348, at *2 (E.D. Mich. Apr. 11, 2008) (attached as Exhibit 2); *see also Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003) (to be sufficient, an affirmative defense "must withstand a Rule 12(b)(6) challenge").

For the reasons set forth below, GM's "affirmative defense" of lack of subject matter jurisdiction is insufficient as a matter of law and should thus be stricken.  And, for those same reasons, this Court should affirm that it **does** have subject matter jurisdiction over this action.

A.    **It Is Clear That This Court Has LMRA § 301 Jurisdiction Over This Action, and the Nature of the Contract Dispute Lying Within This Court's Jurisdiction Is Equally Clear.**

The sole claim contained in UAW's Complaint is for breach of the 2007 MOU based on GM's failure to make the required $450 million payment to the DC VEBA.  Section 301(a) of the LMRA provides a federal forum for suits for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  On its face, the 2007 MOU is a "contract[ ] between an employer and a labor organization representing employees in an industry affecting commerce."   This lawsuit for breach of the 2007 MOU thus arises under LMRA § 301(a), and, in turn, falls within this Court's original jurisdiction under 28 U.S.C. § 1331.  *See, e.g., Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451-52, 457 (1957) ("Plainly, [LMRA § 301(a)] supplies the basis upon which the federal district courts may take jurisdiction [over actions for breach of a labor contract]. . . .  A case or controversy arising under § 301(a) is, therefore, one within the purview of judicial power as defined in Article III"); *Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 672 (6th Cir. 2002) ("Section 301(a) of the Labor Management Relations Act vests federal courts with jurisdiction to examine alleged violations of contracts between certain employers and labor organizations."); *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (6th Cir. 1991) ("The LMRA § 301(a), 29 U.S.C. § 185(a), extends the jurisdiction of the federal courts to cases involving alleged breaches of collective bargaining agreements.").

In short, it is abundantly clear on the face of the UAW's Complaint and the 2007 MOU

that the UAW has properly invoked this Court's LMRA § 301 jurisdiction.

The nature of the contract dispute lying within this Court's LMRA § 301 jurisdiction is

equally clear.  The UAW's Complaint alleges that the 2007 MOU provides for a $450 million

payment to the DC VEBA upon the occurrence of certain conditions specified in Section K.2 of

the 2007 MOU, and that those specified conditions were fully satisfied as of October 6, 2009.

*See* Compl. (Dkt. 1), ¶¶ 8-10.  GM has denied these allegations.  *See* Answer (Dkt. 5), ¶¶ 8-10.

Accordingly, the dispute before this Court is over what the conditions specified in Section K.2 of

the 2007 MOU entail and whether those conditions were in fact fully satisfied as of October 6,

2009.  This dispute over the proper interpretation and application of the 2007 MOU is grist for

the judicial mill under LMRA § 301, as the above-cited cases illustrate.

> **B.**      **GM's Effort to Defeat This Court's LMRA § 301 Jurisdiction By Invoking
> the 2009 Settlement Agreement Between the Parties Fails Utterly**

In the face of the foregoing, GM has asserted in its Answer, as an "affirmative defense,"

that this Court lacks subject matter jurisdiction over the UAW's claim to enforce and collect

upon the $450 million payment obligation to the DC VEBA arising under the 2007 MOU.  *See*

Answer (Dkt. 5), ¶¶ 16, 29.  The basis for this putative "affirmative defense" of lack of subject

matter jurisdiction is set forth in a "Preliminary Statement" at the very outset of GM's Answer.

*Id.* at 1-2.

In that "Preliminary Statement," GM begins by describing the UAW's Complaint herein

as follows:  "[P]laintiff's Complaint purports to seek damages from General Motors for an

alleged payment obligation to **the** Voluntary Employees' Beneficiary Association ("VEBA")

pursuant to the terms of [the 2007 MOU]."  *Id.* at 1 (emphasis added).  And, based on this

characterization of the UAW's Complaint, GM proceeds to argue that the instant contract dispute

between the parties over that payment obligation lies within the jurisdiction of the GM

bankruptcy court rather than this Court because:  (i) GM's "sole obligations to **the** VEBA . . .

were comprehensively and definitively set forth in [the 2009 Settlement Agreement approved by

the GM bankruptcy court]"; (ii) that 2009 Settlement Agreement "bars the [UAW's] pursuit of

any claim for additional contributions to **the** VEBA"; and (iii) the GM bankruptcy court "has

exclusive jurisdiction over any dispute – including this one – regarding General Motors'

obligations to **the** VEBA."  *Id.* at 1-2 (emphasis added).

