**Hearing Date And Time: November 9, 2010 at 9:45 a.m. (prevailing Eastern time)**
**Objection Deadline: November 2, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
John Wm. Butler, Jr.
(admitted *pro hac vice*)
Albert L. Hogan III
(not yet admitted *pro hac vice*)
Ron E. Meisler
(not yet admitted *pro hac vice*)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for DPH Holdings Corp., et al.,

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                          :    Chapter 11
                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,          :    Case No. 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*, :
                                               :    (Jointly Administered)
                                               :
                         Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DPH HOLDINGS CORP. (F/K/A DELPHI CORPORATION) AND ITS
AFFILIATED REORGANIZED DEBTORS' LIMITED OBJECTION IN
RESPONSE TO MOTION OF GENERAL MOTORS LLC (F/K/A GENERAL
<u>MOTORS COMPANY) TO ENFORCE SALE ORDER</u>

TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

Argument ......................................................................................................................................5

      A.      This Court And The Delphi Bankruptcy Court Should Interpret Their Own
             Respective Orders .................................................................................................5

      B.      New GM's Position Vis-A-Vis The 2007 Delphi Restructuring MOU
             Violates The Delphi Plan Injunction ....................................................................7

TABLE OF AUTHORITIES

**CASES**                                                                                                     **Page**

Back v. AM Ge. Corp. (In re Chateaugay Corp.),
    213 B.R. 633 (S.D.N.Y 1997) ........................................................................................ 6

Baker v. Simpson,
    613 F.3d 346, 352 (2d Cir. 2010) .................................................................................. 6

In re Chief Exec. Officers Clubs, Inc.,
    359 B.R. 527 (Bankr. S.D.N.Y. 2007) ........................................................................... 6

In re Continental Airlines, Inc.,
    236 B.R. 318 (Bankr. D. Del. 1999) , aff'd, 2000 WL 1425751 (D.Del. Sep. 12,
    2000), aff'd, 279 F.3d 226 (3rd Cir. 2002) .................................................................... 6

In re Texaco, Inc.,
    182 B.R. 937 (Bankr. S.D.N.Y. 195) ............................................................................. 6

Travelers Indem. Co. v. Bailey,
    129 S. Ct. 2195 (2009) ................................................................................................... 6

DPH Holdings Corp. (f/k/a Delphi Corporation) and its affiliated reorganized debtors (collectively referred to herein as "**DPH Holdings**") hereby submit this Limited Objection In Response To Motion Of General Motors LLC (f/k/a General Motors Company) To Enforce Sale Order (the "**Limited Objection**"), and respectfully represent as follows:

Preliminary Statement

1. On October 22, 2010, General Motors LLC f/k/a General Motors Company ("**New GM**") filed its Motion Of General Motors LLC (f/k/a General Motors Company) To Enforce Sale Order (Docket No. 7527) (the "**Motion**"). The purpose of the Motion is to stop the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "**UAW**") from asserting a $450 million payment demand against New GM, which the UAW asserts flows from an agreement dated June 22, 2007 reached in the Delphi Corporation ("**Delphi**") chapter 11 case (the "**2007 Delphi Restructuring MOU**"). The Motion, in the first instance, asks this court to interpret its own Sale Order and the related agreements approved by such Sale Order,[1] and in particular asserts that the Sale Order fully precludes the UAW's VEBA payment demand. As a secondary argument, New GM asks, in the alternative, that this Court interpret the order entered by the Delphi Bankruptcy Court (as defined below) approving the 2007 Delphi Restructuring MOU. The 2007 Delphi Restructuring MOU was approved by the bankruptcy court presiding over Delphi and certain of its subsidiaries and affiliates (collectively, the "**Delphi Debtors**") chapter 11 cases (the "**Delphi Bankruptcy Court**").[2] This secondary argument is inconsistent with New GM's position that a Bankruptcy

---

[1] Order (I) Authorizing Sale Of Assets Pursuant To Amended And Restated Master Purchase Agreement With NGMCO, Inc., A U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (III) Granting Related Relief, entered on July 5, 2009 (Docket No. 2968) (the "**Sale Order**").

