# EXHIBIT "F"

VEHICLE LICENSE AGREEMENT

by and among

TOYOTA MOTOR CORPORATION,

NEW UNITED MOTOR MANUFACTURING, INC.

and

GENERAL MOTORS CORPORATION

TABLE OF CONTENTS

                                                                Page

I.    DEFINITIONS ················································    1

        Section 1.1.    Defined Terms ·······················    1

II.   TECHNICAL INFORMATION, LICENSE, ETC. ··················    2

        Section 2.1.    Technical Information ················    2
        Section 2.2.    Grant of License ····················    3
        Section 2.3.    Purchases from Third Parties ·········    3
        Section 2.4.    Royalty ·····························    4
        Section 2.5.    Calculation of Royalty ···············    5
        Section 2.6.    Payment of Royalty ··················    6

III.  TECHNICAL ASSISTANCE ··································    7

        Section 3.1.    Furnishing of Technical Assistance ····    7
        Section 3.2.    Actual Implementation of
                        Technical Assistance ················    8
        Section 3.3.    Payment for Technical Assistance ······    8

IV.   GENERAL PROVISIONS ····································    9

        Section 4.1.    Nondisclosure of Information ··········    9
        Section 4.2.    Liability ···························   11
        Section 4.3.    Agreement Term and Termination ········   11
        Section 4.4.    Interest on Overdue Payment ··········   12
        Section 4.5.    Force Majeure ······················   12
        Section 4.6.    Survival ····························   13
        Section 4.7.    Assignability ·······················   13
        Section 4.8.    Persons Authorized to Act
                        for the Parties ····················   13
        Section 4.9.    Notices ·····························   13
        Section 4.10.   Third Persons ······················   14
        Section 4.11.   Governing Language ··················   15
        Section 4.12.   Choice of Law ······················   15
        Section 4.13.   Entire Agreement, Etc. ···············   15
        Section 4.14.   Arbitration ·························   16

ANNEX A:  CATEGORIES OF TECHNICAL INFORMATION
          UNDER SECTION 2.1.

## VEHICLE LICENSE AGREEMENT

This VEHICLE LICENSE AGREEMENT ("Agreement") is made and entered into on and as of the 2|st day of February, 1984, by and among Toyota Motor Corporation, a corporation organized and existing under the laws of Japan ("Toyota"), New United Motor Manufacturing, Inc., a close corporation organized and existing under the laws of the State of California (the "JV Company"), and General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware ("GM");

## WITNESSETH:

WHEREAS, the JV Company, which is under the joint control of but is separate and distinct from GM and Toyota, was formed for the limited purpose of manufacturing in the United States a specific automotive vehicle not heretofore manufactured and certain components related thereto;

NOW, THEREFORE, the parties hereto agree as follows:

## I.   DEFINITIONS

1.1.   Defined Terms:   In addition to the terms which have been previously, or are hereafter, defined herein, terms used herein which are defined in Section 1.1 of the Shareholders'

- 1 -

Agreement (the "Shareholders' Agreement"), dated the date hereof, among the JV Company, GM and Toyota are used herein as so defined when used herein with initial capital letters unless otherwise defined in this Agreement.  In addition, the following terms shall have the following meanings when used herein with initial capital letters:

(a) "Agreement Term" means the term of this Agreement as defined in Section 4.3 hereof.

(b) "Licensed Vehicles" means the front-wheel drive motor vehicles including its subsequent model changes which shall be developed by Toyota for the JV Company based on Toyota's "Sprinter" model, including without limitation optional equipment therefor.  The body style of the Licensed Vehicles shall include a four-door sedan and a five-door liftback subject to review to be made at the time of model changes.

(c) "Non-Toyota Parts" means the parts, components and materials which may be manufactured or purchased by the JV Company from any person or entity other than Toyota (any such person or entity being referred to herein as a "Non-Toyota Supplier") for use in manufacturing the Licensed Vehicles.

## II.  TECHNICAL INFORMATION, LICENSE, ETC.

2.1.  <u>Technical Information</u>:  During the Agreement Term, Toyota shall, to the extent reasonably necessary for the

- 2 -

manufacture of the Licensed Vehicles and/or the manufacture or
purchase of the Non-Toyota Parts by the JV Company, furnish the
JV Company such technical information, data and other like
information which Toyota possesses at the time of this Agreement
or may hereafter develop or acquire and which are within the
categories identified in Annex A attached hereto ("Technical
Information").   The JV Company acknowledges that all Technical
Information is Toyota's trade secret and agrees that it shall
observe the nondisclosure covenants applicable to it contained
in Section 4.1 hereof with respect thereto.

   2.2.   Grant of License:   (a)   Toyota hereby grants to
the JV Company an irrevocable and nonexclusive license
("License") to use Technical Information for the purposes spec-
ified in Section 2.1 hereof during the Agreement Term.

