Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026(REG)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, et al.

9          f/k/a General Motors Corporation, et al.,

10

11          Debtors.

12

13  - - - - - - - - - - - - - - - - - - - -x

14

15              United States Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              October 28, 2010

20              3:05 PM

21

22

23  B E F O R E:

24  HON. ROBERT E. GERBER

25  U.S. BANKRUPTCY JUDGE

Page 2

1

2    TELEPHONE CONFERENCE re Letter Dated October 28, 2010 from

3    James L. Bromley to Judge Gerber

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 3

```
 1
 2    A P P E A R A N C E S :
 3    JONES DAY
 4         Attorneys for Debtor, General Motors LLC
 5         North Point
 6         901 Lakeside Avenue
 7         Cleveland, OH 44114
 8
 9    BY:  HEATHER LENNOX, ESQ.
10         ROBERT S. WALKER, ESQ.
11         (TELEPHONICALLY)
12
13    CLEARY GOTTLIEB STEEN & HAMILTON LLP
14         Attorneys for United Auto Workers
15         One Liberty Plaza
16         New York, NY 10006
17
18    BY:  JAMES L. BROMLEY, ESQ.
19         LUKE A. BAREFOOT, ESQ.
20         (TELEPHONICALLY)
21
22
23
24
25
```

Page 4

1

2    BREDHOFF & KAISER, PLLC

3        Attorneys for Plaintiff, United Auto Workers, in the

4         Michigan Action

5        805 Fifteenth Street, N.W.

6        Suite 1000

7        Washington, DC 20005

8

9    BY:  ANDREW D. ROTH, ESQ.

10       (TELEPHONICALLY)

11

12   UAW

13       Office of General Counsel

14       8000 East Jefferson Avenue

15       Detroit, MI 48214

16

17   BY:  JEFFREY D. SODKO, ESQ.

18

19

20

21

22

23

24

25

09-50026-mg    Doc 7652    Filed 11/01/10    Entered 11/04/10 17:12:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 5 of 28

Page 5

1                    P R O C E E D I N G S

2            THE COURT:  This is Robert Gerber.  I would like to

3    get appearances from those folks who think they're likely to

4    want to speak this afternoon.  And then I'll deal with the

5    substantive matters incident to this request for a conference.

6    As I believe you all know, after I read the submissions, I

7    thought it appropriate that this call be on the record.  And

8    therefore, we have our recording equipment running now.

9            I have letters from each of Cleary and Jones Day.

10   Who would like to begin with the appearances first?

11           MR. BROMLEY:  Good afternoon, Your Honor.  Thanks.

12   This is James Bromley from Cleary Gottlieb in behalf of the

13   UAW.

14           THE COURT:  Okay, Mr. Bromley.

15           MS. LENNOX:  Good afternoon, Your Honor.  This is

16   Heather Lennox of Jones Day on behalf of General Motors LLC for

17   which we refer to as New GM.

18           THE COURT:  Right.  Okay.  And I assume the two of

19   you folks will be the principal spokespeople on this

20   conference?

21           MS. LENNOX:  Yes, sir.

22           THE COURT:  Okay.

23           MR. BROMLEY:  That's correct.

24           THE COURT:  Each of the letters that I got seems to

25   make various requests from me.  Is there a recommended order in

Page 6

 1   terms of who I should allow to be heard first with the

 2   understanding that each of you guys is going to get the

 3   opportunity to respond and reply and, if need be, surreply?

 4           MS. LENNOX:  Your Honor, this is Ms. Lennox.  Since

 5   Mr. Bromley requested the conference that is apparently

 6   requesting a delay, I would defer to him to go first.

 7           THE COURT:  All right.  Mr. Bromley?

 8           MR. BROMLEY:  Thank you, Your Honor.  And thank you,

 9   Ms. Lennox.  I appreciate that.

10           Your Honor, we have a bit of an issue here because we

11   have two pending actions dealing with essentially the same set

12   of fact circumstances.  We have a complaint that has been filed

13   in the Eastern District of Michigan before Judge Cohn.  That

14   complaint was filed in April of this year.  Through agreement

15   of the parties --

16           THE COURT:  Pause, please, Mr. Bromley.  I'm having

17   some problems hearing you.

18           MR. BROMLEY:  I apologize, Your Honor.  I'll speak

19   louder.

