UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11 Case No.:
                                              :
MOTORS LIQUIDATION COMPANY, et al.,           :        09-50026 (REG)
f/k/a General Motors Corp., et al.,           :
                                              :
                        Debtors.              :        (Jointly Administered)
                                              :
------------------------------------------------------------x

**OBJECTION OF CERTAIN MESOTHELIOMA CLAIMANTS TO
(I) SUBPOENAS ISSUED BY THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO CERTAIN ASBESTOS
SETTLEMENT TRUSTS AND CLAIMS PROCESSING
FACILITIES, AND (II) RELATED ORDERS OF
THE BANKRUPTCY COURT**

This objection is submitted on behalf of victims of mesothelioma who are clients of one

of the undersigned tort counsel and who, through their respective counsel, have received notice

of document subpoenas (the "**Subpoenas**") issued by the Official Committee of Unsecured

Creditors (the "**UCC**") to certain asbestos settlement trusts and claims processing facilities.

Those clients (the "**Objecting Mesothelioma Victims**") hereby object to the aforementioned

Subpoenas and to the Orders of this Court under color of which the UCC has issued the

Subpoenas.   In support of their objection (the "**Objection**"), the Objecting Mesothelioma

Victims respectfully state as follows:

1.    By order dated August 24, 2010, this Court implemented a bench ruling of

August 9, 2010, granting the motion of the UCC, pursuant to Bankruptcy Rule 2004, for

authority to serve the Subpoenas on the Delaware Claims Processing Facility and Claims

Resolution Management Corporation (the "**Claims Processing Facilities**") with respect to

certain information of the Armstrong World Industries, Inc. Asbestos Personal Injury Settlement

Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens

Corning/Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust,

the United States Gypsum Asbestos Personal Injury Settlement Trust, and the Manville Personal

Injury Settlement Trust (together, the "**Trusts**").   A copy of that order (the "**UCC R. 2004**

**Order**") is annexed to this Objection as **Exhibit A**.   For the purposes of an anticipated contested

proceeding for the estimation of the Debtors' aggregate liability for pending and future asbestos

personal injury and wrongful death claims, the UCC R. 2004 Order authorized the UCC to issue

the Subpoenas so as to direct the Trusts to produce specified information that an estimated 7,400

mesothelioma claimants have submitted to the Trusts through the Trusts' respective Claims

Processing Facilities.   In particular, the Subpoenas demand:

> (a) the claim information electronically maintained by the Trust(s)
> in current datafield format for each identifiable Mesothelioma
> Claimant, as supplied by each claimant and/or his or her counsel to
> the Trust(s), but excluding medical and financial information
> (other than date of mesothelioma diagnosis) and medical and
> financial records; (b) the amounts paid to each Mesothelioma
> Claimant by each Trust; and (c) the claim status of each
> Mesothelioma Claimant who filed a claim against any Trust but
> has received no recovery from that Trust (*i.e.*, whether that claim is
> still pending or has instead been dismissed).

UCC R. 2004 Order ¶ 5 at 4.

2.     The Subpoenas are subject to two other Orders of this Court, namely, a

Confidentiality Agreement and Protective Order dated August 24, 2010 (the "**Confidentiality**

**Order**"), and an Order concerning the ACC's request for an Anonymity Protocol dated October

22, 2010 (the "**Anonymity Protocol Order**").   Copies of these Orders are annexed hereto as

**Exhibit B** and **Exhibit C** respectively.

3.     The Subpoenas are also conditioned on, and subject to, the right of "Mesothelioma

Claimants . . . to file an objection with this Court to the disclosure of the information sought in

- 3 -

the Subpoenas." UCC R. 2004 Order ¶ 6.[1]  This Court required the Trusts to provide notice to

"all identifiable Mesothelioma Claimants who have filed a claim against one or more of the

Trusts, or to such claimants' counsel." *Id.*  An exemplar of the notices issued by the Trusts is

**Exhibit D** hereto.  As set forth in such notices, the deadline for the filing of objections on the

part of Mesothelioma Claimants is November 8, 2010.  The Objecting Mesothelioma Victims are

persons entitled to avail themselves of the objection procedure established by this Court in its

UCC R. 2004 Order, and this Objection is timely.

