# EXHIBIT B

# CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

This Confidentiality Agreement and Protective Order (this "Agreement") is hereby entered into, as of the date set forth below, by and between Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors (collectively, the "Debtors"), the Official Committee of Unsecured Creditors of Motors Liquidation Company, *et al.* (the "UCC"), the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "ACC"), the Legal Representative for Future Asbestos Claimants (the "FCR"), the Delaware Claims Processing Facility and Claims Resolution Management Corporation (together, the "Claims Processing Facilities"), the Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust, the United States Gypsum Asbestos Personal Injury Settlement Trust, and the Manville Personal Injury Settlement Trust (collectively, the "Trusts"), and General Motors LLC ("New GM"). The Debtors, the Claims Processing Facilities, the Trusts, and New GM are sometimes referred to in this Agreement individually as a "Producing Person" and collectively as the "Producing Persons." The Debtors, UCC, ACC, FCR, Claims Processing Facilities, Trusts and New GM are sometimes referred to in this Agreement individually as a "Party" and collectively as the "Parties."

WHEREAS on June 1, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Case No. 08-12229 (REG) (the "Bankruptcy Cases"); and

WHEREAS, on June 3, 2009, the Office of United States Trustee appointed the UCC pursuant to section 1102 of the Bankruptcy Code [Docket No. 356]; and

WHEREAS on October 7, 2009, the Debtors consummated the sale of substantially all of their assets to New GM pursuant to that certain Amended and Restated Master Sale and Purchase Agreement, dated June 26, 2009, as amended, and an order of the Bankruptcy Court dated July 6, 2009 [Docket No. 2968]; and

WHEREAS, on March 2, 2010, the Office of United States Trustee appointed the ACC pursuant to section 1102 of the Bankruptcy Code [Docket No. 5206]; and

WHEREAS, on April 8, 2010, the Bankruptcy Court entered an order appointing Dean M. Trafelet as Legal Representative for the FCR [Docket No. 5459]; and

WHEREAS, on July 20, 2010, the UCC filed a *Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents by (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (ii) General Motors LLC and the Debtors* [Docket No. 6383] (the "UCC 2004 Requests"); and

WHEREAS, on July 20, 2010, the ACC filed an *Application of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures Authorizing and Directing (A) The Production of Documents and (B) the*

*Oral Examination of Individuals Designated by the Debtors and Believed to Have Knowledge of the Relevant Matters* [Docket No. 6382] (the "ACC 2004 Requests"); and

WHEREAS, on July 20, 2010, the FCR filed an *Application for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing and Directing (a) The Production of Documents and (B) the Oral Examination of Individuals Designated by the Debtors and New GM Believed to Have Knowledge of Relevant Matters* [Docket No. 6379] (the "FCR 2004 Requests," and together with the ACC 2004 Requests, the "Asbestos-Related 2004 Requests"); and

WHEREAS, on August 5, 2010, the Debtors, the ACC, the FCR and New GM entered into an agreement (the "ACC/FCR 2004 Agreement") resolving the Asbestos-Related 2004 Requests, whereby the ACC and FCR agreed to withdraw the Asbestos-Related 2004 Requests, and the Debtors and New GM agreed to provide certain documents and information to the ACC and the FCR (the "Responsive Documents"), which Responsive Documents the ACC and the FCR have sought in order to evaluate the Debtors' asbestos liability for purposes of settlement and, if necessary, in connection with a contested hearing to establish the estimated amount of the Debtors' asbestos liability solely in connection with the Bankruptcy Cases (the "Estimation Proceeding"); and

WHEREAS, the Responsive Documents may contain the social security numbers of certain claimants or portions of such numbers; and

WHEREAS, on August __, 2010, the Bankruptcy Court entered an order (the "UCC 2004 Order") granting, subject to certain modifications, the UCC 2004 Requests, whereby New GM is required (i) to produce to the Claims Estimation Experts (defined below) the names and, where available, complete social security numbers (such numbers, whether or not complete, being referred to below as the "SSN Information") of the plaintiffs who filed pre-petition asbestos personal injury lawsuits against one or more of the Debtors, and (ii) to produce to the UCC the following documents (the "Case File Documents"): the complaints, case-specific interrogatory responses submitted by plaintiffs, and transcripts of the depositions of plaintiffs in the approximately 650 mesothelioma cases identified on the list that the UCC has provided to the Debtors and New GM; and

