**HEARING DATE: NOVEMBER 18, 2010**
**HEARING TIME: 9:45 A.M.**

WILK AUSLANDER LLP
675 Third Avenue
New York, New York 10017
(212) 421-2233
Eric J. Snyder (ES-8032)

Counsel for Ramp Chevrolet, Inc.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

MOTORS LIQUIDATION COMPANY, *et al.*,          Chapter 11
f/k/a General Motors Corp., *et al.*,          Case No. 09-50026 (reg)

                                               Jointly Administered

                          Debtors.
----------------------------------------------------------------X

### OBJECTION OF RAMP CHEVROLET, INC.  TO MOTION
### OF GENERAL MOTORS LLC TO ENFORCE 363 SALE
### <u>ORDER AND APPROVED DEFERRED TERMINATION AGREEMENT</u>

WILK AUSLANDER LLP
*Counsel for Ramp Chevrolet, Inc.*
675 Third Avenue
New York, New York 10017
(212) 421-2233

446300v1

Table of Contents

Page

BASES FOR THE OBJECTION .......................................................................................2

BACKGROUND ............................................................................................................4

ARGUMENT ...............................................................................................................10

POINT I
THE MOTION SHOULD NOT BE CONSIDERED UNTIL THE
EASTERN DISTRICT BANKRUPTCY COURT DETERMINES
WHETHER AN INTERPRETATION OF THE WIND-DOWN
AGREEMENT IS REQUIRED. .........................................................................10

POINT II
NEW GM SHOULD NOT BE ALLOWED TO SEEK RELIEF IN THIS
COURT PURSUANT TO THE DOCTRINE OF RES JUDICATA,
JUDICIAL ESTOPPEL AND WAIVER ..............................................................11

POINT III
EVEN IF THIS COURT HAS JURISDICTION TO DETERMINE
NEW GM'S MOTION, THE COURT MUST APPLY SECTION 553
AND APPLICABLE LAW ................................................................................17

POINT IV
GM MAINTAINS NO RIGHT OF SETOFF UNDER THE
BANKRUPTCY CODE .....................................................................................20

A. NEW GM HAS NO RIGHT OF SETOFF BECAUSE THE DEBT
OWED TO NEW GM AND THE DEBT OWED BY NEW GM TO
RAMP DID NOT BOTH ARISE PRIOR TO THE PETITION DATE. ...........20

B. GM HAS NO RIGHT OF SETOFF OF GM'S CLAIMS, IN ANY
EVENT, UNDER SECTION 553(a)(2) BECAUSE NEW GM IS
ASSERTING SET-OFF RIGHTS WITHIN 90 DAYS OF THE
PETITION DATE. ........................................................................................23

C. NEW GM HAS NO RIGHT TO SETOFF AFFILIATE CLAIMS
BECAUSE THE DEBTS ARE NOT MUTUAL. ................................................23

D. GM MAY NOT SET-OFF THE CHARGEBACKS BECAUSE IT DID
NOT TIMELY ASSERT THE CHARGEBACKS UNDER
APPLICABLE LAW. ..........................................................................................26

i

Table of Contents
(continued)

Page

POINT V

    GM HAS NO RIGHT OF RECOUPMENT GM MAINTAINS NO
RIGHT OF RECOUPMENT BECAUSE THE OBLIGATIONS THAT
FLOW FROM GM AND THE DEBTOR ARISE FROM SEPARATE
AGREEMENTS......................................................................................................28

  A. GM HAS NO RIGHT OF RECOUPMENT BECAUSE THERE HAS
BEEN NO OVERPAYMENT. ............................................................................30

CONCLUSION.....................................................................................................................30

446300v1

Table of Authorities

Page

**Cases**

*Anes v. Dehart (In re Anes),*
  195 F.3d 177 (3d Cir.1999) ........................................................................... 29

*BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.),*
  229 B.R. 301 (Bankr.S.D.N.Y.1999) ...................................................... 19, 29

*Boston and Maine Corp. v. Chicago Pacific Corp.,*
  785 F.2d 562 (7th Cir.1986) ......................................................................... 19

*Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030 (5th Cir.1987) ..................... 24

*Citizens Bank of Maryland v. Strumpf,*
  516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).................................... 17

*Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.),*
  82 F.3d 956, (10th Cir.1996) ......................................................................... 29

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).................................... 14

*In re Bennett Funding Group, Inc.,*
  212 B.R. 206 (2d Cir. BAP 1997)................................................................. 25

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,*
  896 F.2d 54 (3d Cir.1990) ............................................................................ 19

*In re Clemens,*
  261 B.R. 602 (Bankr.M.D.Pa.2001) ............................................................. 25

*In re Garden Ridge Corp.,*
  338 B.R. 627 (Bankr.D.Del. 2006) ................................................. 17, 24, 25

*In re Health Management Ltd. Partnership,*
  336 B.R. 392 (Bankr. C.D.Ill. 2005)............................................................ 30

*In re InteliQuest Media Corp.,*
  326 B.R. 825 (10th Cir. B.A.P. 2005) .......................................................... 13

*In re Jamesway Corp.,*
  201 B.R. 73 (Bankr. S.D.N.Y. 1996)............................................................ 15

*In re Lykes Bros. SS Co.,* Inc.,
  217 B.R. 304 (Bankr. M.D. Fla. 1997) ......................................................... 15

iii

Table of Authorities
(continued)

Page

*In re Malinowski,*
156 F.3d at 134 ........................................................................................... 29

*In re NWFX, Inc.,*
864 F.2d 593 (8th Cir.1989) ....................................................................... 18

*In re Prudential Lines, Inc.,*
148 B.R. 730 (Bankr..S.D.N.Y.1992)........................................................... 22

*In re Public Service Co. of New Hampshire,*
107 B.R. 441 (Bankr. D.N.H. 1989) ........................................................... 30

*In re Semicrude,*
399 B.R. 388 (Bankr. Del. 2009) .......................................................... 18, 19

*In re Semi-Crude, LLP,*
399 B.R. 388 (Bankr. D.Del. 2009) ............................................................ 25

*In re Smith,*
389 B.R. 902, n.10 (Bankr. D. Nev. 2008) ................................................. 14

*In re Tarbuck,*
318 B.R. 78 (Bankr.W.D.Pa.2004) ............................................................. 17

*In re Williams,*
61 B.R. 567 (Bankr.N.D.Tex.1986)............................................................. 21

*Malinowski v. New York State Dep't of Labor (In re Malinowski),*
156 F.3d 131 (2d Cir.1998) ........................................................................ 29

*Matter of United Sciences of America, Inc.,*
893 F.2d 720 (5th Cir.1990) ....................................................................... 24

*MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,*
882 F.2d 615 n. 2 (2d Cir.1989) ................................................................. 25

*Montefiore Medical Center v. Crest Plaza LLC,*
24 Misc.3d 1201(A), 889 N.Y.S.2d 506 (S.Ct. Westchester Co. 2009) ................ 13, 14

*Moore v. New York Cotton Exchange,*
270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926)....................................... 28

*Newberry Corp. v. Fireman's Fund Ins. Co.,*
95 F.3d at 1402 ........................................................................................... 28

iv

Table of Authorities
(continued)

Page

*Packaging Indus. Group Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp. Inc.),*
    192 B.R. 41 (N.D.N.Y.1996) ........................................................................................ 17

