**HEARING DATE AND TIME: November 18, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: November 11, 2010 at 4:00 p.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

BINGHAM McCUTCHEN LLP
1 Federal Street
Boston, Massachusetts  02110
Telephone:  (617) 951-8000
Facsimile:  (617) 951-8736
John R. Skelton
Evan J. Benanti

Attorneys for General Motors LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

--------------------------------------------------------------X

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF GENERAL MOTORS LLC**
**TO ENFORCE 363 SALE ORDER AND APPROVED DEFERRED**
**TERMINATION AGREEMENTS AGAINST RAMP CHEVROLET, INC.**

## TABLE OF CONTENTS

Page

I.    OVERVIEW ................................................................................................... 1

II.    ARGUMENT .................................................................................................. 4

    A.    The Fact That Ramp is a Chapter 11 Debtor Does Not Change The Fact That Ramp Agreed To This Court's Exclusive Jurisdiction To Adjudicate Any Disputes Concerning The Wind-Down Agreements. .................................... 4

    B.    Ramp's Assumption of the WDAs Means that Ramp Is Bound By Provisions, Even Those That Might Otherwise Have Been Subject To A Challenge Under §553 ......................................................................................... 5

    C.    The §3(c) Netting Provision Is Not Just "Set Off" But Defines New GM's Basic Payment Obligation.................................................................................... 11

    D.    Ramp's Wind-Down Payment is Subject to New GM's Reconciliation Rights Pursuant To The Open Account. ............................................................. 11

    E.    New GM's Claim Should Not Be Reduced Based on the New York Dealer Statute. ................................................................................................................ 15

III.    CONCLUSION............................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Able Demolition v. Pontiac*,
    739 N.W.2d 696 (Mich. Ct. App. 2007) ................................................................11

*Frank v. ITT Commercial Fin. Corp.*
    (*In re Thompson Boat Co.*), 230 B.R. 815 (Bankr. E.D. Mich. 1995)....................13

*In re Bill Heard Enterprises, Inc.*,
    400 B.R. 813 (Bankr. N.D. Ala. 2009) .......................................................12, 13, 14

*In re Bob Brest Buick Inc.*,
    136 B.R. 322 (Bankr. D. Mass. 1991) .......................................................12, 13, 14

*In re Eveleth Mines, LLC*,
    312 B.R. 634 (Bankr. D. Minn. 2004) ....................................................................4

*In Re Flagstaff Realty Assocs.*,
    60 F.3d 1031 (3d. Cir. 1995)....................................................................................12

*In re Jamesway Corp.*,
    201 B.R. 73 (Bankr. S.D.N.Y. 1996) ........................................................................5

*In re Kopel*,
    232 B.R. 57 (Bankr. E.D.N.Y. 1999)..................................................5, 7, 8, 9, 10

*In re McWilliams*,
    384 B.R. 728 (Bankr. D.N.J. 2008) .........................................................................12

*In re Monroeville Dodge, Ltd.*,
    166 B.R. 264 (Bankr. W.D. Pa. 1994) .....................................................................8

*In re Pan Am Corp.*,
    175 B.R. 438 (S.D.N.Y. 1994).................................................................................11

*In re Village Rathskeller, Inc.*,
    147 B.R. 665 (Bankr. S.D.N.Y. 1992)..................................................7, 8, 9, 10

*Lee v. Schweiker*,
    739 F.2d 870 (3d Cir. 1984)....................................................................................12

*Minority Earth Movers, Inc. v. Walter Toebe Constr. Co.*,
    649 N.W.2d 397 (Mich. Ct. App. 2002) ..................................................................13

*NLRB v. Bildisco and Bildisco,*
  465 U.S. 513 (1984) ........................................................................................................5, 7

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas and Elec. Co.,*
  549 U.S. 443 (2007) ...........................................................................................................13

*United States v. Gerth,*
  991 F.2d 1428 (8th Cir. 1993) ........................................................................................6, 8, 9

STATUTES

11 U.S.C. § 108(b) .....................................................................................................................8

11 U.S.C. § 362 ........................................................................................................................14

11 U.S.C. § 363 ........................................................................................................................14

11 U.S.C. § 365 .....................................................................................................................8, 16

11 U.S.C. §553 ..............................................................................1, 2, 3, 5, 7, 8, 9, 10, 12, 13, 14

N.Y. Veh. & Traf. Law § 463(z) ................................................................................................15

Fed. R. Bank. Proc. 7001 ..........................................................................................................10

A/73558252.3

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC f/k/a General Motors Company ("**New GM**") respectfully submits this reply memorandum:  (i) in support of the Motion of General Motors LLC to Enforce 363 Sale Order and Approved Deferred Termination Agreements Against Ramp Chevrolet, Inc. ("**Ramp**") (the "**Motion**") [Docket No. 7480]; and (ii) in reply to the Objection of Ramp to the Motion (the "**Ramp Objection**") [Docket No. 7738].  New GM respectfully represents:

## I.    <u>OVERVIEW</u>

1.      Ramp's objection highlights that there are two essential issues.  First, should the determination of Ramp's challenge to New GM's enforcement of the WDA terms be by this Court or the Ramp Bankruptcy Court?  Second, does Ramp's assumption of the WDAs and the fact that the Assumption Order provides that New GM's payment obligations is to be "pursuant to" the terms of the WDA make all of the provisions, including ¶ 3(c) binding?

