**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026<br>(REG)<br><br>(Jointly Administered) |

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FOURTH INTERIM FEE APPLICATION**

Name of Applicant:  **Butzel Long, a professional corporation**

Time Period:  June 1, 2010 through and including September 30, 2010

Role in the Case:  Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation

Current Application:  Total Fees Requested: $433,892.50
Total Expenses Requested: $32,647.29

Prior Applications:  First Interim Fee Application, filed November 16, 2009 (Docket No. 4450), for the period from June 10, 2009 through and including September 30, 2009
    Total Fees & Expenses Requested: $259,041.37
    Total Fees & Expenses Allowed: $257,155.29
    Holdback: $23,615.87
Second Interim Fee Application, filed March 17, 2010 (Docket No. 5293), for the period from October 1, 2009 through and including January 31, 2010
    Total Fees & Expenses Requested: $271,014.48
    Total Fees & Expenses Allowed: $264,769.07
    Holdback: $25,365.94
Third Interim Fee Application, filed August 5, 2010 (Docket No. 6542), for the period from February 1, 2010 through and including May 31, 2010
    Total Fees & Expenses Requested: $450,636.10
    Total Fees & Expenses Allowed: *Sub judice*
    Holdback: *Sub judice*

**SUMMARY OF FOURTH INTERIM FEE APPLICATION
OF BUTZEL LONG FOR SERVICES RENDERED FOR
THE PERIOD JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

| NAME OF SHAREHOLDERS | DEPARTMENT[1] | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Eric Fisher | BK, LIT | 1996 | $525.00 | 251.9 | $132,247.50 |
| Christopher Nelson | LIT | 1995 | $350.00 | 18.9 | $6,615.00 |
| Barry N. Seidel | BK | 1978 | $725.00 | 80.0 | $58,000.00 |
| Robert Sidorsky | BK, LIT | 1983 | $625.00 | 7.7 | $4,812.50 |
| **Total Shareholders:** | | | | **358.5** | **$201,675.00** |

| NAME OF ASSOCIATES | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Maria Caceres-Boneau | LIT | 2008 | $325.00 | 57.3 | $18,622.50 |
| Katie L. Cooperman | BK, CORP | 2006 | $395.00 | 503.4 | $198,843.00 |
| Laura Tedesco | CORP | 2010 | $215.00 | 6.0 | $1,290.00 |
| **Total Associates:** | | | | **566.7** | **$218,755.50** |

---

[1]   BK – Bankruptcy, CORP – Corporate, LIT – Litigation.

| NAME OF PARALEGALS | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Frederick Capria | LIT | $245.00 | 68.6 | $16,807.00 |
| Michelle Martinez | LIT | $150.00 | 1.0 | $150.00 |
| **Total Paralegals:** | | | **69.6** | **$16,957.00** |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Shareholders | $562.55 | 358.5 | $201,675.00 |
| Associates | $386.02 | 566.7 | $218,755.50 |
| Paralegals | $243.64 | 69.6 | $16,957.00 |
| **Total Fees Incurred** | | 994.8 | $437,387.50 |
| **Blended Attorney Rate** | $454.42 | | |
| | | | |
| **Total Fees** | | | $437,387.50 |
| **Less Adjustment**[2] | | | ($3,495.00) |
| **Total Fees Requested** | | 994.8 | $433,892.50 |

---

[2] BL has only requested 50% of fees incurred in connection with its preparation of monthly fee statements.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    **MOTORS LIQUIDATION COMPANY,** *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 09-50026<br>(REG)<br><br>(Jointly Administered) |

**FOURTH APPLICATION OF BUTZEL LONG, A PROFESSIONAL
CORPORATION, AS SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY,
f/k/a GENERAL MOTORS CORPORATION, FOR INTERIM ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
<u>INCURRED FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010</u>**

