**Hearing Date and Time: December 15, 2010 at 2 p.m. (Eastern Time)**
**Objection Date and Time:  December 8, 2010 at 4 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                      :
In re                                 :     Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :     09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                      :
                  Debtors.            :     (Jointly Administered)
                                      :
------------------------------------------------------------x
```

**SUMMARY SHEET PURSUANT**
**TO UNITED STATES TRUSTEE GUIDELINES**
**FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FOURTH INTERIM FEE APPLICATION**

| | |
|---|---|
| **Name of Applicant:** | **Weil, Gotshal & Manges LLP** |
| **Time Period:** | June 1, 2010 through and including September 30, 2010 |
| **Role in the Case:** | Attorneys for the Debtors and Debtors in Possession |
| **Current Application:** | Total Fees Requested:       $6,903,518.50<br>Total Expenses Requested:     $132,720.16 |
| **Prior Applications:** | First Interim Fee Application, filed January 13, 2010 (ECF No. 4803) for the period June 1, 2009 through and including September 30, 2009<br>     Total Fees & Expenses Requested:  $18,506,169.92<br>     Total Fees & Expenses Allowed:     $18,236,706.92 |

|  | Second Interim Fee Application, filed March 17, 2010 (ECF No. 5295), for the period October 1, 2009 through and including January 31, 2010<br><br>    Total Fees & Expenses Requested:  $6,302,627.06<br>    Total Fees & Expenses Allowed:   $6,181,559.86<br><br>Third Interim Fee Application, filed August 5, 2010 (ECF No. 6554), for the period February 1, 2010 through and including May 31, 2010<br><br>    Total Fees & Expenses Requested:  $5,457,612.27<br>    Total Fees & Expenses Allowed:     To Be Determined |
|--|--|

## SUMMARY OF FOURTH INTERIM FEE APPLICATION OF
## WEIL, GOTSHAL & MANGES LLP FOR SERVICES RENDERED
## FOR THE PERIOD JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1] Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSEL:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00 | 18.80 | $ 18,612.00 |
| Berz, David R. | LR | 1973 | $900.00 | 593.70 | $ 534,330.00 |
| McCaffrey, Carlyn S. | TAX | 1974 | $950.00 | 2.10 | $ 1,995.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 14.70 | $ 14,553.00 |
| Guy, T. R. | LR | 1976 | $885.00 | 1.50 | $ 1,327.50 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 239.80 | $ 233,590.50 |
| Hird, David B. | LR | 1977 | $845.00 | 169.80 | $ 143,481.00 |
| Maskin, Arvin | LR | 1978 | $990.00 | 7.30 | $ 7,227.00 |
| Odoner, Ellen | CORP | 1978 | $990.00 | 1.00 | $ 990.00 |
| Bower, David I. | TAX | 1979 | $845.00 | 2.20 | $ 1,859.00 |
| Dixon, Catherine T. | CORP | 1982 | $990.00 | 15.10 | $ 14,949.00 |
| Blanchard, Kimberly S. | TAX | 1982 | $950.00 | 9.50 | $ 9,025.00 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 98.50 | $ 93,505.50 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 45.60 | $ 45,144.00 |
| Lefkowitz, David S. | CORP | 1987 | $990.00 | 49.60 | $ 49,104.00 |
| Kam, Michael | TAX | 1987 | $900.00 | 14.10 | $ 12,690.00 |
| Connolly, Annemargaret | CORP | 1988 | $845.00 | 6.00 | $ 5,070.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 419.80 | $ 369,090.00 |
| Dicker, Howard B. | CORP | 1990 | $925.00 | 1.20 | $ 1,110.00 |
| Cox, Christopher | LR | 1990 | $845.00 | 3.30 | $ 2,788.50 |
| Kirschner, Elyse G. | T&E | 1994 | $740.00 | .20 | $ 148.00 |

---

[1] BFR- Business Finance & Restructuring,  CORP – Corporate,  LR – Litigation/Regulatory,  TAX – Tax, S – Securitisation,  LS – Litigation Support,  T&E – Trust & Estates,

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the first day for each fee period.

| | | | | | | |
|---|---|---|---|---|---|---|
| Beagles, Vance L. | LR | 1993 | $845.00 | 182.20 | $ | 149,311.50 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 238.90 | $ | 225,760.50 |
| Baudry d'Asson (de), Arthur (Paris Office) | CORP | 1996 | $945.00 | 6.50 | $ | 6,142.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $845.00 | 1.70 | $ | 1,436.50 |
| Albanese, Anthony J. | LR | 1997 | $820.00 | 7.80 | $ | 6,396.00 |
| Neuwirth, John A. | LR | 1997 | $820.00 | .70 | $ | 574.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 262.50 | $ | 202,800.00 |
| Shim, Soo-Jin | CORP | 1998 | $780.00 | .50 | $ | 390.00 |
| Grauke, Britta (Frankfurt Office) | LR | 1998 | $835.00 | 4.00 | $ | 3,340.00 |
| Ferla, Romain | LR | 1999 | $725.00 | 6.00 | $ | 4,350.00 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 15.90 | $ | 9,316.25 |
| Hull, Gregory D. (Counsel) | LR | 1973 | $700.00 | 22.80 | $ | 15,960.00 |
| Sipple, John M. (Counsel) | LR | 1980 | $775.00 | 1.10 | $ | 852.50 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 7.20 | $ | 5,184.00 |
| Feltham, Timothy S. (Counsel) | T&E | 1989 | $720.00 | 1.00 | $ | 720.0 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 686.90 | $ | 470,960.00 |
| O'Loughlin, Jr., John B. (Counsel) | LR | 1996 | $700.00 | 8.10 | $ | 5,670.00 |
| Burshtine, Ram (Counsel) | CORP | 2002 | $700.00 | 4.30 | $ | 3,010.00 |
| Tarbert, Heath (Counsel) | CORP | 2003 | $700.00 | .70 | $ | 490.00 |
| **Total Partners and Counsel** | | | | **3,172.60** | **$** | **2,673,252.75** |

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | | |
|---|---|---|---|---|---|---|
| **ASSOCIATES:** | **Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise** | | | | | |
| Fortin, Isabelle (Paris Office) | LR | 1989 | $580.00 | 2.50 | $ | 1,450.00 |
| Smith, Leslie S. | CORP | 1995 | $695.00 | 95.20 | $ | 66,164.00 |
| Parker, Christopher M. | T&E | 1996 | $695.00 | 34.40 | $ | 23,908.00 |
| Larson, Michelle V. | BFR | 1996 | $695.00 | .90 | $ | 625.50 |
| Heyliger, Adelaja K. | CORP | 1998 | $665.00 | 56.60 | $ | 37,639.00 |
| Dummer, David W. | LR | 1999 | $695.00 | 51.40 | $ | 35,723.00 |
| Law, Erin J. | LR | 2000 | $695.00 | 5.50 | $ | 3,822.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Shiffman, Jonathan | LR | 2000 | $695.00 | 24.70 | $ | 17,166.50 |
| Silbert, Gregory S. | LR | 2000 | $695.00 | .10 | $ | 69.50 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 211.20 | $ | 144,175.50 |
| Hartmann, Michelle L. | LR | 2001 | $695.00 | 137.00 | $ | 95,215.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 338.90 | $ | 225,368.50 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 180.80 | $ | 120,232.00 |
| Heller, Amy E. | T&E | 2002 | $685.00 | .50 | $ | 342.50 |
| Eckols, Erin D. | LR | 2003 | $665.00 | .10 | $ | 66.50 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 350.80 | $ | 208,726.00 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 10.70 | $ | 7,115.50 |
| Bremer, Carmen E. | LR | 2003 | $665.00 | 29.00 | $ | 19,285.00 |
| Goodman, Max A. | TAX | 2004 | $665.00 | 121.60 | $ | 80,864.00 |
| Ghilini, Lelia (Paris Office) | CORP | 2004 | $690.00 | 6.50 | $ | 4,485.00 |
| Wright, Miles J. | LR | 2004 | $630.00 | 3.50 | $ | 2,205.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 466.30 | $ | 293,769.00 |
| Kotcher, Liani G. | LR | 2004 | $630.00 | 703.10 | $ | 442,953.00 |
| Stewart, Benjamin L. | LR | 2004 | $595.00 | 4.50 | $ | 2,677.50 |
| Neugebauer, Christian Timm (Frankfurt Office) | BFR | 2004 | $510.00 | .60 | $ | 306.00 |
| Schroeder, Friederike | CORP | 2004 | $400.00 | .50 | $ | 200.00 |
| Morneau, Jeff M. | CORP | 2005 | $630.00 | .70 | $ | 441.00 |
| Blevin, John W. | CORP | 2005 | $630.00 | 19.60 | $ | 12,348.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 394.50 | $ | 234,727.50 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $615.00 | 70.00 | $ | 43,050.00 |
| Grabill, Jeremy T. | LR | 2007 | $550.00 | 4.00 | $ | 2,200.00 |
| Christensen, Evert J. | LR | 2007 | $515.00 | 2.50 | $ | 1,287.50 |
| O' Connor, John T. | LR | 2007 | $515.00 | 125.10 | $ | 64,426.50 |
| Wine, Jennifer L. | BFR | 2007 | $550.00 | 83.90 | $ | 46,145.00 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 279.30 | $ | 153,615.00 |
| Griffiths, David N. | BFR | 2007 | $515.00 | 179.00 | $ | 92,185.00 |
| Koch, Eberhard (Frankfurt Office) | LR | 2007 | $400.00 | 11.00 | $ | 4,400.00 |

| Burton, Casey A. | LR | 2008 | $455.00 | 3.00 | $ | 1,365.00 |
|---|---|---|---|---|---|---|
| Benfield, Brianna N. | LR | 2008 | $455.00 | 216.00 | $ | 98,234.50 |
| Burns, Gregory C. | TAX | 2008 | $550.00 | 95.70 | $ | 52,635.00 |
| Laken, Lacey | BFR | 2008 | $515.00 | 292.10 | $ | 150,431.50 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 149.60 | $ | 77,044.00 |
| Forlenza, Justin | CORP | 2008 | $515.00 | 9.50 | $ | 4,892.50 |
| Hines, Nichole | LR | 2008 | $515.00 | .60 | $ | 309.00 |
| Haye, Pascaline (Paris Office) | BFR | 2008 | $275.00 | 71.00 | $ | 19,525.00 |
| Godhard, Peter | CORP | 2009 | $550.00 | 2.20 | $ | 1,210.00 |
| Klein, Daniel S. | LR | 2009 | $515.00 | 44.30 | $ | 22,814.50 |
| Neely, Christopher M. | LR | 2009 | $515.00 | 351.60 | $ | 181,074.00 |
| Falabella, Pablo | BFR | 2009 | $515.00 | 512.70 | $ | 263,680.50 |
| Maczko, Vanessa L. | T&E | 2009 | $455.00 | 3.90 | $ | 1,774.50 |
| Arons, Andrew | CORP | 2009 | $455.00 | 42.10 | $ | 19,155.50 |
| Hatcher, R. Todd | TAX | 2009 | $455.00 | 4.90 | $ | 2,229.50 |
| Kulawik, Tomasz | CORP | 2006 | $455.00 | 1.30 | $ | 591.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 34.10 | $ | 15,515.50 |
| Van Deurzen, Josh | CORP | 2009 | $455.00 | 7.70 | $ | 3,503.50 |
| Byeff, David P. | LR | 2009 | $455.00 | 4.80 | $ | 2,184.00 |
| Obaro, Bambo | LR | 2009 | $395.00 | 115.50 | $ | 45,622.50 |
| Tran, Hongan N. | LR | 2009 | $395.00 | 210.20 | $ | 83,029.00 |
| Wu, Edward | BFR | 2009 | $395.00 | 30.50 | $ | 12,047.50 |
| DeGeest, Oliver | CORP | 2010 | $550.00 | 11.80 | $ | 6,490.00 |
| Brooks, Russell | BFR | 2010 | $455.00 | 574.00 | $ | 250,750.50 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 175.50 | $ | 69,322.50 |
| **Total Associates** | | | | **6,971.10** | **$** | **3,874,810.50** |

| NAME OF PROFESSIONAL PERSON<br><br>LAW CLERKS: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 26.00 | $ | 4,680.00 |
| Estellon, Erling (Paris Office) | LR – N/A | $180.00 | 3.00 | $ | 540.00 |
| Levy, Victor (Paris Office) | BFR – N/A | $180.00 | 48.20 | $ | 8,676.00 |
| Rapp, Alexis (Paris Office) | LR – N/A | $180.00 | 4.50 | $ | 810.00 |
| Robineau, Marie (Paris Office) | LR – N/A | $180.00 | 4.20 | $ | 756.00 |
| Wirtz, Sandy (Paris Office) | CORP – N/A | $180.00 | 4.20 | $ | 756.00 |
| **Total Law Clerks** | | | **90.10** | **$** | **16,218.00** |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| Viola, Matthew | CORP – N/A | $275.00 | 1.40 | $ | 385.00 |
| Stauble, Christopher A. | BFR- N/A | $275.00 | 3.00 | $ | 825.00 |
| Lee, Kathleen | BFR – N/A | $275.00 | 57.20 | $ | 11,426.25 |
| Shrestha, Christine | CORP – N/A | $275.00 | 9.90 | $ | 2,722.50 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 25.10 | $ | 6,526.00 |
| Burns, Jo Nan | LR – N/A | $260.00 | 24.30 | $ | 6,318.00 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 62.50 | $ | 8,125.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 9.40 | $ | 2,444.00 |
| O'Connor, Colin | CORP – N/A | $260.00 | 2.70 | $ | 702.00 |
| Maravilla, Mel C. | CORP – N/A | $250.00 | 61.50 | $ | 14,850.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 174.40 | $ | 43,600.00 |
| Kerley, Peggy N. | BFR – N/A | $250.00 | 57.40 | $ | 14,350.00 |
| Flinn, Deborah C. | LR – N/A | $240.00 | 8.20 | $ | 1,968.00 |

| Eng-Bendel, Cheryl | LS – N/A | $235.00 | 3.50 | $ | 822.50 |
|---|---|---|---|---|---|
| Roberts, Sarah B. | BFR – N/A | $230.00 | 437.60 | $ | 77,855.00 |
| Schell, Peter | CORP – N/A | $225.00 | 80.30 | $ | 18,067.50 |
| Suthar, Anh N. | LR – N/A | $225.00 | 1.00 | $ | 225.00 |
| Melson, Elizabeth E. | LR – N/A | $225.00 | 52.00 | $ | 11,700.00 |
| Marquez, Francheska | CORP – N/A | $225.00 | 10.00 | $ | 2,250.00 |
| Bennett, Victoria A. | LR – N/A | $215.00 | 76.60 | $ | 16,469.00 |
| Guthrie, Christine | CORP – N/A | $215.00 | 6.00 | $ | 1,290.00 |
| Reid, Tashan Q. | CORP – N/A | $215.00 | 3.60 | $ | 774.00 |
| Robin, Artur | LS – N/A | $215.00 | .90 | $ | 193.50 |
| Aliseo, Nicole K. | BFR – N/A | $210.00 | 65.60 | $ | 8,452.50 |
| Haiken, Lauren C. | LS – N/A | $210.00 | 7.00 | $ | 1,470.00 |
| Amponsah, Duke | BFR – N/A | $200.00 | .80 | $ | 160.00 |
| Prindle, Kaitlin | BFR – N/A | $200.00 | 1.00 | $ | 200.00 |
| Chettri, Anupama | LR – N/A | $200.00 | 13.20 | $ | 2,640.00 |
| Mukendi, Julie B. | LR – N/A | $200.00 | 12.50 | $ | 2,500.00 |
| Sawyer, Jayme R. | LR – N/A | $200.00 | 1.60 | $ | 320.00 |
| Potter, Lougran | LR – N/A | $200.00 | 6.60 | $ | 1,320.00 |
| Losick, Merill | Library | $195.00 | .60 | $ | 117.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 3.90 | $ | 741.00 |
| Castillero, Francene S. | LR – N/A | $190.00 | 3.90 | $ | 370.50 |
| Payne, Richard A. | LR – N/A | $185.00 | 70.50 | $ | 13,042.50 |
| Condon, Robert | LR – N/A | $185.00 | 18.50 | $ | 3,422.50 |
| Fan, Dannan | LR – N/A | $180.00 | 2.50 | $ | 450.00 |
| Stewart, LaSonya R. | LR – N/A | $180.00 | 235.90 | $ | 42,462.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 24.00 | $ | 4,320.00 |
| Etienne, Donald | BFR – N/A | $180.00 | 5.10 | $ | 648.00 |
| Fleming, Bryan C. | LR – N/A | $180.00 | 8.60 | $ | 1,548.00 |
| Carney, Michael | Library – N/A | $170.00 | 1.30 | $ | 221.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 4.50 | $ | 765.00 |
| Ribaudo, Mark | Managing Clerk | $170.00 | 3.30 | $ | 561.00 |
| Cluzel, Antoine | CORP – N/A | $160.00 | 9.50 | $ | 1,520.00 |
