**Hearing Date and Time: November 22, 2010 at 9:45 a.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Philip Bentley
David Blabey Jr.

*Counsel for the Official Committee*
*of Unsecured Creditors of Motors*
*Liquidation Company, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                              :

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No.: |
| | : | |
| MOTORS LIQUIDATION COMPANY., et al., | : | 09-50026 (REG) |
| f/k/a General Motors Corp., et al. | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------- X

### OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY TO OBJECTIONS OF VARIOUS MESOTHELIOMA CLAIMANTS TO THE CREDITORS' COMMITTEE'S RULE 2004 MOTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................2

BACKGROUND ......................................................................................................3

THE CLAIMANTS' OBJECTIONS TO THE PROPOSED TRUST DISCOVERY LACK
MERIT ...................................................................................................................8

    A. Relevance Objections.................................................................................8

    B. Contractual Rights Objections ...................................................................9

    C. Settlement Privilege Objections ................................................................10

    D. Due Process Objections ............................................................................11

    E. Future Use Objections ..............................................................................11

    F. Accuracy-of-Information Objections...........................................................14

i

## TABLE OF AUTHORITIES

### CASES

*Cleveland Constr. Inc. v. Whitehouse Hotel, Ltd. P'Ship*,
   2004 WL. 385052 (E.D. La. Feb. 25, 2004) .........................................................................10

*Davis v. Johns-Manville Prods.*,
   1990 WL 162844 (E.D. La. Oct. 16, 1990) .....................................................................7, n.8

*Griffin v. Mashariki*,
   1997 WL. 756914 (S.D.N.Y. Dec. 8, 1997) .........................................................................10

### STATUTES & RULES

Fed.  R. Evid. 408 ....................................................................................................4, 8, 11

KL2 2674462.8

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Philip Bentley
David Blabey Jr.

*Counsel for the Official Committee*
*of Unsecured Creditors of Motors*
*Liquidation Company, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                                           :
In re:                                                     :        Chapter 11 Case No.:
                                                           :
MOTORS LIQUIDATION COMPANY., et al.,                       :        09-50026 (REG)
f/k/a General Motors Corp., et al.                         :
                                                           :
                                    Debtors.               :        (Jointly Administered)
                                                           :
---------------------------------------------------------- X

### OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY TO OBJECTIONS OF VARIOUS MESOTHELIOMA CLAIMANTS TO THE CREDITORS' COMMITTEE'S RULE 2004 MOTION

TO:     THE HONORABLE ROBERT E. GERBER,
        UNITED STATES BANKRUPTCY JUDGE:

            The Official Committee of Unsecured Creditors (the "**Creditors' Committee**")

of the above captioned debtors and debtors-in-possession in these chapter 11 cases (collectively,

the "**Debtors**" or "**Old GM**"), by and through its undersigned counsel, hereby submits this

omnibus reply (the "**Reply**") to the objections (the "**Objections**") filed by various mesothelioma

claimants to the Creditors' Committee's motion (the "**UCC 2004 Motion**") [Dkt. No. 6383][1]

seeking authority to issue subpoenas to various claims processing facilities and trusts

(collectively, the "**Trusts**").

### Preliminary Statement

To properly analyze and estimate the Debtors' asbestos liability, the Creditors'

Committee on July 20, 2010 filed a motion pursuant to Bankruptcy Rule 2004 seeking authority

to take certain discovery from the Trusts regarding claimants who, prepetition, had filed lawsuits

against Old GM alleging that exposure to Old GM asbestos had caused them to develop

mesothelioma.  By order dated August 24, 2010, the Court authorized the Creditors' Committee

to issue subpoenas to the Trusts directing the production of information regarding the claimants.

However, to comply with notice provisions contained in the trust distribution procedures

governing certain of the Trusts, the Court ordered that production of the information from the

Trusts be delayed for a period of time so that claimants might be provided with notice and an

opportunity to object.  In granting the claimants the opportunity to be heard, the Court cautioned

that it would not reconsider arguments that had already been rejected, but instead would consider

whether claimants had any legitimate confidentiality concerns regarding production of the

information from the Trusts.

