UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No. 09-50026 (REG) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| WALTER J. LAWRENCE, | : |  |
|  | : |  |
| Appellant, | : |  |
|  | : |  |
| - v.- | : | 10 Civ. 36 (RJH) |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, | : |  |
|  | : | **MEMORANDUM** |
|  | : | **OPINION AND ORDER** |
| Appellee. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Appellant Walter J. Lawrence, appearing *pro se*, appeals from a judgment of the United States Bankruptcy Court for the Southern District of New York denying his motion for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. Appellant seeks relief to proceed with an action he filed against General Motors ("GM"), the predecessor in interest to Appellee Motors Liquidation Company ("MLC"). Appellant contends that the Bankruptcy Court lacked subject matter jurisdiction over his motion and that the Bankruptcy Court erred in denying him relief. For the reasons stated below, the

Court finds that the Bankruptcy Court had jurisdiction to consider Appellant's motion to

lift the stay and did not abuse its discretion in denying that motion.[1]

## BACKGROUND

The following facts are taken from Appellant's motion for relief from the automatic

stay filed in the bankruptcy court.  *See In re Motors Liquidiation Co.*, Ch. 11 Case No. 09-

50026 (Bankr. S.D.N.Y.) (Docket No. 4202) ("App. Mot."). Appellant was an employee of

GM until he retired on March 1, 1993.  (*See* App. Mot. at 2-3.)  As such, Appellant was a

beneficiary of the General Motors Hourly-Rate Employees Pension Plan ("the Pension

Plan") which was governed by the General Motors/United Auto Workers Pension Plan

Agreement ("the Agreement").  (*See* App. Mot. at 2-3.)

On May 14, 2007, the Pension Plan wrote to Appellant informing him that

Appellant had received $32,985.00 in overpayments and that Appellant was required to

remit such overpayments to the Pension Plan.  (*See* App. Mot. at 24.)  The Pension Plan

sent Appellant a second notice in September 2007, but Appellant refused to remit the

overpayments.  The Pension Plan then began reducing Appellant's ongoing payments to

satisfy the outstanding overpayments.  (*See* App. Mot. at 24-25.)

Appellant brought suit against the Pension Plan and GM in the United States

District Court for the Middle District of Florida on October 9, 2007 alleging that GM and

the Pension Plan had violated the Employee Retirement Income Security Act ("ERISA")

by wrongfully reducing his pension payments and diverting some of those payments to the

IRS to satisfy a tax levy against Appellant.  (*See Walter J. Lawrence v. General Motors*

---

[1] On September 21, 2010, Appellant also filed a "Motion for the Court to Rule on
Appellant's Pending Appeal from the United States Bankruptcy Court."  (Docket No. 8.)
The Court's disposition of Appellant's appeal in this order vitiates Appellant's motion, and
that motion is hereby dismissed as moot.

*Hourly-Rate Employee Pension Plan*, 5:07-CV-408 OC (M.D. Fla.) (Docket No. 1) ("the

ERISA suit").)  Appellant amended his complaint in February 2008 and the parties

subsequently filed cross motions for summary judgment, which remain pending.  (*See*

App. Br. at 11; App. Mot. at 25-26, 31.)[2]

On June 1, 2009, MLC—an entity formed in conjunction with the United States

Treasury to reorganize GM—filed a Title 11 bankruptcy petition in the bankruptcy court in

this district.  Pursuant to 11 U.S.C. § 362(a), the bankruptcy petition triggered the so-called

"automatic stay" of all pre-petition litigation against GM which, in MLC's case, included

the ERISA suit.  Appellant filed a motion in the bankruptcy court for this district seeking

relief from the automatic stay to allow the ERISA suit to proceed.  (*See* App. Mot.; App.

Br. at 7.)  In an opinion from the bench after a hearing on November 6, 2009, Bankruptcy

Judge Gerber denied Appellant's motion and later entered an order to that effect on

November 24, 2009.  (*See id.*; *see also* Tr. of Hr'g, Nov. 6, 2009, *In re Motors Liquidation

Co.*, 09-50026 (Bank. S.D.N.Y.) (Docket No. 4416) ("Hr'g Tr.").) On December 3, 2009,

Appellant filed a notice of appeal of that order to this court.

