# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILLY R. KIDWELL,

    Plaintiff,

v.                                                Case No. 2:09-cv-108-FtM-36-DNF

G. RICHARD WAGONER, et al.,

    Defendants.

## ORDER

This cause comes before the Court on Defendants General Motors former CEO G. Richard Wagoner and current and former members of GM Board of Directors Percy N. Barnevik, Erskine B. Bowles, John H. Bryan, Armando M. Codina, George M.C. Fisher, Karen Katen, Kent Kresa, Ellen J. Kullman, Phillip A. Laskawy, E. Stanley O'Neal, and Eckhard Pfeiffer's (collectively the "GM Executives") amended and renewed Motion to Dismiss (Doc. 95) filed on September 16, 2009 and Defendant General Motors LLC's Motion to Dismiss (Doc. 143), filed on January 15, 2010. On October 2, 2009 Plaintiff filed a response to Defendant GM Executives' Motion to Dismiss (Doc. 100). Plaintiff did not file a response to Defendant General Motors LLC's motion to dismiss and therefore the motion is deemed unopposed. *See* M.D. Fla. R. 3.01(b). For the reasons that follow, each of Plaintiff's claims against General Motors LLC is barred by an order of the Bankruptcy court and will be dismissed with prejudice. Plaintiff's claims against the GM Executives will be dismissed without prejudice.

## FACTS

According to the amended complaint, on January 20, 2003, Plaintiff Billy Kidwell purchased

a 2003 Chevy S-10 after watching television advertisements that featured the slogan "Like a Rock." These advertisements also represented, either explicitly or implicitly, that Chevy trucks were dependable and safe. Plaintiff also watched commercials advertising that "Mr. Goodwrench," a dealership-approved mechanic service, would repair GM vehicles that were under warranty. Plaintiff alleges that he watched, at minimum, thirty Chevy and GM advertisements prior to purchasing his truck. Plaintiff paid $26,157.63 for the truck.

Plaintiff further asserts that he encountered maintenance problems with his truck. These alleged maintenance issues include problems related to the dash lights and headlights, problems with the engine starting, problems with the truck's transmission, problems related to the gas gauge display, problems related to the car doors leaking rainwater, and problems relating to the truck's performance at speeds exceeding forty miles an hour. Plaintiff took his truck to Palm Auto Mall for repairs, but successful repairs were never completed. Plaintiff claims that the GM dealership from which he purchased his vehicle failed to honor the truck's warranty. Plaintiff alleges that he made numerous written appeals to GM corporation and various GM executives, but these appeals were either ignored or not addressed to Plaintiff's satisfaction.

After several failed attempts to repair the truck, Plaintiff sent a Lemon Law Complaint to the Chevy Motor Division Customer Assistance Center in Detroit, Michigan. Plaintiff alleges that these letters were forwarded to Carolyn Westberg, an employee of the Sitel Corporation, whom Plaintiff alleges was held out to be an employee of GM. Plaintiff did not win the Lemon Law proceeding. On July 26, 2005, Plaintiff filed a Florida State law claim against GM in Charlotte County Court, Case 05-1747-CA.

On August 27, 2009, Plaintiff filed an amended complaint in this case (Doc. 91). Plaintiff's

2

twelve-count amended complaint seeks damages for the following alleged acts: (1) Fraudulent advertising; (2) Wire and mail fraud; (3) Breach of warranty; (4) Fraud on the lemon law process; (5) Violation of Florida Statute section 681; (6) Fraud on state courts; (7) Violation of the Magnuson-Moss Warranty Act; (8) Violation of Plaintiff's state statutory rights; (9) Violation of Plaintiff's federal statutory rights; (10) Violation of Plaintiff's Constitutional rights; (11) Violation of RICO; and (12) Conspiracy to violate RICO.[1] The amended complaint alleges these violations against General Motors, LLC (improperly referred to as "General Motors Company") and each of the following GM executives, in his or her individual capacity: G. Richard Wagoner, Percy N. Barmevik, Erskine B. Bowles, John H. Bryan, Armando M. Condina, George M.C. Fisher, Karen Katen, Kent Kresa, Ellen J. Kullman, Phillip A. Laskaway, E. Stanley O'Neal, and Eckhard Pfeiffer. Plaintiff has also brought each of these claims against Carolyn Westberg, an employee of the Sitel Corporation. However, Ms. Westberg has not been served with process.

