**HEARING DATE AND TIME: TO BE DETERMINED**
**OBJECTION DATE AND TIME:  November 22, 2010 at 4:00 p.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **Case No.: 09-50026 (REG)** |
| f/k/a General Motors Corp., *et al*. | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

-----------------------------------------------------------------x

**OBJECTION BY GENERAL MOTORS LLC TO *PRO SE* MOTION TO SHOW CAUSE WHY GENERAL MOTORS LLC., AND ITS CORPORATE GOVERNANCE, SHOULD NOT BE HELD IN CONTEMPT FOR INTENTIONALLY VIOLATING THIS COURT'S ORDERS, WHILE <u>TERRORIZING A DISABLED COMBAT VETERAN, AND HIS FAMILY</u>**

NYC_IMANAGE-1216447v6

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

OBJECTION...................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re General Motors Corp.*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009)..................................................................................7

*Kidwell v. General Motors Corp.*,
    975 So. 2d 503 (Fla. Dist. Ct. App. 2007) ........................................................................2, 6

**STATUTES**

Florida Statutes, Section 681 ......................................................................................................10

**RULES**

Florida Administrative Code, Rule 2-30.001..............................................................................10

Florida Administrative Code, Rules 2-33.002 through 2-33.004 ...............................................10

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this objection ("**Objection**") to the *pro se Motion to Show Cause Why General Motors LLC., and Its Corporate Governance, Should Not be Held in Contempt for Intentionally Violating this Court's Orders, While Terrorizing a Disabled Combat Veteran, and His Family*, dated September 20, 2010 ("**Motion**"), filed by Billy Ray Kidwell ("**Movant**").[1]  In support of this Objection, New GM respectfully represents as follows:

## INTRODUCTION

1.  The Motion seeks to hold New GM in contempt for its alleged failure to comply with Orders of this Court.  As will be further explained below, New GM has fully complied with the Orders of this Court, including the Sale Order (as herein defined).  The Motion is the latest pleading filed by the Movant in a long line of fruitless attempts by him to have General Motors Corp. ("**Old GM**") and now New GM held accountable for alleged liabilities arising from a purportedly defective Chevy S-10 pickup truck purchased by Movant in 2003.  Although Movant asserts that all he wants is "his day in Court" (Motion, p. 1), as demonstrated below, Movant has unquestionably already had his day in court, and then some.  What Movant really seeks is to forum shop, after he was denied the very same relief against New GM which he now seeks in this Court.

2.  Movant began this odyssey in 2005 with the filing of an arbitration proceeding *pro se* in which Movant was unsuccessful in his effort to obtain relief under Florida's Lemon Law for his purportedly defective Chevrolet S-10 pickup truck. Instead of seeking review

---

[1] By Endorsed Order dated November 1, 2010, the Court declined to enter an order to show cause in connection with the Motion.  Instead, the Court directed the above-captioned Debtors and/or New GM to respond to the Motion within three weeks of the entry of the Endorsed Order.  A non-evidentiary hearing will be scheduled by the Court thereafter.

through the established procedures for the Better Business Bureau ("**BBB**") Auto Line Arbitration by applying to the Florida New Motor Vehicle Arbitration Board for review, Movant, *pro se*, brought a multi-count action against Old GM and one of its employees in Florida state court alleging fraud.  *See Kidwell v. General Motors Corp.*, 975 So. 2d 503, 505 (Fla. Dist. Ct. App. 2007)("[I]f Kidwell was dissatisfied with the decision of the BBB arbitrator he could have sought review by applying to the Florida New Motor Vehicle Arbitration Board, which he failed to do.")(citation omitted)  In the state court action, Movant alleged that he purchased a defective GM vehicle and that Old GM and its representative committed fraud in the arbitration proceeding.  *Kidwell*, 975 So. 2d at 504.  The trial court dismissed the fraud claims in their entirety; the Florida Second District Court of Appeals affirmed the dismissal of the fraud claim against GM's employee.  The Florida Second District Court of Appeals found that "Kidwell's contention that the BBB arbitration process lacks impartiality . . . is without merit."  *Id.* at 505.

