# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re

MOTORS LIQUIDATION COMPANY, *et al.*,
        f/k/a General Motors Corp., *et al.*,

                      Debtors.      M-47 (RPP)

------------------------------------------------------------

RALLY AUTO GROUP, INC.,

                    Appellant,

       - against -              **OPINION AND ORDER**

GENERAL MOTORS LLC,

                    Appellee.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.:**

    This is a motion by Appellant Rally Auto Group, Inc. ("Rally") for a Stay Pending

Appeal from an October 12, 2010 Order of the Bankruptcy Court (Honorable Robert E. Gerber),

granting General Motors LLC's ("New G.M.") motion pursuant to 11 U.S.C. §§ 105 and 363 to

enforce the 363 Sale Order and Approved Deferred Termination ("Wind-Down Agreement").

For the reasons explained below, Appellant's motion is denied.

## BACKGROUND

    Appellant Rally Auto Group has been selling and servicing General Motors products in

Lancaster and Palmdale, California, for 41 years. (Appellant's Mem. in Supp. at 8.) Rally began

its business as a Chevrolet dealer in Lancaster in 1969, and thereafter grew to also become a

dealer for the Pontiac, Buick, G.M.C Truck and Cadillac brands. (Id.)

On June 1, 2009, General Motors Corp. ("Old G.M."), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Id.) On July 10, 2009, under an Amended and Restated Master Sale and Purchase Agreement ("MSPA"), Old G.M. sold substantially all of its assets to New G.M. free and clear of liens, claims, liabilities, etc. pursuant to Section 363 of the Bankruptcy Code. (Appellee's Mem. in Opp. at 3.) The Bankruptcy Court approved this transaction in its "Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief" ("363 Sale Order"). (Id.) Pursuant to the MSPA, Old G.M. entered into Deferred Termination Agreements ("Wind-Down Agreements") with many of its authorized dealers, including Rally, in conjunction with efforts to restructure its dealer system. (Id.) Old G.M. offered these Wind-Down Agreements to dealers as an alternative to outright rejection of their exectuory Dealer Sales and Service Agreements ("Dealer Agreements") under section 365 of the Bankruptcy Code. (Id.)

On or about June 1, 2009, Old G.M. forwarded to Rally a Wind-Down Agreement. (Appellant's Mem. in Supp. at 8.) Under the terms of the agreement, Rally agreed to terminate its Chevrolet, Buick, Cadillac and G.M.C Dealer Agreements no later than October 31, 2010, in exchange for payments and other consideration. (Appellee's Mem. in Opp. at 3.) As part of the 363 transaction, the Wind-Down and Dealer Agreements were assigned to New G.M.. (Id.)

Following Old G.M.'s bankruptcy, New G.M. observed a need for a new Chevrolet dealership in the area previously served by Rally; the Antelope Valley. (Id. at 4.) In 2009, New G.M. circulated a request for proposal to the owners of G.M. and Saturn dealerships in the Antelope Valley who had executed Wind-Down agreements. (Id.) In response, G.M. received

2

proposals from Larry Mayle, Rally's Dealer-Operator, and Juan Lou Gonzales, the Retailer-Operator of Saturn in Antelope Valley. (Id.) Mr. Gonzales stands to lose his business due to New G.M.'s discontinuation of the Saturn line-make. (Id.) After determining that Mr. Gonzales's Saturn dealership had a better new vehicle sales performance history than Rally's dealership, in early December 2009 G.M. selected Mr. Gonzales's proposal for operating a new Chevrolet dealership. (Id.)

In December 2009, Congress passed and President Obama signed the Dealer Arbitration Act. (Section 747 of the 2010 Consolidated Appropriations Act; Blatt Aff., Ex. C., "Dealer Arbitration Act") The Dealer Arbitration Act afforded terminated G.M. dealers a limited opportunity to challenge the termination of their franchises through binding arbitration before the American Arbitration Association ("AAA"). (Appellant's Mem. in Supp. at 9, Appellee's Mem. in Opp. at 4.) Pursuant to that Act, Rally timely filed a demand on New G.M. for arbitration before the AAA challenging the termination of all its G.M. dealerships. (Blatt Decl., Ex. D.) The arbitration was held on May 13, 14 and 17, 2010. (Appellee's Mem. in Opp. at 5.) The arbitrator's award, issued on June 8, 2010, held that Rally "shall be added to the dealer networks of General Motors, LLC, as to the Cadillac Buick and G.M.C brands, in the manner provided for by the Act and in accordance with the terms and conditions of the Act." (Blatt Decl., Ex. E at 2.) The arbitrator denied Rally's request that that Chevrolet should be added to the Rally dealership, thereby permitting New G.M. to continue its plans to award an Antelope Valley Chevrolet dealership to Mr. Gonzales. (Appellant's Mem. in Supp. at 10, Appellee's Mem. in Opp. at 5-6.)

