**HEARING DATE AND TIME: December 2, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: November 24, 2010 at 4:00 p.m. (Easter Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :     Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :     09-50026 (REG)
    f/k/a General Motors Corp., et al.  :
                                        :
                         Debtors.       :     (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**DEBTORS' OPPOSITION TO APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS FOR <u>ORDER PURSUANT TO BANKRUPTCY RULE 2004</u>**

## TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................................. 1

Background .................................................................................................................................. 2

The Application Should be Denied............................................................................................... 5

    A.    The ACC Fails to Meet Its Burden to Establish Good Cause for the Discovery it Seeks Because the Information it Seeks is Unnecessary to Estimate the Debtors' Liability for Asbestos Personal Injury Claims ............. 5

    B.    Discovery Via Fed. R. Bankr. P. 2004 is Procedurally Improper at This Stage of the Estimation Contest ...................................................................... 8

Conclusion ................................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Bakalis*,
    199 B.R. 443 (Bankr. E.D.N.Y. 1996) .................................................................8

*In re Bennett Funding Group, Inc.*,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ..................................................................9

*In re Coffee Cupboard, Inc.*,
    128 B.R. 509 (Bankr. E.D.N.Y. 1991) .................................................................5

*In re Drexel Burnham Lambert Group, Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) .............................................................5, 7

*In re Eagle-Picher Indus., Inc.*,
    169 B.R. 130 (S.D Ohio 1992) ............................................................................7

*In re Ecam Publ'ns*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991) .................................................................8

*In re Ephedra Prod Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) .................................................................................8

*In re Express One Int'l, Inc.*,
    217 B.R. 215 (Bankr. E.D. Tex. 1998) .........................................................5, 6, 8

*First Fin. Sav. Assoc. v. Kipp (In re Kipp)*,
    86 B.R. 490 (Bankr. W.D. Tex. 1988) .................................................................9

*In re Hammond*,
    140 B.R. 197 (S.D. Ohio 1992) ......................................................................5, 7

*Intercontinental Enters., Inc. v. Keller ( In re Blinder, Robinson & Co., Inc.)*,
    127 B.R. 267 (D. Colo. 1991) .........................................................................8, 9

*In re Valley Forge Plaza Assoc.*,
    109 B.R. 669 (Bankr. E.D. Pa. 1990) ..................................................................9

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this opposition to the Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "**ACC**") For an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors LLC, Its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants (ECF No. 7783) (the "**Application**") and respectfully represent:

**Preliminary Statement**

1.      The Application seeks broad discovery from the Debtors and General Motors LLC purportedly aimed at estimating the Debtors' aggregate liability for present and future asbestos-related personal injury claims (collectively, the "**Asbestos Personal Injury Claims**"). More specifically, the Application seeks the production of 38 categories of documents (excluding subparts) and depositions from both the Debtors and General Motors LLC. For more than three months, however, the Debtors and General Motors LLC, as purchaser of substantially all of the Debtors' assets including the relevant books and records, have provided the ACC all of the information necessary to estimate the Debtors' liability for Asbestos Personal Injury Claims. The Debtors and General Motors LLC have provided this information pursuant to a written agreement with the ACC and orders of this Court specifying detailed discovery and confidentiality protocols. The Application fails to articulate a legitimate need for the further discovery it seeks, and,

indeed, much of what it seeks from the Debtors has already been produced. Accordingly, the ACC fails to meet its burden of establishing good cause for the broad discovery it seeks.

2. All of the retained experts in these chapter 11 cases have all of the information they need to conduct an estimation of the Debtors' liability for Asbestos Personal Injury Claims. Under these circumstances, the only logical assumption is that the Application is designed to delay the administration of these cases in order to obtain some leverage in the process. This should not be sanctioned by the Court, and these estates should be spared the unwarranted cost and delay that necessarily will be attendant to the broad discovery sought in the Application. Finally, the Application is procedurally improper. To the extent any further discovery regarding estimation is at all appropriate, it should be requested pursuant to the applicable Federal Rules of Civil Procedure and the terms of the Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 502(c) Authorizing Estimation of Debtors' Aggregate Liability for Asbestos Personal Injury Claims and Establishing a Schedule for Estimation Proceeding (ECF No. 7782) (the "**Estimation Motion**"). Accordingly, the Application should be denied.

## Background

3. On June 1, 2009 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. On June 3, 2009, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the statutory committee of

unsecured creditors (the "**UCC**") to represent the interests of all unsecured creditors in these chapter 11 cases.

5. On July 10, 2009, the Debtors consummated the sale of substantially all of their assets to NGMCO, Inc. (n/k/a General Motors LLC), a United States Treasury-sponsored purchaser, pursuant to section 363 of the Bankruptcy Code and that certain Amended and Restated Master Sale and Purchase Agreement ("**MSPA**").

6. Pursuant to section 2.2(a)(xiv) of the MSPA, General Motors LLC, purchased the "books, records, ledgers, files, documents, correspondence, lists . . . and other materials . . . used or held for use in connection with the ownership or operations of the Purchased Assets." Thus, the vast majority of documents relevant to Asbestos Personal Injury Claims are in the possession of General Motors LLC.

