**HEARING DATE AND TIME: December 2, 2010 at 9:45 a.m. (Eastern Time)**

Robert B. Weiss
Joseph R. Sgroi
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226
Telephone: (313) 465-7596
Facsimile: (313) 465-7597

Attorneys for General Motors LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              :
**In re**                                     :   **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.*,     :   **09-50026 (REG)**
       f/k/a General Motors Corp., *et al.*   :
                                              :
                       Debtors.               :   **(Jointly Administered)**
                                              :
------------------------------------------------------------x

## GENERAL MOTORS LLC'S RESPONSE IN OPPOSITION TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("**New GM**") submits this response (this "**Response**") in opposition to the Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "**ACC**") for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors LLC, its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants [Docket No. 7783] (the "**Motion**").

**PRELIMINARY STATEMENT**

1.  By the Motion, the ACC asks the Court to enter an order under rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") directing New GM and the Debtors to produce tens of thousands of pages of documents spanning 38 separate document categories (excluding subparts) and authorizing the ACC to conduct extensive and intrusive oral examinations of New GM representatives for the stated purpose of "estimating the value of the Debtors' aggregate liability for pending and future claims for asbestos-related injuries and wrongful deaths" (the "**Claims Estimation**").  See Motion p. 1.

2.  Bankruptcy Rule 2004 examinations are improper where the burden on the producing party outweighs the benefits which may be gained by the requesting party and where the party requesting the examination already has the requested information or can obtain it from another source.  Here, the documents and information already produced by New GM and the Debtors under various agreements among the ACC, New GM, the Debtors and certain other parties, and pursuant to certain orders of this Court, have provided the ACC with all of the information necessary to complete the Claims Estimation.  The additional information sought by the ACC under the Motion will provide little benefit in connection with the Claims Estimation. In fact, the additional discovery requested by the ACC far exceeds the breadth and detail of discovery sought when the Debtors were actually litigating their asbestos-related claims. However, locating, organizing and reviewing documents potentially responsive to the ACC's additional discovery requests would require a monumental undertaking by New GM, spanning nearly every organization in the company (engineering, purchasing, manufacturing, etc ).  In fact, although New GM has never been required to undertake such a massive discovery project and, therefore, cannot accurately estimate the time required to respond to all of the ACC's additional

2

discovery requests, New GM estimates that it would be required to spend minimally hundreds of work-hours to respond.  The minimal benefit the ACC *could* derive from the proposed additional discovery is overshadowed by the significant costs and burdens to New GM in responding to the ACC's requests.  Therefore, the Motion should be denied.

3. Additionally, the Motion is procedurally improper.  The Debtors have commenced a formal contested matter to resolve the Claims Estimation.  As such, any additional discovery with respect to the Claims Estimation should be pursued under the Federal Rules of Civil Procedure (the "**Federal Rules**") and not under Bankruptcy Rule 2004.  This Court should not sanction the ACC's use of Bankruptcy Rule 2004 to circumvent the restrictions of the Federal Rules.

## BACKGROUND

4. The ACC and the Legal Representative for Future Asbestos Claimants (the "**FCR**") filed strikingly similar requests approximately four months ago (collectively the "**2004 Applications**") [Docket Nos. 6383 and 6379, respectively], which were resolved by a certain Agreement Regarding Rule 2004 Applications among the ACC, New GM, the Debtors and the Legal Representative for Future Asbestos Claimants (the "**FCR**") dated August 5, 2010 (the "**2004 Agreement**").  Under the 2004 Agreement, New GM and the Debtors agreed to provide certain documents and information to the ACC and the FCR, and the ACC and the FCR agreed to withdraw the 2004 Applications.  One of the purposes of the 2004 Agreement was to limit the document and information requests set forth in the 2004 Applications to the information actually necessary for the ACC and FCR to complete the Claims Estimation.

5. Over the past four months, in response to the document requests set forth in the Rule 2004 Agreement, New GM and the Debtors have produced all responsive documents in

3

their possession to the ACC and FCR. These productions have consisted of thousands of pages of documents.

6. The ACC and FCR have also obtained additional documents and information from New GM and the Debtors in connection with the Order Directing Production of Documents by (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g) and (ii) General Motors LLC and the Debtors [Docket No. 6749] (the "**UCC Discovery Order**"), which was entered to resolve the Official Committee of Unsecured Creditors' (the "**UCC**") Rule 2004 Application. New GM and the Debtors have produced all responsive documents in their possession and satisfied their obligations under the UCC Discovery Order.

7. Now, after extensive discovery has already taken place and the documents necessary to complete the Claims Estimation have been produced, the ACC seeks additional discovery from New GM and the Debtors. Such discovery will provide little additional benefit to the ACC in connection with the Claims Estimation, but will be force New GM to spend hundreds of work-hours gathering, reviewing and producing potentially responsive, but largely irrelevant and unnecessary, documents.

## ARGUMENT

**A     THE MOTION SHOULD BE DENIED BECAUSE THE ACC HAS NOT SHOWN GOOD CAUSE FOR THE DISCOVERY IT SEEKS AND BECAUSE SUCH DISCOVERY IS OVERLY BROAD AND UNDULY BURDENSOME**

8. The grant of a request for discovery under Bankruptcy Rule 2004 is committed to the sound discretion of the bankruptcy court. *See In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Rule 2004 provides that the court 'may' order disclosure thereunder, giving the Court significant discretion."). The party seeking to conduct

4

the examination bears the burden of showing good cause for the examination it seeks. *In re Express One International, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). "Good cause" requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or that the denial of such examination would cause the proposed examinee undue hardship or injustice. *Id.; see also In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (holding that "Rule 2004 requires that [the court] balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination")).

9. New GM hereby joins in, and incorporates fully, the Debtors' Opposition to the Motion [Docket No. 7909] (the "**Debtors' Opposition**"). The Debtors' Opposition argues, and New GM agrees, that the ACC cannot meet its burden of establishing good cause for the discovery it seeks in the Motion because the information it seeks is unnecessary to complete the Claims Estimation and because New GM and the Debtors have already provided the ACC with voluminous and comprehensive historical data regarding asbestos-related claims against the Debtors, which information is more than sufficient for the ACC's experts to complete the Claims Estimation.[1]

10. Additionally, a Bankruptcy Rule 2004 examination is improper where the burden on the producing party outweighs the benefits which may be gained by the requesting party. *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) ("The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party

---

[1] In fact, all documents responsive to document requests 1-8 set forth in Exhibit B to the Motion have already been provided to the ACC by New GM and the Debtors.

5

seeking discovery."); *Coffee Cupboard*, 128 B.R. at 514 ("Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."); *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987); *In re Jewelers Shipping Ass'n*, 97 B.R. 149, 150 (Bankr. D.R.I. 1989); *Drexel Burnham*, 123 B.R. at 712 ("That documents meet the requirement of relevance does not alone demonstrate that there is good cause for their production.").

11. Although New GM has never been required to respond to such extensive discovery requests and, therefore, cannot accurately estimate the time required to respond to all of the ACC's additional information and document requests, New GM estimates that it would be forced to spend minimally hundreds of work-hours gathering and reviewing potentially relevant documents. The Debtors were in existence for nearly one-hundred years before their bankruptcy filing and have produced and sold millions of vehicles containing tens of millions of components. As detailed extensively below and in the Affidavit of Louis J. Carlin attached hereto as Exhibit A (the "**Carlin Affidavit**"), locating, organizing and reviewing documents potentially responsive to certain of the ACC's requests would require a significant undertaking by New GM, spanning nearly every organization in the company (engineering, purchasing, manufacturing, etc ). The result of New GM's efforts will not meaningfully assist the ACC's efforts to complete the Claims Estimation, and will exact an extreme burden on New GM.

12. As an illustrative example, the ACC requests that New GM provide "documents sufficient to identify every Asbestos Containing Product that any GM Entity ever manufactured, sold, distributed, marketed, or used" and identify 14 subsets of information with respect to each product including (a) the entity that engaged in the manufacture, sale, distribution, marketing or use of the product, (b) the brand name of the product, (c) the date the product first went into

6

production, (d) the last date the product was produced, (e) the last date the product was sold, (f) all manufacturing locations, (g) dates of manufacture at each location, (h) the percentage of asbestos in such product, (i) the type of asbestos in such product, (j) the source of supply of the asbestos used in such product, (k) the color, physical characteristics and appearance of the product, (l) a description of the packaging in which the product was sold or distributed, (m) all names under which the product was sold and (n) the number and date of each patent or patent application pertaining to such product.  See Exhibit B to Motion ¶ 25.  The costs and burdens that New GM will incur in responding to this request alone, as identified below, exemplifies the disproportionate burden placed on New GM by the ACC's proposed additional discovery.

    i.  The information sought by this request, if it ever existed, does not fall into an easily identifiable category and is not discretely located at New GM.  See Carlin Affidavit ¶ 3.  The requested information covers an extensive period of time and many of the potentially responsive documents, to the extent they still exist, would be extremely old and difficult to locate.  Moreover, New GM's and the Debtors' (collectively, for the purpose of this paragraph 12, "**GM**") records are not indexed in a way that would allow New GM to perform searches in the manner or form suggested by the request.  See Carlin Affidavit ¶ 4.  New GM has no central index, file or computerized database that would contain the breadth and scope of information sought in the request.  See Carlin Affidavit ¶ 5.  GM entities throughout the United States have, or have had, many formal and informal document libraries for which no central listing or catalogue file exists.  See Carlin Affidavit ¶ 6.  Documents and information related to GM premises are not centrally-indexed or contained in any one database, but are kept at the individual

7

facilities. See Carlin Affidavit ¶ 7. An attempt to search these databases and document repositories would be extremely labor-intensive and time-consuming.

      ii.      In order for New GM to determine which of its products contained asbestos, New GM would have to undertake a search that would involve numerous employees and countless hours. Over the course of GM's history, it has been involved in the production of an immense variety of manufactured items. Like most domestic and foreign automobile manufacturers, GM has used some brake and other products that incorporated small amounts of encapsulated asbestos. Further, like other locomotive manufacturers, GM also used a limited amount of asbestos in locomotive brakes and insulation. Due to the extreme breadth of this request and the level of detail requested, in order to respond to this request, every part number for every asbestos-containing part would have to be identified beginning from the GM engineering drawings and specifications. See Carlin Affidavit ¶ 8. This part number identification process would start with the review of the original equipment and service usage charts by model year, to the extent these charts still exist, to obtain the brake assembly part numbers. See Carlin Affidavit ¶ 9. Review of the assembly part number drawings would then provide the brake lining segment part number drawings, which must be located in order to determine if they contain the requested information. See Carlin Affidavit ¶ 10. The review of over 300,000 engineering drawings would be required to identify parts numbers for asbestos-containing brakes. See Carlin Affidavit ¶ 11. As all GM's engineering drawings are retained on microfilm and aperture cards that are filed in random order, an additional step of identification of the storage location for each drawing would be required. Needless to

say, the foregoing process would be difficult to manage and would take a tremendous amount of time to complete.

  iii.  Additionally, due to the extreme breadth of this request and the level of detail requested, in order to respond to this request, New GM will have to compare and match the part numbers of asbestos-containing parts to part numbers on New GM's invoices. See Carlin Affidavit ¶ 12. GM's invoices are not indexed or summarized and are housed at New GM facilities and retained only by invoice number in processing sequence. See Carlin Affidavit ¶ 13. To the extent such records exist, invoices covering world-wide sales of more than 356,000 different parts are stored by GM on microfilm. See Carlin Affidavit ¶ 14. As an example, during the years 1978 through 1986, there were more than 18 million invoices covering hundreds of thousands of different parts. To locate the invoices, New GM will have to first review each of its customers' monthly statements to obtain all invoice numbers. See Carlin Affidavit ¶ 15. Once the invoice numbers are identified, the individual invoices would have to be located from microfilm records and a comparison made between the part numbers on the invoices and those part numbers identified for asbestos-containing parts. See Carlin Affidavit ¶ 16. Much like the review and analysis of its engineering drawings, this process would be extraordinarily burdensome and time-consuming.

  iv.  New GM's difficulty in identifying every asbestos-containing product and locating responsive documents is compounded by the manner in which the request is framed. Generally, GM maintains component information at a vehicle level. See Carlin Affidavit ¶ 17. Accordingly, each vehicle make and model has to be identified first in order to locate specific components and the specifications related thereto. See Carlin

9

Affidavit ¶ 18.  A search for asbestos-containing parts on even one vehicle make and model, as would be required to respond to the request, would take New GM several weeks.  See Carlin Affidavit ¶ 19.  Additionally, in some situations where the brakes and other asbestos-containing products that GM used were purchased from suppliers, depending on the specific product, the detailed material specifications may not have been provided to GM – in which case the lengthy search would be utterly fruitless.  See Carlin Affidavit ¶ 20.

13.     While ACC document request number 25 may be the most burdensome of the ACC's additional discovery requests, New GM would be required engage in very similar processes as those identified above in responding to many of the ACC's requests.

14.     The significant burden and expense New GM would incur in responding to the ACC's additional discovery requests greatly outweighs whatever minimal benefits the ACC *could* derive from the proposed discovery.

**B.    THE MOTION SHOULD BE DENIED BECAUSE DISCOVERY VIA BANKRUPTCY RULE 2004 IS PROCEDURALLY IMPROPER**

15.     On November 15, 2010, the Debtors filed their Motion for Entry of Order Pursuant to 11 U.S.C. § 502(c) Authorizing Estimation of Debtors' Aggregate Liability for Asbestos Personal Injury Claims and Establishing a Schedule for Estimation Proceeding [Docket No. 7782] (the "**Estimation Motion**").  The Estimation Motion clearly constitutes a contested matter.  *See In re Ephedra Prods Liab. Litig.*, 329 B.R. 1, 6 (S.D.N.Y. 2005) ("[T]he Notes of the Advisory Committee to the 1983 amendment to Rule 9014 explain: 'whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.'"); *see also In re Hoffinger Ind., Inc.*, 307 B.R. 112,

10

118 (Bankr. E.D. Ark. 2004) ("A request for estimation of a claim or right to payment is a contested matter."); *In re FV Steel and Wire Co.*, 372 B.R. 446, 452 (Bankr. E.D. Wis. 2007).

16. It is well established that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules and not under Bankruptcy Rule 2004. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citing *In re Benefit Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *see also In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) ("While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded by the Federal Rules of Civil Procedure . . .").

17. This Court should not sanction the ACC's use of Bankruptcy Rule 2004 to circumvent the restrictions of the Federal Rules. *See Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.)*, 127 B.R. 267, 274 (D. Colo. 1991) (finding that "[m]any courts have expressed distaste for efforts of parties to use Bankruptcy Rule 2004 examinations to circumvent the restrictions of the Federal Rules of Civil Procedure); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (noting that "courts are wary of attempts to utilize Rule 2004 to avoid the restrictions of Fed. R. Civ. P.").

18. Furthermore, under the 2004 Agreement, the ACC expressly agreed to conduct any additional discovery pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure. Contrary to the ACC's assertions at paragraph 5 of the Motion, the Rule 2004 Agreement does not contain a reservation of rights allowing the ACC to renew its previous Rule 2004 Application. Rather, the Rule 2004 Agreement states:

11

>In the event a motion for estimation of asbestos-related claims is filed, the parties to this Agreement reserve the right to initiate additional discovery and the parties to this Agreement agree that all such discovery, and all objections thereto, will be subject to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure.

See 2004 Agreement ¶ 5.

**C.     IF THE COURT GRANTS THE MOTION, IN WHOLE OR IN PART, THE ORDER SHOULD BE APPROPRIATELY LIMITED**

19.     The proposed order granting the Motion provides that ACC is authorized to serve, without further order of the Court, additional discovery requests on any person the ACC deems appropriate. The discovery sought by the Motion is already overly broad, unduly burdensome, and unwarranted under the circumstances. The provision included in the proposed order allowing the ACC to propound additional discovery without any further order of the Court is simply unreasonable. If granted, the order authorizing discovery should be limited to the minimum amount of information necessary for the ACC to complete the Claims Estimation, and the ACC should be required to obtain a further order of this Court if it seeks any additional information.

20.     The proposed order granting the Motion also fails to appropriately reserve the Debtors' and New GM's rights under the Bankruptcy Rules, Federal Rules of Civil Procedure and applicable law to object, for any reason, including privilege, undue burden, and confidentiality, to any and all discovery requests or subpoenas propounded on the Debtors or New GM by the ACC. If granted, the order authorizing discovery should expressly include such a reservation to ensure that the Debtors and New GM are afforded the protections granted to them by applicable law in connection with such discovery requests.

**D.      IF THE MOTION IS GRANTED, NEW GM IS ENTITLED TO THE
         PROTECTION OF RULE 9016**

21.     Rule 2004(c) provides that compelling attendance of a non-debtor for examination and for production of documents is subject to Bankruptcy Rule 9016, which makes applicable Federal Rule of Civil Procedure 45. Rule 45(c) expressly provides protections for non-parties such as New GM subject to a subpoena, including:

  (1)   taking reasonable steps to avoid imposing undue burden or expense on New GM. Rule 45(c)(1);

  (2)   protecting New GM from significant expense resulting from the inspection and copying commanded. Rule 45(c)(2)(B);

  (3)   not having to travel more than 100 miles from its location. Rule 45(c)(3)(A)(ii);

  (4)   protection from disclosure of privileged or other protected matters. Rule 45(c)(3)(A)(iii);

  (5)   protection from disclosure of trade secrets, confidential or commercial information. Rule 45(c)(3)(B)(i);

22.     New GM is entitled to and should receive the protections of Rule 9016.

**E.      RESERVATION OF RIGHTS**

23.     New GM expressly reserves, and does not waive, its rights under the Bankruptcy Rules, Federal Rules of Civil Procedure and applicable law to object, for any reason, including privilege, undue burden, and confidentiality, to any and all discovery requests or subpoenas propounded on New GM by the ACC.

## CONCLUSION

24.     New GM and the Debtors have provided the ACC with all documents and information required by the 2004 Agreement and the UCC Discovery Order. No additional discovery is needed in connection with the Claims Estimation. The additional discovery sought

by the ACC would provide it minimal benefit in connection with the Claims Estimation process; however locating, organizing, reviewing and producing documents responsive to the ACC's additional discovery requests would require extraordinary effort and the expenditure of significant time and resources on New GM's part. New GM should not be required to bear the additional burden and cost of additional discovery where such burden significantly outweighs the benefit that the ACC hopes to obtain from the additional discovery.

   **WHEREFORE** New GM respectfully request that the Motion be denied and that New GM be granted such other and further relief as is just.

          HONIGMAN MILLER SCHWARTZ AND COHN LLP
          Attorneys for General Motors LLC

Dated: November 24, 2010   By: /s/ Joseph R. Sgroi
          Robert B. Weiss (MI Bar No. PP28249)
          Joseph R. Sgroi (MI Bar No. P68666)
          2290 First National Building
          660 Woodward Ave.
          Detroit, Michigan 48226
          Telephone: (313) 465-7596
          Facsimile: (313) 465-7597
          Email: rweiss@honigman.com
             jsgroi@honigman.com

ACTIVE.8486182.3