**EXHIBIT L**

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|
| Name of Debtor:<br>MOTORS LIQUIDATION COMPANY | Case Number:<br>09-50026 (REG) |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
New United Motor Manufacturing, Inc.

Name and address where notices should be sent:
Schnader Harrison Segal & Lewis LLP
c/o George Kalikman
One Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone number: 415-364-6700

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):
K. Kelley McKenzie, Esq., General Counsel
New United Motor Manufacturing, Inc. (NUMMI)
45500 Fremont Blvd.
Fremont, CA 94538
Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:   $500,000,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: See Attached
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe:

   Value of Property: $_____    Annual Interest Rate _____ %
   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $_____    Basis for perfection: _____
   Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>11/24/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>John DiDonato  [signature] | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10

## Attachment to Proof of Claim of New United Motor Manufacturing, Inc.

1.      On or about December 22, 1983, General Motors Corporation, now known as Motors Liquidation Company (the "Debtor") and Toyota Motor Corporation ("TMC") established New United Motor Manufacturing, Inc. ("NUMMI") in Fremont, California, on the site of the Debtor's idled motor vehicle assembly facility.

2.      Each of the Debtor and TMC owns fifty percent (50%) of the issued and outstanding shares of NUMMI.

3.      On June 1, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.

4.      NUMMI's assembly facility is approximately 5.3 million square feet under roof and sits on 378 acres. As of the Petition Date, NUMMI's annual production volume was approximately 230,000 passenger cars and 160,000 light duty trucks. NUMMI employs approximately 3,700 team members represented by the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) Local 2244 and approximately 750 salaried team members.

5.      For nearly 25 years, NUMMI has assembled vehicles for the Debtor and TMC. As of the Petition Date, NUMMI produced the Pontiac Vibe for the Debtor and the Toyota Corolla for TMC. NUMMI additionally operates a truck assembly line that produces the Toyota Tacoma light truck under a separate manufacturing agreement.

6.      On or about April 27, 2009, the Debtor announced publicly the discontinuation of the Pontiac vehicle brand.

7.      On or about May 21, 2009, the Debtor informed NUMMI that it was discontinuing future Pontiac Vibe production at NUMMI and was in discussions with TMC regarding a possible replacement vehicle for NUMMI to manufacture.

8.      On or about June 4, 2009, the Debtor informed NUMMI that due to the elimination of the Pontiac vehicle brand, all Pontiac Vibe production would be discontinued through a production phase-out period that would conclude in August 2010.

9.      On or about June 12, 2009, the Debtor disclosed to NUMMI that it was advancing the Pontiac Vibe production discontinuation date by one year to August 2009.

10.      On or about June 29, 2009, the Debtor announced that it would not seek to assume and assign to General Motors Company ("New GM") its 50% shareholder interest in NUMMI. The Debtor has retained its shareholder interest in NUMMI, along with the other assets retained by the Debtor, which the Debtor will presumably liquidate.

11.    On or about August 27, 2009, TMC informed NUMMI that in light of the Debtor's failure to assume and assign to New GM its shareholder interest in NUMMI, and the Debtor's failure to identify a replacement vehicle for NUMMI to produce, TMC would also cease orders of the NUMMI-produced Toyota Corolla sedan and discontinue contract production of its Tacoma light duty pick-up truck on March 31, 2010.

12.    Breach of Contract. NUMMI and the Debtor were parties to numerous contracts including, but not limited to, the following:[1]

    (a)  Shareholders' Agreement dated as of February 24, 1984 (as amended)
    (b)  Subscription Agreement dated as of February 21, 1984 (as amended)
    (c)  Vehicle Supply Agreement dated as of March 31, 1986 (as amended)
    (d)  Memorandum of Understanding (Vibe Production) dated as of March 22, 2006
    (e)  Product Responsibility Agreement dated as of February 21, 1984 (as amended)
    (f)  Service Parts Supply Agreement dated as of June 17, 2008
    (g)  Service Parts Purchase Manual dated as of June 17, 2008
    (h)  1984 Memorandum on Technical Assistance (as amended)
    (i)  Memorandum of Understanding (Tooling Costs) dated as of November 7, 1994
    (j)  Component Supply Agreement dated as of October 24, 1988

The foregoing contracts and/or further agreements implementing same obligate the Debtor to, *inter alia*: (a) purchase minimum quantities of vehicles and parts from NUMMI, (b) pay the costs incurred by NUMMI as a result of a decision to cancel orders or discontinue production of vehicles, and (c) obligate the Debtor to purchase tooling and other infrastructure used in the production of vehicles and parts from NUMMI in the event production of vehicles and parts for the Debtor terminates. The Debtor has breached its obligations under said contracts, and as a result thereof, NUMMI has or may suffer damages, including but not limited to lost revenues and profits, the Debtor's inability to satisfy recurring and prospective vehicle product and off-warranty liabilities, and operational and other plant closure costs (including, but not limited to, labor-related costs, and extraordinary legal, accounting, and financial advisory expenses) in an undetermined amount according to proof, but in any event, a sum of not less than the amount set forth in paragraph 16 below. In addition, although NUMMI does not concede that it is liable to any entity, or the amount of any liability, NUMMI reserves the right to amend and/or supplement this Proof of Claim to assert further damages to the extent the Debtor's breach of its contractual obligations subjects NUMMI to liabilities to third parties, including but not limited to: (a) any unfunded liability to the NUMMI-UAW Retiree Supplemental Health Insurance Plan and the salaried employee Supplemental Health Insurance Plan (collectively, "SHIP") , (b) any unfunded liability to the NUMMI-UAW Hourly Defined Pension Plan, (c) any deficiency or unfunded liability to NUMMI's total California Workers' Compensation Self-Insurance Fund Alternative Support Program (CA SIF-ASP), (d) any and all other labor-related benefits, plans, and obligations to employees and former employees, (e) any costs of environmental site prep and future remediation expenses, (f) any termination costs under capital equipment leases, (g) any liabilities to NUMMI's suppliers for parts obsolescence, capital investment and other

---

[1] Copies of each of the contracts listed above are in the Debtor's possession. NUMMI has not attached copies of these contracts to this Proof of Claim because the contracts contain proprietary information and because they are too voluminous to attach. NUMMI will provide the Debtor with copies of each of the contracts upon request.

stranded costs, and (h) any and all other currently unknown liabilities that may be incurred by NUMMI arising from or relating to the cessation of its operations.

13. **Detrimental Reliance on Express/Implied Representations.** Since NUMMI's formation, the Debtor has entered into a series of contracts and made other oral and written representations concerning the type and volume of vehicles it would purchase from NUMMI. More recently, in March 2006, the Debtor represented to NUMMI that its average annual production volume for the Vibe would reach a minimum number of units. On March 22, 2006, the Debtor and NUMMI entered into a memorandum of understanding in which the Debtor explicitly stated that the initial model life of the Vibe would extend to the 2012 model year, and acknowledged the importance to NUMMI's viability of realizing annual production volumes of an agreed minimum of Vibe units. In addition, the Debtor negotiated unit prices and participated in NUMMI's cost planning efforts, including agreements that set the purchase prices for vehicles and service parts that were intended to allow NUMMI to fully amortize its production costs over the expected model life of the Vibe. At the Debtor's direction and in reliance upon the Debtor's representations to NUMMI that the Debtor would order the NUMMI-produced Pontiac Vibe through 2012, upon which representations NUMMI reasonably relied, NUMMI incurred costs and expenses, including but not limited to: (a) in-house supplier parts and raw material, (b) investment in tooling, machinery and equipment and other assets, and (c) employee-related costs for salaries, insurance (including health, worker's compensation, life and disability), and other benefits (including retirement plan benefits). As a result of the Debtor's breach of its express and implied representations, NUMMI has been damaged in an amount according to proof, but in any event an amount not less than the amount set forth in paragraph 16 below.

14. **Express Indemnity, Implied Contractual Indemnity, and Equitable Indemnity.** NUMMI undertook to produce vehicles and provide parts to the Debtor under the terms of various contracts, including the Shareholder Agreement, the Vehicle Supply Agreement, the Service Parts Supply Agreement, the Product Responsibility Agreement, and additional agreements implementing the foregoing. The contracts under which NUMMI produced vehicles and parts acknowledge that NUMMI will incur tooling, labor, and other infrastructure costs. Said contracts also provide that pricing was to be set in a manner that permitted NUMMI to operate at a reasonable profit. The Debtor acted wrongfully in terminating vehicle production at NUMMI prior to the end of the Vibe's normal model life. Consequently, the contracts imply an obligation by the Debtor to indemnify NUMMI for any costs resulting from the early cessation of production, and to cover all such costs sufficient to permit NUMMI to realize a reasonable profit on the vehicles it has sold. In addition, NUMMI is also entitled to indemnification from the Debtor for all environmental remediation costs that may be incurred by NUMMI as a result of the Debtor's acts and/or omissions.

15. **Breach of Fiduciary Duty.** The Debtor held a fiduciary relationship to NUMMI as a result of its status as a controlling shareholder in NUMMI, and because it exercised management control over NUMMI through its agents, the GM-designated members who served on the Board of Directors during the time period relevant to this Proof of Claim. As a result, the Debtor owed fiduciary duties to NUMMI, which included the obligations of candor, to act with due care to promote the financial viability of NUMMI, to act fairly toward NUMMI, and to act in good faith. The Debtor was or should have been aware of its own financial circumstances well in advance of the filing of its bankruptcy case, and it was also aware of the consequences to NUMMI of a complete

cessation of Vibe production. Accordingly, the Debtor was obligated to disclose timely to NUMMI the prospect that it would cease production of the Pontiac brand and the Vibe model, and to facilitate NUMMI's ability to protect against this risk by implementing appropriate operational and financial changes in time to avoid a termination of operations. NUMMI is informed and believes that the Debtor breached its obligations of candor and due care by not identifying timely the need to discontinue Pontiac and/or Vibe model production or, alternatively, by not disclosing timely its internal deliberations concerning same. In addition, after the discontinuance of Pontiac and its Vibe model production became reasonably in prospect, the Debtor had a further fiduciary obligation to act reasonably and in good faith to explore alternatives that would allow NUMMI to continue to operate. The Debtor breached this duty by, *inter alia*, failing to negotiate in good faith with TMC to identify a replacement vehicle or, alternatively, failing to negotiate in good faith with TMC to reach an agreement with TMC for the sale of a NUMMI-produced truck under the GMC brand. The Debtor's breaches of fiduciary duty were a contributing cause ultimately culminating in the cessation of NUMMI's business, as a result of which NUMMI has been damaged in an undetermined amount according to proof, including lost profits, inability to amortize tooling and other capital costs, and all other costs it incurred as a result of cessation of operations described above.

   16. As of the Petition Date, NUMMI held claims as defined by 11 U.S.C. § 101(5) against the Debtor in an amount of approximately Five Hundred Million Dollars (US$500,000,000.00).

   17. NUMMI expressly reserves the right to amend, modify, and/or supplement this Proof of Claim at any time. NUMMI further reserves the right to assert that any of the claims made herein are allowable as expenses of administration of the Debtor's estate under 11 U.S.C. § 503(b). By filing this Proof of Claim, NUMMI does not consent to the United States Bankruptcy Court for the Southern District of New York's jurisdiction to adjudicate any issues arising in this Proof of Claim or any counterclaim that may be asserted in an objection to this Proof of Claim, and NUMMI reserves the right to withdraw this Proof of Claim at any time.

   18. NUMMI has endeavored to include all potential claims for damages and losses it has or may suffer as a consequence of the Debtor's breaches of its obligations that NUMMI can fairly contemplate based upon its knowledge as of the date of this Proof of Claim. As such, references to costs, expenses, or debts upon which NUMMI may become liable to third parties are included herein solely to put the Debtor on notice of the categories of contingent liabilities that may be encompassed within this Proof of Claim. However, no statement in this Proof of Claim is or will be deemed an admission of liability by NUMMI to any third party on any such claim.

   19. John DiDonato, the signatory of this Proof of Claim, is the Executive Financial Adviser and an officer of NUMMI. In those capacities, he is authorized to make this Proof of Claim on behalf of NUMMI. His business address is New United Motor Manufacturing, Inc., 45500 Fremont Boulevard, Fremont, CA 94538-6368.