HEARING DATE AND TIME: December 2, 2010 at 9:45 A.M. (Eastern Time)
OBJECTION DATE: November 24, 2010

Elihu Inselbuch
Rita C. Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Trevor W. Swett III
Kevin C. Maclay
James P. Wehner
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Suite 1100
Washington, D.C. 20005-5802
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Attorneys for Official Committee
of Unsecured Creditors Holding Asbestos-Related Claims*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
MOTORS LIQUIDATION COMPANY, *et al.*,        :     Chapter 11 Case No.
    f/k/a General Motors Corp., *et al.*    :
                                                               :     09-50026 (REG)
                                                               :
                                                               :     (Jointly Administered)
                                                               :
                                                               :
---------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
HOLDING ASBESTOS-RELATED CLAIMS TO THE MOTION OF DEBTORS FOR
ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 502(c) AUTHORIZING ESTIMATION
OF DEBTORS' AGGREGATE LIABILITY
FOR ASBESTOS PERSONAL INJURY CLAIMS AND ESTABLISHING
<u>SCHEDULE FOR ESTIMATION PROCEEDING</u>**

363209

TO:   THE HONORABLE ROBERT E. GERBER
      UNITED STATES BANKRUPTCY COURT

The Official Committee of Unsecured Creditors Holding Asbestos-Related Claims ("**ACC**") against the above captioned debtors and debtors-in-possession in these chapter 11 cases (collectively, the "**Debtors**") by and through its undersigned counsel, hereby responds to the Debtors' motion for an order authorizing estimation of Debtors' aggregate liability for asbestos personal injury claims and establishing a schedule for an estimation proceeding, dated November 15, 2010 (the "**Motion for Estimation**") [D.I. 7782].

## ARGUMENT

1.   The ACC agrees with the Debtors that "the estimation of aggregate liability for Asbestos Personal Injury Claims is imperative in order to assure the efficient and expeditious administration of the Debtors' estates." Motion for Estimation at 2. Of course, it is also true that the estimation process must satisfy the demands of fairness.

2.   Estimation is an integral step in the process of formulating and confirming a plan of reorganization in a bankruptcy involving asbestos liability and allocating the value of the estate *pro rata* among the different classes of creditors. *See* In re Federal-Mogul Global Inc., 330 B.R. 133, 154 (D. Del. 2005) (the objective of an estimation proceeding is to establish the estimated value of asbestos-related claims in order to formulate a plan); Owens Corning v. Credit Suisse First Boston (In re Owens Corning), 322 B.R. 719, 722 (D. Del. 2005) (the aim of aggregate estimation is to measure the overall value of claims and demands upon the estate held by asbestos victims as a group, so that the entitlement of this constituency can be compared to those of any rival creditors and the shareholder in order to formulate a confirmable plan of reorganization).

- 1 -

3.  For plan purposes, estimation addresses the Debtors' aggregate liability, not the merits of individual cases. The proposed plan does not contemplate that this Court will allow or disallow individual asbestos claims or determine how much compensation any particular asbestos victim should receive. Rather, the plan would channel such claims to a trust for evaluation and payment in accordance with trust distribution procedures ("**TDP**") to be approved as part of the confirmation order.[1] To determine the ratable share of the estates that must be devoted to funding that trust, the Court must estimate the Debtors' overall liability for pending and future asbestos claims. Because applicable nonbankruptcy law controls the valuation of liabilities in the bankruptcy process,[2] the aim of the estimation is to determine approximately what it would cost the Debtors to resolve those claims if there were no bankruptcy.

4.  Proper forecasting of the number and value of future claims rests on the Debtors' own actual claims resolution history during the period deemed relevant for the purpose. The forecast must take account of the number of claims received by the Debtors, the percentage of those claims that were resolved by payment, the average payments made to settling plaintiffs, the approach taken by the Debtors in the management and resolution of claims, and the dynamics and trends in the tort system that affected those variables in the past and will foreseeably affect them in the future. See Federal-Mogul, 330 B.R. at 155 ("similar to Owens Corning * * * this estimation did not involve the discovery of individual claims, but rather focused on [the debtor's]

---

[1] The ACC does not embrace the Debtors' assumption that Section 502(c) of the Bankruptcy Code provides the statutory basis for the estimation proceeding in this case. Section 502 deals with the allowance of individual claims by the Bankruptcy Court. As noted, under the Debtors' plan, asbestos claims would not be allowed or disallowed by the Court, but channeled to the asbestos trust for evaluation and, if qualified under the TDP, payment. Accordingly, the statutory basis for estimation here cannot be Section 502(c), but rather depends upon Section 105(a) and the proposition that estimating the aggregate asbestos liability is necessary and appropriate for implementing other provisions of the Bankruptcy Code in this case.

[2] See Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 20 (2000); Butner v. United States, 440 U.S. 48 (1979); Federal-Mogul, 330 B.R. at 155.

historical claims-handling practices, and expert testimony on trends and developments in the asbestos tort system").

5. To date, the parties have engaged in limited informal discovery to prepare for estimation. The ACC is in the process of evaluating the extent to which formal fact discovery may be needed. Based on three key assumptions, we do not anticipate that such needs will be extensive or inordinately time-consuming. Those key assumptions are:

(a) that the parties will not litigate in this case issues going to the merits of asbestos claims against General Motors, such as contentions that chrysotile asbestos does not cause mesothelioma or that the asbestos contained in friction products does not emit sufficient asbestos fibers to cause disease;

(b) that neither the Debtors nor the Official Committee of Unsecured Creditors ("**UCC**") will take positions or raise issues that would fairly require the Debtors to waive otherwise applicable privileges or the Court to deem such privileges waived or pierced; and

(c) that the UCC's Rule 2004 application is withdrawn or reconsidered and overruled and the related subpoenas to settlement trusts withdrawn or quashed, which in turn will enable the ACC to withdraw its Rule 2004 application for correlative discovery aimed at solvent asbestos defendants unrelated to the Debtors or to General Motors LLC ("**New GM**").[3]

6. If the foregoing assumptions are sound, the ACC anticipates that its needs for formal fact discovery will be narrow, targeted, and limited. The ACC is in the process of evaluating those needs and their implications for the hearing schedule and for intermediate

---

[3] The ACC and the UCC reached an agreement in principle on these subjects in the courtroom at the hearing on November 22, 2010, subject to the making of a written stipulation. They and the other parties are now attempting to hammer out the stipulation to obviate their respective Rule 2004 applications as they relate to persons other than the Debtors and New GM.

09-50026-mg    Doc 7929    Filed 11/24/10    Entered 11/24/10 18:15:10    Main Document
Pg 5 of 6

deadlines in the process leading up to it. We expect that the Debtors and New GM will cooperate in responding reasonably to such discovery as may be needed from them.

7. Between now and the hearing set for December 2, 2010, the ACC will confer with the Debtors, the UCC, and the Future Claims Representative (the "**FCR**") in hopes of arriving at a joint scheduling proposal for presentation to the Court. A key issue will be the provision of adequate time for the experts to prepare rebuttal reports. Notably, the UCC's expert has drawn a sample of 650 asbestos litigation files from General Motors' defense attorneys, and the FCR's representative has done likewise. The ACC will not learn what use the opposing experts are making of those files until they come forward with their reports-in-chief, and the ACC's own expert will need to respond by means of a rebuttal report to whatever analyses the UCC's and the FCR's experts put forward with respect to the sampled files.[4] The proposed schedule that the Debtors have submitted as part of their estimation motion would allow just ten days for that purpose, which is clearly inadequate.

8. The ACC will endeavor to work out this and any other scheduling issues with the other parties within the overall framework of an expeditious estimation proceeding. In an abundance of caution, however, the ACC must respectfully reserve the right to present to the Court for decision any matters bearing on the schedule that cannot be resolved by agreement.

## **CONCLUSION**

9. The ACC agrees that a contested proceeding for the estimation of the Debtors' aggregate liability for pending and future asbestos claims should commence. Subject to the

---

[4] At the hearing of October 21, 2010, the ACC's counsel specifically pointed out the need for an adequate period for rebuttal reports. *See* Transcript of Hearing at 134, lines 13-24 (Oct. 21, 2010).

assumptions set forth above, the schedule for such a proceeding should be expeditious but must not sacrifice considerations of fundamental fairness.

Dated:  November 24, 2010

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED

/s/ Trevor W. Swett III
Trevor W. Swett III
Kevin C. Maclay
James P. Wehner
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, D.C.  20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301
E-mail: tws@capdale.com; kcm@capdale.com

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755
E-mail: ei@capdale.com; rct@capdale.com

*Attorneys for Official Committee of Unsecured Creditors Holding Asbestos-Related Claims*