Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026-reg

5  - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, ET AL.,

9      f/k/a General Motors Corp., et al.,

10

11          Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - - -x

14

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              November 18, 2010

20              9:48 AM

21

22  B E F O R E:

23  HON. ROBERT E. GERBER

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    Debtors' Nineteenth Omnibus Objection to Claims (Tax Claims

3    Assumed by General Motors, LLC)

4

5    Motion of General Motors, LLC to Enforce 363 Sale Order and

6    Approved Deferred Termination Agreements against Ramp

7    Chevrolet, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dena Page

Page 3

1

2   A P P E A R A N C E S :

3   BINGHAM MCCUTCHEN LLP

4        Attorneys for General Motors LLC

5        One Federal Street

6        Boston, MA 02130

7

8   BY:   JOHN R. SKELTON, ESQ.

9

10

11  KING & SPALDING LLP

12        Attorneys for General Motors LLC

13        1185 Avenue of the Americas

14        New York, NY 10036

15

16  BY:   SCOTT DAVIDSON, ESQ.

17

18

19  WILK AUSLANDER LLP

20        Attorneys for Ramp Chevrolet

21        675 Third Avenue

22        New York, NY 10017

23

24  BY:   ERIC J. SNYDER, ESQ.

25

Page 4

1

2    KRAMER LEVIN NAFTALIS & FRANKEL, LLP

3          Attorneys for Official Committee of Unsecured Creditors

4          1177 Avenue of the Americas

5          New York, NY 10036

6

7    BY:   PHILIP BENTLEY, ESQ. (TELEPHONICALLY)

8          LAUREN M. MACKSOUD, ESQ. (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Okay, Motors Liquidation.  Let me get

3      appearances, and then I have some preliminary comments.

4              MR. SNYDER:  Your Honor, good morning.  Eric Snyder,

5      Wilk Auslander for Ramp Chevrolet.

6              THE COURT:  Right, Mr. Snyder.

7              MR. SKELTON:  Good morning, Your Honor.  John Skelton,

8      Bingham McCutchen on behalf of General Motors, LLC.

9              MR. DAVIDSON:  Good morning, Your Honor, Scott

10     Davidson from King & Spalding on behalf of General Motors, LLC.

11             THE COURT:  Okay, Mr. Skelton.  And also, I'm sorry?

12             MR. DAVIDSON:  Scott Davidson from King & Spalding.

13             THE COURT:  Oh, right, Mr. Davidson.  Okay, thank you

14     very much.

15             All right, gentlemen, here's what we're going to do.

16     I want to bifurcate the argument, and I want to deal with the

17     threshold issue, first, which is whether I should enforce the

18     exclusive jurisdiction provisions in the order and in the

19     unwind agreement, and to defer until I can take a recess and

20     decide that, debate as to construction of the agreement.  And

21     what I might refer to is the merits of the dispute, in

22     particular, whether we're talking about merely enforcing the

23     agreement as it was written, which seemingly already takes into

24     account offsetting obligations in each direction, or whether

25     this is, in fact, a setoff or recoupment or anything of that

Page 6

1    character.

2           So on the phase one, which is what I want you to

3    address first, I'm going to hear from each of you, initially

4    from New GM, and then from you, Mr. Snyder, on behalf of Ramp,

5    with an opportunity to reply and surreply.

6           When you do that, I have particular things that I want

7    you to cover by the time you're done because, as you'll see,

8    gentlemen, I have problems with both of your positions.  Mr.

9    Snyder, when it's your turn, I want you to address the

10   underlying what I'll call exclusive jurisdiction provisions,

11   because it seems to me that they provide in baby talk that my

12   jurisdiction is not just to construe but also to enforce, and

13   there's language in there which I didn't see addressed in your

14   papers, but I might have missed it.  Any other matter related

15   thereto.

16          But by the same token, Mr. Skelton, when you or Mr.

17   Davidson speak, I am wondering whether in this matter, which is

18   the fifth or the sixth or the seventh time that New GM has come

19   back to me looking for me to help it in its private disputes

20   with dealers or with other nondebtors, this is an appropriate

21   case for discretionary abstention, since I am not putting these

22   issues in the hands of a state court judge or even a federal

23   district judge who would be ignorant as to matters of

24   bankruptcy law and policy and where it's at least arguable that

25   Judge Grossman would have some advantages, both in terms of his

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 7 of 39

Page 7

1    knowledge of the facts, and if it's not an advantage, at least

2    he and I would be equal.  Each of us knows what 553 says; each

3    of us can read a contract; each of us can understand an

4    assumption order; and each of us understands the bankruptcy

5    principle that after you assume an executory contract, you take

6    it cum onere.

7           So that's what I want you folks to focus on, and the

8    phase one issues, then, will, just as I had first bifurcated it

9    into the jurisdictional issues and the issues of the merits,

10   we're going to bifurcate it again as to whether I do have, in

11   the first instance, exclusive jurisdiction, which, Mr. Snyder,

12   I think I do, but the more debatable issue as to whether I

13   should exercise.

14          Mr. Skelton, I'll hear from you first.  Main lectern,

15   please.

16          MR. SKELTON:  Good morning, Your Honor.

17          THE COURT:  Main lectern, please.

18          MR. SKELTON:  Oh, I'm sorry.

19          Good morning, Your Honor.  John Skelton, again, on

20   behalf of General Motors, LLC.  Given Your Honor's outline, I

21   will address the issue of jurisdiction, and in particular, the

22   notion of whether or not the Court should -- discretionary

23   abstention.

24          The -- reduced to its essentials, Ramp is challenging

25   the essential terms of the bargain that was struck between New

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 8 of 39

Page 8

1    GM and the thousand-plus dealers that were going to be offered

2    wind-down agreements.  And necessarily, what the scope of the

3    rights and responsibilities of both New GM, as the 363

4    acquirer, and those wind-down dealers who accepted those wind-

5    down agreements, what they're respective rights and

6    responsibilities would be, going forward.  I think that's an

7    important backdrop, because when we now focus on Ramp's

8    essential argument is that simply because it is now a Chapter

9    11 debtor, that that changes the rules and changes what -- how

10   that challenge -- because reduced to its essentials, it is

11   essentially saying whether it's a 553 defense or some other

12   challenge, the payment provisions, paragraph 3.a, 3.b, and 3.c,

13   that it is different from every other wind-down dealer or

14   potentially different from every other wind-down dealer because

15   it is a Chapter 11 debtor.

16       THE COURT:  Don't follow you, Mr. Skelton.  Can't

17   every bankruptcy judge in the country tell whether a party is

18   trying to disregard what a contract says?

19       MR. SKELTON:  Well, I think so, and one of the

20   arguments -- and we had a preliminary argument before Judge

21   Grossman on October 27th.  We had tried to ask the debtor to --

22   or, Ramp to defer until we got before Your Honor.  They weren't

23   willing to do that.  And Judge Grossman did identify the

24   assumption cum onere issue as an initial issue because, at

25   least as expressed by Judge Grossman, if assumption cum onere

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 9 of 39

Page 9

1    means assumption cum onere, you want the benefit, you want a

2    wind-down payment, you've got to deal with all of the terms and

3    conditions.

4          I had argued, and I think that when you look at

5    paragraph 3.c of the wind-down agreement, that it is something

6    more than setoff.  And so I had argued that in order to

7    adjudicate fully Ramp's essential challenge that it does not

8    have to abide by -- or more importantly, that it can compel New

9    GM to make a full wind-down payment without New GM having the

10   ability to enforce those other provisions, that in order to

11   adjudicate that issue, the Court would not only have to look at

12   just bankruptcy issues and whether or not 365 applies, but then

13   more importantly, what was the meaning of paragraph 3.c, and

14   how important was paragraph 3.c, the pre-conditions in

15   paragraph 3.b, to the overall bargain that was struck between

16   the 363 acquirer New GM and those wind-down dealers.

17          And in that respect, Your Honor, I do think that this

18   Court has -- is in a better position in order to assess that

19   particular issue.  Clearly, Judge Grossman understands 553.  He

20   understands assumption cum onere, and the like.  But even he,

21   on October 27, said to Mr. Snyder, if I decide your assumption

22   cum onere, if I decide assumption means assumption and you're

23   bound, case over.  But even if I decide that, well, maybe 553

24   survives in some form or fashion, I then have to get to New

25   GM's argument that paragraph 3.c means something more.  And he

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 10 of 39

Page 10

1    then acknowledged that it's likely that that evaluation of does

2    3.c mean something more, that that would be more appropriate

3    for this Court because of this Court's background about the

4    essential bargain that was struck.  And so that's what I think

5    the critical difference is between -- and why, candidly, New GM

6    is coming back to Your Honor, because our essential argument

7    is -- and our papers deal with the 553 and why we think that

8    even if it applies, we still have a reconciliation right under

9    state law and recoupment and the like, but the essential

10   argument is that the wind-down agreements reflected a bargain,

11   a deal between New GM, a thousand-plus dealers.  This Court

12   oversaw that process, approved those agreements, made findings

13   that they were valid and binding, and if there is going to be

14   an adjudication of the meaning of particular words, the meaning

15   of particular language above and beyond those basic

16   assumption -- or, basic assumption and basic 553 issues, then

17   we certainly think that it should be before this Court.

18           THE COURT:  Now, Mr. Skelton, you agree, I assume,

19   that while I approved the unwind agreement, I didn't draft it?

20           MR. SKELTON:  Absolutely.

21           THE COURT:  And just as, to tell you the truth, and

22   I'm not speaking out of school, we judges sign hundreds or

23   thousands of orders that lawyers put in front of us, orders,

24   unlike agreements, we have the power to change.  And we

25   sometimes do.  And I take it you agree with that as well?

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 11 of 39

Page 11

1          MR. SKELTON:  Yes.

2          THE COURT:  Okay, so do you agree or disagree with a

3    potential corollary of those two premises that, while there is

4    a more important interest in enforcing and construing our

5    orders where we're the draftsmen, while there is some interest

6    in construing the agreements that we approve, it isn't as

7    strong as construing the orders that we enter?

8          MR. SKELTON:  As a general principle, yes, I agree

9    with that.  I think that in the context of an order that has --

10   it is approving a very significant acquisition that has some

11   very important components, one in which the -- for example, the

12   New York State Dealer's Association was heard.  They raised

13   some issues --

14         THE COURT:  Time out, Mr. Skelton, because I saw that

15   in your papers, and I was surprised and, to tell you the truth,

16   a touch offended when I saw that in your papers.  I was there.

17   I heard their argument.  The New York Dealer's Association

18   wasn't sticking up for GM dealers.  It was a group of

19   competitors who wanted to drive GM out of business.  And I said

20   that in my opinion that they were coming in as a Trojan horse

21   claiming that they were dealers, when the last thing they were

22   interested in was in the welfare of either New GM, Old GM, or

23   the dealers of either one.  I said that in baby talk in my 363

24   opinion.  Am I remembering it incorrectly?

25         MR. SKELTON:  No, you're remembering it correctly.

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 12 of 39

Page 12

```
 1            THE COURT:  So whether or not I agreed with them or

 2     disagreed with them, it would at least seem to me that that's

 3     wholly irrelevant because on that issue, New GM and its

 4     continuing dealers and its discontinuing dealers were, for all

 5     practical purposes allies and not opponents.

 6            MR. SKELTON:  Well, I -- in a broad sense, yes.  But

 7     those dealers that -- especially those discontinued dealers who

 8     had to make a determination, did they want the benefits of the

 9     wind-down agreement or did they want to pursue other rights.

10     That's where, all of those dealers, individually and,

11     presumably, collectively, reviewed very carefully what the

12     proposal was in terms of the wind-down agreement, the terms,

13     what rights they would have, how the wind-down -- what was

14     being offered to them individually as a wind-down, how it was

15     going to be paid through the open account -- and I don't want

16     to get too fair afield because Your Honor has bifurcated -- but

17     the open account, how it was going to be paid would be

18     important, the preconditions to what they would have to do to

19     satisfy to be able to get the full wind-down payment, twenty-

20     five percent up front, seventy-five percent later, and then the

21     ultimately qualifiers of that's set forth in paragraph 3.c.

22     Knowing that they had seen those agreements, had read them, had

23     understood them, and that Your Honor was at the very least

24     entering an order approving them as valid and binding

25     agreements, recognizing the -- I think the importance of the
```

Page 13

1  underlying agreements to the overall transaction, those dealers

2  certainly had an opportunity to say do I want to get on board

3  and live with those wind-down agreements, or do I want to

4  pursue other rights.

5      Here, Ramp certainly did that.  It signed the wind-

6  down agreements; it accepted the wind-down agreements.  It then

7  made some decisions regarding how it was going to operate over

8  the next several months in terms of -- again, I don't want to

9  get too far afield -- not paying rent and generating

10  significant charges on its open account, and then when forced

11  into bankruptcy by the taxing authorities, made a determination

12  that its probably one and only asset was to assume the wind-

13  down agreements and get whatever monies might be available

14  pursuant to the terms of that wind-down agreement.

15      So in that context, Your Honor, I do think that the

16  363 order that did approve the underlying transaction, that did

17  approve the -- make some findings regarding the underlying

18  agreements, even though there may not have been significant

19  debate or controversy about particular terms, that it certainly

20  was a knowing agreement.  And, part of those wind-down

21  agreements had the exclusive jurisdiction provision.  And why

22  that's important, I think, and it goes to that notion of the

23  discretionary abstention, is that even -- there were, you know,

24  a thousand-plus dealers who were going to be offered wind-down

25  agreements.  And to the extent that -- I think it's fair to say

Page 14

1    that some of them because they were dis -- they were all being

2    discontinued, some of them may have financial difficulties, how

3    their agreements would be handled post-sale, and if there were

4    disputes about whether there were defenses or claims or

5    challenges raised, whether it's in a state forum, and

6    administrative forum, or, as we have here, in another federal

7    bankruptcy court, the fact is that having a single jurisdiction

8    that is going to retain exclusive jurisdiction to make

9    decisions about how those agree -- what those agreements meant,

10   how they're going to be interpreted, and how they're going to

11   be enforced, including whether, if you assume, under 365,

12   assumption means assumption and you take everything, or whether

13   assumption doesn't really mean everything, and 553 may still

14   have some applicability, and even if 553 has some

15   applicability, is there still something else in paragraph 3.c

16   which the introductory phrase in paragraph 3.c starts out, "In

17   addition to any other rights of set-off" and then it goes on to

18   talk about the qualifiers of a reconciliation, New GM being

19   able to deduct any monies that the dealer owes to the final

20   payment, and New GM being able to defer making a wind-down

21   payment, if there's a competing claim, something that's still

22   lurking in the background here, the fact that there's that

23   multitude of decision-making is why that exclusive jurisdiction

24   provision becomes very important.

25             THE COURT:  I didn't interrupt you, Mr. Skelton; I

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 15 of 39

Page 15

 1   should have.  Is it your position that in addition to all of

 2   the stuff that I have to do to enable Old GM to reorganize in

 3   dealing with its asbestos issues, dealing with its disclosure

 4   statement and its plan, and all of the things that I have to do

 5   for Old GM, which is my debtor, I have to be available to

 6   decide each of the hundreds of disputes whenever New GM has a

 7   fight with one of its dealers or, apparently, with its unions

 8   so that in addition to managing one case, I have to manage two,

 9   and to deal with what so far have been seven separate disputes

10   with third parties and, if I'm to believe you, the hundreds of

11   other dealer disputes that may be down the road?

12           MR. SKELTON:  I can't speak to the issues about the

13   unions because, quite candidly, Judge, that's -- I'm not

14   familiar with that aspect of the underlying case.  With respect

15   to the wind-down agreements and the enforceability, I would

16   certainly hope that there is not the floodgate of disputes.

17   And I will tell you that GM has wanted to avoid having to

18   burden Your Honor with this -- this particular dispute, and

19   there's references in our papers to our having requested that

20   it not be put on emergency basis and not asking the debtor to

21   defer, but if we -- New GM does believe that it's very

22   important to avoid potentially conflicting interpretations of

23   what those wind-down agreements mean, and in particular, at

24   least with respect to this particular case, the enforceability,

25   when you look at paragraph 3 and the basic payment provisions,

Page 16

1   thereunder, that that is an important instance where having a

2   single court recognizing that there may be -- hopefully, there

3   isn't, but there may be instances, and as Your Honor -- I'm not

4   aware of all those others, but I do know that there have been

5   that six or seven that have already come before Your Honor.

6   New GM, at least in the wind-down agreement payment context,

7   certainly hopes that this is not the tip of the iceberg.  I

8   don't -- I'm not aware that there's lurking out there a whole

9   host of other cases.  But how paragraph 3, and in particular,

10  those payment qualifiers, gets interpreted and enforced, is an

11  important issue to New GM.

12          THE COURT:  If you answered this by saying not aware,

13  then you can repeat that answer or make it clear that it

14  applied to my question.  How many other dealers do you have who

15  have entered into unwind agreements and are debtors in Chapter

16  7 or Chapter 11 cases around the country?

17          MR. SKELTON:  Unfortunately, Your Honor, I'm not aware

18  of that.  I don't know.

19          THE COURT:  And you're likewise, therefore, unaware of

20  the number who have assumed their agreements and who at least

21  seemingly would have done so cum onere?

22          MR. SKELTON:  Correct, I am not.  I will tell you that

23  I have represented New GM -- Old GM and New GM with respect to

24  dealership bankruptcy matters within the northeast -- New

25  Jersey, New York and New England -- and I'm certainly not aware

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 17 of 39

Page 17

```
1    of any others in that territory.  But I can't speak to -- and I

2    apologize; maybe I should've got that information before I came

3    to court this morning.  I can't speak to the rest of the

4    country, but I know that at least in that northeast territory,

5    I'm only aware of one, and that would be Ramp Chevrolet.

6              THE COURT:  Okay, continue, please.

7              MR. SKELTON:  Well, Your Honor, I think that being

8    cognizant of the bifurcation, I'm not really sure where the

9    assumption cum onere argument falls.

10             THE COURT:  I assume -- is your point that because of

11   that, you should win before either Judge Gerber or Judge

12   Grossman, wherever it's argued on the merits?  I understand the

13   point very well, and it's a very strong point.  But the --

14   that's a merits issue, not a who-decides-the-issue issue.

15             MR. SKELTON:  Well, except in this regard, is that if

16   there was any question about where the case should be

17   adjudicated, when Ramp made the decision to assume the wind-

18   down agreement, that assumption, even though it now says 553 is

19   still lurking out there and doesn't -- assumption doesn't

20   vitiate those, assumption did bring into play paragraph 12, the

21   exclusive jurisdiction provision.  And so Ramp then made a --

22             THE COURT:  Well, I understand that, but that's Mr.

23   Snyder's problem.

24             MR. SKELTON:  Well, and then the corollary to that,

25   though, is that the basic argument that Ramp is now making is
```

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 18 of 39

Page 18

```
 1    that that assumption motion that GM didn't jump into court and

 2    object to and respond to and the like because, quite candidly,

 3    assumption usually means ratification, they're arguing now that

 4    that assumption motion, because GM didn't react, there's now

 5    been a waiver, estoppel, res judicata.  And the reason why I

 6    think that's important to this first issue is that if that

 7    assumption motion was intended to be an adjudication of rights

 8    and obligations under the wind-down agreements, then that

 9    assumption motion itself should not have been, we don't think,

10    brought before Judge Grossman, but it should have been brought

11    here.  Or --

12        THE COURT:  Yeah, I saw that, but I would be surprised

13    if Judge Grossman were to hold that you stepped on a crack and

14    you're out.  Paragraph 1 of your opponent's objection says that

15    the wind-down money was defined in the motion as the full

16    amount due to Ramp, and the full amount due to Ramp is, under

17    the agreement, the amount that is the net balance in each

18    direction, at least in one view, presumably yours.  Or, if it's

19    not the only view, then it's an ambiguous provision, am I

20    correct?

21        MR. SKELTON:  At the very least, it's an ambiguous

22    provision because the assumption -- the first part of the

23    assumption motion also talks about they're seeking to assume to

24    effectuate the terms of the wind-down agreements, and Judge

25    Grossman's assumption order, the one that ultimately got
```

Page 19

1    entered, specifically qualified any payment obligation by New

2    GM pursuant to the terms of the wind-down agreement.

3            THE COURT:  That's hardly surprising, is it?

4            MR. SKELTON:  So that's -- I would hope that it -- no,

5    I don't think it should be surprising, because I think that if

6    you assume an agreement, you're assuming everything, and you

7    get the terms.  And whatever the terms are, those are

8    applicable.  My point is that if the argument, now, is about

9    waiver, estoppel, or jurisdiction because that assumption

10   motion was an adjudication, I think that that adjudication, in

11   the first instance, if the purpose of that adjudication was to

12   challenge the enforceability of essential terms, it should have

13   been brought here in the first instance, and not to Judge

14   Grossman, consistent with paragraph 12.  The fact that it

15   didn't, the fact that Ramp didn't do that and, but now, is

16   raising all of these arguments, I think, is one more reason why

17   Your Honor should not abstain, but instead, retain the

18   exclusive jurisdiction over this matter and make the decision

19   both -- ultimately on the merits.

20           THE COURT:  Okay, thank you.

21           Mr. Snyder, may I get your perspective, please?

22           MR. SNYDER:  Yes, Your Honor.  Thank you.

23           Your Honor, first I want to address certain statements

24   by Mr. Skelton that I really see as straw men.  The issue about

25   the adjournment was when they asked to adjourn their motion

MOTORS LIQUIDATION COMPANY, ET AL.

Page 20

1   here, they wanted to do it until the Rally state pending appeal

2   and motion was heard.  It had little to do with their need to

3   be here -- and these e-mails are annexed to my objection which

4   was annexed to their motion as Exhibit C -- and had everything

5   to do with the Rally proceeding.  So when they asked, I have a

6   motion to convert or dismiss hanging over my head in the Ramp

7   case in front of Judge Grossman, I said no, because it had been

8   scheduled, one, a month earlier, and two, Your Honor, my

9   concern was that the wind-down agreements, by their terms, are

10  terminated on October 31st, and I was uncertain of what the

11  effect would have on the ability of the Ramp estate to get

12  money of that date passed.  So we said no to the adjournment,

13  but after the hearing -- or, at the hearing, when Judge

14  Grossman turned to Mr. Skelton in response to my sensitivity of

15  there being inconsistent positions, which Mr. Skelton now says

16  is a concern of GM, Judge Grossman looked him in the eye and

17  said, "Don't put us in a box.  Judges don't like being put in a

18  box where you're asking two different judges to decide the same

19  issue."

20          THE COURT:  Got that right.

21          MR. SNYDER:  And I asked Mr. Skelton, when I walked

22  out of the court, to please adjourn this hearing until Judge

23  Grossman made the threshold determination whether paragraph 3

24  is essential for him to decide the debtor's claim objection.

25  He called me the next week and said no, that GM would not

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 21 of 39

Page 21

1    adjourn this hearing.  And so we're going forward here that the

2    concern that GM supposedly has, them being the creator of it.

3    They could simply have adjourned this hearing until Judge

4    Grossman had made that threshold determination.

5          But you're now in the box.  And with respect to Your

6    Honor's concern about statement that this Court has

7    jurisdiction, there's little doubt, Your Honor, that this Court

8    has jurisdiction to construe the wind-down agreement and then

9    to enforce it.  It's Ramp's position, though, Your Honor, that

10   there is not enforcement required of the wind-down agreement.

11   So we can speak about the chargeback issue under state law,

12   which we think, since that order took place before GM even took

13   over, or before the debtor even executed the wind-down

14   agreements, that they're not eligible for that set-off.

15         But if this Court does have jurisdiction over the

16   claims objection, there's no other way to put it, Your Honor,

17   this became an issue not because GM was so concerned about this

18   issue, either in November 2009 or January 2010 when the order

19   was entered, or even in July, Your Honor, when they filed their

20   proof of claim.  This became an issue because to be perfectly

21   blunt, Your Honor, this Court's decision in Rally allowed them

22   to, for lack of a better term, take any case that they believed

23   was tangentially related and attempt to have this Court hear

24   those issues on an exclusive basis.

25         THE COURT:  But isn't that an abstention issue?  Mr.

Page 22

```
 1     Snyder, you and I know each other well, and I also know your

 2     familiarity with Rally.  But the amalgam of the language of the

 3     underlying contract and the order gives this Court exclusive

 4     jurisdiction in the first instance, and it says it in baby

 5     talk.  I ruled that way in Rally; Judge Patterson, although in

 6     the context of a stay, had language in his decision which

 7     agreed with that, and that language is very broad.  You're

 8     making, in essence, a policy point, not unlike the one that I

 9     raised as one of my threshold concerns at the outset of this

10     argument, that I shouldn't be taking on hundreds of disputes

11     between New GM and its dealers, but it doesn't go so far as to

12     say that I don't have the jurisdiction that the combination of

13     the agreement and the order said I have.

14          MR. SNYDER:  Your Honor, if I may, I don't want that

15     to be the red herring.  To the extent that this Court does have

16     jurisdiction, there are plenty of reasons -- and the Court

17     alluded to some of them -- why this should not -- should be

18     heard in the Eastern District.  Number one, and to me, the most

19     prominent one, is when GM filed the proof of claim in the Ramp

20     bankruptcy, there's no dispute that they consented to the

21     jurisdiction of that court with respect to claims --

22          THE COURT:  With a reservation of rights.  They said

23     in baby talk, or very -- not exactly in baby talk but pretty

24     impliedly that they had a gun to their heads and they were

25     acting under what amounted to duress.  But isn't the underlying
```

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 23 of 39

Page 23

```
1   economics that this is, in substance, a 542 turnover without

2   the adversary proceeding?  I sometimes waive those formalities,

3   and other judges have done likewise -- I'm thinking of Judge

4   Drain, in particular -- when there's still due process.  But

5   it's not so much that GM's trying to get money out of you.

6   What GM's really -- what you're trying to do is get money out

7   of GM.  You're trying to get the net balance, or maybe the

8   total balance of the severance payment.

9            MR. SNYDER:  In response, Your Honor, whether GM

10  reserved its rights or not is not legally relevant, and I

11  pointed out at least one case -- but GM pointed to none -- that

12  a so-called protective proof of claim allows them to now say

13  they did not effectuate a waiver by filing the claim.  Ramp

14  financ --

15           THE COURT:  Well, there --

16           MR. SNYDER:  I'm sorry.

17           THE COURT:  -- there is, at least in my mind, some

18  debate as to whether debtors can do that kind of thing to their

19  creditors.  But the more fundamental issue is that you're

20  trying to get money out of New GM, and as far as I can tell,

21  New GM isn't trying to get money out of your client's pocket.

22           MR. SNYDER:  That's correct, Your Honor.

23           THE COURT:  Continue, then, please.

24           MR. SNYDER:  Your Honor, I laid out in the motion why

25  I believed -- and I'm addressing this now because I see the
```

MOTORS LIQUIDATION COMPANY, ET AL.

Page 24

1    issues of judicial estoppel, as the Court opined on, or waiver

2    or res judicata as being issues that the Court should address

3    here.  While it is true that we're looking for money from GM

4    and we've been looking for it for some time, the proof of claim

5    is what brought the issue to the forefront.  We did not need to

6    file a 542 action because what GM was looking to do -- and it

7    says it on the face of the proof of claim -- on the top of the

8    attachment is setoff and recoupment.  So if they asserting

9    setoff and recoupment, it's their burden to show that they've

10   met the requirements of 553.  We didn't raise that as a

11   turnover.  They raised it as a defense.  That's their burden.

12   And so when I file -- or, interpose an objection, that's a core

13   proceeding in the Ramp bankruptcy, as the Court is aware, under

14   157(b)(2)(B), and that Court, Your Honor, not only has the

15   knowledge of 553 as this Court does, but more importantly, I

16   would suggest the knowledge of the facts of the Ramp bankruptcy

17   case:  the creditors, the interactions between the debtor, New

18   York State, which is the secured creditor, and the issues that

19   have come up in the last year in the Ramp bankruptcy

20   proceeding.  So to the extent that the Court would consider

21   discretion, it's because Judge Grossman is more familiar with

22   the Ramp bankruptcy case, which is where this came up.

23          And Your Honor, I believe the issues of waiver and

24   estoppel are important for another reason.  I understand GM is

25   here now, and maybe Your Honor would suggest that the

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 25 of 39

Page 25

1    definition of wind-down money, as it's defined in the

2    assumption motion, they might have an out on, but there's no

3    dispute that they waited until October to bring this to the

4    forefront, and that's just not as an aside; that's -- the

5    result of them waiting so long is that rights have been

6    changed.  An objection was -- they filed a proof of claim; an

7    objection was interposed.  There was a hearing; there were

8    statements made at that hearing.  And then they came into this

9    court.  And so the parties' legal positions have changed.

10   They -- it's clear, Your Honor -- and we're all aware of

11   Ramp -- that the reason this was -- Rally is because of Your

12   Honor's decision in Rally.  They didn't do this when either the

13   assumption motion was made and granted -- there was a reason

14   Mr. Skelton stated.  They didn't do it in late-September when

15   the objection was originally interposed.  And they certainly

16   didn't seek to let this Court off the hook, to be frank, by

17   seeking a hearing prior to October 27th.

18           So we're now in a position where we have the same

19   issue being confronted by two different courts.  And for that

20   reason alone, Your Honor, because Judge Grossman has not said

21   "I'll reserve" but said he would deal with that threshold

22   issue, that we believe the Court should abstain and let Judge

23   Grossman decide that issue.  And if he decides there is an

24   issue that requires interpretation of paragraph 3 or any

25   provision of the wind-down agreement, I think Judge Grossman,

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
Pg 26 of 39
MOTORS LIQUIDATION COMPANY, ET AL.

Page 26

1    as Mr. Skelton said, has made it abundantly clear that we'll be

2    back here.  But I think for that reason alone, we should allow

3    Judge Grossman, who's already had this motion, Your Honor,

4    since September, to hear it in the first instance.

5          And Your Honor, as an aside, and I'm going to bring up

6    the issue regarding Semcrude because the Court alluded to what

7    a contract is and what an order of the Court is.  There's no

8    doubt that the debtor entered into a contract.  The issue is,

9    after the contract is entered into, what is the effect of a

10   subsequent bankruptcy.  Can GM simply say, not only don't we

11   have to satisfy Section 553, but we don't even have to satisfy

12   New York State law with respect to a setoff that was out of

13   time.

14         THE COURT:  Well, you're getting on very dangerous

15   ground, here, Mr. Snyder.  I thought I was saying that I was

16   going to bifurcate.

17         MR. SNYDER:  That's fine, Your Honor.

18         THE COURT:  But I've got to tell you, your client

19   assumed the agreement.

20         MR. SNYDER:  They did.

21         THE COURT:  And you can't rewrite the agreement that's

22   part of an assumption, and you can't take the parts of the

23   agreement you like and disregard the portions you don't.

24         MR. SNYDER:  I don't --

25         THE COURT:  Now, as I said, and I think my questions

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 27 of 39

Page 27

1    telegraphed my thinking, here, my sense is to let Judge

2    Grossman decide that issue after I remind the world that people

3    have to come to me first, but do you really want to be arguing

4    that before me today?

5            MR. SNYDER:  No, Your Honor.

6            THE COURT:  Okay, anything else?

7            MR. SNYDER:  I have nothing further.

8            THE COURT:  All right, Mr. Skelton, I'll take brief

9    reply.

10           MR. SKELTON:  I just want to address a couple points

11   that Mr. Snyder raised and Your Honor questioned whether it was

12   really a turnover motion.  Whether it's a turnover -- I think

13   that that's what they're trying to do; they're trying to compel

14   payment.  And as I alluded to in my first remarks that if the

15   compelling payment claim or challenge was going to be certain

16   provisions or certain terms are unenforceable now, I think that

17   is either a motion to compel turnover or a 7001 declaratory

18   judgment which would have certainly brought to the forefront

19   the underlying wind-down agreement challenge.  Ramp didn't do

20   that.

21           The issue about exclusive jurisdiction, jurisdiction,

22   who decides was discussed in August at their disclosure

23   statement hearing, at which point I made very clear that we

24   thought that all of those issues should be raised in this

25   court; notwithstanding that, Ramp chose to file a motion to

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 28 of 39

Page 28

1    hold GM in contempt for essentially going through what it

2    believed to be its rights under the now-assumed dealer

3    agreement, and that so that the -- I'm sorry, the now-assumed

4    wind-down agreement.  And so the delay that Mr. Snyder is

5    talking about was, yes, there was probably three weeks,

6    primarily because of my schedule, and not because of anything

7    that New GM was doing, but the response that New GM filed in

8    response to that contempt motion was, first, this motion to

9    have Your Honor look at it because, again, we thought that if,

10   ultimately, the decision involved an assessment of the

11   essential bargain struck between New GM and the wind-down

12   dealers, that that was a question properly brought before Your

13   Honor.

14          THE COURT:  All right.

15          We're going to take a recess.  I can't guarantee you

16   folks when I'll be coming out, but I would like everybody back

17   at 10:45.

18          We're in recess.

19          MR. SNYDER:  Thank you, Your Honor.

20      (Recess from 10:33 a.m. until 11:46 a.m.)

21          THE COURT:  Have seats, please.  I apologize for the

22   delay and keeping you waiting.

23          Gentlemen, I'm ruling that I plainly do have exclusive

24   jurisdiction in the first instance of this dispute and that

25   Ramp should have come to me first in connection with the

Page 29

1    dispute over the construction of the wind-down agreement or its

2    enforcement, including, most significantly, its desire to get

3    amounts asserted to be due under the wind-down agreement.

4          But I'm also ruling that under my authority under

5    Section 1334(c)(1) of the Judicial Code, I should abstain from

6    the merits issues that I otherwise would be required to decide,

7    in favor of Judge Grossman in the Eastern District of New York.

8    The following are the bases for the exercise of my discretion

9    in this regard.

10         As I noted in oral argument, the issues before me must

11   be bifurcated and then bifurcated again.  The first level of

12   bifurcation is separating the jurisdictional and abstention

13   issues, whether I have exclusive jurisdiction, and whether, if

14   so, I should exercise it, from the issues involving the merits,

15   whether Ramp assumed the wind-down agreement cum onere, whether

16   New GM waived rights when it filed its proof of claim, when it

17   tried as hard as it could to preserve them, whether New GM is

18   estopped from enforcing whatever rights it has, whether it

19   still has setoff or recoupment rights, even if the contract

20   itself doesn't provide for a net amount that's due, and any

21   other merits-oriented issues that I may have failed to mention.

22         The second level of bifurcation is, as I indicated,

23   the separate issues of whether I have exclusive jurisdiction,

24   in the first instance, and if so, whether I should abstain.

25   Because of my conclusions as to the jurisdictional and

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 30 of 39

Page 30

```
 1    abstention issues, I don't need to address the merits.  My

 2    conclusion as to exclusive jurisdiction and abstention issues

 3    follow.

 4            As a threshold matter, I think it's absolutely clear

 5    that I have exclusive jurisdiction in the first instance and

 6    that Ramp should have come to me first.  Paragraph 71 of the

 7    363 order provided, in relevant part, "This Court retains

 8    jurisdiction to enforce and to implement the terms and

 9    provisions of this order, the master purchase agreement and

10    each of the agreements executed in connection therewith

11    including the deferred termination agreements in all respects,

12    including but not limited to retaining all jurisdiction to

13    resolve any disputes with respect to or concerning the deferred

14    termination agreements", "emphasis on enforce", "implement",

15    "with respect to", and "concerning".  Likewise, the wind-down

16    agreement provided in Section 7, "By executing this agreement,

17    dealer hereby consents and agrees that the bankruptcy court

18    shall retain full, complete, and exclusive jurisdiction to

19    interpret, enforce, and adjudicate disputes concerning the

20    terms of this agreement and any other matters related thereto."

21    Emphasis on "interpret", "enforce", "adjudicate" and "other

22    matters related thereto".  I think there can be little doubt

23    that the amalgam of these two provisions gives me exclusive

24    jurisdiction over this controversy, and in my view, that can't

25    be taken away by anything Ramp tried to tee up in the Eastern
```

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 31 of 39

Page 31

1    District Bankruptcy Court, most significantly by forcing New GM

2    to file a proof of claim, especially when, in economic

3    substance, this dispute is a species of turnover action where

4    Ramp is trying to get New GM to pay money to the Ramp estate,

5    in contrast to New GM's trying to get money out of Ramp.  And

6    to the extent there can be any doubt, I think my previous

7    decisions in connection with the California dealer, Rally, the

8    Ohio dealers, and the New Orleans dealer, Leson Chevrolet, even

9    though my decision on the merits, vis-a-vis Leson Chevrolet,

10   was largely in Leson's favor, all make clear that these

11   provisions can't be sidestepped by going to a preferred forum

12   elsewhere.  We can't have this structure that was established

13   under the 363 order subverted by collateral attack.

14          With that said, whether I should exercise my exclusive

15   jurisdiction, just as we bankruptcy judges don't always

16   exercise the full extent of our 1334 jurisdiction, presents a

17   different issue.  Section 1334(c)(1) of the Judicial Code, 28

18   U.S.C. Section 1334(c)(1) provides, "Except with respect to a

19   case under Chapter 15 of Title 11, nothing in this section

20   prevents a district court, in the interest of justice or in the

21   interest of comity with state courts or respect for state law,

22   from abstaining from hearing a particular proceeding arising

23   under Title 11, or arising in or related to a case under Title

24   11."  A matter of this type, like the one I discussed in Rally,

25   invokes my "arising in" jurisdiction because I'm enforcing an

09-50026-mg    Doc 7936    Filed 11/19/10    Entered 11/29/10 15:40:14    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 32 of 39

Page 32

1    order I entered and utilizing the exclusive jurisdiction that I

2    caused to be retained under my earlier order.

3            It is clear in this district, if not also elsewhere,

4    that a bankruptcy court has the power to abstain not just in

5    favor of a state court, but also another federal court.  See

6    Judge Gropper's decision in Lear Corp., 2009 WL 3191369 at *3,

7    (Bankr.S.D.N.Y. 2009).  The standards for discretionary

8    abstention are well established in this district and, in fact,

9    were expressly discussed in my earlier published decisions in

10   Adelphia, 285 B.R. 127, (2007), River Center, 288 B.R. 59

11   (2003), Casual Male, 317 B.R. 472 (2004), and Lyondell

12   Chemical, 402 B.R. 596 (2009).  As stated in the most recent of

13   them, Lyondell Chemical, the standards for discretionary

14   abstention under Section 1334(c), which are very similar to

15   those applicable to discretionary remand under 28 U.S.C.

16   1452(b), have been articulated in slightly different ways and

17   different cases, but generally have involved consideration of,

18   1, the effect on the efficient administration of the bankruptcy

19   estate, 2, the extent to which issues of state law predominate,

20   3, the difficulty or unsettled nature of the applicable law, 4,

21   comity, 5, the degree of relatedness or remoteness of the

22   proceedings to the main bankruptcy case, 6, the existence of

23   the right to a jury trial, and seven, prejudice to the

24   involuntarily removed defendant.

25            Turning to those factors, now, 1, the effect on the

09-50026-mg   Doc 7936   Filed 11/19/10   Entered 11/29/10 15:40:14   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 33 of 39

Page 33

1    efficient administration of the bankruptcy estate.  In the

2    context this issue is here presented, it's best to consider

3    this by stating the issue as asking what's most efficient for

4    the bankruptcy system because keeping this case is certainly

5    not going to help the administration in my court.  Here, we

6    have a situation where Judge Grossman knows the issues and the

7    history of the case before him better than I do.  He also knows

8    the Code just as well as I do, and he can read a contract just

9    as well as I can.  This factor tips in favor of letting him

10   continue to deal with the controversy, and most assuredly does

11   not warrant my taking it away from him.

12        Factor 2, the extent to which issues of state law

13   predominate.  Here, of course, they don't, so this mildly --

14   but only mildly -- tips in favor of keeping it here.

15        3, the difficulty or unsettled nature of the

16   applicable state law.  Here, the state law issues are no more

17   complex than construing the wind-down agreement and enforcing

18   the agreement in accordance with its terms, if, as I assume,

19   that, whichever judge does so, he'll do it basically the same

20   way.  Likewise, to the extent that the ability to construe

21   issues of federal bankruptcy law should be considered when

22   applying this factor by analogy, Judge Grossman's skills in

23   this area and my own are no different.  This would tip in favor

24   of sending the matter to a state court in a case where this

25   factor were applicable, but here, it's inapplicable for the

Page 34

1    reasons that I just articulated.

2           Factor number 4 is comity.  This factor tips, though

3    mildly, in favor of respecting the comparable skills of a

4    fellow bankruptcy judge when he's no less capable of deciding

5    the underlying issues as I am, and I have no broad

6    institutional needs to retain jurisdiction on my own.  In a

7    case where I did have those institutional needs, as I did in

8    Rally, Leson, and the cases involving the Ohio dealers, comity

9    would actually tip in favor of me keeping my exclusive

10   jurisdiction because I would have strong institutional needs to

11   protect.  But here, I lack those needs, so therefore, comity

12   certainly doesn't favor my keeping it, and to the contrary, it

13   tips mildly in the other direction.

14          Factor number 5 is the degree of relatedness or

15   remoteness of the proceeding to the main bankruptcy case.

16   Here, the dispute is between New GM and a dealer, not with any

17   of the debtors on my watch, most significantly, now called Old

18   GM, now called Motors Liquidation Company.  To the extent this

19   controversy effects the Old GM case at all, it actually cuts

20   against taking jurisdiction because if too many of these

21   disputes between New GM and Old GM were to come to me -- I've

22   had seven of them, already -- it would be burdensome for this

23   Court and impair this Court's ability to deal with the debtors

24   on its watch.  As I indicated, there are important

25   institutional interests in protecting the earlier orders of

Page 35

 1    this Court, especially when one tries to subject them to

 2    collateral attack, and as I noted in one of my earlier

 3    decisions, buyers of assets from Chapter 11 debtors need to

 4    have comfort that the protections for which the bargained or

 5    that otherwise were given to them when they acquired assets

 6    from the estate will continue to be honored.  These concerns

 7    were important in the Rally matter and will usually call for

 8    the Court to keep the matter.  But they don't do so here

 9    because of the reasons that I mentioned in part above and will

10    amplify on now.

11           Here, we're only talking about construing a contract,

12    as contrasted to construing an order, and determining the

13    amount, if any, that's due under that contract.  It also

14    involves considering the significance of facts that are wholly

15    or substantially unrelated to the umbrella Chapter 11 case.

16    Thus, here, the institutional concerns aren't as strong.  In

17    this case, Judge Grossman can read and construe the wind-down

18    agreements just as well as I can.  Likewise, he's just as

19    familiar as I am with doctrines like assuming a contract cum

20    onere and the bankruptcy law involving rights of setoff,

21    recoupment, and other issues related to the merits.

22    Additionally, when we're talking about only one known entity

23    whose situation is like Rally's, and where we have the unique

24    facts involving its being a debtor in a case under the Code and

25    having assumed the wind-down agreement as an executory

Page 36

1    contract, I don't have institutional concerns as strong as they

2    were in the cases involving Rally, the Ohio dealers, and Leson.

3    It's just not as important that I deal with this personally.

4            Factor number 6 is the existence of the right to a

5    jury trial.  This factor is inapplicable as there's no right to

6    a jury trial in either court.

7            Factor number 7 is prejudice to the involuntarily

8    removed defendant.  This factor, too, is inapplicable, as there

9    here is no involuntarily removed defendant.

10           For the foregoing reasons, I determine that I did, in

11   the first instance, have exclusive jurisdiction, but that upon

12   considering the needs and concerns to be addressed in the

13   controversy before me, it's in the interest of justice that I

14   abstain and let Judge Grossman, who is at least as well-

15   qualified to deal with these issues as I am, deal with them as

16   he sees fit.  Accordingly, I am yielding my exclusive

17   jurisdiction, abstaining in this controversy, and permitting it

18   to be determined by Judge Grossman.

19           This ruling, obviously, has aspects that are favorable

20   to each of the two sides.  On balance, I think it's more

21   appropriate for you, Mr. Snyder, to settle an order in

22   accordance with the foregoing stating, in substance, that for

23   the reasons set forth on the record, the Court finds that it

24   does have exclusive jurisdiction in the first instance and that

25   Ramp should have come to this Court first, but stating further

1     that the Court is abstaining from the determination of the

2     merits of this controversy and authorizing and requesting that

3     Judge Grossman decide the remainder of the issues as he sees

4     fit.

5          Not by way of reargument, are there any questions or

6     open issues?  Mr. Snyder?

7          MR. SNYDER:  No, Your Honor.

8          THE COURT:  Mr. --

9          MR. SKELTON:  No, Your Honor.

10         THE COURT:  All right, very well.  We're adjourned.

11         MR. SNYDER:  Thank you, Your Honor.

12         MR. SKELTON:  Thank you, Your Honor.

13        (Whereupon these proceedings were concluded at 12:04 PM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

```
 1
 2                          I N D E X
 3
 4                          RULINGS
 5                                    Page      Line
 6   Re: Motion of General      36        10
 7   Motors, LLC to Enforce
 8   363 Sale Order and
 9   Approved Deferred
10   Termination Agreements
11   against Ramp Chevrolet,
12   Inc., it is found that
13   the Court Has Exclusive
14   Jurisdiction but will
15   Abstain from Exercising
16   Jurisdiction in Favor
17   of Judge Grossman in the
18   Eastern District of New York
19
20
21
22
23
24
25
```

Page 39

1

2                          C E R T I F I C A T I O N

3

4      I, Dena Page, certify that the foregoing transcript is a true

5      and accurate record of the proceedings.

6

7

8      _____

9      DENA PAGE

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date: November 19, 2010

17

18

19

20

21

22

23

24

25