# EXHIBIT F

# INDEPENDENT FIDUCIARY ENGAGEMENT AGREEMENT BETWEEN IUE-CWA GM BANKRUPTCY CLAIM TRUST AND INDEPENDENT FIDUCIARY SERVICES, INC.

This document, when executed by the Board of Trustees, as named fiduciary of and on behalf of the IUE-CWA GM Bankruptcy Claim Trust, a trust organized under the laws of the State of Ohio (the "Trust"), with the authority to appoint an independent fiduciary and a named fiduciary with respect to certain assets of the Trust, and Independent Fiduciary Services, Inc. ("IFS"), a Delaware corporation, shall constitute an agreement ("Agreement") as to the matters set forth herein.

1. **Background**

The Board of Trustees, on behalf of the Trust, represents as follows:

The IUE-CWA is an employee organization which meets the definition of a voluntary employees association under IRS Code Section 501(c)(9) and its accompanying regulations at 26 C.F.R. § 1.501(c)(9)-1 through 26 C.F.R. § 1.501(c)(9)-7 and an employee organization as that term is defined at 29 U.S.C.A. § 1002(4). The Trust is a voluntary employees' beneficiary association which will provide for the payment of life, sick, accident, or other benefits to its members or their dependents or designated beneficiaries, and substantially all of the Trust's operations are in furtherance of providing such benefits within the meaning of within the meaning of IRS Code Section 501(c)(9) and its accompanying regulations at 26 C.F.R. § 1.501(c)(9)-1 (c). No part of the net earnings of the Trust has or will inure to the benefit of any individual, other than by payment of the benefits referred to in paragraph (c) of 26 C.F.R. § 1.501(c)(9)-1.

The Trust will establish an employee welfare benefit plan within the meaning of 29 USC 1002(1) and 29 CFR § 2510. 3-1 providing for the payment of health and welfare benefits to eligible participants.

The Board of Trustees is the named fiduciary of the Trust pursuant to the Trust Agreement, including Article IX, Section 9.01 which designates the Trustees as responsible for the implementation, amendment, and overall operation of the Trust Fund and the establishment, design, amendment, maintenance and administration of the Plan. Section 9.04 of the Trust Agreement entitled Investment Guidelines authorizes the Trustees to establish investment guidelines for managing (including the power to acquire and dispose of) all or any part of the Trust Fund and Section 9.05 entitled Appointment of Investment Managers authorizes the Trustees to appoint one or more Investment Manager(s) to manage all or part of the Trust Fund and enter into an agreement with such Investment Manager. Section 9.05 further provides that if an Investment Manager is appointed, it shall have the authority of the Trustees specified in Section 6.01 of the Trust Agreement with respect to the portion of the Trust Fund assets over which the Investment Manager has investment discretion. Section 6.01 of the Trust broadly authorizes Trustees to engage in investment activities and to do all acts which they may deem

necessary or proper, including selling or otherwise disposing of any authorized investment or retaining any authorized investment and to exercise any option appurtenant to any authorized investment in which the Trust Fund is invested for conversion thereof into another authorized investment.

The Board of Trustees intends to accept a contribution to the Trust by the IUE-CWA of the IUE-CWA's portion of the allowed unsecured claim in the amount of $1 billion (the "Claim") in the Chapter 11 proceeding of Motors Liquidation Company ("MLC") entitled, *In re General Motors Corp. et al.* No. 09-0500206 (REG) (the "MLC Chapter 11 Case") as set forth in Section 3 of the Settlement Agreement among General Motors Company ("GM"), MLC, IUE-CWA, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") dated September 3, 2009, and approved by the Court in the MLC Chapter 11 Case on November 12, 2009 (the "Settlement Agreement").

Eligibility for participation in the Trust will be restricted by objective conditions or limitations reasonably related to employment such as membership or representation by the IUE-CWA during employment at General Motors Corporation or Delphi Corporation and inclusion within the group of persons identified as eligible to receive benefits under the Settlement Agreement.

As holder of the Claim, the Trust will be entitled to one or more distributions from the GUC Trust established in the MLC Chapter 11 Case of common stock issued by GM the "GM Stock") and warrants to purchase GM Stock (the "GM Warrants," and, together with the GM Stock, the "GM Securities"), as described in the Proposed Debtors' Joint Chapter 11 Plan [Docket No. 6829] filed on August 31, 2010 (the "POR") in the MLC Chapter 11 Case].

The Board of Trustees, acting in its capacity as named fiduciary of the Trust, the VEBA and the Plan, wishes to retain and appoint Independent Fiduciary Services, Inc. ("IFS") to serve as a named fiduciary and investment manager of the Trust with respect to the Claim and the GM Securities as set forth in Section 2 below.

2. **Scope and Limits of Engagement**

    (a) IFS shall act as a named fiduciary and investment manager of the Trust, the VEBA and the Plan and shall be charged on behalf of the Plan as the fiduciary with the exclusive authority:

    i. To solicit and evaluate all offers to purchase all or a portion of the Claim, and to decide whether and on what terms to sell some or all of the Claim and effecting any sales of all or a portion of the Claim through brokers or dealers selected by IFS, subject to the provisions of this Agreement;

    ii. To sell some or all of the GM Securities received by the Trust on account of the Claim, either on the open market or through such private sales (including sales to

GM) as IFS deems advisable through brokers or dealers selected by IFS subject to the provisions of this agreement;

iii. To exercise or abstain from exercising the right to purchase GM Stock by exercise of the GM Warrants;

iv. To enter into a hedging transaction with respect to the GM Securities, including the authority to lend, hypothecate, or pledge any of the GM Securities in connection with a hedging transaction, subject to Section 2(b)(iii) below;

v. To direct the Trustees with respect to the voting of proxies or exercise of rights associated with the GM Stock, except with respect to a merger, proxy contest, tender offer, rights offering, sale or disposition, or similar transaction involving control of GM or substantially all of GM's assets; and

vi. To take any other action and exercise any other power or authority in connection with the Claim and the GM Securities reasonably necessary to manage the Claim and the GM Securities as an asset of the Trust.

IFS shall carry out its responsibilities under this Section 2(a) subject to the Investment Guidelines applicable to the Claim and the GM Securities adopted by the Board of Trustees as provided to IFS (the "Guidelines"), provided, however, that any amendment to such guidelines shall be provided to IFS in writing at least ten (10) days before becoming effective.

**(b)** IFS shall have no other fiduciary responsibilities or duties to the Trust, the VEBA or the Plan except as set forth in Section 2(a). In this regard, for example, and without limitation, IFS shall not have any authority or responsibility on behalf of the Trust, the VEBA or the Plan with respect to:

i. Establishing the Plan, paying benefits, administering the Plan, amending the Plan, filing reports with any governmental authority regarding the Plan, or participating in other matters outside (although possibly related to) the matters covered by Section 2(a);

ii. Investing or managing or recommending investment of (A) the proceeds of any sale or other disposition, or pledge, of the Claim or the GM Securities, or (B) any other asset of the Trust;

iii. Entering into a hedging transaction with respect to the GM Securities requiring (A) a payment of cash by the Trust or (B) the encumbering, selling or transferring any asset of the Trust, except to the extent the Guidelines authorize such transactions and the Board of Trustees has allocated a portion of the Trust's assets for the purpose of hedging transactions;

iv. Engaging in securities lending with respect to the GM Securities;

    v.    Amending the Guidelines, except that if, during the period that the Claim and the GM Securities constitute the sole assets of the Trust, IFS determines that an amendment to the Guidelines will materially benefit the Trust, it will so advise the Trustees; or

    vi.    The functions performed by or responsibilities of any person, entity, association or partnership (including, without limitation, the Trustees and the IUE-CWA) who or which provides services to or on behalf of the Plan (each, a "**Service Provider**"), including rendition of legal, auditing, actuarial, custodial, investment consulting (except pursuant to Section 2(b)(v) above), administrative, recordkeeping and accounting services and advice.

**(c)** In performing its responsibilities as set forth in Section 2(a), IFS shall undertake such efforts as are necessary and required of a fiduciary, under the prevailing circumstances, acting in accordance with section 404 of ERISA and other requirements of applicable law. IFS shall retain reasonable discretion and judgment in determining whether, when and in what manner to use and apply its personnel and other resources. In rendering the services as set forth in Section 2(a), IFS may in its discretion employ on behalf of the Trust, the VEBA and the Plan such financial advisors and valuation firms ("IFS Agents") as it deems suitable, upon such reasonable terms as IFS agrees, provided, however, that, IFS shall be responsible for the fees charged by any IFS Agents. In addition, IFS may engage on behalf of the Trust such underwriters, brokers and selling agents as IFS deems advisable in connection with the sale of the Claim and the GM Securities, the reasonable fees and expenses of whom will be paid by the Trust.

**(d)** IFS and the Board of Trustees recognize and agree:

    i.    That in rendering its services hereunder IFS will assume and rely upon the accuracy of information provided to it by the Trust, the VEBA, the Plan, the Service Providers and the IUE-CWA;

    ii.    That IFS is not rendering legal advice or any other legal services to the Trust, the VEBA, the Plan or the Board of Trustees;

    iii.    That in performing its services pursuant to this Agreement, IFS may coordinate with and utilize the services of any Service Provider that is approved by the Trust and that the Trust and not IFS shall pay all reasonable fees and expenses charged by all such Service Providers for services rendered in connection with the Trust, provided that IFS advises the Board of Trustees in advance of the proposed use of such Service Provider and furnishes a reasonable estimate of the expected fees and expenses and the Board of Trustees gives its consent thereto; and

    **(e)** IFS shall not serve as an expert consultant in regard to any civil or criminal judicial proceedings related to its services hereunder or as an expert witness in any such regard, except as the Board of Trustees and IFS may subsequently agree in writing.

**3.**   **<u>Warranties and Representations</u>**

    **(a)**   IFS warrants that:

        **(1)** It is lawfully empowered to enter into this Agreement and perform or provide the services which, pursuant to this Agreement, it has agreed to perform or provide;

        **(2)** The person executing this Agreement on behalf of IFS is authorized to do so; and

        **(3)** In performing services described in this Agreement, it will comply with all applicable laws including ERISA.

    **(b)**   The Board of Trustees, on behalf of the Trust, the VEBA and the Plan, warrant that:

        **(1)** They promptly will provide, and will instruct the Service Providers to provide, IFS the information, resources, cooperation and other assistance reasonably necessary to enable IFS to perform its services hereunder and that such information shall be accurate;

        **(2)** It has provided and identified to IFS all agreements and instruments that impose constraints or limitations on the transferability of any or all of the Claim and the GM Securities.

        **(3)** They are legally authorized to enter into this Agreement;

        **(4)** There are no limitations on the Trust's ability to sell all or a portion of the Claim or the GM Securities. and

        **(5)** The persons executing this Agreement on their behalf are authorized to do so.

    **(c)**   In compliance with Rule 204-3(b) promulgated under the Investment Advisers Act, IFS has delivered to the Plan and the Board of Trustees (and the Plan and the Board of Trustees hereby acknowledge receipt, at least 48 hours prior to execution of this Agreement, Part II of the Form ADV, covering IFS, as currently in effect. IFS agrees to make available to the Plan and the Board of Trustees each year that this Agreement remains in effect an updated copy of Part II of Form ADV as then in effect.

**(d)**  In performing its responsibilities as set forth in this Section 2, IFS shall undertake such efforts as are necessary and required of a fiduciary, under the prevailing circumstances, acting in accordance with section 404 of ERISA and other requirements of applicable law.

**4.    Cooperation of Other Parties to Agreement**

The Board of Trustees, on behalf of the Trust, the VEBA and the Plan, and, by executing a copy of this Agreement, the IUE-CWA, each agrees to reasonably cooperate with IFS so that it may timely perform its responsibilities as set forth in this Agreement. The Board of Trustees and the IUE-CWA agree that they shall undertake best efforts to timely respond to requests from IFS for information. The Board of Trustees agrees to direct the Service Providers to provide IFS responses to such requests -- including reasonable assumptions and/or estimates. IFS shall be entitled to assume and rely upon the accuracy of the information, both oral and written, provided to it by the Board of Trustees, the IUE-CWA, their respective counsel and the Service Providers, unless a prudent fiduciary in a position similar to IFS would have reasonable cause to doubt the accuracy of such information.

**5.    Limitation of Liability**

Except insofar as may be required by ERISA, IFS shall not be liable for liabilities, losses, claims, fees or expenses incurred by the Trust, the VEBA, the Plan, or any of its participants or beneficiaries, or the Board of Trustees, or the IUE-CWA, resulting from or relating to any of the following:

**(a)**  Matters as to which IFS does not have responsibility or authority pursuant to this Agreement, including matters that are within the exclusive responsibility or authority of the Board of Trustees or Service Providers and as to which IFS is not obligated to provide advice or recommendations pursuant to this Agreement;

**(b)**  Circumstances which occurred prior to the effective date of this Agreement;

**(c)**  Advice or information from the Trust, the Plan, the VEBA, the Board of Trustees, the IUE-CWA or Service Providers on which IFS reasonably relied;

**(d)**  The failure of the Board of Trustees or any Service Provider (i) properly to adopt or implement the decision(s) made by IFS, (ii) properly to perform its or their duties, or (iii) adequately to provide IFS accurate, timely, necessary or reliable information, cooperation, or services;

**(e)**  Any employee benefit plan other than the Plan, or any assets of the Plan and Trust other than the Claim and the GM Securities; and

**(f)**  Fraud, concealment, bad faith, or criminal acts or omissions of others which IFS did not discover or which IFS would not have discovered with exercise of

reasonable care in performing its duties pursuant to Section 2(a) of this Agreement.

6. **Fees and Expenses**

   (a)  IFS shall be paid for its services in connection with this Agreement by the Trust in the amount of $480,000, plus reasonable out-of-pocket expenses that it and the IFS Agents may incur in connection with this engagement as set forth in Section 6(b) below. The $480,000 fee shall become due and payable in twelve monthly installments. The first installment shall be due and payable within ten (10) days from the execution of this Agreement. The second installment shall be due and payable on the first day of the first full calendar month after the effective date of this Agreement. Each of the third through twelfth installments shall be due and payable on the first day of each subsequent calendar month, provided, however, that the Trust may defer payment on any installment beginning with the third installment if at the time such installment is due and payable the Trust has not received any cash assets (by sale of the Claim or the GM Securities or otherwise). If the Trust so defers payment, the amount due for each deferred installment plus interest as provided below shall become due no later than five (5) business days after the Trust has received cash assets sufficient to pay the principal amount of the deferred installment plus interest from the date the installment was due and payable to the date of payment at an annual rate equal to the "Prime Rate" as published in the Wall Street Journal on the first business day of the month in which the payment was due plus 50 basis points. It is understood and agreed that the Trust has sufficient funds on hand as of the signing of this agreement to pay the first two installments of IFS's fee hereunder when due.

   (b)  Reasonable out-of-pocket expenses shall be documented and shall include but not be limited to, reasonable travel, lodging and meal expenses, duplicating charges and long-distance telephone calls that may be incurred by IFS in connection with the engagement. IFS shall also be reimbursed for the reasonable and documented fees and expenses of legal counsel IFS engages on behalf of the Trust ("IFS Counsel") to assist IFS in the performance of its duties, and the reasonable out of pocket expenses of the IFS Agents engaged by IFS pursuant to Section 2(c) above. The foregoing shall be paid within thirty (30) days of the Board of Trustees' receipt of an invoice with appropriate documentation, provided that the Trust may defer payment of any such fees and expenses incurred before the first day of the second calendar month following the effective date of this Agreement on the same conditions and terms applicable to the third through twelfth installments of IFS's fee set forth in Section 6(a) above.

   (c)  All fees and expenses to be paid pursuant to this Section 6 shall be paid by the Trust. IFS shall not have any right to seek payment of fees and expenses from the members of the Board of Trustees personally or from the IUE-CWA .

Page 7 of 12

**(d)**   IFS shall send invoices for fees and expenses to the Trust at 2701 Dryden Road, Dayton Ohio 45349 or such other address as the Trustees may designate in writing.

**7.   Acknowledgement of Fiduciary Status**

IFS represents that it is registered as an investment adviser under the Investment Advisers Act of 1940. It acknowledges that by agreeing to undertake the engagement set forth in Section 2, above, it shall be a "named fiduciary" and "investment manager" with respect to the Trust, the VEBA and the Plan, as those terms are defined in ERISA, with respect to such engagement.

**8.   Indemnification**

**(a)**   If IFS or any IFS employee, IFS Agent, IFS Counsel, officer, director, or shareholder (each an "IFS Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, claim, proceeding, investigation, arbitration, or inquiry, directly or indirectly related to the Plan or the services and decisions that are the subject of this Agreement (a "Proceeding"), the Trust shall, to the extent permitted by applicable law, indemnify and hold harmless each IFS Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees and expenses) ("Liabilities") for which such IFS Indemnified Person may become liable in connection with any such matter as such Liabilities arise. The indemnification obligations hereunder shall not apply to any Liabilities that are finally judicially determined to have been caused by such IFS Indemnified Person's material negligence, or by any bad faith or willful misfeasance, or by such IFS Indemnified Person's breach of any fiduciary duty owed to the Trust, the VEBA or the Plan under ERISA. In the event of such determination the Trust shall be entitled to recover from the IFS Indemnified Person the costs and expenses paid on behalf of such person pursuant to this indemnification obligation. The Trust's indemnification obligation shall not apply to any matter in which the Trust asserts a claim against an IFS Indemnified Person alleging negligence, or bad faith or willful misfeasance, or breach of any fiduciary duty owed to the Trust.

**(b)**   The IFS Indemnified Persons shall notify the Trust in writing of any Proceeding or any Liabilities assessed or to be assessed against them for which indemnification is sought, and will provide such notification after the IFS Indemnified Person has actual knowledge of such Proceeding or Liabilities. The Trust shall provide a defense to the IFS Indemnified Persons in any Proceeding through an attorney reasonably acceptable to the IFS Indemnified Person, except that an IFS Indemnified Persons may engage separate counsel, whose reasonable fees and expenses shall be paid by the Trust, if that IFS Indemnified Person reasonably concludes that a conflict of interest renders it inappropriate for counsel for other IFS Indemnified Persons to represent that IFS Indemnified Person. The IFS Indemnified Persons will cooperate in the defense of any proceeding in respect of which such IFS Indemnified Persons are being provided with

indemnification hereunder, and to assist in the conduct of suits and in enforcing any right of contribution, indemnity, or other liability against any person or organization that may be liable to the IFS Indemnified Persons. The IFS Indemnified Persons shall not settle, compromise, or discharge any such Proceeding without the written prior consent of the Trust, which will not be unreasonably withheld. The Trust agrees that it will not settle, compromise, or discharge any Proceeding to which any IFS Indemnified Persons may reasonably be expected to be a party, without the written prior consent of the IFS Indemnified Persons, which will not be unreasonably withheld provided that the Trust has obtained a written agreement executed by such party to such proposed settlement, compromise or discharge, releasing each of the IFS Indemnified Persons from any and all liability and such written agreement and any other instrument associated with the settlement, compromise or discharge contains no provision finding or admitting that IFS has violated ERISA or any other law.

(c) The parties acknowledge that IFS Indemnified Persons may receive subpoenas and other requests for information, documents or testimony by virtue of the fact that IFS is providing services pursuant to this Agreement. Accordingly, and without limiting the generality of the indemnity obligation set forth above, the Trust shall pay the expenses, including all time spent (at IFS's then current hourly rate) and reasonable attorneys' fees, incurred by any IFS Indemnified Persons in testifying, responding to, objecting to or moving to quash or for a protective order, concerning any subpoena, governmental investigation or other legally enforceable request for information, documents or testimony directed to any IFS Indemnified Persons, arising out of or related to the operation of the Trust, the VEBA or the Plan or the investment, management or administration of its assets including, without limitation, the assets as to which IFS is providing services pursuant to this Agreement.

(d) The federal securities laws impose liabilities under certain circumstances on persons who act in good faith, and therefore nothing herein shall in any way constitute a waiver or limitation of any rights which the Trust may have under any federal securities laws.

(e) The provisions of this Section 8 shall be enforceable by each IFS Indemnified Persons and such person's heirs, representatives and successors and shall survive the expiration or termination of this Agreement.

9.  **Other Issues**

(a) Any notice required or permitted pursuant to this Agreement shall be in writing and served upon the other Party by first-class mail. Any notice to the Trust or the Board of Trustees shall be addressed as follows: Board of Trustees, 2701 Dryden Road, Dayton Ohio 45349, provided that the Trust may at any time by written notice to IFS alter the address to which notices should be sent, with a copy to Kennedy Jennik & Murray P.C. 113 University Place, New York New York

10003. Any notice to the IUE-CWA shall be addressed as follows: President James Clark, 2701 Dryden Road, Dayton Ohio 45349. Any notice to IFS shall be addressed as follows: Independent Fiduciary Services, Inc., 805 15th Street, N.W., Suite 1120, Washington, D.C., 20005, Attention: Samuel W. Halpern, with a copy to Independent Fiduciary Services, Inc., 744 Broad Street, Suite 1120, Newark, N.J. 07102, Attention: General Counsel.

(b) Either the Trust or IFS shall be entitled to terminate this Agreement at any time, subject only to thirty (30) days' prior written notice. The Trust shall pay IFS for all services performed and expenses incurred, including the fees and expense of IFS Professionals, through the effective date of termination.

(c) If not earlier terminated pursuant to Section 9(b) above, this Agreement shall terminate upon the completion of the Sale of the Claim and the GM Securities, provided, however, that the Trust's obligation to pay fees and expenses as set forth in Section 6 above shall remain in full force and effect and survive such termination. Thus, by way of example, if all of the Claims and GM Securities have been sold by the end of the sixth month after the effective date of this Agreement, the Trust shall remain obligated to pay the fee installments payable through the twelfth month as set forth in Section 6(a).

(d) This Agreement states the entire agreement of the Parties; is intended as the complete and exclusive statement of their agreement; and may not be modified or amended except by a writing duly executed by the Parties. IFS shall render services in addition to the services set forth in Section 2(a) above only pursuant to either a separate written agreement or a written modification to this agreement. The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof. Notwithstanding the foregoing, if IFS has not completed the performance of its obligations under paragraph 2 of this Agreement as of the date that is one year after the effective date of this Agreement and if as of that date there is (i) a restriction in effect with respect to the Trust's ability to sell the Claim or the GM Securities or (ii) the Guidelines provide that the Trust may hold some or all of the Claim or the GM Securities as a long term investment subject to IFS's discretion, then IFS and the Trust may negotiate a reasonable arrangement to compensate IFS for its services with respect to the management thereafter of the Claim and the GM Securities.

(e) The Board of Trustees acknowledges that the services being provided and obligations undertaken hereunder are being provided and undertaken by IFS as a corporate entity and not by any individual officer, director, employee, agent, shareholder or agent of IFS (each an "IFS Individual"). Neither the Trust, the VEBA nor the Plan nor any of their fiduciaries Plan has entered into any agreement to the effect that (i) one or more IFS Individuals, as opposed to IFS, is providing services to the Trust, the VEBA or the Plan or their fiduciaries, or (ii)

the work performed for or advice communicated to the Board of Trustees, the Trust, the VEBA or the Plan by any one or more IFS Individuals is the work or advice of such IFS Individual(s), as opposed to the work or advice of IFS. IFS represents and the Board of Trustees acknowledges that IFS will not delegate to any IFS Individual IFS's fiduciary obligations and responsibilities owed to the Trust, the VEBA or the Plan.

(f) This Agreement shall be governed by the laws of the District of Columbia (without giving effect to its provisions on the conflict of laws) only to the extent not preempted by ERISA or other federal law.

(g) This Agreement shall be for the benefit of, and shall be binding upon only (a) the Board of Trustees, the Trust, the VEBA and the Plan and their successors, (b) the CWA-IUE and its successors (with respect only to Section 4) and (c) IFS and its successors.

(h) In compliance with Rule 204-3(b) promulgated under the Investment Advisers Act, IFS has delivered to the Board of Trustees (and the Board of Trustees hereby acknowledges receipt, at least 48 hours prior to execution of this Agreement, of) Part II of the Form ADV, covering IFS, as currently in effect. IFS agrees to make available to the Board of Trustees each year that this Agreement remains in effect an updated copy of Part II of Form ADV as then in effect.

(i) This Agreement cannot be assigned by any Party without the consent of the other Parties. Notwithstanding the foregoing, it is understood and agreed that if the USW or a Splinter Union (as defined in the Settlement Agreement) (each of USW and the Splinter Unions, an "Other Union") decide to assign to the Trust their portions of the Claim, then the Claim subject to management by IFS pursuant to this Agreement shall include such Other Union's portion of the Claim, and the GM Securities subject to management by IFS pursuant to this Agreement shall include the GM Securities distributed to the Trust on account of such Other Union's portion of the Claim. The term IUE-CWA as used in Sections 4 and 6 herein shall be deemed to include such Other Union. IFS may require each Other Union and such separate VEBA and Plan, if any established by such Other Union, to execute an instrument in a form reasonably satisfactory to IFS as a condition to IFS's acceptance of responsibility to manage the Claim and GM Securities attributable to such Other Union, provided, however, that the $480,000 fee payable to IFS pursuant to Section 6(a) shall not increase by virtue of an Other Union's assignment of its portion of the Claim to the Trust.

(j) This Agreement may be executed in counterpart copies, each of which shall be deemed an original, but all of which shall be considered the same instrument.

(k)  This Agreement shall be effective upon execution of this Agreement by all parties, except that IFS shall have no obligation to perform the services set forth in Section 2(a)(ii) through (vi) unless and until the Trust has acquired the Claim.

In witness whereof, the Parties have executed this Agreement on the dates set forth below.

INDEPENDENT FIDUCIARY SERVICES, INC.

By: _____

Name: RICHARD F. SCHMIDT

Title: EXECUTIVE VP & CHIEF FINANCIAL OFF.

Date: _____

IUE-CWA GM BANKRUPTCY CLAIM TRUST
By, The Board of Trustees,

By: _____

Name: JAMES D CLARK

Title: Chairman

Date: 11/24/10

APPROVED AS TO FORM AND AS TO SECTION 4

IUE-CWA

By: _____

Name: James D Clark

Title: President

Date: 11/24/10