Hearing Date and Time:  December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time:  December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile:  (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.,*                   :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*               :    (Jointly Administered)
                                                        :
                        Debtors.                        :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED
OBJECTION TO THE SECOND INTERIM FEE APPLICATION OF
<u>TOGUT, SEGAL & SEGAL LLP</u>**

TO:    THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Second Application of Togut, Segal & Segal LLP as Conflicts Counsel for the Debtors for Allowance of Interim Compensation for Services Rendered for the Period June 1, 2010 Through September 30, 2010, and for Reimbursement of Expenses* [Docket No. 7767] (the "**Fee Application**").  The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in

these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies a stipulated amount of $319.00 in fees, from a total of $113,695.46 in fees and expenses[1] requested in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

The applicant and the Fee Examiner have reached agreement, resolving any concerns about the Second Fee Application. As adjusted, the amount sought can be approved by the Court.

In general, the Second Fee Application appears substantively sound, prepared with apparent care. It requests a total of $113,695.46. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary concerns with Togut, Segal & Segal LLP ("**Togut Segal**") by email on November 22, 2010. On December 1, 2010, counsel for the Fee Examiner provided Togut Segal with a draft of this *Report and Statement of Limited Objection* and the parties resolved all remaining issues.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a total stipulated disallowance of $319.00 in fees from a total request of $113,695.46 in compensation and expenses.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

---

[1] This amount includes what appears to be a "below-the-line" reduction of $486 in fees for bill preparation, which according to Togut Segal constitutes a 50 percent reduction in its bill preparation fees. Second Fee Application, Exhibit 1, n.1.

2

jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.   On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[2] Plan confirmation is anticipated in 2011.

3.   On August 5, 2010, Togut Segal filed its first fee application [Docket No. 6543], seeking fees and expenses in the amount of $532,471.43. On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of Togut Segal & Segal LLP*, identifying a stipulated amount of $1,989.00 in fees and expenses that were objectionable [Docket No. 7415]. That report and statement is incorporated by reference. On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications for the third interim fee period, including Togut Segal's. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* [Docket No. 7910]. Through that order, the Court approved Togut Segal's first interim fee application in the amount of $527,375.00 in fees and $3,107.43 in expenses, authorizing payment of $474,637.50 in fees and $3,107.43 in expenses and requiring a continued holdback of 10 percent of Togut Segal's requested fees.

4.   Togut Segal reports that it has received payments from the Debtors of 80 percent of its fees and 100 percent of its expenses for the period from June 1, 2010 through

---

[2] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

3

September 30, 2010. *See* Second Fee Application, ¶ 5. As calculated by the Fee Examiner, this amount, which was not disclosed by Togut Segal, is $90,880 in fees and $581.46 in expenses.

5.  On November 15, 2010, Togut Segal filed the Second Fee Application, seeking fees in the amount of $113,114 and expenses in the amount of $581.46 for total requested compensation of $113,695.46.

**APPLICABLE STANDARDS**

6.  The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided Togut Segal with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

7.  On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the fourth interim fee period, commencing June 1, 2010, the Fee Examiner would discontinue the uniform practice, followed for earlier compensation periods, of raising questions and concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

8.  On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professional are to provide

4

written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

9. With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

10. In applying this Court's ruling to the fee applications for the fourth interim period—and to the "carved-out" amounts in fee applications for the third interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

    A. The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[3]

    B. For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional

---

[3] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

5

"substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised. On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[4]

## COMMENTS

11. **Task Allocation and Billing Rates**. Services have been provided by three position titles for attorneys—partner, of counsel and associate—and one position title for non-attorneys. The blended rate for Togut Segal's professional services was not disclosed in the application but appears to have been a total blended rate, not including paraprofessionals, of $591.63 an hour, only slightly higher than the blended rate of $574.83 for the first interim fee period. This rate corresponds to an associate-level billing rate. *See* Retention Application at 5.

12. The Second Fee Application does not contain any charges associated with rate increases.

*Suggested disallowance for task allocation and billing rates: none.*

13. **Vague Communications and Tasks**. Togut Segal timekeepers generally documented their tasks and communications well, providing sufficient detail in time entries so that interested parties could understand and evaluate the service provided.

*Suggested disallowance for vague timekeeping: none.*

14. **Block Billing**. Togut Segal timekeepers generally avoided listing more than one activity in each time entry—thereby satisfying on a general level the UST Guidelines rule to avoid block billing. *See* UST Guidelines at § (b)(4)(v).

---

[4] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729 (Bankr. S.D.N.Y. Nov. 18, 2010 ) [Adelphia Docket No. 14445]. If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

6

*Suggested disallowance for block billing: none.*

15. **Law Clerk Services**. Togut Segal is seeking compensation of $319 for 2.2 hours of services provided by a law clerk. In response to the Fee Examiner's inquiry, Togut Segal confirmed that the law clerk in question was a third-year law student. In light of the Court's ruling that professionals may not seek compensation for services provided by law school students, the fees are objectionable. *See In re Motors Liquidation Company et al.*, First Interim Fee Hr'g Tr. at 20, No. 09-50026 (Bankr. S.D.N.Y. Apr. 29, 2010, 5:24 P.M.) [Docket No. 5699].

*Agreed disallowance for law clerk services: $319.00.*

16. **Fee Application Services**. Togut Segal has voluntarily reduced its fee request by $486.00, which it identifies as a 50 percent reduction for bill preparation services. The fees to which Togut Segal applied the reduction are not identified. Because of this Court's ruling that fees for reviewing bills are compensable at only 50 percent, whereas fees for preparing the fee application itself are compensable at 100 percent, professionals are encouraged to segregate in the fee application or time detail the different types of fee application services into appropriate categories. The failure to self-segregate the fees renders the fee review process less efficient. Having reviewed the time detail, the Fee Examiner does not object to Togut Segal's calculation of the reduction for bill preparation services.

*Suggested disallowance for fee application services: none.*

17. **Fee Inquiry Time**. The Fee Examiner identified $57.00 in fees related to a paralegal's review of an unidentified report by the Fee Examiner. That amount falls within the $10,000 safe harbor applicable to the Second Fee Application.

*Suggested disallowance of Fee Inquiry Time: none.*

7

*Total Fees Suggested for Disallowance: $319.00.*

*Total Expenses Suggested for Disallowance: none.*

*Total Fees and Expenses Suggested for Disallowance: $319.00.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Second Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Second Fee Application.

Dated: Madison, Wisconsin
December 8, 2010.

                      GODFREY & KAHN, S.C.

By:    /s/ *Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
        tnixon@gklaw.com

*Attorneys for Fee Examiner*

5648772_2