**Hearing Date and Time:  December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time:  December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
                                          :
In re:                                    :    Chapter 11
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :    Case No. 09-50026
       f/k/a General Motors Corp., et al., :    (Jointly Administered)
                                          :
                        Debtors.          :    Honorable Robert E. Gerber
                                          :
-------------------------------------------------------- x
```

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED**
**OBJECTION TO THE SECOND INTERIM FEE APPLICATION OF**
**LEGAL ANALYSIS SYSTEMS, INC.**

**TO:    THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of*

*Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee*

*Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Second*

*Interim Quarterly Application of Legal Analysis Systems, Inc. for Interim Compensation and*

*Reimbursement of Expenses with Respect to Services Rendered as Consultant on the Valuation of*

*Asbestos Liabilities to the Official Committee of Unsecured Creditors Holdings* [sic]

*Asbestos-Related Claims for the Period June 1, 2010 Through September 30, 2010* [Docket

No. 7776] (the "**Second Fee Application**").  The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $21,638.33 in fees and expenses, from a total of $169,466.76 requested in the Second Fee Application, that are objectionable.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

In general, the Fee Application appears substantively sound.  It requests a total of $169,466.76.  On December 1, 2010, counsel for the Fee Examiner provided Legal Analysis Systems, Inc. ("**LAS**") with a draft of this *Report and Statement of Limited Objection*.  LAS did not respond to the draft report or provide any additional information.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a total suggested disallowance of $21,638.33 in compensation and expenses from a total request of $169,466.76 in compensation and expenses.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.        On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure

Statement [Docket Nos. 6829 and 6830].[1]  Plan confirmation is anticipated in 2011.

3.        On August 5, 2010, LAS filed its first fee application [Docket No. 6555], seeking

fees and expenses in the amount of $35,201.19.  On October 19, 2010, the Fee Examiner filed

the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee*

*Application of Legal Analysis Systems*, identifying a stipulated amount of $14.00 in fees and

expenses that were objectionable [Docket No. 7413.].  That report and statement is incorporated

by reference.  On November 24, 2010, the Court entered an omnibus order approving a series of

interim fee applications for the third fee period, including LAS.  *Order Granting (I) Applications*

*for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement*

*of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of*

*LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and*

*Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* [Docket

No. 7910].  Through that order, the Court approved LAS' first interim fee application in the

amount of $34,232.00 in fees and $955.19 in expenses, authorizing payment of $34,232.00 in

fees and $955.19 in expenses and requiring a continued holdback of 10 percent of LAS'

requested fees.

4.        LAS reports it has received payment of $19,594 from the Debtors for services

provided during the fourth interim period.  *See* Second Fee Application, ¶ 7.  According to the

Debtors' monthly operating reports, however, LAS has received approximately $48,000 for

services provided and expenses incurred during the fourth interim fee period.

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

## APPLICABLE STANDARDS

5.      The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.  In addition, the Fee Examiner provided LAS with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

6.      On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the fourth interim fee period, commencing June 1, 2010, the Fee Examiner would discontinue the uniform practice, followed for earlier compensation periods, of raising questions and concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

7.      On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees.  It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard.  *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896].  It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

8.      With respect to time spent responding to fee objections or inquiries, the Court

held that it would "authorize payment of the costs of defending against the objection if the fee

applicant substantially prevails."  In contrast, the applicant "should indeed bear its own legal

expenses for addressing the objection to its fees" in instances where "the outcome is a split

decision, or the fee applicant otherwise fails to substantially prevail."  *Id.*

9.      In applying this Court's ruling to the fee applications for the fourth interim

period—and to the "carved-out" amounts in fee applications for the third interim period—the

Fee Examiner now has established a recommended "safe harbor" for fees related to Fee

Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

A.      The Fee Examiner will not object to the lesser of: either (i) the first

$10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total

compensation requested in the pending fee application, whichever is smaller.[2]

B.      For professionals whose fee applications contain requests for

compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner

has reviewed the time detail, all communications with the professional, the nature of the

inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the

relative magnitude of the deficiencies in comparison to each other and to the

professional's overall fee request (past and present), and whether the professional

"substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee

raised.  On the basis of this review, the Fee Examiner has calculated or will calculate a

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000.  For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

suggested disallowance, ranging from zero percent to 50 percent for professionals

requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

10.    **Work Allocation**.  LAS did not provide a blended hourly rate, as required by the

UST Guidelines.  UST Guidelines, § (b)(3)(v).  The Fee Examiner calculates that blended rate

for services is $619.27.  This blended rate is approximately 50.3 percent higher than the blended

rate of $411.94 for services during the prior interim period.  This substantial increase is not the

result of an increase in billing rates; rather, it appears to be entirely due to a shift in work from

lower-rate to higher-rate professionals.

11.    From the time detail, moreover, it is difficult to determine the division of work

between the two higher billing professionals, who together provided approximately 94.5 percent

of the services during the fee period.  In the absence of extenuating circumstances brought to the

attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior

personnel with tasks performed at the lowest appropriate billing rate by less senior personnel.

*Suggested disallowance for work allocation:  $8,347.83 (constituting five percent of the
total fees requested).*

12.    **Conferencing**.  The Fee Examiner calculates that LAS is seeking $32,025 in fees,

approximately 19 percent, related to conferencing.  Nearly half of this amount, $16,065, is

attributable to conferences between LAS' two higher-billing professionals.  In light of the fact

that only three LAS professionals provided services during the interim fee period, this amount of

conferencing—and, in particular, this amount of internal conferencing—appears excessive.

---

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation."  *See In re
Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6,
No. 02-41729 (Bankr. S.D.N.Y. Nov. 18, 2010 ) [Adelphia Docket No. 14445].  If any applicant engages in abusive,
destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under
this protocol.

*Suggested disallowance for excessive conferencing: $3,202.50 (constituting 10 percent of conferencing fees requested).*

13. **Time Increments**.  One professional, billing at $800 an hour, billed 41 out of 98 entries (approximately 43.8 percent) in half or full hour increments.  Such billing exceeds the statistical variation that one would expect and suggests that the timekeeper did not consistently record time in tenth-of-an-hour increments, as required.

*Suggested disallowance for time increments: $10,088.00 (constituting 10 percent of the time entries by this timekeeper).*

14. **Tort/Asbestos Issues**.  At least seven other professionals, in addition to LAS, have billed the estate for asbestos-related services during the current, and prior, fee periods.[4]

15. Clearly, now and in the future, asbestos matters will consume a significant portion of the administrative expense budget in these cases.  The Debtors' Joint Plan of Reorganization establishes an Asbestos Trust, with a currently undefined cash corpus, to administer asbestos claims, but the ultimate impact of the asbestos claims estimation process (and related matters) is still unknown.

16. Acknowledging the significance of asbestos issues and the necessity of an adversary system to resolve disputes surrounding the Asbestos Trust and the claims estimation process, the Fee Examiner remains concerned about the evidence of duplicative services between

---

[4] Much of the time spent by Retained Professionals dealing with asbestos issues involved protracted disputes over the protection of personally identifying information in the asbestos claims data, the procedures for and scope of discovery related to claims estimation process, and related matters.  Most of the disputes in this regard seem to have been consensually resolved.  *See, e.g., Agreement Regarding Rule 2004 Applications among the ACC, New GM, the Debtors and the Legal Representative for Future Asbestos Claimants* dated August 5, 2010; *Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (ii) the Trusts, and (iii) General Motors LLC and the Debtors* [Docket No. 6749]; *Notice of Withdrawal of The Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors, LLC, Its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants* [Docket No. 7940].

and among the various asbestos professionals.  Altogether, at least eight Retained Professionals

are involved in this process.[5]

*The Fee Examiner does not recommend a reduction for work on asbestos-related matters at this time but will make comprehensive recommendations with respect to asbestos professionals when the final Asbestos Trust terms and the outcome of the claims estimation process can be better determined.*

17.    **Subretentions**.  LAS seeks reimbursement, as an expense, for $2,510.26 in fees it

paid to other professionals for coding services.  LAS did not disclose in its Retention Application

any intent to sub-retain professionals, nor is that practice authorized under the Retention Order.

More than one professional in this case appears to have retained persons or firms who or that

may be professionals within the meaning of section 327 without seeking Court approval—

instead, seeking reimbursement of that entity's fees as an expense.  This raises the possibility

that a professional could, either knowingly or inadvertently, circumvent the requirements and

protections afforded by section 327.

18.    The issue of subretentions has been infrequently addressed by courts.  At least one

court, in the context of a subretention of a legal professional, has disallowed the reimbursement

of the legal fees as an expense.  *E.g.*, *In re Midland Capital Corp.*, 82 B.R. 233, 241 (Bankr.

S.D.N.Y. 1988).  The Fee Examiner suggests that similar treatment of sub-retained professionals

may by appropriate for categories of non-legal professionals as well.

*Suggested disallowance for sub-retentions:  none at this time.*

19.    **Fee Applications and Fee Inquiry Time**.  LAS is not seeking any compensation

related to the preparation of the First Fee Application or to responding inquiries from the Fee

Examiner or the U.S. Trustee.

---

[5] These professionals (not including the Debtors' counsel) are Analysis Research & Planning Corporation; Bates White, LLC; Caplin & Drysdale, Chartered; Hamilton, Rabinovitz & Associates, Inc.; Kramer Levin Naftalis & Frankel LLP; Legal Analysis Systems, Inc.; Stutzman, Bromberg, Essermann & Plifka, A Professional Corporation; and Dean M. Trafelet.

*Total Fees Suggested for Disallowance:  $21,638.33.*

*Total Expenses Suggested for Disallowance:  none.*

*Total Fees and Expenses Suggested for Disallowance:  $21,638.33.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Second Fee Application.  It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.  The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Second Fee Application.

Dated: Madison, Wisconsin
      December 8, 2010.

GODFREY & KAHN, S.C.

By:     /s/ *Katherine Stadler*
         Katherine Stadler (KS 6831)
         Timothy F. Nixon (TN 2644)

         GODFREY & KAHN, S.C.
         780 North Water Street
         Milwaukee, Wisconsin 53202
         Telephone: (414) 273-3500
         Facsimile: (414) 273-5198
         E-mail: kstadler@gklaw.com
                tnixon@gklaw.com

         *Attorneys for Fee Examiner*

5648717_2