**Hearing Date and Time:  December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time:  December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- x
                                      :
In re:                                :    Chapter 11
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :    Case No. 09-50026
    f/k/a General Motors Corp., et al.,  :   (Jointly Administered)
                                      :
                    Debtors.          :    Honorable Robert E. Gerber
                                      :
-------------------------------------------------- x
```

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED**
**OBJECTION TO THE SECOND INTERIM FEE APPLICATION OF**
**CAPLIN & DRYSDALE, CHARTERED**

**TO:    THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of*

*Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee*

*Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Second*

*Interim Quarterly Application of Caplin & Drysdale, Chartered for Interim Compensation and*

*Reimbursement of Expenses With Respect to Services Rendered as Counsel to the Official*

*Committee of Unsecured Creditors Holding Asbestos-Related Claims for the Period June 1,*

*2010 Through September 30, 2010* [Docket No. 7777] (the "**Second Fee Application**").  The

Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in

these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction

with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies

$57,266.92 in fees and expenses, from a total of $629,673.07 requested in the Fee Application,

that are objectionable.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

In general, the Second Fee Application appears substantively sound.  It requests a total of

$629,673.07.  Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner

identified some areas of concern by letter dated November 19, 2010.  Caplin & Drysdale,

Chartered ("**Caplin**"), however, failed to respond by the date requested.  Accordingly, counsel to

the Fee Examiner was unable to narrow the outstanding issues in the draft of this *Report and

Statement of Limited Objection* ("**Draft Report**") provided to Caplin on December 1, 2010.  By

letter correspondence on December 6, 2010 ("**December 6 Caplin Response**") and by telephone

on December 7, 2010, Caplin provided additional information.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis

in support of a total suggested disallowance of $57,266.92 in fees and expenses from a total

request of $629,673.07 in compensation and expenses.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates

("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.    On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1]  Plan confirmation is anticipated in 2011.

3.    On August 5, 2010, Caplin filed its First Fee Application [Docket No. 6553], seeking fees and expenses in the amount of $547,260.88.  On September 20, 2010, the Fee Examiner filed the *Amended Report and Statement of Limited Objection to the First Interim Fee Application of Caplin & Drysdale, Chartered* [Docket No. 7006], identifying a stipulated amount of $13,875.09 in objectionable fees and expenses.  That report and statement is incorporated by reference.  On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications for the third interim fee period, including Caplin's.  *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses from February 1, 2010 Through May 31, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* [Docket No. 7910].  Through that order, the Court approved Caplin's first interim fee application in the amount of $483,409.71 in fees and $49,976.08 in expenses, authorizing payment of $435,068.74 in fees and $49,976.08 in expenses, and requiring a continued holdback of 10 percent of Caplin's requested fees.

4.    On November 15, 2010, Caplin filed the Second Fee Application, seeking fees in the amount of $593,511.50 and expenses in the amount of $36,161.57 for total requested compensation of $629,673.07.

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

5.      Caplin reports that it has received payments from the Debtors of $224,497.40 for

services rendered between June 1, 2010 and September 30, 2010 and $12,025.84 in

reimbursements for expenses incurred during the same time period.

6.      By correspondence dated November 19, 2010, counsel to the Fee Examiner

requested supplemental information from Caplin as part of the review of specific matters in the

Fee Application.  The supplemental information involved:

        A.      Billing Rates and Work Allocation;

        B.      Fee Applications and Fee Examiner Communications;

        C.      Vague Communications and Repetitive Tasks; and

        D.      Expenses.

Caplin responded, belatedly, with the December 6 Caplin Response.

### APPLICABLE STANDARDS

7.      The Second Fee Application has been evaluated for compliance with the *Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local

Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement

of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST

Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the

"**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket

No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly

Reporting Order—including the extent, if any, that variation has been expressly permitted by

order.  In addition, the Fee Examiner has provided Caplin with a draft memorandum

summarizing the Court's April 29, 2010 and July 6, 2010 rulings on fees and expenses.

8.      On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the fourth interim fee period, commencing June 1, 2010, the Fee Examiner would discontinue the uniform practice, followed for earlier compensation periods, of raising questions and concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

9.      On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees.  It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard.  *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896].  It eliminated any requirement to more widely "post notice of upcoming increases on ECF."  *Id.*

10.      With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails."  In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail."  *Id.*

11.      In applying this Court's ruling to the fee applications for the fourth interim period—and to the "carved-out" amounts in fee applications for the third interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

A.    The Fee Examiner will not object to the lesser of: either (i) the first

$10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total

compensation requested in the pending fee application, whichever is smaller.[2]

B.    For professionals whose fee applications contain requests for

compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner

has reviewed the time detail, all communications with the professional, the nature of the

inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the

relative magnitude of the deficiencies in comparison to each other and to the

professional's overall fee request (past and present), and whether the professional

"substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee

raised.  On the basis of this review, the Fee Examiner has calculated or will calculate a

suggested disallowance, ranging from zero percent to 50 percent for professionals

requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

12.    **Billing Rates and Task Allocation**.  Services have been provided by three

position titles for attorneys and one position title for non-attorneys.  The blended rate for

Caplin's professional services was not disclosed in the application but appears to have been a

total blended rate, not including paraprofessionals, of $511.39 an hour.  This rate corresponds to

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000.  For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation."  *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729 (Bankr. S.D.N.Y. Nov. 18, 2010 ) [Adelphia Docket No. 14445].  If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

a partner-level billing rate.  *See* Retention Application at 8 ($410-$950 rate range for Members and Of Counsel) [Docket No. 5302].

A.    As noted in the Fee Examiner's first report, a comparison of billing rates among the law firms providing services in this case suggests that Caplin's rates at most experience levels are on a par with their higher billing peers.  In addition, approximately 80 percent of the firm's work was performed by "Member" and "Of Counsel" attorneys, supported by associates and paralegals performing the remaining work.  The Fee Examiner raised a similar concern with Caplin in the First Fee Application report—where 60 percent of the services performed were provided by "Member" and "Of Counsel" attorneys.  The Fee Examiner did not recommend a deduction, noting that it was Caplin's first fee application and it had not before been involved in the fee examination process.

B.    The reasonableness of a compensation request is determined, in part, by analyzing whether the billing rate is appropriate to each task performed.  *See* 11 U.S.C. §§ 330(a)(3)(B), (D).  As a result, services should be performed by a person with the lowest billing rate able to handle the matter.

C.    The burden of proof is on the fee applicant to prove each component of the fee request, including reasonableness.  *E.g.*, *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citation omitted).  More specifically, a professional's staffing decisions—as those affect the amount of compensation requested—are part of an analysis for reasonableness.

> [T]he court concludes that the Firm did not appropriately staff this matter.  Associates and paralegals, rather than shareholders, could and should have performed much of the schedule preparation and revision.  [The shareholder's] extensive and unchallenged experience and expertise justify his handsome rate reflected in the Application, but that same experience and expertise ought to have

impelled him to delegate to less-expensive personnel many of the
tasks he and other shareholders performed.

*In re Stover*, No. 10-6192, ___ B.R. ___, 2010 WL 4439248, at *5 (Bankr. W.D. Mich. Nov. 5,

2010).

D.    Caplin disputes that it is "appropriate for the Fee Examiner to second-
guess staffing decisions."  December 6 Caplin Response, at 4.  Caplin, perhaps,
misunderstands the scope of the concern.  The Fee Examiner does not question Caplin's
decision to hire few associates with the predictable result that senior professionals at
Caplin "must perform the larger portion of the services provided by the firm."  *Id.* at 3.
Rather, the Fee Examiner notes that a professional may only be compensated at a rate
commensurate with the complexity of a given task.  *See* 11 U.S.C. §§ 330(a)(3)(B), (D).
Caplin may staff a junior-level tasks with senior attorneys but, then, it should be
compensated only at a lower rate for those tasks.  For example:

| Date | Timekeeper | Rate | Task |
| --- | --- | --- | --- |
| 06/23/2010 | TWS | $675 | Organize files. |
| 07/20/2010 | RCT | $545 | Draft notice re filing of 2004 motion. |
| 08/03/2010 | JPW | $510 | Telephone conference with Judge Gerber's chambers re scheduling. |
| 08/03/2010 | TWS | $675 | Teleconference with H. Blum re ACC R. 2004 application; follow-up re request for chambers copies; prep amended notice of hearing and send to E. Benetos for service. |
| 08/03/2010 | TWS | $675 | Teleconference H. Blum re hearing date on ACC rule 2004 app.; email to JPW re same. |
| 08/04/2010 | TWS | $675 | prepare amended notice re Rule 2004 hearing and email to Court. |
| 08/17/2010 | TWS | $675 | Prepare to do list. |

E.      The Fee Examiner was unable to itemize each of the specific tasks for

which Caplin seeks compensation at a rate higher than commensurate with the task, in

part, due to the consistent use of vague time entries by certain timekeepers.  Nonetheless,

the Fee Examiner believes that an overall downward adjustment to the Second Fee

Application is warranted.

*Suggested disallowance for rates not commensurate with the tasks performed:
$29,675.58 (five percent of total fees billed).*

13.      **Fee Applications**.  In recognition of this Court's ruling on fee review activities,

Caplin has discounted time spent reviewing its fee detail in advance of filing its fee application

by 50 percent.  Caplin failed to similarly discount its fees for reviewing the time detail of other

professionals.  In response to the draft report, Caplin has voluntarily agreed to a 50 percent

reduction of those fees.  *See* December 6 Caplin Response, at 5.

*Agreed reduction for time detail review billed at full rates:  $3,059.00.*

14.      **Fee Inquiry Time**.  Caplin seeks compensation for $37,635.50 (matter code .21)

in fees related to responding to inquiries, objections and communications from the Fee Examiner

and the U.S. Trustee with respect to the First Fee Application.  In contrast, the Fee Examiner

calculates Caplin's Fee Inquiry Time as $35,542.50.[4]  This exceeds the $10,000 safe harbor (the

lesser amount under the Fee Inquiry Time protocol) by $25,542.50.

15.      Counsel for the Fee Examiner identified numerous questions about Caplin's First

Fee Application, which Caplin ultimately resolved by providing additional information.[5]  More

specifically, Caplin provided additional information about its work allocation and billing rates;

[4] The Fee Examiner has excluded reasonable (and compensable) time spent preparing monthly budgets and
reviewing the Court's rulings from this figure.

[5] Caplin initially provided a response that contained clear numerical errors based, in part, on Caplin's erroneous
omission of its *nunc pro tunc* time from its calculations.  Caplin subsequently responded with a second and accurate
response.  Caplin seeks compensation for drafting both the corrected and erroneous responses.

9

services challenged as overhead; entries left deliberately vague to protect privileged information; and, work performed in preparation for retaining Epiq Solutions, Inc.

16.      Caplin also provided additional information in response to the Fee Examiner's inquiries regarding compliance with the U.S. Trustee Guidelines, including confirmation of the blended rate, dates of admission for each attorney, and more robust matter descriptions.  The delay in receiving this information, which easily could have been contained in the fee application, made the initial review of the First Fee Application less efficient.

17.      Caplin also stipulated to reductions for deficiencies on established points of law, including matters previously established in this case through prior fee rulings.  More specifically, Caplin agreed to reduce fees for reviewing its time detail in advance of filing its fee application; for a paralegal who failed to bill in tenth-of-an-hour increments; for block billing; for billing errors; for car service on days with fewer than six hours worked; and, for out-of-town meals exceeding the $20 per-meal cap.

18.      Caplin's First Fee Application was not audited by Stuart Maue and the fees subject to specific inquiries or objections are not explicitly itemized in most cases.  The Fee Examiner notes, however, that several of his initial inquiries on billing rate/work allocation and vague-entries, if left unresolved, could have affected a significant portion of Caplin's fee request. Similarly, the Fee Examiner's block billing objection, which was resolved by a stipulated deduction, affected a significant number of time entries.

19.      Many of the Fee Examiner's objections were based on established law, Caplin was unable to provide satisfactory explanations in response to many objections, and Caplin's original application did not initially contain all the elements, required by the UST Guidelines, necessary for the statutory analysis for reasonableness.  Accordingly, the Fee Examiner

concludes that Caplin did not substantially prevail with respect to the issues raised involving the

First Fee Application.

> *Suggested disallowance for a split decision on Fee Inquiry Time:  $12,771.25 (constituting 50 percent of Caplin's Fee Inquiry Time in excess of the safe harbor) to be resolved at an on-the-record conference call between the parties and the Court.*

      20.    **<u>Vague Communications and Repetitive Tasks</u>**.  Several Caplin professionals

routinely used vague and/or repetitive descriptions of the tasks they performed.  Such

descriptions impede the review for reasonableness and necessity not only of the tasks performed

by the timekeepers but also for the tasks performed by those timekeepers' colleagues.

      21.    The problematic task descriptions, occurring most frequently with respect to two

timekeepers, include numerous entries repetitively described as "Review/analyze filings to

evaluate impact on ACC interests," as well as entries recording tasks such as scheduling,

organizing files, and creating to-do lists.  The routine use of such descriptions impedes the

statutory analysis for reasonableness and necessity.  *E.g.*, *In re Motors Liquidation Company*,

Tr. of Hr'g at 26-28, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010) (Gerber, J.) [Docket

No. 6369].  In response to the draft report, Caplin asserted that some of the vague entries were

intended to protect Caplin's work product, resolving the Fee Examiner's concern about some—

but not all entries.

> *Suggested disallowance for vague and repetitive timekeeping:  $11,130.75 (consisting of 10 percent of compensation sought for the timekeeper reflected in the attached Exhibit A).*

22.    **Tort/Asbestos Issues**.  At least seven other professionals, in addition to Caplin, have billed the estate for asbestos-related services during the current, and prior, fee periods.[6]

23.    Clearly, now and in the future, asbestos matters will consume a significant portion of the administrative expense budget in these cases.  The Debtors' Joint Plan of Reorganization establishes an Asbestos Trust, with a currently undefined cash corpus, to administer asbestos claims, but the ultimate impact of the asbestos claims estimation process (and related matters) is still unknown.

24.    Acknowledging the significance of asbestos issues and the necessity of an adversary system to resolve disputes surrounding the Asbestos Trust and the claims estimation process, the Fee Examiner remains concerned about the evidence of duplicative services between and among the various asbestos professionals.  Altogether, at least eight Retained Professionals are involved in this process.[7]

*The Fee Examiner does not recommend a reduction for work on asbestos-related matters at this time but will make comprehensive recommendations with respect to asbestos professionals when the final Asbestos Trust terms and the outcome of the claims estimation process can be better determined.*

---

[6] Much of the time spent by Retained Professionals dealing with asbestos issues involved protracted disputes over the protection of personally identifying information in the asbestos claims data, the procedures for and scope of discovery related to claims estimation process, and related matters.  Most of the disputes in this regard seem to have been consensually resolved.  *See, e.g., Agreement Regarding Rule 2004 Applications among the ACC, New GM, the Debtors and the Legal Representative for Future Asbestos Claimants* dated August 5, 2010; *Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (ii) the Trusts, and (iii) General Motors LLC and the Debtors* [Docket No. 6749]; *Notice of Withdrawal of The Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors, LLC, Its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants* [Docket No. 7940].

[7] These professionals (not including the Debtors' counsel) are Analysis Research & Planning Corporation; Bates White, LLC; Caplin & Drysdale, Chartered; Hamilton, Rabinovitz & Associates, Inc.; Kramer Levin Naftalis & Frankel LLP; Legal Analysis Systems, Inc.; Stutzman, Bromberg, Essermann & Plifka, A Professional Corporation; and Dean M. Trafelet.

25.     **Out-of-Town Meals**.  Caplin's Fee Application requests $135.39 in reimbursement for out-of-town meals for a single meal participant.  In response to the draft report, Caplin agreed to a voluntary reduction of $75.39.  *See* December 6 Caplin Response, at 8.

*Suggested for disallowance for out-of-town meals:  $75.39 (for amounts in excess of $20 per meal participant).*

26.     **Professional Fees & Expert Witness Fees**.  Caplin seeks reimbursement for $14,450 in fees paid to a consultant for the preparation of an "[a]nnotated bibliography of asbestos in brake literature."  *See* Exh. C, Second Fee Application.  In response to the draft report, Caplin disputed that the consultant is a professional person required to be retained by 11 U.S.C. § 327(a).  *See* December 6 Caplin Response, at 9.

27.     More than one professional in this case appears to have retained persons or firms that may be professionals within the meaning of section 327 without seeking Court approval, instead seeking reimbursement of that entity's fees as an expense.  *See*, *e.g.*, Fee Examiner's Report and Statement of Limited Objection to Third and Fourth Interim Fee Applications of LFR, Inc.  This raises the possibility that a professional could, either knowingly or inadvertently, circumvent the requirements and protections afforded by section 327.  The issue of subretentions has been infrequently addressed by courts.  At least one court, in the context of a subretention of a legal professional, has disallowed the reimbursement of the legal fees as an expense.  *E.g.*, *In re Midland Capital Corp.*, 82 B.R. 233, 241 (Bankr. S.D.N.Y. 1988).  The Fee Examiner suggests that similar treatment of sub-retained professionals may be appropriate for categories of non-legal professionals as well.

*Suggested disallowance for sub-retentions:  none at this time, given the amount at issue.*

28.     **In-House Photocopying**.  Caplin seeks reimbursement for $1,433.85 in photocopying expenses.  In response to the Fee Examiner's request for the per-page rate it

charges, Caplin responded that it charges $0.15 per page.  This rate exceeds the $0.10 per page

cap.

*Suggested disallowance for excessive photocopying rate:  $477.95 (one-third reduction to comply with the per-page cap on rates).*

29.    **Overhead**.  Caplin has charged the estate $66.96 for in-house long distance and

$10.24 for postage.  Such charges are overhead expenses and nonreimburseable, and Caplin

agreed to reduce its expense request by those amounts.

*Suggested for disallowance for overhead:  $77.20.*


**Total Fees Suggested for Disallowance:  $56,636.38.**

**Total Expenses Suggested for Disallowance:  $630.54.**

**Total Fees and Expenses Suggested for Disallowance:  $57,266.92.**


## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the

limited basis for objections to the Second Fee Application.  It is not intended to be an exhaustive

or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope

of review or objection on future interim fee applications or on final fee applications.  All

professionals subject to the Fee Examiner review should be aware, as well, that while the Fee

Examiner has made every effort to apply standards uniformly across the universe of

professionals in this case, some degree of subjective judgment will always be required.  The

conclusions and recommendations in this report are, therefore, subject to further refinement upon

each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of*

*Limited Objection* to the Second Fee Application.

Dated:  Madison, Wisconsin
        December 8, 2010.

                              GODFREY & KAHN, S.C.


                    By:      /s/ *Katherine Stadler*
                            Katherine Stadler (KS 6831)
                            Timothy F. Nixon (TN 2644)

                            GODFREY & KAHN, S.C.
                            780 North Water Street
                            Milwaukee, Wisconsin 53202
                            Telephone: (414) 273-3500
                            Facsimile: (414) 273-5198
                            E-mail: kstadler@gklaw.com
                                    tnixon@gklaw.com

                            *Attorneys for Fee Examiner*

5648689_2

# EXHIBIT A

## (Vague Communications and Repetitive Tasks)

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| Date | Code | Employee Initials | Bill Rate | Billing Hours | Narrative |
|---|---|---|---|---|---|
| 6/1/2010 | Committee Meetings/Conferences | KCM | 510 | 0.2 | Review/analyze UCC memo and related materials and correspondence |
| 6/1/2010 | Litigation | KCM | 510 | 3.3 | Plan/prepare for hearing and review/analyze related documents (1.1); attend hearing telephonically (2.2) |
| 6/2/2010 | Case Administration | KCM | 510 | 2.6 | Review/analyze sale order, ARMSPA, and related filings and documents. |
| 6/2/2010 | Case Administration | KCM | 510 | 3.1 | Draft/revise memo to ACC re current proceedings and related issues of ACC interest. |
| 6/4/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze docket entries re ACC interest |
| 6/7/2010 | Case Administration | KCM | 510 | 0.5 | Review/analyze filing and materials re ACC interest |
| 6/7/2010 | Committee Meetings/Conferences | KCM | 510 | 1.1 | Review/analyze UCC memo and related documents and materials (.9); review/analyze internal correspondence re ACC research and writing projects (.2) |
| 6/9/2010 | Case Administration | KCM | 510 | 0.4 | Review/analyze filings re proofs of claim, stay and proposed settlement. |
| 6/9/2010 | Committee Meetings/Conferences | KCM | 510 | 1.3 | Review/analyze research and meet with TEP re same (.9); meet with TWS re case status and tasks (.3); review UCC communication (.1) |
| 6/10/2010 | Committee Meetings/Conferences | KCM | 510 | 5.6 | Appear/attend telephonic UCC meeting (1.3); draft/revise memo to ACC and review/analyze related materials (4.3) |
| 6/11/2010 | Case Administration | KCM | 510 | 0.6 | Review/analyze docket entries and filings re retention and claims objections. |
| 6/11/2010 | Committee Meetings/Conferences | KCM | 510 | 4.3 | Draft/revise memo to ACC and review/analyze related materials (4.1); meet with TWS re memo to ACC (.2) |
| 6/13/2010 | Committee Meetings/Conferences | KCM | 510 | 0.7 | Telephone conference with TEP re memo re ACC interest (.3); review/analyze memo re legal research into ACC issue (.4) |
| 6/14/2010 | Committee Meetings/Conferences | KCM | 510 | 3.3 | Review/analyze docket entries and filings re ACC interest (.2); review/analyze trust agreement and related documents and draft/revise memo re same (3.1) |
| 6/15/2010 | Committee Meetings/Conferences | KCM | 510 | 0.8 | Review/analyze docket entries and filings re ACC interest |
| 6/16/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze docket entries re ACC interest |
| 6/17/2010 | Asset Analysis & Recovery | KCM | 510 | 0.2 | Telephone conference with LMK re memo re ACC interest |
| 6/17/2010 | Case Administration | KCM | 510 | 0.7 | Communicate with TWS re case status and tasks and review/analyze related correspondence (.4); review/analyze docket entries and filing re objection (.3) |
| 6/18/2010 | Asset Analysis & Recovery | KCM | 510 | 1.5 | Appear/attend telephone conference with EI, TWS and A. Reznick re ACC interest (.3); review/analyze various memos and related materials re legal issues and strategy re ACC interest (1.2) |
| 6/18/2010 | Case Administration | KCM | 510 | 1.7 | Meet with TWS re case status and tasks (.2); review/analyze docket entries and filings re claims, sale order and stay (1.5). |
| 6/18/2010 | Committee Meetings/Conferences | KCM | 510 | 1.4 | Draft/revise (and review/analyze) presentation materials for ACC and communication with JPW re same (1.1); review/analyze UCC communication re IPO and related correspondence (.3). |
| 6/18/2010 | Plan & Disclosure | KCM | 510 | 3.4 | Review/analyze materials re GUC trust and draft/revise memo re same |
| 6/19/2010 | Asset Analysis & Recovery | KCM | 510 | 0.8 | Review/analyze Nova Scotia materials and communicate with TWS re same |
| 6/19/2010 | Retention Applications - Other | KCM | 510 | 0.9 | Draft/revise application re Epiq and review/analyze related materials |

1

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| Date/Category | | Code | Hours | Description |
|---|---|---|---|---|
| 6/21/2010 Asset Analysis & Recovery | KCM | 510 | 0.4 | Review/analyze docket entries and filings re Nova Scotia discovery claims. |
| 6/21/2010 Plan & Disclosure | KCM | 510 | 0.9 | Review/analyze memo regarding legal issues affecting asbestos constituency. |
| 6/22/2010 Asset Analysis & Recovery | KCM | 510 | 1.8 | Review/analyze docket entries and filings re discovery, claims and fees. |
| 6/23/2010 Case Administration | KCM | 510 | 0.2 | Review/analyze docket entries and filings regarding fees. |
| 6/24/2010 Case Administration | KCM | 510 | 0.2 | Review/analyze docket entries and filings regarding stay and fees. |
| 6/24/2010 Committee Meetings/Conferences | KCM | 510 | 0.1 | Meet with TWS regarding UCC issues. |
| 6/24/2010 Committee Meetings/Conferences | KCM | 510 | 3.7 | Draft/revise memo to ACC and review/analyze related memos and materials. |
| 6/24/2010 Committee Meetings/Conferences | KCM | 510 | 1.4 | Appear/attend telephonic UCC meeting to take notes and report to ex officio member and ACC. |
| 6/24/2010 Committee Meetings/Conferences | KCM | 510 | 1.1 | Review/analyze materials for UCC call. |
| 6/24/2010 Plan & Disclosure | KCM | 510 | 0.9 | Appear/attend telephonic call with FCR and experts regarding estimation and confirmation issues. |
| 6/25/2010 Case Administration | KCM | 510 | 0.1 | Meet with TWS regarding case status and tasks. |
| 6/25/2010 Committee Meetings/Conferences | KCM | 510 | 0.6 | Draft/revise and send out memo to ACC. |
| 6/25/2010 Committee Meetings/Conferences | KCM | 510 | 0.4 | Review/analyze UCC distribution materials and related documents. |
| 6/25/2010 Plan & Disclosure | KCM | 510 | 1.2 | Review/analyze docket entries and filings regarding MOR, stay and fees. |
| 6/28/2010 Committee Meetings/Conferences | KCM | 510 | 0.1 | Communicate with UCC counsel regarding non-attendance at UCC telephonic meeting. |
| 6/28/2010 Committee Meetings/Conferences | KCM | 510 | 0.6 | Review/analyze UCC distribution materials. |
| 6/28/2010 Committee Meetings/Conferences | KCM | 510 | 1.4 | Review/analyze filings, agenda and letter regarding ACC interest. |
| 6/28/2010 Plan & Disclosure | KCM | 510 | 0.3 | Review/analyze and organize materials regarding asbestos constituency legal issues. |
| 6/29/2010 Asset Analysis & Recovery | KCM | 510 | 0.8 | Review/analyze Nova Scotia objection and related materials. |
| 6/29/2010 Case Administration | KCM | 510 | 0.1 | Meet with TEP regarding case status and tasks. |
| 6/29/2010 Case Administration | KCM | 510 | 1.3 | Review/analyze docket entries, filings and related materials re issues affecting interests of asbestos constituency. |
| 6/29/2010 Retention Applications - Other | KCM | 510 | 0.5 | Review Epiq materials. |
| 6/30/2010 Asset Analysis & Recovery | KCM | 510 | 0.3 | Review/analyze docket entries and filings regarding claims. |
| 6/30/2010 Asset Analysis & Recovery | KCM | 510 | 0.3 | Plan/prepare for and meet with TWS regarding Nova Scotia issues and case status and tasks. |
| 6/30/2010 Committee Meetings/Conferences | KCM | 510 | 0.1 | Telephone conference with EI regarding Nova Scotia objection. |

2

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application

KCM Entries

| Date | Category | Firm | Hours | Description |
|---|---|---|---|---|
| 6/30/2010 | Committee Meetings/Conferences | KCM | 1.1 | Review/analyze analysis of Nova Scotia objection and related materials. |
| 7/1/2010 | Litigation | KCM | 2.3 | Plan/prepare for and communicate with Eric Fisher re Nova Scotia issues (.2); review/analyze filings of ACC interest and related materials (2.1) |
| 7/2/2010 | Litigation | KCM | 3.8 | Review/analyze filings of ACC interest (2.7); review/analyze proposed stipulation with Wilmington Trust and related documents (1.1) |
| 7/6/2010 | Case Administration | KCM | 0.7 | Review/analyze docket entries and filings re ACC interest (.4); review/analyze proposed stipulation (.3) |
| 7/7/2010 | Case Administration | KCM | 0.6 | Review/analyze docket entries and filings re class action and automatic stay. |
| 7/7/2010 | Litigation | KCM | 0.1 | Telephone conference with EI re proposed Wilmington Trust settlement |
| 7/8/2010 | Case Administration | KCM | 0.1 | Review/analyze docket entries re legal issues affecting asbestos constituency. |
| 7/8/2010 | Litigation | KCM | 0.1 | Telephone conference with UCC re proposed stipulation |
| 7/9/2010 | Case Administration | KCM | 0.1 | Review/analyze docket re legal issues affecting asbestos constituency |
| 7/9/2010 | Fee Applications | KCM | 0.1 | Review/analyze correspondence from UCC re fee applications |
| 7/12/2010 | Asset Analysis & Recovery | KCM | 0.3 | Review/analyze filing re class plaintiffs' claims and agenda |
| 7/13/2010 | Asset Analysis & Recovery | KCM | 0.3 | Review/analyze docket entries and filings re claim, stay and settlement issues and amended agenda |
| 7/13/2010 | Committee Meetings/Conferences | KCM | 2 | Review/analyze UCC memo re proposed settlement and other issues and bond pricing materials (.4); review/edit response to ACC membership motion and communicate with TWS, TEP and PVNL re same (1.6) |
| 7/14/2010 | Litigation | KCM | 6.5 | Review/analyze filing re splinter union settlement and related materials (.4); review/analyze proposed orders and communicate with TWS and Debtors re same (.9); review/an alyze Garlock information brief, section of response, and draft/revise sections of response (5.2) |
| 7/15/2010 | Case Administration | KCM | 0.5 | Review/analyze docket entries and filings re settlements and reports (.3); review/analyze internal correspondence re filings (.2) |
| 7/15/2010 | Committee Meetings/Conferences | KCM | 0.4 | Review/analyze UCC distribution re GM update and settlement and charter issues |
| 7/16/2010 | Asset Analysis & Recovery | KCM | 0.7 | Communicate with TWS and review/analyze e-mail re asset recovery issue and review/analyze related materials |
| 7/16/2010 | Litigation | KCM | 0.6 | Review/analyze docket entries and filings re AP motion and order re retention |
| 7/19/2010 | Asset Analysis & Recovery | KCM | 0.6 | Review/analyze docket, orders and filings re sale order and claims objection. |
| 7/20/2010 | Committee Meetings/Conferences | KCM | 0.3 | Review/analyze memo to ACC re discovery (.2); review/analyze UCC distribution re bonds (.1) |
| 7/20/2010 | Litigation | KCM | 1.7 | Review/edit 2004 papers and communicate with TEP and EGB re same (.6); review/analyze internal correspondence re filings and related issues (.4); review/analyze FCR and UCC 2004 filings (.7) |
| 7/20/2010 | Retention Applications - Other | KCM | 1.2 | Review/analyze Epiq retention materials |
| 7/21/2010 | Committee Meetings/Conferences | KCM | 0.2 | Review/analyze UCC distribution re plan |
| 7/21/2010 | Litigation | KCM | 0.2 | Review/analyze internal correspondence re 2004 discovery |

3

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| Date | Category | | | | Description |
|---|---|---|---|---|---|
| 7/21/2010 | Plan & Disclosure | KCM | 510 | 1.2 | Draft/revise memo re GUC Trust and review/analyze related materials |
| 7/22/2010 | Committee Meetings/Conferences | KCM | 510 | 0.4 | Review/analyze UCC distribution re stipulation and plan and confirmation issues |
| 7/23/2010 | Litigation | KCM | 510 | 0.2 | Review/analyze UCC distribution re AP |
| 7/23/2010 | Plan & Disclosure | KCM | 510 | 9.7 | Meet with TWS re plan and related issues (.4); draft/revise memo re GUC trust and review/analyze related materials (1.9); review/analyze draft GM plan and disclosure Statement (7.4). |
| 7/24/2010 | Committee Meetings/Conferences | KCM | 510 | 6.8 | Draft/revise memo to ACC re drafts of Plan and Disclosure Statement and review/analyze related materials |
| 7/25/2010 | Plan & Disclosure | KCM | 510 | 4.1 | Draft/revise memo re Plan and Disclosure Statement (1.8); review/analyze related materials (2.3). |
| 7/26/2010 | Committee Meetings/Conferences | KCM | 510 | 2.4 | Draft/revise memo to ACC re draft plan and disclosure statement and review/analyze related briefs and materials |
| 7/27/2010 | Plan & Disclosure | KCM | 510 | 0.1 | Review/analyze AP filing |
| 7/28/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze docket re legal issues affecting asbestos constituency. |
| 7/29/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze FTI bond report |
| 7/29/2010 | Plan & Disclosure | KCM | 510 | 0.3 | Plan/prepare for and meet with AJS re research re confirmation issue |
| 7/30/2010 | Case Administration | KCM | 510 | 0.3 | Review/analyze memo re fee issues and related materials |
| 7/30/2010 | Plan & Disclosure | KCM | 510 | 2.9 | Plan/prepare for and communicate with RER re plan issues (.5); review/analyze memo re plan and disclosure statement and related materials (.9); review/analyze memo re plan issues and UCC position (.1); review/analyze plan and disclosure statement (1.4) |
| 8/2/2010 | Litigation | KCM | 510 | 1.2 | Review/analyze Debtor Response to UCC discovery (.2); review/analyze draft of summary judgment opposition (.4); review/analyze response and limited objection to UCC 2004 motions (.6) |
| 8/3/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze limited objection of Deutsche Bank to stipulation |
| 8/3/2010 | Fee Applications | KCM | 255 | 0.4 | Review/analyze memo re fee issues |
| 8/3/2010 | Litigation | KCM | 510 | 0.1 | Review/analyze memo to ACC re filings and developments re discovery |
| 8/4/2010 | Case Administration | KCM | 510 | 0.4 | Review/analyze docket entries re legal issues affecting asbestos constituency (.1); review/analyze memo and filings re fee application issues (.3) |
| 8/5/2010 | Case Administration | KCM | 510 | 0.2 | Review/analyze AP fee reply (.1); review/analyze docket entries re legal issues affecting asbestos constituency (.1) |
| 8/5/2010 | Committee Meetings/Conferences | KCM | 510 | 0.3 | Review/analyze UCC distribution re case status and recommendations |
| 8/5/2010 | Fee Applications | KCM | 510 | 0.4 | Review/analyze LAS interim fee application |
| 8/5/2010 | Litigation | KCM | 510 | 0.6 | Review/analyze summary judgment filings (.4); review/analyze Rule 2004 filings (.2) |
| 8/16/2010 | Case Administration | KCM | 510 | 0.2 | Review/analyze filings re AP engagement letter |
| 8/17/2010 | Case Administration | KCM | 510 | 0.3 | Review/analyze filing re surety bond transfer |
| 8/17/2010 | Litigation | KCM | 510 | 0.2 | Review/analyze Nova Scotia discovery |
| 8/19/2010 | Case Administration | KCM | 510 | 0.2 | Review/analyze docket entries re legal issues affecting asbestos constituency (.1); review/analyze docket entries re legal issues affecting asbestos constituency (.1) |
| 8/19/2010 | Litigation | KCM | 510 | 0.3 | Review/analyze memo to ACC re discovery (.2); review/analyze UCC letter to Court re discovery (.1) |
| 8/20/2010 | Case Administration | KCM | 510 | 0.1 | Review/analyze docket entries re legal issues affecting asbestos constituency |
| 8/20/2010 | Committee Meetings/Conferences | KCM | 510 | 0.4 | Review/analyze UCC distribution materials re charter amendment |

4

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| | | | |
|---|---|---|---|
| 8/22/2010 Litigation | KCM | 510 | 0.3 | Review/analyze memo to ACC re discovery and related order and materials |
| 8/23/2010 Litigation | KCM | 510 | 0.3 | Review/analyze draft of summary judgment reply |
| 8/24/2010 Case Administration | KCM | 510 | 0.3 | Review/analyze docket entries re legal issues affecting asbestos constituency (.1); review/analyze revised CMO (.2) |
| 8/25/2010 Case Administration | KCM | 510 | 1.3 | Review/analyze materials re AP retention (1.1); review/analyze internal correspondence from EI and TEP re case status and related information (2) |
| 8/26/2010 Litigation | KCM | 510 | 1.4 | Review/analyze summary judgment reply briefs and related materials |
| 8/27/2010 Case Administration | KCM | 510 | 0.5 | Review/analyze docket entries re legal issues affecting asbestos constituency (.1); review/analyze motion re amendment of certificate of incorporation and related materials (.4) |
| 8/27/2010 Litigation | KCM | 510 | 0.6 | Plan/prepare memo on adversary proceeding and review/analyze related filings and materials |
| 8/30/2010 Case Administration | KCM | 510 | 0.4 | Review/analyze docket entries re legal issues affecting asbestos constituency (.1); review/analyze UST filing re AP (.3) |
| 8/31/2010 Case Administration | KCM | 510 | 0.1 | Review/analyze docket entries re legal issues affecting asbestos constituency |
| 9/1/2010 Case Administration | KCM | 510 | 0.2 | Review/analyze filing re 363 order |
| 9/1/2010 Plan & Disclosure | KCM | 510 | 2 | Review/analyze Plan and Disclosure Statement (1.7); review and send internal correspondence re Plan (.3) |
| 9/2/2010 Committee Meetings/Conferences | KCM | 510 | 2.7 | Draft/revise memo to ACC re Plan and Disclosure Statement |
| 9/2/2010 Plan & Disclosure | KCM | 510 | 5.2 | Review/analyze Plan and Disclosure Statement and compare/contrast with previously distributed drafts |
| 9/3/2010 Committee Meetings/Conferences | KCM | 510 | 4.1 | Draft/revise memo to ACC re Plan and Disclosure Statement |
| 9/3/2010 Litigation | KCM | 510 | 0.8 | Review/analyze materials re Nova Scotia issue |
| 9/3/2010 Plan & Disclosure | KCM | 510 | 2.5 | Review/analyze Plan, Disclosure Statement and related materials (2.1); plan/prepare for and meet with PVNL re Plan and Disclosure Statement (4) |
| 9/6/2010 Plan & Disclosure | KCM | 510 | 2.2 | Review/analyze Debtors' motion re disclosure statement and voting issues |
| 9/7/2010 Case Administration | KCM | 510 | 0.1 | Review/analyze docket entries re legal issues affecting the asbestos constituency |
| 9/7/2010 Committee Meetings/Conferences | KCM | 510 | 0.3 | Plan/prepare communications to ACC re case status and strategy |
| 9/7/2010 Fee Auditor Matters | KCM | 510 | 0.4 | Review/edit time descriptions re fee examiner guidance |
| 9/7/2010 Litigation | KCM | 510 | 2 | Review/analyze case status and strategy (.6); review/analyze bank litigation filings (1.4) |
| 9/7/2010 Plan & Disclosure | KCM | 510 | 3.8 | Review/analyze motion re Disclosure Statement, voting, and related materials |
| 9/8/2010 Committee Meetings/Conferences | KCM | 510 | 1.5 | Draft/revise memo to ACC re disclosure statement, voting motion and related legal issues (1.1); communicate with EI, PVNL and TWS re memo to ACC and related legal issues (.4). |
| 9/8/2010 Plan & Disclosure | KCM | 510 | 3.3 | Review/analyze disclosure statement and voting motion, disclosure statement and related materials |
| 9/9/2010 Case Administration | KCM | 510 | 0.2 | Review/analyze FCR filing |
| 9/9/2010 Committee Meetings/Conferences | KCM | 510 | 0.1 | Review/analyze memo to ACC re discovery issues |
| 9/9/2010 Fee Auditor Matters | KCM | 510 | 4.4 | Review/edit time entries re fee auditor guidance |
| 9/9/2010 Litigation | KCM | 510 | 0.7 | Review/analyze materials re Bank Litigation |

5

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| Date / Category | Timekeeper | Hours | Description |
|---|---|---|---|
| 9/9/2010 Plan & Disclosure | KCM | 1 | Communicate with ACC re disclosure statement issues (.1); review/analyze Debtors' Disclosure Statement and related materials (.9) |
| 9/10/2010 Case Administration | KCM | 0.6 | Review/analyze Debtors' 363 filing |
| 9/10/2010 Fee Auditor Matters | KCM | 2.1 | Review/edit time entries for Fee Examiner's guidance |
| 9/10/2010 Plan & Disclosure | KCM | 3 | Review/analyze exclusivity motion and related materials (.8); review/analyze order and related materials re disclosure statement and related legal issues (2.2) |
| 9/12/2010 Litigation | KCM | 0.2 | Review/analyze protocol notice and related materials |
| 9/13/2010 Case Administration | KCM | 0.2 | Review/analyze amended notice and stipulation (.1); review/analyze internal correspondence re recent filings (.1) |
| 9/14/2010 Case Administration | KCM | 3.6 | Review/analyze memo re upcoming hearing issues and related filings and materials |
| 9/14/2010 Committee | KCM | 4.1 | Draft/revise memo to ACC re exclusivity (2.8); review/analyze exclusivity filings and related materials (1.3). |
| 9/15/2010 Committee Meetings/Conferences | KCM | 6.2 | Draft/revise memo to ACC re Charter Amendment and related issues (2.4); review/analyze filings and materials re Charter Amendment (2.6); communicate with TWS re memos to ACC and related issues (.3); draft/revise memo to ACC re exclusivity (.9) |
| 9/16/2010 Case Administration | KCM | 0.3 | Communicate with TWS re communications with UCC and case status |
| 9/16/2010 Committee Meetings/Conferences | KCM | 0.7 | Review/analyze memo to ACC re potential recovery |
| 9/16/2010 Litigation | KCM | 0.6 | Review/analyze FOF/COL re Sale Order and BMW transaction |
| 9/16/2010 Plan & Disclosure | KCM | 1.7 | Review/analyze disclosure statement materials |
| 9/17/2010 Committee | KCM | 0.4 | Communicate with TWS re constituent question and related issues |
| 9/17/2010 Litigation | KCM | 0.3 | Review/analyze letter brief re discovery |
| 9/17/2010 Plan & Disclosure | KCM | 4.9 | Review/analyze Plan and Disclosure statement re certain factual legal issues (3.2); review/analyze FTI and UCC reports re certain factual issues (1.7) |
| 9/20/2010 Case Administration | KCM | 3.8 | Review/analyze claims objections and related materials (3.4); communicate with TWS re claims issue (.3); communicate with Debtor re claims objections (.1) |
| 9/20/2010 Committee Meetings/Conferences | KCM | 1.9 | Review/analyze UCC reports re bankruptcy status and related legal issues |
| 9/20/2010 Fee Auditor Matters | KCM | 0.4 | Review/analyze fee examiner limited objection to C&D interim |
| 9/20/2010 Litigation | KCM | 0.4 | Review/analyze discovery filings |
| 9/21/2010 Case Administration | KCM | 0.9 | Communicate with TWS re UCC issue (.2); review/analyze Debtor reply brief and omnibus objections (.4); plan/prepare for and communicate with UCC re case status and updates (.3) |
| 9/21/2010 Committee Meetings/Conferences | KCM | 1.6 | Draft/revise memo to ACC re case developments (.3); review/analyze update memos and related materials (1.3) |
| 9/22/2010 Committee Meetings/Conferences | KCM | 1.6 | Review/analyze UCC Update Reports and related materials |
| 9/22/2010 Plan & Disclosure | KCM | 4.2 | Review/analyze Plan and Disclosure Statement (3.1); draft/revise memo analyzing Plan issues (1.1) |
| 9/23/2010 Case Administration | KCM | 1.3 | Review/analyze omnibus objections to claims and related materials (1.1); review/analyze notice re Sept. 24 hearing (.2) |
| 9/23/2010 Plan & Disclosure | KCM | 3.1 | Review/analyze cases and materials re disclosure statement issues |
| 9/24/2010 Plan & Disclosure | KCM | 0.9 | Plan/prepare for disclosure statement objection and review/analyze related materials |

Caplin Drysdale Analysis of 2010-11-15 Exhibit A Time Detail from the 2nd Interim Fee Application
KCM Entries

| | | | | |
|---|---|---|---|---|
| 9/27/2010 Case Administration | KCM | 510 | 1.3 | Review/analyze filings and memo re upcoming hearing issues |
| 9/27/2010 Plan & Disclosure | KCM | 510 | 2.4 | Review/analyze cases and materials re disclosure statement issues |
| 9/28/2010 Plan & Disclosure | KCM | 510 | 2.9 | Review/analyze GUC trust agreement and related documents (1.1); review/analyze disclosure statement, plan and related materials (1.8) |
| 9/29/2010 Case Administration | KCM | 510 | 0.7 | Review/analyze Debtor reply brief re Sale Order |
| 9/30/2010 Case Administration | KCM | 510 | 1.2 | Review/analyze filings re 10/4/10 hearing. |
| 9/30/2010 Case Administration | KCM | 510 | 0.3 | Communicate with TWS re case status and tasks. |
| 9/30/2010 Plan & Disclosure | KCM | 510 | 0.2 | Draft internal memo re disclosure statement and plan issues. |
| 9/30/2010 Plan & Disclosure | KCM | 510 | 1.9 | Review/analyze disclosure statement and plan. |
| | | | **218.5** | **$111,307.50** |

7