Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
MOTORS LIQUIDATION COMPANY *et al.,*                    :    09-50026 (REG)
     f/k/a General Motors Corp. *et al.,*      :    (Jointly Administered)
                                                        :
               Debtors.  :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION
TO FIRST AND FINAL FEE APPLICATION OF
<u>PRICEWATERHOUSECOOPERS LLP</u>**

**TO:    THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *First and Final Application of PricewaterhouseCoopers LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Special Accountants and Tax Advisors to the Debtors and Debtors in Possession for the Period from June 1, 2009 Through July 9, 2009* [Docket No. 7779] (the "**Fee Application**").  The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to

the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection. With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $198,807.82 in fees and expenses, from a total of $1,964,995.70 requested in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

In general, the Fee Application appears substantively sound, but there are significant areas that lack explanation or documentation or both. It requests a total of $1,964,995.70. On December 1, 2010, the Fee Examiner sent PricewaterhouseCoopers LLP ("**PWC**") a draft of this *Report and Statement of Limited Objection*. PWC has not provided additional information, but the Fee Examiner anticipates that the parties will reach a consensual resolution on all of the remaining issues in advance of the hearing to present a stipulated agreement to the Court for its approval.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a disallowance of $127,286.98 in fees and $71,520.84 in expenses for a total suggested reduction of $198,807.82.

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1] Plan confirmation is anticipated in 2011.

3. On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

4. On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

5. On May 18, 2010, Debtors' counsel filed its *Application of Motors Liquidation Company for Entry of Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing the Retention and Employment of PricewaterhouseCoopers LLP as Special Accountants and Tax Advisors, for the Period June 1, 2009 Through July 9, 2009* [Docket No. 5788] (the "**Retention Application**"). There were no objections to the Retention Application, and PWC was appointed by this Court's *Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing the Retention and Employment of PricewaterhouseCoopers LLP as Special Accountants and Tax Advisors, for the Period June 1, 2009 Through July 9, 2009* dated July 13, 2010 [Docket No. 6324] (the "**Retention Order**").

6. On November 15, 2010, PWC filed the Fee Application, seeking fees in the amount of $1,777,725.90 and expenses in the amount of $187,269.80, for total requested compensation in the amount of $1,964,995.70.

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

3

7. As of the filing of the Fee Application, PWC had not yet been paid any compensation pursuant to the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"). Fee Application, ¶ 19.

8. The Fee Examiner has evaluated the Retention Application, the Retention Order, and the Fee Application.

9. On December 1, 2010, the Fee Examiner sent PWC a draft of this *Report and Statement of Limited Objection*.

10. All of the materials and comments provided by PWC were considered by the Fee Examiner.

## APPLICABLE STANDARDS

11. The Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order.

12. On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the interim period commencing June 1, 2010 (the "**Compensation Period**"), the Fee Examiner would discontinue the uniform practice, followed in earlier periods,

4

of outlining concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

13.    On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

14.    With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

15.    In applying this Court's ruling to the fee applications for the Compensation Period—and to the "carved-out" amounts in fee applications for the prior interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

    A.    The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[2]

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

5

B.      For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised.  On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

16.     **Project Staffing**.  The services provided by PWC required an aggregate expenditure of 6,841.9 reported hours.  The requested amount for fees yields an hourly billing rate of approximately $259.83 with a blended rate for partners of $507.00 an hour.

The reasonableness of a compensation request is determined, in part, by analyzing whether the billing rate is appropriate to each task performed.  *See* 11 U.S.C. §§ 330(a)(3)(B), (D) (2010).  As a result, services should be performed by a person with the lowest billing rate able to address the matter.

*Suggested disallowance:  None.*

---

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729, (Bankr. S.D.N.Y. Nov. 18, 2010) [Adelphia Docket No. 14445].  If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

6

17. **Local Guideline Certification**. The *Verification of Douglas Tanner* incorporated into the Fee Application does not contain the full certification required by the Local Guidelines. A supplemental certification may remedy this concern.

18. **Project Categories**. The project categories utilized by PWC do not include categories for administrative matters, preparation of employment and fee applications, or responses to objections relating to fee applications as required by UST Guidelines, § (b)(4)(i). While not all of these categories may be necessary at this juncture, the separation of categories assists the Court's review. In addition, the Fee Application does not arrange all time and service entries by project category as required by § (b)(4)(i) and § (b)(4)(iii) of the UST Guidelines.

*No disallowance suggested.*

19. **Time Increments**. The Fee Application states that the number of hours spent by each individual is listed in half-hour increments and permitted in the Retention Order. *See* p. 8, ¶ 12. However, pursuant to the UST Guidelines, time entries should be kept contemporaneously with the services provided in time periods of one-tenth of an hour. *See* UST Guidelines, § (b)(4)(v). The Retention Application references three engagement letters (the "**Engagement Letters**") that described the various tasks and duties for which PWC would be retained. The Fee Examiner never received copies of these Engagement Letters and is unable to determine the expectation for time entries. However, the Retention Order provides that if a discrepancy arises between the Retention Order and the Engagement Letters, the Retention Order shall govern. *See* Retention Order, p. 3. The Retention Order also states that PWC's Fee Application shall be filed "in accordance with the…guidelines established by the U.S. Trustee." *See* p. 2. The majority of time entries were recorded in half hour increments.

*The significant percentage of half hour increments suggests that billing was not being contemporaneously maintained in one tenth of an hour increments.*

7

*Suggested disallowance for time increment analysis: $88,886.29 (five percent).*

20. **Clerical and Administrative Charges**. Numerous billing entries, totaling $15,532.00 in fees, describe clerical or administrative non-compensable services that might more appropriately be charged as overhead.

*Suggested disallowance for administrative tasks: $7,766.00 (50 percent).*

21. **Vague Tasks**. The Fee Examiner has identified specific billing entries aggregating $6,680.00 that contain an insufficient description of a task and are non-compensable.

*Suggested disallowance for vague tasks: $2,004.00 (30 percent).*

22. **Vague Communications**. Many PWC time entries for communications fail to indicate the parties to the communication, the type of communication, and the subject matter of the communication. *See* UST Guidelines at § (b)(4)(v). Time entries of concern total $28,035.40.

*Suggested disallowance for vague communications: $8,410.62 (30 percent).*

23. **Block Billing**. Block billing is prohibited by the UST Guidelines, § (b)(4)(v). "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *Id*. The Fee Examiner identified entries by PWC professionals for multiple tasks in excess of .5 hours in aggregate time that does not comply with this guideline. The entries with block billing total $48,402.00.

*Suggested disallowance for block billing: $14,520.60 (30 percent).*

24. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Advisories have requested that travel time

8

be itemized separately.  The Fee Examiner has identified entries for travel time that do not state points of travel or clearly reflect whether travel has been billed at a reduced rate.  The entries of concern total $6,099.30.

*Suggested disallowance for travel time: $4,574.47 (75 percent).*

25.    **Excessive Time Entry**.  The Fee Examiner has identified one time entry that appears to be excessive, based on the detail provided.  This entry, totaling three hours, or $1,500.00, states, "Conflict resolution bankruptcy announced."

*Suggested disallowance for excessive time entry: $1,125.00 (75 percent).*

26.    **Expenses**.  The Fee Application, Exhibit E, contains an expense summary.  The Fee Examiner has the following objections:

  A.    Meal Expenses.  Meal expenses totaling $18,786.73 have been submitted for reimbursement.  Reimbursable expenses have been limited to the $20.00 per person, per meal allowance established in the Advisories.

*Suggested disallowance for meal expenses: $7,934.79.*

  B.    Hotel Expenses.  Requests for hotel reimbursement in amounts greater than $400.00 appear to be excessive.  The total amount requested in this category is $77,512.18.  The documentation provided does not indicate multiple nights, which may address this concern, but any hotel expense per person per night greater than $400.00 requires some explanation.

*Suggested disallowance for hotel expenses: $38,468.99.*

  C.    Airfare Expenses.  PWC has submitted $66,558.90 in airfare expenses.  Many charges appear to be excessive or to be for multiple flights.  Additional detail is necessary.

*Suggested disallowance for airfare expenses: $24,026.00.*

    D.  Ground Transportation.  PWC has requested reimbursement for $16,518.49 in ground transportation.  At least $1,091.06 of this amount requires further detail, either because the transportation exceeded $100.00 or appeared to be duplicative.

*Suggested disallowance for ground transportation expenses:  $1,091.06.*

*Total fees suggested for disallowance:  $127,286.98.*

*Total Expenses Suggested for Disallowance:  $71,520.84.*

*Total Fees and Expenses Suggested for Disallowance:  $198,807.82.*

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections to the Fee Application.  It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Green Bay, Wisconsin
December 8, 2010.

                                  GODFREY & KAHN, S.C.

By:    */s/ Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
       tnixon@gklaw.com

*Attorneys for Fee Examiner*

5679443_2

11