Hearing Date and Time: December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
MOTORS LIQUIDATION COMPANY *et al.*,                    :    09-50026 (REG)
     f/k/a General Motors Corp. *et al.*,               :    (Jointly Administered)
                                                        :
                              Debtors.                  :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF NO OBJECTION**
**TO SECOND INTERIM FEE APPLICATION OF**
**<u>ANALYSIS RESEARCH & PLANNING CORPORATION</u>**

**TO:   THE HONORABLE ROBERT E. GERBER**
         **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of No Objection* in connection with the *Second Interim Application of Analysis Research Planning Corporation as Asbestos Claims Valuation Consultant to Dean M. Trafelet in His Capacity as Legal Representative for Future Asbestos Personal Injury Claimants for Allowance of Interim Compensation and Reimbursement of Expenses Incurred for the Period from June 1, 2010 Through September 30, 2010* [Docket No. 7748] (the "**Second Fee Application**"). With this *Report and Statement of No Objection*, the Fee Examiner states that he has no objection to the

award of $206,395.72[1] in fees and expenses requested in the Second Fee Application. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

The applicant has addressed the Fee Examiner's initial observations, resolving any concerns about the Second Fee Application. The amount sought can be approved by the Court.

In general, the Second Fee Application appears substantively sound, prepared with apparent care. It requests a total of $206,395.72. On December 1, 2010, the Fee Examiner sent Analysis Research Planning Corporation ("**ARPC**") a draft *Report and Statement of Limited Objection*, offering an opportunity for discussion. On December 6, 2010, ARPC provided additional information, resolving all issues.

This *Report and Statement of No Objection* summarizes the Fee Examiner's initial analysis and the resolution of time entry issues.

## BACKGROUND

1.     Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.     On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[2] Plan confirmation is anticipated in 2011.

---

[1] The Summary Coversheet to the Second Fee Application incorrectly lists the total amount requested for fees and expenses as $206,385.72.

[2] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

2

3.      On July 15, 2010, ARPC filed the *First Interim Application of Analysis Research Planning Corporation as Asbestos Claims Valuation Consultant to Dean M. Trafelet in His Capacity as Legal Representative for Future Asbestos Personal Injury Claimants for Allowance of Interim Compensation and Reimbursement of Expenses Incurred for the Period from March 1, 2010 Through May 31, 2010* [Docket No. 6351] (the "**First Fee Application**"), seeking fees in the amount of $16,034.50.

4.      On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of No Objection to First Interim Fee Application of Analysis Research & Planning Corporation* [Docket No. 7416]. That report and statement is incorporated by reference.

5.      On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by ARPC. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* (the "**Third Omnibus Order**") [Docket No. 7910]. Through the Third Omnibus Order, the Court approved ARPC's First Fee Application in the amount of $16,034.50, authorizing payment of $14,431.05, and required a continued holdback of 10 percent of ARPC's fees.

6.      On November 15, 2010, ARPC filed the Second Fee Application seeking fees in the amount of $205,538.50 and expenses of $857.22 for total requested compensation of $206,395.72.

7.      As of the filing of the Second Fee Application, ARPC had been paid $98,275.22 in compensation pursuant to the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331*

3

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), which constituted 80 percent of requested fees and 100 percent of requested expenses for June, July, and August 2010, subject to Court review and approval. Second Fee Application, ¶ 4.

8. On December 1, 2010, the Fee Examiner sent ARPC a draft *Report and Statement of Limited Objection*.

9. On December 6, 2010, ARPC provided additional information addressing the Fee Examiner's concerns. All of the materials and comments provided by ARPC were considered by the Fee Examiner.

**APPLICABLE STANDARDS**

10. The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided ARPC with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

11. On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the interim period commencing June 1, 2010 (the "**Compensation Period**"), the Fee Examiner would discontinue the uniform practice, followed in earlier periods,

of outlining concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

12. On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

13. With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

14. In applying this Court's ruling to the fee applications for the Compensation Period—and to the "carved-out" amounts in fee applications for the prior interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

    A. The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[3]

---

[3] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

5

B. For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised. On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[4]

## COMMENTS

15. **Project Staffing**. The services provided by ARPC required an aggregate expenditure of 1,245.30 reported hours. Fewer than 10 percent of the hours billed were at officer billing rates with the vast majority billed by consultants with lower hourly rates. The requested amount for fees yields an hourly billing rate of approximately $165.05.

*Suggested disallowance: None.*

16. **Comparison to Budget**. ARPC has provided monthly projected budgets to the Fee Examiner. A comparison of the projected budget to actual compensation requested reveals that ARPC is within budget—with a notable degree of disparity in the total amounts budgeted and spent:

---

[4] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729, (Bankr. S.D.N.Y. Nov. 18, 2010) [Adelphia Docket No. 14445]. If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

|  |  | Actual | Projected |
|---|---|---|---|
|  |  |  | (fees and expenses) |
| June | Fees | 65,572.00 | 25,000.00 |
| July | Fees | 21,939.00 | 100,000.00 |
| August | Fees | 34,239.00 | 100,000.00 |
|  | Expenses | 857.22 |  |
| September | Fees | 83,788.50 | 150,000.00 |
|  | **TOTAL** | 206,395.72 | 375,000.00 |

17.     **Hourly Rate Increases**.  ARPC seeks $3,783.00 in fees that are the direct result of an hourly rate increase implemented during the Compensation Period.  *See* Second Fee Application, Exhibits D and G.  The hourly rate increase during the Compensation Period (a period beginning in June, presumably after annual rate increases that ordinarily might have occurred at the beginning of the year) was significant.  One Vice President's hourly rate increased by nearly 43 percent, from $305 to $435, without explanation.

*ARPC has demonstrated that the individual in question was billed at an incorrect (and lower) hourly rate in its First Fee Application.*

*Suggested disallowance for rate increase:  None.*

18.     **Time Increments**.  The Retention Order and the UST Guidelines require professionals to bill in increments of one-tenth of an hour.  However, several ARPC timekeepers billed the vast majority of all time increments in half hour increments for an aggregate billing amount of $80,781.50.  The significant percentage of half hour increments suggests that billing is not being contemporaneously maintained in one-tenth of an hour increments.

*ARPC has provided revised time records and an explanation resolving this suggested disallowance.  Billing in proper time increments will continue to be an area of concern.*

7

*Suggested disallowance for improper use of time increments: None.*

19.  **Fee Inquiry Time**. ARPC did not bill any time for its Project Categories 10 or 11, Fee/Employment Applications and Fee/Employment Objections, for the Compensation Period.

20.  **Tort/Asbestos Issues**. At least seven other professionals, in addition to ARPC, have billed the estate for asbestos-related services during the current, and prior, fee periods.[5]

21.  Clearly, now and in the future, asbestos matters will consume a significant portion of the administrative expense budget in these cases. The Debtors' Joint Plan of Reorganization establishes an Asbestos Trust, with a currently undefined cash corpus, to administer asbestos claims, but the ultimate impact of the asbestos claims estimation process (and related matters) is still unknown.

22.  Acknowledging the significance of asbestos issues and the necessity of an adversary system to resolve disputes surrounding the Asbestos Trust and the claims estimation process, the Fee Examiner remains concerned about the evidence of duplicative services between and among the various asbestos professionals. Altogether, at least eight Retained Professionals are involved in this process.[6]

---

[5] Much of the time spent by Retained Professionals dealing with asbestos issues involved protracted disputes over the protection of personally identifying information in the asbestos claims data, the procedures for and scope of discovery related to claims estimation process, and related matters. Most of the disputes in this regard seem to have been consensually resolved. *See*, *e.g.*, *Agreement Regarding Rule 2004 Applications among the ACC, New GM, the Debtors and the Legal Representative for Future Asbestos Claimants* dated August 5, 2010; *Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (ii) the Trusts, and (iii) General Motors LLC and the Debtors* [Docket No. 6749]; *Notice of Withdrawal of The Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors, LLC, Its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants* [Docket No. 7940].

[6] These professionals (not including the Debtors' counsel) are Analysis Research & Planning Corporation; Bates White, LLC; Caplin & Drysdale, Chartered; Hamilton, Rabinovitz & Associates, Inc.; Kramer Levin Naftalis & Frankel LLP; Legal Analysis Systems, Inc.; Stutzman, Bromberg, Essermann & Plifka, A Professional Corporation; and Dean M. Trafelet.

*The Fee Examiner does not recommend a reduction for work on asbestos-related matters at this time but will make comprehensive recommendations with respect to asbestos professionals when the final Asbestos Trust terms and the outcome of the claims estimation process can be better determined.*

23.     **Expenses**.  The Second Fee Application requests reimbursement of research expenses totaling $857.22, which appear to be reasonable.

*Total Fees Suggested for Disallowance:  None.*

*Total Expenses Suggested for Disallowance:  None.*

*Total Fees and Expenses Suggested for Disallowance:  None.*

## CONCLUSION

This *Report and Statement of No Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections, if any, to the Second Fee Application.  It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of No Objection* to the Second Fee Application.

Dated: Green Bay, Wisconsin
December 8, 2010.

                          GODFREY & KAHN, S.C.

By:    */s/ Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
       tnixon@gklaw.com

Attorneys for Fee Examiner

5653996_3

10