Hearing Date and Time: December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
MOTORS LIQUIDATION COMPANY *et al.*,                    :    09-50026 (REG)
    f/k/a General Motors Corp. *et al.*,                :    (Jointly Administered)
                                                        :
                       Debtors.                         :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF NO OBJECTION
TO SECOND INTERIM FEE APPLICATION OF
<u>HAMILTON, RABINOVITZ & ASSOCIATES, INC.</u>**

**TO:    THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of No Objection* in connection with the *Second Application of Hamilton, Rabinovitz, & Associates, Inc. as Consultants for the Debtors with Respect to Present and Future Asbestos Claims, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2010, Through September 30, 2010* [Docket No. 7778] (the "**Second Fee Application**"). With this *Report and Statement of No*

*Objection*, the Fee Examiner states that he has no objection to the award of $28,462.50 in fees, the total requested in the Second Fee Application. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

The applicant has addressed the Fee Examiner's initial observations, resolving any concerns about the Second Fee Application. The amount sought can be approved by the Court.

In general, the Second Fee Application appears substantively sound, prepared with apparent care. It requests a total of $28,462.50. Nonetheless, after reviewing the Second Fee Application, counsel for the Fee Examiner raised some preliminary concerns with Hamilton, Rabinovitz & Associates, Inc. ("**HRA**") by telephone on November 19, 2010. At that time, HRA provided supplemental detail in response to the concerns, resolving all issues. On December 1, 2010, the Fee Examiner sent HRA a draft of this final *Report and Statement of No Objection*.

This final *Report and Statement of No Objection* summarizes the Fee Examiner's initial analysis and the resolution of time entry issues.

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1] Plan confirmation is anticipated in 2011.

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

2

3. On August 5, 2010, HRA filed its *First Application of Hamilton, Rabinovitz, & Associates, Inc. as Consultants for the Debtors with Respect to Present and Future Asbestos Claims, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010, Through May 31, 2010* [Docket No. 6528] (the "**First Fee Application**") seeking fees in the amount of $7,970.00.

4. On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of No Objection to First Interim Fee Application of Hamilton, Rabinovitz & Associates, Inc.* [Docket No. 7423]. That report and statement is incorporated by reference.

5. On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by HRA. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) The Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* (the "**Third Omnibus Order**") [Docket No. 7910]. Through the Third Omnibus Order the Court approved HRA's First Fee Application authorizing payment of $7,970.00 in fees and requiring a continued holdback of 10 percent of HRA's fees.

6. On November 15, 2010, the Second Fee Application was filed, seeking fees in the amount of $28,462.50.

7. As of the filing of the Second Fee Application, HRA had not been paid pursuant to the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for*

3

*Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "Compensation Order").

8. By telephone communication on November 19, 2010, counsel to the Fee Examiner requested supplemental information from HRA as part of his review of specific matters involving the fees requested. The supplemental information requested included expanded definitions of services provided and explanations of vague communications.

9. In that same telephone conversation, HRA provided supplemental detail in response to the Fee Examiner's concerns. All of the materials and comments provided by HRA were considered by the Fee Examiner.

10. On December 1, 2010, the Fee Examiner sent HRA a draft of this *Report and Statement of No Objection*.

## APPLICABLE STANDARDS

11. The Second Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided HRA with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

4

12. On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the interim period commencing June 1, 2010 (the "Compensation Period"), the Fee Examiner would discontinue the uniform practice, followed in earlier periods, of outlining concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

13. On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

14. With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

15. In applying this Court's ruling to the fee applications for the Compensation Period—and to the "carved-out" amounts in fee applications for the prior interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

      A.     The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[2]

      B.     For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised.  On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

16.    **Project Staffing**.  Services have been provided by three people—a partner, a managing director, and a director.  The billing rates range from $650.00 to $350.00 per hour.  *See* Fee Application, Summary.  The overall blended rate is $477.16.  *See* Second Fee Application, ¶ 16.  Approximately 50 percent of the hours billed during the period were billed at the lowest hourly rate.  *See id*.

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729, (Bankr. S.D.N.Y. Nov. 18, 2010) [Adelphia Docket No. 14445].  If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

6

*In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel. Staffing appears to be appropriate.*

*Suggested disallowance for project staffing: None.*

17. **Vague Tasks and Communications**. The Fee Examiner has identified billing entries that fail to comply with the UST Guidelines. Specifically, "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication." UST Guidelines at (b)(4)(v). All time entries must be sufficiently detailed to allow a party reviewing them to evaluate their reasonableness.

*HRA has provided more specificity on time detail for entries, resolving this concern.*

*Suggested disallowance for vague time entries: None.*

18. **Tort/Asbestos Issues**. At least seven other professionals, in addition to HRA, have billed the estate for asbestos-related services during the current, and prior, fee periods.[4]

19. Clearly, now and in the future, asbestos matters will consume a significant portion of the administrative expense budget in these cases. The Debtors' Joint Plan of Reorganization establishes an Asbestos Trust with a currently undefined cash corpus, to administer asbestos claims, but the ultimate impact of the asbestos claims estimation process (and related matters) is still unknown.

---

[4] Much of the time spent by Retained Professionals dealing with asbestos issues involved protracted disputes over the protection of personally identifying information in the asbestos claims data, the procedures for and scope of discovery related to claims estimation process, and related matters. Most of the disputes in this regard seem to have been consensually resolved. *See*, *e.g.*, *Agreement Regarding Rule 2004 Applications among the ACC, New GM, the Debtors and the Legal Representative for Future Asbestos Claimants* dated August 5, 2010; *Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (i) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (ii) the Trusts, and (iii) General Motors LLC and the Debtors* [Docket No. 6749]; *Notice of Withdrawal of The Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors, from General Motors, LLC, Its Subsidiaries and Affiliated Companies, and From Certain Nonbankrupt Asbestos Defendants* [Docket No. 7940].

20. Acknowledging the significance of asbestos issues and the necessity of an adversary system to resolve disputes surrounding the Asbestos Trust and the claims estimation process, the Fee Examiner remains concerned about the evidence of duplicative services between and among the various asbestos professionals. Altogether, at least eight Retained Professionals are involved in this process.[5]

*The Fee Examiner does not recommend a reduction for work on asbestos-related matters at this time but will make comprehensive recommendations with respect to asbestos professionals when the final Asbestos Trust terms and the outcome of the claims estimation process can be better determined.*

***Total fees suggested for disallowance: None.***

***No expenses requested.***

***Total Fees and Expenses Suggested for Disallowance: None.***

## CONCLUSION

This *Report and Statement of No Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the absence of any basis for objection to the Second Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

---

[5] These professionals (not including the Debtors' counsel) are Analysis Research & Planning Corporation; Bates White, LLC; Caplin & Drysdale, Chartered; Hamilton, Rabinovitz & Associates, Inc.; Kramer Levin Naftalis & Frankel LLP; Legal Analysis Systems, Inc.; Stutzman, Bromberg, Essermann & Plifka, A Professional Corporation; and Dean M. Trafelet.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of No Objection* to the Second Fee Application.

Dated: Green Bay, Wisconsin
December 8, 2010.

GODFREY & KAHN, S.C.

By: */s/ Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

5673426_2