Hearing Date and Time: December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,                   :    Case No. 09-50026
     f/k/a General Motors Corp., *et al.*,              :    (Jointly Administered)
                                                        :
                              Debtors.                  :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**THIRD AND FOURTH INTERIM FEE APPLICATIONS OF LFR INC.**

**TO:   THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of*

*Limited Objection* in connection with the *Third Interim Application of LFR Inc. for Allowance of*

*Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the*

*Period February 1, 2010 Through May 30, 2010* [Docket No. 6539 ] (the "**Third Fee**

**Application**") and the *Fourth Interim Application of LFR Inc. for Allowance of Compensation*

*and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 1,*

*2010 Through September 30, 2010* [Docket No. 7756] (the "**Fourth Fee Application**"). With

this *Report and Statement of Limited Objection*, the Fee Examiner identifies $177,427.19 in fees and expenses, from a total of $1,398,586.82 requested in the Third Fee Application, that are objectionable, and $20,028.79 in fees and expenses, from a total of $251,216.65 requested in the Fourth Fee Application, that are objectionable.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

After reviewing the Third Fee Application, counsel for the Fee Examiner raised preliminary observations and concerns with LFR Inc. ("**LFR**") by letter dated October 6, 2010. Thereafter, the parties continued productive discussions and agreed to adjourn the hearing on the Third Fee Application to allow LFR time to compile additional supporting documentation.  On November 15, 2010, LFR provided additional information.

On December 1, 2010, the Fee Examiner sent LFR a draft of this *Report and Statement of Limited Objection*.  On December 3, 2010, LFR provided additional information, and the parties expect to reach a consensual resolution on all of the remaining issues on the Third and Fourth Fee Applications in advance of the hearing to present a stipulated agreement to the Court for its approval.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $177,427.19 in fees and expenses in connection with the Third Fee Application and $20,028.79 in fees and expenses in connection with the Fourth Fee Application.

## BACKGROUND

1.     Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are

2

authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1] Plan confirmation is anticipated in 2011.

3. On November 16, 2009, LFR filed its *First Interim Application of LFR Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 1, 2009 Through September 30, 2009* [Docket No. 4436] (the "**First Fee Application**"), seeking fees in the amount of $633,772.80 and expenses in the amount of $43,447.98 for total requested compensation of $677,220.78.

4. On March 15, 2010, LFR filed its *Second Interim Application of LFR Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1, 2009 Through January 31, 2010* [Docket No. 5270] (the "**Second Fee Application**"), seeking fees in the amount of $1,034,548.40 and expenses in the amount of $182,730.34 for total requested compensation of $1,217,278.74.

5. On April 20, 2010, LFR and counsel for the Fee Examiner discussed the issues raised, and LFR noted that it needed additional time to compile supporting materials before the scheduled April 29, 2010 hearing on the First Fee Application. As such, LFR and the Fee Examiner agreed to the *Stipulation and Order for Adjournment of April 29, 2010 Hearing on First Interim Fee Application of LFR Inc.* [Docket No. 5631] (the "**First Stipulated Adjournment**").

6. On April 22, 2010 the Fee Examiner filed the *Fee Examiner's Preliminary Report on the First Interim Fee Application of LFR Inc.* [Docket No. 5566].

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

3

7.      On or about June 21, 2010, LFR and counsel for the Fee Examiner discussed the issues raised, and LFR noted that it needed additional time to compile supporting materials before the scheduled June 29, 2010 hearing on the First and Second Fee Applications.  As such, LFR and the Fee Examiner agreed to the *Stipulation and Order for Adjournment of June 29, 2010 Hearing on Second Interim Fee Application of LFR Inc.* [Docket No. 6105] (the "**Second Stipulated Adjournment**").

8.      On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to First Interim Fee Application of LFR Inc. and Preliminary Report on Second Interim Fee Application of LFR Inc.* [Docket No. 6088 ] (the "**First Objection**"), identifying $23,161.51 in fees and expenses that were objectionable in connection with the First Fee Application and providing a preliminary analysis of the Second Fee Application.  That report and statement is incorporated by reference.

9.      On July 6, 2010, this Court issued an oral ruling that granted LFR's First Fee Application in part but required a continued holdback of 10 percent of LFR's requested fees.  On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by LFR.  *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402].  The Second Omnibus Order authorized payment to LFR of $630,769.03 for fees (which included the 10 percent holdback) and $23,842.74 for expenses**.**

4

10. On August 5, 2010, LFR filed its Third Fee Application, seeking fees in the amount of $1,010,871.20 and expenses in the amount of $387,715.62 for total requested compensation of $1,398,586.82.

11. By correspondence dated October 6, 2010, counsel for the Fee Examiner provided LFR with his preliminary analysis of the fees requested in the Third Fee Application, inviting LFR to submit any additional information in support of the application. The preliminary analysis included information related to:

    A. Clerical or administrative charges;

    B. Block billing;

    C. Compensation relating to fee applications;

    D. Fee discrepancies;

    E. Specificity of billing entries;

    F. Transient timekeepers;

    G. Timekeeping issues;

    H. Compliance with UST Guidelines;

    I. Fees for travel time;

    J. Subcontractors and subcontractor charges; and

    K. Expense detail.

LFR responded to this preliminary analysis on November 15, 2010.

12. On or about October 18, 2010, LFR and counsel for the Fee Examiner discussed the issues raised, and LFR noted that it needed additional time to compile supporting materials before the scheduled October 26, 2010 hearing on the Second and Third Fee Applications. As such, LFR and the Fee Examiner agreed to the *Stipulation and Order for Adjournment of*

*October 26, 2010 Hearing on Third Interim Fee Application of LFR Inc.* [Docket No. 7397] (the "**Third Stipulated Adjournment**").

13. On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of LFR Inc. and Preliminary Report on Third Interim Application of LFR Inc.* [Docket No. 7424] (the "**Second Objection**").

14. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), LFR reports it has previously submitted monthly statements and received payments from the Debtors totaling $730,758.31 for the period covered by the Third Fee Application. *See* Third Fee Application, ¶ 3.

15. On November 15, 2010, LFR filed its Fourth Fee Application seeking fees in the amount of $217,990.50 and expenses in the amount of $33,226.15 for total requested compensation of $251,216.65.

16. LFR reports that it has previously submitted monthly statements and received payments from the Debtors totaling $40,994.18 for the period covered by the Fourth Fee Application, consisting of $37,975.04 in requested fees and $3,019.14 in requested expenses. *See* Fourth Fee Application, ¶ 3.

17. On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications, including the Second Fee Application submitted by LFR. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009*

6

*Through January 31, 2010* (the "**Third Omnibus Order**") [Docket No. 7910]. Through the Third Omnibus Order, the Court approved LFR's Second Fee Application in the amount of $1,029,311.35 in fees and $182,296.20 in expenses, authorizing payment of $926,380.21 in fees and $182,296.20 in expenses and requiring a continued holdback of 10 percent.

      18.     On December 1, 2010, the Fee Examiner sent LFR a draft of this *Report and Statement of Limited Objection* with a limited objection to LFR's fees.

      19.     On December 3, 2010, LFR responded to some, but not all, of the Fee Examiner's concerns. All of the information provided by LFR has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

      20.     The Third and Fourth Fee Applications have been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided LFR with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

      21.     On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the interim period commencing June 1, 2010 (the "**Compensation Period**"), the Fee Examiner would discontinue the uniform practice, followed in earlier periods,

7

of outlining concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

22.     On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

23.     With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

24.     In applying this Court's ruling to the fee applications for the Compensation Period—and to the "carved-out" amounts in fee applications for the prior interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

    A.     The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[2]

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

8

      B.    For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised. On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

**Third Fee Application**

    25.    **UST Guideline Requirements**. LFR did not provide a blended rate for the Third Fee Application as required by the UST Guidelines at § (b)(3)(v). In addition, the Third Fee Application does not arrange all time and service entries by project category as required by § (b)(4)(i).[4]

*LFR has submitted revised time entries by project, but it still has not included required categories. Blended rate, $157.99, has been provided.*

*No disallowance suggested.*

---

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729, (Bankr. S.D.N.Y. Nov. 18, 2010) [Adelphia Docket No. 14445]. If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

[4] The project categories utilized by LFR do not include categories for administrative matters, fee applications, or responses to objections relating to fee applications as required by the UST Guidelines. *See* UST Guidelines at § (b)(4)(i) and Exhibit A.

9

26.     **Dates of Service**. Five time entries, totaling 15.5 hours, are for services provided outside the period covered by the Third Fee Application (the "**Interim Period**"). In addition, a multitude of time entries have no date at all for the services provided. Failure to include dates precludes a meaningful evaluation of time entries.

*LFR has submitted amended time entries, resolving this concern.*

27.     **Billing Detail**. Pursuant to the UST Guidelines at § (b)(4)(v), time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Time entries such as the following are non-compliant and should be amended.

| Tkpr | Date | Hours | Rate | Charges | Description |
|---|---|---|---|---|---|
| Pedersen | 03/25/10 | 2.1 [?] | 168 | ? | MLC Muncie Transmission (1316): completed the responses to IDEM's eight line comments on residual PCB issues (~0.2-0.3 hr each comment) |

*LFR has remedied most deficient time entries.*

28.     **Block Billing**. Block billing, raised in connection with LFR's First and Second Fee Applications, remains a concern with the Third Fee Application. Block billing is prohibited by the UST Guidelines at § (b)(4)(v). "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *Id*. The Fee Examiner identified some entries by LFR professionals for multiple tasks in excess of .5 hours in aggregate time that do not comply with this guideline. The entries indicating block billing total $3,796.40.

*LFR has submitted revised time entries, resolving this concern.*

29.     **Clerical and Administrative Charges**. Numerous billing entries, totaling $4,060.10 in fees, describe clerical or administrative non-compensable services that might more appropriately be charged as overhead.

10

*LFR has stipulated to a disallowance for non-billable clerical and administrative tasks: $3,059.70.*

30. **Vague Tasks**. The Fee Examiner has identified specific billing entries aggregating $7,554.50 that contain an insufficient description of a task and are non-compensable.

*LFR has submitted revised entries, resolving this concern.*

31. **Vague Communications**. Many LFR time entries for communications fail to indicate the parties to the communication, the type of communication, and the subject matter of the communication. UST Guidelines at § (b)(4)(v). This issue has been raised in connection with LFR's First and Second Fee Applications. Time entries of concern total $31,189.31.

*LFR has submitted corrected time entries for the majority, but not all, of the entries of concern.*

*Suggested disallowance for vague communications: $462.40.*

32. **Gaito Time Entries**. One timekeeper billed 830.1 hours in connection with the Third Fee Application. That is approximately 13 percent of the total hours in the compensation period. Approximately 15 percent of that time was made up of 57 entries that are substantially identical. This method of timekeeping inhibits the ability of interested parties to assess the services performed and whether such services were reasonable or necessary.

This individual worked, on average, seven hours a day, without a day off for the entire four months of the Interim Period. The total amount allocated to his work for that period, at $152.00 an hour, was $126,175.20, a significant portion of the entire amount of compensation for the period. With even some days off, the daily average would increase appreciably.

The Fee Examiner has invited comments on this amount of time reported in this Interim Period and whether it reflects an appropriate and accurate allocation of work.

*In response, LFR maintains the duplicate entries "accurately represent the activities [required of Mr. Gaito to meet his responsibilities]."*

*Suggested disallowance for time entries: $9,462.00 (50 percent of duplicate entries).*

11

33. **Travel**. The Fee Examiner identified a few time entries for travel in connection with services provided. The entries for travel do not indicate that time was billed at a reduced rate.

| **Tkpr** | **Date** | **Hours** | **Rate** | **Charges** | **Description** |
|---|---|---|---|---|---|
| Arnett | 02/08/10 | 1.0 | 80 | 80.00 | Drive to site (.5); drive back from site (.5) |
| Newcom | 02/08/10 | .9 | 77 | 69.30 | Returning to MW70-107R to collect additional sample volume (.9) |
| Arnett | 03/05/10 | .5 | 80 | 40.00 | Drive to site (.5) |
| | **Total:** | 2.4 | | 189.3 | |

*LFR maintains this travel time is fully compensable.*

*Suggested disallowance for travel: $94.65 (50 percent).*

34. **Transient Timekeepers**. Multiple timekeepers provided fewer than five hours of billable services during the Interim Period. The Fee Examiner has invited comment on whether all "transient" timekeepers added value to the services provided by LFR to the Debtors.

*This issue has been resolved in connection with administrative tasks. See paragraph 29 above.*

*Suggested disallowance: None.*

35. **Fee Discrepancies**. The Fee Examiner's review of the Third Fee Application revealed a potential over-billing to the estate, based on mathematical errors in totaling at least 142 time entries. This same issue resulted in overbilling to the estate in connection with the Second Fee Application. The Fee Examiner has requested an explanation of the review process for these entries as well as an updated complete review of the time records provided. The Fee Examiner's review also noted that five individuals are identified on the Third Fee Application,

12

Exhibit E, Summary of Hours and Fees by Professional, as having two different hourly rates during the Interim Period.

The Fee Examiner remains concerned with the significant number of fee discrepancies, in light of LFR's asserted review process. Individuals billed at two different rates, asserted by LFR to be task associated rates, have been allowed only at the lowest rate billed by each individual.

*Suggested disallowance: $2,341.14.*

36. **Double Billing**. The Fee Examiner has identified an instance of duplicate time entries.

*Agreed disallowance for double billing: $55.20.*

37. **Fee Applications, Fee Examiner Issues, and Monthly Fee Statements**. As addressed in Paragraph 25, above, LFR does not break time for fee applications or responding to the Fee Examiner into separate categories. Upon preliminary review, it appears that at least $11,615.00 has been billed to these matters in the Third Fee Application.

*LFR has not identified or voluntarily reduced its time entries pursuant to the Court's comments.*

*Suggested disallowance for fees related to fee review process: $5,807.50 (50 percent).*

38. **Expenses**. The Third Fee Application, Exhibit F, contains a Summary of Expenses. The detail of these expenses were insufficient for the Fee Examiner to determine whether the expenses are compensable.

    A.    <u>Sub-Retention of TEA, Inc.</u> The Fee Examiner remains concerned with the sub-retention of TEA, Inc., which has not been approved by the Court. In addition, properly documented time detail should be provided for these services, totaling $146,765.17.

13

B.      More than one professional in this case appears to have retained persons or firms that may be professionals within the meaning of section 327 without seeking Court approval, instead seeking reimbursement of that entity's fees as an expense. This raises the possibility that a professional could, either knowingly or inadvertently, circumvent the requirements and protections afforded by section 327. The issue of sub-retentions has been infrequently addressed by courts. At least one court, in the context of a sub-retention of a legal professional, has disallowed the reimbursement of the legal fees as an expense. *E.g.*, *In re Midland Capital Corp.*, 82 B.R. 233, 241 (Bankr. S.D.N.Y. 1988). The Fee Examiner suggests that similar treatment of sub-retained professionals may be appropriate for categories of non-legal professionals as well.

*LFR has remedied the documentation for the retention of TEA, Inc. but has failed to provide time detail. Time detail must comply with the Local Guidelines and the UST Guidelines.*

*Suggested disallowance for sub-contractor services:  $146,765.17.*

C.      <u>Subcontractor Charges</u>.  LFR has requested fees for administrative mark-up on subcontractor fees in the amount of $6,118.72, in addition to requesting reimbursement of subcontractor copies beyond the $0.10 per page cap. The issue of administrative mark-up was previously raised and addressed in connection with LFR's First Fee Application, wherein LFR agreed that these charges were properly disallowed. Additional "surcharge" fees by subcontractors total $24,772.17, for which no explanation has been provided.

*LFR has resolved concerns relating to expedited laboratory test results.*

*Suggested disallowance for copy over-charges:  $89.98.*

*Suggested disallowance for administrative over-charges:  $6,118.72.*

14

D. **Copies and Reproductions**. Most requests for reimbursement of copies were accompanied by sufficient documentation. Some receipts for services do not limit charges to $0.10 per page for copies, however, or provide any basis for LFR's requesting application of an alternative standard:

| | | |
|---|---|---|
| Dentch | 3/17/10 | $ 149.29 |
| Brighton | 4/01/10 | $ 9.40 |
| Novi | No date | $2,167.50 |
| Novi | No date | $ 402.22 |

*LFR has submitted documentation resolving a limited number of concerns.*

*Suggested disallowance for copies in excess of $0.10 or for undocumented copies: $2,657.51.*

E. Federal Express Charges. The Fee Examiner has requested further detail in connection with January (outside the Interim Period) and February Federal Express charges, averaging in excess of $100.00 each.

*LFR has provided further detail, resolving this concern.*

F. Equipment Rental. The Fee Examiner has requested further detail in connection with undocumented equipment rental in the total amount of $5,290.69.

*LFR has provided further detail, resolving this concern.*

F. In-House Equipment Rental. We note that certain cell phone expenses have been categorized as "in house equipment rental," which the Fee Examiner would generally treat as non-compensable overhead.

*LFR submits that cell phones are required on site as a health and safety precaution. This does not elevate routine cell phone costs to a compensable expense.*

*Suggested disallowance: $200.80.*

15

G.  Hotel and Airfare.  Certain charges submitted for reimbursement appear excessive.

| | | | | |
|---|---|---|---|---|
| Morrow | 2/04/10 | Flight-Roundtrip | BOS to PHL | $1,066.40 |
| Gaito | 4/12/10 | Renaissance Hotel | D.C. | $ 456.85 |

*LFR has submitted additional detail, resolving these concerns.*

G.  Meals.  LFR has requested reimbursement for meal expenses in the amount of $799.41.  An agreed disallowance of $312.42 will reduce meal expenses to the $20.00 meal limitation set forth in the Advisories.

*Agreed disallowance: $312.42.*

**Third Fee Application Summary**

*Total fees suggested for disallowance: $21,282.59.*

*Total expenses suggested for disallowance: $156,144.60.*

*Total fees and expenses recommended for disallowance: $177,427.19.*

**Fourth Fee Application**

39.  **Project Staffing**.  LFR has provided services at a blended rate of $148.69 for the Compensation Period.  Staffing appears appropriate.  The Fourth Fee Application, however, does not arrange all time and services entries by project category as required by the UST Guidelines at § (b)(4)(i).[5]  This concern was expressed by the Fee Examiner in the Second Objection.

*No disallowance suggested.*

40.  **Travel Time**.  Non-working travel time will be compensated at 50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at

---

[5] The project categories utilized by LFR do not include categories for administrative matters, fee applications, or responses to objections relating to fee applications as required by the UST Guidelines.  *See* UST Guidelines at § (b)(4)(i), and Exhibit A.

16

one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Advisories have requested that travel time be itemized separately. LFR has billed travel at 50 percent in the Fourth Fee Application.

*Suggested disallowance: None.*

41. **Clerical and Administrative Charges**. Numerous billing entries describe clerical or administrative services that may not be compensable, including entries that describe "database activities." Collectively, these entries total 44.9 hours, aggregating $2,814.40.

*Suggested disallowance: $1,407.20 (50 percent).*

42. **Vague Tasks**. The Fee Examiner has identified specific billing entries totaling 15 hours, in the aggregate amount of $2,354.60, that contain an insufficient description of a task and appear to be non-compensable.

*Suggested disallowance: $1,177.30 (50 percent).*

43. **Fee Examiner Issues**. In its Fourth Fee Application, LFR did not segregate time for fee applications or responding to the Fee Examiner into separate categories. Upon preliminary review, it appears that at least $5,084.70 has been billed to these matters in the Fourth Fee Application in response to the Fee Examiner. This amount falls within the safe harbor for the Compensation Period.

*Suggested disallowance: None.*

44. **Gaito Time Entries**. In connection with the Fourth Fee Application, Mr. Gaito continued to utilize vague and substantially identical time entries for an aggregate of 29.6 hours or $4,499.20. As addressed above, and in the Second Objection, this method of timekeeping inhibits the Court's ability to assess the services performed and whether such services were reasonable or necessary.

17

*Suggested disallowance for Gaito time entries: $2,249.60 (50 percent).*

45. **Expenses**. The Fourth Fee Application, Exhibit E, contains a Summary of Expenses. The expenses are generally unobjectionable, with the notable exceptions of improper time detail for subcontractors and continuing mark-up on charges by subcontractors.

    A. <u>Sub-Retention of TEA, Inc.</u> As discussed in Paragraph 38, above, the Fee Examiner remains concerned with insufficient time detail provided for these subcontractor services, totaling $29,712.00. Although TEA, Inc. did improve its timekeeping, more than fifty percent of the time detail still had significant issues with block billing, vague tasks and vague communications. These time details for subcontractors fail to follow the UST Guidelines at § (b)(4)(v).

*Suggested disallowance for insufficient time detail: $14,856.00 (50 percent).*

    B. <u>Subcontractor Charges</u>. LFR has requested fees for administrative mark-up on subcontractor fees for conference calls totaling $35.78. In addition, LFR has requested reimbursement of subcontractor copies beyond the $0.10 per page cap totaling $302.91. The issue of administrative mark-up has been previously raised by the Fee Examiner and addressed in connection with LFR's First Fee Application. At that time, LFR agreed that these charges were properly disallowed.

*Suggested disallowance for subcontractor mark-up: $338.69.*

**Fourth Fee Application Summary**

*Total fees suggested for disallowance: $4,834.10.*

*Total expenses suggested for disallowance: $15,194.69.*

*Total fees and expenses recommended for disallowance: $20,028.79.*

18

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Third and Fourth Fee Applications. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to LFR's Third and Fourth Fee Applications.

Dated: Green Bay, Wisconsin
December 8, 2010.

GODFREY & KAHN, S.C.

By:    */s/ Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
           tnixon@gklaw.com

*Attorneys for Fee Examiner*

5684775_3