Hearing Date and Time: December 15, 2010 at 2:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.,*                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*                  :    (Jointly Administered)
                                                           :
                Debtors.                                   :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO
FOURTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**

TO:   THE HONORABLE ROBERT E. GERBER
      UNITED STATES BANKRUPTCY JUDGE

> NOTE: THE FEE EXAMINER IS WELL AWARE THAT FTI CONSULTING, INC. ("**FTI**") IS RECEIVING A FIXED MONTHLY FEE FOR ITS SERVICES FOR THE CREDITORS' COMMITTEE. LIKE THE REPORTS THAT HAVE PRECEDED IT, HOWEVER, THIS *REPORT AND STATEMENT OF LIMITED OBJECTION* IS INTENDED TO NOTE THE CONCERNS THAT MAY WELL SPAN THE COURSE OF THIS PROCEEDING AND COME TO THE COURT'S ATTENTION AT A FINAL HEARING ON COMPENSATION. THESE INTERIM REPORTS ALSO CALL ATTENTION TO EXPENSES THAT MAY NOT COMPLY WITH THE APPLICABLE RULES AND GUIDELINES. THE FEE EXAMINER DOES NOT ASK FOR AN INTERIM REDUCTION IN FTI'S COMPENSATION AND DOES NOT INTEND TO ADDRESS THIS REPORT AT THE HEARING SCHEDULED FOR DECEMBER 15, 2010.

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Fourth Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 1, 2010 Through September 30, 2010* [Docket No. 7775] (the "**Fourth Fee Application**"). With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $36,178.19 in fees, from a total of $2,004,827.53 requested in the Fourth Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

In general, the Fourth Fee Application appears substantively sound, prepared with apparent care. It requests a total of $2,004,827.53. On December 1, 2010, the Fee Examiner sent FTI a draft of this *Report and Statement of Limited Objection*. On December 3 and 6, 2010, FTI provided comments on the draft report.

This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a disallowance of $36,178.19 in fees.

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated procedurally and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2

2.  On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1]  Plan confirmation is anticipated in 2011.

3.  On November 16, 2009, FTI filed its *First Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 3, 2009 Through September 30, 2009* (the "**First Fee Application**") [Docket No. 4455], seeking fees and expenses in the amount of $4,509,537.09.

4.  On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of FTI Consulting, Inc.* [Docket No. 5557] (the "**First Objection**"), identifying $191,972.53 in fees and expenses that were objectionable.  That report and statement is incorporated by reference.

5.  On April 29, 2010, this Court issued an oral ruling that granted FTI's First Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees.  On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Omnibus Order**") [Docket No. 5834] approving a series of interim fee applications, including the application submitted by FTI.  The Omnibus Order authorized payment to FTI of $4,435,036.25 for fees (which included the 10 percent holdback) and $73,248.33 for expenses.

6.  On March 16, 2010, FTI filed its *Second Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1, 2009 Through January 31, 2010* [Docket No. 5279] (the

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

3

"**Second Fee Application**"), seeking fees in the amount of $2,066,666.00 and expenses in the amount of $18,756.18, for total requested compensation of $2,085,422.18.

7. On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of FTI Consulting, Inc.* [Docket No. 6082] (the "**Second Objection**"), identifying $173,990.82 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

8. On July 6, 2010, this Court issued an oral ruling that granted FTI's Second Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees. On July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by FTI. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 through September 30, 2009* (the "**Second Omnibus Order**") [Docket No. 6402]. The Second Omnibus Order authorized payment to FTI of $2,066,666.00 for fees (which included the 10 percent holdback) and $18,688.23 for expenses.

9. On August 5, 2010, FTI filed its *Third Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period February 1, 2010 Through May 31, 2010* [Docket No. 6536] (the "**Third Fee Application**"), seeking fees in the amount of $2,000,000.00 and expenses in the amount of $11,713.21, for total requested compensation of $2,011,713.21 (the "**Third Interim Period**").

4

10. On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Third Interim Fee Application of FTI Consulting, Inc.* [Docket No. 7419] (the "**Third Objection**"), identifying $72,888.29 in fees and expenses that were objectionable. That report and statement is incorporated by reference.

11. On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications for the Third Interim Period, including FTI's. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* (the "**Third Omnibus Order**") [Docket No. 7910]. Through that Third Omnibus Order, the Court approved FTI's Third Fee Application in the amount of $1,976,822.56 in fees and $10,944.88 in expenses, authorizing payment of $1,779,140.30 in fees and $10,944.88 in expenses, and requiring a "carve-out" of $23,177.44 and a continued holdback of 10 percent of FTI's requested fees.

12. On November 15, 2010, FTI filed its Fourth Fee Application, seeking fees in the amount of $2,000,000.00 and expenses in the amount of $4,827.53, for total requested compensation of $2,004,827.53.

13. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), FTI reports it has previously submitted monthly statements and received payments from the Debtors totaling $1,205,224.24 for the period covered by the Fourth Fee Application. As of the date of the Fourth Fee

5

Application, FTI reported it had not yet received payment for September fees. *See* Fourth Fee Application, Exhibit C.

14. On December 1, 2010, the Fee Examiner sent FTI a draft of this *Report and Statement of Limited Objection* with a limited objection to FTI's fees and expenses, offering an opportunity for discussion.

15. All of the information provided by FTI has been considered by the Fee Examiner.

## APPLICABLE STANDARDS

16. The Fourth Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**" and, together with the First Advisory, the "**Advisories**"), as well as this Court's Compensation Order—including the extent, if any, that variation has been expressly permitted by order. In addition, the Fee Examiner has provided FTI with a draft memorandum summarizing the Court's April 29 and July 6, 2010 rulings on fees and expenses.

17. On November 16, 2010, the Fee Examiner also provided all of the professionals with notice that, effective for the interim period commencing June 1, 2010 (the "**Compensation Period**"), the Fee Examiner would discontinue the uniform practice, followed in earlier periods, of outlining concerns about an applicant's fee application in a formal letter at least one week prior to providing a copy of the draft report to the applicant.

6

18.     On November 23, 2010, the Court issued a bench decision on two open questions involving professional fees. It decided, prospectively, that "[r]etained professionals are to provide written notice of upcoming increases in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard. *In re Motors Liquidation Company*, Bench Decision on Pending Fee Issues, at 2, No. 09-50026 (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 7896]. It eliminated any requirement to more widely "post notice of upcoming increases on ECF." *Id.*

19.     With respect to time spent responding to fee objections or inquiries, the Court held that it would "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails." In contrast, the applicant "should indeed bear its own legal expenses for addressing the objection to its fees" in instances where "the outcome is a split decision, or the fee applicant otherwise fails to substantially prevail." *Id.*

20.     In applying this Court's ruling to the fee applications for the Compensation Period—and to the "carved-out" amounts in fee applications for the prior interim period—the Fee Examiner now has established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

A.      The Fee Examiner will not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[2]

B.      For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the

---

[2] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

7

inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised. On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[3]

## COMMENTS

21.    **Compensation Structure**. FTI's compensation structure provides for payment of a $500,000 fixed fee (the "**Monthly Fixed Fee**") for each month of service during the Compensation Period. During the Monthly Fixed Fee period, FTI is required to maintain time records only in half hour increments. In addition to the Monthly Fixed Fee, FTI will receive reimbursement of actual and necessary expenses. For the purposes of calculating suggested disallowances, the Fee Examiner has used FTI's blended rate from its First Fee Application of $588.26 (the "**Blended Rate**").[4]

From the outset, it should be noted that one aspect of evaluating a flat fee for reasonableness is to divide the flat fee by the hours of service provided for the flat fee period. During the period of time covered by the Monthly Fixed Fee in the First Fee Application, this calculation yielded $475.46. In the Second and Third Fee Application, this calculation yielded

---

[3] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation." *See In re Adelphia Commc'ns Corp.*, Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729, (Bankr. S.D.N.Y. Nov. 18, 2010) [Adelphia Docket No. 14445]. If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

[4] FTI was engaged on an hourly basis between June 3 and July 10, 2009. *See* Second Fee Application at ¶ 8.

8

$588.21 and $677.83, respectively, and in the Fourth Fee Application, this calculation yielded $617.19, if no recommended disallowances are ultimately accepted.

The Fee Examiner does not anticipate that the suggested disallowances will result in a reduction of the Monthly Fixed Fee. It is appropriate, however, for a record to be made of the recommendations and concerns because, at the least, they are relevant to FTI's final fee application and an understanding of the reasonableness of the requested fees. For these reasons, FTI's customary response—that where and how staff spends its time is irrelevant when a firm is compensated on a fixed fee basis—does not preclude interim review or comment.

22. **Scope of Work**. FTI is the financial consultant for the Committee of Unsecured Creditors (the "**Creditors' Committee**"), and it has negotiated a Monthly Fixed Fee for its remaining representation of the Creditors' Committee. The Fee Examiner has concerns about the scope of the work to be performed by FTI, as financial consultant for the Creditors' Committee, in light of the Creditors' Committee's defined statutory role and the unique nature of this proceeding.

23. In connection with the Second and Third Fee Applications, the Fee Examiner noted FTI's focus on understanding GM sales programs, marketing campaigns, current operating results, and wind down monitoring. All of these services were focused on evaluating the potential recoveries to unsecured creditors. This concern continues in the Fourth Fee Application as 167.3 hours were spent on current operating results and events—all for "New GM"—386.3 hours were billed to valuation and related matters, and 436.9 hours were described as wind down monitoring.

*These services were provided at the request of the Creditors' Committee, according to FTI, and are an effort to value the assets available for distribution to the unsecured creditors. However, since the composition of assets will not change, the Fee Examiner continues to question whether the tasks are an appropriate use of FTI resources by the Creditors' Committee,*

9

*and whether the time expended is excessive since the services rendered do not provide corresponding benefit to the Creditors' Committee constituency.*

*Suggested disallowance: To be determined.*

24. **Project Categories**. The project categories utilized by FTI do not include a category for administrative matters as required by the UST Guidelines at § (b)(4)(i). The utilization of these categories facilitates the Court's review. This issue was raised by the Fee Examiner in the Third Objection.

25. **Time Increment Analysis**. The Local Guidelines require professionals to bill in increments of one-tenth of an hour. However, during periods covered by the Monthly Fixed Fee, FTI is required only to maintain time records in half hour increments. Nonetheless, on most occasions FTI has provided time detail in tenth of an hour increments.

26. **Vague Communications**. The Fee Examiner has identified a few specific billing entries that fail to comply with the UST Guidelines. Specifically, "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication." UST Guidelines at § (b)(4)(v). Calls regarding "case status" and "case issues" fail to comply with the UST Guidelines.

*Suggested disallowance for vague communications: None.*

27. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (nonproductive travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein,* 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). In accordance with the Advisories, FTI has itemized travel time separately and reduced travel time accordingly in the Fourth Fee Application.

10

*Suggested disallowance for travel time: None.*

28. **Multiple Attendees**. The number of FTI professionals attending a single meeting or telephone conference continues to decline, although multiple attendance remains a concern.

*Suggested disallowance for multiple attendees: None.*

29. **Fee Applications and Fee Examiner Issues**. FTI reports 71.3 billable hours, representing $41,942.93 in fees at the Blended Rate, billed for Project Code 33, "Response to Fee Examiner." In addition, 137.4 billable hours, representing $80,826.92 at the Blended Rate, were expended on Project Code 24, "Preparation of Fee Application." It is noteworthy that many entries in Project Code 24 related to responding to the Fee Examiner. Because of this Court's ruling that fees for reviewing bills are compensable at only 50 percent, whereas fees for preparing the fee application itself are compensable at 100 percent, professionals are encouraged to segregate in the fee application or time detail the different types of fee application services into appropriate categories. The failure to self-segregate the fees renders the fee review process less efficient. Having reviewed the time detail, the Fee Examiner suggests a 25 percent reduction for preparation of fee application because it appears that approximately half of the time spent relates to the fee application process.

*Suggested disallowance for fee application services: $20,206.73 (25 percent).*

30. **Fee Inquiry Time**. The Fee Examiner identified $41,942.93 in fees related to responding to the Fee Examiner. $31,942.93 of that amount falls outside the $10,000 safe harbor applicable to the Compensation Period.

*Suggested disallowance for fees related to fee review process: $15,971.46 (50 percent).*

31. **Expenses.** The Fourth Fee Application, Exhibit F, contains an expense summary. The expenses are generally unobjectionable.

*Suggested disallowance for expenses: None.*

> *Total fees suggested for disallowance:  $36,178.19[5].*
>
> *Total expenses suggested for disallowance:  None.*
>
> *Total fees and expenses recommended for disallowance:  $36,178.19.*

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fourth Fee Application.  It is not intended to be an exhaustive or exclusive list of *possible* objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to FTI's Fourth Fee Application.

---

[5] As stated in the opening paragraph of this *Report and Statement of Limited Objection*, the Fee Examiner is not seeking an interim reduction in FTI's compensation.  "Suggested disallowance" refers to fee requests properly considered by the Court in connection with FTI's final fee application.

Dated: Green Bay, Wisconsin
December 8, 2010.

              GODFREY & KAHN, S.C.

          By:   */s/ Carla O. Andres*
              Carla O. Andres (CA 3129)
              Timothy F. Nixon (TN 2644)

              GODFREY & KAHN, S.C.
              780 North Water Street
              Milwaukee, Wisconsin 53202
              Telephone: (414) 273-3500
              Facsimile: (414) 273-5198
              E-mail: candres@gklaw.com
                  tnixon@gklaw.com

              *Attorneys for Fee Examiner*

5673474_3