UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

HEARING:         December 15, 2010 (9:45 a.m.)
OBJECTIONS:      December 10, 2010

-------------------------------------------------------- x
In re:                                                  :
                                                        : Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                     :
f/k/a/ General Motors Corp., et al.,                    : Case No. 09-50026 (REG)
                                                        :
                        Debtors.                        : (Jointly Administered)
                                                        :
-------------------------------------------------------- x

# RESPONSE OF THE UNITED STATES TRUSTEE

# REGARDING THIRD INTERIM APPLICATIONS

# FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

# (December 15, 2010 HEARING)

## TABLE OF CONTENTS

I.      Summary Statement                                                          1

II.     Jurisdiction, Venue and Statutory Predicates                                5

III.    Factual Background                                                          6

IV.     Legal Standards                                                             9

        A.      The United States Trustee Has a Duty to Review and
                Comment Upon Applications for Compensation and
                Object When Appropriate

        B.      Each Professional Seeking Compensation Bears the            10
                Burden of Establishing That Its Requested Compensation
                is Reasonable, and the Court's Review for Reasonableness
                Protects the Estate from Overreaching

        C.      Interim Compensation                                        14

        D.      Actual and Necessary Expenses                               15

V.      Response                                                            16

        A.      General Statement Applicable to All Professionals           16

        B.      Specific Response Regarding the Individual Applications      17

                1.      Hourly Rate Increases                               18

                2.      Compensation for the Fee Review Process             20

VI.     Conclusion                                                          22

# TABLE OF AUTHORITIES

## Reported Decisions

In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002)                    13, 14

In re American Preferred Prescription, Inc., 218 B.R. 680                    16
    (Bankr. E.D.N.Y. 1998)

In re Bank of New England Corp., 134 B.R. 450 (Bankr. D. Mass. 1991),        16
    aff'd, 142 B.R. 584 (D. Mass. 1992)

In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987)                           14

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007)                            13

In re Benassi, 72 B.R. 44 (D.Minn.1987)                                     13

In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997)            13, 14, 16

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988)                     13

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007)                            6

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994)            14

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995)                13, 14, 16

In re Codesco, Inc., 15 B.R. 354 (Bankr. S.D.N.Y. 1981)                    15

Cohen & Thiros v Keen Enters., 44 B.R. 570 (N.D. Ind.1984)                13

Matter of Consolidated Bancshares, Inc., 785 F.2d 1249 (5th Cir.1986)    13

In re Engel, 124 F.3d 567 (3d Cir. 1997)                                   12

In re Evans, 153 B.R. 960 (Bankr. E.D. Pa. 1993)                           14

In re Fibermark, Inc., 349 B.R. 385 (Bnkr. D. Vt. 2006)                    20

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982)            14, 15

In re General Coffee Corp., 39 B.R. 7 (Bankr. S.D. Fla. 1984)             15

In re Hillsborough Holdings Corp., 125 B.R. 837 (Bankr. M.D. Fla. 1991)                    15

Howard & Zukin Capital v. High River Ltd. P'ship,                                          12
        No. 05 Civ. 5726 (BSJ), 2007 WL 1217268 (S.D.N.Y., Apr. 24, 2007)

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.),                          12
        210 B.R. 19 (Bankr. 2d Cir. 1997)

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997)                                     12

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005)                  16

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993)                                12

In re Lee Tractor Co., Inc., 2008 WL 2788413 (Bankr. E.D.N.C. 2008)                        18

In re Manoa Fin. Co., Inc., 853 F.2d 687 (9th Cir. 1998)                                   13

In re Meade Land and Dev. Co., 527 F.2d 280 (3rd Cir.1975)                                 13

In re National Buy-Rite, Inc., 10 B.R. 380 (Bankr. N.D. Ga. 1981)                         15

In re National Paragon Corp., 87 B.R. 11 (E.D. Pa.1988)                                    13

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008)                        12

In re Reconversion Techs, Inc., 216 B.R. 46 (Bankr. N.D. Okla. 1997)                       18

In re Spanjer Bros., Inc., 191 B.R. 738 (Bankr. N.D. Ill. 1996)                           12, 14

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987)                               16

In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650 (Bankr. W.D.N.Y. 2001)     20

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995)                                     13

In re Temple Retirement Community, Inc., 97 B.R. 333 (Bankr. W.D.Tex.1989)                 13

In re Teraforce Tech. Corp., 347 B.R. 838 (Bankr. N.D. Tex. 2006)                          18

In re UNR Indus., Inc., 72 B.R. 796  (Bankr. N.D. Ill. 1987)                               15

Zolfo, Cooper & Co. v.Sunbeam-Oster Co., Inc., 50 F.3d 253 (3d Cir. 1995)          13

## Statutes

11 U.S.C. § 101 et seq., the "Bankruptcy Code"
    11 U.S.C. § 105(a)                                          8
    11 U.S.C. § 326                                            10
    11 U.S.C. § 327                                            11
    11 U.S.C. § 328                                            10
    11 U.S.C. § 329                                            10
    11 U.S.C. § 330                              5, 10, 12, 14, 20
    11 U.S.C. § 330(a)(1)                                       10
    11 U.S.C. § 330(a)(1)(A)                                    11
    11 U.S.C. § 330(a)(1)(B)                                 15 , 16
    11 U.S.C. § 330(a)(3)                                    11, 12
    11 U.S.C. § 330(a)(3)(E)                                    20
    11 U.S.C. § 330(a)(3)(F)                                    20
    11 U.S.C. § 331                                         5, 8,14
    11 U.S.C. § 586                                            10
    11 U.S.C. § 1103                                           11
    11 U.S.C. § 1107(a)                                         6
    11 U.S.C. § 1108                                            6
    11 U.S.C. § 1121(d)                                         8
28 U.S.C. § 157                                                 5
28 U.S.C. § 157(b)                                              5
28 U.S.C. § 586(a)(3)(A)(i)-(ii)                               10
28 U.S.C. § 1334                                                5
28 U.S.C. § 1408                                                5
28 U.S.C. §  1930(a)(6)                                         9

## Federal Rules, Local Rules, Local Orders & Other Guidelines

Federal Rule of Bankruptcy Procedure 2016                         5, 12, 20

Federal Rule of Bankruptcy Procedure 2016(a)                             12

Local Bankruptcy Rules for the Southern District of New York, Rule 2016-1          5

Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in          5, 6
Southern District of New York Bankruptcy Cases

United States Trustee Guidelines for Reviewing Applications for Compensation and          5
Reimbursement of Expenses Filed Under 11 U.S.C. § 330

**RESPONSE OF THE UNITED STATES TRUSTEE REGARDING SECOND INTERIM
APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES (December 15, 2010 Hearing)**

TO:    THE HONORABLE ROBERT E. GERBER,
       UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the **"United States Trustee"**),

has reviewed the fourth interim applications for compensation and reimbursement of expenses

(the **"Applications"**) filed by the retained professionals (the **"Retained Professionals"**).  With

exceptions involving two Retained Professionals, the Applications seek awards of compensation

and reimbursement of out-of-pocket expenses for the period from June 1, 2010 through

September 20, 2010 (the **"Fourth Fee Period"**).

## I. SUMMARY STATEMENT

As set forth in the table below, for services performed during the Fourth Fee Period, the

Retained Professionals seek interim allowances of fees totaling $16,394,616.88, and

reimbursement of out-of-pocket expenses totaling $503,457.37, for total compensation of

$16,898,074.25 for the Fourth Fee Period.  The two Retained Professionals who performed

services during the third fee period (February 1, 2010 through May 31, 2010) seek interim

allowance of fees totaling $1,427,170.00 and reimbursement of out-of-pocket expenses totaling

$402,646.19, for total compensation of $1,829,916.19.  At the hearing on December 15, 2010, all

Retained Professionals seek interim allowance of fees totaling $17,821,886.88 and

reimbursement of out-of-pocket expenses totaling $906,113.56, for total compensation of

$18,728,000.44.

The United States Trustee continues to object to two broad categories of fees sought in

the Applications.  First, certain Retained Professionals unilaterally implemented hourly rate

-1-

increases during the case, but they have not proved that the increases are reasonable, particularly

as measured against similarly-skilled non-bankruptcy practitioners.  The United States Trustee

concurs with the Fee Examiner that comparison to market rates outside of bankruptcy is one of

the critical factors required by the Bankruptcy Code in assessing reasonableness.  In addition to

the benchmarking rate studies offered by the Fee Examiner in his report, it is conceivable

additional data on market rates should be gathered and analyzed before one can conclude

definitively that these are the comparable benchmarks.  Accordingly, the United States Trustee

reserves her rights to conduct discovery on comparable rates and to offer other evidence for the

Court's consideration on what is reasonable when measured against comparable billing practices

outside of bankruptcy.  Second, with respect to the fees sought for responding to United States

Trustee or Fee Examiner inquiries about or objections to fees and expenses–so-called "fees on

fees," based upon this Court's Bench Decision of November 23, 2010, the United States Trustee

supports the Fee Examiner's implementation of this Court's "fees on fees" ruling under the

circumstances of these cases.

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Weil Gotshal & Manges, LLP, Debtors' counsel | June 1, 2010 - Sept. 30, 2010 | $6,903,518.50 | $132,720.16 | 11,959.40 |
| Kramer Levin Naftalis & Frankel, LLP, Committee's Counsel | June 1, 2010 - Sept. 30, 2010 | $1,910,485.75 | $36,695.51 | 3,222.75 |
| Caplin & Drysdale, Chartered, Special Counsel to the Committee | June 1, 2010 - Sept. 30, 2010 | $593,511.50 | $36,161.57 | 1,324.20 |

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Stutzman, Bromberg, Esserman & Plifka, Counsel to Dean M. Trafelet | June 1, 2010 - Sept. 30, 2010 | $315,498.50 | $4,271.59 | 731.50 |
| Dean M. Trafelet, Counsel for future asbestos personal injury claimants | June 1, 2010 - Sept. 30, 2010 | $42,036.75 | $95.75 | 53.70 |
| Analysis Research Planning Corp., Asbestos Claims Valuation Consultant to Dean M. Tafelet | June 1, 2010 - Sept. 30, 2010 | $205,538.50 | $857.22 | 1,245.30 |
| Bates White LLC, Asbestos Liability Consultant to the Committee | June 1, 2010 - Sept. 30, 2010 | $906,669.25 | $6,426.41 | 2,754.30 |
| Brownfield Partners, LLC, Debtors' environmental consultant | June 1, 2010 - Sept. 30, 2010 | $58,415.68 | $20,125.99 | 201.40 |
| Butzel Long, PC, Committee's special counsel | June 1, 2010 - Sept. 30, 2010 | $433,892.50 | $32,647.29 | 994.80 |
| Deloitte Tax, LLP, Tax Services Provider to the Debtors | June 1, 2010 - Sept. 30, 2010 | $369,592.00 | $55.00 | 546.30 |
| FTI Consulting, Inc., Committee's financial advisor | June 1, 2010 - Sept. 30, 2010 | $2,000,000.00 | $4,827.53 | 3,240.50 |
| Hamilton Rabinovitz & Associates, Inc., Asbestos Consultant to the Committee | June 1, 2010 - Sept. 30, 2010 | $28,462.50 | $0.00 | 59.65 |

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Jenner & Block LLP, Debtors' special counsel | June 1, 2010 - Sept. 30, 2010 | $14,239.00 | $721.46 | 29.60 |
| Legal Analysis Systems, Inc., Consultant on the valuation of asbestos for the Committee | June 1, 2010 - Sept. 30, 2010 | $166,956.50 | $2,510.26 | 269.60 |
| LFR Inc., Debtors' environmental consultant | June 1, 2010 - Sept. 30, 2010 | $217,990.50 | $33,226.15 | 1,466.10 |
| Plate & Moran, PLLC, Accountants to the Debtors | June 1, 2010 - Sept. 30, 2010 | $289,673.05 | $3,871.79 | 1,637.20 |
| Pricewaterhouse-Coopers LLP, (first & final application) - Special Accountants to the Debtors | June 1, 2010 - Sept. 30, 2010 | $1,777,725.90 | $187,269.80 | 6,841.90 |
| The Claro Group, Debtors' environmental consultant | June 1, 2010 - Sept. 30, 2010 | $46,810.50 | $402.43 | 126.50 |
| Togut Segal & Segal LLP, Conflicts Counsel to the Debtors | June 1, 2010 - Sept. 30, 2010 | $113,600.00 | $581.46 | 211.60 |
| **4th Interim Total** | | **$16,394,616.88** | **$503,467.37** | **36,916.30** |
| Brownfield Partners,[1] LLC, Debtors' environmental consultant | Feb. 1, 2010 - May 31, 2010 | $416,398.80 | $14,930.57 | 1,413.50 |

---

[1] Adjourned Third Interim Fee Applications.

-4-

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| LFR Inc., Debtors'[2] environmental consultant | Feb. 1, 2010 - May 31, 2010 | $1,010,871.20 | $387,715.62 | 6,398.40 |
| **Adjourned Total** | | **$1,427,270.00** | **$402,646.19** | **7,981.19** |
| **Grand Total** | | **$17,821,886.88** | **$906,113.56** | |

## II.  JURISDICTION, VENUE AND STATUTORY PREDICATES

1.       The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

pursuant to 28 U.S.C. § 1408.

2.       The statutory predicates for the relief sought in the Applications are sections 330

and 331 of title 11, United States Code (the **"Bankruptcy Code"**).  This matter was initiated

pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**),

Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the **"Local

Rules"**), Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals

in Southern District of New York Bankruptcy Cases (the **"Local Guidelines"**), and the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 (the **"UST Guidelines,"** together with the Local

Guidelines, are referred to herein collectively as the **"Guidelines"**).[3]

---

[2]  Adjourned Third Interim Fee Applications.

[3] The Bankruptcy Court for this judicial district has adopted the UST Guidelines.  See In re Brous, 370 B.R. 563, 569 at n.8. (Bankr. S.D.N.Y. 2007); and Administrative Order M-389 at 1.

## III. FACTUAL BACKGROUND

3.      On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors

Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed

voluntary cases under Chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate and manage their business and properties as

debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has

been appointed in the Debtors' bankruptcy cases.

5.      On June 3, 2009, the United States Trustee appointed the Official Committee of

Unsecured Creditors (the **"Creditors' Committee"**).  Docket No. 356.  On November 30, 2009,

the United States Trustee filed the First Amended Appointment of Official Committee of

Unsecured Creditors.  Docket No. 4552.

6.      On March 5, 2010, the United States Trustee appointed the Committee of

Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**).  Docket

No. 5206.

7.      On June 1, 2009, the Debtors filed a motion seeking the entry of an order

authorizing and approving the sale of substantially all of their assets to NGMCO, Inc., a U.S.

Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase

Agreement, dated as of June 26, 2009, together with all documents and agreements as well as all

exhibits, schedules and addenda thereto (as amended, the **"MPA"**).  Docket No. 92.

8.      On July 5, 2009, the Court entered an Order (I) Authorizing Sale of Assets

Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a

U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief was entered (the **"Sale Order"**).  Docket No. 2968.

9.      On July 9, 2009, NGMCO, Inc. filed the required documentation to change its name to General Motors Company ("**GMCo.**").

10.      On July 10, 2009, pursuant to the MPA and this Court's Sale Order, GMCo. acquired substantially all of the assets of the Debtors.

11.      Since then, under the jurisdiction and supervision of this Court, the Debtors have engaged in an orderly wind-down of their remaining assets and business affairs.

12.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee entered into a stipulation for the appointment of Brady C. Williamson as fee examiner (the **"Fee Examiner"**).  Docket No. 4707.  Pursuant to the Stipulation and Order With Respect to Appointment of a Fee Examiner (the **"Fee Examiner Order,"** entered December 23 2009), the Court approved the appointment.

13.      On February 16, 2010, under the Fee Examiner Order, the Fee Examiner filed his First Status Report and Advisory, which summarizes the applicable standards and guidelines for the Fee Examiner's review of applications to approve reasonable fees and reimburse reasonable costs in the Debtors' bankruptcy cases (the **"First Advisory"**).  Docket No. 5002.

14.      On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory (the **"Second Advisory"**), which broadens the First Advisory.  Docket No. 5463.

15.      On July 30, 2010, the Court entered the Order Authorizing the Extended

-7-

Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner to cover the Fourth Fee Period.  Docket No. 6375.

16.    On August 7, 2009, the Court entered its Order, Pursuant to §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the **"Interim Compensation Order"**).  Docket No. 3711.

17.    The Applications generally reflect that, pursuant to the Interim Compensation Order, the Retained Professionals have received payment of 80 percent of the fees accrued during the First, Second, and Fourth Fee Periods.

18.    On May 27, 2010, the Court entered the "Order Granting Debtors' Third Motion Pursuant to 11 U.S.C. § 1121(d) Extending Exclusive Periods in which Debtors May File chapter 11 Plan and Solicit Acceptance Thereof," extending the time by which the Debtors could file a chapter 11 plan to September 27, 2010, and extending the Debtors' time to solicit acceptances of their chapter 11 plan to November 29, 2010.  Docket No. 5986.

19.    On August 31, 2010, the Debtors filed the Debtors' Joint Chapter 11 Plan (the "Plan") and the Disclosure Statement for Debtors' Joint Chapter 11 Plan (the "Disclosure Statement"), Docket Nos. 6829 and 6830, respectively.  The Disclosure Statement was calendared for a hearing on October 21, 2010.  Docket No. 6854.

20.    On December 8, 2010, the Court entered an order approving the Debtors' Disclosure Statement and scheduled the hearing on the confirmation of the Debtors' Plan for March 3, 2011.  Docket No. 8043.

20.    The Debtors are current with the filing of their monthly operating reports as of

-8-

September 2010.  Docket No. 7727.  The "Condensed Combined Debtors-In-Possession Statement of Net Assets" (the **"Net Asset Sheet"**), which is contained in the Debtors' monthly operating report for the period ending September 2010 (the **"September 2010 Operating Report"**), provides that "Cash and Cash Equivalents" are $949,128,000.00.  Id., at 5.

21.    The Net Asset Sheet also indicates that total assets of the combined estates are approximately $1.179 billion.  Id.

22.    The September 2010 Operating Report sets forth accrued professional fees of $35,978,000 as of September, 2010.[4]  Id. at 5.  Measured differently, the Office of the United States Trustee calculates that the total fees sought by the Retained Professionals as of the entry of the Order granting the second interim applications, and certain adjourned first interim applications (see Docket No. 6402), are $48,002,899, with expenses of $1,659,951.

23.    The Debtors are current with the payment of quarterly fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2010.

## IV.  LEGAL STANDARDS

**A.    The United States Trustee Has a Duty to Review and to Comment
Upon Applications for Compensation and to Object When Appropriate.**

Among the duties imposed upon a United States Trustee pursuant to 11 U.S.C. § 586, is the duty, when appropriate, to review and object to fee applications:

(a)    Each United States Trustee, within the region for which such United States Trustee is appointed, shall –

---

[4]The monthly operating reports for the periods ending July and August 2010, identified accrued professional fees for the periods indicated of $39,894,000 and $37,991,000, respectively.

. . . .

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever the United States Trustee considers it to be appropriate –

(A)(I) reviewing, in accordance with procedural guidelines adopted by the Executive Office of the United States Trustee (which guidelines shall be applied uniformly by the United States Trustee except when circumstances warrant different treatment), applications for compensation and reimbursement under section 330 of title 11; and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

. . . .

28 U.S.C. § 586(a)(3)(A)(I)-(ii).

**B.      Each Professional Seeking Compensation Bears the Burden of Establishing That Its Requested Compensation is Reasonable, and the Court's Review for Reasonableness Protects the Estate from Overreaching.**

Bankruptcy Code Section 330(a)(1) provides that only reasonable compensation and necessary expenses may be allowed:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such

-10-

person; and

     (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

    To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

. . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

     (A) the time spent on such services;

     (B) the rates charged for such services;

     (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

     (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

     (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

     (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases

other than cases under this title.[5]

11 U.S.C. § 330(a)(3).

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993).  To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (Bankr. 2d Cir. 1997);  In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007);  In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  The professional's burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors."  In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996).  To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y.

---

[5]    Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the

application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to

the benefit to the estate.  In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo,

Cooper & Co. v.Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower

courts' denial of improperly documented and inadequately detailed expenses).

Courts serve a vitally important gate-keeping role in enforcing the Code's requirements

that only reasonable fees be approved and paid as well as maintaining public confidence in the

bankruptcy system itself:

> The affixing of a judge's signature to an order is not an empty formality.  It
> is a judicial confirmation that the fees in question are in fact reasonable and do in
> fact represent compensation for actual and necessary services, measured against
> the various factors set out in the case law. In re Manoa Fin. Co., Inc., 853 F.2d
> 687, 690 (9th Cir.1988).  See Matter of Consolidated Bancshares, Inc., 785 F.2d
> 1249, 1257 (5th Cir.1986).  Because fees can be paid only upon court order, the
> court which signs that order must therefore be prepared to accept responsibility for
> its judicial actions by independently determining that court authorization for the
> fees is warranted.  See In re National Paragon Corp., 87 B.R. 11, 13 (E.D.
> Pa.1988); In re Benassi, 72 B.R. 44 (D. Minn. 1987); Cohen & Thiros v. Keen
> Enters., 44 B.R. 570, 574 (N.D. Ind. 1984), (citing In re Meade Land and Dev.
> Co., 527 F.2d 280, 284 (3rd Cir. 1975)).

In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr.W.D.Tex. 1989).  "[T]he

judiciary should retain control of fees, given the sensitivities they generate and the need to

promote public confidence in the system."  In re Child World, Inc., 185 B.R. 14, 17 (Bankr.

S.D.N.Y. 1995).  Other courts concur in the importance of judicial fee review and approval to

maintaining public confidence in the bankruptcy system:

-13-

> The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law. We frequently read in newspaper stories that the public has a perception that bankruptcies are too expensive and that high professional fees are a significant cause of these high expenses. Nothing better serves to allay these perceptions and fulfill public expectations than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to carefully review same and find it personally acceptable, irrespective of the (always welcomed) observation of the UST or other interested parties.

In re Evans, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993). As the Third Circuit so aptly stated, "the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994).

## C.     Interim Compensation

Bankruptcy Code Section 331, permitting but not requiring interim compensation for professionals, incorporates the reasonableness requirements of 11 U.S.C. § 330. See Bennett Funding, 213 B.R. at 244. Even if the fee request is reasonable, however, whether interim compensation will be allowed, as well as the amount and timing of any payment, rests within the discretion of the bankruptcy court. In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987); see also, Spanjer Bros., 191 B.R. at 747 (interim fee awards are discretionary). Bankruptcy Code Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." Child World, 185 B.R. at 17. Thus, the statute "authorizes the award of interim compensation, but does not mandate it," In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982), and the Court may defer ruling until final application. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

Whether fees allowed on an interim basis are also paid on an interim basis historically has

-14-

depended on the solvency of the bankruptcy estate.  In particular, "where there are insufficient

funds in the debtor's estate to pay interim allowances, these allowances may be deferred until a

time when unencumbered funds become available for payment."  First Hartford, 23 B.R. at 732

(granting interim allowances, but deferring payment until confirmation of reorganization plan

due to lack of unencumbered assets); In re Codesco, Inc., 15 B.R. 354, 356 (Bankr. S.D.N.Y.

1981) (payment deferred until unencumbered funds available for payment); In re National Buy-

Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981) (where the amount of administrative claims

exceeds the value of estate assets, professionals are not entitled to immediate payment of interim

compensation).

Similarly, courts have denied interim compensation where professionals have "yet to

produce any cognizable and tangible results."  In re Hillsborough Holdings Corp., 125 B.R. 837,

840 (Bankr. M.D. Fla. 1991).  Interim compensation has also been denied, and moratoriums on

interim compensation imposed, until courts have been convinced the case is "moving towards a

point of resolution."  In re UNR Indus., Inc., 72 B.R. 796, 799 (Bankr. N.D. Ill. 1987); see also,

In re General Coffee Corp., 39 B.R. 7, 8 (Bankr. S.D. Fla. 1984) (denying all interim

compensation on grounds that allowances would be premature pending the resolution of the

chapter 11 case).

D.      **Actual and Necessary Expenses**

Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are

actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish

enough specificity for the Court to establish whether a given expense was both actual and

necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005)

(quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are

"actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding,

213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper

representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87

(Bankr. E.D.N.Y. 1998).

## V.  RESPONSE

### A.    General Response Applicable to All Professionals

Meaningful fee discipline and control are critical here.  The total fees sought by the

Retained Professionals through the Fourth Interim Fee Period are $79,681,891.58 and

$3,210,936.65 in expenses.[6]  Accordingly, consistent with prior practice in these cases, the

United States Trustee again respectfully requests a 10 percent deferral of payment, or

"holdback," of fees.  The imposition of a uniform, percentage holdback, while not statutorily

required, is appropriate as an incentive for timely resolution of the cases and as a check on

potentially excessive interim allowances.  Child World, 185 B.R. at 18; see also, In re Bank of

New England Corp., 134 B.R. 450, 458-59 (Bankr D. Mass. 1991) (because of the difficulty in

determining whether services were actual and necessary when reviewing interim applications,

bankruptcy courts routinely require percentage reductions until the end of the case), aff'd, 142

B.R. 584 (D. Mass. 1992).

The deferral or holdback from any interim award is justified here both by the magnitude

of the cases and fees, as well as by the current status–while the Disclosure Statement was

---

[6]This figure excludes AP Services' fees of $18,220,813.00 and expenses of $1,215,280.48
for the period of June 1, 2010 through August 31, 2010.

approved on December 8, 2010, voting has not occurred, and the Plan has not been confirmed.

The outcome of the confirmation process remains unknown, despite positive developments

regarding funding for the four post-confirmation trusts proposed in the Plan.  Consequently,

whether the Retained Professionals performed services during the Fourth Fee Period that were

beneficial toward completion of the cases cannot be fully assessed at this time, and a 10 percent

holdback is appropriate.

**B.**     **Specific Response Regarding Individual Applications**

The Fee Examiner submitted draft reports and statements of limited objection

(collectively, the **"Reports"**) to the United States Trustee and each of the Retained Professionals

before filing the Reports with the Court.  The Reports identify various fee and expense issues

with respect to the applications for compensation and reimbursement of out-of-pocket expenses

to be considered on December 15, 2010.  Based upon the Office of the United States Trustee's

review of the Applications and the Fee Examiner's Reports, and upon consultations with the Fee

Examiner, the United States Trustee concurs with, and supports the fee and expense allowances

and disallowances recommended by the Fee Examiner in the Reports.

In particular, the United States Trustee objects to certain fees with respect to two specific

issues identified by the Fee Examiner.  The first issue is the reasonableness of a professional

raising its hourly rates during the course of the bankruptcy proceedings.   The second issue

pertains to requests by the professionals for compensation for time spent responding to inquiries

and objections from the United States Trustee and the Fee Examiner.

**1.**     **Hourly Rate Increases**

The United States Trustee objects to the rate increases unilaterally implemented by the

professionals in these cases.    The applicant bears the burden of proving the reasonableness of its

requested compensation.  This burden should include justifying that any rate increase is

reasonable.  Stated differently, Retained Professionals that seek approval of rate increases in their

fee applications for the Fourth Fee Period are not automatically entitled to it.  Although there is

no per se prohibition against rate increases during a Chapter 11 case, there is similarly no

automatic entitlement.  Any rate increase should, like other fee matters, be subject to a

reasonableness review, with the burden on the applicant to prove reasonableness, including, that

comparable non-bankruptcy practitioners are paid similar increased rates.  See In re Lee Tractor

Co., Inc., 2008 WL 2788413 at *2 (Bankr. E.D.N.C. 2008) (at a hearing on debtor's attorney's

application for compensation, the court found the rate increases reasonable considering the

experience and quality of the work performed and the rates charged by attorneys with comparable

experience among the local bankruptcy bar, but noting that "such percentage increases may not

be so justified in future applications."); In re Teraforce Tech. Corp., 347 B.R. 838, 860 (Bankr.

N.D. Tex. 2006) (holding that the reasonableness of the attorneys' hourly rate increases required

a comparison with the local market); In re Reconversion Techs., Inc., 216 B.R. 46, 54-55 (Bankr.

N.D. Okla. 1997) (disallowing rate increase because original hourly rates represented "the

highest hourly rate which has been approved by this Court to date.").

On November 23, 2010, the Court issued a bench decision (the "Bench Decision") on two

open questions involving legal fees.  On the issue of rate increases, the Court decided,

prospectively, that "[r]etained professionals are to provide written notice of upcoming increases

in their [hourly] billing rates..." to give interested parties an opportunity to object and be heard.

In re Motors Liquidation Company, Bench Decision on Pending Fee Issues, at 2, No. 09-50026

(Bankr. S.D.N.Y. 2010) [Docket No. 7896].  The Court eliminated any requirement to more widely "post notice of upcoming increases on ECF."  Id.

With respect to the issue of rate increases, the Fee Examiner examined various survey data on rate increases by law firms and concluded that over the last two years annual hourly rate increases for legal services have generally not exceeded five percent.  Fee Examiner's Twelve-Month Report and Summary of Responses to the Fourth Interim Fee Applications, at 6, Docket No. 8052.  While the Fee Examiner plans to object to hourly rate increases that exceed market rates at some later date, if necessary, he has not recommended any reductions with respect to the Fourth Interim Fee Period.

> With respect to individual applicants the Fee Examiner has advised as follows:
>
> The issue of rate increases since the commencement of these cases, will be addressed in conjunction with subsequent interim applications and/or final fee hearing, at which time a market-based 12-month percentage increase cap will be recommended.  Based upon the data available today, it would seem difficult to justify any 12-month increase greater than five percent.

See, e.g., Fee Examiner's Report and Statement of Limited Objection to the Fourth Interim Fee Application of Weil Gotshal & Manges LLP at 13, Docket No. 8044.

The United States Trustee continues to maintain that a proper evaluation of the reasonableness of the compensation requested, including any increase in rates, can only be undertaken in the context of a review of the professional's fee application.  The United States Trustee concurs with the Fee Examiner that comparison to market rates outside of bankruptcy is one of the critical factors required by the Bankruptcy Code in assessing reasonableness.  In addition to the benchmarking rate studies offered by the Fee Examiner in his report, it is

conceivable additional data on market rates should be gathered and analyzed before one can conclude definitively that these are the comparable benchmarks.  Accordingly, the United States Trustee reserves her rights to conduct discovery on comparable rates and to offer other evidence for the Court's consideration on what is reasonable when measured against comparable billing practices outside of bankruptcy.

### 2.    Compensation for the Fee Review Process

As a general rule, professionals should not be compensated for responding to inquiries or objections from the United States Trustee regarding professional fees.  See, e.g., In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001) (citing Section 330(a)(3)(E)).[7]  As the court in St. Rita's found, lawyers outside of bankruptcy are not compensated for defending against fee disputes by clients.  Id.; see also, In re Fibermark, Inc., 349 B.R. 385, 398 (Bankr. D. Vt. 2006) (time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the U.S. Trustee's Guidelines, or pertinent case law is not compensable).  Although an exception should be available for responding to vexatious or frivolous objections, such an exception should be narrowly construed.

In its Bench Decision, the Court ruled that it should "authorize payment of the costs of defending against the objection if the fee applicant substantially prevails."  In re Motors Liquidation Company, et al., Bench Decision on Pending Fee Issues at 2.

The Fee Examiner has implemented the Bench Decision by applying this Court's ruling to the fee applications for the fourth interim period—and to the "carved-out" amounts in fee

---

[7] The St. Rita's decision was rendered before the enactment of BAPCPA.  The bankruptcy section to which the Court in St. Rita's referred is now Section 330(a)(3)(F).

applications for the third interim period.  The Fee Examiner has established the following

recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and

objections ("Fee Inquiry Time"):

> A.  The Fee Examiner will not object to the lesser of: either (I) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[8]

> B.   For professionals whose fee applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner raised.  On the basis of this review, the Fee Examiner has calculated or will calculate a suggested disallowance, ranging from zero percent to 50 percent for professionals requesting compensation for Fee Inquiry Time.[9]

Fee Examiner's Report and Statement of Limited Objection to the Fourth Interim Fee

Application of Weil Gotshal & Manges LLP, at 8, Docket No. 8044.

The United States Trustee has determined that the Fee Examiner's approach is a

reasonable implementation of the Bench Decision and accordingly supports his recommendations

under the circumstances of these cases.

---

[8] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000.  For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

[9] This protocol applies only to activities that do not "go beyond normal advocacy or negotiation."  See In re Adelphia Commc'ns Corp., Decision and Order on Estate's Payment of Non-Fiduciaries' Professional Fees at 5-6, No. 02-41729 (Bankr. S.D.N.Y. Nov. 18, 2010 ) [Adelphia Docket No. 14445].  If any applicant engages in abusive, destructive or "scorched earth" tactics, the Fee Examiner will recommend higher deductions than applicable under this protocol.

## VI.  CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court enter an

Order (i) consistent with the Fee Examiner, and (ii) granting such other relief as is just.

Dated: New York, New York
        December 10, 2010

                                        Respectfully submitted,

                                        TRACY HOPE DAVIS
                                        UNITED STATES TRUSTEE

                                  By:   /s/ Linda A. Riffkin
                                        Linda A. Riffkin
                                        Assistant United States Trustee
                                        Brian Masumoto
                                        Trial Attorney
                                        33 Whitehall Street, 21st Floor
                                        New York, New York 10004
                                        Tel. No. (212) 510-0500
                                        Fax No. (212) 668-2255