# EXHIBIT B

**EXECUTION VERSION**

### FIRST AMENDMENT, CONSENT AND WAIVER UNDER DEBTOR-IN-POSSESSION CREDIT AGREEMENT

FIRST AMENDMENT, CONSENT AND WAIVER UNDER DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of June 25, 2009 (this "Amendment"), to the SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of June 3, 2009 (as amended, supplemented, extended or restated, or otherwise modified from time to time, the "DIP Credit Agreement"), among GENERAL MOTORS CORPORATION, a Delaware corporation, as the Borrower, the UNITED STATES DEPARTMENT OF THE TREASURY, as a Lender, EXPORT DEVELOPMENT CANADA, as a Lender, and the Guarantors party thereto from time to time.

### RECITALS

WHEREAS, the Borrower has requested that the Lenders make certain amendments to the DIP Credit Agreement; and

WHEREAS, the Lenders have agreed to amend the DIP Credit Agreement solely upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the premises and the agreements hereinafter set forth, the parties hereto hereby agree as follows:

1.    Defined Terms.  Unless otherwise noted herein, terms defined in the DIP Credit Agreement and used herein shall have the meanings given to them in the DIP Credit Agreement.

2.    Amendment to Section 1.1 (Defined Terms) of the DIP Credit Agreement.  The following new definitions shall hereby be added to Section 1.1 of the DIP Credit Agreement in the appropriate alphabetical order:

"'Delphi Transaction Documents': collectively, (i) that certain Master Disposition Agreement dated as of June 1, 2009, executed by Delphi Corporation, GM Components Holdings, LLC, General Motors Corporation, Parnassus Holdings II, LLC ("PH II"), a Delaware limited liability company, and the other sellers and buyers party thereto, (ii) that certain Securities Purchase Agreement dated as of June 1, 2009 (the "Securities Purchase Agreement") among Parnassus Holdings I, LLC, a Delaware limited liability company, PH II and General Motors Corporation, (iii) that certain Amended and Restated GM-Delphi Agreement dated as of June 1, 2009 among Delphi Corporation, the subsidiaries of Delphi Corporation party thereto and General Motors Corporation, and (iv) a Credit Agreement substantially in the form attached as Exhibit A to the Securities Purchase Agreement, pursuant to which General Motors Corporation agrees to make a loan to PH II in the amount set forth therein, each as in effect or in the form proposed, as applicable, as of June 1, 2009.

'Delphi Alternative Transactions': transactions similar to the Delphi Proposed Transactions that (i) have terms that, taken as a whole, are, in the Borrower's judgment, equally or more advantageous to the Borrower than the Delphi Proposed Transactions, (ii) do not require the aggregate amount of the Borrower's Investments made in

connection with such transactions to exceed the amount of the Borrower's Investments contemplated by the Delphi Proposed Transactions and (iii) are approved in advance, in writing by the Required Lenders and, if required, authorized by the Bankruptcy Court.

'Delphi Proposed Transactions': the transactions to be entered by the Borrower and its Subsidiaries pursuant to or as contemplated by the terms of any of the Delphi Transaction Documents.

'Delphi Transactions': either the Delphi Proposed Transactions or the Delphi Alternative Transactions, as applicable.".

3.    Amendments to Section 1.1 (Defined Terms) of the DIP Credit Agreement. The definition of "Permitted Investments" set forth under Section 1.1 of the DIP Credit Agreement is hereby amended by (i) deleting the "and" as it appears at the end of clause (r); (ii) deleting the "." as it appears at the end of clause (s) and inserting in lieu thereof "; and", and (iii) adding the following language as new clause (t):

"(t)    any of the Delphi Transactions.".

4.    Amendments to Section 6.21(b) (Financial Condition Covenants; Total Cash Disbursements) of the DIP Credit Agreement. Section 6.21(b) (Financial Condition Covenants; Total Cash Disbursements) is hereby amended and restated in its entirety and replaced with the following:

"(b)    Total Cash Disbursements. The Borrower shall not permit, at any date, the net amount of cash disbursements (excluding disbursements applied against the outstanding balances of the Prepetition Term Loan Agreement, the Prepetition Revolver Credit Agreement, Contingency Reserve Loans and disbursements made by the Borrower provided for in the agreements that document the Delphi Transactions) made from the Petition Date until such date to exceed the total amount permitted for such date in Schedule 6.21(b).".

5.    Amendment to Section 8.1 (Amendments and Waivers). Section 8.1 (Amendments and Waivers) is hereby amended by deleting the reference to "6.21(b)" as it appears in Section 8.1 and inserting in lieu thereof "6.21(c)".

6.    Amendment to Schedule 6.21(a) (Maximum Borrowing Amount Excluding Contingency Reserve Loans). Schedule 6.21(a) (Maximum Borrowing Amount Excluding Contingency Reserve Loans) is hereby amended by inserting at the end of the note set forth at the end of such Schedule the words "and such other documents acceptable to the Required Lenders in their sole discretion".

7.    Consent. The Required Lenders hereby consent to GM Nova Scotia's having provided a consent to an order under the Bankruptcy and Insolvency Act (Canada) as set forth in Section 6(b) of that certain Lock Up Agreement, dated as of June 1, 2009 (as in effect on such date, the "Lock-Up Agreement") by and among the Borrower, General Motors Nova Scotia Finance Company, a Nova Scotia unlimited company ("GM Nova Scotia"), General Motors of Canada Limited, a Canadian federal corporation ("GM Canada"), GM Nova Scotia Investments Ltd., a Nova Scotia company and certain beneficial owners of notes issued by GM Nova Scotia; provided that (i) if the conditions required for effectiveness of the waivers, releases and discharges provided by the Holders (as defined in the Lock Up Agreement) in Section 5(b) of the Lock Up Agreement are not satisfied or (ii) if such releases and discharges cease to be effective to preclude the Holders from pursuing any claim in respect of GM

Canada otherwise released pursuant to Section 5(b) of the Lock Up Agreement, then, in either case, this consent shall automatically cease to be effective.

8.    Waiver.    The Required Lenders hereby waive any Default or Event of Default that may have occurred under the DIP Credit Agreement solely to the extent that such Default or Event of Default would not have occurred if the amendments and consent set forth in Sections 2 through 7 hereof effected hereby were made prior to the occurrence of such Default or Event of Default; provided that any waiver set forth in this Section 8 with respect to the consent set forth in Section 7 above shall not be effective if such consent ceases to be effective as provided in Section 7.

9.    Representations and Warranties.    To induce the other parties hereto to enter into this Amendment, the Borrower hereby represents and warrants to each of the Lenders that the representations and warranties contained in Section 3 of the DIP Credit Agreement are true and correct in all material respects on and as of the date hereof with the same effect as though made on and as of the date hereof, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties were true and correct in all material respects as of such earlier date).

10.    Conditions to Effectiveness.    This Amendment shall become effective, as of the date first written above, upon the execution and delivery of counterparts of this Amendment duly executed by the Borrower.

11.    Limited Effect.    Except as expressly provided hereby, all of the terms and provisions of the DIP Credit Agreement and the other Loan Documents are and shall remain in full force and effect.  The amendments contained herein shall not be construed as a waiver or amendment of any other provision of the DIP Credit Agreement or the other Loan Documents or for any purpose except as expressly set forth herein or a consent to any further or future action on the part of the Borrower that would require the waiver or consent of the Lenders.    This Amendment shall constitute a "Loan Document" for all purposes of the DIP Credit Agreement and the other Loan Documents.

12.    **GOVERNING LAW.    THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.**

13.    Counterparts.    This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same agreement, and any of the parties hereto may execute this Amendment by signing any such counterpart.  Delivery of an executed counterpart hereof by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

14.    Headings.    Section or other headings contained in this Amendment are for reference purposes only and shall not in any way affect the meaning or interpretation of this Amendment.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

GENERAL MOTORS CORPORATION, on its own behalf and as agent for the other Loan Parties

By: _____

Name: Walter G Borst

Title: Treasurer

UNITED STATES DEPARTMENT OF THE
TREASURY, as a Lender

By:_____

Name: Herbert M. Allison, Jr.
Title:  Assistant Secretary for Financial
        Stability

EXPORT DEVELOPMENT CANADA, as a
Lender

By: _____

Name:    DAVID STEVENSON
Title:    LOAN PORTFOLIO
         MANAGER


CHRISTOPHER WILSON

ASSET MANAGER

JUNE 25, 2009