# EXHIBIT D
## (PART 1)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                   :     **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY,** *et al.,*   :     **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*    :
:
        Debtors.                            :     **(Jointly Administered)**
:
------------------------------------------------------------x

## NOTICE OF INTERIM REPORT

PLEASE TAKE NOTICE that, at the request of the Office of the United States Trustee for the Southern District of New York, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors (the "**Debtors**") hereby file an interim report disclosing certain financial information:

| | |
|---|---|
| **Exhibit A:** | A narrative description of the primary categories of assets and liabilities of the Debtors as of July 10, 2009, immediately following the sale of substantially all of the Debtors' assets to NGMCO, Inc. (now known as General Motors Company) pursuant to section 363 of title 11 of the United States Code |

| | |
|---|---|
| **Exhibit B:** | A statement of the Debtors' receipts and disbursements for the period of June 1, 2009 through July 10, 2009 |
| **Exhibit C:** | A list of the Debtors' wholly or partially owned subsidiaries as of July 10, 2009 |
| **Exhibit D:** | A list of the Debtors' owned real property as of August 4, 2009 |
| **Exhibit E:** | A schedule of retainers paid to professionals for the period of June 1, 2009 through July 10, 2009 |

Dated: New York, New York
August 11, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

Narrative description of the primary categories
of assets and liabilities of the Debtors

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

---

The following interim report[1] presents an overview of the primary categories of assets and liabilities of Motors Liquidation Company (formerly known as General Motors Corporation) and its related debtor affiliates (collectively, "MLC") as of July 10, 2009 immediately following the closing of the sale of substantially all of MLC's assets to General Motors Company pursuant to section 363 of the U.S. Bankruptcy Code (the "363 Sale").

## *The Sale*

Pursuant to the 363 Sale, MLC sold all of its assets, other than those assets explicitly excluded in the Master Purchase and Sale Agreement, to NGMCO, Inc. (now known as General Motors Company). In exchange for those assets MLC received, in part:

1. A credit bid in an amount equal to the sum of MLC's obligations under (a) its existing credit agreement with the U.S. Treasury and the related notes issued to the U.S. Treasury and (b) its debtor-in-possession financing facility less $8,247,488,605 of indebtedness under such facility,

2. 50 million shares of General Motors Company's common stock,

3. Warrants to acquire a total of 90,909,090 newly issued shares of General Motors Company common stock at various strike prices, and

4. The assumption by General Motors Company or its designated subsidiaries of certain specified liabilities of MLC and certain of its subsidiaries.

A further description of certain of these assets is below.

The liabilities of MLC consist of liabilities that have not been paid through first day orders and other liabilities that were not assumed by General Motors Company in the 363 Sale. The liabilities primarily include unsecured bond debt, certain union related debt obligations, executory contract rejection claims, asbestos, environmental, product liability, and other litigation claims, as well as pre-petition accounts payable that have not been paid through first day orders or through cure payments related to assumed executory contracts. The liabilities listed herein describe both general unsecured claims and administrative claims against MLC. The information presented herein is preliminary, based on the best currently available information, and is subject to qualification or change.

---

[1] This interim report is limited in scope, covers a limited period of time and has been prepared solely for the purpose of complying with applicable bankruptcy law requirements and requests of the Office of the United States Trustee for the Southern District of New York. The financial information contained in the Report is not prepared in accordance with U.S. generally accepted accounting principles, was not audited or reviewed by independent accountants, and is subject to future adjustment and reconciliation.

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

## *Motors Liquidation Company's Debtor Affiliates*

Motors Liquidation Company's debtor affiliates are Chevrolet-Saturn of Harlem, Inc., Saturn, LLC, and Saturn Distribution Corporation. Prior to the 363 Sale, Chevrolet-Saturn of Harlem, Inc. was an automobile dealership, Saturn, LLC, engaged in the manufacture of automobiles, and Saturn Distribution Corporation was engaged in the distribution of vehicles under the Saturn brand. Each of these entities sold substantially all of its assets in the 363 Sale. Following the 363 Sale these entities have no operations and no material assets. Each debtor affiliate's bankruptcy case is procedurally consolidated and jointly administered with Motors Liquidation Company's case (Case No. 09-50026).

## *Assets*

1. **Cash and Equivalents**

    a. The cash balance for MLC is $1.170 billion as of July 10, 2009. It represents proceeds of loans made by the U.S. Treasury and Export Development Canada (collectively, the "Lenders") under the Secured Superpriority Debtor-In-Possession Credit Agreement dated as of June 3, 2009, as amended and restated in its entirety by the Amended and Restated Secured Superpriority Debtor-in-Possession Credit Agreement dated as of July 10, 2009 (the "Wind-Down Facility"). The Wind-Down Facility, which is secured by substantially all of the assets of MLC other than, among other assets, its equity interests in General Motors Company (the "Collateral"), is a non-recourse loan (with recourse limited to the Collateral) in an amount equal to $1.175 billion, the proceeds of which are to be used to finance the working capital needs and other general corporate purposes incurred in connection with the wind-down. Any unused proceeds of the Wind-Down Facility, together with the proceeds from the sale of the Collateral remaining following the wind-down of MLC, will be used to repay obligations to the Lenders and shall not remain in MLC's estate.

2. **Restricted Cash**

    a. "Restricted Cash" generally consists of restricted and escrowed cash and cash equivalents, including collateral securing bonds, insurance policies, and letters of credit. This is required by various courts and governmental agencies and is associated with various liabilities of MLC. The major categories of liabilities covered by such instruments include litigation, environmental, workers compensation, and utilities. For

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

example, court bonds are maintained for litigation and tax case appeals. Environmental instruments are maintained to ensure site specific remediation. The workers compensation instruments are for claims arising in Georgia, New Jersey, and Oklahoma, the states for which such liabilities have been retained by MLC. MLC holds other minor instruments for licenses, permits, and guarantee payments.

3. **Investment in General Motors Company**

   a. As part of the consideration received by MLC in the 363 Sale, General Motors Company issued to MLC (a) 50,000,000 shares (10%) of its common stock and (b) warrants to acquire newly issued shares of its common stock initially exercisable for a total of 90,909,090 shares of common stock (15% of the common stock of General Motors Company on a fully diluted basis) on the respective terms specified therein. MLC will receive additional shares of General Motors Company if the allowed claims against MLC exceed certain thresholds.

4. **Real Property**

   a. MLC owns 127 properties located throughout the continental United States. These properties range in purpose from engineering centers to residential properties and are categorized as follows:

   | Engineering | 4 |
   |---|---|
   | Vacant Land | 45 |
   | Manufacturing | 16 |
   | Office | 2 |
   | Miscellaneous | 2 |
   | Residential | 54 |
   | Warehouse | 4 |
   | **Total:** | **127** |

   b. MLC owns 16 manufacturing properties and has entered into triple net lease agreements with General Motors Company with respect to all but four properties. These 12 manufacturing properties are subject to a Transition Services Agreement pursuant to which General Motors Company will perform certain facility idling services for MLC at agreed upon rates when the leases terminate and the properties are returned to MLC. MLC is also a party to leases of real property within the United States which it intends to

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

reject in accordance with the Bankruptcy Code at such time as General Motors Company terminates its lease with MLC and vacates the property.

 c. Many of MLC's residential properties and land parcels have been identified as potential environmentally challenged sites. For a more detailed explanation of the environmental sites and the corresponding liabilities see Section 13 – Environmental.

5. **Machinery and Equipment**

 a. Machinery and equipment in MLC consists of all capitalized assets not purchased by General Motors Company in the 363 Sale. Examples of machinery and equipment include machine tools, foundry equipment, furniture and fixtures, general plant equipment, processing equipment, and robot tools. The majority of the machinery and equipment is located in MLC manufacturing properties. MLC is also a party to leases of personal property within the United States which it intends to reject in accordance with the Bankruptcy Code.

6. **Investment in Subsidiaries**

 a. Investments in subsidiaries consist of MLC's investments in 152 wholly and partially owned non-debtor entities. Such entities may be divided into the following categories:

| | |
|---|---|
| Dealership Related Entities | 106 |
| Foreign Entities | 7 |
| Historical Investment Entities | 5 |
| Historical Operating Entities | 28 |
| Other Entities | 6 |
| **Total** | **152** |

 b. Dealership Related Entities can be categorized into two primary categories:

  i. Several dealerships that have ongoing operations and are currently being reviewed to determine their ultimate disposition.

  ii. Other MLC owned dealers which are inactive or have already liquidated in the ordinary course.

 c. There are two primary entities in the Foreign Entities category.

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

---

    i. General Motors Nova Scotia Finance Company is a finance company that was created to issue approximately $1 billion in GBP bonds, which are guaranteed by MLC.

    ii. General Motors Strasbourg owns a plant that is currently operating which manufactures transmissions.

d. New United Motor Manufacturing, Inc (NUMMI) is a corporation that was established as a joint venture between General Motors and Toyota relating to the manufacture of vehicles, which presently are the Pontiac Vibe, Toyota Corolla, and Toyota Tacoma in the United States. MLC is currently in discussions with Toyota, which is considering the future status of the joint venture.

e. Historical Operating Entities includes entities that were engaged in several activities. The following represents a listing of the major entities:

    i. El-Mo entities: Engaged (currently or previously) in leasing locomotives in the United States and Mexico.

    ii. Environmental Corporate Remediation Company, Inc. (ENCORE): Engaged in the management of environmental remediation liabilities, including assessing, investigating, and discharging environmental liabilities associated with domestic and international locations.

    iii. Remediation and Liability Management Company, Inc. (REALM): Engaged in the management of environmental remediation liabilities, including assessing, investigating, and discharging environmental liabilities associated with domestic and international locations.

    iv. General Motors Export Corporation: In years prior to 1985, as a Domestic International Sales Corporation, this entity acted as a commission agent for qualified export sales of its parent company, MLC. Under the provisions of the Deficit Reduction Act, the company can no longer operate as a commission agent.

f. Other entities include inactive or dormant entities that are expected to have little or no value.

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

7. <u>Tax Refunds</u>

   a. MLC's assets include all tax claims and tax refunds to the extent that they relate exclusively to the assets not sold to and liabilities not assumed by General Motors Company in the 363 Sale.

## *Liabilities*

8. <u>Wind-Down Facility</u>

   MLC is obligated to repay the Lenders under the $1.175 billion Wind-Down Facility from the proceeds of such facility as well as from the proceeds of the sale of other assets of MLC, other than its equity interests in General Motors Company. The Wind-Down Facility is otherwise non-recourse to MLC.

9. <u>Accounts Payable</u>

   a. Accounts payable consists principally of amounts owed to trade vendors, but also includes lesser amounts relating to other purchasing activities. Among trade vendors, the majority of accounts payable are typically related to direct suppliers that supply parts and material that flow into the production of automobiles. Indirect suppliers that supply other services and materials necessary to sustain production are typically the second largest group of creditors.

   b. Since MLC's chapter 11 cases commenced on June 1, 2009, the pre-petition balances of substantially all direct suppliers, and a majority of indirect suppliers, have been paid under first day motions or by General Motors Company in connection with curing defaults under contracts assumed by MLC and assigned to General Motors Company. Contract assumption activity is currently continuing and it is expected that General Motors Company will assume additional contracts and pay associated cure amounts, thereby decreasing the accounts payable outstanding against MLC. Suppliers that have not been paid through first day motions or contract cure payments may have unsecured claims against MLC. It is currently estimated that a relatively small amount of pre-petition accounts payable claims will remain with MLC.

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

## 10. Public Debt and Industrial Revenue Bonds

a. Indebtedness for borrowed money, other than under the Wind-Down Facility, is principally comprised of unsecured public bonds and industrial revenue bonds.

　　i. The majority of the debt is comprised of 26 series of unsecured public bonds. Wilmington Trust Company is Trustee under the two indentures which govern 24 of the series of bonds. Deutsche Bank AG London is the Fiscal Agent under the Fiscal and Paying Agency Agreement which governs the remaining two series of bonds, which are denominated in Euros.

　　ii. The industrial revenue bonds represent a minor amount of the total debt outstanding. There are seven series of bonds that are associated with various municipalities, for which the Bank of New York Mellon is the Trustee.

　　iii. Additionally, there are two series of pound sterling denominated bonds issued by General Motors Nova Scotia Finance Company (a wholly owned subsidiary of MLC) that are guaranteed by MLC. The guarantee is a direct, unsecured obligation of MLC. Deutsche Bank Luxembourg S.A. is the Fiscal Agent with respect to such bonds.

　　iv. Pursuant to the amendment to the Fiscal and Paying Agency Agreement on June 25, 2009, the holders of bonds issued by General Motors Nova Scotia Finance Company agreed to pursue only the following claims in relation to their bonds: (A) their claim against General Motors Nova Scotia Finance Company with respect to such bonds; (B) their claim under the guarantee by MLC of such bonds; and (C) the claim against MLC (as the sole shareholder of General Motors Nova Scotia Finance Company) that the trustee in a bankruptcy or liquidation of General Motors Nova Scotia Finance Company may assert, as a result of General Motors Nova Scotia Finance Company being an unlimited company, for contribution for any amounts unpaid to General Motors Nova Scotia Finance

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

Company's creditors. Under the Lock Up Agreement[3] dated June 1, 2009, MLC agreed that the foregoing claims against it will be allowed claims. The claim described in section (C) in this paragraph is in addition to the bond debt described in paragraphs (i), (ii), and (iii) above.

11. **Union Obligations**

   a. MLC currently is obligated to provide retiree insurance benefits, most significantly, medical and life insurance, to six union groups' (the "Splinter Unions") retirees at an estimated cost of $23 million per month. In addition, MLC has obligations arising from collective bargaining agreements with certain Splinter Unions that were negotiated following the closure of certain plants and locations. These agreements address employment and post-employment benefits and include, among other obligations, wages, annuity payments, monthly pre-retirement buy-out payments, and supplemental unemployment insurance benefits. These agreements are estimated to cost $1.34 million per month. The Splinter Unions include:

   i. The International Union of Electrical Workers (IUE)

   ii. The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW)

   iii. International Union of Operative Engineers (IUOE)

   iv. Catering/UCR (UCR)

   v. Teamsters/IBT (IBT)

   vi. Boilermakers/MPBP (MPBP)

   There are ongoing negotiations between MLC and union advisors to resolve these obligations. The outcome of these negotiations is undeterminable at this time. If these negotiations do not result in an agreement, MLC intends to reject the collective bargaining

---

[3] Lock Up Agreement dated June 1, 2009 between General Motors Nova Scotia Finance Company, General Motors of Canada Limited, GM Nova Scotia Investments Ltd., General Motors Corporation, Aurelius Capital Partners, LP., Aurelius Capital Masters, Ltd., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Appaloosa Investment Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd., Thoroughbred Fund LP., Elliott International L.P., and The Liverpool Limited Partnership.

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

agreements which will result in the Splinter Unions holding unsecured claims against MLC's estate with an estimated value of over $3 billion.

12. <u>Litigation</u>

   a. MLC litigation liabilities include product liability, asbestos liability, and other litigation. These reserves are for actual claims and lawsuits filed as well as an estimate for incidents incurred but not reported (IBNR). The product liability claims are for incidents that occurred prior to July 10, 2009 and are primarily related to property damages, personal injuries and breach of warranty claims. The asbestos claims allege that exposure to asbestos resulted in asbestosis, mesothelioma, cancers, and death. The other litigation liability reserve is for pending matters and includes employee, dealer, pricing, intellectual property, and other various matters.

13. <u>Environmental</u>

   a. The environmental liabilities relate to land and facilities owned or previously associated with MLC. The liabilities associated with these sites represent the costs to perform remediation on the sites with the goal of obtaining regulatory closure whenever possible to facilitate their disposition and to allow for productive use by others. In determining these liabilities, MLC analyzed the major sites and estimated contingencies, oversight costs, and facility demolition costs (to the extent demolition was required for compliance with environmental laws), as appropriate. The environmental liabilities estimates were determined by considering environmental closure scenarios. MLC continues to refine environmental costs and develop hypotheses for the integration of remediation and development for the highest and best use of its properties.

14. <u>Professional Fees</u>

   a. MLC's estimated liabilities include accrued costs for several professional service firms for services rendered during the period June 1, 2009 to July 10, 2009.

15. <u>Workers Compensation</u>

   a. Workers compensation liability includes actual claims filed as well as an estimate for incidents incurred but not reported (IBNR). The liability is limited to incidents in Alabama, Georgia, New Jersey, and Oklahoma. MLC had no ongoing operations in these

**Motors Liquidation Company, et al.**
*Balance Sheet Narrative*
*August 11, 2009*

---

states as of the commencement of its bankruptcy cases. A portion of the liability for three of these states (Georgia, New Jersey, and Oklahoma) is bonded and secured by the restricted cash collateral.

16. **Estimated Contract Rejection Damages**

    a. MLC has rejected several material contracts including marketing, real estate, engineering, direct suppliers, finance, and human resources and will be rejecting others during the course of its cases. MLC is in the process of analyzing and estimating contract rejection damage claims.

## **EXHIBIT B**

Statement of receipts and disbursements

Debtors in Possession - Motors Liquidation Company - US
Actuals - U.S. Dollars
June 1 through July 10, 2009

| ($ Millions) Period begins Period ends | | Actuals 1-Jun 7-Jun | Actuals 8-Jun 14-Jun | Actuals 15-Jun 21-Jun | Actuals 22-Jun 28-Jun | Actuals 29-Jun 5-Jul | Actuals 6-Jul 10-Jul | Actuals 1-Jun 10-Jul |
|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | |
| Vehicle Receipts | | 586 | 588 | 545 | 668 | 275 | 198 | 2,860 |
| Allied and other operating receipts | [A] | 176 | 217 | 96 | 423 | 2,078 | 195 | 3,185 |
| *Total operating receipts* | | 762 | 805 | 641 | 1,091 | 2,353 | 393 | 6,045 |
| **Disbursements** | | | | | | | | |
| External operating disbursements: | | | | | | | | |
| Net payroll | | (27) | (91) | (22) | (88) | (16) | (17) | (261) |
| Supplier, allied and other operating disbursements | [B] | (268) | (470) | (803) | (673) | (3,171) | (903) | (6,288) |
| *Total operating disbursements* | | (295) | (561) | (825) | (761) | (3,187) | (920) | (6,549) |
| *Net operating cash flows* | | 467 | 244 | (184) | 330 | (834) | (527) | (504) |
| **Non-operating** | | | | | | | | |
| External financing flows: | | | | | | | | |
| Revolver acceleration | | - | - | - | - | (3,920) | - | (3,920) |
| Term loan acceleration | | - | - | - | - | (1,481) | - | (1,481) |
| Other 363-related acceleration | | - | - | - | - | (126) | - | (126) |
| Other financing flows | | - | - | - | 19 | - | - | 19 |
| Total external financing flows | | - | - | - | 19 | (5,527) | - | (5,508) |
| Other external non-operating flows | | | | | | | | |
| Delphi | [C] | (1) | (1) | (57) | (36) | (18) | (60) | (173) |
| Other | [D] | 7 | 11 | (24) | 51 | (37) | 65 | 73 |
| Other non-operating flows | | 6 | 10 | (81) | 15 | (55) | 5 | (100) |
| Net external non-operating flows | | 6 | 10 | (81) | 34 | (5,582) | 5 | (5,608) |
| Allied non-operating flows | | | | | | | | |
| Inflows | | - | 4 | - | - | - | - | 4 |
| Outflows | | - | - | - | - | - | - | - |
| Net allied non-operating flows | | - | 4 | - | - | - | - | 4 |
| Net non-operating flows | | 6 | 14 | (81) | 34 | (5,582) | 5 | (5,604) |
| **Net flows and cash balance** | | | | | | | | |
| Net cash flow | | 473 | 258 | (265) | 364 | (6,416) | (522) | (6,108) |
| Beginning Cash | | 1,435 | 7,608 | 7,866 | 7,601 | 12,965 | 6,549 | 1,435 |
| Net Cash Flow | | 473 | 258 | (265) | 364 | (6,416) | (522) | (6,108) |
| Advances under DIP Credit Agreement | | 5,700 | | | 5,000 | - | 5,000 | 15,700 |
| Ending Cash | | 7,608 | 7,866 | 7,601 | 12,965 | 6,549 | 11,027 | 11,027 |

Notes:
[A] Includes cash receipts from Service Parts, Powertrain, XM and On-Star as well as royalty payments from non-U.S. affiliates. Also includes export sales to Canada and Mexico as well as reimbursement of certain payments made to suppliers on behalf of Canada and Mexico.

[B] Represents disbursements for direct and indirect suppliers, utilities, employee benefits, payroll and other taxes, dealer acitivity and research and development. Also includes purchases of vehicles imported from Canada and Mexico.
[C] Amounts represent liquidity support for Delphi governed by Loan and Security Agreement.
[D] Amounts include retail lease receipts, proceeds from miscellaneous asset sales and support for troubled suppliers.

# Motors Liquidation Company., et al.
## June 1, 2009 - July 10, 2009

### SUMMARY OF MONTHLY DISBURSEMENTS
(Dollars in millions)
(Unaudited)

| Legal Entity | | Period Ended July 10, 2009 |
|---|---|---|
| Motors Liquidation Company (fna General Motors Corporation) | | $ 12,043.8 |
| Saturn, LLC | | 108.8 |
| Saturn Distribution Corporation | [A] | - |
| Chevrolet-Saturn of Harlem, Inc. | | 0.4 |
| **Total Disbursements** | [B] | $ 12,153.0 |

**Notes:**
[A] Saturn Distribution Corporation's disbursement activity is limited to semi-annual dividend payments. There were no dividend payments during the reporting period.
[B] The Debtors made no professional fee payments during the reporting period.

United States Bankruptcy Court for the Southern District of New York
In re: Motors Liquidation Company, et al.
Case No.: 09-50026 (REG) (Jointly Administered)