Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                      :
In re                                 :        Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                      :
                    Debtors.          :        (Jointly Administered)
                                      :
---------------------------------------------------------------x
```

**NOTICE OF HEARING ON THE DEBTORS' OBJECTION TO PROOF OF CLAIM**
**NO. 45630 FILED BY WILLIAM O'CONNOR AND MELODY O'CONNOR;**
**PROOF OF CLAIM NO. 45628 FILED BY JOHN PAKAI;**
**AND PROOF OF CLAIM NO. 45629 FILED BY DAVID SIDNER**

**PLEASE TAKE NOTICE** that upon the annexed Objection, dated December 17,

2010 of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of Proof of

Claim No. 45630 filed by William O'Connor and Melody O'Connor; Proof of Claim No. 45628

filed by John Pakai; and Proof of Claim No. 45629 filed by David Sidner (the "**GTO Putative**

**Class Claims**"), all as more fully set forth in the Objection, a hearing will be held before the

Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **February 3, 2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel

may be heard.

        **PLEASE TAKE FURTHER NOTICE** that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.), and (xii) William O'Connor and Melody O'Connor; John Pakai; and David

Sidner, by and through their attorneys of record, Anderson, Ogilvie & Brewer LLP, 600

California Street, 18th Floor, San Francisco, California 94108 no later than **January 27, 2011 at

4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
      December 17, 2010

               /s/ Joseph H. Smolinsky
               Harvey R. Miller
               Stephen Karotkin
               Joseph H. Smolinsky

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :    09-50026 (REG)
    f/k/a General Motors Corp., et al.  :
                                        :
                    Debtors.            :    (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**THE DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 45630**
**FILED BY WILLIAM O'CONNOR AND MELODY O'CONNOR;**
**PROOF OF CLAIM NO. 45628 FILED BY JOHN PAKAI;**
**AND PROOF OF CLAIM NO. 45629 FILED BY DAVID SIDNER**

# TABLE OF CONTENTS

**Page**

Relief Requested ................................................................................................ 1

Jurisdiction ...................................................................................................... 4

Relevant Facts to GTO Putative Class Claims ............................................. 4

The Relief Requested by the Debtors Should Be Approved by the Court ..................................... 8

I.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is
      Discretionary and Should Be Denied in This Case ................................ 8

      A.    The GTO Plaintiffs Failed to Comply with Bankruptcy Rule 9014 ......... 10

      B.    Allowing the GTO Putative Class Claims to Proceed as a Class
            Action Will Not Be Effective or Efficient ................................. 12

      C.    The GTO Putative Class Claims Were Not Certified Prior to the
            Commencement Date ................................................................. 14

      D.    Adequate Notice of the Bankruptcy Case and the Bar Date Was
            Provided to the Putative Classes ............................................. 15

II.   The GTO Putative Class Claims Cannot Satisfy the Requirements of Rule 23 ... 17

      A.    The Injunctive Relief Sought by the GTO Putative Class Claims
            Under Rule 23(b)(2) Is Mooted by the Debtors' Liquidation .................. 18

      B.    Numerous Individual Issues Predominate Over Any Common
            Questions ................................................................................ 19

      C.    The GTO Plaintiffs Cannot Establish that a Class Action Is Superior
            to Other Available Methods for Fairly and Efficiently Adjudicating
            this Controversy ...................................................................... 27

      D.    Neither "Commonality" nor "Typicality" Can Be Established by the
            GTO Plaintiffs ........................................................................ 27

      E.    The GTO Plaintiffs Are Not Adequate Representatives ......................... 30

      F.    The Members of the Putative Classes Are Not Properly Identifiable ....... 31

Notice ............................................................................................................ 32

i

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981), *reh'g denied*, 450 U.S. 971 (1981)......................................................25

*In re Am. Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988)), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992)....................................8, 10

*Andrews v. Am. Tel. & Tel. Co.*,
    95 F.3d 1014 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) .................................23

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ..............................8, 9

*Barasich v. Shell Pipeline Co.*,
    No. Civ. A. 05-4180, 2008 WL 6468611 (E.D. La. June 19, 2008).......................................32

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .................................................................................32

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).......................................25

*Caro v. Procter & Gamble Co.*,
    18 Cal. App. 4th 644 (1993) ..................................................................................................31

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) .......................................................................................23, 25, 27

*In re Charter Co.*,
    876 F.2d 866 (11th Cir. 1989), *cert. dismissed,* 496 U.S. 944 (1990)...................................8, 9

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993)......................................................................................................33

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998)...........................................................................................23, 24

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993) ...............................18, 28

*Edwards v. McCormick*,
    196 F.R.D. 487 (S.D. Ohio 2000) ..........................................................................................30

*In re Ephedra Prods. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005)...................................................................................... passim

*Feinstein v. Firestone Tire & Rubber Co.*,
535 F. Supp. 595 (S.D.N.Y. 1982).........................................................................24

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
177 F.R.D. 360 (E.D. La.), *reconsideration denied*,
No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17, 1997) .................................23, 26

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997).........................................................................23, 24

*In re Fosamax Prods. Liab. Litig.*,
248 F.R.D. 389 (S.D.N.Y. 2008) .........................................................................31

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...................................................................................28

*Henry Schein, Inc. v. Stromboe*,
102 S.W.3d 675 (Tex. 2002).........................................................................25

*Hurd v. Monsanto Co.*,
164 F.R.D. 234 (S.D. Ind. 1995).......................................................................23

*In re Jamesway Corp.*,
No. 95 B 44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997).............10, 15, 16

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
186 F.R.D. 307 (S.D.N.Y. 1999) .....................................................................24, 26

*In re Kaiser Group Int'l, Inc.*,
278 B.R. 58 (Bankr. D. Del. 2002) .......................................................................8

*Kottler v. Deutsche Bank AG*,
No. 08 Civ. 7773 (PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010)...............................23

*In re Laser Arms Corp. Sec. Litig.*,
794 F. Supp. 475 (S.D.N.Y. 1989) *aff'd*, 969 F.2d 15 (2d Cir. 1992)...................................25

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
993 F.2d 11 (2d Cir.), *cert. denied*, 510 U.S. 959 (1993).......................................................28

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) .................................................................................28

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)................................................................................28

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
170 F.R.D. 417 (E.D. La. 1997).........................................................................27

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) ..................................................................19, 31

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)..............................................................................17

*In re Mortg. & Realty Trust*,
125 B.R. 575 (Bankr. C.D. Cal. 1991)................................................................12

*In re Musicland Holding Corp.*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) ........................................11

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003).....................................................................31, 32

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) ...................................................................22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985), *remanded to*, 732 F.2d 1286 (Kan. 1987),
*cert. denied*, 487 U.S. 1223 (1988)..............................................................24, 25

*In re Prempro Prods. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005).........................................................................24

*Reid v. White Motor Corp.*,
886 F.2d 1462 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990).....................8

*In re Ret. Builders, Inc.*,
96 B.R. 390 (Bankr. S.D. Fla. 1988)....................................................................14

*In re Rezulin Prods. Liab. Litig.*,
210 F.R.D. 61 (S.D.N.Y. 2002), *reconsideration denied*,
224 F.R.D. 346 (S.D.N.Y. 2004) ...................................................................23, 24

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995)...............................27

*In re Sacred Heart Hosp. of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995) ........................................................8, 9, 11, 14

*Sanneman v. Chrysler Corp.*,
191 F.R.D. 441 (E.D. Pa. 2000)..................................................................................20, 22

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir.), *reh'g denied,* 35 F. App'x 859 (11th Cir.),
*cert. denied,* 537 U.S. 884 (2002).............................................................................23

*In re Standard Metals Corp.*,
817 F.2d 625 (10th Cir.), *reh'g granted*, 839 F.3d 1383 (10th Cir. 1987),
*cert. dismissed*, 488 U.S. 881 (1988).......................................................................13

*Stephens v. Montgomery Ward*,
193 Cal. App. 3d 411 (1987) ........................................................................................31

*Strain v. Nutri/System, Inc.*,
No. Civ. A. 90-2772, 1990 WL 209325 (E.D. Pa. Dec. 12, 1990) .........................23

*Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*,
Civ. A. No. 89-2181-V, 1992 WL 193661 (D. Kan. July 15, 1992) ......................23

*In re Thomson McKinnon Sec. Inc.*,
133 B.R. 39 (Bankr. S.D.N.Y. 1991) ..............................................................8, 9, 10, 12

*In re Thomson McKinnon Sec., Inc.*,
143 B.R. 612 (Bankr. S.D.N.Y. 1992) ...........................................................................33

*In re Thomson McKinnon Sec., Inc.*,
150 B.R. 98 (Bankr. S.D.N.Y. 1992) .......................................................................11, 12

*In re Trebol Motors Distrib. Corp.*,
220 B.R. 500 (B.A.P. 1st Cir. 1998) ..............................................................................14

*In re Tronox Inc.*,
No. 09-10156 (ALG), 2010 WL 1849394 (Bankr. S.D.N.Y. Mar. 6, 2010) ..........12

*Truckway, Inc. v. Gen. Elec.*,
No. Civ. A. 91-0122, 1992 WL 70575 (E.D. Pa. Mar. 30, 1992)............................23

*In re United Cos. Fin. Corp.*,
277 B.R. 596 (Bankr. D. Del. 2002) ................................................................................8

*In re Vioxx Prods. Liab. Litig.*,
No. MDL 1657, 2008 WL 4681368 (E.D. La. Oct. 21, 2008),
*aff'd*, 300 F. App'x 261 (5th Cir. 2008).................................................................32

*Wallis v. Ford Motor Co.*,
208 S.W.3d 153 (Ark. 2005)............................................................................................20

*Walsh v. Ford Motor Co.*,
    130 F.R.D. 260 (D.D.C.), *reconsideration denied*,
    130 F.R.D. 514 (D.D.C. 1990), *appeal dismissed*,
    945 F.2d 1188 (D.C. Cir. 1991) ............................................................................26

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) .......................................................... passim

*In re Worldcom, Inc.*,
    343 B.R. .......................................................................................................19, 25

*In re Zenith Labs., Inc.*,
    104 B.R. 659 (D.N.J. 1989) ...........................................................................12

### STATUTES

11 U.S.C. § 105(a) ...........................................................................................32

28 U.S.C. § 157 .................................................................................................4

28 U.S.C. § 502 ..................................................................................1, 15, 334

28 U.S.C. § 503 .................................................................................................1

28 U.S.C. § 1334 ...............................................................................................4

Cal. Civ. Code § 1790 .......................................................................................6

Cal. Comm. Code § 2313 ..................................................................................6

Ohio Rev. Code § 1302.26 ................................................................................6

### OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, Ch. 20
    (Class Actions Under the Bankruptcy Laws) § 20:1 (4th ed. 2002) .......................13

Fed. R. Bankr. P. 9007 ....................................................................................32

Fed. R. Bankr. P. 3003 ...............................................................................1, 15

Fed. R. Bankr. P. 3007 .....................................................................................1

Fed. R. Bankr. P. 7001 .....................................................................................8

Fed. R. Bankr. P. 7023 ...................................................................8, 9, 10, 17

Fed. R. Bankr. P. 9007 ....................................................................................32

Fed. R. Bankr. P. 9014 ..................................................................................................3, 8, 9, 10

Fed. R. Civ. P. 23 ............................................................................................................ passim

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") respectfully

represent:

### Relief Requested

1.      The Debtors file this objection (the "**Objection**"), pursuant to section 502

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code

Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of

Notice Thereof (the "**Bar Date Order**") [ECF No. 4079], establishing November 30, 2009 as the

bar date (the "**Bar Date**").  Through this Objection, the Debtors seek entry of an order

disallowing and expunging Proofs of Claim Nos. 45630, 45628, and 45629 (collectively, the

"**GTO Putative Class Claims**") respectively filed by William O'Connor and Melody O'Connor;

John Pakai; and David Sidner (collectively, the "**GTO Plaintiffs**"), individually and purportedly

on behalf of various classes including a putative class of California GTO owners and lessees, a

putative class of Florida GTO owners and lessees, a putative class of Ohio GTO owners and

lessees, and a putative 48-state class, which excludes California and Florida owners (collectively,

the "**GTO Putative Classes**").[1]  A copy of each of the GTO Putative Class Claims are annexed

---

[1] The GTO Plaintiffs seek a total amount of approximately $26.4 million on behalf of the GTO Putative Classes.
(*See* Claim No. 45630 (total claim amount of $1,316,630); Claim No. 45628 (total claim amount of $6,022,695);
Claim No. 45629 (total claim amount of $19,110,919).)

hereto as **Exhibits "A" through "C."**  Annexed to each Proof of Claim is a "**Proof of Claim**

**Attachment**," which includes a summary of the GTO Putative Class Action, as defined herein.

        2.      The Proof of Claim Attachments describe the various claims asserted

against the Debtors by the GTO Plaintiffs in the three complaints filed in the Eastern District of

California (the "**GTO Putative Class Action**").  Generally, the GTO Putative Class Action

asserts causes of action for breaches of express and implied warranty under federal and state law,

violation of the deceptive trade practice acts of Florida and Ohio, and unjust enrichment under

Florida and Ohio state law.  These claims purportedly arise from the Debtors' production,

marketing, and sale of certain Pontiac GTO vehicles (the "**Debtors' Products**"), which the GTO

Plaintiffs allege have suspension and alignment systems that were uniformly defective, causing

premature tire wear and necessitating tire replacement and repair/adjustment to the vehicles'

suspension and alignment systems.  The GTO Plaintiffs also allege that the Debtors included

misleading and deceptive information in the warranty provided to the GTO Plaintiffs related to

the suspension and alignment systems.  The GTO Plaintiffs seek, through the Class Action

Complaint filed by William and Melody O'Connor in the Eastern District of California (the

"**California Class Complaint**"), the First Amended Complaint, Class Action, filed by David

Sidner in the Eastern District of California (the "**National/Ohio Class Complaint**"), and the

Third Amended Class Action Complaint filed by John Paikai in the Eastern District of California

(the "**Florida Class Complaint**") (collectively, the "**Class Complaints**"), *inter alia*, (1) to

certify the GTO Putative Classes; (2) restitution and disgorgement; (3) monetary damages; (4)

civil penalties to the extent permitted by applicable law; (5) injunctive relief requiring the

Debtors to cease wrongful marketing of the Debtors' Products, enjoining the Debtors from

continuing unlawful and unfair business acts, and requiring the Debtors to engage in a corrective

notice campaign.  (*See* National/Ohio Class Complaint at 22; California Class Complaint at 10-11; Florida Class Complaint at 19.)  The GTO Putative Class Action was not certified before June 1, 2009 (the "**Commencement Date**"), when each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and the GTO Plaintiffs have not sought class certification from this Court.

3.    As discussed below, while some courts have allowed the filing of class proofs of claims in some bankruptcy cases, whether to permit a class claim to proceed lies within the sound discretion of the court.  In exercising their discretion, courts consider, among other things, whether (i) the class claimant timely moved to extend the application of Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), (ii) the benefits that generally support class certification in civil litigation are realizable in the bankruptcy case, and (iii) the claim satisfies the strict requirements of Rule 23.

4.    The GTO Putative Class Claims should be disallowed in their entirety because, *inter alia*, (i) the GTO Plaintiffs have failed to satisfy the basic procedural requirements of Bankruptcy Rules 9014, (ii) the GTO Putative Classes do not satisfy Rule 23, and (iii) even if the GTO Putative Classes did satisfy Rule 23, the benefits that generally support class certification in civil litigation are not realizable in these chapter 11 cases.  The GTO Putative Class Claims do not satisfy Rule 23 because of the numerous issues of fact that would predominate over any common questions and because the GTO Plaintiffs are neither typical of the putative class nor adequate class representatives.  In addition, the need for injunctive relief has been mooted, and injunctive relief would provide no deterrent effect, as the Debtors no longer operate a business and are liquidating.

5.      Despite notice by publication of the Bar Date to the putative class members encompassed by the GTO Putative Class Action, other than the claims filed by the GTO Plaintiffs, there have been no claims filed in this Court seeking damages or requesting relief in connection with the alleged defect of Debtors' Products.  Moreover, because the Debtors have provided such notice, it would be unfair and unnecessary to burden the Debtors' estates with the additional cost and associated delay of providing these potential claimants with a second opportunity to assert claims as class claimants.  Requiring additional notice to be given by the Debtors to the GTO Putative Classes would unnecessarily drain the Debtors' estates.  Further, litigation of the GTO Putative Class Claims would further deplete the pool of assets available for distribution to the Debtors' creditors.  As a result, the Court should (i) disallow the GTO Putative Class Claims in their entirety, or (ii) in the alternative, not allow the GTO Putative Class Claims to proceed as class claims.

## **Jurisdiction**

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Relevant Facts to GTO Putative Class Claims**

7.      On September 16, 2009, this Court entered the Bar Date Order which, among other things, established November 30, 2009 as the Bar Date and set forth specific procedures for filing proofs of claims.  The Bar Date Order requires, among other things, that a proof of claim must "set forth with specificity" the legal and factual basis for the alleged claim and include supporting documentation or an explanation as to why such documentation is not available.  (Bar Date Order at 2.)

8.      On November 24, 2009, the GTO Plaintiffs filed the GTO Putative Class Claims.  The GTO Putative Class Claims attach a summary of the GTO Putative Class Action, which was originally filed in the United States District Court of the Eastern District of California and consolidated into Civil Action No. 2:07-cv-00892.  The GTO Putative Class Action was not certified before the Commencement Date,[2] and the GTO Plaintiffs have not sought class certification from this Court.

9.      The GTO Putative Class Action was the result of three separate causes of action that were filed in the United States District Court for the Eastern District of California.[3] The same counsel represents all of the GTO Plaintiffs.

10.     The GTO Putative Class Action set forth various causes of action related to breach of express and implied warranty, unfair and deceptive trade practices, and unjust enrichment/restitution, on behalf of one putative nationwide class and five statewide –sub-classes.  (*See* Nationwide/Ohio Class Complaint at 12; California Class Complaint at 4; Florida Class Complaint at 12.)  Specifically, the Nationwide/Ohio Class Complaint requests certification of the following classes:

> "**48 State Class**":  All current and former owners and lessees of model year 2004, 2005, and 2006 Pontiac GTOs purchased or leased in the United States, excluding California and Florida, who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO

---

[2] Capitalized terms used but not defined in this section shall have the definitions ascribed to them below.

[3] First on May 16, 2008, the Eastern District entered an order on a joint motion to consolidate the California Class Complaint with the Nationwide/Ohio Class Complaint as "the actions involve plaintiffs with similar complaints against the same defendant, are based on the same event (alleged tire failure on 2004, 2005 and 2006 Pontiac GTOs), and raise the same or similar claims, questions of fact and questions of law."  (*See* May 16, 2008 Consolidation Order in Civ. S-07-892 FCD GGH.)  Likewise, on October 23, 2008 the same court entered another consolidation order on the unopposed motion to consolidate the Florida Class Complaint filed by David Sidner in the Eastern District of California.  (*See* Oct. 23, 2008 Consolidation Order in Civ. S-07-892 FCD GGH.)

> warranty in connection with premature or uneven inner should [sic] tire wear or for struts hitting the tires.
>
> **"Ohio Sub-Class"**:  All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the State of Ohio.
>
> **"Ohio Warranty Sub-Class"**:  Ohio Sub-Class members who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO warranty in connection with premature or uneven inner should [sic] tire wear or for struts hitting the tires.

(Nationwide/Ohio Class Complaint at 12, ¶ 37.)  The Nationwide/Ohio Class Complaint alleges:

(i) breach of written warranty under the Magnuson-Moss Warranty Act on behalf of the 48 State

Class, (ii) violation of the Ohio Consumer Sales Practices Act and unjust enrichment on behalf of

the Ohio Sub-Class, and (iii) breach of written warranty under the Ohio Rev. Code § 1302.26 on

behalf of the Ohio Warranty Sub-Class.  (*See id.* at 15-21.)  The California Class Complaint

requests certification of the following class:

> **"California Class"**:  All current and former owners and lessees of model year 2004 and 2005 Pontiac GTOs purchased or leased in the State of California.

(California Class Complaint at 4, ¶ 15.)  On behalf of the California Class, the California Class

Complaint alleges (i) violations of the Song-Beverly Act (Cal. Civ. Code § 1790) for both

express and implied warranty, (ii) breach of express warranty under California Commercial Code

§ 2313, and (iii) violations of the California Unfair Competition Laws.  (*See id.* at 6-10.)  The

Florida Class Complaint also requests certification of the following classes:

> **"Florida Class"**:  All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the State of Florida.
>
> **"Florida Warranty Sub-Class"**:  All [Florida] Class members who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO

> warranty in connection with premature or uneven inner shoulder
> tire wear or for struts hitting the tires.

(Florida Class Complaint at 12, ¶ 41.)  The Florida Class Complaint alleges (i) violations of the

Florida Deceptive and Unfair Trade Practices Act and unjust enrichment on behalf of the Florida

Class, and (ii) breach of express warranty on behalf of the Florida Warranty Sub-Class.  (*See id.*

at 15-19.)

    11.    The GTO Plaintiffs' claims purportedly arise from the Debtors' marketing

and sale of Debtors' Products, which the GTO Plaintiffs allege had suspension and alignment

systems that were uniformly defective, resulting in premature tire wear and necessitating repair

and adjustment.  (*See* Proof of Claim Attachments at 1-3.)  Additionally, the GTO Plaintiffs

assert that the express warranty provided to the Putative Classes' members required the Debtors

to (1) replace prematurely worn tires at no charge, (2) repair and adjust the improper suspension

and alignment settings which was necessitated by the defect, at no charge, and (3) to repair the

defect in the alignment and suspension system, at no charge.  (*See id.*)  Moreover, the GTO

Plaintiffs allege that the Debtors included misleading and deceptive information in the warranty

information provided to the GTO Plaintiffs by its false promise that the factory alignment was

sufficient for the vehicle.[4]  (*See id.*)

    12.    As previously discussed, the Class Complaints seek, *inter alia*, (1) to

certify the GTO Putative Classes; (2) restitution and disgorgement; (3) monetary damages; (4)

---

[4] The GTO Putative Class Action contains causes of action for breach of express warranty.  (*See* National/Ohio
Class Complaint at 22; California Class Complaint at 10-11; Florida Class Complaint at 19.)  The Debtors have no
liability for such claims, and they were expressly assumed by the purchaser under the terms of the Master Sale and
Purchase Agreement, dated as of June 1, 2009 (as amended, the "**Purchase Agreement**").  Specifically, pursuant to
the Purchase Agreement, the purchaser assumed "all liabilities arising under express written warranties of Sellers
that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-
owned vehicles or new or remanufactured motor vehicles and equipment (including service parts, accessories,
engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing."  (*See*
Purchase Agmt. § 2.3(vii).)

civil penalties to the extent permitted by applicable law; (5) injunctive relief requiring the

Debtors to cease wrongful marketing of the Debtors' Products, enjoining the Debtors from

continuing unlawful and unfair business acts, and requiring the Debtors to engage in a corrective

notice campaign.  (*See* National/Ohio Class Complaint at 22; California Class Complaint at 10-

11; Florida Class Complaint at 19.)

### The Relief Requested by the Debtors Should Be Approved by the Court

**I.     Application of Bankruptcy Rule 7023 to a Class Proof of
        Claim Is Discretionary and Should Be Denied in This Case**

13.     There is no absolute right to file a class proof of claim under the

Bankruptcy Code.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619 (Bankr.

S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Sacred Heart Hosp. of Norristown*, 177

B.R. 16, 22 (Bankr. E.D. Pa. 1995) (noting that class action device may be utilized in appropriate

contexts, but should be used sparingly).  Application of Bankruptcy Rule 7023 to class proofs of

claim[5] lies within the ***sound discretion*** of the court.[6]  In determining whether to exercise

---

[5] Part VII of the Bankruptcy Rules, which includes Bankruptcy Rule 7023, only applies to adversary proceedings. *See* Fed. R. Bankr. P. 7001.  Bankruptcy Rule 9014, however, adopts certain of the rules from Part VII for application in contested matters.  Bankruptcy Rule 7023 is not among them.  *See* Fed. R. Bankr. P. 9014.  Thus, plaintiffs seeking the application of Bankruptcy Rule 7023 (and by implication, Rule 23) to a class proof of claim are required to *move* under Bankruptcy Rule 9014 for a court to apply the rules in Part VII.  Fed. R. Bankr. P. 9014; *accord In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating that "[f]or a Class Claim to proceed . . . the bankruptcy court must direct Rule 23 to apply").  *See, e.g., Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990); *In re Charter Co.*, 876 F.2d 866, 876 (11th Cir. 1989) , *cert. dismissed*, 496 U.S. 944 (1990) (holding that proof of claim filed on behalf of class of claimants is valid, but that "does not mean that the appellants may proceed, without more, to represent a class in their bankruptcy action. Under the bankruptcy posture of this case, Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

[6] *See, e.g., In re Bally Total Fitness*, 402 B.R. at 620 ("[C]ourts may exercise their discretion to extend Rule 23 to allow the filing of a class proof of claim."); *In re Thomson McKinnon Sec. Inc.*, 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (Bankruptcy Rule 7023 and Rule 23 "give the court substantial discretion to consider the benefits and costs of class litigation") (citing *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988)), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992); *accord In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("Whether to certify a class claim is within the discretion of the bankruptcy court."); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002) (same); *Reid*, 886 F.2d at 1469-70 (stating that "Rule 9014 authorizes bankruptcy judges, within their discretion, to invoke Rule 7023, and thereby Fed. R. Civ. P. 23, the class action rule, to 'any stage' in contested

discretion and permit a class proof of claim, courts primarily look at (i) whether the class

claimant moved to extend the application of Rule 23 to its proof of claim; (ii) whether the

benefits derived from the use of the class claim device are consistent with the goals of

bankruptcy; and (iii) whether the claims which the proponent seeks to certify fulfill the

requirements of Rule 23.  *See In re Bally Total Fitness*, 402 B.R. at 620; *In re Woodward*, 205

B.R. at 369; *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("In

exercising that discretion, the bankruptcy court first decides under Rule 9014 whether or not to

apply Rule 23, Fed. R. Civ. P., to a "contested matter," *i.e.*, the purported class claim; if and only

if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23

are satisfied.").

14.    When evaluating these requirements, courts have considered a variety of

factors, including, *inter alia*:

- **whether claimants are in "compliance with the Bankruptcy procedures regulating the filing of class proofs of claim in a bankruptcy case,"** *see, e.g., In re Thomson*, 133 B.R. at 41 (disallowing class proof of claim where named plaintiff failed to file a Rule 9014 motion requesting that Rule 7023 apply);

- **whether the debtor intends to liquidate**, *see In re Thomson*, 133 B.R. at 41 (noting that context of liquidating chapter 11 plan supports rejection of class proofs of claim);

- **whether or not a purported class was previously certified**, *see, e.g., In re Bally Total Fitness*, 402 B.R. at 620 (refusing to allow class proof of claim where class was not certified pre-petition); *In re Sacred Heart Hosp.*, 177 B.R. at 23 (classes certified pre-petition are "best candidates" for a class proof of claim);

- **whether the class claim device will result in "increased efficiency, compensation to injured parties, and deterrence of future wrongdoing**

matters, including, class proofs of claim."); *In re Charter Co.*, 876 F.2d at 876 ("[u]nder the bankruptcy posture of this case Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

**by the debtor,**" *see In re Woodward*, 205 B.R. at 376 (emphasis added and internal citations omitted); *accord In re Thomson*, 133 B.R. at 40 ("Manifestly, the bankruptcy court's control of the debtor's affairs might make class certification unnecessary.");

- **whether the entertainment of class claims would subject the administration of the bankruptcy case to undue delay**, *see, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 ("[A] court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate."); and

- **whether or not adequate notice of the bar date was afforded to potential class members**, *see In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) (refusing to certify class where adequate notice of bar date was afforded to potential class members, and thus to certify class would be "unwarranted, unfair, and possibly violate the due process rights of other creditors") (internal quotations omitted).

"If application of Bankruptcy Rule 7023 is rejected by the bankruptcy court in an exercise of discretion . . . the result will be that class claims will be denied and expunged."  *In re Thomson*, 133 B.R. at 40-41.  As set forth below, the Court should exercise its discretion to reject the application of Bankruptcy Rule 7023 and to disallow the GTO Putative Class Claims.[7]

A.    **The GTO Plaintiffs Failed to Comply with Bankruptcy Rule 9014**

15.    A plaintiff who seeks to bring a class proof of claim must comply with the applicable procedural requirements.  *See, e.g., In re Am. Reserve Corp.*, 840 F.2d at 494 (noting the applicability of Bankruptcy Rule 9014 and its procedural requirements); *see In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7 (same).  These procedural requirements are not complicated.  Because a claim "cannot be allowed as a class claim until the bankruptcy court directs that Rule

---

[7] In the event this Court determines to apply Rule 23 to the GTO Putative Class Claims, the Debtors reserve any and all rights to seek class-related discovery to test the GTO Plaintiffs' sweeping, unsubstantiated representations about the nature of the class members' allegations.

23 apply," the putative class representative must file a motion with the bankruptcy court

requesting the application of Rule 23.  *In re Woodward*, 205 B.R. at 368, 370.

   16.  The requirement that a class claimant timely move under Bankruptcy Rule

9014 to incorporate Rule 23 is intended to protect a debtors' estate from undue delay of the

debtors' plan process.  *See In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr.

S.D.N.Y. 1992).  In *In re Woodward*, another case in which there was no pre-bankruptcy class

certification, the court stated that the class claim should be disallowed if the putative class

representative did not expeditiously move in the bankruptcy case for certification of its class

claim, as a lengthy certification battle could delay the administration and distribution of the

bankruptcy estate.  *See In re Woodward*, 205 B.R. at 370; *see also In re Ephedra Prods. Liab.

Litig.*, 329 B.R. at 5 (disallowing class products liability claim because "it is simply too late in

the administration of this Chapter 11 case to ask the Court to apply Rule 23 to class proofs of

claim.").  As of the date hereof, more than a year after the Commencement Date and over a year

after the Bar Date, the GTO Plaintiffs have not sought permission of the Court to file a class

proof of claim, or moved for certification of the class.  The Debtors have already filed their

proposed plan, the disclosure statement has been approved, and a confirmation hearing is

planned to occur shortly.  As a result, if allowed to proceed, the GTO Putative Class Claims will

unduly delay the administration of the Debtors' estates and their ability to consummate a plan of

liquidation ("**Plan**"), because the adjudication of the claim and its attendant class-certification

issues could take months.  *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 24

(disallowing class claim where allowance would cause "very substantial and apparently

unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is

presently a plan before us for imminent confirmation"); *In re Ephedra Prods. Liab. Litig.*, 329

B.R. at 5 (disallowing class claim where liquidating plan was already submitted and "[a]pplying

Rule 23 to class claims now would initiate protracted litigation that might delay distribution of

the estate for years"); *In re Musicland Holding Corp.*, 362 B.R. 644, 656 (Bankr. S.D.N.Y. 2007)

(Bernstein, J.) (refusing to allow class claim where it would "seriously delay the administration

of the case" because debtors had already filed confirmation motion and court had approved

disclosure statement); *see also In re Tronox Inc.*, No. 09-10156 (ALG), 2010 WL 1849394, at *3

(Bankr. S.D.N.Y. Mar. 6, 2010) (Gropper, J.) (refusing to enlarge time to file class proof of

claim where such claim could "likely result in substantial delay and expense and compromise the

parties' efforts to formulate a plan on the present timeline" where proposed plan had been filed

and disclosure statement was scheduled to be filed within two months).  Accordingly, this Court

should enforce these procedural requirements and expunge the GTO Putative Class Claims.  *See,*

*e.g.*, *In re Woodward*, 205 B.R. at 369-71; *In re Thomson*, 150 B.R. at 100-01; *In re Thomson*,

133 B.R. at 41; *In re Zenith Labs., Inc.*, 104 B.R. 659, 664 (D.N.J. 1989); *In re Ephedra Prods.*

*Liab. Litig.*, 329 B.R. at 6-7.

       **B.**      **Allowing the GTO Putative Class Claims to Proceed as a Class Action Will**
               **Not Be Effective or Efficient**

        17.     For a class action to proceed, "the benefits that generally support class

certification in civil litigation must be realizable in the bankruptcy case."  *In re Woodward*, 205

B.R. at 369 (citing *In re Mortg. & Realty Trust*, 125 B.R. 575, 580 (Bankr. C.D. Cal. 1991)).  In

this case, neither the purported class nor the Court would benefit from recognizing a class proof

of claim and allowing a class action to proceed.

        18.     The GTO Putative Class Claims do not provide for the most effective or

efficient means of determining the rights of the members of the Putative Classes.  First, a class

proof of claim is not appropriate if individual issues of fact would predominate over any questions common to the members of the purported class. For that reason, the court in *In re Woodward*, in considering putative class claims for false advertising and misrepresentation, found that a class action is "generally not appropriate to resolve claims based upon common law fraud." *In re Woodward*, 205 B.R. at 371.

19.    Second, in general, the Bankruptcy Code and Bankruptcy Rules can provide the same benefits and serve the same purposes as class action procedures in normal civil litigation. *See id.* at 376 ("a bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum"); 6 Herbert Newberg & Alba Conte, Newberg on Class Actions, Ch. 20 (Class Actions Under the Bankruptcy Laws) § 20:1 at 265 (4th ed. 2002) (commenting that "bankruptcy proceedings are already capable of handling group claims, which operate essentially as statutory class actions."); *see also In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir.), *reh'g granted*, 839 F.3d 1383 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881 (1988). Although members of the Putative Classes can no longer file their claims because the Bar Date has passed, they had ample notice of the Bar Date and opportunity to take advantage of these bankruptcy procedures.

20.    Third, the bankruptcy claims process is, in some respects, *superior* to class action procedures. As the court observed in *In re Woodward*:

> [W]hile the class action ordinarily provides compensation that cannot otherwise be achieved by aggregating small claims, the bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions. In addition, there may be little economic justification to object to a modest claim, even where grounds exist. Hence, a creditor holding such a claim may not have to do anything more to prove his case or vindicate his rights.

205 B.R. at 376 (citations omitted).  Here, notwithstanding the chance to do so, none of the

members of the Putative Classes, save for the named plaintiffs, filed a claim against the Debtors.

21.    The facts of the instant case are similar to the facts of *In re Woodward*,

where the court exercised its discretion to deny the class claim, finding that "the class claim will

not deter an insolvent, non-operating debtor's management or shareholders, or induce them to

police future conduct [where] . . . the debtor has . . . a liquidating plan that wipes out equity.  The

managers have moved on to other jobs – the debtor has closed its doors – and the prosecution of

the class action will [] not affect how they act in the future."  205 B.R. at 376.  Here, the Debtors

have discontinued the sale of the Debtors' Products and have sold substantially all their assets.

The Debtors are no longer operating a business, and thus, there would be no deterrent value of a

class award.

**C.**    **The GTO Putative Class Claims Were Not Certified Prior to the Commencement Date**

22.    A number of courts have held that class proofs of claim may be

inappropriate where a class representative was not certified prepetition in a non-bankruptcy

forum.  *See, e.g.*, *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998);

*In re Sacred Heart Hosp.*, 177 B.R. at 23; *In re Ret. Builders, Inc.*, 96 B.R. 390, 391 (Bankr.

S.D. Fla. 1988); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5.  The court in *Sacred Heart

Hospital* held that use of the class proof of claim device in bankruptcy cases may be appropriate

in certain contexts, but "such contexts should be chosen most sparingly."  *In re Sacred Heart

Hosp.*, 177 B.R. at 22.  Specifically, the *Sacred Heart Hospital* court noted that cases where (i) a

class has been certified prepetition by a nonbankruptcy court, or (ii) a class action has been filed

and allowed to proceed as a class action in a nonbankruptcy forum for a considerable time

prepetition, may present appropriate contexts for recognizing a class proof of claim.  *See id.*

23.    The classes in the Putative GTO Class Action were not certified at the

time of the Debtors' chapter 11 filing, and they remain uncertified today.  ***The Debtors have***

***been unable to find a single bankruptcy case within the Second Circuit in which a pre-***

***certification class claim was allowed.***

### D.    Adequate Notice of the Bankruptcy Case and the Bar Date Was Provided to the Putative Classes

24.    One of the principal goals of the Bankruptcy Code is to ensure that

creditors of equal rank receive equal treatment in the distribution of a debtor's assets.  The

Bankruptcy Code and Bankruptcy Rules, therefore, require creditors to file proofs of claim

before a bar date.  *See* 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(3).  Regardless of how

worthy their claims may be, claimants who fail to file before an applicable bar date "shall not be

treated as a creditor with respect to such claim for the purposes of voting and distribution."  Fed.

R. Bankr. P. 3003(c)(2).  These same procedural hurdles must be met by all creditors.

25.    In determining whether a class proof of claim should be allowed, courts

consider whether adequate notice of the bar date was afforded to potential class members.  *See In*

*re Jamesway Corp.*, 1997 WL 327105, at *8.  As that court stated:

> The proper inquiry is whether [the debtor] acted reasonably in
> selecting means likely to inform persons affected by the Bar Date
> and these chapter 11 proceedings, not whether each claimant
> actually received notice . . . [a]s to those plaintiffs who might not
> have received actual notice of the Bar Date, we find that by
> complying with the terms of the Bar Date Order, mailing a Claim
> Package to every known creditor and publishing notice of the Bar
> Date, [the Debtor's] actions satisfy due process."

*Id.* (internal citations omitted).

26.    In this case, the putative members in the GTO Plaintiffs' proposed class received proper notice of the Debtors' chapter 11 cases and the Bar Date in accordance with the provisions of the Bar Date Order.  At great expense to their estates, the Debtors published notice of the Bar Date nationwide in *The Wall Street Journal* (Global Edition – North America, Europe, and Asia), *The New York Times* (National), *USA Today* (Monday through Thursday, National), *Detroit Free Press, Detroit News, LeJournal de Montreal* (French), *Montreal Gazette* (English), *The Globe and Mail* (Canada), and *The National Post.*  (*See* Bar Date Order at 7.)  Providing individual notice to all owners of the Debtors' Products would be impossible or, at minimum, prohibitively expensive, as customers regularly resell their vehicles, and the Debtors would have no way to know the identities of the current owners of their products.  Providing notice of the Debtors' bankruptcy cases and the Bar Date by publication, however, constituted a viable alternative to the impracticability, or perhaps even impossibility, of identifying and providing individual notice to each of the consumer purchasers of the Debtors' Products.  Additionally, in this case, in particular, the Debtors would be hard-pressed to find a handful of Americans who were not aware of the chapter 11 filing of General Motors Corporation.

27.    No member of the Putative Classes (save for the GTO Plaintiffs) has filed a claim, and members of the Putative Classes who failed to file proofs of claim could not be said to have relied on the filing of the GTO Putative Class Claim because the GTO Putative Classes were not certified as of the Commencement Date.  *See In re Jamesway Corp.*, 1997 WL 327105, at *10 (denying motion for class certification of class claim where "[n]o class was pre-certified such that purported class members who did not chose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order").  Because the Debtors have provided notice by publication to the members of the Putative Class

encompassed by the GTO Putative Class Claims, it would be unfair and unnecessary to burden

the Debtors' estates with the additional cost and associated delay of providing these potential

claimants with a second notice.  Further, the only type of notice the Debtors could reasonably

provide these persons today would be another publication notice, effectively duplicating the

notice they have already been provided and extending the Bar Date for a particular sub-group of

general unsecured creditors who are not entitled to special treatment under the Bankruptcy Code.

## II.    The GTO Putative Class Claims Cannot Satisfy the Requirements of Rule 23

28.     Even if this Court were to permit the GTO Plaintiffs to file class claims,

the GTO Putative Class Claims would not satisfy Rule 23.  To proceed as class claims, the GTO

Putative Class Claims must meet all four requirements of subsection (a) of Rule 23, as made

applicable to bankruptcy cases by Bankruptcy Rule 7023.  *See Moore v. PaineWebber, Inc.*, 306

F.3d 1247, 1252 (2d Cir. 2002); *see also In re Woodward*, 205 B.R. at 371.  Rule 23(a) provides:

> (a)    Prerequisites to Class Action.  One or more members of a class
> may sue or be sued as representative parties on behalf of all only
> if:
>
>   (1)    the class is so numerous that joinder of all members
>   is impracticable;
>
>   (2)    there are questions of law or fact common to the
>   class;
>
>   (3)    the claims or defenses of the representative parties
>   are typical of the claims or defenses of the class;
>   and
>
>   (4)    the representative parties will fairly and adequately
>   protect the interests of the class.

Fed. R. Civ. P. 23(a).

29.     In addition, to proceed as class claims, the GTO Putative Class Claims

must satisfy subsections (b)(2) and (b)(3) of Rule 23, as the GTO Putative Class Claims seek

injunctive relief and monetary damages. *See In re Drexel Burnham Lambert Group, Inc.*, 960

F.2d 285, 290 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993). For purposes of this

objection, Rule 23(b)(2) provides in relevant part:

> the party opposing the class has acted or refused to act on
> grounds that apply generally to the class, so that final
> injunctive relief or corresponding declaratory relief is
> appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). In addition, Rule 23(b)(3) provides in relevant part:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to
> other available methods for the fair and efficient adjudication
> of the controversy.

Fed. R. Civ. P. 23(b)(3).

30.    As set forth below, numerous individual issues of fact would predominate

over any common questions in the GTO Putative Class Claims because the GTO Plaintiffs are

neither typical of the members of the Putative Classes nor adequate class representatives.

Moreover, class treatment is neither efficient nor superior in these circumstances. As discussed

below, the GTO Plaintiffs' claims raise a host of individual issues of fact regarding each putative

class member's right to recovery. These individual issues would require mini trials as to each

class member's right to relief, a result that courts have repeatedly found requires denial of class

certification.

### A.    The Injunctive Relief Sought by the GTO Putative Class Claims Under Rule 23(b)(2) Is Mooted by the Debtors' Liquidation

31.    First, the GTO Putative Class Claims cannot meet the requirements of

Rule 23(b)(2), as any claim for injunctive relief is mooted because the Debtors do not presently

operate a business and are liquidating. *See In re Ephedra Prods. Liab. Litig*., 329 B.R. at 9 n.5

("Insofar as the class claims seek injunctive relief against Twinlabs under Rule 23(b)(2), they are moot now that Twinlabs has gone out of business and existence").  As a result, the Debtors cannot be compelled to, *inter alia*, engage in a corrective notice campaign, cease any marketing practice, or stop conducting business in any matter.  (*See* National/Ohio Class Complaint at 22; California Class Complaint at 10-11; Florida Class Complaint at 19.)

### B.    **Numerous Individual Issues Predominate Over Any Common Questions**

32.    The GTO Plaintiffs also fail to satisfy Rule 23(b)(3) because individual issues predominate over common questions and a class action is not a superior method of adjudicating the GTO Putative Class Claims.

### 1.    **Necessity of Individual Fact Determinations Destroys Predominance**

33.    Courts deny certification where "individualized issues of fact abound."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 349 (S.D.N.Y. 2002); *see also In re Worldcom, Inc.*, 343 B.R. at 427, n.26 ("the need to evaluate factual differences along with divergent legal issues defeats the predominance requirement under Rule 23(b)(3)") (internal quotes and citations omitted).  Courts have specifically held that class actions alleging motor vehicle product liability claims and seeking economic loss damages often involve individual questions of fact rather than questions of fact common to a class:

> [T]he need to establish injury and causation with respect to each class member will necessarily require a detailed factual inquiry including physical examination of each vehicle, a mind-boggling concept that is preclusively costly in both time and money.  We will not certify a class that will result in an administrative process lasting for untold years, where individual threshold questions will overshadow common issues regarding Defendant's alleged conduct. Accordingly, we conclude that Plaintiff has not adequately shown that common issues predominate over individual issues. *Courts are hesitant to certify classes in litigation where individual use factors present themselves, such as cases involving allegedly defective*

*motor vehicles and parts.*  The administrative burdens are frequently too unmanageable for a class action to make sense in such cases.

*Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 449 (E.D. Pa. 2000) (emphasis added).

34.    The "preclusively costly" "administrative burdens" warned about in the *Sanneman* case would certainly be present in this action involving in excess of 40,000 class vehicles.  (*See* O'Connor Proof of Claim Attachment at 4 (4,463 cars in California Class); Sidner Proof of Claim Attachment at 5 (33,848 cars in Nationwide/Ohio Class); Paikai Proof of Claim Attachment at 5 (2,445 cars in Florida Class).)  Allowing the GTO Putative Class Claims would force the Court to conduct individual fact inquiries with respect to all 40,000 vehicles. Specifically, the Court would have to determine (1) whether each vehicle needed repairs to its alignment and suspense systems; (2) if repair was needed, whether the repair was caused by the alleged defect in the Debtors' Products; and (3) whether the alleged defect caused preventive tire wear.  And, as detailed below, all of these issues could be caused by a host of factors.  Such an individualized analysis is crucial in this case because a class member cannot succeed on a product liability-based claim unless that specific class member's product has had an actual malfunction.  *See, e.g.*, *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 159 (Ark. 2005) (plaintiff must "allege that the vehicle has actually malfunctioned").

35.    Individualized factual inquiries would need to be performed with respect to each Putative GTO Class member regarding the cause of his tire wear.  Such inquiries, include, but are not limited to, whether the wear was caused by or partially caused by:  (i) the vehicle's geometry, including steering and suspension system, toe angle, and camber angle; (ii) the vehicle's wheel position; (iii) the vehicle's load; (iv) the power/torque and the driver's use of engine torque and horsepower; (v) environmental conditions, including temperature and moisture

conditions, road surface texture; (vi) road conditions, including things such as potholes that can

change a vehicles alignment geometry; (vii) varying surface material types, such as gravel,

asphalt, or concrete and the variations within these material types; (viii) maintenance of correct

tire pressure; (ix) improper wheel service alignment procedures; (x) improper calibrated wheel

alignment service equipment; (xi) wear or damage to other chassis components, such as shocks,

struts, bearings, wheels, and brakes, from normal vehicle service; (xii) driver habits, including

acceleration, braking, cornering techniques, and speed levels; and (xiii) city driving versus

highway driving.

   36.  Additionally, even if a Putative GTO Class member's tires were

determined to be caused by the vehicle's alignment and suspension system, individualized

factual inquiries would need to be performed to address the issues of: (i) if, or when, alignment

and suspension system repairs were needed; (ii) the causation of any such alignment and

suspension system problems; (iii) whether the allegedly defective alignment and suspension

system was covered by warranty; (iv) whether the allegedly defective alignment and suspension

system was already repaired by the Debtors; (v) whether the class member provided proper

notice of the alleged breach of warranty to the Debtors; (vi) whether the class member properly

maintained their vehicle; (vii) whether the Debtors and/or the consumer had knowledge of the

alleged alignment and suspension system defect; (viii) whether the class member relied on the

Debtors' alleged misrepresentations regarding the alignment and suspension system; (ix) whether

such alleged misrepresentations were material; (x) whether a class member's claims are barred

by the statue of limitations or other affirmative defenses such as comparative negligence (cause

by, *inter alia*, the GTO Plaintiffs' failure to properly maintain the vehicle or improper use of the

vehicle); (xi) and what the appropriate remedy should be for any particular class member. This

*nonexclusive* list provides a mere sampling of the myriad of factual differences that will

"overshadow common issues." *See Sanneman*, 191 F.R.D. at 449.  When coupled with the

variations in law relevant to determining the foregoing facts, the GTO Plaintiffs cannot meet

their burden of satisfying the predominance requirement and, thus, the putative class fails to meet

the requirements of Rule 23.

37.    Additionally, individualized issues predominate with respect to the

misrepresentation allegations made in connection with the consumer protection claims, including

individual questions as to:  (i) the fact of product purchase or ownership; (ii) the differing

statements; (iii) whether each class member was exposed to allegedly deceptive statements; and

(iv) whether each class member purchased products as a result of such statements.

38.    Further, given the absence of any objective evidence of who purchased

such products or relied upon any of the Debtors' alleged misrepresentations, the Court would be

required, at the threshold, to make a series of individual credibility determinations as to who is

and is not a member of the GTO Putative Classes.  *See In re Phenylpropanolamine (PPA) Prods.*

*Liab. Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (motion to certify class asserting consumer

fraud claims on behalf of non-injured consumers of PPA products denied primarily because of

difficulty in determining who had even purchased products at issue).

39.    Thus, numerous individual issues also exist as to whether any alleged

misrepresentation caused each particular class member to purchase any product, precluding class

certification.  For this reason, courts routinely reject class certification of cases claiming unfair

trade practices, breach of warranty, unjust enrichment and other claims similar to those alleged

here – including in cases in which plaintiffs allege a common, class-wide product defect –

because of the overwhelming number of *individual issues* relating to reliance, causation, and materiality.[8]

40.    Finally, determination of whether each class member suffered "actual injury," would require an individualized inquiry into the degree of efficacy of the product for that particular class member – an inquiry that would, once again, swamp any common issues and render class treatment wholly unmanageable.

> **2.    Variations in the Laws Applicable to GTO Putative Class Action Defeat Predominance With Respect to the 48 State Class**

41.    Federal courts have made it clear time and again that before a court can analyze whether the factors under Federal Rule 23 are satisfied, the court must determine which state's or states' substantive law governs the underlying claims.  *See*, *e.g.*, *In re Prempro Prods.*

---

[8] *See, e.g.*, *Kottler v. Deutsche Bank AG*, No. 08 Civ. 7773 (PAC), 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010) (finding predominance not satisfied because varied misrepresentations preclude class certification in fraud claim); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1362-66 (11th Cir.) (certification of fraud class action vacated because individual issues of reliance and causation predominated), *reh'g denied*, 35 F. App'x 859 (11th Cir.), *cert. denied*, 537 U.S. 884 (2002); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) (same); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 737, 745 (5th Cir. 1996) (denying certification in action where claims included "violation of state consumer protection statutes" and "disgorge[ment]" of profits, holding that class action "cannot be certified when individual reliance will be an issue"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) (individual issues would predominate on claim for restitution of purchase price arising from alleged undisclosed product dangers), *reconsideration denied*, 224 F.R.D. 346 (S.D.N.Y. 2004); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455-57 (D.N.J. 1998) (denying class certification in case asserting latent product defect in light of many individual issues of fact, including ascertainable injury, causation, reliance and privity); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 372-75 (E.D. La.) (same), *reconsideration denied*, No. Civ. A. MDL 991, 1997 WL 191488, (E.D. La. Apr. 17, 1997); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 342-44 (D.N.J. 1997) (same); *Truckway, Inc. v. Gen. Elec.*, No. Civ. A. 91-0122, 1992 WL 70575, at *5, *7 (E.D. Pa. Mar. 30, 1992) (individual issues predominated in state consumer fraud action "[b]ecause not all members of the class would have relied on the alleged fraudulent material omissions and misrepresentation . . . and because a determination of whether each member of the class was defrauded . . . would require each class member to individually prove the issue of reliance and fraud on a case by case basis").  *See also Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 n.3 (S.D. Ind. 1995) ("The necessity of proving reliance by each class member upon the alleged fraudulent misrepresentations causes individual issues to predominate."); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, Civ. A. No. 89-2181-V, 1992 WL 193661, at *5 (D. Kan. July 15, 1992) ("individual issues of causation and reliance as to each class member would predominate over the common issues of liability"); *Strain v. Nutri/System, Inc.*, No. Civ. A. 90-2772, 1990 WL 209325, at *6 (E.D. Pa. Dec. 12, 1990) (class certification denied where "each class member [would have] to narrate a story which includes individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of those advertisements").

*Liab. Litig.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005) ("Not only must the choice-of-law issue be

addressed at the class certification stage – it must be tackled at the front end since it pervades

every element of [Federal Rule] 23."); *Chin,* 182 F.R.D. at 457.  This is logical because it would

be impossible to determine whether there are questions of law common to the class, for example,

without first determining what the substance of the applicable laws is.  Both federal case law and

the Constitution mandate that this Court perform a choice of law analysis before determining

whether this case is properly certified as a class action.  *See Phillips Petroleum Co. v. Shutts*, 472

U.S. 797, 821 (1985), *remanded to*, 732 F.2d 1286 (Kan. 1987), *cert. denied*, 487 U.S. 1223

(1988).

   42. This requirement begets the question of which state's or states' law should

apply to the class claims when a class is comprised of individuals living, and allegedly injured by

the defendant's conduct, in 48 different states.  Federal courts in this jurisdiction and across the

country have uniformly answered this question by holding that where a purported class action

would involve class members from more than one state "the court will apply the law of each of

the states from which plaintiffs hail."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,

174 F.R.D. at 348; *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 70-71; *Kaczmarek v. Int'l Bus.

Machs. Corp.,* 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999); *Feinstein v. Firestone Tire & Rubber

Co.*, 535 F. Supp. 595, 605 (S.D.N.Y. 1982).  To hold otherwise and apply only the forum state's

substantive law to the class certification analysis would violate Constitutional principles of Due

Process and federalism.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 335-36 (1981),

*reh'g denied*, 450 U.S. 971 (1981).[9]

---

[9] The Supreme Court expressly admonished a state court for applying its state's substantive law to a nationwide
class action filed within its borders, noting that the state "may not take a transaction with little or no relationship to
the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common

43.     Compliance with the Constitutional requirement of applying every state's law to the claims in a nationwide class action is fatal to class certification when the applicable laws differ from state to state.  Courts in this jurisdiction and throughout the country have repeatedly held that "the need of a court to apply diverse laws and varied burdens of proof to the individual class members' claims defeats the predominance requirement of Federal Rule 23(b)(3)."  *In re Worldcom, Inc.*, 343 B.R. 412, 427 (Bankr. S.D.N.Y. 2006); *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 495 (S.D.N.Y. 1989) *aff'd*, 969 F.2d 15 (2d Cir. 1992) ("In the absence of a single state law governing each entire common law claim, common questions of law would not predominate over individual questions."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) ("No class action is proper unless all litigants are governed by the same legal rules."); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698-99 (Tex. 2002) (citing dozens of federal and state cases that have "rejected class certification when multiple states' laws must be applied.").

44.     The GTO Plaintiffs have the burden of establishing that variations in the laws of the jurisdictions do not "swamp any common issues and defeat predominance" with respect to the 48 State Class.  *Castano*, 84 F.3d at 741.  Here, the GTO Plaintiffs cannot meet this burden as courts have repeatedly determined that variations in the causes of action at issue in this case – *inter alia*, violation of the Magnuson-Moss Warranty Act – have made certification of nationwide class actions impermissible.

---

question of law.'"  *Phillips Petroleum Co.*, 472 U.S. at 821.  The *Phillips Petroleum* Court concluded that the forum state's "lack of 'interest' in claims unrelated to that State and the substantive conflict with" other jurisdictions rendered the application of the forum state's law to every claim in the nationwide class action "sufficiently arbitrary and unfair as to exceed constitutional limits."  *Id.* at 822.

45.     Courts in this jurisdiction and others have denied class certification upon finding that common questions of law do not predominate where the plaintiff alleges violation of the federal Magnuson-Moss Warranty Act:

> [T]he states have diverse bodies of law on warranty . . . .  The state laws on these claims present different procedural and substantive elements, including differing requirements of privity, demand, scienter and reliance.  In addition, bringing the case under the Magnuson-Moss Act does not make uniform the plaintiffs' warranty claims because liability under that Act depends on state law which differs on issues of express and implied warranties . . . .  Defendant's counsel presents a lengthy analysis of the diverse laws of the various states and has shown sufficiently that many of the jurisdictions have different standards and elements of proof for the claims of breach of express and implied warranty . . . .

*Kaczmarek*, 186 F.R.D. at 313; s*ee also In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. at 368-69, n.17 ("That plaintiffs assert claims under the federal Magnuson-Moss act does not preclude the application of this rule [that the party seeking certification of a nationwide class must 'credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.'  Plaintiffs' claims under the Magnuson-Moss Act are derivative of their state law breach of warranty claims."); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C.), *reconsideration denied*, 130 F.R.D. 514 (D.D.C. 1990), *appeal dismissed*, 945 F.2d 1188 (D.C. Cir. 1991) ("Before the question of the similarities between states' implied warranty laws can be addressed, this Court must once again consider the impact of varying state vertical privity requirements.  As this Court has previously held, the genesis of a Magnuson-Moss implied warranty action is state law.").

46.     Because the Court must apply the substantive laws of all jurisdictions from which the members of the 48 State Class hail, and such application results in conflicting

laws, the 48 State Class cannot be certified, and the GTO Putative Class Claims should be disallowed.

  **C.**  **The GTO Plaintiffs Cannot Establish that a Class Action Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating this Controversy**

    47.  In addition to the requirement that common questions of law or fact must predominate over individual issues, the GTO Plaintiffs must also establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given the vast number of individual variations of law and fact that would be involved with allowing this case to proceed as a nationwide class action, the action would be unmanageable as a single trial. The issue of the Debtors' liability would have to be litigated in thousands of trials which, even if logistically feasible, would violate the constitutional mandate that "entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano*, 84 F.3d at 750 (denying certification for lack of superiority); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995) (same); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 427 (E.D. La. 1997) (same). Given that a class action is not manageable in this case, it is not superior to other available methods for fairly and efficiently adjudicating the controversy. Thus, the Putative Classes cannot meet the requirements of Rule 23(b)(3).

  **D.**  **Neither "Commonality" nor "Typicality" Can Be Established by the GTO Plaintiffs**

    48.  To proceed as a class claim, Rule 23(a)(2) and Rule 23(a)(3) require that the putative class representative also demonstrate commonality and typicality. To establish

typicality, plaintiffs must show that they are situated similarly to class members.[10]  The Court

cannot "presume" that plaintiffs' claims are typical of other claims.  *Gen. Tel. Co. of Sw. v.

Falcon*, 457 U.S. 147, 158, 160 (1982) ("actual, not presumed, conformance with Rule 23(a)

remains, however, indispensable").

   49. The GTO Plaintiffs' claims are not typical of those alleged on behalf of

any of their respective Putative Classes.  First, each GTO Plaintiff's claim allegedly arises from

certain of the Debtors' Products that the GTO Plaintiffs claim to have purchased and operated,

allegedly in reliance upon the Debtors "affirmatively misrepresenting the purported attributes of

the GTO" and "conceal[ing] material facts regarding the GTO alignment problems."  (*See*

Nationwide/Ohio Class Complaint ¶ 5; California Class Complaint ¶ 52, Florida Class Complaint

¶ 5.)  Yet, the Putative Classes would include plaintiffs who followed *differing* maintenance

programs, operated their vehicles *differently*, and that purchased vehicles under a variety of

*different* factual circumstances.  *See, e.g.*, *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993

F.2d 11, 14 (2d Cir.), *cert. denied*, 510 U.S. 959 (1993) (typicality defeated by plaintiff's broad

definition of class as all individuals who signed similar automobile lease agreements).

   50. Finally, the GTO Plaintiffs' claims in the Florida Class Complaint and

Nationwide/Ohio Class Complaint, cannot be typical of those of all members of those GTO

Putative Classes because the bases of the unfair and deceptive trade practices claims vary

---

[10] *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (typicality "requires that the claims of the class representative be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each member makes similar arguments to prove the defendant's liability'") (quoting *In re Drexel*, 960 F.2d at 291); *see, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class").

greatly.  The claims appear to be based on a variety of allegedly deceptive marketing practices, including, but not limited to,

- (i) the Debtors' "(false) promise that the factory alignment was sufficient for the vehicle."  (Florida Class Complaint ¶ 21; Nationwide/Ohio Class Complaint ¶ 21);

- (ii) the 2004 GTO owner manual statement that "[t]he wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest tire life and best overall performance.  Scheduled wheel alignment and wheel balancing are not needed.  However, if you notice unusual tire wear or your vehicle pulling one way or the other, the alignment may need to be reset.  If you notice your vehicle vibrating when driving on a smooth road, your wheels may need to be rebalanced."  (Florida Class Complaint ¶ 21; Nationwide/Ohio Class Complaint ¶ 21); and

- (iii) that the Debtors "consistently misrepresented and/or concealed material facts in its advertisements, sales and marketing materials, warranties, and through its sales representatives and dealers, by concealing from, failing to disclose and/or misrepresenting to Plaintiffs and the Class material information regarding the vehicles, including, but not limited to the fact that: (1) a critical component in the automobiles, the suspension system and alignment setting (and specifically the camber settings), was defective; (2) the defect in the suspension system and alignment setting (and specifically the camber settings) would cause premature and uneven wear of the Vehicle's tires; and (3) GM would not honor its warranty to repair the defect or provide full reimbursement for damages caused by the defect."  (Florida Class Complaint ¶ 22; Nationwide/Ohio Class Complaint ¶ 22.)

51.    Each member of the GTO Putative Classes might base his or her unfair and deceptive trade practice claim on one or more of the foregoing assertions, might have seen or been induced to purchase by one or a combination of statements, and might have considered some, all, or none of the foregoing assertions to be material.  In fact, none of the GTO Plaintiffs actually state or refer to a specific misrepresentation they individually relied on.  Specifically, in the Nationwide/Ohio Class Complaint, the named plaintiff never asserts that he relied on *any* misrepresentation, but rather states only that a "GM representative told Plaintiff [to] return to the

dealer and failed to disclose the fact that the know (*sic*) defect was responsible for the type of

wear described by the Plaintiff." (*See* Nationwide/Ohio Class Complaint ¶ 32.)  The Florida

Class Complaint is even more vague regarding how the named plaintiff was damaged by a

misrepresentation, stating:

> [p]rior to Pakai purchasing his Vehicle, GTO promoted the Vehicle
> in their advertising and marketing materials.  GM failed to disclose
> the defects in the suspension and alignment settings that result in a
> markedly reduced useful life of the tires.  If Paikai had known
> about these facts, he would not have purchased the Vehicle.

(*See* Florida Class Complaint ¶ 28.)  On the face of the GTO Putative Class Claims, there could

be no "typical" plaintiff for the unlimited permutations of factual predicates for the claims

alleged.

**E.    The GTO Plaintiffs Are Not Adequate Representatives**

52.    To establish that it will adequately represent the proposed class, the GTO

Plaintiffs must have common interests with the unnamed members of the class, and it must

appear that the GTO Plaintiffs will vigorously prosecute the interests of the class through

qualified counsel.  *See, e.g.*, *Edwards v. McCormick*, 196 F.R.D. 487, 495 (S.D. Ohio 2000).

Initially, without evidence of who would actually comprise the class, a court cannot evaluate

whether the GTO Plaintiffs have a common interest with the unnamed class members, and any

determination of adequate representation would be purely speculative.  *Id.*  Furthermore, the

required elements that the plaintiffs have "claims or defenses typical of the class" and that they

can "adequately represent and protect the interests of other members of the class" are

intertwined: "to be an adequate representative, plaintiff must show that his claims are typical of

the claims of the class."  *See, e.g.*, *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 669

(1993) ("[T]o be an adequate representative, plaintiff must show that his claims are typical of the

claims of the class.") (quoting *Stephens v. Montgomery Ward*, 193 Cal. App. 3d 411, 422

(1987)).  As described above, there can be no "typical" plaintiff and, thus, no adequate

representative for any of the Putative Classes.

53.    Moreover, the burden to move expeditiously for class certification and

recognition within a bankruptcy proceeding, in compliance with Rule 23(c)(1), falls on the class

representative and "the class representative's failure to move for class certification is a strong

indication that he will not fairly and adequately represent the interests of the class."  *In re

Woodward*, 205 B.R. at 370.  As the GTO Putative Class Claims fail to meet the requirements of

Rule 23, the Court should not allow them to proceed as class claims, and the GTO Putative Class

Claims should be expunged.

### F.    The Members of the Putative Classes Are Not Properly Identifiable

54.    Finally, inherent in Rule 23 is the requirement that a proposed class be

"identifiable" or ascertainable.  *See In re MTBE Prods. Liab. Litig.*, 209 F.R.D. at 336-37.  This

requirement is not satisfied if a court must conduct a merits inquiry merely to determine who is

included in the proposed class.  Courts have determined that proposed classes are not identifiable

when class definitions are "overly broad, amorphous or vague."  *See, e.g., In re Fosamax Prods.

Liab. Litig.*, 248 F.R.D. 389, 396-97 (S.D.N.Y. 2008) (rejecting class certification because class

was defined to broadly) (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla.

2003)).  The *In re Fosamax* court found the plaintiffs' class definition to be overly broad when it

failed to put any dosage or duration of use limitations on class membership, as well as failing to

screen out people with unique risk factor.  *See id.*  Likewise, the Putative GTO Class Claims are

too broad to be identifiable as they seek to include all current and former owners of Pontiac

GTOs over a three year period without any limitations.  *See supra* at 5-7.  This is especially

troubling given the only manifestation of the alleged defect at issue is tire wear, which can be caused by one or many distinct factors and is heavily affected by each individual's use of his or her automobile.  *See supra* at 21-24.

55.    In order to determine class membership for the Putative Classes, the Court would, thus, need to first determine (i) whether the putative class members' automobiles had tire wear that was "premature" or "uneven" or (ii) whether the putative class members' automobiles' struts hit the tires.  As discussed above, it is extremely difficult to determine the cause of tire wear and, if it is determined that tire wear is caused by alignment, it is extremely difficult to determine how a car became out of alignment.  *See supra* at 21-24.  Accordingly, the members of these Putative Classes are not properly ascertainable under Rule 23 and should be disallowed. *See In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *9-10 (E.D. La. Oct. 21, 2008) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class action on the pleadings."), *aff'd*, 300 F. App'x 261 (5th Cir. 2008); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); *Barasich v. Shell Pipeline Co.*, No. Civ. A. 05-4180, 2008 WL 6468611, at *4 (E.D. La. June 19, 2008).

## Notice

56.    Notice of this Motion has been provided to the GTO Plaintiffs and to the parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 24, 2010 [ECF No. 6750].  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

57.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.[11]

Dated: New York, New York
       December 17, 2010

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

---

[11] Should the Court find it appropriate to permit the GTO Putative Class Claims to proceed as a class claim in whole or in part, the Debtors reserve their rights to request that an expedited procedure be established in this Court to quickly liquidate such claim and an expedited hearing to estimate the GTO Putative Class Claims pursuant to section 502(c) of the Bankruptcy Code. *See* 11 U.S.C. § 502(c) ("There **shall** be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case…") (emphasis added); *see also In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993); *In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992). Further, should an estimation proceeding go forward, the GTO Plaintiffs should be required to provide substantial documentation to support the alleged nature of their claim.

**<u>Exhibit A</u>**

**<u>O'Connor Putative Class Claim</u>**
**<u>Proof of Claim No. 45630</u>**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor (Check Only One)
☒ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS LLC (f/k/a Saturn LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem Inc) — 09-13558 (REG)

*Your Claim is Scheduled As Follows*

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see item 9) All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503

Name of Creditor (the person or other entity to whom the debtor owes money or
William O'Connor & Melody O'Connor, On Behalf of Themselves and All Others Similarly Situated

Name and address where notices should be sent
James E Miller
Patrick A Klingman (PK-3658)
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, CT 06412-1311
Telephone number (860) 526-1100
Email Address jem@sfmslaw.com
pklingman@sfmslaw.com

Telephone number
Email Address

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Name and address where payment should be sent (if different from above)

FILED - 45630
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

*THE GARDEN CITY GROUP, INC.*
*NOV 2 5 2009*

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor you do not need to file this proof of claim form  If you assert that your claim as scheduled by the Debtor is DISPUTED UNLIQUIDATED or CONTINGENT a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions you need not file again

1 Amount of Claim as of Date Case Filed, June 1, 2009      $ 1,316,629 60

If all or part of your claim is secured, complete item 4 below, however if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

2 Basis for Claim _____ See Attachment hereto
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor _____
3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____  Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____      Amount Unsecured $_____

6 Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of redacted on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

5  Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a)  If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages salaries or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4)
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5)
☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7)
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8)
☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__)

Amount entitled to priority
$_____

* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date 11/24/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any   [signature]   Counsel for Plaintiffs | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U.S.C. §§ 152 and 3571
Modified B10 (GCG) (12/08)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al , | Case No 09-50026 (REG) |
| Defendant | (Jointly Administered) |

**PROOF OF CLAIM ATTACHMENT -**
**O'CONNOR et al. v. GENERAL MOTORS CORPORATION,**
**2:07-cv-0892-FCD-GGH**

2.    **Basis for Claim:**

A.    **Background**

Plaintiffs, William and Melody O'Connor ("O'Connors' or ' Plaintiffs"), filed the Class

Action Complaint ("CAC") in this matter in the United State District Court for the Eastern

District of California on May 10, 2007, and asserted claims under the Song-Beverly Consumer

Warranty Act ("Song Beverly Act"), and Unfair Competition Law ("UCL") and for breach of

express warranty   Defendant, General Motors Corporation ("GM" or "Defendant"), filed its

answer on June 15, 2007

B.    **Basis For Claim**

The CAC alleges, on behalf of a statewide Class of GTO owners and lessees in the State

of California (the "proposed California Class"), that Pontiac's GTO automobiles ("Vehicle(s)"),

which were marketed and sold in the United States by Defendant, contain a uniformly defective

suspension and alignment system that substantially affects their use, value, and safety  (CAC ¶¶

1-3 ) As a result, GTO purchasers and lessees are being deprived of the normal and reasonable

use of the Vehicles

Defendant provided Plaintiffs and each owner and lessee of the Vehicles with the same

uniform 3 year, 36.000 mile bumper-to-bumper factory warranty   Defendant's express warranty,

in pertinent part. provides

> The warranty covers repairs to correct any vehicle defect related to
> materials or workmanship occurring during the warranty period
>
> *    *    *    *    *    *    *
>
> Warranty repairs. including towing, parts. and labor, will be made
> at no charge
>
> *    *    *    *    *    *    *
>
> The tires supplied with your vehicle are covered against defects in
> material or workmanship under the Bumper-to-Bumper coverage
> Any tire replaced will continue to be warranted for the remaining
> portion of the Bumper-to-Bumper coverage period

Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiffs' prematurely

worn tires at no charge, (2) to repair and adjust the improper suspension and alignment settings

which was necessitated by the defect, at no charge, and (3) to repair the defect at no charge

Defendant has these same obligations with respect to Plaintiffs and the proposed California

Class, but has failed to satisfy these obligations  (CAC, ¶ 7 )

Defendant also included misleading and deceptive information in the warranty

information provided to Plaintiffs and members of the proposed California Class, by its (false)

promise that the factory alignment was sufficient for the vehicle  According to the GTO owner

manual  "The wheels on your vehicle were aligned and balanced carefully at the factory to give

you the longest tire life and best overall performance  Scheduled wheel alignment and wheel

-2-

balancing are not needed   However, if you notice unusual tire wear or your vehicle pulling one

way or the other, the alignment may need to be reset   If you notice your vehicle vibrating when

driving on a smooth road, your wheels may need to be rebalanced " Despite these promises and

obligations, GM denied warranty coverage to Plaintiffs and the proposed California Class.

Having received numerous complaints, on February 16, 2007, the United States

Department of Transportation. National Highway Traffic Safety Administration ("NHTSA")

opened an investigation into complaints of front tire failures due to front strut to tire interference

on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control   In

connection with that investigation, GM provided documents and information to NHTSA

Although NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report

Summary stated that "excessive negative camber is an apparent issue " Also according to the

NHTSA investigation, "approximately 90% of the final factory camber settings available for

complaint and warranty claim vehicles GM provided   had right wheel camber settings that were

out of specifications ".

On April 25, 2005, Plaintiffs purchased a new 2005 Pontiac GTO, VIN

6G2VX12U15L376341, from Weaver Auto & Truck Center ("Weaver" ), an authorized Pontiac

GTO dealer located in Grass Valley, California   The Vehicle was purchased pursuant to a

written contract of sale, under which Plaintiffs agreed to pay $37,661 for the Vehicle, including

tax and license   Plaintiffs purchased the Vehicle for their personal and family use

On November 21, 2006, with the odometer reading only 16,056 miles, Plaintiffs took

their Vehicle to Weaver and reported that the right front tire was significantly worn   After

examining Plaintiffs' Vehicle, the representative from Weaver determined that the inner edge of

the tire was worn and that the cord was showing  This premature and uneven tire wear was the

result of the tire grazing the Vehicle's strut during normal operation and use by Plaintiffs

Weaver replaced the tire and performed an alignment at a cost to Plaintiffs of $295 01

    **C.**   **Damages**

     In its response to NHTSA's investigation, GM stated that it had imported for sale or

lease 40.756 GTOs  In its discovery responses, GM admitted that it sold or leased 4,463 of the

Vehicles in the State of California  Plaintiffs incurred costs in the amount of at least $295 01 as

a result of the defect in the GTOs  Using the damages incurred by Plaintiffs as a representative

number, members of the proposed California Class have incurred damages in the amount of

**$1,316,629.60** ($295 01 x 4,463)

Dated  November 24, 2009

                By     */s/Patrick A  Klingman*
                      James E  Miller
                      Patrick A  Klingman (PK-3658)
                      Karen M  Leser
                      SHEPHERD, FINKELMAN, MILLER
                      & SHAH, LLP
                      65 Main Street
                      Chester, CT 06412
                      Telephone  (860) 526-1100
                      Email  jmiller@sfmslaw com
                      Email  pklingman@sfmslaw com
                      Email  kleser@sfmslaw com

                      Mark F Anderson
                      KEMNITZER, ANDERSON, BARRON,
                      OGILVIE & BREWER, LLP
                      445 Bush Street, 6th Floor
                      San Francisco, CA  94108
                      Telephone  (415) 861-2265
                      Email  mark@kabolaw com

-4-

James C  Shah
Natalie Finkelman Bennett
Nathan C  Zipperian
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E  State Street
Media. PA 19063
Telephone  (610) 891-9880
Email  jshah@sfmslaw com
Email  nfinkelman@sfmslaw com
Email  nzipperian@sfmslaw com

Attorneys for Plaintiffs

**<u>Exhibit B</u>**

**<u>Paikai Putative Class Claim</u>**
**<u>Proof of Claim No. 45628</u>**

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM

| Name of Debtor (Check Only One) | Case No | Your Claim is Scheduled As Follows |
|---|---|---|
| ☑ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) | |
| ☐ MLCS LLC (f/k/a Saturn LLC) | 09-50027 (REG) | |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) | |
| ☐ MLC of Harlem Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) | |

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  but may be used for purpose of asserting a claim under 11 U S C § 503(b)(9) (see Item 4 9) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

**Name of Creditor** (the person or other entity to whom the debtor owes money or property) John Parkal, On Behalf of Himself and All Others Similarly Situated

Name and address where notices should be sent

    James E  Miller
    Patrick A  Klingman (PK-3658)
    Shepherd, Finkleman, Miller & Shah, LLP
    65 Main Street
    Chester CT 06412-1311
    Telephone number   (860) 526-1100
    Email Address      jem@sfmslaw com
                    pklingman@sfmslaw com

Telephone number
Email Address

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Name and address where payment should be sent (if different from above)

    FILED - 45628
    MOTORS LIQUIDATION COMPANY
    F/K/A GENERAL MOTORS CORP
    SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

(stamp) THE GARDEN CITY GROUP, INC.  NOV 25 2009

If an amount is identified above  you have a claim scheduled by one of the Debtors as shown  This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form  EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED  UNLIQUIDATED  or CONTINGENT  a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions  you need not file again

**1** Amount of Claim as of Date Case Filed, June 1, 2009      $ 6,022,695 10

If all or part of your claim is secured, complete item 4 below, however  if all of your claim is unsecured  do not complete  item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2** Basis for Claim                — See Attachment hereto
(See instruction #2 on reverse side )

**3** Last four digits of any number by which creditor identifies debtor _____

    **3a** Debtor may have scheduled account as _____
    (See instruction #3a on reverse side )

**4** Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff    ☐ Real Estate    ☐ Motor Vehicle    ☐ Equipment    ☐ Other
Describe

Value of Property $_____  Annual Interest Rate ____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection _____

Amount of Secured Claim $_____    Amount Unsecured $_____

**6** Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments  mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of  redacted  on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5** Amount of Claim Entitled to Priority under 11 U S C § 507(a)  If any  portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor s business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2 425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

Amount entitled to priority

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date  4/24/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any  (signature)   Counsel for Plaintiff | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re                                              Chapter 11

MOTORS LIQUIDATION COMPANY                         Case No  09-50026 (REG)
f/k/a GENERAL MOTORS
CORPORATION. *et al* ,

                    Defendant                      (Jointly Administered)

---

### PROOF OF CLAIM ATTACHMENT -
### PAIKAI *et al.* v. GENERAL MOTORS CORPORATION, NO. 2:07-cv-02469-FCD-GGH

2.    **Basis for Claim.**

A.    **Background**

The initial Class Action Complaint in this matter was filed by Plaintiff, Damon Mauro

(who was subsequently dismissed without prejudice from the action by stipulation), in the United

State District Court for the Eastern District of California on November 15, 2007, and asserted

claims on behalf of himself and all current and former owners and lessees of model year 2004,

2005 and 2006 Pontiac GTOs ("GTOs" or "Vehicle(s)") under the Florida Deceptive and Unfair

Trade Practices Act, F S A §§ 501 201-501 213 ("FDUTPA"). and for breach of express

warranty and unjust enrichment  Defendant, General Motors Corporation ("GM" or

"Defendant"), filed its answer on December 19, 2007  On April 3, 2008, the First Amended

Class Action Complaint was filed adding John Paikai ("Paikai" or "Plaintiff") as a representative

plaintiff  Plaintiff clarified his allegations in a Second Amended Complaint filed on August 14,

2008. and a Third Amended Complaint ("TAC"), which was filed on February 23, 2009. and is

the operative pleading

B.    **Basis For Claim**

The TAC alleges claims, on behalf of a statewide Class of GTO owners and lessees in the State of Florida (the "proposed Florida Class"), that Pontiac's GTO automobiles, which were marketed and sold in the United States by Defendant, contain a uniformly defective suspension and alignment system that substantially affects their use, value, and safety [1] (TAC, ¶¶ 1-3) As a result, GTO purchasers and lessees are being deprived of the normal and reasonable use of the Vehicles (TAC, ¶ 2)

Defendant provided Plaintiff and each owner and lessee of the Vehicles with the same uniform 3 year, 36,000 mile bumper-to-bumper factory warranty  Defendant's express warranty, in pertinent part, provides

> The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period
>
> *     *     *     *     *     *     *
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge
>
> *     *     *     *     *     *     *
>
> The tires supplied with your vehicle are covered against defects in material or workmanship under the Bumper-to-Bumper coverage  Any tire replaced will continue to be warranted for the remaining portion of the Bumper-to-Bumper coverage period

Under this warranty, Defendant was obligated, *inter alia* (1) to replace Plaintiff's prematurely worn tires at no charge, (2) to repair and adjust the improper suspension and alignment settings,

---

[1] The GTO was manufactured for just three model years, 2004-2006, all of which are part of this action  (TAC, ¶¶ 1, 7, 19)

-2-

which was necessitated by the defect, at no charge, and (3) to repair the defect at no charge
Defendant has these same obligations with respect to Plaintiff and the proposed Florida Class,
but has failed to satisfy these obligations

Defendant also included misleading and deceptive information in the warranty
information provided to Plaintiff and members of the proposed Florida Class, by its (false)
promise that the factory alignment was sufficient for the vehicle   According to the GTO owner
manual   "The wheels on your vehicle were aligned and balanced carefully at the factory to give
you the longest tire life and best overall performance   Scheduled wheel alignment and wheel
balancing are not needed   However, if you notice unusual tire wear or your vehicle pulling one
way or the other, the alignment may need to be reset   If you notice your vehicle vibrating when
driving on a smooth road, your wheels may need to be rebalanced "   Despite these promises and
obligations, GM denied warranty coverage to Plaintiff and the proposed Florida Class

Having received numerous complaints, on February 16, 2007, the United States
Department of Transportation, National Highway Traffic Safety Administration ("NHTSA")
opened an investigation into complaints of front tire failures due to front strut to tire interference
on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control   In
connection with that investigation, GM provided documents and information to the NHTSA
Although the NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report
Summary stated that "excessive negative camber is an apparent issue "   Also according to the
NHTSA investigation, ' approximately 90% of the final factory camber settings available for
complaint and warranty claim vehicles GM provided     had right wheel camber settings that were
out of specifications "

-3-

On September 20, 2005, Plaintiff purchased a 2005 Pontiac GTO,

VIN6G2VX12415L396749 from Allen Pontiac  The Vehicle had approximately 5,000 miles and

was a GM-certified, pre-owned vehicle  Paikai's GTO had standard 17" wheels and BF

Goodrich tires and was purchased pursuant to a written contract of sale, under which Paikai

agreed to pay $36,248 01 for the Vehicle, including tax and license  Prior to Paikai purchasing

his Vehicle, GTO promoted the Vehicle in their advertising and marketing materials  GM failed

to disclose the defects in the suspension and alignment settings that result in a markedly reduced

useful life of the tires  If Paikai had known about these facts, he would not have purchased the

Vehicle  On April 20, 2006, with the odometer only reading 12,003 miles, Plaintiff found that

the front tires were significantly worn on the inside shoulder and took his GTO to Yarbrough

Tire in Lake Placid, where it was determined that the tires needed to be replaced  This premature

and uneven tire wear was the result of, *inter alia*, an improperly designed, assembled, and/or

installed suspension system and alignment settings  Paikai paid Yarbrough Tire $1,895 14 for

four new (18") wheels and P235/40XR18 tires

In November 2007, Paikai took his GTO to Allen Pontiac because he thought it was

pulling to the right  After examining his GTO, and finding the alignment to be out of

specification, the dealership realigned the Vehicle  The dealership charged Paikai for the

alignment and did not offer to align the Vehicle under the warranty  By December 17, 2007, all

four of the tires on Plaintiff's Vehicle had inner shoulder wear and needed replacement  At that

time, Plaintiff's odometer reading was 32,372 (with only 20,369 miles on the tires)  Moreover,

Plaintiff had previously rotated the tires and had the Vehicle realigned at a GM dealership

Plaintiff had the tires replaced at Yarbrough Tire and paid $568 13 for four new tires

-4-

C.    **Damages**

In its response to the NHTSA's investigation, GM stated that it had imported for sale or

lease 40.756 GTOs  In 2008, the United States census bureau estimated that 6 0 % of the

population of the United States lives in Florida  Extrapolating those figures and multiplying

40,756 by 6 0%, one can reasonably conclude that there are 2,445 GTOs in the State of Florida

Plaintiff incurred costs in the amount of at least $2,463 27 ($568 13 + $1,895 14) as a result of

the defect in the GTOs  Using the damages incurred by Plaintiff as a representative number,

members of the proposed Florida Class have incurred damages in the amount of **$6,022,695.10**

($2.463 27 x 2,445)

Dated  November 24, 2009

By      /s/Patrick A  Klingman
        James E  Miller
        Patrick A  Klingman (PK-3658)
        Karen M  Leser
        SHEPHERD  FINKELMAN, MILLER
        & SHAH, LLP
        65 Main Street
        Chester, CT 06412
        Telephone  (860) 526-1100
        Email  jmiller@sfmslaw com
        Email  pklingman@sfmslaw com
        Email  kleser@sfmslaw com

        Mark F Anderson
        KEMNITZER, ANDERSON, BARRON,
        OGILVIE & BREWER, LLP
        445 Bush Street, 6th Floor
        San Francisco, CA  94108
        Telephone   (415) 861-2265
        Email  mark@kabolaw com

-5-

James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Email: jshah@sfmslaw.com
Email: nfinkelman@sfmslaw.com
Email: nzipperian@sfmslaw.com

Attorneys for Plaintiff

**Exhibit C**

**Sidner Putative Class Claim**
**Proof of Claim No. 45629**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

| Name of Debtor (Check Only One) | Case No |
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem Inc (f/k/a Chevrolet-Saturn of Harlem Inc) | 09-13558 (REG) |

NOTE *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 1) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

Your Claim is Scheduled As Follows

Name of Creditor (the person or other entity to whom the debtor owes money or property)  **David Sidner, On Behalf of Himself and All Others Similarly Situated**

| Name and address where notices should be sent | ☐ Check this box to indicate that this claim amends a previously filed claim |
| James E Miller | |
| Patrick A Klingman (PK-3658) | |
| Shepherd, Finkelman, Miller & Shah, LLP | Court Claim Number _____ |
| 65 Main Street | (If known) |
| Chester, CT 06412-1311 | |
| Telephone number  (860) 526-1100 | Filed on _____ |
| Email Address      jem@sfmslaw com | |
| Telephone number                     pklingman@sfmslaw com | |
| Email Address | |

If an amount is identified above you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions you need not file again

| Name and address where payment should be sent (if different from above) | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars |
| FILED - 45629 | |
| MOTORS LIQUIDATION COMPANY | |
| F/K/A GENERAL MOTORS CORP | |
| SDNY # 09-50026 (REG) | ☐ Check this box if you are the debtor or trustee in this case |
| Telephone number | |

1 Amount of Claim as of Date Case Filed, June 1, 2009        $ 19,110,919 28

If all or part of your claim is secured, complete item 4 below however if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is assessed pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

2 Basis for Claim _____  See Attachment hereto
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor _____

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____ Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____   Amount Unsecured $_____

6 Credits The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts contracts judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of redacted on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS   ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

5 Amount of Claim Entitled to Priority under 11 U S C § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2 425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___) Amount entitled to priority

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date 11/24/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any       "Counsel for Plaintiff" | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim* Fine of up to $500,000 or imprisonment for up to 5 years or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al . | Case No 09-50026 (REG) |
| Defendant | (Jointly Administered) |

## PROOF OF CLAIM ATTACHMENT -
## SIDNER et al. v. GENERAL MOTORS CORPORATION, NO. 2:07-cv-02469-FCD-GGH

2.    **Basis for Claim.**

   A.    **Background**

   The initial Complaint in this matter was filed by Plaintiff, David Sidner ("Plaintiff" or

"Sidner"), in the United State District Court for the Eastern District of California on October 23,

2008, and asserted claims under the Magnuson-Moss Warranty Act, 15 U S C §§ 2301 et seq

("MMWA"), the Ohio Consumer Sales Practices Act. Ohio Rev Code § 1345 01 et seq

("OCSPA") and for breach of express warranty and unjust enrichment On February 23, 2009,

Plaintiff clarified his allegations in a First Amended Complaint ("FAC") Defendant, General

Motors Corporation ("GM" or "Defendant "), filed its answer on March 30. 2009

   B.    **Basis For Claim**

   The FAC alleges, on behalf of a nationwide Class of GTO owners and lessees in the

United States, excluding owners and lessees in California and Florida (the "proposed Class"),

that Pontiac's GTO automobiles (the "Vehicle(s)"). which were marketed and sold in the United

States by Defendant, contain a uniformly defective suspension and alignment system that

substantially affects their use, value, and safety [1] (FAC, ¶¶ 1-3 )  As a result, GTO purchasers

and lessees are being deprived of the normal and reasonable use of the Vehicles  (FAC, ¶ 2 )

Defendant provided Plaintiff and each owner and lessee of the Vehicles with the same

uniform 3 year, 36,000 mile bumper-to-bumper factory warranty  Defendant's express warranty,

in pertinent part, provides

> The warranty covers repairs to correct any vehicle defect related to
> materials or workmanship occurring during the warranty period
>
> \*      \*      \*      \*      \*      \*      \*
>
> Warranty repairs, including towing, parts, and labor, will be made
> at no charge
>
> \*      \*      \*      \*      \*      \*      \*
>
> The tires supplied with your vehicle are covered against defects in
> material or workmanship under the Bumper-to-Bumper coverage
> Any tire replaced will continue to be warranted for the remaining
> portion of the Bumper-to-Bumper coverage period

Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiff's prematurely

worn tires at no charge, (2) to repair and adjust the improper suspension and alignment settings,

which was necessitated by the defect, at no charge, and (3) to repair the defect at no charge

Defendant has these same obligations with respect to Plaintiff and the proposed Class, but has

failed to satisfy these obligations  (FAC, ¶ 20 )

Defendant also included misleading and deceptive information in the warranty

information provided to Plaintiff and members of the proposed Class, by its (false) promise that

the factory alignment was sufficient for the vehicle  According to the GTO owner manual  "The

wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest

---

[1]The GTO was manufactured for just three model years, 2004-2006, all of which are part
of this action  (FAC, ¶ 1 )

-2-

tire life and best overall performance    Scheduled wheel alignment and wheel balancing are not

needed    However, if you notice unusual tire wear or your vehicle pulling one way or the other,

the alignment may need to be reset    If you notice your vehicle vibrating when driving on a

smooth road, your wheels may need to be rebalanced "  Despite these promises and obligations,

GM denied warranty coverage to Plaintiff and the proposed Class

Having received numerous complaints, on February 16, 2007, The United States

Department of Transportation, National Highway Traffic Safety Administration ("NHTSA")

opened an investigation into complaints of front tire failures due to front strut to tire interference

on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control    In

connection with that investigation, GM provided documents and information to NHTSA

Although NHTSA did not identify a safety related defect trend, the NHTSA Failure Report

Summary stated that "excessive negative camber is an apparent issue "  Also according to the

NHTSA investigation, "approximately 90% of the final factory camber settings available for

complaint and warranty claim vehicles GM provided    had right wheel camber settings that were

out of specifications "

On April 4, 2006, Plaintiff purchased a new 2006 Pontiac GTO, VIN

6G2VX12495L425978 from H & K Motor Sales, Inc . Continental Ohio, an authorized Pontiac

GTO dealer    The Vehicle was purchased pursuant to a written contract of sale, under which

Sidner paid $29,200, including tax and license    Plaintiff purchased the Vehicle for his personal

and family use

On February 10, 2007, Haydocy Pontiac GMC Buick ("Haydocy"), an authorized Pontiac

dealer located in Columbus, Ohio, rotated the tires on Plaintiff's Vehicle at odometer reading

-3-

6,549   On December 20, 2007, with the odometer reading 12,166 miles, Plaintiff noticed the left

front tire on his GTO had picked up a nail   Plaintiff took the Vehicle to National Tire and

Battery in Columbus Ohio where, upon inspection, a technician found the nail   During the

inspection, the technician also saw that the inside of the left front tire was shredded   Plaintiff

paid the tire retailer $260 61 to replace the tire, which was in immediate need of replacement

Within a month of having to replace the left front tire, Plaintiff noticed that the right rear

tire, which had been on the front of the Vehicle prior to the tires being rotated, was worn on the

outside edge of the tire   Prior to rotation, the outside edge had previously been on the inside edge

when the tire was on the left front of the Vehicle

In early January 2008, Plaintiff telephoned Haydocy's service department and explained

that he had a tire that was damaged, having apparently hit the front struts of the Vehicle

Although Plaintiff presented the issue to Haydocy, at a time which Defendant was clearly aware

of the defect, Plaintiff was told by the Haydocy representative that he should not bring his

Vehicle in because the tire wear would not be covered by any warranty   In denying warranty

coverage, the representative incorrectly stated that the tire problem was likely due to road hazard

(as opposed to the known defect)

Plaintiff next called GM's customer service number and complained about Haydocy's

refusal to replace the tire under warranty   The GM representative told Plaintiff to return to the

dealer and failed to disclose the fact that the know defect was responsible for the type of wear

described by Plaintiff   Plaintiff complied with the directive and took the Vehicle back to

Haydocy, at which time the dealer again reaffirmed that the tire would not be covered by

warranty   Rather than acknowledging that the tire wear was caused by the known defect, the

-4-

dealer incorrectly stated that the wear could have been caused "by anything."

Having presented the Vehicle for warranty coverage, and having wrongly been denied such coverage by GM, Plaintiff took his Vehicle to a Firestone store in Columbus, Ohio on or about January 26, 2008. After examining the Bridgestone/Firestone Potenza tires on Plaintiff's Vehicle, the technician wrote on the repair order that the tire was not eligible for the Firestone warranty because the tire was "rubbing on the strut." Plaintiff was required to pay Firestone $304 for a replacement tire.

## C.    **Damages**

In its response to NHTSA's investigation, GM stated that it had imported for sale or lease 40,756 GTOs. In 2008, the United States census bureau estimated that 6.0 % of the population of the United States lives in Florida. Extrapolating those figures and multiplying 40,756 by 6.0%, one can reasonably conclude that there are 2,445 GTOs in the State of Florida. In its discovery responses in the *O'Connor v General Motors* case (no. S-07-892 (E.D. Cal.), GM admitted that it sold or leased 4,463 of the Vehicles in the State of California. Subtracting the number of owners and lessees in Florida and California from the total number of Vehicles in the United States reveals that there are 33,848 owners and lessees in the remaining forty-eight (48) states which make up the proposed Class in this action. Plaintiff incurred costs in the amount of at least $564.61 ($304.00 + 260.61) as a result of the defect in the GTOs. Using the damages incurred by Plaintiff as a representative number, members of the proposed Class have incurred damages in the amount of **$19,110,919.28** (33,848 x $564.61).

-5-

Dated  November 24, 2009

By        */s/Patrick A  Klingman*
          James E  Miller
          Patrick A  Klingman (PK-3658)
          Karen M  Leser
          SHEPHERD, FINKELMAN, MILLER
          & SHAH  LLP
          65 Main Street
          Chester, CT 06412
          Telephone  (860) 526-1100
          Email  jmiller@sfmslaw com
          Email  pklingman@sfmslaw com
          Email  kleser@sfmslaw com

          Mark F Anderson
          KEMNITZER, ANDERSON, BARRON,
          OGILVIE & BREWER, LLP
          445 Bush Street, 6th Floor
          San Francisco, CA  94108
          Telephone  (415) 861-2265
          Email  mark@kabolaw com

          James C  Shah
          Natalie Finkelman Bennett
          Nathan C  Zipperian
          SHEPHERD, FINKELMAN, MILLER
          & SHAH, LLP
          35 E  State Street
          Media, PA 19063
          Telephone  (610) 891-9880
          Email  jshah@sfmslaw com
          Email  nfinkelman@sfmslaw com
          Email  nzipperian@sfmslaw com

          Attorneys for Plaintiff

**Exhibit D**

**California Class Complaint**

1  Mark F. Anderson (SBN 44787)
   KEMNITZER, ANDERSON, BARRON & OGILVIE LLP
2  445 Bush St, 6th Floor
   San Francisco, CA 94108
3  Telephone: (415) 623-3784
   Fax: (415) 861-3151
4  Email: mark@kabolaw.com

5  Attorneys for Plaintiffs

6  [Additional Counsel Listed on Signature Page]

7              **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8

9  WILLIAM O'CONNOR and            :    Case No.
   MELODY O'CONNOR, On Behalf Of   :
10 Themselves And All Others       :
   Similarly Situated,             :
11                                 :    Class Action
          Plaintiffs,              :
12                                 :
                                   :
13 v                               :
                                   :
14 GENERAL MOTORS CORPORATION,     :    JURY TRIAL DEMANDED
                                   :
   Defendant.                      :
15 _____

16              **CLASS ACTION COMPLAINT**

17     Plaintiffs, William and Melody O'Connor ("Plaintiffs" or "O'Connor"), husband and

18 wife, on behalf of themselves and all others similarly situated, allege, upon information and

19 belief, except as to their own actions, the investigation of their counsel, and the facts that are a

20 matter of public record, as follows:

21              **INTRODUCTION AND FACTUAL BACKGROUND**

22     1.     This class action is brought against Defendant, General Motors Corporation

23 ("GM" or "Defendant"), for the benefit and protection of all current and former owners and

24 lessees of model year 2004 and 2005 Pontiac GTOs ("subject vehicles" or "GTOs") purchased or

25 leased in the State of California, to obtain damages and restitution and injunctive and other relief.

26     2.     The tires on each of the subject vehicles wear unevenly and prematurely and

27 are prone to failure because the tires are oversized for the subject vehicles, causing the inside

28 front tires to graze the struts during normal operation and use, resulting in uneven and premature

1   tire wear and tire failure.

2       3.      The subject vehicles are built on the same platform as their Australian

3   counterpart, the Holden Monaro ("Monaro"), which was manufactured and sold in Australia

4   by GM Holden Limited ("Holden"), a manufacturer and GM subsidiary based in Melbourne,

5   Australia.  When GM, through its subsidiary, Holden, sold the Monaro vehicles in Australia, the

6   vehicles were equipped with 17" wheels and 235 mm wide tires.  When GM marketed and sold

7   the GTOs in the United States, however, GM distributed the subject vehicles with 17" wheels

8   and 245 mm wide tires, which were larger than the tires that had been placed on the Monaro

9   vehicles.  The oversized 245 mm tires placed on the subject vehicles graze the struts during the

10  course of normal operation and use of the GTOs, resulting in, *inter alia*, uneven and premature

11  tire wear and tire failure.

12      4.      On April 25, 2005, Plaintiffs purchased a new 2005 Pontiac GTO, VIN

13  6G2VX12U15L376341, from Weaver Auto & Truck Center ("Weaver"), an authorized Pontiac

14  GTO dealer located in Grass Valley, California.  The vehicle was purchased pursuant to a written

15  contract of sale, under which Plaintiffs agreed to pay $37,661 for the vehicle, including tax and

16  license.  Plaintiffs purchased the vehicle for their personal and family use.

17      5.      On November 21, 2006, with the odometer only reading 16,056 miles, Plaintiffs

18  took their vehicle to Weaver and reported that the right front tire was significantly worn.  After

19  examining Plaintiffs' vehicle, the representative from Weaver determined that the inner edge of

20  the tire was worn and that the cord was showing.  This premature and uneven tire wear was the

21  result of the tire grazing the vehicle's strut during normal operation and use by Plaintiffs.

22  Weaver replaced the tire and performed an alignment, at a cost to Plaintiffs of $295.01.

23      6.      Shortly thereafter, Mr. O'Connor telephoned GM's Customer Service Department

24  and complained that he should not have been required to pay for the prematurely worn tire

25  because its replacement was necessitated by a defect with the vehicle.  Although GM's

26  representative first denied any responsibility during the telephone call, subsequently, another GM

27  representative telephoned Mr. O'Connor and offered to pay $147.50, which amounted to fifty

28  percent (50%) of the cost of the new tire and alignment.  Mr O'Connor responded that he should

1    not be responsible for any of the costs incurred as a result of the defect.

2        7.    Defendant provided Plaintiffs and each owner and lessee of the subject vehicles

3    with a 3 year, 36,000 mile bumper-to-bumper factor warranty.  Defendant's express warranty, in

4    pertinent part, provides:

5            The warranty covers repairs to correct any vehicle defect related to
            materials or workmanship occurring during the warranty period.

6            *    *    *    *    *    *    *

7            Warranty repairs, including towing, parts, and labor, will be made
            at no charge.

8            *    *    *    *    *    *    *

9            The tires supplied with your vehicle are covered against defects in
            material or workmanship under the Bumper-to-Bumper coverage.

10           Any tire replaced will continue to be warranted for the remaining
            portion of the Bumper-to-Bumper coverage period.

11

12    Under this warranty, Defendant was obligated, *inter alia,* (1) to replace Plaintiffs' prematurely

13    worn tire at no charge; (2) to perform the alignment, which was necessitated by the defect, at no

14    charge; and (3) to repair the defect at no charge.  Defendant has these same obligations with

15    respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.

16        8.    On or about March 23, 2007, Plaintiffs sent a letter to GM demanding that it

17    provide appropriate relief to Plaintiffs and the proposed Class members, but Defendant has

18    refused to provide full and complete relief to Plaintiffs and Class members.

19        9.    Plaintiffs have been damaged and suffered injury in fact as a result of Defendant's

20    conduct, including, but not limited to, having to pay for a replacement tire and alignment due to

21    the defect with the vehicle, and by purchasing a vehicle with diminished value as a result of the

22    defect.  The other owners of the subject vehicles have, or will, suffer the same or substantially

23    similar damages as a result of Defendant's conduct.

24        10.    By this action, Plaintiffs seek relief under the Unfair Competition Law ("UCL" or

25    Section 17200), California Business & Business Code § 17200, the Song-Beverly Consumer

26    Warranty Act ("Song-Beverly Act"), Civil Code § 1790 *et seq.*, and the California Commercial

27    Code § 2313.

28

Class Action Complaint - O'Connor v. General Motors Corporation                           3

## PARTIES

11.    Plaintiffs are, and at all times relevant to this action have been, residents of Rocklin, California.

12.    Defendant, GM, is a Delaware corporation that does business throughout this judicial district.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S. C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant engages in business activities throughout this judicial district, many of the acts complained of took place within this district, Plaintiffs reside in this district, and numerous Class members reside in this district.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs request that this Court certify the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All current and former owners and lessees of model year 2004 and
> 2005 Pontiac GTOs purchased or leased in the State of California
> (the "Class").

Excluded from the Class definition are officers and employees of GM, its subsidiaries and its dealers, anyone sustaining personal injuries as a result of the defect alleged herein, as well as any judge to whom this action is assigned.

16.    This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Rules of Civil Procedure. This action satisfies the requirements of numerosity, typicality, adequacy, predominance and superiority.

17.    <u>Numerosity</u>. On information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class are readily identifiable from information and

1    records maintained or available to GM.

2       18.    <u>Commonality and Predominance</u>. There is a well-defined community of interest

3 among the Class members. Common questions of law and fact predominate over any questions

4 affecting only individual members of the Class. These common legal and factual questions do

5 not vary among members of the Class and may be determined without reference to the individual

6 circumstances of the members of the Class. These common questions include, but are not limited

7 to, the following:

8          a.       Whether the subject vehicles are defective;

9          b.       Whether GM's conduct violated the UCL;

10          c.       Whether GM breached its express warranty;

11          d.       Whether GM breached its implied warranty;

12          e.       Whether GM concealed the defect from Plaintiffs and Class members; and

13          f.       Whether, as a result of GM's misconduct, Plaintiffs and the Class
members are entitled to damages, restitution, and equitable relief, and, if
14                so, the amount and nature of such relief.

15      19.    <u>Typicality</u>. The representative Plaintiffs' claims are typical of the claims of the

16 Class because Plaintiffs and all members of the Class were injured by the same wrongful

17 practices in which GM engaged and are based on the same legal theories. The only differences

18 may be the amount of damages sustained by each Class member, which can be determined

19 readily, and does not bar class certification.

20       20.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent the

21 Class. Plaintiffs understand the nature of the claims herein, as well as their role in the

22 proceedings, and will vigorously represent the interests of the Class. Plaintiffs have retained

23 Class counsel who are experienced and qualified in prosecuting class actions and other forms of

24 complex litigation. Neither Plaintiffs nor their attorneys have interests that are contrary to or

25 conflict with those of the Class.

26       21.    <u>Superiority/Manageability</u>. A class action is superior to all other available

27 methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

28 claims of the members of the Class would be economically unfeasible and procedurally

Class Action Complaint - O'Connor v. General Motors Corporation                   5

1    impracticable.  While the aggregate damages sustained by the Class are likely millions of dollars,

2    the individual damages incurred by each member resulting from GM's wrongful conduct are too

3    small to warrant the expense of individual lawsuits.  The likelihood of individual members of the

4    Class prosecuting separate claims is remote and, even if every person could afford individual

5    litigation, the court system would be unduly burdened by individual litigation of such cases.

6    Individual members of the Class do not have significant interest in individually controlling the

7    prosecution of separate actions, and individualized litigation would also present the potential for

8    varying, inconsistent, or contradictory judgments.  Plaintiffs know of no difficulty to be

9    encountered in the management of this action that would preclude its maintenance as a class

10   action.

11

12                            **FIRST CAUSE OF ACTION**
     **VIOLATIONS OF THE SONG-BEVERLY ACT - EXPRESS WARRANTY**

13          22.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth

14   herein.

15          23.    Plaintiffs' vehicle and the subject vehicles are and, at all pertinent times, were

16   new motor vehicles within the meaning of the Song-Beverly Act.

17          24.    As an express warrantor and manufacturer, Defendant had certain obligations

18   under the Song-Beverly Act to conform the subject vehicles to the express warranty that

19   accompanied the subject vehicles.

20          25.    The express warranty applicable to the subject vehicles specifically required

21   Defendant to replace all of the tires each time the tires were worn prior to 36,000 miles or 3

22   years, or otherwise prematurely worn as a result of a defect with the subject vehicles and/or the

23   tires themselves, and to pay for any related repairs on the subject vehicles (such as alignment), as

24   well as to repair the defect causing the premature and uneven tire wear.

25          26.    Defendant and its agent dealers have been unable to conform Plaintiffs' vehicle

26   and the subject vehicles of the Class members to the express warranty after a reasonable number

27   of attempts at repair.

28          27.    At all pertinent times, Defendant knew and was aware of its obligations under its

1    warranty to pay for new tires (and resulting necessary services - such as alignment), which were

2    damaged by the defect(s) described herein. Defendant, however, willfully refused to pay for the

3    new tires, repairs and services as required under the warranty.

4         28.    Defendant knew of its obligations under its warranty to repair the defect to the

5    subject vehicles as described herein. Defendant, however, has refused to remedy the defect.

6         29.    Defendant and its agent dealers have failed and refused to conform the subject

7    vehicles to its warranties and Defendant's conduct has voided any attempt on its part to disclaim

8    liability for its actions.

9         30.    Plaintiffs have performed each and every duty required of them under the terms of

10   the warranties, except as may have been excused or prevented by the conduct of Defendant or by

11   operation of law in light of Defendant's unconscionable conduct.

12        31.    Plaintiffs and Class members are entitled to all remedies available under the Song-

13   Beverly Act for breach of express warranty.

14                            **SECOND CAUSE OF ACTION**
                **VIOLATIONS OF THE SONG-BEVERLY ACT - IMPLIED WARRANTY**
15

16        32.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth

17   herein.

18        33.    At all pertinent times, Defendant also was a merchant in the sale of the subject

19   vehicles to Plaintiffs and the Class members and, by operation of law, Defendant provided

20   Plaintiffs and the Class members with an implied warranty of merchantability in the sale and

21   lease of the subject vehicles.

22        34.    Plaintiffs' vehicle and the subject vehicles are not fit for the ordinary purposes for

23   which such automobiles are used, because the premature tire wear caused by the condition at

24   issue results in the occupants of the subject vehicles being forced to drive on significantly

25   impaired tires, or face the risk of having to do so, which does not meet with the reasonable

26   expectations of Plaintiffs or any other owners and lessees as to the manner in which the subject

27   vehicles should perform when used for their ordinary purposes, because the manner in which the

28   subject vehicles perform is so deficient and below a minimum level of quality so as to render

Class Action Complaint - O'Connor v. General Motors Corporation                                    7

1    them unfit for their ordinary use and purpose. Moreover, as a result of the premature tire wear

2    caused by the condition at issue, the subject vehicles are not capable of providing reliable

3    transportation since they are highly susceptible to suffering flat and failing tires, in light of the

4    defect described herein.

5        35.    By marketing and selling the subject vehicles with the condition described in this

6    Complaint, as well as by failing to repair the subject vehicles, perform necessary alignments and

7    replace tires as needed, Defendant breached the implied warranty of merchantability.

8        36.    Plaintiffs and the Class members have been damaged as a result of Defendant's

9    breach of the implied warranty of merchantability.

10        37.    Plaintiffs and Class members are entitled to all remedies available under the Song-

11    Beverly Act for breach of implied warranty.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

14        38.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth

15    herein.

16        39.    As an express warrantor and manufacturer, GM had certain obligations under the

17    California Commercial Code § 2313 to conform the subject vehicles to the express warranty.

18        40.    Defendant's express warranty covered the subject vehicles.

19        41.    Pursuant to the express warranty, Defendant was obligated to pay for (or

20    reimburse) Class members for costs incurred in replacing the prematurely worn tires.

21        42.    Pursuant to the express warranty, Defendant also was obligated to repair the

22    defect causing the tires to wear prematurely.

23        43.    Defendant and its agent dealers have failed and refused to conform the subject

24    vehicles to the express warranty and Defendant's conduct has voided any attempt on its part to

25    disclaim liability for its actions.

26        44.    GM knew of its obligations under its warranty to pay to replace the prematurely

27    worn tires, which resulted from the defect described herein. GM, however, willfully refused to

28    pay for the new tires as required under the warranty.

Class Action Complaint - O'Connor v. General Motors Corporation        8

1          45.     GM knew of its obligations under its warranty to repair the defect to the

2  subject vehicles as described herein. GM, however, has refused to remedy the defect.

3          46.     Plaintiffs have performed each and every duty required of them under the terms of

4  the warranty, except as may have been excused or prevented by the conduct of Defendant or by

5  operation of law in light of Defendant's unconscionable conduct.

6          47.     In addition, Defendant has received, on information and belief, hundreds, if not

7  thousands, of complaints and other notices from consumers advising them of the defects

8  associated with the tires on the subject vehicles.

9          48.     As a result of Defendant's breach of express warranties, Plaintiffs and the other

10  members of the Class have suffered damages.

11

12                   **FOURTH CAUSE OF ACTION**
                    **VIOLATIONS OF THE UCL**

13          49.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth

14  herein.

15          50.     Defendant has engaged in unfair, unlawful, and fraudulent business practices as

16  set forth above.

17          51.     By engaging in the above-described acts and practices, Defendant has committed

18  one or more acts of unfair competition within the meaning of Section 17200.

19          52.     Defendant's conduct of marketing, distributing and selling the subject vehicles

20  when Defendant knew that the subject vehicles had a defect that would cause the tires to

21  experience uneven and premature wear, and even complete failure, was an unfair, unlawful and

22  fraudulent business practice within the meaning of Section 17200.

23          53.     Defendant's challenged policies and practices cause harm to victims (here, the

24  Class), which outweighs any purported benefit attributable to these policies and practices.

25          54.     Defendant's challenged conduct has deceived and/or is likely to deceive members

26  of the consuming public and impact the public interest.

27          55.     Defendant's acts and practices are unlawful because they violate Civ. Code §§

28  1572, 1709, 1710, 1770 *et seq.*,1790 *et seq.*, California Commercial Code § 2313, and because

1   they rise to the level of the breach of the implied warranty of merchantability.

2       56.    To the extent that Defendant's offer to pay fifty percent (50%) of the cost of

3   Plaintiffs' tire and alignment reflected its adoption or implementation of an "adjustment

4   program" within the meaning of the California Secret Warranty Act, Civ. Code § 1795.92,

5   Defendant's failure to provide notice to Plaintiffs and the Class violated the Secret Warranty Act.

6       57.    Defendant's violations of Section 17200 continue through the date of this

7   Complaint's filing and, absent a Court order, Defendant will not comply with its obligations

8   under Section 17200.

9       58.    Plaintiffs and members of the Class have suffered injury in fact as a result of

10   the above-described acts and practices.

11       59.    Plaintiffs, on behalf of themselves and the Class, seek an order of this Court

12   awarding restitution, disgorgement, injunctive relief and all other relief allowed under Section

13   17200, plus interest, attorneys' fees and costs, pursuant to, *inter alia*, Cal. Code of Civ. Proc. §

14   1021.5.

15               **PRAYER FOR RELIEF**

16       WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

17   for judgment against Defendant providing the following relief:

18       A.    An order certifying this case as a class action and appointing Plaintiffs and their

19   counsel to represent the Class;

20       B.    Restitution and disgorgement to the extent permitted by applicable law, together

21   with interest thereon from the date of payment, to the victims of such violations;

22       C.    Actual damages for injuries suffered by Plaintiffs and the Class;

23       D.    Civil penalties and punitive damages to the extent permitted by applicable law;

24       E.    To the extent that GM has continued to market and sell the subject vehicles in the

25   manner challenged in this action, an order requiring GM to immediately cease its wrongful

26   conduct as set forth above, as well as enjoining GM from continuing to conduct business via the

27   unlawful and unfair business acts and practices complained of herein; an order requiring GM to

28   engage in a corrective notice campaign; and an order requiring GM to refund to Plaintiffs and all

1    members of the Class the funds paid to GM for the defective product;

2    F.    Reasonable attorneys' fees and the costs of prosecuting this action;

3    G.    Statutory pre-judgment and post-judgment interest; and

4    H.    Such other and additional relief as this Court may deem just and proper.

5    ## JURY DEMAND

6    Plaintiffs demand a trial by jury on all causes of action so triable.

7

8    Dated: May **10**, 2007

9

10    By: _____

Mark F Anderson (SBN 44787)

11    Matthew Da Vega (SBN 195443)
KEMNITZER, ANDERSON, BARRON &

12    OGILVIE, LLP
445 Bush Street, 6th Floor

13    San Francisco, CA  94108
Telephone: (415) 861-2265

14    Email: mark@kabolaw.com

15    Email: matthew@kabolaw.com

16    James E. Miller

17    Karen M. Leser (SBN 231189)
SHEPHERD, FINKELMAN, MILLER

18    & SHAH, LLC
65 Main Street

19    Chester, CT 06412
Telephone: (860) 526-1100

20    Email: jmiller@sfmslaw.com

21    Email: kleser@sfmslaw.com

22    James C. Shah

23    SHEPHERD, FINKELMAN, MILLER
& SHAH, LLC

24    35 E. State Street
Media, PA 19063

25    Telephone: (610) 891-9880

26    Email: jshah@sfmslaw.com

27    Attorneys for Plaintiffs

28

Class Action Complaint - O'Connor v. General Motors Corporation                    11

**Exhibit E**

**Florida Class Complaint**

1    Mark F. Anderson (SBN 44787)
     KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER LLP
2    445 Bush St, 6th Floor
     San Francisco, CA 94108
3    Telephone: (415) 623-3784
     Fax: (415) 861-3151
4    Email: mark@kabolaw.com

5    Attorneys for Plaintiff

6    [Additional Counsel Listed on Signature Page]

7                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF CALIFORNIA
8

9
     JOHN PAIKAI,                           :
10   On Behalf Of Himself And               :      Case No. 2:07-cv-892--FCD-GGH
     All Others Similarly Situated,         :
11                                          :      Class Action
                   Plaintiff,               :
12                                          :      **THIRD AMENDED**
     v                                      :      **CLASS ACTION COMPLAINT**
13                                          :
     GENERAL MOTORS CORPORATION,            :      JURY TRIAL DEMANDED
14                                          :
                   Defendant.               :
15   ─────────────────────────────────────

16
           Plaintiff, John Paikai ("Paikai" or "Plaintiff"), on behalf of himself and all others
17
     similarly situated, alleges, upon information and belief, except as to his own actions, the
18
     investigation of counsel, and the facts that are a matter of public record, as follows:
19
                    **INTRODUCTION AND FACTUAL BACKGROUND**
20
           1.      This class action is brought against Defendant, General Motors Corporation
21
     ("GM" or "Defendant"), for the benefit and protection of all current and former owners and
22
     lessees of model year 2004, 2005, and 2006 Pontiac GTOs ("Vehicles" or "GTOs") purchased or
23
     leased in the State of Florida, to obtain damages and restitution and injunctive and other relief.
24
           2.      The tires on each of the Vehicles wear unevenly and prematurely and are prone to
25
     failure because the suspension system and alignment settings (and specifically the camber
26
     settings) are improperly designed, assembled, and/or installed, causing, *inter alia*, uneven and
27
     premature tire wear and tire failure, as well as causing the inside front tires to graze the struts
28

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    1

1    during normal operation and use.

2         3.    The Vehicles are built on the same platform as their Australian counterpart, the

3    Holden Monaro ("Monaro"), which was manufactured and sold in Australia by GM Holden

4    Limited ("Holden"), a manufacturer and GM subsidiary based in Melbourne, Australia. When

5    GM, through its subsidiary, Holden, sold the Monaro vehicles in Australia, the vehicles were

6    equipped with 17" wheels and 235 mm wide tires. When GM marketed and sold the GTOs in

7    the United States, however, GM distributed the Vehicles with 17" wheels and 245 mm wide

8    tires, which were larger than the tires that had been placed on the Monaro vehicles.

9         4.    As set forth below, GM: (1) marketed and sold expensive automobiles to Plaintiff

10   and thousands of other consumers when it knew that a critical component in the automobiles, the

11   suspension system and alignment setting (and specifically the camber settings), was defective

12   and would cause premature and uneven wear of the vehicle's tires; (2) never disclosed the fact

13   that the Vehicles had this critical problem despite its knowledge of the issue prior to the sale of

14   the first GTO; (3) actively concealed the fact that the suspension system and alignment setting

15   (and specifically the camber settings) was defective and would cause premature and uneven wear

16   of the vehicle's tires; (4) refused to honor its warranty to repair the defect or provide full

17   reimbursement for damages caused by the defect; and (5) continued to sell the Vehicles despite

18   the fact that it received, and continues to receive, numerous complaints from Vehicle owners and

19   lessees.

20        5.    GM further concealed material facts regarding the GTO alignment problems by

21   affirmatively misrepresenting the purported attributes of the GTO. As a result of GM's conduct,

22   including its omissions, acts of concealment and misrepresentations, Plaintiff and Class members

23   have been and will continue to be harmed and subjected to premature tire wear, and unnecessary

24   repair and replacement costs. If these material facts had been disclosed by GM, Plaintiff and

25   Class members would not have purchased or leased, or would have paid significantly less, for

26   their GTO Vehicles.

27        6.    Defendant has or should have the capability of fixing the suspension system and

28   alignment settings on the Vehicles so that they can operate safely with proper suspension and

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    2

1    alignment settings and tires that have a normal useful life. Instead of taking this responsible

2    action to remedy its unlawful actions and misconduct, Defendant has chosen to disclaim

3    responsibility for its misconduct and, instead, has sought to shift the economic burden of its

4    development, manufacturing, marketing, distribution and/or sale of the inherently defective

5    suspension system and alignment settings to Plaintiff and Class members.

6                                                    **PARTIES**

7         7.       Paikai is a citizen of the State of Florida, and resides and has resided in Lake

8    Placid, Florida at all pertinent times. On or about September 20, 2005, Paikai purchased a 2005

9    Pontiac GTO for his personal and family use from Allen J. Pontiac ("Allen Pontiac"), an

10   authorized GM dealership in Seebring, Florida. Paikai paid approximately $36,000.00 for the

11   Vehicle.

12        8.       Defendant, GM, is a Delaware corporation that does business throughout this

13   judicial district.

14                                    **JURISDICTION AND VENUE**

15        9.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

16   because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

17   interest and costs, and this is a class action in which the Class members and Defendant are

18   citizens of different states.

19        10.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

20   Defendant engages in business activities throughout this judicial district, and there is a related

21   action, *O'Connor v. General Motors Corporation,* Case No. 2:07-cv-00892-FCD-GGH

22   ("*O'Connor*") pending in this District.

23        11.      By this action, Plaintiff seeks relief under the law of Florida, where the Plaintiff

24   resides, contracted, purchased, and attempted to service the vehicle, pursuant to the Florida

25   Deceptive and Unfair Trade Practices Act ("FDUTPA") F.S. § 501.201 *et seq.*, and also asserts

26   claims pursuant to Florida law for breach of express warranty and for unjust enrichment.

27        12.      All jurisdictional prerequisites to suit have been satisfied.

28

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                                    3

1                                              **FACTS**

2          13.      This class action is brought on behalf of all current and former owners and lessees

3    of Pontiac GTO Vehicles manufactured by GM with respect to the claims asserted in this action.

4          14.      The Vehicles at issue, which had a suggested retail price in excess of $35,000,

5    are manufactured, marketed and sold by GM (and its Holden division), through its established

6    network of licensed dealers and distributors throughout the United States, including Florida.

7          15.      The GTO was engineered and assembled in Australia, by engineers that did not

8    have expertise equivalent to GM's engineers in North America.  The Vehicles were built on the

9    same platform as their Australian counterpart, the Holden Monaro, although the GTO was a

10   heavier vehicle and used a different, larger tire and wheel combination than was used on the

11   Monaro.

12         16.      According to GM press releases, changes in tire and wheel components

13   necessitate changes in suspension system and alignment settings.

14         17.      However, the design and engineering work for the GTO was done on a shortened

15   and extremely aggressive schedule, which proved to be too optimistic and did not allow for time

16   to correct all problems and make the necessary changes with respect to the suspension system

17   and alignment settings in the Vehicle.

18         18.      Before the Vehicle was sold to the public, GM was aware of problems with the

19   suspension and alignment settings in the GTO Vehicles. Several modifications were made to the

20   camber (a component of the suspension/alignment) setting fixture to try to (unsuccessfully)

21   correct the faulty alignment settings from the factory.

22         19.      Defendant had exclusive knowledge of the fact that the suspension and alignment

23   settings were improper and that these defects could lead to premature tire wear. Defendant was

24   further made aware of this fact as a result of the numerous complaints it received about problems

25   with the GTO tires from their customers (as described below) and dealers.

26         20.      Defendant provided Plaintiff and each owner and lessee of the Vehicles

27   with the same uniform 3 year, 36,000 mile bumper-to-bumper factory warranty.  Defendant's

28   express warranty, in pertinent part, provides:

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    4

> The warranty covers repairs to correct any vehicle defect related to
> materials or workmanship occurring during the warranty period.
>
> *       *       *       *       *       *       *
>
> Warranty repairs, including towing, parts, and labor, will be made
> at no charge.
>
> *       *       *       *       *       *       *
>
> The tires supplied with your vehicle are covered against defects in
> material or workmanship under the Bumper-to-Bumper coverage.
> Any tire replaced will continue to be warranted for the remaining
> portion of the Bumper-to-Bumper coverage period.

Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiff's prematurely worn tires at no charge; (2) to repair and adjust the improper suspension and alignment settings, which was necessitated by the defect, at no charge; and (3) to repair the defect at no charge. Defendant has these same obligations with respect to Plaintiff and all Class members, but has failed to satisfy these obligations.

21.    GM also included misleading and deceptive information in the warranty information provided to Plaintiff and Class members, by its (false) promise that the factory alignment was sufficient for the vehicle. According to the GTO owner manual: "The wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest tire life and best overall performance. Scheduled wheel alignment and wheel balancing are not needed. However, if you notice unusual tire wear or your vehicle pulling one way or the other, the alignment may need to be reset. If you notice your vehicle vibrating when driving on a smooth road, your wheels may need to be rebalanced." Despite these promises and obligations, GM denied warranty coverage to Plaintiff and Class members.

22.    Throughout the period during which GM offered GTO Vehicles, GM engaged in a uniform marketing and sales campaign, in which it consistently misrepresented and/or concealed material facts in its advertisements, sales and marketing materials, warranties, and through its sales representatives and dealers, by concealing from, failing to disclose and/or misrepresenting to Plaintiffs and the Class material information regarding the Vehicles, including, but not limited to the fact that: (1) a critical component in the automobiles, the suspension system and alignment setting (and specifically the camber settings), was defective;

1   (2) the defect in the suspension system and alignment setting (and specifically the camber

2   settings) would cause premature and uneven wear of the vehicle's tires; and (3) GM would not

3   honor its warranty to repair the defect or provide full reimbursement for damages caused by the

4   defect. GM's misrepresentations and omissions regarding the Vehicles are consistent and

5   uniform.

6         23.     The fact that a critical component in the automobiles, the suspension system and

7   alignment setting (and specifically the camber settings), was defective and that the defect in the

8   suspension system and alignment setting (and specifically the camber settings) would cause

9   premature and uneven wear of the vehicle's tires, rendering the GTO tires with a markedly

10   reduced useful life is a material fact, which a reasonable person would consider important in

11   deciding whether or not to purchase (or to pay the same price for) a GTO Vehicle. Plaintiff and

12   Class members would not have purchased, or would have paid substantially less for, their

13   Vehicles had they been informed that the suspension system and alignment setting (and

14   specifically the camber settings), was defective and that the defect in the suspension system and

15   alignment setting (and specifically the camber settings) would cause premature and uneven wear

16   of the vehicle's tires. Furthermore, Plaintiff and Class members reasonably expected that GM

17   would not sell them Vehicles containing a known defect.

18         24.     Defendant had exclusive knowledge of the defects and the reduced useful life of

19   the tires that resulted. Indeed, Defendant had access to relevant data regarding the defect, and

20   had knowledge as a result of the numerous complaints it received from consumers regarding

21   their need to replace these tires much sooner than they expected or is reasonable.

22         25.     Defendant has been on notice of the defect in the Vehicles and that it did not

23   comport with the representations made in the advertising, marketing and sale of the Vehicles

24   from, *inter alia*, internal testing, customer complaints, warranty claims, field technicians, and

25   demand for replacement tires. However, Defendant concealed this knowledge from Plaintiff and

26   the Class.

27         26.     Defendant knew or should have known of the defects at the time of the marketing,

28   sale and distribution of the Vehicles. In light of Defendant's knowledge regarding the defects

1    and problems detailed above, including the reduced expected life of the tires, the provision of a

2    limited warranty with respect to the Vehicles under all of these circumstances, constitutes an

3    unlawful, unfair and fraudulent business practice, and, under all of the circumstances, the limited

4    warranties accompanying the Vehicles are unconscionable.

5    **Plaintiff's Experiences with the GTO**

6         27.    On September 20, 2005, Plaintiff Paikai purchased a 2005 Pontiac GTO,

7    VIN6G2VX12415L396749 from Allen Pontiac. The vehicle had approximately 5000 miles and

8    was a GM certified pre-owned vehicle. Paikai's GTO had standard 17" wheels and BF Goodrich

9    tires. The vehicle was purchased pursuant to a written contract of sale, under which Paikai

10   agreed to pay $36,248.01 for the vehicle, including tax and license.

11        28.    Prior to Paikai purchasing his Vehicle, GTO promoted the Vehicle in their

12   advertising and marketing materials. GM failed to disclose the defects in the suspension and

13   alignment settings that result in a markedly reduced useful life of the tires. If Paikai had known

14   about these facts, he would not have purchased the Vehicle.

15        29.    After purchasing the Vehicle, Paikai read the manuals accompanying the vehicle

16   and rotated the tires pursuant to the schedule provided by GM.

17        30.    On April 20, 2006, with the odometer only reading 12,003 miles, Plaintiff Paikai

18   found that the front tires were significantly worn on the inside shoulder and took his GTO to

19   Yarbrough Tire in Lake Placid where it was determined that the tires needed to be replaced.

20   This premature and uneven tire wear was the result of, *inter alia*, improperly designed,

21   assembled, and/or installed suspension system and alignment settings. Paikai paid Yarbrough

22   Tire $1895.14 for four new (18") wheels and P235/40XR18 tires.

23        31.    Paikai learned that others were experiencing similar defects with the suspension

24   and alignment settings leading to premature tire wear on internet sites, including

25   www.LS1GTO.com, a website for GTO devotees.

26        32.    In August 2007, Paikai took his GTO to Allen Pontiac due to problems with

27   premature tire wear and transmission issues. He asked about the strut rubbing issue and

28   premature tire wear and asked if there were any technical service bulletins dealing with the

1    problem. He was told there was no applicable bulletins. Paikai also discussed the tire and strut

2    problems with another dealership, but was told they too had no information on the problem.

3         33.     Paikai was also told that his GTO had inner tire shoulder wear by a technician at

4    Precision Motorsports of Florida, to which he took his Vehicle.

5         34.     In November 2007, Paikai took his GTO to Allen Pontiac because he thought it

6    was pulling to the right. After examining his GTO, and finding the alignment to be out of

7    specification, the dealership realigned the vehicle. The dealership charged Paikai for the

8    alignment and did not offer to align the vehicle under the warranty.

9         35.     By December 17, 2007, all four of the tires on Plaintiff's Vehicle had inner

10    shoulder wear and needed replacement. At that time, Plaintiff's odometer reading was 32,372

11    (with only 20,369 miles on the tires). Moreover, Plaintiffs had previously rotated the tires and

12    had the Vehicle realigned at a GM dealership. Plaintiff had the tires replaced at Yarbrough Tire

13    and paid $568.13 for four new tires.

14         36.     After he purchased the new tires, and given the recurring problems, Plaintiff

15    returned to the dealership for another check of the alignment.

16         37.     Plaintiff has been damaged and suffered injury in fact as a result of Defendant's

17    conduct, including, but not limited to, having to pay for replacement tires and alignments due to

18    the defect with the Vehicle, and by purchasing a Vehicle that has lost value as a result of the

19    defect. The other owners of the Vehicles have, or will, suffer the same or substantially similar

20    damages as a result of Defendant's conduct.

21    **Class Members' Experiences With The GTO**

22         38.     The experiences of Plaintiff mirror those of the thousands of other Vehicle

23    owners and lessees. The internet is replete with thousands of references to the common and

24    profound problems that consumers have experienced with the GTO's suspension and alignment,

25    all leading to severely premature tire wear, including, but not limited to, the following small

26    sample of representative complaints appearing at gtoforum.com (as monitored and collected by

27    GM), LS1GTO.com/forums, LS2GTO.com/forums:

28         I had strut rub and chewed up the factory tires within 16,000 miles.

1    I tried going through GM and was ready to get an attorney. I
     threw in the towel and bought some 18 inch stock rims on ebay.
2    Plenty of clearance now. The dealerships act like they have never
     heard of such a problem but off the record my service rep told me
3    GM is well aware of the problem. I jut didn't have the energy to
     bicker back and forth with them. Now that I don't have to worry
4    about strut rub I can have some fun with my car!

5                *        *        *        *        *        *        *

6    Strut rub should be covered under warranty. I was told by a GM
     rep (who owns a GTO) that there is, in his words a "hidden recall"
7    on this issue, since it is safety related. He told me to go directly to
     the service manager. If you have no luck there, ask to contact the
8    zone rep. They are supposed to correct the camber problem but
     thats all they will do.

9                *        *        *        *        *        *        *

10   Its about damn time a report like this has been made. I know of a
11   couple of GTOs with this problem that have been taken to dealers
     near me and they won't do crap saying that all it needs is a new
12   alignment and is not covered under warranty, even though one of
     the tires I saw was down to the belts and only had like 8,000 miles
13   on it.

14               *        *        *        *        *        *        *

15   You ever figured that out (why the huge range of coverage from
     total to zero), make sure you buy a lottery ticket too....
16
     I'm $360 out of pocket for a new tire and a 4-wheel alignment to
17   crank the camber out from the struts so they'll stop rubbing.
     Awesome. I always wanted to know what it would be like to have
18   a GTO that corners like a Malibu or Taurus – now I know.

19   Tip of the iceberg for me. Mileage 11,300. Right front tire:
     replaced. Radius rod bushes: shot. Upper strut bushes: shot.
20   Number of dealers involved: two. Number of parts replaced under
     warranty:  **ZERO** Thanks GM – you've made my next car
21   purchase decision crystal-clear, and it does **not** involve buying any
     of your crap cars.

22               *        *        *        *        *        *        *

23   Been hearing about this issue here. Didn't think I had it until I just
24   checked my front tires. Wow, wore down to the belts! It has
     21,000 miles and the tires are wore out anyway, but I don't want to
25   get new tires and have this problem!

26   Just talked to the dealer, he heard of it on one other car and said an
     alignment will solve it. Said he knows it is a tight fit but it should
27   never rub unless there are other problems. He seemed cool about it
     and said he will make sure GM has no bullitens on it. Guess that is
28   where I am at for now.

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                                    9

1                       *        *        *        *        *        *        *

2        GM is ignoring the problem because they probably think that this
         is something they inherited from holden [even though they own it].
3        By sending out notices to all GTO owners advising them of the
         potential problem and offering free alignments they would be
4        admitting fault.  They're also dealing with only 40,000 or so units
         that are not even in production anymore.  If these were ford pintos
5        with exploding gas tanks and a million sold there would be a
         national crisis.  They are just weathering the storm now knowing
6        that a big chunk of the GTOs have 18" 235 tires and are not a
         problem and the rest of the 17" owners will take care of their own
7        situation.  A couple of owners who are oblivious will have fatal
         accidents and they'll just settle the lawsuits.  A lot cheaper than
8        retrofitting 40,000 out of production cars with a new suspension.

9                       *        *        *        *        *        *        *

10       I bought mine in January and my dealer replaced my struts (March
         build date) before the car was even delivered to me.  Apparently,
11       GM sent out a bulletin to all dealers authorizing replacement of
         correct struts for existing inventory still on the lots.

12
         GM is aware of this problem, trust me.  Don't let the dealer give
13       you any mumbo jumbo.  If your car is affected, they owe you new
         struts.
14
         Happy motoring.
15
                        *        *        *        *        *        *        *
16
         I have a blue 2004 and my left front wheel is rubbing on the strut.
17       You can visibly see on the tire where it is wearing.  I only have
         19,000 miles on the car.  I can't believe it.  Thanks for all your
18       research...I am taking it in A.S.A.P.

19                      *        *        *        *        *        *        *

20       I just followed up on this discussion because I lost 1 tire on the
         freeway – tread peeled off but did not deflate.  After getting home
21       I find the other front tire is peeling – just no fully separated yet!!!!

22       Damage both on the inner tire edge and I had been checking
         periodically for damage – I had notice uneven wear but I did not
23       thing it was strut rub – now I think it was.

24       Should Is till complain to GM dealer about this with the NHTSA
         investigation closed.
25
                        *        *        *        *        *        *        *
26
         Ok, here's my story, I'd appreciate any advice as to what to talk
27       with the dealer about.  I have an 05 A4, with stock 17" rims and
         tires, that just turned 28K miles.  I do not drive my car hard.  I
28       guess an old age has calmed me down.  I've done maybe 10 full

         Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    10

1    power launches.

2    I've gone through 2 sets of tires. Each time the inside of the rear
tires wear MUCH faster than the rest of the tire. The last time the
3    rears went, the outside of the tire had 50% tread left while the
inside edge of the tire separated from the sidewall. Of course, the
4    dealer said this was normal, but recommended I have the car
aligned (which I did 3 weeks ago). I have some strut rub up front
5    on both sides. Not enough to wear through the pain on the struts
but enough to leave very noticable marks. Also have marks on the
6    front on the right fender well were the tire has rubbed during turns.

7    *    *    *    *    *    *    *

I submitted the form on-line & was contacted by an investigator
8    (Derek Rinehardt). I supplied him with pictures and a short write
up per his request
9

It is/was the dealer arrogance (on top of the money & time I had to
10    spend to fix it myself) that really bothered me. I tried to give him
information off this board and he would not even look @ it. I
11    asked him about checking the strut bushings & ride height, neither
of which he did. His answer was an alignment & selling me 4 tires
12    and "see what happens". I explained I felt that was a band-aid
approach and I was not going to pay for an $80 alignment when I
13    was fairly sure there were failed suspension components.
Ultimately, he stated I did not want to participate in the repair
14    process.

15    If I can get the proper dimensions on a new GM bushing I can take
that info long with my old ones and pursue reimbursement.
16    Additionally when I repaired the front with the new bushings it
became obvious the rear springs were also shot. I replaced them
17    with King's. I had worse tire wear on the rear that the front when
all was said and done!!
18
*    *    *    *    *    *    *

19    39.    Having received numerous complaints, on February 16, 2007, The United States

20    Department of Transportation, National Highway Traffic Safety Administration (NHTSA)

21    opened an investigation into complaints of front tire failures due to front strut to tire interference

22    on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control. In

23    connection with that investigation, GM provided documents and information to NHTSA.

24    Although NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report

25    Summary stated that "excessive negative camber is an apparent issue." Also according to the

26    NHTSA investigation, "approximately 90% of the final factory camber settings available for

27    complaint and warranty claim vehicles GM provided ... had right wheel camber settings that

28    were out of specifications."

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    11

1    40.    Indeed, GM was aware (and had exclusive knowledge) of these problems and has

2    acknowledged (although not to Plaintiff and Class members) that premature front tire wear in the

3    Vehicles was caused by improper alignment, specifically by out of specification negative

4    camber, and that out of specification negative camber could be caused by improper factory

5    alignment settings.

6                              **CLASS ACTION ALLEGATIONS**

7    41.    Plaintiff requests that this Court certify the following classes pursuant to Rule 23

8    of the Federal Rules of Civil Procedure:

9    a.    **FUDTPA and Unjust Enrichment Class**: All current and former
         owners and lessees of model year 2004, 2005 and 2006 Pontiac
10       GTOs purchased or leased in the State of Florida (the "Class").

11   b.    **Warranty Class**: All Class members who sought warranty coverage for or
         otherwise presented a claim for repair or reimbursement under the terms of the
12       Pontiac GTO warranty in connection with premature or uneven inner shoulder tire
         wear or for struts hitting the tires (the "Warranty Class") (collectively the
13       "Classes").

14   Excluded from the Class definitions are officers and employees of GM, its subsidiaries and its

15   dealers, anyone sustaining personal injuries as a result of the defect alleged herein, as well as any

16   judge to whom this action is assigned. Plaintiff reserves the right to amend these class

17   definitions if discovery and further investigation reveals that the proposed classes should be

18   expanded or otherwise modified.

19   42.    This action is brought and may properly be maintained as a class action pursuant

20   to Rule 23 of the Rules of Civil Procedure. This action satisfies the requirements of numerosity,

21   typicality, adequacy, predominance and superiority.

22   43.    Numerosity. On information and belief, the members of the Class and Warranty

23   Class number in at least the thousands. As a result, the Class and Warranty Class are so

24   numerous that joinder of all members in a single action is impracticable. The members of the

25   Classes are readily identifiable from information and records in Defendant's possession, custody

26   or control. The disposition of these claims will provide substantial benefits to the members of

27   the Classes.

28

1    44.    Commonality and Predominance. There is a well-defined community of interest

2    among the members of the Classes. Common questions of law and fact predominate over any

3    questions affecting only individual members of the Classes. These common legal and factual

4    questions do not vary among members of the Classes and may be determined without reference

5    to the individual circumstances of the members of the Classes. These common questions

6    include, but are not limited to, the following:

7        a.    Whether the Vehicles are defective;

8        b.    Whether GM's conduct violated the FDUTPA;

9        c.    Whether GM breached its express warranty;

10       d.    Whether GM concealed the defect from Plaintiff and Class members; and

11       e.    Whether, as a result of GM's misconduct, Plaintiff and the Class members
           are entitled to damages, restitution, and equitable relief, and/or other
12           damages or relief, and, if so, the amount and nature of such relief.

13   45.    Typicality. The representative Plaintiff's claims are typical of the claims of the

14   Class and Warranty Class because Plaintiff and all members of the Classes were injured by the

15   same wrongful practices in which GM engaged and are based on the same legal theories. The

16   only differences may be the amount of damages sustained by each member of the Class and

17   Warranty Class, which can be determined readily, and does not bar class certification.

18   46.    Adequacy of Representation. Plaintiff will fairly and adequately represent the

19   Classes. Plaintiff understands the nature of the claims herein, as well his role in the proceedings,

20   and will vigorously represent the interests of the Class. Plaintiff has retained counsel who are

21   experienced and qualified in prosecuting class actions and other forms of complex litigation.

22   Neither Plaintiff nor his attorneys have interests that are contrary to or conflict with those of the

23   Classes.

24   47.    Superiority/Manageability. A class action is superior to all other available

25   methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

26   claims of the members of the Classes would be economically unfeasible and procedurally

27   impracticable. While the aggregate damages sustained by the Classes are likely millions of

28   dollars, the individual damages incurred by each member resulting from GM's wrongful conduct

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    13

1    are too small to warrant the expense of individual lawsuits. The likelihood of individual

2    members of the Classes prosecuting separate claims is remote and, even if every person could

3    afford individual litigation, the court system would be unduly burdened by individual litigation

4    of such cases. Individual members of the Classes do not have significant interest in individually

5    controlling the prosecution of separate actions, and individualized litigation would also present

6    the potential for varying, inconsistent, or contradictory judgments. Plaintiff knows of no

7    difficulty to be encountered in the management of this action that would preclude its

8    maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged

9    and with respect to the Classes would be proper.

10        48.    Defendant has or had access to address information for the members of the

11    Classes, which may be used for the purpose of providing notice of the pendency of this action.

12                        **TOLLING OF THE STATUTE OF LIMITATIONS**

13        49.    The causes of action alleged herein accrued upon discovery of the latently

14    defective nature of the Vehicles. Because the defect and limitations alleged herein are latent and

15    because Defendant took steps to conceal the true character, nature and quality of the Vehicles,

16    among other reasons, Plaintiff and members of the Classes did not discover and could not have

17    discovered the problems and defects alleged herein through the exercise of reasonable diligence.

18        50.    Any applicable statutes of limitations have been tolled by Defendant's knowing

19    and active concealment and denial of the facts as alleged herein. Plaintiff and members of the

20    Classes have been kept ignorant of vital information essential to the pursuit of these claims,

21    without any fault or lack of diligence on their part. Plaintiff and members of the Classes could

22    not reasonably have discovered the defects and problems alleged herein because of Defendant's

23    fraudulent concealment. In addition, Defendant continued to sell Vehicles without disclosing the

24    defects and problems.

25        51.    Defendant was and is under a continuous duty to disclose to Plaintiff and

26    members of the Classes the true character, quality, and nature of the Vehicles. Defendant

27    knowingly, affirmatively, and/or actively concealed, and continue to conceal, the true character,

28    quality and nature of the Vehicles at issue. Defendant also continued to sell Vehicles and

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    14

1   replacement tires while concealing the defects and true character, quality and nature of the

2   Vehicles.

3          52.    Defendant knew or should have known that Plaintiff and members of the Classes

4   would reasonably rely upon Defendant's knowing, affirmative, and/or active concealment.

5   Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in

6   defense of this action.

7                          **FIRST CAUSE OF ACTION**
                  **(Violations Of FDUTPA – Brought On Behalf Of The Class)**

8

9          53.    Plaintiff realleges and incorporates the above allegations by reference.

10         54.    Plaintiff resides and bought his Vehicle in Florida, and under the specific

11  circumstances herein it is appropriate to apply the law of Florida to his claims.

12         55.    Plaintiff and the Class members are consumers within the meaning of FDUTPA.

13         56.    Defendant, through its conduct, is engaged in trade and/or commerce within the

14  meaning of FDUTPA.

15         57.    The purchase or lease of GTO Vehicles by Plaintiff and Class as described herein

16  constitute consumer transactions within the meaning of FDUTPA.

17         58.    The practices of Defendant violate the FDUTPA for, *inter alia*, one or more of

18  the following reasons:

19         a.     Defendant omitted and concealed material facts from its communications and
                  disclosures to Plaintiff and the Class regarding the known defects inherent in the
20                Vehicles;

21         b.     Defendant made false and/or misleading statements of material fact regarding the
                  Vehicles, which statements were likely to deceive the public; and

22         c.     Defendant knew, or was reckless in not knowing, that its statements about the
                  Vehicles and defects therein were false and/or misleading.
23

24         59.    By the conduct described herein, Defendant has engaged in unfair methods of

25  competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

26  conduct of trade or commerce.

27         60.    The representations and omissions by Defendant were likely to deceive

28  reasonable consumers and a reasonable consumer would have relied on these representations and

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    15

1  omissions.

2      61.    Had Defendant disclosed all material information regarding the Vehicles to

3  Plaintiff and other members of the Class, they would not have purchased or leased the Vehicles.

4      62.    As a direct and proximate result of Defendant's violations of FDUTPA, Plaintiff

5  and the Class have suffered injury in fact and/or actual damage, in that they purchased or leased

6  Vehicles with suspension and alignment defects that cause premature tire failure.  Had

7  Defendant disclosed the true quality, nature and drawbacks of the Vehicles,  Plaintiff and the

8  Class would not have purchased, or would have paid significantly less, for the Vehicles.

9  Plaintiff and the Class have suffered further harm in that:  the tires wear prematurely from the

10  time the Vehicles are first driven; they have paid or will be required to pay to repair or replace

11  the tires more than has been reasonably anticipated and represented as well as to pay for related

12  services (such as alignments); and they have lost use of their Vehicles and have suffered

13  diminution of value, and the Plaintiff and the other members of the Class are entitled to recover

14  such damages, together with other appropriate damages, attorneys' fees and costs of suit.

15

16                    **SECOND CAUSE OF ACTION**
    <u>**(Breach of Express Warranty – Brought On Behalf Of The Warranty Class)**</u>

17      63.    Plaintiff realleges and incorporates the above allegations by reference.

18      64.    As set forth herein, Defendant's express warranties covered the Vehicles and,

19  under the circumstances described herein, its tires, struts, cambers and related systems.

20      65.    The express warranty was provided to Plaintiff and members of the Warranty

21  Class by GM and specifically extends to original purchasers and subsequent owners for the

22  period of warranty coverage.

23      66.    Based on the conduct described in this Complaint, GM breached the written

24  warranty that it provided to Plaintiff and members of the Warranty Class.

25      67.    GM warranted all of GTOs against defects in material or workmanship at a time

26  when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to

27  market the Vehicles to Plaintiff and members of the Warranty Class and sell the GTO with this

28  express warranty.

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    16

1    68.    GM is obligated under the terms of its written warranty to repair and/or replace

2  the defective suspension and alignment systems, and under the circumstances described herein,

3  its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the

4  Warranty Class.

5    69.    GM has breached its written warranty, as set forth above, by supplying the

6  suspension and alignment systems in a condition which does not meet the warranty obligations

7  undertaken by GM, and by failing to repair or replace the defect and/or defective parts inherent

8  in the suspension and alignment systems, including the prematurely worn tires and alignment

9  settlings.

10    70.    As set forth above, GM's warranty fails in its essential purpose and, accordingly,

11  Plaintiff and members of the Warranty Class can not and should not be limited to the remedies

12  set forth in GM's written warranty and, instead, should be permitted to recover other appropriate

13  relief, including damages and injunctive relief.

14    71.    GM knew of its obligations under its warranty to pay to replace the prematurely

15  worn tires and to repair and adjust the improper alignment, which resulted from the defect

16  described herein. GM, however, willfully refused to pay for the new tires or alignment as

17  required under the warranty.

18    72.    GM knew of its obligations under its warranty to repair the defect to the Vehicles

19  as described herein, however, GM has refused to remedy the defect.

20    73.    Plaintiff has performed each and every duty required of him under the terms of

21  the warranties, except as may have been excused or prevented by the conduct of Defendant or by

22  operation of law in light of Defendant's unconscionable conduct.

23    74.    GM has received sufficient and timely notice of the breaches of warranty alleged

24  herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment

25  systems, which in turn cause premature tire wear, GM has failed and refuses to honor its

26  warranty, even though it knows of the inherent defect.

27    75.    GM has received, upon information and belief, thousands of complaints and other

28  notices from its customers nationwide advising it of the defects in suspension and alignment

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    17

1    systems.

2       76.     Indeed, Plaintiffs in the *O'Connor* action were also denied warranty coverage and

3   forced to pay for repairs to their GTO. They complained to the GM service department at their

4   dealership about the premature and uneven tire wear. Although the tires needed to be, and were,

5   replaced at that time, GM, after being contacted by the dealership, refused to pay for the cost of

6   replacing the four tires. Ultimately, the dealership offered to pay $147.50, which amounted to

7   half of the cost of the new tire and alignment.

8       77.     Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

9   its warranty, and Defendant has failed to do so.

10      78.     GM has failed to provide to Plaintiff or the members of the Warranty Class, as a

11   warranty replacement, a product that conforms to the qualities and characteristics that GM

12   expressly warranted when it sold the GTO Vehicles to Plaintiff and members of the Warranty

13   Class.

14      79.     As a result of GM's breach of warranty, Plaintiff and members of the Warranty

15   Class have suffered damages in an amount to be determined at trial.

16

17
### THIRD CAUSE OF ACTION
**(Unjust Enrichment – Brought On Behalf Of The Class)**

18      80.     Plaintiff incorporates by reference the allegations contained in the preceding

19   paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

20      81.     This claim is asserted in the alternative on behalf of Plaintiff and the members of

21   the Class to the extent that any contracts do not govern the entirety of the subject matter of the

22   disputes with Defendant.

23      82.     As a direct and proximate result of Defendant's misconduct as set forth above,

24   Defendant has been unjustly enriched.

25      83.     Specifically, by its misconduct described herein, GM has accepted a benefit

26   (monies paid by Plaintiff and Class members).

27      84.     As a result of Defendant's misconduct described here, the retention of that benefit

28   (the monies) by GM would be inequitable.

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*        18

85.    Plaintiff on behalf of himself and all others similarly situated, seeks restitution from Defendant, and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from the wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant providing the following relief:

A.    An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class and Warranty Class;

B.    Restitution and disgorgement to the extent permitted by applicable law, together with interest thereon from the date of payment, to the victims of such violations;

C.    Actual damages for injuries suffered by Plaintiff and members of the Class and Warranty Class;

D.    Civil penalties  to the extent permitted by applicable law;

E.    An order enjoining GM from continuing to conduct business via the unlawful and unfair business acts and practices complained of herein; an order requiring GM to engage in a corrective notice campaign; and an order requiring GM to refund to Plaintiff and all members of the Class and Warranty Class, the funds paid to GM for, or as a result of, the defective product;

F.    Reasonable attorneys' fees and the costs of prosecuting this action;

G.    Statutory pre-judgment and post-judgment interest; and

H.    Such other and additional relief as this Court may deem just and proper.

1

## JURY DEMAND

2              Plaintiff demands a trial by jury on all causes of action so triable.

3    Dated: February 23, 2009

4
                                  By:    /s/Mark F. Anderson
5                                        Mark F Anderson (SBN 44787)
6                                        KEMNITZER, ANDERSON, BARRON,
                                         OGILVIE & BREWER, LLP
7                                        445 Bush Street, 6th Floor
                                         San Francisco, CA  94108
8                                        Telephone:  (415) 861-2265
                                         Email: mark@kabolaw.com
9                                        Email: matthew@kabolaw.com

10
                                         James E. Miller
11                                       Karen M. Leser (SBN 231189)
                                         SHEPHERD, FINKELMAN, MILLER
12                                       & SHAH, LLP
13                                       65 Main Street
                                         Chester, CT 06412
14                                       Telephone: (860) 526-1100
                                         Email: jmiller@sfmslaw.com
15                                       Email: kleser@sfmslaw.com

16
                                         James C. Shah (SBN 260435)
17                                       Natalie Finkelman Bennett
                                         Nathan C. Zipperian
18                                       SHEPHERD, FINKELMAN, MILLER
19                                       & SHAH, LLP
                                         35 E. State Street
20                                       Media, PA 19063
                                         Telephone: (610) 891-9880
21                                       Email: jshah@sfmslaw.com

22                                       Attorneys for Plaintiff

23

24

25

26

27

28

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    20

**Exhibit F**

**Nationwide/Ohio Class Complaint**

1  Mark F. Anderson (SBN 44787)
   KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER, LLP
2  445 Bush St, 6th Floor
   San Francisco, CA 94108
3  Telephone: (415) 623 3784
   Fax: (415) 861 3151
4  Email: mark@kabolaw.com

5  Attorneys for Plaintiff

6  [Additional Counsel Listed on Signature Page]

7                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
8

9  DAVID B. SIDNER, on behalf of himself,    :    Case No. 2:07-cv-892-FCD-GGH
   and all others similarly situated,         :
                                              :    **FIRST AMENDED COMPLAINT**
10

11                                            :

12              Plaintiff,                     :    Class Action

13  v.                                        :

    GENERAL MOTORS CORPORATION,               :    JURY TRIAL DEMANDED
14
                Defendant.                     :
15  _____

16        Plaintiff, David B. Sidner, on behalf of himself and all others similarly situated, alleges,

17  upon information and belief, except as to his own actions, the investigation of counsel, and the

18  facts that are a matter of public record, as follows:

19                    **INTRODUCTION AND FACTUAL BACKGROUND**

20        1.       This class action is brought against Defendant, General Motors Corporation

21  ("GM" or "Defendant"), for the benefit and protection of all current and former owners and

22  lessees of model year 2004, 2005, and 2006 Pontiac GTOs ("Vehicles" or "GTOs") purchased or

23  leased in the United States, excluding the States of Florida and California, to obtain damages and

24  restitution and injunctive and other relief.

25        2.       The tires on each of the Vehicles wear unevenly and prematurely and

26  are prone to failure because the suspension system and alignment settings (and specifically the

27  camber settings) are improperly designed, assembled, and/or installed, causing, inter alia, uneven

28  and premature tire wear and tire failure, as well as causing the inside front tires to graze the

First Amended Complaint - *Sidner v. General Motors*                                          1

1    struts during normal operation and use.

2        3.    The Vehicles are built on the same platform as their Australian counterpart, the

3    Holden Monaro ("Monaro"), which was manufactured and sold in Australia by GM Holden

4    Limited ("Holden"), a manufacturer and GM subsidiary based in Melbourne, Australia. When

5    GM, through its subsidiary, Holden, sold the Monaro vehicles in Australia, the vehicles were

6    equipped with 17" wheels and 235 mm wide tires. When GM marketed and sold the GTOs in

7    the United States, however, GM distributed the Vehicles with 17" wheels and 245 mm wide

8    tires, which were larger than the tires that had been placed on the Monaro vehicles.

9        4.    As set forth below, GM: (1) marketed and sold expensive automobiles to Plaintiff

10    and thousands of other consumers when it knew that a critical component in the automobiles, the

11    suspension system and alignment setting (and specifically the camber settings), was defective

12    and would cause premature and uneven wear of the Vehicles' tires; (2) never disclosed the fact

13    that the Vehicles had this critical problem despite its knowledge of the issue prior to the sale of

14    the first GTO; (3) actively concealed the fact that the suspension system and alignment setting

15    (and specifically the camber settings) was defective and would cause premature and uneven wear

16    of the vehicle's tires; (4) refused to honor its warranty to repair the defect or provide full

17    reimbursement for damages caused by the defect; and (5) continued to sell the Vehicles despite

18    that it received, and continues to receive, numerous complaints from Vehicle owners and lessees.

19        5.    GM further concealed material facts regarding the GTO alignment problems by

20    affirmatively misrepresenting the purported attributes of the GTO. As a result of GM's conduct,

21    including its omissions, acts of concealment and misrepresentations, Plaintiff and Class members

22    have been and will continue to be harmed and subjected to premature tire wear, and unnecessary

23    repair and replacement costs. If these material facts had been disclosed by GM, Plaintiff and

24    Class members would not have purchased or leased, or would have paid significantly less, for

25    their GTO Vehicles.

26        6.    Defendant has or should have the capability of fixing the suspension system and

27    alignment settings on the Vehicles so that they can operate safely with proper suspension and

28    alignment settings and tires that have a normal useful life. Instead of taking this responsible

1    action to remedy its unlawful actions and misconduct, Defendant has chosen to disclaim

2    responsibility for its misconduct and, instead, has sought to shift the economic burden of its

3    development, manufacturing, marketing, distribution and/or sale of the Vehicles with the

4    inherently defective suspension system and alignment settings to Plaintiff and Class members.

**PARTIES**

6    7.    Plaintiff is a citizen of the State of Ohio, and resides and has resided in Grove

7    City, Ohio at all pertinent times. On or about April 4, 2006, Sidner purchased a new 2006

8    Pontiac GTO for his personal and family use from H & K Motor Sales, Inc., an authorized GM

9    dealership located in Continental, Ohio. Sidner paid $29,200 for the Vehicle, including tax and

10    license fees.

11    8.    GM, is a Delaware corporation that does business throughout this judicial district.

**JURISDICTION AND VENUE**

13    9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

14    because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

15    interest and costs, and this is a class action in which the Class members and Defendant are

16    citizens of different states.

17    10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

18    Defendant engages in business activities throughout this judicial district, and there are two

19    related and consolidated actions, *O'Connor v. General Motors Corporation*, Case No.

20    2:07-cv-00892-FCD-GGH ("*O'Connor*") and *Paikai v. General Motors Corporation*, Case No.

21    2:07-cv-02469-FCD-GGH ("Paikai"), pending in this District.

22    11.    By this action, Plaintiff seeks relief under the Magnuson-Moss Warranty Act

23    ("MMWA"), 15 U.S.C. §§ 2301 *et seq*, and in particular 15 U.S.C. § 2310(d)(1) and (3) and

24    under Ohio law, which is the state in which Plaintiff resides, contracted, purchased, and

25    attempted to service his vehicle, for violations of the Ohio Consumer Sales Practices Act, Ohio

26    Rev. Code § 1345.01 *et seq.* ("OCSPA"), breach of express warranty and unjust enrichment.

27    12.    All jurisdictional prerequisites to suit have been satisfied.

28

First Amended Complaint - *Sidner v. General Motors*                                                    3

**FACTS**

13.     This class action is brought on behalf of all current and former owners and lessees of Pontiac GTO Vehicles manufactured by GM (with the exception of those sold or leased in California and Florida) with respect to the claims asserted in this action.

14.     The Vehicles at issue, which had a suggested retail price of approximately $30,000, were manufactured, marketed and sold by GM (and its Holden division), through its established network of licensed dealers and distributors throughout the United States, including throughout Ohio.

15.     The GTO was engineered and assembled in Australia, by engineers that did not have expertise equivalent to GM's engineers in North America. The Vehicles were to be built on the same platform as their Australian counterpart, the Holden Monaro, although the GTO was a heavier vehicle and used a different, larger tire and wheel combination than was used on the Monaro.

16.     According to GM press releases, changes in tire and wheel components necessitate changes in suspension system and alignment settings.

17.     However, the design and engineering work for the GTO was done on a shortened and extremely aggressive schedule, which proved to be too optimistic and did not allow for time to correct all problems and make the necessary changes with respect to the suspension system and alignment settings in the Vehicle.

18.     Before the Vehicle was sold to the public, GM was aware of the problems with the suspension and alignment settings in the GTO Vehicles. Several modifications were made to the camber (a component of the suspension/alignment) setting fixture to try to (unsuccessfully) correct the faulty alignment settings from the factory.

19.     Defendant had exclusive knowledge of the fact that the suspension and alignment settings were improper and that these defects could lead to premature tire wear. Defendant was further made aware of this fact as a result of the numerous complaints it received about problems with the GTO tires from their customers (as described below) and dealers.

20.     Defendant provided Plaintiff and each owner and lessee of the Vehicles with the

1    same uniform 3 year, 36,000 mile bumper-to-bumper factory warranty. Defendant's express

2    warranty, in pertinent part, provides:

3              The warranty covers repairs to correct any vehicle defect related to
               materials or workmanship occurring during the warranty period.
4
                *       *       *       *       *       *       *
5              Warranty repairs, including towing, parts, and labor, will be made
               at no charge.
6
                *       *       *       *       *       *       *
7              The tires supplied with your vehicle are covered against defects in
               material or workmanship under the Bumper-to-Bumper coverage.
8              Any tire replaced will continue to be warranted for the remaining
               portion of the Bumper-to-Bumper coverage period.
9
Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiff's prematurely
10
worn tires at no charge; (2) to repair and adjust the improper suspension and alignment settings
11
which was necessitated by the defect at no charge; and (3) to repair the defect at no charge.
12
Defendant has these same obligations with respect to Plaintiff and all Class members, but has
13
failed to satisfy these obligations.
14
         21.    GM also included misleading and deceptive information in the warranty
15
information provided to Plaintiff and Class members, by its (false) promise that the factory
16
alignment was sufficient for the vehicle. According to the 2004 GTO owner manual: "The
17
wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest
18
tire life and best overall performance. Scheduled wheel alignment and wheel balancing are not
19
needed. However, if you notice unusual tire wear or your vehicle pulling one way or the other,
20
the alignment may need to be reset. If you notice your vehicle vibrating when driving on a
21
smooth road, your wheels may need to be rebalanced." Despite these obligations, GM denied
22
warranty coverage to Plaintiff and Class members.
23
         22.    Throughout the period during which GM offered GTO Vehicles, GM engaged in
24
a uniform marketing and sales campaign, in which it consistently misrepresented and/or
25
concealed material facts in its advertisements, sales and marketing materials, warranties, and
26
through its sales representatives and dealers, by concealing from, failing to disclose and/or
27
misrepresenting to Plaintiffs and the Class material information regarding the Vehicles,
28
including, but not limited to the fact that: (1) a critical component in the automobiles, the

First Amended Complaint - *Sidner v. General Motors*                                    5

1    suspension system and alignment setting (and specifically the camber settings), was defective;

2    (2) the defect in the suspension system and alignment setting (and specifically the camber

3    settings) would cause premature and uneven wear of the Vehicle's tires; (3) GM would not

4    honor its warranty to repair the defect or provide full reimbursement for damages caused by the

5    defect. GM's misrepresentations and omissions regarding the Vehicles are consistent and

6    uniform.

7        23.    The fact that a critical component in the automobiles, the suspension system and

8    alignment setting (and specifically the camber settings), was defective and that the defect in the

9    suspension system and alignment setting (and specifically the camber settings) would cause

10    premature and uneven wear of the Vehicle's tires, rendering the GTO tires with a markedly

11    reduced useful life is a material fact, which a reasonable person would consider important in

12    deciding whether or not to purchase (or to pay the same price for) a GTO Vehicle. Plaintiff and

13    Class members would not have purchased, or would have paid substantially less for, their

14    Vehicles had they been informed that the suspension system and alignment setting (and

15    specifically the camber settings), was defective and that the defect in the suspension system and

16    alignment setting (and specifically the camber settings) would cause premature and uneven wear

17    of the Vehicle's tires. Furthermore, Plaintiff and Class members reasonably expected that GM

18    would not sell them Vehicles containing a known defect.

19        24.    Defendant had exclusive knowledge of the defect and the reduced useful life of

20    the tires that resulted. In fact, Defendant had access to relevant data regarding the defect, and

21    had knowledge as a result of the numerous complaints it received from consumers regarding

22    their need to replace these tires much sooner than they expected or is reasonable.

23        25.    Defendant has been on notice of the defect in the Vehicles and that it did not

24    comport with the representations made in the advertising, marketing and sale of the Vehicles

25    from, *inter alia*, customer complaints, warranty claims and field technicians. However,

26    Defendant concealed this knowledge from Plaintiff and the Class.

27        26.    Defendant knew or should have known of the defect at the time of the marketing,

28    sale and distribution of the Vehicles. In light of Defendant's knowledge regarding the defect and

First Amended Complaint - *Sidner v. General Motors*                                         6

1    problems detailed above, including the reduced expected life of the tires, the provision of a

2    limited warranty with respect to the Vehicles under all of these circumstances, constitutes an

3    unlawful, unfair and fraudulent business practice, and, under all of the circumstances, the limited

4    warranties accompanying the Vehicles are unconscionable.

5    **Plaintiff's Experiences With His GTO**

6         27.    On April 4, 2006, Plaintiff purchased a new 2006 Pontiac GTO, VIN

7    6G2VX12495L425978 from H & K Motor Sales, Inc., Continental Ohio, an authorized Pontiac

8    GTO dealer. The Vehicle was purchased pursuant to a written contract of sale, under which

9    Sidner paid $29,200 including tax and license. Plaintiff purchased the vehicle for his personal

10   and family use.

11        28.    On February 10, 2007, Haydocy Pontiac GMC Buick ("Haydocy"), an authorized

12   Pontiac dealer located in Columbus, Ohio, rotated the tires on Plaintiff's Vehicle at odometer

13   reading 6,549.

14        29.    On December 20, 2007, with the odometer reading 12,166 miles, Plaintiff noticed

15   the left front tire on his GTO had picked up nail. Plaintiff took the GTO to National Tire and

16   Battery in Columbus, Ohio where, upon inspection, a technician found the nail. During the

17   inspection, the technician also saw that the inside of the left front tire was shredded. Plaintiff

18   paid the tire retailer $260.61 to replace the tire, which was in immediate need of replacement.

19        30.    Within a month of having to replace the left front tire, Plaintiff noticed that the

20   right rear tire, which had been on the front of the Vehicle prior to the tires being rotated, was

21   worn on the outside edge of the tire. Prior to rotation, the outside edge had previously been on

22   the inside edge when the tire was on the left front of the Vehicle.

23        31.    In early January 2008, Plaintiff telephoned Haydocy's service department and

24   explained that he had a tire that was damaged, having apparently hit the front struts of the

25   Vehicle. Although Plaintiff presented the issue to Haydocy, at a time which Defendant was

26   clearly aware of the defect, Plaintiff was told by the Haydocy representative that he should not

27   bring his Vehicle in because the tire wear would not be covered by any warranty. In denying

28   warranty coverage, the representative incorrectly stated that the tire problem was likely due to

First Amended Complaint - *Sidner v. General Motors*                                              7

1    road hazard (as opposed to the known defect).

2         32.     Plaintiff next called GM's customer service number and complained about the

3    Haydocy's refusal to replace the tire under warranty. The GM representative told Plaintiff return

4    to the dealer and failed to disclose the fact that the know defect was responsible for the type of

5    wear described by the Plaintiff. Plaintiff complied with the directive and took the car back to

6    Haydocy, at which time the service writer again reaffirmed that the tire would not be covered by

7    warranty. Rather than acknowledging that the tire wear was caused by the known defect, the

8    service writer incorrectly stated that the wear could have been caused "by anything."

9         33.     Having presented the Vehicle for warranty coverage, and having wrongly been

10    denied such coverage by GM, Plaintiff took his Vehicle to a Firestone store in Columbus, Ohio

11    on or about January 26, 2008. After examining the Bridgestone/Firestone Potenza tires on

12    Plaintiff's Vehicle, the technician wrote on the repair order that the tire was not eligible for the

13    Firestone warranty because the tire was "rubbing on the strut." Plaintiff was required to pay

14    Firestone $304 for a replacement tire.

15    **Class Members' Experiences with the GTO**

16         34.     Plaintiff's experience with his GTO mirrors those of the thousands of other

17    Vehicle owners and lessees. The Internet is replete with thousands of references to the common

18    and profound problems that consumers have experienced with the GTO's suspension and

19    alignment, all leading to severely premature tire wear, including, but not limited to, the following

20    small sample of representative complaints appearing at gtoforum.com (as monitored and

21    collected by GM), LS1GTO.com/forums, and LS2GTO.com/forums:

22                   I had strut rub and chewed up the factory tires within 16,000 miles.
               I tried going through GM and was ready to get an attorney. I
23                   threw in the towel and bought some 18 inch stock rims on eBay.
               Plenty of clearance now. The dealerships act like they have never
24                   heard of such a problem but off the record my service rep told me
               GM is well aware of the problem. I just didn't have the energy to
25                   bicker back and forth with them. Now that I don't have to worry
               about strut rub I can have some fun with my car!

26

               *     *     *     *     *     *     *
27

28                   Strut rub should be covered under warranty. I was told by a GM
               rep (who owns a GTO) that there is, in his words a "hidden recall"
               on this issue, since it is safety related. He told me to go directly to

the service manager.  If you have no luck there, ask to contact the zone rep.  They are supposed to correct the camber problem but that's all they will do.

\*    \*    \*    \*    \*    \*    \*

It's about damn time a report like this has been made.  I know of a couple of GTOs with this problem that have been taken to dealers near me and they won't do crap saying that all it needs is a new alignment and is not covered under warranty, even though one of the tires I saw was down to the belts and only had like 8,000 miles on it.

\*    \*    \*    \*    \*    \*    \*

You ever figured that out (why the huge range of coverage from total to zero); make sure you buy a lottery ticket too....

I'm $360 out of pocket for a new tire and a 4-wheel alignment to crank the camber out from the struts so they'll stop rubbing.  Awesome.  I always wanted to know what it would be like to have a GTO that corners like a Malibu or Taurus - now I know.

Tip of the iceberg for me.  Mileage 11,300.  Right front tire:  replaced.  Radius rod bushes: shot.  Upper strut bushes: shot.  Number of dealers involved: two.  Number of parts replaced under warranty:  ZERO Thanks GM - you've made my next car purchase decision crystal-clear, and it does not involve buying any of your crap cars.

\*    \*    \*    \*    \*    \*    \*

Been hearing about this issue here.  Didn't think I had it until I just checked my front tires.  Wow, wore down to the belts!  It has 21,000 miles and the tires are wore out anyway, but I don't want to get new tires and have this problem!

Just talked to the dealer, he heard of it on one other car and said an alignment will solve it.  Said he knows it is a tight fit but it should never rub unless there are other problems.  He seemed cool about it and said he will make sure GM has no bulletins on it.  Guess that is where I am at for now.

\*    \*    \*    \*    \*    \*    \*

GM is ignoring the problem because they probably think that this is something they inherited from Holden [even though they own it].  By sending out notices to all GTO owners advising them of the potential problem and offering free alignments they would be admitting fault.  They're also dealing with only 40,000 or so units that are not even in production anymore.  If these were ford pintos with exploding gas tanks and a million sold there would be a national crisis.  They are just weathering the storm now knowing that a big chunk of the GTOs have 18" 235 tires and are not a problem and the rest of the 17" owners will take care of their own situation.  A couple of owners who are oblivious will have fatal

accidents and they'll just settle the lawsuits. A lot cheaper than retrofitting 40,000 out of production cars with a new suspension.

*   *   *   *   *   *   *

I bought mine in January and my dealer replaced my struts (March build date) before the car was even delivered to me. Apparently, GM sent out a bulletin to all dealers authorizing replacement of correct struts for existing inventory still on the lots.

GM is aware of this problem, trust me. Don't let the dealer give you any mumbo jumbo. If your car is affected, they owe you new struts.

Happy motoring.

*   *   *   *   *   *   *

I have a blue 2004 and my left front wheel is rubbing on the strut. You can visibly see on the tire where it is wearing. I only have 19,000 miles on the car. I can't believe it. Thanks for all your research...I am taking it in A.S.A.P.

*   *   *   *   *   *   *

I just followed up on this discussion because I lost 1 tire on the freeway - tread peeled off but did not deflate. After getting home I find the other front tire is peeling - just no fully separated yet!!!!

Damage both on the inner tire edge and I had been checking periodically for damage - I had notice uneven wear but I did not thing it was strut rub - now I think it was.

Should I still complain to GM dealer about this with the NHTSA investigation closed.

*   *   *   *   *   *   *

Ok, here's my story, I'd appreciate any advice as to what to talk with the dealer about. I have an 05 A4, with stock 17" rims and tires, that just turned 28K miles. I do not drive my car hard. I guess an old age has calmed me down. I've done maybe 10 full power launches.

I've gone through 2 sets of tires. Each time the inside of the rear tires wear MUCH faster than the rest of the tire. The last time the rears went, the outside of the tire had 50% tread left while the inside edge of the tire separated from the sidewall. Of course, the dealer said this was normal, but recommended I have the car aligned (which I did 3 weeks ago). I have some strut rub up front on both sides. Not enough to wear through the pain on the struts but enough to leave very noticeable marks. Also have marks on the front on the right fender well were the tire has rubbed during turns.

*   *   *   *   *   *   *

First Amended Complaint - *Sidner v. General Motors*

1    I submitted the form on-line & was contacted by an investigator
     (Derek Rinehardt). I supplied him with pictures and a short write
2    upper his request

3    It is/was the dealer arrogance (on top of the money & time I had to
     spend to fix it myself) that really bothered me. I tried to give him
4    information off this board and he would not even look @ it. I
     asked him about checking the strut bushings & ride height, neither
5    of which he did. His answer was an alignment & selling me 4 tires
     and "see what happens". I explained I felt that was a band-aid
6    approach and I was not going to pay for an $80 alignment when I
     was fairly sure there were failed suspension components.
7    Ultimately, he stated I did not want to participate in the repair
     process.
8
     If I can get the proper dimensions on a new GM bushing I can take
9    that info long with my old ones and pursue reimbursement.
     Additionally when I repaired the front with the new bushings it
10   became obvious the rear springs were also shot. I replaced them
     with King's. I had worse tire wear on the rear that the front when
11   all was said and done!!

12        *      *      *      *      *      *      *

13       35.    Having received numerous complaints, on February 16, 2007, The United States

14   Department of Transportation, National Highway Traffic Safety Administration ("NHTSA")

15   opened an investigation into complaints of front tire failures due to front strut to tire interference

16   on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control. In

17   connection with that investigation, GM provided documents and information to NHTSA.

18   Although NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report

19   Summary stated that "excessive negative camber is an apparent issue." Also according to the

20   NHTSA investigation, "approximately 90% of the final factory camber settings available for

21   complaint and warranty claim vehicles GM provided ... had right wheel camber settings that

22   were out of specifications."

23       36.    Indeed, GM was aware (and had exclusive knowledge) of the defect and has

24   acknowledged (although not to Plaintiff and Class members) that premature front tire wear in the

25   Vehicles was caused by improper alignment, specifically by out of specification negative

26   camber, and that out of specification negative camber could be caused by improper factory

27   alignment settings.

28

First Amended Complaint - *Sidner v. General Motors*                                      11

## CLASS ACTION ALLEGATIONS

37.    Plaintiff requests that this Court certify the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

a.    **48 State Class**: All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the United States, excluding California and Florida, who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO warranty in connection with premature or uneven inner should tire wear or for struts hitting the tires (the "48 State Class").

b.    **Ohio Sub-Class**: All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the State of Ohio (the "Ohio Sub-Class").

c.    **Ohio Warranty Class**: Ohio Sub-Class members who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO warranty in connection with premature or uneven inner should tire wear or for struts hitting the tires (the "Ohio Warranty Class")(collectively "Class").

Excluded from the Class and Sub-Class definitions are officers and employees of GM, its subsidiaries and its dealers, anyone sustaining personal injuries as a result of the defect alleged herein, as well as any judge to whom this action is assigned. Plaintiff reserves the right to amend these class definitions if discovery and further investigation reveals that the proposed classes should be expanded or otherwise modified.

38.    This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Rules of Civil Procedure. This action satisfies the requirements of numerosity, typicality, adequacy, predominance and superiority.

39.    <u>Numerosity</u>. On information and belief, the members of the 48 State Class number in at least the thousands and the members of the Sub-Classes number in at least the hundreds. As a result, the 48 State Class and Sub-Classes are so numerous that joinder of all members in a single action is impracticable. The members of the Class are readily identifiable from information and records in Defendant's possession, custody or control. The disposition of these claims will provide substantial benefits to the Class.

40.    <u>Commonality and Predominance</u>. There is a well-defined community of interest among the members of the Class. Common questions of law and fact predominate over any

questions affecting only individual members of the Class.  These common legal and factual

questions do not vary among members of the Class and may be determined without reference to

the individual circumstances of the individual members.  These common questions include, but

are not limited to, the following:

       a.    Whether the Vehicles are defective;

       b.    Whether GM's conduct violated the MMWA;

       c.    Whether GM's conduct violated the OCSPA;

       d.    Whether GM breached its express warranty;

       e.    Whether GM concealed the defect from Plaintiff and Class members;

       f.    Whether, by its conduct, GM has been unjustly enriched; and

       g.    Whether, as a result of GM's misconduct, Plaintiff and the Class members
are entitled to damages, restitution, and equitable relief, and/or other
damages or relief, and, if so, the amount and nature of such relief.

41.    <u>Typicality</u>.  The representative Plaintiff's claims are typical of the claims of the

Class because Plaintiff and all members of the Class were injured by the same wrongful practices

in which GM engaged and are based on the same legal theories.  The only differences may be the

amount of damages sustained by each member of the Class, which can be determined readily,

and does not bar class certification.

42.    <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent the

Class.  Plaintiff understands the nature of the claims herein, as well as his role in the

proceedings, and will vigorously represent the interests of the Class.  Plaintiff has retained Class

counsel who are experienced and qualified in prosecuting class actions and other forms of

complex litigation.  Neither Plaintiff nor his attorneys have interests that are contrary to or

conflict with those of the Class.

43.    <u>Superiority/Manageability</u>.  A class action is superior to all other available

methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

claims of the members of the Class would be economically unfeasible and procedurally

impracticable.  While the aggregate damages sustained by the Class are likely millions of dollars,

First Amended Complaint - *Sidner v. General Motors*                  13

1    the individual damages incurred by each member resulting from GM's wrongful conduct are too

2    small to warrant the expense of individual lawsuits. The likelihood of individual members of the

3    Class prosecuting separate claims is remote and, even if every person could afford individual

4    litigation, the court system would be unduly burdened by individual litigation of such cases.

5    Individual members of the Class do not have significant interest in individually controlling the

6    prosecution of separate actions, and individualized litigation would also present the potential for

7    varying, inconsistent, or contradictory judgments. Plaintiff knows of no difficulty to be

8    encountered in the management of this action that would preclude its maintenance as a class

9    action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the

10    Class would be proper.

11        44.    Defendant has or had access to address information for the Class members, which

12    may be used for the purpose of providing notice of the pendency of this action.

13                    **TOLLING OF THE STATUTE OF LIMITATIONS**

14        45.    The causes of action alleged herein accrued upon discovery of the latently

15    defective nature of the Vehicles. Because the defect and limitations alleged herein are latent and

16    because Defendant took steps to conceal the true character, nature and quality of the Vehicles,

17    among other reasons, Plaintiff and members of the Class did not discover and could not have

18    discovered the problems and defects alleged herein through the exercise of reasonable diligence.

19        46.    Any applicable statutes of limitations have been tolled by Defendant's knowing

20    and active concealment and denial of the facts as alleged herein. Plaintiff and the Class have

21    been kept ignorant of vital information essential to the pursuit of these claims, without any fault

22    or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have

23    discovered the defects and problems alleged herein because of Defendant's fraudulent

24    concealment. In addition, Defendant continued to sell Vehicles without disclosing the defects

25    and problems.

26        47.    Defendant was and is under a continuous duty to disclose to Plaintiff and the

27    Class the true character, quality, and nature of the Vehicles. Defendant knowingly,

28    affirmatively, and/or actively concealed, and continue to conceal, the true character, quality and

First Amended Complaint - *Sidner v. General Motors*                                    14

1  nature of the Vehicles at issue. Defendant also continued to sell Vehicles and replacement tires

2  while concealing the defects and true character, quality and nature of the Vehicles.

3     48.    Defendant knew or should have known that Plaintiff and the Class would

4  reasonably rely upon Defendant's knowing, affirmative, and/or active concealment. Based on the

5  foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this

6  action.

7     49.    Plaintiff has been damaged and suffered injury in fact as a result of Defendant's

8  conduct, including, but not limited to, having to pay for replacement tires and alignments due to

9  the defect in the Vehicle, and by purchasing a Vehicle that has lost value as a result of the defect.

10  The other owners and lessees of the Vehicles have, or will, suffer the same or substantially

11  similar damages as a result of Defendant's conduct.

12                    **FIRST CLAIM FOR RELIEF**
                **(Violation Of Magnuson-Moss Warranty Act - Breach Of**
13              **Written Warranty - On Behalf Of The 48 State Class)**

14     50.    Plaintiff realleges and incorporates the above allegations by reference.

15     51.    The Vehicles are "consumer products" as that term is defined by 15 U.S.C. §

16  2301(1).

17     52.    Plaintiff and members of the 48 State Class are "consumers" as that term is

18  defined by 15 U.S.C. § 2301(3).

19     53.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C.

20  § 2301(4) and (5).

21     54.    Defendant provided Plaintiff and members of the 48 State Class with "written

22  warranties" as that term is defined by 15 U.S.C. § 2301(6).

23     55.    In its capacity as a warrantor, and by the conduct described herein, any attempts

24  by Defendant to limit the express warranties in a manner that would exclude coverage of the

25  defective Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability

26  for the defective Vehicles is null and void.

27     56.    All jurisdictional prerequisites have been satisfied.

28     57.    As set forth herein, GM's express warranty covered the Vehicles and, under the

First Amended Complaint - *Sidner v. General Motors*                                    15

1  circumstances described herein, its tires, struts, cambers and related systems.

2      58.    The written warranty was provided to Plaintiff and members of the 48 State Class

3  by GM and specifically extends to original purchasers and subsequent owners for the period of

4  warranty coverage.

5      59.    GM warranted all of GTOs against defects in material or workmanship at a time

6  when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to

7  market and sell the Vehicles with the written warranty to Plaintiff and members of the 48 State

8  Class.

9      60.    GM is obligated under the terms of its written warranty to repair and/or replace

10  the defective suspension and alignment systems, and under the circumstances described herein,

11  its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the 48

12  State Class.  GM is further obligated to cover the costs of tires that are prematurely worn as a

13  result of the defect, as well as all related an ancillary costs involved in replacing said tires.

14      61.    Based on the conduct described herein, GM breached the written warranty that it

15  provided to Plaintiff and members of the 48 State Class.

16      62.    As set forth above, GM's warranty fails in its essential purpose and, accordingly,

17  Plaintiff and members of the 48 State Class cannot and should not be limited to the remedies set

18  forth in GM's written warranty and, instead, should be permitted to recover other appropriate

19  relief, including damages and injunctive relief.

20      63.    GM knew of its obligations under its warranty to pay to replace the prematurely

21  worn tires and to repair and adjust the improper alignment, which resulted from the defect

22  described herein.  GM, however, willfully refused to pay for the new tires or alignment as

23  required under the warranty.

24      64.    GM knew of its obligations under its warranty to repair the defective Vehicles as

25  described herein.  GM, however, has refused to remedy the defect.

26      65.    Plaintiff and members of the 48 State Class have performed each and every duty

27  required of them under the terms of the warranties, except as may have been excused or

28  prevented by the conduct of Defendant or by operation of law in light of Defendant's

First Amended Complaint - *Sidner v. General Motors*                                    16

1  unconscionable conduct.

2      66.    GM has received sufficient and timely notice of the breaches of warranty alleged

3  herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment

4  systems, which in turn cause premature tire wear, GM has failed and refused to honor its

5  warranty, even though it knows of the inherent defect.

6      67.    GM has received, upon information and belief, thousands of complaints and other

7  notices from its customers nationwide advising it of the defects in suspension and alignment

8  systems.

9      68.    Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

10  its warranty, and Defendant has failed to do so.

11      69.    GM has failed to provide to Plaintiff or the members of the 48 State Class, as a

12  warranty replacement, a product that conforms to the qualities and characteristics that GM

13  expressly warranted when it sold the Vehicles to Plaintiff and members of the 48 State Class.

14      70.    As a result of GM's breach of warranty, Plaintiff and the 48 State Class have

15  suffered damages in an amount to be determined at trial and are entitled to, and seek, all relief

16  available under the MMWA.

17              **SECOND CLAIM FOR RELIEF**
              **(Violation Of The Ohio Consumer Sales Practices Act -**
18              **On Behalf Of The Ohio Sub-Class)**

19      71.    Plaintiff realleges and incorporates the above allegations by reference.

20      72.    Plaintiff and the members of the Ohio Sub-Class are consumers within the

21  meaning of the OCSPA, and the Vehicles are consumer goods within the meaning of the OCSPA

22  Ohio Rev. Code § 1345.01(A).

23      73.    The purchase and lease of the Vehicles by Plaintiff and members of the Ohio Sub-

24  class as described herein constitute "consumer transactions" within the meaning of § 1345.01(A)

25  of the OCSPA.

26      74.    The OCSPA prohibits unfair, deceptive and unconsionable practices in consumer

27  sales transactions and provides consumers with private rights to action to redress such conduct.

28  Ohio Rev. Code §§ 1345.02, 1345.09

1        75.      GM's business acts and practices alleged herein constitute unfair methods

2    of competition, unconscionable acts or practices and/or deceptive acts or practices under the

3    OCSPA.

4        76.      Defendant acted in the face of prior notice that its conduct was deceptive, unfair

5    and unconscionable. It is well established in OCSPA jurisprudence that material omissions and

6    misrepresentations regarding a product constitute violations of the OCSPA. *Delahunt* v.

7    *Cytodyne Technologies, et al.*, 241 F. Supp.2d 827, 838 (2003) (plaintiff stated claim for

8    violation of OCSPA where label affixed to products sold by defendant contained misstatements

9    and omitted material information); *Amato v. General Motors Corp.*, 463 N.E.2d 625, 633-33

10    (Ohio Ct. App. 1982) (plaintiff's claims fell within the OCSPA in a suit involving

11    misrepresentations and omissions in advertising relating to the sale of motor vehicles); *Andrews*

12    *v. Scott Pontiac Cadillac GMC, Inc.*, 594 N.E.2d 1127, 1130, 1132 (Ohio Ct. App. 1991)

13    (holding that "a supplier commits an unfair or deceptive act or practice when it has actual

14    knowledge of the previous defect and/or damage to a new motor vehicle and fails to disclose the

15    defect and/or extent of the previous damage" and violates the CSPA by failing to disclose);

16    *Fisher v. Rose Chevrolet, Inc.*, 612 N.E.2d 782, 786 (Ohio Ct. App. 1992) (holding that omission

17    that induced sale of vehicle was actionable under the CSPA); *Howard v. Norman's Auto Sales*,

18    No. 02AP-1001, 2003 WL 21267261, *5 (Ohio App. 10th Dist. Jun. 3, 2003) (OCSPA violation

19    where car salesman falsely represented that vehicle was in good condition and would not require

20    repair for six to eight months). These decisions existed at the time of the wrongful conduct by

21    GM, such that GM was on sufficient notice because each of the decisions cited above were

22    publicly available when the alleged violation by GM occurred. *See e.g.*, *Nessle v. Whirlpool*

23    *Corp.*, 2008 WL 2967703 No. 1:07CV3009 (N.D. Ohio, July 25, 2008) (holding that list of

24    enumerated wrongful acts under the OCSPA was by "no means exclusive," and plaintiff's

25    citation to several published cases with similar facts was more than sufficient to support a

26    finding that Whirlpool was on notice that its conduct was wrongful).

27        77.      It also is a deceptive act or practice for a supplier to make representations,

28    claims or assertions of fact in the absence of a reasonable basis in fact. Ohio Admin. Code §§

First Amended Complaint – *Sidner v. General Motors*                    18

1    109.4-3-10(A).

2        78.    GM's practices violate the OCSPA for, *inter alia,* one or more of the following

3    reasons: (a) GM represented that its services (specifically, its warranty and related services) have

4    characteristics, uses and benefits that they do not have; (b) GM failed to disclose material facts

5    concerning the defect(s) in the Vehicles and omitted material facts relating to the defect(s) in its

6    marketing and sale of the Vehicles, (c) GM acted in the face of prior notice regarding the

7    defect(s), thereby rendering its conduct unconscionable under all the circumstances; and (d) GM

8    (by and through its dealers) and by its acts and omissions misrepresented and omitted material

9    facts regarding the Vehicles and tires on the Vehicles, its warranty obligations to consumers, and

10    other rights, remedies or obligations.

11        79.    The representations and omissions by Defendant were likely to deceive

12    reasonable consumers and a reasonable consumer would have relied on these representations and

13    omissions.

14        80.    Had Defendant disclosed all material information regarding the Vehicles to

15    Plaintiff and other members of the Ohio Sub-Class, they would not have purchased or leased the

16    Vehicles.

17        81.    As a direct and proximate result of Defendant's violations of the OCSPA,

18    Plaintiff and members of the Ohio Sub-Class have suffered injury in fact and/or actual damage,

19    in that they purchased or leased Vehicles with suspension and alignment defects that cause

20    premature tire failure. Had Defendant disclosed the true quality, nature and drawbacks of the

21    Vehicles, Plaintiff and members of the Ohio Sub-Class would not have purchased, or would have

22    paid significantly less, for the Vehicles. Plaintiff and the members of the Ohio Sub-Class have

23    suffered further harm in that: the tires wear prematurely from the time the Vehicles are first

24    driven; they have paid or will be required to pay to repair or replace the tires more than has been

25    reasonably anticipated and represented as well as to pay for related services (such as

26    alignments); and they have lost use of their Vehicles and have suffered diminution of value, and

27    the Plaintiff and the other members of the Class are entitled to recover such damages, together

28    with appropriate exemplary damages, attorneys' fees and costs of suit.

### THIRD CLAIM FOR RELIEF
**(Breach Of Written Warranty, Ohio Rev. Code § 1302.26 -
On Behalf Of The Ohio Warranty Class)**

82.     Plaintiff realleges and incorporates the above allegations by reference.

83.     Plaintiff seeks to recover for GM's breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

84.     As set forth herein, GM uniformly warranted all of GTOs against defects in material or workmanship at a time when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to market and sell the Vehicles with the written warranty to Plaintiff and members of the Ohio Warranty Class.

85.     GM is obligated under the terms of its written warranty to repair and/or replace the defective suspension and alignment systems, and under the circumstances described herein, its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the Ohio Warranty Class. GM is further obligated to cover the costs of tires that are prematurely worn as a result of the defect, as well as all related an ancillary costs involved in replacing said tires.

86.     GM, by the conduct described herein, has breached its written warranty obligations by supplying the Vehicles in a condition which does not meet the warranty obligations undertaken by GM, and by failing to repair or replace the defect and/or defective parts, including the tires that wore unevenly and prematurely as a result of the defect.

87.     As set forth above, GM's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Ohio Warrant Class can not and should not be limited to the remedies set forth in GM's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

88.     Plaintiff and members of the Ohio Warranty Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

89.     GM has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment

1  systems, which in turn cause premature tire wear, GM has failed and refused to honor its

2  warranty, even though it knows of the inherent defect.

3       90.    GM has received, upon information and belief, thousands of complaints and other

4  notices from its customers nationwide advising it of the defects in suspension and alignment

5  systems.

6       91.    Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

7  its warranty, and Defendant has failed to do so.

8       92.    GM has failed to provide to Plaintiff or the members of the class, as a warranty

9  replacement, a product that conforms to the qualities and characteristics that GM expressly

10  warranted when it sold the Vehicles to Plaintiff and members of the Ohio Warranty Class.

11       93.    As a result of GM's breach of warranty, Plaintiff and the members of the Ohio

12  Warranty Class have suffered damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment On Behalf Of The Ohio Sub-Class)**

14       94.    Plaintiff incorporates by reference the allegations contained in the preceding

15  paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Court.

16       95.    This claim is asserted in the alternative on behalf of Plaintiff and the members of

17  the Ohio Sub-Class, to the extent that any contracts do not govern the entirety of the subject

18  matter of the disputes with the Defendant.

19
20       96.    Plaintiff and the Ohio Sub-Class conferred a benefit on GM, of which benefit GM

21  had knowledge. By its wrongful acts and omissions described herein, including selling the

22  Vehicles, GM was unjustly enriched at the expense of Plaintiff and the Ohio Sub-Class. It would

23  be inequitable for GM to retain the profits, benefits, and other compensation obtained from its

24  wrongful conduct as described herein in connection with selling the Vehicles.

25       97.    Plaintiff, on behalf of himself and the Ohio Sub-Class, seeks restitution from GM

26  and an order of this Court proportionally disgorging all profits, benefits, and other compensation

27  obtained by GM from its wrongful conduct.

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant providing the following relief:

A.    An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.    Restitution and disgorgement to the extent permitted by applicable law, together with interest thereon from the date of payment, to the victims of such violations;

C.    Actual damages for injuries suffered by Plaintiff, the Class;

D.    Civil penalties to the extent permitted by applicable law;

E.    To the extent that GM has continued to market and sell the Vehicles in the manner challenged in this action, an order requiring GM to immediately cease its wrongful conduct as set forth above, as well as enjoining GM from continuing to conduct business via the unlawful and unfair business acts and practices complained of herein; an order requiring GM to engage in a corrective notice campaign; and an order requiring GM to refund to Plaintiffs and all members of the Class the funds paid to GM for the defective product;

F.    Reasonable attorneys' fees and the costs of prosecuting this action;

G.    Statutory pre-judgment and post-judgment interest; and

H.    Such other and additional relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.


Dated: February 20, 2009          By:    */s/Mark F. Anderson*
                                         Mark F Anderson (SBN 44787)
                                         KEMNITZER, ANDERSON, BARRON,
                                         OGILVIE & BREWER, LLP
                                         445 Bush Street, 6th Floor
                                         San Francisco, CA  94108
                                         Telephone:  (415) 861-2265
                                         Email: mark@kabolaw.com
                                         Email: matthew@kabolaw.com


First Amended Complaint - *Sidner v. General Motors*                              22

James E. Miller
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Email: jmiller@sfmslaw.com
Email: kleser@sfmslaw.com

James C. Shah (SBN 260435)
Natalie Finkelman Bennett
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Email: jshah@sfmslaw.com

Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                         :

In re                     :          Chapter 11 Case No.
                         :

MOTORS LIQUIDATION COMPANY, *et al.*,  :         09-50026 (REG)
    f/k/a General Motors Corp., *et al.*  :

                         :

                Debtors.     :          (Jointly Administered)

                         :

----------------------------------------------------------------x

ORDER GRANTING DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 45630
FILED BY WILLIAM O'CONNOR AND MELODY O'CONNOR;
PROOF OF CLAIM NO. 45628 FILED BY JOHN PAKAI;
AND PROOF OF CLAIM NO. 45629 FILED BY DAVID SIDNER

          Upon the Objection dated December 17, 2010 (the "**Objection**") to Proof of

Claim No. 45630 filed by William O'Connor and Melody O'Connor; Proof of Claim No. 45628

filed by John Pakai; and Proof of Claim No. 45629 filed by David Sidner (collectively, the

"**GTO Putative Class Claims**") of Motors Liquidation Company (f/k/a General Motors

Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"),

pursuant to section 502(b) of title 11, United States Code (the "**Bankruptcy Code**"), Rule

3007(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this

Court's Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule

3003(c)(3) Establishing the Deadline for Filing Proofs of Claim (Including Claims Under

Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form

and Manner of Notice Thereof (the "**Bar Date Order**") [ECF No. 4079], seeking entry of an

order disallowing and expunging claims numbered 45630, 45628, and 45629 on the grounds that

adjudication of the GTO Putative Class Claims fails to comply with Bankruptcy Rule 9014, as

more fully described in the Objection; and due and proper notice of the Objection having been

1

provided, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Objection is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set

forth in the Objection establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted as provided

herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the GTO

Putative Class Claims are disallowed and expunged in their entirety; and it is further

ORDERED that the Debtors shall have no obligation to establish reserves for

claim numbers 45630, 45628, and 45629 for purposes of the confirmation of a chapter 11 plan or

plans in these chapter 11 cases, and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
_____, 2011


_____
United States Bankruptcy Judge