HEARING DATE AND TIME: February 3, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: January 27, 2011 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY**, *et al.*,     :        **09-50026 (REG)**
       f/k/a General Motors Corp., *et al.*   :
                                              :
                   Debtors.                   :        **(Jointly Administered)**
                                              :
----------------------------------------------------------x

**NOTICE OF HEARING**
**ON THE DEBTORS' (I) OBJECTION TO PROOF OF CLAIM NO. 3128 FILED BY**
**CHERYL NICHOLAS, PROOF OF CLAIM NO. 59632 FILED BY TAMMY**
**HAMMOND, PROOF OF CLAIM NO. 51094 FILED BY ROBERT GOLISH, PROOF OF**
**CLAIM NO. 51092 FILED BY JOHN IRVINE, PROOF OF CLAIM NOS. 58984 AND**
**58985 FILED BY DAVID MATT, PROOF OF CLAIM NO. 58983 FILED BY JASON J.**
**SMITH, AND PROOF OF CLAIM NO. 58987 FILED BY BONITA STEVENS**
**AND, IN THE ALTERNATIVE, (II) MOTION TO**
**ESTIMATE PROOFS OF CLAIM NOS. 3128, 51092, 58984, 58985, 58983, AND 58987**

        **PLEASE TAKE NOTICE** that upon the annexed Objection, dated December 17,

2010 of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of Proof of

Claim No. 3128 filed by Cheryl Nicholas, Proof of Claim No. 59632 filed by Tammy Hammond,

Proof of Claim No. 51094 filed by Robert Golish, Proof of Claim No. 51092 filed by John

Irvine, Proof of Claim Nos. 58984 and 58985 filed by David Matt, Proof of Claim No. 58983

filed by Jason J. Smith, and Proof of Claim No. 58987 filed by Bonita Stevens (collectively, the

"**On-Star Putative Class Claims**"), all as more fully set forth in the Objection, a hearing will be

held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of

the United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **February 3, 2011 at 9:45 a.m. (Eastern Time),** or as soon

thereafter as counsel may be heard.

        **PLEASE TAKE FURTHER NOTICE** that any responses or objections to this

Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.), and (xii) Cheryl Nicholas, Tammy Hammond, Robert Golish, John Irvine,

David Matt, Jason J. Smith, and Bonita Stevens by and through their attorneys of record, David

H. Fink, Esq., E. Powell Miller, Esq., Darryl G. Bressack, Esq., THE MILLER LAW FIRM,

P.C., Interim Lead Counsel for Plaintiffs, 950 W. University Drive, Suite 300, Rochester,

Michigan 48307, so as to be received no later than **January 27, 2011 at 4:00 p.m. (Eastern

Time) (the "Response Deadline")**.

3

**PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
      December 17, 2010

                    /s/ Joseph H. Smolinsky
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

HEARING DATE AND TIME: February 3, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: January 27, 2011 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                                       :
**In re**                                              :       **Chapter 11 Case No.**
                                                       :
**MOTORS LIQUIDATION COMPANY**, *et al.*,              :       **09-50026 (REG)**
        f/k/a General Motors Corp., *et al.*           :
                                                       :
                        **Debtors.**                   :       **(Jointly Administered)**
                                                       :
------------------------------------------------------x

THE DEBTORS' (I) OBJECTION TO PROOF OF CLAIM NO. 3128 FILED BY
CHERYL NICHOLAS, PROOF OF CLAIM NO. 59632 FILED BY TAMMY
HAMMOND, PROOF OF CLAIM NO. 51094 FILED BY ROBERT GOLISH, PROOF OF
CLAIM NO. 51092 FILED BY JOHN IRVINE, PROOF OF CLAIM NOS. 58984 AND
58985 FILED BY DAVID MATT, PROOF OF CLAIM NO. 58983 FILED BY JASON J.
SMITH, AND PROOF OF CLAIM NO. 58987 FILED BY BONITA STEVENS
AND, IN THE ALTERNATIVE, (II) MOTION TO
ESTIMATE PROOFS OF CLAIM NOS. 3128, 51092, 58984, 58985, 58983, AND 58987

# TABLE OF CONTENTS

**Page**

Relief Requested ..................................................................................................... 1

Jurisdiction .......................................................................................................... 6

Relevant Factual Background .................................................................................... 6

The Relief Requested by the Debtors Should Be Approved by the Court.................... 11

I.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is
      Discretionary and Should Be Denied in this Case ............................................ 11

      A.    The On-Star Plaintiffs Failed to Comply with Bankruptcy Rule
            9014 .................................................................................................... 13

      B.    Allowing the On-Star Putative Class Claims to Proceed  as a Class
            Action Will Not Be Effective or Efficient .............................................. 15

      C.    The On-Star Putative Class Claims Were Not Certified Prior to the
            Commencement Date.......................................................................... 17

      D.    Adequate Notice of the Bankruptcy Case and the Bar Date Was
            Provided to the On-Star Putative Sub-Classes ...................................... 18

II.   The On-Star Putative Class Claims Cannot Satisfy the Requirements of
      Rule 23 ............................................................................................................ 20

      A.    Numerous Individual Issues Predominate over Any Common
            Questions.............................................................................................. 22

      B.    The On-Star Plaintiffs Cannot Establish that a Class  Action Is
            Superior to Other Available Methods for  Fairly and Efficiently
            Adjudicating this Controversy .............................................................. 32

      C.    Neither "Commonality" nor "Typicality"  Can Be Established by
            the On-Star Plaintiffs ........................................................................... 33

      D.    The On-Star Plaintiffs Are Not Adequate Representatives ................... 35

      E.    The Members of the On-Star Putative Sub-Classes Are Not
            Properly Identifiable ............................................................................ 36

III.  Alternatively, If the Unliquidated On-Star Putative Class Claims Are Not
      Expunged, They Should Be Subject to an Immediate Estimation
      Proceeding........................................................................................................ 38

      A.    Estimation of Claims........................................................................... 38

      B.    The Unliquidated On-Star Putative Class Claims Must Be
            Estimated If the Claims Are Not Expunged .......................................... 41

Notice ................................................................................................................... 41

# TABLE OF AUTHORITIES

## C<small>ASES</small>

*In re Air Bag Prods. Liab. Litig.*,
  7 F. Supp. 2d 792 (E.D. La. 1998) ......................................................................26

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981), *reh'g denied*, 450 U.S. 971 (1981)......................................23

*In re Am. Reserve Corp.*,
  840 F.2d 487 (7th Cir. 1988) ..............................................................................13

*Andrews v. Am. Tel. & Tel. Co.*,
  95 F.3d 1014 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) .................27

*In re Apex Oil Co.*,
  107 B.R. 189 (Bankr. E.D. Mo. 1989) ..................................................................39

*In re Baldwin-United Corp.*,
  55 B.R. 885 (Bankr. S.D. Ohio 1985)....................................................................40

*In re Bally Total Fitness of Greater N.Y., Inc.*,
  402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ..........11, 12

*Barasich v. Shell Pipeline Co.*, No. Civ. A. 05-4180,
  2008 WL 6468611 (E.D. La. June 19, 2008)..........................................................38

*Bittner v. Borne Chem. Co., Inc.*,
  691 F.2d 134 (3d Cir. 1982)...........................................................................39, 40

*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...............................................................38

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)..................23, 26

*In re Brints Cotton Mktg., Inc.*,
  737 F.2d 1338 (5th Cir. 1984) .............................................................................40

*Caro v. Procter & Gamble Co.*,
  18 Cal. App. 4th 644 (1993) ...............................................................................35

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .............................................................24, 28, 32, 33

*In re CD Realty Partners,*
205 B.R. 651 (Bankr. D. Mass. 1997) .................................................................................40

*In re Charter Co.,*
876 F.2d 866 (11th Cir. 1989), *cert. dismissed,* 496 U.S. 944 (1990)..............................11, 12

*In re Chateaugay Corp.,*
10 F.3d 944 (2d Cir. 1993).................................................................................................39

*Chin v. Chrysler Corp.,*
182 F.R.D. 448 (D.N.J. 1998)........................................................................................22, 28

*In re Drexel Burnham Lambert Group, Inc.,*
960 F.2d 285 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993)..................................21

*Edwards v. McCormick,*
196 F.R.D. 487 (S.D. Ohio 2000)......................................................................................35

*In re Ephedra Prods. Liab. Litig.,*
329 B.R. 1 (S.D.N.Y. 2005)....................................................................................... passim

*Feinstein v. Firestone Tire & Rubber Co.,*
535 F. Supp. 595 (S.D.N.Y. 1982).....................................................................................23

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
177 F.R.D. 360 (E.D. La.), *reconsideration denied,*
No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17, 1997) ................................25, 28

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
174 F.R.D. 332 (D.N.J. 1997)........................................................................................22, 28

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
194 F.R.D. 484 (D.N.J. 2000), *reconsideration denied,*
No. Civ. A. 96-1814 (JBS), 2001 WL 1869820 (D.N.J. Feb. 8, 2001) ...................................25

*In re Ford Motor Co. Vehicle Paint Litig.,*
182 F.R.D. 214 (E.D. La. 1998)..........................................................................................24

*In re Ford Speed Control Deactivation Switch Prods. Liab. Litig.,*
No. MDL 1718, 2007 U.S. Dist. LEXIS 62483 (E.D. Mich. Aug. 24, 2007) ........................26

*In re Fosamax Prods. Liab. Litig.,*
248 F.R.D. 389 (S.D.N.Y. 2008) ........................................................................................36

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982)...........................................................................................................33

*Henry Schein, Inc. v. Stromboe,*
    102 S.W.3d 675 (Tex. 2002)...................................................................................23

*Hurd v. Monsanto Co.,*
    164 F.R.D. 234 (S.D. Ind. 1995)............................................................................28

*In re Interco, Inc.,*
    137 B.R. 993 (Bankr. E.D. Mo. 1992)....................................................................39

*In re Jamesway Corp.,*
    No. 95 B 44821 (JLG), 1997 WL 327105
    (Bankr. S.D.N.Y. June 12, 1997)...............................................................13, 18, 19

*In re Johns-Manville Corp.,*
    45 B.R. 823 (S.D.N.Y. 1984)..................................................................................40

*Kaczmarek v. Int'l Bus. Machs. Corp.,*
    186 F.R.D. 307 (S.D.N.Y. 1999)......................................................................23, 25

*In re Kaiser Group Int'l, Inc.,*
    278 B.R. 58 (Bankr. D. Del. 2002).........................................................................11

*Kirkpatrick v. J.C. Bradford & Co.,*
    827 F.2d 718 (11th Cir.), *reh'g denied,* 832 F.2d 1267 (11th Cir. 1987),
    *cert. denied,* 485 U.S. 959 (1988)........................................................................24

*Kottler v. Deutsche Bank AG,*
    No. 08 Civ. 7773 (PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010).........27, 32

*In re Laser Arms Corp. Sec. Litig.,*
    794 F. Supp. 475 (S.D.N.Y. 1989) *aff'd,* 969 F.2d 15 (2d Cir. 1992)...............23, 24

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.,*
    993 F.2d 11 (2d Cir.), *cert. denied,* 510 U.S. 959 (1993).....................................34

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997)..................................................................................33

*Manning v. Scott-Hixon-Hopkins, Inc.,*
    605 So. 2d 233 (La. Ct. App. 1992).......................................................................26

*Marisol A. by Forbes v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997)...................................................................................33

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.,*
    170 F.R.D. 417 (E.D. La. 1997).............................................................................33

*In re McDonald's French Fries Litig.*,
  257 F.R.D. 669 (N.D. Ill. 2009)...............................................................................26

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008).....................................................................................27

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ...............................................................27, 30, 36

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)...................................................................................20

*In re Musicland Holding Corp.*,
  362 B.R. 644 (Bankr. S.D.N.Y. 2007).....................................................................15

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  214 F.R.D. 614 (W.D. Wash. 2003) .........................................................................31

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985), *remanded to,* 732 P.2d 1286 (Kan. 1987),
  *cert. denied,* 487 U.S. 1223 (1988)....................................................................22, 23

*Pilgrim v. Universal Health Card, LLC*,
  No. 5:09CV879, 2010 WL 1254849 (N.D. Ohio Mar. 25, 2010)............................26

*In re Poole Funeral Chapel, Inc.*,
  63 B.R. 527 (Bankr. N.D. Ala. 1986) ......................................................................40

*In re Prempro Prods. Liab. Litig.*,
  230 F.R.D. 555 (E.D. Ark. 2005).............................................................................22

*Reid v. White Motor Corp.*,
  886 F.2d 1462 (6th Cir. 1989), *cert. denied,* 494 U.S. 1080 (1990)..................11, 12

*In re Ret. Builders, Inc.*,
  96 B.R. 390 (Bankr. S.D. Fla. 1988)........................................................................17

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002), *reconsideration denied,*
  224 F.R.D. 346 (S.D.N.Y. 2004) .......................................................................23, 28

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir.), *cert. denied,* 516 U.S. 867 (1995)...................................33

*In re S. Cinemas, Inc.*,
  256 B.R. 520 (Bankr. M.D. Fla. 2000) ....................................................................39

*In re Sacred Heart Hosp. of Norristown,*
   177 B.R. 16 (Bankr. E.D. Pa. 1995) ...................................................................11, 12, 14, 17

*Schnall v. AT & T Wireless Services, Inc.,*
   225 P.3d 929 (Wash. 2010).................................................................................................27

*Sikes v. Teleline, Inc.,*
   281 F.3d 1350 (11th Cir.), *reh'g denied*, 35 F. App'x 859 (11th Cir.),
   *cert. denied*, 537 U.S. 884 (2002)....................................................................................27

*In re Standard Metals Corp.,*
   817 F.2d 625 (10th Cir.), *reh'g granted*, 839 F.3d 1383 (10th Cir. 1987),
   *cert. dismissed*, 488 U.S. 881 (1988) ...............................................................................16

*Strain v. Nutri/System, Inc.,*
   No. Civ. A. 90-2772, 1990 WL 209325 (E.D. Pa. Dec. 12, 1990).....................................28

*Sunbird Air Servs., Inc. v. Beech Aircraft Corp.,*
   Civ. A. No. 89-2181-V, 1992 WL 193661 (D. Kan. July 15, 1992) .....................................28

*In re Thomson McKinnon Sec., Inc.,*
   143 B.R. 612 (Bankr. S.D.N.Y. 1992) ..........................................................................39, 40

*In re Thomson McKinnon Sec., Inc.,*
   150 B.R. 98 (Bankr. S.D.N.Y. 1992) .............................................................................14, 15

*In re Thomson McKinnon Sec. Inc.,*
   133 B.R. 39 (Bankr. S.D.N.Y. 1991),
   *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992) ......................................................................11, 12, 13, 15

*In re Trebol Motors Distrib. Corp.,*
   220 B.R. 500 (B.A.P. 1st Cir. 1998) ...................................................................................17

*In re Tronox Inc.,*
   No. 09-10156 (ALG), 2010 WL 1849394 (Bankr. S.D.N.Y. Mar. 6, 2010) ........................15

*Truckway, Inc. v. Gen. Elec.,*
   No. Civ. A. 91-0122, 1992 WL 70575 (E.D. Pa. Mar. 30, 1992).................................28, 32

*In re United Cos. Fin. Corp.,*
   277 B.R. 596 (Bankr. D. Del. 2002) ..................................................................................11

*In re Vioxx Prods. Liab. Litig.,*
   No. MDL 1657, 2008 WL 4681368 (E.D. La. Oct. 21, 2008),
   *aff'd*, 300 F. App'x 261 (5th Cir. 2008)...............................................................................38

*Walsh v. Ford Motor Co.*,
    130 F.R.D. 260 (D.D.C.), *reconsideration denied*, 130 F.R.D. 514 (D.D.C. 1990),
    *appeal dismissed*, 945 F.2d 1188 (D.C. Cir. 1991).................................................................25

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997)........................................................................... passim

*In re Worldcom, Inc.*,
    343 B.R. 412 (Bankr. S.D.N.Y. 2006)....................................................................23, 24, 27

*In re Zenith Labs., Inc.*,
    104 B.R. 659 (D.N.J. 1989) ................................................................................................15

### STATUTES

11 U.S.C. § 105......................................................................................................................40, 41

28 U.S.C. § 157.............................................................................................................................6

28 U.S.C. § 502............................................................................................1, 6, 18, 38, 39, 41

28 U.S.C. § 503.............................................................................................................................1

28 U.S.C. § 1334...........................................................................................................................6

La. Rev. Stat. § 9:2800.52.........................................................................................................26

### OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, Ch. 20
    (Class Actions Under the Bankruptcy Laws) § 20:1 (4th ed. 2002).......................................16

Fed. R. Bankr. P. 1015...............................................................................................................41

Fed. R. Bankr. P. 3003...........................................................................................................1, 18

Fed. R. Bankr. P. 3007.................................................................................................................1

Fed. R. Bankr. P. 7001...............................................................................................................11

Fed. R. Bankr. P. 7023..............................................................................................11, 12, 13, 20

Fed. R. Bankr. P. 9007...............................................................................................................41

Fed. R. Bankr. P. 9014................................................................................5, 11, 12, 13, 14

Fed. R. Civ. P. 23.............................................................................................................. passim

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") respectfully

represent:

### Relief Requested

      1.     The Debtors file this objection (the "**Objection**"), pursuant to section 502

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (the "**Bar Date Order**") [ECF No. 4079], establishing November 30, 2009 as the bar

date (the "**Bar Date**").  Through this Objection, the Debtors seek entry of an order disallowing

and expunging Proofs of Claim Nos. 3128, 59632, 51094, 51092, 58984,[1] 58985, 58983, and

58987, (the "**On-Star Putative Class Claims**") filed respectively by Cheryl Nicholas, Tammy

Hammond, Robert Golish, John Irvine, David Matt, Jason J. Smith, and Bonita Stevens (the

"**On-Star Plaintiffs**"), individually and on behalf of a nationwide class action (the "**On-Star

Putative Class Action**").[2]  A copy of the On-Star Putative Class Claims are annexed hereto as

**Exhibits "A-H."**

---

[1] Claim Number 58986 was also filed by David Matt relating to the On-Star Class Action, however it was previously expunged in Debtors' Eleventh Omnibus Objection to Claims as duplicative of Claim Number 58984.

[2] It is unclear from the face of the On-Star Putative Class Claims whether such claims are asserted merely on behalf of the individual plaintiffs, respectively, or if they are also asserted on behalf of all those similarly situated. Regardless, for the reasons stated below, these claims should all be expunged.

1

2.     Attached to the class claim filed by Tammy Hammond is the Second

Master Amended Class Action Complaint that was filed in the Eastern District of Michigan (the

**"On-Star Putative Class Complaint"**) on behalf of all members of the On-Star Putative Class

Action (the **"On-Star Putative Sub Classes"**).  The On-Star Putative Class Action is a

consolidation of all putative class actions across the country relating to the alleged failure of

analog On-Star equipment in motor vehicles and the resulting termination of On-Star service,

which were transferred to the Eastern District of Michigan by the Judicial Panel on Multidistrict

Litigation (the **"JPML"**).  (*See* Aug. 22, 2007 Transfer Order (the **"Transfer Order"**), attached

hereto as Exhibit I and incorporated herein by reference.)  The On-Star Putative Class Action

alleges causes of action for violation of the Michigan Consumer Protection Act; violation of all

states' and the District of Columbia's consumer protection acts; breach of express warranty;

breach of implied warranty; violation of the Magnusun-Moss Warranty Act; breach of contract;

and unjust enrichment.  (*See* On-Star Putative Class Compl. at 51-65.)  The On-Star Putative

Class Action was not certified before June 1, 2009 (the **"Commencement Date"**), when each of

the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the Bankruptcy

Court for the Southern District of New York (the **"Bankruptcy Court"**), and the On-Star

Plaintiffs have not sought class certification from this Court.

3.     These claims purportedly arise from the Debtors' marketing and sale of

certain vehicles containing analog On-Star equipment (the **"Debtors' Products"**), an in-vehicle

telecommunication safety system that provides automatic crash notification to emergency

responders, stolen vehicle location, remote door unlock and remote diagnostics in the event of

problems with airbags, anti-lock brakes, or other systems.  (*See id.* at 1.)  The On-Star Plaintiffs

allege that Debtors became aware that On-Star equipment that was based on analog cellular

2

signals would stop working when the Federal Communications Commission ("FCC") ruled in August 2002 that cellular telephone computers would not need to continue carrying analog cellular signals after February 18, 2008. (*Id.* at 2.) On-Star capable vehicles are equipped with three types of wireless cellular equipment: (a) analog-only; (b) analog/digital-ready; and (c) dual-mode (analog/digital). (*Id.* at 8.) The On-Star Plaintiffs allege that, despite this knowledge, the Debtors continued to sell analog and analog/digital-ready On-Star equipment without notifying consumers at time of purchase or lease of vehicle what type of On-Star equipment was installed in their vehicles and intentionally concealed from consumers that analog and analog/digital-ready On-Star equipment would cease to function in January of 2008, either in their entirety or unless an upgrade was made. (*Id.* at 2, 9.) The On-Star Plaintiffs also allege that the Debtors mislead consumers into believing that certain vehicles with analog-only equipment could not be upgraded to digital, when those vehicles could be upgraded, and also prematurely terminated the On-Star analog service. (*Id.* at 23.) The On-Star Putative Class Action alleges that this conduct violated the Michigan Consumer Protection Act, as well as other consumer protection acts of all states and the District of Columbia.

4.    The On-Star Plaintiffs further allege that upon purchase or lease of vehicle, the Debtors expressly and implicitly warranted to subscribers that the On-Star equipment would provide safety and security and function for the life of their vehicles. (*Id.* at 15.) Specifically, the On-Star Plaintiffs allege that the car manufacturers, *i.e.* the Debtors, Volkswagen, Subaru, and Honda, each specifically offered new car warranties covering the vehicles and providing for repairs and upgrades when necessary. (*Id.* at 16-17.) The On-Star Putative Class Action alleges that requiring those customers who had On-Star equipment capable of being upgraded from analog signal to digital signal to pay for such upgrades to keep the On-

3

Star equipment working was a breach of these express and implied warranties and a violation of

the Magnusun-Moss Warranty Act. (*Id.*)

5.      Finally, the On-Star Plaintiffs allege that the Debtors failed to inform

subscribers who had exercised an option to prepay for a set amount of cellular phone service on

their analog-only or analog/digital-ready On-Star equipment that they would lose the value of

those minutes after December 31, 2007 when the analog service ceased. (*Id.* at 24.) The On-Star

Plaintiffs further allege that to the extent On-Star gave its subscribers disclosures relating to the

prepayment of cellular phone service, the disclosures were so inconspicuous, confusing and/or

misleading that the subscribers could not reasonably understand the disclosures' purpose or

meaning. (*Id.* at 25.) The On-Star Putative Class Action alleges that this conduct constituted

breach of contract and unjust enrichment.

6.      The On-Star Plaintiffs seek, through the On-Star Putative Class

Complaint, *inter alia*, (1) to certify the putative sub-classes (*id.* at 52, 61, 63-65), (2)

compensatory damages (*id.* at 52, 61, 63-65), and (3) exemplary damages (*id.* at 61).

7.      As discussed below, while federal courts have allowed the filing of class

proofs of claims in some bankruptcy cases, whether to permit a class claim to proceed lies within

the sound discretion of the court. In exercising their discretion, courts consider, among other

things, whether (i) the class claimant moved to extend the application of Rule 23 of the Federal

Rules of Civil Procedure ("**Rule 23**"), (ii) the benefits that generally support class certification in

civil litigation are realizable in the bankruptcy case, and (iii) the claim satisfies the strict

requirements of Rule 23.

8.      The On-Star Putative Class Claims should be disallowed in their entirety

because, *inter alia*, (i) the On-Star Plaintiffs have failed to satisfy the basic procedural

4

requirements of Bankruptcy Rules 9014, (ii) the putative class does not satisfy Rule 23, and (iii)

even if the putative class did satisfy Rule 23, the benefits that generally support class

certification in civil litigation are not realizable in these chapter 11 cases.  The On-Star Putative

Class Claims do not satisfy Rule 23 because of the numerous issues of fact that would

predominate over any common questions and because the On-Star Plaintiffs are neither typical of

the putative sub-classes nor adequate class representatives.  Further, the On-Star Plaintiffs'

claims for breaches of express warranties are barred by the plain terms of the Purchase

Agreement[3], as such liabilities are no longer the Debtors' obligations.

9.    Despite notice by publication of the Bar Date to the putative class

members encompassed by the On-Star Putative Class Claims, other than the claims filed by the

On-Star Plaintiffs and one other individual,[4] there have been no claims filed in this Court seeking

damages or requesting relief in connection with the Debtors' Products.  Moreover, because the

Debtors have provided such notice, it would be unfair and unnecessary to burden the Debtors'

estates with the additional cost and associated delay of providing these potential claimants with a

second opportunity to assert claims as class claimants.  Requiring additional notice to be given

by the Debtors would unnecessarily drain the Debtors' estate.  Further, litigation of On-Star

Putative Class Claims would further deplete the pool of assets available for distribution to the

Debtors' creditors.  As a result, the Court should (i) disallow the On-Star Putative Class Claims

in their entirety, or (ii) in the alternative, not allow the On-Star Putative Class Claims to proceed

as class claims.

---

[3] Capitalized terms used but not defined in this section shall have the definitions ascribed to them below.

[4] In addition to the On-Star Putative Class Claims, one other individual, Bruce C. Winne, filed an individual claim apparently based upon the same allegations as the On-Star Putative Class Claims. *See* Proof of Claim No. 19026, annexed hereto as **Exhibit "J."**

5

10.     Alternatively, if the On-Star Putative Class Claims are not disallowed in their entirety, they would have a detrimental impact on the Debtors' ability to make distributions to creditors. Accordingly, in the event that the Court finds it appropriate to permit part or all of the On-Star Putative Class Claims to proceed as class claims, the the On-Star Putative Class Claims that remain unliquidated, specifically, Proofs of Claim Nos. 3128, 51092, 58984, 58985, 58983, and 58987 (the "**Unliquidated On-Star Putative Class Claims**"), must be immediately estimated pursuant to section 502(c) of the Bankruptcy Code. Thus, the Debtors request that an expedited procedure promptly be established to quickly estimate and liquidate such claims.

## Jurisdiction

11.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relevant Factual Background

12.     On September 16, 2009, this Court entered the Bar Date Order which, among other things, established November 30, 2009 as the Bar Date and set forth specific procedures for filing proofs of claims. The Bar Date Order requires, among other things, that a proof of claim must "set forth with specificity" the legal and factual basis for the alleged claim and include supporting documentation or an explanation as to why such documentation is not available. (Bar Date Order at 2.)

13.     On October 5, 2009, Cheryl Nicholas filed a proof of claim attaching a Class Action Complaint filed in the Middle District of Louisiana (**"Nicholas Complaint"**). On November 27, 2009, Tammy Hammond filed a proof of claim attaching a Class Action complaint filed in the District of South Carolina, Columbia Division (**"Hammond Complaint"**) and the Putative Class Complaint. On November 25, 2009, Robert Golish filed a proof of claim

attaching a statement that his basis for his claim was the Putative Class Complaint. On

November 25, 2009, John Irvine filed a proof of claim attaching the Putative Class Complaint.

On November 27, David Matt filed three substantially identical proofs of claim, each attaching a

class action Complaint filed in the New York State Supreme Court, Onondaga County, Index

No. 2008-0955 (**"Matt Complaint"**).  On November 27, 2009, Jason J. Smith filed a proof of

claim attaching a class action Complaint filed in the New York State Supreme Court, Wayne

County, Index No. 64308 (**"Smith Complaint"**).  On November 27, 2009, Bonita Stevens filed a

proof of claim attaching the Matt Complaint.  The litigations set forth in the Nicholas Complaint,

Hammond Complaint, Matt Complaint, and the Smith Complaint have all been transferred to the

Eastern District of Michigan by the JPML, where Nicholas, Hammond, Golish, Irvine, Matt,

Smith, and Stevens now appear to be putative class action plaintiffs in the On-Star Putative Class

Action.  (*See* Transfer Order (Ex. I) at 1.)

        14.    The On-Star Putative Class Action, as it presently stands, is the result of

all actions related to the On-Star Class Complaint being transferred to the Eastern District of

Michigan by the JPML.[5]  (*See id.*)  The On-Star Putative Class Action was not certified before

the Commencement Date, and the On-Star Plaintiffs have not sought class certification from this

Court.

---

[5] Originally four actions filed in two separate districts were consolidated because "all actions share[d] factual
allegations relating to (1) the impact of the conversion of the cellular network from an analog/digital network to a
digital-only network on December 31, 2007, and (2) the availability of OnStar service in certain vehicles thereafter."
(*See id.*)  The Transfer Order also recognized that several other related actions had been filed in multiple districts
and determined that those actions would be treated as potential tag-along actions.  (*See id.*)  These other actions were
eventually transferred to the Eastern District of Michigan and consolidated into the On-Star Putative Class Action.

15.    The On-Star Putative Class Complaint sets forth various causes of action[6]

for violation of the Michigan Consumer Protection Act; violation of all states' and the District of

Columbia's consumer protection acts; breach of express warranty[7]; breach of implied warranty;

violation of the Magnusun-Moss Warranty Act; breach of contract; and unjust enrichment on

behalf of six categories of nationwide classes: (1) GM Class; (2) VW Class; (3) Honda Class; (4)

Subaru Class; (5) OnStar Class; and (6) Lost Prepaid Minute Class (Against OnStar Only). (*See*

On-Star Putative Class Compl. at 42-43, 51-65.) Specifically, the classes are defined as:

> **"GM Class":**  All individuals and entities in the United States
> who, as of December 31, 2007, either owned or leased a GM
> vehicle originally sold or leased on or after August 8, 2002 and
> equipped with analog-only or analog/digital-ready OnStar
> equipment which had not been upgraded or who paid for an
> upgrade on or before December 31, 2007.
>
> **"VW Class":**  All individuals and entities in the United States
> who, as of December 31, 2007, either owned or leased a VW
> vehicle originally sold or leased on or after August 8, 2002 and
> equipped with analog-only or analog/digital-ready OnStar
> equipment which had not been upgraded or who paid for an
> upgrade on or before December 31, 2007.
>
> **"Honda Class":**  All individuals and entities in the United States
> who, as of December 31, 2007, either owned or leased a Honda
> vehicle originally sold or leased on or after August 8, 2002 and
> equipped with analog-only or analog/digital-ready OnStar
> equipment which had not been upgraded or who paid for an
> upgrade on or before December 31, 2007.

---

[6] The On-Star Putative Class Complaint also asserts claims against Onstar Corporation.  Should the Court grant this
Objection, such action should have no effect on the ability of the On-Star Plaintiffs and the members of the On-Star
Putative Class Sub-Classes from continuing to assert their claims against OnStar Corporation.

[7] The On-Star Putative Class Action contains a cause of action for breach of express warranty.  (*See* On-Star
Putative Class Compl. at 61-63.)  The Debtors have no liability for such claims because they were expressly
assumed by the purchaser under the terms of the Master Sale and Purchase Agreement, dated as of June 1, 2009 (as
amended, the "**Purchase Agreement**").  Specifically, pursuant to the Purchase Agreement, the purchaser assumed
"all liabilities arising under express written warranties of Sellers that are specifically identified as warranties and
delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor
vehicles and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by
Sellers or Purchaser prior to or after the Closing." (*See* Purchase Agmt. § 2.3(vii).)

"**Subaru Class**": All individuals and entities in the United States who, as of December 31, 2007, either owned or leased a Subaru vehicle originally sold or leased on or after August 8, 2002 and equipped with analog-only or analog/digital-ready OnStar equipment which had not been upgraded or who paid for an upgrade on or before December 31, 2007.

"**OnStar Class**": All individuals and entities in the United States who were OnStar subscribers and, as of December 31, 2007, owned or leased a vehicle originally sold or leased by GM, VW, Honda or Subaru on or after August 8, 2002 and equipped with analog-only or analog/digital-ready OnStar equipment which had not been upgraded or who paid for an upgrade on or before December 31, 2007.

"**Lost Prepaid Minute Class (Against OnStar Only)**": All individuals and entities in the United States who, as of December 31, 2007, 1) were OnStar subscribers, 2) owned or leased a motor vehicle with analog-only or analog/digital-ready OnStar equipment, and 3) had unused Prepaid Minutes on account with OnStar.

(*Id.* at 42-43.)

16.     These claims against General Motors Corporation purportedly arise from the Debtors' marketing and sale of certain vehicles containing the Debtors' Products. The On-Star Plaintiffs allege that in 2002 Debtors became aware that On-Star equipment that was based on analog cellular signals would stop working when the FCC ruled in August 2002 that cellular telephone computers would not need to continue carrying analog cellular signals after February 18, 2008. (*Id.* at 2.) On-Star capable vehicles are equipped with three types of wireless cellular equipment: (a) analog-only; (b) analog/digital-ready; and (c) dual-mode (analog/digital). (*Id.* at 8.) The On-Star Plaintiffs allege that, despite this knowledge, the Debtors continued to sell analog and analog/digital-ready On-Star equipment without notifying consumers at time of purchase or lease of vehicle what type of On-Star equipment was installed in their vehicles and intentionally concealed from consumers that analog and analog/digital-ready On-Star equipment

9

would cease to function in January of 2008, either in their entirety or unless an upgrade was

made. (*See id.* at 2, 9.) The On-Star Plaintiffs also allege that the Debtors mislead the Class

Members into believing that certain vehicles with analog-only equipment could not be upgraded

to digital, when those vehicles could be upgraded, and also prematurely terminated the On-Star

analog service. (*Id.* at 23.) The On-Star Putative Class Action alleges that this conduct violated

the Michigan Consumer Protection Act and all states and the District of Columbia's consumer

protection acts.

17.    The On-Star Plaintiffs further allege that upon purchase or lease of

vehicle, the Debtors expressly and implicitly warranted to subscribers that the On-Star

equipment would provide safety and security and function for the life of their vehicles. (*Id.* at

15.) Additionally, the On-Star Plaintiffs allege that the car manufacturers, *i.e.* the Debtors,

Volkswagen, Subaru, and Honda, each specifically offered new car warranties covering the

vehicles and agreeing to provide repairs and upgrades when necessary. (*Id.* at 16-17.) The On-

Star Putative Class Action alleges that the Debtors breached express and implied warranties and

the Magnusun-Moss Warranty Act by requiring those customers who had On-Star equipment

capable of being upgraded from analog signal to digital signal to pay for such upgrades to keep

the On-Star equipment working. (*Id.*)

18.    Finally, the On-Star Plaintiffs allege that the Debtors failed to inform

subscribers who had exercised an option to prepay for a set amount of cellular phone service on

their analog-only or analog/digital-ready On-Star equipment that they would lose the value of

those minutes after December 31, 2007 when the analog service ceased. (*Id.* at 24.) The On-Star

Plaintiffs further allege that to the extent On-Star gave its subscribers such disclosures regarding

prepayment of cellular phone service, the disclosures were so inconspicuous, confusing and/or

misleading that the subscribers could not reasonably understand the disclosures' purpose or meaning. (*Id.* at 25.) The On-Star Putative Class Action alleges that this conduct constituted breach of contract and unjust enrichment.

19.    The On-Star Plaintiffs seek, through the Putative Class Complaint, *inter alia*, (1) to certify the putative sub-classes (*id.* at 52, 61, 63-65), (2) compensatory damages (*id.* at 52, 61, 63-65), and (3) exemplary damages (*id.* at 61).

## The Relief Requested by the Debtors Should Be Approved by the Court

## I.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is Discretionary and Should Be Denied in this Case

20.    There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (noting that class action device may be utilized in appropriate contexts, but should be used sparingly). Application of Bankruptcy Rule 7023 to class proofs of claim[8] lies within the ***sound discretion*** of the court.[9] In determining whether to exercise

---

[8] Part VII of the Bankruptcy Rules, which includes Bankruptcy Rule 7023, only applies to adversary proceedings. *See* Fed. R. Bankr. P. 7001. Bankruptcy Rule 9014, however, adopts certain of the rules from Part VII for application in contested matters. Bankruptcy Rule 7023 is not among them. *See* Fed. R. Bankr. P. 9014. Thus, plaintiffs seeking the application of Bankruptcy Rule 7023 (and by implication, Rule 23) to a class proof of claim are required to *move* under Bankruptcy Rule 9014 for a court to apply the rules in Part VII. Fed. R. Bankr. P. 9014; *accord In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating that "[f]or a Class Claim to proceed . . . the bankruptcy court must direct Rule 23 to apply"). *See, e.g., Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990); *In re Charter Co.*, 876 F.2d 866, 876 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990) (holding that proof of claim filed on behalf of class of claimants is valid, but that "does not mean that the appellants may proceed, without more, to represent a class in their bankruptcy action. Under the bankruptcy posture of this case, Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

[9] *See, e.g., In re Bally Total Fitness*, 402 B.R. at 620 ("[C]ourts may exercise their discretion to extend Rule 23 to allow the filing of a class proof of claim."); *In re Thomson McKinnon Sec. Inc.*, 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (Bankruptcy Rule 7023 and Rule 23 "give the court substantial discretion to consider the benefits and costs of class litigation") (citing *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988)), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992); *accord In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("Whether to certify a class claim is within the discretion of the bankruptcy court."); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D.

discretion and permit a class proof of claim, courts primarily look at (i) whether the class

claimant moved to extend the application of Rule 23 to its proof of claim; (ii) whether the

benefits derived from the use of the class claim device are consistent with the goals of

bankruptcy; and (iii) whether the claims which the proponent seeks to certify fulfill the

requirements of Rule 23. *See In re Bally Total Fitness*, 402 B.R. at 620; *In re Woodward*, 205

B.R. at 369; *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("In

exercising that discretion, the bankruptcy court first decides under Rule 9014 whether or not to

apply Rule 23, Fed. R. Civ. P., to a 'contested matter,' *i.e.*, the purported class claim; if and only

if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23

are satisfied.").

>   21.    When evaluating these requirements, courts have considered a variety of

factors, including, *inter alia*:

- *   *whether claimants are in "compliance with the Bankruptcy procedures regulating the filing of class proofs of claim in a bankruptcy case,"* see, e.g., *In re Thomson*, 133 B.R. at 41 (disallowing class proof of claim where named plaintiff failed to file Rule 9014 motion requesting that Rule 7023 apply);

- *   *whether the debtor intends to liquidate*, see *In re Thomson*, 133 B.R. at 41 (noting that context of liquidating chapter 11 plan supports rejection of class proofs of claim);

- *   *whether or not a purported class was previously certified*, see, e.g., *In re Bally Total Fitness*, 402 B.R. at 620 (refusing to allow class proof of claim where class was not certified pre-petition); *In re Sacred Heart Hosp.*, 177 B.R. at 23 (classes certified pre-petition are "best candidates" for class proof of claim);

---

Del. 2002) (same); *Reid*, 886 F.2d at 1469-70 (stating that "Rule 9014 authorizes bankruptcy judges, within their discretion, to invoke Rule 7023, and thereby Fed. R. Civ. P. 23, the class action rule, to 'any stage' in contested matters, including, class proofs of claim."); *In re Charter Co.*, 876 F.2d at 876 ("[u]nder the bankruptcy posture of this case Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

- ***whether the class claim device will result in "increased efficiency, compensation to injured parties, and deterrence of future wrongdoing by the debtor,"*** *see In re Woodward*, 205 B.R. at 376 (emphasis added and internal citations omitted); *accord In re Thomson*, 133 B.R. at 40 ("Manifestly, the bankruptcy court's control of the debtor's affairs might make class certification unnecessary.");

- ***whether the entertainment of class claims would subject the administration of the bankruptcy case to undue delay***, *see, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 ("[A] court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate."); and

- ***whether or not adequate notice of the bar date was afforded to potential class members***, *see In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) (refusing to certify class where adequate notice of bar date was afforded to potential class members, and thus to certify class would be "unwarranted, unfair, and possibly violate the due process rights of other creditors") (internal quotations omitted).

"If application of Bankruptcy Rule 7023 is rejected by the bankruptcy court in an exercise of discretion . . . the result will be that class claims will be denied and expunged." *In re Thomson*, 133 B.R. at 40-41. As set forth below, the Court should exercise its discretion to reject the application of Bankruptcy Rule 7023 and to disallow the On-Star Putative Class Claims.[10]

### A.    The On-Star Plaintiffs Failed to Comply with Bankruptcy Rule 9014

22.     A plaintiff who seeks to bring a class proof of claim must comply with the applicable procedural requirements. *See, e.g., In re Am. Reserve Corp.*, 840 F.2d at 494 (noting the applicability of Bankruptcy Rule 9014 and its procedural requirements); *see In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7 (same). These procedural requirements are not complicated. Because a claim "cannot be allowed as a class claim until the bankruptcy court directs that Rule

---

[10] In the event this Court determines to apply Rule 23 to the On-Star Putative Class Claims, the Debtors reserve any and all rights to seek class-certification discovery to test the On-Star Plaintiffs' sweeping, unsubstantiated representations about the nature of the class members' allegations.

23 apply," the putative class representative must file a motion with the bankruptcy court

requesting the application of Rule 23. *In re Woodward*, 205 B.R. at 368, 370. ("Rule 23 does

not say who must make a timely motion, but the duty ordinarily falls on the proponent of the

class action.").

        23.     The requirement that a class claimant timely move under Bankruptcy Rule

9014 to incorporate Rule 23 is intended to protect a debtors' estate from undue delay of the

debtors' plan process. *See In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr.

S.D.N.Y. 1992). In *In re Woodward*, another case in which there was no pre-bankruptcy class

certification, the court stated that the class claim should be disallowed if the putative class

representative did not expeditiously move in the bankruptcy case for certification of its class

claim, as a lengthy certification battle could delay the administration and distribution of the

bankruptcy estate. *See In re Woodward*, 205 B.R. at 370; *see also In re Ephedra Prods. Liab.

Litig.*, 329 B.R. at 5 (disallowing class products liability claim because "it is simply too late in

the administration of this Chapter 11 case to ask the Court to apply Rule 23 to class proofs of

claim."). As of the date hereof, more than a year and a half after the Commencement Date and

more than a year after the Bar Date, the On-Star Plaintiffs have not sought permission of the

Court to file a class proof of claim or moved for certification of the class. The Debtors have

already filed their proposed plan, the disclosure statement has been approved, and a confirmation

hearing is planned to occur shortly. As a result, if allowed to proceed, the On-Star Putative Class

Claims will unduly delay the administration of the Debtors' estates and their ability to

consummate a plan of liquidation ("**Plan**"), because the adjudication of the claim and its

attendant class-certification issues could take months. *See In re Sacred Heart Hosp. of

Norristown*, 177 B.R. at 24 (disallowing class claim where allowance would cause "very

14

substantial and apparently unwarranted disruption to the administration of the Debtor's

bankruptcy case, in which there is presently a plan before us for imminent confirmation"); *In re*

*Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 (disallowing class claim where liquidating plan was

already submitted and "[a]pplying Rule 23 to class claims now would initiate protracted

litigation that might delay distribution of the estate for years"); *In re Musicland Holding Corp.*,

362 B.R. 644, 656 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) (refusing to allow class claim where it

would "seriously delay the administration of the case" because debtors had already filed

confirmation motion and court had approved disclosure statement); *see also In re Tronox Inc.*,

No. 09-10156 (ALG), 2010 WL 1849394, at *3 (Bankr. S.D.N.Y. Mar. 6, 2010) (Gropper, J.)

(refusing to enlarge time to file class proof of claim where such claim could "likely result in

substantial delay and expense and compromise the parties' efforts to formulate a plan on the

present timeline" when proposed plan had been filed and disclosure statement was to be filed

within two months).  Accordingly, this Court should enforce these procedural requirements and

disallow the On-Star Putative Class Claims.  *See, e.g., In re Woodward*, 205 B.R. at 369-71; *In*

*re Thomson*, 150 B.R. at 100-01; *In re Thomson*, 133 B.R. at 41; *In re Zenith Labs., Inc.*, 104

B.R. 659, 664 (D.N.J. 1989); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7.

     **B.**     **Allowing the On-Star Putative Class Claims to Proceed
           as a Class Action Will Not Be Effective or Efficient**

          24.     For a class action to proceed, "the benefits that generally support class

certification in civil litigation must be realizable in the bankruptcy case." *In re Woodward*, 205

B.R. at 369 (citing *In re Mortg. & Realty Trust*, 125 B.R. 575, 580 (Bankr. C.D. Cal. 1991)).  In

this case, neither the purported class nor the Court would benefit from recognizing a class proof

of claim and allowing a class action to proceed.

25.     The On-Star Putative Class Claims do not provide for the most effective or

efficient means of determining the rights of the members of the On-Star Putative Sub-Classes.

First, a class proof of claim is not appropriate if individual issues of fact would predominate over

any questions common to the members of the purported class.  For that reason, the court in *In re*

*Woodward*, in considering putative class claims for false advertising and misrepresentation,

found that a class action is "generally not appropriate to resolve claims based upon common law

fraud."  *In re Woodward*, 205 B.R. at 371.

26.     Second, in general, the Bankruptcy Code and Bankruptcy Rules can

provide the same benefits and serve the same purposes as class action procedures in normal civil

litigation.  *See id.* at 376 ("a bankruptcy proceeding offers the same procedural advantages as the

class action because it concentrates all the disputes in one forum"); 6 Herbert Newberg & Alba

Conte, *Newberg on Class Actions*, Ch. 20 (Class Actions Under the Bankruptcy Laws) § 20:1 at

265 (4th ed. 2002) (commenting that "bankruptcy proceedings are already capable of handling

group claims, which operate essentially as statutory class actions."); *see also In re Standard*

*Metals Corp.*, 817 F.2d 625, 632 (10th Cir.), *reh'g granted*, 839 F.3d 1383 (10th Cir. 1987), *cert.*

*dismissed*, 488 U.S. 881 (1988).  Although members of the On-Star Putative Class Action can no

longer file their claims because the Bar Date has passed, they had ample notice of the Bar Date

and opportunity to take advantage of these bankruptcy procedures.

27.     Third, the bankruptcy claims process is, in some respects, *superior* to class

action procedures.  As the court observed in *In re Woodward*:

>               [W]hile the class action ordinarily provides compensation
>               that cannot otherwise be achieved by aggregating small
>               claims, the bankruptcy creditor can, with a minimum of
>               effort, file a proof of claim and participate in distributions.
>               In addition, there may be little economic justification to

> object to a modest claim, even where grounds exist.
> Hence, a creditor holding such a claim may not have to do
> anything more to prove his case or vindicate his rights.

205 B.R. at 376 (citations omitted).  Here, notwithstanding the chance to do so, none of the

members of the On-Star Putative Sub-Classes, save for the named plaintiffs (and one other

individual), filed a claim against the Debtors.

      28.    The facts of the instant case are similar to the facts of *In re Woodward*,

where the Honorable Judge Bernstein exercised his discretion to deny the class claim, finding

that "the class claim will not deter an insolvent, non-operating debtor's management or

shareholders, or induce them to police future conduct [where] . . . the debtor has . . . a liquidating

plan that wipes out equity.  The managers have moved on to other jobs – the debtor has closed its

doors – and the prosecution of the class action will [] not affect how they act in the future."  205

B.R. at 376.  Here, the Debtors have discontinued the sale of the Debtors' Products and have

subsequently sold substantially all their assets.  The Debtors are no longer operating a business.

    **C.**    **The On-Star Putative Class Claims Were Not Certified Prior to the Commencement Date**

      29.    A number of courts have held that class proofs of claim are generally

inappropriate where a class representative was not certified prepetition in a non-bankruptcy

forum.  *See, e.g.*, *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998);

*In re Sacred Heart Hosp.*, 177 B.R. at 23; *In re Ret. Builders, Inc.*, 96 B.R. 390, 391 (Bankr.

S.D. Fla. 1988); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5.  In *Sacred Heart Hospital*,

Judge Scholl held that use of the class proof of claim device in bankruptcy cases may be

appropriate in certain contexts, but "such contexts should be chosen most sparingly."  *In re

Sacred Heart Hosp.*, 177 B.R. at 22.  Specifically, the *Sacred Heart Hospital* court noted that

17

cases where (i) a class has been certified prepetition by a nonbankruptcy court, or (ii) a class

action has been filed and allowed to proceed as a class action in a nonbankruptcy forum for a

considerable time prepetition, may present appropriate contexts for recognizing a class proof of

claim. *See id.*

        30.     The purported class in the On-Star Putative Class Action was not certified

at the time of the Debtors' chapter 11 filing, and it remains uncertified today. ***The Debtors have***

***been unable to find a single bankruptcy case within the Second Circuit in which a pre-***

***certification class claim was allowed.***

        **D.**      **Adequate Notice of the Bankruptcy Case and the**
                **Bar Date Was Provided to the On-Star Putative Sub-Classes**

        31.     One of the principal goals of the Bankruptcy Code is to ensure that

creditors of equal rank receive equal treatment in the distribution of a debtor's assets. The

Bankruptcy Code and Bankruptcy Rules, therefore, require creditors to file proofs of claim

before a bar date. *See* 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(3). Regardless of how

worthy their claims may be, claimants who fail to file before an applicable bar date "shall not be

treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed.

R. Bankr. P. 3003(c)(2). These same procedural hurdles must be met by all creditors.

        32.     In determining whether a class proof of claim should be allowed, courts

consider whether adequate notice of the bar date was afforded to potential class members. *See In*

*re Jamesway Corp.*, 1997 WL 327105, at *8. As that court stated:

> The proper inquiry is whether [the debtor] acted reasonably
> in selecting means likely to inform persons affected by the
> Bar Date and these chapter 11 proceedings, not whether
> each claimant actually received notice . . . [a]s to those
> plaintiffs who might not have received actual notice of the
> Bar Date, we find that by complying with the terms of the

> Bar Date Order, mailing a Claim Package to every known
> creditor and publishing notice of the Bar Date, [the
> Debtor's] actions satisfy due process.

*Id.* (internal citations omitted).

33.    In this case, the members of the On-Star Putative Sub-Classes received

proper notice of the Debtors' chapter 11 cases and the Bar Date in accordance with the

provisions of the Bar Date Order.  At great expense to their estates, the Debtors published notice

of the Bar Date nationwide in *The Wall Street Journal* (Global Edition – North America, Europe,

and Asia), *The New York Times* (National), *USA Today* (Monday through Thursday, National),

*Detroit Free Press, Detroit News, LeJournal de Montreal* (French), *Montreal Gazette* (English),

*The Globe and Mail*, (Canada), and *The National Post*.  (*See* Bar Date Order at 7.)  Providing

individual notice to all owners of the Debtors' Products would be impossible or, at minimum,

prohibitively expensive, as customers regularly resell their vehicles and the Debtors would have

no way to know the identities of the current owners of their products.  Providing notice of the

Debtors' bankruptcy cases and the Bar Date by publication, however, constituted a viable

alternative to the impracticability, or perhaps even impossibility, of identifying and providing

individual notice to each of the consumer purchasers of the Debtors' Products.  Additionally, in

this case, in particular, the Debtors would be hard-pressed to find a handful of Americans who

were not aware of the chapter 11 filing of General Motors Corporation.

34.    No member of the On-Star Putative Sub-Classes (save for the On-Star

Plaintiffs and Mr. Winne) has filed a claim, and members of the Putative Classes who failed to

file proofs of claim could not be said to have relied on the filing of the On-Star Putative Class

Claims because the On-Star Putative Sub-Classes were not certified as of the Commencement

Date.  *See In re Jamesway Corp.*, 1997 WL 327105, at *10 (denying motion for class

certification of class claim where "[n]o class was pre-certified such that purported class members
who did not chose to file a proof of claim should or could have had any reasonable expectation
that they need not comply with the Bar Date Order").  Because the Debtors have provided notice
by publication to the members of the On-Star Putative Sub-Classes encompassed by the On-Star
Putative Class Claims, it would be unfair and unnecessary to burden the Debtors' estates with the
additional cost and associated delay of providing these potential claimants with a second notice.
Further, the only type of notice the Debtors could reasonably provide these persons today would
be another publication notice, effectively duplicating the notice they have already been provided
and extending the Bar Date for a particular sub-group of general unsecured creditors who are not
entitled to special treatment under the Bankruptcy Code.  Since only a handful of the alleged
large number of members of the On-Star Putative Sub-Classes filed individual claims, it is highly
unlikely that many, if any at all, would file claims if given a second opportunity, but the estate
would suffer the unnecessary costs of notice.

## II.    The On-Star Putative Class Claims Cannot Satisfy the Requirements of Rule 23

35.    Even if this Court were to permit the On-Star Plaintiffs to file class claims,
the On-Star Putative Class Claims would not satisfy Rule 23.  To proceed as a class claim, the
On-Star Putative Class Claims must meet all four requirements of subsection (a) of Rule 23, as
made applicable to bankruptcy cases by Bankruptcy Rule 7023.  *See Moore v. PaineWebber,
Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *In re Woodward*, 205 B.R. at 371.  Rule 23(a)
provides:

> (a)    Prerequisites to Class Action.  One or more members of a class may
> sue or be sued as representative parties on behalf of all only if:
>
> (1)    the class is so numerous that joinder of all
> members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

36.    In addition, to proceed as a class claim, the On-Star Putative Class Claims must satisfy subsection (b)(3) of Rule 23, as the On-Star Putative Class Claims seek monetary damages. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993).  For purposes of this objection, Rule 23(b)(3) provides in relevant part:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

37.    As set forth below, numerous individual issues of fact would predominate over any common questions in the On-Star Putative Class Claims because the On-Star Plaintiffs are neither typical of the members of the On-Star Putative Sub-Classes nor adequate class representatives.  Moreover, class treatment is neither efficient nor superior in these circumstances.  As discussed below, the On-Star Plaintiffs' claims raise a host of individual issues of fact regarding each putative class member's right to recovery.  These individual issues would require mini trials as to each class member's right to relief, a result that courts have repeatedly found requires denial of class certification.

21

A.    **Numerous Individual Issues Predominate over Any Common Questions**

38.    The On-Star Plaintiffs fail to satisfy Rule 23(b)(3) because individual

issues predominate over common questions and a class action is not a superior method of

adjudicating the On-Star Putative Class Claims.

    1.    **Variations in the Law of 51 Jurisdictions Defeat Predominance**

39.    Federal courts have made it clear time and again that before a court can

analyze whether the factors under Federal Rule 23 are satisfied, the court must determine which

state's or states' substantive law governs the underlying claims. *See, e.g., In re Prempro Prods.*

*Liab. Litig.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005) ("Not only must the choice-of-law issue be

addressed at the class certification stage – it must be tackled at the front end since it pervades

every element of [Federal Rule] 23."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J.

1998). This is logical because it would be impossible to determine whether there are questions

of law common to the class, for example, without first determining the substance of the

applicable law. Both federal case law and the Constitution mandate that this Court perform a

choice-of-law analysis before determining whether this case is properly certified as a class

action. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985), *remanded to,* 732 P.2d

1286 (Kan. 1987), *cert. denied*, 487 U.S. 1223 (1988).

40.    This requirement begets the question of which state's or states' law should

apply to the class claims when a class is comprised of individuals living, and allegedly injured by

the defendant's conduct, in every state in the nation. Federal courts in this jurisdiction and

across the country have uniformly answered this question by holding that where a purported

class action would involve class members from more than one state "the court will apply the law

of each of the states from which plaintiffs hail." *In re Ford Motor Co. Ignition Switch Prods.*

22

*Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61,

70-71 (S.D.N.Y. 2002), *reconsideration denied*, 224 F.R.D. 346 (S.D.N.Y. 2004); *Kaczmarek v.*

*Int'l Bus. Machs. Corp.,* 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999); *Feinstein v. Firestone Tire &*

*Rubber Co.*, 535 F. Supp. 595, 605 (S.D.N.Y. 1982).  To hold otherwise and apply only the

forum state's substantive law to the class certification analysis would violate Constitutional

principles of Due Process and federalism.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13,

335-36 (1981), *reh'g denied*, 450 U.S. 971 (1981).[11]

        41.     Compliance with the Constitutional requirement of applying every state's

law to the claims in a nationwide class action is fatal to class certification when the applicable

laws differ from state to state.  Courts in this jurisdiction and throughout the country have

repeatedly held that "the need of a court to apply diverse laws and varied burdens of proof to the

individual class members' claims defeats the predominance requirement of Federal Rule

23(b)(3)."  *In re Worldcom, Inc.*, 343 B.R. 412, 427 (Bankr. S.D.N.Y. 2006); *In re Laser Arms*

*Corp. Sec. Litig.*, 794 F. Supp. 475, 495 (S.D.N.Y. 1989) *aff'd*, 969 F.2d 15 (2d Cir. 1992) ("In

the absence of a single state law governing each entire common law claim, common questions of

law would not predominate over individual questions."); *In re Bridgestone/Firestone, Inc.*, 288

F.3d 1012, 1015 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) ("No class action is proper

unless all litigants are governed by the same legal rules."); *Henry Schein, Inc. v. Stromboe*, 102

---

[11] The Supreme Court expressly admonished a state court for applying its state's substantive law to a nationwide class action filed within its borders, noting that the state "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Phillips Petroleum Co.*, 472 U.S. at 821.  The *Phillips Petroleum* Court concluded that the forum state's "lack of 'interest' in claims unrelated to that State and the substantive conflict with" other jurisdictions rendered the application of the forum state's law to every claim in the nationwide class action "sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

S.W.3d 675, 698-99 (Tex. 2002) (citing dozens of federal and state cases that have "rejected

class certification when multiple states' laws must be applied.").

      42.     The On-Star Plaintiffs have the burden of establishing that variations in

the laws of the jurisdictions do not "swamp any common issues and defeat predominance."

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). Here, the On-Star Plaintiffs

cannot meet this burden as courts have repeatedly determined that variations in the causes of

action at issue in this case – *inter alia*, fraudulent misrepresentation/concealment, breach of

express and implied warranty or the Magnuson-Moss Warranty Act, and violations of various

state consumer protection statutes—have made certification of nationwide class actions

impermissible.

      43.     **Fraudulent Concealment/Misrepresentation:** Courts have denied

certification of a nationwide class based on fraud because the necessity to apply the laws of

many states defeats the predominance requirement. *See, e.g., In re Worldcom, Inc.*, 343 B.R. at

427; *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. at 495; *In re Woodward,* 205 B.R. at 371

(finding that a class action is "generally not appropriate to resolve claims based upon common

law fraud"); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir.), *reh'g denied*, 832

F.2d 1267 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988); *In re Ford Motor Co. Vehicle

Paint Litig.*, 182 F.R.D. 214, 222-24 (E.D. La. 1998) ("As far as the Court has been able to

determine, state law variations [in fraud claims] exist necessitating multiple jury charges on each

of the following issues: the burden of proof, the duty to disclose, materiality, reliance, and the

measure of damages.").

      44.     **Breach of Warranty:** Courts in this jurisdiction and others have denied

class certification upon finding that common questions of law do not predominate where the

24

plaintiff alleges breach of warranty, whether those warranty claims involve common law, state

statutes, express or implied warranties, or the federal Magnuson-Moss Warranty Act:

> the states have diverse bodies of law on warranty . . . . The
> state laws on these claims present different procedural and
> substantive elements, including differing requirements of
> privity, demand, scienter and reliance.  In addition,
> bringing the case under the Magnuson-Moss Act does not
> make uniform the plaintiffs' warranty claims because
> liability under that Act depends on state law which differs
> on issues of express and implied warranties. . . .
> Defendant's counsel presents a lengthy analysis of the
> diverse laws of the various states and has shown
> sufficiently that many of the jurisdictions have different
> standards and elements of proof for the claims of breach of
> express and implied warranty . . . .

*Kaczmarek*, 186 F.R.D. at 313; *see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,

194 F.R.D. 484, 489-90 (D.N.J. 2000), *reconsideration denied*, No. Civ. A. 96-1814 (JBS), 2001

WL 1869820 (D.N.J. Feb. 8, 2001) (warranty "claims [arising from a recall] vary significantly

from state to state"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369

(E.D. La.), *reconsideration denied*, No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17,

1997) ("with respect to contract and warranty claims, the various states have different" laws);

*Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C.), *reconsideration denied*, 130 F.R.D.

514 (D.D.C. 1990), *appeal dismissed*, 945 F.2d 1188 (D.C. Cir. 1991) ("numerous variations

exist among states' laws concerning the scope and application of implied warranty claims").  By

way of example and not by limitation, under Louisiana law, warranty claims based on an

allegation of a defect are founded in the doctrine of redhibition, a unique civil action available

under Louisiana law against the seller or manufacturer of an allegedly defective product, rather

than based on a provision of the UCC, as is common in other states.[12] *See Manning v. Scott-Hixon-Hopkins, Inc.*, 605 So. 2d 233, 235 (La. Ct. App. 1992); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 797 (E.D. La. 1998). Further, to the extent there is a claim for damage caused by a product, the Louisiana Products Liability Act ("LPLA") is the exclusive remedy. *See* La. Rev. Stat. § 9:2800.52; *see also In re Ford Speed Control Deactivation Switch Prods. Liab. Litig.*, No. MDL 1718, 2007 U.S. Dist. LEXIS 62483, at *22 (E.D. Mich. Aug. 24, 2007) (dismissing Louisiana plaintiffs' warranty claims that were not asserted under the LPLA)

      45.    **Consumer Fraud:** Courts have also repeatedly denied certification to nationwide classes based on multiple states' consumer fraud statutes because "state consumer-protection laws vary considerably." *In re Bridgestone/Firestone*, 288 F.3d at 1018 (recognizing that "state consumer-protection laws vary considerably" and holding that "because [the plaintiffs' consumer fraud] claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); *see In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 671, 674 (N.D. Ill. 2009) (denying class certification of claims of "violations of various states' consumer protection statutes" because "[n]umerous courts, including the Seventh Circuit, have dealt with this question. Overwhelmingly, those courts have found material conflicts among the fifty states' laws on the claims plaintiffs bring in this case and have denied class certification, at least in part, on that basis."); *Pilgrim v. Universal Health Card, LLC,* No. 5:09CV879, 2010 WL 1254849, at *4 (N.D. Ohio Mar. 25, 2010) ("[T]he Court agrees with the extensive analysis put forth by [defendant] demonstrating that consumer laws and the law on unjust enrichment vary significantly from state to state. Courts have likewise accepted this

---

[12] Named plaintiff Nicholas is a Louisiana resident who alleges she purchased her GM vehicle at Graves Chevrolet in Baker, Louisiana. (*See* Putative Class Compl. at 32.)

argument."); *cf. Schnall v. AT & T Wireless Services, Inc.*, 225 P.3d 929, 935 (Wash. 2010) ("Based primarily on the burden of applying multiple states' laws, an overwhelming number of federal courts have denied certification of nationwide state-law class actions.") (internal quotation marks omitted).

46.    Because the Court must apply the substantive laws of all jurisdictions from which the members of the On-Star Putative Sub-Classes hail, and such application results in conflicting laws, the On-Star Putative Class Claims cannot satisfy Rule 23(b)(3)'s predominance requirement.

**2.    Necessity of Individual Fact Determinations Destroys Predominance**

47.    Courts also deny certification where "individualized issues of fact abound." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 349 (S.D.N.Y. 2002); *see also In re Worldcom, Inc.*, 343 B.R. at 427, n.26 ("the need to evaluate factual differences along with divergent legal issues defeats the predominance requirement under Rule 23(b)(3)") (internal quotes and citations omitted).  Courts, including the Second Circuit, have specifically held that the predominance requirement cannot be satisfied for fraud or misrepresentation based claims because several elements of such claims, including reliance and causation, are not susceptible to generalized proof and require an individualized inquiry. *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223-30 (2d Cir. 2008); *Kottler v. Deutsche Bank AG,* No. 08 Civ. 7773 (PAC), 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010) (finding predominance not satisfied because varied misrepresentations preclude class certification in fraud claim); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1362-66 (11th Cir.) (certification of fraud class action vacated because individual issues of reliance and causation predominated), *reh'g denied*, 35 F. App'x 859 (11th Cir.), *cert. denied*, 537 U.S. 884 (2002); *Andrews v. Am. Tel. &*

27

*Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) (same);

*Castano*, 84 F.3d at 737, 745 (denying certification in action where claims included "violation of

state consumer protection statutes" and "disgorge[ment]" of profits, holding that class action

"cannot be certified when individual reliance will be an issue"); *In re Rezulin Prods. Liab. Litig.*,

210 F.R.D. at 68-69 (individual issues would predominate on claim for restitution of purchase

price arising from alleged undisclosed product dangers); *Chin*, 182 F.R.D. at 455-57 (denying

class certification in case asserting latent product defect in light of many individual issues of fact,

including ascertainable injury, causation, reliance and privity); *In re Ford Motor Co. Bronco II

Prod. Liab. Litig.*, 177 F.R.D. at 372-75 (same); *In re Ford Motor Co. Ignition Switch Prods.

Liab. Litig.*, 174 F.R.D. at 342-44 (same); *Truckway, Inc. v. Gen. Elec.*, No. Civ. A. 91-0122,

1992 WL 70575, at *5, *7 (E.D. Pa. Mar. 30, 1992) (individual issues predominated in state

consumer fraud action "[b]ecause not all members of the class would have relied on the alleged

fraudulent material omissions and misrepresentation . . . and because a determination of whether

each member of the class was defrauded . . . would require each class member to individually

prove the issue of reliance and fraud on a case by case basis"); *see also Hurd v. Monsanto Co.*,

164 F.R.D. 234, 240 n.3 (S.D. Ind. 1995) ("The necessity of proving reliance by each class

member upon the alleged fraudulent misrepresentations causes individual issues to

predominate."); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, Civ. A. No. 89-2181-V, 1992

WL 193661, at *5 (D. Kan. July 15, 1992) ("individual issues of causation and reliance as to

each class member would predominate over the common issues of liability"); *Strain v.

Nutri/System, Inc.*, No. Civ. A. 90-2772, 1990 WL 209325, at *6 (E.D. Pa. Dec. 12, 1990) (class

certification denied where "each class member [would have] to narrate a story which includes

individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of those advertisements").

48.     This concern regarding individualized fact inquiries is present here, where the On-Star Putative Sub-Classes consist of, among other things, the owner or lessee of every General Motors, Volkswagen, Honda, Subaru vehicle in the United States as of August 8, 2002, which came equipped with an analog-only or analog/digital-ready On-Star system for a more than five year period.  (On-Star Putative Class Compl. at 42.)  Individualized factual inquiries would need to be performed to address the issues of:  (i) whether each individual's particular On-Star equipment is covered by warranty; (ii) whether each individual's vehicle was properly presented for repair pursuant to the warranty and whether the dealer either failed or refused to make the needed repairs; (iii) whether the class member provided proper notice of the alleged breach of warranty to MLC; (iv) whether there is privity between MLC and the class member; (v) whether the class member can adequately allege that On-Star can be liable for the actions of any of the manufacturer defendants; (vi) whether the individual owned an analog-only, analog/digital-ready, or dual-mode (analog/digital) On-Star system; (vii) whether any updates to the analog/digital On-Star was paid for by MLC in full or in part; (viii) whether the class member properly maintained their On-Star equipment; (ix) whether the class member actually used the On-Star equipment and paid for the On-Star services; (x) whether the class member actually received a representation regarding On-Star equipment, the details regarding that representation, where the representation was made, and whether it was made by a person with authority to legally bind MLC; (xi) whether the class member reasonably relied on MLC's alleged misrepresentations regarding On-Star equipment; (xii) whether the class member was actually aware at the time they purchased their vehicle that such analog On-Star equipment

29

would no longer work as of December 31, 2007; (xiii) whether the class member should have

been aware that the alleged misrepresentation was inaccurate based on public knowledge and

public statements made by various parties, including the Debtors, to the FCC concerning the

elimination of analog services; (xiv) whether such alleged misrepresentations were material; (xv)

whether a class member's claims are barred by the statue of limitations or other affirmative

defenses such as comparative negligence; (xvi) whether the claim is against Debtors or one of

the other defendants or third parties named in the On-Star Putative Class Complaint; (xvii)

whether the class member prepaid for On-Star cellular service, and if so, how much; (xviii)

whether disclosures relating to prepayment of On-Star cellular service were inconspicuous,

confusing, or misleading so that the class members could not reasonably understand the

disclosures' purpose or meaning; (xix) whether the class member's On-Star service was

terminated prematurely, and if so, when; (xx) and what the appropriate remedy should be for any

particular class member.  This *nonexclusive* list provides a mere sampling of the myriad of

factual differences that will "overshadow common issues." *In re MTBE Prods. Liab. Litig.*, 209

F.R.D. at 349.  When coupled with the variations in law relevant to determining the foregoing

facts, the On-Star Plaintiffs cannot meet their burden of satisfying the predominance requirement

and, thus, the class fails to meet the requirements of Rule 23.

        49.     Looking just at the issues related to the On-Star Putative Class Claims

based, in part, on fraudulent misrepresentation, it is evident that individual fact issues defeat

predominance.  Those questions raise a host of individual issues of fact that render class

treatment wholly unmanageable, including individual questions as to:  the fact of product

purchase or ownership; the differing marketing or statements; whether each class member was

exposed to allegedly deceptive marketing or statements; whether each class member purchased

products as a result of such marketing or statements; the details regarding that representation,

where the representation was made, and whether it was made by a person with authority to

legally bind MLC; whether the class member relied on MLC's alleged misrepresentations

regarding On-Star equipment; whether the class member was actually aware at the time they

purchased their vehicle that such analog On-Star equipment would no longer work as of

December 31, 2007; whether the class member should have been aware that the alleged

misrepresentation was inaccurate based on public knowledge and statements made by various

people, including the Debtors, to the FCC concerning the elimination of analog services; whether

such alleged misrepresentations were material; whether the claim is against the Debtors or one of

the other defendants or third parties named in the On-Star Putative Class Complaint; and whether

the class member's On-Star service was terminated prematurely, and if so, when. *See In re*

*Woodward*, 205 B.R. at 372 (holding issue of fraud as common question of law or fact under

Rule 23(b)(3) would require a showing of reliance on the part of each class member, and such a

showing was "[l]acking in this case [where reliance on an advertisement is at issue] is the single

set of operative facts that can be applied on a class wide basis . . . . Because the incidents did not

occur in a single place, at the same time, or under identical conditions, individualized issues of

causation arise."). Accordingly, individualized issues regarding reliance alone would prohibit

certification. Further, given the absence of any objective evidence of who purchased such

products or relied upon any of the Debtors' alleged misrepresentations, the Court would be

required, at the threshold, to make a series of individual credibility determinations as to who is

and is not a member of the Putative Classes. *See In re Phenylpropanolamine (PPA) Prods. Liab.*

*Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (motion to certify class asserting consumer fraud

claims on behalf of non-injured consumers of PPA products denied primarily because of

difficulty in determining who had even purchased products at issue).

50.    Numerous individual issues also exist as to whether any alleged

misrepresentation caused each particular class member to purchase any product, precluding class

certification.  For this reason, courts routinely reject class certification of cases claiming unfair

trade practices, breach of warranty, unjust enrichment and other claims similar to those alleged

here—including in cases in which plaintiffs allege a cause of action based on a

misrepresentation—because of the overwhelming number of *individual issues* relating to

reliance, causation, and materiality.  *See Kottler*, 2010 WL 1221809, at *3 (finding

predominance not satisfied because varied misrepresentations preclude class certification in a

fraud claim); *Castano*, 84 F.3d at 737, 745 (denying certification in action where claims included

"violation of state consumer protection statutes" and "disgorge[ment]" of profits, holding that

class action "cannot be certified when individual reliance will be an issue"); *Truckway*, 1992 WL

70575, at *5, *7 (individual issues predominated in state consumer fraud action).

51.    Finally, determination of whether each class member suffered "actual

injury," would require an individualized inquiry into the degree of efficacy of the product for that

particular class member—an inquiry that would, once again, swamp any common issues and

render class treatment wholly unmanageable.

**B.    The On-Star Plaintiffs Cannot Establish that a Class**
**Action Is Superior to Other Available Methods for**
**Fairly and Efficiently Adjudicating this Controversy**

52.    In addition to the requirement that common questions of law or fact must

predominate over individual issues, the On-Star Plaintiffs must also establish "that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy."

32

Fed. R. Civ. P. 23(b)(3). Given the vast number of individual variations of law and fact that would be involved with allowing this case to proceed as a nationwide class action, the action would be unmanageable as a single trial. The issue of MLC's liability would have to be litigated in thousands of trials which, even if logistically feasible, would violate the constitutional mandate that "entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano*, 84 F.3d at 750 (denying certification for lack of superiority); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995) (same); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 427 (E.D. La. 1997) (same). Given that a class action is not manageable in this case, it is not superior to other available methods for fairly and efficiently adjudicating the controversy, and thus, the class cannot meet the requirements of Rule 23.

     C.     **Neither "Commonality" nor "Typicality"**
              **Can Be Established by the On-Star Plaintiffs**

     53.     To proceed as a class claim, Rule 23(a)(2) and Rule 23(a)(3) require that the putative class representative also demonstrate commonality and typicality. To establish typicality, plaintiffs must show that they are situated similarly to class members.[13] The Court cannot "presume" that plaintiffs' claims are typical of other claims. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, 160 (1982) ("actual, not presumed, conformance with Rule 23(a) remains, however, indispensable").

---

[13] *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (typicality "requires that the claims of the class representative be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each member makes similar arguments to prove the defendant's liability'") (quoting *In re Drexel*, 960 F.2d at 291); *see, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class").

54.    The On-Star Plaintiffs' claims are not typical of those alleged on behalf of any of their respective putative classes.  First, each On-Star Plaintiff's claim allegedly arises from certain of the Debtors' Products that the On-Star Plaintiffs claim to have purchased allegedly in reliance upon defendants' representations as to the ability of certain On-Star systems to function for the life of the respective vehicle.  (*See* On-Star Putative Class Compl. at 15-16.)  Yet, the Putative Classes would include plaintiffs who were represented *different* things about the longevity of the On-Star system; had *different* information regarding the On-Star system at the time they purchased their vehicle; and that purchased vehicles under a variety of *different* factual circumstances.  *See, e.g., Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir.), *cert. denied*, 510 U.S. 959 (1993) (typicality defeated by plaintiff's broad definition of class as all individuals who signed similar automobile lease agreements).

55.    Finally, the On-Star Plaintiffs' claims cannot be typical of those of all members of the On-Star Putative Sub-Classes because the bases of the unfair and deceptive trade practices claims vary greatly.  The claims are based on a variety of allegedly deceptive marketing practices, including, but not limited to, the Debtors' "expressly and impliedly represented to [Named] Plaintiffs and the [Putative] Class that their OnStar equipment would provide safety and security and would function and be available for the life of their vehicles (On-Star Putative Class Compl. at 15-16); that On-Star's service center and Advisors are available "24 hours a day, seven days a week" (*id.*); that individuals could renew their Safe and Sound plan "for excellent protection, 24/7, 365 days a year (*id.*); "that OnStar told its customers that OnStar hardware was warranted as part of the manufacturer's new vehicle limited warranty" (*id.*); and that the Debtors' "continued to sell analog equipment to customers without notifying them that the equipment would cease to function" (*id.* at 2).  Each member of the On-Star Putative Sub-

34

Classes might base his or her unfair and deceptive trade practice claim on one or more of the
foregoing assertions, might have seen or been induced to purchase by one or a combination of
statements, and might have considered some, all, or none of the foregoing assertions to be
material. On the face of the On-Star Putative Class Claims, there could be no "typical" plaintiff
for the unlimited permutations of factual predicates for the claims alleged.

D.    **The On-Star Plaintiffs Are Not Adequate Representatives**

56.    To establish that it will adequately represent the proposed class, the On-
Star Plaintiffs must have common interests with the unnamed members of the class, and it must
appear that the On-Star Plaintiffs will vigorously prosecute the interests of the class through
qualified counsel. *See, e.g., Edwards v. McCormick*, 196 F.R.D. 487, 495 (S.D. Ohio 2000).
Initially, without evidence of who would actually comprise the class, a court cannot evaluate
whether the On-Star Plaintiffs have a common interest with the unnamed class members, and any
determination of adequate representation would be purely speculative. *Id.* Furthermore, the
required elements that the plaintiffs have "claims or defenses typical of the class" and that they
can "adequately represent and protect the interests of other members of the class" are
intertwined: "to be an adequate representative, plaintiff must show that his claims are typical of
the claims of the class." *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 669 (1993)
("[T]o be an adequate representative, plaintiff must show that his claims are typical of the claims
of the class.") (quoting *Stephens v. Montgomery Ward*, 193 Cal. App. 3d 411, 422 (1987)). As
described above, there can be no "typical" plaintiff and, thus, no adequate representative for any
of the Putative Classes.

57.    Moreover, the burden to move expeditiously for class certification and
recognition within a bankruptcy proceeding, in compliance with Rule 23(c)(1), falls on the class

35

representative and "the class representative's failure to move for class certification is a strong

indication that he will not fairly and adequately represent the interests of the class." *In re

Woodward*, 205 B.R. at 370. As the On-Star Putative Class Claims fail to meet the requirements

of Rule 23, the Court should not allow it to proceed as a class claim, and it should be disallowed.

      **E.**      **The Members of the On-Star Putative Sub-Classes Are Not Properly Identifiable**

      58.     Finally, inherent in Rule 23 is the requirement that a proposed class be

"identifiable" or ascertainable. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. at 336-37. This

requirement is not satisfied if a court must conduct a merits inquiry merely to determine who is

included in the proposed class. Courts have determined that proposed classes are not identifiable

when class definitions are "overly broad, amorphous or vague." *In re Fosamax Prods. Liab.

Litig.*, 248 F.R.D. 389, 396-97 (S.D.N.Y. 2008) (rejecting class certification because class was

defined to broadly) (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)).

The *In re Fosamax* court found the plaintiffs' class definition to be overly broad when it failed to

be put any limitations on class membership, as well as failing to screen out people with unique

risk factor. *See id.* Likewise, the On-Star Putative Class Claims are too broad to be identifiable

as they seek to include all owners of any vehicle sold or leased in the United States after August

8, 2002 equipped with an analog or analog/digital On-Star Equipment that has not been upgraded

or who paid for an upgrade to such equipment on or before December 31, 2007. (*See* On-Star

Putative Class Compl. at 42.)

      59.     Moreover, in order to determine class membership for the On-Star

Putative Sub-Classes, the Court would, thus, need to first determine: (i) whether each

individual's particular On-Star equipment is covered by warranty; (ii) whether each individual's

vehicle was properly presented for repair pursuant to the warranty and whether the dealer either

failed or refused to make the needed repairs; (iii) whether the class member provided proper

notice of the alleged breach of warranty to MLC; (iv) whether there is privity between MLC and

the class member; (v) whether the class member can adequately allege that On-Star can be liable

for the actions of any of the manufacturer defendants; (vi) whether the individual owned an

analog-only, analog/digital-ready, or dual-mode (analog/digital) On-Star system; (vii) whether

any updates to the analog/digital On-Star was paid for by MLC in full or in part; (viii) whether

the class member properly maintained their On-Star equipment; (ix) whether the class member

actually used the On-Star equipment and paid for the On-Star services; (x) whether the class

member actually received a representation regarding On-Star equipment, the details regarding

that representation, where the representation was made, and whether it was made by a person

with authority to legally bind MLC; (xi) whether the class member reasonably relied on MLC's

alleged misrepresentations regarding On-Star equipment; (xii) whether the class member was

actually aware at the time they purchased their vehicle that such analog On-Star equipment

would no longer work as of December 31, 2007; (xiii) whether the class member should have

been aware that the alleged misrepresentation was inaccurate based on public knowledge and

public statements made by various parties, including the Debtors, to the FCC concerning the

elimination of analog services; (xiv) whether such alleged misrepresentations were material; (xv)

whether a class member's claims are barred by the statue of limitations or other affirmative

defenses such as comparative negligence; (xvi) whether the claim is against the Debtors or one

of the other defendants or third parties named in the On-Star Putative Class Complaint; (xvii)

whether the class member prepaid for On-Star cellular service, and if so, how much; (xviii)

whether disclosures relating to prepayment of On-Star cellular service were inconspicuous,

37

confusing, or misleading so that the class members could not reasonably understand the

disclosures' purpose or meaning; (xix) whether the class member's On-Star service was

terminated prematurely, and if so, when.

60.     Accordingly, the members of the On-Star Putative Sub-Classes are not

properly ascertainable under Rule 23 and should be disallowed. *See In re Vioxx Prods. Liab.*

*Litig.*, No. MDL 1657, 2008 WL 4681368, at *9-10 (E.D. La. Oct. 21, 2008) ("Where it is

facially apparent from the pleadings that there is no ascertainable class, a district court may

dismiss the class action on the pleadings."), *aff'd*, 300 F. App'x 261 (5th Cir. 2008); *Brazil v.*

*Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); *Barasich v. Shell Pipeline Co., No. Civ.*

*A. 05-4180,* 2008 WL 6468611, at *4 (E.D. La. June 19, 2008).

**III.    Alternatively, If the Unliquidated On-Star Putative Class Claims Are Not Expunged,
They Should Be Subject to an Immediate Estimation Proceeding**

**A.    Estimation of Claims**

61.     In the event that the Court finds it appropriate to permit the Unliquidated

On-Star Putative Class Claims to proceed as class claims in whole or in part, the Debtors request

an expedited procedure be established in this Court to quickly liquidate the thousands of

unliquidated claims and an expedited hearing to estimate the Unliquidated On-Star Putative

Class Claims pursuant to section 502(c) of the Bankruptcy Code.

62.     Section 502(c) of the Bankruptcy Code mandates the estimation of all

contingent or unliquidated claims which, if otherwise fixed or liquidated, would unduly delay

administration of a debtor's case.  11 U.S.C. § 502(c) ("There ***shall*** be estimated for purposes of

allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation

of which, as the case may be, would unduly delay the administration of the case…") (emphasis

38

added); *see also In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993); *In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992). The estimation process is an expedient method for setting the amount of a claim that may receive a distributive share from the estate. *In re Thomson*, 143 B.R. at 619 (citing *In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984); *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135-37 (3d Cir. 1982); *In re Interco, Inc.*, 137 B.R. 993, 995 (Bankr. E.D. Mo. 1992). Section 502(c) of the Bankruptcy Code is designed to (1) avoid the need to await resolution of pending lawsuits to determine issues of liability or the amount owed by means of anticipating and estimating the likely outcomes of these actions, and (2) promote fair distribution to creditors through the realistic assessment of uncertain claims. *See In re S. Cinemas, Inc.*, 256 B.R. 520, 533 (Bankr. M.D. Fla. 2000) (citing *In re Ford*, 967 F.2d 1047, 1053 (5th Cir.), *reh'g denied*, 974 F.2d 1337 (5th Cir. 1992)).

      63.    Bankruptcy Code section 502(c), thus, contains two requirements before a bankruptcy court must proceed to estimate a claim: (1) the court must determine that the claim is either contingent or unliquidated, and (2) the court must determine that the time necessary to fix or liquidate the claim would unduly delay administration of the case. *In re Apex Oil Co.*, 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989). Section 502(c)(1) is drafted in the disjunctive. See 11 U.S.C. § 502(c) ("There shall be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim…") (emphasis added). "'Liquidated' denotes the ability to readily and precisely compute the amount due; the test is whether the amount 'is capable of ascertainment by … a simple computation.'" *Id.* Congress deliberately included unliquidated claims in the Bankruptcy Code's definition of a claim and made provision for their estimation to permit the broadest possible relief in the bankruptcy court and to ensure that virtually all

39

obligations to pay money would be amenable to treatment in bankruptcy. *See In re CD Realty Partners*, 205 B.R. 651, 655-56 (Bankr. D. Mass. 1997).

64.    Some courts simply assume that a trial will unduly delay administration of the case and proceed to estimate the creditors' unliquidated claims. *See, e.g., In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 528-32 (Bankr. N.D. Ala. 1986). Other courts examine the size and magnitude of a debtor's contingent and unliquidated claims to determine if a full trial on the claims would unduly delay the chapter 11 cases. *See, e.g., In re Johns-Manville Corp.*, 45 B.R. 823, 826 (S.D.N.Y. 1984). Other factors considered by courts include whether discovery in the underlying matter had commenced and the anticipated length of a trial process, including appeals. *See In re Baldwin-United Corp.*, 55 B.R. 885, 888 (Bankr. S.D. Ohio 1985).

65.    A court may authorize the estimation and approximation of the allowed amount of a contingent or unliquidated claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible. *In re Thomson*, 143 B.R. at 619; *In re Brints Cotton Mktg.*, 737 F.2d at 1341. Additionally, Section 105 of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105. Although a court is bound by the legal rules that govern the ultimate value of the claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the value of a claim or claims.    Whatever procedure the Court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11 that the process be "accomplished quickly and efficiently." *See Bittner*, 691 F.2d at 137 (citing 124 Cong. Rec. H. 11101- H. 11102 (daily ed. Sept. 28, 1978)).

40

**B.      The Unliquidated On-Star Putative Class Claims Must Be Estimated If the
Claims Are Not Expunged**

66.      The Unliquidated On-Star Putative Class Claims are contingent and

unliquidated because their value is not a matter of a simple computation.  As filed, the

Unliquidated On-Star Putative Class Claims seek damages that are not determined, and the

Debtors dispute the validity of the Unliquidated On-Star Putative Class Claims.  (*See* Proof of

Claim No. 59632 (Ex. B) (unliquidated); Proof of Claim No. 51092 (Ex. D) ("approximating"

claim value at $549.00); Proof of Claim No. 58984 (Ex. E) (rider states claim is unliquidated);

Proof of Claim No. 58985 (Ex. F) (same); Proof of Claim No. 58983 (Ex. G) (same); Proof of

Claim No. 58987 (Ex. H) (same).)  Due to the potential magnitude of the Unliquidated On-Star

Putative Class Claims, the Plan cannot be confirmed until the Unliquidated On-Star Putative

Class Claims are liquidated.  Liquidating the Unliquidated On-Star Putative Class Claims by

methods other than estimation proceedings pursuant to section 502(c) of the Bankruptcy Code

would undoubtedly severely delay administration of the Debtors' cases.

67.      Thus, unless the Unliquidated On-Star Putative Class Claims are

disallowed in their entirety, estimation is mandatory.  Further, given the large number of

potential members of the On-Star Putative Sub-Classes, the Plaintiffs should be required to

monetize their claims.

<u>Notice</u>

68.      Notice of this Motion has been provided to counsel for the On-Star

Plaintiffs and to the parties in interest in accordance with the Fourth Amended Order Pursuant to

11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case

Management Procedures, dated August 24, 2010 [ECF No. 6750].  The Debtors submit that such

notice is sufficient and no other or further notice need be provided.

69.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

70.    WHEREFORE the Debtors respectfully request entry of an order granting

the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       December 17, 2010

                                    /s/ Joseph H. Smolinsky_____
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

42