**<u>Exhibit A</u>**
**<u>Proof of Claim No. 3128</u>**




03757541
APS0704881832

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)

☒ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) — 13558 (REG)

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property)  NICHOLAS, CHERYL

Name and address where notices should be sent

NICHOLAS, CHERYL
KEOGH KEOGH COX & WILSON
POB 1151  701 MAIN STREET
BATON ROUGE, LA 70821-1151

Telephone number
Email Address

Name and address where payment should be sent (if different from above)

FILED - 03128
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**Your Claim is Scheduled As Follows.**

Motors Liquidation Company

Unsecured  Unknown

Contingent / Unliquidated / Disputed

*(stamp: THE GARDEN CITY GROUP, INC.  OCT 5 2009)*

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown  (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form  EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1  Amount of Claim as of Date Case Filed, June 1, 2009**   $ 5,000,000.00

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim** _Property damage, breach of contract, redhibition- class action_
(See instruction #2 on reverse side)

**3  Last four digits of any number by which creditor identifies debtor** ___0775___

3a  Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

**4  Secured Claim** (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property  $_____   Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection _____

Amount of Secured Claim  $_____   Amount Unsecured  $_____

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5  Amount of Claim Entitled to Priority under 11 U S C § 507(a)**  If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) § 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

Amount entitled to priority
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

Date  7/29/09  *(signature)*

FOR COURT USE ONLY

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules  The attorneys for the Debtors and their court-appointed claims agent  The Garden City Group  Inc , are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS  IF BY MAIL  THE GARDEN CITY GROUP, INC , ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO  BOX 9386, DUBLIN, OH 43017-4286  IF BY HAND OR OVERNIGHT COURIER  THE GARDEN CITY GROUP, INC , ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A  DUBLIN, OH 43017  PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534  NEW YORK, NEW YORK 10004  ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 PM  (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009  You should select the debtor against which you are asserting your claim
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case  Please provide us with a valid email address  A separate space is provided for the payment address if it differs from the notice address  The creditor has a continuing obligation to keep the court informed of its current address  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing  Follow the instructions concerning whether to complete items 4 and 5  Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred  Examples include goods sold  money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card  If the claim is based on the delivery of health care goods or services  limit the disclosure of the goods or services, so as to avoid embarrassment or the disclosure of confidential health care information  You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor s account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured  Skip this section if the claim is entirely unsecured (See DEFINITIONS, below )  State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C  § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below )  A claim may be partly priority and partly non-priority  For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C  § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below)  Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt  You may also attach a summary  You must also attach copies of documents that evidence perfection of any security interest  You may also attach a summary  FRBP 3001(c) and (d)  If the claim is based on the delivery of health care goods or services, see instruction 2  Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it  FRBP 9011  If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature  Print the name and title, if any, of the creditor or other person authorized to file this claim  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices  Attach a complete copy of any power of attorney  Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC | |
| (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc | |
| (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor s right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing  See 11 U S C  §101(5)  A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing  The creditor must file the form with the Garden City Group, Inc  as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C  § 586(a)**
A secured claim is one backed by a lien on property of the debtor  The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors  The amount of the secured claim cannot exceed the value of the property  Any amount owed to the creditor in excess of the value of the property is an unsecured claim  Examples of liens on property include a mortgage on real estate or a security interest in a car  A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding  In some states, a court judgment is a lien  A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim  A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C  § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information  A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor s name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims  One or more of these entities may contact the creditor and offer to purchase the claim  Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor  These entities do not represent the bankruptcy court or the debtor  The creditor has no obligation to sell its claim  However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C  § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

### INFORMATION

# KEOGH, COX & WILSON, LTD.
## ATTORNEYS AT LAW

STEPHEN R WILSON
JOHN P WOLFF, III*
STEVEN C JUDICE
ANDREW BLANCHFIELD
EDWARD F STAUSS, III
KIRK L LANDRY*
GRACELLA SIMMONS
NANCY B GILBERT
COLLIN J LEBLANC
CHAD A SULLIVAN, R N, J D ++
CHRISTOPHER K JONES
MARY ANNE WOLF**
STEPHEN M WHITLOW

*LICENSED IN LOUISIANA & TEXAS
++REGISTERED NURSE
** REGISTERED ELECTRICAL ENGINEER

701 MAIN STREET (70802)
P O BOX 1151 (70821)
BATON ROUGE, LOUISIANA
(225) 383-3796
FAX (225) 343-9612

kcwlaw@kcwlaw com

TORI S BOWLING
TIFFANY N THORNTON
MICHAEL M THOMPSON
REBECCA H KLAR
VIRGINIA J MCLIN
KIMBERLY D HIGGINBOTHAM
WESLEY P HEBERT

SPECIAL COUNSEL
ANDREW J HODGES IV

OF COUNSEL
JOHN R KEOGH
JOHN E COX

September 30, 2009

The Garden City Group, Inc
P O. Box 9386
Dublin, OH 43017-4286
**ATTN: Motors Liquidation Company**
          **Claims Processing**

Re    In Re  Motors Liquidation Company f/k/a General Motors Corporation, et al, Chapter 11 Bankruptcy No  09-50026
Cheryl Nicholas, Individually and as Representative of the Class v.
General Motors Corporation
Our File No. 888 0723194

To Whom It May Concern:

Enclosed please find the Proof of Claim form submitted on behalf of Cheryl Nicholas as required by the US Bankruptcy Court for the Southern District of New York in the referenced matter.  Also attached is the Class Complaint in support of her claim

Should you need any additional information, please do not hesitate to contact us, as we remain

Very truly yours,

**KEOGH, COX & WILSON, LTD.**

JOHN P WOLFF, III
CHRISTOPHER K JONES

JPW/CK./kw
Enclosures

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHERYL NICHOLAS, Individually | * | CIVIL ACTION NO |
| and as Representative of the Class | * | |
| | * | |
| vs | * | JUDGE |
| | * | |
| | * | |
| GENERAL MOTORS CORPORATION | * | MAGISTRATE |

************************************************************************

## CLASS ACTION COMPLAINT

The Petition of Plaintiff, Cheryl Nicholas, a major resident domiciled in the state of

Louisiana, in and on behalf of all others similarly situated, respectfully represents the

following

### INTRODUCTION

1

Plaintiff, Cheryl Nicholas, brings this action for damages against Defendant, General

Motors Corporation ("GM") because of its plans to terminate OnStar service to vehicles

equipped with analog-only OnStar equipment   Certain GM vehicles are equipped with

OnStar wireless communications and security systems that will cease to function on January

1, 2008

### JURISDICTION AND VENUE

2

This Honorable Court has jurisdiction over this action pursuant to 28 U S C §

1332(d), as the Plaintiff is a citizen of Louisiana and Defendant is a citizen of Michigan

3

Jurisdiction is also appropriate under the provisions of the Class Action Fairness Act

of 2005 in that all requisite jurisdictional amounts are met, and the amount in controversy,

on a class-wide basis, exceeds $5 million, exclusive of interest and costs

4

Venue is proper in this District pursuant to 28 U S C § 1391 because the Defendant

is doing business in this state and judicial district

## DESCRIPTION OF THE PARTIES

5

Plaintiff party is

Cheryl Nicholas, a major resident domiciled in Zachary, Louisiana

6

Defendant party is

General Motors Corporation ("GM"), a Delaware corporation with its principal place

of business and national headquarters located at 300 Renaissance Center, Detroit, Michigan

GM designs, tests, manufactures, markets, advertises, warrants, distributes, sells or leases

cars, trucks and sports utility trucks under several prominent brand names, including, but not

limited to  GMC, Chevrolet, Buick, Cadillac, Pontiac, Oldsmobile, Saturn and Saab

throughout the United States  OnStar Corporation ("OnStar"), is a wholly-owned subsidiary

of GM and was at all times expressly and impliedly controlled and directed by GM, and is

therefore responsible for its acts

## FACTUAL ALLEGATIONS

7

OnStar is an in-vehicle telematic safety communications system that provides various

safety, security, and convenience services including automatic crash notification to

emergency responders, stolen vehicle location, remote door unlock and remote diagnostics

in the event of problems with airbags, anti-lock brakes or other systems

8

By the press of a button, OnStar enables vehicle occupants to receive emergency

service and information anywhere in the United States   OnStar describes the system on its

website as

> OnStar's in-vehicle safety, security, and information services use Global
> Positioning System (GPS) satellite and cellular technology to link the vehicle
> and driver to the OnStar Center   At the OnStar Center, advisors offer real-
> time, personalized help 24 hours a day, 365 days a year

> http //www onstar com/us_english/jsp/explore/onstar_basics/technology jsp

9

The OnStar Owner's Guide further represents

a     OnStar "uses sophisticated     technology to provide the communications link
       and seamless integration into their vehicle    "

b     OnStar advisors can provide "a range of helpful services to protect [the owner]
       and [his or her] vehicle "

c     OnStar puts "Safety, Security, and Convenience at [the owner's] fingertips "

d     The OnStar service center is available 24 hours a day, seven days a week

[e]ven on weekends and holidays, there is always someone ready to help "

e    OnStar allows the driver "to enjoy an even greater level of safety, security, and convenience while driving "

10

OnStar service is a unique system, not available from other sources, which was developed and operated by GM throughout the United States and Canada since about 1998 OnStar service for new vehicles is typically free for the first 12 months and thereafter provided on a subscription basis

11

At all relevant times, GM maintained the policy and practice of selling OnStar equipped vehicles and providing service and parts for safety components through a network of authorized dealers

12

From its inception and for a considerable period of time thereafter the OnStar system used analog cellular telephone technology only    Vehicles with analog-only telematics equipment only function on analog cellular systems    At some point in time Defendant began to equip GM vehicles with OnStar systems that were supported by digital-only or digital and analog telematics equipment

13

GM manufactured and/or supplied the analog-only telematics equipment used in the OnStar system, and did so even after the development of digital technology and notification that analog equipped OnStar systems would no longer work after December 31, 2007

14

Beginning on January 1, 2008, the only OnStar systems that will function are OnStar

digital systems, contrary to Defendant's express representations and warranties

15

As soon as September 24, 2002 GM was aware that analog supported OnStar systems

would no longer work and that the FCC would no longer require the maintenance of analog

systems after February 18, 2008   GM, through OnStar, in its comments to the FCC,

acknowledged that the "life saving benefits of OnStar are intended not only for initial vehicle

purchasers but for subsequent owners over the life of the vehicle" and that its analog

equipment would not work without an analog wireless phone network

16

Nevertheless, Defendant never notified any of its customers of these facts and

continued to sell its cars with analog telematics equipment while promising that its OnStar

product would continue to provide "emergency services" and provide "real-time,

personalized help 24 hours a day, 365 days a year "

17

GM continued to install analog-only OnStar equipment and sell vehicles equipped

with it well after it became aware of the FCC order and the eventual termination of analog

supported OnStar services   In fact, GM continued to do in an effort to generate additional

funds by requiring vehicle owners or lessors to upgrade or replace OnStar equipment for a

fee

18

GM had the knowledge, means and capability to install digital or digital/analog equipment before and after learning of the FCC order but declined to do so, despite that it knew that the analog supported system would soon become obsolete

19

On October 22, 2002, plaintiff Cheryl Nicholas purchased a new 2003 Chevrolet Trailblazer equipped with an analog-only OnStar system from Graves Chevrolet, an authorized GM dealer in Baker, Louisiana

20

At the time of purchase, GM provided plaintiff with a "Bumper to Bumper' warranty covering "the complete vehicle" for three years or 36,000 miles, whichever occurs first

21

In the new vehicle warranty, GM expressly represented and warranted to the purchaser and subsequent owners and lessees that during the warranty period GM would provide repairs, upgrades and if necessary, replacement, to "correct any vehicle defect related to materials or workmanship" at no cost to plaintiff or the subsequent owner or lessee

22

At all relevant times, plaintiff used her vehicle for personal, family or household purposes

23

At the time of purchase, GM expressly and impliedly represented to plaintiff that its

telematics equipment would provide safety and security and would function and be available for the life of the vehicle, which representations and warranties were contained in the OnStar Owner's Guide as well as the Owner's Manual provided by GM with the vehicle

24

At the time of purchase, GM expressly and impliedly represented and warranted to plaintiff and the class that the telematics equipment in their vehicles was free of defects and would be suitable for use in the OnStar system

25

GM's implied warranties included its custom and practice of providing repair parts and service for defective safety components for the reasonable life of a vehicle  This custom and practice was part of plaintiff's bargain to purchase her vehicle

26

At the time of purchase, Defendant did not disclose to plaintiff that her telematics equipment was analog and would either stop working or need a costly upgrade to function on digital only cellular systems, or that she must agree to subscribe to Onstar for a full year of service

27

GM knew or should have known that its telematics equipment was certain to become useless, was not fit for its ordinary and intended use, and did not perform in accordance with the advertisements, marketing materials and warranties disseminated by GM, nor with the reasonable expectations of ordinary consumers

28

Plaintiff maintains an OnStar subscription and has done so since she first purchased her vehicle

29

By letter dated June 7, 2007, GM, through its OnStar subsidiary, advised plaintiff that her OnStar system was equipped with an analog system, but could be upgraded to digital for an additional cost  Without the upgrade, the letter stated, her telematics equipment would not work after December 31, 2007

30

In addition to paying the upgrade fee, the letter advised plaintiff that she must also subscribe to a one-year, non-transferrable and non-refundable, OnStar plan, at a cost of approximately $199 00

31

Upon information and belief, hundreds of thousands of GM customers have received similar letters from GM and OnStar, advising them of the imminent failure of their telematics equipment

32

As a result of Defendant's actions, plaintiffs and thousands of other OnStar owners, lessees and subscribers will lose the benefits of this safety system, will be exposed to an increased risk of serious personal injury and harm, and their motor vehicles will lose substantial value  Plaintiff seeks damages and appropriate injunctive relief for herself and

all others similarly situated

## CLASS ACTION ALLEGATIONS

### 33

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

### 34

Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(3)

on behalf of all persons and entities residing in the State of Louisiana who own or lease

General Motors vehicles equipped with analog telematics equipment and who acquired the

vehicle during the period from September 25, 2002 through the present  Said definition may

be further defined by additional pleadings, evidentiary hearings, a class certification hearing,

and orders of this Court

### 35

All class members purchased the same or similar incompatible, defective and

unsuitable analog telematics equipment, received the same representations, have the same

express and implied agreements for telematics equipment and warranties, received the same

notices of termination, and have or will sustain the same or similar damages

### 36

Class members are so numerous that their individual joinder is impracticable  Upon

information and belief, and based on Defendant's own admissions, there are approximately

500,000 vehicles equipped with OnStar analog systems that cannot be upgraded, and 1

million more vehicles with OnStar analog systems that can be upgraded for a fee  While the

precise number of class members in Louisiana is unknown to plaintiff, it is clear that the

number greatly exceeds the number to make joinder impossible

37

There are questions of law and fact common to the Class and which predominate over

any individual issues   Common questions of law and fact include, without limitation

(a)   Whether defendant breached its express written warranties by selling vehicles equipped with defective OnStar analog systems and then failing to repair or replace the systems free of charge,

(b)   Whether defendant breached implied warranties by selling vehicles equipped with defective OnStar analog systems and then failing to repair or replace the systems free of charge,

(c)   Whether the class members purchased or leased a vehicle with analog telematics equipment,

(d)   Whether all class members' telematics equipment was defective and not suited for use with the OnStar system,

(e)   Whether GM maintains the same customs, policies and practices regarding service and repairs for safety components,

(f)   Whether GM concealed and failed to disclose the same information regarding the defects in its analog telematics equipment,

(g)   Defendant's knowledge of the FCC rule,

(h)   Whether each class member was given the same or similar notice of termination of analog service,

(i)   Whether GM refuses to provide class members with repairs, replacements, devices or other means to receive OnStar digital service,

(j)   The damages suffered by each class member

38

Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members  Individual questions, if any, pale by comparison to the numerous common questions that dominate

39

The injuries sustained by the class members flow, in each instance, from a common nucleus of operative facts  Defendant's misconduct  In each case, Defendant designed, manufactured, supplied and/or sold defective vehicles containing analog OnStar systems

40

The class members have been damaged by Defendant's misconduct  The class members have purchased defective GM vehicles equipped with analog OnStar systems that will no longer work after December 31, 2007

41

Plaintiff's claims are typical of the claims of the other class members  Plaintiff purchased a GM vehicle equipped with an analog OnStar system which will become obsolete on January 1, 2008

42

Plaintiff will fairly and adequately protect the interests of the Class  Plaintiff is familiar with the basic facts that form the basis of the class members' claims  Plaintiff's interests do not conflict with the interests of the other class members that she seeks to represent  Plaintiff has retained counsel competent and experienced in class action litigation

and intends to prosecute this action vigorously   Plaintiff's counsel has successfully

prosecuted complex class actions, including consumer protection class actions   Plaintiff and

Plaintiff's counsel will fairly and adequately protect the interests of the class members

43.

The class action device is superior to other available means for the fair and efficient

adjudication of the claims of Plaintiff and the class members   The relief sought per

individual member of the Class is small given the burden and expense of individual

prosecution of the potentially extensive litigation necessitated by the conduct of Defendant

Furthermore, it would be virtually impossible for the class members to seek redress on an

individual basis   Even if the class members themselves could afford such individual

litigation, the court system could not

44

Individual litigation of the legal and factual issues raised by the conduct of Defendant

would increase delay and expense to all parties and to the court system   The class action

device presents far fewer management difficulties and provides the benefits of a single,

uniform adjudication, economies of scale and comprehensive supervision by a single court

Given the similar nature of the class members' claims and the absence of material differences

in the state statutes and common laws upon which the class members' claims are based, a

statewide Class will be easily managed by the Court and the parties

## LIABILITY OF GM

## COUNT I - BREACH OF IMPLIED WARRANTY/REDHIBITION

### 45

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

### 46

The GM vehicles contain a vice or defect which renders them useless, or their use so inconvenient that buyers would not have purchased them, or paid the price they did, had they known of the vice or defect

### 47

Defendant manufactured and sold the defective vehicles, which it placed into the stream of commerce   Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold   La  C C  art  2520   The vehicles equipped with analog OnStar systems sold and promoted by the Defendant possess a redhibitory defect because the OnStar service will no longer work after December 31, 2007   The Class members would not have bought them had they known of the defects or would have paid a lesser price

### 48

The vehicles alternatively possess a redhibitory defect because the design  diminishes the value or usefulnesses of the vehicles so that it must be presumed that a buyer would still have bought them but for a lesser price   In this instance, the Class members are entitled to a reduction of the purchase price

49

The vehicles sold are not reasonably fit for their ordinary use  After December 31, 2007, their OnStar systems will no longer function

50

The defect in the vehicles existed prior to the delivery of them to the Class members  In fact, the defect existed immediately upon their manufacture

51

Plaintiff and members of the Class reasonably relied upon the expertise, skill, judgment and knowledge of Defendant and upon their implied warranty that the vehicles and their OnStar systems were of merchantable quality and fit for their intended use

52

In addition to manufacturing and selling the defective vehicles, GM is liable as a bad faith seller for selling a defective product with knowledge of the defect  By failing to declare to the Class members that their OnStar systems would no longer function after December 31, 2007, GM is considered a bad faith seller, and liable to the Class Members for the price of the vehicles with interest from the purchase date, reasonable expenses occasioned by their sale, reasonable expenses incurred for their preservation, and attorneys fees  As the manufacturer of the vehicles GM is deemed to know that they possessed a redhibitory defect La C C art 2545

## COUNT II - LOUISIANA PRODUCTS LIABILITY ACT

### 53

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

### 54

Defendant is liable under the provisions of the Louisiana Products Liability Act, La

R S 9 2800 52 *et seq* ("LPLA"), for damages caused by its product

### 55

Defendant GM is a manufacturer, as defined by the LPLA, and is a person or entity

who is in the business of manufacturing the defective vehicles for placement into trade or

commerce La R S 9 2800 52(1)

### 56

The vehicles, at the time they left the Defendant's control, contained a defect in

design La R S 9 2800 56  Specifically, they were equipped with analog OnStar systems

which will no longer work after December 31, 2007  This defect would not have occurred

had Defendant utilized an alternative design that was capable of preventing the Class

members' damage  Simply, GM could have equipped the vehicles with systems compatible

with digital, as opposed to analog, signals

### 57

In addition, the vehicles are defective because of nonconformity to an express

warranty  La R S 9 2800 58  Defendant represented that the vehicles, equipped with an

analog OnStar system, would allow plaintiff and the class to benefit from the many features

and services offered through the OnStar system for as long as they owned their cars. Had Defendant not warranted the characteristics of the vehicles, or at least disclosed the true characteristics of the analog OnStar systems, the Class members would not have been damaged

58

Plaintiff and the class members have incurred damages as described herein as a direct and proximate result of the defective design of the GM vehicles and Defendant's violation of the provisions of the LPLA

## COUNT III- BREACH OF EXPRESS WARRANTY

59

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

60

GM has breached its express warranties to plaintiff and all other Class members to repair and/or replace its telematics equipment so that it is in good operational condition and repair and suitable for use in the OnStar system

61

GM's breach of warranties proximately caused damages to plaintiff and members of the class

## COUNT IV - VIOLATION OF THE MAGNUSON-MOSS ACT

62

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

63

OnStar equipment is a consumer product used for personal, family or household

purposes

64

GM is a supplier and/or warrantor within the meaning of the Magnuson-Moss

Warranty Act, 15 U S C § 2301

65

GM has failed to comply with its obligations under its written and implied promises,

warranties and representations despite having a reasonable opportunity to do so

66

Plaintiff and the class are therefore entitled to recover compensatory damages together

with reasonable attorneys' fees and costs

## COUNT V - UNJUST ENRICHMENT

67

Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein

68

Defendant has benefitted and been unjustly enriched by the above-alleged conduct

Defendant has sold vehicles in their defective state thereby reaping benefits and profits from

consumers nationwide as a result of these sales, despite knowing since 2002 that the analog

equipment would no longer function after December 31, 2007

69

Defendant has knowledge of this benefit, and has voluntarily accepted and retained

this benefit

70

The circumstances as described herein are such that it would be inequitable for

Defendant to retain these ill-gotten benefits without paying the value thereof to the Class

71

Plaintiff and the Class are entitled to the amount of Defendant's ill-gotten gains,

including interest, resulting form its unlawful, unjust and inequitable conduct in selling the

defective vehicles

### INJUNCTIVE RELIEF

72

Upon information and belief, many class members have already paid the $15 upgrade

fee and agreed to the year subscription to OnStar service, as required by Defendant   Many

more will do so in the future

73

Plaintiff and the other class members have been wrongfully charged this upgrade fee

and forced to a year subscription

74

Thus, Plaintiff and the class further seek injunctive relief enjoining Defendant from charging this upgrade fee or requiring a year long subscription to continue their OnStar service, which was provided as an added feature and safety measure when they first purchased the vehicles

75

Plaintiff further seeks to enjoin Defendant from terminating OnStar service to the affected vehicles

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, on behalf of herself and as representatives of all other persons similarly situated, pray for judgment against the Defendant, as follows

1      An Order certifying the Class under the appropriate provisions of F R C P Rule 23, and appointing the Plaintiff and her counsel to represent the class,

2      For damages as alleged herein,

3      For pre-judgment interest from the date of filing this suit,

4      For reasonable attorney's fees,

5      For injunctive relief,

6      For all costs of this proceeding, and

7      For all general, special, and equitable relief to which the Plaintiff and the members of the class are entitled by law

RESPECTFULLY SUBMITTED


By _____s/Christopher K Jones_____
JOHN P WOLFF, III, Bar #14504
CHRISTOPHER K JONES, Bar #28101
KEOGH, COX & WILSON, LTD
701 Main Street
Post Office Box 1151 (70821)
Baton Rouge, Louisiana 70802
Telephone  (225)383-3796
jwolff@kcwlaw com
cjones@kcwlaw com

-and-

PHILIP BOHRER, Bar #14089
SCOTT BRADY, Bar #24976
BOHRER LAW FIRM, L L C
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone (225)925-5297
phil@bohrerlaw com
scott@bradylawfirmllc com