**Exhibit F**

**Proof of Claim No. 58985**

09-50026-mg    Doc 8174-3    Filed 12/17/10    Entered 12/17/10 18:40:53    Exhibit F
Pg 1 of 19

03791797
APS0708262767




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor (Check Only One) | Case No
☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG)

**Your Claim is Scheduled As Follows.**

Motors Liquidation Company

Unsecured  Unknown

Contingent / Unliquidated / Disputed

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property) MATT, DAVID

Same as 01807939 and 01807938

Name and address where notices should be sent

MATT, DAVID
GREENE & REID
173 INTREPID LN
SYRACUSE, NY 13205-2550

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Telephone number
Email Address

Name and address where payment should be sent (if different from above)
Same

FILED - 58985
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

Telephone number  (315) 492-9665

1 Amount of Claim as of Date Case Filed, June 1, 2009  **$6,845.62; See, Appendix "A"**

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

2 Basis for Claim  **Debtor's unfair and deceptive trade practices; See attached Complaint.**
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor ___N/A___

3a Debtor may have scheduled account as  N/A
(See instruction #3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property $_____  Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____  Amount Unsecured $_____

6 Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents  Attach redacted copies of any documents that support the claim  such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of redacted on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available please explain in an attachment

5 Amount of Claim Entitled to Priority under 11 U S C § 507(a)  If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim
☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier – 11 U S C § 507(a)(4)
☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)
☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)
☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)
☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) (§ 507(a)(2))
☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

Amount entitled to priority

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date 11/11/09

Signature  The person filing this claim must sign it  Sign and print name and title, if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any

*[signature: David J Matt]*

FOR COURT USE ONLY

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL: THE GARDEN CITY GROUP, INC, ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC, ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED.

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 PM (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim.
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any.

**3a. Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below). Attach documentation supporting such claim.

**6. Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7. Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.
The Debtors in these Chapter 11 cases are:

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**Additional Information**
If you have any questions with respect to this claim form, please contact AlixPartners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com



# Greene & Reid, PLLC
### Injury Lawyers

173 Intrepid Lane
Syracuse, NY 13205
Tel (315) 492-9665
Fax (315) 492-9741

180 East Union Street
Newark, NY 14513
Tel (315) 331-5633

23245 N Y S Route 342
Allen's Plaza
Watertown, NY 13601
Tel (315) 786-6600

*Service Not Accepted By Facsimile*
*Please Reply To Syracuse Office*

**1-800-886-9665**
www.greenereid.com

VIA FEDEX OVERNIGHT DELIVERY

November 24, 2009

The Garden City Group, Inc
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Re:   U.S Bankruptcy Court, S D.N Y
      Motors Liquidation Company (f/k/a General Motors Corporation)
      Case No 09-50026 (REG)
      Claimant/Creditor: David Matt
      Proof of Claim Nos.: 01807939 – APS0605997995
                           01807938 – APS0605997801
                           03791797 – APS0708262767

Dear Sir/Madam:

This office represents Claimant/Creditor David Matt in the above matter

Enclosed with this letter please find the three (3) identical Proofs of Claim forms with attached exhibits completed by David Matt in said action/proceeding The claim administrator sent three (3) separate forms to fill out, but the claims are identical and are cross-referenced on each Proof of Claim form These Proofs of Claim are timely submitted and/or served upon you in accordance with the Order of the U.S. Bankruptcy Court, Southern District of New York

If you have any questions, please do not hesitate to call or write Thank you

Very truly yours,

James T. Snyder

James T Snyder, Esq.

JTS/aer
Encl

## APPENDIX "A"

Creditor David Matt is a plaintiff in an action entitled <u>David Matt and Bonita Stevens, individually and on behalf of all others similarly situated, Plaintiffs, vs OnStar Corporation, d/b/a OnStar Communications, and General Motors Corporation, Defendants,</u> in New York State Supreme Court, Onondaga County, Index No 2008-0955, which action has been removed to the U S District Court, Eastern District of Michigan, and made part of a pending putative nationwide class action entitled "OnStar Contract Litigation," 2 07-md-01867-SFC-PJK, before the Hon. Sean F Cox

As such, David Matt is a member of a putative nationwide class action, with as-yet unliquidated and/or undetermined total damages in the amount of approximately $2,684 57, together with approximately $4,161 05 in attorneys' fees and disbursements (without any multiplier) as of June 1, 2009, totaling approximately $6,845 62



STATE OF NEW YORK
SUPREME COURT        COUNTY OF ONONDAGA

---

DAVID MATT and BONITA STEVENS, individually
and on behalf of all others similarly situated,

               Plaintiffs,

   - vs —

ONSTAR CORPORATION, d/b/a ONSTAR
COMMUNICATIONS, and GENERAL MOTORS
CORPORATION,

               Defendants

**SUMMONS**

Index No

---

The Plaintiffs designate Onondaga County as the place of trial
The Basis of the venue is Planitiff Matt's residence
Plaintiff Matt resides at 6070 Laramie Lane, Cicero, New York 13039, and
Plaintiff Stevens resides at 185 Fire Lane 12, Jordan, New York 13080

To the above-named Defendants

*YOU ARE HEREBY SUMMONED* to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York), and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint

Dated  February 1, 2008

                                         GREENE & REID, PLLC

                                         */s/ James T. Snyder*

                                       By  James T. Snyder, Esq
                                       Attorneys for Plaintiffs
                                       Office and Post Office Address
                                       173 Intrepid Lane
                                       Syracuse, New York  13205
                                       Telephone No  (315) 492-9665

**Defendants' Addresses:**

OnStar Corporation
300 Renaissance Center
MC 482-C14-C66
Detroit, Michigan 48265-3000

General Motors Corporation
300 Renaissance Center
Detroit, Michigan 48265-3000

SUPREME COURT
STATE OF NEW YORK     COUNTY OF ONONDAGA

---

DAVID MATT and BONITA STEVENS, individually
and on behalf of all others similarly situated,

                          Plaintiffs,                    **COMPLAINT**

            - vs -                                Index No

ONSTAR CORPORATION, d/b/a ONSTAR
COMMUNICATIONS, and GENERAL MOTORS
CORPORATION,

                          Defendants

---

Plaintiffs, David Matt and Bonita Stevens, on behalf of themselves individually and all others similarly situated, as and for their Complaint against General Motors Corporation and OnStar Corporation, d/b/a OnStar Communications, allege as follows

### THE PARTIES

1     Plaintiff David Matt is a resident of the Town of Cicero, County of Onondaga, State of New York

2     Plaintiff Bonita Stevens is a resident of the Town of Jordan, County of Cayuga, State of New York

3     Upon information and belief, and at all times relevant herein, defendant OnStar corporation, also doing business as OnStar Communications, is and was a Delaware Corporation authorized to do and doing business in the State of New York, with offices for the conduct of said business at 300 Renaissance Center, MC 482-C14-C66, Detroit, Michigan 48265-3000, and is a wholly-owned subsidiary of defendant General Motors Corporation.

4     Upon information and belief, and at all times relevant herein, defendant General Motors Corporation is and was a Delaware corporation authorized to do and

doing business in the State of New York, with offices for the conduct of said business at 300 Renaissance Center, Detroit, Michigan 48265-3000

5. Upon information and belief, the aforesaid OnStar Corporation, d/b/a OnStar Communications [hereinafter "OnStar"], is and was at all times relevant herein soliciting business, transacting business, and doing business in the State of New York and throughout the United States, and is and was advertising, promoting, selling and distributing its OnStar telematics services and products in the State of New York and nationwide

6. Upon information and belief, the aforesaid General Motors Corporation [hereinafter "GM"], is and was at all times relevant herein soliciting business, transacting business, and doing business in the State of New York and throughout the United States, and is and was designing, manufacturing, advertising, promoting, selling and distributing its cars, trucks and vehicle parts, including, but not limited to, Cadillac, Buick, Pontiac, Chevrolet, Saab, Hummer, GMC and Saturn vehicle brands in the State of New York and nationwide, GM is also the parent corporation of co-defendant OnStar Corporation, d/b/a OnStar Communications, and GM installs, sells and services OnStar products in said vehicle brands, and has done so continuously from 1997 to the present

## FACTUAL ALLEGATIONS

7. This case seeks monetary relief to redress, upon information and belief, a systemic, state-wide consumer fraud perpetrated by the defendants OnStar and GM doing business in the State of New York Plaintiffs bring this action on behalf of themselves and on behalf of a Class of similarly-situated consumers in the State of New York who purchased and used OnStar products, services and equipment as installed and sold in GM motor vehicles from approximately the 1997 model year to the present, inclusive.

8. OnStar is a telematic safety communication system for motor vehicles that is designed and built into the vehicle  OnStar defines telematics as "the transmission of data communications between systems and devices," and as designed, marketed, advertised and sold by OnStar, allows OnStar-equipped GM vehicles to obtain emergency assistance and information anywhere in the United States at the push of a button  As currently described on its website, OnStar is "the world's most comprehensive in-vehicle security, communications, and diagnostics system."

9   As set forth by OnStar in its "Owner's Guide" provided with each OnStar-equipped vehicle, "OnStar uses sophisticated Global Positioning System (GPS) satellites to locate your vehicle, and wireless technology to provide the communications link and seamless integration into your vehicle This system allows our OnStar Advisors to pinpoint your vehicle's location precisely This way, our Advisors can provide you with a range of helpful services to protect you and your vehicle "

10   Among those services promised, promoted, warranted and/or provided to plaintiffs and the Class as a result of their OnStar equipment and subscription services, identified by OnStar sales and use literature provided to the New York State consumer, was and is automatic notification of airbag deployment, emergency services, roadside assistance, stolen vehicle tracking, accident assistance, remote door unlock, remote vehicle diagnostics, emergency medical assistance, hands-free communication, route support and direction, emergency ride assistance, travel services, concierge services, and personal calling

11   Personal calling was and is a prepaid additional service and, as described by OnStar in their literature provided with the vehicle, "a nationwide wireless phone service in your vehicle that you can activate simply by pressing a button and using your voice You can use Personal Calling in your vehicle to place or receive calls "

12   Upon information and belief, key to the use of the OnStar service telematics was and is the cellular telephone equipment built into GM vehicles and those of certain other vehicle manufacturers, which OnStar cellular telephone service was originally built on an analog-only network owned by Verizon Wireless, especially important to drivers in rural areas that could only be reached by analog cell phone service

13   Upon information and belief, defendant GM manufactured and/or supplied the analog-only and, later, so-called "analog/digital-ready" OnStar cellular telephone equipment used in OnStar's system and OnStar-equipped vehicles which are the subject of this claim

14   Upon information and belief, the Federal Communications Commission systematically and regularly reviewed and discussed national analog cellular radiotelephone service, including significant changes in such service, as far back as its

"Year 2000 Biennial Regulatory Review," addressing the fact that analog telephone service was in decline and could be terminated nationwide because of rapid advances in digital cellular technology and service, which FCC review made specific reference to the effect of such a change on OnStar's analog-only cellular system

15   Defendants OnStar and GM actively participated in such "Year 2000 Biennial Regulatory Review" cellular service planning by the FCC and so knew or should have known from the FCC's process that analog-only cellular telephone service would be discontinued in favor of digital-only cellular telephone service, which systems are fundamentally incompatible with each other, and that OnStar analog-only equipment would therefore not function on digital-only cellular telephone systems

16   Upon information and belief, in or around 2004 and/or 2005, defendants, while continuing to use and provide analog-only telephone service for OnStar, quietly began to install a combination "analog/digital-ready" cellular telephone in GM's vehicles that received analog cellular signals

17   Upon information and belief, however, before, during and after that time, despite knowing that analog-only cellular service could and then would be terminated through the FCC's "Year 2000 Biennial Regulatory Review" process, defendants GM and OnStar continued to sell vehicles equipped with analog-only equipment they knew would be obsolete and non-functional, or sold the so-called analog/digital-ready cellular units without activating or rendering immediately useable the "digital-ready" portion of the equipment, and defendants knew that activating the "digital-ready" cellular telephone service in vehicles equipped with such interim OnStar telematics would require mandatory and costly hardware and/or software upgrades <u>after</u> the vehicle was sold at the owner's expense before OnStar could function on a digital-only cellular network

18   Defendants OnStar and GM did not inform and/or affirmatively concealed from their new or existing customers these changes and the obsolescence of their OnStar systems, which would cause their OnStar to stop working completely and/or would require expensive dealer-installed upgrades and a mandatory minimum one-year prepaid purchase of OnStar service to remain functional, thereby profiting from their deceptive practices, failure to communicate and/or false advertising and promotion of the OnStar service and capability to all participating New York State and national consumers

19    In or about April 2003, plaintiff David Matt purchased a new 2003 GMC Yukon XL truck equipped with an analog/digital-ready OnStar system from Performance Pontiac/GMC, an authorized GM dealer in Syracuse, New York

20    In or about January 2001, plaintiff Bonita Stevens purchased a new 2001 Pontiac Montana minivan equipped with an analog-only OnStar system from Fox Auto Mall, an authorized GM dealer in Auburn, New York

21    Plaintiffs, unrelated and unknown to one another, separately purchased their individual vehicles for personal, family and household consumer use

22    At the time of purchase, GM and OnStar did not disclose to plaintiffs and/or concealed that their telematics equipment was analog and/or was hybrid analog/digital-ready equipment that would either stop working altogether (the analog equipment) or require an expensive upgrade to remain operable on digital cellular systems (the so-called "analog/digital-ready" equipment)

23    Upon information and belief, the 2001 Pontiac Montana minivan of plaintiff Bonita Stevens is an analog-only telematics system that will no longer function with the aforementioned changes in service, and on or about November 21, 2007, plaintiff Stevens received a letter from OnStar informing her for the first time that her analog OnStar service would be permanently "turned off" between January 1, 2008, and February 18, 2008

24    The 2003 GMC Yukon XL of plaintiff David Matt is an analog/digital-ready telematics system that required plaintiff Matt to expend $232 19 of his own funds to "install [the] OnStar upgrade from analog to digital and reprogram" his OnStar system at his local GMC-authorized dealership on December 12, 2007, which cost also included a mandatory, pre-paid one year purchase of OnStar service in order to have the "upgrade" installed and completed

## CLASS ACTION ALLEGATIONS

25    Plaintiffs bring this action on behalf of themselves individually and all others similarly situated, as a Class action pursuant to Article 9, § 901, *et seq* , of the New York State C P L R. The Class which plaintiffs seek to represent is composed of and defined as follows  All persons in the State of New York who own analog or

analog/digital-ready OnStar-equipped GM motor vehicles  The Class excludes any officers and directors of defendants OnStar and General Motors Corporation

26    This action has been brought and may properly be maintained as a Class action under New York State law  This Class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of C P L R § 901 for maintaining a Class action because

(a)    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable  While the exact number of Class members is unknown at this time, it is ascertainable by appropriate discovery of defendants' books and records, and plaintiffs are informed and believe the Class includes thousands of members in New York State or more

(b)    Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class  These common questions of law and fact include, but are not limited to

(i)    Whether the representations by defendants regarding the use, availability and longevity of OnStar service were untrue, deceptive and/or misleading as to any material fact,

(ii)    Whether defendants' representations, conduct, omissions and/or advertising were likely to deceive consumers into believing that OnStar service would be continuously provided for the life of the product,

(iii)    Whether defendants' representations, conduct, omissions and/or advertising were likely to deceive consumers into believing that the OnStar analog and/or analog/digital-ready systems were fit for their intended use in violation of New York State consumer protection laws,

(iv)    Whether defendants knew or should have known that the OnStar analog and analog/digital-ready systems were defective,

(v)    Whether defendants concealed and/or misled consumers in New York State and nationwide as to the OnStar telematics system defects,

(vi)    Whether defendants engaged in unfair and/or deceptive acts or practices or false advertising, in violation of N Y G B L §§ 349 and 350;

(vii)    Whether defendants' conduct constitutes a breach of express and implied warranties, pursuant to N Y U.C C §§ 2-313, 2-314, 2-315, and 2-318, and/or the common law of New York State,

(viii)   Whether Class members have been injured by defendants' conduct,

(ix)     Whether the members of the Class are entitled to compensatory damages and if so, the appropriate measure and nature of such relief, and

(x)      Whether defendants should be determined and declared financially responsible for providing all statutory and/or Court-ordered notice(s) to New York State Class members in this litigations, including notification of the options available for replacement and/or upgrade of OnStar service including, but not limited to, reimbursement for the full cost of all equipment, software and services required to keep the OnStar systems of each Class member fully operational, and for such other and further relief as to the Court may seem just and proper

(c)      Plaintiffs' claims are typical of the claims of the members of the Class Plaintiffs and all members of the Class sustained damages arising out of defendants' course of conduct in promoting and advertising the OnStar product, equipment and/or service in violation of the law The losses of each member of the Class were caused directly by defendants' wrongful conduct in violation of state statutory law and common law as alleged herein

(d)      The individual representative plaintiffs will fairly and adequately protect the interests of the members of the Class Plaintiffs have no interests that are adverse to the interests of the Class members Plaintiffs purchased their products during the requisite time period Plaintiffs' counsel has experience and success in class action litigation and damages claims for individuals, and will vigorously prosecute this action

(e)      The promotion and marketing of the subject OnStar service took place through a common course of conduct which involved standardized and mass-market advertising, pricing policy, and promotion which expressly stated or implied that the OnStar systems would provide "safety and security" during the ownership years of the Class members As a result, the common issues which affect plaintiff and the Class members herein predominate over those which affect any individual Class member

(f)     A Class action is far superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual members of the Class is impracticable. Further, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial.

(g)     In addition, the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the defendant. By contrast, the conduct of this Class action as a Class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member. Further, the defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or declaratory relief with respect to the Class proper.

### FIRST CAUSE OF ACTION FOR UNFAIR AND/OR DECEPTIVE BUSINESS PRACTICES, IN VIOLATION OF N.Y. G.B.L. § 349

27.     The individual and representative plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege each and every allegation contained in paragraphs "1" through "26," hereof as if fully set forth herein.

28.     At all times relevant herein, in addition to the acts, practices, misrepresentations and/or omissions described above, the advertising, promotional, operation and guide materials and other promotional efforts undertaken by defendants constituted consumer-oriented assertions, representations or statements concerning the use, availability and longevity of OnStar equipment and service which were untrue, deceptive and/or misleading in a material respect and which was known, or by the exercise of reasonable care should have been known, to be untrue, deceptive or misleading by the defendants, which caused plaintiffs and the Class an actual injury or loss, in violation of New York General Business Law § 349.

29     The defendants knew, or should have known, that their conduct and representations expressed or implied, as further set forth above, that OnStar service was and is, among other things, "the world's most comprehensive in-vehicle security, communications, and diagnostics system," that would fully function and be available to consumers during the lifetime of their vehicle, which it was not. These claims relating to such a specific consumer-oriented product offered by defendants across New York State were materially deceptive and misleading to consumers, were likely to deceive the public, and said material and/or omission caused, at minimum (i) an approximately $250.00 loss (the cost of upgrading an analog/digital-ready OnStar unit plus mandatory purchase of a one year OnStar service agreement), plus time lost for attending to such OnStar repairs and/or upgrade, interest, costs, disbursements, and expenses of litigation, including attorney fees, to plaintiffs; and (ii) for those customers with analog-only units, loss of the value of their initial OnStar equipment purchase price, diminution in value of their vehicles, and loss of the use and functionality of the OnStar service going forward from January 1, 2008, to the end of the lifetime of their vehicles, plus time lost for attending to attempted OnStar repairs and/or upgrade, interest, costs, disbursements, and expenses of litigation, including attorney fees, to plaintiff

30     Pursuant to N.Y. G.B.L. § 349, plaintiffs and the Class members are entitled to restitution, their actual damages and/or recovery of treble damages upon defendants' willful and knowing violation of said statute, and costs, disbursements and attorney fees relating thereto

### SECOND CAUSE OF ACTION FOR FALSE AND/OR MISLEADING ADVERTISING, IN VIOLATION OF N.Y. G.B.L. § 350

31     The individual and representative plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege each and every allegation contained in Paragraphs "1" through "30," hereof as if fully set forth herein

32     At all times relevant herein, in addition to the acts, practices, misrepresentations and/or omissions described above, the advertising, promotional, operation and guide materials, and other promotional efforts undertaken by defendants across New York State and nationwide constituted advertising devices, publicly

disseminated by defendants, containing consumer-oriented assertions, representations and/or statements regarding the permanency, use, longevity, and availability of defendants' OnStar services and equipment that were untrue, or which implied information that was untrue, deceptive and/or materially misleading, and which were known, or by the exercise of reasonable care should have been known, to be untrue, deceptive or misleading by defendants, in violation of New York's false advertising statute, New York General Business Law § 350

33    Defendants knew, or should have known, their representations were false in a material respect or falsely implied a material fact about which the public was likely to be misled

34    Pursuant to N Y G B L § 350, plaintiffs and the Class members are entitled to restitution, their actual damages and/or recovery of treble damages upon defendants' willful and knowing violation of said statute, and costs, disbursements and attorney fees relating thereto

### THIRD CAUSE OF ACTION FOR BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

35    The individual and representative plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege each and every allegation contained in Paragraphs "1" through "34," hereof as if fully set forth herein

36    Upon information and belief, defendants expressly and/or impliedly represented to the public that the aforementioned OnStar service and equipment were free from defects, would function for the lifetime of the vehicle, were of merchantable quality, and/or fit for the ordinary purposes for which said product was intended to be used

37    The plaintiff and other members of the Class relied upon the skill, knowledge, judgment, representations, and warranties of defendants with regard to the same

38    Defendants breached said warranties because the OnStar analog-only and analog/digital-ready systems were defective when furnished and will cease to function as of January 1, 2008, but no later than February 18, 2008

39    Further, the representations and warranties of defendants were false, misleading, and inaccurate in that the aforementioned product, when put to the test of

actual performance, proved to be unsound and unsuitable for the purposes for which the same was intended

40   Because of defendants' failure to warn the public, failure to disclose and their issuance of false and misleading statements and concealment, plaintiffs and Class members did not and could not have known about the defective nature of the OnStar analog and analog/digital-ready systems and service

41   As such, the defendants breached their express and/or implied warranties, in violation of, among other statutes and regulations, New York State Uniform Commercial Code §§ 2-313, 2-314, 2-315, and 2-318

42   As a result of the breach of warranties of defendants, plaintiffs and the Class members were caused to sustain economic damages, loss and injury

## REQUEST FOR A JURY TRIAL

43   The individual and representative plaintiffs, on behalf of themselves and all others similarly situated in the Class, request a jury trial of all issues set forth in this Complaint

## PRAYER FOR RELIEF

WHEREFORE, the individual and representative plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against defendants herein as follows

An Order confirming the certification of the plaintiff Class and appointing plaintiffs and their counsel to represent the Class,

On behalf of plaintiff and the Class, the actual and consequential compensatory damages requested herein, together with the interest thereon from the date of purchase of the OnStar products to present,

On behalf of plaintiff and the Class, the punitive and treble damages as requested herein,

For statutory pre- and post-judgment interest;

For reasonable attorneys' fees and the costs and disbursements of this action, and

For such other and further relief which is reasonable under the circumstances and to this Court may seem just and proper

DATED  February 1, 2008

                                              Yours, etc ,

                                              GREENE & REID, PLLC

                                              By: James T Snyder, Esq
                                              Counsel for Plaintiffs
                                              Office and Post Office Address
                                              173 Intrepid Lane
                                              Syracuse, New York  13205
                                              Telephone  (315) 492-9665