HEARING DATE AND TIME: February 3, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: January 27, 2011 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :    09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**NOTICE OF HEARING ON THE DEBTORS' (I) OBJECTION TO PROOF OF CLAIM
NO. 19633 FILED BY LARONDA HUNTER AND ROBIN GONZALES AND, IN
THE ALTERNATIVE, (II) MOTION TO ESTIMATE PROOF OF CLAIM NO. 19633**

       **PLEASE TAKE NOTICE** that upon the annexed Objection, dated December 17,

2010 of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of Proof of

Claim No. 19633 filed by LaRonda Hunter and Robin Gonzales (the "**Putative Class Claim**"),

all as more fully set forth in the Objection, a hearing will be held before the Honorable Robert E.

Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, New York, New York 10004, on

**February 3, 2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this

Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); and (xii) La Ronda Hunter and Robin Gonzales, by and through their

attorneys of record, Ira Spiro, Esq. and Mark Moore, Esq., Spiro Moss Barnes Harrison & Barge,

LLP, 11377 W. Olympic Boulevard, Fifth Floor, Los Angeles, California 90064-1683, so as to

be received no later than **January 27, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response**

**Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
      December 17, 2010

          /s/ Joseph H. Smolinsky
          Harvey R. Miller
          Stephen Karotkin
          Joseph H. Smolinsky

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

**HEARING DATE AND TIME: February 3, 2011 at 9:45 a.m. (Eastern Time)**
**RESPONSE DEADLINE: January 27, 2011 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                           :
In re                                      :        Chapter 11 Case No.
                                           :
MOTORS LIQUIDATION COMPANY, et al.,        :        09-50026 (REG)
      f/k/a General Motors Corp., et al.   :
                                           :
                        Debtors.           :        (Jointly Administered)
                                           :
------------------------------------------------------------x
```

## THE DEBTORS' (I) OBJECTION TO PROOF OF CLAIM
## NO. 19633 FILED BY LARONDA HUNTER AND ROBIN GONZALES AND, IN
## THE ALTERNATIVE, (II) MOTION TO ESTIMATE PROOF OF CLAIM NO. 19633

# TABLE OF CONTENTS

**Page**

Relief Requested ........................................................................................................ 1

Jurisdiction ................................................................................................................ 4

Relevant Factual Background to the Putative Class Claim ........................................ 4

    A.    The Bar Date Order ................................................................... 4

    B.    The Putative Class Claim ........................................................ 4

    C.    Procedural History ................................................................... 6

    D.    Plaintiffs' Experience .............................................................. 7

    E.    The Bryant Settlement ........................................................... 10

The Relief Requested by the Debtors Should Be Approved by the Court ................. 10

I.    As an Initial Matter, Certain Members of the Putative Classes Have Settled and
Released Their Claims ................................................................................... 10

II.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is Discretionary
and Should Be Denied In This Case .............................................................. 11

    A.    Plaintiffs Failed to Comply With Bankruptcy Rule 9014 .................... 13

    B.    Allowing the Putative Class Claim to Proceed as a Class Action Will Not
Be Effective or Efficient ........................................................ 15

    C.    The Putative Class Claim Was Not Certified Prior to the Commencement
Date ................................................................................... 17

    D.    Adequate Notice of the Bankruptcy Case and the Bar Date Was Provided
to the Putative Classes ........................................................... 17

III.    The Putative Class Claim Cannot Satisfy the Requirements of Rule 23 ......... 20

    A.    Neither "Commonality" nor "Typicality" Can Be Established by Plaintiffs ...... 22

    B.    Plaintiffs Are Not Adequate Representatives ..................................... 25

    C.    The Members of the Putative Classes Are Not Properly Identifiable ................. 27

    D.    The Injunctive Relief Sought by the Putative Class Claim Under Rule
23(b)(2) Is Mooted by the Debtors' Liquidation ................................. 29

    E.    Numerous Individual Issues Predominate Over Any Common Questions .......... 29

        a.    Variations in the Law of 51 Jurisdictions Defeat
Predominance ............................................................. 30

        b.    Necessity of Individual Fact Determinations Destroys
Predominance ............................................................. 33

i

## TABLE OF CONTENTS
### (continued)

**Page**

F.      Plaintiffs Cannot Establish that a Class Action Is Superior to Other
        Available Methods for  Fairly and Efficiently Adjudicating this
        Controversy ........................................................................................................ 39

IV.     Alternatively, If the Putative Class Claim Is Not Expunged, It Should Be Subject
        to an Immediate Estimation Proceeding .......................................................... 39

A.      Estimation of Claims ........................................................................................ 39

B.      The Putative Class Claim Must Be Estimated If the Claim Is Not
        Expunged ........................................................................................................ 42

Notice ...................................................................................................................... 43

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981), *reh'g denied*, 450 U.S. 971 (1981)........................................31

*In re Am. Reserve Corp.*,
840 F.2d 487 (7th Cir. 1988) ................................................13

*Andrews v. Am. Tel. & Tel. Co.*,
95 F.3d 1014 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996)................36

*In re Apex Oil Co.*,
107 B.R. 189 (Bankr. E.D. Mo. 1989)................................................40

*In re Baldwin-United Corp.*,
55 B.R. 885 (Bankr. S.D. Ohio 1985)................................................41, 42

*In re Bally Total Fitness of Greater N.Y., Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) .........................11, 12

*Barasich v. Shell Pipeline Co., LP*,
No. Civ. A. 05-4180, 2008 WL 6468611 (E.D. La. June 19, 2008)........................................29

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ................................................24

*Bittner v. Borne Chem. Co., Inc.*,
691 F.2d 134 (3d Cir. 1982)................................................40, 42

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)........................................32

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................29

*In re Brints Cotton Mktg., Inc.*,
737 F.2d 1338 (5th Cir. 1984) ................................................41, 42

*Buckland v. Threshold Enters., Ltd.*,
155 Cal. App. 4th 798 (2007) ................................................24

*In re CD Realty Partners*,
205 B.R. 651 (Bankr. D. Mass. 1997) ................................................41

*Caro v. Procter & Gamble Co*,
18 Cal. App. 4th 644 (1993) ................................................24, 26

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ...............................................................................32, 36, 38, 39

*In re Charter Co.*,
    876 F.2d 866 (11th Cir. 1989), *cert. dismissed,* 496 U.S. 944 (1990).....................................11

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993)...........................................................................................40, 43

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998).........................................................................................30, 36

*Cohen v. DIRECTV, Inc.*,
    101 Cal. Rptr. 3d 37 (2009) ................................................................................................31

*Commander Props. Corp. v. Beech Aircraft Corp.*,
    164 F.R.D. 529 (D. Kan. 1995)...........................................................................................28

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) .............................................................................................22

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993) .....................................20

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) .........................................................................................23

*E. Maine Baptist Church v. Union Planters Bank, N.A.*,
    244 F.R.D. 538 (E.D. Mo. 2007) .......................................................................................22

*Edwards v. McCormick*,
    196 F.R.D. 487 (S.D. Ohio 2000) .......................................................................................25

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005)....................................................................................... passim

*Feinstein v. Firestone Tire & Rubber Co.*,
    535 F. Supp. 595 (S.D.N.Y. 1982).......................................................................................31

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
    177 F.R.D. 360 (E.D. La.), *reconsideration denied*, No. Civ. A. MDL 991,
    1997 WL 191488 (E.D. La. Apr. 17, 1997).........................................................................36

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    174 F.R.D. 332 (D.N.J. 1997)....................................................................................30, 34, 36

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  194 F.R.D. 484 (D.N.J. 2000), *reconsideration denied*,
  No. Civ. A. 96-1814 (JBS), 2001 WL 1869820 (D.N.J. Feb. 8, 2001) ..................................27

*In re Fosamax Prods. Liab. Litig.*,
  248 F.R.D. 389 (S.D.N.Y. 2008) ........................................................................................27

*In re Friedman's, Inc.*,
  363 B.R. 629 (Bankr. S.D. Ga. 2007) .................................................................................22

*Gen. Motors Corp. v. Bryant*,
  285 S.W. 3d 634 (Ark. 2008), *cert. denied*, 129 S. Ct. 901 (2009) ...........................21, 22, 30

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)...........................................................................................................21, 22

*Gonzalez v. Proctor & Gamble Co.*,
  247 F.R.D. 616 (S.D. Cal. 2007) .......................................................................................22

*Henry Schein, Inc. v. Stromboe*,
  102 S.W.3d 675 (Tex. 2002)...............................................................................................32

*Hurd v. Monsanto Co.*,
  164 F.R.D. 234 (S.D. Ind. 1995).........................................................................................36

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g*,
  483 F.3d 70 (2d Cir. 2007)..................................................................................................21

*In re Interco, Inc.*,
  137 B.R. 993 (Bankr. E.D. Mo. 1992).................................................................................40

*In re Jamesway Corp.*,
  No. 95 B 44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997)..........3, 12, 18, 19

*In re Johns-Manville Corp.*,
  45 B.R. 823 (S.D.N.Y. 1984)..............................................................................................41

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
  186 F.R.D. 307 (S.D.N.Y. 1999) ........................................................................................23, 31

*In re Kaiser Group Int'l, Inc.*,
  278 B.R. 58 (Bankr. D. Del. 2002) .....................................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .....................................................................................................28

*Kottler v. Deutsche Bank AG*,
    No. 08 Civ. 7773 (PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010) .........................35, 38

*Lacher v. Superior Court*,
    230 Cal. App. 3d 1038 (1991) ...............................................................................24

*In re Lane*,
    68 B.R. 609 (Bankr. D. Ha. 1986) ........................................................................42

*In re Laser Arms Corp. Sec. Litig.*,
    794 F. Supp. 475 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992) ...................................32

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
    993 F.2d 11 (2d Cir.), *cert. denied*, 510 U.S. 959 (1993) .......................................................25

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ................................................................................22

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)..................................................................................22

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
    170 F.R.D. 417 (E.D. La. 1997)............................................................................39

*In re Mazzeo*,
    131 F.3d 295 (2d Cir. 1997)..................................................................................41

*In re McDonald's French Fries Litig.*,
    257 F.R.D. 669 (N.D. Ill. 2009)............................................................................32

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)..................................................................................35

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ..............................................................27, 33, 35

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)................................................................................20

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ..................................................................14

*Norwest Mortg., Inc. v. Superior Court*,
    85 Cal. Rptr. 2d 18 (1999) ....................................................................................31

*In re Nova Real Estate Inv. Trust*,
    23 B.R. 62 (Bankr. E.D. Va. 1982)........................................................................42

*In re Paxil Litig.*,
218 F.R.D. 242 (C.D. Cal. 2003) ..........................................................................24

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003) ..........................................................................27

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) ....................................................................37

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985), *remanded to*, 732 P.2d 1286 (Kan. 1987),
*cert. denied*, 487 U.S. 1223 (1988) .................................................................30, 31

*Pilgrim v. Universal Health Card, LLC*,
No. 5:09CV879, 2010 WL 1254849 (N.D. Ohio Mar. 25, 2010) ........................33

*In re Poole Funeral Chapel, Inc.*,
63 B.R. 527 (Bankr. N.D. Ala. 1986) ..................................................................41

*In re Prempro Prods. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005) .........................................................................30

*Reid v. White Motor Corp.*,
886 F.2d 1462 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990) ...............11, 22

*In re Ret. Builders, Inc.*,
96 B.R. 390 (Bankr. S.D. Fla. 1988) ....................................................................17

*In re Rezulin Prods. Liab. Litig.*,
210 F.R.D. 61 (S.D.N.Y. 2002), *reconsideration denied*,
224 F.R.D. 346 (S.D.N.Y. 2004) .....................................................................31, 36

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995) ................................39

*In re Sacred Heart Hosp. of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995) ...............................................11, 12, 14, 17

*Sanneman v. Chrysler Corp.*,
191 F.R.D. 441 (E.D. Pa. 2000) .....................................................................27, 34

*Schnall v. AT & T Wireless Servs., Inc.*,
225 P.3d 929 (Wash. 2010) ..................................................................................33

*In re Seaman Furniture Co. of Union Square, Inc.*,
160 B.R. 40 (S.D.N.Y. 1993) ...............................................................................42

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir.), *reh'g denied*, 35 F. App'x 859 (11th Cir.),
*cert. denied*, 537 U.S. 884 (2002) ........................................................................35

*In re S. Cinemas, Inc.*,
256 B.R. 520 (Bankr. M.D. Fla. 2000) ..................................................................40

*In re Standard Metals Corp.*,
817 F.2d 625 (10th Cir.), *reh'g granted*, 839 F.2d 1383 (10th Cir. 1987),
*cert. dismissed*, 488 U.S. 881 (1988) ....................................................................16

*Strain v. Nutri/System, Inc.*,
No. Civ. A. 90-2772, 1990 WL 209325 (E.D. Pa. Dec. 12, 1990) ........................36

*Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*,
Civ. A. No. 89-2181-V, 1992 WL 193661 (D. Kan. July 15, 1992) ......................36

*In re Thomson McKinnon Sec. Inc.*,
133 B.R. 39 (Bankr. S.D.N.Y. 1991),
*aff'd*, 141 B.R. 31 (S.D.N.Y. 1992) ..............................................................11, 12, 13, 15

*In re Thomson McKinnon Sec., Inc.*,
143 B.R. 612 (Bankr. S.D.N.Y. 1992) ........................................................40, 41, 43

*In re Thomson McKinnon Sec., Inc.*,
150 B.R. 98 (Bankr. S.D.N.Y. 1992) ..............................................................13, 15

*In re Trebol Motors Distrib. Corp.*,
220 B.R. 500 (B.A.P. 1st Cir. 1998) ....................................................................17

*In re Tronox Inc.*,
No. 09-10156 (ALG), 2010 WL 1849394 (Bankr. S.D.N.Y. Mar. 6, 2010) ..........14

*Truckway, Inc. v. Gen. Elec.*,
No. Civ. A. 91-0122, 1992 WL 70575 (E.D. Pa. Mar. 30, 1992) ....................36, 38

*In re United Cos. Fin. Corp.*,
277 B.R. 596 (Bankr. D. Del. 2002) ....................................................................11

*In re Vioxx Prods. Liab. Litig.*,
No. 05-1657, 2008 WL 4681368 (E.D. La. Oct. 21, 2008),
*aff'd*, 300 F. App'x 261 (5th Cir. 2008) ..............................................................29

*In re White Farm Equip. Co.*,
38 B.R. 718 (N.D. Ohio 1984) ............................................................................42

*In re Windsor Plumbing Supply Co.*,
170 B.R. 503 (Bankr. E.D.N.Y. 1994) ..................................................................42

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ......................................................... passim

*In re Worldcom, Inc.*,
    343 B.R. 412 (Bankr. S.D.N.Y. 2006) ......................................................... passim

*In re Zenith Labs., Inc.*,
    104 B.R. 659 (D.N.J. 1989) ...................................................................... 15

### STATUTES

11 U.S.C. § 105(a) ..................................................................................... 41, 43

28 U.S.C. § 157 ............................................................................................. 4

28 U.S.C. § 502 ...................................................................................... passim

28 U.S.C. § 503 ............................................................................................. 1

28 U.S.C. § 1334 ........................................................................................... 4

Bus. & Prof. Code § 17200 et seq. ................................................................. 1

CAL. BUS. & PROF. CODE § 17208 .............................................................. 24

CAL. CIV. CODE § 1761(d) ........................................................................... 28

CAL. CIV. CODE § 1782(a) ........................................................................... 23

CAL. CIV. CODE § 1783 ............................................................................... 24

Cal. Veh. Code § 26451 .............................................................................. 31

Mich. Comp. Laws § 257.705 ..................................................................... 31

### OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte,
    *Newburg on Class Actions* § 20.1 (4th ed. 2002) .................................. 15

Fed. R. Bankr. P. 1015 ............................................................................... 43

Fed. R. Bankr. P. 3003 ........................................................................ 1, 17, 18

Fed. R. Bankr. P. 7001 ............................................................................... 11

Fed. R. Bankr. P. 7023 ......................................................................... passim

Fed. R. Bankr. P. 9007 ............................................................................... 43

Fed. R. Bankr. P. 9014 .................................................................................................1, 3, 11, 13

Schwartz, Behrens and Lorber, *Tort Reform Past, Present and Future:*
   *Solving Old Problems and Dealing with "New Style" Litigation*,
   27 Wm. Mitchell L. Rev. 237 (2000) ........................................................................................30

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") respectfully

represent:

### **Relief Requested**

1.      The Debtors file this objection (the "**Objection**") pursuant to section 502

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (the "**Bar Date Order**") [ECF No. 4079], establishing November 30, 2009, as the bar

date (the "**Bar Date**").  Through this Objection, the Debtors seek entry of an order disallowing

and expunging Proof of Claim No. 19633 (the "**Putative Class Claim**") filed by LaRonda

Hunter and Robin Gonzales (collectively, the "**Plaintiffs**"), individually and on behalf of a class

that consists of California sub-class members (the **"Putative California Sub-Class"**) and

nationwide sub-class members (the **"Putative Nationwide Sub-Class"**) (collectively, the

**"Putative Classes"**).  A copy of the Putative Class Claim is annexed hereto as **Exhibit "A."**

2.      Attached to the Putative Class Claim is the Fourth Amended Complaint

For:  (1) Violation of California's Consumer Legal Remedies Act ("**CLRA**"), Civil Code § 1750

et seq.; and (2) Violation of California's Unfair Competition Act ("**UCL**"), Bus. & Prof. Code §

17200 et seq. (the "**Putative Class Complaint**") on behalf of the Putative Classes.  The Putative

Class Complaint alleges causes of action for violation of the CLRA and violation of the UCL. (*See* Putative Class Compl. ¶¶ 104-44.)

3. These claims purportedly arise from the Debtors' marketing and sale of certain 1999-2005 model year trucks and sport utility vehicles containing allegedly defective parking brake systems (the "**Debtors' Products**"). (*See id.* ¶ 5.) The Putative Class Complaint alleges that Debtors' Products were defective and that despite having knowledge of this fact, the Debtors made false, misleading, and unlawful representations to consumers, including Plaintiffs and others similarly situated, about the parking brakes installed in certain of MLC's trucks and utility vehicles. (*See id.* ¶¶ 1-3.)

4. Ultimately, Plaintiffs seek, through the Putative Class Complaint, *inter alia*, (1) to certify the Putative Classes, (2) actual damages, (3) restitution and disgorgement, (4) statutory damages, (5) injunctive relief, and (6) punitive damages. (*See id.* at 52.) The Putative Class Claim states that the amount of the claim is "unknown," and the Putative Class Complaint does not allege an estimated amount of damages or monetary relief sought. (*See generally id.*; Putative Class Claim at 1.) The Putative Classes were not certified before June 1, 2009 (the "**Commencement Date**"), when each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and Plaintiffs have not sought class certification from this Court.

5. As discussed below, whether to permit a class claim to proceed lies within the sound discretion of the Court. In exercising their discretion, courts consider, among other things, whether (i) the claim satisfies the strict requirements of Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), and (ii) the benefits that generally support class certification in civil litigation are realizable in the bankruptcy case.

6.      Here, the Putative Class Claim should be disallowed in its entirety because, *inter alia*, (i) Plaintiffs have failed to satisfy the basic procedural requirements of Bankruptcy Rule 9014, (ii) the Putative Classes do not satisfy Rule 23, (iii) even if the Putative Classes did satisfy Rule 23, the benefits that generally support class certification in civil litigation are not realizable in these chapter 11 cases, and (iv) certain of claims have been settled and released.  Among other reasons, the Putative Class Claim does not satisfy Rule 23 because Plaintiffs are neither typical of the Putative Classes nor adequate class representatives.  Although Plaintiffs seek to represent persons who purchased vehicles with two distinct parking brake systems – the PBR and TRW Systems (defined below) – they lack standing to represent those with TRW Systems because neither Plaintiff had a vehicle with a TRW System.  Further, Plaintiffs' claims on behalf of those they arguably might have standing to represent – the members of the Putative Classes with PBR Systems and automatic transmissions – have been largely mooted by the prior class action settlement between the Debtors and Boyd Bryant, individually and as class representative of a class of persons with 1999-2002 1500 series trucks and pickups with automatic transmissions and PBR Systems  (the "**Bryant Settlement**").  In addition, the need for injunctive relief has been mooted and would provide no deterrent effect here, as the Debtors no longer operate a business and are liquidating.

7.      Further, despite notice by publication of the Bar Date to the putative class members encompassed by the Putative Class Claim, other than the claim filed by Plaintiffs, and the claims filed in connection with the Bryant Settlement, there have been no claims filed in this Court seeking damages or requesting relief in connection with the Debtors' Products.[1]  Because

---

[1] Because the Putative Classes were not certified before Commencement Date, the members of the Putative Classes could not rely on the Putative Class Claim to absolve them from compliance with the Bar Date Order to preserve their claims.  *See In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) (denying motion for class certification of class claim where "[n]o class was pre-certified such that purported

the Debtors have provided such notice, it would be unfair and unnecessary to burden the

Debtors' estates with the additional cost and associated delay of providing these potential

claimants with a second opportunity to assert claims as class claimants.  Further, litigation of the

Putative Class Claim would further deplete the pool of assets available for distribution to the

Debtors' creditors.  As a result, the Court should (i) disallow the Putative Class Claim in its

entirety, or (ii) in the alternative, allow the Putative Class Claim to proceed only as an individual

claim on behalf of Plaintiffs and not as a class claim.

<u>**Jurisdiction**</u>

8.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>**Relevant Factual Background to the Putative Class Claim**</u>

**A.    The Bar Date Order**

9.    On September 16, 2009, this Court entered the Bar Date Order which,

among other things, established November 30, 2009, as the Bar Date and set forth specific

procedures for filing proofs of claims.  The Bar Date Order requires, among other things, that a

proof of claim must "set forth with specificity" the legal and factual basis for the alleged claim

and include supporting documentation or an explanation as to why such documentation is not

available.  (Bar Date Order at 2.)

**B.    The Putative Class Claim**

10.    On November 4, 2009, LaRonda Hunter and Robin Gonzales filed a proof

of claim attaching the Putative Class Complaint.  The Putative Class Complaint sets forth causes

of action for violations of the California's CLRA and UCL on behalf of the Putative Classes,

---

class members who did not choose to file a proof of claim should or could have had any reasonable expectation that
they need not comply with the Bar Date Order").

which consist of a Putative California Sub-Class and a Putative Nationwide Sub-Class.  (S*ee*

Putative Class Compl. ¶ 95.)  Specifically, the sub-classes are defined as:

> **"Putative California Sub-Class":**  The California Class that
> Plaintiffs seek to represent [] consists of all persons and entities
> who purchased or leased, or will purchase or lease, a Subject
> Vehicle in California.
>
> **"Putative National Sub-Class":**  The National Class that
> Plaintiffs seek to represent [] is defined to include all persons and
> entities who purchased or leased, or will purchase or lease, a
> Subject Vehicle in the United States. [2]

(*Id.*)

11.    The Subject Vehicles[3] include at least ten different models of manual and

automatic transmission vehicles from varying ranges of model years, but all between model

years 1999-2004, and involve two different brands of parking brake systems:  (1) those designed

and manufactured by supplier PBR International (the "**PBR System**"), and (2) those utilizing

parking brake systems designed by supplier TRW Automotive (the "**TRW Systems**").  (*See id.*

¶ 22.)  The Putative Class Complaint alleges that the PBR and TRW Systems are defective

because they are subject to premature wear, which could cause premature parking brake failure.

(*See id*. ¶ 26.)  Notably, the PBR and TRW Systems were designed independently from one

another by different suppliers, were used in different vehicles, and employ distinct configurations

---

[2]  The Putative California Sub-Class and Putative National Sub-Class specifically exclude (i) "any claims seeking damages for personal injuries or property damage resulting from defects," (ii) "Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person," and (iii) "any judge in this case who may preside over this case."  (*Id.*)

[3] Plaintiffs allege the "**Subject Vehicles**" include "at least the following:  2002-2003 Cadillac Escalade, Escalade EXIST, 2003 Cadillac Escalade ESV, 1998-2003 Chevrolet Blazer, 1999-2003 Chevrolet Silverado 1500 Series (trucks), 2000-2003 Chevrolet Suburban, Tahoe (1500 Series), 2002-2003 Chevrolet TrailBlazer, Trailblazer EXIST, 1998-2003 GMC Jimmy, 1999-2003 GMC Sierra 1500 Series, 2000-2003 GMC Yukon 1500 Series, 2002-2003 GMC Envoy, Envoy XL, 2002-2003 Chevrolet Avalanche 1500 Series Models, and 1998-2003 Oldsmobile Bravada."  (*See id*. ¶ 5.)

to effectuate vehicle immobilization.  Neither of the named Plaintiffs owns a vehicle with the

TRW System.

12.     The Putative Class Complaint asserts that the Debtors violated the CLRA

by (i) misrepresenting that the subject vehicles conform to all applicable U.S. Federal Motor

Vehicle Safety Standards; (ii) representing that the subject vehicles have characteristics and

benefits that they do not have; (iii) representing that the subject vehicles are of a particular

standard, quality, or grade that they are not; (iv) advertising the subject vehicles with an intent

not to sell them as advertised; (v) misrepresenting that a transaction confers or involves legal

rights, obligations, or remedies of Plaintiffs and other members of the Putative Classes

concerning the Subject Vehicles when they do not; (vi) representing that the Subject Vehicles

were supplied in accordance with previous representations when they were not; and (vii)

inserting an unconscionable provision in the contract/warranty that was provided along with the

sale of each Subject Vehicle.  (*See id.* ¶ 108.)  The Putative Class Complaint also alleges that

these acts, omissions, and misrepresentations resulted in violations of California's UCL, as they

constitute "unlawful, unfair, fraudulent, untrue and/or deceptive" advertising.  (*See id.* ¶ 131.)

13.     Plaintiffs seek, through the Putative Class Complaint, *inter alia*, (1) to

certify the Putative Classes, (2) actual damages, (3) restitution and disgorgement, (4) statutory

damages, (5) an order enjoining the Debtors from "continuing to falsely market and advertise,

conceal material information and conduct business via the unlawful and unfair business acts and

practices complained of herein, and ordering [the Debtors] to engage in corrective notice," (6)

punitive damages, (7) attorneys' fees and costs, and (8) pre-judgment interest.  (*See id.* at 52.)

## C.     Procedural History

14.     The original complaint was filed on November 14, 2004, in the Superior

Court of California, in the County of Los Angeles, Central District (the "**California Court**").  It

was amended four times, and the Putative Class Complaint is the live pleading in that action (the "**Lawsuit**").  Plaintiffs filed a motion for class certification on January 28, 2009.  GM filed a response in opposition to the motion for class certification on February 16, 2009, and Plaintiffs filed their reply on March 2, 2009.

15.     The California Court, however, never ruled on the issue of class certification.  In recognition of a parallel Arkansas state court case that included a class definition that significantly overlapped with the definition of the Putative Classes, on March 3, 2009, the California Court stayed the Lawsuit with respect to all PBR System-related claims, and on April 3, 2009, vacated the trial setting.  Shortly thereafter, on June 8, 2009, the Lawsuit was stayed pursuant to the automatic stay.

16.     Thus, the Putative Classes were not certified before the Commencement Date, and Plaintiffs have not sought class certification from this Court.

**D.      Plaintiffs' Experience**

17.     <u>Ms. LaRonda Hunter</u>.  In February 2002, Ms. Hunter purchased a 2001 Chevrolet Yukon 1500 Series with an automatic transmission from Justice Auto, a used car dealer formerly located in Carson, California.  (*See* Deposition of LaRonda Hunter ("**Hunter Dep.**") at 30:17-32:23, annexed hereto as **Exhibit "B."**)  Ms. Hunter admits that she did not see or hear any of the purported misrepresentations alleged in the Putative Class Complaint.  (*Id.* 36:20-23; 37:7-13, 49:23-50:3, 58:5-19.)  Although Ms. Hunter asserted during discovery in the Lawsuit that she bought her vehicle "new" with only 1,800 miles, she later produced a title certificate reflecting that the vehicle had 19,255 miles when she purchased it used.  (*Id.* 32:19-20; Certificate of Title, annexed hereto as **Exhibit "C"**; Supp'l Resp. to First Set of Special Interrogs. at 5, annexed hereto as **Exhibit "D."**)  Thus, Ms. Hunter has paid no money to GM or the Debtors, directly or indirectly, in connection with her vehicle purchase.

18.    Ms. Hunter has testified that as of the time she filed suit, she had not

experienced any problem with the PBR System in her vehicle.  (*See id.* at 76:17-22.)  She further

testified that it was not her idea to start the underlying lawsuit, and that she never saw the

original complaint, or the first, second, or third amended complaints.  (*See id.* 103:3-104:11;

119:19-20; 122:6-9.)

19.    After filing suit, Ms. Hunter sent a letter to General Motors Corporation

("**GM**") and demanded that it repair her vehicle.  (*See* Ltr. from I. Spiro to R. Lutz dated Jan. 12,

2005 at 2, annexed hereto as **Exhibit "E."**)  On February 10, 2005, in response, GM offered to

inspect Ms. Hunter's vehicle, repair it if necessary, and provide a loaner vehicle during the

inspection and repair, free of charge.  (*See* Ltr. from K. Landan to I. Spiro, dated Feb. 10, 2005 at

2, annexed hereto as **Exhibit "F."**)  Ms. Hunter ignored GM's offer.

20.    Thereafter, in April 2005, Ms. Hunter claims the ABS and parking light in

her vehicle came on, and that caused her to take the vehicle to a mechanic for repair.  (*See*

Hunter Dep. at 77:18-78:9, 80:5-14.)  Ms. Hunter testified that she had not experienced any

problem with the parking brake, just that the ABS and parking brake lights were allegedly

activated.  (*Id.* 76:17-77:21.)  Ms. Hunter testified that she incurred costs of $260 to have her

vehicle repaired by an automotive facility not affiliated with GM, (*id.* at 106:14-18), rather than

notifying GM or taking advantage of GM's offer to inspect and potentially repair her vehicle free

of charge.  Further, she admits that Power Chevrolet (an independent dealer) repaired the ABS in

her vehicle on several occasions before and after she filed suit, but claims Power Chevrolet

would not fix the parking brake, or explain to her whether anything was wrong with it, and, if so,

why they would not fix it.  (*Id.* at 77:22-80:4.)

21.    Ms. Hunter claims that it was not until December 2008, after she had the

allegedly defective parking brake replaced and more than four years after she filed suit, that she

allegedly first experienced her vehicle "roll" with the parking brake set.  (*Id.* at 84:2-85:2.)[4]

22.   Ms. Robin Gonzales.  Ms. Gonzales purchased a 2001 Chevy Silverado

with a PBR System and an automatic transmission in July 2001 from Anaheim Chevrolet, an

independent GM dealer.  (*See* Deposition of Robin Gonzales ("**Gonzales Dep.**") at 48:3-16,

58:10-13, annexed hereto as **Exhibit "G."**)  Ms. Gonzales testified that she did not talk to the

dealer about the brakes on the truck before buying it, and that nothing that the salesperson said

induced her to buy it.  (*Id.* at 49:8-18, 52:9-17.)  Ms. Gonzales never saw any ads or other

representations from GM related to the parking brake, and she did not read the Owner's Manual

when she bought the truck.  (*Id.* at 121:6-9, 121:21-122:4.)  When asked if she would buy a

different truck if she knew what she knows now, Ms. Gonzales testified that she would not.  (*Id.*

45:8-11.)

23.   At some point in 2004 or 2005, after her three-year warranty expired, Ms.

Gonzales claims that she experienced parking brake failure when she conducted an experiment in

her driveway at home.  (*Id.* at 59:10-23.)  Ms. Gonzales testified that for reasons she could not

recall, she decided to put her automatic transmission in neutral in her driveway and engage the

parking brake (which is not a recommended way of immobilizing the vehicle).  (*Id.* at 61:1-

62:20, 63:16-64:3.)  Ms. Gonzales never had a problem with the parking brake when used as

directed in her Owner's Manual with the transmission in park.  (*Id.* at 64:3-6.)

---

[4] When asked to describe how far the vehicle allegedly "rolled" when this happened, Ms. Hunter gestured several inches.  (*Id.* at 85:5-11, 92:1-9.)  Ms. Hunter's description is not consistent with the "roll away" concerns that have been investigated in the past by the National Highway Traffic Safety Administration.

24.     When Ms. Gonzales had her parking brake replaced in November 2005, it was her attorneys who recommended the repair shop where she took her vehicle, and her attorneys paid the $417 to repair her parking brake.  (*Id.* at 90:11-91:1, 92:18-20, 93:9-94:4.)

### E.     The Bryant Settlement

25.     On November 3, 2010, this Court entered a judgment (the "**Judgment**") approving the Bryant Settlement between the Debtors and Boyd Bryant, individually and as class representative of a class of persons with 1999-2002 1500 series trucks and pickups with automatic transmissions and PBR Systems (the "**Bryant Settlement Class**").  (*See* Judgment [ECF No. 70], *Bryant v. Motors Liquidation Co., et al.*, Adversary No. 09-00508 (REG) (S.D.N.Y. Nov. 3, 2010).)  The class definition in the Bryant Settlement overlaps with the definitions of the Putative Classes, as both include persons who owned 1999-2002 1500 series pickups and trucks with automatic transmissions and PBR Systems.  (*Compare* Judgment ¶ 3 *with* Putative Class Compl. ¶ 5.)  Pursuant to the Bryant Settlement and the Court's Judgment, the members of the Bryant Settlement Class have settled and released their claims against the Debtors.  (*See* Judgment ¶¶ 12-15.)

### The Relief Requested by the Debtors Should Be Approved by the Court

### I.     As an Initial Matter, Certain Members of the Putative Classes Have Settled and Released Their Claims

26.     Preliminarily, to the extent Plaintiffs seek to represent members of the Bryant Settlement Class, these claims have been settled and released.  Pursuant to this Court's Judgment, notice of the Bryant Settlement has been provided to the members of the Bryant Settlement Class, and any members of the Bryant Settlement Class who submitted claim forms have released their claims against the Debtors.

## II.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is Discretionary and Should Be Denied In This Case

27.    There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (noting that class action device may be utilized in appropriate contexts, but should be used sparingly).  Application of Bankruptcy Rule 7023 to class proofs of claim[5] lies within the ***sound discretion*** of the court.[6]  In determining whether to exercise discretion and permit a class proof of claim, courts primarily look at (i) whether the class claimant moved to extend the application of Rule 23 to its proof of claim; (ii) whether the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy; and (iii) whether the claims which the proponent seeks to certify fulfill the requirements of Rule 23.  *See In re Bally Total Fitness*, 402 B.R. at 620; *In re Woodward*, 205 B.R. at 369; *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("In

---

[5] Part VII of the Bankruptcy Rules, which includes Bankruptcy Rule 7023, only applies to adversary proceedings. *See* Fed. R. Bankr. P. 7001.  Bankruptcy Rule 9014, however, adopts certain of the rules from Part VII for application in contested matters.  *See* Fed. R. Bankr. P. 9014.  Thus, plaintiffs seeking the application of Bankruptcy Rule 7023 (and by implication, Rule 23) to a class proof of claim are required to *move* under Bankruptcy Rule 9014 for a court to apply the rules in Part VII.  Fed. R. Bankr. P. 9014; *accord In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating that "[f]or a Class Claim to proceed . . . the bankruptcy court must direct Rule 23 to apply").  *See, e.g., Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990); *In re Charter Co.*, 876 F.2d 866, ?/876 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990) (holding that proof of claim filed on behalf of class of claimants is valid, but that "does not mean that the appellants may proceed, without more, to represent a class in their bankruptcy action.  Under the bankruptcy posture of this case, Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

[6] *See, e.g., In re Bally Total Fitness*, 402 B.R. at 620 ("[C]ourts may exercise their discretion to extend Rule 23 to allow the filing of a class proof of claim."); *In re Thomson McKinnon Sec. Inc.*, 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (Bankruptcy Rule 7023 and Rule 23 "give the court substantial discretion to consider the benefits and costs of class litigation") (citing *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988)), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992); *accord In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("Whether to certify a class claim is within the discretion of the bankruptcy court."); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002) (same); *Reid*, 886 F.2d at 1469-70 (stating that "Rule 9014 authorizes bankruptcy judges, within their discretion, to invoke Rule 7023, and thereby Fed. R. Civ. P. 23, the class action rule, to 'any stage' in contested matters, including, class proofs of claim."); *In re Charter Co.*, 876 F.2d at 876 ("[u]nder the bankruptcy posture of this case Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

exercising that discretion, the bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23, Fed. R. Civ. P., to a 'contested matter,' *i.e.*, the purported class claim; if and only if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied.").

28.    When evaluating these requirements, courts have considered a variety of factors, including, *inter alia*:

- ***whether claimants are in "compliance with the Bankruptcy procedures regulating the filing of class proofs of claim in a bankruptcy case***," *see, e.g., In re Thomson*, 133 B.R. at 41 (disallowing class proof of claim where named plaintiff failed to file Rule 9014 motion requesting that Rule 7023 apply);

- ***whether the debtor intends to liquidate***, *see In re Thomson*, 133 B.R. at 41 (noting that context of liquidating chapter 11 plan supports rejection of class proofs of claim);

- ***whether or not a purported class was previously certified***, *see, e.g., In re Bally Total Fitness*, 402 B.R. at 620 (refusing to allow class proof of claim where class was not certified pre-petition); *In re Sacred Heart Hosp.*, 177 B.R. at 23 (classes certified pre-petition are "best candidates" for class proof of claim);

- ***whether the class claim device will result in "increased efficiency, compensation to injured parties, and deterrence of future wrongdoing by the debtor***," *see In re Woodward*, 205 B.R. at 376; *accord In re Thomson*, 133 B.R. at 40 ("Manifestly, the bankruptcy court's control of the debtor's affairs might make class certification unnecessary.");

- ***whether the entertainment of class claims would subject the administration of the bankruptcy case to undue delay***, *see, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 ("[A] court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate."); and

- ***whether or not adequate notice of the bar date was afforded to potential class members***, *see In re Jamesway Corp.*, 1997 WL 327105, at *10 (refusing to certify class where adequate notice of bar date was afforded to potential class members, and thus to certify class would be "unwarranted, unfair, and possibly violate

the due process rights of other creditors") (internal quotations omitted).

"If application of Bankruptcy Rule 7023 is rejected by the bankruptcy court in an exercise of discretion . . . the result will be that class claims will be denied and expunged." *In re Thomson*, 133 B.R. at 40-41. As set forth below, the Court should exercise its discretion to reject the application of Bankruptcy Rule 7023 and to disallow the Putative Class Claim.

### A.    Plaintiffs Failed to Comply With Bankruptcy Rule 9014

29.    A plaintiff who seeks to bring a class proof of claim must comply with the applicable procedural requirements. *See, e.g.*, *In re Am. Reserve Corp.*, 840 F.2d at 494 (noting the applicability of Bankruptcy Rule 9014 and its procedural requirements); *see In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7 (same). These procedural requirements are not complicated. Because a claim "cannot be allowed as a class claim until the bankruptcy court directs that Rule 23 apply," the putative class representative must file a motion with the bankruptcy court requesting the application of Rule 23. *In re Woodward*, 205 B.R. at 368, 370. ("Rule 23 does not say who must make a timely motion, but the duty ordinarily falls on the proponent of the class action.").

30.    The requirement that a class claimant timely move under Bankruptcy Rule 9014 to incorporate Rule 23 is intended to protect a debtors' estate from undue delay of the debtors' plan process. *See In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992). In *In re Woodward*, another case in which there was no pre-bankruptcy class certification, the court stated that the class claim should be disallowed if the putative class representative did not expeditiously move in the bankruptcy case for certification of its class claim, as a lengthy certification battle could delay the administration and distribution of the bankruptcy estate. *See In re Woodward*, 205 B.R. at 370; *see also In re Ephedra Prods. Liab.*

*Litig.*, 329 B.R. at 5 (disallowing class products liability claim because "it is simply too late in

the administration of this Chapter 11 case to ask the Court to apply Rule 23 to class proofs of

claim").  As of the date hereof, approximately a year and a half after the Commencement Date

and more than a year after the Bar Date, Plaintiffs have not sought permission of the Court to file

a class proof of claim or moved for certification of the class.  The Debtors have already filed

their proposed plan, the disclosure statement has been approved, and a confirmation hearing is

planned to occur soon.  If allowed to proceed, the Putative Class Claim will unduly delay the

administration of the Debtors' estates and the Debtors' ability to consummate a plan of

liquidation ("**Plan**") because the adjudication of the claim and its attendant class-certification

issues could take months to conclude.  *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. at

24 (disallowing class claim where allowance would cause "very substantial and apparently

unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is

presently a plan before us for imminent confirmation"); *In re Ephedra Prods. Liab. Litig.*, 329

B.R. at 5 (disallowing class claim where liquidating plan was already submitted and "[a]pplying

Rule 23 to class claims now would initiate protracted litigation that might delay distribution of

the estate for years"); *In re Musicland Holding Corp.*, 362 B.R. 644, 656 (Bankr. S.D.N.Y. 2007)

(Bernstein, J.) (refusing to allow class claim where it would "seriously delay the administration

of the case" because debtors had already filed confirmation motion and court had approved

disclosure statement); *see also In re Tronox Inc.*, No. 09-10156 (ALG), 2010 WL 1849394, at *3

(Bankr. S.D.N.Y. Mar. 6, 2010) (Gropper, J.) (refusing to enlarge time to file class proof of

claim where such claim could "likely result in substantial delay and expense and compromise the

parties' efforts to formulate a plan on the present timeline").  Accordingly, this Court should

enforce these procedural requirements and disallow the Putative Class Claim.  *See, e.g., In re*

*Woodward*, 205 B.R. at 369-71; *In re Thomson*, 150 B.R. at 100-01; *In re Thomson*, 133 B.R. at 41; *In re Zenith Labs., Inc.*, 104 B.R. 659, 664 (D.N.J. 1989); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7.

> **B.    Allowing the Putative Class Claim to Proceed as a Class Action Will Not Be Effective or Efficient**

31.    For a class action to proceed, "the benefits that generally support class certification in civil litigation must be realizable in the bankruptcy case." *In re Woodward*, 205 B.R. at 369 (citing *In re Mortg. & Realty Trust*, 125 B.R. 575, 580 (Bankr. C.D. Cal. 1991)).  In this case, neither the purported class nor the Court would benefit from recognizing a class proof of claim and allowing a class action to proceed.

32.    The Putative Class Claim does not provide for the most effective or efficient means of determining the rights of the members of the Putative Classes.  First, a class proof of claim is not appropriate if individual issues of fact predominate over questions common to the members of the purported class.  Here, the Putative Classes allege claims for deceptive and fraudulent advertising and misrepresentation.  (*See* Putative Class Compl. ¶ 108.)  The court in *In re Woodward*, in considering putative class claims for false advertising and misrepresentation, found that a class action is "generally not appropriate to resolve claims based upon common law fraud." *In re Woodward*, 205 B.R. at 371.

33.    Second, in general, the Bankruptcy Code and Bankruptcy Rules can provide the same benefits and serve the same purposes as class action procedures in normal civil litigation.  *See id.* at 376 ("a bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum"); 6 Herbert Newberg & Alba Conte, *Newburg on Class Actions* § 20.1 at 581 (4th ed. 2002) (commenting that "bankruptcy proceedings are already capable of handling group claims, which operate essentially as statutory

class actions"); *see also In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir.), *reh'g granted*, 839 F.2d 1383 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881 (1988).  Although members of the Putative Classes can no longer file their claims because the Bar Date has passed, they had ample notice of the Bar Date and opportunity to take advantage of these bankruptcy procedures.

34.     Third, the bankruptcy claims process is, in some respects, superior to class action procedures.  As the court observed in *In re Woodward*:

> [W]hile the class action ordinarily provides compensation that cannot otherwise be achieved by aggregating small claims, the bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions. In addition, there may be little economic justification to object to a modest claim, even where grounds exist. Hence, a creditor holding such a claim may not have to do anything more to prove his case or vindicate his rights.

205 B.R. at 376 (citations omitted).  Here, notwithstanding the chance to do so, none of the members of the Putative Classes, save for the named Plaintiffs, filed a claim against the Debtors.

35.     The facts of the instant case are similar to the facts of *In re Woodward*, where the Honorable Judge Bernstein exercised his discretion to deny the class claim, finding that "the class claim will not deter an insolvent, non-operating debtor's management or shareholders, or induce them to police future conduct [where] . . . the debtor has . . . a liquidating plan that wipes out equity.  The managers have moved on to other jobs – the debtor has closed its doors – and the prosecution of the class action will [] not affect how they act in the future."  205 B.R. at 376.  Here, the Debtors have discontinued the sale of the Debtors' Products and have subsequently sold substantially all their assets.  The Debtors are no longer operating a business. For these reasons, the benefits that generally support class certification are not present here, and the Court should deny application of Bankruptcy Rule 7023.

### C.    The Putative Class Claim Was Not Certified
Prior to the Commencement Date

36.    A number of courts have held that class proofs of claim are generally

inappropriate where a class representative was not certified prepetition in a non-bankruptcy

forum.  *See, e.g.*, *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998);

*In re Sacred Heart Hosp.*, 177 B.R. at 23; *In re Ret. Builders, Inc.*, 96 B.R. 390, 391 (Bankr.

S.D. Fla. 1988); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5.  The court in *Sacred Heart*

*Hospital* held that use of the class proof of claim device in bankruptcy cases may be appropriate

in certain contexts, but "such contexts should be chosen most sparingly."  *In re Sacred Heart*

*Hosp.*, 177 B.R. at 22.  Specifically, the *Sacred Heart Hospital* court noted that cases where (i) a

class has been certified prepetition by a nonbankruptcy court, or (ii) a class action has been filed

and allowed to proceed as a class action in a nonbankruptcy forum for a considerable time

prepetition, may present appropriate contexts for recognizing a class proof of claim.  *See id.*

***However, the Debtors have been unable to find a single case within the Second Circuit in***

***which a pre-bankruptcy certification class claim was allowed.***

37.    The Putative Classes were not certified at the time of the Debtors' chapter

11 filing, and they remain uncertified today.  For this reason alone, the Putative Class Claim

should be disallowed and expunged.

### D.    Adequate Notice of the Bankruptcy Case and the
Bar Date Was Provided to the Putative Classes

38.    One of the principal goals of the Bankruptcy Code is to ensure that

creditors of equal rank receive equal treatment in the distribution of a debtor's assets.  The

Bankruptcy Code and Bankruptcy Rules, therefore, require creditors to file proofs of claim

before a bar date.  *See* 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(3).  Regardless of how

worthy their claims may be, claimants who fail to file before an applicable bar date "shall not be

treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed.

R. Bankr. P. 3003(c)(2).  These same procedural hurdles must be met by all creditors.

39.    In determining whether a class proof of claim should be allowed, courts

consider whether adequate notice of the bar date was afforded to potential class members.  *See In*

*re Jamesway Corp.*, 1997 WL 327105, at *8.  As that court stated:

> The proper inquiry is whether [the debtor] acted reasonably
> in selecting means likely to inform persons affected by the
> Bar Date and these chapter 11 proceedings, not whether
> each claimant actually received notice . . . [a]s to those
> plaintiffs who might not have received actual notice of the
> Bar Date, we find that by complying with the terms of the
> Bar Date Order, mailing a Claim Package to every known
> creditor and publishing notice of the Bar Date, [the
> Debtor's] actions satisfy due process.

*Id.* (internal citations omitted).

40.    In this case, the members of the Putative Classes received proper notice of

the Debtors' chapter 11 cases and the Bar Date in accordance with the provisions of the Bar Date

Order.  At great expense to their estates, the Debtors published notice of the Bar Date nationwide

in *The Wall Street Journal* (Global Edition – North America, Europe, and Asia), *The New York*

*Times* (National), *USA Today* (Monday through Thursday, National), *Detroit Free Press, Detroit*

*News, LeJournal de Montreal* (French), *Montreal Gazette* (English), *The Globe and Mail*,

(Canada), and *The National Post*.  (*See* Bar Date Order at 7.)  Providing individual notice to all

owners of the Debtors' Products would be impossible or, at minimum, prohibitively expensive,

as customers regularly resell their vehicles and the Debtors would have no way to know the

identities of the current owners of their products.  Providing notice of the Debtors' bankruptcy

cases and the Bar Date by publication, however, constituted a viable alternative to the

impracticability, or perhaps even impossibility, of identifying and providing individual notice to

each of the consumer purchasers of the Debtors' Products.  Additionally, in this case, in

particular, one would be hard-pressed to find a handful of Americans who were not aware of the

chapter 11 filing of General Motors Corporation.

      41.     No member of the Putative Classes (save for Plaintiffs and those related to

the Bryant Settlement) has filed a claim, and members of the Putative Classes who failed to file

proofs of claim could not be said to have relied on the filing of the Putative Class Claim because

the Putative Classes were not certified as of the Commencement Date.  *See In re Jamesway*

*Corp.*, 1997 WL 327105, at *10 (denying motion for class certification of class claim where

"[n]o class was pre-certified such that purported class members who did not choose to file a

proof of claim should or could have had any reasonable expectation that they need not comply

with the Bar Date Order").  Further, no similar suits have been filed in California since the

inception of the underlying litigation in 2004.  Moreover, there is significant overlap between the

Putative Classes and the class involved in the adversary proceeding styled *Boyd Bryant v. Motors*

*Liquidation Co., et al.*, Adversary No. 09-00508 (REG), which involves purchasers of model

year 1999-2002 1500 Series trucks and pickups with automatic transmissions and PBR Systems,

which has been settled with the Debtors.

      42.     Because the Debtors have provided notice by publication to the members

of the Putative Classes encompassed by the Putative Class Claim, it would be unfair and

unnecessary to burden the Debtors' estates with the additional cost and associated delay of

providing potential claimants with a second notice.  Further, the only type of notice the Debtors

could reasonably provide today would be another publication notice, effectively duplicating the

notice they have already provided and extending the Bar Date for a particular sub-group of

general unsecured creditors who are not entitled to special treatment under the Bankruptcy Code.

Since not a single member of the alleged Putative Classes filed an individual claim, it is highly

unlikely that many, if any at all, would file claims if given a second opportunity, but the estate would suffer greatly from the unnecessary costs of duplicative notice.

### III. The Putative Class Claim Cannot Satisfy the Requirements of Rule 23

43.    Even if this Court were to permit Plaintiffs to file class claims, the Putative Class Claim would not satisfy Rule 23.  To proceed as a class claim, the Putative Class Claim must meet all four requirements of subsection (a) of Rule 23, as made applicable to bankruptcy cases by Bankruptcy Rule 7023.  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *In re Woodward*, 205 B.R. at 371.  Rule 23(a) provides:

> (a)  Prerequisites to Class Action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
>> (1)  the class is so numerous that joinder of all members is impracticable;
>>
>> (2)  there are questions of law or fact common to the class;
>>
>> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

44.    In addition, to proceed as a class claim, the Putative Class Claim must satisfy subsections (b)(2) and (b)(3) of Rule 23, as the Putative Class Claim seeks injunctive relief and monetary damages.  *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993).  (*See* Putative Class Compl. at 52.) Rule 23(b)(2) provides, in relevant part:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).  In addition, Rule 23(b)(3) provides, in relevant part:

> (3) the court finds that the questions of law or fact common
> to the members of the class predominate over any
> questions affecting only individual members, and that a
> class action is superior to other available methods for
> the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

45.    As set forth below, numerous individual issues of fact would predominate over any common questions in the Putative Class Claim because Plaintiffs are neither typical of the members of the Putative Classes nor adequate class representatives.  Further, class treatment is neither efficient nor superior in these circumstances.  As discussed below, Plaintiffs' claims raise a host of individual issues of fact regarding each putative class member's right to recovery. These individual issues would require mini-trials as to each class member's right to relief, a result that courts have repeatedly found requires denial of class certification.[7]

---

[7] Debtors anticipate that Plaintiffs will argue that their Putative Classes should be certified because they are a subset of the class that was certified in the parallel Arkansas state court case subject to the Bryant Settlement, and since that court certified the case, this Court should too.  *See Gen. Motors Corp. v. Bryant*, 285 S.W. 3d 634 (Ark. 2008), *cert. denied*, 129 S. Ct. 901 (2009).  But the class in *Bryant* was certified under Arkansas law pursuant to Arkansas Rule of Civil Procedure 23.  While the Arkansas class certification requirements are facially similar to their federal counterparts, the certification analysis conducted by federal courts is significantly more stringent that that employed by Arkansas state courts.  Specifically, federal courts are required to conduct a "rigorous analysis" of whether the requirements for class certification are met.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006), *decision clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007).  The Arkansas State Court was not required, and expressly declined, to conduct a "rigorous analysis" to determine if the Arkansas Action was appropriate for class certification.  (*See* Findings of Fact and Conclusions of Law Regarding Class Certification, and Order Certifying Class, dated Jan. 11, 2007 (the "**Certification Order**") ¶ 27 ("Importantly, the Arkansas Supreme Court requires no such rigorous analysis . . . . GM's attempt to engraft a rigorous analysis requirement on to the elements of class certification under Ark. R. Civ. P. 23 is not well taken and is rejected.") (internal quotes omitted), annexed hereto as **Exhibit "H."**)  Despite the likelihood that the class in *Bryant* would require application of the laws of many, if not all, states, which would render a class action unmanageable and uncertifiable, the Arkansas state court declined to undertake a choice of law analysis, relying heavily on the fact that courts have broad discretion to decertify class actions.  (*See* Certification Order ¶ 31.)

On June 19, 2008, the Arkansas Supreme Court affirmed the Certification Order.  Although the Arkansas Supreme Court acknowledged that "it is possible that other states' laws might be applicable to the class members' claims," it held that a choice of law analysis is not a prerequisite to certifying a multi-state class action because, among other things, "*a class can always be decertified at a later date* if necessary."  *See Bryant*, 285 S.W.3d at 641 (emphasis added).  The Arkansas Supreme Court also concluded that requiring a choice of law analysis prior to class certification would require Arkansas state courts to conduct the "rigorous analysis" only required under federal class action law.  *Id*. at 638.

### A.    Neither "Commonality" nor "Typicality" Can Be Established by Plaintiffs

46.    To proceed as a class claim, Rule 23(a)(2) and Rule 23(a)(3) require that the putative class representative also demonstrate commonality and typicality. To establish typicality, Plaintiffs must show that they are situated similarly to class members.[8] The Court cannot "presume" that Plaintiffs' claims are typical of other claims. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 158, 160 ("actual, not presumed, conformance with Rule 23(a) remains, however, indispensable").

47.    First, neither Ms. Hunter nor Ms. Gonzales own a vehicle with a TRW System, so they do not have standing to represent owners of vehicles equipped with that parking brake, nor are their claims typical of them, because the issues surrounding the PBR- and TRW-designed systems are distinct. *See Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 622 (S.D. Cal. 2007) (denying certification where hair product purchaser did not have claims typical of purchasers of 28 other products); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 465-68 (4th Cir. 2006) (plaintiffs' claims were atypical of portions of putative class that had purchased a different

---

Accordingly, the Arkansas court's Certification Order in *Bryant* has no bearing on this Court's determination to certify the Putative Classes under Rule 23. *Cf. Reid*, 886 F.2d at 1470-71 (upholding bankruptcy court's refusal to certify a class under Rule 23 that had previously been certified in state court); *In re Friedman's, Inc.*, 363 B.R. 629, 634 (Bankr. S.D. Ga. 2007) (decertifying class action and noting "the fact that a state court rendered the class certification order in 2004 does not curtail this Court's authority to reassess the matter today under Rule 23(c)(1)(C)"); *E. Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 540-41 (E.D. Mo. 2007) (analyzing class certification under Federal Rule 23 and partially granting decertification motion where state court had originally certified class pursuant to state rule of civil procedure); *In re Worldcom, Inc.*, 343 B.R. 412, 418, 427-28 (Bankr. S.D.N.Y. 2006) (Gonzalez, J.) ("This Court has previously held that the Court should not rely on the state court's certification and must make its own determination whether to certify the class" and decertifying nationwide class asserting state-law based claims because of significant variations in the laws of the applicable states).

[8] *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (typicality "requires that the claims of the class representative be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each member makes similar arguments to prove the defendant's liability'") (quoting *In re Drexel*, 960 F.2d at 291); *see, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class").

type of software than named plaintiffs); *In re Worldcom, Inc.*, 343 B.R. at 420 n.8 (subscriber to

a single long-distance calling plan lacked standing to represent subscribers to other plans on

misrepresentation claims, and failed typicality and commonality tests as to other plans).

48.    Second, neither Ms. Hunter nor Ms. Gonzales gave pre-litigation notice to

GM of their CLRA claims for damages.  Accordingly, neither is an appropriate representative of

a class asserting CLRA claims.  *See* CAL. CIV. CODE § 1782(a).

49.    Third, Plaintiffs fail to satisfy the typicality requirement because they are

subject to unique defenses.  *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 137 (S.D.N.Y.

2003) ("[C]lass certification is inappropriate where a putative class representative is subject to

unique defenses which threaten to become the focus of the litigation.")  (quotations and citations

omitted); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999)

(representative plaintiffs fail to satisfy typicality requirement because of unique defenses

defendant may have against them).  Specifically, Ms. Hunter's claims are not typical of even the

PBR System vehicle owners.  Ms. Hunter bought her vehicle secondhand from a used car dealer

– she had no dealings with GM or any GM dealer with respect to her purchase, fatally

undermining her omissions theory of liability.  (*See* Hunter Dep. at 30:17-32:23.)  Likewise, GM

has no money of Ms. Hunters' to "restore" to her – eliminating any chance of recovery on her

UCL claim.  What is more, even if Ms. Hunter could have asserted a claim under the CLRA, she

is subject to a unique defense in that she ignored GM's offer to inspect and repair her vehicle

free of charge.  And, Ms. Hunter testified that she never actually experienced the defect alleged

in the complaint – instead, her vehicle allegedly first "rolled" several inches years ***after*** she had

the purportedly defective parts replaced.

50.     Ms. Gonzales's claims are not typical for several other reasons.  To demonstrate causation on behalf of the class, Plaintiffs will have to demonstrate that the alleged omission was material.  *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809 (2007).[9] Materiality is judged by a "reasonable consumer" standard.  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1241 (2007).  However, Ms. Gonzales admitted at her deposition that the parking brake problem ***would not have changed her decision to purchase the car***.  (*Id.* 45:8-11.)  By definition, then, the alleged omission was immaterial.  *Caro v. Procter & Gamble Co,* 18 Cal. App. 4th 644, 668 (1993) (*citing Lacher v. Superior Court*, 230 Cal. App. 3d 1038, 1049 (1991) ("A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment.")).  Additionally, Ms. Gonzales has no damages – her lawyers paid to have her parking brakes replaced – making her claims atypical for yet another reason.  And, having been on notice of the issues with her parking brake since she purchased her truck in July 2001, both of her claims are barred by the statutes of limitations, as the case was filed in November 2004 and she joined in December 2005.  *See* Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208.

51.     Fourth, each Plaintiff's claim arises from certain of the Debtors' Products that Plaintiffs claim to have purchased allegedly in reliance upon defendants' representations regarding the parking brake system.  (*See* Putative Class Compl. at 5-8.)  Yet, the Putative Classes would include plaintiffs who witnessed *different* representations about the parking brake system; had *different* information regarding the parking brake system at the time they purchased

---

[9] Nor are Hunter or Gonzales typical with respect to any alleged misrepresentation claims on behalf of a class – neither of them saw or heard any alleged misrepresentations.  (Gonzales Dep. at 121:6-9, 121:21-122:4; Hunter Dep. at 36:20-22, 37:7-13, 49:23-50:3, 58:5-19); *In re Paxil Litig.*, 218 F.R.D. 242, 246-47 (C.D. Cal. 2003) (a person "who has not been affected in any way" by allegedly deceptive statements cannot adequately prosecute an action to enjoin such statements).

their vehicle; and who purchased vehicles under a variety of *different* factual circumstances. *See*, *e.g.*, *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir.), *cert. denied*, 510 U.S. 959 (1993) (typicality defeated by plaintiff's broad definition of class as all individuals who signed similar automobile lease agreements).

52.    Finally, Plaintiffs' claims cannot be typical of those of all members of the Putative Classes because the bases of the unfair and deceptive trade practices claims vary greatly.  The claims are based on a variety of allegedly deceptive marketing practices, including, but not limited to, the Debtors' representations that the vehicles at issue "had a "technically advanced braking system,'" "were 'Engineer[ed] [] to the highest standard,'" and were "the most dependable, longest lasting trucks on the road ** Dependability based on longevity," "were 'Certified' to comply with 'all applicable U.S. Federal Motor Vehicle Safety Standards,'" "[were] designed and tested with top-quality GM brake parts," "were equipped with a "complex" "braking system," and had "tough technology, designed to bring you a more dependable, longer lasting truck."  (Putative Class Compl. at 2-3.)  Each member of the Putative Classes might base his or her unfair and deceptive trade practice claim on one or more of the foregoing assertions, might have seen or been induced to purchase by one or a combination of statements, and might have considered some, all, or none of the foregoing assertions to be material.  On the face of the Putative Class Claim, there could be no "typical" plaintiff for the unlimited permutations of factual predicates for the claims alleged.

## B.    Plaintiffs Are Not Adequate Representatives

53.    To establish that they will adequately represent the proposed class, Plaintiffs must have common interests with the unnamed members of the class, and it must appear that Plaintiffs will vigorously prosecute the interests of the class through qualified counsel.  *See, e.g.*, *Edwards v. McCormick*, 196 F.R.D. 487, 495 (S.D. Ohio 2000).  The required

elements that the plaintiffs have "claims or defenses typical of the class" and that they can

"adequately represent and protect the interests of other members of the class" are intertwined: "to

be an adequate representative, plaintiff must show that his claims are typical of the claims of the

class." *Caro*, 18 Cal. App. 4th at 669 ("[T]o be an adequate representative, plaintiff must show

that his claims are typical of the claims of the class.") (quoting *Stephens v. Montgomery Ward*,

193 Cal. App. 3d 411, 422 (1987)).  Here, as described above, there can be no "typical" plaintiff

and, thus, no adequate representative for the Putative Classes.

   54. Additionally, Plaintiffs have demonstrated a lack of adequate

understanding of, and control over, the Lawsuit, such that they do not qualify as adequate

representatives for the Putative Classes.  For example, Ms. Hunter admitted at her deposition that

it was not her idea to start the Lawsuit; she did not recognize any of the first three complaints;

and she does not know what claims are being made against the Debtors or GM.  (*See* Hunter

Dep. at 117:23-118:22, 122:6-7, 122:19-20, 123:1-5, 103:14-104:11, 105:11-14.)  She further has

a false sense of her stakes in claim:  she testified in the Lawsuit that she hopes to recover $260 in

repairs and "the $33,000 that I paid for the vehicle."  (*Id.* 106:4-18.)  More importantly, Ms.

Hunter has already given false testimony during discovery, initially claiming that she bought her

vehicle new with 1,800 miles, when in reality she bought a used vehicle that had been driven for

nearly 20,000 miles.  Saddling the Putative Classes with a representative whose credibility will

be an issue does not serve the interests of any of the members of the Putative Classes.  Similarly,

Ms. Gonzales testified that she had never seen the complaint prior to her deposition.  (Gonzales

Dep. at 159:20-24.)  She had her parking brake replaced shortly before joining the case at a

mechanic recommended by counsel, and her lawyers paid for her repairs; as a result, she

personally has incurred no loss with respect to the alleged defect in this case.  (*Id.* at 90:11-91:1, 93:9-94:4.)

55.    Moreover, the burden to move expeditiously for class certification and recognition within a bankruptcy proceeding, in compliance with Rule 23(c)(1), falls on the class representative and "the class representative's failure to move for class certification is a strong indication that he will not fairly and adequately represent the interests of the class."  *In re Woodward*, 205 B.R. at 370.  As the Putative Class Claim fails to meet the requirements of Rule 23, the Court should not allow it to proceed as a class claim, and it should be disallowed.

### C.    The Members of the Putative Classes Are Not Properly Identifiable

56.    Finally, inherent in Rule 23 is the requirement that a proposed class be "identifiable" or ascertainable.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 336-37 (S.D.N.Y. 2002).  This requirement is not satisfied if a court must conduct a merits inquiry merely to determine who is included in the proposed class.  Courts have determined that proposed classes are not identifiable when class definitions are "overly broad, amorphous or vague."  *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 396-97 (S.D.N.Y. 2008) (rejecting class certification because class was defined to broadly) (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)); *see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 490-91 (D.N.J. 2000) (class member cannot succeed on product liability-based claim unless that specific class member suffered damages as a result of the alleged defect), *reconsideration denied*, No. Civ. A. 96-1814 (JBS), 2001 WL 1869820 (D.N.J. Feb. 8, 2001); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 449-50 (E.D. Pa. 2000) (same).  Here, the Putative Classes are too broad to be identifiable as they seek to include all owners of any 1999-2005 model year vehicle sold or leased in the United States equipped with PBR or TRW parking brake systems, and impermissibly includes persons:  (i) who have

never experienced the alleged defect and therefore have no claim, (ii) who had their vehicles

repaired under warranty, (iii) who as lessees, do not own their vehicles and therefore cannot be

harmed by any alleged diminishment in their residual value, (iv) who are not "consumers" under

the CLRA because they acquired their vehicle for business rather than "for personal, family, or

household purposes,"[10] and (v) who are purchasers of used vehicles or who received their

vehicles as a gift.[11]  (*See* Putative Class Compl. at 33-34.)  Plaintiffs' class definitions also

inappropriately extend to every single purchaser and lessee within a vehicle's chain of title.  *See*,

*e.g.*, *Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 534 (D. Kan. 1995)

("Class certification is definitely not appropriate for a class which includes all owners in the

chain of title.").

   57. Moreover, in order to determine class membership for the Putative

Classes, the Court would, thus, need to first determine: (i) whether each individual's vehicle has

the subject parking brake system; (ii) whether any repair of the parking brake system was paid

for by MLC in full or in part; (iii) whether the class member properly maintained the parking

brake equipment; (iv) whether the class member actually received a representation regarding the

parking brake equipment, the details regarding that representation, where the representation was

made, and whether it was made by a person with authority to legally bind MLC; (v) whether the

class member reasonably relied on MLC's alleged misrepresentations regarding the parking

brake equipment; (vi) whether such alleged misrepresentations were material; and (vii) whether a

---

[10] *See* CAL. CIV. CODE § 1761(d).

[11] These individuals paid no money to GM for their vehicles, and therefore could not have relied on alleged misrepresentations by GM.  Nor may they recover restitutionary damages under the UCL, as restitution is only available under § 17200 when the defendant acquired money or property from the plaintiff.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).

class member's claims are barred by the statue of limitations or other affirmative defenses such as comparative negligence.

58.    Accordingly, the members of the Putative Classes are not properly ascertainable under Rule 23, and the Putative Class Claim should be disallowed.  *See In re Vioxx Prods. Liab. Litig.*, No. 05-1657, 2008 WL 4681368, at *9-10 (E.D. La. Oct. 21, 2008) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class action on the pleadings."), *aff'd*, 300 F. App'x 261 (5th Cir. 2008); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); *Barasich v. Shell Pipeline Co., LP*, No. Civ. A. 05-4180, 2008 WL 6468611, at *4 (E.D. La. June 19, 2008).

### D.    The Injunctive Relief Sought by the Putative Class Claim Under Rule 23(b)(2) Is Mooted by the Debtors' Liquidation

59.    First, the Putative Class Claim cannot meet the requirements of Rule 23(b)(2), as any claim for injunctive relief is mooted because the Debtors do not presently operate a business and are liquidating.  *See In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 9 n.5 ("Insofar as the class claims seek injunctive relief against Twinlabs under Rule 23(b)(2), they are moot now that Twinlabs has gone out of business and existence.").  As a result, the Debtors cannot be compelled to, *inter alia*, issue corrective notices, repair or replace the allegedly defective brake parts, or be permanently enjoined from the alleged "wrongful acts and practices" or their alleged "unlawful, unfair, fraudulent, and deceitful activity" as sought by Plaintiffs.  (*See* Putative Class Compl. ¶¶ 120, 141, 145.)

### E.    Numerous Individual Issues Predominate Over Any Common Questions

60.    Plaintiffs also fail to satisfy Rule 23(b)(3) because individual issues predominate over common questions and a class action is not a superior method of adjudicating the Putative Class Claim.

a.    **Variations in the Law of 51 Jurisdictions Defeat Predominance**

61.    Federal courts have made it clear time and again that before a court can analyze whether the factors under Federal Rule 23 are satisfied, the court must determine which state's or states' substantive law governs the underlying claims.  *See*, *e.g.*, *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005) ("Not only must the choice-of-law issue be addressed at the class certification stage – it must be tackled at the front end since it pervades every element of [Federal Rule] 23."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998).  This is logical because it would be impossible to determine whether there are questions of law common to the class, for example, without first determining the substance of the applicable law.  Both federal case law and the Constitution mandate that this Court perform a choice-of-law analysis before determining whether this case is properly certified as a class action.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985), *remanded to*, 732 P.2d 1286 (Kan. 1987), *cert. denied*, 487 U.S. 1223 (1988).[12]

62.    This requirement begets the question of which state's or states' law should apply to the class claims when a class is comprised of individuals living, and allegedly injured by the defendant's conduct, in every state in the nation.  Federal courts in this jurisdiction and across the country have consistently answered this question by holding that where a purported class action would involve class members from more than one state "the court will apply the law of each of the states from which plaintiffs hail."  *In re Ford Motor Co. Ignition Switch Prods.*

---

[12] As discussed *supra*, the Arkansas court in *Bryant* declined to undertake a choice of law analysis because Arkansas state law, unlike federal law, does not require a "rigorous analysis" with respect to class certification requirements. This Court has previously noted the differing approach federal courts take from some state courts in certifying class actions.  In *In re Worldcom*, 343 B.R. at 418, n.3, this Court cited Schwartz, Behrens and Lorber, *Tort Reform Past, Present and Future: Solving Old Problems and Dealing with "New Style" Litigation*, 27 Wm. Mitchell L. Rev. 237, 264 (2000) for the observation that "[f]ederal courts are required to perform a rigorous analysis of requests for class certification.  State courts on the other hand, often take a laissez-faire attitude toward certifying statewide or even nationwide-classes."

*Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61,

70-71 (S.D.N.Y. 2002), *reconsideration denied*, 224 F.R.D. 346 (S.D.N.Y. 2004); *Kaczmarek,*

186 F.R.D. at 312-13; *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605

(S.D.N.Y. 1982).  To hold otherwise and apply only the forum state's substantive law to the class

certification analysis would violate Constitutional principles of due process and federalism.  *See*

*Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 335-36 (1981), *reh'g denied*, 450 U.S. 971

(1981).[13]  This is particularly applicable here, where the Putative Class Claim asserts causes of

action based on the California UCL[14] and CLRA on behalf of a nationwide class.  California

courts have determined that a nationwide class cannot be certified for UCL and CLRA claims

arising from conduct that occurred outside of California.  *See Cohen v. DIRECTV, Inc.*, 101 Cal.

Rptr. 3d 37, 42, 47 (2009) (citing *Norwest Mortg., Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18

(1999)).

      63.    Compliance with the Constitutional requirement of applying every state's

law to the claims in a nationwide class action is fatal to class certification when the applicable

laws differ from state to state.  This Court and countless others have repeatedly held that "the

need of a court to apply diverse laws and varied burdens of proof to the individual class

---

[13] The Supreme Court expressly admonished a state court for applying its state's substantive law to a nationwide class action filed within its borders, noting that the state "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'"  *Phillips Petroleum Co.*, 472 U.S. at 821.  The *Phillips Petroleum* Court concluded that the forum state's "lack of 'interest' in claims unrelated to that State and the substantive conflict with" other jurisdictions rendered the application of the forum state's law to every claim in the nationwide class action "sufficiently arbitrary and unfair as to exceed constitutional limits."  *Id.* at 822.

[14] The Purported Class Complaint alleges that predicate unlawful acts in violation of the UCL include the violation of brake laws of the states (excluding Hawaii and the District of Columbia).  (Purported Class Complaint at 46-48.) However, the various laws cited differ greatly in what is required and what standards are applied, reinforcing the failure of predominance.  *Compare* Mich. Comp. Laws § 257.705 ("The same brake drums, brake shoes, and lining assemblies, brake shoe anchors, and mechanical brake shoe actuation mechanism normally associated with the wheel brake assemblies may be used for both the service brakes and parking brakes.") *with* Cal. Veh. Code § 26451 (no regulation regarding the same).

members' claims defeats the predominance requirement of Federal Rule 23(b)(3)." *In re Worldcom, Inc.*, 343 B.R. at 427; *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 495 (S.D.N.Y. 1989) ("In the absence of a single state law governing each entire common law claim, common questions of law would not predominate over individual questions."), *aff'd*, 969 F.2d 15 (2d Cir. 1992); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) ("No class action is proper unless all litigants are governed by the same legal rules."); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698-99 (Tex. 2002) (citing dozens of federal and state cases that have "rejected class certification when multiple states' laws must be applied").

64.     Plaintiffs have the burden of establishing that variations in the laws of the jurisdictions do not "swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).  Here, Plaintiffs cannot meet this burden as courts have repeatedly determined that variations in the causes of action at issue in this case – *inter alia*, violations of various state consumer protection statutes – have made certification of nationwide class actions impermissible.

65.     Courts have repeatedly denied certification of nationwide classes based on multiple states' consumer fraud statutes because "state consumer-protection laws vary considerably." *In re Bridgestone/Firestone*, 288 F.3d at 1018 (recognizing that "state consumer-protection laws vary considerably" and holding that "because [the plaintiffs' consumer fraud] claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); *see In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 671, 674 (N.D. Ill. 2009) (denying class certification of claims of "violations of various states' consumer protection statutes" because "[n]umerous courts, including the Seventh Circuit, have dealt with this

question.  Overwhelmingly, those courts have found material conflicts among the fifty states'

laws on the claims plaintiffs bring in this case and have denied class certification, at least in part,

on that basis."); *Pilgrim v. Universal Health Card, LLC,* No. 5:09CV879, 2010 WL 1254849, at

*4 (N.D. Ohio Mar. 25, 2010) ("[T]he Court agrees with the extensive analysis put forth by

[defendant] demonstrating that consumer laws and the law on unjust enrichment vary

significantly from state to state.  Courts have likewise accepted this argument."); *cf. Schnall v.*

*AT & T Wireless Servs., Inc.*, 225 P.3d 929, 935 (Wash. 2010) ("Based primarily on the burden

of applying multiple states' laws, an overwhelming number of federal courts have denied

certification of nationwide state-law class actions.") (internal quotation marks omitted).

      66.    Because the Court must apply the substantive laws of all jurisdictions

from which the members of the Putative Classes hail, and such application results in conflicting

laws, the Putative Class Claim cannot be allowed.

### b.    Necessity of Individual Fact Determinations Destroys Predominance

      67.    Courts also deny certification where "individualized issues of fact

abound."  *In re MTBE*, 209 F.R.D. at 349; *see also In re Worldcom, Inc.*, 343 B.R. at 427, n.26

("the need to evaluate factual differences along with divergent legal issues defeats the

predominance requirement under Rule 23(b)(3)") (internal quotes and citations omitted).  Courts

have specifically held that class actions alleging motor vehicle product liability claims and

seeking economic loss damages should not be certified because individual questions of fact will

predominate:

> . . . the need to establish injury and causation with respect to each class
> member will necessarily require a detailed factual inquiry including
> physical examination of each vehicle, a mind-boggling concept that is
> preclusively costly in both time and money.  We will not certify a class
> that will result in an administrative process lasting for untold years, where
> individual threshold questions will overshadow common issues regarding

Defendant's alleged conduct. Accordingly, we conclude that Plaintiff has not adequately shown that common issues predominate over individual issues. . . . *Courts are hesitant to certify classes in litigation where individual use factors present themselves, such as cases involving allegedly defective motor vehicles and parts.* The administrative burdens are frequently too unmanageable for a class action to make sense in such cases.

*Sanneman*, 191 F.R.D. at 449 (emphasis added).

       68.     The "preclusively costly" "administrative burdens" warned about in the *Sanneman* case would certainly be present here, where the Putative Classes consist of, among other things, all owners or lessees of any General Motors vehicle containing a PBR or TRW System for a more than six-year period, not simply those owners or lessees whose vehicles experienced a malfunctioning parking brake. Thus, the issue of whether a particular class member's parking brake malfunctioned as a result of the alleged defect would alone lead to a sharp divergence in the factual underpinnings of each claim, especially considering that the Subject Vehicles include at least ten different models of manual and automatic transmission vehicles. Such an individualized analysis is crucial because a class member cannot succeed on a product liability-based claim unless that specific class member suffered damages as a result of the alleged defect. *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. at 490-91, *Sanneman*, 191 F.R.D. at 449-50. Individualized factual inquiries would need to be performed to address the issues of if, or when, any parking brake malfunctioned; the cause of any malfunction; whether the parking brake was covered by warranty; whether the parking brake had already been repaired by MLC (or someone else); whether MLC and/or the consumer had knowledge of the alleged parking brake malfunction; whether the class member relied on MLC's alleged misrepresentations/omissions regarding the parking brake; whether such alleged misrepresentations/omissions were material; whether a class member's claims are barred by the

statue of limitations or other affirmative defenses such as comparative negligence; and what the

appropriate remedy should be for any particular class member.

69.     The individualized fact inquiries will further include facts related to

individual vehicle usage and maintenance, which are the primary influence over whether a

parking brake will experience excessive wear.  Factors that may cause or contribute to excessive

wear of parking brakes may include: lack of inspection and maintenance, improper service of the

vehicle, use on rough road conditions, driving habits that include sharp turns at excessive speeds,

overloading the vehicle beyond the rear gross axle rating, failing to disengage the parking brake

before moving the vehicle, using the parking brake as a service brake while in motion, excessive

dirt and debris entering into the brake, and owner modification to raise the truck.  These

*nonexclusive* lists provides a mere sampling of the myriad of factual differences that will

"overshadow common issues."  *See In re MTBE*, 209 F.R.D. at 349.  When coupled with the

variations in law relevant to determining the foregoing facts, Plaintiffs cannot meet their burden

of satisfying the predominance requirement and, thus, the class fails to meet the requirements of

Rule 23.

70.     Moreover, courts in the Second Circuit and elsewhere have specifically

held that the predominance requirement cannot be satisfied for fraud or misrepresentation based

claims because the several issues, including reliance and causation, are not susceptible to

generalized proof and require an individualized inquiry.  *See, e.g.*, *McLaughlin v. Am. Tobacco*

*Co.*, 522 F.3d 215, 223-30 (2d Cir. 2008); *Kottler v. Deutsche Bank AG,* No. 08 Civ. 7773

(PAC), 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010) (finding predominance not satisfied

because varied misrepresentations preclude class certification in a fraud claim); *Sikes v. Teleline,*

*Inc.*, 281 F.3d 1350, 1362-66 (11th Cir.) (certification of fraud class action vacated because

individual issues of reliance and causation predominated), *reh'g denied*, 35 F. App'x 859 (11th Cir.), *cert. denied*, 537 U.S. 884 (2002); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) (same); *Castano*, 84 F.3d at 737, 745 (denying certification in action where claims included "violation of state consumer protection statutes" and "disgorge[ment]" of profits, holding that class action "cannot be certified when individual reliance will be an issue"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 68-69 (individual issues would predominate on claim for restitution of purchase price arising from alleged undisclosed product dangers); *Chin*, 182 F.R.D. at 455-57 (denying class certification in case asserting latent product defect in light of many individual issues of fact, including ascertainable injury, causation, reliance and privity); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 372-75 (E.D. La.), *reconsideration denied*, No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17, 1997) (same); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. at 342-44 (same); *Truckway, Inc. v. Gen. Elec.*, No. Civ. A. 91-0122, 1992 WL 70575, at **5, 7 (E.D. Pa. Mar. 30, 1992) (individual issues predominated in state consumer fraud action "[b]ecause not all members of the class would have relied on the alleged fraudulent material omissions and misrepresentation . . . and because a determination of whether each member of the class was defrauded . . . would require each class member to individually prove the issue of reliance and fraud on a case by case basis"); *see also Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 n.3 (S.D. Ind. 1995) ("The necessity of proving reliance by each class member upon the alleged fraudulent misrepresentations causes individual issues to predominate."); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, Civ. A. No. 89-2181-V, 1992 WL 193661, at *5 (D. Kan. July 15, 1992) ("individual issues of causation and reliance as to each class member would predominate over the common issues of liability"); *Strain v. Nutri/System, Inc.*, No. Civ.

A. 90-2772, 1990 WL 209325, at *6 (E.D. Pa. Dec. 12, 1990) (class certification denied where "each class member [would have] to narrate a story which includes individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of those advertisements").

71.     Looking just at the issues related to the Putative Class Claim based, in part, on misrepresentation, it is evident that individual fact issues defeat predominance.  Those questions raise a host of individual issues of fact that render class treatment wholly unmanageable, including individual questions as to:  the fact of product purchase or ownership; the differing marketing or statements; whether each class member was exposed to allegedly deceptive marketing or statements; whether each class member purchased products as a result of such marketing or statements; the details regarding that representation, where the representation was made, and whether it was made by a person with authority to legally bind MLC; whether the class member relied on MLC's alleged misrepresentations regarding the parking brake; and whether such alleged misrepresentations were material.  *See In re Woodward*, 205 B.R. at 372 (holding issue of fraud as common question of law or fact under Rule 23(b)(3) would require a showing of reliance on the part of each class member, and "[l]acking in this case [where reliance on an advertisement is at issue] is the single set of operative facts that can be applied on a class wide basis . . . . Because the incidents did not occur in a single place, at the same time, or under identical conditions, individualized issues of causation arise.").  Accordingly, individualized issues regarding reliance alone would prohibit certification.

72.     Further, given the absence of any objective evidence of who purchased such products or relied upon any of the Debtors' alleged misrepresentations, the Court would be required, at the threshold, to make a series of individual credibility determinations as to who is and is not a member of the Putative Classes.  *See In re Phenylpropanolamine (PPA) Prods. Liab.*

*Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (motion to certify class asserting consumer fraud

claims on behalf of non-injured consumers of PPA products denied primarily because of

difficulty in determining who had even purchased products at issue).  The need for

individualized proof is evident from Plaintiffs' own testimony; both testified – contrary to the

allegations in the Putative Class Complaint – that they had not heard specific representations

about parking brakes and did not review their Owner's Manuals.  (*See* Gonzales Dep. at 121:6-9,

121:21-122:4, 124:15-24; Hunter Dep. at 36:20-22, 37:7-13, 49:23-50:3, 58:5-19.)

        73.     Numerous individual issues also exist as to whether any alleged

misrepresentation caused each particular class member to purchase any product, precluding class

certification.  For this reason, courts routinely reject class certification of cases claiming unfair

trade practices and other claims similar to those alleged here—including in cases in which

plaintiffs allege a cause of action based on a misrepresentation—because of the overwhelming

number of *individual issues* relating to reliance, causation, and materiality.  *See Kottler*, 2010

WL 1221809, at *3 (finding predominance not satisfied because varied misrepresentations

preclude class certification in a fraud claim); *Castano*, 84 F.3d at 737, 745 (denying certification

in action where claims included "violation of state consumer protection statutes" and

"disgorge[ment]" of profits, holding that class action "cannot be certified when individual

reliance will be an issue"); *Truckway*, 1992 WL 70575, at *5, *7 (individual issues predominated

in state consumer fraud action).

        74.     Finally, determination of whether each class member suffered "actual

injury," would require an individualized inquiry into the degree of efficacy of the product for that

particular class member—an inquiry that would, once again, swamp any common issues and

render class treatment wholly unmanageable.

**F.      Plaintiffs Cannot Establish that a Class
Action Is Superior to Other Available Methods for
Fairly and Efficiently Adjudicating this Controversy**

75.      In addition to the requirement that common questions of law or fact must

predominate over individual issues, Plaintiffs must also establish "that a class action is superior

to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

P. 23(b)(3).  Given the vast number of individual variations of law and fact that would be

involved in allowing this case to proceed as a nationwide class action, the action would be

unmanageable as a single trial.  The issue of MLC's liability would have to be litigated in

thousands of trials which, even if logistically feasible, would violate the constitutional mandate

that "entitles parties to have fact issues decided by one jury, and prohibits a second jury from

reexamining those facts and issues." *Castano*, 84 F.3d at 750 (denying certification for lack of

superiority); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir.), *cert.

denied*, 516 U.S. 867 (1995) (same); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,

170 F.R.D. 417, 427 (E.D. La. 1997) (same).  Given that a class action is not manageable in this

case, it is not superior to other available methods for fairly and efficiently adjudicating the

controversy, and thus, the class cannot meet the requirements of Rule 23.

**IV.    Alternatively, If the Putative Class Claim Is Not Expunged, It Should Be Subject to
an Immediate Estimation Proceeding**

**A.      Estimation of Claims**

76.      In the event that the Court finds it appropriate to permit the Putative Class

Claim to proceed as a class claim in whole or in part, the Debtors request an expedited procedure

be established in this Court to quickly liquidate the unliquidated claims of the Putative Classes

and an expedited hearing to estimate the Putative Class Claim pursuant to section 502(c) of the

Bankruptcy Code.

77.     Section 502(c) of the Bankruptcy Code *mandates* the estimation of all

contingent or unliquidated claims which, if otherwise fixed or liquidated, would unduly delay

administration of a debtor's case.  11 U.S.C. § 502(c) ("There **shall** be estimated for purposes of

allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation

of which, as the case may be, would unduly delay the administration of the case…") (emphasis

added); *see also In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993); *In re Thomson*

*McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992).  The estimation process is an

expedient method for setting the amount of a claim that may receive a distributive share from the

estate.  *In re Thomson*, 143 B.R. at 619 (citing *In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338,

1341 (5th Cir. 1984); *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135-37 (3d Cir. 1982); *In*

*re Interco, Inc.*, 137 B.R. 993, 995 (Bankr. E.D. Mo. 1992).  Section 502(c) of the Bankruptcy

Code is designed to (1) avoid the need to await resolution of pending lawsuits to determine

issues of liability or the amount owed by means of anticipating and estimating the likely

outcomes of these actions, and (2) promote fair distribution to creditors through the realistic

assessment of uncertain claims.  *See In re S. Cinemas, Inc.*, 256 B.R. 520, 533 (Bankr. M.D. Fla.

2000) (citing *In re Ford*, 967 F.2d 1047, 1053 (5th Cir.), *reh'g denied*, 974 F.2d 1337 (5th Cir.

1992)).

78.     Bankruptcy Code section 502(c), thus, contains two requirements before a

bankruptcy court must proceed to estimate a claim:  (1) the court must determine that the claim is

either contingent or unliquidated, and (2) the court must determine that the time necessary to fix

or liquidate the claim would unduly delay administration of the case.  *In re Apex Oil Co.*, 107

B.R. 189, 193 (Bankr. E.D. Mo. 1989).  Section 502(c)(1) is drafted in the disjunctive.  *See* 11

U.S.C. § 502(c) ("There shall be estimated for purposes of allowance under this section – (1) any

contingent or unliquidated claim…") (emphasis added).[15]  "'Liquidated' denotes the ability to

readily and precisely compute the amount due; the test is whether the amount 'is capable of

ascertainment by … a simple computation.'"  *Id*.  Congress deliberately included unliquidated

claims in the Bankruptcy Code's definition of a claim and made provision for their estimation to

permit the broadest possible relief in the bankruptcy court and to ensure that virtually all

obligations to pay money would be amenable to treatment in bankruptcy.  *See In re CD Realty*

*Partners*, 205 B.R. 651, 655-56 (Bankr. D. Mass. 1997).

      79.    Some courts simply assume that a trial will unduly delay administration of

the case and proceed to estimate the creditors' unliquidated claims.  *See, e.g., In re Poole*

*Funeral Chapel, Inc*., 63 B.R. 527, 528-32 (Bankr. N.D. Ala. 1986).  Other courts examine the

size and magnitude of a debtor's contingent and unliquidated claims to determine if a full trial on

the claims would unduly delay the chapter 11 cases.  *See, e.g., In re Johns-Manville Corp.*, 45

B.R. 823, 826 (S.D.N.Y. 1984).  Other factors considered by courts include whether discovery in

the underlying matter had commenced and the anticipated length of a trial process, including

appeals.  *See In re Baldwin-United Corp.*, 55 B.R. 885, 888 (Bankr. S.D. Ohio 1985).

      80.    A court may authorize the estimation and approximation of the allowed

amount of a contingent or unliquidated claim using "whatever method is best suited to the

circumstances" at issue and recognizing that absolute certainty is not possible.  *In re Thomson*,

143 B.R. at 619; *In re Brints Cotton Mktg*., 737 F.2d at 1341.  Additionally, Section 105 of the

Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *See* 11

---

[15] Courts have defined contingent claims as claims where liability attaches and is dependent upon the happening of some future event. *See, e.g.*, *In re Mazzeo*, 131 F.3d 295, 300 (2d Cir. 1997) ("A claim is not contingent if it has come into existence and is capable of being enforced at the time the petition is filed.").

U.S.C. § 105.  Although a court is bound by the legal rules that govern the ultimate value of the

claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the

value of a claim or claims.[16]   Whatever procedure the Court chooses to estimate a claim, it must

be consistent with the policy underlying chapter 11 that the process be "accomplished quickly

and efficiently."  *See Bittner*, 691 F.2d at 137 (citing 124 Cong. Rec. H. 11101- H. 11102 (daily

ed. Sept. 28, 1978)).

### B.    The Putative Class Claim Must Be Estimated If the Claim Is Not Expunged

81.    The Putative Class Claim is contingent and unliquidated because its value

is not a matter of a simple computation.  As filed, the Putative Classes seek damages of an

"unknown" amount, (*see* Putative Class Claim (Ex. A)), and the Debtors dispute the validity of

the Putative Class Claim.[17]  Due to the potential magnitude of the Putative Class Claim, the Plan

cannot be confirmed until the Putative Class Claim is liquidated.  Liquidating the Putative Class

Claim by methods other than estimation proceedings pursuant to section 502(c) of the

Bankruptcy Code would undoubtedly severely delay administration of the Debtors' cases.

82.    Thus, unless the Putative Class Claim is disallowed in its entirety,

estimation is mandatory.  Further, given the large number of potential members of the Putative

Classes, Plaintiffs should be required to monetize their claims.

---

[16] *In re Brints Cotton Mktg.*, 737 F.2d at 1341; *see, e.g.*, *In re Windsor Plumbing Supply Co.*, 170 B.R. 503 (Bankr. E.D.N.Y. 1994) (claim estimated based on review of the documents submitted); *In re Nova Real Estate Inv. Trust*, 23 B.R. 62 (Bankr. E.D. Va. 1982) (claim estimated based on review of pleadings, briefs, and a one-day hearing); *In re Baldwin-United Corp.*, 55 B.R. at 885 (approximate $300 million claim estimated at zero in the context of summary trial); *In re Lane*, 68 B.R. 609, 612 (Bankr. D. Ha. 1986) ($5 million claim estimated at $550,000 solely on pleadings and briefs); *In re Seaman Furniture Co. of Union Square, Inc.*, 160 B.R. 40, 42 (S.D.N.Y. 1993) ($50 million claim estimated at $749.07 based on non-binding prepetition arbitration decision); *In re White Farm Equip. Co.*, 38 B.R. 718 (N.D. Ohio 1984) (products liability claim estimated by special master rather than jury).

[17] The Debtors reserve all rights to object to the Putatove Class Claim on substantive and procedural grounds, including, but not limited to, their failure to state a claim for relief.

**Notice**

83.     Notice of this Motion has been provided to counsel for Plaintiffs and to

the parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. §

105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management

Procedures, dated August 24, 2010 [ECF No. 6750].  The Debtors submit that such notice is

sufficient and no other or further notice need be provided.

84.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

85.     WHEREFORE the Debtors respectfully request entry of an order granting

the relief requested herein and such other and further relief as is just.[18]

Dated: New York, New York
         December 17, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

---

[18] Should the Court find it appropriate to permit the Putative Class Claim to proceed as a class claim in whole or in part, the Debtors reserve their rights to request that an expedited procedure be established in this Court to quickly liquidate such claims and an expedited hearing to estimate the Putative Class Claim pursuant to section 502(c) of the Bankruptcy Code.  *See* 11 U.S.C. § 502(c) ("There **shall** be estimated for purposes of allowance under this section— (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case…") (emphasis added); *see also In re Chateaugay Corp.*, 10 F.3d at 957; *In re Thomson McKinnon Sec., Inc.*, 143 B.R. at 619.  Further, should an estimation proceeding go forward, Plaintiffs should be required to provide substantial documentation to support the alleged nature of their claim.