**Exhibit A**
**Proof of Claim No. 19633**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor (Check Only One) | Case No | Your Claim is Scheduled As Follows. |
|---|---|---|

☒ Motors Liquidation Company (f/k/a General Motors Corporation)  09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)  09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)  09-5002R (REG)
☐ MLC of Harlem Inc (f/k/a Chevrolet Saturn of Harlem Inc)  09-13558 (REG)

**FILED - 19633**
**MOTORS LIQUIDATION COMPANY**
**F/K/A GENERAL MOTORS CORP**
**SDNY # 09-50026 (REG)**

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property) **LaRonda Hunter, Robin Gonzales***

☐ Check this box to indicate that this claim amends a previously filed claim

Name and address where notices should be sent

**Ira Spiro, Mark Moore, Spiro Moss LLP**
**11377 Olympic Bl Los Angeles CA 90064**

Court Claim Number _____
(If known)

Telephone number **310-235-2468**
Email Address **mark@spiromoss com**

Filed on _____

Name and address where payment should be sent (if different from above)

***Hunter & Gonzales for class of all who bought or leased GM vehicles in attached 4th amended complaint, case BC324622**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

Telephone number

THE GARDEN CITY GROUP, INC
NOV 4 2009

**1** Amount of Claim as of Date Case Filed, June 1, 2009    $ **unknown**

If all or part of your claim is secured complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2** Basis for Claim **defective brakes, case BC324622 CA Superior Ct LA**
(See instruction #2 on reverse side)

**3** Last four digits of any number by which creditor identifies debtor _____

**3a** Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

**4** Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff    ☐ Real Estate    ☐ Motor Vehicle    ☐ Equipment    ☐ Other
Describe

Value of Property $_____    Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____    Amount Unsecured $_____

**6** Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents  Attach redacted copies of any documents that support the claim such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary (See instruction 7 and definition of redacted on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5**    Amount of Claim Entitled to Priority under 11 U S C § 507(a)
If any portion of your claim falls in one of the following categories check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages salaries or commissions (up to $10 950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor s business whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2 425* of deposits toward purchase lease or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

Amount entitled to priority

$_____

* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date **11/3/09**

Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

**IRA SPIRO**
**Atty for claimants and putative class**

FOR COURT USE ONLY

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent (The Garden City Group, Inc.) are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS IF BY MAIL: THE GARDEN CITY GROUP, INC. ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386 DUBLIN OH 43017-4286 IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP INC. ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY SUITE A DUBLIN OH 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL BAR DATE IN THESE CHAPTER 11 CASES IS NOVEMBER 30, 2009 AT 5 00 PM (PREVAILING EASTERN TIME)

**Court Name of Debtor and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2 Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold money loaned services performed personal injury/wrongful death car loan mortgage note and credit card. If the claim is based on the delivery of health care goods or services limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor trustee or another party in interest files an objection to your claim

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor if any

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured (See DEFINITIONS below) State the type and the value of property that secures the claim, attach copies of lien documentation and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5 Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS below) A claim may be partly priority and partly non-priority. For example, in some of the categories the law limits the amount entitled to priority
For claims pursuant to 11 U S C § 503(b)(9) indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1 2009 the date of commencement of these cases (See DEFINITIONS below) Attach documentation supporting such claim

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim the creditor gave the Debtor credit for any payments received toward the debt

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services see instruction 2 Do not send original documents as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title if any of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

## DEFINITIONS

**Debtor**
A debtor is the person corporation or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS LLC | |
| (f/k/a Saturn LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem Inc (f/k/a Chevrolet-Saturn of Harlem Inc) | 09-13558 (REG) |

**Creditor**
A creditor is the person corporation or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked edited out or otherwise deleted certain information. A creditor should redact and use only the last four digits of any social-security individual's

tax-identification or financial-account number all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage lien certificate of title financing statement or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group Inc please provide a self-addressed stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However if the creditor decides to sell its claim any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq) and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

1  Adam Voyles - (Admitted *Pro Hac Vice*)
   HEARD, ROBINS, CLOUD & LUBEL, LLP
2  One Allen Center, 500 Dallas, Suite 3100
   Houston, Texas 77002
3  (832) 214-4839, fax (713) 650-1400

4  Ira Spiro - State Bar No 67641
   Dennis F. Moss - State Bar No. 77512
5  René L. Barge - State Bar No 182317
   David M Arbogast - State Bar No. 167571
6  SPIRO MOSS BARNESS HARRISON & BARGE, LLP
   11377 W. Olympic Boulevard., Fifth Floor
7  Los Angeles, CA 90064-1683
   (310) 235-2468, fax (310) 235-2456

8  Attorneys for Plaintiffs La Ronda Hunter,
9  Rosana N Pulgarin, Robin Gonzales and all others Similarly Situated

10

11

12

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

ORIGINAL FILED
DEC 0 9 2005
LOS ANGELES
SUPERIOR COURT

RECEIVED
DEC - 9 2005
Dept. 311

13

14  La RONDA HUNTER, ROSANA N.
    PULGARIN, and ROBIN GONZALES on
    behalf of themselves and on behalf of all
15  others similarly situated and the general
    public,
16
                    Plaintiffs,
17
18              v
19
20  GENERAL MOTORS CORPORATION
21  and DOES 1 through 100,
22                  Defendants.
23

24

25

26

27

28

CASE NO.  BC 324 622

CLASS ACTION

[Assigned to the Hon. Carl J. West, Dept 311]

FOURTH AMENDED COMPLAINT FOR:

(1)  VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), Civil Code § 1750 *et seq*; and

(2)  VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT ("UCL"), Bus. & Prof. Code § 17200 *et seq*.

DEMAND FOR JURY TRIAL

-1-

FOURTH AMENDED COMPLAINT

I.

## INTRODUCTION

1        Defendant General Motors Corporation ("GM") admits that it designed, manufactured, marketed, advertised, distributed, sold and delivered certain vehicles that are defective   Specifically, GM admits that all the PBR and TRW parking brake systems in 1999 - 2005 model year trucks and sport utility vehicles ("SUV's") manufactured, marketed and sold by it are defective·

> **"General Motors has decided that a defect, which relates to motor vehicle safety, exists in certain 1999-2002 C/K 1500 Series (PBR parking brake system) and 2001-2005 C/K 2500 and 3500 Series (TRW parking brake system) pickups with manual transmissions "**

2        These parking brake systems are not only defective, they present an unreasonable public risk of motor vehicle accidents resulting in serious bodily injury and/or death   By way of one example among many, it was reported by NHTSA, the National Highway Traffic Safety Administration, that in June 2004, a California resident and mother of two exited her vehicle (one of the Subject Vehicles) after engaging the parking brake and placing the automatic transmission in Park   The vehicle began to roll and in attempting to save her two children trapped in the run away vehicle, she was run over by her own vehicle   She sustained severe bodily injury and her vehicle violently struck a tree, injuring her two children, and causing extensive damage to the vehicle and property

3        Despite this admission, and its knowledge, awareness and responsibility for the defect, GM made false, misleading, unfair, deceptive, unlawful and fraudulent representations to consumers, including Plaintiffs Ms Hunter, Ms Pulgarin, and Ms Gonzales, about the quality, safety and braking systems of its defective vehicles   For example, GM made the following representations, among others, to Ms Hunter, Ms. Pulgarin, Ms Gonzales, and others similarly situated, that the Subject Vehicles (as defined below)

- had a "TECHNICALLY ADVANCED BRAKING SYSTEM",
- "new braking systems that increase brake pad life by up to four times that of current models"and "the brake pad life can last up to four times longer than the previous design"
- brake systems    meeting regional legal requirements"

**FOURTH AMENDED COMPLAINT**

1.  • "vehicles [] engineered for excellent durability    [and] Perhaps most noteworthy,    redesigned
2.  braking [] systems "
3.  • were "ENGINEER[ED] [  ] TO THE HIGHEST STANDARD",
4.  • were "CERTIFIED" to comply with "ALL APPLICABLE U.S  FEDERAL MOTOR
5.  VEHICLE SAFETY STANDARDS"
6.  • "WAS DESIGNED AND TESTED WITH TOP-QUALITY GM BRAKE PARTS"
7.  • "At GMC we believe that safe driving begins by avoiding collisions, and the Yukon and
8.  Yukon XL are engineered to help you do exactly that "
9.  • "engineered to meet our toughest standards"
10. • "the most dependable, longest-lasting trucks on the road "
11. • were equipped with "PROFESSIONAL BRAKE ENGINEERING.  "
12. • were equipped with a "COMPLEX"  . "braking system"
13. • were "PRECISION-ENGINEERED AND BUILT TO [GM'S] HIGH QUALITY
14. STANDARDS"
15. • "tough technology, designed to bring you a more dependable, longer-lasting truck
16. excellent breaking power and minimal brake fade "
17. • **"the most dependable, longest lasting trucks on the road * * Dependability based on**
18. **longevity   "**
19. • "Repairs made to correct any vehicle defect"
20. • "brake systems    requires    meeting regional legal requirements"
21. • "an even higher level of safety and security features than the previous generation  And it does
22. your safety and security are always a top priority – even in the things you may not readily
23. notice    Your safety and security  In the all-new Tahoe, it's what really matters to us "
24. • "we began redesigning the full-size SUVs by extensively researching the needs of our
25. customers    establishing new benchmarks in Yukon's performance    "
26. Each of these representations (and other representations) made by GM to Ms Hunter, Ms Pulgarin, and Ms
27. Gonzales, and others similarly situated were false and GM knew they were false when they made them  GM
28. knew these representations were false because at the time they were made to Plaintiffs, GM knew that the

1  Subject Vehicles had defective brake systems, were of inferior quality, and are unsafe

2      4      This action is brought under the Consumer Legal Remedies Act, Civil Code §§ 1750 *et seq*,

3  and Business & Professions Code §§ 17200 *et seq*, Civil Code section 1795 90 *et seq* ("California's Secret

4  Warranty Law") and other laws and seeks to hold GM liable to Ms Hunter, Ms Pulgarin, Ms Gonzales and

5  others similarly situated for, among other things, GM's unlawful, unfair, fraudulent and deceptive business

6  acts and practices  GM made false, fraudulent, unfair, deceptive and unlawful representations to Ms. Hunter,

7  Ms Pulgarin, Ms Gonzales, and others similarly situated about the quality, safety and functionality of the

8  parking brake systems on certain of its trucks and SUVs – trucks and SUVs that it knew were of inferior

9  quality, unsafe and equipped with defective parking brake systems when it made the false, fraudulent, unfair,

10  deceptive and unlawful representations

11      5      Plaintiffs bring this class action on behalf of themselves and all others similarly situated for

12  damages, restitution, and other relief against GM for, among other things, designing, manufacturing,

13  certifying, distributing and selling vehicles with a defective parking brake system  The models of trucks

14  with a defective parking brake system include at least the following  2002-2003 Cadillac Escalade, Escalade

15  EXIST, 2003 Cadillac Escalade ESV, 1998-2003 Chevrolet Blazer, 1999-2003 Chevrolet Silverado 1500

16  Series (trucks), 2000-2003 Chevrolet Suburban, Tahoe (1500 Series), 2002-2003 Chevrolet TrailBlazer,

17  Trailblazer EXIST, 1998-2003 GMC Jimmy, 1999-2003 GMC Sierra 1500 Series, 2000-2003 GMC Yukon

18  1500 Series, 2002-2003 GMC Envoy, Envoy XL, 2002-2003 Chevrolet Avalanche 1500 Series Models, and

19  1998-2003 Oldsmobile Bravada (the "Subject Vehicles")  Each of these vehicle models have the parking

20  brake systems identified and admitted by GM to be defective

21                                        II.

22                          **JURISDICTION AND VENUE**

23      6      This action asserts claims under the California Consumers Legal Remedies Act, Civil Code

24  §§ 1750 *et seq*, the California Unfair Competition Law, Business & Professions Code §§ 17200 *et seq*, and

25  similar common and statutory law in effect nationwide  This Court has jurisdiction over this action under

26  Article 6 of the California Constitution and Code of Civil Procedure § 410 10

27      7      Venue is proper in this county, because acts, conduct, and events alleged herein occurred in

28  Los Angeles County  Venue is proper in this county because the transactions in which the named plaintiffs

1     bought their vehicles occurred in Los Angeles County  The undersigned declares under penalty of perjury

2     under the laws of the State of California that the preceding sentence is true and correct and was executed

3     at Los Angeles, on the date set forth at his signature

4                               **III.**

5                           **PARTIES**

6         8.     Plaintiff La Ronda Hunter is a Los Angeles County, California resident   Ms. Hunter

7     purchased and owns one of the Subject Vehicles, a 2001 GMC Yukon 1500 Series Model, which was

8     designed, manufactured, tested, evaluated, inspected, certified, marketed, advertised, distributed, sold and

9     delivered to her with a defective parking brake system   Ms Hunter's vehicle has the PBR parking brake

10     system that GM admits is defective   Ms Hunter made efforts to have GM correct, repair, replace or

11     otherwise rectify the unsafe and defective parking brake system on her 2001 GMC Yukon, which GM

12     refused to do  Ms Hunter expended her own funds, approximately $260 00 in parts and labor, to have the

13     defective brakes replaced  Additionally, Ms. Hunter has suffered damages and lost money in an amount

14     equal to the difference between what was represented, a vehicle with a parking brake system that would

15     work as an immobilization device, and what she received, a vehicle with a defective parking brake system

16     that would not immobilize the vehicle when required

17         9     Ms Hunter appears in this action on behalf of herself and on behalf of all others similarly

18     situated pursuant to Business and Professions Code §§17200 *et seq*  Ms Hunter also appears on behalf of

19     the General Public in her capacity as a private attorney general

20         10     Plaintiff Rosana N Pulgarin is a Los Angeles County, California resident   Ms Pulgarin

21     purchased and owns one of the Subject Vehicles, a 2001 Chevrolet Tahoe, which was designed,

22     manufactured, tested, evaluated, inspected, certified, marketed, advertised, distributed, sold and delivered

23     to her with a defective parking brake system  Ms Pulgarin's vehicle also has the PBR parking brake system

24     that GM admits is defective. Ms Pulgarin made efforts to have GM correct, repair, replace or otherwise

25     rectify the unsafe and defective parking brake system on her 2001 Chevrolet Tahoe which GM refused to

26     do  In particular, in response to GM's representations as alleged herein, Ms Pulgarin has at all times

27     maintained her customer loyalty with the same GM dealership where she purchased her Subject Vehicle,

28     new  Ms Pulgarin has faithfully returned to that same GM dealership every 3,000 miles for routine

1    maintenance, oil changes and inspections, and taken her vehicle to that GM dealership for GM's "Scheduled

2    Maintenance" at "7,500 Miles (12 500 km)," "15,000 Miles (25 000 km)," "22,500 Miles (37 500 km)," and

3    "30,000 Miles (50 000 km)" as instructed by her GM "Owner's Manual " To date, Ms Pulgarin has spent

4    hundreds of dollars on GM's claimed "Quality Service," yet at no time, during any of these periodic and/or

5    GM "Scheduled Maintenance" visits has GM informed her that her parking brake system on the Subject

6    Vehicle is defective and/or repaired the defects as alleged herein  As a result, Ms Pulgarin has conferred

7    an economic benefit on GM, by returning to the Dealership where she purchased her vehicle and at all times

8    relevant, GM has failed to live up to their end of the bargain and performed the "repairs made to correct any

9    vehicle defect" as represented and as warranted by GM   As a direct and proximate result, Ms Pulgarin has

10   suffered damages and lost money in an amount equal to the difference between what was represented, a

11   vehicle with a parking brake system that would work as an immobilization device, and what she received,

12   a vehicle with a defective parking brake system that would not immobilize the vehicle when required and

13   conferred a monetary benefit to GM which is unjust for GM to retain all or a portion of those monies

14   Plaintiff has paid GM  The defective parking brake system on Ms Pulgarin's vehicle manifested itself by

15   showing abnormal and premature wear on the linings of the rear parking brake requiring repair  Therefore,

16   the defective parking brakes on her vehicle are malfunctioning and/or are failing before the end of their

17   expected useful life

18        11    Ms Pulgarin appears in this action on behalf of herself and on behalf of all others similarly

19   situated pursuant to Business and Professions Code §§17200 *et seq*  Ms Pulgarin also appears on behalf

20   of the General Public in her capacity as a private attorney general

21        12    Plaintiff Robin Gonzales is a Los Angeles County, California resident   Ms Gonzales

22   purchased and owns one of the Subject Vehicles, a 2001 Chevrolet Silverado, which was designed,

23   manufactured, tested, evaluated, inspected, certified, marketed, advertised, distributed, sold and delivered

24   to her with a defective parking brake system  Ms Gonzales' vehicle has the PBR parking brake system that

25   GM admits is defective   Ms Gonzales made numerous efforts to have GM correct, repair, replace or

26   otherwise rectify the unsafe and defective parking brake system on her 2001 Chevrolet Silverado which GM

27   refused to do  Specifically, Ms Gonzales presented her Subject Vehicle to an authorized GM service and

28   repair center for periodic service and repair and for GM's "Scheduled Maintenance" at "7,500 Miles (12 500

1    km)," "15,000 Miles (25 000 km)," "22,500 Miles (37 500 km)," and "30,000 Miles (50 000 km)" as

2    instructed by her GM "Owner's Manual "   In particular, within GM's warranty period, at approximately

3    29,000 miles, Ms Gonzales took her 2001 Chevrolet Silverado to an authorized GM Dealer for service and

4    repair of a number of defects and/or problems, which include a defect and/or problem with her parking

5    brakes not working and/or otherwise being inoperable   Upon return of the Subject Vehicle to Ms Gonzales,

6    the authorized GM Dealer provided a written summary of repairs, and buried within that summary was the

7    following notation "COMMENTS   . PARKING BRAKE INOP "   Shortly thereafter, Ms Gonzales

8    confronted GM's authorized service and/or repair representatives and requested that GM repair and/or make

9    the parking brake operable. In response to Ms Gonzales' requests, GM represented that Ms Gonzales does

10   not need parking brakes and has refused to repair the defective parking brakes and/or otherwise make them

11   operable as warranted and as represented   To this day, GM has never warned or advised Ms Gonzales and

12   others similarly situated of the safety related design defect that has at all times relevant existed in the parking

13   brake system on her vehicle   To date, Ms. Gonzales has spent hundreds of dollars on GM's claimed

14   "Quality Service," yet at no time, during any of Ms Gonzales' numerous periodic and/or GM "Scheduled

15   Maintenance" visits has GM ever notified her that the defect(s) in her parking brake system on the Subject

16   Vehicle present an unreasonable public risk of motor vehicle accidents resulting in serious bodily injury

17   and/or death nor has GM at any time offered to or corrected the defective parking brake system on the

18   Subject Vehicle free of charge, as warranted and as represented   As a result, Ms Gonzales has conferred

19   an economic benefit on GM by returning to the GM authorized Dealerships and service centers for service

20   and repair of her vehicle and GM has failed to live up to their end of the bargain and has not performed the

21   "repairs made to correct any vehicle defect" and/or as represented and as warranted by GM

22        13    Ms Gonzales expended her own funds, approximately $417 00 in parts and labor, to have

23   the defective brakes on her 2001 Chevrolet Silverado replaced   Further, as a direct and proximate result of

24   GM's misconduct alleged herein. Ms Gonzales has also been injured and lost money in an amount equal

25   to the difference between what was represented, a vehicle with a parking brake system that would work as

26   an immobilization device, and what she received, a vehicle with a defective parking brake system that would

27   not immobilize the vehicle when required and conferred a monetary benefit to GM which is unjust for GM

28   to retain all or a portion of those monies Plaintiff gave GM

1    14    Ms Gonzales appears in this action on behalf of herself and on behalf of all others similarly

2    situated pursuant to Business and Professions Code §§17200 *et seq* Ms Gonzales also appears on behalf

3    of the General Public in her capacity as a private attorney general.

4    15    GM is a Delaware corporation doing business in California and throughout the United States

5    GM does business in Los Angeles County, California and at all relevant times designed, manufactured,

6    promoted, marketed, distributed, and/or sold the Subject Vehicles throughout California and the rest of the

7    United States GM has significant contacts with Los Angeles County and the activities complained of herein

8    occurred in whole or in part, in Los Angeles County

9    16    Plaintiffs are informed and believe and thereon allege that Defendants Does 1 through 100

10    are corporations, or are other business entities or organizations of a nature unknown to Plaintiff

11    17    Plaintiffs are unaware of the true names of Defendants Does 1 through 100 Plaintiffs sue

12    said defendants by said fictitious names, and will amend this complaint when the true names and capacities

13    are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the

14    Court Plaintiffs are informed and believe that each of the fictitiously named defendants is in some manner

15    responsible for the events and allegations set forth in this complaint

16    18    Plaintiffs are informed, believe, and thereon allege that at all relevant times, each defendant

17    was a developer, designer, manufacturer, distributor and/or seller of trucks, was the principal. agent, partner,

18    joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor

19    in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some

20    or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all

21    of the other defendants so as to be liable for their conduct with respect to the matters alleged in this

22    complaint Plaintiffs are further informed and believe and thereon allege that each defendant acted pursuant

23    to and within the scope of the relationships alleged above, and that at all relevant times, each defendant knew

24    or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the

25    conduct of all other defendants As used in this complaint, "Defendants" means "Defendants and each of

26    them," and refers to the Defendants named in the particular cause of action in which the word appears and

27    includes GM and Does 1 through 100

28    19    At all times mentioned herein, each Defendant was the co-conspirator, agent, servant,

-8-
**FOURTH AMENDED COMPLAINT**

1   employee, and/or joint venturer of each of the other defendants and was acting within the course and scope

2   of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each

3   of the other Defendants

4        20    Plaintiffs make the allegations in this complaint without any admission that, as to any

5   particular allegation, plaintiffs bear the burden of pleading, proving, or persuading, and plaintiffs reserve

6   all of plaintiffs rights to plead in the alternative

7   IV.

8   **FACTS COMMON TO ALL CAUSES OF ACTION**

9   **A.    General Motors Corporation – The World's Largest Automaker**

10        21    GM is the world's largest automaker and has been the global industry sales leader since 1931

11   Founded in 1908, GM has manufacturing operations in 32 countries and its vehicles are sold in 200

12   countries  In 2004, GM sold nearly 9 million cars and trucks globally, the second-highest total in the

13   company's history  GM's automotive brands include Buick, Cadillac, Chevrolet, GMC, Holden, HUMMER,

14   Opel, Pontiac, Saab, Saturn and Vauxhall   GM Parts and accessories are sold under the GM, GM

15   Goodwrench and ACDelco brands through GM Service and Parts Operations, which supplies GM

16   dealerships and distributors worldwide

17   **B.    GM's Defective Parking Brake System**

18        22    In 1998, GM introduced several models of trucks and SUVs based on their GMT800

19   platform  The GMT800 platform vehicles were equipped with a newly designed parking brake system called

20   a drum-in-hat or Banksia Style parking brake system  This parking brake system is identified by GM as the

21   PBR parking brake system and as the TRW parking brake system  It is referred to herein as the "PBR/TRW

22   parking brake system " The PBR and TRW parking brake systems are substantially identical, the difference

23   being that the PBR parking brake system was installed on 1500 Series vehicles and the TRW parking brake

24   system was installed on 2500/3500 Series vehicles  Both the PBR and the TRW parking brake systems were

25   designed, intended and described by GM to be a "life of the vehicle part" with an expected life span of well

26   over 200,000 miles

27        23    The PBR/TRW parking brake system on each of the vehicles is identical and consists of a

28   small cable-actuated non-service drum brake contained within the "hat" portion of the rear disc brake rotors

1    This drum-in-hat or Banksia-style parking brake system contains a single brake shoe inside each of the rear

2    wheel drums (2 per vehicle) and does not contain any provision or mechanism for actively self-centering

3    the brake shoe within the "hat" portion of the brake drum  This drum-in-hat parking brake system was

4    originally designed, manufactured and sold with a single hold down clip to maintain the concentric location

5    of the parking brake shoe within the parking brake drum  However, due to the excessive hold down force

6    of the single retainer clip mechanism as originally designed, the parking brake shoe, upon its first

7    engagement allowed the parking brake shoe to rotate out of alignment and remain in contact with the parking

8    brake drum  Due to the fact that this parking brake system contained no provision for self centering the

9    brake shoe within the "hat" portion of the drum, causing the parking brake shoes to sustain prolonged

10   contact with the brake drum while driving, causing and/or contributing to the parking brake linings to fail

11   and/or wearing out failing prematurely which GM has estimated at an average of 24 months in service

12   However, in a substantial number of these vehicles, the parking brakes never worked at all upon delivery

13   and/or sale to the consumer

14        24     At all times relevant, GM intended and reasonably expected the parking brakes on these

15   vehicles to last the life of the vehicle and not wear out and fail before the end of the useful life absent a

16   defect as alleged herein which causes the parking brake shoe or lining  to move off center and contact the

17   rear brake drum while the vehicles are being driven  This contact between the parking brake linings and the

18   rear brake drums while the vehicle is moving is directly and proximately caused by the defect as alleged

19   herein

20        25     These vehicles manufactured and/or equipped with the "drum-in-hat" parking brake system

21   or Banksia-style parking brake system were defective at the time of delivery and soon after these vehicles

22   were sold to the public, GM received complaint and warranty information that the parking brake linings were

23   wearing out very early in the life of the vehicles (at an average of 24 months in service), reducing the parking

24   brakes effectiveness to immobilize the vehicles, the intended purpose for which the parking brake system

25   was designed to do

26        26     In October of 2002, GM described the defect in a Technical Service Bulletin ("TSB") wherein

27   it acknowledged the defect and alerted its dealers that the defect was applicable to all of the vehicles with

28   the PBR and TRW parking brake systems  GM described the defective condition as "the parking brake shoe

-10-
**FOURTH AMENDED COMPLAINT**

1   contacting the drum in hat rotor without the parking brake being applied, causing premature wear on the

2   shoe lining " What GM failed to also disclose in its TSB was that the defective design not only caused

3   premature parking brake failure, but that it also caused certain of the affected vehicles parking brakes to fail

4   altogether and/or not work from the minute the affected vehicles rolled off the assembly line

5         27    It is now known that all of the following vehicles have the defective PBR/TRW parking brake

6   system· 2002-2003 Cadillac Escalade, Escalade EXIST, 2003 Cadillac Escalade ESV, 1998-2003 Chevrolet

7   Blazer, 1999-2003 Chevrolet Silverado 1500 Series (trucks); 2000-2003 Chevrolet Suburban, Tahoe (1500

8   Series), 2002-2003 Chevrolet TrailBlazer, Trailblazer EXIST, 1998-2003 GMC Jimmy, 1999-2003 GMC

9   Sierra 1500 Series, 2000-2003 GMC Yukon 1500 Series, 2002-2003 GMC Envoy, Envoy XL, 2002-2003

10  Chevrolet Avalanche 1500 Series Models, and 1998-2003 Oldsmobile Bravada (defined *supra* as the

11  "Subject Vehicles")

12        28    The PBR/TRW parking brake system on the Subject Vehicles are, remain, and have always

13  been defective  The defect causes the Subject Vehicles' parking brake systems not to work, fail, and/or are

14  substantially certain to fail prematurely, which is exactly the case with Ms  Hunter, Ms  Pulgarin, Ms

15  Gonzales, and millions of other owners and lessees of the Subject Vehicles  A PBR/TRW parking brake

16  system engineering report from GM to NHTSA discusses the consequences of GM's defective PBR/TRW

17  parking brake system - IT DOES NOT HOLD THE VEHICLE  The report states that PBR/TRW parking

18  brake system vehicles "the parking brake friction linings may wear to an extent where the parking brake can

19  become ineffective in immobilizing a parked vehicle " The report goes on to emphasize this point

20      "Consequence: IF THE PARKING BRAKE DOES NOT HOLD, UNATTENDED

21      VEHICLE MOVEMENT COULD OCCUR, WHICH COULD RESULT IN A

22      CRASH."

23        29    Accordingly, it is without question that the PBR/TRW parking brake systems are, remain and

24  have always been defective and it is unquestionable that as a result of the defect, the parking brake systems

25  on the Subject Vehicles do not hold or stop the vehicles, which is the only purpose for parking brakes  Not

26  only does this defect cause the Subject Vehicles to be unsuitable and unsafe for their intended use, it has and

27  will continue to create serious dangers for drivers, passengers and pedestrians  This fact is underscored by

28  the hundreds of complaints lodged with NHTSA and the scores of injuries as well as deaths described in the

1    NHTSA database as being caused by the defective PBR/TRW parking brake systems.

2    **C.    GM's Knowledge of the Defect that Existed in the Subject Vehicles**

3    　　　　30    Almost immediately after the launch of the trucks and SUVs equipped with the defective

4    PBR/TRW parking brake systems, GM became aware and knew that these parking brake systems were

5    defective, would not work as intended, and would definitely not last the life of the vehicle, i e, over 200,000

6    miles

7    　　　　31    It is also now known from GM documents disclosed to NHTSA as a part of it's investigation

8    that GM knew by September 18, 2000, and likely much earlier, that the parking brake systems on the Subject

9    Vehicles were defective

10    　　　On Monday, September 18, 2000, Steve Love, Brand Quality Manager for the GMT800

11    　　　Pickups, Sierra and Silverado trucks and SUVs sent a letter to GM's dealer partners stating

12    　　　that **the drum-in-hat parking brake system found on these vehicles "is not self-adjusting**

13    　　　**... requir[ing] frequent adjustments[.]"**

14    And, that around this same time in 2000, GM was receiving numerous reports of parking brake failures --

15    prompting NHTSA to initiate an investigation in 2001

16    　　　　32    According to the GM documents produced in response to NHTSA's investigation of the

17    defective parking brake system on the Subject Vehicles, it was not until late 2001 that GM first began

18    investigating solutions to fix the defect, and did so without (i) providing any notice or disclosure of the

19    known defect, or the inherent dangers caused by it, to the current or would-be owners and lessees of the

20    Subject Vehicles, and without (ii) curtailing or modifying the express representations it was making to the

21    public about the quality, safety and functionality of the parking brake systems on the Subject Vehicles

22    　　　　33    The GM documents disclosed to NHTSA also reveal that GM secretly initiated its first step

23    towards addressing the defect in October 2001 by issuing "[a]n Engineering Work Order (EWO) to release

24    a spring clip retainer with lower retaining force" for the defective brake systems    These GM records also

25    reveal that after initiating the EWO, GM then waited two years before it began implementing this EWO in

26    the 2003 model year Subject Vehicles    In the interim, however, upon information and belief, not wanting

27    to let its own engineering incompetence get in the way of profits, GM issued a Technical Service Bulletin

28    ("TSB") offering dealers and repair centers a Brake Kit which they in turn could sell to unwitting (and

-12-

**FOURTH AMENDED COMPLAINT**

1   uninformed) consumers to allegedly fix the defect  However, this only compounded the inferior quality of

2   the PBR/TRW parking brake system, because neither the Brake Kit nor the EWO fixed the defect, which

3   GM later acknowledged in a letter forwarded to NHTSA  GM, therefore, not only sold Plaintiffs and others

4   similarly situated a defective and malfunctioning parking brake system in the Subject Vehicles, but profited

5   from doing so via the sale of an ineffective aftermarket Brake Kit, which did not even fix the problem.

6        34    The GM documents disclosed to NHTSA also suggest that GM waited until October of 2004

7   before it conducted any durability testing on the PBR/TRW parking brake system  GM waited four years

8   despite becoming aware as early as 2000, as evidenced by these GM records, that (i) there was an

9   extraordinarily significant number of reports of brake failures, (ii) there was an impending NHTSA

10  investigation, (iii) crashes and wrecks were caused by the defect, and (iv) GM's own internal engineering

11  reports chronicled the failures  Upon information and belief, it was only as result of the GM's own

12  durability test data that it realized it could no longer continue to ignore the PBR/TRW parking brake

13  system defect

14       35    In 2005 (more than 4 years after GM first became aware of the defect), GM actually corrected

15  the defect  GM did so by redesigning the parking brake system for new vehicles sold beginning sometime

16  in 2005, "to accommodate two low-force spring clip retainers," replacing, among other things, the original

17  and inferior one spring clip design  This correction on new vehicles, however, obviously did not help the

18  current owners and lessees of the Subject Vehicles previously manufactured

19       36    It was also in 2005, in conjunction with its parking brake system redesign, and, upon

20  information and belief, in response to a mounting outcry of consumer complaints, numerous injuries,

21  pressure from NHTSA, and the initial filing of this lawsuit, when GM finally announced a safety recall

22  (albeit it limited and incomplete), providing free braking system repair and replacement of the defective

23  PBR/TRW parking brake systems only for those vehicles with manual transmissions  Without explanation

24  or rational justification, GM limited its recall to only a small percentage of the 4.1 million defective

25  PBR/TRW parking brake systems sold, and only provided notice, recall, and free repair and replacement for

26  vehicles with manual transmissions  At no point during any of this time leading up to the recall did GM ever

27  notify the existing or would-be Subject Vehicle owners and lessees about the defect or that the

28  representations it had made regarding the quality, safety and functionality of the parking brake systems on

-13-

**FOURTH AMENDED COMPLAINT**

the Subject Vehicles was false.  Again, after countless opportunities to cure the defect(s) by providing owners and lessees with a repair and replacement remedy, GM instead chose to remain silent, concealing the true facts concerning these defects, and knowingly and willfully continued to certify the Subject Vehicles, partially disclosing some information touting the quality, safety, functionality and/or reliability of the parking brakes, but at all relevant times failing to disclose other relevant material facts concerning the defect(s) in the parking brakes all the while knowing that Plaintiffs and others similarly situation had no knowledge of the serious safety related defect in these parking brake systems in order to continue to sell these vehicles and maximize their profits

37      At all relevant times, GM has been aware of the PBR/TRW parking brake system defect on the Subject Vehicles, and has consciously disregarded the rights and safety of Plaintiffs, members of the Class and the General Public, in that numerous complaints about the defective parking brake system in the Subject Vehicles have been lodged with GM, including injury incidents and deaths caused by the defective parking brake systems failure to immobilize these vehicles  The misconduct of GM as alleged in this complaint has resulted in injury to Plaintiffs, members of the Class and the General Public, was done with malice, fraud, and oppression and in willful and conscious disregard of the rights and safety of Plaintiffs and others  Specifically, GM and Defendants DOES 1 through 100, through their officers, directors and/or managing agents, authorized, directed, conducted, or ratified each of the following acts and engaged in the following conduct·

(a)      Before marketing the Subject Vehicles, GM knew, based on its own experience and testing, that many consumers would be injured and/or killed if the vehicles were marketed with ineffective and/or inoperable parking brakes  Nevertheless, GM chose to market the Subject Vehicles with defective and/or inoperable parking brakes, substantially likely to result, and has resulted in severe and/or substantial injuries to consumers,

(b)      Based on information and belief, GM failed to perform adequate tests and studies, and/or performed such tests and studies and knew, by 2000, and very likely much earlier, that the parking brake system on the Subject Vehicles was defective and as a result, would require frequent adjustments and were substantially certain to fail, become inoperable and/or ineffective as an immobilization device. and thus were extremely dangerous and potentially deadly  Further, no later than 2002, GM had designed and

1    manufactured a replacement "low-force spring clip retainer" to cure the defect(s) and released these products

2    for sale to the public for approximately $165 00 per vehicle  However, it was not until 2005 that all of the

3    Subject Vehicles were designed, manufactured and built with the necessary modifications for an effective

4    (operable) parking brake system on these vehicles  To this day, GM has not installed the replacement

5    parking brake parts on the Subject Vehicles, nor has GM warned its consumers of the necessity for the

6    replacement parking brake kit

7            (c)    GM intentionally did not install the replacement parking brake kit or redesigned hold

8    down clip in order to save money, knowing it was putting American consumers at great risk  GM knew

9    statistically that a number of these vehicles would be involved in collisions and crashes that would result

10   in people being maimed or killed as a result of the failure of the defective parking brakes failure to properly

11   function and operate an immobilization device  With that knowledge, Plaintiffs are informed and believe

12   that GM calculated that it would be less costly to pay for wrongful death and injury claims that might result

13   than to install the replacement barking brake kit and/or redesigned hold down clips

14           (d)    Plaintiffs are informed and believe, and based on that information and belief allege,

15   that GM has engaged in other acts and conduct, including attempted "cover-ups" of its knowledge and

16   activities regarding the lack of effective and operable parking brakes on the Subject Vehicles, and has

17   engaged in willful suppression of that evidence  Plaintiffs will seek leave to amend this complaint to allege

18   such further acts and conduct undertaken in willful and conscious disregard of the rights and safety of

19   Plaintiffs and others at such time as they become known, or at the time of trial

20           (e)    In engaging in the conduct described in this complaint, Defendants, and each of them,

21   acted in willful and conscious disregard of the rights and safety of Plaintiffs and others, thereby committing

22   acts of malice or oppression so as to entitle Plaintiffs to punitive damages in an amount sufficient to punish

23   or make an example of these defendants

24           (f)    As a direct result of GM's willful and malicious conduct, Plaintiffs and the Class have

25   suffered substantial damages and injuries in an amount to be determined by proof at the time of trial

26      38    GM failed to provide adequate warnings and use instructions with the Subject Vehicles and

27   component parts, because of their desire to place profits over safety  At all times relevant, GM valued its

28   company profits over the personal safety of the owners and lessees of the Subject Vehicles and others

-15-

**FOURTH AMENDED COMPLAINT**

1   similarly situated and the General Public

2   39    Based on information and belief, Plaintiffs allege that GM failed to perform adequate tests

3   and studies, and/or performed such tests and studies and fraudulently concealed those results from

4   consumers, including but not limited to Plaintiffs, and fraudulently concealed the unreasonable risk of injury

5   occurring as a result of the defective design of the PBR/TRW parking brake system   On information and

6   belief, this was because Defendants believed that if such tests and studies were conducted, or the results of

7   them, if conducted, became known, they would be used against Defendants in subsequent lawsuits by

8   persons harmed by the Subject Vehicles

9   40    Defendants' placing of their corporate and/or individual profits over the safety of others is

10   particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the

11   part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance

12   knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or

13   omissions  Defendants thereby acted with malice and complete indifference to and/or conscious disregard

14   for the safety of others, including Plaintiffs and the General Public

15   41.    At all times herein mentioned, Defendants knew, or in the exercise of reasonable care, should

16   have known, that the PBR/TRW parking brake systems were of such a nature that if they were not properly

17   designed, manufactured, examined, tested, inspected, labeled, marketed, distributed and sold they were either

18   not going to work or otherwise fail or malfunction prematurely

19   42    The PBR/TRW parking brake systems on the Subject Vehicles with automatic transmissions

20   are identical to those installed on vehicles with manual transmissions for which GM has planed to offer some

21   prospective repair and replacement, free of charge   GM's own October 2002 TSB confirms that the defect

22   and the associated problems caused by it applies to all of the parking brakes that are at risk (not just those

23   with manual transmissions), and directs its dealers to treat the problem the same regardless of whether they

24   have a manual transmission or not  Inexplicably and unfairly, only those owners and lessees of the Subject

25   Vehicles with manual transmissions will receive notice that they have defective parking brakes  Owners and

26   lessees with automatic transmissions will still be left in the dark about their defective brakes

27   43    To this day, GM continues to withhold important safety, quality, and performance related

28   information concerning the PBR/TRW parking brake systems from owners and lessees of the Subject

1   Vehicles  Additionally, GM has failed and continues to fail to offer reimbursement to Subject Vehicle

2   owners and lessees who have already expended money purchasing the GM replacement kits, or paid to have

3   these kits installed at authorized GM dealerships, or paid for replacement, repair or other expenses caused

4   by the PBR/TRW parking brake system

5   **D.    GM's Misrepresentations and Omissions to Plaintiffs and the General Public about the Safety,**

**        Quality and Function of the Parking Brake System on the Subject Vehicles**

6

7          44    GM made false, misleading, unfair, deceptive, unlawful and fraudulent representations to

8   consumers, including Plaintiffs Ms  Hunter, Ms  Pulgarin, and Ms  Gonzales, about the quality, safety and

9   braking systems of its defective vehicles  Those false, misleading, unfair, deceptive, unlawful and fraudulent

10  representations are as follows, among others

11         **(1)  Federal Motor Vehicle Safety Act ("FMVSA") Certification**

12         45    Each of the Subject Vehicles manufactured and sold during the Class period came equipped

13  with an identical defective parking brake system and GM knowingly and intentionally permanently affixed

14  on each of the Subject Vehicles, in a prominent location, the Certification label or tag representing that

15              **This Vehicle Conforms to All Applicable U.S. Federal Motor Vehicle**

**              Safety Standards in Effect on the Date of Manufacture Show above**

16

17         46    This representation made by GM to consumers, including Plaintiffs Ms  Hunter, Ms  Pulgarin

18  and Ms  Gonzales, was false and GM knew it was false when it was made

19

           **(2)  GM's Pre-Delivery Inspection and Certification Procedure**

20

21         47    At all times relevant, GM maintained a Pre-Delivery Inspection Procedure for Passenger Cars

22  and Light Duty Trucks, such as the Subject Vehicles at issue   GM's Pre-Delivery Inspection Procedure

23  requires its authorized dealers to thoroughly test and inspect each of the Subject Vehicles before they were

24  delivered to Plaintiffs and others similarly situated   After the vehicle is tested and inspected according to

25  GM's protocol and procedure, a GM authorized "Pre-Delivery Inspection" form is filled out, affirmatively

26  checking each box that the vehicle has been tested, inspected and is in working order   The GM "Pre-

27  Delivery Inspection" form affirmatively states that a certified GM service representative has conducted a

28  "Road Test" of the vehicle and affirmatively represents that the vehicle, and its component parts, including

1   the parking brake system is in working order   The GM "Pre-Delivery Inspection Procedure" form states,

2   in pertinent part

3          "Deficiencies must be called to Service Management's attention"

4          "INSPECT, PERFORM, VERIFY PROPER OPERATION, ASSEMBLY

5          AND ROUTING OF THE FOLLOWING·

6          ☐ ROAD TEST

7          Drive on a legal roadway with road conditions permitting evaluation for
           squeaks, rattles and wind noise   **Before, during and after this test, check
           all standard equipment, options and accessories for proper operation, as**

8          **applicable:**

9          Before

10         During

11         After

12         • **Parking Brake**

13         ☐ UNDER VEHICLE

14         • Fuel System, **brake system** and oil cooler lines for leaks"

15         48     The GM "Pre-Delivery Inspection Procedure" then requires the GM authorized representative

16   to sign, date and "certify" that the GM "Pre-Delivery Inspection has been completed"   This written

17   representation of GM's certification of compliance was given to all purchasers of the Subject Vehicles at

18   issue

19         49     This written representation of certification given by GM to consumers, including Plaintiffs

20   Ms Hunter, Ms Pulgarin, and Ms Gonzales, was false and GM knew it was false when it was made

21

22         **(3)   GM's "Completely Satisfied - New Vehicle Delivery System" Procedure**

23

24         50     In accordance with GM's "Completely Satisfied - New Vehicle Delivery System" procedure,

25   each of the Subject Vehicles that were purchased new from one the Dealers within GM's authorized dealer

26   network were required to be "inspected, explained, and demonstrated"

27         51     The GM "New Vehicle Delivery System" procedure requires that the GM authorized sales

28   representative complete a GM authorized form   The form is filled out by the GM authorized representative

-18-

**FOURTH AMENDED COMPLAINT**

1  in three stages  (1) "Pre-Delivery Check (*Sales consultant performs these checks prior to delivery date*),"

2  (2) "Consultation at Delivery," and (3) "Vehicle Presentation with Customer (*Utilizing owner's manual and*

3  *applicable reference guides.*"

4          52      The GM mandated "Completely Satisfied - New Vehicle Delivery System" states in pertinent

5  part:

6          "Pre-Delivery Check (*Sales consultant performs these checks prior to delivery date*)
          ☐ **Review completed GM Pre-Delivery Inspection Form**

7

8          ☐ Vehicle Presentation with Customer (*Utilizing owner's manual and*
          *applicable reference guides* "

9

          ☐ **Review and demonstrate all vehicle features and controls**

10

11          ▪ **Safety features**      " ( under the section "Vehicle Presentation with Customer ")

12  See also GM's specific reference to "**parking brakes**" in the related "GM Pre-Delivery Inspection

13  Procedure" form stated above in paragraph no's 44 and 45 above

14          53      These representations made by GM to consumers, including Plaintiffs Ms  Hunter, Ms

15  Pulgarin, and Ms  Gonzales, were false and GM knew they were false when they were made

16          **(4)  The GM Owner's Manual That Went along with the Sale of Each of the Subject Vehicles**

17

18          54      The GM Owner's manual that was specifically mentioned in GM's Pre-Delivery Inspection

19  Procedure and that came with each of the Subject Vehicles at issue makes the following representations

20          "**This manual includes the latest information at the time it was printed**
          . Please keep this manual in your vehicle, so it will be there if you ever need

21          it when you're on the road  If you sell your vehicle, please leave this manual
          in it so that the new owner can use it "

22

          "**Parking Brake**

23          **To set the parking brake, hold the regular brake pedal down with your**
          **right foot** "

24

          "To release the parking brake, hold the regular brake pedal down  Pull the

25          bottom edge of the lever, located above the parking brake pedal, marked
          BRAKE RELEASE, to release the parking brake "

26

27          "**It can be dangerous to get out of your vehicle if the shift lever is not**
          **fully in PARK (P) with the parking brake firmly set**  Your vehicle can

28          roll  You or others could be injured  To be sure your vehicle won't move,
          even when you're on fairly level ground, use the steps that follow "

**FOURTH AMENDED COMPLAINT**

**"Leaving Your Vehicle With the Engine Running**

**CAUTION:**
**It can be dangerous to leave your vehicle with the engine running. Your vehicle can move suddenly if the shift lever is not fully in PARK (P) with the parking brake firmly set** If you have four-wheel drive and your transfer case is in NEUTRAL, your vehicle will be free to roll, even if your shift lever is in PARK (P) So, be sure the transfer case is in a drive gear – not in NEUTRAL And, if you leave the vehicle with the engine running, it could overheat and even catch fire You or others could be injured Don't leave your vehicle with the engine running unless you have to

**If you have to leave your vehicle with the engine running, be sure your vehicle is in PARK (P) and the parking brake is firmly set before you leave it.** After you move the shift lever into PARK (P), hold the regular brake pedal down Then, see if you can move the shift lever away from PARK(P) without first pulling it toward you. If you can, it means the shift lever wasn't fully locked into PARK (P)"

**"To prevent torque lock, set the parking brake and then shift into PARK (P) properly before you leave the driver's seat."**

**"It can be dangerous to get out of your vehicle if the shift lever is not fully in PARK (P) with the parking brake fully set. Your vehicle can roll** Don't leave your vehicle with the engine is running unless you have to If you've left the engine running, the vehicle can move suddenly. You or others could be injured To be sure your vehicle won't move, even when you're on fairly level ground, **always set your parking brake** and move the shift lever to PARK (P) "

"Four-wheel drive vehicles with the transfer case in NEUTRAL will allow the vehicle to roll, even if your shift lever is in PARK(P) So, be sure the transfer case is in a drive gear – not in NEUTRAL **Always set your parking brake** "

"The Instrument Panel - Your Information System

**The main components of the instrument panel are the following**

O      **Parking Brake Release**

**Brake System Warning Light**
With the ignition on, the brake system warning light will flash when you set the parking brake The light will flash if the parking brake doesn't release fully If you try to drive with the parking brake engaged, a chime will sound when the vehicle is greater that 3 mph (5 km/h)"

**"Section 4 Your Driving and the Road**

**Q: Suppose, after stalling, I try to back down the hill and decide I just can't do it. What should I do?**

**A: Set the parking brake**, put your transmission in PARK (P) and turn the engine off Leave the vehicle and go get some help Exit on the uphill side

-20-

**FOURTH AMENDED COMPLAINT**

and stay clear of the path of the vehicle would take if rolled downhill  Do not shift the transfer case to NEUTRAL when you leave the vehicle  Leave it in some gear "

**"Four-Wheel-Drive Vehicles**
**CAUTION:**

Shifting the transfer case into NEUTRAL can cause your vehicle to roll even if the transmission is in PARK (P), for an automatic transmission  You and others could be injured  **Make sure the parking brake is firmly set** before you shift the transfer case into NEUTRAL."

"Use the following procedure to tow your vehicle
1  **Firmly set the parking brake**

5  Release the parking brake only after the vehicle being towed is firmly attached to the towing vehicle "

**"Parking on Hills**
**CAUTION:**
Always put the shift lever fully in PARK (P) **with the parking brake firmly set** "

"When You Are Ready to Leave After Parking on a Hill

**Release the parking brake** "

"Changing a Flat Tire
CAUTION
**Changing a tire can cause an injury.  The vehicle can slip off the jack and roll over you or other people. You and they could be badly injured. To help prevent the vehicle from moving:**

1.  **Set the parking brake firmly** "

"Replacing Brake System Parts

The braking system on a vehicle is complex  Its many parts have to be of top quality and work well together if the vehicle is to have really good braking  **Your vehicle was designed and tested with top-quality GM brake parts.** When you replace parts of your braking system – for example, when your brake linings wear down and you have to have new ones put in – be sure you get new approved GM replacement parts  If you don't, your brakes may no longer work properly  For example, if someone puts in brake linings that are wrong for your vehicle, the balance between your front and rear brakes can change – for the worse  The braking performance you've come to expect can change in many other ways "

"Starter Switch Check
CAUTION
When you are doing this check, the vehicle could move suddenly  If it does, you or others could be injured  Follow the steps below

2  **Firmly apply both the parking brake and the regular brake.**  See "Parking Brake" in the Index if necessary "

**FOURTH AMENDED COMPLAINT**

"Automatic Transmission Shift Lock Control System Check
CAUTION
When you are doing this check, the vehicle could move suddenly  If it does,
you or others could be injured  Follow the steps below

**2  Firmly apply both the parking brake and the regular brake**  See
"Parking Brake" in the Index if necessary "

"Parking Brake and Automatic Transmission PARK (P) Mechanism Check
CAUTION
When you are doing this check, your vehicle could begin to move. You or
others could be injured and property could be damaged  Make sure there is
room in front of your vehicle in case it begins to roll  Be ready to apply the
regular brake at once should the vehicle begin to move."

"Park on a fairly steep hill, with the vehicle facing downhill  Keep your foot
on the regular brake, **set the parking brake** "

"• To check the parking brake's holding ability  With the engine running and
transmission in NEUTRAL (N), slowly remove foot pressure from the regular
brake pedal  **Do this until the vehicle is held by the parking brake only.**"

"• To check the PARK (P) mechanism's holding ability·  With the engine
running, shift to PARK (P).  **Then release the parking brake followed by
the regular brake** "

55    The representations made by GM in connection with its Pre-Delivery Inspection Procedure

and its Owner's Manual to consumers, including Plaintiffs Ms  Hunter, Ms  Pulgarin, and Ms  Gonzales,

were false, and GM knew they were false when they were made

**(5)  GM's Brochures that Were Provided to Each of the New Car Purchasers**

56    GM distributed throughout its authorized dealer network and provided to all new and would

be new car purchasers product brochures containing the following representations

- "designed and engineered to meet the toughest standards in the world – yours and ours "

- "The brake pad life can last up to four times longer than the previous design"

- "WE'RE WITH YOU, EVERY MILE OF THE WAY

WHAT IS COVERED FOR 3 YEARS OR 36,000 MILES

**Repairs made to correct any vehicle defect"**

- "the most dependable, longest-lasting [truck]"

- "Sure, being counted on by so many is an incredible responsibility  But as long as there's a job
to do, as long as there are people depending on us, we'll be there "

- **"engineered to meet our toughest standards"**

1   • "exceeds your expectations   designed   with the features you really need"

2   • "features which add up to one well-equipped [truck]"

3   • All of us at Chevrolet know that we must earn your trust every day, year after year, one vehicle
    at a time   That's why we provide you with Genuine Customer Care   This comprehensive owner
4   Protection plan means that **we'll be there, with the largest dealer network in the U.S., whenever
    you need us, no matter where your travels take you.  That's a promise** "

5   • "brake systems   meeting regional legal requirements"

6   • **"the most dependable, longest-lasting trucks on the road.*** Built rugged to take what the
7   world  can dish out  Built dependable, because we know that people are counting on us
    **\*Dependability based on longevity .** "

8   • "strength you need to get the job done   Strength you can count on  .  Built to handle the toughest
9   jobs"

10  • "Base model   has a lot of standard features that let you handle a tough job or a fun family
    adventure"

11
    • **"brake systems** .  Easy and safe trailering requires a properly equipped vehicle  .  requires
12  **meeting regional legal requirements"**

13  • "advanced technology   built to meet our tough standards "

14  • "Repairs made to correct any vehicle defect   We have tried to make this brochure
15  comprehensive and factual"

16  • "Underneath the exterior of Chevy Tahoe there are literally dozens of **impressive engineering
    features** .  No matter where you're headed, you can feel confident in the knowledge Tahoe is
17  from the family of Chevy Trucks – **the most dependable, longest lasting trucks on the road \* \***
    **Dependability based on longevity** "

18  • "TAHOE SAFETY MATTERS By Glen Zuchniewicz, GM Safety Engineer

19  At General Motors, it wasn't enough to design Tahoe as a tough durable sport utility vehicle  It also
    **had to have an even higher level of safety and security features than the previous generation.**
20  **And it does** As our engineers continue to develop new and exciting features for the Chevy Truck
    lineup, **your safety and security are always a top priority – even in the things you may not**
21  **readily notice**   Your safety and security  In the all-new Tahoe, it's what really matters to us
    See the Owner's Manual for more safety information"

22
    • "Based on 98 years of professional grade experience, **GMC knows a lot about what drivers want**
23  **in a full-size SUV.  We also know that if we listen, we can always learn more.  That's why we**
    **began redesigning the full-size SUVs by extensively researching the needs  of our customers**
24  Your answers – your needs — determined what the all-new Yukon and  Yukon XL would be
    **establishing new benchmarks in Yukon's performance** – all the while remaining true to the
25  century-long GMC heritage of focusing exclusively on **designing professional grade trucks to**
    **meet the needs of the most demanding drivers"**

26
    • "vehicles [] **engineered for excellent durability**   [and] Perhaps most noteworthy,   **redesigned**
27  **braking [] systems** "

28  • **"TECHNOLOGY DEDICATED TO CONTROL**   new braking systems that increase brake

-23-

**FOURTH AMENDED COMPLAINT**

pad life by up to four times that of current models, to their wealth of advanced-performance features, they are **designed and engineered ... to keep you in control in a variety of road and whether conditions"**

- **"STAYING SAFE BEGINS BY STAYING IN CONTROL**
  **At GMC we believe that safe driving begins by avoiding collisions, and the Yukon and Yukon XL are engineered to help you do exactly that** A variety of advanced features – . anti-lock brakes help you keep your family safe **Our commitment even extends to the time before and after your driving** "

- "Yukon safety features to keep you and your family safe in a variety of road conditions . See the Owner's manual for more safety information "

- "excellent breaking power and minimal brake fade "

- **"STANDARD SAFETY EQUIPMENT - BRAKES"**

- "Yukon Has Many Standard Safety and Security Features See Owner's Manual for more safety information"

- "A Word About this Brochure We have tried to make this brochure comprehensive and factual"

- **"DO ONE THING. DO IT WELL** - Over the course of nearly a century, GMC trucks have earned a reputation as **professional-grade** vehicles that serious truck owners recognize as, quite simply, **the right tools for the job."**

- "Professional grade vehicles With more features and more innovations than you'd expect "

57      These representations made by GM to consumers, including Plaintiffs Ms Hunter, Ms Pulgarin, and Ms Gonzales, were false, and GM knew they were false when they were made

**(6) GM's Advertising, TV, Radio and Print Ads**

58      At all times relevant, and for many years prior, GM widely disseminated, in its national advertising campaigns numerous and repeated representations stressing the quality, safety and performance of their products, including the Subject Vehicles During the Class period, GM made the following representations in its advertising, by television, radio, print and Internet

- **"Professional Brake Engineering "**

- **"WE ARE PROFESSIONAL GRADE - IT'S NOT A PROMOTION. IT'S A PROMISE."**

- **"SAFETY - DESIGNED TO PROTECT"**

- **"RECENTLY OUR ACHIEVEMENTS IN SAFETY WERE RECOGNIZED BY A LEADINGMAGAZINE, A LEADING INSURANCE COMPANY, AND A ONE-YEAR OLD FROM SOUTH CAROLINA"**

- **"EFFECTIVE SAFETY INNOVATIONS"**

1    • "TRUSTED - CHEVY - WE'LL BE THERE"

2    • "A little security in an insecure world  BLAZER - LIKE A ROCK"

3    • **"tough technology, designed to bring you a more dependable, longer-lasting truck** "

4    • **"precision-engineered and built to our high quality standards"**

5    • "Commitment is anything but a short program  Chevy - We'll be there"

6    • "AS DEPENDABLE AS THANKSGIVING FALLING ON A THURSDAY - WE ARE
        PROFESSIONAL GRADE"

7
     • "WE REDESIGNED THE GMC SUBURBAN SO COMPLETELY, **EVERYTHING WORKED**"
8
     • **"DESIGNED TO MEET EXPECTATIONS YOU DON'T EVEN HAVE ·** GMC Do one thing
9      Do it well ™"

10   • "we specialize in trucks  GMC  Do one thing  Do it well "

11   • **"These vehicles met GM's tough standards when they were first built.  Now they have to
        again, or they won't be certified  Everything** from the exhaust system to the cup holders is
12     **inspected and repaired,** if necessary  If the vehicle doesn't pass, it will not be certified
        Following is the inspection checklist  8  **Braking** .  31  **Parking Brake** .  38  **Brake System**
13     47  **Brake Pads, Shoes    60 Parking Brake Cables"**

14       59       At all times relevant, as a part of GM's national advertising campaigns, through its nationally

15   controlled dealership network, GM widely disseminated and/or distributed to the Class members numerous

16   pamphlets, brochures and specification sheets which emphasized or focused on the quality, safety and

17   functionality of the Subject Vehicles here at issue

18       60       The written materials distributed and widely disseminated by GM in their numerous

19   advertising campaigns represented that the Subject Vehicles are reliable, safe and are free from inherent risk

20   of failure, particularly with regard to safety  In particular, GM made numerous representations in its print

21   ads and media that if a defect existed in one of its vehicles, including the Subject Vehicles, GM would repair

22   the defect

23               "WE'RE WITH YOU, EVERY MILE OF THE WAY

24                   **Repairs made to correct any vehicle defect"**

25       61       In its marketing and promotional material, product brochures, pamphlets, media and through

26   public statements, GM widely disseminated the following representations, that the Subject Vehicles are "the

27   most dependable, longest-lasting trucks on the road," "GM Tough," "Best in Class,"  "Best in the World,"

28   "Professional Grade," "the ultimate expression of professional grade engineering" and GM's express

-----

-25-

**FOURTH AMENDED COMPLAINT**

1  "commitment to a higher standard of innovative engineering, design, and performance" and were made in

2  conjunction with statements such as

3  • "TECHNICALLY ADVANCED BRAKING SYSTEM"

4  • "new braking systems that increase brake pad life by up to four times that of current models, the brake pad life can last up to four times longer than the previous design"

5

6  • "brake systems    meeting regional legal requirements"

7  • "vehicles [] engineered for excellent durability . . [and] Perhaps most noteworthy,    redesigned braking [] systems "

8  • "were "ENGINEER[ED] [...] TO THE HIGHEST STANDARD"

9  • were "CERTIFIED" to comply with "ALL APPLICABLE US FEDERAL MOTOR VEHICLE SAFETY STANDARDS"

10

11  • "WAS DESIGNED AND TESTED WITH TOP-QUALITY GM BRAKE PARTS"

12  • "engineered to meet our toughest standards"

13  • "the most dependable, longest-lasting trucks on the road "

14  • equipped with "PROFESSIONAL BRAKE ENGINEERING. "

15  • were "PRECISION-ENGINEERED AND BUILT TO [GM'S] HIGH QUALITY STANDARDS"

16  • "tough technology, designed to bring you a more dependable, longer-lasting truck "

17  • "excellent breaking power and minimal brake fade "

18  • "the most dependable, longest lasting trucks on the road * * Dependability based on longevity  "

19  • "your safety and security are always a top priority"

20       62      These widely disseminated advertisements, due to the national scope and extent of GM's

21  multi-media campaign, were  uniformly made to all members of the class   Class members' acts of

22  purchasing the Subject Vehicles were consistent with basing such purchasing decisions upon such

23  advertisements, and thus formed part of the basis for the transactions at issue

24       63      The representations made by GM in its advertisements to consumers, including Plaintiffs Ms

25  Hunter, Ms Pulgarin, and Ms Gonzales, were false, and GM knew they were false when they were made

26       64      At all relevant times, GM has not fully disclosed to purchasers or lessees of the Subject

27  Vehicles, information regarding the high incidence of premature failures of the parking brakes on the Subject

28  Vehicles as detailed herein, nor has it disclosed the true facts that  (1) GM either knew or recklessly or

1  negligently disregarded the existence and reasons for the defect(s) for years; and (2) starting with model year

2  2004, GM made design changes and manufactured a newer reduced force hold-down clip to facilitate brake

3  shoe disengagement from the drum surface which has caused and/or contributed to the premature parking

4  brake liner failures

5      65    Plaintiffs are further informed and believe and thereon allege that in not correcting or warning

6  of this defect, GM has violated its own internal procedures as specified in GM's Automotive Defect Analysis

7  Procedure manuals, which requires prompt investigation and thorough analysis of all potential inherent

8  safety defects and notification to vehicle owners and lessees describing the defect and a statement of the

9  safety risks involved, as well as instructions relating to the correction of the defect if a defect is determined

10  to exist

11      66    At all times relevant, GM possessed full information and knowledge concerning the true facts

12  concerning the defects in the parking brake system on the Subject Vehicles, GM had full and exclusive

13  access to product testing, test results, files and documents concerning the design, manufacture, and expected

14  in-use performance, and lack of durability and failure to function and perform as intended, a life of the

15  vehicle part with an expected life span of over 200,000 miles

16      67    GM issued numerous internal memorandums concerning the defective parking brakes, the

17  existence of a replacement parking brake kit to repair the defect, yet instructed its dealer network and

18  authorized service centers not to perform the repairs and/or replacement of parts unless the consumer paid

19  for such replacement parts and service thus presenting a total inability to repair the defective safety related

20  defect, free of charge, and without notice to consumers   Said misconduct created a situation where the a

21  safety related design defect existed, yet the consumer was at all times unaware of the defect because of GM's

22  failure to disclose and concealment of its exclusive knowledge of the defect(s) to Plaintiffs and others

23  similarly situated

24      68    Yet, despite GM's knowledge, awareness and responsibility for the defect, GM took steps,

25  implemented policies and procedures, and made affirmative representations to actively mislead consumers,

26  including Plaintiffs Ms Hunter, Ms Pulgarin, and Ms Gonzales, about the quality, safety and functionality

27  of the braking systems of the Subject Vehicles   Additionally, GM failed, refused and continues to refuse

28  to notify the owners and lessees of the Subject Vehicles of the defects or the false information it previously

1 | knowingly disseminated  GM refuses to notify owners and lessees of the Subject Vehicles despite having

2 | obligated itself and assumed the duty to notify its customers of important safety related defects, as set forth

3 | in its Warranty and Owner's Manual

4 | **E.    GM's Violation of the Federal Motor Vehicle Safety Standards (FMVSS)**

5 | 69      The National Highway Traffic Safety Administration has a legislative mandate under Title

6 | 49 of the United States Code, Chapter 301, Motor Vehicle Safety, to issue Federal Motor Vehicle Safety

7 | Standards (FMVSS) and Regulations to which manufacturers of motor vehicle and equipment items must

8 | conform and certify compliance  The Federal safety standards are regulations written in terms of minimum

9 | safety performance requirements for motor vehicles or items of motor vehicle equipment  The requirements

10 | are specified in such a manner "that the public is protected against unreasonable risk of crashes occurring

11 | as a result of the design, construction, or performance of motor vehicles and is also protected against

12 | unreasonable risk of death or injury in the event crashes do occur "

13 | 70      GM had a duty to properly design, manufacture, test, inspect, and certify each of the Subject

14 | Vehicles prior to placing them into the stream of commerce in the United States   Federal Motor Vehicle

15 | Safety Standard 105 and/or 135 requires that all passenger vehicles (and trucks) sold in the United States

16 | are equipped with a parking brake system to ensure safe braking performance under normal conditions and

17 | emergency conditions  Automobile manufacturers are required to certify that the vehicle complies with all

18 | Federal Motor Vehicle Standards, including Standard 105 and/or 135   **The Manufacturer's Certificate**

19 | **of Compliance "must be shown by a label or tag permanently fixed to the vehicle" and an automobile**

20 | **manufacturer may not issue the certificate if, in exercising reasonable care, the manufacturer has**

21 | **reason to know the certificate is false or misleading in a material respect**

22 | 71      At all times relevant, GM made a written representation that each of the Subject Vehicles

23 | complied with Federal Motor Vehicle Standard 105 and/or 135 by permanently affixing a compliance label

24 | or tag on each vehicle prior to their delivery and sale to Plaintiffs and the Class  GM's written representation

25 | certified that each of the Subject Vehicles were equipped with a parking brake system to ensure safe braking

26 | performance so that consumers, such as Plaintiffs and the General Public would be protected against

27 | unreasonable risk of crashes occurring as a result of the defective design, construction, or performance of

28 | motor vehicles and to protect against unreasonable risk of death or injury in the event of a crash

72    The Subject Vehicles manufactured and/or equipped with the PBR/TRW parking brake systems were defective at the time of delivery  And, at all times relevant, GM knew that the parking brake systems on the Subject Vehicles would not work, fail or wear-out prematurely (at an average of 24 months in service), eliminating the parking brake's effectiveness to immobilize the vehicle, the intended purpose for which the parking brake system was designed to do

73    The failure of the PBR/TRW parking brake systems on the Subject Vehicles is directly and proximately caused by, *inter alia*, the parking brake systems' failure to recenter the brake lining within the brake drum or "hat "  The defective design causes the parking brakes to either altogether fail to work or results in contact between the brake lining and drum during normal foreseeable use, causing the brake linings on the Subject Vehicles to fail, malfunction and/or wear-out and become ineffective as an immobilization device for the vehicle thereby unnecessarily subjecting Plaintiffs, members of the class and the general public to the serious risk of bodily injury and/or death

74    GM's placing the written Compliance Certification label it permanently affixed to each of the Subject Vehicles at issue that the vehicle complied with Federal Motor Vehicle Safety Standard 105 was knowingly false, or in the exercise of reasonable care, GM should have known that said Certifications were false and/or misleading in that defendants were aware, or in the exercise of reasonable care, should have been aware that (1)  the parking brakes on the Subject Vehicles were defective in that they did not work, *would fail, and/or were substantially certain to fail well before the end of the expected life of the vehicle* (at an average of 24 months of service), (2) that the parking brakes on the Subject Vehicles did not meet the minimum safety performance requirements for motor vehicles or items of motor vehicle equipment (failed its essential function as an immobilization device), and (3) that the presence of the defect as alleged herein created an unreasonable risk of crashes occurring as a result of this design defect and/or failed to protect the public against the unreasonable risk of death or injury as a result of an likely unattended vehicle would roll and cause a crash

75    Plaintiffs claims herein are based solely on the laws of the State of California and it is averred that any allegations in this Complaint referring to any failure to comply with the laws of the United States of America, including any compliance and certification requirements of the United States Department of Transportation, National Highway Traffic Safety Administration, and/or Federal Motor Vehicle Safety

-29-

**FOURTH AMENDED COMPLAINT**

1  Standards and Regulations, are solely applicable insofar as they give rise to violations of the laws of the

2  State of California

3  **F.    GM's Violation of California's Secret Warranty Law**

4  　　　76    GM's conduct violates California Civil Code § 1795 90 *et seq* (California's Secret Warranty

5  Law) which was enacted to abolish "secret" warranties and practices as alleged herein    The term "secret"

6  warranty" is used herein to describe the practice by which an automaker, such as GM, establishes a policy

7  to pay for the repair of that defect without making the defect or the policy known to the public at large    A

8  *secret warranty is usually created when the automaker, such as GM, realizes that a large number of its*

9  customers are experiencing a defect not otherwise covered by a factory warranty, and decides to offer

10  warranty coverage to individual customers only if the customer complains about the problem first    The

11  warranty is therefore considered "secret" because all owners and lessees are not notified of it    Instead, the

12  automaker usually issues a service bulletin to its regional offices and/or dealers on how to deal with the

13  defect    Because owners and lessees are kept in the dark about the cost-free repair, the automaker only has

14  to reimburse those customers who complain loudly enough, the quiet consumer pays to fix the defect his or

15  herself.

16  　　　77    Section 1795 92 of the California Secret Warranty Law imposes several duties on

17  automakers, including GM, each of which is designed to do away with secret warranties

18  　　　78    Specifically, the California Secret Warranty law requires automakers to notify all eligible

19  owners and lessees ("consumers") by first-class mail, *within 90 days of adoption*, whenever they enact "any

20  program or policy that expands or extends the consumer's warranty beyond its stated limit or under which

21  [the] manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for

22  all or any part of the cost of repairing, any condition that may substantially affect vehicle durability,

23  reliability, or performance[ ]"

24  　　　79    The California Secret Warranty Law also requires automakers, including GM, to provide the

25  New Motor Vehicle Board with a copy of the notice described in the preceding paragraph, so the public can

26  view, inspect, or copy that notice

27  　　　80    Additionally, the California Secret Warranty Law requires automakers, including GM. to

28  advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or

-30-

**FOURTH AMENDED COMPLAINT**

1  reimbursement program

2    81    The California Secret Warranty Law also requires an automaker, such as GM, to "implement

3  procedures to assure reimbursement of each consumer eligible under an adjustment program who incurs

4  expenses for repair of a condition subject to the program prior to acquiring knowledge of the program "

5    82    As stated above, on or about October 2002, GM issued a service bulletin that describes a

6  problem with the drum-in-hat parking brake system installed on the Subject Vehicles  In that bulletin, GM

7  describes the problem or defect as being "   due to the parking brake shoe contacting the drum in hat rotor

8  without the parking brake being applied, causing premature wear on the shoe lining " This GM service

9  bulletin also explains that the problem or defect may be corrected by installing the GM Parking Brake Kit

10  which contains a re-designed spring clip retainer and describes, in detail how to install these corrective

11  replacement parts

12    83    At all relevant times, GM has taken the position that repair and replacement of the parking

13  brake components are a part of a consumer's "duty" to maintain his or her vehicle  As a result, GM does not

14  typically pay for the replacement and installation of the Parking Brake Kit or its re-designed spring clip

15  retainer under its new car warranty (or any other warranty)

16    84    Plaintiffs are informed and believe and thereon allege that GM has, when the customers have

17  complained loudly enough, offered to pay for all or any part of the cost of repairing the problem in the

18  Subject Vehicles and therefore, GM is obligated to comply with the provisions of the California Secret

19  Warranty Law, but has not done so   Moreover, by extending its new car warranty to cover replacement and

20  installation of the Parking Brake Kit and/or the re-designed spring clip retainer to some customers and not

21  others, GM has expanded or extended the consumer's express warranty beyond its stated limit

22    85    Specifically, GM did not notify Plaintiff, or any of the other owners or lessees of the Subject

23  Vehicles of their right to seek a free repair, replacement or retrofit of the Parking Brake Kit or its re-designed

24  spring clip retainer, or to be reimbursed for the cost of repairing the parking brakes installed in these

25  vehicles

26    86    At all times relevant, plaintiffs are informed and believe, and thereon allege that GM has not,

27  and did not comply with the dealer-notification provisions of the California Secret Warranty Law nor has

28  GM sent a copy of its Service Bulletin to the New Motor Vehicle Board

-31-

1      87     At all times relevant, Plaintiffs are informed and believe, and thereon allege that GM has

2    refused to provide the free repair, replacement or retrofitting of the GM Parking Brake Kit or its re-designed

3    spring clip retainer to owners and lessees of the affected vehicles who have specifically requested it and has

4    refused to reimburse consumers who have paid to have the Parking Brake Kit and/or the re-designed spring

5    clip retainer installed in their vehicles except for some who complained enough

6      88     Knowing the truth and motivated by profit and market share, GM has knowingly and willfully

7    engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated

8      89     The defective rear brake system on the Subject Vehicles has resulted and will continue to

9    result in significant loss and damage to the class members, including but not limited to reduced fair market

10   value

11      90     The claims of the named Plaintiffs are for damages less than $75,000 each, including all

12   restitution, punitive, compensatory or statutory damages, interest, attorneys' fees and costs

13

14                                  **V.**

15           **TOLLING OF STATUTE OF LIMITATIONS AND ESTOPPEL**

16      91.    Any applicable statutes of limitation have been equitably tolled by GM's affirmative acts of

17   fraud, fraudulent concealment, suppression and denial of the true facts regarding the existence of the defect

18   braking systems in the Subject Vehicles  GM knew of the defects  However, rather than disclosing the

19   defects, GM made affirmative representations, discussed *supra* , to Plaintiffs and others similarly situated

20   about the quality, safety and parking brake systems of the Subject Vehicles that it knew were false when

21   made  In addition to making affirmative representations that were false, GM also fraudulently concealed

22   material facts about the defective parking brake systems on the Subject Vehicles from Plaintiffs and others

23   similarly situated  GM's acts of fraudulent concealment include, but are not limited to intentionally covering

24   up and refusing to publically disclose critical internal memoranda, design plans, studies, Notices of Action,

25   Problem Detail Reports and other reports of failure and injury  Through such acts of fraudulent

26   concealment, GM was able to actively conceal from the public for years the truth about the defective design

27   and manufacture of the parking brake systems on the Subject Vehicles otherwise known as the drum-in-hat

28   or Banksia-style of parking brake system, thereby tolling the running of any applicable statute of limitations

-32-

**FOURTH AMENDED COMPLAINT**

92     GM is estopped from relying on any statutes of limitation because of their misrepresentations and fraudulent concealment of the true facts concerning the defective parking brake system on the Subject Vehicles Defendants were, at all times relevant, aware of the nature and existence of the defects in the parking brakes on the Subject Vehicles as alleged herein but at all times have continued to manufacture, certify, market, advertise, distribute, and sell the Subject Vehicles without revealing the true facts concerning these defects in order to sell their products despite this knowledge The true facts about the Subject Vehicles continues to be concealed from the public, including Plaintiffs, the General Public, and those similarly situated to this day

93     Through such acts of fraudulent concealment, Defendants have successfully concealed from the public facts necessary to support the claims herein Plaintiff, the General Public and others similarly situated, were and are prevented from knowing and having knowledge of such unlawful, unfair, fraudulent, untrue and/or deceptive conduct or of facts that might have led to the discovery thereof Plaintiff exercised due diligence to learn of their legal rights and despite such diligence, failed to uncover the existence of the violations alleged herein until within (3) years of the filing this complaint

94     At all times relevant, GM possessed a far greater degree of commercial understanding and substantially more economic muscle than Plaintiffs and others similarly situated GM's disclaimer and limitation of liability is and was oppressive (inequality in bargaining power which resulted in no real negotiation and "an absence of meaningful choice) and as a result of surprise (the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms)

## VI.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

95     Plaintiffs bring this action on behalf of themselves, on behalf of all others similarly situated, and on behalf of the General Public, and as members of the classes or subclasses (collectively referred to as "the Class") defined as follows

(1)    California Class. The California Class that Plaintiffs seek to represent (the "California Class") consists of all persons and entities who purchased or leased, or will purchase or lease,

1    a Subject Vehicle in California. The class specifically does not include any claims seeking

2    damages for personal injuries or property damage resulting from defects as alleged herein

3    Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled

4    person of Defendants, as well as the officers, directors, agents, servants, or employees of

5    Defendants, and the immediate family member of any such person  Also excluded is any

6    judge in this case who may preside over this case

7    (2)    Nat1onal Class·  The National Class that Plaintiffs seek to represent (the "National Class")

8    is defined to include all persons and entities who purchased or leased, or will purchase or

9    lease, a Subject Vehicle in the United States   The class specifically does not include any

10    claims seeking damages for personal injuries or property damage resulting from defects as

11    alleged herein   Excluded from the National Class are Defendants, any parent, subsidiary,

12    affiliate, or controlled person of Defendants, as well as the officers, directors, agents,

13    servants, or employees of Defendants, and the immediate family member of any such person

14    Also excluded is any judge in this case who may preside over this case

15    96    This action has been brought and may be properly maintained as a class action pursuant to

16  the provisions of California Code of Civil Procedure § 382, California Civil Code § 1781, and other

17  applicable law

18    97    **Numerosity of the Class** - Code of Civ Proc  § 382, Civ  Code § 1781(b)(2)  Members of

19  the class or classes are so numerous that their individual joinder is impracticable  Plaintiffs estimate that

20  there are hundreds of thousands if not millions of class members  The precise number of class members and

21  their addresses are unknown to Plaintiffs, but can be obtained from the Defendants' records  Class members

22  may be notified of the pendency of this action by electronic mail, the Internet, other mail, or published

23  notice

24    98    **Existence of Predominance of Common Questions of Fact and Law** - Code of Civ Proc

25  § 382, Civ  Code § 1781(b)(2)·  Common questions of law and fact exist as to all members of the Class

26  These questions predominate over any questions affecting only individual class members  These common

27  legal and factual questions include

28    (1)    Whether the parking brake system on the Subject Vehicles are defective,

-34-
**FOURTH AMENDED COMPLAINT**

(2)    Whether the parking brake system on the Subject Vehicles have a safety-related defect,

(3)    Whether the parking brake system on the Subject Vehicles contain any means for actively self-centering the brake shoe within the brake drum during use,

(4)    Whether the defect in the parking brake system on the Subject Vehicles caused and/or contributed to the brake lining(s) to sustain prolonged contact with the brake drum(s),

(5)    Whether the defect in the parking brake system on the Subject Vehicles caused the parking brakes not to work at all, not to work properly, and/or to wear-out or fail prematurely,

(6)    Whether Defendants knew or should have known or was reckless in not knowing that parking brakes on the Subject Vehicles are defective,

(7)    Whether Defendants knew or should have known or was reckless in not knowing that the parking brake systems on the Subject Vehicles would prematurely wear out and fail before the end of the expected useful life of the vehicles,

(8)    When Defendants became aware of the defect(s) in the parking brake system on the Subject Vehicles as alleged herein,

(9)    Whether Defendants had a duty to Plaintiffs and the Class to disclose the defective nature of the parking brake system on the Subject Vehicles,

(10)    Whether Defendants concealed and/or failed to disclosed material facts concerning the nature and existence of the defect(s) to Plaintiffs and the Class

(11)    Whether the representations made by Defendants were and are false and/or had and have had a tendency to deceive, by either failing to disclose the existence of the defect known to GM, and known to Plaintiffs and others similarly situated or by misrepresenting that the Subject Vehicles contained no safety-related defects,

(12)    Whether GM had exclusive knowledge of material facts concerning the defect(s) alleged herein, not known to Plaintiffs and others similarly situated,

(13)    Whether GM made partial representations concerning the quality, safety and/or functionality of the parking brake systems on the Subject Vehicles, all the while concealing material facts concerning the nature and existence of the defect(s) as alleged herein,

(14)    Whether Defendants failed to adequately warn and/or notify class members and the General

-35-
**FOURTH AMENDED COMPLAINT**

1    Public regarding the hazards of the parking brakes on the Subject Vehicles wearing out

2    and/or failing prematurely due to their safety related design defect,

3    (15)    Whether Defendants continued to sell the Subject Vehicles with the defective parking brake

4    system as alleged herein despite its knowledge and/or reckless or negligent disregard of the

5    defect(s) alleged herein,

6    (16)    Whether Defendants violated California consumer protection statutes, including but not

7    limited to California Consumers Legal Remedies Act Civil Code §§ 1750 *et seq*, and

8    California Business and Professions Code §§ 17200 *et seq* and California Civil Code §§

9    1795 90 *et seq*,

10    (17)    Whether Defendants have failed to notify Subject Vehicle owners or lessees of the defect(s)

11    here at issue and repair or correct (or offer to repair or correct) defective parking brake

12    systems on the Subject Vehicles at no cost to the owners or lessees;

13    (18)    Whether Defendants are obligated to inform the Class of their right to obtain, free of charge,

14    repair and replacement of the defective components to the defective parking brake system

15    on the Subject Vehicles,

16    (19)    Whether Defendants adequately informed Dealers of the Parking Brake Shoe Kit (and re-

17    designed spring clip retainer replacement) and secret warranty as required by the California

18    Secret Warranty Law,

19    (20)    Whether Defendants were required to provide the New Motor Vehicle Board with a copy of

20    GM's Service Bulletin(s) concerning the Replacement Parking Brake Shoe Kit (or the

21    information contained in the bulletin(s)) so that the public could have access to it,

22    (21)    Whether Defendants committed an unlawful, unfair and/or "fraudulent" business act or

23    practice within the meaning of the Business and Professions Code §§ 17200 *et seq*,

24    (22)    Whether the class members are entitled to damages, for the cost of repair and other attendant

25    costs and/or the difference between what was represented, a vehicle equipped with a parking

26    brake that would work as an immobilization device, and what they received, a vehicle with

27    a parking brake that would not immobilize the vehicle when required,

28    (23)    Whether the class members are entitled to restitution,

-36-

**FOURTH AMENDED COMPLAINT**

1    (24)    Whether the class members are entitled to disgorgement of profits wrongfully obtained as

2    a result of the misconduct as alleged herein, and

3    (25)    Whether, as a result of Defendants' misconduct, Plaintiffs and the classes are entitled to

4    damages, restitution, equitable relief and other relief, and the nature and amount of such

5    relief

6    99    **Typicality**  Plaintiffs' claims are typical of the claims of the members of the Class because

7    Plaintiffs each purchased and owned one of the Subject Vehicles containing the defective parking brakes

8    alleged herein  Plaintiffs and the members of the Class sustained the same types of damages and losses

9    100    **Adequacy**  Plaintiffs are adequate representatives of the Class because their interests do not

10    conflict with the interests of the members of the Class Plaintiffs seek to represent  Plaintiffs have retained

11    counsel competent and experienced in complex class action litigation and Plaintiffs intend to prosecute this

12    action vigorously    The interests of members of the Class will be fairly and adequately protected by

13    Plaintiffs and their counsel

14    101    **Superiority and Substantial Benefit**  The class action is superior to other available means

15    for the fair and efficient adjudication of Plaintiffs and the Class members' claims  The damages suffered

16    by each individual Class member may be limited  Damages of such magnitude are small given the burden

17    and expense of individual prosecution of the complex and extensive litigation necessitated by defendants'

18    conduct  Further, it would be virtually impossible for the Class members to individually to redress the

19    wrongs done to them  Even if members of the Class themselves could afford such individual litigation, the

20    court system could not  Individualized litigation increases the delay and expense to all parties and the court

21    system, due to the complex legal and factual issues of the case  By contrast, the class action device presents

22    far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and

23    comprehensive supervision by a single court

24    102    In the alternative, the Class should be certified because

25    (a)    the prosecution of separate actions by individual members of the Class would

26    create a risk of inconsistent or varying adjudications with respect to individual Class members which would

27    establish incompatible standards of conduct for defendants,

28    (b)    the prosecution of separate actions by individual members of the Class would

-37-
**FOURTH AMENDED COMPLAINT**

1   create a risk of adjudications with respect to them, which would, as a practical matter, be dispositive of the

2   interests of the other Class members not parties to the adjudications, or substantially impair or impede their

3   ability to protect their interests, and

4                   (c)       Defendants have acted or refused to act on grounds generally applicable to the

5   Class, and/or the General Public, thereby making appropriate final and injunctive relief with respect to the

6   classes as a whole

7

8                                              **VII.**

9                       **PRIVATE ATTORNEY GENERAL ALLEGATIONS**

10          103     In addition to asserting class action claims in this action, Plaintiffs assert claims as private

11   attorney generals on behalf of the members of the General Public pursuant to Business and Professions Code

12   section 17204   The purpose of such claims is to require Defendants to disgorge and restore all monies

13   wrongfully obtained by Defendants through their unfair business acts and practices   A private attorney

14   general action is necessary and appropriate because Defendants have engaged in the wrongful acts and false

15   advertising described herein as a general business practice

16

17                                              **VIII.**

18                               **FIRST CAUSE OF ACTION**

19          **Violation of California's Consumer Legal Remedies Act, Civil Code § 1750 et. seq.**
                                    **(Against All Defendants)**

20

21          104     Plaintiff incorporates all preceding paragraphs as if fully set forth herein

22          105     Defendants are "persons" as defined by Civil Code § 1761(c)

23          106     Plaintiffs and each member of the Class are "consumers" within the meaning of Civil Code

24   § 1761(d)

25          107     The Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq* applies

26   to Defendants' actions and conduct described herein because it extends to transactions that are intended to

27   result, or which have resulted, in the sale or lease of goods or services to consumers

28   ///

108    GM and Defendants DOES 1 through 100 have violated the CLRA in at least the following respects

(a)    In violation of Section 1770(a)(3), Defendants have misrepresented that the Subject Vehicles are Certified that they Conform to All Applicable U S Federal Motor Vehicle Safety Standards when they do not conform to Standard 105 and/or 135 as set forth above in paragraph no 44, and paragraph no 's 60-66,

(b)    In violation of Section 1770(a)(5), Defendants have represented that the Subject Vehicles have characteristics and benefits that they do not have, as alleged herein and as set forth in ¶ 105(d) below,

(c)    In violation of Section 1770(a)(7), Defendants have represented that the Subject Vehicles are of a particular standard, quality, or grade when they are not, as alleged herein and as set forth in ¶ 105(d) below,

(d)    In violation of Section 1770(a)(9), Defendants have advertised the Subject Vehicles with an intent not to sell them as advertised, As stated above in greater detail in paragraphs No 's 1-5, 19-65, 71, and 73-85, GM widely disseminated, broadcasted and represented throughout the Class period, and for many years prior, that the parking brake system on the Subject Vehicles "Conforms to All Applicable U S Federal Motor Vehicle Safety Standards    " including Standard 105 and/or 135, that the Subject Vehicles would have "brake systems    meeting regional legal requirements," and were "designed and tested with top-quality GM brake parts," have a "Technically Advanced Breaking System," and were "engineered for excellent durability [with] redesigned braking [] systems " In addition, GM made numerous references to the function, purpose and intended use of the parking brakes on the Trucks in the Owner's manuals that accompanied the sale of each of these vehicle for owners and lessees to use the parking brakes in a wide variety of situations, such as using the parking brake when "Parking on Hills," or when "Changing a Flat Tire" and to "Set the parking brake firmly" each of which either expressly or by implication affirmatively represented that Plaintiffs would have a fully functional

-39-
**FOURTH AMENDED COMPLAINT**

1    parking brake system and that if a defect existed, GM would perform "Repairs made

2    to correct any defect."    These representations were false, deceptive and/or

3    misleading because the parking brake system on the Subject Vehicles were in fact

4    defective at the time of manufacture, delivery and sale, and have substantially failed

5    to perform their intended function as an immobilization device for the Subject

6    Vehicles as alleged in paragraphs 1-5, 19-65, 71, and 73-85  As a result, Plaintiffs

7    and others similarly situated did not receive a vehicle with the characteristics and

8    benefits of having a properly functioning immobilization device on these vehicles,

9    were not "top-quality," "Professional Grade," and were in fact of poor, substandard

10    quality, and at all times relevant, GM advertised the Subject Vehicles with intent not

11    to sell the Subject Vehicles as advertised thus violating Section 1770(a)(5), (a)(7) and

12    (a)(9)

13    (e)    In violation of Section 1770(a)(14), Defendants have misrepresented that a

14    transaction confers or involves legal rights, obligations, or remedies of plaintiffs and

15    other members of the Class concerning the Subject Vehicles when they were not  As

16    stated above in greater detail in paragraphs no's 3, 42-61, 66-72, at all times

17    relevant, GM's standard, written Warranty and Owner's Manual accompanied the

18    sale of each of the Subject Vehicles at issue representing that GM would provide a

19    legal right for consumers to have the defective parking brakes repaired, free of

20    charge, "Repairs made to correct any defect" and "See Owner's Manual", that GM

21    was obligated and assumed the duty to notify consumers of the important safety

22    related defects, such as the defects in the parking brake system at issue, and that the

23    remedies and repairs promised in GM's Warranty and Owner's Manual would be

24    honored, when they were not, and at all times relevant, GM failed to provide

25    adequate notice and repair of the defects and the remedies provided under its

26    warranty as alleged in paragraphs 3, 42-61, 66-72,

27    (f)    In violation of Section 1770(a)(16), Defendants have represented that the Subject

28    Vehicles were supplied in accordance with previous representations when they were

-40-

**FOURTH AMENDED COMPLAINT**

not  As stated above in greater detail in paragraphs no 's 3, 42-61, 66-72, at all times relevant, GM represented that the Subject Vehicles were supplied, delivered and Certified to comply with the Federal Motor Vehicle Safety Standards, Standard 105 and/or 135 and/or otherwise free of any "defect in performance, construction, a component, or material of a motor vehicle or motor vehicle equipment" and/or otherwise meet the "minimum standard for motor vehicle or motor vehicle equipment performance," "in a way that protects the public against unreasonable risk of accidents occurring because of the design    " in accordance with 49 U S C § 30102 and GM's own internal "Pre-Delivery Inspection" and/or "Completely Satisfied - New Vehicle Delivery System" and/or other similar GM policies and procedures  As alleged herein, at all times relevant, GM knew, or in the exercise of reasonable care should have know of the defects alleged herein, concealed and failed to disclose the existence of these defects and/or partially disclosed information concerning the parking brake system on the Subject Vehicles but failed to disclose important, safety related information concerning the defect(s) that existed in the parking brakes, and thus, the Subject Vehicles were <u>not</u> supplied in accordance with GM's representations and Certification of the Subject Vehicles in violation of Section 1770(a)(16), and

(g)    In violation of Section 1770(a)(19), in that GM has inserted an unconscionable provision in the contract/warranty that was provided along with the sale of each of the Subject Vehicles at issue  At all relevant times, GM has explained, interpreted, represented and/or attempted to insert an unconscionable provision in its claimed, Limited Warranty, a clause, the object of which is to directly or indirectly, exempt GM from its responsibility for its fraudulent, deceptive and/or misleading acts and practices as alleged herein and/or seeks to limit its liability for its willful injury to Plaintiffs and others similarly situated, or for its violations of the laws, including California's consumer protection statutes as alleged herein, regardless of whether its misconduct is deemed willful or negligent, and is therefore against the policy of the

-41-

**FOURTH AMENDED COMPLAINT**

1   laws of the State of California, are void and in violation of Section 1770(a)(10), To

2   the extent that GM disclaims any responsibility or liability for the misconduct as

3   alleged herein, either in its alleged "Limited Warranty," it's Owner's Manual, and or

4   any other writing created and prepared by GM or otherwise GM required consumers

5   to sign, such disclaimers are invalid a violates the CLRA in that said limitations of

6   liability were not conspicuous, are ambiguous, unclear, indefinite, lacks specificity,

7   and are unconscionable, both procedurally and substantively, and that said warranty

8   and/or warranties to which GM has made have failed their essential purpose to

9   provide repair and replacement, free of charge, and/or otherwise contradict its

10   affirmative representations in its Owner's Manual, that "Repairs [would] be made to

11   correct any vehicle defect" within the warranty period" when at all times relevant,

12   GM denied all such claims during its claimed warranty period as alleged herein

13   Further, at all times relevant, GM has unreasonably delayed and/or their existed a

14   total inability of GM to repair the known defects as alleged herein  Accordingly,

15   GM's denials and disclaiming of said warranty and/or warranties and/or its insertion

16   of any such unconscionable clause(s) are invalid and, in and of themselves, a

17   violation of Section 1770(a)(10), Further, at all times relevant, GM's standardized

18   "Limited Warranty" that was provided along with the sale of each of the Subject

19   Vehicles unlawfully, unfairly and unconscionably seeks to limit its responsibility, by

20   virtue of its superior position as the world's largest automaker resulting in a gross

21   inequality in bargaining power and which resulted in no real negotiation and absence

22   of meaningful choice for consumers and therefore is, and was, at all times relevant,

23   oppressive  Moreover, any such clauses GM may assert have been buried in its

24   prolix pre-printed form warranty drafted and prepared by GM, also in violation of

25   Section 1770(a)(10)

26   109.   At all times relevant, GM failed to diligently make the repairs to the parking brake systems

27   on the Subject Vehicles when owners and lessees presented the vehicles for repairs and/or service, that such

28   repairs and replacement of the defective components on the parking brake systems would have cured the

-42-

**FOURTH AMENDED COMPLAINT**

1    defects, in that GM knew, and had researched and re-designed replacement components, and that losses and

2    injuries to Plaintiffs, others similarly situated and the General Public would be substantial, including but not

3    limited to serious bodily injury and/or death

4        110    GM's misconduct and/or deceptive acts alleged herein occurred in the course of selling a

5    consumer product and Defendant has done so continuously through the filing of this complaint

6        111    As a direct and proximate result of GM's violation of Civil Code Section 1770, *et seq*,

7    Plaintiffs and other Class members have suffered irreparable harm and monetary damages entitling them to

8    both injunctive relief and restitution   Plaintiffs, on behalf of themselves and on behalf of the Class, seek

9    damages and all other relief allowable under the CLRA

10        112    At all times relevant, GM knew, or in the exercise of reasonable care, should have known,

11    that the parking brake systems on the Subject Vehicles were, and remain defective, and GM concealed these

12    material facts from Plaintiffs and others similarly and/or failed to disclose (omissions) of material facts,

13    when GM had exclusive knowledge of the material facts concerning the existence of the extremely important

14    safety related issue, that at all times relevant, where not known by Plaintiffs and others similarly situated,

15    and/or by virtue of GM's partial representations concerning the quality, safety and performance of the

16    parking brakes, as alleged herein, and at all time relevant concealing the true nature of the defects at issue

17        113    As alleged herein, soon after the Subject Vehicles were placed into the stream of commerce,

18    GM's received numerous complaints, including complaints of serious personal injuries and deaths directly

19    and proximately caused by defective parking brakes on the Subject Vehicles, and at all relevant times, GM

20    remained silent, failed and refused to warn consumers about these defects in the parking brakes on these

21    vehicles and to this day, GM continues to conceal this material, important safety related information from

22    consumers, that (a) the parking brakes on the Subject Vehicles do not work, fail or malfunction without

23    exception, (b) the parking brakes on the Subject Vehicles are defective and the defects are substantially

24    certain to cause the parking brakes on the Subject Vehicles not to work and/or malfunction well before the

25    end of the useful life of the vehicles (over 200,000 miles), and (c) that each of the parking brakes on the

26    Subject Vehicles have either failed and/or are substantially certain to fail and cease to function as an

27    immobilization device, long before the end of the expected life of the vehicles (over 200 000 miles)

28        114    At all times relevant, GM has also actively misrepresented the cause of the malfunctions and

-43-

**FOURTH AMENDED COMPLAINT**

1   premature failures of the parking brakes on the Subject Vehicles, blaming the cause of the defects on alleged

2   normal wear and tear, or on the users and/or consumers of the Subject Vehicles when GM knew that these

3   malfunctions and failures were caused by the design defects as alleged herein   To this day, GM has neither

4   provided proper notice of these defects nor offered to provide repair or replacement of the defective parking

5   brakes at no cost to Plaintiffs and others similarly situated

6          115   As a result of the misconduct as alleged herein, Plaintiffs and each Class member have been

7   damaged – damages being the difference between the value of what was represented  a Subject Vehicle with

8   a parking brake system that would function and operate as an immobilization device, and what they received,

9   a Subject Vehicle that would not immobilize the vehicle when required

10         116   Knowing the truth and motivated by profit and market share, GM has knowingly and willfully

11   engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated

12   GM's wrongful conduct, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous,

13   substantially injurious and malicious  Accordingly, Plaintiffs, and others similarly situated, seek punitive

14   damages against defendants in an amount to deter defendants from similar conduct in the future, pursuant

15   to Civil Code § 1780 (a)(4)

16         117   The facts which GM has misrepresented and concealed as alleged in the preceding

17   paragraphs, were material to the decisions about whether to purchase the Subject Vehicles in that Plaintiffs

18   and others similarly situated would not have purchased these defective and unsafe vehicles but for

19   Defendants' misrepresentations and concealment of material facts and/or paid more for the vehicles as

20   represented, instead of as delivered   As a direct and proximate result of the misconduct alleged herein,

21   Plaintiffs and all others similarly situated paid hundred, if not thousands of dollars more for these vehicles

22   than they were worth at the time of delivery and/or sale

23         118   Pursuant to Civil Code Section 1782, Plaintiffs provided notice to Defendants at least thirty

24   days prior to amending this action to include a prayer for damages

25         119   This amendment to the complaint was made because the Defendants failed to make the

26   showing required by Civil Code Section 1782(c)

27         120   As a result, Plaintiffs seek actual and punitive damages for violation of the CLRA   In

28   addition, pursuant to Civil Code Section 1782(a)(2), Plaintiffs and members of the class are entitled to an

1  order enjoining the above-described wrongful acts and practices of defendants, providing restitution to

2  Plaintiffs and the class, ordering payment of costs and attorneys' fees, and any other relief deemed

3  appropriate and proper by the Court under Civil Code Section 1780

4       121  WHEREFORE, pursuant to the provisions of California Civil Code § 1780, Plaintiffs are

5  entitled to actual and punitive damages plus interest thereon, restitution and other appropriate equitable

6  relief, an order enjoining defendants from the unlawful practices described herein, as well as recovery of

7  attorneys' fees and costs of litigation

8

9  IX.

10  **SECOND CAUSE OF ACTION**

11  **Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 _et. seq._**

12  **(Against All Defendants)**

13       122  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein

14       123  Plaintiffs bring this claim on behalf of themselves and others similarly situated in their

15  representative capacity as a private attorney general against Defendant GM and Does 1 through 100, for their

16  unlawful, unfair, fraudulent, untrue and/or deceptive business acts and/or practices pursuant to California

17  Business & Professions Code section 17200 _et seq_ ("UCL") which prohibits all unlawful, unfair and/or

18  fraudulent business acts and/or practices

19       124  Plaintiffs assert these claims as they are representatives of an aggrieved group and as a private

20  attorney general on behalf of the general public and other persons who have expended funds that the

21  Defendants should be required to pay or reimburse under the restitutionary remedy provided by California

22  Business & Professions Code §§ 17200, _et seq_

23       125  Defendant's acts, omissions, misrepresentations, practices and non-disclosures of as alleged

24  herein constitute unlawful, unfair and/or fraudulent _business acts and/or practices_ within the meaning of

25  California Business & Professions Code §§ 17200, et seq

26       126  Defendant's unlawful business acts and/or practice as alleged herein have violated numerous

27  laws and/or regulations - federal and/or state, statutory and/or common law - and said predicate acts are

28  therefore _per se_ violations of §17200, _et seq_  These predicate unlawful business acts and/or practices

1  include, but are not limited to the following: violations of the Federal Motor Vehicle Safety Act

2  ("FMVSA"), 49 USCA § 30101 et seq , Federal Trade Commission Act ("FTC Act"), 15 U S C §§ 41-58,

3  and the Lanham Trade-Mark Act ("Lanham Act"), 15 U S C §§ 1051-1127, California Civil Code § 1795 90

4  *et seq* (the "California Secret Warranty Law"), California Civil Code §§ 1572 (Actual Fraud), 1573

5  (Constructive Fraud), 1710 (Deceit), California Civil Code § 1668 (*Contracts contrary to policy of law*),

6  California Commercial Code § 2313 (breach of express warranty), California Civil Code §§ 1790, the Song-

7  Beverly Consumer Warranty Act ("Act"), and Civil Code § 17500, California's False Advertising Act   In

8  addition, GM has violated, and/or caused the owners and lessees of the Subject Vehicles to violate California

9  Vehicle Code §§ 26450, 26451, and/or the brake related laws of the states, which include·

| | |
|---|---|
| Alabama | Ala Admin Code r  760-X-1- 09  Defining The Adequacy Of Brakes, And Prescribing The Performance Standards Thereof, Of Motor Vehicles Using The Highways Of The State Of Alabama   Ala.Code 1975 § 32-5-212  Brakes |
| Alaska | Alaska Admin Code tit. 13, § 04 205 BRAKES AND OTHER EQUIPMENT |
| Arizona | A R S  § 28-952  Required brake equipment |
| Arkansas | A C A § 27-37-501  Brakes generally |
| California | CA Veh  Code § 26450  Required brake system, CA Veh  Code § 26451  Parking brake system |
| Colorado | C R S.A  § 42-4-223  Brakes |
| Connecticut | C G S A  § 14-80h  Brake equipment of motor vehicles |
| Delaware | 21 Del  C  § 4303  Brakes -- General requirements |
| Florida | F S A  § 316 261  Brake equipment required |
| Georgia | Ga  Code Ann , § 40-8-52  Parking brakes |
| Idaho | I C  § 49-933  Brakes |
| Illinois | 625 ILCS 5/12-301  Brakes |
| Indiana | IC 9-19-3-1  Safety requirements, means of applying brakes |
| Iowa | I C A  § 321 430  Brake, hitch and control requirements |
| Kansas | K S A  § 8-1734  Braking systems for motor vehicles and combinations of vehicles, performance requirements, additional braking systems, when, antique vehicles exempted |

| | |
|---|---|
| Kentucky | KRS § 189 090. Brakes |
| Louisiana | LSA-R S 32.341 Brake equipment required |
| Maine | 29-A M R.S.A § 1902. Brakes |
| Maryland | MD Code, Transportation, § 22-301.Necessary brake equipment |
| Massachusetts | M G.L A 90 § 7 Brakes, braking systems, mufflers, horns, lights, audible warning systems, and other equipment, compliance with safety standards, stickers and emblems |
| Michigan | M C L A 257 705 Brakes |
| Minnesota | M S A § 169 67 Brakes |
| Mississippi | Miss Code Ann § 63-7-51 Brakes, and Miss Code Ann § 63-7-53 Brake Standards |
| Missouri | V A M S 307 170 Other equipment of motor vehicles |
| Montana | MCA 61-9-303 Parking brakes--adequacy, MCA 61-9-301 Brake equipment required, and MCA 61-9-302 Service brakes--adequacy |
| Nebraska | Neb R St § 60-6,244 Motor vehicles, brakes, requirements |
| Nevada | N R S § 484 593 Equipment required |
| New Hampshire | N H Rev Stat § 266 27-a Parking Brakes Required<br>N H. Rev Stat § 266 27 Brakes Required |
| New Jersey | N J S A § 39 3-67 Brake equipment required |
| New Mexico | N M S A 1978, § 66-3-840 Brakes |
| New York | McKinney's Vehicle and Traffic Law § 375 Equipment |
| North Carolina | N C G S A § 20-124 Brakes |
| North Dakota | NDCC, 39-21-32 Brake equipment required |
| Ohio | R C § 4513 20 Brake equipment |
| Oklahoma | 47 Okl St Ann § 12-301 Brake equipment required |
| Oregon | O R S § 815 125 Brakes, requirements and standards |
| Pennsylvania | 75 Pa C S A § 4502 General requirements for braking systems |
| Rhode Island | Gen Laws 1956, § 31-23-4 Brake equipment required |
| South Carolina | Code 1976 § 56-5-4850 Brake equipment |

FOURTH AMENDED COMPLAINT

| South Dakota | SDCL § 32-18-14  Capability of parking brake-Parking brake assisted by service brake, SDCL § 32-18-13  Parking brakes--Violation as misdemeanor, and SDCL § 32-18-1  Brakes required on particular vehicles--Violation as misdemeanor |
|---|---|
| Tennessee | T C A § 55-9-204  Brakes |
| Texas | V T C.A , Transportation Code § 547 404  Parking Brakes Required, and V T C.A , Transportation Code § 547 401. Brakes Required |
| Utah | U C A 1953 § 41-6a-1623  Braking systems required--Adoption of performance requirements by department |
| Vermont | 23 V S A § 1307  Brake equipment required |
| Virginia | Va Code Ann § 46 2-1066  Brakes, and Va Code Ann § 46 2-1068  Emergency or parking brakes |
| Washington | West's RCWA 46 37 340  Braking equipment required |
| West Virginia | W Va Code, § 17C-15-31  Brakes-generally |
| Wisconsin | W S A 347 35  Brakes |
| Wyoming | W S 1977 § 31-5-950  General braking requirements |

127    Defendant's misconduct as alleged in this action constitutes negligence and other tortious conduct and this misconduct gave Defendant's an unfair competitive advantage over their competitors

128    The harm, the risk of serious injury to persons and/or property, including serious bodily injury and/or death resulting from the failure and substantial likely hood that these defective parking brakes on the Subject Vehicles will fail to function and operate as an immobilization device, far outweighs any benefit for allowing GM and Defendants DOES 1 through 100 to continue its acts and practices of misrepresenting the quality, safety and functionality and/or withholding and failing to disclose to owners and lessees of these vehicles important safety related information concerning a defect that, at all time relevant, Defendants knew, or in the exercise of reasonable care should have known since the date of manufacture and sale of each of the Subject Vehicles at issue

129    As a result of Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein, members of the public are likely to be deceived and/or have lead to consumer confusion

**FOURTH AMENDED COMPLAINT**

1    that the Subject Vehicles contain and/or are equipped with a fully functional and operational parking brake

2    system to use as an immobilization device to prevent the vehicle from unintended rolling, when· (1) parking

3    on a hill or incline, (2) jacking up the vehicle to replace a wheel or tire, particularly in case of a roadside

4    emergency such as a tire blow out or other common event that drivers are likely to experience, and (3) to

5    immobilize the vehicle when it is required to leave the vehicle unattended with the engine running  Said

6    acts, omissions, misrepresentations, practices and non-disclosures as alleged herein therefor constitute

7    fraudulent business acts and/or practices within the meaning of California Business & Professions Code §§

8    17200, *et seq*

9         130    As alleged herein, GM has for many years, conducted national advertising of its various

10   products, stressing the excellence and reliability of its products, including but not limited to the Subjects

11   Trucks, quality, safety, functionality and/or performance

12        131    At all relevant times, as alleged herein, GM has aggressively promoted and advertised the

13   Subject Vehicles in an unlawful, unfair, fraudulent, untrue and/or deceptive manner that is and was likely

14   to deceive the public

15        132    Defendant's misconduct, as fully described herein, constitutes acts of untrue and misleading

16   advertising and are, by definition, violations of California Business & Professions Code § 17200 *et seq*

17        133    The acts, omissions, misrepresentations, practices, non-disclosures and/or concealment of

18   material facts, and/or deception alleged in the preceding paragraphs occurred in connection with Defendant's

19   conduct of trade and commerce in California

20        134    Defendants' misconduct as alleged in this action constitutes negligence and other tortious

21   conduct and this misconduct gave these Defendants an unfair competitive advantage over their competitors

22        135    As a direct and proximate result of the aforementioned acts, Defendants, and each of them,

23   received monies expended by Plaintiffs and others Similarly Situated who purchased the Subject Vehicles

24        136    Plaintiffs further allege that the monies paid by them for the purchase of their Subject

25   Vehicles conferred a monetary benefit on Defendant GM, as without such purchases, GM would not have

26   been able to sell the Subject Vehicles through any third party distributors or retailers  Thus, the monies

27   obtained by GM through their sale of the Subject Vehicles were obtained as a result of monies paid by

28   Plaintiffs and the putative class, Plaintiffs have a vested interest in this money, and Plaintiffs are entitled to

-49-
**FOURTH AMENDED COMPLAINT**

1  restitution of such ill gotten gains

2      137    Defendants' conduct constitutes unfair acts or practices conducted in the course of defendants'

3  respective businesses, and thereby constitutes violations of California Business and Professions Code

4  sections 17200, *et seq* Such conduct offends the established public policy of the State of California and is

5  immoral, unethical, oppressive, unscrupulous and substantially injurious

6      138    As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business

7  practices as alleged herein, Defendants have. (a) sold more vehicles than it otherwise could have, (b) charged

8  inflated prices for the Subject Vehicles measured by the difference between what was represented a vehicle

9  with a parking brake system that would function and operate as an immobilization device, and what the

10 Class members received, a vehicle with a defective parking brake system that would not immobilize the

11 vehicle when required, unjustly enriching itself thereby; and (c) charged and retained fees for providing

12 repair and other services that they otherwise would not have been able to charge or retain

13      139    The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and

14 misleading advertising of defendants, as fully described herein, present a continuing threat to members of

15 the public to be injured by the Subject Vehicles as alleged herein  Pursuant to Section 17203 of the UCL,

16 Plaintiffs seek an order of this Court enjoining Defendants from continuing to engage in unlawful, unfair

17 or fraudulent business practices, and any other act prohibited by the UCL  Plaintiffs also seek an order

18 requiring Defendants to fully disclose the true nature of its misrepresentations and omissions, and engage

19 in a corrective notice and/or advertising campaign to fully disclose true nature of the defects in the parking

20 brakes on the Subject Vehicles as alleged herein and offer free replacement and repair of the parking brakes

21 on the Subject Vehicles in order to correct the misrepresentations and omissions made by Defendants

22      140    Defendants' conduct constitutes unfair acts or practices conducted in the course of Defendants

23 respective businesses, and thereby constitutes violations of California Business and Professions Code

24 sections 17200, *et seq*  Defendants' conduct and intent to widely market the Subject Vehicles to California

25 consumers involved false and misleading advertising  Such conduct offends the established public policy

26 of the State of California and is immoral, unethical, oppressive, unscrupulous and substantially injurious

27      141    Pursuant to Section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining GM

28 from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited

1   by the UCL Plaintiff also seeks an order requiring GM to comply with the terms of the California Secret

2   Warranty Law by (a) notifying Class Members of the secret parking brake warranty, (b) providing free

3   installation of the Parking Brake Kit (in installation of the re-designed spring clip retainer) to Class

4   Members, (c) notifying dealers of the facts underlying the parking brake problem and the terms of the secret

5   parking brake warranty, (d) notifying the New Motor Vehicle Board of the secret parking brake warranty,

6   and (e) identifying and reimbursing Class Members who have paid for the Parking Brake Kit (including the

7   re-designed spring clip retainer) to be installed   Plaintiff also seeks an order (i) enjoining GM from failing

8   and refusing to make full restitution of all moneys wrongfully obtained and (ii) disgorging all ill-gotten

9   revenues and/or profits earned or retained as a result of GM's violations of the California Secret Warranty

10   Law

11        142    As set forth, above, GM has violated the *California Secret Warranty Law, Civil Code §§*

12   *1795 90 et seq*   As a proximate result of GM's conduct, GM obtained secret profits by which it became

13   unjustly enriched at Plaintiff and the Class Members' expense

14        143    Plaintiffs also seek an order establishing GM as a constructive trustee of the secret profits

15   that served to unjustly enrich GM, together with interest during the period in which GM has retained such

16   funds, and requiring GM to disgorge those funds in a manner to be determined by the Court and in addition

17   to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and

18   restitution of, the monies collected and profits realized by Defendants

19        144    The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and

20   misleading advertising of Defendants, as fully described herein, present a continuing threat to members of

21   the public to be injured by the Subject Vehicles equipped with the defective parking brake systems as alleged

22   herein

23        145    WHEREFORE, Plaintiffs and the Class members are entitled to equitable relief, including

24   restitution, disgorgement of all profits accruing to Defendant because of its unlawful, unfair, fraudulent and

25   deceptive practices, attorney fees and costs, declaratory relief, and a permanent injunction enjoining

26   Defendant from its unlawful, unfair, fraudulent and deceitful activity

27   / / /

28   / / /

# X.

## **PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated and as to the Fourth Cause of Action, also on behalf of the general public, pray for judgment against Defendants as follows

A    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the class;

B    For actual damages for injuries suffered by Plaintiffs and the Class pursuant to California Civil Code § 1780(a)(1),

C    For an order awarding restitution and disgorgement of monies Defendants wrongfully acquired through the sales of the Subject Vehicles as a result of Defendants unlawful, unfair, and deceptive acts and/or practices, together with interest thereon to the date of payment to the victims of such violations,

D    For statutory damages in an amount of not less than $1,000 per Plaintiff or class member pursuant to California Civil Code § 1780(a)(1),

E    For an order requiring Defendants to immediately cease its wrongful conduct as set forth above, enjoining Defendants from continuing to falsely market and advertise, conceal material information and conduct business via the unlawful and unfair business acts and practices complained of herein, and ordering Defendants to engage in corrective notice,

F    For punitive damages in an amount to deter Defendants from similar conduct in the future pursuant to California Civil Code § 1780(a)(4),

G    For reasonable attorneys' fees and the costs of this action pursuant to California Code of Civil Procedure §§ 1021 5 and 1033.5(a)(10)(B), and attorney fees pursuant to California Civil Code § 1780(d), and/or from the common fund and for all costs associated with administration of the common fund and the costs of this action,

H    For pre-judgment interest at the maximum legal rate, and

I    For such other relief as this Court may deem just and proper

**FOURTH AMENDED COMPLAINT**

# XI

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for themselves and the class on all claims so triable

December 9, 2005

SPIRO MOSS BARNESS HARRISON & BARGE LLP

By

DAVID M ARBOGAST
Attorneys for Plaintiffs La Ronda Hunter,
Rosana N Pulgarin, Robin Gonzales and all others
Similarly Situated

FOURTH AMENDED COMPLAINT