**<u>Exhibit B</u>**
**<u>Deposition of LaRonda Hunter</u>**

**LA RONDA HUNTER**                                              **12/16/08**

---

**Page 1**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

LaRONDA HUNTER, ROSANA N.
FULGARIN, and ROBIN GONZALES,
on behalf of themselves and
on behalf of all others
similarly situated and the
general public,

             Plaintiffs,

     vs.                          No. BC324622

GENERAL MOTORS CORPORATION and
DOES 1 through 100,
             Defendants.

DEPOSITION OF LA RONDA HUNTER
Los Angeles, California
Tuesday, December 16, 2008

Reported by:
DENISE BARDSLEY
CSR No. 11241
JOB No. 101996

---

**Page 2**

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA
2            COUNTY OF LOS ANGELES
3
4    LaRONDA HUNTER, ROSANA N.
     FULGARIN, and ROBIN GONZALES,
5    on behalf of themselves and
     on behalf of all others
6    similarly situated and the
     general public,
7
              Plaintiffs,
8
         vs.              No. BC324622
9
     GENERAL MOTORS CORPORATION and
10   DOES 1 through 100,
11            Defendants.
12   _____
13
14
15
16       Deposition of LA RONDA HUNTER, taken on behalf of
17   Defendant General Motors Corporation, at 777 South
18   Figueroa Street, Los Angeles, California, beginning at
19   10:10 a.m. and ending at 3:25 p.m. on Tuesday,
20   December 16, 2008, before DENISE BARDSLEY, Certified
21   Shorthand Reporter No. 11241.
22
23
24
25

---

**Page 3**

1    APPEARANCES:
2
3    For Plaintiffs:
4       HEARD, ROBINS, CLOUD & LUBEL LLP
        3800 Buffalo Speedway, Fifth Floor
5       Houston, Texas 77098
        (713) 650-1200
6       (No appearance.)
7    SPIRO MOSS BARNESS LLP
        BY: IRA SPIRO
8       Attorney at Law
        11377 West Olympic Boulevard, Fifth Floor
9       Los Angeles, California 90064-1683
        (310) 235-2468
10
     For Defendant General Motors Corporation:
11
        KIRKLAND & ELLIS LLP
12      BY: PANTEA M. YASHAR
        Attorney at Law
13      777 South Figueroa Street
        Los Angeles, California 90017
14      (213) 680-8405
15   KIRKLAND & ELLIS LLP
        BY: KELLY L. GUZMAN
16      Attorney at Law
        200 East Randolph Drive
17      Chicago, Illinois 60601
        (312) 469-7319
18
19   Also Present:
20      ROBIN GONSALES
21   Videographer:
22   SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
        BRUNO SERE
        20 Corporate Park, Suite 350
23      Irvine, California 92606
        (949) 955-3855
24
25

---

**Page 4**

1              INDEX
2    WITNESS                    EXAMINATION
3    LA RONDA HUNTER
4
5       BY MS. YASHAR                    7
6
7
8              EXHIBITS
9    DEPOSITION                         PAGE
10   1  Plaintiff La Ronda Hunter's Response to     22
        Form Interrogatories, Set One; 14 pages
11
12   2  La Ronda Hunter's Response to Defendants'    24
        First Set of Interrogatories; 32 pages
13   3  Plaintiffs' Response to Defendants' First    27
        Set of Requests for Production; 14 pages
14
15   4  Fourth Amended Complaint; 55 pages           38
16   5  2001 GMC Yukon Yukon XL Manual               57
        Bates Nos. GM_HUNTER000002998 - 000003416
17   6  Photographs; 95 pages                        97
18   7  Photograph; 1 page                           97
19   8  Photograph; 1 page                           98
20   9  Photograph; 1 page                           98
21   10 Original complaint; 11 pages               103
22   11 Second Amended Complaint; 24 pages         103
23   12 First Amended Complaint; 49 pages          104
24
25

---

**1  (Pages 1 to 4)**

**Page 5**

INDEX (Continued):

EXHIBITS

DEPOSITION                                                        PAGE
13  2001 GMC Light Duty Truck Warranty and      110
    Owner Assistance Information
    Bates Nos. GM_HUNTER000030582 - 30614
14  Power Chevrolet invoice                     139
    Bates Nos. P3021 - P3022

15  Vehicle Inspection Sheet                    141
    Bates No. P3020
16  Power Pontiac, Buick, GMC invoice           142
    Bates No. P3014

17  Power Pontiac, Buick, GMC invoice           143
    Bates No. P3015
18  Power Chevrolet invoice                     145
    Bates No. P3016

INSTRUCTION NOT TO ANSWER
PAGE  LINE
19    22
21     2
21    17
47     8
48     7
73    15
86    11
88     3
109   14
110   16
119   23
122   24
133   11
138    3
152   10
155   20

**Page 6**

1    Los Angeles, California, Tuesday, December 16, 2008
2              10:10 a.m. - 3:25 p.m.
3
4        THE VIDEOGRAPHER:  Good morning, today is
5    December 16, 2008.  We are on the record at 10 past
6    10:00.  We're here for the deposition of La Ronda
7    Hunter in the matter of Hunter, et al., versus General
8    Motors, Case Number BC324622, pending before Superior
9    Court, State of California, County of Los Angeles.
10       This deposition is being taken on behalf of
11   the Defendant.  We are at the offices of Krikland &
12   Ellis, located at 777 South Figueroa Street, Los
13   Angeles, California.
14       My name is Bruno Sere, appearing on behalf of
15   Sarnoff Court Reporters and Legal Technologies located
16   in Los Angeles, California.
17       Would counsel please introduce themselves and
18   state their affiliation.
19       MS. GUZMAN:  Kelly Guzman, counsel for GM.
20       MS. YASHAR:  Pantea Yashar, counsel for GM.
21       MR. SPIRO:  Ira Spiro, S-p-i-r-o, counsel for
22   plaintiff.
23       THE VIDEOGRAPHER:  You may swear in the
24   witness.
25

**Page 7**

1                  LA RONDA HUNTER,
2    having been first placed under oath, was examined and
3    testified as follows:
4
5        THE VIDEOGRAPHER:  You may proceed.
6
7                    EXAMINATION
8    BY MS. GUZMAN:
9        Q   Good morning, Ms. Hunter.  I am Kelly Guzman,
10   and I represent General Motors.
11       Would you please state your name for the
12   record.
13       A   My name is La Ronda Hunter.
14       Q   And I would like to go through a few basic
15   rules for the procedure, ground rules, and then give
16   you a chance to ask any questions you have about how
17   this is going to go.
18       First of all, you understand that you're
19   under oath, correct?
20       A   Yes.
21       Q   And that means that you must answer all of
22   the questions I ask you truthfully and honestly and to
23   the best of your ability.
24       A   Yes.
25       Q   You must also answer the questions audibly so

**Page 8**

1    that the court reporter can take them down.
2        A   Yes.
3        Q   It's difficult for her to transcribe a nod of
4    the head or an uh-huh, so anytime you can, please
5    answer a clear yes or no.
6        For the purposes of this deposition, when I
7    refer to GM, I mean General Motors Corporation and all
8    of its divisions, affiliates, et cetera.  Okay?
9        A   Okay.
10       Q   Please tell me if you do not understand a
11   question that I ask you.  Okay?
12       A   Okay.
13       Q   If you answer, I will assume that you
14   understood the question.  Is that fair?
15       A   Yes.
16       Q   We're going to take a break every hour and
17   for lunch.  Is that all right?
18       A   Yes.
19       Q   And if you need a break, that's fine, just
20   let me know.  I just ask that if there is a question
21   pending, you finish answering it before we take a
22   break.  Is that okay?
23       A   Yes.
24       Q   Are you taking any medication or are you
25   under the influence of alcohol or any drugs today?

**LA RONDA HUNTER**                                    **12/16/08**

| | | | | |
|---|---|---|---|---|
| 1 | MR. SPIRO: Don't answer quite yet. Any | | 1 | A   One. |
| 2 | medication, Counsel? There is a right to privacy | | 2 | Q   How old is your child? |
| 3 | there. | | 3 | A   18 years old. |
| 4 | Any medication that would affect her | | 4 | Q   Does anyone depend on you for support? |
| 5 | testimony would be okay. I'll let her answer that. | | 5 | A   My daughter. |
| 6 | BY MS. GUZMAN: | | 6 | Q   Anyone else? |
| 7 | Q   Okay. Are you taking any medication that | | 7 | A   No. |
| 8 | affects your ability to testify today? | | 8 | Q   Who lives in your household now? |
| 9 | A   No. | | 9 | A   Me and my daughter and my sister. |
| 10:12  10 | Q   Are you under the influence of alcohol or any | | 10:14  10 | Q   Has anyone else lived in your household in |
| 11 | drugs today? | | 11 | the past? |
| 12 | A   No. | | 12 | A   No. In the past, as far as the new address, |
| 13 | Q   Is there any other reason at all that your | | 13 | no. |
| 14 | memory might be impaired or you might be unable to | | 14 | Q   Are you currently employed? |
| 15 | understand my questions today? | | 15 | A   I'm retired. |
| 16 | A   No. | | 16 | Q   Where did you work? |
| 17 | Q   Finally, please understand that all we are | | 17 | A   United States Postal Service. |
| 18 | interested in here is your truthful, honest testimony. | | 18 | Q   And how long did you work there? |
| 19 | Okay? | | 19 | A   14 years. Approximately 14 years. |
| 10:12  20 | A   Okay. | | 10:14  20 | Q   What was your position at the United States |
| 21 | Q   Now, do you have any questions about this or | | 21 | Postal Service? |
| 22 | the basic format of the deposition? | | 22 | A   Equipment operator. |
| 23 | A   No. | | 23 | Q   How long did you hold that position? |
| 24 | Q   Ms. Hunter, what is your age? | | 24 | A   About two years. |
| 25 | A   39. | | 25 | Q   Who was your supervisor at that position? |
| | Page 9 | | | Page 11 |

| | | | | |
|---|---|---|---|---|
| 1 | Q   What is your date of birth? | | 1 | A   Estban Goitia. |
| 2 | A   03/26/1969. | | 2 | Q   Could you spell that name. |
| 3 | Q   Where were you born? | | 3 | A   E-s-t-b-a-n G-o-i-t-i-a. |
| 4 | A   California. | | 4 | Q   And what were your duties and |
| 5 | Q   Where in California? | | 5 | responsibilities at that position? |
| 6 | A   Los Angeles. | | 6 | A   Duties of an equipment operator is to operate |
| 7 | Q   Where do you live? | | 7 | a forklift. |
| 8 | A   In Los Angeles, California. | | 8 | Q   What did you do before you were equipment |
| 9 | Q   Can you give me your address? | | 9 | operator? |
| 10:13  10 | A   4125 Marine Ave. | | 10:15  10 | A   Mail handler. |
| 11 | Q   How long have you lived at that address? | | 11 | Q   How long were you at that position? |
| 12 | A   Two years. | | 12 | A   Twelve. |
| 13 | Q   Where did you live before then? | | 13 | Q   And who was your supervisor at that position? |
| 14 | A   15014 Eastwood. | | 14 | A   It varied. |
| 15 | Q   Also in Los Angeles? | | 15 | Q   Just to clarify, you mean 12 years? |
| 16 | A   In Lawndale. | | 16 | A   Uh-huh, yes. |
| 17 | Q   In Lawndale? | | 17 | Q   Can you remember any of your supervisor's |
| 18 | A   Uh-huh, yes. | | 18 | names at that position? |
| 19 | Q   How long did you live at that address? | | 19 | A   Girtha Hollman, G-i-r-t-h-a, H-o-l-l-m-a-n. |
| 10:13  20 | A   About 14 years, 15 -- 14, 15 years. | | 10:15  20 | Q   Any others? |
| 21 | Q   Are you married? | | 21 | A   Glenn Hooks. |
| 22 | A   No. | | 22 | Q   Any others? |
| 23 | Q   Do you have any children? | | 23 | A   No. |
| 24 | A   Yes. | | 24 | Q   What were your duties and responsibilities at |
| 25 | Q   How many? | | 25 | that position? |
| | Page 10 | | | Page 12 |

**3  (Pages 9 to 12)**

LA RONDA HUNTER                                      12/16/08

```
        1    A   To process mail.
        2    Q   How long were you at the United States Postal
        3   Service total?
        4    A   From 1994 to 2008.
        5    Q   Do you have a high school diploma?
        6    A   Yes.
        7    Q   And do you have a college degree?
        8    A   Yes, associate.
        9    Q   Is that a two-year associate's degree?
10:16  10    A   Yes.
       11    Q   What is it in?
       12    A   Computers.
       13    Q   Can you be any more specific than that?
       14    A   Information technology.
       15    Q   Have you been -- do you consider yourself an
       16   expert in anything?
       17    A   No.
       18    Q   Do you have any training or experience in
       19   engineering?
10:17  20        MR. SPIRO: Counsel, excuse me, I should have
       21   objected to the question about expert as vague, calls
       22   for a legal conclusion, so I move to strike the
       23   answer.
       24        MS. GUZMAN: Okay. Your objection's noted.
       25   I'm going to still ask the question.
                                              Page 13
```

```
        1    Q   Do you consider yourself an expert in
        2   anything?
        3    A   No.
        4    Q   Do you have any training or experience in
        5   engineering?
        6    A   No.
        7    Q   Do you have any training or experience in
        8   automotive repair or work?
        9    A   No.
10:17  10    Q   Do you have any training or experience in
       11   automotive sales, leasing, rental?
       12    A   No.
       13    Q   Do you have any training or experience at all
       14   in the automotive industry?
       15    A   No.
       16    Q   Do you have any training or experience in
       17   insurance?
       18    A   No.
       19    Q   Do you have any training or experience in
10:17  20   advertising?
       21    A   No.
       22    Q   Do you have any training or experience in
       23   drafting warranties?
       24    A   No.
       25    Q   Do you know what discovery is?
                                              Page 14
```

```
        1    A   Yes.
        2    Q   Are you aware that there has already been
        3   discovery in this case?
        4    A   Yes.
        5    Q   You're aware that you have served discovery
        6   requests and GM has served discovery requests?
        7    A   Yes.
        8    Q   And are you aware that GM has served document
        9   requests and interrogatories about you?
10:18  10    A   Yes.
       11    Q   Who told you this?
       12    A   My attorney.
       13        MR. SPIRO: Move to strike, attorney-client.
       14        So if your answers -- if the question -- if
       15   your answers to the question, La Ronda, would require
       16   you to say something about communications between you
       17   and your lawyers, then say so, and you don't have to
       18   answer that.
       19        THE WITNESS: Okay.
10:18  20   BY MS. GUZMAN:
       21    Q   Are you aware that you have provided written
       22   responses to GM's document requests and
       23   interrogatories?
       24    A   Yes.
       25    Q   Did you draft these responses?
                                              Page 15
```

```
        1        MR. SPIRO: Vague.
        2        THE WITNESS: Vague.
        3   BY MS. GUZMAN:
        4    Q   Did you draft the responses that you
        5   submitted to GM's document requests and
        6   interrogatories?
        7        MR. SPIRO: Vague and compound, actually.
        8   BY MS. GUZMAN:
        9    Q   Ms. Hunter, did you draft your responses to
10:19  10   GM's document requests?
       11        MR. SPIRO: Vague and compound -- yeah,
       12   vague.
       13   BY MS. GUZMAN:
       14    Q   You can answer.
       15        MR. SPIRO: If you know.
       16        THE WITNESS: You said that I did what?
       17   BY MS. GUZMAN:
       18    Q   Did you draft your answers to GM's document
       19   request?
10:19  20    A   That's attorney-client privilege.
       21        MR. SPIRO: Counsel, the problem is the word
       22   "draft."
       23   BY MS. GUZMAN:
       24    Q   Did you write the answers to GM's document
       25   requests?
                                              Page 16
```

4 (Pages 13 to 16)

**LA RONDA HUNTER**                                    12/16/08

| | |
|---|---|
| 1  MR. SPIRO: Still vague. | 1  are -- actually are typed. |
| 2  THE WITNESS: Privileged. | 2  Q  Do you know who did? |
| 3  BY MS. GUZMAN: | 3  A  No, I don't. |
| 4  Q  Did you see your responses to GM's document | 4  Q  You do not know who wrote the responses to |
| 5  requests? | 5  GM's document requests? |
| 6  A  Yes. | 6  MR. SPIRO: She answered that. Don't harass |
| 7  Q  Ms. Hunter, what is your answer to my | 7  the witness. She answered your question. She said |
| 8  question, "Did you draft the written responses to GM's | 8  no. |
| 9  document requests"? | 9  MS. GUZMAN: Make your objection, if you |
| 10:20 10  MR. SPIRO: Vague. | 10:21 10  would like, but I would still like an answer to the |
| 11  It is asked and answered -- asked and | 11  question. |
| 12  responded to three times. The question is vague, it's | 12  MR. SPIRO: No, she's not going to answer it |
| 13  also compound. It's not a fair question. | 13  twice. She answered. |
| 14  BY MS. GUZMAN: | 14  MS. GUZMAN: Are you instructing her not to |
| 15  Q  Do you need me to ask the question again or | 15  answer the question? |
| 16  can you answer? | 16  MR. SPIRO: Yes, yes -- |
| 17  A  I'm not going to answer. | 17  THE REPORTER: I can only get one person. |
| 18  Q  Why not? | 18  This won't be on the record. |
| 19  A  Because the same -- because I've already | 19  MS. GUZMAN: Are you instructing the witness |
| 10:20 20  answered once. You asked me three times. | 10:22 20  not to answer. |
| 21  Q  What is your answer? | 21  MR. SPIRO: Yes, because you're harassing. |
| 22  MR. SPIRO: No, she's -- what do you mean | 22  (Instruction not to answer.) |
| 23  what is her answer? She's already answered three | 23  BY MS. GUZMAN: |
| 24  times. | 24  Q  Ms. Hunter, did you type the responses to |
| 25  MS. GUZMAN: Are you instructing her not to | 25  GM's interrogatories? |
| Page 17 | Page 19 |
| 1  answer? | 1  A  No. |
| 2  MR. SPIRO: No, I'm objecting. I don't know | 2  Q  Do you know who did? |
| 3  what your question is. She's answered three times. | 3  A  No. |
| 4  Which one are you talking about? | 4  Q  Did you see the responses to GM's document |
| 5  MS. GUZMAN: I would like her clear answer as | 5  requests? |
| 6  to whether she's drafted the written responses to GM's | 6  A  Which document request? Are you talking |
| 7  document request. | 7  about the discovery? |
| 8  MR. SPIRO: That's impossible for -- | 8  Q  Yes, the document requests about you. |
| 9  MS. GUZMAN: That's a yes-or-no answer. | 9  A  Yes, I see -- yes, I saw them. |
| 10:21 10  MR. SPIRO: No, it isn't, because I don't | 10:22 10  Q  Who showed those to you? |
| 11  know what you mean by the word "draft" and neither | 11  A  My attorney. |
| 12  does she. | 12  Q  When did you see them? |
| 13  BY MS. GUZMAN: | 13  A  When they were first produced. |
| 14  Q  Mrs. Hunter, what do you think I mean by the | 14  Q  Did you review those written responses and |
| 15  word "draft"? | 15  check to see that they were accurate? |
| 16  A  You have to explain it. | 16  A  Yes. |
| 17  Q  By "draft," I mean write. Did you write the | 17  Q  Did you edit or correct anything in them? |
| 18  responses -- | 18  A  I-- |
| 19  MR. SPIRO: It is still unclear. You mean | 19  MR. SPIRO: Vague -- vague and compound. |
| 10:21 20  with her own hand or what? | 10:23 20  THE WITNESS: How could I edit and correct |
| 21  BY MS. GUZMAN: | 21  something when they were typed? |
| 22  Q  Yes, I mean with your own hand. Did you | 22  BY MS. GUZMAN: |
| 23  write with your own hand the responses to GM's | 23  Q  Did you ask your attorney to change anything |
| 24  document requests? | 24  in those responses before they were submitted? |
| 25  A  I did not write any answers. The answers | 25  MR. SPIRO: Attorney-client. |
| Page 18 | Page 20 |

5  (Pages 17 to 20)

| | |
|---|---|
| 1 Don't answer. | 1 MR. SPIRO: Vague. |
| 2 (Instruction not to answer.) | 2 BY MS. GUZMAN: |
| 3 BY MS. GUZMAN: | 3 Q Have you seen it before? |
| 4 Q Did you see the responses to GM's | 4 A Yes.. |
| 5 interrogatories? | 5 Q What is this? |
| 6 A To me, yes. | 6 A Plaintiff La Ronda Hunter Responses to Form |
| 7 Q When did you see those? | 7 Interrogatories Set One. |
| 8 A When they were first produced. | 8 Q Did you review this form interrogatory |
| 9 Q Did you review the responses to GM's | 9 response completely before you authorized your |
| 10:23 10 interrogatories and check to see that they were | 10:26 10 attorney to submit it? |
| 11 accurate? | 11 A Yes. |
| 12 A Yes. | 12 Q And can you verify that the answers in this |
| 13 Q Did you authorize your attorney to file those | 13 form interrogatory are complete and correct? |
| 14 responses to interrogatories? | 14 MR. SPIRO: Compound, vague as to the word |
| 15 MR. SPIRO: Attorney-client. | 15 "verify." And it is grossly compound. |
| 16 Don't answer. | 16 Go ahead. You can answer, if you can. |
| 17 (Instruction not to answer.) | 17 BY MS. GUZMAN: |
| 18 BY MS. GUZMAN: | 18 Q Ms. Hunter, can you turn to the third-to-the- |
| 19 Q Do you think that -- I'm sorry, strike that. | 19 last page of this document. Is this your signature |
| 10:24 20 As a class representative, do you think that | 10:26 20 that appears on this page -- oh, I'm sorry, you're not |
| 21 you have an obligation to review interrogatory | 21 there yet. |
| 22 responses to make sure they are accurate before they | 22 Is this your signature that appears on this |
| 23 are filed with the court? | 23 page? |
| 24 MR. SPIRO: Compound, calls for a legal | 24 A Yes. |
| 25 conclusion. | 25 Q Did you sign the statement verifying that |
| **Page 21** | **Page 23** |
| 1 Go ahead. | 1 your answers are true and correct? |
| 2 They are not filed with the court, Counsel. | 2 A Yes. |
| 3 That's misleading the witness. | 3 Q And are the responses contained in your |
| 4 MS. GUZMAN: I'll rephrase. | 4 responses to GM's form interrogatories still complete |
| 5 Q As a class representative, do you think that | 5 and correct? |
| 6 you have an obligation to review interrogatory | 6 A Yes. |
| 7 responses to make sure that they are accurate before | 7 MR. SPIRO: I move to strike. It misstated |
| 8 they are submitted in litigation? | 8 the verification and her previous testimony. She |
| 9 A Yes. | 9 didn't say anything about complete, nor does the |
| 10:24 10 MR. SPIRO: That's compound. | 10:27 10 verification. |
| 11 Go ahead -- okay. | 11 BY MS. GUZMAN: |
| 12 BY MS. GUZMAN: | 12 Q Ms. Hunter, are your answers to these form |
| 13 Q Ms. Hunter, I'm handing you your responses to | 13 interrogatories complete? |
| 14 GRM's form interrogatories, which will be marked as | 14 A Yes. |
| 15 Deposition -- sorry, Defendants' Exhibit 1. | 15 MR. SPIRO: Move to strike. The question was |
| 16 (Deposition Exhibit 1 marked.) | 16 compound, extremely. |
| 17 BY MS. GUZMAN: | 17 BY MS. GUZMAN: |
| 18 Q Do you recognize this document? | 18 Q Ms. Hunter, I'm going to hand you another |
| 19 A Yes, I do. | 19 document marked as Deposition Exhibit 2. |
| 10:25 20 Q How do you recognize it? | 10:28 20 (Deposition Exhibit 2 marked.) |
| 21 MR. SPIRO: Vague. | 21 BY MS. GUZMAN: |
| 22 BY MS. GUZMAN: | 22 Q Do you recognize this document? |
| 23 Q How do you recognize it, Ms. Hunter? | 23 A Yes, I do. |
| 24 A It is sitting in front of me. | 24 Q What is it? |
| 25 Q How do you know what it is? | 25 A La Ronda Hunter responses to defendant first |
| **Page 22** | **Page 24** |

6 (Pages 21 to 24)

**LA RONDA HUNTER**                                    **12/16/08**

1    set of interrogatories, set one.
2    Q    Is this a true and accurate copy of your
3    responses?
4         MR. SPIRO:    Do you want -- how would she
5    know?
6         MS. GUZMAN:    Well, she can review it.
7         MR. SPIRO:    Okay.    Review it page by page,
8    then, if you need to.    As much as you need to do to
9    answer this question, or maybe we can stipulate to
10:28 10   that once I look at it.
11         I think these are not complete.    The third-
12    to-the-last page, I guess, or fourth-to-the-last says
13    pages 7 of 8.    Now, maybe these are configured wrong,
14    but it gives me some reason to think they are not.    I
15    could check my own and see.
16         My own copy has the same, 7 of 8.
17         Do you want me to say anything about whether
18    they are complete?
19         MS. GUZMAN:    Only if you need to for your
10:31 20   client to answer.
21         THE WITNESS:    I hope you wouldn't give me any
22    incomplete documents.
23    BY MS. GUZMAN:
24    Q    Is there any reason you think this is not a
25    true and accurate copy of your responses to
                                                Page 25

1    BY MS. GUZMAN:
2    Q    You can answer.
3    A    Can I tell you the answers accurate?    They
4    are the same answers that I gave,    They are the exact
5    same answers.
6    Q    So they are still true?
7    A    Yes.
8    Q    And are these responses still complete?
9    A    Yes.
10:32 10        MR. SPIRO:    Compound, facts not in evidence.
11    BY MS. GUZMAN:
12    Q    I'm sorry, your answer was "Yes"?
13    A    (No audible response.)
14    Q    Ms. Hunter, I'm handing you a copy of your
15    responses to defendants' request for production.    It
16    is being marked as Deposition Exhibit Number 3.
17         (Deposition Exhibit 3 marked.)
18    BY MS. GUZMAN:
19    Q    Do you recognize this document?
10:33 20   A    Yes.
21    Q    What is it?
22    A    Plaintiff's La Ronda Hunter's responses to
23    defendant first set of request of production of
24    documents.
25    Q    Is this a true and accurate copy of your
                                                Page 27

1    defendants' first set of interrogatories?
2    A    No.
3    Q    Did you review these responses completely
4    before you authorized your attorney to submit them?
5    A    Yes, I verified my responses.
6    Q    I'm sorry, Ms. Hunter, my question was
7    slightly different.    It was did you review these
8    responses before you authorized your attorney to file
9    them -- or, sorry, to submit them?
10:31 10   A    Did I review them?
11    Q    Did you review them, did you read them?
12    A    What do you mean by -- yes, I read them.
13    Q    I'm going to ask you again to turn to the
14    third-to-the-last page.    Is that your signature on
15    this page?
16    A    Yes.
17    Q    And did you verify that the responses are
18    true?
19    A    Yes, I did.
10:32 20   Q    Are these responses still accurate?
21         MR. SPIRO:    Compound.
22    BY MS. GUZMAN:
23    Q    Ms. Hunter, can you tell me whether the
24    responses are still accurate?
25         MR. SPIRO:    Compound.
                                                Page 26

1    discovery responses?
2    A    Yes.
3    Q    Did you review these responses completely
4    before you authorized your attorney to submit them?
5    A    Yes.
6    Q    Did you sign the verification page at the
7    end?
8    A    Yes.
9    Q    Did you verify that your answers are true?
10:34 10   A    Yes, I did.    I reviewed them, read them,
11    signed the verification and turned them over.
12    Q    Are your responses still complete?
13         MR. SPIRO:    Vague, compound.
14         THE WITNESS:    Vague, compound.
15    BY MS. GUZMAN:
16    Q    I need you to still answer my question,
17    Ms. Hunter.
18    A    You said --
19    Q    Are the responses contained in this document
10:34 20   still complete?
21    A    The answers are the same.    They are the same
22    as it was when I submitted them 8/27/28 -- 2008.
23    Q    When you submitted them on 8/27/2008, were
24    they complete answers to the questions?
25    A    Yes.
                                                Page 28

7  (Pages 25 to 28)

LA RONDA HUNTER                                              12/16/08

|  | | |
|---|---|---|

```
  1     Q   And they still are?
  2     A   Yes.
  3     Q   Ms. Hunter, can you tell me the make, model
  4   and year of your vehicle?
  5     A   GMC Yukon, 2001.
  6     Q   Do you know the vehicle identification
  7   number?
  8     A   No.
  9     Q   I'm going to refer you to your response to
10:35 10   interrogatory number 1.
 11     MR. SPIRO:  Which set?
 12     MS. GUZMAN:  The regular interrogatories, not
 13   the form interrogatories.
 14     MR. SPIRO:  Exhibit 2?
 15     MS. GUZMAN:  Yes.
 16     MR. SPIRO:  That's 2.
 17     THE WITNESS:  My arm hurt.  I can barely put
 18   my coat on, on the arm.
 19   BY MS. GUZMAN:
10:35 20   Q   On page 5 of this document, your response to
 21   interrogatory number 1, you state that your vehicle
 22   identification number is 1GKEC13T71J201855.
 23     Is that correct?
 24     A   Yes.
 25     Q   Are you the registered owner of your vehicle?
                                        Page 29
```

```
  1     Q   Is that a dealership?
  2     A   They were working with the postal employees,
  3   so, no, it is not, actually, a dealership.
  4     Q   Did you buy it through work?
  5     A   Yes.
  6     Q   Can you explain to me how that works?
  7     A   They teamed up with postal credit union
  8   and —
  9     Q   Who teamed up with —
10:37 10   A   Justice Auto.
 11     Q   Justice Auto teamed up with the postal credit
 12   union?
 13     A   Uh-huh.
 14     Q   And they make vehicles available for purchase
 15   by the employees —
 16     A   Yes.
 17     Q   — of —
 18     Do they give any special deals on the cars?
 19     A   No, not that I know of, no.
10:38 20   Q   So how did you buy the car?  Did you go to a
 21   dealership or did you order it somehow?
 22     A   I knew that I wanted a Yukon, a GMC Yukon, so
 23   I basically told them what I wanted and they went and
 24   found it and they brought it back.
 25     Q   Who did you tell what you wanted?
                                        Page 31
```

```
  1     A   Yes.
  2     Q   Are you the principal driver of the 2001 GMC
  3   Yukon?
  4     A   Yes.
  5     Q   Does anyone other than you drive the vehicle?
  6     A   No.
  7     Q   What purpose do you use the car for, mainly?
  8     A   Before I retired, I was using it to go back
  9   and forth to work.
10:36 10   Q   Now what do you use it for?
 11     A   It's sitting in the driveway because the
 12   parking brake is to the floor and it's —
 13     Q   So you don't use it for anything now?
 14     A   (No audible response.)
 15     Q   You still own the 2001 Yukon?
 16     A   Yes.
 17     Q   How did you come to purchase your 2001 Yukon?
 18     A   How did I come to purchase it?
 19     Q   Uh-huh.
10:37 20   A   I needed a new car and I went and looked for
 21   one.  I seen it and I liked it.
 22     Q   Where did you see it?
 23     A   Justice Auto.
 24     Q   What's that?
 25     A   Justice Auto.
                                        Page 30
```

```
  1     A   Justice Auto.
  2     Q   And when you say they went and found it and
  3   brought it back, what do you mean?
  4     A   They went — I told them I wanted a white GMC
  5   Yukon, and they went and got a white GMC Yukon and let
  6   me look at it.  And they said, "Is this what you
  7   want?" I said "Yes," and I purchased it.
  8     Q   Where did they bring it?
  9     A   To Justice Auto.
10:38 10   Q   Where is Justice Auto located?
 11     A   In Carson, California.
 12     Q   I'm sorry, just for the sake of the court
 13   reporter, let me finish my question and then give your
 14   answer and I'll do the same and not interrupt you so
 15   she can take us both down separately.
 16     Where is Justice Auto located?
 17     A   Carson, California.
 18     Q   Thank you.
 19     Did you buy the car new?
10:39 20   A   It was a demo and it had 1,800 miles on it.
 21     Q   What do you mean it was a demo?
 22     A   It was — it was — one of those cars that
 23   you show.
 24     Q   That Justice Auto showed?
 25     A   I don't have no idea.  I know it was a demo.
                                        Page 32
```

8  (Pages 29 to 32)

**LA RONDA HUNTER**                                                    12/16/08

| | | |
|---|---|---|
| | 1 | Q How do you know it was a demo? |
| | 2 | A Because they told me. |
| | 3 | Q Justice Auto told you it was a demo? |
| | 4 | A Yes. |
| | 5 | Q Did they explain what they meant by that? |
| | 6 | A No, they didn't have to explain a demo. A |
| | 7 | demo is something that a dealership demo, a floor |
| | 8 | demo. |
| | 9 | Q Ms. Hunter, when did you buy this car? |
| 10:40 | 10 | A When did I buy the car? In 2002. |
| | 11 | Q Do you know when in 2002? |
| | 12 | A January -- or January of 2002 or 2001. I |
| | 13 | don't know. I don't know the exact year. |
| | 14 | Q And you bought it at Justice Auto? |
| | 15 | A Yes. |
| | 16 | Q Was it a lease or a purchase? |
| | 17 | A Purchase. |
| | 18 | Q What was the purchase price? |
| | 19 | A 33,000. |
| 10:41 | 20 | Q How was it financed? |
| | 21 | A Through Priority One Credit Union. |
| | 22 | Q Did you have monthly payments on the car |
| | 23 | after that? |
| | 24 | A Yes. |
| | 25 | Q For how many years? |

Page 33

| | | |
|---|---|---|
| | 1 | BY MS. GUZMAN: |
| | 2 | Q As far as you know -- |
| | 3 | MR. SPIRO: Objection, not a motion to |
| | 4 | strike. Sorry. |
| | 5 | BY MS. GUZMAN: |
| | 6 | Q Do you need me to repeat the question, |
| | 7 | Ms. Hunter? |
| | 8 | A What is it? |
| | 9 | Q As far as you know, the price of your car was |
| 10:43 | 10 | unconnected to the fact that it was a demo? |
| | 11 | A I don't know. I can't -- I don't know. |
| | 12 | Q Okay. Do you know the relationship between |
| | 13 | Justice Auto and GM? |
| | 14 | A No. |
| | 15 | Q How did you know that you wanted a 2001 GMC |
| | 16 | Yukon? |
| | 17 | A Because I seen it and I liked it. |
| | 18 | Q Where did you first see it? |
| | 19 | A On TV. |
| 10:43 | 20 | Q When was that? |
| | 21 | A When they first came out. |
| | 22 | Q Can you give me that date? |
| | 23 | A I don't know the exact date they first came |
| | 24 | out. |
| | 25 | Q Do you know the month? |

Page 35

| | | |
|---|---|---|
| | 1 | A Five. |
| | 2 | Q Do you remember what your monthly payments |
| | 3 | were? |
| | 4 | A Yes. |
| | 5 | Q How much was your monthly payment? |
| | 6 | A 579, or something like that. 579. It might |
| | 7 | have been six years. |
| | 8 | Q What is the car's mileage today? |
| | 9 | A 91,000 miles. |
| 10:42 | 10 | Q Have you been in any accidents with your 2001 |
| | 11 | Yukon? |
| | 12 | A No. |
| | 13 | Q Did you get a special deal because your car |
| | 14 | was a demo? |
| | 15 | A No, I don't know. |
| | 16 | Q You don't know whether you got a different |
| | 17 | price because your car was a demo? |
| | 18 | MR. SPIRO: That's vague. |
| | 19 | THE WITNESS: They told me the price of the |
| 10:42 | 20 | car, and that's what I purchased it for. |
| | 21 | BY MS. GUZMAN: |
| | 22 | Q So as far as you know, the price of the car |
| | 23 | was unconnected to the fact that it was a demo? |
| | 24 | MR. SPIRO: Move to strike. Mischaracterized |
| | 25 | her testimony. It is also vague. |

Page 34

| | | |
|---|---|---|
| | 1 | A I don't -- I don't know. |
| | 2 | Q Do you know the year? |
| | 3 | A It was 2000 -- 2000 when I first seen them. |
| | 4 | Q After you saw it on the TV advertisement, |
| | 5 | where did you next see it? |
| | 6 | A Where did I next -- on the road. |
| | 7 | Q What do you mean by "on the road"? Other |
| | 8 | people driving? |
| | 9 | A Yes. |
| 10:44 | 10 | Q Did you consider any other cars than the 2001 |
| | 11 | Yukon? |
| | 12 | A No. |
| | 13 | Q When you went to purchase the 2001 Yukon, |
| | 14 | what did you know about it? |
| | 15 | A Nothing. I just knew it was a car, you can |
| | 16 | drive it. |
| | 17 | Q Did you do any research or investigation on |
| | 18 | the 2001 Yukon before you purchased it? |
| | 19 | A No. |
| 10:45 | 20 | Q What did you see or hear about this |
| | 21 | particular model on the TV? |
| | 22 | A Actually, I didn't hear anything. I just |
| | 23 | seen it and I liked it. |
| | 24 | Q What did you like about it? |
| | 25 | A Spacious. |

Page 36

9 (Pages 33 to 36)

**LA RONDA HUNTER**                                    12/16/08

| | | | |
|---|---|---|---|
| | 1 | Q | Anything else? |

Page 37

```
        1    Q   Anything else?
        2    A   No.
        3    Q   Other than that TV advertisement, had you
        4  seen any other advertisements before buying your 2001
        5  Yukon?
        6    A   No.
        7    Q   And the TV advertisement you saw was for the
        8  2001 Yukon specifically?
        9    A   No. It was a GM advertisement of all the
10:46  10  trucks.
       11    Q   Did you hear any statements about the car
       12  during that advertisement?
       13    A   No.
       14    Q   What were your primary considerations in
       15  purchasing your Yukon?
       16    A   Primary considerations, like what? What are
       17  you talking about? What do you mean by "primary
       18  considerations"?
       19    Q   What were the main reasons you bought the
10:47  20  2001 Yukon?
       21    A   Spacious.
       22    Q   Did the price matter to you?
       23    A   Of course it did. I can't buy something I
       24  can't afford.
       25    Q   Well, what other than its spaciousness and
                                            Page 37
```

```
        1  its price mattered to you?
        2    A   I just like the car and I purchased it, and I
        3  know I could afford it.
        4    MS. GUZMAN: Ms. Hunter, I'm handing you a
        5  copy of the fourth amended complaint. It is being
        6  marked as Exhibit 4.
        7    (Deposition Exhibit 4 marked.)
        8  BY MS. GUZMAN:
        9    Q   Do you recognize this document?
10:48  10    A   Yes.
       11    Q   What is it?
       12    A   Fourth Amended Complaint for Violation of
       13  California's Consumer Legal Remedies Act, CLRA, and
       14  Violation of California's Unfair Competition Act.
       15    THE REPORTER: Make sure your coat isn't on
       16  the microphone. Thank you.
       17    MR. SPIRO: Do you want to put it on, the
       18  coat?
       19    THE WITNESS: I'm going to be hot. I forgot
10:49  20  to bring the sleeve thing.
       21  BY MS. GUZMAN:
       22    Q   Ms. Hunter, did you review this fourth
       23  amended complaint before you authorized your attorney
       24  to file it?
       25    A   Yes.
                                            Page 38
```

```
        1    Q   When you reviewed it, did you make sure
        2  everything in it was true and correct?
        3    A   Yes.
        4    Q   In paragraph 58 you state, "At all times
        5  relevant, and for many years prior, GM widely
        6  disseminated in its nationally advertising campaign
        7  numerous and repeated representations stressing the
        8  quality, safety and performance of their products,
        9  including the subject vehicles. During the class
10:50  10  period GM made the following representations in its
       11  advertising by television, radio, print and Internet."
       12    MR. SPIRO: Counsel, could you tell us what
       13  page that's on?
       14    MS. GUZMAN: Page 24, paragraph 58.
       15    THE WITNESS: Because I don't know what 58
       16  is.
       17    MR. SPIRO: Paragraph 58, apparently it
       18  starts at page 24. There it is. Page 24, starts at
       19  line -- well, between lines 18 and 19.
10:51  20    THE WITNESS: I'm looking and going to 28.
       21  BY MS. GUZMAN:
       22    Q   I'll repeat the beginning of my question.
       23    In paragraph 58 you state, "At all times
       24  relevant, and for many years prior, GM widely
       25  disseminated in its national advertising campaign
                                            Page 39
```

```
        1  numerous and repeated representations stressing the
        2  quality, safety and performance of their products,
        3  including the subject vehicles. During the class
        4  period GM made the following representations in its
        5  advertising by television, radio, print and Internet."
        6    Can you tell me where you saw or heard each
        7  of the statements listed after that in the bullet
        8  points?
        9    MR. SPIRO: Compound.
10:52  10  BY MS. GUZMAN:
       11    Q   I'll rephrase, Ms. Hunter. Let's take the
       12  first statement by the bullet point that says
       13  "Professional Brake Engineering."
       14    Do you see where I am?
       15    A   Yeah.
       16    Q   Did you ever personally see or hear that
       17  statement?
       18    A   I'm quite sure I did.
       19    Q   Do you know when?
10:52  20    A   If had to be in 2000 during the commercials.
       21    Q   Can you be any more specific than 2000?
       22    A   No, I can't.
       23    Q   On what occasion did you hear this statement?
       24    A   I don't know. I don't know.
       25    Q   Was it a television, radio, print or Internet
                                            Page 40
```

10  (Pages 37 to 40)

**LA RONDA HUNTER**                                         12/16/08

Page 41

1  ad?
2    A  I stated before I seen it on TV.
3    Q  Where were you when you saw the statement on
4  TV?
5    A  Home.
6    Q  Let's take the next statement.  "We are
7  professional grade - it's not a promotion, it's a
8  promise."
9       Did you personally hear or see this
10:53 10  statement?
11    A  As stated, the answer is the same as the
12  answer I gave before.
13    Q  Ms. Hunter, I'm going to need you to answer
14  the questions for each statement for the record.  So
15  did you personally see or hear the statement "We are
16  professional grade - it's not a promotion, it's a
17  promise"?
18    A  I'm quite sure I did see it in a TV
19  commercial.
10:54 20    Q  How did you know you saw this statement?
21    A  Because they had a commercial.
22    Q  You know the statement was on the commercial?
23    A  I'm not sure.  I can't remember right now.
24    Q  This is the same commercial that you were
25  talking about before?

Page 42

1    A  Yes.
2    Q  Is there -- there's only one TV commercial
3  that you saw about the 2001 Yukon?
4    A  Yes.
5    Q  What about the next statement, "Safety -
6  designed to protect," did you personally see or hear
7  that statement?
8    A  I don't recall.
9    Q  What about the rest of these statements in
10:55 10  paragraph 58, the bullet points?
11    MR. SPIRO:  Still compound.
12  BY MS. GUZMAN:
13    Q  Can you tell me whether you personally saw or
14  heard any of these statements in paragraph 58?
15    MR. SPIRO:  Compound.  Oh, gosh, there's a
16  dozen of them.  Compound.
17       If you are going to do that, go one by one.
18    THE WITNESS:  Do what?  I didn't make the
19  commercial, so -- I was only -- my only thing was --
10:55 20    MR. SPIRO:  No, hold on.  I'm not asking you
21  questions, so you don't answer my questions.  I'm just
22  telling you, if you are going to answer her question,
23  go one by one.
24       So you left off at page 24, the previous,
25  you're not on it.

Page 43

1    THE WITNESS:  I'm on page 25, the last one.
2    MR. SPIRO:  You can go backwards, if you
3  want, but -- but you have to go one by one, otherwise
4  it is unfair to try and answer.
5       What I mean is --
6    MS. GUZMAN:  Mr. Spiro, I'm sorry, if you
7  have an objection, you can make it, but I would like
8  the witness to answer my question as I've asked it.
9    MR. SPIRO:  Well, then, she's not going to
10:56 10  answer it.
11    MS. GUZMAN:  Are you instructing her not to
12  answer?
13    MR. SPIRO:  Yes.  She's going to answer it
14  one by one or not at all.
15    MS. GUZMAN:  On what basis are you
16  instructing her --
17    MR. SPIRO:  Compound and it's harassing.  You
18  can't try and get a witness to answer eight questions
19  in one answer.  It is more than eight, it is like 12.
10:56 20  It is unfair, it is a trick.
21  BY MS. GUZMAN:
22    Q  Ms. Hunter, I'm asking you --
23    A  It is 15.
24    MR. SPIRO:  So answer -- look at the next
25  one, which is this one, and then answer.

Page 44

1    MS. GUZMAN:  Mr. Spiro, state your objection,
2  if necessary, otherwise, let your witness try to
3  answer my question.
4    MR. SPIRO:  I am, but I instructed her in how
5  to answer, and I am entitled to do that because your
6  question is a trick question.
7    MS. GUZMAN:  You're not entitled to be able
8  to instruct her how to answer a question.
9    MR. SPIRO:  In the manner -- yes, I am in
10:57 10  this situation where you're asking her a trick
11  question.  Or else not, you take your choice.
12  BY MS. GUZMAN:
13    Q  Ms. Hunter, are there any statements in
14  paragraph 58 that you know, you personally saw or
15  heard?
16    MR. SPIRO:  Go one by one, please.
17       Look at each one and answer.
18    THE WITNESS:  Well, I've already answered the
19  question basically for all of them.  And, just like I
10:57 20  said, I'm not trying to make the commercial with GM or
21  memorize anything that they said or done.  I liked the
22  truck and that's why I purchased it.
23  BY MS. GUZMAN:
24    Q  So you don't know whether you personally saw
25  or heard any of these specific statements listed in

11  (Pages 41 to 44)

| | | | |
|---|---|---|---|

1    paragraph 58 of your complaint?
2        MR. SPIRO: Mischaracterizes her testimony
3    and is extremely compound. It is asking her about
4    18 --
5    BY MS. GUZMAN:
6        Q   Go ahead and answer --
7        MR. SPIRO: Hold on. Don't interrupt my
8    objection.
10:58 9        MS. GUZMAN: If you make a form objection,
10    that's a fine, but speaking objections are against the
11    rules.
12        MR. SPIRO: Yeah, and I'm making a form
13    objection, it is compound and asking 18 questions.
14        MS. GUZMAN: "Compound" will be sufficient,
15    thank you.
16        MR. SPIRO: No, it is not sufficient. I am
17    entitled to do more than say one word, Counsel.
18    BY MS. GUZMAN:
19        Q   Ms. Hunter, do you need me to repeat the
10:58 20    question?
21        A   Yes, go ahead.
22        Q   Do you personally know whether you saw or
23    heard any of the statements listed in paragraph 58 of
24    your complaint?
25        MR. SPIRO: All right. Compound, harassing

**Page 45**

1        Q   What was the answer you stated before?
2        MR. SPIRO: No, she's not going to repeat her
3    answer. You can look at the record if you want.
4        MS. GUZMAN: Are you instructing her not to
5    answer?
6        MR. SPIRO: Yes. You're harassing her trying
7    to get her to answer what she answered before.
8        (Instruction not to answer.)
9    BY MS. GUZMAN:
11:00 10        Q   Let's go one by one. Let's look at the
11    fourth paragraph on the list in paragraph 58. Would
12    you read that statement to me, Ms. Hunter.
13        A   What page are you on? 25 or 24?
14        Q   24. It is the one that begins with
15    "Recently."
16        Would you read the statement.
17        A   I've already read it.
18        Q   You're right. I didn't specify. Thank you.
19    So I'll read it out loud.
11:00 20        "Recently our achievements in safety were
21    recognized by a leading magazine, a leading insurance
22    company and a one-year-old from South Carolina."
23        Did you personally see or hear this
24    statement?
25        A   I -- I -- I don't know. I don't know.

**Page 47**

1    the witness because she's already answered it and --
2        MS. GUZMAN: I will ask this question as many
3    times as I need to to get an answer.
4        MR. SPIRO: Go ahead. You got an answer,
5    Counsel. You got an answer. She already answered
6    your question. You're trying to get another answer,
7    so I'll keep objecting, and I'm not yet having her
8    stop -- refuse to answer. So I'll complete my
9    objection.
10:59 10        It's compound, it's asked and answered, it's
11    harassing. She's already answered. And there are 18
12    questions, and she's also answered specifically on
13    three of them.
14    BY MS. GUZMAN:
15        Q   Do you need me to repeat the question,
16    Ms. Hunter?
17        MR. SPIRO: For the record, my objections
18    will be the same.
19        Go ahead, Counsel.
10:59 20    BY MS. GUZMAN:
21        Q   Do you know whether you personally saw or
22    heard any of the statements listed in paragraph 58 of
23    your complaint?
24        A   As I previously stated before, the answer is
25    the same, and it is not going to change.

**Page 46**

1        Q   Do you contend that it is false?
2        MR. SPIRO: Don't answer that. She's not
3    required to answer about her contentions.
4        MS. GUZMAN: Are you instructing her not to
5    answer?
6        MR. SPIRO: Yes.
7        (Instruction not to answer.)
8        MS. GUZMAN: On what basis?
9        MR. SPIRO: Based on the Rifkind case and
11:01 10    other cases that follow it.
11    BY MS. GUZMAN:
12        Q   Ms. Hunter, I'd like to move to the next
13    statement, "Effective Safety Innovations" --
14        MR. SPIRO: It is harassing. I'm sorry, I
15    need to explain that further. It is harassing, it is
16    an unfair question.
17    BY MS. GUZMAN:
18        Q   Ms. Hunter, is your answer going to be the
19    same for every statement in this list?
11:01 20        A   Yes.
21        Q   Okay.
22        MR. SPIRO: No -- okay.
23        MS. GUZMAN: Take a break. We're going to
24    take a 10-minute break and then -- and go off the
25    record.

**Page 48**

**12 (Pages 45 to 48)**

**LA RONDA HUNTER**                                    **12/16/08**

| | |
|---|---|

1        THE VIDEOGRAPHER: We're going off the record
2    at 11:02. We are off the record.
3        (Recess.)
4        THE VIDEOGRAPHER: We are back on the record
5    at 11:29.
6    BY MS. GUZMAN:
7        Q  Ms. Hunter, how many different dealers did
8    you visit before you purchased your Yukon?
9        A  I only went to the credit union.
11:29 10     Q  Did you go to Justice Auto?
11        A  Yes, I did.
12        Q  How many times did you visit Justice Auto?
13        A  Once.
14        Q  Did you speak with anyone there about
15    purchasing this car?
16·        A  Did I speak to anyone?  Where?
17        Q  At Justice Auto.
18        A  Yes.
19        Q  Do you recall any of your conversations?
11:29 20     A  No.
21        Q  Do you know who you spoke with?
22        A  No, I can't remember his name.
23        Q  Did you ask him any questions about the
24    parking brake?
25        A  No.

                                    **Page 49**

1        A  No.
2        Q  Knowing what you know now, would you have
3    purchased any other vehicle than the Yukon you did
4    purchase?
5        MR. SPIRO: Vague, confusing.
6        THE WITNESS: Explain it.
7    BY MS. GUZMAN:
8        Q  Did you ask me to explain it?
9        A  Uh-huh.
11:31 10     Q  Okay.  Would you have purchased any other
11    vehicle than the Yukon you bought, knowing what you
12    know now?
13        A  In 2000 — you're asking me in 2001 would I
14    have purchased it if I knew what I knew now?
15        Q  Yes.
16        A  No.
17        Q  Why not?
18        A  Why not?  Because their parking brake is
19    unsafe.
11:31 20     Q  Any other reasons?
21        A  No.
22        Q  What do you mean by "unsafe"?
23        A  What do I mean by "unsafe"?
24        Q  Yes.
25        A  The parking brakes are defective.

                                    **Page 51**

1        Q  Do you remember any of the other questions
2    that you asked?
3        A  No.
4        Q  Do you remember if it was a male or female?
5        A  It was a male.
6        Q  Did you ever talk to any other Yukon owner
7    about the car?
8        A  No.
9        Q  Did you compare the Yukon with other vehicles
11:30 10  before buying it?
11        A  No.
12        Q  Did you have a sense of GM's reputation
13    before you bought your Yukon?
14        A  Did I have a sense of reputation?
15        MR. SPIRO: Vague.
16        THE WITNESS: You want me to answer?
17    BY MS. GUZMAN:
18        Q  Uh-huh.
19        A  Did I have a sense of reputation?  I knew
11:30 20  that they built good cars.
21        Q  Did you have any prior experience with GM?
22        A  No.
23        Q  Have you ever owned a GM car before?
24        A  No.
25        Q  Did you know the reputation of Justice Auto?

                                    **Page 50**

1        Q  What do you mean by "defective"?
2        A  They have to be replaced.
3        Q  Do you recall seeing any documents before you
4    purchased your Yukon?
5        A  No.
6        Q  Do you recall seeing any documents while you
7    purchased your Yukon?
8        A  Any documents of -- what are you talking
9    about?
11:32 10     Q  Did you have to sign any documents?
11        A  Sign what kind of documents?
12        Q  Any documents at all in order to purchase
13    your Yukon.
14        A  Yes, I had to sign the loan documents.
15        Q  What are the law documents?
16        A  The loan documents.
17        Q  Oh, sorry.
18        What are the loan documents?
19        A  They are documents agreeing to pay back the
11:33 20  money I borrowed.
21        Q  Did you sign any other documents?
22        A  No.
23        Q  Did you receive any other documents?
24        A  Did I receive any documents from who?
25        Q  From the sales representative you spoke with

                                    **Page 52**

**13  (Pages 49 to 52)**

LA RONDA HUNTER                                    12/16/08

```
        1   at Justice Auto.
        2     A   No.
        3     Q   Ms. Hunter, would you turn to page -- I'm
        4   sorry., It is in the fourth amended complaint.
        5        MR. SPIRO: That's what's in front of you.
        6   BY MS. GUZMAN:
        7     Q   On page 22, paragraph 56. Let me know when
        8   you're there.
        9     A   I'm here.
11:34  10     Q   At line 18 and continuing, you state, "GM
       11   distributed throughout its authorized dealer network
       12   and provided to all new and would-be new car
       13   purchasers product brochures containing the following
       14   representations."
       15        Did you receive any product brochures?
       16     A   I received the owner's manual with the car.
       17     Q   Anything else?
       18     A   No.
       19     Q   You never received or saw any brochures
11:34  20   containing the representations contained in paragraph
       21   56?
       22     A   No.
       23     Q   Now if you could turn to paragraph 47. It is
       24   on page 17 at line 21.
       25        Let me know when you're there, please.
                                              Page 53
```

```
        1     A   No, I don't.
        2        Could you explain it?
        3     Q   Did --
        4     A   Explain what GM's predelivery inspection
        5   procedure -- after they didn't deliver it.
        6     Q   That's something you'll probably have to talk
        7   to your counsel about, Ms. Hunter. That was my
        8   question for you. But since you don't know, I'll move
        9   on to my next question.
11:37  10        Can you please turn to paragraph 50 of the
       11   complaint.
       12     A   What page?
       13        MR. SPIRO: What page is that?
       14   BY MS. GUZMAN:
       15     Q   Page 18, about line 23.
       16     Q   You mean between 23 and 24?
       17     Q   Yes.
       18     A   Number 50.
       19     Q   Yes.
11:37  20     A   "In accordance with GM's 'Completely
       21   Satisfied - New Vehicle Delivery System' procedure,
       22   each of the subject vehicles that were purchased new
       23   from one dealer within GM's authorized dealer network
       24   were required to be 'inspected, explained and
       25   demonstrated.'"
                                              Page 55
```

```
        1     A   I'm here.
        2     Q   And paragraph 47 --
        3        MR. SPIRO: Oh, I'm sorry, I turned to the
        4   wrong page. Excuse me. Okay. Thank you.
        5   BY MS. GUZMAN:
        6     Q   In paragraph 47 at the second sentence I'll
        7   begin. You state, "GM's predelivery and inspection
        8   procedure requires its authorized dealers to
        9   thoroughly test and inspect each of the subject
11:35  10   vehicles before they were delivered to plaintiffs and
       11   others similarly situated. After the vehicle is
       12   tested and inspected, according to GM's protocol and
       13   procedure, a GM authorized predelivery inspection form
       14   is filled out affirmatively checking each box that the
       15   vehicle has been tested, inspected, and is in working
       16   order."
       17        What document are you referring to when you
       18   say "predelivery inspection form"?
       19        MR. SPIRO: I object, the use of the phrase
11:36  20   "you," she didn't write this complaint. It misstates
       21   the evidence and it's confusing.
       22        THE WITNESS: No, because I don't know.
       23   BY MS. GUZMAN:
       24     Q   You don't know what a predelivery inspection
       25   form is?
                                              Page 54
```

```
        1     Q   On what do you base this allegation in
        2   paragraph 50?
        3        MR. SPIRO: You don't have to answer that.
        4   Don't answer.
        5        MS. GUZMAN: Are you instructing your witness
        6   not to answer?
        7        MR. SPIRO: Let me think about that.
        8        I'll object that it is compound, and the
        9   "you" is confusing because she didn't write the
11:38  10   complaint, but I'll let her answer.
       11   BY MS. GUZMAN:
       12     Q   Go ahead.
       13     A   Okay. "In accordance with GM's 'Completely
       14   Satisfied - New Vehicle Delivery System' procedure,
       15   each of the subject vehicles that were purchased new
       16   from one dealer within GM's authorized dealer network
       17   were required to be 'inspected, explained and
       18   demonstrated.'"
       19        The dealer didn't explain, did not
11:38  20   demonstrate, and it is unknown if it was inspected.
       21     Q   Did not what?
       22     A   This is within GM's authorized dealer
       23   network.
       24     Q   Are you saying that the --
       25     A   I don't know who their authorized dealer
                                              Page 56
```

14 (Pages 53 to 56)

**LA RONDA HUNTER**                                          12/16/08

---

1  network is.
2      Q   What about the dealer that you visited, did
3  they explain and demonstrate the features and controls
4  to you?
5      A   No, they didn't.
6      Q   Do you know whether they inspected them?
7      A   No, I don't.
8      Q   In paragraph 51, the very next paragraph, you
9  state that "The GM 'New Delivery Vehicle System'
11:39 10  procedure requires that the GM authorized sales
11  representative complete a GM authorized form."
12      Do you know what form that refers to?
13      A   No.
14      Q   Did you receive any form from the GM
15  authorized sales representative?
16      A   No.
17      Q   Ms. Hunter, I'm handing you what's been
18  previously Bates-labeled as GM HUNTER 2998 ending at
19  page GM HUNTER 3416.  And I'm going to mark it as
11:40 20  Deposition Exhibit -- what number are we at now?
21      THE REPORTER:  5.
22      THE WITNESS:  5.
23      MS. GUZMAN:  Thank you.
24      (Deposition Exhibit 5 marked.)
25  BY MS. GUZMAN:

                                            Page 57

1      Q   Do you recognize Deposition Exhibit 5?
2      A   Yes.
3      Q   What is it?
4      A   Owner's manual.
5      Q   Did you receive a copy of the owner's manual?
6      A   Yes.
7      Q   When did you receive this copy -- a copy of
8  the owner's manual?
9      A   It was with the purchase of the vehicle.
11:41 10  Q   Did you receive it before or after you
11  purchased the car?
12      A   Did I receive it before or after?  It had to
13  be after I gave them the check for the car that I
14  realized I had the owner's manual with the car.
15      Q   Did you read it?
16      A   No.
17      Q   Did the owner's manual affect your decision
18  to purchase the car?
19      A   No.
11:41 20  Q   I'm going to ask you to turn to page 19 of
21  the fourth amended complaint.  In paragraph 54 between
22  lines 17 and 18 you state, "The GM owner's manual that
23  was specifically mentioned in GM's predelivery
24  inspection procedure and that came with each of the
25  subject vehicles at issue makes the following

                                            Page 58

1  representations," and then you list some
2  representations.
3      Do you think that any of the instructions in
4  the owner's manual are false?
5      MR. SPIRO:  Don't -- vague, compound.
6      If you're going to answer that, go one by
7  one, look at each one, give an answer to each one.
8      And I mean each paragraph.  Read it to
9  yourself, out loud, whatever you want, and then answer
11:43 10  the question.
11      This is really a harassing question.  This
12  thing goes on for two pages.
13      THE WITNESS:  Three -- one, two, three --
14      MR. SPIRO:  You're right.
15      THE WITNESS:  -- almost four.
16      MR. SPIRO:  Wow, I think it is like three,
17  but, anyway.
18      So start with the first --
19      THE WITNESS:  I'm not an auto mechanic, so I
11:43 20  don't know nothing about a brake.
21      MR. SPIRO:  Well, there's --
22      THE WITNESS:  So what -- what are you looking
23  for?  What do you want me to tell you?  I can read you
24  all of what the owner's manual say?
25  BY MS. GUZMAN:

                                            Page 59

1      Q   Do you need to have the question repeated?
2      A   Yes, go ahead.
3      MS. GUZMAN:  Court reporter, will you please
4  read back the question.
5      (Record read as follows:
6      "Q   Do you think that any of
7      the instructions in the owner's
8      manual are false?")
9      MR. SPIRO:  Well, I also object to that, but
11:44 10  there's nothing to show there are any instructions in
11  this.  It says "representations."  Misquoting the
12  evidence, Counsel.
13      THE WITNESS:  That's not, parking brake to
14  set the parking brake -- okay.
15      MR. SPIRO:  La Ronda, please, I want you to
16  go one by one.  Maybe you are.  Are you on the first
17  paragraph there?
18      THE WITNESS:  Uh-huh.
19      MR. SPIRO:  All right.
11:44 20  THE WITNESS:  She asked me is there anything
21  false --
22      MR. SPIRO:  Right.
23      THE WITNESS:  About the -- in the owner's
24  manual --
25      MR. SPIRO:  No.

                                            Page 60

                                    15  (Pages 57 to 60)

LA RONDA HUNTER                                    12/16/08

Page 61

1    THE WITNESS: — or in the instructions.
2    MS. GUZMAN: Counsel, I'm going to ask you
3  again, for the record, to please state your objections
4  and refrain from making any other speeches. This is
5  not an opportunity for you to coach your witness.
6    MR. SPIRO: I'm not coaching my witness. You
7  know very well I'm not.
8    BY MS. GUZMAN:
9    Q   Ms. Hunter, would you please answer the
11:45  10  question.
11    A   To set the parking --
12    MR. SPIRO: You mean the 27 questions?
13    THE REPORTER: I can only get one person at a
14  time.
15    MR. SPIRO: All right. Go ahead.
16    THE WITNESS: Okay. This is an instruction:
17  "Parking Brake. To set the parking brake, hold the
18  regular brake pedal down with your right foot."
19    That's not false.
11:45  20    MR. SPIRO: Hold on, excuse me —
21    THE WITNESS: "This manual includes the" —
22    MR. SPIRO: — you skipped the first
23  paragraph.
24    THE WITNESS: That's not an instruction,
25  though.

Page 62

1    MR. SPIRO: I know it isn't. But that's why
2  the question is vague.
3    Do you want her to answer on each -- do you
4  want her to skip the ones that aren't instructions,
5  Counsel, or do you want her to answer as to each of
6  those paragraphs?
7    MS. GUZMAN: I want her to answer however she
8  needs in order to answer --
9    MR. SPIRO: No, you have to clarify your
11:46  10  question. Do you want her to go on each paragraph
11  there or do you want her to skip the ones that don't
12  appear to be instructions? I need to know that and so
13  does she. And don't try and trick her —
14    THE WITNESS: I —
15    MS. GUZMAN: I asked her about instructions.
16  She can answer about the instructions.
17    MR. SPIRO: Yeah, so which ones, in your
18  view, are instructions? You have to make that clear
19  to her.
11:46  20    BY MS. GUZMAN:
21    Q   Ms. Hunter, do you understand the question?
22    A   Yes, I do.
23    MR. SPIRO: No -- .
24    BY MS. GUZMAN:
25    Q   Would you please answer it.

Page 63

1    MR. SPIRO: — I'm sorry, even though she
2  said that, you are asking a trick question. I want
3  you to tell her which ones you're referring to. If
4  you don't do that, she's not answering, Counsel.
5    MS. GUZMAN: Counsel, it's not a trick
6  question and she said she understands it.
7    MR. SPIRO: It doesn't matter, because you
8  might think instructions mean something different from
9  what she thinks, the jury might think instructions
11:46  10  mean something different from what she thinks, the
11  judge might think it is something different.
12    So you're trying to trick her, you know that
13  you are. I want you to tell her which paragraphs you
14  want her to answer about, otherwise she's not going to
15  answer.
16    MS. GUZMAN: Are you instructing her not to
17  answer the question as it's been stated?
18    MR. SPIRO: If she'll go through each
19  paragraph, then, no, I'm not instructing her then.
11:47  20  But she needs to go through each paragraph. I'm
21  instructing her to do that. Whether it is a, quote,
22  instruction paragraph or not, because nobody knows
23  whether it is for sure.
24    BY MS. GUZMAN:
25    Q   Go ahead, Ms. Hunter.

Page 64

1    A   Okay.
2    MR. SPIRO: Please start at the first
3  paragraph.
4    THE WITNESS: "The manual includes the latest
5  information at the time it was printed. Please keep
6  this manual in your vehicle so it will be there if you
7  ever need it when you're on the road. If you sell
8  your vehicle, please leave this manual in it so that
9  the new owner can use it."
11:47  10    MR. SPIRO: What's the question, Counsel?
11    BY MS. GUZMAN:
12    Q   Do you think that statement is false?
13    MR. SPIRO: I object. That's vague and
14  ridiculous. An instruction can't be true or false.
15  It's an instruction.
16    THE WITNESS: "Parking brake. To set the
17  parking brake" —
18    BY MS. GUZMAN:
19    Q   I'm sorry, Ms. Hunter, can I have the answer
11:48  20  to the question I just asked?
21    MR. SPIRO: It is compound, too.
22    THE WITNESS: It is instructing me to leave
23  the manual in if I sell the car.
24    MR. SPIRO: How can that be true or false,
25  Counsel?

16  (Pages 61 to 64)

**LA RONDA HUNTER**                                    12/16/08

BY MS GUZMAN:
1
2    Q    Is there anything —
3    A    So that the new owner can use it. It is
4    telling me — basically it is instructing me to leave
5    it — is it true or false? I can't say whether it is
6    true or false because I don't know.
7    BY MS. GUZMAN:
8    Q    Is there anything misleading about that
9    statement to you?
11:48 10    A    I don't know what "misleading" mean?
11          The next one, park brake — "Parking
12    brake" —
13    Q    I'm sorry, Ms. Hunter, I still need the
14    answer to the question.
15          MR. SPIRO:   She answered.
16          THE WITNESS:   I don't know what "misleading"
17    mean.
18    BY MS. GUZMAN:
19    Q    Is there anything confusing about that
11:48 20    statement to you?
21    A    No, but this manual — it's — I don't know
22    what's true or false about leaving — it is telling me
23    to leave a manual in so the new owner can use it, so I
24    don't know what's true or false about it.
25    Q    Is that confusing?
                                                   Page 65

1    Q    What about the next one, "To release the
2    parking brake, hold the regular brake pedal down, pull
3    the bottom edge of the lever located above the parking
4    brake pedal marked 'Brake Release' to release the
5    parking brake." Is that, in fact, how you release the
6    parking brake in your Yukon?
7    A    Yes.
8    Q    Is there anything confusing about that
9    instruction to you?
11:50 10    A    No.
11    Q    What about the next one, "It can be dangerous
12    to get out of your vehicle if the shift lever is not
13    fully in park with the parking brake firmly set. Your
14    vehicle can roll. You or others can be injured. To
15    be sure your vehicle won't move even when you're on
16    fairly level ground, use the steps that follow."
17          Would you review the steps that follow that.
18    They would be lines 1 through 18 of page 20.
19    A    "It can be dangerous to set your vehicle" —
11:51 20    "your vehicle can roll. You or others can be injured.
21    To be sure your vehicle will move when" — "use the
22    steps as follows."
23          MR. SPIRO:   What follows there is not the
24    steps that's being referred to, Counsel.
25          Don't answer that. It misstates what this
                                                   Page 67

1    A    No.
2    Q    How about the next instruction, "To set the
3    parking brake, hold the regular brake down with your
4    right foot," is that, in fact, how you set the parking
5    brake in your Yukon?
6    A    No. To set the parking brake, hold the
7    regular with your right foot?
8    Q    How do you set the parking brake in your
9    Yukon?
11:49 10    A    I'm a lefty.
11    Q    What does that mean?
12    A    Everything is done with my left side.
13    Q    So you hold the regular brake pedal down with
14    your left foot?
15    A    Depends. Depends on the situation.
16    Q    What do you mean by that?
17    A    Well, if the right leg is broke, I have no
18    choice to use but the left foot.
19    Q    But you hold the regular brake pedal down
11:50 20    with whatever foot you use?
21          MR. SPIRO:   Argumentative.
22    BY MS. GUZMAN:
23    Q    Is there anything confusing about that
24    instruction to you?
25    A    No.
                                                   Page 66

1    document says.
2          MS. GUZMAN:   Are you instructing your witness
3    not to answer?
4          MR. SPIRO:   What's the question again?
5    BY MS. GUZMAN:
6    Q    Are any of the instructions that follow
7    confusing?
8          MR. SPIRO:   That wasn't the question — oh,
9    what are they, Counsel? Yeah, don't answer that
11:52 10    because we don't know what you're talking about.
11    BY MS. GUZMAN:
12    Q    Okay. Ms. Hunter, would you read lines 1
13    through 18 and let me know if anything in there is
14    confusing or misleading to you.
15          MR. SPIRO:   Which one, Counsel? That's
16    compound. Confusing and misleading. It is compound;
17    I don't know how she can answer.
18          THE WITNESS:   "Leaving your vehicle with the
19    engine running" —
11:52 20          MR. SPIRO:   It is multiple compound because
21    it is about 40 lines —
22          THE WITNESS:   — "It can be dangerous to
23    leave your vehicle" —
24          THE REPORTER:   I can only get one person at a
25    time.
                                                   Page 68

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
**877.955.3855**

**LA RONDA HUNTER**                                                    **12/16/08**

| | |
|---|---|
| 1    MR. SPIRO: It is about 30 lines of typing | 1    MS. GUZMAN: Court reporter, would you mind |
| 2  and there's two questions as to each line — as to | 2  reading back the question. |
| 3  each statement, or whatever. | 3    THE WITNESS: Reading line 1 through 18 — |
| 4  BY MS. GUZMAN: | 4    MR. SPIRO: Yeah, she wanted you to do that |
| 5    Q   Have you reviewed lines 1 through 18? | 5  but she had a question. Counsel had a question which |
| 6    A   No. | 6  I think was confusing and misleading, but the court |
| 7    Q   Can you answer my question? | 7  reporter will read it back. |
| 8    A   What's the question? | 8    (Record read as follows: |
| 9    MR. SPIRO: How can she do that without | 9    "Q   Okay. Ms. Hunter, would |
| 11:53  10  reading it, Counsel? | 11:56  10    you read lines 1 through 18 and let |
| 11    Don't answer the question without reading it. | 11    me know if anything in there is |
| 12  What kind of thing is that? | 12    confusing or misleading to you." |
| 13    MS. GUZMAN: I asked if she could. | 13    THE WITNESS: Yes, it is. What should I do? |
| 14    Q   Can you answer it — | 14  BY MS. GUZMAN: |
| 15    MR. SPIRO: She said she hasn't read it. She | 15    Q   What line is that at? |
| 16  obviously can't answer it without reading it. | 16    A   I guess number 26. My car is not a |
| 17    Don't answer without reading it. | 17  four-wheel drive — my car is not a four-wheel drive, |
| 18  BY MS. GUZMAN: | 18  it is a two-wheel drive. |
| 19    Q   Go ahead and read it. | 19    Q   But in lines 1 through 18, was there anything |
| 11:53  20    MR. SPIRO: Stop trying to harass my client. | 11:57  20  that was confusing to you? |
| 21  This is preposterous. | 21    A   20— |
| 22    THE WITNESS: Repeat the question so I can | 22    MR. SPIRO: Don't answer that without going |
| 23  read it. Repeat the question so I can read it. | 23  through each sentence and giving a separate answer for |
| 24    MS. GUZMAN: Court reporter, can you please | 24  each sentence, please. |
| 25  read the question back. | 25    THE WITNESS: Well, that was line 26. |
| Page 69 | Page 71 |
| 1    (Record read as follows: | 1    MR. SPIRO: You're going below where she |
| 2    "Q   Okay. Ms. Hunter, would | 2  wanted you to. |
| 3    you read lines 1 through 18 and let | 3    THE WITNESS: Oh, 1 through 18. |
| 4    me know if anything in there is | 4    MR. SPIRO: Start at 1 — |
| 5    confusing or misleading to you.") | 5    THE WITNESS: Okay. I've already said |
| 6    MR. SPIRO: You asked her to read it, | 6  leaving your vehicle with the engine running, that's |
| 7  Counsel; she's entitled to read it. | 7  confusing. |
| 8    La Ronda, before you answer, I want you to go | 8    Why would I want to leave my vehicle with the |
| 9  through each one and give a separate answer to each | 9  engine running? We live in L.A. They are going to |
| 11:55  10  paragraph — or, actually, those paragraphs are rather | 11:57  10  steal it. |
| 11  long. Try each sentence. | 11  BY MS. GUZMAN: |
| 12    THE WITNESS: The one says suppose after | 12    Q   Are you saying that that line is confusing to |
| 13  stalling I try to back down the hill and decide I just | 13  you? |
| 14  can't do it, what shall I do. | 14    MR. SPIRO: She just said it, yes. |
| 15    MR. SPIRO: Start from the top and — | 15    THE WITNESS: "Caution, it can be dangerous |
| 16    THE WITNESS: I'm not going to answer that | 16  to leave your vehicle with the engine running. Your |
| 17  one. | 17  vehicle can move suddenly if the shift lever is not |
| 18    MR. SPIRO: All right. | 18  put in park with the parking brake firmly set." |
| 19    THE WITNESS: Use common sense for that one. | 19    If you have four-wheel drive — like I stated |
| 11:56  20    MR. SPIRO: The question is confusing or | 11:58  20  before, I don't have a four-wheel drive, I have a |
| 21  misleading? | 21  two-wheel drive, and this refers to a four-wheel |
| 22  BY MS. GUZMAN: | 22  drive. |
| 23    Q   Ms. Hunter, do you need me to read back the | 23    MR. SPIRO: Stop and answer what you've read |
| 24  question? | 24  so far in that paragraph is confusing or misleading to |
| 25    A   Yes, go ahead. | 25  you. |
| Page 70 | Page 72 |

**18  (Pages 69 to 72)**

**LA RONDA HUNTER**                                    12/16/08

Page 73

```
 1          THE WITNESS:  Yeah, it is confusing and
 2   misleading because I don't have a four-wheel drive, I
 3   have a two-wheel drive, and this is what it states.
 4   BY MS. GUZMAN:
 5       Q   What's confusing about that?
 6       A   It is telling me if I have a four-wheel
 7   drive --
 8       Q   But you don't have a four-wheel drive, do
 9   you?
11:58  10  A   No.  It can be dangerous leaving your vehicle
11   with the engine running.
12       Q   But you don't have a four-wheel drive.
13       MR. SPIRO:  Argumentative.  That isn't a
14   question.  Don't answer it.
15          (Instruction not to answer.)
16       MS. GUZMAN:  Are you instructing your witness
17   not to answer?
18       MR. SPIRO:  If you ask a question, then
19   you'll get an answer, but saying, "You don't have a
11:59  20  four-wheel drive" is not a question.
21   BY MS. GUZMAN:
22       Q   My question is:  You don't have a four-wheel
23   drive, do you?
24       A   No, I don't have a four-wheel drive, Kelly.
25       Q   So then a statement that begins, "If you have
```

Page 74

```
 1   a four-wheel drive," doesn't apply to you, does it?
 2       MR. SPIRO:  Argumentative.
 3       THE WITNESS:  It says, "Caution, it can be
 4   dangerous to leave your vehicle with the engine
 5   running.  Your vehicle can move suddenly if the shift
 6   lever is not fully parked with your parking brake
 7   firmly set," in bold letters first.
 8   BY MS. GUZMAN:
 9       Q   That didn't answer my question.  My question
11:59  10  was --
11       A   I did answer your question.
12       Q   I'm sorry, you didn't answer exactly my
13   question.
14       MR. SPIRO:  Don't argue with my client,
15   please.
16   BY MS. GUZMAN:
17       Q   My question was --
18       A   You want to know if it is misleading or
19   confusing?  Yes it is.
11:59  20  Q   And what about that is misleading or
21   confusing?
22       A   I just stated as previously stated.
23       Q   You're confused by the sentence, "If you have
24   four-wheel drive and your transfer case is in neutral
25   your vehicle will be free to roll"?
```

Page 75

```
 1       A   It doesn't say that.  "If you continue to
 2   leave your vehicle running, if the shift lever is not
 3   fully in park with the parking brake fully set" --
 4       Q   I'm sorry, Ms. Hunter, you're going to have
 5   speak up so I can hear what you're saying.
 6       A   It says, "Caution.  It can be dangerous to
 7   leave your vehicle with the engine running.  Your
 8   vehicle can move suddenly if the shift lever is not
 9   fully in park with the parking brake firmly set."
12:00  10  You asked me was that misleading and
11   confusing.  As stated previously, the answer is still
12   the same, it is not going to change.  Can we move on?
13       Q   Do you think that is confusing?
14       A   Yes, it's confusing.  As I just -- I --
15       Q   Now, Ms. Hunter, I'm going to ask you a
16   slightly different question.  What is confusing to you
17   about that statement?
18       A   I don't have -- I have a two-wheel drive.
19       Q   Where does that statement say anything about
12:01  20  two-wheel drive?
21       A   It don't.
22       Q   Then what part of that statement is
23   confusing?
24       A   I just told you previously.
25       Q   Ms. Hunter, did you have any communication
```

Page 76

```
 1   with General Motors?
 2       A   No.
 3       Q   Now, on April 6th, 2008 you had the parking
 4   brake on your car repaired; is that correct?
 5       A   No.
 6       Q   What is incorrect about that?
 7       A   It is the wrong year.
 8       Q   What year did you have it repaired?
 9       A   2005 of April.
12:01  10  Q   How many miles did your car have on it when
11   it was repaired?
12       A   I don't know.  I don't know right now.
13       Q   Was it more than 20,000?
14       A   I don't know.  I would have to look at the
15   document and see.  It's on the document.
16       Q   Okay.  We'll get to the document later, then.
17          Why did you have your parking brake repaired?
18       A   Because it went out.
19       Q   What was -- when was the first time that it
12:02  20  went out?
21       A   When is the first time it went out?  April
22   2005.
23       Q   Do you know what day?
24       A   I don't recall the exact day.
25       Q   What do you mean --
```

19  (Pages 73 to 76)

| | | |
|---|---|---|
| 1 | A | I took it to get -- it got repaired. |
| 2 | Q | What do you mean by "went out"? |
| 3 | A | The light came on. |
| 4 | Q | Did it still hold the vehicle? |
| 5 | A | Unknown. |
| 6 | Q | What was that? |
| 7 | A | I don't know.  Unknown, unknown, did it hold |
| 8 | the vehicle. | |
| 9 | Q | Did the parking brake work? |
| 12:03  10 | A | You can push it all the way down to the |
| 11 | floor. | |
| 12 | Q | What does that mean? |
| 13 | A | When you push it down with your feet -- when |
| 14 | I pushed it down with my left foot, and it goes all | |
| 15 | the way to the floor. | |
| 16 | Q | Did it hold the car when you did that? |
| 17 | A | I'm going to say yes.  Yes. |
| 18 | Q | So you took it to get repaired just because |
| 19 | you saw the light go on? | |
| 12:03  20 | A | Yeah, every time a light come on in my car, I |
| 21 | take it to be repaired. | |
| 22 | Q | Where did you take it? |
| 23 | A | To Power Chevrolet, Hawthorne, California. |
| 24 | Q | Why did you take it there? |
| 25 | A | That's where I always take my car. |

Page 77

| | | |
|---|---|---|
| 1 | Q | Why do you always take your car there? |
| 2 | A | Why do I always take my car there?  Because |
| 3 | that's where I always take it. | |
| 4 | Q | When you took your car to Power Chevrolet in |
| 5 | April of 2005, did you speak with anyone? | |
| 6 | A | To the mechanic. |
| 7 | Q | What did you say? |
| 8 | A | I told him that my ABS and my parking light |
| 9 | was on. | |
| 12:04  10 | Q | What did he say? |
| 11 | A | He would do a diagnosis on it. |
| 12 | Q | Did he do that diagnosis? |
| 13 | A | Yes. |
| 14 | Q | And what were the results of that diagnosis? |
| 15 | A | I don't know.  I have no idea.  I don't know. |
| 16 | I'm not a mechanic.  I don't know.  He just told me | |
| 17 | how much it would cost to get it fixed and repair the | |
| 18 | vehicle. | |
| 19 | Q | Did you speak with anyone else? |
| 12:05  20 | A | No. |
| 21 | Q | Was anyone else present while you were |
| 22 | speaking with the mechanic? | |
| 23 | A | No. |
| 24 | Q | Ms. Hunter, can you turn to your form |
| 25 | interrogatories, Exhibit A that's attached at the end | |

Page 78

| | | |
|---|---|---|
| 1 | of that document. | |
| 2 | MR. SPIRO:  Which exhibit number is it? | |
| 3 | MS. GUZMAN:  The form interrogatories are | |
| 4 | Exhibit Number 1. | |
| 5 | MR. SPIRO:  Thank you. | |
| 6 | What's the matter? | |
| 7 | THE WITNESS:  There is a bug flying. | |
| 8 | MR. SPIRO:  A bug. | |
| 9 | BY MS. GUZMAN: | |
| 12:06  10 | Q | Do you recognize this document that's marked |
| 11 | Exhibit A? | |
| 12 | A | Yes. |
| 13 | Q | What is it? |
| 14 | A | It's where I took my truck to go get repaired |
| 15 | because GM refused to fix it. | |
| 16 | Q | I-- |
| 17 | A | They fixed the ABS, but they wouldn't fix the |
| 18 | parking brake. | |
| 19 | Q | Okay.  And that was at Power Chevrolet that |
| 12:06  20 | they wouldn't fix the parking brake? | |
| 21 | A | Yes. |
| 22 | Q | Did they say anything about the power brake |
| 23 | to you? | |
| 24 | A | No, everything was a secret.  Everything is |
| 25 | still a secret. | |

Page 79

| | | |
|---|---|---|
| 1 | Q | Did you ask them to fix it? |
| 2 | A | Yes, I did. |
| 3 | Q | Did they tell you why they wouldn't? |
| 4 | A | No. |
| 5 | Q | So you went to Dagher Automotive? |
| 6 | A | Uh-huh -- yes. |
| 7 | Q | Who did you speak with at Dagher Automotive? |
| 8 | A | I don't know his name. |
| 9 | Q | Just one person? |
| 12:07  10 | A | Yes. |
| 11 | Q | What did you say to him? |
| 12 | A | That my parking brake light was on. |
| 13 | Q | And what did he say to you? |
| 14 | A | Okay.  He'll fix it. |
| 15 | Q | Did he tell you what was wrong with the |
| 16 | parking brake? | |
| 17 | A | No. |
| 18 | Q | It says on this document, "Customer supply |
| 19 | all the parts." | |
| 12:07  20 | Did you supply the parts for that repair? | |
| 21 | A | Yes. |
| 22 | Q | Where did you get those parts? |
| 23 | A | Across the street. |
| 24 | Q | What is across the street? |
| 25 | A | A little automotive part place from my job. |

Page 80

20 (Pages 77 to 80)

**LA RONDA HUNTER**                                                        12/16/08

| | Page 81 | | Page 83 |
|---|---|---|---|

1  This is by my job.
2  Q   How did you know what parts to get?
3  A   I requested for 2001 GM brakes.
4  Q   At the place across the street?
5  A   Uh-huh.
6  Q   Do you know the name of that place?
7  A   No, I don't.
8  Q   Do you remember who you spoke with there?
9  A   No. I don't even know if it still exists.
12:08   10  Q   Did you ask the person you spoke with there
11  for -- sorry, let me rephrase that.
12      What did you ask the person you spoke with
13  there for?
14  A   2001 brakes.
15  Q   That's it?
16  A   That's it.
17  Q   You just said "2001 brakes"?
18  A   Uh-huh. And I left it in the care of the
19  guy at the -- the one who fixed it.
12:08   20  Q   At Dagher Automotive?
21  A   Yes, and the work. So what happened in
22  between, I don't know. What happened then in
23  between --
24      MR. SPIRO: She's not asking you anything.
25  You answered the question.

**Page 81**

---

1  A   It rolled with the parking brake --
2  Q   What does that mean --
3  A   -- as it rolls now with the parking brake
4  down.
5      MR. SPIRO: Hold on. Could you read me back
6  the answer because I want to make sure you -- it was
7  accurate -- I want to make sure it was accurately
8  taken down. No offense.
9      THE REPORTER: The first one or the second
10  one.
11      MR. SPIRO: Both.
12      (Record read as follows:
13      "Q   Did your parking brake
14      ever fail to hold your car?
15      "A   It rolled with the parking
16      brake --
17      "Q   What does that mean --
18      "A   -- as it rolls now with
19      the parking brake down.")
12:10   20  BY MS. GUZMAN:
21  Q   When was the first time that your car rolled
22  with the parking brake set?
23  A   It's been awhile ago. I don't know.
24  Q   Do you know what year?
25  A   I can't recall what year, but I know now in

**Page 83**

---

1  BY MS. GUZMAN:
2  Q   How did you know those were the right parking
3  brakes for your 2001 GM Yukon?
4  A   How did I know they were the right? Common
5  sense.
6  Q   What do you mean by "Common sense"?
7  A   If I got a 2001 GMC Yukon, of course common
8  sense would tell me to request for 2001 brakes, right?
9  I wouldn't want 2002 brake shoes, unless it was made
12:09   10  the same. I don't know. I don't know what you're
11  talking about. It is just common sense.
12  Q   Well, how did you know they were right for
13  the make and model of your vehicle?
14  A   I don't know if it was right.
15  Q   Can you identify any specific component of
16  your parking brake system that you believe is
17  defective?
18      MR. SPIRO: What?
19      THE WITNESS: Can I identify --
12:09   20      MR. SPIRO: Vague.
21      THE WITNESS: -- any components? No, I
22  can't, I'm not a mechanic.
23  BY MS. GUZMAN:
24  Q   Did your parking brake ever fail to hold your
25  car?

**Page 82**

---

1  2008 it is to the floor.
2  Q   How many times did your car roll with the
3  parking brake set?
4  A   I don't -- I don't know.
5  Q   Was it more than one?
6  A   Of my experience? Yes. My experience, yes.
7  But, like I said, I don't know how many times it
8  rolled. I don't sit in the car at 24 hours so I don't
9  know.
12:11   10  Q   Did it roll before the light came on?
11  A   No.
12  Q   How soon after the light came on did you take
13  your car to the Power Chevrolet dealer?
14  A   I don't -- I can't recall. I know. I
15  know the light came on and I -- every time the
16  light -- something on -- every time the light come on
17  in my car, I take it to the dealership in the morning
18  before I could go to work, but I don't know.
19  Q   Did the car --
12:12   20  A   When the light come on, it means something is
21  wrong with it.
22  Q   Did the car roll after you had the parking
23  brake replaced at Dagher Automotive?
24  A   Yeah, that's why I don't drive it now.
25  Q   When was the last time the car rolled with

**Page 84**

---

**21 (Pages 81 to 84)**

LA RONDA HUNTER                                        12/16/08

1  the parking brake set?
2    A   December 2008.
3    Q   What do you mean by "roll"?
4    A   The definition of roll?
5    Q   Not the definition. What do you mean by
6  "roll"?
7    A   It rolled.
8    Q   How far?
9    A   I don't know. It wasn't no feet or nothing
12:13 10  like that, but I don't know how far. I can't estimate
11  how far.
12    Q   How fast?
13    A   I can't estimate the speed of miles per hour.
14    Q   I'm not asking you to estimate. Ms. Hunter,
15  I would like to know whether you know how far or how
16  fast it rolled?
17        MR. SPIRO: Excuse me, you did ask her how
18  fast and she said she didn't know.
19        MS. GUZMAN: Okay.
12:14 20        MR. SPIRO: She also said she can't estimate.
21  BY MS. GUZMAN:
22    Q   Was it less than a foot?
23    A   I already said -- I already answered the
24  question.
25    Q   You actually haven't answered the question
                                        Page 85

1  "Was it less than a foot?"
2    A   Did I say that. I said I don't know how
3  many -- it wasn't feet and I don't know. I mean, how
4  many, I don't know. I can't estimate how -- if I can
5  get a measuring tape and go out there and come back
6  and do it, I'll tell you.
7    Q   So you don't know how far your car rolled
8  with the parking brake set?
9        MR. SPIRO: Don't answer that you. She
12:14 10  already said it twice.
11        (Instruction not to answer.)
12        MS. GUZMAN: Are you instructing your witness
13  not to answer?
14        MR. SPIRO: Yes. You are harassing her.
15        MS. GUZMAN: On what basis?
16        MR. SPIRO: Because you're harassing her.
17  She answered you twice and then you ask her to say it
18  again. What is that?
19        MS. GUZMAN: Counsel, you're only entitled to
12:14 20  instruct your witness not to answer on the grounds of
21  privilege.
22        MR. SPIRO: That's not true.
23        MS. GUZMAN: Are you still instructing her
24  not to answer?
25        MR. SPIRO: Yes. It is not true, the
                                        Page 86

1  supposed law you just quoted me. It is not the law.
2  BY MS. GUZMAN:
3    Q   Ms. Hunter, have you made any other attempts
4  to get the parking brake repaired?
5    A   No.
6    Q   When you discovered this issue with your
7  parking brake, did you notify the dealer?
8    A   When I discovered the issue with the parking
9  brake -- the light came on and I took it to the
12:15 10  dealership. And they didn't fix it, so I took it here
11  and they fixed it.
12    Q   Now, you said that after you fixed it, it
13  continued to roll, correct?
14    A   I said December 2000 -- you asked me when the
15  last time, I said December 2008.
16    Q   So it continued to roll?
17    A   If you say so.
18    Q   I'm asking what you're saying.
19        MR. SPIRO: She already told you, Counsel,
12:16 20  twice, at least.
21        THE WITNESS: I've already answered the
22  question.
23  BY MS. GUZMAN:
24    Q   Ms. Hunter, is it your position that the
25  repair that Dagher Automotive did did not work?
                                        Page 87

1        MR. SPIRO: Don't answer that. She's asking
2  you for a contention.
3        (Instruction not to answer.)
4        MS. GUZMAN: Counsel, are you instructing the
5  witness not to answer?
6        MR. SPIRO: That's right. You can ask a
7  different way and get the answer.
8        MS. GUZMAN: On what basis?
9        MR. SPIRO: Because it is improper to ask a
12:16 10  witness what her contentions are -- it is improper to
11  ask a party what her contentions are. There is case
12  law to that effect, and it is not fair, says the case.
13  BY MS. GUZMAN:
14    Q   Did the repair that Dagher Automotive do on
15  your car work?
16    A   I have no idea.
17    Q   You don't know whether the repair worked?
18    A   It stopped until -- and now it is to the
19  floor, so what is the problem, I don't know. I don't
12:16 20  know what the problem is right now.
21    Q   Ms. Hunter, I'm sorry, but I just don't
22  understand your answer.
23    A   I just don't understand your question,
24  either, because you're asking me something -- you're
25  asking me did it work, did it work or did it did not
                                        Page 88

22  (Pages 85 to 88)

**LA RONDA HUNTER**                                    12/16/08

Page 89

```
 1   work.
 2      Q   Did Dagher Automotive —
 3      A   The brakes work but the pedal still goes down
 4   to the floor. If I took it in for a diagnosis, no I
 5   haven't. If I can go leave and go —
 6         MR. SPIRO: No, she hasn't — isn't asking
 7   you that. Don't answer questions that aren't asked.
 8         THE WITNESS: But I don't know what's wrong
 9   with it now.
10   BY MS. GUZMAN:
11      Q   Why do you think something is wrong with it
12   now?
13      A   Because it is not supposed to go to the
14   floor.
15      Q   The pedal is not supposed to go to the floor?
16      A   Yes.
17      Q   But does the parking brake hold the car?
18      A   It is supposed to.
19      Q   Does it?
20      A   It's on level ground, so —
21      Q   Do you know whether the parking brake holds
22   the car?
23      A   I don't know. I don't know.
24      Q   Did the parking brake ever fail to hold the
25   car?
```
(12:17 at lines 10, 17, 20)

Page 90

```
 1         MR. SPIRO: She just answered this — well,
 2   go ahead.
 3         She's answered this —
 4         MS. GUZMAN: Counsel, I'm attempting to
 5   clarify her testimony.
 6         MR. SPIRO: You are?
 7         MS. GUZMAN: Please allow me to do so.
 8         THE WITNESS: You said did the parking brake
 9   ever fail to hold the car? Evidently it did. In the
10   previous answer you asked me did it roll, I told you
11   it did, but how many feet or foot or whatever, I don't
12   know.
13   BY MS. GUZMAN:
14      Q   Well, you said less than a foot before; isn't
15   that right?
16      A   No, I told you I can't estimate.
17         MR. SPIRO: No, that's not right.
18   BY MS. GUZMAN:
19      Q   Were you there when the car was rolling?
20      A   I guess I was there. It lives at home with
21   me.
22      Q   Did you ever personally observe the car roll
23   with the parking brake set?
24      A   Yes.
25      Q   And you can't tell me how far the car rolled?
```
(12:18 at lines 10, 20)

Page 91

```
 1         MR. SPIRO: Now, that's it —
 2         THE WITNESS: No.
 3         MR. SPIRO: — she's already answered this
 4   four times.
 5   BY MS. GUZMAN:
 6      Q   Did the car roll less than 10 feet?
 7      A   10 feet, I can't estimate how many —
 8      Q   Did the car roll —
 9      A   If you can let me go and get a measuring tape
10   and do it, I'll come back and tell you.
11      Q   I'm asking for what you saw when you saw your
12   car roll with the parking brake set.
13      A   I don't know. I can't estimate, Kelly.
14      Q   Can you recall any specific occasion where
15   the car rolled with the parking brake set?
16         MR. SPIRO: She's answered this.
17         THE WITNESS: I answered that already.
18         Could you go back and give her the answer to
19   the questions that she's giving me — I mean, that she
20   keep asking me?
21         THE REPORTER: I can't answer.
22   BY MS. GUZMAN:
23      Q   Ms. Hunter, I'm sorry, but you need to just
24   answer my questions.
25      A   Oh, okay.
```
(12:19 at lines 10, 20)

Page 92

```
 1      Q   Can you show me with your hands how far the
 2   car rolled?
 3      A   I'll show you, it do this like. I did that
 4   in the beginning. It did like this.
 5         MS. GUZMAN: For the record, the witness just
 6   moved her finger several inches across the table.
 7         THE WITNESS: That's not — I don't know
 8   because I can't estimate how many feet or foot. She
 9   asked how it rolled. I don't know.
10   BY MS. GUZMAN:
11      Q   Apart from estimating —
12      A   I already answered the question. I don't
13   know. I don't know.
14      Q   Was the car on a slope when it rolled?
15      A   In my driveway, no.
16      Q   Did you ever see the car roll with a parking
17   brake set anywhere other than your driveway?
18      A   No.
19      Q   And your driveway is a flat surface?
20      A   Yes.
21      Q   After you went to Dagher Automotive on April
22   6th of 2005, did the car still roll after that?
23      A   I just told you it rolled December 2008.
24      Q   Was that the only time it rolled after the
25   repair at Dagher automotive?
```
(12:20 at line 10; 12:21 at line 20)

23 (Pages 89 to 92)

```
 1      A   I don't live in the car 24 hours, I don't
 2   know.
 3      Q   Was that the only time it rolled?
 4          MR. SPIRO:  She just answered you, Counsel.
 5          MS. GUZMAN:  She did not, actually, answer my
 6   specific question.
 7          THE WITNESS:  I don't live in the car for 24
 8   hours, so I don't know.
 9   BY MS. GUZMAN:
12:21 10    Q   Ms. Hunter, I'm not asking whether you live
11   in the car, I'm only asking --
12          MR. SPIRO:  She said "I don't know."
13   BY MS. GUZMAN:
14      Q   You don't know whether December 2008 was the
15   only time the car rolled?
16      A   No, I don't know.
17      Q   Can you recall any other times, other than
18   December 2008, when the car rolled after you had it
19   repaired at Dagher Automotive?
12:22 20    A   I can't recall.  Not right now, I can't
21   recall.
22      Q   When the car rolled in December 2008, did you
23   notify the dealer that time?
24      A   No, I didn't notify the dealer.  I don't know
25   what's wrong with it.
                                         Page 93
```

```
 1   like?
 2          MR. SPIRO:  I don't know.
 3          MS. GUZMAN:  Can we put on the record how
 4   long the break is going to be so that I know when to
 5   come back to this room?
 6          MR. SPIRO:  No.  No.
 7          MS. GUZMAN:  You just want an indefinite
 8   break?
 9          MR. SPIRO:  No.
12:24 10        MS. GUZMAN:  About how long would you like
11   the break to be?
12          MR. SPIRO:  It won't be more than 20 minutes.
13   It might be less.
14          MS. GUZMAN:  Okay.  We'll take a 20-minute
15   break and go off the record.
16          THE VIDEOGRAPHER:  We are going off the
17   record at 12:25.  This concludes media number 1.
18          And we are off the record.  Thank you.
19          (Recess.)
01:20 20        THE VIDEOGRAPHER:  We are back on the record
21   at 1:22.
22          This is the beginning of media number 2 in
23   the deposition of La Ronda Hunter.
24   BY MS. GUZMAN:
25      Q   Ms. Hunter, when you had the parking brake
                                         Page 95
```

```
 1      Q   Did you --
 2      A   I told you I don't know what's wrong with the
 3   car.  I didn't do a diagnosis on it.
 4      Q   Did you notify --
 5      A   I didn't notify anyone.
 6      Q   When you went to Dagher Automotive to have it
 7   fixed, did you get a second opinion?
 8      A   No.
 9      Q   Has anyone ever told you what is wrong with
12:23 10  your car?
11      A   Has anyone told me what was wrong with my
12   car?
13          MR. SPIRO:  Don't repeat anything your
14   lawyers might have told you.
15          THE WITNESS:  Somebody told me a lot of stuff
16   was wrong with my car.  They told me it was dirty, so
17   what are you asking?  They told me --
18   BY MS. GUZMAN:
19      Q   I'll rephrase for you.
12:23 20        MR. SPIRO:  Counsel.  It has been an hour so
21   we should take a break.
22          MS. GUZMAN:  Okay.  We'll take a 10-minute
23   break.  And we'll be back in 10 minutes this time.
24          MR. SPIRO:  It might not be 10 minutes.
25          MS. GUZMAN:  How long of a break would you
                                         Page 94
```

```
 1   system on your Yukon repaired in April of 2005, did
 2   you document it in any way?
 3      A   No.
 4      Q   You didn't take any photos?
 5      A   No.
 6      Q   You didn't take a video of it?
 7      A   No, not that I know of.
 8      Q   Have you taken any pictures of your parking
 9   brake system prior to having it repaired?
01:21 10    A   No.
11      Q   Did you contact GM before you had it
12   repaired --
13      A   No.
14      Q   -- so they could inspect the vehicle?
15      A   No.
16      Q   Did you keep the old parking brake system so
17   it could be inspected later on?
18      A   No, I didn't.
19      Q   Have you had your car appraised since
01:22 20  replacing the parking system?
21      A   No.
22      Q   Did you have your car appraised before
23   replacing the parking brake system?
24      A   No.
25      Q   I'm going to hand you and your counsel a copy
                                         Page 96
```

24  (Pages 93 to 96)

**LA RONDA HUNTER**                                                        **12/16/08**

```
         1    of — a stack of photos, and it is going to be marked
         2    defendants' group Exhibit Hunter 6.
         3         (Deposition Exhibit 6 marked.)
         4         MR. SPIRO:  Wait a minute.  These are not
         5    numbered — okay.
         6    BY MS. GUZMAN:
         7         Q   Do you recognize Hunter group Exhibit 6,
         8    Ms. Hunter?
         9         A   No, I don't.
01:23   10         Q   Okay.  You've never seen them before?
        11         A   No, I haven't.
        12         Q   Now I'm going to hand you and your counsel
        13    specific photos from that stack.  The first will be
        14    marked Hunter 7.
        15         (Deposition Exhibit 7 marked.)
        16    BY MS. GUZMAN:
        17         Q   Do you recognize what's depicted in that
        18    photograph, Hunter 7?
        19         A   No.
01:24   20         Q   Do you recognize that license plate?
        21         A   No.
        22         Q   That's not your license plate?
        23         A   No.
        24         MS. GUZMAN:  Now I'm marking Hunter Exhibit
        25    8.
                                                          Page 97
```

```
         1         (Deposition Exhibit 8 marked.)
         2    BY MS. GUZMAN:
         3         Q   Do you recognize what's depicted in that
         4    photograph, Hunter 8?
         5         A   A car — two cars.
         6         Q   Do you recognize the car as your own?
         7         A   No.
         8         MS. GUZMAN:  And I'm handing you the last
         9    picture that will be marked Hunter Exhibit 9.
01:26   10         (Deposition Exhibit 9 marked.)
        11    BY MS. GUZMAN:
        12         Q   Do you recognize that photograph?
        13         A   No, I don't.
        14         Q   Do you know what it is a picture of?
        15         A   No.
        16         Q   Do you see in the picture where the VIN, the
        17    vehicle identification number appears?
        18         A   No, because I don't know what I'm looking
        19    for.
01:27   20         Q   Do you see a vehicle identification number
        21    anywhere on that picture?
        22         A   If it don't say VIN and then the number — I
        23    don't know because I don't know nothing about
        24    vehicles.
        25         Q   Okay.
                                                          Page 98
```

```
         1         A   I don't know nothing about VIN, none of that.
         2         Q   Do you see where in the middle of the label
         3    underneath the words "manufacture shown above," there
         4    are the letters — sorry, the numbers and letters
         5    1GKEC —
         6         A   Okay, yes.
         7         Q   That?
         8         A   Yes.
         9         Q   Do you recognize that as your vehicle
01:28   10    identification number?
        11         A   I only recognize my VIN number when I'm
        12    standing right next to it and writing it down.
        13         Q   Do you want to refer to your response to
        14    interrogatory number 1?
        15         A   No.
        16         Q   Would you, please.
        17         A   I really don't.
        18         MR. SPIRO:  Which exhibit is it?
        19         MS. GUZMAN:  2, I believe.
01:28   20         THE WITNESS:  Which page is that?  What page
        21    is that?
        22    BY MS. GUZMAN:
        23         Q   5.
        24         A   Okay.
        25         Q   Have you ever seen this label — oh, sorry.
                                                          Page 99
```

```
         1    Sorry.
         2         So does the vehicle identification number in
         3    your response to interrogatories match the vehicle
         4    identification number in the picture I just showed
         5    you?
         6         A   Yes.
         7         Q   Have you ever seen this label on your car?
         8         A   I can't recall.  I don't know if I've ever
         9    seen it before.
01:29   10         Q   Do you understand what it means?
        11         A   No.  It says, "The vehicle safety standards
        12    in effect on the date of manufacture shown above."
        13         Q   Your answer is "NO"?
        14         A   No, I don't know what it is.  But it said —
        15    GM states right here, "This vehicle" — "applicable
        16    use federal motor vehicle safety."  Whatever they say
        17    it is, that's what it is.
        18         Q   Does it mean anything to you?
        19         A   No.
01:30   20         Q   Are you aware that there are federal safety
        21    standards for cars and trucks?
        22         A   Yes.
        23         Q   Are you aware that the Federal Motor Vehicle
        24    Safety Standards provide safety standards for brake
        25    systems, specifically, as well?
                                                          Page 100
```

**25  (Pages 97 to 100)**

**LA RONDA HUNTER**                                    12/16/08

|  |  |
|---|---|
| 1   A  No. | 1   to purchase a car. |

Page 101

1    A   No.
2    Q   Do you have any information that your 2001
3  Yukon brake system does not meet the Federal Motor
4  Vehicle Safety Standards?
5    A   You asked me do I have any -- do I have any
6  information that -- no one provided me with any
7  information.
8    Q   Do you have any information that your 2001
9  Yukon brake system fails to conform to any other
01:31 10  industry or governmental standards?
11    MR. SPIRO:  Hold on.
12    Yeah, I'll object to that one and I'll move
13  to strike the answer to the previous one on the
14  grounds of -- on the grounds that it is asking the
15  witness to give facts or information to support a
16  contention. It is an improper deposition question.
17    THE WITNESS:  I've already answered it.
18    MR. SPIRO:  Yeah, you have.
19    THE WITNESS:  Yeah, I answered it.
01:31 20    MR. SPIRO:  Oh, yeah.
21    THE WITNESS:  I did.
22  BY MS. GUZMAN:
23    Q   You answered me the first question.  My
24  second one was slightly different.
25    A   I answered your second question too.  You
**Page 101**

1  to purchase a car.
2  BY MS. GUZMAN:
3    Q   Ms. Hunter, I'm going to hand you a copy of
4  the original complaint in this action.  It is being
5  marked Hunter Exhibit 10.
6    (Deposition Exhibit 10 marked.)
7    MR. SPIRO:  You handed me two, Counsel, I
8  think.
9    MS. GUZMAN: Did I?
01:33 10    THE WITNESS:  Let me get some of this stuff
11  out of the way.
12  BY MS. GUZMAN:
13    Q   Do you recognize Hunter Deposition
14  Exhibit 10?
15    A   No.  I've never seen that before.
16    Q   Are you finished answering?
17    A   No, I don't recognize it.
18    Q   Okay.  I'm handing you a second amended
19  complaint, Hunter Exhibit 11.
01:34 20    (Deposition Exhibit 11 marked.)
21  BY MS. GUZMAN:
22    Q   Do you recognize Hunter Exhibit 11?
23    A   Nope.
24    Q   Have you looked through all the pages?
25    A   I'm looking through them right now.
**Page 103**

1  asked me that and I said, "No," I don't understand
2  that.
3    Q   I'm not asking whether you understand, I'm
4  sorry.  I'm asking do you have any information that
5  your 2001 Yukon brake system failed to conform to any
6  industry or governmental standards?
7    A   No, I --
8    MR. SPIRO:  Also compound.
9  BY MS. GUZMAN:
01:32 10    Q   I'm sorry, Ms. Hunter, you're going to have
11  to give your answer again because counsel was speaking
12  over you.
13    MR. SPIRO:  I was objecting.  Give me a
14  chance to object before you answer.
15    Now you can try to answer.
16    THE WITNESS:  No, I don't.
17  BY MS. GUZMAN:
18    Q   Since you don't know that you've ever seen
19  this label on your car, you didn't rely on it when you
01:32 20  were purchasing your car, correct?
21    MR. SPIRO:  What?  That makes no sense.
22  Argumentative, confusing, unfair.
23    THE WITNESS:  Why would I want to rely on
24  this to purchase a car?  It is a bunch of numbers and
25  alphabets.  I wouldn't use alphabets and numbers just
**Page 102**

1    Q   I'm sorry, now you've looked through all the
2  pages?
3    A   Yes.
4    Q   And you still don't recognize it?
5    A   No.  I don't recognize it.
6    Q   Okay.  I'm handing you a third amended
7  complaint that's being marked as Hunter Exhibit 12.
8    (Deposition Exhibit 12 marked.)
9  BY MS. GUZMAN:
01:36 10    Q   Do you recognize Hunter Exhibit 12?
11    A   Okay.  I think it is -- no.
12    Q   Okay.  We're back to the fourth amended
13  complaint, which you do recognize.
14    Can you describe to me in your own words what
15  this lawsuit is about?
16    A   Which one?  Exhibit who?
17    Q   The fourth amended complaint.
18    MR. SPIRO:  Exhibit 4.
19  BY MS. GUZMAN:
01:37 20    Q   You actually don't need to refer to the
21  document at all.  I just asked whether you can
22  describe to me in your own words what this lawsuit is
23  about.
24    A   Class action.
25    Q   Can you give any more detail?
**Page 104**

**26  (Pages 101 to 104)**

**LA RONDA HUNTER**                                          **12/16/08**

```
        1      A   Violation of consumer legal remedy act -- I
        2   have no idea what it is.  Violation of California
        3   Unfair Competition Act, UCL.  I don't know what it is.
        4      Q   Ms. Hunter, you don't need to explain the
        5   California Legal Remedies Act or the Unfair
        6   Competition law to me.  I just want to know in your
        7   own words what you think this lawsuit is about.
        8      A   It is a class action.  That's my answer.
        9      Q   Can you give me any more detail than that?
01:38  10      A   That's my answer, that's my final answer.
       11      Q   Can you describe what claims are being made
       12   against GM?
       13      A   I have the slightest idea of what the claims
       14   are being against.  I don't know.
       15      Q   It was your lawyers who came up with the
       16   allegations in this lawsuit, right?
       17         MR. SPIRO:  Vague, argumentative, asks for
       18   attorney-client.
       19         THE WITNESS:  It's privileged.
01:39  20   BY MS. GUZMAN:
       21      Q   Did you come up with the allegations in this
       22   lawsuit?
       23         MR. SPIRO:  Vague, "come up with."
       24         THE WITNESS:  Did I come up with this, the
       25   allegations?
```
                                                        **Page 105**

```
        1   BY MS. GUZMAN:
        2      Q   Yes.
        3      A   No.
        4      Q   What do you hope to recover if you win this
        5   lawsuit?
        6         MR. SPIRO:  Vague.
        7         Go ahead.
        8         THE WITNESS:  My losses.
        9   BY MS. GUZMAN:
01:40  10      Q   Do you mean money?
       11      A   Yes.
       12      Q   Anything else?
       13      A   No.
       14      Q   What are your losses?
       15      A   The repairs for the brakes.
       16      Q   How much money is that?
       17      A   It was like 260 bucks.  And the 33,000 that I
       18   paid for the vehicle.
       19      Q   You state in the complaint that "GM intended
01:40  20   your parking brake system to be a life-of-the-vehicle
       21   part."
       22         Did anybody ever represent to you that the
       23   parking brake was intended by GM to be a life-of-the-
       24   vehicle part?
       25      A   It states that.
```
                                                        **Page 106**

```
        1      Q   What states that?
        2      A   I can't go back and recall -- I read it, but
        3   I can't go back and recall.  I read it a while back
        4   ago, maybe eight -- a long time ago.
        5      Q   You don't know where you read it?
        6      A   No.  I read so much.
        7      Q   Did you only read it in one place or more
        8   than one place?
        9      A   I read it one place.
01:41  10      Q   Did you read it before buying your vehicle?
       11      A   No.
       12      Q   Okay.  Would you please refer to the first
       13   set of interrogatories, Exhibit 2.  And it would be
       14   Exhibit A attached at the end of the interrogatories.
       15      A   What page are you on?
       16      Q   It actually doesn't have a page number.  It's
       17   after the interrogatories, and it is marked as
       18   "Exhibit A."  That's it.
       19         Do you recognize Exhibit A?
01:42  20      A   Yes.
       21      Q   Is this the document where you read that your
       22   parking brake system was intended to be a life-of-the-
       23   vehicle part?
       24      A   Yes.
       25      Q   Can you tell me where you read that?
```
                                                        **Page 107**

```
        1      A   In the summary project wear out.
        2         MR. SPIRO:  I didn't hear.
        3         What was that last, Madam Reporter?
        4         (Record read as follows:
        5          "A   In the summary project
        6          wear out.")
        7         THE WITNESS:  Summary, the projected wear
        8   out.
        9   BY MS. GUZMAN:
01:43  10      Q   Does the summary say the "life of the
       11   vehicle" anywhere?
       12      A   No.
       13      Q   When did you first see this document?
       14      A   I don't recall when I first seen it.
       15      Q   Who gave it to you?
       16         MR. SPIRO:  She didn't say anybody gave it to
       17   her.
       18         THE WITNESS:  Who gave it to me?  It was --
       19         MR. SPIRO:  In other words, assumes facts not
01:44  20   in evidence; that's my objection.
       21         THE WITNESS:  It is a group of papers.  I
       22   seen this with some other documents.
       23   BY MS. GUZMAN:
       24      Q   Where did you get those documents?
       25      A   Where did I get those documents?
```
                                                        **Page 108**

                                          **27 (Pages 105 to 108)**

LA RONDA HUNTER                                      12/16/08

| | Page 109 | | Page 111 |
|---|---|---|---|

**Page 109**

1  Q   Where did they come from?
2  A   I seen this in — I seen this through my
3  attorney.
4  Q   Do you know who created this document?
5  A   No, I don't.
6  Q   Do you base your statement that "GM intended
7  the parking brake system to be a life-of-the-vehicle
8  part" on anything else other than this document?
9      MR. SPIRO:  Now, that one, she's not
01:44 10  answering.  That violates the California law in what
11  you can ask at a deposition.  In the words of the
12  court of appeal, unfair.
13      Don't answer.  I instruct.
14      (Instruction not to answer.)
15      MS. GUZMAN:  You're instructing your client
16  not to answer?
17      MR. SPIRO:  Right, because she shouldn't have
18  to answer an unfair question.  It is harassing the
19  witness.
01:45 20  BY MS. GUZMAN:
21  Q   Have you seen any other documents that make
22  you think GM intended the parking brake system on your
23  Yukon to be a life-of-the-vehicle part?
24  A   No.
25  Q   Has anybody ever made any statements to you

**Page 110**

1  that GM intended the parking brake vehicle -- the
2  parking brake system on your vehicle to be a life-of-
3  the-vehicle part?
4  A   Have I heard anybody making a statement?  No.
5  Q   In other words, in case that question was
6  unclear, has anybody ever told you that GM intended
7  the parking brake system to be a life-of-the-vehicle
8  part?
9  A   No.
01:46 10  Q   Do you have any other reason to believe that
11  the parking brake system on your Yukon was intended by
12  GM to be a life-of-the-vehicle part?
13      MR. SPIRO:  Counsel, you don't have to say a
14  question I already instructed her not to answer.  So
15  don't.  Same grounds.
16      (Instruction not to answer.)
17      MS. GUZMAN:  You're instructing the witness
18  not to answer that question on the basis it is unfair?
19      MR. SPIRO:  According to the court of appeal,
01:46 20  yes, which amounts to harassment.
21  BY MS. GUZMAN:
22  Q   Ms. Hunter, I'm handing you and your counsel
23  a 2001 GM warranty booklet.  It is marked Hunter
24  Exhibit 13.
25      (Deposition Exhibit 13 marked.)

**Page 111**

1  BY MS. GUZMAN:
2  Q   Do you recognize this document?
3  A   No.
4  Q   Are you sure?
5  A   Yes.
6  Q   Did you receive a warranty booklet like it
7  when you purchased your car?
8  A   I don't know.
9  Q   You don't know whether you received a
01:48 10  warranty booklet when you purchased your car?
11  A   I don't remember.
12  Q   So you haven't read the warranty on your car?
13  A   No, I haven't.  I don't even remember when
14  the warranty went out.
15  Q   Okay.  Would you turn to the page that's
16  marked 30589 in the very bottom right corner.  It
17  looks like it is page 7 of the warranty booklet.
18  A   Okay.
19  Q   Can you read to me the section that says
01:49 20  "Bumper-to-Bumper Coverage" out loud.
21  A   "The complete vehicle is covered for three
22  years or 36,000 miles, whichever comes first, except
23  for other coverage listed hereunder, what is covered
24  and those items listed under what is not covered on
25  page 9, 10 and 11."

**Page 112**

1  Q   And can you read the section called "Repairs
2  Covered" out loud.
3  A   "The warranty covers repairs to correct any
4  vehicle defect related to materials or workmanship
5  occurring during the warranty period.  Needed repairs
6  will be performed using new or manufactured parts."
7  Q   Did anybody ever make any statement, promise,
8  representation or warranty of any kind to you that's
9  not in this warranty booklet?
01:50 10      MR. SPIRO:  Calls for a legal conclusion,
11  it's compound.
12      May I hear that again, or the reporter can
13  read it back.
14      (Record read as follows:
15      "Q   Did anybody ever make any
16      statement, promise, representation
17      or warranty of any kind to you
18      that's not in this warranty
19      booklet?")
01:51 20      MR. SPIRO:  It's also vague.
21      THE WITNESS:  I said previous, I don't know.
22  I haven't -- I don't -- I don't know if I had this
23  book or not, so I don't know.
24  BY MS. GUZMAN:
25  Q   Were you aware when you purchased your car

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**LA RONDA HUNTER**                                    12/16/08

1    that it was warranted against defects?
2        A    I would hope -- I hope there is a warranty
3    under defect.
4        Q    Did you think that yours was?
5        A    That didn't even come to mind.
6        Q    I'm going to call your attention now to
7    paragraph 60 of the fourth amended complaint. That
8    happens to be on page 25 at line 18.
9        A    Exhibit 4?
01:52  10     Q    The fourth amended complaint.
11            MR. SPIRO:  That's not what she asked.
12            MS. GUZMAN:  Is that Exhibit 4?
13            MR. SPIRO:  Yeah, it is.
14    BY MS. GUZMAN:
15        Q    It is page 25. Do you see at line 20 where
16    it says, "In particular, GM made numerous
17    representations in its print ads and media that if a
18    defect existed in one of its vehicles, including the
19    subject vehicles, GM would repair the defect," quote,
01:53  20    "We're with you, every mile of the way. Repairs made
21    to correct any material defect," end quote.
22            Do you see that part?
23        A    Line 20? Would that be in 60?
24        Q    Yes, that's paragraph 60.
25        A    Yeah, okay.  Written materials -- okay, yes,

Page 113

1    I see it.
2        Q    Can you tell me what specific print ads or
3    media you saw with this statement on it?
4            MR. SPIRO:  It is vague, the question is
5    vague.
6            THE WITNESS:  I just read it in the warranty
7    book.
8    BY MS. GUZMAN:
9        Q    You read this statement in the warranty book?
01:54  10     A    It said that it would fix the cars.
11        Q    Did you see it anywhere else?
12        A    I seen commercials that --
13        Q    Do you remember any specific commercials you
14    saw with this statement?
15        A    If I did, I can't recall right now.
16            MR. SPIRO:  Vague.
17    BY MS. GUZMAN:
18        Q    Would you turn to paragraph 37.
19            MR. SPIRO:  What page is it, please?
01:55  20            MS. GUZMAN:  I'm looking.
21            MR. SPIRO:  I thought maybe you had it open.
22    I'm sorry.
23            It's 14, page 14.
24            MS. GUZMAN:  Actually 15, the part of 37 that
25    I'm referring to is on 15.

Page 114

1            MR. SPIRO:  All right.
2    BY MS. GUZMAN:
3        Q    It will be 37, subsection (d).
4        A    Okay.
5        Q    Subsection (d) at about line 14, you state,
6    "Plaintiffs are informed and believe, and based on
7    that information and belief allege, that GM is engaged
8    in other acts and conduct, including attempted
9    coverups of its knowledge and activities regarding the
01:56  10    lack of effective and operable parking brakes on the
11    subject vehicles and has engaged in willful
12    suppression of that evidence."
13            On what do you base this statement?
14            MR. SPIRO:  Hold on, object, misstates the
15    evidence.  She, the witness, Ms. Hunter, did not state
16    it.
17    BY MS. GUZMAN:
18        Q    Do you believe that GM has engaged in the
19    willful suppression of evidence?
01:56  20     A    Do I believe?
21        Q    Yes.
22            MR. SPIRO:  It asks for a legal conclusion.
23            THE WITNESS:  I don't know what to believe.
24    BY MS. GUZMAN:
25        Q    Do you know what willful suppression of the

Page 115

1    evidence is?
2        A    No.
3        Q    Do you have any idea what this paragraph is
4    referring to?
5        A    A belief.
6        Q    Anything more specific than that?
7        A    No.
8        Q    When did you first decide to sue General
9    Motors?
01:57  10     A    I think it was 2005.
11        Q    Why did you decide to sue General Motors?
12        A    Why did I decide to sue General Motors?
13        Q    Yes.
14        A    Because I had to replace my brakes and they
15    wouldn't replace them.
16        Q    What gave you the idea of suing General
17    Motors?
18            MR. SPIRO:  She just answered that question.
19    Asked and answered, harassing the witness,
01:58  20    argumentative.
21            THE WITNESS:  You said what?
22            MS. GUZMAN:  Ms. Bardsley, would you please
23    read back my question.
24            (Record read as follows:
25            "Q    What gave you the idea of

Page 116

29  (Pages 113 to 116)

**LA RONDA HUNTER**                                       12/16/08

---

1     suing General Motors?")
2     THE WITNESS: What gave me the idea? I don't
3   think it was an idea. It was based on my belief.
4   BY MS. GUZMAN:
5     Q   Why did you decide to sue GM as opposed to
6   getting it repaired again?
7     A   They refused to fix the parking brake when I
8   took it in. I had to pay for it myself.
9     Q   So when you decided to sue GM, how did you go
01:59 10   about doing that?
11     MR. SPIRO: What? Vague.
12     THE WITNESS: When I decided to sue GM, how
13   did I go about doing it? I didn't go about -- I
14   didn't do nothing. I didn't go about nothing.
15   BY MS. GUZMAN:
16     Q   Well, after you decided to sue GM, what was
17   the first thing you did?
18     A   What was the first thing I did? I can't
19   recall right now.
01:59 20     Q   If somebody else wanted to sue someone, what
21   would you tell them to do?
22     A   That is their own prerogative.
23     Q   How did you meet your attorneys in this
24   lawsuit?
25     A   How did I meet them? I met Adam in Texas,
                                          **Page 117**

1     A   I have no idea.
2     Q   You don't know the name of Adam's law firm?
3     A   No.
4     Q   Did you approach Adam about suing GM?
5     A   No.
6     Q   Did he approach you?
7     A   No.
8     Q   How did Adam bring you to meet your attorneys
9   in this lawsuit?
02:01 10     A   How did Adam bring me to meet --
11     MR. SPIRO: Adam is his (sic) attorney in the
12   lawsuit. It is vague, confusing.
13   BY MS. GUZMAN:
14     Q   Is Adam your attorney now?
15     A   He's involved in the lawsuit.
16     MR. SPIRO: He's the attorney of record,
17   Counsel.
18   BY MS. GUZMAN:
19     Q   So did you ask Adam about suing GM?
02:02 20     A   No, I didn't.
21     MR. SPIRO: Don't answer that.
22   Attorney-client.
23     (Instruction not to answer.)
24   BY MS. GUZMAN:
25     Q   And you say you met him at a funeral?
                                          **Page 119**

---

1   Adam's law firm, when I was in Texas for a funeral,
2   and, actually, my manager, who I used to date.
3     Q   I'm sorry, I just didn't hear your answer.
4     MR. SPIRO: Could you repeat it, then, Madam
5   Reporter.
6     (Record read as follows:
7     "Q   How did you meet your
8     attorneys in this lawsuit?
9     "A   How did I meet them? I
10     met Adam in Texas, Adam's law firm,
11     when I was in Texas for a funeral,
12     and, actually, my manager, who I
13     used to date.")
14   BY MS. GUZMAN:
15     Q   Who is Adam?
16     A   Adam? He's a friend of my manager.
17     Q   Who is your manager?
18     A   Henry Stephson.
19     Q   Where was Henry your manager?
02:00 20     A   At the post office.
21     Q   So you met Adam through Henry at a funeral?
22     A   Through mutual conversation at his house.
23     Q   And Adam is a lawyer?
24     A   Yes.
25     Q   At what law firm?
                                          **Page 118**

1     A   No, I met him --
2     Q   No, through mutual conversation?
3     A   Through Henry Stephson's house and it is a
4   mutual conversation.
5     Q   When did you meet him?
6     A   I first met him in October of 2004.
7     Q   Where did you meet him?
8     A   At Henry's house.
9     Q   Where is that?
02:02 10     A   Texas.
11     Q   What was the occasion?
12     A   I said I was out there for a funeral.
13     Q   Did you have any experience with Adam before
14   this lawsuit?
15     A   No.
16     Q   Did you consider or meet with any other
17   attorneys with respect to this lawsuit?
18     A   Yes.
19     Q   How many?
02:03 20     A   Two.
21     Q   Who were they?
22     A   Matter of fact, it was three. Ira, Adam and
23   David.
24     Q   Since the time that you filed this lawsuit,
25   are there any other lawyers that you have met or dealt
                                          **Page 120**

---

30 (Pages 117 to 120)

**LA RONDA HUNTER**                                          **12/16/08**

| | |
|---|---|
| 1 with in connection with this lawsuit? | 1 Q Ms. Hunter, you just told me that it was not |
| 2 A No. | 2 your idea to start this lawsuit? |
| 3 MR. SPIRO: Vague -- move to strike, the term | 3 MR. SPIRO: She also told you she didn't know |
| 4 "dealt with." | 4 whose idea it was, Counsel, you know that. |
| 5 BY MS. GUZMAN: | 5 THE WITNESS: I can't start a lawsuit. |
| 6 Q Ira, Adam and David are all attorneys of | 6 BY MS. GUZMAN: |
| 7 record in this case; is that correct? | 7 Q Do you have any previous involvement in class |
| 8 MR. SPIRO: Legal conclusion, but it is | 8 action lawsuits? |
| 9 correct. | 9 A No. |
| 02:03 10 THE WITNESS: Yes. | 02:06 10 Q Have you been a party to any other lawsuit? |
| 11 BY MS. GUZMAN: | 11 A No. |
| 12 Q Can you give me their last names? | 12 Q Are you involved in any other pending |
| 13 A I don't know their last names. I know Ira's | 13 litigation now? |
| 14 last name is Spiro. Adam last name is -- it started | 14 MR. SPIRO: Vague. |
| 15 with a "V," but I don't know his exact last name. | 15 You mean pending lawsuits? |
| 16 Q Did you meet with any other attorneys, other | 16 MS. GUZMAN: Yes. |
| 17 than Ira, Adam and David, about this case? | 17 THE WITNESS: No. |
| 18 A No -- yeah, you. | 18 BY MS. GUZMAN: |
| 19 Q Do you know what a class action is? | 19 Q Have you ever given a deposition before? |
| 02:04 20 A No -- | 02:06 20 A No. |
| 21 MR. SPIRO: Legal conclusion. | 21 Q Have you ever testified at trial before? |
| 22 THE WITNESS: I just know it is a group of | 22 A No. |
| 23 people. That's it. | 23 Q You mentioned that you're personal friends |
| 24 BY MS. GUZMAN: | 24 with Adam. Are you friends with any of the other |
| 25 Q Do you know that this lawsuit is a class | 25 plaintiffs' lawyers or staff? |
| **Page 121** | **Page 123** |
| 1 action? | 1 MR. SPIRO: She didn't say that. |
| 2 A Yes. | 2 THE WITNESS: I'm not personal friends with |
| 3 Q Do you know why this lawsuit was filed as a | 3 Adam. |
| 4 class action? | 4 BY MS. GUZMAN: |
| 5 A No. | 5 Q Have you -- |
| 6 Q Was it your idea to start this lawsuit? | 6 A I'm personal friends with Henry Stephson. I |
| 7 A No. | 7 don't live in Texas. Adam hangs at Henry's house, so |
| 8 Q Whose idea was it? | 8 I don't know what type of relationship they had. I |
| 9 A I don't know. | 9 don't know. |
| 02:04 10 Q Who first approached you about starting this | 02:06 10 Q How would you characterize your relationship |
| 11 lawsuit? | 11 with Adam? |
| 12 A No one. | 12 A How would I characterize my relationship? |
| 13 Q Then how did you get involved? | 13 Q Yes. |
| 14 MR. SPIRO: Don't -- argumentative. It is | 14 A Him being a man and me being a woman. |
| 15 also asked and answered. | 15 Q Is he a stranger to you? |
| 16 You can answer, if you can. | 16 A Would he be a stranger to me? He would be |
| 17 THE WITNESS: How did I get involved? | 17 Adam, a man. |
| 18 BY MS. GUZMAN: | 18 Q How well do you know him? |
| 19 Q How did you get involved? | 19 A I don't know him well. |
| 02:05 20 A Through mutual conversation. | 02:07 20 Q Do you know him through anything other than |
| 21 Q Whose idea was it to sue GM? | 21 his relationship to you as your attorney in this |
| 22 MR. SPIRO: You asked her that. | 22 lawsuit? |
| 23 Don't answer. Counsel is harassing you. | 23 A Do I know him -- I know of him from being |
| 24 (Instruction not to answer.) | 24 over at Henry's house. |
| 25 BY MS. GUZMAN: | 25 Q So you socialized with him? |
| **Page 122** | **Page 124** |

**31 (Pages 121 to 124)**

**LA RONDA HUNTER**    12/16/08

| | |
|---|---|
| 1 | A    That day I did. |
| 2 | Q    Have you socialized with him on any other |
| 3 | occasions? |
| 4 | A    No. |
| 5 | Q    Have you ever been in personal communication |
| 6 | with him outside of this lawsuit? |
| 7 | A    One time. |
| 8 | Q    When was that? |
| 9 | A    When I met him up at the office. |
| 02:07 10 | Q    Can you give me a date? |
| 11 | A    I don't know the exact date. |
| 12 | Q    What did you say? |
| 13 | A    I can't remember what I said, too long ago. |
| 14 | MR. SPIRO:  Can we stop a minute? |
| 15 | THE VIDEOGRAPHER:  On the sweater. |
| 16 | MS. GUZMAN:  Do you want to take a break? |
| 17 | MR. SPIRO:  No.  The reporter -- the |
| 18 | videographer was telling me where to put my mike. |
| 19 | MS. GUZMAN:  Sorry. |
| 02:08 20 | MR. SPIRO:  Sorry. |
| 21 | BY MS. GUZMAN: |
| 22 | Q    So you socialized with Adam one other time, |
| 23 | but you don't remember anything you talked about? |
| 24 | A    I can't recall right now. |
| 25 | Q    Okay.  Do you know what class notice is? |

Page 125

| | |
|---|---|
| 1 | A    No, I don't. |
| 2 | Q    Did you know that you might give individual |
| 3 | notice to each potential member of any certified class |
| 4 | about this lawsuit? |
| 5 | MR. SPIRO:  That's false.  She doesn't have |
| 6 | to do such a thing. |
| 7 | MS. GUZMAN:  She can answer my question. |
| 8 | MR. SPIRO:  You phrased it in terms of a |
| 9 | fact.  It is not a fact. |
| 02:09 10 | THE WITNESS:  I don't know how to give |
| 11 | anybody nothing.  What do I have to give them? |
| 12 | MR. SPIRO:  Just to be particular about |
| 13 | the -- |
| 14 | THE WITNESS:  What I got to give them? |
| 15 | MR. SPIRO:  Hold on. |
| 16 | Objection; it is assuming facts not in |
| 17 | evidence.  In fact, it is misstating the facts. |
| 18 | BY MS. GUZMAN: |
| 19 | Q    Are you willing to personally pay the cost of |
| 02:09 20 | giving individual written notice to each potential |
| 21 | member of any certified class about this lawsuit? |
| 22 | A    Am I willing to pay? |
| 23 | Q    Yes. |
| 24 | A    What am I paying?  What am I paying? |
| 25 | Q    The cost of giving written notice to each |

Page 126

| | |
|---|---|
| 1 | potential member of any certified class. |
| 2 | A    Why would I be obligated to pay? |
| 3 | Q    I'm just asking if you would be willing to |
| 4 | personally pay the cost of having that done? |
| 5 | A    But -- no, I don't even know what you are |
| 6 | talking about.  Whatever it is, no.  I don't have no |
| 7 | money to pay nobody. |
| 8 | Q    Have your attorneys agreed to reimburse you |
| 9 | for the cost of class notice? |
| 02:09 10 | A    No. |
| 11 | MR. SPIRO:  Wait a minute, she -- I object to |
| 12 | that.  It misstates the evidence.  In fact, this |
| 13 | deliberately misstates the evidence, Counsel. |
| 14 | You know she just said that she's not going |
| 15 | to pay it.  How can we reimburse her? |
| 16 | BY MS. GUZMAN: |
| 17 | Q    Do you have understanding of what it would |
| 18 | cost to prosecute this lawsuit as a class action? |
| 19 | A    No, I don't. |
| 02:10 20 | Q    Are you aware that you might have to hire |
| 21 | expert witnesses? |
| 22 | MR. SPIRO:  She doesn't have to hire expert |
| 23 | witnesses.  Don't state it as a fact.  This is going |
| 24 | to stop. |
| 25 | MS. GUZMAN:  Counsel, if you have an |

Page 127

| | |
|---|---|
| 1 | objection, state the objection. |
| 2 | MR. SPIRO:  I have an objection and you are |
| 3 | harassing the witness and you are misstating the |
| 4 | facts, you are misstating the law, and you are asking |
| 5 | the witness to answer about misstates.  I'm not going |
| 6 | to let this go on very much more, Counsel. |
| 7 | MS. GUZMAN:  Please do not raise your voice |
| 8 | to me.  You're doing that right now, and I find it |
| 9 | personally harassing. |
| 02:10 10 | MR. SPIRO:  Well, I find it really repulsive |
| 11 | the way you're asking these questions.  It's a trick, |
| 12 | it's a gimmick and it is really kind of disgusting. |
| 13 | If you want an answer of what she knows about |
| 14 | the real situations, go ahead, but don't try and trick |
| 15 | her. |
| 16 | MS. GUZMAN:  Counsel, you've been doing this |
| 17 | all morning.  I'm going to ask you one more time, for |
| 18 | the sake of the record, if you have an objection, |
| 19 | please state it.  Don't make any speeches after that. |
| 02:11 20 | Let your witness answer the question unless you're |
| 21 | going to instruct her not to on the grounds of |
| 22 | privilege. |
| 23 | MR. SPIRO:  If you start fooling around with |
| 24 | my witness like that, I will tell you so, and you're |
| 25 | doing it. |

Page 128

**32 (Pages 125 to 128)**

**LA RONDA HUNTER**                                                      12/16/08

---

**Page 129**

```
 1   BY MS. GUZMAN:
 2       Q   Ms. Hunter, do you need me to restate the
 3   question?
 4       A   I'm not paying -- no, I'm not, the answer is
 5   no.
 6       Q   If you did have to hire expert witnesses,
 7   would you be willing to pay that amount personally in
 8   order to prosecute this lawsuit?
 9       A   No.
02:11 10     Q   How much do you estimate you personally will
11   spend in prosecuting this lawsuit?
12       A   I don't know.
13       Q   Please just let me finish my question so the
14   court reporter can get it down and then give your
15   answer.
16       A   Okay.
17       Q   Thank you.
18       A   You're welcome.
19       Q   How much do you estimate you personally will
02:12 20     spend in prosecuting this lawsuit?
21       A   I don't know.
22       Q   How much time are you willing to spend
23   prosecuting this lawsuit?
24       MR. SPIRO:  Vague.
25       THE WITNESS:  I don't know.
```

---

**Page 130**

```
 1   BY MS. GUZMAN:
 2       Q   Do know what a class representative is?
 3       A   Yes.
 4       Q   Can you tell me in your own words what is
 5   your understanding of what a class representative is?
 6       MR. SPIRO:  Asks for a legal conclusion.
 7       THE WITNESS:  It represents a class of
 8   people.
 9   BY MS. GUZMAN:
02:12 10     Q   Anything else?
11       A   No.
12       Q   Are you seeking to be a class representative
13   in any other lawsuit?
14       A   No.
15       Q   Have you ever been a class representative
16   before?
17       A   No.
18       Q   Would you put your own personal interests
19   ahead of the interests of the class?  For instance,
02:13 20     are you willing to settle your claims personally
21   regardless of what other members of the putative class
22   may decide or desire to do?
23       MR. SPIRO:  Compound.
24       THE WITNESS:  No.
25   BY MS. GUZMAN:
```

---

**Page 131**

```
 1       Q   If you were offered all the relief that you
 2   are seeking personally, would you withdraw from the
 3   lawsuit?
 4       A   I don't know.
 5       MR. SPIRO:  Right.  Vague.
 6   BY MS. GUZMAN:
 7       Q   In this case if your attorneys wanted to
 8   pursue a particular strategy or a course of conduct
 9   with which you disagree, would you defer to them?
02:13 10     MR. SPIRO:  Vague.
11       THE WITNESS:  Can you repeat that again?
12       MS. GUZMAN:  Ms. Bardsley, would you mind
13   reading the question back.
14       (Record read as follows:
15       "Q   In this case if your
16       attorneys wanted to pursue a
17       particular strategy or a course of
18       conduct with which you disagree,
19       would you defer to them?")
02:14 20     THE WITNESS:  I don't know nothing about
21   strategy and legal.
22   BY MS. GUZMAN:
23       Q   Have you given the attorneys complete
24   discretion and power to make decisions affecting this
25   lawsuit?
```

---

**Page 132**

```
 1       MR. SPIRO:  Well, vague, asks for a legal
 2   conclusion.
 3       THE WITNESS:  I don't know nothing about that
 4   stuff you are talking about.
 5   BY MS. GUZMAN:
 6       Q   Can you define the class for me?
 7       MR. SPIRO:  Vague.
 8       THE WITNESS:  Define -- define the class?
 9   No, I can't define the class.
02:14 10     BY MS. GUZMAN:
11       Q   Do you know how many people are in the class?
12       A   No, I don't.  I know it's a large group of
13   people.  But how many as in numbers, no, I don't.
14       Q   Do you also seek to represent corporations or
15   other organizations that own vehicles, like rental car
16   companies or companies with delivery vehicles?
17       A   No.
18       Q   Have you left the scope of the class to your
19   attorneys?
02:15 20     MR. SPIRO:  Vague.
21       THE WITNESS:  Yes.
22   BY MS. GUZMAN:
23       Q   You do not know personally whether the
24   members of the putative class you seek to represent
25   are so numerous that joinder is impractical, right?
```

**33 (Pages 129 to 132)**

LA RONDA HUNTER                                    12/16/08

```
 1        MR. SPIRO: Vague, calls for a legal
 2   conclusion.
 3        THE WITNESS: I don't know.
 4   BY MS. GUZMAN:
 5    Q    What knowledge do you have that each of the
 6   people in the class that you seek to represent have
 7   the same claims that you do?
 8        MR. SPIRO: Don't answer that. It violates
 9   the California law against asking a party to state the
 10  facts that support her contentions.
 11       (Instruction not to answer.)
 12       MS. GUZMAN: You're instructing your witness
 13  not to answer?
 14       MR. SPIRO: Right, because it is unfair,
 15  according to our courts here and it is harassing.
 16  BY MS. GUZMAN:
 17   Q    Ms. Hunter, you don't claim to represent
 18  owners or lessees who are not at the substantial risk
 19  of serious injury or death, do you?
 20       MR. SPIRO: Vague, confusing.
 21       THE WITNESS: I don't plan to do what?
 22  BY MS. GUZMAN:
 23   Q    Claim to represent owners or lessees who are
 24  not at a substantial risk of serious injury or death.
 25   A    I have no idea what you are talking about.
```
02:16 — lines 10, 20

Page 133

```
 1   BY MS. GUZMAN:
 2    Q    Do you claim to represent people who do that?
 3    A    Nobody in the state of California wouldn't do
 4   it either. It would be a war.
 5    Q    So you don't claim to represent people who
 6   purchased their vehicles while already knowing about
 7   the alleged defect?
 8        MR. SPIRO: Calls for a legal conclusion.
 9        THE WITNESS: You said what?
 10  BY MS. GUZMAN:
 11   Q    You don't claim to represent owners who
 12  purchased their vehicles while already knowing about
 13  the alleged defect?
 14       MR. SPIRO: Calls for a legal conclusion and
 15  it is vague.
 16       THE WITNESS: No.
 17  BY MS. GUZMAN:
 18   Q    Are you relying on any family member for
 19  advice or counsel in this lawsuit?
 20   A    No.
 21   Q    Does anyone besides you and your attorneys
 22  have control over this lawsuit?
 23   A    I am unaware. I don't know.
 24   Q    Have you had any discussions with family
 25  members about this lawsuit?
```
02:18 — lines 10, 20

Page 135

```
 1    Q    Do you know whether other drivers of vehicles
 2   that you allege to be class vehicles are at a
 3   substantial risk of injury in a moderate rear-end
 4   collision?
 5        MR. SPIRO: Vague —
 6        THE WITNESS: I don't know — I don't know
 7   what you are talking about.
 8   BY MS. GUZMAN:
 9    Q    To be clear, do you not know the answer to
 10  the question or do you not understand what I'm asking?
 11   A    I don't have an answer for that question.
 12   Q    You don't know the driving habits of the
 13  other members of the putative class, do you?
 14   A    No, I don't.
 15   Q    You don't know their personal circumstances,
 16  do you?
 17   A    No, I don't.
 18   Q    You don't claim to represent people who
 19  purchased their vehicles while already knowing about
 20  the alleged defect, do you?
 21       MR. SPIRO: Vague, calls for a legal
 22  conclusion.
 23       THE WITNESS: No, I don't — I don't — I
 24  would hope that no one would purchase the car if they
 25  know that something is wrong with it. I wouldn't.
```
02:17 — lines 10, 20

Page 134

```
 1    A    I talked to my sister.
 2    Q    When?
 3    Q    When?
 4    Q    When did you speak to your sister about the
 5   lawsuit?
 6    A    This morning when I told her to drop my
 7   daughter off at school because I had to come down here
 8   for this.
 9    Q    Any other times?
 10   A    I can't recall.
 11   Q    What did you tell your sister this morning
 12  about this lawsuit?
 13   A    To drop Sequoia off at school and I had to go
 14  for a deposition for the GMC case. That's it.
 15   Q    Have you had any discussions with friends
 16  regarding this lawsuit?
 17   A    No.
 18   Q    Who first suggested that you get involved in
 19  this lawsuit?
 20   A    Myself.
 21       MR. SPIRO: It was asked and answered, so
 22  this was the third time, I believe.
 23  BY MS. GUZMAN:
 24   Q    Do you agree that you do not personally know
 25  whether there are common issues of law and fact
```
02:19 — lines 10, 20

Page 136

34  (Pages 133 to 136)

**LA RONDA HUNTER**                                        **12/16/08**

| | |
|---|---|
| 1 | present in this litigation? |
| 2 | A  I don't know law. |
| 3 | Q  Do you agree that you do not personally know |
| 4 | whether your claims are typical of the claims of the |
| 5 | class you seek to represent? |
| 6 | A  I don't know what "typical" means. |
| 7 | Q  What does "typical" mean to you? |
| 8 | A  I don't know. |
| 9 | MR. SPIRO:  She just said she doesn't know |
| 02:20  10 | what it means, Counsel. |
| 11 | THE WITNESS:  I don't know what "typical" |
| 12 | mean in a lawsuit. |
| 13 | BY MS. GUZMAN: |
| 14 | Q  What about in common sense, what does |
| 15 | "typical" mean? |
| 16 | A  Typical. Typical, that's my answer. |
| 17 | Q  So you understand the word as it's commonly |
| 18 | used? |
| 19 | A  Yes, commonly used, but not used in lawsuits. |
| 02:20  20 | I don't know what "typical" mean in lawsuits, so I |
| 21 | don't know. |
| 22 | Q  Well, what about just in common |
| 23 | understanding, do you know personally whether your |
| 24 | claims are typical of the claims of the class you seek |
| 25 | to represent? |

Page 137

| | |
|---|---|
| 1 | methods for the fair and efficient adjudication of |
| 2 | this controversy? |
| 3 | A  I don't know. |
| 4 | MR. SPIRO:  Vague, legal conclusion. |
| 5 | MS. GUZMAN:  Can we take one more quick |
| 6 | break, and I think I can do the rest of my questions |
| 7 | after that. |
| 8 | MR. SPIRO:  Do you need us to leave? |
| 9 | MS. GUZMAN:  I can, but is 10 minutes okay? |
| 02:22  10 | MR. SPIRO:  Yes. |
| 11 | THE VIDEOGRAPHER:  We are going off the |
| 12 | record at 2:23.  We are off the record. |
| 13 | (Recess.) |
| 14 | THE VIDEOGRAPHER:  We are back on the record |
| 15 | at 2:49. |
| 16 | BY MS. GUZMAN: |
| 17 | Q  All right, Ms. Hunter, I am handing you a |
| 18 | document that's going to be marked as Hunter |
| 19 | Exhibit 14.  I'm handing a copy to your counsel as |
| 02:49  20 | well. |
| 21 | (Deposition Exhibit 14 marked.) |
| 22 | BY MS. GUZMAN: |
| 23 | Q  Once you've had a chance to look that over, |
| 24 | can you let me know whether you recognize it or not? |
| 25 | A  Yes, I did. |

Page 139

| | |
|---|---|
| 1 | MR. SPIRO:  Don't answer that.  That is |
| 2 | harassing. |
| 3 | (Instruction not to answer.) |
| 4 | MS. GUZMAN:  Can I just finish my question |
| 5 | before you both interrupt? |
| 6 | MR. SPIRO:  I thought you were done. |
| 7 | BY MS. GUZMAN: |
| 8 | Q  So with your common understanding -- |
| 9 | MR. SPIRO:  Wait a minute, are you starting a |
| 02:21  10 | new question?  Are you? |
| 11 | MS. GUZMAN:  I'm restating the question |
| 12 | because you interrupted me in the last one. |
| 13 | MR. SPIRO:  All right. |
| 14 | BY MS. GUZMAN: |
| 15 | Q  With your common understanding of what |
| 16 | "typical" usually means to you, you don't personally |
| 17 | know whether your claims are typical of the claims of |
| 18 | the class you seek to represent, right? |
| 19 | A  I don't know. |
| 02:21  20 | Q  Have you done any investigation to find out |
| 21 | whether others in this class you seek to represent |
| 22 | have claims that are similar to yours? |
| 23 | A  No. |
| 24 | Q  Do you agree that you do not personally know |
| 25 | whether a class action is superior to other available |

Page 138

| | |
|---|---|
| 1 | Q  Can you tell me what it is? |
| 2 | A  A receipt. |
| 3 | Q  A receipt for what? |
| 4 | A  For having my car serviced. |
| 5 | Q  What is the date on the receipt? |
| 6 | A  2/22/06. |
| 7 | Q  Did you bring your car in for service on that |
| 8 | day? |
| 9 | A  Yes, I did. |
| 02:50  10 | Q  And why did you bring your car in that day? |
| 11 | A  Why did I bring it in?  It needed to be |
| 12 | fixed. |
| 13 | Q  What was wrong with it? |
| 14 | A  It says -- what does the paper -- "customer |
| 15 | states idle is low." |
| 16 | Q  Is that the only reason that you brought it |
| 17 | in? |
| 18 | A  "Customer state exhaust rattles in gear." |
| 19 | Q  Were those two things wrong with your vehicle |
| 20 | when you brought this? |
| 02:51  21 | A  Yes. |
| 22 | Q  Was there anything else wrong with your |
| 23 | vehicle? |
| 24 | A  It says that, "Service department will |
| 25 | perform 27 point vehicle inspection.  After inspection |

Page 140

**35 (Pages 137 to 140)**

```
 1    will" — "will pro-" — wait a minute.
 2        "Customer may chose to perform repairs or
 3    reschedule."
 4    Q   Did you have any repairs done on your parking
 5    brakes at this time?
 6    A   No.
 7    Q   Did they make any representations to you
 8    about your brakes at Power Chevrolet at this time?
 9    A   No.
02:52 10  Q   I am handing you and your counsel another
11    document previously Bates-labeled as P3020 and now
12    marked Hunter Exhibit 15.
13        (Deposition Exhibit 15 marked.)
14        THE WITNESS: Thank you.
15        MS. GUZMAN: I'm trying to find the other
16    copy, Counsel.
17    Q   Ms. Hunter, when you've had a chance to look
18    it over would you let me know if you recognize this
19    document?
02:52 20  A   Yes, I do.
21    Q   What is it?
22    A   It states it is a vehicle inspection sheet.
23    Q   When did you first see this document?
24    A   After I paid for my vehicle being in service.
25    Q   When was that?
                                        Page 141
```

```
 1    A   I have no idea. I'm assuming it came with
 2    this. I'm assuming it came with the 2/22/06 bill.
 3    Q   Are you certain of that?
 4    A   No, I don't know.
 5    Q   I'm handing you another document previously
 6    Bates-labeled P3014. I'll give a copy to your counsel
 7    as well. It is being marked Hunter Exhibit 16.
 8        (Deposition Exhibit 16 marked.)
 9    BY MS. GUZMAN:
02:54 10  Q   Do you recognize this document?
11    A   Yes, I do.
12    Q   What is it?
13    A   It's a — it looks like an estimate when I
14    pulled it in, I stated what was wrong with the car.
15    Q   Have you seen it before?
16    A   Yes.
17    Q   When?
18    A   I'm seeing it right now.
19    Q   When have you seen it before now?
02:54 20  A   I've seen it when — the day when I went in.
21    Q   What day was that?
22    A   It was 11 — I mean 10/25/04.
23    Q   Why did you bring your car in that day?
24    A   The ABS light was on.
25    Q   Was there any other reason you brought your
                                        Page 142
```

```
 1    car in that day?
 2    A   No.
 3    Q   On October 25th, 2004, did they do any work
 4    on your parking brake?
 5    A   I don't know what they did. I don't know.
 6    Q   Did you ask them to do any work on your
 7    parking brake?
 8    A   I can't recall — no.
 9    Q   Was there anything wrong with your parking
02:55 10  brake when you brought your car in that day?
11        MR. SPIRO: Beyond her personal — no, forget
12    it.
13        THE WITNESS: I don't know.
14    BY MS. GUZMAN:
15    Q   And now I'm handing you another document
16    Bates labeled 3015, P3015. It is being marked as
17    Hunter Exhibit 17.
18        (Deposition Exhibit 17 marked.)
19    BY MS. GUZMAN:
02:56 20  Q   Do you recognize this?
21    A   Uh-huh.
22    Q   What is it?
23    A   It's — ABS light again.
24    Q   Is it an estimate or a receipt or an invoice?
25    A   It's an estimate.
                                        Page 143
```

```
 1    Q   What's the date?
 2    A   I don't know. I see one date 1/5/04, I
 3    think.
 4    Q   Is it —
 5    A   I don't know the date. I don't see it.
 6    Q   Is there also an October 25th, 2004 date on
 7    there?
 8    A   Yeah, I see it right here.
 9    Q   Does this refer to the same ABS light problem
02:57 10  that Hunter Exhibit 16 did?
11    A   (No audible response.)
12    Q   Do you know, Ms. Hunter?
13    A   Do I know what?
14    Q   I'm sorry. My question was whether this
15    document refers to the same problem with the ABS light
16    that the previous document, Hunter Exhibit 16, did.
17        MR. SPIRO: Vague.
18        THE WITNESS: To be honest, I really don't
19    know, but they both have the same date, so apparently
02:58 20  they are — they're together. They have the same
21    date on them. I don't know if the ABS light came on,
22    I took it in and they repaired it.
23    BY MS. GUZMAN:
24    Q   Now I'm handing you another document Bates
25    page numbers Bates-labeled P3016 through P3018. And,
                                        Page 144
```

**36 (Pages 141 to 144)**

**LA RONDA HUNTER**                                         **12/16/08**

| | |
|---|---|
| 1    actually, it should be through P3019. Sorry. There | 1    Q   When was that? |

1    actually, it should be through P3019. Sorry. There
2    is an extra page on there.
3            MS. GUZMAN: And it is being marked Hunter
4    Exhibit 17.
5            THE REPORTER: 18.
6            MS. GUZMAN: 18. Sorry.
7            (Deposition Exhibit 18 marked.)
8    BY MS. GUZMAN:
9        Q   Do you recognize this document, Ms. Hunter?
02:59 10     A   Yes.
11       Q   What is it?
12       A   An invoice.
13       Q   Did you bring your car in on July 22nd, 2008?
14       A   Yes.
15       Q   Why did you bring your car in that day?
16       A   ABS light.
17       Q   Was there any other reason?
18       A   No.
19       Q   Does this invoice reflect any repairs to your
03:00 20 parking brake system?
21       A   No.
22       Q   Did you ask for any repairs to be made to
23   your parking brake system at that time?
24       A   No.
25       Q   Was April of 2005 the only time you asked
                                                 **Page 145**

1        Q   When was that?
2        A   I can't recall the exact day.
3        Q   What about the year, do you recall the year?
4        A   It was either 2004, 2005 when I met Adam at
5    the office.
6        Q   Do you remember what season it was?
7        A   It took me like five hours to get there. It
8    was the rainy season. It did, it took me like five
9    hours. I was stuck in traffic. It was raining. I
03:03 10 know it was raining.
11       Q   Okay. What office did you meet him at?
12       A   I met him at Ira Spiro's office, their
13   office.
14       Q   Did you discuss a strategy for this
15   litigation at that meeting?
16           MR. SPIRO: Hold on a second. You can answer
17   that "Yes" or "No."
18           THE WITNESS: No.
19   BY MS. GUZMAN:
03:03 20     Q   Did you discuss this litigation at all at
21   that meeting?
22           MR. SPIRO: Answer that "Yes" or "No." It is
23   also vague, but go ahead.
24           THE WITNESS: No.
25   BY MS. GUZMAN:
                                                 **Page 147**

1    G- -- you asked for repairs to be made to your parking
2    brake system?
3        A   That I can recall, yes.
4        Q   Ms. Hunter, do you recall what year it was
5    that you first spoke with Adam Voyles at the funeral
6    in Texas?
7        A   I didn't speak to him at a funeral.
8        Q   You spoke to him at Henry's house?
9        A   Yes.
03:01 10     Q   And that was in Texas?
11       A   Yes.
12       Q   And you were in Texas because of the funeral?
13       A   Uh-huh -- yes.
14       Q   Do you recall what year that was?
15       A   It was in 2004.
16       Q   Do you remember what month?
17       A   I think it was October 2004.
18       Q   Do you remember what part of the month?
19       A   No.
03:01 20     Q   After that first conversation with
21   Adam Voyles, counsel of record in this case, what was
22   your next contact with him?
23       A   My next contact with Adam? It would -- it's
24   been so long ago. It was when I met him at the
25   office.
                                                 **Page 146**

1        Q   You did not discuss this case at all at your
2    next meeting with Adam Voyles?
3        A   We discussed other things.
4            MR. SPIRO: Hold on -- go ahead. Don't say
5    what it was. Go ahead. You can answer that question
6    "Yes" or "No," in other words.
7            THE WITNESS: Oh, okay.
8            Yeah, we discussed other things.
9    BY MS. GUZMAN:
03:04 10     Q   Now, you mentioned that you were retired.
11   What do you rely on for income?
12       A   Disability retired.
13       Q   Do you have any other source of income?
14       A   No.
15       Q   Do you have a savings account?
16           MR. SPIRO: Just answer "Yes" or "No."
17           THE WITNESS: Yes. It's personal.
18           MR. SPIRO: That's all right.
19   BY MS. GUZMAN:
03:05 20     Q   Have you ever been divorced?
21       A   No.
22       Q   Do you file state and federal tax returns?
23       A   Yes.
24       Q   Are you willing to produce them to us?
25           MR. SPIRO: No.
                                                 **Page 148**

**37 (Pages 145 to 148)**

LA RONDA HUNTER                                    12/16/08

| | |
|---|---|
| 1    THE WITNESS: No. | 1    overall? |
| 2  BY MS. GUZMAN: | 2    A   As far as the motor? |
| 3    Q   Do you know what your approximate net worth | 3    Q   Overall, all the parts together. |
| 4  is? | 4    A   All the parts together, giving it a 1 out of |
| 5    MR. SPIRO: Don't answer that. | 5    10, I give it a — I give it a 5. |
| 6    THE WITNESS: No. | 6    Q   Does it take you from point A to point B? |
| 7  BY MS. GUZMAN: | 7    A   Yes. |
| 8    Q   Do you know the value of your home? | 8    Q   Would you call it reliable? |
| 9    MR. SPIRO: Don't answer that. | 9    A   Yes. |
| 03:05  10    THE WITNESS: No. | 03:07  10    Q   Would you call it dependable? |
| 11    MR. SPIRO: All right. The objection is | 11    A   No. |
| 12  privacy, right to privacy. | 12    Q   Why not? |
| 13  BY MS. GUZMAN: | 13    A   Because the brakes have -- the brakes have a |
| 14    Q   Are you instructing the witness not to | 14    default in them. |
| 15  answer? | 15    Q   Has your Yukon safely transported you so far? |
| 16    MR. SPIRO: She already answered. | 16    A   Yes. |
| 17  BY MS. GUZMAN: | 17    Q   Have you had any other repairs made to your |
| 18    Q   Do you know -- do you have any stocks, bonds | 18    Yukon apart from the ones that we've talked about |
| 19  or IRAs? | 19    today? |
| 03:05  20    MR. SPIRO: Don't answer. | 03:08  20    A   No, not -- no, not that I can recall. |
| 21    MS. GUZMAN: Are you instructing her not to | 21    Q   Ms. Hunter, you said that your parking brake |
| 22  answer? | 22    had a defect. When did you first hear the term |
| 23    MR. SPIRO: She can answer "Yes" or "No." | 23    "defect"? |
| 24    THE WITNESS: No. | 24    A   When did I first hear the term "defect"?  I |
| 25  BY MS. GUZMAN: | 25    don't recall, I really don't. |
| Page 149 | Page 151 |

| | |
|---|---|
| 1    Q   Do you have any loans from anyone? | 1    Q   Do you recall -- |
| 2    A   No. | 2    A   I know that is a word that I use all the |
| 3    Q   Have you made any loans to anyone? | 3    time, so it's common for me to use "defect."  That's a |
| 4    A   No. | 4    word that I use for a lot of stuff. |
| 5    Q   Have you ever declared bankruptcy? | 5    Q   What did you do to prepare for your |
| 6    A   No. | 6    deposition today? |
| 7    Q   Do you own any GM stock? | 7    MR. SPIRO: Don't answer that. |
| 8    A   I wish back then I did.  But right now, no. | 8    You can ask her if she looked at anything to |
| 9    Q   Just to be clear, you've never owned GM | 9    refresh her recollection. |
| 03:06  10  stock? | 03:10  10    (Instruction not to answer.) |
| 11    A   I bet they made pretty good on their stocks. | 11  BY MS. GUZMAN: |
| 12    Q   But you never owned any, correct? | 12    Q   When did you prepare for your deposition |
| 13    A   No. | 13    today? |
| 14    Q   Okay. | 14    A   I just went over my discovery. |
| 15    A   We wish we all could make money off they | 15    MR. SPIRO: She said when, I thought. |
| 16  stocks, and anybody else's. | 16    THE WITNESS: When? |
| 17    Q   Have you ever been audited? | 17  BY MS. GUZMAN: |
| 18    A   No. | 18    Q   This time I did. |
| 19    Q   Have you ever been sued for bad debts or | 19    A   We just did it today, sitting here in the |
| 03:06  20  failure to pay debts? | 03:10  20    deposition, but I read the discovery. |
| 21    A   No. | 21    Q   Did you meet with anyone to prepare? |
| 22    Q   Have you ever gotten in an accident in your | 22    A   Did I meet with anyone? |
| 23  vehicle? | 23    Q   Yes. |
| 24    A   No. | 24    A   No, no. |
| 25    Q   How would you describe your vehicle functions | 25    Q   Did you meet with your lawyers to prepare for |
| Page 150 | Page 152 |

**38 (Pages 149 to 152)**

LA RONDA HUNTER                                          12/16/08

| | |
|---|---|
| 1    the deposition? | 1    A   Sleep. |

1   the deposition?
2   A   Yeah.
3   Q   When did you meet with them to prepare for
4   the deposition?
5   A   Today and --
6   (Interruption in the proceedings.)
7   MR. SPIRO:  Hang on one second.
8   MS. GUZMAN:  Off the record.
9   THE VIDEOGRAPHER:  We are going off the
03:11  10   record at 3:12.  We are off the record.
11   (Recess.)
12   THE VIDEOGRAPHER:  We are back on the record
13   at 3:13.
14   MS. GUZMAN:  For the record, we just went off
15   the record so counsel could answer a phone call.
16   MR. SPIRO:  Thank you.
17   BY MS. GUZMAN:
18   Q   Was today the only time you met with your
19   lawyers to prepare for this deposition?
03:13  20   A   No.
21   Q   How many times have you met with them?
22   A   Once.
23   Q   When was that?
24   A   I can't give you the exact date.  December
25   11th.  I can.
Page 153

1   A   Sleep.
2   Q   Did you talk to anyone else about the
3   deposition?
4   A   No.
5   Q   Ms. Hunter, have you ever had your driver's
6   license revoked?
7   A   No.
8   Q   Have you ever been convicted of a crime,
9   other than a minor traffic offense?
03:15  10   A   No.
11   Q   Are there any documents other than the ones
12   that we've talked about today that you rely on to
13   support the claims you make in the fourth amended
14   complaint?
15   MR. SPIRO:  Don't answer that.
16   It violates the rule against for asking what
17   facts and documents support the contention.  It's
18   unfair, according to our courts, and need not be
19   answered, according to our courts.
03:15  20   (Instruction not to answer.)
21   MS. GUZMAN:  You're instructing your witness
22   not to answer?
23   MR. SPIRO:  Correct.
24   MS. GUZMAN:  Those are all the questions that
25   I have, but I would like to state for the record that
Page 155

1   Q   How long did you meet for?
2   A   I think about an hour and 30 minutes.
3   Q   Can you list everybody who was present at
4   that meeting?
5   A   Me and Ira.
6   Q   Is that all?
7   A   Yes.
8   Q   Was anyone present by phone?
9   A   No.
03:14  10   Q   Did you tell anyone about your preparation
11   session?
12   A   No.
13   Q   Were you shown any documents during that
14   deposition preparation session with counsel?
15   MR. SPIRO:  Don't answer that -- well,
16   actually, you can.  Go ahead.
17   THE WITNESS:  Yes, I was.
18   BY MS. GUZMAN:
19   Q   What documents were those?
03:14  20   A   Just my discovery.
21   Q   And by "discovery," you mean your responses?
22   A   Yes.
23   Q   Anything else?
24   A   No.
25   Q   What else did you do to prepare?
Page 154

1   we are leaving the deposition open as to all of the
2   questions that plaintiff's counsel improperly
3   instructed Ms. Hunter not to answer, particularly the
4   ones that were not based on privilege.
5   MR. SPIRO:  So there are no -- it is not
6   being held open for anything, then.
7   THE REPORTER:  Stipulation on where to send
8   the original or who is keeping the original?
9   (Discussion off the record.)
03:17  10   THE VIDEOGRAPHER:  We are going off the
11   record at 3:18.  This concludes media number 2 and we
12   are off the record.
13   (Discussion off the record.)
14   MR. SPIRO:  I propose that the original of
15   the transcript be sent to counsel for General Motors;
16   and that the witness, Ms. Hunter, have until a certain
17   amount of days, which we'll get to in a minute, to
18   sign and make any corrections to the deposition
19   transcript and notify counsel for GM in writing of the
03:18  20   corrections.  And if it's not signed and notified by
21   that period of time, then the deposition or any copy
22   of it, can be used as if it were an original; that the
23   witness can sign it under penalty of perjury as
24   opposed to before a notary.  And I think that's all.
25   Let's decide on how much time.
Page 156

39 (Pages 153 to 156)

LA RONDA HUNTER                                      12/16/08

```
  1        (Discussion off the record.)
  2        MS. GUZMAN:  We've stipulated that we will --
  3   the plaintiff will have until the 31st to make
  4   corrections and sign the transcript.
  5        MR. SPIRO:  Presuming that we get the
  6   deposition on the 18th, right.
  7        MS. GUZMAN:  On the 18th.
  8        So stipulated.
  9        MR. SPIRO:  Yes.
03:26 10        (Discussion off the record.)
 11        MS. GUZMAN:  I would just like to state for
 12   the record that named plaintiff Robin Gonzalcs has
 13   been present for the entirety of Ms. Hunter's
 14   deposition today.  That's all.
 15             (It was agreed in the
 16             deposition of Robin Gonsales that
 17             the original deposition of Ms.
 18             Hunter should go to Mr. Spiro for
 19             obtaining signature of the witness
 20             and that the original will then be
 21             returned to Kirkland & Ellis.)
 22   //
 23   //
 24
 25
                                       Page 157
```

```
  1        I, the undersigned, a Certified Shorthand
  2   Reporter of the State of California, do hereby
  3   certify:
  4        That the foregoing proceedings were taken
  5   before me at the time and place herein set forth; that
  6   any witnesses in the foregoing proceedings, prior to
  7   testifying, were duly sworn; that a record of the
  8   proceedings was made by me using machine shorthand
  9   which was thereafter transcribed under my direction;
 10   that the foregoing transcript is a true record of the
 11   testimony given.
 12        Further, that if the foregoing pertains to
 13   the original transcript of a deposition in a Federal
 14   Case, before completion of the proceedings, review of
 15   the transcript [ ] was [ ] was not required.
 16        I further certify I am neither financially
 17   interested in the action nor a relative or employee of
 18   any attorney or party to this action.
 19        IN WITNESS WHEREOF, I have this date
 20   subscribed my name.
 21
 22   Dated: _____
 23
 24        DENISE BARDSLEY
          CSR No. 11241
 25
                                       Page 159
```

```
  1
  2
  3
  4
  5
  6
  7
  8
  9        I, LA RONDA HUNTER, do hereby declare under
 10   penalty of perjury that I have read the foregoing
 11   transcript; that I have made any corrections as appear
 12   noted, in ink, initialed by me, or attached hereto;
 13   that my testimony as contained herein, as corrected,
 14   is true and correct.
 15
 16        EXECUTED this _____ day of _____,
 17   20____, at _____, _____.
              (City)          (State)
 18
 19
 20        _____
          LA RONDA HUNTER
 21
 22
 23
 24
 25
                                       Page 158
```

40  (Pages 157 to 159)

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**LA RONDA HUNTER**                                                          12/16/08

## A

ability 7:23 9:8
able 44:7
ABS 78:8 79:17
    142:24 143:23
    144:9,15,21 145:16
accident 150:22
accidents 34:10
account 148:15
accurate 20:15
    21:11,22 22:7 25:2
    25:25 26:20,24
    27:3,25 83:7
accurately 83:7
achievements 47:20
act 38:13,14 105:1,3
    105:5
action 103:4 104:24
    105:8 121:19 122:1
    122:4 123:8 127:18
    138:25 159:17,18
activities 115:9
acts 115:8
ad 41:1
Adam 117:25 118:10
    118:15,16,21,23
    119:4,8,10,11,14,19
    120:13,22 121:6,14
    121:17 123:24
    124:3,7,11,17
    125:22 146:5,21,23
    147:4 148:2
Adam's 118:1,10
    119:2
address 10:9,11,19
    11:12
adjudication 139:1
ads 113:17 114:2
advertisement 36:4
    37:3,7,9,12
advertisements
    37:4
advertising 14:20
    39:6,11,25 40:5
advice 135:19
affect 9:4 58:17
affiliates 8:8
affiliation 6:18
affirmatively 54:14
afford 37:24 38:3
age 9:24
ago 83:23 107:4,4
    125:13 146:24
agree 136:24 137:3

138:24
agreed 127:8 157:15
agreeing 52:19
ahead 22:1,11 23:16
    45:6,21 46:4,19
    56:12 60:2 61:15
    63:25 69:19 70:25
    90:2 106:7 128:14
    130:19 147:23
    148:4,5 154:16
al 6:7
alcohol 8:25 9:10
allegation 56:1
allegations 105:16
    105:21,25
allege 115:7 134:2
alleged 134:20 135:7
    135:13
allow 90:7
alphabets 102:25,25
amended 4:14,22,23
    38:5,12,23 53:4
    58:21 103:18 104:6
    104:12,17 113:7,10
    155:13
amount 129:7
    156:17
amounts 110:20
Angeles 1:2,16 2:2
    2:18 3:9,13 6:1,9
    6:13,16 10:6,8,15
answer 5:15 7:21,25
    8:5,13 9:1,5 13:23
    15:18 16:14 17:7
    17:16,17,21,23
    18:1,5,9 19:10,12
    19:15,20,22 21:1,2
    21:16,17 23:16
    25:9,20 27:2,12
    28:16 32:14 41:11
    41:12,13 42:21,22
    43:4,8,10,12,13,18
    43:19,24,25 44:3,5
    44:8,17 45:6 46:3,4
    46:5,6,8,24 47:1,3
    47:5,7,8 48:2,3,5,7
    48:18 50:16 56:3,4
    56:6,10 59:6,7,9
    61:9 62:3,5,7,8,16
    62:25 63:11,15,17
    64:19 65:14 67:25
    68:3,9,17 69:7,11
    69:14,16,17 70:8,9
    70:16 71:22,23
    72:23 73:14,15,17

73:19 74:9,11,12
    75:11 83:6 86:9,11
    86:13,20,24 88:1,3
    88:5,7,22 89:7
    90:10 91:18,21,24
    93:5 100:13 101:13
    102:11,14,15 105:8
    105:10,10 109:13
    109:14,16,18
    110:14,16,18 118:3
    119:21,23 122:16
    122:23,24 126:7
    128:5,13,20 129:4
    129:15 133:8,11,13
    134:9,11 137:16
    138:1,3 147:16,22
    148:5,16 149:5,9
    149:15,20,22,23
    152:7,10 153:15
    154:15 155:15,20
    155:22 156:3
answered 17:11,20
    17:23 18:3 19:6,7
    19:13 44:18 46:1,5
    46:10,11,12 47:7
    65:15 81:25 85:23
    85:25 86:17 87:21
    90:1,3 91:3,16,17
    92:12 93:4 101:17
    101:19,23,25
    116:18,19 122:15
    136:21 149:16
    155:19
answering 8:21 63:4
    103:16 109:10
answers 15:14,15
    16:18,24 18:25,25
    23:12 24:1,12 27:3
    27:4,5 28:9,21,24
    anybody 106:22
    108:16 109:25
    110:4,6 112:7,15
    126:11 150:16
anytime 8:4
anyway 59:17
apart 92:11 151:18
apparently 39:17
    144:19
appeal 109:12
    110:19
appear 62:12 158:11
appearance 3:6
APPEARANCES 3:1
appearing 6:14
appears 23:20,22

98:17
applicable 100:15
apply 74:1
appraised 96:19,22
approach 119:4,6
approached 122:10
approximate 149:3
Approximately
    11:19
April 76:3,9,21 78:5
    92:21 96:1 145:25
argue 74:14
argumentative
    66:21 73:13 74:2
    102:22 105:17
    116:20 122:14
arm 29:17,18
asked 17:11,11,20
    43:8 46:10 50:2
    60:20 62:15 64:20
    69:13 70:6 75:10
    87:14 89:7 90:10
    92:9 101:5 102:1
    104:21 113:11
    116:19 122:15,22
    136:21 145:25
    146:1
asking 42:20 43:22
    44:10 45:3,13
    51:13 63:2 81:24
    85:14 87:18 88:1
    88:24,25 89:6
    91:11,20 93:10,11
    94:17 101:14 102:3
    102:4 127:3 128:4
    128:11 133:9
    134:10 155:16
asks 105:17 115:22
    130:6 132:1
Assistance 5:5
associate 13:8
associate's 13:9
assume 8:13
assumes 108:19
assuming 126:16
    142:1,2
attached 78:25
    107:14 158:12
attempted 115:8
attempting 90:4
attempts 87:3
attention 113:6
attorney 3:8,12,16
    15:12 20:11,23
    21:13 23:10 26:4,8

28:4 38:23 109:3
    119:11,14,16
    124:21 159:18
attorneys 117:23
    118:8 119:8 120:17
    121:6,16 127:8
    131:7,16,23 132:19
    135:21
attorney-client
    15:13 16:20 20:25
    21:15 105:18
    119:22
audible 27:13 30:14
    144:11
audibly 7:25
audited 150:17
authorize 21:13
authorized 23:9
    26:4,8 28:4 38:23
    53:11 54:8,13
    55:23 56:16,22,25
    57:10,11,15
auto 30:23,25 31:10
    31:11 32:1,9,10,16
    32:24 33:3,14
    35:13 49:10,12,17
    50:25 53:1 59:19
automotive 14:8,11
    14:14 80:5,7,25
    81:20 84:23 87:25
    88:14 89:2 92:21
    92:25 93:19 94:6
available 31:14
    138:25
Ave 10:10
aware 15:2,5,8,21
    100:20,23 112:25
    127:20
awhile 83:23
a.m 2:19 6:2

## B

B 151:6
back 30:8 31:24 32:3
    49:4 52:19 60:4
    69:25 70:13,23
    71:2,7 83:5 86:5
    91:10,18 94:23
    95:5,20 104:12
    107:2,3,3 112:13
    116:23 131:13
    139:14 150:8
    153:12
backwards 43:2
bad 150:19

**LA RONDA HUNTER**                                      12/16/08

| | | | | |
|---|---|---|---|---|
| bankruptcy 150:5 | 65:11,12 66:3,3,5,6 | 2:18 3:9,13,23 6:1 | certified 2:20 126:3 | 91:10 95:5 105:21 |
| **Bardsley** 1:21 2:20 | 66:8,13,19 67:2,2,4 | 6:9,13,16 10:4,5,8 | 126:21 127:1 159:1 | 105:23,24 109:1 |
| 116:22 131:12 | 67:4,5,6,13 72:18 | 32:11,17 77:23 | certify 159:3,16 | 113:5 136:7 |
| 159:24 | 74:6 75:3,9 76:4,17 | 105:2,5 109:10 | cetera 8:8 | comes 111:22 |
| barely 29:17 | 77:9 79:18,20,22 | 133:9 135:3 159:2 | chance 7:16 102:14 | commercial 41:19 |
| **BARNESS** 3:7 | 80:12,16 82:9,16 | **California's** 38:13,14 | 139:23 141:17 | 41:21,22,24 42:2 |
| base 56:1 109:6 | 82:24 83:1,3,13,16 | call 113:6 151:8,10 | change 20:23 46:25 | 42:19 44:20 |
| 115:13 | 83:19,22 84:3,23 | 153:15 | 75:12 | commercials 40:20 |
| based 48:9 115:6 | 85:1 86:8 87:4,7,9 | called 112:1 | characterize 124:10 | 114:12,13 |
| 117:3 156:4 | 89:17,21,24 90:8 | calls 13:21 21:24 | 124:12 | common 70:19 82:4 |
| basic 7:14 9:22 | 90:23 91:12,15 | 112:10 133:1 | check 20:15 21:10 | 82:6,7,11 136:25 |
| basically 31:23 | 92:17 95:25 96:9 | 134:21 135:8,14 | 25:15 58:13 | 137:14,22 138:8,15 |
| 44:19 65:4 | 96:16,23 100:24 | campaign 39:6,25 | checking 54:14 | 152:3 |
| basis 43:15 48:8 | 101:3,9 102:5 | car 30:7,20 31:20 | **Chevrolet** 5:7,13 | commonly 137:17 |
| 86:15 88:8 110:18 | 106:20,23 107:22 | 32:19 33:9,10,22 | 77:23 78:4 79:19 | 137:19 |
| **Bates** 4:16 5:6,7,9,10 | 109:7,22 110:1,2,7 | 34:13,17,20,22 | 84:13 141:8 | communication |
| 5:12,13 143:16 | 110:11 117:7 143:4 | 35:9 36:15 37:11 | **Chicago** 3:17 | 75:25 125:5 |
| 144:24 | 143:7,10 145:20,23 | 38:2 49:15 50:7,23 | child 11:2 | communications |
| **Bates-labeled** 57:18 | 146:2 151:21 | 53:12,16 58:11,13 | children 10:23 | 15:16 |
| 141:11 142:6 | brakes 51:25 81:3,14 | 58:14,18 64:23 | choice 44:11 66:18 | companies 132:16 |
| 144:25 | 81:17 82:3,8 89:3 | 71:16,17 76:4,10 | chose 141:2 | 132:16 |
| **BC324622** 1:8 2:8 | 106:15 115:10 | 77:16,20,25 78:1,2 | circumstances | company 47:22 |
| 6:8 | 116:14 141:5,8 | 78:4 82:25 83:14 | 134:15 | compare 50:9 |
| beginning 2:18 | 151:13,13 | 83:21 84:2,8,13,17 | **City** 158:17 | **Competition** 38:14 |
| 39:22 92:4 95:22 | break 8:16,19,22 | 84:19,22,25 86:7 | claim 133:17,23 | 105:3,6 |
| begins 47:14 73:25 | 48:23,24 94:21,23 | 88:15 89:17,22,25 | 134:18 135:2,5,11 | complaint 4:14,21 |
| behalf 1:5,5 2:5,5,16 | 94:25 95:4,8,11,15 | 90:9,19,22,25 91:6 | claims 105:11,13 | 4:22,23 38:5,12,23 |
| 6:10,14 | 125:16 139:6 | 91:8,12,15 92:2,14 | 130:20 133:7 137:4 | 45:1,24 46:23 53:4 |
| belief 115:7 116:5 | bring 32:8 38:20 | 92:16,22 93:1,7,11 | 137:4,24,24 138:17 | 54:20 55:11 56:10 |
| 117:3 | 119:8,10 140:7,10 | 93:15,18,22 94:3 | 138:17,22 155:13 | 58:21 103:4,19 |
| believe 82:16 99:19 | 140:11 142:23 | 94:10,12,16 96:19 | clarify 12:15 62:9 | 104:7,13,17 106:19 |
| 110:10 115:6,18,20 | 145:13,15 | 96:22 98:5,6 100:7 | 90:5 | 113:7,10 155:14 |
| 115:23 136:22 | brochures 53:13,15 | 102:19,20,24 103:1 | class 21:20 22:5 39:9 | complete 23:13 24:4 |
| best 7:23 | 53:19 | 111:7,10,12 112:25 | 40:3 104:24 105:8 | 24:9,13 25:11,18 |
| bet 150:11 | broke 66:17 | 132:15 134:24 | 121:19,25 122:4 | 27:8 28:12,20,24 |
| **Beyond** 143:11 | brought 31:24 32:3 | 140:4,7,10 142:14 | 123:7 125:25 126:3 | 46:8 57:11 111:21 |
| bill 142:2 | 140:16,20 142:25 | 142:23 143:1,10 | 126:21 127:1,9,18 | 131:23 |
| birth 10:1 | 143:10 | 145:13,15 | 130:2,5,7,12,15,19 | completely 23:9 |
| bold 74:7 | **Bruno** 3:22 6:14 | care 81:18 | 130:21 132:6,8,9 | 26:3 28:3 55:20 |
| bonds 149:18 | bucks 106:17 | **Carolina** 47:22 | 132:11,18,24 133:6 | 56:13 |
| book 112:23 114:7,9 | **Buffalo** 3:4 | cars 31:18 32:22 | 134:2,13 137:5,24 | completion 159:14 |
| booklet 110:23 | bug 79:7,8 | 36:10 50:20 98:5 | 138:18,21,25 | component 82:15 |
| 111:6,10,17 112:9 | **Buick** 5:10,11 | 100:21 114:10 | clear 8:5 18:5 62:18 | components 82:21 |
| 112:19 | built 50:20 | **Carson** 32:11,17 | 134:9 150:9 | compound 16:7,11 |
| born 10:3 | bullet 40:7,12 42:10 | car's 34:8 | client 25:20 69:20 | 17:13 20:19 21:24 |
| borrowed 52:20 | **Bumper-to-Bumper** | case 6:8 15:3 48:9 | 74:14 109:15 | 22:10 23:14,15 |
| bottom 67:3 111:16 | 111:20 | 74:24 88:11,12 | **CLOUD** 3:4 | 24:16 26:21,25 |
| bought 33:14 37:19 | bunch 102:24 | 110:5 121:7,17 | **CLRA** 38:13 | 27:10 28:13,14 |
| 50:13 51:11 | buy 31:4,20 32:19 | 131:7,15 136:14 | coach 61:5 | 40:9 42:11,15,16 |
| **Boulevard** 3:8 | 33:9,10 37:23 | 146:21 148:1 | coaching 61:6 | 43:17 45:3,13,14 |
| box 54:14 | buying 37:4 50:10 | 159:14 | coat 29:18 38:15,18 | 45:25 46:10 56:8 |
| brake 30:12 40:13 | 107:10 | cases 48:10 | college 13:7 | 59:5 64:21 68:16 |
| 49:24 51:18 59:20 | | **Caution** 72:15 74:3 | collision 134:4 | 68:16,20 102:8 |
| 60:13,14 61:17,17 | **C** | 75:6 | come 30:17,18 77:20 | 112:11 130:23 |
| 61:18 64:16,17 | **California** 1:1,16 2:1 | certain 142:3 156:16 | 84:16,20 86:5 | **Computers** 13:12 |

Page 161

**LA RONDA HUNTER**                                    **12/16/08**

concludes 95:17
  156:11
conclusion 13:22
  21:25 112:10
  115:22 121:8,21
  130:6 132:2 133:2
  134:22 135:8,14
  139:4
conduct 115:8 131:8
  131:18
configured 25:13
conform 101:9 102:5
confused 74:23
confusing 51:5
  54:21 56:9 65:19
  65:25 66:23 67:8
  68:7,14,16 70:5,20
  71:6,12,20 72:7,12
  72:24 73:1,5 74:19
  74:21 75:11,13,14
  75:16,23 102:22
  119:12 133:20
connection 121:1
consider 13:15 14:1
  36:10 120:16
considerations
  37:14,16,18
consumer 38:13
  105:1
contact 96:11
  146:22,23
contained 24:3
  28:19 53:20 158:13
containing 53:13,20
contend 48:1
contention 88:2
  101:16 155:17
contentions 48:3
  88:10,11 133:10
continue 75:1
continued 5:1 87:13
  87:16
continuing 53:10
control 135:22
controls 57:3
controversy 139:2
conversation 118:22
  120:2,4 122:20
  146:20
conversations 49:19
convicted 155:8
copy 25:2,16,25
  27:14,25 38:5 58:5
  58:7,7 96:25 103:3
  139:19 141:16

142:6 156:21
corner 111:16
Corporate 3:22
Corporation 1:9 2:9
  2:17 3:10 8:7
corporations 132:14
correct 7:19 20:17
  20:20 23:13 24:1,5
  29:23 39:2 76:4
  87:13 102:20 112:3
  113:21 121:7,9
  150:12 155:23
  158:14
corrected 158:13
corrections 156:18
  156:20 157:4
  158:11
cost 78:17 126:19,25
  127:4,9,18
counsel 6:17,19,20
  6:21 9:2 13:20
  16:21 22:2 39:12
  45:17 46:5,19 55:7
  60:12 61:2 62:5
  63:4,5 64:10,25
  67:24 68:9,15
  69:10 70:7 71:5
  86:19 87:19 88:4
  90:4 93:4 94:20
  96:25 97:12 102:11
  103:7 110:13,22
  119:17 122:23
  123:4 127:13,25
  128:6,16 135:19
  137:10 139:19
  141:10,16 142:6
  146:21 153:15
  154:14 156:2,15,19
County 1:2 2:2 6:9
course 37:23 82:7
  131:8,17
court 1:1 2:1 3:21
  6:9,15 8:1 21:23
  22:2 32:12 60:3
  69:24 71:1,6
  109:12 110:19
  129:14
courts 133:15 155:18
  155:19
coverage 111:20,23
covered 111:21,23
  111:24 112:2
covers 112:3
coverups 115:9
created 109:4

credit 31:7,11 33:21
  49:9
crime 155:8
CSR 1:22 159:24
currently 11:14
customer 80:18
  140:14,18 141:2

                 **D**

d 115:3,5
Dagher 80:5,7 81:20
  84:23 87:25 88:14
  89:2 92:21,25
  93:19 94:6
dangerous 67:11,19
  68:22 72:15 73:10
  74:4 75:6
date 10:1 35:22,23
  100:12 118:2,13
  125:10,11 140:5
  144:1,2,5,6,19,21
  153:24 159:19
Dated 159:22
daughter 11:5,9
  136:7
David 120:23 121:6
  121:17
day 76:23,24 125:1
  140:8,10 142:20,21
  142:23 143:1,10
  145:15 147:2
  158:16
days 156:17
deal 34:13
dealer 53:11 55:23
  55:23 56:16,16,19
  56:22,25 57:2
  84:13 87:7 93:23
  93:24
dealers 49:7 54:8
dealership 31:1,3,21
  33:7 84:17 87:10
deals 31:18
dealt 120:25 121:4
death 133:19,24
debts 150:19,20
December 1:17 2:20
  6:1,5 85:2 87:14,15
  92:23 93:14,18,22
  153:24
decide 70:13 116:8
  116:11,12 117:5
  130:22 156:25
decided 117:9,12,16
decision 58:17

decisions 131:24
declare 158:9
declared 150:5
default 151:14
defect 112:4 113:3
  113:18,19,21
  134:20 135:7,13
  151:22,23,24 152:3
defective 51:25 52:1
  82:17
defects 113:1
defendant 2:17 3:10
  6:11 24:25 27:23
defendants 1:11
  2:11 4:11,13 22:15
  26:1 27:15 97:2
defer 131:9,19
define 132:6,8,8,9
definition 85:4,5
degree 13:7
deliberately 127:13
deliver 55:5
delivered 54:10
delivery 55:21 56:14
  57:9 132:16
demo 32:20,21,25
  33:1,3,6,7,7,8
  34:14,17,23 35:10
demonstrate 56:20
  57:3
demonstrated 55:25
  56:18
DENISE 1:21 2:20
  159:24
department 140:24
depend 11:4
dependable 151:10
Depends 66:15,15
depicted 97:17 98:3
deposition 1:15 2:16
  4:9 5:4 6:6,10 8:6
  9:22 22:15,16
  24:19,20 27:16,17
  38:7 57:20,24 58:1
  95:23 97:3,15 98:1
  98:10 101:16 103:6
  103:13,20 104:8
  109:11 110:25
  123:19 136:14
  139:21 141:13
  142:8 143:18 145:7
  152:6,12,20 153:1
  153:4,19 154:14
  155:3 156:1,18,21
  157:6,14,16,17

159:13
describe 104:14,22
  105:11 150:25
designed 42:6
desire 130:22
detail 104:25 105:9
diagnosis 78:11,12
  78:14 89:4 94:3
different 26:7 34:16
  49:7 63:8,10,11
  75:16 88:7 101:24
difficult 8:3
diploma 13:5
direction 159:9
dirty 94:16
Disability 148:12
disagree 131:9,18
discovered 87:6,8
discovery 14:25 15:3
  15:5,6 20:7 28:1
  152:14,20 154:20
  154:21
discretion 131:24
discuss 147:14,20
  148:1
discussed 148:3,8
Discussion 156:9,13
  157:1,10
discussions 135:24
  136:15
disgusting 128:12
disseminated 39:6
  39:25
distributed 53:11
divisions 8:8
divorced 148:20
document 15:8,22
  16:5,10,18,24 17:4
  17:9 18:7,24 19:5
  20:4,6,8 22:18
  23:19 24:19,22
  27:19 28:19 29:20
  38:9 54:17 68:1
  76:15,15,16 79:1
  79:10 80:18 96:2
  104:21 107:21
  108:13 109:4,8
  111:2 139:18
  141:11,19,23 142:5
  142:10 143:15
  144:15,16,24 145:9
documents 25:22
  27:24 52:3,6,8,10
  52:11,12,14,15,16
  52:18,19,21,23,24

**LA RONDA HUNTER**                                                      **12/16/08**

108:22,24,25
109:21 154:13,19
155:11,17
**doing** 117:10,13
128:8,16,25
**dozen** 42:16
**draft** 15:25 16:4,9,18
16:22 17:8 18:11
18:15,17
**drafted** 18:6
**drafting** 14:23
**drive** 3:16 30:5
36:16 71:17,17,18
72:19,20,21,22
73:2,3,7,8,12,20,23
73:24 74:1,24
75:18,20 84:24
**driver** 30:2
**drivers** 134:1
**driver's** 155:5
**driveway** 30:11
92:15,17,19
**driving** 36:8 134:12
**drop** 136:6,13
**drugs** 8:25 9:11
**duly** 159:7
**duties** 12:4,6,24
**Duty** 5:5

**E**

**East** 3:16
**Eastwood** 10:14
**edge** 67:3
**edit** 20:17,20
**effect** 88:12 100:12
**effective** 48:13
115:10
**efficient** 139:1
**eight** 43:18,19 107:4
**either** 88:24 135:4
147:4
**Ellis** 3:11,15 6:12
157:21
**else's** 150:16
**employed** 11:14
**employee** 159:17
**employees** 31:2,15
**engaged** 115:7,11,18
**engine** 68:19 72:6,9
72:16 73:11 74:4
75:7
**engineering** 13:19
14:5 40:13
**entirety** 157:13
**entitled** 44:5,7 45:17

70:7 86:19
**equipment** 11:22
12:6,8
**Estban** 12:1
**estimate** 85:10,13
85:14,20 86:4
90:16 91:7,13 92:8
129:10,19 142:13
143:24,25
**estimating** 92:11
**et** 6:7 8:8
**everybody** 154:3
**evidence** 27:10
54:21 60:12 108:20
115:12,15,19 116:1
126:17 127:12,13
**Evidently** 90:9
**exact** 27:4 33:13
35:23 76:24 121:15
125:11 147:2
153:24
**exactly** 74:12
**EXAMINATION** 4:2
7:7
**examined** 7:2
**excuse** 13:20 54:4
61:20 85:17
**EXECUTED** 158:16
**exhaust** 140:18
**exhibit** 22:15,16
24:19,20 27:16,17
29:14 38:6,7 57:20
57:24 58:1 78:25
79:2,4,11 97:2,3,7
97:15,24 98:1,9,10
99:18 103:5,6,14
103:19,20,22 104:7
104:8,10,16,18
107:13,14,18,19
110:24,25 113:9,12
139:19,21 141:12
141:13 142:7,8
143:17,18 144:10
144:16 145:4,7
**EXHIBITS** 4:8 5:3
**existed** 113:18
**exists** 81:9
**experience** 13:18
14:4,7,10,13,16,19
14:22 50:21 84:6,6
120:13
**expert** 13:16,21 14:1
127:21,22 129:6
**explain** 18:16 31:6
33:5,6 48:15 51:6,8

55:2,4 56:19 57:3
105:4
**explained** 55:24
56:17
**extra** 145:2
**extremely** 24:16
45:3
**E-s-t-b-a-n** 12:3

**F**

**fact** 34:23 35:10 66:4
67:5 120:22 126:9
126:9,17 127:12,23
136:25
**facts** 27:10 101:15
108:19 126:16,17
128:4 133:10
155:17
**fail** 82:24 83:14
89:24 90:9
**failed** 102:5
**fails** 101:9
**failure** 150:20
**fair** 8:14 17:13 88:12
139:1
**fairly** 67:16
**false** 48:1 59:4 60:8
60:21 61:19 64:12
64:14,24 65:5,6,22
65:24 126:5
**family** 135:18,24
**far** 11:12 34:22 35:2
35:9 72:24 85:8,10
85:11,15 86:7
90:25 92:1 151:2
151:15
**fast** 85:12,16,18
**features** 57:3
**federal** 100:16,20,23
101:3 148:22
159:13
**feet** 77:13 85:9 86:3
90:11 91:6,7 92:8
**female** 50:4
**Fifth** 3:4,8
**Figueroa** 2:18 3:13
6:12
**file** 21:13 26:8 38:24
148:22
**filed** 21:23 22:2
120:24 122:3
**filled** 54:14
**final** 105:10
**Finally** 9:17
**financed** 33:20

**financially** 159:16
**find** 128:8,10 138:20
141:15
**fine** 8:19 45:10
**finger** 92:6
**finish** 8:21 32:13
129:13 138:4
**finished** 103:16
**firm** 118:1,10,25
119:2
**firmly** 67:13 72:18
74:7 75:9
**first** 4:12,13,23 7:2
7:18 20:13 21:8
24:25 26:1 27:23
35:18,21,23 36:3
40:12 59:18 60:16
61:22 64:2 74:7
76:19,21 83:9,21
97:13 101:23
107:12 108:13,14
111:22 116:8
117:17,18 120:6
122:10 136:18
141:23 146:5,20
151:22,24
**five** 34:1 147:7,8
**fix** 79:15,17,20 80:1
80:14 87:10 114:10
117:7
**fixed** 78:17 79:17
81:19 87:11,12
94:7 140:12
**flat** 92:19
**floor** 3:4,8 30:12
33:7 77:11,15 84:1
88:19 89:4,14,15
**flying** 79:7
**follow** 48:10 67:16
67:17 68:6
**following** 39:10 40:4
53:13 58:25
**follows** 7:3 60:5
67:22,23 70:1 71:8
83:12 108:4 112:14
116:24 118:6
131:14
**fooling** 128:23
**foot** 61:18 66:4,7,14
66:18,20 77:14
85:22 86:1 90:11
90:14 92:8
**foregoing** 158:10
159:4,6,10,12
**forget** 143:11

**forgot** 38:19
**forklift** 12:7
**form** 4:10 22:14 23:6
23:8,13 24:4,12
29:13 45:9,12
54:13,18,25 57:11
57:12,14 78:24
79:3
**format** 9:22
**forth** 30:9 159:5
**found** 31:24 32:2
**four** 59:15 91:4
**fourth** 4:14 38:5,12
38:22 47:11 53:4
58:21 104:12,17
113:7,10 155:13
**fourth-to-the-last**
25:12
**four-wheel** 71:17,17
72:19,20,21 73:2,6
73:8,12,20,22,24
74:1,24
**free** 74:25
**friend** 118:16
**friends** 123:23,24
124:2,6 136:15
**front** 22:24 53:5
**fully** 67:13 74:6 75:3
75:3,9
**functions** 150:25
**funeral** 118:1,11,21
119:25 120:12
146:5,7,12
**further** 48:15 159:12
159:16

**G**

**G** 146:1
**gear** 140:18
**general** 1:6,9 2:6,9
2:17 3:10 6:7 7:10
8:7 76:1 116:8,11
116:12,16 117:1
156:15
**getting** 117:6
**gimmick** 128:12
**Girtha** 12:19
**give** 7:15 10:9 25:21
31:18 32:13 35:22
59:7 70:9 91:18
101:15 102:11,13
104:25 105:9
121:12 125:10
126:2,10,11,14
129:14 142:6 151:5

**Page 163**

| | | | | |
|---|---|---|---|---|
| 151:5 153:24 | 89:3 | 39:14,21 40:10 | 152:11,17 153:8,14 | **hold** 11:23 42:20 |
| **given** 123:19 131:23 | **going** 7:17 8:16 | 42:12 43:6,11,15 | 153:17 154:18 | 45:7 61:17,20 66:3 |
| 159:11 | 13:25 17:17 19:12 | 43:21 44:1,7,12,23 | 155:21,24 157:2,7 | 66:6,13,19 67:2 |
| **gives** 25:14 | 24:18 26:13 29:9 | 45:5,9,14,18 46:2 | 157:11 | 77:4,7,16 82:24 |
| **giving** 71:23 91:19 | 38:19 39:20 41:13 | 46:14,20 47:4,9 | **G-i-r-t-h-a** 12:19 | 83:5,14 89:17,24 |
| 126:20,25 151:4 | 42:17,22 43:9,13 | 48:4,8,11,17,23 | **G-o-i-t-i-a** 12:3 | 90:9 101:11 115:14 |
| **Glenn** 12:21 | 46:25 47:2 48:18 | 49:6 50:17 51:7 | | 126:15 147:16 |
| **GM** 6:19,20 8:7 15:6 | 48:23 49:1 57:19 | 53:6 54:5,23 55:14 | **H** | 148:4 |
| 15:8 35:13 37:9 | 58:20 59:6 61:2 | 56:5,11 57:23,25 | **habits** 134:12 | **holds** 89:21 |
| 39:5,10,24 40:4 | 63:14 70:16 71:22 | 59:25 60:3 61:2,8 | **hand** 18:20,22,23 | **Hollman** 12:19 |
| 44:20 50:21,23 | 72:1,9 75:4,12,15 | 62:7,15,20,24 63:5 | 24:18 96:25 97:12 | **home** 41:5 90:20 |
| 53:10 54:13 57:9 | 77:17 95:4,16 | 63:16,24 64:11,18 | 103:3 | 149:8 |
| 57:10,11,14,18,19 | 96:25 97:1,12 | 65:1,7,18 66:22 | **handed** 103:7 | **honest** 9:18 144:18 |
| 58:22 79:15 81:3 | 102:10 103:3 113:6 | 68:2,5,11 69:4,13 | **handing** 22:13 27:14 | **honestly** 7:22 |
| 82:3 96:11 100:15 | 127:14,23 128:5,17 | 69:18,24 70:22 | 38:4 57:17 98:8 | **Hooks** 12:21 |
| 105:12 106:19,23 | 128:21 139:11,18 | 71:1,14 72:11 73:4 | 103:18 104:6 | **hope** 25:21 106:4 |
| 109:6,22 110:1,6 | 153:9 156:10 | 73:16,21 74:8,16 | 110:22 139:17,19 | 113:2,2 134:24 |
| 110:12,23 113:16 | **Goitia** 12:1 | 79:3,9 82:1,23 | 141:10 142:5 | **hot** 38:19 |
| 113:19 115:7,18 | **Gonsales** 3:19 | 83:20 85:19,21 | 143:15 144:24 | **hour** 8:16 85:13 |
| 117:5,9,12,16 | 157:16 | 86:12,15,19,23 | **handler** 12:10 | 94:20 154:2 |
| 119:4,19 122:21 | **Gonzales** 1:4 2:4 | 87:2,23 88:4,8,13 | **hands** 92:1 | **hours** 84:8 93:1,8 |
| 150:7,9 156:19 | 157:12 | 89:10 90:4,7,13,18 | **Hang** 153:7 | 147:7,9 |
| **GMC** 4:15 5:5,10,11 | **good** 6:4 7:9 50:20 | 91:5,22 92:5,10 | **hangs** 124:7 | **house** 118:22 120:3 |
| 29:5 30:2 31:22 | 150:11 | 93:5,9,13 94:18,22 | **happened** 81:21,22 | 120:8 124:7,24 |
| 32:4,5 35:15 82:7 | **gosh** 42:15 | 94:25 95:3,7,10,14 | **happens** 113:8 | 146:8 |
| 136:14 | **gotten** 150:22 | 95:24 97:6,16,24 | **harass** 19:6 69:20 | **household** 11:8,10 |
| **GM's** 15:22 16:5,10 | **governmental** | 98:2,8,11 99:19,22 | **harassing** 19:21 | **Houston** 3:5 |
| 16:18,24 17:4,8 | 101:10 102:6 | 101:22 102:9,17 | 43:17 45:25 46:11 | **Hunter** 1:4,15 2:4,16 |
| 18:6,23 19:5,25 | **grade** 41:7,16 | 103:2,9,12,21 | 47:6 48:14,15 | 4:3 6:7,7 7:1,9,13 |
| 20:4 21:4,9 24:4 | **GRM's** 22:14 | 104:9,19 105:20 | 59:11 86:14,16 | 9:24 16:9 17:7 |
| 50:12 54:7,12 55:4 | **grossly** 23:15 | 106:1,9 108:9,23 | 109:18 116:19 | 18:14 19:24 22:13 |
| 55:20,23 56:13,16 | **ground** 7:15 67:16 | 109:15,20 110:17 | 122:23 128:3,9 | 22:23 23:6,18 |
| 56:22 58:23 | 89:20 | 110:21 111:1 | 133:15 138:2 | 24:12,18,25 26:6 |
| **GM_HUNTER000...** | **grounds** 86:20 | 112:24 113:12,14 | **harassment** 110:20 | 26:23 27:14 28:17 |
| 4:16 | 101:14,14 110:15 | 114:8,17,20,24 | **Hawthorne** 77:23 | 29:3 33:9 35:7 38:4 |
| **GM_HUNTER000...** | 128:21 | 115:2,17,24 116:22 | **head** 8:4 | 38:22 40:11 41:13 |
| 5:6 | **group** 97:2,7 108:21 | 117:4,15 118:14 | **hear** 36:20,22 37:11 | 43:22 44:13 45:19 |
| **go** 7:14,17 22:1,11 | 121:22 132:12 | 119:13,18,24 121:5 | 40:16,23 41:9,15 | 46:16 47:12 48:12 |
| 23:16 30:8 31:20 | **guess** 25:12 71:16 | 121:11,24 122:18 | 42:6 47:23 75:5 | 48:18 49:7 53:3 |
| 42:17,23 43:2,3 | 90:20 | 122:25 123:6,16,18 | 108:2 112:12 118:3 | 55:7 57:17,18,19 |
| 44:16 45:6,21 46:4 | **guy** 81:19 | 124:4 125:16,19,21 | 151:22,24 | 61:9 62:21 63:25 |
| 46:19 47:10 48:24 | **Guzman** 3:15 6:19 | 126:7,18 127:16,25 | **heard** 3:4 40:6,12 42:14 | 64:19 65:13 68:12 |
| 49:10 56:12 59:6 | 6:19 7:8,9 9:6 | 128:7,16 129:1 | 44:15,25 45:23 | 70:2,23 71:9 75:4 |
| 60:2,16 61:15 | 13:24 15:20 16:3,8 | 130:1,9,25 131:6 | 46:22 110:4 | 75:15,25 78:24 |
| 62:10 63:18,20,25 | 16:13,17,23 17:3 | 131:12,22 132:5,10 | **held** 156:6 | 85:14 87:3,24 |
| 69:19 70:8,25 | 17:14,25 18:5,9,13 | 132:22 133:4,12,16 | **Henry** 118:18,19,21 | 88:21 91:23 93:10 |
| 77:19 79:14 84:18 | 18:21 19:9,14,19 | 133:22 134:8 135:1 | 120:3 124:6 | 95:23,25 97:2,7,8 |
| 86:5 89:5,5,13,15 | 19:23 20:22 21:3 | 135:10,17 136:23 | **Henry's** 120:8 124:7 | 97:14,18,24 98:4,9 |
| 90:2 91:9,18 95:15 | 21:18 22:4,12,17 | 137:13 138:4,7,11 | 124:24 146:8 | 102:10 103:3,5,13 |
| 106:7 107:2,3 | 22:22 23:2,17 | 138:14 139:5,9,16 | **hereto** 156:9 | 103:19,22 104:7,10 |
| 117:9,13,13,14 | 24:11,17,21 25:6 | 139:22 141:15 | **hereunder** 111:23 | 105:4 110:22,23 |
| 128:6,14 136:13 | 25:19,23 26:22 | 142:9 143:14,19 | **He'll** 80:14 | 115:15 123:1 129:2 |
| 147:23 148:4,5 | 27:1,11,18 28:15 | 144:23 145:3,6,8 | **high** 13:5 | 133:17 139:17,18 |
| 154:16 157:18 | 29:12,15,19 34:21 | 147:19,25 148:9,19 | **hill** 70:13 | 141:12,17 142:7 |
| **goes** 59:12 77:14 | 35:1,5 38:4,8,21 | 149:2,7,13,17,21,25 | **hire** 127:20,22 129:6 | 143:17 144:10,12 |

LA RONDA HUNTER                                        12/16/08

144:16 145:3,9
146:4 151:21 155:5
156:3,16 157:18
158:9,20
**Hunter's** 4:10,11
27:22 157:13
**hurt** 29:17
**H-o-l-l-m-a-n** 12:19

**I**

**idea** 32:25 78:15
88:16 105:2,13
116:3,16,25 117:2
117:3 119:1 122:6
122:8,21 123:2,4
133:25 142:1
**identification** 29:6
29:22 98:17,20
99:10 100:2,4
**identify** 82:15,19
**idle** 140:15
**Illinois** 3:17
**impaired** 9:14
**impossible** 18:8
**impractical** 132:25
**improper** 88:9,10
101:16
**improperly** 156:2
**inches** 92:6
**includes** 61:21 64:4
**including** 39:9 40:3
113:18 115:8
**income** 148:11,13
**incomplete** 25:22
**incorrect** 76:6
**indefinite** 95:7
**INDEX** 4:1 5:1
**individual** 126:2,20
**industry** 14:14
101:10 102:6
**influence** 8:25 9:10
**information** 5:5
13:14 64:5 101:2,6
101:7,8,15 102:4
115:7
**informed** 115:6
**initialed** 158:12
**injured** 67:14,20
**injury** 133:19,24
134:3
**ink** 158:12
**Innovations** 48:13
**inspect** 54:9 96:14
**inspected** 54:12,15
55:24 56:17,20

57:6 96:17
**inspection** 5:8 54:7
54:13,18,24 55:4
58:24 140:25,25
141:22
**instance** 130:19
**instruct** 44:8 86:20
109:13 128:21
**instructed** 44:4
110:14 156:3
**instructing** 17:25
19:14,19 43:11,16
47:4 48:4 56:5
63:16,19,21 64:22
65:4 68:2 73:16
86:12,23 88:4
109:15 110:17
133:12 149:14,21
155:21
**instruction** 5:15
19:22 21:2,17 47:8
48:7 61:16,24
63:22 64:14,15
66:2,24 67:9 73:15
86:11 88:3 109:14
110:16 119:23
122:24 133:11
138:3 152:10
155:20
**instructions** 59:3
60:7,10 61:1 62:4
62:12,15,16,18
63:8,9 68:6
**insurance** 14:17
47:21
**intended** 106:19,23
107:22 109:6,22
110:1,6,11
**interested** 9:18
159:17
**interests** 130:18,19
**Internet** 39:11 40:5
40:25
**interrogatories** 4:10
4:12 15:9,23 16:6
19:25 21:5,10,14
22:14 23:7 24:4,13
25:1 26:1 29:12,13
78:25 79:3 100:3
107:13,14,17
**interrogatory** 21:21
22:6 23:8,13 29:10
29:21 99:14
**interrupt** 32:14 45:7
138:5

**interrupted** 138:12
**Interruption** 153:6
**introduce** 6:17
**investigation** 36:17
138:20
**invoice** 5:7,10,11,13
143:24 145:12,19
**involved** 119:15
122:13,17,19
123:12 136:18
**involvement** 123:7
**Ira** 3:7 6:21 120:22
121:6,17 147:12
154:5
**IRAs** 149:19
**Ira's** 121:13
**Irvine** 3:23
**issue** 58:25 87:6,8
**issues** 136:25
**items** 111:24

**J**

**January** 33:12,12
**job** 1:23 80:25 81:1
**joinder** 132:25
**judge** 63:11
**July** 145:13
**jury** 63:9
**Justice** 30:23,25
31:10,11 32:1,9,10
32:16,24 33:3,14
35:13 49:10,12,17
50:25 53:1

**K**

**keep** 46:7 64:5 91:20
96:16
**keeping** 156:8
**Kelly** 3:15 6:19 7:9
73:24 91:13
**kind** 52:11 69:12
112:8,17 128:12
**Kirkland** 3:11,15
157:21
**knew** 31:22 36:15
50:19 51:14,14
**know** 8:20 14:25
16:15 18:2,11 19:2
19:4 20:2 22:25
25:5 29:6 31:19
32:25 33:1,11,13
33:13 34:15,16,22
35:2,9,11,11,12,15
35:23,25 36:1,2,14
38:3 39:15 40:19

40:24,24 41:20,22
44:14,24 45:22
46:21 47:25,25
49:21 50:25 51:2
51:12 53:7,25
54:22,24 55:8
56:25 57:6,12
59:20 61:7 62:1,12
63:12 65:6,10,16
65:21,24 68:10,13
68:17 70:4 71:11
74:18 76:12,12,14
76:23 77:7 78:15
78:15,16 80:8 81:2
81:6,9,22 82:2,4,10
82:10,12,14 83:23
83:24,25 84:4,7,9
84:14,15,18 85:9
85:10,15,15,18
86:2,3,4,7 88:17,19
88:20 89:8,21,23
89:23 90:12 91:13
92:7,9,13,13 93:2,8
93:12,14,16,24
94:2 95:2,4 96:7
98:14,18,23,23
99:1 100:8,14
102:18 105:3,6,14
107:5 109:4 111:8
111:9 112:21,22,23
115:23,25 119:2
121:13,13,15,19,22
121:25 122:3,9
123:3,4 124:8,9,18
124:19,20,23,23
125:11,25 126:2,10
127:5,14 129:12,21
129:25 130:2 131:4
131:20 132:3,11,12
132:23 133:3 134:1
134:6,6,9,12,15,25
135:23 136:24
137:2,3,6,8,9,11,20
137:21,23 138:17
138:19,24 139:3,24
141:18 142:4 143:5
143:5,13 144:2,5
144:12,13,19,21
147:10 149:3,8,18
152:2
**knowing** 51:2,11
134:19 135:6,12
**knowledge** 115:9
133:5
**knows** 63:22 128:13

**Krikland** 6:11

**L**

**L** 3:15
**La** 1:15 2:16 4:3,10
4:11 6:6 7:1,13
15:15 23:6 24:25
27:22 60:15 70:8
95:23 158:9,20
**label** 99:2,25 100:7
102:19
**labeled** 143:16
**lack** 115:10
**large** 132:12
**LaRONDA** 1:4 2:4
**latest** 64:4
**law** 3:8,12,16 52:15
87:1,1 88:12 105:6
109:10 118:1,10,25
119:2 128:4 133:9
136:25 137:2
**Lawndale** 10:16,17
**lawsuit** 104:15,22
105:7,16,22 106:5
117:24 118:8 119:9
119:12,15 120:14
120:17,24 121:1,25
122:3,6,11 123:2,5
123:10 124:22
125:6 126:4,21
127:18 129:8,11,20
129:23 130:13
131:3,25 135:19,22
135:25 136:5,12,16
136:19 137:12
**lawsuits** 123:8,15
137:19,20
**lawyer** 118:23
**lawyers** 15:17 94:14
105:15 120:25
123:25 152:25
153:19
**leading** 47:21,21
**lease** 33:16
**leasing** 14:11
**leave** 64:8,22 65:4
65:23 68:23 72:8
72:16 74:4 75:2,7
89:5 139:8
**leaving** 65:22 68:18
72:6 73:10 156:1
**left** 42:24 66:12,14
66:18 77:14 81:18
132:18
**lefty** 66:10

**LA RONDA HUNTER**                                          12/16/08

| | | | | |
|---|---|---|---|---|
| **leg** 66:17 | **located** 6:12,15 | 38:6,7 57:24 67:4 | 135:25 | **MOSS** 3:7 |
| **legal** 3:21 6:15 13:22 | 32:10,16 67:3 | 79:10 97:1,3,14,15 | **memorize** 44:21 | **motion** 35:3 |
| 21:24 38:13 105:1 | **long** 10:11,19 11:18 | 98:1,9,10 103:5,6 | **memory** 9:14 | **motor** 100:16,23 |
| 105:5 112:10 | 11:23 12:11 13:2 | 103:20 104:7,8 | **mentioned** 58:23 | 101:3 151:2 |
| 115:22 121:8,21 | 70:11 94:25 95:4 | 107:17 110:23,25 | 123:23 148:10 | **Motors** 1:9 2:9,17 |
| 130:6 131:21 132:1 | 95:10 107:4 125:13 | 111:16 139:18,21 | **met** 117:25 118:10 | 3:10 6:8 7:10 8:7 |
| 133:1 134:21 135:8 | 146:24 154:1 | 141:12,13 142:7,8 | 118:21 119:25 | 76:1 116:9,11,12 |
| 135:14 139:4 | **look** 25:10 32:6 | 143:16,18 145:3,7 | 120:1,6,25 125:9 | 116:17 117:1 |
| **lessees** 133:18,23 | 43:24 44:17 47:3 | **marking** 97:24 | 146:24 147:4,12 | 156:15 |
| **letters** 74:7 99:4,4 | 47:10 59:7 76:14 | **married** 10:21 | 153:18,21 | **move** 13:22 15:13 |
| **Let's** 40:11 41:6 | 139:23 141:17 | **match** 100:3 | **methods** 139:1 | 24:7,15 34:24 |
| 47:10,10 156:25 | **looked** 30:20 103:24 | **material** 113:21 | **microphone** 38:16 | 48:12 55:8 67:15 |
| **level** 67:16 89:20 | 104:1 152:8 | **materials** 112:4 | **middle** 99:2 | 67:21 72:17 74:5 |
| **lever** 67:3,12 72:17 | **looking** 39:20 59:22 | 113:25 | **mike** 125:18 | 75:8,12 101:12 |
| 74:6 75:2,8 | 98:18 103:25 | **matter** 6:7 37:22 | **mile** 113:20 | 121:3 |
| **license** 97:20,22 | 114:20 | 63:7 79:6 120:22 | **mileage** 34:8 | **moved** 92:6 |
| 155:6 | **looks** 111:17 142:13 | **mattered** 38:1 | **miles** 32:20 34:9 | **multiple** 68:20 |
| **life** 108:10 | **Los** 1:2,16 2:2,18 3:9 | **mean** 8:7 12:15 | 76:10 85:13 111:22 | **mutual** 118:22 120:2 |
| **life-of** 110:2 | 3:13 6:1,9,12,16 | 17:22 18:11,14,17 | **mind** 71:1 113:5 | 120:4 122:20 |
| **life-of-the** 106:23 | 10:6,8,15 | 18:19,22 26:12 | 131:12 | |
| 107:22 | **losses** 106:8,14 | 32:3,21 36:7 37:17 | **minor** 155:9 | |
| **life-of-the-vehicle** | **lot** 94:15 152:4 | 43:5 51:22,23 52:1 | **minute** 97:4 125:14 | **N** 1:4 2:4 |
| 106:20 109:7,23 | **loud** 47:19 59:9 | 55:16 59:8 61:12 | 127:11 138:9 141:1 | **name** 6:14 7:11,13 |
| 110:7,12 | 111:20 112:2 | 63:8,10 65:10,17 | 156:17 | 12:2 49:22 80:8 |
| **light** 5:5 77:3,19,20 | **low** 140:15 | 66:11,16 76:25 | **minutes** 94:23,24 | 81:6 119:2 121:14 |
| 78:8 80:12 84:10 | **LUBEL** 3:4 | 77:2,12 82:6 83:2 | 95:12 139:9 154:2 | 121:14,15 159:20 |
| 84:12,15,16,16,20 | **lunch** 8:17 | 83:17 85:3,5 86:3 | **Mischaracterized** | **named** 121:12 |
| 87:9 142:24 143:23 | **L.A** 72:9 | 91:19 100:18 | 34:24 | **names** 12:18 121:12 |
| 144:9,15,21 145:16 | | 106:10 123:15 | **Mischaracterizes** | 121:13 |
| **liked** 30:21 35:17 | **M** | 137:7,12,15,20 | 45:2 | **national** 39:25 |
| 36:23 44:21 | **M** 3:12 | 142:22 154:21 | **misleading** 22:3 | **nationally** 39:6 |
| **line** 5:16 39:19 53:10 | **machine** 159:8 | **means** 7:21 84:20 | 65:8,10,16 68:14 | **necessary** 44:2 |
| 53:24 55:15 69:2 | **Madam** 108:3 118:4 | 100:10 137:6,10 | 68:16 70:5,21 71:6 | **need** 8:19 17:15 25:8 |
| 71:3,15,25 72:12 | **magazine** 47:21 | 138:16 | 71:12 72:24 73:2 | 25:8,19 28:16 35:6 |
| 113:8,15,23 115:5 | **mail** 12:10 13:1 | **meant** 33:5 | 74:18,20 75:10 | 41:13 45:19 46:3 |
| **lines** 39:19 58:22 | **main** 37:19 | **measuring** 86:5 91:9 | **Misquoting** 60:11 | 46:15 48:15 60:1 |
| 67:18 68:12,21 | **making** 45:12 61:4 | **mechanic** 59:19 78:6 | **misstated** 24:7 | 62:12 64:7 65:13 |
| 69:1,5 70:3 71:10 | 110:4 | 78:16,22 82:22 | **misstates** 54:20 | 70:23 91:23 104:20 |
| 71:19 | **male** 50:4,5 | **media** 95:17,22 | 67:25 115:14 | 105:4 129:2 139:8 |
| **list** 47:11 48:19 59:1 | **man** 124:14,17 | 113:17 114:3 | 127:12,13 128:5 | 155:18 |
| 154:3 | **manager** 118:2,12 | 156:11 | **misstating** 126:17 | **needed** 30:20 112:5 |
| **listed** 40:7 44:25 | 118:16,17,19 | **medication** 8:24 9:2 | 128:3,4 | 140:11 |
| 45:23 46:22 111:23 | **manner** 44:9 | 9:4,7 | **model** 29:3 36:21 | **needs** 62:8 63:20 |
| 111:24 | **manual** 4:15 53:16 | **meet** 101:3 117:23 | 82:13 | **neither** 18:11 159:16 |
| **litigation** 22:8 | 58:4,5,8,14,17,22 | 117:25 118:7,9 | **moderate** 134:3 | **net** 149:3 |
| 123:13 137:1 | 59:4,24 60:8,24 | 119:8,10 120:5,7 | **money** 52:20 106:10 | **network** 53:11 55:23 |
| 147:15,20 | 61:21 64:4,6,8,23 | 120:16 121:16 | 106:16 127:7 | 56:16,23 57:1 |
| **little** 80:25 | 65:21,23 | 147:11 152:21,22 | 150:15 | **neutral** 74:24 |
| **live** 10:7,13,19 72:9 | **manufacture** 99:3 | 152:25 153:3 154:1 | **month** 35:25 146:16 | **never** 53:19 97:10 |
| 93:1,7,10 124:7 | 100:12 | **meeting** 147:15,21 | 146:18 | 103:15 150:9,12 |
| **lived** 10:11 11:10 | **manufactured** 112:6 | 148:2 154:4 | **monthly** 33:22 34:2 | **new** 11:12 30:20 |
| **lives** 11:8 90:20 | **Marine** 10:10 | **member** 126:3,21 | 34:5 | 32:19 53:12,12 |
| **LLP** 3:4,7,11,15 | **mark** 57:19 | 127:1 135:18 | **morning** 6:4 7:9 | 55:21,22 56:14,15 |
| **loan** 52:14,16,18 | **marked** 22:14,16 | **members** 130:21 | 84:17 128:17 136:6 | 57:9 64:9 65:3,23 |
| **loans** 150:1,3 | 24:19,20 27:16,17 | 132:24 134:13 | 136:11 | 112:6 138:10 |

LA RONDA HUNTER                                                      12/16/08

nod 8:3
Nope 103:23
Nos 4:16 5:6,7
notary 156:24
noted 13:24 158:12
notice 125:25 126:3
  126:20,25 127:9
notified 156:20
notify 87:7 93:23,24
  94:4,5 156:19
number 6:8 27:16
  29:7,10,21,22
  55:18 57:20 71:16
  79:2,4 95:17,22
  98:17,20,22 99:10
  99:11,14 100:2,4
  107:16 156:11
numbered 97:5
numbers 99:4
  102:24,25 132:13
  144:25
numerous 39:7 40:1
  113:16 132:25

_____ O _____

oath 7:2,19
object 54:19 56:8
  60:9 64:13 101:12
  102:14 115:14
  127:11
objected 13:21
objecting 18:2 46:7
  102:13
objection 19:9 35:3
  43:7 44:1 45:8,9,13
  46:9 108:20 126:16
  128:1,1,2,18
  149:11
objections 45:10
  46:17 61:3
objection's 13:24
obligated 127:2
obligation 21:21
  22:6
observe 90:22
obtaining 157:19
obviously 69:16
occasion 40:23
  91:14 120:11
occasions 125:3
occurring 112:5
October 120:6 143:3
  144:6 146:17
offense 83:8 155:9
offered 131:1

office 118:20 125:9
  146:25 147:5,11,12
  147:13
offices 6:11
oh 23:20 42:15 52:17
  54:3 68:8 72:3
  91:25 99:25 101:20
  148:7
okay 8:8,9,11,12,22
  9:5,7,19,20 13:24
  15:19 22:11 25:7
  35:12 48:21,22
  51:10 54:4 56:13
  60:14 61:16 64:1
  68:12 70:2 71:9
  72:5 76:16 79:19
  80:14 85:19 91:25
  94:22 95:14 97:5
  97:10 98:25 99:6
  99:24 103:18 104:6
  104:11,12 107:12
  111:15,18 113:25
  113:25 115:4
  125:25 129:16
  139:9 147:11 148:7
  150:14
old 11:2,3 96:16
Olympic 3:8
once 17:20 25:10
  49:13 139:23
  153:22
ones 62:4,11,17 63:3
  151:18 155:11
  156:4
one-year-old 47:22
open 114:21 156:1,6
operable 115:10
operate 12:6
operator 11:22 12:6
  12:9
opinion 94:7
opportunity 61:5
opposed 117:5
  156:24
order 31:21 52:12
  54:16 62:8 129:8
organizations
  132:15
original 4:21 103:4
  156:8,8,14,22
  157:17,20 159:13
outside 125:6
overall 151:1,3
owned 50:23 150:9
  150:12

owner 5:5 29:25
  50:6 64:9 65:3,23
owners 133:18,23
  135:11
owner's 53:16 58:4,5
  58:8,14,17,22 59:4
  59:24 60:7,23

_____ P _____

page 4:9,18,19,20
  5:4,16 23:19,20,23
  25:7,7,12 26:14,15
  28:6 29:20 39:13
  39:14,18,18 42:24
  43:1 47:13 53:3,7
  53:24 54:4 55:12
  55:13,15 57:19
  58:20 67:18 99:20
  99:20 107:15,16
  111:15,17,25 113:8
  113:15 114:19,23
  144:25 145:2
pages 4:10,12,13,14
  4:17,21,22,23
  25:13 59:12 103:24
  104:2
paid 106:18 141:24
Pantea 3:12 6:20
paper 140:14
papers 108:21
paragraph 39:4,14
  39:17,23 42:10,14
  44:14 45:1,23
  46:22 47:11,11
  53:7,20,23 54:2,6
  55:10 56:2 57:8,8
  58:21 59:8 60:17
  61:23 62:10 63:19
  63:20,22 64:3
  70:10 72:24 113:7
  113:24 114:18
  116:3
paragraphs 62:6
  63:13 70:10
park 3:22 65:11
  67:13 72:18 75:3,9
parked 74:6
parking 30:12 49:24
  51:18,25 60:13,14
  61:11,17,17 64:16
  64:17 65:11 66:3,4
  66:6,8 67:2,3,5,6
  67:13 72:18 74:6
  75:3,9 76:3,17 77:9
  78:8 79:18,20

80:12,16 82:2,16
  82:24 83:1,3,13,15
  83:19,22 84:3,22
  85:1 86:8 87:4,7,8
  89:17,21,24 90:8
  90:23 91:12,15
  92:16 95:25 96:8
  96:16,20,23 106:20
  106:23 107:22
  109:7,22 110:1,2,7
  110:11 115:10
  117:7 141:4 143:4
  143:7,9 145:20,23
  146:1 151:21
part 75:22 80:25
  106:21,24 107:23
  109:8,23 110:3,8
  110:12 113:22
  114:24 146:18
particular 36:21
  113:16 126:12
  131:8,17
particularly 156:3
parts 80:19,20,22
  81:2 112:6 151:3,4
party 88:11 123:10
  133:9 159:18
pay 52:19 117:8
  126:19,22 127:2,4
  127:7,15 129:7
  150:20
paying 126:24,24
  129:4
payment 34:5
payments 33:22
  34:2
pedal 61:18 66:13,19
  67:2,4 89:3,15
penalty 156:23
  158:10
pending 6:8 8:21
  123:12,15
people 36:8 121:23
  130:8 132:11,13
  133:6 134:18 135:2
  135:5
perform 140:25
  141:2
performance 39:8
  40:2
performed 112:6
period 39:10 40:4
  112:5 156:21
perjury 156:23
  158:10

person 19:17 61:13
  68:24 80:9 81:10
  81:12
personal 123:23
  124:2,6 125:5
  130:18 134:15
  143:11 148:17
pertains 159:12
phone 153:15 154:8
photograph 4:18,19
  4:20 97:18 98:4,12
Photographs 4:17
photos 96:4 97:1,13
phrase 54:19
phrased 126:8
picture 98:9,14,16
  98:21 100:4
pictures 96:8
place 80:25 81:4,6
  107:7,8,9 159:5
placed 7:21
plaintiff 4:10 6:22
  23:6 157:3,12
plaintiffs 1:7 2:7 3:3
  4:13 54:10 115:6
  123:25
plaintiff's 27:22
  156:2
plan 133:21
plate 97:20,22
please 6:17 7:11 8:4
  8:10 9:17 44:16
  53:25 55:10 60:3
  60:15 61:3,9 62:25
  64:2,5,8 69:24
  71:24 74:15 90:7
  99:16 107:12
  114:19 116:22
  128:7,19 129:13
point 40:12 140:25
  151:6,6
points 40:8 42:10
Pontiac 5:10,11
position 11:20,23,25
  12:5,11,13,18,25
  87:24

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**LA RONDA HUNTER**                                           **12/16/08**

post 118:20
postal 11:17,21 13:2
31:2,7,11
potential 126:3,20
127:1
power 5:7,10,11,13
77:23 78:4 79:19
79:22 84:13 131:24
141:8
predelivery 54:7,13
54:18,24 55:4
58:23
preparation 154:10
154:14
prepare 152:5,12,21
152:25 153:3,19
154:25
preposterous 69:21
prerogative 117:22
present 3:18 78:21
137:1 154:3,8
157:13
Presuming 157:5
pretty 150:11
previous 24:8 42:24
90:10 101:13
112:21 123:7
144:16
previously 46:24
57:18 74:22 75:11
75:24 141:11 142:5
price 33:18 34:17,19
34:22 35:9 37:22
38:1
primary 37:14,16,17
principal 30:2
print 39:11 40:5,25
113:17 114:2
printed 64:5
prior 39:5,24 50:21
96:9 159:6
Priority 33:21
privacy 9:2 149:12
149:12
privilege 16:20
86:21 128:22 156:4
privileged 17:2
105:19
pro 141:1
probably 55:6
problem 16:21 88:19
88:20 144:9,15
procedure 7:15 54:8
54:13 55:5,21
56:14 57:10 58:24

proceed 7:5
proceedings 153:6
159:4,6,8,14
process 13:1
produce 148:24
produced 20:13 21:8
product 53:13,15
production 4:13
27:15,23
products 39:8 40:2
professional 40:13
41:7,16
project 108:1,5
projected 108:7
promise 41:8,17
112:7,16
promotion 41:7,16
propose 156:14
prosecute 127:18
129:8
prosecuting 129:11
129:20,23
protect 42:6
protocol 54:12
provide 100:24
provided 15:21
53:12 101:6
public 1:6 2:6
PULGARIN 1:4 2:4
pull 67:2
pulled 142:14
purchase 30:17,18
31:14 33:16,17,18
36:13 51:4 52:12
58:9,18 102:24
103:1 134:24
purchased 32:7
34:20 36:18 38:2
44:22 49:8 51:3,10
51:14 52:4,7 55:22
56:15 58:11 111:7
111:10 112:25
134:19 135:6,12
purchasers 53:13
purchasing 37:15
49:15 102:20
purpose 30:7
purposes 8:6
pursue 131:8,16
push 77:10,13
pushed 77:14
put 29:17 38:17
72:18 95:3 125:18
130:18
putative 130:21

132:24 134:13
p.m 2:19 6:2
P3014 5:10 142:6
P3015 5:12 143:16
P3016 5:13 144:25
P3018 144:25
P3019 145:1
P3020 5:9 141:11
P3021 5:7
P3022 5:7

----

**Q**

quality 39:8 40:2
question 8:11,14,20
13:21,25 15:14,15
17:8,12,13,15 18:3
19:7,11,15 24:15
25:9 26:6 28:16
32:13 35:6 39:22
42:22 43:8 44:3,6,6
44:8,11,19 45:20
46:2,6,15 48:16
55:8,9 59:10,11
60:1,4 61:10 62:2
62:10,21 63:2,6,17
64:10,20 65:14
68:4,8 69:7,8,11,22
69:23,25 70:20,24
71:2,5,5 73:14,18
73:20,22 74:9,9,11
74:13,17 75:16
81:25 85:24,25
87:22 88:23 92:12
93:6 101:16,23,25
109:18 110:5,14,18
114:4 116:18,23
126:7 128:20 129:3
129:13 131:13
134:10,11 138:4,10
138:11 144:14
148:5
questions 7:16,22,25
9:15,21 28:24
41:14 42:21,21
43:18 45:13 46:12
49:23 50:1 61:12
69:2 89:7 91:19,24
128:11 139:6
155:24 156:2
quick 139:5
quite 9:1 40:18
41:18
quote 63:21 113:19
113:21
quoted 87:1

----

**R**

radio 39:11 40:5,25
raining 147:9,10
rainy 147:8
raise 128:7
Randolph 3:16
rattles 140:18
read 26:11,12 28:10
47:12,16,17,19
58:15 59:8,23 60:4
60:5 68:12 69:15
69:19,23,23,25
70:1,3,6,7,23 71:7
71:8,10 72:23 83:5
83:12 107:2,3,5,6,7
107:9,10,21,25
108:4 111:12,19
112:1,13,14 114:6
114:9 116:23,24
118:6 131:14
152:20 158:10
reading 69:10,11,16
69:17 71:2,3
131:13
real 128:14
realized 58:14
really 59:11 99:17
128:10,12 144:18
151:25
rear-end 134:3
reason 9:13 25:14,24
110:10 140:16
142:25 145:17
reasons 37:19 51:20
recall 42:8 49:19
52:3,6 76:24 83:25
84:14 91:14 93:17
93:20,21 100:8
107:2,3 108:14
114:15 117:19
125:24 136:10
143:8 146:3,4,14
147:2,3 151:20,25
152:1
receipt 140:2,3,5
143:24
receive 52:23,24
53:15 57:14 58:5,7
58:10,12 111:6
received 53:16,19
111:9
Recess 49:3 95:19
139:13 153:11
recognize 22:18,20

22:23 24:22 27:19
38:9 58:1 79:10
97:7,17,20 98:3,6
98:12 99:9,11
103:13,17,22 104:4
104:5,10,13 107:19
111:2 139:24
141:18 142:10
143:20 145:9
recognized 47:21
recollection 152:9
record 6:5 7:12
19:18 41:14 46:17
47:3 48:25 49:1,2,4
60:5 61:3 70:1 71:8
83:12 92:5 95:3,15
95:17,18,20 108:4
112:14 116:24
118:6 119:16 121:7
128:18 131:14
139:12,12,14
146:21 153:8,10,10
153:12,14,15
155:25 156:9,11,12
156:13 157:1,10,12
159:7,10
recover 106:4
refer 8:7 29:9 99:13
104:20 107:12
144:9
referred 67:24
referring 54:17 63:3
114:25 116:4
refers 57:12 72:21
144:15
reflect 145:19
refrain 61:4
refresh 152:9
refuse 46:8
refused 79:15 117:7
regarding 115:9
136:16
regardless 130:21
registered 29:25
regular 29:12 61:18
66:3,7,13,19 67:2
reimburse 127:8,15
related 112:4
relationship 35:12
124:8,10,12,21
relative 159:17
release 67:1,4,4,5
relevant 39:5,24
reliable 151:8
relief 131:1

**LA RONDA HUNTER**                                      **12/16/08**

rely 102:19,23
148:11 155:12
relying 135:18
Remedies 38:13
105:5
remedy 105:1
remember 12:17
34:2 41:23 49:22
50:1,4 81:8 111:11
111:13 114:13
125:13,23 146:16
146:18 147:6
rental 14:11 132:15
repair 14:8 78:17
80:20 87:25 88:14
88:17 92:25 113:19
repaired 76:4,8,11
76:17 77:1,18,21
79:14 87:4 93:19
96:1,9,12 117:6
144:22
repairs 105:15 112:1
112:3,5 113:20
141:2,4 145:19,22
146:1 151:17
repeat 35:6 39:22
45:19 46:15 47:2
69:22,23 94:13
118:4 131:11
repeated 39:7 40:1
60:1
rephrase 22:4 40:11
81:11 94:19
replace 116:14,15
replaced 52:2 84:23
replacing 96:20,23
Reported 1:21
reporter 2:21 8:1
19:17 32:13 38:15
57:21 60:3 61:13
68:24 69:24 71:1,7
83:9 91:21 108:3
112:12 118:5
125:17 129:14
145:5 156:7 159:2
Reporters 3:21 6:15
represent 7:10
106:22 132:14,24
133:6,17,23 134:18
135:2,5,11 137:5
137:25 138:18,21
representation
112:8,16
representations
39:7,10 40:1,4

53:14,20 59:1,2
60:11 113:17 141:7
representative
21:20 22:5 52:25
57:11,15 130:2,5
130:12,15
represents 130:7
repulsive 128:10
reputation 50:12,14
50:19,25
request 16:19 18:7
20:6 27:15,23 82:8
requested 81:3
requests 4:13 15:6,6
15:9,22 16:5,10,25
17:5,9 18:24 19:5
20:5,8
require 15:15
required 48:3 55:24
56:17 159:15
requires 54:8 57:10
reschedule 141:3
research 36:17
respect 120:17
responded 17:12
response 4:10,11,13
23:9 27:13 29:9,20
30:14 99:13 100:3
144:11
responses 15:22,25
16:4,9 17:4,8 18:6
18:18,23 19:4,24
20:4,14,24 21:4,9
21:14,22 22:7,13
23:6 24:3,4,25 25:3
25:25 26:3,5,8,17
26:20,24 27:8,15
27:22 28:1,3,12,19
154:21
responsibilities 12:5
12:24
rest 42:9 139:6
restate 129:2
restating 138:11
results 78:14
retired 11:15 30:8
148:10,12
returned 157:21
returns 148:22
review 20:14 21:9,21
22:6 23:8 25:6,7
26:3,7,10,11 28:3
38:22 67:17 159:14
reviewed 28:10 39:1
69:5

revoked 155:6
ridiculous 64:14
Rifkind 48:9
right 8:17 9:2 41:23
45:25 47:18 59:14
60:19,22 61:15,18
66:4,7,17 70:18
76:12 82:2,4,8,12
82:14 88:6,20
90:15,17 93:20
99:12 100:15
103:25 105:16
109:17 111:16
114:15 115:1
117:19 125:24
128:8 131:5 132:25
133:14 138:13,18
139:17 142:18
144:8 148:18
149:11,12 150:8
157:6
risk 133:18,24 134:3
road 36:6,7 64:7
Robin 1:4 2:4 3:19
57:12,16
ROBINS 3:4
roll 67:14,20 74:25
84:2,10,22 85:3,4,6
87:13,16 90:10,22
91:6,8,12 92:16,22
rolled 83:1,15,21
84:8,25 85:7,16
86:7 90:25 91:15
92:2,9,14,23,24
93:3,15,18,22
rolling 90:19
rolls 83:3,18
Ronda 1:15 2:16 4:3
4:10,11 6:6 7:1,13
15:15 23:6 24:25
27:22 60:15 70:8
95:23 158:9,20
room 95:5
ROSANA 1:4 2:4
rule 155:16
rules 7:15,15 45:11
running 68:19 72:6,9
72:16 73:11 74:5
75:2,7

——————————
        S
——————————
safely 151:15
safety 39:8 40:2
42:5 47:20 48:13
100:11,16,20,24,24

101:4
sake 32:12 128:18
sales 14:11 52:25
57:10,15
Sarnoff 3:21 6:15
Satisfied 55:21
56:14
savings 148:15
saw 20:9 36:4 37:7
40:6 41:3,20 42:3
42:13 44:14,24
45:22 46:21 53:19
77:19 91:11,11
114:3,14
saying 56:24 72:12
73:19 75:5 87:18
says 25:12 40:12
60:11 68:1 70:12
74:3 75:6 80:18
88:12 100:11
111:19 113:16
140:14,24
school 13:5 136:7,13
scope 132:18
season 147:6,8
second 4:22 54:6
83:9 94:7 101:24
101:25 103:18
147:16 153:7
secret 79:24,25
section 111:19 112:1
see 17:4 20:4,9,12,15
21:4,7,10 25:15
30:22 35:18 36:5
36:20 40:14,16
41:9,15,18 42:6
47:23 76:15 92:16
98:16,20 99:2
108:13 113:15,22
114:1,11 141:23
144:2,5,8
seeing 52:3,6 142:18
seek 132:14,24 133:6
137:5,24 138:18,21
seeking 130:12
131:2
seen 23:3 30:21
35:17 36:3,23 37:4
41:2 97:10 99:25
100:7,9 102:18
103:15 108:14,22
109:2,2,21 114:12
142:15,19,20
sell 64:7,23
send 156:7

sense 50:12,14,19
70:19 82:5,6,8,11
102:21 137:14
sent 156:15
sentence 54:6 70:11
71:23,24 74:23
separate 70:9 71:23
separately 32:15
Sequoia 136:13
Sere 3:22 6:14
serious 133:19,24
served 15:5,6,8
service 11:17,21
13:3 140:7,24
141:24
serviced 140:4
session 154:11,14
set 4:10,12,13 23:7
25:1,1 26:1 27:23
29:11 60:14 61:11
61:17 64:16 66:2,4
66:6,8 67:13,19
72:18 74:7 75:3,9
83:22 84:3 85:1
86:8 90:23 91:12
91:15 92:17 107:13
159:5
settle 130:20
sheet 5:8 141:22
she'll 63:18
shift 67:12 72:17
74:5 75:2,8
shoes 82:9
shorthand 2:21
159:1,8
show 32:23 60:10
92:1,3
showed 20:10 32:24
100:4
shown 99:3 100:12
154:13
sic 119:11
side 66:12
sign 23:25 28:6
52:10,11,14,21
156:18,23 157:4
signature 23:19,22
26:14 157:19
signed 28:11 156:20
similar 138:22
similarly 1:6 2:6
54:11
sister 11:9 136:1,4
136:11
sit 84:8

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**LA RONDA HUNTER**                                                    **12/16/08**

sitting 22:24 30:11
   152:19
situated 1:6 2:6
   54:11
situation 44:10
   66:15
situations 128:14
six 34:7
skip 62:4,11
skipped 61:22
Sleep 155:1
sleeve 38:20
slightest 105:13
slightly 26:7 75:16
   101:24
slope 92:14
socialized 124:25
   125:2,22
somebody 94:15
   117:20
soon 84:12
sorry 21:19 22:15
   23:20 26:6,9 27:12
   32:12 35:4 43:6
   48:14 52:17 53:4
   54:3 63:1 64:19
   65:13 74:12 75:4
   81:11 88:21 91:23
   99:4,25 100:1
   102:4,10 104:1
   114:22 118:3
   125:19,20 144:14
   145:1,6
source 148:13
South 2:17 3:13 6:12
   47:22
Spacious 36:25
   37:21
spaciousness 37:25
speak 49:14,16 75:5
   78:5,19 80:7 136:4
   146:7
speaking 45:10
   78:22 102:11
special 31:18 34:13
specific 13:13 40:21
   44:25 82:15 91:14
   93:6 97:13 114:2
   114:13 116:6
specifically 37:8
   46:12 58:23 100:25
specify 47:18
speeches 61:4
   128:19
speed 85:13

Speedway 3:4
spell 12:2
spend 129:11,20,22
Spiro 3:7,7 6:21,21
   9:1 13:20 15:13
   16:1,7,11,15,21
   17:1,10,22 18:2,8
   18:10,19 19:6,12
   19:16,21 20:19,25
   21:15,24 22:10,21
   23:1,14 24:7,15
   25:4,7 26:21,25
   27:10 28:13 29:11
   29:14,16 34:18,24
   35:3 38:17 39:12
   39:17 40:9 42:11
   42:15,20 43:2,6,9
   43:13,17,24 44:1,4
   44:9,16 45:2,7,12
   45:16,25 46:4,17
   47:2,6 48:2,6,9,14
   48:22 50:15 51:5
   53:5 54:3,19 55:13
   56:3,7 59:5,14,16
   59:21 60:9,15,19
   60:22,25 61:6,12
   61:15,20,22 62:1,9
   62:17,23 63:1,7,18
   64:2,10,13,21,24
   65:15 66:21 67:23
   68:4,8,15,20 69:1,9
   69:15,20 70:6,15
   70:18,20 71:4,22
   72:1,4,14,23 73:13
   73:18 74:2,14 79:2
   79:5,8 81:24 82:18
   82:20 83:5,11
   85:17,20 86:9,14
   86:16,22,25 87:19
   88:1,6,9 89:6 90:1
   90:6,17 91:1,3,16
   93:4,12 94:13,20
   94:24 95:2,6,9,12
   97:4 99:18 101:11
   101:18,20 102:8,13
   102:21 103:7
   104:18 105:17,23
   106:6 108:2,16,19
   109:9,17 110:13,19
   112:10,20 113:11
   113:13 114:4,16,19
   114:21 115:1,14,22
   116:18 117:11
   118:4 119:11,16,21
   121:3,8,14,21

122:14,22 123:3,14
   124:1 125:14,17,20
   126:5,8,12,15
   127:11,22 128:2,10
   128:23 129:24
   130:6,23 131:5,10
   132:1,7,20 133:1,8
   133:14,20 134:5,21
   135:8,14 136:21
   137:9 138:1,6,9,13
   139:4,8,10 143:11
   144:17 147:16,22
   148:4,16,18,25
   149:5,9,11,16,20,23
   152:7,15 153:7,16
   154:15 155:15,23
   156:5,14 157:5,9
   157:18
Spiro's 147:12
spoke 49:21 52:25
   81:8,10,12 146:5,8
stack 97:1,13
staff 123:25
stalling 70:13
standards 100:11,21
   100:24,24 101:4,10
   102:6
standing 99:12
start 59:18 64:2
   70:15 72:4 122:6
   123:2,5 128:23
started 121:14
starting 122:10
   138:9
starts 39:18,18
state 1:1 2:1 6:9,18
   7:11 29:21 39:4,23
   44:1 53:10 54:7
   57:9 58:22 61:3
   106:19 115:5,15
   127:23 128:1,19
   133:9 135:3 140:18
   148:22 155:25
   157:11 158:17
   159:2
stated 41:2,11 46:24
   47:1 63:17 72:19
   74:22,22 75:11
   142:14
statement 23:25
   40:12,17,23 41:3,6
   41:10,14,15,20,22
   42:5,7 47:12,16,24
   48:13,19 64:12
   65:9,20 69:3 73:25

75:17,19,22 109:6
   110:4 112:7,16
   114:3,9,14 115:13
statements 37:11
   40:7 42:9,14 44:11
   44:25 45:23 46:22
   109:25
states 11:17,20 13:2
   73:3 100:15 106:25
   107:1 140:15
   141:22
steal 72:10
Stephson 118:18
   124:6
Stephson's 120:3
steps 67:16,17,22,24
stipulate 25:9
stipulated 157:2,8
Stipulation 156:7
stock 150:7,10
stocks 149:18
   150:11,16
stop 46:8 69:20
   72:23 125:14
   127:24
stopped 88:18
stranger 124:15,16
strategy 131:8,17,21
   147:14
street 2:18 3:13 6:12
   80:23,24 81:4
stressing 39:7 40:1
strike 13:22 15:13
   21:19 24:7,15
   34:24 35:4 101:13
   121:3
stuck 147:9
stuff 94:15 103:10
   132:4 152:4
subject 39:9 40:3
   54:9 55:22 56:15
   58:25 113:19
   115:11
submit 23:10 26:4,9
   28:4
submitted 16:5
   20:24 22:8 28:22
   28:23
subscribed 159:20
subsection 115:3,5
substantial 133:18
   133:24 134:3
suddenly 72:17 74:5
   75:8
sue 116:8,11,12

117:5,9,12,16,20
   122:21
sued 150:19
sufficient 45:14,16
suggested 136:18
suing 116:16 117:1
   119:4,19
Suite 3:22
summary 108:1,5,7
   108:10
superior 1:1 2:1 6:8
   138:25
supervisor 11:25
   12:13
supervisor's 12:17
supply 80:18,20
support 11:4 101:15
   133:10 155:13,17
suppose 70:12
supposed 87:1 89:13
   89:15,18
suppression 115:12
   115:19,25
sure 21:22 22:7
   38:15 39:1 40:18
   41:18,23 63:23
   67:15,21 83:6,7
   111:4
surface 92:19
swear 6:23
sweater 125:15
sworn 159:7
system 55:21 56:14
   57:9 82:16 96:1,9
   96:16,20,23 101:3
   101:9 102:5 106:20
   107:22 109:7,22
   110:2,7,11 145:20
   145:23 146:2
systems 100:25
S-p-i-r-o 6:21

_____

**T**

table 92:6
take 8:1,16,21 32:15
   40:11 41:6 44:11
   48:23,24 77:21,22
   77:24,25 78:1,2,3
   84:12,17 94:21,22
   95:14 96:4,6
   125:16 139:5 151:6
taken 2:16 6:10 83:8
   96:8 159:4
talk 50:6 55:6 155:2
talked 125:23 136:1

**LA RONDA HUNTER**                                    **12/16/08**

151:18 155:12
talking 18:4 20:6
  37:17 41:25 52:8
  68:10 82:11 127:6
  132:4 133:25 134:7
tape 86:5 91:9
tax 148:22
teamed 31:7,9,11
Technologies 3:21
  6:15
technology 13:14
television 39:11
  40:5,25
tell 8:10 26:23 27:3
  29:3 31:25 39:12
  40:6 42:13 59:23
  63:3,13 80:3,15
  82:8 86:6 90:25
  91:10 107:25 114:2
  117:21 128:24
  130:4 136:11 140:1
  154:10
telling 42:22 65:4,22
  73:6 125:18
term 121:3 151:22
  151:24
terms 126:8
test 54:9
tested 54:12,15
testified 7:3 123:21
testify 9:8
testifying 159:7
testimony 9:5,18
  24:8 34:25 45:2
  90:5 158:13 159:11
Texas 3:5 117:25
  118:1,10,11 120:10
  124:7 146:6,10,12
thank 32:18 38:16
  45:15 47:18 54:4
  57:23 79:5 95:18
  129:17 141:14
  153:16
the-vehicle 110:3
thing 38:20 42:19
  59:12 69:12 117:17
  117:18 126:6
things 140:19 148:3
  148:8
think 18:14 21:19,20
  22:5 25:11,14,24
  56:7 59:3,16 60:6
  63:8,9,11 64:12
  71:6 75:13 89:11
  103:8 104:11 105:7

109:22 113:4
116:10 117:3 139:6
144:3 146:17 154:2
  156:24
thinks 63:9,10
third 25:11 104:6
  136:22
third-to-the 23:18
third-to-the-last
  26:14
thoroughly 54:9
thought 114:21
  138:6 152:15
three 17:12,20,23
  18:3 46:13 59:13
  59:13,16 111:21
  120:22
time 61:14 64:5
  68:25 76:19,21
  77:20 83:21 84:15
  84:16,25 87:15
  92:24 93:3,15,23
  94:23 107:4 120:24
  125:7,22 128:17
  129:22 136:22
  141:5,8 145:23,25
  152:3,18 153:18
  156:21,25 159:5
times 17:12,20,24
  18:3 39:4,23 46:3
  49:12 84:2,7 91:4
  93:17 136:9 153:21
today 6:4 8:25 9:8
  9:11,15 34:8
  151:19 152:6,13,19
  153:5,18 155:12
  157:14
told 15:11 31:23 32:4
  33:2,3 34:19 75:24
  78:8,16 87:19
  90:10,16 92:23
  94:2,9,11,14,15,16
  94:17 110:6 123:1
  123:3 136:6
top 70:15
total 13:3
to-the-last 25:12
traffic 147:9 155:9
training 13:18 14:4,7
  14:10,13,16,19,22
transcribe 8:3
transcribed 159:9
transcript 156:15,19
  157:4 158:11
  159:10,13,15

transfer 74:24
transported 151:15
trial 123:21
trick 43:20 44:6,10
  62:13 63:2,5,12
  128:11,14
truck 5:5 44:22
  79:14
trucks 37:10 100:21
true 24:1 25:2,25
  26:18 27:6,25 28:9
  39:2 64:14,24 65:5
  65:6,22,24 86:22
  86:25 158:14
  159:10
truthful 9:18
truthfully 7:22
try 43:4,18 44:2
  62:13 70:11,13
  102:15 128:14
trying 44:20 46:6
  47:6 63:12 69:20
  141:15
Tuesday 1:17 2:19
  6:1
turn 23:18 26:13
  53:3,23 55:10
  58:20 78:24 111:15
  114:18
turned 28:11 54:3
TV 35:19 36:4,21
  37:3,7 41:2,4,18
  42:2
Twelve 12:12
twice 19:13 86:10,17
  87:20
two 10:12 11:24
  59:12,13 69:2 98:5
  103:7 120:20
  140:19
two-wheel 71:18
  72:21 73:5 75:18
  75:20
two-year 13:9
type 19:24 124:8
typed 19:1 20:21
typical 137:4,6,7,11
  137:15,16,16,20,24
  138:16,17
typing 69:1

_____ **U** _____

UCL 105:3
uh-huh 8:4 10:18
  12:16 30:19 31:13

50:18 51:9 60:18
80:6 81:5,18
143:21 146:13
unable 9:14
unaware 135:23
unclear 18:19 110:6
unconnected 34:23
  35:10
underneath 99:3
undersigned 159:1
understand 7:18
  8:10 9:15,17 62:21
  88:22,23 100:10
  102:1,3 134:10
  137:17
understanding
  127:17 130:5
  137:23 138:8,15
understands 63:6
understood 8:14
unfair 38:14 43:4,20
  48:16 102:22 105:3
  105:5 109:12,18
  110:18 133:14
  155:18
union 31:7,12 33:21
  49:9
United 11:17,20 13:2
unknown 56:20 77:5
  77:7,7
unsafe 51:19,22,23
use 30:7,10,13 54:19
  64:9 65:3,23 66:18
  66:20 67:16,21
  70:19 100:16
  102:25 152:2,3,4
usually 138:16

_____ **V** _____

V 121:15
vague 13:21 16:1,2,7
  16:11,12 17:1,10
  17:12 20:19,19
  22:21 23:1,14
  28:13,14 34:18,25
  50:15 51:5 59:5
  62:2 64:13 82:20
  105:17,23 106:6
  112:20 114:4,5,16
  117:11 119:12
  121:3 123:14
  129:24 131:5,10
  132:1,7,20 133:1
  133:20 134:5,21
  135:15 139:4

144:17 147:23
value 149:8
varied 12:14
vehicle 5:8 29:4,6,21
  29:25 30:5 51:3,11
  54:11,15 55:21
  56:14 57:9 58:9
  64:6,8 67:12,14,15
  67:19,20,21 68:18
  68:23 72:6,8,16,17
  73:10 74:4,5,25
  75:2,7,8 77:4,8
  78:18 82:13 96:14
  98:17,20 99:9
  100:2,3,11,15,16,23
  101:4 106:18,24
  107:10,23 108:11
  110:1,2 111:21
  112:4 140:19,23,25
  141:22,24 150:23
  150:25
vehicles 31:14 39:9
  40:3 50:9 54:10
  55:22 56:15 58:25
  98:24 113:18,19
  115:11 132:15,16
  134:1,2,19 135:6
  135:12
verification 24:8,10
  28:6,11
verified 26:5
verify 23:12,15 26:17
  28:9
verifying 23:25
versus 6:7
video 96:6
videographer 3:20
  6:4,23 7:5 49:1,4
  95:16,20 125:15,18
  139:11,14 153:9,12
  156:10
view 62:18
VIN 98:16,22 99:1,11
violates 109:10
  133:8 155:16
Violation 38:12,14
  105:1,2
visit 49:8,12
visited 57:2
voice 128:7
Voyles 146:5,21
  148:2
vs 1:8 2:8

_____ **W** _____

**LA RONDA HUNTER**                                      12/16/08

wait 97:4 127:11
138:9 141:1
want 25:4,17 32:7
38:17 43:3 47:3
50:16 59:9,23
60:15 62:3,4,5,7,10
62:11 63:2,13,14
70:8 72:8 74:18
82:9 83:6,7 95:7
99:13 102:23 105:6
125:16 128:13
wanted 31:22,23,25
32:4 35:15 71:4
72:2 117:20 131:7
131:16
war 135:4
warranted 113:1
warranties 14:23
warranty 5:5 110:23
111:6,10,12,14,17
112:3,5,8,9,17,18
113:2 114:6,9
wasn't 68:8 85:9
86:3
way 77:10,15 88:7
96:2 103:11 113:20
128:11
wear 108:1,6,7
welcome 129:18
went 30:20 31:23
32:2,4,5 36:13 49:9
76:18,20,21 77:2
80:5 92:21 94:6
111:14 142:20
152:14 153:14
West 3:8
we'll 76:16 94:22,23
95:14 156:17
We're 6:6 8:16 48:23
49:1 104:12 113:20
we've 151:18 155:12
157:2
WHEREOF 159:19
whichever 111:22
white 32:4,5
widely 39:5,24
willful 115:11,19,25
willing 126:19,22
127:3 129:7,22
130:20 148:24
win 106:4
wish 150:8,15
withdraw 131:2
witness 4:2 6:24
15:19 16:2,16 17:2

19:7,19 20:20 22:3
25:21 28:14 29:17
34:19 38:19 39:15
39:20 42:18 43:1,8
43:18 44:2,18 46:1
50:16 51:6 54:22
56:5 57:22 59:13
59:15,19,22 60:13
60:18,20,23 61:1,5
61:6,16,21,24
62:14 64:4,16,22
65:16 68:2,18,22
69:22 70:12,16,19
71:3,13,25 72:3,5
72:15 73:1,16 74:3
79:7 82:19,21
86:12,20 87:21
88:5,10 89:8 90:8
91:2,17 92:5,7 93:7
94:15 99:20 101:15
101:17,19,21
102:16,23 103:10
105:19,24 106:8
108:7,18,21 109:19
110:17 112:21
114:6 115:15,23
116:19,21 117:2,12
121:10,22 122:17
123:5,17 124:2
126:10,14 128:3,5
128:20,24 129:25
130:7,24 131:11,20
132:3,8,21 133:3
133:12,21 134:6,23
135:9,16 137:11
141:14 143:13
144:18 147:18,24
148:7,17 149:1,6
149:10,14,24
152:16 154:17
155:21 156:16,23
157:19 159:19
witnesses 127:21,23
129:6 159:6
woman 124:14
word 16:21 18:11,15
23:14 45:17 137:17
152:2,4
words 99:3 104:14
104:22 105:7
108:19 109:11
110:5 130:4 148:6
work 11:16,18 14:8
30:9 31:4 77:9
81:21 84:18 87:25

88:15,25,25 89:1,3
143:3,6
worked 88:17
working 31:2 54:15
workmanship 112:4
works 31:6
worth 149:3
wouldn't 25:21
79:17,20 80:3 82:9
102:25 116:15
134:25 135:3
would-be 53:12
Wow 59:16
write 16:24 18:17,17
18:23,25 54:20
56:9
writing 99:12 156:19
written 15:21 17:8
18:6 20:14 113:25
126:20,25
wrong 25:13 54:4
76:7 80:15 84:21
89:8,11 93:25 94:2
94:9,11,16 134:25
140:13,19,22
142:14 143:9
wrote 19:4

-----X-----

XL 4:15

-----Y-----

Yashar 3:12 4:5 6:20
6:20
yeah 16:11 40:15
45:12 62:17 68:9
71:4 73:1 77:20
84:24 101:12,18,19
101:20 113:13,25
121:18 144:8 148:8
153:2
year 29:4 33:13 36:2
76:7,8 83:24,25
146:4,14 147:3,3
years 10:12,20,20
11:3,19,19,24
12:15 13:25 34:7
39:5,24 111:22
yes-or-no 18:9
Yukon 4:15,15 29:5
30:3,15,17 31:22
31:22 32:5,5 34:11
35:16 36:11,13,18
37:5,8,15,20 42:3
49:8 50:6,9,13 51:3

51:11 52:4,7,13
66:5,9 67:6 82:3,7
96:1 101:3,9 102:5
109:23 110:11
151:15,18

-----0-----

000003416 4:16
03/26/1969 10:2

-----1-----

1 1:10 2:10 4:10,18
4:19,20 22:15,16
29:10,21 67:18
68:12 69:5 70:3
71:3,10,19 72:3,4
79:4 95:17 99:14
151:4
1GKEC 99:5
1GKEC13T71J20...
29:22
1/5/04 144:2
1:22 95:21
10 4:21 5:24 6:5 91:6
91:7 94:23,24
103:5,6,14 111:25
139:9 151:5
10-minute 48:24
94:22
10/25/04 142:22
10:00 6:6
10:10 2:19 6:2
1,800 32:20
100 1:10 2:10
101996 1:23
103 4:21,22
104 4:23
109 5:21
11 4:21,22 5:20,23
103:19,20,22
111:25 142:22
11th 153:25
11:02 49:2
11:29 49:5
110 5:5,21
11241 1:22 2:21
159:24
11377 3:8
119 5:22
12 4:23 12:15 43:19
104:7,8,10
12:25 95:17
122 5:22
13 5:5 110:24,25
133 5:23

138 5:23
139 5:7
14 4:10,13 5:7,21
10:20,20 11:19,19
114:23,23 115:5
139:19,21
141 5:8
142 5:10
143 5:11
145 5:13
15 5:8,19 10:20,20
43:23 114:24,25
141:12,13
15014 10:14
152 5:24
155 5:24
16 1:17 2:20 5:10,21
6:1,5 142:7,8
144:10,16
17 5:11,18 53:24
58:22 143:17,18
145:4
18 5:13 11:3 39:19
45:4,13 46:11
53:10 55:15 58:22
67:18 68:13 69:5
70:3 71:3,10,19
72:3 113:8 145:5,6
145:7
18th 157:6,7
19 5:17 39:19 58:20
1994 13:4

-----2-----

2 4:11 5:17 24:19,20
29:14,16 95:22
99:19 107:13
156:11
2/22/06 140:6
142:2
2:23 139:12
2:49 139:15
20 3:22 5:24 67:18
71:21 95:12 113:15
113:23 158:17
20,000 76:13
20-minute 95:14
200 3:16
2000 36:3,3 40:20,21
51:13 87:14
2001 4:15 5:5 29:5
30:2,15,17 33:12
34:10 35:15 36:10
36:13,18 37:4,8,20
42:3 51:13 81:3,14

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**LA RONDA HUNTER**         12/16/08

---

81:17 82:3,7,8
101:2,8 102:5
110:23
**2002** 33:10,11,12
82:9
**2004** 120:6 143:3
144:6 146:15,17
147:4
**2005** 76:9,22 78:5
92:22 96:1 116:10
145:25 147:4
**2008** 1:17 2:20 6:1,5
13:4 28:22 76:3
84:1 85:2 87:15
92:23 93:14,18,22
145:13
**21** 5:17,18 53:24
**213** 3:14
**22** 4:10 5:17 53:7
**22nd** 145:13
**23** 5:22 55:15,16
**235-2468** 3:9
**24** 4:11,22 5:22
39:14,18,18 42:24
47:13,14 55:16
84:8 93:1,7
**25** 43:1 47:13 113:8
113:15
**25th** 143:3 144:6
**26** 71:16,25
**260** 106:17
**27** 4:13 61:12 140:25
**28** 39:20
**2998** 57:18

---
**3**
---
**3** 4:13 5:20,23 27:16
27:17
**3:12** 153:10
**3:13** 153:13
**3:18** 156:11
**3:25** 2:19 6:2
**30** 69:1 154:2
**3015** 143:16
**30589** 111:16
**30614** 5:6
**31st** 157:3
**310** 3:9
**312** 3:17
**32** 4:12
**33,000** 33:19 106:17
**3416** 57:19
**350** 3:22
**36,000** 111:22
**37** 114:18,24 115:3

---

**38** 4:14
**3800** 3:4
**39** 9:25

---
**4**
---
**4** 4:14 38:6,7 104:18
113:9,12
**40** 68:21
**4125** 10:10
**469-7319** 3:17
**47** 5:18 53:23 54:2,6
**48** 5:19
**49** 4:23

---
**5**
---
**5** 4:15 29:20 57:21
57:22,24 58:1
99:23 151:5
**50** 55:10,18 56:2
**51** 57:8
**54** 58:21
**55** 4:14
**56** 53:7,21
**57** 4:15
**579** 34:6,6
**58** 39:4,14,15,17,23
42:10,14 44:14
45:1,23 46:22
47:11

---
**6**
---
**6** 4:17 97:2,3,7
**6th** 76:3 92:22
**60** 113:7,23,24
**60601** 3:17
**650-1200** 3:5
**680-8405** 3:14

---
**7**
---
**7** 4:5,18 5:19 25:13
25:16 97:14,15,18
111:17
**713** 3:5
**73** 5:19
**77098** 3:5
**777** 2:17 3:13 6:12

---
**8**
---
**8** 4:19 5:18 25:13,16
97:25 98:1,4
**8/27/2008** 28:23
**8/27/28** 28:22
**86** 5:20
**88** 5:20

---
**9**
---
**9** 4:20 98:9,10
111:25
**90017** 3:13
**90064-1683** 3:9
**91,000** 34:9
**92606** 3:23
**949** 3:23
**95** 4:17
**955-3855** 3:23
**97** 4:17,18
**98** 4:19,20

---

Page 173