Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :        09-50026 (REG)
     f/k/a General Motors Corp., et al. :
                                        :
                          Debtors.      :        (Jointly Administered)
                                        :
------------------------------------------------------------x
```

### NOTICE OF HEARING ON DEBTORS' OBJECTION TO PROOFS
### OF CLAIM NOS. 16440 AND 16441 FILED BY MICHAEL A. SCHWARTZ

PLEASE TAKE NOTICE that upon the annexed Objection, dated December 17,

2010, of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of Proofs of

Claim Nos. 16440 and 16441 filed by Michael A. Schwartz (collectively, the "**Saturn Putative**

**Class Claim**"), as more fully set forth in the Objection, a hearing will be held before the

Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **February 3, 2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel

may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this

Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); and (xii) Michael A. Schwartz, Esq., Horwitz, Horwitz & Paradis, 405

Lexington Avenue, 61st Floor, New York, New York, 10174 so as to be received no later than

**January 27, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection to the Saturn Putative Class Claim, the Debtors may, on or

after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form

of the proposed order annexed to the Objection, which order may be entered with no further

notice or opportunity to be heard offered to any party.

US_ACTIVE:\43286768\19\72240.0639

Dated: New York, New York
December 17, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

4

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                      :
In re                                 :    Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :    09-50026 (REG)
    f/k/a General Motors Corp., et al.:
                                      :
                    Debtors.          :    (Jointly Administered)
                                      :
-----------------------------------------------------------------x
```

## DEBTORS' OBJECTION TO PROOFS OF CLAIM NOS. 16440 AND 16441 FILED BY MICHAEL A. SCHWARTZ

# TABLE OF CONTENTS

**Page**

Relief Requested ........................................................................................................... 1

Jurisdiction .................................................................................................................... 4

Relevant Facts to the Saturn Putative Class Claim ...................................................... 4

    A.    The Bar Date Order ...................................................................................... 4

    B.    The Putative Class Claims ........................................................................... 4

    C.    The Alleged Defects .................................................................................... 5

    D.    Alleged "Representations" Regarding Timing Chains ................................ 6

I.    Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is Discretionary
and Should be Denied in this Case ..................................................................... 8

    A.    The Saturn Plaintiffs Failed to Comply with Bankruptcy Rule 9014 ................ 11

    B.    Allowing the Saturn Putative Class Claim to Proceed as a Class Action
Will Not Be Effective or Efficient ..................................................... 13

    C.    The Saturn Putative Class Claim Was Not Certified Prior to the
Commencement Date .................................................................... 15

    D.    Adequate Notice of the Bankruptcy Case and the Bar Date Was Provided
to the Putative Class ................................................................. 16

II.    The Saturn Putative Class Claim Cannot Satisfy the Requirements of Rule 23 .............. 18

    A.    The Injunctive Relief Sought by the Saturn Putative Class Claim Under
Rule 23(b)(2) Is Mooted by the Debtors' Liquidation ......................... 20

    B.    Numerous Individual Issues Predominate Over Any Common Questions .......... 20

    C.    The Saturn Plaintiffs Cannot Establish that a Class Action Is Superior to
Other Available Methods for Fairly and Efficiently Adjudicating this
Controversy .............................................................................. 28

    D.    Neither "Commonality" nor "Typicality" Can Be Established by the
Saturn Plaintiffs .......................................................................... 29

    E.    The Saturn Plaintiffs Are Not Adequate Representatives ................................ 30

    F.    The Putative Class Is Not Sufficiently Ascertainable ...................................... 31

Notice ......................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adashunas v. Negley*,
    626 F.2d 600 (7th Cir. 1980) ................................................33

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981), *reh'g denied*, 450 U.S. 971 (1981)........................................21

*In re Am. Reserve Corp.*,
    840 F.2d 487 (7th Cir. 1988), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992) ....................................9, 11

*Andrews v. Am. Tel. & Tel. Co.*,
    95 F.3d 1014 (11th Cir.), *reh'g denied*, 104 F.3d 373 (11th Cir. 1996) .................................27

*Bachrach v. Chase Inv. Servs. Corp.*,
    No. 06-2785 (WJM), 2007 WL 3244186 (D.N.J. Nov. 1, 2007)........................................32, 33

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ........................8, 9, 10

*Barasich v. Shell Pipeline Co.*,
    No. Civ. A. 05-4180, 2008 WL 6468611 (E.D. La. June 19, 2008)........................................34

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .................................................................34

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).................................22, 23

*Caro v. Procter & Gamble Co.*,
    18 Cal. App. 4th 644 (1993) ...........................................................................30

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ................................................................22, 27, 28

*In re Charter Co.*,
    876 F.2d 866 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990)....................................9

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993)..............................................................................36

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998)..................................................................20, 27

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) ...............................................................................23

*Commander Props. Corp. v. Beach Aircraft Corp.*,
  164 F.R.D. 529 (D. Kan. 1995).........................................................................32, 33

*In re Currency Conversion Fee Antitrust Litig.*,
  230 F.R.D. 303 (S.D.N.Y. 2004) .............................................................................23

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993). ...................19

*Edwards v. McCormick*,
  196 F.R.D. 487 (S.D. Ohio 2000) .....................................................................30, 32

*In re Ephedra Prods. Liab. Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005)......................................................................... passim

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982)..........................................................................21

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
  177 F.R.D. 360 (E.D. La.), *reconsideration denied*,
  No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17, 1997) ................................24, 27

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  174 F.R.D. 332 (D.N.J. 1997).........................................................................21, 27

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  194 F.R.D. 484 (D.N.J. 2000), *reconsideration denied*,
  No. Civ. A. 96-1814 (JBS), 2001 WL 1869820 (D.N.J. Feb. 8, 2001) .................................24

*Ford Motor Co. v. Sheldon*,
  22 S.W.3d 444 (Tex. 2000)....................................................................................33

*Forman v. Data Transfer, Inc.*,
  164 F.R.D. 400 (E.D. Pa. 1995)...............................................................................32

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)................................................................................................29

*Henry Schein, Inc. v. Stromboe*,
  102 S.W.3d 675 (Tex. 2002).....................................................................................22

*Hornberger v. Gen. Motors Corp.*,
  929 F. Supp. 884 (E.D. Pa. 1996) ...........................................................................32

iii

*Hurd v. Monsanto Co.*,
 164 F.R.D. 234 (S.D. Ind. 1995) ................................................................................28

*In re Jamesway Corp.*,
 No. 95 B 44821 (JLG), 1997 WL 327105
 (Bankr. S.D.N.Y. June 12, 1997) ..............................................................10, 16, 17

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
 186 F.R.D. 307 (S.D.N.Y. 1999) ..........................................................................21, 24

*In re Kaiser Group Int'l, Inc.*,
 278 B.R. 58 (Bankr. D. Del. 2002) ..............................................................................9

*Lara v. Hyundai Motor Am.*,
 770 N.E.2d 721 (Ill. App. Ct. 2002) ..........................................................................32

*In re Laser Arms Corp. Sec. Litig.*,
 794 F. Supp. 475 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992) ...................22

*Lilly v. Ford Motor Co.*,
 No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002) ......................................23

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
 993 F.2d 11 (2d Cir.), *cert. denied,* 510 U.S. 959 (1993) .......................................29

*Mace v. Van Ru Credit Corp.*,
 109 F.3d 338 (7th Cir. 1997) .....................................................................................29

*Marisol A. by Forbes v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997) .......................................................................................29

*Marlow v. Am. Suzuki Motor Corp.*,
 584 N.E.2d 345, 352-53 (Ill. App. Ct. 1991) ...........................................................35

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
 170 F.R.D. 417 (E.D. La. 1997) .................................................................................28

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
 209 F.R.D. 323 (S.D.N.Y. 2002) .........................................................................25, 33

*Moore v. PaineWebber, Inc.*,
 306 F.3d 1247 (2d Cir. 2002) .....................................................................................18

*In re Mortg. & Realty Trust*,
 125 B.R. 575 (Bankr. C.D. Cal. 1991) .......................................................................13

iv

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ...................................................................12

*Oshana v. Coca Cola Bottling Co.*,
    225 F.R.D. 575 (N.D. Ill. 2005) *aff'd,* 472 F.3d 506 (7th Cir. 2006),
    *cert. denied*, 551 U.S. 1115 (2007) ......................................................................31

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006), *cert. denied*, 551 U.S. 1115 (2007) .......................32

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    214 F.R.D. 614 (W.D. Wash. 2003) ......................................................................27

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985), *remanded to*, 732 P.2d 1286 (Kan. 1987),
    *cert. denied*, 487 U.S. 1223 (1988) ................................................................20, 21

*In re Prempro Prods. Liab. Litig.*,
    230 F.R.D. 555 (E.D. Ark. 2005) ..........................................................................20

*Reid v. White Motor Corp.*,
    886 F.2d 1462 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990) .......................9

*In re Ret. Builders, Inc.*,
    96 B.R. 390 (Bankr. S.D. Fla. 1988) .....................................................................15

*In re Rezulin Prods. Liab. Litig.*,
    210 F.R.D. 61 (S.D.N.Y. 2002), *reconsideration denied*,
    224 F.R.D. 346 (S.D.N.Y. 2004) .....................................................................21, 27

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir.), *cert. denied*, 516 U.S. 867 (1995) ..................................28

*In re Sacred Heart Hosp. of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ....................................................8, 10, 12, 15

*Sanneman v. Chrysler Corp.*,
    191 F.R.D. 441 (E.D. Pa. 2000) ......................................................................25, 26

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir.), *reh'g denied*, 35 F. App'x 859 (11th Cir.),
    *cert. denied,* 537 U.S. 884 (2002) ........................................................................27

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005), *remanded to*, No. 01-1396 JRT/FLN,
    2006 WL 2943154 (D. Minn. Oct. 13, 2006), *rev'd and remanded by*,
    522 F.3d 836 (8th Cir. 2008) ...............................................................................22

v

*In re Standard Metals Corp.*,
817 F.2d 625 (10th Cir.), *reh'g granted*, 839 F.2d 1383 (10th Cir. 1987),
*cert. dismissed*, 488 U.S. 881 (1988) ................................................................................13

*Stephens v. Montgomery Ward*,
193 Cal. App. 3d 411 (1987) .........................................................................................30

*Strain v. Nutri/System, Inc.*,
No. Civ. A 90-2772, 1990 WL 209325 (E.D. Pa. Dec. 12, 1990) ...........................................28

*Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*,
No. Civ. A. 89-2181-V, 1992 WL 193661 (D. Kan. July 15, 1992) ......................................28

*Thiedemann v. Mercedes-Benz USA, LLC*,
872 A.2d 783 (N.J. 2005) ...............................................................................................33

*In re Thomson McKinnon Sec. Inc.*,
133 B.R. 39 (Bankr. S.D.N.Y. 1991) ..............................................................9, 10, 12, 14

*In re Thomson McKinnon Sec., Inc.*,
143 B.R. 612 (Bankr. S.D.N.Y. 1992) ...............................................................................36

*In re Thomson McKinnon Sec., Inc.*,
150 B.R. 98 (Bankr. S.D.N.Y. 1992) .............................................................................11, 12

*In re Trebol Motors Distrib. Corp.*,
220 B.R. 500 (B.A.P. 1st Cir. 1998) ................................................................................15

*In re Tronox Inc.*,
No. 09-10156 (ALG), 2010 WL 1849394 (Bankr. S.D.N.Y. Mar. 6, 2010) ...........................12

*Truckway, Inc. v. Gen. Elec.*,
No. Civ. A. 91-0122, 1992 WL 70575 (E.D. Pa. Mar. 30, 1992)...........................................28

*In re United Cos. Fin. Corp.*,
277 B.R. 596 (Bankr. D. Del. 2002) ..................................................................................9

*Van W. v. Midland Nat'l Life Ins. Co.*,
199 F.R.D. 448 (D.R.I. 2001) .........................................................................................31

*In re Vioxx Prods. Liab. Litig.*,
No. 05-1657, 2008 WL 4681368 (E.D. La. Oct. 21, 2008),
*aff'd,* 300 F. App'x 261 (5th Cir. 2008)..............................................................................33

*Wallis v. Ford Motor Co.*,
208 S.W.3d 153 (Ark. 2005)............................................................................................26

US_ACTIVE:\43286768\19\72240.0639

*Walsh v. Ford Motor Co.*,
 130 F.R.D. 260 (D.D.C.), *reconsideration denied*, 130 F.R.D. 514 (D.D.C. 1990),
 *appeal dismissed*, 945 F.2d 1188 (D.C. Cir. 1991)..................................................24

*In re Woodward & Lothrop Holdings, Inc.*,
 205 B.R. 365 (Bankr. S.D.N.Y. 1997).......................................................... passim

*In re Worldcom, Inc.*,
 343 B.R. 412 (Bankr. S.D.N.Y. 2006)...........................................................22, 25

*Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*,
 No. 1050926, 2010 WL 152123 (Ala. Jan. 15, 2010)............................................23

*In re Zenith Labs., Inc.*,
 104 B.R. 659 (D.N.J. 1989) ...........................................................................12

## STATUTES

11 U.S.C. § 105(a) ..................................................................................................35

28 U.S.C. § 157 .........................................................................................................4

28 U.S.C. § 502..............................................................................................1, 16, 36

28 U.S.C. § 1334 ........................................................................................................4

U.C.C. § 2.719(a)(1) ...............................................................................................33

## OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte, *Newberg on Class Actions* Ch. 20
 (Class Actions Under the Bankruptcy Laws) § 20:1 ...........................................13

Bankruptcy Rule 7023 .................................................................8, 9, 10, 18

Fed. R. Bankr. P. 1015...............................................................................................35

Fed. R. Bankr. P. 3003..............................................................................................16

Fed. R. Bankr. P. 7001................................................................................................9

Fed. R. Bankr. P. 7023................................................................................................9

Fed. R. Bankr. P. 9007..............................................................................................35

Fed. R. Bankr. P. 9014...................................................................................3, 9, 10, 11

Fed. R. Civ. P. 23 ........................................................................................... passim

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

   Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") respectfully

represent:

### Relief Requested

   1.  The Debtors file this objection (the "**Objection**"), pursuant to section 502

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (the "**Bar Date Order**") [ECF No. 4079], establishing November 30, 2009 as the bar

date (the "**Bar Date**"). Through this Objection, the Debtors seek entry of an order disallowing

and expunging Proofs of Claim Nos. 16440 and 16441 (collectively, the "**Saturn Putative Class

Claim**") brought on behalf of a putative class, for $334,847,925. Proofs of Claim Nos. 16440

and 16441 were filed against MLCS, LLC (formerly Saturn, LLC) and MLC, respectively, but

are otherwise substantively identical. Both Proofs of Claim were filed by Michael A. Schwartz

as a "co-lead counsel for the class." (*See* Saturn Putative Class Claim.) The Proofs of Claim are

annexed hereto as **Exhibits "A" and "B."** Annexed to each Proof of Claim is a "**Proof of

Claim Attachment**," which includes a summary of the claim and attaches various documents

purportedly in support of the claim.

1

2.      Attached to the Saturn Putative Class Claim is a purported class action complaint (the "**Consolidated Amended Complaint**"), brought by certain plaintiffs (the "**Saturn Plaintiffs**") on behalf of a putative class consisting of any person who owned vehicles in forty-five (45) states and the District of Columbia, which alleges twenty-six (26) causes of action against General Motor Corporation and Saturn Corporation for, among other things, unjust enrichment, breach of the implied warranty of merchantability, and violations of various states' consumer protection statues.  These claims purportedly arise from timing chains used in certain Saturn vehicles (the "**Debtors' Products**"), which the Saturn Plaintiffs allege were defective in that such timing chains were weak and insufficiently chromized, and had oiling nozzles that were insufficiently lubricating.  (*See* Consol. Am. Compl. ¶¶ 76, 78; Proof of Claim Attachment at 3-4.)  These alleged defects purportedly caused the timing chains to overheat, bend, stretch, and become brittle, and eventually break and damage the vehicles.  (*See* Proof of Claim Attachment at 5.)  The Saturn Plaintiffs seek, through the Consolidated Amended Complaint, *inter alia*, (1) to certify the putative class (Consol. Am. Compl. at 106), (2) monetary damages (*id.* at 106-07), (3) injunctive relief preventing the Debtors from manufacturing and selling the allegedly defective vehicles (*id.* at 107), and (4) costs and attorneys' fees.  (*Id.*)  The Putative Classes Saturn Putative Class Claim was not certified before June 1, 2009 (the "**Commencement Date**"), when each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and the Saturn Plaintiffs have not sought class certification from this Court.

3.      As discussed below, while some courts have allowed the filing of class proofs of claims in bankruptcy cases, whether to permit a class claim to proceed lies within the sound discretion of the court.  In exercising their discretion, courts consider, among other things:

2

(i) whether the class claimant moved to extend the application of Rule 23 of the Federal Rules of

Civil Procedure ("**Rule 23**") to its proof of claim, (ii) whether the claim satisfies the strict

requirements of Rule 23, and (iii) whether the benefits that generally support class certification

in civil litigation are realizable in the bankruptcy case.

        4.      The Saturn Putative Class Claim should be disallowed in its entirety

because, *inter alia*, (i) the Saturn Plaintiffs have failed to satisfy the basic procedural

requirements of Bankruptcy Rules 9014, (ii) the benefits that generally support class certification

in civil litigation are not realizable in these chapter 11 cases, and (iii) the putative class does not

satisfy Rule 23.  The Saturn Putative Class Claim does not satisfy Rule 23 because of the

numerous issues of fact that would predominate over any common questions and because the

Saturn Plaintiffs are neither typical of the putative classes nor adequate class representatives.

Further, the proposed definition of the putative class is overbroad since it includes many persons

who have no valid claim, and it is not administratively possible to identify proposed class

numbers.  In addition, the need for injunctive relief has been mooted and would provide no

deterrent effect, as the Debtors no longer operate a business and are liquidating.

        5.      Moreover, because the Debtors have provided publication notice to the

putative class members encompassed by the Saturn Putative Class Claim, it would be unfair and

unnecessary to burden the Debtors' estates with the additional cost and associated delay of

providing these potential claimants with a second opportunity to assert claims as class claimants.

Requiring additional notice to be given by the Debtors would unnecessarily drain the Debtors'

estates.  Further, litigation of the Saturn Putative Class Claim would further deplete the pool of

assets available for distribution to the Debtors' creditors.  As a result, the Court should disallow

the Saturn Putative Class Claim in its entirety, or in the alternative, not allow the Saturn Putative

Class Claim to proceed as a class claim.

## Jurisdiction

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relevant Facts to the Saturn Putative Class Claim

### A.      The Bar Date Order

7.      On September 16, 2009, this Court entered the Bar Date Order which,

among other things, established November 30, 2009 as the Bar Date and set forth procedures for

filing proofs of claims.  The Bar Date Order requires, among other things, that a proof of claim

must *"set forth with specificity"* the legal and factual basis for the alleged claim and include

supporting documentation or an explanation as to why such documentation is not available.  (Bar

Date Order at 2.)

### B.      The Putative Class Claims

8.      On October 26, 2009, the Saturn Putative Class Claim was filed by

Michael A. Schwartz as "co-lead counsel for [the] class."  (*See* Saturn Putative Class Claim at 1.)

The Saturn Putative Class Claim was not certified before the Commencement Date, and the

Saturn Plaintiffs have not sought class certification from this Court.

9.      The Saturn Putative Class Claim attaches a Consolidated Amended

Complaint, originally filed in the United States District Court of the District of Nebraska, Case

No. 8 07CV298, which sets forth various causes of action, on behalf of a putative class, defined

as:

> [S]imilarly situated persons and entities who (purchased and
> leased) a (i) model year 2000-2003 Saturn L-Series, (ii) model year

4

2002-2003 Saturn Vue, or (iii) model year 2003 Saturn Ion, each equipped with a 2.2 Liter, 4-cylinder, 137-horsepower dual-overhead-cam, Ecotec L61 Engine (the "2.2L, Ecotec L61 Engine") and a GM production part number 90537338 steel timing chain (the "**Timing Chain**") and a GM production part number 90537476 timing chain oiling nozzle (the "**Oiling Nozzle**") (collectively, the "**Class Vehicles**") in the states of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming and the District of Columbia (collectively, the "**Class States**"), and whose Timing Chain has failed.

(the "**Putative Class**").  (*See* Consol. Am. Compl. ¶ 1.)  The Consolidated Amended Complaint alleges twenty-six causes of action, including, *inter alia*, (i) unjust enrichment, (ii) breaches of the implied warranty of merchantability, (iii) violations of various deceptive trade practices acts, and (iv) violations of various consumer protection statutes.  (*See id*. ¶¶ 140-390.)

10.     The Consolidated Amended Complaint seeks, *inter alia*, (1) to certify the putative class (*id.* at 106), (2) monetary damages (*id.* at 106-7), (3) injunctive relief preventing the Debtors from manufacturing and selling the allegedly defective vehicles (*id.* at 107), and (4) costs and attorneys' fees.  (*Id.*)

C.     **The Alleged Defects**

11.     The Saturn Plaintiffs' claims purportedly arise from Debtors' Products, which the Saturn Plaintiffs allege had defectively designed Timing Chains and Oiling Nozzles that were allegedly not capable of withstanding normal operation.  (*See id.* ¶ 2.)  The Saturn Plaintiffs allege the Timing Chains are defective because (1) they are not sufficiently robust, and (2) the pins holding the chain links together were not properly "chromised."  (Consol. Am.

5

Compl. ¶ 76.) They further allege the oil nozzle does not sufficiently lubricate the timing chain at low and idle speeds. (*Id.* ¶ 78.) The lack of oil allegedly causes "excessive heat in the Timing Chain, which caused the metal on the timing chain to bend, stretch, and become brittle, thereby causing the Timing Chain to break." (*Id.*) According to Plaintiffs, these deficiencies result in the "the inability of the timing chain to withstand normal wear and tear" (*id.* ¶ 76), although the crux of the Saturn Putative Class Claim is that the Timing Chains will not last for the "life of the vehicles."

### D.    Alleged "Representations" Regarding Timing Chains

1.    <u>Maintenance Schedules and Marketing Materials</u>

12.    The Saturn Plaintiffs allege that maintenance schedules in the owner's handbooks they received do not address maintenance or inspection of the timing chain "during the life" of the vehicles. (*See* Consol. Am. Compl. ¶¶ 6-16.) They also allege the marketing materials for model-year 1998 and 1999 Saturn vehicles emphasized steel timing chains as a "selling point."[1] (*Id.* ¶ 52.) According to the Saturn Plaintiffs, the "advantage of a timing chain over a timing belt is clear" because (1) timing belts require scheduled replacement at 60,000 and 90,000 miles; (2) replacement is usually costly and complicated; and (3) in "interference engines," like the engines in the putative class vehicles, "failure of the timing belt will likely cause parts such as pistons and valves to collide with costly consequences." (*Id.* ¶ 53.)

13.    The Saturn Plaintiffs allege marketing materials, albeit for model years other than those at issue, highlighted the fact the vehicles were equipped with steel timing chains as opposed to timing belts. (*See id.* ¶ 54.) Model-year 1998 brochures noted steel timing chains

---

[1] Notably, these vehicles are not within the Putative Class, which only includes 2000-2003 model year Saturns. (*See* Consol. Am. Compl. ¶ 1.) Nor do any of the Saturn Plaintiffs allege they saw, let alone relied on, marketing materials for other vehicles.

US_ACTIVE:\43286768\19\72240.0639

were "tough," "long-lasting," and used because "rubber timing belts break more easily" and "can cause bent valves and costly engine work." (*Id.* ¶ 54.) Model-year 1999 brochures stated "[o]ur steel timing chain is more durable than the rubber timing belt you'll find in other cars…" and that it "requires virtually no maintenance." (*Id.* ¶ 55-56.)

14.    The Saturn Plaintiffs further allege unspecified Saturn dealers[2] "proclaimed the virtues" of steel timing chains, and one owner said her Saturn salesperson told her the timing chain was "maintenance free" and would "never break" while another owner said a dealership "was bragging about the timing chain." (*Id.* ¶ 57.) Finally, the Saturn Plaintiffs allege that the brochure specifications page for each of the vehicles "prominently stated" L61 engines contained a "steel timing chain."

15.    Based on the above, the Saturn Plaintiffs claim "[t]here can be no doubt that the steel Timing Chains in the Class Vehicles were proclaimed and (and intended) by Defendants to last the life of the Vehicles." (*See id.* ¶ 59.) The Saturn Plaintiffs also allege that manuals for vehicles equipped with an optional 3.0-liter V6 engine, which has a timing belt instead of a steel chain, state "replace timing belt" at 100,000 miles, but timing chains "are not mentioned anywhere in the Maintenance Schedules." (*Id.* ¶¶ 62-63.) The Saturn Plaintiffs contend that "[t]here is no indication that the Timing Chains need inspection or replacement – *ever* – leading to only one intended conclusion, that the Timing Chains were to last the life of the Class Vehicles." (*Id.* ¶ 63.) Finally, the Saturn Plaintiffs noted the brochure announcing the

---

[2] Debtors are not responsible for any statements allegedly made by Saturn dealerships, as they are separate, independent entities. Nor is there (and the Saturn Plaintiffs have not alleged) any agency relationship between Debtors and dealerships. Accordingly, statements made by Saturn dealerships cannot be imputed to Debtors. Further, statements made by a specific dealer to its customer is something, by definition, to which not all putative class members were exposed.

introduction of the Saturn L-Series "assured customers" that "test drivers had logged more than one million miles." (*Id.* ¶ 64.)

2.   Debtors' Statements to NHTSA and the Limited Recall

16.   The Saturn Plaintiffs allege that, in response to National Highway Traffic Safety Administration ("**NHTSA**") inquiry, the Debtors advised they received 1,020 consumer or field reports of broken or replaced timing chains and 2,203 warranty claims for broken timing chains in the 2000-2003 model year Saturn L-Series vehicles, which number over 412,000. (Consol. Am. Compl. ¶¶ 102, 127.) They assert that the Debtors "deceptively indicated" to NHTSA that the alleged timing chain problem was isolated within 2001 L-Series vehicles manufactured from November 2000 to February 2001. (*Id.* ¶¶ 110-111.) The Saturn Plaintiffs allege that the Debtors voluntarily recalled vehicles built within a 4-month period,[3] leaving owners of 391,635 putative class vehicles to (1) bear the $600-$900 cost of replacing the timing chain before it breaks or (3) bear the cost of repairs to the vehicles after timing chains break, costing "thousands of dollars." (*Id.* ¶ 120.)

**I.   Application of Bankruptcy Rule 7023 to a Class Proof of Claim Is Discretionary and Should be Denied in this Case**

17.   There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (noting that class action device may be utilized in appropriate

---

[3] The Saturn Plaintiffs later acknowledge the NHTSA's finding that there were in fact "elevated failure rates" in those 20,500 vehicles, which NHTSA found accounted for 34.3% of GM's total timing chain complaints and field reports and 38.2% of all warranty repairs despite comprising only 5% of the vehicle populations. (*Id.* ¶ 114.) NHTSA therefore only upgraded its investigation to an "engineering analysis" with respect to vehicles produced during the 4-month period. (*Id.* ¶ 114.)

8

contexts, but should be used sparingly).  Application of Bankruptcy Rule 7023 to class proofs of claim[4] lies within the ***sound discretion*** of the court.[5]  In determining whether to exercise discretion and permit a class proof of claim, courts primarily look at (i) whether the class claimant moved to extend the application of Rule 23 to its proof of claim; (ii) whether the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy; and (iii) whether the claims which the proponent seeks to certify fulfill the requirements of Rule 23.  *See In re Bally Total Fitness*, 402 B.R. at 620; *In re Woodward*, 205 B.R. at 369; *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("In exercising that discretion, the bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23, Fed. R. Civ. P., to a 'contested matter,' *i.e.*, the purported class claim; if and only if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied.").

---

[4] Part VII of the Bankruptcy Rules, which includes Bankruptcy Rule 7023, only applies to adversary proceedings. *See* Fed. R. Bankr. P. 7001.  Bankruptcy Rule 9014, however, adopts certain of the rules from Part VII for application in contested matters.  Bankruptcy Rule 7023 is not among them.  *See* Fed. R. Bankr. P. 9014.  Thus, plaintiffs seeking the application of Bankruptcy Rule 7023 (and by implication, Rule 23) to a class proof of claim are required to *move* under Bankruptcy Rule 9014 for a court to apply "the rules in Part VII."  Fed. R. Bankr. P. 9014; *accord In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating that "[f]or a Class Claim to proceed . . . the bankruptcy court must direct Rule 23 to apply").  *See, e.g., Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080 (1990); *In re Charter Co.*, 876 F.2d 866, 876 (11th Cir. 1989), *cert. dismissed*, 496 U.S. 944 (1990) (holding that proof of claim filed on behalf of class of claimants is valid, but that "does not mean that the appellants may proceed, without more, to represent a class in their bankruptcy action.  Under the bankruptcy posture of this case, Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge."

[5] *See, e.g., In re Bally Total Fitness*, 402 B.R. at 620 ("[C]ourts may exercise their discretion to extend Rule 23 to allow the filing of a class proof of claim."); *In re Thomson McKinnon Sec. Inc.*, 133 B.R. 39, 40 (Bankr. S.D.N.Y. 1991) (Bankruptcy Rule 7023 and Rule 23 "give the court substantial discretion to consider the benefits and costs of class litigation") (citing *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988), *aff'd*, 141 B.R. 31 (S.D.N.Y. 1992); *accord In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("Whether to certify a class claim is within the discretion of the bankruptcy court."); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002) (same); *Reid*, 886 F.2d at 1469-70 (stating that "205 Rule 9014 authorizes bankruptcy judges, within their discretion, to invoke Rule 7023, and thereby Fed. R. Civ. P. 23, the class action rule, to 'any stage' in contested matters, including, class proofs of claim."); *In re Charter Co.*, 876 F.2d at 876 ("[u]nder the bankruptcy posture of this case Bankruptcy Rule 7023 and class action procedures are applied at the discretion of the bankruptcy judge.").

18.     When evaluating these requirements, courts have considered a variety of

factors, including, *inter alia*:

- **whether claimants are in "compliance with the Bankruptcy procedures regulating the filing of class proofs of claim in a bankruptcy case,"** *see, e.g.*, *In re Thomson*, 133 B.R. at 41 (disallowing class proof of claim where named plaintiff failed to file a Rule 9014 motion requesting that Rule 7023 apply);

- **whether the debtor intends to liquidate**, *see In re Thomson*, 133 B.R. at 41 (noting that context of liquidating chapter 11 plan supports rejection of class proofs of claim);

- **whether or not a purported class was previously certified**, *see, e.g.*, *In re Bally Total Fitness*, 402 B.R. at 620 (refusing to allow class proof of claim where class was not certified pre-petition); *In re Sacred Heart Hosp.*, 177 B.R. at 23 (classes certified pre-petition are the "best candidates" for a class proof of claim);

- **whether the class claim device will result in "increased efficiency, compensation to injured parties, and deterrence of future wrongdoing by the debtor,"** *see In re Woodward*, 205 B.R. at 376 (emphasis added and internal citations omitted); *accord In re Thomson*, 133 B.R. at 40 ("Manifestly, the bankruptcy court's control of the debtor's affairs might make class certification unnecessary.");

- **whether the entertainment of class claims would subject the administration of the bankruptcy case to undue delay**, *see, e.g.*, *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 ("[A] court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate."); and

- **whether or not adequate notice of the bar date was afforded to potential class members**, *see In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) (refusing to certify class where adequate notice of bar date was afforded to potential class members, and thus to certify class would be "unwarranted, unfair, and possibly violate the due process rights of other creditors") (internal quotations omitted).

"If application of Bankruptcy Rule 7023 is rejected by the bankruptcy court in an exercise of

discretion . . . the result will be that class claims will be denied and expunged."  *In re Thomson*,

10

133 B.R. at 40-41.  As set forth below, the Court should exercise its discretion to reject the

application of Bankruptcy Rule 7023 and to disallow the Saturn Putative Class Claim.[6]

### A.    The Saturn Plaintiffs Failed to Comply with Bankruptcy Rule 9014

19.    A plaintiff who seeks to bring a class proof of claim must comply with the

applicable procedural requirements.  *See, e.g.*, *In re Am. Reserve Corp.*, 840 F.2d at 494 (noting

the applicability of Bankruptcy Rule 9014 and its procedural requirements); *see In re Ephedra*

*Prods. Liab. Litig.*, 329 B.R. at 6-7 (same).  These procedural requirements are not complicated.

Because a claim "cannot be allowed as a class claim until the bankruptcy court directs that Rule

23 apply," the putative class representative must file a motion with the bankruptcy court

requesting the application of Rule 23.  *In re Woodward*, 205 B.R. at 368, 370.  ("Rule 23 does

not say who must make a timely motion, but the duty ordinarily falls on the proponent of the

class action.").

20.    The requirement that a class claimant timely move under Bankruptcy Rule

9014 to incorporate Rule 23 is intended to protect a debtors' estate from undue delay of the

debtors' plan process.  *See In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr.

S.D.N.Y. 1992)  In *In re Woodward*, another case in which there was no pre-bankruptcy class

certification, the court stated that the class claim should be disallowed if the putative class

representative did not expeditiously move in the bankruptcy case for certification of its class

claim, as a lengthy certification battle could delay the administration and distribution of the

bankruptcy estate.  *See In re Woodward*, 205 B.R. at 370; *see also In re Ephedra Prods. Liab.*

*Litig.*, 329 B.R. at 5 (disallowing class products liability claim because "it is simply too late in

---

[6] In the event this Court determines to apply Rule 23 to the Saturn Putative Class Claim, the Debtors reserve any and all rights to seek class-certification discovery to test the Saturn Plaintiffs' sweeping, unsubstantiated representations about the nature of the class members' allegations.

US_ACTIVE:\43286768\19\72240.0639

the administration of this Chapter 11 case to ask the Court to apply Rule 23 to class proofs of

claim.").  As of the date hereof, over a year after and a half after the Commencement Date and

almost a year after the Bar Date, the Saturn Plaintiffs have not sought permission of the Court to

file a class proof of claim, or moved for certification of the class.  The Debtors have already filed

their proposed plan, the disclosure statement has been approved, and a confirmation hearing is

planned to occur shortly.  As a result, if allowed to proceed, the Saturn Putative Class Claim will

unduly delay the administration of the Debtors' estates and their ability to consummate a plan of

liquidation ("**Plan**"), because the adjudication of the claim and its attendant class-certification

issues could take months.  *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. at 24

(disallowing class claim where allowance would cause "very substantial and apparently

unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is

presently a plan before us for imminent confirmation"); *In re Musicland Holding Corp.*, 362

B.R. 644, 656 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) (refusing to allow class claim where it

would "seriously delay the administration of the case" because debtors had already filed

confirmation motion and court had approved disclosure statement); *In re Ephedra Prods. Liab.

Litig.*, 329 B.R. at 5 (disallowing class claim where liquidating plan was already submitted and

"[a]pplying Rule 23 to class claims now would initiate protracted litigation that might delay

distribution of the estate for years"); *see also In re Tronox Inc.*, No. 09-10156 (ALG), 2010 WL

1849394, at *3 (Bankr. S.D.N.Y. Mar. 6, 2010) (Gropper, J.) (refusing to enlarge time to file

class proof of claim where such claim could "likely result in substantial delay and expense and

compromise the parties' efforts to formulate a plan on the present timeline" where proposed plan

and been filed and disclosure statement was to be filed within two months).  Accordingly, this

Court should enforce these procedural requirements and disallow the Saturn Putative Class

Claim.  *See, e.g.*, *In re Woodward*, 205 B.R. at 369-71; *In re Thomson*, 150 B.R. at 100-01; *In re Thomson*, 133 B.R. at 41; *In re Zenith Labs., Inc.*, 104 B.R. 659, 664 (D.N.J. 1989); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 6-7.

      **B.**      **Allowing the Saturn Putative Class Claim to Proceed as a Class Action Will Not Be Effective or Efficient**

      21.      For a class action to proceed, "the benefits that generally support class certification in civil litigation must be realizable in the bankruptcy case." *In re Woodward*, 205 B.R. at 369 (citing *In re Mortg. & Realty Trust*, 125 B.R. 575, 580 (Bankr. C.D. Cal. 1991)).  In this case, neither the purported class nor the Court would benefit from recognizing a class proof of claim and allowing a class action to proceed.

      22.      The Saturn Putative Class Claim does not provide for the most effective or efficient means of determining the rights of the members of the putative class.  First, a class proof of claim is not appropriate if individual issues of fact would predominate over any questions common to the members of the purported class.  For that reason, the court in *In re Woodward*, in considering putative class claims for false advertising and misrepresentation, found that a class action is "generally not appropriate to resolve claims based upon common law fraud."  205 B.R. at 371.

      23.      Second, in general, the Bankruptcy Code and Bankruptcy Rules can provide the same benefits and serve the same purposes as class action procedures in normal civil litigation.  *See id.* at 376 ("a bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum"); 6 Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u> Ch. 20 (Class Actions Under the Bankruptcy Laws) § 20:1 at 265 (4th ed. 2002) (commenting that "bankruptcy proceedings are already capable of handling

13

group claims, which operate essentially as statutory class actions"); *see also In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir.), *reh'g granted*, 839 F.2d 1383 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881 (1988).  Although members of the Putative Class can no longer file their claims because the Bar Date has passed, they had ample notice of the Bar Date and opportunity to take advantage of these bankruptcy procedures.

24.     Third, the bankruptcy claims process is, in some respects, *superior* to class action procedures.  As the court observed in *In re Woodward*:

> [W]hile the class action ordinarily provides compensation that cannot otherwise be achieved by aggregating small claims, the bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions.  In addition, there may be little economic justification to object to a modest claim, even where grounds exist.  Hence, a creditor holding such a claim may not have to do anything more to prove his case or vindicate his rights.

205 B.R. at 376 (citations omitted).  Here, notwithstanding the chance to do so, none of the members of the putative class filed a claim against the Debtors.

25.     The fact that the Debtors intend to file a chapter 11 plan of liquidation lends further support for denying allowance of a class proof of claim in these cases.  *See In re Thomson*, 133 B.R. at 41.  "The costs and delay associated with class actions are not compatible with liquidation cases where the need for expeditious administration of assets is paramount so that all creditors, including those not within the class, may receive a distribution as soon as possible."  *Id.*  "Creditors who are not involved in class litigation should not have to wait for the payment of their distributive liquidated share while the class action grinds on."  *Id.*  Due to the limited assets of the Debtors, the magnitude of the Saturn Putative Class Claim, and without knowing the identity or merit of the claims held by the members of the Putative Class, a plan

14

could not be confirmed as long as the Saturn Putative Class Claim is extant and unliquidated

absent estimation proceedings.  All the Debtors' creditors should not be forced to wait for

payment of their distribution while the Saturn Class Claim is litigated and the estates' remaining

assets are depleted.

26.    The facts of the instant case are similar to the facts of *In re Woodward*,

where the court exercised its discretion to deny the class claim, finding that "the class claim will

not deter an insolvent, non-operating debtor's management or shareholders, or induce them to

police future conduct [where] . . . the debtor has . . . a liquidating plan that wipes out equity.  The

managers have moved on to other jobs – the debtor has closed its doors – and the prosecution of

the class action will [ ] not affect how they act in the future."  205 B.R. at 376.  Here, the Debtors

have discontinued the sale of the Debtors' Products and have subsequently sold substantially all

their assets.  The Debtors are no longer operating a business.

**C.    The Saturn Putative Class Claim Was Not Certified Prior to the
Commencement Date**

27.    A number of courts have held that class proofs of claim may be

inappropriate where a class representative was not certified prepetition in a non-bankruptcy

forum.  *See, e.g.*, *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998);

*In re Sacred Heart Hosp.*, 177 B.R. at 23; *In re Ret. Builders, Inc.*, 96 B.R. 390, 391 (Bankr.

S.D. Fla. 1988); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5.  The court in *Sacred Heart

Hospital* held that use of the class proof of claim device in bankruptcy cases may be appropriate

in certain contexts, but "such contexts should be chosen most sparingly."  *In re Sacred Heart

Hosp.*, 177 B.R. at 22.  Specifically, the *Sacred Heart Hospital* court noted that cases where (i) a

class has been certified prepetition by a nonbankruptcy court, or (ii) a class action has been filed

15

and allowed to proceed as a class action in a nonbankruptcy forum for a considerable time

prepetition, may present appropriate contexts for recognizing a class proof of claim. *See id.*

***However, the Debtors have been unable to find a single bankruptcy case within the Second***

***Circuit in which a pre-certification class claim was allowed.***

        28.    The Putative Class was not certified at the time of the Debtors' chapter 11

filing, and it remains uncertified today.  For this reason alone, the Saturn Putative Class Claim

should be disallowed and expunged.

     **D.**     **Adequate Notice of the Bankruptcy Case and the Bar Date Was Provided to
the Putative Class**

        29.    One of the principal goals of the Bankruptcy Code is to ensure that

creditors of equal rank receive equal treatment in the distribution of a debtor's assets.  The

Bankruptcy Code and Bankruptcy Rules, therefore, require creditors to file proofs of claim

before a bar date.  *See* 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(3).  Regardless of how

worthy their claims may be, claimants who fail to file before an applicable bar date "shall not be

treated as a creditor with respect to such claim for the purposes of voting and distribution."  Fed.

R. Bankr. P. 3003(c)(2).  These same procedural hurdles must be met by all creditors.

        30.    In determining whether a class proof of claim should be allowed, courts

consider whether adequate notice of the bar date was afforded to potential class members.  *See In*

*re Jamesway Corp.*, 1997 WL 327105, at *8.  As that court stated:

> The proper inquiry is whether [the debtor] acted reasonably in
> selecting means likely to inform persons affected by the Bar Date
> and these chapter 11 proceedings, not whether each claimant
> actually received notice . . . [a]s to those plaintiffs who might not
> have received actual notice of the Bar Date, we find that by
> complying with the terms of the Bar Date Order, mailing a Claim
> Package to every known creditor and publishing notice of the Bar
> Date, [the Debtor's] actions satisfy due process."

16

*Id.* (internal citations omitted).

31.     In this case, the putative members in the Saturn Plaintiffs' proposed class received proper notice of the Debtors' chapter 11 cases and the Bar Date in accordance with the provisions of the Bar Date Order.  At great expense to their estates, the Debtors published notice of the Bar Date nationwide in *The Wall Street Journal* (Global Edition – North America, Europe, and Asia), *The New York Times* (National), *USA Today* (Monday through Thursday, National), *Detroit Free Press, Detroit News, LeJournal de Montreal* (French), *Montreal Gazette* (English), *The Globe and Mail* (Canada), and *The National Post*.  (*See* Bar Date Order at 7.)  Providing individual notice to all owners of the Debtors' Products would be impossible or, at minimum, prohibitively expensive, as persons resell their vehicles and the Debtors would have no way to know the identities of the current owners of their products.  Providing notice of the Debtors' bankruptcy cases and the Bar Date by publication, however, constituted a viable alternative to the impracticability, or perhaps even impossibility, of tracking down and providing individual notice to each of the consumer purchasers of the Debtors' Products.  Additionally, in this case, in particular, the Debtors would be hard-pressed to find a handful of Americans who were not aware of the chapter 11 filing of General Motors Corporation.

32.     Absent the Saturn Plaintiffs' Claim, no member of the Putative Class has filed a claim.  Further, members of the Putative Class who failed to file proofs of claim could not be said to have relied on the filing of the Saturn Putative Class Claim because the Putative Class was not certified as of the Commencement Date.  *See In re Jamesway Corp.,* 1997 WL 327105, at *10 (denying motion for class certification of class claim where "[n]o class was pre-certified such that purported class members who did not chose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order").

17

Because the Debtors have provided notice by publication to the putative class members encompassed by the Saturn Putative Class Claim, it would be unfair and unnecessary to burden the Debtors' estates with the additional cost and associated delay of providing these potential claimants with a second notice.  Further, the only type of notice the Debtors could reasonably provide these persons today would be another publication notice, effectively duplicating the notice they have already been provided and extending the Bar Date for a particular sub-group of general unsecured creditors who are not entitled to special treatment under the Bankruptcy Code. Since not a single such member of the Putative Class filed an individual claim prior to the Bar Date, it is highly unlikely that many, if any at all, would file claims if given a second opportunity, but the estate would suffer the unnecessary costs of notice.

## II.    The Saturn Putative Class Claim Cannot Satisfy the Requirements of Rule 23

33.    Even if this Court were to permit the Saturn Plaintiffs to file a class claim, the Saturn Putative Class Claim would not satisfy Rule 23.  To proceed as a class claim, the Saturn Putative Class Claim must meet all four requirements of subsection (a) of Rule 23, as made applicable to bankruptcy cases by Bankruptcy Rule 7023.  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); s*ee also In re Woodward*, 205 B.R. at 371.  Rule 23(a) provides:

> Prerequisites to Class Action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the
interests of the class.

Fed. R. Civ. P. 23(a).

34.    In addition, to proceed as a class claim, the Saturn Putative Class Claim

must satisfy subsections (b)(2) and (b)(3) of Rule 23, as the Saturn Putative Class Claim seeks

injunctive relief and monetary damages.  *See In re Drexel Burnham Lambert Group, Inc.*, 960

F.2d 285, 290 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993).  (*See* Consol. Am. Compl.

at 106-7.)  For purposes of this objection, Rule 23(b)(2) provides in relevant part:

> the party opposing the class has acted or refused to act on grounds
> that apply generally to the class, so that final injunctive relief or
> corresponding declaratory relief is appropriate respecting the class
> as a whole.

Fed. R. Civ. P. 23(b)(2).  In addition, Rule 23(b)(3) provides in relevant part:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to
> other available methods for the fair and efficient adjudication of
> the controversy.

Fed. R. Civ. P. 23(b)(3).

35.    As set forth below, numerous individual issues of fact would predominate

over any common questions in the Saturn Putative Class Claim because the Saturn Plaintiffs are

neither typical of the members of the Putative Class nor adequate class representatives.  Further,

the proposed definition of the Putative Class is overbroad because it includes many persons who

have no valid claim, and it is not administratively feasible to identify members of the Putative

Class.  Moreover, class treatment is simply not efficient or superior in these circumstances.  As

discussed below, the Saturn Plaintiffs' claim raises a host of individual issues of fact regarding

each putative class member's right to recovery.  These individual issues would require mini trials

19

as to each class member's right to relief, a result that courts have repeatedly found requires

denial of class certification.

> **A.**     **The Injunctive Relief Sought by the Saturn Putative Class Claim Under Rule
> 23(b)(2) Is Mooted by the Debtors' Liquidation**

36.     The Saturn Putative Class Claim cannot meet the requirements of Rule

23(b)(2), as any claim for injunctive relief is mooted because the Debtors do not presently

operate a business and are liquidating.  *See In re Ephedra Prods. Liab. Litig.*, 329 at 9 n.5

("Insofar as the class claims seek injunctive relief against Twinlabs under Rule 23(b)(2), they are

moot now that Twinlabs has gone out of business and existence").  As a result, the Saturn

Plaintiff's request for the Debtors to be prevented from manufacturing and selling the allegedly

defective vehicles is moot.  (*See* Consol. Am. Compl. at 107.)

> **B.**     **Numerous Individual Issues Predominate Over Any Common Questions**

> 1.     <u>Variations in the Law of 46 Jurisdictions Defeat Predominance</u>

37.     Federal courts have made it clear time and again that before a court can

analyze whether the factors under Federal Rule 23 are satisfied, the court must determine which

state's or states' substantive law governs the underlying claims.  *See*, *e.g.*, *In re Prempro Prods.

Liab. Litig.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005) ("Not only must the choice-of-law issue be

addressed at the class certification stage – it must be tackled at the front end since it pervades

every element of [Federal Rule] 23."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J.

1998).  This is logical because it would be impossible to determine whether there are questions

of law common to the class, for example, without first determining what the substance of the

applicable laws is.  Both federal case law and the Constitution mandate that this Court perform a

choice of law analysis before determining whether this case is properly certified as a class action.

20

*See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985), *remanded to*, 732 P.2d 1286

(Kan. 1987), *cert. denied*, 487 U.S. 1223 (1988).

        38.      This requirement begets the question of which state's or states' law should

apply to the class claims when a class is comprised of individuals living, and allegedly injured by

the defendant's conduct, in forty-five (45) states and the District of Columbia.  Federal courts in

this jurisdiction and across the country have uniformly answered this question by holding that

where a purported class action would involve class members from more than one state "the court

will apply the law of each of the states from which plaintiffs hail."  *In re Ford Motor Co.*

*Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *In re Rezulin Prods.*

*Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002), *reconsideration denied*, 224 F.R.D. 346

(S.D.N.Y. 2004); *Kaczmarek v. Int'l Bus. Machs. Corp.,* 186 F.R.D. 307, 312-13 (S.D.N.Y.

1999); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605 (S.D.N.Y. 1982).  To

hold otherwise and apply only the forum state's substantive law to the class certification analysis

would violate Constitutional principles of Due Process and federalism.  As the Supreme Court

has noted, "for a State's substantive law to be selected in a constitutionally permissible manner,

that State must have a significant contact or significant aggregation of contacts, creati*ng* state

interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Allstate Ins.*

*Co. v. Hague*, 449 U.S. 302, 312-13 (1981), *reh'g denied*, 450 U.S. 971 (1981).[7]  The Due

Process Clause prohibits the application of law which is only casually or slightly related to the

---

[7] The Supreme Court expressly admonished a state court for applying its state's substantive law to a nationwide class action filed within its borders, noting that the state "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'"  *Phillips Petroleum Co.*, 472 U.S. at 821.  The *Phillips Petroleum* Court concluded that the forum state's "lack of 'interest' in claims unrelated to that State and the substantive conflict with" other jurisdictions rendered the application of the forum state's law to every claim in the nationwide class action "sufficiently arbitrary and unfair as to exceed constitutional limits."  *Id.* at 822.

US_ACTIVE:\43286768\19\72240.0639

litigation and the Full Faith and Credit Clause requires a forum state to respect the laws of other

states.  *Id.* at 335-36.

39.    Compliance with the Constitutional requirement of applying every state's

law to the claims in a nationwide class action is fatal to class certification when the applicable

laws differ from state to state.  Courts in this jurisdiction and throughout the country have

repeatedly held that "the need of a court to apply diverse laws and varied burdens of proof to the

individual class members' claims defeats the predominance requirement of Federal Rule

23(b)(3)."  *In re Worldcom, Inc.*, 343 B.R. 412, 427 (Bankr. S.D.N.Y. 2006); *In re Laser Arms

Corp. Sec. Litig.*, 794 F. Supp. 475, 495 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992) ("In

the absence of a single state law governing each entire common law claim, common questions of

law would not predominate over individual questions."); *In re Bridgestone/Firestone, Inc.*, 288

F.3d 1012, 1015 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) ("No class action is proper

unless all litigants are governed by the same legal rules."); *Henry Schein, Inc. v. Stromboe*, 102

S.W.3d 675, 698-99 (Tex. 2002) (citing dozens of federal and state cases that have "rejected

class certification when multiple states' laws must be applied.").

40.    The Saturn Plaintiffs have the burden of establishing that variations in the

laws of the jurisdictions do not "swamp any common issues and defeat predominance."  *Castano

v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).  Here, the Saturn Plaintiffs cannot meet

this burden as courts have repeatedly determined that variations in the causes of action at issue in

this case – *inter alia*, violations of state consumer protection laws, unjust enrichment, and breach

of implied warranty – have made certification of nationwide class actions impermissible.

41.    **Violations of States' Consumer Protection Laws:**  Courts have denied

certification of a nationwide class based on consumer protection statutes because the necessity to

22

apply the laws of many states defeats the predominance requirement.  *See, e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (reversing certification of class involving members hailing from several states because "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."), *remanded to*, No. 01-1396 JRT/FLN, 2006 WL 2943154 (D. Minn. Oct. 13, 2006), *rev'd and remanded by*, 522 F.3d 836 (8th Cir. 2008); *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1018 ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *In re Woodward,* 205 B.R. at 371 (refusing to certify class action consumer protection claims because application of many state's consumer protection laws would swamp predominance).

42.     **Unjust enrichment:** Courts have refused to certify class actions alleging claims for unjust enrichment because the definition of "unjust enrichment" varies from state to state.  *See In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311-12 (S.D.N.Y. 2004) (holding unjust enrichment claim not amenable to national class certification where variations in laws of fifty different states eviscerated any common issues that may exist); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("[V]ariances exist in state common laws of unjust enrichment.  The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud."); *Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*, No. 1050926, 2010 WL 152123 (Ala. Jan. 15, 2010) (refusing to certify nationwide class action because definition of unjust enrichment among states varies); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002) (denying class certification where

US_ACTIVE:\43286768\19\72240.0639

plaintiff's claims of unjust enrichment would require application of the substantive law of many

states varies).

43.    **Breach of Implied Warranty:**[8]  Courts in this jurisdiction and others

have denied class certification upon finding that common questions of law do not predominate

where the plaintiff alleges breach of warranty, whether those warranty claims involve common

law, state statutes, or the federal Magnuson-Moss Warranty Act:

> [T]he states have diverse bodies of law on warranty . . . .  The state
> laws on these claims present different procedural and substantive
> elements, including differing requirements of privity, demand,
> scienter and reliance.  In addition, bringing the case under the
> Magnuson-Moss Act does not make uniform the plaintiffs'
> warranty claims because liability under that Act depends on state
> law which differs on issues of express and implied warranties. . . .
> Defendant's counsel presents a lengthy analysis of the diverse laws
> of the various states and has shown sufficiently that many of the
> jurisdictions have different standards and elements of proof for the
> claims of breach of express and implied warranty . . .

*Kaczmarek*, 186 F.R.D. at 313; *see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,

194 F.R.D. 484, 489-90 (D.N.J. 2000), *reconsideration denied*, No. Civ. A. 96-1814 (JBS), 2001

WL 1869820 (D.N.J. Feb. 8, 2001) (warranty "claims [arising from a recall] vary significantly

from state to state"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369

(E.D. La.), *reconsideration denied*, No. Civ. A. MDL 991, 1997 WL 191488 (E.D. La. Apr. 17,

1997) ("with respect to contract and warranty claims, the various states have different" laws);

*Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C.), *reconsideration denied*, 130 F.R.D.

---

[8] The Saturn Plaintiffs' Consolidated Amended Complaint contains several causes of action for breach of implied warranty under various states' laws.  The Debtors do not take a position at this time which, if any, of these causes of action were assumed by the Purchaser under the terms of the Purchase Agreement, as such a determination is irrelevant for purposes of whether the class certification is appropriate.

24

514 (D.D.C. 1990), *appeal dismissed*, 945 F.2d 1188 (D.C. Cir. 1991) ("numerous variations

exist among states' laws concerning the scope and application of implied warranty claims*")*.

44.    Because the Court must apply the substantive laws of all jurisdictions

from which the members of the putative class hail, and such application results in conflicting

laws, the Putative Class cannot be certified.

2.    <u>Necessity of Individual Fact Determinations Destroys Predominance</u>

45.    Courts also deny certification where "individualized issues of fact

abound." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 209 F.R.D. 323, 349

(S.D.N.Y. 2002); *see also In re Worldcom, Inc.*, 343 B.R. at 427, n.26 ("the need to evaluate

factual differences along with divergent legal issues defeats the predominance requirement under

Rule 23(b)(3)") (internal quotes and citations omitted).    Courts have specifically held that class

actions alleging motor vehicle product liability claims and seeking economic loss damages

should not be certified because individual questions of fact will predominate:

> [T]he need to establish injury and causation with respect to each
> class member will necessarily require a detailed factual inquiry
> including physical examination of each vehicle, an [sic] mind-
> boggling concept that is preclusively costly in both time and
> money. We will not certify a class that will result in an
> administrative process lasting for untold years, where individual
> threshold questions will overshadow common issues regarding
> Defendant's alleged conduct . . .. *Courts are hesitant to certify
> classes in litigation where individual use factors present
> themselves, such as cases involving allegedly defective motor
> vehicles and parts.* The administrative burdens are frequently too
> unmanageable for a class action to make sense in such cases.

*Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 449 (E.D. Pa. 2000) (emphasis added).

46.    The "preclusively costly" "administrative burdens" warned about in the

*Sanneman* case would certainly be present in this action involving "391,635 Class Vehicles."

25

(*See* Proof of Claim Attachment at 8.)  Here, the issue of whether a particular plaintiff's timing chain problems were caused by the alleged defects in the Debtors' Products would alone lead to a sharp divergence in the factual underpinnings of each claim.  Such an individualized analysis is crucial in this case because a class member cannot succeed on a product liability-based claim unless that specific class member's product has had an actual malfunction.  *See Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 159 (Ark. 2005) (plaintiff must "allege that the vehicle has actually malfunctioned").

47.    Additionally, individualized factual inquiries would need to be performed to address the issues of if, or when, "timing chain failure occurs; the causation of any such timing chain failure; whether the allegedly defective timing chain is covered by warranty; whether the allegedly defective timing chain was already repaired by MLC; whether the class member provided proper notice of the alleged breach of warranty to MLC; whether MLC and/or the consumer had knowledge of the alleged timing chain defect; whether the class member relied on MLC's alleged misrepresentations regarding the timing chain; whether such alleged misrepresentations were material; whether a class member's claims are barred by the statue of limitations or other affirmative defenses such as comparative negligence (caused by, *inter alia*, the plaintiff's failure to properly maintain the vehicle or improper use of the vehicle); and what the appropriate remedy should be for any particular class member.  This nonexclusive list provides a mere sampling of the myriad of factual differences that will "overshadow common issues."  *See Sanneman*, 191 F.R.D. at 449.  When coupled with the variations in law relevant to determining the foregoing facts, the Saturn Plaintiffs cannot meet their burden of satisfying the predominance requirement and, thus, the class fails to meet the requirements of Rule 23.

48.    Further individualized issues predominate because the Saturn Putative

Class Claim is based, in part, on misrepresentation allegations in connection with the consumer

protection claims, which raise a host of individual issues of fact that render class treatment

wholly unmanageable, including individual questions as to:  the fact of product purchase or

ownership; the differing statements; whether each class member was exposed to allegedly

deceptive statements; whether each class member purchased products as a result of such

statements; and other issues.

49.    Further, given the absence of any objective evidence of who purchased

such products or relied upon any of the Debtors' alleged misrepresentations, the Court would be

required, at the threshold, to make a series of individual credibility determinations as to who is

and is not a member of the Putative Class.  *See In re Phenylpropanolamine (PPA) Prods. Liab.

Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (motion to certify class asserting consumer fraud

claims on behalf of non-injured consumers of PPA products denied primarily because of

difficulty in determining who had even purchased products at issue).

50.    Numerous individual issues also exist as to whether any alleged

misrepresentation caused each particular class member to purchase any product, precluding class

certification.  For this reason, courts routinely reject class certification of cases claiming

violations of consumer protections statutes, breach of implied warranty, unjust enrichment and

other claims similar to those alleged here – including in cases in which plaintiffs allege a

common, class-wide product defect – because of the overwhelming number of individual issues

relating to reliance, causation, and materiality.[9]

---

[9] *See, e.g., Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1362-66 (11th Cir.) (certification of fraud class action vacated
because individual issues of reliance and causation predominated); *reh'g denied*, 35 F. App'x 859 (11th Cir.), *cert.
denied*, 537 U.S. 884 (2002); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir.), *reh'g denied*, 104

27

51.    Finally, determination of whether each class member suffered "actual injury," would require an individualized inquiry as to whether the timing chain in each particular class member's vehicle had been broken, fixed, or replaced – an inquiry that would, once again, swamp any common issues and render class treatment wholly unmanageable.

### C.    The Saturn Plaintiffs Cannot Establish that a Class Action Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating this Controversy

52.    In addition to the requirement that common questions of law or fact must predominate over individual issues, the Saturn Plaintiffs must also establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Given the vast number of individual variations of law and fact that would be involved with allowing this case to proceed as a nationwide class action, the action would be unmanageable as a single trial.  The issue of the Debtors' liability would have to be litigated in thousands of trials which, even if logistically feasible, would violate the constitutional mandate that "entitles parties to have fact issues decided by one jury, and prohibits a second jury from

---

F.3d 373 (11th Cir. 1996) (same); *Castano*, 84 F.3d at 737, 745 (denying certification in action where claims included "violation of state consumer protection statutes" and "disgorge[ment]" of profits, holding that class action "cannot be certified when individual reliance will be an issue"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 68-69 (individual issues would predominate on a claim for restitution of purchase price arising from alleged undisclosed product dangers); *Chin*, 182 F.R.D. at 455-57 (denying class certification in case asserting latent product defect in light of many individual issues of fact, including ascertainable injury, causation, reliance and privity); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. at 372-75 (same); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. at 342-44 (same); *Truckway, Inc. v. Gen. Elec.*, No. Civ. A. 91-0122, 1992 WL 70575, at *5, *7 (E.D. Pa. Mar. 30, 1992) (individual issues predominated in state consumer fraud action "[b]ecause not all members of the class would have relied on the alleged fraudulent material omissions and misrepresentation . . . and because a determination of whether each member of the class was defrauded . . . would require each class member to individually prove the issue of reliance and fraud on a case by case basis"). *See also Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 n.3 (S.D. Ind. 1995) ("The necessity of proving reliance by each class member upon the alleged fraudulent misrepresentations causes individual issues to predominate."); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, No. Civ. A. 89-2181-V, 1992 WL 193661, at *5 (D. Kan. July 15, 1992) ("individual issues of causation and reliance as to each class member would predominate over the common issues of liability"); *Strain v. Nutri/System, Inc.*, No. Civ. A 90-2772, 1990 WL 209325, at *6 (E.D. Pa. Dec. 12, 1990) (class certification denied where "each class member [would have] to narrate a story which includes individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of those advertisements").

US_ACTIVE:\43286768\19\72240.0639

reexamining those facts and issues." *Castano*, 84 F.3d at 750 (denying certification for lack of

superiority); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir.), *cert.*

*denied*, 516 U.S. 867 (1995) (same); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,

170 F.R.D. 417, 427 (E.D. La. 1997) (same). Given that a class action is not manageable in this

case, it is not superior to other available methods for fairly and efficiently adjudicating the

controversy, and thus the Putative Class cannot meet the requirements of Rule 23.

> **D.** **Neither "Commonality" nor "Typicality" Can Be Established by the Saturn Plaintiffs**

53.    To proceed as a class claim, Rule 23(a)(2) and Rule 23(a)(3) require that

the putative class representative also demonstrate commonality and typicality. To establish

typicality, plaintiffs must show that they are situated similarly to class members.[10] The Court

cannot "presume" that plaintiffs' claims are typical of other claims. *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 158, 160 (1982) ("actual, not presumed, conformance with Rule 23(a)

remains, however, indispensable").

54.    The Saturn Plaintiffs' claims are not typical of those alleged on behalf of

any of their respective putative classes. Each Saturn Plaintiff's claim allegedly arises from

certain of the Debtors' Products that the Saturn Plaintiffs claim to have purchased and operated,

allegedly in reliance upon defendants alleged misrepresentations as to the standard and quality of

the timing chains and oiling nozzles in such vehicles. Yet, the putative class would include

plaintiffs who followed differing maintenance programs, operated their vehicles differently, and

---

[10] *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (typicality "requires that the claims of the class representative be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each member makes similar arguments to prove the defendant's liability'") (quoting *In re Drexel*, 960 F.2d at 291); *see, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class").

US_ACTIVE:\43286768\19\72240.0639

purchased vehicles under a variety of factual circumstances. *See, e.g.*, *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir.) (typicality defeated by plaintiff's broad definition of class as all individuals who signed similar automobile lease agreements), *cert. denied,* 510 U.S. 959 (1993).

### E.    The Saturn Plaintiffs Are Not Adequate Representatives

55.    To establish that it will adequately represent the proposed class, the Saturn Plaintiffs must have common interests with the unnamed members of the class, and it must appear that the Saturn Plaintiffs will vigorously prosecute the interests of the class through qualified counsel. *See, e.g.*, *Edwards v. McCormick*, 196 F.R.D. 487, 495 (S.D. Ohio 2000). However, without evidence of who actually would comprise the class, a court cannot evaluate whether the Saturn Plaintiffs have a common interest with the unnamed class members, and any determination of adequate representation would be purely speculative. *Edwards*, 196 F.R.D. at 495. Furthermore, the required elements that the plaintiffs have "claims or defenses typical of the class" and that they can "adequately represent and protect the interests of other members of the class" are intertwined: "to be an adequate representative, plaintiff must show that his claims are typical of the claims of the class." *See, e.g., Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 669 (1993) ("[T]o be an adequate representative, plaintiff must show that his claims are typical of the claims of the class.") (quoting *Stephens v. Montgomery Ward*, 193 Cal. App. 3d 411, 422 (1987)). As described above, there can be no "typical" plaintiff and thus no adequate representative for any of the Putative Class.

56.    Moreover, the burden to move expeditiously for class certification and recognition within a bankruptcy proceeding, in compliance with Rule 23(c)(1), falls on the class representative and "the class representative's failure to move for class certification is a strong

30

indication that he will not fairly and adequately represent the interests of the class." *In re Woodward*, 205 B.R. at 370. As the Saturn Putative Class Claim fails to meet the requirements of Rule 23, the Court should not allow it to proceed as a class claim and it should be disallowed.

### F.    The Putative Class Is Not Sufficiently Ascertainable

57.    The Saturn Plaintiffs propose in the Consolidated Amended Complaint to certify the following class: "all persons who purchased the Class Vehicles in the Class States whose timing chain has failed (the Class)." Excluded from the Putative Class are the recalled vehicles, defendants, any entity that has a controlling interest in defendants, and defendants' current or former directors or officers."[11] (Consol. Am. Compl. ¶¶ 1, 137.)

> As explained by one court:
>
> The class description must be sufficiently definite to permit the ascertainment of class members, and the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf. Proper identification of the proposed class serves two purposes. First, it alerts the court and parties to the potential burdens class certification may entail. In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket. Second, proper class identification insures that those individuals actually harmed by the defendant's wrongful conduct will be the recipients of the awarded relief.

*See Oshana v. Coca Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (citations omitted) *aff'd*, 472 F.3d 506 (7th Cir. 2006), *cert. denied*, 551 U.S. 1115 (2007). The ascertainability requirement is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant. *Van W. v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001). Further,

---

[11] The "Class States" include 45 of the 50 states plus the District of Columbia. (Consol. Am. Compl. ¶ 1.)

"if a court must come to numerous conclusions regarding class membership or adjudicate the underlying issues on behalf of each class member, then a proper class cannot be defined concisely." *Edwards,* 196 F.R.D. at 493.  In other words, a class definition fails if (1) it is overinclusive by including many persons without claims, or (2) it is not administratively feasible to identify the putative class members.  *Id.*; *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006), *cert. denied*, 551 U.S. 1115 (2007); *Bachrach v. Chase Inv. Servs. Corp.*, No. 06-2785 (WJM), 2007 WL 3244186, at *2 (D.N.J. Nov. 1, 2007) ("Courts may deny certification where the proposed class includes many members without claims."); *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 404-05 (E.D. Pa. 1995); *Commander Props. Corp. v. Beach Aircraft Corp.*, 164 F.R.D. 529, 539 (D. Kan. 1995).

  1. <u>The Class Definition Is Overinclusive</u>

  58. The class definition here is overinclusive because it includes numerous persons without a viable claim against the Debtors.  The Consolidated Amended Complaint specifically alleges that the Debtors repaired (under warranty are free of charge) over 2,000 class vehicles that experienced a broken timing chain.  (*See* Consol. Am. Compl. ¶ 127.)  The Saturn Plaintiffs' proposed class definition nonetheless includes such individuals in the Putative Class.  However, owners of these vehicles have no claim against the Debtors' since the timing chain was already repaired free of charge for those owners.[12]  In the warranty manual, the remedy for breach of any implied warranty was limited to repair or replacement of the defective part, and the Saturn Plaintiffs' allegations confirm this remedy was provided.  *See, e.g., Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 892 (E.D. Pa. 1996) (limitation of remedy to performance of

---

[12] Even if such persons had a claim, which Debtors deny, any claim they might assert is certainly different than the claims of a person whose vehicle experienced a broken timing chain that was not repaired under warranty.

US_ACTIVE:\43286768\19\72240.0639

repairs and needed adjustments is enforceable); *Lara v. Hyundai Motor Am.*, 770 N.E.2d 721,

728-29 (Ill. App. Ct. 2002) (same); *see also* U.C.C. § 2.719(a)(1) (buyer's remedy can be limited

to "repair and replacement of non-conforming goods or parts").  Accordingly, these putative

class members suffered no loss or damage with respect to a timing chain repair, and therefore,

have no claim under any consumer protection act.  *See, e.g., Thiedemann v. Mercedes-Benz USA,

LLC*, 872 A.2d 783, 796 (N.J. 2005) (holding that there is no loss to consumer when defect "is

addressed by the manufacturer or dealer at no cost to the purchaser pursuant to a warranty

program").  Since the proposed class definition includes numerous class members who could not

state a viable claim, the definition is overbroad and the class allegations should be dismissed.

*See Bachrach*, 2007 WL 3244186, at *2 ("Courts may deny certification where the proposed

class includes many members without claims.").

       2.     <u>It Is Not Administratively Feasible to Identify Class Members</u>

       59.     Inherent in Rule 23 is the requirement that a proposed class be identifiable

or ascertainable.  *See In re MTBE Prods. Liab. Litig.*, 209 F.R.D. at 336-37.  In other words, if

class members cannot be identified in a reasonable and administratively feasible manner, then

the class definition fails.  *See, e.g., id.*; *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980);

*Commander Props.,* 164 F.R.D. at 541 (identification of class members presented serious

management problems precluding certification); *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 455

(Tex. 2000) (individual inquiry to determine membership in the class defeats any benefit of a

class action).  Here, there is no reasonable process to identify persons who, at the time they

owned a class vehicle (which number over 391,000), experienced a timing chain failure, and

therefore, the Saturn Putative Class Claim should be disallowed.  *See In re Vioxx Prods. Liab.

Litig.*, No. 05-1657, 2008 WL 4681368, at *9-10 (E.D. La. Oct. 21, 2008), *aff'd,* 300 F. App'x

33

261 (5th Cir. 2008); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); *Barasich v. Shell Pipeline Co.*, No. Civ. A. 05-4180, 2008 WL 6468611 at *4 (E.D. La. June 19, 2008).

60.    The allegations of the Consolidated Amended Complaint make clear that only potential class members who can reasonable be identified are persons who either (i) complained to the Debtors or NHTSA about a timing chain problem, or (ii) obtained a warranty repair for a timing chain issue.[13]   (*See* Consol. Am. Compl. ¶¶ 126-131.)  The Saturn Plaintiffs pled that numerous repairs were made after the expiration of the three year, 36,000 mile warranty, or were made at independent service facilities.  (*See id.* ¶ 128 ("[T]he foregoing 2,203 class vehicles which suffered broken timing chains do not include class vehicles in which timing chains broke either after the warranty expired and/or the repair work was done at a dealership or facility other than a Saturn dealership").)  No data base exists anywhere that has information with respect to all 391,000 vehicles concerning these repairs, such as when they were made, which vehicles where involved, what was the claimed cost, and certainly the identity of the owners of such vehicles at the time of any repair.

61.    Given the above, there is no administratively feasible method to identify, out of the 391,635 putative class vehicles,[14] (1) which particular vehicle had a timing chain repair and (2) who owned the vehicle at the time of repair.  For example, even if inquiry was made of all current owners of the 391,000 vehicles involved (which in of itself is not reasonable), individualized proof would be required to establish that the timing chain failed and/or that a repair was made.  Moreover, current owners who purchased the vehicle "used" would likely have

---

[13] Of course, for the reasons set forth above, persons who obtained warranty repairs cannot properly be included in the class in any case since they have no viable claims.

[14] The Saturn Plaintiffs allege there are 412,149 Class Vehicles, but exclude owners of the 20,514 vehicles subject to recall from the class.  (*See* Consol. Am. Compl. ¶¶ 118, 126, 137.)

US_ACTIVE:\43286768\19\72240.0639

no knowledge of repairs performed prior to their ownership.  Further complicating the issue,

some undetermined number of vehicles that were purchased in states not included in the "Class

States" would have to be identified and excluded.  As a result, there is no administratively

feasible method to identify putative class members since determining whether an individual is in

the putative class would require extensive individual fact findings.  Therefore, the proposed class

definition is unworkable.

> 62.     As noted in *Marlow v. American Suzuki Motor Corp.*:
>
> We can understand that discovery procedures might ascertain the existence of those who had filed suit or had made claims against American Suzuki, but the identification of those who had suffered injury but have not yet made claims is quite another matter. Obviously, notice to all class members 'who were injured during the operation of or while a passenger in a Suzuki Samurai automobile . . . due to manufacturing or design defects' in the Samurai would be, to understate, a monumental task.

584 N.E.2d 345, 352-53 (Ill. App. Ct. 1991).  The same "monumental task" would be involved in

this case based on the proposed class definition, and therefore, the Saturn Putative Class Claim

should be expunged.

## III.     Notice

> 63.     Notice of this Motion has been provided to the Saturn Plaintiffs and to the

parties in interest in accordance with the Fourth Amended Order Pursuant to 11 U.S.C. § 105(a)

and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures,

dated August 24, 2010 [ECF No. 6750].  The Debtors submit that such notice is sufficient and no

other or further notice need be provided.

> 64.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

35

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.[15]

Dated: New York, New York
          December 17, 2010

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

---

[15] Should the Court find it appropriate to permit the Saturn Putative Class Claim to proceed as a class claim in whole or in part, the Debtors reserve their rights to request that an expedited procedure be established in this Court to quickly liquidate such claim and an expedited hearing to estimate the Saturn Putative Class Claim pursuant to section 502(c) of the Bankruptcy Code. *See* 11 U.S.C. § 502(c) ("There **shall** be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case…") (emphasis added); *see also In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993); *In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992). Further, should an estimation proceeding go forward, the Saturn Plaintiffs should be required to provide substantial documentation in support of the alleged nature of their $334,847,925 claim.

36