**Exhibit B**

**Proof of Claim No. 16441**

7000730

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| Name of Debtor (Check Only One) | Case No |
|---|---|
| ☑ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 13-13558 (REG) |

**Your Claim is Scheduled As Follows.**

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property) IN RE SATURN L-SERIES TIMING CHAIN LITIGATION MDL NO  1920

Name and address where notices should be sent
IN RE SATURN L-SERIES TIMING CHAIN LITIGATION MDL NO
C/O MICHAEL A SCHWARTZ, ESQ
HORWITZ, HORWITZ & PARADIS, ATTORNEYS AT LAW
405 LEXINGTON AVE, 61ST FLOOR
NEW YORK NY 10174

Telephone number  212-986-4500
Email Address  mschwartz@hhplawny.com

☐ Check this box to indicate that this 1920 claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

OCT 26 2009 — THE GARDEN CITY GROUP INC.

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown  (This scheduled amount  of your claim may be  an amendment to a previously scheduled amount )  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form  EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED  UNLIQUIDATED, or CONTINGENT  a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

Name and address where payment should be sent (if different from above)

**FILED - 16441**
**MOTORS LIQUIDATION COMPANY**
**F/K/A GENERAL MOTORS CORP**
**SDNY # 09-50026 (REG)**

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**1  Amount of Claim as of Date Case Filed, June 1, 2009**                    **$334,847,925**

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim**      **See Attachment hereto**
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor** _____
**3a  Debtor may have scheduled account as** _____
(See instruction #3a on reverse side )

**4  Secured Claim (See instruction #4 on reverse side )**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff    ☐ Real Estate    ☐ Motor Vehicle    ☐ Equipment    ☐ Other
Describe

Value of Property  $_____  Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection _____

Amount of Secured Claim  $_____      Amount Unsecured  $_____

**5.  Amount of Claim Entitled to Priority under 11 U S C § 507(a)**  If any  portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)
**Amount entitled to priority**

**6  Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date: 10-21-09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any  Co-lead Counsel for Class | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (CGG) (12/08)



7043271046

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS **IF BY MAIL** THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P O BOX 9386, DUBLIN, OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP, INC , ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY SUITE A, DUBLIN, OH 43017 PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN ROOM 534, NEW YORK, NEW YORK 10004 ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned services performed personal injury/wrongful death, car loan, mortgage note and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS, below ) State the type and the value of property that secures the claim, attach copies of lien documentation and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below ) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below) Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the claim

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any, of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of this form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

| DEFINITIONS | INFORMATION |
|---|---|

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

Motors Liquidation Company
(f/k/a General Motors Corporation)          09-50026 (REG)
MLCS, LLC
(f/k/a Saturn, LLC)          09-50027 (REG)
MLCS Distribution Corporation
(f/k/a Saturn Distribution Corporation)          09-50028 (REG)
MLC of Harlem, Inc
(f/k/a Chevrolet-Saturn of Harlem  Inc )          09-13558 (REG)

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted certain information A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re ) | Chapter 11 Case No |
| ) | |
| MOTORS LIQUIDATION COMPANY ) | |
| f/k/a GENERAL MOTORS CORPORATION, ) | 09-50026 (REG) |
| *et al*, ) | |
| ) | |
| Debtors ) | |

**PROOF OF CLAIM ATTACHMENT –**
**IN RE SATURN L-SERIES TIMING CHAIN LITIGATION- MDL NO. 1920**

2.    **Basis for Claim:**

A.    **Background**

On August 6, 2007, plaintiff Amy Faust filed a Class Action Complaint in the

United States District Court for the District of Nebraska, *Amy Faust v General Motors*

*Corp, et al*, C A No 8 07-298, naming as defendants General Motors Corporation and

Saturn Corporation and alleging that Defendants manufactured and sold or leased certain

defectively designed Saturn L-Series vehicles (the "*Faust* Action")

Pursuant to Transfer Order dated February 19, 2008, the Judicial Panel on

Multidistrict Litigation, pursuant to 28 U S C  § 1407, transferred to the District of

Nebraska *Linda S Marchetta v General Motors Corp, et al*, C A No 1 07-5362 (the

"*Marchetta* Action") and *William P Anderson v Saturn Corp*, C A No 1 07-6213 (the

"*Anderson* Action"), to be assigned to the Honorable Laurie Smith Camp for coordinated

or consolidated pretrial proceedings with the *Faust* Action *See In Re Saturn L-Series*

*Timing Chain Products Liability Litigation,* 536 F Supp 2d 1367 (MDL 2008) (Exh A hereto )

Pursuant to Orders dated March 28, 2008, the United States District Court for the District of Nebraska, *inter alia,* consolidated the *Faust, Marchetta and Anderson* Actions under the caption *In re Saturn L-Series Timing Chain Products Liability Litigation*, MDL No. 1920, 8 07 CV 298, and appointed Horwitz, Horwitz & Paradis and Shepherd Finkelman Miller & Shah, LLC as co-lead counsel  (Exhs B and C hereto )

On June 11, 2008, Plaintiffs filed their Consolidated Amended Complaint alleging that Defendants General Motors Corporation and Saturn Corporation defectively designed and sold or leased to the Class the following "Class Vehicles"  (i) model year 2000 - 2003 Saturn L-Series, (ii) model year 2002 - 2003 Saturn Vue, or (iii) model year 2003 Saturn Ion, each equipped with a 2 2 Liter, 4-cylinder, 137-horsepower dual-overhead-cam, Ecotec L61 Engine (the "2 2L Ecotec L61 Engine") and a GM production part number 90537338 steel timing chain (the "Timing Chain") and a GM production part number 90537476 Timing Chain oiling nozzle (the "Oiling Nozzle") (collectively, the "Class Vehicles") in the states of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia (collectively, the "Class

States"), and whose Timing Chain has failed (the "Class")    (Consolidated Amended Complaint annexed hereto as Exh D )

On July 14, 2008, Defendants General Motors Corporation and Saturn Corporation moved to dismiss the Plaintiffs' Consolidated Amended Complaint

On November 7, 2008, the United States District Court for the District of Nebraska issued a Memorandum and Order upholding the vast majority of the claims assert in the Consolidated Amended Complaint. *See In Re Saturn L-Series Timing Chain Products Liability Litigation*, 2008 U S Dist LEXIS 109978 (D Neb November 7, 2008) (Exh E)

### B.    Basis for the Claim

Plaintiffs allege that the Class Vehicles are equipped with a 2 2L Ecotec L61 Engine, and each of these engines included two important smaller parts  a steel Timing Chain classified as GM production part number 90537338, and a Timing Chain Oiling Nozzle classified as GM production part 90537476  (*See* Exhs D and E )

The Plaintiffs claim that the engines in their Saturn Class Vehicles were defectively de-signed in two ways  The first alleged defect was in the design of the Timing Chain  A timing chain synchronizes the motion of an engine's pistons with the motion of the engine's valves  For a car engine to run efficiently, valves regulating the intake of fuel and expulsion of exhaust at one end of an engine's cylinders must open and close at precise intervals in relation to the pistons' movement up and down from the opposite end of the cylinders  The timing chain connects a gear at the piston end of the cylinders to another gear at the valve end of the cylinders so that the movements of the pistons and valves are linked  A malfunctioning timing chain can cause an engine to run

inefficiently or stop running altogether. A timing chain that breaks completely can cause extensive damage to the engine  (*Id*)

Saturn changed the design of the timing chain used in its automobiles beginning in model year 1999, one year prior to the manufacture of the earliest Class Vehicles  In an effort to reduce engine noise in comparison with earlier Saturn models, Saturn switched to a finer timing chain composed of smaller links and smaller pins connecting those links  The finer timing chain was weaker than the one Saturn previously designed because the smaller pins on the new timing chain were not coated with enough chrome to withstand normal wear and tear, *i e*, they were insufficiently "chromized"  This redesigned finer timing chain was substantially the same as the chain used in Class Vehicles engines

The second defect in the Class Vehicle engines was in the design of the Timing Chain's Oiling Nozzle  An oiling nozzle distributes engine oil from a car's oil pump onto the timing chain while the engine is running  Lubrication of the timing chain reduces friction, and reduced friction means increased engine efficiency  Keeping friction low also keeps the temperature of the steel in the timing chain low  This is important because an overheated timing chain is more likely to bend, stretch, or become brittle, which can cause the chain to malfunction or break

The Oiling Nozzles in the Saturn Class Vehicles were designed with a feature known as a pintle valve  A pintle valve prevents oil from flowing from the oiling nozzle to the timing chain when a car runs at low or idle speeds   A consequence of the pintle valve design in the Saturn Class Vehicles was that an insufficient amount of oil lubricated the timing chain, causing the Timing Chains in the Class Vehicles to become brittle and snap  (*Id*)

These two design defects -- a weak and insufficiently chromized Timing Chain, plus an insufficiently lubricating Oiling Nozzle -- caused the Timing Chains in the Plaintiffs' Class Vehicles to overheat, bend, stretch, and/or become brittle, and eventually break and damage Class members' Class Vehicles    Plaintiffs incurred repair costs ranging from $900 to $3,700 each  One Plaintiff's engine was damaged beyond repair  No Plaintiff brought a claim for personal injury  (*Id*)

Defendants knew at the outset of production of the Class Vehicles that both the Timing Chain and Oiling Nozzle in the 2 2L Ecotec L61 Engine installed in the Saturn Class Vehicles were defectively designed and knowingly sacrificed strength in the Timing Chain design in their Class Vehicles  (*Id*)

During the mid-1990s, the National Highway Traffic Safety Administration ("NHTSA") fielded a number of complaints about timing chain failures in Saturn vehicles  In June of 1997, in response to these complaints, the Defendants issued a Technical Service Bulletin to Saturn dealerships that included instructions to Saturn mechanics for repairing broken timing chains  Whenever they replaced a timing chain on a model year 1991-1996 Saturn car, the mechanics were instructed to make an alteration to the engine's oil pump in order to lubricate the newly installed timing chain with a constant flow of oil  This Technical Service Bulletin demonstrates Defendants' knowledge, at least as early as June 1997, that an engine must be designed to provide a constant flow of oil to its timing chain    In addition, Defendants had actual knowledge of the alleged design defects in the Class Vehicle engines once they were released into the stream of commerce, and the Defendants deceptively concealed this information  (*Id*)

The existence of this defect has been confirmed by the investigation of the Office of Defects Investigation ("ODI") of the United States' Department of Transportation's National Highway Traffic Safety Administration ("NHTSA")  Cplt at ¶ 88  Beginning in the year 2000, NHTSA and various consumer groups began to field complaints about Timing Chain failures in Class Vehicles  In late 2001 or early 2002, the Defendants redesigned Saturn's timing chain for a second time and also made a change to the Oiling Nozzle design  A year later, in June 2003, the Defendants issued a Technical Service Bulletin instructing Saturn mechanics who encountered broken Timing Chains on Class Vehicles to replace both the old Timing Chain and Oiling Nozzle with newer versions  No public recall was issued  (*Id* )

In February 2006, in response to the complaint of a consumer advocacy group, NHTSA initiated an investigation into Timing Chain failures in model year 2000-2003 Saturn L-Series and 2003 Saturn Ion vehicles  In correspondence with NHTSA in April 2006, GM acknowledged that it received more than one thousand consumer or field reports of broken or replaced Timing Chains and over 2,200 warranty claims involving broken Timing Chains in model year 2000-2003 Saturn L-Series cars  GM also admitted that the Defendants had been aware of potential problems in the engines of L-Series Class Vehicles shortly after the first model year 2000 cars were assembled in 1999  GM stated that in 2001 it began a specific investigation of broken Timing Chains, and, in August 2002, it released new versions of the timing chain and oiling nozzle  The newer timing chain featured higher-chromized pins -- approximately 35 perecent more chrome was used -- and the new oiling nozzle design eliminated the pintle valve

GM, however, wrongfully asserted to NHTSA that Timing Chain failures in Saturn L-Series Class Vehicles was most frequent in cars manufactured during a four-month window between November 2000 and February 2001 (NHTSA later pointed out that over one-third of Timing Chain failure claims arose from this group of cars, which constituted only 5 percent of the vehicles under investigation) GM further wrongfully asserted that its analysis showed the majority of Timing Chain failures occurred during high chain load situations like engine startup rather than times when the vehicles were moving at higher speeds (*Id*)

NHTSA disagreed with GM's second conclusion GM's own data showed a higher percentage of Timing Chain failures while Saturn cars were driven at higher speeds So, in June 2006, NHTSA upgraded its investigation of the Saturn Timing Chain failures to its highest level of scrutiny, an Engineering Analysis, but only for those L-Series vehicles produced within the four-month window (*Id*)

GM issued a voluntary Safety Recall in December 2007 for all Saturn L-Series cars manufactured during the four-month window from November 2000 to February 2001 GM offered to replace all Timing Chains and Oiling Nozzles in these vehicles and also to reimburse costs of prior repairs to owners whose Timing Chains had malfunctioned In anticipation of this recall, NHTSA discontinued its investigation

GM's Safety Recall, however, was woefully insufficient, since it included only 20,514 of an estimated 412,149 Saturn vehicles featuring the 2 2L Ecotec L61 Engine and including GM production part number 90537338 (the weaker and insufficiently chromized Timing Chain) and GM production part 90537476 (the Oiling Nozzle designed with the pintle valve) Indeed, while vehicles manufactured within this four-

month window suffered Timing Chain failures at high rates, the warranty data demonstrates that thousands of other L-Series, Vue, and ION Class Vehicles not covered by GM's recall saw their Timing Chains fail   (Id)

### C.    Damages

GM's Safety Recall included only 20,514 of an estimated 412,149 defectively designed Class Vehicles sold or leased to Class members  This limited recall has left, by GM's own estimate, the owners of 391,635 Class Vehicles to  (a) bear the cost of replacing the Timing Chain before it breaks, at a cost of anywhere from $600 to $900, or (b) bear the expense of the repairs to their Class Vehicles when the Timing Chains break, more often than not, causing thousands of dollars in damages to the Class Vehicles  (See Complaint, ¶¶ 116-120 )

Class members have been damaged in the amount of **$334,847,925** based on the following analysis  (a) the cost of replacing the Timing Chains in the Class Vehicles is **$293,726,250** (using an average repair cost of $750 multiplied by 391,635 Class Vehicles not covered by GM's limited recall), and (b) 27,414 Class members have incurred **$41,121,675** in damages to their engines (applying NHTSA's failure rates of 7% (Complaint, ¶¶ 113-114) multiplied by 391,635 Class Vehicles multiplied by an average estimated repair cost of $1,500 per Class Vehicle)  (Complaint, ¶¶ 113-114 )

Defendants have admitted that GM produced the following number of Class Vehicles

| Make/Model | Model Year | 2000 | 2001 | 2002 | 2003 | Total |
|---|---|---|---|---|---|---|
| Saturn L-Series | | 53,255 | 60,892 | 70,984 | 58,393 | 243,504 |
| Saturn Vue | | N/A | N/A | 13,083 | 59,250 | 72,333 |
| Saturn ION | | N/A | N/A | N/A | 96,312 | 96,312 |

| | | | | | |
|---|---|---|---|---|---|
| TOTALS | 53,255 | 60,892 | 84,067 | 213,955 | 412,149 |

(Complaint, ¶¶ 125-130 )

Defendants have further admitted that, according to their own warranty records, they received warranty (three years or 36,000 miles, whichever comes first) and extended warranty claims (optional coverage available at time of purchase) relating to broken Timing Chains on 2,203 of the Class Vehicles, as follows

| Make/Model/Model Year | 2000 | 2001 | 2002 | 2003 | Total |
|---|---|---|---|---|---|
| Saturn L-Series | 392 | 926 | 315 | 17 | 1650 |
| Saturn Vue | N/A | N/A | 97 | 334 | 431 |
| Saturn ION | N/A | N/A | N/A | 122 | 122 |
| TOTALS | 392 | 926 | 412 | 473 | 2,203 |

The foregoing 2,203 Class Vehicles which suffered broken Timing Chains do not include Class Vehicles in which Timing Chains broke either after the warranty expired and/or the repair work was done at a dealership or facility other than a Saturn dealership

Moreover, since many Timing Chains have broken after 36,000 miles, there are thousands more Class Vehicles which experienced broken Timing Chains that are not included in GM's warranty data  Indeed, according to NHTSA

> GM's statistical modeling of the failure data initially concluded that the failure rates were declining with age and mileage for any set of Warranty Data analyze (e g stall while driving, other or combined)  **However, subsequent analysis showed that the timing failure rates are increasing.**  Based on the high complaint and warranty rates for timing chain failure in the 4-month production period for the Model Year 2001 L-Series Vehicles, an Engineering Analysis has been opened to further assess the frequency of stall incidents due to timing chain failures in those Vehicles

Complaint, ¶ 114

Finally, since the limited recall applies to only 20,514 model year 2001 L-Series Class Vehicles manufactured between November 2000 and February 2001, according to GM's own production numbers, there are an additional 391,635 Class Vehicles with defective Timing Chains and Oiling Nozzles that are not covered by the recall

This is further borne out by the thousands of consumer complaints received by NHTSA and other consumer websites which demonstrate broken Timing Chains across all of the Class Vehicle models and model years  This also demonstrates that defective Class Vehicles were manufactured by Defendants outside the four month period identified subject to the recall



 LexisNexis·

3 of 3 DOCUMENTS

## IN RE: SATURN L-SERIES TIMING CHAIN PRODUCTS LIABILITY LITIGATION

## MDL No. 1920

## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### 536 F. Supp. 2d 1367; 2008 U.S. Dist. LEXIS 15362

### February 19, 2008, Filed

**COUNSEL:** For Amy Faust, Plaintiff Pamela A Car, William L Reinbrecht, CAR, REINBRECHT LAW FIRM, Omaha, NE, Richard J Doherty, James M Smith, PRO HAC VICE, HORWITZ, HORWITZ LAW FIRM - CHICAGO, Chicago, IL, Joel G MacMull, PRO HAC VICE, Paul O. Paradis, PRO HAC VICE, Michael A Schwartz, PRO HAC VICE, Gina M Tufaro, PRO HAC VICE, HORWITZ, HORWITZ LAW FIRM - NEW YORK, New York, NY, Brant C Martin, WICK, PHILLIPS LAW FIRM, Dallas, TX, James E Miller, PRO HAC VICE, SHEPHERD FINKELMAN LAW FIRM, Chester, CT

For General Motors, Saturn, Defendants Rodney M Confer, Jocelyn W Golden, KNUDSEN, BERKHEIMER LAW FIRM, Lincoln, NE, Timothy A Daniels, PRO HAC VICE, A Erin Dwyer, PRO HAC VICE, Amanda Sotak, PRO HAC VICE, FIGARI, DAVENPORT LAW FIRM, Dallas, TX

**JUDGES:** [**1] John G Heyburn II, Chairman

**OPINION BY:** John G Heyburn II

**OPINION**

### [*1367] TRANSFER ORDER

**Before the entire Panel:** Plaintiff in an action pending in the District of Nebraska has moved, pursuant to *28 USC § 1407*, to centralize this litigation in that district No responding party opposes centralization, although defendants General Motors Corp and Saturn Corp are neutral as to a transferee district.

This litigation currently consists of three actions, two actions in the Northern District of Illinois and the action in the District of Nebraska, as listed on Schedule A

[*1368] After considering the argument of counsel, we find that these three actions involve common questions of fact, and that centralization under *Section 1407* in the District of Nebraska will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation All of these actions arise from allegations that certain Saturn vehicles have defective metal timing chains and oiler nozzles (a mechanism that is supposed to lubricate the timing chain) Centraliza-

536 F Supp 2d 1367, *, 2008 U S Dist LEXIS 15362, **

tion under *Section 1407* will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel [**2] and the judiciary

We are persuaded that the District of Nebraska is an appropriate transferee district for pretrial proceedings in this litigation, because the first-filed action was brought there and it is movant's unopposed choice

IT IS THEREFORE ORDERED that, pursuant to *28 U S C § 1407*, the two actions listed on Schedule A and pending outside the District of Nebraska are transferred to the District of Nebraska and, with the consent of that court, assigned to the Honorable Laurie Smith Camp for coordinated or consolidated pretrial proceedings with the action pending in that district and listed on Schedule A

PANEL       ON       MULTIDISTRICT LITIGATION

/s/ John G Heyburn II

John G Heyburn II

Chairman

## SCHEDULE A

*Northern District of Illinois*

Linda S Marchetta v. General Motors Corp , et al , C A No 1 07-5362

William P Anderson v Saturn Corp , C A No 1 07-6213

*District of Nebraska*

Amy Faust v General Motors Corp , et al , C A No 8 07-298

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMY FAUST, on behalf of herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **8:07CV298** |
| vs. | ) | |
| | ) | **CONSOLIDATION ORDER** |
| GENERAL MOTORS CORPORATION and SATURN CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| LINDA S. MARCHETTA, on behalf of herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **8:08CV78** |
| vs. | ) | |
| | ) | **CONSOLIDATION ORDER** |
| GENERAL MOTORS CORPORATION and SATURN CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| AMY FAUST, on behalf of herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **8:08CV79** |
| vs. | ) | |
| | ) | **CONSOLIDATION ORDER** |
| GENERAL MOTORS CORPORATION and SATURN CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

Upon review of the parties' Joint Status Conference Hearing Report [53], and following a

telephone conference with counsel on March 28, 2008,

**IT IS ORDERED:**

1    The stay ordered on November 30, 2007 in Case No 8·07CV298 is hereby vacated.

2    Cases Nos 8·07CV298, 8·08CV78 and 8 08CV79 are hereby consolidated for discovery, trial, and all other purposes  The cases will be tried to a jury in Omaha, Nebraska.

3    Case No 8 07CV298 is hereby designated as the "Lead Case " Cases Nos 8 08CV78 and 8 08CV79 are hereby designated as the "Member Cases " All future papers filed in this action shall bear the following caption.

| In Re Saturn L-Series Timing Chain Products | ) | MDL No. 1920 |
| Liability Litigation | ) | 8:07CV298 |

The Clerk shall so amend the caption in Case No 8 07CV298

3    The court's CM/ECF System now has the capacity for "spreading" text among the consolidated cases  If properly docketed, the documents filed in the Lead Case will automatically be filed in all Member Cases  To this end, the parties are instructed to file all further documents (except those described in paragraph 4) in the Lead Case, No 8·07CV298, and to select the option "yes" in response to the System's question whether to spread the text.

4    Counsel are advised that the spread text feature **may not** be used to file complaints, amended complaints, and answers, to pay filing fees electronically using pay.gov, or to file items related to service of process

5    If a party believes that an item in addition to those described in paragraph 4 should not be filed in all the consolidated cases, the party must move for permission to file the item in one or more member cases  The motion must be filed in all the consolidated cases using the spread text feature

**DATED March 28, 2008.**

**BY THE COURT:**

s/ F.A. Gossett
**United States Magistrate Judge**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

IN RE SATURN L-SERIES TIMING CHAIN     )           MDL No. 1920

                                       )

PRODUCTS LIABILITY LITIGATION         )           8:07CV298

## SCHEDULING ORDER

Upon the consolidation of Cases Nos  8·07CV298, 8.08CV78 and 8·08CV79,

**IT IS ORDERED:**

1    By agreement of the parties, the firm of **Car & Reinbrecht, PC** is hereby appointed as Liaison Counsel for plaintiffs and the Class  The firms of **Horwitz, Horwitz & Paradis**, Attorneys at Law, and **Shepherd Finkelman Miller & Shah, LLC** are hereby appointed Co-Lead Counsel for plaintiffs and the Class

2.   Pursuant to the parties' agreement, plaintiffs Marchetta and Anderson shall voluntarily dismiss their actions pending in the Northern District of Illinois without prejudice.

3    Plaintiffs and other individuals shall file their Consolidated Amended Complaint no later than **May 12, 2008**

     a.   Defendants shall respond to the Consolidated Amended Complaint no later than **June 11, 2008.**

     b   Any opposition to any Motion to Dismiss shall be filed no later than **July 11, 2008.**

     c   Defendants' reply brief in further support of any Motion to Dismiss shall be filed no later than **July 28, 2008.**

4.   The parties shall exchange initial disclosures pursuant to Fed R Civ. P. 26(a)(1) within fourteen (14) days of the filing of plaintiffs' Consolidated Amended Complaint, but must receive permission from the court before conducting any other discovery

5    A telephonic status conference will be held on **Thursday, June 26, 2008 at 11:00 a.m.** (Central Daylight Time). The court will make the arrangements for the conference call. Counsel who intend to participate shall so notify chambers at (402) 661-7340 by the close of business on Monday, June 23, 2008

**DATED March 28, 2008.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE SATURN L-SERIES TIMING | ) | MDL No  1920 |
| CHAIN PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | 8.07CV298 |
| This document relates to | ) | |
| ALL ACTIONS | ) | Jury Trial Demanded |
| (8 07cv298, 8·08cv78, 8.08cv79) | ) | |
| | ) | |

### PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT



# TABLE OF CONTENTS

NATURE OF THE ACTION ....................................................................... 1

THE PARTIES .......................................................................................... 2

JURISDICTION AND VENUE ..................................................................... 8

SUBTANTIVE ALLEGATIONS.. ................................................................. 9

I    THE 2 2 LITER ECOTEC L61 ENGINE .......................................... 9

    A    Engine Operation. ....................................................... 9

    B    The Need for a Properly Operating Engine
        Timing System ..................................................... 11

    C    The Timing Chain ................................................ 15

    D.   The Timing Chain Oiling Nozzle ........................... 19

II.   DEFENDANTS DESIGN SATURN VEHICLES WITH
    A STEEL TIMING CHAIN IN ORDER TO MARKET
    THE TIMING CHAIN AS A SELLING FEATURE ...20

III   DEFENDANTS HAD ACTUAL KNOWLEDGE THAT
    STEEL TIMING CHAINS ON SATURN VEHICLES
    WOULD BREAK IF NOT SUBJECT TO A CONSTANT
    FLOW OF OIL AT LEAST AS EARLY AS JUNE 1997.. .  ... 23

        Despite Knowledge of this Design Defect in All 1991-1996
        Saturn Vehicles Defendants Failed to Recall these Vehicles
        or Accept Financial Responsibility ............................... 25

IV   IN ORDER TO ELIMINATE ENGINE NOISE SATURN
    RE-DESIGNED THE TIMING CHAIN USED IN ITS VEHICLES
    FOR MODEL YEAR 1999 AND SACRIFICED THE STRENGTH
    OF THE TIMING CHAIN ............................................... 28

V    THE 2 2L ECOTEC L61 ENGINES IN THE CLASS VEHICLES
    WERE DEFECTIVELY DESIGNED ............................... 29

        The Timing Chain ........................................... 29

        The Oiling Nozzle ........................................... 30

VI.     DEFENDANTS HAVE ADMITTED THAT THE TIMING
        CHAINS AND OILING NOZZLES WERE DEFECTIVELY
        DESIGNED     .                 .... ......                    ........... 30


VII     DEFENDANTS HAD ACTUAL KNOWLEDGE OF THE FACT
        THAT THE TIMING CHAINS AND OILING NOZZLES
        WERE DEFECTIVELY DESIGNED BECAUSE OF THE DELUGE
        OF COMPLAINTS CONCERNING BROKEN TIMING CHAINS .         33

                Consumers Post Scores of Complaints of Broken
                Timing Chains in Class Vehicles on NHTSA's
                and Various Consumer Websites.... .        ..    .     33

VIII    DEFENDANTS SECRETLY RE-DESIGN THE DEFECTIVE
        TIMING CHAINS AND OILING NOZZLES BUT CONTINUE
        TO DENY THE EXISTENCE OF A DEFECT OR LIABILITY
        TO CLASS VEHICLE OWNERS                    .         :       48

                Defendants Advise Saturn Dealers in June 2003
                of "Design Changes" to the Timing Chains
                and Oiling Nozzles  ..          . ..          .       48

IX      CLASS VEHICLE OWNERS' COMPLAINTS MOUNT
        AS DEFENDANTS CONTINUE TO PUBLICLY DENY
        LIABILITY FOR REPAIRING CLASS VEHICLES
        WHILE SECRETLY ADMITTING A DEFECT .          . . .     50

        A.     NHTSA Begins an Investigation of Timing Chain
               Breakages in 2000 - 2003  Saturn L- Series
               and 2003 Saturn Ion Vehicles.           . .      ....  50

        B      NHTSA Grants the Petition and Opens
               Preliminary Evaluation to Assess the Defect    .....        .. 51


        C      GM's Response to NHTSA's Information Request
               Admits that Defendants had Actual Knowledge
               of the Design Defect in the Class Vehicles as Early as 1999.   51

        D      NHTSA Upgrades the Investigation Based
               on the High Rate of Consumer Complaints    ....        . .. 56

X        IN ORDER TO AVOID THE EXPENSE OF A NHTSA
         MANDATED RECALL OF ALL CLASS VEHICLES
         DEFENDANTS INSTITUTE A LIMITED RECALL     ... .        57

XI       DEFENDANTS LIMITED RECALL OF THE DEFECTIVE
         CLASS VEHICLES IS UNTIMELY AND IGNORES
         HUNDREDS OF THOUSANDS OF DEFECTIVE
         CLASS VEHICLES                 ..        . ....        58

    A    The Limited Recall is Contrary to TSB 03-06-01-017
         and Clearly Evidences Defendants' Wrongful Conduct
         by Their Refusal to Accept Financial Responsibility
         for the Defective Timing Chains and Oiling Nozzles....        59

    B    All of the Class Vehicles Are Defectively Designed        ..        59

TOLLING OF THE STATUTE OF LIMITATIONS        . .        ..        62

CLASS ACTION ALLEGATIONS  . .        ....        .. ..        . .....  .        63

COUNTS  ..        .        .        .. .        ..        . ..        65

PRAYER FOR RELIEF        ...        . .        ..        .. .        106

CERTIFICATE OF SERVICE

EXHIBIT



Plaintiffs William Anderson, Jeremy Bauer, Antonio Burgos, Jennifer Cardwell, Amy Faust, Blain Fowler, Jesus Leal, Jeanne Menzer, Charles Reid, Debra Stoffer and Cynthia Scott ("Plaintiffs"), individually, and on behalf of all other persons similarly situated, by their undersigned counsel, allege the following, upon personal knowledge as to each of their own acts, and upon information and belief as to all other matters Plaintiffs' information and belief is based on the investigation conducted by their counsel

## NATURE OF THE ACTION

1    Plaintiffs bring this action both individually and as a class action against defendants General Motors Corporation ("GM") and Saturn Corporation ("Saturn") (collectively, "Defendants") on behalf of themselves and similarly situated persons and entities who purchased or leased a (i) model year 2000 - 2003 Saturn L-Series, (ii) model year 2002 - 2003 Saturn Vue, or (iii) model year 2003 Saturn Ion, each equipped with a 2 2 Liter, 4-cylinder, 137-horsepower dual-overhead-cam, Ecotec L61 Engine (the "2.2L Ecotec L61 Engine") and a GM production part number 90537338 steel timing chain (the "Timing Chain") and a GM production part number 90537476 timing chain oiling nozzle (the "Oiling Nozzle") (collectively, the "Class Vehicles") in the states of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the

1

District of Columbia (collectively, the "Class States"), and whose Timing Chain has failed (the "Class") Excluded from the Class Vehicles and the Class are certain 2001 Saturn L-Series vehicles within the following VIN breakpoints 1Y504884 through 1Y559453 (the "Recalled Vehicles")

2    As demonstrated herein, the Class Vehicles are defectively designed because they were equipped with Timing Chains and Oiling Nozzles that were not capable of withstanding normal operation

3    As a result of this defect, the Timing Chains on the Class Vehicles have failed, causing damages to Plaintiffs and the Class

4    Despite Defendants' actual knowledge of the design defect, since as early as 1999, Defendants have failed to, *inter alia*, recall the Class Vehicles in order to retrofit them with non-defective parts and reimburse Class members for the costs incurred in repairing the damage to their Class Vehicles caused by the Timing Chains breaking

5    As a result of the acts alleged herein, Defendants have violated the laws governing implied warranties, unjust enrichment and consumer protection, as set forth herein

### THE PARTIES

6    Plaintiff William Anderson is a resident of Waukegan, Illinois Plaintiff Anderson is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN 1G8JT54F32Y522109, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Saturn of Gurnee, IL, on or about October 12, 2001 Plaintiff was operating his Class Vehicle on or about June 17, 2007, when the Timing Chain broke, damaging the engine and causing the Class Vehicle to stop

2

operating, necessitating repairs costing over $3,700  According to the "2002 L-Series

Maintenance Schedule," which accompanied the "2002 L-Series Owner's Handbook,"

the Timing Chain on this Class Vehicle required neither inspection nor replacement

during the life of the Class Vehicle

7       Plaintiff Jeremy Bauer is a resident of Independence, Missouri   Plaintiff

Bauer is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002

L200, VIN 1G8JU54F42Y515038, equipped with a 2 2L Ecotec L61 Engine, Timing

Chain and Oiling Nozzle, from Saturn of Blue Springs, MO, on or about September 8,

2005  Plaintiff Bauer was operating his Class Vehicle on or about July 17, 2007, when

the Timing Chain broke, damaging an engine valve and causing the Class Vehicle to stop

operating, necessitating repairs costing over $2,600  According to the "2002 L-Series

Maintenance Schedule," which accompanied the "2002 L-Series Owner's Handbook,"

the Timing Chain on this Class Vehicle required neither inspection nor replacement

during the life of the Class Vehicle

8       Plaintiff Antonio Burgos is a resident of Houston, Texas   Plaintiff Burgos

is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002 L200,

VIN 1G8JU54F42Y530989, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and

Oiling Nozzle, from Saturn of Monroeville, Monroeville, PA, on February 14, 2002.

Plaintiff Burgos was operating his Class Vehicle on or about January 24, 2008, when the

Timing Chain broke, damaging engine valves and causing the Class Vehicle to stop

operating, necessitating repairs costing over $900 00   According to the "2002 L-Series

Maintenance Schedule," which accompanied the "2002 L-Series Owner's Handbook,"

3

the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle

9      Plaintiff Jennifer Cardwell is a resident of Lincoln, Nebraska   Plaintiff Cardwell is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2000 LS1, VIN 1G8JU52F2YY668378, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Saturn of Lincoln, NE, on November 27, 2000  Plaintiff Cardwell was operating her Class Vehicle on or about January 4, 2008, when the Timing Chain broke, damaging engine valves and causing the Class Vehicle to stop operating, necessitating repairs costing over $2,700   According to the "2000 L-Series Maintenance Schedule," which accompanied the "2000 L-Series Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle

10      Plaintiff Amy Faust is a resident of Omaha, Nebraska.  Plaintiff Faust is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2000 LS1, VIN 1G8JU52F4YY671508, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Rhoden Auto in Council Bluffs, Iowa, a GM certified used car dealer, on August 6, 2003  Plaintiff Faust was driving her Class Vehicle on November 16, 2006, when the Timing Chain broke, damaging the engine beyond repair and causing the Class Vehicle to stop operating  According to the "2000 L-Series Maintenance Schedule," which accompanied the "2000 L-Series Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle

11    Plaintiff Blain Fowler is a resident of Milwaukee, Wisconsin. Plaintiff Fowler is a consumer who purchased a Saturn Vue Class Vehicle, model year 2002, VIN 5GZCZ23D72S824547, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from GM dealer Meyer Motors in Plymouth, WI, on June 9, 2003 Plaintiff Fowler was driving his Class Vehicle on March 23, 2008, when the Timing Chain broke, causing extensive damage to the engine and causing the Class Vehicle to stop operating, necessitating repairs costing over $2,700 According to the "2002 Saturn Vue Maintenance Schedule," which accompanied the "2002 Saturn Vue Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle

12    Plaintiff Jesus Leal is a resident of Land O'Lakes, Florida Plaintiff Leal is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2001 L200, VIN 1G8JU54F41Y583982, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Saturn of Doral, in Miami, FL, on June 1, 2001. Plaintiff Leal was driving his Class Vehicle on June 11, 2007, when the Timing Chain broke, causing extensive damage to the engine and causing the Class Vehicle to stop operating, necessitating repairs costing over $2,400 According to the "2001 L-Series Maintenance Schedule," which accompanied the "2001 L-Series Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle.

13    Plaintiff Jeanne Menzer is a resident of El Cajon, California Plaintiff Menzer is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002 L100, VIN 1G8JS54F82Y517099, equipped with a 2.2L Ecotec L61 Engine, Timing

5

Chain and Oiling Nozzle, from Saturn of El Cajon, in El Cajon, CA, on September 3, 2005  Plaintiff Menzer was driving her Class Vehicle on April 17, 2008, when the Timing Chain broke, damaging the engine and causing the Class Vehicle to stop operating, necessitating repairs costing over $1,900.  According to the "2002 L-Series Maintenance Schedule," which accompanied the "2002 L-Series Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle  Pursuant to the requirements of the Consumer Legal Remedies Act ("CLRA"), Cal Civ Code § 1750 *et seq*, Plaintiff Menzer provided Defendants with statutory notice of her claims individually and on behalf of California consumers, as well as the opportunity to cure, but, to date, Defendants have failed or refused to take any effective remedial action  Plaintiff Menzer's jurisdictional declaration under the requirements of the CLRA is attached hereto as an Exhibit.

14    Plaintiff Charles Reid is a resident of Southern Pines, North Carolina  Plaintiff Reid is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2001 L200, VIN 1G8JU52F61Y583548, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Saturn of Fayetteville, in Fayetteville, NC, on May 26, 2001  Plaintiff Reid was driving his Class Vehicle on October 20, 2006, when the Timing Chain broke, damaging the engine and causing the Vehicle to stop operating, necessitating repairs costing over $1,800  According to the "2001 L-Series Maintenance Schedule," which accompanied the "2001 L-Series Owner's Handbook," the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle

6

15    Plaintiff Cynthia Scott is a resident of Waterford, Michigan    Plaintiff

Scott is a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002

L200, VIN 1G8JU54FX2Y533749, equipped with a 2 2L Ecotec L61 Engine, Timing

Chain and Oiling Nozzle, from Saturn of Farmington Hills, in Farmington Hills, MI, on

November 9, 2001    Plaintiff Scott was driving her Class Vehicle on September 25, 2007,

when the Timing Chain broke, damaging an engine valve and causing the Class Vehicle

to stop operating, necessitating repairs costing over $2,200    According to the "2002 L-

Series Maintenance Schedule," which accompanied the "2002 L-Series Owner's

Handbook," the Timing Chain on this Class Vehicle required neither inspection nor

replacement during the life of the Class Vehicle

16    Plaintiff Debra Stoffer is a resident of Elkhart, Indiana    Plaintiff Stoffer is

a consumer who purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN

1G8JU54F12y539875, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and

Oiling Nozzle, from Battjes Pontiac, in Elkhart, IN, on February 17, 2005. On March 18,

2008, Plaintiff Stoffer's parked Class Vehicle would not start    The Class Vehicle was

towed to Saturn of Michiana, which informed Plaintiff Stoffer that the Timing Chain had

broken, damaging the engine and causing the Vehicle to stop operating, and necessitating

repairs costing over $1,200    According to the "2002 L-Series Maintenance Schedule,"

which accompanied the "2002 L-Series Owner's Handbook," the Timing Chain on this

Class Vehicle required neither inspection nor replacement during the life of the Class

Vehicle

17    Defendant GM is a company that maintains its corporate headquarters at

300 Renaissance Center, Detroit, Michigan, 48265, and is incorporated in Delaware    GM

7

is primarily engaged in the worldwide development, manufacturing and marketing of vehicles. GM sells vehicles in North America under the following brands. Chevrolet, Pontiac, GMC, Buick, Cadillac, Saturn, Saab, and Hummer. GM sells vehicles globally under the following brands. Opel, Vauxhall, Holden, Saab, Buick, Chevrolet, GMC, Cadillac and Daewoo

18      Defendant Saturn is a wholly owned subsidiary of GM that maintains its corporate headquarters at Spring Hill, Tennessee, 37174   Saturn is primarily engaged in the development, manufacturing and marketing of vehicles throughout North America, including the Class Vehicles

## JURISDICTION AND VENUE

19      This Court has subject matter jurisdiction over this action pursuant to 28 U S C § 1332 because, *inter alia*, certain of the Plaintiffs and Defendants are citizens of different states and the amount in controversy is in excess of $5,000,000

20      Venue is properly laid in this district pursuant to 28 U S C 1407 and the Judicial Panel on Multidistrict Litigation Transfer Order dated February 19, 2008, and because Defendants do business, including advertising, marketing, distribution and sales of the Class Vehicles in this judicial district, are subject to personal jurisdiction in this judicial district and/or maintain contacts in this judicial district sufficient to subject Defendants to personal jurisdiction

## SUBSTANTIVE ALLEGATIONS

21      In order to gain an understanding of the design defect alleged herein, it is helpful to first examine the integral automotive parts and processes involved in the Class

8

Vehicles, including (i) the 2 2L Ecotec L61 Engine and the combustion process, (ii) the engine timing system, (iii) the timing chain, and (iv) the timing chain oiling nozzle

## I.    THE 2.2 LITER ECOTEC L61 ENGINE

22    The Class Vehicles are equipped with GM manufactured 2 2L Ecotec L61 Engines

### A.    <u>Engine Operation</u>

23    The 2 2L Ecotec L61 Engine is an internal combustion engine, which internally combines fuel and oxygen to create a combustion process (or cycle) that generates the power necessary to move the Class Vehicles   Figure 1 below illustrates a generic internal combustion engine

**<u>Figure 1</u>**



24    The first step in the combustion cycle is called the *intake stroke*.   The piston, a solid cylindrical piece of metal that moves up and down inside the cylinder,

9

starts at the top of the cylinder and moves downward to allow the engine to take in a cylinder full of fuel and air   The second step is called the *compression stroke*   The piston travels up the cylinder to compress the fuel and air mixture produced during step one   This motion is made possible by the crankshaft, a steel rod connected to the piston *via* the connecting rod   Figures 2 and 3 below depict the intake stroke and the compression stroke, respectively

**Figure 2**                                      **Figure 3**




25      The third step in the combustion cycle transpires the moment the piston reaches the top of its compression stroke   The gasoline and air mixture gets ignited at this point by means of the spark plug   It is crucial that the ignition occurs at the correct moment in order to create the force needed to fully push the piston back down the cylinder   Once the piston hits the bottom of the cylinder, the fourth and final stroke, called the *exhaust stroke*, enables the release of the exhaust *via* an exhaust valve that shifts open, creating an aperture in the cylinder upon the conclusion of step three   The release of the exhaust is illustrated below in Figure 4

**Figure 4**



26      The foregoing cycles ensure the constant production of energy that is required to power the Class Vehicles

### B.    The Need for a Properly Operating Engine Timing System

27      Opening and closing the intake and exhaust valves in precise synchronization with the up and down strokes of the pistons requires very accurate timing

28.      Automobile engines can be classified as either free-running (non-interference) or interference, depending on what occurs if piston/valve synchronization is lost due to failed timing  As illustrated below in Figures 5 and 6, an interference engine, like the 2 2L Ecotec L61 Engine, usually sustains damage to the valves, pistons and/or cylinders if synchronization is lost due to timing chain failure, which likely results in very expensive engine repairs

11

**Figure 5:  No Valve/Piston Inference**



**Figure 6:  Valve/Piston Interference**





29      At idle, the time interval between valve openings for each cylinder is typically about a fifth of a second  At 5,000 rpm, it is about two hundredths of a second

30      The instant at which the valves open and close affects engine performance, fuel economy, emissions, and, in interference engines, whether the valves and pistons will sustain damage from contact  Accordingly, accurate timing is essential.

31      On the intake side, valve timing not only determines how much air/fuel mixture is drawn into each cylinder, but also how efficiently the mixture is used. When the piston starts down on its intake stroke, the intake valve must open quickly so that a full cylinder worth of air/fuel mixture will be drawn in, a necessity that becomes more acute as engine speed increases   If the valve does not open soon enough, there may not

12

be enough time to fill the cylinder completely before the piston starts back up and the valve closes, reducing compression and power  If the valve opens too soon, the piston may still be completing its exhaust stroke, which would push exhaust back into the intake manifold, thereby interfering with efficient engine breathing

32    On the exhaust side, timing is equally important  If an exhaust valve opens too soon, the still expanding gases can escape from the cylinder prematurely, wasting power  If the exhaust valve opens too late, the engine will also have to work that much harder to pump the remaining exhaust gases from the cylinder  And, if the exhaust valve remains open too long, there will be excessive "overlap" with the opening of the intake valve, excessively allowing unburned fuel to be drawn right through the engine

33    The ignition system (the third cycle) has to work in perfect concert with the rest of the engine  The goal is to ignite the fuel at exactly the right time so that the expanding gases can do the maximum amount of work  If the ignition system fires at the wrong time, power will fall and gas consumption and emissions can increase

34    There is a small delay from the time of the spark to the time when the fuel/air mixture is all burning and the pressure in the cylinder reaches its maximum  If the spark occurs right when the piston reaches the top of the compression stroke, the piston will have already moved down part of the way into its power stroke before the gases in the cylinder have reached their highest pressures.

35    To make the best use of the fuel, the spark should occur before the piston reaches the top of the compression stroke, so that by the time the piston starts down into its power stroke, the pressures are high enough to start producing useful work

36    The timing system of the engine, therefore, ensures that the various operations of the combustion cycle, which are described above, occur at the correct time, and in the correct sequence  Since the operations of the combustion cycle are interdependent, the timing system ensures that the operations are properly timed during engine performance. Figure 7 below illustrates the components of an engine's timing system

**Figure 7: View of Timing System (without Timing Chain/Belt)**



37.    The major components of the timing system are as follows  the camshaft (or, in the case of the 2 21 Ecotec L61 Engine, an intake camshaft and an exhaust camshaft), the crankshaft, the main drive sprocket, the camshaft sprocket(s), the timing chain (or belt), and the tensioner

38    The camshaft is manufactured as a long steel rod and it is the part of the engine that rotates to push against the exhaust and intake valves in order to fully open them and allow the excess exhaust to be exhaled from the cylinder.  The camshaft has protruding lobes that spin together with the rotation of the camshaft.  These lobes are

14

responsible for opening and closing the exhaust and intake valves by pushing against the valves in time with the piston's motion

39     The piston's motion is made possible by the crankshaft   Attached to the crankshaft is the main drive sprocket   The sprocket has small protruding metal spikes, called teeth, that turn the crankshaft in tandem with the camshaft.

40     Attached to the camshaft(s) is the camshaft sprocket(s).  This sprocket has teeth similar to the main drive sprocket   The sprocket on the camshaft is larger than the main drive sprocket   This larger sprocket has exactly double the amount of teeth than the main drive sprocket   Two full revolutions of the main drive sprocket will equal one full revolution of the larger camshaft sprocket

**C.     The Timing Chain**

41     A timing chain is a series of traveling journal bearings with a means to engage the teeth of a sprocket and transmit force and motion.  Because each chain joint is a bearing, proper lubrication is essential to obtain the maximum service life from a chain drive

42     In the internal combustion engine, the timing chain (or belt) connects the crankshaft to the camshaft(s) which, in turn, controls the opening and closing of the engine's valves   A four-stroke engine requires that the valves open and close once every other turn of the crankshaft   The timing chain accomplishes this task.  It has custom teeth to turn the camshaft(s) synchronized with the crankshaft and is specifically designed for a particular engine   *See* Figure 8 *for a view of the timing system with the timing chain/belt attached*

15

**Figure 8:  Timing System Showing the Timing Chain/Belt**



43      The timing chain, which rotates the camshaft(s) and crankshaft, is fastened to the main drive sprocket on one end and to the crankshaft sprocket(s) on the other. Figure 9(a) is a picture of a 2.2L Ecotec L61 Engine showing how the Timing Chain attaches to the intake (top right) and exhaust (top left) camshaft sprockets and thereby turns the camshafts

**Figure 9(a)**



16

44      The timing chain has evenly situated holes that engage the teeth on the

two sprockets   A timing chain connected to the camshaft sprocket and the main drive

(crankshaft) sprocket is illustrated below as Figure 9(b)

**Figure 9(b)**



45      Figure 9(c) is a picture of a 2 2L Ecotec L61 Engine with the Timing

Chain attached to the intake camshaft sprocket (top right), exhaust camshaft sprocket (top

left) and crankshaft sprocket (bottom center).



**Figure 9(c)**




46      The timing chain should allow for proper timing between the camshaft(s)

and the crankshaft, which, in turn, controls the opening and closing of the engine valves

The valves must open and close once for every two turns of the crankshaft so that the

pistons controlled by the crankshaft can make two full strokes through the cylinder

during each cycle

47.      The timing chain tensioner guide (visible in the center of 9(c) pushing

against the Timing Chain), which is pushed forward by the timing chain tensioner,

ensures the proper amount of timing chain tension

48.      The 2 2L Ecotec L61 Engine uses a hydraulic tensioner and a tension lever

to keep the timing chain taut   Tension is critical and must be properly maintained in

order to ensure that all the teeth on the sprockets are engaged and not skipped over by the

timing chain   Any slippage (due to lack of proper tension) can result in  (a) the chain

falling off the sprockets, (b) the timing chain breaking, and (c) potentially disastrous timing problems, including the opening of the exhaust valve during compression, or the closing of the exhaust valve after the exhaust stroke  If the timing chain is excessively loosened or stretched, the chain can slap into the chain guides  This can cause the engine to run with excessive noise or, in many situations, can completely stall the engine

**D.**    **The Timing Chain Oiling Nozzle**

49    Oil is the life-blood of the engine  An engine running without oil will last about as long as a human without blood  Oil is pumped under pressure to all the moving parts of the engine by an oil pump  The oil pump is mounted at the bottom of the engine in the oil pan and is connected by a gear to either the crankshaft or the camshaft  This way, when the engine is turning, the oil pump is pumping

50    The timing chain must stay well lubricated  Proper lubrication is essential to obtain the maximum service life from a timing chain  The majority of chain drives (including timing chains) will perform better and last longer when properly lubricated  Chain lubrication is needed primarily to slow the wear between the pins and bushings in the chain joints    Lack of proper lubrication can cause increased friction and power consumption and cause a harmful temperature rise in the steel of the timing chain

51    Excessive heat causes the metal on the timing chain to bend, stretch and/or become brittle, thereby causing the timing chain to slip off the teeth of the sprockets, or to break completely  An oiling nozzle is placed above the chain, for the primary purpose of ensuring that the chain receives proper lubrication.  Engine oil is fed to the oiling nozzle by the oil pump  *See* Figure 10 for a picture of the Oiling Nozzle (in black bolted to the 2 2L Ecotec L61 Engine over the crankshaft sprocket)

19

**Figure 10**





## II.    DEFENDANTS DESIGN SATURN VEHICLES WITH A STEEL TIMING CHAIN IN ORDER TO MARKET THE TIMING CHAIN AS A SELLING FEATURE

52    GM, which marketed the Saturn brand as the "Best Overall Value" in its class, highlighted the inclusion of a steel timing chain, as opposed to a rubber timing belt, in Saturn vehicles as a selling point in the marketing materials used to advertise its model year 1998 and 1999 Saturn vehicles

53    The advantage of a timing chain over a timing belt is clear   Normally, a timing chain does not require replacement, whereas a timing belt requires scheduled replacement at 60,000 to 90,000 miles   If a timing chain requires replacement, it is usually a complicated and costly procedure.  Moreover, if the engine is an "interference engine," like the 2 2L Ecotec L61 Engines in the Class Vehicles, the failure of the timing

chain or belt will likely cause parts such as pistons and valves to collide with costly consequences

54      Saturn marketing materials repeatedly highlighted the fact that Saturn vehicles were equipped with steel timing chains  For example, *Saturn's Brochure for model year 1998 vehicles dubbed, "A Moment in Time, Saturn MY1998,"* prominently (at p  8) extolled the virtues of a steel timing chain:

> Every Saturn has a tough, <u>long-lasting</u> steel timing chain.  Why steel? One reason is that <u>rubber timing belts break more easily</u>.  And when they break, they <u>can cause bent valves and costly engine work</u> (never mind the belt's replacement cost)

(Emphasis added )

55      *In the Brochure for Saturn's 1999 model year cars, entitled, "How a Different Kind of Car Company Makes a Different Kind of Car,"* Saturn again highlighted the virtues of a steel timing chain:

> Our steel timing chain is <u>more durable</u> than the rubber timing belt you'll find in other cars . . . .

(Emphasis added )

56      The Brochure went on to proclaim

> **Steel Timing Chain.**  Instead of a rubber timing belt, we use a durable steel timing chain (it operates camshafts and controls valve operation), <u>which requires virtually no maintenance</u>

(Emphasis added )

57      Saturn dealers routinely proclaimed the virtues of a steel timing chain in the Class Vehicles.  For example, one owner of a Class Vehicle reported that, "I can still hear my Saturn Salesperson singing the advantage of having a 'maintenance free' chain that will 'never break'  Thank God mine broke while still under warranty (just barely) "

21

*See* www.Saturnfans.com/forums   Another owner of a Class Vehicle stated, "I have to admit that I felt that Saturn betrayed us, when two of my kids bought Saturns the dealership was bragging about the timing chain     ." (*Id*)

58    Moreover, the Brochures for each of the Class Vehicles, on the "Specifications" page, prominently stated that the 2 2L Ecotec L61 Engines contained a "steel timing chain "

59    There can be no doubt that that the steel Timing Chains in the Class Vehicles were proclaimed (and intended) by Defendants to last the life of the Class Vehicles  According to the "Maintenance Schedules," which accompanied each of the Class Vehicles' "Owner's Handbooks," the Timing Chains on the Class Vehicles required neither inspection nor replacement, regardless of how many miles the Class Vehicles were driven

60    The Maintenance Schedules accompanying each of the Class Vehicles instructs the owners of the Class Vehicles on what maintenance needs to be done on the Class Vehicles at specified mileage throughout the life of the Class Vehicle

> This Maintenance Schedule card tells you the maintenance services you should have done and when you should schedule them

> The services shown in this schedule up to 150,000 miles (250,000 km) should be performed after 150,000 miles (250,000 km) at the same intervals

61    The Maintenance Schedule instructs owners of the Class Vehicles that, for example, they need to "Lubricate door hinges, check links, hood and sunroof" at 6,000 miles, "Rotate tires" at 18,000 miles, "Inspect brake system" at 90,000 miles, "Inspect vacuum lines/hoses every 24 months or 30,000 miles "

22

62      With respect to the "3 0L V6 Engine Only" (optional equipment on the Class Vehicles), which came equipped with a timing belt instead of a Timing Chain, the Maintenance Schedule directs, "Replace timing Belt" at 100,000 miles

63      The Timing Chains, however, are not mentioned anywhere in the Maintenance Schedules. There is no indication that the Timing Chains need inspection or replacement – ever – leading to only one intended conclusion, that the Timing Chains were to last the life of the Class Vehicles

64      Moreover, the Saturn Brochure announcing the introduction of the L-Series vehicles assured consumers

> In the end, L-Series test-drivers had logged more than one million miles on the odometer in the blazing hot Australian Outback and frosty Kapuskasing, Canada   If there's a better way of putting all of cars' components and systems to the test, we have yet to find it

## III.   DEFENDANTS HAD ACTUAL KNOWLEDGE THAT STEEL TIMING CHAINS ON SATURN VEHICLES WOULD BREAK IF NOT SUBJECT TO A CONSTANT FLOW OF OIL AT LEAST AS EARLY AS JUNE 1997

65      Beginning in the early 1990s, Defendants began receiving complaints from consumers concerning the failures of timing chains in Saturn vehicles

66      The following are a sampling of consumer complaints available on the National Highway Traffic Safety Administration's ("NHTSA") website from owners of Saturn model years 1991 – 1995 vehicles, whose timing chains broke during the mid-1990s (emphasis added)

| | |
|---|---|
| Make: | SATURN |
| Mode : | SL2 |
| Year: | 1993 |
| VIN: | 1G8ZJ5572PZ |
| Manufacturer : | GENERAL MOTORS CORP |
| ODI ID Number : | 602879 |
| Date of Failure: | February 8, 1995 |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | **TIMING CHAIN REPLACED** |

| | |
|---|---|
| Make: | SATURN |
| Model: | SC2 |
| Year: | 1994 |
| VIN: | 1G8ZH1571RZ |
| Manufacturer: | GENERAL MOTORS CORP |
| ODI ID Number: | 532271 |
| Date of Failure: | February 27, 1995 |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | **TIMING CHAIN FAILED.** |

| | |
|---|---|
| Make . | SATURN |
| Model : | SL1 |
| Year . | 1995 |
| VIN: | 1G8ZH5283SZ |
| Manufacturer · | GENERAL MOTORS CORP |
| ODI ID Number : | 741803 |
| Date of Failure: | September 19, 1995 |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | THIS CAR HAS CONSTANTLY HAD PROBLEMS SINCE THE **TIMING CHAIN WENT AT 15,000 MILES** I'D LIKE MORE INFORMATION CONCERNING ENGINE FAILURES ON 1995 SATURNS THAT IS THE ONLY YEAR THEY MANUFACTURED THIS PARTICULAR ENGINE AND AM INTERESTED TO KNOW WHY, SINCE I COMING ACROSS LARGE AMOUNTS OF ENGINE COMPLAINTS FOR THIS YEAR *AK |

24

| | |
|---|---|
| Make : | SATURN |
| Model : | SC2 |
| Year : | 1994 |
| VIN: | n/a |
| Manufacturer : | GENERAL MOTORS CORP |
| ODI ID Number : | 815019 |
| Date of Failure: | July 27, 1997 |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | THE **TIMING CHAIN WENT OUT** AND CAUSED THE ENGINE TO FAIL *AK |

| | |
|---|---|
| Make : | SATURN |
| Model : | SL1 |
| Year : | 1994 |
| VIN: | 1G8ZG5599RZ |
| Manufacturer : | GENERAL MOTORS CORP |
| ODI ID Number : | 549313 |
| Date of Failure: | n/a |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | **TIMING CHAIN FAILED** NLM |

| | |
|---|---|
| Make : | SATURN |
| Model : | SL |
| Year : | 1995 |
| VIN: | 1C8ZH1576RZ |
| Manufacturer : | GENERAL MOTORS CORP |
| ODI ID Number : | 540907 |
| Date of Failure: | November 6, 1997 |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | **TIMING CHAIN WORE PREMATURELY** |

### Despite Knowledge of this Design Defect in All 1991-1996 Saturn Vehicles Defendants Failed to Recall these Vehicles or Accept Financial Responsibility

67    In June 1997, in response to these and other consumer complaints, and instead of issuing a recall, GM and Saturn issued Technical Service Bulletin ("TSB") No 97-T-15A, directed to Saturn dealerships. This TSB instructed Saturn mechanics how to fix the problem, **at the vehicle owner's expense**, once a Saturn owner brought in a Saturn with a broken timing chain    TSB 97-T-15A informed automotive service technicians that for all "1991 – 1996 Saturns"

25

A design change to the oil pump cover was made during the 1996 model
year to **help lubricate the timing chain system by directing a constant
flow of oil onto the timing chain.**

(Emphasis added )

68      TSB 97-T-15A went on to instruct automotive technicians that when

servicing a timing chain on all Saturn vehicles built from 1991 through 1996, a new

timing chain kit, including the new oil pump cover, should be used

69      Since TSB 97-T-15A was not a recall, but only a notice to Saturn

mechanics of what should be done when repairing a timing chain on Saturn vehicles

manufactured from 1991 through 1996, owners of these Saturn vehicles continued to

experience timing chain failures after issuance of the Technical Service Bulletin, which

had to be repaired at the owner's expense (since Saturn refused to accept responsibility or

acknowledge a defect), as demonstrated by this sample of consumer complaints on the

NHTSA website **after** the fix was implemented (emphasis added)

| | |
|---|---|
| Make · | SATURN |
| Model : | SL1 |
| Year : | 1994 |
| VIN: | 1G8ZH5595RZ |
| Manufacturer : | GENERAL MOTORS CORP |
| ODI ID Number : | 720617 |
| Date of Failure: | **February 22, 2000** |
| Component: | ENGINE AND ENGINE COOLING |
| Summary: | MY CAR'S **TIMING CHAIN AND ASSEMBLY EXPLODED KILLING THE ENGINE** OF THE SATURN SL1 I HAVE OWNED FOR LESS THAN ONE YEAR THE EXTENDED SERVICE PLAN WAS 12 MONTHS OR 12,000 MILES AND I HAVE DRIVEN ABOUT 15,000 MILES THE CAR HAD ABOUT 65,000 MILES WHEN I BOUGHT IT FROM SATURN OF LEWISVILLE THE CAR IS CURRENTLY AT A SATURN DEALER CALLED SATURN OF IRVING IN TEXAS I FEEL THAT SATURN HAS A MEASURE OF RESPONSIBILITY FOR THIS I CAN NOT FIND ALL MY RECEIPTS BUT DO HAVE SOME SHOWING MAINTENANCE I HAVE DONE AND THE EMMISSIONS TEST |

RESULTS FROM 12/29/99 I HAVE BEEN TALKING WITH SATURN SINCE 2/24/00 SATURN SENT A SAMPLE OF THE OIL FOR TESTING ON 2/25/00 WITH A PROMISE OF RESULTS WITHIN A WEEK I AM STILL WAITING¹ I HAVE A WRITTEN STATEMENT FROM A FIRESTONE ON THE INITIAL CONDITION OF THE CAR AFTER THE FAILURE AS THEY WERE THE FIRST TO SEE THE CAR *AK

| | |
|---|---|
| **Make :** | SATURN |
| **Model :** | SL1 |
| **Year :** | 1994 |
| **VIN:** | 1G8ZH5595RZ |
| **Manufacturer :** | GENERAL MOTORS CORP |
| **ODI ID Number :** | 838618 |
| **Date of Failure:** | May 12, 1999 |
| **Component:** | ENGINE AND ENGINE COOLING |
| **Summary:** | **TIMING CHAIN BROKE**, CAUSING LOUD NOISE ALSO, THERE IS SOME PROBLEM WITH THE ENGINE AS A WHOLE DUE TO THE TIMING CHAIN BELT BREAKING *AK |

| | |
|---|---|
| **Make :** | SATURN |
| **Model :** | SL2 |
| **Year :** | 1994 |
| **VIN:** | 1G8ZK557XRZ |
| **Manufacturer :** | GENERAL MOTORS CORP |
| **ODI ID Number :** | 10112407 |
| **Date of Failure:** | January 1, 1998 |
| **Component:** | ENGINE AND ENGINE COOLING |
| **Summary:** | IN JAN 1998 **MY TIMING CHAIN BROKE AND CRACKED MY ENGINE AND VALVE COVER** PRIOR TO THIS I DID TAKE MY CAR TO THE DEALER WHO STATES TIMING CHAIN REPLACEMENT OR NEW ENGINE IF TIMING CHAIN BREAKS BEING THAT MY SATURN SL2 WAS A 1994 IT WAS FUNNY THAT SO SOON TIMING CHAIN PROBLEMS OCCURRED MY TIMING CHAIN DID BREAK, AND I WAS UNABLE TO GET IT REPAIRED INTIL 2001 BY THE LOCAL DEALER WITH A USED ENGINE THAT LEAKED OIL EVERY WHERE I PARKED, MY COMPLAINTS YIELDED NO RESULTS NEEDLESS TO SAY I WAS ABLE TO CONTINUE DRIVING THE CAR WHICH BEGAN TO OVERHEAT, COOLING FAN FAILED AND IN AUGUST 2004, THE TIMING CHAIN ON THE OTHER USED ENGINE STARTED TO RATTLE AND ALSO BROKE, SO TODAY I AM |

27

CARLESS AND DON'T KNOW WHERE TO BEGIN
OBVIOUSLY THERE IS A PROBLEM WITH THESE
SATURN  TIMING  CHAINS  IS  THERE  AN
*INVESTIGATION ONGOING?\*AK*

## IV.    IN ORDER TO ELIMINATE ENGINE NOISE SATURN RE-DESIGNED THE TIMING CHAIN USED IN ITS VEHICLES FOR MODEL YEAR 1999 AND SACRIFICED THE STRENGTH OF THE TIMING CHAIN

70    Prior to model year 1999, critics and owners of Saturn vehicles often

complained of the engine noise of Saturn vehicles   For model year 1999, Saturn's

Brochure acknowledged this fact and heralded its new quieter engine

**How we found a quieter engine inside a soundproof room.**

Engineers Bob Downs and Dean Hauersperger didn't like what they heard
Noise, more of it than they wanted, coming from the Saturn powertrain

Examining the engine part by part, they were able to identify the
culprits  the crankshaft, connecting rods and pistons

**Our steel timing chain is more durable** than the rubber timing belt
you'll find in other cars, but **it was a bit too noisy** for our taste   **This
year, we redesigned it with smaller, finer links for a smaller, finer
sound**

(Emphasis added )

71    This re-designed steel timing chain, with "smaller, finer link[s]," was

materially weaker than the prior timing chains found in Saturn vehicles

72    The "smaller, finer link[s]," was accomplished by reducing the chain's

"pitch" to 8 mm (pitch is the nominal distance between the centers of consecutive chain

joints, i e , the distance between consecutive pins)   Prior to 1999, the pitch in the steel

timing chains used by Saturn was approximately 9 5 mm   In addition, with decreased

pitch came a smaller diameter "pin" (the pin is the innermost member of a chain joint,

28

which articulates inside the bushing), which was approximately 10% smaller than the pin found in the timing chains with the 9 5mm pitch

73      As a result of the design change, the new steel timing chain with less pitch and approximately 10% smaller pins was not as strong as the prior steel timing chain with greater pitch and larger pins

74      This re-designed timing chain is substantially the same as the Timing Chain that Saturn incorporated into all of the Class Vehicles beginning in model year 1999

## V.      THE 2.2L ECOTEC L61 ENGINES IN THE CLASS VEHICLES WERE DEFECTIVELY DESIGNED

### The Timing Chain

75      The Class Vehicles were assembled in 1999 through 2002 (and sold as model year 2000 through 2003) and equipped with the Timing Chain and the Oiling Nozzle.

76      The Timing Chain in the Class Vehicles was defectively designed because (i) in order to design a quieter timing chain, Defendants sacrificed strength of the Timing Chain for a quieter Timing Chain, and (2) the pins holding the many links on the Timing Chain together were too small and not covered with a sufficient amount of chrome coating to withstand normal operating wear and tear   More specifically, the pins on the Timing Chain were not properly "chromised," thereby resulting in the inability of the Timing Chain to withstand normal wear and tear

77.      As a result of the Timing Chains in the Class Vehicles being substantially identical to the weaker timing chains instituted by Saturn in its other vehicles in 1999,

29

with an 8 mm "pitch" and a 10% smaller diameter "pin," Saturn sacrificed the strength of the Timing Chains in order to reduce engine noise in its vehicles

### The Oiling Nozzle

78.    Despite having actual knowledge, since at least as early as in June 1997, of the need to provide a constant flow of oil to the Timing Chain in order to prevent the Timing Chains from becoming brittle and breaking, Defendants defectively designed the Oiling Nozzle in such a manner so as to specifically <u>prevent</u> oil from flowing to the Timing Chain at low and idle speeds    This lack of oil caused excessive heat in the Timing Chains, which caused the metal on the timing chain to bend, stretch and/or become brittle, thereby causing the Timing Chains to break

## VI.    DEFENDANTS HAVE ADMITTED THAT THE TIMING CHAINS AND OILING NOZZLES WERE DEFECTIVELY DESIGNED

79    Defendants have admitted to NHTSA that the defective Oiling Nozzle was designed with a "pintle valve" and "regulator spring design" A pintle valve is simply a plug with a spring behind it, when sufficient oil pressure is exerted on the spring, the plug is pushed forward, allowing oil to flow around the plug

80    The purpose of the pintle valve in the Oiling Nozzle is to prevent the flow of oil to the Timing Chain at low and idle speeds

81    A side effect of the inclusion of the pintle valve is that the orifice through which oil flowed into the pintle valve was so small as to further restrict the flow of oil through the Oiling Nozzle

82    Because of these defects in the Oiling Nozzle, up to ten (10) times less oil flowed to the Timing Chain at low and idle speeds than was necessary to keep the Timing Chains properly lubricated.  Figure 10(a) shows the brass washer on the opening of the