257    By paying monies for these defective Class Vehicles, Plaintiff Leal and the other members of the Class have been damaged

## COUNT XIV

**(By Plaintiff Reid, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of North Carolina For Violations of N. C. GEN. STAT. §§ 75-1.1 et seq. ("NCUDTPA")**

258    The allegations of paragraph 1 through 135, except those that are particular to Counts I through XIII, are re-alleged and incorporated herein by reference

259    At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles  The Class Vehicles are defective because they were equipped with  (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

260    Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures  Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

261    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith.

262.    Defendants failed to disclose to Plaintiff Reid and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and

defective Oiling Nozzles  Defendants' failure to disclose this information constituted a

deceptive act or practice that violated NCUDTPA

263    Defendants' sales of the Class Vehicles without disclosure of the defect

were acts that occurred in or affected commerce

264    Had Defendants informed Plaintiff Reid and the other members of the

Class about the defect, Plaintiff Reid and the other members of the Class would not have

purchased the defective Class Vehicles

265    By paying monies for these defective Class Vehicles, Plaintiff Reid and

the other members of the Class have been damaged.

## COUNT XV

**(By Plaintiff Menzer, Individually, And On Behalf Of All Members Of The Class
Who Purchased Or Leased A Class Vehicle In The State Of California  For Unjust
Enrichment/Quasi Contract Under California Common Law)**

266    The allegations of paragraph 1 through 135, except those that are

particular to Counts I through XIV, are re-alleged and incorporated herein by reference.

267    This Count is brought against Defendants pursuant to the common law

doctrine of Unjust Enrichment.

268    At all times mentioned herein, Defendants developed, manufactured,

marketed and sold the Class Vehicles  The Class Vehicles are defective because they

were equipped with. (i) Oiling Nozzles that failed to properly lubricate the Timing

Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing

Chains that are less robust than was in production prior to 1999, the result of which was

that these less robust Timing Chains would break when not properly lubricated

269.    Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures   Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

270    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

271    Defendants failed to disclose to Plaintiff Menzer and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

272    Plaintiff Menzer and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles   A portion of such monies was paid to and was received by Defendants

273.    Defendants retained these non-gratuitous benefits from Plaintiff Menzer and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge   The retention of these benefits by Defendants under these circumstances was unjust and inequitable

274    The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiff Menzer and the other members of the Class violates the principles of justice and equity

Therefore, Defendants must provide restitution to Plaintiff Menzer and the other members of the Class in a manner established by the Court

275    Defendants' express warranty is limited to defects in material and workmanship and accordingly does not govern the subject matter of this design defect litigation or preclude this cause of action

## COUNT XVI

**(By Plaintiff Menzer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of California  For Violations Of The California Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.*)**

276    The allegations of paragraph 1 through 135, except those that are particular to Counts I through XV, are re-alleged and incorporated herein by reference

277    At all times relevant herein, the Consumer Legal Remedies Act ("CLRA") was in effect.  CLRA prohibits "unfair or deceptive acts or practices "

278    At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles   The Class Vehicles are defective because they were equipped with  (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly; and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

279    Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures   Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

280    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

281    Defendants failed to disclose to Plaintiff Menzer and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles   The failure to disclose this defect constituted a violation of CAL CIV CODE §§ 1750(a)(5) and 1750(a)(7).

282    The defect described herein was a material fact related to the safety of the Class Vehicles known only to Defendants   Accordingly, Defendants were under a duty to disclose the existence of the defect in the Class Vehicles to Plaintiff Menzer and the other members of the Class

283    Furthermore, had Plaintiff Menzer and the other members of the Class known about the design defect, they would not have purchased their Class Vehicles Defendants, at all relevant times, knew that Plaintiff Menzer and the other members of the Class did not know or could not have reasonably discovered the defect prior to their purchases

284    On or about April 17, 2008, Plaintiff Menzer first discovered that her Class Vehicle contained a defect regarding the Timing Chain and Oiling Nozzle   Prior to this date Plaintiff Menzer had no reasonable means to learn of this defect

285    On May 9, 2008, Plaintiff Menzer sent Defendants a demand letter, as required by CAL CIV CODE § 1782

286    Defendants have failed to comply with the demands set forth in the Demand Letter

287    By purchasing the defective Class Vehicles, Plaintiff Menzer and the other members of the Class have been damaged

## COUNT XVII

**(On Behalf Of Plaintiff Menzer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of California For Violations Of California Business & Professions Code §17200 *et seq.* )**

288    The allegations of paragraphs 1 through 135, except those that are particular to Counts I through XVI, are re-alleged and incorporated herein by reference

289    This Count is brought against Defendants pursuant to CAL BUS & PROF CODE §17200 *et seq* (the "UCL").

290    At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles The Class Vehicles are defective because they were equipped with. (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

291    Defendants had knowledge of the design defects in as early as 1999 as a result of Defendants' internal investigation of Timing Chain failures    Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

292    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing

Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

293    Defendants failed to disclose to Plaintiff Menzer and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

294    Plaintiff Menzer and the other members of the Class did not have knowledge of the defect at the time of purchase or lease of their Class Vehicles

295    Defendants' business acts and practices alleged herein are unlawful within the meaning of CAL BUS & PROF CODE §17200 *et seq*  Specifically, Defendants' acts and practices are unlawful because they violate Civil Code § 1790 and because they rise to the level of a breach of the implied warranty of merchantability

296    Defendants' business acts and practices alleged herein are fraudulent within the meaning of CAL. BUS & PROF CODE §17200 *et seq*. Specifically, as an entity with exclusive knowledge regarding the defect in the Class Vehicles, Defendants had a duty to disclose the defect to Plaintiff Menzer and the other members of the Class Plaintiff Menzer and the other members of the Class reasonably expected that Defendants would disclose the existence of any defect in the Class Vehicles to them, information which is and was material to Plaintiff Menzer and the other members of the Class

297    By failing and refusing to disclose the existence of a defect in the Class Vehicles, Defendants have engaged in actionable, fraudulent conduct within the meaning of the UCL  Had Plaintiff Menzer and the other members of the Class known about the defect in the Class Vehicles, they would not have purchased or leased the Class Vehicles

or, in the alternative, they would have paid substantially less to purchase or lease the Class Vehicles

298    Defendants' business acts and practices alleged herein are unfair within the meaning of CAL BUS & PROF CODE §17200 *et seq*  Specifically, by failing to disclose and concealing the existence of the defect in the Vehicles, Defendants have engaged in unfair conduct within the meaning of the UCL

299    The benefit of any actions undertaken by Defendants in connection with the defect in the Class Vehicles is grossly outweighed by the harm caused to Plaintiff Menzer and the other members of the Class as a result of Defendants' misconduct Moreover, the nature of Defendants' misconduct has been consistently recognized as unfair conduct within the meaning of the UCL as it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers

300    Plaintiff Menzer and the other members of the Class have suffered actual injuries because, *inter alia,* they have been required to make out-of-pocket payments for repairs arising out of the defect in the Class Vehicles  Furthermore, Plaintiff Menzer and the other members of the Class have suffered actual injuries because they paid more to purchase or lease the Class Vehicles than they would have if all material information, including information regarding the defect in the Class Vehicles, had been disclosed to them

301    Defendants' unlawful, unfair and fraudulent business acts and practices continue through the date of this Complaint's filing and, absent a Court order, Defendants will not comply with their obligations under CAL BUS & PROF CODE § 17200

91

302    Under Business & Professions Code §17203, Plaintiff Menzer, on her own

behalf, and on behalf of all members of the Class, seeks a court order requiring

Defendants to immediately cease the above described acts of unfair competition and for

all further relief which is available, as well as appropriate and just to grant, under the

UCL

## COUNT XVIII

**(By Plaintiff Fowler, Individually, And On Behalf Of All Members Of The Class
Who Purchased Or Leased A Class Vehicle In The State Of Wisconsin For Unjust
Enrichment Under Wisconsin Common Law)**

303    The allegations of paragraph 1 through 135, except those that are

particular to Counts I through XVII, are re-alleged and incorporated herein by reference.

304    This Count is brought against Defendants pursuant to the common law

doctrine of Unjust Enrichment

305    At all times mentioned herein, Defendants developed, manufactured,

marketed and sold the Class Vehicles  The Class Vehicles are defective because they

were equipped with (i) Oiling Nozzles that failed to properly lubricate the Timing

Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing

Chains that are less robust than was in production prior to 1999, the result of which was

that these less robust Timing Chains would break when not properly lubricated

306    Defendants had knowledge of the design defect in as early as 1999 as a

result of Defendants' internal investigation of timing chain failures  Defendants also had

knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

307    Furthermore, Defendants had actual knowledge of the design defect

because of complaints received from owners and lessees of Class Vehicles whose Timing

Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

308     Defendants failed to disclose to Plaintiff Fowler and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

309     Plaintiff Fowler and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles   A portion of such monies was paid to and was received by Defendants

310.    Defendants retained these non-gratuitous benefits from Plaintiff Fowler and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge.  The retention of these benefits by Defendants under these circumstances was unjust and inequitable

311     Defendants had knowledge of and appreciated these non-gratuitous benefits

312     The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiff Fowler and the other members of the Class violates the principles of justice and equity   Therefore, Defendants must provide restitution to Plaintiff Fowler and the other members of the Class in a manner established by the Court

313.   Defendants' express warranty is limited to defects in material and workmanship and, accordingly, does not govern the subject matter of this design defect litigation or preclude this cause of action

## COUNT XIX

**(By Plaintiff Stoffer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Indiana For Unjust Enrichment Under Indiana Common Law)**

314   The allegations of paragraph 1 through 135, except those that are particular to Counts I through XVIII are re-alleged and incorporated herein by reference

315.   This Count is brought against Defendants pursuant to the common law doctrine of Unjust Enrichment

316   At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles  The Class Vehicles are defective because they were equipped with  (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

317   Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures  Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

318   Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

319    Defendants failed to disclose to Plaintiff Stoffer and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

320    Plaintiff Stoffer and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles   A portion of such monies was paid to and was received by Defendants

321    Defendants retained these non-gratuitous benefits from Plaintiff Stoffer and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge   The retention of these benefits by Defendants under these circumstances is unjust and inequitable

322    The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiff Stoffer and the other members of the Class violates the principles of justice and equity   Therefore, Defendants must provide restitution to Plaintiff Stoffer and the other members of the Class in a manner established by the Court

323    Defendants' express warranty is limited to defects in material and workmanship and accordingly does not govern the subject matter of this design defect litigation or preclude this cause of action

95

## COUNT XX

**(By Plaintiff Stoffer, Individually, And On Behalf Of All Members Of The Class
Who Purchased Or Leased Their Class Vehicles In The State Of Indiana For
Violations Of The Implied Warranty of Merchantability Pursuant To IND. CODE
ANN. § 26-2-314 *et seq.*)**

324    The allegations of paragraph 1 through 135, except those that are

particular to Counts I through XIX, are re-alleged and incorporated herein by reference

325.    The Class Vehicles are "goods" within the meaning of the Indiana Code

governing the Implied Warranty of Merchantability.

326    Defendants are "merchants" within the meaning of the Indiana Code

governing the Implied Warranty of Merchantability because they are sellers and

manufacturers of Class Vehicles

327    The Implied Warranty of Merchantability is implied in the sale of the

Class Vehicles and requires, among other things, that the Class Vehicles pass without

objection in the trade and are fit for the ordinary purposes for which the Class Vehicles

are used

328    The Class Vehicles do not function in their ordinary capacity and were not

merchantable at the time of sale because they were defectively designed

329    The defect in the Class Vehicles rendered the Class Vehicles non-

merchantable because they could not be used for their ordinary purposes and thereby

proximately caused the economic damages suffered by Plaintiff Stoffer and the other

members of the Class.

330    Plaintiff Stoffer provided Defendants with notice of the defect via letter on

April 10, 2008

331.    Any purported disclaimer or limitation of the Implied Warranty of

Merchantability on the part of Defendants is unconscionable and unenforceable because,

*inter alia*, Defendants had knowledge of the defect

## COUNT XXI

**(By Plaintiff Anderson, Individually, And On Behalf Of All Members Of
The Class Who Purchased Or Leased Their Class Vehicles In The State Of Illinois
For Unjust Enrichment Under Illinois Common Law)**

332    The allegations of paragraph 1 through 135, except those that are

particular to Counts I through XX, are re-alleged and incorporated herein by reference

333.    This Count is brought against Defendants pursuant to the common law

doctrine of Unjust Enrichment.

334.    At all times mentioned herein, Defendants developed, manufactured,

marketed and sold the Class Vehicles  The Class Vehicles are defective because they

were equipped with  (i) Oiling Nozzles that failed to properly lubricate the Timing

Chains, causing the Timing Chains to break and fail to function properly; and (ii) Timing

Chains that are less robust than was in production prior to 1999, the result of which was

that these less robust Timing Chains would break when not properly lubricated

335    Defendants had knowledge of the design defect as early as 1999 as a result

of Defendants' internal investigation of timing chain failures   Defendants also had

knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

336    Furthermore, Defendants had actual knowledge of the design defect

because of complaints received from owners and lessees of Class Vehicles whose Timing

Chains failed, and NHTSA's investigation of the design defect and the continuous

contact and updates provided to Defendants in connection therewith

337    Defendants failed to disclose to Plaintiff Anderson and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

338    Plaintiff Anderson and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles   A portion of such monies was paid to and was received by Defendants

339    Defendants retained these non-gratuitous benefits from Plaintiff Anderson and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge   The retention of these benefits by Defendants under these circumstances was unjust and inequitable

340.    The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiff Anderson and the other members of the Class violates the principles of justice and equity   Therefore, Defendants must provide restitution to Plaintiff Anderson and the other members of the Class in a manner established by the Court

341    Defendants' express warranty is limited to defects in material and workmanship and accordingly does not govern the subject matter of this design defect litigation or preclude this cause of action   Accordingly, Plaintiff Anderson does not have an adequate remedy at law

## COUNT XXII

**(By Plaintiff Anderson, Individually, And On Behalf Of All Class Members Who Purchased Or Leased A Class Vehicle In The State Of Illinois For Violations Of Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**

342    The allegations of paragraph 1 through 135, except those that are particular to Counts I through XXI, are re-alleged and incorporated herein by reference

343    At all times relevant herein Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA") was in effect  ICFA prohibits "unfair or deceptive practices "

344    Plaintiff Anderson and the other members of the Class are "consumers "

345    At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles  The Class Vehicles are defective because they were equipped with  (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

346    Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures  Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

347    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

99

348    Defendants failed to disclose to Plaintiff Anderson and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

349    Defendants' failure to disclose the existence of the defect constitutes an unfair and deceptive act under ICFA

350    Defendants intended, and continue to intend, that Plaintiff Anderson and the other members of the Class rely on the omission of the defect

351    If not for Defendants' deceptive and unfair act of concealing from Plaintiff and the Class the existence of the design defect in the Class Vehicles, Plaintiff Anderson and the other members of the Class would not have purchased the Class Vehicles

## COUNT XXIII

**(By Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott And Stoffer, Individually, And On Behalf Of All Those That Purchased Or Leased A Class Vehicle In Arkansas, California, Colorado, Connecticut, Hawaii, Indiana, Iowa, Michigan, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New York, Oklahoma, Vermont Or West Virginia For Unjust Enrichment)**

352    The allegations of paragraph 1 through 135, except those that are particular to Counts I through XXII, are re-alleged and incorporated herein by reference

353    This Count is brought against Defendants pursuant to the common law doctrine of Unjust Enrichment

354    At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles The Class Vehicles are defective because they were equipped with (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing

100

Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

355    Defendants had knowledge of the design defect as early as 1999 as a result of Defendants' internal investigation of timing chain failures    Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A.

356    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

357    Defendants failed to disclose to Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott and Stoffer and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

358    Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott and Stoffer and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles    A portion of such monies was paid to and was received by Defendants

359    Defendants retained these non-gratuitous benefits from Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott and Stoffer and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge    The retention of these benefits by Defendants under these circumstances was unjust and inequitable

101

360   The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott and Stoffer and the other members of the Class violates the principles of justice and equity   Therefore, Defendants must provide restitution to Plaintiffs Bauer, Cardwell, Faust, Menzer, Scott and Stoffer and the other members of the Class in a manner established by the Court

361.   Defendants' express warranty is limited to defects in material and workmanship and accordingly does not govern the subject matter of this design defect litigation or preclude this cause of action

## COUNT XXIV

**(By Plaintiff Fowler, Individually, And On Behalf Of All Those That Purchased Or Leased A Class Vehicle In Alaska, District Of Columbia, Georgia; Kansas, Kentucky Maine, Minnesota, Nevada, New Mexico, Oregon, Rhode Island, South Carolina, South Dakota, Utah, Virginia, Washington Or Wisconsin For Unjust Enrichment)**

362   The allegations of paragraph 1 through 135, except those that are particular to Counts I through XXIII, are re-alleged and incorporated herein by reference

363   This Count is brought against Defendants pursuant to the common law doctrine of Unjust Enrichment

364   At all times mentioned herein, Defendants developed, manufactured, marketed and sold the Class Vehicles The Class Vehicles are defective because they were equipped with (i) Oiling Nozzles that failed to properly lubricate the Timing Chains, causing the Timing Chains to break and fail to function properly, and (ii) Timing Chains that are less robust than was in production prior to 1999, the result of which was that these less robust Timing Chains would break when not properly lubricated

365    Defendants had knowledge of the design defect in as early as 1999 as a result of Defendants' internal investigation of timing chain failures  Defendants also had knowledge of the design defect as reflected in the June 1997 TSB 97-T-15A

366.    Furthermore, Defendants had actual knowledge of the design defect because of complaints received from owners and lessees of Class Vehicles whose Timing Chains failed, and NHTSA's investigation of the design defect and the continuous contact and updates provided to Defendants in connection therewith

367    Defendants failed to disclose to Plaintiff Fowler and the other members of the Class the material fact that the Class Vehicles contained defective Timing Chains and defective Oiling Nozzles

368    Plaintiff Fowler and the other members of the Class did not have knowledge of the defect at the time of purchase or lease and therefore, conferred non-gratuitous benefits, either directly or indirectly, upon Defendants by paying monies to retailers in exchange for their Class Vehicles  A portion of such monies was paid to and was received by Defendants

369    Defendants retained these non-gratuitous benefits from Plaintiff Fowler and the other members of the Class, regardless of the fact that Defendants failed to disclose the design defect of which Defendants had actual knowledge.  The retention of these benefits by Defendants under these circumstances was unjust and inequitable

370    Defendants had knowledge of and appreciated these non-gratuitous benefits

371    The unjust and inequitable retention of these benefits by Defendants derived from the purchases or leases of the defective Class Vehicles by Plaintiff Fowler

103

and the other members of the Class violates the principles of justice and equity

Therefore, Defendants must provide restitution to Plaintiff Fowler and the other members

of the Class in a manner established by the Court

372    Defendants' express warranty is limited to defects in material and

workmanship and accordingly does not govern the subject matter of this design defect

litigation or preclude this cause of action

## COUNT XXV

**(By Plaintiffs Burgos, Cardwell, Faust, Scott And Stoffer, Individually, And On
Behalf Of All Those That Purchased Or Leased A Class Vehicle In Alaska,
Arkansas, Colorado, Delaware, Hawaii, Indiana, Iowa, Louisiana, Maine,
Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,
Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Pennsylvania,
South Carolina, South Dakota, Virginia, West Virginia Or Wyoming And
Purchasers Of New Class Vehicles In Texas For Breach Of Implied Warranty Of
Merchantability)**

373    The allegations of paragraph 1 through 135, except those that are

particular to Counts I through XXIV, are re-alleged and incorporated herein by reference

374    The Class Vehicles are "goods" within the meaning of that term under the

Implied Warranty of Merchantability statutes of the States listed herein

375    Defendants are "merchants" within the meaning of that term under the

Implied Warranty of Merchantability statutes listed herein because they are sellers and

manufacturers of Class Vehicles

376    The Implied Warranty of Merchantability is implied in the sale of the

Class Vehicles and requires, among other things, that the Class Vehicles pass without

objection in the trade and are fit for the ordinary purposes for which the Class Vehicles

are used

377    The Class Vehicles do not function in their ordinary capacity and were not merchantable at the time of sale because they were defectively designed

378    The defect in the Class Vehicles rendered the Class Vehicles non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiffs Burgos, Cardwell, Faust, Scott and Stoffer and the other members of the Class.

379.    Plaintiffs Burgos, Cardwell, Faust, Scott and Stoffer provided Defendants with notice of the defect.

380    Any purported disclaimer or limitation of the Implied Warranty of Merchantability on the part of Defendants is unconscionable and unenforceable because, *inter alia*, Defendants had knowledge of the defect

## COUNT XXVI

**(By Plaintiffs Burgos, Cardwell, Faust, Scott And Stoffer, Individually, And On Behalf Of All Those That Purchased Or Leased A Class Vehicle In Alaska, Arkansas, Colorado, Delaware, Hawaii, Indiana, Iowa, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Pennsylvania, South Carolina, South Dakota, Virginia, West Virginia Or Wyoming, And Purchasers Of New Class Vehicles In Texas, For Breach Of Implied Warranty Of Merchantability Pursuant To 15 U.S.C. § 2301 *et seq.*)**

381    The allegations of paragraph 1 through 135, except those that are particular to Counts I through XXV, are re-alleged and incorporated herein by reference

382    This Count is brought against Defendants for breach of Implied Warranty of Merchantability pursuant 15 U.S.C. § 2301 *et seq*

383    The Class Vehicles are "goods"

384    Plaintiffs Burgos, Cardwell, Faust, Scott and Stoffer and the other members of the Class are "consumers"

385    Defendants are "merchants" because they are sellers and manufacturers of Class Vehicles

386    The Implied Warranty of Merchantability is implied in the sale of the Class Vehicles and requires, among other things, that the Class Vehicles pass without objection in the trade and are fit for the ordinary purposes for which the Class Vehicles are used

387    The Class Vehicles do not function in their ordinary capacity and were not merchantable at the time of sale because they were defectively designed

388    The defect in the Class Vehicles rendered the Class Vehicles non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiffs Burgos, Cardwell, Faust, Scott and Stoffer and the other members of the Class

389    Plaintiffs Burgos, Cardwell, Faust, Scott and Stoffer provided Defendants with notice of the defect

390    Any purported disclaimer or limitation of the Implied Warranty of Merchantability on the part of Defendants is unconscionable and unenforceable because, inter alia, Defendants had knowledge of the defect

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court

a    Certify this action as a class action under Rule 23,

b    Order Defendants to pay Plaintiffs and members of the Class an amount of

actual damages to be determined at trial,

c      Issue an injunction preventing Defendants from manufacturing and selling

the defective Class Vehicles,

d      Issue an order granting Plaintiffs reasonable costs and attorneys' fees, and

e      Grant such other relief as may be just and proper

Dated: June 11, 2008



By.      /s/ Michael A  Schwartz
         PAUL O  PARADIS
         MICHAEL A  SCHWARTZ
         GINA M. TUFARO
         EDWARD Y  KROUB
         **HORWITZ, HORWITZ &
         PARADIS,**
         **Attorneys at Law**
         28 West 44th Street
         New York, NY 10036
         Tel  212-404-2200
         Fax  212-404-2226
         mschwartz@hhplawny com

         JAMES E  MILLER
         LAURIE RUBINOW
         **SHEPHERD FINKELMAN
         MILLER & SHAH, LLP**
         65 Main Street
         Chester, CT 06412
         (Tel) (860) 526-1100
         (Fax)(860) 526-1120
         jmiller@sfmslaw com

         *Co-Lead Counsel for Plaintiffs
         and the Class*

107



WILLIAM L REINBRECHT
PAMELA A CAR
**CAR & REINBRECHT, PC**
8720 Fredrick Street
Suite 105
Omaha, NE 68124
Telephone (402) 391-8484
Facsimile (402) 391-1103

*Liaison Counsel for Plaintiffs and
the Class*

108

## CERTIFICATE OF SERVICE

I, Michael A Schwartz, hereby certify that on June 11, 2008, I caused a true and correct copy of Plaintiffs' Consolidated Amended Complaint to be served upon the following counsel of record for Defendants via electronic court filing and overnight mail (as indicated)

Timothy A Daniels
FIGARI & DAVENPORT, LLP
901 Main Street
3400 Bank of America Plaza
Dallas, Texas 75202
Telephone  (214) 939-2005
Facsimile  (214) 939-2090
(*via* FedEx and ECF)

Rodney M Confer
**KNUDSEN, BERKHEIMER,**
RICHARDSON & ENDACOTT, LLP
3800 VerMaas Place
Suite 200
Lincoln, NE 68502
Telephone  (402) 475-7011
Facsimile  (402) 475-8912
(*via* ECF only)

*Counsel for Defendants*

Dated  June 11, 2008

/s/ Michael A  Schwartz





**EXHIBIT**

1

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

3

4

5

6

7

| | | |
|---|---|---|
| IN RE SATURN L-SERIES TIMING | ) | MDL No. 1920 |
| CHAIN PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | 8:07CV298 |
| This document relates to: | ) | |
| ALL ACTIONS | ) | |
| (8:07cv298, 8:08cv78, 8:08cv79) | ) | |

8

9

### DECLARATION OF JEANNE MENZER

10

I, Jeanne Menzer, declare under penalty of perjury as follows:

11

12

1.    I make this declaration based on my personal knowledge except as to those

13

matters stated herein that are based upon information or belief, which I believe to be true.

14

2.    I am an adult citizen of the State of California, I reside in El Cajon, San Diego

15

County, California and I am one of the Plaintiffs in this litigation.

16

17

3.    I purchased for my own use a Saturn L-Series Class Vehicle, model year 2002

L100, on or about September 3, 2005 from Saturn of El Cajon, located in El Cajon, California

18

19

4.    To the best of my knowledge, information and belief, Defendant General Motors

20

Corporation is a company that maintains its corporate headquarters at 300 Renaissance Center,

21

Detroit, Michigan, and Defendant Saturn Corporation is a wholly owned subsidiary of General

22

Motors Corporation that maintains it corporate headquarters at Spring Hill, Tennessee, 37174

23

I declare under penalty of perjury under the laws of the State of California that the

24

foregoing is true and correct.  Executed this 9 day of June    , 2008 at San Diego, California.

25

26

Jeanne Menzer

27



2 of 3 DOCUMENTS

**IN RE SATURN L-SERIES TIMING CHAIN PRODUCTS LIABILITY LITIGATION; This document relates to: ALL ACTIONS (8:07cv298 & 8:08cv79)**

**MDL NO. 1920, 8:07cv298 & 8:08cv79**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

*2008 U.S. Dist. LEXIS 109978*

**November 7, 2008, Decided**
**November 7, 2008, Filed**

**COUNSEL:** [*1] For Amy Faust, individually, and on behalf of all others similarly situated, Plaintiff Brant C Martin, WICK, PHILLIPS LAW FIRM, Dallas, TX, Douglas P Dehler, SHEPHED, FINKELMAN LAW FIRM -WISCONSIN, Milwaukee, WI, Gina M Tufaro, Michael A Schwartz, Paul O Paradis, PRO HAC VICE, HORWITZ, HORWITZ LAW FIRM - NEW YORK, New York, NY, James E Miller, Laurie Rubinow, PRO HAC VICE, SHEPHERD FINKELMAN LAW FIRM, Chester, CT, William L Reinbrecht, Pamela A Car, CAR, REINBRECHT LAW FIRM, Omaha, NE

For Amy Faust, Brian Fowler, Jesus Leal, Jeanne Menzer, Charles Reid, Cynthia Scott, Debra Stoffer, William Anderson, Jeremy Bauer, Antonio Burgos, Jennifer Cardwell, Plaintiffs Michael A Schwartz, Paul O Paradis, PRO HAC VICE, HORWITZ, HORWITZ LAW FIRM - NEW YORK, New York, NY, Pamela A Car, William L Reinbrecht, CAR, REINBRECHT LAW FIRM, Omaha, NE

For Saturn, Corporation, General Motors, Corporation, Defendants A Erin Dwyer, Amanda Sotak, Timothy A Daniels, PRO HAC VICE, FIGARI, DAVENPORT LAW FIRM, Dallas, TX, Rodney M. Confer, KNUDSEN, BERKHEIMER LAW FIRM, Lincoln, NE

For U S Bankruptcy Court, Interested Party U S Bankruptcy Clerk, U S BANKRUPTCY COURT - OMAHA, Roman L Hruska [*2] Courthouse, Omaha, NE

**JUDGES:** Laurie Smith Camp, United States District Judge

**OPINION BY:** Laurie Smith Camp

**OPINION**

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss ("Motion") (Filing No 70 in Lead Case No 8 07cv298, and Filing No 68 in Member Case No 8 08cv79) ' The Defendants, General Motors Corporation ("GM") and Sat-

urn Corporation ("Saturn") have moved to dismiss the Plaintiffs' Consolidated Amended Complaint ("Complaint") (Filing No 59) under *Fed R Civ P 12(b)(6)* For the reasons stated below, the Motion will be granted in part and denied in part

> 1 Further references to Filing Numbers herein will be to the "Lead" Case 8 07cv298, so designated by Magistrate Judge Gossett in his March 28, 2008, Consolidation Order (Filing No 55)

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief " *Fed R Civ P 8(a)(2)* "While a complaint attacked by a *Rule 12 (b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic [*3] recitation of the elements of a cause of action will not do " *Bell Atlantic Corp v Twombly, 550 U S 544, 127 S Ct 1955, 1964-65, 167 L Ed 2d 929 (2007)*(quotations omitted) "The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief " *Benton v Merrill Lynch & Co , Inc , 524 F 3d 866, 870 (8th Cir 2008)*, (citing *Twombly, 127 S Ct at 1965*)

When ruling on a Defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true " *Twombly, 127 S Ct at 1965* The complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence "to substantiate the necessary elements of the plaintiff's claim *Id* The Court will grant a *Rule 12(b)(6)* motion "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief "

*Parnes v Gateway 2000, Inc , 122 F 3d 539, 546 (8th Cir 1997)*

## FACTS

The factual allegations in the Complaint are accepted as true for purposes of the pending motion In summary, the Plaintiffs allege that they suffered damage as a result of purchasing or leasing certain Saturn vehicles [*4] with defective timing chains and timing-chain oiling nozzles

The cars in question were manufactured by the Defendants in 1999 through 2002 and sold as model year 2000 -2003 vehicles To produce quiet vehicles, the Defendants allegedly used fragile timing chains with under-sized pins lacking adequate chrome coating The timing chains were oiled by means of oiling nozzles that prevented oil from flowing to the timing chains at low and idle speeds Plaintiffs contend that the lack of oil caused excessive heat in the timing chains, causing the metal to bend, stretch, and/or become brittle, and ultimately break

The Plaintiffs seek class certification and present twenty-six claims for relief, in the general categories of unjust enrichment, breach of implied warranty of merchantability, state Uniform Deceptive and Unfair Trade Practices Act violations, and state consumer protection law violations

The following factual allegations presented in the Consolidated Amended Complaint are material to the Defendants' pending motion to dismiss

The Plaintiffs in this case are eleven individuals residing in various states, all of whom purchased or leased one of three kinds of Saturn automobiles a model [*5] year 2000-2003 Saturn L-Series, a model year 2002-2003 Saturn Vue, or a model year 2003 Saturn Ion (collectively, "Class Vehicles") [2] Each of these three kinds of car was equipped with a 2 2L Ecotec L61 Engine, and each of these engines

included two important smaller parts a steel timing chain classified as GM production part number 90537338, and a timing chain oiling nozzle classified as GM production part 90537476 Some of the Plaintiffs purchased their cars new, and others used

> 2 The Plaintiffs have excluded certain model year 2001 Saturn L-Series cars, falling between VIN breakpoints 1Y504884 - 1Y559453, from the category of Class Vehicles These excluded L-Series cars have already been subject to a recall by GM for timing chain and oiling nozzle repairs

The Plaintiffs claim that the engines in their Saturn Class Vehicles were defectively designed in two ways The first alleged defect was in the design of the timing chain A timing chain synchronizes the motion of an engine's pistons with the motion of the engine's valves For a car engine to run efficiently, valves regulating the intake of fuel and expulsion of exhaust at one end of an engine's cylinders must open and close at [*6] precise intervals in relation to the pistons' movement up and down from the opposite end of the cylinders The timing chain connects a gear at the piston end of the cylinders to another gear at the valve end of the cylinders, so that the movements of the pistons and valves are linked. A malfunctioning timing chain can cause an engine to run inefficiently or stop running altogether A timing chain that breaks completely can cause extensive damage to the engine

Saturn changed the design of the timing chain used in its automobiles beginning in model year 1999, one year prior to the manufacture of the earliest Class Vehicles In an effort to reduce engine noise in comparison with earlier Saturn models, the company switched to a finer timing chain composed of smaller links and smaller pins connecting those links The Plaintiffs claim that this finer chain was weaker than the one Saturn previously designed Ac-

cording to the Plaintiffs, the smaller pins on the new timing chain were not coated with enough chrome to withstand normal wear and tear -- that is, they were insufficiently "chromized " This redesigned finer timing chain was substantially the same as the chain used in Class Vehicle [*7] engines

The second defect in the Class Vehicle engines, according to the Plaintiffs, was in the design of the timing chain's oiling nozzle An oiling nozzle distributes engine oil from a car's oil pump onto the timing chain while the engine is running Lubrication of the timing chain reduces friction Reduced friction means increased engine efficiency Keeping friction low also keeps the temperature of the steel in the timing chain low This is important because an overheated timing chain is more likely to bend, stretch, or become brittle, which can cause the chain to malfunction or break

The oiling nozzles in the Plaintiffs' Saturn Class Vehicles were designed with a feature known as a pintle valve A pintle valve prevents oil from flowing from the oiling nozzle to the timing chain when a car runs at low or idle speeds The Plaintiffs claim that an unintended consequence of the pintle valve design in their Saturn Class Vehicles was that an insufficient amount of oil lubricated the timing chain

These two alleged design defects--a weak and insufficiently chromized timing chain, plus an insufficiently lubricating oiling nozzle--caused the timing chains in the Plaintiffs' Class Vehicles [*8] to overheat, bend, stretch, and/or become brittle, and eventually break and damage Plaintiffs' cars Plaintiffs incurred repair costs ranging from $ 900 to $ 3,700 each One Plaintiff's engine was damaged beyond repair No Plaintiff brings a claim for personal injury

The Plaintiffs claim that the Defendants knew at the outset of production that both the timing chain and oiling nozzle in the 2 2L Ecotec L61 Engine installed in the Saturn Class Vehicles were defectively designed As de-

scribed above, the Defendants redesigned the timing chain used in model year 1999 and successive Saturn automobiles, switching to a finer chain with smaller pins, in an effort to reduce engine noise Plaintiffs claim this proves the Defendants knowingly sacrificed strength in the timing chain design in their Class Vehicles

The Plaintiffs allege similar foreknowledge with respect to oiling nozzles During the mid-1990s, the National Highway Traffic Safety Administration ("NHTSA") fielded an unspecified number of complaints about timing chain failures in Saturn vehicles In June of 1997, in response to these complaints, the Defendants issued a Technical Service Bulletin to Saturn dealerships that included [*9] instructions to Saturn mechanics for repairing broken timing chains Whenever they replaced a timing chain on a model year 1991-1996 Saturn car, the mechanics were instructed to make an alteration to the engine's oil pump -- but not the oiling nozzle -- in order to lubricate the newly installed timing chain with a constant flow of oil The Plaintiffs believe that this Technical Service Bulletin is conclusive evidence that the Defendants knew, at least as early as June 1997, that an engine must be designed to provide a constant flow of oil to its timing chain But the Plaintiffs do not present any claim that the Defendants were aware in 1997 that a pintle valve oiling nozzle could prevent sufficient oil flow

In addition to foreknowledge, the Plaintiffs claim the Defendants had actual knowledge of the alleged design defects in the Class Vehicle engines once they were released into the stream of commerce, and that the Defendants deceptively concealed this information

Beginning in the year 2000, NHTSA and various consumer groups began to field complaints about timing chain failures in Class Vehicles In late 2001 or early 2002, the Defendants redesigned Saturn's timing chain for a second [*10] time and also made a change to the oiling nozzle design A year later, in June 2003, the Defendants issued a Technical Ser-

vice Bulletin instructing Saturn mechanics who encountered broken timing chains on Class Vehicles to replace both the old timing chain and oiling nozzle with newer versions No public recall was issued

In February 2006, in response to the complaint of a consumer advocacy group, NHTSA initiated an investigation into timing chain failures in model year 2000-2003 Saturn L-Series and 2003 Saturn Ion vehicles [3]

> 3    NHTSA's investigation did not encompass the model year 2002-2003 Saturn Vue automobiles that are also included in the Class Vehicles category

In correspondence with NHTSA in April 2006, GM acknowledged that it received more than one thousand consumer or field reports of broken or replaced timing chains and over 2,200 warranty claims involving broken timing chains in model year 2000-2003 Saturn L-Series cars. GM also admitted that the Defendants had been aware of potential problems in the engines of L-Series Class Vehicles shortly after the first model year 2000 cars were assembled in 1999 GM stated that, in 2001, it began a specific investigation of broken timing [*11] chains, and, in August 2002, it released new versions of the timing chain and oiling nozzle The newer timing chain featured higher-chromized pins -- approximately 35% more chrome was used -- and the new oiling nozzle design eliminated the pintle valve

In this correspondence with NHTSA, GM reached two conclusions that the Plaintiffs now contest First, GM concluded that timing chain failure in Saturn L-Series Class Vehicles was most frequent in cars manufactured during a four-month window between November 2000 and February 2001. (NHTSA later pointed out that over one-third of timing chain failure claims arose from this group of cars, which constituted only 5% of the vehicles under investigation ) Second, GM concluded that its analysis showed the majority of timing chain

failures occurred during high chain load situations like engine startup rather than times when the vehicles were moving at higher speeds

NHTSA disagreed with GM's second conclusion Its own data showed a higher percentage of timing chain failures while Saturn cars were driven at higher speeds than GM's So, in June 2006, NHTSA upgraded its investigation of the Saturn timing chain failures to its highest level of scrutiny, [*12] an Engineering Analysis, but only for those L-Series vehicles produced within the four-month window

GM issued a voluntary recall in December 2007 for all Saturn L-Series cars manufactured during the four-month window from November 2000 to February 2001 GM offered to replace all timing chains and oiling nozzles in these vehicles and also to reimburse costs of prior repairs to owners whose timing chains had malfunctioned In anticipation of this recall, NHTSA discontinued its investigation.

The Plaintiffs allege that GM's recall was insufficient, since it included only 20,514 of an estimated 412,149 Saturn vehicles featuring the 2 2L Ecotec L61 Engine and including GM production part number 90537338 (the allegedly weaker and insufficiently chromized timing chain) and GM production part 90537476 (the oiling nozzle designed with the pintle valve) The Plaintiffs dispute GM's conclusion -- first articulated in GM's April 2006 correspondence with NHTSA -- that timing chains failed at an unacceptable rate only in Saturn L-Series Class Vehicles manufactured within GM's designated four-month window While vehicles manufactured within this four-month window suffered timing chain failures at [*13] disproportionately high rates, the Plaintiffs also present warranty data showing that hundreds of other L-Series, Vue, and ION Class Vehicles not covered by GM's recall saw their timing chains fail Plaintiffs estimate that there are thousands of other Saturn Class Vehicles not included in GM's warranty data, whose timing chains also failed Additional timing chain fail-

ures, Plaintiffs believe, are likely to have occurred in vehicles not covered by the recall

Plaintiffs contend that in addition to Defendants' foreknowledge and actual knowledge of timing chain-related design defects in the Class Vehicles, the Defendants misleadingly represented the strength of steel timing chains as a desirable feature of their automobiles The timing chain is not mentioned in the Maintenance Schedules printed in the Owner's Handbooks for Class Vehicles, which schedules recommended periodic inspection or replacement of parts Plaintiffs also point to promotional materials for model years 1998 and 1999 Saturn vehicles -- but not Class Vehicles -- claiming that the steel timing chains in Saturn cars are more durable than the rubber timing belts used in other kinds of vehicles

In their Motion, Defendants [*14] move to dismiss the majority of Plaintiffs' Implied Warranty claims, Unjust Enrichment claims, Consumer Protection Law claims, and Class Action claims This Court will address each claim individually

## ANALYSIS

### I. *Implied Warranty Claims*

The Defendants argue that the implied warranty claims presented by Plaintiffs Burgos, Cardwell, Scott, Bauer, Faust and Stoffer should be dismissed because (1) the claims are barred by the applicable state statute of limitations and/or (2) Plaintiffs failed to assert that the vehicles were unmerchantable

### A. *Statutes of Limitations*

Upon review of the record and applicable law, this Court finds that Plaintiffs have pled facts sufficient to show that their implied warranty claims are not barred by Nebraska's statute of limitations In their Complaint, Plaintiffs alleged facts to support the claim that Defendants committed acts of fraudulent concealment which, if accepted as true, would result in an

equitable tolling of the applicable statute of limitations The facts that Plaintiffs have alleged, "when taken as true, raise more than a speculative right to relief" *Benton v Merrill Lynch & Co , Inc ,* 524 F 3d 866, 870 *(8th Cir 2008)*(citing *Twombly,* 127 S Ct at 1965)

Plaintiffs **[*15]** Burgos, Cardwell, Scott, Bauer, Faust and Stoffer's implied warranty claims all arose in different states, and consequently, this Court must follow Nebraska's conflict of law rules in deciding which statute of limitations to apply to each Plaintiff's claim *In re Derailment Cases,* 416 F 3d 787, 794 *(8th Cir 2005)*("A federal district court sitting in Nebraska must follow Nebraska's conflict of law rules ") Nebraska's conflict of law rules distinguish substantive rights from procedural matters, if the question of law is a procedural matter, then the federal district court must follow the law of the forum *Whitten v Whitten,* 250 Neb 210, 548 N W 2d 338, 340 *(Neb 1996)*(internal citations omitted)("Although substantive rights of parties to an action are governed by the state where the cause of action arose, procedural matters are dictated by the law of the forum ") In Nebraska, a statute of limitations is considered to be a procedural matter, *not* substantive *Id* ("Generally, laws prescribing the time within which particular rights may be enforced relate to remedies only and not substantive rights A statute of limitations does not create or extinguish a right, but only places a limitation on a **[*16]** remedy which may be tolled or waived ")(internal citations omitted) This Court must apply Nebraska's statute of limitations to each Plaintiff's implied warranty claim

Defendants argue, however, that the recent passage of a Nebraska Statute (*Neb Rev Stat § 25-3206(2006)*) changes the *Whitten* Court's distinction between substantive and procedural matters and instead requires that "'Nebraska courts generally apply the limitations period contained in the law of the state upon which a claim is substantively based '" Def Brief at 9

(quoting *Eggleton v Plasser & Theurer Exp Von Bahnbaumaschinen Gesellschaft,* 495 F 3d 582, 585 n 1 *(8th Cir 2007)*) The Defendants' suggestion is misplaced. As the *Eggleton* Court noted, the "statute applies only to claims accruing 'after July 14, 2006 '" *Eggleton,* 495 F 3d at 585, n 1(quoting *Neb Rev Stat § 25-3206*(2006)) [4]

> 4 *See also, Ndunguru v Kone, Inc , No 8 07CV286, 2008 U S Dist LEXIS 3428, *4, 2008 WL 53603 (D Neb Jan 02, 2008)*(holding that *Neb Rev Stat § 25-3206* did not apply to the case because the "cause accrued in June, 2003, well before the repeal" the legislature issued in *Neb Rev Stat § 25-3206*(2006))

Because none of the Plaintiffs' claims **[*17]** accrued after July 14, 2006, [5] the applicable statute of limitations governing all the Plaintiffs' implied warranty claims in this action is the law of the forum, Nebraska, and not the "law of the state upon which [the] claim is substantially based " *See id*

> 5 While the Nebraska Supreme Court has yet to rule on whether *Neb UCC § 2-725(1)*'s four year statute of limitations on a vehicle starts over at zero every time the used vehicle is sold to a new consumer, a reasonable interpretation of the Supreme Court's decision in *Witherspoon v Sides Const Co , Inc ,* leads this Court to conclude that *Neb UCC § 2-725(1)*'s four year statutory period does not start afresh when the initial consumer sells his/her vehicle used to a new consumer *See Witherspoon v Sides Constr Co , Inc ,* 219 Neb 117, 362 N W 2d 35, 40 *(Neb 1985), see also,* Note, John G Westrick, *Statutes of Limitations and Repose--The Decline and Rise of Statutes of Repose--*Witherspoon v Sides Construction Co *Annual Survey of Nebraska Law,* 19 CREIGHTON L REV 509, 539 (1985-86)("Products liability actions un-

der *section 25-224* will accrue when the ultimate consumer purchases the product The legislative history indicates that resale from an **[\*18]** ultimate consumer to another will not restart the statutory period ") By analogy, this Court finds that the "resale from an ultimate consumer" does "not restart the statutory period" in regards to *Neb UCC § 2-725(1)*

In Nebraska, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." *Neb UCC § 2-725(1)* Defendants have argued, and Plaintiffs have not disputed, that all of the Plaintiffs' claims accrued well over four years ago [6] Consequently, all of the Plaintiffs' claims ordinarily would be time-barred by Nebraska's applicable statute of limitations Plaintiffs argue, however, that the applicable statute of limitations has been waived as a consequence of Defendants' fraudulent acts of concealment In reviewing the question of whether equitable tolling applies to the Plaintiffs' claims in this case, this Court looks to Nebraska law

6  To determine the date of accrual for each of the Plaintiffs' implied warranty claims, this Court looked to *Neb UCC § 2-725(2)* which states that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach A breach of warranty **[\*19]** occurs when tender of delivery is made " For purposes of determining whether the Plaintiffs' claims accrued before or after July 14, 2006, *Neb UCC § 2-725(2)* dictates that all the Plaintiffs' claims accrued prior to that date, as none of the Plaintiffs contends that he or she purchased a vehicle after July 14, 2006 While Plaintiffs argue that *Neb UCC § 2-725(1)*'s statute of limitations should not bar Plaintiffs' claims because Defendants fraudulently concealed the automobiles' defects, the alleged acts of fraudulent concealment do not affect

the date of accrual under *Neb UCC § 2-725(2)*, instead, if accepted as true by the trier of fact, the alleged fraudulent concealment would only act to equitably toll the applicable statute of limitations Defendants have conceded, and Plaintiffs have not contested, the conclusion that all Plaintiffs' claims accrued at the time they purchased their vehicles

Under Nebraska law, "if a petition, challenged under the statute of limitations, facially shows that a cause of action is barred by the statute of limitations, a plaintiff must allege facts sufficient to avoid the bar of a statute of limitations and, at trial, must prove facts avoiding the **[\*20]** statute of limitations " *Broekemeier Ford, Inc v Clatanoff,* 240 Neb 265, 481 N W 2d 416, 421 (Neb 1992)(citing *DeSciose v Chiles, Heider & Co ,* 239 Neb 195, 476 N W 2d 200 (Neb 1991)) Because the petition facially shows that all Plaintiffs' implied warranty claims are barred by Nebraska's applicable statute of limitations, the burden is on the Plaintiffs to allege facts that support an equitable tolling of the statute At trial, the Plaintiffs will bear the burden of persuading the trier of fact that such allegations of fraudulent concealment are true *Id*

In Nebraska, "the doctrine of fraudulent concealment estops a defendant from asserting a statute of limitations defense when the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the malpractice In addition, equitable estoppel arises from active or affirmative efforts to conceal the malpractice " *Schendt v Dewey,* 252 Neb 979, 568 N W 2d 210, 213 (Neb 1997) "One who wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of suit cannot avail himself of the **[\*21]** statutes of limitation as a defense Estoppel may be applied to prevent a fraudulent or inequitable re-

sort to a statute of limitations " *MacMillen v A H Robins Co, Inc, 217 Neb 338, 348 N W 2d 869, 871 (Neb 1984)* (internal citations omitted) Thus the *MacMillen* Court reasoned that "[t]he issue to be determined is whether the defendant is estopped from raising the statute of limitations as a defense because defendant fraudulently concealed its knowledge of the dangerousness of [defendant's product] " *Id* (internal citations omitted)

In this case, Plaintiffs have alleged facts to support their contention that Defendants fraudulently concealed their knowledge that the steel timing chains and oiling nozzles were defective First, Plaintiffs claim that the Defendants knew at the outset of production that both the timing chain and oiling nozzle in the 2 2L Ecotec L61 Engine installed in the Saturn Class Vehicles were defectively designed In June 1997, in response to complaints received by NHTSA, the Defendants issued a Technical Service Bulletin to Saturn dealerships that included instructions to Saturn mechanics for repairing broken timing chains The Plaintiffs assert that this Technical Service **[\*22]** Bulletin shows that the Defendants knew, at least as early as June 1997, that an engine must be designed to provide a constant flow of oil to its timing chain

In addition to foreknowledge, the Plaintiffs claim that the Defendants had actual knowledge of the alleged design defects in the Class Vehicle engines once they had been released into the stream of commerce, and that the Defendants deceptively concealed this information Beginning in 2000, NHTSA and various consumer groups began to field complaints of timing chain failures in Class Vehicles Plaintiffs have alleged that in late 2001 or early 2002, the Defendants redesigned Saturn's timing chain for a second time and changed the oiling nozzle design. According to Plaintiffs, in June 2003, the Defendants issued a Technical Service Bulletin instructing Saturn mechanics who encountered broken timing chains on Class Vehicles to replace both the old timing chain and oiling nozzle with the newer versions

Plaintiffs claim that in correspondence with NHTSA in April 2006, GM acknowledged that it had received more than one thousand consumer or field reports of broken or replaced timing chains and over 2,200 warranty claims involving broken **[\*23]** timing chains in model year 2000-2003 Saturn L-Series cars In this correspondence, GM allegedly admitted that the Defendants had been aware of potential problems in the engines of L-Series Class Vehicles shortly after the first model year 2000 cars were assembled in 1999 GM stated that in 2001 it began a specific investigation of broken timing chains, and in August 2002 it released new versions of the timing chain and oiling nozzle. The newer timing chain featured higher-chromized pins -- approximately 35% more chrome was used -- and the new oiling nozzle design eliminated the pintle valve.

Finally, the Plaintiffs contend that the Defendants misleadingly represented the strength of steel timing chains as a desirable feature of their automobiles The timing chain is not mentioned in the Maintenance Schedule printed in the Owner's Handbooks for Class Vehicles, which lists recommended intervals for the inspection or replacement of parts The Plaintiffs point to promotional materials for model year 1998 and 1999 Saturn vehicles -- but not Class Vehicles -- that promoted steel timing chains in Saturn cars as more durable than the rubber timing belts used in other kinds of vehicles

This **[\*24]** Court finds that Plaintiffs have alleged sufficient facts to support their contention that Defendants knew there were defects in the design of their steel timing chains and oiling nozzles and that Defendants deceptively concealed that information from Plaintiffs Because the question of whether Plaintiffs were fraudulently deceived by Defendants' actions "presents a mixed question of law and fact [the] complaint *should not be dismissed on mo-*

tion" and instead the issues of fact concerning Defendants' alleged fraudulent actions should be presented to the trier of fact *MacMillen, 348 N W 2d at 872* (internal quotations omitted)

Because it is clear from the Complaint that Plaintiffs' claims ordinarily would be time-barred by the statute of limitations, at trial Plaintiffs will bear the burden of demonstrating to the trier of fact the Defendants' alleged fraudulent acts of concealment *See Broekemeier Ford, Inc v Clatanoff, 240 Neb 265, 481 N W 2d 416, 421 (Neb 1992)*. If Plaintiffs fail to persuade the trier of fact that Defendants fraudulently concealed their products' defects, Plaintiffs' implied warranty claims will be barred by the statute of limitations as a matter of law To dismiss these **[*25]** claims at this stage in the proceedings would be improper, because where a plaintiff has sufficiently alleged facts to support an inference of fraud, the "motion to dismiss should be denied and [the] plaintiff [should be] permitted to litigate [the] estoppel issue" *MacMillen, 348 N W 2d at 872* (citing *Erbe v Lincoln Rochester Trust Co , 13 A D 2d 211, 214 N Y S 2d 849 (N Y App Div 1961), appeal dismissed, 11 N Y 2d 754, 181 N E 2d 629, 226 N Y S 2d 692 (N Y 1962)*)

Accordingly, Defendants' Motion to dismiss Plaintiffs' implied warranty claims based on the applicable statute of limitations will be denied

### B. *Unmerchantability*

This Court will also deny Defendants' Motion to dismiss Burgos, Cardwell, Scott, Bauer, and Faust's implied warranty of merchantability claims based on Defendants' assertion that these Plaintiffs failed to plead their vehicles were unmerchantable The Court, however, will grant Defendants' Motion to dismiss Stoffer's implied warranty of merchantability claim, for the reasons described below

In their Motion, Defendants argue that this Court should dismiss Plaintiffs' implied warranty claims because Plaintiffs have failed to plead that their vehicles were not merchantable, or that they were not "fit for their **[*26]** ordinary purpose " Defendants argue that the "ordinary purpose of an automobile is to provide transportation," and because the automobiles did provide the Plaintiffs with transportation for thousands of miles, Plaintiffs have failed to show their "vehicles were not merchantable at the time of original sale or delivery " Def Brief at 13

The applicable law in each Plaintiff's state differs, however, and the common language of "ordinary purpose" in *UCC Article 2-314* has been interpreted to have slightly different meanings than merely to "provide transportation " These interpretations vary from state to state and require this Court to review each claim with a degree of scrutiny that will ensure that the Court does not improperly extinguish an individual Plaintiff's claim by applying the wrong state law

In Nebraska, "[a] federal district court must follow Nebraska's conflict of law rules " *In re Derailment Cases, 416 F 3d 787, 794 (8th Cir 2005)* Because the language of *UCC Article 2-314* contains the statutory language that gives rise to the Plaintiffs' claims, the interpretation of the phrase "ordinary purpose" determines the substantive rights of the parties in the action Consequently, **[*27]** the Court must apply the law "governed by the state where the cause of action arose " *Whitten v Whitten, 250 Neb 210, 548 N W 2d 338, 340 (Neb 1996)*(internal citations omitted) In evaluating Defendants' Motion to dismiss all six claims, the Court must apply the applicable law defining "ordinary purpose" in the six different states from which each of the six different Plaintiffs' bring their claims

All six of the Plaintiffs' respective states have adopted the same UCC language establishing the implied warranty of merchantability To state a claim for breach of that implied warranty, all Plaintiffs must allege facts showing their vehicles were not "fit for the ordinary

purposes for which such goods are used " *See 13 Pa C S A § 2314; Neb U C C 2-314, Mich Comp Laws § 440 2314, Mo Ann Stat § 400 2-314, Iowa Code § 554 2314, Ind Code Ann § 26-1-2-314* Because state courts in these six states have interpreted the words "ordinary purpose" to have different meanings, this Court will evaluate each Plaintiff's individual claim under the law of the state in which the Plaintiff's claim arose

### 1. Plaintiff Burgos in Pennsylvania

In Pennsylvania, the implied warranty of merchantability is "a warranty **[*28]** that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used " *Moscatiello v Pittsburgh Contractors Equip Co , 407 Pa Super 363, 595 A 2d 1190, 1193 (Pa Super Ct 1991), citing 13 Pa C S A § 2314, appeal denied, 529 Pa 650, 602 A 2d 860 (Pa 1992)* The Pennsylvania Superior Court has interpreted this provision of the UCC to mean that the "warranty serves to protect buyers from loss where the goods purchased are below commercial standards " *Borden, Inc v Advent Ink Co , 701 A 2d 255, 258 (Pa Super Ct 1997)*(internal quotations omitted) "Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a 'safe condition' and 'substantially free of defects ' Thus, 'where a car can provide safe, reliable transportation[,] it is generally considered merchantable '" *Hornberger v General Motors Corp , 929 F Supp 884, 888 (E D Pa 1996)*(quoting *Carlson v General Motors Corp , 883 F 2d 287, 297 (4th Cir 1989), cert denied, 495 U S 904, 110 S Ct 1923, 109 L Ed 2d 287, 910, (1990)*)

Consequently, the standard for "ordinary purpose" in Pennsylvania is not merely a car that provides transportation, but a car **[*29]** that provides "safe, reliable transportation" in a "safe condition" that is "substantially free of defects " In the Complaint, Plaintiff Burgos alleges he "was operating his Class Vehicle on or about January 24, 2008, when the Timing Chain broke, damaging engine valves and causing the Class Vehicle to stop operating, necessitating repairs costing over $ 900 00 According to the '2002 L-Series Maintenance Schedule,' which accompanied the '2002 L-Series Owner's Handbook,' the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle " Complaint at 3-4 Arguably a car that ceases to operate, especially when due to a mechanical failure not listed in the routine maintenance schedule, is *not* a car that provides "safe, reliable transportation " Nor is a car with a faulty timing chain a car that is "substantially free of defects "

Given the facts Burgos has alleged, there is more than a speculative chance that he will succeed in establishing that his automobile did not provide "safe, reliable transportation" in a "safe condition" that was "substantially free of defects " Accordingly, this Court will deny Defendants' Motion to Dismiss **[*30]** Plaintiff Burgos's implied warranty of merchantability claim

### 2. Plaintiff Cardwell in Nebraska

In Nebraska, "to establish a breach of the implied warranty of merchantability, there must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury both proximately and in fact A breach of warranty has been found to exist where the item sold failed to perform adequately because of a lack of quality inherent within the item itself " *O'Keefe Elevator Co , Inc v Second Ave Props , Ltd , 216 Neb 170, 343 N W 2d 54, 56 - 57 (Neb 1984)*. Therefore, to establish that her car did not serve its "ordinary purpose," Cardwell cannot simply plead that her car failed to "provide transportation." She must allege facts sufficient to establish that the car she purchased deviated from "the standard of merchantability

at the time of sale" and that the car "failed to perform adequately because of a lack of quality inherent within the item itself " *Id*

Caldwell's factual allegations fit well within the realm of Nebraska courts' interpretation of *Neb U C C 2-314*'s "ordinary purpose" test In the Complaint, Cardwell alleges she "was [*31] operating her Class Vehicle on or about January 4, 2008, when the Timing Chain broke, damaging engine valves and causing the Class Vehicle to stop operating, necessitating repairs costing over $ 2,700 According to the '2000 L-Series Maintenance Schedule,' which accompanied the '2000 L-Series Owner's Handbook,' the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle " Complaint at 4

These allegations create a "reasonable expectation    that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim *Twombly, 127 S Ct at 1965* Cardwell has alleged facts creating a reasonable expectation that she will be able to produce evidence to demonstrate that 1) her vehicle with a defective timing chain and oiling nozzle deviated from the standard of merchantability in Nebraska; 2) the defect existed at the time she purchased the vehicle, and 3) her vehicle "failed to perform adequately because of a lack of quality inherent within the item itself " *O'Keefe, 216 Neb 170, 343 N W 2d 54, 56 - 57* Consequently, Cardwell's implied warranty of merchantability claim survives Defendants' Motion to Dismiss, and is [*32] left as "a factual question for jury determination " *Adams v Am Cyanamid Co , 1 Neb Ct App 337, 498 N W 2d 577, 584 (Neb Ct App 1992)*("Whether there was a breach of implied warranty of merchantability is a factual question for jury determination ")

### 3. Plaintiff Scott in Michigan

In Michigan, "[t]o establish a prima facie case of breach of implied warranty, a plaintiff

must show that goods were defective when they left the possession of the manufacturer or seller " *Guaranteed Const Co v Gold Bond Prods , 153 Mich App 385, 395 N W 2d 332, 336 (Mich Ct App 1986)*(citing *Kupkowski v Avis Ford, Inc , 395 Mich 155, 235 N W 2d 324 (Mich 1975)*) To establish the requisite defect, the plaintiff must show that the "product is not reasonably fit for its intended, anticipated or reasonably foreseeable use " *Id* (citations omitted) "Merchantable is not a synonym for perfect " *Id* Instead, the question is whether the "the goods are of average quality within the industry " *Bosway Tube & Steel Corp v McKay Mach Co , 65 Mich App 426, 237 N W 2d 488, 490 - 491 (Mich Ct App 1975)* "As to goods accepted, the burden is on the buyer to establish any claimed breach of warranty " *Guaranteed Const Co , 395 N W 2d at 336*

The Michigan Circuit Court has held [*33] that the "ordinary purpose" of a car is to "provide safe, reliable transportation " *Koscielny v Ford Motor Co , No 05-527127-NZ, 2006 WL 1726486 at *5 (Mich Cir Ct , Jun 21, 2006)*(citing *Carlson, 883 F 2d at 297* The *Koscielny* Court reasoned that "[a] car not only has to provide transportation, but to do so with a certain level of ease and comfort    a vehicle that stalls may be dangerous " *Id*

Scott's factual allegations serve to "raise more than a speculative right to relief " *Benton, 524 F 3d at 870* (citing *Twombly, 127 S Ct at 1965*) Notably, Scott alleges that she "was driving her Class Vehicle on September 25, 2007, when the Timing Chain broke, damaging an engine valve and causing the Class Vehicle to stop operating, necessitating repairs costing over $ 2,200 According to the '2002 Lseries Maintenance Schedule,' which accompanied the '2002 L-Series Owner's Handbook,' the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle " Complaint at 7 Scott alleges that her vehicle stopped operating while

she was driving as a result of the broken timing chain, which the car's manual did not indicate would need to be [*34] replaced during the life of car

Scott has alleged sufficient facts to support her contention that the car she purchased did not satisfy the "ordinary purpose" of a car purchased in Michigan, the facts that she has alleged support the argument that her car was "defective when [it] left the possession of the manufacturer or seller," was not of "average quality within the industry," and did not "provide safe, reliable transportation " *Guaranteed Const Co , 395 N W 2d at 336*, Bosway, 237 N W 2d at 490 - 491, Koscielny, 2006 WL 1726486 at *5 (internal quotations omitted) Scott's implied warranty of merchantability claim, therefore, survives Defendant's Motion to Dismiss

#### 4. Plaintiff Bauer in Missouri

In Missouri, to establish a breach of an implied warranty of merchantability, "a plaintiff must prove (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury " *Ragland Mills, Inc v General Motors Corp , 763 S W 2d 357, 360 (Mo App 1989)*(internal citations omitted) "There [*35] is no doubt that an implied warranty of merchantability extends to automobiles in this jurisdiction " *Id* "Lack of merchantability may be proven either by showing a specific defect in goods or by circumstantial evidence " *Plunk v Hedrick Concrete Prods Corp , 870 S W 2d 942, 947 (Mo App 1994)*(citation omitted) In *Ragland Mills*, the Missouri Court of Appeals for the Southern District held that Plaintiff's statements that the "automobile went out of control during normal use and struck a concrete wall [and] was extensively damaged . constitute[d] substantial evidence that the Cadillac was not fit for

the ordinary purpose for which it was intended " *Ragland Mills, 763 S W 2d at 360 (Mo App 1989)*

Bauer's factual allegations support a claim that his vehicle did not serve its "ordinary purpose" in accordance with Missouri law Bauer alleges that he "was operating his Class Vehicle on or about July 17, 2007, when the Timing Chain broke, damaging an engine valve and causing the Class Vehicle to stop operating, necessitating repairs costing over $ 2,600 According to the '2002 L-Series Maintenance Schedule,' which accompanied the '2002 L-Series Owner's Handbook,' the Timing [*36] Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle " Complaint at 3

"Lack of merchantability may be proven by showing a specific defect," and Bauer's allegations point to Defendants' faulty timing chains and oiling nozzles as the specific defect that caused his vehicle to malfunction *Plunk, 870 S W 2d at 947* (citation omitted) Like the car at issue in *Ragland Mills*, Bauer's vehicle, through no fault of his own, ceased to operate "during normal use" and "was extensively damaged " Bauer has pled the necessary elements to establish that his car did not serve its "ordinary purpose " He has, therefore, met his burden of sufficiently pleading facts that "raise more than a speculative right to relief " *Benton, 524 F 3d at 870* (citing *Twombly, 127 S Ct at 1965*)

#### 5. Plaintiff Faust in Iowa

In Iowa, "the implied warranty of merchantability involves the fitness of goods for their ordinary purpose [T]his theory requires the plaintiff to prove (1) a merchant sold the goods, (2) the goods were not 'merchantable' at the time of sale, (3) injury or damage occurred to the plaintiff's property, (4) the defective nature of the goods [*37] caused the damage "proximately and in fact," and (5) notice was given to the seller of the damage *Renze Hy-*

2008 U S Dist LEXIS 109978, *

brids, Inc v Shell Oil Co , 418 N W 2d 634, 638 (Iowa 1988) The Iowa Supreme Court has held that "a warranty of merchantability is based on a purchaser's reasonable expectation that goods .. will be free of significant defects and will perform in the way goods of that kind should perform " Wright v Brooke Group Ltd , 652 N W 2d 159, 180-81 (Iowa 2002)(internal quotations omitted) "More recently, [the Iowa Supreme Court] has held that proof of a 'serious product defect' was sufficient to support submission of strict liability and breach of warranty theories " Id at 181 Consequently, Iowa courts examine "whether the product in question was 'defective as manufactured' and whether it was 'manufactured in conformance with applicable industrial standards '" The Conveyor Co v Sunsource Tech Servs , Inc , 398 F Supp 2d 992, 1000-01 (N D Iowa 2005)(citing Randa v U S Homes, Inc , 325 N W 2d 905, 910 (Iowa Ct App 1982))

Faust's factual allegations suffice to substantiate her implied warranty of merchantability claim under Iowa law In the Complaint, Faust alleges that she "was **[*38]** driving her Class Vehicle on November 16, 2006, when the Timing Chain broke, damaging the engine beyond repair and causing the Class Vehicle to stop operating According to the '2000 L-Series Maintenance Schedule,' which accompanied the '2000 L-Series Owner's Handbook,' the Timing Chain on this Class Vehicle required neither inspection nor replacement during the life of the Class Vehicle " Complaint at 4 Faust has pointed to a "serious product defect" in the vehicle She has alleged that her vehicle was "defective as manufactured," and has pled that the vehicle was not "free of significant defects" and did not perform "in the way goods of that kind should perform "

Faust has, therefore, succeeded in alleging facts sufficient to substantiate her claim of a breach of an implied warranty of merchantability under Iowa law Defendants' Motion to Dismiss Faust's implied warranty claim will be denied

## 6. Plaintiff Stoffer in Indiana

Indiana law offers a narrower interpretation of "ordinary purpose," and consequently, what might be "unmerchantable" in Pennsylvania, Nebraska, Michigan, Missouri, and Iowa is not necessarily "unmerchantable" in Indiana In Indiana, "[t]he term 'merchantable' implies **[*39]** that the goods sold conform to ordinary standards of care and that they are of average grade, quality and value of similar goods sold under similar conditions " Woodruff v Clark County Farm Bureau Co-op Ass'n, 153 Ind App 31, 286 N E 2d 188, 194 (Ind Ct App 1972)(citations omitted) Implied warranties of merchantability "are imposed by operation of law for the protection of the buyer, and they must be liberally construed in favor of the buyer " Id at 195 The Indiana Court of Appeals, however, has limited "[t]he ordinary purpose of a privately owned vehicle    to provid[ing]    transportation " Sharp v Tom Wood East, Inc , 822 N E 2d 173, 175 (Ind Ct App 2004)

In concluding that the defects in a plaintiff's used car did not constitute a breach of the implied warranty of merchantability, the Sharp Court reasoned that

> Sharp purchased a vehicle that had already been driven 64,669 miles, and it provided her with transportation for the more than 22,000 miles that she drove over a span of thirteen months While repairs to the vehicle were necessary, there is no indication in the record that the vehicle did not fulfill its ordinary purpose of providing transportation Thus    there [is] no genuine **[*40]** issue of material fact as to whether the vehicle

Sharp purchased from Tom Wood
was merchantable

*Id* (internal citations omitted) While it is true
that Indiana law requires a warranted vehicle to
be "of average grade, quality and value," it is
equally true that when a used car requires some
repairs the owner does not automatically have a
valid claim for breach of implied warranty *See
id* In fact, the *Sharp* Court concluded that de-
spite the fact that the plaintiff had to replace the
car's engine, "there [was] no indication in the
record that the vehicle did not fulfill its ordi-
nary purpose of providing transportation " *Id*

Stoffer's factual allegations are hardly dis-
tinguishable from the plaintiff's in *Sharp* No-
tably, Stoffer alleges that she "purchased a Sat-
urn L-Series Class Vehicle, model year 2002
L200, VIN 1G8JU54F12y539875, equipped
with a 2 2L Ecotec L61 Engine, Timing Chain
and Oiling Nozzle, from Battjes Pontiac, in
Elkhart, IN, on February 17, 2005 On March
18, 2008, Plaintiff Stoffer's parked Class Vehi-
cle would not start The Class Vehicle was
towed to Saturn of Indiana, which informed
Plaintiff Stoffer that the Timing Chain had bro-
ken, damaging the engine and causing the
[*41] Vehicle to stop operating, and necessitat-
ing repairs costing over $ 1,200 According to
the '2002 L-Series Maintenance Schedule,'
which accompanied the '2002 L-Series Owner's
Handbook,' the Timing Chain on this Class Ve-
hicle required neither inspection nor replace-
ment during the life of the Class Vehicle "
Complaint at 7 Like the plaintiff in *Sharp*,
Stoffer purchased her car used and continued to
drive it for thousands of miles before the car
broke down necessitating repairs Like the
plaintiff in *Sharp*, Stoffer's car provided trans-
portation for some time before the failure of the
timing chain and the replacement of the engine

Stoffer, therefore, has not met her burden of
pleading factual allegations that "raise more
than a speculative right to relief " *Benton, 524*

*F 3d at 870* (citing *Twombly, 127 S Ct at
1965*) Because Indiana law states that the "or-
dinary purpose" of a car is simply to "provide
transportation," and because the *Sharp* Court
held that even a car that required an engine re-
placement still fulfilled its purpose of providing
transportation, Stoffer has not successfully pled
facts that would support a breach of the implied
warranty of merchantability under Indiana law
[*42] Consequently, this Court will dismiss
Stoffer's implied warranty claim

## II. *Unjust Enrichment Claims*

The Defendants contend that the unjust en-
richment claims of Plaintiffs Anderson, Card-
well, Faust, Fowler, Menzer, Scott, and Stoffer
should be dismissed because (1) the Saturn
written warranty governs the dispute and pre-
cludes quasi-contract claims under applicable
state law, and (2) these Plaintiffs, as well as
Plaintiff Bauer, did not plead facts showing that
the Defendants received benefits from the
Plaintiffs, or that any benefits the Defendants
did receive were unjust or inequitable

### A. *Express Agreement Barring Quasi-
Contract Claims*

Plaintiffs Anderson, Cardwell, Faust,
Fowler, Menzer, Scott, and Stoffer's individual
claims for unjust enrichment are barred by the
law of their respective states A claim for unjust
enrichment is a quasi-contract claim, and if
"there is a specific contract which governs the
relationship of the parties, the doctrine of un-
just enrichment has no application " *People ex
rel Hartigan v E & E Hauling, Inc , 153 Ill 2d
473, 607 N E 2d 165, 177, 180 Ill Dec 271
(Ill 1992)*(quotations omitted) [7] In this case,
the rights and obligations of the parties are
governed by Saturn's written, express [*43]
warranty that covers "any vehicle defect related
to materials or workmanship " Because a bind-
ing, express agreement defines the parties'
rights and obligations, this Court will not de-
vise a quasi-contract remedy based on a claim
of unjust enrichment

7  *Accord Wrede v Exchange Bank of Gibbon, 247 Neb 907, 531 N W 2d 523, 530 (Neb 1995)*("[T]here cannot be an express and an implied contract for the same thing existing at the same time "), *Frontier Props Corp v Swanberg, 488 N W 2d 146, 149 -150 (Iowa 1992)*("[An] express and implied contract cannot coexist on same subject matter, and the former supersedes the latter ")(citations omitted), *Greenlee v Rainbow Auction/Realty Co , 202 Wis 2d 653, 553 N W 2d 257 (Wis Ct App 1996)*(holding that doctrine of unjust enrichment does not apply where parties have entered into a contract), *California Med Ass'n, Inc v Aetna U S Healthcare of California, Inc , 94 Cal App 4th 151, 114 Cal Rptr 2d 109, 125 (Cal Ct App 2001)*("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights "), *Fodale v Waste Mgmt of Michigan, Inc , 271 Mich App 11, 718 N W 2d 827, 841 (Mich Ct App 2006)*("a contract will  **[*44]**  be implied only if there is no express contract covering the same subject matter ")(quotations omitted), *Keystone Carbon Co v Black, 599 N E 2d 213, 216 (Ind Ct 1992)*("When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law ")(citations omitted)

Plaintiffs argue that an express agreement should only preclude a quasi-contract claim when the agreement covers the same "specific subject matter" as presented in the plaintiff's quasi-contract action for recovery ⁸ Plaintiffs' Brief at 21 Plaintiffs suggest that their claim for unjust enrichment is based on a "design defect" in their vehicles, as opposed to "a defect related to materials and workmanship " Consequently, Plaintiffs argue that they are not pre-

cluded from proceeding with their claims of unjust enrichment Plaintiffs' Brief at 21. Plaintiffs go to great lengths to explain the distinction between a "defect related to materials and workmanship" and a "design defect " *See* Plaintiffs' Brief at 21-24 This Court finds that "a defect related to materials and workmanship" and a "design defect" are substantially the same in the context of this action

8    To support their  **[*45]**  argument, Plaintiffs cite two cases *QuikPak, Inc v Reynolds-Freeborn Co , 2005 U S Dist LEXIS 17064, at * 15 n 8 (S D Ind , June 18, 2005),* *Vanderford Co , Inc v Knudson, 144 Idaho 547, 165 P 3d 261, 272 (Idaho 2007)*

First, design is integrated into each step of the manufacturing process and affects both materials and workmanship The U S District Court for the Southern District of New York considered a similar distinction when presented with two types of defects in a bicycle In declining to recognize such a distinction, the *Koulajian* Court held that "the warranty's reference to 'workmanship' could refer to bicycle designs as well as to implementation of those designs in the manufacturing process " *Koulajian v Trek Bicycle Corp , 1992 U S Dist LEXIS 1490, 1992 WL 28884, at *2 (S D N Y , Feb 11, 1992)* The *Koulajian* Court reasoned that any other interpretation of the warranty would defy logic *Id* Conversely, it would be absurd to interpret a car company's written warranty as *not* covering any defect in "materials and workmanship" if the defect could simultaneously be attributable to a design implemented by the company in the manufacturing of the car If this Court accepted this logic, it would have to conclude  **[*46]**  that Saturn's written warranty would not cover Plaintiffs' defective timing chains and oil nozzles because one could argue Saturn "defectively designed" them

Second, the cases on which Plaintiffs rely were based on tort law, not contract ⁹ *See*

2008 U S Dist LEXIS 109978, *

Plaintiffs' Brief at 21-24 In tort law, a court is concerned with the allocation of liability among negligent parties or parties who are subject to strict liability Instead, this Court must be concerned with whether a quasi-contract claim undermines the validity of the parties' original agreement by creating "a means for shifting a risk one has assumed under contract " *F H Prince & Co , Inc v Towers Fin Corp , 275 Ill App 3d 792, 656 N E 2d 142, 151, 211 Ill Dec 950 (Ill App Ct 1995)*(quotations omitted) "It would certainly be contrary to every correct notion of the law to permit a party to resort to an implied contract, when the parties have entered into an express agreement which remains in force " *Maynard v Tidball, 2 Wis 34, 1853 WL 1746 at *4 (Wis 1853)* Because this Court cannnot "substitute [its] own concepts of fairness    in place of the parties' own contract," this Court is required to consider the purported distinction between these two types of defects [*47] from a different perspective than that of court evaluating a question of tort law *See California Med Ass'n, 94 Cal App 4th 151, 114 Cal Rptr 2d 109, 125-26* (citations omitted)

9    Plaintiffs cite to several cases where courts have delineated a distinction between a "manufacturing defect" and a "design defect " Plaintiffs' Brief at 22-24 Many of these distinctions, however, were made in the context of determining liability in tort law, *not* in the context of interpreting whether or not an express agreement precludes an action for unjust enrichment under contract law E g , *ACE Fire Underwriters Ins Co v ALC Controls, Inc , 2008 U S Dist LEXIS 41672, 2008 WL 2229121 at *1 (N D Ga , May 28, 2008), Nuzum v Chlorella, 2006 U S Dist LEXIS 93486, 2006 WL 3825111, at *5-6 (D Neb , Dec 27, 2006)*

Plaintiffs' claims for unjust enrichment are barred by the express, written warranty agreement and this Court concludes that Anderson, Cardwell, Faust, Fowler, Menzer, Scott, and Stoffer's claims for unjust enrichment must be dismissed

## B. *Necessity of Pleading Defendants' Receipt of Unjust Benefits*

In their Motion, Defendants argue that Plaintiffs failed to plead facts sufficient to establish that the Defendants received an unjust benefit Because the Court will dismiss [*48] Anderson, Cardwell, Faust, Fowler, Menzer, Scott, and Stoffer's claims on other grounds, the Court need not address the question of whether these Plaintiffs adequately pled the Defendants' receipt of unjust benefits Instead, the Court considers only whether Bauer sufficiently alleged facts to show that Defendants received benefits from him that were unjust or inequitable Because he has failed to adequately allege that he conferred an unjust benefit upon Defendants, this Court will grant Defendants' Motion to Dismiss Bauer's claim for unjust enrichment

In order to plead a cause of action for unjust enrichment in Missouri, a plaintiff must allege facts showing "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable " *Green Quarries, Inc v Raasch, 676 S W 2d 261, 264 (Mo Ct App 1984)* "The most important requirement is that the enrichment be unjust " *JB Contracting, Inc v Bierman, 147 S W 3d 814, 819 (Mo Ct App 2004)*(citations omitted) "Mere receipt of benefits is [*49] not enough when there is no showing that it would be unjust for defendant to retain the benefit received " *Graves v Berkowitz, 15 S W 3d 59, 61 (Mo Ct App 2000)*(quotations omitted)

In this case, Bauer has failed to plead facts showing that the benefit he conferred upon the Defendants constituted more than a "[m]ere

receipt of benefits " *Id* The Complaint states that Bauer "purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN 1G8JU54F42Y515038, equipped with a 2 2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle, from Saturn of Blue Springs, MO, on or about September 8, 2005 " Complaint at 3 The fact that Bauer states he paid Saturn money for his vehicle, however, is not enough to show that his payment to Defendants for his vehicle was unjust While Bauer did allege that the steel timing chain did eventually break, "necessitating repairs costing over $ 2,600" (Complaint at 3), that does not constitute evidence that the initial sales transaction conferred an unjust benefit upon the Defendants

Instead, "[t]here must be some something more than passive acquiescence, such as fault or undue advantage on the part of the defendant, for defendant's retention of the benefit [*50] to be unjust " *S & J, Inc v McLoud & Co , L L C , 108 S W 3d 765, 768 (Mo Ct App 2003)* Bauer has failed to plead how Saturn's receipt of payment for his car rose above the level of "passive acquiescence" to become a transaction by which Saturn's receipt of payment was unjust Notably, Bauer has pled nothing that distinguishes his sales transaction from thousands of vehicle purchases that occur annually If this Court were to accept Bauer's facts as sufficient to establish a cause of action for unjust enrichment, this Court would be interpreting Missouri's equitable remedy of quasi-contract to operate in protection of a consumer any time a purchased product breaks following a typical business transaction Such an interpretation of the equitable remedy of unjust enrichment is contrary to the law of quasi-contract, and its purpose of protecting a plaintiff who has conferred a benefit on a defendant in circumstances that fail to demonstrate a "meeting of the minds " *Weinsberg v St Louis Cordage Co , 135 Mo App 553, 116 S W 461, 466 (Mo Ct App. 1909)* The quasi-contract remedy of unjust enrichment is not meant to

serve as a substitute for product liability or breach-of-warranty litigation.

Bauer [*51] has failed to meet his burden of demonstrating that Defendants' retention of his payment for the car would be inequitable, and his claim for unjust enrichment will be dismissed

### III. *Consumer Protection Act Claims*

The Defendants contend that many of the Plaintiffs' claims under various state consumer protection laws fail to state a claim upon which relief can be granted The Court will address each individual claim in turn

#### A. *Reid's Claim and North Carolina's Economic Loss Rule*

In their Motion, Defendants argue that Reid's claim under the North Carolina Unfair or Deceptive Trade Practices Act ("NCUDTPA") is barred by North Carolina's common law economic loss doctrine Because neither the North Carolina Supreme Court or the Appellate Court has yet to consider the application of this common law doctrine to statutory NCUDTPA claims, this Court is left to determine how the North Carolina Supreme Court would rule if it were presented with the question '" *See Lincoln Benefit Life Co v Edwards, 243 F 3d 457, 465 (8th Cir 2001)*("When presented with a question of state law, upon which the state's highest court has not yet ruled, the onus falls to this court to determine what that court would [*52] do, were it presented with the question ") After a careful review of North Carolina law, this Court concludes that the application of North Carolina's economic loss doctrine to a NCUDTPA-based claim would be contrary to the statutory purposes of the NCUDTPA and *the common law purpose behind the economic loss doctrine itself* This Court finds that Reid's claim under NCUDTPA is not barred by the economic loss doctrine and Defendants' Motion to dismiss his claim will be denied

10   This Court did certify this question of law to the North Carolina Supreme Court on September 10, 2008  *See* Filing No 79  To date, the North Carolina Supreme Court has offered no response  Consequently, the Court is left to apply its own interpretation of North Carolina's law to this legal question

Because the economic loss doctrine's purpose is to preserve the common law distinction between tort and contract law, not tort law and claims created entirely by the Legislature, the doctrine has no application to the present case-- where Reid's cause of action is created wholly by statute and does not rely on common law  *See Coker v DaimlerChrysler Corp, No 01CVS1264, 2004 NCBC LEXIS 2, 2004 WL 32676, at * 3 (N C  Super  Ct , Jan  5, 2004)*(quoting *[\*53] Werwinski v Ford Motor Co , 286 F 3d 661, 679 (3rd Cir 2002)*("[t]he economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between *tort* and *contract* law ")(emphasis added)), *see also Coker v DaimlerChrysler Corp , 172 N C App 386, 617 S E 2d 306, 319 (N C  Ct  App 2005)*(Hudson, J , dissenting)("[NCUDTPA] claims are exempt from the economic loss rule because the rule is judicial, not legislative, and must give way to specific legislative policy pronouncement allowing damages for economic loss    *To apply the economic loss rule to [NCUDTPA] claims would effectively eviscerate the statute  The legislature could hardly have intended that the rule would bar the very claims    the    [NCUDTPA]    statute    created* ")(emphasis in original)

While North Carolina has adopted an economic loss rule that prohibits recovery under tort law for pure economic loss, the rule's purpose is strictly to "prohibit[] the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected "  *Wilson v Dryvit Systems, Inc , 206 F Supp 2d 749, 753 (E D N C 2002)*(citing *[\*54] Moore v Coachmen Indus , Inc , 129 N C App 389, 499 S E 2d 772, 780 (N C 1998))*  "The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective "  *Moore, 499 S E 2d at 780*  Thus, North Carolina's economic loss doctrine serves to bar plaintiffs from using North Carolina's common tort law when the plaintiff has suffered an economic loss only -- as North Carolina law dictates such disputes are more properly addressed through contract law   *Id*  This Court finds that because the economic loss doctrine serves to preserve the distinction between North Carolina's common *tort* law and *contract* law, the doctrine has no application to the present case, where the distinction is between tort law and *statutory* law

The potential application of the doctrine to Reid's NCDUTPA claim can be further distinguished from the doctrine's ordinary application to common law based claims since, as "the [\*55] Supreme Court of North Carolina has observed, the obligations imposed by the DTPA 'create a cause of action broader than traditional common law actions '"  *South Atlantic Ltd P'ship of Tenn , L P  v  Riese, 284 F 3d 518, 537 (4th Cir 2002)*(quoting *Marshall v  Miller, 302 N C  539, 276 S E 2d 397, 402 (N C 1981))*  The North Carolina Court of Appeals has distinguished NCUDTPA claims from common law claims, holding that "traditional common law defenses such as contributory negligence or good faith are not relevant to" NCUDTPA claims  *Concrete Serv Corp v Investors Group, Inc , 79 N C App 678, 340 S E 2d 755, 760 (N C  Ct  App 1986)*

In fact, the North Carolina legislature created NCUDTPA "to provide relief in situations where 'common law remedies had proved often ineffective '"  *Dealers Supply Co , Inc  v  Cheil*

*Indus., Inc., 348 F Supp 2d 579, 591-92 n 2 (M D N C 2004)*(quoting *Marshall, 276 S E 2d at 400*) The *Dealers* Court rejected "the notion that recovery under [NCUDTPA] is limited 'to cases where some recovery at common law would probably also lie '" *Id* (quoting *Marshall, 276 S E 2d at 400*) Accordingly, this Court will not apply a common law doctrine to terminate a cause of action specifically created [*56] by North Carolina's legislature unless clearly directed to do so by North Carolina's courts.

A review of the applicable North Carolina law does not warrant the application of the economic loss doctrine to extinguish Reid's NCUDTPA claim, and Defendants' Motion to Dismiss Reid's NCUDTPA claim will be denied

### B. Menzer's Claim under California Consumer Legal Remedies Act ("CLRA")

Upon reviewing the pleadings, briefs, and applicable California law, the Court concludes that Menzer has made sufficient factual allegations in her pleadings to state a cause of action under CLRA Defendants aver that Menzer's claim under CLRA is not actionable because it fails to allege that Defendants made any actual misrepresentations to her regarding the steel timing chains in their cars Def. Brief at 25-27 While it is true that Menzer makes no such allegations, she has pled sufficient facts to substantiate a claim under CLRA because she has alleged facts to establish that Defendants were "bound to disclose" the alleged defect in the steel timing chain at the time she made her purchase *See Bardin v Daimlerchrysler Corp., 136 Cal App 4th 1255, 39 Cal Rptr 3d 634, 648 - 649 (Cal Ct App 2006)* Consequently, Defendant's Motion [*57] to Dismiss Menzer's claim will be denied In the Complaint, Menzer has pled facts sufficient to show that her case is well within the class of plaintiffs the California legislature intended to protect when it enacted CLRA *See Broughton v Cigna Healthplans of Cal., 21 Cal 4th 1066, 90 Cal Rptr 2d 334,*

*988 P 2d 67, 74 (Cal 1999)*("This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection ")(quoting *Cal Civ Code § 1760*) While CLRA bans several "deceptive" trade practices, of particular import to this case is *Section 1750(a)(7)*'s language that prohibits any "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another " *Cal Civ Code § 1770(a)(7)*

California courts have interpreted this statute to preclude any action where a plaintiff cannot show that a defendant made an actual misrepresentation, or more precisely, when the complaint "fails to identify any representation by [the Defendant] that its automobiles had any characteristic they do [*58] not have, or are of a standard or quality they are not " *Daugherty v American Honda Motor Co., Inc., 144 Cal App 4th 824, 51 Cal Rptr 3d 118, 126 (Cal Ct App 2006)* Thus, Defendants argue that Menzer's claim fails to allege any actual misrepresentation made on behalf of the Defendant at the time of sale The *Daugherty* Court, however, also carved out an exception to this rule, and Menzer's claim fits squarely within that exception The *Daugherty* Court held that in place of pleading an act of misrepresentation, the plaintiff could state a claim "under the CLRA in terms [consisting of] fraudulent omissions[,] to be actionable the omission must be contrary to a representation actually made by the defendant, or an *omission of a fact the defendant was obliged to disclose* " *Id at 835* (emphasis added) In the present case, Menzer has pled facts to establish that Defendants were "obliged to disclose" the defects in their steel timing chains and oiling nozzles to her at the time she purchased her vehicle from them

Menzer has successfully asserted that Defendants were "obliged to disclose" the defects

in their vehicles because she has alleged that the defects in the steel timing chains and oiling nozzles posed [*59] a safety risk to her and other consumers See Complaint at P 282, *Falk v General Motors Corp*, 496 F Supp 2d 1088, 1096 n * (N D Cal 2007)(holding that Defendants were obliged to disclose the defect in their vehicles because "plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard "), *cf Oestreicher v Alienware Corp*, 544 F Supp 2d 964, 972-73 (N D Cal 2008)(concluding the Court would not impose a "duty to disclose on a manufacturer for a latent *non-safety related* defect in its product ")(emphasis added) In contrast to the pleadings at issue in *Oestreicher*, Menzer has adequately pled facts to establish that the latent defect in the car is in fact related to safety and that Defendants knew of the defect at the time they sold her the car See Complaint PP 70-96, 282

Defendants' contention that the *Daugherty* Court's decision supports the dismissal of Menzer's CLRA claim is misplaced In *Daugherty*, the California Court of Appeals for the Fourth District dismissed plaintiffs' claim that defendants were "obliged to disclose" the defect in the vehicles because "[t]he sole allegation mentioning "safety" [came in] the paragraph claiming [*60] punitive damages    " *Daugherty*, 51 Cal Rptr 3d at 127 In dispensing with the plaintiffs' cause of action, the *Daugherty* Court concluded that "[t]he complaint is devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect " *Id* The Complaint in the present case, however, is not "devoid of factual allegations showing any instance of physical injury or safety concerns " See Complaint at P 88 While none of the individual Plaintiffs has personally suffered physical injury as a result of the latent defect in the vehicles, all have alleged sufficient facts to show that an unreasonable risk of physical injury existed Plaintiffs have alleged that a number of other individuals experienced engine failures while driving at high speeds,

often times on interstates or in the middle of an intersection See id While the *Daugherty* Court may have concluded that a mere oil leak does not constitute enough of a safety risk to impose a "duty to disclose" upon defendants, this Court finds that the potential for an engine to stop operating in the middle of an intersection, or on an interstate at speeds upwards of 65 miles per hour, constitutes enough [*61] of a safety risk that the Defendants in this case had a duty to disclose the safety defect to any potential consumer "

> 11    Defendants also rely on *Bardin v Daimlerchrysler Corp*, 136 Cal App 4th 1255, 39 Cal Rptr 3d 634 (Cal Ct App 2006), to argue that Menzer's claim does not establish that Defendants were under an obligation to disclose the defect in their steel timing chains and oiling nozzles Def Brief at 25 Their reliance is misplaced, however, since the *Bardin* Court dismissed the plaintiffs' claim because they simply did not plead that the defendant was "bound to disclose" the defect in dispute *Id at* 648-49 ("Plaintiffs' claim for violation of the CLRA fails because the second amended complaint [neglected to] alleg[e] facts showing [Defendant] was 'bound to disclose' its use of tubular steel exhaust manifolds    ") Menzer has made the requisite allegations in this case and has alleged that the defect posed an unreasonable safety risk

Like the Court in *Falk*, this Court finds that the alleged safety risk posed by a defective steel timing chain is "far more 'unreasonable' than the monetary consequences in *Daugherty* " *Falk*, 496 F Supp 2d at 1096 Consequently, Menzer has met her burden of pleading [*62] facts sufficient to establish that Defendants were "obliged to disclose" the defects in their timing chains and oiling nozzles Defendants' Motion to Dismiss Menzer's CLRA claim, therefore, will be denied

2008 U S Dist LEXIS 109978, *

## C. *Menzer's Claim for Injunctive Relief and Monetary Damages Under California's Unfair Competition Law ("UCL")*

The Court grants Defendants' Motion to Dismiss Menzer's UCL claim In their Motion, Defendants aver that Menzer has not properly pled that Defendants' actions were unlawful, fraudulent, or unfair within the meaning of the UCL Additionally, Defendants contend that the Court should dismiss Plaintiff Menzer's claim because the remedies she seeks, injunctive relief and monetary damages, are not available Defendants argue, therefore, that Menzer has failed to state a claim upon which the Court could grant relief Upon reviewing the parties' briefs and applicable law, this Court finds that there is no injunctive relief to be awarded and monetary damages are not available under the UCL as a matter of law Consequently, Menzer's UCL claim will be dismissed [12]

> 12  Because the Court can grant no relief based on the claim that Menzer has stated, the Court need not address the Defendants' [*63] alternative argument that Menzer did not allege sufficient facts to establish that Defendants' conduct was either unlawful, unfair, or fraudulent under the UCL

First, this Court cannot grant Menzer the injunctive relief she requests in the Complaint because Defendants no longer engage in the behavior that Menzer would have this Court enjoin *See* Def Brief at 31 In response to Menzer's request for injunctive relief, Defendants state that "Saturn ceased making and marketing the vehicles years ago " [13] *Id* In Plaintiffs' Response to Defendants' Motion, Menzer did not address Defendants' contention that there is no conduct or behavior for the Court to enjoin *See* Response at 35-37 This Court cannot award injunctive relief for conduct that no longer exists To the extent that

Menzer requests injunctive relief, she has failed to state a claim upon which can be granted

> 13  Notably, in their Complaint, Plaintiffs acknowledge that Defendants no longer manufacture and sell cars with defective timing chains and oiling nozzles *See* Complaint at P 92 ("According to statements made by Defendants to NHTSA in 2006, Defendants no longer incorporated the original Timing Chain and Oiling Nozzle in the [*64] vehicles after (i) April 22, 2002, in Saturn vehicles assembled at the Tonawanda vehicle plant, and (ii) May 1, 2002, in Saturn vehicles assembled at the Springhill vehicle plant ")

Neither can this Court award Menzer monetary relief because a claim for monetary damages "is not permitted under the UCL " *Korea Supply Co v Lockheed Martin Corp , 29 Cal 4th 1134, 131 Cal Rptr 2d 29, 63 P 3d 937, 948 (Cal 2003)* In the Complaint Menzer requests, in addition to injunctive relief, "all further relief which is available, as well as appropriate and just to grant, under the UCL " Complaint at P 302 However, "it is well established that individuals may not recover damages" under the UCL, and consequently, Menzer has failed to request any relief this Court is capable of granting [14] *Korea Supply, 63 P 3d at 948* "A court cannot, under the equitable powers of *section 17203*, award whatever form of monetary relief it believes might deter unfair practices " *Id at 946* If this Court were to award Menzer monetary damages for what amounts to a breach of the express warranty between her and Defendants, "[t]he result could be that the UCL would be used as an all-purpose substitute for a tort or contract action, something the Legislature [*65] never intended " *Id at 948-49*

> 14  This Court notes that there are some circumstances under which a plaintiff can recover, however, that recovery is limited to restitution *Korea Supply at 947*

("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest "), *Cel-Tech Commc'ns, 973 P 2d at 539* ("Prevailing plaintiffs are generally limited to injunctive relief and restitution."), *Kraus v Trinity Mgmt Servs , Inc , 23 Cal 4th 116, 96 Cal Rptr 2d 485, 999 P 2d 718, 726 (Cal 2000)*("[R]estitution to a person in interest is the only monetary remedy for violation of the UCL described in *section 17203* ") In the present case, because Menzer has not alleged sufficient facts to demonstrate how her purchase of a used vehicle resulted in "profits" or "monies given to the defendant[s,]" to the extent that the vague language in Paragraph 302 of her Complaint requests restitution, this Court cannot award her relief

Menzer's request for injunctive and monetary relief is simply inapposite to the legislative purpose behind the enactment of the UCL *See id* The California Supreme Court has concluded [*66] that "the Legislature intended [the language in the UCL] to permit tribunals to enjoin on-going wrongful business conduct " *Cel-Tech Commc'ns, Inc v Los Angeles Cellular Telephone Co , 20 Cal 4th 163, 83 Cal Rptr 2d 548, 973 P 2d 527, 540 (Cal 1999)*(citations omitted)(emphasis added) Thus, the "overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition " *Korea Supply, 63 P 3d at 948* (quotations omitted)

Further, the California Supreme Court has held the Legislature never intended for the UCL to be used as "an all-purpose substitute for a tort or contract action " *Id at 948-49* Instead, the *Korea Supply* Court warned against permitting a plaintiff to "recover without having to meet the more rigorous pleading requirements of a breach of contract suit " [15] *Id* This Court, consequently, declines to interpret the UCL to award relief for the damages an individual suffered as a result of a breach of an express warranty between two parties

15   This Court recognizes that in this context the *Korea Supply* Court was speaking directly to claims filed by one competitor against another competitor under the UCL This Court finds, [*67] however, that the goal of preventing the UCL from becoming a substitute for tort and contract law applies with equal force when the UCL claim is filed by a consumer against a manufacturer

Because Menzer has not stated a claim upon which the Court can grant relief, the Court will grant Defendants' Motion to Dismiss Menzer's UCL claim

### D. *Faust's and Cardwell's Claims for Injunctive Relief under the Nebraska Uniform Deceptive Trade Practices Act ("NDTPA")*

The Court will dismiss Faust's and Cardwell's claims for injunctive relief under the NDTPA In their Motion to Dismiss, Defendants contend that this Court should dismiss Plaintiffs' claims for injunctive relief as moot Def Brief at 32 n 22 Plaintiffs, in their Response, neglect to address this issue As explained above, Defendants no longer manufacture or sell vehicles with the defective timing chains and oiling nozzles *See* Complaint at P 92, Def Brief at 32 n 22 There is no current, deceptive behavior this Court could possibly enjoin Consequently, the Court concludes that Faust and Cardwell have not stated a claim upon which this Court could grant relief Defendants' Motion to Dismiss the Plaintiffs' claims for injunctive relief [*68] under the NDTPA will be granted

### E. *Cardwell's and Faust's Claims under the Nebraska Consumer Protection Act ("NCPA")*

This Court has reviewed the parties' briefs and the applicable law and concludes that Defendants' Motion to Dismiss Cardwell and Faust's NCPA claims will be denied Through a misapplication of California law and Nebraska common law tort standards, [16] Defendants argue that Plaintiffs' claims must be dismissed because Plaintiffs failed to allege facts to support an inference that Defendants were under a duty to disclose the defects in their vehicles Defendants cite two cases where California Courts required plaintiffs to plead facts establishing that defendants were under a "duty to disclose" under CLRA [17] The California Courts' interpretation of the "duty to disclose" under CLRA, however, has no bearing on this Court's interpretation of what is a cognizable claim under Nebraska's Consumer Protection Act See *Nelson v Lusterstone Surfacing Co , 258 Neb 678, 605 N W 2d 136, 141 (Neb 2000)*(noting that while "several other states have similar consumer protection acts that have been interpreted in various ways[, t]he determination of the issue here, however, depends on how we interpret [*69] the language of *this* state's CPA ")(emphasis added)

16  In their Brief, Defendants argue that this Court should apply the Nebraska Supreme Court's recitation of the elements necessary to establish the "duty to speak"in the *Restatement (Second) of Torts § 551 See* Def Brief at 34 (citing *Streeks, Inc V Diamond Hill Farms, Inc , 258 Neb 581, 605 N W 2d 110, 118-19 (Neb 2000))* Plaintiffs' claims under the NCPA, however, are statutorily constructed, and consequently, this Court declines to apply common law standards concerning duties under tort law to a cause of action the Nebraska Legislature has specifically created

17    *See* Def Brief at 33 (citing *Daugherty, 144 Cal App 4th 824, 51 Cal Rptr 3d 118, 128-29, Bardin, 39 Cal Rptr 3d at 634, 644-48*

Not a single Nebraska Court has interpreted NCPA to require plaintiffs to plead a "duty to disclose" in order to establish a fraudulent omission claim under the Act Consequently, although it is true that California Courts require plaintiffs to plead a "duty to disclose" in order to state an actionable claim under CLRA, this Court will refrain from extinguishing a Nebraska plaintiff's claim unless so directed by Nebraska law

Interpreting NCPA, the Nebraska Supreme Court has held [*70] that for a claim to be actionable "under the Act, the unfair or deceptive act or practice must have an impact upon the public interest     " *Arthur v Microsoft Corp , 267 Neb 586, 676 N W 2d 29, 36 (Neb 2004)* NCPA provides 'It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce " NCPA § 59-1604 "Any person who is injured in his business or property by a violation of sections 59-1602 to 59-1606 may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit   " *Id* at § 59-1609 The Nebraska Supreme Court has interpreted the statutory language "'trade and commerce' as inclusive of any "sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska [The Supreme Court] read[s] this definition to limit the disputes that fall within the ambit of § 59-1602 to unfair or deceptive acts or practices that affect the public interest " *Nelson, 605 N W 2d at 141 (Neb 2000)*(citations omitted) "[T]he Act is not available to redress [*71] a private wrong where the public interest is unaffected " *Arthur, 676 N W 2d at 36*

In this case, Plaintiffs have alleged enough facts to establish their claim that the Defendants' unfair or deceptive acts have had an impact on the public interest While the Nebraska Supreme Court has "refused to apply the Act to

isolated transactions between individuals that did not have an impact on consumers at large," Plaintiffs have pled facts that demonstrate that the defects in the steel timing chains and oiling nozzles were not limited to their individual cars, but affected thousands of cars that consumers purchased, thereby constituting "an impact on consumers at large " *Id , cf Nelson, 605 N W 2d at 142* (noting that where a used car salesman lied about the certificate of title for one particular car, "the transfer of the Jeep from appellants to appellee affected no one other than the parties to the transaction, and appellee has not shown a sufficient impact indirectly or directly on the public to qualify the transaction as an act or practice which is prohibited under § 59-1602," and dispensing with the plaintiffs' claim as non-cognizable under the Act) Plaintiffs in this case, however, have [*72] alleged that Defendants' deceptive acts in fraudulently concealing their defective steel timing chains and oiling nozzles damaged an entire class of cars, and thus, had numerous adverse impacts on the public at large

Faust's and Cardwell's actions under NCPA will survive the Defendants' Motion to Dismiss

### IV. *Class Action Allegations*

The Defendants contend that Plaintiffs' allegations in the Consolidated Amended Complaint seeking certification of a class should be dismissed because (1) the proposed class definition is overbroad in that it includes people with no valid claim, (2) it is not feasible to identify proposed class members, and (3) the proposed class members' individual issues outweigh any issues they may have in common The Court has reviewed the record and applicable law, and the Court finds that the challenges Defendants raise are not sufficient to warrant a premature dismissal of all class action allegations prior to the certification stage Accordingly, Defendants' Motion to Dismiss Plaintiffs' class allegations will be denied at this time and may be renewed at the class certification stage [18]

18    While the Court is postponing the certification of Plaintiffs' state law class [*73] action claims until the class certification stage, the Court recognizes that should it decline to certify the class actions, the Court's subject matter jurisdiction over all of Plaintiffs' claims would be in question In this case, Plaintiffs have presented no federal question pursuant to *28 U S C § 1331*, and they have not met the statutory requirements for diversity under *28 U S C § 1332(a)* Plaintiffs' class allegations only meet the requirements for federal subject matter jurisdiction under *§ 1332(d) See* Class Action Fairness Act (CAFA), Pub L 109-2, 119 Stat 4 (2005), *Exxon Mobil Corp v Allapattah Servs , Inc , 545 U S 546, 125 S Ct 2611, 162 L Ed 2d 502 (2005)*("Subject to certain limitations, the CAFA confers federal diversity jurisdiction over [state law based] class actions where the aggregate amount in controversy exceeds $ 5 million ") Whether federal district courts lose subject matter jurisdiction over Plaintiffs' individual state law claims as a result of a decision to *not* certify the state law class actions is a question that has not yet been answered *Compare McGaughey v Treistman, 2007 U S Dist LEXIS 126, 2007 WL 24935 at *1 (S D N Y, Jan 04, 2007)*("[D]enial of class certification leaves this Court without subject [*74] matter jurisdiction "), *Genenbacher v CenturyTel Fiber Co II, LLC, 500 F Supp 2d 1014, 1015 (C D Ill 2007)*("[T]his court retains jurisdiction

At the time of the filing, the Complaint alleged facts that invoked this Court's removal jurisdiction based on diversity of citizenship under CAFA The subsequent reduction in the amount in controversy and elimination of the class claims does not remove that diversity jurisdiction ")

As one transferee federal judge in the Louisiana Eastern District has noted, "[i]t would be unfortunate if CAFA result[ed] in prolonging MDL proceedings with protracted jurisdictional questions about cases lying at the margins of the transferee court's jurisdiction " Sarah Vance, *A Primer On the Class Action Fairness Act of 2005, 80 TUL L REV 1617, 1643 (2006).* This Court agrees, and therefore, declines to prolong this case's progress any further at this stage in the proceedings with "protracted jurisdictional questions " The Court reserves its judgment concerning jurisdiction, however, in the event the Court does not certify the Plaintiffs' state law class allegations

Striking a Plaintiff's class action allegations prior to discovery and the class certification [*75] stage is a rare remedy *See Walker v World Tire Corp , Inc , 563 F 2d 918, 921 (8th Cir 1977)*("The propriety of class action status can seldom be determined on the basis of the pleadings alone "), *Weathers v Peters Realty Corp , 499 F 2d 1197, 1200 (6th Cir 1974)*(holding that "ordinarily the [class certification] determination should be predicated on more information than the pleadings will provide "), *Rios v State Farm Fire and Cas Co , 469 F Supp 2d 727, 740 (S D Iowa, 2007)* ("Prior to the class certification stage, a defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met ") (internal citations omitted)) This case, however, is not one of those "rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met " *Id*

Instead, this Court finds that before dismissing or certifying Plaintiffs' state law class action claims, the Court will need to conduct a more rigorous analysis of the applicable facts and law The Court does not yet "have before it

sufficient material      to determine the nature [*76] of the allegations, and rule on compliance with the Rule's requirements," and therefore, the Court declines to dismiss the class action allegations at this stage in the proceedings *Walker, 563 F 2d at 921* (internal quotations omitted) Consequently, "this court will proceed with discovery and postpone the certification or dismissal of plaintiffs' class action claims until the class certification stage " *Weathers, 499 F 2d at 1200 (6th Cir 1974)* "[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of *Rule 23* are satisfied " *Sirota v Solitron Devices, Inc , 673 F 2d 566, 570-72 (2d Cir 1982)*

Defendants aver that this Court should dismiss Plaintiffs' class actions prematurely because the class is not ascertainable and is over-inclusive, and additionally because it is not feasible to identify class members While Defendants note potential difficulties this Court may face in defining the class, these concerns do not justify a premature dismissal of all class allegations prior to the class certification stage Defendants' arguments in support of premature [*77] dismissal are not persuasive since the cases they cite warranted premature dismissal on grounds that do not exist in this case. [19] Even where "plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery of, for example, the lists that they claim will identify the class members " *In re Wal-Mart Stores, Inc , Wage and Hour Litigation, 505 F Supp 2d 609, 615 (N D Cal 2007)* Accordingly, the Court finds that it is improper to dismiss Plaintiffs' class allegations at this stage in the proceedings

19  *See e g , John v National Sec Fire and Cas Co , 501 F 3d 443, 445 (5th Cir 2007)*(concluding that the plaintiffs' class was not ascertainable because the

2008 U S Dist LEXIS 109978, *

plaintiffs "do not contend that the class they propose is ascertainable, but instead propose two newly defined classes"), *Van West v Midland Nat Life Ins Co , 199 F R D 448, 451 (D R I 2001)*("The ascertainability requirement is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by [\*78] a defendant    For example, there would be no practical way to determine, in advance of trial, who belongs to a class consisting of all persons allegedly injured by a hospital's failure to properly train its nurses ")  In this case, however, Plaintiffs are contending that there class is ascertainable, and Plaintiffs are not claiming injury by "some generically described wrongful conduct allegedly engaged in by a defendant "  Instead, Plaintiffs have *specifically* described the wrongful conduct attributed to Defendants as manufacturing and fraudulently concealing defective steel timing chains and oiling nozzles  The cases that Defendants cite do not support the conclusion that Plaintiffs' class allegations create a class that is not "ascertainable" or "over-inclusive "

Likewise, Defendants' claims that common issues do not predominate in the Plaintiffs' class allegations are without merit  Simply because Plaintiffs' claims involve several different state laws does not conclusively mean that common issues do not predominate [20] *See Rios, 469 F Supp 2d at 740* ("Clearly, multi-state, and even nationwide class actions can be, and are, maintained in many instances ")(citing *Phillips Petroleum Co v Shutts, 472 U S 797, 105 S Ct 2965, 86 L Ed 2d 628 (1985)*) [\*79] The question of whether common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation "  *Amchem Prods , Inc v Windsor, 521*

*US 591, 623, 117 S Ct 2231, 138 L Ed 2d 689 (1997)*  "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual  If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question "  *Blades v Monsanto Co , 400 F 3d 562, 566 (8th Cir 2005)*  Upon reviewing the Complaint, it is clear that all Plaintiffs will need to rely on the same evidence for the majority of their case  All Plaintiffs will need to present the same evidence regarding the Defendants' knowledge and fraudulent concealment of the defective design of the steel timing chains and oiling nozzles in the Class vehicles

> 20    This Court however, reserves its final judgment on this issue until the class certification stage

It is not clear from the pleadings [\*80] that individualized issues predominate common issues of fact, and consequently, this Court declines to dismiss Plaintiffs' class allegations before the certification stage [21] Defendants may renew their Motion to Dismiss the class allegations during the class certification stage

> 21    This Court further notes that the MDL Panel's determination that these cases met the "common questions of fact" standard required by *28 U S C § 1407* is not determinative of whether these cases meet the requirement of *Fed R Civ Pro 23* that common issues of fact "predominate" over individualized issues of fact  The two are entirely separate standards  "[H]istory reveals that the 'common questions of fact' standard and the ends to which it is directed were conceived of before the 1966 amendments to *Rule 23 of the Federal Rules of Civil*

*Procedure* that created the modern class action    . There are, of course, many cases that would benefit from coordinated or consolidated pretrial treatment as part of an MDL proceeding but that should not be certified as class actions " *An Uncommon Focus on "Common Questions" Two Problems with the Judicial Panel on Multidistrict Litigation's Treatment of the "One or More* [*81] *Common of Fact" Requirement for Centralization,* Pearson Bownas & Mark Herrmann, *82 TUL L REV 2297, 2299, 2310 (2008)* Accordingly, the Court will not consider the MDL Panel's conclusion that "common questions of fact" exist within Plaintiffs' claims as determinative of whether common issues of fact "predominate" in the class action allegations

## CONCLUSION

For all the aforementioned reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss

ACCORDINGLY,

IT IS ORDERED

1  The Defendants' Motion to Dismiss (Filing No 70 in "Lead" Case No 8 07cv298 and Filing No 68 in "Member" Case No 8 08cv79), seeking to dismiss the Plaintiffs' Consolidated Amended Complaint, is granted in part as follows

a  The implied warranty of merchantabil-

ity claim of Plaintiff Stoffer is dismissed,

b  The unjust enrichment claims of Plaintiffs Anderson, Bauer,    Cardwell, Faust, Fowler, Menzer, Scott, and Stoffer are dismissed,

c  The claim brought by Plaintiff Menzer under the California    Unfair Competition Law is dismissed, and

d  The claims brought by Plaintiffs Faust and Caldwell for injunctive relief under the Nebraska Deceptive Trade Practices Act are dismissed

2  Defendants' Motion to [*82] Dismiss is otherwise denied, and the Defendants shall respond to the Plaintiffs' Consolidated Amended Complaint on or before November 21, 2008

DATED this 7th day of November, 2008

BY THE COURT

/s/ Laurie Smith Camp

United States District Judge