1  Robert L. Starr (State Bar No. 183052)
   e-mail: starresq@hotmail.com
2  THE LAW OFFICE OF ROBERT L. STARR
3  23277 Ventura Boulevard
   Woodland Hills, California, 91364-1002
4  Telephone: (818) 225-9040
5  Facsimile: (818) 225-9042

6  Dara Tabesh (State Bar No. 230434)
   e-mail: DTabesh@hotmail.com
7  201 Spear St. Ste. 1100
   San Francisco, CA 94105
8  Telephone: (415) 595-9208
9  Facsimile: (310) 693-9083

10  Attorneys for Plaintiff Rodolfo F. Mendoza

11

12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

15

16  RODOLFO FIDEL MENDOZA,              CASE NO. CV 10-2683 AHM (VBK)
    individually, and on behalf of a class of
17  similarly situated individuals,          Hon. A. Howard Matz

18                                           **FIRST AMENDED COMPLAINT
             Plaintiff,                      FOR:**
19
20      v.                                   **(1)  Violations of California
                                                   Consumer Legal Remedies Act**
21  GENERAL MOTORS, LLC,
22                                           **(2)  Violations of Unfair Business
             Defendant.                            Practices Act – Secret
23                                                 Warranty**
24
                                             **(3)  Violations of Unfair Business
25                                                 Practices Act**
26
27                                                **JURY TRIAL DEMANDED**

28

    **Case No.:** CV 10-2683 AHM (VBK)

                    **FIRST AMENDED COMPLAINT**

## INTRODUCTION

1.    Plaintiff Rodolfo F. Mendoza ("Plaintiff") brings this action against General Motors, LLC ("GM" or "Defendant") on behalf of himself and all similarly situated persons ("Class Members") who purchased or leased a Chevrolet Equinox sport utility vehicle ("SUV") of model years 2005 to 2009 and Pontiac Torrent SUV of model years 2006 to 2009 (collectively, the "Class Vehicles").

2.    On or about July 2009, Defendant acquired the assets of General Motors Corporation ("old GM") in a sales transaction that received the approval of the United States Bankruptcy Court for the Southern District of New York.  In connection with this acquisition, Defendant assumed certain liabilities of old GM, including, among other things, all claims arising from accidents or other discrete incidents arising from operation of the Class Vehicles occurring subsequent to the closing date of the sales transaction, regardless of when the Class Vehicles were purchased.  Defendant also agreed to comply with "the certification, reporting and recall requirement of National Traffic Motor Vehicle Safety Act . . . California Health and Safety Code and similar Laws,[1] in each case, to the extent applicable in respect of [Class] vehicles and [Class] vehicle parts manufactured or distributed by [Old GM]."

3.    In or around the time it acquired the assets and assumed the liabilities of Old GM, if not before, Defendant knew or should have known that the Class Vehicles contain one or more design flaws and/or structural defects that causes them to be highly prone to water leaks and flooding (the "water leak defect"), including but not limited to water leaks that result in flooding of the trunk and

---

[1] The Master Sale & Purchase Agreement ("MPA") defines "Laws" as "any and all applicable United States or non-United States federal, national, provincial, state or local laws, rules, regulations, directives, decrees, treaties, provisions of any constitution and principles (including principles of common law) of any governmental authority, as well as any applicable Final Order."

1   spare tire well, water leaks that result in damage to the vehicles' front lights and

2   taillights, as well as water leaks to the car's interior cabin, causing mold and

3   electrical failure due to the water damaging the computer, electrical system, and

4   interior components of the Class Vehicles.

5       4.      Defendant also knew or should have known that the water leak defect

6   presents a safety hazard and is unreasonably dangerous to consumers for several

7   reasons.  The water leak defect is dangerous because of the danger of catastrophic

8   engine and/or electrical system failure as a result of the water damaging the

9   vehicle's interior components while the vehicle is in operation.  Thus, the flooding

10  can cause engine failure, suddenly and unexpectedly, at anytime and under any

11  driving condition or speed, thereby contributing to traffic accidents, which can

12  result in personal injury or death.

13      5.      The water leak defect is also known to cause tail lights to fail or

14  malfunction.  This creates an unreasonably dangerous situation for the driver and

15  vehicles behind the driver that can potentially lead to rear-end accidents, or at the

16  very least, can result in traffic violations, tickets, and increased insurance

17  premiums for the Class Vehicles' drivers.

18      6.      Further, the water leak defect is particularly dangerous in a relatively

19  closed environment like that found inside an SUV such as the Class Vehicles

20  (even more so when the air is being recycled) because it can promote mold

21  growth.  For example, when it rains or when the vehicle is washed, the failure of

22  the Class Vehicles to prevent water from entering the vehicle causes the water to

23  accumulate in the trunk and/or passenger compartment, causing mold (as well as

24  bacteria and other contaminants) to infect the air of the car's interior cabin,

25  thereby exposing Class Members, their passengers, and individuals with whom

26  they come in contact to serious health risks.

27      7.      Mold reproduces by generating spores that are released into the air,

28  which then land on moist surfaces.  They thrive in dark, warm, and moist

1    locations, such as inside trunks and under tire wells, under wet carpets, within the

2    vehicles' interior cabins, and other such locations. Mold can trigger numerous

3    health problems, including allergic reactions and asthma attacks. For example,

4    exposure to these mold and other contaminants can cause difficulty breathing and

5    headaches, as well as asthma and allergies, in those who would not otherwise have

6    such health problems. These dangers are exacerbated by the fact that the mold

7    and other contaminants can be transferred by touch to other surfaces separate from

8    the vehicle. So, for example, if a passenger places an object in the trunk of a

9    vehicle with mold, that mold can attach to the surface of that object and will be

10   taken wherever that object is taken, *e.g.*, the home, the workplace, school, etc.

11   Complaints from exposure to mold include, but are not limited to, flu-like

12   symptoms, chronic fatigue syndrome, memory impairment, migraine headaches,

13   sick-building syndrome, dizziness, and nosebleeds.[2]

14       8.      The soaked interiors of Class Vehicles subject to the water leak

15   defect are also extremely difficult to dry properly and are often prone to hazardous

16   mold and odor, even after several detailed cleanings. Moreover, smaller, initial

17   leaks, as well accumulation of water under the tire well—while still causing the

18   same damage to the vehicles and their owners (*i.e.*, hazardous mold)—can

19   sometimes go undetected for weeks.

20       9.      In addition to safety hazards, the cost of the water leak defect to

21   consumers can be exorbitant because consumers will be required to pay hundreds,

22   if not thousands, of dollars both to repair the water leak defect and to repair the

23

24       [2] These are the mild symptoms. Many researchers claim that mold can
25   attack several main body systems, including the brain, the central nervous
     system, and the immune system. Mold has been the direct cause of some deaths.
26   Asthmatics, infants, and individuals suffering immune system deficiencies are
     particularly susceptible to the deleterious effects of mold. People with asthma
27   when exposed to strong concentrations of mold can literally die from such
28   exposure.

1  extensive damage that it causes to the vehicle's flooring, carpeting, and electrical

2  systems.

3       10.   Plaintiff is informed and believes and based thereon alleges that as of

4  July 2009, if not before, Defendant knew or should have known that the Class

5  Vehicles are defective and not fit for their intended purpose of providing

6  consumers with safe and reliable transportation.  Nevertheless, Defendant has

7  actively concealed and/or failed to disclose this defect from Plaintiff and the Class

8  Members at the time of purchase, lease, or repair, and thereafter.

9       11.   Plaintiff is informed and believes and based thereon alleges that as of

10  July 2009, Defendant knew that Old GM had issued a secret technical service

11  bulletin ("TSB") to its dealers acknowledging the existence of the water leak

12  defect and implementing a cheaper, albeit temporary, fixe: mainly replacing

13  and/or resealing (with a special "3M(TM) Ultrapro Autobody Sealant Clear or

14  [its] equivalent") various structural components of the Class Vehicles that are

15  defective, in part, because of insufficient, inadequate, or improperly applied body

16  sealer.

17       12.   Defendant also knew that Old GM had not disclosed the existence of

18  the TSB to Plaintiff, prospective Class Members, or the California New Motor

19  Vehicle Board, as is required by California's Secret Warranty Law.  Defendant

20  also knew that under the MPA and pursuant to California's Secret Warranty Law

21  it had a duty (after its acquisition of Old GM's assets and liabilities) to

22  immediately disclose the TSB to the various entities and failed to do so.

23       13.   Instead,  Defendant decided to attribute the water leaks to outside

24  influences and refused to cover the problem under warranty, as it was required to

25  do so under the MPA.[3]

26  _____

27       [3] Under the MPA, Defendant has agreed to assume "(A) all Liabilities
arising under express written emission and limited new vehicle warranties,
28  certified used vehicle warranties [which normally come with 6 years/100,000

14.    Although it is true that Defendant normally attributes water leaks to outside influences and does not cover them under warranty, it nevertheless has instructed its dealers to perform the resealing and/or or replacement program at no cost to the consumer.

15.    However, Defendant's clandestine program to temporarily fix the water leak defect with a special sealer was strictly limited to the most persistent customers and only those who visited the dealer and complained loudly enough about the problem. For example, when Plaintiff's daughter complained about the water leak defect, she was told by a GM authorized dealer that "it happens here all the time" and to "just air it out."

16.    Plaintiff is informed and believes and based thereon alleges that if Defendant's secret, temporary fixes, including resealing of the various structural components of the Class Vehicles with the special sealer, are successful, the effect of these fixes only last long enough to ensure that the manifestation of the water leak defect occurs outside of warranty period, but they will not permanently remedy the problem. This ultimately leaves consumers with defective vehicles that are substantially certain to again experience the water leak defect, the consequent damage caused by water leaks, and the associated safety hazards.

17.    Plaintiff is also informed and believes and based thereon alleges that Defendant is aware that replacing and/or resealing the various structural components of the Class Vehicles does not fix the water leak defect. However, Defendant continues to implement the replacing and/or resealing process simply to

miles warranty], and pre-owned vehicle warranties delivered in connection with the sale of new, certified used or pre-owned vehicles manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all Liabilities arising under express written emission and limited warranties and warranties with respect to new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions), manufactured or sold by [Old GM] or Purchaser," even if the vehicle was manufactured before the date of acquisition.

1    prolong the amount of time that will elapse before the water leak problem again

2    manifests itself; thus, helping ensure that the water leak defect occurs outside of

3    the warranty period so that Defendant can easily and unfairly shift financial

4    responsibility for the water leak defect to Class Members.

5         18.   Plaintiff is also informed and believes and based thereon alleges that

6    to mollify those consumers who complain loudly enough, Defendant implemented

7    another clandestine program to secretly reimburse or pay for repair costs of those

8    Class Vehicles that suffer from the water leak defect and the related damage that it

9    causes, even when the water leak defect and the related damage that it causes

10    occurs outside the vehicle's 3-year/36,000-mile express warranty period.

11    However, as with its secret TSB program, Defendant's secret repair and/or

12    reimbursement program is also strictly limited to the most persistent customers

13    who complain loudly enough.  For example, Defendant refused to replace

14    Plaintiff's indoor carpeting damaged by the water leak defect while agreeing to

15    replace or reimburse the floor carpeting and other similar items which is similar to

16    the manner in which Defendant deals with the most persistent customers who

17    complain loudly enough.

18         19.   Plaintiff is informed and believes and based thereon alleges that

19    despite notice of the defect from numerous customer complaints, Defendant has

20    not recalled the Class Vehicles to repair the defect, has not offered its customers a

21    suitable repair or replacement free of charge, and has not offered to reimburse the

22    Class Vehicles' owners and leaseholders the costs they incurred relating to

23    repairing water leaks and the related damage that it causes, including but not

24    limited to repairing or replacing electrical components and floor carpeting,

25    detailed cleaning and drying, removal of foul odors, repairs from water damage,

26    increased insurance premiums, vehicle rental costs, etc.

27         20.   Defendant knew and concealed the defects that are contained in every

28    Class Vehicle, along with the attendant dangerous safety problems and associated

1 repair costs, from Plaintiff and Class Members at the time of sale or repair and

2 thereafter. Had Plaintiff and the Class Members known about these defects at the

3 time of sale or repair, Plaintiff and the Class Members would not have purchased

4 the vehicles; nor would they have repaired the Class Vehicles, because the

5 temporary fixes do not repair the water leak defect. As a result of Defendant's

6 actions, owners and/or lessees of the Class Vehicles have suffered ascertainable

7 loss of money, property, and/or loss in value.

8     21.    Additionally, as a result of the water leak defect in the Class

9 Vehicles, Plaintiff and the Class Members have been harmed and have suffered

10 actual damages in that the Class Vehicles are experiencing continuous,

11 progressive, and repeated water leak defect problems and/or are substantially

12 certain to experience water leak defect problems before their expected useful life

13 has run.

## PARTIES

**Plaintiff:**

16     22.    Plaintiff Rodolfo Mendoza is a California citizen who lives in Los

17 Angeles County, California. Mr. Mendoza purchased a used 2008 Chevrolet

18 Equinox LS from Wondries Chevrolet on January 18, 2009. Mr. Mendoza

19 purchased this vehicle primarily for his personal, family, or household purposes.

20 This vehicle was manufactured, sold and warranted by Old GM, and bears the

21 Vehicle Identification No. 2CNDL13F786001899.

22     23.    In December 2009, with approximately 35,000 miles on the vehicle's

23 odometer and after a week with a great deal of rainfall, Mr. Mendoza's daughter,

24 Ms. Janet Mendoza, noticed a pungent odor emanating from the vehicle that

25 caused her light headaches and breathing difficulties. A few days later when

26 clearing out the back seat of the vehicle, Ms. Mendoza noticed that her file folders

27 had fallen out and were wet. Upon further investigation, Ms. Mendoza noticed

28 that the rear passenger and driver side seat of the vehicle were all wet.

24.     On December 15, 2009, Ms. Mendoza brought the vehicle to an authorized GM dealer, complaining that there was a foul odor and that water was leaking inside the vehicle. In response, the dealer instructed Ms. Mendoza to "just air it out" and that "it happens here all the time." Not satisfied with this response, Ms. Mendoza visited another authorized GM dealer, who ultimately sent her to O'Donnell Chevrolet-Buick, GM's authorized dealer in San Gabriel, CA. The sales manager there inspected the vehicle, opened up the trunk, and showed Ms. Mendoza that (in addition to the interior of the vehicle) the spare tire pit in the trunk was also full of water.

25.     O'Donnell Chevrolet did not provide Plaintiff with the fixes that Defendant had outlined in its clandestine TSB program to its dealers.

26.     The GM dealer also confirmed that there was mold and an associated mildew odor in the vehicle but refused Plaintiff's request to replace the carpets.

27.     When the vehicle was finally returned to Plaintiff and her daughter, the vehicle still smelled of mildew. In fact, Plaintiff's vehicle continues to experience problems associated with the water leak defect.

28.     In addition to other damages, Plaintiff has incurred damages related to cleaning the interior carpets of the vehicle. Similarly, like other class members, Plaintiff has not received the fixes outlined in Defendant's secret TSB.

**Defendant**:

29.     Defendant GM is a Delaware Limited Liability Company with its headquarters and principal place of business in the State of Michigan. Defendant does business in the state of California. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including but not limited to Chevrolet, GMC, GM, and Pontiac throughout the United States.

## JURISDICTION

30.     This is a class action.

1    31.    Members of the proposed Plaintiff Class are citizen of California, a

2    state different from the home state of Defendant.

3    32.    On information and belief, the aggregate claims of individual Class

4    Members exceed $5,000,000, exclusive of interest and costs.

5    33.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

6    **VENUE**

7    34.    Defendant, through its business of distributing, selling, and leasing its

8    Class Vehicles, has established sufficient contacts in this district such that it is

9    subject to personal jurisdiction here.  Defendant is deemed to reside in this district

10    pursuant to 28 U.S.C. § 1391(a).

11    35.    In addition, a substantial part of the events or omissions giving rise to

12    these claims and a substantial part of the property that is the subject of this action

13    are in this district.

14    36.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

15    **APPLICABLE LAW**

16    37.    California State law applies to all claims in this action.

17    **FACTUAL ALLEGATIONS**

18    38.    The Class Vehicles contain a water leak defect.  This defect is

19    substantially and unreasonably dangerous, as it can result in drivers of the Class

20    Vehicles being exposed to hazardous contaminants, such as mold.  Further, the

21    water leak defect can lead to irreparable damage to electrical and mechanical

22    components in the Class Vehicles, such as the front lights and tail lights, which

23    creates a serious operational and safety concern to both the Class Vehicles'

24    occupants and the public.

25    39.    The water leak defect is also dangerous because of the danger of

26    catastrophic engine and/or electrical system failure as a result of leaked water

27    damaging the vehicle's interior components while the vehicle is in operation.

28    Thus, the flooding can cause engine failure, suddenly and unexpectedly, at any

Case No. CV 10-2683 AHM (VBK)        Page 9

1    time and under any driving condition or at any speed, thereby contributing to

2    traffic accidents, which can result in personal injury or death.

3        40.    Plaintiff is informed and believes and based thereon alleges that

4    Defendant acquired its knowledge of the water leak defect through internal

5    sources not available to Class Members, including but not limited to Old GM's

6    pre-release and other internal testing data, consumer complaints about the water

7    leak defect that were made to both Old GM and Defendant, testing conducted in

8    response to those complaints, aggregate data from Defendant's dealers, and from

9    other internal sources.

10        41.    Hundreds, if not thousands, of purchasers and lessees of the Class

11    Vehicles have experienced problems with water leaks. Complaints filed by

12    consumers with the NHTSA and posted on the Internet demonstrate that the defect

13    is widespread and dangerous, and that it manifests without warning. The

14    complaints also indicate Defendant's awareness of the defect and how potentially

15    dangerous the defective condition is (note that spelling and grammar mistakes

16    remain as found in the original):

17        •   NHTSA Complaint: ON JAN. 11, 2010, I STARTED MY CAR TO

18            LET IT WARM UP BEFORE LEAVING FOR WORK. I LET THE

19            CAR RUN FOR ABOUT 10 MINUTES. DROVE THE 20 MINUTE

20            DRIVE TO WORK, AND WHEN I GOT DOWNTOWN, THE CAR

21            SHUT DOWN AND ALL OF THE WARNING LIGHTS ON THE

22            DASHBOARD CAME ON. WAS ABLE TO COAST TO SIDE OF

23            STREET AND STOP CAR. RESTARTED CAR AND PUT INTO

24            DRIVE. ALL WARNING LIGHTS STILL ON, AND DON'T HAVE

25            ANY POWER. WAS ABLE TO COAX CAR TO GO THREE

26            BLOCKS TO PARKING LOT, AND CALLED DEALER WHO

27            CAME AND GOT THE CAR. AFTER CHECKING, I WAS TOLD

28            THAT WATER HAD LEAKED DOWN THE RIGHT FRONT

1        PASSENGER SIDE OF THE WINDOW, FREEZING, THAWING

2        AND BACKING UP WHICH GOT TO THE WIRING AND

3        BURNT IT OUT. REALLY GLAD THAT I WASN'T ON THE

4        INTERSTATE THAT MORNING. *TR

5      •   NHTSA Complaint: EQUINOX HAS HAD POWER FAILURE

6        WHILE DRIVING 6+ TIMES...ALL WHEN DRIVING IN WET

7        CONDITIONS (EITHER RAINING OR HAVING JUST RAINED).

8        FIRST TIME WAS TOLD BY DEALERSHIP THAT I DROVE

9        THRU A PUDDLE AND GOT EVERYTHING WET (I DIDN'T);

10       HAD SOMETHING TO DO WITH THE ELECTRICAL SYSTEM

11       REPLACED. HAVE TAKEN CAR BACK TO DEALER WITHIN

12       THE LAST TWO MONTHS BECAUSE IT HAPPENED AGAIN,

13       AND WAS TOLD ALL OF MY WEATHERSTRIPPING NEEDED

14       REPLACING B/C THAT WAS ALLOWING WATER IN. HAD

15       THIS DONE. HAPPENED AGAIN TONIGHT (WET WEATHER

16       TODAY, BUT WAS NOT RAINING WHEN I WAS DRIVING).

17       THE OTHER TIMES THIS HAS OCCURRED, I'VE LET MY

18       EQUINOX SIT WHERE IT DIED FOR A FEW DAYS TO LET IT

19       "DRY OUT" AND THAT HAS WORKED, BUT THIS NOT

20       EXACTLY THE BEST SOLUTION AS I DON'T LIVE IN THE

21       DESERT AND IT DOES RAIN HERE. CHEVY DEALER OF NO

22       HELP; SAID HE AGREES THERE IS A MANUFACTURING

23       DEFECT BUT THERE IS NOTHING HE CAN DO ABOUT IT.

24       ADVISED ME TO CALL CHEVY CS. I HAVE DEALT WITH

25       THEM BEFORE ON ANOTHER EQUINOX ISSUE AND THEY

26       WERE OF NO HELP. WISH I WOULD HAVE INVESTIGATED

27       MY STATE'S LEMON LAW IN TIME. SUDDEN AND TOTAL

28       LOSS OF POWER IS DANGEROUS!! *TR

Case No. CV 10-2683 AHM (VBK)     Page 11

FIRST AMENDED COMPLAINT

1  • NHTSA Complaint: EVERYTIME THAT I TAKE MY CAR IN
2  FOR A QUICK CAR WASH OR IF IT RAINS REALLY HARD (IN
3  FLORIDA IT DOES)... WATER LEAKS THROUGH THE LIGHTS
4  IN THE CEILING, THE BACK HATCH, AND THROUGH THE
5  FLOOR BOARDS. MY CHECK ENGINE LIGHT COMES ON
6  AND THE DEALER TELLS ME THAT IT IS WATER
7  CORROSION FROM THE WATER LEAKING THROUGH THE
8  ELECTRICAL WIRING HARNESS. THIS CAUSES MY CAR TO
9  RUN, EVEN THOUGH I HAVE MY PEDAL TO THE FLOOR,
10  VERY SLOW. I CAN'T GO PAST 10MPH. I AM AFRAID OF
11  ELECTRICAL FIRE. I CAN HARDLY TURN A CORNER... I AM
12  AFRAID OF A CAR ACCIDENT. MY CAR IS ONLY 2 YEARS
13  OLD NOW... 4/2008 AND THIS HAS HAPPENED A 3RD TIME.
14  MY BATTERY HAS ALREADY HAD TO BE REPLACED AND
15  MY RADIO REPLACED TWICE BECAUSE OF THE "CD
16  CHANGER ERROR". NOW I CAN ONLY IMAGINE, WITH ALL
17  OF THE WATER THAT KEEPS COMING IN, WHAT
18  CONDITION MY CAR WILL BE IN A FEW MONTHS FROM
19  NOW. ELECTRICAL PROBLEMS, BAD SMELL, CORRODING
20  FLOOR BOARDS AND WHO KNOWS WHAT ELSE. *TR
21  • NHTSA Complaint: THE CONTACT STATED THAT WHILE
22  DRIVING IN THE RAIN VEHICLE LOST POWER. THIS HAS
23  HAPPENED SEVERAL TIMES WITHIN THE LAST 6 MONTHS.
24  THE CONTACT TOOK THE VEHICLE TO THE DEALERSHIP
25  TO BE SERVICED AND THEY HAVE NOT BEEN ABLE TO
26  DIAGNOSIS THE FAILURE. *AK
27  • NHTSA Complaint: THE BACK FLOORBOARD OF MY CAR
28  HAS BEEN NOTICABLY WET FOR A FEW MONTHS.  MY CAR

1    IS OUT OF WARRANTY SO I BEGAN RESEARCHING ONLINE
2    TO SEE WHAT MIGHT BE THE PROBLEM. THE SEALS
3    AROUND THE DOORS WERE FINE. I DID FIND 3" OF WATER
4    LAYING IN MY SPARE TIRE COMPARTMENT. THERE IS NO
5    DRAIN HOLE FOR THE WATER TO BE REMOVED. THE
6    WATER IS COMING IN FROM THE TAIL LIGHTS. THE
7    DEALERSHIP I PURCHASED THE EQUINOX FROM SIMPLY
8    LAUGHED AT THE PROBLEM AND SAID IT WOULD COST
9    OVER $200 TO REPLACE JUST THE TAIL LIGHT. THE SMELL
10    INSIDE OF THE VEHICLE IS HORRIBLE. IT IS OBVIOUSLY
11    RUSTING THE BODY AND CAUSING MOLD AND MILDEW
12    INSIDE THE VEHICLE. *TR
13    •    NHTSA Complaint: I AM EXPERIENCING AN EXTREMELY
14    STRONG MILDEW SMELL INSIDE MY EQUINOX. IT IS SO
15    STRONG PEOPLE COMMENT OUTSIDE THE CAR. THE
16    SMELL ALSO PENETRATES CLOTHING SO THAT OTHERS
17    NOTICE THE SMELL. PEOPLE WILL NOT RIDE IN MY CAR. I
18    HAVE HAD IT TO THE DEALER TWICE. BOTH TIMES THE
19    ODOR IMPROVES SLIGHTLY (THEY DEPDORIZE THE HVAC)
20    BUT STILL OTHERS COMMENT. I AM CONCERNED ABOUT
21    DRIVING MY 3 YEAR OLD B/C OF THE SMELL. WE HAVE
22    FOUND NO VISIBLE WETNESS OR MOLD. THE RUBBER
23    AROUND TWO WINDOWS WAS LOOSE BUT THE DEALER
24    DID NOT FIND WATER INSIDE THE DOOR. THE SMELL
25    DOES NOT SEEM TO BE COMING FROM THE VENTS BUT
26    MORES SO JUST FROM THE CAR. *NM
27    •    NHTSA Complaint: . . . WATER SOAKING FLOOR BOARDS
28    TWICE CAUSING MOLD & MILDEW . . . . *NM

Case No. CV 10-2683 AHM (VBK)         Page 13

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- NHTSA Complaint: . . . THE CONSUMER HAD DRIVEN THROUGH A CAR WASH, THE DOME LIGHT HAD FILLED WITH WATER, THE LOWER DASH WAS DRIPPING WATER . . . . *SC *JB

- NHTSA Complaint: SPARE TIRE WELL UNDER THE FLOOR IN THE REAR OF MY EQUINOX FILLS WITH WATER. THIS MORNING IT HAD MORE THAN TWO INCHES. I DID NOT REALIZE THIS WAS HAPPENING AND I DO NOT KNOW WHERE IT IS COMING FROM. MY NEIGHBOR HAS THE SAME PROBLEM AS DOES HIS COWORKER (BOTH ARE FLEET VEHICLES). HE JUST TOLD ME ABOUT IT AND I LOOKED IN MINE. HE HAS GOTTEN A NEW COMPANY CAR AS HE WAS GETTING SICK FROM MOLD FROM THE LEAK.

- NHTSA Complaint: I HAD TO HAVE MY TRUNK COMPARTMENT REPLACED AND SOME AREAS AROUND THE FRAME OF THE BODY RE-SEALED DUE TO EXCESS WATER ACCUMULATING IN THE SPARE TIME AREA. I WAS FIRST TOLD BY THE DEALER REPAIR SHOP THAT IT WAS A DEFECT BUT WHEN I REQUESTED REIMBURSEMENT GM DENIED THAT THE DEALER EVER TOLD THEM THIS. I BELIEVE GM IS DENYING THAT THERE ARE SOME STRUCTURAL PROBLEMS WITH THIS YEAR AND MODEL AND MY FEAR IS THAT ANOTHER YEAR DOWN THE ROAD THERE WILL BE OTHER ISSUES WITH THE FRAME/BODY OF THIS MODEL VEHICLE. ALSO, IT BOTHERS ME THAT WE ARE ENCOURAGED TO "BUY AMERICAN" BUT THE AMERICAN CAR MAKERS DO NOT WANT TO STAND UP TO THEIR PROMISE OF GOOD MAKEMANSHIP. I AM

1    DISAPPOINTED AND ESPECIALLY WITH THE DISHONESTY
2    AT THE CORPORATE LEVEL OF THIS CORPORATION.  *TR
3    •    NHTSA Complaint: WE OWN A 2007 EQUINOX, OUR FRIEND
4    STATED THAT HIS EQUINOX HAD WATER IN THE SPARE
5    TIRE COMPARTMENT.  WE HAVE BEEN GETTING SICK FOR
6    A WHILE AND DIDN'T KNOW WHY.  WE LOOKED IN OUR
7    SPARE TIRE COMPARTMENT AND THERE WAS A FOOT OF
8    WATER.  NOW WE CANNOT DRIVE THIS VEHICLE FOR
9    HEALTH REASONS.  GM KNEW ABOUT THIS PROBLEM FOR
10   THERE ARE 3 SERVICE BULLETINS FOR THIS PROBLEM.
11   THEY WILL NOT HELP US WITH A TRADE ASSIST AND WE
12   CANNOT DRIVE IT DUE TO THE MOLD.  WE HAVE
13   CONDENSATION IN THE INSIDE OF THE VEHICLE AND
14   HAVE TO WIPE IT OFF WITH A TOWEL BEFORE WE CAN
15   DRIVE IT.  THE VEHICLE IS FULL OF MOLD!  I'M SURE THIS
16   VEHICLE HAS BEEN LEAKING SINCE DAY ONE!  *TR
17   •    Internet Posting: • 2007 Pontiac Torrent, water in the spare tire well,
18   been to dealer 4 times, still leaks, 1st & 2nd time replaced a tail light,
19   3rd time sealed seam in rear panel, 4th time sealed wire grommets at
20   the top of rear door & removed both taillights to seal some body
21   seams. Will not leak with a water hose, only when it rains.
22   •    Internet Posting: my 07 equinox is also getting water in the tire well
23   but they dont know where the leak is coming from
24   •    Internet Posting: My 2006 Equinox leaks from the driver side near
25   the Hood release I have to keep towels down when it rains.  any
26   suggestions??????? In washington state where it rains all the time is
27   not good-.
28

1    •    <u>Internet Posting</u>: good luck, I have a 07 Equinox and after taking it to

2        the dealership and them sending it out for repair and fixing 9-10

3        leaks..... I still have water under the spare tire... Also major concern

4        for mold buildup in my carpet. . . . I'm sooooooooooo tired of having

5        to deal with this. . . . that was one of the 9 or 10 leaks they have fixed

6        so far. thanks for sharing . . . . here's an update ... I now have a

7        lemon law atty. we are waiting for better business bureau to inspect

8        my vehicle. I have purchased a mold kit and will put it in the car

9        tomarrow. I have been back and forth to the doctor soooo many

10       times lately. They now think I have asthma due to being around

11       mold ... hmm wonder where I could have been around mold ..... my

12       doctor advised me not to drive my car anymore .. GM does not want

13       to do anything about this, I am so sick of this, Now my car is parked

14       under a car cover. Gatta love paying for a car note and insurance on

15       something I cannot drive, I have made it my goal to make sure every

16       equinox I see driving around knows to check for this issue .. ,

17       hopefully I can catch them before their warranty wears out.

18       •    <u>Internet Posting</u>: I CANT STOP CRYING!! i have about ten gallons

19       of standing water in my tire well and the dealer ship just sent me to a

20       "water work place" it will cost me 1,000 dollars ..insurance will not

21       cover it will take 4days to fix it. It will cost 180.00 to rent a car. I

22       have no radio the water damage blew my amp located under back

23       seats so i have to that fixed!! no one can just empty out the water till

24       i come up with this lump sum of money

25       •    <u>Internet Posting</u>: the dealership that we bought the car from is saying

26       that our warranty doesnt cover the leak. I told the service dude to

27       look online to see how many other equinoxes have this SAME

28       problem, but he didnt care, He said that since there isnt a Government

1    recall, they cant do anything.  He thought that $1000,00 was a good

2    price to pay to seal the rubber part up.  Are you freaking kidding me

3    .. , um no thanks, So if any of you got your warranty to cover this ... I

4    just want to know how.

5        42.    Customers have reported the water leak defect in the Class Vehicles

6    to Defendant directly and through its dealers.  Defendant is fully aware of the

7    water leak defect in the Class Vehicles.  Despite this, Defendant has actively

8    concealed the existence and nature of the defect from Plaintiff and the Class

9    Members at the time of purchase or repair and thereafter.  Specifically, Defendant

10    has:

11        a.    failed to disclose, at and after the time of purchase or repair

12        and thereafter, any and all known material defects or material

13        nonconformity of the Class Vehicles, including the water leak

14        defect of the Class Vehicles and its associated repair costs;

15        b.    failed to disclose at the time of purchase or repair that the Class

16        Vehicles, including the water leak defect of the Class Vehicles,

17        were not in good working order, were defective, and were not

18        fit for their intended purpose; and

19        c.    failed to disclose or actively concealed the fact that the Class

20        Vehicles had a water leak defect, despite the fact that

21        Defendant learned of such defects through consumer

22        complaints, as well as other internal sources, as early as July

23        2009, if not before.

24        43.    Defendant has caused Plaintiff and Class Members to expend money

25    at its dealerships or other third-party facilities to clean, repair, or replace parts

26    and/or take other remedial measures related to the water leak defect of the Class

27    Vehicles, as well as to repair or replace items damaged by water leaks and

28

1 flooding resulting from the water leak defect, despite Defendant's knowledge of

2 the water leak defect.

3     44.    Further, Defendant has caused Plaintiff and Class Members to expend

4 money professionally cleaning the Class Vehicles, as well as to find alternative

5 means of transportation due to loss of use of the Class Vehicles.

6     45.    Defendant has not recalled the Class Vehicles to repair the defect, has

7 not offered to its customers a suitable repair or replacement of parts free of charge

8 related to the water leak defect, has not offered to reimburse Class Vehicle owners

9 and leaseholders who incurred costs relating to repairs related to the water leak

10 defect, and has not offered to reimburse Class Members any other costs associated

11 with repairing or addressing problems caused by the water leak defect.

12     46.    The Class Members have not received the value for which they

13 bargained when they purchased or leased the Class Vehicles.

14     47.    As a result of the defect, the value of the Class Vehicles has

15 diminished, including without limitation their resale values.

16     **VIOLATION OF CALIFORNIA SECRET WARRANTY LAW**

17     48.    Defendant has violated, and continues to violate, California Civil

18 Code section 1795.90 et seq. (the "California Secret Warranty Law"). The

19 California Secret Warranty Law was enacted to abolish "secret" warranties. The

20 term "secret warranty" is used to describe the practice by which an automaker

21 establishes a policy to pay for repair of a defect without making the defect or the

22 policy known to the public at large. A secret warranty is usually created when the

23 automaker realizes that a large number of its customers are experiencing a defect

24 not covered by a factory warranty, and decides to offer warranty coverage to

25 individual customers only if, for example, the customer complains about the

26 problem first. The warranty is considered "secret" because all owners are not

27 notified of it. Instead, the automaker may issue a TSB to its regional offices

28 and/or dealers on how to deal with the defect, although a TSB or other formal

1    document is not necessary to create a secret warranty.  Because owners are kept in

2    the dark about the cost-free repair, the automaker only has to reimburse those

3    consumers who complain loudly enough; the quiet consumer either does not fix

4    the problem or pays to fix the defect by himself or herself.

5         49.    Section 1795.2 of the California Secret Warranty Law imposes

6    several duties on auto manufacturers like Defendant, each of which is designed to

7    do away with secret warranties.

8         50.    Plaintiff and members of the proposed Class are consumers as that

9    term is defined by section 1795.90(a) of the California Secret Warranty Law.  The

10    California Secret Warranty law requires automakers to notify consumers, by first-

11    class mail, within 90 days of adoption, whenever they adopt "any program or

12    policy that expands or extends the consumer's warranty beyond its stated limit or

13    under which [the] manufacturer offers to pay for all or any part of the cost of

14    repairing, or to reimburse consumers for all or any part of the cost of repairing,

15    any condition that may substantially effect vehicle durability, reliability, or

16    performance . . . ."[4]

17         51.    The California Secret Warranty Law also requires automakers to

18    provide the New Motor Vehicle Board with a copy of the notice described above,

19    so the public can view, inspect, or copy that notice.

20         52.    Additionally, the California Secret Warranty Law requires

21    automakers to advise their dealers, in writing, of the terms and conditions of any

22    warranty extension, adjustment, or reimbursement program.

23         53.    The California Secret Warranty Law also requires an automaker to

24    "implement procedures to assure reimbursement of each consumer eligible under

25

26

27        [4] Plaintiff alleges that Defendant formally adopted the secret TSB, as well
as the repair or replacement program for the water damaged components in or
around July 2009.

28

1  an adjustment program who incurs expenses for repair of a condition subject to the

2  program prior to acquiring knowledge of the program."

3      54.    In or around July 2009, Defendant formally adopted TSB No. 08-08-

4  57-001A.  The TSB describes the numerous water leak defects suffered by the

5  Class Vehicles:

6          a.    Water may be entering from top of the strut tower into the

7                driver side and or passenger side floor.

8          b.    Water may be entering through the seams in the floor pan on

9                the driver side and/or passenger side.

10         c.    Water may be entering through the liftgate weatherstrip.

11         d.    Water may be entering between the liftgate and the

12               weatherstrip.

13         e.    Water may be entering through a gap in the sealer at the rear

14               D-pillar (roof to body).

15         f.    Water in spare tire.

16         g.    Water in the rear compartment.

17  The TSB also describes the numerous possible causes of those water leak defects:

18         a.    Water may be entering from top of the strut tower into the

19               driver side and or passenger side floor.

20         b.    Water may be entering through the seams in the floor pan on

21               the driver side and/or passenger side.

22         c.    Water may be entering through the liftgate weatherstrip.

23         d.    Water may be entering between the liftgate and the

24               weatherstrip.

25         e.    Water may be entering through a gap in the sealer at the rear

26               D-pillar (roof to body).

27         f.    Water may be entering through a gap in the sealer behind the

28               rear fascia.

1            g.      Water may be entering through a gap in the sheet metal behind

2                    the tail lamps.

3   Finally, the TSB describes the various temporary fixes for the water leak defects:

4            a.      Reseal the strut tower. Use 3M(TM) Ultrapro Autobody

5                    Sealant Clear or equivalent.

6            b.      Remove the carpet and reseal the sheet metal seam.

7            c.      Remove the weatherstrip and reseal the sheet metal.

8            d.      Adjust the liftgate. Refer to Liftgate Adjustment in SI.

9            e.      Remove the roof rack and inspect for any voids in the sealant.

10                    Refer to Luggage Carrier Replacement Equinox or Torrent in

11                    SI. Use 3M™ Ultrapro Autobody Sealant Clear or equivalent.

12            f.      Remove the rear fascia and reseal the sheet metal seam. Refer

13                    to Rear Bumper Fascia Replacement in SI.

14            g.      Remove the tail lamps. Refer to Tail Lamp Replacement in SI

15                    and reseal the sheet metal seam.

16      55.     The TSB further states: "Important: IF A MILDEW ODOR IS

17 PRESENT IN THE VEHICLE, REFER TO PIT4535." (emphasis in original).

18      56.     Plaintiff is informed and believes and based thereon alleges that the

19 free water leak defect repairs outlined in Defendant's secret TSB is applicable to

20 all Class Vehicles.

21      57.     Defendant does not typically pay for repairing the water leak defect

22 under its new car warranty (or any other warranty) because Defendant considers

23 water leaks to be the result of outside influences and, therefore, not covered by

24 Defendant's express warranty. In fact, Defendant or Defendant's authorized

25 dealers for vehicle repairs typically tell consumers that the water leak defect is as a

26 result of an outside influence and not covered under warranty.[5] Thus, by

27

28       [5] For example, a GM consumer explained GM's refusal to provide warranty coverage this way:

1    extending its warranties to cover repair of the water leak defect, Defendant has

2    "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit."

3        58.    Additionally, the vehicle performance problems that the TSB

4    resealing and/or replacement procedures are intended to address "substantially

5    affect the vehicle durability, reliability, or performance." These problems include,

6    but are not limited to, engine failure, electrical system failure, as well as water

7    damage to interior components of the vehicles and tail lights, and rust. Therefore,

8    the offers to provide free repair of the water leak defect are "adjustment

9    programs" within the meaning of the California Secret Warranty Law.

10        59.    Plaintiff is informed and believes and based thereon alleges that

11    Defendant has also extended its warranty in another way; namely, by employing a

12    secret policy to pay for the water leak defect related damage of those consumers

13    who complain loudly enough. The decision to offer this free repair outside the

14    vehicle's New Car Warranty is not done on an *ad hoc* basis. Rather, it is made

15    pursuant to a systematic policy—communicated to *inter alia*, regional offices,

16    dealers, and GM customer care personnel—to pacify the most vocal consumers so

17    as to preserve Defendant's reputation. Upon information and belief, the code

18    names for these policies, include but are not limited to good will adjustments or

19    policy adjustments.[6]

20        60.    Again, water leaks are not normally included in the warranty

21    coverage. Thus, by extending its warranties to cover the water leak defect and/or

22          The dealership that we bought the car from is saying that our

23    warranty doesnt cover the leak. I told the service dude to look
online to see how many other equinoxes have this SAME problem,

24    but he didnt care, He said that since there isnt a Government recall,
they cant do anything. He thought that $1000,00 was a good price

25    to pay to seal the rubber part up. Are you freaking kidding me .. ,
um no thanks, So if any of you got your warranty to cover this ... I

26    just want to know how.

27      [6] For example, Defendant refused to replace Plaintiff's indoor carpets,
while at the same time it has reimbursed or replaced such items for other

28    consumers who complain loudly enough for the same and/or similar items.

1 related damage, Defendant has "expand[ed] or extend[ed] the consumer's

2 warranty beyond its stated limit." Thus, Defendant's temporary repair and/or

3 repair of damage constitutes an adjustment program under the Secret Warranty

4 Law and constitutes an offer to pay for or to reimburse consumers for the cost of

5 repairing a condition that substantially affects vehicle durability, reliability, or

6 performance.

7    61.    As a result of the foregoing, Defendant is obligated to comply with

8 the provisions of the California Secret Warranty Law with respect to its resealing,

9 replacing, repairing, and reimbursement offers.  It has not done so.

10    62.    Specifically, Defendant did not notify Plaintiff, or any other owner or

11 lessee of a Class Vehicle, of their right to free repair of the water leak defect and

12 consequent damage, or to be reimbursed for the cost of repairing the water leak

13 defect and consequent damage (*e.g.*, replacement of interior carpets, as well as

14 other components within the vehicle damaged by the water leak defect).

15    63.    Defendant has also refused to provide the free water leak repair,

16 replacement or reimbursement to owners or lessees of affected vehicles who have

17 specifically requested it.  Moreover, even though Defendant is aware of fixes for

18 this problem, Defendant has refused to notify Plaintiff, or any other owner or

19 lessee of a Class Vehicle, of these available fixes and has refused to pay or

20 reimburse owners or lessees of Class Vehicles for the consequent damages that the

21 water leak defect causes.

22    64.    Additionally, Defendant has refused to reimburse consumers who

23 have paid to repair the water leak defect and/or paid for damage resulting from the

24 water leak defect.

25    65.    Upon information and belief, Defendant did not comply with the

26 dealer-notification provisions of the California Secret Warranty Law.

27    66.    Upon information and belief, Defendant has also failed to comply

28 with the New Motor Vehicle Board notification procedures.

1

2                    **TOLLING OF THE STATUTE OF LIMITATIONS**

3          67.    Since the defects in the design or manufacture of the Class Vehicles

4    resulting in water leaks cannot be detected until the defect manifests, Plaintiff and

5    Class Members were not reasonably able to discover the problem until long after

6    purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

7          68.    Plaintiff and Class Members had no realistic ability to discern the

8    water leak defect until water leaks occurred.  In addition, despite their due

9    diligence, Plaintiff and Class Members could not reasonably have been expected

10   to learn or discover that they were deceived and that material information

11   concerning the water leak defect was concealed from them, until manifestation of

12   the defect.  Therefore, the discovery rule is applicable to the claims asserted by

13   Plaintiff and the Class Members.

14         69.    Upon information and belief, Defendant has known of the structural

15   defects contained in the Class Vehicles since at least July 2009,  if not earlier, and

16   has concealed from or failed to alert owners and lessees of the Class Vehicles of

17   the water leak defect at the time of purchase or repair.

18         70.    Any applicable statutes of limitation have therefore been tolled by

19   Defendant's concealment and denial of the facts alleged here.  Defendant is

20   further estopped from relying on any statutes of limitation because of its

21   concealment of the defective nature of the Class Vehicles.

22                       **CLASS ACTION ALLEGATIONS**

23         71.    Plaintiff brings this lawsuit as a class action on behalf of himself and

24   all other California residents similarly situated as members of a proposed Plaintiff

25   Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

26   This action satisfies the numerosity, commonality, typicality, adequacy,

27   predominance, and superiority requirements of those provisions.

28         72.    The Class and Sub-Class is defined as:

Class: All persons in the State of California who currently own or lease, or owned or leased, a Chevrolet Equinox for the model years 2005-2009 or a Pontiac Torrent of any type for the model years 2006-2009.

Sub-Class: All Members of the Class who are "consumers" within the meaning of California Civil Code section 1761(d) ("the CLRA Sub-Class").

Excluded from the Class and sub-Class are: (1) all claims for out-of-pocket water leak defect related expenses that were incurred prior to July 2009; (2) any claims for personal injury; (3) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns, and successors; and (4) the judge to whom this case is assigned, as well as any member of the judge's immediate family.

73.    Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise limited.

74.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

75.    Typicality: The claims of the representative Plaintiff is typical of the claims of the Class in that the representative Plaintiff, like all Class Members, owns a Class Vehicle designed and manufactured by Defendant that has the water leak defect. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing the water leak defect or repairing damage caused by the defective water leak defect. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent,

1    deliberate, and negligent misconduct resulting in injury to all Members of the

2    Class.

3        76.    Commonality: There are numerous questions of law and fact common

4    to Plaintiff and the Class which predominate over any questions affecting only

5    individual Class Members.  These common legal and factual issues include the

6    following.

7            a.    Whether the Class Vehicles are defectively designed or

8                manufactured such that they are not suitable for their intended

9                use;

10           b.    Whether Defendant knew or should have known of the

11                inherent design or manufacturing defect in its Class Vehicles;

12           c.    Whether Defendant fraudulently concealed from or failed to

13                disclose to Plaintiff and the Class the inherent problems with

14                its Class Vehicles;

15           d.    Whether Defendant had a duty to Plaintiff and the Class to

16                disclose the inherent problems with its Class Vehicles;

17           e.    Whether the facts concealed or not disclosed by Defendant to

18                Plaintiff and the Class are material;

19           f.    Whether as a result of Defendant's concealment of or failure to

20                disclose material facts, Plaintiff and the Class acted to their

21                detriment by purchasing or repairing the Class Vehicles;

22           g.    Whether Defendant engaged in unfair competition or unfair

23                deceptive acts or practices when it concealed the limitations

24                and failed to warn Plaintiff and Class Members of the defects

25                in its Class Vehicles;

26           h.    Whether resealing the water leak defect under Defendant's

27                clandestine TSB program is an "adjustment program" under

28                the Secret Warranty Law;

i.    Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with its Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

j.    Whether Plaintiff and the Class are entitled to replacement of parts related to the water leak defect;

77.    <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions—specifically actions involving defective products. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the Class.

78.    <u>Predominance and Superiority</u>: Plaintiff and the Members of the Class have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Member's claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

# FIRST CLAIM FOR RELIEF

## (Violation of California's Consumers Legal Remedies Act,

## California Civil Code section 1750 *et seq.*)

79.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

80.    Plaintiff brings this cause of action against Defendant on behalf of himself and on behalf of the Members of the sub-Class.

81.    Defendant is a "person" as defined by Civil Code section 1761(c).

82.    Plaintiff and Class Members are consumers who purchased or leased the Class Vehicles.

83.    By failing to disclose and concealing the water leak defect, Defendant violated Civil Code section 1770(a), as it represented that its Class Vehicles had characteristics and benefits that they do not have, and represented that its Class Vehicles were of a particular standard, quality or grade when they were of another. (*See* Civ. Code §§ 1770(a)(5) & (7).)

84.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

85.    Defendant knew that its Class Vehicles were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

86.    Defendant was under a duty to Plaintiff and the Class to disclose the defective nature of the Class Vehicles:

        a.    Defendant was in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

1         b.    Plaintiff and the Class Members could not reasonably have

2               been expected to learn or discover that the Class Vehicles had

3               a dangerous safety defect until manifestation of the failure; and

4         c.    Defendant knew that Plaintiff and the Class Members could

5               not reasonably have been expected to learn or discover the

6               safety defect and the associated repair costs that it causes.

7        87.    In failing to disclose the water leak defect and the associated repair

8    costs that it causes, Defendant has knowingly and intentionally concealed material

9    facts and breached its duty not to do so.

10        88.    The facts concealed or not disclosed by Defendant to Plaintiff and the

11    Class are material in that a reasonable consumer would have considered them to

12    be important in deciding whether to purchase or repair Defendant's Class

13    Vehicles, including repairing, cleaning, and/or replacing carpets, flooring,

14    electronic components, or other parts damaged by the water leak defect. Had

15    Plaintiff and the Class known about the defective nature of the Class Vehicles,

16    they would not have purchased or repaired the Class Vehicles, or they would have

17    paid less to repair or purchase it.

18        89.    Plaintiff and the Class reasonably expected the Class Vehicles to

19    function properly and not to experience water leaks inside the interior cabin,

20    including the trunk, for the life of their vehicles. That is the reasonable and

21    objective consumer expectation.

22        90.    As a direct and proximate result of Defendant's unfair or deceptive

23    acts or practices, Plaintiff and the Class have suffered and will continue to suffer

24    actual damages.

25        91.    Plaintiff and the Class are also entitled to equitable and injunctive

26    relief.

27        92.    Plaintiff has provided Defendant with notice of its alleged violations

28    of the CLRA pursuant to Civil Code section 1782(a). Defendant failed to provide

1    the appropriate relief for its violation of the CLRA within 30 days of the date of

2    the notification letter.

3

4                          **SECOND CLAIM FOR RELIEF**

5    **(Violation of California's Unfair Business Practices Act, California Business**

6    **& Professions Code section 17200 *et seq.* – Violations of California's Secret**

7                                  **Warranty Law)**

8            93.    Plaintiff hereby incorporates by reference the allegations contained in

9    the preceding paragraphs of this Complaint.

10           94.    Plaintiff brings this cause of action on behalf of himself and on behalf

11   of the Members of the Class.

12           95.    By committing the acts and practices alleged herein, Defendant

13   violated the Secret Warranty Law, and by doing so, has engaged in deceptive,

14   unfair, and unlawful business practices in violation of the Unfair Competition Law

15   ("UCL"), California Business & Professions Code section 17200 *et seq.*

16           96.    Defendant's violation of the Secret Warranty Law (hence the UCL)

17   continues to this day.  As a direct and proximate result of Defendant's violations

18   of the Secret Warranty Law, hence the UCL, Plaintiff and Class Members have

19   suffered damages related to the water leak defect.

20           97.    Pursuant to section 17203 of the UCL, Plaintiff and Class Members

21   seek an order of this Court requiring Defendant to comply with the terms of the

22   California Secret Warranty Law by: (a) notifying Class Members of the secret

23   program for repairing the water leak defect and reimbursing for damage caused by

24   the water leak defect as required by the California Secret Warranty Law; (b)

25   providing free repairs, modifications, corrections, and/or replacements to all Class

26   Members as required by the Secret Warranty Law; (c) identifying and reimbursing

27   all Class Members who have made payments related to the water leak defect as

28   required by the Secret Warranty Law; (d) notifying California dealers of the facts

1  underlying the water leak defect and the terms of the secret program for repairing

2  the water leak defect and reimbursing for damage caused by the water leak defect

3  as required by the Secret Warranty Law; and (e) notifying the California New

4  Motor Vehicle Board of the secret program for repairing the water leak defect and

5  reimbursing for damage caused by the water leak defect as required by the Secret

6  Warranty Law.

7      98.    Plaintiff and Class Members also seek an order: (a) enjoining

8  Defendant from failing and refusing to make full restitution of all moneys

9  wrongfully obtained as a result of its violations of the California Secret Warranty

10  Law, and (b) disgorging to Plaintiff and Class Members all ill-gotten revenues

11  and/or profits earned as a result of Defendant's violation of the California Secret

12  Warranty Law, plus an award of attorneys' fees and costs.  This is because

13  Defendant profited from its sale of replacement parts to mechanics and dealers

14  because they ultimately replaced, repaired, corrected, or modified the defective

15  and/or replacement parts related to the water leak defect and damage caused by

16  the water leak defect.

17              **THIRD CLAIM FOR RELIEF**

18  **(Violation of UCL other than Violation of the Secret Warranty Law,**

19  **California's Unfair Business Practices Act, California Business & Professions**

20  **Code section 17200 *et seq.*)**

21      99.    Plaintiff hereby incorporates by reference the allegations contained in

22  the preceding paragraphs of this Complaint.

23      100.   Plaintiff brings this cause of action against Defendant on behalf of

24  himself and on behalf of the Members of the Class.

25      101.   California Business & Professions Code section 17200 prohibits acts

26  of "unfair competition," including any "unlawful, unfair or fraudulent business act

27  or practice" and "unfair, deceptive, untrue or misleading advertising."

28

1    102.   Defendant knew its Class Vehicles were defectively designed or

2    manufactured, would fail prematurely, and were not suitable for their intended

3    use.

4    103.   Defendant concealed and failed to disclose to Plaintiff and the Class

5    the defective nature of the Class Vehicles:

6          a.    Defendant was in a superior position to know the true state of

7             facts about the safety defects contained in the Class Vehicles;

8          b.    Defendant made partial disclosures about the quality of the

9             Class Vehicles without revealing that they were defective and

10             highly prone to water leakage and flooding; and

11          c.    Defendant actively concealed the defective nature of the Class

12             Vehicles from Plaintiff and the Class.

13    104.   In failing to disclose the water leak defect, Defendant has knowingly

14    and intentionally concealed material facts and breached its duty not to do so.

15    105.   The facts concealed or not disclosed by Defendant to Plaintiff and the

16    Class are material in that a reasonable person would have considered them to be

17    important in deciding whether to purchase or repair the Class Vehicles, or pay a

18    lesser price for them.  Had Plaintiff and the Class known about the defective

19    nature of the Class Vehicles, they would not have purchased and/or repaired the

20    Class Vehicles or would have paid less for them.

21    106.   Defendant continues to conceal the defective nature of the Class

22    Vehicles even after Class Members began to report problems.  Indeed, Defendant

23    continues to cover up and conceal the true nature of the problem until this date.

24    107.   By its conduct alleged herein, Defendant has engaged in unfair

25    competition and unlawful, unfair, and fraudulent business acts and practices.

26    108.   Defendant's unfair or deceptive acts or practices occurred repeatedly

27    in Defendant's trade or business, and were capable of deceiving a substantial

28    portion of the purchasing public.

1    109.  As a direct and proximate result of Defendant's unfair and deceptive

2    practices, Plaintiff and the Class have suffered and will continue to suffer actual

3    damages.

4    110.  Defendant has been unjustly enriched and should be required to make

5    restitution to Plaintiff and the Class pursuant to sections 17203 and 17204 of the

6    California Business & Professions Code.

7    **RELIEF REQUESTED**

8    111.  Plaintiff, on behalf of himself and all others similarly situated,

9    requests the Court enter judgment against Defendant, as follows

10    a.    An order certifying the proposed Plaintiff Class and sub-Class,

11           designating Plaintiff as the named representative of the Class

12           and designating the undersigned as Class Counsel;

13    b.    A declaration that Defendant is financially responsible for

14           notifying all Class Members of the problems with its Class

15           Vehicles and their water leak defect;

16    c.    An order requiring Defendant to comply with the Secret

17           Warranty Law by (i) notifying Class Members of the secret

18           repairing of the water leak defect, and the secret repair,

19           replacement, and reimbursement for water leak defect related

20           damage, as required by the California Secret Warranty Law;

21           (ii) providing free replacement, modification, and correction

22           related to the water leak defect to all Class Members as

23           required by the Secret Warranty Law; (iii) identifying and

24           reimbursing all Class Members who have paid for repairing the

25           water leak defect, replacement of parts related to the water leak

26           defect, and repair or replacement for damage caused as a result

27           of the water leak defect, as required by the Secret Warranty

28           Law; (iv) notifying California dealers of the facts underlying

the water leak defect problems and the terms of GM's secret

water leak defect repair and reimbursement program for the

water leak defect related damage, as required by the Secret

Warranty Law; and (iv) notifying the California New Motor

Vehicle Board of GM's secret water leak defect repair

program, and the secret repair, replacement, and

reimbursement for water leak defect related damage, as

required by the Secret Warranty Law;

d.    An order enjoining Defendant from further deceptive

distribution, sales, and lease practices with respect to its Class

Vehicles, and to repair the water leak defect and any damage

caused by the water leak defect;

e.    An award to Plaintiff and the Class of compensatory,

statutory, and punitive damages, including interest, in an

amount to be proven at trial.

f.    A declaration that Defendant must disgorge, for the benefit of

the Class, all or part of the ill-gotten profits it received from

the sale or repair of its Class Vehicles, or to make full

restitution to Plaintiff and the Class Members;

g.    An award of attorneys' fees and costs pursuant to California

Code of Civil Procedure section 1021.5, the common fund

theory, or any other applicable statute, theory, or contract;

h.    An award of pre-judgment and post-judgment interest, as

provided by law;

i.    Leave to amend the Complaint to conform to the evidence

produced at trial; and

j.    Such other or further relief as may be appropriate under the

circumstances.

**FIRST AMENDED COMPLAINT**

# DEMAND FOR JURY TRIAL

112.   Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 15, 2010

**THE LAW OFFICE OF ROBERT L. STARR**

By: _____

Robert L. Starr
Attorneys for Plaintiff

**PROOF OF SERVICE**
**CV10-2683 AHM (VBKx)**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the with action; my business address is 23277 Ventura Boulevard, Woodland Hills, California 91364

On July 15, 2010, I served the foregoing document described as set forth below on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes, addressed as follows:

Document(s) Served:    **PLAINTIFF'S FIRST AMENDED COMPLAINT**

Person(s) Served:    Gregory R. Oxford, Esq.
**ISSACS CLOUSE CROSE & OXFORD, LLP**
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Email: goxford@icclawfirm.com
Telephone: (310) 316-1990
Facsimile:  (310) 330-1330
Attorneys for Defendants General Motors, LLC

Dara Tabesh, Esq.
**EROTECH LAW GROUP, PC**
201 Spear Street, Suite 1100
San Francisco, California 94105
Email: dara.tabesh@ecotechlaw.com
Telephone:  (415) 595-9208
Facsimile:    (310) 693-9083
Co-Counsel for Plaintiff

__XX__ (BY MAIL) I deposited such envelope in the mail at Woodland Hills, California. The envelope was mailed with postage thereon fully prepaid.

____ (BY PERSONAL SERVICE) I personally delivered by hand to the offices of the addressee(s).

__XX__ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

EXECUTED at Woodland Hills, California on July 15, 2010.

Declarant Gordon Wong