GREGORY R. OXFORD (S.B. #62333)
goxford@icclawfirm.com
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone:   (310) 316-1990
Facsimile:   (310) 316-1330

Attorneys for Defendant
General Motors LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RUDOLFO FIDEL MENDOZA, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>    vs.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No. CV 10-2683 AHM (VBKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [F.R.Civ.P. 12(b)(1)] OR, ALTERNATIVELY, FOR TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK FOR REFERRAL TO THE BANKRUPTCY COURT [28 U.S.C. § 1412]**<br><br>Hearing Date:    September 27, 2010<br>Time:                    10:00 a.m.<br>Courtroom 14<br>Honorable A. Howard Matz |

Defendant General Motors LLC ("New GM") respectfully submits this memorandum in support of its motion to dismiss plaintiff's First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), F.R.Civ.P., or, in the alternative, for an order of transfer to the United States District Court for the Southern District of New York under 28 U.S.C. § 1412 for referral to the United States Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. § 157(b).

1

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**          1

**STATEMENT OF FACTS**          4

    **A.**    **Summary of Plaintiff's Allegations and Other Relevant Facts**          4

    **B.**    **Old GM Bankruptcy Proceedings**          6

    **C.**    **Plaintiff's Initial and First Amended Complaints**          9

**ARGUMENT**          10

**I.**    **THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION TO DECIDE WHETHER THIS SUIT MAY PROCEED AGAINST NEW GM**          10

    **A.**    **Standard and Scope of Review Under Rule 12(b)(1)**          10

    **B.**    **The ARMSPA and Sale Approval Order Bar Plaintiff's Claims**          11

    **C.**    **The Bankruptcy Court Has Exclusive Jurisdiction**          13

**II.**    **IF NOT DISMISSED, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK FOR REFERRAL TO THE "HOME" BANKRUPTCY COURT**          14

    **A.**    **28 U.S.C. § 1412 Governs Transfer of This "Core" Proceeding**          14

    **B.**    **This Case Should Be Transferred Under 28 U.S.C. § 1412**          16

**CONCLUSION**          17

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                          **<u>Page(s)</u>**

<u>Bank of America NT&SA v. Nickele</u>, 1998 U.S.Dist.LEXIS 5359 (E.D.Pa.1998)16

<u>Bayou Steel Co. v. Boltex Mfg. Co.</u>, 2003 U.S.Dist.LEXIS 9395 (E.D.La.2003)  16

<u>Beneficial Trust Deeds v. Franklin</u>, 802 F.2d 324 (9th Cir.1986)                        16

<u>Colarusso v. Burger King Corp.</u>, 35 B.R. 365 (Bankr.E.D.Pa.1984)                   16

<u>City of Liberal, Kansas v. Trailmobile Corp.</u>, 316 B.R. 358 (D.Kan.2004)         14

<u>DVI Financial Services, Inc. v. Cardiovascular Laboratories, Inc.</u>,
   2004 Bankr. LEXIS 353 (E.D.Pa.2004)                                                           16

<u>Hohl v. Bastian</u>, 279 B.R. 165 (W.D.Pa.2002)                                                 13,16

<u>In re Bridgestone/ Firestone, Inc. Tires Prods. Liab. Litig.</u>,
   153 F.Supp.2d 935 (S.D.Ind.2001)                                                                     4

<u>In re Eveleth Mines, LLC</u>, 312 B.R. 634 (Bankr.D.Minn.2004)             4,14, 15

<u>In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.</u>,
   2004 U.S.Dist. LEXIS 29971 (N.D.Ohio)                                                           4

<u>In re General Motors Corp.</u>, 407 B.R. 463 (Bankr.S.D.N.Y.2009)                      6

<u>In re Marcus Hook Development Park, Inc.</u>, 943 F.2d 261 (3d Cir.1991)         15

<u>In re 1606 New Hampshire Ave. Assocs.</u>, 85 B.R. 298 (Bankr.E.D.Pa.1988)        16

<u>Krystal Cadillac Oldsmobile-GMC Truck, Inc. v. GM Corp.</u>,
   232 B.R. 622 (E.D.Pa.1999)                                                                             16

<u>Luan Investment S.E. v. Franklin 145 Corp.</u>, 304 F.3d 223 (2d Cir.2002)         15

<u>Morrison v. Amway Corp.</u>, 323 F.3d 920 (11th Cir.2003)                                 10

<u>New England Power & Marine, Inc. v. Town of Tyngsborough</u>,
   292 F.3d 61 (1st Cir.2002)                                                                               15

<u>Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman</u>,
   306 B.R. 746 (S.D.N.Y.2004)                                                                          14

<u>Renaissance Cosmetics, Inc. v. Development Specialists, Inc.</u>,
   277 B.R. 5 (S.D.N.Y.2002)                                                                              14

<u>Roberts v. Carrothers</u>, 812 F.2d 1173 (9th Cir.1987)                                        11

<u>Stamm v. Rapco Foam, Inc.</u>, 21 B.R. 715 (Bankr.W.D.Pa.1982)                        16

<u>Tenet Health System Philadelphia, Inc. v. National Union of Hospital
   and Health Care Employees</u>, 265 B.R. 88 (Bankr.W.D.Pa.2001)             3,14,15

Thomason Auto Group, LLC v. China America Cooperative Automotive, Inc.,
   2009 U.S.Dist.LEXIS 22669 (D.N.J.2009)                 16

Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136 (9th Cir.2003)     10

White v. Lee, 227 F.3d 1214 (9th Cir.2000)     10

**Statutes**

**Federal**

11 U.S.C. § 363     *passim*

28 U.S.C. § 157(b)     3,15,16

28 U.S.C. § 1334(b)     15

28 U.S.C. § 1404     14

28 U.S.C. § 1409     14

28 U.S.C. § 1412     3,14,16,17

**State**

Bus. & Prof. Code § 17203     9

Civ. Code § 1770(a)(5)     9

Civ. Code § 1770(a)(7)     9

Civ. Code § 1795.90 *et seq.*     5

Civ. Code § 1795.90(d)     5,12

Civ. Code § 1795.92     5

**Other Authorities**

COLLIER ON BANKRUPTCY, ¶ 4.04[1] (15th ed.1997)     16

## **PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**

This is a purported class action involving 2005 through 2009 model year Chevrolet Equinox and 2006 through 2009 model year Pontiac Torrent vehicles manufactured by Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") and sold or leased in California. Plaintiff claims violation of three state statutes based on nondisclosure of an alleged design defect that supposedly permits water leakage into these vehicles. With Old GM in bankruptcy, this action improperly seeks to fasten liability under the three statutes on defendant General Motors LLC ("New GM") which did not manufacture or sell these vehicles.

New GM – a new entity majority owned by the United States government – purchased Old GM's business assets under an Amended and Restated Master Sale and Purchase Agreement ("ARMSPA") which the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") approved in its "Order (I) Authorizing sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief" ("Sale Approval Order"). The sale closed on July 10, 2009 ("Closing Date"). Copies of the Sale Approval Order and pertinent provisions of the voluminous ARMSPA (which is Exhibit A to the Sale Approval Order) are attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit A.

Under the ARMSPA and Sale Approval Order, New GM did not assume Old GM's liabilities, except for specific, very limited "Assumed Liabilities" set forth in ARMSPA § 2.3(a). Among the liabilities expressly excluded from the sale were the statutory liabilities asserted by plaintiff in this case which are *not* included in any of the enumerated liabilities which New GM agreed to assume. Moreover, under the Sale Approval Order, any dispute about whether or not specific liabilities were assumed is vested in the exclusive jurisdiction of the Bankruptcy Court.

1

1    The gist of plaintiff's case is nondisclosure of alleged "design flaws and/or

2    structural defects [which] cause[] [the subject vehicles] to be highly prone to water

3    leaks and flooding (the 'water leak defect')…."  First Amended Complaint

4    ("FAC"), ¶ 3.  Because plaintiff does not plead any claim for relief based on

5    alleged breach of Old GM's standard warranty of repair,[1] which is the only

6    warranty liability New GM agreed to assume, *see* ARMSPA § 2.3(a)(vii)(A), and

7    because plaintiff's nondisclosure claims are not claims for wrongful death,

8    personal injury or property damage "arising directly from accidents or incidents or

9    other distinct and discreet occurrences that happen on or after the Closing Date,"

10    the only product liabilities New GM agreed to assume, *see* ARMSPA § 2.3(a)(ix),

11    paragraphs 8, 46 and 47 of the Sale Approval Order expressly enjoin plaintiff from

12    asserting these claims against New GM.

13    In a letter dated April 23, 2010 (Exhibit B to the accompanying Request for

14    Judicial Notice), counsel for New GM advised plaintiff's counsel of (1) the

15    pertinent provisions of the Sale Approval Order which bar the assertion of

16    plaintiff's claims against New GM in this case and (2) the New York Bankruptcy

17    Court's retention of exclusive jurisdiction to protect New GM against such claims.

18    In a letter dated May 27, 2010 (Exhibit C to the Request for Judicial Notice),

19    plaintiff's counsel disputed New GM's position and asserted that New GM

20    assumed statutory liability for the alleged water leak defect by virtue of ARMSPA

21    § 2.3(a)(ix), quoted above.  But plaintiff's claims are not for death, personal injury

22    and property damage, nor were they "caused by accidents or incidents … that

23    happen[ed] on or after the Closing Date."  Thus, these claims are not "Assumed

24    Liabilities" under section 2.3(a)(ix) and plaintiff is barred from asserting these

25    claims against New GM by paragraphs 8 and 47 of the Sale Approval Order.

26    _____

[1]  Under Old GM's standard limited new vehicle warranty, the exclusive remedy

27    for breach is free-of-charge repair of defects in materials and workmanship upon
presentation of the vehicle to an authorized dealer within the warranty period.

28    Plaintiff's complaint does not assert any claim for breach of this warranty.  *See*
Request for Judicial Notice, Exhibit D.

1    Separately, plaintiff's claims are barred by paragraph 46 of the Sale

2 Approval Order which unambiguously protects New GM against "any liability for

3 any claim that … *relates to the production of vehicles prior to the Closing Date*."

4 If, as plaintiff alleges, the claimed "water leak defect" is a "design defect" that

5 existed when the Class Vehicles were manufactured – by Old GM before the

6 Closing Date – then the claimed statutory liability "relates to the production of

7 vehicles [by Old GM] prior to the Closing Date"; thus, paragraph 46 of the Sale

8 Approval Order bars plaintiff from asserting his statutory claims against New GM.

9    But beyond the parties' evident differences of opinions on these points, the

10 New York Bankruptcy Court (Hon. Robert E. Gerber) in paragraph 71 of the Sale

11 Approval Order retained "exclusive jurisdiction to enforce and implement the

12 terms of Order and to protect [New GM] against any of the Retained Liabilities

13 [*i.e.*, liabilities that New GM did not assume under the Order] or the assertion of

14 any lien, claim, encumbrance or other interest, of any kind or nature whatsoever,

15 against the Purchased Assets [*i.e.*, the assets of Old GM purchased by New GM]."

16 Thus, whether the Sale Approval Order bars this suit cannot be decided by this

17 Court; instead, because interpretation of the Sale Approval Order is a "core"

18 bankruptcy matter of which the Bankruptcy Court has retained exclusive

19 jurisdiction, that determination can only be made by Judge Gerber.  This Court

20 therefore should dismiss this action for lack of subject matter jurisdiction, without

21 prejudice to plaintiff's opportunity to re-file the action as an adversary proceeding

22 in the United States Bankruptcy Court for the Southern District of New York.

23    As an alternative to outright dismissal, the action should be transferred to the

24 United States District Court for the Southern District of New York under 28 U.S.C.

25 § 1412 for referral to the Bankruptcy Court under 28 U.S.C. § 157(b) because

26 plaintiff's violation of the Sale Approval Order is obviously a "core" bankruptcy

27 matter, involving as it does the interpretation and enforcement of the single most

28 important order in the Old GM bankruptcy case.  *See*, *e.g.*, <u>Tenet Health System</u>

Philadelphia, Inc. v. National Union of Hospital and Health Care Employees, 265
B.R. 88, 95-96 (Bankr.W.D.Pa.2001) (interpretation of an order pursuant to section
363 of the Bankruptcy Code is a "core" bankruptcy matter); In re Eveleth Mines,
LLC, 312 B.R. 634, 644-45 & n.14 (Bankr.D.Minn.2004) (same).

## STATEMENT OF FACTS

### A.    Summary of Plaintiff's Allegations and Other Relevant Facts

Plaintiff purchased a used 2006 model year Chevrolet Equinox LS in
January 2009.  FAC, ¶ 22.  This vehicle was manufactured and sold by Old GM
years ago, before New GM came into existence.  Sale Approval Order [RJN, Exh.
A], p. 8, Recital R; Tomasek Declaration (Oxford Decl., Exhibit 1), ¶ 2.[2]

In December 2009, plaintiff's daughter noticed a "pungent odor" and later
discovered that several of the seats of the Equinox were wet.  FAC, ¶ 23.  She took
the vehicle to several GM dealerships, but apparently did not receive any repairs.
Id., ¶¶ 24-28.

Plaintiff alleges that the water leaks are a safety issue "because of the danger
of catastrophic engine and/or electrical system failure," potential failure of tail
lights, and because excess moisture may promote mold growth and resulting health
maladies.  FAC, ¶¶ 4-9.  While plaintiff elsewhere alleges that consumers have
complained about the alleged "water leak defect" to the National Highway &
Traffic Safety Administration, see id., ¶ 41, that agency apparently has not taken
any action in response to these complaints.[3]

---

[2]  As for other model year 2005-09 Equinox and 2006-09 model year Torrent
vehicles purchased or leased by members of the purported class, the Tomasek
Declaration establishes that none of these vehicles were manufactured by New
GM, but instead were manufactured by or for Old GM prior to July 10, 2009.

[3]  To the extent that this action seeks an injunction requiring the recall of the subject
vehicles to remedy an alleged safety defect, see Complaint, ¶¶ 97, 111b-111d, it is
pre-empted pro tanto by the National Traffic and Motor Vehicle Safety Act which
invests the National Highway Traffic Safety Administration with exclusive
jurisdiction to order owner safety notifications and recall campaigns.  See In re
Bridgestone/ Firestone, Inc. Tires Prods. Liab. Litig., 153 F.Supp.2d 935, 945
(S.D.Ind. 2001); In re Ford Motor Co. Crown Victoria Police Interceptor Prods.
Liab. Litig., 2004 U.S.Dist. LEXIS 29971 at *18 (N.D.Ohio).

According to plaintiff, Old GM in 2008 published a "secret" Technical Service Bulletin or "TSB" (not attached to the complaint) which instructed dealers to reseal "various structural components of the Class Vehicles that are defective, in part, because of insufficient, inadequate, or improperly applied body sealer."  FAC, ¶ 11.  Although "water leaks are not normally included in [Old GM's standard] warranty coverage," *id.*, ¶ 60 *and see id.*, ¶ 57, this TSB "nevertheless instructed … dealers to perform the resealing and/or replacement program at no cost to the consumer."  *Id.*, ¶ 14.  Supposedly, this "clandestine" program of providing free-of-charge re-sealing "was strictly limited to the most persistent customers and only those who complained loudly enough."  *Id.*, ¶ 15.  Plaintiff, however, affirmatively alleges that the re-sealing procedure "does not fix the water leak defect."  *Id.*, ¶ 17.  He nonetheless asserts that the TSB authorizing the re-sealing procedure is an "adjustment program" under California's Motor Vehicle Warranty Adjustment Programs Law, Civ. Code § 1795.90 *et seq*. ("MVWAP") and that Old GM *and, supposedly, New GM* were required to, and did not, comply with MVWAP's notification and reimbursement requirements set forth in Civ. Code § 1795.92.[4]

Plaintiff's allegations "on information and belief" concerning the supposedly "secret" Technical Service Bulletin are demonstrably incorrect.  Specifically, the allegation in paragraph 56 of the First Amended Complaint that the "free water leak defect repairs [are] outlined in Defendant's secret TSB" is a complete mischaracterization.  In actual fact, Old GM prior to the Closing Date had issued

---

[4]  Under Civ. Code § 1795.90(d), a manufacturer like Old GM that extends or enlarges its new vehicle warranty to cover a condition that "may substantially affect vehicle durability, reliability or performance" is deemed to create an "adjustment program."  Civ. Code § 1795.92 imposes various notification obligations on a manufacturer that creates an "adjustment program" and requires it to reimburse customers who, prior to learning of the "adjustment program," incurs expense to repair the condition in question.  Here, if any adjustment program was created, which New GM disputes, it was created by Old GM when it issued the TSB in 2008.  *See* Complaint, ¶ 54 ("In 2008, Defendant issued a TSB [which] describe[d] the numerous water leak defects suffered by the Class Vehicles…, the numerous possible causes of those water leak defects…, [and] the various temporary fixes for the water leak defects….").

three Technical Service Bulletins explaining how to diagnose and correct water

leakage in the Equinox and Torrent.  Copies of these TSBs are attached to the

accompanying Oxford Declaration as Exhibits 2, 3 and 4.  As the Court will see,

***none of these TSBs provides for "free" repairs or, indeed, says anything at all***

***about payment for the repairs or whether or not they are covered under Old***

***GM's standard repair warranty***.  They merely explain potential causes for water

leakage and explain how to remedy the problem.  In reality, manufacturers

necessarily issue service bulletins (although different manufacturers may refer to

them by different names) routinely to explain how to fix any condition dealers may

be required to fix, regardless of whether a manufacturer or customer is paying for

it.  Moreover, none of these TSBs is "secret."  To the contrary, googling "Equinox

water leak" leads directly to them.  *See*, *e.g.*, http://ww2.justanswer.com/uploads/

Bluegorilla/2008-10-26_023513_Equinox_water_leak.pdf (Bulletin 08-08-57-

001A, October 8, 2008, later updated).  It appears, therefore, that plaintiff's

MVWAP claim, pleaded on information and belief, is a complete fantasy.

### B.   Old GM Bankruptcy Proceedings

On July 10, 2009, pursuant to Judge Gerber's approval of the ARMSPA,

New GM purchased Old GM's business assets "free and clear" of Old GM's

liabilities (with very limited exceptions) under section 363 of the Bankruptcy

Code.  *See In re General Motors Corp.*, 407 B.R. 463 (Bankr.S.D.N.Y.2009).

New GM did not assume Old GM's liabilities except for the specific types of

liabilities which are enumerated in ARMSPA § 2.3.  These included liabilities

under Old GM's limited new vehicle warranties, *see* ARMSPA § 2.3(a)(vii)(A)

and Sale Approval Order ¶ 56, and product liabilities for personal injury and

property damage "which arise directly out of accidents, incidents or other distinct

and discrete occurrences that happen on or after the Closing Date and arise  from

such motor vehicles' operation or performance…," *see* ARMSPA § 2.3(a)(ix).

The First Amended Complaint does not allege any claim for breach of warranty, so

ARMSPA § 2.3(a)(vii)(A) is simply inapplicable. Although the parties differ as to the applicability of ARMSPA § 2.3(a)(ix), it is clear that if it does not apply plaintiff's claims are not "Assumed Liabilities" under the ARMSPA.

Moreover, the ARMSPA is explicit in excluding from the responsibilities of New GM "all Liabilities arising out of, related to or in connection with any (A) implied warranty *or other implied obligation arising under statutory* or common *law* without the necessity of an express warranty or (b) allegation, statement or wiring by or attributable to Sellers. ARMSPA § 2.3(b)(xvi) (emphasis added). Thus, it could not be clearer that New GM assumed the obligation to honor only Old GM's express warranties of repair and post-petition claims for personal injury and property damage associated with pre-petition vehicles, and declined to assume responsibility for all other kinds of product claims, including Old GM's statutory liabilities of the types asserted in this case.

Indeed, a central purpose of the Sale Approval Order and the ARMSPA which it approved was to cut off successor and derivative liability claims against New GM based on Old GM's acts or omissions so that New GM would agree to benefit the bankruptcy estate by paying substantial consideration for Old GM's assets. To accomplish this goal, the Sale Approval Order expressly and permanently enjoins plaintiff and all other claimants from attempting to enforce liabilities against New GM *other than Assumed Liabilities*, as follows:

"[A]ll persons and entities … holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, *matured or unmatured*, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing … are forever barred, estopped,

and permanently enjoined … from asserting against [New GM] … such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability."

Sale Approval Order, ¶ 8 (emphasis added).

Claims based upon Old GM's alleged statutory violations, whether "matured or unmatured" on the Closing Date, are obviously included within the broad sweep of this provision.  Paragraph 9 reinforces the bar of paragraph 8 by stating that "[t]his Order (a) shall be effective as a determination that, as of the Closing (i) no claims other than Assumed Liabilities, will be assertable against [New GM]…."

Even more specifically, paragraph 46 of the Sale Approval Order provides as follows (emphasis added):

"Except for the Assumed Liabilities expressly set forth in the [ARMSPA] … [New GM] … shall [not] have any liability for any claim that arose prior to the Closing Date*, relates to the production of vehicles prior to the Closing Date*, or otherwise is assertable against [Old GM] … prior to the Closing Date…. **Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of** successor or transferee liability, de facto merger or continuity … and *products … liability*, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated."

Plaintiff's claims here clearly "relate to the production of vehicles prior to the Closing Date" and equally clearly represent an improper attempt to fasten "successor, transferee, derivative or vicarious liabilities" on New GM "under a[] theory of … products … liability."  *See also* Sale Approval Order, ¶ 47 ("Effective upon the Closing …all persons and entities *are forever prohibited and enjoined from commencing or continuing in any manner any action … against [New GM]*

1  …*with respect to any (i) claim against [Old GM] other than Assumed Liabilities*)

2  (emphasis added).

3      Thus, it could not be clearer that any claim against Old GM based on the

4  Class Vehicles, actual or threatened, known or unknown, matured or unmatured,

5  contingent or otherwise, cannot be asserted against New GM unless it fits within

6  one of the categories of "Assumed Liabilities" set forth in ARMSPA § 2.3(a).  As

7  explained below, plaintiff's claims simply do not fall within the limited definition

8  of "Assumed Liabilities."

9      **C.    <u>Plaintiff's Initial and First Amended Complaints</u>**

10     Plaintiff's initial complaint contained four purported claims for relief, only

11  three of which survive in his First Amended Complaint, which he agreed to file

12  after the required LR 7-15 conference of counsel in response to GM's announced

13  intent to move to dismiss the initial complaint or for transfer of the action.

14     Plaintiff's first claim for relief asserted a violation of the California

15  Consumers' Legal Remedies Act ("CLRA"), specifically Civ. Code §§ 1770(a)(5)

16  & (7), based on Old GM's failure to disclose the alleged "water leak defect";

17  plaintiff asserted that Old GM by not making this disclosure "represented that its

18  Class Vehicles had characteristics and benefits that they do not have, and

19  represented that its Class Vehicles were of a particular standard, quality or grade

20  when they were of another."  Plaintiffs *did not* allege that Old GM (or New GM for

21  that matter) made any affirmative representation in this regard.

22     Plaintiff's second claim for relief under the California Unfair Competition

23  Law ("UCL") fancifully sought an injunction (Bus. & Prof. Code § 17203) on the

24  ground that Old GM's 2008 TSB was an "adjustment program" under MVWAP as

25  to which required statutory notices and reimbursements had not been provided.

26     Plaintiff's third claim for relief sought restitution under the UCL based on

27  Old GM's non-disclosure of the alleged defect.

28

In an effort to avoid the Sale Approval Order's explicit bans on asserting Old GM liabilities against New GM other than those which New GM agreed to assume in ARMSPA § 2.3, plaintiff in his amended complaint dropped claims for "out-of-pocket water leak defect related expenses that were incurred prior to July 2009," *see* FAC, ¶ 72(1), and also dropped a fourth claim for relief for alleged breach of implied warranty.[5]  As explained in Part I-B below, however, the Sale Approval Order bars plaintiff's claims in their entirety, including claims for reimbursement of expenses incurred after the Closing Date, because, among other things, the alleged design defect clearly i) "relates to the production of vehicles prior to the Closing Date" [Sale Approval Order, ¶ 46] and also ii) "aris[es] under statutory or common law without the necessity of an express warranty" [ARMSPA § 2.3(b)(xvi)(B)], plaintiff's entire pleading is nothing more than an attempt to fasten successor liability on New GM in violation of the Sale Approval Order.

## **ARGUMENT**

## I.  **THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION TO DECIDE WHETHER THIS SUIT MAY PROCEED AGAINST NEW GM**

### A.  **Standard and Scope of Review Under Rule 12(b)(1)**

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may be either "facial" or, as here, "factual" in nature.  As a result, the Court need not (indeed, cannot) assume the truth of plaintiff's factual allegations, but instead must determine based on the evidence presented whether the factual predicates for exercising jurisdiction exist.  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.2003), *citing* White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  As explained in Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir.2003) (emphasis added):

---

[5]  Section 2.3(b)(xvi) and Paragraph 56 of the Sale Approval Order expressly provide that claims for breach of implied warranty are *not* Assumed Liabilities under the ARMSPA.

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come
in two forms, 'facial' and 'factual' attacks.  Facial attacks challenge
subject matter jurisdiction based on the allegations in the complaint, and
the district court takes the allegations as true in deciding whether to grant
the motion.  *Factual attacks challenge subject matter jurisdiction in fact,
irrespective of the pleadings.  In resolving a factual attack, the district
court may consider extrinsic evidence such as testimony and affidavits*."
Where, as here, a factual attack on jurisdiction "is *separable from the merits* of a
case … the district court is: 'free to hear evidence regarding jurisdiction and to rule
on that issue prior to trial, resolving factual disputes where necessary.  In such
circumstances, "no presumptive truthfulness attaches to plaintiff's allegations, and
the existence of disputed material facts will not preclude the trial court from
evaluating for itself the merits of jurisdictional claims." ' "  Roberts v. Carrothers,
812 F.2d 1173, 1177 (9th Cir.1987) (emphasis added; citations omitted).

New GM's attack on jurisdiction is "factual" because it is based not only on
plaintiff's allegations but on extrinsic evidence concerning the ARMSPA and Sale
Approval Order entered in Old GM's bankruptcy case and the fact that the vehicles
involved in the case were manufactured by Old GM, not New GM.

### B.    The ARMSPA and Sale Approval Order Bar Plaintiff's Claims

Because New GM did not manufacture the subject vehicles, and it therefore
has no warranty, product or other liability of its own for them, plaintiff's statutory
claims against New GM are barred by the Sale Approval Order unless they fall
within the definition of Assumed Liabilities in ARMSPA § 2.3(a).  Acknowledging
as much, plaintiff's counsel's May 27, 2010 letter relied on ARMSPA § 2.3(a)(ix),
which says that Assumed Liabilities include:

"(ix) all liabilities to third parties for death, personal injury, of other
injury to Persons or damage to property caused by motor vehicles …
manufactured, sold or delivered by [Old GM] (collectively, "Product

11

1    Liabilities"), which arise directly out of death, personal injury or other

2    injury to Persons or damage to property caused by accidents or incidents

3    first occurring on or after the Closing Date and arising from such motor

4    vehicles' operation or performance…."

5    Thus, to be an Assumed Liability under section 2.3(a)(ix), a claim must (1) be for

6    death, personal injury or property damage and (2) arise directly from accidents or

7    incidents occurring *on or after* the Closing Date.

8    Plaintiff's first claim for relief under the CLRA clearly is *not* a claim for

9    "death, injury to Persons or damage to property" as provided in section 2.3(a)(ix).

10    Instead, it is a claim for *non-disclosure* of an alleged defect causing *economic loss*.

11    *See* FAC, ¶ 88 ("Had Plaintiff and the Class known the defective nature of the

12    Class vehicles, *they would not have purchased or repaired the Class Vehicles, or*

13    *they would have paid less to repair or purchase it*" [sic]) (emphasis added).

14    Plaintiff's CLRA claim also is not a claim "aris[ing] directly out of accidents,

15    incidents or other distinct or discrete occurrences *that happen[ed] on or after the*

16    *Closing Date*," as further provided in section 2.3(a)(ix).  Instead, the CLRA claim

17    on plaintiff's theory arose *before the Closing date* when Old GM manufactured

18    and marketed the vehicles with the alleged "water leak defect."  Complaint, ¶¶ 2-3

19    (Old GM "designed, manufactured, distributed, sold, and leased [the Class

20    Vehicles]" despite knowing "in 2005, if not before" of the alleged defect).

21    Plaintiff's attempt to fasten liability on New GM based on Old GM's

22    nondisclosure of the alleged defect is an attempt to create precisely the type of

23    successor or derivative liability that is antithetical to section 363 of the Bankruptcy

24    Code and which the ARMSPA and Sale Approval Order expressly bar.

25    Plaintiff's second claim for relief under MVWAP is based on a Technical

26    Service Bulletin first issued in 2008.  *See* FAC, ¶ 54.  Plaintiff claims that this TSB

27    was an "adjustment program" under Civ. Code § 1795.90(d) when issued and,

28    therefore, Old GM was obligated beginning in 2008 to provide specified notices

1 and monetary reimbursement to customers.  Thus, because this claim, too, arose

2 prior to the Closing Date, it does not meet the section 2.3(a)(ix) definition of

3 "Assumed Liabilities" which must arise out of events *after* the Closing Date.  This

4 claim also is not a claim for death, personal injury or property damage, but instead,

5 like the first claim for relief, it is a claim for economic loss which does not satisfy

6 either prong of the "Assumed Liabilities" definition in ARMSPA § 2.3(a)(ix).

7 And, as noted above, inspection of the actual TSBs issued by Old GM prior to the

8 Closing Date demonstrates that they *did not* offer "free" repair of water leakage.

9 All of the same points apply to plaintiff's third claim for relief which asks

10 for restitution – *i.e.*, compensation for an *economic loss* – under the UCL based on

11 nondisclosure of the alleged defect before the Closing Date.  *See* FAC, ¶¶ 109-10.

12 ## C.    The Bankruptcy Court Has Exclusive Jurisdiction

13 The New York Bankruptcy Court has retained "***exclusive jurisdiction** to

14 enforce and implement the terms and provisions of [the Sale Approval] Order

15 [and] the [ARMSPA]…, in all respects, including, but not limited to, retaining

16 jurisdiction to … (c) resolve any disputes arising under or related to the

17 [ARMSPA], except as otherwise provided therein, (d) interpret, implement, and

18 enforce the provisions of this Order [and] (e) ***protect [New GM] against any of the***

19 ***[liabilities that it did not expressly assume under the ARMSPA***].…"  Sale

20 Approval Order., ¶ 71 (emphasis added).

21 Whether this action may proceed against New GM based on the claims

22 plaintiff has attempted to plead in the First Amended Complaint therefore is a

23 question which only the New York Bankruptcy Court has jurisdiction to decide.

24 Its retention of jurisdiction aligns perfectly with the general rule presuming that the

25 "home" Bankruptcy Court is the proper forum for civil proceedings "arising under"

26 or "arising in cases under" title 11, so-called "core" bankruptcy matters.  Hohl v.

27 Bastian, 279 B.R. 165, 177 (W.D.Pa.2002) ("[T]he home court presumption

28 provides that the court in which the bankruptcy case itself is pending is the proper

1  venue for adjudicating all related litigation, including those suits which have been

2  filed in other state or federal courts").

3  Proceedings such as this which require interpretation of a Bankruptcy Court

4  order in connection with a sale "free and clear" under section 363 indisputably are

5  "core" proceedings.  Tenet Health System Philadelphia, Inc. v. National Union of

6  Hospital and Health Care Employees, 265 B.R. 88, 95-96 (Bankr.W.D.Pa.2001); In

7  re Eveleth Mines, LLC, 312 B.R. 634, 644-45 & n.14 (Bankr.D.Minn.2004).

8  **II. IF NOT DISMISSED, THIS ACTION SHOULD BE TRANSFERRED TO**

9  **THE SOUTHERN DISTRICT OF NEW YORK FOR REFERRAL TO**

10  **THE "HOME" BANKRUPTCY COURT**

11  **A.    28 U.S.C. § 1412 Governs Transfer of This "Core" Proceeding**

12  While the authorities divide on whether section 1412 or 28 U.S.C. § 1404

13  governs venue transfer motions in proceedings "related to" bankruptcy cases, *see*

14  City of Liberal, Kansas v. Trailmobile Corp., 316 B.R. 358, 361-62 (D.Kan.2004),[6]

15  there is no doubt that section 1412 governs transfer of "core" proceedings which

16  "arise under" title 11 or "arise in" bankruptcy cases.  *See* Official Committee of

17  Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y.

18  2004); Renaissance Cosmetics, Inc. v. Development Specialists, Inc., 277 B.R. 5,

19  18 (S.D.N.Y.2002).

20  Because Judge Gerber had core jurisdiction to enter the Sale Approval Order

21  pursuant to section 363 of the Bankruptcy Code and to enforce its provisions, the

22  prosecution of this action in violation of the Sale Approval Order is also a core

23  proceeding and core jurisdiction therefore exists under 28 U.S.C. §§ 157(b) and

24  1334(b).  As stated in In re Eveleth Mines, LLC, 312 B.R. at 644-45:

25  

_____

26  [6]  The only difference between the two statutes lies in section 1404's requirement that venue would have been proper in the transferee district if the case originally had been filed there.  *See id.* at 362.  Here it would make no difference if section

27  1404 governed because 28 U.S.C. § 1409 provides that venue is proper in the district in which the bankruptcy case is pending, here the Southern District of New

28  York.  *Id.*

1             "[T]he motion at bar directly and necessarily comes out of a core

2             proceeding in this case, the Debtor's motion for authority to conduct a sale

3             of assets of the estate free and clear of liens [pursuant to 11 U.S.C. § 363].

4             Core proceedings under 28 U.S.C. § 157(b) fall under the 'arising under'

5             or 'arising in' jurisdiction of 28 U.S.C. § 1334(b). Then, [proceedings

6             for] 'the enforcement of orders resulting from core proceedings are

7             themselves considered core proceedings.'" (Citations omitted.)

8 As the Eveleth Mines Court went on to explain:

9             "As applied to a sale free and clear of liens, there are also good

10             policy reasons for making a derivative core-proceeding classification….

11             Active bidding on assets from bankruptcy estates will be promoted if

12             prospective purchasers have the assurance that they may go back to the

13             original forum that authorized the sale, for a construction or clarification

14             of the terms of the sale that it approved. Relegating post-sale disputes to a

15             different forum injects an uncertainty into the sale process, which would

16             dampen interest and hinder the maximization of value. A purchaser that

17             relies on the terms of a bankruptcy court's order, and whose title and rights

18             are given life by that order, should have a forum in the issuing court."

19 312 B.R. at 645 n.14; *accord* Tenet Health System Philadelphia, Inc. v. National

20 Union of Hospital and Health Care Employees, 265 B.R. at 95-96 ("a bankruptcy

21 court has core subject matter jurisdiction to construe its own orders" which involve

22 "sales of assets within the bankruptcy court pursuant to 11 U.S.C. § 363"); Luan

23 Investment S.E. v. Franklin 145 Corp., 304 F.3d 223, 229-30 (2d Cir.2002)

24 (disputes concerning Bankruptcy Court's sale order fall within "core" jurisdiction);

25 In re Marcus Hook Development Park, Inc., 943 F.2d 261 (3d Cir.1991) (to the

26 same effect); New England Power & Marine, Inc. v. Town of Tyngsborough, 292

27 F.3d 61, 68 (1st Cir. 2002) (the "underlying dispute here involves a subsequent

28 purchaser's interpretation of a sale order 'free and clear of liens' under 11 U.S.C.

1  § 363(b), an order that can only be issued by a bankruptcy court, and so it is one

2  that arises in a case under title 11 or perhaps arises under title 11"); <u>Beneficial</u>

3  <u>Trust Deeds v. Franklin</u>, 802 F.2d 324, 326 (9th Cir.1986) ("Requests for

4  bankruptcy courts to construe their own orders must be considered to arise under

5  title 11 "core" jurisdiction] if the policies underlying the Code are to be effectively

6  implemented").

### B.    This Case Should Be Transferred Under 28 U.S.C. § 1412

8    In general, 28 U.S.C. § 1412 permits a district court to "transfer a case or

9  proceeding under title 11 to a district court for another district, in the interests of

10  justice and for the convenience of the parties."  While application of this standard

11  depends on the facts of each case, "a presumption exists that civil proceedings

12  should be tried in the 'home' court, namely the court where the bankruptcy case

13  itself is pending." <u>DVI Financial Services, Inc. v. Cardiovascular Laboratories,</u>

14  <u>Inc.</u>, 2004 Bankr. LEXIS 353 at *10 (E.D.Pa.2004); *accord* <u>Bayou Steel Co. v.</u>

15  <u>Boltex Mfg. Co.</u>, 2003 U.S. Dist. LEXIS 9395 at *4 (E.D.La.2003) ("There is a

16  strong presumption in favor of placing venue in the district where the bankruptcy

17  proceedings are pending"); <u>Thomason Auto Group, LLC v. China America</u>

18  <u>Cooperative Automotive, Inc.</u>, 2009 U.S.Dist. LEXIS 22669 at *12-13 (D.N.J.

19  2009); <u>Krystal Cadillac Oldsmobile-GMC Truck, Inc. v. GM Corp.</u>, 232 B.R. 622,

20  627 (E.D.Pa.1999); <u>Bank of America NT&SA v. Nickele</u>, 1998 U.S.Dist.LEXIS

21  5359 at *15 (E.D.Pa.1998); <u>In re 1606 New Hampshire Ave. Assocs.</u>, 85 B.R. 298,

22  305 (Bankr.E.D.Pa.1988); <u>Colarusso v. Burger King Corp.</u>, 35 B.R. 365, 368

23  (Bankr.E.D.Pa.1984); <u>Stamm v. Rapco Foam, Inc.</u>, 21 B.R. 715, 724-25 (Bankr.

24  W.D.Pa.1982); COLLIER ON BANKRUPTCY ¶ 4.04[1] (15th ed.1997).  "In sum,

25  the home court presumption provides that the court in which the bankruptcy case

26  itself is pending is the proper venue for adjudicating all related litigation, including

27  those suits which have been filed in other state or federal courts." <u>Hohl v. Bastian</u>,

28  279 B.R. at 177-78.

1    The New York Bankruptcy Court's retention of "exclusive jurisdiction" to

2    decide all issues regarding interpretation and enforcement of the Sale Approval

3    Opinion and ARMSPA and "to protect [New GM]" against any attempts to saddle

4    it with Old GM liabilities which it did not assume under the ARMSPA make the

5    "home" court presumption all but conclusive here.  Thus, this Court should grant

6    the requested transfer to the United States District Court for the Southern District

7    of New York under section 1412 for referral to the "home" Bankruptcy Court.

8    <u>**CONCLUSION**</u>

9    For all the reasons stated, defendant General Motors LLC respectfully urges

10   that this Court grant its motion to dismiss this action for lack of subject matter

11   jurisdiction or, in the alternative, transfer the action pursuant to 28 U.S.C. § 1412

12   to the United States District Court for the Southern District of New York for

13   referral to the New York Bankruptcy Court pursuant to 28 U.S.C. § 157(b).

14   Dated:  August 13, 2010                    GREGORY R. OXFORD

15                                              ISAACS CLOUSE CROSE & OXFORD LLP

16                                              By: *[s]*_____

17                                                   Gregory R. Oxford
                                                Attorneys for Defendant
18                                              General Motors LLC

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28