1  GREGORY R. OXFORD (S.B. #62333)
   goxford@icclawfirm.com
2  ISAACS CLOUSE CROSE & OXFORD LLP
   21515 Hawthorne Boulevard, Suite 950
3  Torrance, California 90503
   Telephone:   (310) 316-1990
4  Facsimile:   (310) 316-1330

5  Attorneys for Defendant
   General Motors LLC

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11

12  RUDOLFO FIDEL MENDOZA,              Case No. CV 10-2683 AHM (VBKx)
    individually and on behalf of a class of
13  similarly situated individuals,     **NEW GM'S REPLY IN SUPPORT
                                         OF MOTION TO DISMISS FOR
14              Plaintiff,               LACK OF SUBJECT MATTER
                                         JURISDICTION [F.R.Civ.P.
15        vs.                            12(b)(1)] OR, ALTERNATIVELY,
                                         TRANSFER TO THE SOUTHERN
16  GENERAL MOTORS LLC,                  DISTRICT OF NEW YORK FOR
                                         REFERRAL TO THE
17              Defendant.               BANKRUPTCY COURT [28 U.S.C.
                                         § 1412]**

18
                                         Hearing Date:    October 25, 2010
19                                       Time:            10:00 a.m.
                                         Courtroom 14
20                                       Honorable A. Howard Matz

21

22        Defendant General Motors LLC ("New GM") respectfully submits this

23  memorandum in reply to plaintiff's opposition to ("Opposition" or "Opp."), and in

24  further support of, New GM's Rule 12(b)(1) motion to dismiss for lack of subject

25  matter jurisdiction or, alternatively, for motion for transfer to the Southern District

26  of New York under 28 U.S.C. § 1412 for referral to the Bankruptcy Court that is

27  handling the bankruptcy case of General Motors Corporation n/k/a Motors

28  Liquidation Company ("Old GM") under 28 U.S.C. § 157(b) ("Motion").

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT**                                                  **1**

**ARGUMENT**                                                                4

I.    NEW GM IS ONLY LIABLE FOR "ASSUMED LIABILTIES"          4

II.   PLAINTIFF'S CLAIMS ARE NOT FOR "ASSUMED LIABILTIES"  6

    A.    Plaintiff's Claims Are Not for Assumed "Product Liabilities"  6

        1.    *Plaintiff Is Suing for Non-Disclosure, Not Property Damage* 7

        2.    *Plaintiff's Claims Did Not Arise After the Closing Date*  8

    B.    Plaintiff's Claims Are Not for Assumed Warranty Liabilities  9

    C.    New GM Did Not Assume Any Other Relevant Liabilities  11

        1.    *CLRA and UCL Claims*  11

        2.    *MVWAP Claims*  13

III.  THE BANKRUPTCY COURT HAS "CORE" JURISDICTION  16

IV.   THE ALTERNATIVE TRANSFER MOTION IS MERITORIUS  17

**CONCLUSION**  17

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

Boyer v. Gildea, 2005 U.S.Dist.LEXIS 4134 (N.D.Ind.2005)                          4

In re Eveleth Mines, LLC, 312 B.R. 634 (Bankr.D.Minn.2004)                        3

Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail),
   304 F.3d 223 (2d Cir.2002)                                                    16

Met-L-Wood Corp. v. Getkas, 861 F.2d 1012 (7th Cir.1988)                          4

Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers),
   419 F.3d 93 (2d Cir.2005)                                                     16

**Statutes**

**Federal**

11 U.S.C. § 363                                                              *passim*

28 U.S.C. § 157(b)                                                               17

28 U.S.C. § 1412                                                                 17

49 U.S.C. § 30101 *et seq.*                                                      15

49 U.S.C. § 30111                                                                15

49 U.S.C. § 30112                                                                15

49 U.S.C. § 30115                                                                15

49 U.S.C. § 30118                                                                15

49 U.S.C. § 30119                                                                15

49 U.S.C. § 30120                                                                15

49 U.S.C. § 30163                                                                15

Section 747, Consolidated Appropriations Act 2010, Pub. Law 111-117,
   23 Stat. 3034 (2009)                                                           3

**State**

Bus. & Prof. Code § 17200 *et seq.*                                               6

Civ. Code § 1750 *et seq.*                                                        6

Civ. Code § 1795.90(d)                                                           14

Civ. Code § 1795.92                                                              14

# PRELIMINARY STATEMENT

From its very first paragraph, plaintiff's Opposition reads almost like a response to the Rule 12(b)(6) motion that New GM did not file. The point of the Rule 12(b)(1) motion which New GM did file is *not* that this Court should dismiss plaintiff's case because he cannot state a cause of action, but that the issues here presented must instead be submitted to the United States Bankruptcy Court for the Southern District of New York which in a final and binding order (with full res judicata effect) has retained "exclusive jurisdiction" to protect New GM from having to litigate claims which, if proven, would be the responsibility of Old GM.

In July 2009, New GM purchased the assets of Old GM under an Amended and Restated Master Sale and Purchase Agreement ("ARMSPA"), but it did not assume Old GM's liabilities, except for the "Assumed Liabilities" specifically listed in ARMSPA § 2.3(a). Thus, as plaintiff recognizes, *see* Opp., p. 5, the inescapable threshold question in this case is whether the state statutory liabilities he is alleging, if they could be proven, would belong to Old GM or New GM.

The answer to that question requires application and, possibly, interpretation of the terms of the ARMSPA and of the Sale Approval Order in which the Honorable Robert E. Gerber, United States Bankruptcy Judge, (1) approved the ARMSPA under section 363 of the Bankruptcy Code and (2) retained exclusive jurisdiction to implement, enforce and resolve any disputes concerning the ARMSPA and/or the Sale Approval Order.

Accordingly, New GM has moved to dismiss plaintiff's First Amended Complaint *for lack of jurisdiction* or, in the alternative, for transfer to the Southern District of New York and referral to the Bankruptcy Court. Thus, contrary to plaintiff's statement in the first paragraph of his Opposition, New GM is *not* asking this Court "to interpret the provisions [of the ARMSPA] *and dismiss [the] First Amended Complaint … because … Plaintiff's claims are not the 'Assumed Liabilities' of new GM*." Opp., p. 1 (emphasis added). Instead, New GM is asking

1    this Court affirmatively *not* to interpret these documents except insofar as is

2    necessary to discern that the Bankruptcy Court has exclusive jurisdiction to do so.

3    That is why New GM did not move in this Court for dismissal under Rule 12(b)(6).

4        Thus, far from "forum shopping" as alleged by plaintiff, New GM is asking

5    this Court to do nothing more than honor the Bankruptcy Court's retention of

6    jurisdiction over an issue – what did New GM buy from Old GM in the section 363

7    transaction and subject to what liabilities? – which falls squarely within the

8    Bankruptcy Court's "core" jurisdiction under the Bankruptcy Code.

9        The ARMSPA and Sale Approval Order embody the single most important

10   transaction in Old GM's bankruptcy case.  Allowing other courts to interpret these

11   documents and potentially modify the section 363 transaction after-the-fact by

12   imposing liabilities on New GM that it did not agree to assume not only would

13   flout the Bankruptcy Court's retention of exclusive jurisdiction, but also would

14   open the door to end-runs of that jurisdiction that could lead to conflicting

15   adjudications by state and federal courts concerning the assets and liabilities that

16   were transferred to New GM under the ARMSPA.

17       Such piecemeal rulings would undermine and threaten the integrity of the

18   bankruptcy process by enabling non-bankruptcy courts to give claimants like

19   plaintiff (and thousands of alleged class members) preferential treatment at the

20   expense of a section 363 purchaser (New GM) which bargained specifically

21   concerning the Old GM liabilities that it would and would not agree to assume

22   pursuant to a detailed written sale and purchase agreement defining its continuing

23   obligations.  The Bankruptcy Court which approved that agreement is obviously in

24   the best position to determine what types of liabilities Old GM did or did not pass

25   on to New GM.

26       And, in fact, in an order issued just last week, Judge Gerber held that he had

27   exclusive jurisdiction over issues concerning another aspect of the 363 transaction:

28   Deferred Termination or "Wind-Down" Agreements under which certain GM

1    dealers agreed, in exchange for monetary and other consideration, to terminate

2    their GM Dealer Sales and Service Agreements no later than October 31, 2010 as

3    an alternative to outright rejection of those executory contracts under section 365

4    of the Bankruptcy Code.  In several respects, that ruling is instructive.

5         The plaintiff dealership in that case, a California motor vehicle dealer named

6    Rally Auto Group, Inc. ("Rally"), sought reinstatement of four GM Dealer

7    Agreements through binding arbitration under Section 747, Consolidated

8    Appropriations Act 2010, Pub. Law 111-117, 23 Stat. 3034 (2009).  The arbitrator

9    concluded that Rally was entitled to reinstatement of only its Buick, Cadillac and

10   GMC franchises.  Rally then sued to vacate or modify the award, and thereby

11   avoid its obligation to terminate its Chevrolet Dealer Agreement pursuant to the

12   terms of the Bankruptcy Court approved Wind-Down Agreement.  Rally Auto

13   Group, Inc. v. General Motors LLC, United States District Court for the Central

14   District of California, Southern Division, No. SACV 10-01236 DOC (Ex) (the

15   "California Action").

16        In response, New GM moved in Bankruptcy Court for an order enforcing the

17   Wind-Down Agreement and enjoining Rally from, among other things, continuing

18   to prosecute the California Action.  In granting the motion, Judge Gerber had this

19   to say about the importance of Bankruptcy Court jurisdiction over issues arising

20   under the ARMSPA and Sale Approval Order:

21        "[T]he bidders of the world that come in to bid for assets in the

22        bankruptcy court must have knowledge that bankruptcy courts will

23        stand by the documents as they were then drafted to give the parties to

24        those agreements the predictability in their relations for which they are

25        binding and upon which they justifiably rely.  The Court in [In re

26        Eveleth Mines LLC, 312 B.R. 634, 645 n. 14 (Bankr.D.Minn.2004)]

27        explained: '[a]s applied to a sale free and clear of liens, there are also

28        good policy reasons for making a derivative core-proceeding

3

1    classification…. Active bidding on assets from bankruptcy estates will

2    be promoted if prospective purchasers have the assurance that they

3    may go back to the original forum that authorized the sale, for a

4    construction or clarification of the terms of the sale that it approved.

5    Relegating post-sale disputes to a different forum injects an

6    uncertainty into the sale process, which would dampen interest and

7    hinder the maximization of value. A purchaser that relies on the terms

8    of a bankruptcy court's order, and whose title and rights are given life

9    by that order, should have a forum in the issuing court.'"

10   Transcript of Hearing, In re Motors Liquidation Co., No. 09-50026 REG, October

11   4, 2010.[1] This holding is directly on point here, where New GM seeks protection

12   against a claim that asserts liabilities which New GM simply did not agree to

13   assume. As a result of the Bankruptcy Court's final and binding Sale Approval

14   Order which in paragraph 71 retains "exclusive jurisdiction" over such issues, this

15   Court as a matter of res judicata (leave aside normal judicial comity) is simply

16   without power to decide them. See Met-L-Wood Corp. v. Getkas, 861 F.2d 1012,

17   1016 (7th Cir.1988) (bankruptcy court's sale approval order under 11 U.S.C. § 363

18   is a final order with res judicata effect that can only be challenged on appeal);

19   Boyer v. Gildea, 2005 U.S.Dist.Lexis 41534 at *11-12 (N.D.Ind.2005) ("The

20   important policy of favoring the finality of bankruptcy court orders approving the

21   sales of debtor assets requires that bankruptcy orders be final judgments for res

22   judicata purposes").

23                                     **ARGUMENT**

24   **I.    NEW GM IS ONLY LIABLE FOR "ASSUMED LIABILTIES"**

25        Plaintiff claims that New GM is liable under three California statutes based

26   upon an alleged "design defect" in his 2005 Chevrolet Equinox – a vehicle that

27   _____

28   [1]   A copy of the full transcript of the hearing, including Judge Gerber's decision is
attached hereto as Exhibit A.

4

New GM *did not* manufacture or sell.  In fact, it is undisputed that New GM did

not manufacture or sell *any* of the vehicles owned by members of the proposed

class.  New GM therefore has no liability to the owners of these vehicles *unless* it

specifically agreed to assume such liability in the ARMSPA.

New GM believes that the express terms of the ARMSPA and Sale Approval

Order establish that it does not have any such liability.  But GM is not asking this

Court to make that determination.  Instead, New GM only is asking the Court to

recognize that to the extent that plaintiff has any colorable claim, it unavoidably

depends on application and interpretation of the ARMSPA and thus must be

addressed to Judge Gerber who, under paragraph 71 of the Sale Approval Order,

retains "exclusive jurisdiction to enforce and implement the terms of Order ***and to

protect [New GM] against any of the Retained Liabilities*** [*i.e.*, liabilities that New

GM did not assume under the Order] or the assertion of any lien, claim,

encumbrance or other interest, of any kind or nature whatsoever, against the

Purchased Assets [which New GM purchased from Old GM]") (emphasis added).

New GM's lack of liability and Judge Gerber's jurisdiction to determine

what "Assumed Liabilities" it specifically agreed to accept both follow from the

very nature of a "sale free and clear of liabilities" under section 363 of the

Bankruptcy Code.  The obvious goal of such a sale is to obtain monetary value for

the benefit of the debtor's estate and creditors by selling valuable assets of the

estate *without the attendant liabilities*.  *See* Sale Approval Order, ¶ 7 ("Except for

the Assumed Liabilities, … the Purchased Assets shall be transferred to [New GM]

free and clear of all liens, claims, encumbrances, and other interests of any kind or

nature whatsoever … including rights or claims based on any successor or

transferee liability").

To the extent that liabilities pass to the purchaser, even on a limited basis,

they lessen the purchase price and the value to the estate *pro tanto*.  It is therefore

very important, both to a section 363 purchaser and to the debtor, to identify

1  specifically what types of liabilities will be assumed by the purchaser and which

2  will remain with the debtor.  Here, in the largest industrial bankruptcy case in

3  history, the issue of assumed liabilities was negotiated in great detail and resulted

4  in very detailed definitions of the categories of liabilities which New GM did and

5  did not assume.  *See* ARMSPA § 2.3(a) (Assumed Liabilities); *id*., § 2.3(b)

6  (Liabilities retained by Old GM); Sale Approval Order, ¶ 46 ("except for the

7  Assumed Liabilities expressly set forth in the [ARMSPA], … [New GM] …shall

8  not have any liability for any claims that arose prior to the Closing Date, relates to

9  the production of vehicles prior to the Closing Date, or otherwise is assertable

10  against [Old GM] … prior to the Closing Date").  The teaching of the <u>Eveleth</u>

11  <u>Mines</u> case, quoted above, is that construction of a 363 sale order to determine

12  what assets and liabilities changed hands is a matter for the Bankruptcy Court.

13      Simply put, New GM should not be saddled with Old GM liabilities that it

14  did not agree to assume and, indeed, should not be required to litigate claims

15  asserting such liabilities in non-bankruptcy courts when Judge Gerber has express

16  and exclusive power to resolve such claims.  *See* Sale Approval Order, ¶ 71.

17  **II.    PLAINTIFF'S CLAIMS ARE NOT FOR "ASSUMED LIABILITIES"**

18      As discussed above, New GM is liable to plaintiff only to the extent that this

19  action involves liabilities which New GM expressly agreed to assume under

20  ARMSPA § 2.3(a).  Only two categories of the "Assumed Liabilities" defined in

21  that section are even potentially relevant, and in New GM's view neither applies

22  here.  But the final arbiter on that issue is, and must be, Judge Gerber.

23      **A.    <u>Plaintiff's Claims Are Not for Assumed "Product Liabilities"</u>**

24      Plaintiff first asserts that New GM is liable under California's Consumers

25  Legal Remedies Act ("CLRA"), Civ. Code § 1750 *et seq*., and Unfair Competition

26  Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*., because it allegedly assumed

27  "product liabilities" under ARMSPA § 2.3(a)(ix).  *See*, *e.g.*, Opp., p. 6.  But neither

28  plaintiff's CLRA claim nor his UCL claim asserts any claim for "product liability"

6

1   either in the general sense (strict liability for *personal injury* or *property damage*

2   based on alleged product defects) or under the more specific definition of "Product

3   Liabilities" contained in ARMSPA § 2.3(a)(ix):

4           "all liabilities to third parties for death, personal injury, of other

5       injury to Persons or damage to property caused by motor vehicles …

6       manufactured, sold or delivered by [Old GM] (collectively, "Product

7       Liabilities"), which arise directly out of death, personal injury or other

8       injury to Persons or damage to property caused by accidents or incidents

9       first occurring on or after the Closing Date and arising from such motor

10      vehicles' operation or performance…."

11  Thus, to be an Assumed Liability under section 2.3(a)(ix), a claim must (1) be for

12  death, personal injury or property damage caused by motor vehicles and (2) arise

13  directly from accidents or incidents occurring on or after the Closing Date.

14  Plaintiff's allegations satisfy neither of these requirements.

15              *1.    Plaintiff Is Suing for Non-Disclosure, Not Property Damage*

16          The First Amended Complaint does not include any claim for personal

17  injury or "property damage caused by motor vehicles."  Instead, it seeks monetary

18  and injunctive relief to remedy alleged economic losses caused by claimed

19  violations of disclosure statutes relating to the condition of vehicles sold prior to

20  the Old GM bankruptcy.  *See* FAC, ¶¶ 83, 86, 90-91, 103, 109-10, 111b, 111d.

21  Neither economic loss caused by an alleged design defect nor violation of statutory

22  disclosure or reimbursement obligations is included in the categories of assumed

23  liabilities defined in section 2.3(a), including section 2.3(a)(ix) which provides for

24  New GM to assume liability *only* for personal injury and property damage.

25          To be sure, plaintiff argues that the FAC "is replete with *allegations* of

26  'property damage'" (Opp., p. 6), but he is not *suing* for property damage caused by

27  motor vehicles.  Instead, he is suing for money damages, restitution and injunctive

28  relief based on alleged violations of the CLRA and UCL.  If, as plaintiff argues,

7

New GM assumed liability for violations of consumer statutes, it certainly is not
apparent on the face of section 2.3(a)(ix), and there is certainly nothing elsewhere
in the text of the ARMSPA or Sale Approval Order indicating that New GM
intended to do so.  In fact, the exact opposite is true.  ARMSPA § 2.3(b)(xvi)
confirms in a seemingly straightforward manner that Old GM retains (and
therefore New GM did not assume) "all Liabilities arising out of, related to or in
connection with any implied warranty or other implied obligation arising under
statutory or common law without the necessity of an express warranty."  That is
why it is mandatory that any alleged ambiguity in the contract language be
resolved by the Bankruptcy Court, which approved and possesses very detailed
knowledge of the ARMSPA and the overall intent of the parties.

    Indeed, according to plaintiff, Judge Gerber already has addressed this issue
in his opinion which accompanied issuance of the Sale Approval Order:

> "As Judge Gerber of the Bankruptcy Court noted in ruling on the sale
> of assets that gave rise to New GM and objections thereto, the
> Assumed Liabilities include '*all* product liability claims arising from
> accidents or other discrete incidents arising from operation of GM
> vehicles occurring subsequent to the closing … *regardless of when the
> product was purchased*.'"  Opposition, p. 8 (emphasis by plaintiff).

GM believes that Judge Gerber was using the term "product liability claims" in its
normal sense to refer to strict liability for personal injuries or property damage
caused by a design or manufacturing defect rather than to violation of consumer
disclosure statutes, but if there is any doubt about the scope of the quoted sentence
or the extent of the liabilities which New GM agreed to assume, Judge Gerber
obviously is best situated to interpret his own words.

## 2. *Plaintiff's Claims Did Not Arise After the Closing Date*

    Plaintiff argues that New GM is liable on his statutory claims because they
are claims for property damage "arising directly from accidents or incidents or

1    other discrete occurrences that happen on or after the Closing Date." Opp., pp. 6.

2    Because plaintiff first experienced a water leakage problem after the Closing Date,

3    they say, the problem did not "manifest itself" until after that date; therefore, they

4    say, New GM is liable under ARMSPA § 2.3(a)(ix).

5          This argument falls first, as explained above, because plaintiff's claim is not

6    for property damage at all but for economic loss stemming from alleged violation

7    of consumer disclosure statutes.  But even beyond that initial fatal flaw, plaintiff's

8    argument fails because the duty of disclosure of the alleged "known defect" under

9    the cited consumer statutes arose if at all *prior to the Closing Date **regardless of***

10   ***when plaintiff or any other specific owner experienced a water leakage problem***.

11   In other words, the alleged liability did not "arise from accidents, incidents or other

12   discrete incidents" either before or after the Closing Date, but arose instead from

13   alleged knowledge of the defect before the Closing Date that assertedly gave rise to

14   a duty of disclosure on the part of Old GM before that date.  Although plaintiff

15   alleges that New GM became aware of the alleged defect on or shortly after the

16   Closing Date, it had no contractual relationship with Equinox and Torrent owners

17   at that time, aside from its express warranty obligations assumed under ARMSPA

18   § 2.3(a)(vii)(A), *see* Part II-B *infra*, so there is simply no basis for any claim that it

19   owed these owners any duty of disclosure.  Therefore, plaintiff's "manifestation"

20   argument reduces to nothing more than an attempt to impose forbidden successor

21   liability on New GM based on Old GM's alleged failure to disclose a claimed

22   defect before the Closing Date.  *See* Sale Approval Order, ¶ 46.

23         **B.**    **Plaintiff's Claims Are Not for Assumed Warranty Liabilities**

24         ARMSPA § 2.3(a)(vii)(A) delineates the *only* warranty liabilities which

25   New GM agreed to assume:

26         "all Liabilities arising under express written warranties … that

27         are specifically identified as warranties and delivered in connection

28

9

1    with the sale of new, certified used or pre-owned vehicles …

2    manufactured or sold by [Old GM]…."

3    Paragraph 56 of the Sale Approval Order amplified the limited nature of the

4    assumed warranty obligations:

5    "[New GM] is assuming the obligations of [Old GM] pursuant to and

6    *subject to conditions and limitations contained in* their express written

7    warranties…. [New GM] is not assuming responsibilities for

8    Liabilities contended to arise by virtue of other alleged warranties,

9    including implied warranties and statements in materials such as,

10   without limitation, individual customer communications, owner's

11   manuals, advertisements, and other promotional materials, catalogs,

12   and point of sale materials." (Emphasis added.)

13   These provisions clearly establish that the only warranty liability that New GM

14   assumed was liability under Old GM's standard limited "repair or replace"

15   warranties. Under these warranties, the *exclusive* remedy is free-of-charge repair

16   of defects in materials and workmanship upon presentation of the vehicle to an

17   authorized dealer within the warranty period. *See* Request for Judicial Notice,

18   Exhibit D. All other remedies are specifically excluded.

19   It comes as no surprise, therefore, that plaintiff admits he is not suing GM

20   for breach of express warranty, *see* Opp., p. 5, despite alleging that GM "refused to

21   cover the problem under warranty, as it was required to do under the [ARMSPA]."

22   *See* FAC, ¶¶ 13-14, 45, 57, 60. Instead of seeking free repairs under the warranty,

23   plaintiff seems to have made the tactical choice to allege that the standard limited

24   warranty *does not* cover water leaks because lack of warranty coverage is an

25   essential predicate for his MVWAP claim that in those circumstances in which GM

26   dealers did provide free repairs for water leaks, they did so in alleged compliance

27   with a MVWAP "adjustment program" which Old GM allegedly created by

28   "enlarging" the warranty. *See* Opp., p. 11.

1

2

**C.    New GM Did Not Assume Any Other Relevant Liabilities**

       **1.    *CLRA and UCL Claims***

3    Vehicle manufacturers are subject to a variety of legal claims based on their

4    manufacture and distribution of new vehicles to their dealers for sale or lease to

5    retail customers.  These include not only strict product liability claims for personal

6    injury or property damage and claims for breach of standard vehicle warranties, all

7    of which New GM specifically agreed to assume, but also other types of claims

8    including breach of implied warranties and warranties-by-description, claims of

9    common law misrepresentation and omission, and claims for violation of state

10    consumer laws such as California's CLRA, UCL and MVWAP statutes.  The

11    ARMSPA conspicuously excluded the latter group of claims.

12    Because New GM did not manufacture plaintiff's Chevrolet Equinox – or

13    *any* Equinoxes or Pontiac Torrents – it is not liable on any of these types of claims

14    *unless* it specifically agreed to assume such liability.  Because plaintiff's CLRA,

15    UCL and MVWAP do not fall within any of the Assumed Liability categories set

16    out in ARMSPA § 2.3(a), New GM, very simply, has no liability to plaintiff

17    because it did not manufacture or distribute his vehicle and therefore, unlike Old

18    GM, is not subject to these types of claims.

19    Bolstering this conclusion, ARMSPA § 2.3(b)(xvi) explicitly excludes from

20    the liabilities assumed by New GM "all Liabilities arising out of, related to or in

21    connection with any (A) implied warranty ***or other implied obligation arising***

22    ***under statutory*** or common ***law*** without the necessity of an express warranty or (b)

23    allegation, statement or writing by or attributable to [Old GM]."  ARMSPA

24    (emphasis added).[2]

25    [2]  To be sure, plaintiff argues that his claims do not fit within this exclusion
because, he claims, he is suing on express rather than implied obligations.  But
26    plaintiff's statement that his claims involve "*express* obligations" that "transcend
the law of warranty" confirms that these claims regardless of whether they fit
27    within the exclusion do not fit within the section 2.3(a)(vii)(A) definition of
assumed warranty liabilities because they *transcend* – i.e., are outside the bounds
28    of – warranty law.  Opp., p. 8, n. 6 (quoted emphasis in original).

1    Further, paragraph 46 of the Sale Approval Order provides that "[e]xcept for

2    the Assumed Liabilities expressly set forth in the [ARMSPA] … [New GM] …

3    shall [not] have any liability for any claim that arose prior to the Closing Date,

4    *relates to the production of vehicles prior to the Closing Date*, or otherwise is

5    assertable against [Old GM] … prior to the Closing Date…."  Claims for non-

6    disclosure of an alleged design defect clearly "relate to the production of vehicles

7    prior to the Closing Date" and therefore fall squarely within the ambit of this

8    prohibitory language.  And, if there were any reason for doubt, the next sentence of

9    paragraph 46 clearly puts to rest any conceivable claim that New GM has liability

10   based on Old GM's failure to disclose the alleged defect:

11        "*Without limiting the foregoing, [New GM] shall not have any*

12        *successor, transferee, derivative, or vicarious liabilities of any kind*

13        *or character for any claims, including, but not limited to, under any*

14        *theory of* successor or transferee liability, de facto merger or

15        continuity … and *products … liability*, whether known or unknown as

16        of the Closing, now existing or hereafter arising, asserted or

17        unasserted, fixed or contingent, liquidated or unliquidated."

18   Based on plaintiff's allegations (which New GM does not admit), as of the Closing

19   Date he asserts that he had an unasserted "products liability" claim against Old GM

20   for alleged non-disclosure of the claimed design defect.  Under the quoted

21   language, however, New GM clearly has no successor or transferee liability based

22   on Old GM's failure to disclose the alleged defect.

23        Plaintiff not only has no "products liability" or "warranty" claim, but he is

24   subject to a Bankruptcy Court injunction prohibiting him from making such claims

25   against New GM.  Sale Approval Order, ¶ 47 ("Effective upon the Closing …all

26   persons and entities *are forever prohibited and enjoined from commencing or*

27   *continuing in any manner any action* … *against [New GM]* …*with respect to any*

28   *(i) claim against [Old GM] other than Assumed Liabilities*) (emphasis added).

12

1    To be sure, plaintiff argues that New GM is liable on his statutory claims

2  because it has "continued" Old GM's misconduct.  This argument is circular,

3  however, because it assumes incorrectly that New GM has the same obligations

4  and liabilities as Old GM, the manufacturer of plaintiff's vehicle.  It does not.

5  Because it did not manufacture Chevrolet Equinoxes or Pontiac Torrents, New GM

6  *does not* have normal manufacturer liabilities.  Instead, the only source of potential

7  liability to plaintiff on the part of New GM is the ARMSPA, so any liabilities to

8  plaintiff other than those set forth in section 2.3(a) belong to Old GM.

9    Further, plaintiff's argument that New GM allegedly learned of the claimed

10  water leak defect when it purchased Old GM's assets in July 2009, and therefore

11  was obliged under the CLRA and UCL to disclose the claimed defect to plaintiff, is

12  missing an essential element.  At the time that the section 363 transaction closed on

13  July 10, 2009, New GM had no relationship with plaintiff *except* for its agreement

14  to perform Old GM's obligations under its standard express warranty.

15    If, as plaintiff apparently believes, Old GM knew of the alleged defect and

16  failed to make required disclosures, plaintiff at the time that the section 363

17  transaction closed *already had an actionable claim against Old GM that was ripe

18  for adjudication*.  But New GM did not have any liability as the vehicle's

19  manufacturer and under the ARMSPA it did not agree to assume Old GM's

20  liability for alleged non-disclosure, which accordingly remains with Old GM.

21  Thus, plaintiff's nondisclosure claim against New GM reduces to a naked attempt

22  to impose successor or transferee liability – a result which paragraph 46 of the Sale

23  Approval Order explicitly forbids.  And, again, any arguments to the contrary must

24  be made to the Court which entered that order, the Bankruptcy Court for the

25  Southern District of New York.

26    **2.    *MVWAP Claims***

27    Virtually the same analysis applies to plaintiff's MVWAP claims.  MVWAP

28  provides that *the manufacturer* of a vehicle (here, Old GM) cannot expand or

extend coverage under its standard warranty, except on an *ad hoc* basis, without

notifying all vehicle owners of the availability of the expanded coverage and

reimbursing owners who already have paid for repairs of the "condition" that is the

subject of the alleged "adjustment program."  Civ. Code §§ 1795.90(d), 1795.92.

The basis for plaintiff's MVWAP claim in this case are two versions of a

Technical Service Bulletin issued by Old GM which describes how to diagnose

and remedy water leak problems *but which says absolutely nothing about whether*

*repair of these problems is covered under the warranty or, if not, whether the*

*repairs should be provided to customers free-of-charge.*

While New GM believes that these Technical Service Bulletins *did not*

create any "adjustment program" within the meaning of Civ. Code § 1795.90(d),

the important point here is that the MVWAP violation, if there was one, was

complete at the time these bulletins were adopted in October 2008 and January

2009, *before the Old GM bankruptcy filing*.  In other words, if there was an

obligation under MVWAP to provide statutory notice to Equinox and Torrent

owners of a claimed defect which, obviously, "relate[d] to the production of

vehicles prior to the Closing Date" (*see* Sale Approval Order, ¶ 46), Old GM had

that obligation and had breached it long before New GM negotiated to purchase its

assets.  Because New GM did not manufacture these vehicles, and did not assume

MVWAP liability for them in the ARMSPA,[3] it could only have MVWAP liability

as a successor or transferee.  But ARMSPA and the Sale Approval Order expressly

protect New GM from such liability.  *See id.*

Plaintiff also makes a spurious claim that New GM expressly assumed

liability under MVWAP because this statute allegedly is "similar" to the National

---

[3] Plaintiff does not and cannot argue that a violation of MVWAP falls within New GM's assumed warranty liability under section 2.3(a)(vii)(A) since, by definition, providing coverage which *expands* or *enlarges* the limited coverage provided by the standard express warranty is not coverage that "arises out of" that warranty. *See also* Sale Approval Order, ¶ 56 ("[New GM] is assuming the obligations of [Old GM] pursuant to and subject to conditions and limitations contained in their express written warranties….").

14

Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* (the "Safety

Act"). To be sure, ARMSPA § 6.15(a) and the Sale Approval Order (¶ 17) provide

that New GM after the Closing Date "shall comply with the *certification, reporting*

*and recall requirements* of the National Traffic and Motor Vehicle Safety Act …

and similar Laws … to the extent applicable in respect of vehicles and vehicle

parts manufactured and distributed by [Old GM]" (emphasis added).

Consistent with the emphasized language, however, the Safety Act is only a

certification, reporting and recall statute, not a consumer disclosure statute. It

requires manufacturers to certify compliance with safety standards before

marketing vehicles to the public. 49 U.S.C. §§ 30111, 30112, 30115. It directs the

National Highway & Traffic Safety Administration to investigate safety issues and,

if necessary, order vehicle recall campaigns. 49 U.S.C. §§ 30118-20, 30163.

But the Safety Act *does not* require manufacturers like GM to notify retail

customers when it issues a Technical Service Bulletin or to provide repairs *unless*

*there is a recall*. And by quite carefully limiting the obligation in question to

"certification, reporting and recall requirements," the drafters of the ARMSPA

made it quite clear that New GM was not assuming responsibility for claims like

those plaintiff is asserting here.

In marked contrast to the Safety Act, MVWAP is not a safety certification or

recall statute; instead, it requires consumer notification and, sometimes, repair

reimbursement, if and when a manufacturer creates an "adjustment program"

*whether or not there is a recall or, indeed, any safety issue at all*.

Thus, the Safety Act and MVWAP are in no sense "similar Laws" and New

GM therefore cannot be held to have assumed MVWAP liabilities under ARMSPA

§ 6.15(a) or paragraph 17 of the Sale Approval Order. And, once again, if there is

even a smidgen of doubt, the issue falls squarely within Judge Gerber's exclusive

jurisdiction to determine what liabilities New GM agreed to assume under these

provisions.

## III.    THE BANKRUPTCY COURT HAS "CORE" JURISDICTION

The authorities cited in the moving papers (pp. 11-13), show that the Bankruptcy Court has "core" jurisdiction to enforce, interpret and resolve disputes concerning sales free and clear of liens under section 363 of the Bankruptcy Court. Judge Gerber in his <u>Rally</u> decision bolstered this conclusion with still more citations that directly address this point:

> "… I find that this is a core matter.  Under 28 U.S.C., Section 157(a)(2)(n), core matters include, with exceptions not relevant here, orders approving the sale of property.  The 363 sale order and my approval of the wind-down agreement documented the outcome of those core proceedings.  And a proceeding such as the motion now before me which seeks relief predicated on a 'retained jurisdiction' clause in my order resolving a core matter is a core matter as well.  The decision in Eveleth Mines, 312 B.R. at pages 644 to 645 is directly on point…. The Second Circuit has held similarly.  It's held that bankruptcy courts are empowered to enforce the sale order that they enter and to protect the rights which were established by the sale order.  See Millenium Seacarriers, 419 F.3d at 97; and Petrie Retail, 304 F.3d at 229-30.[4]  Petrie Retail is particularly instructive because it also dealt with a dispute between two nondebtors addressing rights that were created by the sale order…."

Transcript of Hearing, October 4, 2010, pp. 46-47.[5]

---

[4]  Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 93 (2d Cir.2005); Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail), 304 F.3d 223 (2d Cir.2002)

[5]  Plaintiff feebly attempts to distinguish Eveleth Mines on the grounds that one of the litigants initially had consented to Bankruptcy Court jurisdiction but then sought to withdraw its consent.  Opp., pp. 20-21.  But it is the most fundamental principle of federal jurisdiction that the same cannot be created by consent.  And the two Second Circuit decisions certainly dispatch any claim that interpretation of a bankruptcy court's "core" order is not itself a core matter.

1   The two <u>Winn</u> decisions attached as Exhibits to plaintiff's Opposition do not

2   support any contrary conclusion.  Each involved purely state law issues between

3   non-diverse parties as to which bankruptcy issues arose only by way of defense.

4   The district court's remand for lack of federal question jurisdiction has no

5   relevance in this case, where the plaintiff is directly asserting against New GM

6   claims on obligations that remain with the bankrupt, Old GM, in direct violation of

7   paragraph 47 of the Sale Approval Order issued by Judge Gerber.

8   **IV.    THE ALTERNATIVE TRANSFER MOTION IS MERITORIOUS**

9   If for any reason the Court is not satisfied that it lacks subject matter

10  jurisdiction as a consequence of the Bankruptcy Court's retention of *exclusive*

11  jurisdiction in the Sale Approval Order, New GM respectfully submits that for the

12  reasons stated in the moving papers, the action should be transferred under 28

13  U.S.C. § 1412 for referral to the Bankruptcy Court under 28 U.S.C. § 157(b),

14  consistent with the Bankruptcy Court's indisputable "core" jurisdiction concerning

15  the section 363 transaction.

16  **<u>CONCLUSION</u>**

17  For all the reasons stated, defendant General Motors LLC respectfully urges

18  that this Court grant its motion to dismiss this action for lack of subject matter

19  jurisdiction or, in the alternative, transfer the action pursuant to 28 U.S.C. § 1412

20  to the United States District Court for the Southern District of New York for

21  referral to the Bankruptcy Court pursuant to 28 U.S.C. § 157(b).

22  Dated:  October 11, 2010              GREGORY R. OXFORD
                                          ISAACS CLOUSE CROSE & OXFORD LLP
23

24                                        By:  *[s] Gregory R. Oxford*
                                          _____
25                                          Gregory R. Oxford
                                          Attorneys for Defendant
26                                        General Motors LLC

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026-reg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MOTORS LIQUIDATION COMPANY, et al.

9            f/k/a General Motors Corporation, et al.,

10

11           Debtors.

12

13   - - - - - - - - - - - - - - - - - - - -x

14

15               United States Bankruptcy Court

16               One Bowling Green

17               New York, New York

18

19               October 4, 2010

20               3:06 PM

21

22

23   B E F O R E:

24   HON. ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

Page 2

1

2    HEARING re Motion of General Motors LLC Pursuant to 11 U.S.C.

3    §§ 105 and 363 to Enforce 363 Sale Order and Approved Deferred

4    Termination (Wind-Down) Agreement

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for the Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  EVAN S. LEDERMAN, ESQ.

9

10    KRAMER LEVIN NAFTALIS & FRANKEL LLP

11         Attorneys for the Official Committee of Unsecured

12          Creditors

13         1177 Avenue of the Americas

14         New York, NY 10036

15

16    BY:  JENNIFER SHARRET, ESQ.

17         (TELEPHONICALLY)

18

19    KING & SPALDING LLP

20         Attorneys for General Motors LLC a/k/a New GM

21         1185 Avenue of the Americas

22         New York, NY 10036

23

24    BY:  ARTHUR J. STEINBERG, ESQ.

25         SCOTT DAVIDSON, ESQ.

Page 4

1

2    ISAACS CLOUSE CROSE & OXFORD LLP

3         Attorneys for General Motors LLC a/k/a New GM

4         21515 Hawthorne Boulevard

5         Suite 950

6         Torrance, CA 90503

7

8    BY:  GREGORY R. OXFORD, ESQ.

9         (TELEPHONICALLY)

10

11   WILK AUSLANDER LLP

12        Attorneys for Rally Auto Group Inc.

13        675 Third Avenue

14        New York, NY 10017

15

16   BY:  ERIC J. SNYDER, ESQ.

17

18   BELLAVIA GENTILE & ASSOCIATES, LLP

19        Attorneys for Rally Auto Group Inc.

20        200 Old Country Road

21        Mineola, NY 11501

22

23   BY:  STEVEN H. BLATT, ESQ.

24

25

Page 5

1

2   MORGANSTERN, MACADAMS & DEVITO CO., L.P.A.

3        Attorneys for Rally Auto Group Inc.

4        636 West St. Clair Avenue

5        Cleveland, OH 44113

6

7   BY:  CHRISTOPHER M. DEVITO, ESQ.

8        (TELEPHONICALLY)

9

10  U.S. DEPARTMENT OF JUSTICE

11       U.S. Attorney's Office

12       Southern District of New York

13       86 Chambers Street

14       New York, NY 10007

15

16  BY:  DAVID S. JONES, DEPUTY CHIEF, CIVIL DIVISION

17

18

19

20

21

22

23

24

25

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 27 of 126

Page 6

1                   P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Good morning -- or afternoon.  Have

4    seats, please.  All right.  GM.  Motors Liquidation Company.

5    Rally Motors.  Mr. Lederman, do we have some preliminary

6    matters that I had become unaware of?

7              MR. LEDERMAN:  No, Your Honor, we don't.  The only

8    matter before you is a matter that you just introduced.  So I

9    was just going to introduce the parties and turn over the

10   lectern to them.

11             THE COURT:  All right.  Well, I know Mr. Steinberg

12   and Mr. Snyder.  Why don't the remainder of you folks introduce

13   yourselves.

14             MR. DAVIDSON:  Scott Davidson from King & Spalding --

15             THE COURT:  All right.

16             MR. DAVIDSON:  -- for New GM.

17             MR. OXFORD (TELEPHONICALLY):  Greg Oxford, Isaac

18   Clouse --

19             MR. BLATT:  Steven Blatt from Bellavia --

20             THE COURT:  Just a minute, please.  First, I need the

21   folks in the courtroom to introduce themselves.

22             MR. OXFORD:  Okay, Your Honor.

23             THE COURT:  And then if people are on the phone, I'm

24   going to have to ask that they defer to people in the courtroom

25   unless people in the courtroom hand off to them.

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 28 of 126

Page 7

1             MR. BLATT:  Steve --

2             THE COURT:  All right.  Just a minute, please,

3    gentlemen.

4             MR. BLATT:  Yes, Your Honor.

5             THE COURT:  All right.  With Mr. Snyder?

6             MR. BLATT:  Yes.

7             MR. SNYDER:  Yes, Your Honor.  I'm sorry.  Go ahead.

8             MR. BLATT:  Steven Blatt, Bellavia Gentile, 200 Old

9    Country Road, Mineola, New York, on behalf of Rally Auto Group.

10            THE COURT:  Right, Mr. Blatt.  Okay.

11            THE COURT:  Now, is there a gentleman on the phone

12   who wanted to introduce himself?

13            MR. OXFORD:  Yes, Your Honor.  It's Greg Oxford,

14   Isaac Clouse Crose & Oxford also appearing with Mr. Steinberg

15   on behalf of General Motors LLC.

16            THE COURT:  All right, Mr. Oxford.  Okay.  Gentlemen,

17   make your presentations as you see fit.  But I'm going to need

18   you to address the following needs and concerns.  But first,

19   let me lay on my frustration with you guys, both sides.  I

20   cannot, for the life of me, understand, Mr. Snyder and Mr.

21   Blatt, why you can't follow the requirements of my case

22   management orders and give me a table of cases and table of

23   authorities as those rules require in baby talk.  When I'm

24   trying to compare the two submissions and see what you guys

25   said about a particular case or, for that matter, how you

MOTORS LIQUIDATION COMPANY, et al.

Page 8

```
 1   organized your arguments, that is a source of incredible

 2   difficulty and frustration for me.  And, Mr. Steinberg and Mr.

 3   Oxford -- Mr. Oxford, I think you at least have been in this

 4   case before.  How many times have I said that I don't want to

 5   use -- see the word "passum" especially when it refers to the

 6   most important case in your whole brief on a lot of these

 7   issues?  I'm not expecting a response now.  You can address it

 8   when it's your turn.

 9            Gentlemen -- Mr. Snyder and Mr. Blatt, if you want to

10   make your subject matter jurisdictions, you can, but it doesn't

11   seem to me that this is about subject matter jurisdiction in

12   any way, shape or form.  Frankly, I think you missed the boat

13   when you were talking about related-to jurisdiction.  It seems

14   to me that this is a poster child for arising-in jurisdiction

15   and the principle that bankruptcy judges have the authority to

16   enforce their own orders.  And when an agreement says that the

17   bankruptcy court will have exclusive jurisdiction to deal with

18   a particular matter and then the order implements that, I have

19   some trouble seeing how it can be to the contrary.  If you

20   nevertheless want to continue to the contrary, you got to help

21   me with Petrie Retail and Millenium Seacarriers on those

22   points.

23            Now, I sense that both sides agree that there is no

24   right of judicial review under the Dealer Arbitration Act and

25   that the Federal Arbitration Act applies only to contractual
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 30 of 126

Page 9

1   agreements to arbitrate.  So therefore, we're on a little bit

2   of -- or totally implied remedies if and to the extent they

3   exist.  Now, Mr. Steinberg, I want to see whether your argument

4   proves too much.  And you can help me with that if I posit to

5   you a situation where the arbitrator is taking bribes or he's

6   taking an ex parte communication because my belly would tell me

7   that even if there weren't an expressed right of judicial

8   review in that situation that Rally Motors, if it were on the

9   losing end of that type of situation and, of course, if it came

10  to me, could come and say, Judge, I need relief from that kind

11  of thing.  But, of course, Mr. Snyder and Mr. Blatt, that isn't

12  what you're alleging here.  In essence, you're alleging that

13  the arbitrator made an error of law.  And you haven't shown me

14  any case in which the arbitrator was told that he had to deal

15  with these franchise agreements double or nothing.  And it

16  strikes me as a garden variety claim of legal error.  So help

17  me if I'm wrong on that.

18         Now, I don't know how many times I and the other

19  bankruptcy judges in this district have had 363 orders and

20  confirmation orders provide for continuing jurisdiction

21  typically to follow up on the implementation of things that

22  were in the sale order and in the plan or agreements that were

23  provided under either.  Counterparties come into the court all

24  the time putting their money on the line to get benefits by

25  dealing with the bankruptcy court.  And that's an important

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 31 of 126

Page 10

 1   reason, as at least one of the cases that was quoted to me

 2   says, why we have provisions of this character.  And I need

 3   your help in understanding why I should say "Never mind" to

 4   provisions of that type.  But if there is authority for some

 5   kind of implied judicial review that I, in contrast to a

 6   district judge exercising diversity jurisdiction, could issue,

 7   or even if it were deemed to be 1331 federal question

 8   jurisdiction -- though I don't see the provision of the U.S.C.

 9   under which the federal right arises.  I mean, I see why you

10   could compel GM to arbitrate but New GM didn't quarrel with

11   your right to arbitrate that I need help on that.

12          So, Mr. Snyder, will it be you or Mr. Blatt?

13          MR. SNYDER:  It'll be me, Your Honor.

14          THE COURT:  Okay.

15      (Pause)

16          MR. SNYDER:  Your Honor, as I think the analogy for

17   our purposes or the point where we start is the AAA commercial

18   rules.  And I focus on those, Your Honor, only because, as the

19   Court pointed out, I don't think anyone disputes that when both

20   parties sat down to the arbitration that the commercial rules

21   apply.  Now, GM states that it objected to the use of the

22   commercial rules.  But be that as it may, the scheduling order,

23   in particular, paragraph 1, which is annexed to our objection

24   as Exhibit F, specifically states that the commercial rules

25   apply.  And one of those rules, Your Honor, is 48(c) which we

MOTORS LIQUIDATION COMPANY, et al.

Page 11

```
 1    relied on extensively in our papers but it states, and I

 2    quote -- it's short:  "Parties to an arbitration under this

 3    rule shall be deemed to have consented.  A judgment upon the

 4    arbitration award may be entered into any federal, state or

 5    court of competent jurisdiction."  Now it doesn't say they have

 6    to agree.  It says that they've deemed to have consented.  And

 7    so our argument is, Your Honor, that if the AAA commercial

 8    rules apply and GM is deemed to have consented then, naturally,

 9    there is a -- the arbitration award is final and binding and

10    there has to be a right of judicial review under the terms of

11    48(c).  Now we cited to the Idea Nuova case for the proposition

12    that although that was a contract case, where the contract is

13    silent as to whether the rights of judicial review apply, the

14    Courts will impute 48(c) not because the parties agreed to

15    arbitrate, Your Honor, but because by going forward with the

16    arbitration, because the commercial rules themselves apply,

17    they're deemed to have consented to both the arbitration and

18    the entry of a final judgment.  And, Your Honor, that's based

19    solely on facts that are not in dispute.

20            THE COURT:  Mr. Oxford, do you want to mute your

21    phone, please?

22            MR. OXFORD:  I'm not sure I know how to do that.  We

23    could --

24            THE COURT:  All right.  CourtCall, mute them.  Go

25    ahead, Mr. Snyder.
```

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 33 of 126

Page 12

1              MR. OXFORD:  I didn't hear you, Your Honor.  I'm

2      sorry.

3              THE COURT:  I'm telling CourtCall to mute you, Mr.

4      Oxford.  Go ahead, Mr. Snyder.

5              MR. SNYDER:  Thank you, Your Honor.  Now we agree,

6      Your Honor, as GM has pointed out that the Dealer Arbitration

7      Act is silent as to judicial review.  But we contend in

8      addition to the AAA commercial rules giving the federal court

9      subject matter jurisdiction that, as Your Honor pointed out,

10     that if a federal question presents itself under 28 U.S.C. 1331

11     then the California district court can rely on that federal

12     question to possess subject matter jurisdiction.  And that

13     federal question is presented here, to wit.  Is the removal of

14     a Chevrolet brand the granting of a "covered dealership" as

15     that term is defined under 747(a) and (d)?  It's stated

16     specifically, Your Honor, in Rally's statement.  Does the

17     removal of a Chevrolet brand constitute a "covered dealership"?

18     So we have a federal statute that Rally is asking a federal

19     court to interpret and we have the Vaden case which I cite to

20     at -- and -- 129 S. Ct. 1262.  In that case, the Supreme Court

21     held that a federal court could look through the arbitration,

22     Your Honor, to determine whether the controversy in question

23     arises under the federal law so that the court has federal

24     question jurisdiction.  That's all we're asking the federal

25     court to do.  Interpret a federal statute on a federal

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 34 of 126

Page 13

1    question.

2            And in addition, Your Honor, we believe the federal

3    court has jurisdiction for the issue that Your Honor has raised

4    and is the most troubling, at least to me, that there is no

5    right to judicial review.  GM doesn't cite to any federal

6    statute, while may be silent or limited, that did not allow for

7    judicial review.  Which goes right to the due process argument

8    and the constitutionality of the statute itself.

9            Your Honor, the arbitrator didn't have to take

10   bribes.  Let's just say we end this hearing and regardless of

11   what happens GM says, I'm not reinstating you.  I don't care

12   what Judge Gerber says or anyone else says.

13           THE COURT:  Well, isn't that the easier case because

14   wouldn't you, Mr. Snyder, be able to come back to me in about

15   ten minutes and say that New GM isn't complying with the

16   arbitration award?  And to the extent that I understood your

17   48(c) argument, the language is "deemed to have consented to

18   enforcement".  And if you say -- let's take what I understand

19   to be the case.  You won three-quarters of -- or your client

20   won three-quarters of the arbitration before the arbitrator.

21   And suppose GM stiffs you on those three-quarters where you

22   prevailed -- your client prevailed.  I would have thought --

23   and maybe Mr. Steinberg should be heard on this because if he

24   contends to the contrary, I guess I should know it.  But I

25   would have thought that you could come back to me and say make

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 35 of 126

Page 14

1    GM -- New GM comply with the arbitrator's award.  But you're

2    not trying to enforce the arbitrator's award.  You're trying to

3    attack it.  You're trying to attack the one-quarter of it you

4    don't like.

5            MR. SNYDER:  Your Honor, we're trying to say that if

6    there is judicial review of a statute that does not allow for

7    judicial review that the constitutionality of the statute, the

8    due process argument is the district court possesses

9    jurisdiction to that.  There's a crucial difference, Your Honor

10   -- and to me, this is the crux of our argument.  Putting the

11   core related and Petrie aside for the moment, whether this

12   Court has jurisdiction or not is to me not the issue.  The

13   issue is whether the California court has jurisdiction.  What

14   GM is saying is this Court has sole and exclusive jurisdiction.

15   That means of the 600 dealers that had their claims arbitrated

16   with GM, if they are unhappy with a portion of the award then

17   all 600 nondebtors with New GM, a nondebtor, that this Court

18   has sole and exclusive jurisdiction to determine under the

19   Federal Arbitration Act what a covered dealership is.  And I'm

20   suggesting that the California district court, whether as a

21   federal question or for constitutionality purposes, might also

22   have that jurisdiction because it can't be that as a result of

23   the wind-down agreements, when the Dealer Arbitration Act was

24   passed that the Court was willing to say we're going to pass

25   the Dealer Arbitration Act to give you dealers another bite at

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 36 of 126

Page 15

1    the apple.  But you have to go back to the bankruptcy court if

2    you want it enforced.  Now maybe this Court does have related-

3    to jurisdiction but it couldn't be, Your Honor, that there is

4    no right of judicial review and Congress' intent was that

5    everybody has to come back here.  And that's --

6           THE COURT:  I don't want to interpret you, Mr.

7    Snyder, but it wasn't related-to jurisdiction that I think is

8    in play here.  I think it's arising-in jurisdiction, the second

9    of the three prongs under 1334.

10          MR. SNYDER:  Understood, Your Honor.  And again, even

11   if this Court has arising-to jurisdiction, that is not what

12   we're arguing.  They are arguing -- and remember, Your Honor,

13   the motion seeks to compel us to withdraw a lawsuit in federal

14   court because the district court does not have jurisdiction.

15   And I think for the three reasons I've stated, the plain

16   language of 48(c), the introduction of a federal question and

17   the constitutionality of a law that does not allow for judicial

18   review, gives the California district court jurisdiction.  It's

19   not to say that this Court doesn't have jurisdiction but we

20   didn't start in this court.  We started in the federal court in

21   California.  They filed an answer.  They didn't move to

22   dismiss.  And then three days later, they filed the motion

23   here.  Not by order to show cause because they were so

24   concerned about the California's court jurisdiction but by

25   regular motion.  The -- we, in deference to this Court, didn't

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 37 of 126

Page 16

1   go into the California court to seek a stay.  We told them that

2   we would come here and explain to this Court why the Court, the

3   California court, has federal court jurisdiction.  They don't

4   reply to our arguments about Vaden and the ability of a federal

5   court to go through -- look through an arbitration.  The

6   decision is powerful, Your Honor, to the extent it allows you

7   to look through the arbitration and see if a federal question

8   is presented.  That's our issue, that federal questions are

9   presented, constitutionality presented.  Normally not an issue

10  but in a case where a statute is silent as to the right of

11  judicial review, the implication or the logical extension of

12  their argument is that everybody has to come back here.  And it

13  is submitted, Your Honor, that that's not what Congress

14  intended by leaving the statute silent.  We believe what they

15  intended is that the arbitration rules will allow the dealer,

16  the aggrieved dealer, to go into a court of competent

17  jurisdiction to get the relief they seek.

18          And although the judicial estoppel argument has gone

19  up and back, Your Honor, in their complaint, in paragraph 3 in

20  the Santa Monica case, they don't just rely on diversity when

21  they seek to compel Santa Monica to execute the settlement

22  agreement.  They rely on 28 U.S.C. 1331 to get the district

23  court's attention.  They rely on the Dealer Arbitration Act to

24  get the Court to execute -- to restrain Santa Monica.  Then

25  they come here and say this Court has sole and exclusive

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 38 of 126

Page 17

1    jurisdiction with respect to matters in the Dealer Arbitration

2    Act.  They didn't come here, Your Honor, when Santa Monica

3    sought to exercise jurisdiction and refused to sign that

4    settlement agreement.  They went to the California district

5    court.  And so, to argue that sole and exclusive jurisdiction

6    sits here but to rely on federal jurisdiction not just

7    diversity, 28 U.S.C. 1331 jurisdiction in California, to me,

8    rises to the level of judicial estop.

9         The last argument, Your Honor, which was the first

10   one you raised, is the applicability of Petrie and the ability

11   of the Court to enforce its orders.  And there's no doubt that

12   buyers have expectations and they want this Court to enforce

13   them and they have a right to come in here and seek that.  But

14   they have -- every provision of the wind-down agreement that

15   they have pointed to, other than the covenant to sue, is not

16   being implicated.  We were able to sue, commence an

17   arbitration, because the Dealer Arbitration Act allowed us to.

18   They actually state in their papers that us going into

19   California district court violated the covenant to sue.  Well,

20   how can that be?  How can that be that the statute allows us to

21   go to Califor -- and commence an arbitration but doesn't allow

22   it to enforce it anywhere?

23        The wind-down agreement is still the wind-down

24   agreement.  The dealer, Rally, and the other 600 dealers still

25   have certain obligations that they need to fulfill by October

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 39 of 126

Page 18

1     31st.  But the covenant not to sue is not one of them because

2     the statute that was codified in December 2009 gave the dealer

3     certain rights.  And they are limited rights.  They're not

4     happy with the outcome.  Rally believes that the definition of

5     covered dealer was inappropriately misinterpreted by the

6     arbitrator.  There is nothing in the wind-down agreement or the

7     363 order, Your Honor, that suggests they would have to come

8     back here for that.

9          Now, it's unfortunate that the statute is silent.

10    But issues of due process and federal question as well as the

11    AAA rules allow Rally to go into court in California to redress

12    those arguments.  That's our position.  Again, we're not

13    suggesting or it's minimally relevant that this Court has

14    jurisdiction.  Our question is does the California court have

15    jurisdiction.  GM thought it did under 28 U.S.C. 1331.  So do

16    we.  And that's the reason we object to them saying this Court

17    has sole and exclusive jurisdiction under the wind-down

18    agreements as if the Dealer Arbitration Act didn't exist.

19          THE COURT:  Well, you hit on something that I'm glad

20    you did, Mr. Snyder, because I want both you and Mr. Steinberg

21    to address it when it's your respective turns.  And, of course,

22    it's your turn now.  I would have thought that the Dealer

23    Arbitration Act trumps my order and the wind-down agreements to

24    the extent they're inconsistent.  But that the duty of any

25    Court is to try to construe them together to achieve harmony

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 40 of 126

Page 19

1   between them so there is the minimal clashing between the two

2   and that where, of course, the later Dealer Arbitration Act

3   speaks to something, it controls over my order but only to that

4   extent.  Do you think I'm off base from that?

5           MR. SNYDER:  I do not, Your Honor.

6           THE COURT:  All right.  Keep going.

7           MR. SNYDER:  And, Your Honor, I or Rally do not see

8   the ability to confirm a judgment, as that term is defined in

9   48(c), or if the district court should allow, modify or vacate

10  the judgment under the commercial arbitration rules as being

11  anything other than an extension of the arbitration which was

12  codified in the Dealer Arbitration Act.  It isn't a violation

13  of the covenant not to sue under the wind-down agreements

14  because under the wind-down agreements in July 2009, this was

15  not a sparkle in anybody's eye.  No one knew what Congress

16  would end up doing six months later.  They're looking to

17  prohibit us from doing something that wasn't even contemplated

18  at the time Your Honor entered that order.  This came six

19  months later.  And so the rules changed partially.  I'm not

20  suggesting the wind-down agreements are -- they say aggregated

21  -- none of that.  But the covenant to sue was.  And they were

22  allowed to commence arbitrations against New GM in order to get

23  rights back, thumbs up or thumbs down.

24          THE COURT:  Do you think it covers all covenants or

25  all suits or can you harmonize them by saying that if you win

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 41 of 126

Page 20

1   in the arbitrations that Congress has now given you, of course

2   you have the right to enforce that if your opponent, which in

3   this case is New GM, is so dumb as to try to welsh on the

4   arbitrator's ruling.  But that's really how they -- separate

5   provisions are best read together.

6         MR. SNYDER:  Your Honor, there's a reason why -- you

7   call it dumb, but there's a reason why the fifty states and

8   every federal statute except this one that I've seen has the

9   right of judicial review.  It's because if there is no

10  enforcement of a final or binding arbitration then the other

11  side could say, ha, forget it, I'm not doing anything 'cause

12  you have no place to go.

13        THE COURT:  Again, I remain troubled by the

14  distinction between enforcing the award which my tentative,

15  California style subject to your opponent's right to be heard,

16  is that if New GM hadn't complied with the arbitrator's award,

17  I would make it, and to attack the arbitrator's award which

18  invokes separate policy considerations.

19        MR. SNYDER:  Well, Your Honor, I would say that it

20  seems as if the rules which required findings of fact were set

21  up for judicial review.  If the arbitrator had simply said,

22  Your Honor, we're ruling against Rally because I know Larry

23  Mayle, the president, and I don't like him, where could we go?

24  If the Court is suggesting if that was the ruling that we could

25  go into this court to overturn or vacate an arbitration for

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 42 of 126

Page 21

1    manifest disregard of fact and law out of an arbitration coming

2    out of the Dealer Arbitration Act, I don't see it.  I see it as

3    being a federal question that allows judicial review for

4    manifest disregard of facts and law through a federal court.

5    That's what the Supreme Court said in Vaden, that you can look

6    through the arbitration to see if a federal question exists.

7    GM doesn't even cite to Vaden in their reply brief.  But that

8    is uniquely a federal question.  Is Chevy a covered brand as

9    that term is defined under 747(a) and (d)?  What could be more

10   of a federal question than citing to the statute itself.  This

11   is not an abstract referral, Your Honor, where Rally was trying

12   to get around state jurisdiction.  This is questioning the

13   words of a federal statute.  And Rally would have never thought

14   to come to this court, Your Honor, as a result of an

15   arbitration to enforce or to ask this Court to make findings of

16   fact as to whether Chevy is a covered dealership as that term

17   is defined under 747(a) because although this Court might have

18   jurisdiction, the California court certainly has jurisdiction.

19           And, Your Honor, that's what we see as the

20   difference.  When I speak about losing or diminishing

21   jurisdiction in the sales process, I'm not suggesting that

22   buyers can't come back to get the benefit of their bargain.

23   But this was not the benefit of anybody's bargain because the

24   Dealer Arbitration Act wasn't even in existence at the time.

25   They couldn't have said we want this statute because we want no

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 43 of 126

Page 22

1    judicial review from the dealers.  What are you talking about?

2    There's no right to review anyway.  There's a covenant to not

3    to sue.  The Dealer Arbitration Act hadn't even been introduced

4    yet.  So they can't say they didn't get their expectation

5    'cause there was no expectation.  This was six months later.

6    So I don't see this as an enforcement of an order 'cause there

7    was no expectation that they would have that right.

8         (Pause)

9              THE COURT:  Okay.  Mr. Snyder, I'm going to give you

10   a chance to reply but is this a good time to hear from Mr.

11   Steinberg?

12             MR. SNYDER:  Yes, Your Honor.  Thank you.

13             THE COURT:  Thank you.

14        (Pause)

15             MR. STEINBERG:  Good afternoon, Your Honor.  I think

16   Your Honor's questions were very incisive and I will try to

17   answer them as best as I can and to try to point out why I

18   think my colleague has not fully answered Your Honor's inquiry.

19   I think Your Honor is correct that the real issue here is there

20   was a wind-down agreement.  Your Honor approved the wind-down

21   agreement that was part of the sale process.  And then

22   subsequently, Congress acted under the Dealer Arbitration Act.

23   So how do you mesh what you had done versus the later

24   congressional statute?

25             And I think it's important to distinguish what does

MOTORS LIQUIDATION COMPANY, et al.

Page 23

1    the Dealer Arbitration Act do and what it specifically did not

2    do.  And the thing that it did, and I think my colleague has

3    agreed with this, is it provided dealers who either signed the

4    wind-down agreements or had their dealership agreements

5    rejected in either the Chrysler or General Motors cases a new

6    right created by a federal statute to be reinstated to the

7    dealer network of the debtor or the purchaser of the debtor's

8    assets.  And in order to avail themselves of that right, they

9    had to file timely notices in accordance with the Dealer

10   Arbitration Act for binding arbitration.  And I think my

11   colleague was correct.  It was either up or down.  Either

12   you're reinstated or you're not reinstated.  And the Dealer

13   Arbitration Act told arbitrators they had seven factors,

14   nonexclusive, to take a look at for purposes of making that

15   determination.  And there was specific and very, very tight

16   deadlines that were put in for the arbitration.  You had to act

17   to ask for arbitration within forty days.  You had six months

18   to complete the arbitration.  The arbitrator had seven days to

19   make its ruling and that everything had to be done by July 14th

20   because the legislative intent of the statute which was to try

21   to create what Congress thought was a better balance between

22   the rights of dealers and the rights of the manufacturers, the

23   legislative intent was we need to have a streamlined process

24   that would not otherwise get bogged down with discovery or

25   litigation.  We both quote -- at least our reply quotes from

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 45 of 126

Page 24

```
1    the legislative history to the statute which is fairly sparse.

2    But the legislative history refers to the need to have

3    something streamlined and quick and the statute does not

4    provide for judicial review unlike the Federal Arbitration Act

5    in Section 9, 10, 11 and 12.  There are specific provisions

6    which talk about what a Court can do or not do in connection

7    with something that is governed by the FAA.  This clearly is

8    not governed by the FAA.  The FAA governs agreements where the

9    parties had agreed to arbitrate.  This was not one of those

10   situations.  This was a case where Congress had imposed the

11   obligation or the right for the dealer to seek arbitration

12   under specific circumstances but it wasn't a contractual

13   obligation that the parties had bargained for.  So the FAA,

14   which is leadered (sic), the cases relating to the FAA, the

15   judicial review relating to an FAA, which my adversary recites

16   in his papers, they really have no relevance here.  And I think

17   Your Honor was right.  There is no judicial review.  And that

18   was, I think, intentional.  And I think my adversary says where

19   is it that you can never get judicial review?  You know,

20   Congress passes a statute not -- imposing a new right and then

21   says that's -- we'll have a procedure to implement that statute

22   and that's it.  And there's no more judicial review.

23           THE COURT:  Well, pause, Mr. Steinberg, because I'm

24   wondering if that proves too much.  Suppose the arbitrator's

25   taking bribes.  And suppose the forum is this court and the
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 46 of 126

Page 25

```
 1    dealer's been victimized by the arbitrator taking bribes.

 2    You're telling me that I can't look at that?

 3              MR. STEINBERG:  I'm not sure if the right remedy

 4    would have been to go to the AAA and say that there was an

 5    invalid arbitration and seek the remedy there to invalidate the

 6    results of the arbitration.  But --

 7              THE COURT:  So you're going to take that and -- bring

 8    it down and give it to the marshals and then you can return to

 9    the courtroom.

10              MR. STEINBERG:  But I will say, Your Honor, that the

11    hypothetical that you posed which is that if there was a

12    violation of what Congress had enacted because they had bribed

13    the arbiter of the resolution, it would seem to me that there

14    needs to be some kind of review.  And maybe it would be Your

15    Honor who has the review.  I'm not sure whether it would be the

16    AAA that would review it.  But it would seem to me in a bribe

17    circumstance that that would be the case.

18              But I think critical for what my adversary has argued

19    which is that he's raised the potential for the

20    constitutionality of the Dealer Arbitration Act because there

21    is no judicial review, I don't know where that argument goes

22    for him because the Dealer Arbitration Act was a right given to

23    the dealers to potentially seek reinstatement.  If you declare

24    the statute unconstitutional then they don't have that right.

25    If he's asking you to put in to the statute that which doesn't
```

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 47 of 126

Page 26

1    exist which is to, in effect, write the judicial review section

2    when Congress didn't write it, I don't think Your Honor has the

3    ability to do that.

4          And I don't think -- you know, they spend ten pages

5    of their brief saying how we didn't comply with provisions that

6    is the judicial standard under the Federal Arbitration Act.

7    And I would say to Your Honor that that's irrelevant because

8    that's not -- there is no standard of judicial review.  And you

9    can't pick something from another statute and say that's what

10   I'm going to use here in order to make it constitutional.

11         Now, there is situations where Congress has given a

12   right to a party and there is no judicial review.  We cited in

13   our papers the Switchmen case which was actually quoted in

14   Thomas.  And we specifically highlighted the language which

15   said that "A review by the federal district court of the

16   board's determination is not necessary to preserve or protect

17   that right."  Congress, for its reasons on its own, decided

18   upon the protection of the right which it created.  And if you

19   look at Thomas itself, they talked about the concept of where

20   Congress has written legislation where it asked an agency to

21   make a decision.  And the issue was if the agency did something

22   wrong, can it get judicial review.  And there are certain

23   statutes that provide that there is no judicial review.  So the

24   Thomas case when it was written referred to Medicare

25   reimbursement and said that an agency's review relating to

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 48 of 126

Page 27

```
 1    Medicare reimbursement is not subject to judicial review.

 2    So --

 3              THE COURT:  And Switchmen dealt with the Railway

 4    Labor Act?

 5              MR. STEINBERG:  Yes.

 6              THE COURT:  And it was at least Thomas that was the

 7    use of your "passum" if I recall.

 8              MR. STEINBERG:  Yes.  And I apologize for that, Your

 9    Honor.

10              So we have a situation here where there was a

11    legislative reason why things were done on a streamlined basis.

12    There is no language that talks about judicial review and there

13    is no issue I believe relating to constitutionality.  But if it

14    is, I don't think it gets them anywhere.  And it was nice that

15    they made this a central part of their oral argument when it

16    was relegated to a footnote in their brief which -- without any

17    real challenge other than just a throw-away that they question

18    whether it could be constitutional if there's no judicial

19    review.

20              Your Honor --

21              THE COURT:  At least it got your attention enough for

22    you to cover it from pages 8 through 10 of your reply.

23              MR. STEINBERG:  Yes, Your Honor, because I did think

24    it was an important issue and that Your Honor would want the

25    benefit of some briefing.  But I did not think that that was
```

MOTORS LIQUIDATION COMPANY, et al.

1   the center of the argument.

2           Similarly, you'll notice how their argument is

3   morphed because their papers said Your Honor didn't have

4   jurisdiction, didn't have core jurisdiction, didn't have

5   related jurisdiction, asked you to defer to the public policy

6   of the Federal Arbitration Act, to defer to an arbitration when

7   they weren't prepared to necessarily defer to arbitration.  And

8   now they, today, said well, we really didn't say you didn't say

9   you didn't have jurisdiction.  You just don't have exclusive

10  jurisdiction.  We think it may be concurrent jurisdiction.  So

11  they did move as well on that.

12          But I think, Your Honor, that the reason why you do

13  have exclusive jurisdiction and the reason why the wind-down

14  agreement is implicating is because there is no judicial review

15  of what the arbitrator did.  If there is no judicial review --

16  I think everybody agrees that the statute doesn't provide for

17  it explicitly.  If there isn't then what's left?  Because the

18  other thing that was critical as to the interplay between the

19  Dealer Arbitration Act and the wind-down agreement, the other

20  thing that's critical is that the Dealer Arbitration Act didn't

21  abrogate totally the wind-down agreement.  I think my

22  colleague, my adversary, has agreed that it didn't totally

23  abrogate it.  There are specific provisions that survive.  And

24  so, that if you have an arbitration which has been completed

25  because all the arbitrations had to be completed by July 14th,

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 50 of 126

Page 29

1    and that's it then what's left on the areas where there was no

2    reinstatement, the thumbs down for the Chevrolet dealership,

3    you're back to being governed by the wind-down agreement.  The

4    wind-down agreement provided that you couldn't sue New General

5    Motors.  That still applies.  There (sic) was abrogated solely

6    to the extent that the Dealer Arbitration Act allowed for this

7    binding arbitration remedy to be afforded to dealers who

8    availed themselves of the opportunity to seek arbitration

9    within forty days of the enactment of the Act.  Otherwise, the

10   wind-down agreement stayed in effect.  And the wind-down

11   agreement stayed in effect now for purposes for this entire

12   period of time that the Rally dealership was not entitled to

13   buy New General Motors vehicles because the wind-down provision

14   for that still stayed in effect.

15           THE COURT:  Mr. Steinberg, do you agree that if New

16   GM hadn't complied with the arbitrator's award on the three

17   brands for which the arbitrator ruled in Rally's favor that

18   Rally could have come back here to enforce it with or without

19   the no-sue clause?

20           MR. STEINBERG:  Yes.

21           THE COURT:  All right.

22           MR. STEINBERG:  Yes.  I agree with that because

23   there, the provision, I believe, is ancillary to the

24   arbitration decision.  They're looking to implement and enforce

25   the arbitration decision.  And I think that if it wasn't being

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 51 of 126

Page 30

```
 1    done since the arbitration is over, they do need to have some

 2    kind of remedy.  And they should be able to come back to this

 3    Court.  But I do think it's this Court because I do think that

 4    part and parcel of the reason why there was exclusive

 5    jurisdiction language in the sale order, exclusive jurisdiction

 6    in the wind-down agreement that everybody who signed the wind-

 7    down agreement signed was that New General Motors had bargained

 8    for as part of the sale process -- had bargained for one forum,

 9    this Court who had approved the transaction, to handle anything

10    relating to an enforcement or dispute relating to these

11    agreements.  And to take it more broadly, to handle anything

12    that related to, in effect, the assignment and the continuation

13    of the dealership network from Old GM to New GM.  And I think

14    that that was what New GM had bargained for here.  And I think

15    Rally understood that because they not only were passive on the

16    entry of the sale order but in the wind-down agreement they

17    specifically recognized the exclusive jurisdiction.  And that

18    didn't change.  That didn't change.  That's what New GM had

19    bargained for.

20            The issue, Your Honor, with regard to judicial

21    estoppel I think could be easily dealt with by the fact that in

22    the case where New General Motors went to a court, it was to

23    enforce a settlement agreement.  The Dealer Arbitration Act

24    specifically says that if you're going to settle then there is

25    no arbitration and that the arbitrator has nothing to do.  So
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 52 of 126

Page 31

1   when parties settle, they take themselves out of the Dealer

2   Arbitration Act totally based on the expressed language of the

3   statute.  Then if someone --

4          THE COURT:  Why didn't New GM come to me to enforce

5   that order?

6          MR. STEINBERG:  We could have, for sure, Your Honor.

7          THE COURT:  I'm sorry?

8          MR. STEINBERG:  We could have, for sure, done that.

9          Your Honor, the issue with regard to Rule 48(c) of

10  the Commercial Arbitration Rules, we did indicate that we

11  weren't fully adopting the Commercial Arbitration Rules.  The

12  Commercial Arbitration Rule, Rule 48(c), is for purposes of

13  seeking enforcement of an arbitration award and they are not

14  seeking enforcement of an arbitration award.  And the AAA rules

15  itself say that the rules will be applied only to the extent

16  that it's not inconsistent with the Dealer Arbitration Act.

17  And we believe to try to, in effect, implicitly put in a

18  judicial review concept through a rule that says that you can

19  move for enforcement where we had protested it is inconsistent

20  with the Dealer Arbitration Act which didn't provide for

21  judicial review.

22          Now, the fact that -- I think my adversary pointed

23  out to the fact that October 31 is fast approaching.  And under

24  the wind-down agreement, the Chevrolet dealership will be

25  terminated.  And the new dealership that New GM had promised to

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 53 of 126

                                                                    Page 32

```
 1    -- an entity that used to be a Saturn dealership that operated

 2    in the area is going to be given.  And there are rights that

 3    people have because of that unless something happens in this

 4    court or another court.  But there is this ticking deadline

 5    that is there.  And they never -- they filed a motion -- a

 6    complaint in August.  They themselves have never moved for an

 7    injunction or for a stay or to try to continue the October 31

 8    deadline.  And I don't think that they can.  I think that they

 9    had agreed that it would get terminated.  I think even the

10    Dealer Arbitration Act specifically wanted finality to these

11    issues and to have finality because it's not only New GM's

12    rights that are being implicated but we've had a dealer who's

13    effectively been on hold since December of 2009 waiting to go

14    in on November 1st.  And their rights will be implicated as

15    well.

16            I think that, Your Honor, that with regard to the

17    interplay between the wind-down agreement and the Dealer

18    Arbitration Act -- the two most critical things is that there

19    is no judicial review that's specified in the statute.  And

20    because there's no judicial review, you're left with a wind-

21    down agreement that had not been, in effect, modified at all

22    except for the overlay of allowing for binding arbitration on a

23    right given by Congress.  And therefore, the commencement of

24    the lawsuit after the award had been given by the arbitrator is

25    a violation of the wind-down agreement and the provisions that
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 54 of 126

Page 33

```
 1    say that you should not sue and you should not interfere.

 2            I will note, because it hasn't been said, that the

 3    arbitrator gave his award in June and New General Motors gave a

 4    letter of intent for the other four dealerships that the

 5    arbitrator said had to be reinstated.  And Rally has been

 6    reinstated for those other four dealerships.  And this --

 7            THE COURT:  Oh.  So when I said it won three-

 8    quarters, actually it won four-fifths?  Or with respect to four

 9    of the five franchises that it once owned?

10            MR. STEINBERG:  That's correct.  So they are

11    operating right now.  And they got their letter of intent which

12    was supposed to be given by New General Motors, I think, with

13    ten days of the arbitration award.  It was only after that they

14    were well down the road to getting the four in place that they

15    decided to sue for the fifth.  And, Your Honor, our brief tries

16    to strip away the layers.  And to some extent when you orally

17    argue, you try to figure out how much of all the arguments you

18    have to make.  But this was even governed by the Federal

19    Arbitration Act.  I'm not even sure whether -- what they're

20    arguing about would be subject to any kind of judicial review

21    anyway.  We do set forth in our brief the arguments that we

22    think show that there was -- that the arbitration award was

23    consistent with what should have been done because there was

24    not one franchise agreement but there were five franchises

25    agreement.  And it's been dealt with because they've taken four
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 55 of 126

Page 34

1    of the five and we still have one that's outstanding.  And we

2    point to the language of the sales agreement which talk about

3    "General Motors separately on behalf of its division

4    identified" and talk about the "separate" nature of each of

5    these agreements.  The wind-down agreements uses the plural,

6    doesn't use the singular for purposes of talking about these

7    agreements.  And not to be overly cute about the argument, but

8    if they were right that this was one agreement and not five

9    agreements and the arbitrator found a taint with regard to one

10   portion of an integrated agreement then the result would be the

11   same as if it was an executory contract under the Bankruptcy

12   Code with five lease schedules as part of one integrated

13   agreement where the debtor couldn't perform all five.  It's an

14   all-up or nothing.  And if that's the case, there would not

15   have been a reinstatement for all five instead of one.  That's

16   the natural outflow of what their argument is which is that if

17   you've got a taint on an integrated agreement which is

18   nonsoluble then the whole agreement falls not that the whole

19   agreement becomes good.  And so, what you have here is someone

20   who got the benefits of four dealerships.  Then after they got

21   the four dealerships on the reinstatement decided to sue and is

22   now making an argument which is I want my cake, I want to eat

23   it, too, in the context of a statute that doesn't provide for

24   this type of relief.

25              Your Honor, if you'd just bear with me just one

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 56 of 126

Page 35

1   second, I just want to check my notes to see if I --

2         THE COURT:  Sure.

3         MR. STEINBERG:  -- have answered your questions.

4    (Pause)

5         MR. STEINBERG:  I think, Your Honor, when you said --

6   you asked my adversary the question did the Dealer Arbitration

7   Act trump the wind-down agreement for all purposes and he

8   answered no that it was incumbent on you to try to make the two

9   consistent and coherent that he was essentially making the

10  argument that I'm asking Your Honor to, as well, which is that

11  the wind-down agreement had vitality and it was modified for

12  purposes of the covenant not to sue solely for the purposes of

13  doing the binding arbitration procedure consistent with the

14  statute that Congress had subsequently passed.  Thank you.

15        THE COURT:  Okay.  Thank you.  Mr. Snyder, reply?

16        MR. SNYDER:  Your Honor, to first argue what is a

17  covered dealership, what is a not covered dealership to use

18  executory contract analyses versus using franchise law

19  analyses, using California law versus Title 11 law, that's

20  another reason why the California court has jurisdiction

21  because, again, what Mr. Steinberg is doing is saying well,

22  look, Judge, you have jurisdiction.  You can apply bankruptcy

23  law between two nondebtor parties as to what means a covered

24  dealership under the Federal Arbitration Act.  And any of the

25  600 dealers who applied for arbitration under GM could do that

MOTORS LIQUIDATION COMPANY, et al.

Page 36

```
 1    as well.  And it seems to me that if Congress meant to give
 2    dealers and the AAA jurisdiction over these acts then by a
 3    natural extension, he meant them to be final and binding.
 4    Counsel for New GM sort of takes the car and then he hits a
 5    brake.  He says the covenant not to sue was abrogated by the
 6    Dealer Arbitration Act but it stops there, that there is no
 7    right after the arbitration.  And that is not true and also
 8    doesn't address the question of federal question jurisdiction
 9    that the federal court can possess jurisdiction over.
10            And he raised the Thomas case, Your Honor, but the
11    statute involved in the Thomas case is the Federal Insecticide
12    Fungicide and Rodenticide Act.  In that statute, Your Honor,
13    and I cite to Section 136a(c)(1)(F)(iii) of Title 7:  "The
14    FIFRA arbitration scheme allows judicial review of 'the
15    findings and determinations of the arbitrator' only in the
16    instance of fraud, misrepresentation or other misconduct by one
17    of the parties to the arbitration or the arbitrator.  This
18    provision protects against arbitrators who abuse or exceed the
19    powers or willfully misconstrue their mandate under the
20    governing law."  So Title 7 allowed for judicial review or
21    allowed for a response to Your Honor's question as to what
22    happens when an arbitrator acts inappropriately.  Those last
23    quotes, by the way, Your Honor, were the Thompson v. Union
24    Carbide, 473 U.S. at 592.
25            Here there's nothing.  There's no ability for Rally
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 58 of 126

Page 37

1    or any of the 600 dealers to get redress as a direct result of

2    the arbitrator's conduct no matter what it is.  And so what

3    they're saying is everybody, come back here.  And we just don't

4    believe that's appropriate under the case law.  It's not

5    appropriate under Union Carbide.  It's not appropriate under

6    Vaden.  And it's not appropriate, we would suggest, under the

7    Second Circuit law.

8              Your Honor, the statute is less than a year old.  Of

9    course, the cases we need to use are cases by analogy which are

10   the FAA statutes.  So under the FAA -- I'm sorry -- line of

11   cases, there are agreements.  Agreed.  But that doesn't mean

12   the arguments aren't consistent because the AAA rules assume

13   that if you're a party to the arbitration you've agreed to

14   consent to the outcome.  In the Second Circuit case, in the

15   Idea Nuova case, the statute is silent just like the statute --

16   I'm sorry -- the agreement is silent just like the statute here

17   is silent.  AAA rules apply and we're not saying anything else.

18   And the Second Circuit said if the AAA rules apply then

19   whatever the arbitrator says is final and binding and the

20   unhappy party can then go to the district court and try to

21   confirm that arbitration.  Makes sense.  That's all we're

22   seeking to do here.  The statute is silent.  To suggest that we

23   have no right of judicial review of an arbitration belies the

24   fact that every stage plus Title 9 allow for confirmation,

25   vacature, review of arbitrations.

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 59 of 126

Page 38

1          Now, Mr. Steinberg is right.  The statute 48(c) only

2     speaks to judgment.  And maybe the California district court'll

3     say you can only seek to confirm the judgment.  You can't seek

4     to vacate it.  You can't seek to modify it.  And interprets

5     Rule 48(c) that way as counsel did.  But why can't Rally have

6     the chance to allow California law to do that?

7          Your Honor, this is important.  I'd like to go

8     through the wind-down agreement and the jurisdiction sections

9     because they are not inconsistent with the relief we're seeking

10    here.  This is from GM's own motion.  "The Court retains

11    exclusive jurisdiction to enforce and implement the terms of

12    this order, the MSPA," which is the wind-down agreements, "and

13    each of the agreements executed in connection therewith,

14    including the deferred termination agreement in all respects

15    including, but not limited to, retaining jurisdiction to

16    resolve any disputes with respect to or concerning the deferred

17    termination agreements."

18         There's no dispute regarding the deferred termination

19    agreements at all.  There's a dispute as to whether Chevy is a

20    covered dealership under the Dealer Arbitration Act.  We take

21    no position as to whether this Court -- the sale order speaks

22    for itself.  Section 13 of the wind-down agreement.

23    "Continuing jurisdiction.  By executing this agreement, Dealer

24    hereby consents and agrees that the bankruptcy court shall

25    retain full complete and exclusive jurisdiction to interpret,

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 60 of 126

Page 39

1    enforce and adjudicate disputes concerning the terms of this

2    agreement and any matters related therein and survives

3    termination."

4           Absolutely.  There's an October 31st deadline.  The

5    wind-down agreement sets that out.  We're bound to the extent

6    we're bound under the wind-down agreement.  We've asked GM to

7    extend the October 31st date because of the late hour.  They've

8    refused.  So now we have to deal with the October 31st deadline

9    or get an extension by a court of competent jurisdiction.

10          But we're not addressing any of those provisions.

11   Our -- we are seeking jurisdiction based on the Dealer

12   Arbitration Act and not on the sale order and not on the wind-

13   down agreements.  This Court still has jurisdiction over those.

14          Your Honor, the argument about timing -- no good deed

15   goes unpunished.  They answered on September 7th and came into

16   this court on September 10th.  And then when we tried to get a

17   hearing date as quickly as possible, we agreed we wouldn't go

18   to the court in California to seek a stay if we could get a

19   hearing date on October 4th.  And we've abided by our agreement

20   and we're anxiously awaiting whatever the Court's determination

21   is going to be.  But we deferred to this Court first because

22   that's where New GM went.  And nobody delayed here.  As soon as

23   the motion was filed, we sought a quick hearing and we got one

24   thanks to chambers and Your Honor's courtesy.  But -- I believe

25   I'm finished.

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 61 of 126

Page 40

```
 1              THE COURT:  All right.  Very well.  All right.  We're

 2     going to take a recess.  I don't know how long it's going to

 3     take me.  But you needn't be here before 4:30.  And I'll come

 4     out with a ruling as soon thereafter as I can.  We're in

 5     recess.

 6          (Recess from 4:04 p.m. until 5:30 p.m.)

 7              THE COURT:  Have seats, please.  I apologize for

 8     keeping you all waiting.  In these jointly administered cases

 9     under Chapter 11 of the Code, General Motors LLC, which I'll

10     normally refer to as New GM, moves for an order enjoining Rally

11     Dealership from interfering with New GM's ability to, as it was

12     put, to reform its dealership platform pursuant to a previous

13     order I entered, from vacating or modifying an arbitration

14     decision and from pursuing that effort in California district

15     court.

16              Rally was a GM dealership that was being closed

17     pursuant to an agreement that was acquired by New GM from Old

18     GM.  The Dealer Arbitration Act, which was subsequently signed

19     into law, provided an opportunity for dealers such as Rally to

20     become reinstated as New GM dealers, if they were successful in

21     a binding arbitration proceeding, with New GM.

22              Rally won its arbitration proceeding with respect to

23     three of its brands but not its Chevrolet brand.  Rally is

24     attempting to have this arbitration award modified or vacated

25     in a federal district court in California.  New GM argues that
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 62 of 126

Page 41

 1    there is no right to modify the arbitration award and,

 2    additionally, that my Court is the only forum that can hear

 3    this issue.  In addition, New GM argues that Rally has been

 4    interfering with New GM's establishment of an alternate Chevy

 5    dealership in violation of its agreement with New GM.

 6         While I understand the difficulties faced by dealers

 7    such as Rally as a consequence of the events of last year, the

 8    motion must be granted.  The following are my findings of fact

 9    and conclusions of law in connection with this determination.

10         As facts, I find that on July 5th, 2009, I entered

11    the 363 sale order.  That sale order authorized and approved a

12    master purchase agreement dated as June 26, 2009, often

13    referred by the parties as the MPA, between Old GM and an

14    entity that later became New GM.  Pursuant to the MPA and the

15    363 sale order, on July 10, 2009, New GM purchased

16    substantially all of Old GM's assets free and clear of Old GM's

17    liabilities except as expressly assumed by New GM under the

18    MPA.

19         As part of the transactions that were approved under

20    the 363 sale order, Old GM entered into and assigned to New GM

21    certain deferred termination agreements, which we refer to as

22    wind-down agreements, which had originally been entered into

23    between Old GM and certain of its authorized dealers.  These

24    agreements had been offered to dealers as an alternative to

25    outright rejection of their dealer sales and service

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 63 of 126

Page 42

1    agreements, which we sometimes refer to as dealer agreements

2    under the rights afforded to debtors to reject executory

3    contracts under 365 of the Code.  The wind-down agreements

4    provided, among other things, that in exchange for certain

5    payments and other consideration, the affected dealers' dealer

6    agreements would terminate no later than October 31, 2010.

7            In December 2009, Congress enacted into law a new

8    statute called the Dealer Arbitration Act which gave wind-down

9    dealers such as Rally the opportunity to seek reinstatement to

10   the GM dealer network through a binding arbitration process.

11   Rally timely filed a request for arbitration and an arbitration

12   was held in May before an arbitration -- arbitrator in

13   California.  On June 8, 2010, the arbitrator issued an award

14   directing New GM to reinstate Rally's Buick, Cadillac and GMC

15   dealer agreements but ruling that Rally's Chevrolet dealer

16   agreement should not be reinstated.  New GM is now currently

17   attempting to establish another Chevrolet dealership in the

18   Palmdale, California area where Rally is located.  During this

19   process, the owner of Rally has continued to lobby New GM to

20   reinstate his Chevy dealership.  After various proceedings, New

21   GM determined to relocate the Chevy dealership to Lancaster,

22   California which triggered an action by Palmdale against the

23   city of Lancaster in the Superior Court of California.

24   Palmdale claims that the terms of an agreement between

25   Lancaster and the new Chevy dealership violated a state law

Page 43

1    that prevent cities from engaging in bidding wars to lure auto

2    dealers and other large sales techs generating businesses to

3    relocate them from one city to another.  The owner of Rally,

4    one Mr. Mayle, provided an affidavit on behalf of Palmdale in

5    that action.  New GM argues that Rally, through its agent, Mr.

6    Mayle, is providing assistance in litigation against New GM and

7    is interfering with the establishment of a new dealership in

8    violation of the wind-down agreement.

9           Rally argues that the arbitrator was bound by the

10   Dealer Arbitration Act to either reject or accept the entire

11   dealer contract and that the arbitrator exceeded his authority

12   by not reinstating the Chevy brand as well.  Thus, on August

13   13, 2010, Rally filed suit in California district court seeking

14   to vacate or modify the arbitration award and to prevent

15   termination of his Chevy dealer agreement though presumably

16   wishing to maintain intact the other aspects of the

17   arbitrator's award which maintained his dealerships for the

18   other three brands, Cadillac, Buick and GMC.

19          Rally alleges, in substance, that the arbitrator's

20   award in not giving him a complete victory was erroneous as a

21   matter of law in its failure to accept its position that all of

22   the separate brands had to be considered together in the

23   species of double or nothing.  He has not alleged that the

24   arbitration award was the result of bribery, fraud, corruption,

25   manifest disregard of settled law or any other ground that

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 65 of 126

Page 44

1    would be a basis for vacating an arbitration award if the

2    Federal Arbitration Act applied.

3             I'll now turn to my conclusions of law.  Turning

4    first to jurisdiction and within the jurisdiction umbrella,

5    first, to subject matter jurisdiction.  First, it's plain that

6    the district courts and bankruptcy courts in this district have

7    subject matter jurisdiction over this controversy.  The

8    applicable subject matter jurisdiction statute is 28 U.S.C.,

9    Section 1334, the section of the judicial code that follows the

10   judicial code sections relating to federal question, diversity

11   and admiralty jurisdiction.  1334 deals with subject matter

12   jurisdiction with respect to bankruptcy cases and proceedings.

13   That section provides, in relevant part, subsection (b), with

14   exceptions not relevant here, "the district courts shall have

15   original but not exclusive jurisdiction of all civil

16   proceedings arising under title 11, or arising in or related to

17   cases under title 11".

18            Rally addresses the issue of "related-to"

19   jurisdiction under 1334 but that isn't the relevant subject

20   matter jurisdiction issue.  Rather it's the "arising in" prong

21   of 1334 where New GM relies on an order I entered last year in

22   this case under which this Court retained exclusive

23   jurisdiction in paragraph 71(f) to "resolve any disputes with

24   respect to or concerning the deferred termination agreements".

25   The deferred termination agreements, which as I noted are also

MOTORS LIQUIDATION COMPANY, et al.

Page 45

1    referred to as the wind-down agreements, included provisions by

2    which dealers and New GM contractually agreed that this Court

3    retained full and exclusive jurisdiction to enforce them as

4    well as to specifically preclude Rally and other wind-down

5    dealers from filing suit against New GM and taking any action

6    to interfere with New GM's establishment of additional

7    dealerships.  I'll note parenthetically that there was nothing

8    in the Dealer Arbitration Act to modify the subject matter

9    jurisdiction of the federal courts nor to modify any of my

10   earlier orders other than to provide what amounted to a defense

11   to enforcement of the deferred termination agreements if and to

12   the extent that a dealer prevailed in the arbitration process

13   for which Congress provided.

14         Rally did prevail in the arbitration process with

15   respect to three of its franchises and, presumably, would like

16   to avail itself and enforce that part of the arbitration award.

17   But it wishes to upset the arbitration result as to which it

18   didn't prevail and used the hoped-for alternative result, that

19   is, a reinstatement of its Chevy franchise, as a defense to its

20   duties under the deferred termination agreement which duties

21   otherwise obligated it to give up its Chevy dealership, that

22   being a classic "dispute with respect to or concerning the

23   deferred termination agreements".

24         Now, Rally may have come to an agreement by the end

25   of oral argument.  But in any event, I so rule that this Court

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 67 of 126

Page 46

1    does have subject matter jurisdiction over this controversy.

2            Similarly, I find that this is a core matter.  Under

3    28 U.S.C., Section 157(a)(2)(N), core matters include, with

4    exceptions not relevant here, orders approving the sale of

5    property.  The 363 sale order and my approval of the wind-down

6    agreement documented the outcome of those core proceedings.

7    And a proceeding such as the motion now before me which seeks

8    relief predicated on a "retained jurisdiction" clause in my

9    order resolving a core matter is a core matter as well.  The

10   decision in Eveleth Mines, 312 B.R. at pages 644 to 645, is

11   directly on point.  In that case, the Court noted the motion

12   that barred directly and necessarily comes out of a core

13   proceeding in this case, the debtors' motion for authority to

14   conduct a sale of assets of the estate free and clear of liens.

15   Court proceedings under 28 U.S.C., Section 157(b) fall under

16   the "arising under" or "arising in" jurisdiction of 28 U.S.C.

17   Section 1334(b).  Then the enforcement of orders resulting from

18   core proceedings are themselves considered core proceedings.

19           The Second Circuit has held similarly.  It's held

20   that bankruptcy courts are empowered to enforce the sale orders

21   that they enter and to protect the rights which were

22   established by the sale order.  See Millenium Seacarriers, 419

23   F.3d at 97; and Petrie Retail, 304 F.3d at 229-230.  Petrie

24   Retail is particularly instructive because it also dealt with a

25   dispute between two nondebtors addressing rights that were

MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 68 of 126

Page 47

1    created by the sale order.  Though Petrie Retail was not

2    unanimous, it's no less binding on the lower courts for that

3    reason.

4            Now there can be no dispute what the sale order

5    actually said.  Nor can there be any dispute as to the wind-

6    down agreement said.  Section 13 of the wind-down agreement had

7    that continuing jurisdiction clause providing that the dealer

8    hereby consented to and agreed that the bankruptcy court would

9    retain full complete and exclusive jurisdiction to interpret,

10   enforce and adjudicate disputes concerning the terms of this

11   agreement and any other matter related thereto.

12           Here and to the extent Rally was successful in the

13   arbitration, of course that would be a defense to win any

14   effort to make it terminate its agreement.  And to the extent

15   that it wishes to either enforce the agreement as it has the

16   right to do with the three franchises for which it prevailed or

17   to defeat the agreement with respect to the one agreement where

18   it lost, in any event they concern the terms of the agreement

19   and, in particular, any other matter related thereto.  I don't

20   think that's subject to serious dispute.

21           Finally, I've considered and ultimately rejected

22   Rally's suggestion that I exercise discretionary abstention on

23   that.  Plainly, there is a right to invoke discretionary

24   invention under 1334(c)(1) of the judicial code.  That's 28

25   U.S.C. Section 1334(c)(1) which provides that nothing in this

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 69 of 126

Page 48

1   section prevents a district court in the interest of justice or

2   in the interest of comity with state courts or respect for

3   state law from abstaining or hearing a particular proceeding

4   arising under Title 11 or arising in or related to a case until

5   Title 11.  And while it speaks principally of state courts and

6   state law, I accept for the purposes of this analysis that we,

7   bankruptcy courts have the power to abstain in favor of other

8   federal courts when the circumstances so warrant.  But I don't

9   believe that the factors here so warrant.  Standards that have

10  been articulated for the exercise of discretionary abstention

11  include of the efficient administration of the bankruptcy

12  estate, comity, the degree of relatedness or remoteness of the

13  proceeding to the main bankruptcy case, the existence of the

14  right a trial and prejudice to the involuntarily removed party.

15  Some of these, obviously, come in removal cases.

16          Here, I think the factor that is most important is

17  the effect of the effect deficient administration of the

18  bankruptcy estate.  This was a procedure that needed to be

19  resolved quickly as evidenced by the very tight time frames

20  that Congress imposed.  As important or more so, the bidders of

21  the world that come in to bid for assets in the bankruptcy

22  court must have knowledge that bankruptcy courts will stand by

23  the documents as they were then drafted to give the parties to

24  those agreements the predictability in their relations for

25  which they are binding and upon which they justifiably rely.

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 70 of 126

Page 49

1    The Court in Eveleth Mines explained "as applied to a sale free

2    and clear of liens, there are also good policy reasons for

3    making a derivative core proceeding classification.  Active

4    bidding on assets from bankruptcy estates will be promoted if

5    prospective purchasers have the assurance that they may go back

6    to the originally forum that authorized the sale for a

7    construction or clarification of the terms of the sale that it

8    approved.  Relegating post-sale disputes to a different forum

9    injects an uncertainty into the sale process which would dampen

10    interest and hinder the maximization of value.  A purchaser

11    that relies on the terms of a bankruptcy court's order and

12    whose title and rights are given life by that order should have

13    a forum in the issuing court."  That is very strong guidance

14    that suggests that a Court, like me, should not abstain in

15    favor of another jurisdiction.

16         Similarly, comity is a factor that I would take into

17    account if there were, as contrasted to here, strong state law

18    concerns.  But here, of course, there are not.  I, no less

19    than a district court, either in New York or California, can

20    determine that which is just in determining whether or not to

21    enforce or, as more relevant here, to undercut an arbitration

22    award.

23         The degree of relatedness or remoteness of the

24    proceeding to the main bankruptcy court is subject to a double

25    entendre.  On the one hand, this is not going to affect the

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 71 of 126

Page 50

1    assets and order of its liquidation in court.  But the factors

2    articulated in Eveleth Mines likewise cause Courts here to be

3    slow to abstain because giving purchasers of assets the comfort

4    that their needs and concerns are going to be addressed is

5    pretty important.

6            I consider the existence of the right to a jury trial

7    inapplicable because I assume that this would be decided

8    without a jury trial in either events and I also consider

9    prejudice to the involuntary removed party under the facts of

10   this case.

11           So for all of these reasons, I decline to exercise

12   discretionary abstention.

13           Now turning to what I should do with this controversy

14   before me.  Both sides now seem to agree that the Federal

15   Arbitration Act doesn't apply because it implements contractual

16   agreements to arbitrate.  And here, the right to compel

17   arbitration comes not from a contract but from the Dealer

18   Arbitration Act itself.  And it also now appears to be

19   undisputed that the Dealer Arbitration Act doesn't provide for

20   judicial review of arbitration awards issued after the

21   mechanisms for which the Dealer Arbitration Act provides.

22           Nor do I think that I can or should find an applied

23   right to judicial review under that statute.  First, as you

24   know from reading many earlier decisions that I've issued, I

25   start with textural analysis where I note the significant

MOTORS LIQUIDATION COMPANY, et al.

Page 51

1   absence of such a provision when federal statutes routinely

2   provide for rights to federal -- to judicial review when that

3   is the congressional intent.  If I were to imply such a

4   provision here that would be a species of judicial legislation.

5   Second, assuming without deciding that I could appropriately

6   look at legislative history on a matter where the statute is

7   not in any way ambiguous, judicially in grafting rights under

8   that statute would be particularly inappropriate when they'd be

9   inconsistent with the congressional desire to establish this

10  mechanism to avoid the excessive costs and delays of litigation

11  and to impose tight deadlines to get the arbitration process

12  completed.

13          Nor can I accept Rally's argument that New GM

14  conceded a right to judicial review by reason of its

15  willingness to proceed under the AAA's commercial arbitration

16  rules.  In responding to Rally's arbitration demand, New GM

17  expressly stated that it did not waive any objections it might

18  have to the arbitration or to any of the AAA's commercial

19  arbitration rules including, in particular, where such rules

20  would be inconsistent with the provisions or purposes of the

21  Dealer Arbitration Act.  For that same reason, I can't find a

22  waiver on the part of New GM of its rights based on a failure

23  to protest again after its initial reservation of rights was

24  put on the record.

25          Then even if New GM had agreed to AAA arbitration

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 73 of 126

Page 52

1  rules, the arbitration rules called for a mechanism to enforce

2  an award not to attack it.  Those rules provided that parties

3  to an arbitration under these rules shall be deemed to have

4  consented the judgment upon the arbitration award may be

5  entered in any federal or state court having jurisdiction

6  thereof.  See Rule 48(c) of the AAA Commercial Rules quoted at

7  paragraph 29 of the Rally brief.

8          But that language conveys a right to enforce the

9  arbitration award not to attack it.  For example, if New GM had

10 failed notwithstanding the arbitration award that Rally doesn't

11 complain about to let Rally keep the three franchises the

12 arbitrator said Rally could keep, Rally could have, at least

13 arguably if not plainly in my view, come back to me and say

14 make New GM do what the arbitrator said it should do.  But this

15 is the exact opposite of what we have here and one that's not

16 authorized by the federal statute.

17         As I indicated in oral argument, and I think both

18 sides agreed, the reasonable course for a judge in my position

19 would be to construe the Court's earlier order and the

20 subsequently enacted federal legislation to achieve as much

21 harmony as possible and to honor the congressional intent to

22 the extent that the federal legislation trumped my earlier

23 order.  But it would also be appropriate in my view to honor

24 the congressional intent only to the extent that the federal

25 legislation trumped my earlier order.  Congress did say, of

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 74 of 126

Page 53

1    course, with respect to providing for a defense to enforcement

2    of the wind-down agreements with respect to any areas where the

3    arbitrator ruled in the dealer's favor.  And I think that if

4    New GM had failed to honor the arbitrator's award, as I

5    indicated a moment ago, I'd almost certainly enforce it.  But

6    that is the way by which we'd maintain harmony between my

7    earlier order and the new Dealer Arbitration Act providing for

8    the rights of dealers to invoke the arbitration mechanism in

9    the fashion for which Congress provided.  It doesn't provide

10   for a blank check from me to rewrite the Dealer Arbitration

11   Act.

12           Nor do I think that Rally can get around what is, in

13   essence, an effort to achieve a quasi-appellate review of the

14   arbitration award by saying that it's asking the California

15   district court to make a federal question type determination

16   under the Dealer Arbitration Act.  That might be the case if

17   Congress hadn't established the arbitration mechanism and if it

18   had conferred on the district court's jurisdiction to decide

19   issues as to what is or is not a dealership franchise.  But the

20   whole point of the statutory scheme was that New GM and dealers

21   would proceed by arbitration.  And while, if New GM had refused

22   to arbitrate in the first place, I think that at least I would

23   have had jurisdiction to order New GM to do so.  But now that

24   each of New GM and Rally have engaged in the arbitration

25   process, presumably without any Court forcing either to do so,

MOTORS LIQUIDATION COMPANY, et al.

Page 54

1    we can't make the underlying arbitration award evaporate.  We

2    can only consider the circumstances, if any, under which the

3    arbitration award is subject to judicial review.  And I've

4    already noted, of course, that the statute doesn't provide for

5    such review.

6          Now, in that connection, I do not believe that under

7    the allegations we have here, this construction raises

8    constitutional issues.  I assume without deciding that

9    procedural due process requires a quasi-judicial determination,

10   like an arbitration, to be conducted by a decider who isn't

11   taking bribes or conspiring with one or another of the parties

12   or, though it's more debatable, who ignored facts or binding

13   authority on point.  If there were such a contention, I'd at

14   least have to consider whether I'd address it.  And I think

15   it's better to construe the Dealer Arbitration Act in such a

16   fashion as to avoid any constitutional issues that would

17   otherwise be relevant.

18         But I have no allegations of bribes, conspiracy,

19   fraud or even manifest disregard of existing law in the matter

20   before me.  Though, if there were such allegations, I think I'd

21   have to seriously consider whether there might be some implied

22   right to remedy such a wrong or that in exercising my exclusive

23   to jurisdiction to enforce or, impliedly, deny enforcement of

24   the deferred termination agreements, I should take such facts

25   into account.  But once more, I emphasize that I have no such

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 76 of 126

Page 55

1    allegations here.

2            In the absence of issues of that character, I think

3    that Thomas and, particularly, Switchmen, the two decisions by

4    the Supreme Court, apply to establish a rule that where an

5    arbitrator was given the power to resolve controversies under a

6    statute, that is, the Dealer Arbitration Act, where dealers and

7    New GM were given rights under that statute, reviewed by the

8    federal district courts or, of course, bankruptcy courts that

9    are arms of the district court and have the power to issue

10   final orders on core matters, of the arbitrator's determination

11   is not necessary to protect those rights.  I think I should

12   restate it because I put too many parentheticals in there.

13   Where dealers and New GM were given rights under the statute

14   reviewed by the federal district courts of the arbitrator's

15   determination is not necessary to protect those rights.  And,

16   of course, that's a paraphrase of Thomas, 473 U.S. at 588

17   quoting Switchmen where I'm analytically substituting the

18   Dealer Arbitration Act for the Railroad Labor Act and where I'm

19   substituting arbitrator's determination for board's

20   determination.

21           So I don't believe that judicial review is necessary

22   except in those cases not presented here, and here only

23   arguably, where there are allegations of fraud, corruption or

24   manifest disregard of an existing decision.  And for reasons I

25   described above, I think the exclusive jurisdiction provisions

MOTORS LIQUIDATION COMPANY, et al.

Page 56

1    of the sale order must stick.

2              First, of course, they're res judicata so they remain

3    binding in the absence of an appellate ruling changing them for

4    a legislative pronouncement that does so.  Second, I assume

5    without deciding that Congress could, if it wished, to have

6    taken my exclusive jurisdiction away just as Congress can take

7    away jurisdiction from the lower federal courts on other

8    matters.  But Congress didn't do that.  If we temporarily put

9    aside issues as to the right to judicial review and decisions

10   as to the merits, I assume, without deciding, that a California

11   district court could under its diversity jurisdiction have

12   subject matter jurisdiction over a controversy like this one.

13   But if it did, it would be foreclosed from exercising its

14   subject matter jurisdiction by reason of the final exclusive

15   jurisdiction order that I entered back in July of 2009.  This

16   is no different analytically than the effect that an exclusive

17   jurisdiction order would have over a state court proceeding.

18   Most state courts don't need an expressed grant of subject

19   matter jurisdiction to hear controversies before them.  They

20   normally have subject matter jurisdiction over whatever comes

21   through their doors.  But that doesn't mean that they can hear

22   controversies when a court order or other federal law, like

23   some federal antitrust laws or securities laws, give a federal

24   court exclusive jurisdiction.  Some federal statutes and the

25   order that I entered into are limits on jurisdiction that might

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 78 of 126

Page 57

1    otherwise exist.

2           Then Rally makes a judicial estoppel argument noting

3    that in a proceeding against another dealer, New GM brought an

4    action in federal court in California invoking diversity and

5    federal question jurisdiction, the latter under the Dealer

6    Arbitration Act, seeking to require that dealer to comply with

7    a settlement agreement and to drop its efforts to proceed under

8    the Dealer Arbitration Act.  Frankly, I'm not impressed with

9    the wisdom of that approach and, for the life of me, can't

10   understand why New GM sought relief that way instead of coming

11   to me.  But I don't think its effort in that regard rises to a

12   level of a judicial estoppel.

13          Rally depends on three statements to establish its

14   claim of judicial estoppel.  They are that the district court

15   would have jurisdiction under 28 U.S.C. 1332; that the district

16   court would have federal question jurisdiction under 28 U.S.C.

17   1331 because the controversy there allegedly arose under the

18   Dealer Arbitration Act; and that arbitrators would only be

19   empowered to decide whether or not the specific dealership

20   should be added back to the GM dealer network and that "all

21   other issues that arise under the Act must be addressed by a

22   Court of competent jurisdiction".

23          I don't think that any of these are particularly to

24   the point.  I've noted before that I assume that diversity

25   jurisdiction provides subject matter jurisdiction to the

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 79 of 126

Page 58

1   California court here.  But I've also ruled that that can't

2   trump the bankruptcy court's exclusive jurisdiction provision.

3   And while I disagree that there and here would be federal

4   question jurisdiction under the Dealer Arbitration Act for the

5   particular claim there and here asserted, even if there were

6   such federal question jurisdiction, once more, it wouldn't

7   trump the bankruptcy court's exclusive jurisdiction provision.

8   And I don't think there's anything particularly inconsistent

9   between New GM's third point in that Santa Monica action and

10  the points it's making here given the difference between the

11  facts in each of those cases and the context in which New GM

12  made its observations.  There, an attempt to enforce a

13  settlement agreement under which the namees (ph.) agreed to

14  dismiss their arbitration and New GM was saying that

15  arbitration wasn't appropriate at all rather than dealing with

16  the consequences of a completed arbitration in which there was

17  an arbitration award.

18        But even if there were, I'd see other problems in

19  invoking judicial estoppel as well.  As Rally notes, at page 23

20  in its brief, citing the Second Circuit's decision in Uneeda

21  Doll Company, "judicial estoppel prevents a party from

22  asserting a factual position in one legal proceeding that's

23  contrary to a position that it successfully advanced in another

24  proceeding".  Here, aside from the lack of inconsistencies, the

25  positions that have been taken are legal not factual.  And

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 80 of 126

Page 59

```
1    there, New GM didn't ask the Santa Monica Motors court to

2    interpret or enforce the wind-down agreement or, indeed, to

3    interpret or enforce the Dealer Arbitration Act at all.  The

4    latter point is why I think that New GM was just wrong when it

5    then tried to invoke the latter as a basis for 1331

6    jurisdiction.  I'm not sure what it was thinking.  But under

7    the standards of New Hampshire v. Maine, I find that the

8    positions are not clearly inconsistent and I cannot find any

9    perception that either the first or the second Court was misled

10   or that New GM would derive an unfair advantage here if not

11   estopped.

12           Finally, I think that even if judicial review were

13   available of the arbitrator's award, I couldn't vacate the

14   arbitrator's award here.  First, even if the arbitrator was

15   wrong, I don't see the arbitrator having been so wrong that the

16   error would warrant bucking fundamental principles limiting the

17   scope of review of arbitration awards.  There was no case

18   supporting Rally on this issue.  Rally is, in substance, asking

19   the Court or the Courts to, in essence, make new law on this

20   point.

21           And assuming, though for reasons I just noted, I

22   think this assumption is unwarranted, that I could provide ab

23   initio review of the arbitrator's decision, I think the

24   arbitrator got it right at least on the arbitrator's assumption

25   that he could rule one way with respect to the Buick, GMC and
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 81 of 126

Page 60

1   Cadillac franchises and differently with respect to the Chevy

2   franchise.  I think the dealer's sales and service agreements

3   have to be read separately.  Each stated that it was executed

4   by GM "separately" on behalf of its division identified in the

5   specific addendum.  And each dealer agreement provided that the

6   agreement for each line make is independent and separately

7   enforceable by each party and the use of the common form is

8   intended solely to simplify execution of the agreements.  So I

9   think that in light of that, Rally had five franchise

10  agreements under which the arbitrator's ruling focusing on each

11  brand separately would be more than merely reasonable.  If

12  otherwise warranted by the underlying facts, it would be right.

13          For the foregoing reasons, New GM is to settle an

14  order in accordance with the foregoing as quickly as reasonably

15  possible, that order to be settled on no less than two business

16  days' notice by hand, fax or e-mail.  I assume that New GM will

17  use one of those methods so I don't have to provide for an

18  alternative mechanism if it were to use snail mail.  The time

19  to appeal from this determination will run from the time of

20  that order's entry and not from the time of this dictated

21  decision.

22          All right.  Not by way of reargument, are there any

23  matters that I failed to address or any questions?

24          MR. SNYDER:  No, Your Honor.

25          THE COURT:  Hearing none, we're adjourned.  Good

MOTORS LIQUIDATION COMPANY, et al.

Page 61

1    evening, folks.

2              MR. SNYDER:  Your Honor, if I may just quickly?

3              THE COURT:  Yes, Mr. Snyder?

4              MR. SNYDER:  Your Honor, under Bankruptcy Rule 8005,

5    to the extent we seek a stay pending appeal and that would be a

6    necessary predicate for an award, for the reasons set forth in

7    our papers and in the oral argument, I request -- am making

8    this oral application for a stay of Your Honor's order pending

9    appeal.

10             THE COURT:  I'll accept the oral application for a

11   stay but we'll do it after a ten minute recess.  And each of

12   you can make your points at that point in time.

13             MR. SNYDER:  Thank you, Your Honor.

14        (Recess from 6:19 p.m. until 6:37 p.m.)

15             THE COURT:  Have seats, please.  Okay.  Mr. Snyder,

16   your application for a stay.

17             MR. SNYDER:  Thank you, Your Honor.  Your Honor, in

18   your decision, I believe the Court stated -- and I apologize if

19   I'm putting words in the Court's mouth -- that areas such as

20   manifest disregard for the law and fraud were not areas that

21   were alleged here.  And that might be properly the province if

22   not exclusively the province of the district court in

23   California.  And I would ask the Court to turn to, Your Honor,

24   Exhibit I which is Rally's petition to modify.  And in Exhibit

25   I, Your Honor, starting on page 10, whether appropriately or

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 83 of 126

Page 62

```
 1    not, Rally uses the Federal Arbitration Act as a guide as to

 2    what the district court can look to when determining whether it

 3    has jurisdiction.  And it starts at the bottom of page 10, and

 4    I'm quoting, "that the arbitrator in this matter was guilty of

 5    misconduct, misbehavior and exceeded his power, i.e., manifest

 6    disregard by ruling on a matter not submitted for determination

 7    and, (2)attempting to fashion a remedy not authorized by

 8    Section 747 of the Act."  And the argument goes on and a little

 9    farther down, it addresses corruption, fraud and undue means by

10    GM which, again, although it mirrors a section of the FAA, is

11    also grounds that Rally sought in the California district court

12    in order to vacate and modify the arbitration.  So I wanted the

13    record clear that the manifest disregard of the law, fraud and

14    the usual grounds that a party would seek whether under a state

15    statute or the federal arbitration statute to undo the

16    arbitration were pled by Rally in the California action.  And

17    so, I believe that those types of matters, and I believe Your

18    Honor pointed this out, matters of manifest disregard, fact and

19    law as well as fraud, corruption, mistake and exceeding powers

20    are matters that the California district court should hear --

21    can hear, excuse me, and should hear.

22            Your Honor, has basically said that you have sole and

23    exclusive jurisdiction even though the district court may have

24    jurisdiction over these matters.  And as respectfully submitted

25    that the Court may have concurrent jurisdiction but over
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 84 of 126

Page 63

```
 1    matters such as manifest disregard of the law that the federal

 2    district court in California also has jurisdiction over this

 3    matter.  And it's properly before it now.

 4          With respect to the federal question, again, Your

 5    Honor seemed to indicate in his decision that the sole and

 6    exclusive jurisdiction was given to the bankruptcy court as a

 7    result of the wind-down orders.  The Court did not address as

 8    we go through in detail, starting at page 28 of our objection,

 9    the decision of the Supreme Court in Vaden v. Discover Bank.

10    And I alluded to it, Your Honor, in the original argument.  But

11    the Supreme Court, overturning, I believe, four circuit courts

12    in Vaden, specifically held that they can look through the

13    petition to look at the parties' underlying substantive

14    controversy.  And, Your Honor -- and this is where the Court

15    and Rally might differ.  The substantive controversy, the

16    predicate of the petition arises under the Dealer Arbitration

17    Act.  It does not arise under the wind-down agreement because

18    it was created not from the wind-down agreement but the Dealer

19    Arbitration Act.  So I think there's compelling reasons as a

20    result of the recent Supreme Court case in Vaden to allow the

21    federal district court to hear a federal controversy arising

22    out of a federal statute.  And I've been practicing here for a

23    long time, Your Honor.  To the extent that it's an issue

24    involving a purchaser wanting to get its -- the value of what

25    it bargained for, we are not saying this Court does not have
```

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 85 of 126

Page 64

1    jurisdiction.  The Court has already held that it has arising-

2    to jurisdiction and it may well have that jurisdiction.

3             But I think I've pointed to at least two, the federal

4    question issue as well as the due process constitutionality

5    issue as to why the California district court has strong --

6    strong subject matter -- rights to exercise its subject matter

7    jurisdiction.  This is not a cursory -- a statute that only

8    cursorily affects the federal court, but it directly affects

9    the federal court.  And I believe, Your Honor, for those

10   reasons, the Court not entertaining or analyzing that and then

11   not seeing that the petition itself does seek -- does allege

12   manifest errors of law as well as fraud and improper powers by

13   the arbitrator that we would be successful on the merits.  And

14   we would be able to, Your Honor, obtain a stay of Your Honor's

15   order to the extent it would give us additional time to seek a

16   stay or to seek a determination in either the district court

17   here or in California.

18            THE COURT:  Well, I understand your desire to go to

19   the district court here.  I have more trouble trying to go to

20   the district court in California.  In fact, that walks, talks

21   and quacks a lot about the actions that Judge Weinfeld found so

22   objectionable in Teachers Insurance v. Butler before the Second

23   Circuit said what it said in Teachers Insurance v. Butler where

24   there was never to collaterally attack his judgment by going to

25   another court.  I mean, I don't claim to be infallible, Mr.

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 86 of 126

Page 65

1    Snyder, but it seems to me that if somebody's going to say that

2    I'm wrong, it's got to be either the district court or the

3    Second Circuit.

4         MR. SNYDER:  Your Honor, we were in front of the

5    California district court before GM was here.  We can always go

6    back to the filing of the bankruptcy case.  But this is clearly

7    different than Teachers.  Here, we have already commenced an

8    action in the California district court.  We're not forum

9    shopping and running to California because we don't like what

10   the Court is saying.  We deferred in this case because they

11   made the motion that we were going to defer to the bankruptcy

12   court before we took any action in California.  But we're not

13   looking around for a second bite of the apple.  We're already

14   in California.  Issues already been joined.  They've already

15   answered.  So we're at summary judgment stage anyway in

16   California and we have a ticking clock of October 31st.  That's

17   very different than going to another Court when you don't like

18   what this Court has to say, Your Honor.  I mean, I don't know

19   if we need to address that here.  But that's not what we're

20   looking to do.  It's for powers other than I to decide whether

21   we seek a stay here or we go back to the Court where there's

22   been a complaint and answer filed and seek a stay there.  I'm

23   being straightforward with the Court.  It's not our intent and

24   I know the Court might have discomfort with that, but the

25   action was already commenced there.  And that's what led to GM

MOTORS LIQUIDATION COMPANY, et al.

Page 66

1    coming here.

2         THE COURT:  Well, forgive me, Mr. Snyder.  The reason

3    that you can truthfully say it's discomfort is because I try

4    very hard to consume my anger and to maintain my demeanor.  I

5    fully understand the rights of any litigant before me to take

6    me up the street.  But going to another Court right after

7    you've litigated before me for the last three hours and I've

8    given you a ruling which may or may not be right but which was

9    after a lot of thought and effort is one that is more than a

10   source of discomfort.

11        Why don't you continue with the remainder of the

12   three bullets on the applicable case law on an entitlement to a

13   stay and address, if you will, what you're prepared to offer in

14   the way of a bond if I grant a stay?

15        MR. SNYDER:  Your Honor, the argument with respect to

16   the constitutionality -- I had made the argument with respect

17   to whether a federal question exists vis-à-vis the

18   interpretation of the federal statute and going behind the

19   arbitration.  I made as well -- I would point out, Your Honor,

20   actually there are four grounds.  The third one is diversity.

21   And I think although GM was silent on it, the Court, I believe,

22   in its decision, admitted that diversity exists but, again,

23   stated that the sale order would trump the district court even

24   though diversity might existed there.  And the fourth argument,

25   Your Honor, is 48(c) and Your Honor is correct.  It does just

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQIDATION COMPANY, et al.
Reply   Pg 88 of 126

Page 67

1    refer to judgment.  It does not refer to the right to vacate or

2    amend or to modify.  It's respectfully submitted, though, Your

3    Honor, that the district court can make that decision as well.

4    Your Honor may be right in all they can do is say thumbs up or

5    thumbs down with respect to a judgment.  But at least with

6    respect, I believe, to the fifty state laws, with respect to

7    arbitration and the FAA, it's not so limited, that applicants

8    are usually allowed by statute, certainly under the FAA, to not

9    only seek a judgment but to modify or vacate.  But that's

10   something the California district court may hold as well, Your

11   Honor.

12            And because there are five sep -- four separate

13   grounds, the constitutionality, the federal question, the

14   diversity and Rule 48(c), in Rally's mind, is more than a

15   compelling reason to hold that concurrent jurisdiction exists

16   and not simply exclusive jurisdiction exists.  That Your

17   Honor's sale order says what it says but that the Arbitration

18   Act raises issues that need to be addressed.  And it's

19   submitted by saying diversity exists but the sale order trumps

20   it, Your Honor, I would suggest that the district court in

21   California does have jurisdiction and does also have the

22   authority to hear these issues.  And for those reasons, I think

23   the Court or Rally would be successful in arguing that it would

24   be successful on the merits on those four particular grounds.

25            I would state also, Your Honor, that the judicial

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 89 of 126

Page 68

1    estoppel argument is just fascinating to me.  I -- you asked a

2    question of GM and it was your last question, I believe, which

3    was are you saying you could have gone to New York or

4    California but you decided to go to California.  And they said

5    yes.  And so, what they're basically saying is we can go to

6    California or New York but you can't.  And that argument is, in

7    essence, saying we've waived subject matter jurisdiction by

8    entering into the wind-down agreements.  And I don't believe

9    that's correct.  And I believe if GM can go into New York and

10   California then Rally can go into New York and California.  And

11   to simply say that we're -- our fortunes rise and fall here,

12   well, neither -- GM's fortunes didn't rise and fall here

13   either.  They chose not to come here.  And so I think we should

14   have that same right.

15          And for those reasons, Your Honor, we'd like a stay

16   of Your Honor's order until there is an appropriate order of

17   the district court.

18          THE COURT:  All right.  Mr. Steinberg?

19          MR. STEINBERG:  Your Honor, in the context of the

20   order that you've indicated that you will enter, a stay pending

21   appeal makes no sense.  And the whole oral argument that you

22   heard here before was really a reargument motion and was not a

23   stay pending appeal motion.

24          Your Honor has indicated that it was inappropriate

25   for them to go to California and to continue to prosecute the

MOTORS LIQUIDATION COMPANY, et al.

Page 69

1    action in California.  So if you're going to stay the entry of

2    the order, what does that mean as a practical matter?  After

3    having ruled that it was improper to go to California, he now

4    is actually asking you to stay that order so he can go to

5    California?  Which is 180 degrees of the relief you just

6    granted?  This is not like he has a judgment and he wants to

7    stop us from enforcing the judgment because he wants to take

8    his appellate rights.  I'm trying to collect on a monetary

9    judgment.  This is started because he shouldn't have gone to

10   California in the first place.  He shouldn't have violated the

11   wind-down agreement.  He should have done -- he didn't have a

12   judicial right.  And now he's asking Your Honor to stay it so

13   he can, in effect, do what he started to do which was the

14   reason why we brought the motion in the first place.

15          But I think he didn't answer your question what are

16   the four prongs for a stay pending appeal.  He did talk about

17   the likelihood of success on the merits.  And I don't think he

18   said anything today other than try to reargue what Your Honor

19   had just ruled upon as to the likelihood of success on the

20   merits.

21          Frankly, the other three grounds all, I think, favor

22   New General Motors.  The harm to the appellant -- well, on the

23   surface, one could say he's harmed because the Chevrolet

24   dealership will be terminated on October 31st.  The actual harm

25   is that he didn't have a judicial right and you're not

MOTORS LIQUIDATION COMPANY, et al.

Page 70

1    depriving him of a judicial right.  Conversely, the harm to

2    others being the appellee, which is New General Motors and the

3    new dealership, are dramatic if Your Honor's order is not

4    enforced.  And Your Honor's opinion addressed the public

5    interest element which is the necessity of protecting buyers in

6    a Section 363 order and the Court's exclusive jurisdiction and

7    the public interest that's involved there.

8              I think the only other thing I would add, and it has

9    nothing to do with the stay pending appeal other than the

10   likelihood of success, I'll just point out that he wants to

11   refer to the complaint that was -- the petition that was filed

12   by Rally in California.  On the corruption, fraud and undue

13   means by General Motors, that's just a label that he put on a

14   caption in a petition.  He does not allege one thing about

15   fraud corruption in connection with the arbitration process.

16   He's saying that there were public statements made by Fritz

17   Henderson as to, in general, the importance of a dealership

18   network, and he's saying that that was misleading.  But it has

19   nothing to do with actually what happened in the arbitration

20   and under the Dealer Arbitration Act.  And as far as the

21   misconduct being beyond prec -- established precedent, if you

22   read the paragraph, what he's saying is that the award goes

23   beyond Section 747 because they believe that that statute,

24   which is absolutely silent on the issue, doesn't allow for the

25   assumption of one dealership -- the rejection of one dealership

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 92 of 126

Page 71

1   agreement and the assumption or the reinstatement for the other

2   three.  That's the misconduct of going beyond what is

3   established precedent.

4            Your Honor's decision ruled that if you had to

5   address the merits, even though you weren't, you thought that

6   New GM and the arbitrator was right on that issue.  So he can

7   point to a petition, which is based on the Federal Arbitration

8   Act, citing standards but have no application to the facts of

9   this case and then everything else on the standards for a stay

10  pending appeal warrant for the denial of the stay.

11           And he purposely didn't answer your question as to a

12  bond because, at this point in time, the bond -- we're not

13  looking for a bond.  We're looking for the relief that we

14  brought our motion for.  And a stay pending appeal is, in

15  effect, a denial of our motion which Your Honor just granted.

16       (Pause)

17           THE COURT:  Stand by, everybody.  Sit in place.

18       (Pause)

19           THE COURT:  Gentlemen, in this supplemental

20  proceeding, Rally moves by oral motion, with my consent, for a

21  stay pending appeal.  And I am granting its motion to the

22  extent of providing for a seven calendar day stay to permit

23  Rally to go to the district court in this district.  And the

24  motion is otherwise denied.  The following are the bases for my

25  exercise of discretion in this regard.

MOTORS LIQUIDATION COMPANY, et al.

Page 72

1           Though I have no memory of hearing it expressly

2    invoked, a motion of this character is governed by Federal Rule

3    of Bankruptcy Procedure 8005.  It provides in relevant part

4    that "A motion for a stay of the judgment order or decree of a

5    bankruptcy judge for relief pending appeal must ordinarily be

6    presented to the bankruptcy judge in the first instance...A

7    motion for such relief" granted by -- "or for modification or

8    termination of relief granted by a bankruptcy judge may be made

9    to the district court but the motion shall show why the relief,

10   modification or termination was not obtained from the

11   bankruptcy judge.  The district court...may condition the

12   relief it grants under this rule on the filing of a bond or

13   other appropriate security with the bankruptcy court."

14          As the language I just quoted makes clear, the rule

15   is not terribly helpful with respect to the standards for

16   considering a motion of that character.  Rather, for that, we

17   look to the case law which, in the bankruptcy appellate arena,

18   takes a considerable amount of guidance from similar issues

19   presented under the FRAP, the Federal Rules of Appellate

20   Procedure.

21          I exercise my discretion in accordance with my

22   earlier decision, coincidentally in General Motors, at 409 B.R.

23   24, and the affirmants by Judge Kaplan of the district court in

24   2009 U.S. District Court Lexis 61279.  As I stated in my ruling

25   there, in GM, the decision as to whether or not to grant the

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 94 of 126

Page 73

1    stay of an order pending appeal lies with the sound discretion

2    of the Court.  See, for example, In re Overmyer, 53 B.R. at

3    955.  Though the factors that must have to be satisfied have

4    been stated in slightly different ways and sometimes in a

5    different order, it's established that to get a stay pending

6    appeal under Rule 8005, a litigant must demonstrate it would

7    suffer irreparable injury if a stay were denied; there is a

8    substantial possibility, although less than a likelihood of

9    success on the merits of a movant's appeal; other parties would

10   suffer no substantial injury if the stay were granted; and that

11   the public interest favors a stay.  See, for example,

12   Hirschfeld v. Board of Elections, 984 F.2d at page 39.  It's a

13   decision of the Second Circuit in 1992; In re DJK Residential,

14   2008 U.S. Dist. LEXIS 19801; and 2008 WL 650389, a decision by

15   Judge Lynch back when he was a district judge; and In re

16   Westpoint Stevens, 2007 U.S. Dist. LEXIS 33725, 2007 WL

17   1346616, a decision by Judge Swain of the district court.

18           The burden on the movant is a "heavy one".  See, for

19   example, DJK at *2.  See also U.S. v. Private Sanitation

20   Industrial Assoc., 44 F.3d 1082 at page 1084, another decision

21   of the Second Circuit.  To be successful, the party must "show

22   satisfactory evidence of all four criteria".  In re Turner, 207

23   B.R. at page 375, a decision of the former Second Circuit BAP

24   in 1997.  Moreover, if the movant seeks the imposition of a

25   stay without a bond, the applicant has the burden of

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 95 of 126

Page 74

1    demonstrating why the Court should deviate from the ordinary

2    full security requirement.  See DJK at *2, Westpoint Stevens at

3    *4.

4           While, as Judge Lynch noted in DJK, the Second

5    Circuit BAP has held that the failure to satisfy any prong of

6    the four-circuit test "will doom the motion," with Jerry Lynch

7    having cited Turner.  The Circuit in more recent cases have

8    engaged in a balancing process with respect to the four factors

9    as opposed to adopting a rigid rule.  In my earlier ruling in

10   GM, I assumed without deciding that the balancing approach

11   would be more appropriate.  And I'm going to do likewise here.

12   I also note that when Judge Kaplan affirmed me in GM in the

13   decision that I described a few minutes ago, I think he took a

14   similar approach.

15          Let me start with injury first.  Obviously, I take

16   the loss of a franchise seriously.  And indeed, early in the

17   decision that I dictated -- I guess it's now an hour or an hour

18   and a half ago -- I did hopefully express my empathy to dealers

19   losing their franchises.  However, what caused the lack of the

20   franchise, or the loss of the franchise, is not the ruling that

21   I issued tonight.  It was the dealer termination agreement that

22   was entered into over a year ago.  What we have here is

23   Congress recognizing the injury to dealers as a consequence of

24   either rejection of dealership agreements, as was the case in

25   Chrysler, or even the soft landing termination agreements that

MOTORS LIQUIDATION COMPANY, et al.

Page 75

1    we had here, provided dealers with an arbitration remedy to, in

2    essence, undo that which otherwise would happen.  And Rally

3    took advantage of that and it won in three-quarters -- or four-

4    fifths -- Pontiac, I guess, ultimately not being relevant -- of

5    the matters which it took before the arbitrator.  Now, in

6    essence, what it's asking for is to avoid the injury from a

7    year ago and at the same time to avail itself of the benefits

8    of the arbitration to the extent that it won.  With it having

9    won with respect to Buick, Cadillac and GMC, I don't think

10   there is irreparable injury to it by reason of its not having

11   shot the moon in its litigation efforts before the arbitrator.

12           Frankly, folks, I tried very hard to get it right.

13   And we're going to get to a likelihood of success in a minute.

14   But I do not believe that my ruling today causes irreparable

15   injury.  And I think really all we're talking about is the

16   results of an arbitration system that was made available for

17   Rally and for which it only succeeded in part.

18           I will, however, assume that there is a -- at least a

19   peppercorn of irreparable injury.  I'm certainly not going to

20   disqualify Rally for not showing more in the way of irreparable

21   injury.  And I'm not, as I indicated, going to require it to

22   make a strong showing on all fours.  I am going to take a

23   balancing approach so I'm going to turn to that next.

24           So let's talk then about likelihood of success which

25   is where Rally spent the bulk of its argument.  Although we

09-50026-mg    Doc 8200-32    Filed 12/21/10    Entered 12/21/10 08:14:50    doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply    Pg 97 of 126

Page 76

1   talk about likelihood of success, that's a shorthand for a more

2   nuanced analysis.  The technical standard is there is a

3   substantial possibility although less than a likelihood of

4   success on the merits.  Well, let's slice and dice the various

5   aspects of my earlier ruling.

6          First, the propriety of my conclusion that I do have

7   subject matter jurisdiction and that I have core

8   jurisdiction -- core, of course, not being the subject matter

9   jurisdiction issue but talking about the power of a bankruptcy

10  judge in contrast to a district judge to decide.  Those two

11  rulings now seem to be accepted or at least unchallenged.  And

12  although there was no express discussion of my decision not to

13  abstain, I didn't hear any argument on that.  And, frankly,

14  discretionary abstention is called discretionary for a reason.

15  There would have to be an abusive discretion in my electing not

16  to abstain.  And I think that there would not be a material

17  likelihood of success on that and would be far short of a

18  substantial possibility.

19         On the merits, it's undisputed that we're not talking

20  about the Federal Arbitration Act, that the Dealer Arbitration

21  Act provides no right to appeal.  And my ruling did not go so

22  far as to say that under no circumstances under anything that

23  might ever be alleged would I deny the right to appeal.  What I

24  have said is that to the extent, if any, to which there would

25  be such a right, a construction to, in essence, save the

MOTORS LIQUIDATION COMPANY, et al.

Page 77

1    constitutionality of the statute if it were otherwise put in

2    question, there would have to be something seriously wrong with

3    the arbitration in the way of fraud, corruption, bribery being

4    a species of corruption, or, and I articulated it differently,

5    disregard of applicable authority.  I went on to provide two

6    additional levels -- you can call it dictum; you can call it

7    alternative grounds, whatever, which caused me to believe that

8    it's not likely that there's going to be a reversal.

9         And as far as whether there's a substantial

10   possibility, on the facts that were put before me, I don't

11   think there's even that.  To be sure, words were put before the

12   district judge triggering responses that if this were an action

13   under the Federal Arbitration Act would get a judge's

14   attention.  But as the recent decisions by the Supreme Court in

15   Bell Atlantic v. Twombly and, especially, Ashcroft v. Iqbal

16   tell us, just invoking words making conclusory allegations in a

17   pleading isn't enough.  You can't talk about corruption without

18   giving the Court some facts as to lead the Court to believe

19   there was corruption.  And we're not talking about corruption

20   by GM.  We're talking about corruption by the arbitrator.  I

21   used the example before of taking bribes.  There are no

22   allegations of ex parte communication.  There are no

23   allegations of any irregularities in the proceedings before the

24   arbitrator other than the assertion that, as a matter of law,

25   the arbitrator got it wrong.  And even then, there's no

MOTORS LIQUIDATION COMPANY, et al.

Page 78

1    allegation that the arbitrator disregarded any particular case

2    that would suggest to the arbitrator that he got it wrong.  So

3    while I think there would be a substantial possibility of

4    success on appeal if I were somehow to rule that there is no

5    right to appeal and that I got to close my eyes to

6    irregularities of the type that I just described if they were

7    shown, it doesn't affect the outcome here because I don't have

8    any facts suggesting any of those things.  Bottom line, folks,

9    I do not find a substantial possibility.

10         Third factor.  Other parties would suffer no

11   substantial injury if the stay were granted.  And here, I think

12   there are potential injuries, at least if we go past October

13   31st, of one type, for sure, and another which more properly

14   may be regarded as being a public interest concern rather than

15   a private prejudice.  For GM's benefit, I'll say that I see no

16   prejudice in staying for five days to allow the district court

17   to second guess me on the stay application.  And for that

18   reason, I am going to grant a stay to the extent of five days.

19         But we have a new dealer who's taking over on the

20   31st of October.  I don't have evidence on it, but I got to

21   assume that the existing franchisee's gain is going to be the

22   new one's loss.  They're either going to be competing with each

23   other or that other guy is going to be made to wait if this

24   thing can't proceed past October -- if this somehow proceeds

25   past October 31st.  And we have a nationwide program which was

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 100 of 126

Page 79

1    judicially blessed back in July of last year for these dealer

2    unwinds and I think it's prejudicial to New GM to put this

3    system in play to any greater extent than Congress did by its

4    statutory enactment.  And Congress didn't say everything you're

5    doing is undone.  What it did was say well, we're going to set

6    up this arbitration mechanism.  And that's exactly what we got.

7    And it goes without saying that I comply with the congressional

8    but I don't think we should be going beyond what Congress said.

9             Lastly, the public interest favors a stay.  That's

10   the final factor.  While I quoted the language before, and I

11   think Rally acknowledged its importance, that we deliver to the

12   purchasers of assets in bankruptcy sales that which we have

13   promised.  And if and to the extent that the counterparty to a

14   deal with an estate comes back and says I need you to enforce

15   it so I get the benefit of what I had bargained for, we do

16   that.

17            I talked back at the time of the original 363

18   determination and my separate ruling on the stay application

19   that followed my 363 ruling by a couple of days about how

20   important GM's survival is to the public interest and the

21   interest not just of the federal taxpayers but the needs and

22   concerns of the states of Michigan and Ohio and the communities

23   in which GM plants operate.  We made decisions then about that

24   which was necessary to give New GM the maximum opportunity to

25   thrive.  We made rulings then which are res judicata.  I don't

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 101 of 126

Page 80

1   think the public interest is served by interfering with what we

2   then put in place in any way.

3        Certainly, there is no public interest in allowing

4   this collateral attack.  It's a private interest to the extent

5   it's any interest.  And when a party that was offered and

6   availed itself the opportunity to arbitrate then wishes to take

7   the portion for which it did not win and put the earlier system

8   in play beyond getting the arbitration opportunity for which

9   Congress provided, that is, at the least, not in the public

10  interest and may fairly be regarded as being contrary to the

11  public interest.  At best, looking at it most favorably to

12  Rally, it is a wash because it is private interests that are

13  being sought to be advanced and not public ones.

14       So, as my discussion indicates, folks, I think we got

15  to go by the book and deal with it as I did in my decision

16  dictated just a moment ago by the four enumerated factors

17  articulated in the case law for the grant of a stay.  And it is

18  stayed to permit a second opportunity to go to the district

19  court for those seven calendar days.  And so as not to put a

20  gun to the head of the district court having to issue a

21  decision, like Judge Kaplan did where he had to work all night

22  on it, I don't want to do that to the district court again if I

23  can avoid it.

24       But beyond that, it is denied.  Rally is authorized

25  and requested, not ordered, but requested to advise the

09-50026-mg   Doc 8200-32   Filed 12/21/10   Entered 12/21/10 08:14:50   doc 32
MOTORS LIQUIDATION COMPANY, et al.
Reply   Pg 102 of 126

Page 81

1    district court that an application was made to the bankruptcy

2    court, that the bankruptcy court denied it except to the extent

3    of the five days for the reasons that it dictated into the

4    record and that any further application to the bankruptcy court

5    is dispensed with and waived.  From now on, we're in the

6    district court, folks.

7              Yes, sir?

8              MR. STEINBERG:  Your Honor, I just have some brief

9    moments and I thank you for staying so late for today.  In your

10   presentation in connection with the stay pending appeal, you

11   said seven calendar days but I believe you also said at one

12   point in time five days.  So --

13             THE COURT:  If I did, it was a reference to five

14   business days.  Seven calendar days transposes into five --

15             MR. STEINBERG:  Okay.

16             THE COURT:  -- business days.  And ever since we

17   amended the federal rules of many different types last

18   December, we now go on bunches of seven calendar days.

19             MR. STEINBERG:  The second thing, Your Honor, is that

20   while I'm not exactly sure what I would have otherwise done

21   during the seven calendar day period because the wind-down

22   agreement is fairly passive, I do want to make sure that I'm

23   still able to present to Your Honor the order that you had

24   asked for --

25             THE COURT:  Of course you can.

MOTORS LIQUIDATION COMPANY, et al.

Page 82

1          MR. STEINBERG:  Okay.  And I think that's it.  I

2    understand that the only activity that will happen from this

3    point on is in the district court of this district.

4          THE COURT:  Correct.  All right.  It's been a long

5    day.  Good evening, gentlemen.  We're adjourned.

6       (Whereupon these proceedings were concluded at 7:23 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 83

1

2                            I N D E X

3

4                          R U L I N G S

5    DESCRIPTION                                     PAGE      LINE

6    Motion of New GM for an order enjoining Rally    41        8

7    Dealership from interfering with New GM's

8    ability to reform its dealership platform,

9    from vacating or modifying an arbitration

10   decision and from pursuing that effort in

11   California district court granted

12   Court declines to exercise its discretionary    50        12

13   abstention

14   Oral motion by Rally Auto for a stay pending     71        21

15   appeal granted for five business days to permit

16   Rally to go to district court;

17   but denied in all other respects                 71        24

18

19

20

21

22

23

24

25

Page 84

1

2                         C E R T I F I C A T I O N

3

4        I, Lisa Bar-Leib, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        LISA BAR-LEIB

9        AAERT Certified Electronic Transcriber (CET**D-486)

10

11       Veritext

12       200 Old Country Road

13       Suite 580

14       Mineola, NY 11501

15

16       Date:  October 6, 2010

17

18

19

20

21

22

23

24

25

| **&** | **2** | **44113** 5:5 | **9** |
|---|---|---|---|

**&**  3:3,10,19 4:2,18
   5:2 6:14 7:14

**0**

**09-50026**  1:4

**1**

**1**  10:23 36:13 47:24
   47:25
**10**  24:5 27:22 41:15
   61:25 62:3
**10007**  5:14
**10017**  4:14
**10036**  3:14,22
**10153**  3:6
**105**  2:3
**1082**  73:20
**1084**  73:20
**10th**  39:16
**11**  2:2 24:5 35:19
   40:9 44:16,17 48:4
   48:5
**11501**  4:21 84:14
**1177**  3:13
**1185**  3:21
**12**  24:5 83:12
**1262**  12:20
**129**  12:20
**13**  38:22 43:13 47:6
**1331**  10:7 12:10
   16:22 17:7 18:15
   57:17 59:5
**1332**  57:15
**1334**  15:9 44:9,11
   44:19,21 46:17
   47:24,25
**1346616**  73:17
**136a**  36:13
**14th**  23:19 28:25
**157**  46:3,15
**180**  69:5
**19801**  73:14
**1992**  73:13
**1997**  73:24
**1st**  32:14

**2**  46:3 62:7 73:19
   74:2
**200**  4:20 7:8 84:12
**2007**  73:16,16
**2008**  73:14,14
**2009**  18:2 19:14
   32:13 41:10,12,15
   42:7 56:15 72:24
**2010**  1:19 42:6,13
   43:13 84:16
**207**  73:22
**21**  83:14
**21515**  4:4
**229-230**  46:23
**23**  58:19
**24**  72:23 83:17
**26**  41:12
**28**  12:10 16:22 17:7
   18:15 44:8 46:3,15
   46:16 47:24 57:15
   57:16 63:8
**29**  52:7

**3**

**3**  16:19
**304**  46:23
**31**  31:23 32:7 42:6
**312**  46:10
**31st**  18:1 39:4,7,8
   65:16 69:24 78:13
   78:20,25
**33725**  73:16
**363**  2:3,3 9:19 18:7
   41:11,15,20 46:5
   70:6 79:17,19
**365**  42:3
**375**  73:23
**39**  73:12
**3:06**  1:20

**4**

**4**  1:19 74:3
**409**  72:22
**41**  83:6
**419**  46:22
**44**  73:20

**44113**  5:5
**473**  36:24 55:16
**48**  10:25 11:11,14
   13:17 15:16 19:9
   31:9,12 38:1,5 52:6
   66:25 67:14
**486**  84:9
**4:04**  40:6
**4:30**  40:3
**4th**  39:19

**5**

**50**  83:12
**53**  73:2
**580**  84:13
**588**  55:16
**592**  36:24
**5:30**  40:6
**5th**  41:10

**6**

**6**  84:16
**600**  14:15,17 17:24
   35:25 37:1
**61279**  72:24
**636**  5:4
**644**  46:10
**645**  46:10
**650389**  73:14
**675**  4:13
**6:19**  61:14
**6:37**  61:14

**7**

**7**  36:13,20
**71**  44:23 83:14,17
**747**  12:15 21:9,17
   62:8 70:23
**767**  3:5
**7:23**  82:6
**7th**  39:15

**8**

**8**  27:22 42:13 83:6
**8005**  61:4 72:3 73:6
**86**  5:13

**9**  24:5 37:24
**90503**  4:6
**950**  4:5
**955**  73:3
**97**  46:23
**984**  73:12

**a**

**aaa**  10:17 11:7 12:8
   18:11 25:4,16 31:14
   36:2 37:12,17,18
   51:25 52:6
**aaa's**  51:15,18
**aaert**  84:9
**ab**  59:22
**abided**  39:19
**ability**  16:4 17:10
   19:8 26:3 36:25
   40:11 83:8
**able**  13:14 17:16
   30:2 64:14 81:23
**abrogate**  28:21,23
**abrogated**  29:5
   36:5
**absence**  51:1 55:2
   56:3
**absolutely**  39:4
   70:24
**abstain**  48:7 49:14
   50:3 76:13,16
**abstaining**  48:3
**abstention**  47:22
   48:10 50:12 76:14
   83:13
**abstract**  21:11
**abuse**  36:18
**abusive**  76:15
**accept**  43:10,21
   48:6 51:13 61:10
**accepted**  76:11
**account**  49:17
   54:25
**accurate**  84:5
**achieve**  18:25 52:20
   53:13

**acknowledged**
  79:11
**acquired** 40:17
**act** 8:24,25 12:7
  14:19,23,25 16:23
  17:2,17 18:18,23
  19:2,12 21:2,24
  22:3,22 23:1,10,13
  23:16 24:4 25:20,22
  26:6 27:4 28:6,19
  28:20 29:6,9 30:23
  31:2,16,20 32:10,18
  33:19 35:7,24 36:6
  36:12 38:20 39:12
  40:18 42:8 43:10
  44:2 45:8 50:15,18
  50:19,21 51:21 53:7
  53:11,16 54:15 55:6
  55:18,18 57:6,8,18
  57:21 58:4 59:3
  62:1,8 63:17,19
  67:18 70:20 71:8
  76:20,21 77:13
**acted** 22:22
**action** 42:22 43:5
  45:5 57:4 58:9
  62:16 65:8,12,25
  69:1 77:12
**actions** 64:21
**active** 49:3
**activity** 82:2
**acts** 36:2,22
**actual** 69:24
**add** 70:8
**added** 57:20
**addendum** 60:5
**addition** 12:8 13:2
  41:3
**additional** 45:6
  64:15 77:6
**additionally** 41:2
**address** 7:18 8:7
  18:21 36:8 54:14
  60:23 63:7 65:19
  66:13 71:5
**addressed** 50:4
  57:21 67:18 70:4

**addresses** 44:18
  62:9
**addressing** 39:10
  46:25
**adjourned** 60:25
  82:5
**adjudicate** 39:1
  47:10
**administered** 40:8
**administration**
  48:11,17
**admiralty** 44:11
**admitted** 66:22
**adopting** 31:11 74:9
**advanced** 58:23
  80:13
**advantage** 59:10
  75:3
**adversary** 24:15,18
  25:18 28:22 31:22
  35:6
**advise** 80:25
**affect** 49:25 78:7
**affidavit** 43:4
**affirmants** 72:23
**affirmed** 74:12
**afforded** 29:7 42:2
**afternoon** 6:3 22:15
**agency** 26:20,21
**agency's** 26:25
**agent** 43:5
**aggregated** 19:20
**aggrieved** 16:16
**ago** 53:5 74:13,18
  74:22 75:7 80:16
**agree** 8:23 11:6
  12:5 29:15,22 50:14
**agreed** 11:14 23:3
  24:9 28:22 32:9
  37:11,13 39:17 45:2
  47:8 51:25 52:18
  58:13
**agreement** 2:4 8:16
  16:22 17:4,14,23,24
  18:6 22:20,21 28:14
  28:19,21 29:3,4,10
  29:11 30:6,7,16,23

31:24 32:17,21,25
  33:24,25 34:2,8,10
  34:13,17,18,19 35:7
  35:11 37:16 38:8,14
  38:22,23 39:2,5,6
  39:19 40:17 41:5,12
  42:16,24 43:8,15
  45:20,24 46:6 47:6
  47:6,11,14,15,17,17
  47:18 57:7 58:13
  59:2 60:5,6 63:17
  63:18 69:11 71:1
  74:21 81:22
**agreements** 9:1,15
  9:22 14:23 18:18,23
  19:13,14,20 23:4,4
  24:8 30:11 34:5,5,7
  34:9 37:11 38:12,13
  38:17,19 39:13
  41:21,22,24 42:1,1
  42:3,6,15 44:24,25
  45:1,11,23 48:24
  50:16 53:2 54:24
  60:2,8,10 68:8
  74:24,25
**agrees** 28:16 38:24
**ahead** 7:7 11:25
  12:4
**al** 1:8,9
**allegation** 78:1
**allegations** 54:7,18
  54:20 55:1,23 77:16
  77:22,23
**allege** 64:11 70:14
**alleged** 43:23 61:21
  76:23
**allegedly** 57:17
**alleges** 43:19
**alleging** 9:12,12
**allow** 13:6 14:6
  15:17 16:15 17:21
  18:11 19:9 37:24
  38:6 63:20 70:24
  78:16
**allowed** 17:17 19:22
  29:6 36:20,21 67:8

**allowing** 32:22 80:3
**allows** 16:6 17:20
  21:3 36:14
**alluded** 63:10
**alternate** 41:4
**alternative** 41:24
  45:18 60:18 77:7
**ambiguous** 51:7
**amend** 67:2
**amended** 81:17
**americas** 3:13,21
**amount** 72:18
**amounted** 45:10
**analogy** 10:16 37:9
**analyses** 35:18,19
**analysis** 48:6 50:25
  76:2
**analytically** 55:17
  56:16
**analyzing** 64:10
**ancillary** 29:23
**anger** 66:4
**annexed** 10:23
**answer** 15:21 22:17
  65:22 69:15 71:11
**answered** 22:18
  35:3,8 39:15 65:15
**antitrust** 56:23
**anxiously** 39:20
**anybody's** 19:15
  21:23
**anyway** 22:2 33:21
  65:15
**apologize** 27:8 40:7
  61:18
**appeal** 60:19 61:5,9
  68:21,23 69:16 70:9
  71:10,14,21 72:5
  73:1,6,9 76:21,23
  78:4,5 81:10 83:15
**appearing** 7:14
**appears** 50:18
**appellant** 69:22
**appellate** 53:13
  56:3 69:8 72:17,19
**appellee** 70:2

**apple**  15:1 65:13
**applicability**  17:10
**applicable**  44:8
  66:12 77:5
**applicant**  73:25
**applicants**  67:7
**application**  61:8,10
  61:16 71:8 78:17
  79:18 81:1,4
**applied**  31:15 35:25
  44:2 49:1 50:22
**applies**  8:25 29:5
**apply**  10:21,25 11:8
  11:13,16 35:22
  37:17,18 50:15 55:4
**approach**  57:9
  74:10,14 75:23
**approaching**  31:23
**appropriate**  37:4,5
  37:5,6 52:23 58:15
  68:16 72:13 74:11
**appropriately**  51:5
  61:25
**approval**  46:5
**approved**  2:3 22:20
  30:9 41:11,19 49:8
**approving**  46:4
**arbiter**  25:13
**arbitrate**  9:1 10:10
  10:11 11:15 24:9
  50:16 53:22 80:6
**arbitrated**  14:15
**arbitration**  8:24,25
  10:20 11:2,4,9,16
  11:17 12:6,21 13:16
  13:20 14:19,23,25
  16:5,7,15,23 17:1
  17:17,17,21 18:18
  18:23 19:2,10,11,12
  20:10,25 21:1,2,6
  21:15,24 22:3,22
  23:1,10,10,13,16,17
  23:18 24:4,11 25:5
  25:6,20,22 26:6
  28:6,6,7,19,20,24
  29:6,7,8,24,25 30:1
  30:23,25 31:2,10,11

31:12,13,14,16,20
32:10,18,22 33:13
33:19,22 35:6,13,24
35:25 36:6,7,14,17
37:13,21,23 38:20
39:12 40:13,18,21
40:22,24 41:1 42:8
42:10,11,11,12
43:10,14,24 44:1,2
45:8,12,14,16,17
47:13 49:21 50:15
50:17,18,19,20,21
51:11,15,16,18,19
51:21,25 52:1,3,4,9
52:10 53:7,8,10,14
53:16,17,21,24 54:1
54:3,10,15 55:6,18
57:6,8,18 58:4,14
58:15,16,17 59:3,17
62:1,12,15,16 63:16
63:19 66:19 67:7,17
70:15,19,20 71:7
75:1,8,16 76:20,20
77:3,13 79:6 80:8
83:9
**arbitrations**  19:22
  20:1 28:25 37:25
**arbitrator**  9:5,13,14
  13:9,20 18:6 20:21
  23:18 25:1 28:15
  29:17 30:25 32:24
  33:3,5 34:9 36:15
  36:17,22 37:19
  42:12,13 43:9,11
  52:12,14 53:3 55:5
  59:14,15,24 62:4
  64:13 71:6 75:5,11
  77:20,24,25 78:1,2
**arbitrator's**  14:1,2
  20:4,16,17 24:24
  29:16 37:2 43:17,19
  53:4 55:10,14,19
  59:13,14,23,24
  60:10
**arbitrators**  23:13
  36:18 57:18

**area**  32:2 42:18
**areas**  29:1 53:2
  61:19,20
**arena**  72:17
**arguably**  52:13
  55:23
**argue**  17:5 33:17
  35:16
**argued**  25:18
**argues**  40:25 41:3
  43:5,9
**arguing**  15:12,12
  33:20 67:23
**argument**  9:3 11:7
  13:7,17 14:8,10
  16:12,18 17:9 25:21
  27:15 28:1,2 34:7
  34:16,22 35:10
  39:14 45:25 51:13
  52:17 57:2 61:7
  62:8 63:10 66:15,16
  66:24 68:1,6,21
  75:25 76:13
**arguments**  8:1 16:4
  18:12 33:17,21
  37:12
**arises**  10:9 12:23
  63:16
**arising**  8:14 15:8,11
  44:16,16,20 46:16
  46:16 48:4,4 63:21
  64:1
**arms**  55:9
**arose**  57:17
**arthur**  3:24
**articulated**  48:10
  50:2 77:4 80:17
**ashcroft**  77:15
**aside**  14:11 56:9
  58:24
**asked**  26:20 28:5
  35:6 39:6 68:1
  81:24
**asking**  12:18,24
  25:25 35:10 53:14
  59:18 69:4,12 75:6

**area** (see above)
**aspects**  43:16 76:5
**asserted**  58:5
**asserting**  58:22
**assertion**  77:24
**assets**  23:8 41:16
  46:14 48:21 49:4
  50:1,3 79:12
**assigned**  41:20
**assignment**  30:12
**assistance**  43:6
**assoc**  73:20
**associates**  4:18
**assume**  37:12 50:7
  54:8 56:4,10 57:24
  60:16 75:18 78:21
**assumed**  41:17
  74:10
**assuming**  51:5
  59:21
**assumption**  59:22
  59:24 70:25 71:1
**assurance**  49:5
**atlantic**  77:15
**attack**  14:3,3 20:17
  52:2,9 64:24 80:4
**attempt**  58:12
**attempting**  40:24
  42:17 62:7
**attention**  16:23
  27:21 77:14
**attorney's**  5:11
**attorneys**  3:4,11,20
  4:3,12,19 5:3
**august**  32:6 43:12
**auslander**  4:11
**authorities**  7:23
**authority**  8:15 10:4
  43:11 46:13 54:13
  67:22 77:5
**authorized**  41:11
  41:23 49:6 52:16
  62:7 80:24
**auto**  4:12,19 5:3 7:9
  43:1 83:14
**avail**  23:8 45:16
  75:7

**available** 59:13
75:16
**availed** 29:8 80:6
**avenue** 3:5,13,21
4:13 5:4
**avoid** 51:10 54:16
75:6 80:23
**awaiting** 39:20
**award** 11:4,9 13:16
14:1,2,16 20:14,16
20:17 29:16 31:13
31:14 32:24 33:3,13
33:22 40:24 41:1
42:13 43:14,17,20
43:24 44:1 45:16
49:22 52:2,4,9,10
53:4,14 54:1,3
58:17 59:13,14 61:6
70:22
**awards** 50:20 59:17

**b**

**b** 1:23 44:13 46:15
46:17
**b.r.** 46:10 72:22
73:2,23
**baby** 7:23
**back** 13:14,25 15:1
15:5 16:12,19 18:8
19:23 21:22 29:3,18
30:2 37:3 49:5
52:13 56:15 57:20
65:6,21 73:15 79:1
79:14,17
**balance** 23:21
**balancing** 74:8,10
75:23
**bank** 63:9
**bankruptcy** 1:2,15
1:25 8:15,17 9:19
9:25 15:1 34:11
35:22 38:24 44:6,12
46:20 47:8 48:7,11
48:13,18,21,22 49:4
49:11,24 55:8 58:2
58:7 61:4 63:6 65:6
65:11 72:3,5,6,8,11
72:13,17 76:9 79:12

81:1,2,4
**bap** 73:23 74:5
**bar** 2:25 84:4,8
**bargain** 21:22,23
**bargained** 24:13
30:7,8,14,19 63:25
79:15
**barred** 46:12
**base** 19:4
**based** 11:18 31:2
39:11 51:22 71:7
**bases** 71:24
**basically** 62:22 68:5
**basis** 27:11 44:1
59:5
**bear** 34:25
**behalf** 7:9,15 34:3
43:4 60:4
**belies** 37:23
**believe** 13:2 16:14
27:13 29:23 31:17
37:4 39:24 48:9
54:6 55:21 61:18
62:17,17 63:11 64:9
66:21 67:6 68:2,8,9
70:23 75:14 77:7,18
81:11
**believes** 18:4
**bell** 77:15
**bellavia** 4:18 6:19
7:8
**belly** 9:6
**benefit** 21:22,23
27:25 78:15 79:15
**benefits** 9:24 34:20
75:7
**best** 20:5 22:17
80:11
**better** 23:21 54:15
**beyond** 70:21,23
71:2 79:8 80:8,24
**bid** 48:21
**bidders** 48:20
**bidding** 43:1 49:4
**binding** 11:9 20:10
23:10 29:7 32:22
35:13 36:3 37:19

40:21 42:10 47:2
48:25 54:12 56:3
**bit** 9:1
**bite** 14:25 65:13
**blank** 53:10
**blatt** 4:23 6:19,19
7:1,4,6,8,8,10,21
8:9 9:11 10:12
**blessed** 79:1
**board** 73:12
**board's** 26:16 55:19
**boat** 8:12
**bogged** 23:24
**bond** 66:14 71:12
71:12,13 72:12
73:25
**book** 80:15
**bottom** 62:3 78:8
**boulevard** 4:4
**bound** 39:5,6 43:9
**bowling** 1:16
**brake** 36:5
**brand** 12:14,17
21:8 40:23 43:12
60:11
**brands** 29:17 40:23
43:18,22
**bribe** 25:16
**bribed** 25:12
**bribery** 43:24 77:3
**bribes** 9:5 13:10
24:25 25:1 54:11,18
77:21
**brief** 8:6 21:7 26:5
27:16 33:15,21 52:7
58:20 81:8
**briefing** 27:25
**bring** 25:7
**broadly** 30:11
**brought** 57:3 69:14
71:14
**bucking** 59:16
**buick** 42:14 43:18
59:25 75:9
**bulk** 75:25
**bullets** 66:12

**bunches** 81:18
**burden** 73:18,25
**business** 60:15
81:14,16 83:15
**businesses** 43:2
**butler** 64:22,23
**buy** 29:13
**buyers** 17:12 21:22
70:5

**c**

**c** 3:2 6:1 10:25
11:11,14 13:17
15:16 19:9 31:9,12
36:13 38:1,5 47:24
47:25 52:6 66:25
67:14 84:2,2
**ca** 4:6
**cadillac** 42:14 43:18
60:1 75:9
**cake** 34:22
**calendar** 71:22
80:19 81:11,14,18
81:21
**califor** 17:21
**california** 12:11
14:13,20 15:18,21
16:1,3 17:4,7,19
18:11,14 20:15
21:18 35:19,20 38:2
38:6 39:18 40:14,25
42:13,18,22,23
43:13 49:19 53:14
56:10 57:4 58:1
61:23 62:11,16,20
63:2 64:5,17,20
65:5,8,9,12,14,16
67:10,21 68:4,4,6
68:10,10,25 69:1,3
69:5,10 70:12 83:11
**california's** 15:24
**call** 20:7 77:6,6
**called** 42:8 52:1
76:14
**caption** 70:14
**car** 36:4
**carbide** 36:24 37:5

care 13:11
case 1:4 7:21,25 8:4
  8:6 9:14 11:11,12
  12:19,20 13:13,19
  16:10,20 20:3 24:10
  25:17 26:13,24
  30:22 34:14 36:10
  36:11 37:4,14,15
  44:22 46:11,13 48:4
  48:13 50:10 53:16
  59:17 63:20 65:6,10
  66:12 71:9 72:17
  74:24 78:1 80:17
cases 7:22 10:1 23:5
  24:14 37:9,9,11
  40:8 44:12,17 48:15
  55:22 58:11 74:7
cause 15:23 20:11
  22:5,6 50:2
caused 74:19 77:7
causes 75:14
center 28:1
central 27:15
certain 17:25 18:3
  26:22 41:21,23 42:4
certainly 21:18 53:5
  67:8 75:19 80:3
certified 84:9
certify 84:4
cet 84:9
challenge 27:17
chambers 5:13
  39:24
chance 22:10 38:6
change 30:18,18
changed 19:19
changing 56:3
chapter 40:9
character 10:2 55:2
  72:2,16
check 35:1 53:10
chevrolet 12:14,17
  29:2 31:24 40:23
  42:15,17 69:23
chevy 21:8,16 38:19
  41:4 42:20,21,25
  43:12,15 45:19,21

60:1
chief 5:16
child 8:14
chose 68:13
christopher 5:7
chrysler 23:5 74:25
circuit 37:7,14,18
  46:19 63:11 64:23
  65:3 73:13,21,23
  74:5,6,7
circuit's 58:20
circumstance 25:17
circumstances
  24:12 48:8 54:2
  76:22
cite 12:19 13:5 21:7
  36:13
cited 11:11 26:12
  74:7
cities 43:1
citing 21:10 58:20
  71:8
city 42:23 43:3
civil 5:16 44:15
claim 9:16 57:14
  58:5 64:25
claims 14:15 42:24
clair 5:4
clarification 49:7
clashing 19:1
classic 45:22
classification 49:3
clause 29:19 46:8
  47:7
clear 41:16 46:14
  49:2 62:13 72:14
clearly 24:7 59:8
  65:6
clerk 6:2
cleveland 5:5
client 13:19,22
clock 65:16
close 78:5
closed 40:16
clouse 4:2 6:18 7:14
code 34:12 40:9
  42:3 44:9,10 47:24

codified 18:2 19:12
coherent 35:9
coincidentally
  72:22
collateral 80:4
collaterally 64:24
colleague 22:18
  23:2,11 28:22
collect 69:8
come 9:10,23 13:14
  13:25 15:5 16:2,12
  16:25 17:2,13 18:7
  21:14,22 29:18 30:2
  31:4 37:3 40:3
  45:24 48:15,21
  52:13 68:13
comes 46:12 50:17
  56:20 79:14
comfort 50:3
coming 21:1 57:10
  66:1
comity 48:2,12
  49:16
commence 17:16,21
  19:22
commenced 65:7,25
commencement
  32:23
commercial 10:17
  10:20,22,24 11:7,16
  12:8 19:10 31:10,11
  31:12 51:15,18 52:6
committee 3:11
common 60:7
communication 9:6
  77:22
communities 79:22
company 1:8 6:4
  58:21
compare 7:24
compel 10:10 15:13
  16:21 50:16
compelling 63:19
  67:15
competent 11:5
  16:16 39:9 57:22

competing 78:22
complain 52:11
complaint 16:19
  32:6 65:22 70:11
complete 23:18
  38:25 43:20 47:9
completed 28:24,25
  51:12 58:16
complied 20:16
  29:16
comply 14:1 26:5
  57:6 79:7
complying 13:15
conceded 51:14
concept 26:19 31:18
concern 47:18
  78:14
concerned 15:24
concerning 38:16
  39:1 44:24 45:22
  47:10
concerns 7:18 49:18
  50:4 79:22
concluded 82:6
conclusion 76:6
conclusions 41:9
  44:3
conclusory 77:16
concurrent 28:10
  62:25 67:15
condition 72:11
conduct 37:2 46:14
conducted 54:10
conferred 53:18
confirm 19:8 37:21
  38:3
confirmation 9:20
  37:24
congress 15:4 16:13
  19:15 20:1 22:22
  23:21 24:10,20
  25:12 26:2,11,17,20
  32:23 35:14 36:1
  42:7 45:13 48:20
  52:25 53:9,17 56:5
  56:6,8 74:23 79:3,4
  79:8 80:9

**congressional** 22:24
51:3,9 52:21,24
79:7
**connection** 24:6
38:13 41:9 54:6
70:15 81:10
**consent** 37:14 71:20
**consented** 11:3,6,8
11:17 13:17 47:8
52:4
**consents** 38:24
**consequence** 41:7
74:23
**consequences** 58:16
**consider** 50:6,8
54:2,14,21
**considerable** 72:18
**consideration** 42:5
**considerations**
20:18
**considered** 43:22
46:18 47:21
**considering** 72:16
**consistent** 33:23
35:9,13 37:12
**conspiracy** 54:18
**conspiring** 54:11
**constitute** 12:17
**constitutional**
26:10 27:18 54:8,16
**constitutionality**
13:8 14:7,21 15:17
16:9 25:20 27:13
64:4 66:16 67:13
77:1
**construction** 49:7
54:7 76:25
**construe** 18:25
52:19 54:15
**consume** 66:4
**contemplated** 19:17
**contend** 12:7
**contends** 13:24
**contention** 54:13
**context** 34:23 58:11
68:19

**continuation** 30:12
**continue** 8:20 32:7
66:11 68:25
**continued** 42:19
**continuing** 9:20
38:23 47:7
**contract** 11:12,12
34:11 35:18 43:11
50:17
**contracts** 42:3
**contractual** 8:25
24:12 50:15
**contractually** 45:2
**contrary** 8:19,20
13:24 58:23 80:10
**contrast** 10:5 76:10
**contrasted** 49:17
**controls** 19:3
**controversies** 55:5
56:19,22
**controversy** 12:22
44:7 46:1 50:13
56:12 57:17 63:14
63:15,21
**conversely** 70:1
**conveys** 52:8
**core** 14:11 28:4
46:2,3,6,9,9,12,18
46:18 49:3 55:10
76:7,8
**corporation** 1:9
**correct** 22:19 23:11
33:10 66:25 68:9
82:4
**corruption** 43:24
55:23 62:9,19 70:12
70:15 77:3,4,17,19
77:19,20
**costs** 51:10
**counsel** 36:4 38:5
**counterparties** 9:23
**counterparty** 79:13
**country** 4:20 7:9
84:12
**couple** 79:19
**course** 9:9,11 18:21
19:2 20:1 37:9

47:13 49:18 52:18
53:1 54:4 55:8,16
56:2 76:8 81:25
**court** 1:2,15 6:3,11
6:15,20,23 7:2,5,10
7:11,16 8:17 9:23
9:25 10:14,19 11:5
11:20,24 12:3,8,11
12:19,20,21,23,25
13:3,13 14:8,12,13
14:14,17,20,24 15:1
15:2,6,11,14,14,18
15:19,20,20,24,25
16:1,2,2,3,3,5,16,24
16:25 17:5,11,12,19
18:11,13,14,16,19
18:25 19:6,9,24
20:13,24,25 21:4,5
21:14,15,17,18 22:9
22:13 24:6,23,25
25:7 26:15 27:3,6
27:21 29:15,21 30:3
30:3,9,22 31:4,7
32:4,4 33:7 35:2,15
35:20 36:9 37:20
38:10,21,24 39:9,13
39:16,18,21 40:1,7
40:15,25 41:2 42:23
43:13 44:22 45:2,25
46:11,15 47:8 48:1
48:22 49:1,13,14,19
49:24 50:1 52:5
53:15,25 55:4,9
56:11,17,22,24 57:4
57:14,16,22 58:1
59:1,9,19 60:25
61:3,10,15,18,22,23
62:2,11,20,23,25
63:2,6,7,9,11,14,20
63:21,25 64:1,5,8,9
64:10,16,18,19,20
64:25 65:2,5,8,10
65:12,17,18,21,23
65:24 66:2,6,21,23
67:3,10,20,23 68:17
68:18 71:17,19,23
72:9,11,13,23,24

73:2,17 74:1 77:14
77:18,18 78:16
80:19,20,22 81:1,2
81:2,4,6,13,16,25
82:3,4 83:11,12,16
**court'll** 38:2
**court's** 16:23 39:20
49:11 52:19 53:18
58:2,7 61:19 70:6
**courtcall** 11:24 12:3
**courtesy** 39:24
**courtroom** 6:21,24
6:25 25:9
**courts** 11:14 44:6,6
44:14 45:9 46:20
47:2 48:2,5,7,8,22
50:2 55:8,8,14 56:7
56:18 59:19 63:11
**covenant** 17:15,19
18:1 19:13,21 22:2
35:12 36:5
**covenants** 19:24
**cover** 27:22
**covered** 12:14,17
14:19 18:5 21:8,16
35:17,17,23 38:20
**covers** 19:24
**create** 23:21
**created** 23:6 26:18
47:1 63:18
**creditors** 3:12
**criteria** 73:22
**critical** 25:18 28:18
28:20 32:18
**crose** 4:2 7:14
**crucial** 14:9
**crux** 14:10
**ct** 12:20
**currently** 42:16
**cursorily** 64:8
**cursory** 64:7
**cute** 34:7

---
                    **d**
---

**d** 6:1 12:15 21:9
83:2 84:9
**dampen** 49:9

**date** 39:7,17,19
84:16
**dated** 41:12
**david** 5:16
**davidson** 3:25 6:14
6:14,16
**day** 71:22 81:21
82:5
**days** 15:22 23:17,18
29:9 33:13 60:16
78:16,18 79:19
80:19 81:3,11,12,14
81:14,16,18 83:15
**deadline** 32:4,8
39:4,8
**deadlines** 23:16
51:11
**deal** 8:17 9:14 39:8
79:14 80:15
**dealer** 8:24 12:6
14:23,25 16:15,16
16:23 17:1,17,24
18:2,5,18,22 19:2
19:12 21:2,24 22:3
22:22 23:1,7,9,12
24:11 25:20,22
28:19,20 29:6 30:23
31:1,16,20 32:10,12
32:17 35:6 36:6
38:20,23 39:11
40:18 41:25 42:1,5
42:8,10,15,15 43:10
43:11,15 45:8,12
47:7 50:17,19,21
51:21 53:7,10,16
54:15 55:6,18 57:3
57:5,6,8,18,20 58:4
59:3 60:5 63:16,18
70:20 74:21 76:20
78:19 79:1
**dealer's** 25:1 53:3
60:2
**dealers** 14:15,25
17:24 22:1 23:3,22
25:23 29:7 35:25
36:2 37:1 40:19,20
41:6,23,24 42:5,9

43:2 45:2,5 53:8,20
55:6,13 74:18,23
75:1
**dealership** 12:14,17
14:19 21:16 23:4
29:2,12 30:13 31:24
31:25 32:1 35:17,17
35:24 38:20 40:11
40:12,16 41:5 42:17
42:20,21,25 43:7
45:21 53:19 57:19
69:24 70:3,17,25,25
74:24 83:7,8
**dealerships** 33:4,6
34:20,21 43:17 45:7
**dealing** 9:25 58:15
**deals** 44:11
**dealt** 27:3 30:21
33:25 46:24
**debatable** 54:12
**debtor** 23:7 34:13
**debtor's** 23:7
**debtors** 1:11 3:4,4
42:2 46:13
**december** 18:2
32:13 42:7 81:18
**decide** 53:18 57:19
65:20 76:10
**decided** 26:17 33:15
34:21 50:7 68:4
**decider** 54:10
**deciding** 51:5 54:8
56:5,10 74:10
**decision** 16:6 26:21
29:24,25 40:14
46:10 55:24 58:20
59:23 60:21 61:18
63:5,9 66:22 67:3
71:4 72:22,25 73:13
73:14,17,20,23
74:13,17 76:12
80:15,21 83:10
**decisions** 50:24
55:3 56:9 77:14
79:23
**declare** 25:23

**decline** 50:11
**declines** 83:12
**decree** 72:4
**deed** 39:14
**deemed** 10:7 11:3,6
11:8,17 13:17 52:3
**defeat** 47:17
**defense** 45:10,19
47:13 53:1
**defer** 6:24 28:5,6,7
65:11
**deference** 15:25
**deferred** 2:3 38:14
38:16,18 39:21
41:21 44:24,25
45:11,20,23 54:24
65:10
**deficient** 48:17
**defined** 12:15 19:8
21:9,17
**definition** 18:4
**degree** 48:12 49:23
**degrees** 69:5
**delayed** 39:22
**delays** 51:10
**deliver** 79:11
**demand** 51:16
**demeanor** 66:4
**demonstrate** 73:6
**demonstrating** 74:1
**denial** 71:10,15
**denied** 71:24 73:7
80:24 81:2 83:17
**deny** 54:23 76:23
**department** 5:10
**depends** 57:13
**depriving** 70:1
**deputy** 5:16
**derivative** 49:3
**derive** 59:10
**described** 55:25
74:13 78:6
**description** 83:5
**desire** 51:9 64:18
**detail** 63:8
**determination**
23:15 26:16 39:20

41:9 53:15 54:9
55:10,15,19,20
60:19 62:6 64:16
79:18
**determinations**
36:15
**determine** 12:22
14:18 49:20
**determined** 42:21
**determining** 49:20
62:2
**deviate** 74:1
**devito** 5:2,7
**dice** 76:4
**dictated** 60:20
74:17 80:16 81:3
**dictum** 77:6
**differ** 63:15
**difference** 14:9
21:20 58:10
**different** 49:8 56:16
65:7,17 73:4,5
81:17
**differently** 60:1
77:4
**difficulties** 41:6
**difficulty** 8:2
**diminishing** 21:20
**direct** 37:1
**directing** 42:14
**directly** 46:11,12
64:8
**disagree** 58:3
**discomfort** 65:24
66:3,10
**discover** 63:9
**discovery** 23:24
**discretion** 71:25
72:21 73:1 76:15
**discretionary** 47:22
47:23 48:10 50:12
76:14,14 83:12
**discussion** 76:12
80:14
**dismiss** 15:22 58:14
**dispensed** 81:5

**dispute** 11:19 30:10
38:18,19 45:22
46:25 47:4,5,20
**disputes** 10:19
38:16 39:1 44:23
47:10 49:8
**disqualify** 75:20
**disregard** 21:1,4
43:25 54:19 55:24
61:20 62:6,13,18
63:1 77:5
**disregarded** 78:1
**dist** 73:14,16
**distinction** 20:14
**distinguish** 22:25
**district** 1:3 5:12
9:19 10:6 12:11
14:8,20 15:14,18
16:22 17:4,19 19:9
26:15 37:20 38:2
40:14,25 43:13 44:6
44:6,14 48:1 49:19
53:15,18 55:8,9,14
56:11 57:14,15
61:22 62:2,11,20,23
63:2,21 64:5,16,19
64:20 65:2,5,8
66:23 67:3,10,20
68:17 71:23,23 72:9
72:11,23,24 73:15
73:17 76:10 77:12
78:16 80:18,20,22
81:1,6 82:3,3 83:11
83:16
**diversity** 10:6 16:20
17:7 44:10 56:11
57:4,24 66:20,22,24
67:14,19
**division** 5:16 34:3
60:4
**djk** 73:13,19 74:2,4
**documented** 46:6
**documents** 48:23
**doing** 19:16,17
20:11 35:13,21 79:5
**doll** 58:21

**doom** 74:6
**doors** 56:21
**double** 9:15 43:23
49:24
**doubt** 17:11
**drafted** 48:23
**dramatic** 70:3
**drop** 57:7
**due** 13:7 14:8 18:10
54:9 64:4
**dumb** 20:3,7
**duties** 45:20,20
**duty** 18:24

**e**

**e** 1:23,23,24 3:2,2
6:1,1 60:16 83:2
84:2
**earlier** 45:10 50:24
52:19,22,25 53:7
72:22 74:9 76:5
80:7
**early** 74:16
**easier** 13:13
**easily** 30:21
**eat** 34:22
**effect** 26:1 29:10,11
29:14 30:12 31:17
32:21 48:17,17
56:16 69:13 71:15
**effectively** 32:13
**efficient** 48:11
**effort** 40:14 47:14
53:13 57:11 66:9
83:10
**efforts** 57:7 75:11
**either** 9:23 23:3,5
23:11,11 43:10
47:15 49:19 50:8
53:25 59:9 64:16
65:2 68:13 74:24
78:22
**electing** 76:15
**elections** 73:12
**electronic** 84:9
**element** 70:5
**empathy** 74:18

**emphasize** 54:25
**empowered** 46:20
57:19
**enacted** 25:12 42:7
52:20
**enactment** 29:9
79:4
**enforce** 2:3 8:16
14:2 17:11,12,22
20:2 21:15 29:18,24
30:23 31:4 38:11
39:1 45:3,16 46:20
47:10,15 49:21 52:1
52:8 53:5 54:23
58:12 59:2,3 79:14
**enforceable** 60:7
**enforced** 15:2 70:4
**enforcement** 13:18
20:10 22:6 30:10
31:13,14,19 45:11
46:17 53:1 54:23
**enforcing** 20:14
69:7
**engaged** 53:24 78:8
**engaging** 43:1
**enjoining** 40:10
83:6
**entendre** 49:25
**enter** 46:21 68:20
**entered** 11:4 19:18
40:13 41:10,20,22
44:21 52:5 56:15,25
74:22
**entering** 68:8
**entertaining** 64:10
**entire** 29:11 43:10
**entitled** 29:12
**entitlement** 66:12
**entity** 32:1 41:14
**entry** 11:18 30:16
60:20 69:1
**enumerated** 80:16
**eric** 4:16
**erroneous** 43:20
**error** 9:13,16 59:16
**errors** 64:12

**especially** 8:5 77:15
**esq** 3:8,16,24,25 4:8
4:16,23 5:7
**essence** 9:12 53:13
59:19 68:7 75:2,6
76:25
**essentially** 35:9
**establish** 42:17 51:9
55:4 57:13
**established** 46:22
53:17 70:21 71:3
73:5
**establishment** 41:4
43:7 45:6
**estate** 46:14 48:12
48:18 79:14
**estates** 49:4
**estop** 17:8
**estopped** 59:11
**estoppel** 16:18
30:21 57:2,12,14
58:19,21 68:1
**et** 1:8,9
**evan** 3:8
**evaporate** 54:1
**eveleth** 46:10 49:1
50:2
**evening** 61:1 82:6
**event** 45:25 47:18
**events** 41:7 50:8
**everybody** 15:5
16:12 28:16 30:6
37:3 71:17
**evidence** 73:22
78:20
**evidenced** 48:19
**ex** 9:6 77:22
**exact** 52:12
**exactly** 79:6 81:20
**example** 52:9 73:2
73:11,19 77:21
**exceed** 36:18
**exceeded** 43:11
62:5
**exceeding** 62:19
**exceptions** 44:14
46:4

excessive 51:10
exchange 42:4
exclusive 8:17
14:14,18 16:25 17:5
18:17 28:9,13 30:4
30:5,17 38:11,25
44:15,22 45:3 47:9
54:22 55:25 56:6,14
56:16,24 58:2,7
62:23 63:6 67:16
70:6
exclusively 61:22
excuse 62:21
execute 16:21,24
executed 38:13 60:3
executing 38:23
execution 60:8
executory 34:11
35:18 42:2
exercise 17:3 47:22
48:10 50:11 64:6
71:25 72:21 83:12
exercising 10:6
54:22 56:13
exhibit 10:24 61:24
61:24
exist 9:3 18:18 26:1
57:1
existed 66:24
existence 21:24
48:13 50:6
existing 54:19 55:24
78:21
exists 21:6 66:17,22
67:15,16,19
expectation 22:4,5
22:7
expectations 17:12
expecting 8:7
explain 16:2
explained 49:1
explicitly 28:17
express 74:18 76:12
expressed 9:7 31:2
56:18
expressly 41:17
51:17 72:1

extend 39:7
extension 16:11
19:11 36:3 39:9
extensively 11:1
extent 9:2 13:16
16:6 18:24 19:4
29:6 31:15 33:16
39:5 45:12 47:12,14
52:22,24 61:5 63:23
64:15 71:22 75:8
76:24 78:18 79:3,13
80:4 81:2
eye 19:15
eyes 78:5

f

f 1:9,23 10:24 36:13
44:23 84:2
f.2d 73:12
f.3d 46:23,23 73:20
faa 24:7,8,8,13,14
24:15 37:10,10
62:10 67:7,8
faced 41:6
fact 20:20 21:1,16
30:21 31:22,23
37:24 41:8 62:18
64:20
factor 48:16 49:16
78:10 79:10
factors 23:13 48:9
50:1 73:3 74:8
80:16
facts 11:19 21:4
41:10 50:9 54:12,24
58:11 60:12 71:8
77:10,18 78:8
factual 58:22,25
failed 52:10 53:4
60:23
failure 43:21 51:22
74:5
fairly 24:1 80:10
81:22
fall 46:15 68:11,12
falls 34:18
far 70:20 76:17,22
77:9

farther 62:9
fascinating 68:1
fashion 53:9 54:16
62:7
fast 31:23
favor 29:17 48:7
49:15 53:3 69:21
favorably 80:11
favors 73:11 79:9
fax 60:16
federal 8:25 10:7,9
11:4 12:8,10,11,13
12:18,18,21,23,23
12:24,25,25 13:2,5
14:19,21 15:13,16
15:20 16:3,4,7,8
17:6 18:10 20:8
21:3,4,6,8,10,13
23:6 24:4 26:6,15
28:6 33:18 35:24
36:8,9,11 40:25
44:2,10 45:9 48:8
50:14 51:1,2 52:5
52:16,20,22,24
53:15 55:8,14 56:7
56:22,23,23,24 57:4
57:5,16 58:3,6 62:1
62:15 63:1,4,21,21
63:22 64:3,8,9
66:17,18 67:13 71:7
72:2,19 76:20 77:13
79:21 81:17
fifra 36:14
fifth 3:5 33:15
fifths 33:8 75:4
fifty 20:7 67:6
figure 33:17
file 23:9
filed 15:21,22 32:5
39:23 42:11 43:13
65:22 70:11
filing 45:5 65:6
72:12
final 11:9,18 20:10
36:3 37:19 55:10
56:14 79:10

finality 32:10,11
finally 47:21 59:12
find 41:10 46:2
50:22 51:21 59:7,8
78:9
findings 20:20
21:15 36:15 41:8
finished 39:25
first 6:20 7:18 17:9
35:16 39:21 44:4,5
44:5 50:23 53:22
56:2 59:9,14 69:10
69:14 72:6 74:15
76:6
fit 7:17
five 33:9,24 34:1,8
34:12,13,15 60:9
67:12 78:16,18 81:3
81:12,13,14 83:15
focus 10:18
focusing 60:10
folks 6:12,21 61:1
75:12 78:8 80:14
81:6
follow 7:21 9:21
followed 79:19
following 7:18 41:8
71:24
follows 44:9
footnote 27:16
forcing 53:25
foreclosed 56:13
foregoing 60:13,14
84:4
forget 20:11
forgive 66:2
form 8:12 60:7
former 73:23
forth 33:21 61:6
fortunes 68:11,12
forty 23:17 29:9
forum 24:25 30:8
41:2 49:6,8,13 65:8
forward 11:15
found 34:9 64:21
four 33:4,6,8,8,14
33:25 34:20,21

63:11 66:20 67:12
67:24 69:16 73:22
74:6,8 75:3 80:16
**fours** 75:22
**fourth** 66:24
**frames** 48:19
**franchise** 9:15
33:24 35:18 45:19
53:19 60:2,9 74:16
74:20,20
**franchisee's** 78:21
**franchises** 33:9,24
45:15 47:16 52:11
60:1 74:19
**frankel** 3:10
**frankly** 8:12 57:8
69:21 75:12 76:13
**frap** 72:19
**fraud** 36:16 43:24
54:19 55:23 61:20
62:9,13,19 64:12
70:12,15 77:3
**free** 41:16 46:14
49:1
**fritz** 70:16
**front** 65:4
**frustration** 7:19 8:2
**fulfill** 17:25
**full** 38:25 45:3 47:9
74:2
**fully** 22:18 31:11
66:5
**fundamental** 59:16
**fungicide** 36:12
**further** 81:4

**g**

**g** 6:1 83:4
**gain** 78:21
**garden** 9:16
**general** 1:9 2:2 3:20
4:3 7:15 23:5 29:4
29:13 30:7,22 33:3
33:12 34:3 40:9
69:22 70:2,13,17
72:22
**generating** 43:2

**gentile** 4:18 7:8
**gentleman** 7:11
**gentlemen** 7:3,16
8:9 71:19 82:5
**gerber** 1:24 13:12
**getting** 33:14 80:8
**give** 7:22 14:25 22:9
25:8 36:1 45:21
48:23 56:23 64:15
79:24
**given** 20:1 25:22
26:11 32:2,23,24
33:12 49:12 55:5,7
55:13 58:10 63:6
66:8
**gives** 15:18
**giving** 12:8 43:20
50:3 77:18
**glad** 18:19
**gm** 3:20 4:3 6:4,16
10:10,10,21 11:8
12:6 13:5,11,15,21
14:1,1,14,16,17
18:15 19:22 20:3,16
21:7 29:16 30:13,13
30:14,18 31:4,25
35:25 36:4 39:6,22
40:10,16,17,18,20
40:21,25 41:3,5,13
41:14,15,17,20,20
41:23 42:10,14,16
42:19,21 43:5,6
44:21 45:2,5 51:13
51:16,22,25 52:9,14
53:4,20,21,23,24
55:7,13 57:3,10,20
58:11,14 59:1,4,10
60:4,13,16 62:10
65:5,25 66:21 68:2
68:9 71:6 72:25
74:10,12 77:20 79:2
79:23,24 83:6
**gm's** 32:11 38:10
40:11 41:4,16,16
45:6 58:9 68:12
78:15 79:20 83:7

**gmc** 42:14 43:18
59:25 75:9
**go** 7:7 11:24 12:4
15:1 16:1,5,16
17:21 18:11 20:12
20:23,25 25:4 32:13
37:20 38:7 39:17
49:5 63:8 64:18,19
65:5,21 68:4,5,9,10
68:25 69:3,4 71:23
76:21 78:12 80:15
80:18 81:18 83:16
**goes** 13:7 25:21
39:15 62:8 70:22
79:7
**going** 6:9,24 7:17
11:15 14:24 17:18
19:6 22:9 25:7
26:10 30:24 32:2
39:21 40:2,2 49:25
50:4 64:24 65:1,11
65:17 66:6,18 69:1
71:2 74:11 75:13,19
75:21,22,23 77:8
78:18,21,22,23 79:5
79:8
**good** 6:3 22:10,15
34:19 39:14 49:2
60:25 82:5
**gotshal** 3:3
**governed** 24:7,8
29:3 33:18 72:2
**governing** 36:20
**governs** 24:8
**grafting** 51:7
**grant** 56:18 66:14
72:25 78:18 80:17
**granted** 41:8 69:6
71:15 72:7,8 73:10
78:11 83:11,15
**granting** 12:14
71:21
**grants** 72:12
**greater** 79:3
**green** 1:16
**greg** 6:17 7:13

**gregory** 4:8
**ground** 43:25
**grounds** 62:11,14
66:20 67:13,24
69:21 77:7
**group** 4:12,19 5:3
7:9
**guess** 13:24 74:17
75:4 78:17
**guidance** 49:13
72:18
**guide** 62:1
**guilty** 62:4
**gun** 80:20
**guy** 78:23
**guys** 7:19,24

**h**

**h** 4:23
**ha** 20:11
**half** 74:18
**hampshire** 59:7
**hand** 6:25 49:25
60:16
**handle** 30:9,11
**happen** 75:2 82:2
**happened** 70:19
**happens** 13:11 32:3
36:22
**happy** 18:4
**hard** 66:4 75:12
**harm** 69:22,24 70:1
**harmed** 69:23
**harmonize** 19:25
**harmony** 18:25
52:21 53:6
**hawthorne** 4:4
**head** 80:20
**hear** 12:1 22:10
41:2 56:19,21 62:20
62:21,21 63:21
67:22 76:13
**heard** 13:23 20:15
68:22
**hearing** 2:2 13:10
39:17,19,23 48:3
60:25 72:1

heavy 73:18
held 12:21 42:12
46:19,19 63:12 64:1
74:5
help 8:20 9:4,16
10:3,11
helpful 72:15
henderson 70:17
highlighted 26:14
hinder 49:10
hirschfeld 73:12
history 24:1,2 51:6
hit 18:19
hits 36:4
hold 32:13 67:10,15
hon 1:24
honor 6:7,22 7:4,7
7:13 10:13,16,18,25
11:7,15,18 12:1,5,6
12:9,16,22 13:2,3,9
14:5,9 15:3,10,12
16:6,13,19 17:2,9
18:7 19:5,7,18 20:6
20:19,22 21:11,14
21:19 22:12,15,19
22:20 24:17 25:10
25:15 26:2,7 27:9
27:20,23,24 28:3,12
30:20 31:6,9 32:16
33:15 34:25 35:5,10
35:16 36:10,12,23
37:8 38:7 39:14
52:21,23 53:4 60:24
61:2,4,13,17,17,23
61:25 62:18,22 63:5
63:10,14,23 64:9,14
65:4,18 66:15,19,25
66:25 67:3,4,11,20
67:25 68:15,19,24
69:12,18 71:15 81:8
81:19,23
honor's 22:16,18
36:21 39:24 61:8
64:14 67:17 68:16
70:3,4 71:4
hoped 45:18

hopefully 74:18
hour 39:7 74:17,17
hours 66:7
hypothetical 25:11

**i**

i.e. 62:5
idea 11:11 37:15
identified 34:4 60:4
ignored 54:12
iii 36:13
implement 24:21
29:24 38:11
implementation
9:21
implements 8:18
50:15
implicated 17:16
32:12,14
implicating 28:14
implication 16:11
implicitly 31:17
implied 9:2 10:5
54:21
impliedly 54:23
imply 51:3
importance 70:17
79:11
important 8:6 9:25
22:25 27:24 38:7
48:16,20 50:5 79:20
impose 51:11
imposed 24:10
48:20
imposing 24:20
imposition 73:24
impressed 57:8
improper 64:12
69:3
impute 11:14
inapplicable 50:7
inappropriate 51:8
68:24
inappropriately
18:5 36:22
incisive 22:16
include 46:3 48:11

included 45:1
including 38:14,15
51:19
inconsistencies
58:24
inconsistent 18:24
31:16,19 38:9 51:9
51:20 58:8 59:8
incredible 8:1
incumbent 35:8
independent 60:6
indicate 31:10 63:5
indicated 52:17
53:5 68:20,24 75:21
indicates 80:14
industrial 73:20
infallible 64:25
initial 51:23
initio 59:23
injects 49:9
injunction 32:7
injuries 78:12
injury 73:7,10
74:15,23 75:6,10,15
75:19,21 78:11
inquiry 22:18
insecticide 36:11
instance 36:16 72:6
instructive 46:24
insurance 64:22,23
intact 43:16
integrated 34:10,12
34:17
intended 16:14,15
60:8
intent 15:4 23:20,23
33:4,11 51:3 52:21
52:24 65:23
intentional 24:18
interest 48:1,2
49:10 70:5,7 73:11
78:14 79:9,20,21
80:1,3,4,5,10,11
interests 80:12
interfere 33:1 45:6
interfering 40:11
41:4 43:7 80:1 83:7

interplay 28:18
32:17
interpret 12:19,25
15:6 38:25 47:9
59:2,3
interpretation
66:18
interprets 38:4
introduce 6:9,12,21
7:12
introduced 6:8 22:3
introduction 15:16
invalid 25:5
invalidate 25:5
invention 47:24
invoke 47:23 53:8
59:5
invoked 72:2
invokes 20:18
invoking 57:4 58:19
77:16
involuntarily 48:14
involuntary 50:9
involved 36:11 70:7
involving 63:24
iqbal 77:15
irregularities 77:23
78:6
irrelevant 26:7
irreparable 73:7
75:10,14,19,20
isaac 6:17 7:14
isaacs 4:2
issue 10:6 13:3
14:12,13 16:8,9
22:19 26:21 27:13
27:24 30:20 31:9
41:3 44:18,20 55:9
59:18 63:23 64:4,5
70:24 71:6 76:9
80:20
issued 42:13 50:20
50:24 74:21
issues 8:7 18:10
32:11 53:19 54:8,16
55:2 56:9 57:21
65:14 67:18,22

72:18
**issuing** 49:13
**it'll** 10:13
**i'm** 26:10

**j**

**j** 3:24 4:16
**jennifer** 3:16
**jerry** 74:6
**joined** 65:14
**jointly** 40:8
**jones** 5:16
**judge** 1:25 9:10
10:6 13:12 35:22
52:18 64:21 72:5,6
72:8,11,23 73:15,15
73:17 74:4,12 76:10
76:10 77:12 80:21
**judge's** 77:13
**judges** 8:15 9:19
**judgment** 11:3,18
19:8,10 38:2,3 52:4
64:24 65:15 67:1,5
67:9 69:6,7,9 72:4
**judicata** 56:2 79:25
**judicial** 8:24 9:7
10:5 11:10,13 12:7
13:5,7 14:6,7 15:4
15:17 16:11,18 17:8
20:9,21 21:3 22:1
24:4,15,17,19,22
25:21 26:1,6,8,12
26:22,23 27:1,12,18
28:14,15 30:20
31:18,21 32:19,20
33:20 36:14,20
37:23 44:9,10 47:24
50:20,23 51:2,4,14
54:3,9 55:21 56:9
57:2,12,14 58:19,21
59:12 67:25 69:12
69:25 70:1
**judicially** 51:7 79:1
**july** 19:14 23:19
28:25 41:10,15
56:15 79:1
**june** 33:3 41:12
42:13

**jurisdiction** 8:11,13
8:14,17 9:20 10:6,8
11:5 12:9,12,24
13:3 14:9,12,13,14
14:18,22 15:3,7,8
15:11,14,18,19,24
16:3,17 17:1,3,5,6,7
18:14,15,17 21:12
21:18,18,21 28:4,4
28:5,9,10,10,13
30:5,5,17 35:20,22
36:2,8,9 38:8,11,15
38:23,25 39:9,11,13
44:4,4,5,7,8,11,12
44:15,19,20,23 45:3
45:9 46:1,8,16 47:7
47:9 49:15 52:5
53:18,23 54:23
55:25 56:6,7,11,12
56:14,15,17,19,20
56:24,25 57:5,15,16
57:22,25,25 58:2,4
58:6,7 59:6 62:3,23
62:24,25 63:2,6
64:1,2,2,7 67:15,16
67:21 68:7 70:6
76:7,8,9
**jurisdictions** 8:10
**jury** 50:6,8
**justice** 5:10 48:1
**justifiably** 48:25

**k**

**k** 1:9 3:20 4:3
**kaplan** 72:23 74:12
80:21
**keep** 19:6 52:11,12
**keeping** 40:8
**kind** 9:10 10:5
25:14 30:2 33:20
**king** 3:19 6:14
**knew** 19:15
**know** 6:11 9:18
11:22 13:24 20:22
24:19 25:21 26:4
40:2 50:24 65:18,24
**knowledge** 48:22

**kramer** 3:10

**l**

**l** 83:4
**l.p.a.** 5:2
**label** 70:13
**labor** 27:4 55:18
**lack** 58:24 74:19
**lancaster** 42:21,23
42:25
**landing** 74:25
**language** 13:17
15:16 26:14 27:12
30:5 31:2 34:2 52:8
72:14 79:10
**large** 43:2
**larry** 20:22
**lastly** 79:9
**late** 39:7 81:9
**law** 9:13 12:23
15:17 21:1,4 35:18
35:19,19,23 36:20
37:4,7 38:6 40:19
41:9 42:7,25 43:21
43:25 44:3 48:3,6
49:17 54:19 56:22
59:19 61:20 62:13
62:19 63:1 64:12
66:12 72:17 77:24
80:17
**laws** 56:23,23 67:6
**lawsuit** 15:13 32:24
**lay** 7:19
**layers** 33:16
**lead** 77:18
**leadered** 24:14
**lease** 34:12
**leaving** 16:14
**lectern** 6:10
**led** 65:25
**lederman** 3:8 6:5,7
**left** 28:17 29:1
32:20
**legal** 9:16 58:22,25
**legislation** 26:20
51:4 52:20,22,25
**legislative** 23:20,23
24:1,2 27:11 51:6

56:4
**leib** 2:25 84:4,8
**letter** 33:4,11
**level** 17:8 57:12
**levels** 77:6
**levin** 3:10
**lexis** 72:24 73:14,16
**liabilities** 41:17
**liens** 46:14 49:2
**lies** 73:1
**life** 7:20 49:12 57:9
**light** 60:9
**likelihood** 69:17,19
70:10 73:8 75:13,24
76:1,3,17
**likewise** 50:2 74:11
**limited** 13:6 18:3
38:15 67:7
**limiting** 59:16
**limits** 56:25
**line** 9:24 37:10 60:6
78:8 83:5
**liquidation** 1:8 6:4
50:1
**lisa** 2:25 84:4,8
**litigant** 66:5 73:6
**litigated** 66:7
**litigation** 23:25
43:6 51:10 75:11
**little** 9:1 62:8
**llc** 2:2 3:20 4:3 7:15
40:9
**llp** 3:3,10,19 4:2,11
4:18
**lobby** 42:19
**located** 42:18
**logical** 16:11
**long** 40:2 63:23
82:4
**look** 12:21 16:5,7
21:5 23:14 25:2
26:19 35:22 51:6
62:2 63:12,13 72:17
**looking** 19:16 29:24
65:13,20 71:13,13
80:11

losing  9:9 21:20
    74:19
loss  74:16,20 78:22
lost  47:18
lot  8:6 64:21 66:9
lower  47:2 56:7
lure  43:1
lynch  73:15 74:4,6

**m**

m  5:7
macadams  5:2
mail  60:16,18
main  48:13 49:24
maine  59:7
maintain  43:16
    53:6 66:4
maintained  43:17
making  23:14 34:22
    35:9 49:3 58:10
    61:7 77:16
management  7:22
mandate  36:19
manges  3:3
manifest  21:1,4
    43:25 54:19 55:24
    61:20 62:5,13,18
    63:1 64:12
manufacturers
    23:22
marshals  25:8
master  41:12
material  76:16
matter  1:6 6:8,8
    7:25 8:10,11,18
    12:9,12 37:2 43:21
    44:5,7,8,11,20 45:8
    46:1,2,9,9 47:11,19
    51:6 54:19 56:12,14
    56:19,20 57:25 62:4
    62:6 63:3 64:6,6
    68:7 69:2 76:7,8
    77:24
matters  6:6 17:1
    39:2 46:3 55:10
    56:8 60:23 62:17,18
    62:20,24 63:1 75:5

maximization  49:10
maximum  79:24
mayle  20:23 43:4,6
mean  10:9 37:11
    56:21 64:25 65:18
    69:2
means  14:15 35:23
    62:9 70:13
meant  36:1,3
mechanism  51:10
    52:1 53:8,17 60:18
    79:6
mechanisms  50:21
medicare  26:24
    27:1
memory  72:1
merely  60:11
merits  56:10 64:13
    67:24 69:17,20 71:5
    73:9 76:4,19
mesh  22:23
methods  60:17
michigan  79:22
millenium  8:21
    46:22
mind  10:3 67:14
mineola  4:21 7:9
    84:14
mines  46:10 49:1
    50:2
minimal  19:1
minimally  18:13
minute  6:20 7:2
    61:11 75:13
minutes  13:15
    74:13
mirrors  62:10
misbehavior  62:5
misconduct  36:16
    62:5 70:21 71:2
misconstrue  36:19
misinterpreted  18:5
misleading  70:18
misled  59:9
misrepresentation
    36:16

missed  8:12
mistake  62:19
modification  72:7
    72:10
modified  32:21
    35:11 40:24
modify  19:9 38:4
    41:1 43:14 45:8,9
    61:24 62:12 67:2,9
modifying  40:13
    83:9
moment  14:11 53:5
    80:16
moments  81:9
monetary  69:8
money  9:24
monica  16:20,21,24
    17:2 58:9 59:1
months  19:16,19
    22:5 23:17
moon  75:11
morganstern  5:2
morning  6:3
morphed  28:3
motion  2:2 15:13,22
    15:25 32:5 38:10
    39:23 41:8 46:7,11
    46:13 65:11 68:22
    68:23 69:14 71:14
    71:15,20,21,24 72:2
    72:4,7,9,16 74:6
    83:6,14
motors  1:8,9 2:2
    3:20 4:3 6:4,5 7:15
    9:8 23:5 29:5,13
    30:7,22 33:3,12
    34:3 40:9 59:1
    69:22 70:2,13 72:22
mouth  61:19
movant  73:18,24
movant's  73:9
move  15:21 28:11
    31:19
moved  32:6
moves  40:10 71:20
mpa  41:13,14,18

mspa  38:12
mute  11:20,24 12:3

**n**

n  3:2 6:1 46:3 83:2
    83:4 84:2
naftalis  3:10
namees  58:13
nationwide  78:25
natural  34:16 36:3
naturally  11:8
nature  34:4
necessarily  28:7
    46:12
necessary  26:16
    55:11,15,21 61:6
    79:24
necessity  70:5
need  6:20 7:17 9:10
    10:2,11 17:25 23:23
    24:2 30:1 37:9
    56:18 65:19 67:18
    79:14
needed  48:18
needn't  40:3
needs  7:18 25:14
    50:4 79:21
neither  68:12
network  23:7 30:13
    42:10 57:20 70:18
never  10:3 21:13
    24:19 32:5,6 64:24
nevertheless  8:20
new  1:3,17,17 3:6
    3:14,20,22 4:3,14
    5:12,14 6:16 7:9
    10:10 13:15 14:1,17
    19:22 20:3,16 23:5
    24:20 29:4,13,15
    30:7,13,14,18,22
    31:4,25,25 32:11
    33:3,12 36:4 39:22
    40:10,11,17,20,21
    40:25 41:3,4,5,14
    41:15,17,20 42:7,14
    42:16,19,20,25 43:5
    43:6,7 44:21 45:2,5
    45:6 49:19 51:13,16

51:22,25 52:9,14
53:4,7,20,21,23,24
55:7,13 57:3,10
58:9,11,14 59:1,4,7
59:10,19 60:13,16
68:3,6,9,10 69:22
70:2,3 71:6 78:19
78:22 79:2,24 83:6
83:7
**nice** 27:14
**night** 80:21
**nondebtor** 14:17
35:23
**nondebtors** 14:17
46:25
**nonexclusive** 23:14
**nonsoluble** 34:18
**normally** 16:9
40:10 56:20
**note** 33:2 45:7
50:25 74:12
**noted** 44:25 46:11
54:4 57:24 59:21
74:4
**notes** 35:1 58:19
**notice** 28:2 60:16
**notices** 23:9
**noting** 57:2
**notwithstanding**
52:10
**november** 32:14
**nuanced** 76:2
**nuova** 11:11 37:15
**ny** 3:6,14,22 4:14
4:21 5:14 84:14

**o**

**o** 1:23 6:1 84:2
**object** 18:16
**objected** 10:21
**objection** 10:23
63:8
**objectionable** 64:22
**objections** 51:17
**obligated** 45:21
**obligation** 24:11,13
**obligations** 17:25

**observations** 58:12
**obtain** 64:14
**obtained** 72:10
**obviously** 48:15
74:15
**october** 1:19 17:25
31:23 32:7 39:4,7,8
39:19 42:6 65:16
69:24 78:12,20,24
78:25 84:16
**offer** 66:13
**offered** 41:24 80:5
**office** 5:11
**official** 3:11
**oh** 5:5 33:7
**ohio** 79:22
**okay** 6:22 7:10,16
10:14 22:9 35:15
61:15 81:15 82:1
**old** 4:20 7:8 30:13
37:8 40:17 41:13,16
41:16,20,23 84:12
**once** 33:9 54:25
58:6
**one's** 78:22
**ones** 80:13
**operate** 79:23
**operated** 32:1
**operating** 33:11
**opinion** 70:4
**opponent** 20:2
**opponent's** 20:15
**opportunity** 29:8
40:19 42:9 79:24
80:6,8,18
**opposed** 74:9
**opposite** 52:15
**oral** 27:15 45:25
52:17 61:7,8,10
68:21 71:20 83:14
**orally** 33:16
**order** 2:3 8:18 9:22
10:22 15:23 18:7,23
19:3,18,22 22:6
23:8 26:10 30:5,16
31:5 38:12,21 39:12
40:10,13 41:11,11

41:15,20 44:21 46:5
46:9,22 47:1,4
49:11,12 50:1 52:19
52:23,25 53:7,23
56:1,15,17,22,25
60:14,15 61:8 62:12
64:15 66:23 67:17
67:19 68:16,16,20
69:2,4 70:3,6 72:4
73:1,5 81:23 83:6
**order's** 60:20
**ordered** 80:25
**orders** 7:22 8:16
9:19,20 17:11 45:10
46:4,17,20 55:10
63:7
**ordinarily** 72:5
**ordinary** 74:1
**organized** 8:1
**original** 44:15
63:10 79:17
**originally** 41:22
49:6
**outcome** 18:4 37:14
46:6 78:7
**outflow** 34:16
**outright** 41:25
**outstanding** 34:1
**overlay** 32:22
**overly** 34:7
**overmyer** 73:2
**overturn** 20:25
**overturning** 63:11
**owned** 33:9
**owner** 42:19 43:3
**oxford** 4:2,8 6:17
6:17,22 7:13,13,14
7:16 8:3,3 11:20,22
12:1,4

**p**

**p** 3:2,2 6:1
**p.m.** 40:6,6 61:14
61:14 82:6
**page** 58:19 61:25
62:3 63:8 73:12,20
73:23 83:5

**pages** 26:4 27:22
46:10
**palmdale** 42:18,22
42:24 43:4
**papers** 11:1 17:18
24:16 26:13 28:3
61:7
**paragraph** 10:23
16:19 44:23 52:7
70:22
**paraphrase** 55:16
**parcel** 30:4
**parenthetically**
45:7
**parentheticals**
55:12
**part** 22:21 27:15
30:4,8 34:12 41:19
44:13 45:16 51:22
72:3 75:17
**parte** 9:6 77:22
**partially** 19:19
**particular** 7:25
8:18 10:23 47:19
48:3 51:19 58:5
67:24 78:1
**particularly** 46:24
51:8 55:3 57:23
58:8
**parties** 6:9 10:20
11:2,14 24:9,13
31:1 35:23 36:17
41:13 48:23 52:2
54:11 63:13 73:9
78:10
**party** 26:12 37:13
37:20 48:14 50:7
58:21 60:7 62:14
73:21 80:5
**pass** 14:24
**passed** 14:24 35:14
**passes** 24:20
**passive** 30:15 81:22
**passum** 8:5 27:7
**pause** 10:15 22:8,14
24:23 35:4 71:16,18

payments 42:5
pending 61:5,8
 68:20,23 69:16 70:9
 71:10,14,21 72:5
 73:1,5 81:10 83:14
people 6:23,24,25
 32:3
peppercorn 75:19
perception 59:9
perform 34:13
period 29:12 81:21
permit 71:22 80:18
 83:15
petition 61:24 63:13
 63:16 64:11 70:11
 70:14 71:7
petrie 8:21 14:11
 17:10 46:23,23 47:1
ph 58:13
phone 6:23 7:11
 11:21
pick 26:9
place 20:12 33:14
 53:22 69:10,14
 71:17 80:2
plain 15:15 44:5
plainly 47:23 52:13
plan 9:22
plants 79:23
platform 40:12 83:8
play 15:8 79:3 80:8
pleading 77:17
please 6:4,20 7:2
 11:21 40:7 61:15
pled 62:16
plural 34:5
plus 37:24
pm 1:20
point 10:17 22:17
 34:2 46:11 53:20
 54:13 57:24 58:9
 59:4,20 61:12 66:19
 70:10 71:7,12 81:12
 82:3
pointed 10:19 12:6
 12:9 17:15 31:22
 62:18 64:3

points 8:22 58:10
 61:12
policy 20:18 28:5
 49:2
pontiac 75:4
portion 14:16 34:10
 80:7
posed 25:11
posit 9:4
position 18:12
 38:21 43:21 52:18
 58:22,23
positions 58:25 59:8
possess 12:12 36:9
possesses 14:8
possession 3:4
possibility 73:8
 76:3,18 77:10 78:3
 78:9
possible 39:17
 52:21 60:15
post 49:8
poster 8:14
potential 25:19
 78:12
potentially 25:23
power 48:7 55:5,9
 62:5 76:9
powerful 16:6
powers 36:19 62:19
 64:12 65:20
practical 69:2
practicing 63:22
prec 70:21
precedent 70:21
 71:3
preclude 45:4
predicate 61:6
 63:16
predicated 46:8
predictability 48:24
prejudice 48:14
 50:9 78:15,16
prejudicial 79:2
preliminary 6:5
prepared 28:7
 66:13

present 81:23
presentation 81:10
presentations 7:17
presented 12:13
 16:8,9,9 55:22 72:6
 72:19
presents 12:10
preserve 26:16
president 20:23
presumably 43:15
 45:15 53:25
pretty 50:5
prevail 45:14,18
prevailed 13:22,22
 45:12 47:16
prevent 43:1,14
prevents 48:1 58:21
previous 40:12
principally 48:5
principle 8:15
principles 59:16
private 73:19 78:15
 80:4,12
problems 58:18
procedural 54:9
procedure 24:21
 35:13 48:18 72:3,20
proceed 51:15
 53:21 57:7 78:24
proceeding 40:21
 40:22 46:7,13 48:3
 48:13 49:3,24 56:17
 57:3 58:22,24 71:20
proceedings 42:20
 44:12,16 46:6,15,18
 46:18 77:23 82:6
 84:5
proceeds 78:24
process 13:7 14:8
 18:10 21:21 22:21
 23:23 30:8 42:10,19
 45:12,14 49:9 51:11
 53:25 54:9 64:4
 70:15 74:8
program 78:25
prohibit 19:17

promised 31:25
 79:13
promoted 49:4
prong 44:20 74:5
prongs 15:9 69:16
pronouncement
 56:4
properly 61:21 63:3
 78:13
property 46:5
proposition 11:11
propriety 76:6
prosecute 68:25
prospective 49:5
protect 26:16 46:21
 55:11,15
protecting 70:5
protection 26:18
protects 36:18
protest 51:23
protested 31:19
proves 9:4 24:24
provide 9:20 24:4
 26:23 28:16 31:20
 34:23 45:10 50:19
 51:2 53:9 54:4
 59:22 60:17 77:5
provided 9:23 23:3
 29:4 40:19 42:4
 43:4 45:13 52:2
 53:9 60:5 75:1 80:9
provides 44:13
 47:25 50:21 57:25
 72:3 76:21
providing 43:6 47:7
 53:1,7 71:22
province 61:21,22
provision 10:8
 17:14 29:13,23
 36:18 51:1,4 58:2,7
provisions 10:2,4
 20:5 24:5 26:5
 28:23 32:25 39:10
 45:1 51:20 55:25
public 28:5 70:4,7
 70:16 73:11 78:14
 79:9,20 80:1,3,9,11

80:13
**purchase**  41:12
**purchased**  41:15
**purchaser**  23:7
49:10 63:24
**purchasers**  49:5
50:3 79:12
**purposely**  71:11
**purposes**  10:17
14:21 23:14 29:11
31:12 34:6 35:7,12
35:12 48:6 51:20
**pursuant**  2:2 40:12
40:17 41:14
**pursuing**  40:14
83:10
**put**  23:16 25:25
31:17 40:12 51:24
55:12 56:8 70:13
77:1,10,11 79:2
80:2,7,19
**putting**  9:24 14:10
61:19

**q**

**quacks**  64:21
**quarrel**  10:10
**quarter**  14:3
**quarters**  13:19,20
13:21 33:8 75:3
**quasi**  53:13 54:9
**question**  10:7 12:10
12:12,13,22,24 13:1
14:21 15:16 16:7
18:10,14 21:3,6,8
21:10 27:17 35:6
36:8,8,21 44:10
53:15 57:5,16 58:4
58:6 63:4 64:4
66:17 67:13 68:2,2
69:15 71:11 77:2
**questioning**  21:12
**questions**  16:8
22:16 35:3 60:23
**quick**  24:3 39:23
**quickly**  39:17 48:19
60:14 61:2

**quote**  11:2 23:25
**quoted**  10:1 26:13
52:6 72:14 79:10
**quotes**  23:25 36:23
**quoting**  55:17 62:4

**r**

**r**  1:23 3:2 4:8 6:1
83:4 84:2
**railroad**  55:18
**railway**  27:3
**raised**  13:3 17:10
25:19 36:10
**raises**  54:7 67:18
**rally**  4:12,19 5:3 6:5
7:9 9:8 12:18 17:24
18:4,11 19:7 20:22
21:11,13 29:12,18
30:15 33:5 36:25
38:5 40:10,16,19,22
40:23 41:3,7 42:9
42:11,18,19 43:3,5
43:9,13,19 44:18
45:4,14,24 47:12
52:7,10,11,12,12
53:12,24 57:2,13
58:19 59:18,18 60:9
62:1,11,16 63:15
67:23 68:10 70:12
71:20,23 75:2,17,20
75:25 79:11 80:12
80:24 83:6,14,16
**rally's**  12:16 29:17
42:14,15 47:22
51:13,16 61:24
67:14
**read**  20:5 60:3
70:22
**reading**  50:24
**real**  22:19 27:17
**really**  20:4 24:16
28:8 68:22 75:15
**reargue**  69:18
**reargument**  60:22
68:22
**reason**  10:1 18:16
20:6,7 27:11 28:12
28:13 30:4 35:20

47:3 51:14,21 56:14
66:2 67:15 69:14
75:10 76:14 78:18
**reasonable**  52:18
60:11
**reasonably**  60:14
**reasons**  15:15 26:17
49:2 50:11 55:24
59:21 60:13 61:6
63:19 64:10 67:22
68:15 81:3
**recall**  27:7
**recess**  40:2,5,6
61:11,14
**recites**  24:15
**recognized**  30:17
**recognizing**  74:23
**record**  51:24 62:13
81:4 84:5
**redress**  18:11 37:1
**refer**  40:10 41:21
42:1 67:1,1 70:11
**reference**  81:13
**referral**  21:11
**referred**  26:24
41:13 45:1
**refers**  8:5 24:2
**reform**  40:12 83:8
**refused**  17:3 39:8
53:21
**reg**  1:4
**regard**  30:20 31:9
32:16 34:9 57:11
71:25
**regarded**  78:14
80:10
**regarding**  38:18
**regardless**  13:10
**regular**  15:25
**reimbursement**
26:25 27:1
**reinstate**  42:14,20
**reinstated**  23:6,12
23:12 33:5,6 40:20
42:16
**reinstatement**
25:23 29:2 34:15,21

42:9 45:19 71:1
**reinstating**  13:11
43:12
**reject**  42:2 43:10
**rejected**  23:5 47:21
**rejection**  41:25
70:25 74:24
**related**  8:13 14:11
15:2,7 28:5 30:12
39:2 44:16,18 47:11
47:19 48:4
**relatedness**  48:12
49:23
**relating**  24:14,15
26:25 27:13 30:10
30:10 44:10
**relations**  48:24
**relegated**  27:16
**relegating**  49:8
**relevance**  24:16
**relevant**  18:13
44:13,14,19 46:4
49:21 54:17 72:3
75:4
**relied**  11:1
**relief**  9:10 16:17
34:24 38:9 46:8
57:10 69:5 71:13
72:5,7,8,9,12
**relies**  44:21 49:11
**relocate**  42:21 43:3
**rely**  12:11 16:20,22
16:23 17:6 48:25
**remain**  20:13 56:2
**remainder**  6:12
66:11
**remedies**  9:2
**remedy**  25:3,5 29:7
30:2 54:22 62:7
75:1
**remember**  15:12
**remotedness**  49:23
**remoteness**  48:12
**removal**  12:13,17
48:15
**removed**  48:14 50:9

**reply** 16:4 21:7
22:10 23:25 27:22
35:15
**request** 42:11 61:7
**requested** 80:25,25
**require** 7:23 57:6
75:21
**required** 20:20
**requirement** 74:2
**requirements** 7:21
**requires** 54:9
**res** 56:2 79:25
**reservation** 51:23
**residential** 73:13
**resolution** 25:13
**resolve** 38:16 44:23
55:5
**resolved** 48:19
**resolving** 46:9
**respect** 17:1 33:8
38:16 40:22 44:12
44:24 45:15,22
47:17 48:2 53:1,2
59:25 60:1 63:4
66:15,16 67:5,6,6
72:15 74:8 75:9
**respectfully** 62:24
67:2
**respective** 18:21
**respects** 38:14
83:17
**responding** 51:16
**response** 8:7 36:21
**responses** 77:12
**restate** 55:12
**restrain** 16:24
**result** 14:22 21:14
34:10 37:1 43:24
45:17,18 63:7,20
**resulting** 46:17
**results** 25:6 75:16
**retail** 8:21 46:23,24
47:1
**retain** 38:25 47:9
**retained** 44:22 45:3
46:8

**retaining** 38:15
**retains** 38:10
**return** 25:8
**reversal** 77:8
**review** 8:24 9:8
10:5 11:10,13 12:7
13:5,7 14:6,7 15:4
15:18 16:11 20:9,21
21:3 22:1,2 24:4,15
24:17,19,22 25:14
25:15,16,21 26:1,8
26:12,15,22,23,25
27:1,12,19 28:14,15
31:18,21 32:19,20
33:20 36:14,20
37:23,25 50:20,23
51:2,14 53:13 54:3
54:5 55:21 56:9
59:12,17,23
**reviewed** 55:7,14
**rewrite** 53:10
**right** 6:4,11,15 7:2
7:5,10,16 8:24 9:7
10:9,11 11:10,24
13:5,7 15:4 16:10
17:13 19:6 20:2,9
20:15 22:2,7 23:6,8
24:11,17,20 25:3,22
25:24 26:12,17,18
29:21 32:23 33:11
34:8 36:7 37:23
38:1 40:1,1 41:1
47:16,23 48:14 50:6
50:16,23 51:14 52:8
54:22 56:9 59:24
60:12,22 66:6,8
67:1,4 68:14,18
69:12,25 70:1 71:6
75:12 76:21,23,25
78:5 82:4
**rights** 11:13 18:3,3
19:23 23:22,22 32:2
32:12,14 42:2 46:21
46:25 49:12 51:2,7
51:22,23 53:8 55:7
55:11,13,15 64:6
66:5 69:8

**rigid** 74:9
**rise** 6:2 68:11,12
**rises** 17:8 57:11
**road** 4:20 7:9 33:14
84:12
**robert** 1:24
**rodenticide** 36:12
**routinely** 51:1
**rule** 11:3 31:9,12,12
31:18 38:5 45:25
52:6 55:4 59:25
61:4 67:14 72:2,12
72:14 73:6 74:9
78:4
**ruled** 29:17 53:3
58:1 69:3,19 71:4
**rules** 7:23 10:18,20
10:22,24,25 11:8,16
12:8 16:15 18:11
19:10,19 20:20
31:10,11,14,15
37:12,17,18 51:16
51:19,19 52:1,1,2,3
52:6 72:19 81:17
**ruling** 20:4,22,24
23:19 40:4 42:15
56:3 60:10 62:6
66:8 72:24 74:9,20
75:14 76:5,21 79:18
79:19
**rulings** 76:11 79:25
**run** 60:19
**running** 65:9

**s**

**s** 3:2,8 5:16 6:1
12:20 83:4
**sale** 2:3 9:22 22:21
30:5,8,16 38:21
39:12 41:11,11,15
41:20 46:4,5,14,20
46:22 47:1,4 49:1,6
49:7,8,9 56:1 66:23
67:17,19
**sales** 21:21 34:2
41:25 43:2 60:2
79:12

**sanitation** 73:19
**santa** 16:20,21,24
17:2 58:9 59:1
**sat** 10:20
**satisfactory** 73:22
**satisfied** 73:3
**satisfy** 74:5
**saturn** 32:1
**save** 76:25
**saying** 14:14 18:16
19:25 26:5 35:21
37:3,17 53:14 58:14
63:25 65:10 67:19
68:3,5,7 70:16,18
70:22 79:7
**says** 8:16 10:2 11:6
13:11,12,12 24:18
24:21 30:24 31:18
36:5 37:19 67:17,17
79:14
**schedules** 34:12
**scheduling** 10:22
**scheme** 36:14 53:20
**scope** 59:17
**scott** 3:25 6:14
**seacarriers** 8:21
46:22
**seats** 6:4 40:7 61:15
**second** 15:8 35:1
37:7,14,18 46:19
51:5 56:4 58:20
59:9 64:22 65:3,13
73:13,21,23 74:4
78:17 80:18 81:19
**section** 24:5 26:1
36:13 38:22 44:9,9
44:13 46:3,15,17
47:6,25 48:1 62:8
62:10 70:6,23
**sections** 38:8 44:10
**securities** 56:23
**security** 72:13 74:2
**see** 7:17,24 8:5 9:3
10:8,9 16:7 19:7
21:2,2,6,19 22:6
35:1 46:22 52:6
58:18 59:15 73:2,11

73:18,19 74:2 78:15
**seeing** 8:19 64:11
**seek** 16:1,17,21
  17:13 24:11 25:5,23
  29:8 38:3,3,4 39:18
  42:9 61:5 62:14
  64:11,15,16 65:21
  65:22 67:9
**seeking** 31:13,14
  37:22 38:9 39:11
  43:13 57:6
**seeks** 15:13 46:7
  73:24
**seen** 20:8
**sense** 8:23 37:21
  68:21
**sep** 67:12
**separate** 20:4,18
  34:4 43:22 67:12
  79:18
**separately** 34:3
  60:3,4,6,11
**september** 39:15,16
**serious** 47:20
**seriously** 54:21
  74:16 77:2
**served** 80:1
**service** 41:25 60:2
**set** 20:20 33:21 61:6
  79:5
**sets** 39:5
**settle** 30:24 31:1
  60:13
**settled** 43:25 60:15
**settlement** 16:21
  17:4 30:23 57:7
  58:13
**seven** 23:13,18
  71:22 80:19 81:11
  81:14,18,21
**shape** 8:12
**sharret** 3:16
**shopping** 65:9
**short** 11:2 76:17
**shorthand** 76:1
**shot** 75:11

**show** 15:23 33:22
  72:9 73:21
**showing** 75:20,22
**shown** 9:13 78:7
**sic** 24:14 29:5
**side** 20:11
**sides** 7:19 8:23
  50:14 52:18
**sign** 17:3
**signed** 23:3 30:6,7
  40:18
**significant** 50:25
**silent** 11:13 12:7
  13:6 16:10,14 18:9
  37:15,16,17,22
  66:21 70:24
**similar** 72:18 74:14
**similarly** 28:2 46:2
  46:19 49:16
**simplify** 60:8
**simply** 20:21 67:16
  68:11
**singular** 34:6
**sir** 81:7
**sit** 71:17
**sits** 17:6
**situation** 9:5,8,9
  27:10
**situations** 24:10
  26:11
**six** 19:16,18 22:5
  23:17
**slice** 76:4
**slightly** 73:4
**slow** 50:3
**snail** 60:18
**snyder** 4:16 6:12
  7:5,7,20 8:9 9:11
  10:12,13,16 11:25
  12:4,5 13:14 14:5
  15:7,10 18:20 19:5
  19:7 20:6,19 22:9
  22:12 35:15,16
  60:24 61:2,3,4,13
  61:15,17 65:1,4
  66:2,15

**soft** 74:25
**sole** 14:14,18 16:25
  17:5 18:17 62:22
  63:5
**solely** 11:19 29:5
  35:12 60:8
**somebody's** 65:1
**soon** 39:22 40:4
**sorry** 7:7 12:2 31:7
  37:10,16
**sort** 36:4
**sought** 17:3 39:23
  57:10 62:11 80:13
**sound** 73:1
**source** 8:1 66:10
**southern** 1:3 5:12
**spalding** 3:19 6:14
**sparkle** 19:15
**sparse** 24:1
**speak** 21:20
**speaks** 19:3 38:2,21
  48:5
**species** 43:23 51:4
  77:4
**specific** 23:15 24:5
  24:12 28:23 57:19
  60:5
**specifically** 10:24
  12:16 23:1 26:14
  30:17,24 32:10 45:4
  63:12
**specified** 32:19
**spend** 26:4
**spent** 75:25
**st** 5:4
**stage** 37:24 65:15
**stand** 48:22 71:17
**standard** 26:6,8
  76:2
**standards** 48:9 59:7
  71:8,9 72:15
**start** 10:17 15:20
  50:25 74:15
**started** 15:20 69:9
  69:13
**starting** 61:25 63:8

**starts** 62:3
**state** 11:4 17:18
  21:12 42:25 48:2,3
  48:5,6 49:17 52:5
  56:17,18 62:14 67:6
  67:25
**stated** 12:15 15:15
  51:17 60:3 61:18
  66:23 72:24 73:4
**statement** 12:16
**statements** 57:13
  70:16
**states** 1:2,15 10:21
  10:24 11:1 20:7
  79:22
**statute** 12:18,25
  13:6,8 14:6,7 16:10
  16:14 17:20 18:2,9
  20:8 21:10,13,25
  22:24 23:6,20 24:1
  24:3,20,21 25:24,25
  26:9 28:16 31:3
  32:19 34:23 35:14
  36:11,12 37:8,15,15
  37:16,22 38:1 42:8
  44:8 50:23 51:6,8
  52:16 54:4 55:6,7
  55:13 62:15,15
  63:22 64:7 66:18
  67:8 70:23 77:1
**statutes** 26:23 37:10
  51:1 56:24
**statutory** 53:20
  79:4
**stay** 16:1 32:7 39:18
  61:5,8,11,16 64:14
  64:16 65:21,22
  66:13,14 68:15,20
  68:23 69:1,4,12,16
  70:9 71:9,10,14,21
  71:22 72:4 73:1,5,7
  73:10,11,25 78:11
  78:17,18 79:9,18
  80:17 81:10 83:14
**stayed** 29:10,11,14
  80:18

staying 78:16 81:9
steinberg 3:24 6:11
  7:14 8:2 9:3 13:23
  18:20 22:11,15
  24:23 25:3,10 27:5
  27:8,23 29:15,20,22
  31:6,8 33:10 35:3,5
  35:21 38:1 68:18,19
  81:8,15,19 82:1
steve 7:1
steven 4:23 6:19 7:8
stevens 73:16 74:2
stick 56:1
stiffs 13:21
stop 69:7
stops 36:6
straightforward
  65:23
streamlined 23:23
  24:3 27:11
street 5:13 66:6
strikes 9:16
strip 33:16
strong 49:13,17
  64:5,6 75:22
style 20:15
subject 8:10,11
  12:9,12 20:15 27:1
  33:20 44:5,7,8,11
  44:19 45:8 46:1
  47:20 49:24 54:3
  56:12,14,18,20
  57:25 64:6,6 68:7
  76:7,8
submissions 7:24
submitted 16:13
  62:6,24 67:2,19
subsection 44:13
subsequently 22:22
  35:14 40:18 52:20
substance 43:19
  59:18
substantial 73:8,10
  76:3,18 77:9 78:3,9
  78:11
substantially 41:16

substantive 63:13
  63:15
substituting 55:17
  55:19
succeeded 75:17
success 69:17,19
  70:10 73:9 75:13,24
  76:1,4,17 78:4
successful 40:20
  47:12 64:13 67:23
  67:24 73:21
successfully 58:23
sue 17:15,16,19
  18:1 19:13,21 22:3
  29:4,19 33:1,15
  34:21 35:12 36:5
suffer 73:7,10 78:10
suggest 37:6,22
  67:20 78:2
suggesting 14:20
  18:13 19:20 20:24
  21:21 78:8
suggestion 47:22
suggests 18:7 49:14
suit 43:13 45:5
suite 4:5 84:13
suits 19:25
summary 65:15
superior 42:23
supplemental 71:19
supporting 59:18
suppose 13:21
  24:24,25
supposed 33:12
supreme 12:20 21:5
  55:4 63:9,11,20
  77:14
sure 11:22 25:3,15
  31:6,8 33:19 35:2
  59:6 77:11 78:13
  81:20,22
surface 69:23
survival 79:20
survive 28:23
survives 39:2
swain 73:17

switchmen 26:13
  27:3 55:3,17
system 75:16 79:3
  80:7

t

t 84:2,2
table 7:22,22
taint 34:9,17
take 13:9,18 23:14
  25:7 30:11 31:1
  38:20 40:2,3 49:16
  54:24 56:6 66:5
  69:7 74:15 75:22
  80:6
taken 33:25 56:6
  58:25
takes 36:4 72:18
talk 7:23 24:6 34:2
  34:4 69:16 75:24
  76:1 77:17
talked 26:19 79:17
talking 8:13 22:1
  34:6 75:15 76:9,19
  77:19,20
talks 27:12 64:20
taxpayers 79:21
teachers 64:22,23
  65:7
technical 76:2
techs 43:2
telephonically 3:17
  4:9 5:8 6:17
tell 9:6 77:16
telling 12:3 25:2
temporarily 56:8
ten 13:15 26:4
  33:13 61:11
tentative 20:14
term 12:15 19:8
  21:9,16
terminate 42:6
  47:14
terminated 31:25
  32:9 69:24
termination 2:4
  38:14,17,18 39:3
  41:21 43:15 44:24

44:25 45:11,20,23
  54:24 72:8,10 74:21
  74:25
terms 11:10 38:11
  39:1 42:24 47:10,18
  49:7,11
terribly 72:15
test 74:6
textural 50:25
thank 12:5 22:12,13
  35:14,15 61:13,17
  81:9
thanks 39:24
thereof 52:6
thereto 47:11,19
therewith 38:13
thing 9:11 23:2
  28:18,20 70:8,14
  78:24 81:19
things 9:21 27:11
  32:18 42:4 78:8
think 8:3,12 10:16
  10:19 15:7,8,15
  19:4,24 22:15,18,19
  22:25 23:2,10 24:16
  24:18,18 25:18 26:2
  26:4 27:14,23,25
  28:10,12,16,21
  29:25 30:3,3,13,14
  30:21 31:22 32:8,8
  32:9,16 33:12,22
  35:5 47:20 48:16
  50:22 52:17 53:3,12
  53:22 54:14,20 55:2
  55:11,25 57:11,23
  58:8 59:4,12,22,23
  60:2,9 63:19 64:3
  66:21 67:22 68:13
  69:15,17,21 70:8
  74:13 75:9,15 76:16
  77:11 78:3,11 79:2
  79:8,11 80:1,14
  82:1
thinking 59:6
third 4:13 58:9
  66:20 78:10

| | | | |
|---|---|---|---|
| **thomas** 26:14,19,24 27:6 36:10,11 55:3 55:16 | **tried** 39:16 59:5 75:12 | **umbrella** 44:4 | **vacated** 40:24 |
| **thompson** 36:23 | **tries** 33:15 | **unanimous** 47:2 | **vacating** 40:13 44:1 83:9 |
| **thought** 13:22,25 18:15,22 21:13 23:21 66:9 71:5 | **triggered** 42:22 | **unaware** 6:6 | **vacature** 37:25 |
| | **triggering** 77:12 | **uncertainty** 49:9 | **vaden** 12:19 16:4 21:5,7 37:6 63:9,12 63:20 |
| **three** 13:19,20,21 15:9,15,22 29:16 33:7 40:23 43:18 45:15 47:16 52:11 57:13 66:7,12 69:21 71:2 75:3 | **trouble** 8:19 64:19 | **unchallenged** 76:11 | |
| | **troubled** 20:13 | **unconstitutional** 25:24 | **value** 49:10 63:24 |
| | **troubling** 13:4 | **undercut** 49:21 | **variety** 9:16 |
| | **true** 36:7 84:5 | **underlying** 54:1 60:12 63:13 | **various** 42:20 76:4 |
| | **trump** 35:7 58:2,7 66:23 | **understand** 7:20 13:18 41:6 57:10 64:18 66:5 82:2 | **vehicles** 29:13 |
| **thrive** 79:25 | **trumped** 52:22,25 | | **veritext** 84:11 |
| **throw** 27:17 | **trumps** 18:23 67:19 | **understanding** 10:3 | **versus** 22:23 35:18 35:19 |
| **thumbs** 19:23,23 29:2 67:4,5 | **truthfully** 66:3 | **understood** 13:16 15:10 30:15 | **victimized** 25:1 |
| **ticking** 32:4 65:16 | **try** 18:25 20:3 22:16,17 23:20 31:17 32:7 33:17 35:8 37:20 66:3 69:18 | **undisputed** 50:19 76:19 | **victory** 43:20 |
| **tight** 23:15 48:19 51:11 | | **undo** 62:15 75:2 | **view** 52:13,23 |
| **time** 9:24 19:18 21:24 22:10 29:12 48:19 60:18,19,20 61:12 63:23 64:15 71:12 75:7 79:17 81:12 | | **undone** 79:5 | **violated** 17:19 42:25 69:10 |
| | **trying** 7:24 14:2,2,3 14:5 21:11 64:19 69:8 | **undue** 62:9 70:12 | **violation** 19:12 25:12 32:25 41:5 43:8 |
| | **turn** 6:9 8:8 18:22 44:3 61:23 75:23 | **uneeda** 58:20 | |
| | **turner** 73:22 74:7 | **unfair** 59:10 | **vis** 66:17,17 |
| | **turning** 44:3 50:13 | **unfortunate** 18:9 | **vitality** 35:11 |
| | **turns** 18:21 | **unhappy** 14:16 37:20 | |
| | **two** 7:24 19:1 32:18 35:8,23 46:25 55:3 60:15 64:3 76:10 77:5 | **union** 36:23 37:5 | **w** |
| **timely** 23:9 42:11 | | **uniquely** 21:8 | |
| **times** 8:4 9:18 | | **united** 1:2,15 | **wait** 78:23 |
| **timing** 39:14 | | **unpunished** 39:15 | **waiting** 32:13 40:8 |
| **title** 35:19 36:13,20 37:24 44:16,17 48:4 48:5 49:12 | **twombly** 77:15 | **unsecured** 3:11 | **waive** 51:17 |
| | **type** 9:9 10:4 34:24 53:15 78:6,13 | **unwarranted** 59:22 | **waived** 68:7 81:5 |
| | **types** 62:17 81:17 | **unwinds** 79:2 | **waiver** 51:22 |
| **today** 28:8 69:18 75:14 81:9 | **typically** 9:21 | **upset** 45:17 | **walks** 64:20 |
| | | **use** 8:5 10:21 26:10 27:7 34:6 35:17 37:9 60:7,17,18 | **want** 8:4,9,20 9:3 11:20 15:2,6 17:12 18:20 21:25,25 27:24 34:22,22 35:1 80:22 81:22 |
| **told** 9:14 16:1 23:13 | **u** | | |
| **tonight** 74:21 | | | |
| **torrance** 4:6 | **u** 83:4 | | |
| **totally** 9:2 28:21,22 31:2 | **u.s.** 1:25 5:10,11 36:24 55:16 72:24 73:14,16,19 | **uses** 34:5 62:1 | **wanted** 7:12 32:10 62:12 |
| | | **usual** 62:14 | |
| **transaction** 30:9 | | **usually** 67:8 | **wanting** 63:24 |
| **transactions** 41:19 | **u.s.c.** 2:2 10:8 12:10 16:22 17:7 18:15 44:8 46:3,15,16 47:25 57:15,16 | | **wants** 69:6,7 70:10 |
| **transcribed** 2:25 | | **v** | **warrant** 48:8,9 59:16 71:10 |
| **transcriber** 84:9 | | | |
| **transcript** 84:4 | | **v** 36:23 59:7 63:9 64:22,23 73:12,19 77:15,15 | **warranted** 60:12 |
| **transposes** 81:14 | | | **wars** 43:1 |
| **trial** 48:14 50:6,8 | **ultimately** 47:21 75:4 | **vacate** 19:9 20:25 38:4 43:14 59:13 62:12 67:1,9 | **wash** 80:12 |
| | | | **way** 8:12 36:23 38:5 51:7 53:6 57:10 |

59:25 60:22 66:14
75:20 77:3 80:2
**ways** 73:4
**we've** 32:12 39:6,19
68:7
**weil** 3:3
**weinfeld** 64:21
**welsh** 20:3
**went** 17:4 30:22
39:22 77:5
**west** 5:4
**westpoint** 73:16
74:2
**wilk** 4:11
**willfully** 36:19
**willing** 14:24
**willingness** 51:15
**win** 19:25 47:13
80:7
**wind** 2:4 14:23
17:14,23,23 18:6,17
18:23 19:13,14,20
22:20,20 23:4 28:13
28:19,21 29:3,4,10
29:10,13 30:6,6,16
31:24 32:17,20,25
34:5 35:7,11 38:8
38:12,22 39:5,6,12
41:22 42:3,8 43:8
45:1,4 46:5 47:5,6
53:2 59:2 63:7,17
63:18 68:8 69:11
81:21
**wisdom** 57:9
**wished** 56:5
**wishes** 45:17 47:15
80:6
**wishing** 43:16
**wit** 12:13
**withdraw** 15:13
**wl** 73:14,16
**won** 13:19,20 33:7
33:8 40:22 75:3,8,9
**wondering** 24:24
**word** 8:5
**words** 21:13 61:19
77:11,16

**work** 80:21
**world** 48:21
**write** 26:1,2
**written** 26:20,24
**wrong** 9:17 26:22
54:22 59:4,15,15
65:2 77:2,25 78:2

**x**

**x** 1:5,13 83:2

**y**

**year** 37:8 41:7
44:21 74:22 75:7
79:1
**york** 1:3,17,17 3:6
3:14,22 4:14 5:12
5:14 7:9 49:19 68:3
68:6,9,10

**à**

**à** 66:17