# EXHIBIT 3

Diana Tremblay
GMNA Vice President
Labor Relations

**General Motors**

**Legal Dept.**

November 11, 2009

NOV 17 2009

Cal Rapson
Vice President and Director
UAW General Motors Department
8000 East Jefferson Ave.
Detroit, MI 48214

Subject: Required VEBA Contribution

Dear Cal:

This responds to your letter to me regarding the captioned subject.

As an initial matter, I believe your characterization of Delphi's emergence from bankruptcy as satisfying the conditions to GM's obligation to make the $450 million VEBA payment under the June 22, 2007 MOU is incorrect.

In the MOU, we agreed that the payment was conditioned upon, among other things, "substantial consummation of a plan of reorganization by Delphi...*confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all the terms of this...[MOU] and the comprehensive settlement agreement between Delphi and GM.*" Although the Bankruptcy Court confirmed a modified Delphi chapter 11 plan on July 30, 2009, which was substantially consummated on October 6, 2009, this modified plan did not incorporate and approve and was not consistent with the terms in the MOU or the comprehensive settlement agreement envisioned by the parties in 2007.

As you know, chief among the objectives of the MOU was that Delphi would emerge from bankruptcy as a company that was a principal supplier to GM, owned and operated several manufacturing facilities ("Keep Sites") under agreements with the UAW, sold off various operations to third parties ("Sell Sites"), and continued to administer and fund its hourly pension plan. Needless to say, many, if not all, of these understandings did not survive and were not a part of the final plan approved by the Court. In the end, Delphi emerged from chapter 11 not as an operating entity, but as a shell company the sole purpose of which is to liquidate the remaining non-core, non-operating assets that were not purchased by either GM or the entity created by the DIP Lenders. DPH Holdings Corporation, as the old Delphi is now known, does not manufacture parts for GM or any other customer and its employee pension plans are being terminated and taken over by PBGC.

Additionally, the "comprehensive settlement agreement" between GM and Delphi required by the MOU as condition to GM's payment obligation to the VEBA also was not fulfilled. In the September 2007 GSA/MRA, GM committed to support court approval of Delphi's exit from bankruptcy under the proposed plan because the agreements provided for GM to receive some $2.7 billion in cash and a $1.5 billion note payable in cash within 10 days of executing the $1.5 billion 414(l) transfer. The consideration GM was to receive upon Delphi's emergence were the assets from which it would have funded the $450 million payment. GM did everything it reasonably could to secure approval of the proposed plan, yet despite these efforts Delphi not only could not satisfy the terms of the settlement, but could not even continue as a manufacturing entity. Consequently, the comprehensive settlement contemplated by the MOU and the benefits to GM anticipated by that agreement did not occur, resulting in yet another failure of a condition to GM's VEBA obligation.

Finally, in your letter, you make reference to some general discussions regarding the $450 million that you claim to have had with GM and Treasury Department officials during the VEBA settlement discussions. As you know, at that time GM was under significant constraints imposed both by its impending bankruptcy and the conditions of its loan agreement with the government. This included the need to significantly reduce its obligations to the VEBA and to restructure a significant portion of those obligations from cash and debt to equity.

From GM's perspective, the agreement to restructure payments to the VEBA included all obligations and payments, not just a selected part. That agreement plainly and unambiguously confines GM's contributions to the VEBA to "only" that which is set forth in the settlement agreement itself. The agreement also expressly "supersedes any prior understandings, agreements or representations." Nothing in the settlement creates an exception to the general understanding that the agreement encompasses all of GM's obligations to the VEBA, whether contained in the MOU or elsewhere. Therefore, GM believes that regardless of what might have been discussed between the parties or government officials, the nature and extent of GM's obligations to the VEBA are exclusively set forth in the plain language of the written VEBA settlement agreement, and any other agreements, of whatever nature or source, are superseded by its provisions. It seems peculiar that, after having raised the issue and allegedly received the response you describe, the UAW did not seek to preserve its position in the written agreement that expressly and conclusively deals with all of GM's payment obligations to the VEBA.

In summary, Delphi emerged from bankruptcy under a plan and agreements that have no resemblance to what the parties contemplated in 2007 and agreed to in the MOU, the September 2007 GSA/MRA and the plan proposed by Delphi on September 6, 2007.

- There are no remaining manufacturing plants operated by old Delphi.
- Old Delphi emerged from bankruptcy as DPH Holdings, a shell company retaining only non-manufacturing assets for future liquidation.
- The detailed Site Plans are generally no longer applicable.

Pg 4 of 4

- There is no UAW-Delphi national agreement and no UAW active members employed by Delphi.
- There are no UAW Keep Sites that remain owned and operated by Delphi as GM was forced to take on these sites including the liabilities.
- Sell Sites such as Saginaw Steering were not sold or transferred to a third party and GM was also required to take on Saginaw Steering and its liabilities.
- The Delphi pension plan is being terminated exposing GM to billions of dollars in additional pension liability.
- GM did not receive any of the financial consideration it was scheduled to receive under the 2007 agreements costing GM billions of dollars. In fact, GM has had to contribute some $4.6 billion more to end the Delphi bankruptcy.
- And, the final act in bankruptcy was not reorganization with Delphi emerging as an ongoing manufacturing company. Rather it was a sale of substantially all of Delphi's assets to GM and the DIP lenders.

To now claim that none of this matters, and Delphi emerged in a manner consistent with all the terms of the MOU and the GM-Delphi comprehensive settlement is not logical. The result would be that the $450 million is payable regardless of the expectations of the parties and what the parties agreed to in 2007, and regardless of the terms of the MOU, the GM-Delphi comprehensive settlement and the VEBA settlement agreement.

I am sure this is not the response you had hoped for but in the end we see no reason why the $450 million should be the only understanding to survive despite the contrary terms of the MOU, the 2007 GSA/MRA, the December 2007 GSA/MRA and the 2009 VEBA agreement.

Sincerely,

Diana Tremblay

cc: Frank Jaworski
Dan Sherrick