HEARING DATE AND TIME: February 3, 2011 at 9:45a.m. (Eastern Time)

**LAW OFFICE OF MARTIN STANLEY**
Martin Louis Stanley [State Bar No. 102413]
Candace Brianne Lee [State Bar No. 266540]
137 Bay Street #2
Santa Monica, CA 90405
Telephone: (310) 399-2555
Facsimile: (310) 399-1190

Attorney for JUDD WIESJAHN & ANNALISA SAND

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | ) |
| | ) CHAPTER 11 |
| MOTORS LIQUIDATION COMPANY, et al., | ) |
| f/k/a GENERAL MOTORS CORP., et al., | ) |
| | ) Case No.: 09-50026 |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## MOTION OF JUDD WIESJAHN AND ANNALISA SAND TO FILE

## LATE PROOF OF CLAIM, OR IN THE ALTERNATIVE,

## TO AMEND INFORMAL PROOF OF CLAIM

## I. INTRODUCTION

Judd Wiesjahn and Annalisa Sand ("Wiesjahn/Sand") creditors and parties- in-interest in the above-referenced bankruptcy cases, by and through their undersigned counsel, hereby move this Court to enter an Order allowing them to file a late proof of claim, or in the alternative, to amend their informal proof of claim on the grounds that they never received actual notice of the claim deadline. The underlying claim is a wrongful death action, as evidenced by the wrongful death compliant attached

-1-

1   hereto as Exhibit A. On May 5, 2010, General Motors Corporation ("GM") was served with a true and

2   correct copy of Wiesjahn/Sand's complaint, and as such the debtor was aware of Wiesjahn/Sand's

3   complaint and the action filed against GM in the Superior Court of California, for the County of

4

5   Monterey as case number M 95923. (Attached hereto as Exhibit B is a true and correct copy of the proof

6   of service of summons on GM). Furthermore, following service of the summons and complaint, GM

7   mailed a Notice of Stay of Proceedings, which is attached hereto as Exhibit C, to:

8
        "Martin Louis Stanley, Esq.
9        Law Office of Martin Stanley
         137 Bay Street #2
10       Santa Monica, CA 90405
         (310) 399-2555
11       Fax (310) 399-1190
12       (Attorneys for Plaintiffs)"

13      As such, GM knew that the plaintiffs' names were Annalisa Sand and Judd Wiesjahn, and that

14  the attorney for Wiesjahn/Sand in that case is Martin Louis Stanley and Jeffrey Lamb (at the time) of the

15  Law Office of Martin Stanley located at 137 Bay Street #2, Santa Monica, CA 90405, Telephone: 310-

16  
17  399-2555, and Facsimile: 310-399-1190. However, General Motors Corporation and/or any of its

18  affiliates ("Initial Debtors") never provided any notice to Wiesjahn/Sand that they were required to

19  submit a Proof of Claim form by a certain date, nor were they provided with any initial notice from GM

20  under the ADR procedures with respect to their claim (collectively "Notices"). These notices were

21  
22  never sent to Anna Lisa Sand at her address, Judd Wiesjahn, at his address, or even Martin Louis

23  Stanley at the above address. And Plaintiffs' counsel has no idea to whom these were sent or to whom

24  notice of GM's requirements was sent as nothing to either effect was ever received.

25      The Proof of Claim form or notice of any deadlines was not sent to Annalisa Sand or Judd

26  
27  Wiesjahn to their personal address, or to Martin Stanley and/or The Law Office of Martin Stanley care

28  of Annalisa Sand or Judd Wiesjahn. Annalisa Sand and Judd Wiesjahn are not known recipients of mail

-2-

at "137 Bay Street Unit 2, Santa Monica, CA 90405," and there is no such thing as a "Stanley Martin Law Office" at that address. (See Exhibits E). GM cannot refute these established ambiguities. Respectfully, the court cannot presume delivery by the post office of an item placed in the mail under the name of an unfamiliar address, no association to that address, and no care of language provided. Accordingly, based upon these ambiguities, along with the fact there was no actual notice, Wiesjahn/Sand cannot be charged with notice or actual knowledge of their proof of claim filing deadline. *See In re Chess*, 268 B.R. 150, 156 (Bankr. W.D. Tenn. 2001) (there is a general presumption among the courts "that an addressee receives a properly mailed item *when the sender presents proof that the item was properly addressed, stamped, and sent through the United States mail*[,]" In support thereof, Wiesjahn/Sand state as follows:

## II. BACKGROUND

1) On August 8, 2008, Decedent lost her life as a result of injuries she suffered in an accident while riding as a passenger in a 2006 Chevrolet HHR vehicle designed, manufactured, sold, or otherwise placed into the stream of commerce by Motors Liquidation Company, f/k/a General Motors Corporation ("GM").

2) On December 19, 2008, Wiesjahn/Sand field an action in the Superior Court of California, County of Monterey, Case Number M95923 in which Wiesjahn/Sand assert that, *inter alia*, that the subject vehicle when being used in conjunction with the spare tire was susceptible to a loss of vehicle control, and as such were not suitable for use under normal and foreseeable driving conditions and lacked proper warnings regarding the danger, making the vehicle and tire defective by design, manufacture, and lack of warnings. ( Exhibit A)

3) Decedent, Rachael Love Wiesjahn, is survived by her parents Wiesjahn/Sand.

4) On May 5, 2009, General Motors Corporation was served with a true and correct copy of Wiesjahn/Sand's complaint. (Exhibit A & B)

-3-

5) On June 1, 2009 General Motors Corporation and four of its affiliates (the "Initial Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Code").

5) On October 9, 2009, two additional affiliates of General Motors Corporation (the "Realm/Encore Debtors") commenced voluntarily cases under Chapter 11 of the Bankruptcy Code.

7) On September 16, 2009, the Court entered an Order [Docket No. 4079] establishing November 30, 2009 as the deadline for each person or entity to file a proof of claim in the Initial Debtors' cases.

8) On December 2, 2009, the Court entered an Order [Docket No. 4586] establishing February 1, 2010 as the deadline for each person or entity to file a proof of claim in the Realm/Encore Debtors' cases (except governmental units for which the Court set June 1, 2010 as the deadline to file proofs of claim).

9) On February 23, 2010, the Court entered an Order pursuant to 11 U.S.C. § 105(a) and General Order M-390 authorizing implementation of Alternative Dispute Procedures, including mandatory mediation (the "ADR Procedures").

10) Wiesjahn is listed as a product liability claimant in the bankruptcy schedules filed by the Debtors in this matter. (A true and correct copy of which is attached hereto as Exhibit D)

11) Sand is listed as a product liability claimant in the bankruptcy schedules filed by the Debtors in this matter. (A true and correct copy of which is attached hereto as Exhibit E)

12) However Wiesjahn/Sand failed file the proof of claim form before the bar date due to: 1) Motors Liquidation Company, f/k/a General Motors Corporation ("GM")' s failure to provide Wiesjahn/Sand's counsel and Wiesjahn/Sand, as the creditors, any Proof of Claim form and/or any notice that their forms had to be filed by a certain date; 2) GM's failure to provide separate notice to Annalisa Sand and Judd Wiesjahn's personal address; 3) GM's failure to provide any notice or proof of

-4-

claim form to the Law Office of Martin Stanley care of Annalisa Sand and Judd Wiesjahn; and 4) GM's failure to use the proper business name of Wiesjahn/Sand's counsel if it even mailed any notice or proof of claim form to the Law Office of Martin Stanley. *See e.g. Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114, 1118 (6th Cir. 1985) ("[t]estimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt."); 11 U.S.C. § 342(g)(1) (notice is not effective where debtor fails to use the address supplied by the creditor; notice is not effective until it is "brought to the attention" of the creditor). Notice was not brought to Plaintiff's attention until Plaintiff's counsel recently received "Notice of Hearing to Consider Approval of Debtors' Proposed Disclosure Statement With Respect to Debtors' Joint Chapter 11 Plan" attached hereto as Exhibit F.

13) By this Motion, Wiesjahn/Sand respectfully request this Court to enter an order allowing Wiesjahn/Sand to file a late proof of claim or, in the alternative, permitting Wiesjahn/Sand to amend their informal proof claim.

## III. JURISDICTION AND VENUE

14) This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15) The statutory predicates the relief requested herein is Section 105 of the Bankruptcy Code and Fed. R. Bankr. Proc. 9006(b)(1).

\\

\\

\\

\\

-5-

## IV. ARGUMENT

### A. Judd Wiesjahn and Annalisa Sand Should be Permitted To File A Late Claim Pursuant to Bankruptcy Rule 9006(b)(1)

16) Pursuant to Fed. R. Bankr. Proc. 9006(b)(1), the Court may permit a claim to be filed after the bar date if the claimant's failure to comply with the deadline was the result of lack of actual notice by GM.

17) The lack of prejudice to the debtor or the interests of efficient judicial administration, combined with the good faith of the claimant "weigh strongly in favor of permitting the tardy claim." *Id.* at 398.

18) The Debtors will not suffer any prejudice if Wiesjahn/Sand's formal claim is allowed. The Debtors and all other parties in interest had knowledge of Wiesjahn/Sand's claim long before the bar date.

19) Wiesjahn/Sand are listed as products liability claimants on the bankruptcy schedules filed by GM. (Exhibit D & E). *See In re Ginther*, 2008 Bankr. LEXIS 1728 at 7 (Bankr. S.D. Tex. 2008) (late claim allowed where claim was listed on debtor's schedules as contingent, unliquidated and disputed). In re Bruno Machinery Corp., 2007 U.S. Dist. LEXIS 51201 at *10 (N.D. N.Y. 2007)(late claim permitted because "Debtor had advance knowledge of the claim as they included it in Schedule F and [the creditor] had filed suit against it or this claim.")

20) As such, Wiesjahn/Sand had the right to assume that they would receive actual notice of relevant dates before their claims would be barred. *In re Dartmore Homes, Inc.*, 175 B.R. 659 (Bankr. N.D. Ill 1994) (finding Chapter 11 debtor, even creditors have right to assume they will receive notice of relevant dates before their claims are barred.)

21) In addition, Wiesjahn/Sand's claims will only have a negligible impact on the distributions of the Debtor's remaining assets to unsecured creditors. Wiesjahn/Sand's claims represent only a very tiny fraction of the billions of dollars of unsecured claims asserted against the Debtors in these cases.

22) In the alternative, Wiesjahn/Sand's failure to timely file a formal proof of claim before the bar date was the result of excusable neglect and Wiesjahn/Sand have acted in good faith. It is clear that the error in filing was not Wiesjahn/Sand and/or their counsel's error, but rather GM's error. As stated above, GM 1) failed to provide Wiesjahn/Sand's counsel and/or Wiesjahn/Sand, as the creditors, any Proof of Claim form and/or any notice that their forms had to be filed by a certain date; 2) GM's failed to provide separate notice to Annalisa Sand and Judd Wiesjahn's personal address; 3) GM's failed to provide any notice or proof of claim form to the Law Office of Martin Stanley care of Annalisa Sand and Judd Wiesjahn; and 4) GM's failed to use the proper business name of Wiesjahn/Sand's counsel if it even mailed any notice or proof of claim form to the Law Office of Martin Stanley. *See In re Any Mountain, Inc.*, 2007 Bankr. LEXIS 712 at *2 (Bankr. N.D. Cal. 2007) (finding excusable neglect where claimant's counsel misread bankruptcy court notice); *Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1103 (5th Cir. 1984) (holding "it is clear that one of the primary purposes of the list of creditors in the schedule is to provide the court information as to persons entitled to notice," and as such an incorrectly listed address not satisfy due process); *In re Hicks*, 184 BR. 954, 957 (Bankr. C.D. Cal. 1995) ("this obligation to list all creditors' names and address is part of the debtor's duty of *full disclosure that is the quid pro quo for fresh start* provided by the discharge*); In re Schepps Food Stores, Inc.*, 152 B.R. 136 (Bankr. S.D. Tex. 1993) (evidence that notice was never sent or that no one in the case received notice does rebut presumption that proper notice was given in bankruptcy case.);

23) "It is well settled that if a debtor lists incorrectly the name or address of a creditor in the required schedules, so as to cause the creditor not to receive notice, that creditor's debt has not been

-7-

'duly scheduled[.]'" *Adams*, 734 F.2d at 1098. "While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, the law is clear that such an address must be one at which notice or service would be reasonably calculated to comply with constitutional notions of due process." *In re Kleather*, 208 B.R. 406, 410 (Bankr. S.D. Ohio 1997). Likewise, when a court has promulgated a local rule requiring a mailing matrix to accompany the statements and schedules, an incorrectly listed address therein does not satisfy due process. *Adams*, 734 F.2d at 1103.

24) Furthermore, "if a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged." *See In re O'Shaugnessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) (quoting *In re Glenwood Med. Group, Ltd.*, 211 B.R. 282, 285 (Bankr. N.D. =Ill. 1997)). Constitutional due process requires proper notice. *Mullane v. Cent. Hanover Bank & Trust* Co., 70 S. Ct. 652, 657 (1950)("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). "The burden of establishing that a creditor has received adequate notice rests with the debtor." *Massa v. Addona (In re Massa)*, 187 F.3d 292, 296 (2d Cir. 1999). Therefore, in order to satisfy the elements of due process, a debtor's schedules must contain accurate information concerning a creditor's address. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 970 (Bankr. M.D. Ala. 1995); *see also Bonner v. Adams (In re Adams),* 734 F.2d 1094, 1103 (5th Cir. 1984).

Thus, where as here "a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time barred under *Fed. R. Bankr. P.* 4007(c)." *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (B.A.P. 10th Cir. 2003). For these reasons, Wiesjahn/Sand should be permitted to file their claims late pursuant to Rule 9006(b)(1).

-8-

25) The determination of whether excusable neglect exists "is at bottom an equitable one." *Pioneer Inv. Srvs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Among the circumstances that should be considered are the danger of prejudice to the debtor, the length of the delay and its potential impact on the proceedings, the reason for the delay and whether the movant acted in good faith. *Id*

26) "[T]he enlargement of presented time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Id.* at 391.

27) Courts are permitted, where appropriate, to allow late claims caused by "inadvertence, mistake or carelessness." *Id.* at 388; F.R.B.P. §9006(b).

## B. Wiesjahn/Sand Should Be Permitted To Amend Their Informal Proof of Claim

28) "Courts in the Second Circuit have long recognized the validity of informal proofs of claim." *In re The Float, Inc.*, 163 B.R. 18, 20 (Bankr. N.D. N.Y. 1993).

29) An informal proof of claim is subject to amendment subsequent to the bar date. *In re Southhold Development Corp.*, 173 B.R. 63, 71 (E.D. N.Y. 1994)

30) An informal proof of claim should be recognized where the debtor is made aware of the "intent of [the creditor] to hold the estate liable." *In re Rockville Orthopedic Associates*, P.C., 365 B.R. 366 (Bankr. D. Conn. 2007); see also In re Collins, 2004 Bankr. LEXIS 2522 at *8 (Bankr. D. S.C. 2004) (finding informal proof of claim where debtor identified claim on schedules and claimant attended first meeting of creditors); *In re Hawaiian Airlines,* 2006 Bankr. LEXIS 2714 (Bankr. D. Haw. 2006) (letter from personal injury claimant's attorney to the debtor constituted amendable informal proof of claim); *In re Judy Wood Publishing Corp.*, 289 B.R. 319, 322 (Bankr. E.D. Va. 2002) (informal proof of

claim existed because creditor was listed on the debtor's schedules and the debtor's mailing list of creditors).

31) The filings identified above put all interested parties on notice of Wiesjahn/Sand's intent to held GM liable and therefore, are more than adequate to constitute an informal proof of claim.

32) Consequently, Wiesjahn/Sand should be permitted to amend their informal claim by filing a formal proof of claim form, which Plaintiffs' have prepared using the blank claims form on the Motors Liquidation website at https://www.motorsliquidation.com/ClaimsInformation.aspx. (Attached hereto as Exhibit G).

Dated: 12/9/10

MARTIN LOUIS STANLEY
CANDACE BRIANNE LEE
Attorney for PLAINTIFF

-10-

# EXHIBIT A

1 | **LAW OFFICE OF MARTIN STANLEY**
Martin Louis Stanley [State Bar No. 102413]

2 | Jeffrey R. Lamb [State Bar No. 257648]
137 Bay Street #2

3 | Santa Monica, CA 90405
Telephone: (310)399-2555

4 | Facsimile: (310)399-1190

5 |

6 |

7 | Attorney for PLAINTIFFS JUDD WIESJAHN & ANNALISA SAND

8 |

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MONTEREY

| | |
|---|---|
| JUDD WIESJAHN, ANNALISA SAND, | Case No.: M 95923 |
| Plaintiffs, | |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES:** |
| CHRISTOPHER ROBIN TINDALL, WILLIAM F. SIMMONS, MARK CHRISTOPHER HUDSON, PAMELA CAROL HUDSON, ALLEN DUARTE, and DOES 1 through 100, inclusive | 1. WRONGFUL DEATH |
| | 2. SURVIVAL ACTION |
| Defendants. | |

19 | COMES NOW Plaintiff's Judd Wiesjahn and Annalisa Sand for causes of action against

20 | Defendants, and each of them, complain and allege as follows:

21 | **GENERAL ALLEGATIONS**

22 | 1. At all times relevant, Plaintiffs were residents of Monterey, California. Plaintiff Judd Wiesjahn is

23 | the father of decedent Rachel Wiesjahn, and brings this suit in his capacity as an heir of decedent's

24 | estate. Plaintiff Analisa Sand is the mother of decedent Rachel Wiesjahn, and brings this suit in her

25 | capacity as an heir of decedent's estate.

26 | 2. Plaintiffs are informed and believe and thereon allege that Defendants CHRISTOPHER ROBIN

27 | TINDALL, MARK CHRISTOPHER HUDSON, PAMELA CAROL HUDSON, ALLEN DUARTE,

28 | are residents of Monterey County.

-1-

3. Plaintiffs are informed and believes and thereon alleges that Defendant William F. Simmons is a resident of the State of Colorado.

4. Plaintiffs are informed and believe and thereon allege that Defendant General Motors Corporation, is a Delaware Corporation headquartered in Detroit, Michigan, and doing business in the State of California at all times relevant to this complaint.

5. Plaintiffs are informed and believe and thereon allege that Defendant Chevrolet is a subsidiary of Defendant General Motors Corporation, at doing business in the State of California at all times relevant to this complaint.

6. Plaintiffs are informed and believe and thereon allege that Defendant Bridgestone/Firestone North America tire, LLC ("Firestone") is a Delaware for profit corporation that is and was qualified and doing business in the State of California at all times relevant to this complaint.

7. Plaintiffs are informed and believe and thereon allege that Defendant Goodyear Tire and Rubber Company, is a Delaware for profit corporation with headquarters in Akron, Ohio, that is and was qualified and doing business in the State of California at all times relevant to this complaint.

8. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100. The true names and capacities of the defendants designated herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sue said defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show their true names and capacities when such have been ascertained. Plaintiffs are informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for events referred to and has legally caused injury and damage to Plaintiff.

9. Plaintiffs are informed and believe and thereon allege that at all times relevant defendants, and each of them, were the agents, servants, and/or employees of each of the remaining defendants and were acting within purpose, course and/or employees of each of the remaining defendants and were acting within the purpose, course and scope of said agency and/or employment and that each defendant, when acting as a principal, was negligent in the selection, hiring, training or retention of each other defendant as an agent, employee, assistant and consultant and that al times relevant, each defendant

-2-

1    has permitted, consented to, ratified and approved the acts, omissions and representations of each

2    and every other defendant.

3    10. On August 8, 2008, the Decedent Rachel Wiesjahn was a passenger in a vehicle driven by Defendant

4    Christopher Robin Tindall. That vehicle, a 2006 Chevrolet HHR, was traveling southbound on SR-1

5    at a location just south of the entrance to Pfeiffer Big Sur State Park.

6    11. Plaintiffs are informed and believe as follows: Defendant Tindall had been drinking alcoholic

7    beverages prior to the collision, and at the time he was driving the vehicle was determined by police

8    officers to be under the influence. Tindall then left the scene of the accident and turned himself into

9    police approximately 10 hours after the collision.

10    12. Decedent Rachel Wiesjahn exited the vehicle and was at a location south of the vehicle. At that

11    time, a Ford pickup truck driven by Defendant Mark Christopher Hudson, traveling southbound on

12    SR-1 approached and struck the Chevrolet.

13    13. Plaintiffs are informed and believe as follows: Defendant Mark Christopher Hudson had been

14    drinking and was under the influence.

15    14. Plaintiffs are informed and believe that Defendant Pamela Hudson was driving negligently following

16    behind Defendant Mark Christopher Hudson.

17    15. Plaintiffs are informed and believe as follows: After the Ford driven by Defendant Hudson struck the

18    Chevrolet, Defendant's ALLEN DUARTE and MARK CHRISTOPHER HUDSON towed the Ford

19    pickup truck from the scene to a dirt turnout approximately half a mile south of the scene of the

20    collision. Defendant MARK CHRISTOPHER HUDSON also fled the scene of the collision.

21    16. Plaintiffs are informed and believe that Defendant Pamela Hudson, negligently provided aid and,

22    assistance to the decedent at the scene of the accident and failed to summon paramedics in a timely

23    fashion.

24    17. Defendant Chevrolet, General Motors Corporation, Bridgestone/Firestone, Goodyear, and unknown

25    Doe defendants, were the corporation or other entities who designed, manufactured, sold, or

26    otherwise placed into the stream of commerce the Chevrolet HHR vehicle, and the spare tire in use

27    at the time of the accident which is the subject matter of this lawsuit.

28

FIRST AMENDED COMPLAINT

1    18. At the time of the accident, the subject vehicle and tire were being used as intended and in a manner

2    reasonably foreseeable to the manufactures of the respective products.

3    19. At the time of the incident in question, the subject vehicle and spare tire was in substantially the

4    same condition as when it was designed, manufactured and sold or distributed. The vehicle and tire

5    were being used in a manner reasonably foreseeable to Defendants. The vehicle and tire were not

6    reasonably safe when being used in a foreseeable manner; but to the contrary were defective, and

7    unreasonably dangerous. The subject vehicle when being used in conjunction with the spare tire

8    were susceptible to a loss of vehicle control, and as such were not suitable for use under normal and

9    foreseeable driving conditions and lacked proper warnings regarding the danger.

10    20. The vehicle and tire were defective by design, manufacture, and lack of warnings.

11    21. The Chevrolet HHR was defective and unreasonably dangerous in that it was sold with a defective

12    spare tire; it was unreasonably dangerous in that the vehicle was uncontrollable under certain driving

13    conditions and in particular when being used with the spare tire; the vehicle was unstable, and had a

14    high propensity to lose control.

15    22. The subject vehicle and/or tire were defective and unreasonably dangerous in their design, and

16    manufacture of component parts including the subject tire.

17    23. The subject vehicle and/or tire were unreasonably dangerous and defective and there were safer,

18    reasonable alternative designs available that would have minimized the hazards.

19    24. Defendants Chevrolet, General Motors Corporation, Bridgestone/Firestone, Goodyear, and unknown

20    Doe defendants, were negligent or wanton in the design, manufacture, testing, sale, distribution,

21    warnings, and failure to recall the subject vehicle and tire.

22    25. Defendants Chevrolet, General Motors Corporation, Bridgestone/Firestone, Goodyear, and unknown

23    Doe defendants, undertook the duty to provide the vehicle and tire that are the subject of this

24    incident without defects, and to recall the subject vehicle and tire as a result of the defects alleged

25    herein.

26    26. As a proximate consequence of the defective nature of the vehicle and tire, the vehicle was

27    susceptible to lose control, and during normal use the vehicle and tire that are the subject of this

28    incident went out of control.

-4-

FIRST AMENDED COMPLAINT