**HEARING DATE AND TIME: To Be Determined**

Billy Ray Kidwell, *Pro Se*
5064 Silver Bell Drive
Port Charlotte, Florida 33948
Telephone (941) 627-0433

*On Behalf of himself Pro Se*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                            :

In re                       :    **Chapter 11**
                            :

MOTORS LIQUIDATION COMPANY, *et al*, :    **Case No. 09-50026 (REG)**
      f/k/a General Motors Corp., *et al*, :
                            :

    Debtors                :
                            :
                            :

----------------------------------------------

## MOTION FOR SANCTIONS AGAINST THE LAW FIRM OF KING & SPALDING LLP, AND ATTORNEYS ARTHUR STEINBERG, AND SCOTT DAVIDSON FOR THE INTENTIONAL VIOLATION OF RULE 9011(B)(1), RULE 9011 (B)(2), RULE 9011(B)(3) AND RULE 9011(B)(4) WITH AFFIDAVIT(S) AND EXHIBITS

### *I. Introduction*

    *Pro Se Movant*, Billy Ray Kidwell, gives this Court, and all parties, **NOTICE** of the bad

faith, intentional violation(s) of Federal Rule of Bankruptcy Procedure Rule 9011(B)(1),  Rule

9011(b)(2), Rule 9011(b)(3), and Rule 9011(b)(4) by the Law Firm of King & Spalding LLP,

and King & Spalding Attorneys Arthur Steinberg, and Scott Davidson.

    The Law Firm of King & Spalding LLP, by means of Attorneys Arthur Steinberg, and

Attorney Scott Davidson, presented to this Court (by signing, submitting, and filing) an

*"Objection by General Motors LLC to Pro Se Motion to Show Cause Why General Motors LLC,*

*and its Corporate Governance, Should Not Be Held in Contempt for Intentionally Violating This*

1

*Court's ORDERS, While Terrorizing a Disabled Combat Veteran, and his Family*" that is completely fraudulent as to the actual material facts.

The Law Firm of King & Spalding LLP, by means of Attorneys Arthur Steinberg, and Attorney Scott Davidson, presented said Dilatory Document, full of lies, and fraudulent statements, to this Court, for the improper purpose of;

1.  **RETALIATION** against the *Pro Se Movant*, and his family, as part of an <u>*ongoing*</u> *"GM Policy of Retaliation against General Motors Consumers that use Florida's Lemon Law Process"*.

2.  Harassing the severely disabled *Pro Se Movant.*

3.  Aggravating Movant's dire health, endangering his life, and causing irreparable harm.

4.  **RETALIATION** against a Key Witness in this case, Tana Kidwell, using dishonest, dilatory, *"Tactics"*, such as the fraudulent *"Objection by General Motors LLC"* at issue, in an effort to hinder, and OBSTRUCT, an honest resolution of this case, while greatly expanding litigation, to intentionally cause ongoing monitory harm to Key Witness, Tana Kidwell, who has the costs of the dilatory, dishonest, conduct of the Law Firm of King & Spalding LLP, and Attorneys Arthur Steinberg, and Attorney Scott Davidson <u>directly</u> affect her income, as those individuals seek to frustrate, intimidate, and *"chill"* Tana Kidwell in testifying against General Motors Executives.

2

5. Intentionally violating the *Pro Se Movant's* Constitutional Right(s) of *"Meaningful"* Access to this Court, and Due Process, by hindering, and UNDERLINE(OBSTRUCTING), the honest, orderly process of this case, with habitual lying in motions, and responsive papers, **greatly increasing litigation**, and causing unnecessary delay, while intentionally deceiving this Court as to the actual material facts, in an ongoing scheme to prevail, ***by committing a Fraud on this Court.***

6. *Most important*, the New General Motors LLC wants to make sure that the truth, and actual material facts, never see the light of day, and that the Court(s), like this Court, are deceived, and confused, as to the actual material facts, so that General Motors can prevail with fraud, lies, and legal trickery.

Pursuant to Rule 9011(C)(1) the *Pro Se Movant*, Billy Ray Kidwell, moves this Court for Sanctions against the Law Firm of King & Spalding LLP, Attorney Arthur Steinberg, and Attorney Scott Davidson, sufficient to deter repetition of such conduct, or comparable conduct by others similarly situated.

## *II. Affidavits and Irrefutable Evidence Attached Hereto*

Movant, and the **Key Witness** to the incidents described in the *"Objections"* have attached hereto Affidavits, given under Oath, as to the actual Material Facts, along with other irrefutable evidence.

3

*III. Specific Violations of Rule 9011(B)(1) by the Law Firm of King & Spalding LLP, and*

*Attorneys Arthur Steinberg, and Scott Davidson*

For the improper purpose of harassing the *Severely Disabled 100% Service-Connected*

*Pro Se Litigant-Veteran*, Billy Ray Kidwell, *who is in dire health, and bed-bound*, until they

either cause his death, or frustrate him into ceasing the exercise of his rights, and to cause

unnecessary delay, and greatly increase the cost of litigation, in a scheme to violate the Movant's

Rights of "*Meaningful*" Access to this Court, and Due Process,  by the use of a Master-Scheme

with the ultimate goal of **Obtaining a Wrongful Judgment by Fraud**, with their habitual lying

in Motions, dishonesty, and concealment of evidence, the Law Firm of King & Spalding LLP,

and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly, lie

about the actual material facts in the recent "*Objection*" Motion they filed in this Court, as

specifically charged below.

**Intentional Lie One**

1.  The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and

    Scott Davidson, did intentionally, and knowingly, lie at page 1 section 1 under the

    title "*Introduction*" by fraudulently stating that the New GM has fully complied with

    Orders of this Court.

The GM Sale ORDER clearly states that "**Except for Assumed Liabilities** purchased

assets are transferred free and clear of all claims". [See Section 7 at page 22 of the GM Sale

ORDER].

4

The New General Motors LLC fraudulently told the District Court in Fort Myers Florida

that ALL Assets were transferred free, and clear, of all claims and denied that there were

Assumed Liabilities, or any exceptions, specifically telling the Fort Myers United States District

Court that Movant's Lemon Law Claims were not an Assumed Asset of the New General Motors

LLC.

By intentionally lying to the United States District Court the New GM obtained a

**_Judgment by Fraud_**.

When Movant filed a *Motion to reconsider*, with exhibits from the actual GM Sale

ORDER, the District Court issued an Amended ORDER admitting that the copy of the GM Sale

ORDER on the internet clearly stated that State Lemon Law Actions are an "*Assumed Liability*"

for the New General Motors, and directly the New General Motors LLC to explain this. [The *Pro*

*Se Movant's* Motion to Amend is still pending in the District Court awaiting action in this

Court.]


The New General Motors has intentionally violated its OWN Master Sale Agreement,

**and this Court's GM Sale ORDER**, and refuses to accept Express Written Warranties,

delivered in connection with the sale of a new vehicle, as described at section fifty-six on page

44 of the GM Sales Agreement, as an Assumed Liability. [See Exhibit A attached hereto.]


At section fifty-six on page 44 continuing on page 45 it specifically states

"*Notwithstanding the foregoing, the Purchaser has assumed the Seller's obligations under state*

*"Lemon Law" statutes, which require a manufacturer to provide a consumer remedy when the*

*manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable*

*statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.*" [See the yellow highlights on Exhibit A attached hereto which are pages 44 and 45 of this Court's GM Sales ORDER.]

The New General Motors, again, intentionally violated its <u>OWN</u> Master Sale Agreement, **and this Court's GM Sale ORDER**, and refuses to accept State Lemon Law Obligations, and other related regulatory obligations under such statutes, as an "*Assumed Liability*", as described at section fifty-six on page 44, and page 45, of the GM Sales Agreement. [See yellow highlights on the attached Exhibit A.]

In the *Pro Se Litigant's* Florida State Lemon Lawsuit against General Motors the New General Motors LLC told the Florida State Court that there were "*No Assumed Liabilities*" and that "*The New General Motors LLC was protected, and immune from all Liabilities for Express Written New GM Vehicle Warranties*", because of the GM Bankruptcy, and this Court's GM Sales ORDER, and that the New General Motors LLC was "*Protected from Liability in State Lemon Law Actions*", because of this Court's GM Sales ORDER, and "*Protected from Liability from All Other Related Regulatory Obligations Under Such Statutes*".

**<u>Attorneys for the New General Motors even deceived the *Pro Se Movant* for almost two years until the Movant came across an actual copy of this Court's GM Sales ORDER.</u>**

The New General Motors LLC has intentionally violated its **OWN** Sales Agreement, and **intentionally violated this Court's GM Sales ORDER** requiring the new GM to accept New Vehicle Express Written Warranties, State Lemon Law, and other related regulatory obligations under such statutes as an *"Assumed Liability"*, and as a result of those intentional violations, and an intentional scheme by the New General Motors the *Pro Se Movant* has been denied his Florida Chapter 681 Statutory Rights to State Court for Lemon Law Actions, and his Constitutional Right of Access to the Court, and Due Process, for two years now.

The New General Motors LLC intentionally lied to the Florida State Court, in direct violation of this Court's ORDER to accept New Vehicle Express Written Warranties, and State Lemon Law Action as an ***"Assumed Liability"***, denying Movant his Constitutional Right to prosecute his State Lemon Law Action in State Court.

The New General Motors used the same dishonest *"Tactic"* and lies, it had used in the Florida State Court, in the United States District Court at Fort Myers Florida and again fraudulently claimed the GM Sales Agreement, made the New General Motors LLC immune from all New Vehicle Warranty Claims, all Lemon Law Claims, which again violated this Court's ORDER for the New General Motors to accept New Vehicle Warranties, and State Lemon Law Actions as an Assumed Liability.

Now the New General Motors comes to this Court in its *"Objection"* and at page one, section 1, intentionally lies to this Court claiming that it has complied with all ORDERS of this Court.

The New General Motors has habitually, and constantly, violated this Court's GM Sales ORDER, starting a mere two days after it was issued, and continuing to the present, as the New General Motors LLC absolutely REFUSES to accept express New Vehicle Warranties, State Lemon Law Actions, and other related regulatory obligations under such statutes (Which pursuant to Florida Lemon Law would include the Magnuson-Moss Warranty Act) as an *"Assumed Liability"*, as ORDERED by this Court several times in its GM Sales ORDER.

The New General Motors has absolutely refused, and will not comply with its *"Assumed Liabilities"* until this Court imposes Sanctions in an amount sufficient enough to force the New General Motors to comply.

### Intentional Lie Two

2.   The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly, lie at page one, section 1 under the title *"Introduction"* by stating that *"Movant in a long line of fruitless attempts by him to have General Motors held accountable for alleged liabilities arising from a purportedly defective Chevy S-10"*.

Two parts of said statement are not truthful.

8

The Movant's attempts have not been "*fruitless*" since Movant did receive a Quasi-Judicial Lemon Law Judgment finding that his truck <u>far exceeds</u> the state requirements to be a "*Lemon*".

And although General Motors was able to use a counterfeit GM Letter, their attorney created, and used the concealment of a Key Witness, Carolyn Westberg with the SITEL Corporation to obtain a mere technicality, giving GM a last chance to attempt repairs, the process was Fruitful for Movant since the issue of the truck being a "*Lemon*" pursuant to Florida Lemon Law, was clearly decided in Movant's favor.

It is notable that the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly lie to this Court about Movant's Lemon Law Case being "*Fruitful*", and about the **<u>Written Quasi-Judicial Lemon Law Judgment specifically finding that the truck far exceeded all requirements for being a "Lemon"</u>**, and was loaded with Manufacturer Defects rendering the Vehicle not fit, nor safe, for its intended purpose, that the law firm of King & Spalding LLP has several copies of.

It is also notable that the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly lie to this Court about Movant's Lemon Law Case, and did not tell this Court that GM was given a last chance to repair the "*Lemon*" truck and has refused to make any attempt to do so for five years now.

It is also notable that the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly lie to this Court about Movant's

Lemon Law Case, and did not tell this Court that GM, **as Retaliation against the Movant for filing the Lemon Law Case**, refused to honor the still active Express Written Warranty on Movant's Lemon Truck, for the remaining two, and a half years of the Warranty, and REFUSED to make any attempt to repair the junk truck, to get it running, or to remove it from Movant's driveway where it was blocking access to Movant's house.

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly, lie *by even implying* that the truck in question is *"purportedly defective"* when the Law Firm of King & Spalding LLP has a true, and correct, copy of the State Lemon Law Judgment, in their possession, clearly stating Movant's truck **FAR exceeds the state requirements for being considered a *"Lemon"*.**

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, did intentionally, and knowingly, deceive this Court, by not truthfully telling this Court that they have a true, and correct, copy of the Florida State Quasi-Judicial Lemon Law Hearing Judgment finding Movant's Truck greatly exceeds the requirements for being a Lemon, and then fraudulently stating that the truck was only *"purportedly defective"*.

And by intentionally not telling this Court that the Judgment ORDER of that Quasi-Judicial Hearing found that Movant's Truck **far exceeded being a Lemon**, with a long list of proven manufacturer defects that substantially impaired the use of the truck for its intended purpose.

10

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott

Davidson, did intentionally, and knowingly, lie by not truthfully telling this Court that the truck

at issue had a knocking engine, that did not start, or run, a whining, slipping transmission,

defective gauges, an electrical short, doors that opened while driving, windows, and doors that

leaked water filling the truck with dangerous mold, and numerous other defects.

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott

Davidson, did intentionally, and knowingly, lie by not truthfully telling this Court that General

Motors was given a last chance to repair the vehicle, years ago, **and have refused to make any**

**attempt to do so**, leaving the junk, non-running truck blocking Movant's driveway, causing

Movant, a severely disabled 100% Service-Connected Veteran with a numb side, a bad leg, and

bad heart great difficulty in entering his own home for nearly seven years now.

**Intentional Lie Three**

3.   The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and

Scott Davidson, did intentionally, and knowingly, lie at page one, section 1 under the

title "*Introduction*" by stating that "*Movant has unquestionably had his day in Court*

*and then some.*"

That statement is an out and out lie specifically intended to deceive this Court, and deny

Movant his Constitutional Rights. [See attached Affidavit of Movant, and a Key Witness, given

under Oath, and subject to the penalties for perjury if it isn't true.]

Movant has never had "*His day in Court*" and the law firm of King & Spalding LLP is

fully aware of this because they have intentionally lied, falsified evidence, concealed evidence,

hid Key Witness, Carolyn Westberg, so that Movant could not even serve her a Summons, and

have committed a Fraud on the Court, again, and again, to make sure Movant never has "His day

in Court."

### The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, are now intentionally lying to this Court to deny Movant just one time in Court.

In 2004 Movant followed Florida Law 681.104 and served a Written NOTICE of

nonconformity on the former CEO of General Motors, Richard Wagoner, and on each member of

the GM Board of Directors by Registered mail. [Attached as Exhibit B is a true and correct copy

of Florida Statute 681.104 explaining the process.]

The Manufacturer had ten (10) days to respond otherwise Movant is entitled to the relief

sought.

Now, nearly seven years later the manufacturer has still not responded to Movant's

681.104 Notice, which well exceed the ten (10) days statutory response time in 681.104.

Florida Law does not authorize service of the 681.104 Notice on a Third Party, or a fake

GM Employee, but specifically requires service on the Manufacturer, and specifically describes

Manufacturer at F.S. 681.102.

12

Movant discovered a state-wide scheme by General Motors to defraud all GM Consumers out of their state Lemon Law Rights in Florida, by hiring the SITEL Corporation to pose as FAKE GM Executives, while GM told GM Customers they were real GM Executives, instructing GM Consumers to serve their 681.104 Lemon Law Notice on these FAKE GM Executives.

The SITEL Employees, in this case a "*Carolyn Westberg*", were given a FAKE GM Address in Detroit at GM's Headquarters, where correspondence was secretly copied by the MSX International Corporation (also hired by the GM Board of Directors to defraud GM Consumers), and secretly forwarded back to the SITEL Corporation Employee in Tampa.

This illegal process with the SITEL Corporation, and MSX International, is described in Richard M. Garrison, et al. v. General Motors Corporation, Case 02CA2679 in the Court of Appeals, Fourth Appellate District, Ross County Ohio. [See Attached Exhibit C].

The Board of Directors for the former General Motors Corporation, and the Board of Directors for the New General Motors LLC, many of whom are the same individuals, used this Fraudulent Scheme to deny thousands of GM Consumers in Florida "*Meaningful*" Access to Florida's Lemon Law System, tricking GM Consumers into illegally serve their F.S. 681.104 Notice on a Third Party instead of on the Manufacturer, as required by the four corners of Chapter 681.

Further thousands of GM Consumers went all the way through the State Lemon Law Process and never knew that they had been swindled out of their rights, never knowing that a Third Party was involved, and paid to pretend to be Fake GM Executives.

This Court should **Pro Bono Publico** not just find the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, in <u>CONTEMPT</u>, and impose substantial Sanctions for their lying in this Court to cover-up a Massive State-Wide Scheme to Defraud ALL GM Consumers, but this Court MUST Order that every GM Consumer defrauded, and cheated, is given the truth about the involvement of the SITEL Corporation, and MSX International.

*At any Rate*, the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson, clearly intentionally lied to this Court about Movant having had *"His Day in Court, and then some"*.

<u>**Movant was clearly DEFRAUDED out of the Florida Lemon Law Process**</u> with a SITEL Employee in Tampa, paid by GM to pretend to be a GM Executive in Detroit. [The Law Firm of King & Spalding LLP has a true, and correct, tape recording of the Movant's Lemon Law Hearing, and a Complete Copy of the Lemon Law Case of Billy Kidwell where documents prove GM counterfeited at least three (3) fake letters saying SITEL Corporation Employee, Carolyn Westberg, was a GM Executive in Detroit to rig the Lemon Law Process. <u>They know they are lying to this Court.</u>]

Florida Statutes, Chapter 681, are very clear that the response by the SITEL Employee

was not authorized, **or legal**, and that the Manufacturer was legally served, and has not

responded for OVER six years, greatly exceeding the ten day time limits to respond, entitling

Movant, <u>by Statute,</u> to RELIEF.

To get this relief when there is so much corruption in a case by a Manufacturer Florida

Statute 681.112 specifically authorizes the consumer to sue in State Court if the suit is filed

within a year. [See Exhibit D attached hereto.]

Movant timely filed suit in Florida State Court and the New General Motors LLC

violated this Court's GM Sales ORDER for Warranties, and State Lemon Law Actions to be an

"*Assumed Liability*", and told the State Court that GM was immune from suit because of the

Bankruptcy, and did not have to honor GM New Vehicle Express Written Warranties, or State

Lemon Law Actions, which authorized the State Lawsuit.

As a result of the New GM lying to the State Court, in direct violation of this Court's GM

Sale ORDER, the state lawsuit of Movant was "*suspended*".

So for the Second Time the Movant was denied his day in Court as a result of lies, and

illegal conduct, by General Motors.

Movant found out the GM Board of Directors had authorized the fraud on Florida's

Lemon Law System, and had <u>personally</u> conspired with GM's In-House Attorneys to hire the

SITEL Corporation, and MSX International, to save tens, and maybe even hundreds of millions

of dollars by defrauding, *at least*, every GM New Vehicle Consumer in the State of Florida out

of their Statutory Florida Lemon Law Rights. [There is a strong probability this fraud on GM

Consumers took place in many additional states.]

So Movant sued in Federal Court.

The Florida State Lemon Law Process authorizes such a lawsuit by considering the fraud

by General Motors to be an *"Unfair or Deceptive Trade Practice as defined by part II of Chapter

501"*. [See Exhibit E attached hereto.]

Once again, to deny the Movant just one day in Court, the Law Firm of King & Spalding

LLP told the Federal Court that Movant's Lawsuit was, in essence, a State Lemon Law Claim,

and that ALL GM New Vehicle Express Warranties, and State Lemon Law Actions, were

prohibited by the GM Sales Order in this Bankruptcy Court.

As Exhibit A clearly proves that is an intentional blatant lie by the Law Firm of King &

Spalding to violate the Constitutional Rights of Movant, and deny him just one day in Court.

The attached Exhibits prove the Law Firm of King & Spalding LLP, and its Attorneys

Arthur Steinberg, and Scott Davidson, clearly intentionally lied to this Court when they told this

Court *"Movant has unquestionably had his day in Court and then some."*

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott

Davidson, know beyond any doubt that they intentionally lied to this Court, and that their clients

16

have used lies, fraud, and intentional violations of this Court's GM Sale ORDER to make sure

the *Severely Disabled Pro Se Movant* never sees just <u>ONE</u> day in Court.


**Intentional Lie Four**

4.   On page One at Section 2 the Law Firm of King & Spalding LLP, and its Attorneys

Arthur Steinberg, and Scott Davidson, do not truthfully tell that Movant received a

**favorable judgment** from the Quasi-Judicial Lemon Law Hearing as to meeting <u>ALL</u>

Requirements for relief, except for one (1) letter from a GM Executive in Detroit

named Carolyn Westberg, who stated in a letter that she didn't meet the time-limits to

respond because of a hurricane. GM was given a last chance to repair the defects

based on Carolyn Westberg's letter.


General Motors has since ADMITTED in filings in the United States District Court at

Fort Myers that Carolyn Westberg was never in Detroit, that the Detroit address given to Movant

was fake, and that letters Movant sent to Carolyn Westberg in Detroit were SECRETLY sent

back to Tampa Florida where Carolyn Westberg really was.

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott

Davidson, are fully aware of this since it was at attorney with King & Spalding that ADMITTED

in the Federal Court that Carolyn Westberg was never a GM Executive, nor in Detroit, like

Movant was told at the State Lemon Law Hearing.

Section 2 of the New General Motors "*Objection*" Motion is an out and out intentional lie in that the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson were intentionally not truthful with this Court as to the Actual Material Facts.

**Intentional Lie Five**

5. At section 2 on page 1 and proceeding to page 2 the Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson s, intentionally lie to this Court and say Movant failed to apply to the Florida New Vehicle Arbitration Board.

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson are fully aware that the Notice to Appeal was wrongly sent to a GM Dealership in Tampa, instead of to Movant 120 miles away in Port Charlotte, Florida, which prohibited his filing an Appeal. [The Tampa GM Lemon Law Attorney, Nichols, said it was an "*Accident*" but told Movant he could still sue in Court].

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson have a complete copy of the Lemon Law Case of Movant, and are also fully aware that the BBB told Movant that they could not provide him with a copy of the hearing tape, which was necessary for appeal, because the BBB could not afford a working tape recorder to copy the tape. [This is documented in substantial correspondence between Movant and the BBB that the Law Firm of King & Spalding has a copy of.]

18

The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott

Davidson have copies of correspondence where Movant offered to buy a tape recorder for the

BBB so that he could timely Appeal to the New Vehicle Arbitration Board and the BBB refused

the tape recorder saying it couldn't accept anything of value from any party.

Movant later found that the whole BBB General Motors process was paid for by General

Motors, and that the BBB is in effect a General Motors Employee, when it came to the GM

Lemon Law Process. [Which explains their obstructing an Appeal.]

Movant filed an Appeal with the Florida New Vehicle Arbitration Board **the very same**

**day** he received his Appeal NOTICE, and a copy of the Hearing Tape from the BBB and it was

not accepted for not being timely.

The Official Record of Movant's Lemon Law Process that the Law Firm of King &

Spalding LLP has in their possession proves these facts.

Clearly section 2 of the "*Objection*" filed by the New General Motors LLC is fraudulent.


**Intentional Lie Six**

6.  The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and

    Scott Davidson quote the judgment of the Florida Appeals Court that found the

    Lemon Law Hearing constituted "*Due Process*", and was a "*Quasi-Judicial*

    *Hearing*".


What King & Spalding does NOT truthfully tell this Court is that the Record of that

Appeal PROVES the judgment was **Obtained by Fraud**, in that the Appeals Court, and the

19

Movant, in that case were told Carolyn Westberg was a GM Executive in Detroit, and it was not until recently in the Federal Court at Fort Myers that the Law Firm of King and Spalding LLP "*came clean*" and **ADMITTED** the ongoing Fraud, and **ADMITTED** that Carolyn Westberg was never in Detroit, was NOT a General Motors Executive, and was in Tampa Florida all along.

That GM had lied in Florida's Lemon Law Process, lied in State Court, and lied to the State Appeals Court by claiming Carolyn Westberg was a GM Executive in Detroit.

Movant, *like the State Courts*, was so deceived that he even sued Carolyn Westberg as being a GM Executive in the Federal Lawsuit!

Nor does The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and Scott Davidson  truthfully tell this Court that GM's Law Firm, *at the time against Movant in the Appeals Court*, was Rumberger, Kirk & Caldwell, a law firm that lied so much in another GM Lawsuit in Florida, that the Florida Appeals Court found that they couldn't believe a word that GM's Attorneys said in Motions, and the Appeals Court had to read the entire transcripts of the trial, to get to the truth. [See General Motors v. McGee, 837 So. 2d 1010 (2002) in Florida's Fourth District Court of Appeals.]

The Law Firm of King & Spalding LLP, and it's Attorneys Arthur Steinberg, and Scott Davidson did not truthfully tell this Court that the State Court had to threaten to put GM's Attorneys in jail to make them tell the truth. [See Exhibit F attached hereto].

Nor did they tell this Court that GM's Attorneys are so dishonest that they are the ONLY Attorneys in Florida's History to have the Florida Supreme Court ask the Florida Bar to investigate them. [See Exhibit G attached hereto.]

*Most revealing*, is that the same **EXACT** GM Attorneys in Movant's State Appeal on the issue of Due Process at the Lemon Law Hearing, Rumberger, Kirk & Caldwell, and the same **EXACT** Attorney with that law firm, Attorney Charles P. Mitchell, that Movant accused of dishonesty, and Retaliation against him for using Florida's Lemon Law System, was found GUILTY of Retaliation against another Florida GM Victim, and GUILTY of dishonesty in his Court Filings in General Motors v. Joseph Chiaramonte, Case No. 03-8598 CACE 08 in the Circuit Court in Broward County. [See Exhibit H attached hereto].

So for almost seven (7) years, while Movant, and his family, were being terrorized by General Motors, and it's teams of dishonest Attorneys, those same EXACT corrupt Attorneys were being exposed as crooks, threatened by Judges with being put in jail, Sanctioned, and even being found GUILTY of bad faith litigation abuse, for the same EXACT conduct in other cases, committed against Movant in this Case.

The only difference is in the other cases the victim of GM's illegal conduct could afford an Attorney, and Movant, and his family has been terrorized because he is disabled, on a fixed VA Service-Connected Disability, and cannot afford counsel.

21

**Intentional Lie Seven**

7. The Law Firm of King & Spalding LLP, and its Attorneys Arthur Steinberg, and

   Scott Davidson  intentionally lie to this Court and say Movant is "Forum Shopping"


The evidence clearly proves that Movant was happy only going to the Quasi-Judicial

Lemon Law Hearing.

It is General Motors who hired the SITEL Corporation to pretend to be GM Executives,

and set up a fake Mail Forwarding scheme, giving Movant a GM Detroit Address for Carolyn

Westberg, when she was never a GM Executive, and never in Detroit.

It was General Motors that refused to abide by the Lemon Law Hearing Officer and take

its last chance to repair the vehicle.

It is General Motors that decided to RETALIATE against Florida GM Consumers that

used Florida's Lemon Law Process, like the case of Joseph Chiaramonte, where General Motors

was found GUILTY of Bad Faith Retaliation, General Motors that decided to Retaliate against

Movant by not honoring the last two years of his Written Express New Vehicle Warranty, as

punishment for using the Lemon Law Process.


It was clearly the illegal conduct of General Motors that took this case to Florida State

Court.

And then instead of being honest and allowing the Movant just one day in Court on the

Merits the Law Firm of Rumberger, Kirk & Caldwell, after already being found GUILTY of

Retaliation against GM Victims, lied to the State Court and said GM Warranties, and Lemon

Law Claims were immune from suit because of this Bankruptcy Court.

General Motors, and it's convicted, dishonest Attorneys made a Federal Case out of a

Lemon Law Case. **But they didn't stop there.**

General Motors, and the Law Firm of King & Spalding, kept bring in this Bankruptcy

Court, expanding litigation to this Court.

Now the same, EXACT, Law Firm of King & Spalding that intentionally expanded

litigation to this Court with its constant claims of Bankruptcy Court Immunity intentionally lies

in its "*Objections*" Motion and says the Pro Se Movant is "*Forum Shopping*".

This Court needs to stop the intentional lying, and expansion of litigation by the New

General Motors, and it's Attorneys, King & Spalding, by finding General Motors in violation of

this Court's Sales ORDER, and imposing adequate Sanctions to stop this ongoing dishonesty, to

impose adequate Sanctions against King & Spalding, and the two Attorneys involved, and

ORDER King & Spalding to inform both the Florida State Court, and the United States District

Court, that General Motors, and its Attorneys intentionally lied, and that New Vehicle Warranty

Claims, State Lemon Law Actions, and related  statutory obligations are an "Assumed Liability"

for the new General Motors, exactly as Exhibit A proves.

That would stop the massive expansion of litigation by General Motors, and its

Attorneys, and hopefully pave the way to Movant having just ONE day in a Courtroom before a

jury to prove how dishonest General Motors, and its Board of Directors really is, terrorizing a

Disabled Veteran until he is bed-bound.

There are fourteen (14) more intentional lies in the "*Objections*" Motion filed by King &

Spalding however Movant is having bad heart pains and is unable to go on so he hopes that

Seven Documented Intentional Lies is enough to get this Court to act.

The law firm of King & Spalding, and almost seven years of almost daily harassment from General Motors, while General Motors Executives have spent far in excess of several million dollars to STEAL $24,000 from a Disabled Veteran on a fixed income, has cause at least one Stress-Caused Heart Attack to the Severely Disabled Movant, and irreparable harm to his heart.

Movant, and his family, can state beyond any doubt, under oath, that Corporate Governance, and GM's Dishonest Attorneys, **are actually killing the severely disabled Movant**, and have already intentionally harmed Movant so much he is bed-bound most of the time.

## **RELIEF**

1. This Court should appoint Counsel to assist the severely disabled *Pro Se Litigant* before General Motors, and its Attorneys intentionally cause his death.

2. Movant is on a fixed income, and owes MORE on his houses then they can be sold for, and has access to less than a hundred dollars.

3. If Movant dies of Heart Problems while this case is before this Court, **which is a strong possibility**, this Court should request a Criminal Investigation of the New General Motors Board of Directors, and GM's Attorneys, for intentionally driving a severely disabled Veteran, with a severe Stress-Disorder, to having Stress-Caused Heart Problems, in a scheme to STEAL $24,000 from a Disabled Veteran. For intentional Manslaughter.

4.  This Court should ORDER the Law Firm of King & Spalding to produce each Exhibit referred to in this document that said Attorneys have access to, such as the tape recording of the Lemon Law Hearing of Billy Kidwell, all letters in the Lemon Law Record alleged to be from Carolyn Westberg, etc.

5.  This Court should appoint an Independent Expert, not related to any party, to do an independent investigation, and Report if the New General Motors LLC is abiding by this Court's ORDER for GM Express Written Warranties, Lemon Law Actions, and related statutes to be an ASSUMED Liability for the New General Motors.

6.  The Eleventh Circuit found that four and a half Million Dollars ($4,500,000.00) in Sanctions against General Motors, for far lessor Bad Faith Litigation Abuse, then there has been in the instant case, was appropriate. In this case a Disabled Veteran and his Family have been terrorized nearly seven years, the Disabled Veteran was intentionally driven to a Life-Threatening Heart Attack, and now Movant's heart operates at only 40% for what's left of his life, all because of General Motors, and its attorneys wanting to STEAL $24,000 from Movant. Sanctions for a party this dishonest, and wealthy, where $4,500,000.00 have not even slowed down their dishonesty, and they are killing a severely disabled Veteran, and torturing his family, **to steal money from him**, should be set at a minimum of $25,000,000, and even that amount may not nearly be enough.

7.  Movant seeks any other relief that this Court deems to be fit, and proper.

Respectfully Submitted,

November 30, 2010

Billy Ray Kidwell

5064 Silver Bell Drive

Port Charlotte, FL. 33948    941 627-0433

## CERTIFICATE OF SERVICE

I, Billy Ray Kidwell, hereby certify that a true and correct copy of the attached was served on All
Parties on this the 30th day of November 2010 by mailing a true and correct copy of same in the
U.S. Mail addressed to them.

Billy Ray Kidwell

26

# EXHIBIT  A

54.    Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.    The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.    The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

Sellers' obligations under state "lemon law" statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.

57.    Subject to further Court order and consistent with the terms of the MPA and the Transition Services Agreement, the Debtors and the Purchaser are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, (a) the books, records, and any other documentation, including tapes or other audio or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business, and (b) the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates.

58.    The Debtors are authorized to take any and all actions that are contemplated by or in furtherance of the MPA, including transferring assets between subsidiaries and transferring direct and indirect subsidiaries between entities in the corporate structure, with the consent of the Purchaser.

59.    Upon the Closing, the Purchaser shall assume all liabilities of the Debtors arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Debtor, except for workers' compensation claims against the Debtors with respect to Employees residing in or employed in, as the case may be as defined by applicable law, the states of Alabama, Georgia, New Jersey, and Oklahoma.

60.    During the week after Closing, the Purchaser shall send an e-mail to the Debtors' customers for whom the Debtors have usable e-mail addresses in their database, which will provide information about the Purchaser and procedures for consumers to opt out of being

# EXHIBIT B

**Florida Lemon Law 681.104 Nonconformity of motor vehicles.**

**(1)**

**(a)** After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer shall have 10 days, commencing upon receipt of such notification, to respond and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility within a reasonable time after the consumer's receipt of the response. The manufacturer shall have 10 days, except in the case of a recreational vehicle, in which event the manufacturer shall have 45 days, commencing upon the delivery of the motor vehicle to the designated repair facility by the consumer, to conform the motor vehicle to the warranty. If the manufacturer fails to respond to the consumer and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility or perform the repairs within the time periods prescribed in this subsection, the requirement that the manufacturer be given a final attempt to cure the nonconformity does not apply.

**Florida Lemon Law 681.102 Definitions.**

As used in this chapter, the term:

**(14)** "Manufacturer" means any person, whether a resident or nonresident of this state, who manufactures or assembles motor vehicles, or who manufactures or assembles chassis for recreational vehicles, or who manufactures or installs on previously assembled truck or recreational vehicle chassis special bodies or equipment which, when installed, forms an integral part of the motor vehicle, a distributor as defined in s. 320.60(5), or an importer as defined in s. 320.60(7). A dealer as defined in s. 320.60(11)(a) shall not be deemed to be a manufacturer, distributor, or importer as provided in this section.

# EXHIBIT C

[Cite as *Garrison v. Gen. Motors Corp.*, 2003-Ohio-1230.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | |
|---|---|
| Richard M. Garrison, et al., | : |
| | : |
| Plaintiffs-Appellants, | : |
| | : Case No. 02CA2679 |
| vs. | : |
| | : DECISION AND JUDGMENT ENTRY |
| The General Motors Corporation, | : |
| | : RELASED:   3-14-03 |
| Defendant-Appellee. | : |
| | : |

---

APPEARANCES:

John L. Fosson, Waverly, Ohio, for appellants.

Timothy C. Sullivan and Paige L. Bendel, Cincinnati, Ohio, for appellee.

---

Kline, J.:

{¶1}   Richard M. Garrison and Rosemary Garrison appeal the decision of the Ross County Court of Common Pleas, which granted The General Motors Corporation's ("GM") motion for relief from a default judgment entered against it. Because we find that the trial court erred in determining that GM's failure to respond to the Garrisons' complaint was due to excusable neglect, we agree. Accordingly, we reverse the judgment of the trial court.

I.

{¶2}    On March 28, 2000, Richard and Rosemary Garrison filed a complaint against GM seeking damages under the Consumer Sales Practices Act ("the Act"). The Garrisons' allegations centered on GM's alleged failure to provide a replacement part for their car's airbag within a reasonable time. The clerk sent a copy of the complaint and a summons to a GM post office box in Lansing, Michigan. GM did not respond to the complaint. On May 1, 2000, the Garrisons filed a motion for default judgment. On May 8, 2000, the trial court ordered a hearing so that the Garrisons could prove damages. The Garrisons waived their right to a jury and filed an amended demand for judgment. After the hearing, the trial court awarded $24,144 in compensatory damages and found that under the Act, the Garrisons were entitled to treble damages and reimbursement for their attorney's fees. On May 17, 2000, the trial court entered a judgment against GM for $77,432.

{¶3}    On July 3, 2000, GM filed a motion for relief from judgment alleging that it had failed to respond to the complaint because of a mistake, inadvertence or excusable neglect. The trial court denied GM's motion.

{¶4}    On appeal, we reversed the trial court's judgment by denying GM's motion on the sole basis that it failed to submit evidence to support the allegations in its Civ.R. 60(B) motion.

{¶5}   On remand, the trial court set an evidentiary hearing. The parties' stipulated that GM could take the deposition of Brenda Horchler by telephone.   GM filed a copy of this deposition before the evidentiary hearing.   GM presented no further evidence at the hearing.

{¶6}   In her deposition, Brenda Horchler testified that she was a legal assistant at GM's Customer Assistance Center in Tampa, Florida and was familiar with the Garrison file in the Tampa office.

{¶7}   According to Horchler, the post office forwarded the Garrisons' complaint and the summons to MSX International.   MSX International creates electronic versions of the documents and then sends them to GM's Customer Assistance Centers.   GM contracted with Sitel to provide employees for its Tampa Customer Assistance Center.   Horchler explained that when GM received the Garrisons' complaint and the summons GM had just opened the Tampa Customer Assistance Center and had a very heavy workload and the workers, including Sitel employees, were unfamiliar with their job responsibilities.

{¶8}   Horchler testified that in April 2000, Trenishia Brown was responsible for receiving summons.   Brown's job was to distribute cases evenly.   GM's records indicate that Brown sent the Garrisons' summons to Kim Marcus, who worked for Sitel.

{¶9}    According to Horchler, GM's records also indicate that Marcus accessed the electronic version of the Garrisons' complaint and the summons on April 6, 2000. Marcus' notations on the file show that Marcus contacted several people about the case, including the Garrisons' attorney, and began investigating the facts of the case. Horchler speculated that Marcus did not know that GM had not assigned an attorney to respond to the complaint.

{¶10}    Horchler testified that after Marcus left her employment in May 2000, Stephanie Gendel, also a Sitel employee, became responsible for the Garrison case. Gendel accessed electronic versions of the documents that were filed in the case, including the judgment entry. Gendel approached Horchler and asked her about the judgment entry. Horchler immediately looked at the Garrison file and had it sent to GM legal staff, who hired a local attorney to handle the case.

{¶11}    The trial court granted GM's motion for relief from judgment. In so doing, it found that while GM "has been guilty of sloppy and lax procedures with regard to handling of legal matters such as this at least at the time of the filing of the complaint in this matter[,]" GM was not guilty of a complete disregard of the judicial system.

{¶12} The Garrisons appeal and assert the following assignments of error: "The trial court abused its discretion in granting Defendant's Motion for Relief from Judgment where Defendant failed to show it has a meritorious defense and its failure to timely answer Plaintiff's Complaint was not shown to be the result of excusable neglect."

II.

{¶13} In their only assignment of error, the Garrisons argue that the trial court erred in granting GM's motion for relief from judgment because (1) GM failed to show that they had a meritorious defense and (2) because GM did not show that it failed to respond to the complaint because of excusable neglect.

{¶14} In an appeal from a Civ.R. 60(B) determination, a reviewing court must determine whether the trial court abused its discretion. *State ex rel. Richard v. Seidner* (1996), 76 Ohio St.3d 149, 151, citing *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20. An abuse of discretion connotes conduct that is unreasonable, arbitrary, or unconscionable. *State ex rel. Richard* at 151, citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 107.

{¶15} In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a

meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. *Rose Chevrolet* at 20, citing *GTE Automatic Electric v. ARC Industries* (1976), 57 Ohio St.3d 146, paragraph two of the syllabus; see, also, *Buckeye Fed. S. & L. Assn. v. Guirlinger* (1991), 62 Ohio St.3d 312, 314. If any of these three requirements is not met, the motion should be overruled. *Rose Chevrolet* at 20, citing *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351; *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578.

A.

{¶16} We first address the Garrisons' argument that GM did not show that it failed to respond to the complaint because of excusable neglect because it is dispositive.

{¶17} The determination of whether excusable or inexcusable neglect occurred "must of necessity take into consideration all the surrounding facts and circumstances." *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, fn4. If it is evident from all the facts and circumstances that the acts of the party seeking relief exhibited a disregard for the judicial system and the rights of the other party, then the trial court should find that the mistakes were inexcusable. *D.M.G., Inc. v. Cremeans Concrete & Supply Co.* (1996), 111 Ohio App.3d 134, 138; see,

also, *Colley* at 248; *GTE Automatic Electric, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146 at 153. Generally, a failure to plead or respond after admittedly receiving a copy of a complaint is not "excusable neglect." *Katko v. Modic* (1993), 85 Ohio App.3d 834, 838. Likewise, a person's failure to seek legal assistance after being served with court documents is not excusable. *Associated Estates Corp. v. Fellows* (1983), 11 Ohio App.3d 112, 116. Even illness does not excuse a business owner who ignores legal documents received in the mail and fails to designate a competent agent to handle business matters in his absence. See *Andrew Bihl Sons, Inc. v. Trembly* (1990), 67 Ohio App.3d 664, 667.

{¶18} In *Andrew Bihl Sons* at 667, this court wrote: "[i]nsufficient or negligent internal procedures in an organization may not compromise excusable neglect and, therefore, they may not support the vacation of a default judgment. *Laking Trucking, Inc. v. Coastal Tank Lines, Inc.* (Feb. 9, 1984), Allen App. No. 1-83-3, (summons received in a corporate mail room but lost before being brought to the attention of the proper office does not rise to excusable neglect); *Miller v. Sybert* (July 25, 1985), Auglaize App. No. 2-84-13, (ordinary mail delivered to defendant when mail is accessible to other persons and where it was never picked up by

defendant's friends while he was out of state does not constitute excusable neglect)."

{¶19}  We find that the trial court abused its discretion in granting GM relief from the default judgment entered against it. Here, GM's independent contractor, Sitel, received and processed the complaint and summons at issue.  GM failed to plead or respond to the Garrisons' compliant after admittedly receiving a copy of it.  Horchler's testimony established, at best, insufficient or negligent internal procedures by GM, which cannot comprise excusable neglect.    *Andrew Bihl; Laking Trucking.*  Moreover, the trial court expressly found GM "guilty of sloppy and lax procedures with regard to handling of legal matters such as this at least at the time of the filing of the complaint in this matter."  Thus, the trial court abused its discretion when it determined that GM showed that it failed to respond to the Garrisons' complaint due to excusable neglect.

B.

{¶20}  We do not reach the Garrisons' argument that GM failed to show that it had a meritorious defense because it is moot. App.R. 12(A)(1)(c).

C.

{¶21}  Accordingly, we sustain the Garrisons' only assignment of error and reverse the judgment of the trial court.  On remand,

the trial court is to enter judgment against GM on its motion for relief from judgment.

**JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

Harsha, J., concurring in judgment only:

{¶22}    I concur in judgment only because I believe our original decision, which reversed the trial court's denial of the motion for relief from judgment, was in error. Nonetheless, that decision became law of the case in the absence of a decision to the contrary by the Supreme Court. While this latest decision appears to "whipsaw" the trial court, I am forced to conclude the result is proper given the finality of our original decision.

### JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as the date of this Entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Evans, P.J.:  Concurs in Judgment only.

Harsha, J.: Concurs in Judgment only with Opinion.

For the Court

BY: _____
          Roger L. Kline, Judge

### NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

# EXHIBIT D

**Florida Lemon Law 681.112 Consumer remedies.**

**(1)** A consumer may file an action to recover damages caused by a violation of this chapter. The court shall award a consumer who prevails in such action the amount of any pecuniary loss, litigation costs, reasonable attorney's fees, and appropriate equitable relief.

**(2)** An action brought under this chapter must be commenced within 1 year after the expiration of the Lemon Law rights period, or, if a consumer resorts to an informal dispute-settlement procedure or submits a dispute to the division or board, within 1 year after the final action of the procedure, division, or board.

**(3)** This chapter does not prohibit a consumer from pursuing other rights or remedies under any other law.

# EXHIBIT E

**Florida Lemon Law 681.111 Unfair or deceptive trade practice.**

A violation by a manufacturer of this chapter is an unfair or deceptive trade practice as defined in part II of chapter 501.

# EXHIBIT F

FOCUS ON THE CORPORATION: 6 MARCH 1998

# Judge to GM: Do I Have to Arrest You?

Sometimes it takes a threat of jail time for corporate lawyers to abide by the law.

Attorneys for General Motors, threatened with imprisonment for contempt, last month turned over internal documents that are likely to undermine the giant automaker's defense in product liability cases around the country.

In Ft. Lauderdale, Florida, Broward County Judge Arthur Franza ordered GM to turn over the documents in a lawsuit brought by the parents of 13-year old Shane McGee. Shane was killed in 1991 when the fuel tank in the 1983 Oldsmobile Cutlass station wagon he was riding in burst into flames after being struck in the rear by another vehicle.

GM fought to keep the documents secret, but at a showdown hearing on February 5, Judge Franza threatened "very severe sanctions" if GM did not obey his order.

Pursuant to a subpoena, GM's in-house attorney Glenn Jackson appeared before Judge Franza on that day, but did not bring with him the documents that Franza had ordered him to bring to court. Jackson, GM's case manager for the McGee lawsuit, told the Judge that GM would not give him the documents to bring to trial.

"Do I have to arrest you, and book you, and put you on bond and release you?" Judge Franza asked Jackson. "I am warning you all and your client to produce these documents by Monday. Let me tell you, if you don't, there is going to be some very severe sanctions, and I mean very severe. I don't think General Motors is big enough to thumb its nose at the Court. I don't think they are big enough to obstruct justice or to conceal evidence."

On February 9, GM finally produced the documents that it had sought for years to keep secret. Judge Franza conducted an evidentiary review, and ordered a number of them admitted into evidence.

The legal skirmishing centers around a dispute between two former General Motors engineers, Edward Ivey and Ronald Elwell.

On June 29, 1973, Ivey, then an engineer at Oldsmobile, prepared a two-page report and calculated that fatalities related to fuel-fed fires were costing GM $2.40 per automobile.

Ivey multiplied 500 fatalities times an estimated $200,000 per fatality ($100 million) and divided that by 41 million automobiles. "This cost will be with us until a way of preventing all crash related fuel-fed fires is developed," Ivey concluded.

The Ivey report, as it is known, has been used by plaintiffs attorneys against GM in fuel-fed fire cases for almost 10 years now. But there has been an ongoing dispute between Ivey and Elwell about why Ivey prepared the report and what he meant by it.

Elwell, a retired GM engineer and whistleblower, testified in the McGee case that in 1981, the Ivey report appeared on his desk at

General Motors in a plain brown envelope. Elwell said that the Ivey report had on it a cover sheet which showed it was distributed to GM management.

Elwell testified that after reading the report, he met Ivey in an Oldsmobile garage and Ivey told him he prepared the report at the request of GM management "because General Motors wanted to know how much they could spend on fuel systems."

Ivey says he had never met with Elwell and that he did not know why he prepared the report or who asked him to prepare it. "I don't remember anyone asking me to write it and I don't believe anyone did," Ivey said.

In May 1997, McGee's attorney sought from GM any documents relating to the Ivey report. GM said that no such documents existed.

But after the February 5 showdown, GM produced the documents, one of which is a legal summary of an interview conducted with Ivey on November 3, 1981.

In that document, GM attorneys conclude that "Ivey is not an individual whom we would ever, in any conceivable situation, want to be identified" to plaintiffs attorneys in fuel-fed fire cases "and the documents he generated are undoubtedly some of the potentially most harmful and most damaging ever they ever to be produced."

This document also appears to contradict Ivey's claim that he doesn't know why he prepared the report. In the document prepared by GM attorneys, Ivey said he wrote the report "for Oldsmobile management" and engineers to "assist them in 'trying to figure out how much Olds could spend on fuel systems.'"

GM doesn't want anyone to think it was a cheapskate, unwilling to spend more than $2.40 per car to fix the problem. In a statement last week, GM said that "a dollar value cannot be placed on human life" and that "any suggestion that GM does not care about occupant and product safety is reprehensible and couldn't be further from the truth."

Whatever you say, big boy.

---

*Russell Mokhiber is editor of the Washington, D.C.-based* Corporate Crime Reporter.
*Robert Weissman is editor of the Washington, D.C.-based* Multinational Monitor.

COPYRIGHT © RUSSELL MOKHIBER AND ROBERT WEISSMAN

"Focus on the Corporation" is a weekly column written by Russell Mokhiber and Robert Weissman. Please feel free to forward the column to friends or repost the column on other lists. If you would like to post the column on a web site or publish it in print format, we ask that you first contact us (russell@essential.org or rob@essential.org).

"Focus on the Corporation" is distributed to individuals via email. To subscribe, send an e-mail message to list-proc@essential.org with the following all in one line: subscribe corp-focus <your name> (no period).

# EXHIBIT G

tampabay.com Know it now.

# Bar to study suspicion of court leak

### The state Supreme Court has recommended the investigation involving a pending case.

By STEVE BOUSQUET
Published July 20, 2005

TALLAHASSEE - The Florida Bar said Tuesday it will look into allegations that secret information was leaked while the state Supreme Court considered a sensitive case last month.

"We will investigate it," said Bar executive director John Harkness. He said the case would be referred to a Bar grievance committee.

Such an investigation by the Bar is highly unusual, Harkness said. "I can't remember it ever happening," he said.

The decision was in response to a recommendation by the court itself, which recently completed an extraordinary internal investigation to determine whether a court employee improperly leaked confidential information in a pending case.

The court's inspector general interviewed 48 employees but found no evidence of a leak. But court documents released Tuesday shed new light on a case that led to the most elaborate internal investigation of court security procedures in years.

The probe was triggered by a sequence of events that the court's spokesman, Craig Waters, called "suspicious."

The case involved a Miami warehouse worker, Rodrigo Aguilera, who sued his insurance carrier after he was severely injured on the job. He claimed the company refused his requests for emergency medical treatment. The company claimed immunity under a state workers' compensation law.

After the 3rd District Court of Appeal ruled in the insurance carrier's favor, Aguilera appealed to the high court. Justices heard arguments in November 2003.

The case was before the Supreme Court for 19 months. Last month, eight days before the court sided with Aguilera, the two sides reached a confidential settlement and asked the court to dismiss the case.

The court refused to dismiss the case and ruled 4-3 in the worker's favor.

In his report, made public Tuesday in response to a request by the St. Petersburg Times, Inspector General Ken Chambers wrote that court clerk Thomas Hall got a phone call on June 7, the day before the settlement was made public, from an unidentified attorney friend in South Florida.

The caller told Hall that the court decision was known, that the insurance carrier's law firm wanted to settle and that

"the case was going to be, or had been settled, for "an obscene amount of money,' " the report said.

Chief Justice Barbara Pariente ordered an investigation the next day, the report said.

Chambers said "the most likely recipient" of inside information in the case was the insurance company's law firm, Rumberger Kirk & Caldwell.

He also cited several e-mails between Feb. 23 and June 10 between a Supreme Court judicial assistant and an employee of Rumberger Kirk & Caldwell who used to work as a law clerk at the Supreme Court.

"The judicial assistant said she has never discussed the Aguilera case with the ex-court employee," Chambers wrote.

Neither person was identified and the former employee was not interviewed. One reason the court recommended that the Bar investigate could be to question people not employed by the court but who could be subject to disciplinary action.

The insurance carrier's attorney, Joshua Lerner of Rumberger Kirk & Caldwell's Miami office, called the focus on the case "much ado about nothing."

"I've never received any unauthorized information from any court," said Lerner, who also described as "purely coincidental" the timing of the settlement.

Aguilera's attorney, Lauri Waldman Ross of Miami, said: "I think the court has a duty to investigate if it thinks its confidentiality has been breached. I've never received any confidential information."

In the spirit of what she called "full disclosure," Waldman Ross said she has known Hall, the court clerk, for 25 years, since their days together at the University of Miami law school. But she said she never discussed the case with him.

"Even being mentioned in connection with something like this makes me upset," Waldman Ross said.

Steve Bousquet can be reached at bousquet@sptimes.com

© 2007 • All Rights Reserved • St. Petersburg Times
490 First Avenue South • St. Petersburg, FL 33701 • 727-893-8111
Contact the Times | Privacy Policy | Standard of Accuracy | Terms, Conditions & Copyright

# EXHIBIT H

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.:    03-8598 CACE 08

GENERAL MOTORS CORPORATION,

    Petitioner,

vs.

JOSEPH CHIARAMONTE,

    Respondent.

_____/

**RECEIVED**

DEC 08 2004

Orlando Law Offices of
Rumberger, Kirk & Caldwell, P.A.

## AMENDED FINAL JUDGMENT AWARDING RESPONDENT REASONABLE ATTORNEYS' FEES AND COSTS

THIS CAUSE having come on to be heard upon Respondent JOSEPH CHIARAMONTE's

Motion for Attorney Fees and Costs against Petitioner, GENERAL MOTORS CORPORATION, on

November 9, 2004, and the Court having reviewed said Motion, attachments and Respondent's

counsel's Affidavits, and having heard argument of counsel for the respective parties and being

otherwise fully advised in the premises, the Court, utilizing the criteria set forth in *Florida Patient's*

*Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and its progeny, makes the following,

**FINDINGS:**

A.    This matter arises out of a Lemon Law arbitration proceeding. The Respondent was

the prevailing party in a Florida New Motor Vehicle Arbitration. The Arbitration Board entered an

order in his favor pursuant to §681.1095, Fla. Stat., and dated March 17, 2003. General Motors

Corporation "appealed" that award by filing a petition with the Circuit Court on May 16, 2003. The

Court found General Motors failed to file its appeal within the requisite thirty days pursuant to

§681.1095(10), Fla. Stat., and after taking evidence the Court dismissed General Motors' "appeal"

as untimely. Further, the Court determined that the appeal was not "pursued in a timely and good

faith manner by General Motors Corporation." (Order on Defendant's Motion for Summary Judgment, June 15, 2004.)

B.      The Respondent is entitled to recover attorney fees pursuant to *Florida Statute § 681.1095(13)*, (Florida New Motor Vehicle Warranty Act).

C.      The Respondent seeks to recover for 76.70 hours expended at the hourly rate of $350 per hour plus costs of $45.05 for a total of $26,890, doubled for a total of $53,780.10. The Respondent also requests a multiplier of 2.5.

D.      The Court finds Respondent's counsel, Rebecca J. Covey, reasonably expended **65.4** hours representing the Respondent in this cause.

E.      The Court finds the hourly rate of **$350**, is reasonable for this type of case, in this community, considering the experience, reputation and ability of Respondent's counsel.

F.      Therefore the Court finds the reasonable attorney fee for Rebecca J. Covey is **$22,890.00**.

G.      The Court finds the Respondent is entitled to recoverable costs in the amount of $45.05.

H.      The above findings are based upon the Court's consideration of the relevant market conditions, the risk of non-payment, the skill of the attorney, the preclusion of accepting other employment because of this representation, the undesirability of the case, the amount involved and the results obtained and the other factors articulated in <u>Standard Guar. Ins. Co. v. Quanstrom</u>, 555 So.2d 828 (Fla. 1990).

General Motors Corp. v. Chiaramonte
Case No.03-8598 CACE 08
Final Judgment

I.    The Court awards attorney fees pursuant to *Florida Statute § 681.1095(13)*, (Florida

New Motor Vehicle Warranty Act) which provides:

> If a decision of the board in favor of the consumer is upheld by a court, recovery by
> the consumer shall include the pecuniary value of the award, attorney's fees incurred
> in obtaining confirmation of the award and all costs and damages ....
>
> If a court determines that the manufacturer acted in bad faith in bringing the
> appeal...or in complete absence of a justiciable issue of law or fact, the court shall
> double, and may triple the amount of the **total award**.

J.    Since the Court has previously found this action to be filed in bad faith by General

Motors pursuant to §681.1095, Fla. Stat., and since this Court has previously ruled the Respondent's

damages include attorney fees and costs, the attorney fees and costs are also doubled. Therefore, the

attorney fees and costs are assessed in the amount of **$45,780.00**  ($22,890 x 2 = $45,780.00.)  This

is the lodestar amount.

K.    The Court denies attorneys' fees expended in litigating the issue of attorneys' fees.

L.    Respondent also seeks prejudgment interest on the attorney fees and costs. The Court

awards prejudgment interest on the attorney fees and costs on the lodestar amount from June 15,

2004. Inacio v. State Farm, 550 So.2d 92 (Fla. 1st DCA 1989). The attorney fees and costs became

a liquidated amount at the date the final judgment was entered in favor of Respondent on June 15,

2004. **Therefore prejudgment interest through November 15, 2004 =$1,335.25.**

M.    Because Respondent's counsel was employed on a contingency basis and the court

'"must consider' the application of a multiplier where the prevailing party's counsel is employed on

a contingency basis." Carmichael v. State Comprehensive Health Ass'n, 717 So.2d 174, 174 (Fla.

4th DCA 1998).

N.    The case at hand falls into public policy enforcement case, category I, as delineated

in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990). Quanstrom, *supra*.

> The first category relates to public policy enforcement cases, which are those cases
> which led to the development of the lodestar approach. These cases generally present
> discrimination, environmental, and consumer protection issues. As noted, the primary
> purpose of these fee-authorizing statutes is to encourage individual citizens to bring
> civil actions that enforce statutory policy.

Public enforcement of the Florida Lemon Law Act requires the consumer's attorney to act as a

private Attorney General. Protection of the public depends upon private enforcement of the Florida

Motor Vehicle Sales Warranties. Private attorneys must be appropriately compensated for

representation of consumers who have prevailed at the lemon law arbitration, to insure the arbitration

awards are enforced and to uphold the stated legislative intent of the Lemon Law Act. §681.101, Fla.

Stat. Since this is a public policy enforcement case, the court has taken into consideration the risk

of nonpayment, the relevant market requirements and the Respondent's attorney's inability to

mitigate the risk of nonpayment, the skill of the attorney, and the preclusion of accepting other

employment because of this representation. In public policy enforcement cases, a contingency risk

multiplier may be applicable where the movant establishes that without the adjustment for risk,

substantial difficulties would be faced in finding counsel in the local or relevant market. Boardman

Petroleum, Inc. v. Tropic Tint of Jupiter, Inc., 668 So.2d 308, 311 (Fla. 4th DCA 1996) Further,

pursuant to Chrysler Corp.v. Weinstein, 522 So.2d 894 (Fla. 3rd DCA 1988), a lemon law case, an

Page 4 of 5

enhancer is appropriate even where it appears "more likely than not at the outset of litigation that claimant would succeed on his claims."

O.    Therefore, the Court awards a multiplier of **2.5**, which when multiplied by the lodestar of **$47,115.25** equals **$117,788.12** + **$45.05** for a total of **$117,833.17**.

ORDERED AND ADJUDGED

1.    Respondent's Motion for Fees and Costs be, and the same hereby is, granted.

2.    The Respondent, JOSEPH CHIARAMONTE, 3850 Galt Ocean Drive, Apartment 1511, Fort Lauderdale, FL 33308, does have and recover from GENERAL MOTORS CORPORATION, 300 Renaissance Center, M/C 482-C14-C66, Detroit, Michigan 48265-3000, reasonable attorneys' fees, interest and costs in the sum of **$117,833.17** (One hundred seventeen, eight hundred thirty-three thousand dollars and seventeen cents)for which sum let execution issue forthwith. Until paid in full, interest hereon shall accumulate at the rate of 7% per annum from the date of the first Final Judgment or November 15, 2004.

DONE AND ORDERED in Chambers, at Fort Lauderdale, Broward County, Florida, this _____ day of December, 2004.

J. LEONARD FLEET

DEC 0 6 2004

_____
J. LEONARD FLEET, Circuit Court Judge

A TRUE COPY

Copies furnished:

Rebecca J. Covey, Esquire
1318 Southeast 1ᵉ Avenue
Fort Lauderdale, FL 33316
(Preparer)

Charles P. Mitchell, Esquire
Rumberger, Kirk & Caldwell
Post Office Box 1873
Orlando, FL 32802-1873