UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Motors Liquidation Company., *et al.*, | ) | Case No. 09-50026(REG) |
| f/k/a General Motors Corp., *et al.* | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |

_____)

DECISION ON NEW GM'S MOTION TO
ENFORCE SECTION 363 ORDER WITH
RESPECT TO PRODUCT LIABILITY CLAIM OF
ESTATE OF BEVERLY DEUTSCH

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP
Counsel for General Motors, LLC
767 Fifth Avenue
New York, New York 10153
By:    Stephen Karotkin, Esq. (argued)
       Harvey R. Miller, Esq.
       Joseph H. Smolinsky, Esq.

BARRY NOVACK
Counsel for Plaintiff Sanford Deutsch
8383 Wilshire Blvd. Suite 830
Beverly Hills, California 90211-2407
By:    Barry Novack, Esq. (argued)

NORRIS MCLAUGHLIN & MARCUS, PA
Local Counsel for Sanford Deutsch
875 Third Ave., 8th Floor
New York, NY 10022
By:    Melissa Peña, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the chapter 11 case of Motors Liquidation Company (formerly, General Motors Corp., and referred to here as "**Old GM**") and its affiliates, General Motors LLC ("**New GM**") seeks a determination from this Court that New GM did not assume the liabilities associated with a tort action in which a car accident took place before the date ("**Closing Date**") upon which New GM acquired the business of Old GM, but the accident victim died thereafter.[1] The issue turns on the construction of the documents under which New GM agreed to assume liabilities from Old GM—which provided that New GM would assume liabilities relating to "accidents or incidents" "first occurring on or after the Closing Date"—and in that connection, whether a liability of this character is or is not one of the types of liabilities that New GM thereby agreed to assume.

Upon consideration of those documents, the Court concludes that the liability in question was not assumed by New GM. However, if a proof of claim was not previously filed against Old GM with respect to the accident in question, the Court will permit one to be filed within 30 days of the entry of the order implementing this Decision, without prejudice to rights to appeal this determination.

The Court's Findings of Fact and Conclusions of Law in connection with this determination follow.

---

[1]    Technically speaking, the motion is denominated as one to Enforce the 363 Sale Order, which protects New GM from liabilities it did not assume. The Court here speaks to the motion's substance.

1

<u>Findings of Fact</u>

In June 2007, Beverly Deutsch was severely injured in an accident while she was driving a 2006 Cadillac sedan. She survived the car accident, but in August 2009, she died from the injuries that she previously had sustained.[2]

In January 2010, the Estate of Beverly Deutsch, the Heirs of Beverly Deutsch, and Sanford Deutsch (collectively "**Deutsch Estate**") filed a Third Amended Complaint against New GM (and others) in a state court lawsuit in California (the "**Deutsch Estate Action**"), claiming damages arising from the accident, the injuries which Beverly sustained, and her wrongful death. The current complaint superseded the original complaint in the Deutsch Estate Action, which was filed in April 2008, before the filing of Old GM's chapter 11 case.

In July 2009, this Court entered its order (the "**363 Sale Order**") approving the sale of Old GM's assets, under section 363 of the Bankruptcy Code, to the entity now known as New GM. The 363 Sale Order, among other things, approved an agreement that was called an Amended and Restated Master Sale and Purchase Agreement (the "**MSPA**").

The MSPA detailed which liabilities would be assumed by New GM, and provided that all other liabilities would be retained by Old GM. The MSPA provided, in its § 2.3(a)(ix), that New GM would not assume any claims with respect to product liabilities (as such term was defined in the MSPA, "**Product Liability Claims**") of the Debtors except those that "arise directly out of death, personal injury or other injury to Persons or damage to property caused by *accidents or incidents* first occurring on or after

---

[2]     There is no contention by either side that her death resulted from anything other than the earlier accident.

2

the Closing Date [July 10, 2009] … "[3]  Thus, those Product Liability Claims that arose from "accidents or incidents" occurring before July 10, 2009 would not be assumed by New GM, but claims arising from "accidents or incidents" occurring on or after July 10, 2009 would be.

Language in an earlier version of the MSPA differed somewhat from its final language, as approved by the Court.  Before its amendment, the MSPA provided for New GM to assume liabilities except those caused by "accidents, incidents*, or other distinct and discrete occurrence*s."[4]

The 363 Sale Order provides that "[t]his Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order" and the MSPA, including "to protect the Purchaser [New GM] against any of the Retained Liabilities or the assertion of any … claim … of any kind or nature whatsoever, against the Purchased Assets."[5]

<u>Discussion</u>

The issue here is one of contractual construction.  As used in the MSPA, when defining the liabilities that New GM would assume, what do the words "accidents or incidents," that appear before "first occurring on or after the Closing Date," mean?  It is undisputed that the accident that caused Beverly Deutsch's death took place in June 2007, more than two years prior to the closing.  But her death took place after the closing.  New GM argues that Beverly Deutsch's injuries arose from an "accident" and an "incident"

---

[3]    Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment) (emphasis added).

[4]    Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (prior to modification by First Amendment) (emphasis added) (typographical error corrected).

[5]    363 Sale Order ¶ 71.

that took place in 2007, and that her death did likewise.  But the Deutsch Estate argues

that while the "accident" took place in 2007, her death was a separate "incident"—and

that the latter took place only in August 2009, after the closing of the sale to New GM

had taken place.

Ultimately, while the Court respects the skill and fervor with which the point was

argued, it cannot agree with the Deutsch Estate.  Beverly Deutsch's death in 2009 was the

*consequence* of an event that took place in 2007, which undisputedly, was an accident

and which also was an incident, which is a broader word, but fundamentally of a similar

type.  The resulting death in 2009 was not, however, an "incident[] first occurring on or

after the Closing Date," as that term was used in the MSPA.

As usual, the Court starts with textual analysis.  The key provision of the MSPA,

§ 2.3(a)(ix), set forth the extent to which Product Liability Claims were assumed by New

GM.  Under that provision, New GM assumed:

> (ix) all Liabilities to third parties for death, personal
> injury, or other injury to Persons or damage to
> property caused by motor vehicles designed for
> operation on public roadways or by the component
> parts of such motor vehicles and, in each case,
> manufactured, sold or delivered by Sellers
> (collectively, "Product Liabilities"), *which arise
> directly out of death, personal injury or other injury
> to Persons or damage to property caused by
> accidents or incidents first occurring on or after the
> Closing Date and arising from such motor vehicles'
> operation or performance* (for avoidance of doubt,
> Purchaser shall not assume or become liable to pay,
> perform or discharge, any Liability arising or
> contended to arise by reason of exposure to
> materials utilized in the assembly or fabrication of
> motor vehicles manufactured by Sellers and
> delivered prior to the Closing Date, including

4

asbestos, silicates or fluids, regardless of when such
alleged exposure occurs).[6]

The key words, of course, are "accidents" and "incidents," neither of which are defined

anywhere else in the MSPA, and whose interpretation, accordingly, must turn on their

common meaning and any understandings expressed by one side to the other in the

course of contractual negotiations.  Also important are the words "first occurring on or

after the Closing Date," which modify the words "accidents" and "incidents," and shed

light on the former words' meaning.

      The word "accidents," of course, is not ambiguous.  "Accidents" has sufficiently

clear meaning on its own, and in any event its interpretation is not subject to debate, as

both sides agree that Beverly Deutsch's death resulted from an accident that took place in

2007, at a time when, if "accidents" were the only controlling word, liability for the

resulting death would not be assumed by New GM.  The ambiguity, if any, is instead in

the word "incidents," which is a word that by its nature is more inclusive and less precise.

      But while "incidents" may be deemed to be somewhat ambiguous, neither side

asked for an evidentiary hearing to put forward parol evidence as to its meaning.  Though

it is undisputed that "incidents" remained in the MSPA after additional words "or other

distinct and discrete occurrences," were deleted, neither side was able, or chose, to

explain, by evidence, why the latter words were dropped, and what, if any relevance the

dropping of the additional words might have as to the meaning of the word "incidents"

that remained.  The words "or other distinct and discrete occurrences" could have been

deleted as redundant, to narrow the universe of claims that were assumed, or for some

---

[6]      Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment)
(emphasis added).

other reason.  Ultimately, the Court is unable to derive sufficient indication of the parties'

intent as to the significance, if any, of deleting the extra words.

So the Court is left with the task of deriving the meaning of the remaining words

"accidents or incidents" from their ordinary meaning, the words that surround them,

canons of construction, and the Court's understanding when it approved the 363 Sale as

to how the MSPA would deal with prepetition claims against Old GM.  Ultimately these

considerations, particularly in the aggregate, point in a single direction—that a death

resulting from an earlier "accident[] or incident[]" was not an "incident[] first occurring"

after the closing.

Starting first with ordinary meaning, definitions of "incident" from multiple

sources are quite similar.  They include, as relevant here,[7] "an occurrence of an action or

situation felt as a separate unit of experience";[8] "an occurrence of an action or situation

that is a separate unit of experience";[9] "[a] discrete occurrence or happening";[10]

"something that happens, especially a single event";[11] "a definite and separate

occurrence; an event";[12] or, as proffered by the Deutsch Estate, "[a] separate and definite

occurrence:  EVENT."[13]  In ways that vary only in immaterial respects, all of the

---

[7]    The word "incident" has other meanings, in other contexts, which most commonly follow
definitions of the type quoted here.  Particularly since the definition proffered by the Deutsch
Estate is so similar to the others, the Court does not understand either side to contend that
definitions of "incident" in other contexts are relevant here.

[8]    Webster's Third New International Dictionary Unabridged (1993) at 1142.

[9]    Merriam-Webster's Collegiate Dictionary (11th ed. 2003) at 629.

[10]   Black's Law Dictionary (8th ed. 2004) at 777.

[11]   Encarta Dictionary:  English (North America),
http://encarta.msn.com/encnet/features/dictionary/dictionaryhome.aspx (query word "incident" in
search field).

[12]   American Heritage College Dictionary (4th ed. 2004) at 700.

[13]   Deutsch Estate Reply Br. at 4 (quoting Webster's II New College Dictionary (1999) at 559).

definitions articulate the concept of a separate and identifiable event.  And, and of course, from words that follow, "arising from such motor vehicles' operation or performance," the event must be understood to relate to be one that that involves a motor vehicle. Accidents, explosions or fires all fit comfortably within that description.  Deaths or other consequences that result from earlier accidents, explosions or fires technically might fit as well, but such a reading is much less natural and much more strained.

Turning next to words that surround the words "accidents or incidents," these words provide an interpretive aid to the words they modify.  The word "incident[]" is followed by the words "first occurring."  In addition to defining the relevant time at which the incident must take place (*i.e.*, after the closing), that clause inserts the word "first" before "occurring."  That suggests, rather strongly, that it was envisioned that some types of incidents could take place over time or have separate sub-occurrences, or that one incident might relate to an earlier incident, with the earliest incident being the one that matters.  Otherwise it would be sufficient to simply say "occurring," without adding the word "first."  This too suggests that the consequences of an incident should not be regarded as a separate incident, or that even if they are, the incident that first occurs is the one that controls.

Canons of construction tend to cut in opposite directions, though on balance they favor New GM.  The Deutsch Estate appropriately points to the canon of construction against "mere surplusage," which requires different words of a contract or statute to be construed in a fashion that gives them separate meanings, so that no word is superfluous.[14]  The Court would not go as far as to say that the words "accident" and

---

[14]     *See, e.g., Sprietsman v. Mercury Marine*, 537 U.S. 51, 63 (2003) (a statute's preemption clause, which applied to ''a [state or local] law or regulation'' did not preempt common law tort claims,

"incident" cannot *ever* cover the same thing—or, putting it another way, that they *always* must be different.[15]  But the Court agrees with the Deutsch Estate that they cannot *always* mean the same thing.  "Incidents" must have been put there for a reason, and should be construed to add something in at least some circumstances.

But how different the two words "accidents" and "incidents" can properly be understood to be —and in particular, whether "incidents" can be deemed to separately exist[16] when they are a foreseeable consequence, or are the resulting injury, from the accidents or incidents that cause them—is quite a different matter.  A second canon of construction, "*noscitur a sociis,*" provides that "words grouped in a list should be given related meaning."[17]  Colloquially, "a word is known by the company it keeps …"[18]  For instance, in *Dole*, in interpreting a phrase of the Paper Work Reduction Act, the Supreme Court invoked *noscitur a sociis*  to hold that words in a list, while meaning different things, should nevertheless be read to place limits on how broadly some of those words might be construed.  The *Dole* court stated:

> [t]hat a more limited reading of the phrase
> "reporting and recordkeeping requirements" was
> intended derives some further support from the
> words surrounding it.  The traditional canon of

---

because if "law" were read that broadly, it might also be interpreted to include regulations, which would render the express reference to "regulation" in the preemption clause superfluous).  *See also* Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) ("***Alloyd***") (in statutory construction context, "the Court will avoid a reading which renders some words altogether redundant.").

[15]    As previously noted, "incident" is a word that is inherently broader than "accident."  Every accident could fairly be described as an incident.  But not every incident could fairly be described as an accident.

[16]    It is important to note that to prevail on this motion, the Deutsch Estate must show that the alleged "incident" that is the resulting death was a wholly separate "incident."  Even if the death took place after the Closing Date, if the death was an incident that was part of an earlier incident, it could not be said to be "*first* occurring" after the Closing Date.

[17]    *Dole v. United Steelworkers of America*, 494 U.S. 26, 36 (1990).

[18]    *Alloyd,* 513 U.S. at 575 (applying *noscitur a sociis* in context of statutory interpretation).

8

> construction, *noscitur a sociis*, dictates that words
> grouped in a list should be given related meaning.[19]

Here application of the canon against surplusage makes clear, as the Deutsch

Estate argues, that "incidents" must at least sometimes mean something different than

"accidents"—but application of that canon does not tell us when and how.  The second

canon, *noscitur a sociis*, does that, and effectively trumps the doctrine of surplusage

because it tells us that "accidents" and "incidents" should be given related meaning.

The Deutsch Estate argues that the Court should construe a death resulting from

an earlier "accident" or "incident" to be a separate and new "incident" that took place at a

later time.  But ultimately, the Court concludes that it cannot do so.  While it is easy to

conclude that "accidents" and "incidents," as used in the MSPA, will not necessarily be

the same in all cases, they must still be somewhat similar.  "Incidents" cannot be

construed so broadly as to cover what are simply the consequences of earlier "accidents"

or other "incidents."

Applying *noscitur a sociis* in conjunction with the canon against "mere

surplusage" tells us that the two words "accidents" and "incidents" must be understood as

having separate meanings in at least some cases, but that these meanings should be

conceptually related.  At oral argument, the Court asked counsel for New GM an

important question:  if an "incident" would not necessarily be an "accident," what would

it be?  What would it cover?  Counsel for New GM came back with a crisp and very

---

[19]     *Dole*, at 36. (internal quotations and citations omitted) (emphasis in original).  *See also Massachusetts v. Morash*, 490 U.S. 107, 114-15 (1989) (quoting *Schreiber v. Burlington Northern Inc.*, 472 U.S. 1, 8 (1985)); *Alloyd*, 513 U.S. at 575 ("This rule we rely upon to avoid ascribing to one word a *meaning so broad that it is inconsistent with its accompanying words*, thus giving unintended breadth to the Acts of Congress." (emphasis added) (internal quotation marks deleted)).

logical answer; he said that "incident" would cover a situation where a car caught fire or had blown up, or some problem had arisen by means other than a collision.[20]

Conversely, the interpretation for which the Deutsch Estate argues—that "incidents" refers to *consequences* of earlier accidents or incidents—is itself violative or potentially violative, of the two interpretive canons discussed above.  It is violative of *noscitur a sociis*, since a death or other particular injury is by its nature distinct from the circumstance—collision, explosion, fire, or other accident or incident—that causes the resulting injury in the first place.  The Deutsch Estate interpretation also tends to run counter to the doctrine against mere surplusage upon which the Deutsch Estate otherwise relies, making meaningless the words "first occurring" which follow the words "accidents or incidents," in any cases where death or other particular injury is the consequence of an explosion, fire, or other non-collision incident that causes the resulting injury.

The simple interpretation, and the one this Court ultimately provides, is that "incidents," while covering more than just "accidents," are similar; they relate to fires, explosions, or other definite events that *cause* injuries and *result* in the right to sue, as contrasted to describing the *consequences* of those earlier events, or that relate to the resulting damages.

---

[20]    Counsel for New GM answered:

> Now, what's the difference between an accident or an incident, if it were relevant with respect to product liability claims? And I think there's an easy answer. You could have a car accident. Or you could have a car catching on fire; that's not necessarily an accident; that's an incident. Or a car could blow up with someone in the car. Or something else could happen; some other malfunction could cause a fire or injury to someone, not an accident with another vehicle necessarily; or an accident where you ran off the road. So I think that's easily explained.

Transcript, at 31.

10

Finally, this Court's earlier understanding of the purposes of New GM's willingness to assume certain liabilities of Old GM is consistent with the Court's conclusion at this time as well.  When the Court approved GM's 363 Sale, this Court noted, in its opinion, that New GM had chosen to broaden its assumption of product liabilities.[21]  The MSPA was amended to provide for the assumption of liabilities not just for product liability claims for motor vehicles and parts delivered after the Closing Date (as in the original formulation), but also, for "all product liability claims arising from *accidents or other discrete incidents* arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased."[22]  As reflected in the Court's decision at the time, the Court understood that New GM was undertaking to assume the liabilities for "accidents or other discrete incidents" that hadn't yet taken place.

Finally, the Deutsch Estate notes another interpretative canon, that ambiguities in a contract must be read against the drafter.[23]  If the matter were closer, the Court might consider doing so.[24] But the language in question is not

---

[21]  *See In Re General Motors Corp.*, 407 B.R. 463, 481-82 (Bankr. S.D.N.Y. 2009). *appeal dismissed and aff'd*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).

[22]  *Id.* (emphasis added and original emphasis deleted)

[23]  *See Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (N.Y. 1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language"); *Cf. Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 85 (2d Cir. 1983) ("Since the insurer is assumed to have control over drafting the contract provisions, it is fair to hold it responsible for ambiguous terms, and accord the insured the benefit of uncertainties which the insurer could have, but failed to clarify").

[24]  In that event, the Court would then have to consider the specifics of the negotiating environment at the time.  The Deutsch Estate was of course not a party to those negotiations at all.  But there was little in the record at the time of the 363 Sale, and there is nothing in the record now, as to who, if anybody, had control over the drafting of any MSPA terms.

11

that ambiguous, and the relevant considerations, fairly decisively, all tip in the

same direction.  While it cannot be said that the Deutsch Estate's position is a

frivolous one, the issues are not close enough to require reading the language

against the drafter.

Conclusion

The Deutsch Estate's interpretation of "accident or incident" is not

supportable.  Thus, the Debtor's motion is granted, and the Deutsch Estate may

not pursue this claim against New GM.[25]  New GM is to settle an order consistent

with this opinion.  The time to appeal from this determination will run from the

time of the resulting order, and not from the date of filing of this Decision.

Dated: New York, New York
      January **5**, 2011

          **_s/Robert E. Gerber_**
          United States Bankruptcy Judge

---

[25]    Under the circumstances, however, since the Deutsch Estate's issues were fairly debatable and plainly raised in good faith, the Court will provide the Deutsch Estate with 30 days from the resulting order to file a claim against Old GM if it has not already done so, without prejudice to its underlying position and any rights of appeal.