Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026(REG)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, et al.

9        f/k/a General Motors Corporation, et al.,

10

11          Debtors.

12

13  - - - - - - - - - - - - - - - - - - - -x

14

15          United States Bankruptcy Court

16          One Bowling Green

17          New York, New York

18

19          December 2, 2010

20          9:52 AM

21

22

23  B E F O R E:

24  HON. ROBERT E. GERBER

25  U.S. BANKRUPTCY JUDGE

Page 2

1    HEARING re Status Conference re: Disclosure

2

3    HEARING re Debtors' Ninety-Seventh Omnibus Objection to Claims

4    (No Liability GMAC Debt Claims)

5

6    HEARING re Debtors' Ninety-eighth Omnibus Objection to Claims

7    (Incorrectly Classified Claims)

8

9    HEARING re Debtors' 10erd Omnibus Objection to Claims (Welfare

10   Benefits Claims of Retired and Former Salaried and Executive

11   Employees)

12

13   HEARING re Motion for Relief from Stay filed by John F.

14   Townsend III on behalf of Timothy Bynum

15

16   HEARING re Motion for Relief from Stay on behalf of Samuel

17   Barrow

18

19   HEARING re Motion for Relief from Stay, Tracy Woody

20

21   HEARING re Motion of Debtors Authorizing Estimation of Debtors'

22   Aggregate Liability for Asbestos Personal Injury Claims and

23   Establishing Schedule for Estimation Proceeding

24

25   Transcribed by:  Lisa Bar-Leib

Page 3

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES LLP

3         Attorneys for the Debtors and Debtors-in-Possession

4         767 Fifth Avenue

5         New York, NY 10153

6

7    BY:  STEPHEN KAROTKIN, ESQ.

8         JOSEPH H. SMOLINSKY, ESQ.

9

10

11   KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for the Official Committee of Unsecured

13         Creditors

14        1177 Avenue of the Americas

15        New York, NY 10036

16

17   BY:  THOMAS MOERS MAYER, ESQ.

18        PHILLIP BENTLEY, ESQ.

19        JENNIFER SHARRET, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

Page 4

1    CAPLIN & DRYSDALE

2          Attorneys for Official Committee of Unsecured Creditors

3           Holding Asbestos-Related Claims

4          One Thomas Circle, NW

5          Suite 1100

6          Washington, DC 20005

7

8    BY:  TREVOR W. SWETT, ESQ.

9

10    U.S. DEPARTMENT OF JUSTICE

11          United States Attorney's Office

12          Southern District of New York

13          86 Chambers Street

14          New York, NY 10007

15

16    BY:  DAVID S. JONES, DEPUTY CHIEF, CIVIL DIVISION

17

18    UNITED STATES OFFICE OF TRUSTEE

19          Attorneys for U.S. Trustee

20          New York, NY 10036

21

22    BY:  BRIAN MASOMOTO, ESQ.

23

24

25

Page 5

```
 1    GREENBERG TRAURIG, LLP

 2         Attorneys for Certain Noteholders of General Motors Nova

 3          Scotia Finance Company

 4         MetLife Building

 5         200 Park Avenue

 6         New York, NY 10166

 7

 8    BY:  GARY D. TICOLL, ESQ.

 9

10    STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

11         Attorneys for Future Claims Representative

12         2323 Bryan Street

13         Suite 2200

14         Dallas, TX 75201

15

16    BY:  SANDER L. ESSERMAN, ESQ.

17

18    STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

19         Attorneys for Dean Trafelet, the Future Claims

20              Representative

21         2323 Bryan Street

22         Suite 2200

23         Dallas, TX 75201

24

25    BY:  JACOB L. NEWTON, ESQ. (TELEPHONICALLY)
```

Page 6

1    CALIFORNIA DEPARTMENT OF JUSTICE

2          For the State of California

3          300 South Spring Street

4          Suite 1702

5          Los Angeles, CA 90013

6

7    BY:  OLIVIA W. KARLIN, DAG (TELEPHONICALLY)

8

9    CUYLER BURK, P.C.

10         Attorneys for Creditor, All State Insurance Company

11         Parsippany Corporate Center

12         Third Floor

13         Four Century Drive

14         Parsippany, NJ 07054

15

16   BY:  ANDREW K. CRAIG, ESQ.

17         (TELEPHONICALLY)

18

19   ROPERS, MAJESKI, KOHN & BENTLEY

20         Attorneys for Creditor, Remy International, Inc.

21         201 Spear Street

22         Suite 1000

23         San Francisco, CA 94105

24

25   BY:  N. KATHLEEN STRICKLAND, ESQ. (TELEPHONICALLY)

Page 7

1    VORYS, SATER, SEYMOUR & PEASE LLP

2         Attorneys for Goodyear

3         1909 K Street NW

4         Suite 900

5         Washington, DC  20006

6

7    BY:  TIFFANY S. COBB, ESQ.

8         NINA WEBB-LAWTON, ESQ.

9         (TELEPHONICALLY)

10

11

12    BATES WHITE

13         Attorneys for Creditor's Committee

14         1300 Eye Street NW

15         Suite 600

16         Washington, D.C. 20005

17

18    BY:  RACHEL GRINBERG, ESQ.

19         (TELEPHONICALLY)

20

21

22

23

24

25

Page 8

1    WHITE & WILLIAMS LLP

2         Attorneys for Flextronics, et al

3         One Penn Plaza

4         250 W. 34th, Suite 4110

5         New York, NY  10119

6

7    BY:  KAREL KARPE, ESQ.

8         (TELEPHONICALLY)

9

10   CADWALADER WICKERSHAM & TAFT LLP

11        Attorneys for U.S. Treasury

12        One World Financial Center

13        New York, NY  10281

14

15   BY:  DOUGLAS MINTZ, ESQ.

16        (TELEPHONICALLY)

17

18   BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ

19        Attorneys for Serra Chevrolet

20        920 Massachusetts Avenue, N.W.

21        Suite 900

22        Washington, DC  20001

23

24   BY:  MAX A. MOSELEY, ESQ.

25        (TELEPHONICALLY)

Page 9

```
 1    HONIGMAN MILLER SCHWARTZ AND COHN LLP

 2         Attorneys for General Motors, LLC

 3         2290 First National Building

 4         660 Woodward Avenue

 5         Detroit, MI  48226

 6

 7    BY:  JOSEPH R. SGROI, ESQ.

 8         (TELEPHONICALLY)

 9

10    JUSTIN BRASS, JEFFERIES & COMPANY

11         (TELEPONICALLY)

12

13    ROBERT CHAMBERS, AKANTHOS CAPITAL MANAGEMENT

14         (TELEPHONICALLY)

15

16    MICHAEL FABIANO, GSO CAPITAL PARTNERS

17         (TELEPHONICALLY)

18

19    JORDAN FISHER, PENTWATER CAPITAL MANAGEMENT

20         (TELEPHONICALLY)

21

22    CONRAD FLAKE, JPMORGAN CHASE & CO.

23         (TELEPHONICALLY)

24

25
```

Page 10

1    JUSTIN GARD, CRT CAPITAL GROUP, LLC

2         (TELEPHONICALLY)

3

4    ERIC GELLER, CITIGROUP

5         (TELEPHONICALLY)

6

7    ANTHONY KIM, DEBTWIRE

8         (TELEPHONICALLY)

9

10   PETER MULLEN, LONGACRE MANAGEMENT FUND

11        (TELEPHONICALLY)

12

13   JOHN NOVAK, BARCLAYS CAPITAL, INC.

14        (TELEPHONICALLY)

15

16   BYUNG S. PARK, BANK OF AMERICA

17        (TELEPHONICALLY)

18

19   SHAUN WONG, CREDIT SUISSE

20        (TELEPHONICALLY)

21

22   TRACY WOODY, IN PRO PER/PRO SE

23        (TELEPHONICALLY)

24

25

Page 11

1   DANIEL YOUSIF, OCH-ZIFF

2      (TELEPHONICALLY)

3

4   ANDREW ANDERSON, IN PROPRIA PERSONA

5      (TELEPHONICALLY)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 12 of 58

Page 12

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Have seats, please.  All right, GM Motors

 3    Liquidation.  I'll hear first about where we stand on

 4    disclosure statement, then I'll deal with the asbestos matters.

 5    I'll deal with the Tracy Woody matter at the end.  Mr.

 6    Karotkin?

 7            MR. KAROTKIN:  Good morning, Your Honor.  Stephen

 8    Karotkin, Weil Gotshal & Manges, for the debtors.

 9            I'm pleased to report and I think that Mr. Jones and

10    Mr. Mayer will confirm this, that an agreement has been reached

11    among the U.S. Treasury, the creditors' committee, and the

12    debtors with respect to all outstanding issues which were

13    preventing the approval of the disclosure statement, and we

14    expect to finalize all the wording in both the revised plan and

15    disclosure statement in the next day or so, circulate a revised

16    draft to the sixty people who filed formal objections, as you

17    had directed us a month or so ago.

18            And what we would ask the Court to do is to schedule

19    a hearing next week to the extent that any issues are raised by

20    those sixty people, and to the extent there are any issues,

21    they can be addressed at that time, and we would expect, Your

22    Honor, at that point, to present to you an order approving the

23    disclosure statement.

24            THE COURT:  Well, obviously I'm pleased to hear the

25    progress you made.  In terms of giving you a hearing next week,
```

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 13 of 58

Page 13

1    because other matters were put off and sandwiched in to deal

2    with the needs of this case, there isn't much room in the inn.

3    I may be able to give you 8:00 o'clock in the morning on

4    Wednesday, the 8th before I get on a plane.

5               MR. KAROTKIN:  That's fine.

6               THE COURT:  I'll need to hear from you or one of your

7    staff as quickly as possible to ascertain whether I need to use

8    that time or not.

9               MR. KAROTKIN:  Okay.  It would be our expectation,

10   Your Honor, that the document would be finalized at the latest

11   tomorrow and would go out either by e-mail or Federal Express

12   to those parties.

13              THE COURT:  All right.  I'll also have to let you

14   know whether 8:00 o'clock works.  I don't know whether I can

15   get other courtroom staff in that early.  I'm not the problem,

16   but I can't proceed without an ECRO operator and without

17   support by the Marshal Service.  Let me know if we really need

18   that time as soon as you can.

19              MR. KAROTKIN:  I guess the only issue, Your Honor, is

20   we won't know immediately whether those sixty people have

21   issues.

22              THE COURT:  Well, these are matters upon which I've

23   already ruled, and the only question is your implementation of

24   my rulings --

25              MR. KAROTKIN:  That is correct.

Page 14

1           THE COURT:  -- am I correct?

2           MR. KAROTKIN:  That is correct.  I'm not really

3    expecting anything substantive, I just don't know in terms of

4    if some issue comes up and we need to see you, that's the only

5    issue.

6           THE COURT:  All right.  Just a minute, please.

7    (Pause)

8           THE COURT:  All right.  Continue with your next

9    matter while I'm dealing with some of this, Mr. Karotkin.

10          MR. KAROTKIN:  Mr. Smolinsky will deal with that.

11          THE COURT:  Okay.  Oh, wait, Mr. Mayer, are you

12   rising for something?

13          MR. MAYER:  Well, as part of the status report and

14   disclosure statement, I have an understanding with the debtors

15   and the government that we would read --

16          THE COURT:  I'm having trouble hearing you, Mr.

17   Mayer.

18          MR. MAYER:  I'm sorry.  If we're still on the

19   disclosure statement, Your Honor, part of my agreement with the

20   debtors and with the Treasury was that we would read into the

21   record the essential elements of business points that had been

22   reached so that we put those to bed and they are done.

23          THE COURT:  Sure, there's a good time to do it.

24   Wait.  Stand by for a minute.

25          MR. MAYER:  Certainly.

Page 15

1    (Pause)

2            THE COURT:  I'll give you 6:00 o'clock p.m. on

3    Tuesday, the 7th, Mr. Karotkin.

4            MR. KAROTKIN:  Thank you, sir.

5            THE COURT:  Go ahead, Mr. Mayer.

6            MR. MAYER:  We won't take long, Your Honor, and I'm

7    reading from a text which has been reviewed by both counsel to

8    Treasury and counsel to the debtors.

9            Number one, with respect to any recoveries from the

10   term loan litigation, which will be in the avoidance action

11   trust, recoveries from the term loan litigation will be paid to

12   Treasury until Treasury has received an amount equal to all

13   fees and expenses, allocable to the term loan litigation, which

14   were paid from the proceeds of Treasury's DIP wind-down loan

15   during the Chapter 11 case, or that will be paid from the

16   proceeds of the Treasury's DIP wind-down loan post-effective

17   date.

18           The amount will include all professional fees and

19   disbursements incurred by counsel for the estate, including

20   Weil Gotshal, Kramer Levin and Butzel Long as plaintiff and all

21   professional fees incurred by counsel to JPMorgan Bank, agent

22   as defendant, including Kelley Drye and Morgan Lewis or any

23   other defendants that the estate is required to pay, if any,

24   and the fees and disbursements --

25           THE COURT:  Just a minute, please, Mr. Mayer.

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 16 of 58

Page 16

1    CourtCall, put everybody on the phone on mute, and give me an

2    acknowledgement that you've done so.

3    (Pause)

4            THE COURT:  Well, I don't have the acknowledgement,

5    but continue, Mr. Mayer.

6            COURT CALL OPERATOR:  Your Honor, everyone is on

7    mute.

8            THE COURT:  All right.

9            MR. MAYER:  All professional fees incurred by counsel

10   to JPMorgan Bank, agent as defendant, including Kelley Drye and

11   Morgan Lewis, or any other defendants that the estate is

12   required to pay, if any, and the fees and disbursements of any

13   expert retained by any of them.

14           With apologies for departing slightly from the

15   script, but as a summary, if there's an expense Treasury paid

16   in connection with this litigation, it comes back from the

17   proceeds of the litigation, if any.  That's basically the deal.

18           THE COURT:  All right.  Mr. Jones, do you have any

19   problems with what Mr. Mayer said?

20           MR. JONES:  No, Mr. Mayer has accurately described

21   the agreement on this point.

22           THE COURT:  All right.  Mr. Karotkin, I don't know if

23   you have skin in this game, but I take it you have no problems

24   either.

25           MR. KAROTKIN:  No, sir.

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 17 of 58

Page 17

1           THE COURT:  Okay.  That's fine, Mr. Mayer.

2           MR. MAYER:  Thank you, Your Honor.  Second, with

3      respect to the GUC Trust Budget, that's General Unsecured

4      Creditors' Trust, and the avoidance action trust budget,

5      Treasury has agreed to a nine million dollar budget for the GUC

6      Trust's post-effective date fees and disbursements of GUC Trust

7      general counsel.  Any legal fees and disbursements in excess of

8      the nine million dollar budget would not be funded by proceeds

9      of the DIP credit agreement or wind-down loan agreement, and

10     absent any other source of funds, would be borne either by

11     counsel personally, or by the GUC Trust through the sale of

12     stock or warrants to raise funds.

13           Treasury confirms that the nine million dollars is

14     not law firm specific.  Treasury does not care which firm

15     represents the trust.

16           THE COURT:  Mr. Jones?

17           MR. JONES:  Also correct, Your Honor.

18           THE COURT:  Mr. Karotkin?

19           MR. KAROTKIN:  Yes, sir.

20           MR. MAYER:  Treasury has further agreed to the budget

21     for Wilmington Trust as GUC Trust administrator, and no further

22     back-up from Wilmington is required.  Treasury has agreed to

23     the budget for FTI as GUC Trust monitor.  No further back-up

24     from FTI is required.

25           Treasury has agreed to the budget submitted by Butzel

Page 18

1   Long as special counsel to both trusts in connection with the

2   term loan litigation and the Nova Scotia litigation, no further

3   back-up from Butzel Long is required.

4           THE COURT:  Gentlemen?

5           MR. JONES:  David Jones again, Your Honor, from the

6   U.S. Attorney's office, also correct.

7           MR. KAROTKIN:  I agree, sir.

8           THE COURT:  Okay.

9           MR. MAYER:  With respect to asbestos estimation,

10  Treasury has agreed to a four million dollar budget to cover

11  fees and disbursements for the estimation of asbestos

12  liabilities incurred by counsel for the debtors, the official

13  committee of unsecured creditors, the asbestos creditors'

14  committee, and the futures representative, and the experts

15  retained by each for the time period commencing November 1,

16  2010 through the conclusion of the estimation process.

17          THE COURT:  This estimation asbestos business is

18  anticipated to cost us four million bucks?

19          MR. MAYER:  If we go all the way through a trial,

20  yes, Your Honor.

21          THE COURT:  Mr. Jones?

22          MR. JONES:  That is a correct statement of the

23  agreement, Your Honor.  I would say it's on an up to basis.

24  We'd be delighted if the number came in well below.

25          MR. MAYER:  Nor, of course, does it commit Treasury

Page 19

1    or anyone else not to examine people's fees and disbursements

2    for reasonableness, and then of course, the Judge -- the Court

3    remains free to do with the fees and disbursements as the Court

4    sees fit.

5            THE COURT:  Uh-huh.  All right.  Mr. Karotkin?

6            MR. KAROTKIN:  We agree with Mr. Jones.

7            THE COURT:  Okay.  With respect to title to the term

8    loan litigation, Treasury and the official committee of

9    unsecured creditors will further consider the issue of

10   ownership of the term loan litigation, following the December

11   3rd hearing on cross motions for summary judgment in the term

12   loan litigation.  That's tomorrow.

13           Treasury notes that the order approving Treasury's

14   DIP wind-down loan precludes the use of proceeds of the loans

15   to litigate against the DIP wind-down lenders.  The plan shall

16   provide that paragraph twenty of that order, which contains

17   that prohibition, shall continue to apply to Motors Liquidation

18   Company, the GUC Trust and the avoidance action trust after the

19   effective date.

20           Treasury reserves its right to enforce this

21   provision, including by objecting to allowance and payment of

22   any fees or expenses incurred during the Chapter 11 case, or

23   after the effective date on litigation over the term loan

24   litigation.

25           THE COURT:  Mr. Jones?

1          MR. JONES:  Your Honor, that's also correct.  The

2     statement as to the particular parties that it applies to is

3     not understood by Treasury to limit more broadly the

4     effectiveness of the order or the paragraph, but we wanted --

5          THE COURT:  I lost you, Mr. Jones.

6          MR. JONES:  -- specific assurance -- sorry.

7          Your Honor, there's a specific statement in the

8     language Mr. Mayer just wrote, stating that the order shall

9     continue to apply specifically to MLC, the GUC Trust, and the

10    avoidance action trust after the effective date, which is

11    correct, and I'm just noting that Treasury is not suggesting or

12    taking the position that the order is in any way limited by

13    this provision.  That states a particular application.

14         MR. MAYER:  We don't have a problem with that, Your

15    Honor.  The basic deal is that whatever the orders says it

16    says, and it continues in full force and effect after the

17    effective date.  That's the deal.

18         MR. JONES:  That's correct, thank you.

19         THE COURT:  Okay.

20         MR. KAROTKIN:  I assume we're talking about paragraph

21    twenty of that order?

22         MR. MAYER:  Yes.

23         MR. KAROTKIN:  Okay.

24         MR. MAYER:  Finally, the committee understands that

25    Treasury needs to review and sign off on the final final

09-50026-mg   Doc 8386   Filed 12/03/10   Entered 01/05/11 14:28:06   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 21 of 58

Page 21

1   disclosure statement and plan, and that, of course, is true for

2   us, too.  But the committee is done on the business points, and

3   we expect to have a letter recommending that creditors vote for

4   this plan when it goes out, and we are doing that on the

5   understanding that when this plan and disclosure statement is

6   finally printed and mailed, that means the Treasury is in

7   support of it, too.

8            THE COURT:  Mr. Jones?

9            MR. JONES:  Thank you, Your Honor, David Jones from

10  the U.S. Attorney's office.  As we've just confirmed on a line

11  by line basis, Mr. Mayer has correctly stated the business

12  agreement that the committee and Treasury has reached with the

13  issues he just described.

14           We do need to reserve rights, pending our final

15  review of documentation that just came in last night, and there

16  may be one or two --

17           THE COURT:  Reserving rights to ensure that the

18  paperwork confirms your understanding of the deal, I take it,

19  not to raise new issues?

20           MR. JONES:  That is correct, Your Honor, and there is

21  one small subissue not raised in these that we don't think will

22  be a problem, that we need to finally confirm is done.  We

23  think we'll have that done within the day and I rise to

24  indicate that based on our understanding of the deal as

25  described by the record, and based on our understanding of

Page 22

1    agreements reached with the debtors, we are now in business

2    agreement on the plan subject to those reservations I just

3    stated, and we hope to press to full final approval and

4    agreement imminently, as within a day or certainly by the end

5    of the week.

6             THE COURT:  All right.  Anything else on plan and

7    disclosure statement?

8             All right.  Hearing nothing, I don't know if there

9    are people who were here solely for that, but if they are, they

10   can leave.

11            MR. MAYER:  Thank you, Your Honor.  That includes a

12   number of us including Ms. Sharret who unfortunately for me

13   will be taking an extended leave.

14            THE COURT:  I'm sorry.  I couldn't hear you, Mr.

15   Mayer.

16            MR. MAYER:  I'm sorry.  I just wanted to acknowledge

17   Ms. Sharret's work and to indicate that she will -- please

18   stand up, Jennifer.

19            THE COURT:  Okay.

20            MR. MAYER:  She needs to take a week.  Thank you,

21   Your Honor.

22            THE COURT:  Thank you.  Mr. Smolinsky.

23            MR. SMOLINSKY:  Good morning, Your Honor, Joe

24   Smolinsky, Weil Gotshal and Manges for the debtors.

25            The next matter on the calendar is the motion seeking

MOTORS LIQUIDATION COMPANY, et al.

Page 23

1    authorization to estimate the aggregate amount of asbestos

2    personal injury liability.  Keeping with the theme, I believe

3    we now have an agreement with respect to the first step, which

4    is setting the schedule to allow for the preparation and

5    prosecution of an estimation hearing before this Court, as we

6    continue to use our best efforts to try to resolve these issues

7    consensually.

8           Looking at the end date, which is the date under

9    which a -- at which an estimation hearing would be held, we

10   originally asked in our motion for a hearing to be scheduled

11   towards the middle to end of February.  Under the new schedule,

12   we would be asking the Court to fix a date for the hearing as

13   close as possible to the first week in March.

14          Backing up, the various dates that are set forth in

15   our proposed order would be modified, some actually moving

16   forward and some moving slightly backward, in order to

17   accommodate that.

18          The only other issues with respect to the order as it

19   was proposed is that the parties wanted to make clear, looking

20   at the order, that the parties' exchange of exhibits that would

21   be fixed by Your Honor, depending on how far in advance Your

22   Honor would like those exhibits, would not include exhibits

23   that are used for purposes of impeachment or rebuttal, but only

24   for the case in chief.

25          And lastly, Your Honor, there's a provision,

Page 24

```
1    subparagraph F of the order, which sets a date for the filing

2    of pretrial briefs.  I think the parties are unclear as to

3    whether pretrial briefs would be desired or helpful to Your

4    Honor prior to the estimation hearing.

5              THE COURT:  To what extent do you have an

6    understanding with the other parties as to whether there would

7    be post trial briefs apart from pretrial briefs?

8              MR. SMOLINSKY:  We do not provide for that in the

9    order.  Again, I think it's -- I think the parties are willing

10   to look to Your Honor to decide what would be most helpful.

11             THE COURT:  Well, I need briefs of one kind or

12   another, Mr. Smolinsky, and I'll allow the others to weigh in

13   on this, too.

14             MR. SMOLINSKY:  My view is that if there are going to

15   be briefs, they should be pretrial briefs, so that Your Honor

16   is in a position to rule as quickly as possible after the

17   hearing.

18             THE COURT:  Fair enough.  Everybody on these monster

19   evidentiary hearings wants me to rule as soon as possible.

20   There are limits as to my ability to do that, and frankly I'm

21   getting tired.  I'm already tired.

22             To the -- let me rephrase that.  Assuming, as I do,

23   that you want prior rulings or rulings as quickly as possible,

24   you'll have to give me briefs in advance and the expert reports

25   as early as possible in advance, and I'll need to know, and
```

MOTORS LIQUIDATION COMPANY, et al.

Page 25

1    this is a reprise from the Chemtura trial, which similarly had

2    everybody in the world wanting me to rule as quickly as

3    possible on a very complex hearing with a lot of expert

4    testimony.

5            I'll need to know whether you're stipulating with

6    each other that the expert reports can be taken as direct

7    testimony, and can themselves be regarded as admissible, or on

8    the other hand, whether anybody is raising hearsay objections

9    to those, so that we have to go back and reinvent the wheel.

10           In my experience, most recently as a judge, also in

11   the thirty years that I was a lawyer before that, in commercial

12   cases, most of the time people were not of a mind to raise the

13   technical hearsay objection that they're allowed to on an

14   expert report, as long as there was an opportunity to cross-

15   examine the expert.

16           But if there are hearsay objections to the expert

17   reports, then I'm going to either need direct testimony much

18   earlier than I otherwise would, or I will need you guys to

19   understand that you're going to have to cool your heels for a

20   decision much longer than you otherwise might.

21           Additionally, of course, I'm going to need logistic

22   support from all of the feuding parties with respect to such

23   matters as giving me all documents in word processing format

24   and not just PDF and hard copy format.

25           You're the only one I've heard from so far,

Page 26

1    Mr. Smolinsky, and I'm going to finish your thoughts, but at

2    the least, I'm going to need that.

3                MR. SMOLINSKY:  Your Honor, I don't have much more to

4    say, but let me address those issues in particular.  The

5    schedule as we've laid out, I think provides Your Honor with

6    what we believe to be a significant amount of time in advance

7    with the documents.  The schedule would provide that expert

8    reports would be filed by January 14th.  Pretrial briefs would

9    be filed by February 8th.

10               THE COURT:  Just a minute, please.  I -- your earlier

11   motion or is it something that Mr. Swett or Mr. Esserman had

12   submitted had contemplated that in addition to there being a

13   first round of expert reports, there would be rebuttal reports.

14   I could swear somebody was complaining of constitutional

15   violations because of insufficient time to do rebuttal reports.

16               MR. SMOLINSKY:  Yes, Your Honor.

17               THE COURT:  Where did you guys finally come to rest

18   on that?

19               MR. SMOLINSKY:  The rebuttal reports would be due by

20   February 4th, which is in advance of the date February 8th for

21   the filing of pretrial briefs.  So if we have the hearing in

22   the first week of March, the briefs would be in your hands

23   pretty much a month prior.

24               THE COURT:  Wait.  You said briefs, but I take it you

25   meant the two rounds of reports, expert reports?

MOTORS LIQUIDATION COMPANY, et al.

Page 27

1          MR. SMOLINSKY:  Yes, and then the pretrial brief by

2     February 8th.

3          THE COURT:  Oh, okay.

4          MR. SMOLINSKY:  With respect to questions raised with

5     respect to hearsay objections, I don't have a strong view I

6     guess, but one suggestion may be that any hearsay objections

7     can be raised in the brief, which again will be before you

8     almost a month before the trial, so that you can consider those

9     in advance of the trial.

10          THE COURT:  All right.  You understand that I was

11     intending to make a distinction between underlying hearsay that

12     might be included within an expert report, and the separate

13     issue which some legal scholars debate as to whether the

14     hearsay -- the expert reports themselves are hearsay.

15          Now, I think the law's pretty clear, subject to your

16     rights to be heard, that experts are allowed to rely on hearsay

17     in forming their opinions, but that the fact that they form

18     their opinions on that basis does not make otherwise

19     inadmissible hearsay admissible.

20          Now if either side has a different view, I'll give

21     you an opportunity to be heard on it.  But I -- when I am

22     making findings, there is a fundamentally different way that I

23     do it depending on whether or not I'm allowed to use an expert

24     report as in substance, a proxy for the expert's direct

25     testimony, and I don't expect you to respond to that this

Page 28

```
 1    minute, but I expect you to let me know what your position on

 2    that is well before the first week of March.

 3              MR. SMOLINSKY:  Fair enough, Your Honor.  Generally,

 4    I think we all understand that the expert reports would be

 5    admissible generally, and we'll try to get you that

 6    confirmation that you can treat it as such.

 7              THE COURT:  Okay.

 8              MR. SMOLINSKY:  Subject to everybody else being

 9    heard.

10              THE COURT:  All right.  Does that finish your

11    thoughts, Mr. Smolinsky?

12              MR. SMOLINSKY:  It does.

13              THE COURT:  All right.  Then I need to hear from Mr.

14    Bentley, Mr. Swett and Mr. Esserman.

15              MR. BENTLEY:  Good morning, Your Honor, for the

16    record, Philip Bentley.

17              We support the positions that Mr. Smolinsky has

18    described, I guess, to run down the list in order, we also

19    think that if Your Honor is amenable to not having post trial

20    briefs, we think that would be beneficial from a timing

21    standpoint to not have them.

22              We certainly support the suggestion that I think Your

23    Honor was making that the parties eliminate any possible

24    hearsay issue by -- essentially by stipulating that the expert

25    reports can be deemed direct testimony by the experts.  We
```

Page 29

1    would support that stipulation and I hope the other parties

2    will as well.

3            THE COURT:  Okay.  Mr. Swett.

4            MR. SWETT:  Yes, sir.  Trevor Swett, Caplin &

5    Drysdale for the official committee of unsecured creditors

6    holding asbestos related claims.

7            Your Honor, we support the proposed schedule.  It is

8    premised on the notion that we are heading into a classic

9    battle of experts with very little, if any, fact witness

10   testimony.  And that has allowed us to streamline that, plus

11   the stipulation that we submitted earlier in the week,

12   eliminating the issue of significant discovery against third

13   party trusts, and solvent defendants, has allowed us to

14   streamline this.

15           It seems to be a sensible proposal.  We share the

16   view that the expert report should be available to you to

17   consider as evidence, and that the direct testimony of the

18   experts, if any, would be quite limited, so that the reports

19   would stand as the core at least of their direct.

20           THE COURT:  So the direct would be not much more than

21   if called upon to testify or I hereby incorporate my expert

22   report as my direct testimony?

23           MR. SWETT:  Something along those lines.

24           THE COURT:  Okay.  Mr. Esserman.

25           MR. ESSERMAN:  For the record, Sandy Esserman.  The

09-50026-mg   Doc 8386   Filed 12/03/10   Entered 01/05/11 14:28:06   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 30 of 58

Page 30

1    only additional comment I have is I've been involved in one

2    trial where the issue that Your Honor just raised did occur on

3    expert reports.  And the only thing I can tell the other

4    parties, it was exceedingly difficult and frustrating for

5    everybody, including the attorneys when that issue was raised,

6    and obviously, I think Your Honor correctly identified it as an

7    issue, and for the FCR, there's no way we would raise that

8    objection, especially me personally having been through that

9    trial, and I would urge everybody to accept the suggestion of

10   the Court, and I think the parties will, that expert reports,

11   unless there's otherwise an objection to them, not be objected

12   to on the basis of hearsay.

13            THE COURT:  All right.  Mr. Esserman, I think I hear

14   either a consensus or an emerging consensus among the four

15   major players on this.

16            MR. ESSERMAN:  Yes.

17            THE COURT:  Since you seem to understand my concerns

18   as well as anyone, I'm detailing you to take the leadership

19   role in papering a stip or consent order with the concurrence

20   of the other three players, in which the deal is memorialized.

21            MR. ESSERMAN:  I'll be happy to do it, Your Honor.

22            THE COURT:  Okay.

23            MR. ESSERMAN:  Thank you.

24            THE COURT:  All right.  Mr. Smolinsky.

25            MR. SMOLINSKY:  Thank you, Your Honor.  So I think I

Page 31

1   have all the dates filled in, other than the one that we need

2   Your Honor for, which is the date for the commencement of the

3   hearing.  And again, the agreement that was reached subject to

4   Your Honor's approval was that we would target the first week

5   in March.

6           THE COURT:  And by that, you mean like Tuesday, March

7   1 or are you talking about Monday the 7th or what?

8           MR. SMOLINSKY:  Monday, March 1 would be okay with

9   us.

10          THE COURT:  March 1 isn't a Monday --

11          MR. SMOLINSKY:  Tuesday, Tuesday.

12          THE COURT:  -- according to my calendar.

13          MR. SMOLINSKY:  Tuesday, I apologize, Your Honor.

14          THE COURT:  Well, let me call in Ms. Blum (ph) again,

15  unless she never left.

16  (Pause)

17          THE COURT:  Mr. Smolinsky, did you say Tuesday, March

18  1st?

19          MR. SMOLINSKY:  I did, Your Honor, but we were just

20  discussing an issue that Mr. Esserman has that we're trying to

21  navigate.

22          THE COURT:  Would you guys want to discuss amongst

23  yourselves, or that you want me to be party to this negotiation

24  with that?

25          MR. SMOLINSKY:  Your Honor, did you say that the 7th

Page 32

1    is also available?

2           THE COURT:  Don't go too far, Elaine.  Huh?

3           MR. SMOLINSKY:  Did you say that the 7th was also

4    available?

5           THE COURT:  I said it might be, I didn't say it would

6    be, that's why I asked Ms. Blum to come in.

7    (Pause)

8           THE COURT:  I sense that you're checking your

9    calendar, but I take it we're essentially talking about the

10   time that each of you guys needs to cross-examine your

11   opponents.  Have you formed a view as to how much time you need

12   for that purpose?  Remembering that the direct will have all

13   come in by expert report and by affidavit direct.

14          MR. SMOLINSKY:  Listening to the opinions, I would

15   say somewhere between one day and two days.

16          THE COURT:  One and how many?

17          MR. SMOLINSKY:  Two.

18          THE COURT:  One and two.  Okay.

19   (Pause)

20          MR. BENTLEY:  Your Honor, I hate to upset the apple

21   cart, but I think realistically with four expert witnesses,

22   cross-examination of each by multiple parties, and presumably

23   significant redirect since each party won't have done their

24   usual direct, I think realistically we're really talking three

25   days.

MOTORS LIQUIDATION COMPANY, et al.

1      UNIDENTIFIED SPEAKER:  I think that's absurd.

2      THE COURT:  All right.  I've got to tell you that in

3   a three billion dollar contested valuation hearing, excuse me,

4   I think the final ruling was closer to two billion, we did the

5   whole thing in two days.  Because I not only assume, but I

6   insist that allies coordinate with each other.  But with that

7   said, I heard you, Mr. Bentley.  Mr. Smolinsky, if you guys are

8   hot to get an early decision, I would suggest especially in

9   light of the concerns that Mr. Bentley articulated, that you

10  consider using as many of the days of the week beginning March

11  1st as possible.

12      MR. SMOLINSKY:  I would have to agree with that, Your

13  Honor, and we'll have Mr. Esserman address the Court, but to

14  the extent that it's going to be a three-day trial, I would

15  prefer to start on March 1st.

16      THE COURT:  All right.  Mr. Esserman, let me hear

17  your concerns.

18  (Pause)

19      THE COURT:  Mr. Esserman.

20      MR. ESSERMAN:  Your Honor, I'm generally in

21  agreement, of course, with everything that has been said.  My

22  concern is there are certain other asbestos trust meetings that

23  involve several of the experts that have been set for the week

24  of March 1st; March 1st, 2nd and 3rd, and that is my concern

25  with the dates.  No other concern.  I would hope we could all

09-50026-mg   Doc 8386   Filed 12/03/10   Entered 01/05/11 14:28:06   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 34 of 58

Page 34

1   get it done in two days, also, but that's why --

2           THE COURT:  You're talking about in other cases?

3           MR. ESSERMAN:  Yes.  We'll live with whatever

4   schedule Your Honor decides.  I just wanted to raise it, we're

5   talking about three or four days here.

6           MR. SMOLINSKY:  But those aren't hearings, those are

7   meetings, aren't they?

8           MR. ESSERMAN:  Yes, those are very large group

9   meetings, and some of the people involved are trustees of those

10  trusts, but.

11          THE COURT:  Well, frankly, folks, I've tried to give

12  people courtesies, but my ability to manage my calendar has

13  been pushed to the limit, and frankly, my predilections to be a

14  customer friendly court have been pushed too far.  They've been

15  pushed too far on matters of scheduling, they've been pushed

16  too far on people giving me eighty-page briefs, and I've stated

17  in other contexts that I have no interest in being a pawn in

18  the asbestos wars.

19          I will authorize you to arrange your witnesses, if

20  you can, to facilitate Mr. Esserman's concerns, because frankly

21  I don't see the order in which I hear experts as making a

22  difference.  It would normally be the case since strictly

23  speaking that this is an estimation motion brought by the

24  debtors, that the debtors' expert would be crossed first in any

25  event, and then it would be my inclination to take the

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 35 of 58

Page 35

 1    creditor's committee's expert next.  Which if we begin on

 2    Tuesday, March 1st, would very possibly give you at least one

 3    day where you know you don't have to put your witnesses up

 4    anyway for cross.

 5            But frankly, gentlemen, that's as far as I'm of a

 6    mind to go.

 7            MR. ESSERMAN:  Your Honor, that's fine, we'll live

 8    with it.  I just wanted to raise the issue and we'll accept

 9    whatever Your Honor decides.

10            THE COURT:  Okay.

11            MR. ESSERMAN:  It's not a problem.

12            THE COURT:  All right.

13            MR. ESSERMAN:  Thank you.

14            THE COURT:  So you're going to have Tuesday, March

15    1st as the starting time for the hearing, 9:45 unless you want

16    to begin at an earlier time.  You can have starting as early as

17    8:30 if you want.  I'm going to give you Wednesday the 2nd, and

18    I would prefer frankly to -- if we need to go on, to finish up

19    that same week.

20            Is there anybody here who's religious who can't go

21    past 2:00 or 3:00 o'clock on Friday?  I mean, a player in the

22    case, obviously -- in this controversy, obviously?

23            No?  All right.  So I would hope and expect we can

24    get all testimony in the week beginning Tuesday, March 1st.

25            Now, although I don't look for post trial briefs,

MOTORS LIQUIDATION COMPANY, et al.

Page 36

1    it's my custom to permit closing argument, oral argument and

2    legal argument, and have you guys talked about how much time

3    you need for that?

4            MR. SMOLINSKY:  No, Your Honor, that's maybe

5    something that we can discuss amongst ourselves and include in

6    the order when it's submitted.

7            THE COURT:  Okay.  Any disagreement with what

8    Mr. Smolinsky just said?

9            Okay.  Then that's the way we'll do it.

10           MR. SMOLINSKY:  Well, thank you very much, Your

11   Honor.  We will circulate an order, a proposed order, and then

12   submit it to the Court.

13           THE COURT:  Okay.  A reminder, folks.  When direct

14   testimony affidavits come in, I need them in word processing

15   format, as well as PDF format.  And I want all the expert

16   reports in word processing format also.  And I assume that in

17   this type of matter there is likely to be very little, if any,

18   contractual language or language from other documents which

19   wouldn't be available in word processing that would be of

20   significance in deciding this.  But if there is, I'll need any

21   such language in word processing format as well, so I don't

22   have to make my chambers staff key in all sorts of contractual

23   documents.

24           Also going to remind you for the nine hundredth time

25   to keep lawyerisms out of your briefs and your submissions.  I

09-50026-mg   Doc 8386   Filed 12/03/10   Entered 01/05/11 14:28:06   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 37 of 58

Page 37

1    don't need to know debtor's social or social security numbers

2    or EINs, or even the last four digits of them.  I don't need to

3    know the history of the case.  I want the submissions to focus

4    on the issues that are before me.  With that said, this is

5    going to be handled as a contested matter and not as an

6    adversary proceeding, and therefore, no pretrial order will be

7    required.  I think that was implicit, but I'll say it

8    explicitly.

9              Okay.  Anything else, Mr. Smolinsky?

10             MR. SMOLINSKY:  Not in that matter, Your Honor.  The

11   next matter is the Tracy Woody motion for relief from the stay.

12   If you'd like, we can skip over that and handle the rest of the

13   calendar.  It should only take a few minutes.

14             THE COURT:  If there are other people in the

15   courtroom besides on the Tracy Woody matter for any of your

16   other stuff, which I take it it's largely or wholly undisputed,

17   you can clear that, and then I'll deal with Woody.

18             CourtCall, you can now put Ms. Woody off mute.

19             Go ahead, Mr. Smolinsky.

20             MR. SMOLINSKY:  Thank you, Your Honor.  Moving to the

21   uncontested matters, the debtors' ninety-seventh omnibus

22   objections to claim, there was one outstanding claim that had

23   not yet been resolved.  We have now worked that out, and we're

24   ready to submit an order, which would expunge that claim.  That

25   claim is a claim filed on account of GMAC bonds that was

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 38 of 58

Page 38

1    mistakenly interposed thinking that GMAC is related to GM.

2              So with that order being entered, that would resolve

3    omnibus objection number ninety-seven.  We'll submit that order

4    to the Court.

5              THE COURT:  All right.  That's fine.

6              MR. SMOLINSKY:  Resolved matters, we have two other

7    motions to -- for relief from the stay today.  The first one is

8    filed by Timothy Bynum.  We have resolved that matter by

9    stipulation, which will be submitted to Your Honor.

10             We have agreed to lift the stay to permit Mr. Bynum

11   to pursue his claim in Indiana state court.  This is a matter

12   in which an insurance company, Arch Insurance Company is

13   defending a co-defendant, as well as MLC.  So we've agreed to

14   lift the stay to allow that case to continue.  The insurance

15   company will defend, and Mr. Bynum has agreed not to assert any

16   claims against MLC or any of the other debtors.

17             THE COURT:  Oh, fine.

18             MR. SMOLINSKY:  The next item is a motion for relief

19   from the stay from Samuel Barrow.  We have resolved that motion

20   by our agreement to put Mr. Barrow's proof of claim into our

21   ADR process, so we have a stipulation that dictates that we

22   will designate the claim for ADR and mediation by no later than

23   December 31st, 2010.

24             THE COURT:  Sure.

25             MR. SMOLINSKY:  Lastly, Your Honor, at the end of the

MOTORS LIQUIDATION COMPANY, et al.

Page 39

1    calendar, we have a section on withdrawn matters.  One of which

2    is the 2004 brought by the committee, a withdrawal has been

3    filed with respect to that.  Next we have the Boyd Bryant's

4    (ph) motion to allow them to file a class proof of claim.

5              Your Honor will recall that we settled that matter

6    and a judgment was entered, so there's no reason to go forward

7    with that motion, and a withdrawal notice was submitted --

8              THE COURT:  Just a minute, please, Mr. Smolinsky.

9    Ms. Woody, is that you who's making the noise or, CourtCall, I

10   assume you haven't unmuted anybody else?

11             COURTCALL CLERK:  Yes, Your Honor, the background

12   noise is coming from Ms. Woody's line.

13             THE COURT:  All right.  Ms. Woody, I need you to be

14   quiet, please, until it's your turn to be heard.  Every time

15   you rustle papers or do noisy things at your desk, it gets

16   magnified and amplified in my courtroom.

17             Go ahead, Mr. Smolinsky.

18             MR. SMOLINSKY:  The last two, Your Honor, which is

19   the debtor's ninety-first omnibus objection to claim and

20   debtors' a hundred and seventh omnibus objection to claim, we

21   have agreed to withdraw the motion with respect to the last

22   remaining claim in each of those matters.

23             So for purposes of cleaning the court docket, we

24   would like to submit an order just confirming that those claims

25   -- the motion has been withdrawn with respect to those claims,

Page 40

1    and the rest of the objection could be marked off calendar as

2    resolved.

3            THE COURT:  Of course, sure.

4            MR. SMOLINSKY:  And that, I believe, leaves with us

5    Ms. Woody's motion.

6            THE COURT:  All right.  Ms. Woody, I'll hear your

7    oral argument.  It's your motion.  I do have a few questions of

8    both sides.  First, I saw an indication in the debtor's

9    response that there were settlement negotiations that were

10   being considered or ongoing, and I'd like to know what happened

11   to them, since I would've thought that the cost of litigating

12   this motion could exceed the amount of the cost of repairs or

13   damage to the vehicle.

14           I also did not see in this thick package, but I may

15   have missed it, the actual ruling by the North Carolina state

16   court, but Ms. Woody, I didn't see any reply by you that would

17   cause me to quarrel with what the debtors said about the claim

18   being found to be untimely, although the words that the debtor

19   used struck me as odd.  Certainly, I don't rule that way.  Time

20   barred and/or failed as a matter of law, I would've thought

21   that most judges would be more specific in saying what they're

22   ruling on and why.

23           Ms. Woody, you didn't deal with the Sonnax factors,

24   which are the factors that a judge in my circuit, the 2nd

25   Circuit, must take into account in deciding whether or not to

MOTORS LIQUIDATION COMPANY, et al.

Page 41

1    grant relief from the stay.  And, of course, there are many,

2    many precedents where I have ruled, principally by dictated

3    decisions on others' requests for relief from the stay, which

4    so far as I recall, I have denied in every instance, and I

5    guess the question I have is why this case should be regarded

6    as different than the others, and why the precedents of the

7    others don't equally apply here.

8             So with that said, I'll hear first from you, Ms.

9    Woody.

10            MS. WOODY:  First of all, Your Honor, I would like to

11   apologize.  My daughter is actually sick and she was coughing.

12   I was just trying to let her know I was on the phone with the

13   Court.

14            But in any event, I believe that there are certain

15   bankruptcy procedures that has to be followed regarding General

16   Motors.  I believe I was supposed to be sent a proof of claim

17   and possibly a notice of creditor's meetings, because -- a

18   meeting, because I know that they, General Motors, was aware of

19   the lawsuit that I filed against them as the manufacturer.

20            I purchased a vehicle that was part of a lawsuit

21   against General Motors, regarding some manufacturing defects in

22   the vehicle, and I filed my case regarding this within the

23   three-year period.  And I did not receive a proof of claim from

24   the attorney for General Motors.  I didn't receive any notice

25   of creditor's meetings.

Page 42

1        The only thing I received was this Chapter 11

2    confirmation and a letter previously telling me that GM was in

3    bankruptcy, and that I should dismiss my case, or sanctions may

4    be imposed upon me.  That's the letter I received from the

5    attorney's office for GM.

6        So I wasn't aware of the deadline, of any deadline

7    for a claim, but at this point, I'm still an interested party.

8    I still have a Wayne County court -- district court case

9    against which General Motors is one of the parties, that I'm

10   going to get in against because of manufacturing defects to the

11   vehicle and the damages and so forth that pursued (sic).

12       And as far as the bankruptcy, it is not set up to

13   protect any misrepresentation of a product or any type of -- I

14   mean, I was sold the product saying that the vehicle was in

15   good shape, that it had been tested, there was no problem with

16   it.

17       When I took the vehicle to a car mechanic, as a

18   matter of fact, General Motors is the one that sent this

19   litigation or lawsuit information a year after the warranty was

20   over, and it mentioned as long as -- well, the mechanic

21   mentioned that was working on my car, mentioned that the

22   speedometer defect had to be repaired by the manufacturer, and

23   the vehicle I had was down for several months.

24       And he mentioned -- we had a long conversation, the

25   mechanic and I, and there were some issues with the

1   manufacturer, it was some manufacturer defects.  And what

2   concerned me is that the vehicle stopped while I was driving,

3   and I had my children in the car, and my elderly mother.  And

4   we stopped, actually it stopped while we were driving, and we

5   were right there in a dead curve where somebody could've really

6   hit us, and we could've had a horrible accident.

7           But in any event, the ruling for the Wayne County

8   District Court was -- the attorneys had mentioned that I had

9   not filed the claim or the cases -- I should say the case, I

10  didn't file to serve it or serve it with the proper subpoenas

11  and so forth, which I'm not sure what happened to those

12  subpoenas, but I -- as far as everything was filed and even

13  served a second time around to the attorneys that these

14  defendants, including General Motors.  And I don't know how

15  that paperwork got missing.  I guess it was just a clerical

16  error.  But I had sent copies of all of the subpoenas.  I

17  reissued those subpoenas from the courthouse, from the clerk,

18  who signed off on them, and they received those as well.

19          So actually the order, as far as the Court, and I

20  have a jurisdiction was not appropriately -- filed.  So I filed

21  the motion to set that order aside, and that's where we're at

22  at this point.

23          And I listed the specific information about General

24  Motors and why the liability is still an issue, and it really

25  stems from a letter that -- also it kind of came from them,

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 44 of 58

Page 44

1   which says that -- and I filed this with my proof of claim as

2   an interested party, which states that General Motors -- the

3   description of the lawsuit was it was a class action lawsuit,

4   and my vehicle is one of the vehicles that's listed in here, a

5   2003 Chevrolet Suburban, and it mentions --

6           THE COURT:  Pause, please, Ms. Woody.  Your lawsuit

7   was not a class action lawsuit, right?

8           MS. WOODY:  No, it wasn't.  It wasn't part of the

9   class action lawsuit, no, sir, it wasn't.

10          THE COURT:  No, I don't understand.  You're saying

11  you were a member of a class, of somebody else's class action

12  lawsuit?

13          MS. WOODY:  Oh, no, sir.  I'm saying that I'm

14  referencing that there was other plaintiffs that have filed a

15  lawsuit against General Motors regarding the same issues that I

16  had filed a lawsuit against.

17          THE COURT:  What does that have to do with you?

18          MS. WOODY:  Well, it's just that there are other

19  cases out there with the same type of problem, or there were

20  other cases out there with the same type of problems that I had

21  with my vehicle, with the manufactured defects.

22          THE COURT:  Okay.  Do you want to talk about the

23  Sonnax factors?

24          MS. WOODY:  I'm sorry?

25          THE COURT:  Do you want to be heard on what GM said

MOTORS LIQUIDATION COMPANY, et al.

Page 45

1    about the Sonnax factors?

2            MS. WOODY:  Sonnax factors?

3            THE COURT:  Yes.  If you don't know what they are --

4            MS. WOODY:  No.

5            THE COURT:  -- then I'll rule on them based --

6    because I know what they are.  But you don't want to speak to

7    that; am I correct?

8            MS. WOODY:  I'm not aware of what the Sonnax factors

9    are at this point.

10           THE COURT:  Okay.  Fair enough.

11           MS. WOODY:  Uh-huh.

12           THE COURT:  Do you have a copy -- well, I'll ask

13   Mr. Smolinsky.  Did the North Carolina court issue its ruling

14   in writing?  Hello?  Are you still with me, Ms. Woody?

15           MS. WOODY:  Oh, yes, I'm sorry.  I didn't know if you

16   were talking to an attorney.  There was a ruling about the

17   court not having subject matter.  It was an issue with the

18   subpoenas, but as I mentioned, I have asked that that motion be

19   set aside, so that's going to be scheduled for court, but

20   before I can schedule that, I needed to have a motion for

21   relief so I can continue showing the judge that in the file,

22   all the subpoenas, and they were all issued.  I've sent

23   certified copies and so forth of all the information.  So that

24   order, you know, is not correct.

25           THE COURT:  Okay.  Thank you.  All right.  I'll hear

MOTORS LIQUIDATION COMPANY, et al.

Page 46

1    from Mr. Smolinsky now.  Mr. Smolinsky, start with, did the

2    North Carolina court issue its ruling in writing?

3              MR. SMOLINSKY:  It did, Your Honor, and I'm just --

4    through my investigation from my office.  The reason why it

5    wasn't -- we didn't attach it to the papers, was that it didn't

6    say anything substantive.  It merely stated that GM's motion

7    for summary judgment is granted in its entirety, and

8    plaintiff's complaint is dismissed.

9              THE COURT:  When it said GM, did it make a

10   distinction between Old GM and New GM?

11             MR. SMOLINSKY:  I would have to say they were talking

12   about New GM, because that's the one who filed the motion for

13   summary judgment, and we had already worked out with Ms. Woody

14   that we were severed from that case.  So I wouldn't --

15   certainly wouldn't assume that the judge was dismissing the

16   case as to us.

17             THE COURT:  All right.  Continue.

18             MR. SMOLINSKY:  And plaintiff's complaint is

19   dismissed in its entirety, as asserted against General Motors

20   LLC f/k/a General Motors Company, s/h/a General Motors

21   Company/severally a division of GM/General Motors Corp., and

22   that's all it said.

23             So we paraphrased, based on what the motion for

24   summary judgment was, which was based on a timeliness --

25             THE COURT:  I don't quarrel with your paraphrase, Mr.

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 47 of 58

Page 47

1    Smolinsky, but without being critical of another judge, without

2    understanding the basis upon which the other judge ruled, I

3    have some difficulty applying res judicata or collateral

4    estoppel.

5             MR. SMOLINSKY:  I don't dispute that, Your Honor, and

6    I don't think that we're arguing that the judge has already

7    dismissed the case as to us.

8             THE COURT:  Okay.  You don't need to repeat yourself

9    on the Sonnax factors.  Ms. Woody says she never got a proof of

10   claim form or got timely notice of the need to file a claim,

11   even though there was apparently ongoing communications between

12   her and GM's counsel down in North Carolina.  Do you have any

13   facts relevant to that?

14            MR. SMOLINSKY:  I don't, Your Honor, other than the

15   fact that we did our best to notify parties to actions and

16   threatened actions, using information that was provided by, at

17   that time, New GM.  I can't confirm or deny today whether Ms.

18   Woody was on that list.

19            I did hear her say that she knew that the bankruptcy

20   was filed at the time, but other than that, I would have to do

21   some further investigation.

22            THE COURT:  Okay.  Well, again, I don't have a

23   problem with you or your firm, Mr. Smolinsky, but other people

24   who have gotten involved in one way or another in this

25   controversy may not have done all the things that -- let's just

Page 48

1    say that best practices would've suggested that they could've

2    or should've done.

3             You don't need to repeat yourself on Sonnax factors.

4    Is there anything else you want to talk about, Mr. Smolinsky?

5             MR. SMOLINSKY:  Other than to just, you know, confirm

6    for the record that this action was filed after our bankruptcy

7    was filed, and so when you look at the first Sonnax factor,

8    there are several matters that are not North Carolina state

9    court issues, but would have to come back to the bankruptcy

10   court for, such as whether the North Carolina action is voided

11   as a matter of law for violating the stay, whether any judgment

12   is unenforceable for the failure to file a proof of claim, or

13   whether any claims, an expressed warranty claim that would be

14   assumed by New GM, or a retained liability under the master

15   sale and purchase agreement.

16            With respect to the settlement, you know, we have

17   tried to take a very practical approach in this case.  We have

18   resolved a number of cases in similar situations where there

19   hasn't been proofs of claim.  We think that the bankruptcy

20   environment is the best way to do that in.  I think we made --

21   we spoke to Ms. Woody twice, and offered at each time a

22   settlement offer, which I think was very generous, relative to

23   I think the amount of her repairs, and those offers were

24   rejected.

25            I don't want to violate Rule 408, I'm happy to

Page 49

1   disclose what the offer was, if Your Honor is interested, but

2   so far we have not been able to resolve it.  I think the

3   practicality and the efficiency of this case is the important

4   issue here.  I think that we can deal with this claim here in

5   the bankruptcy court.  I fear very much that to the extent that

6   this moves back to North Carolina, that we're going to be mired

7   in litigation for a long time over a claim of a very small

8   amount.

9           THE COURT:  All right.  Everybody, have a seat,

10  please.  Mr. Smolinsky and Ms. Woody, I'm now going to rule.

11          Ladies and gentlemen, I am denying relief from the

12  stay.  Which means, Ms. Woody, that I am denying permission for

13  you to proceed in North Carolina, but will also be issuing a

14  supplemental order in the interest of justice, which I will

15  describe in a moment.

16          The narrowest issue before me is whether you, Ms.

17  Woody, should be allowed to proceed with further litigation in

18  North Carolina; and a motion of that character is governed by

19  twelve factors that I am directed by the 2nd Circuit Court of

20  Appeals to consider, which are known as the Sonnax factors,

21  S-o-n-n-a-x, as described in a case reported at 907 F2d 1280.

22          Those factors overwhelmingly weigh in favor of me

23  exercising my discretion, which the case law permits me to do,

24  to deny relief from the stay.

25          The first Sonnax factor is whether relief would

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 50 of 58

Page 50

1    result in a partial or complete resolution of the issues.  Here

2    that depends on how you would define it.  It appears that the

3    -- a decision was issued insofar as General Motors LLC, what I

4    call New GM, would be concerned.  Here the litigation would

5    proceed, presumably it could result in a resolution of the

6    issues with respect to Old GM, but at the same time, the North

7    Carolina state court judge might rule that the same reasons

8    that he gave for ruling in favor of New GM would also apply to

9    Old GM, if in fact, he didn't have that in mind already.  I

10    can't be sure.

11          So this factor, when it's present in a clear way,

12    normally weighs in favor of granting relief from the stay, but

13    here it either is a wash or tilts against it.  Lack of any

14    connection with or interference with the bankruptcy case is the

15    second factor, and that weighs materially in favor of Old GM

16    here.

17          There have been many, I don't remember how many

18    similar motions that we've dealt with before where people want

19    to proceed with litigation against Old GM all around the

20    country, and the cost of defending these is a burden upon all

21    of GM's creditors, and creates both interference and burden on

22    that.

23          We do have a claims process for dealing with this

24    type of stuff.  I'm going to come back to the claims process

25    later.  But that's the way that a claim of this character

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 51 of 58

Page 51

1    should be dealt with, not by litigating in North Carolina.

2         Whether the other proceeding involves the debtor as a

3    fiduciary weighs in favor of relief from the stay when it's

4    applicable, but here it's not applicable.

5         Factor number four is whether a specialized tribunal

6    with the necessary expertise has been established to hear the

7    cause of action, and that factor weighs in favor of granting

8    relief from the stay when it applies.  But when it doesn't

9    apply, it's either a wash or tilts against it.

10        The fifth factor is whether the debtor's insurer has

11   assumed full responsibility for defending it, and like some of

12   the predecessors, it weighs in favor of granting relief from

13   the stay when it's applicable, but here it does not apply.  So

14   it is either a wash or tends to weigh against relief from the

15   stay.

16        Whether the action primarily involves third parties;

17   well, again when this factor is present, it tends to weigh in

18   favor of granting relief from the stay.  There obviously here

19   is one third party, which is New GM, but which is no longer in

20   the case, and now as a practical matter, all we're talking

21   about is whether these claims should be heard in the claims

22   process or down in North Carolina.  So this factor is at most a

23   wash or alternatively, weighs against relief from the stay.

24        Factor number seven is whether litigation in another

25   forum would prejudice the interests of other creditors, and in

MOTORS LIQUIDATION COMPANY, et al.

Page 52

1    a different context I talked about this.  This is indeed

2    prejudicial to the other creditors because they would have to

3    bear the cost of litigation by Old GM in North Carolina, which

4    is unfair to them.  Those factors weighs materially in favor of

5    denying relief from the stay.

6            Whether the judgment claim arising from the other

7    action is subject to equitable subordination is factor number

8    eight.  And here, under the facts, this factor doesn't apply at

9    all or alternatively is regarded as a wash.  It just doesn't

10   apply.

11           Factor number nine is whether movant's success in the

12   other proceeding would result in a judicial lien avoidable by

13   the debtor.  This too doesn't apply.

14           Factor number ten, which is one of the most

15   important, is the interests of judicial economy and the

16   expeditious and economical resolution of litigation.  This

17   relates to a couple of the others and this weighs heavily

18   against granting relief from the stay.

19           I can deal with the matters of judicial economy much

20   more quickly and easily in the claims process, and going back

21   to start up a whole new litigation in North Carolina is going

22   to be exactly the opposite of being expeditious or economical,

23   and is exactly the kind of thing that the interests of judicial

24   economy say that I would be nuts to do.

25           Factor number eleven, whether the parties are ready

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 53 of 58

Page 53

1    for trial in the other proceeding is a factor that when it

2    applies weighs in favor of granting relief from the stay, but

3    here it doesn't apply.  So once more, it's either a wash or

4    tends to vote or weigh against granting relief from the stay.

5              Impact of the stay on the parties and the balance of

6    harms, is here essentially a wash.  I can grant whatever relief

7    is in the interest of justice as well, and most likely quicker

8    than the North Carolina court could.

9              So for the foregoing reasons, I'm exercising my

10   discretion to deny relief from the stay.  With that said, I

11   take Ms. Woody at her word when she said she didn't get notice

12   of a deadline for filing claims.  And I wasn't a fly on the

13   wall, so I don't know what Ms. Woody was told by the lawyers

14   for New GM, who were defending that lawsuit down in North

15   Carolina, but if it is true, as Ms. Woody alleges, that she had

16   all these conversations with these guys and they never told her

17   about the fact that she'd need to file a claim and the deadline

18   for doing that, that's a matter of concern to me.

19             So what I'm going to do is, Ms. Woody, I'm going to

20   give you thirty days from the date that GM gives you service of

21   the order denying your motion for relief from the stay, to file

22   a proof of claim for the costs that you claim that you were

23   suffered.  And if you file a proof of claim, then you will get

24   the same distributions as other creditors of GM with

25   prepetition claims get, to the extent that there is either

09-50026-mg    Doc 8386    Filed 12/03/10    Entered 01/05/11 14:28:06    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 54 of 58

Page 54

1    agreement on what your damages should be or I, as a judge,

2    resolve it.

3            That does not mean that if by way of example, you

4    file a proof of claim for nine thousand dollars, you're going

5    to get a check for nine thousand dollars.  First of all, it's

6    only what your damages actually are, and second, you're going

7    to get the same amount on a claim that other creditors get.

8    And I don't know exactly what a claim is worth in this case,

9    but let's say it's fifteen or twenty cents on the dollar,

10   that's what we're talking about, and it might be less for that

11   matter.  I just don't know, I don't know what the value of the

12   stock that is going to ultimately go to creditors is, but

13   that's the way it's going to be.

14           This ruling is, of course, without prejudice to the

15   rights of Old GM or its creditor's committee to object to the

16   proof of claim if one is filed, and I would encourage you,

17   Ms. Woody, considering how little a claim may be worth, to

18   seriously consider any settlement that GM might offer you, but

19   ultimately that's your decision, not mine.

20           Mr. Smolinsky, you're to settle an order in

21   accordance with this dictated ruling, saying in substance that

22   for the reasons set forth on the record, the motion for relief

23   from the stay is denied, but also providing that Ms. Woody will

24   have thirty days to file a proof of claim, and if she does file

25   a proof of claim that this ruling is without prejudice to

Page 55

1    everybody's rights on whether or not that proof of claim should

2    be allowed.

3             The time to appeal from this determination will run

4    from the date of entry of the order, and not from today, and

5    the usual fourteen-day stay of effectiveness of the order under

6    Bankruptcy Rule 4001 will remain in effect.

7             All right.  I believe we're done, folks.

8    Mr. Smolinsky?

9             MR. SMOLINSKY:  Your Honor, I would just note that

10   Ms. Woody is free to contact me at the number on the papers or

11   Breanna Benefield (ph) who she spoke to several times, if she

12   wants to bypass the proof of claim process and see if we can

13   just reach agreement.

14            MS. WOODY:  I can barely hear, I'm sorry.

15            THE COURT:  All right.  Mr. Smolinsky, pull the

16   microphone real close to you and just repeat to her so she can

17   hear what you just told me.

18            MR. SMOLINSKY:  Your Honor, I was just making the

19   offer that if Ms. Woody wanted to try to bypass the proof of

20   claim process, that she's free to call me at the number on our

21   papers or Breanna Benefield who she has spoken to on several

22   occasions.

23            THE COURT:  Okay.  Did you follow that, Ms. Woody?

24            MS. WOODY:  I did, and thank you very much.

25            THE COURT:  Okay.  Have a nice day.  We're adjourned.

MOTORS LIQUIDATION COMPANY, et al.

Page 56

1          (Whereupon these proceedings were concluded at 11:06 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

1

2                        I N D E X

3

4                           RULINGS

5                                              Page      Line

6    Motion for Relief From Stay

7    Tracy Woody

8    Denied                                     49        13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 58

1

2                        C E R T I F I C A T I O N

3

4     I, Lisa Bar-Leib, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6     Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                        DN: cn=Lisa Bar-Leib, c=US
                        Reason: I am the author of this document
7     _____    Date: 2010.12.03 14:29:49 -05'00'

8     LISA BAR-LEIB

9     AAERT Certified Electronic Transcriber (CET**D-486)

10

11    Veritext

12    200 Old Country Road

13    Suite 580

14    Mineola, NY 11501

15

16    Date:  December 3, 2010

17

18

19

20

21

22

23

24

25