Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026(REG)

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   MOTORS LIQUIDATION COMPANY, et al.

9         f/k/a General Motors Corporation, et al.,

10

11         Debtors.

12

13   - - - - - - - - - - - - - - - - - - - -x

14

15         United States Bankruptcy Court

16         One Bowling Green

17         New York, New York

18

19         December 7, 2010

20         2:04 PM

21

22

23   B E F O R E:

24   HON. ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

1

2    HEARING re Status Conference re: Disclosure Statement

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sharona Shapiro

Page 3

1

2      A P P E A R A N C E S :

3      WEIL GOTSHAL & MANGES LLP

4           Attorneys for the Debtors and Debtors-in-Possession

5           767 Fifth Avenue

6           New York, NY 10153

7

8      BY:   STEPHEN KAROTKIN, ESQ.

9            JOSEPH H. SMOLINSKY, ESQ.

10

11

12     KRAMER LEVIN NAFTALIS & FRANKEL LLP

13          Attorneys for the Official Committee of Unsecured

14           Creditors

15          1177 Avenue of the Americas

16          New York, NY 10036

17

18     BY:   ROBERT T. SCHMIDT, ESQ.

19

20

21

22

23

24

25

Page 4

1

2    U.S. DEPARTMENT OF JUSTICE

3         United States Attorney's Office

4         Southern District of New York

5         86 Chambers Street

6         New York, NY 10007

7

8    BY:   DAVID S. JONES, DEPUTY CHIEF, CIVIL DIVISION

9

10

11   GREENBERG TRAURIG, LLP

12        Attorneys for Certain Noteholders of General Motors Nova

13         Scotia Finance Company

14        MetLife Building

15        200 Park Avenue

16        New York, NY 10166

17

18   BY:   GARY D. TICOLL, ESQ.

19

20

21

22

23

24

25

Page 5

1

2    STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

3         Attorneys for Future Claims Representative

4         2323 Bryan Street

5         Suite 2200

6         Dallas, TX 75201

7

8    BY:   SANDER L. ESSERMAN, ESQ.

9         JACOB L. NEWTON, ESQ. (TELEPHONICALLY)

10

11

12   CALIFORNIA DEPARTMENT OF JUSTICE

13        For the State of California

14        300 South Spring Street

15        Suite 1702

16        Los Angeles, CA 90013

17

18   BY:   OLIVIA W. KARLIN, DAG (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 6

1

2   CUYLER BURK, P.C.

3        Attorneys for Creditor, All State Insurance Company

4        Parsippany Corporate Center

5        Third Floor

6        Four Century Drive

7        Parsippany, NJ 07054

8

9   BY:   STEFANO CALOGERO, ESQ. (TELEPHONICALLY)

10

11

12   ROPERS, MAJESKI, KOHN & BENTLEY

13        Attorneys for Creditor, Remy International, Inc.

14        201 Spear Street

15        Suite 1000

16        San Francisco, CA 94105

17

18   BY:   N. KATHLEEN STRICKLAND, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 7

1

2   CAPLIN & DRYSDALE

3        Attorneys for Asbestos Claimants Committee

4        One Thomas Circle, N.W.

5        Suite 1100

6        Washington, DC  20005

7

8   BY:  RONALD REINSEL, ESQ. (TELEPHONICALLY)

9

10

11  CADWALADER WICKERSHAM & TAFT LLP

12       Attorneys for U.S. Treasury

13       One World Financial Center

14       New York, NY  10281

15

16  BY:  DOUGLAS MINTZ, ESQ. (TELEPHONICALLY)

17       JOSEPH ZUJKOWSKI, ESQ. (TELEPHONICALLY)

18

19

20  NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL

21       Attorneys for the State of New York

22       The Capitol

23       Albany, NY 12224

24

25  BY:  MAUREEN F. LEARY (TELEPHONICALLY)

1

2    JUSTIN BRASS, JEFFERIES & COMPANY

3         (TELEPONICALLY)

4

5    MANISH GARG, HALCYON ASSET MANAGEMENT

6         (TELEPHONICALLY)

7

8    JOHN NOVAK, BARCLAYS CAPITAL, INC.

9         (TELEPHONICALLY)

10

11   JORDAN FISHER, PENTWATER CAPITAL MANAGEMENT

12        (TELEPHONICALLY)

13

14   CONRAD FLAKE, JPMORGAN CHASE & CO.

15        (TELEPHONICALLY)

16

17   JUSTIN GARD, CRT CAPITAL GROUP, LLC

18        (TELEPHONICALLY)

19

20   ERIC GELLER, CITIGROUP

21        (TELEPHONICALLY)

22

23   ANTHONY KIM, DEBTWIRE

24        (TELEPHONICALLY)

25

Page 9

1

2  NATE OAKES, STONE LYON CAPITAL PARTNERS

3        (TELEPHONICALLY)

4

5  JOHN NOVAK, BARCLAYS CAPITAL, INC.

6        (TELEPHONICALLY)

7

8  BYUNG S. PARK, BANK OF AMERICA

9        (TELEPHONICALLY)

10

11  DENNIS A. PRIETO, AURELIUS CAPITAL MANAGEMENT

12        (TELEPHONICALLY)

13

14  JAY STEEN, TALAMOD ASSET MANAGEMENT, LLC

15        (TELEPHONICALLY)

16

17  DANIEL YOUSIF, OCH-ZIFF

18        (TELEPHONICALLY)

19

20  DUSTIN TILLMAN, UBS SECURITIES, LLC

21        (TELEPHONICALLY)

22

23  RICHARD PAIGE, PERRY CAPITAL

24        (TELEPHONICALLY)

25

1          P R O C E E D I N G S

2          THE COURT:  Have seats, please.  All right, GM.  We

3     have a continued hearing on the disclosure statement.  I'll

4     hear an update from you, Mr. Karotkin, on where we are.  I do

5     have to note that some of the late submissions I got are

6     troublesome to me.

7          First, because they are at least seemingly rearguing

8     things upon which I already ruled last time.  And also, because

9     I thought I had said I don't know how many times, that the

10    purpose of a disclosure statement is not to give individualized

11    attention to a particular creditor's concerns.  I'm thinking in

12    particular of Onondaga County.

13          With that said, let me hear where we are,

14    Mr. Karotkin.

15          MR. KAROTKIN:  Thank you, Your Honor, Stephen

16    Karotkin, Weil Gotshal & Manges, for the debtors.

17          As we discussed with you at the hearing last week

18    when we announced the agreement among us, and the government,

19    and the creditors' committee, we revised the plan and

20    disclosure statement to reflect the appropriate changes, as

21    well as to address some other clean-up matters.  We distributed

22    it by either e-mail or Federal Express Friday evening to all of

23    the sixty or so parties that had filed formal objections, as

24    you had directed us.  Notified them that the hearing would be

25    held at 2:00 o'clock today, and that if they had any issues,

MOTORS LIQUIDATION COMPANY, et al.

Page 11

1    that they should let us know by 10:00 a.m. this morning.

2          The only thing that we have received is the item you

3    mentioned from Onondaga County.  We received both a letter and

4    then there was a more formal objection we received this

5    morning, which basically said the same thing in the letter.

6    And we also received an objection, a joint objection on behalf

7    of the asbestos claimants' committee, and on behalf of the

8    future claimants' representative.

9          We have with us today, Your Honor, a revised draft of

10   the disclosure statement and the plan which reflect changes

11   since Friday evening, and I'm happy to go through those with

12   you.  I don't believe anything is substantive.  I believe that

13   most of it is clean-up and making one document consistent to

14   the other, in addressing any item we may have missed in the

15   final review.

16         We have filed both the revised plan and disclosure

17   statement with the Court immediately prior to this hearing.  We

18   also have the Asbestos Trust agreement and the claims

19   distribution procedures with respect to the Asbestos Trust.

20   Mr. Swett and I have gone through comments on those documents

21   as well.  We have some minor changes to those documents, which

22   I believe have been agreed upon, although I think Mr. Swett may

23   be on the phone, he said it might be subject to some further

24   review, but I don't believe, other than one item, there's

25   anything substantive.  And we all agreed that we would reserve

Page 12

1    any dispute with respect to that item until the confirmation

2    hearing, because I don't think it really goes to the issue of

3    disclosure at all.  So I think that those documents are ready

4    to go out as well.

5           I think just subject to Your Honor addressing the

6    objections that have been filed, I believe that we are ready to

7    present an order to you for signature.  I believe that

8    Mr. Jones is prepared to stand up and address the Court and say

9    that he's satisfied with the revised drafts.  And I believe

10   that Mr. Schmidt from the Kramer Levin firm on behalf of the

11   creditors' committee is prepared to do the same.

12          And we certainly do from the debtor's standpoint

13   appreciate the time that they invested working with us to get

14   these documents finalized.

15          THE COURT:  All right.  Well, I wonder if I should

16   hear from the objectors.  I'll just assume that what you said

17   about Mr. Jones' and Mr. Schmidt's position is accurate.

18   Mr. Jones.

19          MR. JONES:  Your Honor, it is, this is David Jones

20   from the U.S. Attorney's.

21          THE COURT:  All right.  Mr. Schmidt.

22          MR. JONES:  Subject to just the last tweaks they just

23   put in, but I'm sure we're fine.

24          THE COURT:  Okay.

25          MR. SCHMIDT:  That's correct, Your Honor.

09-50026-mg   Doc 8395   Filed 12/08/10   Entered 01/06/11 14:20:58   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 13 of 43

Page 13

```
 1          THE COURT:  All right.  Does counsel for Onondaga
 2   have anything to say that it didn't articulate in the
 3   supplemental objection?
 4          All right.  Hearing no response.  On the papers, I'm
 5   overruling that objection.  I've already ruled on these matters
 6   in both, because I've already ruled, and because as I've said
 7   900 times, the purpose of a disclosure statement is not to
 8   individually address any particular constituent's individual
 9   problems.  That objection is overruled.
10          I'll hear from Mr. Esserman on the asbestos related
11   issues.
12          MR. ESSERMAN:  Your Honor, Sandy Esserman for the
13   FCR.  We were fine with the disclosure statement that was sent
14   out last week, and the changes that were made in it directly, I
15   think, affected us and we were not consulted and we didn't know
16   about it.  So these were all new things, and I understand Your
17   Honor's view, which I share, that the disclosure statement s
18   not for plan objections, which are reserved, we understand
19   that.  We really tried to just make it a pure disclosure issue
20   and we've got --
21          THE COURT:  Well, if you subscribe to that view,
22   Mr. Esserman, then why did I see an element of your objection
23   where on the one hand in paragraph seven, where you talk about
24   a list of affiliates and divisions of the debtors, that the
25   debtors believe that have had indirect claims against them, and
```

Page 14

1    if the debtors don't wish to put this information in the

2    disclosure statement, they should nevertheless be directed to

3    provide it to you by some other means.  That exactly walks,

4    talks, and quacks like a non-disclosure objection.  It's just

5    something to achieve your own private agenda with.

6            MR. ESSERMAN:  May I respond?

7            THE COURT:  Of course you may.

8            MR. ESSERMAN:  That was not the intention at all.  It

9    was just almost the opposite.  It was to make it easy on the

10   debtor to get the disclosure statement out, that if they didn't

11   feel they wanted to add this information, which I think should

12   be added in a disclosure statement, that I was willing to say,

13   okay, you don't have to put it in, if you don't think it's that

14   important, we would like it, but I think it is -- should go in.

15   We're just strictly trying to be accommodating to the debtor,

16   to get the disclosure statement out, which we want to do, and

17   we think is important, and that was the purpose of that

18   statement.

19           We do think we've made our points in our paper which

20   Your Honor's obviously read.  There were things that occurred

21   in the draft Friday which were frankly some of them fundamental

22   to the plan and disclosure statement, and we think that they're

23   not adequately described.  They're new.  They're nothing that

24   we were involved in, nothing that we created, and were sort of

25   sprung on us, and they're all in our papers.  There's just five

09-50026-mg   Doc 8395   Filed 12/08/10   Entered 01/06/11 14:20:58   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 15 of 43

Page 15

1   sort of discrete points.

2          We've got a new definition of an indirect asbestos

3   claim.  That came in out of the blue, very complicated.  We've

4   got a transfer of insurance, asbestos insurance assets to the

5   DIP lender's trust.  That came out of the blue.  We've got a

6   DIP lender's lien that's going to attach to the Asbestos Trust

7   cash.  That came out of the blue.  We don't understand what

8   that happened, how the trust can operate, if in fact, it has a

9   lien on its cash by the DIP lenders, what that means.

10          We have a new protection added of Remy International,

11   and why that was done is unclear to us.  And finally, on the

12   ACC point, the asbestos committee point, all of a sudden out of

13   the blue, the asbestos committee been dissolved on the

14   effective date, but the creditors' committee continues and

15   there's estimation which could occur post effective date, and

16   it was unclear to us why -- what the reasoning was behind any

17   of this.

18          Once again, we understand the objections to the plan,

19   it may encompass some of these points, but we think that when

20   you make a right turn as sharp as they were made in this

21   situation, some explanation should be in the document.  That

22   was all.

23          THE COURT:  All right.

24          MR. ESSERMAN:  Thank you.

25          THE COURT:  Mr. Karotkin.

1          MR. KAROTKIN:  I think that what Mr. Esserman is

2    ignoring is what Your Honor mentioned, I think at the outset,

3    is that the disclosure statement is for purposes of disclosure,

4    and making sure there is accurate disclosure.  And these items

5    that he mentioned are not fundamental to the disclosure

6    statement, and I think Your Honor put your finger on it when

7    you mentioned the paragraph in there dealing with former

8    affiliates of the debtor.

9          Now, if I could, I could just address each of his

10   points I think relatively quickly.  With respect to the

11   insurance, asbestos insurance assets, for disclosure purposes,

12   the disclosure statement is absolutely clear.  Mr. Esserman has

13   no misunderstanding about what it says, and what the plan says.

14   It perfectly clearly says that those assets go to the United

15   States government.  They don't go to the GUC Trust and they

16   don't go for the benefit of the Asbestos Trust.  That's

17   perfectly clear.

18          There is no need, Your Honor, to put in a disclosure

19   statement the history of the development of the provisions in

20   the plan as to how those distribution provisions were arrived

21   at.  That's not the purpose of the disclosure statement.  The

22   purpose of the disclosure statement is to tell people what they

23   are getting or what they are not getting.  And that's

24   absolutely clear in here.

25          As to the next point, the indirect asbestos claim

MOTORS LIQUIDATION COMPANY, et al.

Page 17

1    issue and Remy, they are linked and again, that's easily

2    explaining or addressed from a disclosure standpoint.  What

3    Mr. Esserman, I think neglects to mention to the Court is there

4    are two full single-spaced typewritten pages in the disclosure

5    statement dealing with Remy, Remy's claims, how they are

6    addressed, and why it is now a protected party.  I don't think

7    there can be any mistake about that and --

8            THE COURT:  Can you either --

9            MR. KAROTKIN:  Yes, I can tell you --

10           THE COURT:  -- on your own or with help of one of

11   your colleagues tell me where that is?

12           MR. KAROTKIN:  Sure.  I don't know whether you have a

13   clean or a marked, sir?

14           THE COURT:  It's marked.

15           MR. KAROTKIN:  If you look at the marked one, page --

16   starting on page 51, paragraph 17, going to the next page on

17   paragraph 18, I think you have the same one I'm looking at.

18           THE COURT:  Settlement with Remy International, Inc.?

19           MR. KAROTKIN:  Correct.

20           THE COURT:  Give me a moment.

21   (Pause)

22           THE COURT:  All right.  Continue, please.

23           MR. KAROTKIN:  Again, if the asbestos committee or

24   the FCR believe that Remy should not have the status of a

25   protected party, again, you addressed this the first time we

MOTORS LIQUIDATION COMPANY, et al.

Page 18

1    were here.  You said when that issue was raised as to New GM,

2    that that was a confirmation objection, and the same would hold

3    today as well.

4            Again, there is sufficient disclosure.  Moreover, I

5    would --

6            THE COURT:  Confirmation objection or have I passed

7    on that settlement yet?

8            MR. KAROTKIN:  No, and it'll be the subject -- that

9    settlement I believe will be heard at the confirmation hearing,

10   so they can raise it then as well.

11           THE COURT:  So there still is an opportunity to

12   object to that if somebody believes the estate is giving away

13   the store?

14           MR. KAROTKIN:  And I would point out, Your Honor,

15   this is really like a tempest in a teapot, because as far as

16   Remy is concerned, Remy, as I'm sure you just read, bought a

17   division from General Motors back in 1994, and it had an

18   indemnification for, among other things, asbestos liability.

19   There were certain lawsuits brought against Remy prior to the

20   Chapter 11 filing, on account of asbestos liability from the

21   former operations of New GM.  None of those cases went -- no

22   judgments were ever entered in any of those cases.  They were

23   all dismissed.

24           So in terms of any impact, again, we assume -- we

25   believe the disclosure is more than adequate, but any impact on

1   the trust is negligible, if at all.  So I think this is really

2   being raised for -- I really can't understand why this is being

3   raised by the asbestos committee, and I think that addresses

4   the indirect asbestos claim again as I said, as well as Remy

5   being a protected party.

6           As to the issue with respect to the DIP lender's

7   liens attaching to the two million dollars to go to the

8   Asbestos Trust, we have made that very clear to them before,

9   that notwithstanding that the lien continues, there are no

10  restrictions.  And I believe Mr. Jones will stand up and

11  confirm it, that there are no restrictions being imposed by the

12  United States Treasury, with respect to the use of that two

13  million dollars.

14          THE COURT:  Did that two million bucks start as

15  government collateral?

16          MR. KAROTKIN:  All -- well, that's proceeds of the

17  DIP loan, so effectively, yes.

18          THE COURT:  Uh-huh.

19          MR. KAROTKIN:  So I mean, if I could ask Mr. Jones to

20  stand up and confirm that.

21          MR. JONES:  Again David Jones, Your Honor.  Yes,

22  that's exactly correct.  This funding is -- derives directly

23  from a portion of the DIP facility that's been funding

24  administration of the estate in general.  Treasury simply

25  wanted to maintain its liens until and unless those funds are

Page 20

1   expended, but Treasury authorized me to represent today that it

2   doesn't intend to control or interfere with the Asbestos Trust

3   expenditure of those funds in any way.

4          THE COURT:  Uh-huh.

5          MR. KAROTKIN:  And the last issue that was raised in

6   the pleading, Your Honor, was with respect to the dissolution

7   of the asbestos claimants committee on the effective date.

8          Your Honor, it's our assumption that based on the

9   current schedule, and I think based on other things that are

10  likely to happen, that the issue of the estimate of the

11  asbestos claim will be disposed of prior to the effective date.

12  If it's not, we have no objection to the asbestos committee and

13  the FCR staying in existence until that litigation is

14  determined, and the only issue with respect to that, that I

15  believe has already been discussed and addressed, is the

16  funding in the budget to fund that litigation, which we talked

17  about the last time we were here, which was limited to four

18  million dollars from, I believe, November 1st going forward.

19         But I believe for all practical purposes, Your Honor,

20  that that litigation will be disposed of and this will not be

21  an issue.

22         THE COURT:  All right.  I dealt with something very

23  similar in Chemtura, and it's not a disclosure statement issue,

24  but if you had to try to dissolve them while they still had

25  ongoing litigation, just as that troubled me in Chemtura, it

09-50026-mg    Doc 8395    Filed 12/08/10    Entered 01/06/11 14:20:58    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 21 of 43

Page 21

1    would trouble me here.  But you're saying that that isn't going

2    to be an issue because although you don't think it's likely to

3    continue to that point, if it does, they will stay in existence

4    to the extent necessary to complete their duties in that

5    regard?

6           MR. KAROTKIN:  That is correct, subject to the

7    budget.

8           THE COURT:  All right.  Can you add a sentence that

9    says that?

10           MR. KAROTKIN:  Sure, of course.

11           THE COURT:  All right.

12           MR. KAROTKIN:  And unless Your Honor has any

13    questions, that's all I have.

14           THE COURT:  All right.  Do any of the other major

15    parties want to be heard before I give Mr. Esserman a chance to

16    reply?

17           No.  Mr. Esserman, anything further?

18           MR. ESSERMAN:  A few quick things.  Thank you, Your

19    Honor.  All of this has been very helpful, and we did not know

20    it before we walked into court today, and I think making a

21    record on this solves a lot of our issues.

22           The only one that I think really wasn't addressed was

23    the insertion on Friday of the indirect asbestos claims and

24    what that means.  What I thought I heard Mr. Karotkin say was

25    that he believes that any import of that is -- would be

MOTORS LIQUIDATION COMPANY, et al.

Page 22

1    negligible if at all.  If he wants to add a statement to that

2    effect, that that's what he views the indirect asbestos claim

3    definition as doing, we can handle the other inquiries outside

4    of the courtroom.

5              THE COURT:  All right.  Mr. Karotkin?

6              MR. KAROTKIN:  May I speak from here?

7              THE COURT:  I'd prefer if you don't.

8              MR. KAROTKIN:  Okay.

9              THE COURT:  Since people are on the phone.

10             MR. KAROTKIN:  Sorry.  As I said, I think the

11    disclosure is more than adequate on the indirect asbestos

12    claim, and I don't think it's necessary to have any further

13    representations in that regard.

14             THE COURT:  Where is the discussion of the indirect

15    asbestos claim?

16             MR. KAROTKIN:  Well, I know it's in the -- there's a

17    defined term in the plan, Your Honor.

18             MR. ESSERMAN:  May I approach, Your Honor, I --

19             THE COURT:  Yeah, why don't you approach Mr. Karotkin

20    and help him.

21             MR. ESSERMAN:  That's what I was meaning.  17 I think

22    is where it is, 17.

23             MR. KAROTKIN:  Here?

24             MR. ESSERMAN:  Well, to the disclosure statement that

25    was given to us on Friday.

MOTORS LIQUIDATION COMPANY, et al.

Page 23

1          MR. KAROTKIN:  I don't think so.  No.

2          THE COURT:  CourtCall, do you want to mute everybody

3     who's on the line, please?

4          MR. KAROTKIN:  Sandy, that's the plan, not the

5     disclosure statement.  I don't believe there is any discussion

6     of the indirect asbestos claim in the disclosure statement.

7     It's a defined term in the plan.

8          As I said, Your Honor, I don't believe that this is

9     material to the recovery of an asbestos claim, and under the

10    plan, in view of the ultimate magnitude of the asbestos claims

11    in this case versus the other claims in this case, which are

12    going to be in excess likely of 30 billion dollars.  And

13    whether or not Remy or another party might have a contingent

14    claim against the Asbestos Trust is not going to have any -- in

15    a million years, any material impact on the recovery of an

16    asbestos claimant.

17         THE COURT:  Is the concept of an indirect asbestos

18    claim that it would be subject to 502(e) attack if it weren't

19    settled away?

20         MR. KAROTKIN:  It could be, although I don't know

21    that the Trust would have the authority to do that.  But, yes,

22    it would be subject to a 502(e) attack.  But again, Your Honor,

23    we're talking about someone like Remy, really it was designed

24    for Remy, which to date, number one, will be a protected party,

25    and two, to date, the total -- again, no judgments have ever

Page 24

1    been entered against Remy where they could -- where another

2    party could seek contribution, or we're not aware of anyone who

3    has paid claims on behalf of Remy that could seek contribution

4    against the Trust.

5           Because an indirect claimant is someone who's seeking

6    contribution against the Trust on -- because they paid a GM

7    liability, so I don't think it's material.

8           THE COURT:  Okay.  Everybody had a chance to speak

9    their piece?  Sit in place.

10   (Pause)

11          THE COURT:  All right.  Ladies and gentlemen, the

12   debtor is to add a sentence or two to its latest version of

13   disclosure statement that is going to state in substance, and

14   it may be varied to the extent to make it more accurate.

15          That the debtors do not anticipate that the

16   estimation proceedings with the asbestos claimants' committee

17   and the future claim representative will continue past the

18   effective date, that being sentence number one.

19          Sentence number two, but they further intend that if

20   the estimation proceeding is not completed, the asbestos

21   committee, and if applicable, the future claims representative

22   will continue their juridical status to the extent necessary to

23   fulfill their functions.

24          That is, in my view, all that is required to deal

25   with that.  Similarly, the debtors are to add in consultation

MOTORS LIQUIDATION COMPANY, et al.

Page 25

```
 1   with the Treasury, one or more sentences that provide in

 2   substance vis à vis the money that is being put into the Trust,

 3   that the government has stated in open court, that while the

 4   cash to be contributed will come from its DIP, and is cash that

 5   is its collateral, it does not intend to impose control over

 6   the use of that cash after whatever is the relevant date.

 7           You may, of course, more crisply and accurately state

 8   exactly what Mr. Jones said.  I don't intend it to be different

 9   in any way, but of course, it can be cleaned up if that's

10   appropriate.

11           The other matters that are asserted to be necessary

12   for adequate disclosure, are in my view, not.  And the

13   remaining objections are overruled.  In my view, the purpose of

14   the disclosure statement is to tell the creditor how he/she or

15   it will be treated.  It does not require a historical

16   discussion or a discussion of the reasons for that treatment.

17           Other matters are insufficiently material to inform

18   the decision-making judgment of the reasonable creditor who we

19   will be targeting with this disclosure statement.  I will say

20   for the avoidance of doubt, particularly in the context of the

21   Remy issues, that my comments as to what is necessary for a

22   disclosure statement are wholly without prejudice to the rights

23   of any party in the case, most significantly the asbestos

24   claims committee or the future claims representative, to object

25   to the Remy settlement at an appropriate time, and of course,
```

MOTORS LIQUIDATION COMPANY, et al.

Page 26

1    for those with a different point of view to be heard with

2    respect to their own respective positions.

3            Also for the avoidance of doubt, I'm saying that

4    after the debtors have put in the two or three or four

5    sentences that I'm requiring, they don't need to come back to

6    me for a fourth hearing.  And I expect that as soon as this is

7    done, which I would assume would take you half an hour tops, an

8    hour tops, you'll give me a final disclosure statement, and a

9    disclosure statement order for my review and signature.

10           Mr. Karotkin, what else do we have?

11           MR. KAROTKIN:  We have provided to the committee, to

12   the government, and to Mr. Esserman, the changes since Friday,

13   Your Honor.  I don't know if you would like me to go through

14   those.

15           THE COURT:  With all the meters that are running in

16   the courtroom, Mr. Karotkin, and the discussions we've had

17   before about preserving the taxpayers' cash and administrative

18   costs, I'd like you to limit your discussion to anything you

19   regard as essential.

20           MR. KAROTKIN:  I don't think there's anything

21   essential.  I think most of it is clean-up.  We did change the

22   distribution record date.  We changed that from the effective

23   date to the confirmation date, in order to be in a position to

24   expedite distributions once the effective date occurs.

25           The remaining changes are just clean-up to make it

MOTORS LIQUIDATION COMPANY, et al.

Page 27

1    consistent with revisions that were made to the plan, and I

2    don't believe it's necessary to use the taxpayers' money to

3    address that.

4            THE COURT:  All right.  Anything else from anybody?

5            MR. KAROTKIN:  There -- I'm sorry, there are a couple

6    of other things.

7            THE COURT:  Oh, forgive me, go ahead.

8            MR. KAROTKIN:  Your Honor, oh, one other thing that

9    Mr. Schmidt asked me to mention to the Court.  The committee

10   has prepared a letter recommending acceptance to the plan that

11   we would include in the package, the solicitation package to go

12   out as well.

13           THE COURT:  Okay.  That's the official creditors'

14   committee.

15           MR. KAROTKIN:  Correct, correct.  The other things we

16   have to go through are proposed dates to be inserted.

17           THE COURT:  Okay.  Am I going to need Ms. Blum for

18   that, or is this stuff --

19           MR. KAROTKIN:  Yeah.

20           THE COURT:  -- you've precleared?

21           MR. KAROTKIN:  I think that we're going to need

22   Ms. Blum, but before we get there, there is one other thing.

23   Your Honor, we intend to set an administrative bar date, and in

24   order to expedite matters, and to save money, in terms of

25   giving notice to people, we would like to include that notice

MOTORS LIQUIDATION COMPANY, et al.

Page 28

1  in the solicitation package, which will be distributed to --

2  over two million people, I believe.

3          So in order to save another mailing, with the

4  indulgence of the Court, we would like to present to the Court

5  an agreed order with the creditors' committee and whoever else

6  you would direct, establishing that bar date.

7          THE COURT:  And this will be in a single envelope to

8  the recipient?

9          MR. KAROTKIN:  This will be part of the solicitation

10 package.

11         THE COURT:  All right.

12         MR. KAROTKIN:  And we would ask that we include in

13 the order approving the disclosure statement authority as well,

14 once that date has been set, and we know the exact terms.  In

15 the notice we intend to publish, which is an exhibit to the

16 disclosure statement order of the confirmation hearing, the

17 objection deadline and the procedures for that to include a

18 paragraph notifying everyone as well of the administrative bar

19 date, and that would be in the published notice only.  There

20 would be a separate mailed notice of that.

21         THE COURT:  I'm not offended by the idea of just

22 providing me with a consent order, Mr. Karotkin.  But is there

23 a way by which your papers, with respect to the bar date, can

24 be printed on a different color of paper or something like

25 that, so they won't be mixed up and camouflaged with what I

Page 29

1    suspect is going to be a monstrous set of solicitation

2    materials?

3           MR. KAROTKIN:  I've been told that we can do that.

4           THE COURT:  Good.  Because I have problems with

5    camouflaging a bar date.

6           MR. KAROTKIN:  Okay.  We will do that.  The other

7    item I think is with respect to -- let me just go back.

8    Previously, Your Honor has authorized us to file omnibus

9    objections with respect to bond claims filed in the United

10   States.  Basically, those were duplicate claims of those filed

11   by the indentured trustees, where individuals had actually

12   filed claims, and in order to deal with them expeditiously, you

13   had authorized us to do that.

14          We're also going to seek authority from Your Honor to

15   do the same with respect to the Euro bonds.  Again, that would

16   be to address those individuals who had filed individual claims

17   with respect to the Euro bonds, which really are duplicative --

18   excuse me.

19   (Pause)

20          THE COURT:  Mr. Karotkin, Mr. -- Ms. Blum has just

21   told us that CourtCall has commented that some of the people

22   who are listening in on the phone are having trouble hearing,

23   and CourtCall requests that everybody speaking in the courtroom

24   speak very loudly into their microphones.

25          MR. KAROTKIN:  Okay.  Again, this would relate to the

Page 30

1   holders of Euro bonds, who have filed individual claims, which

2   are duplicative of the claim, the claims that have been filed

3   by the fiscal paying agencies, which are being allowed under

4   the plan.  And in order to expedite matters and to avoid all of

5   those people voting on the plan, which would be costly and an

6   administrative nightmare, we would like to submit a proposed

7   order to you as well, on presentment to address that issue, in

8   the next couple of days.

9           THE COURT:  All right.  And they will be covered

10  because a -- these obligations have been scheduled, and they

11  don't need to do it to protect their underlying rights of

12  recovery?

13          MR. KAROTKIN:  Better than that, they are allowed --

14  those claims are allowed pursuant to the plan.  There's an

15  exhibit to the plan.  Mr. Smolinsky clarified.  The fiscal

16  agents have not filed claims, but under the plan, these claims

17  are allowed.

18          THE COURT:  Okay.

19          MR. KAROTKIN:  There's an exhibit to the plan.

20          THE COURT:  So it's no harm, no foul --

21          MR. KAROTKIN:  Correct.

22          THE COURT:  -- to the individual people with the

23  economic piece of the action.

24          MR. KAROTKIN:  Yes.  And they will have the

25  opportunity to vote on the plan, pursuant to -- through a

09-50026-mg    Doc 8395    Filed 12/08/10    Entered 01/06/11 14:20:58    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 31 of 43

Page 31

1    master ballot, that procedure.

2            THE COURT:  Okay.  So they will be told -- there

3    isn't a claims allowance issue here, but they will be told that

4    the contact, whoever's going to be filing the master ballot on

5    their behalf, how they want to vote?

6            MR. KAROTKIN:  That's correct.  Or they can vote

7    individually in that same procedure just like any U.S. bond

8    holder could as well, but they won't be disenfranchised.

9            THE COURT:  Okay.  That's fine.

10            MR. KAROTKIN:  And I think the last item is --

11            MR. SMOLINSKY:  The asbestos order.

12            MR. KAROTKIN:  Yeah.  We have agreed on the

13    scheduling order for the asbestos estimation hearing.  That was

14    the subject of the hearing last week.

15            THE COURT:  Is that a four-way agreement between you

16    and the creditors' committee and the future claims rep and the

17    asbestos claims committee?

18            MR. KAROTKIN:  Yes, sir.

19            THE COURT:  That's okay.  You can drop it off with

20    Ms. Blum on your way out.

21            MR. KAROTKIN:  Okay, but before we do that, we

22    thought we would talk about scheduling for the confirmation

23    hearing.

24            THE COURT:  Right.  Is Ms. Blum still here?

25            MR. KAROTKIN:  Yes, right there.

MOTORS LIQUIDATION COMPANY, et al.

Page 32

1              THE COURT:  Okay.

2              MR. KAROTKIN:  Now, I -- if I could suggest a few

3      dates, Your Honor, moving down the line in terms of how we

4      would solicit.  We would ask that the voting record date with

5      respect to the plan be today.

6              THE COURT:  That's a matter of indifference to me.

7              MR. KAROTKIN:  Okay.  And we would ask that we would

8      have all of the mailing of the solicitation materials completed

9      by December 28th.

10             THE COURT:  Okay.  If you and your claims agent think

11     you can get it done by then, that's all right with me.

12             MR. KAROTKIN:  Yes.  We've discussed it with them,

13     and we think that allows sufficient time.

14              In terms of a voting deadline, we had originally

15     mentioned to you a couple of hearings back, sixty days, we

16     would like to try to make that happen more quickly in order to

17     expedite distributions to people.  And we would suggest, if we

18     could have a voting deadline February 10th.

19             THE COURT:  Is that roughly six weeks?

20             MR. KAROTKIN:  I think it's 45 days or 46 days.

21             THE COURT:  That would be no problem for U.S.

22     creditors.  Do you have a material number of foreign creditors

23     whose ox might be gored by that?

24             MR. KAROTKIN:  We do have foreign creditors, but we

25     don't believe their oxes will be gored.  We are told that it

MOTORS LIQUIDATION COMPANY, et al.

Page 33

1    can be done relatively expeditiously in Europe as well.

2                THE COURT:  Okay.  So you're talking February 10 for

3    the voting deadline?

4                MR. KAROTKIN:  Yes.  If you'd like to make it

5    February 11th, that's a Friday.

6                THE COURT:  All right.  Give it to him.

7                MR. KAROTKIN:  Okay.  And then we come -- and in

8    terms of the confirmation objection deadline, we would ask that

9    it be February 11th as well.

10               THE COURT:  I think that's okay.  I take it that your

11   assumption is that the objections are going to be based on the

12   usual stuff upon which confirmation objections are raised,

13   rather than anything whose outcome would depend on knowing the

14   votes -- the results of the voting?

15               MR. KAROTKIN:  Yes, sir.

16               THE COURT:  Okay.

17               MR. KAROTKIN:  And then in terms of reply to the

18   objections, ten days.

19               THE COURT:  If you can respond in ten days, that's

20   fine with me.  My principal concern is the gap period between

21   the time that I get the last brief and the beginning of the

22   confirmation hearing.

23               MR. KAROTKIN:  Yeah, yeah.  I thought --

24               THE COURT:  So --

25               MR. KAROTKIN:  -- we could perhaps back into those

MOTORS LIQUIDATION COMPANY, et al.

Page 34

1   dates.

2           THE COURT:  Well, ten days by my calendar, if we have

3   a deadline of the 11th for confirmation objections, would get

4   you on President's Day, which is a federal holiday.  Somehow I

5   suspect that you and your colleagues are not going to be taking

6   off for President's Day.  But you're going to have difficulty

7   filing that day.  I mean, you can do it by e-mail, our e-mail

8   works on weekends.

9           MR. KAROTKIN:  Or we can make it the next day.

10          THE COURT:  All right.  Why don't you do it on the

11  22nd.

12          MR. KAROTKIN:  Okay.

13          THE COURT:  That's confirmation replies?

14          MR. KAROTKIN:  Yeah, that's confirmation objection

15  replies.  And then in terms of the confirmation hearing; and

16  that's subject, obviously, to your call and --

17          THE COURT:  Yes.  It's also subject to the

18  uncertainty as to whether or not it's going to need to be an

19  evidentiary hearing.

20          MR. KAROTKIN:  Yeah.

21          THE COURT:  Which would depend in part on the nature

22  of the objections.

23          MR. KAROTKIN:  Yeah.

24          THE COURT:  But I had always assumed that the

25  principal evidentiary hearing issue that I have coming up is

09-50026-mg    Doc 8395    Filed 12/08/10    Entered 01/06/11 14:20:58    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 35 of 43

Page 35

1    the asbestos issues, which I have on my calendar as --

2              MR. KAROTKIN:  1st, 2nd and 3rd, I think.

3              THE COURT:  Yes.  Well, actually, I had it on the

4    1st, 2nd and 7th.  Did I make a mistake there?

5              MR. KAROTKIN:  1st, 2nd and 3rd.

6              THE COURT:  1st, 2nd and 3rd of March?

7              MR. KAROTKIN:  That's what -- no, Helene?

8              THE CLERK:  I don't know.

9              MR. KAROTKIN:  I thought that's what you had said

10   when we were here last week.

11             THE COURT:  I said enough of it so that I wrote on my

12   personal calendar, asbestos for 9:45 on Tuesday, the 1st, and

13   Wednesday, the 2nd, but for some reason I'd also put it on

14   Monday, the 7th.  Maybe that was my original thinking as to

15   what I was going to offer you and it was later changed, I'm not

16   sure.

17             MR. KAROTKIN:  I don't know your availability on the

18   3rd.

19             THE COURT:  Is that an issue now, Helene?  Other than

20   the fact everybody else is going to be complaining.

21             Yeah, the 3rd will be available too if you need it.

22             MR. KAROTKIN:  I have one suggestion, Your Honor,

23   again, obviously subject to your convenience and calendar.  I

24   am very, very hopeful that either the asbestos estimation

25   hearing won't go as long as anticipated, or I'm even more

Page 36

1   hopeful it will be resolved, so that you won't have to have

2   that hearing.  And what if we were to set the confirmation

3   hearing for March 2nd?

4           THE COURT:  If, but only if you have a deal with the

5   asbestos representatives?

6           MR. KAROTKIN:  Either that or if you're not finished

7   with that, at least I can announce the adjourn date on the

8   2nd, and hopefully carry it on the 3rd.  I mean, I don't really

9   -- I'm trying not to impose on you.

10          THE COURT:  Help me better understand.  I mean, the

11  idea, I take it, is to try to get money into the pockets of

12  creditors as quickly as possible.

13          MR. KAROTKIN:  Correct, sir.

14          THE COURT:  And what you're saying is that if you can

15  put the pieces together, and get peace in the valley on the

16  asbestos issues, then that would be, as a practical matter, the

17  major impediment to dealing with confirmation, other than the

18  flotsam and jetsam confirmation issues that always seem to

19  materialize, then that could save several weeks in terms of

20  getting money out to creditors, money and other consideration?

21          MR. KAROTKIN:  Yes, I think so, although I'm not sure

22  that if asbestos is not finally resolved prior to the

23  confirmation hearing, that it'll necessarily hold up

24  distributions, because I think Your Honor could cap the amount

25  of the claim for distribution purposes.  But what I'm really

09-50026-mg    Doc 8395    Filed 12/08/10    Entered 01/06/11 14:20:58    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 37 of 43

Page 37

1    trying to say is, I'm hopeful that asbestos will be resolved.

2            THE COURT:  Yeah, I think -- I pause, Mr. Karotkin,

3    because while you're analytically correct, wouldn't that

4    require simply a different kind of estimation?

5            MR. KAROTKIN:  I don't think so.  In fact, I think

6    that under those circumstances, we might even be possible to

7    get an agreement on a cap.

8            THE COURT:  All right.  So what you would like to do

9    is use the 3rd of March as a confirmation hearing holding date,

10   and if the ducks are not in a row on the 3rd, to announce to

11   the world that the hearing will commence at a later date?

12           MR. KAROTKIN:  Yeah.  Or that if you've completed the

13   asbestos hearing on the 1st or the 2nd, then we could go ahead

14   with confirmation on the 3rd in any event.

15           THE COURT:  Well, does that presuppose a ruling on

16   the 2nd?

17           MR. KAROTKIN:  No.  Nope.  I don't think it's

18   necessary for you to rule on the asbestos to move forward with

19   the confirmation hearing.

20           THE COURT:  All right.  On these latter issues I need

21   to give others an opportunity to weigh in, starting with you,

22   Mr. Schmidt, if you wish.

23           MR. SCHMIDT:  Your Honor, we think it's a reasonable

24   time period, and we should strive to keep that early March date

25   if possible.

09-50026-mg    Doc 8395    Filed 12/08/10    Entered 01/06/11 14:20:58    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 38 of 43

Page 38

1           THE COURT:  All right.  Mr. Jones?

2           MR. JONES:  Your Honor, the United States also

3    agrees.  We're very interested in moving as expeditiously as

4    possible, and this makes sense to us.

5           THE COURT:  Okay.  Do I have anybody from the

6    asbestos committee here or on the phone?

7           MR. REINSEL:  Your Honor, Ronald Reinsel from Caplin

8    & Drysdale on behalf of the asbestos committee.

9           THE COURT:  Do you want to weigh in on that,

10   Mr. Reinsel?

11          MR. REINSEL:  Well, Your Honor, we would certainly

12   hope to have the asbestos estimation complete before the start

13   of the confirmation hearing.  Mr. Karotkin, I think may be

14   being ambitious there, but if we're not, that's fine.

15          THE COURT:  Okay.  Mr. Esserman?

16          MR. ESSERMAN:  Nothing to add.  I think that the

17   schedule's ambitious, but let's be ambitious.

18          THE COURT:  Okay.  I'll give you the 3rd as the start

19   of the confirmation hearing, Mr. Karotkin, but the legislative

20   history of this ruling is going to be that we're only going to

21   be able to accomplish what events prior to that time have

22   permitted us to accomplish.

23          MR. KAROTKIN:  We understand, sir.

24          THE COURT:  Okay.  And when you prepare the notice of

25   the confirmation hearing that presumably is going to be part of

MOTORS LIQUIDATION COMPANY, et al.

Page 39

1     this bundle, enable the reader to understand, maybe even put it

2     in boldface, I've never been a fan of caps, but boldface, that

3     says that the date of the 3rd is subject to possible change,

4     and that that change may be announced in open court on the 3rd,

5     or whatever else you think it might be announced by.

6              MR. KAROTKIN:  Okay.  We already have something to

7     that effect in there, and we will make sure that it's

8     prominent.

9              THE COURT:  Okay.  I don't want people showing up

10    when there's no party.

11             MR. KAROTKIN:  Correct.

12             THE COURT:  Okay.  What else do we have?

13             MR. KAROTKIN:  I think that does it.

14             THE COURT:  All right.  Very good.  Then as I said, I

15    needn't have any further hearings on this, put in that

16    supplemental text and get the final version to me with an order

17    for my review.

18             MR. KAROTKIN:  Can we get that to you tomorrow

19    morning?

20             THE COURT:  You can get it to my chambers tomorrow

21    morning, but I'm not going to be here tomorrow morning.  What I

22    would recommend that you do, is that you e-mail me -- the

23    unchanged portions of the document will have been

24    satisfactorily reviewed by me either tonight or taking it with

25    me.

MOTORS LIQUIDATION COMPANY, et al.

Page 40

1            On the new text, I want you to give me and the people

2     who have been your opponents on this issue, or for that matter

3     your allies, include the creditors' committee and the

4     government, blacklines showing those sentences that you added

5     at my direction, so that I can review them from the road.  I

6     don't need to review them at my desk.  I can review them

7     anywhere I am.  And is the order going to be modified from the

8     form in which it now is or is it --

9            MR. KAROTKIN:  Yes.

10            THE COURT:  When will that be ready?

11            MR. KAROTKIN:  Probably not till the morning.

12            THE COURT:  All right.  Then you'll have to e-mail

13     that as well.

14            MR. KAROTKIN:  Okay.

15            THE COURT:  With a blackline reflecting changes from

16     any of its predecessors.

17            MR. KAROTKIN:  Okay.  And in terms of the --

18            THE COURT:  Or its early -- its most recent

19     predecessor.

20            MR. KAROTKIN:  Yes, sir.  The e-mail of the new text

21     you mean to the creditors' committee, the government, the

22     asbestos committee, the future claimant's representative, and

23     that's it?

24            THE COURT:  Yeah, you have two official committees --

25            MR. KAROTKIN:  Because Mr. Esserman's objection --

Page 41

1          THE COURT:  -- you have the U.S. government and the

2     futures claims rep.

3          MR. KAROTKIN:  Okay.

4          THE COURT:  Okay.  All right.  Anything else?

5          MR. KAROTKIN:  No, sir.  Thank you very much.

6          THE COURT:  All right.  We're adjourned.

7        (Whereupon these proceedings were concluded at 2:56 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

1                              I N D E X

2

3                                   RULINGS

4                              Page        Line

5    Onondaga's objections

6    Overruled                    13         5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1

2                              C E R T I F I C A T I O N

3

4       I, Sharona Shapiro, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       Sharona

8       Shapiro
        Digitally signed by Sharona Shapiro
        DN: cn=Sharona Shapiro, o, ou,
        email=digital1@veritext.com, c=US
        Date: 2010.12.08 11:17:47 -05'00'
        _____

9       SHARONA SHAPIRO

10      AAERT Certified Electronic Transcriber (CET**D-492)

11

12      Veritext

13      200 Old Country Road

14      Suite 580

15      Mineola, NY 11501

16

17      Date: December 8, 2010

18

19

20

21

22

23

24

25