**Hearing Date and Time: February 3, 2011 at 9:45 a.m.**
**Objection Deadline: January 27, 2011 at 4:00 p.m.**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Daniel H. Golden
Philip C. Dublin
Natalie E. Levine

*Counsel for Green Hunt Wedlake, Inc.,*
*Trustee of General Motors Nova Scotia Finance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                                              :
In re:                                                        :   Chapter 11
                                                              :
MOTORS LIQUIDATION COMPANY, et al.,                           :   Case No. 09-50026 (REG)
f/k/a General Motors Corp., et al.,                           :
                                                              :   (Jointly Administered)
                               Debtors.                       :
                                                              :
                                                              :
------------------------------------------------------------- x
```

### NOTICE OF HEARING ON MOTION OF GREEN HUNT WEDLAKE, INC., TRUSTEE OF GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY, PURSUANT TO BANKRUPTCY RULE 3018(a) FOR TEMPORARY ALLOWANCE OF ITS CLAIM SOLELY FOR PURPOSES OF VOTING ON DEBTORS' PROPOSED PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that upon the Motion of Green Hunt Wedlake, Inc., Trustee of

General Motors Nova Scotia Finance Company, Pursuant to Bankruptcy Rule 3018(a) for

Temporary Allowance of its Claim Solely for Purposes of Voting on Debtors' Proposed Plan of

Reorganization, dated January 10, 2011 (the "**Motion**"),[1] Green Hunt Wedlake, Inc. (the "**Nova**

**Scotia Trustee**") shall move this Court for an order temporarily allowing the Nova Scotia

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Trustee's claim in the amount of $1,607,647,592.49 solely for purposes of voting on the Debtors'

Amended Joint Chapter 11 Plan.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be made

in writing, with a hard copy to chambers, conform to the Federal Rules of Bankruptcy

Procedures and the Local Rules of the Bankruptcy Court and be filed with the Court and served

in accordance with the *Fifth Amended Order Pursuant To 11 U.S.C. § 105(a) And Fed. R. Bankr.*

*P. 1015(c) And 9007 Establishing Notice and Case Management Procedures* in these cases

[Docket No. 8360] so as to be actually received not later than January 27, 2011 at 4:00 p.m.

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed and served

with respect to the Motion, the relief requested in the Motion may be granted without a hearing.

Dated: January 10, 2011
    New York, New York

                                       Respectfully Submitted,

                                       */s/ Philip C. Dublin*
                                       Daniel H. Golden
                                       Philip C. Dublin
                                         Natalie E. Levine
                                         Akin Gump Strauss Hauer & Feld LLP
                                       One Bryant Park
                                       New York, NY 10036
                                       Telephone:  (212) 872-1000
                                       Facsimile:  (212) 872-1002

                                       *Counsel to Green Hunt Wedlake, Inc. as Trustee of Nova*
                                     *Scotia Finance Company*

**Hearing Date and Time: February 3, 2011 at 9:45 a.m.**
**Objection Deadline: January 27, 2011 at 4:00 p.m.**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Daniel H. Golden
Philip C. Dublin
Natalie E. Levine

*Counsel for Green Hunt Wedlake, Inc.,*
*Trustee of General Motors Nova Scotia Finance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------    x
                                                       :
In re:                                                 :        Chapter 11
                                                       :
MOTORS LIQUIDATION COMPANY, et al.,                    :        Case No. 09-50026 (REG)
f/k/a General Motors Corp., et al.,                    :
                                                       :        (Jointly Administered)
                       Debtors.                        :
                                                       :
                                                       :
----------------------------------------------------------------    x
```

**MOTION OF GREEN HUNT WEDLAKE, INC., TRUSTEE OF
GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY,
PURSUANT TO BANKRUPTCY RULE 3018(a) FOR TEMPORARY
ALLOWANCE OF ITS CLAIM SOLELY FOR PURPOSES OF
VOTING ON DEBTORS' PROPOSED PLAN OF REORGANIZATION**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION AND VENUE ..............................................................................................2

BACKGROUND ........................................................................................................................2

RELIEF REQUESTED ..............................................................................................................5

ARGUMENT ..............................................................................................................................5

      A.      Temporary Allowance of the Section 135 Claim Will Not Allow the Nova
               Scotia Trustee to Overshadow the Other Votes in its Class .....................................7

      B.      Although the Claims Litigation Will Not Be Complete by the Voting
               Deadline, the Section 135 Claim is Likely to Be Allowed in Full .........................8

            i.      The Section 135 Claim is Not Duplicative of the Guarantee Claim ............9

            ii.     The Creditors' Committee is Unlikely to Prevail on its Remaining
                    Objections ...........................................................................................11

                  a.      Bankruptcy Code Section 502(d) is Inapplicable ..........................12

                  b.      The Lock Up Agreement Does Not Constitute an
                       Unauthorized 9019 Settlement .........................................................14

                    c.      Application of the Consent Fee to the Principal Amount of
                       the Notes is Inappropriate and an Unlikely Outcome ....................14

                    d.      There Are No Grounds to Equitably Subordinate the
                       Section 135 Claim ...........................................................................15

NO PRIOR REQUEST ............................................................................................................16

NOTICE .....................................................................................................................................16

CONCLUSION .........................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C̲ASES

*Armstrong v. Rushton (In re Armstrong)*,
    294 B.R. 344 (B.A.P. 10th Cir. 2003), *aff'd*, 97 F. App'x 285 (10th Cir. 2004) ..................6, 7

*Enron Corp. v. Springfield Assocs. (In re Enron Corp.)*,
    379 B.R. 425 (S.D.N.Y. 2007)................................................................................................13

*In re Amarex Inc.*,
    61 B.R. 301 (Bankr. W.D. Okla. 1985) ...................................................................................7

*In re Asia Global Crossing, Ltd.*,
    333 B.R. 199 (Bankr. S.D.N.Y. 2005)....................................................................................13

*In re DBSD N. Am. Inc.*,
    No. 09-13061 (Bankr. S.D.N.Y. Sept. 11, 2009)................................................................6, 8

*In re Gardinier, Inc.*,
    55 B.R. 601 (Bankr. M.D. Fla. 1985) ......................................................................................7

*In re Harmony Holdings, LLC*,
    395 B.R. 350 (Bankr. D.S.C. 2008)..........................................................................................6

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987),
    *aff'd*, 843 F. 2d 636 (2d Cir. 1988) .........................................................................................6

*In re Ralph Lauren Womenswear, Inc.*,
    197 B.R. 771 (Bankr. S.D.N.Y. 1996)..............................................................................6, 8, 9

*In re Thomson McKinnon Sec., Inc.*,
    191 B.R. 976 (Bankr. S.D.N.Y. 1996)......................................................................................9

*In re Zolner*,
    173 B.R. 629 (Bankr. N.D. Ill. 1994),
    *aff'd,*249 B.R. 287 (N.D. Ill. 2000) .........................................................................................6

*Northwestern Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*,
    608 F.3d 139 (2d Cir. 2010)....................................................................................................10

*Pension Benefit Guaranty Corp. v. Enron Corp.*,
    No 04-5499, 2004 WL 2434928 (S.D.N.Y. Nov. 1, 2004) ..............................................5, 6, 7

*Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*,
    818 F.2d 1135 (5th Cir. 1987) ..............................................................................................15

**STATUTES**

11 U.S.C. § 502(a) ...........................................................................................................................5

11 U.S.C. § 502(c) ...........................................................................................................................2

11 U.S.C. § 502(d) ..........................................................................................................11, 12, 13

11 U.S.C. § 1126(a) .........................................................................................................................5

28 U.S.C. § 157 ...............................................................................................................................2

28 U.S.C. § 1334 .............................................................................................................................2

28 U.S.C.§ 1408 ..............................................................................................................................2

28 U.S.C. §1409 ..............................................................................................................................2

**RULES**

Fed. R. Bankr. P. 2002.....................................................................................................................16

Fed. R. Bankr. P. 3018..................................................................................................1, 8, 9, 16, 20

Fed. R. Bankr. P. 9019.....................................................................................................11, 14, 15

Green Hunt Wedlake, Inc., in its capacity as trustee (the "**Nova Scotia Trustee**") for General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"), by and through its undersigned counsel, hereby files this motion (the "**Motion**") for entry of an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing the Nova Scotia Trustee's claim (as described below, the "**Section 135 Claim**") in the amount of $1,607,647,592.49 solely for purposes of voting on the *Debtors' Amended Joint Chapter 11 Plan* [ECF No. 8015] (the "**Plan**").[1]  In support of this Motion, the Nova Scotia Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Nova Scotia Trustee is compelled to file this Motion pursuant to the express terms of the Disclosure Statement Order,[2] which requires that in order for the holder of a Claim for which there is a pending objection to vote on the Plan, the holder of such Claim must obtain leave of this Court.  As the Court is aware, the Creditors' Committee filed an objection (the "**Claim Objection**") to the Section 135 Claim on numerous grounds including, without limitation, that the Section 135 Claim is duplicative of a proof of claim filed by certain holders (the "**Nova Scotia Noteholders**") of notes (the "**Nova Scotia Notes**") issued by GM Nova Scotia and guaranteed by MLC.  The Nova Scotia Trustee filed a response to the Claim Objection detailing the legal and factual bases for allowance of the Section 135 Claim and otherwise disputing the insufficient grounds upon which the Claim Objection is premised.  The parties are

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2] *Order (I) Approving Notice of Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Establishing a Record Date; (IV) Establishing Notice and Objection procedures for Confirmation of the Plan; (V) Approving Notice Packages and procedures for Distribution Thereof; (VI) Approving the Forms of Ballots and establishing Procedures for Voting on the Plan; and (VII) Approving the Forms of Notice to Non-Voting Classes Under the Plan* [ECF No. 8043] (Dec. 8, 2010).

1

currently negotiating a discovery schedule in contemplation of an evidentiary hearing on the allowance of the Section 135 Claim and the Nova Scotia Noteholders' proofs of claim.

2.       While the Nova Scotia Trustee believes that the Claim Objection is not well-founded and that the Court will ultimately allow the Section 135 Claim against MLC for no less than $1,607,647,592.49, litigation regarding the allowance of the Section 135 Claim will not be completed in advance of the deadline to vote on the Plan.  Accordingly, in order to ensure that it is not disfranchised from the Plan solicitation process, the Nova Scotia Trustee seeks relief from this Court under Bankruptcy Rule 3018(a) for the temporary allowance of the Section 135 Claim in the amount of $1,607,647,592.49 solely for purposes of voting on the Plan.

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory and other legal predicates for the relief requested herein are section 502(c) of title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rule 3018(a).

## BACKGROUND

6.       On July 10, 2003, GM Nova Scotia issued £350,000,000 in principal amount of 8.375% Guaranteed Notes due December 7, 2015 and £250,000,000 in principal amount of 8.875% Guaranteed Notes due July 10, 2023 pursuant to that certain Fiscal and Paying Agency Agreement among GM Nova Scotia, General Motors Corp., Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Général du Luxembourg S.A., as paying agent, dated as of July 10, 2003 (the "**Fiscal and Paying Agency Agreement**").  Pursuant to the Fiscal and Paying Agency Agreement, MLC fully and unconditionally guaranteed the repayment of the Nova Scotia Notes

2

(the "**Guarantee**").  GM Nova Scotia loaned the proceeds of the Nova Scotia Notes to GM

Canada in a series of intercompany transactions resulting in intercompany obligations owing

from GM Canada to GM Nova Scotia (collectively, the "**Intercompany Loan**").  GM Canada

then used the proceeds of the Intercompany Loan to assist in the funding of the General Motors

group's global operations.

7.      Due to events more fully discussed in the Disclosure Statement, MLC filed for

chapter 11 protection on June 1, 2009.  On October 9, 2009, the Supreme Court of Nova Scotia

entered an order declaring GM Nova Scotia bankrupt under the Bankruptcy and Insolvency Act

(the "**BIA**") and appointing Green Hunt Wedlake, Inc. as trustee of GM Nova Scotia.

8.      As of the date GM Nova Scotia was declared bankrupt, GM Nova Scotia owed:

(i) CDN $1,088,542,512.01 (US $1,042,735,554.56) in unpaid principal and interest (the "**Note**

**Liability**") to the Nova Scotia Noteholders on account of the Nova Scotia Notes and (ii) CDN

$589,292,176.53 (US $564,493,957.00) to New GM under a swap arrangement (the "**Swap**

**Liability**").[3]  In addition, GM Nova Scotia had other unpaid ordinary course liabilities, and the

Nova Scotia Trustee has incurred and continues to incur costs, charges and expenses associated

with GM Nova Scotia's bankruptcy (collectively with the Note Liability and the Swap Liability,

the "**GM Nova Scotia Liabilities**").  On November 30, 2009, the Nova Scotia Trustee filed a

proof of claim (Claim No. 66319)[4] asserting the Section 135 Claim against MLC in an amount

---

[3] MLC transferred all of its rights in connection with the Swap Liability to New GM pursuant to the 363 Transaction.

[4] Proof of claim no. 66319 amended proof of claim no. 65814, which the Nova Scotia Trustee filed against MLC on November 25, 2009.  By an omnibus objection dated September 17, 2010, the Debtors objected to proof of claim no. 65814 as duplicative of proof of claim no. 66319.  The Nova Scotia Trustee did not contest this non-substantive objection, but reserved all rights with respect to proof of claim no. 66319.  This Court entered an *Order Granting Debtors' Eighth-Eighth Omnibus Objection to Claims* [ECF No. 7667] on November 8, 2010, which expunged claim number 65814.

not less than $1,607,647,592.49, plus additional amounts allowed under the BIA, representing the full amount of the GM Nova Scotia Liabilities.

9.      On November 30, 2009, certain of the Nova Scotia Noteholders filed proofs of claim (Claim Nos. 66216, 66217, 66218, 66265, 66266, 67429, 67499, 66312, 66267, 67428, 67430, 67498, 67500, and 67501) against MLC for a total of US $758,486,107.64 based on MLC's specific contractual obligations to the Nova Scotia Noteholders pursuant to the Guarantee (the "**Guarantee Claim**").  Out of an abundance of caution, Greenberg Traurig, LLP, as counsel to certain of the Nova Scotia Noteholders, filed an additional claim (Claim No. 69551) for the full amount of the Guarantee Claim (US $1,072,557,531.72), minus the amounts asserted in the Nova Scotia Noteholders' individual proofs of claim, for a total claim of US $314,071,424.08. Additional Nova Scotia Noteholders have also filed proofs of claim on account of MLC's liability under the Guarantee of the Nova Scotia Notes.

10.     On July 2, 2010, the Creditors' Committee filed an initial objection [ECF No. 6248] (the "**Initial Claim Objection**") to the Section 135 Claim and the Guarantee Claim seeking, among other things, disallowance or equitable subordination of the Section 135 Claim and the Guarantee Claim.  On November 19, 2010, the Creditors' Committee amended the Initial Claim Objection by filing the Claim Objection [ECF No. 7859].  The Nova Scotia Trustee filed its response to the Claim Objection [ECF No. 8088] (the "**Response**") on December 13, 2010. This Court held a status conference on the Claim Objection on December 15, 2010 and the parties are currently negotiating a discovery schedule in preparation for a contested hearing thereon.

11.     In the same time frame, the Debtors have continued to press forward with the Plan process.  On August 31, 2010, the Debtors filed the Plan and the Disclosure Statement, both of

which were silent as to the ongoing dispute over the Section 135 Claim and the Guarantee Claim. On October 14, 2010, the Nova Scotia Trustee filed an objection to the Disclosure Statement [ECF No. 7325] (the "**Disclosure Statement Objection**").  On December 7, 2010, the Debtors filed an amended version of the Plan [ECF No. 8015], and on December 8, 2010, an amended version of the Disclosure Statement [ECF No. 8023], each of which specify, among other things, that the Section 135 Claim is a Disputed General Unsecured Claim.

12.     Following entry of the Disclosure Statement Order, the Nova Scotia Trustee attempted to negotiate a stipulation with the Debtors to allow the Section 135 Claim for voting purposes only.  The negotiations have stalled, compelling the Nova Scotia Trustee to file this Motion.

13.     In support of this Motion, the Response is fully incorporated herein.

## RELIEF REQUESTED

14.     Pursuant to Bankruptcy Rule 3018(a), the Nova Scotia Trustee seeks entry of an order temporarily allowing the Section 135 Claim in the amount of $1,607,647,592.49 solely for purposes of voting on the Plan.

## ARGUMENT

15.     Pursuant to Bankruptcy Code section 1126(a), only a claimant whose claim is "allowed under section 502(a) . . . may accept or reject a plan." 11 U.S.C. § 1126(a).  Bankruptcy Code section 502(a) provides that a claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Bankruptcy Rule 3018(a) further provides that "notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a); *see also Pension Benefit Guaranty Corp. v. Enron Corp.*, No 04-5499, 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004) ("The rule specifically

5

and elastically provides that a court may, for the purposes of voting, temporarily allow a claim or interest in an amount which the court deems proper." (internal quotation marks omitted) (quoting *In re Johns-Manville Corp.,* 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988))); *In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994), *aff'd* 249 B.R. 287 (N.D. Ill. 2000) (finding temporary allowance within the "court's reasonable discretion").

16.    Within this broad framework, courts have developed a list of non-exclusive factors to be considered in connection with a motion under Bankruptcy Rule 3018(a) seeking temporary allowance of a claim solely for purposes of voting on a plan.  These factors include the following: (i) the timeliness of the claim objection, (ii) the potential delay to the administration of the case if a full hearing were required and (iii) the merits of the claim objection. *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003), *aff'd*, 97 F. App'x 285 (10th Cir. 2004); *see also In re Harmony Holdings, LLC*, 395 B.R. 350, 354 (Bankr. D.S.C. 2008) (listing relevant factors examined by various courts).  Moreover, analysis of the merits of the objection should be examined only to the extent necessary to "assess the probabilities of the various contentions made by the parties," in lieu of making "definitive findings of fact." *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996).  Courts have also placed substantial emphasis on whether temporary voting allowance will give the creditor the power to "scuttle [the] reorganization proceeding." *Harmony Holdings*, 395 B.R. at 354; *In re DBSD N. Am. Inc.*, No. 09-13061, slip op. app. at 5 (Bankr. S.D.N.Y. Sept. 11, 2009).  Based on the analysis of the relevant factors set forth below, the Nova Scotia Trustee respectfully submits that the Section 135 Claim should be allowed in the amount of $1,607,647,592.49 solely for purposes of voting on the Plan.

**A.      Temporary Allowance of the Section 135 Claim Will Not Allow the Nova Scotia Trustee to Overshadow the Other Votes in its Class**

17.      In considering a motion for temporary allowance pursuant to Bankruptcy Rule 3018(a), a court should be reluctant to disenfranchise a creditor from voting on a plan simply because another party has filed an objection. *In re Gardinier, Inc.*, 55 B.R. 601, 604 (Bankr. M.D. Fla. 1985) ("[I]t would be grossly unfair and unjust to disenfranchise any claim or interest just because the debtor interposed an objection to the allowance of the claim or interest."); *see also Enron*, 2004 WL 2434928, at *6 (citing *Armstrong*, 294 B.R. at 354 (taking into account fairness to creditors, including the movant, in assessing whether temporary allowance for voting purposes was appropriate)).  Moreover, the court should err on the side of allowing a creditor to vote pending allowance of its claim because such a ruling fosters creditor involvement in the chapter 11 process. *See, e.g., In re Amarex Inc.*, 61 B.R. 301, 303 (Bankr. W.D. Okla. 1985) ("To allow [holders of disputed claims] to vote on the plan[], even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of Chapter 11 which encourages creditor vote and participation in the reorganization process.").

18.      On the other hand, as this Court has recognized, the risk of disenfranchisement must be weighed against the risk that the votes of other creditors will be grossly overshadowed by the temporarily allowed claim. *See DSBD*, No. 09-13061, slip op. app. at 5; *see also Enron*, 2004 WL 2434928, at *5 ("When circumstances warrant the estimation of claims for voting purposes, the bankruptcy court [should] utilize[] its claim estimation authority to ensure voting power [is] commensurate with economic interest.").

19.      The Nova Scotia Trustee seeks temporary allowance of a Claim of approximately $1.608 billion in Class 3, General Unsecured Claims.  As provided in the Disclosure Statement,

the Debtors expect the total amount of Allowed General Unsecured Claims in Class 3 to be

between $34.4 billion and $39 billion. Disclosure Statement at 6.  Given the current claims

estimates, the Section 135 Claim represents, at most, 4.44% of the estimated aggregate amount

of Allowed Class 3 Claims.  The Section 135 Claim, therefore, will not overshadow the claims of

other creditors or provide the Nova Scotia Trustee with improper influence over the class

inconsistent with the size of its Claim.  Balancing the risk of disenfranchisement of the Nova

Scotia Trustee against the risks to the other creditors, the equities militate heavily in favor of

allowing the Nova Scotia Trustee to vote the full amount of its asserted Claim.

**B.     Although the Claims Litigation Will Not Be Complete by the Voting Deadline, the
         Section 135 Claim is Likely to Be Allowed in Full**

         20.     As discussed above, Bankruptcy Rule 3018 does not fix the method for estimation

of claims for voting purposes, but grants the Court discretion to examine the necessary factors.

Courts in this District, including this Court, have assigned the burden of proof under a 3018

motion to the claimant.  *See, e.g., DBSD*, No. 09-13061, slip op. app. at 4-5.  However, given the

differences between a claims litigation and a motion for temporary allowance, the Court need not

make evidentiary findings for purposes of the pending claims litigation.  *See, e.g., Ralph Lauren*,

197 B.R. at 775 (findings of fact made pursuant to a Bankruptcy Rule 3018 motion do not have

preclusive effect upon ultimate disposition of the claim due to the differences between the two

types of hearings).  Rather, in fixing the amount of the claims for voting purposes, the Court

must weigh "the probabilities of the various contentions made by the parties."  *Id*.  More

specifically:

> A trier of fact first determines which version [of the facts] is most
> probable and proceeds from there to determine an award in a fixed
> amount.   An estimator of claims must take into account the
> likelihood that each party's version might or might not be accepted
> by a trier of fact.   The estimated value of a claim is then the

> amount of the claim diminished by [the] probability that it may be
> sustainable only in part or not at all.

*Id.* (citing *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994)).

By contrast, "the parties' legal arguments must be evaluated not for the probability that they have

merit, but rather for their correctness as a matter of governing law." *Ralph Lauren*, 197 B.R. at

775 (citing *In re Thomson McKinnon Secs., Inc.*, 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996) (in

estimating a claim under section 502, a court is "bound by the legal rules which may govern the

ultimate value of the claim.")). As demonstrated in the Response and below, based on the facts

and the governing law, the Nova Scotia Trustee is likely to prevail on the Section 135 Claim.

### i.    The Section 135 Claim is Not Duplicative of the Guarantee Claim

21.    The Creditors' Committee's primary objection to the Section 135 Claim is that

MLC, GM Nova Scotia and the Nova Scotia Noteholders entered into a prepetition lock up

agreement (the "**Lock Up Agreement**") for the purpose of manufacturing duplicative claims

against MLC. As described below, this allegation is factually and legally unsupportable.

22.    The Section 135 Claim and the Guarantee Claim are separate, distinct claims with

unrelated purposes. As detailed in the Response, the Section 135 Claim arises directly as a result

of MLC's decision to establish GM Nova Scotia as an unlimited liability company (a "**ULC**")

under the *Companies Act* (Nova Scotia) – not as a result of the Lock Up Agreement. In

accordance with its statutory mandate, the Nova Scotia Trustee is in the process of winding up

GM Nova Scotia. MLC, having had the opportunity to reap the potential tax benefits associated

with structuring GM Nova Scotia as a ULC, is required to satisfy the liabilities of the ULC,

which liabilities MLC statutorily assumed by taking advantage of the ULC structure. Indeed,

allowance of the Section 135 Claim is in accord with Canadian law and consistent with

applicable provisions of the Bankruptcy Code.

23.     By contrast, the Guarantee Claim asserted by the Nova Scotia Noteholders is a contract claim that the Nova Scotia Noteholders have against MLC pursuant to the express guarantee (the "**Guarantee**") contained in the Fiscal and Paying Agency Agreement.  The Guarantee provides the Nova Scotia Noteholders with an avenue of recovery on the Nova Scotia Notes in addition to their claims against GM Nova Scotia.  The mere fact that MLC is required to satisfy both the Guarantee Claim and the Section 135 Claim does not render such claims duplicative.  Rather, as shown by applicable legal precedent in this Circuit, so long as the Nova Scotia Noteholders do not receive more than payment in full on account of the Nova Scotia Notes, the allowance of both the Guarantee Claim and the Section 135 Claim in the amounts asserted is appropriate.  *See Northwestern Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*, 608 F.3d 139 (2d Cir. 2010) (holding that the claims of two creditors related to lost tax benefits arising out of the same lease were not duplicative because the claims arose pursuant to separate, negotiated obligations and total recovery would not exceed 100% of the total loss).

24.     The law is clear that debtors in bankruptcy must live with the contracts and corporate structures they established pre-bankruptcy.  This case should be no different.  Here, MLC elected to use the tax-saving ULC structure to help fund its operations.  The Nova Scotia Noteholders then lent money to GM Nova Scotia—a ULC having a statutory claim against its parent for debts it could not pay in bankruptcy—and further negotiated for and received a guarantee from MLC.  Just as in *Delta*, MLC is bound by the corporate structure it elected to utilize *and* the Guarantee it agreed to issue in connection with the Nova Scotia Notes offering.  To hold otherwise would be to endorse the inequitable result of permitting MLC the opportunity to reap the substantial tax benefits associated with the ULC structure while avoiding the

obligations attendant thereto and, at the same time, denying the Nova Scotia Noteholders the benefit of their bargain regarding the Guarantee.

25.      No amount of discovery will change the legal analysis with respect to the distinctions between the Section 135 Claim and the Guarantee Claim.  As a matter of law, the Nova Scotia Trustee is likely to prevail against the Creditors' Committee's assertion that the Section 135 Claim and the Guarantee Claim are duplicative.  For this reason, the duplicative claim allegations should not prevent the Nova Scotia Trustee from voting on the Plan.

### ii.      The Creditors' Committee is Unlikely to Prevail on its Remaining Objections

26.      In addition to its unpersuasive assertion that the Section 135 Claim and the Guarantee Claim are duplicative, the Creditors' Committee's objection also seeks disallowance or subordination of both the Guarantee Claim and the Section 135 Claim under the following equally meritless theories: (i) Bankruptcy Code section 502(d) mandates disallowance of the Guarantee Claim and the Section 135 Claim because payment of the Consent Fee (defined below) is avoidable as a preference or fraudulent conveyance; (ii) the Lock Up Agreement constituted an unauthorized Bankruptcy Rule 9019 settlement and must be unwound; (iii) the Consent Fee should be deemed a principal paydown on the Nova Scotia Notes and a corresponding reduction should be made to both the Section 135 Claim and the Guarantee Claim; and (iv) the Guarantee Claim and the Section 135 Claim should be equitably subordinated because the Nova Scotia Noteholders took undue advantage of their bargaining power in connection with the Lock Up Agreement.  For the reasons described below, the Nova Scotia Trustee has a high probability of success on the remaining objections.

### a. *Bankruptcy Code Section 502(d) is Inapplicable*

27.     The Creditors' Committee asserts in the Claim Objection that the Section 135 Claim and the Guarantee Claim should be disallowed under Bankruptcy Code section 502(d) because the Creditors' Committee believes it can trace the funds transferred to the Nova Scotia Noteholders in settlement of independent obligations (the "**Consent Fee**") to MLC and avoid the payment as a preference or fraudulent conveyance.  This argument is factually and legally flawed.

28.     First, as discussed in detail in the Response and in the pleadings filed by the Nova Scotia Noteholders, in order for the Creditors' Committee to rely on Bankruptcy Code section 502(d), the Creditors' Committee must have obtained a finding by the Court that the Consent Fee was an avoidable transfer and that the Nova Scotia Noteholders or GM Nova Scotia are liable for the turnover of such amounts under the Bankruptcy Code.  As no such judgment exists, Bankruptcy Code section 502(d) is inapplicable.

29.     Second, to the extent MLC had a viable cause of action under chapter 5 of the Bankruptcy Code to avoid the Intercompany Loan or the payment by GM Nova Scotia to the Nova Scotia Noteholders of the Consent Fee—which it does not—any such action now belongs to New GM.  All avoidance actions related to the Intercompany Loan were transferred by MLC to New GM in connection with the 363 Transaction and, thus, neither the Creditors' Committee nor MLC's estate is entitled to the proceeds of any such action. *See* Master Sale and Purchase Agreement,[5] Exhibit A to the Sale Order.[6]

---

[5] Amended and Restated Master Sale and Purchase Agreement by and Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc., as Purchaser Dated as of June 26, 2009.

[6] *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* [ECF No. 2968] (July 5, 2009).

30.     Third, the funds GM Nova Scotia used to pay the Consent Fee did not constitute property of MLC's estate because GM Nova Scotia received the funds from GM Canada — not MLC — in exchange for significant value, including the release of intercompany loans in excess of $1 billion.  As neither GM Nova Scotia nor the Nova Scotia Noteholders are in possession of property of MLC's estate that could be returned, the Creditors' Committee's 502(d) argument fails.  *See Enron Corp. v. Springfield Assocs. (In re Enron Corp.)*, 379 B.R. 425, 443 (S.D.N.Y. 2007) (noting that the purpose of Bankruptcy Code section 502(d) is to compel a recipient of an avoidable transfer to return proceeds to the estate and holding "[t]hat purpose would not be served if a claim in the hands of a claimant could be disallowed even where that claimant never received the preference to begin with, and as a result, could not be coerced to return it").

31.     Fourth, the Creditors' Committee's attempt to argue that MLC's entry into the Lock Up Agreement itself is avoidable and would prevent recovery under the Section 135 Claim is unsupportable.  As discussed above and in the Response, the Section 135 Claim is an independent statutory claim against MLC as the parent of GM Nova Scotia and does not arise under, nor is it dependent upon, the Lock Up Agreement.  Avoidance of the Lock Up Agreement, therefore, would not absolve MLC of this independent obligation.  Moreover, in the unlikely event this Court finds that MLC's obligations incurred under the Lock Up Agreement are avoidable as to GM Nova Scotia, Bankruptcy Code section 502(d) remains inapplicable. Specifically, section 502(d) does not require disallowance of a claim on the basis that a creditor was the beneficiary of an avoidable obligation incurred by the debtor. *See In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (holding that Bankruptcy Code section 502(d) applies to avoidable transfers but not to avoidable obligations).  Thus, even if the

obligations under the Lock Up Agreement were avoided, section 502(d) would not prevent a recovery on account of the Section 135 Claim, which exists independently under Canadian law.

                b.      *The Lock Up Agreement Does Not Constitute an Unauthorized 9019 Settlement*

32.      Further evidencing the specious nature of the objections to the allowance of the Section 135 Claim, the Creditors' Committee argues that the Lock Up Agreement constitutes an unauthorized settlement under Bankruptcy Rule 9019.[7]  In support of this argument, the Creditors' Committee complains of four specific actions: (i) the Nova Scotia Noteholders' passing an extraordinary resolution which prevented subsequent automatic termination of the prepetition Lock Up Agreement, (ii) GM Nova Scotia's payment of the Consent Fee, (iii) GM Nova Scotia's release of GM Canada from liability on intercompany loans, and (iv) GM Nova Scotia's consent to entry of a Canadian bankruptcy order.  Each action complained of fails to pose an issue under Bankruptcy Rule 9019 for two reasons.  First, by its terms, the Lock Up Agreement was consummated prepetition and the actions complained of were taken in furtherance, instead of in implementation, thereof.  Second, and more importantly, each action was taken by a non-debtor and, thus, is not subject to Bankruptcy Rule 9019.  Accordingly, the Creditors' Committee's argument that the Lock Up Agreement is an unauthorized settlement under Bankruptcy Rule 9019 will not succeed.

                c.      *Application of the Consent Fee to the Principal Amount of the Notes is Inappropriate and an Unlikely Outcome*

33.      The Creditors' Committee does not provide any legal support for its demand that the Court apply the Consent Fee to the principal amount outstanding on the Nova Scotia Notes.  Such an unprecedented remedy is inappropriate and unwarranted where the Debtors,

---

[7] The Creditors' Committee does not explain how an unauthorized Bankruptcy Rule 9019 settlement would entitle the Creditors' Committee to use Bankruptcy Code section § 502(d) to defeat either the Guarantee Claim or the Section 135 Claim.

sophisticated parties represented by able counsel, aware of all relevant facts and supported in the

negotiation by the United States and Canadian governments, participated in good faith

negotiations with the Debtors' creditors.  It was in this context that the Lock Up Agreement was

struck, with the Debtors specifically agreeing that the Consent Fee was not payment of principal

and may not be treated as such.  Given the absence of legal support for this proposition, the Nova

Scotia Trustee submits that the principal amount likely will not be reduced and GM Nova Scotia

will continue to be liable for the full amount of the Nova Scotia Notes.  In such event, the

Section 135 Claim must be allowed in the full amount of the Nova Scotia Liabilities.

> d.    *There Are No Grounds to Equitably Subordinate the Section 135 Claim*

34.    While the Creditors' Committee's request in the Claim Objection for equitable

subordination of the Section 135 Claim is not technically a claim objection, the Court's analysis

should not be colored by the Creditors' Committee's meritless contentions.  In the Creditors'

Committee's one-paragraph request for equitable subordination, which lacks any reference to

governing case law, the Creditors' Committee does not allege inequitable conduct by the Nova

Scotia Trustee.  Rather, the Creditors' Committee merely argues that the conduct of the Nova

Scotia Noteholders and New GM "can and should be imputed" to the Nova Scotia Trustee.  This

argument does not withstand scrutiny.  The Creditors' Committee cites no precedent for

imputing the conduct of third parties to a holder of an independent claim, and for good reason:

courts have warned against such imputation to an uninvolved bystander.  *See, e.g., Wilson v.

Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 818 F.2d 1135, 1146 (5th Cir. 1987)

(differentiating imputation of inequitable conduct from one partner to another, the latter having

been involved in all transactions with the former, from imputation to an "uninvolved bystander"

where, the Court reasoned, imputation "would be contrary to the principles of equitable

subordination as they have developed in the courts"). The Nova Scotia Trustee's conduct has not been called into question and the Creditors' Committee's allegation, therefore, should not weigh in the Court's Bankruptcy Rule 3018 calculus.

35.    Based on the absence of harm to other creditors, the potential for lengthy litigation and the Nova Scotia Trustee's substantial likelihood of success on the Section 135 Claim, the Nova Scotia Trustee respectfully submits that the Section 135 Claim should be temporarily allowed in the amount of $1,607,647,592.49 solely for purposes of voting on the Plan.

## NO PRIOR REQUEST

36.    No prior request for the relief sought in this Motion has been made to this or any other Court.

## NOTICE

37.    Pursuant to the Disclosure Statement Order, notice of this Motion has been served on the Debtors and filed with the Court. Because the Creditors' Committee filed the Claim Objection, the Nova Scotia Trustee has also served counsel to the Creditors' Committee. In addition, a courtesy copy has been provided to all parties on the master service list and the parties that have requested notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Nova Scotia Trustee requests that this Court enter an order

substantially in the form attached as <u>Exhibit A</u> hereto (a) temporarily allowing the Section 135

Claim in the amount of **$1,607,647,592.49** solely for purposes of voting on the Plan and

(b) granting the Nova Scotia Trustee such other relief as this Court deems just, proper and

equitable.

Dated: January 10, 2011

<div style="margin-left:40%">

Respectfully Submitted,

*/s/ Philip C. Dublin*
Daniel H. Golden
Philip C. Dublin
Natalie E. Levine
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Counsel to Green Hunt Wedlake, Inc. as Trustee of Nova
Scotia Finance Company*

</div>