**HEARING DATE AND TIME: To Be Determined**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :         Chapter 11 Case No.
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                   :         **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.*             :
                                                            :
                       **Debtors.**                         :         **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

## DEBTORS' OPPOSITION TO THE MOTION OF DAVE SHOSTACK FOR RELIEF FROM THE AUTOMATIC STAY

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................. 1

Background ............................................................................................................................. 2

The Chapter 11 Cases ............................................................................................................ 2

The State Case ........................................................................................................................ 3

The Motion Should Be Denied ............................................................................................... 5

The Automatic Stay Is Fundamental to the Reorganization Process  And Movant's
Violation of the Stay Should Not be Condoned ....................................................................... 5

Movant Cannot Meet His Burden of Establishing  Cause to Modify the Automatic Stay .......... 7

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*,
    835 F.2d 427 (2d Cir. 1987) ...........................................................................6

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990) ...........................................................5, 6

*Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*,
    428 B.R. 579 (S.D.N.Y. 2010) .......................................................................4

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324 (Bankr. S.D.N.Y. 1983) .............................................................8

*E. Refrac. Co. Inc. v. Forty Eight Insulations Inc.*,
    157 F.3d 169 (2d Cir. 1998) ..........................................................................6

*In re Éclair Bakery Ltd.* ,
    255 B.R. 121 (Bankr. S.D.N.Y. 2000) ...........................................................7

*Hearst Magazines v. Geller*,
    2009 U.S. Dist. LEXIS 30481 (S.D.N.Y. Mar. 24, 2009) ...............................6

*Fidelity Mort. Investors v. Camelia Builders, Inc. (In re Fidelity Mort. Investors)*,
    550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977) ....................5, 6

*Johns-Manville Sales Corp., v. Doan (In re Johns-Manville Corp.)*,
    26 B.R. 919 (Bankr. S.D.N.Y. 1983) .............................................................6

*Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*,
    920 F.2d 183 (2d Cir. 1990) ..........................................................................6

*Mazzeo v. Lenhart (In re Mazzeo)*,
    167 F.3d 139 (2d Cir. 1999) ..........................................................................8

*Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*,
    474 U.S. 494 (1986) ......................................................................................5

*Morgan Guar. Trust Co. v. Hellenic Lines, Ltd.*,
    38 B.R. 987 (S.D.N.Y. 1984) ........................................................................9

*Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*,
    907 F.2d 1280 (2d Cir. 1990) ...............................................................8, 9, 10

*In re Touloumis*,
　　170 B.R. 825 (Bankr. S.D.N.Y. 1994) .................................................................................9

## STATUTES

11 U.S.C. § 362(a)(1) ................................................................................................................5

11 U.S.C. § 362(d) ...................................................................................................................7

11 U.S.C. § 362(d)(1) .............................................................................................................7, 8

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby submit this opposition to the Motion of Dave Shostack ("**Movant**") seeking relief from the automatic stay (ECF No. 8161) (the "**Motion**").  In support hereof, the Debtors respectfully represent:

**Preliminary Statement**

1.      Movant seeks relief from the automatic stay to proceed with a lawsuit (the "**State Case**") he commenced *pro se* against "General Motors Holding, General Motors Corporation, and AC Delco Inc." (collectively, the "**Defendants**") in the Second District Court of Suffolk County, New York on December 31, 2009, in violation of the automatic stay.  The complaint (the "**Complaint**") in the State Case is annexed hereto as **Exhibit** "**A**."  The State Case arises out of Movant's purchase of a used 2004 Chevrolet Malibu, and the Complaint contends that, as a result of the Defendants' "failure to comply with their obligations under the applicable express and implied warranties[,] Plaintiff suffered $8,348.25 worth of damages in potential labor, repair costs and rental car expenses." (Ex. A, ¶51.)

2.      Movant fails to meet his burden of establishing good cause to truncate the statutorily-imposed breathing spell to which the Debtors are entitled.  Requiring the Debtors to defend themselves in the State Case would burden the Debtors and their chapter 11 estates and would not result in any benefit to Movant.  To the extent Movant seeks to enforce an express written warranty, any liability for such claims was assumed

by General Motors LLC as the purchaser of substantially all of the Debtors' assets. To

the extent Movant seeks to pursue claims retained by the Debtors, any judgment entered

in Movant's favor on such claims would be unenforceable because Movant did not file a

timely proof of claim in these chapter 11 cases. The Debtors are thus discharged from

any and all indebtedness or liability with respect to Movant's claims. Nevertheless, in a

good faith attempt to avoid further litigation expense, the Debtors contacted Movant to

discuss a possible resolution of his claims, to wit, granting Movant an allowed general

unsecured claim in the full amount of the estimated repairs evidenced by the

invoices/estimates attached to the Complaint. Movant was abusive, and no resolution

was reached. Assuming that the parties cannot reach a consensual resolution, Movant's

Motion for relief from the automatic stay should be denied.

### Background

### The Chapter 11 Cases

3.      On June 1, 2009 (the "**Commencement Date**"), each of the Debtors

commenced a voluntary case under chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**"). The commencement of the Debtors' chapter 11 cases triggered

the automatic stay of all litigation against the Debtors pursuant to section 362 of the

Bankruptcy Code.

4.      On July 10, 2009, the Debtors consummated the sale of substantially all of

their assets to NGMCO, Inc. (n/k/a General Motors LLC) ("**New GM**"), a United States

Treasury-sponsored purchaser, pursuant to section 363 of the Bankruptcy Code and that

certain Amended and Restated Master Sale and Purchase Agreement ("**MSPA**").

Pursuant to section 2.3(a)(vii) of the MSPA, New GM assumed "all Liabilities arising

under express written warranties . . . and . . . all obligations under Lemon Laws."

Paragraph 26 of this Court's July 5, 2009 Order approving the MSPA (ECF No. 2968)

(the "**Sale Order**") states that "[e]xcept as expressly provided in the MPA or this Order,

after the Closing, the Debtors and their estates shall have no further liabilities or

obligations with respect to any Assumed Liabilities . . . and all holders of such claims are

forever barred and estopped from asserting such claims against the Debtors, their

successors or assigns, and their estates."

        5.      On September 16, 2009, the Bankruptcy Court entered an order (the "**Bar

Date Order**") (ECF No. 4079) establishing November 30, 2009 (the "**Bar Date**") as the

deadline for each person or entity to file a proof of claim based on any prepetition claims

against the Debtors.  The Bar Date Order states that any party that fails to file a proof of

claim on or before the Bar Date shall be forever barred, estopped, and enjoined from

asserting such claims against the Debtors and the Debtors shall be forever discharged

from any and all indebtedness or liability with respect to such claim.

        6.      Movant states that he began calling New GM regarding problems with his

vehicle well before the Bar Date.  Yet, the Debtors concede, they were not made aware of

the calls, and, accordingly, Movant was not provided with individual notice of the Bar

Date.  Although broad publication notice was provided, Movant has not filed a proof of

claim in these chapter 11 cases.

**The State Case**

        7.      On December 31, 2009, after the Commencement Date, Movant initiated

the State Case.

8.      The State Case arises from Movant's May 2009 purchase of a used 2004 Chevrolet Malibu (Ex. A, ¶12), and the Complaint contends that, as a result of the Defendants' "failure to comply with their obligations under the applicable express and implied warranties[,] Plaintiff suffered $8,348.25 worth of damages in potential labor, repair costs and rental car expenses." (Ex. A, ¶51.)

9.      Movant did not seek or obtain relief from the automatic stay prior to filing the Complaint.  Accordingly, the State Case is void for violating the automatic stay. *Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*, 428 B.R. 579, 585-86 (S.D.N.Y. 2010).

10.     The Debtors received a copy of the Complaint on February 8, 2010, and on February 18, 2010, counsel for the Debtors sent a letter to Movant advising him of these chapter 11 cases and the accompanying automatic stay and asking him to withdraw his Complaint.  Movant refused to do so, and, to date, the State Case has not been withdrawn as to MLC.

11.     On or about December 9, 2010, Movant filed the Motion seeking to proceed with the State Case against MLC.  Notwithstanding the $8,348.25 worth of potential damages asserted in the Complaint (Ex. A, ¶51), the Motion and the Complaint include only two estimates for repairs to Movant's vehicle totaling $3,084.51.

12.     In an attempt to avoid expending the estates' resources litigating the Motion concerning a small potential claim, the Debtors contacted Movant to offer him an allowed general unsecured claim in the amount of $3,085.  During the course of settlement discussions, Movant became abusive with the Debtors' counsel and no settlement was reached.  The Debtors remain prepared to offer Movant an allowed

general unsecured claim for $3,085 to consensually resolve the Motion and all of

Movant's claims against the Debtors.

### The Motion Should Be Denied

**The Automatic Stay Is Fundamental to the Reorganization Process
And Movant's Violation of the Stay Should Not be Condoned**

13.    Section 362(a) of the Bankruptcy Code provides in pertinent part that the

filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of –
>
>> (1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  "The automatic stay provision of the Bankruptcy Code … has

been described as 'one of the fundamental debtor protections provided by the bankruptcy

laws.'" *Midlantic Nat'l Bank  v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986)

(quoting S. Rep. No. 95-989 at 54 (1978); H.R. Rep. No. 95-595 at 340 (1977)).  The

automatic stay provides the debtor with a "breathing spell" after the commencement of a

chapter 11 case, shielding the debtor from creditor harassment at a time when the

debtor's personnel should be focusing on the administration of the chapter 11 case.

*Fidelity Mortg. Investors v. Camelia Builders, Inc. (In re Fidelity Mortg. Investors)*, 550

F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case), *cert. denied*, 429 U.S. 1093 (1977).

Further, it "prevents creditors from reaching the assets of the debtor's estate piecemeal

and preserves the debtor's estate so that all creditors and their claims can be assembled in

the bankruptcy court for a single organized proceeding." *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990).

14.     The Second Circuit has long held that when an entity files a bankruptcy petition, the automatic stay is effective immediately and any proceedings filed after the stay takes effect are void. *E. Refrac. Co. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994)); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.* (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987)); *Hearst Magazines v. Geller*, 2009 U.S. Dist. LEXIS 30481, at *3 (S.D.N.Y. Mar. 24, 2009). "Moreover, since the bankruptcy stay is automatic, '[t]he action is void even where the acting party had no actual notice of the stay.'" *Hearst Magazines*, U.S. Dist. LEXIS 30481, at *3 (quoting *Dalton v. New Commodore Cruise Lines Ltd*., 2004 U.S. Dist. LEXIS 2590, at *2 (S.D.N.Y. Feb. 24, 2004)).

15.     The Second Circuit has held that "contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Mar. Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-87 (2d Cir. 1990); *see also Fidelity Mortg. Investors,* 550 F.2d at 51, 57 (Bankruptcy Act case allowing imposition of costs, including reasonable attorney's fees, under civil contempt powers for acts taken with "knowledge" of automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for relief); *see also Johns-Manville Sales Corp., v. Doan (In re Johns-Manville Corp.)*, 26 B.R. 919, 922 (Bankr. S.D.N.Y. 1983) (finding respondent who sought to continue judicial proceedings against debtor after debtor filed its petition for bankruptcy in contempt because

respondent "clearly recognized the intended prohibitory effect of the automatic stay . . .

and nonetheless [] proceed[ed] in willful and flagrant disregard of the[] stay orders").

16.    By commencing the State Case without first obtaining relief from the

automatic stay, Movant violated the automatic stay.  Movant acknowledged the automatic

stay in subsequent correspondence with the Debtors and in filing the Motion, yet, to date,

Movant has not withdrawn the State Case as to the Debtors.  Such conduct constitutes a

willful violation of the automatic stay for which Movant could be sanctioned and held in

contempt of court.  Movant should not now be rewarded for his knowing violation of the

automatic stay by being granted retroactive stay relief.  Accordingly, the Debtors

respectfully request that this Court deny the Motion and declare the State Case void as to

MLC.  The Debtors reserve all rights and remedies with respect to Movant's violation of

the automatic stay.

**Movant Cannot Meet His Burden of Establishing
Cause to Modify the Automatic Stay**

17.    Not only should Movant be denied retroactive relief from the automatic

stay for his knowing violation of the stay, but Movant also should be denied relief from

the stay because he has failed to demonstrate cause to lift the stay.  Section 362(d) of the

Bankruptcy Code provides that a party may be entitled to relief from the automatic stay

under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121,

132 (Bankr. S.D.N.Y. 2000).  Specifically, relief from the stay will be granted only where

the party seeking relief demonstrates "cause":

> On request of a party in interest and after notice and
> a hearing, the court shall grant relief from the stay
> provided under subsection (a) of this section, such as by

> terminating, annulling, modifying, or conditioning such
> stay –
>
> > (1) for cause, including the lack of adequate
> > protection of an interest in property of such
> > party in interest;

11 U.S.C. § 362(d)(1).[1]  Section 362(d)(1) does not define "cause."  However, courts in

this Circuit have determined that in examining whether cause exists they "must consider

the particular circumstances of the case and ascertain what is just to the claimants, the

debtor, and the estate."  *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R.

324, 326 (Bankr. S.D.N.Y. 1983).

18.    The seminal decision in this Circuit on whether cause exists to lift the

automatic stay is *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax

Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see Mazzeo v. Lenhart (In re

Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating District Court order granting stay

relief where Bankruptcy Court had not applied *Sonnax* factors, made only sparse factual

findings, and ultimately did not provide appellate court "with sufficient information to

determine what facts and circumstances specific to the present case the court believed

made relief from the automatic stay appropriate").  In *Sonnax*, the Second Circuit

outlined twelve factors to be considered when deciding whether to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the
>     issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;

---

[1]  Sections 362(d)(2)-(4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to the Motion.

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. Only those factors relevant to a particular case need be considered, and the court need not assign them equal weight. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. *Sonnax*, 907 F.2d at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. *Id*. Further, the cause demonstrated must be "good cause." *Morgan Guar. Trust Co. v. Hellenic Lines, Ltd*., 38 B.R. 987, 998 (S.D.N.Y. 1984).

19.    Movant fails to meet his burden of establishing good cause for lifting the automatic stay under the *Sonnax* analysis as he does not reference the *Sonnax* factors nor provide any cause for lifting the stay whatsoever. Because Movant cannot meet his

burden of establishing cause to lift the stay, the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. *Sonnax*, 907 F.2d at 1285. Nevertheless, the *Sonnax* factors relevant to this case plainly weigh against lifting the automatic stay to allow the State Case to proceed at this juncture.

20.    The first factor does not support relief from the stay because allowing the State Case to proceed against MLC would not result in complete resolution of the issues. The State Case was just filed in February 2010 and has not proceeded in any substantive way as to MLC (*see also Sonnax* factor 11). If Movant were allowed relief from the stay, the State Case would have to be fully litigated against MLC. Litigation of the State Case against MLC would be futile for two reasons. First, to the extent Movant seeks repairs of his vehicle under an express written warranty, any liability for such claims was assumed by New GM under the MSPA. Second, even if Movant ultimately obtained a judgment against MLC in the State Case on other grounds, such judgment would be unenforceable without further relief from this Court because Movant did not file a timely proof of claim in these chapter 11 cases. Pursuant to the Bar Date Order, the Debtors are thus discharged from any and all indebtedness or liability with respect to Movant's claims.

21.    The second and seventh *Sonnax* factors weigh against lifting the automatic stay as well because allowing the State Case to be litigated against the Debtors would interfere with these chapter 11 cases and prejudice the interests of other creditors. As this Court has noted previously in denying similar lift stay motions, requiring the Debtors to litigate the State Case at this juncture in these chapter 11 cases would not only deplete estate resources, thereby prejudicing other creditors, but also would expose the Debtors to having to defend countless other lift stay motions. This would impose a heavy

burden on the Debtors' valuable time and scarce resources when the Debtors' focus

should be on, among other things, disposing of their remaining assets in an orderly and

value-maximizing manner and proceeding with an organized chapter 11 claims resolution

process.

   22.  The tenth *Sonnax* factor does not support relief from the stay because the

interests of judicial economy and the economical resolution of litigation would not be

served by allowing Movant to litigate the State Case against MLC.  The interests of

judicial economy would be best served if Movant is barred from any recovery from the

Debtors because of his failure to file a proof of claim, or if the parties can reach

agreement on a small allowed general unsecured claim that will prevent the Debtors from

expending any further resources litigating this matter.

   23.  Likewise, the twelfth *Sonnax* factor does not support lifting the stay

because the burden imposed on the Debtors in terms of the time, financial resources, and

attention necessary to defend themselves in the State Case far outweighs any potential

gain to Movant in proceeding with the State Case against the Debtors given that any

judgment entered against the Debtors would be unenforceable, without further relief from

this court, for failure to file a timely proof of claim.  Thus, Movant is not prejudiced in

any material respect by maintenance of the automatic stay as to the Debtors and the Court

should deny the Motion.

## **CONCLUSION**

WHEREFORE the Debtors respectfully request that the Court deny the

Motion and the relief requested therein and grant the Debtors such other and further relief

as is just.

Dated: New York, New York
       January 10, 2011

                        /s/ Joseph H. Smolinsky
                        Harvey R. Miller
                        Stephen Karotkin
                        Joseph H. Smolinsky

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

# Exhibit A

# FAX TRANSMISSION FROM

# GM OPERATOR SERVICES

**To:** *Emma Nunnally*       **For:** *Mr. Michael Millikin*

**Fax:** *248·267·4266*       **Total pgs. Incl. cover:** *22*

**Date:** *Fri 2.5.10*

☐ **Urgent**       ☐ **Return to sender; no recipient name indicated**

**Additional comments:**

SECOND DISTRICT COURT OF STATE OF NEW YORK
COUNTY OF SUFFOLK; LINDENHURST, NEW YORK          BAC 13096-09
------------------------------------------------------------X    SUMMONS

DAVE SHOSTACK,                    PLAINTIFF,

                                                          Jury Trial Demanded

-AGAINST-

GENERAL MOTORS HOLDING,                          INDEX NO.:
GENERAL MOTORS CORPORATION
AND AC DELCO INC.

                                              The basis of the venue
                                              designated is: Plaintiff residence

                    DEFENDANTS
------------------------------------------------------------X
The basis of the venue designated is: Plaintiff's residence

To the above named defendant:

YOU ARE HEREBY SUMMONED and required to appear in the District Court of the
COUNTY OF SUFFOLK, SECOND District, at the office of the Clerk of the said court
at 30 EAST HOFFMAN AV. LINDENHURST, NY in the County Of Suffolk, State of
New York, by serving an answer to the annexed complaint upon Plaintiff's attorney, at
the address stated below, or if there is no attorney, upon the Plaintiff, at the address stated
above, within the time provided by law as noted below; upon failure to answer, judgment
will be taken against you for the relief demanded in the complaint, together with the costs
of this action.

DATED: December 31, 2009                    _Susan M Wheele_
                                             Clerk, 2nd Dist Court
DAVE SHOSTACK (PLAINTIFF PRO-SE)              12-31-09
4 SUTTONWOOD DR
COMMACK, NY 11725
(631) 864-2656

NOTE: The law or rules of court provide that:

(a) If this summons is served by its delivery to you, or (for a corporation) an agent
authorized to receive service, personally within the County of Suffolk you must answer
within 20 days after such service;

(b) If this summons is served otherwise than as designated in subdivision (a) above, you
are allowed 30 days to answer after the proof of service is filed with the Clerk of this
Court.

(c) You are required to file a copy of your answer together with proof of service with the
clerk of the district in which the action is brought within ten days of the service of the
answer.

9. Defendant AC Delco had and continues to have an exclusive contract to manufacture and distribute parts and components to Defendant GM for the purpose of manufacturing, assembling and distributing Chevy vehicles to customers throughout the US including NY and abroad and in the County of Suffolk in the State of New York through GM Chevy dealerships as well as other auto parts stores.

10. That Defendant AC Delco has an exclusive contract with GM to also sell parts at GM dealerships in the State of New York for Chevy vehicles.

11. Defendant GM had a contract with the US gov't (General Services Administration) to manufacture and distribute 2001-2008 Chevy Malibus and Chevy Malibu Classics.

12. That on or about May 7, 2009 Plaintiff purchased a 2004 Chevy Malibu Classic from the US Gov't fleet (GSA) sale.

13. That at said date said vehicle had approximately 15k miles on it.

14. That in the month of May 2009 Plaintiff noticed the following problems with said vehicle: Overheating problem-car runs hot when sitting in traffic, temperature gage goes 2 lines past half way mark, defective calipers and brake hoses, defective rotors, defective proportioning valve (defective antilock brake system), defective stabilizer bar bushings, defective lower control arms, defective driver side seat recliner, Water leak in trunk, bell odor coming through a/c vents, defective catalytic converter.

15. That upon information and belief Defendant AC Delco manufactured some or all the defective parts that were originally installed by Defendant GM on Plaintiff 2004 Chevy Malibu Classic.

16. That upon information and belief Defendant GM manufactured some or all of the defective parts that were originally installed by Defendant GM on Plaintiff 2004 Chevy Malibu classic.

17. That upon noticing said problems Plaintiff contacted GM by phone and by fax requesting complimentary assistance under special policy to cover all the above problems since the car had such low mileage.

18. That when talking to GM customer service on service occasions Plaintiff was told to take the car to a Chevy dealer and pay $100 to diagnose all the above mentioned problems.

SECOND DISTRICT COURT OF THE STATE OF NEW YORK

COUNTY OF SUFFOLK; LINDENHURST, NEW YORK

---------------------------------------------------------------X Index No.:

DAVE SHOSTACK,                          PLAINTIFF,

-AGAINST-                                                          Complaint

GENERAL MOTORS HOLDING,

GENERAL MOTORS CORPORATION

AND AC DELCO INC.                          DEFENDANTS.

-----------------------------------------------------------------X

Plaintiff complaining of the above defendants alleges as follows:

1. Plaintiff is a resident of the State of New York County of Suffolk and resides at 4 Suttonwood Dr. Commack, N.Y. 11725.

2. Defendant GM is a duly owned corporation whose place of business is 300 Rennaisance Center Detroit, MI

3. Defendant GM also has offices in the State of New York in NY County (Manhattan) located at 767 5ᵗʰ Av. Suite 300, New York, NY 10153.

4. Defendant GM specializes in the manufacture, marketing and sale of Chevy vehicles throughout the US including NY and abroad. :

5. Defendant AC Delco is a duly owned corporation whose place of business is 6200 Grand Pointe Dr. Grand Blanc, MI 48439

6. That Defendant AC Delco sells parts in the County of Suffolk in the State of New York through GM Chevy dealerships as well as other auto parts stores.

7. That Plaintiff brings this action for detrimental relaince, unjust enrichment, breach of contract, breach of implied warrantee and violations of Warrantee of Durability Act, violations of articles 38 and 39 of the Consumer Protection Act as well as the Magnuson-Moss Warrantee Act.

8. That breach of contract is covered under the Statute of Frauds which has a 6 year Statute of Limitations.

19. That on or about Oct 10, 2009 Plaintiff took his 2004 Chevy Malibu Classic to Atlantic Chevy for a free multipoint inspection and an alignment.

20. That on said date Plaintiff vehicle had 25,298 miles on it.

21. That at the time of inspection the service manager and or mechanic at Atlantic Chevy noted the following problems: defective brake calipers and defective brake hoses and a leaking front axle seal on the front left side.

22. That on or about October 19, 2009 and October 27,2009 Plaintiff faxed the service invoice together with GM service bulletins to Defendant GM asking for assistance in repairing these items under special policy without charge to Plaintiff.

23. That on or about Oct 2009 again Plaintiff was told to take the car back to a Chevy dealer and pay $100 in order to diagnose the other problems mentioned previously in this complaint since they were not noted in the invoice.

24. That at said date Defendant Gm told Plaintiff that even if plaintiff paid the $100 to a Chevy dealer to diagnose the problems that GM would not guarantee anything in writing that the repairs would be performed by GM under special policy and or that GM would offer any cost assistance.

25. That on about Oct 2009 Plaintiff spoke with McDowell Brothers Auto Repair located on Jericho Tpk., Commack, N.Y., who told Plaintiff even if he replaced the axle seals that a month from said date he may need to have the transmission rebuilt since there most likely is a problem inside the transmission that is causing excessive fluid build up near the axle seals.

26. That on or about October 21, 2009 Plaintiff obtained an estimate from Auto Fusion transmission shop to rebuild the transmission. The estimate of repairs was $2813.25 including NY State Sales Tax.

27. That on or about October 23, 2009 Plaintiff obtained an estimate from AAmco transmissions in order to repair the axle seals. The cost of repairs is $271.26 including NY State Sales Tax.

28. That on or about Nov 14, 2009 Plaintiff took his car into Arnold Chevy to replace the air filter at 27,779 miles.

29. That at said date Plaintiff complained to Arnold Chevy about a defective seat recliner, that the seat would not stay vertical and requested an estimate to repair the seat as well as an estimate for the repair of both axle seals.

30. That at said date the mechanic attempted to repair the seat free of charge. However to date the seat still does not stay in the vertical position and in fact it may be worse than when it was when I first brought the car to Arnold Chevy due to the improper repair of Arnold Chevy. No estimate was given t o repair the seats.

31. That the estimate of repairs obtained from Arnold Chevy for the replacement axle seals on both sides was $251.76 plus NY State Sales Tax.

32. That the estimate cost of repairs of the other problems mentioned in this complaint previously are as follows: Overheating problem-car runs hot when sitting in traffic, temperature gage goes 2 lines past half way mark, thermostat, $23, cooling fan relay $25, diagnose and labor $400, defective calipers and brake hoses $100, defective rotors, $90, defective proportioning valve (defective antilock brake system) $1500, defective stabilizer bar bushings $20, defective lower control arms, $122, cost of antifreeze $30,  defective radiator fan $95, defective driver side seat recliner, $400 (as per Atlantic Chevy by phone) Water leak in trunk (sealant) $30, labor on trunk leak repair $100, labor costs of stabilizer bar bushings and control arms $500, labor to repair driver seat $200, labor to install radiator fan $200, labor to diagnose and repair bell ringing noise from ignition $300, ignition coil $200, diagnose and repair catalytic converter (odor coming through a/c vents) $700. All the above estimates of repairs do not include NY State Sales Tax.

33. That Defendant GM even after Plaintiff took his vehicle in to Atlantic Chevy for diagnosis still refuses to guarantee anything in writing and therefore Plaintiff believes GM has no intention of covering any of the repairs.

34. That Defendant GM had a duty of care to Plaintiff to manufacture and assemble a car that was free of defects.

35. That Defendant AC Delco had a duty of care to Plaintiff to manufacture parts for Plaintiff car that were free of defects.

36. That Defendant GM breaches their duty of care to Plaintiff by failing to manufacture a car that was free of defects.

37. That Defendant AC Delco breaches their duty of care to Plaintiff by failing to manufacture parts for Plaintiff car that were free of defects.

38. That Defendant GM had a duty of care to Plaintiff to repair and replace defective parts and components on Plaintiff car under the Warrantee of Durability Act and Implied Warrantee Act and refused to do so.

39. That Defendant GM therefore is in violation of the Warrantee of Durability Act and Implied Warrantee Act.

40. That the Warrantee of Durability and the Implied Warrantee Act apply during and after the expiration of the manufacturer or dealers expressed or written warranty and requires that a part or repair will last a reasonable period of time. (SEE THRESHOLD OF DURABILITY IN EXHIBIT 3)

41. That the expiration of GM warrantee does not nullify the legal warrantee set out in articles 38 and 39 of the Consumer Protection Act. The legal warrantee requires that all products be reasonably durable.

42. That both Defendants expressedly or impliedly state in their ads on radio, tv and print ads that their parts and vehicles made with AC Delco parts are superior to other parts manufactured by other companies.

43. That Plaintiff relied on these statements when he purchased his 2004 Chevy Malibu Classic.



44. That when Defendants vehicles and parts that they manufactured fail to live up to these claims they ~~commit fraud by misrepresentation and omission of the truth.~~ violate the consumer protection Act, warrantee of Durability Act Implied Warrantee Act as well as Magnuson Moss Warrantee Act

45. That had Plaintiff known about the untruthfulness of these claims he would have never purchased his 2004 Chevy Malibu Classic.

46. That upon information and belief GM conspired with AC Delco to provide parts and components for the 2004 Chevy Malibu that they knew or should have known were of poor quality, unreliable and substandard as compared with other cars in the auto market.

47. That the reason why GM and AC Delco did this was because they both stood to profit at the expense of consumers when consumers needed warrantee work and or when the warrantee expired.

48. That the proof of both defendants knowing about the defects in the transmission as well as water leaking in the trunk are evident as the GM service bulletins

02/05/2010 12:53 FAX 8152826156     GM_OPERATOR_SERVICES     ☒008/025

From: DAVE SHOSTACK To: Fax#8152826156    09-50026-mg   Doc 8529   Filed 01/10/11   Entered 01/10/11 17:02:30   Main Document   Page 7 of 21

Pg 25 of 42

49. That by both Defendants having knowledge of the fact that the original parts on the 2004 Chevy Malibu were defective they violate the Warrantee of Durability Act as well as the Implied Warrantee Act as well as the Magnuson-Moss Warrantee Act. (IE: Defective axle seals and tranny needs rebuilding and water leak) In trunk

50. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*(the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored. To remedy this problem of deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for, *inter alia,* failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." *Id.* The Act authorizes the award of attorneys' fees *(id.)*, and expressly authorizes class actions. 15 U.S.C. § 2310(e).

51. That as a result of both Defendants failure to comply with their obligations under the applicable express and implied warranties. Plaintiff suffered $8348.25 worth of damages in potential labor, repair costs and rental car expenses.

Wherefore Plaintiff seeks judgment for $15,000 to compensate Plaintiff for repairs to his 2004 Chevy Malibu Classic including reimbursement for a rental car estimated at $500 while Plaintiff car is in for repair, including punitive damages (injunctive relief) to punish defendant for detrimental reliance, unjust enrichment, breach of contract, breach of implied warrantee and violations of Warrantee of Durabiity Act and violations of articles 38 and 39 of the Consumer Protection Act, breach of contract, breach of warrantee and the Magnuson-Moss Warrantee Act, together with interest, costs and attorneys fees and any other relief that this court feels is just and proper. In alternative Plaintiff would like Defendant to perform the repairs at Defendant's expense and guarantee the repairs for the life of the vehicle or replace the vehicle with another Chevy Malibu Classic of equal or greater value.

Dated: December 31, 2009

JEANETTE CASTELLANO
Notary Public, State of New York
No. 01CA6205385
Qualified in Suffolk County
Commission Expires May 4, 2014

DAVE SHOSTACK
4 SUTTONWOOD DR.
COMMACK, NY 11725
(631) 864-2656



## Service Bulletin

File In Section: 07 - Transmission/Transaxle
Bulletin No.: 08-07-30-009
Date: March, 2008

# TECHNICAL

**Subject:** **HYDRA-MATIC® Front Wheel Drive 4T80-E (MH1) Right Front Axle Seal Leak, Transmission Slips in Gear (Replace Third Clutch Housing with Revised Service Part)**

**Models:** **2001-2008 GM Passenger Cars with HYDRA-MATIC® Front Wheel Drive 4T80-E Automatic Transmission (RPO – MH1)**

### Condition
Some customers may comment on a transmission oil leak and/or that the transmission slips in gear.

### Cause
An oil leak may be caused by bushing wear in the third clutch housing, causing excessive fluid build-up at axle seal.

### Correction
**Important:** DO NOT replace the transmission for above concerns.

Replace the third clutch housing with service P/N 8682114, which has revised bushing material to extend life and reduce right front axle seal leaks. Refer to Automatic/Transaxle – 4T80-E Transmission Off-Vehicle Repair Instructions for the replacement of the third clutch housing in SI.

### Parts Information

| Part Number | Description | Qty |
|---|---|---|
| 8682114 | Housing, Third Clutch | 1 |

### Warranty Information
For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| K7532 | Clutch, Third – R&R or Replace | Use Published Labor Operation Time |

*Exhibit 1*

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.

WE SUPPORT VOLUNTARY TECHNICIAN CERTIFICATION

Copyright 2008 General Motors Corporation. All Rights Reserved.

083626



# Service Bulletin

| | |
|---|---|
| File In Section: | 08 - Body and Accessories |
| Bulletin No.: | 04-08-57-003 |
| Date: | April, 2004 |

  

# TECHNICAL

**Subject:** **Water Leak In Trunk (Apply Sealer)**

**Models:** **2004 Chevrolet Classic**
**2004 Oldsmobile Alero**
**2004 Pontiac Grand Am**

## Condition

Some customers may comment on water in the trunk on the right side of the vehicle.

## Cause

This water leak may be caused by voids in the sealer between the inner and outer sheet metal panels located at the bottom seam in the fuel tank filler area just behind the fuel filler door on the rear quarter.

## Correction

To repair this condition, remove the fuel filler inlet pocket. Clean the area and reseal with Kent Seam Sealer-Clear, P/N 10200. Reinstall the fuel inlet pocket.

## Warranty Information

For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| B5410 | Body — Reseal | 0.4 hr |

*Exhibit 2*

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.

Copyright 2004 General Motors Corporation. All Rights Reserved.

WE SUPPORT VOLUNTARY
TECHNICIAN
CERTIFICATION

064304

Exhibit 3

## Protect Liability

Almost three decades ago, in *Kravitz v. GM* (the first case where I was called as a pro bono expert witness), the Supreme Court of Canada clearly affirmed that automakers and their dealers are jointly liable for the repair or replacement of a vehicle if independent testimony shows that it is afflicted with factory-related defects that compromise its safety or performance. The existence of a secret warranty extension or technical service bulletin also helps prove that the vehicle problems are the automaker's responsibility. For example, in *Lowe v. Fairview Chrysler* (see page 90), technical service bulletins were instrumental in showing an Ontario small claims court judge that Chrysler's history of automatic transmission failures went back to 1989.

In addition to replacing or repairing the vehicle, an automaker can also be held responsible for any damages arising from the defect. This means that lost of wages, supplementary transportation costs, and damages for personal inconvenience can be awarded. However, in the States, product liability awards often exceed millions of dollars, while Canadian courts are far less generous.

## Implied Warranty Rulings

### Reasonable Durability

As outlined near the beginning of the chapter, this is that powerful "other" warranty that they never tell you about. It applies during and after the expiration of the manufacturer's or dealer's expressed or written warranty and requires that a part or repair will last a reasonable period of time. What is reasonable depends in part on the benchmarks used in the industry, the price of the vehicle, and how it was driven and maintained. Look at the "Reasonable Part Durability" table on page 46 for some guidelines as to what you should expect. Judges usually apply the implied or legal warranty when the manufacturer's expressed warranty had expired and the vehicle's manufacturing defects remain uncorrected.

*Chevrier v. General Motors Du Canada* (October 18, 2006, Quebec Small Claims Court, Joliette District (Repentigny) No. 730-32-00485-046, Justice Georges Massol). You can get the judgment at www.canlii.org/fr/qc/qccq/doc/2006/2006qccq3312.pdf.

The plaintiff leased and then bought a 2000 Montana minivan. At 71,000 km, the automatic transmission failed and two GM dealers estimated the repairs to be between $2,200 and $4,500. They refused warranty coverage because the warranty had expired after the third year of ownership or 60,000 km of use. The owner repaired the transmission at an independent garage for $1,269 and kept the old parts, which GM refused to examine.

A small claims court lawsuit was filed, and Judge Massol gave the following reasons for ruling against GM's two arguments that (1) there was no warranty that a claim would be filed and (2) all warranties had expired:

• GM filed a voluminous record of jurisprudence in its favour, relative to other lawsuits that were rejected because they were filed without prior notice. But the judge reasoned that GM could not plead a "failure to notify" because the owner went to several dealers who were essentially agents of the manufacturer.

• The judge also reasoned that the expiration of GM's written warranty does not nullify the legal warranty set out in articles 37 and 39 of the Consumer Protection Act. The legal warranty requires that all products be "reasonably durable," which did not appear to be the case with the plaintiff's vehicle, given its low mileage and number of years of use.

GM was ordered to pay the entire repair costs, plus interest, and the $99 filing fee.

*Dufour v. Ford Canada Ltd.* (April 10, 2001; Quebec Small Claims Court, Hull; No. 550-32-001535-009; Justice F. Chevalier). Ford was forced to reimburse the cost of engine head gasket repairs carried out on a 1996 Windstar 3.8L engine—a vehicle not covered by the automaker's Owner Notification Program, which cut off assistance after the '95 model year.

*Schaffer v. Ford Motor Company Limited and Eastern Ford Sales Ltd.* (Ontario Superior Court of Justice, LG-Small Claims Court; Court File No. 59-2003; July 11, 2003; Justice Gerald Langlois). The plaintiff bought a 1993 Windstar in 1998. The engine head gasket was replaced for free three years later, under Ford's extended warranty. In 2001, at 109,600 km, the head gasket failed again, seriously damaging the engine. Ford refused a second repair. Justice Langlois ruled that Ford's warranty extension bulletin listed signs and symptoms of the covered defect that were identical to the problems written on the second work order (persistent and/or chronic engine overheating; heavy white smoke evident from the exhaust tailpipe; flashing "low coolant" instrument panel light even after coolant refill; and constant loss of engine coolant). Judge Langlois concluded that "the problem was brought to the attention of the dealer well within the warranty period; the dealer was negligent. The plaintiff was awarded $4,041 plus 5 percent interest. This judgment included $1,070 for two months' car rental.

*John R. Rolf and Laurie M. McCall v. Ford Motor Company of Canada* (Superior Court of Justice, Ottawa Small Claims Court; Claim No. 802-SC-077344; July 11, 2003; Justice Therney). A 1996 Windstar, bought used in 1997, experienced engine head gasket failure in October 2001 at 159,000 km. Judge Therney awarded the plaintiffs $4,445 for the following reason:

A Technical Service Bulletin dated June 28, 1995, was circulated to Ford dealers. It dealt specifically with "undetermined loss of coolant" and "engine oil contaminated with coolant" in the 1996–98 Windstar and five other models of Ford vehicles. I conclude that Ford owed a duty of care to the Plaintiffs to equip this vehicle with a cylinder head gasket of sufficient sturdiness and durability that would function trouble-free for...

02/05/2010 12:54 FAX 8152826156 GM_OPERATOR_SERVICES
From: DAVE AND MARK'S FAX [8158826156]



## Acura

**2001–03 3.2 CL, 1999–2003 TL, 2004–05 RSX**

Problem: Breakage of the rear stabilizer bar link. Warranty coverage: Honda will replace both stabilizer bar links under a "goodwill" warranty extension that was confirmed in TSB #05-035, issued June 14, 2005.

## Acura/Honda

**1999–2003 Acura CL and TL, Honda Accord, Prelude, and Odyssey models**

Problem: Defective automatic transmission and torque converter. Warranty coverage: This "goodwill" warranty extension was confirmed in the August 4, 2005, edition of Automotive News. Honda will fix or replace the transmission free of charge up to 7 years/160,000 km (100,000 mi.), whether owners bought their vehicle new or used. The company will also reimburse owners who already paid for the repair.

## Audi

**2002–05 S4 and A6 equipped with 2.7L turbocharged V6 engines**

Problem: Defective auxiliary coolant pump leaks coolant from the pump body. When the pump fails, the coolant light will come on, warning that continued driving could cause serious engine damage. Warranty coverage: VW will install a Repair Kit free of charge up to 7 years/160,000 km. See TSB #05-05, published October 28, 2005.

## Audi, Chrysler, Mercedes-Benz, Saab, Toyota, and VW

**1997–2004 Audi A4, 1999–2002 Chrysler models equipped with 2.7L V6, 1998–2002 Mercedes-Benz vehicles; 1999–2003 Saab 9-3 and 9-5 models; 1997–2002 Toyota and Lexus vehicles with 2.2L 4-cylinder or 3.0L V6 engines; and 1997–2004 VW Passat**

Problem: Engine sludge. Warranty coverage: Water usually 7–10 years/160,000 km. Automakers can't automatically deny this free repair because you don't have proof of all of your oil changes, unless they can show that the sludge was caused by a missed oil change (which, according to independent mechanics, is impossible to do). Remember, the warranty has been extended to fix a factory-related problem that occurs despite regular oil changes. That's why it's the automaker's responsibility.

Service bulletins, press releases, and dealer memos are all admissions of responsibility. From there, the legal doctrine of "the balance of probabilities" applies. To wit, a defect definitely causes engine sludge, while a missed oil change may cause engine sludge. Therefore, it is more probable that the defect caused the sludge.

Once the sludge condition is diagnosed, the dealer and automobile manufacturer are jointly liable for all corrective repairs plus additional damages for your inconvenience, your loss of use or the cost of a loaner vehicle, and the cost to replace the oil. The automaker's owner notification letter may not have gone out to Canadian owners, since it is not required by any Canadian recall of the vehicle. If a letter goes out, it is usually sent only to first owners of record. And in the case of Chrysler's engine, no customer notification letters have been sent to anyone.

Some automakers say owners must use a special, more-expensive oil to prevent sludge. This after-sale stipulation is illegal and can also provide owners with a reason to ask for damages, or even a refund, since it wasn't disclosed at the time of sale. All of the letter restrictions and conditions made by the dealer and the manufacturer can easily be appealed to the small claims court where the sludge letter is powerful proof of the automaker's negligence.

## Chrysler, Ford, General Motors, and Auto Automakers

**All years, all models**

Problem: Faulty automatic transmissions that self-destruct, shift erratically, gear down to "limp mode," are slow to shift in or out of Reverse, or are noisy. Warranty coverage: If you have the assistance of your dealer's service manager, or some internal service bulletin that confirms the automatic transmission may be defective (such as the bulletin below), expect an offer of 50–75 percent (about $1,500) if you threaten to sue in small claims court. Acura, Honda, Hyundai, Lexus, and Toyota coverage varies between seven and eight years.

I've just been told that I need my fourth transmission on my '96 Town & Country minivan with 132,000 miles (212,000 km) on it. I've driven many cars well past that mileage with only one transmission. This dealer about Chrysler, who said they...

CHRYSLER TRANSMISSION-DELAYED ENGAGEMENT

IMPORTANT: This bulletin involves replacing the Front pump assembly in the transmission and checking the Transmission Control Module (TCM) for the latest software revision level.
- 2004 (KJ) Liberty
- 2004 (RS) Town & Country/Voyager/Caravan/Sedan/Status Sedan
- *2002* – 2004 (LH) Sebring Convertible/Sebring Sedan/Status Sedan
- 2003 (KJ) Liberty
- 2003 (RG) Chrysler (International Market)
- *2002* – 2004 (LH) 300M/Concorde/Intrepid
- *2002* 2004 (JR) Sebring/Stratus
- *2002* 2003 (PL) Neon
- *2002* 2003 (PT) Cruiser
- *2002* 2003 (RG) Chrysler Voyager (International Market)
- *2002* 2003 (RS) Town & Country/Caravan/Voyager
- 2003 (TJ) Wrangler

### Reasonable diligence

### Extra punitive damages

### Warranty Rights

CVCS248694

**ATLANTIC CHEVROLET CADILLAC**
1356 Sunrise Highway
**BAYSHORE, NY 11706**
**(631) 665-0002**
NYS R/S NUMBER 7080197

0801CVCS248694                                              04-653760

216125                  JACK IMPERATO      2333   W448   10/10/09   CVCS248694

**DAVID SHOSTACK**          99.00                    25,298  /
4 SUTTONWOOD DR
COMMACK, NY 11725-5614      04/CHEVROLET/CLASSIC/4DR SDN LS

                            1 G 1 N D 5 2 F X 4 M 6 5 3 7 6 0

                                                            10/10/09

631-864-2627      666-4492                                  MO: 25298

LABOR & PARTS ·····
J# 1 01CVZ99P      MULTI POINT INSP           TECH(S):2332        INTERNAL
   PERFORM MULTI POINT INSPECTION
   FREE COUPON
   C/S LEAK BY RIGHT FRONT TIRE.LEFT FRONT SEEMS WET BY
   WHEEL WELL
   FOUND LEFT FRONT CALIPER FREEZING. HOSE & HUB LOOSENED
   STABILIZER LINKS & BUSHINGS FRONT. TRANNY PAN LEAKING
   RIGHT FRONT AXLE SEAL LEAKING
   DECLINED REPAIR

                              JOB #  1 TOTAL LABOR & PARTS       0.00

J# 2 14CVZ-ALIGN   ALIGN FRONT END           TECH(S):2332        INTERNAL
   PERFORM FREE ALIGNMENT AS PER COUPON
   COMPLETED

                              JOB #  2 TOTAL LABOR & PARTS       0.00

TOTALS·····

* NEXT RECOMMENDED SERVICE:                                    *
* 01/09/2010 /    150 MI 01CVZ-LOF     LUBE OIL AND FILTER      *
****************************************************

On behalf of all of us at Atlantic Chevrolet/Cadillac, we
would like to THANK YOU for your continued patronage
****************************************************

In an ever increasing need to reduce paper consumption, we
are asking that you provide us with your email address so we
may contact you regarding upcoming factory recalls, service
specials and/or an effort to receive your overall
satisfaction input regarding our Service Department.
WE DO NOT SHARE THIS INFORMATION WITH ANY OUTSIDE SOURCES.

Email Address:·····
With your help, we can look forward to a greener future!!

YOUR SATISFACTION IS OUR TOP PRIORITY!

CUSTOMER SIGNATURE

ANY WARRANTIES ON THE PRODUCT SOLD HEREBY
ARE THOSE MADE BY THE MANUFACTURER. THE
SELLER HEREBY EXPRESSLY DISCLAIMS ALL WAR-
RANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING
ANY IMPLIED WARRANTY OF MERCHANTABILITY OR
FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER
ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO
ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH
THE SALE OF SAID PRODUCTS.

GENERAL MOTORS PARTS COVERED AGAINST DE-
FECTS FOR 12 MONTHS OR 12,000 MILES.

☐ NO GUARANTEE ON WORK
   PERFORMED
☐ 30 DAYS OR 1,000 MILES WHICH-
   EVER OCCURS FIRST
☐ 90 DAYS OR 4,000 MILES WHICH-
   EVER OCCURS FIRST
☐ 12 MONTHS OR 12,000 MILES
   WHICHEVER OCCURS FIRST
ALL PARTS NEW UNLESS
OTHERWISE NOTED.

NYS R/S NUMBER 7080197

☐CASH  ☐CHECK  ☐MC  ☐VISA
   ☐AM. EX.  ☐DISCOVER

CUSTOMER ACKNOWLEDGES
REC. OF COPY X

TOTAL LABOR....      0.00
TOTAL PARTS....      0.00
TOTAL SUBLET...      0.00
TOTAL G.O.G....      0.00
TOTAL MISC CHG.     0.00
TOTAL MISC DISC     0.00
TOTAL TAX.....      0.00
                 --------
**TOTAL INVOICE $      0.00**

*Thank you for this opportunity to
serve you. It is our aim to perform
all the repairs requested on this
repair order to your complete
satisfaction. If our service was
satisfactory tell your friends, if
not, please tell us immediately.*

*THANK YOU*



# ARNOLD CHEVROLET

**670 MONTAUK HIGHWAY**
**WEST BABYLON, NY 11704**
**(631) 422 3700**
**NYS MV R/S 7099208**

# ARNOLD BUICK PONTIAC

**670 MONTAUK HIGHWAY**
**WEST BABYLON, NY 11704**
**(631) 661 7000**
**NYS MV R/S 7042218**

 

**www.arnoldautos.com**

| CUSTOMER NO. 56577 | | RICHARD DAHLGREN 1069 | TAG NO. C993 | INV 11/14/09 | INV CVCS151107 |
|---|---|---|---|---|---|

DAVID SHOSTACK
4 SUTTONWOOD DR.
COMACK, NY 11725

MILEAGE 27,779

04/CHEVROLET/MALIBU/2LT

VEHICLE ID NO. 1 N D 5 2 F X 4 M 6 5 3 7 6 0

RES 631 864-2656

R 11/14/09

MO: 27779

---

## LABOR & PARTS

J# 1 01CVZ    MAINTENANCE    HOURS:    TECH(S):16        10.00
CUSTOMER STATES: REPLACE THE AIR FILTER
REPLACE THE AIR FILTER

PARTS------QTY---FP-NUMBER--------------DESCRIPTION------------------UNIT PRICE--
JOB # 1    1    19114107    ELEMENT 3.410            17.85    17.85
                                JOB #  1 TOTAL PARTS        17.85

                                JOB #  1 TOTAL LABOR & PARTS    27.85

J# 2 65CVG    ELECTRICAL    HOURS:    TECH(S):16        0.00
ADVISE COST TO REPAIR THE DRIVERS SEAT ( VERY LOOSE )
THE SEAT IS WORKING NOW

PARTS------QTY---FP-NUMBER--------------DESCRIPTION------------------UNIT PRICE--
                                JOB #  2 TOTAL PARTS        0.00

                                JOB #  2 TOTAL LABOR & PARTS    0.00

RECOMMENDATIONS--------
TO REPLACE RT AXLE SEAL 175.63
TO REPLACE BOTH SEALS IS 251.76

TECHNICIAN CERTIFICATION
        16            FRANK ROTHMANN        Z244

TOTALS-------

****************************************
* [ ] CASH  [ ] CHECK  CK NO. [    ]  *
*                                     *
* [ ] VISA  [ ] MASTER CARD  [ ] DISCOVER *
*                                     *
* [ ] AMER XPRESS  [ ] OTHER  [ ] CHG  *
*                                     *
****************************************

THANK YOU FOR YOUR BUSINESS
YOUR COMPLETE SATISFACTION IS OUR MAIN GOAL!

THANK YOU! RICH, MARK, RUSS, FRED & SUE
VISIT OUR NEW WEB SITE AT WWW.ARNOLDCORVETTE.COM
VISIT US ON THE WEB AT WWW.ARNOLDCHEVROLET.COM

| TOTAL LABOR... | 10.00 |
|---|---|
| TOTAL PARTS... | 17.85 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 2.41 |
| **TOTAL INVOICE $** | **30.26** |

ANY WARRANTIES ON THE PRODUCT SOLD HEREBY ARE THOSE MADE BY THE MANUFACTURER. THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SAID PRODUCTS.

GENERAL MOTORS PARTS COVERED AGAINST DEFECTS FOR 12 MONTHS OR 12000 MILES.

☐ NO GUARANTEE ON WORK PERFORMED
☐ 30 DAYS OR 1,000 MILES WHICHEVER OCCURS FIRST
☐ 90 DAYS OR 4,000 MILES WHICHEVER OCCURS FIRST
☐ 12 MONTHS OR 12,000 MILES WHICHEVER OCCURS FIRST

**ALL PARTS NEW UNLESS OTHERWISE NOTED.**

☐ CASH  ☐ CHECK  ☒ MC  ☐ VISA
☐ AM. EX.  ☐ DISCOVER

CUSTOMER ACKNOWLEGES
REC. OF COPY X

*Thank you for this opportunity to serve you. It is our aim to perform all the repairs requested on this repair order to your complete satisfaction. If our service was satisfactory tell your friends, if not, please tell us immediately.*

*THANK YOU*

CUSTOMER SIGNATURE

PAID mle

Exhibit 5

PAGE 1 OF 1            CUSTOMER COPY            [ END OF INVOICE ] 02:02pm

The Reynolds and Reynolds Company. DRMATSHEE_CO12281410 (06/07)



| MGR | LAST | FIRST | | DATE | | NO. 101003 |
|---|---|---|---|---|---|---|
| | SHOSTACK | DAVE | | 10/23/09 11:32 | | |

| | CITY | STATE/ PROV | ZIP CODE | MILEAGE | TRANS TYPE | HOME PHONE |
|---|---|---|---|---|---|---|
| JNWOOD | COMMACK | NY | 11725 | 25898 | 4T45E | |

| MAKE MODEL | COLOR | VEHICLE IDENTIFICATION NUMBER (VIN) | LIC PLATE NO/STATE | BUSINESS PHONE |
|---|---|---|---|---|
| CHEVROLET MALIBU | BLUE | 1G1ND52FX4M653760 | ETJ235B | |

| | | | | PROD DATE | ENGINE SIZE | CELL PHONE |
|---|---|---|---|---|---|---|
| ANTY LAM ORMATION | ORIGINAL CENTER ORIGINAL NO. ORIGINAL SELLD POSITIVE / VINS | | | | 2.2L | 631 864-2658 |

| HAT NUMBER | EMAIL ADDRESS | # 44200 |
|---|---|---|
| 749 | | |

**Smith Haven Car Care Inc.**
2575 Middle Country Road
Centereach, NY 11720
631-467-0023

**AAMCO TRANSMISSIONS**

REG. #
7099325

**AAMCO COMPLETE CAR CARE**

PARTS $24.96 LABOR $246.298 SUBTOTAL $271.258

| 1 | R / AXLE SEAL | 12.48 |
| 1 | L / AXLE SEAL | 12.48 |
| 2.6 | LABOR TO REPLACE | 246.30 |

TRANSMISSION CCC
PARTS: $ LABOR: $ SUBTOTAL: $  PARTS: $24.96 LABOR: $246.298 SUBTOTAL: $271.258

This estimate does not reflect shop supply charges that may represent both cost and profits to this service center.

| PARTS | 24.96 |
|---|---|
| LABOR | 246.30 |
| SUBTOTAL | 271.26 |

Exhibit 6

## AUTOFUSION

334 W. JERICHO TPKE
HUNTINGTON, NY 11743
Shop Phone: (631) 351-5755
Fax: (631) 351-5753
Email: TRANS726@AOL.COM
Web Address: WWW.AUTOFUSIONNY.COM

**Estimate**

| Estimate |
|---|
| 391 |

Estimate Ref #391
Date Printed: 10/21/2009
Printed Time: 4:56 pm
DMV# 7106666

| Hat/Ref: | AUTOFUSION | | | Time Promised: |
|---|---|---|---|---|
| **SHOSTACK, DAVE** | 2004 CHEVROLET MALIBU CLASSIC L4 2.2L 2198CC 134CID FI GAS N F L61 | | | |
| | VIN: 1G1ND52FX4M653760 | | | |
| | License: ETJ2358 | Mileage In: 25,811 | Date Written: | 10/21/2009 |
| Home:   Work: | Unit #: 4T45E | Mileage Out: 25,812 | Written By: DENNIS LICATA | |
| Cell: | DOM: 03/04 | | Save Old Parts: No | |

| Job Name | Description | Technician | Qty | List | Extended |
|---|---|---|---|---|---|
| **Job #1** | **MAINTENANCE** | | | | |
| Sublet | Work Requested - MAINTENANCE | | 1.00 | 2,072.37 | 2,072.37 |
| Work Performed - TRANSAXLE ASSEMBLY | | | | | |
| Labor  RATE 1 | Work Requested - MAINTENANCE | | 6.00 | 80.00 | 480.00 |
| Work Performed - LABOR FOR REMOVING AND REINSTALLING TRANSAXLE | | | | | |
| Sublet | Work Requested - MAINTENANCE | | 10.00 | 3.75 | 37.50 |
| Work Performed - TRANSMISSION FLUID | | | | | |

*Job Total:*   2,589.87

*[signature]*

| Payment Date | Type | Method | | Amount |
|---|---|---|---|---|
| | | **Payment Totals:** | | |

| | |
|---|---|
| Parts: | $0.0 |
| Labor: | $480. |
| Sublet: | $2,109. |
| Misc: | $0 |
| Hazmat: | $0 |
| Supplies: | $0 |
| Tax: | $223 |

### THANK YOU

I hereby authorize the above repair work to be done along with the necessary material and hereby grant you and/or your employees permission to operat
car or truck herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is h
acknowledged on above car or truck to secure the amount of repairs thereto.

Authorized By _____    Date _____    Time _____

02/05/2010 12:56 FAX 8152826156                      GM_OPERATOR_SERVICES                      ☑020/025

From: DAVE SHOSTACK To: Fax 18152826156          09-50026-mg     Doc 8529     Filed 01/10/11     Entered 01/10/11 17:02:30     Main Document
                                                                    Pg 37 of 42

# Dave Shostack
4 Suttonwood Dr.
Commack, N.Y. 11725
(631) 864-2656

October 19, 2009

Edward Whitacare CEO
General Motors
Chevy Motors Division
300 Rennaisance Center'
Detroit, MI 48265

Dear Mr. Whitacare:

In May 7, 2009 I purchased a 2004 Chevy Malibu Classic with 15,000 miles on it from the US Federal Gov't through the General Services Administration. It is my understanding that GM had and still has a contract with the US government to manufacture and distribute 2004, 2005 and newer Chevy Malibu Classics for the US GOV'T fleet of employee cars.

Since that time I have noticed several problems with my 2004 Malibu Classic: Defective sticking calipers and brake pads, uncutable rotors, water leak in the trunk, exhaust fumes through the A/C vents, a bell ringing noise when the key is not in the ignition. Most recently at approximately 25,000 miles the transmission is leaking from the right front axle seal which I am told that even if the axle seal is repaired I may need a transmission a month from now due to excessive fluid build up as a result of defective clutch bushings.

That GM is fully aware of all these problems mentioned as per several Technical Service Bulletins that I have obtained and by refusing to repair these items GM perpetrates a fraud upon me as a tax payer as well as a consumer as well as all the other tax payers whose money bought these cars from GM with US Tax payer money. Every one of these cars will eventually need a transmission which GM is fully aware of.

In addition it is my understanding that GM got tax payer bailout money from the US Gov't and that as part of the agreement GM had agreed to stand behind the garbage that they manufactured. That by refusing to agree to repair the problems with my car GM commits fraud a third time in light of the fact that they took tax payer money as part of a bailout and agreed to stand behind the product that they manufactured yet they still refuse to cover the items in need of repair on my car.

That unless I hear from GM immediately that they intend to repair all the above mentioned problems at their expense rest assured I will immediately commence a class action lawsuit for fraud against GM immediately. PLEASE NOTE FRAUD is not dischargeable in a bankruptcy proceeding.

Please further note a copy of this letter is being sent to the US Congress, US Attorney General as well as the Inspector General and the Federal Trade Commission.

Very truly yours,



Dave Shostack

**Dave Shostack**
4 Suttonwood Dr.
Commack, N.Y. 11725
(631) 864-2656

October 27, 2009

Edward Whitacare CEO
General Motors
Chevy Motors Division    ,
300 Rennaisance Center
Detroit, MI 48265

Dear Mr. Whitacare:

In May 7, 2009 I purchased a 2004 Chevy Malibu Classic with 15,000 miles on it from the US Federal Gov't through the General Services Administration. It is my understanding that GM had and still has a contract with the US government to manufacture and distribute 2004, 2005 and newer Chevy Malibu Classics for the US GOV'T fleet of employee cars.

Since that time I have noticed several problems with my 2004 Malibu Classic: Defective sticking calipers and brake pads, uncutable rotors, water leak in the trunk, exhaust fumes through the A/C vents, a bell ringing noise when the key is not in the ignition, an overheating problem when local driving or sitting in traffic (temperature gage needle goes 2 lines past half way mark) and creaking noises in the front end suspension (defective stabilizer bar bushings, struts and or lower control arms) Most recently at approximately 25,000 miles the transmission is leaking from the right front axle seal which I am told that even if the axle seal is repaired I may need a transmission a month from now due to excessive fluid build up as a result of defective clutch bushings.

That GM is fully aware of all these problems mentioned as per several Technical Service Bulletins that I have obtained and by refusing to repair these items GM perpetrates a fraud upon me as a tax payer as well as a consumer as well as all the other tax payers whose money bought these cars from GM with US Tax payer money. Every one of these cars will eventually need a transmission which GM is fully aware of.

In addition it is my understanding that GM got tax payer bailout money from the US Gov't and that as part of the agreement GM had agreed to stand behind the garbage that they manufactured. That by refusing to agree to repair the problems with my car GM commits fraud a third time in light of the fact that they took tax payer money as part of a bailout and agreed to stand behind the product that they manufactured yet they still refuse to cover the items in need of repair on my car.

That unless I hear from GM immediately that they intend to repair all the above mentioned problems at their expense rest assured I will immediately commence a class action lawsuit for fraud against GM immediately. PLEASE NOTE FRAUD is not dischargeable in a bankruptcy proceeding.

Please further note a copy of this letter is being sent to the US Congress, US Attorney General as well as the Inspector General and the Federal Trade Commission.

On Oct 10, 2009 I took my Malibu to Atlantic Chevrolet for a multi-point inspection and an alignment. A copy of which was previously faxed to you. In our conversation that followed you insisted on my bringing the car back to Atlantic a 2nd time and pay them $100 to look at the car a second time. At that time I asked that you guarantee in writing that if I did that that you would cover the repairs of the above mentioned items at your expense and you refused to guarantee in writing that you would cover the reapirs or soffer any cost assistance regardless of whether I took the car back to Atlantic Chevrolet. I explained to you that I am still making payments on this car and that $100 would pose a hardship to me and you still refused to waive the fee or guarantee in writing that you would cover any of the above repairs. Why would I waste what little money I have to take the car back to your dealer a second time if you will not guarantee that you

are going to cover the cost of these repairs and or perform the repairs. I do not know of anyone that would be stupid enough to do that without anything in writing. Then you refused to give me the name of the Zone Manager or District Manager for GM for Long Island. In light of the fact that your show rooms are empty you would think GM would have the common courtesy of helping a loyal GM customer at their expense with regard to the many repairs needed on this car. Especially in light of the fact that GM told Congress they would stand behind the junk that they manufactured. No wonder nobody is buying your cars anymore.

Please be advised in my case and in many other cases GM can't deny making these repairs because of something called Implied Warrantee Rulings. It applies during and after the expiration of the manufacturer or dealers expressed or written warranty and requires that a part or repair will last a reasonable period of time. **Chevrier vs. General Motors Du Canada (Oct 18, 2006) Quebec Small Claims Court, Joliette District (Repentigny) No 730-32-004876-046; Justice Georges Massol)**

In the above mentioned case the Plaintiff had a 2000 Montana minivan that at **71,000 km** the transmission failed. Gm at that time refused warranty coverage because they claim the warrantee expired after the 3rd yr of use or **60,000 km of use.**
**"The judge ruled that the expiration of GM warrantee does not nullify the legal warrantee set out in articles 38 and 39 of Consumer Protection Act. The legal warrantee requires that all products be reasonably durable."**

GM was required to pay the entire repair costs plus interest, and filing fee.

In **Kravitz vs. GM,** The Supreme Court of Canada affirmed that automakers and dealers are jointly liable for replacement and repair of a vehicle if independent testimony shows that it is afflicted with factory related defects that compromise its safety or performance. The existence of a secret warrantee extension or technical service bulletin also helps prove that the vehicle problems are the automakers responsibility. For example in **Lowe vs. Fairview Chrysler** technical service bulletins were instrumental in showing in Ontario Small Claims Court that Chrysler's history of automatic transmission failures went back to 1989.

I am asking that one of your GM dealers either perform the repairs or that your company reimburse me for the cost of repairing each and every item listed in the letter. The estimate of the cost of repairs is approximately $5000. In the alternative of the above I would ask that you replace this vehicle with another 4 Cyl Malibu of equal or greater value with similar or lower mileage that is free of defects. I am putting you on notice under the Federal and provincial Consumer Protection Statutes and that your refusal to apply this extended warrantee coverage in my case would be an unfair warranty practice within the puview of the above cited laws.

Your actions also violate the Implied Warrantee set down by the Supreme Court of Canada **(Donaghue vs. Stevenson and Longpre vs. St Jacques Automobile)** and repeatedly reaffirmed by provincial consumer protection **laws (Lowe v. Chrsyler, Dubor v. Ford du Canada and Frank v. GM).**

I also reserve the right to claim up to $1,000,000 for punitive damages pursuant to the Supreme Court of Canada Feb 22, 2002 ruling in Whiten v. Pilot.


Very truly yours,



Dave Shostack

# FACSIMILE COVER PAGE

**To :** _____ Fax#18152826156 _____

**Sent :** _____ 2/5/2010 at 11:57:56 AM _____

**Subject :** _____

**From :** DAVE SHOSTACK

**Pages :** 22 (including Cover)

DEAR MR. WHITACRE:

ENCLOSED IS A SUMMONS AND COMPLAINT. THIS IS YOUR LAST CHANCE TO VOLUNTARILY REPAIR THIS CAR AT YOUR EXPENSE.

IF I DO NOT HEAR FROM YOU IMMEDIATELY THAT YOU INTEND TO REPAIR THIS CAR AT YOUR EXPENSE IMMEDIATELY I WILL PURSUE THIS MATTER IN COURT.

SINCERELY,

DAVE SHOSTACK
631-864-2656

02/05/2010 12:57 FAX 8152826156          GM_OPERATOR_SERVICES                    024/025

From: DAVE SHOSTACK To: Fax#18152826156    09-50026-mg  Doc 8529    Filed 01/10/11    Entered 01/10/11 17:02:30    Main Document    Page 1 of 22

# FACSIMILE COVER PAGE

Pg 41 of 42

| | |
|---|---|
| **To :** Fax#18152826156 | **From :** DAVE SHOSTACK |
| **Sent :** 2/5/2010 at 11:57:56 AM | **Pages :** 22 (including Cover) |
| **Subject :** | |

DEAR MR. WHITACRE:

ENCLOSED IS A SUMMONS AND COMPLAINT. THIS IS YOUR LAST CHANCE TO VOLUNTARILY REPAIR THIS CAR AT YOUR EXPENSE.

IF I DO NOT HEAR FROM YOU IMMEDIATELY THAT YOU INTEND TO REPAIR THIS CAR AT YOUR EXPENSE IMMEDIATELY I WILL PURSUE THIS MATTER IN COURT.

SINCERELY,

DAVE SHOSTACK
631-864-2656

# FACSIMILE COVER PAGE

| | |
|---|---|
| **To :** Fax#18152826156 | **From :** DAVE SHOSTACK |
| **Sent :** 2/5/2010 at 11:57:56 AM | **Pages :** 22 (including Cover) |
| **Subject :** | |

DEAR MR. WHITACRE:

ENCLOSED IS A SUMMONS AND COMPLAINT. THIS IS YOUR LAST CHANCE TO VOLUNTARILY REPAIR THIS CAR AT YOUR EXPENSE.

IF I DO NOT HEAR FROM YOU IMMEDIATELY THAT YOU INTEND TO REPAIR THIS CAR AT YOUR EXPENSE IMMEDIATELY I WILL PURSUE THIS MATTER IN COURT.

SINCERELY,

DAVE SHOSTACK
631-864-2656