**HEARING DATE AND TIME: February 9, 2011 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: February 2, 2011 at 4:00 p.m. (Eastern Time)**

Steven M. Bierman
Nicholas K. Lagemann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Kenneth P. Kansa (admitted *pro hac vice*)
Courtney A. Rosen (*pro hac vice* pending)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Counsel for Wells Fargo Bank
Northwest, N.A., as Agent to the TPC Lenders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------ X

### MOTION OF THE TPC LENDERS FOR AN ENTRY OF AN ORDER (I) INITIATING VALUATION PROCEEDINGS IN ACCORDANCE WITH THE SALE ORDER, AND (II) ESTABLISHING A SCHEDULE WITH RESPECT TO THE VALUATION PROCEEDINGS

Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), as Agent (the "Agent"), on behalf of

Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator (the

"Administrator"), Hannover Funding Company ("Hannover" or the "CP Lender"), and Deutsche

Bank, AG, New York Branch, HSBC Bank USA, ABN AMRO Bank N.V., Royal Bank of

Canada, Bank of America, N.A., Citicorp USA, Inc., Merrill Lynch Bank USA, Morgan Stanley

Bank, as purchasers, (collectively with the Administrator, the "TPC Lenders"), hereby moves

this Court for entry of an order initiating valuation proceedings in accordance with the Order (I)

Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase

Agreement With NGMCO, Inc., a U.S. Treasury-sponsored purchaser (the "MPA"); (II)

Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

In Connection With the Sale; and (III) Granting Related Relief entered as of July 5, 2009 (the

"Sale Order") [Docket Entry No. 2968] and establishing a schedule for the valuation proceedings

for the TPC Property (as defined below) (the "Motion").

## BACKGROUND CONCERNING RELIEF REQUESTED

1.    The purpose of this Motion is to institute proceedings to value the TPC

Property and, as a consequence, value the secured claim of the Agent relating to the TPC

Property.  The TPC Property comprises real estate, improvements, fixtures, and various

additional property located at two of General Motors Corporation's ("Old GM") facilities -- a

transmission manufacturing plant in White Marsh, Maryland (the "Maryland Facility") and a

distribution center in Memphis, Tennessee (the "Tennessee Facility" and, together with the

Maryland Facility, the "Facilities" or the "TPC Property").  The principal facts relating to this

Motion are set forth in the Proof of Claim filed by the Agent in these chapter 11 cases, which

Proof of Claim has been assigned claim number 39030 by the Court-appointed claims agent, and

which is incorporated herein by reference.

2.    In brief, however, on June 30, 2004, Wilmington Trust Company, in its

capacity as Owner Trustee under GM Facilities Trust No. 1999-1 (in such capacity, the

"Lessor"); Hannover, in its capacity as CP Lender; certain purchasers (each a "Purchaser" and,

collectively with the CP Lender, the "Lenders") of commercial paper pursuant to that certain

liquidity asset purchase agreement dated as of June 30, 2004; the Administrator; and the Agent

2

NY1 7502125v.1

entered into that certain Second Amended and Restated Participation Agreement and

Amendment of Other Operative Documents (the "Participation Agreement" and, collectively

with the Lease Agreements, as defined herein, the "Financing Agreements") with Old GM.

3.    In accordance with the terms and conditions of the Participation

Agreement, the Lessor, the CP Lender, the Agent, and the Administrator entered into that certain

Amended and Restated Loan Agreement dated as of June 30, 2004 (the "Loan Agreement").

Pursuant to the terms and conditions of the Loan Agreement, the CP Lender provided financing

to the Lessee for the purchase of the Facilities and certain other facilities used in Old GM's

business and construction of improvements thereon.  Old GM acknowledged the Participation

Agreement and related agreements respecting these transactions in the Sale Order.  *See* Sale

Order at ¶ CC (describing TPC Lenders' liens and originating documents).

4.    Old GM entered into leases and related documentation prior to the Petition

Date granting security interests to the Agent in various property to secure Old GM's obligations.

In particular, and without limitation, on November 18, 1999, GM, the Agent and Joseph B. Pitt,

Jr., in his capacity as deed of trust trustee, entered into that certain Tennessee Master Lease and

Open End Leasehold Deeds of Trust (as amended and supplemented from time to time, the

"Tennessee Lease").  Pursuant to Section 16.5 of the Tennessee Lease, GM granted a security

interest (the "Tennessee Liens") to the Agent in any and all real estate fixtures purchased with

funds advanced by the Agent located at the property described in the Tennessee Lease (the

"Tennessee Property") to secure GM's obligations under the Participation Agreement and the

Loan Agreement.  The Tennessee Property secured approximately $26.8 million of the unpaid

balance of the Loan Agreement (the "Tennessee Balance").  *See* Proof of Claim at ¶ 5.  In

addition, on September 8, 1999, GM and the Agent entered into that certain Maryland Master

NY1 7502125v.1

Lease and Mortgages agreement (the "Maryland Lease" and, collectively with the Tennessee

Lease, the "Lease Agreements").  Pursuant to Section 16.4 of the Maryland Lease, GM granted a

security interest (the "Maryland Liens" and, collectively with the Tennessee Liens, the "Liens")

to the Agent in property described in Exhibit A to the Maryland Lease and any improvements

thereon (the "Maryland Property" and, collectively with the Tennessee Property, the "Leased

Property") to secure GM's obligations under the Participation Agreement and the Loan

Agreement.  The Maryland Property secured approximately $63.9 million of the unpaid balance

of the Loan Agreement (collectively with the Tennessee Balance, the "Loan Balance").  *See*

Proof of Claim at ¶ 6.

5.      As of June 1, 2009 (*i.e.*, the date Old GM filed its chapter 11 petition), the

aggregate amount of the loan balance owing by Old GM under the Lease Agreements and the

other Financing Agreements was at least $90.7 million in principal obligations; plus all unpaid

interest, fees, and expenses (including, but not limited to, the Agent's professional fees) that are

chargeable and reimbursable under the Financing Agreements, and any other obligations arising

under the Financing Agreements that were contingent or unmatured as of the Petition Date

(collectively, the "Lender Claims").  (*See* Proof of Claim at ¶ 8).  The Proof of Claim identified

certain indemnification rights and other elements of the Agent's claims against Old GM.  The

Agent's Proof of Claim has not been objected to in the course of these chapter 11 cases.

6.      On June 1, 2009 (the "Petition Date"), Old GM and certain of its affiliates

filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").  Also on that date, Old GM filed a motion requesting, among other things,

the Bankruptcy Court's authorization to sell the majority of its assets (the "363 Sale Motion").

4

Of relevance to this Motion, the assets sought to be sold under the 363 Sale Motion included the

Maryland Facility and the Tennessee Facility.

> 7.      The TPC Lenders filed a Limited Objection to the 363 Sale Motion for the

discrete purpose of preserving their rights and interests as holders of first-priority secured claims

against the Facilities, including, among other things, their entitlement to adequate protection for

their secured claims.  Although the TPC Lenders were and are entitled to recover upon their

indisputably secured claims, the TPC Lenders negotiated with Old GM to establish a procedure

by which the TPC Lenders would be able to recover the value of their secured claims (and, if

applicable, any unsecured deficiency) through negotiations or, if those negotiations were

unsuccessful, through proceedings before this Court subsequent to entry of the order approving

the 363 Sale Motion.  In particular, the parties' negotiations resulted in terms included in the Sale

Order that provided as follows:

> a.  the TPC Lenders have an allowed secured claim equal to the fair market value of the TPC Property on the Commencement Date under section 506 of the Bankruptcy Code (the "Leased Property Value"), as determined at a valuation hearing before the Court or by mutual agreement of the Debtors, NGMCO, Inc.[1] ("New GM") and the TPC Lenders (such claim, the "Secured Claim") (*See* Sale Order at ¶ 36);
>
> b.  as adequate protection for the Secured Claim, $90.7 million (the "Escrow Amount") in cash has been placed into an interest-bearing escrow account (the "Escrow Account").  Pursuant to the terms of the Sale Order, interest earned on the Escrow Amount shall follow the principal.  Further, promptly after the determination of the Leased Property Value, an amount of cash equal to the Secured Claim plus the pro rata share of interest that has accrued on the Secured Claim shall be released from the Escrow Account and paid to the TPC Lenders (*see* *id.* at ¶ 37);
>
> c.  if the value of the Secured Claim is less than $90.7 million, the TPC Lenders shall have, in addition to the Secured Claim, an allowed unsecured claim against GM's estate equal to the lesser of (i) $45 million and (ii) the difference between $90.7 million and the value of the Secured Claim.  If, however, the value of the Secured Claim exceeds $90.7 million, then the TPC Lenders shall be entitled to assert a

---

[1] NGMCO, Inc. ultimately changed its name to General Motors, LLC.

5

secured claim against GM's estate to the extent that the TPC Lenders would have an allowed claim for such amount under section 506 of the Bankruptcy Code (the "Excess Secured Claim") (*see* *id.* at ¶¶ 38-39);

d.   the rights and arguments of all parties in interest concerning the determination of the Secured Claim are reserved; provided, however, that in consideration for settlement between Old GM and the TPC Lenders, as set forth in the Sale Order, the TPC Lenders agreed to waive any legal argument that they are entitled to a secured claim equal to the face amount of their claim under section 363 or any other provision of the Bankruptcy Code on the grounds that the Debtors are required to pay the full face amount of the TPC Lenders' secured claim in order to transfer the Leased Property to New GM (*see* *id.* at ¶ 39).

8.     On July 5, 2009, the Court entered the Sale Order (including the provisions referenced above), which provided for the sale of substantially all of the assets, including the Facilities, of Old GM to New GM.  Today, the Agent understands that New GM, among other things, manufactures, distributes and sells automobiles and other vehicles through its utilization of the facilities and assets acquired under the Sale Order, including the Facilities.

9.     Since entry of the Sale Order, the TPC Lenders have commissioned appraisals of the two Facilities and have engaged in discussions with New GM in an effort reach agreement upon the value of the Facilities.  To date, those discussions have not been successful in reaching an agreed-upon value for the Facilities.  Accordingly, the Agent, on behalf of the TPC Lenders, submits this Motion to initiate valuation proceedings for the Facilities as contemplated by the Sale Order.  (Sale Order ¶ 36).

10.     The Agent requests by this Motion that the Court establish a comprehensive schedule, as set forth in the accompanying proposed order, for determining the value of the Facilities, including establishing a briefing schedule, discovery deadlines, and, if the Court believes it to be appropriate, setting a date for an evidentiary hearing.

6

NY1 7502125v.1

## JURISDICTION

11.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §
§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BASIS FOR RELIEF REQUESTED

12.    The Sale Order clearly provides that the value of the Facilities may be
determined "at a valuation hearing conducted by the Court," and that such proceedings may be
initiated by the TPC Lenders.  (Sale Order ¶ 36).  The Sale Order further expressly permits the
TPC Lenders (acting in this case through the Agent) to file a motion with the Bankruptcy Court
to determine the TPC Value on twenty (20) days notice.  (*Id.*)  This Motion requests that the
Court establish an appropriate schedule, including a briefing schedule, discovery deadlines and
setting a date for an evidentiary hearing.

13.    As part of the requested scheduling, the Agent proposes that all discovery
relating to the valuation of the TPC Property be concluded by March 18, 2011, with pre-hearing
memoranda to be submitted to the Court by the parties (including, for the avoidance of doubt,
New GM) on or before April 1, 2011.  An evidentiary hearing respecting the valuation of the
TPC Property would then be scheduled for April 2011 at the Court's convenience.  The
requested schedule is reasonable given that discussions between New GM and the Agent have
already resulted in the informal exchange of some documentation relating to the proposed
valuation.  Furthermore, upon entry of the accompanying proposed order, the Agent is prepared
to serve discovery requests on New GM immediately pursuant to Fed. R. Bankr. P. 9014, Local
Rule 9014-1 and Case Management Order No. 1 [Docket No. 157].[2]

---

[2] The Agent is permitted by the Federal Rules of Bankruptcy Procedure, the Local Rules and this Court's Case
Management Order No. 1 [Docket No. 157], as amended, to seek discovery in connection with this contested matter.
The Agent will serve its discovery requests on Old GM based on its understanding from discussions with Old GM
that Old GM is in possession of the Facilities and all documentation relevant to the valuation of the Facilities,

NY1 7502125v.1

14.     Scheduling the valuation proceedings as requested by the Agent is also

beneficial in that it will resolve a significant outstanding secured claim against Old GM's estate

and an issue remaining from the sale of Old GM's assets.  Accordingly, subject to the Court's

availability for scheduling of the requested evidentiary hearing, no legitimate reason exists to

delay the valuation proceedings.

---

including the historical records of Old GM's business.  To the extent that Old GM, or any other party, is in
possession of documentation relevant to the valuation of the Facilities, the Agent reserves its rights to seek and
obtain discovery from such parties in connection with this matter.

8

WHEREFORE, the Agent, on behalf of the TPC Lenders, respectfully requests that this

Court enter an order (I) initiating valuation proceedings pursuant to the Sale Order; (II)

establishing an appropriate schedule in respect of such valuation proceedings; and (III) granting

such other relief as is just and reasonable.

Dated: New York, New York
        January 14, 2011

/s/ *Steven M. Bierman*
SIDLEY AUSTIN LLP
Steven M. Bierman
Nicholas K. Lagemann
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email:    sbierman@sidley.com
        nlagemann@sidley.com

-    and    -

SIDLEY AUSTIN LLP
Kenneth P. Kansa (admitted *pro hac vice*)
Courtney A. Rosen (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email:    kkansa@sidley.com
        crosen@sidley.com

*Counsel for Wells Fargo Bank Northwest, N.A.,
as Agent to the TPC Lenders*

NY1 7502125v.1