Marc M. Isaac
THE LAW OFFICE OF MARC M. ISAAC, PLLC
210 Moore Avenue
Freeport, NY   11520
Telephone: (516) 750-1422
Facsinile:   (866) 342-2903
E-mail:   misaac@mmipllc.com

*Attorneys for Sandra Slaymaker, Personal Representative*
*of the Estate of Laurence Slaymaker, Deceased*

UNITED STATES  BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | § § § | Chapter 11 Case No. |
| MOTORS LIQUIDATION CO., *et al.*, f/k/a General Motors Corp., *et al.*, | § § § § | Case No.   09-50026 (REG) (Jointly Administered) |
| Debtors. | § § | Hearing: February 3, 2011 @ 9:45 a.m. (ET) |

RESPONSE OF SANDRA SLAYMAKER TO DEBTOR'S
111th OMNIBUS OBJECTION TO CLAIMS AND MOTION
REQUESTING ENFORCEMENT OF BAR DATE ORDERS

COMES NOW Respondent, **SANDRA SLAYMAKER, as personal representative of the Estate of LAURENCE SLAYMAKER, Deceased** (hereafter, "Respondent"), who files this her Response to the 111th Omnibus Objection of **MOTORS LIQUIDATION CO.,** *et al.* **f/k/a General Motors Corporation,** *et al.*, ("Debtors") to Claims - - including Respondent's Proof of Claim, Claim No. 69696 (hereafter, "the Claim"), and in support of allowance of the Claim as timely, would show as follows:

*Jurisdiction*

1.       This Court has jurisdiction over this matter in accordance with 11 U.S.C. §§101, and 28 U.S.C. §§157, 1334 and 2075.  Determination of whether or not this proof of claim is

timely is a "core" proceeding as defined under 28 U.S.C. §157(b)(2)(B), without waiver of the rights of Respondent under 28 U.S.C. §§157(b)(2)(B) and (O), (b)(5) and 1411.

***Background Facts Relative to the Claim***

2.      On October 20, 2007, Laurence Slaymaker was killed when, while working underneath his 2002 GMC Sierra 2500HD pickup truck to remove accumulated brush from the undercarriage of the vehicle, the transmission and parking brake - - both allegedly defective - - simultaneously failed, causing the vehicle to roll over his torso and inflicting mortal injuries.

3.      On January 30, 2009, Respondent, acting on her own behalf, on behalf of Laurence Slaymaker, and on behalf of his heirs, filed a wrongful death and survival lawsuit against Debtor and others in state court in Carbon County, Wyoming.  Richard R. Jamieson, Jamieson & Robinson, LLC of Caspar, Wyoming was lead attorney for Respondent, and James L. Mitchell of Dallas, Texas appeared therein as co-counsel; neither Respondent's Texas nor Wyoming counsel is a practicing bankruptcy lawyer or has a bankruptcy attorney in their firm.

4.      On or about June 1, 2009, Debtors initiated this case with the filing of their voluntary petition under Chapter 11 of the United States Bankruptcy Code.  Debtors were aware of this lawsuit, and the role of lead counsel therein.  According to Debtors' Schedule F-6 for "Product Liability Litigation", at page 201, a true and correct copy of which is attached hereto as ***Exhibit "A"***, Debtors listed the claim of Respondent twice - - once under "Slaymaker, Laurence, Richard Jamison [sic]," and once under Slaymaker, Sandra, Jamieson & Robinson, LLC" - - both at the address of Respondent's Wyoming counsel.

5.      Subsequently, on June 3, 2009, Debtors received and thereafter served the Notice of Meeting of Creditors, a true and correct copy of which is attached hereto as ***Exhibit "B"***.  This

notice specifically states, as relates to deadlines for filing proofs of claim, that "Notice of deadline will be sent at a later time." Since then, Wyoming counsel for Respondent was receiving notices and pleadings from the bankruptcy case, and forwarding them to Respondent's Texas counsel.

6.    On September 16, 2009, this Court entered the "Notice of Deadlines for Filing Proofs of Claim" ("the Notice"), establishing a bar date of November 30, 2009, less than three months away, for the filing of proofs of claim. According to the Affidavit of Service [Docket No. 4238], a true and correct copy of which (without exhibits) is attached hereto as ***Exhibit "C"***, Barbara Kelley Keane of the Garden City Group, Inc., Debtors' claims agent, alleges that it served the Notice between September 24 and September 26, 2009. Apart from the non-specific date of service, this left only two months for recipients of the Notice to timely file if they had not already done so.

7.    According to ***Exhibit "D"***, a true and correct copy of the page from the exhibits to the affidavit of service identifying the manner and address for service of the Notice on Respondent, though the address to which the Notice was alleged to have been sent was admittedly the address for Respondent's Wyoming counsel, unlike the address referencing Respondent's Wyoming counsel in Exhibit A, ***the Notice was not addressed to Respondent's Wyoming (or Texas) counsel***. Instead, the Notice was sent only to Respondent, but at her Wyoming counsel's address.    Inexplicably, Respondent's Wyoming counsel was omitted from the address information.    Assuming this was the manner in which the Notice was served, service on Respondent at her counsel's address was the Debtors' sole attempt to serve Respondent or her counsel with the Notice at any address.[1]

---

[1]    A thorough search of the relevant service lists found within the 32 exhibits to the Affidavit of Service, each of which (save one) contained 900 pages, revealed that there was no separate attempt to serve any counsel for Respondent, at their known addresses, including the

8.      Equally inexplicable was the fact that Respondent's Wyoming counsel *was* being sent and receiving various notices and pleadings from Garden City Group prior to, and after, the purported mailing of the Notice. Among other things, Respondent's Wyoming counsel received the notice of the meeting of creditors and a notice of hearing on a motion to sell substantially all of the Debtors' assets to Vehicle Acquisition Holdings, LLC on or around June 10, 2009, a notice of hearing regarding Debtors' disclosure statement on or around October 5, 2010 (at around the same time), and on or around December 27, 2010, notice of the approval of the disclosure statement and confirmation hearing (and separately, notice of the administrative claims bar date). As evidenced by the Affidavits of Linda Miner and Richard R. Jamieson, which are attached hereto as ***Exhibits "E" and "F"*** respectively, and the Affidavit of Stan Boler, Legal Assistant to James L. Mitchell which is attached hereto as ***Exhibit "G"***, at no time did any of Respondent's counsel receive, or have actual knowledge of, the Notice. Moreover, these other notices that were received *were* sent to both Respondent's Wyoming counsel and to Respondent.

9.      In and around late December, 2009, counsel for Respondent began to become concerned that they had not seen any claims notices related to the Debtors' bankruptcy, and in checking on line information regarding the bankruptcy, first discovered in late December, 2009 that there was a passed bar date of which they had received no prior notice.

10.     Accordingly, on December 30, 2009, a mere 30 days after the bar date and well before any serious threat of plan confirmation, Respondent's Dallas counsel promptly sent for filing Respondent's Claim, which was apparently recorded by Garden City Group on the Claims Register has having been received on January 4, 2010. With it, Stan Boler, an employee of

---

following iterations: "Richard Jamison [sic]," "Richard Jamieson," "Richard R. Jamieson," "Jamison, Richard," "Jamieson, Richard," "Jamieson & Robinson," Mitchell, James L.," "Mitchell, James," "James Mitchell," or "James L. Mitchell."

Respondent's Dallas counsel, sent a letter specifically addressing the lateness of the claim and the

absence of notice of the bar date or the Notice in which it was otherwise announced.  He said:

> The purpose of this letter is to advise you and the Court that said
> Notice of Claim was filed after the Bar Date because neither Ms.
> Slaymaker nor this firm received notice of the Bar Date.
> Accordingly, we would respectfully request that the Court grant an
> exception and allow the filing of Ms. Slaymaker's Notice of Claim.

True and correct copies of the Claim filed by counsel, and of the accompanying letter referenced

above, are attached hereto and incorporated herein as *__Exhibits "H" and "I"__* respectively.

11.     Respondent's counsel was diligent in attempting to be and remain aware of the

relevant dates and deadlines so as to get her claim timely filed, and the moment they discovered

that they had received no notice of the bar date, they responded with diligence and speed to get

the claim filed.

12.     Even so, the Debtors waited until after December 20, 2010, almost one year after

the Claim was filed, and after counsel for Respondent had contacted Joseph Smolinsky to request

that the Claim be submitted for possible resolution under the ADR Procedures previously adopted

by this Court, to object to the Claim in their 111th Omnibus Objection to Claims ("the

Objections").

13.     In their Objections, the Debtors generally aver that they will be prejudiced by the

possible allowance of the claims to which they objected.  However, as of the preparation of this

Response, Debtors still have not confirmed a plan, and are aware that Respondent plans to contest

the disallowance of her Claim.  Nevertheless, the Debtors have been aware of the existence of this

claim - - the subject of pre-bankruptcy litigation - - since the inception of this case, and of the

Claim itself (and of the Respondents' contention of the failure to receive the Notice) for roughly

one full year.

*__Relief Sought__*

14.     Respondent hereby seeks allowance of her admittedly late-filed Claim to vacate the above order in accordance with Rules 9006 and 9024 of the Federal Rules of Bankruptcy Procedure ("FRBP."), and under Rules 5, 60(b)(1), and/or 60(b)(6) of the Federal Rules of Civil Procedure ("FRCP") incorporated by reference in FRBP Rule 9024.  In this regard, Respondent will show that service on her counsel was defective and that no notice of the bar date was actually received.  Alternatively, Respondent would show that her counsel was diligent in attempting to learn of the existence of the bar date, that having discovered the passage thereof counsel for Respondent was diligent in promptly getting the Claim filed, and that the equities - - including the absence of unfair prejudice to the Debtors - - favor determining the Claim on its merits.

*__Arguments and Authorities__*

### A.  DEFECTIVE SERVICE PLUS LACK OF NOTICE MANDATE ALLOWING THE CLAIM.

15.     As a general rule, default judgments are disfavored by the law.[2]  Courts in the Second Circuit recognize the strong policy preference favoring the determination of cases on their merits.  *See Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999) (". . . the district court must be mindful of the strong policy favoring resolution of cases on their merits; defaults are generally disfavored and reserved for rare occasions."); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).

16.     Avoiding a default frequently depends upon the vitality of the requirement of service upon parties or their counsel as to deadlines for filing or responding such that default may

---

[2]     10 James Wm. Moore, MOORE'S FEDERAL PRACTICE 3D, §55.20[2][b], citing "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments"; and *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("The Federal Rules of Civil Procedure are designed for the just, speedy and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver.  Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."); *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Rogers v. Hartford Life & Accid. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

be avoided. FRCP Rule 5 lays out specific requirements for service of papers on litigants and those who have appeared through counsel. In particular, FRCP Rule 5(b)(1) requires that, "[i]f a party is represented by an attorney, *service under this rule must be made on the attorney unless the court orders service on the party*." (Emphasis added) "[Rule 5(b)] is applicable to bankruptcy [cases]." *See In re Long Island Properties, Inc.*, 42 F. Supp. 323, 325 (S.D.N.Y. 1941). Morever, regarding service by mail, Rule 5 will be strictly construed, inasmuch as the potential cost of a failure to give proper notice can be severe.

> In view of the important consequences that flow from the service of pleadings and other papers, the courts, quite rightly, have required the strictest and most exacting compliance with the rule when service is made by mail.

*Timmons v. United States*, 194 F.2d 357, 360 (4th Cir. 1952); *accord, Rivera v. M/T Fossarina*, 840 F.2d 152, 155 (1st Cir. 1988).

17.     In this case, as reflected in Schedule F-6/Exhibit A, Debtors have been aware that Respondent has been represented by counsel since the inception of this bankruptcy case. Indeed, on various occasions, Debtors have served both Respondents and their Wyoming counsel with notices relevant to this case. For unexplained reasons, the Affidavit of Service/Exhibit C and accompanying notice lists/Exhibit D reflect that, in the case of the Notice, Garden City Group elected to list, and at best purported attempted to serve, only the Respondent at her counsel's address, and not Respondent's counsel.

18.     If what is claimed in the Affidavit of Service is what actually transpired, the manner of service of the Notice - - at least insofar as Respondent is concerned - - was in direct contravention of the requirements of Rule 5(b)(1), which mandates that service on parties known to be represented by counsel be made upon their counsel. "Strictest and most exacting

compliance" with the requirements of Rule 5(b)(1), coupled with evidence from three witnesses confirming that no actual notice was received (Exhibits E - G), should be, by itself, sufficient grounds to permit and allow the Claim as timely filed.

### B. THE CLAIM SHOUD BE ALLOWED UNDER THE "EXCUSABLE NEGLECT" STANDARD

19.     In furtherance of a policy that disfavors defaults, F.R.C.P. Rules 60(b)(1) and (6) provide that the Court may vacate or grant relief from " . . . a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."[3]  In determining whether or not to grant relief from the denial of late-filed claims in bankruptcy, the United States Supreme Court in *Pioneeer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership* held that the inquiry was "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[4]  The Court in *Pioneer* identified the following factors for consideration when making this equitable judgment, including:

> " . . . the danger of prejudice to the debtor, the length of the delay
> and its potential impact on judicial proceedings, the reason for the
> delay, including whether it was within the reasonable control of the
> movant, and whether the movant acted in good faith."[5]

In *Pioneer*, the Supreme Court allowed a proof of claim that was twenty days late as a result of an attorney's failure to timely file a proof of claim, and affirmed the Sixth Circuit Court of Appeals' decision overruling a district court order denying the creditor's motion to enlarge time under

---

[3]     F.R.C.P., Rule 60(b), as incorporated in the FRBP by Rule 9024.  This same policy permitting enlargement of time "where the failure to act [is] the result of excusable neglect" is embodied in the FRBP a second time by Rule 9006(b)(1).

[4]     *Pioneeer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership*, 113 S. Ct. 1489, 1498 (1993) (hereafter, *"Pioneer"*).

[5]     *Id.*

F.R.B.P. Rule 9006(b)(1) and/or allow the late-filed claim.  In so doing, the Court rejected the notion that "excusable neglect" in Rule 60(b) requires proof of a more stringent standard - - that the error in question was beyond the reasonable control of the party or its counsel.[6]

20.     The same rationale which resulted in the allowance of the claim in *Pioneer* militates strongly in favor of allowing Respondent's claim as timely filed in this case.

21.     *Danger of Prejudice to the Debtor.*     There is no unfair prejudice to the Debtors from the allowance of Respondent's claim.  First, the Debtors will not be required to fund any more into their plan on account of the allowance of a single, additional unsecured, non-priority claim, and in interpreting *Pioneer*, courts have held that prejudice *to other creditors* is not part of the relevant inquiry on whether to allow a late-filed claim or vacate an order of denial.[7]  Second, the Debtors had notice of Respondent's Claim, and the possibility that it *might* be allowed, well in advance of the filing of the bankruptcy case (as noted, it was scheduled by Debtors before the Claim was filed) and before confirmation of a plan, such that they cannot reasonably claim that the basis for the negotiation and formulation of their plan is disrupted by the existence or allowance of a previously-unknown claim.[8]  Third, the Debtors cannot be prejudiced by the allowance of a *just* claim, especially where failed adherence to service requirements likely contributed to the delayed filing.  And in the case *sub judice*, it should be remembered that Respondent has sought the benefit of the ADR procedures adopted by this Court such that her Claim still may be resolved and liquidated through negotiation.

---

[6]     *Pioneer, supra* at 113 S. Ct. 1494 - 98.

[7]     *See In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 737-38 (5th Cir. 1995).

[8]     *Id.*

22.     *The Length of the Delay and its Potential Impact on Judicial Proceedings.*     As

stated above, the effect of allowing the Claim as timely will not likely result in any additional,

significant, judicial proceedings, except for those through which it would otherwise proceed, and

it will not have a meaningful impact on the reorganization process.  And in this case, the length of

delay in filing the Claim was roughly thirty days, not unlike the twenty days late which the

*Pioneer* court found to fall within the meaning of excusable neglect.

23.     *The Reason for the Delay.*     The sole reason for the one year delay in the filing of

these Objections and having this claim determined was due to Debtors' decision not to file them.

In contrast, Respondent's counsel was extremely diligent, first in discovering the absence of any

claim notices, second in ascertaining the existence of a bar date for claims on their own, and third

in immediately acting on the new information to get the Claim immediately filed.  And though it

cannot and should not be over-emphasized, none of this would likely have occurred had counsel

for Respondent actually received the Notice.

24.     The "reason for the delay" or "excuse" in this case lies in stark contrast to the

dubious excuses provided by others whose claims of excusable neglect have been questioned or

rejected outright.  The failure to receive a notice not sent to Respondent's counsel is a far cry

from:

> a) disruption to the attorney's law practice due to withdrawal from a former law firm and lack of access to the file (*Pioneer, supra* at 384);

> b) reliance on "a remark by counsel for another party" regarding the deadline for filing an appeal (*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 (2d Cir. 2003), *cert. denied, sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004));

> c) attempting to amend a timely-filed claim, or seeking leave to file a new claim, to include an omitted liability against an affiliate six months after the bar date where counsel knew of the bar date but neglected to file it due to focusing on and heavy involvement with negotiations with the affiliate (*Midland Cogeneration Venture Ltd. P'ship v. Enron*

*Corp. (In re Enron Corp.)*, 419 F.3d 115, 120, 126 (2d Cir. 2005)); or

d) misconstruing the effect of an order under Rule 50(a) as constituting a final, appealable judgment and thus failing to file a timely appeal (*Redhead v. Conference of Seventh-Day Adventists*, 360 Fed. Appx. 232, 233-35 (2d Cir. 2010)).

The failure to learn of the deadline - - which counsel for Respondent was told by the Court in the 341 meeting notice to later expect in a subsequent notice - - was perhaps due to an irregularity in service that was not in compliance with the strict requirements of Rule 5(b)(1), but it was in any case far from ignorance, mistaken assumptions regarding the effect of the bar date, or the result of conscious, tactical decisions about whether to file or not to file a claim in this case. These cases are inapposite, and further support the allowance of the Claim as timely filed.

25.    *Whether the Movant Acted in Good Faith.*    There is no evidence that Respondent or her counsel have done anything other than act in good faith in pursuing this matter, once the existence, and the passing, of the bar date was discovered. At that time, immediate action was taken to rectify the omitted claim filing.

26.    *Other Reasons Justifying Relief from Operation of the Bar Date.*    There are multiple other reasons that the Claim should be allowed as timely. First, in addition to the absence of actual notice, the absence of meaningful delay given the time the case has been pending, and the stage of the proceedings in which the Claim was filed (well in advance of reorganization), there is an important jurisdictional question as to whether or not, given the language of 28 U.S.C. §§157(b)(2)(B) and (O), (b)(5) and 1411, this Court should be, in effect, determining the amount of any distribution to Respondent to be $0.00. Second, through counsel Respondent had requested that her Claim be submitted for possible resolution through the ADR procedures adopted herein *prior to the filing of the Objections*; that process should be given the chance to resolve the Claim by agreement. Finally, the Respondent and those she represents

should have their claim tried on the merits; to allow the Claim as timely would work no unfairness to the Debtors, but to disallow the Claim without a trial would work a meaningful unfairness on Respondent, especially in view of the diligence shown in prosecuting the Claim once the failure of notice/omission was discovered.

WHEREFORE, PREMISES CONSIDERED, Respondent prays that on final hearing of the Objections and this response, this Court enter an order allowing the Claim as timely without prejudice to Debtors' right to object thereto on substantive grounds, and granting such other relief as may be appropriate, equitable and just under the circumstances and applicable law.

Respectfully submitted,

THE LAW OFFICE OF MARC M. ISAAC, PLLC

By: ___/s/Marc M. Isaac_____
        MARC M. ISAAC

**210 Moore Avenue**
**Freeport, NY  11520**
**Telephone: (516) 750-1422**
**Facsinile:  (866) 342-2903**
**E-mail:  misaac@mmipllc.com**

**ATTORNEYS FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to the following:

the attorneys for debtor, Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq., Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, NY 10153;

to Debtors, c/o Motors Liquidation Co., 401 South Old Woodward Ave., Suite 370, Birmingham, Michigan 48009 (ATTN: Ted Stenger, Esq.);

General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (ATTN: Laurence S. Buonomo, Esq.);

attorneys for the United States Department of the Treasury, Cadwalader, Wickersham & Taft, LLP, One World Financial Center, New York, NY 10281 (ATTN: John J. Rapisardi, Esq.);

the United States Department of the Treasury, 1500 Pennsylvania Ave. NW, Room 2312, Washington, D. C. 20220 (ATTN: Joseph Samarias, Esq.);

Vedder Price, P. C., the attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, NY 10019 (ATTN: Michael J. Edelman, Esq. and Michael L. Schein, Esq.);

counsel for the statutory committee of unsecured creditors, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036 (ATTN: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.);

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (ATTN: Tracy Hope Davis, Esq.);

the U. S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, NY 10007 (ATTN: David S. Jones, Esq. and Natalie Kuehler, Esq.);

attorneys for the official committee of unsecured creditors holding asbestos-related claims, Caplin & Drysdale, Chartered, 375 Park Ave., 35th Floor, New York, NY 10152-3500 (ATTN: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and at One Thomas Circle, N.W., Suite 1100, Washington, D.C. 20005 (ATTN: Trevor W. Swett, III, Esq. and Kevin C. Maclay, Esq.); and

Stutzman, Bromberg, Esserman & Plifka, counsel for Dean M. Trafalet in his capacity as legal representative of future asbestos personal injury claimants, (ATTN: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), 2323 Bryan Street, Suite 2200, Dallas, TX 75201,

via first class, postage prepaid, U. S. Mail, and to all parties or persons requesting notice hereof via ECF, on this 27th day of January, 2011.


*/s/James L. Mitchell*
**James L. Mitchell**