Marc M. Isaac
THE LAW OFFICE OF MARC M. ISAAC, PLLC
210 Moore Avenue
Freeport, NY   11520
Telephone: (516) 750-1422
Facsinile:  (866) 342-2903
E-mail:  misaac@mmipllc.com

James L. Mitchell
PAYNE MITCHELL LAW GROUP
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX   75219
Telephone: (214) 252-1888
Facsimile:  (214) 252-1889
E-mail: Jmitchell@PayneMitchell.com

*Attorneys for Sandra Slaymaker, Personal Representative of the Estate of Laurence Slaymaker, Deceased*

UNITED STATES  BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: § § § MOTORS LIQUIDATION CO., *et al.*, § f/k/a General Motors Corp., *et al.*, § § Debtors. § § | Chapter 11 Case No. Case No.  09-50026 (REG) (Jointly Administered) Hearing: February 3, 2011 @ 9:45 a.m. (ET) |

### AFFIDAVIT OF STAN BOLER

**STATE OF TEXAS**     §
                       §
**COUNTY OF DALLAS**   §

   BEFORE ME, the undersigned authority, personally appeared **STAN BOLER**, who being duly sworn, did depose and state as follows:

   1.   My name is **STAN BOLER**. I am over twenty-one (21) years of age, of sound mind, and fully capable of making this Affidavit. I have never been convicted of a crime

involving moral turpitude. All of the facts set forth herein are within my personal knowledge, and are true and correct.

2.  I am a legal assistant for James L. Mitchell, shareholder of the law firm known as Payne Mitchell Law Group ("the Firm"), and have worked at the Firm for the past roughly 5 years. I work primarily with Mr. Mitchell, and I was the sole person responsible for processing mail received by or sent to Mr. Mitchell or the Firm in connection with the bankruptcy case of General Motors Corp. in regards to the claims of Sandra Slaymaker.

3.  On October 20, 2007, Laurence Slaymaker was killed when, while working underneath his 2002 GMC Sierra 2500HD pickup truck to remove accumulated brush from the undercarriage of the vehicle, the transmission and parking brake - - both allegedly defective - - simultaneously failed, causing the vehicle to roll over his torso and inflicting mortal injuries.

4.  On January 30, 2009, the Firm filed a lawsuit on behalf of Sandra Slaymaker, acting on her own behalf, on behalf of Laurence Slaymaker, and on behalf of his heirs, for wrongful death and survival claims against General Motors and others in state court in Carbon County, Wyoming; the lawsuit was styled *Sandra Slaymaker, Personal Representative of the Estate of Laurence Slaymaker, Deceased v. General Motors Corporation and Big Wyoming Buick, Pontiac, Cadillac, GMC, Inc.*, Civil Action No. CV-09-28, pending in the Second Judicial District Court of Carbon County, Wyoming (hereafter, "the Lawsuit"). Mr. Richard R. Jamieson of the law firm Jamieson & Robinson, LLC in Caspar, Wyoming was identified as the local attorney for Ms. Slaymaker, and the Firm appeared in the Lawsuit as co-counsel. Neither Mr. Jamieson, nor Mr. Mitchell, are practicing bankruptcy lawyers, and neither has a bankruptcy attorney in their firms. Through their defense counsel, General Motors had appeared and answered in the Lawsuit, and General Motors was fully aware of the Lawsuit in June, 2009.

5. On or about June 1, 2009, General Motors initiated the bankruptcy case with the filing of their voluntary petition under Chapter 11 of the United States Bankruptcy Code. Subsequently, in early June, 2009, Linda Miner at Jamieson & Robinson received, and forwarded me, a Notice of Meeting of Creditors, which a true and correct copy of which is attached to Ms. Slaymaker's response to the 111th Omnibus Proof of Claim Objection as **_Exhibit "B"_**. This notice specifically states, as relates to deadlines for filing proofs of claim, that "Notice of deadline will be sent at a later time." Since then, Ms. Miner received notices and pleadings from the bankruptcy case, and was responsible for forwarding them to me at Mr. Mitchell's offices; I, in turn, would retain those documents electronically or in our physical files regarding the Lawsuit. I retain on my computer, and do not delete, all e-mail sent from my computer, and all e-mail received by me, in regards to any pending lawsuits being handled by the Firm, including that which was generated or received from Ms. Miner in connection with the Lawsuit.

6. I have thoroughly reviewed our physical files in regards to the Lawsuit and/or the General Motors bankruptcy; in addition, I have reviewed our electronically stored records in regards to the Lawsuit and/or the General Motors bankruptcy. I can confidently say that between September 16, 2009 and December 30, 2009, the Firm did not receive a copy of the "Notice of Deadlines for Filing Proofs of Claim" ("the Notice"), whether directly or from Jamieson & Robinson. I first discovered that the Notice established a bar date of November 30, 2009 when I reviewed on line case information concerning claims in late December, 2009.

7. It appears now that the Debtors' claims agent, Garden City Group, alleges it sent the Notice to Jamieson & Robinson's, addressed to Ms. Slaymaker, but that by its Affidavit of Service it admits that if the Notice was sent to Jamieson & Robinson's address, it was not

addressed to either Jamieson & Robinson or to Mr. Jamieson. In any case, if it had been received, it likely would have been sent to me whereupon I would have notified Mr. Mitchell. For this reason, I am confident that it was not received by me or by the Firm.

8. While the Notice was not received by the Firm, the Firm was being sent and receiving various notices and pleadings sent addressed to Jamieson & Robinson, Mr. Jamieson, and to Ms. Slaymaker by the Garden City Group relating to the General Motors bankruptcy prior to and after the purported mailing of the Notice; these were sent to me by Ms. Miner. Among other things, from her I received the following notices from the bankruptcy case:

> notice of the meeting of creditors and a notice of hearing on a motion to sell substantially all of the Debtors' assets to Vehicle Acquisition Holdings, LLC on or around June 10, 2009;
>
> notice of hearing regarding Debtors' disclosure statement on or around October 5, 2010 (at around the same time as the purported service of the Notice), and
>
> on or around December 27, 2010, notice of the approval of the disclosure statement and confirmation hearing (and separately, notice of the administrative claims bar date).

At no time prior to December 27, 2009 did I or Mr. Mitchell receive, or have actual knowledge of, the Notice or its contents, or the existence of the November 30, 2009 proof of claim bar date.

9. The above notices (exclusive of the Notice) that were received were apparently sent to Jamieson & Robinson *and* to Ms. Slaymaker.

10. Not having seen a bar date notice as reflected in the 341 notice, in late December, 2009, on our own and on behalf of the Firm I checked the docket to see if there were any other relevant notices. It was then that I first discovered that there was a passed bar date of which neither Mr. Jamieson's offices, nor ours, had received any prior notice.

11. Having discovered the bar date, on December 30, 2009, I promptly sent for filing Ms. Slaymaker's Claim, which was apparently recorded by Garden City Group on the Claims Register has having been received on January 4, 2010. With it, I sent a letter specifically addressing the lateness of the claim and the absence of notice of the bar date or the Notice in which it was otherwise announced. In the letter, I said:

> The purpose of this letter is to advise you and the Court that said Notice of Claim was filed after the Bar Date because neither Ms. Slaymaker nor this firm received notice of the Bar Date. Accordingly, we would respectfully request that the Court grant an exception and allow the filing of Ms. Slaymaker's Notice of Claim.

True and correct copies of the Claim sent for filing by me, and of the accompanying letter referenced above, are attached to the Response and incorporated therein as **_Exhibits "H" and "I"_** respectively.

12. Both the Firm, and Mr. Mitchell, acting through me, were diligent in attempting to be and remain aware of the relevant dates and deadlines so as to get Ms. Slaymaker's claim timely filed, and the moment we discovered that we had received no notice of the bar date, we responded immediately, with diligence and speed, to get the claim filed. Indeed, I was instructed to keep an eye out for the bar date for the very purpose of ensuring that, once notified of it, Ms. Slaymaker's claim would be timely and properly filed. Had I had actual knowledge of the Notice or the proof of claim bar date before it had passed, I would have timely filed Ms. Slaymaker's claims.

Further, Affiant sayeth not.

_____
STAN BOLER

SUBSCRIBED AND SWORN TO BEFORE ME, on the 26th day of January, 2011, to certify which witness my hand and official seal.

_____
Notary Public



KIM N GHEARING
My Commission Expires
July 23, 2011