HEARING DATE AND TIME: February 3, 2011 at 9:45 a.m.
OBJECTION DEADLINE: January 27, 2011 at 4:00 p.m.

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                    :    **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.*,    :    **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*    :
                                                            :
        Debtors.            :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**OMNIBUS OBJECTION OF DEBTORS TO MOTIONS OF (i) GREEN
HUNT WEDLAKE, INC., TRUSTEE OF GENERAL MOTORS NOVA SCOTIA
FINANCE COMPANY, (ii) CERTAIN NOTEHOLDERS, AND (iii) MORGAN STANLEY
& CO. INTERNATIONAL PLC PURSUANT TO RULE 3018(a) OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE FOR TEMPORARY ALLOWANCE OF
CLAIMS FOR PURPOSE OF VOTING TO ACCEPT OR REJECT THE PLAN**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation or "**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), submit this objection (the "**Objection**") to (i) the motion of Green Hunt Wedlake, Inc., Trustee of General Motors Nova Scotia Finance Company (the "**Nova Scotia Trustee**") (ECF No. 8252), (ii) the motion of Appaloosa Management L.P. ("**Appaloosa**"), Aurelius Capital Management, LP ("**Aurelius**"), Elliott Management Corporation ("**Elliott**"), and Fortress Investment Group LLC ("**Fortress**")

(the "**Nova Scotia Noteholders Motion**") (ECF No. 8535), and (iii) the joinder of Morgan Stanley & Co., International plc ("**Morgan Stanley**," and collectively with Appaloosa, Aurelius, Elliott, and Fortress, the "**Nova Scotia Noteholders**") (ECF No. 8794), pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for temporary allowance of the Nova Scotia Wind-Up Claim and the Nova Scotia Guarantee Claims, respectively (each as defined in the Debtors' Amended Joint Chapter 11 Plan) (collectively, the "**Motions**").

## Background Facts

1. On December 7, 2010, the Debtors filed their Amended Joint Chapter 11 Plan (the "**Plan**") (ECF No. 8015). On December 8, 2010, the Debtors filed their disclosure statement for the Plan (the "**Disclosure Statement**") (ECF No. 8023), which was approved by the Court on December 8, 2010 (the "**Disclosure Statement Order**") (ECF No. 8043). Thereafter, the Debtors commenced the process of soliciting votes to accept or reject the Plan.

2. Paragraph 16 of the Disclosure Statement Order provides in relevant part:

> Solely for the purpose of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim and without prejudice to the rights of the Debtors in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan (excluding a Note Claim, a Eurobond Claim, or a Nova Scotia Guarantee Claim) is to be temporarily allowed in an amount equal to the liquidated amount of such Claim (if any) as set forth in a timely filed proof of claim, unless such Claim is disputed in the manner set forth in subparagraph 16(f) below . . . *provided, however*, that
>
> . . . .
>
> (f) If the Debtors *or any other party in interest served an objection* to, or request for estimation of, a Claim at least ten (10) days before the Voting Deadline, such Claim shall be *temporarily disallowed for voting purposes only* and not for purposes of allowance or distribution, except to the

> extent and in the manner as may be set forth in the objection or request for estimation;
>
> . . . .
>
> (i) A beneficial holder that has filed a proof of claim on account of its Note Claim, Eurobond Claim, or Nova Scotia Guarantee Claim shall not be entitled to vote on account of such filed proof of claim; *provided, however*, that such holder shall be entitled to receive a Notice Package and vote in accordance with the procedures set forth herein provided such holder is a holder as of the Record Date . . . .

(emphasis added).

3. Paragraph 17 of the Disclosure Statement Order provides:

> If a holder of a Claim seeks to challenge the allowance (or disallowance) of its Claim for voting purposes in accordance with the above procedures, such holder is directed to serve on the Debtors and file with the Court . . . on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, to such Claim, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan.

4. The Nova Scotia Trustee and the Nova Scotia Noteholders have filed the Motions because their respective claims are the subject of objections filed by the statutory committee of unsecured creditors (the "**Creditors' Committee**").

5. As of the commencement of these chapter 11 cases, General Motors Corporation ("**GM**") was party to a Fiscal and Paying Agency Agreement, dated as of July 10, 2003 (the "**Nova Scotia Fiscal and Paying Agency Agreement**"), by and between non-Debtor General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"), as issuer, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent, and Bank Général du Luxembourg S.A., as paying agent. Under the Nova Scotia Fiscal and Paying Agency Agreement, GM guaranteed the payment by GM Nova Scotia of principal and interest on the £350,000,000 of

8.375% unsecured notes due 2015 and £250,000,000 of 8.875% unsecured notes due 2023 issued by GM Nova Scotia (collectively, the "**Nova Scotia Notes**"). As of the commencement of these cases, the principal amount outstanding under the Nova Scotia Fiscal and Paying Agency Agreement was, in U.S. dollars, approximately $985 million.

6. On November 19, 2010, the Creditors' Committee filed an objection to claims filed by the Nova Scotia Trustee and the Nova Scotia Noteholders (ECF No. 7859), which amended its objection filed on July 2, 2010 (ECF No. 6248) (together, the "**Creditors' Committee Objection**"). The Creditors' Committee Objection seeks, among other things, to disallow or equitably subordinate the Nova Scotia Wind-Up Claim (as defined in Section 1.103 of the Plan) and certain Nova Scotia Guarantee Claims (as defined in Section 1.102 of the Plan). Generally, the Creditors' Committee asserts that the Nova Scotia Wind-Up Claim and the Nova Scotia Guarantee Claims are inflated by over $2 billion and that the Nova Scotia Wind-Up Claim is duplicative of the Nova Scotia Guarantee Claims. The pleadings in this disputed matter are quite voluminous, and the Court is well familiar with the various assertions and arguments contained therein. In addition, the discussion in the Disclosure Statement regarding the Nova Scotia Wind-Up Claim, the Nova Scotia Guarantee Claims, and the Creditors' Committee's Objection is incorporated in this Objection as if fully set forth herein (Disclosure Statement at 37-43 (setting forth positions of Creditors' Committee, Nova Scotia Trustee, and Nova Scotia Noteholders.)).

## **The Motions Should Be Denied**

7. Bankruptcy Rule 3018(a) empowers the Court to temporarily allow a claim of a creditor "in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). In interpreting Bankruptcy Rule 3018, courts in this District have held that the "temporary allowance of a claim for voting purposes is committed

to the sound discretion of the bankruptcy court." *Pension Benefit Guar. Corp. v. Enron Corp.*, No. 04 Civ. 5499 (HB) 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004). However, the Bankruptcy Code and the Bankruptcy Rules are "noticeably silent as to how a Bankruptcy Court should calculate such a claim." *Id.* The Court must, therefore, "employ whatever method is best suited to the circumstances of the case." *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996).

8. The purpose of Bankruptcy Rule 3018 is to provide a mechanism that permits votes of creditors to be counted fairly in connection with the confirmation of a chapter 11 plan in light of legitimate objections that might exist with respect to their claims. *See In re Goldstein*, 114 B.R. 430, 434 (Bankr. E.D. Pa. 1990) (Bankruptcy Rule 3018 can be utilized "as a tool which the court or any party can invoke to expedite confirmation when numerous objections to claims cloud the issue of creditors' rights to vote"). However, Bankruptcy Rule 3018 is not a blanket invitation to enfranchise any claimant whose claim is the subject of an objection and, thus, temporarily disallowed for voting purposes. *See In re River Capital Corp.*, 155 B.R. 382, 385 (Bankr. E.D. Va. 1991) (denying claimant's motion to temporarily allow claim for plan voting purposes because claimant would not have ultimately prevailed on merits of his claim). Rather, Bankruptcy Rule 3018 is designed to have the Court weigh the risk of disenfranchising certain creditors against the risk that certain creditors, whose claims ultimately will be disallowed, will overshadow legitimate creditors because of the temporary allowance. *See Enron Corp.*, 2004 WL 2434928, at *5 ("When circumstances warrant the estimation of claims for voting purposes, the bankruptcy court has utilized its claim estimation authority to ensure voting power was commensurate with economic interest.").

9.  Pursuant to the Motions, the moving parties seek to have nearly $3 billion in claims vote on the Plan, representing a significant portion of claims in Class 3 (General Unsecured Claims) under the Plan. The Debtors submit that, under the circumstances here, where the Court has declined to hear the dispute on summary judgment motions and serious litigable issues have been raised as to the allowance of both the Nova Scotia Wind-Up Claim and the Nova Scotia Guarantee Claims, granting to the movants a disproportionate voice in the voting process is not appropriate.[1]

10. The Debtors have no objection to permitting each of Appaloosa, Aurelius, Elliott, Fortress, and Morgan Stanley to vote their individual portions of the Nova Scotia Guarantee Claims (not to exceed $1.072 billion in the aggregate). However, to permit any additional voting in view of the disputed nature of all of the claims is neither appropriate nor fair to the other creditors in these chapter 11 cases.

---

[1] The Nova Scotia Noteholders' argument that the Debtors are "estopped" from arguing that the Nova Scotia Guarantee Claims should not be temporarily allowed is without any foundation. (Nova Scotia Noteholders Motion at 15.) Contrary to the Nova Scotia Noteholders' assertions, there was no e-mail exchange that informed the Nova Scotia Noteholders that "the Nova Scotia Guarantee Claims are allowed for purposes of voting on the Plan." (*Id.* at 2, 6.). The e-mails annexed as Exhibit "F" to the Nova Scotia Noteholders Motion do not mention the words "allowed," "temporarily allowed," or "Rule 3018," much less the amount of the Nova Scotia Guarantee Claims to be temporarily allowed, and any assertion to the contrary is misleading.

WHEREFORE, the Debtors respectfully request that the Court either (i) deny the Motions in their entirety or (ii) permit the five individual Nova Scotia Noteholders to vote their individual claims in an aggregate amount not to exceed $1.072 billion, and grant the Debtors such other and further relief as is just.

Dated:  New York, New York
            January 27, 2011

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession