**HEARING DATE AND TIME: TO BE DETERMINED**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
**In re:**                                                     :    **Chapter 11**
                                                               :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                      :    **Case No.: 09-50026 (REG)**
         **f/k/a General Motors Corp.,** *et al*.              :
                                                               :    **(Jointly Administered)**
                        **Debtors.**                           :
---------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC TO
<u>SUBMISSIONS BY BILLY RAY KIDWELL, *PRO SE*</u>**

NYC_IMANAGE-1229563v2

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

OBJECTION........................................................................................................................... 4

    A.    The Warranty-Related Claims Asserted by Kidwell are Not Assumed Liabilities ............ 4

    B.    Kidwell's Lemon Law Claims are Not Assumed Liabilities............................................. 7

    C.    The Sale Order Bars the Continued Prosecution of Kidwell's Warranty-Related Claims and Lemon Law Claims ................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**
Bankruptcy Rule 9011 ................................................................................................................. 3
Florida Statutes Annotated, Sections 681.10 through 681.118 and 681.1095 and Florida
    Administrative Code, Rules 2-30.001, and 2-33.002 through 2-33.004 .................................... 8
*Kidwell v. General Motors Corp.*, 975 So. 2d 503 (Fla. Dist. Ct. App. 2007) ............................... 8

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this response ("**Response**") (i) to the *pro se Motion for Sanctions Against the Law Firm of King & Spalding LLP, and Attorneys Arthur Steinberg, and Scott Davidson for the Intentional Violation of Rule 9011(b)(1), Rule 9011(b)(2), Rule 9011(b)(3) and Rule 9011(b)(4) with Affidavit(s) and Exhibits* [Docket No. 8375] ("**Sanctions Motion**") and certain other pleadings identified below, each filed by Billy Ray Kidwell ("**Kidwell**") and (ii) in further support of the *Objection by General Motors LLC to Pro Se Motion to Show Cause Why General Motors LLC., and its Corporate Governance, Should Not be Held in Contempt for Intentionally Violating this Court's Orders, While Terrorizing a Disabled Combat Veteran, and His Family*, dated November 22, 2010 [Docket No. 7889] ("**Contempt Objection**") filed by New GM. In support of this Response, New GM respectfully represents as follows:

**INTRODUCTION**

1.       New GM filed the Contempt Objection in response to Kidwell's *Motion to Show Cause Why General Motors LLC., and Its Corporate Governance, Should Not Be Held in Contempt for Intentionally Violating this Court's Orders, While Terrorizing a Disabled Combat Veteran, and his Family* ("**Contempt Motion**"). Thereafter, in response to the Contempt Objection, Kidwell filed the Sanctions Motion and the following additional pleadings: (i) the *Motion to Submit Two Affidavits in Support of Movant's Motion for Sanctions Against the Law Firm of King & Spalding LLP, and Attorneys Arthur Steinberg, and Scott Davidson for the Intentional Violation of Rule 9011(b)(1), Rule 9011(b)(2), Rule 9011(b)(3) and Rule 9011(b)(4)* [Docket No. 8377] ("**Affidavits Motion**"); (ii) the *pro se Motion for Judicial Notice that GM*

1

*Vehicle Warranties, State Lemon Law Obligations, and Related Regulatory Obligations under Such Statutes are an Assumed Liability for the New General Motors LLC, with Exhibits* [Docket No. 8376] ("**Judicial Notice Motion**"); (iii) the *pro se Notice of Denial of Due Process Resulting in Great Bodily Harm to Movant, Billy Ray Kidwell and Motion for Appropriate Relief* [Docket No. 8799] ("**Due Process Notice**"); and (iv) the *pro se* letter dated January 6, 2011 from Kidwell to the Honorable Robert E. Gerber [Docket No. 8798] ("**January 6 Letter**" and, collectively with the Sanctions Motion, the Contempt Motion, the Affidavits Motion, the Judicial Notice Motion and the Due Process Notice, the "**Kidwell Pleadings**").

2.  New GM believes that none of the Kidwell Pleadings have any merit. However, New GM is concerned that a specific response to each of the allegations in the Kidwell Pleadings will engender only further pleadings by Kidwell (as has already occurred). New GM notes that in certain recent pleadings filed with this Court and with the Florida District Court,[1] Kidwell has attacked not only New GM and its lawyers, but also the judiciary handling these matters. Attached hereto as Exhibit "A" are pleadings that illustrate this point.

3.  Under these circumstances, New GM believes it would promote judicial efficiency to address the central issue that underlies the Kidwell Pleadings, and defer consideration of all other matters raised by the Kidwell Pleadings. In New GM's view, the central issue for this Court to decide is whether New GM can be held responsible for any of the claims that Kidwell believes emanate out of his purchase of a Chevy S-10 pickup truck from Old GM in 2003. New GM believes that, once this Court decides this central issue, the Court can assess the remaining issues, if any, raised by the Kidwell Pleadings and direct the parties how it would like them addressed. Accordingly, New GM requests that the Court bifurcate the issues

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Contempt Objection.

raised by the Kidwell Pleadings in the manner discussed above, and permit New GM to defer responding to the remaining allegations made in the Kidwell Pleadings (such as the appropriateness of assessing Bankruptcy Rule 9011 sanctions against New GM's attorneys based on the filing of the Contempt Objection) until the central issue has been decided by the Court.

4.      As explained in the Contempt Objection and as further discussed below, the scope and limitations of New GM's responsibilities are defined in the Sale Order, which provides that, with the exception of certain liabilities expressly assumed under the relevant agreements, *the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability . . . ."* Sale Order, ¶ 7 (emphasis added).

5.      Therefore, New GM only assumed such liabilities of Old GM as set forth specifically in the MSPA and Sale Order. In particular, as discussed in the Contempt Objection and further described herein, New GM only assumed certain express warranty-related claims and Lemon Law claims (as defined in the MSPA). New GM did not assume the warranty-related claims and the asserted "Lemon Law" claims set forth by Kidwell in the Contempt Motion. Thus, as provided in the Sale Order, Kidwell is prohibited from asserting such claims against New GM.

6.      This Court retained exclusive jurisdiction to resolve all disputes relating to the MSPA and Sale Order including the liabilities assumed by New GM thereunder. *See* Sale Order, ¶ 71. Thus, the central issue raised by the Kidwell Pleadings is squarely before this Court.

**OBJECTION**

A.  **The Warranty-Related Claims Asserted
    by Kidwell are Not Assumed Liabilities**

7.  The relevant background facts are set forth in the Contempt Objection[2] and will not be repeated herein.

8.  New GM acknowledges that it assumed certain obligations of Old GM in connection with "express written warranties of [the Debtors] that are specifically identified as warranties and delivered in connection with the sale of" specified vehicles. MSPA, §2.3(a)(vii). However, it is clear from a review of the MSPA, the Sale Order and the other relevant documents, that New GM only assumed the obligation to fund and otherwise support the standard limited warranties of repair issued by Old GM. No other warranty-related claims were assumed by New GM. Here, Old GM's express warranty on Kidwell's vehicle is expressly limited to repair of specific defects in material and workmanship if the vehicle is presented to an authorized dealer within the express time and *distance* limitations of the warranty. The express warranty specifically provides that performance of repairs and needed adjustments is Kidwell's exclusive remedy. *New GM did not assume other liability claims relating to alleged warranties*, including liability for personal injuries, economic loss, or expenses. Thus, under the Sale Order, New GM did not assume any civil liability for the damages Kidwell sought as a result of Old GM's alleged breach of warranty. *See* Sale Order, ¶ 56 (New GM assumed express warranties "subject to conditions and limitations contained therein").

9.  Old GM's standard limited warranty provides only for repairs to the vehicle during the warranty period in accordance with specified terms, conditions and limitations. *See*

---

[2]  For the Court's convenience, a copy of the Contempt Objection (without exhibits) is annexed hereto as Exhibit "B."

4

Old GM Limited Warranty,[3] at 4.  The express written warranty for Kidwell's vehicle contains the following relevant provisions:

> • "General Motors shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty." (Old GM Limited Warranty at 8.)
>
> • "Economic loss or extra expense is not covered.  Examples include:
>
>   • Loss of vehicle use
>
>   • Inconvenience
>
>   • Storage
>
>   • Payment for loss of time or pay
>
>   • Vehicle rental expense
>
>   • Lodging, meals, or other travel costs
>
>   • State or local taxes required on warranty repairs" *(ld.* at 7.)

10. The express warranty for repair for Kidwell's vehicle contained the following limitations:

> • To obtain repairs to one's vehicle, the owner must "take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs." (Old GM Limited Warranty at 5.)
>
> • The warranty coverage extends only for three years or 36,000 miles, whichever comes first. *(ld.* at 4.)

11. Here, it is undisputed that Kidwell purchased his vehicle in 2003.  The repair warranty period lapsed in 2006, three years prior to the entry of the Sale Order and New GM's purchase of Old GM's assets.  New GM, thus, cannot be found liable for Kidwell's warranty-related claims for repair, which are the only warranty-related claims New GM assumed.

---

[3] While a copy of the Old GM Limited Warranty was attached to the Contempt Objection as Exhibit "D," for the convenience of the Court and Kidwell, another copy of the Old GM Limited Warranty is attached hereto as Exhibit "C."

5

12. The Sale Order provided that New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." *Id.* Similarly, the MSPA expressly excluded any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." MSPA, §2.3(b)(xvi).

13. Moreover, Kidwell is not entitled to any damages from New GM allegedly arising from vague and unidentified statements Old GM allegedly made about the quality of its vehicles or any implied warranties as the Sale Order specifically provides that New GM did not assume "responsibilities for Liabilities contended to arise by virtue of . . . implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials." Sale Order, ¶ 56. Again, the MSPA expressly excluded liabilities arising from "allegation, statement or writing by or attributable to [Old GM]." MSPA, §2.3(b)(xvi)(B). The conduct alleged in Kidwell's Amended Complaint falls squarely within these exclusions.

14. Based on the foregoing, the warranty-related claims asserted by Kidwell are not "Assumed Liabilities" as defined in the MSPA and were not transferred to New GM as part of the sale of Old GM's assets.

15. It should be noted that Kidwell's claims against New GM were previously dismissed with prejudice by the Florida District Court in the Florida District Court Action. However, in response to Kidwell's Reconsideration Motion filed in that action, the Florida

6

District Court recently issued an Order on December 28, 2010 ("**December 28 Order**"),[4] granting Kidwell leave to file an amended complaint to provide the Florida District Court with the contractual basis upon which he based his express warranty claims against New GM. In so doing, the Florida District Court specifically found that its previous order did not contradict this Court's Sale Order. It further found that any express warranty obligations assumed by New GM pursuant to the Sale Order "are of limited scope and apply only to funding and supporting standard limited warranties *of repair* issued by the old entity." December 28 Order, p. 5 (emphasis in original). Nonetheless, the Florida District Court ultimately concluded that "[w]hether Plaintiff's breach of warranty claims were barred by the Bankruptcy Court's Sale Approval Order and whether they state a claim for relief depend upon the language of the express warranty." *Id*. at pp. 5-6. As Kidwell failed to attach a copy of the Old GM Limited Warranty to his complaint, the Florida District Court exercised its discretion by dismissing Kidwell's warranty-related claims without prejudice to give Kidwell an opportunity to amend his complaint. *Id*. at p. 6.

16.  The Florida District Court recognized this Court's jurisdiction over the express warranty-related claims in the December 28 Order. *See* December 28 Order, p. 6 n. 4 ("Defendant's right to submit to the jurisdiction of the Southern District of New York in litigating these claims pursuant to section 9.13 of the Sale Approval Order is not foreclosed by this Order. The Court will consider, when appropriate, a motion to transfer this action.").

**B.    Kidwell's Lemon Law Claims are Not Assumed Liabilities**

17.  New GM also acknowledged in the Contempt Objection that the MSPA provided that New GM assumed "all obligations under Lemon Laws . . . ." MSPA, § 2.3(a)(vii)(B). The

---

[4] A copy of the December 28 Order is annexed hereto as Exhibit "D." A summary of subsequent events related to the December 28 Order is set forth in footnote 5, *infra*.

7

term "Lemon Laws" is defined under the MSPA as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute." MSPA, § 1.1. Pursuant to the terms of the MSPA, the assumption of Lemon Law obligations is, therefore, limited by the "express written warranty" obligations assumed by New GM. While state Lemon Laws, in general, create certain additional remedies and procedures, the Sale Order clarified that New GM's assumption of Old GM's obligations under state "lemon law" statutes is limited to situations "which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes." Sale Order, ¶ 56.

18. Here, Florida's Lemon Law affords consumers the right to seek replacement or refunds for a vehicle through alternative dispute procedures within two years of initial delivery if a manufacturer, after three repair attempts, is unable to fix a defect that substantially impairs the use, value or safety of the vehicle. *See* Florida Statutes Annotated, Sections 681.10 through 681.118 and 681.1095 and Florida Administrative Code, Rules 2-30.001, and 2-33.002 through 2-33.004. Kidwell pursued relief under the Florida Lemon Law against Old GM through arbitration, but lost. Kidwell then failed to pursue the appeal mechanism afforded him under Florida's Lemon Law. *See Kidwell v. General Motors Corp.*, 975 So. 2d 503, 505 (Fla. Dist. Ct. App. 2007) ("if Kidwell was dissatisfied with the decision of the BBB arbitrator he could have sought review by applying to the Florida New Motor Vehicle Arbitration Board, which he failed to do"). Since no liability arose for Old GM under that proceeding, any remaining claims now

8

being asserted by Kidwell against New GM are not claims that New GM assumed as part of the Sale from Old GM.

19.     As stated in the December 28 Order, the Florida District Court agreed with New GM on this point.  Specifically, the Florida District Court found as follows:  "Specifically, Plaintiff's Lemon Law-related claims are really for fraud and obstruction of justice rather than an action under the substantive provisions of the statute. . . .  Thus, counts IV and V of Plaintiff's Amended Complaint were properly dismissed with prejudice." December 28 Order, p. 7.  As the Florida District Court has already dismissed Kidwell's Lemon Law claims **with prejudice**, this issue is resolved.  Accordingly, Kidwell should be prohibited from litigating the Lemon Law issues that have already been decided by the Florida District Court.[5]

C.     **The Sale Order Bars the Continued Prosecution of Kidwell's Warranty-Related Claims and Lemon Law Claims**

20.     As New GM has not assumed the warranty-related claims or Lemon Law claims asserted by Kidwell, his continued prosecution of such claims against New GM constitutes a violation of the Sale Order, which unambiguously states that "all persons and entities, including, but not limited to . . . *litigation claimants* and [others] holding liens, claims and encumbrances, and other interest of any kind or nature whatsoever, including rights or claims based on any

---

[5] In response to the December 28 Order, Kidwell filed a *Request for Clarification of Court Order and Voluntary Compliance with ADA* in the Florida District Court on January 10, 2011 ("**Request for Clarification**"), a copy of which has been annexed hereto as Exhibit "A."  In the Request for Clarification, Kidwell continues to assert that the Lemon Law claims are viable against New GM.  New GM filed *Defendant General Motors LLC's Response to Plaintiff's Request for Clarification of Court Order*, dated January 24, 2011 ("**Response to Request for Clarification**") in response to the Request for Clarification.  A copy of the Response to Request for Clarification is annexed hereto as Exhibit "E."  The Response to the Request for Clarification contains many of the same arguments set forth in this Response.

Recently, Kidwell has filed additional pleadings in the Florida District Court seeking (i) the appointment of counsel and for a stay of the proceeding until counsel can be appointed, and (ii) an extension of time to amend his Amended Complaint.  The December 28 Order gave Kidwell until January 18, 2011 to file an amended complaint, which was not done.  Instead, as noted, Kidwell filed the additional pleadings referenced above.  As of the date hereof, the Eleventh Circuit Court of Appeals has suspended Kidwell's appeal of the Florida District Court's September 10 Order (which dismissed Kidwell's Amended Complaint against New GM with prejudice) pending the Florida District Court's resolution of Kidwell's motion to reconsider that order.

9

successor or transferee liability . . . are forever *barred, stopped and permanently enjoined . . .* from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or claims], including rights or claims based on any successor or transferee liability." *ld*, ¶ 8 (emphasis added); *see also id*, ¶ 46 ("[New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated"); *id.*, ¶ 52 (Sale Order "effective as a determination that, except for the Assumed Liabilities, at Closing, all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets prior to the Closing (other than Permitted Encumbrances) have been unconditionally released and terminated . . . ."). Kidwell should, therefore, be directed to cease and desist from the continued prosecution of New GM in this and any other Court.

10

WHEREFORE, New GM respectfully requests that the Court (i) find that New GM is not liable for Kidwell's warranty-related claims and Lemon Law claims; (ii) prohibit, restrain and bar Kidwell from asserting any warranty-related claims and/or Lemon law claims against New GM; (iii) set a schedule with respect to any remaining issues raised by the Kidwell Pleadings; and (iv) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
January 27, 2011

KING & SPALDING LLP

By: Arthur Steinberg
Arthur Steinberg
Scott Davidson
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

*Counsel to General Motors LLC*