# EXHIBIT A

Billy Ray Kidwell, *Pro Se*
5064 Silver Bell Drive
Port Charlotte, Florida 33948
Telephone (941) 627-0433

*On Behalf of himself Pro Se*

**HEARING DATE AND TIME: To Be Determined**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                                    :        **Chapter 11**
                                                         :
MOTORS LIQUIDATION COMPANY, *et al*, :    **Case No. 09-50026 (REG)**
        f/k/a General Motors Corp., *et al*, :
                                                         :
        Debtors                                      :
                                                         :
                                                         :
--------------------------------------------------- :

### NOTICE OF DENIAL OF DUE PROCESS RESULTING IN GREAT BODILY HARM TO MOVANT, BILLY RAY KIDWELL AND MOTION FOR APPROPRIATE RELIEF

Nearly four (4) months ago the extremely disabled *Pro Se Litigant* came to this Court

with an **EMERGENCY** Request for **EXPEDITED** Mandatory Judicial Notice of this Court's

**OWN** GM Sales ORDER.


Nothing complex.


This Court allowed General Motors LLC to arbitrarily, and capriciously, decide when

they would respond to the *Pro Se Movant's Emergency Request.*

1

General Motors LLC did not respond, **did not deny**, or answer, the *Pro Se Litigant's Emergency Request* for over two months, substantially aggravating *Movant's Life-Threatening Stress Disorder*.

The extremely disabled *Pro Se Litigant* made this Court fully aware that the basis for the EMERGENCY Motion was;

*"The Pro Se Petitioner is extremely disabled with **life-threatening disabilities that are being intentionally aggravated**, at the direction of GM Chairman, Edward E. Whitacre, Jr., the governance of General Motors, LLC., and their legal department, as they blatantly, and intentionally, violate this Court's ORDER(s), and the Amended and Restated Master Sale and Purchase Agreement."* [Emergency Motion for Expedited, Mandatory Judicial Notice filed on September 20, 2010 at page five (5). Emphasis added as to the Life-threatening disabilities being intentionally aggravated.]

This Court, *by its failure to act in a Life-Threatening Emergency*, encouraged General Motors LLC, and the Law Firm of King & Spalding LLC to RETALIATE against the severely disabled *Pro Se Litigant*, increasing their intentional aggravation of the *Pro Se Movant's Life-Threatening Stress Disorder*, by intentionally lying to this Court about the actual material facts, apparently knowing that they have this Court *"in their pocket"*, and knowing that there would be no action taken against General Motors LLC, or the GM Attorneys, for their blatant, intentional, lying, for their dishonesty, and dilatory *"Tactics"*, and their ***Fraud on this Court***.

2

The *Pro Se Litigant*, who has a history of at least one Stress-Caused Life-Threatening Heart Attack, suffered massive undue stress, as a direct result of this Court's failure to consider the threat to Movant's Life an Emergency, along with depression, heart pains, loss of sleep, and a substantial aggravation of his Stress Disorder.

The *Pro Se Litigant* also sought a Show Cause ORDER against General Motors LLC for its blatant refusal to abide by this Court's Sales ORDER, and the attached GM Sales Agreement.

*Again*, this Court refused to act.

*Again*, this Court allowed General Motors LLC to arbitrarily, and capriciously, decide when they would respond to the *Pro Se Movant's Show Cause Motion*, and General Motors LLC did not respond, **did not deny**, or answer, the *Pro Se Litigant's Show Cause Motion* for over two months.

On November 30, 2010 the severely disabled *Pro Se Litigant* filed a Motion for Sanctions against the Law Firm of King & Spalding LLP for multiple, bad faith, intentional violation(s) of Federal Rule of Bankruptcy Procedure Rule 9011(B)(1),  Rule 9011(b)(2), Rule 9011(b)(3), and Rule 9011(b)(4), by the Law Firm of King & Spalding LLP, and King & Spalding Attorneys Arthur Steinberg, and Scott Davidson.

3

The Law Firm of King & Spalding LLP, and King & Spalding Attorneys Arthur

Steinberg, and Scott Davidson, conceded their multiple, bad faith, intentional violation(s) of

Federal Rule of Bankruptcy Procedure Rule 9011(B)(1), Rule 9011(b)(2), Rule 9011(b)(3), and

Rule 9011(b)(4), and **have not denied**, contested, or bothered to answer the *Pro Se Movant's*

Motion for Sanctions.

On December 9, 2010 Movant, Billy Ray Kidwell, filed an Affidavit, *given under oath*,

directly stating that the Law Firm of King & Spalding, LLP intentionally violated Federal Rules

of Bankruptcy Procedure, Rule 9011(B)(1), Rule 9011(b)(2), Rule 9011(b)(3), and Rule

9011(b)(4).

On December 9, 2010 an Eye Witness, Movant's Wife, Tana Kidwell, filed an Affidavit,

*given under oath*, directly stating that the Law Firm of King & Spalding, LLP intentionally

violated Federal Rules of Bankruptcy Procedure, Rule 9011(B)(1), Rule 9011(b)(2), Rule

9011(b)(3), and Rule 9011(b)(4).

**The Law Firm of King & Spalding LLP, and King & Spalding Attorneys Arthur**

**Steinberg, and Scott Davidson, have not contested, or otherwise denied, the allegations, and**

**Statements of Fact, in the Affidavits of Billy Kidwell, and Tana Kidwell.**

On December 10, 2010 the Movant filed another Motion for Judicial Notice, as to the

content of this Court's <u>OWN</u> GM Sales ORDER to reduce litigation in at least three (3) Courts.

4

This Court refused to respond.

On December 24, 2010, after months of this Court refusing to abide by the Americans with Disabilities Act, and refusing the minor ADA Disability Accommodation Request of Movant, to merely expedite the matter, **so Movant could avoid Life-Threatening Stress**, all the intentional Retaliation by General Motors LLC, all the harassment, and lies became too much to bear and Movant felt a heavy pressure on his chest, blacked out, and fell down, suffering great bodily harm to his arm requiring substantial emergency medical care, that is ongoing.

The Movant is sure he suffered another **Life-Threatening Stress-Caused Heart Attack**, as a direct result of the ongoing dilatory tactics of this Court, the intentional lying, and Rule Violations, by General Motors, LLC, and it's attorneys, and the complete mockery being made of the Judicial System by this Court refusing to merely be truthful, and state what its <u>OWN</u> Court ORDERS say.

The GM Sales ORDER this Court released to the public clearly states that <u>ALL</u> State Lemon Law Obligations are an Assumed Liability for the new General Motors LLC.

Either that Court ORDER is truthful, and <u>ALL</u> State Lemon Law Obligations are an Assumed Liability for the new General Motors LLC or this Court committed a massive Fraud on the Public, and a Fraud on the machinery of the Court itself.

This Court has a **<u>DUTY</u>** to resolve this issue.

5

A **DUTY** it is shirking because it does not want to offend the extremely powerful General

Motors LLC, and its lobbyests, with bags of money.


The Master Sale and Purchase Agreement at page 29 says ALL State Lemon Law

Obligations are an Assumed Liability of the new General Motors LLC. [See attached Exhibit.]


Movant is at a complete loss to understand what is so difficult about simply being honest,

and telling the truth.


Movant has been denied anything even remotely close to *"basic fairness"*, or Due

Process.


The public can have no integrity, or faith, in a Court that ignores the rights of the

individual, and will even allow a corrupt Corporation, and dishonest Corporate Attorneys, to

intentionally break the law, harass, and torture, a highly decorated American Veteran, until he

has Life-Threatening Stress-Caused Heart Attacks, all because General Motors wants to steal

$30,000 from the Disabled Veteran, without providing him a vehicle that will even start, or move

on its own.


To the public the only answer that makes sense is that GM's hordes of Lobbyists, with

their bags of money, have either made their way to this Court, or to someone this Court owes

"favors" too.


6

Either way this Court's conduct, or lack thereof, has endangered the life of, and irreparably harmed, a severely disabled Veteran that has been openly robbed by the extremely corrupt governance of General Motors, and merely seeks the money stolen from him, and his wife, and minor child, returned, along with reasonable damages for the intentional inhuman torture, irreparable harm to his health, and substantial shorting of his life.

If this Court does not impose substantial Sanctions against General Motors LLC, and the Law Firm of King & Spalding, LLP, after their outrageous, illegal, conduct in this case, and complete farce, and mockery they have made of these proceedings, their irreparable harm to both Movant, and the judicial system, then no person of reasonable intelligence can ever believe, or have faith in the integrity of this Court.

*Indeed*, the very purpose of this Court granting the original Motion filed by the former General Motors Corporation, and the very purpose of the GM Sales ORDER, and Agreement, to honor ALL State Lemon Law Obligations, was to instill public confidence in the new General Motors, LLC, according to the documents filed in this Court.

This Court, General Motors, LLC, and its dishonest attorneys have made a complete farce of that purpose.

7

Nobody, or anyone of sound mind, after reading the facts of this case, and how Movant

has been defrauded by GM, intentionally terrorized, tortured, and then raped by ***Corporate-***

***Leaning Courts***, or Courts "*influenced*" by GM lobbyests, or owing "*favors*" to General Motors,

would ever even consider purchasing a General Motors Vehicle.


General Motors has clearly demonstrated, in these proceedings, that they are the most

corrupt, and dishonest, corporation on earth.


That they will lie to Congress to get TARP Dollars, and then waste two to three million

of those Taxpayer TARP Dollars on corrupt Attorneys, to pay for years of dishonest litigation,

all to avoid honoring their warranty, after a State Lemon Law Hearing has found that the truck

they sold a disabled Veteran, does not run, knocks when it does run, has a whining transmission,

has doors that fly over, has electrical shorts, and according to the hearing officer is so full of

manufacturing defects that it's not fit, or safe, to even be on the road.


### And this Court has demonstrated that individuals have no rights.


That the Constitution is a joke, and that even America's Disabled Combat Veterans, who

suffer each day as a result of their service to their country, cannot get an honest process, or

"*Meaningful*" Access to this Court, without money, and attorneys.


What has taken place in this Court, in this case, is nothing short of Anti-American,

Unconstitutional, and **SHAMEFUL.**

8

Due Process means *"Basic Fairness"*. There has been none in this case.

**THEREFORE**, the severely disabled Movant puts into the Record, that the failure of this Court to provide *even minimum* Due Process, and this Court allowing General Motors, LLC, and it's attorneys, to violate the Rules, Harass, Lie, Retaliate, and otherwise torture a *Frail Elderly Severely Disabled Pro Se Veteran* with a Bad Heart, has resulted in great bodily harm to the *Movant-Veteran*.

This Court would never have allowed anything even close to this amount of abuse, and torture, to a fellow Attorney, or Judge, or one of their family members.

This appalling conduct was only allowed by this Court because the victim is a 100% Service-Connected Disabled Combat Veteran, on VA Service-Connected Disability, and unable to afford to pay for Attorneys to protect him.

9

## RELIEF

1. It is too late for this Court to take any "*Meaningful*" action on the severely disabled *Pro Se Litigant's* "*Emergency*" Motion, since this Court has ignored the ADA, the basic human rights of the disabled, *as described in International Treaties the United States is a party to*, and this Court has already allowed, and encouraged, General Motors LLC, and its Attorneys, to inflict Life-Threatening Irreparable Harm on the frail, elderly, extremely disabled *Pro Se Litigant*.

2. The frail, elderly, severely disabled *Pro Se Litigant* submits that this Court has an extremely strong Constitutional, and Statutory, **DUTY** to put an end to the ongoing torture, abuse, and terrorizing of Movant, and his family, by issuing an ORDER requiring the Governance of the new General Motors, LLC, to;

(a) Re-submit every Motion, Report, Agreement, Court ORDER, and document of any kind in which the **Assumed Liability of State Lemon Law Obligations** is discussed, stated, or mentioned in any way.

(b) **ORDER** the Governance of General Motors to state to this Court, **under oath**, and under penalty of Perjury, if the new General Motors, LLC, or its governance, was party to an Agreement for <u>ALL</u> State Lemon Law Obligations to be an Assumed Liability of the new General Motors, LLC. [No doubletalk, legalese, or con games, a straight yes or no answer.]

10

(c) If General Motors was a party to such an Agreement an **ORDER** from this Court, for the
Governance of General Motors to attend a **SHOW CAUSE HEARING** to determine
why they should not be held in Contempt, and have **very substantial Sanctions** imposed,
for violating this Court's GM Sales **ORDER**, and their **OWN** Agreement, by terrorizing
a severely disabled Veteran, and his family, **causing Great Bodily Harm**, and telling
both the State Court in Florida, and the United States District Court, that there was no
such Agreement, or Court ORDER, and fraudulently claiming that GM is immune from
State Lemon Law Obligations because of this bankruptcy case.

(d) Because of the massive amount of dishonesty by General Motors LLC, and its attorneys,
even in the short amount of proceedings Movant has filed in this Court, this Court <u>MUST</u>
hold General Motors, LLC. responsible for its conduct, and issue an **ORDER** requiring
the Governance of General Motors, LLC to review, and assure, that each future
document, or response, filed by General Motors, LLC is completely truthful, or face
substantial personal Sanctions.

The Record of this Case proves that the above requests are absolutely necessary, pursuant to
the unique circumstances of this case, to stop further intentional irreparable harm being inflicted
on the severely disabled *Pro Se Litigant*, **in all probability causing his death**, and to get to the
truth.

3. This Court MUST also set a hearing for Sanctions on the intentional Federal Rules of
Bankruptcy Procedure, Rule 9011(B)(1),  Rule 9011(b)(2), Rule 9011(b)(3), and Rule
9011(b)(4) violations by the Law Firm of King & Spalding LLP, and King &
Spalding Attorneys Arthur Steinberg, and Scott Davidson.

11

4.  Movant seeks any, and all, other relief that this Court deems to be appropriate, and just.


**Pro Bono Publico** this Court should grant this motion.



Respectfully Submitted,


*Billy R Kidwell*                                         January 6, 2011

Billy Ray Kidwell

5064 Silver Bell Drive

Port Charlotte, FL. 33948    941 627-0433



## CERTIFICATE OF SERVICE

I, Billy Ray Kidwell, hereby certify that a true and correct copy of the attached was served on All Parties on this the 6th day of January 2011 by mailing a true and correct copy of same in the U.S. Mail addressed to them.


*Billy R Kidwell*
Billy Ray Kidwell

# EXHIBIT A

**EXECUTION COPY**

AMENDED AND RESTATED

MASTER SALE AND PURCHASE AGREEMENT

BY AND AMONG

GENERAL MOTORS CORPORATION,

SATURN LLC,

SATURN DISTRIBUTION CORPORATION

AND

CHEVROLET-SATURN OF HARLEM, INC.,

*as Sellers*

AND

NGMCO, INC.,

*as Purchaser*

DATED AS OF

JUNE 26, 2009

**Section 2.3(b)(iv)**, **Section 2.3(b)(vi)** and **Section 2.3(b)(ix)**, (2) Liabilities arising under any dealer sales and service Contract and any Contract related thereto, to the extent such Contract has been designated as a Rejectable Executory Contract, and (3) Liabilities otherwise assumed in this **Section 2.3(a)**;

(vi)    all Transfer Taxes payable in connection with the sale, transfer, assignment, conveyance and delivery of the Purchased Assets pursuant to the terms of this Agreement;

(vii)    (A) all Liabilities arising under express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws;

(viii)    all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in **Section 2.3(b)(iv)**, (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

(ix)    all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

(x)    all Liabilities of Sellers arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Seller, except for Retained Workers' Compensation Claims;

(xi)    all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing;

(xii)    all Liabilities (A) specifically assumed by Purchaser pursuant to **Section 6.17** and (B) arising out of, relating to or in connection with the salaries and/or wages and vacation of all Transferred Employees that are accrued and unpaid (or with respect to vacation, unused) as of the Closing Date;

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2011 JAN 10 PM 1:28

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

BILLY R. KIDWELL,
              Plaintiff

        v.

G. RICHARD WAGONER, et al.,
              Defendant

Case No. 2:09-CV-108-FtM-99DNF

## REQUEST FOR CLARIFICATION OF COURT ORDER

## AND VOLUNTARY COMPLIANCE WITH ADA

## I. Introduction

Both the Americans with Disabilities Act, and the "*Basic Fairness*" Requirements of Due Process, require that this Court clarify, and explain, this Court's hostile, and extremely ambiguous, Court ORDER of December 28, 2010 that gives the Public Appearance that this case is being "*Fixed*" by a dishonest judge[1].

The *Pro Se Litigant* cannot make an intelligent decision, as to whether he should Appeal said ORDER for an abuse of discretion, or try to file an Amended Complaint, under this Court's extreme ambiguous requirements in said ORDER, that are nearly impossible to understand.

That's because this Court's ORDER misstates the actual material facts, making a number of statements that the Record of this Case proves are simply not true, while repeatedly contradicting itself.

---

[1] Plaintiff is not accusing this Court of being dishonest but is merely attempting to point out how this case appears to "*Any Reasonable Person*" based on the actual material facts, and Record of this Case, as explained herein.

-1-

*For example*, this Court <u>NOW</u> admits that the Bankruptcy Court Sales ORDER makes <u>ALL</u> State Lemon Law Obligations an Assumed Liability for the new General Motors LLC.

Then this Court double-talks and claims the Florida Lemon Law Relief specifically provided for by Florida Law, is not an Assumed Liability for General Motors LLC.

Either Florida's Lemon Law <u>ARE</u> an Assumed Liability for the new General Motors, as the GM Bankruptcy Court ORDER states, or they are not. They can't be both.

If this Court is attempting to only accept limited parts of Florida's Lemon Laws, which should be properly cited as the *"Motor Vehicle Warranty Enforcement Act"*, then it MUST clarify what pieces, or parts, it accepts as Assumed Liabilities for the new General Motors LLC, and why this Court does not agree with the GM Sales ORDER that states *"<u>ALL</u> State Lemon Law Obligations are an Assumed Liability for the new General Motors LLC"*.

This Court's ORDER needs to be clear and not so conflicting and ambiguous.

## II. This Court's False Statements in the Court Order as to Florida's Lemon Law

In this Court's ORDER this Court attempts to re-write Florida's Lemon Laws claiming at page seven (7) that Florida's Lemon Laws *"provides consumers with the right to a refund or replacement vehicle if a manufacturer cannot conform the new motor vehicle purchased by the consumer to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts."*

<u>That statement is simply not true.</u>

Florida's Lemon Law is actually Title XXXIX, Chapter 681, and according to 681.10 may be cited as the *"Motor Vehicle Warranty Enforcement Act"*.

According to the Motor Vehicle Warranty Enforcement Act, if the manufacturer cannot conform the vehicle to its intended use, or does not timely respond, the consumer has an unconditional **RIGHT** to decide if the consumer wants a replacement vehicle, or a refund. [See yellow highlights on Exhibit A attached hereto.]

681.104(2)(a) specifically requires that "*The refund, or replacement, **MUST** include all reasonably incurred collateral and incidental charges.*" [Emphasis added. See yellow highlights on Exhibit B.]

Pursuant to Florida's Motor Vehicle Warranty Enforcement Act the $50 a day Plaintiff seeks for the cost of a replacement vehicle, the reasonable storage fees for storing the non-running truck, the aggravation of Plaintiff's disabilities by Defendants leaving a non-running truck, UNDER WARRANTY, in Plaintiff's driveway, and costs associated with the defective truck, are all 681.104(2)(a) "*reasonably incurred collateral and incidental charges*" 681.104(2)(a) says the manufacturer **MUST** pay. [See Exhibit B.]

All of Chapter 681, cited as Florida's Motor Vehicle Warranty Enforcement Act is a **STATUTORY** State Lemon Law **OBLIGATION** for the manufacturer, and as this Court NOW admits, all state Lemon Law Obligations are an Assumed Liability of the new General Motors LLC.

Those collateral, and incidental, charges were sought in Plaintiff's Complaint in Lemon Law Counts IV and V.

Counts IV and V were specifically drafted to comply with Chapter 681, and the specific right of a consumer to file suit for violations of Chapter 681, as specifically authorized by Florida Lemon Law Statutes 681.112, and 681.111. [See Exhibits C and D attached hereto.]

Just as this Court has attempted to re-write Florida's Lemon Laws, while at the same time **NOW** ADMITTING all Florida Lemon Law **OBLIGATIONS** are an Assumed Liability for the new General Motors LLC, this Court has been just as ambiguous in describing Plaintiff's Counts

IV, and V in his Amended Complaint, which pursuant to Florida Law are Florida Lemon Law **OBLIGATIONS**.

Count IV clearly states that it is a Cause of Action for Intentional Fraud on Florida's Lemon Law Process. This count is authorized by 681.111 which makes any violation of Chapter 681 by a manufacturer an "*Unfair or Deceptive Trade Practice*", and a Statutory Florida Lemon Law **OBLIGATION**.

Count V of Plaintiff's Complaint is specifically authorized by Florida Statute 681.112 which specifically authorizes, and gives consumers a Statutory Right to sue to recover damages caused by a violation of Chapter 681, and makes violations of Chapter 681 a Statutory Florida Lemon Law **OBLIGATION**.

This Court now seeks to arbitrarily, and capriciously, overturn 681.112, and 681.111, without explaining its reasoning, or authority, to do so.

This Court needs to clarify its selective application of Florida's Lemon Laws.

**III. This Court's Bias Harassment of Plaintiff to wrongly Punish Plaintiff for Intentional Lying by Defendants**

In said ORDER this Court goes out of its way to be-little, and blame, the *Pro Se Litigant* for allegedly "*misapprehending the scope of the GM Sale Approval ORDER*" while this Court fails to mention that Defendants, and their attorneys, Phyllis Sumner, and Henry Salas, intentionally lied to this Court, *multiple times*, stating "*there were no exceptions, that the new General Motors, LLC was absolutely immune from suit for Lemon Law Actions, and Warranty Claims.*" [Emphasis added.]

-4-

Nor does the Court correctly state that the *Pro Se Plaintiff* submitted the GM Sales Agreement, and Bankruptcy Sales ORDER, to this Court multiple times, and this Court ignored that evidence, and *"Rubberstamped"* the fraudulent statements made by the GM Defendants fraudulently claiming that *"**there were no exceptions**, that the new General Motors, LLC was **absolutely immune** from suit for Lemon Law Actions, and Warranty Claims."*

**Statements that this Court <u>NOW</u> admits were false, and resulted in an improper judgment by this Court.**

*And as appalling as it is,* this Court attempts to blame the severely disabled *Pro Se Litigant* for the intentional, habitual, lying by GM Attorneys Phyllis Sumner, and Henry Salas, by claiming the *Pro Se Litigant "misapprehended the scope of the Sale Approval ORDER."*

It is the GM Defendants that the record proves have habitually lied throughout these proceedings, who are concealing the key witnesses, who were found at the Florida Quasi-Judicial Lemon Law Hearing to have swindled Plaintiff out of nearly $30,000 with a non-running truck full of manufacturer defects, who only prevailed by paying a SITEL Employee to fraudulent pose as a GM Executive and to lie about a technicality, and have expanded this case to three Courts with their dishonesty.

The severely disabled Plaintiff respectfully submits that this Court should stop being so "Corporate-Leaning", and try being impartial by putting the blame, where the blame belongs.

It was the Defendants, with their dishonest corporate attorneys, that lied to this Court saying over, and over, that that *"**there were no exceptions**, that the new General Motors, LLC was **absolutely immune** from suit for Lemon Law Actions, and Warranty Claims."*

It is this Court that issued a wrong decision due to its hate of *Pro Se Litigants*, and this Court's *"Policy"* of **RUBBERSTAMPING** anything a Corporation, or Corporate Attorneys, say <u>without even bothering to look at evidence presented by *Pro Se Litigants*.</u>

Now that this Court finds it was lied to, and deceived, by General Motors, and their Corporate Attorneys, resulting in a wrong judgment that this Court had to correct, this Court takes out its anger **ON THE VICTIM**, a severely disabled *Pro Se Litigant*, who has consistently told the truth.

Plaintiff respectfully submits that this Court should have the courage, and morals, to admit it was wrong, and to be honest and admit it was lied to by General Motors, that the GM Sales ORDER does not make General Motors LLC absolutely immune from suit for its Lemon Law Obligations, as this Court NOW admits.

*In the least*, this Court needs to clarify why it considers only parts of Florida's Lemon Law Manufacturer Obligations an Assumed Liability, and specifically explain what statutes in Chapter 681 this Court considers an Assumed Liability for the new General Motors LLC, and what Florida Lemon Law Obligations this Court claims are not an Assumed Liability for General Motors LLC.

Respectfully submitted,

*Billy Kidwell*

January 8, 2011

Billy Kidwell, *Pro Se*

5064 Silver Bell Drive

Port Charlotte, FL. 33948

941-627-0433

## CERTIFICATE OF SERVICE

I, Billy Ray Kidwell, hereby certify that a true and correct copy of the attached Amended
Complaint was served on Defendants on this the 8th day of January 2011 by mailing a true and
correct copy of same to their Attorney, Phyllis B. Sumner, King & Spalding LLP, 1180
Peachtree Street, NE, Atlanta, GA 30309-3521, and the law firm of Cole, Scott & Kissane, 9150
South Dadeland Boulevard, Suite 1400, P.O. Box 569015, Miami, FL. 33156.

Billy Ray Kidwell

# EXHIBIT  A



Florida Lemon Law 681.104 Nonconformity of motor vehicles.--

1.
1. After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer shall have 10 days, commencing upon receipt of such notification, to respond and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility within a reasonable time after the consumer's receipt of the response. The manufacturer shall have 10 days, except in the case of a recreational vehicle, in which event the manufacturer shall have 45 days, commencing upon the delivery of the motor vehicle to the designated repair facility by the consumer, to conform the motor vehicle to the warranty. If the manufacturer fails to respond to the consumer and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility or perform the repairs within the time periods prescribed in this subsection, the requirement that the manufacturer be given a final attempt to cure the nonconformity does not apply.

2. If the motor vehicle is out of service by reason of repair of one or more nonconformities by the manufacturer or its authorized service agent for a cumulative total of 15 or more days, exclusive of downtime for routine maintenance prescribed by the owner's manual, the consumer shall so notify the manufacturer in writing by registered or express mail to give the manufacturer or its authorized service agent an opportunity to inspect or repair the vehicle

2.
1. If the manufacturer, or its authorized service agent, cannot conform the motor vehicle to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts, the manufacturer, within 40 days, shall repurchase the motor vehicle and refund the full purchase price to the consumer, less a reasonable offset for use, or, in consideration of its receipt of payment from the consumer of a reasonable offset for use, replace the motor vehicle with a replacement motor vehicle acceptable to the consumer. The refund or replacement must include all reasonably incurred collateral and incidental charges. However, the consumer has an unconditional right to choose a refund rather than a replacement motor vehicle. Upon receipt of such refund or replacement, the consumer, lienholder, or lessor shall furnish to the manufacturer clear title to and possession of the motor vehicle.

# EXHIBIT  B

**Florida Lemon Law 681.104 Nonconformity of motor vehicles.--**



1.

1. After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer shall have 10 days, commencing upon receipt of such notification, to respond and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility within a reasonable time after the consumer's receipt of the response. The manufacturer shall have 10 days, except in the case of a recreational vehicle, in which event the manufacturer shall have 45 days, commencing upon the delivery of the motor vehicle to the designated repair facility by the consumer, to conform the motor vehicle to the warranty. If the manufacturer fails to respond to the consumer and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility or perform the repairs within the time periods prescribed in this subsection, the requirement that the manufacturer be given a final attempt to cure the nonconformity does not apply.

2. If the motor vehicle is out of service by reason of repair of one or more nonconformities by the manufacturer or its authorized service agent for a cumulative total of 15 or more days, exclusive of downtime for routine maintenance prescribed by the owner's manual, the consumer shall so notify the manufacturer in writing by registered or express mail to give the manufacturer or its authorized service agent an opportunity to inspect or repair the vehicle.

2.

1. If the manufacturer, or its authorized service agent, cannot conform the motor vehicle to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts, the manufacturer, within 40 days, shall repurchase the motor vehicle and refund the full purchase price to the consumer, less a reasonable offset for use, or, in consideration of its receipt of payment from the consumer of a reasonable offset for use, replace the motor vehicle with a replacement motor vehicle acceptable to the consumer. The refund or replacement must include all reasonably incurred collateral and incidental charges. However, the consumer has an unconditional right to choose a refund rather than a replacement motor vehicle. Upon receipt of such refund or replacement, the consumer, lienholder, or lessor shall furnish to the manufacturer clear title to and possession of the motor vehicle.

# EXHIBIT  C

09-50026-mg    Doc 8886-1    Filed 01/26/11    Entered 01/27/11 14:01:36    Exhibit A

Statutes & Constitution :View Statutes : Senate
Pg 29 of 54
Case 2:09-cv-00108-CEH-DNF    Document 223    Filed 01/10/11    Page 13 of 15
Page 1 of 1



The Florida Senate | flsenate.gov

Location: Home > Statutes & Constitution > View Statutes

January 07, 2011

| Home |
| Session |
| Committees |
| Senators |
| Information Center |
| Statutes & Constitution |
| Video Broadcasts |

🖶 Print This Page

**Select Year:** 2010    [Go]

## The 2010 Florida Statutes

| Title XXXIX | Chapter 681 | View Entire Chapter |

COMMERCIAL RELATIONS    MOTOR VEHICLE SALES WARRANTIES

**681.112  Consumer remedies.—**

(1)   A consumer may file an action to recover damages caused by a violation of this chapter. The court shall award a consumer who prevails in such action the amount of any pecuniary loss, litigation costs, reasonable attorney's fees, and appropriate equitable relief.

(2)   An action brought under this chapter must be commenced within 1 year after the expiration of the Lemon Law rights period, or, if a consumer resorts to an informal dispute-settlement procedure or submits a dispute to the division or board, within 1 year after the final action of the procedure, division, or board.

(3)   This chapter does not prohibit a consumer from pursuing other rights or remedies under any other law.

**History.—** ss. 10, 19, ch. 88-95; s. 4, ch. 91-429.

**Site Map**

**Session:** Bills · Calendars · Journals · Citator · Search · Appropriations · Redistricting · Bill Information Reports
**Committees:** Committee Pages · Committee Publications
**Senators:** · Member Pages · District Information · Find Your Legislators
**Information Center:** Introduction · About the Legislature · Publications · Glossary · Frequently Asked Questions · Employment · Links
**Statutes & Constitution:** Introduction · View Statutes · Search Statutes · Constitution · Laws of Florida · Order
**Video Broadcasts**

Disclaimer: The information on this system is unverified. The journals or printed bills of the respective chambers should be consulted for official purposes.
Copyright © 2000-2011 State of Florida.    Privacy Statement.    Contact Us.

# EXHIBIT  D

09-50026-mg    Doc 8886-1    Filed 01/26/11    Entered 01/27/11 14:01:36    Exhibit A
Pg 31 of 54
Case 2:09-cv-00108-CEH-DNF    Document 223    Filed 01/10/11    Page 15 of 15

Statutes & Constitution :View Statutes : Online Sunshine    Page 1 of 1



FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2010 SEP 23 ⋅⋅⋅ 12: 00

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

BILLY R. KIDWELL                          :
5064 Silver Bell Drive                     :
Port Charlotte, FL. 33948,                 :
       Plaintiff                       :   **Case No. 2:09-CV-108-FtM-99DNF**
                         :
      v.                              :
                         :
G. RICHARD WAGONER, et al.,                :
       Defendant(S)                    :
_____ :

**PLAINTIFF'S OBJECTION TO THIS COURT'S FRAUDULENT ORDER OF SEPTEMBER
10, 2010, THAT IS IN DIRECT CONFLICT WITH THE JUDGEMENT ORDER OF THE
UNITED STATES BANKRUPTCY COURT IN CASE 09-50026(REG), AND MOTION TO
RECONSIDER, AND CORRECT, THIS COURT'S FRAUDULENT ORDER, WITH
SUPPORTING EXHIBITS**

      On September 10, 2010 this Court, apparently acted as a *"Rubberstamp"* for Defendant's
Attorneys, and clearly without even reading the Bankruptcy ORDER of United States
Bankruptcy Judge Robert E. Gerber issued on July 5, 2009, issued an ORDER that DIRECTLY
CONFLICTS with the Bankruptcy Court Order. **[Emphasis added because this Court's Order is in
direct conflict with the specific Judgment of Judge Gerber and *exactly* like the fraudulent statements in
Defendant's unfounded motion.]**

      The United States Bankruptcy Court for the Southern District of New York on July 5,
2009 issued an ORDER ***that specifically gave Plaintiff the right*** to enforce his GM new Vehicle
Warranty Rights, pursuant to Florida's Lemon Laws, and the Magnuson-Moss Warranty Act in
this Court. **[Emphasis added that Bankruptcy Court ORDER specifically gave Plaintiff the right to sue].**

      United States Bankruptcy Court Judge Robert E. Gerber, *at every single place in his
Court ORDER where it addresses Vehicle Warranties, and consumer Lemon Law Rights, and
related Regulatory Obligations under such statutes*, specifically stated that those Obligations
were passed to the new owner, General Motors, LLC, as AN ASSUMED ASSET.

1

Plaintiff knows that United States District Court Judge Honeywell, a noted former Corporate Attorney, who is highly educated, is fully aware of what an "*Assumed Asset*" is.

And that no person, of "*Reasonable Intelligence*", could read the Bankruptcy Court ORDER of United States Bankruptcy Judge Gerber, Authorizing the Sale of Assets pursuant to the Amended and Restated Master Sale and Purchase Agreement, and not know, beyond any doubt whatsoever, that all GM Vehicle Purchases *PRIOR* to the closing of the 363 Transaction, such as Plaintiff's Truck, were classified as an Assumed Asset, and Assumed Obligation of the new General Motors, LLC.

That the Bankruptcy Court ORDER not only doesn't "*barr*" Plaintiff's claims in this case, but SPECIFICALLY AUTHORIZES THEM.

That's because throughout Judge Gerber's Court ORDER he specifically states;

"*The Purchaser (General Motors, LLC) is **assuming** the obligations of the Sellers (the former General Motors Corporation) subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles PRIOR to the closing of the 363 Transaction and specifically identified as a Warranty*". [See Exhibit A attached hereto].

Plaintiff has submitted to this Court, *several times*, the complete Court ORDER of Judge Gerber's Bankruptcy Court, dated July 5, 2009, and also the Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., which is now called General Motors, LLC by this Court.

Both documents, *at every single place they discuss Consumer Vehicle Warranties, and Consumer Rights to State Lemon Law Processes, and Related Regulatory Obligations under such statutes*, makes it extremely clear that **NO CONSUMER WOULD BE DENIED A CONSUMER RIGHT DUE TO THE BANKRUPTCY BECAUSE THOSE OBLIGATIONS WERE BEING PASSED TO THE NEW OWNER AS AN ASSUMED ASSET.**

This Court, like most of America, is aware that the Chairman of the Board of Directors of General Motors, LLC, and the President of the United States, went on National Television, many

times, in a series of advertisements explaining that the Bankruptcy of GM would not affect a single Vehicle Warranty. **That all GM Warranties, and related rights, would be honored.**

The United States Congress was personally promised by the Chairman of the Board of General Motors that if Congress supplied bailout monies not a single Warranty Claim would be affected by the Bankruptcy of General Motors.

President Obama went on National TV and notified the public, *including this Court*, mulitable times, that in case the new General Motors, LLC did not have enough money to honor warranties the United States Government had set up a Federal Fund to pay warranty claims. That ALL pre-bankruptcy Warranty Claims, and Warranty Rights, would be honored.

**The honoring of GM Vehicle Warranties is extremely important to the Bankruptcy Court, to the Sale Court ORDER, to the GM Sale Agreement, the the President of the United States, to the United States Congress, and to the security of this Country, because the Public Faith in GM Vehicles would be completely destroied if GM used a Bankruptcy to avoid honoring warranties.**

The *Pro Se Plaintiff* realizes that this Court has an extreme intense personal antipathy against *Pro Se Litigants* that has affected the judgment of this Court in several Court ORDERS, and is demostrated by the great disparity in the treatment of the parties by this Court.

The *Pro Se Plaintiff* also realizes that Defendants, and their attorneys, have a number of strong "*connections*", and ties, with the judges in this Court.

Defendant's Attorney is a "*Fellow United States Attorney*" with the magistrate in this case.

Defendant's Attorney is also a "*Fellow Corporate Attorney*" hostile towards "*Plaintiffs against Corporations*", exactly like Judge Honeywell, which might explain Judge Honeywell's

3

extreme hostility against the *Pro Se Litigant*, for merely seeking a little honesty in this case, with his Request for a Pollygraph Test[1].

*However*, being extremely bias does not authorize, or entitle, Judge Honeywell to violate the clear intent of Congree, violate Official American Policy set by the President of the United States to stabilize the American Auto Industry, violate the GM Sales Agreement, and overturn the Court ORDER of Bankruptcy Judge Gerber.

**THEREFORE**, the *Pro Se Plaintiff* respectfully submits, as Exhibit A attached hereto, page 44 of United States Bankruptcy Judge Robert Gerber's Order of July 5, 2009 SPECIFICALLY, and VERY CLEARLY, stating that Vehicle Warranties, *prior to the bankruptcy*, as in this case with Plaintiff's S-10 Lemon Truck, are an **Assumed Asset** passed on to the new General Motors, LLC. [See Exhibit A attached hereto].

**Since this Court does not like to view evidence, or read Exhibits, presented by *Pro Se Litigants* the *Pro Se Plaintiff* has highlighted the relivent statement in bright yellow. [See Exhibit A].**

This Court in its Court ORDER of September 10, 2010 fraudulently states that "*each of Plaintiff's claims against General Motors is barred by an order of the Bankruptcy court and will be dismissed with prejudice*".

And to justify such an outragious, fraudulent statement this Court intentionally misquotes the Bankruptcy Order by taking a partical statement, made in the section of the Bankruptcy ORDER that has absolutely nothing to do with Plaintiff's claims, and discusses the sale of land, fully knowing that none of Plaintiff's claims are about land, and quotes that partical statement in an attempt to deceive the lessor educated *Pro Se Litigant*, and get by with fixing this case for a fellow corporate attorney.

---

[1] It should be noted that the 11th Circuit has allowed Pollygraph Tests in other Civil Proceedings and any Pro Se Litigant would believe such a request to be in Good Faith. Yet Judge Honeywell threatened the Pro Se Litigant for filing his motion merely seeking a little honesty.

Judge Charlene Edwards Honeywell is fully aware that in the Bankruptcy Court ORDER, AFTER discussing GM Land Holdings, when the Bankruptcy Court changed the discussion in its Court ORDER to Vehicle Warranties, consumer rights, and Lemon Law Proceedings, WHICH IS WHAT THE PRO SE LITIGANT'S CLAIMS ARE ALL ABOUT, the Bankruptcy Court stated at the bottom of Page 44;

*"NOTWITHSTANDING THE FOREGOING, the Purchaser (General Motors, LLC) has assumed the Sellers' obligations under state lemon law statutes, which require a manufacturer to provide a customer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statue, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes."*

*First*, it should be noted that the Bankruptcy Court used the EXACT wording of the Federal Magnuson-Moss Warranty Act, and was addressing all the states, and stated "*Other Related Regulatory Statutes*" making it clear beyond any doubt the Bankruptcy Court specifically authorized Magnuson-Moss Warranty Act Claims such as Plaintiff's.

So this Court will not keep relying on a partical statement, taken out of context, that related to land sales, and does not seem to understand what the statement **"NOTWITHSTANDING THE FOREGOING"** means the Plaintiff has attached hereto marked as Exhibit B the defination of **"NOTWITHSTANDING THE FOREGOING"** by Dictionary.com.

In addition, to make this Court's understanding extremely clear Plaintiff has also attached the defination of **"NOTWITHSTANDING THE FOREGOING"** by WordReference.com and marked that attached Exhibit as Exhibit C.

Research on the internet has revealed that all the experts agree that the Bankruptcy Court statement **"NOTWITHSTANDING THE FOREGOING"** as an introduction when the Bankruptcy Court starts addressing Vehicle Warranties, and Consumer State Lemon Law, and Magnuson-Moss Warranty Rights, means this Court MUST ignore the prior partical statement

that it is relying it's Court ORDER on, and accept the Bankruptcy Court clairification that
Plaintiff's Claims ARE specifically authorized by the Bankruptcy Court.

Attached hereto and marked Exhibit D and highlighted in yellow is page 44 of
Bankruptcy Judge Robert E. Gerber's Decision stating **"NOTWITHSTANDING THE
FOREGOING"** and then going on and specifically describing how Vehicle Warranty Claims,
Lemon Law Proceedings, and Magnuson-Moss Warranty Act Claims are specifically authorized
by the Banruptcy Court, and are an Assumed Obligation of the new General Motors, LLC.

Being consistant with it's policy of not actually viewing evidence before making a
favorable decision for fellow Corporate Attorneys Judge Honeywell quotes *In re* General Motors
Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) as an authority for her violating the Bankruptcy
Court ORDER.

*In re* General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) , like the Bankruptcy
Court ORDER, supports the Plaintiff, and specifically gives GM Vehicle Owners the right to
sue, which this Court would have known if it had actually READ the case instead of
*"Rubberstamping"* statements made by Defendant's *"Fellow Corporate Attorney"* in motions.

*In re* General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) , specifically states;

*"Under the terms of the Sale Approval Order GM did not assume any of the liabilities*
**EXCEPT FOR SPECIFIC EXCEPTIONS FOR ASSUMED LIABILITIES"** [Emphasis
Added].

*In re* General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) , went on to state;

*"Under ARMSPA § 2.3(a)(vii)(A) "Assumed Liabilities" only include all liabilities arising*
*under express written warranties, that are specifically identified as warranties delivered in*
*connection with new, or pre-owned, GM Vehicles prior to, or after, the sale closing."*

6

*Simply put*, <u>all of the evidence</u>, the GM Sales Agreement, the Bankruptcy Court ORDER, statements of the Chairman of GM, statements by the President of the United States, testimony before Congress, *In re* General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009), everything agrees that GM Vehicle owners, like Plaintiff, prior to, and after the bankruptcy, have full warranty, Lemon Law, and Magnuson-Moss Warranty Rights, including the right to sue as specifically authorized by Florida's State Lemon Law Statutes, and the Magnuson-Moss Warranty Act.

This Court lacks jurisdiction to reverse the judgment of the Bankruptcy Court as it is clearly trying to do, for a fellow Corporate Attorney.

Attached hereto, and marked as Exhibit E, and highlighted in yellow, is the specific ORDER of United States Bankruptcy Judge Gerber that *"the Bankruptcy Court retains EXCLUSIVE Jurisdiction to enforce, and Implement, the terms, and provisions, of the Bankruptcy Court ORDER"*.

<u>This Court MUST read Exhibit F attached hereto in its entirety.</u>

## RELIEF

1. This Court must actually view the evidence and issue a Court ORDER reversing its prior judgment that is in conflict with the Bankruptcy Court.

2. This Court MUST stop misusing its Public Office to harass the severely disabled *Pro Se Litigant* for a *"Fellow Corporate Attorney"*, and make decisions based on the law, and evidence.

3. This Court MUST re-instate all Warranty Claims, all Florida State Lemon Law Claims, all Magnuson-Moss Warranty Act Claims, and all related claims against General Motors, LLC as authorized by the Bankruptcy Court ORDER, as Assumed Assets of General Motors, LLC.

4. This Court must <u>START</u> being an "*Impartical Hearing Body*" and impose Sanctions, and reasonable damages, for the massive harassment, and substantial harm to Plaintiff's health, by this Court merely "*Rubberstamping*" fraudulent statements by a fellow Corporate Attorney, instead of actually viewing the evidence.

5. Plaintiff seeks any, and all, other relief that he is entitled to.


Respectfully Submitted,


*[signature]*                                                                  September 21, 2010

Billy Ray Kidwell

5064 Silver Bell Drive

Port Charlotte, FL. 33948    941 627-0433


CERTIFICATE OF SERVICE

I, Billy Ray Kidwell, hereby certify that a true and correct copy of the attached was served on Defendants on this the 21st day of September 2010 by mailing a true and correct copy of same to their Attorney, Phyllis B. Sumner, King & Spalding LLP, 1180 Peachtree Street, NE Atlanta, GA 30309-3521, and the law firm of Cole, Scott & Kissane, 9150 South Dadeland Boulevard, Suite 1400, P.O. Box 569015, Miami, FL. 33156.


*[signature]*

Billy Ray Kidwell

## CERTIFICATE OF COMPLIANCE

The *Pro Se Plaintiff*, Billy Ray Kidwell, has contacted attorneys for the GM Defendants several months ago asking GM Attorneys Phyllis Sumner, and Henry Salas, for a phone number, and time to confer. Attorneys Phyllis Sumner, and Henry Salas, have never responded.

Both of those attorneys absolutely refuse to confer, or respond, and refuse to abide by Local Rule 3.01(g).

In recent motions Attorneys Phyllis Sumner, and Henry Salas, have intentionally lied to this Court, fraudulently claiming that Plaintiff alleges he does not have a phone number for those attorneys. Plaintiff has never alleged that.

Plaintiff has one phone number for Attorney Phyllis Sumner, 404 572-4600, and another number for Attorney Henry Salas, 305 350-5300, and has e-mailed both attorneys and asked who he should call, and what time they want to confer, and neither attorney has responded, despite Plaintiff e-mailing them around six months ago.

Plaintiff filed motions in this Court seeking a Court Order to require all parties to confer to reduce litigation. Both Attorney Phyllis Sumner, and Henry Salas opposed those motions, and they are still pending.

Attorneys Phyllis Sumner, and Henry Salas, constantly file motions in this Court in which that habitually lie and say they are willing to confer but yet not once have the asked the Plaintiff for a time to call and discuss a motion, and not once have they called the Plaintiff.

Plaintiff cannot get Attorneys Phyllis Sumner, and Henry Salas, to make any attempt to confer, even though they lie in their motions and fraudulently claim that they will.

The only party that has made any effort to confer has been the *Pro Se Litigant*.

Billy Ray Kidwell

9

# EXHIBIT  A

54.    Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.    The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.    The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

# EXHIBIT  B

09-50026-mg    Doc 8886-1    Filed 01/26/11    Entered 01/27/11 14:01:36    Exhibit A
Notwithstanding, Define Notwithstanding at Dictionary.com    Page 1 of 3
Case 2:09-cv-00108-CEH-DNF    Document 202    Filed 09/23/10    Page 13 of 25



| Dictionary | Thesaurus | Flashcards beta | Quotes | Encyclopedia | Translator |    Login  |

**Dictionary.com**    notwithstanding    Search

**Related Searches**
Notwithstanding claus...
Notwithstanding or re...
Notwithstanding the f...
Notwithstanding claus...
Notwithstanding anyth...
Canadian notwithstand...
Despite
In spite of
Nevertheless
Govern
Albeit
Pursuant

**Did you know:**  You look for a Web page and it says "Error 404 Not Found." What do the numbers mean?

**Make the switch today**

 

# notwithstanding - 3 dictionary results

**Earned Value Software**
ANSI 748 Compliant systems simple | flexible | powerful
www.safranna.com

**bioChec™**
Biometric Authentication Simply by Typing... Try It Today!
www.bioChec.com

**Huron Consulting Group**
Contract management - planning, design and implementation
www.huronconsultinggroup.com                    Sponsored Results

**not·with·stand·ing** ◄◗ ▣▣▣
[not-with-**stan**-ding, -with-]  ⟨?⟩ Show IPA

*–preposition*
1. in spite of; without being opposed or prevented by: *Notwithstanding a brilliant defense, he was found guilty. She went to the game anyway, doctor's orders notwithstanding.*

*–conjunction*
2. in spite of the fact that; although: *It was the same material, notwithstanding the texture seemed different.*

*–adverb*
3. nevertheless; anyway; yet: *We were invited notwithstanding.*

Use notwithstanding in a Sentence

**Origin:**
1350–1400; ME (prep., adv., and conj.); see *not*, *withstand*, *-ing*[2]

**—Synonyms**
1. NOTWITHSTANDING, DESPITE, IN SPITE OF  imply that something is true even though there are obstacles or opposing conditions. The three expressions may be used practically interchangeably. NOTWITHSTANDING  suggests, however, a hindrance of some kind: *Notwithstanding the long delay, I shall still go.* DESPITE  indicates that there is an active opposition: *Despite procrastination and disorganization, they finished the project.* IN SPITE OF  implies meeting strong opposing forces or circumstances that must be taken into account: *She succeeded in spite of many discouragements.*

**—Antonyms**
1. because of, on account of.

Dictionary.com Unabridged
Based on the Random House Dictionary © Random House, Inc 2010
Cite This Source  |  Link To notwithstanding

🔊 Related Words for : notwithstanding
all the same, even so, however, nevertheless, nonetheless
View more related words »

**Synonyms**
nevertheless
nonetheless
against
despite
though
but
yet

More Synonyms »

**Nearby Words**
notus
notuses
notwheat
**notwithstanding**
notwork
nouadhibou
nouakchott

**Faster Definitions**

[?] Click on any word to see its definition instantly!
**clarity**

**Today's Word Picks** on Dictionary.com
· metier          · heuristic
· fecund          · embonpoint

**Make the switch today**

 

✗ **Resources** on Dictionary.com
· Free tools       · Style guide
· Blog             · Confusing words
· Games            · Word of the Day

VISUALTHESAURUS

notwithstanding

Explore the Visual Thesaurus »

**SSL Definition**
Get the strongest SSL from VeriSign Protect Important Data - Learn More
www.VeriSign.com

Defeasance Done Right


Honda Certified Used Cars
Certified with 150 point inspections
Certified Used Cars

09-50026-mg    Doc 8886-1    Filed 01/26/11    Entered 01/27/11 14:01:36    Exhibit A
Notwithstanding - Define Notwithstanding at Dictionary.com                                    Page 2 of 3
Case 2:09-cv-00108-CEH-DNF    Document 202    Filed 09/23/10    Page 14 of 28

**notwithstanding** (ˌnɒtwɪθˈstændɪŋ, -wɪð-) 🔊

— *prep*

1. ( *often immediately postpositive* ) in spite of; despite

— *conj*

2. despite the fact that; although

— *sentence connector*

3. in spite of that; nevertheless

[C14: not + *withstanding*, from Old English *withstandan*, on the model of Medieval Latin *non obstante*, Old French *non obstant* ]

Collins English Dictionary - Complete & Unabridged 10th Edition
2009 © William Collins Sons & Co. Ltd. 1979, 1986 © HarperCollins
Publishers 1998, 2000, 2003, 2005, 2006, 2007, 2009
Cite This Source

## Word Origin & History

**notwithstanding**

late 14c., notwiþstondynge , from not + prp. of the verb
withstand (q.v.). A loan-translation of L. non obstante "being no
hindrance."

Online Etymology Dictionary. © 2010 Douglas Harper
Cite This Source

## Famous Quotations

**notwithstanding**

"When men consider the great pains, industry, and parts,..."

"Most of our platitudes notwithstanding, self-deception ..."

"Shelley is truth itself—and honour itself—notwithstandi..."

"I will therefore ... that women adorn themselves in mod..."

"... whilst you are proclaiming peace and good will to m..."

More Quotes
**Popular Subjects:**
Friendship   Funny   Inspirational   Life   Love   Proverbs

Search another word or see **notwithstanding** on Thesaurus | Reference



Earned Value Software
ANSI 748 Compliant systems simple | flexible | powerful
www.safranna.com

bioChec™
Biometric Authentication Simply by Typing... Try It Today!
www.bioChec.com

Huron Consulting Group
Contract management - planning, design and implementation
www.huronconsultinggroup.com        Sponsored Results

 notwithstanding                          Search

# EXHIBIT C

09-50026-mg    Doc 8886-1    Filed 01/26/11    Entered 01/27/11 14:01:36    Exhibit A
notwithstanding - WordReference.com Dictionary of English    Page 1 of 1
Case 2-09-cv-00700-GETHDNI    Document 202    Filed 09/23/10    Page 16 of 25



**WordReference.com** English Dictionary

Add WR English dictionary to your
Internet Explorer search box.

Click Around. Chrome fast.

Get Chrome
The browser by Google

Lookup: [            ]  English definition  ·  [ Search ]

See Also:
Notoryctus typhlops
Notostraca
Notropis
Notropis atherinoides
Notropis cornutus
not suitably
not surprised
not to mention
not traded
not very likely
notwithstanding
not yet
Nouakchott
nougat
nougat bar
nought
noughts and crosses
noumenon
noun
noun phrase
nourish

Links:
• Forums
• Support WR
• Link to WR
• Bookmark this site
• Suggestions
• Click on word:
   ● gets translation
   ○ does nothing

**notwithstanding:** in Spanish | in French | in Italian
in context | images

Adapted From: WordNet 2.0 Copyright 2003 by Princeton University. All rights reserved.

notwithstanding
A    adverb
    1    however, nevertheless, withal, still, yet, all the same, even so,
         nonetheless, notwithstanding
              despite anything to the contrary (usually following a
              concession); "although I'm a little afraid, however I'd like
              to try it"; "while we disliked each other, nevertheless we
              agreed"; "he was a stern yet fair master"; "granted that it
              is dangerous, all the

Forum discussions with the word(s) "notwithstanding" in the title:
    nevertheless - notwithstanding
    notwithstanding
    notwithstanding
    Notwithstanding
    notwithstanding
    Notwithstanding 'many / the many' things ....
    Notwithstanding any other provision of law
    Notwithstanding anything contrary
    notwithstanding as a preposition
    notwithstanding the foregoing
    Notwithstanding/irrespective/regardless
         • Ask in the forums yourself.
         • Visit the English Only Forum.

Look up "notwithstanding" at Merriam-Webster
Look up "notwithstanding" at dictionary.com

In other languages: Spanish | French | Italian | Portuguese | German |
Russian | Polish | Romanian | Czech | Greek | Turkish | Chinese |
Japanese | Korean | Arabic

Internet Explorer 8 users: test the WordReference Accelerator for IE8.
Facebook: Show your love: become a fan of WordReference on
Facebook.
Mobile phones: WordReference works on your mobile device!
    • Bookmark WR to your home screen
    • or download the app (search iTunes or the Android Marketplace)

Click Around. Chrome fast.



Get Chrome
The browser by Google



Save Up To An
EXTRA 10%
in addition to sale prices
Click now to activate
this exclusive offer.*

[ SHOP NOW ]

*Discount will be applied at
checkout.

intel
CORE

ThinkPad T410

Replay

lenovo                    ThinkPad

Report an inappropriate ad.

Copyright © 2010 WordReference.com
Please report any problems.

# EXHIBIT  D

54.    Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.    The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.    The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

# EXHIBIT E

amendment, or supplement does not have a material adverse effect on the Debtors' estates. Any

such proposed modification, amendment, or supplement that does have a material adverse effect

on the Debtors' estates shall be subject to further order of the Court, on appropriate notice.

      69.    The provisions of this Order are nonseverable and mutually dependent on

each other.

      70.    As provided in Fed.R.Bankr.P. 6004(h) and 6006(d), this Order shall not

be stayed for ten days after its entry, and instead shall be effective as of 12:00 noon, EDT, on

Thursday, July 9, 2009. The Debtors and the Purchaser are authorized to close the 363

Transaction on or after 12:00 noon on Thursday, July 9. Any party objecting to this Order must

exercise due diligence in filing any appeal and pursuing a stay or risk its appeal being foreclosed

as moot in the event Purchaser and the Debtors elect to close prior to this Order becoming a Final

Order.

      71.    This Court retains exclusive jurisdiction to enforce and implement the

terms and provisions of this Order, the MPA, all amendments thereto, any waivers and consents

thereunder, and each of the agreements executed in connection therewith, including the Deferred

Termination Agreements, in all respects, including, but not limited to, retaining jurisdiction to (a)

compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the purchase

price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes

arising under or related to the MPA, except as otherwise provided therein, (d) interpret,

implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the

Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any

kind or nature whatsoever, against the Purchased Assets, and (f) resolve any disputes with

respect to or concerning the Deferred Termination Agreements. The Court does not retain

jurisdiction to hear disputes arising in connection with the application of the Participation

> **Deleted:** Pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for ten days after its entry and shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the 363 Transaction immediately upon entry of this Order.

US_ACTIVE:\43085833\07\43085833_7.DOC\         48

# EXHIBIT F

54.    Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.    The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.    The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

US_ACTIVE:\43085833\07\43085833_7.DOC\                    44

Sellers' obligations under state "lemon law" statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.

57.     Subject to further Court order and consistent with the terms of the MPA and the Transition Services Agreement, the Debtors and the Purchaser are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, (a) the books, records, and any other documentation, including tapes or other audio or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business, and (b) the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates.

58.     The Debtors are authorized to take any and all actions that are contemplated by or in furtherance of the MPA, including transferring assets between subsidiaries and transferring direct and indirect subsidiaries between entities in the corporate structure, with the consent of the Purchaser.

59.     Upon the Closing, the Purchaser shall assume all liabilities of the Debtors arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Debtor, except for workers' compensation claims against the Debtors with respect to Employees residing in or employed in, as the case may be as defined by applicable law, the states of Alabama, Georgia, New Jersey, and Oklahoma.

60.     During the week after Closing, the Purchaser shall send an e-mail to the Debtors' customers for whom the Debtors have usable e-mail addresses in their database, which will provide information about the Purchaser and procedures for consumers to opt out of being

US_ACTIVE:\43085833\07\43085833_7.DOC\                    45