# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| BILLY R. KIDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CASE NO.** 2:09-cv-00108-CEH-DNF |
| | ) |
| G. RICHARD WAGONER, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT GENERAL MOTORS LLC'S RESPONSE TO
PLAINTIFF'S REQUEST FOR CLARIFICATION OF COURT ORDER**

Defendant General Motors LLC ("GM" or "New GM"), improperly named as "General Motors Company," files this Response to *pro se* Plaintiff Billy R. Kidwell's ("Plaintiff") "Request for Clarification of Court Order and Voluntary Compliance with ADA" (Dkt. No. 223), showing the Court as follows:

This Court has now *twice* dismissed with prejudice Plaintiff's pre-bankruptcy Lemon Law-related claims (Counts IV & V of Plaintiff's Amended Complaint, Dkt. No. 91). (*See* Order, dated Dec. 28, 2010, Dkt. No. 221; Order, dated Sept. 9, 2010, Dkt. No. 199.) Unwilling to accept this Court's rulings, Plaintiff has filed another unsupported motion in which he again asserts that his Lemon Law-related claims are sustainable against GM while accusing this Court of "fixing" this case for the Defendants, engaging in "double-talk," "hat[ing] Plaintiff, and "rubberstamping" Defendants' motions and accusing Defendants and their counsel of lying and deceiving the Court. (Dkt. No. 223 at 1-6.) Not only are Plaintiff's attacks on this Court, Defendants, and their counsel unjustified and frivolous, but Plaintiff entirely fails to offer any

grounds justifying reconsideration of this Court's December 28, 2010 Order dismissing Counts IV and V of Plaintiff's Amended Complaint with prejudice (the "Dismissal Order"). Indeed, this Court has already considered the issues presented in Plaintiff's instant motion on two separate occasions, and both times properly concluded that the Bankruptcy Court for the Southern District of New York's Sale Approval Order bars Plaintiff's Lemon Law-related claims. To the extent there is any ambiguity regarding proper interpretation of the Approval Order (and there is not), the Approval Order expressly reserves exclusive jurisdiction to adjudicate the matter, which is an alternative ground for upholding this Court's dismissal order.[1]

Plaintiff essentially offers two arguments as to why this Court incorrectly dismissed his Lemon Law-related claims a second time: (1) the damages he seeks in his Amended Complaint constitute "reasonably incurred collateral and incidental charges" associated with the refund or replacement of his vehicle to which he is allegedly entitled under Florida's Lemon Law (Dkt. No. 223 at 3); and (2) Fla. Stat. § 681.111, which provides that a violation of Florida's Lemon Law constitutes "an unfair or deceptive trade practice," permits Plaintiff to pursue his claim that GM committed fraud on the Lemon Law process. (*Id.* at 4.) Neither argument carries any weight.

As the Court recognized in its Dismissal Order, while the Sale Approval Order states that New GM has assumed Old GM's obligations pursuant to state Lemon Laws, Florida's Lemon Law only "provides consumers with the right to a refund or replacement vehicle if a

---

[1] Paragraph 71 of the Approval Order provides, in pertinent part, that the Bankruptcy Court "retains exclusive jurisdiction to enforce and implement the terms and provisions of the Order, the [Master Sale and Purchase Agreement], all amendments thereto, any waiver and consents thereunder, and each of the agreements executed in connection therewith . . . including, but not limited to, retaining jurisdiction to . . . (d) interpret, implement, and enforce the terms of" the Approval Order.

manufacturer cannot conform the new motor vehicle purchased by the consumer *to the warranty by repairing or correcting any nonconformity* after a reasonable number of attempts." (Dkt. No. 221 at 7 (quoting *Ames v. Winnebago Indus.*, 2005 U.S. Dist. LEXIS 44752, at \*12 (M.D. Fla. Jan. 19, 2005) (emphasis added)).) Accordingly, *New GM's assumption of liability is limited solely to the repair obligations in Old GM's limited warranties and not any additional liability for damages*. (*See* Dkt. No. 221 at 6 (citing Master Sale Purchase Agreement ("MSPA"), § 1.1 (defining lemon laws as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute.")); *see also* Sale Approval Order, ¶ 56 ("[New GM] has assumed [Old GM's] obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.").)

In the Dismissal Order, the Court also analyzed the nature of Plaintiff's Lemon Law-related claims -- Counts IV and V of Plaintiff's Amended Complaint -- to determine whether those claims, regardless of what Plaintiff named them, actually concerned liabilities that New GM assumed through the Sale Approval Order. Following its review of Plaintiff's claims, the Court held that *"Plaintiff's Lemon Law-related claims are really for fraud and obstruction of justice rather than an action under the substantive provision of the [Florida Lemon Law] statute."* (Dkt. No. 221 at 7 (citing paragraphs 94 and 240 of Plaintiff's Amended Complaint) (emphasis added).) This reflects, of course, that Plaintiff did not prevail in the Lemon Law

3

arbitration that is the backdrop for this case. Indeed, Counts IV and V of Plaintiff's Amended

Complaint do not allege that GM failed to repair Plaintiff's vehicle pursuant to Old GM's limited

warranty, but rather alleges that GM committed "intentional fraud on Florida's Lemon Law

process." But the agreement underlying and attached to the Approval Order expressly excludes

from those liabilities those "arising out of, related to or in connection with any . . . (B)

allegations, statement or writing by or attributable to [Old GM]." (MSPA, 2.3(b)(xvi).) Thus,

while New GM assumed responsibility to comply with certain express warranty and related

Lemon Law obligations on a forward looking basis, it did not assume liability for Old GM's

(alleged) misconduct.

Of course, Plaintiff's Amended Complaint seeks a variety of damages for Old GM's

alleged fraudulent behavior, including $50 per day in damages (Dkt. No. 91, ¶ 106), "reasonable

storage fees for having to store the Lemon GM truck on his property" (*id.*, ¶ 107), costs

associated with pursuing his claims (*id.* ¶ 108), and damages for various personal injuries. (*Id.*,

¶¶ 108, 133-134.) Plaintiff's Amended Complaint also seeks declaratory and injunctive relief as

well as punitive damages. (*Id.* at "Prayer For Relief," ¶¶ 1-4, 6.) After determining that

Plaintiff's Lemon Law-related claims were actually claims for fraud and obstruction of justice

rather than claims for the repair of his vehicle pursuant to Old GM's long-expired limited

warranty, the Court properly held that Counts IV and V of Plaintiff's Amended Complaint are

*"not within the scope of [New GM's assumed liabilities in the] Sale Approval Order."* (Dkt.

No. 221 at 7 (emphasis added).)

Significantly, the Court dismissed Counts IV and V on the grounds that the substance of

those claims concerned fraud and obstruction of justice, which are not assumed liabilities under

the Sale Approval Order, *not* on the grounds that the damages sought in Plaintiff's Amended Complaint were outside the scope of Florida's Lemon Law. Indeed, this Court is not adjudicating a Lemon Law claim, but rather a claim based on extravagant allegations about conduct in the contest of a Lemon Law arbitration proceeding. Accordingly, Plaintiff's argument that his claims were improperly dismissed because the damages he seeks are obtainable under Florida's Lemon Law is entirely misplaced. Regardless, none of the damages that Plaintiff seeks are available under the express terms of Old GM's limited express warranty, which provides the scope of any possible relief to which Plaintiff could possibly be entitled against New GM. (*See* Sale Approval Order, ¶ 56 (providing that New GM "is assuming the obligations of [Old GM] pursuant to and *subject to conditions and limitations contained in* their express written warranties") (emphasis added); MSPA, § 1.1 (limiting a plaintiff's recovery against New GM under a state's Lemon Law exclusively to that which the plaintiff would be entitled under the applicable Old GM express warranty).) The express warranty accompanying Plaintiff's vehicle specifically provides that *performance of repairs and needed adjustments is Plaintiff's exclusive remedy.* (*See* Dkt. No. 208 at 6-7 (setting forth the limitations on New GM's liability pursuant to the express written warranty for Plaintiff's vehicle). *New GM did not assume other liability claims relating to alleged warranties,* including liability for personal injuries, economic loss, or expenses, including storage costs, vehicle rental expenses, or the cost of inconvenience. (*See id.*; *see also* MSPA, § 2.3(b)(xvi)(B) (expressly excluding liabilities arising from "allegation, statement or writing by or attributable to [Old GM]."); Sale Approval Order, ¶ 56 (providing that New GM did not assume "responsibilities for Liabilities contended to arise by virtue of . . . implied warranties and statements in materials such as, without limitation,

individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.").)

Plaintiff's argument that his Lemon Law-related claims are somehow sustainable pursuant to Fla. Stat. § 681.111 is also misplaced. While Fla. Stat. § 681.111 provides that a violation of Florida's Lemon Law is "an unfair or deceptive trade practice," that statute in no way addresses whether New GM assumed liability for any claims for fraud or obstruction of justice. Even if, *arguendo*, an "unfair or deceptive trade practice" occurred, it would have been conduct "attributable to" Old GM which is expressly excluded under the Approval Order and the contract approved therein. As this Court correctly held, the Sale Approval Order expressly provides that New GM did not assume such liability. (*See* Dkt. No. 221 at 7; MSPA, § 2.3(b)(xvi)(B); Sale Approval Order, ¶ 56.) Rather, New GM *only* assumed liability for the repair and service of Old GM vehicles. And, if there were any doubt about that, that question is governed by the Sale Approval Order and is reserved to the exclusive jurisdiction of the Bankruptcy Court.

In sum, Plaintiff's Lemon Law-related claims constitute a violation of the Sale Approval Order, which unambiguously states that "all persons and entities, including, but not limited to . . . *litigation claimants* and [others] holding liens, claims and encumbrances, and other interest of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability . . . are forever *barred, stopped and permanently enjoined* . . . from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or claims], including rights or claims based on any successor or transferee liability." *Id.*, ¶ 8 (emphasis added). *See also id.*, ¶ 46 ("[New GM] shall not have any successor,

6

transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de fact merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated); *id.*, ¶ 52 (Sale Approval Order "effective as a determination that, except for the Assumed Liabilities, at Closing, all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets prior to the Closing (other than Permitted Encumbrances) have been unconditionally released and terminated . . . .").

Accordingly, the Court properly held that the Sale Approval Order bars the claims against GM contained in Counts IV and V of Plaintiff's Amended Complaint and properly dismissed those counts with prejudice.

Respectfully submitted, this 24th day of January, 2011.

COLE, SCOTT & KISSANE, P.A.

Henry Salas
Dadeland Centre II
9150 South Dadeland Blvd., Suite 1400
Miami, Florida 33156
E-Mail: henry.salas@csklegal.com
Telephone: (305) 350-5300
Facsimile: (305) 373-2294

By: ___/s_____
       HENRY SALAS
       FBN: 815268

KING & SPALDING LLP

Phyllis B. Sumner

Georgia Bar No. 692165
    (admitted *pro hac vice*)
1180 Peachtree Street NE
Atlanta, Georgia  30309
E-Mail: psumner@kslaw.com
Telephone: 404-572-4600
Facsimile: 404-572-5100

Attorneys for Defendant
GENERAL MOTORS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2011, the foregoing document is being served this day on all counsel of record and *pro se* parties identified in the attached Service List in the manner specified. The foregoing document will be filed with the Clerk of Court, via the CM/ECF e-filing system.


/s
Henry Salas

## SERVICE LIST

Case No: 2:09-CV-108

Billy R. Kidwell
5064 Silver Bell Drive
Port Charlotte, Florida  33948
Plaintiff proceeding *pro se*

Service by U.S. Postal Service Certified Mail, return receipt requested, First Class postage
prepaid.