HEARING DATE AND TIME:  February 3, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE:  January 27, 2011 at 4:00 pm (Eastern Time)

Michael A. Schwartz
Gina M. Tufaro
HORWITZ, HORWITZ & PARADIS
Attorneys at Law
570 Seventh Avenue, 20th Floor
New York, New York 10018
Telephone:  212.986.4500
Facsimile:  212.986.4501

James E. Miller
Patrick A. Klingman
SHEPHERD FINKELMAN
MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  860.526.1100
Facsimile:  860.526.1120

Co-Lead Counsel for the Plaintiff Class in
*In re Saturn L-Series Timing Chain Products Liability Litigation*,
MDL No. 1920 (D. Neb.), AO9-8038-TJM (Bankr. D. Neb.)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                          :
In re                                                     :
                                                          :          Chapter 11 Case No.:
       MOTORS LIQUIDATION COMPANY, *et al*.,              :
             F/K/A General Motors Corp., *et al.*,         :          09-50026 (REG)
                                                          :
                                      Debtors.            :          (Jointly Administered)
------------------------------------------------------------------------x

**SATURN PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITON TO**
**DEBTORS' OBJECTION TO PROOFS OF CLAIM NOS. 16440 and 16441**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ......................................................................... 3

ARGUMENT .............................................................................................. 9

I.    THIS COURT SHOULD GRANT THE SATURN PLAINTIFFS
    MOTION FOR AN APPLICATION OF RULE 23 ............................... 9

  A.   The Saturn Plaintiffs Have Timely Sought
       The Application Of Rule 23.............................................................. 10

  B.   The Saturn Plaintiffs' Request For Application of Rule 23 Should Be
       Granted Because The Benefits Derived From The Use of The Class Claim
       Device Are Consistent With the Goals of Bankruptcy and
       The Saturn Plaintiffs' Claims Satisfy The Requirements of Rule 23 ............... 13

    1.   The Benefits Derived From The Use of The Class Claim
        Device Are Consistent With the Goals of Bankruptcy ................................. 13

      a.   Notice of the Bankruptcy and the Bar Date
          Was Insufficient Because Putative Class Members
          Were Not Given Notice of Their Ability to Submit
          A Claim In This Bankruptcy Proceeding.................................................. 14

    2.   The Saturn Plaintiffs' Claims
        Satisfy The Requirements of Rule 23 ......................................................... 15

      a.   The Saturn Plaintiffs Seek
          Certification Of A Precisely Defined Class............................................. 15

      b.   This Action Satisfies The Requirements Of Fed. R. Civ. P. 23(a) ........... 17

         i.   The Class Is So Numerous
            That Joinder of All Members is Impracticable ..................................... 17

         ii.   There Are Questions of Law and Fact
            Common to Members of the Class...................................................... 18

         iii.   The Claims of the Saturn Plaintiffs Are Typical .............................. 19

iv. The Saturn Plaintiffs Are Adequate Representatives........................ 22

1. The Saturn Plaintiffs' Claims Do Not Conflict With........................ 23
The Claims of Class Members They Seek To Represent ................ 23

2. The Saturn Plaintiffs Have Demonstrated Their Enthusiasm
For Seeing This Litigation Through To A Successful    Conclusion 23

3. The Saturn Plaintiffs Have Hired Experienced
Counsel Who Are Pursuing This Litigation Zealously.................... 24

c. This Action Meets The Requirements Of Rule 23(b)(3) .......................... 25

i. The Predominance Requirement Is Satisfied Because The Saturn
Plaintiffs' Claims Present A Predominance of Legal and Factual
Issues................................................................................................. 26

1. Common Legal Issues Predominate.................................................. 26

Common Legal Issues Predominate In
The Saturn Plaintiffs' State-Only Classes.................................. 26

Common Legal Issues Predominate
The Saturn Plaintiffs' State-Only
Implied Warranty Claims........................................................... 27

Common Legal Issues Predominate
The Saturn Plaintiffs' Iowa Breach of Implied
Warranty Class........................................................................... 28

Common Legal Issues Predominate The Saturn
Plaintiffs' Nebraska Breach of Implied Warranty Class............ 28

Common Legal Issues Predominate The Saturn Plaintiffs'
Pennsylvania Breach of Implied Warranty Class ...................... 29

Common Legal Issues Predominate The Saturn Plaintiffs'
Michigan Breach of Implied Warranty Class ............................ 29

Common Legal Issues Predominate
The Saturn Plaintiffs' Missouri Breach of Implied
Warranty Class........................................................................... 30

Common Legal Issues Predominate
The Saturn Plaintiffs' State-Only Consumer
Fraud Claims.............................................................................. 31

Common Legal Issues Predominate
The Saturn Plaintiffs' CPA Class ............................................. 32

Common Legal Issues Predominate The Saturn Plaintiffs'
MMPA Class............................................................................ 32

Common Legal Issues Predominate The Saturn Plaintiffs'
FDUTPA Class ........................................................................ 33

Common Legal Issues Predominate The Saturn Plaintiffs'
NCUDTPA Class ..................................................................... 34

Common Legal Issues Predominate
The Saturn Plaintiffs' CLRA Class........................................... 34

Common Legal Issues Predominate
The Saturn Plaintiffs' ICFA Class ............................................ 35

Common Legal Issues Predominate The Saturn Plaintiffs'
Multi-State Implied Warranty Classes...................................... 36

2.    Common Factual Issues Predominate In The Saturn Plaintiffs'
Implied Warranty and Consumer Fraud Claims .............................. 42

Breach Of Implied Warranty Claims ......................................... 42

Consumer Fraud Claims ........................................................... 42

ii.    A Class Action Is A Superior Method Of Adjudication ...................... 44

CONCLUSION........................................................................................... 46

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997)..............................................................................................17

*Bangert Bros. Constr. Co. v. Kiewit W. Co.*,
 310 F.3d 1278 (10th Cir. 2002) ...........................................................................29

*Barden v. Hurd Millwork Co., Inc., et al.*,
 (E.D. Wis. Mar. 28, 2008) ....................................................................................28

*Basham v. General Shale Prods. Corp.*,
 1993 U.S. App. LEXIS 4876 (4th Cir. March 10, 1993).................................39, 40

*Bassett v. Kia Motors America, Inc.*,
 212 F.R.D. 271 (E.D. Pa. 2002)............................................................................29

*Begley v. Jeep Corp.*,
 491 F. Supp. 63 (W.D. Va. 1980) ....................................................................39, 40

*Blackie v. Barack*,
 524 F.2d 891 (9th Cir. 1975) ..................................................................................4

*Bly v. Otis Elevator Co.*,
 713 F.2d 1040 (4th Cir. 1983) ...............................................................................38

*Cartwright v. Viking Industries, Inc.*,
 No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal.
 2009) ......................................................................................................................35

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, LLC*,
 504 F.3d 229 (2d Cir. 2007)...................................................................................17

*Chamberlan v. Ford Motor Co.*,
 402 F.3d 952 (9th Cir. 2005) ...........................................................................42, 43

*Chapman v. Brown*,
 198 F. Supp. 78 (D. Haw. 1961) ......................................................................39, 40

*Chase Manhattan Mortg. Co. v. Lane*,
 2010 U.S. Dist. LEXIS 82501 (W.D.N.C. July 9, 2010)...........................................4

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)................................................................................17

*Cuzco v. Orion Builders, Inc.*,
  262 F.R.D. 325 (S.D.N.Y. 2009) .........................................................................44

*Dudley v. Business Express*,
  882 F. Supp. 199 (D. N.H. 1994)....................................................................39, 40

*Fiberglass Component Prod. v. Reichhold Chems.*,
  983 F. Supp. 948 (D. Colo. 1997)...................................................................39, 40

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)...........................................................................19, 22

*General Fireproofing Co. v. L. Wallace & Son*,
  175 F. 650 (8th Cir. 1910) ...................................................................................1

*Georgetown Steel Corp. v. Law Eng'g Testing Co.*,
  No. 92-2588, 1993 U.S. App. LEXIS 23541 (4th Cir. Sept. 14, 1993) ...................................38

*GKW Elecs., Inc. v. Zenith Elecs. Corp.*,
  No. 91-15791, 1992 U.S. App. LEXIS 16238 (9th Cir. July 8, 1992) ...................................38

*Harris v. D. Scott Carruthers & Assoc.*,
  270 F.R.D. 446 (D. Neb. 2010)............................................................................32

*Horizons, Inc. v. Avco Corp.*,
  551 F. Supp. 771 (D.S.D. 1982) ......................................................................37, 38

*In re Amaranth Natural Gas Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. Sept. 30, 2010)..................................................................16

*In re Bally Total Fitness of Greater New York, Inc.*,
  402 B.R. 616 (S.D.N.Y. 2009).............................................................................13

*In re Bridgestone/Firestone*,
  288 F.3d 1012 (7th Cir. 2002) ............................................................................36

*In re Charter Co.*,
  876 F.2d (11th Cir. 1989) .................................................................................10

*In re Chateaugay Corp.*,
  104 B.R. 626 (S.D.N.Y. 1989).........................................................................10, 25

*In re Drexel Burnham Lambert Group,*
  960 F.2d 285 (2d Cir. 1992) ................................................................................19

*In re Ephedra Prods. Liab. Litig.,*
  329 B.R. 1 (S.D.N.Y. 2005) ................................................................................12

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
  177 F.R.D. 360 (E.D. La. 1997) ....................................................................31, 41

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
  194 F.R.D. 484 (D. N.J. 2000) ......................................................................31, 41

*In re Jamesway Corp., et al.,*
  No. 95 B 44821 (JLG), 1997 Bankr. LEXIS 825 (Bankr. S.D.N.Y. 1997) ...........14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
  209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................19

*In re Musicland Holding Corp.,*
  362 B.R. 644 (Bankr. S.D.N.Y. 2007) ................................................................12

*In re Sacred Heart Hosp. of Norristown,*
  177 B.R. 16 (E.D. Pa. 1995) .........................................................................13, 14

*In re St. Jude Med. Inc.,*
  425 F. 3d 1116 (8th Cir. 2005) ..........................................................................36

*In re Woodward & Lothrop Holdings, Inc.,*
  205 B.R. 365 (Bankr. S.D.N.Y. 1997) ......................................................10, 25, 36

*In re Worldcom, Inc.,*
  2004 Bankr. LEXIS 2444 (S.D.N.Y. Dec. 28, 2004) .............................9, 10, 11, 25

*Indus. Graphics, Inc. v. Asahi Corp.,*
  485 F. Supp. 793 (D. Minn. 1980) .......................................................................38

*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.,*
  851 F.2d 540 (1st Cir. 1988) ..............................................................................41

*Janson v. LegalZoom.com, Inc.,*
  No. 10-CV-04018-NKL, 2010 U.S. Dist. LEXIS 132210 (W.D. Mo. Dec. 14,
  2010) ................................................................................................................33

*Katz v. Image Innovations Holdings, Inc.*,
  2010 U.S. Dist. LEXIS 73929, Fed. Sec. L. Rep. (CCH) P95812 (S.D.N.Y.
  July 21, 2010)..................................................................................................17

*Kearney v. Hyundai Motor Co.*, SACV 09-1298, 2010 U.S. Dist. LEXIS 68242, at
  *28 (C.D. Cal. June 4, 2010) ..................................................................................

*Kruse v. Chevrolet Motor Div.*,
  1997 U.S. Dist. LEXIS 10398 (E.D. Pa. July 15, 1997)..........................................41

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*,
  168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................................18

*Lackowski v. Twinlabs Corp.*,
  2001 U.S. Dist. LEXIS 25634 (E.D. Mich. Dec. 28, 2001)....................................30

*Lingo v. Hartford Fire Ins. Co.*,
  2010 U.S. Dist. LEXIS 43522 (E.D. Mo. May 4, 2010)..................................32, 33

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
  993 F.2d 11 (2d Cir 1993)......................................................................................21

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)....................................................................................18

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ............................................................................43

*McGown v. Bridgestone/Firestone, Inc.*,
  2005 U.S. Dist. LEXIS 25598 (E.D. Tex. 2005) ....................................................37

*Melborn Ltd. v. Nat'l Marine Corp.*,
  2004 U.S. Dist. LEXIS 30704 ( E.D. Mich. Aug. 19, 2004) ..................................29

*Miss. Chem. Corp. v. Dresser-Rand Co.*,
  2000 U.S. Dist. LEXIS 21965 (S.D. Miss. Sept. 12, 2000)..............................39, 40

*Nelson v. Mead Johnson Nutrition Co.*,
  No. 09-CV-61625-COHN/SELTZER, 2010 U.S. Dist. LEXIS 117098 (S.D.
  Fla. Nov. 1, 2010) ..................................................................................................34

*Parr v. Maesbury Homes, Inc.*,
  No. 09-1268, 2009 U.S. Dist. LEXIS 119087, 2009 WL 5171770 (M.D. Fla.
  Dec. 22, 2009)........................................................................................................33

*Peterson v. H&R Block Tax Servs.*,
   174 F.R.D. 78 (N.D. Ill. 1997)........................................................................45

*Raad v. Wal-Mart Stores*,
   13 F. Supp. 2d 1003 (D. Neb. 1998) ..............................................................32

*Recold, S.A. de C.V. v. Monfort of Colorado, Inc.*,
   893 F.2d 195 (8th Cir. 1990) .........................................................................38

*Saltzman v. Pella Corp.*,
   No. 06 C 4481, 2007 U.S. Dist. LEXIS 19650 (N.D. Ill. Mar. 20, 2007) ..............35

*Shein v. Canon U.S.A., Inc.*,
   Case No. 08-cv-7323, 2010 U.S. Dist. LEXIS 91160 (C.D. Cal. Aug. 10,
   2010) ..........................................................................................................43

*Speakman Co. v. Harper Buffing Machine Co.*,
   583 F. Supp. 273 (D. De. 1984) .....................................................................40

*Stroderd v. Yamaha Motor Corp., U.S.A.*,
   2005 U.S. Dist. LEXIS 17797 (E.D. La. Aug. 4, 2005) ......................................37

*Strzakowlski v. GMC*,
   2005 U.S. Dist. LEXIS 18111 (D. N.J. Aug. 16, 2005)..................................39, 40

*Sullivan v. Young Bros. & Co.*,
   91 F.3d 242 (1st Cir. 1996)...........................................................................39, 40

*Susman v. Lincoln American Corp.*,
   561 F.2d 86 (7th Cir. 1977) ...........................................................................22

*Third Party Verification, Inc. v. Signatureline, Inc.*,
   492 F. Supp. 2d 1314 (M.D. Fla. 2007) ...........................................................33

*Vengurlekar v. Silverline Techs., Ltd.*,
   220 F.R.D. 222 (S.D.N.Y. 2003) .....................................................................18

*Wahl v. Midland Credit Mgmt.*,
   243 F.R.D. 291 (D. Ill. 2007).........................................................................44

*Walsh v. Ford Motor Co.*,
   130 F.R.D. 260 (D.D.C. 1991)......................................................................31, 41

*Wolin v. Jaguar Land Rover North Am.*,
   *LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................................................42, 43

*Wood Prods., Inc. v. CMI Corp.,*
    651 F. Supp. 641 (D. Md. 1986) ......................................................................38

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010) .......................................................................44

**STATE CASES**

*Adams v. American Cyanamid Co.,*
    498 N.W.2d 577 (Neb. App. 1992) .................................................................40

*American Fertilizer Specialists, Inc. v. Wood,*
    635 P.2d 592 (Okla. 1981) ...................................................................37, 39, 40

*Armco Steel Corp. v. Isaacson Structural Steel Co.,*
    611 P.2d 507 (Alaska 1980) ....................................................................39, 40

*Ashley v. Boch Toyota, Inc.,*
    1992 Mass. App. Div. LEXIS 17 (Mass. App. Div. March 4, 1992) ......................................41

*Bassett v. Kia Motors America, Inc.,*
    2004 Phila. Ct. Com. Pl. LEXIS 149 (Sept. 17, 2004) .........................................29

*Bay Point Condo. Ass'n v. RML Corp.,*
    57 Va. Cir. 295 (Va. Cir. 2002) ...................................................................41

*Beckermeyer v. AT&T Wireless,*
    2004 Phila. Ct. Com. Pl. LEXIS 153 (Pa. C.P. 2004) .........................................28

*C & M Contrs., Inc. v. Team Persuasion Enters., Inc.,*
    779 So. 2d 1, 3 (La. App. 1999) ...................................................................37

*Cambridge Techs., Inc. v. Argyle Indus.,*
    807 A.2d 125 (Md. App. 2002) .....................................................................41

*Cameo Curtains, Inc. v. Philip Carey Corp.,*
    416 N.E.2d 995 (Mass. App. Ct. 1981) ...........................................................38

*Carlson v. Rysavy,*
    262 N.W.2d 27 (S.D. 1978) ..........................................................................41

*Carroll Instrument Co. v. B.W.B. Controls, Inc.,*
    677 S.W.2d 654 (Tex. App. 1984) .................................................................40

*Caterpillar Tractor Co. v. Beck,*
    593 P.2d 871 (Alaska 1979) ........................................................................37

*CEF Enters., Inc. v. Betts*,
838 So. 2d 999 (Miss. App. 2003) ..................................................................37

*Central Bit Supply v. Waldrop Drilling & Pump*,
717 P.2d 35 (Nev. 1986) ..................................................................41

*Cheyenne Mountain Bank v. Whetstone Corp.*,
787 P.2d 210 (Colo. App. 1990) ..................................................................40

*City Welding & Mfg. Co. v. Gidley-Eschenheimer Corp.*,
451 N.E.2d 734 (Mass. App. 1983) ..................................................................39, 40

*Clark v. Alan Vester Auto Group, Inc.*,
2009 NCBC 17 (2009) ..................................................................34

*Cline v. DaimlerChrysler Co.*,
114 P.3d 468 (Okla. Civ. App. 2005) ..................................................................41

*Curry v. Thornsberry*,
128 S.W.3d 438 (Ark. 2003) ..................................................................41

*D & H Co. v. Shultz*,
579 P.2d 821 (Okla. 1978) ..................................................................41

*Dailey v. Holiday Distributing Corp.*,
151 N.W.2d 477 (Iowa 1967) ..................................................................39, 40

*Dale v. Daimler Chrysler Corp.*,
204 S.W. 3d 151 (Mo. Ct. App. 2006) ..................................................................30, 42, 43

*Dalton v. Stanley Solar & Stove*,
629 A.2d 794 (N.H. 1993) ..................................................................38

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) ..................................................................34

*David v. Thibodeaux*,
916 So. 2d 214 (La. App. 1st Cir. 2005) ..................................................................39

*Dawson v. Canteen Corp.*,
212 S.E.2d 82 (W. Va. 1975) ..................................................................38

*Deisch v. Jay*,
790 P.2d 1273 (Wyo. 1990) ..................................................................41

*Divis v. Clarklift of Neb., Inc.*,

256 Neb. 384 (Neb. 1999) ..................................................................................................28

*Dominiack Mech., Inc. v. Dunbar*,
757 N.E.2d 186 (Ind. App. 2001) ......................................................................38

*E. I. Du Pont de Nemours & Co. v. Dillaha*,
659 S.W.2d 756 (Ark. 1983) ..............................................................................37

*Eggl v. Letvin Equip. Co.*,
632 N.W.2d 435 (N.D. 2001) .............................................................................37

*Elliott v. Lachance*,
256 A.2d 153 (N.H. 1969) ..................................................................................37

*Faulkingham v. Seacoast Subaru, Inc.*,
619 A.2d 987 (Me. 1993) ....................................................................................41

*Fedders Corp. v. Boatright*,
493 So. 2d 301 (Miss. 1986) ..............................................................................41

*Ford Motor Co. v. General Accident Ins. Co.*,
779 A.2d 362 (Md. 2001) ...................................................................................37

*Frantz v. Cantrell*,
711 N.E.2d 856 (Ind. App. 1999) ......................................................................37

*Gables CVF v. Bahr, Vermeer & Haecker Architect,*
506 N.W.2d 706 (Neb. 1993) .............................................................................38

*Galvan v. Northwestern Mem. Hosp.*,
888 N.E.2d 529 (Ill. App. Ct. 2008) ..................................................................35

*Gibbons v. Windish, Inc.*,
662 P.2d 500 (Colo. App. 1983) ........................................................................41

*Ginoff v. NW Motor Welding*,
1993 Mont. Dist. LEXIS 672 (Aug. 3, 1993) ....................................................37

*Greenfield Die & Mfg. Corp. v. Captive Fastener Corp.*,
2004 Mich. App. LEXIS 688 (Mich. App. March 9, 2004) ................................37

*Hargett v. Midas Int'l Corp.*,
508 So.2d 663 (Miss. 1987) ...............................................................................38

*Harrison v. Dallas Court Reporting College, Inc.*,
589 S.W.2d 813 (Tex. App. 1979) .....................................................................41

*Hensley v. Colonial Dodge, Inc.*,
    245 N.W.2d 142 (Mich. App. 1976) .................................................................41

*Hepper v. Triple U Enters*,
    388 N.W.2d 525 (S.D. 1986) ...................................................................39, 40

*Herring v. Home Depot, Inc.*,
    565 S.E.2d 773 (S.C. App. 2002) .....................................................................37

*Hill v. BASF Wyandotte Corp.*,
    311 S.E.2d 734 (S.C. 1984) ..............................................................................40

*Hitachi Elec. Devices v. Platinum Techs., Inc.*,
    621 S.E.2d 38 (S.C. 2005) .......................................................................39, 40

*Industrial Fiberglass v. Jandt*,
    361 N.W.2d 595 (N.D. 1985) ...................................................................39, 40

*KT Co. v. Hardwick*,
    265 S.E.2d 510 (S.C. 1980) ..............................................................................38

*L. A. Green Seed Co. v. Williams*,
    438 S.W.2d 717 (Ark. 1969) ....................................................................38, 40

*Laird v. Scribner Coop, Inc.*,
    466 N.W.2d 798 (Neb. 1991) ...................................................................39, 40

*Lang v. Gen. Motors Corp.*,
    136 N.W.2d 805 (N.D. 1965) ...........................................................................38

*Lucas v. Pioneer, Inc.*,
    256 N.W. 2d 167 (Iowa 1977) ..........................................................................28

*Lynx, Inc. v. Ordnance Products, Inc.*,
    327 A.2d 502 (Md. 1974) ..........................................................................39, 40

*Martin v. Amana Refrigerator*,
    435 N.W.2d 364 (Iowa 1989) ...........................................................................28

*McLaughlin v. Michelin Tire Corp.*,
    778 P.2d 59 (Wyo. 1989) ..................................................................................38

*Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc.*,
    262 So. 2d 377 (La. 1972) ................................................................................38

*Meland v. Intermountain Sys.*,
   712 P.2d 1295 (Mont. 1985) ...........................................................................41

*Michiana Mack, Inc. v. Allendale Rural Fire Protection Dist.*,
   428 N.E.2d 1367 (Ind. App. 1981) ................................................................41

*Minneapolis Threshing Mach. Co. v. Huncovsky*,
   202 N.W. 280 (N.D. 1924) ............................................................................41

*Morrow v. New Moon Homes*,
   548 P.2d 279 (Alaska 1976) .....................................................................38, 40

*Mountaineer Contractors v. Mountain State Mack, Inc.*,
   268 S.E.2d 886 (W. Va. 1979) .......................................................................37

*Murphy v. Spelts-Schultz Lumber Co.*,
   481 N.W.2d 422 (Neb. 1992) .........................................................................37

*Neilson Business Equipment Center, Inc. v. Italo V. Monteleone*,
   M.D., P.A., 524 A.2d 1172 (Del. 1987) .........................................................37

*Nelson v. Logan Motor Sales*,
   370 S.E.2d 734 (W. Va. 1988) .......................................................................41

*Nobility Homes of Texas, Inc. v. Shivers*,
   557 S.W.2d 77 (Tex. 1977) ............................................................................38

*Old Albany Estates, Ltd. v. Highland Carpet Mills*,
   604 P.2d 849 (Okla. 1979) ............................................................................38

*Ortiz v. Flintkote Co.*,
   761 S.W.2d 531 (Tex. App. 1988) .................................................................41

*Pack & Process, Inc. v. Celotex Corp.*,
   503 A.2d 646 (Del. Super. 1985) ...................................................................38

*Perth Amboy Iron Works v. Am. Home Assurance Co.*,
   543 A.2d 1020 (N.J. Super. 1988) .................................................................41

*Peterson v. Bendix Home Systems, Inc.*,
   318 N.W.2d 50 (Minn. 1982) .........................................................................37

*Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*,
   686 P.2d 589 (Wyo. 1984) ........................................................................39, 40

*Ragland Mills, Inc. v. General Motors Corp.*,
　　763 S.W.2d 357 (Mo. Ct. App. 1989)...................................................................30

*Renze Hybrids, Inc. v. Shell Oil Co.*,
　　418 N.W.2d 634 (Iowa 1988) .............................................................................37

*S. C. Gray, Inc. v. Ford Motor Co.*,
　　286 N.W.2d 34 (Mich. App. 1979).......................................................................40

*Scott v. Blue Springs Ford Sales, Inc.*,
　　215 S.W.3d 145 (Mo. Ct. App. 2006)...................................................................32

*Shooshanian v. Wagner*,
　　672 P.2d 455 (Alaska 1983)................................................................................39

*Simmons v. Ciba-Geigy Corp.*,
　　302 S.E.2d 17 (S.C. 1983) .................................................................................40

*Smith v. Daimlerchrysler Corp.*,
　　2002 Del. Super. LEXIS 434 (Nov. 20, 2002).....................................................39

*Schneider v. Person*,
　　1964 Pa. Dist. & Cnty. Dec. LEXIS 177 (Feb. 18, 1964)  ..................................40

*Solarz v. DaimlerChrysler Corp.*,
　　2002 Phila. Ct. Com. Pl. LEXIS 34 (March 13, 2002).........................................37

*Sonfield v. Burleson*,
　　543 So. 2d 488 (La. App. 1989)..........................................................................40

*Spring Motors Distribs. v. Ford Motor Co.*,
　　489 A.2d 660 (N.J. 1985)...................................................................................37

*St. Paul Mercury Ins. Co. v. Jeep Corp.*,
　　572 P.2d 204 (Mont. 1977).................................................................................37

*Stanley v. Schiavi Mobile Homes, Inc.*,
　　462 A.2d 1144 (Me. 1983)..................................................................................37

*Stark v. Patalano Ford Sales, Inc.*,
　　 567 N.E.2d 1237,1241 (Mass. App. 1991) ........................................................40

*Streich v. Hilton-Davis, Div. of Sterling Drug*,
　　692 P.2d 440 (Mont. 1984).................................................................................37

*T.O. Haas Tire Co. v. Futura Coatings*,
    507 N.W.2d 297 (Neb App. 1993).........................................................................40

*Vacation Village v. Hitachi Am.*,
    874 P.2d 744 (Nev. 1994)....................................................................................37

*Van Wyk v. Norden Lab., Inc.*,
    345 N.W.2d 81 (Iowa 1984).................................................................................27

*W. Equip. Co. v. Sheridan Iron Works*,
    605 P.2d 806 (Wyo. 1980)...................................................................................38

*Waddell v. American Breeders Serv.*,
    505 P.2d 417 (Mont. 1973)............................................................................39, 40

*Washington v. Morein Motor Co.*,
    488 So. 2d 325 (La. App. 1986)...........................................................................40

*Weedo v. Stone-E-Brick, Inc.*,
    405 A.2d 788 (N.J. 1979).....................................................................................40

*Williams v. Mozark Fire Extinguisher Co.*,
    888 S.W.2d 303 (Ark. 1994).................................................................................39

*Willmar Cookie Co. v. Pippin Pecan Co.*,
    357 N.W.2d 111 (Minn. App. 1984)...............................................................39, 40


## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

11 U.S.C. § 503(b)(9) ......................................................................................3, 11

11 U.S.C. § 1129..................................................................................................12

Bankruptcy Rule 7023 .....................................................................................9, 10

Bankruptcy Rule 9014 .....................................................................................9, 10

Fed. R. Civ. P. 23 ......................................................................................... passim

UCC § 2-607 ........................................................................................................39

UCC § 2-714 ........................................................................................................40


## STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

6 *Del. C.* § 2-314 (2006) ......................................................................................37

6 Del. C. § 2-607(3)(a) (2006) ........................................................................................39, 40

13 Pa. C.S. § 2607(c)(1) (2006) .......................................................................................39, 40

13 Pa. C.S. § 2314 ............................................................................................................37, 38

A.C.A. § 4-2-607(3)(a) (2006) ...............................................................................................39

Alaska Stat. § 45.02.314 (2006) .............................................................................................37

Alaska Stat. § 45.02.314(b)(2) (2003) ...................................................................................38

Alaska Stat. § 45.02.607(c)(1) (2006) ..............................................................................39, 40

C.R.S. § 4-2-314 (2005) ........................................................................................................37

C.R.S. § 4-2-318 (2005) ........................................................................................................38

C.R.S. § 4-2-607(3)(a) (2005) .........................................................................................39, 40

C.R.S. § 4-2-314 (2002) ........................................................................................................38

Cal. Civ. Code § 1770(a) ........................................................................................................34

Cal. Civ. Code § 1770(a)(5,7) ................................................................................................34

Fla. Stat. § 501.203(3)(c) (2010) ...........................................................................................33

GL Chapter 106, § 2-314 (2006) ......................................................................................37, 38

GL Chapter 106, § 2-607(3)(a) (2006) ...................................................................................39

HRS § 490:2-314 (2006) ...................................................................................................37, 38

Ind. Code Ann. § 26-1-2-314 (2006) .....................................................................................37

Ind. Code Ann. § 26-1-2-607(3)(a) (2006) ......................................................................39, 40

Iowa Code § 554.2314 (2005) ..........................................................................................37, 38

Iowa Code § 554.2318 (2004) ................................................................................................38

Iowa Code § 554.2607(3)(a) (2005) .......................................................................................40

La. C.C. Art. 2520 (2002) ......................................................................................................38

La. C.C. Art. 2522 (2006) ......................................................................................................39

Maryland Civil Pattern Jury Instructions 26:7 (4th Ed. 2002)..............................................38

MCLS 440.2314 (2006) ................................................................................27, 29, 37, 38

MCLS § 440.2607(3)(a) (2006) ...........................................................................37, 39, 40

Md. Commercial Law Code Ann. § 2-314 (2006), ...............................................37, 38, 39

Md. Commercial Law Code Ann. § 2-607(3)(a) (2006) .............................................39, 40

Minn. Stat. § 336.2-314 (2005) ....................................................................................37, 38

Minn. Stat. § 336.2-607(3)(a) (2005) ..........................................................................39, 40

Miss. Code Ann. § 75-2-314 (2006) .............................................................................37, 38

Miss. Code Ann. § 75-2-607(3)(a) (2006) ...................................................................39, 40

Mo. Rev. Stat. § 400.2-314 .................................................................................................27

Mo. Rev. Stat. §§ 407.010 *et seq.* ..............................................................................31, 32

Mo. Rev. Stat. § 407.020 ....................................................................................................33

Mont. Code Anno., § 30-2-314 (2005) .........................................................................37, 38

Mont. Code Anno., § 30-2-607 (3)(a) (2005) ..............................................................39, 40

N. C. GEN. STAT. §§ 75-1.1 *et seq.* ...........................................................................31, 34

N.D. Cent. Code, § 41-02.1-31 (2006) .................................................................................38

N.D. Cent. Code, § 41-02-31 (2006) ....................................................................................37

N.D. Cent. Code, § 41-02-70(3)(a) (2006) ...................................................................39, 40

N.J. Stat. § 12A:2-314 (2006) ......................................................................................37, 38

N.J. Stat. § 12A:2-607(3)(a) (2006) .....................................................................................39

Nev. Rev. Stat. Ann. § 104.2314 (2006) .......................................................................37, 38

Nev. Rev. Stat. Ann. § 104.2607(3)(a) .................................................................................39

RSA § 382-A:2-314 (2006) ...........................................................................................37, 38

RSA § 382-A:2-607(3)(a) (2006) .........................................................................................39

RSA § 382-A:2-318 (2004) ..................................................................................................37

S.C. Code Ann. § 36-2-314 (2005) ...............................................................................37, 38

S.C. Code Ann. § 36-2-607(3)(a) (2005) ........................................................................39

S.D. Codified Laws § 57A-2-314 (2006)..................................................................37, 38

S.D. Codified Laws § 57A-2-607(3)(a) (2006) ..............................................................39

Tex. Bus. & Com. Code § 2.607(c)(1) (2005) ...............................................................39

Va. Code Ann. § 8.2-314 (2006)...............................................................................37, 38

Va. Code Ann. § 8.2-607(3)(a) (2006) ....................................................................39, 40

W. Va. Code § 46-2-314 (2006) ...............................................................................37, 38

W. Va. Code § 46-2-607(3)(a) (2006) .....................................................................39, 40

Wyo. Stat. § 34.1-2-314 (2006) ................................................................................37, 38

Wyo. Stat. § 34.1-2-607(c)(i) (2006) .......................................................................39, 40

## INTRODUCTION

Plaintiffs William Anderson, Jeremy Bauer, Antonio Burgos, Jennifer Cardwell, Amy Faust, Jesus Leal, Jeanne Menzer, Charles Reid and Cynthia Scott (collectively, the "Saturn Plaintiffs") respectfully submit this Memorandum of Law in opposition to the Objection of Proofs of Claims Nos. 16440 and 16441 (the "Objection") filed by Motors Liquidation Company (f/k/a General Motors Corporation ("GM")) and its affiliated debtors, as debtors in possession (collectively, the "Debtors").[1]

## PRELIMINARY STATEMENT

On June 11, 2008, the Saturn Plaintiffs filed their Consolidated Amended Complaint (the "Complaint"),[2] in the United States District Court for the District of Nebraska in the case captioned, *In Re Saturn L-Series Timing Chain Litig.,* MDL No. 1920 (the "Saturn Class Action"). The Complaint asserted claims for breach of the implied warranty of merchantability and consumer fraud against GM and Saturn Corporation ("Saturn") on behalf of the Saturn Plaintiffs, themselves, and all similarly situated persons and entities who purchased or leased a (i) model year 2000 - 2003 Saturn L-Series; (ii) model year 2002 - 2003 Saturn Vue or (iii) model year 2003 Saturn Ion, each equipped with a 2.2 Liter, 4-cylinder, 137-horsepower dual-overhead-cam, Ecotec L61 Engine (the "2.2L Ecotec L61 Engine") and a GM production part number 90537338 steel timing chain (the "Timing Chain") and a GM production part number 90537476

---

[1]     All citations to Debtors' Objection appear in the form "Debts' Br. at __."

[2]     All citations to the Complaint (*see* Proofs of Claim 16440 and 16441, Exh. D, annexed as Exh. A to the Declaration of Michael A. Schwartz, submitted herewith), appear in the form of "Cplt. ¶__."

timing chain oiling nozzle (the "Oiling Nozzle") (collectively, the "Class Vehicles") and whose Timing Chain has failed (the "Saturn Class").

As set forth in the Complaint, the Class Vehicles were defectively designed because they were equipped with Timing Chains and Oiling Nozzles that were not capable of withstanding normal operation.  As a result of this design defect, the Timing Chains on the Class Vehicles have failed, causing damages to the Saturn Plaintiffs and the Class.

On July 14, 2008, GM and Saturn moved to dismiss the Complaint.  On November 7, 2008, the District Court issued an opinion and order (the "Order") granting in part and denying in part the motion to dismiss.  Significantly, the District Court upheld 13 of the 26 claims asserted in the Complaint.  *See In Re: Saturn L-Series Timing Chain Products Liability Litigation*, 2008 U.S. Dist. LEXIS 109978 (D. Neb. Nov. 7, 2008) (annexed as Exh. E to Proofs of Claim 16440 and 16441 (Schwartz Decl. Exh. A)).

After the District Court's ruling on the motion to dismiss, the parties began the discovery process during which discovery demands were propounded and a limited number of documents were produced before the stay was issued in these Chapter 11 proceedings.

 On June 1, 2009, Debtors commenced an action under Chapter 11 of the Bankruptcy Code (the "Bankruptcy") in this Court and on September 16, 2009, this Court entered an order (the "Bar Date Order") which established November 30, 2009 as the bar date (the "Bar Date"), the final date on which a proofs of claim could be submitted in this Bankruptcy.

On October 21, 2009, the Saturn Plaintiffs, by and through their counsel,[3] filed class proof of claim nos. 16440 and 16441 pursuant to 11 U.S.C. § 503(b)(9) (collectively, the "Class Proofs of Claim") for the amount of $334,847,925.00. (*See* Class Proofs of Claim, Schwartz Decl., Exh. A). As basis for the Class Proofs of Claim, the Saturn Plaintiffs attached, among other things, a copy of the Complaint, the District Court's decision denying, in relevant part, Defendants' motions to dismiss, and an analysis of the damages suffered by the Saturn Class.

On March 19, 2010, the Saturn Plaintiffs submitted Claim Capping Letters with respect to the Class Proofs of Claim. *See* Schwartz Decl., Exh.B.

On December 17, 2010, thirteen months after the Class Proofs of Claim were filed, Debtors filed the Objection to which the Saturn Plaintiffs respond by way of this instant opposition (the "Opposition"). In the Objection, the Debtors maintain that the Class Proofs of Claim should be expunged because the Saturn Plaintiffs have not timely moved for the application of Rule 23 of the Fed. R. Civ. P. ("Rule 23") to the Class Proofs of Claim and that the claims asserted by the Saturn Plaintiffs do not meet the standard for class certification set forth in Rule 23. As demonstrated herein, all of Debtors' arguments are without merit. Accordingly, the Saturn Plaintiffs respectfully request that this Court: (i) overrule the Debtors' Objection; (ii) grant the Saturn Plaintiffs' motion for an application of Rule 23 and (iii) certify the Class pursuant to Rule 23.

## **STATEMENT OF FACTS**

During all relevant times, Debtors designed and manufactured the Class Vehicles, which suffer from the design defect. Cplt. ¶¶ 7-8.

---

[3]    By Order dated March 28, 2008, the District Court, *inter alia,* appointed Horwitz, Horwitz & Paradis and Shepherd, Finkelman Miller & Shah, LLC as co-lead counsel for the Saturn Class. *See* Exhs. B and C to Proofs of Claim 16440 and 16441 (Schwartz Decl., Exh. A).

## Overview Of The Timing Chain's Function

The 2.2L Ecotec L61 engine manufactured by GM and used to power the Class Vehicles is equipped with a Timing Chain, which is a metal chain used to rotate the camshaft that is fastened to the main drive sprocket on one end and to the camshaft sprocket on the other. Cplt. ¶¶ 12, 21.  The Timing Chain allows for proper timing between the camshaft and the crankshaft, which, in turn, controls the opening and closing of the engine valves.  Cplt. ¶ 22.  It is extremely important that the Timing Chain stay well lubricated. Cplt. ¶ 25. An Oiling Nozzle is placed above the Timing Chain, with its primary purpose to ensure that the Timing Chain receives proper lubrication. Cplt. ¶ 25. Without proper lubrication, excessive heat can build up, causing the metal on the Timing Chain to bend and/or stretch, thereby causing the Timing Chain to slip off the teeth of the sprockets or to break completely. Cplt. ¶ 25.  A malfunctioning timing chain can cause an engine to run inefficiently or stop running altogether. A timing chain that breaks "will likely cause parts such as pistons and valves to collide with costly consequences." *See, e.g.*, Cplt. ¶ 25.

## The Defect

The Class Vehicles were assembled in 2000 through 2002 and are all equipped with an Oiling Nozzle that is defectively designed.  The Oiling Nozzle is defectively designed because the mouth of the Oiling Nozzle prevents the amount of oil necessary to lubricate the Timing Chain during engine operation from flowing through the Oiling Nozzle onto the Timing Chain. Cplt. ¶ 27. *See also* Declaration of Thomas L. Read, Ph.D., submitted herewith (the "Read Decl."), ¶¶ 8-9, annexed to the Schwartz Decl. as Exh. C.  This condition results in insufficient lubrication, which, in turn, leads to excess

4

friction and heat buildup and thereby causes the Timing Chain to loosen, snap or break. Cplt. ¶ 28; Read Decl. ¶¶ 8-9.  When the Timing Chains break, extensive damage is caused to the valves, pistons and/or cylinders, resulting in very expensive engine repairs, as experienced by the Saturn Plaintiffs.  Cplt. ¶ 28.[4]

This defect was confirmed by the Saturn Plaintiffs' Expert, Dr. Thomas Read, who stated in relevant part,

> [T]he Oiling Nozzles are defective because, during normal use, the Oiling Nozzles did not adequately lubricate the Timing Chains, subjecting the Timing Chains to excessive heat and friction, which caused the metal on the Timing Chains to rapidly wear, bend, stretch and/or become brittle, thereby causing the Timing Chains to slip off the teeth of the main drive sprocket and camshaft sprockets or to break completely.

*See* Read Decl., ¶ 9 (Schwartz Decl., Exh. C).

**Debtors Knew Of The Design Defect Since At Least As Early As 2001**

After redesigning both the Timing Chain and Oiling Nozzle in late 2001 – early 2002 in an effort to address consumer complaints of broken Timing Chains and ruined engines as a result thereof, Debtors advised Service Departments of Saturn Dealers in a Technical Service Bulletin ("TSB") that when they encountered a Class Vehicle that required a Timing Chain repair, the Service Technician should replace the Timing Chain and Oiling Nozzle with a re-designed Timing Chain and Oiling Nozzle. Cplt. ¶¶ 92-94.[5] The TSB cited that the new design **"has higher flow rate characteristics that will**

---

[4]    *See, e.g.,* Cplt., ¶ 9 ("Plaintiff Cardwell was operating her Class Vehicle on or about January 4, 2008, when the Timing Chain broke, damaging engine valves and causing the Class Vehicle to stop operating, necessitating repairs costing over $2,700."); Cplt. ¶ 12 ("Plaintiff Leal was driving his Class Vehicle on June 11, 2007, when the Timing Chain broke, causing extensive damage to the engine and causing the Class Vehicle to stop operating, necessitating repairs costing over $2,400"); Cplt. ¶ 13 ("Plaintiff Menzer was driving her Class Vehicle on April 17, 2008, when the Timing Chain broke, damaging the engine and causing the Class Vehicle to stop operating, necessitating repairs costing over $1,900").

[5]    Moreover, as a result of a similar defect in model year 1991-1996 Saturn vehicles, Defendants were aware of the effects of failing to properly lubricate timing chains.  Cplt., ¶¶ 65-69.

**increase oil flow to the [T]iming [C]hain under low RPM conditions**." Cplt. ¶ 94.

Despite adopting this curative measure, Debtors continued to publicly deny the existence

of the design defect in the Class Vehicles, essentially forcing consumers to incur one

hundred percent of the financial burden associated with repairing the defect. Cplt. ¶¶ 95.

As discussed below, it was not until December 2007 -- after the Saturn Plaintiffs

filed their lawsuit -- that Defendants notified a fraction (5%) of purchasers and lessees of

the Class Vehicles about the Class Vehicles' defective design, and undertook to retrofit a

very limited number of the Class Vehicles with the re-designed Timing Chains and

Oiling Nozzles, at Defendants' expense.. Cplt. ¶ 96.

**Hundreds of Consumer Complaints Abound**
**Concerning the Class Vehicles' Performance and Safety**

Since at least 2001, thousands of complaints concerning the Class Vehicles'

performance and safety have been received by GM, posted to the Internet, and filed with

the United States Department of Transportation's National Highway Traffic Safety

Administration ("NHTSA").   Cplt. ¶¶ 88-91, 102.   As a result of these complaints,

Debtors have had actual knowledge of the Oiling Nozzle design defect since at least as

early as 2001. Cplt. ¶ 31.

The Office of Defects Investigation ("ODI") of NHTSA has been collecting

complaints from Class Vehicle drivers regarding their defective Class Vehicles from

2001 to the present. Cplt. ¶ 31.

**NHTSA Grants An Investigation And Opens**
**A Preliminary Evaluation To Assess The Defect**

In a letter to NHTSA dated December 12, 2005, the North Carolina Consumers

Council, Inc. ("NCCC"), a non-profit consumer advocacy group with a large membership

6

base spanning across the Continental United States, requested that NHTSA perform a defect investigation into the Class Vehicles for Timing Chain failures in response to the numerous consumer complaints from drivers alleging Timing Chain failures. Cplt. ¶ 97. The then NCCC's Executive Director, Brad Lamb, boldly stated: "The manufacturer knew there was a problem, and knew the problem could happen as early as 25,000 miles. **They would rather the consumer incur the expense of a new engine rather than make the up to $900 upgrade."** (Emphasis added).  Cplt. ¶ 98. Based on NCCC's request, on February 6, 2006, NHTSA announced that it had granted the NCCC's petition and reported its commencement of Preliminary Evaluation 06-006  ("PE06-006") "to assess the frequency, trend, scope and safety consequences associated with the alleged defect in the subject vehicles." Cplt. ¶ 99. As the basis for its investigation, NHTSA indicated to Debtors that ODI had received 31 complaints alleging Timing Chain failures in 2000-2003 Saturn L-Series vehicles. *Id.*. NHTSA further indicated to Debtors that in most of the complaints, the Timing Chain failure resulted in a sudden loss of power and engine stall. *Id.*

**Debtors' Response To NHTSA's Information Request**
**Further Confirms That Debtors Had Actual Knowledge of the Design Defect**

As required by NHTSA's demand for further information concerning the defects, on April 12, 2006, Debtor GM disclosed to NHTSA that it had received over **one thousand and twenty (1,020) consumer reports or field reports that indicate that the Timing Chain was broken or was replaced; and (ii) one thousand six hundred and forty eight (1,648) Warranty Claims involving broken Timing Chains in the 2000 – 2003 Saturn L-Series Vehicles** during the relevant period. Based on the number of

complaints and Warranty Claims alone, it is undeniable that Debtors had knowledge of the existence of the Class Vehicles' defects. Cplt. ¶¶ 101-102.

GM's disclosures to NHTSA also contained descriptions of subsequent and continued modifications made to the Class Vehicles' defective Oiling Nozzle. Cplt. ¶¶ 101-110. GM further confirmed to NHTSA that the impetus for the redesign of the Oiling Nozzle stemmed from a flawed original design and, that the subsequent redesign of these parts, was intended to improve "**timing chain wear resistance**" and enhance "**timing chain lubrication at low speeds**." Cplt. ¶¶ 101-110 (Emphasis added).

**NHTSA Upgrades The Investigation Based On GM's Response
And The High Incidents Of Consumer Complaints Regarding the Class Vehicles**

Dismayed by the damning admissions contained within GM's responses to NHTSA's inquiries, including GM's admission that this defect was indeed a safety issue because the Timing Chains were failing "at speeds greater than 40 mph," causing the engines to stall (Cplt. ¶113), on June 6, 2006, NHTSA's ODI upgraded their investigation to an "Engineering Analysis," the highest level within NHTSA's investigatory structure. Cplt. ¶ 114. NHTSA indicated to GM that the elevation of its investigation was, *inter alia*, based on abnormally high failure rates for Saturn L-Series Vehicles built during a four month period from November 2000 through February 2001. Cplt. ¶¶ 114-115. GM's own reporting data reveals that over one-third of all complaints, field reports and Warranty Claims involve Class Vehicles built during this four month period. *Id*.

**IN ORDER TO AVOID THE EXPENSE OF A NHTSA
MANDATED RECALL OF ALL CLASS VEHICLES,
DEFENDANTS INSTITUTED A LIMITED RECALL**

On November 7, 2007, GM notified NHTSA that Defendants had:

[D]ecided that a defect, which relates to motor vehicle safety, exists in

8

certain 2001 model year Saturn L-Series vehicles equipped with a 2.2L 4-cylinder (RPO L61 – VIN F) engine.  An elevated rate of engine timing chain link separation has occurred.

Cplt. ¶ 117.

However, Defendants identified a mere 20,514 Class Vehicles subject to the recall, out of the total universe of approximately 412,419 Class Vehicles produced with the defective Oiling Nozzles. This limited recall has left, by GM's own estimate, the owners of 391,635 Class Vehicles to: (a) bear the cost of replacing the Timing Chain before it breaks, at a cost of anywhere from $600 to $900; or (b) bear the expense of the repairs to their Class Vehicles when the Timing Chains break, more often than not, causing thousands of dollars in damages to the Class Vehicles. *See, e.g.,*Cplt., *¶¶* 9, 12-13.

## ARGUMENT

By way of this Opposition, the Saturn Plaintiffs respectfully move this Court for an application of Rule 23 to the Class Proofs of Claim.  Additionally, the Saturn Plaintiffs further move this Court for an order certifying the Saturn Class, as set forth below.

## I.    THIS COURT SHOULD GRANT THE SATURN PLAINTIFFS' MOTION FOR AN APPLICATION OF RULE 23

Before certifying a class, the Bankruptcy court must be asked to apply Rule 23 to the proof of claim at issue.

Courts have held that "while the process by which a bankruptcy court may certify a class under Rule 23 is not set out in the Bankruptcy Code or rules," courts may still seek guidance from two rules of the Federal Bankruptcy Rules of Procedure — Bankruptcy Rule 7023 ("Rule 7023") and Bankruptcy Rule 9014 ("Rule 9014"). *In re Worldcom, Inc.*, 2004 Bankr. LEXIS 2444, *8-9 (S.D.N.Y. Dec. 28, 2004).

Rule 7023 simply states that "Rule 23 F. R. Civ. P. applies in adversary proceedings" and Rule 9014 requires than an application of Rule 23 be made by motion.

As demonstrated below, the Saturn Plaintiffs have timely moved for an application of Rule 7023, and therefore, Rule 23, by way of this instant Opposition.

### A. The Saturn Plaintiffs Have Timely Sought The Application Of Rule 23

Neither Rule 7023 nor Rule 9014 provides any guidance on the timeframe during which a party must move for the application of Rule 23. The court, in *In re Charter Co.*, 876 F.2d, 861, 864 (11th Cir. 1989), the holding of which was adopted by the Southern District of New York in, *In re Chateaugay Corp.*, 104 B.R. 626, 634 (S.D.N.Y. 1989), however, ruled in relevant part:

> absent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request an application of Bankruptcy Rule 7023, *occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe*, because there is neither an adversary proceeding nor a contested matter.

*Id.* at 864; *Worldcom* at *8 (emphasis added). *See also In re Chateaugay Corp.*, 104 B.R. at 634 (stating "proofs of claim filed on behalf of a class may be filed as of right and in such circumstances the bankruptcy court must exercise its discretion, pursuant to rule 9014 to apply or not apply Rule 7023, *once an objection has been made to those claims*") (emphasis added); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating "The claim cannot be allowed as a class claim until the bankruptcy court directs that Rule 23 apply. It can only make this direction in a pending contested matter which the mere filing of the claim does not initiate. *In the*

*absence of an objection, however, the proof of claim is deemed allowed*") (emphasis added).

Accordingly, it is the filing of an objection that triggers the timeframe during which a party must seek application of Rule 23.  Because the Saturn Plaintiffs now move for an application of Rule 23 by way of this Opposition, in light of the fact that the Debtors have now objected to the Saturn Plaintiffs' Class Proofs of Claim, the Saturn Plaintiffs' motion for application of Rule 23 is timely.

On October 21, 2009, pursuant to 11 U.S.C. § 503(b)(9), the Saturn Plaintiffs filed the Class Proofs of Claim.  On March 19, 2010, the Saturn Plaintiffs submitted Claim Capping Letters with respect to the Class Proofs of Claim.  On December 17, 2010, the Debtors filed the Objection to the Class Proof of Claim.  One month later, by way of this Opposition, the Saturn Plaintiffs have moved for the application of Rule 23. Because this proceeding is now "contested" (as a result of Debtor's Objection), the Saturn Plaintiffs' request for application of Rule 23 is only now ripe, and therefore, timely. *See Worldcom* at *8.

Despite the timeliness of the Saturn Plaintiffs' request for the application of Rule 23 to the Class Proofs of Claim, Debtors maintain that the Saturn Plaintiffs' request is not timely.  Debtors' claim, however, ignores the holding of the forgoing cases, which clearly require that a party move for an application of Rule 23 only *after* an objection has been filed.  To file a motion before such objection has been made, would be procedurally incorrect.  Such request would not be "ripe" (*Worldcom* at *8), and, as such, would unnecessarily burden the Court and the Debtor.

11

Debtors further contend that allowing the Saturn Plaintiffs' request at this juncture would "unduly delay the administration of the Debtors' estates…because the adjudication of the claim and its attendant class certification issues could take months." Debts' Br. at 12. In all actuality, however, the issue of class certification is now fully briefed and before this Court. Moreover, the Saturn Class Claim is ripe for adjudication. As discussed above, the Class Proofs of Claim were timely filed on October 21, 2009, and the Saturn Plaintiffs timely submitted Claim Capping Letters. Therefore, the Saturn Class Claim is ripe for Alternate Dispute Procedures, including Mandatory Mediation, which counsel understands is still ongoing.[6]

Thus, any claim by Debtors that the Saturn Class' application for class certification would delay these proceedings or "prejudice" Debtors is wholly unsupported

Furthermore, all of the cases on which Debtors rely for this meritless argument are distinguishable. For example, in *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007) the court denied extension of Rule 23 to a class proof of claim because allowing such claim would delay the administration of the debtor's estate in light of the fact that the Bankruptcy court had already conducted its confirmation hearing and found that Musicland had satisfied all of the requirements under 11 U.S.C. § 1129. *See also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005) (confirmation hearing concluded ***before*** petitioner moved for certification). Here, no such confirmation hearing has taken place, the Court has yet to make its finding as to whether Debtors satisfy 11

---

[6]    Indeed, Court-appointed co-lead counsel for the Saturn Class has been in repeated contact with Debtor's counsel, Weil, Gotshal & Manges LLP, since June 2010 inquiring about the status of the Saturn Class Proofs of Claim in order to prepare for mediation, and at no time did counsel indicate the Debtors' intention to object to the Proofs of Claim – thus, delay, if any, is a result of Debtors' actions.

U.S.C. § 1129 and the ADR Procedures are ongoing.  Accordingly, the proceedings in

*Musicland* and *Ephedra* were more advanced than those here.[7]

Accordingly, the Saturn Plaintiffs' request for an application of Rule 23 to the

Class Proofs of Claim is timely.

**B.  The Saturn Plaintiffs' Request For Application of Rule 23 Should Be
Granted Because The Benefits Derived From The Use of The Class Claim
Device Are Consistent With the Goals of Bankruptcy and
The Saturn Plaintiffs' Claims Satisfy The Requirements of Rule 23**

In determining whether to extend Rule 23 to the Saturn Plaintiffs' Proofs of

Claim, the Court, in its discretion, must consider: i) whether the Saturn Plaintiffs have

moved for application of Rule 23; ii) whether the benefits derived from the use of the

class claim device are consistent with the goals of bankruptcy; and iii) whether the claims

that the Saturn Plaintiffs seek to certify fulfill the requirements of Rule 23 (the "Bally

Factors").  *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 620

(S.D.N.Y. 2009).  The Saturn Plaintiffs satisfy all three of these Bally Factors.[8]

**1.     The Benefits Derived From The Use of The Class Claim
Device Are Consistent With the Goals of Bankruptcy**

The Saturn Plaintiffs also satisfy the second Bally Factor.  The filing of a class proof

of claim is consistent with the Bankruptcy Code generally in two principal situations: (i)

where a class has been certified pre-petition by a non-bankruptcy court and (ii) where

there has been no actual or constructive notice to the class members of the bankruptcy

---

[7]     *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16 (E.D. Pa. 1995), is similarly distinguishable,
where the court found untimely a motion for application of Rule 23, which was filed by an attorney who
had solicited plaintiffs and filed a class action in state court only two days before the filing of a class proof
of claim and Rule 23 motion in Bankruptcy court.  Based on the suspicious nature of petitioner's filing, the
court found it "impossible to draw any inferences in favor of the propriety of the class or its representative
from this history."  *Sacred Heart*, 177 B.R., 22.  No such facts exist here, where the Saturn Plaintiffs filed
the Saturn Action approximately 4 years ago and filed the Class Proofs of Claim well before the Bar Date.

[8]     By way of this Opposition, the Saturn Plaintiffs seek the application of Rule 23, thereby satisfying
the first Bally Factor.

case and bar date.   *Id.*   Here, the notice given by Debtors to members of the Class is

wholly deficient.   Accordingly, the filing of the Class Proofs of Claim is consistent with

the goals of the Bankruptcy Code.

> a.   **Notice of the Bankruptcy and the Bar Date**
> **Was Insufficient Because Putative Class Members**
> **Were Not Given Notice of Their Ability to Submit**
> **A Claim In This Bankruptcy Proceeding**

The purpose behind the bankruptcy notice requirement is to "advise individuals who

will be affected by the outcome of any proceeding of the impending hearing so that they

can take steps to safeguard their interests." *In re Jamesway Corp., et al.,* No. 95 B 44821

(JLG), 1997 Bankr. LEXIS 825, *33 (Bankr. S.D.N.Y. 1997).  Here, this purpose has not

been fulfilled by the deficient publication notice given by Debtors to putative Saturn

Class members because the Debtors failed to inform putative Saturn Class members

about the existence of their claims regarding the defective Class Vehicles – claims that

were actively being pursued by the Saturn Plaintiffs before proceedings had been stayed.

Such actions are consistent with Debtors' prior behavior, as Debtors consistently

denied the existence of any defect in the Class Vehicles when confronted by members of

the Class with damaged Class Vehicles. *See, e.g.,* Cplt. ¶¶ 94-95**.**

Accordingly, Debtors' repeated denials of the existence of the defect, coupled with

the fact that the notice of the Bankruptcy and Bar Date failed to inform putative Saturn

Class members of their ability to file claims based on the defective Saturn Vehicles,

rendered Debtors' publication notice of the Bankruptcy and Bar Date deficient.  *See*

*Sacred Heart*, 177 B.R., 20 (finding that notices of a debtors' bankruptcy and bar date

may not be sufficient for putative class members and that "the class device may provide

the only form of notice to such parties and [are] advisable to utilize").

14

Because the publication notice of the Bankruptcy and Bar Date given to the putative Saturn Class members was deficient, such notice is not consistent with the goals of the Bankruptcy Code. Permitting this action to proceed as a class action, however, would provide putative Saturn Class members with knowledge of their claims, and, would thus further the goals of the bankruptcy code.   Therefore, the Saturn Plaintiffs satisfy the second Bally Factor.

### 2.    The Saturn Plaintiffs' Claims Satisfy The Requirements of Rule 23

The Saturn Plaintiffs further satisfy the third Bally factor because all of the requirements of Rule 23 have been met, as demonstrated herein.

### a.    The Saturn Plaintiffs Seek Certification Of A Precisely Defined Class

Before a court may certify a class pursuant to Rule 23, plaintiffs are required to demonstrate that the proposed class is "ascertainable."   "Rule 23 contains an implicit requirement that the proposed class be 'precise, objective and presently ascertainable." Newberg on Class Actions §2:4 (4th ed. 2002).

Here, the Saturn Plaintiffs have satisfied this "ascertainability" requirement. The Class is defined as all those who purchased a Class Vehicle and whose Timing Chain has failed.  Cplt. ¶ 1.  The Saturn Class is defined by objective criteria, *i.e.*, the purchase of a Class Vehicle and the failure of a Timing Chain – both of which can be demonstrated through objective, concrete evidence.  Saturn Class members can verify their purchase or lease of Class Vehicles with invoices and bills of sale and can further verify the failure of their Timing Chains with repair and service records.

15

Accordingly, the Saturn Plaintiffs have satisfied the ascertainability requirement. *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 377 (S.D.N.Y. Sept. 30, 2010) (finding an identifiable class exists if members can be ascertained by reference to objective criteria).

Debtors contend that the Saturn Plaintiffs have failed to satisfy the ascertainability requirement for two reasons. First, Debtors summarily contend that it is not "administratively feasible" to identify Saturn Class members. But, as demonstrated above, Class members need only produce documents substantiating their purchase or lease and the failures of their Timing Chains for inclusion in the Class.

Second, Debtors contend that the Class definition is "overinclusive" because it purportedly includes those that received repairs to their Timing Chains at the Debtors' expense. Debtors' argument is factually incorrect. Indeed, Debtors blatantly ignore the fact that the Saturn Class is defined in the Complaint to specifically ***exclude*** the 20,000 recalled Class vehicles. *See* Cplt., ¶ 137 ("Excluded from the Class are the Recalled Vehicles, . . . ."). Moreover, the Class Proofs of Claim *specifically excluded* the 20,514 recalled Class Vehicles from the damages claimed. *See* Class Proofs of Claim Attachment, p. 8 (Schwartz Decl. Exh. A).

Accordingly, the fact that 5% of purchasers of Class Vehicles allegedly have been compensated has no bearing on the ascertainability of the Class.

Based on the foregoing, the Saturn Plaintiffs have satisfied the ascertainability requirement.

b. **This Action Satisfies The Requirements Of Fed. R. Civ. P. 23(a)**

In addition to the ascertainability requirement, a plaintiff must demonstrate that all four requirements of Rule 23(a) have been satisfied – numerosity, commonality, typicality and adequacy. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 (1997).

When deciding a motion for class certification, a court should refrain from deciding any material factual disputes between the parties concerning the merits of the claims, and should accept the underlying allegations as true. *Katz v. Image Innovations Holdings, Inc.,* 2010 U.S. Dist. LEXIS 73929, Fed. Sec. L. Rep. (CCH) P95812 (S.D.N.Y. July 21, 2010). Here, the Saturn Plaintiffs' allegations meet all of the requirements set forth in Rule 23(a).

i. **The Class Is So Numerous
That Joinder of All Members is Impracticable**

In order to meet Rule 23(a)(1)'s numerosity requirement, a plaintiff must establish that the proposed "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible - only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Documents produced to NHTSA by Debtors reflect that 412,149 Class Vehicles were sold with the defective Oiling Nozzles.  Cplt. ¶¶ 126-131.   Accordingly, the Class proposed by the Saturn Plaintiffs easily satisfies the numerosity requirement.

><dd>**ii.    There Are Questions of Law and Fact
>        Common to Members of the Class**

A plaintiff seeking class certification must also show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). A single common issue of law may be sufficient to satisfy the commonality requirement. *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003). "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).  The Saturn Plaintiffs satisfy this requirement, as demonstrated by the common questions listed in Paragraph 138 of the Complaint, including, among others:

- Whether the Class Vehicles are defective because they were equipped with the defective Timing Chains and the defective Oiling Nozzles;

- Whether Debtors knew or should have known about the defect;

- Whether Debtors concealed from Plaintiffs and the other members of the Class the material fact that the Class Vehicles were defective;

- Whether Debtors violated the consumer protection statutes in each of the state-only classes;

- Whether Debtors breached the implied warranty of merchantability in each of the state-only classes; and

- Whether, as a result of Debtors misconduct, the Saturn Plaintiffs and the Class are entitled to damages, restitution, equitable relief or other relief, and the amount and nature of such relief.

Accordingly, the claims of the Saturn Plaintiffs and the Class share more than a "single common issue of law," and thereby readily satisfy Rule 23's commonality requirement.

### iii.    The Claims of the Saturn Plaintiffs Are Typical

Under Rule 23(a)(3), a plaintiff seeking class certification needs to show that his or her claims are typical of other potential class members' claims. Fed. R. Civ. P. 23(a)(3). Typicality is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 903 F.2d 176, 180 (2d Cir. 1990) (citation omitted). "The test is whether the defenses will become the focus of the litigation, thus overshadowing the primary claims, and prejudicing other class members." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig*., 209 F.R.D. 323, 338 n.22 (S.D.N.Y. 2002).

None of the Saturn Plaintiffs are subject to unique defenses.  Furthermore, the Saturn Plaintiffs' claims are not only typical, but are identical to those Saturn Class members whom they seek to represent, which is demonstrated by the Saturn Plaintiffs' experiences and those of other Saturn Class members.

19

Every Saturn Class member, including each of the Saturn Plaintiffs, purchased a defectively designed Class Vehicle.

- Plaintiff William Anderson purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN 1G8JT54F32Y522109, equipped with a 2.2L Ecotec L61 Engine Timing Chain and Oiling Nozzle in October of 2001. Anderson Decl. ¶ 6 (annexed as Exh. D to Schwartz Decl.).

- Plaintiff Antonio Burgos purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN 1G8JU54F42Y530989, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in February of 2002. Burgos Decl. ¶ 6 (annexed as Exh. E to Schwartz Decl.).

- Plaintiff Jennifer Cardwell purchased a Saturn L-Series Class Vehicle, model year 2000 LS1, VIN 1G8JU52F2YY668378, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in November of 2000.  Cardwell Decl. ¶ 6 (annexed as Exh. F to Schwartz Decl.).

-  Plaintiff Amy Faust purchased a Saturn L-Series Class Vehicle model year 2000 LS1, VIN 1G8JU52F4YY671508, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in August of 2003.  Faust Decl. ¶ 6 (annexed as Exh. G to Schwartz Decl.).

- Plaintiff Jesus Leal purchased a Saturn L-Series Class Vehicle, model year 2001 L200, VIN 1G8JU54F41YY583982, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in June of 2001.  Leal Decl. ¶ 6 (annexed as Exh. H to Schwartz Decl.).

- Plaintiff Jeanne Menzer purchased a Saturn L-Series Class Vehicle, model year 2002 L100, VIN 1G8JS54F82Y517099, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in September of 2005. Menzer Decl. ¶ 6 (annexed as Exh. I to Schwartz Decl.).

- Plaintiff Charles Reid purchased a Saturn L-Series Class Vehicle, model year 2001, VIN 1G8JU52F61Y583548, equipped with a 2.2L Ecotect L61 Engine, Timing Chain and Oiling Nozzle in May of 2001.  Reid Decl. ¶ 6 (annexed as Exh. J to Schwartz Decl.).

- Plaintiff Cynthia Scott purchased a Saturn L-Series Class Vehicle, model year 2002 L200, VIN 1G8JU54FX2Y533749, equipped with a 2.2L Ecotec L61 Engine, Timing Chain and Oiling Nozzle in November of 2001.  Scott Decl. ¶6 (annexed as Exh. K to Schwartz Decl.).

Additionally, the Timing Chain in each of the Saturn Plaintiff's Class Vehicles broke, thereby damaging the Plaintiff.[9]

The Saturn Plaintiffs' experiences mirror those of other members of the Saturn Class, as demonstrated by the volume of complaints received by Debtors and NHTSA. *See, e.g.,* Cplt. ¶ 88

Debtors incorrectly claim that the Saturn Plaintiffs' claims are not typical because "the putative class would include plaintiffs who followed differing maintenance programs, operated their vehicles differently, and purchased vehicles under a variety of factual circumstances." Defts' Br. at 29-30 (citing *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir 1993)).[10] As explained herein, however, the Saturn Plaintiffs' claims will largely focus on the existence of the defect in the Class Vehicles. Moreover, as testified to by the Saturn Plaintiffs' Expert, Dr. Thomas Read, the defect in the Class Vehicles is certain to manifest, regardless of the manner of their operation or the factual circumstances of their purchase:

> Based on my examinations and testing described above, as well as my experience as a metallurgist and manufacturing design engineer, it is my professional opinion that the Oiling Nozzles contain an inherent defect which I describe below, and which I believe is substantially certain to manifest itself during normal operation of the Class Vehicles during their useful life.

---

[9]    *See* Anderson Decl. ¶ 7; Burgos Decl. ¶ 7; Cardwell Decl. ¶ 7; Faust Decl. ¶ 7; Leal Decl. ¶ 7; Menzer Decl. ¶ 7; Reid Decl. ¶ 7; Scott Decl. ¶ 7.

[10]    In *Lundquist*, the plaintiff brought suit against a leasing company for claims arising out of disclosures relating to early termination of a lease. The plaintiff defined the class as "all persons who signed leases with [defendant] using forms similar to [her own] …which leases did not have three boxes at the end labeled 'corporation,' 'partnership,' and 'sole proprietor.'" *Lundquist* at 14. Accordingly, this overly broad class definition had nothing, whatsoever, to do with the plaintiff's claim of non-disclosure. The court found that, in light of this deficiency, the commonality and typicality requirements were not satisfied. *Id.* Unlike the class definition in *Lundquist,* which bore no relation to the claim asserted by plaintiff, the Class definition here contains two requirements that bear directly on the Saturn Plaintiffs' claims, i.e., the purchase or lease of a Class Vehicle and the braking of a Timing Chain. Debtors' reliance on *Lundquist*, therefore, is without merit.

Read Decl., ¶ 8 (annexed as Exh. C to Schwartz Decl.).  As further explained by Dr.

Read:

> It is my professional opinion that the Oiling Nozzles are defective because, during normal use, the Oiling Nozzles did not adequately lubricate the Timing Chains, subjecting the Timing Chains to excessive heat and friction, which caused the metal on the Timing Chains to rapidly wear, bend, stretch and/or become brittle, thereby causing the Timing Chains to slip off the teeth of the main drive sprocket and camshaft sprockets, or to break completely.

Read Decl., ¶ 9 (Exh. C to Schwartz Decl.).

Thus, the purported individual issues to which Debtors point are not relevant to the Saturn Plaintiffs' claims.  Furthermore, the Debtors' argument has been flatly rejected by the Second Circuit, which has held that "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification…" *Gary Plastic Packaging Corp.*, 903 F.2d 176, 180.

Because the Saturn Plaintiffs' claims are typical of those of other members of the Saturn Class, the Saturn Plaintiffs satisfy Rule 23's typicality requirement.

### iv.    **The Saturn Plaintiffs Are Adequate Representatives**

A plaintiff seeking to represent the class must also show that he or she will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has three elements: (l) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Susman v. Lincoln*

*American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).  Plaintiffs and their counsel satisfy all three elements.

### 1.    The Saturn Plaintiffs' Claims Do Not Conflict With The Claims of Class Members They Seek To Represent

None of the Saturn Plaintiffs have antagonistic or conflicting claims with the Class members that they seek to represent, but rather are pursuing common claims on behalf of themselves and all Class members.[11]

The Saturn Plaintiffs have not, and do not plan to assert any unique individual claims in this litigation.[12]  Rather, the Saturn Plaintiffs' claims are directed at resolving the issues raised by Debtors' design and sale of the defective Class Vehicles that they and the other Saturn Class members purchased – an issue that is common to all Saturn Class members.  Consequently, the interests of the Saturn Plaintiffs and Saturn Class members are perfectly aligned.

### 2.    The Saturn Plaintiffs Have Demonstrated Their Enthusiasm For Seeing This Litigation Through To A Successful Conclusion

The Saturn Plaintiffs have already put forth a substantial amount of effort toward pursuing this litigation for over three years, demonstrating their strong interests in achieving a successful result for the Saturn Class. The Saturn Plaintiffs have taken a proactive role in this action and have produced documents and answered discovery requests. They have affirmed that they all understand the extent of their continuing

---

[11]        *See* Anderson Decl. ¶ 8; Burgos Decl. ¶ 8; Cardwell Decl. ¶ 8; Faust Decl. ¶ 9; Leal Decl. ¶ 8; Menzer Decl. ¶ 8; Reid Decl. ¶ 8; Scott Decl. ¶ 8.

[12]        *See* Anderson Decl. ¶ 4; Burgos Decl. ¶ 4; Cardwell Decl. ¶ 4; Faust Decl. ¶ 4; Leal Decl. ¶ 4; Menzer Decl. ¶ 4; Reid Decl. ¶ 4; Scott Decl. ¶ 4.

obligations and remain eager to see this litigation through to a successful conclusion for

the Saturn Class.[13]

### 3. The Saturn Plaintiffs Have Hired Experienced Counsel Who Are Pursuing This Litigation Zealously

The Saturn Plaintiffs are represented by Horwitz, Horwitz & Paradis, Attorneys at

Law and Shepherd, Finkelman, Miller & Shah, LLP, law firms whose attorneys

collectively have over 50 years of complex, class action litigation experience.    The

qualifications of the Saturn Plaintiffs' counsel are set forth in the Firm Resumes, copies

of which are attached as Exhs. L and M to the Schwartz Decl.   The Saturn Plaintiffs'

counsel has vigorously represented the interests of the Class throughout the course of the

litigation. Their efforts thus far have resulted in the denial in large part of the Debtors'

motion to dismiss.  In addition, the Saturn Plaintiffs' counsel has mounted a sizable effort

which has involved: (i) review of documents produced by Debtors; (ii) preparation of the

initial and amended complaints; and (iii) facilitation of the Saturn Plaintiffs' responses to

discovery.   The amount of time and resources dedicated to this effort by the Saturn

Plaintiffs' counsel thus far conclusively demonstrates their commitment towards

achieving a favorable result on behalf of the Saturn Class.   The Saturn Plaintiffs have

clearly satisfied the adequacy requirement of Rule 23.

Debtors argue that the adequacy element is not satisfied because: 1) the Court will

not be able to identify members of the Class; 2) the Saturn Plaintiffs are not typical, and

therefore, not adequate representatives; and 3) the Saturn Plaintiffs waited too long

before moving for Class certification.

---

[13]      *See* Anderson Decl. ¶¶ 8-9; Burgos Decl. ¶¶ 8-9; Cardwell Decl. ¶¶ 8-9; Faust Decl. ¶¶ 9-10; Leal Decl. ¶¶ 8-9; Menzer Decl. ¶¶ 8-9; Reid Decl. ¶¶ 8-9; Scott Decl. ¶¶ 8-9.

As demonstrated above, this Class is ascertainable and the Saturn Plaintiffs' claims are typical. *See* Sections I(B)(2)(a) and I(B)(2)(b)(iii) herein. Additionally, as further described in detail herein, the Saturn Plaintiffs timely complied with all of the procedures for moving for class certification. *See* Section I(A) herein. *See, e.g., Worldcom* at \*8; *Chateaugay Corp.*, 104 B.R. 626, 634; *Woodward*, 205 B.R. 365, 369 (stating that plaintiffs need not move for an application of Rule 23 until the matter at issue becomes "contested"). Debtors' arguments are, therefore, without merit.

Accordingly, because the Saturn Plaintiffs' allegations satisfy the numerosity, commonality, typicality and adequacy requirement, as demonstrated herein, the Saturn Plaintiffs have satisfied Rule 23(a).

### c.  <u>This Action Meets The Requirements Of Rule 23(b)(3)</u>

Once the Saturn Plaintiffs demonstrate that the proposed Saturn Class satisfies the elements of Rule 23(a), as they have done here, they must establish that the action is "maintainable" in accordance with Fed. R. Civ. P. 23(b). Specifically, this proposed class action is maintainable under subsection (b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[14]  Rule 23(b)(3) thus has two elements: "predominance" and "superiority." *Id.*

---

[14]    Despite Debtors' contentions to the contrary, the Saturn Plaintiffs do not seek certification pursuant to Rule 23(b)(2). Debts' Br. at 20. In fact, the Complaint makes clear that the Saturn Plaintiffs seek certification pursuant to Rule 23(b)(3). Accordingly, Debtors' argument that the Saturn Plaintiffs' requested injunction is "moot" is irrelevant.

### i.      The Predominance Requirement Is Satisfied Because The Saturn Plaintiffs' Claims Present A Predominance of Legal and Factual Issues

The Saturn Plaintiffs seek certification of: (i) state-only claims (Cplt. Counts II, IV, VI, VII, IX, XI, XII, XIII, XIV, XVI, and XXII), and (ii) multi-state claims where the laws of the states at issue are similar (Counts XXV and XXVI). As demonstrated herein, common legal and factual issues predominate in both the Saturn Plaintiffs' proposed state-only and multi-state classes.

### 1.      Common Legal Issues Predominate

### Common Legal Issues Predominate In The Saturn Plaintiffs' State-Only Classes

The Saturn Plaintiffs seek certification of five state-only classes for breach of implied warranty of merchantability and six state-only classes for violations of state consumer fraud laws. The Saturn Plaintiffs seek the application of the laws of only one state for each of these state-only classes. For example, the Saturn Plaintiffs seek to apply the laws of Iowa to the claims of all of those that purchased a Class Vehicle in the state of Iowa for breach of implied warranty (Count II). This Court need only consider the law of Iowa in certifying this state-only class. In light of the fact that the Court will be asked to apply a single state's law to each of these state-only classes, the Court need not conduct any choice of law analysis or consider whether legal variations in the laws of multiple states render class certification appropriate. Accordingly, common legal issues predominate in these state-only classes.

26

**Common Legal Issues Predominate**
**The Saturn Plaintiffs' State-Only**
**Implied Warranty Claims**

The Saturn Plaintiffs have asserted five state-only claims for breach of the implied

warranty of merchantability, each under the laws of one of five states, on behalf of those

who purchased a Class Vehicle in one of the five states.   Specifically, the Saturn

Plaintiffs bring the following state-only breach of implied warranty of merchantability

claims:

- **Count II** - By Plaintiff Faust, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Iowa For Violations Of the Implied Warranty Of Merchantability, Pursuant To Iowa Code § 554.2314;

- **Count VI** - By Plaintiff Cardwell, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Nebraska For Violations Of The Implied Warranty Of Merchantability Pursuant To R.R.S. NEB. (U.C.C.) § 2-314;

- **Count VII** - By Plaintiff Burgos, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Pennsylvania For Violations Of The Implied Warranty Of Merchantability Pursuant To 13 PA. CONS. STAT. § 2314;

- **Count IX** - By Plaintiff Scott, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Michigan For Violations of the Implied Warranty Of Merchantability Pursuant To MCLS § 440.2314;

- **Count XI** - By Plaintiff Bauer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased Their Class Vehicles In The State Of Missouri For Violations Of The Implied Warranty Of Merchantability Pursuant To Mo. Rev. Stat. § 400.2-314.

Common legal issues predominate in each of these state-only implied warranty

classes.

27

### Common Legal Issues Predominate
### The Saturn Plaintiffs' Iowa Breach of Implied
### Warranty Class

In order to state a claim for breach of the implied warranty of merchantability under Iowa Code § 554.2314, a plaintiff must allege: "1) a merchant sold the goods; (2) the goods were not "merchantable" at the time of the sale; (3) injury or damage occurred to their person or property; (4) the defective nature of the goods caused the damage "proximately and in fact"; and (5) notice of the injury was given to the seller." *Van Wyk v. Norden Lab., Inc.,* 345 N.W.2d 81, 87 (Iowa 1984).  In light of the fact that such elements may be established by class-wide proof, courts have certified state-only classes asserting claims for breach of the implied warranty of merchantability under Iowa law. *See, e.g.,* *Martin v. Amana Refrigerator*, 435 N.W.2d 364 (Iowa 1989)(affirming order certifying the plaintiff's breach of implied warranty suit); *Lucas v. Pioneer, Inc.,* 256 N.W. 2d 167 (Iowa 1977).

### Common Legal Issues Predominate The Saturn
### Plaintiffs' Nebraska Breach of Implied Warranty Class

To maintain a warranty action under R.R.S. NEB. (U.C.C.) § 2-314, "several factors must be proved: (1) The plaintiff must prove the defendant made a warranty, express or implied, under §§ 2-313, 2-314, or 2-315; (2) the plaintiff must prove the goods did not comply with the warranty, i.e., the goods were defective at the time of the sale; (3) the plaintiff must prove the injury was caused, proximately and in fact, by the defective nature of the goods; and (4) the plaintiff must prove damages." *Divis v. Clarklift of Neb., Inc.,* 256 Neb. 384, 393 (Neb. 1999).  In light of the fact that such elements may be established by class-wide proof, courts have certified state-only classes asserting claims

28

for breach of warranty under Nebraska law. *See, e.g.*, *Barden v. Hurd Millwork Co., Inc., et al.*, No. 06-C-46, 2006 U.S. Dist. LEXIS 63926F (E.D. Wis. Mar. 28, 2008).

### Common Legal Issues Predominate The Saturn Plaintiffs' Pennsylvania Breach of Implied Warranty Class

"In Pennsylvania, the elements of the implied warranty of merchantability are defined by statute." *Beckermeyer v. AT&T Wireless*, 2004 Phila. Ct. Com. Pl. LEXIS 153 (Pa. C.P. 2004)(citing Pa.C.S.§ 2314).   In order to state a claim for breach of the implied warranty of merchantability under 13 PA. CONS. STAT. § 2314, a plaintiff must allege that a merchant sold the goods; the goods were not "merchantable" at the time of the sale; injury or damage occurred to their person or property; the defective nature of the goods caused the damage; and notice of the injury was given to the seller.   13 PA. CONS. STAT. § 2314.   In light of the fact that such elements may be established by class-wide proof, courts have certified state-only classes asserting claims for breach of the implied warranty of merchantability under Pennsylvania law. *See, e.g.*, *Bassett v. Kia Motors America, Inc.,* 2004 Phila. Ct. Com. Pl. LEXIS 149 (Sept. 17, 2004); *Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2002).

### Common Legal Issues Predominate The Saturn Plaintiffs' Michigan Breach of Implied Warranty Class

To prove a breach of implied warranty of merchantability under MCLS § 440.2314, "the Plaintiffs must show a defective condition and that the defect caused the injuries. 'A breach of warranty claim tests the fitness of the product and requires that the plaintiff prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which plaintiff complains.'" *Melborn Ltd. v. Nat'l Marine Corp.*, 2004 U.S. Dist. LEXIS 30704 ( E.D. Mich. Aug. 19, 2004)(citing *Gregory v.*

*Cincinnati Inc*., 450 Mich. 1, 538 N.W.2d 325, 329 (Mich. 1965)).  In light of the fact

that such elements may be established by class-wide proof, courts have certified state-

only classes asserting claims for breach of the implied warranty of merchantability under

Michigan law.  *See, e.g*., *Lackowski v. Twinlabs Corp*., 2001 U.S. Dist. LEXIS 25634

(E.D. Mich. Dec. 28, 2001).

### Common Legal Issues Predominate
### The Saturn Plaintiffs' Missouri Breach of Implied Warranty Class

"[I]n order to recover under the provisions of § 400.2-314, a plaintiff must prove (1)

that a merchant sold goods, (2)  which were not "merchantable" at the time of the sale, (3)

injury and damages to the plaintiff or his property (4) which were caused proximately or

in fact by the defective nature of the goods, and (5) notice to the seller of the injury."

*Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989).

In light of the fact that such elements may be established by class-wide proof, courts have

certified state-only classes asserting claims for breach of the implied warranty of

merchantability under Missouri law.  *See, e.g*., *Dale v. Daimler Chrysler Corp*., 204 S.W.

3d 151 (Mo. Ct. App. 2006).

Debtors argue that the Saturn Plaintiffs' claims do not satisfy Rule 23's predominance

requirement because "variations" in the laws of multiple jurisdictions defeat

predominance. Debts' Br. at 20-28 (citing cases where courts were asked to apply the

laws of all 50 states to plaintiffs' class claims).  Debtors' argument, however, completely

ignores the fact that the Saturn Plaintiffs seek to have the laws of only one state apply to

these state-only classes. The Saturn Plaintiffs do not seek the application of "various"

states' laws to the claims of these state-only classes.  In support of its infirm argument,

Debtors only cite to cases where plaintiffs sought certification of nationwide classes for

30

breach of implied warranty. *See, e.g., In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484 (D. N.J. 2000)(denying certification of nationwide breach of implied warranty class); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997)(same); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C. 1991)(same). These cases are clearly distinguishable because none of the plaintiffs sought to certify state-only claims, as the Saturn Plaintiffs seek to do here.

Accordingly, common legal issues predominate the Saturn Plaintiffs' single state implied warranty and consumer fraud claims.

### Common Legal Issues Predominate The Saturn Plaintiffs' State-Only Consumer Fraud Claims

The Saturn Plaintiffs have asserted six state-only claims for consumer fraud, each under the laws of one of six states, on behalf of those who purchased a Class Vehicle in one of these six states. Specifically, the Saturn Plaintiffs bring the following state-only consumer fraud claims:

- **Count IV** - By Plaintiffs Faust and Cardwell, Individually, And On Behalf Of All Members Of The Class Who Either: i) Resided In Nebraska at The Time of Purchase Or Lease Of The Class Vehicles Or ii) Purchased Or Leased Their Class Vehicles In Nebraska For Violations Of The Nebraska Consumer Protection Act, R.R.S. NEB. §59-1601, *et seq.* (the "CPA");

- **Count XII** - By Plaintiff Bauer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of Missouri For Violations Of Mo. Rev. Stat. §§ 407.010 *et seq.* (the "MMPA");

- **Count XIII** - By Plaintiff Leal, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of Florida For Violation Of The Florida Deceptive And Unfair Trade Practices Act, FLA. STAT. § 501.201 *et seq.* (the "FDUTPA")**;**

- **Count XIV** - By Plaintiff Reid, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of North Carolina For Violations of N. C. GEN. STAT. §§ 75-1.1 *et seq.* (the "NCUDTPA");

- **Count XVI** - By Plaintiff Menzer, Individually, And On Behalf Of All Members Of The Class Who Purchased Or Leased A Class Vehicle In The State Of California For Violations Of The California Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq*. (the "CLRA");

- **Count XXII** - By Plaintiff Anderson, Individually, And On Behalf Of All Class Members Who Purchased Or Leased A Class Vehicle In The State Of Illinois For Violations Of Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. (the "ICFA").

Common legal issues predominate in each of these state-only consumer fraud classes.

### Common Legal Issues Predominate
### The Saturn Plaintiffs' CPA Class

Nebraska's CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.R.S. Neb. § 59-1602. "A plaintiff making an "unfair" or "deceptive" trade practice claim must show that the defendant's actions: (a) fell "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'"; or (b) were "'immoral, unethical, oppressive or unscrupulous"; and (c) caused "'substantial injury.'" *Raad v. Wal-Mart Stores*, 13 F. Supp. 2d 1003, 1011 (D. Neb. 1998).

In recognition of the fact that such elements may be established by class-wide proof, courts have certified state-only classes asserting claims for violations of the CPA. *See, e.g.*, *Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446 (D. Neb. 2010).

### Common Legal Issues Predominate The Saturn Plaintiffs'
### MMPA Class

The MMPA "provides a cause of action for an individual who purchases merchandise and suffers damages in the form of an ascertainable loss." *Lingo v. Hartford Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 43522, *11 (E.D. Mo. May 4, 2010)

32

"[T]he MMPA supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance." *Scott v. Blue Springs Ford Sales, Inc*., 215 S.W.3d 145, 160 (Mo. Ct. App. 2006) "A person who purchases merchandise may recover under the MMPA from a defendant who engages in a practice declared unlawful by Mo. Rev. Stat. § 407.020. *Id.* Among the practices unlawful under Mo. Rev. Stat. § 407.020 is the concealment of a material fact in connection with the sale of any merchandise in commerce. *Lingo* at *11.

In recognition of the fact that the elements of the MMPA may be established by class-wide proof, courts have certified state-only classes asserting claims in violation of the MMPA. *See, e.g*., *Janson v. LegalZoom.com, Inc.*, No. 10-CV-04018-NKL, 2010 U.S. Dist. LEXIS 132210 (W.D. Mo. Dec. 14, 2010).

### Common Legal Issues Predominate The Saturn Plaintiffs' FDUTPA Class

Under Florida law, a plaintiff alleging a FDUTPA violation must prove**: "**(1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Third Party Verification, Inc. v. Signatureline, Inc*., 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). "An act is considered to be deceptive or unfair where the act is 'likely to deceive a consumer acting reasonably under the circumstances . . .'" *Parr v. Maesbury Homes, Inc*., No. 09-1268, 2009 U.S. Dist. LEXIS 119087, 2009 WL 5171770 at *7 n.11 (M.D. Fla. Dec. 22, 2009) (quoting *Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc*., 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004)). A violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim. Fla. Stat. § 501.203(3)(c) (2010).

In recognition of the fact that the elements of a FDUTPA claim may be established by class-wide proof, courts have certified state-only classes asserting claims for violations of FDUTPA. *See, e.g.*, *Nelson v. Mead Johnson Nutrition Co.*, No. 09-CV-61625-COHN/SELTZER, 2010 U.S. Dist. LEXIS 117098 (S.D. Fla. Nov. 1, 2010).

### Common Legal Issues Predominate The Saturn Plaintiffs' NCUDTPA Class

In order to state a claim for violations of NCUDTPA, a plaintiff must allege "an unfair and deceptive act or practice, in or affecting commerce, that proximately caused injury to the claimant." *Chase Manhattan Mortg. Co. v. Lane*, 2010 U.S. Dist. LEXIS 82501 (W.D.N.C. July 9, 2010) (citing N.C.G.S. § 75.1-1; *Blis Day Spa, LLC v. The Hartford Ins. Group*, 427 F. Supp. 2d 621, 634 (W.D.N.C. 2006)).

In recognition of the fact that the elements of a NCUDTPA claim may be established by class-wide proof, courts have certified state-only classes asserting claims for violations of NCUDTPA. *See, e.g.*, *Clark v. Alan Vester Auto Group, Inc.*, 2009 NCBC 17 (2009).

### Common Legal Issues Predominate The Saturn Plaintiffs' CLRA Class

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices in transactions for the sale or lease of goods to consumers." Cal. Civ. Code § 1770(a). CLRA claims may be based upon an affirmative misrepresentation or an omission of material fact. Cal. Civ. Code § 1770(a)(5,7). *See also Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). Additionally, in order to state a claim under the CLRA a plaintiff must plead reliance (unless it is

presumed) and damages.  *Kearney v. Hyundai Motor Co.*, SACV 09-1298, 2010 U.S. Dist. LEXIS 68242, at *28 (C.D. Cal. June 4, 2010).

In recognition of the fact that the elements of a CLRA claim may be established by class-wide proof, courts have certified state-only classes asserting claims for violations of the CLRA.  *See, e.g.*, *Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. 2009).

## Common Legal Issues Predominate
## The Saturn Plaintiffs' ICFA Class

ICFA forbids "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…"  Under ICFA, "a plaintiff must plead three elements: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the unfair or deceptive practice; and (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce." *Galvan v. Northwestern Mem. Hosp.*, 888 N.E.2d 529, 535 (Ill. App. Ct. 2008).

In recognition of the fact that these elements may be established by class-wide proof, courts have certified classes asserting claims for violations of ICFA.  *See, e.g.*, *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 U.S. Dist. LEXIS 19650 (N.D. Ill. Mar. 20, 2007).

Despite the clarity of the Counts set forth in the Amended Complaint, Debtors argue that the Saturn Plaintiffs' consumer fraud claims do not meet Rule 23's predominance requirement because certification of such claims, according to Debtors, would require this court to apply the laws of 50 states.  As demonstrated above, this is blatantly false. Thus, none of the cases on which Debtors rely, all of which involve nationwide consumer

35

fraud claims, are even remotely relevant.  *See, e.g., In re St. Jude Med. Inc*., 425 F. 3d

1116 (8th Cir. 2005); *In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002); *In re*

*Woodward & Lothrop Holdings*, 205 B.R.365 (Bank. S.D.N.Y. 1997).[15]

Based on the foregoing, the Saturn Plaintiffs state-only breach of implied warranty

and consumer fraud claims satisfy Rule 23's predominance requirement.

### Common Legal Issues Predominate The Saturn Plaintiffs' Multi-State Implied Warranty Classes

In addition to the 11 state-only claims for which the Saturn Plaintiffs seek

certification, the Saturn Plaintiffs seek certification of 2 multi-state Counts, both of which

assert claims for breach of implied warranty.  Count XXV seeks certification of a claim

for breach of implied warranty of merchantability for 28 states pursuant to those states'

implied warranty statutes.  Count XXVI seeks certification of a claim for breach of

implied warranty for the same 28 states as Count XXV, pursuant to the Magnuson Moss

Warranty Act (the "MMWA"). Common legal issues predominate in both of these multi-

state classes.

Plaintiffs have grouped the states in the Counts XXV and XXVI based upon

similar treatment of the laws of implied warranty.  Count XXV and XXVI are brought on

behalf class of all those who purchased or leased a Class Vehicle from the following

states: Alaska; Arkansas; Colorado; Delaware; Hawaii; Indiana; Iowa; Louisiana; Maine;

Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Montana; Nebraska;

Nevada; New Hampshire; New Jersey; North Dakota; Oklahoma; Pennsylvania, South

---

[15]    Debtors erroneously claim that the Saturn Plaintiffs' unjust enrichment claims do not meet Rule 23's predominance requirement, either. Debts' Br. at 23-24.  Debtors, however, have ignored the District Court's order on Debtors' motion to dismiss pursuant to which the District Court dismissed all of the Saturn Plaintiffs' unjust enrichment claims. *See* Order at 27-32.  Accordingly, the Saturn Plaintiffs do not seek certification of *any* unjust enrichment claims.

Carolina; South Dakota; Virginia; West Virginia; Wyoming and purchasers of new Class

Vehicles in Texas.

As demonstrated herein, the states in XXV and XXVI all require proof of the

same elements for a claim for breach of implied warranty of merchantability, recognize

the same standard for liability and damages, and have the same privity and notice

requirements.

Specifically, these states uniformly require that a plaintiff allege: (1) that a

merchant sold goods; (2) that the goods were not "merchantable" at the time of sale; (3)

injury; (4) proximate cause; and (5) notice was given to the seller that an injury

occurred.[16]

---

[16]      *See* Alaska Stat. § 45.02.314 (2006); *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 885 (Alaska 1979); A.C.A. § 4-2-314 (2006); *E. I. Du Pont de Nemours & Co. v. Dillaha*, 659 S.W.2d 756, 758 (Ark. 1983); C.R.S. 4-2-314 (2005); CJI-Civ 14:10; *Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002) (Colorado law); 6 *Del. C.* § 2-314 (2006); *Neilson Business Equipment Center, Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172, 1175 (Del. 1987); HRS § 490:2-314 (2006); HA.CV. JI INSTRUCTION NO. 13.1; Burns Ind. Code Ann. § 26-1-2-314 (2006); *Frantz v. Cantrell*, 711 N.E.2d 856, 860 (Ind. App. 1999); Iowa Code § 554.2314 (2005); *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 638 (Iowa 1988); *Stroderd v. Yamaha Motor Corp., U.S.A.*, 2005 U.S. Dist. LEXIS 17797 (E.D. La. Aug. 4, 2005); *C & M Contrs., Inc. v. Team Persuasion Enters.*, Inc., 779 So. 2d 1, 3 (La. App. 1999). 11 M.R.S. § 2-314 (2005); 1-Maine Jury Instruction Manual 7-23; Md. COMMERCIAL LAW Code Ann. § 2-314 (2006); MPJI-Cv 26:7; *Ford Motor Co. v. General Accident Ins. Co.*, 779 A.2d 362, 369 (Md. 2001); ALM GL ch. 106, § 2-314 (2006); Massachusetts Jury Instructions, Civil, 5.1; Massachusetts Jury Instructions, Civil, 5.1(g); Massachusetts Jury Instructions, Civil, 5.1(h); MCLS § 440.2314 (2006); *Greenfield Die & Mfg. Corp. v. Captive Fastener Corp.*, 2004 Mich. App. LEXIS 688, at *16 (Mich. App. March 9, 2004); Minn. Stat. § 336.2-314 (2005); *Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982); Miss. Code Ann. § 75-2-314 (2006); *CEF Enters., Inc. v. Betts*, 838 So. 2d 999, 1003 (Miss. App. 2003). Mont. Code Anno., § 30-2-314 (2005); *Ginoff v. NW Motor Welding*, 1993 Mont. Dist. LEXIS 672 (Aug. 3, 1993); *St. Paul Mercury Ins. Co. v. Jeep Corp.*, 572 P.2d 204, 206 (Mont. 1977); R.R.S. Neb. (U.C.C.) § 2-314 (2005); *Murphy v. Spelts-Schultz Lumber Co.*, 481 N.W.2d 422, 429 (Neb. 1992); Nev. Rev. Stat. Ann. § 104.2314 (2006); RSA 382-A:2-314 (2006); *Elliott v. Lachance*, 256 A.2d 153, 156 (N.H. 1969); N.J. Stat. § 12A:2-314 (2006); Heindel v. Pfizer Inc., 381 F. Supp. 2d 364, 372 (D. N.J. 2004) (applying New Jersey law); N.D. Cent. Code, § 41-02-31 (2006); Eg*gl v. Letvin Equip. Co*., 632 N.W.2d 435, 438-9 (N.D. 2001); 12A Okl. St. § 2-314 (2005); *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 595 (Okla. 1981); 13 Pa.C.S. § 2314 (2006); *Solarz v. DaimlerChrysler Corp.*, 2002 Phila. Ct. Com. Pl. LEXIS 34, at *22 (March 13, 2002); S.C. Code Ann. § 36-2-314 (2005); *Herring v. Home Depot, Inc.*, 565 S.E.2d 773, 776 (S.C. App. 2002); S.D. Codified Laws § 57A-2-314 (2006); Horizons, Inc. v. Avco Corp., 551 F. Supp. 771, 780 (D. S.D. 1982) (applying South Dakota law), rev'd in part on other grounds; Tex. Bus. & Com. Code § 2.314 (2005); *McGown v. Bridgestone/Firestone, Inc.*, 2005 U.S. Dist. LEXIS 25598, at *8 (E.D. Tex. 2005) (applying Texas law); Va. Code Ann. § 8.2-314 (2006). W. Va. Code § 46-2-314 (2006); *Mountaineer Contractors v. Mountain State Mack, Inc.*, 268

Furthermore, none of these states require an additional allegation of privity of contract. *See, e.g., Morrow v. New Moon Homes,* 548 P.2d 279, 289 (Alaska 1976); *L. A. Green Seed Co. v. Williams,* 438 S.W.2d 717, 718-719 (Ark. 1969).[17]

At the heart of an implied warranty claim is the issue of whether the goods in question are "merchantable." All of the states included in Counts XXV and XXVI have adopted a version of UCC § 2-314, which puts forth the standard of merchantability, namely, that goods be "fit for the ordinary purpose for which they are used." *See, e.g.*, Alaska Stat. § 45.02.314(b)(2) (2003), A.C.A. § 4-2-314 (2002), C.R.S. § 4-2-314 (2002), 6. Del. C. § 2-314 (2006), HRS § 490:2-314 (2006), Ind. Code. § 26-1-2-314 (2006).[18]

---

S.E.2d 886, 891 (W. Va. 1979); Wyo. Stat. § 34.1-2-314 (2006); and *McLaughlin v. Michelin Tire Corp.,* 778 P.2d 59, 91 (Wyo. 1989).

[17]  *See also Recold, S.A. de C.V. v. Monfort of Colorado, Inc.,* 893 F.2d 195, 198 (8th Cir. 1990) (applying Colorado law); C.R.S. 4-2-318 (2005), Colorado Comment; *Pack & Process, Inc. v. Celotex Corp.,* 503 A.2d 646, 660 (Del. Super. 1985); *GKW Elecs., Inc. v. Zenith Elecs. Corp.,* No. 91-15791, 1992 U.S. App. LEXIS 16238, at *5-6 (9th Cir. July 8, 1992) (applying Hawaii law); *Dominiack Mech., Inc. v. Dunbar,* 757 N.E.2d 186, 190-191 (Ind. App. 2001); Iowa Code § 554.2318 (2004); *Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc.,* 262 So. 2d 377, 381 (La. 1972); *Stanley v. Schiavi Mobile Homes, Inc.,* 462 A.2d 1144, 1147 (Me. 1983); *Wood Prods., Inc. v. CMI Corp.,* 651 F. Supp. 641, 649 (D. Md. 1986) (applying Maryland law); *Cameo Curtains, Inc. v. Philip Carey Corp.,* 416 N.E.2d 995, 998 (Mass. App. Ct. 1981); Pack v. Damon Corp., 434 F.3d 810 (6th Cir. Mich. 2006); *Indus. Graphics, Inc. v. Asahi Corp.,* 485 F. Supp. 793, 800 (D. Minn. 1980) (applying Minnesota law); *Hargett v. Midas Int'l Corp.,* 508 So.2d 663, 663-665 (Miss. 1987); *Streich v. Hilton-Davis, Div. of Sterling Drug,* 692 P.2d 440, 448 (Mont. 1984); *Gables CVF v. Bahr, Vermeer & Haecker Architect,* 506 N.W.2d 706, 713 (Neb. 1993); *Vacation Village v. Hitachi Am.,* 874 P.2d 744, 747 (Nev. 1994); *Hiles Co.*, 560 P.2d at 157; *Dalton v. Stanley Solar & Stove,* 629 A.2d 794, 797 (N.H. 1993); RSA § 382-A:2-318 (2004); *Spring Motors Distribs. v. Ford Motor Co.,* 489 A.2d 660, 663 (N.J. 1985); *Lang v. Gen. Motors Corp.,* 136 N.W.2d 805, 809 (N.D. 1965); *Old Albany Estates, Ltd. v. Highland Carpet Mills,* 604 P.2d 849, 852 (Okla. 1979); Moscatiello v. Pittsburgh Contractors Equipment Co., 595 A.2d 1198, 1203-1204 (Pa. Super. 1991); *KT Co. v. Hardwick,* 265 S.E.2d 510, 512-513 (S.C. 1980); *Georgetown Steel Corp. v. Law Eng'g Testing Co.,* No. 92-2588, 1993 U.S. App. LEXIS 23541, *14-15 (4th Cir. Sept. 14, 1993) (applying South Carolina law); *Horizons, Inc. v. Avco Corp.,* 551 F. Supp. 771, 777-778 (D.S.D. 1982) (applying South Dakota law); *Bly v. Otis Elevator Co.,* 713 F.2d 1040, 1043 (4th Cir. 1983) (applying Virginia law); *Dawson v. Canteen Corp.,* 212 S.E.2d 82, 83 (W. Va. 1975); *W. Equip. Co. v. Sheridan Iron Works,* 605 P.2d 806, 808 (Wyo. 1980); *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77, 81-82 (Tex. 1977).

[18]  *See also* Iowa Code § 554.2314 (2005), La. C.C. Art. 2520 (2002), 11 M.R.S. § 2-314 (2002), Md. Commercial Law Code Ann. § 2-314 (2006), ALM GL ch. 106, § 2-314; MCL 440.2314 (2006), Minn. Stat. § 336.2-314 (2005), Miss. Code Ann. § 75-2-314 (2006); Mont. Code Annon. § 30-2-314 (2005); R.R.S. Neb. § 2-314 (2005); Nev. Rev. Stat. Ann. § 104.2314 (2006); RSA 382-A:2-314 (2006); N.J. Stat. § 12A:2-314 (2006); N.D. Cent. Code, § 41-02.1-31 (2006); 12A Okla. St. § 2-314 (2005); 13 Pa.C.S. § 2314 (2006); S.C. Code Ann. § 36-2-314 (2002); S.D. Codified Laws § 57A-2-314 (2006); Va. Code Ann.

The uniformity of the standard of merchantability is further demonstrated by the jury instructions used by each state. An examination of these instructions reveals that juries are instructed in an identical manner, by being asked to determine if the goods in question were "fit for the ordinary purpose."[19]

Notice requirements are also uniform in the states included in Counts XXV and XXVI. Specifically, each of these states require that: (i) the defendant seller have notice of the defect.[20]    (See UCC § 2-607); (ii) the notice is "reasonable;"[21] and (ii) the assessment of the "reasonableness" of notice be a question of fact.[22]

---

§ 8.2-314 (2006); W. Va. Code § 46-2-314 (2006), Wyo. Stat. § 34.1-2-314 (2006), and Tex. Bus. & Comm. Code § 2-314 (2005).

[19]    *See, e.g.*, Ark. Sup. Ct. Comm. on Jury Instructions, Ark. Model Jury Instructions (Civil) 126-127 (West 1974); Colo. Jury Instr,. Civil 14:11 (4th ed); Del. P.J.I. Civ. § 9.16 (2000); HA.CV. JI Instructions No. 13.1; Maine Jury Instructions Manual, 4th Ed. §7-23; Maryland Civil Pattern Jury Instructions 26:7 (4th Ed. 2002); Mass. J.I 5.1(g)(h); § 5.1; 1 Neb. Prac.; NJI2d Civ. 11.43 (2002 ed); Oklahoma Jury Instr. Civ 12.2; Anderson, S.C. Requests to Charge § 32-34; 2 Virginia Model Jury Instructions-Civil 34.060 (Michie 1986); WV Jury Instr. § 95-134; and Comm. on Pattern Jury Charges of State Bar of Texas, 3 Texas Pattern Jury Charges 252 (1982).

[20]    *See*, *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 514 (Alaska 1980); Alaska Stat. § 45.02.607(c)(1) (2006); *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305-306 (Ark. 1994); A.C.A. § 4-2-607(3)(a) (2006); *Fiberglass Component Prod. v. Reichhold Chems.*, 983 F. Supp. 948, 954 (D. Colo. 1997); C.R.S. 4-2-607(3)(a) (2005); *Smith v. Daimlerchrysler Corp.*, 2002 Del. Super. LEXIS 434, at *13-14 (Nov. 20, 2002); 6 Del. C. § 2-607(3)(a) (2006); Chapman v. Brown, 198 F. Supp. 78, 84-85 (D. Haw. 1961); HRS § 490:2-607(3)(a) (2006); Burns Ind. Code Ann. § 26-1-2-607(3)(a) (2006); *Dailey v. Holiday Distributing Corp.*, 151 N.W.2d 477, 487 (Iowa 1967); Iowa Code § 554.2607(3)(a) (2005); *David v. Thibodeaux*, 916 So. 2d 214, 219 (La. App. 1st Cir. 2005); La. C.C. Art. 2522 (2006); *Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 250-251 (1st Cir. 1996) (applying Maine law); 11 M.R.S. § 2-607(3)(a) (2005); *Lynx, Inc. v. Ordnance Products, Inc.*, 327 A.2d 502, 512 (Md. 1974); Md. COMMERCIAL LAW Code Ann. § 2-607(3)(a) (2006); *City Welding & Mfg. Co. v. Gidley-Eschenheimer Corp.*, 451 N.E.2d 734, 735 (Mass. App. 1983); ALM GL ch. 106, § 2-607(3)(a) (2006). MCLS § 440.2607(3)(a) (2006); *Willmar Cookie Co. v. Pippin Pecan Co.*, 357 N.W.2d 111, 115 (Minn. App. 1984); Minn. Stat. § 336.2-607(3)(a) (2005); *Miss. Chem. Corp. v. Dresser-Rand Co.*, 2000 U.S. Dist. LEXIS 21965, at *23 (S.D. Miss. Sept. 12, 2000); Miss. Code Ann. § 75-2-607(3)(a) (2006); *Waddell v. American Breeders Serv.*, 505 P.2d 417, 421 (Mont. 1973); Mont. Code Anno., § 30-2-607(3)(a) (2005); *Laird v. Scribner Coop, Inc.*, 466 N.W.2d 798, 805 (Neb. 1991); R.R.S. Neb. (U.C.C.) § 2-607(3)(a) (2005); Nev. Rev. Stat. Ann. § 104.2607(3)(a); *Dudley v. Business Express*, 882 F. Supp. 199, 211 (D. N.H. 1994); RSA 382-A:2-607(3)(a) (2006); *Strzakowlski v. GMC*, 2005 U.S. Dist. LEXIS 18111, *10 (D. N.J. Aug. 16, 2005); N.J. Stat. § 12A:2-607(3)(a) (2006); *Industrial Fiberglass v. Jandt*, 361 N.W.2d 595, 598 (N.D. 1985); N.D. Cent. Code, § 41-02-70(3)(a) (2006); *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 596-597 (Okla. 1981); 12A Okl. St. § 2-607(3)(a) (2005); 13 Pa.C.S. § 2607(c)(1) (2006); *Hitachi Elec. Devices v. Platinum Techs., Inc.*, 621 S.E.2d 38, 40 (S.C. 2005).; S.C. Code Ann. § 36-2-607(3)(a) (2005); *Hepper v. Triple U Enters*, 388 N.W.2d 525, 527 (S.D. 1986); S.D. Codified Laws § 57A-2-

607(3)(a) (2006); *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex. App. 1984); Tex. Bus. & Com. Code § 2.607(c)(1) (2005); *Begley v. Jeep Corp.*, 491 F. Supp. 63, 65 (W.D. Va. 1980); Va. Code Ann. § 8.2-607(3)(a) (2006); *Basham v. General Shale Prods. Corp.*, 1993 U.S. App. LEXIS 4876, at *18 (4th Cir. March 10, 1993) (applying West Virginia law); W. Va. Code § 46-2-607(3)(a) (2006); *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P.2d 589, 593 (Wyo. 1984); and Wyo. Stat. § 34.1-2-607(c)(i) (2006).

[21]    Alaska Stat. § 45.02.607(c)(1) (2006); *Shooshanian v. Wagner*, 672 P.2d 455, 462-463 (Alaska 1983); *A.C.A.* § 4-2-607(3)(a) (2006); *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305-306 (Ark. 1994); *C.R.S.* 4-2-607(3)(a) (2005); *Fiberglass Component Prod. v. Reichhold Chems.*, 983 F. Supp. 948, 954 (D. Colo. 1997). 6 *Del. C.* § 2-607(3)(a) (2006); *Smith v. Daimlerchrysler Corp.*, 2002 Del. Super. LEXIS 434, at *13-14 (Nov. 20, 2002); HRS § 490:2-607(3)(a) (2006); *Chapman v. Brown*, 198 F. Supp. 78, 84-85 (D. Haw. 1961); Burns Ind. Code Ann. § 26-1-2-607(3)(a) (2006); Iowa Code § 554.2607(3)(a) (2005); *Dailey v. Holiday Distributing Corp.*, 151 N.W.2d 477, 487 (Iowa 1967); La. C.C. Art. 2522 (2006); 11 M.R.S. § 2-607(3)(a) (2005); *Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 250-251 (1st Cir. 1996) (applying Maine law); Md. COMMERCIAL LAW Code Ann. § 2-607(3)(a) (2006); *Lynx, Inc. v. Ordnance Products, Inc.*, 327 A.2d 502, 512 (Md. 1974); ALM GL ch. 106, § 2-607(30(a) (2006); *City Welding & Mfg. Co. v. Gidley-Eschenheimer Corp.*, 451 N.E.2d 734, 735 (Mass. App. 1983); *MCLS* § 440.2607(3)(a) (2006); Minn. Stat. § 336.2-607(3)(a) (2005); *Willmar Cookie Co. v. Pippin Pecan Co.*, 357 N.W.2d 111, 115 (Minn. App. 1984); Miss. Code Ann. § 75-2-607 (3)(a) (2006); *Mont. Code Anno.*, § 30-2-607 (3)(a) (2005). R.R.S. Neb. (U.C.C.) § 2-607(3)(a) (2006); *Laird v. Scribner Coop, Inc.*, 466 N.W.2d 798, 805 (Neb. 1991); Nev. Rev. Stat. Ann. § 104.2607 (3)(a); RSA 382-A:2-607 (3)(a) (2006). N.J.S.A. § 12A:2-607(3)(a); N.D. Cent. Code, § 41-02-70 (3)(a) (2006). 12A Okl. St. § 2-607(3)(a) (2005); *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 596 (Okla. 1981). 13 Pa.C.S. § 2607(c)(1) (2006); *Hitachi Elec. Devices v. Platinum Techs., Inc.*, 621 S.E.2d 38, 40 (S.C. 2005).; S.C. Code Ann. § 36-2-607 (3)(a) (2005); S.D. Codified Laws § 57A-2-607 (3)(a) (2006); Tex. Bus. & Com. Code § 2.607 (c)(1) (2005); Va. Code Ann. § 8.2-607(3)(a) (2006); *Begley v. Jeep Corp.*, 491 F. Supp. 63, 65 (W.D. Va. 1980); W. Va. Code § 46-2-607(3)(a) (2006); *Basham v. General Shale Prods. Corp.*, 1993 U.S. App. LEXIS 4876, at *18 (4th Cir. March 10, 1993) (applying West Virginia law); and Wyo. Stat. § 34.1-2-607 (c)(i) (2006).

[22]    *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 514 (Alaska 1980); *L. A. Green Seed Co. v. Williams*, 438 S.W.2d 717, 720 (Ark. 1969), *Cheyenne Mountain Bank v. Whetstone Corp.*, 787 P.2d 210, 213 (Colo. App. 1990); *Speakman Co. v. Harper Buffing Machine Co.*, 583 F. Supp. 273, 278 (D. De. 1984); *Chapman v. Brown*, 198 F. Supp. 78, 84-85 (D. Haw. 1961); *Dailey v. Holiday Distributing Corp.*, 151 N.W.2d 477, 487 (Iowa 1967); *Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 250-251 (1st Cir. 1996) (applying Maine law); Lynx, *Inc. v. Ordnance Products, Inc.*, 327 A.2d 502, 512 (Md. 1974); *City Welding & Mfg. Co. v. Gidley-Eschenheimer Corp.*, 451 N.E.2d 734, 735 (Mass. App. 1983); *S. C. Gray, Inc. v. Ford Motor Co.*, 286 N.W.2d 34, 46 (Mich. App. 1979); *Willmar Cookie Co. v. Pippin Pecan Co.*, 357 N.W.2d 111, 115 (Minn. App. 1984); *Miss. Chem. Corp. v. Dresser-Rand Co.*, 2000 U.S. Dist. LEXIS 21965, at *23 (S.D. Miss. Sept. 12, 2000); *Waddell v. American Breeders Serv.*, 505 P.2d 417, 421 (Mont. 1973); *Adams v. American Cyanamid Co.*, 498 N.W.2d 577, 584 (Neb. App. 1992); *Dudley v. Business Express*, 882 F. Supp. 199, 211 (D. N.H. 1994) (applying New Hampshire law); *Strzakowlski v. GMC*, 2005 U.S. Dist. LEXIS 18111, *10 (D. N.J. Aug. 16, 2005) (applying New Jersey law); *Industrial Fiberglass v. Jandt*, 361 N.W.2d 595, 598 (N.D. 1985); *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 597 (Okla. 1981); *Schneider v. Person*, 1964 Pa. Dist. & Cnty. Dec. LEXIS 177, at *4 (Feb. 18, 1964); *Simmons v. Ciba-Geigy Corp.*, 302 S.E.2d 17, 18 (S.C. 1983); *Hepper v. Triple U Enters.*, 388 N.W.2d 525, 527 (S.D. 1986); *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex. App. 1984); *Begley v. Jeep Corp.*, 491 F. Supp. 63, 65 (W.D. Va. 1980); *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P.2d 589, 593 (Wyo. 1984); and *Basham v. General Shale Prods. Corp.*, 1993 U.S. App. LEXIS 4876, at *18 (4th Cir. March 10, 1993) (applying West Virginia law).

Finally, the states included in Counts XXV and XXVI recognize the same measure of damages for a breach of the implied warranty of merchantability. UCC § 2-714 (measure of damages for breach of implied warranty of merchantability is the difference in value between the goods as warranted and as received).[23]

As stated above, all of the cases upon which Debtors rely for their meritless claim that the Saturn Plaintiffs' multi-state implied warranty claims do not satisfy Rule 23's predominance requirement involved nationwide claims. *See, e.g., In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484; *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360; *Walsh*, 130 F.R.D. 260. Neither Count XXV nor Count XXVI is a nationwide count. Additionally, none of the plaintiffs in the aforementioned cases attempted to group the states at issue according to similar treatment in the law of the asserted claims as the Saturn Plaintiffs have done here.

---

[23]        *Morrow v. New Moon Homes*, 548 P.2d 279, 290 (Alaska 1976); *Curry v. Thornsberry*, 128 S.W.3d 438, 444 (Ark. 2003); *Gibbons v. Windish, Inc.*, 662 P.2d 500, 502 (Colo. App. 1983); *Michiana Mack, Inc. v. Allendale Rural Fire Protection Dist.*, 428 N.E.2d 1367, 1371 (Ind. App. 1981); *General Fireproofing Co. v. L. Wallace & Son*, 175 F. 650, 667 (8th Cir. 1910); *Sonfield v. Burleson*, 543 So. 2d 488, 493 (La. App. 1989); *Washington v. Morein Motor Co.*, 488 So. 2d 325, 327 (La. App. 1986); *Faulkingham v. Seacoast Subaru, Inc.*, 619 A.2d 987, 988 (Me. 1993); *Cambridge Techs., Inc. v. Argyle Indus.*, 807 A.2d 125, 137 (Md. App. 2002); *Stark v. Patalano Ford Sales, Inc.*, 567 N.E.2d 1237,1241 (Mass. App. 1991); *Ashley v. Boch Toyota, Inc.*, 1992 Mass. App. Div. LEXIS 17, *36 (Mass. App. Div. March 4, 1992); *Hensley v. Colonial Dodge, Inc.*, 245 N.W.2d 142, 145 (Mich. App. 1976); Dunnell Minn. Digest SALES § 10.06 (4th ed.); *Fedders Corp. v. Boatright*, 493 So. 2d 301, 309 (Miss. 1986); *Meland v. Intermountain Sys.*, 712 P.2d 1295, 1298 (Mont. 1985); *T.O. Haas Tire Co. v. Futura Coatings*, 507 N.W.2d 297, 304 (Neb App. 1993); *Central Bit Supply v. Waldrop Drilling & Pump*, 717 P.2d 35, 37 (Nev. 1986); *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 546 (1st Cir. 1988) (applying New Hampshire law); *Perth Amboy Iron Works v. Am. Home Assurance Co.*, 543 A.2d 1020, 1031 (N.J. Super. 1988); *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 791 (N.J. 1979); *Minneapolis Threshing Mach. Co. v. Huncovsky,* 202 N.W. 280, 283 (N.D. 1924); *Cline v. DaimlerChrysler Co.*, 114 P.3d 468, 479 (Okla. Civ. App. 2005); *D & H Co. v. Shultz*, 579 P.2d 821, 823 (Okla. 1978); *Kruse v. Chevrolet Motor Div.*, No. 96-1474, 1997 U.S. Dist. LEXIS 10398, at *5 (E.D. Pa. July 15, 1997); *Hill v. BASF Wyandotte Corp.*, 311 S.E.2d 734, 735-736 (S.C. 1984); *Carlson v. Rysavy*, 262 N.W.2d 27, 31 (S.D. 1978); *Ortiz v. Flintkote Co.*, 761 S.W.2d 531, 536 (Tex. App. 1988); *Harrison v. Dallas Court Reporting College, Inc.*, 589 S.W.2d 813, 816 (Tex. App. 1979); *Bay Point Condo. Ass'n v. RML Corp.*, 57 Va. Cir. 295, 323 (Va. Cir. 2002), *quoting Sensenbrenner v. Rust*, 374 S.E.2d 55, 58 (Va. 1988); *Nelson v. Logan Motor Sales*, 370 S.E.2d 734, 737 (W. Va. 1988); *Deisch v. Jay*, 790 P.2d 1273, 1277 (Wyo. 1990).

Accordingly, the Saturn Plaintiffs' multi-state claims satisfy Rule 23's predominance requirement.

<blockquote>

**2.      Common Factual Issues Predominate In The Saturn Plaintiffs' Implied Warranty and Consumer Fraud Claims**
</blockquote>

In addition to common legal issues, common factual issues also predominate over individual factual issues in each of the Saturn Plaintiffs' claims.

**Breach Of Implied Warranty Claims**

Claims for breach of the implied warranty center on whether a product was defective, i.e. "fit for the ordinary purpose." UCC § 2-314. This inquiry is not dependant on any individual factual issues, because all of the Class Vehicles share the same design, and, therefore, experience the defect at issue in the same manner. Read Decl. at ¶¶ 10-19 (explaining that all of the Class Vehicles are equipped with a Timing Chain, and defective Oiling Nozzle).

Because the factual issues relevant to Plaintiffs' implied warranty claims are common to <u>all</u> Class members' implied warranty claims, namely the defective nature of the Class Vehicles, common factual issues will predominate in Plaintiffs' implied warranty claims.

**Consumer Fraud Claims**

Similar to claims for breach of implied warranty, the Saturn Plaintiffs' consumer fraud claims center around the defective design of the Class Vehicles. *See, e.g., Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010); *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 957 (9th Cir. 2005); *Dale v. DaimlerChrysler Corp*., 204 S.W.3d 151, 176 (Mo. Ct. App. 2006). Additionally, the Saturn Plaintiffs' will need to demonstrate whether Debtors had knowledge of the defect and whether Debtors failed to

disclose this material information to members of the Class. *See, e.g., Wolin*, 617 F.3d 1168; *Chamberlan*, 402 F.3d 952; *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151. These inquiries focus on the Debtors' actions and knowledge, not the action or knowledge of any one class members.

Debtors contend that factual issues regarding causation, the existence of warranties, notice, and reliance on misrepresentations and damages will predominate. Debts' Br. at 26-28.

While differences between Class members' warranties and notice may exist, these issues do not predominate the Saturn Plaintiffs' claims. Instead, what predominates here, are questions relating to the existence of the defect, Debtors' knowledge thereof and whether Debtors disclosed this information to members of the Class.

Additionally, Debtors incorrectly argue that the Saturn Plaintiffs' consumer fraud claims are based on misrepresentations, thereby implicating individual issues regarding reliance. The Saturn Plaintiffs' consumer fraud claims are not based on misrepresentations, but rather omissions. *See, e.g.*, Cplt. ¶¶ 175, 244, 255, 263, 281, 348. Accordingly, individual issues regarding reliance are not relevant. *See, e.g., Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 626 (C.D. Cal. 2008) (concluding that an inference of reliance is warranted in a material omissions claim under the CLRA); *Shein v. Canon U.S.A., Inc.*, Case No. 08-cv-7323, 2010 U.S. Dist. LEXIS 91160, at *39 (C.D. Cal. Aug. 10, 2010) ("a presumption of reliance is most appropriate in cases sounding in fraud where the plaintiffs 'have primarily alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions'").

Finally, courts have generally held that, although the "amount of damages is invariably an individual question, this does not defeat class action treatment." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975).

Accordingly, common factual issues will predominate in the Saturn Plaintiffs' consumer fraud claims.

### ii.    A Class Action Is A Superior Method Of Adjudication

In determining whether a class action represents a superior mode of adjudication, Rule 23(b)(3) instructs courts to consider: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation . . . already begun by members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009). These factors weigh in favor of class adjudication.

In particular, the Saturn Plaintiffs readily satisfy the second fact, as the Saturn Plaintiffs have already commenced a putative class action. The District Court had already ruled on Debtors' motion to dismiss and the parties had just begun discovery at the time the Debtors had filed for bankruptcy.

Additionally, there is no better method available for the adjudication of the claims than a class action. *See, e.g., Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 301 (D. Ill. 2007) (holding that class treatment is especially appropriate for consumer claims, particularly where the Defendant has engaged in standardized conduct). Adjudication of

44

the putative Class members' claims through Bankruptcy does not offer Class members a viable alternative to a class action.  While Debtors notified putative Class members about the existence of Debtors' Bankruptcy and the corresponding Bar Date, Debtors failed to inform putative Class members of the existence of their Class claims, which are currently being pursued by the Saturn Plaintiffs.  Accordingly, this Court cannot expect putative Class members to pursue claims through this Bankruptcy that they did not even know exist.

Debtors contend that a class action is not a superior means of adjudicating the Class' claims because "given the vast number of individual variations of law and fact that would be involved with allowing this case to proceed as a nationwide class action, the action would be unmanageable as a single trial."  Debts' Br. at 28.  Debtors' argument fails for two reasons.

First, as explained above, the Saturn Plaintiffs are *not* seeking certification of a "nationwide class action," as Debtors continuously contend.  Instead, the Saturn Plaintiffs seek certification of 11 *state-only* classes and two multi-state classes, where the laws involved are all similar.

Second, as demonstrated above, in light of the fact that the Saturn Plaintiffs seek certification of state-only classes or classes where the laws of the states involved have been grouped based on legal similarities, the Saturn Plaintiffs' claims satisfy Rule 23's predominance requirement.  Accordingly, individual issues will not predominate and a single trial of the Saturn Plaintiffs' claims would be manageable.  *Peterson v. H&R Block Tax Servs.*, 174 F.R.D. 78, 85 (N.D. Ill. 1997).

Accordingly, Plaintiffs have satisfied the superiority requirement of Rule 23(b).

The Saturn Plaintiffs' claims, therefore, satisfy the requirements of Rule 23.

## **CONCLUSION**

Based on the foregoing, the Saturn Plaintiffs respectfully request that this Court:

(i) overrule the Debtors' Objection; (ii) grant the Saturn Plaintiffs' motion for an

application of Rule 23 and (iii) certify the Class pursuant to Rule 23.

Dated:  New York, New York
        January 27, 2011

Respectfully submitted,

**HORWITZ, HORWITZ & PARADIS,
ATTORNEYS AT LAW**

By: */s/ Michael A. Schwartz*
Michael A. Schwartz
570 Seventh Avenue, 20th Floor
New York, NY 10018
Telephone: (212) 986-4500

James E. Miller
Patrick A. Klingman
Shepherd, Finkelman, Miller & Shah, LLC
65 Main Street
Chester, CT 06412
(Tel) (860) 526-1100

*Co-Lead Counsel for the Saturn Plaintiffs
and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Michael A. Schwartz, hereby certify that on January 27, 2010, I caused a copy of (i) Saturn Plaintiffs' Memorandum of Law in Opposition to Debtors' Objection to Proofs of Claim Nos. 16440 and 16441; and (ii) Declaration of Michael A. Schwartz in Support of the Saturn Plaintiffs' Memorandum of Law in Opposition to Debtors' Objections to Proofs of Claim Nos. 16440 and 16441, to be served via ECF (as indicated below), electronic mail and First Class Mail, upon the following individuals:

Harvey R. Miller, Esq. (harvey.miller@weil.com) (also via ECF)
Stephen Karotkin, Esq. (stephen.karotkin@weil.com) (also via ECF)
Joseph H. Smolinsky, Esq. (joseph.smolinsky@weil.com) (also via ECF)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attorneys for the Debtors

Ted Stenger (TStenger@alixpartners.com)
c/o Motors Liquidation Company
401 South Old Woodward Avenue, Suite 370
Birmingham, MI 48009
The Debtors

Lawrence S. Buonomo, Esq. (lawrence.s.buonomo@gm.com)
General Motors, LLC
400 Renaissance Center
Detroit, MI 48265

John J. Rapisardi, Esq. (john.rapisardi@cwt.com)
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Attorneys for United States Department of the Treasury

Joseph Samarias, Esq. (joseph.samarias@do.treas.gov)
United States Department of the Treasury
1500 Pennsylvania Avenue NW, Room 2312
Washington, DC 20220

Michael J. Edelman, Esq. (mjedelman@vedderprice.com) (also via ECF)
Michael L. Schein, Esq. (mschein@vedderprice.com)
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, NY 10019
Attorneys for Export Development Canada


Thomas Moers Mayer, Esq. (tmayer@kramerlevin.com)
Robert Schmidt, Esq. (rschmidt@kramerlevin.com) (also via ECF)
Lauren Macksoud, Esq. (lmacksoud@kramerlevin.com) (also via ECF)
Jennifer Sharret, Esq. (jsharret@kramerlevin.com) (also via ECF)
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attorneys for the Statutory Committee of Unsecured Creditors

Tracy Hope Davis, Esq.
Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004

David S. Jones, Esq. (david.jones6@usdoj.gov) (also via ECF)
Natalie Kuehler, Esq. (natalie.kuehler@usdoj.gov) (also via ECF)
U.S. Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Elihu Inselbuch, Esq. (ei@capdale.com) (also via ECF)
Rita C. Tobin, Esq (rct@capdale.com)
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Attorneys for the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims

Trevor W. Swett III, Esq. (tws@capdale.com)
Kevin C. Maclay, Esq. (kcm@capdale.com)
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005
Attorneys for the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims

Sander L. Esserman, Esq. (esserman@sbep-law.com)
Robet T. Brousseau, Esq. (brousseau@sbep-law.com)
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Attorneys for Dean M. Trafelet in His Capacity as
the Legal Representative for Future Asbestos
Personal Injury Claimants


Dated:  January 27, 2011

                                    */s/ Michael A. Schwartz*
                                    Michael A. Schwartz