Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026-reg

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   GENERAL MOTORS CORPORATION,

9

10          Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              January 11, 2011

19              9:53 a.m.

20

21  B E F O R E:

22  HON. ROBERT E. GERBER

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    FEE Examiner's Motion to Amend the Stipulation and Order With

3    Respect to Appointment of a Fee Examiner for the Fifth and

4    Subsequent Interim Fee Periods.

5

6    DEBTORS' Objection to Proof of Claim No. 70464 Filed by

7    Beverly E. Smith.

8

9    DEBTORS' 110th Omnibus Objection to Claims (Contingent Co-

10   Liability Claims).

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Esther Accardi

25

Page 3

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtor

5          767 Fifth Avenue

6          New York, New York 10153

7

8   BY:   JOSEPH H. SMOLINSKY, ESQ.

9

10

11   KRAMER LEVIN NAFTALIS & FRANKEL LLP

12          Attorneys for Creditors' Committee

13          1177 Avenue of the Americas

14          New York, New  York 10036

15

16   BY:   ROBERT T. SCHMIDT, ESQ.

17          LAUREN M. MACKSOUD, ESQ.

18

19

20   CAPLIN & DRYSDALE

21          Attorneys for Asbestos Creditors' Committee

22          375 Park Avenue

23          New York, New York 10152

24

25   BY:   RITA C. TOBIN, ESQ.

Page 4

1

2    A P P E A R A N C E S : (continued)

3    APPEARING TELEPHONICALLY:

4    PHILLIP BENTLEY, ESQ., UCC

5    KEVIN MACLAY, ESQ., ACC

6    BRADY WILLIAMSON, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                     P R O C E E D I N G S

2            THE CLERK:  All rise.

3            THE COURT:  Good morning.  Have your seats, please.

4            Okay.  GM, Motors Liquidation.

5            My  microphone sounds odd, is it working properly?

6            MR. SMOLINSKY:  It sounds fine, Your Honor.

7            THE COURT:  All right.  We have a number of matters,

8    I'm not sure how many controversial ones we have today.

9            Mr. Smolinsky, can you give me your perspective of how

10   you'd like to proceed today?

11           MR. SMOLINSKY:  Good morning, Your Honor.  Joseph

12   Smolinsky at Weil Gotshal & Manges for the debtors.

13           If I may, before we  move to the agenda, I would like

14   to advise the Court of some very good news, which is that we

15   finally have an agreement in principle on the aggregate amount

16   of asbestos personal injury liability.

17       (Phone interference)

18           THE COURT:  Excuse me, whoever's on the phone, we're

19   in an open courtroom here.  Can I ask you not to speak into my

20   courtroom.

21       (Phone interference)

22           THE COURT:  CourtCall, can you hear me?

23       (No response)

24           THE COURT:  CourtCall?

25       (No response)

GENERAL MOTORS CORPORATION

Page 6

```
 1          THE COURT:  Mr. Smolinsky, go ahead, especially if you

 2    have some good news for me for a change.

 3          MR. SMOLINSKY:  Thank you, Your Honor.

 4          As I was saying we finally have an agreement in

 5    principle --

 6        (Phone interference)

 7          THE COURT:  CourtCall?  CourtCall?

 8          UNIDENTIFIED TELEPHONE SPEAKER:  Is the courtroom on

 9    the line?

10          THE COURT:  The court is on the line and you're

11    speaking to the judge.  And may I ask you to be quiet, please.

12          Go ahead, Mr. Smolinsky.

13        (Telephone speaker and CourtCall speaking)

14          THE COURT:  CourtCall, this is Judge Gerber, can you

15    hear me?

16          THE OPERATOR:  Yes.

17          THE COURT:  Can we arrange the world so that people

18    are talking to you and they're not talking to me?

19          THE OPERATOR:  Okay.

20          THE COURT:  Until and unless they want to be heard on

21    a particular issue.

22          THE OPERATOR:  Okay.

23          THE COURT:  Better yet, if they will promise to be

24    quiet you can give them open lines.  So why don't we try that.

25    And if anybody abuses it, then I'll have to deal with it next.
```

1    Okay.

2           THE OPERATOR:  Okay.

3           THE COURT:  Mr. Smolinsky, can I impose on you to

4    start over, especially when you have something decent to tell

5    me.

6           MR. SMOLINSKY:  Third time's a charm.

7           So, Your Honor, we have reached an agreement in

8    principle on the aggregate amount of asbestos personal injury

9    liability that is a significant issue in the plan.

10          The parties are working on a stipulation which would

11   settle that issue, and would attach a schedule of immaterial

12   plan modifications that would be required.  We anticipate that

13   we're going to file that shortly, and we're going to do it by

14   notice of proposed order; stipulation and order.  And serve it

15   on counsel for all the individual asbestos claimants.

16          THE COURT:  If I heard you right, Mr. Smolinsky, you

17   said immaterial.  Does throwing -- not throwing, let me be

18   more -- less colloquial.  Does allocating value from the estate

19   in the direction of asbestos creditors come out of the hide of

20   the remainder of the unsecured creditor community?

21          MR. SMOLINSKY:  Your Honor, the disclosure statement

22   had a lot of disclosure about the range of liability that we

23   were anticipating.  The disclosure statement advises parties

24   that the asbestos committee and the future asbestos rep would

25   be negotiating a settlement.

Page 8

1        The settlement falls within that range, so we think

2    that in terms of disclosure we've given all the disclosure

3    that's necessary, and the settlement, other than the number,

4    should be no surprise, but we think we've provided adequate

5    disclosure already.

6        So the immaterial plan modifications would be put into

7    a revised plan that would be filed in advance or at

8    confirmation.

9        THE COURT:  So putting it more crudely, or

10   simplistically, Mr. Smolinsky, because the settlement is within

11   the range of values that creditors in the case were informed it

12   could be, therefore, it is no harm no foul and doesn't infect

13   the adequacy of the earlier disclosure that was made to

14   creditors.

15       MR. SMOLINSKY:  That's right, Your Honor.  If you're

16   focused on the general unsecured creditors the settlement is

17   far below the top of the range that was projected.  So that if

18   anything it's positive news for the general unsecured

19   creditors.

20       THE COURT:  Fair enough, okay.

21       Could you now that I'm catching up to you, tell me

22   what you see has having been taken off the table by reason of

23   this, which I take it at this point it's in agreement in

24   principle, or it's more than that, or -- in essence, you're

25   going to paper it, at which time we're simply going to

Page 9

```
 1    implement what you and, presumably, the creditors' committee

 2    and the asbestos claimant's committee all agreed upon.

 3            MR. SMOLINSKY:  Yes, Your Honor.  I don't want to get

 4    ahead of the parties, but we have circulated a number of drafts

 5    and I think we're down to some very minor language issues.  So

 6    I think it could be categorized as more than an agreement in

 7    principle, but before we actually have it papered, I'm afraid

 8    to go any further.

 9            THE COURT:  Now, obviously, or at least seemingly,

10    that's a great breakthrough, what does that take off the table

11    in terms of things that I need to plan on?  The asbestos

12    estimation hearing?

13            MR. SMOLINSKY:  Yes, Your Honor.  If Your Honor will

14    recall, you blocked out March 1st, 2nd, and 3rd for the

15    asbestos estimation hearing.  The 3rd, of course, is also the

16    hearing on confirmation as we were hopeful that there would be

17    a settlement or that we could finish in two days.

18            Obviously, we don't want Your Honor to take the date

19    off the table.  And in the unlikely event that there's a

20    breakdown we have all agreed to toll the schedule that we've

21    all been living under to get ready for that trial to exchange

22    expert reports, for example.  And the agreements that we have

23    is we'll know in the next twenty-four to forty-eight hours

24    whether there's any issue.

25            If there is an issue we're all going to adjust the
```

GENERAL MOTORS CORPORATION

Page 10

1    dates so that we can go forward on March 1st, 2nd and 3rd.  So

2    I would ask Your Honor to keep those dates until the

3    stipulation is filed with the Court.

4         Just as an additional housekeeping matter, we have a

5    number of motions that we'd like to get addressed before

6    confirmation, things that would affect going effective.  So we

7    would ask Your Honor's indulgence that we keep at least one of

8    those dates, perhaps, March 1st, and we be allowed to file

9    motions returnable on March 1st.  In the event that we have to

10   go forward with an estimation hearing, we would, of course, put

11   those off.  But in the event that we get the stipulation filed

12   in the next day or two, we would use that date as an omnibus

13   hearing date.

14        We still have a lot of wood to chop on the claims

15   area.

16        THE COURT:  Fair enough.  That's a first cousin of

17   what I was going to ask you next.  But I take it on this,

18   you're talking about motions that the estate has not yet filed?

19   Or objections that the estate has not yet filed?

20        MR. SMOLINSKY:  It's a combination, Your Honor.  We've

21   been carrying certain claims objections with respect to certain

22   claimants in the hopes that we could resolve them.  We're still

23   working feverishly to try to get those resolved.

24        There may be a few that we decide to go forward on

25   March 1st.  Things like tax claims, where we'd have to reserve

Page 11

```
 1    cash if we can't resolve them.  But we'll be in touch with your

 2    chambers and, obviously, we'll try to do our best not to

 3    overload you or to have you have adequate time to prepare.

 4            THE COURT:  Well, right, you're reading my mind on it.

 5            Am I right on some of these claims issues,

 6    although, you can reserve -- you can get more money into the

 7    pockets of creditors sooner, the less you have to reserve, is

 8    that roughly what we're talking about?

 9            MR. SMOLINSKY:  Initially, the cash issue is how much

10    would be turned over to the government on the effective date,

11    because excess cash that we don't need to go effective we would

12    turn over to the government.

13            There could be an issue if the numbers are large, I

14    don't have the answer today, whether or not we have enough

15    money to go effective even if none of those claims issues are

16    resolved.

17            I think the answer is that we do.  But I don't have

18    that confirmation here today.

19            THE COURT:  Excess money goes back to the government

20    rather than going out in the form of a supplemental

21    distribution to creditors?

22            MR. SMOLINSKY:  That's right.  It's anticipated that

23    the only cash that would be distributed to unsecured creditors

24    would be the proceeds of avoidance actions.  That's what's

25    anticipated under the plan.
```

GENERAL MOTORS CORPORATION

```
 1          THE COURT:  Okay.

 2          MR. SMOLINSKY:  And I mean the JPMorgan avoidance

 3   action, not the ones that were -- that are subject to the lien

 4   of the DIP lenders.

 5          THE COURT:  Oh, okay.  And of the things that I have

 6   sub judices are there any that are gating issues in terms of

 7   either confirmation or the plan going effective?

 8          MR. SMOLINSKY:  Yes, Your Honor.  I think the only one

 9   that I could think of offhand is the apartheid which -- you

10   know, which could loom large, we don't know.  We would have

11   to -- we had asked in that motion to actually ask Your Honor to

12   fix reserves at zero or to estimate so that we can go

13   effective.  So none of that has taken place.

14          We will be filing a motion which will be returnable at

15   confirmation which we'll seek to establish reserves for

16   disputed claims.

17          If the apartheid matter is not resolved by then that

18   would be in that motion.

19          THE COURT:  What is the then?

20          MR. SMOLINSKY:  I'm sorry?

21          THE COURT:  What is the then, the date by which you

22   would want some help on what my thinking is on apartheid?

23          MR. SMOLINSKY:  I think it's confirmation, Your Honor.

24   Because we'd like Your Honor to determine, if we're successful,

25   that we do not need to reserve any securities for the apartheid
```

GENERAL MOTORS CORPORATION

Page 13

1    claim.

2              THE COURT:  Okay.  All right.

3              MR. SMOLINSKY:  Excuse me for one minute, Your Honor.

4              THE COURT:  Yes.

5         (Pause)

6              MR. SMOLINSKY:  I think that's it, Your Honor.

7              THE COURT:  Okay.  I interrupted you a zillion times,

8    you want to get back on track?

9              MR. SMOLINSKY:  I think that's it, Your Honor.  So

10   we'll be in touch with chambers and we'll try to release one of

11   those dates for you.  But we'd like to keep March 1st available

12   as a GM hearing date, as well.

13             THE COURT:  Okay.  For the time being I'll save all

14   three of the 1st, 2nd and 3rd for you.

15             If the -- if -- or hopefully when the understandings,

16   vis-a-vis asbestos claims, are finalized, did I hear you right

17   that there was going to be a stip papering that deal submitted

18   before we actually got to confirmation?

19             MR. SMOLINSKY:  Yes, Your Honor.  The idea would be

20   that we would file a stipulation in the next day or two, and we

21   would send it out on, perhaps, two weeks notice, so that we

22   would have that agreement well before confirmation so we could

23   make the necessary amendments to the plan and go forward on

24   that basis.

25             THE COURT:  And to balance your needs, your creditors'

GENERAL MOTORS CORPORATION

```
 1    needs, and any potential objector's needs, it would probably be

 2    best for me to hold the 2nd in the originally slotted time

 3    until I've passed on the stip and any objections to the stip?

 4            MR. SMOLINSKY:  I think that would be prudent, Your

 5    Honor.

 6            THE COURT:  Okay.  All right.  Fair enough.  Well,

 7    thank you, obviously, that's very good news.

 8            I don't know if I should allow or invite the

 9    creditors' committee, or the asbestos claimants' committee to

10    speak on this if they choose to, but I assume they have no

11    problems with what you just told me.

12            Mr. Schmidt?

13            MR. SCHMIDT:  No, that's correct, Your Honor.

14            MR. BENTLEY:  Phillip Bentley for the UCC.

15            Just very briefly.  As I understood, Your Honor has

16    invited me to add a few words if I choose.

17            THE COURT:  Yeah, go ahead, Mr. Bentley.

18            MR. BENTLEY:  Your Honor, Mr. Smolinsky was entirely

19    accurate in his description of the status of the negotiations.

20    We are very hopeful that it will actually reach finality within

21    the next few days, if not the next day, on the stipulation, and

22    have it fully executed and presented it to Your Honor.

23            A couple of words to follow-up on some points you

24    made.

25            First, we agree with the comments that have been made
```

Page 15

1    by Your Honor and Mr. Smolinsky, that it is important for the

2    Court to continue to hold the existing dates for the estimation

3    at trial.

4            Because we think that the existing deadlines, leading

5    up to those trial dates, play a significant role in driving the

6    parties to a settlement.  And we don't want to lose the timing

7    that's currently fixed.

8            As to the deadlines that are impending -- there are a

9    number of deadlines combing up under the order that the Court

10   entered, I believe last month.

11           The most imminent one being a deadline this Friday for

12   that exchange of initial expert reports.  And as Mr. Smolinsky

13   mentioned briefly what the parties have agreed is that pending

14   our finalizing the stipulation, those deadlines will be tolled.

15   And in the event, which we think is very unlikely that the

16   settlement were to fall through before the full execution of

17   the stipulation that we're working on, the parties have agreed

18   that we would keep the trial dates that commence on March 1,

19   and we would work amongst ourselves to agree on adjourned

20   pretrial deadlines leading up to a March 1 trial.

21           So I just wanted to reiterate that for the record.

22   That's something that has been agreed on among the ACC, the

23   debtors and the UCC.

24           THE COURT:  Before --

25           MR. BENTLEY:  Final comment, Your Honor.  I just

GENERAL MOTORS CORPORATION

Page 16

1    wanted to inform the Court that this settlement, I believe is

2    in significant part a result of comments that Your Honor made

3    at recent hearings, which we and I believe all the parties took

4    very seriously about the need to focus on the big picture, and

5    to avoid unnecessary disputes.  Those comments led the parties

6    to a very serious focus on settlement and it led to this

7    result, which we're all very happy to see and will be very

8    happy to announce once it's finalized and fully executed.

9         THE COURT:  Okay.  Before I respond, substantively, I

10   think I need to --

11        MR. BENTLEY:  That's all I had, Your Honor.

12        THE COURT:  Yeah, well, one of the problems, I don't

13   know why I'm having so many problems with my phone system

14   today, but I -- one thing that I've always had is that I can't

15   be heard when other people are talking and vice-versa.  So I'll

16   need people on the lines to remember that.  And, also, to

17   remember that in a contest between me getting to say what I

18   want and them getting to say what they want, one of my few

19   prerogatives in life is that I win.

20        MR. BENTLEY:  Your Honor, I'm not sure -- we're having

21   some sort of problems with the phones, we have not heard a word

22   on the line since I finished my remarks.  So I'm not sure what

23   the problem is, but I did want to inform the Court that if

24   anything is being said in the court we can't hear it.

25        THE COURT:  I'm not sure exactly why, Mr. Bentley.

Page 17

```
 1            MR. BENTLEY:  I just heard, Your Honor.

 2            THE COURT:  I beg your pardon?

 3            MR. BENTLEY:  I heard what Your Honor just said, and

 4     prior to that there had been a long silence, which I think was

 5     probably a CourtCall issue.

 6            THE COURT:  Well, part of the silence is because I was

 7     sitting quietly listening to you.  But there was a time when

 8     you and I were talking over each other.

 9            MR. BENTLEY:  And my apologies, but I didn't hear a

10     word Your Honor said, I think there was a CourtCall issue.

11            THE COURT:  All right.  Well, you've got a competent

12     partner in court today.

13            And I think we're still under control here.  I do want

14     to get any comments from the asbestos committee if there are

15     any.  Is it Ms. Tobin?

16            MS. TOBIN:  Yeah.

17            MR. MACLAY:  Your Honor, this is Kevin Maclay speaking

18     for the ACC.

19            I couldn't actually hear, I think there are some

20     CourtCall issues today.  I couldn't actually hear Mr.

21     Smolinsky's remarks.  I'd like to hear Your Honor's comments.

22     And I could also hear Mr. Bentley's comments.  And with respect

23     to the comments that I could hear I have no disagreement with

24     them other than that.

25            THE COURT:  Okay.
```

Page 18

```
 1        MR. MACLAY:  If they're saying our attachment says 4,

 2   that the parties are working diligently on the stipulation and

 3   we hope to have that executed shortly.

 4        THE COURT:  All right.  Well, Mr. Maclay, kind of like

 5   Mr. Bentley, you got a competent colleague in the courtroom as

 6   well.

 7        I'm fine with everything I was told.  The one thought

 8   I have is that more than you can possibly imagine I want you to

 9   finalize your deal.  But if there -- and I'm going to approve

10   the tolling of deadlines as was said to me here in the

11   courtroom and hopefully the callers in heard that.  But if not,

12   I was told that there was tolling.  And I think that makes

13   total sense.

14        But if God forbid something breaks down I need you to

15   get back on track as soon as possible because you're going to

16   have to keep working the matter then, and I want to lose as

17   little time as possible.

18        Okay, Mr. Smolinsky, back to you?

19        MR. SMOLINSKY:  I think, Your Honor, that we're ready

20   to move to the agenda.  There are a number of fee matters on

21   the calendar.  I'm afraid to turn it over to the fee examiner

22   who I think is participating by phone, but I think that the fee

23   examiner has the best handle on the current status of all of

24   the resolutions.

25        THE COURT:  Fair enough.  My log shows, both Mr.
```

GENERAL MOTORS CORPORATION

Page 19

```
 1    Williamson and Ms. Statler on.  Can you guys hear me?

 2             MR. WILLIAMSON:  Yes, Your Honor, this is Brady

 3    Williamson, the fee examiner.  I can hear you fine.

 4             THE COURT:  You want to take the lead then, Mr.

 5    Williamson, or Ms. Statler.

 6             MR. WILLIAMSON:  Your Honor, I will, and this will be

 7    very, very brief.

 8             THE COURT:  Could I ask you to pause for just a

 9    second, Mr. Williamson.  You don't touch your phone, CourtCall,

10    don't touch anything.  I just want somebody to whisper

11    something to me for a second.

12        (Pause)

13             THE COURT:  We're not sure what's causing the problem.

14    But if anybody has Blackberries or other remote electronic

15    equipment on, notwithstanding our general rule, I'm going to

16    ask that you turn it off now.  You can turn it on again after

17    the need to hear what folks have on the phone get said.

18             Okay.  Mr. Williamson, I'm sorry, I either didn't hear

19    or didn't focus on your answer.  Are you taking the lead, or is

20    Ms. Statler?

21             MR. WILLIAMSON:  Your Honor, this is Brady Williamson,

22    and I am taking the lead.

23             THE COURT:  Okay, go ahead.

24             MR. WILLIAMSON:  We will be very brief, Your Honor.

25             The parties have been through a -- four cycles of the
```

GENERAL MOTORS CORPORATION

Page 20

```
1    application.  I can report this morning that all of the issues

2    that have been raised with all of the applicants have been

3    resolved.  The Court either has entered or in the next forty-

4    eight hours we'll have the opportunity to enter agreed upon

5    orders that resolve all of the issues.

6          The next time the fee matters, putting aside anything

7    extraordinary that would come to the Court, will probably be

8    sometime in April; late April or early May and that would be

9    the 5th of --

10         The only exception to the comprehensive statement I

11   just made is that the Court received a letter from Caplin &

12   Drysdale around the holiday asking for clarification on a

13   point.  The Caplin & Drysdale, request has not been calendared,

14   so that's not before us.

15         The last point for this morning, your Honor, is  the

16   motion that we have filed a notice to slightly amend the terms

17   of the fee examiner's assignment.  The motion has the support

18   of the debtors, the committee and U.S. Trustee.  I'm sure the

19   Court has seen the motion, it's self-explanatory.

20         We think it permits us to be more efficient, and given

21   the status of the case with plan confirmation hearing on March

22   3rd, gives us a chance to avoid individual reports for the next

23   two cycles without giving up anything in the way of assisting

24   the Court and the U.S. trustee with its oversight.  So we would

25   ask the Court grant the motion and enter the agreed upon order.
```

GENERAL MOTORS CORPORATION

Page 21

```
 1            THE COURT:  All right, pause for a second, Mr.

 2    Williamson.  Let me ask people in the courtroom first.

 3            Does anybody want to be heard vis-a-vis what Mr.

 4    Williamson said?

 5            I see both Mr. Schmidt and Ms. Tobin rising.

 6            Ms. Tobin, come on up first and then I'll hear from

 7    Mr. Schmidt.

 8            MS. TOBIN:  Yes, good morning, Judge Gerber.  We did

 9    send a letter to the Court last week asking --

10            THE COURT:  Yes, I have it and I've read it.  And the

11    question that I had for both you and Mr. Williamson was I

12    thought I heard him saying that nobody was asking me to address

13    the substance of your January 5th letter today.  And I want to

14    know if you agree with that.  And, if so, if you and Mr.

15    Williamson or one of his guys have worked out a game plan for

16    either coming to an agreement or teeing it up for a

17    determination.

18            MS. TOBIN:  Your Honor, we have not, and we did not

19    calendar this item because we had anticipated that we would or

20    might receive a written response from the Court.  But we

21    would -- I'm ready to speak to it very, very briefly if that's

22    what you'd like.

23            Our only issue is a misunderstanding, or

24    miscommunication between us and the fee examiner with respect

25    to what the extent to which you had disallowed our fees for fee
```

GENERAL MOTORS CORPORATION

Page 22

```
 1    inquiry time.  We just ask that the Court clarify its
 2    instructions to the fee auditor.  We're not disputing the
 3    Court's decision in any manner, we're just asking that it be
 4    clarified.  Because, clearly, we have one view as to what the
 5    Court said, and the fee auditor has a different view.
 6            THE COURT:  All right.  Mr. Williamson, were you able
 7    to hear Ms. Tobin in the courtroom today?
 8            MR. WILLIAMSON:  Yes, I was, Your Honor.
 9            THE COURT:  Okay.  And I want to ask you whether you
10    want an opportunity to respond to Ms. Tobin's January -- I
11    think it's Ms. Tobin's.
12            MS. TOBIN:  Yes, that's my letter.
13            THE COURT:  January 5th letter, or whether you want me
14    simply to tell you guys what I had in mind on a spot --
15            MR. WILLIAMSON:  Well, Your Honor, if the Court is
16    prepared to tell us what you had in mind we're perfectly
17    willing to accept that.
18            THE COURT:  Ms. Tobin, you feel the same?
19            MS. TOBIN:  Absolutely, Your Honor.
20            THE COURT:  All right.  Well, folks, what I had in
21    mind was a principle of law that would apply to all of the time
22    of that character.  And while Safe Harbor's I kind of like
23    because as a general rule because they obviate the need for you
24    people to argue about things, which have the risk of exceeding
25    the amount in controversy, I've always regarded Safe Harbors or
```

1   whatever you want to call them, as a kind of 408 commonsense

2   mechanism.  But once you've teed the matter up for

3   determination I've ruled.

4          So, accordingly, I have to rule in favor of the fee

5   examiner on this issue.  And whatever time was spent of the

6   nature that I said wasn't recoverable, unfortunately, you're

7   not going to be able to get compensated for that.

8          Is any further clarification necessary or helpful?

9          MS. TOBIN:  No, Your Honor, that's fine.  Thank you,

10   Your Honor.

11          THE COURT:  Mr. Williamson, from your perspective?

12          MR. WILLIAMSON:  No, Your Honor, that's quite clear.

13          THE COURT:  Okay.  With that open issue being

14   resolved -- forgive me, Mr. Schmidt?

15          MR. SCHMIDT:  Yes, Your Honor.  Robert Schmidt, Kramer

16   Levin.

17          Just briefly, with respect to the Kramer Levin fee

18   application Mr. Williamson is correct, all disputes have been

19   resolved, including the fee on fee dispute.  And I have an

20   order that I'll drop off in chambers if that's okay with the

21   Court.

22          THE COURT:  That's fine.

23          As agreed upon with the fee examiner, all of the deals

24   are ratified, so to speak.  And to the extent that there is

25   agreement, you guys can give me orders implementing that and

GENERAL MOTORS CORPORATION

Page 24

1    providing for any supplemental payments that would otherwise be

2    appropriate at your earliest convenience.

3              MR. SMOLINSKY:  Your Honor, Joe Smolinsky.

4              With respect to the motion of the fee examiner to

5    modify his procedures, we had circulated to all the parties

6    some revisions to the order.  They've been, for the most part,

7    accepted, and so I think that the order that will be submitted

8    to you is slightly different from the one that was attached to

9    the motion.

10             We're happy to facilitate for the fee examiner's

11   submission of a revised order, if they'd like.

12             THE COURT:  Okay.  When Mr. Williamson spoke before I

13   couldn't hear whether he said it had been approved by both of

14   the official committees or he just said the committee.

15             Has it been fully approved by both of the official

16   committees?

17             MR. WILLIAMSON:  Your Honor, only the official

18   creditors' committee which with the UST and the debtors were

19   the signatories to the original stipulation. And, of course,

20   everyone; the whole world received notice of the motion.

21             THE COURT:  I haven't seen the stip yet, is this

22   something that would gore the ox of the asbestos claimants, or

23   is it something they're going to shrug their shoulders about?

24   Or am I better served by getting the --

25             MR. WILLIAMSON:  Your Honor, we've not heard from

GENERAL MOTORS CORPORATION

Page 25

1    them.

2          THE COURT:  Ms. Tobin, do you have any objection to me

3    entering that stip?

4          MS. TOBIN:  Umm --

5          MR. SMOLINSKY:  Your Honor, it's actually an order

6    amending --

7          THE COURT:  Order on --

8          MR. SMOLINSKY:  -- amending portions of the

9    stipulation.

10          THE COURT:  Okay.  Come on up, please, Ms. Tobin.  Do

11    you want to be heard on that?

12          MS. TOBIN:  Your Honor, I was not prepared to speak to

13    that issue today.  I don't know if Mr. Maclay is still on the

14    phone.

15          THE COURT:  Mr. Maclay, you're still on?

16          MR. MACLAY:  Yes, I am.

17          THE COURT:  Do you know what they're talking about?

18          MR. MACLAY:  I don't, Your Honor.

19          THE COURT:  Uh-huh.  Mr. Smolinsky, can you tell me

20    what the substance of the changes are, because I wasn't

21    prepared for a hearing -- any disputes on this today.

22          MR. SMOLINSKY:  Your Honor, to me the most significant

23    aspect of the amendment is that the fee examiner is not going

24    to do individual reports with respect to each professional, but

25    would do one summary report unless there are significant issues

Page 26

1    or departures from either prior rulings of Your Honor, or the

2    fee guidelines that -- in which they would submit their

3    position.

4           As far as I could tell there's nothing substantive in

5    the request other than no longer requiring the fee examiner to

6    do certain reports.  So my view is it should not have any

7    negative impact on any of the committees.

8           THE COURT:  That's sounds pretty plain vanilla to me.

9    So here's what I would like to do.  But I'll give people a

10   chance to tell me if they think I'm not acting appropriately.

11          I would like you to e-mail to my chambers, Mr.

12   Smolinsky, the revised, finalized order.  With an e-mailed

13   representation of the people who are affirmatively supportive

14   of it, which I think Mr. Williamson told me, but I would like

15   to have in writing.

16          Then I would like you to set a reasonable time, if it

17   weren't a snow storm predicted for tomorrow I would say

18   Thursday.  Let's make it for Friday.

19          For anybody to e-mail to my chambers any desire to be

20   heard on it, and if there isn't I'll sign it on Friday after

21   say, noon, or something of that sort.  Would that work for your

22   needs?

23          MR. SMOLINSKY:  Your Honor, perhaps a simpler way is

24   we can just circulate, when we get back to the office, an order

25   to everyone including the ACC and make sure they don't have a

1    problem.  I'm sure that they won't.  If they want the full time

2    to hold off till Friday, that's fine.  But I'm sure that we can

3    get their sign-off today and circulate to you a revised order

4    that has everyone's approval.

5             THE COURT:  Ms. Tobin?

6             MS. TOBIN:  Yes, Your Honor, although I am not

7    authorized to give a sign-off today, I don't anticipate that we

8    are going to have a problem with the changes.  And I think that

9    will work very -- the --

10            THE COURT:  Okay.

11            MS. TOBIN:  -- method you just outlined to work very

12   well for us.

13            THE COURT:  Well, what I'm going to do is yield to the

14   way that Mr. Smolinsky just advocated doing it which is he's

15   going to run it past you guys.  And I think you're the only

16   person who I was concerned about having a chance to be heard.

17   So once you're okay with it then I'll sign it without further

18   notice -- or opportunity to be heard.  I just didn't want your

19   toes stepped on, Ms. Tobin.

20            MS. TOBIN:  Absolutely.  And I just have to make a

21   phone call, Your Honor.  And I don't anticipate a problem.

22            THE COURT:  Okay.  Then why don't we go with your game

23   plan, Mr. Smolinsky?

24            MR. SMOLINSKY:  Thank you, Your Honor.  The last

25   contested matter, and I use that term loosely, is an objection

GENERAL MOTORS CORPORATION

Page 28

1    that we filed to a proof of claim filed by Beverly E. Smith.  I

2    believe it's a Mr. Smith.  If it's not, I apologize.  This is a

3    claim filed in the amount of seventy-five trillion dollars.

4    That's trillion with a T -- that relates, it would appear, to a

5    divorce action and a custody action that took place some time

6    in the past.  The attachments to the proof of claim were

7    unintelligible, from our perspective, other than the references

8    to that prior litigation.  And we don't see the connection

9    between the debtors and the claimants.

10          We note, Your Honor, that Mr. Smith claims to be

11   homeless and the preprinted proof of claim which we must have

12   known there was a threatened action was sent to the address

13   that he noted which is the -- care of the United States Supreme

14   Court.  On the proof of claim, there was an additional address

15   added, B.E. Smith and all others, c/o Marie Smith, 151 West

16   Mountain Road, Apartment 5, Allentown, Pennsylvania 18103.  I

17   confirmed on Google maps that address actually exists.  We did

18   serve a copy of our objection on both addresses, the c/o the

19   Supreme Court as well as the West Mountain Road address.  We

20   have not received any response formally or informally to the

21   objection.  And unless Your Honor has any questions, I would

22   ask that the claim be expunged.

23          THE COURT:  All right.  I am going to expunge that

24   claim.  I'm satisfied that the estate took all reasonable steps

25   appropriate to give the claimant the best possible notice under

GENERAL MOTORS CORPORATION

Page 29

1   the circumstances given the information that the claimant made

2   to the estate.

3           I also note that this is one of a number of instances,

4   thankfully small, where when I've seen people filing things in

5   this case, I read them.  And despite the higher hurdles that

6   the Supreme Court has suggested in terms of pleading

7   requirements, I've kind of given them a look under Conley v.

8   Gibson when they've been pro se to see whether there is any

9   basis upon which a prima facie entitlement to a claim might

10  have been shown.  In this case, I find no such instance.

11          So whether I'm being too generous under the

12  circumstances in still giving some respect to Conley or

13  otherwise, I find that, both by default and for failure to

14  establish a prima facie entitlement to relief, especially for a

15  claim of that size, the objection must be sustained and the

16  claim must be expunged.

17          MR. SMOLINSKY:  Thank you, Your Honor.  If I may, one

18  last factor which I failed to mention was the fact that the

19  proof of claim was filed in October of 2010, ten months after -

20  - eleven months after the bar date.  So to the extent that that

21  creates another factor supporting expungement, I'd like the

22  record to reflect that.

23          THE COURT:  I think you can and should.

24          MR. SMOLINSKY:  Thank you, Your Honor.

25          THE COURT:  Okay.

Page 30

1          MR. SMOLINSKY:  The last matter I believe we need to

2    address is the debtors' 110th omnibus objection to claim.

3    That's an omnibus objection --

4          THE COURT:  We're now up to 110?

5          MR. SMOLINSKY:  No.  We're actually up to -- filed

6    140.  That February 3rd should be a fun day.  But, as usual, we

7    will not go forward with contested matters on that date.  And

8    there still is more work to be done, Your Honor.

9          This motion seeks to expunge contingent co-liability

10   claims subject to disallowance under 502(e)(1)(B) of the

11   Bankruptcy Code.  We've received three formal and three

12   informal objections to this objection.  As far as we can tell

13   and through discussions with the objectors, all of those relate

14   to reservation of rights or for allowance of small amounts for

15   amounts that were already incurred.  And we believe we'll be

16   able to resolve all those objections.  What I'd like to do,

17   Your Honor, is to go forward and seek disallowance of all but

18   those six with an order to be submitted to Your Honor and to

19   adjourn, with respect to those six, until February 9th.  But we

20   anticipate that we'll be able to submit to Your Honor orders on

21   February 9th with respect to all those.

22          THE COURT:  Generally of the type that they would

23   reduce and allow to amounts that have actually been shelled

24   out?

25          MR. SMOLINSKY:  That's correct, Your Honor.

GENERAL MOTORS CORPORATION

Page 31

1            THE COURT:  Okay.

2            MR. SMOLINSKY:  Most of them are just reservation of

3     rights to come back in the event that the liability ever

4     becomes fixed and allowed, obviously subject to all of the

5     estates' defenses.

6            THE COURT:  Okay.  I take it both you and the

7     claimants know that I've written in this area recently.

8            MR. SMOLINSKY:  Yes, Your Honor.  And we've used that

9     as a guideline.

10           THE COURT:  Okay.  That game plan is also approved,

11    Mr. Smolinsky.  And you can submit an order for those that

12    haven't been kicked at your convenience.

13           MR. SMOLINSKY:  Thank you, Your Honor.  I believe that

14    that results in the conclusion of today's hearing.  There is a

15    hearing at 2:00 this afternoon on the Deutsche Bank setoff

16    issue.  I think that Your Honor has been advised that there's a

17    settlement of that issue.

18           THE COURT:  Yes, I have.  Again, I'm very pleased to

19    hear that.  I take it your conflicts co-counsel is going to be

20    handling that?

21           MR. SMOLINSKY:  That's correct, Your Honor.  And as

22    far as I know, it's just a matter of reading the agreement into

23    the record.

24           THE COURT:  Okay.  Very good.  Are we done?

25           MR. SMOLINSKY:  We're done, Your Honor.  Thank you

GENERAL MOTORS CORPORATION

Page 32

1    very much.

2            THE COURT:  All right.  Thank you, folks.  We're

3    adjourned.

4        (Whereupon these proceedings were concluded at 10:31 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1

2                              I N D E X

3

4                            R U L I N G S

5    DESCRIPTION                                    PAGE LINE

6    Fee examiner's motion granted                   23    4

7

8    Debtors' objection to proof of claim #70464     29    16

9    filed by Beverly E. Smith sustained claim

10   expunged

11

12   Debtors' 110th omnibus objection to claims      31    11

13   Seeking to expunge contingent co-liability

14   claims disallowed as to all but six claims

15   who have filed objections as reflected

16   on the record

17

18

19

20

21

22

23

24

25
```

Page 34

1

2                    C E R T I F I C A T I O N

3

4    I, Esther Accardi, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    Esther        Digitally signed by Esther Accardi
                    DN: cn=Esther Accardi, o, ou,
                    email=digital1@veritext.com,
                    c=US
7    Accardi        Date: 2011.01.12 17:14:50 -05'00'
     _____

8    ESTHER ACCARDI (CET**D-485)

9    AAERT Certified Electronic Transcriber

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, New York 11501

16

17   Date:  January 12, 2011

18

19

20

21

22

23

24

25