Page 1

```
 1
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   Case No. 09-50026-reg
 5   - - - - - - - - - - - - - - - - - - - -x
 6   In the Matter of:
 7
 8   GENERAL MOTORS CORPORATION,
 9
10              Debtor.
11
12   - - - - - - - - - - - - - - - - - - - -x
13
14                U.S. Bankruptcy Court
15                One Bowling Green
16                New York, New York
17
18                January 11, 2011
19                2:05 p.m.
20
21   B E F O R E:
22   HON. ROBERT E. GERBER
23   U.S. BANKRUPTCY JUDGE
24
25
```

Page 2

1
2   (#4529) DEUTSCHE Bank AG's Motion for Relief From Automatic
3   Stay to Effect Setoff, Status Conference.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24   Transcribed by:  Esther Accardi
25

```
 1
 2   A P P E A R A N C E S :
 3   TOGUT SEGAL & SEGAL LLP
 4        Attorneys for Debtor
 5        One Penn Plaza
 6        New York, New York 10119
 7
 8   BY:  RICHARD K. MILIN, ESQ.
 9
10
11   BINGHAM MCCUTCHEN LLP
12        Attorneys for Deutsche Bank AG
13        399 Park Avenue
14        New York, New York 10022
15
16   BY:  JARED R. CLARK, ESQ.
17        ROBERT DOMBROFF, ESQ.
18        KATHERINE DOBSON, ESQ.
19
20
21
22
23
24
25
```

Page 4

```
 1
 2   A P P E A R A N C E S : (continued)
 3   GIBSON DUNN & CRUTCHER LLP
 4         Attorneys for Wilmington Trust
 5         200 Park Avenue
 6         New York, New York 10165
 7
 8   BY:   KEITH R. MARTORANA, ESQ.
 9
10
11   KING & SPALDING LLP
12         Attorneys for General Motors LLC
13         1185 Avenue of the Americas
14         New York, New York 10036
15
16   BY:   SCOTT DAVIDSON, ESQ.
17
18
19
20
21
22
23
24
25
```

1                P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Have seats.

4         (Pause)

5              THE COURT:  Okay.  I'm sorry, all.  I had a

6    conference call just before that ran on.  All right.  We have

7    GM in the setoff issue.  And I gather you have some

8    developments and you'll brief me

9              MR. MILIN:  Yes, Your Honor.  Richard Milin from

10   Togut Segal for debtor, Motors Liquidation.

11             THE COURT:  Okay.  Mr. Milin, can I ask you to come

12   to the main lectern, please?

13             MR. MILIN:  Yes.

14        (Pause)

15             MR. MILIN:  Your Honor, again Richard Milin from

16   Togut Segal for debtor, Motors Liquidation Company and

17   affiliated debtors.  Although we were originally scheduled to

18   present oral argument today, as we informed chambers last

19   Friday, we've come instead to report on the status of the

20   GM/Deutsche Bank setoff matter.

21             The matter before the Court began when Deutsche Bank

22   sought to lift the stay to execute a setoff.  They admitted

23   that they owed the debtors, or GM, twenty-four million dollars

24   under swap agreements that they terminated.

25             THE COURT:  Mr. Milin, I'm not going to put a sock in

1  your mouth, but by the time that you had settled the matter or
2  at least notified my chambers that you had, I had read all of
3  the underlying papers.  So you don't need to repeat a lot of
4  that.  I don't need the background.
5              MR. MILIN:  Thank you, Your Honor.  I'm happy to skip
6  it.  Your Honor, I am here to report that, in consultation with
7  Wilmington Trust and the creditors' committee, we have resolved
8  in principle the last remaining issues which concerned Deutsche
9  Bank v. the DM group.  We have a term sheet and the essence of
10 the settlement is that Deutsche Bank will pay GM, New and Old,
11 fourteen million dollars and will do with its bonds as it
12 wishes.  We expect to turn the term sheet into a final
13 settlement agreement and present it to Your Honor for approval
14 in the near future because Deutsche Bank will incur some market
15 risk during the approval process.  They would like to address
16 the procedure by which the matter is presented.  And we've
17 discussed the matter and have no objections to their proposal.
18              THE COURT:  Okay.  Deutsche Bank?
19              MR. DOMBROFF:  Good afternoon, Your Honor.  Robert
20 Dombroff from Bingham on behalf of Deutsche Bank.  With me
21 today is my colleague, Jared Clark and Katherine Dobson.  Mr.
22 Milin has correctly reported that we've reached a settlement.
23 We're pleased to be able to say that to the Court.  I recognize
24 the Court has read the papers but allow me just a moment to
25 make a record because I think that record is appropriate.

1              For purposes of the record, I should note that what
2     we're doing is settling Deutsche Bank's motion for relief from
3     stay.  That was filed with this court on November 23rd, 2009,
4     scheduled for its first hearing date, January 10, 2010.  That's
5     docket number 4529.  Filed -- debtor filed an objection on June
6     18, 2010.  That's docket number 6067.  That objection was
7     joined by Wilmington Trust in a joinder dated June 25, 2010,
8     docket number 6129.  And an additional limited reply was filed
9     by New GM on June 18, 2010, docket number 6066.  We filed our
10    response to the limited joinder, the debtors' objection, and
11    the limited reply by General Mo -- New General Motors on July
12    12, 2010, docket number 6319.  And the estate filed its final
13    reply papers on December 28, 2010, docket number 8326.
14             All of those filings are resolved by virtue of this
15    settlement.  And as Your Honor's noted, you've read the papers,
16    so you know the issues.  You know what's been set forth in the
17    papers.  I won't take the time to repeat that.
18             But what I do want to note for the record, Your
19    Honor, is the following:  that our motion was served on the
20    committee and the master service list as was the debtors'
21    objection, the limited joinder, the limited reply, our response
22    and the debtors' last reply.  So everybody on the master
23    service list and the committee has received notice of this.
24    This matter has been adjourned on periodic basis over the
25    course of the last year.  And to the best of my knowledge, I

1  don't believe that any party in interest has appeared to state
2  any position to the Court other than those positions that have
3  already been stated in writing by the parties who I've just
4  identified.
5          As a result of that, Your Honor, I think that we have
6  completed appropriate notice to all the parties.  And every
7  party was on notice of -- reasonable notice and could
8  contemplate the possibility of a resolution within the
9  parameters of our motion and the objection filed by the
10 debtors' estate.  And indeed, we have settled within that
11 contemplation.  As a result and because, as Mr. Milin has
12 noted, there is some market risk in this and from Deutsche's
13 perspective resolving this fully and finally in as expeditious
14 a manner as possible is appropriate, it believes, and because
15 we do believe we've complied with due process and that all
16 parties in interest have received notice and because the
17 objecting parties are here today to specifically address the
18 Court and note that their objections have been resolved, we do
19 believe that we can present this on agreed order and have Your
20 Honor sign it and be done.
21         THE COURT:  And implicit in your statement is the
22 fact that if I had agreed with you on the three or four points
23 you had made in either of your two briefs, the estate would
24 have done a lot worse than they're ultimately doing today.
25         MR. DOMBROFF:  I believed that then and still believe

1    it now.  But we're compromising that result, correct.

2             THE COURT:  Both sides were wise to compromise this.

3    Is there anybody in the courtroom who wants to -- oh.  Do you

4    want to be more specific in terms of what you're looking for in

5    terms of -- the way I think it was articulated by Mr. Milin was

6    being protected against market risk in the meantime.

7             MR. DOMBROFF:  Yes, Your Honor.  The bonds are

8    trading and they fluctuate in the marketplace.  And this

9    particular resolution and the division of claim that's being

10   paid to the estate was predicated at least in part upon an

11   assumed value for the bonds that was based on today's market.

12   To the extent that -- and there's -- I believe there's active

13   trading in these bonds.  And I believe the estate is trading in

14   its bonds.  And as Your Honor knows, this is all leading up to

15   a confirmation hearing I believe that is scheduled for March.

16   So we believe -- and because this resolution allows us the free

17   use of our bonds, which means we could hold them, we can trade

18   them, there is market risk as a result of the passage of time.

19   So because we did fix this resolution based on the market value

20   of the bonds today, we believe that it would be appropriate

21   that the order enter as quickly as possible so that that market

22   risk can be avoided.

23            THE COURT:  You could be prejudiced if the value of

24   the bonds headed south on you while this was being finalized.

25            MR. DOMBROFF:  That's correct.

```
 1              THE COURT:  Sure.  Does anyone in the courtroom want
 2   to be heard who hasn't had an opportunity?
 3              MR. DOMBROFF:  And I may -- just as a postscript,
 4   Your Honor, I recognize that any possible prejudice to Deutsche
 5   Bank is not outweigh -- does not outweigh due process rights.
 6   That's the reason that I expressed as I did about the notices
 7   which have already been provided 'cause I do think that we have
 8   provided due process to any parties who has asked for notice
 9   that they have received it.  Thank you.
10              THE COURT:  Okay.
11              MR. MARTORANA:  Good afternoon, Your Honor.  Keith
12   Martorana of Gibson Dunn & Crutcher on behalf of Wilmington
13   Trust Company --
14              THE COURT:  Your name again, please?
15              MR. MARTORANA:  Keith Martorana.
16              THE COURT:  Martorana, okay.
17              MR. MARTORANA:  Yes -- of Gibson Dunn & Crutcher on
18   behalf of Wilmington Trust Company.
19              THE COURT:  Okay.  Could you pause for a second, Mr.
20   Martorana?
21              MR. MARTORANA:  Sure.
22         (Pause)
23              THE COURT:  Go ahead.
24              MR. MARTORANA:  Sorry.  Just to complete the
25   appearance -- on behalf of Wilmington Trust Company as
```

GENERAL MOTORS CORPORATION

Page 11

```
 1  indenture trustee under the 1990 and 1995 indentures.  As was
 2  discussed, Wilmington Trust did file a joinder to the objection
 3  by the debtors.  And we are very pleased that this resolution
 4  that has been reached -- and it does, in fact, resolve our
 5  objection which will be withdrawn.
 6              THE COURT:  Mr. Martorana, am I correct that you have
 7  no counterpart for the euro issue?
 8              MR. MARTORANA:  No counterpart?
 9              THE COURT:  I mean, is there an indenture trustee for
10  the bonds that were issued in the euros denomination?
11              MR. MARTORANA:  My understanding is that there's not,
12  is that there's only a fiscal and paying agent.  But there is
13  no party that serves in that capacity.
14              THE COURT:  Okay.
15              MR. MARTORANA:  Thank you, Your Honor.
16              THE COURT:  Fair enough.  Anybody else want to be
17  heard before I rule on the settlement and on the request to
18  trade?
19              Mr. Milin, am I correct that the way you see it, if I
20  think that the settlement's fair, I can and should approve it
21  right now without setting up the requirement for a separate
22  9019?
23              MR. MILIN:  Yes, Your Honor.
24              THE COURT:  Okay.
25          (Pause)
```

1         THE COURT:  I am going to both approve the settlement
2    and give Deutsche Bank the ability to immediately trade the
3    bonds.  And I'm going to do that in two ways and if either of
4    the settling parties wants me to flesh out the reasons why I
5    regard this settlement which isn't exactly in the fifty percent
6    range and where my senses to the economics isn't perfect, you
7    can correct me, I'll do it although I would need to take a
8    recess to speak more extensively because there were three or
9    four separate issues which had appeared to me at the time.  And
10   some of them, one side was ahead.  And some of them, the other
11   side was ahead.  All, of course, subject to your rights to be
12   heard orally.
13         But the most important issue for me to deal with
14   today is that of due process.  As Deutsche Bank properly
15   observed, this matter has been going on for a long time.  Part
16   of the adjournments were at your request, part of them were to
17   meet the needs of me and my chambers.  But the reason for it
18   isn't as important as the fact that the creditor community in
19   this case has been on notice of this controversy for a long,
20   long time.  Indeed, this is one of the most longstanding issues
21   that we've had since the original 363 sale.
22         The matter of swaps and how one deals with that in
23   the context of the benefits that the swap party gets in
24   contrast to the remainder of the creditor community is one of
25   major controversy among legal scholars and, I might even say,

1    bankruptcy judges.  But as I read the papers, and I'll flesh

2    this out if I need to, I well understood the potential risk

3    which the debtors' conflicts counsel was dealing with when it

4    was resisting Deutsche Bank's claim of setoff.  The creditor

5    community knew or should have known that it was at material

6    risk of losing the entitlement to that twenty-four million

7    dollar obligation.  If I got the number slightly wrong, forgive

8    me.  And a settlement at this level is one of which no non-

9    Deutsche Bank creditor could reasonably complain.

10            I don't need to fully flesh out the TNT Trailer Ferry

11   considerations.  I will briefly.  But I also should say and do

12   say and will say expressly that providing for authority to

13   Deutsche Bank to, in essence, avoid potential prejudice by

14   giving it immediate trading authority is, in my view, both

15   appropriate, fair and non-prejudicial to the remainder of the

16   Old GM, Motor Liquidation estates' remaining creditor

17   community.

18            TNT Trailer asked the Court to look at the burdens of

19   litigation, the expense, the risk to the various parties and,

20   while I'm doing it from memory, the underlying consideration

21   is, in general and in substance, whether the estate is giving

22   away the store when settling with a counterparty.  Here, while

23   much of the litigation at the bankruptcy court level has been

24   completed by reason of the submission of two major briefs on

25   each side, coupled with the submissions of the indenture

1  trustee which understandably cared about (a)the welfare of the
2  remainder of the bondholder communities; and (b)protecting the
3  principle, which is important to indenture trustees which is
4  important to judges, of the quality of treatment amongst
5  bondholders.  Their submission, of course, was understandable.
6  But how ever I ruled, if this matter could not have been
7  settled, there would be at least the risk, if not the
8  probability, that the losing side would take it up either to
9  the district court or, and by reason of these issues I would
10 not have ruled the possibility out although I turned down such
11 a request in connection with the 363 motion, certifying it
12 directly to the circuit.  It was a bundle of tough issues.
13         On some of the issues, I thought that Deutsche Bank
14 was a little bit ahead, subject to your rights to be heard.  On
15 others, I thought the estate was a little ahead.  Therefore, a
16 settlement in this range strikes me as not just well within the
17 range of reasonableness, which is what the applicable Second
18 Circuit authority tells me to look at, but also, though it's
19 irrelevant -- I say it merely for the point of interest -- it's
20 very possibly the kind of result that I would have tried to
21 recommend to a client if I had been in the shoes of either of
22 the settlement parties.
23         I thought the pre-petition/post-petition obligation
24 was one upon which Deutsche Bank was slightly ahead or perhaps
25 a little more than slightly ahead.  But I was very, very

1  troubled by Deutsche Bank getting on this swap a treatment to
2  which it plainly would have not been entitled as a bondholder.
3  And while I recognize that rights that Deutsche Bank was
4  claiming arose under the swap agreement, I had material
5  concerns in my mind as to how I could disregard provisions in
6  the indenture which the indenture and the debtor both reminded
7  me of which would cut in exactly the opposite direction.  And,
8  of course, there's language in the swap agreements which could
9  at least seemingly, if not more than that, deprive Deutsche
10 Bank of the rights it was looking for as well.
11         I don't think it's necessary or appropriate for me to
12 go into the merits anymore.  When I heard that it was settled,
13 I did not do what I normally do which is lay out all the
14 questions I would ask to both sides at the outset of the
15 argument.  And the analysis that I just gave you is greatly
16 simplified relative to what I would have said if we had an
17 actual substantive argument today.  But I think the settlement
18 falls well within the range of reasonableness.  And as I
19 indicated and as importantly, I believe that the interest of
20 absent parties are not in any way prejudiced.  They got all the
21 notice of this possibility that would be appropriate under the
22 circumstances.
23         So I would like to get word from both sides as to how
24 you propose to finalize the implementation of my approval.  But
25 I'm telling you now I'm so ordering that it is approved.

GENERAL MOTORS CORPORATION

Page 16

```
 1              MR. MILIN:  Your Honor, it's our inclination to
 2   submit a final settlement agreement on notice of presentment.
 3              THE COURT:  That sounds fine.  Anybody in the
 4   courtroom opposed to that idea?  Let's do it.  And if there is
 5   no objection, I will, in accordance with the rulings today, so
 6   order the settlement approved.  If there is an objection filed
 7   before the presentment deadline, I'll have to consider the
 8   objection and then decide what we're going to do.
 9              MR. CLARK:  Your Honor, Jared Clark, Bingham.  Just a
10   matter of housekeeping.  In terms of the presentment, would
11   five days presentment be acceptable?  Or what would Your Honor
12   prefer in that regard?
13              THE COURT:  Normally, it would.  But I want do a
14   variant of it.  First of all, since December 1st, we're now
15   thinking in different time terms.  We think in seven-day
16   increments rather than five.  But apart from that because of
17   the weather issues, let's go seven.
18              MR. CLARK:  Thank you, Your Honor.
19              THE COURT:  What is the mechanism and to whom are we
20   talking about notice of this -- I would think it would be
21   sufficient, subject to your rights to be heard, that the
22   notification parties be -- that's a little -- the two official
23   committees, Treasury, the U.S. government and your 2002 list,
24   those who asked for actual notice.  And, of course, I don't
25   mean to snub the U.S. trustee.  Have I failed to consider
```

1  anybody who you guys would recommend?
2         MR. CLARK:  I believe all the objecting parties, Your
3  Honor, were on the 2002 list that you referenced.
4         THE COURT:  Okay.  All right.  Then let's make it
5  happen, folks.  Do we have any further business today?
6         MR. MILIN:  No.  Thank you, Your Honor.
7         MR. DOMBROFF:  Thank you, Your Honor.
8         THE COURT:  Okay.  Thank you.
9      (Whereupon these proceedings were concluded at 2:27 p.m.)

```
                                                          Page 18
 1
 2                          I N D E X
 3
 4                         R U L I N G S
 5   DESCRIPTION                                    PAGE      LINE
 6   Settlement agreement with                       15        25
 7   Deutsche Bank re setoff approved;
 8   record so ordered
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 19

C E R T I F I C A T I O N

I, Esther Accardi, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Esther Accardi*
Digitally signed by Esther Accardi
DN: cn=Esther Accardi, o, ou, email=digital1@veritext.com, c=US
Date: 2011.01.12 17:17:18 -05'00'

_____

ESTHER ACCARDI (CET**D-485)

AAERT Certified Electronic Transcriber

Veritext

200 Old Country Road

Suite 580

Mineola, New York 11501

Date:   January 12, 2011