# **EXHIBIT A**

(First Amended Complaint)

STATE OF MICHIGAN

OAKLAND COUNTY CIRCUIT COURT

MICROHEAT, INC.,
a Delaware Corporation,

    Plaintiff,

-vs-

    Case No. 08-094667-CK
    Hon. Edward Sosnick

GENERAL MOTORS CORPORATION,
a Delaware Corporation,

    Defendant.

OAKLAND COUNTY 08-094667-CK

JUDGE EDWARD SOSNICK
MICROHEAT INC v GENERAL MOTO

_____/

| | |
|---|---|
| Joel H. Serlin (P20224) | Gary K. August (P48730) |
| Ronald L. Cornell, Jr. (P46860) | Zausmer, Kaufman, August, |
| Jay Y. Mandel (P60576) | Caldwell & Tayler, P.C. |
| Seyburn, Kahn, Ginn, Bess & Serlin, P.C. | Attorneys for Defendant |
| Attorneys for Plaintiff | 31700 Middlebelt Road, Ste. 150 |
| 2000 Town Center-Ste. 1500 | Farmington Hills, MI 48334-2374 |
| Southfield, MI 48075 | (248) 851-4111 |
| (248) 353-7620 | |
| | Lawrence S. Buonomo (P52454) |
| | General Motors Corporation |
| | Co-Counsel for Defendant |
| | 400 Renaissance Center |
| | MC 482-026-601 |
| | Detroit, MI 48265 |
| | 313-665-7390 |

_____/

## FIRST AMENDED COMPLAINT

Plaintiff Micro-Heat, Inc. ("Microheat"), a Delaware Corporation, through its attorneys, Seyburn, Kahn, Ginn, Bess & Serlin, P.C., states for its First Amended Complaint as follows:

{00258234.DOC}

### Jurisdictional Allegations

1. Plaintiff Microheat is a Delaware Corporation with its principal place of business in the City of Farmington Hills, Oakland County, Michigan. Microheat is a Tier-1 supplier in the automobile industry. It supplies a windshield washer fluid heating system, known as "HotShot," to Original Equipment Manufacturers ("OEMs").

2. Defendant General Motors Corporation ("GM") is a Delaware Corporation and an OEM. GM operates plants and regularly conducts business with Tier-1 suppliers in Oakland County, Michigan, including Microheat.

3. The amount in controversy in this dispute exceeds the sum of $25,000, exclusive of costs, interest and attorney's fees, and is otherwise within this Court's venue and jurisdiction.

### General Allegations

4. Beginning in 2003 and continuing into 2008, GM and its affiliates issued tooling and product purchase orders to Microheat for the acquisition of tools and production of HotShot modules to be installed in several GM vehicle platforms and nameplates, including sport utility vehicles, trucks, and passenger cars. Pursuant to MCR 2.113(F)(1)(b), GM possesses copies of these purchase orders.

5. The GM purchase orders include certain terms and conditions and line item detail that provide, among other things, long-term commitments and payment obligations by GM.

6. By way of example, but not limitation, GM's product purchase orders require GM to pay Microheat the purchase order price for all HotShot modules shipped to GM facilities "on the second day of the second month" following the shipment date.

{00258234.DOC}

2

7. Microheat purchased the required tools and, since 2005 and continuing into 2008, Microheat manufactured and shipped HotShot modules to GM's facilities in North America, Australia and Europe.

8. Microheat also entered into a "Production Purchasing Agreement" with the Ford Motor Company ("Ford") and subsequently received purchase orders for the acquisition of tools and production of similar HotShot modules to be installed in several Ford vehicle platforms and nameplates including sport utility vehicles, trucks and passenger cars beginning in 2009.

### The Recall

9. On February 4, 2008, The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") opened a Preliminary Evaluation as a result of receiving two complaints of engine compartment fires in GM's 2007 Chevrolet Tahoe vehicles.

10. In response to an ODI Information Request Letter, GM supplied ODI with information regarding 41 reports of non-crash under-hood engine compartment fires in nearly 2.5 million 2007 and 2008 model year subject vehicles (the "Subject" vehicles). Also, GM supplied ODI with information regarding 64 non-crash related under-hood engine compartment fires in over 1 million earlier model year peer vehicles (the "Peer" vehicles).

11. GM stated causes of the fires in both the Subject and Peer vehicles included "miscellaneous electrical systems" and "unknown."

12. On June 12, 2008, NHTSA upgraded the Preliminary Evaluation to an Engineering Analysis "to further assess the scope, frequency, origin and cause of the alleged non-crash related engine compartment fires in the subject vehicles."

{00258234.DOC}

13. As a part of the Engineering Analysis, GM met with NHTSA on at least two occasions to review data and GM's "additional analysis" of the non-crash related engine compartment fires in the Subject vehicles.

14. GM did not provide Microheat any "additional analysis" or invite Microheat to participate in any evaluation, analysis or meetings with NHTSA.

15. On August 27, 2008, GM sent NHTSA a letter stating that GM determined that a safety defect existed in various 2006-2008 model year vehicles. GM's letter described the alleged defect as:

> A short circuit on the printed circuit board for the washer fluid heater may over heat the control-circuit ground wire. This may cause other electrical features to malfunction, create an odor or cause smoke. In rare cases, it may cause a fire.

GM's letter further advised NHTSA that GM decided to conduct a safety recall.

16. GM did not advise Microheat of its determination or seek Microheat's input on the description of the alleged defect.

17. On August 29, 2008, GM announced a "safety" recall of approximately 944,000 vehicles with a Microheat HotShot module to install an "in-line" fuse in connection with the heated windshield washer fluid system (the "Recall").

18. In connection with announcing the Recall, GM provided national and local news media with the description of the alleged defect and made further statements linking Microheat's HotShot to under-hood engine compartment fires.

19. For example, GM spokesperson Carolyn Markey publicly stated that there had been nine reports of fires and three of them have been linked to the Microheat's HotShot.

20. GM spokesperson Tom Wilkinson publicly stated that GM is aware of three fires caused by Microheat's HotShot, two of which were in GM's test fleet vehicles.

{00258234.DOC}

21. GM's description of the alleged defect and statements linking Microheat's HotShot to under-hood engine compartment fires was widely reported by major local and national news outlets including the Associated Press and CNN.

### Events Following the Recall

22. On September 2, 2008, GM failed to comply with the payment terms of the product purchase orders by refusing to make payment to Microheat in an amount in excess of $1.3 million for HotShot modules Microheat shipped to GM facilities in July, 2008.

23. On September 6, 2008, Microheat and GM's representatives met to discuss the Recall and GM's refusal to make payments due on September 2, 2008.

24. At the September 6, 2008 meeting, GM claimed that Microheat's HotShot module caused the under-hood fires that necessitated the Recall. GM further claimed that Microheat should bear financial responsibility for the $20-$25 million projected costs of the Recall.

25. GM also stated, unequivocally, that it would not pay Microheat for product shipped in July, August and September 2008 or any amounts otherwise claimed as past due.

26. GM subsequently terminated its purchase orders and relationship with Microheat.

27. As a result of GM's description of the alleged defect in connection with the Recall and public statements linking Microheat's HotShot to at least three vehicle fires, Ford terminated its Production Purchasing Agreement and purchase orders with Microheat.

28. Under the circumstances, GM owes Microheat in excess of $11 million for tooling, HotShot modules shipped and accepted by GM, and an obsolescence claim related to a generational change-over of the modules and obsolescence claims asserted by Microheat's suppliers.

{00258234.DOC}

5

29. GM has no good faith basis to withhold any payments due Microheat or claim that Microheat's HotShot module is the cause of vehicle fires or the Recall.

30. GM's stated reason for the Recall and its public statements linking Microheat's HotShot module to vehicle fires caused Microheat to suffer consequential and special damages including injury to its reputation, and business contracts, relationships and expectancies.

### Count I - Breach of Contract

31. Microheat repeats and incorporates by reference the preceding paragraphs.

32. GM's failure and refusal to: (a) pay Microheat amounts due on September 2, 2008 for products shipped in July; (b) pay Microheat past due amounts for product, tooling and obsolescence; and (c) rescind its unequivocal statements that it will not pay Microheat for product shipped and accepted by GM in August and September 2008 is a breach and anticipatory breach of the purchase order agreements with Microheat.

33. As a direct and proximate result of GM's breaches, Microheat has suffered damages in an amount in excess of $25,000 to be determined at trial, in addition to, and without limitation, other consequential damages, including loss of use of monies owed, interest, costs and reasonable attorney's fees.

### Count II - Defamation

34. Microheat repeats and incorporates by reference preceding paragraphs.

35. GM made false and misleading statements concerning Microheat's HotShot product as the cause of the Recall and under-hood fires in vehicles.

36. GM's statements described above are not privileged.

37. GM made the statements described above intentionally, knowing that they were false and misleading or GM made them recklessly in disregard as to the truth.

{00258234.DOC}

6

38. As a direct and proximate cause of GM's conduct and statements alleged above, Microheat's reputation and business has been damaged in an amount to be determined at trial.

### Count III - Product Disparagement
### Injurious Falsehood

39. Microheat repeats and incorporates by reference preceding paragraphs.

40. GM made false and misleading statements concerning Microheat's HotShot product as the cause of the Recall and under-hood fires in vehicles.

41. GM made the statements described above intentionally knowing that they were false and misleading or GM made with reckless disregard to the truth.

42. GM knew or should have known that its conduct and statements described above would likely result in Microheat losing sales of its HotShot product to other OEM's and customers, including Ford.

43. As a direct and proximate cause of GM's conduct and statements alleged above, Microheat has lost sales and has suffered damages in an amount to be determined at trial.

WHEREFORE, Microheat requests that this Court enter Judgment in its favor and against General Motors Corporation:

A. Awarding compensatory damages in an amount in excess of $25,000;

B. Awarding Microheat all other consequential, expectancy, exemplary and special damages, including, but not limited to, loss of use of monies owed, interest, costs, and reasonable attorney's fees;

C. Awarding Microheat equitable relief, including, but not limited to, and

{00258234.DOC}

7

D. Awarding such other relief that this Court deems appropriate.

Respectfully submitted,

SEYBURN, KAHN, GINN,
BESS AND SERLIN, P.C.

By: _____
Joel H. Serlin (P20224)
Ronald L. Cornell, Jr. (P46860)
Jay Y. Mandel (P60576)
Attorneys for Plaintiff
2000 Town Center, Suite 1500
Southfield, MI 48075-1195
(248) 353-7620

Dated: November 6, 2008

{00258234.DOC}

8