# EXHIBIT B

(APA and Sale Orders)

**ASSET PURCHASE AGREEMENT**


**BY AND AMONG**

**BASIL SIMON, CHAPTER 7 TRUSTEE**
**FOR THE ESTATE OF MICRO-HEAT, INC.,**

**AS SELLER**

**AND**

**M-HEAT INVESTORS, LLC,**

**AS BUYER**


**DATED JANUARY __, 2009**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement"), dated as of January 9 , 2009, is by and between Basil Simon in his capacity as Chapter 7 trustee (the "Seller") for the estate of Micro-Heat, Inc., a Delaware corporation (the "Debtor") and M-Heat Investors, LLC a Delaware limited liability company (the "Buyer").

## RECITALS

A.    Seller is the duly appointed Chapter 7 trustee for the Debtor's estate in connection with Case No. 08-65060 currently pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), which such case was commenced on October 13, 2008 (the "Petition Date").

B.    Buyer has agreed to acquire from Seller, and Seller has agreed to sell to Buyer, substantially all of the Debtor's assets (the "Business") as described herein, on the terms and subject to the conditions set forth herein.

C.    The closing of the contemplated transactions and consummation of this Agreement, and Buyer's and Seller's obligations under this Agreement, are contingent on the Bankruptcy Court's approval of the transactions described in this Agreement, and the parties acknowledge that no "sale" as that term is used in the Bankruptcy Code shall occur until the Bankruptcy Court enters an order approving such sale (the "Sale Order").

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter set forth, Buyer and Seller hereby agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ACQUIRED ASSETS

1.1    **Acquired Assets**. Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign, convey and transfer to Buyer, and Buyer agrees to purchase from Seller, at the Closing (as defined herein), all right, title and interest in and to all of the tangible and intangible assets owned by the Debtor as of the Petition Date (the "Acquired Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to Section 363 of the Bankruptcy Code.  For purposes of clarity only, the Acquired Assets shall include, without limitation, the following:

(i)    all inventory of the Debtor, wherever located, including all "inventory" (as defined in the Uniform Commercial Code (the "UCC") as adopted by the State of Michigan) and inventory the sale or other disposition of which has given rise to receivables and which have been returned to or repossessed or stopped in transit by the Debtor and all accessions thereto and documents therefor (the "Inventory");

(ii)    all accounts receivables of the Debtor including "accounts" (as defined in the UCC) and all book debts, notes, drafts and other obligations or indebtedness

owing to the Debtor arising from the sale, lease or exchange of goods or other property by it and/or the performance of services by the Debtor (the "Accounts");

(iii)    all additions to and substitutions for any of the Inventory and the Accounts;

(iv)    all claims and causes of action (the "Claims"), including, without limitation, any and all claims against General Motors Corporation and its affiliates (the "GM Claims"), including those subject to litigation currently pending in the Oakland County Circuit Court, State of Michigan (the "GM Litigation"), and any and all claims against Ford Motor Company and its affiliates (the "Ford Claims"), but excluding the Comerica Claims (as defined in Section 1.3(e) below);

(v)    any and all of the proceeds relating to the Inventory, Accounts and Claims, including the GM Claims, and the Ford Claims;

(vi)    all equipment, including spare parts, machinery, leasehold improvements, furniture, fixtures, furnishings, materials and supplies, data processing hardware, jigs, molds, tools, and dies and other personal property, wherever situated;

(vii)    all of the right, title and interest of Seller in and to all contracts, agreements and commitments (including sales orders, purchase orders, and quotes) listed on the attached Schedule 1.1(b)(vii) (the "Contracts");

(viii)    all of the right, title and interest of Seller in and to all customers lists, customers, marketing data and plans, advertising and display materials, sales literature, promotional material, catalogs, samples, demos and prototypes;

(ix)    all of the right, title and interest of Seller in and to all original books and records relating to the Business;

(x)    all of the right, title and interest of Seller in and to all of the following (the "Intellectual Property"):

1.    all concepts, inventions, plans, designs, research data, patents, trade secrets and other proprietary know-how (and all applications therefor and registrations and renewals thereof), formulae and manufacturing processes, operating manuals, drawings and other art works, technology, methods and manuals, proprietary knowledge, proprietary rights or information, data, records, procedures, related technical data (including all relevant documentation and testing materials), research and development records related to or used in the Business;

2.    all licenses or other rights to use any technical information and know-how of others or to use any trademarks, trade names, patents or copyrights owned by others (the "Intellectual Property Licenses");

2

3.    all of Seller's right, title and interest in all trade names, corporate names, logos, URLs and other network and email identifiers, trade dress, trademarks and service marks, brand names and all associated registrations and applications and all goodwill associated therewith;

4.    all rights, claims, defenses or causes of action at law or in equity for any past, present or future infringement of any of the Intellectual Property, including the right to receive all proceeds and damages therefrom, including rights under insurance policies and the right to receive insurance proceeds, and all rights to obtain renewals, continuations, divisions or other extensions of legal protections pertaining thereto;

5.    all of the Seller's rights under any registration, certificate of occupancy, permit or approval of any nature or grandfathered practice or authorization that permits the Seller to use the Acquired Assets, together with all ISO, GSA, QPL, UL, CUL, NEMA, ANSI certifications for Seller's products and facilities;

(xi)    all of the Seller's rights, claims, defenses, or causes of action against third parties in respect of the Acquired Assets arising out of transactions prior to the Closing but specifically excluding claims related to Retainers (as defined in Section 1.3(f)); and

(xii)    all rights under any warranty, express or implied, which relate to the Acquired Assets, and all other assets.

The Contracts and Intellectual Property Licenses that constitute Acquired Assets hereunder shall be referred to herein as the "Assumed Contracts".

1.2    **Additional Consideration**. The Seller, on behalf of the Debtor's estate, hereby acknowledges that the Buyer has filed a proof of claim against the Debtor's estate in the amount of $42,724,854.00. The Seller further agrees that immediately upon entry of an order authorizing the Seller to enter into this Agreement, the Seller shall turnover cash in the amount of $1,731,965.42 (the "Inventory Proceeds"). Buyer agrees and acknowledges that its secured claim against the Debtor's estate shall be reduced in an amount equal to the Inventory Proceeds. Nothing contained herein shall be construed as a limitation of the Buyer's right to receive a distribution from all assets of the Debtor's estate in accordance with the priority scheme set forth in the Bankruptcy Code as a result of any claim it holds against the Debtor's estate.

Within three (3) days of the filing of the Sale Motion (as defined below), Seller and Buyer shall file a stipulation and agreed order allowing Buyer a Chapter 7 administrative expense for the amount incurred by Buyer in preserving and protecting property of the Debtor's estate; provided, however, that such allowed administrative expense shall not exceed $150,000.00.

1.3    **Retained Assets**. The Acquired Assets do not include any of the following (collectively, the "Excluded Assets"):

3

      (a)    any interest in actions, causes of action and proceeds therefrom arising out of or relating to any claims under 11 U.S.C. §§ 544-550; provided, however, that nothing contained herein shall be construed as a limitation of the Buyer's right to receive a distribution in accordance with the priority scheme set forth in the Bankruptcy Code as a result of any claim it holds against the Debtor's estate;

      (b)    any and all proceeds resulting from tort claims in the GM Litigation (the "GM Tort Claims");

      (c)    any and all proceeds resulting from the Ford Claims brought in tort (the "Ford Tort Claims");

      (d)    any cash in the Debtor's accounts, or elsewhere, other than the Inventory Proceeds;

      (e)    any and all Claims against Comerica Bank and its affiliates (the "Comerica Claims");

      (f)    any and all Claims against professionals for the disgorgement of retainers provided by the Debtor to those professionals prior to the Petition Date (the "Retainers"); and

      (g)    all Contracts or Intellectual Property Licenses of Seller that are not Assumed Contracts, together with all proceeds thereof.

With respect to the GM Tort Claims and the Ford Tort Claims, nothing contained in this Agreement shall be deemed as a waiver or relinquishment of the Buyer's right to share in the proceeds from such claims and all other assets of the Debtor's estate (and proceeds thereof) in accordance with the priority scheme set forth in the Bankruptcy Code. The parties acknowledge that the GM Claim have been asserted together with the GM Tort Claims in the GM Litigation. Seller acknowledges that upon sale of the GM Claim by Seller to Buyer, Buyer shall be responsible and shall compensate all professionals employed by Buyer in connection with the GM Litigation, notwithstanding the fact that such services may also relate to the GM Tort Claims. In the event that Buyer decides, in its sole discretion, to discontinue prosecuting all or any portion of the GM Litigation, Buyer shall provide five (5) days notice of such intent to Seller and, upon request of Seller, assign all right, title and interest in such portion of the GM Litigation that Buyer so chooses to discontinue prosecuting to Seller, subject only to Buyer's right to receive a distribution from the proceeds of the Debtor's estate in accordance with the priority scheme set forth in the Bankruptcy Code, which shall continue in full force and effect. Immediately upon transmitting notice to Seller of its intent to discontinue prosecuting all or any portion of the GM Litigation, Seller shall have no liability for the fees and expenses of professionals relating to the GM Litigation that accrue after such notice is given.

The Trustee, on behalf of the Debtor's estate, shall be entitled to 5% of any proceeds from the GM Litigation subject only to the Buyer's right to receive a distribution from the Debtor's estate in accordance with the priority scheme set forth in the Bankruptcy Code, which shall continue in full force and effect.

4

Buyer and Seller agree that the terms and conditions governing the GM Claims apply to the Ford Claims only to the extent that tort claims are asserted in any litigation commenced by Buyer against Ford based on the Ford Claims. Otherwise, Buyer shall be entitled to the first $885,317.00 of the proceeds from any litigation relating to the Ford Claims, and any distribution from the Debtor's estate in accordance with the priority scheme set forth in the Bankruptcy Code.

1.4    **Assumed and Excluded Liabilities**    At the Closing, Buyer agrees to fully satisfy any and all cure costs related to the Assumed Contracts under Bankruptcy Code section 365 and all obligations and liabilities that arise post-Closing under any Assumed Contracts (collectively, the "Assumed Liabilities"). Other than the Assumed Liabilities, Buyer shall not assume any other obligations or liabilities of the Seller. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of Seller of whatever nature, whether presently in existence or arising hereafter. All such liabilities and obligations shall be retained by and remain liabilities and obligations of the Debtor's estate (all such liabilities and obligations not being assumed are referred to herein as the "Excluded Liabilities").

1.5    **Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests**.    The Acquired Assets shall be transferred free and clear of all liens, claims, encumbrances, and other interests, including without limitation, all security interests of record and all interests not specifically assumed by Buyer, to the fullest extent permitted by 11 U.S.C. § 363.

1.6    **Method of Conveyance**.    Upon the Closing, title to all of the Acquired Assets shall pass to Buyer; and Seller shall make available to Buyer possession of all of the Acquired Assets, and shall further, upon Buyer's reasonable request, deliver to Buyer proper assignments, deeds, conveyances and bills of sale sufficient to convey to Buyer title to all the Acquired Assets, in accordance with Section 1.1 of this Agreement, as well as such other instruments of conveyance as Buyer may reasonably deem necessary (both at and after the Closing) to effect or evidence the transfers contemplated herein.

## ARTICLE II
## PURCHASE PRICE; PAYMENTS

2.1    **Purchase and Sale Subject**.    Subject to the terms and conditions of this Agreement, and in consideration of the Purchase Price (as defined below), Seller will sell, transfer, and convey all the Acquired Assets on an "as is, where is" basis to Buyer at the Closing, free and clear of all liens, claims, and encumbrances and other interests pursuant to Sections 363 and 365 of the Bankruptcy Code.

2.2    **Purchase Price; Payment**.    The purchase price ("Purchase Price") to be paid to the Seller by Buyer for the Acquired Assets shall be:

(a)    a cash payment to the Seller at Closing in the amount of $340,000.00;

5

(b)  a credit bid pursuant to 11 U.S.C. § 363(k) in the amount of $55,000.00 for the Inventory; and

(c)  the assumption by Buyer of the Assumed Liabilities.

## ARTICLE III
## CLOSING

3.1  **Closing**.  The sale shall be effected by a closing of the sale and purchase of the Acquired Assets and the Business (the "Closing") which will take place pursuant to 11 U.S.C. § 363(m) on February 6, 2009, if the Bankruptcy Court has entered the Sale Order no later than February 4, 2009.  The date on which the Closing occurs is herein referred to as the "Closing Date."  In no event shall a Saturday, Sunday, or legal holiday be the Closing Date unless Seller has received the cash portion of the Purchase Price and deposited it into its account before such Saturday, Sunday, or legal holiday.

3.2  **Deliveries**.  At Closing, Seller and Buyer shall make the following deliveries:

(a)  Buyer will deliver to Seller the cash portion of the Purchase Price and all other agreements or documents required to be delivered to Seller pursuant to the terms of this Agreement; and

(b)  Seller will provide Buyer with access and title to the Acquired Assets and all other agreements or documents conveyed to Buyer pursuant to the terms of this Agreement for the purpose of permitting Buyer to take possession of same.

## ARTICLE IV
## ASSUMED OBLIGATIONS

Buyer shall become obligated for only those obligations that it specifically assumes pursuant to the Assumed Liabilities and will become obligated to pay only those amounts that first come due with respect to the Assumed Liabilities after the Closing Date.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that all of the following statements are true and accurate as of the date of execution of this Agreement by both parties and shall be true and correct as of the Closing Date:

5.1  **Disclosure**.  To the best of Seller's knowledge and belief, neither this Agreement nor any of the contracts, exhibits, attachments, written statements, documents, certificates or other items prepared for or supplied to Buyer by or on behalf of Seller with respect to the transactions contemplated hereby contains any untrue statement of a material fact or omits a material fact necessary to make each statement contained herein or therein not

6

misleading. Seller has provided Buyer with access to its records and employees in order for Buyer to conduct due diligence as it deems appropriate under the circumstances.

5.2 **Performance**. The representations and warranties of Seller contained in this Agreement and all information contained in any exhibit or schedule hereto delivered by, or on behalf of Seller, to Buyer, shall, to the best of Seller's knowledge and belief, be true and accurate when made and on the Closing Date as though then made, except as expressly provided herein. Seller shall have performed and complied with all agreements, covenants and conditions required by this Agreement to be performed and complied with by it prior to the Closing Date.

5.3 **Proceedings and Documents**. All corporate and other proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in form and substance to Buyer and Buyer's counsel, and Seller shall have made available to Buyer for examination the originals or true, complete and correct copies of all records and documents relating to the Business and affairs of Seller that Buyer may reasonably request in connection with this transaction.

5.4 **Authorization**. Subject to the Bankruptcy Court's entry of the Sale Order, the execution, delivery, and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to this Agreement by the Seller, and the consummation of the transactions herein, have been duly authorized.

5.5 **Enforceability**. Subject to the entry of an order approving the transactions contemplated herein, this Agreement constitutes Seller's valid and legally binding obligation, enforceable in accordance with its terms.

5.6 **Title**. Subject to the Bankruptcy Code, Seller has good and marketable title to all of the Assets. The Seller sells, assigns, transfers and conveys the Assets to Buyer free and clear of all liens, claims, and encumbrances to the fullest extent permitted by 11 U.S.C. § 363 of the Bankruptcy Code.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller that all the following statements are true, accurate and correct as of the date of execution of this Agreement and shall be true and correct as of the Closing Date:

6.1 **Corporate Organization**. Buyer is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware and has all the corporate power and authority to enter into this Agreement and any other documents that Buyer is required to execute and deliver hereunder to perform its obligations under this Agreement.

6.2 **Corporate Authorization**. The execution, delivery, and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to this Agreement by Buyer, and the consummation of the transactions herein, have been duly authorized by all necessary and corporate or company actions on part of Buyer.

7

6.3   **Enforceability**. This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable in accordance with its terms, except as such enforceability may be limited by equitable principles and applicable bankruptcy or similar laws relating to or affecting the rights of creditors.

6.4   **Compliance with Other Instruments and Laws**. The execution and delivery of this Agreement by Buyer, and the performance by Buyer of its obligations under this Agreement, will not:  (i) violate Buyer's constituent documents; (ii) result in a material violation or breach of, or permit any third party to rescind any term or provision of, or constitute a default under, any loan, note, indenture, mortgage, deed of trust, security agreement or material contract, license, lease or other agreement to which Buyer is a party; or (iii) to the best of Buyer's knowledge, violate any law, statute, rule or regulation, or any order, writ, judgment, injunction or decree of any court, administrative agency or government body applicable to Buyer.

6.5   **Authorization for this Agreement**. No authorization, approval, consent of, or filing with any governmental department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

6.6   **Financial Capacity**. Buyer has the financial capacity to consummate this Agreement and transactions contained herein.

## ARTICLE VII
## COVENANTS OF SELLER

Seller covenants and agrees with Buyer as follows:

7.1   **Conduct of Business**. Except with the prior written consent of Buyer, and subject to any order of the Bankruptcy Court, from the date of this Agreement through the Closing, Seller will:

(a)   use its best efforts, consistent with requirements of the Bankruptcy Code, to maintain and preserve the Assets;

(b)   continue in full force and effect all existing insurance policies relating to the Business;

(c)   administer the Acquired Assets in compliance with all applicable laws; and

(d)   Buyer shall be allowed to complete a physical inventory of the Acquired Assets prior to the Closing Date.

7.2   **Conduct Outside the Ordinary Course of Business**. Without limiting the generality of Section 7.1, and except as may be approved by the Bankruptcy Court or by

8

written consent by Buyer, from the date of this Agreement through the Closing, Seller will not sell, lease, transfer, or encumber or assign any of the Acquired Assets, tangible or intangible.

**7.3    Access and Due Diligence.**

Upon execution of this Agreement by both parties, Seller will afford Buyer and its agents full, free, and reasonable opportunity and access to investigate and review the books and records of Debtor and investigate the Business during normal business hours or at other agreed times.  Seller shall provide to Buyer copies of all material documents relating to the Business and any additional documents reasonably requested by Buyer within five (5) days of execution of this Agreement by Seller.  Buyer shall be satisfied as to the accuracy of the books and records of Seller with respect to any physical inventory of the Acquired Assets that Buyer undertakes prior to Closing.

**7.4    Employment/Employees.**    Buyer shall have the right, in its sole discretion, from the date hereof, to interview and to offer employment to any or all of the Debtor's employees but shall have no obligation to do so.

**7.5    Release of Liens, Security Interests, and Leases.**    Pursuant to Court Order, Seller will transfer the Acquired Assets to Buyer free and clear of all liens, interests, claims, security interests, and encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code.

**7.6    Delivery of Contracts.** Seller will permit Buyer access to copies of all Assumed Contracts and Seller shall assign to Buyer the Assumed Contracts.

**7.7    Obtaining Sale Order of the Bankruptcy Court.**    Seller shall take all steps reasonably necessary or appropriate to obtain the entry of the Sale Order approving the sale of the Acquired Assets pursuant to the terms of this Agreement by no later than February 4, 2009 in a form reasonably acceptable to Seller and Buyer and as described below.

**7.8    Survival of Covenants.** Each of the covenants set forth in Article VII and the representations and warranties in Article V shall continue in full force and existence after the Closing Date.

**7.9    Upset Bids.**    Buyer shall be entitled, in its sole and absolute discretion, to bid an amount equal to or greater than any offer from a third party purchaser.

**ARTICLE VIII
COVENANTS OF BUYER**

**8.1    Access and Due Diligence.**    In conducting the review of Seller's Business, Buyer will provide Seller at least one (1) business day advanced notice of the time when Buyer intends to conduct its due diligence and for access to Seller's property and records and, further, Buyer's agents, auditors, attorneys, consultants and other authorized representatives will not disrupt or interfere with the Business.

9

8.2    **Survival of Covenants**. Each of the covenants set forth in Article XIII and the representations and warranties in Article VI shall terminate upon the Closing.

# ARTICLE IX
## COVENANTS OF BOTH PARTIES

9.1    **General**. Subject to the terms and conditions of this Agreement, each party will use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary under applicable law to consummate this Agreement, including the execution and delivery of any further instruments or documents that are reasonably requested by Buyer or Seller, or their respective counsel, and parties in interest, or their counsel, to evidence or facilitate the consummation of this Agreement and its related transactions.

9.2    **Taxes and any Other Charges Relating to Sale**. All sales, use, transfer or other taxes, duties, or any other charges or obligations imposed on and/or relating to the sale of the Assets to Buyer under this Agreement shall be paid by Seller in accordance with Bankruptcy Code priorities.

9.3    **Costs and Expenses**. Buyer and Seller shall each bear their own costs and expenses in connection with the negotiation, purchase, and approval of the purchase of the Acquired Assets and any transaction related thereto, including costs and fees associated with their retention of counsel, and neither Buyer nor Seller will have any obligation with respect to costs and expenses incurred by the other in connection herewith.

9.4    **Survival of Covenants**. The covenants set forth in this Article IX shall survive the Closing.

# ARTICLE X
## BANKRUPTCY COURT APPROVAL

10.1    **Bankruptcy Court Approval of Sale Procedure**. Prior to the date of this Agreement, Seller has filed the "Sale Motion" setting forth the following procedures with respect to a proposed sale of the Acquired Assets on February 4, 2009, the date on which Seller seeks to obtain Court approval for such sale and conduct the Closing:

(a)    requesting that the Court fix the time, date, and location of a hearing to approve the sale of the Acquired Assets by Seller pursuant to this Agreement on February 4, 2009;

(b)    fixing the time and date of an auction prior to the sale, at which qualifying higher and better offers may be presented to Seller;

10

(c)    providing that Seller shall not entertain or accept any bid to the Acquired Assets unless such bid complies substantially with all of the following requirements that such initial bid from a third party shall be:

(i)    delivered to counsel for Seller, with a copy delivered to Buyer (at the address for notices provided for in Section 13.4), at least two (2) days prior to commencement of the Auction;

(ii)    made by a bidder that provides satisfactory evidence to the Buyer that it is (A) financially able to consummate the transaction contemplated by such bid and (B) able to consummate the transaction on the date and on the terms contemplated by this Agreement; and

(iii)    is accompanied by a deposit by bank check or wire transfer equal to or greater than $100,000.00; and

(iv)    providing that after any initial overbid made pursuant to the Sale Motion, all further overbids must be made in an auction held pursuant to the Sale Motion, with bidding in increments of at least $50,000.00.

10.2    **Bankruptcy Court's Approval of Sale**.  The Sale Order shall be in a form and content reasonably satisfactory to Buyer.  The Sale Order shall (a) approve the sale of the Acquired Assets to Buyer on the terms and conditions set forth in this Agreement and authorize Seller to proceed with this transaction, (b) include a specific finding that Buyer is a good faith purchaser of the Acquired Assets, (c) state that the sale of the Acquired Assets to Buyer shall be free and clear of all liens, claims, interests and encumbrances of any nature whatsoever to the fullest extent permitted by 11 U.S.C. § 363, and (d) provide for a waiver of the stays contemplated by Fed. R. Bankr. P. 6004(h).

## ARTICLE XI
## CONDITIONS TO CLOSING

11.1    **Conditions to Buyer's Obligations**.  Buyer's obligation to purchase the Acquired Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Buyer may expressly waive the same in writing and in its sole discretion:

(a)    **Covenants**.  Seller shall have complied in all material respects with all of its agreements and covenants contained herein to be performed at or prior to Closing.

(b)    **Accuracy of Representations and Warranties on Closing Date**.  The representations and warranties made herein by Seller in Article V hereof shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

11

(c)     **Deliveries**. Seller shall have delivered to Buyer at the Closing all documents, certificates, and agreements necessary to transfer to Buyer all of Seller's rights and title to and interests in the Acquired Assets.

(d)     **Instruments of Transfer**.  Buyer, or its nominee, shall have received deeds and a bill of sale, and such other duly executed instruments of transfer, conveyance, and assignment, executed by Seller, as is necessary or desirable to effect the transfers, conveyances, and assignments to Buyer of the Acquired Assets as contemplated by this Agreement.  In the event that one or more competing bids are made at the auction for the Acquired Assets and Buyer submits the highest and best bid different from that set forth herein, Buyer shall have an additional three (3) days to provide the cash portion of the Purchase Price to the Seller.

(e)     **Sale Order**. The Sale Order shall have been entered.

11.2  **Conditions to Seller's Obligations**.  Seller's obligation to sell the Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Seller may expressly waive the same in writing and in its sole discretion:

(a)     **Accuracy of Representations and Warranties on Closing Date**. The representations and warranties made herein by Buyer in this Agreement shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(b)     **Deliveries**.  Buyer shall have delivered to Seller at the Closing all fully executed documents and payments required under this Agreement, including but not limited to the Purchase Price.

(c)     **Bankruptcy Court Approval**. The Bankruptcy Court shall have entered an order approving the sale and the implementation, operation, or effect of such order shall have not been stayed.

(d)     **Performance**.  The representations and warranties of Seller contained in this Agreement and all information contained in any exhibit or schedule hereto delivered by, or on behalf of Seller, to Buyer, shall, to the best of Seller's knowledge and belief, be true and accurate when made and on the Closing Date as though then made, except as expressly provided herein. Seller shall have performed and complied with all agreements, covenants and conditions required by this Agreement to be performed and complied with by it prior to the Closing Date.

(e)     **Proceedings and Documents**.  All corporate and other proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in form and substance to Buyer and Buyer's counsel, and Seller shall have made available to Buyer for examination the originals or

12

true, complete and correct copies of all records and documents relating to the Business and affairs of Seller that Buyer may reasonably request in connection with this transaction.

## ARTICLE XII
## TERMINATION

12.1    **Right to Terminate Agreement.** This Agreement may be terminated and the transactions contemplated herein may be abandoned at any time before the Closing and Closing Date (referenced herein as "Termination Date"):

> (a)    by mutual written agreement of Buyer and Seller;

> (b)    by Buyer, in its sole and absolute discretion;

> (c)    by Seller, if any material condition to close has not been satisfied by Buyer or if Buyer fails to comply or perform a material covenant or agreement of this Agreement and Buyer is unable within a reasonable time to satisfy such condition or covenant; or

> (d)    by Buyer or Seller, in writing, if the Closing does not occur by January 30, 2009, provided such terminating party is not in default or breach of this Agreement, and further provided that such terminating party has not taken such action or failed to take such action required under this Agreement, which has been the cause or result in the failure of the Closing to occur on or before such date.

If Buyer is not selected as the winning bidder, this Agreement will automatically terminate on the date the Bankruptcy Court enters an order approving an alternate transaction.

12.2    **Effect of Termination.** Except as otherwise provided under this Article, upon the termination of this Agreement in accordance with this Article, all rights and obligations of Buyer and Seller will terminate without any liability of one party to the other party, except for any liability of Buyer or Seller to the other for breach before termination.

## ARTICLE XIII
## MISCELLANEOUS

13.1    **Risk of Loss.** The risk of loss, damage or destruction to all Acquired Assets before Closing will be with the Seller.

13.2    **Further Assurances.** Each party will, at any time and from time to time after the Closing Date, upon reasonable request from the other party, do, execute, acknowledge and deliver, as appropriate, such further acts, deeds, assignments, transfers, conveyances, assumptions and powers of attorneys as may reasonably be required for the better assigning, transferring, granting, conveying, assuming, assuring and confirming to such other party, or successor and assignee of any of the assets, properties or liabilities to be assigned to it.

13

**13.3   Certain References.**   Whenever the context requires the gender of all words used herein will include the masculine, feminine and neuter. References to Articles, Sections or Subsections will be to Articles, Sections or Subsections of this Agreement unless otherwise specified. The headings and captions used in this Agreement are solely for convenient reference and will not affect the meaning or interpretation of any article, section or paragraph herein, or this Agreement. The terms "including" or "include" will be deemed to mean "including without limitation" and "include without limitation," respectively. Words importing the singular number mean and include, as applicable, the plural number and vice versa. The Exhibits and Schedules are incorporated into this Agreement by reference. All times referenced herein refer to Eastern time.

**13.4   Notices.**   All notices, requests, demands, waivers and other communications required or permitted to be given under this Agreement will be in writing and will be deemed to have been duly given if: (a) delivered personally; (b) mailed by first-class registered or certified mail, return receipt requested, postage prepaid; (c) sent by a national next day or overnight mail or courier service; (d) sent by confirmed facsimile transmission; or (e) sent by confirmed electronic mail. All such notices, requests, demands, waivers and other communication will be deemed to have been received:   (i) if by personal delivery, upon delivery; (ii) if by certified or registered mail, on the third business day after the mailing thereof; (iii) if by next-day or overnight mail or courier, on the business day after such mailing; or (iv) if by confirmed facsimile or electronic mail upon receipt.

|                  |                                          |
|------------------|------------------------------------------|
| If to Buyer:     | M-Heat Investors, LLC                    |
|                  | Attn: Peter J. Jacullo, III              |
|                  | 2550 Middle Road                         |
|                  | Suite 603                                |
|                  | Bettendorf, Iowa 52722                   |
|                  | Facsimile: (563) 359-1926                |
|                  | Email:  pjacullo@comcast.net             |
|                  |                                          |
| with a copy to:  | John T. Gregg, Esq.                      |
|                  | Barnes & Thornburg LLP                   |
|                  | 300 Ottawa Avenue, NW, Suite 500         |
|                  | Grand Rapids, Michigan  49503            |
|                  | Facsimile: (616) 742-3999                |
|                  | Email: jgregg@btlaw.com                  |
|                  |                                          |
|                  | and                                      |
|                  |                                          |
|                  | Warren W. Garden, Esq.                   |
|                  | Block & Garden, LLP                      |
|                  | Sterling Plaza                           |
|                  | 5949 Sherry Lane, Suite 900              |
|                  | Dallas, Texas 75225                      |
|                  | Facsimile: (214) 866-0991                |
|                  | Email:  garden@bgvllp.com                |

14

If to Seller:     Basil Simon, Esq.
          Chapter 7 Trustee
          Simon Stella & Zingas, P.C.
          422 W. Congress Street, Suite 400
          Detroit, Michigan 48226
          Facsimile: (313) 963-4614
          Email: bsimon@sszpc.com

with a copy to:    Stephen Stella, Esq.
          Simon Stella & Zingas, P.C.
          422 W. Congress Street, Suite 400
          Detroit, Michigan 48226
          Facsimile: (313) 963-4614
          Email: sstella@sszpc.com

Any party may give notice, instruction or communication in connection with this Agreement using any other means (including personal delivery, electronic mail, telecopy or ordinary mail), but no such notice, instruction or communication will be deemed to have been delivered unless and until it is actually received by the party to whom it was sent. Any party may change the address to which notices, instructions, or communications are to be delivered by giving the other parties to this Agreement notice thereof in the manner set forth in this Section.

13.5 **Assignment**. This Agreement may not be assigned by Seller or Buyer, except that Buyer may assign any or all of its rights and delegate any or all of its duties under this Agreement to any person that is an affiliate of Buyer, but no assignment will relieve Buyer of its obligations set forth herein. This Agreement will inure to the benefit of, and be binding upon the parties and each of their respective successors, heirs and permitted assigns.

13.6 **Entire Agreement; Amendment; Governing Law**.

(a)  This Agreement, together with the exhibits and any order approving this Agreement, embody the entire agreement and understanding among Buyer and Seller. This Agreement may be amended, modified, waived, discharged or terminated only by (and any consent hereunder will be effective only if contained in) an instrument in writing signed by the party against which enforcement of such amendment, modification, waiver, discharge, termination or consent is sought.

(b)  This Agreement will be construed in accordance with and governed by the laws of the State of Michigan without reference to its choice of law provisions, except as to those matters governed by the Bankruptcy Code.

13.7 **Consent to Jurisdiction**.

(a)  THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED

15

**AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, ANY RELATED AGREEMENTS, OR INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

(b)    Service of any process, summons, notice or document by U.S. registered mail to a party's address set forth in Section 13.4 will be effective service of process of any action, suit or proceeding with respect to any matter to which it has submitted to jurisdiction as set forth above. Buyer and Seller irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. If a court finds that subject matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Eastern District of Michigan, or if such court will not have jurisdiction, then to the appropriate courts of the State of Michigan.

13.8    **Severability**.  Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction as to such jurisdiction, will be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

13.9    **Interpretation**.  This Agreement has been negotiated at arm's length and between parties and their representatives sophisticated and knowledgeable in the matters dealt with in this Agreement, and legal counsel has represented Buyer and Seller. Accordingly, each provision of this Agreement will be interpreted as though the parties equally participated in its drafting and no rule of law or legal decision that would require any ambiguity to be construed against the party that drafted this Agreement will apply. This Agreement will be interpreted in a reasonable manner to affect the purposes of this Agreement.

13.10   **Counterparts**.  This Agreement may be executed by facsimile signature and in any number of counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.

16

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

M-HEAT INVESTORS, LLC

By: _____

Peter J. Tacullo, III, President

"Buyer"


BASIL SIMON, in his capacity as
Chapter 7 Trustee

_____

"Seller"

02/18/2009  13:07  12034399450

# ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is dated and effective as of February 19, 2009 (the "Closing Date"), by and between M-HEAT INVESTORS, LLC, a Delaware limited liability company ("Assignee"), and BASIL SIMON, in his capacity as Chapter 7 trustee for the estate of Micro-Heat, Inc. ("Assignor").

WHEREAS, Assignor and Assignee have entered into that certain Asset Purchase Agreement, dated as of January 9, 2009 (the "Purchase Agreement"). Except as otherwise specifically defined herein, all initially-capitalized terms herein shall have the meanings set forth in the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1. __Assignment__. Effective as of the Closing Date, Assignor hereby assigns to Assignee all of his right, title and interest in and to the Assumed Liabilities.

2. __Assumption__. Effective as of the Closing Date, Assignee hereby assumes, in accordance with their respective terms, the Assumed Liabilities.

3. __Excluded Liabilities__. Assignee does not assume any Excluded Liabilities and, except as specifically set forth in Section 2 above, does not assume any responsibility or liability of Assignor, or of any affiliate, successor or assign of Assignor. Assignee's assumption of the Assumed Liabilities as specifically set forth above shall not enlarge any rights of third parties under contracts or arrangements with Assignee or Assignor or any of their respective affiliates and shall not in any way negate, diminish or otherwise affect any of the representations, warranties and/or covenants made by Assignor in the Purchase Agreement or any document or instrument to which Assignor is a party in connection with the Purchase Agreement.

4. __Conflict__. Nothing contained in this Agreement shall be deemed to supersede, enlarge, diminish or otherwise modify any of the obligations, agreements, covenants, representations or warranties of Assignor or Assignee contained in the Purchase Agreement. If there is any conflict between the terms of this Agreement and the terms of the Purchase Agreement, the terms of the Purchase Agreement will prevail.

5. __Further Assurances__. Assignor and Assignee agree to execute and deliver such further instruments, agreements and assurances, as may be reasonably requested by the other, to evidence and provide for the assignment and assumption as set forth herein.

1

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Closing Date first above written.

ASSIGNEE:                          M-HEAT INVESTORS, LLC, a Delaware
                                   limited liability company

                                   By:_____
                                   Name: Pasquale Jacullo, III
                                   Its:    President


ASSIGNOR:                          BASIL SIMON, in his capacity as Chapter 7
                                   trustee for the estate of Micro-Heat, Inc.

                                   By:_____
                                       Basil Simon

2

## BILL OF SALE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that BASIL SIMON, in his capacity as Chapter 7 trustee for the estate of Micro-Heat, Inc. ("Seller"), for valuable consideration paid by M-HEAT INVESTORS, LLC, a Delaware limited liability company ("Buyer"), as set forth in that certain Asset Purchase Agreement dated as of February __, 2009 (the "Purchase Agreement"), by and between Seller and Buyer, the receipt of which consideration is hereby acknowledged, does hereby grant, sell, assign, transfer and deliver unto Buyer all right, title and interest in, to and under the Acquired Assets (but not the Excluded Assets) free and clear of all liens, claims, encumbrances, and other interests pursuant to Section 363 of the Bankruptcy Code. Except as otherwise specifically defined herein, all initially-capitalized terms herein shall have the meanings set forth in the Purchase Agreement.

TO HAVE AND TO HOLD all and singular said property unto Buyer and its successors and assigns, to their own use and behalf forever.

Seller hereby authorizes Buyer, its successors and assigns, for the benefit and at the expense of Buyer, to institute and prosecute all proceedings which Buyer may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to any of the Acquired Assets, to defend or compromise any and all actions, suits or proceedings in respect of any of the Acquired Assets, and to do all such acts and things in relation thereto as Buyer shall deem advisable, all subject to the requirements, terms and conditions of the Purchase Agreement.

Upon the request of Buyer, Seller shall hereinafter duly execute and deliver or cause to be executed and delivered all further instruments of sale, conveyance, transfer and assignment, and all notices, releases and other documents that may be necessary to sell, convey, transfer, assign and deliver to and vest in the Acquired Assets in accordance with the Purchase Agreement, hereby sold, conveyed, transferred, assigned and delivered or intended so to be.

Nothing contained in this Bill of Sale and Assignment shall be deemed to supersede, enlarge, diminish or otherwise modify any of the obligations, agreements, covenants, representations or warranties of Seller or Buyer contained in the Purchase Agreement. If there is any conflict between the terms of this Bill of Sale and Assignment and the terms of the Purchase Agreement, the terms of the Purchase Agreement will prevail.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale and Assignment, effective as of February 15, 2009.

BASIL SIMON, in his capacity as Chapter 7 trustee for the estate of Micro-Heat, Inc.

By: _____
       Basil Simon

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

MICRO-HEAT, INC.

   Debtor.

_____/

Bankruptcy Case No. 08-65060-TJT
Chapter 7
Hon. Tucker

**ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO (I)
SECTIONS 363(B), 363(F), 363(M) AND 365(A) OF THE BANKRUPTCY CODE AND
RULES 2002(A)(2), 9006(C) AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND
APPROVING BIDDING PROCEDURES**

Upon the Motion Of Basil T. Simon, Trustee of Micro-Heat, Inc. (respectively the
"Trustee") and (the "Debtor"), for entry of an order pursuant to sections 363(b), (f) and (m) and
365(a), of the Bankruptcy Code authorizing the Trustee to sell those assets[1] of Debtor identified
in a Purchase Agreement dated January 9, 2009 (the "Sale Agreement") to M-Heat Investors,
LLC ("Buyer") or the highest bidder therefore ("Sale Motion"); and the Court having considered
the papers submitted in support of the Motion as well as the papers filed in opposition thereto;
and the Court having heard and considered the record of the hearing held on February 4, 2009;
the objections, if any, to the Sale Motion, the Sale or entry of this Order having been withdrawn
or resolved; and the Court being otherwise fully advised in the premises; it is

**ORDERED** as follows:

1.  The Sale Motion is granted in all respects and all objections, if any, to the Sale Motion
and entry of this Order are resolved or have been withdrawn.

2.  The Sale Agreement and the transactions contemplated thereby are hereby approved in all
respects.

3.  Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized to
and shall sell to Buyer or the highest and best bidder therefore, the Acquired Assets on the terms

---

[1] Capitalized terms identified in this Order shall have the same meaning as defined in the Trustee's Motion and the
Sale Agreement.

and conditions set forth in the Sale Motion free and clear of all liens, claims, encumbrances and other interests with same being be transferred to and attach to the proceeds of the sale under the Sale Agreement.

4.    The Trustee is authorized to and shall execute any and all documents necessary to effectuate a transfer of the Acquired Assets to Buyer or to such other bidder who, in the exercise of his reasonable business judgment, the Trustee determines has submitted the highest and best bid.

5.    In the event that any person or entity (as those terms are defined in the Bankruptcy Code) which has filed statements or other documents or agreements evidencing liens on or interests in the Acquired Assets has not delivered to the Trustee prior to the Closing (as such term is defined in the Sale Agreement), in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and other documents for the purpose of documenting the release of all Liens, or other interests which such person or entity has with respect to the Acquired Assets, the Trustee or the Buyer, on behalf of the Trustee, is authorized and directed to execute and file or record such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets.

6.    The Sale as approved by this Order complies with the requirements and conditions of sections 363(b), (f), (m), and 365 of the Bankruptcy Code.

7.    The Trustee is authorized to enter into and implement the Bid Provisions, which terms are approved as set forth in the Sale Motion, and offers to acquire the Acquired Assets at the Auction shall conform with the procedures and conditions set forth in the Sale Motion and such other terms and conditions as are consistent with this order and that may be announced by the Trustee at the Auction.

8.    That no competing bid will be considered unless the party submitting such competing bid has complied with the Bid Provisions. In addition, the deposit required by the Sale Motion shall be applied to the purchase price of the Acquired Assets upon consummation of a sale with such bidder or shall be forfeited in the event such party fails to consummate the contemplated transaction for any reason whatsoever other than the failure by the Trustee to secure an order of this Court approving the sale of the Acquired Assets to such party or its designee.

9.    Upon the Closing, the Buyer shall not be deemed to (i) be the successor of the Debtor, (ii) have, *de facto* or otherwise, merged with or into the Debtor, or (iii) be a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor.

10.    Except to the extent otherwise expressly provided in the Sale Agreement and this Order, at the Closing, the Buyer shall not assume any liability or obligation of the Debtor of any kind, character or description whether known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise and whether the same is required to be accrued on the financial statements of the holder of the liability or obligation.

11.    The Trustee is authorized and directed to execute, acknowledge, and deliver such corporate name change certificates, deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer and take such other action that may be reasonably necessary to perform the terms and provisions of the Sale Agreement, and shall take any other action for purposes of assigning, transferring, granting, conveying, and confirming to the Buyer, or reducing to possession, any or all of the Acquired Assets and to execute such nonmaterial amendments to the Sale Agreement and related agreements as may be required to effectuate the letter and intent of the Sale Agreement and the consummation of the sale.

12.    From and after entry of this Order, neither the Debtor nor any creditor, equityholder or potential bidder shall take or cause to be taken any action which would interfere with the transfer of the Acquired Assets to the Buyer or its assignees or designees in accordance with the terms of this Order.

13.    All persons or entities who are presently, or at the Closing (as defined in the Sale Agreement), in possession of any of the Acquired Assets, or any documents, certificates, registrations or other evidence of title are hereby directed to surrender possession of such Acquired Assets or documents, certificates or other evidence of title to the Buyer or its assignees or designees at or before the Closing.

14.    The Court retains jurisdiction over all matters relating to the transaction contemplated in the Sale Agreement, including matters relating to the title to the Acquired Assets, disputes and claims against the Acquired Assets.

15.    The provisions of this Order authorizing the Trustee to enter into the Sale Agreement and authorizing and directing the transactions contemplated by the Sale Agreement and by this Order

3

shall be self-executing and neither the Trustee nor the Buyer shall be required to execute or file any releases, termination statements, assignments, consents, or other instruments in order to effectuate consummation to implement the foregoing provisions hereof except as provided in the Sale Agreement. Notwithstanding the foregoing, the Trustee, Buyer and all other parties are authorized and directed to take any and all actions necessary and appropriate to effectuate, consummate and implement fully the Sale Agreement and this Order.

16.     This Order is binding upon and inures to the benefit of any successors or assigns of the Debtor or the Buyer, including any trustee appointed in any subsequent case of the Debtor under Chapter 7 of the Bankruptcy Code.

17.     The entry of this Order does not affect General Motors' right to assert a defense of recoupment with respect to the G.M. Claims.

18.     Within seven (7) days after the Auction, and to the extent such Auction is completed upon terms and conditions other than those set forth in the Sale Agreement, the Trustee shall file on an expedited basis a motion to approve the sale on the terms and conditions upon which the Auction was conducted.

.

**Signed on February 04, 2009**

_____ /s/ Thomas J. Tucker _____
**Thomas J. Tucker
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

MICRO-HEAT, INC.

      Debtor.

Bankruptcy Case No. 08-65060-TJT
Chapter 7
Hon. Tucker

_____/

### ORDER SUPPLEMENTING ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO SECTIONS 363(b), 363(f), 363(m) and 365(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 6004

Upon the Motion of Basil T. Simon, Trustee of Micro-Heat, Inc. (respectively the "Trustee and the "Debtor"), for entry of an order supplementing this Court's previous order approving sale of substantially all of the Debtor's assets free and clear of all liens, claims and encumbrances pursuant to sections 363(b), (f) and (m) and 365(a) of the Bankruptcy Code as identified in a Purchase Agreement dated January 9, 2009 (the "Sale Agreement") to M-Heat Investors, LLC (Docket # 155, the "Motion"); and the Court having considered the papers submitted in support of the Motion as well as the papers filed in opposition thereto; and noting that no timely objections to the Motion were filed; and the Court being otherwise fully advised in the premises; it is

ORDERED as follows:

1.      The Motion is granted.

2.      The Sale Agreement except as to price, and the transactions contemplated thereby are hereby approved in all respects and the sale of substantially all of the Debtor's assets as described in the Motion pursuant to the Sale Agreement to M-Heat Investors, LLC is hereby confirmed. Unless expressly set forth herein, this Court's previous order approving the sale of substantially all of the Debtor's assets remains in full force and effect.

**Signed on February 18, 2009**

_/s/ Thomas J. Tucker_
**Thomas J. Tucker**
**United States Bankruptcy Judge**