# **EXHIBIT E**

## (Agreed Order)

GRDS01 414604v1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-------------------------------------------------------------x
                                            :
    In re                                   :
                                            :
MICRO-HEAT, INC.,                           :  Chapter 7 Case No. 08-65060 (TJT)
                                            :
                                  :
                                            :
                                            :
    Debtor.                                 :
                                            :
-------------------------------------------------------------x

**AGREED ORDER BETWEEN (i) THE CHAPTER 7 TRUSTEE OF MICRO-HEAT, (ii)
M-HEAT INVESTORS, LLC AND
(iii) MOTORS LIQUIDATION COMPANY**

This Agreed Order (the "**Stipulated Order**") is entered into by and between (i) Basil T.

Simon, the chapter 7 trustee (the "**Chapter 7 Trustee**") of the above-referenced Debtor

("**Microheat**" or the "**Debtor**"), (ii) M-Heat Investors, LLC ("**M-Heat**"), and (iii) Motors

Liquidation Company (f/k/a General Motors Corporation) ("**MLC**," and, together with the

Chapter 7 Trustee and M-Heat, the "**Parties**").

**BACKGROUND AND RECITALS**

A.    On June 1, 2009, MLC and certain of its subsidiaries filed for chapter 11

protection under title 11 of the United States Code (the "**Bankruptcy Code**") in the United

States Bankruptcy Court for the Southern District of New York (the "**New York Bankruptcy

Court**"). MLC's chapter 11 case bears case number 09-50026.

B.    Microheat commenced a case under chapter 11 of the Bankruptcy Code on

October 13, 2008, in the Bankruptcy Court for the Eastern District of Michigan (the "**Michigan

Bankruptcy Court**"). The case, styled case no. 08-65060, was subsequently converted to a case

under chapter 7 on November 13, 2008.

## The Microheat and General Motors Relationship

C.      Before filing for bankruptcy, Microheat designed, manufactured and sold windshield washer fluid heating systems under the brand name "HotShot" to manufacturers of new cars and light trucks in North America, Australia and Germany, including General Motors Corporation ("GM").

D.      Prior to the Microheat bankruptcy, GM offered the HotShot product as an option on several of its vehicle models.

E.      Through August 31, 2008, Microheat delivered approximately 1.7 million HotShot units to GM.

F.      In early 2008, the National Highway Traffic Safety Administration opened an investigation into reports of under-hood fires in certain GM model vehicles.

G.      GM conducted an internal investigation of the cause of the under-hood fires. In August of 2008, GM concluded that the HotShot units were susceptible to short-circuiting in certain 2006-2008 model year GM vehicles, which caused the under-hood fires.

H.      GM issued a recall of nearly 1 million 2006-2008 model year GM vehicles in order to install an in-line fuse which GM claimed would prevent electrical shorts from causing damage to the vehicles.

I.      Microheat disputes GM's claims that the HotShot units had any safety defect that necessitated GM's recall.

J.      On September 19, 2008, Microheat commenced a lawsuit against GM in the Oakland County Circuit Court of Michigan (the "**Michigan Lawsuit**"), alleging, among other things, that GM defamed Microheat and committed product disparagement by falsely claiming that the HotShot units were defective and were the cause of GM's recall.

K.    Microheat also alleged that GM breached its purchase order contracts with Microheat by (a) refusing to pay Microheat for HotShot units shipped to GM in July, August, and September of 2008, and (b) refusing to pay Microheat certain past due amounts for products, tooling, and obsolescence.

## The Microheat Bankruptcy

L.    On October 13, 2008, Microheat filed for bankruptcy under chapter 11 of the Bankruptcy Code in the Michigan Bankruptcy Court.

M.    On November 13, 2008, Microheat's chapter 11 case was converted to a case under chapter 7, and the Chapter 7 Trustee was appointed.

N.    On February 4, 2009, the Michigan Bankruptcy Court entered an *Order Granting Trustee's Motion for an Order Pursuant to (i) Sections 363(b), 363(f), 363(m) and 365(a) of the Bankruptcy Code and Rules 2002(a)(2), 9006(c) and 6004 of the Federal Rules of Bankruptcy Procedure Authorizing Sale of Substantially all of Debtor's Assets Free and Clear of all Liens, Claims and Encumbrances and Approving Bidding Procedures* [Docket # 150], authorizing the sale of substantially all of Microheat's assets, including the claims it asserted against GM in the Michigan Lawsuit, to M-Heat.

O.    On March 31, 2009, GM filed proof of claim number 67 in Microheat's bankruptcy case in the amount of $21,109,539.90 (the "GM Claim"), which GM alleges represents the amount of damages it suffered as a result of the alleged defects in the HotShot units.

## The General Motors Bankruptcy

P.    On June 1, 2009, GM and certain of its subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code in the New York Bankruptcy Court. On July 10, 2009,

GM consummated the sale of substantially all of its assets to NGMCO, Inc. (n/k/a General

Motors, LLC) ("**General Motors, LLC**") pursuant to that certain Amended and Restated Master

Sale and Purchase Agreement, dated June 26, 2009, as amended and an order of the New York

Bankruptcy Court dated July 5, 2009 [Docket #2968] ("**MSPA**").  Simultaneous with the closing

on the MSPA, GM changed its name to MLC.

Q.      Pursuant to the MSPA, MLC and General Motors, LLC, agreed that MLC would

have the rights to pursue the GM Claim in the Micro-Heat Bankruptcy Case and the right to any

recovery resulting from the GM Claim.

### Trustee's Objection to the GM Claim

R.      On September 2, 2009, the Chapter 7 Trustee in Microheat's bankruptcy case

filed the *Trustee's Objection to Claim Number 67 Filed by General Motors Corporation* [Docket

# 201] ("**Objection to the GM Claim**"), seeking to disallow the GM Claim in its entirety,

maintaining, *inter alia*, that the GM Claim is contingent, unliquidated and unenforceable; that the

GM Claim is not supported by documentation sufficient to permit the Chapter 7 Trustee to make

a determination of its validity or amount; and that GM failed to properly respond to Microheat's

discovery requests in the Michigan Lawsuit.

S.      On October 26, 2009, MLC filed *Motors Liquidation Company's Response to

Trustee's Objection to Claim Number 67 Filed by General Motors Corporation* [Docket # 219],

maintaining, *inter alia*, that the GM Claim constitutes *prima facie* evidence of its validity and

amount; that the GM Claim represents the liquidated amount of GM's damages; that even if the

GM Claim represented contingent or unliquidated amounts, the GM Claim could still not be

disallowed under 11 U.S.C. § 502; that MLC offered to produce the documentation supporting

the GM Claim to the Chapter 7 Trustee; and that the Chapter 7 Trustee's special counsel is in

possession of such documentation.

T.    On November 13, 2009, the Chapter 7 Trustee filed the *Trustee's Reply in Support of Objections to Claim No. 67 Filed by General Motors Corporation* [Docket # 226], maintaining, *inter alia*, that GM is responsible for causing any alleged short circuits in the HotShot units; that the documentation offered by MLC does not evidence any defect in the HotShot units; that GM did not supply M-Heat with the discovery it requested in connection with GM's internal analysis of the under-hood fires; and that GM did not allow M-Heat to access the fire-damaged vehicles and allegedly defective HotShot units.

U.    The Michigan Bankruptcy Court held a hearing on November 18, 2009, in connection with the Chapter 7 Trustee's Objection to GM's Claim and concluded that the automatic stay in MLC's bankruptcy case prevented it from making any determinations regarding the matter.    Accordingly, on November 19, 2009, the Michigan Bankruptcy Court entered an *Order Staying Further Proceedings on the Trustee's Objection to the Claim of General Motors Corporation* [Docket # 227].

### M-Heat's Claim against MLC

V.    On September 30, 2009, M-Heat filed a proof of claim in MLC's bankruptcy case in the amount of $11,404,043.00 ("**M-Heat's Claim**"), which M-Heat alleges represents the amount owed by MLC to Microheat for, among other things, unpaid products, obsolescence and tooling.

W.    On February 23, 2010, the New York Bankruptcy Court in MLC's bankruptcy case entered an *Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation*, which enforces the process set forth in the Alternative Dispute Resolution Procedures (the "**ADR Procedures Order**" and the "**ADR Procedures**") [Docket # 5037].

## AGREEMENT

1. The foregoing Background and Recitals are incorporated as if fully set forth herein.

2. The 14-day stay of entry of this Stipulated Order provided for by Rule 6006(d) of the Federal Rules of Bankruptcy Procedure is waived, and the Stipulated Order shall be effective immediately upon entry by the Court (the "**Effective Date**").

3. The Parties each agree to submit to non-binding mediation under the ADR Procedures Order for a joint resolution of the GM Claim and M-Heat's Claim (together, the "**Claims**"), and the respective objections thereto.

4. Pursuant to Article II.B.2 of the ADR Procedures, M-Heat has proposed and MLC has agreed that the non-binding mediation will take place in Detroit, Michigan.

5. Pursuant to Articles II.A.4 and II.C.1 of the ADR Procedures, M-Heat, in the event that such non-binding mediation does not result in a joint resolution of the Claims, has notifed MLC that it does not agree to submit to binding arbitration (although M-Heat reserves the right to agree to arbitration).

6. In the event that the non-binding mediation does not result in a joint resolution of the Claims, the Claims shall be resolved by the New York Bankruptcy Court, pursuant to Articles II.C.1 and II.E.2 of the ADR Procedures.

7. During the pendency of the non-binding mediation M-Heat shall not be required to file a response to any objection filed by MLC to M-Heat's Claim, and M-Heat shall not lose any of its rights or defenses with respect to M-Heat's Claim by not responding.

8. To the extent the automatic stay in each bankruptcy case poses an impediment to the resolution of the Claims, the automatic stay shall be lifted solely for the purpose of resolving the Claims pursuant to the terms of this Stipulated Order.

9. The lifting of the automatic stay set forth herein shall have no effect as to parties that are not a Party to this Stipulated Order, and the automatic stay shall remain in full force and effect with respect to such other parties and their claims or causes of action, if any, against Microheat and MLC, respectively.

10. This Stipulated Order constitutes the entire agreement between the Parties and supercedes all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof and, except as otherwise expressly provided herein, is not intended to confer upon any other person any rights or remedies hereunder.

11. The undersigned persons represent and warrant that they have full authority to execute this Stipulated Order on behalf of the respective Parties and that the respective Parties have full knowledge of, and have consented to, this Stipulated Order.

12. Neither this Stipulated Order, nor any terms contained herein, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (a) to obtain approval and to enforce this Stipulated Order, (b) to seek damages or injunctive relief in connection therewith, or (c) to prove that the automatic stay has been lifted.

13. Each of the Parties shall bear their own attorneys' fees and costs with respect to the execution and delivery of this Stipulated Order.

14.    This Stipulated Order may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

15.    This Stipulated Order shall be binding upon the Parties hereto and upon all of their affiliates, assigns and successors.

16.    It is acknowledged that each Party has participated in and jointly consented to the drafting of this Stipulated Order and any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

**IT IS ORDERED that the foregoing is approved in all respects and is hereby adopted as the order of this Court.**

**Signed on December 08, 2010**

/s/ Thomas J. Tucker

Thomas J. Tucker
United States Bankruptcy Judge
