David R. Volpe, pro se
240 Berry Glen Ct.
Alpharetta, GA  30022
770-998-7758  (O)
Creditor Claimant
Claim # 62390

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                                                   :
                                                                                    :         **Chapter 11 Case No.**
**MOTORS LIQUIDATION COMPANY, et al,**       :
       **f/k/a General Motors Corp., et al.**             :         **09-50026 (REG)**
                                                                                    :
                                                         **Debtors.**      :         **(Jointly Administered)**
-------------------------------------------------------------x


**OBJECTION TO DEBTORS' 116th OMNIBUS OBJECTION TO CLAIMS**
**(Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)**


TO THE HONORABLE ROBERT E. GERBER,

UNITED STATES BANKRUPTCY JUDGE:


Comes now David Volpe (a/k/a David R. Volpe), creditor and claimant against Motors Liquidation Company ("MLC") (f/k/a General Motors Corporation, "Old GM"), and a retired salaried manager from Old GM, who respectfully files this OBJECTION TO DEBTORS' 116TH OMNIBUS OBJECTION TO CLAIMS.


Relief Requested


Debtors' 116th Omnibus Objection to Claims seeks entry of an order disallowing and expunging certain welfare benefits claims listed on that filing's original Exhibit "A", claims as filed by retired and former salaried and executive employees.  Included on that list is Claim # 62390 in the amount of $157,431.00 filed by David Volpe, Proof of Claim copy attached for reference.  Creditor Claimant Volpe requests the Debtors' proposed

order not be allowed, thereby preserving Creditor Claimant's right to financial consideration for the value of diminished and cancelled welfare and healthcare benefits in retirement.

## Background

Creditor Claimant Volpe spent his entire adult working career at Old GM from age 18 through 50, holding many managerial positions in technical and engineering areas. He initiated, negotiated and accepted an early retirement offer in 2001 that involved leaving Old GM but receiving full salary compensation and benefits from July 2001 through October 2002; then transitioning to retirement pension and benefits starting November 2002. He retired as a Zone Manager from the Service Operations group.

## Debtors argue "Accrued Benefits Have Been Assumed by New GM"

Healthcare benefits provided by New GM in 2010 are significantly different and diminished as compared to those provided in 2009 and earlier. Medical insurance premiums paid by Creditor Claimant Volpe were $1020 more in 2010 than 2009 while the deductible increased from $750 to $5000, over a 6-fold increase, for the same period. Co-pays after the deductible have also more than doubled from 2009 to 2010 and forward. Dental, Vision and Extended Care Hospitalization have been completely eliminated in 2010. GM published documents indicate healthcare costs to GM were reduced by $1360 per covered person from 2009 to 2010 (see the attached Claim for more detail). This significant increase in liability to Creditor Claimant Volpe should not be categorized and concluded as "Accrued Benefits Have Been Assumed by New GM" based on these facts, especially if one is on the "paying end".

## Debtors argue "Benefit Modification Claims Should Be Disallowed As Debtors Had Right to Amend Or Terminate Each Benefit Plan"

2

There is little doubt that many GM documents stated, "GM reserves the right to amend or terminate benefit plans…..", or similar language.   However, the voluntary retirement negotiated by Creditor Claimant Volpe in 2001 should not be subject to changing the terms of the retirement contract "ex post facto".  Changing benefits or any provision of an employment and/or retirement contract is on firm legal ground <u>for future agreements</u> when both parties agree but Old GM being allowed to change the provisions unilaterally after the fact undermines the entire contractual process that American business is founded on.  Part of the standard retirement negotiations was the provision that Creditor Claimant Volpe could never be re-employed by GM.  In the referenced *Sprague v. General Motors Corp.* case, the court stated:

> To vest benefits is to render them forever unalterable.  Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest "must be found in the plan documents and must be stated in clear and express language".

In the case of Creditor Claimant Volpe, the special early retirement was negotiated with the understanding that pension and retirement benefits, and the inability of Volpe to ever be rehired by GM, were contractual obligations of both parties.  Why should Old GM not be bound to their contractual obligations?  Because they patently state they have the right to terminate or amend at will?  If provisions of any contract are allowed to be changed unilaterally, then what value does the contractual process have?  Had Volpe known that GM was to be allowed (in the future) to unilaterally change the provisions without any negotiations, then the voluntary decision to retire may have been very different.

<u>Discussion</u>

The Court is being asked to consider the employment and retirement agreement between Volpe and Old GM, one where professional engineering services were tendered by Volpe for many years in return for a mix of salary compensation and benefits, both in the present during employment and in retirement.  At any time either Volpe or Old GM had

3

the ability to end the employment agreement if the value and/or compensation for the services were not agreeable to either party.  Retirement benefits are an integral part of one's compensation package.  If the legal system does not uphold the ability to negotiate a contractual agreement regarding benefits in the future (retirement), then why should anyone have faith in the legal system to uphold any contractual obligation?  The very foundation of American business is predicated on this fact.  Had Creditor Claimant Volpe known GM had the ability to walk away from these contractual obligations, he would not have initiated, negotiated and accepted an early retirement package, especially one that prevents him from ever accepting re-employment with GM in the future.

## Summary

In summary, Creditor Claimant Volpe respectfully asks the Court to deny <u>DEBTORS' 116th OMNIBUS OBJECTION TO CLAIMS</u> and preserve his claim to allow entitlement to the retirement welfare benefits he worked so hard to earn.

Creditor Claimant reserves the right to modify, revise, or supplement the above referenced figures and calculations.

Attach: (1)

Dated:  January 24, 2011                    Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　David R. Volpe, pro se
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　240 Berry Glen Ct.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Alpharetta, GA  30022
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　770-998-7758  (O)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　dvolpe@netzero.net

(GM Bankruptcy – Benefits Claim – Objection 20110124.doc)

4

# OBJECTION TO DEBTORS' 116th OMNIBUS OBJECTION TO CLAIMS

## CERTIFICATE OF SERVICE

I hereby certify that hard copy versions of the above and foregoing have been delivered or served upon the following via U.S. Postal Service with adequate first-class postage affixed, mailed January 25, 2011. Two originals were sent to the Court via overnight delivery service on the same date.

Two originals sent via Overnight Delivery:
Clerk of the Court
Honorable Judge R.E. Gerber
U.S. Bankruptcy Court for the
   Southern District of New York
One Bowling Green
New York, NY  10004

Copies via USPS:

1)  Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);
2)  Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Ted Stenger);
3)  General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.);
4)  Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.);
5)  United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.);
6)  Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.);
7)  Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.);
8)  Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.);
9)  U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.);
10)  Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.)
11)  Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.);
12)  Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.);

_____
David R. Volpe