HEARING DATE AND TIME: February 9, 2011 at 9:45 a.m.
OBJECTION DEADLINE:  February 4, 2011 at 4:00 p.m.  (By Agreement)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
H. Slayton Dabney
Scott Davidson

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

**RESPONSE BY GENERAL MOTORS LLC TO**
**MOTION OF THE TPC LENDERS FOR AN ENTRY OF AN**
**ORDER (I) INITIATING VALUATION PROCEEDINGS IN**
**ACCORDANCE WITH THE SALE ORDER, AND (II) ESTABLISHING**
<u>**A SCHEDULE WITH RESPECT TO THE VALUATION PROCEEDINGS**</u>

NYC_IMANAGE-1230788v4

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this response ("**Response**") to the *Motion of the TPC Lenders for an Entry of an Order (I) Initiating Valuation Proceedings in Accordance with the Sale Order, and (ii) Establishing a Schedule with Respect to the Valuation Proceeding* [Docket No. 8616] ("**Motion**") filed by Wells Fargo Bank Northwest, N.A. ("**Wells Fargo**"), as agent to the TPC Lenders.[1] In support of this Response, New GM respectfully represents as follows:

1. The TCP Property that is the subject of the Motion consists of real estate and real estate fixtures located at two facilities previously owned by General Motors Corporation ("**Old GM**") -- a transmission manufacturing plant in White Marsh, Maryland and a service parts distribution center in Memphis Tennessee. Pursuant to the Sale Order, the TPC Property was transferred from Old GM to New GM free and clear of all liens, claims, interests and encumbrances, including the TPC Lenders' secured liens and claims. *See* Sale Order, ¶ 36. Under the Sale Order, as adequate protection for the TPC Lenders' secured claim, New GM placed $90.7 million in the TPC Escrow Account (as defined in the Sale Order). *See id*. at ¶ 37. If the fair market value of the TPC Property turns out to be less than $90.7 million, the Sale Order provides that the balance remaining in the TPC Escrow Account after satisfying the secured claim of the TPC Lenders is to be returned to New GM. *See id.* at ¶ 39.

2. As stated in the Motion, New GM and the TPC Lenders engaged in negotiations regarding the fair market value of the TPC Property as of the Commencement Date in order to reach a consensual arrangement for the disbursement of the TPC Escrow Account, which would

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

also fix the secured and unsecured claims of the TPC Lenders in accordance with the parameters of the Sale Order.[2] New GM agrees with Wells Fargo that those negotiations are now at an impasse and that judicially supervised proceedings are necessary to move towards resolution of this dispute. While the Sale Order does provide that the TPC Lenders can initiate a "valuation hearing conducted by the Court" to determine the fair market value of the TPC Property, New GM believes that the most efficient way to proceed at this juncture is not to immediately undertake an expensive and time-consuming valuation hearing, with the attendant discovery and subsequent evidentiary hearing. Instead, New GM believes that a threshold issue exists that, once resolved, could facilitate an expeditious, consensual resolution of this matter.

3. The threshold issue that is ripe for the Court to consider is the appropriate valuation methodology to use to determine the value of the TPC Property. The Sale Order clearly provides that the "TPC Lenders shall have an allowed secured claim in a total amount equal to the *fair market value* of the TPC Property on the Commencement Date under section 506 of the Bankruptcy Code . . . ." Sale Order, ¶ 36 (emphasis added). "Fair market value" is defined by Blacks Law Dictionary as the "price that a seller is willing to accept and a buyer is willing to pay in the open market and in an arm's-length transaction." *Black's Law Dictionary* 1587 (8th ed. 2004). In light of the language used in the Sale Order and in preparation for the negotiations with the TPC Lenders regarding the value of the TPC Property, the TPC Property was appraised utilizing the "fair market value" method.

4. As stated in the Motion, the TPC Lenders also commissioned appraisals for the TPC Property. The TPC Lenders' appraisals contain a value for the TPC Property utilizing a "fair market value" method. However, the TPC Lenders' appraisals also contain a value for the TPC Property utilizing a so-called "Use Value" or "Value in Use" method. "Value in Use" is

---

[2] Under the Sale Order, the TPC Lenders agreed to cap their deficiency claim at $45 million.

defined in *The Dictionary of Real Estate Appraisal, Fourth Edition* at page 306, published by The Appraisal Institute, as:

> The value a specific property has to a specific person or a specific firm as opposed to the value to persons or the market in general. Special purpose properties such as churches, schools and public buildings, which are seldom bought and sold in the open market, can be valued on the basis of value in use. The value to a specific person may include a sentimental value component. The value in use to a specific firm may be the value of a plant as a part of an integrated multiplant operation.

The "value in use" method is markedly different then the "fair market value" method prescribed by the Sale Order.

5.    New GM believes that the language of the Sale Order is clear; the "fair market value" method -- and no other valuation standard -- is to be used to value the TPC Property in order to disburse the TPC Escrow Account proceeds and thereby fix the secured and unsecured claims of the TPC Lenders in accordance with the parameters of the Sale Order.  The TPC Lenders have taken the position, to date, that the separate and distinct "value in use" method should be considered to value the TPC Property.  New GM disputes that this different valuation methodology is relevant.  Simply put, it is contrary to the agreement reflected in the Sale Order. Moreover, using a valuation methodology other than "fair market value" is inconsistent with a sale transaction, which is what occurred in the bankruptcy case.

6.    If the "fair market value" method is used, there is a meaningful difference between New GM's value and the TPC Lenders' value for the TPC Property, but a "delta" which New GM believes is likely negotiable.  Stated otherwise, assuming the Court determines that this valuation method is the only one that can be used to value the TPC Property, New GM hopes that the parties can, on their own, consensually resolve their differences and come to an

3

agreement regarding the value of the TPC Property without the cost and expense of a formal valuation proceeding.

7. However, if the TPC Lenders' "value in use" method is used, the gap between New GM's value (utilizing the "fair market value" method) and the TPC Lenders' value grows by 300%.

8. In the unlikely event that the Court ultimately determines that it is appropriate to utilize the "value in use" method, New GM will have to re-appraise the TPC Property using this approach. Once the new appraisals are complete, the parties, again on their own, may be able to consensually resolve their differences and come to an agreement regarding the value of the TPC Property without the need for a formal valuation proceeding. In any event, resolving the valuation methodology issue first will streamline the dispute, and may very well obviate the need for further Court intervention.

9. To now establish a comprehensive schedule for determining the value of the TPC Property, including establishing a briefing schedule, discovery deadlines and an evidentiary hearing date, would be an inefficient use of both the parties' and the Court's time and resources. Conversely, resolving the relatively straight-forward issue regarding the appropriate valuation methodology to use to value the TPC Property will be much less time-consuming and expensive, and could facilitate a prompt resolution of the dispute between the parties.

10. Accordingly, instead of establishing procedures to conduct a full-blown valuation hearing, with fact and expert discovery, New GM believes it would be more appropriate, efficient and less expensive to establish a briefing schedule regarding the threshold valuation methodology issue. New GM believes that the plain language of the Sale Order should govern and that no discovery is needed to resolve this issue. However, if the TPC Lenders believe that

4

discovery is needed with respect to the valuation methodology issue and the Court agrees, New GM believes an appropriate schedule can be negotiated between the parties.  Proceeding in this manner will streamline the process, conserve the resources of both the parties and the Court and assist in the prompt resolution of the issues between the parties.

WHEREFORE, New GM respectfully requests that the Court (i) deny Wells Fargo's request to establish a schedule for a full valuation hearing concerning the TPC Property; (ii) establish a schedule for the Court to resolve the threshold issue concerning the appropriate valuation methodology to use to value the TPC Property; and (iii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
February 3, 2011

                KING & SPALDING LLP

                By: /s/ Arthur Steinberg
                     Arthur Steinberg
                     H. Slayton Dabney
                     Scott Davidson
              1185 Avenue of the Americas
              New York, NY  10036
              (212) 556-2100

              *Counsel to General Motors LLC*