    With all due respect to GM, this line of argument in derogation of this Court's LMRA §

301 jurisdiction over the instant contract dispute is wholly fallacious.  As a threshold matter,

GM's argument rests on a characterization of the UAW's Complaint as seeking to enforce a

"payment obligation to **the** VEBA" that glosses over entirely the critical distinction between **the**

**DC VEBA** created in 2006 under the *Henry I* settlement, *see supra* pp. 3-4, and **the New VEBA**

subsequently created in 2008 under the *Henry II* settlement, *see supra* pp. 8-9.  This distinction

is a critical one because, as set out in the margin, the UAW's Complaint, on its face, seeks to

enforce a GM "payment obligation to" **the DC VEBA** as opposed to a GM "payment obligation

to" **the New VEBA**.[3]

    Against this background, GM's invocation of the 2009 Settlement Agreement in support

of its jurisdictional argument is a particularly ripe red herring.  On its face, that 2009 Settlement

---

[3] *See* Compl. (Dkt. 1), ¶ 10 ("Accordingly, pursuant to Section K.2 of the MOU, the Company's
contractual obligation to make the payment to the DC VEBA specified in Section J.2 of the
MOU became 'effective' *on October 6, 2009*") (emphasis in original); *id.* at ¶ 11 ("By letter
dated October 29, 2009, the UAW made a written demand that the Company honor its
contractual obligation to make the foregoing payment to the DC VEBA as required by the terms
of the MOU."); *id.* at ¶ 14 ("The Company's failure and refusal to make the payment to the DC
VEBA specified in Section J.2 of the MOU—as demanded by the UAW in its October 29, 2009
letter—constitutes a breach of the MOU that is remediable in this action brought under LMRA §
301, 29 U.S.C. § 185."); Prayer for Relief, *id.* at p.5 (seeking to compel GM "to make the
payment to the DC VEBA specified in Section J.2 of the MOU").

Agreement deals "comprehensively and definitively" with GM's "payment obligations to" **the New VEBA** and bars the UAW from seeking to impose on GM any additional "payment obligation to" **the New VEBA.** *See* Sherrick Dec. Ex. C, 2009 Settlement Agreement, at §§ 2, 5.B, 8, 14. But inasmuch as the UAW does **not** seek in this lawsuit to enforce any GM "payment obligation to" **the New VEBA** or to impose on GM any additional "payment obligation to" **the New VEBA –** but rather seeks **only** to enforce a GM "payment obligation to" **the DC VEBA** arising under the 2007 MOU – the 2009 Settlement Agreement simply does not come into play in this litigation at all.

Indeed, the most telling (and indisputable) fact in this regard is that the 2009 Settlement Agreement – like the 2008 Settlement Agreement that preceded it – does not say a word one way or the other regarding the existence *vel non* of GM's $450 million payment obligation to the DC VEBA arising under the 2007 MOU. *See* Sherrick Dec. Ex. C, 2009 Settlement Agreement; *supra* p. 10. That being so, there plainly is nothing to GM's assertion that this lawsuit to enforce that payment obligation to the DC VEBA under the 2007 MOU presents a "dispute" regarding "the enforcement, implementation, application or interpretation" of the 2009 Settlement Agreement that lies within the exclusive jurisdiction of the GM bankruptcy court. *See* Answer (Dkt. 5), at 2. Rather, as we have shown, the "dispute" between the parties in this case pertains solely to "the enforcement, implementation, application or interpretation" of the 2007 MOU and, in particular, the provisions of that 2007 MOU dealing specifically with GM's $450 million payment obligation to the DC VEBA.

To be sure, on January 16, 2010, several months *after* GM's $450 million payment obligation to the DC VEBA at issue in this litigation was triggered, the assets and liabilities of the DC VEBA were transferred to the New VEBA in accordance with section 12.C of the 2009

15

Case 2:10-cv-11369-AC-MJH    Document 15    Filed 10/21/10    Page 20 of 25

Settlement Agreement, and the DC VEBA was terminated.  *See* Ex. 1, Sherrick Dec. ¶ 18 & Ex.

C at § 12.C.   Thus, as a practical matter, should the UAW prevail on the merits of its breach of

contract claim in this litigation, the $450 million payment that GM will be required to make in

satisfaction of its payment obligation to the DC VEBA under the 2007 MOU will flow into the

coffers of the New VEBA.  But that fact cannot somehow transform this perfectly-proper LMRA

§ 301 action to enforce GM's $450 million payment obligation to the DC VEBA under the 2007

MOU into an improper action to enforce a payment obligation to the New VEBA in derogation

of the 2009 Settlement Agreement.  To the contrary, that fact simply reflects the reality that one

of the assets transferred from the DC VEBA to the New VEBA on January 16, 2010 was GM's

then-outstanding $450 million indebtedness to the DC VEBA under the 2007 MOU—an

indebtedness that, as we have shown, the 2009 Settlement Agreement does not address in any

way.

        In any event, under the terms of the 2007 MOU, GM's $450 million payment obligation

to the DC VEBA ripened ***on October 6, 2009***, and the UAW made a timely, written demand that

GM make that contractually-required payment to the DC VEBA ***on October 29, 2009***—a

demand which GM promptly rejected in breach of its contractual payment obligation to the DC

VEBA.  *See* Compl. (Dkt. 1), ¶¶ 10-11.  Had GM honored its contractual payment obligation to

the DC VEBA upon the UAW's timely demand, then the $450 million payment at issue would

have gone into the DC VEBA, which still existed as of that date.  *See* Ex. 1, Sherrick Dec., at ¶

17.  GM cannot profit by its own contractual breach by now attempting to recast its $450 million

payment obligation to the DC VEBA under the 2007 MOU as a payment obligation to the New

VEBA that does not survive the 2009 Settlement Agreement.

                                *        *        *

                                        16

Case 2:10-cv-11366-AC-MJH    Document 15    Filed 10/21/10    Page 21 of 25

The short of the matter is this:  It is abundantly clear on the face of the 2007 MOU and

the 2009 Settlement Agreement that the instant lawsuit to enforce GM's $450 million payment

obligation to the DC VEBA under the 2007 MOU presents a "dispute" relating to the proper

interpretation and application of the 2007 MOU that falls squarely within this Court's LMRA §

301 jurisdiction, and does ***not***, as GM contends, present any "dispute" relating to the proper

interpretation and application of the 2009 Settlement Agreement that lies within the GM

bankruptcy court's exclusive jurisdiction.  We would be remiss, however, if we did not conclude

our submission by setting out the record evidence outside the four corners of those two labor

agreements that further belies GM's contention on this jurisdictional issue.

As previously noted, *supra* at p. 10, the 2009 Settlement Agreement was modeled closely

on the parties' 2008 Settlement Agreement resolving the *Henry II* litigation, and the two

agreements are intentionally identical in many respects – **including** in respect to the

"comprehensive[ ]" provisions in the 2009 Settlement Agreement pertaining to GM's "payment

obligations to" the New VEBA that GM now contends, as the predicate for its jurisdictional

defense, "definitively" speak to and resolve the UAW's breach of contract claim in this case to

the point of extinguishing that claim altogether.  *Compare* Sherrick Dec. Ex. B, 2008 Settlement

Agreement, at §§ 2, 5.B, 8, 14 *with* Sherrick Dec. Ex. C, 2009 Settlement Agreement, at §§ 2,

5.B, 8, 14.[4]  Yet GM's own actions in the aftermath of the 2008 Settlement Agreement show that

---

[4] The parties structured the 2009 Settlement Agreement to track the 2008 Settlement Agreement
as closely as possible while only making the necessary modifications to the terms of the 2008
Settlement Agreement.  *See* Ex. 1, Sherrick Dec., at ¶ 11.  Indeed, in order to keep the
agreements as identical as possible, if an entire section of the 2008 Settlement Agreement had
become moot or was no longer applicable, the parties simply listed that section as "reserved" in
the 2009 Settlement Agreement rather than deleting the section so that even the paragraph
numbering could remain the same.  *Id.*

GM itself does not believe that these "comprehensive[ ]" provisions in both the 2008 and 2009
Settlement Agreements had the dramatic effect that GM now argues they did.

In April 2010, for example, GM filed a 10-Q with the Securities and Exchange
Commission ("SEC") in which GM acknowledged that its contingent $450 million payment
obligation to the DC VEBA under the 2007 MOU remained extant and was unaffected by the
terms of the 2008 Settlement Agreement. Specifically in this regard, GM stated in its 10-Q filing
that "[a]s a result of the 2008 UAW Settlement Agreement becoming effective in September
2008, Old GM remeasured the obligations and plan assets of its UAW hourly retiree medical
plan and Mitigation Plan using updated assumptions in September 2008," and that those
remeasured obligations and plan assets "included," among other things, "a $450 million payment
to the New VEBA which was contingent upon substantial consummation of a plan of
reorganization (POR) by Delphi Corporation (Delphi)."[5] *See* Ex. 3, General Motors Company
Form 10-Q (April 7, 2010), at 52.[6]

GM does not attempt to explain in its "Preliminary Statement," and cannot possibly
explain, how the "comprehensive[ ]" provisions in the 2009 Settlement Agreement pertaining to
GM's "payments obligations to" the New VEBA had the effect of barring or extinguishing the
UAW's claim in this lawsuit for enforcement of GM's $450 million payment obligation to the
DC VEBA under the 2007 MOU when, by GM's own admission to the SEC, the identically-
worded provisions in the 2008 Settlement Agreement did **not** have that effect.

---

[5] While GM's 10-Q filing speaks in terms of a "$450 million payment to the New VEBA," GM's
use of that terminology is unsurprising in light of the fact that by the date of its 10-Q filing the
transfer of assets from the DC VEBA to the New VEBA had been accomplished and the DC
VEBA had been terminated, such that as a practical matter the $450 million payment would
indeed flow into the coffers of the New VEBA rather than the DC VEBA. *See supra* pp. 16-17.

[6] For the Court's convenience, the relevant excerpt from GM's April 2010 10-Q is attached as
Exhibit 3. The complete document is publicly available on GM's website at:
http://www.gm.com/corporate/investor_information/sec/.

Along the same lines, GM and the UAW engaged in a series of discussions and negotiations in the immediate aftermath of the 2008 Settlement Agreement pertaining to GM's then-contingent $450 million payment obligation to the DC VEBA under the 2007 MOU. These discussions and negotiations between the parties, which are detailed in the accompanying Declaration of Daniel Sherrick, focused on the issue of whether the $450 million payment obligation to the DC VEBA should remain contingent on Delphi's emergence from bankruptcy, as set forth in Section K.2 of the 2007 MOU, or whether that condition should be removed and the money paid immediately by GM. *See* Ex. 1, Sherrick Dec., at ¶¶ 13-16. Obviously, it would have been pointless for GM to have engaged in such discussions and negotiations with the UAW regarding removal of the contingency had GM been of the view that its $450 million payment obligation to the DC VEBA under the 2007 MOU had already been wiped off the books altogether by the "comprehensive[ ]" provisions in the 2008 Settlement Agreement relating to GM's "payment obligations to" the New VEBA. For GM to take that position now in this lawsuit based on the identically-worded provisions in the 2009 Settlement Agreement smacks of revisionist history.

It is equally noteworthy that in the negotiations between GM and the UAW leading up to the 2008 Settlement Agreement, the funding for the New VEBA was calculated and re-calculated literally dozens of times, with GM's and the UAW's actuaries sharing these calculations at every step. *Id.* at ¶ 9. In all of these calculations, GM's $450 million payment obligation to the DC VEBA under the 2007 MOU was included as a funding source. *Id.* In other words, for purposes of determining funding levels for the New VEBA, the parties had a clear mutual expectation that this $450 million would in fact be paid to the DC VEBA when the conditions stated in the 2007 MOU were satisfied, and would then be transferred to the New VEBA in accordance with

19

Section 12.C of the 2008 Settlement Agreement. *Id.* This additional item of negotiating history evidence is yet further corroboration of the point that the "comprehensive" provisions of the 2008 Settlement Agreement pertaining to GM's "payment obligations to" the New VEBA – incorporated *in haec verba* in the 2009 Settlement Agreement – were **not** intended by the parties to extinguish GM's $450 million payment obligation to the DC VEBA under the 2007 MOU.

## CONCLUSION

For the foregoing reasons, this Court should strike GM's "affirmative defense" of lack of subject matter jurisdiction and affirm its LMRA § 301 jurisdiction over this action.

Respectfully submitted,

Jeffrey D. Sodko (P65076)
jsodko@uaw.net
**Associate General Counsel,**
**International Union, UAW**
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

/s/ ANDREW D. ROTH
Andrew D. Roth (DC Bar 414038)
aroth@bredhoff.com
Ramya Ravindran (DC Bar 980728)
rravindran@bredhoff.com
**Bredhoff & Kaiser, PLLC**
805 Fifteenth Street, N.W., Suite 1000
Washington, DC 20005
(202) 842-2600

Dated: October 21, 2010

*Counsel for Plaintiff UAW*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2010, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system which will send notification of such filing to the
following:

      Robert S. Walker
      rswalker@jonesday.com
      Jones Day
      North Point
      901 Lakeside Avenue
      Cleveland, Ohio 44114

                        /s/ ANDREW D. ROTH
                        Andrew D. Roth (DC Bar 414038)
                        **Bredhoff & Kaiser, PLLC**
                        805 Fifteenth Street, N.W., Suite 1000
                        Washington, DC 20005
                        (202) 842-2600
                        aroth@bredhoff.com