[2] See Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving Memorandum Of Understanding Among UAW, Delphi, And General Motors Corporation Including Modification

Court Judge should interpret his or her own order, and is contrary to the exclusive jurisdiction provision in Delphi's First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "**Modified Plan**") and order approving same (Case No. 05-44481 (RDD), Docket No. 18707) (the "**Modification Approval Order**").[3] Accordingly, to the extent than an interpretation of the 2007 Delphi Restructuring MOU or any order entered by the Delphi Bankruptcy Court is necessary, this Court should refrain from ruling on that question and require New GM to seek redress on that issue with the Delphi Bankruptcy Court.

        2.       The Motion asserts that in connection with the entry of the Sale Order, New GM entered into a settlement agreement (the "**UAW Retiree Settlement Agreement**") with the UAW whereby a new Voluntary Employees' Beneficiary Association trust was established (the "**New VEBA**"). The Motion also explains that under the UAW Retiree Settlement Agreement, New GM was required to contribute to the New VEBA more than $10 billion as well as equity in New GM. Pursuant to the terms of the UAW Retiree Settlement Agreement, New GM's obligations to the New VEBA are "fixed and capped" such that no additional amounts (other than as expressly set forth in the UAW Retiree Settlement Agreement) are owed to the New VEBA. As explained in the Motion, the UAW believes that New GM is

---

Of UAW Collective Bargaining Agreements And Retiree Welfare Benefits For Certain UAW-Represented Retirees (Case No. 05-44481 (RDD), Docket No. 8693) (the "**2007 Delphi MOU Order**"), a copy of which is attached hereto as <u>Exhibit A</u>. The Delphi Bankruptcy Court entered the 2007 Delphi MOU Order as a negotiated settlement between Delphi, General Motors Corporation and the UAW of the Delphi Debtors' motion under 11 U.S.C. § 1113(c) and § 1114(g) to reject their UAW collective bargaining agreements and to modify certain retiree welfare benefits, which motion was originally filed on March 31, 2006.

[3] Copies of the Modified Plan (without exhibits) and the Modification Approval Order (without exhibits) are attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively. On January 25, 2008, the Delphi Bankruptcy Court entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified. This plan of reorganization was not substantially consummated and on June 1, 2009, the Delphi Debtors filed a motion seeking approval of certain modifications to the confirmed plan of reorganization. Ultimately, on July 30, 2009, the Delphi Bankruptcy Court entered the Modification Approval Order approving the Modified Plan.

obligated to pay to the New VEBA an additional $450 million on account of liability owed pursuant to section J.2 of the 2007 Delphi Restructuring MOU, and accordingly, the UAW filed a complaint in the Michigan District Court demanding such payment.

3. New GM has two basic responses to the UAW's demand. First, New GM is not obligated to pay the $450 million to the New VEBA because such obligation was extinguished under the UAW Retiree Settlement Agreement. On a similar note, New GM also argues that the Sale Order contains injunctions that enjoin the UAW from pursuing its complaint in the Michigan District Court. Second, the conditions precedent that trigger the $450 million payment under the 2007 Delphi Restructuring MOU have not been satisfied, and therefore the liability was never created.

4. If this Court does not need to rule on the 2007 Delphi Restructuring MOU to resolve this matter, then this Limited Objection would be moot. Neither Delphi nor DPH Holdings were a party to the UAW Retiree Settlement Agreement and this Court retains exclusive jurisdiction to interpret its own order approving the UAW Retiree Settlement Agreement and to interpret the agreement itself. (Motion ¶ 52) (citing section 26 of the UAW Retiree Settlement Agreement).[4]

5. If, however, this Court finds that interpreting the 2007 Delphi Restructuring MOU is necessary, then this Court should refrain from ruling on that discrete question and abide by the exclusive jurisdiction provision in the Modified Plan, thereby facilitating the Delphi Bankruptcy Court to interpret its own order.

---

[4] Section 26.B of the UAW Retiree Settlement Agreement provides: "Although the Bankruptcy Court retains exclusive jurisdiction to resolve disputes arising out of or relating to the enforcement, implementation, application or interpretation of this Settlement Agreement, the parties agree that prior to seeking recourse to the Bankruptcy Court, the parties shall attempt to resolve the dispute through [a specified dispute resolution process]."

3

6. Moreover, New GM's position regarding the 2007 Delphi Restructuring MOU could have a prejudicial impact on the Delphi Debtors, DPH Holdings, and their stakeholders and may be a violation of the Delphi plan injunction, which is another reason that this issue should rightfully be in front of the Delphi Bankruptcy Court. Specifically, Delphi's Modified Plan incorporates the 2007 Delphi Restructuring MOU into the Modified Plan. If New GM, the UAW, or any other party seeks to interpret Delphi's Modified Plan, or an agreement that is incorporated into the Modified Pan, in a manner that is prejudicial to a party that is covered by the releases, exculpation and injunction included in the Modified Plan, then the dispute is enjoined by the Delphi plan injunction and such party must first seek leave from the Delphi Bankruptcy Court to lift the Delphi plan injunction. Absent relief from the Delphi Bankruptcy Court, such prejudicial interpretation could be a collateral attack on the Modified Plan.

7. Finally, DPH Holdings disagrees with many of the characterizations set forth in the Motion as they relate to the Delphi chapter 11 case. This is one of many assertions regarding the Delphi chapter 11 that is factually inaccurate. While DPH Holdings reserve its right to dispute each and every mischaracterization regarding the Delphi chapter 11 case, doing so in this pleading is unnecessary. The point is that the Delphi Bankruptcy Court is most familiar with the historical facts that took place during Delphi's chapter 11 cases and is most familiar with the orders it entered. Therefore, above and beyond the fact that the Delphi Bankruptcy Court has exclusive jurisdiction, from an equitable perspective and to facilitate justice, the Delphi Bankruptcy Court is the right court to determine issues relating to orders it entered and agreements it approved.

Argument

A. This Court And The Delphi Bankruptcy Court Should Interpret Their Own Respective Orders

8. New GM argues in its own papers that bankruptcy courts are authorized to enforce their orders. See Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) ("as the Second Circuit recognized, . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); Baker v. Simpson, 613 F.3d 346, 352 (2d Cir. 2010) (quoting the lower bankruptcy court opinion that "[A] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders."); In re Texaco, Inc., 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("[A] bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders . . . "); Back v. AM Gen. Com. (In re Chateaugay Com.), 213 B.R. 633, 637 (S.D.N.Y. 1997) (holding that the bankruptcy court had inherent jurisdiction to interpret and enforce its own orders); In re Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 533 (Bankr. S.D.N.Y. 2007) ("Courts have inherent power to enforce compliance with their lawful orders through civil contempt"). Moreover, the mere fact that a plan has been consummated does not remove a bankruptcy court's authority to enforce its orders. In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999), aff'd, 2000 WL 1425751 (D. Del. Sep. 12, 2000), aff'd, 279 F.3d 226 (3rd Cir. 2002) ("we do not find significant the fact that the Plan may have been substantially consummated in this case. That fact does not divest us of our inherent jurisdiction to enforce the Confirmation Order issued by this Court.").

9. Furthermore, New GM relies on specific provisions in the Sale Order and the UAW Retiree Settlement Agreement to argue that this Court retained exclusive jurisdiction to enforce the Sale Order and the UAW Retiree Settlement Agreement. DPH Holdings agrees with New GM – this Court has exclusive jurisdiction over the Sale Order and the UAW Retiree

5

Settlement Agreement.  And this logic, in fact, requires New GM to seek interpretation of the 2007 Delphi Restructuring MOU by the Delphi Bankruptcy Court.  Moreover, in that same regard, this court should refrain from ruling on the 2007 Delphi Restructuring MOU, reflecting comity to the orders entered, and agreements approved, by the Delphi Bankruptcy Court.

10.  Specifically, Article XIII(r) of the Modified Plan provides that "[p]ursuant to sections 105(a) and 1142 of the Bankruptcy Code, **the Bankruptcy Court shall have exclusive jurisdiction** of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including . . . (r) to enforce all orders previously entered by the [Delphi] Bankruptcy Court."[5]  (Modified Plan § XIII(r) (emphasis added).)  Similarly, paragraph 56 of the Modification Approval Order states that:

> Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this order or the occurrence of the Effective Date, but subject to the jurisdiction provisions of the MDA Documents, the Court **shall retain exclusive jurisdiction** as provided in the Modified Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Modified Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIII of the Modified Plan.

(Modification Approval Order ¶ 56) (emphasis added).)  Thus, the Delphi Bankruptcy Court has retained exclusive jurisdiction to interpret and enforce both the 2007 Delphi Restructuring MOU and the 2007 Delphi MOU Order, and this Court should refrain from determining issues related

---

[5]  Prior to the broad scope of the jurisdictional provision effectuated by the Modified Plan, the 2007 Delphi MOU Order provided that:
> This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and performance of this order and the [2007 Delphi Restructuring MOU], and over each of the Signatories in connection therewith, through the effective date of a plan of reorganization proposed by the Debtors and confirmed by this Court (and thereafter to the extent provided for in such reorganization plan); provided, however, that the Court's jurisdiction shall not extend to any bilateral agreements of the UAW and GM.

(2007 Delphi MOU Order ¶ 12.)  The carve-out related to separate bilateral agreements to be entered into by GM and the UAW to implement the 2007 Delphi Restructuring MOU.  This provision has been superseded by the Modification Approval Order.

6

to the interpretation of the 2007 Delphi Restructuring MOU out of comity to the Delphi Bankruptcy Court.

B. <u>New GM's Position Vis-A-Vis The 2007 Delphi Restructuring MOU Violates The Delphi Plan Injunction</u>

11. The terms of the 2007 Delphi Restructuring MOU were incorporated into Delphi's Modified Plan. Specifically, section 7.16(a) of the Modified Plan provides:

> Pursuant to this Plan and in accordance with the UAW 1113/1114 Settlement Approval Order,[6] on the Effective Date, the UAW-Delphi-GM Memorandum of Understanding,[7] and all documents described in Attachment E to the UAW-Delphi-GM Memorandum of Understanding and Exhibit 2 to the UAW 1113/1114 Settlement Approval Order, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned, as applicable, in accordance with the Master Disposition Agreement and the Modification Approval Order.

(Modified Plan § 7.16(a)).

12. Moreover, each of the parties to this dispute were released and exculpated pursuant to Delphi's Modified Plan. (Modified Plan §§ 11.4, 11.5, 11.6, 11.8, and 11.1.) In addition, because those parties were released and exculpated pursuant to the Modified Plan, the Delphi plan injunction also applies and enjoins each party to the dispute from asserting any claims or causes of action against the other. Specifically, paragraph 22 of the Modification Approval Order provides that:

> <u>Injunction.</u> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, **the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from** (a) commencing or continuing in any manner any Claim, action,

---

[6] The Modified Plan defines the 2007 Delphi MOU order as the UAW 1113/1114 Settlement Approval Order.

[7] The Modified Plan defines the UAW-Delphi-GM Memorandum of Understanding to include the 2007 Delphi Restructuring MOU.

7

employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) **asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan**.

(Modification Approval Order ¶ 22 (emphasis added).)

13. Accordingly, absent lifting Delphi's plan injunction and unless this court disposes of this argument pursuant to its own jurisdiction, the Delphi Bankruptcy Court should be the only forum to interpret the 2007 Delphi Restructuring MOU.

WHEREFORE DPH Holdings respectfully requests that this Court (a) refrain from interpreting the 2007 Delphi Restructuring MOU, (b) direct New GM to seek such interpretation in front of the Delphi Bankruptcy Court, to the extent such interpretation is deemed by New GM to be necessary, and (c) grant DPH Holdings such other and further relief as is just.

Dated: New York, New York
November 2, 2010

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr.
(admitted *pro hac vice*)
Albert L. Hogan III
(not yet admitted *pro hac vice*)
Ron E. Meisler
(not yet admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

- and -

Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for DPH Holdings Corp., et al.,

9