   (b)   The License shall be nondivisible, nontransfer-
able, nonassignable and shall not include a right or privilege to
grant a sublicense.   Nothing in this Section 2.2(b) shall affect
the JV Company's rights under Section 2.3 hereof.

   (c)   Except as mentioned in Section 4.1(b) hereof,
nothing herein shall be construed to grant the JV Company any
license to use Technical Information to manufacture any service
parts for the Licensed Vehicles or otherwise.

   2.3.   Purchases from Third Parties:   (a)   The JV
Company may, to the extent reasonably necessary, furnish Non-

Toyota Suppliers Technical Information to purchase from
them Non-Toyota Parts, provided that the JV Company observes
the covenants applicable to it in Section 4.1 hereof.

(b)   Nothing in this Agreement shall be deemed or con-
strued to create any relationship, contractual or otherwise,
between Toyota and Non-Toyota Suppliers.   Except as other-
wise provided in Section 4.2(b) hereof or in the PRA, the JV
Company shall fully indemnify and hold Toyota harmless from and
against all losses, damages, claims, costs and expenses,
including attorney's fees, which may be sought by Non-Toyota
Suppliers or may arise from any act or omission to act by the JV
Company or Non-Toyota Suppliers.

2.4.   Royalty:   (a)   In consideration of the License,
the JV Company shall pay Toyota royalties, the amount of which
shall be calculated in accordance with the provisions of
Section 2.5 hereof and shall be paid as provided in Section 2.6
hereof.

(b)   The JV Company may withhold from the royalty pay-
ments hereunder any present or future withholding taxes which the
JV Company is required to withhold and pay over to taxing
authorities in the United States for the account of Toyota,
provided that the JV Company, on behalf of and in the name of
Toyota, shall pay such taxes and arrange to furnish Toyota with
proper certificates for such payments from such authorities to

- 4 -

enable Toyota to obtain tax credit therefor against its
Japanese taxes.

(c)   Any handling fees or other similar expenses
incurred in remitting royalties shall not be deducted by the JV
Company in remitting royalties to be paid under this Agreement.

2.5.   Calculation of Royalty:   (a)   The JV Company
shall pay Toyota royalties equal to 3% of the aggregate amount
of "U.S. Vehicle Content".  For purposes of this Agreement,
"U.S. Vehicle Content" means the excess of (i) the JV Company's
aggregate gross sales proceeds from the sale of the Licensed
Vehicles accruing in any calendar quarter during the Agreement
Term over (ii) the sum of (A) the aggregate of the amounts
accruing as the purchase prices of all components and materials
for the Licensed Vehicles purchased by the JV Company from
Toyota in such calendar quarter and (B) all costs and expenses
of delivery of such components and materials to the JV
Company's designated port of entry in the United States,
including without limitation all such costs and expenses of or
relating to freight, insurance, customs, customs handling and
brokerage, and terminal and wharfage charges, provided that in
the event that the aggregate amount referred to in clause (ii)
hereof exceeds the amount referred to in clause (i) hereof in
any such calendar quarter, such excess amount shall be carried
over to any subsequent calendar quarter for the calculation of
the royalty hereunder.

- 5 -

(b)   If any amount referred to in Section 2.5(a)(ii) hereof is in any currency other than U.S. Dollars, such amount shall be converted into U.S. Dollars using the last quoted purchase exchange rate at the Bank of Tokyo in Tokyo, Japan on the date of shipment of the components and materials concerned.

(c)   The JV Company shall keep records and supporting documentation necessary to verify the calculation of the royalty hereunder and Toyota may at any time during normal business hours inspect such records and documentation for the purpose of verifying the calculation of royalty payments hereunder, provided, however, that no such inspection right shall exist with respect to royalty payments certified pursuant to Section 2.6 hereof more than three years prior to the date of any request to inspect such records and documentation.

(d)   Notwithstanding any other provision of this Agreement, any computation of royalty payments hereunder shall be conclusive and binding upon the parties hereto and not be subject to challenge hereunder or otherwise unless such computation shall be so challenged within three years from the date of the certified statement prepared by the JV Company pursuant to Section 2.6 hereof.

2.6.   Payment of Royalty:   The JV Company shall, within 30 calendar days after the end of each calendar quarter, furnish to Toyota at an address to be designated by Toyota as provided herein the JV Company's certified statement showing the

- 6 -

calculation of the amount of royalties accruing hereunder
during such calendar quarter, and the JV Company shall remit the
accrued royalties hereunder in U.S. Dollars within 60 calendar
days of the end of each calendar quarter during the Agreement
Term by bank wire transfer to a bank account to be designated
by Toyota for such purpose.


III.  TECHNICAL ASSISTANCE

3.1.  Furnishing of Technical Assistance:  To the
extent reasonably necessary to enable the JV Company to manu-
facture the Licensed Vehicles, Toyota shall use its best
efforts to render to the JV Company technical assistance.  The
following is a nonexclusive list of examples of the types of
such technical assistance to be rendered by Toyota to the JV
Company hereunder:

(a)  Prototype vehicles;

(b)  Know-how and services concerning plant design
(process planning, building design, layout, equipment
planning and similar matters);

(c)  Services concerning equipment procurement and
installation;

(d)  Process samples and white body;

(e)  Dispatch of instructors; and

(f)  Training of the personnel of the JV Company in
Japan.


- 7 -

3.2.   Actual Implementation of Technical Assistance:
Any technical assistance under Section 3.1 hereof shall be
actually implemented after the parties agree on the nature of
such technical assistance and terms and conditions relating to
rendering of such technical assistance, provided that the
amount to be paid therefor shall be determined on a cost basis.

3.3.   Payment for Technical Assistance:   Payments for
technical assistance under Article III hereof shall be made as
follows:

(a)   The JV Company shall remit the amount payable
under Article III hereof to Toyota by bank wire transfer
within seven days after actual receipt by the JV Company of
Toyota's invoice (including that sent by telex or facsim-
ile) therefor.

(b)   The JV Company may withhold from the amount pay-
able to Toyota for technical assistance hereunder any pre-
sent or future withholding taxes (if any) which the JV
Company is required to withhold and pay over to taxing
authorities in the United States for the account of Toyota,
provided that the JV Company, on behalf of and in the name
of Toyota, shall pay such taxes and arrange to furnish
Toyota with proper certificates for such payments from such
authorities to enable Toyota to obtain tax credit therefor
against its Japanese taxes.

- 8 -

(c)  Any handling fees or other similar expenses
incurred in remitting payments for technical assistance
shall not be deducted by the JV Company in remitting such
payments.

(d)  All payments under Article III hereof shall be
made in Japanese Yen, unless Toyota shall instruct that
such payments be made in U.S. Dollars.


IV.  GENERAL PROVISIONS

4.1.  Nondisclosure of Information:  (a)  Any
Technical Information furnished by Toyota hereunder, whether in
writing, verbally or in any other form, is Toyota's trade
secret and, except as contemplated in Sections 2.3 and 4.1(d)
hereof, the JV Company shall not, without Toyota's prior
written consent, disclose or divulge any such Technical
Information to any third party.

(b)  Subject to the terms of Section 4.1(d) hereof,
unless otherwise permitted by Toyota (which permission as to
service parts to be manufactured by the JV Company for sale to
GM is granted pursuant to Section 2.2(b) of the Service Parts
License Agreement, provided that nothing herein shall affect
Toyota's rights against GM under such Service Parts License
Agreement in the event of any breach thereof by GM),
the JV Company shall use Technical Information solely for the
purposes set forth in Section 2.1 hereof and for no other

- 9 -

purpose.  If requested by Toyota during the Agreement Term, the
JV Company shall, at its sole expense, return Technical
Information in tangible form previously provided to the JV
Company by Toyota hereunder which Technical Information, as a
result of product changes and similar causes, is no longer
reasonably necessary for the JV Company.

(c)  The JV Company shall take all reasonably neces-
sary precautions in order to prevent unauthorized disclosure of
the Technical Information to third parties, including without
limitation maintaining all tangible Technical Information in a
secure location when not in use.  The JV Company shall also
obtain from all of its employees, officers, directors,
Non-Toyota Suppliers and others to whom any such Technical
Information is disclosed, and others whom the JV Company
reasonably believes have actual access thereto, a nondisclosure
and nonuse agreement containing standard provisions in the
U.S.A. in respect of matters such as those referred to in this
Section 4.1(c).

(d)  To the extent that it would otherwise be lawfully
permitted to do so, the JV Company may disclose Technical
Information to GM, provided, however, that GM shall have agreed
in writing in favor of the JV Company and Toyota to maintain
such Technical Information in substantially the same manner as
GM maintains its most confidential proprietary information so
as to prevent the disclosure thereof to third parties.

- 10 -

4.2.  Liability:  (a)  Subject to the provisions of the
PRA, it is acknowledged that Toyota has only extended to the JV
Company a mere permission to use Technical Information and that
the JV Company assumes all risks and responsibilities as to its
use of Technical Information and technical assistance and the
results thereof.

(b)  Toyota represents and warrants that, to the
knowledge of responsible Toyota officials to date, there is no
reason to believe that the manufacture, use or sale of the
Licensed Vehicles will constitute an infringement of any patent
held by any third party.  Should any patent infringement claim
arise, the parties will mutually cooperate in investigation and
defense against such claim.  In no event shall any party have
any claim or right of action against any other party arising
out of any such patent infringement claim except in the event
of a breach of the representation and warranty set forth in the
first sentence of this Section 4.2(b).

4.3.  Agreement Term and Termination:  (a)  This
Agreement shall become effective upon its execution by the
parties hereto and shall remain in full force and effect until
12 years have elapsed after the Production Commencement Date,
fixed as provided in Section 2.1 of the Vehicle Agreement (such
period being referred to herein as the "Agreement Term").

(b)  Notwithstanding the foregoing, this Agreement and
the License shall terminate immediately upon the dissolution of

- 11 -

the JV Company or upon the disposition by the Toyota Group of all

of its Shareholder interest in the JV Company in accordance with

Article 6 of the Articles of Incorporation of the JV Company or

the applicable provisions of the Shareholders' Agreement.

(c)   Any and all financial obligations and liabilities

of the JV Company accruing before the termination or expiration

of this Agreement shall survive the termination or expiration

of this Agreement, and shall become without Toyota's demand due

and payable immediately upon such termination or expiration.

(d)   Unless otherwise instructed by Toyota, the JV

Company shall upon termination or expiration of this Agreement

return to Toyota, in a manner reasonably designated by Toyota

and at the JV Company's cost, all of the tangible Technical

Information furnished to the JV Company hereunder and all

reproductions thereof then in the possession of the JV Company.

4.4.   Interest on Overdue Payment:   If any payment to

Toyota by the JV Company under this Agreement is delayed, the

JV Company shall pay interest to Toyota on each such delayed

payment at the rate provided in Section 7.2 of the Shareholders'

Agreement.

4.5.   Force Majeure:   No party shall in any way be

responsible to any other party for failure of or delay in the

performance of obligations other than payment of money under

this Agreement if the causes therefor are attributable to any

event beyond its reasonable control.

- 12 -

4.6. <u>Survival</u>:  All representations, warranties and indemnities, liabilities and disclaimers and limitations of the foregoing made, furnished or imposed herein or arising hereunder shall survive any termination of this Agreement or dissolution of the JV Company.

4.7. <u>Assignability</u>:  Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

4.8. <u>Persons Authorized to Act for the Parties</u>:  Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

4.9. <u>Notices</u>:  In any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important"), or (iii) transmitted by electronic facsimile transfer marked "Important" (which notice or other communication shall be immediately confirmed by a telex marked "Important") as follows:

- 13 -

If to Toyota, to:

    Toyota Motor Corporation
    1, Toyota-Cho, Toyota
    Aichi 471 Japan
    Telex/Answerback:  4528371/TOYOTA J
    Facsimile Model:  UF 520 III
    Facsimile Call No.:  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
    Attention:  General Manager, Overseas Project Office

If to GM, to:

    Chevrolet Motor Division
    General Motors Corporation
    30001 Van Dyke Avenue
    Warren, Michigan 48090 U.S.A.
    Telex/Answerback: 235547/CHEV CO WARN
    Facsimile Model: Rapicom 1500
    Facsimile Call No.: 313-492-6842
    Attention: General Manager

If to the JV Company, to:

    New United Motor Manufacturing, Inc.
    45500 Fremont Boulevard
    Fremont, California 94537 U.S.A.
    Telex/Answerback: (To be supplied)
    Facsimile Model:  (To be supplied)
    Facsimile Call No.:  (To be supplied)
    Attention:  Executive Vice President

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if by postage prepaid registered airmail, and (iii) 24 hours following confirmation by telex with confirmed answerback if notice is given by electronic facsimile transfer.

    4.10.  Third Persons:  Except as contemplated in this Agreement as to the parties hereto, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

- 14 -

4.11.  Governing Language:  This Agreement and all
other agreements, instruments and notices that are referred to
herein or are supplementary hereto shall be prepared or fur-
nished in and governed and controlled by the English language.

4.12.  Choice of Law:  This Agreement shall be con-
strued and enforced in accordance with and governed by the laws
of the State of California, without giving effect to the prin-
ciples of conflict of laws thereof.

4.13.  Entire Agreement, Etc.:  This Agreement consti-
tutes the entire agreement of the parties hereto with respect
to the subject matter hereof.  To the extent that provisions in
any of the Prior Agreements (as that term is hereafter defined)
are inconsistent with any provision of this Agreement, this
Agreement supersedes all prior agreements and understandings,
oral and written, among the parties hereto with respect to the
subject matter hereof, including without limitation the
Memorandum of Understanding (the "Memorandum"), dated
February 17, 1983, as amended, between Toyota and GM and all
letter agreements, minutes of meetings and similar documents
dated prior to the date hereof to which GM, Toyota or any of
their respective representatives are parties (the Memorandum
and such letter agreements, minutes and similar documents being
referred to herein as the "Prior Agreements").

- 15 -

4.14.  <u>Arbitration</u>:  Any dispute arising between the
parties hereto in connection with this Agreement or the agreement
referred to in Section 4.1(d) hereof shall be finally settled by
arbitration.  If Toyota is the initiating party, the arbitration
shall be held in San Francisco, California, U.S.A. in accordance
with the rules of the American Arbitration Association.  If the
JV Company or GM is the initiating party, the arbitration shall
be held in Tokyo, Japan in accordance with the rules of the Japan
Commercial Arbitration Association.  Any such arbitration pro-
ceedings shall be conducted in English.  The award rendered by
the arbitrators shall be final.  An action or proceeding to
enforce such award may be brought in any court of competent
jurisdiction.  The costs of any such arbitration proceedings
shall be allocated as the arbitrators shall decide.

IN WITNESS WHEREOF, the parties hereto have caused this
Agreement to be executed by their respective duly authorized
representatives as of the day and year first above written.

NEW UNITED MOTOR
MANUFACTURING, INC.

By _____
           President

TOYOTA MOTOR CORPORATION

By _____
           President

GENERAL MOTORS CORPORATION

By _____
           President
CHAIRMAN OF THE BOARD

- 17 -

<u>Annex A</u>

<u>CATEGORIES OF TECHNICAL INFORMATION UNDER SECTION 2.1</u>

1.    <u>Product and Engineering</u>:

      (i)     Specifications information;

      (ii)    Drawings;

      (iii)   Parts list;

      (iv)    Engineering standards;

      (v)     Sample parts.  (Only one car set of sample parts required for investigation of U.S. sourcing.)

2.    <u>Production and Quality Assurance</u>:

  (1)    <u>Information concerning production and inspection of the Licensed Vehicle</u>:

      (i)     Process planning sheet and flow chart;

      (ii)    Jig location drawings and welding spot instructions;

      (iii)   Processing conditions sheet;

      (iv)    Raw materials requirements per car and consumables list;

      (v)     Quality standards;

      (vi)    Inspection standards of vehicles and parts;

      (vii)   Measurement methods (emissions, brakes, dimensions, etc.);

      (viii)  Completed vehicle inspection standards, etc.

  (2)    <u>Information and services concerning plant operations</u>:

      (i)     Standard work sheet;

- 1 -

          (ii)      Equipment operating manuals;

          (iii)     Working procedures and manuals;

          (iv)      Inspection procedures and manuals;

          (v)       Maintenance standards and maintenance procedures;

          (vi)      Various formats, vouchers, etc.

3.    <u>Substitute Technical Information</u>:

Any information, written materials or other matter which may be developed in the future as a complete or partial substitute for any item under Items 1 or 2 above.

AMENDMENT

TO

VEHICLE LICENSE AGREEMENT


by and among


TOYOTA MOTOR CORPORATION,

NEW UNITED MOTOR MANUFACTURING, INC.

and

GENERAL MOTORS CORPORATION

AMENDMENT

TO

VEHICLE LICENSE AGREEMENT


This Amendment is entered into this 31st day of March, 1986 among Toyota Motor Corporation ("Toyota"), General Motors Corporation ("GM"), and New United Motor Manufacturing, Inc.   (the "JV Company").


WHEREAS, the parties executed the Vehicle License Agreement on February 21, 1984;

WHEREAS, it is agreed that under the Vehicle License Agreement Toyota shall furnish the JV Company with technical information necessary for manufacture of the Toyota-Specific Vehicles in addition to the GM-Specific Vehicles both as defined herein below; and

WHEREAS, the parties now wish to make the appropriate amendments to the Vehicle License Agreement for mutual benefit;

NOW, THEREFORE, the parties agree as follows:


1.   Amendment and Addition of Defined Terms:   (a) Sub-section 1.1(b) of the Vehicle License Agreement shall be and is hereby changed to read in its entirety as follows:

"(b)  'Licensed Vehicles' means the motor vehicles, including subsequent model changes, which shall be developed

- 1 -

by Toyota for the JV Company for manufacture and sale by the
JV Company.  This definition also includes optional equipment
for such vehicles."


(b) The following sub-sections shall be and are hereby added
in Section 1.1 of the Vehicle License Agreement:

"(d)  'GM-Specific Vehicles' shall mean the Licensed
Vehicles for sale by the JV Company to GM or its designated
marketing unit.

(e)  'Toyota-Specific Vehicles' shall mean the Licensed
Vehicles for sale by the JV Company to Toyota or its
designated marketing unit, and shall be variations of the JV
Vehicle as defined in the Shareholders' Agreement.

(f)  'PRA' as used in this Agreement refers both to the
Product Responsibility Agreement, dated February 21, 1984,
among Toyota, GM and the JV Company and to the Product
Responsibility Agreement for Toyota-Specific Vehicles, dated
March 31, 1986, among Toyota, GM, the JV Company and Toyota
Motor Sales, U.S.A., Inc."


2.  <u>Nondisclosure of Information</u>:  The following sub-section
shall be and is hereby added in Section 4.1 of the Vehicle License
Agreement:

"(e)  Notwithstanding Section 4.1(d) hereof, but with
respect to the information only furnished by Toyota to the JV

- 2 -

Company hereunder exclusively for the Toyota-Specific
Vehicles, the following shall apply:

(i)   The JV Company may disclose to GM the
information relating to production engineering and
production process in conformance with the nondisclosure
requirements of Sections 4.1(a) through (d) hereof
applicable to Technical Information.

(ii)   The JV Company shall not disclose to GM or any
third party any information related to product planning,
product engineering, product specifications, model cycle
or quality related information, except that NUMMI may
disclose such information to GM only when necessary for
the management and operation of NUMMI, provided, however,
that nothing herein shall prohibit NUMMI from disclosing
such information to any Non-Toyota Supplier including GM,
if applicable, when such Non-Toyota Supplier needs such
information, pursuant to this Agreement.
Any disclosure under this paragraph shall be in accordance
with the Order issued by the Federal Trade Commission, In
the Matter of General Motors Corporation, et.al., Docket
No. C-3132."


3.   <u>Other Terms</u>:  It is understood that, except as expressly
amended hereby, the Vehicle License Agreement shall remain
unchanged.

- 3 -

The parties have executed this Amendment on the date first written above.

NEW UNITED MOTOR MANUFACTURING, INC.

By           _Tatsuro Toyoda_
         Tatsuro Toyoda, President

TOYOTA MOTOR CORPORATION

By           _Hiroshi Okuda_
         Hiroshi Okuda, Director

GENERAL MOTORS CORPORATION

By           _J. R. Edman_
         J. R. Edman, Vice President
and Group Executive,
Finance Group

— 4 —

SECOND AMENDMENT TO
VEHICLE LICENSE AGREEMENT

TOYOTA MOTOR CORPORATION ("Toyota"), a corporation organized and
existing under the laws of Japan, NEW UNITED MOTOR MANUFACTURING,
INC. (the "JV Company"), a close corporation organized and
existing under the laws of the State of California, and GENERAL
MOTORS CORPORATION ("GM"), a corporation organized and existing
under the laws of the State of Delaware, hereby agree to amend the
Vehicle License Agreement, dated February 21, 1984, as amended
dated March 31, 1986, (the "Agreement"), as follows:


1.    The following paragraph is hereby added to Paragraph 1.1 of
the Agreement:


    "(g) 'Toyota-Specific Trucks' shall mean the Licensed Vehi-
    cles for sale by the JV Company to Toyota or its designated
    marketing unit as provided under the Letter of Understanding
    dated April 24, 1989, among Toyota, the JV Company and GM."


2.    The term "Toyota-Specific Vehicles" referenced in the Agree-
ment shall be amended to read:

"Toyota-Specific Vehicles and Toyota-Specific Trucks".

3.    The following phrase is hereby added to the end of Paragraph 1.1 (f) of the Agreement:

"as amended dated April 24, 1989."

4.    This Second Amendment shall be effective as of April 24, 1989.

IN WITNESS WHEREOF, the parties have caused three copies of this Second Amendment to be signed by their duly authorized representatives.

TOYOTA MOTOR CORPORATION                GENERAL MOTORS CORPORATION

By: _____          By: _____
Title:  Director                       Title:  Assistant Treasurer

NEW UNITED MOTOR MANUFACTURING, INC.

By: _____
Title:   President

- 2 -

THIRD AMENDMENT TO
VEHICLE LICENSE AGREEMENT

TOYOTA MOTOR CORPORATION, a corporation organized and existing under the laws of
Japan ("Toyota"), NEW UNITED MOTOR MANUFACTURING, INC., a corporation organized
and existing under the laws of the State of California ("JV Company"), and GENERAL
MOTORS CORPORATION, a corporation organized and existing under the laws of the State of
Delaware ("GM"), hereby agree to amend the VEHICLE LICENSE AGREEMENT dated
February 21, 1984, as amended on March 31, 1986 and April 24, 1990 ("Agreement"), as
follows:

1.    Section 1.1 of the Agreement, entitled "Defined Terms," is hereby amended to delete and
      replace subparagraphs (d), (e) and (g) with the following subparagraphs:

      "(d)    "GM-Specific Vehicles" means automotive vehicles manufactured by the
              JV Company for GM or its designated marketing unit under the license of
              Toyota.

      (e)     "Toyota-Specific Vehicles" means automotive vehicles manufactured by
              the JV Company for Toyota or its designated marketing unit under the
              license of Toyota."

2.    Paragraph (a) of Section 4.3 of the Agreement, entitled "Agreement Term and
      Termination," is hereby deleted and replaced by the following Paragraph:

      "4.3. Agreement Term and Termination:  (a) This Agreement shall
      become effective upon its execution by the parties hereto and shall
      remain in full force and effect until the dissolution of the JV
      Company (such period being referred to herein as the "Agreement
      Term")."

3.    This Amendment shall be effective as of February 1, 1997.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed in triplicate
by their duly authorized representatives.

TOYOTA MOTOR CORPORATION          NEW UNITED MOTOR
                                  MANUFACTURING, INC.


By:  _____      By:  _____
     Koichiro Noguchi                  Iwao Itoh
     Director                          President


GENERAL MOTORS CORPORATION


By:  _____
     Paul W. Schmidt
     Executive in Charge
     NAO Finance

# FOURTH AMENDMENT TO
## VEHICLE LICENSE AGREEMENT

TOYOTA MOTOR CORPORATION, a corporation organized and existing under the laws of Japan, NEW UNITED MOTOR MANUFACTURING, INC., a corporation organized and existing under the laws of the State of California, and GENERAL MOTORS CORPORATION, a corporation organized and existing under the laws of the State of Delaware, hereby agree to amend the VEHICLE LICENSE AGREEMENT dated February 21, 1984, as amended on March 31, 1986, April 24, 1990 and February 1, 1997 ("Agreement"), as follows:

1. Paragraph (a) of Section 2.5 of the Agreement shall be amended by replacing the figure "3%" in the first sentence with the figure "6%".

2. This Amendment shall be effective as of October 1, 1998.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on this day of _September 18_, 1998 in triplicate, by their duly authorized representatives.

TOYOTA MOTOR CORPORATION

NEW UNITED MOTOR
MANUFACTURING, INC.

By: _____

By: _____

Koichiro Noguchi
Director

Iwao Itoh
President

GENERAL MOTORS CORPORATION

By: _____

Mark T. Hogan
Vice President
General Manager of Operations
NAO Small Car Group

## FIFTH AMENDMENT TO VEHICLE LICENSE AGREEMENT

This FIFTH AMENDMENT is made on March 22, 2006 by and among

TOYOTA MOTOR CORPORATION, a corporation organized and existing under the laws of Japan ("Toyota"),

NEW UNITED MOTOR MANUFACTURING, INC., a corporation organized and existing under the laws of the State of California ("JV Company"), and

GENERAL MOTORS CORPORATION, a corporation organized and existing under the laws of the State of Delaware ("GM").

Now, the parties hereby agree to amend the VEHICLE LICENSE AGREEMENT dated February 21, 1984, as amended on March 31, 1986, April 24, 1989, February 1, 1997 and September 18, 1998 ("Agreement"), as follows:

Clause 1. - Calculation of Royalty (Section 2.5)

Paragraphs (a) and (b) of Section 2.5 of the Agreement shall be amended in its entirety to read as follows:

"(a) The JV Company shall pay Toyota royalties equal to 6 % of the aggregate amount of "U.S. Content". For purpose of this Agreement, "U.S. Content" shall mean the JV Company's aggregate gross sales proceeds from the sale of the Licensed Vehicles or Non-Toyota Parts (if any) accruing in any calendar quarter during the Agreement Term, minus the following costs, fees and taxes, if included therein:

(i) the aggregate of the amounts accruing as the purchase prices of all components and materials for the Licensed Vehicles or Non-Toyota Parts purchased by the JV Company from Toyota ("Toyota Components") in such calendar quarter;

(ii) the aggregate of the amounts accruing as the purchase prices of Non-Toyota Parts, which shall be purchased by the JV Company from third parties which manufacture or assemble motor vehicles and/or automotive parts and components pursuant to the technical assistance agreement with Toyota, and the scope and respective suppliers of which shall be stipulated in Annex B attached hereto, which may from time to time be changed by Toyota ("Non-Licensed Parts");

1

(iii) all costs and expenses of (A) delivery of Toyota Components to the JV Company's designated port of entry in the United States and (B) delivery of the Non-Licensed Parts to the factory where the Licensed Vehicles and/or Non-Toyota Parts are manufactured, including without limitation all such costs and expenses of or relating to freight, insurance, customs, customs handling and brokerage, and terminal and wharfage charges;

(iv) total production preparation and manufacturing assistance fees paid during the relevant quarterly period by the JV Company to TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Kentucky ("TMMNA"), with respect to the manufacture of the Licensed Vehicles and/or the Non-Toyota Parts under the terms and conditions separately agreed upon between the JV Company and TMMNA; and

(v) the aggregate of the amounts accruing as the purchase prices of the accessory parts purchased from GM, or suppliers specified by GM, and installed into GM-Specific Vehicles by the JV Company and shall be stipulated in Annex C attached hereto, which may from time to time be changed by the agreement among Toyota, the JV Company and GM ("GM Accessory Parts").

Provided that in the event that said costs, fees and taxes exceed the U.S. Content in any such calendar quarter, such excess amount shall be carried over to any subsequent calendar quarter for the calculation of the royalty hereunder.

(b) If any amount referred to in Section 2.5 (a) from (i) through (v) hereof is in any currency other than U.S. Dollars, such amount shall be converted into U.S. Dollars using the last quoted purchase exchange rate at the bank separately designated by Toyota on the date of shipment of the components and materials concerned."

Clause 2. – Furnishing of Technical Assistance (Section 3.1)

Section 3.1 of the Agreement shall be amended in its entirety to read as follows:

"3.1. Furnishing of Technical Assistance:
To the extent reasonably necessary to enable the JV Company to manufacture the Licensed Vehicles and the Non-Toyota Parts, Toyota shall use its best efforts to render to the JV Company technical assistance. The following is a nonexclusive list of examples of the types of such technical assistance to be rendered by Toyota to the JV

2

Company hereunder:

(a)  Prototype vehicles;

(b)  Know-how and services concerning plant design (process planning, building design, layout, equipment planning and similar matters);

(c)  Services concerning equipment procurement and installation;

(d)  Process samples and white body;

(e)  Dispatch of instructors; and

(f)  Training of the personnel of the JV Company in Japan."

## Clause 3. – Liability (Section 4.2)

Paragraph (b) of Section 4.2 of the Agreement shall be amended in its entirety to read as follows:

"(b) Toyota represents and warrants that, to the knowledge of responsible Toyota officials to date, there is no reason to believe that the manufacture, use or sale of the Licensed Vehicles and the Non-Toyota Parts (excluding the GM Accessory Parts) will constitute an infringement of any patent held by any third party.   GM represents and warrants that, to the knowledge of responsible GM officials to date, there is no reason to believe that the manufacture, use or sale of the GM Accessory Parts will constitute an infringement of any patent held by any third party.   Should any patent infringement claim arise, the parties will mutually cooperate in investigation and defense against such claim.   In no event shall any party have any claim or right of action against any other party arising out of any such patent infringement claim except in the event of a breach of the representation and warranty set forth in the first or second sentence of this Section 4.2 (b)."

## Clause 4. – Production and Quality Assurance (ANNEX A)

Subparagraph (1) of paragraph 2. of ANNEX A of the Agreement shall be amended in its entirety to read as follows:

"(1) Information concerning production and inspection of the Licensed Vehicles and the Non-Toyota Parts:

(i)   Process planning sheet and flow chart;

(ii)  Jig location drawings and welding spot instructions;

(iii)  Processing conditions sheet;

3

(iv)   Raw materials requirements per car and consumables list;

(v)   Quality standards;

(vi)   Inspection standards of vehicles and parts;

(vii)   Measurement methods (emissions, brakes, dimensions, etc.);

(viii) Completed vehicle inspections standards, etc."

Clause 5. – ANNEX B and ANNEX C

Annex B, "Non-Licensed Parts", which is attached hereto as Exhibit 1, and Annex C, "GM
Accessory Parts", which is attached hereto as Exhibit 2, shall hereby be attached to and
become an integral part of the Agreement.

Clause 6. – Effective Date

This Amendment shall be effective as of August 1, 2005.

IN WITNESS WHEREOF, the parties hereto have caused three copies of this FIFTH
AMENDMENT to be signed by their duly authorized representatives.

TOYOTA MOTOR CORPORATION                    NEW UNITED MOTOR
                                            MANUFACTURING, INC.

By: _____               By: _____
T. Uranishi                                 Y. Azuma

GENERAL MOTORS CORPORATION

By: _____
T. Clarke

4

Exhibit 1

Non-Licensed Parts

| Non-Licensed Parts | Suppliers |
|---|---|
| All parts and components to be purchased directly or indirectly from the suppliers listed in the right column for the manufacture of the Licensed Vehicles and/or Non-Toyota Parts | Toyota Motor Manufacturing, West Virginia, Inc. |
| | TABC, Inc. |
| | Canadian Autoparts Toyota Inc. |
| | Toyota Motor Manufacturing Canada, Inc. |

5

Exhibit 2

<u>ANNEX C</u>

<u>GM Accessory Parts</u>

| Part Description | Part Number |
|---|---|
| HEATER ASSY, BLOCK | 28560-YY*** |
| CAP S/A WHEEL | 42602-YY*** |
| MAT ASSY, FLOOR | 58510-YY*** |
| HOOK ASSY, FLOOR | 66310-YY*** |
| LABEL, SAFETY CAUTION | 74552-YY*** |
| COMPUTER ASSY, TELEPHONE | 86710-YV*** |
| CONTROLLER, TELEPHONE | 86714-YV*** |
| ANTENNA ASSY, TELEPHONE | 86760-YV*** |
| MIRROR ASSY, INNER RR VIEW | 87810-YV*** |
| REAR CARGO MAT | 64711-YY*** |

6