20           THE COURT:  Yes.  Would you, please?  And tell me, in

21   particular, when the complaint was filed?

22           MR. BROMLEY:  Yes, Your Honor.  There is a -- as I

23   mentioned, there is a complaint that has been filed in the

24   Eastern District of Michigan before Judge Cohn.  It was filed

25   on April 6th, I believe, of this year.  It was served in

Page 7

1    September.  And the complaint has been answered by New GM.  And

2    a motion to strike certain affirmative defenses has also been

3    filed by the UAW before Judge Cohn.  There is a status

4    conference in that case scheduled for the 3rd of November.  And

5    the defendant has, I think, until the 4th of December -- I

6    mean, November, excuse me, to respond to the motion to strike.

7          Now, I should say that while the plaintiffs filed in

8    April, the issue underlying this was first joined in October of

9    2009 when the UAW made a demand on New GM to pay certain

10   amounts under what is known as the 2007 memorandum of

11   understanding, or MOU.  That demand was made immediately upon

12   the confirmation of the Delphi plan of reorganization and, in a

13   letter dated November 11th, 2009 to New GM, denied any

14   responsibility for making the payments that we claim are

15   required.  Now the MOU, this from 2007, relate to obligations

16   making payment of 450 million dollars, a very substantial sum,

17   into what was known in -- by various terms as old VEBA, the DC

18   VEBA, the dental VEBA or the existing external VEBA.  All those

19   are set out on terms and appear in various forms in different

20   documents.  So they are all the same -- refer to the same

21   vehicle.

22         So the UAW raised the issue in October, made demand

23   of payment in October of 2009.  The General Motors denied

24   responsibility in November and a complaint was filed in April

25   of 2010.  The complaint was served in September of 2010 and

Page 8

1    answered by New GM just this month in October.

2            THE COURT:  Pause, please, Mr. Bromley.  Delays in

3    service of process when you can't find the defendant are fairly

4    common.  But when you told me there was an apparent delay

5    between April and September in service of New GM whose address

6    I had always understood to be the one that you listed in the

7    complaint.  Was there a reason for the delay in service?

8            MR. BROMLEY:  Yes, Your Honor.  The parties were

9    attempting to work this out and the delay in service was an

10   agreement among the parties.

11           THE COURT:  All right.  Continue, please.

12           MR. BROMLEY:  And so, Your Honor, we did serve the

13   complaint in September and it has been answered.  The present

14   motion brought by New General Motors was filed just a week ago

15   and we have presently scheduled an objection deadline of the

16   2nd of November and a scheduled hearing date of the 9th of

17   November.  And it is the view of the UAW that this Court should

18   hold off on dealing with this motion in deference to the

19   existing action before Judge Cohn.

20           THE COURT:  All right.  Ms. Lennox?

21           MR. BROMLEY:  We understand that General Motors has

22   filed a motion and claims that there are exclusive jurisdiction

23   arguments relating to the sale order that approve the sale to

24   New GM.  But I think they miss the point which is that the

25   cause of action in Michigan does not relate to the sale order.

Page 9

1    What it relates to is an assumed contract between two nondebtor

2    parties and an obligation under that contract that is not

3    within the exclusive jurisdiction of this Court.

4            THE COURT:  Well, that's the matter to be decided,

5    isn't it, Mr. Bromley?

6            MR. BROMLEY:  Yes, it is, but that certainly is the

7    UAW's position.  And we believe that that issue has been joined

8    for Judge Cohn and that it should be allowed to proceed in that

9    way.

10           THE COURT:  Well, that's one of the reasons why I

11   have problems with each of your positions, folks.  But is there

12   anything else that I should hear from you now, Mr. Bromley,

13   before I hear from Ms. Lennox?

14           MR. BROMLEY:  At this point, Your Honor, I think

15   that's what we have to say to start.  But we certainly would

16   reserve our right to reply to Ms. Lennox.

17           THE COURT:  I understand.  All right.  Ms. Lennox?

18           MS. LENNOX:  Thank you, Your Honor.  Mr. Bromley got

19   the timing of the parties' interaction generally correct.  The

20   complaint was filed in April of 2010.  The parties did agree

21   and stipulated that service would be delayed until October 4th

22   of this year while the parties attempted to work out their

23   issues with respect to this dispute.  New GM made it perfectly

24   clear to the UAW throughout these discussions that they

25   believed that the UAW retiree settlement agreement that was

1    approved in this Court's sale order governed this dispute.  And

2    so certainly that was not a surprise to the UAW.  The parties

3    had settlement discussions and when the settlement discussions

4    seemed to break down, the UAW served the complaint on September

5    17th of this year.  Once it became evident that resolutions of

6    the dispute would not be forthcoming then New GM looked at the

7    provisions of the UAW retiree settlement agreement and

8    immediately sent the notice of dispute required under paragraph

9    26 of that agreement and it was required to wait twenty-one

10    days for the UAW to respond.  On the twenty-first day, the UAW

11    did respond with kind of the same arguments the parties had

12    discussed in the past.  And so, on the very next day, New GM

13    filed the motion that's before Your Honor.

14         I would say to Your Honor that while this is pending

15    because New GM had taken quite strong positions that this

16    matter is governed by the UAW retiree settlement agreement, New

17    GM had asked the UAW if it could have an extension to file an

18    answer in the Michigan district court because it believed quite

19    clearly that Your Honor has exclusive jurisdiction over this

20    issue.  And that request was denied.  So we were compelled to

21    file an answer so we wouldn't lose any rights in the Eastern

22    District of Michigan.  And we filed this motion just as soon as

23    we could in front of this Court.

24         We do believe that this dispute is governed by the

25    UAW retiree settlement agreement by what happens in the

Page 11

1   evidentiary record at the sale hearing.  And therefore,

2   pursuant to paragraph 71 of the sale order and paragraph 26 of

3   the UAW retiree settlement agreement, this Court has exclusive

4   jurisdiction over this matter.

5          THE COURT:  Pause, please, Ms. Lennox.  Aren't you

6   asking me to do the exact same thing that Mr. Bromley and that

7   I criticized him for?  You're asking me to assume the fact to

8   be decided?

9          MS. LENNOX:  Well, Your Honor, I'm not sure that we

10  need to assume facts that aren't already quite clearly laid out

11  in the agreements that Your Honor approved.  The UAW retiree

12  settlement agreement -- the issue, as Mr. Bromley framed it, is

13  about what payments need to be made by New GM to the new

14  VEBA and --

15         THE COURT:  I had understood subject --

16         MS. LENNOX:  -- was covered --

17         THE COURT:  No.  Ms. Lennox, you can't interrupt me.

18         MS. LENNOX:  I'm sorry, Your Honor.

19         THE COURT:  I had understood that subject to your

20  rights to be heard that the issue is to the extent of my

21  exclusive jurisdiction putting aside whether I later decide if

22  I do have exclusive jurisdiction to invoke it or to abstain, is

23  the extent to which one or another of the orders or documents

24  whose construction I would have exclusive jurisdiction over is

25  either dispositive or material to this controversy.  Do you

09-50026-mg   Doc 7652   Filed 11/01/10   Entered 11/04/10 17:12:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 12 of 28

Page 12

 1   think that's an inappropriate way of articulating the relevant

 2   issue as to my exclusive jurisdiction?

 3           MS. LENNOX:  No.  I think that's appropriate, Your

 4   Honor.

 5           THE COURT:  Okay.  Now I will need, at some point in

 6   this call if you agree or after appropriate due process if you

 7   can't, to get my arms around the extent to which the

 8   controversy requires me to look at documents whose

 9   interpretation is within my exclusive jurisdiction.  So if you

10   weren't going to cover that further now, you can.  But I'm also

11   going to need from Mr. Bromley his views as to that because it

12   appears to me that this thing may need to be sliced and diced

13   in a couple of phases.  First, to determine whether I have

14   exclusive jurisdiction, as a 1(a), I'll call it; second,

15   assuming that I do, whether I want to keep or invoke my

16   exclusive jurisdiction or abstain in favor of the federal

17   district court in the Eastern District of Michigan; and for

18   either me or Judge Cohn, whoever the ultimate adjudicator turns

19   out to be, a decision on the merits would need to be made.  I'd

20   like you to address that.  And what I need to do to enable each

21   of you guys to do your jobs to tee these matters up for

22   appropriate judicial determination -- one thing that troubles

23   me, folks, and I attribute no blame to either of you but it's a

24   problem that, from my perspective, I think needs to be

25   addressed is after you guys laudably, in my view, took six

09-50026-mg   Doc 7652   Filed 11/01/10   Entered 11/04/10 17:12:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 13 of 28

Page 13

1   months to try to settle the matter, now everything is going as

2   if it's a preliminary injunction motion that has to be decided

3   tomorrow on issues that have the potential of being a 450

4   million buck spread between the two of you and which requires

5   thoughtful adjudication wherever it's adjudicated.

6          So give me your thoughts on that, Ms. Lennox.  And

7   then I'm going to ask more from Mr. Bromley.  And I'm going to

8   then give you a chance to be heard after he has another chance

9   to be heard.

10          MS. LENNOX:  Thank you, Your Honor.  I think that

11   Your Honor's suggesting of perhaps dividing the issues into

12   jurisdiction and some merits certainly has some merit, Your

13   Honor.  Our view on exclusive jurisdiction is that the dispute

14   between the parties are governed by Your Honor's sale order and

15   by the UAW retiree settlement agreement.  To the extent that

16   the 2007 MOU that Mr. Bromley referenced is an assumed UAW CEA

17   in the purchase agreement between Old GM and New GM, that would

18   also fall within Your Honor's exclusive jurisdiction.

19          THE COURT:  Pause, please.  Did you say the 2007

20   agreement?

21          MS. LENNOX:  Yes, Your Honor.

22          THE COURT:  Help me understand that part of it

23   because I thought the UAW's position is they have rights under

24   the 2007 agreement which they contend survived.  And your

25   position is that the 2009 agreement is kind of like a defense

09-50026-mg   Doc 7652   Filed 11/01/10   Entered 11/04/10 17:12:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 14 of 28

Page 14

1    or a termination of the 2007 agreement.

2              MS. LENNOX:  Well, but there are items in the 2007

3    agreement, Your Honor, that went beyond this issue.  The 2007

4    agreement included things like what pension obligations -- at

5    the time that agreement, Your Honor, was made between Old GM

6    and Delphi and the UAW.  There are many other matters in that

7    agreement other than the matter that is -- the piece of that

8    agreement that is before Your Honor today.  For example, Old GM

9    had agreed to bring some of the Delphi retirees into its

10   pension plan and that arrangement carried through into this

11   bankruptcy.

12             The UAW has alleged in this complaint that the 2007

13   MOU was therefore a collective bargaining agreement that was

14   assumed and assigned to New GM.

15             THE COURT:  Okay.  Let me -- pause, please, Ms.

16   Lennox, because I want to make sure I'm keeping up with you.

17   You said that the 2007 agreement was assumed and assigned from

18   Old GM to New GM but the parties differ on the extent to which

19   it was modified by 2009 agreement?

20             MS. LENNOX:  That's, I think, certainly the UAW's

21   view as to how it was modified.  Our view also is to whether

22   conditions were satisfied is also an issue.

23             THE COURT:  Right.  Okay.  Continue, please.

24             MS. LENNOX:  So that being the case, that certainly

25   is another matter with respect to the sale agreement that is

MOTORS LIQUIDATION COMPANY, et al.

1    within this Court's exclusive jurisdiction.  And so, we

2    believe, Your Honor, that it's appropriate that Your Honor

3    exercise exclusive jurisdiction over this matter.

4           THE COURT:  Okay.  Further thoughts before I give Mr.

5    Bromley a chance to answer the same questions that I put to

6    you, Ms. Lennox?

7           MS. LENNOX:  No, Your Honor.

8           THE COURT:  Okay.  Before we go back to Mr. Bromley,

9    confirming and amplifying on something that I thought I saw in

10   the Jones Day letter although I'm not sure if you were the

11   signer of that or whether one of your colleagues was.  Hang on

12   a second.

13          MS. LENNOX:  I signed that letter, Your Honor.

14          THE COURT:  Oh, you did.  Forgive me.  I take it

15   you're cool -- although I guess I need to get the same answer

16   from Mr. Bromley -- to two adjustments in the briefing

17   schedules as to the issues that you have against each other.

18   One would be slowing things down in this Court to give Cleary a

19   little due process in the issues before me if there is an

20   agreement to disagree on my exclusive jurisdiction and slowing

21   things down before Judge Cohn in the Eastern District of

22   Michigan to allow me to make this threshold determination.

23          MS. LENNOX:  Yes, Your Honor, that's correct.  We

24   have no problem to an amendment to our briefing schedule before

25   Your Honor so long as the status quo is postponed in Michigan

09-50026-mg   Doc 7652   Filed 11/01/10   Entered 11/04/10 17:12:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 16 of 28

Page 16

1    as Your Honor articulated.

2          THE COURT:  Fair enough.  Back to you, please.

3          MR. BROMLEY:  Thank you, Your Honor.  Let me

4    address -- go back to the question that you posed to Ms. Lennox

5    which is, is it appropriate or reasonable to think that this

6    says something that could be sliced and diced, I think as you

7    said.  Thirdly, Your Honor, we do view that if this is going to

8    go forward before Your Honor that there does need to be an

9    adequate opportunity to deal with these issues.  We do think

10   they are material.  The amounts at issue are substantial.  And

11   the parties here are engaged in a familial relationship.

12   Obviously, the UAW and New General Motors are -- work hand in

13   glove every day on lots of issues.  But the -- this is

14   something that we do need to address.

15         The question of whether Your Honor has exclusive

16   jurisdiction we do think is worth separate briefing.  The

17   documents that Ms. Lennox references both in her motion and in

18   her letter are, I think, fair to describe as extraordinarily

19   complicated in many ways.  And the issues at hand relate to a

20   number of documents.  And the question, we think, actually

21   relates to a single document as to which the Court does not

22   have exclusive jurisdiction which is the Delphi 2007 MOU.  But

23   even if that is at issue, it is a document that is fifty pages

24   long.  There is a settlement agreement that is fifty pages

25   long.  There's a Thacher purchase agreement over a hundred

MOTORS LIQUIDATION COMPANY, et al.

1    pages.  The Delphi plan of reorganization itself is implicated.

2    The retiree settlement agreement of 2009 itself is another

3    thirty pages; sale order, another fifty pages.  These are

4    substantial documents that we don't believe are susceptible to

5    immediate disposition if the Court is inclined to go forward on

6    that basis.

7            But even leaving the documents aside, we do believe

8    that there are threshold issues relating to jurisdiction.  We

9    have raised in our letter in the footnote the first-filed

10   doctrine which we believe is implicated by the pre-existing

11   action in Michigan.

12           THE COURT:  You can brief that, Mr. Bromley, but do

13   you seriously believe that first to file is a defense to an

14   exclusive jurisdiction provision?

15           MR. BROMLEY:  (Indiscernible)

16           THE COURT:  I'm sorry.  I couldn't hear that.

17           MR. BROMLEY:  Well -- I'm sorry, Your Honor.  That

18   was not -- the -- I think that the question has to be fairly

19   put in the following way.  The action in Michigan relates to

20   the 2007 MOU and whether or not New GM has an obligation to

21   perform under it.  Now the defense of that, an affirmative

22   defense, is that it is somehow foreclosed by the exclusive

23   jurisdiction provisions of the sale order.  We believe it is

24   not and so are argued that the action in Michigan on the

25   underlying merits is on an agreement as to which this Court

MOTORS LIQUIDATION COMPANY, et al.

Page 18

1   does not have exclusive jurisdiction.  And I think the first

2   issue is which Court should control and to avoid the

3   possibility of inconsistent decisions and to avoid the

4   possibility of the wasting of judicial resources.

5           So from our perspective, we do think it is

6   appropriate to try to deal with it, first, as to which Court

7   should be handling it and only then go to the merits.

8           And as to the timing issue that you have raised, Your

9   Honor, we, too, are bothered by the idea that this dispute has

10  been outstanding between the parties since October of 2009.

11  And with respect to the complaint since April, there is no

12  emergency here that requires any compromise of a party's

13  ability to fully brief this, to have discovery, if necessary,

14  and to have a full and adequate hearing.  There's a -- the fact

15  is the demand for payment is a demand being made by the UAW.

16  That demand has been refused.  So there's nothing pending.

17  There's no emergency.  And so our view is that they should be

18  dealt with in an appropriate time frame to recognize the

19  magnitude of the issues and allow the parties to have their

20  full day in court, so to speak.

21          THE COURT:  All right.  And I take it a corollary of

22  that is that you agree with Ms. Lennox that if I determine that

23  I need to determine whether I have exclusive jurisdiction,

24  you're content with putting things on hold in the Eastern

25  District of Michigan until we determine the phase I issues as I

09-50026-mg    Doc 7652    Filed 11/01/10    Entered 11/04/10 17:12:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 19 of 28

                                                              Page 19

 1    articulated them before.

 2            MR. BROMLEY:  Well, Your Honor, I have to say that we

 3    are bothered by that.  We do believe that there's -- well,

 4    there is a status conference next Wednesday.  And there is a

 5    timeline for filing the responsive papers to the motion to

 6    strike.

 7            THE COURT:  Well, I think I could pick up the phone

 8    with Mr. Cohn -- Judge Cohen, excuse me -- and say listen, I've

 9    got a threshold issue.  I don't want to put the UAW in contempt

10    but I've got to find out whether what they did is violative of

11    my order.  Do you think he'd give me a hard time about kicking

12    a status conference?

13            MR. BROMLEY:  Well, Your Honor, I -- certainly, if

14    you place it that way, I suspect that the status conference

15    issue -- I suspect that judicial courtesy would dictate that he

16    would certainly entertain that.  So there is the deadline for

17    filing the response briefing by Thursday.

18            THE COURT:  Well, Mr. Bromley, I've had issues of

19    dueling jurisdiction before.  I've also had lawyers try to give

20    me this first-to-file argument.  I think I had this exact issue

21    in Adelphia when a bunch of people tried to enjoin the Time

22    Warner sale by bringing an antitrust suit in Minnesota a week

23    or two before an eighteen billion dollar deal was supposed to

24    go through.  And I called up my counterpart in Minnesota.  I'm

25    not sure if "counterpart" is the perfect word because he was a

Page 20

1   district judge and I'm just a bankruptcy judge.  But in about

2   eight seconds, we agreed that I wouldn't step on his toes and

3   we'd try to work cooperatively.  Do you have a problem with

4   that?

5          MR. BROMLEY:  Your Honor, we certainly understand the

6   need for judicial cooperation.  And we're trying to balance the

7   issues with respect to both sides.  And I understand the

8   suggestion that you're making.  I would have to -- I don't have

9   my client here in the room with me.  I have to discuss it with

10  them.  But I can do so very quickly.

11         THE COURT:  Well, you may want to let me know whether

12  you consent because I don't want to be in a position to enjoin

13  you in the next forty-eight hours, Mr. Bromley.

14         It appears to me that both of you guys are

15  procedurally overreaching when there is a serious underlying

16  issue here.  This is much more difficult to determine than

17  those dealership issues where the dealers were plainly subject

18  to the earlier orders in the General Motors case.  And they

19  tried to get a second bite at the apple or a third, if you

20  count their arbitrations, by going elsewhere.  If you are

21  wrong, Mr. Bromley, you're guilty of contempt.  If you're

22  right, then New GM is harassing you.  The converse is equally

23  true.

24         Now, I don't want to hold either side in contempt.

25  And I recognize as well or better than the two of you guys that

MOTORS LIQUIDATION COMPANY, et al.

1    you are in a familial relationship as you articulated it, Mr.

2    Bromley.  And I don't think the parties want to be acting like

3    jerks here.  We got to tee this up for a judicial determination

4    as to whether I have exclusive jurisdiction.  And if I do,

5    whether it's most sensible for me to exercise it or to put a

6    matter that I may not bring anything special to the table on in

7    the hands of the district judge even if I have exclusive

8    jurisdiction, those not being identical issues.

9             Now, my tentative, subject to both sides' rights to

10   be heard, is to slow this down on both fronts to tee up the

11   jurisdictional issue so I know whether or not I have exclusive

12   jurisdiction.  And if either side wants me to abstain, assuming

13   I do, whether I should abstain or not.  I don't want either

14   side putting a gun to the head of the other that's going to

15   deny its substantive rights.  Or, when you're talking about

16   procedural rights of this characters, they have substantive

17   effect.  So, as I said, my tentative is to slow this down, to

18   direct you guys to come up with a briefing schedule on whether

19   or not I have exclusive jurisdiction and whether I should

20   exercise it.

21            Then either Judge Cohn or I will decide the merits

22   depending on the outcome to the first two questions.  If it is

23   contended by either side that discovery is necessary to tee up

24   these issues on the merits or on the threshold procedural

25   issues, my tentative, subject to your respective rights to be

Page 22

1    heard, is to give each of you whatever discovery either side

2    wants assuming it's otherwise reasonable because whether I

3    decide it or Judge Cohn decides it, it's going to be necessary

4    at some point in time.  And I don't know at this juncture, but

5    I'll certainly invite you to give me your views, as to whether

6    any discovery is necessary on the threshold issues or not.  But

7    if and to the extent they are, on a 450 million buck matter,

8    I'm of the view to give you that as well.

9          Now, Mr. Bromley, I'm not looking for you to play

10   Let's Make a Deal, but I want you to respond on the merits to

11   my approach from a case management perspective.

12          MR. BROMLEY:  Thank you, Your Honor.  From a case

13   management perspective, I do believe that this is a matter of

14   magnitude that requires appropriate briefing.  I do believe

15   that if we are able to put both matters in a half suspended

16   automation that we should be able to reach an agreement on a

17   briefing schedule as well as whether or not any discovery is

18   required.  We certainly have historically had a very

19   cooperative relationship with counsel to both Old GM and New GM

20   and we believe that we can behave in the manners as to which

21   you expect, Your Honor, in making sure that we accommodate the

22   interests of the parties and the Court and give proper

23   deference to the magnitude of the issue.

24          So, from a procedural perspective, I do agree -- or a

25   case management perspective, if you will, that the proposal you

Page 23

1    made does make sense.  Like I said, I do need to contact my

2    client directly which we are in the process of doing in the

3    other room.  But I would like to defer for the moment that they

4    may hear Ms. Lennox's reaction to your proposal.

5            THE COURT:  All right.  Ms. Lennox?

6            MS. LENNOX:  Thank you, Mr. Bromley.  Your Honor, I

7    think we've articulated before that we think Your Honor's

8    approach is sensible and makes sense.  This certainly is an

9    issue of some magnitude and Mr. Bromley is correct.  We've

10   always had very cordial working relationships and I would

11   expect that to continue.

12           I think our initial view on certainly the first

13   matter about whether there's exclusive jurisdiction and that

14   matter would not require discovery though we'd certainly be

15   happy to talk that over with Mr. Bromley and come up with a

16   briefing schedule in answer to that question as well, Your

17   Honor.

18           THE COURT:  Okay.  Now I'm sure you'll understand.

19   I'm loathe to tell Judge Cohn what to do.  The way that I do

20   things like this is if somebody puts -- requires me to, I

21   enjoin the parties and not the judge.  But what I would much

22   prefer to do as my questions to mainly Mr. Bromley implied is

23   to get your consent for the avoidance of doubt so I can pick up

24   the phone to Judge Cohn and work with him so that I'm

25   respecting his jurisdiction and he's respecting mine.  I think

09-50026-mg    Doc 7652    Filed 11/01/10    Entered 11/04/10 17:12:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 24 of 28

Page 24

1    that's especially so because I think the issue, as you may know

2    from the Rally transcript, is not whether the Michigan district

3    court has subject matter jurisdiction of this controversy.  I

4    think it plainly does.  It's a classic 1331 issue.  But the

5    issue for -- that is ultimately dispositive is not whether it

6    has subject matter jurisdiction because, as I noted in the

7    Rally thing, state courts have subject matter jurisdiction in

8    over practically everything that comes through their doors, but

9    whether the forum that doesn't have exclusive jurisdiction has

10   to stay its hand in exercising its subject matter jurisdiction

11   in deference to the earlier exclusive jurisdiction provision

12   which, I think, even the Supreme Court has stated is something

13   that is worthy of respect.

14          So, am I correct, Ms. Lennox, that you don't object

15   to me conferring with Judge Cohn also?

16          MS. LENNOX:  No, Your Honor.  We do not object to

17   that.

18          THE COURT:  All right.  So then if I -- if and when

19   we get the consent from the UAW, that is no longer an issue.

20          MS. LENNOX:  Correct, Your Honor.

21          THE COURT:  All right.  Now I do have the power, of

22   course, to manage my own docket.  So on the matter that is

23   before me, you're to agree upon a mutually satisfactory

24   briefing schedule for determining both of what I called the

25   1(a) and 1(b) issues.  In your briefs, I want you particularly

Page 25

```
 1   to focus on the extent to which the controversy before you,

 2   which is now pending in the Eastern District of Michigan or

 3   which has been fleshed out most in the Eastern District of

 4   Michigan, requires me to make -- requires a judge -- me, if New

 5   GM is right; Judge Cohn, if the UAW is right -- to construe or

 6   enforce one or more documents that were subject to the

 7   exclusive jurisdiction provisions of the 363 sale order that

 8   was entered into in July 2009 or any other order that I

 9   entered.  Now it's my general understanding, subject to your

10   rights to be heard, that there may be an issue of both

11   contractual interpretation and order interpretation.  But

12   because when I read the papers in preparation for this call, I

13   only each side's view of the world on one issue and you hadn't

14   completed briefing, I don't know if my understanding is right

15   or not.  You are to tee up the issues as you see fit.

16          Mr. Bromley, I need you to tell me by --

17          MR. BROMLEY:  Your Honor, can I interrupt you for one

18   second?  I apologize.

19          THE COURT:  Yes.  Go ahead.

20          MR. BROMLEY:  I have an answer to this question that

21   you're about to ask.  We just asked -- we do consent to you

22   contacting Judge Cohn and we will cooperate on delaying that

23   schedule.

24          THE COURT:  Okay.  Well, what I'm going to encourage

25   Judge Cohn to do, assuming he's amenable, is to let me do my
```

MOTORS LIQUIDATION COMPANY, et al.

Page 26

1   job and decide whether this is something where I have exclusive

2   jurisdiction and to ask him to cut me some slack on the

3   scheduling.  And I'll put it appropriately, of course, but the

4   idea is that neither he nor I be fighting with each other in

5   terms of a jurisdictional battle.  I got to tell you, in ten

6   years as a bankruptcy judge, I've never had a battle with

7   another federal judge and I'm sure this is going to be no

8   different.  But obviously, I got to discuss it with him.

9        So, as you get off the phone, I want you to work up a

10  schedule for teeing this up for judicial determination in a way

11  that satisfactorily meets both of your needs.  Focus on the

12  discovery front on (a)whether either sides wants or needs

13  discovery on what I'll call the 1(a) and 1(b) issues; and,

14  secondly, whether since the merits, if you can't settle, are

15  going to have to be determined somewhere anyhow, whether you

16  might as well get to work on any discovery associated with that

17  portion., it appearing to me that the discovery will be

18  substantially the same whether it's decided in the Southern

19  District of New York or in the Eastern District of Michigan.

20        Anything else, anybody?

21        MS. LENNOX:  Not from us, Your Honor.

22        MR. BROMLEY:  Your Honor, just one question to --

23  this is Jim Bromley.  So for the time being, the existing

24  objection deadline of the 2nd and the hearing date of the 9th

25  are extended out without a date pending the briefs of the

MOTORS LIQUIDATION COMPANY, et al.

Page 27

1    parties and the approval of the Court of a new briefing

2    schedule.  Is that --

3              THE COURT:  Are you talking about deadlines before

4    me?

5              MR. BROMLEY:  Yes, Your Honor.

6              THE COURT:  Yes.  Anything that I have the power to

7    control, I'm putting in abeyance subject to being papered in a

8    new superseding scheduling order.

9              MR. BROMLEY:  Thank you, Your Honor.  That's what I

10   assumed.  I just wanted to confirm.

11             THE COURT:  But I am not, in this call especially,

12   changing Judge Cohn's schedules.  I think I need to talk to him

13   about that.

14        (Pause)

15             THE COURT:  And I propose to do that as soon as I get

16   off the phone here.

17             MS. LENNOX:  Thank you, Your Honor.

18             THE COURT:  Okay.

19             MR. BROMLEY:  Thank you, Your Honor.  We appreciate

20   the conference.

21             THE COURT:  Very well.  Have a good day.

22             MS. LENNOX:  Thank you very much.

23             THE COURT:  Right.  We're adjourned.

24        (Whereupon these proceedings were concluded at 3:46 p.m.)

25

Page 28

1

2                          C E R T I F I C A T I O N

3

4       I, Lisa Bar-Leib, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6       Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, o, ou,
                          email=digital1@veritext.com,
                          c=US
7       _____    Date: 2010.11.01 10:59:12 -04'00'

8       LISA BAR-LEIB

9       AAERT Certified Electronic Transcriber (CET**D-486)

10

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16      Date:  November 1, 2010

17

18

19

20

21

22

23

24

25