4.    This Court has stated that persons in the position of the Objecting Mesothelioma

Victims shall not be heard as to issues the Court deems resolved by its August 9, 2010 oral ruling

on the UCC's R. 2004 application.  In that bench ruling, this Court overruled certain objections

asserted by the Trusts and by the Official Committee of Unsecured Creditors Holding Asbestos–

Related Claims (the "**ACC**"), and then went on to state as follows with reference to the scope of

objections it would entertain later from individual claimants:

> It's been pointed out to me that several of the trusts'
> agreements require notice to claimants before information in those
> claimants' claim files is provided.  While I think that the
> procedures we've put in place and will put into place, would
> provide claimants with adequate protection of any confidential
> information, especially as the creditors' committee has narrowed
> its request, I don't want to step on the toes on [*sic*, of] my brother
> and sister bankruptcy judges and either disregard procedures they
> approved or deny claimants' protections that my colleagues
> thought were appropriate.
>
> Thus, I'm going to direct that notice and opportunity to be
> heard be provided to individual claimants whose information is to
> be provided, with a reasonable period – I'm thinking of two weeks
> – after notice to file an objection to me as to disclosure.  I won't

---

[1]  The UCC R. 2004 Order uses the term "Mesothelioma Claimants," but does not set forth a
definition of that term.    From the context, this term seems to refer to a list of persons provided
to the Claim Processing Facilities and the Trusts by Bates White LLC, based on information
supplied to that firm by the Debtors and General Motors LLC.  *See* UCC R. 2004 Order ¶ ¶ 3-4.

> hear any further objection with respect to any matters I've now
> ruled upon, nor, of course, with respect to any litigants normal
> desire to avoid assistance to his or her adversary. But I will hear
> any and all objections with respect to whether the confidentiality
> agreements, orders and other protective mechanisms are adequate,
> or any other legitimate confidentiality concerns that I may have
> overlooked, have been satisfactorily protected, or those which I've
> focused on or otherwise, don't go sufficiently far to provide
> necessary protection.

Transcript of Hearing of August 9, 2010, at 104-05, <u>In re Motors Liquidation Co</u>. (Bankr.

S.D.N.Y. Aug. 9, 2010) (No. 09-50026) (annexed hereto as **<u>Exhibit E</u>**).

## <u>SUMMARY OF OBJECTIONS</u>

5.      The Objecting Mesothelioma Victims hereby object to the Subpoenas issued to the

Trusts, as well as to the UCC R. 2004 Order, the Confidentiality Order, and the Anonymity

Protocol Order, on the following grounds, each of which is explained in greater detail below:

(a)      It was a violation of due process to issue the UCC R. 2004 Order without

affording affected individuals a prior right to be heard on any and all objections to the relief

provided therein.

(b)      The Subpoenas are overbroad and oppressive insofar as they purport to

require the production of information from third-parties with respect to persons whose claims

against the Debtors' predecessors (collectively, "**<u>Old GM</u>**") were closed before this bankruptcy

was filed and with respect to persons who never sued Old GM in the first place.

(c)      The UCC R. 2004 Order, the Confidentiality Order, and the Anonymity

Protocol Order do not provide adequate protection against misuse of the claims data and payment

amounts that the Trusts are asked to disclose. Although that information is ostensibly requested

solely for purposes of estimating the Debtors' total asbestos liability, there is an unacceptable

likelihood that it will be used, directly or indirectly, against asbestos claimants in the liquidation

of their claims against against third-parties.  The UCC's claims estimation expert, Bates White LLC ("**Bates White**")[2] is subject to a blatant conflict of interest that gives it a strong incentive to seek out and exploit the Trusts' information for purposes extraneous to this case.  Charles H. Mullin, Ph.D., who is a principal of Bates White and participates actively in Bates White's engagement by the UCC, is also a principal in a firm known as Litigation Resolution Group LLC ("**LRG**").  LRG is in the business of seeking to acquire, for a price, the asbestos liabilities of defendant companies.  If Dr. Mullin and LRG receive the data the UCC has subpoenaed from the Trusts, their resulting knowledge will place them in a position of unique and unfair advantage in the tort system, both as consultants to clients and as a speculators in asbestos liabilities for the account of LRG.  Given the nature of the discovery, the role of Bates White, and the inter-relationships between Bates White, Dr. Mullin, and LRG, the Confidentiality Order and the Anonymity Protocol Order cannot realistically prevent abuse.

## FIRST OBJECTION

### Due Process Required that Affected Individuals Be Afforded Prior Notice and an  Opportunity to Be Heard When the Court Ruled on Whether Information Originating with, and Pertaining to, those Individuals Is Properly Discoverable

6.     The Objecting Mesothelioma Victims were absent when this Court granted the UCC's discovery application, albeit conditionally, and decreed that only certain narrow issues would be available for individual claimants to raise at a later stage in this matter.  These individuals received no notice or opportunity to be heard before this Court ruled on fundamental aspects of the dispute at hand.  This manner of proceeding did not comport with due process because it is the individual claimants, rather than the objectors who were before the Court on August 9, 2010, whose interests are most keenly implicated by the extraordinary discovery being

---

[2]   *See* UCC R. Order ¶ 3 (describing Bates White as "the estimation experts retained in this case by the Creditors' Committee." *Id.* ¶ 3.

sought.   In particular, (a) the Objecting Mesothelioma Victims are the ultimate sources of information the Trusts have been directed to produce, (b) that information directly touches and concerns their personal legal, medical, and financial interests, (c) they provided that information to the Trusts in a legitimate expectation of confidentiality, and (d) no court in the tort system (whose results a claims estimation proceeding in bankruptcy should be designed to replicate) has ever authorized wholesale discovery of claim and payment information from the Trusts or other co-defendants before.

7.    What the UCC was seeking at the hearing on August 9, 2010, was medical and other personal information of and pertaining to individual asbestos claimants, including the Objecting Mesothelioma Victims, albeit information that happened to be in the hands of the Trusts and the Claims Processing Facilities.   In that situation, we respectfully submit, it was fundamentally unfair and violative of the claimants' due process rights for the Court to rule that this information falls within the proper scope of discovery without affording the affected individuals an opportunity to be heard beforehand.   *See* <u>Connecticut v. Doehr</u>, 501 U.S. 1, 11 (1991) (citing <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976)) (explicating the test for ascertaining when due process requires prior notice and opportunity to be heard).   The affected individuals have significant privacy rights and other legal interests in the information at stake.   By ruling, even provisionally, that third-party stakeholders should be subpoenaed for that information, without affording those individuals a hearing before making that determination, the Court ran a high and unacceptable risk of erroneously depriving them of their rights and impairing their interests.   The UCC had no legitimate interest in having that question decided without the individuals' participation.  Affording the affected individuals a *post hoc* opportunity to object on circumscribed grounds without reopening the broader question of whether the discovery is

appropriate does not provide them with sufficient protections.  Due process requires that the

Court allow them to raise and be heard on any objection they might have raised had they been

made respondents to the UCC's Rule 2004 application in the first instance.  *See* <u>Doehr</u>, 501 U.S.

at 11.

## SECOND OBJECTION

### The UCC Should Not Be Permitted to Pursue Discovery Regarding Individuals Whose Former Tort Claims against Old GM Have Been <u>Resolved or Who Never Sued the Debtors' Predecessors for Asbestos Torts</u>

8.    The Trusts' Notices list as "Mesothelioma Claimants," and thus purportedly as

subjects of the Subpoenas, a large number of persons whose claims against GM are no longer

open.  Also included on the lists are persons who never filed a claim against GM in the first

place.  The fundamental premise of the Subpoenas is that the need to estimate the Debtors'

overall asbestos liability justifies the UCC in seeking discovery of claims made by the Debtors'

asbestos creditors against ***other*** asbestos defendants.  That premise, itself, is dubious, since, in

the tort system, Old GM's tort liability would depend upon whether ***its own*** products or activities

caused or substantially contributed to causing its tort claimants' asbestos-related injuries.  But,

granting that premise for the sake of argument, any effort by the UCC to take discovery of the

Trusts concerning persons whose claims Old GM settled before bankruptcy presents a different

set of considerations.  Just as Old GM extinguished by settlement any risk of liability to such

persons on their previously asserted claims, so the settling claimants also bought peace.  Among

the benefits of settlement for a tort plaintiff are freedom from the intrusions of further discovery.

The UCC should not be permitted to upset that peace and inflict upon them discovery that was

curtailed by settlement; much less should it receive license to intrude into those persons'

submissions to third-party settlement trusts.  According to the UCC's R. 2004 application, of the

7,400 mesothelioma claims that were ever brought against Old GM before it filed for bankruptcy, fully 5,000 are resolved claims. The UCC's effort to probe the information that individuals who formerly held those claims have provided to Trusts unrelated to Old GM, and the payments, if any, those Trusts have made to them, is plainly in derogation of Old GM's settlements and violates rights conferred by those settlements upon the individuals involved. There is no good reason to permit this.

9.    All the more so, there is no excuse for allowing the UCC to gather discovery about individuals who never even asserted an asbestos claim against Old GM. Each law firm that has received the Trusts' notices regarding the Subpoenas should have the right to identify to the Trusts those individuals listed in those notices as "Mesothelioma Claimants" who are not and have never been claimants against GM, according to the law firm's records. The Trusts should produce no information regarding those identified individuals, even if the Subpoenas are otherwise enforced.

## THIRD OBJECTION

### The Court Lacks Effective Means of Preventing Bates White From Exploiting Discovery in this Matter for the Benefit of Litigation Resolution Group, an Entity That Is Related to Bates White Through a Common Principal

10.    The UCC has identified Bates White, LLC, as its claims consultant for the purposes of the anticipated asbestos claims estimation proceeding. That firm and certain of its principals, including Charles Bates, Ph.D. and Charles Mullin, Ph.D., are active in asbestos disputes on behalf of a wide range of solvent asbestos defendants, bankrupt asbestos defendants, and insurance companies, and market the services of their firm to other similar entities. To name just a few, their current clients in asbestos matters include the debtors in the bankruptcy cases of Specialty Products Holding Corp., pending in the United States Bankruptcy Court for the District

of Delaware,[3] and Garlock Sealing Technologies, LLC, pending in the Western District of North

Carolina,[4] as well as Century Indemnity Company, Winterthur Swiss Insurance Company, and

Yasuda Fire and Marine Insurance Company (U.K.), Ltd. in the bankruptcy case of Leslie

Controls, Inc.,[5] pending in the District of Delaware.

11.     Upon information and belief, Dr. Charles Mullin, a principal of Bates White, has

worked actively with the UCC in pursuing discovery of the Trusts in this matter.   Dr. Mullin

recently gave a deposition upon oral examination in <u>Leslie Controls</u>.  A copy of the transcript of

that deposition is annexed to this Objection as **<u>Exhibit F</u>**. The deposition has revealed that, in

addition to the role he plays at Bates White, Dr. Mullin is ***in the business*** of attempting to

acquire financial responsibility for asbestos liabilities from asbestos defendants with a view to

managing and resolving those liabilities at a profit.

12.     Dr. Mullin testified that he is a principal in a company named Litigation Resolution

Group.  *See* Exh. F at 167.  This affiliation is not listed on his resume.  *See id.* at 167-68; *see also*

Resume of Charles H. Mullin, Ph.D. (annexed hereto as **Exhibit G**).[6]  Dr. Mullin describes

Litigation Resolution Group (or "**<u>LRG</u>**"), as a startup company that "tries to facilitate business

transactions for entities facing liabilities."  Exh. F at 168 (lines 9-10).  More specifically, LRG

offers "a financial instrument" as an alternative to section 524(g) trusts for the benefit of

companies facing asbestos liabilities.  Dr. Mullin explained:

> It's a financial transaction.  It's – unlike 524(g), where it's a ruling
> from a bankruptcy court with a congressionally-backed channeling

---

[3]   Case No. 10-11780 (JKF) (Bankr. D. Del.).

[4]   Case No. 10-31607 (Bankr. W.D.N.C.).

[5]   Case No. 10-12199 (Bankr. D. Del.).

[6]    Exhibit G is a copy of the resume that Dr. Mullin attached to a declaration in support of an objection filed by some insurers to the plan of reorganization in <u>Leslie Controls</u>.  That declaration was marked as Exhibit 1 to his deposition in that case.

> injunction, and that's how you're getting your sense of finality or
> your reaching [sic], what LRG will do for a client is it will quantify
> a litigation risk that they assess. ***It will underwrite that litigation
> risk and offer to take it on for a price***.

Exh. F at 171 (lines 6-13) (emphasis added). Although LRG has not yet actually consummated

such a transaction, Dr. Mullin and his colleagues have had "meaningful interaction with" a

number of companies facing asbestos liabilities (his testimony indicates "less than 10"). *Id.* at

172 (lines 12-19). Dr. Mullin's testimony makes clear that this "startup" is actively seeking

business and "hoping to succeed one day." *Id.* at 173 (line 3).

13.    LRG holds itself out as providing an alternative to a section 524(g) bankruptcy

plan, by means Dr. Mullin described upon deposition as follows:

> I think we can look at that more in the context of various
> bankruptcies that have occurred in the past. I think we — if I were
> to use a concrete example, I think LRG in its — would have gladly
> taken on the liabilities of the company like USG for $2 billion
> instead of the 4 billion that they paid to get 524(g). I think the
> shareholders of USG, we didn't exist at that point in time, but I
> think the shareholders of USG would have been prepared to pay $2
> billion less.
>
> Q.    If you took on the liabilities of USG for $2 billion,
> how would it relieve USG of its asbestos liabilities going forward?
>
> A.    In one form or another, there would have been some
> form of, as it says in here, large capped indemnification.

Exh. F at 174-75.

14.    As shown in an excerpt from LRG's website (marked as Exhibit 3 to Dr. Mullin's

deposition in <u>Leslie Controls</u> and reproduced here as **<u>Exhibit H</u>** to this Objection), the company

markets its alternative to section 524(g) relief (*see id.* at 1) through an "Asbestos Case Study" on

the "Defense-side." *Id.* at 5. A summary of the "Asbestos Case Study" explains that LRG's

clients receive certainty in regard to the direct costs of their litigation and relief from the indirect

costs of the litigation.  *Id*.  Elsewhere, the website provides a more detailed discussion, which

states in part:

> Through its alternative risk transfer transactions, LRG is willing to assume both the financial risks and day-to-day management of companies asbestos and other underlying long-tailed litigation. LRG and our investors assume the financial risks and the client is removed from the litigation process and relieved from both the direct and indirect costs of the litigation.

LRG Website, Asbestos Case Study at 1 (excerpts annexed as **Exhibit I**).  It goes on to explain:

> The contract provides a capped indemnification that effectively channels future claims away from the client to LRG.  Claimants still name the client company and legal proceedings, but LRG now stands in the client's shoes with regard to all aspects of the covered liability.

Exh. I at 5-6.

15.    Attached hereto as **Exhibit J** is a copy of the "Contact Us" page of the LRG

website.  It lists the address for Litigation Resources Group as 1300 Eye Street, NW, Suite 650E,

Washington, DC 20005.   Notably, the corresponding page of the website of Bates White

(annexed as **Exhibit K**) lists its address as 1300 Eye Street, NW, Suite 600, Washington, DC

20005.   Upon information and belief, LRG occupies a section of Bates White's offices in

Washington, so that access to LRG's offices is gained only through Bates White's reception area.

16.    Notably, LRG's website touts that firm's connection to Bates White.   On the

webpage entitled "OUR TEAM/ CHARLES H MULLIN PHD" (reproduced as **Exhibit L**

hereto), LRG makes this statement:

> As a founding member of LRG, Dr. Mullin is responsible for marshalling and coordinating the legal, financial, and valuation expertise required to assess and manage client transactions.  Dr. Mullin also works with members and representatives of both firms to adapt Bates White's valuation models for use in potential LRG transactions.

Exh. L. at 2.  Dr. Mullin is featured as one of the two principal contact persons, along with Dr.

Bates, in Bates White's website discussion of its "Environmental and Products Liability"

practice group (excerpts of which are attached as **Exhibit M**), which encompasses that firm's

work in bankruptcy and reorganization support, financial reporting, fraudulent conveyance, and

insurance analysis and support, among other things.  *See* Exh. M at 1-4.

17.    The foregoing information should be of vital interest to the Court.  None of the

UCC's submissions in pursuit of its Rule 2004 discovery informed the other parties or the Court

that a key principal of Bates White who was actively assisting the UCC to shape its discovery

requests and to justify those requests to the Court has a business interest, not limited to this case,

in obtaining access to settlement information of third parties.  It should be obvious that if Dr.

Mullin obtained that information through the UCC's discovery here, it would be invaluable to

him in his efforts, through LRG, to step into the shoes of asbestos defendants and manage and

resolve their asbestos liabilities for the economic benefit of LRG and its shareholders.  When

negotiating a resolution of mesothelioma liabilities on behalf of an LRG client, Dr. Mullin would

then be in the unique position of knowing precisely what the same or similar claimants had

received by way of compensation from other responsible tortfeasors.  In the tort system, such

sensitive settlement information is universally treated as highly confidential; neither defendants

nor plaintiffs freely share such information precisely because it would afford their counterparties

in litigation and settlement negotiations a material and unfair advantage.

18.    Nor is it payment information alone that would inure to LRG's undue advantage.

Product exposure and product identification evidence extracted from the Trusts could be even

more valuable to LRG and Dr. Mullin in efforts to purchase asbestos liabilities from defendants

and in managing the defense of any such purchased liabilities.  For example, many still-solvent

defendants take the controversial (and usually unfounded) position that their products are much less dangerous than products made by other manufacturers using asbestos in more "friable" forms.  In litigating a given tort claim, such a defendant might wish to argue that the jury should exonerate its product on the ground that the proximate cause of the plaintiff's injuries must have been some other entity's more "dusty" product.  Characteristically, though, such defendants are reluctant to devote resources to the laborious and costly case-by-case search for alternative sources of asbestos exposures that they might hold up to the jury as the "true" causes of the plaintiff's disease, in contrast to their own ostensibly "harmless" products.  If Dr. Mullin is permitted to use the UCC's Subpoenas as a vehicle for extracting from seven or eight Trusts complete information about the place and time of product exposures documented by as many as 7,400 persons, he will gain for LRG a trough of data that will allow it or its clients to circumvent the limits and costs of discovery in the tort system and gain an enormous advantage over asbestos plaintiffs' and plaintiffs' counsel who lack any comparable resource.

19.    To give a simple example, suppose that Plaintiff *A* discloses his work history in standard discovery responses and thus reveals that, although his main career was as a mechanic and his principal asbestos exposures were to friction products, he worked for a short period of time as a construction worker at location *Z*.  Suppose further that five longtime construction workers who have no connection with Plaintiff *A* also worked at location *Z* and submitted to the Owens Corning/Fibreboard Asbestos Personal Injury Trust affidavits or invoices indicating that Kaylo, a highly friable asbestos product, was used at that site.  Nothing in their submissions suggests that presence of Kaylo was known to Plaintiff *A* during his time at that site.

20.    If Dr. Mullin obtains the other claimants' submissions from the Trust through the UCC's subpoenas, LRG or any defendant whose asbestos liabilities it acquires or manages will

be able to draw a connection between Kaylo and Plaintiff *A* that neither he nor his tort counsel have uncovered or could uncover without expending substantial effort and expense. In asbestos litigation, that kind of advantage translates into dollars and cents in the ultimate resolution of the claims. To allow LRG to accumulate massive amounts of product identification evidence through the vehicle of the UCC's Subpoenas — ostensibly issued solely for estimation purposes in MLC's bankruptcy case — would add up to a serious distortion of the balance of interests and burdens between plaintiffs and defendants in discovery and case preparation processes in the tort system. No doubt, such consequences would be directly contrary to the firm intention this Court expressed, when it granted the UCC's Rule 2004 application, to protect asbestos claimants from use of the estimation discovery in "one-on-one" litigation of their claims against third persons. But those consequences would follow in the tort system nonetheless.

21.    The Confidentiality Order and the Anonymity Protocol Order do not and cannot provide adequate protection against the risks inherent in Dr. Mullin's role and interest in LRG. The Confidentiality Order imposes on recipients of the designated information a legal obligation to refrain from disclosing or using that information except within prescribed limits. *See* Confidentiality Order at 2-3. The Anonymity Protocol Order requires that, after matching the Trusts' produced data to other data sources available, Bates White and other experts must omit from the combined data certain details that would tend to reveal the identity of a Mesothelioma Claimant and then to use only the "anonymized" data set for purposes of their analyses in this case (except that the data in the original form produced is available to the experts for "matching" with other data, criticizing the "matches" made by other experts, and defending their own "matches"). *See* Anonymity Protocol ¶ 3. But neither of these orders can empty the minds of Dr. Mullin or other LRG personnel working with Bates White in this matter or compel them to

forget information gleaned from the Trusts' data productions if the discovery goes forward in the manner contemplated by the Subpoenas.  LRG would have a pronounced business interest in that information and, implicitly if not explicitly, would trade on the information as it seeks to acquire and hedge the financial risks of asbestos liabilities from prospective clients.  It is utterly unrealistic to suppose that Dr. Mullin would or could disregard knowledge gained by studying data handed over by the Trusts when he dons his LRG hat and negotiates a purchase of liability risk from an asbestos defendant or, having consummated such a transaction, attempts to negotiate settlements with individuals who have asbestos claims against that defendant.

22.    The Confidentiality Order and the Anonymity Protocol Order cannot stop Dr. Mullin and his firms from gaining unique and undue advantage if they receive claim information and payment data obtained under the UCC's Subpoenas.  That abuse can only be forestalled by preventing Dr. Mullin and all others in comparable positions from obtaining access to such information and data in the first place.  The Court faces a stark choice:  Either it must quash the Subpoenas or else it must require the UCC to replace Bates White with an entity that has no connection to Dr. Mullin or LRG and no interest in the outcome of asbestos tort claims.  Otherwise, the UCC's discovery in the estimation proceeding will be used against individuals in "one-on-one" litigation, contrary to the Court's announced objective when it authorized service of the Subpoenas, and serious prejudice to the Objecting Mesothelioma Claimants will certainly result.

- 16 -

WHEREFORE, the Mesothelioma Claimants respectfully object to the UCC R. 2004

Order, the Confidentiality Order, and Anonymity Protocol Order, and the UCC's Subpoenas.

Dated:  November 8, 2010                          Respectfully submitted,

/s/ Robert W. Phillips
Robert W. Phillips, *Admitted Pro Hac Vice*
Simmons, Browder, Gianaris, Angelides
& Barnerd LLC
707 Berkshire Boulevard
East Alton, IL 62024
Phone 618-259-2222
Fax 618-259-2251
rphillips@simmonsfirm.com

/s/ Jeffrey Simon
Jeffrey Simon
J. Bradley Smith
Simon Eddins & Greenstone LLP
3232 McKinney Avenue, Suite 610
Dallas, TX 75204
Phone 214-276-7680
Fax 214-276-7699
jsimon@seglaw.com
bsmith@seglaw.com

/s/ Garrett J. Bradley
Garrett J. Bradley
Thornton and Naumes LLP
100 Summer Street, 30th Floor
Boston, MA  02110
Phone 617-720-1333
Fax 617-720-2445

/s/ Peter Kraus
Peter Kraus
Leslie MacLean
Waters & Kraus LLP
3219 McKinney Avenue
Dallas, TX 75204
Phone 214-357-6244
Fax 214-357-7252

/s/ Robert E. Paul
Robert E. Paul
Paul, Reich & Myers
1608 Walnut Street
Philadelphia, PA 19103
Phone 215-735-9200

/s/ Ethan Early
Ethan Early
Early, Ludwick, Sweeney & Strauss
360 Lexington Avenue, 20th Floor
New York, NY 10017
Phone 212-986-2233
Fax 212-986-2255

/s/ Paul M. Matheny
Paul M. Matheny
Law Office of Peter G. Angelos, P.C.
100 North Charles Street, 22nd Floor
Baltimore, MD 21201
Phone 410-649-2000
Fax 410-649-2111
pmatheny@lawpga.com

/s/ Mark C. Meyer
Mark C. Meyer
Goldberg, Persky & White
1030 - Fifth Avenue, 3rd Floor
Pittsburgh, PA 15219-6295
Phone 412-471-3980
Fax 412-471-8308
mmeyer@gpwlaw.com

/s/ Diane Paolicelli
Diane Paolicelli
Jerome H. Block
Levy Phillips & Konigsberg LLP
800 Third Avenue
New York, NY 10022
Phone 212-605-6250
dpaolicelli@lpklaw.com
jblock@lpklaw.com

/s/ Charles Finley
Charles Finley
Williams Kherkher Hart Boundas LLP
8441 Gulf Freeway, Suite 600
Houston, TX 77017
Phone 713-230-2200
Fax 713-643-6226
cfinley@williamskherkher.com

/s/ J. Rae Lovko
J. Rae Lovko
Paul and Hanley LLP
1608 Fourth Street, Suite 300
Berkeley, CA 94710
Phone 510-559-9980

/s/ Barry Julian
Barry Julian
Gori Julian & Associates P.C.
156 North Main Street
Edwardsville, IL 62025
Phone 618-307-4085
Fax 618-659-9834
barry@gorijulianlaw.com

/s/ Al Brayton
Al Brayton
Christina Skubic
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
Phone 415-898-1555
Fax 415-898-1247
abrayton@braytonlaw.com
cskubic@braytonlaw.com

- 19 -

/s/ Andrew O'Brien
Andrew O'Brien
O'Brien Law Firm, P.C.
815 Geyer Avenue
St. Louis, MO 63104
Phone 314-588-0558
Fax 314-588-0634
Obrien@obrienlawfirm.com

/s/ Hal Pitkow
Hal Pitkow
Attorney-at-Law
The Falls at Lambertville
351 S. Main Street
Lambertville, NJ 08530
Phone 609-397-5551
Fax 609-397-7004
pitkow@aol.com

/s/ Scott A. Britton-Mehlisch
Scott A. Britton-Mehlisch
Humphrey, Farrington & McClain, P.C.
221 West Lexington Avenue, Suite 400
Phone 816-398-7435
Fax 816-836-8966
sbm@hfmlegal.com

/s/ J. David Butler
J. David Butler
Richardson, Patrick, Westbrook &
Brickman, LLC
1730 Jackson Street
Barnwell, SC 29812
Phone 803-541-7850
dbutler@rpwb.com

/s/ Michael B. Leh
Michael B. Leh
Locks Law Firm
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
mleh@lockslaw.com

/s/ W. Lee Gresham, III
W. Lee Gresham, III
Heninger Garrison Davis LLC
2224 1st Avenue North
Birmingham, AL 35203
Phone 205-326-3336
Fax 205-326-3332
lee@hgdlawfirm.com

/s/ Ethan A. Flint
Ethan A. Flint
Saville & Flint, LLC
112 Magnolia Dr.
P.O. Box 930
Glen Carbon, IL 62034
Phone 618-288-4777
Fax 618-288-2864
eflint@toverdict.com

/s/ Michael C. Shepard
Michael C. Shepard
The Shepard Law Firm, P.C.
10 High Street
Boston, MA 02110
Phone 617-451-9191
Fax 617-451-9292
mshepard@shepardlawfirm.com

/s/ Joseph W. Belluck
Joseph W. Belluck
Brian T. Fitzpatrick
Belluck & Fox LLP
546 Fifth Avenue, 4th Floor
New York, NY 10036
Phone 212-681-1575
Fax 212-681-1574
jbelluck@belluckfox.com
bfitzpatrick@belluckfox.com

/s/ Shepard A. Hoffman
Shepard A. Hoffman
The Hoffman Law Firm
9400 North Central Expressway
Suite 608
Dallas, TX 75231
Phone 214-521-2211
Fax 214-522-0420
shoffman@shepardhoffman.com

/s/ Thomas M.Wilson
Thomas M. Wilson
Kelley & Ferraro LLP
2200 Key Tower
127 Public Square
Cleveland, OH 44114
Phone 216-575-0777
Fax 216-575-0799
twilson@kelley-ferraro.com

/s/ Jonathan Ruckdeschel
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
5126 Dorsey Hall Drive, Suite 201
Elliott City, MD 21042
Phone 410-884-7825
Fax 443-583-0430
ruck@rucklawfirm.com

/s/ Kathleen A. Farinas
Kathleen A. Farinas
Linda George
George & Sipes LLP
151 N. Delaware Street, Suite 1700
Indianapolis, IN 46204
Phone 317-637-6071
Fax 317-685-6505
kf@lgrslaw.com

/s/ John Ned Lipsitz, Esq.
John Ned Lipsitz, Esq.
Lipsitz & Ponterio, LLC
135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
Phone 716-849-0701
Fax 716 849-0708
jnl@lipsitzponterio.com

/s/ Deirdre W. Pacheco, Esq.
Deirdre W. Pacheco, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Dr., Box 10
Woodbridge, NJ 07095
Phone 732-636-8000
Fax 732-726-6627
dpacheco@wilentz.com

/s/ Joseph Rice, Esq.
Joseph Rice, Esq.
John A. Baden, IV, Esq.
Nathan Finch, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Phone 843-216-9124
Fax 843-216-9450
jrice@motleyrice.com
jbaden@motleyrice.com
nfinch@motleyrice.com

/s/ Bryan Blevins, Esq.
Bryan Blevins, Esq.
Provost Umphrey LLP
490 Park Street, P.O. Box 4905
Beaumont, TX 77704
Phone 409-299-5178
Fax 409-838-8888
bblevins@provosthumphrey.com

*Counsel for Their Respective Clients*
*Who Are Objecting Mesothelioma Victims*

- 23 -