WHEREAS, as used in this Agreement, the term "SSN Information" does not refer to social security numbers, or portion of such numbers, contained in Responsive Documents producible under the ACC/FCR 2004 Agreement, but is reserved for the complete social security numbers producible by New GM under the UCC 2004 Order; and

WHEREAS, the UCC 2004 Order authorizes the UCC to subpoena the following information from the Claims Processing Facilities and the Trusts in electronic form (the "Trust Information"): (a) the claim information electronically maintained by the Trust(s) in current datafield format for each identifiable claimant who filed a pre-petition asbestos personal injury lawsuit against one or more of the Debtors for mesothelioma (each a "Mesothelioma Claimant," and collectively the "Mesothelioma Claimants"), as supplied by each claimant and/or his or her counsel to the Trust(s), but excluding medical and financial information (other than date of diagnosis) and medical and financial records; (b) the amounts paid to each Mesothelioma

2

Claimant by each Trust; and (c) the claim status of each Mesothelioma Claimant who filed a claim against any Trust but has received no recovery from that Trust (i.e., whether that claim is still pending or has instead been dismissed); and

WHEREAS, the UCC 2004 Order provides that Bates White LLC will provide to the Claims Processing Facilities and the Trusts certain information (the "Identifying Information") pertinent to the identification of the Mesothelioma Claimants; and

WHEREAS, the Responsive Documents, the Trust Information, the Case File Documents and the Identifying Information are sometimes referred to collectively in this Agreement as the "Confidential Estimation-Related Information"; and

WHEREAS, the UCC seeks the SSN Information and certain Confidential Estimation-Related Information in order to evaluate the Debtors' asbestos liability for purposes of settlement and, if necessary, in connection with the Estimation Proceeding; and

WHEREAS, the improper disclosure of SSN Information or Confidential Estimation-Related Information in violation of this Agreement may result in irreparable harm; and

WHEREAS, as of the date of this Agreement, the following professionals retained by the Debtors will be assisting the Debtors in the Estimation Proceeding: Hamilton, Rabinovitz & Associates, Inc. and Weil, Gotshal & Manges LLP (as may be supplemented, collectively the "Debtor Retained Professionals"); and

WHEREAS, as of the date of this Agreement, the following professionals retained by the UCC will be assisting the UCC in the Estimation Proceeding: Bates White LLC, Kramer Levin Naftalis & Frankel, LLP and FTI Consulting, Inc. (as may be supplemented, collectively the "UCC Retained Professionals"); and

WHEREAS, as of the date of this Agreement, the following professionals retained by the ACC will be assisting the ACC in the Estimation Proceeding: Legal Analysis Systems, Inc. and Caplin & Drysdale, Chartered (as may be supplemented, collectively the "ACC Retained Professionals"); and

WHEREAS, as of the date of this Agreement, the following professionals retained by the FCR will be assisting the FCR in the Estimation Proceeding: Analysis, Research and Planning Corporation and Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation (as may be supplemented, collectively the "FCR Retained Professionals," and, together with the Debtor Retained Professionals, the UCC Retained Professionals and the ACC Retained Professionals, the "Retained Professionals"); and

WHEREAS, Hamilton, Rabinovitz & Associates, Inc., Bates White LLC, Legal Analysis Systems, Inc., and Analysis, Research and Planning Corporation are sometimes referred to in this Agreement individually as a "Claims Estimation Expert" and collectively as the "Claims Estimation Experts"; and

3

WHEREAS, the UCC, the ACC, the FCR, and the Debtors are sometimes referred to in this Agreement individually as an "Estimation Party" and collectively as the "Estimation Parties"; and

WHEREAS, the UCC, the ACC, the FCR, the Debtors, the Claims Estimation Experts, all other Retained Professionals, and any other person receiving SSN Information or Confidential Estimation-Related Information under color of this Agreement are sometimes referred to in this Agreement individually as a "Receiving Party" and collectively as the "Receiving Parties"; and

WHEREAS, this Agreement is intended to (i) facilitate the delivery of the SSN Information from New GM to the Claims Estimation Experts and (indirectly) to the Claims Processing Facilities and the Trusts, and establish the Claims Estimation Experts', Claims Processing Facilities', and Trusts' obligations with respect to the confidentiality of such information; and (ii) facilitate the delivery of Confidential Estimation-Related Information from the Producing Persons to the Receiving Parties, and establish the obligations of the Receiving Parties with respect to the confidentiality of such information;

NOW THEREFORE, in consideration of the foregoing, and as a condition to (i) New GM providing the SSN Information to the Claims Estimation Experts and (indirectly) to the Claims Processing Facilities and the Trusts, and (ii) the Producing Persons providing the Confidential Estimation-Related Information to the Receiving Parties, the Parties hereby agree as follows:

A.   *Handling of SSN Information Produced by New GM*

1. Pursuant to the UCC 2004 Order, New GM will provide SSN Information directly to the Claims Estimation Experts, and the Claims Estimation Experts will maintain the SSN Information in a confidential manner pursuant to this Agreement. The SSN Information so provided shall be made available only to (i) the Claims Estimation Experts' respective employees who have a need to know it in connection with the Estimation Proceeding and (ii) the other Claims Estimation Experts in connection with the Estimation Proceeding, including any discovery relating to the Estimation Proceeding or an opposing Claims Estimation Expert's reports, analysis or estimation methodology. If, however, in connection with the review of a Claims Estimation Expert's report, analysis, or estimation methodology, an opposing Claims Estimation Expert or counsel to the Estimation Party who retained such opposing Claims Estimation Expert concludes, in the exercise of his or her sole professional discretion, that access to SSN Information is necessary, such opposing Claims Estimation Expert shall provide the SSN Information to such counsel (including such counsel's secretaries, legal assistants and paralegals), to the extent requested by such counsel, subject to the obligations and restrictions of this Agreement. Promptly after the conclusion of the final evidentiary hearing in the Estimation Proceeding, any Estimation Party's counsel who has received disclosure of SSN Information under the procedure described in the preceding sentence of this Section 1 shall give written notice of such disclosure to New GM. The Retained Professionals shall (a) inform their respective employees of the employees' confidentiality obligations under this Agreement and (b) be liable for any breach by their employees of the confidentiality obligations set forth in this Agreement. Notwithstanding any other provision of this Agreement, Bates White LLC may

4

furnish the SSN Information to the Claims Processing Facilities and Trusts for the purpose of identifying the Mesothelioma Claimants.

2. The Claims Processing Facilities and Trusts will receive SSN Information indirectly through Bates White LLC, and the Claims Processing Facilities and Trusts will maintain the SSN Information in a confidential manner pursuant to this Agreement and use the SSN Information only in connection with their production of the Trust Information to the Debtors, UCC, the ACC, the FCR, and any other Receiving Parties. The Claims Processing Facilities and Trusts will not, without New GM's prior written agreement, disclose, disseminate or otherwise make available the SSN Information to anyone other than to those of the Claims Processing Facilities' and Trusts' employees and counsel who have a need to know it in order for the Claims Processing Facilities and Trusts to fulfill their obligations under this Agreement and the UCC 2004 Order to produce the Trust Information to the Debtors, the UCC, the ACC, the FCR, and any other Receiving Parties; provided, that the Claims Processing Facilities and Trusts will (a) inform such employees of the employees' confidentiality obligations under this Agreement and (b) be liable for any breach by their employees of the confidentiality obligations set forth in this Agreement.

3. The Claims Processing Facilities, Trusts and the Retained Professionals shall each provide for physical, managerial and electronic security of the SSN Information such that the SSN Information is reasonably maintained and secured, ensuring it is safe from unauthorized access or use during utilization, transmission and storage. Should any unauthorized breach of the confidentiality of the SSN Information occur, the applicable Claims Processing Facility, Trust or Retained Professional shall notify New GM as soon as reasonably practicable, but not later than two business days after such Party first becomes aware of such breach.

4. Each person who obtains access pursuant to this Agreement to the SSN Information must sign an acknowledgement of the confidentiality provisions described in this Agreement; provided, however, that with respect to multiple individuals employed by the same entity, the obligation to sign an acknowledgment may be satisfied by the signing of an acknowledgment by a single person having authority to bind the entity. The acknowledgment form is attached hereto as Exhibit 1. Copies of the signed acknowledgment form shall be contemporaneously served on the signatories hereto.

5. The Retained Professionals are strictly prohibited from using the SSN Information, any summaries or redacted copies derived therefrom, or any knowledge obtained therefrom, for any purpose not directly related to the Estimation Proceeding. Without limiting the generality of the foregoing, neither SSN Information nor any analyses, conclusions, summaries, or redacted copies derived therefrom may be (a) publicly disclosed in any way, (b) used as an undisclosed source in any article, study, research, editorial, publication or scholarly work, or (c) incorporated into or merged with any preexisting database that is to be used or maintained for any purpose other than the Estimation Proceeding.

6. If an Estimation Party's counsel, having received access to SSN Information from the Claims Estimation Expert for such Estimation Party pursuant to the procedure described in the second sentence of paragraph 1 of this Agreement, reveals or places any such SSN Information on the record at any deposition in the Estimation Proceeding, that

5

SSN Information shall be marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," and shall be subject to the terms of this Agreement.

7. In the event any Claims Processing Facility, Trust or Retained Professional receives a request to disclose any of the SSN Information in connection with any judicial proceeding, government investigation, or other inquiry (whether by oral questions, interrogatories, requests for information or documents, subpoena or any other process), such Claims Processing Facility, Trust or Retained Professional (a) shall notify New GM five business days prior to the requested date of production to allow New GM to give notice to relevant claimants and seek a protective order from the appropriate court or government agency, (b) during such period of five business days, shall assert and maintain an objection to the request on the basis of the protected nature of the SSN Information hereunder, and (c) shall not voluntarily disclose SSN Information pending a resolution of any request for a protective order timely made by New GM. Thereafter, the applicable Claims Processing Facility, Trust or Retained Professional may disclose the SSN Information only to the extent required by law, subject to any applicable protective order. For the avoidance of doubt, nothing in this Agreement shall prevent or restrict each Claims Processing Facility, Trust and/or and Retained Professional from complying in good faith with a court order that has become operative and has not been stayed.

8. Upon the later of (a) entry of a final non-appealable order in the Estimation Proceeding and (b) the effective date of a plan of liquidation in the Debtors' Bankruptcy Cases, each of the Claims Processing Facilities, Trusts and Retained Professionals will return all SSN Information to New GM or, at New GM's request, destroy the SSN Information and certify such destruction in writing to New GM.

9. No provision of Section A of this Agreement shall apply to partial or complete social security numbers contained in the Responsive Documents producible under the ACC/FCR 2004 Agreement. The handling of social security numbers, partial or complete, contained in the Responsive Documents shall instead be governed by Section B of this Agreement.

B. *Handling of Confidential Estimation-Related Information*

10. The relevant Producing Persons will produce the Confidential Estimation-Related Information to the Receiving Parties in accordance with the UCC 2004 Order and the ACC/FCR 2004 Agreement, as applicable. The Confidential Estimation-Related Information must be maintained by the Receiving Parties in a manner consistent with the obligations and restrictions imposed herein.

11. As a precautionary measure, but not as a precondition to protection, any Confidential Estimation-Related Information separate from the electronic database information shall be stamped "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

12. All Confidential Estimation-Related Information shall be maintained by the Receiving Parties on a "professionals' eyes only" basis. The Confidential Estimation-Related Information shall be made available only to (i) Retained Professionals, including the Retained Professionals' respective employees (including outside counsel's secretaries, legal

assistants and paralegals) who have a need to know it in connection with the Estimation Proceeding, and (ii) witnesses (and their counsel) in preparation for testimony in the Estimation Proceeding, provided that such persons have subjected themselves to this Agreement by executing, or by having had executed on their behalf, a Confidentiality Agreement in one of the forms attached hereto as <u>Exhibit 1</u>.  The Retained Professionals shall (a) inform their respective employees of the employees' confidentiality obligations under this Agreement, and (b) be liable for any breach by their employees of the confidentiality obligations set forth in this Agreement.

13. The Receiving Parties shall each provide for physical, managerial and electronic security of the Confidential Estimation-Related Information such that the same is reasonably maintained and secured, ensuring it is safe from unauthorized access or use during utilization, transmission and storage.  Should any unauthorized breach of the confidentiality of the Confidential Estimation-Related Information occur, the Receiving Party involved in the breach shall notify the relevant Producing Person as soon as reasonably practicable, but not later than two business days after such Party first becomes aware of such breach.

14. The Receiving Parties are strictly prohibited from using the Confidential Estimation-Related Information, any summaries or redacted copies derived therefrom, or any knowledge obtained therefrom, for any purpose not directly related to the Estimation Proceeding. Without limiting the generality of the foregoing, neither Confidential Estimation-Related Information nor any analyses, conclusions, summaries, or redacted copies derived therefrom may be (a) publicly disclosed in any way, (b) used as an undisclosed source in any article, study, research, editorial, publication or scholarly work, or (c) incorporated into or merged with any preexisting database that is to be used or maintained for any purpose other than the Estimation Proceeding.

15. If Confidential Estimation-Related Information is used, revealed or inquired about at any deposition, any Confidential Estimation-Related Information contained in transcripts of such deposition shall be marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," and shall be subject to the terms of this Agreement.

16. The Receiving Parties may not disclose the Confidential Estimation-Related Information to the individual members of the UCC, the ACC, or the FCR or any other person, but may prepare and disclose to the individual members of the UCC, the ACC or the FCR summaries or copies derived from Confidential Estimation-Related Information but redacted so as not to include the name or social security number of any claimant or any other detail that would reveal the identity of any claimant.  Such summaries and copies disclosed to the individual members of the UCC, the ACC, or the FCR may be used solely for the purposes of the Estimation Proceeding or the settlement thereof and shall be subject to any confidentiality obligations imposed on such individuals in connection with their service in such capacities in the Bankruptcy Cases, in addition to the obligations imposed by this Agreement.

17. Each person that obtains access pursuant to this Agreement to the Confidential Estimation-Related Information must sign an acknowledgement of the confidentiality provisions described in this Agreement, provided, however, that with respect to multiple individuals employed by the same entity, the obligation to sign an acknowledgment may be satisfied by the signing of an acknowledgment by a single person having authority to bind the

7

entity. The acknowledgment form is attached hereto as <u>Exhibit 1</u>. Copies of the signed acknowledgment form shall be contemporaneously served on the signatories hereto.

18. Within sixty (60) days after the later of (a) entry of a final non-appealable order in the Estimation Proceeding and (b) the effective date of a plan of liquidation in the Debtors' Bankruptcy Cases, the Receiving Parties shall completely destroy and/or erase all Confidential Estimation-Related Information, and all summaries, copies, reports, compilations, documents, electronic files, and databases, whether or not redacted, that contain any part or portion of the Confidential Estimation-Related Information; provided, however, that (i) counsel for the Debtors, the UCC, the ACC, and the FCR may retain briefs and other papers filed in the Estimation Proceeding, transcripts of depositions and hearings in the Estimation Proceeding, exhibits used at such depositions and hearings, and any expert reports prepared for the purposes of the Estimation Proceeding, and (ii) each Claims Estimation Expert may retain transcripts of any deposition or hearing testimony given by its employees or representatives, and any expert reports prepared for the purposes of the Estimation Proceeding. Within the same sixty (60) day timeframe, each Receiving Party shall provide the Producing Persons with written confirmation of such destruction in the form attached hereto as <u>Exhibit 2</u>.

19. In the event any Receiving Party receives a request to disclose any Confidential Estimation-Related Information in connection with any judicial proceeding, government investigation, or other inquiry (whether by oral questions, interrogatories, requests for information or documents, subpoena or any other process), such Receiving Party (a) shall notify the Producing Person at least five business days prior to the requested date of production to allow such Producing Person to give notice to relevant claimants and seek a protective order from the appropriate court or government agency, (b) during such period of five business days, shall assert and maintain an objection to the request on the basis of the protected nature of the Confidential Estimation-Related Information hereunder, and (c) shall not voluntarily disclose Confidential Estimation-Related Information pending a resolution of any request for a protective order timely made. Thereafter, the Receiving Party may disclose Confidential Estimation-Related Information only to the extent required by law, subject to any applicable protective order. For the avoidance of doubt, nothing in this Agreement shall prevent or restrict any Receiving Party from complying in good faith with a court order that has become operative and has not been stayed.

**C.**    *<u>General Provisions</u>*

20. Nothing in this Agreement (including without limitation paragraph 14 and 18) shall restrict any person's right to make lawful use of

    a. any discrete data set or materials that came into the possession of such person lawfully and free of any confidentiality obligation prior to the production of data or materials pursuant to this Agreement;

    b. any exhibit or other document that is placed

8

      on the public record in the Estimation Proceeding in conformity with the restrictions set forth in paragraph 21 of this Agreement, or any data or material that is or becomes publicly available other than by a breach of this Agreement; or

  c. any discrete data set or materials developed by or on behalf of such person independent of any SSN Information or Confidential Estimation-Related Information produced by any of the Producing Persons.

  21. In the event that, in the course of the Estimation Proceeding, any Party intends to offer into evidence or otherwise use SSN Information or Confidential Estimation-Related Information in connection with testimony or filings in the Bankruptcy Court, or any reviewing court, such party may not divulge SSN Information or Confidential Estimation-Related Information except when the following conditions are met: (i) such information is directly relevant to the Estimation Proceeding, (ii) there is no reasonable manner to provide such directly relevant information without disclosing SSN Information or Confidential Estimation-Related Information, and (iii) such Party has first utilized its best efforts to maintain the confidentiality of the SSN Information and Confidential Estimation-Related Information, including by seeking an order, on reasonable notice to the Producing Persons, which provides that such information shall be filed under seal, redacted or reviewed by the Bankruptcy Court (or any other court) in camera, as appropriate, and that any hearing, deposition or other proceeding be closed and limited to attendance by persons subject to the terms of this Agreement. Notwithstanding the foregoing, in the course of the Estimation Proceeding and for the purposes thereof, a Party may use in the Bankruptcy Court, or any reviewing court, summaries or copies derived from SSN Information or Confidential Estimation-Related Information but redacted so as not to reveal the name or social security number of any claimant or any other detail that would reveal the identity of any claimant.

  22. If a Producing Person inadvertently produces information subject to the attorney-client privilege, the work product doctrine, or any other privilege or immunity, such inadvertent production shall not constitute a waiver of any applicable privilege or immunity. The Receiving Party shall, upon written request by the Producing Person, promptly and within 14 days of receipt of such request, return the information for which a claim of inadvertent production is made, destroy all copies of that information which may have been made, destroy all notes or other work product reflecting the contents of that information, and delete that information from any database, provided that such written request by the Producing Person be made within 14 days of learning of the inadvertent production. The Receiving Party returning the information may then move to compel production of the information, but that motion shall not rely on, or assert as a ground for the motion, any information contained in the inadvertently produced information or the fact or circumstances of the inadvertent production.

  23. This Agreement shall benefit and be binding upon the Parties and their respective successors and assigns

9

24. This Agreement shall continue to be binding after the conclusion of the Bankruptcy Cases.

25. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to choice of law principles and shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

26. The Parties consent to the entry of this Agreement by the Bankruptcy Court.

27. This Agreement shall become effective as of the date it is entered by the Bankruptcy Court.

28. The Parties acknowledge that in the event of a wrongful disclosure of SSN Information or Confidential Estimation-Related Information by a Receiving Party, any damages incurred by the Party who produced the wrongly disclosed information under this Agreement may be difficult if not impossible to ascertain, and that such Party shall be entitled to injunctive relief, in addition to any monetary damages or sanctions that may be available according to proof, against the Receiving Party for a disclosure in breach of this Agreement.

29. The Receiving Parties that are signatories hereto acknowledge that they are aware and will advise their representatives that the United States securities laws restrict persons with material non-public information about a company obtained directly or indirectly from that company from purchasing or selling securities of such company and from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

30. This Agreement constitutes the entire understanding between the Parties with respect to the SSN Information and Confidential Estimation-Related Information provided hereunder and supersedes any prior understandings or agreements with respect to those subject matters, other than that certain Agreement Regarding Rule 2004 Applications entered into on or about August 5, 2010, by and among the Debtors, New GM, the ACC, and the FCR.  No amendment or modification of this Agreement shall be valid or binding on the Parties unless made in writing and executed on behalf of each Party by its duly authorized representative.

31. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Facsimile signatures to this Agreement shall be deemed binding upon the Parties.

32. Each Party represents that it has caused this Agreement to be executed on its behalf as of the date written below by a representative empowered to bind that Party with respect to the undertakings and obligations contained herein.

*[signatures on next page]*

Executed as of this ___ day of August, 2010.

| | |
|---|---|
| s/Philip Bentley<br>Kramer Levin Naftalis & Frankel LLP<br>*Counsel to the Creditors' Committee* | s/Stephen M. Juris<br>Morvillo, Abramowitz, Grand, Iason,<br>Anello & Bohrer, P.C.<br>*Counsel to Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Owens Corning/ Fibreboard Asbestos Personal Injury Trust, the DII Industries, LLC Asbestos PI Trust, the United States Gypsum Asbestos Personal Injury Settlement Trust, and the Delaware Claims Processing Facility* |
| s/Stephen Karotkin<br>Weil, Gotshal & Manges LLP<br>*Counsel to the Debtors* | s/Emily A. Stubbs<br>Timothy Haggerty<br>Friedman Kaplan Seiler & Adelman LLP<br>*Counsel to Manville Personal Injury Settlement Trust and Claims Resolution Management Corporation* |
| s/Joseph R. Sgroi<br>Honigman Miller Schwartz & Cohn LLP<br>*Counsel to New GM* | s/Trevor W. Swett<br>Caplin & Drysdale, Chartered<br>*Counsel for the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims* |

s/Sander L. Esserman
Stutzman, Bromberg, Esserman & Plifka
*Counsel to Future Claims Representative*

    SO ORDERED THIS *24TH* DAY OF AUGUST, 2010

       *S/ ROBERT E. GERBER*
       UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :    Case No. 09-50026 (REG)
MOTORS LIQUIDATION COMPANY, et al.                           :    Jointly Administered
         f/k/a General Motors Corp., et al                   :
                                                             :
                 Debtors.                                    :
                                                             :
                                                             :
-------------------------------------------------------------x
```

## **CONFIDENTIALITY AGREEMENT ACKNOWLEDGMENT--ENTITY**

       1.    My name is _____.  I am employed by _____ and am authorized to bind _____.

       2.    I have read the Confidentiality Agreement and Protective Order ("<u>Agreement</u>"), and a copy of it has been given to all persons/employees being provided with copies of or access to Confidential Estimation-Related Information.

       3.    I understand the provisions of the Agreement, and agree that _____ and its employees shall comply with and be bound by its terms.

       4.    I understand that sanctions, monetary damages, and injunctive relief may be entered against _____ for violation of the terms of the Agreement. _____ consents to personal jurisdiction over it by the United States Bankruptcy Court for the Southern District of New York with respect to the Agreement and this Acknowledgement.

Executed this \_\_\_ day of _____, 20\_\_.

_____
Signature

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
:
In re:                                              :       Chapter 11
                                                    :       Case No. 09-50026 (REG)
MOTORS LIQUIDATION COMPANY, et al.                  :       Jointly Administered
      f/k/a General Motors Corp., et al      :
                                                    :
                      Debtors.             :
                                                    :
                                                    :
-------------------------------------------------------------x

## **CONFIDENTIALITY AGREEMENT ACKNOWLEDGMENT--INDIVIDUAL**

       1.       My name is _____.

       2.       I have read the Confidentiality Agreement and Protective Order ("<u>Agreement</u>").

       3.       I understand the provisions of the Agreement, and agree to comply with and be bound by its terms.

       4.       I understand that sanctions, monetary damages, and injunctive relief may be entered against me for violation of the terms of the Agreement. I consent to the personal jurisdiction of the United States Bankruptcy Court for the Southern District of New York with respect to the Agreement and this Acknowledgement.

Executed this ___ day of _____, 20__.


_____
Signature

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                                :
In re:                                                          :    Chapter 11
                                                                :    Case No. 09-50026 (REG)
MOTORS LIQUIDATION COMPANY, et al.                              :    Jointly Administered
        f/k/a General Motors Corp., et al                       :
                                                                :
                Debtors.                                        :
                                                                :
                                                                :
---------------------------------------------------------------x

## **DESTRUCTION CERTIFICATION**

1. My name is _____. I am employed by _____ and am authorized to bind _____.

2. _____ received Confidential Estimation-Related Information from a Producing Person in connection with the Estimation Proceeding.

3. I hereby certify that _____ has complied with its obligation under the terms of the Confidentiality Agreement and Protective Order (the "Agreement") to completely destroy and/or erase all Confidential Estimation-Related Information, and all summaries, copies, reports, compilations, documents, electronic files, and databases, whether or not redacted, that contain any part or portion of the Confidential Estimation-Related Information, as set forth in paragraph 18 of the Agreement, subject only to the exceptions set forth in subparts (i) and (ii) of the first sentence of such paragraph 18.

4. I understand that sanctions, monetary damages, and injunctive relief may be entered against _____ for violation of the terms of the Agreement. _____ consents to personal jurisdiction over it by the United States Bankruptcy Court for the Southern District of New York with respect to the Agreement and this Certification.

Executed this ___ day of _____, 20__.

_____
Signature

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :    Case No. 09-50026 (REG)
MOTORS LIQUIDATION COMPANY, et al.                           :    (Jointly Administered)
         f/k/a General Motors Corp., et al                   :
                                                             :
                    Debtors.                                 :
-------------------------------------------------------------x

## **NOTICE**

[INSERT DATE]

You are receiving this notice because you or your client filed a claim against the [INSERT TRUST NAME] Trust(s) (the "Trust(s)") and certain information concerning the claim that you or your client submitted to the Trust(s) is subject to a court-authorized subpoena. More specifically, the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Motors Liquidation Company (formerly known as General Motors Corporation) filed in the above-captioned proceeding a Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents by the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g) (the "Motion"). The Honorable Robert E. Gerber granted that Motion over the objections of the Trust(s), among others, and has issued an Order authorizing the Creditors' Committee to issue a subpoena to the Trust(s) and its claims processing facility commanding the production of the following information in electronic form:

> (a) the claim information electronically maintained by the Trust(s) in current datafield format for each identifiable claimant who filed a pre-petition asbestos personal injury lawsuit against one or more of the Debtors for mesothelioma (each a "Mesothelioma Claimant," and collectively the "Mesothelioma Claimants"), as supplied by each claimant and/or his or her counsel to the Trust(s), but excluding medical and financial information (other than date of mesothelioma diagnosis) and medical and financial records; (b) the amounts paid to each Mesothelioma Claimant by each Trust; and (c) the claim status of each Mesothelioma Claimant who filed a claim against any Trust but has received no recovery from that Trust (i.e., whether that claim is still pending or has instead been dismissed).

A copy of the Creditors' Committee's subpoena is enclosed with or annexed to this Notice. A copy of Judge Gerber's Order, dated [INSERT DATE], also is enclosed with or annexed to this Notice. The disclosure and use of any information provided in response to the Creditors' Committee's subpoena will be subject to a Confidentiality Agreement and Protective Order, which also is enclosed with or annexed to this Notice.

A complete copy of the transcript of the Court's August 9, 2010 hearing may be found at [WEBSITE ADDRESS]. Please note that the Court's ruling appears at pages 98-107 of the

907365.8

transcript, and that pages 104-05 of the transcript address the Court's contemplated objection procedure.

If you object to the disclosure of information related to your or your client's claim against the Trust(s), you must file any and all such objection(s) with The Honorable Robert E. Gerber, U.S. Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, so as to be received by the Court <u>on or before fourteen (14) days after the date of this notice</u> – i.e., by [DATE]. A copy of any such objection(s) must also be mailed by First-Class Mail on or before [SAME DATE] to Philip Bentley, Esq., Kramer, Levin, Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036. All objections must be clearly marked with the above-captioned case name and index number.

Failure to file a timely objection with the Court may result in the waiver of any and all objections to the Creditors' Committee's subpoena. Please do <u>not</u> send any objections to the Trust(s), as any such objections must be made directly to the Court. As indicated in the accompanying Order, subject to the right of Mesothelioma Claimants to be heard pursuant to the above-described objection procedure, the Trust(s) and its claims processing facility shall not be subject to any actions, claims, or demands by Mesothelioma Claimants or any other Party as a result of their good faith compliance with that Order.

907365.8