*Plotner v. AT & T Corp.,*
    224 F.3d 1161 (10th Cir.2000) ................................................................................... 13

*Public Serv. Co. of New Hampshire,*
    884 F.2d at 13-17 ....................................................................................................... 18

*Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),*
    181 B.R. 730 (Bankr. S.D.N.Y.1995) ......................................................................... 24

*State of New Hampshire v. State of Maine,*
    532 U.S. 742,121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) .............................................. 13

*Studley v. Boylston Nat. Bank,*
    229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313, (1913) .................................................... 17

*Town of Hempstead Employees Federal Credit Union v. Wicks,*
    215 B.R. 316 (Bankr.E.D.N.Y. 1997) .......................................................................... 21

*Trojan Hardware Co. v. Bonacquisti Construction Corp.,*
    141 A.D.2d 278, 534 N.Y.S.2d 789 (N.Y.A.D. 3rd Dept.1988) .................................. 22

*Troll Company v. Uneeda Doll Company,*
    483 F.3d 150 (2d Cir. 2007) ....................................................................................... 13

*United States ex rel. United States Postal Serv. v. Dewey Freight Sys., Inc.,*
    31 F.3d 620 (8th Cir.1994), *reh'g denied,* 1994 U.S.App. LEXIS 30564
    (8th Cir. Nov. 2, 1994) ................................................................................................ 29

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),*
    973 F.2d 1065 (3d Cir.1992) ...................................................................................... 29

*Westinghouse Credit Corp. v. D'Urso,*
    278 F.3d 138 (2d Cir. 2002) .......................................................................... 24, 25, 29

**Statutes**

11 U.S.C. § 553(a) ............................................................................................. 18, 20, 24

Section 553(a)(2) ........................................................................................... 8, 20, 23, 26

Section 553(a)(2)(B) ................................................................................................... 23

Section 553(c) .............................................................................................................. 23

v

**HEARING DATE: NOVEMBER 18, 2010**
**HEARING TIME: 9:45 A.M.**

WILK AUSLANDER LLP
675 Third Avenue
New York, New York 10017
(212) 421-2233
Eric J. Snyder (ES-8032)

Counsel for Ramp Chevrolet, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:

MOTORS LIQUIDATION COMPANY, *et al.*,                    Chapter 11
f/k/a General Motors Corp., *et al.*,                    Case No. 09-50026 (reg)

                                                        Jointly Administered

                                    Debtors.
-----------------------------------------------------------------X

**OBJECTION OF RAMP CHEVROLET, INC.  TO MOTION**
**OF GENERAL MOTORS LLC TO ENFORCE 363 SALE**
**ORDER AND APPROVED DEFERRED TERMINATION AGREEMENT**

**TO: HONORABLE ROBERT E. GERBER,**
**        UNITED STATES BANKRUPTCY JUDGE:**

Ramp Chevrolet, Inc. ("Ramp"), by its attorneys Wilk Auslander LLP, submits its

objection (the "Objection") to the motion (the "New GM Motion") of General Motors,

LLC ("New GM") for an order, pursuant to sections 105 and 363 of Title 11, United

States Code (the "Bankruptcy Code") and Bankruptcy Rule 7001: (a) enforcing the order

(the "Sale Order") of the Bankruptcy Court, dated July 5, 2009 and the provisions of the

Wind-Down Agreements; and b) directing Ramp to cease and desist from seeking a

determination from the Bankruptcy Court for the Eastern District of New York ("Eastern

District Bankruptcy Court") in the Ramp bankruptcy proceeding, of its pending objection

1

446300v1

(the "Ramp Objection") to New GM's proof of claim ("GM POC"). In support of the Objection, Ramp states as follows:

## BASES FOR THE OBJECTION

1.      Subsequent to the entry of the Sale Order in this Court, Ramp sought Chapter 11 relief in the Eastern District Bankruptcy Court. Ramp assumed the Wind Down Agreements in its bankruptcy proceeding and the order approving the assumption of said agreements directs New GM to remit to Ramp the "Wind-Down Money", defined in the motion as the full amount due to Ramp, without set-off, under the Wind-Down Agreements. New GM did not interpose an objection to this relief.

2.      Eight months after assuming the Wind-Down Agreements, New GM filed the GM POC seeking, for the first time, to set-off certain sums under the Wind-Down Agreements. Ramp interposed the Ramp Objection to the GM POC during September, 2010. In the Ramp Objection, Ramp asserts: (i) that the Eastern District Bankruptcy Court maintains core jurisdiction over the Objection; (ii) that New GM, by filing the GM POC, consented to the jurisdiction of the Eastern District Bankruptcy Court; iii) that GM, for various reasons, cannot now seek a set-off under the Wind-Down Agreements; and iv) New GM cannot satisfy its burden to effectuate a set-off or recoupment under the Bankruptcy Code.

3.      In the Motion, GM argues that Ramp should "cease and desist" continuing the prosecution of the Ramp Objection (Motion, p.3). on the grounds that: i) this Court has sole and exclusive jurisdiction over the Wind Down Agreements; and ii) that New GM rights to effectuate a set-off under the Wind Down Agreement are not affected by the Ramp bankruptcy.

2

4.      New GM is not only seeking to "enforce" the Sale Order, it is seeking to prohibit Ramp, a debtor-in-possession, from exercising its rights under the Bankruptcy Code to interpose an objection to the GM POC and, by extension, prohibiting the Eastern District Bankruptcy Court from exercising a core function of adjudicating the GM POC as part of the claims allowance process.

5.      New GM provides no basis that would allow this Court to grant this extraordinary form of relief.  Ramp only seeks to reduce and reclassify the GM POC by arguing that GM has not met its burden of demonstrating it has satisfied the requirements of Section 553 of the Bankruptcy Code.  Ramp is not seeking any interpretation of the Wind Down Agreements. The issues presented in the Ramp Objection relate solely to issues of law and, since the claims adjudication process is a core function, the Eastern District Bankruptcy Court has jurisdiction over the Ramp Objection.

6.      Judge Grossman, the Judge overseeing the Ramp bankruptcy proceeding, has already determined, in the context of the Ramp Objection, that he will opine as to whether the Ramp Objection requires an interpretation of the Wind-Down Agreement.  If such an interpretation is necessary, Judge Grossman stated that he would defer to the jurisdiction of this Court to make that determination. Therefore, until Judge Grossman has made that threshold determination, it is premature for New GM to seek such a determination here.

7.      Furthermore, if New GM wanted to preserve its set-off rights under the Wind Down Agreements, it was required to seek both intervention by this Court when Ramp filed a motion (the "Assumption Motion") to assume the Wind Down Agreements a year ago and to object to the Assumption Motion at that time.

446300v1

8.      New GM did neither. As a result, the Motion to Assume was granted during November, 2009, without objection. As we show below, because New GM failed to interpose an objection to the Assumption Motion, it cannot now seek to assert it set-off rights under the doctrine of *res judicata,* estoppel and waiver.

9.      Also, by filing the GM POC in the Eastern District Bankruptcy Court during July, 2010, instead of seeking relief here, GM consented to the jurisdiction of the Eastern District Bankruptcy Court to adjudicate its rights under the GM POC. Since it consented to the jurisdiction of the Eastern District Bankruptcy Court, it is estopped from now arguing that this Court has exclusive jurisdiction.

10.     Finally, as we show below, it is clear that New GM cannot meet its burden under Section 553 that would allow it to effectuate a set-off under the Bankruptcy Code. For all of these reasons, this Court should defer consideration of the Motion until Judge Grossman has ruled on the Ramp Objection or, for the reasons set forth below, deny the Motion outright.

## **BACKGROUND**

11.     On October 5, 2009 (the "Petition Date"), Ramp filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

12.     Ramp, a New York corporation, owned and operated a  Chevrolet, Chevrolet Truck and Hummer franchises (the "Dealerships"), pursuant to franchise agreements (the "Franchise Agreements") by and between the Debtor and the General Motors Company ("GM")  The Dealership was located at 1395 Route 112, Port Jefferson, New York.

4

13.     Subsequent to the Petition Date, Ramp continued in the possession of its property and the operation of the business as a debtor-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

14.     On June 12, 2009, Ramp entered into three Wind-Down Agreements with GM to "wind-down" the operations of the Dealerships. Pursuant to the Wind-Down Agreements, upon the sale of Ramp's new car inventory of each franchise, Ramp was required to close the Dealership. In exchange, New GM agreed to pay to Ramp the sum of $1,304,613 (the "Wind-Down Money"), in total, for consideration in terminating the three Dealerships. During August, 2009, 25% of the Wind-Down Amount, $326,154.75, was paid to Ramp by New GM. Copies of the Wind-Down Agreements are annexed to the Motion as Exs. A-C.

15.     On October 2, 2009, the New York State Department of Taxation and Finance sought to enforce its rights under certain outstanding tax warrants and changed the locks on the Dealership. As a result, Ramp was compelled to seek Chapter 11 relief on the Petition Date.

16.     During November, 2009, the Debtor sold the last of its retail vehicles. As a result, under the Wind-Down Agreements, Ramp became eligible to collect the Wind-Down Money. To this end, Ramp requested the commencement of the procedures to terminate the Franchise Agreement by December 31, 2009 and to obtain the Wind-Down Money.

17.     On November 25, 2009, the Debtor filed the Assumption Motion seeking to assume the Wind-Down Agreements. In the Assumption Motion, the Debtor specifically states that the assumption of the Wind-Down Agreement will allow the

5

Debtor to obtain the Wind-Down Money, defined as $1,304,613.  A copy of the Wind-Down Motion is annexed to the Motion as Exhibit D.

18.     GM did not interpose an objection to the Assumption Motion and the Bankruptcy Court entered an order on February 3, 2010, granting the Assumption Motion. A copy of the Order is annexed to the Motion as Exhibit E.

19.     From December 2009 through July 10, 2010, Ramp repeatedly requested from New GM the payment of the Wind-Down Money. Copies of certain emails reflecting these requests during that period are annexed to the Ramp Objection (Ex. F to the Motion) as Exhibit C. New GM never responded.

20.     On July 21, 2010, seven months later, New GM filed the GM POC in Ramp's bankruptcy proceeding. In the GM POC, GM asserts a secured claim in the amount of $699,096.01 (the "Set-Off Amount"). According to the attachment (the "Attachment") to the GM POC, "GM has the right to set off this amount, plus any additional charges…, from any Wind-Down payment due from New GM to Ramp. (Attachment, ¶15). A copy of the GM POC and the Attachment are annexed hereto as Exhibit A.

21.     As set forth in the Motion (¶¶ 18,19), there are two major charges that make up substantially all of the Set-Off Amount: i) the Debtor's alleged failure to remit rent (the "Rent Arrears") to Argonaut Holdings, Inc. ("Argonaut") a GM subsidiary, for the period through September, 2009 in the amount of $450,000; and ii) certain chargebacks (the "Chargebacks") totaling $292,524.63[1] based on an audit completed prior to the Petition Date.

---

[1]  In the GM POC New GM only seeks to set-off the sum of $699,096.01, although the total amount of set-off it claims equals $742,524.63.

446300v1

22.     Despite the fact that both components of the set-off Amount cover a period prior to the Petition Date, New GM has not sought to modify the automatic stay to set-off this amount in the Ramp bankruptcy proceeding.

23.     Since the Wind Down Money is the Debtor's primary (if not its sole) asset, the Debtor filed the Ramp Objection on September 27, 2010. The Objection seeks relief pursuant to Sections 105(a), 362(a)(7) and 502 of Title 11 (the "Bankruptcy Code"), and Bankruptcy Rules 3007, 9014 and 9020.

24.     As set forth above, the Ramp Objection seeks to reduce and reclassify the GM POC and further seeks, by motion, *inter alia*[2], to hold New GM in contempt for violating the automatic stay insofar as it failed to seek relief from the Eastern District Bankruptcy Court when it filed the GM POC, asserting rights of set-off and recoupment. A copy of the Ramp Objection is annexed to the Motion as Exhibit F.

25.     In the Ramp Objection, Ramp argues that New GM has not met its burden of demonstrating that it has satisfied the requirements of Section 553 of the Bankruptcy Code.

26.     On October 20, 2010, the date GM filed the Motion, GM submitted a response (the "Response") to the Objection in the Eastern District Bankruptcy Court containing the same arguments set forth in the Motion.

27.     On October 26, 2010, Ramp filed a reply (the "Reply") to the Response. In the Reply, Ramp pointed out that the Eastern District Bankruptcy Court should determine the Objection because i) the right to adjudicate the objection to the GM POC is a core

---

[2]  The Objection also seeks to hold GM in contempt for violating the automatic stay by applying post-petition sums owed to Ramp to its pre-petition claim without Bankruptcy Court approval. That issue is not sought to be heard by the Court here.

7

function; and ii) since GM filed the GM POC, it consented to the jurisdiction of that Bankruptcy Court. A copy of the Reply is annexed hereto as Exhibit B.

28.     In addition, the Reply contained five independent reasons why New GM could not meet its burden under the Bankruptcy Code to effectuate a set-off of the Rent Arrears and Chargebacks: i) both debts (the Chargebacks and Rent Arrears on one hand and the right to the Wind-Down Money on the other hand), did not arise prior to the Petition Date (*Id.*, pp. 6-8); ii) since the set-off could have only occurred within ninety days of the Petition Date, New GM failed to satisfy Section 553(a)(2), *Id.*, pp. 8-9); iii) the lack of mutuality of the debts, *Id.*, pp. 9-12); iv) the failure of New GM to assert the Chargebacks timely under applicable law  (*Id.*, pp. 12-13) and, v) New  GM waived its right to set-off by not raising it in a timely manner (*Id.*, pp. 13-14).

29.     The Reply also contained two reasons why recoupment was not appropriate: a) the obligations flow from different agreements (Reply, pp., 16); and ii) there was no overpayment by New GM (Reply, pp. 16).

30.     On October 27, 2010, the Eastern District Bankruptcy Court conducted a hearing on the Objection.  At that time, Judge Grossman determined that he maintained jurisdiction over the Objection and decided that he would determine, as a threshold matter, whether consideration of the Objection requires an interpretation of the Wind Down Agreements. At the hearing, Judge Grossman also requested that New GM adjourn the hearing on the Motion until at least December 6, 2010 and he adjourned the hearing on the Objection until that date.

31.     On November 1, 2010, Ramp filed a Supplemental Reply asserting that New GM, by failing to interpose an objection to the Assumption Motion cannot assert its

8

set-off rights at this time, pursuant to the doctrine of *res judicata*. A copy of the Supplemental Reply is annexed hereto as Exhibit C.

32.    On November 5, 2010, counsel for New GM informed counsel for Ramp that it would not adjourn the Motion.

33.    On November 9, 2010, New GM filed a Supplemental Response. A copy of the Supplemental Response is annexed hereto as Exhibit D.

446300v1

**ARGUMENT**

**POINT I**

**THE MOTION SHOULD NOT BE CONSIDERED UNTIL THE EASTERN DISTRICT BANKRUPTCY COURT DETERMINES WHETHER AN INTERPRETATION OF THE WIND-DOWN AGREEMENT IS REQUIRED.**

34.      The Objection seeks two forms of relief: (i) the reclassification and reduction of the GM POC; and (ii) to hold GM in contempt (twice) for violating the automatic stay.  Both these forms of relief constitute core proceedings. See 28 U.S.C. Section 157(b)(2)(B) (allowance or disallowance of claims is core proceeding); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.*), 920 F.2d 183, 187 (2d Cir.1990) ("For other debtors [who are not natural persons], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay.").

35.      Since the Ramp Objection constitutes a core proceeding, New GM's attempt to compel Ramp (and, by extension, the Eastern District Bankruptcy Court) from adjudicating the Objection to the GM POC is an unprecedented attempt to infringe upon the exclusive jurisdiction of that Court.

36.      New GM argues that this Court has exclusive jurisdiction over the Objection because the Debtor is seeking an interpretation of the Wind-Down Agreements.

37.      The Debtor is not seeking an interpretation by the Eastern District Bankruptcy Court of the Wind-Down Agreements. What Ramp is seeking is the determination that Section 553 applies (and, as set forth below, circumscribes) New GM's set-off rights under the Wind-Down Agreements.  The ability of the Eastern District Bankruptcy Court to make this determination as part of the claim adjudication

10

446300v1

process, directly implicates a core function and can be applied harmoniously with the jurisdiction of this Court in this bankruptcy proceeding.

38.    Because of this, at the hearing on the Objection, Judge Grossman agreed to determine, in the first instance, whether an interpretation of the Wind-Down Agreement would be required. In light of this, it is respectfully submitted that this Court should adjourn the Motion until the Eastern District Bankruptcy Court has decided whether an interpretation of the Wind Down Agreements is even required.

39.    If this Court should consider the Motion at this time, there is a real possibility that the Eastern District Bankruptcy Court could conclude that an interpretation of the Wind Down Agreements is not required, while this Court might conclude that an interpretation of the Wind Down Agreements is required (or vice-versa). Because of this, adjourning the Motion to allow the Eastern District Bankruptcy Court to reach this threshold determination avoids the potential of inconsistent determinations by the two courts.

## POINT II

### NEW GM SHOULD NOT BE ALLOWED TO SEEK RELIEF IN THIS COURT PURSUANT TO THE DOCTRINE OF *RES JUDICATA*, JUDICIAL ESTOPPEL AND WAIVER

**A.    Since New GM did not Seek to Set-off the Rent Arrears and Chargebacks at the Time the Wind-Down Agreements were Assumed, it is Prohibited from Effectuating a Set-Off now Under the Doctrine of *Res Judicata*.**

40.    The non-bankrupt party to an unexpired lease or executory contract "bears [the] burden to assert any defaults prior to the assumption." *In re Cellnet Data Systems, Inc.,* 313 B.R. 604, 608 (Bankr.D.Del.2004)("*Cellnet*"), *quoting In re Diamond Mfg. Co.,* 164 B.R. 189, 199 (Bankr.S.D.Ga.1994). For this reason, when a bankruptcy court approves the assumption of an executory contract, it necessarily finds that *no* uncured

11

defaults exist. *In Re Lykes Bros. Steamship Co.,* 221 B.R. 881, 883 (Bankr.M.D.Fla.1997)

("If prior to the assumption of any executory contract there is no allegation of any

existing default, *the order approving the contract determines that no default exists*."); *In

re Diamond Mfg. Co.,* 164 B.R. at 197 (emphasis added); *NCL Corp. v. Lone Star Bldg.

Centers (Eastern), Inc.,* 144 B.R. 170, 179 (S.D.Fla.1992)(same).

41.    When the nonbankrupt party has knowledge of facts sufficient to place the

party on notice that a "potential" breach has occurred, *res judicata* bars that party from

later asserting a claim based upon the pre-petition breach. *In re Ali Properties, Inc.,* 334

B.R. 455 (Bankr. D. Kan. 2005); *Cellnet*, 313 B.R. at 608-09; *Diamond Mfg. Co.,* 164

B.R. at 201. *See also, In re West 74th Street Drug Corp.*, 59 B.R. 747, n.6 (Bankr.

S.D.N.Y. 1984)(cure claims are waived if not raised prior to assumption); *In re Harry C.

Partridge & Sons, Inc*., 43 B.R. 669 (Bankr. S.D.N.Y. 1984)(same). I*n re Sapolin Paints*,

*Inc*. 5 B.R. 412, 419 (Bankr. E.D.N.Y. 1980)(waiver and estoppel preclude raising cure

issues subsequent to assumption.).

42.    When this Eastern District Bankruptcy Court entered the Assumption

Order, it blessed the assumption of the Wind-Down Agreements and made an implicit

finding that the Wind-Down Agreements had been cured. New GM was certainly aware

of the potential claims asserted by both GM and Argonaut (Objection (Ex. F to Motion),

Exs.A & B) and received actual notice of the Assumption Motion (Docket # 22, p.8).

Despite this, neither New GM nor Argument interposed an objection to the Assumption

Motion and the Assumption Order was entered.  By its plan language, the Assumption

order does not require Ramp to cure any defaults to New GM.  Indeed, the Assumption

Order specifically states that "GM is directed to remit the Wind-Down Money [defined in

12

the Assumption Motion as $1,304,613] to the Debtor…."  The Assumption Order could

not be clearer.  By seeking to set-off the Wind Down Money now, New GM seeks to

litigate a claim it could have made when the Assumption Motion was filed. R*es judicata*

precludes that.[3]

**B.     Since New GM Consented to the Jurisdiction of the Eastern District
        Bankruptcy Court by Filing the GM POC, it is Judicially Estopped from
        Arguing that this Court Maintains Exclusive Jurisdiction Over the
        Adjudication of the GM POC.**

43.     Judicial estoppel, or the doctrine of inconsistent positions, precludes a

party who assumed a certain position in a prior legal proceeding from assuming a

contrary position in another action simply because his or her interests have changed.

*State of New Hampshire v. State of Maine*, 532 U.S. 742,121 S.Ct. 1808, 149 L.Ed.2d

968 (2001).

44.     The principle of judicial estoppel applies where two elements are shown:

first, the party against whom the estoppel is asserted must have argued an inconsistent

position in a prior proceeding; and second, the prior inconsistent position must have been

adopted by the tribunal in some manner.  *Montefiore Medical Center v. Crest Plaza LLC*,

24 Misc.3d 1201(A), 889 N.Y.S.2d 506 (S.Ct. Westchester Co. 2009).   *See Troll*

*Company v. Uneeda Doll Company*, 483 F.3d 150 (2d Cir. 2007) (a party invoking

judicial estoppel, which prevents a party from asserting a factual position in one legal

proceeding that is contrary to a position that is successfully advanced in another

---

[3] The elements of *res judicata* are: a final judgment on the merits in the prior action; an identity
between claims raised in the prior and subsequent action; and an identity or privity of parties. *In
re InteliQuest Media Corp.,* 326 B.R. 825, 829-31 (10th Cir. B.A.P. 2005). All of these elements are
present here. *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1170 (10th Cir.2000) (essential to application
of *res judicata* is the principle that the previously unlitigated claim to be precluded could and
should have been brought in the earlier litigation.)

446300v1

proceeding, must show that (a) another party advanced an inconsistent position in another proceeding and (b) the first tribunal adopted that position in some manner).

45.     "The doctrine of estoppel against inconsistent positions precludes a party from 'framing his pleadings in a manner inconsistent with a position taken in a prior proceeding.' The doctrine rests upon the principle that a litigant 'should not be permitted . . . to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise.' The policies underlying preclusion of inconsistent positions are general considerations of orderly administration of justice and regard for the dignity of judicial proceedings." *Montefiore Medical Center v. Crest Plaza LLC*, 24 Misc.3d 1201(A), 889 N.Y.S.2d 506 (S.Ct. Westchester Co. 2009).

46.     By filing the GM POC, New GM specifically consented to the jurisdiction of the Eastern District Bankruptcy Court to adjudicate the New GM claim. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In *Granfinanceria*, the Supreme Court specifically recognized that by filing a claim against a bankruptcy estate, the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58-59, and n. 14, 109 S.Ct., at 2799-2800, and n. 14.[4]

47.     Therefore, both factors are satisfied.  First, New GM filed the GM POC, consenting to the jurisdiction of the Eastern District Bankruptcy Court, yet argues that this Court has exclusive jurisdiction.  Second, the Debtor filed the objection, New GM

---

[4] In the GM POC, GM "reserves" its right to object to the jurisdiction of the Bankruptcy Court, Ex. A at p.5.  Such a reservation has no legal effect. As one court has noted, in analyzing the effect of so "called "protective" proofs of claims: "[the] proof of claim purports to reserve his right to jury trial, but he can no more stave off a waiver in that manner than he could accede to this court's jurisdiction only on the condition that he win." *In re Smith*, 389 B.R. 902, 916, n.10 (Bankr. D. Nev. 2008).

filed its response and the Easter District Bankruptcy Court concluded a hearing on the Objection. As a result, the second factor has been satisfied. As a result, New GM should be estopped from arguing this Court has jurisdiction over the Wind-Down Agreements.

**C.     Since GM Waited a Year from the Filing of the Motion to Assume in the Eastern District Court, it has Waived the Right to Seek Relief in this Court.**

48.     A creditor waives its right to setoff unless it takes affirmative steps necessary to effectuate a setoff. *In re Lykes Bros. SS Co.*, Inc., 217 B.R. 304, 312 (Bankr. M.D. Fla. 1997). A waiver is the intentional relinquishment of a known right. *In re Jamesway Corp*., 201 B.R. 73, 76-77 (Bankr. S.D.N.Y. 1996).

49.     In the Assumption Motion (Objection, Ex. C), Ramp states, unequivocally, that it is entitled to the full $1,304,613. See Assumption Motion, ¶9. The Order approving the Assumption Motion "direct[s GM] to remit the Wind-Down Money [defined in the Motion as $1,304,613] to the Debtor." (Objection, Ex. D). Despite this language, New GM did not interpose any objection to either the Motion to Assume which was or the Order approving the Motion to Assume which was entered on February 3, 2010.

50.     It was not until five months later, when New GM filed the GM POC, did New GM allege a setoff. And, even at that time, GM never sought to modify the stay to effectuate a set-off but, instead, Ramp was forced to seek an order holding New GM in contempt.

51.     The Objection was filed on September 24, 2010 in the Eastern District Bankruptcy Court. If New GM genuinely believed this Court retained sole and exclusive jurisdiction to determine the Objection, it would have sought such relief here, even at that late date.

52.     In fact, more than three weeks after the filing of the Objection, on October 12, 2010, counsel for New GM transmitted a letter to counsel for Ramp stating, among other things, that "If [the Ramp Objection] is put over, GM will not file an emergency motion with Judge Gerber." *See* Ex. E to Response, p.3 and "[if the hearing on the Ramp Objection is not adjourned, New GM] will have no choice but to seek such a hearing before October 27." *Id.*

53.     Counsel for Ramp immediately responded to counsel for GM that it would not adjourn the hearing.  Response, Ex. E. What steps did New GM take to obtain the relief in this Court "on an emergency basis" and before October 27, 2010, the hearing date on the Objection? GM waited an additional 8 days until October 20, 2010 to file the Motion, by regular notice, returnable November 18, 2010, twenty-two days after the hearing on the Ramp Objection.

54.     Put simply, New GM intentionally and knowingly relinquished any right it may have had to seek relief in this Court.  Asking this Court to consider an issue more than three weeks after the hearing on the Objection, on twenty-nine days notice, demonstrates that GM had no interest in obtaining a determination in any Court other than the Eastern District Bankruptcy Court.  In light of GM's previous consent to that Court's jurisdiction, codified by Congress in 28 U.S.C. §157(b)(2)(B), this Court should determine that New GM has waived its rights to now seek a set-off under the Wind-Down Agreements.

16

### POINT III

### EVEN IF THIS COURT HAS JURISDICTION TO DETERMINE NEW GM'S MOTION, THE COURT MUST APPLY SECTION 553 AND APPLICABLE LAW

55.     Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313, (1913)).

56.     The Code section that governs setoff in bankruptcy, section 553, "preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law," and "imposes additional restrictions on a creditor seeking setoff" that must be met to impose a setoff against a debtor in bankruptcy. *Packaging Indus. Group Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp. Inc.),* 192 B.R. 41, 45 (N.D.N.Y.1996)

57.     As a result, setoff is appropriate in bankruptcy *only* when a creditor *both* enjoys an independent right of setoff under applicable non-bankruptcy law, and meets the further Code-imposed requirements and limitations set forth in section 553. *See, e.g., In re Tarbuck,* 318 B.R. 78, 81 (Bankr.W.D.Pa.2004) (holding that courts must look to state law to determine whether a right to setoff exists, but that "the granting or denial of a right to setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws."); *see also In re Garden Ridge Corp.,* 338 B.R. 627, 632 (Bankr.D.Del. 2006)

58.     Most recently, the Bankruptcy Court in Delaware had an opportunity to decide whether an agreement entered into pre-petition, which allowed for set-off in

17

violation of the requirements of Section 553, was enforceable. *In re Semicrude*, 399 B.R. 388 (Bankr. Del. 2009).

59.     In *Semicrude*, Chevron asserted that an exception to the Code's mutuality requirement exists because it contended that a valid, pre-petition contract-executed by a creditor, a debtor, and one or more third parties-either satisfies the mutuality requirement or allows the parties to contract around the mutuality requirement found in section 553(a) if the contract provides that one or more parties to the agreement can elect to setoff any debt it owes to one of the other parties against an amount owed to it by a different party to the agreement. *Semicrude*, 399 B.R. at 394.

60.     In order to determine whether there is a "contract exception" to the requirement of mutuality under section 553. the Court analyzed the language of the statute itself. Section 553(a) provides, in relevant part, that the Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a).

61.     The Court in examining Section 553, found no such contract exception exists, and denied the set-off:

> The Court finds nothing in the language of the Code upon which to base a conclusion that there is a contractual exception to the "mutual debt" requirement. Absent a clear indication from the text of the Code that such an exception exists, the Court deems it improper to recognize one. To do so would run counter to the great weight of authority holding that "there is no reason for enlarging the right to setoff beyond that allowed in the Code." *In re NWFX, Inc.,* 864 F.2d 593, 595-96 (8th Cir.1989). *See also Public Serv. Co. of New Hampshire,* 884 F.2d at 13-17 ("From a federal perspective, the law is settled that the bankruptcy court, in the guise of 'doing equity,' has no power to enlarge setoff rights beyond the

18

dimensions sculpted by non-bankruptcy law or explicitly required by the Code."); *Boston and Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562, 564-66 (7th Cir.1986)….

Although dictated by the plain language of section 553, the Court's holding also is consistent with the purpose of section 553 and the broader policies of the Code. One of the primary goals-if not the primary goal-of the Code is to ensure that similarly-situated creditors are treated fairly and enjoy an equality of distribution from a debtor absent a compelling reason to depart from this principle. By allowing parties to contract around the mutuality requirement of section 553, one creditor or a handful of creditors could unfairly obtain payment from a debtor at the expense of the debtor's other creditors, thereby upsetting the priority scheme of the Code and reducing the amount available for distribution to all creditors. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 896 F.2d 54, 57 (3d Cir.1990) ("setoff is at odds with a fundamental policy of bankruptcy, equality among creditors ..."); *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.),* 229 B.R. 301, 311 (Bankr.S.D.N.Y.1999) ("[setoff] operates to prefer one creditor over every other"). Such a result is clearly contrary both to the text of the Code and to the principle of equitable distribution that lies at the heart of the Code.

*Semicrude,* 399 B.R. at 399.

62.     In the present case, New GM is arguing that any analysis begins and ends with the Wind Down Agreements. However, New GM cannot ignore Ramp's bankruptcy and its requirements and burdens under Section 553. The fact that Ramp assumed the Wind Down Agreements, does not alter the Wind Down Agreements; it is the filing of the bankruptcy proceeding that altered New GM's obligations and that cannot be contracted away.

63.     Therefore, should this Court exercise jurisdiction over the Wind-Down Agreements, it should nonetheless, at a minimum, determine that New GM is required to comply with Section 553 and applicable law when effectuating its set-off rights under the Wind Down Agreements.

19

446300v1

## POINT IV

### GM MAINTAINS NO RIGHT OF SETOFF
### UNDER THE BANKRUPTCY CODE

64.    If New GM was compelled to comply with Section 553 as the caselaw set forth above concludes that it must, then there is little doubt the Court would conclude that GM has no right of set-off or recoupment under the Wind-Down Agreements.

65.    New GM has the burden of demonstrating it has satisfied the requirements of Section 553 to effectuate a set-off. *In re Bill Heard Enterprises, Inc.*, 400 B.R. 813, 823 (Bankr. N.D. Ala. 2009). A party seeking to establish a right of setoff must prove that the debt owed to the debtor and the debt owing from the debtor both arose before the commencement of the case and that the claims and debts are mutual between the parties. *Id.* New GM must also demonstrate that it is not effectuating a set-off within 90 days of the Petition Date under Section 553(a)(2) of the Bankruptcy Code. In the present case, New GM has satisfied *none* of these requirements.

**A.    NEW GM HAS NO RIGHT OF SETOFF BECAUSE THE DEBT OWED TO NEW GM AND THE DEBT OWED BY NEW GM TO RAMP DID NOT BOTH ARISE PRIOR TO THE PETITION DATE.**

66.    As set forth in the Ramp Objection, and not disputed by New GM, New GM is required to demonstrate that the debt incurred by the Debtor and by New GM both occurred prior to the Petition Date. See 11 U.S.C § 553(a) (….this title does not affect the right of a creditor to offset a mutual debt  owing such creditor to the debtor that arose before the commencement of the case…against a claim of such creditor against the debtor that  arose before the commencement of the case….").

67.    There is no dispute that the claims of New GM, consisting of the claims of Argonaut and the claims of General Motors Corporation, the assignor of the claims to

20

GM, occurred prior to the Petition Date.   Motion, ¶¶ 18-21.   However, the Debtor's claims against New GM clearly did not also arise pre-petition.   The Debtor has not received the Wind-Down Money and the right to receive those funds, according to New GM, still have not ripened. *See* ¶59 of Motion. *See also* Motion, ¶ 21: "By letter dated October 14, 2010, New GM responded and notified Ramp of certain pre-conditions that needed to be satisfied to receive a Wind-Down Payment."

68.     Therefore, it is undisputed that, as of the Petition Date, the right of Ramp to obtain the Wind-Down Money was contingent upon it satisfying certain of the aforementioned "pre-conditions". Therefore, the Bankruptcy Court should look to applicable state law to determine if these contingent claims may be set-off. *See. e.g., Town of Hempstead Employees Federal Credit Union v. Wicks*, 215 B.R. 316 (Bankr.E.D.N.Y. 1997)(bankruptcy courts should look first to state law first to determine rights of set-off).

69.     The applicable nonbankruptcy set-off law is "determined by applying the law of the state where the operative facts occurred." *In re Williams,* 61 B.R. 567, 571 (Bankr.N.D.Tex.1986). Here, the franchise agreements and the Wind-Down Agreements were entered into in New York, which is Ramp's principal place of business. The Court should  therefore look to New York law to determine Ramp's right of setoff.

70.     New York recognizes both equitable and statutory set-off. Statutory setoff is governed by Debtor and Creditor Law § 151, which provides,

Every debtor shall have the right upon:

(a) the filing of a petition under any of the provisions of the federal bankruptcy act or amendments thereto ... by or against a creditor ...

* * * * * *

21

> to setoff and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, *any amount owing* from such debtor to such creditor, *at or after,* the happening of [the filing of a bankruptcy petition].
>
> * * * * * *
>
> the ... right of set off may be exercised by such debtor against such creditor or against any trustee in bankruptcy [or] debtor in possession ... claiming through or against such creditor or such trustee in bankruptcy [or] debtor in possession ...

<u>New York Debtor and Creditor Law, § 151</u> (McKinney's Supp.1991) (emphasis adeed).

71.     To be available for setoff under § 151, New GM's debt to Ramp can be matured or unmatured, but it cannot be contingent. *In re Prudential Lines, Inc.*, 148 B.R. 730, 752 (Bankr..S.D.N.Y.1992); *Trojan Hardware Co. v. Bonacquisti Construction Corp.,* 141 A.D.2d 278, 534 N.Y.S.2d 789, 791 (N.Y.A.D. 3rd Dept.1988). An unmatured debt is generally evidenced by a contract and can be expected in the normal course of events to be due and owing in the future, although the obligation has not yet ripened. A contingent liability, however, is marked by uncertainty as to whether any obligation will ever arise. *Id.*

72.     As set forth above, it is clear that New GM's debts to Ramp under the Wind Down Agreements are contingent upon Ramp satisfying certain "pre-conditions" subsequent to the Petition Date. For this reason, GM maintains no right of set-off under Section 553 of the Bankruptcy Code."[5]

---

[5] GM's clearly has a problem articulating when Ramp's claim for the Wind Down Money is due for obvious reasons: if it argues that the Wind Down Money became due pre-petition to preserve its set-off rights, it is in violation of the automatic stay and is in contempt. However, if it argues that the Wind Down Money is not due until after the Petition Date, it maintains its defense to the stay violation but destroys its ability to demonstrate set-off. For this reason, it argues both! Compare ¶60 the Motion ("[The right to the Wind-Down Money] represents a pre-petition claim by Ramp") with ¶21: "By letter dated October 14, 2010, New GM responded and notified Ramp of certain pre-conditions that needed to be satisfied to receive a Wind-Down Payment.")

446300v1

**B.     GM HAS NO RIGHT OF SETOFF OF GM'S CLAIMS, IN ANY EVENT, UNDER SECTION 553(a)(2) BECAUSE NEW GM IS ASSERTING SET-OFF RIGHTS WITHIN 90 DAYS OF THE PETITION DATE.**

73.     As set forth above, there is little doubt that Ramp's claim against New GM under the Wind-Down Agreements arose post-petition. However, if this Court should determine that Ramp's claims against New GM arose pre-petition, then New GM, by virtue of its assignment of GM's claims as part of the sale, could not have obtained that claim prior to July 10, 2009, the date New GM purchased substantially all of the assets of the GM Debtors and assigned to New GM the Wind-Down Agreements. Motion ¶1.

74.     Section 553(a)(2)(B) of the Bankruptcy Code prohibits set-offs that occur by assignment, within 90 days of the bankruptcy[6].  In the present case, since Ramp filed for Chapter 11 relief on October 5, 2009, eighty-seven days later, New GM may not assert any claims it obtained by assignment.[7]  Therefore, any claim assigned by the GM to New GM cannot be set-off, even if Ramp's claims arose prior to the Petition Date.

**C.     NEW GM HAS NO RIGHT TO SETOFF AFFILIATE CLAIMS BECAUSE THE DEBTS ARE NOT MUTUAL.**

75.     The set-off claims of New GM, as set forth in the GM POC, have two components: i) the unpaid rent claim due to Argonaut, an affiliate of GM; and ii) the chargeback claims due to General Motors Corporation and assigned to GM. As set forth immediately above, New GM has no right to set-off any assigned claims under Section 553(a)(2)(B).

---

[6] Section 553(a)(2) states, in relevant part: "this title does not effect the right of a creditor to offset a mutual debt…, except to the extent that-…(2) such claim was transferred, by an entity other than the debtor to such creditor---…(B) ─ (i) after 90 days before the filing of the petition; and (ii) while the debtor was insolvent….".

[7] The statute also requires that the Debtor be insolvent as of the transfer (July 10, 2010).  There is a presumption of insolvency under Section 553(c) that has not been rebutted.

23

76.     To the extent: i) the rent claim due by the Debtor to Argonaut was not assigned to GM; and ii) are otherwise able to be set-off under Section 553, GM would still be unable to set-off the Argonaut claim. As set forth in the Motion (¶18), $450,000 of the $699,000 set-off Amount is for rent due not to either GM or New GM, but to Argonaut.  While the Wind Down Agreements allows New GM to set-off claims against sums owed by Ramp to affiliates, such "triangular" set-off are not permissible under the Bankruptcy Code.

77.     The additional restrictions imposed by section 553 are well-settled. In order to effectuate a setoff in bankruptcy, courts construing the Code have long held that the debts to be offset must be mutual, prepetition debts. *See, e.g., Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),* 181 B.R. 730, 738-39 (Bankr. S.D.N.Y.1995).

78.     The case law is also clear that debts are considered "mutual" only when "they are due to and from the same persons in the same capacity." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002)(*citing Westchester,* 181 B.R. at 740). Put another way, mutuality requires that "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." *Garden Ridge*, 338 B.R. at 633-34 (quoting *Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1036 (5th Cir.1987)).

79.     Because of the mutuality requirement in section 553(a), courts have routinely held that triangular setoffs are impermissible in bankruptcy. *See, e.g.*, *Matter of United Sciences of America, Inc.*, 893 F.2d 720, 723 (5th Cir.1990) ("The mutuality requirement is designed to protect against 'triangular' set-off; for example, where the

24

creditor attempts to set off its debt to the debtor with the latter's debt to a third party."); *In re Elcona Homes Corp. (Green Tree Acceptance, Inc.),* 863 F.2d 483, 486 (7th Cir.1988) (holding that the Code speaks of a "mutual debt" and "therefore precludes 'triangular' set offs"). Moreover, because each corporation is a separate entity from its sister corporations absent a piercing of the corporate veil, "a subsidiary's debt may not be set off against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances." *Sentinel Products Corp.*, 192 B.R. at 46 (*citing MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615, 618 n. 2 (2d Cir.1989)).

80.    In *In re Semi-Crude, LLP*, 399 B.R. 388 (Bankr. D.Del. 2009), the Bankruptcy Court in Delaware recently had the opportunity to address the identical issue that is presented here: can parties agree to a triangular set-off, despite the fact that said agreement violates the mutuality requirement of Section 553 of the Bankruptcy Code. The Bankruptcy Court, construing the definition of "mutuality" narrowly, denied the set-off:

> The Court finds the definition of "mutuality" embraced by other courts to be instructive in this matter. The overwhelming majority of courts to consider the issue have held that debts are mutual only if "they are due to and from the same persons in the same capacity." See, e.g., *Westinghouse,* 278 F.3d at 149*; Garden Ridge,* 338 B.R. at 633*;* Westchester, 181 B.R. at 740. It is also widely accepted that "mutuality is strictly construed against the party seeking setoff." *In re Bennett Funding Group, Inc.*, 212 B.R. 206, 212 (2d Cir. BAP 1997). See also *Garden Ridge,* 338 B.R. at 634*; In re Clemens,* 261 B.R. 602, 606 (Bankr.M.D.Pa.2001). The effect of this narrow construction is that "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." Garden Ridge, 338 B.R. at 633-34 (quoting Braniff Airways, Inc., 814 F.2d at 1036).

> Construing the generally accepted definition of mutuality narrowly, as it is obliged to do, the Court concludes that mutuality cannot be supplied by a

25

multi-party agreement contemplating a triangular setoff. Unlike a guarantee of debt, where the guarantor is liable for making a payment on the debt it has guaranteed payment of, an agreement to setoff funds does not create an indebtedness from one party to another. An agreement to setoff funds, such as the one claimed by Chevron in this case, does not give rise to a debt that is "due to" Chevron and "due from" SemCrude. A party such as SemCrude does not have to actually pay anything to a creditor such as Chevron under a tripartite setoff agreement; rather, it only sees one of its receivables reduced in size or eliminated. SemCrude does not owe anything to Chevron, thus there are no debts in this dispute owed between the "same persons in the same capacity."

*Semi-Crude,* 399 B.R. 396-97.

81.     Therefore, not only is New GM prohibited from setting-off the rent due to Argonaut because its obligation to pay the Wind-Down Money arose post-petition, it cannot set-off the Wind-Down Money against the rent due to a lack of mutuality.

## D.     GM MAY NOT SET-OFF THE CHARGEBACKS BECAUSE IT DID NOT TIMELY ASSERT THE CHARGEBACKS UNDER APPLICABLE LAW.

82.     Ramp has already established two independent reasons why New GM may not set off the $292,524.63 related to the charge-back audit: i) the Wind Down Money is a post-petition obligation, which cannot be set-off against this pre-petition claim; and ii) since GM obtained an assignment of this claim under Section 553(a)(2), within 90 days of the Petition Date, it is not capable of set-off. There is a third reason why this claim is not capable of set-off.

83.     On August 6, 2008, Governor David Paterson signed into law a bill containing several amendments to the New York Franchised Motor Vehicle Dealer Act (the Act), N.Y. Veh. & Traf. Law §§ 461 *et seq*. The amendments bring about substantial changes in areas such as dealer terminations, warranty reimbursements, dealer relocations and the addition of new dealers.

446300v1

84.   The amendments provide that no franchisor may conduct an audit or charge back on any warranty or sales incentive payment more than one year after the date the franchisor made such payment to the dealer. Timely charge backs may only be charged after a representative of the franchisor has met with the dealer, explained in detail the basis for each proposed charge back and given the dealer a reasonable opportunity to explain its position relating to each. *See* Veh. & Traf. Law §§ 461(z).

85.   In particular, a franchisor may not deny or charge back a payment for warranty work unless the franchisor satisfies its burden of proof that the dealer did not make a good faith effort to comply with the reasonable written procedures of the franchisor or that the dealer did not actually perform the work.

86.   The Chargebacks here were the result of an audit conducted on 04-21-09 thru 04-29-09; and again on 05-05-09 thru 05-08-09. The audit period for vehicle incentives (customer rebates) was 09-07-07 thru 03-09-09. The chargeback for vehicle incentives for this period was originally $31,524.63, subsequently reduced to $21,524.63.

87.   Siimultaneously, GM conducted an audit of SFE (Standards for Excellence) payments made to Ramp Chevrolet. This audit covered the period from the 4th quarter of 2005 thru the 3rd quarter of 2008. The chargeback for this audit was $271,000.00.

88.   At the time of the audit during May, 2009, GM was already foreclosed from charging back any funds Ramp had received through May, 2008, because the statute required GM to not only audit, but chargeback within one year of Ramp's receipt of payment. By the time New GM charged back the Chargeback Amount on March 11, 2010 (a period of ten months from when the audit was conducted), GM was out of time

27

on any remaining vehicles, because the audit was conducted through September 30, 2008. Put simply, since GM did not chargeback until more than one year after the end of the audit period, there are no vehicles that are eligible for the chargeback of the SPE incentives.

89.    Furthermore, since GM did not charge back until March 11, 2009, GM is not eligible under the statute to chargeback any of the incentive moneys (where the one year period definitively ended March 9, 2010).

90.    Therefore, New GM may not set-off the Chargebacks for this additional reason as well.

## POINT V

### GM HAS NO RIGHT OF RECOUPMENT GM MAINTAINS NO RIGHT OF RECOUPMENT BECAUSE THE OBLIGATIONS THAT FLOW FROM GM AND THE DEBTOR ARISE FROM SEPARATE AGREEMENTS

91.    The right of New GM to recoup is limited to only those "obligations arising out of the same contract or transaction."  (citing *In re Bill Heard Enterprises*, 400 B.R. 813, 822 (Bankr.N.D. Ala. 2009).

92.    Courts have applied one of two primary approaches in determining whether the obligations at issue meet the "same transaction" requirement. One approach is the "logical relationship test" articulated by the Supreme Court in *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) ("Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.") (internal quotations omitted). *See also Newberry Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d at 1402-03.

28

93.     The second approach, adopted by the Second Circuit, incorporates a more restrictive "single integrated transaction test." *See Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138 (2d Cir.2002) ("Recoupment may only be applied in bankruptcy where 'both debts ... arise out of a *single integrated transaction* so that it would be *inequitable* for the debtor to enjoy the benefits of that transaction without also meeting its obligations.' ") (citing *Malinowski v. New York State Dep't of Labor (In re Malinowski),* 156 F.3d 131, 133 (2d Cir.1998)) (quoting *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),* 973 F.2d 1065, 1081 (3d Cir.1992)) (emphasis in *Malinowski*). *See also Anes v. Dehart (In re Anes),* 195 F.3d 177, 182-83 (3d Cir.1999); *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.),* 82 F.3d 956, 959-61 (10th Cir.1996); *United States ex rel. United States Postal Serv. v. Dewey Freight Sys., Inc.,* 31 F.3d 620, 623 (8th Cir.1994), *reh'g denied,* 1994 U.S.App. LEXIS 30564 (8th Cir. Nov. 2, 1994).

94.     The Second Circuit requires more than a " 'mere logical relationship'... to bring … mutual debts within the 'same transaction.' " *BNY Fin. Corp. v. Masterwear Corp.  (In re Masterwear Corp.)*, 229 B.R. 301, 311 (Bankr.S.D.N.Y.1999) (citations omitted).  In other words, "[w]hen the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts, they are not part of the same transaction." *In re Malinowski,* 156 F.3d at 134.

95.     In the present case: i) the right to the Wind Down Money arises from the Wind-Down Agreements between the Debtor, GM and New GM, by assignment, executed during 2009; ii) the debts owed to Argonaut (and not to New GM) arise out of the sub-lease between the Debtor and Argonaut, pursuant to a sub-lease executed during

29

2007; and iii) the Franchise Agreement, which allows the Debtor to seek the funds subject to the chargeback, was executed prior to the GM bankruptcy proceeding.  Three separate agreements, executed years apart.  Hardly a single integrated transaction sufficient for New GM to meet its very high burden of proving recoupment.

## A.   GM HAS NO RIGHT OF RECOUPMENT BECAUSE THERE HAS BEEN NO OVERPAYMENT.

96.   In addition to the requirement that the recoupment arise from a single integrated transaction, is the requirement that there must be an over payment. *In re Health Management Ltd. Partnership*, 336 B.R. 392 (Bankr. C.D.Ill. 2005); *In re Public Service Co. of New Hampshire,* 107 B.R. 441, 445 (Bankr. D.N.H. 1989).

97.   In the present case, not only is their no over payment, but, regardless as to the outcome of the objection, it is undisputed that the Debtor will still be owed the sum of approximately $275,000.   See Motion, ¶64.   Therefore, New GM has no right to recoupment for this additional reason as well.

## CONCLUSION

For the foregoing reasons, Ramp respectfully requests that this Court enter an Order i) adjourning the Motion; or ii) denying New GM's Motion in all respects.

Dated: New York , New York
        November 11, 2010

                    WILK AUSLANDER LLP
                    *Counsel for Ramp Chevrolet, Inc.*

                    /s/ Eric J. Snyder
                    By: Eric J. Snyder ( ES 8032)
                    675 Third Avenue
                    New York, New York 10017
                    (212) 421-2233

446300v1