2.      Even though ¶12 of the Wind-Down Agreements ("**WDAs**") require any disputes be adjudicated in this Court, Ramp contends that because it is a Chapter 11 debtor and its challenge is based on §553 of the Bankruptcy Code, the Bankruptcy Court for the Eastern District of New York (the "**Ramp Bankruptcy Court**") not this court should adjudicate Ramp's challenge.

3.      The assumption *cum onere* issue is significant.  At the October 27 hearing before the Ramp Bankruptcy Court, Ramp asserted that its assumption of the WDA did not matter because assumption does not vitiate its ability to assert §553 defenses.   While the Ramp Bankruptcy Court recently identified the implication of Ramp's assumption of the WDAs as a threshold question (because Ramp's contempt motion against New GM must be denied if assumption *cum onere* means Ramp is bound regardless of any purported §553 defenses) that determination still requires consideration of the parties' respective rights and obligations under the WDAs, a dispute that the WDAs expressly provide are to be resolved here.  Apparently recognizing that assumption *cum onere* really means assumption *cum onere*, Ramp now asserts

that its assumption motion itself was an adjudication of disputed terms of the WDAs and New GM is now barred from asserting otherwise.  Of course, if Ramp intended the assumption motion to be an enforceable and binding adjudication of New GM's rights under the WDAs, then Ramp specifically violated ¶12 of the WDA because such motion was required to be brought in this Court.  Of course, New GM viewed assumption as effectively a ratification of the WDA, rather than resolution of any controversy implicating this Court's reservation of exclusive jurisdiction.

4.      At the October 27 hearing, the Ramp Bankruptcy Court directed New GM to file a supplemental memo to address the assumption *cum onere* issue.  For itself, Ramp submitted a memo asserting that New GM waived any right to enforce the WDAs by not objecting to the Assumption Motion.  Of course, Ramp's assertion that the Assumption Motion constituted a binding adjudication of the parties' WDA rights undercuts its entire §553 argument, because once it decided to assume the WDAs it was bound by all terms, including ¶3(c).  Recognizing that it cannot avoid the implication of its assumption, Ramp now grossly mischaracterizes the Assumption Motion and the Assumption Order.  Not only did the Assumption Motion not challenge the enforceability of the terms of the WDAs, but the Assumption Order specifically provides that any payment responsibility by New GM was "pursuant to the terms" of the WDA. It did not and could not alter or enforce those terms, and it did not adjudicate New GM's rights thereunder.

5.      Assumption *cum onere* means that when a debtor assumes an executory contract to get its benefits, it accepts all of the provisions.  While there are very limited exceptions, such as if a provision is expressly unenforceable under the Bankruptcy Code (i.e., an *ipso facto* clause), or if the court concludes that the provision was specifically designed to thwart essential bankruptcy policies (and a refusal to enforce *would not cause* a substantial economic detriment to the non-debtor party), neither is applicable here.  Significantly this Court specifically approved the WDAs, and in doing so certainly did not believe the WDAs to be inconsistent with the Bankruptcy Code or that enforcement would thwart any essential bankruptcy policy.  To the contrary, because New GM was offering the WDAs to 1000+ dealers each and every term being

2

fully enforceable was obviously important to New GM's decision to go through with the §363 sale.[1]  Ramp's assumption of the WDAs prevents it now from seeking to challenge the terms of ¶3(c), whether pursuant to §553 or otherwise.

6.      By focusing on the fact that it is a debtor in bankruptcy seeking to assert bankruptcy-based defenses, Ramp conflates the issue of the appropriate forum and the merits of its claims.  As this Court has previously decided, the starting point for the forum analysis is the WDAs that Ramp executed (and subsequently assumed) and that the Court approved in its 363 Sale Order, agreements the Court specifically found constituted "valid and binding contracts, enforceable in accordance with their terms."  *See* 363 Sale Order, ¶31.  Based upon the WDAs and the 363 Sale Order, this Court has already determined that it has exclusive jurisdiction over any efforts to avoid the WDA terms.  *See, e.g.,* October 4, 2010 Hearing Transcript (the "Rally Transcript") at 56:4-15, attached as Exhibit D to the Motion.  Just because it is a debtor, Ramp should not be treated differently.

7.      Finally, Ramp's extensive arguments under §553 miss the point.  The payment terms in ¶3(c) are not simply a codification of state law set off rights.  Rather, they reflect the bargain struck with the dealers being offered WDAs.  Dealers would be eligible to receive a final wind-down payment (estimated in ¶3(a)) to be calculated by deducting any monies owed to New GM and its affiliates so long as they met the specific pre-conditions.  New GM was not going to agree to make wind-down payments to 1000+ dealers if those dealers could intentionally run up debt to New GM but still demand a full final wind-down payment.

---

[1] The New York State Department of Taxation and Finance (the "**DTF**") sent to New GM a notice of determination seeking to hold New GM responsible for past due taxes owed by Ramp.  Accordingly, New GM has requested that Ramp provide a release in favor of New GM executed by the DTF as a pre-condition to a final Wind-Down Payment.  As of the date hereof, Ramp has not provided such release and thus Ramp has not fulfilled all of the pre-conditions to be eligible to receive the final Wind-Down Payment, because Ramp has not provided other evidence reasonably satisfactory to New GM that it will have no liability or obligation to pay any such taxes that remain unpaid.  *See* Wind-Down Agreements, Exs. A-C to the Motion, ¶3.

A/73558252.3

## II.    ARGUMENT

**A.    The Fact That Ramp is a Chapter 11 Debtor Does Not Change The Fact That Ramp Agreed To This Court's Exclusive Jurisdiction To Adjudicate Any Disputes Concerning The Wind-Down Agreements.**

8.    Ramp's motion seeking to hold New GM in contempt for determining the final wind-down payment pursuant to the terms of the WDAs directly implicates the rights and obligations of New GM and Ramp under the WDAs.  The fact that Ramp is currently a Chapter 11 debtor does not change the essential nature of the dispute.  While Ramp's arguments are based on the Bankruptcy Code just like the various claims being raised by other wind-down dealers in other forums, the basic issue remains the enforceability of the WDAs.  While Ramp characterizes its challenge as solely relating to set off it is still a challenge to the enforceability of the WDAs as written.

9.    This Court is certainly able to determine whether a bankruptcy debtor who assumes the WDAs in order to collect a wind-down payment, is subject to all of the provisions, including how the amount of the final payment is calculated.  Regardless of the underlying law sought to be applied or the forum, Ramp agreed that this Court retained "full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of [the WDA] and any other matter related thereto."  *See* Wind-Down Agreements, ¶12.  The issues raised in Ramp's Contempt Motion in the Ramp Bankruptcy represent just such a dispute and should be adjudicated here.

10.    As this Court noted in the Rally case, there are strong policy reasons for vesting exclusive jurisdiction of post-sale disputes over a sale order in the bankruptcy court that approved the sale, because it is important that the purchasers of assets get what they bargained for and it is also important that they have confidence in their ability to do so before committing their funds to a proposed sale.  Rally Transcript at 49:2-13; *see also In re Eveleth Mines, LLC*, 312 B.R. 634, 645 n.14 (Bankr. D. Minn. 2004).  That is particularly important here where Ramp is challenging the basic enforceability of the WDA payment conditions, obviously significant to New GM given that WDAs were being offered to 1000+ dealers.  Moreover, it was completely

A/73558252.3

predictable that some of the wind-down dealers would ultimately file for bankruptcy themselves (as a number have), since the business of many such dealers necessarily discontinued.  Ramp, or another such dealer, could choose to reject the WDA.  However, a dealer that opts to assume the WDA is bound to all of its terms, just like any other debtor which assumes an executory contract.

**B.**     **Ramp's Assumption of the WDAs Means that Ramp Is Bound By Provisions, Even Those That Might Otherwise Have Been Subject To A Challenge Under §553.**

    **(1)**     **New GM Has Not Waived the Right to Challenge And Is Not Barred From Challenging Ramp's Attempt to Eviscerate the Express Terms of the WDAs.**

11.     At the hearing on October 27, the Ramp Bankruptcy Court framed the initial question as whether Ramp's assumption of the WDAs without any restrictions or limitations effectively bars its ability to challenge the provisions of ¶3(c) of the WDAs as an "improper set off."  It is well established that once a debtor elects to assume an executory contract, it assumes the contract *cum onere*.  *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984).  This means that a debtor "cannot simply retain the favorable and excise the burdensome provisions of an agreement."  *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999).  While Ramp's objection addresses in detail its substantive §553 arguments, it does not cite a single case for the proposition that notwithstanding its assumption of the WDA (without limitations), New GM may not enforce ¶3(c) as assumed.  Instead, and essentially acknowledging that its assumption means that it is bound by all WDA terms, Ramp now asserts that because it did not object to the Assumption Motion, New GM is barred by the doctrines of *res judicata,* judicial estoppel and waiver from enforcing ¶ 3(c) (all arguments it raised for the first time after the October 27 hearing).

12.     There is no waiver, estoppel or *res judicata*.  "Waiver is the intentional relinquishment of a known right.  Waiver must be evidenced by a clear manifestation of intent and be unmistakable and unambiguous."  *In re Jamesway Corp.*, 201 B.R. 73, 76-77 (Bankr. S.D.N.Y. 1996).  It is Ramp's burden to prove waiver.  *Id.*  As presented by Ramp's Assumption Motion, GM had no reason to object to the Assumption Motion or otherwise declare Ramp in

default.  Assumption denotes ratification of the terms of an executory contract, rather than a challenge to such terms.

13.     Nowhere in Ramp's Assumption Motion did it specifically state that ¶3(c) was not enforceable, that New GM was not entitled to calculate the final Wind-Down payment pursuant to the terms of the WDA, or that any enforcement of the WDAs would be anything but "pursuant to" their terms.  The Assumption Motion did not challenge the application of ¶3(c) or make clear that Ramp was seeking to assume only the benefit of ¶3(a) and that it did not intend to be bound by either the pre-conditions in ¶3(b) or the final payment qualifiers in ¶3(c).  Indeed, the proposed order included with the Assumption Motion specifically provided that any payment by New GM would be pursuant to the terms of the WDA.  Similar to the bankruptcy court's order in *United States v. Gerth*, 991 F.2d 1428, 1429-30 (8th Cir. 1993), the Assumption Order specifically provides that any payment by New GM of the wind-down payment is to be "pursuant to the terms of the WDA."  Assumption Order at 2.  As such, New GM concluded that its rights under the WDAs were fully protected and that Ramp's assumption of the WDAs did not alter any of those rights.  There was simply no basis to conclude otherwise.

14.     Certainly, if Ramp intended its Assumption Motion to be, in effect, a declaratory judgment action nullifying certain provisions of the WDA, then it was obligated to make any such assertion clear in its papers; and, more importantly, to bring that challenge as an adversary proceeding in this Court.  If it now claims that the Assumption Motion was intended as an adjudication of disputed issues under the WDAs, not only was that motion intentionally misleading, but it was also in violation of ¶12 of the WDA.[2]  To be fair, nothing in the Assumption Motion suggest Ramp had such an intent.  Ramp's argument now is nothing more than an after-the-fact attempt to try to avoid the implication of its assumption *cum onere* of the WDAs.

---

[2] If Ramp intended to "overrule" New GM's rights under the WDAs then an assumption motion was not the proper procedure.  Instead, Ramp was required to seek a declaratory judgment pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.  Of course, Ramp did not do so because any request for a declaratory judgment concerning the WDAs would need to have been heard by this Court.

A/73558252.3

15.     If Ramp wanted a determination that it could use bankruptcy "defenses" post-petition to override the express terms of the WDAs (or that other provisions of the WDAs are not enforceable) then it was obligated not simply to move to assume, but to seek a declaratory judgment.  Because it did not, if there was a waiver by anyone it was Ramp.  Once Ramp chose to assume the WDAs without any limitations or challenges (unlike the debtor in *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999) and like the debtor in *In re Village Rathskeller, Inc.*, 147 B.R. 665, 671-72 (Bankr. S.D.N.Y. 1992)), it should not be permitted to assert that challenge now.

16.     Further, when Ramp filed its Assumption Motion, it still had not yet complied with the pre-conditions to its right to payment.  In fact, Ramp did not even assert that it had purportedly satisfied the WDA pre-conditions until it filed its first amended disclosure statement on August 19.  *See* Response of Debtor to Objection of Certain Parties to Debtor's Disclosure Statement, Ex. B at 6, attached hereto as **Exhibit A**.  This is particularly important given the issue of the Debtor's New York tax obligations, which have not been satisfied and represent a competing claim that would allow New GM to defer from making any payment until such claim is resolved.

    **(2)     Assumption *cum onere* means that All of the WDA Terms Are Binding upon Ramp.**

17.     At the October 27 hearing in the Ramp Bankruptcy Court, Ramp asserted that New GM's application of ¶3(c) is an improper and illegal set off and that its §553 defenses survive its assumption of the WDAs.  *Bildisco* provides that when a debtor assumes an executory contract, all contract provisions are fully enforceable.  Nevertheless, courts have recognized that in two very limited circumstances certain provisions may not be enforced in a bankruptcy context post-assumption.  Neither exception is applicable here.

18.     The first limited exception provides that provisions that are "expressly rendered unenforceable by the Bankruptcy Code" are not enforceable against a debtor in bankruptcy post assumption.  *See e.g., In re Kopel*, 232 B.R. 57, 64 (Bankr. E.D.N.Y. 1999).  The types of

provisions that explicitly violate express Bankruptcy Code protections include those that violate: §108(b), which extends certain time periods that otherwise would expire after the petition date; §365(e)(1), which makes *ipso facto* clauses unenforceable; and §365(f)(1), which makes certain contractual clauses restricting assignment unenforceable. *In re Village Rathskeller, Inc.*, 147 B.R. 665, 671-72 (Bankr. S.D.N.Y. 1992); *Kopel,* 232 B.R. at 64.

19.    Paragraph 3(c) is not a provision that explicitly violates express contractual protections.  Paragraph 3(c) provides:

> *In addition to any other set off rights under the Dealer Agreement* payment of all or any part of the Wind-Down Payment amount may, in GM's or the 363 Acquirer's reasonable discretion, be (i) reduced by any amount owed by Dealer to GM or the 363 Acquirer, as applicable, or their Affiliates, and/or (ii) delayed in the event GM or the 363 Acquirer, as applicable, has a reasonable basis to believe that any party has or claims any interest in the assets or properties of Dealer Relating to the Subject Dealership Operations including, but not limited to, all or any part of the Wind-Down Payment Amount.  WDA, ¶3(c) (emphasis added).

As such, ¶3(c) is not simply a codification of existing state law set off (or recoupment) rights. Rather, the introductory phrase specifically reflects that it includes something more than just "set off."

20.    Even if ¶3(c) is read to implicate setoff otherwise subject to challenge under §553, it is not a provision that explicitly violates any express contractual protections such that enforcement should be denied.  Indeed, courts have found similar provisions enforceable post-assumption.  For example, the court *In re Monroeville Dodge, Ltd.*, 166 B.R. 264, 267-68 (Bankr. W.D. Pa. 1994), found that the debtor dealer assumed its dealer agreement *cum onere* and therefore, pursuant to the agreement's netting provision, the counterparty manufacturer was permitted to apply post-petition credits owing to the debtor against the manufacturer's allowed administrative claim.  In doing so, the court specifically rejected "the proposition that the *cum onere* principle does not apply to a provision in an assumed executory contract that violates §553(a) of the Code." *Id*. at 268.  Similarly, in *United States v. Gerth*, 991 F.2d 1428, 1429-30 (8th Cir. 1993), the U.S. Department of Agriculture's Agricultural Stabilization and Conservation

Service sought stay relief to set off pursuant to §553 payments due to the debtor farmer, pursuant to certain Conservation Reserve Program contracts that the debtor had assumed, against a debt which the debtor owed the government. In reversing the bankruptcy court's denial of stay relief, the Eighth Circuit noted that the debtor had evaluated the contract, assumed it as beneficial to the estate, and having received the benefits, could not seek to avoid the burdens. *Id.* at 1432-33. The Eighth Circuit specifically noted that the bankruptcy court's order approving the assumption of the contract provided that "the debtor shall accept and assume the responsibilities contracted for under his contract for the Conservation Reserve Program." *Id.*

21.     The second limited exception is that a Bankruptcy Court may refuse post-assumption enforcement of a contractual provision if it finds that the provision was clearly "designed to thwart policies underlying the Bankruptcy Code by circumventing certain of its provisions," and "there is no substantial economic detriment to the [contract counter party] shown and where enforcement would preclude the bankruptcy estate from realizing the intrinsic value of is assets." *Rathskeller,* 147 B.R. at 672. A critical qualifier to this limited exception, especially relevant here, is that a court may only to refuse to enforce a provision if there is "no substantial economic detriment to the [non-debtor counterparty]," i.e., New GM. *Rathskeller, Inc.*, 147 B.R. at 672 (*citing In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1992)).

22.     There is certainly no basis here to refuse to enforce ¶3(c) on equitable grounds. The payment provisions (and limitations) were an essential part of New GM's bargain when it purchased Old GM's assets and offered WDAs to 1000+ dealers. Indeed, this Court blessed this provision in approving the 363 Sale, and would not have done so if it was "expressly unenforceable" or designed to thwart the policies underlying the Bankruptcy Code. These agreements were specifically approved as part of the New GM acquisition and as such were an essential part of the transaction, and thus should not be overridden lightly.[3] *E.g., Rathskeller,*

---

[3] In *Kopel*, the debtor veterinarian entered into a transaction that included several agreements with cross default provisions that the court found to be a single transaction. *Kopel*, 232 B.R. at 60-61. The debtor later argued that the cross-default provision in the lease was unenforceable as contrary to essential bankruptcy policy and, thus need not be cured as part of the proposed lease assumption. Ultimately, the court in *Kopel* upheld the enforceability of the cross-default provisions post-assumption. *Kopel*, 232 B.R. at 67-68. In doing so, the court specifically

9

147 B.R. at 673 (recognizing "a subordination provision is an economic term of the landlord's bargain and ought not lightly be overridden.").[4]  Indeed, the fact that the WDAs affected so many dealers is one of the reasons why the continuing jurisdiction provision was so important to New GM.  Paragraph 3(c) is designed to protect New GM from the situation where wind down dealers could incur huge debts to New GM, refuse to pay those debts, file for bankruptcy protection, assume the WDAs without limitation and then seek to compel payment.[5]  By choosing to receive the benefits of the WDAs, (here even after the application of the ¶3(c) reconciliation, approximately $275,000) Ramp had to assume all of the provisions and in doing so relinquished any right to challenge New GM's netting of obligations as violative of §553.  Of course, having one court decide disputes concerning the fundamental bargain reflected by the WDAs is essential if there is to be uniformity of interpretation and application of those rights.[6]

---

considered the impact of non-enforcement on the non-debtor counterparty's bargain: "enforcement of a cross-default provision should not be refused where to do so would thwart the non-debtor party's bargain."  *Id.* at 66.  While acknowledging the real possibility that enforcing the cross-default provision and requiring cure of the defaults under the other agreements upon assumption of the lease would hamper the debtors' reorganization, the *Kopel* court nonetheless found "no federal bankruptcy policy [was] offended by enforcing the cross-default provision linking the Note and the Lease." *Id.* at 67-68.

[4] Similarly, in *Rathskeller*, the court found that a subordination provision in an assumed lease was enforceable post-assumption.  There, the debtor tenant assumed the lease, which was far below market rent, but the lease was subject to the lien of a mortgagee which was in the process of foreclosing.  Because the lease did not include a non-disturbance agreement the subordination provision meant that the foreclosure would wipe out the otherwise valuable lease.  The *Rathskeller* court, like the *Kopel* court, considered the importance of the non-debtor counterparty's bargain and noted that the subordination provision was part of the landlord's bargain and should not be overridden lightly. *Rathskeller*, 147 B.R. at 673.

[5] That is precisely what is at stake here.  First, Ramp intentionally stopped paying rent, thus increasing its debt owed to New GM even though it knew that under the terms of the applicable leases any such unpaid rent would be added to its open account and reducing the final Wind-Down payment amount.  It also knew when it executed the WDA that New GM asserted an audit charge back for improper payments fraudulently earned.  Second, because Ramp still has yet to provide to GM a release by the New York DTF confirming that it does not intend to pursue any claims against GM for any tax liability of Ramp, there is a competing claim putting New GM at risk of paying twice.

[6] The procedural posture in *Kopel* is also significant.  The *Kopel* court was considering cross motions for summary judgment in an adversary proceeding, including the debtor's request for a declaration that the cross-default provision was unenforceable.  *Kopel*, 232 B.R. at 59-60.  In *Kopel*, the debtor specifically challenged the enforceability of the cross-default as contrary to basic bankruptcy policies before assumption.  Here, Ramp did not raise the enforceability of ¶3(c) at the time it moved to assume the WDA.  It also has not filed an adversary proceeding to seek a declaratory judgment that ¶3(c) of the WDAs is unenforceable.  Instead of following the requirements of Fed. R. Bankr. P. 7001, Ramp sought a finding of contempt for alleged violation of the automatic stay (assuming, of course, that there was a stay violation), presumably because it recognized that filing a declaratory judgment action concerning the enforceability of ¶3(c) was an action that pursuant to its agreement in ¶12 of the WDAs must be brought before this Court.

**C.      The §3(c) Netting Provision Is Not Just "Set Off" But Defines New GM's Basic Payment Obligation.**

23.      Ramp's argument ignores the fact that pursuant to the express terms of the Wind-Down Agreements, Ramp is simply not entitled to a payment unless and until it (i) has satisfied all of the preconditions to payment, including, providing New GM a tax clearance letter (which it still has not done and apparently refuses to do) and (ii) owes no amounts to New GM and its affiliates.

24.      New GM only agreed to make a Wind-Down payment to a dealer if that dealer met all of the pre-conditions, including not owing New GM any monies.  This is a valid and enforceable condition precedent to Ramp's entitlement to payment.  *See, e.g., Able Demolition v. Pontiac*, 739 N.W.2d 696, 700 (Mich. Ct. App. 2007) ("A condition precedent is a fact or event that the parties intend must take place before there is a right to performance.") (quotation omitted).  If "the occurrence of a condition is required by the agreement of the parties, rather than as a matter of law, a rule of strict compliance traditionally applies."  *In re Pan Am Corp.*, 175 B.R. 438, 506 (S.D.N.Y. 1994) (quotation omitted).  Although Ramp characterizes New GM as effecting an improper setoff, in reality Ramp is challenging the contractual pre-conditions to its right to receive a final Wind-Down Payment.  As long as Ramp owes New GM and its affiliates monies, regardless of whether those obligations arose pre- or post-petition, under the express terms of the WDAs it does not have a right to compel New GM to make a Wind-Down Payment.

**D.      Ramp's Wind-Down Payment is Subject to New GM's Reconciliation Rights Pursuant To The Open Account.**

25.      Ramp also ignores the fact that the WDAs expressly provide that the Wind-Down Payment is to be paid by New GM posting a credit to Ramp's Open Account and thus is subject to the ongoing reconciliation of monies owed to New GM under the Dealer Agreements and applicable state law.  *See* Wind-Down Agreements, ¶3(b), Exs. A-C to Motion.  Pursuant to the Dealer Agreements, "all monies or accounts due Dealer are net of Dealer's indebtedness to General Motors and its subsidiaries."  Dealer Agreements § 17.10.

11

26.     This reconciliation through the Open Account and the netting provision, in both the Dealer Agreements and the Wind-Down Agreements, are enforceable contract rights and remedies. *See, e.g., In re Bill Heard Enterprises, Inc.*, 400 B.R. 813, 823 (Bankr. N.D. Ala. 2009) ("[I]t would be inequitable to allow the debtors, . . . to obtain the funds owed under the dealership franchise agreements without first allowing GM to recoup its damages arising from the dealerships' breaches of the same agreements."); *In re Bob Brest Buick Inc.,* 136 B.R. 322, 323-24 (Bankr. D. Mass. 1991) (holding that Nissan was entitled to recoup charges owed to it by debtor dealer from credits being earned by dealer).

27.     When Ramp decided to execute the Wind-Down Agreements in early June 2009, Ramp knew the charges to be posted to the Open Account, and that the reconciliation provisions authorized GM to net the ultimate Wind-Down Payment. Ramp simply saw the opportunity to receive a Wind-Down Payment, even as reduced by amounts it owed to New GM, as a better option than filing a claim in the Old GM Bankruptcy.

28.     Ramp also ignores that in order to determine the amount of the Wind-Down Payment (really any payment), New GM has the right to reconcile debits and credits pursuant to the doctrine of recoupment, which is fully enforceable in bankruptcy. The doctrine of recoupment "allows the creditor to assert that mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be 'setoff' under 11 U.S.C. Sec. 553." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984). Thus, a creditor with a right of recoupment generally can recoup the full amount owed, to the exclusion of other creditors. *See In Re Flagstaff Realty Assocs.,* 60 F.3d 1031, 1035 (3d. Cir. 1995) ("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditors' claims"). And, the right to exercise recoupment generally is not subject to the automatic stay. *See, e.g., In re McWilliams*, 384 B.R. 728, 730 (Bankr. D.N.J. 2008) ("[b]ecause recoupment does not involve separate mutual debts, it is an exception to the automatic stay") (*quoting Lee*, 739 F.2d at 875).

12

29.     In determining whether a creditor has a right to recoupment, courts look to applicable state law.  *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 452 (2007) (noting "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" by the Bankruptcy Code).   Further, the Bankruptcy Code does not limit a party's right to recoupment, and therefore if a right to recoupment exists under state law then a creditor is allowed to exercise that right.  *In re Bill Heard Enterprises, Inc.*, 400 B.R. 813, 820-21 (Bankr. N.D. Ala. 2009) (noting that "[i]f a right of recoupment or setoff exists under applicable state law, a creditor will be allowed a preference over other creditors" and that, with regard to Section 553's limitation on setoff rights, "there is no comparable provision in the Bankruptcy Code that limits a creditor's state law right to seek recoupment").

30.     Michigan law applies to the WDAs and the parties' rights under those agreements.  *See* Wind-Down Agreements, ¶15, Exs. A-C.  Michigan common law "allows one party to deduct monies owed to it by another party under the doctrine of recoupment as long as the two obligations arise out of the same contract or transaction."  *Bill Heard*, 400 B.R. at 822 (*citing Mayco Plastics, Inc. v. TRW Vehicle Safety Systems, Inc. (In re Mayco Plastics, Inc.)*, 389 B.R. 7 (Bankr. E.D.Mich. 2008) (*citing Mudge v. Macomb County*, 580 N.W.2d 845, 855 (Mich. 1998).  To invoke a recoupment right, "[i]t is sufficient that the counter-claims arise out of the same subject-matter, and that they are susceptible of adjustment in one action."  *Frank v. ITT Commercial Fin. Corp.* (*In re Thompson Boat Co.*), 230 B.R. 815, 824 n.11 (Bankr. E.D. Mich. 1995) (*quoting Ward v. Twp. of Alpine*, 171 N.W. 446, 450 (Mich. 1919)); *see also Minority Earth Movers, Inc. v. Walter Toebe Constr. Co.*, 649 N.W.2d 397, 402 (Mich. Ct. App. 2002) (*citing Ward*) (holding that recoupment extends to claims "aris[ing] out of, or ... connected with, the same transaction or contract.").

31.     In the automobile dealer context, the bankruptcy courts that have considered the issue of recoupment have specifically upheld its application.  *See In re Bill Heard Enterprises, Inc.*, 400 B.R. 813, 823 (Bankr. N.D. Ala. 2009); *In re Bob Brest Buick Inc.,* 136 B.R. 322, 323-

24 (Bankr. D. Mass. 1991).  In *Bill Heard*, the court concluded:  "[I]t would be inequitable to allow the debtors, . . . to obtain the funds owed under the dealership franchise agreements without first allowing GM to recoup its damages arising from the dealerships' breaches of the same agreements."  *Bill Heard*, 400 B.R. at 823.  *See also Bob Brest*, 136 B.R. at 323-24 (the Bankruptcy Court held that Nissan was entitled to recoup the charges owed to it by the dealer from credits being earned by the dealer).  In sum, New GM has a right of recoupment under governing Michigan law and is authorized to reconcile any credits and charges posted to the Open Account before making any payment to Ramp.

32.     Even if analyzed under §553, the reconciliation was authorized.  First, the claims at issue here (i.e. the audit charge back, the unpaid rent and Ramp's WDA payment claim) all arose pre-petition and therefore, even if it were applicable, are not barred by §553.  Section 553 provides, in relevant part, that except as otherwise provided in Sections 362 and 363 of the Bankruptcy Code, "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."  11 U.S.C. § 553.  Section 362, in turn, provides that the automatic stay applies to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).

33.     While Ramp asserts that the credit and rent changes are pre-petition, it ignores the fact that the WDAs were executed pre-petition, and, by letter dated September 23, 2009, Ramp notified New GM that it was exercising the early termination option.  As such, all of the "claims" arose pre-petition.[7]  While Ramp's dealership may not have officially ceased operations until

---

[7] In terms of its request that GM be found to be in contempt, there is no question that New GM has asserted that it is has valid reconciliation, recoupment and setoff rights.  Equally as clear, however, is that because these issues have been the subject of dispute, at least so far GM has not actually exercised those rights and therefore could not be deemed to have violated the automatic stay.

Further, New GM only filed a proof of claim in the Ramp bankruptcy proceedings to preserve its rights with regard to any amounts which are or may be due under the Dealer Agreements or the Wind-Down Agreements.  The proof of claim specifically stated that the claim was "filed under the compulsion of the bar date and is filed to protect GM from a potential forfeiture of claims or rights by reason of said bar date."  *See* New GM Proof of Claim,

A/73558252.3

post-petition, the Wind-Down payment does not reflect the monies generated from post-petition operations.  Thus, in "set off" terms New GM is entitled under applicable law to setoff against any Wind-Down payment that may be due, the amounts owed by Ramp.  Further, once Ramp assumed the Wind-Down Agreements, New GM did not need to seek relief from stay in order to effectuate a setoff.  Ramp specifically assumed the netting provisions and by reducing the Wind-Down Payment by the amount of monies owed by Ramp New GM is simply enforcing a contract provision that Ramp has assumed.[8]

**E.**    **New GM's Claim Should Not Be Reduced Based on the New York Dealer Statute.**

34.    Finally, Ramp also asserts that the New York Dealer Statute bars GM from collecting the audit chargeback.  Here, $271,000 of the $292,000 charge back relates to Ramp's disqualification for certain SFE payments because of "CSI interference".  In short, Ramp's employees fraudulently manipulated the CSI survey process so that the actual retail customers were not reported to GM but rather Ramp reported fictitious customer names so that the CSI surveys were directed, for example, to dealership employees.  This is not a situation where the charge back is because a form was filled out incompletely or some minor paperwork was missing.  Instead, the charge back is the result of intentional fraudulent misconduct by Ramp, conduct that is not protected by the one year provision in the New York Dealer Statute.  *See* N.Y. Veh. & Traf. Law § 463(z) (excluding one year provision from instances involving fraud).  Thus Ramp's assertion that this charge back is somehow time barred by the New York Dealer Statute is not accurate, factually or legally.

35.    The WDAs also included, among other things, a release of any claims or disputes relating to this audit.  Indeed, the release included in the WDAs specifically included any claims

---

Ex. F to Contempt Motion, at 5.  It also noted that its filing is not and shall not be deemed or construed as "consent by GM to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving GM."  *See* New GM Proof of Claim, Ex. F to Contempt Motion, at 5.

[8] There is little question that New GM would be entitled to relief from the automatic stay to exercise a setoff here.  Ramp has provided no argument or authority as to why New GM would not be entitled to relief.  As discussed, New GM is exercising a contractual right pursuant to the WDAs that Ramp has assumed.  Particularly in light of these facts, there is no basis for a finding of contempt against New GM, even if its conduct were found to violate the automatic stay.

A/73558252.3

related to SFE payments as well as the procedure for warranty and sales incentives post wind-down.  *See* Wind-Down Agreements, ¶5, Exs. A-C.  Because Ramp has assumed the Wind-Down Agreements, and once assumed, is bound by all of the provisions, Ramp cannot assert any claims or challenges now to pre-GM bankruptcy payments, including any claims relating to the SFE program.  In addition, pursuant to ¶5(d) of the Wind-Down Agreements, Ramp agreed to indemnify and hold New GM harmless for any costs and expenses incurred defending or litigating released claims.  For all of these reasons, the New York Dealer Statute does not provide a basis for reducing New GM's claim.

### III.    CONCLUSION

Ramp's assertion that it can force a payment from New GM that is fundamentally inconsistent with the terms of the WDA is particularly anomalous.  Absent the WDA, Ramp would have absolutely no relationship with New GM whatsoever.  Old GM would have rejected the dealer agreement and Ramp would have been left with whatever recovery it might have obtained on its claim.  Having executed the WDA knowing full well its terms, and now having assumed that agreement under §365, Ramp is bound by all of its terms.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form attached as Exhibit I to the Motion, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem proper.

Dated: November 15, 2010
     New York, New York

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

A/73558252.3

BINGHAM McCUTCHEN LLP
1 Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736
John R. Skelton (*pro hac vice* admission pending)
Evan J. Benanti

Attorneys for General Motors LLC
f/k/a General Motors Company

A/73558252.3