**TO:    THE HONORABLE ROBERT E. GERBER,
           UNITED STATES BANKRUPTCY JUDGE:**

Butzel Long, a professional corporation ("**BL**"), Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation (the "**Committee**"), for its fourth application (this "**Application**"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for interim allowance of compensation for professional services performed by BL for the period commencing June 1, 2010, through and including September 30, 2010 (the "**Fourth Compensation Period**"), and for reimbursement of its actual and necessary expenses incurred during the Fourth Compensation Period, respectfully represents:

**PRELIMINARY STATEMENT**

1.    BL's reputation as a leading law firm in the automotive industry is well-suited to its representation of the Committee. As Special Counsel to the Committee, BL renders its

services on an "as-needed" basis. In connection with its representation of the Committee during the Fourth Compensation Period, BL's services have predominantly concerned the adversary proceeding commenced on the Committee's behalf against JPMorgan Chase Bank, N.A. (the "**JPMorgan Adversary Proceeding**")[1] and the objection to claims and investigation of claims and causes of action against certain holders of notes issued by General Motors Nova Scotia Finance Company (the "**Nova Scotia Matter**").

2. BL's efforts to advise and represent the Committee during the Fourth Compensation Period, and the professional services performed and expenses incurred in connection therewith, were actual and necessary to preserve and protect the interests of the unsecured creditors of Motors Liquidation Company, f/k/a General Motors Corporation (together with its chapter 11 filing affiliates, the "**Debtors**"). BL's charges for professional services performed and expenses incurred are reasonable under the applicable standards. BL respectfully asks that the Court grant this Application and allow interim compensation for professional services performed and reimbursement of expenses as requested.

## BACKGROUND

3. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 1, 2009 (the "**Petition Date**") in the United States Bankruptcy Court for the Southern District of New York.

4. On June 3, 2009, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Committee, pursuant to section 1102 of the Bankruptcy Code.

---

[1] In addition to JPMorgan Chase Bank, N.A., there are more than 400 named defendants in the JPMorgan Adversary Proceeding.

5. On June 30, 2009, the Committee filed an application (the "**Retention Application**") with this Court pursuant to section 1103(a) of Title 11 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules for entry of an order authorizing the employment of BL as Special Counsel to the Committee, *nunc pro tunc* to June 10, 2009, all as more fully described in the Retention Application (Docket No. 2847).

6. No objections were filed to BL's retention and, on July 13, 2009, this Court entered an order authorizing the employment of BL as Special Counsel to the Committee (Docket No. 3124). The Court's Order went on to state:

> Butzel Long shall be compensated for Special Counsel Services performed as of June 10, 2009, and expenses incurred in connection therewith, subject to the approval of this Court and compliance with Section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of this Court, the United States Trustee's Guidelines for Fees and Disbursements issued by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court, for professional services rendered and expenses incurred by Butzel Long;

A copy of the above order is attached hereto as Exhibit A and is incorporated herein by reference.

7. On November 16, 2009, BL submitted its First Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From June 10, 2009 Through and Including September 30, 2009 (the "**First BL Application**").

8. On December 23, 2009, the Court entered an order (the "**Fee Order**") appointing Brady C. Williamson as fee examiner (the "**Fee Examiner**"). On February 16, 2010, the Fee

Examiner filed his First Status Report and Advisory, which summarizes the applicable standards and guidelines for the Fee Examiner's review of fee applications (the "**First Advisory**"). On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory (the "**Second Advisory**").

9. After a hearing to consider the First BL Application on April 29, 2010, the Court entered an order on May 21, 2010 granting the First BL Application in the total amount of $257,155.29 and approving a 10% holdback in the amount of $23,615.87.

10. On March 17, 2010, BL submitted its Second Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From October 1, 2009 Through and Including January 31, 2010 (the "**Second BL Application**"). After a hearing to consider the Second BL Application on June 29, 2010, the Court entered an order on July 22, 2010 granting the Second BL Application in the total amount of $264,769.07 and approving a 10% holdback in the amount of $25,365.94.

11. On August 5, 2010, BL submitted its Third Application for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From February 1, 2010 Through and Including May 31, 2010 (the "**Third BL Application**"). Although a hearing to consider the Third BL Application was held on October 26, 2010, the Court has not yet entered an order.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

12. This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated November 25, 2009 (the "**Local Guidelines**"), the United States Trustee Guidelines

4

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines**"), and this Court's Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, entered August 7, 2009 (Docket No. 3711) (the "**Administrative Order**," and together with the Local Guidelines and the UST Guidelines, the "**Guidelines**"). A copy of the Administrative Order is attached hereto as Exhibit B, and incorporated herein by reference.

13. This Application has also been prepared in accordance with this Court's rulings on the First BL Application and the Second BL Application. Further, BL has endeavored to comply with the directions provided by the Fee Examiner in connection with the First BL Application and the Second BL Application. BL will provide a copy of this Application to the Fee Examiner.

14. Pursuant to the procedures outlined in the Administrative Order, BL has served a statement of its fees and disbursements accrued for its professional services in the above-captioned matter for the period commencing June 1, 2010 through and including June 30, 2010 (the "**June Statement**"), for the period commencing July 1, 2010 through and including July 31, 2010 (the "**July Statement**"), for the period commencing August 1, 2010 through and including August 31, 2010 (the "**August Statement**") and for the period commencing September 1, 2010 through and including September 30, 2010 (the "**September Statement**," and together with the June Statement, the July Statement and the August Statement, the "**BL Statements**") upon the U.S. Trustee, the Debtors, the attorneys for the Debtors and the attorneys for the Committee (collectively, the "**Notice Parties**"). The Administrative Order provides that the Notice Parties shall have at least 15 days after receipt of a monthly statement to review it, and shall serve any

5

objections to the monthly statement no later than 45 days following the month for which compensation is sought. During the Fourth Compensation Period, BL has received no notice of objection to any of the BL Statements from any of the Notice Parties.

15. BL has also served the BL Statements upon the Fee Examiner. During the Fourth Compensation Period, BL has received no notice of objection to any of such statements from the Fee Examiner.

16. BL seeks allowance of interim compensation for professional services performed during the Fourth Compensation Period in the amount of $433,892.50 and for expenses incurred in the rendition of such services in the amount of $32,647.29. During the Fourth Compensation Period, BL professionals and paraprofessionals expended a total of 994.8 hours in connection with the necessary services performed.

17. In accordance with the Administrative Order, to date, BL received payments totaling $308,953.94 for the Fourth Compensation Period, consisting of $296,576.20, representing 80% of the fees, and $12,377.74, representing 100% of expenses, invoiced pursuant to the June Statement, the July Statement and the August Statement. BL has not yet received payment for any of the fees and expenses invoiced pursuant to the September Statement. The holdback of $23,615.87 relating to fees requested in the First BL Application and $25,365.94 relating to fees requested in the Second BL Application remains unpaid and outstanding. Accordingly, BL now seeks approval for all amounts allowed pursuant to the Administrative Order relating to the Fourth Compensation Period and approval for the Debtors to pay the 20% of fees deferred (as "holdbacks") in accordance with the Administrative Order.

18. There is no agreement or understanding between BL and any other person, other than members of BL, for the sharing of compensation to be received for services rendered in

6

these cases. During the Fourth Compensation Period, BL has received no payment and no promises of payment from any source (other than the Debtors) for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

19. The fees charged by BL in these cases are billed in accordance with BL's existing billing rates and procedures in effect during the Fourth Compensation Period. The rates BL charges for the services rendered by its professionals and paraprofessionals in these cases are the same rates BL charges for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

20. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Fourth Compensation Period but were not processed prior to the preparation of this Application, BL reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

21. Annexed hereto as Exhibit C is a certification regarding compliance with the Guidelines.

22. Annexed hereto as Exhibit D, pursuant to the UST Guidelines, is a schedule of BL professionals and paraprofessionals who have performed services for the Committee during the Fourth Compensation Period, the capacities in which each individual is employed by BL, the department in which each practices, the hourly billing rate charged by BL for the services performed by such individuals, the year in which each professional was first licensed to practice law, and the aggregate number of hours expended in these matters during the Fourth Compensation Period and the fees billed therefor.

7

23. Annexed hereto as <u>Exhibit E</u> is a schedule specifying the categories of expenses for which BL is seeking reimbursement and the total amount for each such expense category. A detailed breakdown of all such expenses, including the date incurred, amount and description thereof, as well as the individual who incurred such expense and the project code related thereto, is also included in <u>Exhibit E</u>. An itemized schedule of all such expenses has been provided to the Debtors, the attorneys for the Debtors, the attorneys for the Committee, the Court, the U.S. Trustee and the Fee Examiner.

24. Annexed hereto as <u>Exhibit F</u>, pursuant to the UST Guidelines, is a summary of BL's time records relating to the charges for services rendered during the Fourth Compensation Period using project codes hereinafter described. BL maintains computerized records of the time spent by all BL attorneys and paraprofessionals in connection with its engagement by the Committee.

25. Copies of these computerized records, annexed hereto as <u>Exhibit G</u>, have been furnished to the Debtors, the attorneys for the Debtors, the attorneys for the Committee, the Court, the U.S. Trustee and the Fee Examiner in the format specified by the UST Guidelines.

**SUMMARY OF SERVICES PERFORMED BY
BL DURING THE FOURTH COMPENSATION PERIOD**

26. The following is a summary of the significant professional services rendered by BL during the Fourth Compensation Period, organized in accordance with BL's internal system of project codes. As previously noted, BL's services during the Fourth Compensation Period have mainly involved the JPMorgan Adversary Proceeding and the Nova Scotia Matter.

    a. <u>JPMorgan Avoidance Complaint</u>. On July 31, 2009, the Committee commenced the JPMorgan Adversary Proceeding challenging, *inter alia*, the security interest of more than 400 lenders (the "**Defendants**") to a certain term loan agreement,

8

dated as of November 29, 2006, as amended by that certain first amendment dated as of March 4, 2009 (as amended, the "**Term Loan Agreement**"), and sought to recover in excess of $1.4 billion, in the aggregate, from the Defendants. During the Fourth Compensation Period, BL's professional services in connection with the JPMorgan Adversary Proceeding included: conducting legal research; drafting and filing a motion for partial summary judgment, a reply in further support of such motion and an opposition to JPMorgan's motion for summary judgment; analyzing JPMorgan's motion for summary judgment, reply in further support of such motion and opposition to the Committee's motion for partial summary judgment; and various other tasks.

      b.    <u>General Motors Nova Scotia Finance Company</u>. On November 30, 2009, a claim was filed against the Debtors on behalf of the holders of notes (the "**Noteholders**") issued by General Motors Nova Scotia Finance Company in the amount of $1,607,647,592.49 (claim no. 66319) (the "**Trustee Claim**"). On December 10, 2009, Greenberg Traurig, LLP, on behalf of certain Noteholders, filed a similar claim against the Debtors (claim no. 69551) (the "**Protective Claim**"). Including the Trustee Claim and the Protective Claim, in total, forty nine (49) claims (the "**Claims**") have been filed by or on behalf of the Noteholders. On July 2, 2010, BL filed an objection to the Trustee Claim and the Protective Claim. BL plans to amend such objection to apply to all Claims. During the Fourth Compensation Period, BL's professional services in connection with the Nova Scotia Matter included: conducting legal research; analyzing the Claims and potential objections thereto; drafting a complaint; drafting and filing an objection to certain Claims; drafting discovery requests; drafting memoranda; and various other tasks.

9

   c. <u>Defending Fee Applications</u>.  On March 31, 2010, the Fee Examiner contacted BL to inquire about the First BL Application.  Since then, BL has corresponded with the Fee Examiner frequently concerning the First BL Application, the Second BL Application and the Third BL Application.  During the Fourth Compensation Period, BL's professional services in connection with its defense of the Second BL Application and the Third BL Application included:  corresponding with the Fee Examiner; reviewing the Fee Examiner's memorandum summarizing this Court's rulings on fee applications; drafting and filing a reply to the Fee Examiner's objection to the Second BL Application; instituting internal procedures for complying with Fee Examiner requests; and various other tasks.

   d. <u>Monthly Fee Statements</u>.  On July 6, 2010, this Court ruled that compensable time spent preparing monthly statements, as opposed to time spent preparing fee applications and monthly budgets, warrants a reduction of fifty percent (50%).  Accordingly, BL has reduced its request for compensation by $3,495.00 in compliance with such ruling.

27. The professional services performed by the professionals and paraprofessionals of BL were rendered by the Bankruptcy, Corporate and Litigation Departments in various offices. The professional services performed by BL on behalf of the Committee during the Fourth Compensation Period required an aggregate expenditure of 994.8 recorded hours by BL's professionals and paraprofessionals.  Of the aggregate time expended, 358.5 recorded hours were expended by shareholders of BL, 566.7 recorded hours were expended by associates of BL and 69.6 recorded hours were expended by paraprofessionals of BL.

28.     During the Fourth Compensation Period, BL billed the Committee for time expended by attorneys based on hourly rates ranging from $215 to $725 per hour.

### ACTUAL AND NECESSARY DISBURSEMENTS OF BL

29.     As set forth in Exhibit E hereto, BL has disbursed $32,647.29 as expenses incurred in providing professional services during the Fourth Compensation Period. These expenses are actual, reasonable and necessary in light of the size and importance of the issues faced by the Committee.

30.     In connection with the JPMorgan Adversary Proceeding and the Nova Scotia Matter, BL's attorneys have devoted time during the evenings and on weekends to perform legal services on behalf of the Committee. Such services were essential to meet deadlines. Consistent with firm policy, attorneys of BL who worked late into the evenings were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.[2] BL has not charged the Debtors for any meal or transportation costs incurred while working on weekends. The reimbursement amounts do not exceed those set forth in the UST Guidelines.

31.     BL has not charged the Debtors for any local, long distance or international telephone or facsimile expenses.

32.     With respect to photocopying expenses, BL wrote off $2,962.50 related to copies in compliance with the Court's decision that such charges are reimbursable at the lesser of $.10 per page and cost.

33.     None of these categories of expenses exceed the maximum rate set forth in the UST Guidelines. The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the Committee.

---

[2]     BL has also reimbursed an attorney who worked very early in the morning for his cost for transportation from home to the office.

11

**THE REQUESTED COMPENSATION SHOULD BE ALLOWED**

34. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

35. In the instant case, BL respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for, and beneficial to, the preservation, protection and prosecution of the Committee's rights and claims under this chapter 11 proceeding. Such services and expenditures

12

were necessary to and in the best interests of the Committee. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

36. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, BL sought to minimize the costs of its services to the Debtors by utilizing talented paraprofessionals to handle more routine aspects of case administration. Groups of the same BL attorneys were utilized for similar tasks in these cases to minimize the costs of intra-BL communication and education about the Committee's circumstances.

37. In sum, the services rendered by BL were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

38. BL respectfully requests the Court enter an Order authorizing (i) an interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred during the Fourth Compensation Period in the amount of $466,539.79, consisting of $433,892.50, representing 100% of fees incurred during the Fourth Compensation Period, and reimbursement of $32,647.29 representing 100% of actual and necessary expenses incurred during the Fourth Compensation Period; and (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and

13

necessary expenses incurred be without prejudice to BL's right to seek additional compensation for services performed and expenses incurred during the Fourth Compensation Period, which were not processed at the time of this Application.

WHEREFORE, BL respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
November 15, 2010

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: */s/ Barry N. Seidel*
    Barry N. Seidel
    Eric B. Fisher
    380 Madison Avenue
    New York, NY 10017
    (212) 818-1110 Telephone
    (212) 818-0494 Fax