| Badman, John | CORP – N/A | $160.00 | 6.70 | $ | 1,072.00 |

| Ruoss, Andrew | LR – N/A | $160.00 | .80 | $ | 128.00 |
|---|---|---|---|---|---|
| Ghodasara, Priya K. | BFR – N/A | $160.00 | 1.90 | $ | 304.00 |
| Lucevic, Almir | Managing Clerk | $150.00 | 4.80 | $ | 720.00 |
| Carmant, Marie J. | Library | $145.00 | .30 | $ | 43.50 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 40.10 | $ | 5,614.00 |
| Cruz, Luis | Library | $135.00 | .80 | $ | 108.00 |
| Greco, Maximiliano | Library | $85.00 | 1.10 | $ | 93.50 |
| Prudhomme, Cheryl | Library | $75.00 | .20 | $ | 15.00 |
| **Total Paraprofessionals and Other Staff** | | | **1,725.60** | **$** | **339,237.25** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $842.61 | 3,172.60 | $  2,673,252.75 |
| Associates | $555.84 | 6,971.10 | $  3,874,810.50 |
| Law Clerks | $180.00 | 90.10 | $  16,218.00 |
| Paraprofessionals and Other Staff | $196.60 | 1,725.60 | $  339,237.25 |
| **Total Fees Incurred** | | **11,959.40** | **$  6,903,518.50** |
| **Blended Attorney Rate** (excluding law clerks) | **$645.53** | | |
| **Total Fees Requested** | | **11,959.40** | **$  6,903,518.50** |

**Hearing Date and Time:  December 15, 2010 at 2 p.m. (Eastern Time)**
**Objection Date and Time:  December 8, 2010 at 4 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :    09-50026 (REG)
     f/k/a General Motors Corp., et al.   :
                                          :
                     Debtors.             :    (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

**FOURTH APPLICATION OF**
**WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY**
**EXPENSES INCURRED FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Background .................................................................................................................. 4

Summary of Professional Compensation and Reimbursement of Expenses Requested ............... 5

Summary of Services Performed by WGM During the Fourth Compensation Period ................. 8

Actual and Necessary Disbursements of WGM ....................................................... 23

The Requested Compensation Should Be Allowed ................................................... 25

Notice ........................................................................................................................ 27

Conclusion ................................................................................................................ 27

## TABLE OF AUTHORITIES

**Statutes & Rules**                                                             **Page**

11 U.S.C. § 105(a) ........................................................................................5, 27

11 U.S.C. § 327 ...............................................................................................25

11 U.S.C. § 330 ...........................................................................................5, 25

11 U.S.C. § 330(a) .............................................................................................1

11 U.S.C. § 330(a)(1) .......................................................................................25

11 U.S.C. § 330(a)(3) ..................................................................................25, 26

11 U.S.C. § 331 ...................................................................................1, 5, 25

11 U.S.C. § 363(b) ...........................................................................................13

Fed. R. Bankr. P. 1015(c) ...............................................................................27

Fed. R. Bankr. P. 2015.3 .................................................................................16

Fed. R. Bankr. P. 2016 ......................................................................................1

Fed. R. Bankr. P. 9007 .....................................................................................27

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("**WGM**"), attorneys for Motors Liquidation

Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors in these chapter

11 cases, as debtors and debtors in possession (together with MLC, the "**Debtors**"), for its Fourth

application (the "**Application**"), pursuant to sections 330(a) and 331 of title 11, United States

Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), for the interim allowance of compensation for professional services

performed by WGM for the period commencing June 1, 2010 through and including September

30, 2010 (the "**Fourth Compensation Period**"), and for reimbursement of its actual and

necessary expenses incurred during the Fourth Compensation Period, respectfully represents:

### Preliminary Statement

1.       Through WGM's efforts during the Fourth Compensation Period, the

Debtors have made substantial progress implementing strategies and procedures to efficiently and

economically resolve these cases.  Most notably, during this period, a major milestone in these

historic cases was reached as WGM assisted the Debtors in filing their joint chapter 11 plan (the

"**Plan**") (ECF No. 6829) and its accompanying disclosure statement (the "**Disclosure**

**Statement**") (ECF No. 6830).  The Plan is designed to liquidate or otherwise address the Debtors'

remaining assets and provide a distribution to holders of allowed claims as soon as reasonably

practicable.  The filing of the Plan and Disclosure Statement was the culmination of extensive

multiparty negotiations and involved the consideration of complex legal issues that required

WGM to draw upon its multidisciplinary expertise across numerous fields.

2.      In addition, during the Fourth Compensation Period, WGM's advice and
services were critical in enabling the Debtors to obtain numerous forms of relief important to the
administration of these cases, including several significant achievements, such as:

- a reduction, pursuant to twenty-four mediations, of approximately $1.6 billion in claims against the Debtors;

- ninety orders granting omnibus objections to claims, expunging approximately 19,414 proofs of claim, aggregating approximately $1.89 billion;

- an order approving the sale of the Wilmington Assembly Plant to Fisker Automotive, Inc. for $20,000,000;

- an order approving the sale of all the issued and outstanding common stock in General Motors Strasbourg S.A.S. ("**GM Strasbourg**") to General Motors LLC ("**New GM**");

- an order approving an amendment to the debtor in possession ("**DIP**") financing agreement;

- an order authorizing the exercise of stock powers to approve an amendment to the certificate of incorporation of General Motors Company;

- an order further extending the exclusive period in which the Debtors may solicit acceptances of a chapter 11 plan to March 29, 2011;

- an order resolving disputes, mutual mistakes, and ambiguities arising under the Master Sale and Purchase Agreement (the "**MSPA**");

- an order approving a settlement agreement with the International Association of Machinists and Aerospace Workers, and the International Brotherhood of Teamsters; and

- an order establishing supplemental rules for filing omnibus objections to certain debt claims.

These critical achievements and others will permit the Debtors to continue to make significant
progress in the administration of these cases and will facilitate the confirmation and
consummation of the Plan as expeditiously as possible.

3.      In addition to these significant accomplishments, during the Fourth
Compensation Period, WGM was required to prepare, review, or respond to the more than 1,300

motions, notices, applications, objections, briefs, orders, and other pleadings in the Debtors'

chapter 11 cases to ensure that the interests of the Debtors were adequately represented.  Further,

during the Fourth Compensation Period, WGM participated in seven court hearings.  Certain of

the pleadings addressed or filed by the Debtors included:

- eighty-six omnibus objections to claims;

- a motion to (i) approve the Disclosure Statement; (ii) establish a record date; (iii) establish notice and objection procedures for confirmation of the Plan; (iii) approve solicitation packages and procedures for distribution thereof; (iv) approve the forms of ballots and procedures for voting on the Plan; and (v) approve the form of notices to non-voting classes;

- a motion for preliminary approval of a settlement with the class action plaintiff, Boyd Bryant, on behalf of himself and a class of others similarly situated (the "**Settlement Class**"), and for conditional certification of the Settlement Class;

- an opposition to a motion in the action entitled *Freidman v. General Motors Corp.* seeking relief from the automatic stay, and an opposition to motion of Julie and David Brittingham seeking relief from the automatic stay;

- a motion authorizing the Debtors to amend the terms of their engagement with AP Services, LLC ("**APS**");  and

- a response to the motion of the statutory committee of general unsecured creditors (the "**Creditors' Committee**") for an order directing production of documents relating to asbestos liability.

4.     Because regular and open communication with creditors is a fundamental

goal of the Debtors, throughout the Fourth Compensation Period, WGM continued to represent

the Debtors in their formal and informal meetings and communications with the Office of the

United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), the United

States Department of the Treasury (the "**U.S. Treasury**"), the Creditors' Committee, the statutory

committee of unsecured creditors holding asbestos-related claims, and Dean M. Trafelet, as legal

representative for future asbestos personal injury claimants, and their respective professionals and

in numerous meetings or communications with individual claimants and parties in interest.

Additionally, the Debtors and WGM have continued to make every effort to keep such entities

informed of developments in these cases on a real-time basis through their published websites,

www.motorsliquidation.com and www.motorsliquidationdocket.com.  Further, together with the

Chief Executive Officer, Al Koch, and other APS temporary employees, WGM has continued to

respond to direct inquiries from numerous creditors, many of which have been received through a

hotline WGM established for MLC-related inquiries.

> 5.      WGM's efforts to advise and represent the Debtors in all facets of these

cases and with respect to the affairs of the entire MLC enterprise during the Fourth Compensation

Period were necessary and of substantial benefit to the administration of the chapter 11 estates.

The professional services performed and expenses incurred were actual and necessary to preserve

and protect the value of the Debtors' assets.  In the perspective of the complexity and scale of

these cases, WGM's charges for professional services performed and expenses incurred are

reasonable under the applicable standards.  WGM respectfully requests that the Court grant the

Application and allow interim compensation for professional services performed and

reimbursement for expenses as requested.

### Background

> 6.      On June 12, 2009, the Debtors filed an application to employ WGM as their

attorneys.  (ECF No. 949).  No objections were filed to WGM's retention, and, pursuant to an

order, dated June 25, 2009, the Debtors were authorized to retain WGM as their attorneys to

render legal services in the prosecution of their chapter 11 cases.  (ECF No. 2546).

> 7.      On December 23, 2009, the Court appointed Brady C. Williamson as the

Fee Examiner (the "**Fee Examiner**"), pursuant to the Stipulation and Order with Respect to

Appointment of a Fee Examiner.  (ECF No. 4708).

8.      The Debtors have advised WGM that, to date, all quarterly fees due to the U.S. Trustee have been paid.

9.      The Debtors have advised WGM that, to date, all monthly operating reports have been filed.

### Summary of Professional Compensation and Reimbursement of Expenses Requested

10.     WGM seeks allowance of interim compensation for professional services performed during the Fourth Compensation Period in the amount of $6,903,518.50 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $132,720.16.  During the Fourth Compensation Period, WGM attorneys and paraprofessionals expended a total of 11,959.4 hours in connection with the necessary services performed.

11.     This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009 (the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines"**), and the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (ECF No. 3711) (the "**Administrative Order,"** and together with the Local Guidelines and the UST Guidelines, the "**Guidelines**").  Pursuant to the UST Guidelines, the Debtors have been provided with a copy of the Application for their review and will have completed their review of the same prior to the hearing on the Application.

12.     In accordance with the Administrative Order, WGM received payments

totaling $4,296,871.77 for the Fourth Compensation Period, consisting of $4,199,541.79

representing 80% of the fees, and $97,329.98 representing 100% of the expenses, invoiced for

June 2010, July 2010, and August 2010.  WGM now seeks payment[1] by the Debtors of all

amounts allowed but previously held back pursuant to the Administrative Order.  WGM has not

yet received payment for either the fees or the expenses invoiced for September 2010.

13.     There is no agreement or understanding between WGM and any other

person, other than members of the firm, for the sharing of compensation to be received for

services rendered in these cases.  Except as explained in the following paragraph, during the

Fourth Compensation Period, other than pursuant to the Administrative Order, WGM has received

no payment and no promises of payment from any source for services rendered or to be rendered

in any capacity whatsoever in connection with the matters covered by this Application.

14.     Prior to the commencement of these chapter 11 cases, General Motors

Corporation ("**GM**," now know as MLC) paid WGM an aggregate amount of approximately $54

million in respect of professional services rendered and as retainers for services to be rendered and

for disbursements incurred and expenses advanced for disbursements to be incurred in connection

with (i) GM's efforts prior to the commencement of these chapter 11 cases to restructure its

obligations out of court, (ii) the preparation for GM's chapter 11 cases, and (iii) certain other

related matters.  As of the Commencement Date, WGM had a retainer balance in the amount of

approximately $5.9 million that may be applied against payment for services to be rendered and

---

[1] New GM agreed to pay 50% of the fees and expenses associated with the services rendered by WGM in
connection with the appeals (the "**Appeals**") of this Court's order approving the 363 Transaction (as defined herein).
Although the full amount of WGM's fees and expenses for services rendered in connection with the Appeals have
been and continue to be billed to the Debtors, New GM will reimburse the Debtors for 50% of such fees and
expenses paid by the Debtors to WGM.  Total fees and expenses for services rendered in connection with the
Appeals during the Fourth Compensation Period are $52,896.50 and $985.76 respectively.  Therefore, New GM will
reimburse the Debtors 50% of such amounts.

expenses to be incurred.  WGM will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in further charges.

15.     The fees charged by WGM in these cases are billed in accordance with WGM's existing billing rates and procedures in effect during the Fourth Compensation Period. The rates WGM charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

16.     Annexed hereto as **Exhibit "A"** is a certification regarding compliance with the Guidelines.

17.     Annexed hereto as **Exhibit "B,"** pursuant to the UST Guidelines, is a schedule of WGM professionals and paraprofessionals who have performed services for the Debtors during the Fourth Compensation Period, the capacities in which each such individual is employed by WGM, the department in which each individual practices, the hourly billing rate charged by WGM for services performed by such individuals, the year in which each professional was first licensed to practice law, and the aggregate number of hours expended in this matter and fees billed therefor.

18.     Annexed hereto as **Exhibit "C"** is a schedule specifying the categories of expenses for which WGM is seeking reimbursement and the total amount for each such expense category.  An itemized schedule of all such expenses has been provided to the Debtors, the Court, the attorneys for the Creditors' Committee, and the U.S. Trustee.

19.     Annexed hereto as **Exhibit "D,"** pursuant to the UST Guidelines, is a summary of WGM's time records billed during the Fourth Compensation Period using project categories hereinafter described.  WGM maintains computerized records of the time spent by all WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Copies of these computerized records have been furnished to the Debtors and, subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtors' estates, the Court, the attorneys for the Creditors' Committee, the Fee Examiner, and the U.S. Trustee in the format specified by the UST Guidelines.

20.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Fourth Compensation Period, but were not processed prior to the preparation of this Application, WGM reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

**Summary of Services Performed by
WGM During the Fourth Compensation Period**

21.     As described above, during the Fourth Compensation Period, WGM continued to render an extraordinary level of professional services in order to efficiently and economically administer the Debtors' chapter 11 cases, address the more than 70,000 proofs of claim that have been filed, support the Debtors' administration of their properties and of these estates, coordinate activities to protect the value of the Debtors' assets, and make progress toward achieving the confirmation and consummation of a plan that is tailored to meet the particular intricacies of these cases.  During this period, WGM was required to render a substantial amount of professional services, often under extraordinary time constraints, to deal with various critical issues.  The following are descriptions of some of the most significant tasks performed by WGM.

22.     <u>Chapter 11 Plan</u>.  During the Fourth Compensation Period, WGM assisted the Debtors in formulating, negotiating, and drafting the Plan, as well the Disclosure Statement, which were filed with the Court on August 31, 2010.  Drafting and filing a plan designed to efficiently and economically liquidate or otherwise address the Debtors' remaining assets, and to expeditiously provide a distribution to claimants, required extensive planning and negotiation with numerous constituents, including the U.S. Government and various State entities.  Indeed, the Plan embodies a comprehensive settlement of environmental liabilities with governmental authorities that was a critical element of the Plan and a prerequisite to the ability to proceed with the entire plan process.  In addition to environmental considerations, the formulation of the Plan required WGM to assist the Debtors with such complex matters as determining the appropriate treatment of present and future asbestos claimants, developing a means to implement distributions to thousands of holders of foreign debt for which there is not an indenture trustee, and designing several trusts to implement the Plan, including the GUC Trust, the Asbestos Trust, the Environmental Response Trust, and the Avoidance Action Trust (all as defined in the Plan).

23.     In addition, in order to avoid the distraction and delay that would inevitably result were competing plans filed, WGM assisted the Debtors in requesting and obtaining an extension of the exclusive period to solicit acceptance of a chapter 11 plan.  While the Debtors desire to complete the chapter 11 plan process as quickly and efficiently as possible, the requested extension will facilitate the confirmation of a plan that will be in the best interests of all stakeholders and appropriately address the Debtors' liabilities and remaining assets.

24.     <u>Claims Reconciliation</u>.  As of the date on which these chapter 11 cases were commenced, the Debtors had approximately 2,500,000 creditors and equity security holders and were parties to more than 700,000 executory contracts (many of which were assumed and

assigned to New GM).  Streamlined procedures for reconciling claims remains a critical aspect of

the administration of these estates and key to confirmation and consummation of a plan and

distributions to holders of allowed claims.  During the Fourth Compensation Period, WGM

continued to develop and refine its approach and strategy for addressing the many claim issues

that arise in bankruptcy cases where more than 70,000 proofs of claim are filed.  During the

Fourth Compensation Period, WGM continued to implement comprehensive alternative dispute

resolution procedures to resolve more than 30,000 litigation-related proofs of claim filed to date

(the "**ADR Procedures**").  Pursuant to these procedures, WGM assisted the Debtors by preparing

documentation for claimants to offer a cap on the value of their unliquidated claims, and then

attempting to achieve a settlement with each claimant through a series of offers and exchanges.

Thereafter, if a settlement could not be reached with a claimant, WGM, on behalf of the Debtors,

engaged in non-binding mediation with the claimant.  As a last resort, the ADR Procedures also

provide for binding arbitration.  During the Fourth Compensation Period, twenty-four mediations

were held with respect to $1.7 billion in claims, and all but four of the mediations resulted in

settlement.  While these mediations were time-consuming and arduous, the return on WGM's

efforts in these mediations is readily apparent.  The total reduction in claims resulting from

mediation during the Fourth Compensation Period was $1.6 billion.  The claims resolution

process, including the ADR Procedures, is critical to the chapter 11 plan process, and WGM

continues to address the remaining claims in an efficient and cost-effective manner.

      25.     In addition, during the Fourth Compensation Period, WGM filed eighty-

six omnibus objections to a multitude of different categories of claims.[2]  This effort furthered the

---

[2] The following categories of claims were objected to during the Fourth Compensation Period: late-filed claims, workers' compensation claims, claims assumed by New GM, amended and superseded claims, tax claims assumed by New GM, claims with insufficient documentation, incorrectly classified claims, duplicate claims, property damage claims, duplicate debt claims, dealership claims, employee claims assumed by New GM, claims relating to

administration of these cases as evidenced by the expungment of approximately 19,400 proofs of

claim aggregating approximately $1.89 billion during the period.

      26.    <u>Environmental Issues</u>.  As stated, an appropriate resolution of

environmental issues with respect to the Debtors' properties was critical to the administration of

these estates and the formulation and filing of the Plan.  Accordingly, during the Fourth

Compensation Period, WGM assisted the Debtors in their interactions with appropriate Federal

and State governmental entities, regulators, and other parties in interest to address environmental-

remediation obligations at the Debtors' properties and the manner in which such obligations

should be addressed under the Plan and in a way that protects public health and the environment

while being consistent with the interests of creditors in these chapter 11 cases and the Debtors'

responsibilities and rights as debtors in possession under the Bankruptcy Code.  WGM assisted

the Debtors and their other retained professionals in analyzing environmental liabilities at owned

sites, superfund sites, and other third-party owned sites.   Furthermore, WGM assisted the Debtors

in various discussions and multiparty negotiations with governmental officials regarding

environmental obligations and the formulation of appropriate methods for resolving

environmental claims, including the establishment of an environmental response trust.  In assisting

the Debtors, WGM had discussions with as many as sixteen governmental parties, including the

United States Environmental Protection Agency, the United States Department of Justice, State

officials from Delaware, Illinois, Indiana, Kansas, Michigan, Missouri, New York, New Jersey,

Ohio, Wisconsin, Virginia, Louisiana, Massachusetts, and Pennsylvania, and the Saint Regis

Mohawk Tribe.  As a result of these efforts, the Debtors and governmental parties reached

---

former employees represented by the United Auto Workers, qualified defined benefit pension benefits claims of
former salaried and hourly employees, supplemental executive retirement benefits claims of former executive
employees, and debt claims of General Motors Acceptance Corporation.

agreement on the terms of a global settlement that resolves environmental claims against the

Debtors relating to sites owned by the Debtors.  This settlement agreement removes perhaps the

largest hurdle to the confirmation of a plan in these chapter 11 cases.  In addition, WGM assisted

the Debtors in analyzing and resolving hundreds of millions of dollars of asserted claims filed by

governmental entities and private parties relating to environmental liabilities at sites owned by

third parties.

27.     <u>Wind-Down Process</u>.  WGM continued to assist the Debtors in conducting

the orderly liquidation and wind-down of the Debtors' remaining assets and properties.  Notably,

WGM assisted the Debtors in obtaining an order approving the sale of the Wilmington Assembly

Plant to Fisker Automotive, Inc. for $20,000,000, free and clear of liens, claims, interests, and

encumbrances, and the assumption and assignment of certain executory contracts and unexpired

leases in connection with this sale.  WGM also assisted the Debtors in obtaining an order

approving an amendment to the DIP financing agreement which is critical to the wind-down

process.

28.     The Debtors' wind-down process, of course, is ongoing and, in addition to

the sale of physical assets owned by the Debtors, has involved analyzing the assets and obligations

of MLC's numerous remaining subsidiaries to determine the most appropriate means of

liquidating each subsidiary.  This has included reviewing and analyzing (i) the corporate and

organizational documents of MLC's subsidiaries and (ii) agreements such as promissory notes,

dealership agreements, and other agreements to which MLC or its subsidiaries are a party to

determine the correct procedure for properly liquidating the stock and/or assets of such

subsidiaries.

29.    <u>Asset Sales Other than the 363 Transaction</u>.  During the Fourth Compensation Period, WGM assisted the Debtors in obtaining an order approving the sale of all the issued and outstanding common shares of GM Strasbourg, which has its primary facility in France, to New GM.  In connection with this sale, WGM,  including its attorneys from European offices, assisted the Debtors in reviewing and revising agreements relating to GM Strasbourg's product supply, technology licensing, and engineering services.  In addition, WGM assisted the Debtors in evaluating alternative uses for various parcels of real estate and selling various plants and facilities.  This was an extraordinary achievement under the circumstances and critical to moving forward with the Plan.  In fact, the sale of the GM Strasbourg facility as a going concern preserved employment for over 1,000 employees and avoided the assertion of potentially significant claims against the Debtors' estates.

30.    Moreover, the sale of the GM Strasbourg facility also encompassed the resolution of the Debtors' dispute with BMW, resulting in the assignment of a BMW supply contract to GM Strasbourg and the release of all claims against the Debtors' estates.

31.    <u>The 363 Transaction</u>.  During the Fourth Compensation Period, WGM negotiated and obtained a stipulation for the withdrawal of an appeal of the order approving the sale of substantially all the Debtors' assets, pursuant to section 363(b) of the Bankruptcy Code, to New GM (the "**363 Transaction**") pending before the United States Court of Appeals for the Second Circuit, filed by the Individual Accident Litigants (as defined therein).

32.    WGM also assisted the Debtors in obtaining an order approving a stipulation of settlement with New GM to resolve certain mistakes and ambiguities arising under the MSPA regarding property taxes, rights with respect to claims arising under certain swaps with

Deutsche Bank AG, the scheduling of assets, and the allocation of responsibility for environmental remediation.

33.     <u>Retention of Ordinary Course and Other Professionals</u>.  WGM continued to assist the Debtors in their interactions with the retained professionals and the ordinary course professionals.  WGM devoted time to working with and applying for their retention, assisting retained professionals in the fee application process, as well as reviewing monthly statements of retained professionals.  WGM has continued to work with the U.S. Trustee to ensure that the requisite disclosures and retention applications are adequate and appropriate.

34.     <u>Dealership Matters</u>.  The Debtors had approximately 6,000 dealerships in their network at the commencement of these chapter 11 cases.  During the Fourth Compensation Period, WGM continued to prosecute and defend the rejection of dealership agreements, through settlement negotiations and other means.  WGM also continued to respond to substantive inquires from dealers, reviewed and analyzed dealer-related agreements and documents, and worked with the Debtors to evaluate numerous proofs of claim filed by dealers.

35.     <u>Executory Contracts and Unexpired Leases</u>.  As of the Commencement Date, the Debtors were parties to in excess of 700,000 executory contracts and unexpired leases of real and personal property.  WGM has continued to play a pivotal role in the assumption and assignment process, which was critical to the 363 Transaction and the continuation of the GM enterprise.  During the Fourth Compensation Period, WGM continued to work with the Debtors to evaluate numerous remaining executory contracts to determine their appropriate disposition in the context of the ongoing wind-down of the Debtors.  In addition, WGM negotiated various settlement agreements with contract counterparties relating to contract rejection claims and

continued to draft and review assumption and assignment agreements in conjunction with counsel for New GM and in furtherance of the 363 Transaction.

36.    <u>Additional Services</u>.  During the Fourth Compensation Period, WGM rendered professional services in furtherance of the foregoing activities and others, including, among other things, (i) meeting and discussing numerous issues and matters with the Creditors' Committee; (ii) responding to the myriad of creditor inquiries concerning these chapter 11 cases; (iii) conferences and negotiations with the U.S. Treasury and the Creditors' Committee regarding the Debtors' ongoing efforts to wind down and dispose of their properties and with respect to the Plan; and (iv) addressing, on behalf of the Debtors, the various motions and disputed matters initiated by third parties.  In this regard, during the Fourth Compensation Period, WGM prepared, assisted in the filing of, and/or filed, on behalf of the Debtors, numerous motions, applications, stipulations, and related court pleadings.

37.    <u>Summary of Services</u>.  The following is a summary of the significant professional services rendered by WGM during the Fourth Compensation Period, organized in accordance with WGM's internal system of project or work codes.

a.    Case Administration Issues

(i)    General Case Administration

- conducted internal team meetings, conferences, and teleconferences with the Debtors, their professionals, the Creditors' Committee, and other parties in interest regarding case administration, status of the chapter 11 cases, and various business-related issues;
- responded to numerous requests for information from parties in interest;
- coordinated with Garden City Group, Inc. ("**GCG**"), the Debtors' noticing and claims agent, to maintain and update master service list;
- conducted document review in connection with assets and liabilities of the Debtors and their affiliates, and ongoing and potential litigations;
- prepared and maintained various corporate structure charts for the Debtors and their respective subsidiaries;

- assisted APS and GCG in establishing and maintaining websites containing information regarding the Debtors, their professionals and management, meetings of creditors, and copies of relevant documents, including proofs of claim;
- engaged in various e-mail and telephone communications with the Debtors, the Creditors' Committee, and the U.S. Trustee;
- maintained case calendar; and
- organized and participated in weekly meetings and conference calls with WGM professionals and client to promote efficiency in the administration of the chapter 11 cases.

(ii)     Hearings and Court Matters

- prepared for and attended seven court hearings;
- obtained order amending notice and case management procedures;
- coordinated with the Court regarding hearings and agenda items;
- prepared agenda letters; and
- monitored dockets for main cases, adversary proceedings, and various state and federal court dockets for Debtor-related matters.

(iii)    U.S. Trustee

- conferred with U.S. Trustee regarding all case matters, including retention issues, employee matters, hearing items, and schedules and statements;
- ensured compliance with U.S. Trustee Guidelines; and
- assisted the Debtors in preparation and filing of monthly operating reports and reports pursuant to Bankruptcy Rule 2015.3.

b.     Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- prepared for and participated in meetings and teleconferences with the Creditors' Committee and its retained professionals regarding the status and administration of the cases, the development and formulation of the structure of the Plan and Disclosure Statement, and various other issues; and
- continued to respond to telephone and e-mail inquiries from foreign and domestic creditors regarding the chapter 11 cases and the 363 Transaction.

c.     Secured Creditors Issues/Meetings/Communications

- analyzed certain lien issues.

d.    Corporate Governance/Corporate/Securities

- obtained order authorizing exercise of stock powers to approve amendment to certificate of incorporation of General Motors Company;
- dissolved various corporate entities and prepared and maintained dissolution tracking charts tracking execution and filing of board resolutions and certificates of dissolution and conducted related research;
- analyzed alternatives for wind-down and dissolution of certain non-Debtor subsidiaries;
- prepared for and attended meetings of the Debtors' and the non-Debtors' subsidiaries' boards of directors and drafted resolutions, minutes, and consents for same;
- researched various corporate governance issues;
- prepared various documents, including Forms 8-K and S-3, for filing with the Securities and Exchange Commission;
- advised the Debtors with respect to their joint venture arrangements;
- prepared for and attended meetings with the Debtors and APS regarding reporting, compliance, organizational, and related matters and conducted research regarding same;
- reviewed documents related to numerous transactions with respect to the Debtors' businesses and investments and provided related advice; and
- advised the Debtors with respect to strategic alternatives in connection with certain subsidiaries.

e.    Financing  - DIP Financing/Cash Collateral

- obtained order approving amendment to DIP financing agreement; and
- coordinated compliance with reporting requirements under DIP financing agreement.

f.    Employee/ERISA/Benefits

- obtained order approving settlement agreement with the International Association of Machinists and Aerospace Workers, and the International Brotherhood of Teamsters, and analyzed and advised the Debtors with respect thereto;
- analyzed workers' compensation liabilities in various states and advised the Debtors with respect to state workers' compensation bureaus;
- assisted in analyzing and responding to employee benefit claims; and
- advised the Debtors on pension related issues.

g.     Asset Dispositions/Section 363

(i)     363 Transaction

- obtained stipulation for withdrawal of appeal of order approving the 363 Transaction, filed by the Individual Accident Litigants;
- researched and monitored various appeals of order approving the 363 Transaction filed by the Individual Accident Litigants and Radha R.M. Narumanchi;
- obtained order resolving disputes, mutual mistakes, and ambiguities arising under the MSPA; and
- assisted the Debtors in completing requirements and satisfying obligations under the MSPA.

(ii)     Sales of Assets Other than the 363 Transaction

- obtained order approving sale of Wilmington Assembly Plant to Fisker Automotive, Inc. for $20,000,000 free and clear of liens, claims, interests, and encumbrances;
- obtained order approving sale of all issued and outstanding common stock of GM Strasbourg to New GM;
- coordinated with MLC on execution of de minimis asset sales, including drafting and negotiating sale agreements, and potential sales of shares in subsidiary dealerships; and
- evaluated alternative uses for real estate.

h.     Executory Contracts/365 Issues/Contracts/Leases/Real Property

- reviewed and analyzed executory contracts;
- negotiated and drafted stipulations and settlement agreements regarding the rejection and/or assumption and assignment of executory contracts and unexpired leases of nonresidential real property;
- researched issues regarding various contract rejection issues;
- reviewed and revised sale agreements for certain real property of the Debtors; and
- provided analyses regarding potential rejection damages claims.

i.     Bar Date and Claims Reconciliation

(i)     Claims Objection Litigation

- obtained stipulation and agreed order with Wilmington Trust Company, as indenture trustee, and Citibank, N.A., as paying agent, regarding allowance of certain debt claims;
- obtained order establishing supplemental rules for filing omnibus objections to certain debt claims;
- researched and analyzed case law and procedures regarding estimation of asbestos claims;

- reviewed and analyzed various issues related to proof of claim filed by New United Motors Manufacturing, Inc.;
- conducted research regarding class actions and class proofs of claim in bankruptcy; and
- filed motion for preliminary approval of settlement with class action plaintiff, Boyd Bryant, on behalf of himself and the Settlement Class, and for conditional certification of the Settlement Class.

(ii)     Bar Date Motion and General Claims Reconciliation

- implemented ADR Procedures involving capping claims, mediation, and arbitration of claims;
- participated in twenty-four mediations, resulting in resolution of approximately $1.6 billion in claims against the Debtors, and drafted mediation statements and other documentation in conjunction with mediations;
- obtained ninety orders granting omnibus objections to claims, expunging approximately 19,414 proofs of claim, aggregating approximately $1.89 billion;
- filed eighty-six omnibus objections to various categories of claims;
- responded to various inquiries regarding filing of proofs of claim and bar dates;
- worked with GCG to establish and maintain claims reconciliation process;
- engaged with nationwide panels of dozens of mediators for ADR Procedures; and
- implemented procedures through American Arbitration Association to administer ADR Procedures.

(iii)    Reclamation and 503(b)(9)

- analyzed and continued to resolve remaining 503(b)(9) and reclamation claims.

(iv)     Administrative Expenses

- assisted with discovery in connection with claim of William Hardee for payment of administrative expenses.

j.     Automatic Stay

- filed opposition to motion in action entitled *Freidman v. General Motors Corp.* seeking relief from automatic stay;
- filed opposition to motion by Juilie and David Brittingham seeking relief from automatic stay;
- reviewed and analyzed motions seeking relief from automatic stay, and researched and drafted objections to and/or stipulations resolving certain of such motions;

- researched and drafted memorandum regarding applicability of automatic stay to various litigation issues and advised the Debtors and outside counsel accordingly;
- drafted and sent numerous letters to prepetition and postpetition plaintiffs advising of automatic stay of litigation; and
- responded to numerous questions from plaintiffs and outside counsel regarding effect of automatic stay on litigation and possible stipulations to modify the automatic stay.

k.    Plan and Disclosure Statement

- drafted and filed the Debtors' Plan and Disclosure Statement;
- engaged in multiparty negotiations with governmental regulators, Creditors' Committee, and other parties in interest with respect to provisions of the Plan;
- researched various issues regarding the Plan;
- completed due diligence necessary to draft the Disclosure Statement;
- drafted motion to (i) approve the Disclosure Statement; (ii) establish a record date; (iii) establish notice and objection procedures for confirmation of the Plan; (iii) approve solicitation packages and procedures for distribution; (iv) approve forms of ballots and procedures for voting on the Plan; and (v) approve form of notices to non-voting classes; and
- obtained order extending exclusive period in which the Debtors may solicit acceptance of the Plan to March 29, 2011.

l.    Tax

- prepared tax disclosure for the Disclosure Statement;
- drafted tax-related provisions in the Plan and ancillary agreements;
- analyzed and researched Plan-related tax considerations;
- conferred with tax counsel to the U.S. Treasury and the Creditors' Committee regarding Plan-related tax considerations;
- assisted in preparation of IRS ruling request; and
- analyzed tax issues in connection with liquidation of the Debtors' estates.

m.    Insurance

- evaluated various insurance programs and policies for insurance coverage of certain liabilities;
- participated in discussions and meetings with the Creditors' Committee regarding available coverage;
- evaluated various issues related to transfer of collateral associated with insurance policies;
- participated in discussions and meetings with New GM with respect to insurance coverage issues; and

> ■ participated in discussions and meetings with the Debtors regarding availability of insurance to cover certain claims.

n.    Customer/Vendor/Supplier/Dealer

> ■ reviewed monthly critical vendor payment reports submitted to the U.S. Trustee;
> ■ assisted with various issues relating to wind-down of certain dealerships;
> ■ addressed issues and responded to substantive inquiries from customers, vendors, suppliers, and dealers; and
> ■ evaluated claims based upon breach of dealership agreement.

o.    Litigation

> ■ addressed issues related to adversary proceeding against BMW and researched related legal issues; and
> ■ reviewed court filings and dockets relating to appeals.

p.    International

> ■ assisted in sale of common stock in GM Strasbourg to New GM, including reviewing and revising contracts and agreements;
> ■ researched corporate governance issues under French law;
> ■ researched various issues relating to contract with BMW;
> ■ reviewed and analyzed various documents and agreements relating to deliveries, developments, licensing, engineering, environmental servicing, and other business operations; and
> ■ reviewed and analyzed various issues relating to General Motors Nova Scotia Finance Company.

q.    Environmental

> ■ drafted, reviewed, and revised documents relating to global settlement of environmental liabilities among the United States, fourteen individual States, an Indian Tribe, and the Debtors;
> ■ drafted strategy memoranda and conducted legal research regarding environmental claims;
> ■ analyzed environmental liabilities at owned sites, superfund sites, and other third-party owned sites;
> ■ attended meetings with governmental regulators and U.S. Treasury officials regarding environmental issues;
> ■ assisted in discussions with Federal and State officials regarding environmental issues; and
> ■ attended meetings with environmental staff and attorneys regarding environmental liabilities.

r.    WGM Retention/Billing/Fee Applications

- prepared WGM's third interim fee application;
- responded to various requests from the Fee Examiner;
- maintained and updated list of parties in interest for conflicts purposes for WGM and other retained professionals; and
- reviewed monthly billing summary report and prepared monthly fee statements in compliance with the Guidelines.

s.    Retention of Professionals

(i)    Ordinary Course Professionals

- conferred with the Debtors and ordinary course professionals regarding retention procedures and conflicts issues.

(ii)    Other Professionals

- prosecuted Debtors' application to retain PriceWaterhouseCoopers LLP as special accountants and tax advisors;
- obtained order to amend terms of the engagement with Brownfield Partners, LLC;
- filed motion authorizing the Debtors to amend terms of their engagement with AP Services, LLC;
- reviewed retention applications for professionals retained by the Creditors' Committee;
- conferred with various applicants regarding scope of retention, terms of compensation, and related issues;
- conferred with various applicants regarding requests from the Fee Examiner;
- conferred with U.S. Trustee regarding various retention issues; and
- reviewed monthly fee statements of various professionals.

38.    The foregoing professional services performed by WGM were actual, necessary, and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by WGM were in the best interests of the Debtors and other parties in interest. Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved. The professional services were performed expeditiously and efficiently.

39.     The professional services performed by members and associates of WGM were rendered largely by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in several offices.  WGM has a preeminent Business Finance & Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations, restructurings of troubled entities, and chapter 11 cases, with approximately 115 attorneys that specialize in this area of law.

40.     The professional services performed by WGM on behalf of the Debtors during the Fourth Compensation Period required an aggregate expenditure of 11,959.40 recorded hours by WGM's members, counsel, associates, law clerks, and paraprofessionals.  Of the aggregate time expended, 3,172.60 recorded hours were expended by partners and counsel of WGM, 6,971.10 recorded hours were expended by associates, 90.10 recorded hours were expended by law clerks, and 1,725.60 recorded hours were expended by paraprofessionals of WGM.

41.     During the Fourth Compensation Period, WGM billed the Debtors for time expended by attorneys based on hourly rates ranging from $395 to $990 per hour for domestic attorneys and $275 to $945 for foreign attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $645.53 (based on 10,143.70 recorded hours for attorneys at WGM's regular billing rates in effect at the time of the performance of services).

### Actual and Necessary Disbursements of WGM

42.     As set forth in Exhibit C hereto, WGM has disbursed $132,720.16 as expenses incurred in providing professional services during the Fourth Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.

43.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required WGM's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors. Such services were essential to maximize value, timely respond to motions and objections, and address the demands involved in the wind-down of the Debtors' affairs and the administration of these complex chapter 11 cases.

44.     While WGM has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of WGM who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home. WGM's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the UST Guidelines.

45.     With respect to photocopying expenses, WGM charges all of its clients $.10 per page. With respect to facsimile expenses, in compliance with the UST Guidelines, WGM does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the UST Guidelines. Each of these categories of expenses does not exceed the maximum rate set by the UST Guidelines. These charges are intended to cover WGM's direct operating costs, which costs are not incorporated into the WGM hourly billing rates. Only clients who actually use services of the types set forth in Exhibit C are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the

standard photocopying charge is intended to allow WGM to cover the related expenses of

its photocopying service.  A determination of the actual expenses per page for photocopying,

however, is dependent on both the volume of copies and the total expenses attributable to

photocopying on an annual basis.

      46.     In addition, because of the global scope of the Debtors' affairs, frequent

long distance and international telephone calls were required.  On many occasions, overnight

delivery of documents and other materials was required as a result of circumstances necessitating

the use of such express services.  These disbursements are not included in WGM's overhead for

the purpose of setting billing rates.  WGM has made every effort to minimize its disbursements in

these cases.  The actual expenses incurred in providing professional services were necessary,

reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates,

and creditors.

## The Requested Compensation Should Be Allowed

      47.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  *Id.*

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be
> awarded to [a] professional person, the court shall consider the nature, the
> extent, and the value of such services, taking into account all relevant
> factors, including –
>
> (A)    the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

48.     In the instant case, WGM submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' chapter 11 estates.  WGM has worked assiduously to anticipate or respond to the issues that have arisen and has played and continues to play a critical role in assuring that the Debtors' chapter 11 cases are administered expeditiously and economically.  Such services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

49.     Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.  The professional services were performed expediently and efficiently.  Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys

and paraprofessionals to handle more routine aspects of case administration. Groups of the same

WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM

communication and education about the Debtors' circumstances.

50.    In sum, the services rendered by WGM were necessary and beneficial to the

Debtors' estates and were consistently performed in a timely manner commensurate with the

complexity, importance, and nature of the issues involved. Accordingly, approval of the

compensation for professional services and reimbursement of expenses sought herein is

warranted.

### Notice

51.    Notice of this Application has been provided to parties in interest in

accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P.

1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24, 2010

(ECF No. 6750). WGM submits that such notice is sufficient and no other or further notice need

be provided.

52.    No previous request for the relief sought herein has been made by the

WGM to this or any other Court.

### Conclusion

53.    WGM respectfully requests the Court enter an Order authorizing (i) an

interim allowance of compensation for professional services rendered during the Fourth

Compensation Period in the aggregate amount of $7,036,238.66 consisting of $6,903,518.50

representing 100% of fees incurred during the Fourth Compensation Period, and reimbursement of

$132,720.16, representing 100% of actual and necessary expenses incurred during the Fourth

Compensation Period; (ii) that the allowance of such compensation for professional services

rendered and reimbursement of actual and necessary expenses incurred be without prejudice to

WGM's right to seek additional compensation for services performed and expenses incurred

during the Fourth Compensation Period, which were not processed at the time of this Application;

(iii) directing payment by the Debtors of the difference between the amounts allowed and the

amounts previously paid by the Debtors pursuant to the Administrative Order; and (iv) such other

and further relief as is just.

        WHEREFORE WGM respectfully requests that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
       November 15, 2010

          /s/ Stephen Karotkin
          Harvey R. Miller
          Stephen Karotkin
          Joseph H. Smolinsky

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

**Exhibit A**

**Certification**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :      09-50026 (REG)
    f/k/a General Motors Corp., et al.    :
                                          :
                 Debtors.                 :      (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------x
```

**CERTIFICATION UNDER GUIDELINES FOR FEES
AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT
OF FOURTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP
FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, Stephen Karotkin, hereby certify that:

1.      I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("**WGM**"), with responsibility for the chapter 11 cases of Motors Liquidation Company (f/k/a

General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors and debtors in

possession in the above-captioned cases (collectively with MLC, the "**Debtors**"), in respect of

compliance with the Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009

(the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on

January 30, 1996 (the "**UST Guidelines**") and the Order Pursuant to 11 U.S.C. §§ 105(a) and 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (ECF No. 3711) (the "**Administrative Order**," and together with the Local

Guidelines and the UST Guidelines, the "**Guidelines**").

2.      This certification is made in respect of WGM's application, dated

November 15, 2010 (the "**Application**"), for interim compensation and reimbursement of

expenses for the period commencing June 1, 2010 through and including September 30, 2010 (the

"**Fourth Compensation Period**") in accordance with the Guidelines.

3.      In respect of section C.1 of the Local Guidelines, I certify that:

    a.    I have read the Application;

    b.    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

    c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by WGM and generally accepted by WGM's clients; and

    d.    in providing a reimbursable service, WGM does not make a profit on that service, whether the service is performed by WGM in-house or through a third party.

4.      In respect of section A.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"**Creditors' Committee**") and the Debtors, with a statement of WGM's fees and disbursements

accrued during the previous month, although, due to the exigencies of these cases, such statements

were not always provided within the exact timetables set forth in the Administrative Order.

5.      In respect of section A.3 of the Local Guidelines, I certify that the Debtors,

attorneys for the Creditors' Committee, and the United States Trustee for the Southern District of

New York are each being provided with a copy of the Application.

Dated: New York, New York
          November 15, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit B**

**Summary of Fourth Interim Fee Application of
Weil, Gotshal & Manges LLP for Services Rendered
for the Period June 1, 2010 Through September 30, 2010**

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1] Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSEL:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00 | 18.80 | $      18,612.00 |
| Berz, David R. | LR | 1973 | $900.00 | 593.70 | $    534,330.00 |
| McCaffrey, Carlyn S. | TAX | 1974 | $950.00 | 2.10 | $        1,995.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 14.70 | $      14,553.00 |
| Guy, T. R. | LR | 1976 | $885.00 | 1.50 | $        1,327.50 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 239.80 | $    233,590.50 |
| Hird, David B. | LR | 1977 | $845.00 | 169.80 | $    143,481.00 |
| Maskin, Arvin | LR | 1978 | $990.00 | 7.30 | $        7,227.00 |
| Odoner, Ellen | CORP | 1978 | $990.00 | 1.00 | $          990.00 |
| Bower, David I. | TAX | 1979 | $845.00 | 2.20 | $        1,859.00 |
| Dixon, Catherine T. | CORP | 1982 | $990.00 | 15.10 | $      14,949.00 |
| Blanchard, Kimberly S. | TAX | 1982 | $950.00 | 9.50 | $        9,025.00 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 98.50 | $      93,505.50 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 45.60 | $      45,144.00 |
| Lefkowitz, David S. | CORP | 1987 | $990.00 | 49.60 | $      49,104.00 |
| Kam, Michael | TAX | 1987 | $900.00 | 14.10 | $      12,690.00 |
| Connolly, Annemargaret | CORP | 1988 | $845.00 | 6.00 | $        5,070.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 419.80 | $    369,090.00 |
| Dicker, Howard B. | CORP | 1990 | $925.00 | 1.20 | $        1,110.00 |

[1] BFR- Business Finance & Restructuring,  CORP – Corporate,  LR – Litigation/Regulatory,  TAX – Tax,
S – Securitisation,  LS – Litigation Support,  T&E – Trust & Estates,

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the
first day for each fee period.

US_ACTIVE:\43551686\04\72240.0639

| Cox, Christopher | LR | 1990 | $845.00 | 3.30 | $ | 2,788.50 |
|---|---|---|---|---|---|---|
| Kirschner, Elyse G. | T&E | 1994 | $740.00 | .20 | $ | 148.00 |
| Beagles, Vance L. | LR | 1993 | $845.00 | 182.20 | $ | 149,311.50 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 238.90 | $ | 225,760.50 |
| Baudry d'Asson (de), Arthur (Paris Office) | CORP | 1996 | $945.00 | 6.50 | $ | 6,142.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $845.00 | 1.70 | $ | 1,436.50 |
| Albanese, Anthony J. | LR | 1997 | $820.00 | 7.80 | $ | 6,396.00 |
| Neuwirth, John A. | LR | 1997 | $820.00 | .70 | $ | 574.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 262.50 | $ | 202,800.00 |
| Shim, Soo-Jin | CORP | 1998 | $780.00 | .50 | $ | 390.00 |
| Grauke, Britta (Frankfurt Office) | LR | 1998 | $835.00 | 4.00 | $ | 3,340.00 |
| Ferla, Romain | LR | 1999 | $725.00 | 6.00 | $ | 4,350.00 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 15.90 | $ | 9,316.25 |
| Hull, Gregory D. (Counsel) | LR | 1973 | $700.00 | 22.80 | $ | 15,960.00 |
| Sipple, John M. (Counsel) | LR | 1980 | $775.00 | 1.10 | $ | 852.50 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 7.20 | $ | 5,184.00 |
| Feltham, Timothy S. (Counsel) | T&E | 1989 | $720.00 | 1.00 | $ | 720.0 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 686.90 | $ | 470,960.00 |
| O'Loughlin, Jr., John B. (Counsel) | LR | 1996 | $700.00 | 8.10 | $ | 5,670.00 |
| Burshtine, Ram (Counsel) | CORP | 2002 | $700.00 | 4.30 | $ | 3,010.00 |
| Tarbert, Heath (Counsel) | CORP | 2003 | $700.00 | .70 | $ | 490.00 |
| **Total Partners and Counsel** | | | | **3,172.60** | **$** | **2,673,252.75** |

| NAME OF PROFESSIONAL PERSON<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|---|
| Fortin, Isabelle (Paris Office) | LR | 1989 | $580.00 | 2.50 | $ | 1,450.00 |
| Smith, Leslie S. | CORP | 1995 | $695.00 | 95.20 | $ | 66,164.00 |
| Parker, Christopher M. | T&E | 1996 | $695.00 | 34.40 | $ | 23,908.00 |
| Larson, Michelle V. | BFR | 1996 | $695.00 | .90 | $ | 625.50 |
| Heyliger, Adelaja K. | CORP | 1998 | $665.00 | 56.60 | $ | 37,639.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Dummer, David W. | LR | 1999 | $695.00 | 51.40 | $ | 35,723.00 |
| Law, Erin J. | LR | 2000 | $695.00 | 5.50 | $ | 3,822.50 |
| Shiffman, Jonathan | LR | 2000 | $695.00 | 24.70 | $ | 17,166.50 |
| Silbert, Gregory S. | LR | 2000 | $695.00 | .10 | $ | 69.50 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 211.20 | $ | 144,175.50 |
| Hartmann, Michelle L. | LR | 2001 | $695.00 | 137.00 | $ | 95,215.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 338.90 | $ | 225,368.50 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 180.80 | $ | 120,232.00 |
| Heller, Amy E. | T&E | 2002 | $685.00 | .50 | $ | 342.50 |
| Eckols, Erin D. | LR | 2003 | $665.00 | .10 | $ | 66.50 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 350.80 | $ | 208,726.00 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 10.70 | $ | 7,115.50 |
| Bremer, Carmen E. | LR | 2003 | $665.00 | 29.00 | $ | 19,285.00 |
| Goodman, Max A. | TAX | 2004 | $665.00 | 121.60 | $ | 80,864.00 |
| Ghilini, Lelia (Paris Office) | CORP | 2004 | $690.00 | 6.50 | $ | 4,485.00 |
| Wright, Miles J. | LR | 2004 | $630.00 | 3.50 | $ | 2,205.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 466.30 | $ | 293,769.00 |
| Kotcher, Liani G. | LR | 2004 | $630.00 | 703.10 | $ | 442,953.00 |
| Stewart, Benjamin L. | LR | 2004 | $595.00 | 4.50 | $ | 2,677.50 |
| Neugebauer, Christian Timm (Frankfurt Office) | BFR | 2004 | $510.00 | .60 | $ | 306.00 |
| Schroeder, Friederike | CORP | 2004 | $400.00 | .50 | $ | 200.00 |
| Morneau, Jeff M. | CORP | 2005 | $630.00 | .70 | $ | 441.00 |
| Blevin, John W. | CORP | 2005 | $630.00 | 19.60 | $ | 12,348.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 394.50 | $ | 234,727.50 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $615.00 | 70.00 | $ | 43,050.00 |
| Grabill, Jeremy T. | LR | 2007 | $550.00 | 4.00 | $ | 2,200.00 |
| Christensen, Evert J. | LR | 2007 | $515.00 | 2.50 | $ | 1,287.50 |
| O' Connor, John T. | LR | 2007 | $515.00 | 125.10 | $ | 64,426.50 |
| Wine, Jennifer L. | BFR | 2007 | $550.00 | 83.90 | $ | 46,145.00 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 279.30 | $ | 153,615.00 |
| Griffiths, David N. | BFR | 2007 | $515.00 | 179.00 | $ | 92,185.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Koch, Eberhard (Frankfurt Office) | LR | 2007 | $400.00 | 11.00 | $ | 4,400.00 |
| Burton, Casey A. | LR | 2008 | $455.00 | 3.00 | $ | 1,365.00 |
| Benfield, Brianna N. | LR | 2008 | $455.00 | 216.00 | $ | 98,234.50 |
| Burns, Gregory C. | TAX | 2008 | $550.00 | 95.70 | $ | 52,635.00 |
| Laken, Lacey | BFR | 2008 | $515.00 | 292.10 | $ | 150,431.50 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 149.60 | $ | 77,044.00 |
| Forlenza, Justin | CORP | 2008 | $515.00 | 9.50 | $ | 4,892.50 |
| Hines, Nichole | LR | 2008 | $515.00 | .60 | $ | 309.00 |
| Haye, Pascaline (Paris Office) | BFR | 2008 | $275.00 | 71.00 | $ | 19,525.00 |
| Godhard, Peter | CORP | 2009 | $550.00 | 2.20 | $ | 1,210.00 |
| Klein, Daniel S. | LR | 2009 | $515.00 | 44.30 | $ | 22,814.50 |
| Neely, Christopher M. | LR | 2009 | $515.00 | 351.60 | $ | 181,074.00 |
| Falabella, Pablo | BFR | 2009 | $515.00 | 512.70 | $ | 263,680.00 |
| Maczko, Vanessa L. | T&E | 2009 | $455.00 | 3.90 | $ | 1,774.50 |
| Arons, Andrew | CORP | 2009 | $455.00 | 42.10 | $ | 19,155.50 |
| Hatcher, R. Todd | TAX | 2009 | $455.00 | 4.90 | $ | 2,229.50 |
| Kulawik, Tomasz | CORP | 2006 | $455.00 | 1.30 | $ | 591.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 34.10 | $ | 15,515.50 |
| Van Deurzen, Josh | CORP | 2009 | $455.00 | 7.70 | $ | 3,503.50 |
| Byeff, David P. | LR | 2009 | $455.00 | 4.80 | $ | 2,184.00 |
| Obaro, Bambo | LR | 2009 | $395.00 | 115.50 | $ | 45,622.50 |
| Tran, Hongan N. | LR | 2009 | $395.00 | 210.20 | $ | 83,029.00 |
| Wu, Edward | BFR | 2009 | $395.00 | 30.50 | $ | 12,047.50 |
| DeGeest, Oliver | CORP | 2010 | $550.00 | 11.80 | $ | 6,490.00 |
| Brooks, Russell | BFR | 2010 | $455.00 | 574.00 | $ | 250,750.50 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 175.50 | $ | 69,322.50 |
| **Total Associates** | | | | **6,971.10** | $ | **3,874,810.50** |

| NAME OF PROFESSIONAL PERSON<br><br>LAW CLERKS: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 26.00 | $ 4,680.00 |
| Estellon, Erling (Paris Office) | LR – N/A | $180.00 | 3.00 | $ 540.00 |
| Levy, Victor (Paris Office) | BFR – N/A | $180.00 | 48.20 | $ 8,676.00 |
| Rapp, Alexis (Paris Office) | LR – N/A | $180.00 | 4.50 | $ 810.00 |
| Robineau, Marie (Paris Office) | LR – N/A | $180.00 | 4.20 | $ 756.00 |
| Wirtz, Sandy (Paris Office) | CORP – N/A | $180.00 | 4.20 | $ 756.00 |
| **Total Law Clerks** | | | **90.10** | **$ 16,218.00** |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Viola, Matthew | CORP – N/A | $275.00 | 1.40 | $ 385.00 |
| Stauble, Christopher A. | BFR- N/A | $275.00 | 3.00 | $ 825.00 |
| Lee, Kathleen | BFR – N/A | $275.00 | 57.20 | $ 11,426.25 |
| Shrestha, Christine | CORP – N/A | $275.00 | 9.90 | $ 2,722.50 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 25.10 | $ 6,526.00 |
| Burns, Jo Nan | LR – N/A | $260.00 | 24.30 | $ 6,318.00 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 62.50 | $ 8,125.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 9.40 | $ 2,444.00 |
| O'Connor, Colin | CORP – N/A | $260.00 | 2.70 | $ 702.00 |
| Maravilla, Mel C. | CORP – N/A | $250.00 | 61.50 | $ 14,850.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 174.40 | $ 43,600.00 |
| Kerley, Peggy N. | BFR – N/A | $250.00 | 57.40 | $ 14,350.00 |
| Flinn, Deborah C. | LR – N/A | $240.00 | 8.20 | $ 1,968.00 |
| Eng-Bendel, Cheryl | LS – N/A | $235.00 | 3.50 | $ 822.50 |

| | | | | | |
|---|---|---|---|---|---|
| Roberts, Sarah B. | BFR – N/A | $230.00 | 437.60 | $ | 77,855.00 |
| Schell, Peter | CORP – N/A | $225.00 | 80.30 | $ | 18,067.50 |
| Suthar, Anh N. | LR – N/A | $225.00 | 1.00 | $ | 225.00 |
| Melson, Elizabeth E. | LR – N/A | $225.00 | 52.00 | $ | 11,700.00 |
| Marquez, Francheska | CORP – N/A | $225.00 | 10.00 | $ | 2,250.00 |
| Bennett, Victoria A. | LR – N/A | $215.00 | 76.60 | $ | 16,469.00 |
| Guthrie, Christine | CORP – N/A | $215.00 | 6.00 | $ | 1,290.00 |
| Reid, Tashan Q. | CORP – N/A | $215.00 | 3.60 | $ | 774.00 |
| Robin, Artur | LS – N/A | $215.00 | .90 | $ | 193.50 |
| Aliseo, Nicole K. | BFR – N/A | $210.00 | 65.60 | $ | 8,452.50 |
| Haiken, Lauren C. | LS – N/A | $210.00 | 7.00 | $ | 1,470.00 |
| Amponsah, Duke | BFR – N/A | $200.00 | .80 | $ | 160.00 |
| Prindle, Kaitlin | BFR – N/A | $200.00 | 1.00 | $ | 200.00 |
| Chettri, Anupama | LR – N/A | $200.00 | 13.20 | $ | 2,640.00 |
| Mukendi, Julie B. | LR – N/A | $200.00 | 12.50 | $ | 2,500.00 |
| Sawyer, Jayme R. | LR – N/A | $200.00 | 1.60 | $ | 320.00 |
| Potter, Lougran | LR – N/A | $200.00 | 6.60 | $ | 1,320.00 |
| Losick, Merill | Library | $195.00 | .60 | $ | 117.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 3.90 | $ | 741.00 |
| Castillero, Francene S. | LR – N/A | $190.00 | 3.90 | $ | 370.50 |
| Payne, Richard A. | LR – N/A | $185.00 | 70.50 | $ | 13,042.50 |
| Condon, Robert | LR – N/A | $185.00 | 18.50 | $ | 3,422.50 |
| Fan, Dannan | LR – N/A | $180.00 | 2.50 | $ | 450.00 |
| Stewart, LaSonya R. | LR – N/A | $180.00 | 235.90 | $ | 42,462.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 24.00 | $ | 4,320.00 |
| Etienne, Donald | BFR – N/A | $180.00 | 5.10 | $ | 648.00 |
| Fleming, Bryan C. | LR – N/A | $180.00 | 8.60 | $ | 1,548.00 |
| Carney, Michael | Library – N/A | $170.00 | 1.30 | $ | 221.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 4.50 | $ | 765.00 |
| Ribaudo, Mark | Managing Clerk | $170.00 | 3.30 | $ | 561.00 |
| Cluzel, Antoine | CORP – N/A | $160.00 | 9.50 | $ | 1,520.00 |
| Badman, John | CORP – N/A | $160.00 | 6.70 | $ | 1,072.00 |
| Ruoss, Andrew | LR – N/A | $160.00 | .80 | $ | 128.00 |

| | | | | | |
|---|---|---|---|---|---|
| Ghodasara, Priya K. | BFR – N/A | $160.00 | 1.90 | $ | 304.00 |
| Lucevic, Almir | Managing Clerk | $150.00 | 4.80 | $ | 720.00 |
| Carmant, Marie J. | Library | $145.00 | .30 | $ | 43.50 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 40.10 | $ | 5,614.00 |
| Cruz, Luis | Library | $135.00 | .80 | $ | 108.00 |
| Greco, Maximiliano | Library | $85.00 | 1.10 | $ | 93.50 |
| Prudhomme, Cheryl | Library | $75.00 | .20 | $ | 15.00 |
| **Total Paraprofessionals and Other Staff** | | | **1,725.60** | **$** | **339,237.25** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION | |
|---|---|---|---|---|
| Partners and Counsel | $842.61 | 3,172.60 | $ | 2,673,252.75 |
| Associates | $555.84 | 6,971.10 | $ | 3,874,810.50 |
| Law Clerks | $180.00 | 90.10 | $ | 16,218.00 |
| Paraprofessionals and Other Staff | $196.60 | 1,725.60 | $ | 339,237.25 |
| **Total Fees Incurred** | | **11,959.40** | **$** | **6,903,518.50** |
| **Blended Attorney Rate** (excluding law clerks) | **$645.53** | | | |
| **Total Fees Requested** | | **11,959.40** | **$** | **6,903,518.50** |

## Exhibit C

### Expense Summary by Weil, Gotshal & Manges LLP
### for the Period June 1, 2010 Through September 30, 2010

| EXPENSES | AMOUNTS |
|---|---|
| Local Transportation | $        5,768.85 |
| Domestic Travel/Domestic Travel Meals | $      18,265.65 |
| Meals | $        4,838.31 |
| Postage | $          173.69 |
| Telecommunications | $          134.34 |
| Telecommunications – Court Call | $          102.00 |
| Facsimile – (Outside) | $          277.00 |
| Duplicating – Firm | $      26,290.17 |
| Duplicating – Firm Color Copies | $        5,489.00 |
| Duplicating – External – Court House Printing | $              0.00 |
| Duplicating – External | $        2,792.37 |
| Air Courier/Express Mail/UPS | $        3,939.85 |
| Computerized Research | $      34,755.18 |
| E-Discovery Services | $          160.31 |
| Electronic Research | $        7,571.95 |
| Filing Fees | $            47.55 |
| Court Reporting | $        8,648.65 |
| Outside Temps-Paralegals/Other | $          678.13 |
| Outside Document Service Bureau | $        4,825.95 |
| Edgar Filings | $        1,460.00 |
| Clipping Service/SEC Watch | $          680.00 |
| Corporation Services | $          383.30 |
| Business Meals | $          551.95 |
| Moving and Storage ( | $            31.25 |
| Translation Fees | $        3,863.74 |
| Meetings and Conference Meals | $        1,143.16 |

| Disbursements Paid in Advance  (refund) | $ | -152.19 |
| **Total Expenses Requested:** | **$** | **132,720.16** |

**Exhibit D**

**Compensation by Work Task Code for
Services Rendered by Weil, Gotshal & Manges LLP
for the Period June 1, 2010 Through September 30, 2010**

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 010 | Case Administration | 65.90 | $ 15,548.50 |
| 020 | Unsecured Creditors Issues/Meetings/Communications | 56.10 | $ 21,871.50 |
| 030 | Secured Creditors Issues/Meetings/Communications | 0.00 | $ 0.00 |
| 040 | General Case Strategy | 169.60 | $ 113,045.00 |
| 050 | Hearings and Court Matters | 317.60 | $ 152,651.00 |
| 060 | WG&M Monthly Fee Statement/BSR Review (billed at 1/2 the rate) | 437.70 | $ 66,575.75 |
| 061 | WG&M Fee Applications/ Retention | 92.90 | $ 48,658.00 |
| 070 | Retention/Fee Application: Ordinary Course Professionals | 1.20 | $ 587.50 |
| 080 | Retention/Fee Application: Other Professionals | 206.70 | $ 104,317.50 |
| 090 | Schedules/Statement of Financial Affairs | .20 | $ 91.00 |
| 100 | US Trustee Issues/Meetings/Communications | 13.20 | $ 7,799.00 |
| 120 | DIP Financing / Cash Collateral | 26.10 | $ 12,171.00 |
| 130 | Exit Financing | .50 | $ 390.00 |
| 140 | Insurance Issues | 53.90 | $ 35,673.00 |
| 150 | Employee/ERISA/Benefits Issues | 109.70 | $ 64,328.00 |
| 160 | 363 Sale/Asset Dispositions | 162.50 | $ 104,555.00 |
| 161 | 363/Use/Sale/Lease of Property Excluding Real Property/MSPA | 8.90 | $ 5,191.00 |
| 162 | Real Property Issues (including 363 and 365) | 335.70 | $ 223,892.00 |
| 170 | 365/Executory Contracts/Personal Property Leases | 34.00 | $ 19,717.00 |
| 190 | Adversary Proceedings | 11.50 | $ 7,035.50 |
| 200 | Bar Date/Claims Reconciliation/Claims Objection Litigation | 5,324.10 | $ 2,856,247.00 |
| 220 | Automatic Stay | 96.00 | $ 49,068.50 |
| 230 | Business Operations | 7.10 | $ 4,535.00 |
| 240 | Disclosure Statement/Solicitation/Voting | 466.60 | $ 298,135.50 |
| 250 | Exclusivity | 22.50 | $ 12,493.00 |

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 260 | Plan of Reorganization/Plan Confirmation | 538.30 | $ 409,599.00 |
| 270 | Tax Issues | 337.30 | $ 214,317.50 |
| 280 | Delphi Chapter 11 Case | 13.50 | $ 12,308.00 |
| 290 | Customer/Vendor/Supplier/Dealer Issues | 2.10 | $ 1,241.50 |
| 300 | Utility Issues | 0.00 | $ 0.00 |
| 310 | Reclamation & 503(b)(9) Issues | 7.20 | $ 3,360.00 |
| 320 | Corporate/Securities/Corporate Governance | 489.50 | $ 280,055.50 |
| 330 | Non-Bankruptcy Litigation | 148.00 | $ 56,960.00 |
| 340 | Non-Working Travel | 63.10 | $ 26,161.25 |
| 350 | Communications with Client | 9.10 | $ 7,250.00 |
| 360 | Administrative Claims | 45.80 | $ 24,522.00 |
| 380 | Europe | 839.40 | $ 562,778.50 |
| 390 | Asia Pacific | 1.30 | $ 1,098.50 |
| 400 | Mexico | 0.00 | $ 0.00 |
| 410 | LAAM | 0.00 | $ 0.00 |
| 420 | Canada | 7.90 | $ 6,566.00 |
| 430 | Environmental Issues | 1,286.30 | $ 974,009.00 |
| 440 | 2004 Examinations/Other Investigatory Matters | 150.40 | $ 98,715.50 |
| TOTAL | | 11,959.40 | $ 6,903,518.50 |