Several groups of claimants have now filed objections to the production of the

information from the Trusts.  The arguments largely mirror arguments that the Court has already

considered and rejected, and are not properly reconsidered now.  To the extent any of the

Objections raise new issues, they do not give rise to any legitimate confidentiality concerns.  The

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the UCC 2004 Motion
or the UCC 2004 Order (as defined below).

KL2 2674462.8

information from the Trusts is to be produced under the protections of a strict confidentiality

agreement and protective order entered by the Court on August 24, 2010. In addition, pursuant

to an October 22, 2010 order implementing a so-called "anonymity protocol," the claimant

information produced by the Trusts will be scrubbed of identifying details before the various

experts retained in these cases begin their analyses of the data. Both of these protective orders

were extensively negotiated among the Creditors' Committee, the asbestos claimants' committee,

and the Trusts. The protections contained in these orders are more than sufficient to protect the

legitimate confidentiality interests of the objecting claimants. Therefore, for the reasons set forth

below, the Objections should be overruled, and the Court should direct production of the

information from the Trusts forthwith.

### Background

1.      On July 20, 2010, the Creditors' Committee filed a motion pursuant to

Bankruptcy Rule 2004 seeking discovery of certain information from the Trusts regarding

approximately 7,400 individuals who, prepetition, had filed lawsuits against Old GM alleging

that exposure to Old GM asbestos had caused them to develop mesothelioma. The UCC 2004

Motion was opposed by the Trusts and by the Official Committee of Unsecured Creditors

Holding Asbestos-Related Claims (the "**ACC**"). These parties filed lengthy written objections

and presented extensive oral argument in opposition to the UCC 2004 Motion.

2.      The parties opposed to entry of an order authorizing the Creditors'

Committee to issue subpoenas to the Trusts argued, among other things, that the information

sought by the Creditors' Committee: (i) was not relevant to the estimation of Old GM's asbestos

liabilities; (ii) was confidential; (iii) could be used to the disadvantage of claimants in future state

court litigation with asbestos defendants; (iv) was protected from disclosure by provisions

3

contained in the Trusts' trust distribution procedures ("**TDPs**"); and (v) was protected from

disclosure by Fed. R. Evid. 408.  *See generally* Response and Limited Objection of the Official

Committee of Unsecured Creditors Holding Asbestos-Related Claims to the UCC 2004 Motion

[Dkt. No. 6488]; Opposition of Certain Trusts to the UCC 2004 Motion [Dkt. No. 6486];

Objection of Manville Personal Injury Settlement Trust and Claims Resolution Management

Corporation to the UCC 2004 Motion [Dkt. No. 6484].

       3.      At a hearing on August 9, 2010 (the "**August 9 Hearing**"), the Court

overruled each of these objections.  By order dated August 24, 2010, (the "**UCC 2004 Order**")

[Dkt. No. 6749], the Court granted the UCC 2004 Motion and authorized the Creditors'

Committee to issue subpoenas to the Trusts requesting the production of certain information (the

"**Trust Information**") with respect to "all claimants specified by the Creditors' Committee who

filed a pre-petition lawsuit against one or more of the Debtors for mesothelioma" (the

"**Mesothelioma Claimants**").  On October 22, 2010, the Creditors' Committee issued its

subpoenas to the Trusts (the "**UCC Subpoenas**").

       4.      The Trust Information is to be produced pursuant to the protections of two

orders that were the subject of extensive negotiations among the Creditors' Committee, the ACC,

and the Trusts following the Court's bench ruling at the August 9 Hearing.

       5.      First, the information is to be produced pursuant to the terms of a

Confidentiality Agreement and Protective Order (the "**Protective Order**") [Dkt. No. 6749] that

contains a number of restrictions specifically designed to guard against the use of the Trust

Information for any purposes other than the estimation of Old GM's asbestos liabilities.  Among

other things, the Protective Order prohibits the Creditors' Committee and its estimation expert,

Bates White LLC ("**Bates White**"), from using the Trust Information "for any purpose not

directly related to the Estimation Proceeding." Protective Order ¶ 14. It also requires the

destruction of the Trust Information within sixty days of the later of the conclusion of the

estimation proceedings and the effective date of a plan of liquidation. Protective Order ¶ 18. It

also (i) forbids public disclosure of the Trust Information (including any analyses, conclusions,

summaries or redacted copies derived therefrom) in any way, (ii) forbids the use of the Trust

Information as an undisclosed source in any article, study, research, editorial, publication or

scholarly work, (iii) restricts disclosure of the information even to members of the Creditors'

Committee (except in summary form), and (iv) contains a number of restrictions on the use of

the Trust Information in connection with testimony or filings with the Court. *See* Protective

Order ¶ 14, 16, 21.

> 6. In addition, the Trust Information is to be produced subject to the terms of

a protocol (the "**Anonymity Protocol**") designed to maintain, insofar as is feasible, the

anonymity of the Mesothelioma Claimants whose data is produced. *See* Order Concerning

ACC's Request for an Anonymity Protocol (the "**Anonymity Protocol Order**") [Dkt. No. 7526].

Pursuant to the Anonymity Protocol Order, the names and Social Security Numbers of the

Mesothelioma Claimants are to be used by the various estimation experts retained in these cases

(the "**Experts**") for "matching purposes" only, that is, for "(i) matching and combining the Trust

Information, on a claimant-by-claimant basis, with data from General Motors LLC or other

sources, (ii) verifying the accuracy of other Experts' matching of such data, and (iii) defending

challenges to the accuracy of the Expert's matching of such data" (the "**Permitted Matching**

**Purposes**"). Anonymity Protocol Order ¶ 3. With the exception of these limited Permitted

Matching Purposes, the Experts will work only off of databases from which identifying

information such as name, Social Security Number, address, and lawsuit case number (among

KL2 2674462.8

other information) has been deleted (the "**Anonymized Databases**").  *Id*. at ¶ 3(b).  Moreover, at

the ACC's insistence, the Anonymity Protocol Order provides that neither the Trust Information

nor the databases created under the Anonymity Protocol shall be subject to subpoena or

otherwise discoverable by persons other than the Debtors, the Creditors' Committee, the ACC,

and the FCR.  *Id.* at ¶ 3(d).

7.    In addition to the protections of the Protective Order and the Anonymity

Protocol, to ensure that all asserted rights of individual claimants were protected, the Court

ordered that production of the Trust Information be deferred so that the Mesothelioma Claimants

could be provided with notice of the UCC Subpoenas and an opportunity to object.  *See* UCC

2004 Order ¶¶ 5-7.

8.    At the August 9 Hearing, the Court indicated that it would not "hear any

further objection with respect to any matters I've now ruled upon, nor, of course, with respect to

any litigant's normal desire to avoid assistance to his or her adversary."  August 9 Hr'g Tr.

104:20-23 [Dkt. No. 6641].  Rather, the Court would "hear any and all objection with respect to

whether the confidentiality agreements, orders and other protective mechanisms are adequate, or

any other legitimate confidentiality concerns that I may have overlooked."  *Id.* at 104:23-105:2.

The Court further noted its expectation that, with respect to the interests of individual tort

litigants in one-on-one litigation in the tort system, "confidentiality agreements and orders

implementing them will do just fine, assuming that they're appropriately drafted."  *Id.* at 102:16-

24.

KL2 2674462.8

9.      Seven groups of Mesothelioma Claimants (collectively, the "**Objectors**")

have now filed objections to the UCC Subpoenas.[2]  The Objections fall into the following

categories:

a.  Relevance Objections.

    i.   The Kazan Claimants, Simmons Claimants, Caroselli Claimants, and Zamler
Claimants assert that information concerning claimants whose pre-petition
lawsuits against Old GM have been dismissed or settled is not relevant to the
estimation of Old GM's asbestos liabilities.  *See* Kazan Claimants Objection at 3-
4; Simmons Claimants Objection ¶ 8; *see generally* Caroselli Claimants Objection
and Zamler Claimants Objection.

    ii.  In addition, certain of the Keller Claimants contend that because they did not file
claims based on mesothelioma diagnosis *against the Trusts* (as opposed to Old
GM), their information is not relevant to the estimation of Old GM's asbestos
liabilities.  *See* ¶ 2 of each of the Keller Claimants Objections.

    iii. In addition, the Gertler Claimants appear to contend that Trust Information
regarding their claims is irrelevant because, under Louisiana law, the amount paid
by a settling co-defendant has no relevance to the proportionate liability of
remaining defendants.  *See* Gertler Claimants Objection at 2-3 (citing *Davis v.
Johns-Manville Prods.*, 1990 WL 162844 (E.D. La. Oct. 16, 1990)).

b.  Contractual Rights Objections.

    i.   The Keller Claimants and the Gertler Claimants contend that the TDPs and other
agreements governing the submission of their claims forms to the Trusts prohibit
the disclosure of the Trust Information.  *See* ¶ 3 of each of the Keller Claimants
Objections; Gertler Claimants Objection at 2-3.

    ii.  In addition, the Simmons Claimants and the Cooney Claimants assert that
claimants who settled with Old GM have "bought peace" from further discovery;
their settlement agreements with Old GM, it is said, prevent them from being
subjected to discovery concerning their claims.  *See* Simmons Claimants
Objection ¶ 8; Cooney Claimants Objection ¶ 4.

---

[2] These groups are: (i) certain claimants represented by Kazan, McClain, Lyons, Greenwood & Harley, PLC (the
"**Kazan Claimants**") [Dkt. No. 7690]; (ii) certain claimants represented by Cooney & Conway (the "**Cooney
Claimants**") [Dkt. No. 7695]; (iii) certain claimants represented by various law firms including Simmons, Browder,
Gianaris, Angelides & Barnerd LLC (the "**Simmons Claimants**") [Dkt. No. 7696]; (iv) certain claimants
represented by Keller, Fishback & Jackson LLP (the "**Keller Claimants**") [Dkt. Nos. 7697-7702]; (v) certain
claimants represented by the Gertler Firm (the "**Gertler Claimants**") [Dkt. No. 7712]; (vi) certain claimants
represented by Caroselli, Beachler, McTiernan & Conboy LLC (the "**Caroselli Claimants**") [Dkt. No. 7740]; and
(vii) certain claimants represented by Zamler, Mellen & Shiffman, P.C. (the "**Zamler Claimants**") [Dkt. No. 7739].

KL2 2674462.8

    c.    <u>Settlement Privilege Objections</u>.

        i.    The Gertler Claimants assert that Fed. R. Evid. 408 bars disclosure of the Trust Information.  *See* Gertler Claimants Objection at 3.[3]

    d.    <u>Due Process Objections</u>.

        i.    The Simmons Claimants contend that due process was violated by virtue of the fact that they were not provided notice or an opportunity to be heard prior to the issuance of the UCC Subpoenas.  *See* Simmons Claimants Objection ¶ 6-7.

    e.    <u>Future Use Objections</u>.

        i.    The Simmons Claimants, the Kazan Claimants, and the Gertler Claimants assert that the UCC 2004 Order contains insufficient protections against the future use of the Trust Information in state court litigation between individual claimants and asbestos defendants and/or insurance companies.  *See* Simmons Claimants Objection ¶ 10-22; Kazan Claimants Objection at 4; Gertler Claimants Objection at 2.

    f.    <u>Accuracy-of-Information Objections</u>.

        i.    The Kazan Claimants and the Zamler Claimants assert that four claimants did not file a pre-petition lawsuit against Old GM and are therefore not properly included among the Mesothelioma Claimants.  *See* Kazan Claimants Objection at 2-3; *see generally* Zamler Claimants Objection.

        ii.    In addition, the Simmons Claimants suggest that certain claimants may be erroneously included on the list of Mesothelioma Claimants and that each law firm should have an additional opportunity to review the list to verify its accuracy. *See* Simmons Claimants Objection ¶ 9.

        10.    We address these objections in turn below.

---

[3] In addition, the Gertler Claimants, by their citation to *Davis v. Johns-Manville*, appear to suggest that Louisiana state law bars discovery of settlement amounts.  Whether this reading of Louisiana law is accurate or not, it has no bearing on the production of information in a federal bankruptcy proceeding.

KL2 2674462.8

**Reply**

### THE CLAIMANTS' OBJECTIONS TO THE
### PROPOSED TRUST DISCOVERY LACK MERIT

**A.**    **Relevance Objections**

11.    At the August 9 Hearing, the Court overruled all objections based on

relevance, finding that the Creditors' Committee's need for the Trust Information was "much,

much more than sufficient to satisfy relevance requirements."  August 9 Hr'g Tr. 20:18-20.

Moreover, the Court indicated it would not hear any further objections from the Mesothelioma

Claimants with respect to matters already ruled upon.  *Id.* at 104:20-21.

12.    In spite of these rulings, several groups of Objectors have raised relevance

objections to the production of the Trust Information.  First, certain Objectors have asserted that

information concerning claimants whose claims against Old GM have been settled or dismissed

is irrelevant.  Second, certain of the Keller Claimants have asserted that because they did not file

claims based on mesothelioma diagnosis *against the Trusts* (as opposed to Old GM), their

information is not relevant to the estimation of Old GM's asbestos liabilities.  Third, the Gertler

Claimants appear to assert that Trust Information regarding their claims is irrelevant due to

certain alleged principles of state law relating to apportionment of liability.  Each of these

objections rests on grounds that were previously raised and have been rejected by the Court.

Consequently, these Objectors are seeking reargument, which the Court has already ruled will

not be permitted.

13.    Even if the relevance objections were properly before the Court, they are

misplaced.  As the Court is well aware, an estimation proceeding rests at its core on the

evaluation of, and extrapolation from, claims that were resolved (e.g., settled or dismissed)

prepetition, so there is no basis for excluding from production information concerning claimants

whose claims against Old GM have been resolved.  Similarly, there is no reason why a

claimant's having made divergent exposure or disease allegations to Old GM and a Trust would

make that claimant's Trust Information any less relevant; indeed, it might make the information

even more relevant to the Creditors' Committee's estimation theories.  Finally, to the extent that

the Gertler Claimants' Objection can be read to argue that settlements with other asbestos

defendants are irrelevant to the estimation of Old GM's asbestos liabilities, this argument fails

for all the reasons set forth in the Creditors' Committee's briefs in support of the UCC 2004

Motion (which the Committee incorporates by reference herein).[4]

B.    **Contractual Rights Objections**

14.    Certain of the Objectors contend that the TDPs and other agreements

governing the submission of their claims forms to the Trusts prohibit the disclosure of the Trust

Information.  This same argument was raised by the Trusts in their objection to the UCC 2004

Motion.  *See* Opposition of Certain Trusts to the UCC 2004 Motion at 38 [Dkt. No. 6486].  As

such, the argument is not properly raised here.

15.    Moreover, it is well-settled that a confidentiality agreement binds only its

signatories, and does not prevent non-parties to the agreement from seeking discovery of the

protected information.  *See, e.g., Griffin v. Mashariki*, 1997 WL 756914, *2 (S.D.N.Y. Dec. 8,

1997) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of part of

the settlement . . . cannot serve to shield that statement from discovery."); *Cleveland Constr. Inc.*

*v. Whitehouse Hotel, Ltd. P'Ship*, 2004 WL 385052, *1 (E.D. La. Feb. 25, 2004) ("Litigants

cannot shield a settlement agreement from discovery merely because it contains a confidentiality

---

[4] To the extent the Gertler Claimants' Objection goes to admissibility of evidence, the Court has expressly reserved
such objections for trial.  *See* August 9 Hr'g Tr. 99:14-20.

clause."). Finally, even if the Trusts and their claimants could contract to bar discovery by third parties, the TDP provisions referenced by the Objectors specifically authorize disclosure of information by the Trusts in response to valid subpoenas. *See* Keller Claimants Objections ¶ 3.

16.     Certain of the Objectors also contend that their settlement agreements with Old GM bar the Creditors' Committee's requests for the Trust Information. This argument suffers from the same defect described above. While Old GM may have the authority to bind *itself* not to seek further discovery concerning an individual's claim against *Old GM*, it cannot bind a *third party* (the Creditors' Committee) from seeking discovery concerning that individual's claim against *other defendants* (the Trusts).

## C.     Settlement Privilege Objections

17.     The Gertler Claimants assert that Fed. R. Evid. 408 bars disclosure of the Trust Information. This precise argument has already been raised and rejected. Addressing the applicability of Rule 408 at the August 9 Hearing, the Court determined that: (i) the rule governs admissibility at trial, not production; (ii) the rule was not implicated by a request for the *results* of settlement negotiations as opposed to statements made in those negotiations; and (iii) the rule does not apply where the statements are not offered to prove liability on a claim. *See* August 9 Hr'g Tr. 100:24-101:8.

## D.     Due Process Objections

18.     The Simmons Claimants assert that it was a violation of due process for the Court to authorize the issuance of the UCC Subpoenas without providing the claimants with notice and an opportunity to be heard. As an initial matter, however, the Simmons Claimants cite no authority for the proposition that they have a Constitutional right to receive notice of, and

KL2 2674462.8

09-50026-mg    Doc 7785    Filed 11/15/10    Entered 11/15/10 20:20:18    Main Document
Pg 15 of 24

to be heard with respect to, discovery directed to third parties.[5]  More importantly, the

Mesothelioma Claimants have, in fact, been provided with notice and an opportunity to be heard.

The UCC 2004 Order specifically required that notice be given to the Mesothelioma Claimants

and that production of the Trust Information be delayed until the objections of the claimants had

been heard and resolved.  In submitting the Objections, the claimants are availing themselves of

the very opportunity of which they claim to have been deprived.

**E.        Future Use Objections**

19.       Several Objectors contend that the UCC 2004 Order contains insufficient

protections against the future use of Trust Information in individual state court litigation between

Mesothelioma Claimants and other asbestos defendants.  These Objections raise issues that have

already been considered and adequately addressed.

20.       At the August 9 Hearing, the Court paid particular attention to objections

of this nature, noting that the "most important issue" to be addressed was the "protection of the

legitimate needs and concerns of individual tort litigants in one-on-one litigation with New GM

or anyone else with whom they might be involved in one-on-one litigation."  August 9 Hr'g Tr.

102:16-20.  It was the Court's view that a confidentiality agreement and, if feasible, an

"anonymity protocol" would be sufficient to protect these legitimate needs and concerns.

Accordingly, the parties (including the ACC and the Trusts) embarked on extensive negotiations

that resulted in the Protective Order and the Anonymity Protocol, both of which contain

restrictions that are more than adequate to protect Mesothelioma Claimants from use of the Trust

Information in future litigation.

---

[5] The Court directed that notice be given in light of TDP provisions requiring such notice.  *See* August 9 Hr'g Tr.
104:6-20.

KL2 2674462.8

21.     As discussed above, the Protective Order specifically bars the use of the

Trust Information for any purpose other than estimating Old GM's asbestos liabilities.  It also

requires the destruction of the information upon the conclusion of these proceedings.  The

Anonymity Protocol takes these protections even further, requiring that, with the exception of the

Permitted Matching Purposes, all work in these cases be performed by the Experts on the

Anonymized Databases.  These protections are precisely what the Court envisioned and address

all of the Mesothelioma Claimants' legitimate confidentiality concerns with respect to the future

use of the Trust Information.

22.     Nevertheless, certain Objectors have questioned the efficacy of these

protections in light of certain business interests of two principals of the Creditors' Committee's

Expert, Bates White (Dr. Bates and Dr. Mullin).  These concerns are entirely misplaced.

23.     In the first place, the Protective Order and the Anonymity Protocol were

designed and implemented precisely to protect against the use of Trust Information by the

Experts in future litigation.  The ACC and the Trusts, which extensively negotiated these two

orders, are fully aware of the nature of Bates White's practice and of Dr. Bates' and Dr. Mullin's

business interests.[6]  Nevertheless, the ACC and the Trusts concluded that the terms of the two

orders provided sufficient protection against the improper use of Trust Information.

24.     The ACC and the Trusts were correct in reaching this conclusion.  Most

fundamentally, the fact that occasions might arise in which Dr. Bates and Dr. Mullin might stand

to gain in future cases from using confidential information obtained in this case is not the

---

[6] Indeed, at the August 9 Hearing, counsel to the ACC expressed the same concerns about future use that are now
raised by the Simmons Claimants.  *See* August 9 Hr'g Tr. 49:1-5, 51:19-53:6.

slightest bit unusual.[7]  In the context of litigation, experts and other professionals routinely possess information from other sources that would be beneficial to their clients, yet they are precluded from using it due to the confidentiality provisions under which the information was obtained.  Asbestos litigation is replete with examples:

    a.   Plaintiffs' attorneys routinely have knowledge of the amounts that asbestos defendants have settled for in the past, yet are prohibited by their settlement agreements from using such knowledge.

    b.   Defense firms routinely assume the role of "national coordinating counsel" for multiple asbestos defendants, yet cannot share the claim history or confidential information on active tort claims between defendants.

    c.   Insurance companies often have access to settlements of multiple policy holders that are co-defendants on certain matters, yet are not permitted to share this information between the parties.

    d.   Asbestos estimation experts are employed in multiple bankruptcies with access to different sets of information (whether obtained from section 524(g) trusts or from the debtors' own claims databases) which they are not permitted to use for purposes other than the particular bankruptcy in which the information was provided.

    25.    Indeed, by the Objectors' logic, the expert retained by the ACC (Dr. Peterson) would have to be precluded from participating in the estimation of Old GM's (or any other asbestos defendant's) asbestos liabilities.  Dr. Peterson is a Trustee of the Manville Personal Injury Settlement Trust, and, in that capacity, he has access to detailed confidential claim information of thousands of asbestos claimants.  *See* page 3 of the curriculum vitae of

---

[7] In addition, there are enormous practical impediments to any unauthorized use of the Trust Information. By virtue of the Anonymity Protocol, any information about individual claimants gleaned by Dr. Bates and Dr. Mullin will be anonymous.  Thus, in order for Dr. Bates or Dr. Mullin to misuse individual claimant information in future litigation, they would have to (i) disregard their legal obligations at great risk to their professional reputations and livelihoods, (ii) memorize the *anonymous* Trust Information of one claim out of 7,400, (iii) at some unspecified future date, by luck or good fortune happen to be working as a defense consultant in a case regarding that very same claimant, (iv) make the connection between the anonymous claimant information they've memorized and the claimant in the litigation, and (v) concoct some way to make productive use of the information notwithstanding that all records of it have been destroyed.

KL2 2674462.8

Mark A. Peterson, attached as an exhibit to the Application to Retain and Employ Legal Analysis
Systems, Inc. [Dkt. No. 5306].

26.     The point of the foregoing discussion is not to suggest that any expert
should be disqualified or restricted from obtaining certain information.  Rather, it only serves to
demonstrate that experts regularly have access to information whose use is restricted to specified
purposes.  The small risk of misuse of such information is not a reason to withhold it.  Rather, as
the Court has already determined here, the appropriate response is to draft confidentiality
agreements and protective orders to govern the treatment of sensitive information.

**F.     Accuracy-of-Information Objections**

*Kazan Claimants and Zamler Claimants*

27.     Three of the Kazan Claimants and one of the Zamler Claimants have
asserted that they did not file pre-petition lawsuits against Old GM and are therefore not properly
included among the Mesothelioma Claimants.  Based on a review of case files, the Creditors'
Committee understands that the Zamler Claimant (John Jordan) filed a pre-petition lawsuit
against Old GM which was subsequently dismissed.  As discussed above, the dismissal of the
case does not render information concerning this claimant any less relevant to the estimation of
the Debtors' asbestos liability, and the information should be produced.  The Creditors'
Committee further understands that three of the Kazan Claimants (Charles McElrea, James
Ramirez and Henry Snyder) may not have filed formal pre-petition complaints against Old GM
but may have otherwise sought or received payment from Old GM prior to the Petition Date (in

KL2 2674462.8

which case information concerning these claimants remains relevant to the asbestos estimation).

The Creditors' Committee is in the process of confirming this information with New GM.[8]

### *Keller Claimants*

28.      Two of the Keller Claimants have asserted that they did not file claims

against the Trusts alleging mesothelioma.  As discussed above, this is irrelevant, because the list

of Mesothelioma Claimants is defined by reference to suits that were filed against Old GM, not

the Trusts.  However, in verifying certain information with New GM, the Creditors' Committee

discovered that one of the Keller Claimants – Dennis Gravley – did not file a lawsuit against Old

GM asserting that he suffered from mesothelioma, but rather had asserted he suffered from lung

cancer.  Therefore, the Creditors' Committee agrees not to seek Trust Information concerning

this claimant.

### *Caroselli Claimants*

29.      Certain of the Caroselli Claimants have asserted that they have not filed a

"Proof of Claim" with General Motors.  The Creditors' Committee has verified with counsel to

the Caroselli Claimants that these claimants did, however, file pre-petition lawsuits against Old

GM.  Therefore, Trust Information concerning these claimants is relevant and should be

produced.

### *Simmons Claimants*

30.      The Simmons Claimants have requested that their attorneys be provided

an opportunity to identify Mesothelioma Claimants who may not have filed a pre-petition lawsuit

against Old GM.  This request should be denied for the simple reason that *claimants and their*

---

[8] To the extent that New GM confirms that these Kazan Claimants did not otherwise seek or receive payment from
Old GM, the Creditors' Committee will agree not to seek Trust Information concerning these claimants and will ask
the other parties involved in the asbestos estimation process to exclude these claimants from their analysis.

KL2 2674462.8

*lawyers have already been provided with this opportunity*.  The Mesothelioma Claimants were

provided with two weeks' time in which to object to the production of the Trust Information.  If

claimants believed they were erroneously included on the list of Mesothelioma Claimants, they

should have objected.  The deadline to object has come and gone, and the production of the Trust

Information – which has now been on hold for nearly three months since the entry of the UCC

2004 Order – should not be further delayed.

WHEREFORE, for the foregoing reasons, the Creditors' Committee respectfully

requests that the Objections be overruled and that the Court enter the form of Order attached

hereto as **Exhibit A**.

Dated:    November 15, 2010
          New York, New York


                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              By:   /s/ Philip Bentley
                              Thomas Moers Mayer
                              Philip Bentley
                              David Blabey Jr.
                              1177 Avenue of the Americas
                              New York, New York 10036
                              Phone: (212) 715-9100
                              Fax: (212) 715-8000

                              *Counsel for the Official Committee*
                              *of Unsecured Creditors of Motors Liquidation*
                              *Company , et al.*

KL2 2674462.8

# **<u>EXHIBIT A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
In re:                                                   :        Chapter 11 Case No.:
                                                         :
MOTORS LIQUIDATION COMPANY., et al.,                     :        09-50026 (REG)
f/k/a General Motors Corp., et al.,                      :
                                                         :
                                       Debtors.          :        (Jointly Administered)
                                                         :
-------------------------------------------------------- X

### ORDER DENYING OBJECTIONS OF VARIOUS MESOTHELIOMA CLAIMANTS TO CREDITORS' COMMITTEE'S RULE 2004 MOTION

This matter coming before the Court on the objections (the "**Objections**") filed by various mesothelioma claimants to the Motion of The Official Committee of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents by (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors [Docket No. 6383] (the "**2004 Motion**"), and on the Omnibus Reply (the "**Reply**")[1] of the Creditors' Committee; the Court having reviewed and considered the Objections, the Reply and accompanying papers, and the record at the hearing on the Objections and the Reply; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (iii) notice of the hearing on the Objections and the Reply were appropriate and no further notice is necessary; and the Court having determined that the legal and factual bases set forth in the Reply establish just cause for the relief granted herein;

---

[1]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply and 2004 Motion.

IT IS HEREBY ORDERED THAT:

1.      Subject to paragraphs 2 and 3 of this Order, the Objections are overruled.

2.      Pursuant to the UCC 2004 Order, and subject to paragraph 3 of this Order, the Trusts are directed to produce the Trust Information requested by the UCC Subpoenas in searchable electronic form to the Creditors' Committee within five days after entry of this Order.

3.      The Trusts are not required to produce Trust Information requested by the UCC Subpoenas with respect to the claimants identified on Exhibit 1 to this Order.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.


Dated: New York, New York
          November ___, 2010


_____
UNITED STATES BANKRUPTCY JUDGE

KL2 2675008.2

## **Exhibit 1**

Dennis Gravley

KL2 2675008.2