## STANDARD OF REVIEW

"Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's

conclusions of law de novo and reviews findings of fact for clear error." *In re Cavalry

Const., Inc.*, 428 B.R. 25, 29 (S.D.N.Y. 2010); *see also In re Bayshore Wire Prods. Corp.*,

209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy

---

[2] Appellant also seems to have filed a series of other motions in his ERISA suit, including motions to strike affirmative defenses, various discovery motions, and a motion for recusal.  (*See* App. Mot. at 31-33.)  Thereafter, the United States District Court for the Middle District of Florida entered an order enjoining Appellant from filing any other documents with that court pending disposition of the parties' motions for summary judgment.  (*See* App. Mot. at 33.)

Court's findings of fact for clear error, [and] its conclusions of law de novo ...." (internal citations omitted). A district court reviews a bankruptcy court's denial of a motion for relief from the automatic stay for abuse of discretion. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91 (2d Cir. 2003) ("The decision to lift an automatic stay is left to the discretion of the bankruptcy court…."); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). In such a review, the district court considers not whether it would have made the same decision, but only whether the decision was reasonable. *See In re Jamesway Corp.*, 179 B.R. 33, 39 (S.D.N.Y. 1995).

## DISCUSSION

### A.  Subject Matter Jurisdiction

Despite having moved the bankruptcy court to grant relief from the automatic stay, Appellant now contends that the bankruptcy court did not have jurisdiction over that motion. Appellant argues that, because the terms of the Agreement prohibited GM from transferring beneficial interests in the Pension Plan, the pension benefits at issue in the ERISA suit are not part of the bankruptcy estate.

Appellant's arguments are misplaced. Section 1334 of title 28 of the United States Code provides that the federal "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under 28 U.S.C. § 157(a), a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). "In this district, by standing order under 28 U.S.C. § 157(a), the district court refers all cases 'arising under,' 'arising in,' or 'related to' Title 11 proceedings to the bankruptcy court." *In re 131 Liquidating Corp.*, 222 B.R. 209, 211

(S.D.N.Y. 1998) (citing Order of Acting Chief Judge Robert J. Ward, July 10, 1984).

Accordingly, the bankruptcy court had jurisdiction if Appellant's motion concerned a

proceeding "arising under title 11, or arising in or related to cases under title 11."

Appellant's motion was plainly a proceeding "arising under title 11." Not only

does the provision governing the automatic stay from which Appellant seeks relief appear

in 11 U.S.C. § 362, but Title 11 also defines "motions to terminate, annul, or modify the

automatic stay" as "core proceedings" which reside "at the heart of federal bankruptcy

power." *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, No. 05 Civ. 9137, 2006 WL

839079, at *3 (S.D.N.Y. Mar. 31, 2006). Accordingly, courts in this Circuit have

consistently held that bankruptcy courts have jurisdiction over motions for relief from the

automatic stay. *See*, *e.g.*, *Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp,*

*Inc.*, 156 B.R. 890, 891 n.2 (N.D.N.Y. 1993) ("A motion to terminate, annul, or modify the

automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157(2)(G) and is,

therefore, a proceeding properly referred to a bankruptcy judge under 28 U.S.C. § 157.");

*In re Gibson & Cushman Dredging Corp.*, 100 B.R. 634, 637 (E.D.N.Y. 1989) ("[A]

motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

As such, the Bankruptcy Court was empowered to enter judgment on that branch of the

motion.") The same was true of the bankruptcy court here.

## B. Relief from the Automatic Stay

Motions for relief from the automatic stay are governed by 11 U.S.C. § 362(d),

which provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this section,
> such as by terminating, annulling, modifying, or conditioning such stay—

(1)    for cause, including the lack of adequate protection of an
interest in property of such party in interest;

(2)    with respect to a stay of an act against property under
subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective
reorganization;

11 U.S.C. § 362(d).

Apparently challenging the substance of the bankruptcy court's denial of relief,
Appellant argues that he "met his burden of proof under 11 U.S.C. § 362…because Debtor
has no equity in the property that is excluded from the estate as a result of debtor's
agreement with the UAW to include within the term of the GM/UAW ERISA and IRC
supplemental pension plan the anti-alienation and anti-assignment clause." (App. Br. at 2.)
That is, Appellant appears to argue that the provisions of the Agreement prohibiting GM
from transferring beneficial interests in the Pension Plan deprived MLC of any equity in
the property for purposes of Section 362(d)(2).

This argument is directed at the wrong section of Section 362. "The legislative
history makes clear that § 362(d)(2) is aimed at protecting a creditor's right to foreclosure,
*not* a creditor's right to pursue any form of litigation against the debtor in another court."
*In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 2583647, at *3 n. 2 (Bankr.
S.D.N.Y. Aug. 28, 2006) (emphasis added); *see also* S. Rep. No. 95-589, at 5 (1978) ("In
cases where the single asset of the debtor is *real property*, the court shall grant relief from
the stay if the debtor has no equity in the collateral, thereby allowing the creditor to
proceed with his foreclosure.") (emphasis added). Since Appellant's ERISA action is not
an action to enforce a secured interest in real property, Section 362(d)(2) does not apply

6

and his motion for relief from the stay can only be granted for "cause" under Section

362(d)(1). *See Sonnax*, 907 F.2d at 1285 ("Because the instant case concerns a stay of a

judicial proceeding, only Section 362(d)(1) is applicable.")

In considering whether "cause" exists to grant relief from an automatic stay under

Section 362(d)(1), courts in this Circuit apply a multifactor test pursuant to the Second

Circuit's decision in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990).  In

*Sonnax*, the Second Circuit identified twelve factors relevant to a "cause" determination:

> (1) whether relief would result in a partial or complete resolution of the
> issues; (2) lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a fiduciary; (4)
> whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has
> assumed full responsibility for defending it; (6) whether the action primarily
> involves third parties; (7) whether litigation in another forum would
> prejudice the interests of other creditors; (8) whether the judgment claim
> arising from the other action is subject to equitable subordination; (9)
> whether movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor; (10) the interests of judicial economy and the
> expeditious and economical resolution of litigation; (11) whether the parties
> are ready for trial in the other proceeding; and (12) impact of the stay on the
> parties and the balance of harms.

*Id.* at 1286.  The bankruptcy court here concluded that the *Sonnax* factors weighed strongly

against granting Appellant relief from the automatic stay.  That decision was not an abuse

of discretion.

Focusing on the second, seventh, and twelfth *Sonnax* factors, the bankruptcy court

found that the *Sonnax* factors weighed against relief because, regardless of whether

beneficial interests in the Pension Plan were property of the MLC estate, allowing

Appellant to proceed with the ERISA suit would force MLC to expend estate resources to

defend that action.  Hence the bankruptcy court found that relief "would prejudice the

interests of other creditors" and that there was no "lack of any connection with or

interference with the bankruptcy case." (*See* Hr'g Tr. at 39:25-41:3.) By the same token,

in assessing the "impact of the stay on the parties and the balance of harms," the

bankruptcy court noted that denying Appellant relief would conserve the resources of the

MLC estate without prejudicing Appellant because the ERISA suit against MLC could and

would be adjudicated as part of the claims allowance process under Title 11.  (*See* Hr'g Tr.

at 41:4-42:4.)  Far from an abuse of discretion, that reasoning accorded with the general

rule that, "[g]enerally, unsecured claims should not be granted relief from the stay because

to do so would result in a violation of one of the fundamental concepts of bankruptcy

law[:] that there should be an equality of distribution among creditors.  An unsecured

claimant should not be entitled to obtain a distributive advantage over other unsecured

claimants who are similarly enjoined from seeking distribution by any method other than

in accordance with the distributive scheme under the Bankruptcy Code."  *In re Leibowitz*,

147 B.R. 341, 345 (Bankr. S.D.N.Y.1992).

The bankruptcy court also found that the first *Sonnax* factor, "whether relief would

result in a partial or complete resolution of the issues", weighed against relief because

allowing the ERISA suit to proceed would merely enable the United States District Court

for the Middle District of Florida to resolve the pending cross motions for summary

judgment.  (Hr'g Tr. at 42:5-19.)  The outcome of those motions is at best uncertain, and it

seems unlikely that the Florida court will grant a *plaintiff's* motion for summary judgment.

*Cf. Norden v. Samper*, 503 F.Supp.2d 130, 136 (D.D.C. 2007) ("This is that rare case in

which a plaintiff wins on summary judgment.").  Hence the bankruptcy court reasonably

found that granting Appellant relief from the stay would more likely expose MLC to

protracted litigation rather than speedily resolve the ERISA suit.

For much the same reason, the bankruptcy court found that the parties were not ready for trial in the ERISA action and that the eleventh *Sonnax* factor weighed against relief. (*See* Hr'g Tr. at 46:19-23.) That analysis, too, was far from an abuse of discretion. Appellant contends that he has completed discovery and that the "the district judge is right on the doorstep of resolving this case" (Hr'g Tr. at 25:7-8), but the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial.

The bankruptcy court also found that the United States District Court for the Middle District of Florida was not a "specialized tribunal" with any unique expertise in adjudicating ERISA actions. (*See* Hr'g Tr. at 43:9-14.) That decision was more than reasonable, for this Court has found bankruptcy courts well-equipped to adjudicate statutory actions involving employee benefits. *See, e.g.*, *See In re Bally Total Fitness of Greater New York, Inc.*, 411 B.R. 142, 1471-148 (S.D.N.Y. 2009) (finding no need for a specialized tribunal in wage and hour class action). *Cf. In re White Motor Corp.*, 42 B.R. 693, 705-706 (N.D. Ohio 1984) (finding no need for bankruptcy court to withdraw under Section 157 from suit involving ERISA and tax issues).

In addition, the bankruptcy court found that the presence of the Pension Plan as a defendant in Appellant's ERISA suit weighed against relief because the automatic stay would not apply to a suit against the Pension Plan alone. (Hr'g Tr. at 43:22-44:13.) *Cf. Buchanan v. Golden Castin Corp. Hourly Health Benefit Plan*, No. No. 4:03-CV-151, 2003 WL 22951936, at *3 (S.D.Ind. Oct. 10, 2003) (holding that "a stay of claims against the employer does not stay claims against the employee benefit plan") (citing *Brengettys v. LTV Steel Hourly Pension Plan*, 241 F.3d 609, 609 n. 1 (7th Cir.2001)). Accordingly,

Appellant could vitiate the effect of the automatic stay by severing the ERISA suit into two actions, one against the Pension Plan alone in the Middle District of Florida and another against MLC in the bankruptcy court.  The fact that Appellant has the power to move his ERISA suit forward weighs strongly in favor of denying him relief.

Finally, the bankruptcy court found that "the interests of judicial economy and the expeditious and economical resolution of litigation" weighed against relief because allowing Appellant to proceed with his classic pre-petition action would open the "floodgates" to thousands of other litigants with garden variety claims against the MLC estate.  (*See* Hr'g Tr. at 44:20-45:10.)  That would usher in the very state of affairs the automatic stay was enacted to prevent.  *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.").

In making these findings, the bankruptcy court clearly did not abuse its discretion. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  S. Rep. No. 95-989, at 54-55 (1978).  The only reason related to the *Sonnax* factors that Appellant has advanced as to why MLC should be stripped of the fundamental debtor protection embodied in the stay is that doing so would prevent the bankruptcy court from being "further burdened by more motions for pro hac

vice attorneys to come in here and try to hear issues…that have already been heard by the district court judge in Ocala, Florida….” (Hr'g Tr. at 23:9-24:13.)  However, the minimal benefit, if any, of freeing the bankruptcy court of such routine motions is dwarfed by the burden on MLC of defending the ERISA suit outside the established claims process. Under *Sonnax*, that conclusion strongly militates against relief, particularly where Appellant could vitiate any burden to any party by severing his suit.   In reaching the same conclusion, the bankruptcy court did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's denial of Appellant's motion for

relief from the automatic stay is AFFIRMED, Appellant's appeal [1] is DISMISSED, and

Appellant's motion [8] to decide this appeal is DISMISSED as moot.  The Clerk is

directed to close this case.


SO ORDERED.


Dated: New York, New York
~~October~~ ___, 2010
November 8,

_____
Richard J. Holwell
United States District Judge