## ANALYSIS

In order to survive dismissal, Plaintiff must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570); *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 U.S. App. LEXIS 17764, 13 (11th Cir. Aug. 11, 2009) ("A complaint must state a plausible claim for relief"); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

---

[1] In the preliminary caption of Plaintiff's complaint, Plaintiff cites sixteen separate counts, but only alleges twelve counts in the body of the complaint. Thus, the Court will not give any consideration to Plaintiff's claims for "spoilation of evidence," "bailout money fraud," "retaliation against Plaintiff for exercising rights," or "unjust enrichment." These claims are dismissed.

3

129 S. Ct. at 1949 (citation omitted) (emphasis added); *Sinaltrainal*, 2009 U.S. App. LEXIS 17764 at *13–14 ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss") (quoting *Iqbal*, 129 S. Ct. at 1949). Further, in order to survive a motion to dismiss, Plaintiff must allege enough "factual content to 'nudg[e]' his claim[s]...across the line from conceivable to plausible.'" *Iqbal*, 129 S. Ct. At 1952 (quoting *Twombly*, 550 U.S. at 570). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557).

In the context of RICO and fraud actions, a Plaintiff must assert "with particularity" a plausible entitlement to relief. *See* Fed. R.. Civ. P. 9(b). "This particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Daniels v. Nat'l City Mortgage*, 2009 U.S. Dist. LEXIS 73822, at *2 (M.D. Fla. Aug. 20, 2009) (*quoting West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, No. 07-13421, 2008 U.S. App. LEXIS 22066, at *9 (11th Cir. Jul. 24, 2008); *Andersen v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002) ("allegations of fraud are governed by the pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, the complaint must allege the 'who, what, where, when and how' to survive a motion to dismiss"). With respect to these subjects, understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires. *See Twombly*, 550 U.S. at 569 (citing Fed. R. Civ. P. 9(b)–(c)).

4

The Court begins its analysis by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1941 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). If any "well-pleaded factual allegations" remain in the complaint, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1941 (emphasis added). There is no "duty on the courts to conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one." *See Twombly*, 550 U.S. at 562.

## I. Form of Plaintiff's Complaint

Plaintiff's amended complaint is a classic example of a shotgun pleading. Each count incorporates by reference some forty-nine (49) pages of allegations and 223 numbered paragraphs. As a consequence, it is impossible to determine the precise factual basis for each claim. The Eleventh Circuit has condemned this type of pleading. *See Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001) (criticized on unrelated grounds). Moreover, Plaintiff's amended complaint names fourteen separate defendants, who are each (presumably) charged in each count. The amended complaint contains allegations that "the defendants" or "the GM defendants" engaged in certain conduct, making no distinction among the defendants. Each specific count incorporates by reference Plaintiff's "facts of the case," which are contained in nearly 200 numbered paragraphs. The result is that each count is replete with factual allegations that cannot possibly be material to each specific count, and is of the type that has been criticized repeatedly by the Eleventh Circuit. *See, e.g., BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326 n.6 (11th Cir. 1998) ("Each of the 14 counts incorporates by reference these 60 paragraphs, regardless of whether the allegations thereof have any bearing on the legal theory (or theories) of recovery on which the count purports

5

to be based"); *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998) ("Determining which factual allegations are relevant to which claim is practically impossible, as is matching specific acts of the defendants to violations of [the plaintiff's] rights"); *Cramer v. State of Florida*, 117 F.3d 1258, 1261–63 (11th Cir. 1997) (describing Plaintiff's pleading as being "so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these [plaintiffs] are claiming" and noting that such pleadings "exact an intolerable toll on the trial court's docket") (overruled on unrelated grounds); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991), *cert. denied*, 502 U.S. 855 (1991) (criticizing Plaintiff's rambling recitation and claims for relief, which were based on only the generalized facts pled).

## II. The Claims Against General Motors LLC

In its Motion to Dismiss, General Motors LLC asserts, among other things, that Plaintiff's claims should be dismissed because they are barred by an order of the United States Bankruptcy Court for the Southern District of New York. The Court agrees.

Plaintiff's claims against Defendant General Motors LLC are barred by the Sale Approval Order issued by the Bankruptcy Court for the Southern District of New York on July 10, 2009. *See generally In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009). Under the order, the newly-reorganized General Motors LLC entity acquired the old entity's assets "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever...including right or claims based on any successor or transferee liability..."[2] [3] A "claim" is defined as "any right that

---

[2]This provision of the Sale Order is subject to certain exceptions that do not apply to the case at hand.

[3]"Except as expressly permitted or otherwise specifically provided by [certain addenda] or this Order, all persons and entities, including, but not limited to, all debt security

6

can be characterized as a right to payment, whether or not such right is reduced to judgment...disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Therefore, through the Sale Order, the newly-reorganized General Motors LLC acquired the old entity's assets free and clear of all claims for breach of warranty.

The Sale Order was deemed binding on all "known and unknown creditors" of "Old GM." Thus, by the express terms approved by the Bankruptcy Court for the Southern District of New York, General Motors LLC cannot be held liable for the conduct Plaintiff alleges in the amended complaint, since such conduct occurred before July 10, 2009 and qualifies as a "claim" for the purposes of the Bankruptcy Code. *Id. See also* 11 U.S.C. 362(a)(1) (prohibiting the "commencement or continuation...of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [debtor's bankruptcy]"). Therefore, Plaintiff's claims against General Motors LLC will be dismissed with prejudice.

---

continued
holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction, are forever barred, estopped, and permanently enjoined (with respect to future claims or demands based on exposure to asbestos, to the fullest extent constitutionally permissible) from asserting against the Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability." *See* GM Corporation sale order at 22–23, available at http://docs.motorsliquidationdocket.com/pdflib/2968_order.pdf (last accessed May 4, 2010). The GM sale order was determined to be "in the best interests of the Debtors, their estates and creditors, and other parties in interest." *Id.* at 6.

7

### III. The Claims Against the GM Executives

In their Motion to Dismiss, the GM Executives contend that Plaintiff's amended complaint fails to state a claim upon which relief can be granted. The Court agrees.

### Plaintiff's Counts I and II: Fraudulent Advertising and Wire and Mail Fraud

In order to establish fraud under Florida Law, Plaintiff bears the burden of showing (1) a false statement or omission of material fact; (2) known to Defendants to be false at the time it was made; (3) made for the purpose of inducing Plaintiff to act in reliance thereon; (4) and an action taken by Plaintiff in reasonable reliance on the representation resulting in damage or injury. *Thomkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007). To state a claim for mail fraud under 18 U.S.C. § 1341 or wire fraud under 18 U.S.C. § 1343, Plaintiff must show (1) the existence of a scheme to defraud, (2) Defendants' knowing or intentional participation in the scheme, and (3) the use of interstate mails or wire communications in furtherance of the scheme. *Water Int'l Network v. East*, 892 F. Supp. 1477, 1481 (M.D. Fla. 1995).

Plaintiff fails to allege any facts to demonstrate that any of the GM Executives, in their individual capacities, had personal involvement in the decision to disseminate particular advertisements, much less that they disseminated these advertisements with a "knowing intent" to defraud potential customers. Instead Plaintiff alleges that "The GM Corporation, and GM Corporate Governance Defendants, used television, radio, newspapers, and magazines to advertise, interstate, that General Motors Vehicles were dependable, safe, and had a solid General Motors Warranty, and a 'Mr. Goodwrench' to care for their new GM Vehicle." Doc. 91 at 14.

Here, Plaintiff's only allegations with respect to Fraudulent Advertising and Wire and Mail Fraud involve the advertisements that Plaintiff argues induced him to purchase his Chevrolet truck.

8

GM's advertisements claiming that their vehicles are "built like a rock" and "the most dependable, long-lasting trucks" on the market are examples of sales puffery, which is not actionable and therefore cannot constitute fraudulent advertising, wire fraud, or mail fraud. *See United States v. Martinelli*, 454 F.3d 1300, 1317 (11th Cir. 2006) ("exaggerated opinions or hyped-up sales pitches" are not actionable). The advertisements in question are general claims of performance and superiority, and are not actionable either as RICO predicate acts or as separate causes of action. In particular, courts have found the exact advertisement language Plaintiff challenges to constitute puffery. *See, e.g., Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *20-21 (S.D.N.Y. May 22, 1996) (holding that GM's advertisements stating its vehicles are 'like a rock' and 'the most dependable, long-lasting trucks on the planet' are generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact and are thus sales puffery).

As to the advertisements featuring Mr. Goodwrench, Plaintiff's factual allegations do not give rise to individual liability. Plaintiff seems to allege that the GM Executives each personally decided to run the advertisements featuring Mr. Goodwrench and instructed the Mr. Goodwrench mechanics to "purposefully lie to consumers." These conclusory allegations are not supported by facts. Such allegations are insufficient to plead individual liability. Thus Plaintiff's Counts I and II are dismissed, as Plaintiff has failed to state a claim upon which relief can be granted for mail fraud, wire fraud or fraudulent advertising.

**Plaintiff's Counts III and VII: Breach of Warranty and Violations of the Magnuson-Moss Warranty Act**

The Plaintiff brings a claim for breach of GM's warranty and for violations of the Magnuson-Moss Warranty Act against both GM and the GM Executives stating "GM had a right to

9

have a third party like the Sitel Corporation administer it's [sic] warranty, only if GM were honest...One of the main reasons Congress passed the Magnuson-Moss Warranty Act was so that consumers could compare warranties on products before making a purchase decision." Doc. 91 at 15 (emphasis omitted).

The Magnuson-Moss Warranty Improvement Act, which provides for a private cause of action against warrantors, does not supplant state law. *See generally* 15 U.S.C. § 2301(7). Unless the Act specifically prescribes a regulating rule, state law should be applied to warranty claims brought under the act. *Richter v. Monaco Coach Corp.*, 2009 U.S. Dist. LEXIS 46445, at *12 (M.D. Fla. June 2, 2009). Because the Magnuson-Moss Warranty Act does not expressly modify Florida law with respect to limited warranties, Florida law applies to a claim under the Act. *See id.* at *12.

Under Florida Law, officers and directors of a corporation are not generally liable to third persons if they act within the power and purpose of the corporation and do not purport to bind themselves individually. Fla. Stat. § 607.083 et seq. (exempting corporate directors from liability except in, *inter alia*, circumstances exhibiting criminal conduct or a wanton and willful disregard of human rights, safety, or property). Other jurisdictions follow this general rule *See, e.g., Samara v. Southwestern Bell Yellow Pages, Inc.*, 2006 U.S. Dist. LEXIS 44945, at *6 (W.D. OK June 28, 2006) (exempting corporate officials from individual liability for breach of warranty); *Harris v. Madison*, 1998 U.S. Dist LEXIS 11398 *7 (E.D. PA 1998) ("a corporate officer who negotiates a contract on behalf of a corporation may not ordinarily be held personally liable for contract damages"). *See also* Restatement (Second) of Agency § 352.

Plaintiff argues that third-party administration of a warranty is only permissible "if GM were honest, and informed consumers about the third party administering the GM Warranty, prior to their

purchasing a GM Vehicle, so a potential customer could compare warranties, and decide if they wanted to purchase a vehicle with a third party warranty." Doc. 91 at 15. However, this proposition is without any factual or legal support. Plaintiff also alleges that "[t]he GM Corporate Governance Defendants were intentionally secretive, and sneaky, about having a third party administer their warranty..." *Id.* He further states that "the GM Defendants have absolutely refused to honor their Written, or advertised, warranty and have left the un-running truck in Plaintiff's driveway causing Plaintiff great inconvenience." *Id.* at 24. These allegations do not point to any specific instances of conduct by the GM Executives. Again, Plaintiff has failed to plead facts sufficient to demonstrate that the GM Executives exceeded the scope of their authority as GM officers or board members and should be personally liable or otherwise owed him an independent duty. Plaintiff's counts III and VII are dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Counts IV and VI: Fraud on Lemon Law Proceedings and Fraud on the Court**

In bringing his claim for Fraud on the Lemon Law proceedings and Fraud on the State Court, Plaintiff asserts that "to commit a Fraud on Florida's Lemon Law Process the GM Defendants fraudulently claimed that Sitel Corporation Employee, Carolyn Westberg, is a GM Employee" and that "the GM Defendants created, or manufactured a number of fake letters representing that Carolyn Westberg was a GM employee." *Id.* at 25–26. Plaintiff also asserts that Carolyn Westberg and Stephen Nichols (who is not a party to this suit) lied under oath during the hearing and that "the GM Defendants suborned Perjury [sic] from Steven Nichols." *Id.* at 26. Plaintiff further alleges that, during the Lemon Law Hearing, testimony was given noting that Carolyn Westberg was an employee of GM, and that Defendants now deny that statement. *Id.* at 26–28. Plaintiff contends that Defendant filed a document waiving service on Carolyn Westberg, and that this amounted to, *inter*

11

*alia*, fraud upon the Court. *Id.* at 26–27.

Here, Plaintiff has failed to allege any particular facts linking any of the GM Executives, in their individual capacities, to the allegedly fraudulent claims that Carolyn Westberg was a GM employee, to the allegedly fraudulent letter claiming that Carolyn Westberg was a GM employee, or to the allegedly false testimony of Steven Nichols. Especially in light of the heightened pleading standard Plaintiff must meet in order to establish a fraud-related claim, Plaintiff's claim for Fraud on the Lemon Law proceedings and Fraud on the State Court are both dismissed for failure to state a claim upon which relief can be granted. In order to survive dismissal, these facts must amount to more than naked assertions devoid of further factual enhancements.

**Plaintiff's Count V: Violations of Fla. Stat. § 681**

Florida Statute § 681 provides redress for the non-conformity of motor vehicles. It allows consumers who satisfy certain requirements to assert claims against a car manufacturer and to have those claims brought before an arbitrator.

Plaintiff argues that the GM Executives, in their individual capacities, failed to comply with Fla. Stat. § 681 through their failure to timely respond to Plaintiff's requests and for allegedly falsifying documents: "Pursuant to F.S. 681.104(a) the GM Defendants had a time period of exactly ten (10) days to respond, or forever lose their right to make a final attempt to cure the nonconformities [of Plaintiff's truck]." *Id.* at 43. Plaintiff also alleges that "Defendant, Carolyn Westbeg, who is familiar with the Lemon Law Process, knew exactly what was necessary for GM to prevail against the Plaintiff, and she intentionally started falsifying the GM record of Plaintiff's Truck, creating fraudulent documents in Plaintiff's case..." *Id.* Plaintiff also states that Stephen Nichols lied under oath during Plaintiff's Lemon Law hearing. *Id.* at 44. Plaintiff further states that

"The Defendants were clearly engaged in a scheme to deceive the Hearing Officer about the GM Defendants violating the ten (10) day time limit to make a repair attempt." *Id.* Finally, Plaintiff contends that he mailed each of the GM Executives letters requesting that "they honor their advertised 'Corporate Responsibility' and provide Plaintiff with a working truck..." and that "[t]he failure of the CEO, G. Richard Wagoner, and each member of the GM Board of directors, to abide by Chapter 681 decision...caused the Plaintiff to suffer massive pecuniary, and other, damages." *Id.* at 47–48. Such allegations are insufficient to plead individual liability on the GM Executives. The allegations lack supporting facts. Plaintiff's amended complaint fails to plead violations of Fla. Stat. § 681 as to any of the GM Executives, in their individual capacities, and is dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Counts VIII, IX and X: Violations of State and Federal Statutory Rights and Constitutional Rights**

Plaintiffs Counts VIII, IX and X allege claims for "violations of state statutory rights" and "violations of federal statutory rights" and "violations of Constitutional Rights" in three counts without elaborating on the nature of these rights, the specific violations of these rights, or the identity of the individuals who allegedly violated these rights. Rather, Plaintiff states that the GM Executives denied Plaintiff meaningful access to state and federal courts, in violation of Plaintiff's civil rights, through their alleged fraud on the Courts. In support of these claims, Plaintiff merely alleges that Defendants "are involved in ongoing violations of [Plaintiff's rights] and are specifically harming Plaintiff...Plaintiff was harmed by [Defendants'] violations of Plaintiff's [rights] as described herein and are specifically harming Plaintiff." *Id.* at 59–62. As to Count X, Plaintiff alleges violations of his First, Fifth and Fourteenth Amendments, but fails to elaborate. *Id.* at 61–62.

Counts VIII, IX and X merely restate Plaintiff's previous allegations, represent conclusory

13

accusations, and cannot withstand a motion to dismiss. These facts must amount to more than naked assertions devoid of further factual enhancements in order to survive dismissal. Counts VII, IX and X are dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Count XI: Violation of RICO, 18 U.S.C. § 1962(c)**

To state a RICO claim, Plaintiff "must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10-year period."[4] *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311–12 (11th Cir. 2000) (citing 18 U.S.C. § 1961(5)). "The phrase 'racketeering activity' is defined as including any act which is indictable under a lengthy list of criminal offenses" including either "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical" or any number of various federal criminal offenses, including mail and wire fraud. *See* 18 U.S.C. § 1961(1). In addition to proving racketeering activity, Plaintiff must also show that the activity caused him to suffer an injury. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998). In order for a pattern of racketeering activity to be a cognizable cause of an injury to Plaintiff, one or more of the predicate acts must not only be the "but for" cause of the injury, but the proximate cause as well. *Green Leaf Nursery v. E.I. DuPont Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003). A wrongful act is a "proximate cause if it is a substantial factor in the sequence of responsible causation. *Id.*

---

[4]Plaintiff's complaint alleges both state and federal RICO counts. The two laws share substantial similarities and will be considered together. *See generally Gross v. State*, 765 So. 2d 39, 42–43 (Fla. 2000) ("The Florida RICO statute was largely modeled after the Federal RICO statute...The 'enterprise' and 'pattern of racketeering activity' elements of [Florida's version of] RICO are almost identical to the Federal RICO provisions...Florida Courts have looked to the federal courts for guidance in construing [Florida's version of] RICO...[in light of] the similarity of the state and federal statutes").

14

In the context of a RICO claim, "courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458–59 (2006)). To establish proximate cause under RICO, the alleged violation must lead "directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.

Plaintiff's theory of causation is far too indirect and attenuated to support a finding of proximate causation. Plaintiff argues that "The GM Corporate Governance Defendants have set a bad faith 'Policy' for General Motors to Obstruct Justice" and cites several predicate acts related to this policy. Doc. 91 at 35, 63–64. To establish these predicate acts, Plaintiff describes events including GM's running of advertisements that describe the dependability of their vehicles, GM's advertisements featuring the "Mr. Goodwrench" mechanic service, GM's use of taxpayer bailout funds, and a state court judge's denial of a portion of Plaintiff's Lemon Law claims. *Id.* at 36–39. These also include the alleged obstruction of evidence during Plaintiff's Lemon Law hearing, manslaughter and alleged attempts to cause Plaintiff physical harm, criminal "tactics" including perjury and the falsification of evidence, and a conspiracy to prevent Plaintiff from exercising federal and state rights. *Id.* at 41–43. These disjointed events do not satisfy RICO's requirement that Plaintiff allege he was injured as a direct result of any of the GM Executives' alleged misconduct. *See Anza*, 547 U.S. at 461.

Neither manslaughter nor the frustration of constitutional rights qualifies as a RICO predicate act, and thus these allegations do not form the basis for demonstrating predicate acts. *See* 18 U.S.C. § 1961(1). Obstruction of justice is only a predicate act for the purposes of the federal RICO statute if the obstruction of justice is as to federal proceedings or as to state court proceedings involving

15

illegal gambling. Thus, Plaintiff's allegation that the GM Executives frustrated his state Lemon Law proceedings, even if pled with sufficient particularity, do not constitute a predicate act. *See* 18 U.S.C. § 1511; 18 U.S.C § 1503(a); *Green Leaf Nursery*, 341 F.3d at 1307 ("The federal obstruction...claims are only applicable to federal proceedings").

Plaintiff also alleges "severe damage to Plaintiff's health" as a result of the GM Executives' alleged conduct, and Plaintiff requests billions of dollars worth of damages. Since RICO does not provide for recovery due to alleged personal injuries, Plaintiff's attempt to recover from such alleged injuries must fail as a matter of law. *See* 18 U.S.C. § 1964 (c). *See Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom").

Plaintiff's assertion that the GM Executives perpetrated fraud by approving certain advertisements which somehow caused a state court to deny portions of his Lemon Law action is unpersuasive. *See Hemi Group, LLC v. City of New York, New York*, No. 08-969 (Jan 25, 2010) ("to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a but for cause of his injury, but was the proximate cause as well'") (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). First, he has failed to link any GM Executive, in his individual capacity, to any of the advertisements. Moreover, Plaintiff has failed to further any plausible chain of related events supporting his claim. Since there is no plausible connection between the advertisements that allegedly induced Plaintiff to purchase his vehicle and the state court's rulings denying portions of Plaintiff's Lemon Law claim, and since Plaintiff has failed to link any GM Executive to the advertisements, the advertisements do not give rise to predicate acts for the purposes of RICO.

Plaintiff also fails to establish proximate cause for all of the remaining alleged predicate acts. Indeed, Plaintiff makes no effort to describe how the separate and attenuated events caused his alleged injuries. Plaintiff has also failed to allege any individual action by any specific GM Executive. Rather, he alleges specific misconduct as to Carolyn Westberg, whom he alleges lied at the Lemon Law hearing. Attenuated, remote allegations have been routinely dismissed by the Eleventh Circuit and this Court in the RICO context. *See, e.g., Green Leaf Nursery*, 341 F.3d at 1307–08 (upholding the trial court's dismissal of Plaintiff's state RICO action, which alleged a scheme of perjury, falsification of evidence, wire and mail fraud, obstruction of justice and spoilation of evidence, where no plausible theory of causation could be shown); *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339, 1341 (M.D. Fla. 2008) (dismissing Plaintiff's RICO action, which alleged a "nationwide, uniform marketing campaign involving fraudulent misstatements and deceptive conduct" in the promotion of an antipsychotic drug, where no proximate cause could be established between Plaintiff's injuries and the alleged scheme to defraud); *Andersen v. Smithfield Foods., Inc.*, 207 F. Supp. 2d 1358, 1364 (M.D. Fla. 2002) (dismissing Plaintiff's RICO action, which alleged, *inter alia*, mail fraud and extortion, where Plaintiff failed to plead his case with sufficient particularity to satisfy RICO's heightened pleading standard). Since the amended complaint does not sufficiently allege predicate acts or the requisite proximate cause to establish a claim for RICO, Plaintiff's Count XI will be dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Count XII: Conspiracy to Violate RICO**

Plaintiff's claim for conspiracy to violate RICO is based on the same allegations underlying Plaintiff's general RICO claims. Thus, since Plaintiff's general RICO claim fails, his claims for

conspiracy to commit this underlying offense necessarily fails as well. *See* 18 U.S.C. §1962(d); *see Rogers v. Nacchio*, 241 Fed. Appx. 602, 609 (11th Cir. 2007) (citing *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) (dismissing RICO conspiracy claims because defendants cannot conspire to commit conduct that in itself did not constitute a RICO violation). Count XII of the amended complaint will be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff has made attenuated accusations against the GM Executives that lack the specificity required to survive a motion to dismiss. He argues that

> This Rico [sic] 'Enterprise' has a continuity of structure, and personnel, with GM CEO Richard Wagoner, and the GM Board of Directors in charge, similar to a Mafia Don, and his Lieutenants, with Defendants Carolyn Westberg, and the General Motors Company being 'soldiers,' much like in the mob, in that they operate at the leader's whim.

Doc. 91. at 40. Plaintiff's allegations typify the "unadorned, defendant-unlawfully-harmed-me accusation[s]" rejected by the Supreme Court in *Iqbal*. Thus, because Plaintiff's allegations fail to meet the heightened pleading requirements necessary to sustain an action for RICO or Fraud, and fail to state a claim upon which relief can be granted as to the remaining counts, Plaintiff's claims against the GM Executives are dismissed without prejudice. Plaintiff's claims against General Motors LLC are dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants GM Executives' Motion to Dismiss is GRANTED. Plaintiff's Amended Complaint is dismissed, without prejudice, as to the GM Executives.

2. Plaintiff shall have TWENTY-ONE (21) DAYS to file a second amended complaint, if he can in good faith allege a proper cause of action. Plaintiff is reminded and cautioned of his obligation to file pleadings in good faith and not for the purpose of harassment. In addition to the requirements of Rule 8, Fed. R. Civ. P., factual contentions in the amended complaint must have evidentiary support. *See* Rule 11(b), Fed. R. Civ. P.

3. Defendant General Motors LLC's Motion to Dismiss is GRANTED. Plaintiff's Amended Complaint is dismissed with prejudice as to General Motors LLC.

4. The clerk is directed to enter judgment accordingly and terminate this matter as to Defendant General Motors LLC.

**DONE AND ORDERED** at Fort Myers, Florida on September 10, 2010.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES FURNISHED TO**:
Counsel of Record and Unrepresented Party

19