3. Unsatisfied with how the state court action was proceeding, Movant then filed an action ("**Florida District Court Action**") *pro se* in the United States District Court for the Middle District of Florida ("**Florida District Court**") in February, 2009 accusing Old GM's former CEO and various current and former GM Board of Directors of "com[ing] together to make a Corporate Rico Crime Family" "very similar to a Mafia Crime Family."  Amended Complaint (as defined below), ¶¶ 1, 156.  In his Florida District Court action, Movant claimed that the former CEO and Old GM Board acted as "a Mafia Don, and his Lieutenants," while Old GM employees serve as "'*soldiers*', much like in the mob."  Amended Complaint, ¶ 158.  Movant claimed that this "Crime Family" engaged in numerous RICO Predicate Acts to "trick[]"consumers into purchasing Old GM vehicles, such as Plaintiff's Chevrolet S-10 pickup truck, which was allegedly "fraudulently portrayed" as being "*Built like a Rock*."  Amended

2

Complaint, ¶¶ 3, 45, 152-53.  Movant further claimed that he "has suffered . . . from years of inhuman torture at the hands of this RICO Enterprise," "has been terrorized" by Defendants, and has "in essence los[t] five years of his life due to the . . . hardship intentionally inflicted on him by the multi-millionaire Defendants, with their inhuman greed, and lack of ethics."  Amended Complaint, ¶¶ 6(j), 207, 212.

4.   Movant's numerous claims in the Florida District Court Action include: (i) fraudulent advertising; (ii) wire and mail fraud; (iii) breach of warranty; (iv) fraud on the lemon law process and the state statute; (v) fraud on state courts; (vi) violation of the Magnuson-Moss Warranty Act; (vii) violation of Movant's state and federal statutory rights; (viii) violation of Movant's constitutional rights; and (ix) violation of RICO and conspiracy to violate RICO.  Movant, thereafter filed an amended complaint ("**Amended Complaint**")[2] on August 27, 2009 in the Florida District Court, purportedly to add New GM as a defendant, alleging that Old GM somehow induced Movant to purchase his Chevy truck through fraudulent advertising and, later, obstructed his Lemon Law claim through fraud on the courts.  Although Movant's claims primarily revolved around fraud and the civil RICO statute in the Florida District Court Action, Movant also asserted causes of action against New GM for breach of warranty and violation of Florida's Lemon Law.  Of course, both the warranty on his vehicle and the Lemon Law rights period as defined by Florida law had expired long before New GM was created.  Moreover, Movant has already lost his Lemon Law arbitration and New GM was never involved in responding to Movant's state court lawsuit or the "warranty" issues alleged therein.

5.   In response to the Amended Complaint, New GM filed a motion to dismiss ("**Dismissal Motion**") in the Florida District Court.  In that Dismissal Motion, New GM pointed out (among other things) that the Movant's claims were barred by this Court's Order, dated July

---

[2] A copy of the Amended Complaint is annexed hereto as Exhibit "A."

3

5, 2009 ("**Sale Order**"), which authorized and approved the sale of substantially all of the Debtors' assets to New GM, free and clear of all of the Debtors' liabilities, except for those expressly assumed by New GM (which are not applicable to the case at bar) under the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 ("**MSPA**"). Movant did not oppose New GM's Dismissal Motion, and that any assertion to the contrary was required to be adjudicated by the Bankruptcy Court.

6. While Movant never filed an opposition to New GM's Dismissal Motion, he churned the docket by filing more than 100 notices, motions, and other pleadings. In at least 60 of those filings, Movant accused Old GM, its executives, its counsel, as well as the courts of fraud, dishonesty, criminal misconduct, and trying to kill him.[3]

7. By Order dated September 10, 2010 ("**September 10 Order**"),[4] the Florida District Court granted New GM's Dismissal Motion. The Florida District Court found that Movant's claims were, indeed, barred by the Sale Order because New GM purchased the Debtors' assets "'free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including right or claims based on any successor or transferee liability.'" September 10 Order, at p. 6 (quoting Sale Order). While the Florida District Court noted that this provision of the Sale Order was subject to certain exceptions, it found that none of those exceptions applied in this matter. *Id.* at p. 6 n.2. Holding that New GM acquired the Debtors' assets free and clear of all claims made by Movant, the Florida District Court dismissed the claims against New GM with prejudice.[5]

---

[3] A copy of the Florida District Court's docket is annexed hereto as Exhibit "B."
[4] A copy of the September 10 Order is annexed hereto as Exhibit "C."
[5] Movant subsequently filed a motion for reconsideration of the September 10 Order ("Reconsideration Motion") and a notice of appeal with respect to the September 10 Order. The 11th Circuit Court of Appeals issued a notice on November 16, 2010 suspending the appeal until the Florida District Court rules on the Reconsideration Motion. New GM responded to the Reconsideration Motion but a ruling on that motion has not yet been issued by the Florida District Court. In New GM's response to the Reconsideration Motion, it noted that paragraph 71 of the Sale

4

8. Having been unsuccessful in the Florida state and federal courts, Movant now comes before this Court, seeking a third bite at the apple by making the same arguments advanced in the other tribunals. However, as found by the Florida District Court, the Sale Order unquestionably protects New GM from the claims of Movant; claims that clearly arose pre-petition and prior to the entry of the Sale Order. Despite Movant's allegations to the contrary, as already held in the Florida District Court Action, New GM did not assume the liabilities asserted by Movant as part of the sale of the Debtors' assets. New GM has never violated the Sale Order; to the contrary, New GM is appropriately relying on the Sale Order to bar Movant's continued, wrongful prosecution of his purported claims.

9. Sifting out Movant's unfounded allegations of misconduct, the only conceivable issue before the Court is whether New GM appropriately argued in the other proceedings that the Sale Order and MSPA bar Movant's claims against New GM.[6] While New GM assumed some obligations of the Debtors in connection with certain "express written warranties of [the Debtors] that are specifically identified as warranties and delivered in connection with the sale of" specified vehicles (see MSPA, § 2.3(a)(vii)), New GM only assumed the obligation to fund and otherwise support the standard limited warranties of repair issued by Old GM. For avoidance of the doubt, the MSPA expressly defines as a "Retained Liability" (*i.e.*, a liability not assumed by New GM), "all Liabilities arising out of or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." MSPA,

---

Order provides that this Court has exclusive jurisdiction to enforce and implement the terms and provisions of the Sale Order and MSPA, and that if the Florida District Court had any doubt as to whether Movant's claims should be dismissed, it could either (i) dismiss the claims without prejudice to allow Movant to re-file them in this Court, or (ii) transfer the matter to this Court because Movant's violation of the Sale Order is a core matter involving the interpretation and enforcement of one of the most important orders in the Debtors' bankruptcy case.

[6] Movant's due process and other constitutional complaints all emanate out of this one basic issue because the State Lemon Law Action (as defined in the Motion) was enjoined against New GM pursuant to the Sale Order.

5

§2.3(b)(xvi).  Movant's allegations fall squarely within this exclusion.  Here, Old GM's express warranty on Movant's vehicle is expressly limited to repair of specific defects in material and workmanship if the vehicle is presented to an authorized dealer within the express time and distance limitations of the warranty.  The express warranty specifically provides that performance of repairs and needed adjustments is the Movant's exclusive remedy.  *New GM did not assume other liability claims relating to alleged warranties,* including liability for personal injuries, economic loss, or expenses.  Thus, under the Sale Order, New GM did not assume any civil liability for the damages Movant sought in his Amended Complaint as a result of Old GM's alleged breach of warranty.

10. Similarly, although New GM assumed certain responsibilities pursuant to state Lemon Laws, the claims asserted by Movant (which referenced the allegedly wrongful conduct of Old GM) are not among them.  *See* paragraphs 17-18, *infra*.  Nevertheless, the simplest response to Movant's invocation of the Lemon Law is that he pursued a state Lemon Law remedy against Old GM in 2005.  **He lost**.  *See Kidwell v. General Motors Corp.*, 975 So. 2d 503, 505 (Fla. Dist. Ct. App. 2007).

11. Accordingly, as New GM appropriately cited and made no misrepresentations concerning the Sale Order in the Florida District Court, the Motion should be denied in its entirety.

## **OBJECTION**

12. As this Court is aware, New GM acquired substantially all of the assets of Old GM on July 10, 2009 in a transaction executed under the jurisdiction and pursuant to approval of this Court.  *See generally* Sale Order.  In acquiring these assets, New GM did not (with some limited exceptions not applicable here) assume the liabilities of Old GM.  For example, New GM did not assume responsibility for product liability claims arising from incidents involving Old

6

GM vehicles that occurred before the July 10, 2009 closing date of the sale. *See In re General Motors Corp.*, 407 B.R. 463, 499-507 (Bankr. S.D.N.Y. 2009)(overruling objections by tort claimants seeking to preserve claims against New GM).

13. The scope and limitations of New GM's responsibilities are defined in the Sale Order, which is, and has been for over a year, a final binding order. The Sale Order provides that, with the exceptions of certain liabilities expressly assumed under the relevant agreements, *the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . .. including rights or claims based on any successor or transferee liability . . . ."* Sale Order, ¶ 7 (emphasis added).

14. New GM did not assume liability for the claims asserted by Movant. While New GM assumed some obligations of Old GM in connection with certain "express written warranties of [Old GM] that are *specifically identified as warranties and delivered in connection with the sale* of" specified vehicles (MSPA, § 2.3(a)(vii)), the effect was that *New GM only assumed the obligation to fund and otherwise support the standard limited warranty of repair issued by Old GM.* (emphasis added). *See* Sale Order, ¶ 56 (New GM assumed express warranties "subject to conditions and limitations contained" therein). Old GM's standard limited warranty provides only for "repairs to the vehicle during the warranty period in accordance with the following terms, conditions and limitations." *See* Old GM 2003 Chevrolet Light Duty New Vehicle Limited Warranty ("**Old GM Limited Warranty**") at 4.[7]

15. The express written warranty for Movant's vehicle contains the following limitations on New GM's liability:

---

[7] A copy of the Old GM Limited Warranty is annexed hereto as Exhibit "D." The warranty expressly provides that *"[p]erformance of repairs and needed adjustments is the exclusive remedy under this written warranty . . . ." ld.* at 8 (emphasis added).

7

- "General Motors shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty." (Old GM Limited Warranty at 8.)

- "Economic loss or extra expense is not covered. Examples include:

  - Loss of vehicle use

  - Inconvenience

  - Storage

  - Payment for loss of time or pay

  - Vehicle rental expense

  - Lodging, meals, or other travel costs

  - State or local taxes required on warranty repairs" *(ld.* at 7.)

- To obtain repairs to one's vehicle, the owner must "take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs." *(ld.* at 5.)

- The warranty coverage extends only for three years or 36,000 miles, whichever comes first. *(ld.* at 4.)

Except for the foregoing, New GM did not assume other liability claims relating to alleged "warranties." Indeed, to say New GM assumed "warranty liabilities" is misleading and wrong in more contexts than it is correct. Under the Sale Order, New GM assumed liability only for "repairs and needed adjustments" and not for any other damages, including economic loss, expenses, or personal injuries.

16.   To be sure, New GM understands that the distinction between the express limited warranty delivered at the time of sale and other concepts that commonly involve use of the word "warranty" (such as "statutory warranties," "implied warranties," and "express warranties" contended to arise by reason of writing or statements other than Old GM's express limited

8

warranty) may be difficult for a *pro se* litigant to understand. However, the Sale Order expressly made this point clear when it provided that New GM "is assuming the obligations of [Old GM] pursuant to and *subject to conditions and limitations contained in* their express written warranties . . . ." Sale Order, ¶ 56 (emphasis added). Moreover, to avoid confusion, the Sale Order clarifies that New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." *Id.* Similarly, the MSPA expressly excluded any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." MSPA, §2.3(b)(xvi).

17.      While the MSPA does provide that New GM also assumed "all obligations under Lemon Laws" (MSPA, § 2.3(a)(vii)(B)), the term "Lemon Laws," is defined under the MSPA as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute." MSPA, § 1.1. This definition, therefore, limits the standard to the "express written warranty" discussed above. In other words, New GM only assumed the repair obligations in Old GM's limited warranties and not any additional liability for damages, except those specifically provided by Lemon Laws (as defined in the MSPA). To be sure, state Lemon Laws create certain additional remedies and procedures. Thus, the Sale Order clarifies that "[New GM] has assumed [Old GM's] obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the

9

manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes." Sale Order, ¶ 56.

18. The contractual arrangement under the MSPA is more easily understood with reference to the specific statute at issue. The Florida Lemon Law affords consumers the right to seek replacement or refunds for a vehicle through alternative dispute procedures within two years of initial delivery if a manufacturer, after three repair attempts, is unable to fix a defect that substantially impairs the use, value or safety of the vehicle. *See* Florida Statutes Annotated, Sections 681.10 through 681.118 and 681.1095 and Florida Administrative Code, Rules 2-30.001, and 2-33.002 through 2-33.004. Movant pursued relief under the Florida Lemon Law against Old GM, but was unsuccessful. Movant failed to pursue the appeal mechanism afforded him under the Lemon Law. Since no liability arose for Old GM under that proceeding, there was no liability that New GM could be argued to have assumed.

19. Because the Sale Order and the MSPA expressly provide that New GM has not assumed any liability for any alleged breach of Old GM's express warranty *except for* the repair and service of Old GM vehicles, New GM did not assume the liabilities alleged in Movant's Amended Complaint. In his Amended Complaint, Movant sought a variety of damages for Old GM's allegedly fraudulent behavior, alleged violation of the civil RICO statute, based on his vehicle's alleged failure to conform to various vague and unidentified statements Old GM allegedly made about the quality of its vehicles. *See, e.g.,* Amended Complaint, ¶ 34. None of these categories of damages are available under the express terms of Old GM's limited express warranty. Further, Movant is not entitled to any damages allegedly arising from vague and unidentified statements Old GM allegedly made about the quality of its vehicles or any implied

10

warranties as the Sale Order specifically provides that New GM did not assume "responsibilities for Liabilities contended to arise by virtue of . . . implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials." Sale Order, ¶ 56. Again, the MSPA expressly excluded liabilities arising from "allegation, statement or writing by or attributable to [Old GM]." MSPA, § 2.3(b)(xvi)(B). The conduct alleged in the Movant's Amended Complaint falls squarely within these exclusions.

20. Although the analysis of various legal theories that may apply to product responsibility can be very complicated, the colloquial explanation of the basic division of responsibility is simple. New GM assumed responsibility to administer Old GM's express limited warranty and the express rights arising thereunder (including under state Lemon Laws) in the ordinary course. Significantly, however, in the situation at hand, both the warranty on Movant's vehicle and the Lemon Law rights period as defined by Florida law expired long before New GM was created and New GM can have no responsibility for any such claims. Moreover, New GM did not assume the contingent liability for the many litigation theories which human ingenuity has invented or can invent as applied to vehicles sold prior to the 363 transaction. In the vernacular, that was the business deal documented in the MSPA and Sale Order.

21. Accordingly, New GM appropriately argued and the Florida District Court correctly found that all of Movant's claims asserted in the Amended Complaint, including his breach of warranty and Lemon Law claims, constituted a violation of the Sale Order, which unambiguously states that "all persons and entities, including, but not limited to . . . *litigation claimants* and [others] holding liens, claims and encumbrances, and other interest of any kind or

nature whatsoever, including rights or claims based on any successor or transferee liability . . . are forever *barred, stopped and permanently enjoined* . . . from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or claims], including rights or claims based on any successor or transferee liability." Sale Order, ¶ 8 (emphasis added); *see also id*, ¶ 46 ("[New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated"); *id.*, ¶ 52 (Sale Order "effective as a determination that, except for the Assumed Liabilities, at Closing, all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets prior to the Closing (other than Permitted Encumbrances) have been unconditionally released and terminated . . . .").

22. Based on the foregoing, the liabilities asserted by Movant are not "Assumed Liabilities" as defined in the MSPA and were not transferred to New GM as part of the sale of Old GM's assets. Thus, New GM cannot be held in contempt of Court for violating the Sale Order. Moreover, New GM has not, at any time, lied to any court or tribunal about matters affecting the Movant or his purported claims. To the contrary, New GM has appropriately and consistently relied on the express provisions of the Sale Order and MSPA to bar Movant's unsupported, vexatious claims. Accordingly, the Motion should be denied in its entirety.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion, and (ii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
November 22, 2010

KING & SPALDING LLP

By: /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

*Counsel to General Motors LLC*

13