On August 13, 2010, Rally filed a petition in the United States District Court for the Central District of California, asking that the Court modify or vacate the arbitration award issued on June 8, 2010. (Blatt Decl., Ex. F., Rally auto Group, Inc. v. General Motors LLC, No. SACV

3

10-01236 DOC (Ex) (the "California Action"). Rally's petition asserted that, under the Dealer

Arbitration Act, the arbitrator should have reinstated the Chevrolet Dealer Agreement in addition

to the Buick, Cadillac and G.M.C Dealer Agreements.

On September 10, 2010, New G.M. filed a motion in the Bankruptcy Court of this

District, pursuant to 11 U.S.C. §§ 105 and 363 to enforce the terms of the 363 Sale Order and the

Approved Deferred Termination (Wind-Down) Agreement. (Appellee's Mem. in Opp. at 7.)

The motion specifically sought an order enforcing those provisions of the Wind-Down

Agreement that required Rally to (1) terminate its Chevrolet Dealer Agreement no later than

October 31, 2010, (2) honor its obligations under the Wind-Down Agreement not to sue New

G.M. or interfere with its efforts to establish a new Chevrolet dealership in the area previously

served by Rally, (3) honor its consent to the Bankruptcy Court's exclusive jurisdiction to resolve

disputes concerning the Wind-Down Agreement, and (4) immediately dismiss the California

Action with prejudice. (Appellee's Mem. in Opp. at 7, Appellant's Mem. in Supp. at 11, Blatt

Decl., Ex. G.) Rally opposed the motion (Blatt Decl., Ex. H,) and New G.M. filed reply papers

in further support (Blatt Decl., Ex. I.) Judge Gerber held a hearing on October 4, 2010.

(Appellee's Mem. in Opp. at 7.) At the conclusion of the hearing, Rally applied, orally, for a

stay of the enforcement of the forthcoming Order of the Bankruptcy Court, pending the

determination of Rally's appeal. (Appellant's Mem. in Supp. at 11.) On October 12, 2010, the

Bankruptcy Court issued an order granting New G.M.'s motion to enforce, and agreeing to grant

a limited stay giving Rally until October 19, 2010 to seek a stay from this Court. (Id.)

Rally filed the present stay motion on October 15, 2010. Argument was heard on

October 20, 2010.

# DISCUSSION

I.     <u>Standard for a Stay Pending Appeal Under Rule 8005</u>

District Courts are vested with appellate jurisdiction over Bankruptcy Court rulings. 28

U.S.C. §158(a).  In the Second Circuit, the District Court considers four factors when

determining whether to issue a stay of an order pending appeal under Rule 8005 of the

Bankruptcy Rules of Civil Procedure: "(1) whether the movant will suffer irreparable injury, (2)

whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has

established a substantial possibility, although less than a likelihood, of success on appeal, and (4)

the public interests which may be affected." <u>In re Adelphia Communications Corp.</u>, 361 B.R.

337, 346 (S.D.N.Y 2007) (quoting <u>Hirschfeld v. Board of Elections in the City of N.Y.</u>, 984

F.2d 35, 39 (2d Cir. 1993)).  The lack of any one factor is not dispositive to the success of the

motion, rather the appropriate inquiry represents a balancing of the four factors. <u>Id.</u> at 346-347.

The moving party, however, must show satisfactory evidence on all four criteria. <u>In re Bijan-</u>

<u>Sara Corp.</u>, 203 B.R. 358, 360 (2d Cir. BAP 1996).

II.     <u>Irreparable Harm</u>

Appellant contends that it will suffer irreparable harm if the stay is denied because its

automobile dealership will be terminated (Appellant's Mem. in Supp. at 14-16), and because its

appeal will be rendered moot. (<u>Id.</u> at 16-17.) Appellee asserts that Plaintiff will not suffer an

irreparable injury, because the only injury to Rally consists of the results of the arbitration.

(Appellee's Mem. in Opp. at 38.) Appellee also points out that Rally succeeded in reinstating

three-quarters of the Dealer Agreements it took to arbitration, and that therefore its entire

business will not be lost if a stay is denied. (<u>Id.</u>)

Appellant has not shown it is likely to suffer irreparable harm as a result of the denial of the stay. The harm it alleges it will suffer, the loss of its Chevrolet dealership, actually dates back to the Wind-Down Agreement it entered into a year ago, and which was approved by the Bankruptcy Court long before the October 12, 2010 Order. The statutorily afforded arbitration process awarded Appellant three of the brands it agreed to relinquish in conjunction with the Wind-Down Agreement, namely Buick, Cadillac, and G.M.. Appellant therefore largely benefitted from the arbitration award it seeks to appeal, and the enforcement of the 363 Order as to the one brand the arbitrator chose not to reinstate does not represent the destruction of Rally's business, or constitute irreparable harm such that would necessitate a stay from this Court.

While Appellant also contends that it will suffer irreparable harm due to being unable to pursue its appeal in California District Court, the Court concludes, as did the Bankruptcy Court, that under the provisions of the Dealer Arbitration Act, the California District Court has no jurisdiction to review the arbitration award. Therefore, Rally will not suffer irreparable harm if the stay is denied.

In the event a stay is issued, however, G.M. as well as Mr. Gonzales, the new dealer selected by G.M. to operate a Chevrolet dealership in Antelope Valley, would suffer irreparable injury due to the delay. (Appellee's Mem. in Opp. at 39-41.) First, Appellee points out that it had a valid basis for choosing Mr. Gonzales's proposal to operate the dealership over that of Rally based on Rally's past sales performance as a Chevrolet dealer and Mr. Gonzales's performance as a Saturn dealer. Appellee has provided its proof that Rally operated its Chevrolet dealership at below-standard sales rates, and argues that continuing at that substandard sales rate is an ongoing harm. Second, Appellee points out that Mr. Gonzales's efforts to maintain his staff in anticipation of the growth of his Chevrolet dealership in the wake of the closure of Rally's

6

dealership on October 31, 2010 will be harmed by a delay. Since Mr. Gonzales has been
working to keep the staff from his former Saturn dealership employed with the expectation of
continuing to employ them at his Chevrolet dealership, allowing Rally's Chevrolet dealership to
stay in business would cause injury to Mr. Gonzales and his new Chevrolet dealership and its
employees. Appellant Rally responds that any delay in opening the new Chevrolet dealership
would be minor, and that a balancing of the harms favors Rally.

     As stated earlier, Rally stands to suffer only minimal irreparable harm if a stay is denied,
because it agreed to wind-down its dealership last year, and was able to get three of its
dealerships, G.M.C, Buick, and Cadillac, back as a result of the arbitration. Rally submitted a
proposal in response to G.M.'s request for proposals from dealers in the Antelope Valley area to
operate Chevrolet dealerships, and G.M. made the determination that Mr. Gonzales was a better
choice to operate the dealership in that area. This was a decision G.M. was entitled to make
following the execution of the Wind-Down Agreement and 363 Sale Order. G.M.'s contention
that the continued existence of Rally's Chevrolet dealership in the same market as Mr.
Gonzales's would impede Mr. Gonzales's ability grow the dealership and harm G.M.'s efforts to
resuscitate its business, is a credible one. On balance, Appellant has not established that the
irreparable harm it would suffer is greater than that likely to be suffered by G.M. and Mr.
Gonzales in the event the stay were to be granted.

     III.    Likelihood of Success on the Merits

     Rally's primary contentions on the merits are that the Bankruptcy Court did not have
jurisdiction to issue its October 12, 2010 Order to Enforce, because it has no jurisdiction to
interpret the Dealer Arbitration Act, and only Article III courts can review the arbitration

7

proceeding to determine that Appellant's due process rights are satisfied. (Appellant's Mem. in Supp. at 18.)

Here the Bankruptcy Court had jurisdiction to approve the 363 Sale Order of assets of Old G.M. and reserved its jurisdiction to enforce its 363 Sale Order. Under 28 U.S.C. 1334(a), bankruptcy courts have jurisdiction over all matters arising under title 11. 28 U.S.C. § 157(b)(1) grants bankruptcy courts power to hear and determine all core proceedings arising under title 11, and under 28 U.S.C. §157(b)(2)(n), an "order approving the sale of property," in the context of a bankruptcy constitutes a core proceeding. A motion seeking enforcement of an order resolving a core matter based on a retained jurisdiction clause is itself a core matter that arises under title 11. In re Petrie Retail, Inc., 304 F.3d 223, 229-230 (2d. Cir. 2002); In re Millenium Seacarriers, Inc., 419 F.3d 83 (2d Cir. 2005). Here, Judge Gerber explicitly retained jurisdiction in section 71(f) of the 363 Order, and therefore had jurisdiction to issue an enforcement order. (Oxford Decl., Ex. 2.) Appellant therefore has failed to persuade the Court that it has a possibility of succeeding on the merits of its lack of jurisdiction argument.[1]

Second, while Rally contends that the California District Court is the appropriate venue for challenges to the arbitrator's decision, the Dealer Arbitration Act provides an opportunity for binding arbitration and does not provide for judicial review. The Act states that a "covered dealership"[2]...shall have the right to seek, through binding arbitration, continuation, or

---

[1] The Dealer Arbitration Act does not oust the Bankruptcy Court of jurisdiction as Rally seems to argue. (Appellant's Mem. in Supp. at 25.) The Dealer Arbitration Act does not state that its enactment invalidates any wind-down agreements entered into by a covered manufacturer and dealership. Where an arbitrator denies reinstatement under the Act, the dealership remains terminated. Thus, Rally's Chevrolet dealership was subject to the standing 363 Order following the issuance of the arbitration award.

[2] Under the statute, a "covered dealership" is defined as "an automobile dealership that had a franchise agreement for the sale and service of vehicles of a brand or brands with a covered manufacturer in effect as of October 3, 2008, and such agreement was terminated, not assigned in the form existing on October 3, 2008 to another covered manufacturer in connection with an acquisition of assets related to the manufacture of that vehicle brand or brands,

reinstatement of a franchise agreement...." The Act contains no provision stating that the decisions in the arbitrations are subject to judicial review in federal court. This is not unprecedented. Congress has passed similar legislation in the past calling for binding arbitration and lacking provision for judicial review. The Supreme Court has held that Congress may establish under statute the right to the resolution of certain disputes by binding arbitration without a right of substantive judicial review. In <u>Thomas v. Union Carbide Agr. Prod. Co.</u>, 473 U.S. 568, 588 (1985), the Court evaluated the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 <i>et seq.</i>, which allowed the EPA to use data it already possessed to review applications for pesticide approval, provided that the applicant offered to compensate the party that originally supplied the data. The applicant and the data supplier were required to agree on the amount of compensation, or submit to binding arbitration. The Court found that Congress's decision to resolve disputes under FIFRA by binding arbitration rather than in Article III courts was constitutional. "Congress is not barred from acting pursuant to its powers under Article I to vest decision-making authority in tribunals that lack the attributes of Article III Courts."[3] <u>Thomas</u>, 473 U.S. at 583.

Similarly, in <u>Switchmen's Union of North America v. National Mediation Board</u>, 320 U.S. 297 (1943), the Court upheld a provision of the Railway Labor Act that denied substantive judicial review in favor of mediation to resolve disputes regarding selection of a class representative. The Court found that the provision in question was constitutional, because where Congress creates a new statutory right, Congress has the authority to decide the method for the

---

not renewed, or not continued, during the period beginning on October 3, 2008 and ending on December 31, 2010." The parties do not dispute that Rally is a "covered dealership."

[3] While there is perhaps an exception to his rule, under <u>Thomas</u>, permitting Article III review of the arbitrator's findings for fraud, misconduct or misrepresentation, Rally is not alleging fraud, misconduct or misrepresentation on the part of the arbitrator.

protection of that right. "It is for Congress to determine how the rights which it creates shall be
enforced. In such a case the specification of one remedy normally excludes another." Id. at 301
(internal citations omitted.) Reading a right to judicial review into a statute where it does not
exist would contravene Congress's intent to provide arbitration without review.

Here Congress, in its wisdom, provided dealers who had been subject to the Wind-Down
Agreements a limited opportunity to pursue reinstatement of their franchise agreements with
New G.M.. The statute does not state or otherwise imply that there is any right to appeal. If
Congress had wished to provide a right of appeal by Article III courts, it surely could have done
so. The Act appears to contemplate an expedited process of dispute resolution, because it
requires the dealership to pursue arbitration within 40 days of enactment, with arbitration to
begin as soon as practicable, and provides for only limited discovery. Dealer Arbitration Act,
747(d), (e). The Act was passed in December 2009, just months after G.M. filed for bankruptcy
on June 1, 2009.[4] G.M. filed for bankruptcy in the wake of the September 2008 stock market
crash and ensuing recession, during a period of great economic uncertainty and high rates of
unemployment. G.M.'s bankruptcy threatened to close many dealerships and put many people
out of work. Congress, in its wisdom, sought to afford some protection to these dealerships and
some of their employees through the Dealer Arbitration Act. Had the Act afforded for standard
judicial review, the restructuring of G.M.'s dealership network would have been indefinitely
delayed. Remaining dealerships would be uncertain as to whether they could hire new
employees or invest in capital, because the status of their business would be subject to an
ongoing appellate process. Surely, creating deeper uncertainty in the automotive industry by
providing for a lengthy review process was not Congress's intent in passing the Act.

---

[4] For general background on the G.M. bankruptcy, see David E. Sanger, Jeff Zeleny and Bill Vlasic, "G.M. to Seek
Bankruptcy and a New Start," THE N.Y. TIMES, June 1, 2001 at p. A1.

Congress has the authority to select arbitration as the appropriate method of dispute resolution, and "[g]iven the nature of the right at issue and the concerns motivating the Legislature," in passing the Dealer Arbitration Act it seems clear that this selection does not "threaten[] the independent role of the Judiciary in our constitutional scheme." Thomas, 473 U.S. at 590. The Court finds that Rally has not shown a substantial possibility that it is entitled to judicial review.

While this Court does not find Rally's arguments regarding judicial review persuasive, even if Rally were entitled to judicial review of the arbitrator's decision, it does not appear that Rally could demonstrate that the arbitrator erred or somehow misapplied the statute as Rally contends. Rally asserts that, under the Dealer Arbitration Act, the arbitrator was required to approve all five brands, and could not split the brands and issue different determinations as to each. An examination of the statute calls this interpretation into considerable doubt. Section 747(b) states that the covered dealership has the right "to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement…Such continuation, reinstatement or addition shall be limited to each brand owned and manufactured by the covered manufacturer at the time the arbitration commences." Congress's limitation of the continuation, reinstatement, or addition to "each brand" clearly contemplates that the arbitrator would be evaluating whether to instate the dealer agreements on a brand-by-brand basis.

Rally has not demonstrated a reasonable possibility of success on the merits of its attack on the arbitrator's decision. Its assertion of entitlement to judicial review and challenges to the Bankruptcy Court's jurisdiction fail, and it has presented no factual or legal basis under which the arbitrator's decision not to reinstate its Chevrolet franchise could be vacated.

11

IV.   Public Interest

Under the Dealer Arbitration Act, the arbitrator is instructed to "balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large" in deciding whether to continue or reinstate a franchise agreement. Section 747(d). Thus, the arbitrator was granted the power to determine whether the public interest would be served by the reinstatement of Rally's Chevrolet franchise. The arbitrator's consideration of this element is reflected in the Award. (Brill Decl., Ex. E.) Appellant contends that the public interest favored a stay because the stay will benefit Rally and will not harm New G.M. or the Mr. Gonzales's franchise, as discussed earlier. It does not appear that the public has any interest in the issuance of a stay, rather it appears that the sole interest in the stay is a private interest belonging to Appellant. New G.M. argues that a stay should not be issued so that the 363 Sale Order can be enforced and New G.M.'s dealership strategy can be executed. On balance, the Court does not find a strong enough public interest in the issuance of a stay to overcome the other deficiencies in Rally's petition.

## CONCLUSION

Rally has failed to establish entitlement to a stay. Because it has not established that it will suffer greater irreparable harm than G.M. and other third parties, has failed to show a possibility of success on the merits, and has not indicated that public interest weighs in favor of a stay such that could overcome the deficiencies in its petition, Rally's Motion for a Stay Pending Appeal is denied.

10/29/2010 14:28 FAX  212 805 7917        Hon. Robert P. Patterson                    ☒014/014

IT IS SO ORDERED.

Dated: New York, New York
       October 2 7, 2010

                                        _____
                                        Robert P. Patterson, Jr.
                                        U.S.D.J.

**Copies of this order were faxed to:**

**Attorneys for Appellant:**

Steven Blatt, Esq.
Bellavia, Gentile & Associates, LLP
200 Old Country Road
Suite 400
Mineola, NY 11501
Tel.: (516) 873-3000
Fax: (516) 873-9032

Eric Snyder
Wilk Auslander, LLP
675 Third Avenue
New York, NY 10017
Tel.: (212) 421-2233
Fax: (212) 752-6380

**Attorneys for Appellee:**

Marc Rupe
Arthur Steinberg
Scott Davidson
King & Spalding, LLP
1185 Avenue of the Americas
New York, NY 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Gregory R. Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, CA 90503
Tel.: (310) 316-1990
Fax: (310) 316-1330

13