7. On March 2, 2010, the U.S. Trustee appointed the ACC to represent the interest of holders of present asbestos personal injury claims.

8. On April 8, 2010, at the request of the Debtors, the Court entered an order appointing Dean M. Trafelet as the Future Claimants' Representative ("**FCR**") to represent the interest of future holders of asbestos personal injury claims.

9. On July 20, 2010, the FCR, the ACC, and the UCC each filed an application pursuant to Fed. R. Bankr. P. 2004 seeking discovery to aid in the estimation of the Debtors' liability for Asbestos Personal Injury Claims (ECF Nos. 6379, 6382, and 6383, respectively) (each a "**Rule 2004 Application**," and collectively, the "**Rule 2004 Applications**").

10. The Debtors reached written agreements with each of the three parties filing the Rule 2004 Applications to resolve the Rule 2004 Applications consensually.

11.     Specifically, to resolve the ACC's and the FCR's respective Rule 2004 Applications, on August 5, 2010, the Debtors, General Motors LLC, the ACC, and the FCR entered into a written agreement (the "**Rule 2004 Agreement**"), pursuant to which the Debtors and General Motors LLC agreed to provide certain documents and information to the ACC and the FCR, and the ACC and the FCR agreed to withdraw their respective Rule 2004 Applications.

12.     On August 2, 2010, the ACC filed an objection to the UCC's Rule 2004 Application seeking discovery from certain asbestos personal injury trusts (the "**Trusts**"), and on August 5, 2010, the Court held a hearing on the UCC's Rule 2004 Application. The Court ultimately granted the UCC's Rule 2004 Application, as modified by the UCC's reply to the ACC's objection, and on August 24, 2010, the Court entered the Order Directing Production of Documents by (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g) and (ii) General Motors LLC and the Debtors (ECF No. 6749) (the "**UCC Discovery Order**").

13.     For the last three months, discovery has been performed pursuant to the terms of the Rule 2004 Agreement and the UCC Discovery Order.  In the course of this discovery, the Debtors and General Motors LLC have produced thousands of pages of documents and have responded to all of the document requests enumerated in the Rule 2004 Agreement and the UCC Discovery Order.

14.     On November 15, 2010, the Debtors filed the Estimation Motion requesting that the Court approve a detailed and reasonable schedule for the completion of estimation-related discovery and the preparation of expert reports regarding estimation.

15. The Debtors, the UCC, the ACC, and the FCR have each retained their own asbestos liability estimation professionals (the "**Asbestos Professionals**") to estimate the Debtors' aggregate liability for Asbestos Personal Injury Claims.

16. At a hearing before this Court on November 22, 2010, the ACC agreed to withdraw the portions of the Application seeking discovery from sixteen non-Debtor entities defending asbestos-related lawsuits in the tort system.

## The Application Should Be Denied

**A. The ACC Fails to Meet Its Burden to Establish Good Cause for the Discovery It Seeks Because the Information It Seeks Is Unnecessary to Estimate the Debtors' Liability for Asbestos Personal Injury Claims**

17. It is well-established that a party in interest seeking authority to use Fed. R. Bankr. P. 2004 bears the burden to establish "good cause" for the relief requested. *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (holding that "the examiner has the burden of establishing that 'good cause' exists for the taking of the [Rule 2004] examination"); *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("The one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.")(quoting *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (holding that just because "documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.").

18. "The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr.

S.D.N.Y. 1991). Instead, good cause only exists where the "examination sought is *necessary* to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner *undue hardship or injustice*." *Express One*, 217 B.R. at 217 (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)) (emphasis added).

19. The ACC cannot meet its burden of establishing good cause for the discovery it seeks because the information it seeks is unnecessary to estimate the Debtors' liability for Asbestos Personal Injury Claims. The Debtors and General Motors LLC have worked together over the last several months to produce thousands of documents pursuant to the Rule 2004 Agreement and the UCC Discovery Order. The information already produced includes the databases and other information pertinent to the estimation of the Debtors' liability for Asbestos Personal Injury Claims. Indeed, the ACC substantially acknowledges the same when it plainly states that the discovery requested in the Application is being sought in response to the UCC's discovery of the Trusts. (*see, e.g.* App. ¶ 5.) In view of the fact that the UCC's discovery of the Trusts is likely to be significantly circumscribed, any alleged need for the expansive discovery being sought in the ACC's Application simply does not exist.

20. The document requests included as Exhibit B to the Application are nearly identical in many respects to the documents sought by the ACC in its first Rule 2004 Application and seek many of the documents that the Debtors and General Motors LLC have already produced pursuant to the Rule 2004 Agreement and the UCC Discovery Order. The Application fails to articulate any specific documents that the Debtors have failed to produce or why such additional discovery from the Debtors is necessary.

Rather, the Application states merely that "the ACC wishes to examine the Debtors and New GM and to obtain production of their documents relevant to estimation of the Debtors' liability for Asbestos Claims." (App. ¶ 17.)

21.    The timing of the Application, and the fact that it fails to articulate any specific additional discovery needed from the Debtors or why such discovery is necessary, is telling.  These factors plainly indicate that the requested discovery is clearly in response to the UCC discovery and not really needed for the estimation process.  As stated, all of the Asbestos Professionals have all of the information traditionally necessary for an estimation proceeding, and, with the UCC's discovery likely to be severely curtailed, any alleged basis for the discovery now being sought by the ACC has disappeared.

22.    Under such circumstances, requiring the Debtors to work with General Motors LLC or other custodians to produce any further documents sought by the ACC would burden the estates.  In determining whether or not to grant a Rule 2004 examination, the Court must balance the movant's interest against the Debtors' and the estates' interest in avoiding the cost and burden of discovery.  *See Hammond*, 140 B.R. at 201; *Eagle-Picher Indus., Inc.*, 169 B.R. at 134; *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712 (requiring a "balanc[ing] [of] the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination"). Under such a balancing test, the substantial burdens the requested examinations would place on the Debtors and their estates far outweigh any benefits to the ACC, particularly where no additional discovery is necessary.  "[I]f the cost and disruption to the examinee

attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *Express One*, 217 B.R. at 217.

### B. Discovery Via Fed. R. Bankr. P. 2004 Is Procedurally Improper At This Stage of the Estimation Contest

23. The dispute regarding estimation of the Debtors' liability for Asbestos Personal Injury Claims constitutes a contested matter. *See In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 6 (S.D.N.Y. 2005) ("the Notes of the Advisory Committee to the 1983 amendment to Rule 9014 explain: 'whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.'"). It is a well recognized rule that once a contested matter has been commenced, discovery is made pursuant to the Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy Procedure, rather than by a Rule 2004 examination. *See Intercontinental Enters., Inc. v. Keller ( In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 275 (D. Colo. 1991) (holding that Bankruptcy Rules 7026 through 7037, which adopt various provisions of the Federal Rules of Civil Procedure, provide for discovery in adversary proceeding and contested matters and "Rule 2004 should not be used"); *see also In re Bakalis,* 199 B.R. 443, 447-48 (Bankr. E.D.N.Y. 1996) (holding that Rule 2004 examinations are "typically implemented in the pre-litigation stage of a bankruptcy case" and "once a matter becomes contested or an adversary proceeding is commenced, further discovery should be obtained pursuant to the Federal Rules of Civil Procedure" ); *In re Ecam Publ'ns*, 131 B.R. 556, 559-60 (Bankr. S.D.N.Y. 1991) (noting that "[d]iscovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure" and once a contested matter has been initiated, parties must proceed

with discovery under the Fed. R. Civ. P.); *First Fin. Sav. Assoc. v. Kipp (In re Kipp),* 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (same).  Courts are wary of attempts to utilize Rule 2004 to avoid the restrictions of the Federal Rules of Civil Procedure in the context of contested matters.  *In re Valley Forge Plaza Assoc.,* 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("The admonition that the F. R. Civ. P. in general apply to discovery in adversary proceedings and contested matters has been specifically applied to prevent attempts to avoid the proscriptions of Fed. R. Civ. P. 26(b)(4)"); *see also Blinder, Robinson & Co.*, 127 B.R. at 274 (finding that "[m]any courts have expressed distaste for efforts of parties to utilize R2004 examinations to circumvent the restrictions of the F. R. Civ. P."); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (noting that "courts are wary of attempts to utilize Fed. R. Bankr. P. 2004 to avoid the restrictions of Fed. R. Civ. P.").

24.     Consistent with the foregoing precedent, the ACC expressly agreed in the Rule 2004 Agreement to conduct any additional discovery pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure.  Contrary to the ACC's assertions at paragraph 5 of the Application, the Rule 2004 Agreement does not contain a reservation of rights allowing the ACC to renew its previous Rule 2004 Application.  Rather, the Rule 2004 Agreement states:

> In the event a motion for estimation of asbestos-related claims is filed, the parties to this Agreement reserve the right to initiate additional discovery and the parties to this Agreement agree that all such discovery, and all objections thereto, will be subject to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure.

(App. Ex. A at 6.)

## Conclusion

25.  No additional discovery is needed for purposes of any hearing to estimate the Debtors' aggregate liability for Asbestos Personal Injury Claims. All experts have all of the data and other information they need for such purposes. These estates should not bear the additional burden of further discovery, particularly where any perceived need to address the UCC's discovery no longer exists. Rather, the parties should move forward expeditiously to the estimation proceeding so that the dispute surrounding this issues does not unduly delay implementation of the Debtors' chapter 11 plan and distributions to creditors.

WHEREFORE the Debtors respectfully request that the Court deny the Application and the relief requested therein and grant such other and further relief as is just.

Dated: New York, New York
       November 23, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession