# EXHIBIT B
# PART 4

Detach along this edge and return in the reply envelope.

16512 (REV. 8-77)

SEARS                    SEARS

Stanley Stasko                              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

                                            8-23-79

Stanley R. Stasko
Fabrication    G.M. Engineering Staff, Warren, Mich
of test
devices        8-78        8-79
        Summer job only
              x
          9/7/78        8/14/79
Co-op Student, then as Learner-Lab Aide
        Special Separation - termination of
    x            temporary summer employment **
    Yes              Yes

              No          No

                                    E.M.Poppleton
**Previous to his temporary summer assignment, Mr. Stasko was a high school co-op student.

  x  _____                E. M. Poppleton, Staff Assistant
                                  Tech Center Personnel Admin.

(REV. 6-72)

# MICHIGAN EMPLOYMENT SECURITY COMMISSION
## 1185 Monroe, Dearborn, MI 48124

O. No. 07-9

### REQUEST FOR INFORMATION RELATIVE TO POSSIBLE
### INELIGIBILITY OR DISQUALIFICATION

TO: EMPLOYER...... **G.M. ENGINEERING STAFF** 

RE: CLAIMANT.... **STASKO, STANLEY**

**12 Mile & Mound**

S.S. No. ..... **381 68 1710**

NUMBER AND STREET

DEPT. and

**Warren, MI**

BADGE No. ........................

CITY-STATE-ZIP CODE

The claim for unemployment benefits filed by this claimant is being investigated because of a possible ineligibility or disqualification Please answer the specific question(s) listed below and in addition, furnish any pertinent information which you believe would be helpful in the proper disposition of the issue(s) involved. If necessary, use the reverse side of this form.

You are required to complete and return this form within seven days even though you are of the opinion that the claimant should not be dis qualified. If a reply is not received within seven days, a determination will be made on the basis of available facts. One copy of this form may be retained for your files.

**What was the reason for claimant's separation?**

DATE........................ **8/X21/79** ................................ ...... **L. Lau/jf**................

Month      Day      Year

Employment and Claims Interviewer

### EMPLOYER'S REPLY

Claimant's First Day Worked: ...... **9-7-78** ....... Last Day Worked: ... **8-14-79** ....... Date of Removal From Payroll: ...... **8-14-79** ....

Reason for Claimant's Separation: ......... **Mr. Stasko was given a special separation at the conclusion of his** .................
(Please explain)

**temporary summer assignment and is planning on starting college.  Previous to his**

**temporary summer assignment, Mr. Stasko was a high-school co-op student.**

**Engineering Staff, General Motors Corporation**

Employer's Name

By ................................................................

Authorized Signature

**8-28-79**

**Personnel Staff Assistant**

Date ..............................

Month      Day      Year

Title

IMPORTANT:  Mail to the Branch Office of the Commission at the address entered at top of this Form.

784

# GENERAL MOTORS CORPORATION
## EMPLOYMENT OF SALARIED PERSONNEL

UNIT Engineering Staff
LOCATION Warren, Michigan

(TEMPORARY)

| | DEPT. NO. | REG. NO. | INCR. | REPL. |
|---|---|---|---|---|
| | I-11 | 1289S | X | |

| | CISCO NO. | SOC. SECURITY NO. | DEPT. NO. | PREFIX | FIRST NAME | MIDDLE NAME | LAST NAME | SUFFIX | BIRTHDATE | SERVICE DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| CARD A 01 | 10001 | 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 | I-11 | Mr. | Stanley | R. | Stasko | | 6-6-61 | 9-7-78 |

| | HOUSE NO. | STREET NAME & APT. NO. | CITY | ST. | ZIP | SUPPL. PYMNT. |
|---|---|---|---|---|---|---|
| CARD C 02 | 4450 | 52nd | Detroit | MI | 48210 | C 07 |

INTERNAL ACTIVITY CODE

9I00

| | STATUS CHANGE | STATUS CHANGE DATE | STATUS OF EMPLOYMENT | SEX | MAR. STAT. | EXMPT. STAT. | CITIZEN | GROUP CONTROL | GENERAL LEDGER | SUB LEDGER | GM POSITION CODE | LOCAL POSITION CODE | BURDEN CENTER | PAY. FRED. | INDICATOR | SUPERVISOR | GMI STUD. YR. | VISATYPE | VETERAN | DIS. VET. | VIET. VET. | DIS. VIET. VET. | DISAD. YTH. | MESC. REF. | NAB REP. | HANDICAPPED | SUMMER | SOURCE | HIGHEST DEGREE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CARD A 03 | HC | 9-7-78 | PS | M | S | N | I | | | | | | | | | | | | | | | | | | | Y | | LU | |

| | CARD | INDICATOR | SUPERVISOR | | AREA OF WORK | AAP REP. CODE | EDUC. LEVEL | MINORITY GP. | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CARD | C 35 | | | | 58 | ES | | 3 | | |

| | SALARY CHANGE AMOUNT | EFFECTIVE DATE | SALARY MAX/MIN PER DIEM | | | |
|---|---|---|---|---|---|---|
| CARD A 03 | | 9-7-78 | PER DIEM | | | |

| | EDUCATION EFFECT DATE | EDUC. LEVEL | EDUCATION COLLEGE DEGREE YR. | COLLEGE MAJOR | COLLEGE MIN. |
|---|---|---|---|---|---|
| CARD H 08 | 6-1-78 | 11 | | E00 | |

| | SALARY MINIMUM | SALARY MAXIMUM | | | | |
|---|---|---|---|---|---|---|
| CARD A 04 | | | $15.01* | *Based on a 3.8 hour day | | |

POSITION TITLE: Cooperative Student

GM POSITION CODE: 2E0(30)

LOCATION: 2130

| | POSITION DATE EFFECTIVE | |
|---|---|---|
| CARD C 05 | 9-7-78 | |

PREVIOUS EMPLOYMENT WITH GENERAL MOTORS

| DIVISION AND LOCATION | POSITION | REASON FOR LEAVING |
|---|---|---|
| None | | |

| FROM MO/DAY/YR | TO MO/DAY/YR | |
|---|---|---|
| | | |

APPROVED (NOT REQUIRED FOR GM TRANSFERS)

SIGN YOUR NAME EXACTLY AS ABOVE

ALL CARDS

WHITE – EMPLOYEE FILE (VIA SAS)    YELLOW – LOCAL UNIT    BLUE – ADVANCE COPY    J – CHRON    PINK – EMPLOYMENT

GP-017
Rev. 5-76

March 1,1983

Jann Dagg
G.M. Tech. Center
Personnel Placement
Engineering North Bldg.
Warren,Michigan 48090

Dear Ms. Dagg:

        It has come to my attention, through the placement office at
Lawrence Institute of Technology, that General Motors is looking for a
few competitive students to work on engineering assignments during the
summer of 1983. Please accept my resume as my application to this
interesting and challenging program.
        As my resume indicates, I am very interested in System Design and
Development- the hardware and/or software aspects. And by June,1983, I
will have completed several courses,(see resume), which have helped
me to prepare for my future career.
        By June,1983, I will be four courses short of my Electrical
Engineering Degree- three Humanities and one Thermodynamics course.
I feel the summer program at General Motors would be an excellent way
for me to prove my skills in my field of interest.
        If you have any further questions or if an interview can be
arranged, please do not hesitate to call me at home anytime-(313) 842-7802.

Sincerely,

Stanley R. Stasko

May 10,1983


Mr. Leo Perazza
Personnel Placement
Engineering Staff North
G. M. Tech. Center
Warren,Michigan 48090


Dear Mr. Perazza:

It has come to my attention, by reading automotive journals, that General Motors is applying state-of-the-art technology (using Microprocessor controlled systems) in its products and its practices. I would like to become part of this interesting and challenging endeavor of General Motors.

While attending Lawrence Institute of Technology, I have concentrated my studies in Electrical Engineering- with a strong Math and Computer Science background. I am very much interested in System Design and Development pertaining to Microprocessors and/or Control Systems. By June 1983, I will have completed several courses in Digital Circuit Design, Electronic Circuit Design, Feedback Control Systems, Microprocessors, and several Computer Science courses in software programming. With this background, and my competitive spirit, I feel I can meet the challenges General Motors has to offer.

Please except my resume as my application to meet the challenges General Motors has to offer. If there is any other information that is needed, or if you have any questions, please contact me at home (842-7802).


Sincerely,

Stanley R. Stasko

Stanley R. Stasko
4450 52nd. Street
Detroit,Michigan 48210
(313) 842-7802


Objective:    Immediate Goal- Entry level work in System Design and Development.
              (Applied to Microprocessors and/or Control Systems)

              Long Term Goal- Management position in System Design and Development.

Education:    1)Bachelor of Science in Electrical Engineering (Fall,1983)
              2)Bachelor of Science in Math and Computer Science (June,1984)
              Lawrence Institute of Technology
              G.P.A. in major field 3.75, overall 3.75 (A=4.00)

Qualifications: Courses completed by June,1983:
              Microprocessors; Electronic Circuits 1,2,and3; Digital Circuit
              Design 1,2; Feedback Control Systems 1; Computer Science 1,2
              (Assembler, and Simulation and Analysis Techniques); Simulation
              Techniques.

              Member of Tau Beta Pi (National Engineering Honor Society)

Work Experience: Berti Construction Co., Orlando,Florida
              Laborer (Local #517)
              Maintainance and preparation of exhibition displays in the World
              of Motion at the EPCOT Center.
              Full-time 6/82 to 9/82

              Sears Roebuck and Co., Fairlane Town Center, Dearborn,Michigan
              Sales person in the Paint and Electrical Department.
              Part-time 8/79 to 5/82

              General Motors Co., Engineering Staff, Warren,Michigan
              Fabrication and calibration of analog and relay controlled test
              equipment for emission tests.
              Part-time 9/78 to 6/79
              Full-time 6/79 to 9/79

Personal Data: Health:Excellent
              Willing to relocate

References:   References and other information available upon request.

GM 1416
5-76
PRINTED U.S.A.



GENERAL MOTORS CORPORATION

## APPLICATION FOR EMPLOYMENT

GENERAL MOTORS IS AN EQUAL OPPORTUNITY EMPLOYER

PRINT NAME IN FULL   Staska (LAST)   Stanley (FIRST)   Robert (MIDDLE)   SOCIAL SECURITY NO. 381 - 68 - 1710

OTHER NAME(S), IF ANY, UNDER WHICH YOU HAVE WORKED OR ATTENDED SCHOOL

POSITION DESIRED:   FIRST CHOICE  Entry Level Work in System Design and Dev   YEARS EXPERIENCE
SECOND CHOICE  Digital Circuit Design and/or Software Eng   YEARS EXPERIENCE

EMPLOYMENT DESIRED: PERMANENT ✓  TEMPORARY   SUMMER   DATE AVAILABLE TO START WORK  7-18-83   WILLING TO WORK ANY SHIFT?   YES ✓  NO

### PERSONAL DATA

PRESENT ADDRESS  4450 S 2ND Street (STREET ADDRESS)   Detroit (CITY)   Michigan (STATE)   48210 (ZIP CODE)   TELEPHONE NO. 842-7802

PERMANENT ADDRESS  Same as Above (STREET ADDRESS)   (CITY)   (STATE)   (ZIP CODE)   TELEPHONE NO. ___   ALTERNATE TELEPHONE NO. ___

ARE YOU A CITIZEN OF THE UNITED STATES?  Yes   IF YOU ARE NOT A U.S. CITIZEN, DO YOU HAVE THE LEGAL RIGHT TO REMAIN PERMANENTLY IN THE U.S.?

HAVE YOU EVER BEEN CONVICTED OF A MISDEMEANOR OR FELONY?   YES ___  NO ✓  IF SO, COMPLETE THE FOLLOWING: (Do Not Include Minor Traffic Violations)

DATE | OFFENSE | PLACE | DISPOSITION

### U.S. MILITARY SERVICE

BRANCH OF SERVICE  N/A | FROM | TO | RANK OR RATING | TYPE OF DISCHARGE

### EDUCATION

| INSTITUTION | NAME AND LOCATION OF SCHOOL | NO. OF YEARS ATTENDED | MAJOR FIELD OF STUDY | DEGREES AWARDED |
|---|---|---|---|---|
| HIGH SCHOOL | Cass Technical Detroit, Michigan | 3 | Electronics | Dip. |
| COLLEGE | Lawrence Institute of Technology Southfield, Michigan | 4 | Electrical Engineering | B.A. |
| OTHER TRAINING | | | | |

EXPER...E

HAVE YOU EVER WORKED FOR GENERAL MOTORS?   YES ✓   NO _____

(PLEASE LIST ALL PREVIOUS EMPLOYMENT AND BEGIN BY LISTING YOUR LAST OR PRESENT EMPLOYMENT FIRST)

| EMPL'T DATES FROM | EMPL'T DATES TO | COMPANY NAME AND LOCATION | POSITION | WAGE OR SALARY | STATE DUTIES CLEARLY AND BRIEFLY | REASON FOR LEAVING |
|---|---|---|---|---|---|---|
| 6-82 | 9-82 | Busti Construction Co. Orlando Florida | Laborer | $7.50/hr | Maintainance and preparation at exhibition displays | School started in Fall |
| 8-29 | 5-82 | Sears Rockwit t.Co. Dearborn Mich. | Sales Clerk | $4.05/hr | Sales of paint and electrical goods | Opportunities in Florida |
| 8-78 | 9-79 | General Motors Co. E.S. Warren, Michigan | Field Tech. | $6.05/hr | Fabrication and calibration of test equipment | School started in Fall |
| | | | | | | |
| | | | | | | |

IN APPLYING HERE FOR EMPLOYMENT IT IS UNDERSTOOD GENERAL MOTORS RESERVES THE PRIVILEGE OF CONTACTING PAST EMPLOYERS REGARDING REFERENCES, MAY WE ALSO CONTACT YOUR PRESENT EMPLOYER AT THIS TIME?   YES ☑   NO ☐

ARE THERE ANY ADDITIONAL COMMENTS YOU WOULD CARE TO MAKE REGARDING YOUR EXPERIENCE OR SPECIAL SKILLS?

NONE

WHY ARE YOU INTERESTED IN EMPLOYMENT WITH GENERAL MOTORS?

Interested in applying State-of-the-art technology in System Design and Development

WHAT DO YOU CONSIDER YOUR GREATEST QUALIFICATIONS?

1) Ability to work with others effectively
2) 100% effort on all assigned tasks
3) Competitive Spirit

I HEREBY REPRESENT THAT EACH ANSWER TO A QUESTION HEREIN AND ALL OTHER INFORMATION OTHERWISE FURNISHED IS TRUE AND CORRECT. I FURTHER REPRESENT THAT SUCH ANSWERS AND INFORMATION MAY AT MY OPTION BE TREATED WITH RESPECT TO THE QUESTION OR SUBJECT TO WHICH THE ANSWER OR INFORMATION RELATES AS CONFIDENTIAL AND I FULL AND COMPLETE DISCLOSURE. I AGREE THAT IN THE EVENT THAT IT WILL SUBJECT ME TO DISCHARGE AT ANY TIME. IN THE EVENT THAT I AM EMPLOYED BY GENERAL MOTORS, I AGREE TO COMPLY WITH ALL OF ITS ORDERS, RULES AND REGULATIONS. I HEREBY AUTHORIZE MY FORMER EMPLOYERS TO GIVE ANY INFORMATION REGARDING MY EMPLOYMENT WITH THEM, AND IN ADDITION, TO FURNISH ANY OTHER INFORMATION THEY MAY HAVE CONCERNING ME.

APPLICANT'S SIGNATURE _Stanley T. Oleski_   DATE 6-2-83

(THIS APPLICATION WILL BE RETAINED FOR ONE YEAR FROM DATE FILED).

RECORD OF APPLICATION, REFERRALS, DISPOSITION, ETC.

DATE INTERVIEWED _____   INTERVIEWER _____

BCC:

L. Ghofulpo

33

June 15, 1983

Mr. Stanley R. Stasko
4450 52nd Street
Detroit, MI 48210

Dear Mr. Stasko:

This comes as a follow-up of our phone conversation during which I extended to you an invitation to join the professional staff of our Advanced Product and Manufacturing Engineering Staff.

Everyone with whom you spoke is most enthused about the prospects of your joining us. It is felt that you can make an outstanding contribution to our efforts. In turn, I know that Advanced Product and Manufacturing Engineering Staff would provide you with a working environment you would find both stimulating and rewarding. Should you accept our invitation you would be classified as an Associate Engineer and receive compensation at the rate of $28,000.00 per annum. This includes a base salary and the Cost of Living Allowance (COLA) that prevails at the time you report.

Salary is certainly important. However, it does not represent the total compensation one receives as a member of the General Motors family. I'm speaking, of course, of our excellent benefit program as outlined in the benefit booklet. One not mentioned in the booklet is your opportunity to purchase a General Motors automobile at dealer cost as soon as you come on the payroll.

Both personally and professionally, I hope you find the above acceptable in that I am certain it would lead to a long and mutually profitable association. If you have any questions, please do not hesitate to call me at 575-8007.

Sincerely,

Larry E. Ott
Staffing Representative

LEO:yd

4450 52nd Street
Detroit,Michigan 48210


Mr. Larry E. Ott
Technical Staffs Personnel
General Motors Corporation
General Motors Technical Center
Warren,Michigan 48090


Dear Mr. Ott:

I am very pleased to accept your offer of Associate Engineer
as outlined in your letter of June 15, 1983. I realize I must first pass
the physical examination on my first day of work on July 18, 1983, and
I will receive a compensation rate of $28,000.00 per annum.

I look forward to meeting the challenges the Advanced
Product and Manufacturing Engineering Staff has to offer, and I shall
make every attempt to fulfill your expectations.


Sincerely,

Stanley R. Stasko

# GENERAL MOTORS CORPORATION
## EMPLOYMENT OF SALARIED PERSONNEL

H79  COLS 73-79  313 842-7802

| ALL CARDS | CISCO NO. | SOC. SECURITY NO. | DEPT. NO. | REQ. NO. | #INCR. | REEL | UNIT | APMRS |
|---|---|---|---|---|---|---|---|---|
| | 10001 | 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 | F161 | M-1210S | X | | LOCATION | Warren, MI |

| CARD | PREFIX | FIRST NAME | MIDDLE NAME | LAST NAME | SUFFIX | BIRTHDATE | SERVICE DATE |
|---|---|---|---|---|---|---|---|
| A 01 | Mr. | Stanley | R. | Stasko | | 06-06-61 | 07-18-83 |

| CARD | HOUSE NO. | STREET NAME & APT. NO. | CITY | ST. | ZIP | SOURCE | HIGHEST DEGREE | SUPPL. PYMNT. |
|---|---|---|---|---|---|---|---|---|
| C 02 | 4450 | 52nd Street | Detroit | MI | 48210 | LU B | | C 07 |

### INTERNAL ACTIVITY

| CARD | STATUS CHANGE | STATUS CHANGE DATE | SEX | MAR. STAT. | EXMPT. STAT. | CITIZEN | GROUP CONTROL | GENERAL LEDGER | SUB LEDGER | BURDEN CENTER | PAY. FREQ. | INDICATOR | SUPERVISOR | VISATYPE | VETERAN | DIS. VET. | VIET. VET. | DIS. VIET. VET. | DISAD. | DISAD. YTH. | MESC. REF. | NAB REP. | HANDICAPPED | SUMMER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CARD | HN | | RA M S N | | | | I AP | 9700 | | | | P | C 35 | | | | | | | | | | |

| CARD | EFFECTIVE DATE | SALARY CHANGE AMOUNT | SALARY CHANGE TYPE | SALARY MONTHLY BASE | GM POSITION CODE | LOCAL POSITION CODE | LOCATION | DEPT. NO. | AREA OF WORK | AAP REP. CODE | MINORITY GP. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| A 04 | 07-18-83 | | | $1,950.00 | 5E35 | 2130 | F161 | 03 | MD | EE00 | 2 |

| CARD | POSITION DATE EFFECTIVE | SALARY MINIMUM | SALARY MAXIMUM | POSITION TITLE | GMI STUD. YR. SUPERVISOR | EDUCATION EFFECT DATE | EDUC. LEVEL | COLLEGE. | GRO. HIGHEST DEGREE | EDUCATION DEGREE YR. | COLLEGE MAJOR | COLLEGE MINOR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C 05 | 07-18-83 | | | Associate Engineer | H 08 | 07-01-83 | 16 | LRRN | B | 1983 | 012 | |
| | | | | | H 08 | | | | | | | |
| | | | | | H 08 | | | | | | | |

APPROVED (NOT REQUIRED FOR GM TRANSFERS)

SIGN YOUR NAME EXACTLY AS ABOVE

### PREVIOUS EMPLOYMENT WITH GENERAL MOTORS

| FROM MO/DAY/YR | TO MO/DAY/YR | DIVISION AND LOCATION | POSITION | REASON FOR LEAVING |
|---|---|---|---|---|
| 9-7-78 | 8-14-79 | Physics Dept JPMR Tech Center Warren Mich | Technician | Special Separation |

WHITE – EMPLOYEE FILE (VIA SAS)    YELLOW – LOCAL UNIT    BLUE – ADVANCE COPY    CHRON    PINK – EMPLOYMENT

E002
-76

**PERSONAL INFORMATION SHEET**

(Pls. Print)

Name _Stanley Robert Staske_    Soc. Security No. _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_    SINGLE _✓_
    (First/Middle Initial/Last)

Address _4450 52ND Street_    City, State, Zip _Detroit, Mich. 48210_    MARRIED _____

Phone No. _842-7802_    Date and Place of Birth _Detroit 6-6-61_    SEPARATED _____
        (Must furnish a copy of birth certificate)

If not a citizen of the United States:                                    DIVORCED _____
Alien Reg. No. _____    Date and Place Issued: _____

Name, relationship and phone number of person to notify in case of emergency:

_Sophie Staske  4450 52ND  Detroit, Michigan  48210_

**(PLEASE FURNISH A COPY OF COLLEGE TRANSCRIPT)**

| Education:  (List all educational training) Name and Location of School | Course Program | Date Graduated | Degree Obtained | No. Years Attended |
|---|---|---|---|---|
| _Lawrence Inst. of Tech_ | _Electrical Engineering_ | _7-15-83_ | _Bachelor_ | _4_ |
| | | | | |
| | | | | |

Are you a Registered Engineer?    Yes ☐    No ☒    Year _____    State _____

List eligible dependents for health insurance coverage:    (If additional space required use reverse side)

| Name | Soc. Security No. | Birth Date | Relationship |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

** If covered under spouse's insurance, list place of employment of spouse _____

and name of Insurance Company _____

Please designate beneficiary for Metropolitan Group Life Insurance.

Name _Sophie Staske_    Age _62_    Relationship _Mother_    Address _4450 52ND Detroit_
                                                                                    _48210_

**TRANSFERS FROM OTHER GM DIVISIONS PLEASE ANSWER THE FOLLOWING QUESTIONS:**
(also includes employes who have had former employment with a GM division)

Were you actively participating in the following programs at the time of transfer or layoff?

Blue Cross/Blue Shield _____ Comprehensive Medical _____ Metropolitan Optional Life _____ Dependent Group Life _____
Stock Purchase Program _____ Retirement Program _____ Series "E" Savings Bonds _____ Dental _____

**LIST ALL PREVIOUS EMPLOYMENT WITH GENERAL MOTORS** (If additional space required use reverse side)

| From Mo/Day/Yr | To Mo/Day/Yr | Division & Location | Position | Reason for Leaving |
|---|---|---|---|---|
| _9-2-78_ | _8-14-79_ | _Engineering Staffs Tech Center Warren_ | _Facility Tech_ | _Special Separation_ |
| | | | | |
| | | | | |

Vacation days used this calendar year _____    Vacation days left _____ _2_

Date _7-18-83_    Signed _Stanley R Staske_

Rev. 6/83

APMES

ACCTG/PERSONNEL RECORD CHANGE

TO:  T. PERKINS                                          NEW ENTRY _____
     APMES FINANCE                                       REVISION_____

EFFECTIVE DATE _____ 07-18-83

LENGTH OF SERVICE DATE _07-18-83_

EMPLOYE NAME _STANLEY R STASLO_

SS NUMBER _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_    STATUS OF EMPLOYMENT:    New Hire ____
                                                    XFer In _____
                                                    Co-op Std _____
DEPARTMENT _F161_                                   Temp_____

LOCATION:  Warren _✓_  Detroit____

EXEMPT_____    NON-EXEMPT_____

========

VACATION - ALLOWED HOURS _0_                VAC ELIGIBILITY
                                                DATE
VACATION - TAKEN HOURS_____        _80 hrs 1-1-84_

========

TIME CARDS TO BE USED_____

PER DIEM SLIPS (YELLOW) TO BE USED____

                                          _7-20 83_
                                    Personnel Department

cc: File
    H. Helton



Personnel Administration
General Motors Corporation
General Motors Technical Center
Warren, Michigan 48090

**Date:** July 20, 1983

**Subject:** Length of Service

**To:** Stanley Stasko

You will recall in your new employe orientation, I indicated I would write you a note regarding your prior employment as a high school cooperative student as it might relate to backdating your length of service.

Section 307.214 of the Policy Manual indicates that only time worked that is at least one-half of the staff's normal workweek can be included in length of service. High School cooperative students work less than 20 hours per week.

I noticed that you also worked the period of time during the summer on a full time basis. This same section of the policy also indicates you can only consider periods of employment one year back from the time a person is hired "permanently". Your period of employment 9/78 to 8/79 is well beyond a year so we will not be able to considered your full time summer employe status in your length of service.

Sorry that the policy does not allow us to backdate your length of service, but it was sure worth the look.

Best of luck on your new assignment.

Cheryl J. Pasike
Personnel Specialist

# LAWRENCE INSTITUTE OF TECHNOLOGY

49447    BACCALAUREATE DEGREE PROGRAM

SOUTHFIELD, MICHIGAN 48075

STUDENT NUMBER: 48210

SCHOOL: ENGINEERING
CURR: ELECTRICAL
BIRTH DATE: 5-6-61
CITIZENSHIP (OTHER THAN U.S.):
DATE OF GRAD FROM HS: 6-79
LAST COLLEGE ATTENDED: CASS TECHNICAL HIGH
L.I.T. DEGREES GRANTED:

NAME: STANLEY R STASKO
ADDRESS: 4450 52ND  DETROIT MI
WHEN FIRST ENROLLED:

| DESCRIPTIVE TITLE | COURSE NO. | BASE HOURS | CREDIT HOURS | GRADE | HONOR POINTS | FILE NO |
|---|---|---|---|---|---|---|
| DAY TERM ENDING NOV 79 | | | | | | |
| GEN CHEMISTRY 1 | 30.205 | 5 | 5 | A | 20 | 816 |
| ANAL GEO & VECTR | 32.145 | 5 | 5 | A | 20 | 799 |
| INTRO ENGINEERNG | 45.103 | 3 | 3 | A | 12 | 1367 |
| Dean's Honor Roll  49447  13 | | 13 | 13 | | 52 | 4.00 |
| DAY TERM ENDING FEB 80 | | | | | | |
| GEN CHEMISTRY 2 | 30.225 | 5 | 5 | A | 20 | 816 |
| CALCULUS I | 32.265 | 5 | 5 | A | 20 | 799 |
| ENGR GRAPHICS | 45.214 | 4 | 4 | C | 8 | 1337 |
| | | 14 | 14 | | 48 | |
| 49447  27 | | 27 | 27 | | 100 | 3.70 |
| DAY TERM ENDING MAY 80 | | | | | | |
| CALCULUS II | 32.285 | 5 | 5 | A | 20 | 799 |
| ENGLISH COMP | 36.214 | 4 | 4 | B | 12 | 806 |
| ENGR MATERIALS 1 | 45.365 | 5 | 5 | A | 20 | 1279 |
| Dean's Honor Roll  49447  41 | | 14 | 14 | | 52 | |
| | | 41 | 41 | | 152 | 3.70 |
| DAY TERM ENDING NOV 80 | | | | | | |
| CALCULUS III | 32.305 | 5 | 5 | A | 20 | 799 |
| PHYSICS MECHANIC | 34.205 | 3 | 3 | A | 12 | 1230 |
| EFFECTIVE SPEECH | 36.553 | 3 | 3 | A | 12 | 1389 |
| 49447  54 | | 13 | 13 | | 204 | 3.77 |
| | | 54 | 54 | | | |
| DAY TERM ENDING FEB 81 | | | | | | |
| COMPUTER 2 FORT | 32.263 | 3 | 3 | A | 12 | 606 |
| CALCULUS IV | 32.325 | 5 | 5 | A | 20 | 799 |
| PHYSICS HT SD LT | 34.384 | 5 | 5 | A | 20 | 794 |
| MECH 1 STATICS | 45.384 | 4 | 4 | A | 16 | 115 |
| Dean's Honor Roll  49447  71 | | 17 | 17 | | 68 | |
| | | 71 | 71 | | 272 | 3.83 |

| DESCRIPTIVE TITLE | COURSE NO | BASE HOURS | CREDIT HOURS | GRADE | HONOR POINTS | FILE NO |
|---|---|---|---|---|---|---|
| DAY TERM ENDING MAY 81 | | | | | | |
| PHYSICS ELEC MAG | 34.245 | 5 | 5 | A | 20 | 799 |
| ELECT MEAS CRCTS | 41.213 | 3 | 3 | A | 12 | 707 |
| DIFFER EQUATIONS | 32.445 | 5 | 5 | A | 20 | 746 |
| Dean's Honor Roll  49447  84 | | 13 | 13 | | 52 | |
| | | 84 | 84 | | 324 | 3.85 |
| DAY TERM ENDING NOV 81 | | | | | | |
| OPERATIONAL MATH | 32.605 | 5 | 5 | A | 20 | 171 |
| MICROECONOMICS | 38.343 | 3 | 3 | A | 12 | 1495 |
| CIRCUITS 1 | 41.224 | 3 | 4 | A | 16 | 1496 |
| SIMULATION TECH | 41.643 | 3 | 3 | A | 12 | 1469 |
| Dean's Honor Roll  49447  99 | | 15 | 15 | | 60 | |
| | | 99 | 99 | | 384 | 3.87 |
| DAY TERM ENDING FEB 82 | | | | | | |
| LIT 1 PROSE | 36.243 | 3 | 3 | B | 9 | 1262 |
| CIRCUITS 2 | 41.234 | 4 | 4 | B | 12 | 1496 |
| ELECTRONICS 1 | 41.265 | 5 | 5 | B | 15 | 1528 |
| ELECTO THEORY 1 | 41.313 | 3 | 3 | A | 12 | 799 |
| 49447  114 | | 15 | 15 | | 48 | |
| | | 114 | 114 | | 432 | 3.78 |
| DAY TERM ENDING MAY 82 | | | | | | |
| COMPUTER TECH 3 | 32.273 | 3 | 3 | A | 12 | 60 |
| ELECTRONICS 2 | 41.365 | 5 | 5 | A | 20 | 1539 |
| ELECTO THEORY 2 | 41.463 | 3 | 3 | A | 12 | 799 |
| TRNSMISSION LINE | 41.553 | 3 | 3 | A | 12 | 1496 |
| Dean's Honor Roll  49447  128 | | 14 | 14 | | 56 | |
| | | 128 | 128 | | 488 | 3.8 |
| EVE TERM ENDING MAY 82 | | | | | | |
| BUSINESS WRITING | 36.423 | 3 | 3 | C | 6 | 1356 |
| 49447  131 | | 131 | 131 | | 494 | 3.77 |

ISSUED TO STUDENT

*Beulah M. Bush*
REGISTRAR

AUG 5 1983

ALL ENTRIES ARE IN STANDARD QUARTER HOURS.
GRADING SYSTEM (Course Grade Honor Point):
EXCELLENT A, 4.   GOOD B, 3.   AVERAGE C, 2.   POOR D, 1.   FAILURE F, 0.   INCOMPLETE I, 0.   WITHDRAWAL W, 0.   AUDT X, 0.   DATE

# LAWRENCE INSTITUTE OF TECHNOLOGY
## SOUTHFIELD, MICHIGAN 48075

| DESCRIPTIVE TITLE | COURSE NO. | BASE HOURS | CR(CH) HOURS | GRADE | HONOR POINTS |
|---|---|---|---|---|---|
| DAY TERM ENDING | NOV 82 | | | | |
| COMPUTER SCI 1 | 32.425 | 5 | 5 | A | 20 | 606 |
| INTRO PSYCHOLOGY | 38.563 | 5 | 3 | A | 12 | 1263 |
| ELECTROM DEVIC 1 | 41.305 | 5 | 5 | A | 20 | 1496 |
| FEEDBK CTR SYS 1 | 41.595 | 5 | 5 | A | 20 | 469 |
| 49447    149 | | 18 | 18 | 149 | 72 | 606 |
| | | 149 | 149 | | 566 | 3.79 |
| DAY TERM ENDING | FEB 83 | | | | |
| MATRIX ALGEBRA | 32.565 | 5 | 5 | A | 20 | 171 |
| DGTL CIR DES 1 | 41.783 | 3 | 3 | A | 12 | 1234 |
| ELECTRONICS 3 | 41.875 | 5 | 5 | A | 20 | 1234 |
| MECH OF MATRLS | 45.445 | 5 | 5 | A | 20 | 115 |
| Dean's Honor Roll | | | | | |
| 49447    167 | | 18 | 18 | 167 | 72 | 638 | 3.82 |
| | | 167 | 167 | | 638 | |
| DAY TERM ENDING | MAY 83 | | | | |
| COMPUTER SCI 2 | 32.513 | 3 | 3 | A | 12 | 606 |
| LIT 2 POET-DRAMA | 36.273 | 3 | 3 | A | 12 | 1385 |
| MICROPROCESSORS | 41.794 | 4 | 4 | A | 16 | 1234 |
| DIGITAL COMP 2 | 41.813 | 3 | 3.0 | IA | 12.0 | 1234 |
| MECH 2 DYNAMICS | 45.414 | 4 | 4 | A | 16 | 115 |
| Dean's Honor Roll | | | | | |
| 49447    184 | | 17 | 17 | 184 | 68 | 706 | 3.83 |
| | | 184 | 184 | | 706 | |
| DAY TERM ENDING | JUL 83 | | | | |
| STATE & LOC GOVT | 38.543 | 3 | 3 | A | 12 | 1126 |
| ABNORMAL PSYCH | 38.633 | 3 | 3 | B | 9 | 1263 |
| INTRO SOCIOLOGY | 38.663 | 3 | 3 | B | 12 | 1460 |
| THERMODYNAMICS | 45.544 | 4 | 4 | B | 12 | 1542 |
| 49447    197 | | 13 | 13 | 197 | 45 | 751 | 3.81 |
| | | 197 | 197 | | 751 | |

ISSUED TO STUDENT

EXHIBIT A

EXIT INTERVIEW

Employe Name _STANLEY R. STASKO_
Position Code _7E06_
Service Date _7/18/83_
Social Security Number _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_
PER Unit_____
Department _WH213_
Supervisor _JERRY FAIRBANKS_

1. To what degree was your decision to leave this organization influenced by any of the following?  Please check all that apply.

| | | |
|---|---|---|
| _____ geographic relocation | | Use the following scale: |
| _____ returning to school | | |
| _____ family circumstances | | 1 = No Influence |
| _____ retirement | | 2 = Minor Influence |
| _____ health reasons | | 3 = Major Influence |
| _____ dissatisfaction with: | | 4 = Primary Influence |

       _____ working conditions (elaborate)
       _____ salary
       _____ quality of management
       _____ career advancement
       _____ under-utilized in area of expertise
       __4__ other (please specify)  _I AM ENTERING THE SEMI-_
                                _FOR THE ARCH. OF DETROIT_
                                _TO DISCERN THE CALL TO BE A PRIEST._

2. Please indicate your (dis/)agreement with the following, using the following scale:

    1 = Strongly Agree
    2 = Agree
    3 = Neither Agree or Disagree
    4 = Disagree
    5 = Strongly Disagree

    __2__ There is a high degree of cooperation within my department.
    __2__ There is a high degree of cooperation between my department and other departments.
    __2__ The training I received from the Corporation adequately prepared me for my job.
    __2__ Communication within my department was not a barrier to my work.

3. What is your level of satisfaction with the following?

    1 = Greatly Satisfied
    2 = Satisfied
    3 = Neither Satisfied or Dissatisfied
    4 = Dissatisfied
    5 = Greatly Dissatisfied

| | | | |
|---|---|---|---|
| __2__ | Salary | __1__ | Benefits |
| __2__ | Opportunity for Advancement | __1__ | Job Security |
| __2__ | Equipment Provided | __2__ | Mentoring/Supervision |
| __2__ | Career Development | __2__ | General Management |

## EXHIBIT A

### EXIT INTERVIEW - PG. 2

4(a) If you are taking another job, what does that job offer you that your job at GM did not?

_NOT APPLICABLE - I AM ENTERING THE SEMINARY FOR THE ARCH. OF DETROIT; THEREFORE, I DON'T BELIEVE THIS QUESTION APPLIES TO ME._

(b) Did GM meet your expectations? If not, please provide specific areas in which your expectations were not met.

_YES, I VERY MUCH ENJOYED MY CAREER AT GENERAL MOTORS. OVERALL, IT WAS A VERY GOOD CAREER._

(c) What constructive comments do you have for management in regard to continuously improving the workplace?

(d) What are some factors which made your employment at GM a positive experience?

_DURING MY CAREER AT GM, MY (2) MANAGERS (WARD WIERS AND JERRY FAIRBANKS) HAVE GAVE ME MANY OPPORTUNITIES TO EXPRESS MY ENGINEERING TALENTS._

(e) Additional comments:

_THANK-YOU FOR THE ENJOYABLE CAREER._

5. Please describe your future career plans/goals.

_AT THIS TIME I AM DISCERNING THE CALL TO BE A PRIEST; THEREFORE, MY FUTURE PLANS/GOALS WILL BE DETERMINED AS THAT DISCERNMENT PROCESS UNFOLDS._

Interviewed by: _Gerald A Fairbank_

Date: _8-25-95_

Employe signature: _Stanley N White_

Willing to participate in a follow-up survey? _YES_ (Y/N)

Address: _27653 LEXINGTON PKWY SOUTHFIELD, MICH. 48076_

EXHIBIT B

## SECURITY TERMINATION STATEMENT

At the request of GM Powertrain, General Motors Corporation, I have returned all secret or confidential information in documentary or other tangible form, including copies or reproductions, in my possession or under my control and I agree that the obligation not to disclose secret or confidential information continues after the termination of my employment and that I shall not make any disclosure at any time thereafter without prior written permission of GM Powertrain, General Motors Corporation, except as I may be required to make such disclosure by judicial process or operation of law.

8 - 25 - 95
DATE

_Stanley Stasko_
SIGNATURE OF EMPLOYE

_Gerald A. Fairbanks_
SIGNATURE OF WITNESS

STANLEY R. STASKO
TYPED NAME OF EMPLOYE

GERALD A. FAIRBANKS
TYPED NAME OF WITNESS

381 - 68 - 1710
SOCIAL SECURITY NUMBER

539 - 30 - 4875
SOCIAL SECURITY NUMBER

EXHIBIT A

## SALARIED PERSONNEL EXIT INTERVIEW

SS# _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_

NAME _STANLEY R. STASKO_    DATE _8/25/95_

ADDRESS _27653 LEXINGTON PKWY_    ZIP CODE _48076_

HOME TELEPHONE NO. (810) 552-0476    SERVICE DATE _7/18/83_

CLASSIFICATION _7E¢6_    DEPARTMENT _WH 213_

EFFECTIVE DATE _8/25/95_    LAST DAY WORKED _8/25/95_

REASON FOR LEAVING _I AM ENTERING THE SEMINARY FOR THE ARCH. OF DETROIT_

### ITEMS TO BE COLLECTED

GMAC CARD _N/A_

KEYS/TOOLS _____

GM PASS _____

EDS RELATED ITEMS:
  TRAVELCALL SERVICE CARD ____
  SYSTEM USER ID'S (LIST ALL)
_____

- PC SOFTWARE/PC KEYS _____
- LAPTOP (PORTABLE COMPUTER)____
- CELLULAR TELEPHONE _____

### AMOUNTS OWED

| | |
|---|---|
| AMEX NOTE RECEIVABLE/ DELINQUENT ACCOUNT | $ 0 |
| GM FELLOWSHIP EXPENSE | $ 0 |
| GM FELLOWSHIP LOAN | $ 0 |
| GM HOUSE LOAN | $ 0 |
| GM TUITION ASSISTANCE (BEFORE COURSE COMPLETION) | $ 0 |
| CASH ADVANCE | $ 0 |
| LUMP SUM RELOCATION ALLOW. | $ 0 |
| SALARY/VACATION OVERPAYMENT | $ |

### PERTINENT COMMENTS BY EMPLOYE AND/OR INTERVIEWER:

_____

_____

_____

_____

_____

_____

_____

IGNATURE OF INTERVIEWER: _Gerald R Fairbanks_

```
SSN-------------> 381681710
NAME-----------: STASKO,STANLEY,R                    HIRED--------: 09/07/78
EFFECTIVE DATE-: 08/25/95              LENGTH OF SERVICE DATE-: 07/18/83
************************* STATUS AS OF: 08/25/95 *************************


STATUS ACTION--: 1J              QUIT-CAREER CHANGE
EMP CATEGORY---: SE              SEPARATED
************************* POSITION AS OF: 01/01/95 *************************
POSITION ACTION: D8              CHG-REORG/ORG NAME
GROUP----------: GPT             GM POWERTRAIN GRP
DIV/STAFF------: 4700            POWERTRAIN
PERUNIT--------: 10020           GM POWERTRAIN-WRN ENG
DEPT-----------: WH213           *
LOCATION-------: 2130            WARREN        MI
POS CODE-------: 7E06            SR PROJECT ENGINEER
LOCAL TITLE----:
FUNCT ASSIGN---:                 *    *
**********************************************************************
CONTACT NAME---: CHRISTINE WESTERN
CONTACT NUMBER-: 8-227-8762
**********************************************************************


TS0010-ENTER NUMBER(S)
```

# GM POWERTRAIN WARREN ENGINEERING CENTER
## EMPLOYEE CHANGE STATUS FORM

TO:    ADMINISTRATIVE SERVICES              163-02, #2-7
       SHIPPING & RECEIVING DOCK SUPERVISOR    E-417, #2-7
       PLANT ENGINEERING                     E-326M, #2-7
       PERSONNEL                             129-11, #2-7
       SECURITY                             G-142, #2-7
       EDS                                   G-211, #2-7
       BUSINESS MANAGEMENT                   140-05, #2-7

\_\_\_\_ INTERNAL MOVE      ✓ LEAVING FACILITY      COMING FROM _____

\_\_\_\_ NEW HIRE          \_\_\_\_ CONTRACT EMPLOYEE    GOING TO _____

\_\_\_\_ RELOCATION        DOES CUBICAL EXIST? \_\_\_\_    DATE OF MOVE _____

SOCIAL SECURITY NUMBER: _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_
(REQUIRED ON PERSONNEL DEPARTMENT COPY "ONLY"

EMPLOYEE NAME: _STASKO_    _STANLEY_    _R._
                LAST         FIRST        INITIAL

DIVISION / DEPT. NAME / TITLE ACTIVITY: _GHPT- WW_

LOCATION ROOM NUMBER: _1C1_    PHONE: _8-226-7677_
                                       _(810) 986-7677_

NAME CHANGE: _____    VME: _8/011- 67677_
(PREVIOUS FULL NAME AS SHOWN IN DIRECTORY)      NODE    BOX

## PLEASE PROVIDE / CANCEL:

\_\_\_\_ KEYS - ROOM LOCK NUMBER          \_\_\_\_ KEYS - DESK LOCK NUMBER

✓ PHONE          ✓ VME          \_\_\_\_ EDSNET ID'S

COMPUTER EQUIPMENT: _____
_____

PHONE DIRECTORY: ✓ CORPORATE    \_\_\_\_ GMPT    ✓ WARREN

SECURITY PASS: ✓          PEP VEHICLE PARKING DESIGNATION: _____

IMMEDIATE SUPERVISOR: _GERALD A. FAIRBANKS_  _6-7885_
                       (PLEASE PRINT)          (PHONE)

QUESTIONS REGARDING THIS FORM, CALL KAREN BLAND 2-5382.

c:.bland\052395.doc

**GM POWERTRAIN**

## POWERTRAIN PHONE DIRECTORY UPDATE
## FOR PHONE AND MAIL SERVICE

Forward completed form to:
GM Powertrain Division
EDS Customer Service
Mail Code 990
Ypsilanti, MI 48198 - 6198

### PLEASE CHECK APPROPRIATE BOXES

☐ **Contract Employe**      ☒ **Leaving Division**      **City** WARREN
☐ **New Hire**              ☐ **Other**_____          **Plant** GHPT-WW
☐ **Relocation**            (Explain)                    **Home Plant** _____
                                                          If Different

**Name** STASKO, STANLEY R.
Full Name as Shown in Phone Directory

**PLEASE PRINT BELOW**

**Employe Name** | S | T | A | S | K | O | | S | T | A | N | L | E | Y | | | | R | | |
Last | | | | | | First | | | | | | Initial

**Dept. Name/**
**Title Activity** | G | H | P | T | - | W | A | R | R | E | N | | W | E | S | T | | | |

**Location/**
**Bay Balcony** | E | N | G | R | | B | L | D | G | 1 | - | 1 | 1 |      **Phone Ext.** | 8 | 2 | 2 | 6 | 7 | 6 | 7 | 7 |

**Mail Code** | D | 1 | - | N | 2 |      **VME Node** | | 8 | 1 | 0 | 1 | 1 | 6 | 7 | 6 | 7 | 7 |   **Box #**

**Employe Signature** _Stanley R Stasko_                  **Date** 8/25/95

P-695    REV 5/93

PLEASE RETURN THIS COMPLETED FORM TO:

        Judy McGlashan *Luther* - EDS/GMPT Engineering
        Room A-220  *G-721 (EXT 5-1765)*
        Bldg. 2-7

LAST NAME: _STASKO_          ROOM # _1C1_

FIRST NAME: _STANLEY_        BUILDING # _1-11_

MIDDLE NAME: _ROBERT_        DEPT. NAME: _WARREN WEST_

SSN: _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_          DEPT #: _WH213_

Effective Date: _8/25/95_   Last Day Worked: _8/25/95_

### ***DATA SECURITY***

(X) GM     ( ) NON-GM   Vendor Name_____

Have you ever had an EDS NETID?
        ( ) NO        ( ) YES: NET ID __ __ __ __ __

Please list any active application LOGON ID'S:_____
(Please indicate PDS, IMS, TSO, etc.)    _____
INCLUDE CADAM AND CATIA)                 _____
                                         _____
                                         _____

*********************************************************

### ***PHONE CHANGES***

VME BOX NUMBER: _67677_     MANAGER'S NAME: _JERRI FAIRBANK_

VME NODE: _81011_          CHIEF ENGINEER:_____

VME SYSTEM:_____

AT&T CALLING CARD NUMBER: _NONE_

EDS TRAVELCALL CARD NUMBER: _NONE_

REQUEST TYPE: DELETE   (phone, line, etc.)

            TRANSFER  (one person to another)
                      (one account to another)
                      (one department to another)

COMMENTS:_____
_____
_____
_____

_original_ sent to Judy Luther on 9/7/95 *orig0*

Exhibit - 14

ES-387

## EMPLOYMENT HISTORY RECORD

| DATE | CLOCK NO. | ACCOUNT NO. | DEPARTMENT | CODE | CLASSIFICATION | E/N | RATE | REASON |
|------|-----------|-------------|------------|------|----------------|-----|------|--------|
| 7-78 | | 1-11 Coop Students – HS | | 2E00(30) | Coop Student | N | 15.01/diem | Temp * |
| 16-79 | 2 5 | | | 2E30 | Learner-Lab Aide | | 32.80/diem | cc |

H—HIRE    R—REHIRE    C—CHANGE CLASS    RC—RATE CHANGE    T—TRANSFER    Q—QUIT    LO—LAYOFF    D—DISCHARGE

FR—FINAL RELEASE    MS—MUTUALLY SATISFACTORY SEPARATION    S—SPECIAL SEPARATION    DS—DECEASED

☐ TEMPORARY | STAFF—GENERAL MOTORS CORP.
☐ STASKO, Stanley R.    * 3.8 hour day
☐ AMT

SIGNATURE    HE COST OF BADGE, TOOLS, OR OTHER PROPERTY OF SAID COMPANY OBTAINED AND NOT
                    ATION OF SERVICE.

8-28-78    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
DATE ISSUED    SOC SEC NO    DATED THIS _____ DAY OF _____ 19___

Engineering Staff    EMPLOYEE'S SIGNATURE

| CLOCK NO. | LAST NAME | FIRST | R MIDDLE | YEAR BIRTH | SEX | SEC/MON | SOC. SEC. NO. | OUT |
|-----------|-----------|-------|----------|------------|-----|---------|---------------|-----|
| | STASKO | Stanley | R | 1961 | M | ES | 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 | |

Case 2:09-cv-14827-JAC-VMM    Document 3-3    Filed 12/11/09    Page 34 of 39

Name: _STASKO, Stanley R._    Job Code: _ZE30_

Department: _High School Coops    I-11_    Job Title: _Learner-Lab Aide_

Date: _8/10/79_

ATTENDANCE

Tardiness: [ ] Frequently    [ ] Occasionally    [✓] No Problem

Absenteeism: _____ Hours

JOB DUTIES: _FABRICATION OF A WIDE ASSORTMENT OF_
_ELECTRONIC DEVICES._

AREAS OF JOB STRENGTH: _MAKES GOOD USE OF TIME. PERFORMS EACH_
_TASK IN A HIGHLY PROFESSIONAL MANNER. VERY_
_CONCIENTIOUS INDIVIDUAL._

AREAS NEEDING JOB IMPROVEMENT: _ELECTRONIC TROUBLE-SHOOTING - HOWEVER_
_THIS WAS NOT A REQUIREMENT OF THIS POSITION._

OVERALL JOB RATING

[✓]    [ ]    [ ]    [ ]    [ ]

Outstanding performance; far exceeds standard for this job; achievable but seldom attained performance.

Highly effective performance exceeds standard for this job.

Good competent performance; meets standard for this job; the level of performance most often achieved.

Needs slight improvement to meet standard for this job.

Needs much improvement to meet standard for this job.

_Stanley Stasko_    _8-10-79_    _R. A. Meeger_    _8-10-79_
Employe Signature    Date    PAUL DURRENBERG    Date
                              Appraised By

EMPLOYEE JOB APPRAISAL                                      Stasko, Stanley R.
                                                           1-11

JOB DUTIES: _Fabrication and calibration of test_
_equipment for emission tests were my_
_main job duties._

WAS JOB CHALLENGING? _Each job had its own challenges_
_but I feel my full potential was_
_not reached on any one project._

WERE RESOURCES AVAILABLE TO ACCOMPLISH JOB ASSIGNMENTS? _I was_
_supplied with good and quality_
_material to complete each job._

WHAT, IF ANY, OBSTACLES HINDERED GOAL ACHIEVEMENT?
_No obstacles of any significance._

GENERAL COMMENTS: _Cooperation and assistance by_
_fellow employees excellent. Cooperative_
_program has been a rewarding experience_

_Stanley Stasko_                    _8-13-79_
Employe Signature                   Date

Case 2:09-cv-14827-JAC-VMM   Document 3-3   Filed 12/11/09   Page 30 of 30

Engineering Staff – Environmental Activities Staff – Transportation Systems Division

Name of Employe _____ Stanley R. Stasko _____

Department _____ I-11 _____

Date and Separation Classification ___ 8-14-79  Special separation

+ + + +

## DEPARTMENTAL COMMENTS

Please furnish a brief description of the employe's performance and reason for leaving.
If any problem areas – such as attendance, work attitude, cooperation with other
employes, etc., apply – give specific details. Return this form to ___ Bettie Bennett ___
of Personnel before the date of exit interview.

*Stanley did a superb job on electronic devices, he is leaving to go to school! His productivity was good, attitude exceptional, and gets along fine with everyone. No problem with attendance.*

Would you recommend for re-employment? _____ yes _____

The above information furnished by: ___ Paul E. Pishl ___
(signed)

## PERSONNEL DEPARTMENT COMMENTS

Exit Interview conducted by: _____

Exhibit - 15

Lawrence Technological University Southfield, Michigan 1979-1983
B.S. Electrical Engineering (Summa Cum Laude)
With an emphasis in Digital and Microprocessor Circuits, and Mathematics and Computer Science

**Professional experience:**

General Motors Powertrain - Warren West Senior Project Engineer; From July, 1983 to August, 1995
My overall responsibility was the design, engineering, and project management of multi-million dollar renovation projects.

**Project Management activity:**

Eight years experience in the design, engineering, and project management of advanced powertrain dynamometer multi-million dollar test laboratory renovation.

Four years experience in the design and engineering of advanced powertrain emissions million-dollar test laboratory renovation.

Scheduling project activity using Timeline software to generate timeline diagrams

Reviewed GM UAW hourly personnel work activity (including installing industrial equipment, electrical conduit, and 480 VAC wiring)

Reviewed GM salaried personnel renovation work activity

Reviewed EDS software work activity and helped establish work priorities

Inspected and approved test equipment at contractor facilities

Team leader for continuous improvement process group activity

**Summary of qualifications:**

Eight years experience in the design and engineering of test cell instrumentation, engine intake conditioned air systems, DSP high speed combustion analysis systems (100 kHz per channel), a hemi-anechoic chamber, fuel injector test stands, operator's control consoles, engine coolant and oil temperature control systems, cell safety systems, cell supply and exhaust ventilation renovation with Toshiba VFD, Allen-Bradley motor control centers, and a fuel injector test stand.

Four years experience in the design and engineering of emissions analysis equipment, sample conditioning equipment, operator's control consoles, test cell sensors and transducers, test site configuration, gas bottle storage room renovation for hazardous environment, overhead track systems, heating and ventilation equipment renovation for energy savings, and strip chart recorders.

Eight years experience in the design, engineering, integration, and project management of HP1000 - A900 series data acquisition test equipment renovation. Including Computer Products front-end equipment, analog and digital I/O cards, interface wiring, signal conditioning, grounding and shielding, and sensors.

Eleven years experience in the hardware and software design, integration, and implementation of Modicon (884, 984-680, and 984-E685) programmable logic controllers. Including the interfacing of the programmable logic controller to test cell equipment, generating the required I/O drawings using Autocad and Gray Soft software, and writing the required software logic using Digital Machine Control software.

Eight years experience in the design, integration, and implementation of electrical controls. Including General Motors ES-1 Electrical Standards, the National Electrical Code, NFPA 79 for Industrial Equipment, explosionproof requirements, intrinsic safety requirements, and test cell power requirements (less than 120 VAC, 120 VAC, and 480 VAC) distribution and grounding system.

Eight years experience in the design, integration, and implementation of Honeywell UDC3000 process controllers for temperature, pressure, and humidity control. Including writing the required configuration software, calibrating systems on start-up, and optimizing software tuning parameters utilizing Protuner auto-tuning software.

Three years experience in the design, integration, and implementation of Modicon Panelmate 2000 series video based man-machine interfaces. Including writing the required configuration and application software.

Twelve years experience in capital appropriations financial activity. Including cost estimates, procuring capital equipment, and tracking project monies for renovation activity.

Twelve years experience in interdepartmental and liaison work activity. Including leading design meetings between technical support personnel, engineers and project managers. Liaison work activity between General Motors and construction contractors and/or test equipment contractors.

Case:2:09-cv-14827
Judge: Cook, Julian Abele
MJ: Morgan, Virginia M
Filed: 12-11-2009 At 04:18 PM
STANLEY STASKO V. GENERAL MOTORS CORP (KB)

# Exhibit - 16

Stasko v General Motors Corporation – Stanley R. Stasko Resume

1. **Attended Cass Technical High School - 10, 11, and 12 Grades**

   1.1. Electronics Program; Graduated with approximately a 3.7 GPA

   1.2. Purposefully took extra courses in automotive technology

   1.3. Entered physics program at Wayne State University – 11th Grade

      1.3.1. $100 award for being the outstanding student

      1.3.2. Verify with DAPCEP, Detroit Area Pre-college Engineering Program 100
      Farnsworth Suite 249 Detroit, Michigan 48202

   1.4. General Motors offers Plaintiff a High School Co-op position – 12th Grade

      1.4.1. General Motors Technical Center, Engineering Building, Dynamometer Wing

2. **Lawrence Technological University Southfield, Michigan – BSEE, 1983**

   2.1. Started a dual degree program at Lawrence Technological University: BSEE and BS in
   Mathematics and Computer Science

   2.2. Special dual degree courses completed

      2.2.1. Computer Tech 3       Course # 32.273

      2.2.2. Computer Science 1    Course # 32.425

      2.2.3. Matrix Algebra        Course # 32.565

      2.2.4. Computer Science 2    Course # 32.513

   2.3. Stanley R. Stasko needs one more year to complete a full second BS degree

      2.3.1. According to the Lawrence Technological University Catalog 1981-82

      2.3.2. Introduction to Western Civilization 1       38.113 (3) Credits

      2.3.3. Introduction to Western Civilization 2       38.213 (3) Credits

      2.3.4. Language and Literature Elective                    (3) Credits

      2.3.5. Language and Literature Elective                    (3) Credits

      2.3.6. Language and Literature Elective                    (3) Credits

      2.3.7. Computer techniques 1                       32.233 (3) Credits

      2.3.8. Probability and Statistics                  32.485 (5) Credits

      2.3.9. Partial Differential Equations              32.643 (3) Credits

      2.3.10. Numerical Analysis with Computer App 1     32.785 (5) Credits

      2.3.11. Numerical Analysis with Computer App 2     32.795 (5) Credits

Stasko v General Motors Corporation – Stanley R. Stasko Resume

3. **Recognition of distinguished scholarship and exemplary character - Tau Beta Pi from Lawrence Technological University; Award certificate dated May 6, 1982**

4. **Awarded membership in the Lambda Iota Tau Honor Society from Lawrence Technological University; Award certificate dated June 5, 1983**

5. **Hired by General Motors Technical Center, Engineering Building, Emissions Wing as a 5th level Associate Engineer (5E35) approximately July 18, 1983**

   5.1. Plaintiff should have been hired as a 6th level Project Engineer; Four to five times General Motors specifically requested plaintiff to work for General Motors

   5.2. First time => plaintiff is asked to interview for a co-op position with General Motors coordinated with Cass Tech High School; General Motors offers plaintiff a co-op position; Plaintiff says no

   5.3. Second time => Cass Tech High School tells plaintiff to see his school counselor; Cass Tech pressures plaintiff to accept General Motors co-op position; plaintiff accepts; see General Motors letter signed by Eileen M. Poppleton – Student Coordinator dated June 9, 1978 (See Exhibit 13); General Motors retaliates by verbally assaulting plaintiff on first day of work

   5.4. Third time => plaintiff does so much good work for General Motors that General Motors asks plaintiff to continue to work into the summer after the school year ends; see General Motors Employment History Record – employment code changed from 2E00 to 2E30 on June 16, 1979 (See Exhibit 14)

   5.5. Fourth time => plaintiff does so much good work for General Motors that General Motors is running out of work for plaintiff to do; General Motors has to think of new work for plaintiff (rewiring Dynamometer Test Cell cylinder distribution solenoids); General Motors offers plaintiff a job with General Motors while he attends Lawrence Technological University; plaintiff says no

       5.5.1. General Motors Summer Temporary Student Appraisal of plaintiff: Overall job rating => Outstanding performance; far exceeds standard for this job; achievable but seldom attained performance; signed by Ron Meegan; dated August 10, 1979 (See Exhibit 14)

Stasko v General Motors Corporation – Stanley R. Stasko Resume

    5.5.2.  General Motors Evaluation on Separation or Transfer of plaintiff; Would you recommend for re-employment? Yes – signed by Paul E. Rishel (See Exhibit 14)

  5.6. Fifth time => General Motors tries to hire plaintiff through Ron Buch-holz; Ron is a person plaintiff knows from Lawrence Technological University who in CY1983 works for General Motors; plaintiff does not express any interest to work for General Motors; Ron Buch-holz asks plaintiff for a resume to give to General Motors; plaintiff tells Ron Buch-holz that he is not interested in working for General Motors; eventually plaintiff gives Ron Buch-holz a resume; General Motors interviews plaintiff; General Motors offers plaintiff a job as a 5E35 Associate Engineer

Stasko v General Motors Corporation – Stanley R. Stasko Resume

**6. Humidity Monitoring to help diagnose problem with large printer**

 6.1. a gentleman in the General Motors Technical Center, Engineering Building, North Lobby has a printer that can take a picture slide and expand it from approximately 2 inches X 2 inches to greater than 24 inches X 36 inches

 6.2. the problem is that the quality of the expanded printout is unsatisfactory; the suspected problem is that the ambient air humidity conditions are not within printer specifications

 6.3. plaintiff setup an EG&G Dew Point Meter and Ambient Temperature Sensor in the printer area

 6.4. plaintiff trained project personnel on how to record EG&G Dew Point Meter and Ambient Temperature Sensor data

 6.5. plaintiff trained project personnel in reading a Psychometric chart using Dew Point Meter and Ambient Temperature Sensor data

 6.6. plaintiff trained project personnel on how to clean and calibrate the EG&G Dew Point Meter and Ambient Temperature unit

 6.7. with plaintiff assistance the Ambient Air Relative Humidity was determined to be outside printer specifications

**7. Forty-Seven mm diesel particulate filter sampling system**

 7.1. reduction in Diesel Particulate Filter size from approximately 140mm to 47 mm

  7.1.1. smaller filters require less shelf space to soak and normalize to ambient temperature and humidity conditions in the Diesel Particulate Filter Weight Room

  7.1.2. smaller filters are compatible with Sartorius microbalance

  7.1.3. smaller filters require less sample volume removed from CVS tunnel during testing

   7.1.3.1. less sample volume removed equals less mathematical correction

 7.2. 47 mm diesel particulate filters are compatible with tri-pod sampling tree compared to 140 mm mono-pod sample probe

 7.3. this can be verified by contacting Leslie Brown; the Diesel Particulate Filter Weight Room salaried technician

Stasko v General Motors Corporation – Stanley R. Stasko Resume

8. **Sartorius Microbalance**

   8.1. used to weigh 47mm diesel particulate filter sampling system

   8.2. measurements to 0.000001 grams

   8.3. automated lifting mechanism allows specimen tray removal without contact by human hands

   8.4. specimen reading initiated via foot operated switch connected to a printer

   8.5. trained diesel Particulate Filter Room technician Leslie Brown in proper operation of Sartorius Microbalance

9. **Tylan Mass Flow Controllers**

   9.1. evaluated and demonstrated that Tylan Mass Flow Controllers as an alternative to traditional Emission Analysis System sample flow control

   9.2. parts reduction associated with using Tylan Mass Flow Controllers instead of traditional Emissions Analysis System sample flow control

   9.2.1. flow controllers, needle valves, flow meters, sintered metal filters

   9.2.2. fittings, 0.25 inch tubing, fitting sealant, and assembly labor

   9.3. front panel space reduction

   9.3.1. no needle valves to mount

   9.3.2. no flow meters to mount

   9.4. to verify plaintiff considered Tylan Mass Flow Controllers for Emission Analysis System applications contact Fred Nadar (sales representative who wanted to use Tylan Mass Flow Controllers if his company was awarded General Motors Technical Center, Engineering Building, Emissions Wing renovation, Emissions Analysis System contract)

   9.5. it was General Motors decision not to use Tylan Mass Flow Controllers; even though, plaintiff demonstrated Tylan Mass Flow Controllers as an alternative to traditional Emission Analysis System sample flow control

Stasko v General Motors Corporation – Stanley R. Stasko Resume

10. **Sample Conditioning Unit**

   10.1.     Design and engineering of a new Sample Conditioning Unit for the Emissions Wing Test Sites

   10.2.     plaintiff designed the Sample Conditioning Unit for simultaneously conditioning four sample lines

   10.3.     plaintiff calculated the sizes of the new cooling coils

   10.4.     plaintiff designed larger cooling coil traps that do not require flushing in the middle of an Emissions Analysis test to remove the accumulated water from the cooling coil traps

   10.5.     plaintiff designed new stainless steel cooling bath

   10.6.     plaintiff designs new custom-made Sample Conditioning Unit enclosure

      10.6.1. Jerry Sidlar, instrumentation technician assigned to the project, purposefully gives plaintiff bad information by telling plaintiff to design the Sample Conditioning Unit so big that you can remove any component without having to remove another component

      10.6.2. General Motors will use the basic design of plaintiff Sample Conditioning Unit in the Emission Wing Renovation except that the revised design will be significantly smaller in size (just the opposite of the information Jerry Sidlar gave to plaintiff)

   10.7.     plaintiff provided drawings for fabrication of the new stainless steel cooling bath

   10.8.     plaintiff provided drawings for fabrication of the new custom-made Sample Conditioning Unit enclosure

   10.9.     plaintiff tells Jerry Sidlar that the new Sample Conditioning Unit will have a programmable logic controller, Paul Durrenberg steals plaintiff idea of using a programmable logic controller by programming it before plaintiff

Stasko v General Motors Corporation – Stanley R. Stasko Resume

**General Motors Technical Center – Engineering Building - Emissions Wing Renovation**

**11. Horiba Chassis Dynamometer Controller**

11.1.    Early in the Emissions Wing Renovation their were discussions with various vendors about the possible sales opportunities within the scope of the Emission Wing Renovation

11.2.    Horiba Instruments was the eventual supplier selected for the Chassis Dynamometer Controller

11.3.    Terri Hostteter was the General Motors representative for the project

11.4.    plaintiff had the opportunity to review some Horiba Chassis Dynamometer Controller information and found an error in the Horiba hardware circuit

11.5.    plaintiff reward from General Motors for finding an error in the Horiba Chassis Dynamometer Controller hardware circuit => basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

**12. Overhead Track System**

12.1.     Three independent tracks

    12.1.1. Each track could transverse North and South

    12.1.2. Each track could transverse East and West

    12.1.3. Each track could transverse up and down

    12.1.4. Each telescoping tube assembly could rotate

12.2.     North most track assigned to video based drivers aid

    12.2.1. useful for left handed vehicles (USA) and right handed vehicles (Europe)

    12.2.2. elimination of two-pen recorder taking up valuable Emission Test Site floor space

12.3.     Middle track assigned to Emission Test Site Instrumentation Console

    12.3.1. useful for positioning temperature, pressure, and RPM sensors near engine
    compartment for front-wheel drive vehicles or rear-wheel drive vehicles

    12.3.2. short pressure transducer lines minimize pressure line dips / valleys

12.4.     South most track assigned to Engine Cooling Fan

    12.4.1. useful for positioning Engine Cooling Fan near vehicle radiator of front-wheel
    drive vehicles or rear-wheel drive vehicles

    12.4.2. elimination of Engine Cooling fan taking up valuable Emission Test Site floor
    space

    12.4.3. Emission Test Site temperature sensor and humidity sensor pickup mounted on
    South most telescoping tube assembly to ensure representative temperature and
    humidity reading for Emission Test Site Computer

12.5.     Installed by UAW personnel

    12.5.1. with McKinney supplying a working supervisor

12.6.     plaintiff gains experience working with UAW personnel

12.7.     plaintiff gains experience working with outside contractors

12.8.     another successful project by plaintiff

12.9.     Overhead Track System project can be verified by contacting David McKinney,
    McKinney & Company, P.O. Box 1702, 221 Felch, Ann Arbor, Michigan 48106

Stasko v General Motors Corporation – Stanley R. Stasko Resume

13. **Emission Wing Renovation – Design Coordination**

13.1.    Gathered information for Smith H&G for HVAC design report

13.1.1. For example – Emission analysis equipment 120 VAC power consumption

13.2.    New Emission Wing Test Site changes include

13.2.1. Test Site #1, Test Site #2, Test Site #3, and Test Site #4 extended North approximately five feet

13.2.2. On-line Emissions analyzers calibration gas storage room relocated to second floor

13.2.3. New Emission analyzers calibration gas analysis room constructed in Southeast corner of Emissions Wing next to Vehicle Fuel Transfer Room

13.2.4. Diesel Particulate Filter Weight Room relocated from basement to 1st floor of the Emissions Wing

13.3.    plaintiff specifies Richmond Instruments to provide plexi-glass footprint of new Emissions Analysis Benches to aid in the physical layout of the new Emissions Analysis Benches on new eight inch raised flooring:

13.3.1. interfacing with renovated monoxide ventilation piping

13.3.2. routing of new under-raised flooring HVAC ventilation ducting

13.3.3. locating new under-raised flooring Smoke and Fire detectors

13.3.4. interfacing of 120 VAC electrical power

13.4.    plaintiff specified location of some of the new equipment located in the New Host Computer Room

13.4.1. new stand-alone HVAC unit

13.4.2. new stand-alone Power Conditioning Unit

13.4.3. new Honeywell DDC Supervisor Personal Computer

13.5.    coordinated mounting of MVEL supplied Video Based Drivers Aid to North most track of Overhead Drivers Aid system

13.6.    coordinated mounting of General Motors purchased Engine Cooling Fan to South most track of Overhead Drivers Aid system

13.7.    plaintiff found mistake in Horiba Dynamometer Controller circuit

Stasko v General Motors Corporation – Stanley R. Stasko Resume

14. **Emissions Wing Renovation – Project Management**

14.1.    Recorded day-to-day construction contractor head count and work activity

14.2.    Circulated and approved construction contractor equipment submittals

14.3.    plaintiff project managed the construction contractor portion of the Emission Wing Renovation independent of Ward Wiers or Denise Wiese

14.3.1. plaintiff did not revive or ask approval from Ward Wiers or Denise Wiese on a daily basis

14.3.2. plaintiff did not revive or ask approval from Ward Wiers or Denise Wiese on a weekly basis

14.3.3. plaintiff did not revive or ask approval from Ward Wiers or Denise Wiese on a monthly basis

14.3.4. Ward Wiers and Denise Wiese could have been in a hospital and plaintiff would not have noticed their absence during day-to-day Project Management of contractor work associated with the Emissions Wing Renovation

14.4.    plaintiff approved outside contractor monthly request for payments

14.4.1. plaintiff did not ask for Denise Wiese or Ward Wiers approval

14.5.    Reviewed and approved outside contractor work order bulletins, field orders, and time and material work activity

14.5.1. plaintiff did not ask for Denise Wiese or Ward Wiers approval

14.6.    When Utley-James was having financial difficulty paying its subcontractors it was plaintiff that was General Motors representative in piecing together the financial status of the Emission Wing Renovation project

14.6.1. plaintiff did not ask for Denise Wiese, Ward Wiers, or Chuck Satchell approval

14.7.    When General Motors negotiated paying Utley-James subcontractors plaintiff was 1 of 2 General Motors representatives (John Stanek the other GM representative) in bring to a conclusion the financial status of the Emission Wing Renovation project

14.7.1. plaintiff did not ask for Denise Wiese, Ward Wiers, or Chuck Satchell approval

14.8.    plaintiff directed UAW personnel in modifying and starting-up the Overhead Door Logic Controls

Stasko v General Motors Corporation – Stanley R. Stasko Resume

14.9.    Documentation of Emissions Wing Renovation project

including tagging major electrical equipment supplied by outside construction

contractor (transformers, motor control centers, disconnects)

14.9.1. including tagging 120VAC electrical outlets

14.9.2. including documenting the rewrite of the Modicon 884 PLC program

15. **Instrumentation Console and Custom Enclosure**

15.1.    designed and fabricated in-house; not purchased from a supplier

15.2.    approximately eight thermocouple channels

15.2.1. with Acromag signal conditioning modules

15.2.2. up to sixteen modular signal conditioning modules in a 19inch rack mount

housing

15.3.    approximately six Viatran pressure transducers

15.3.1. differential pressure measurement

15.3.1.1.    positive pressure measurement

15.3.1.2.    negative pressure measurement

15.3.1.3.    differential pressure measurement

15.3.2. mounted on a sliding shelf for easier servicing

15.3.2.1.    pressure transducer calibration switches mounted on sliding shelf for close

proximity to pressure transducers

15.4.    Engine RPM pickup and measurement

15.5.    all internal interface wiring documentation

15.6.    all external interface wiring documentation from Instrumentation Console to

Emission Test Site Patch Panel

15.7.    mounted on middle track of the Overhead Track System

15.7.1. useful for positioning temperature, pressure, and rpm sensors near engine

compartment for front-wheel drive vehicles or rear-wheel drive vehicles

15.7.2. short pressure transducer lines minimize pressure line dips / valleys

15.8.    plaintiff procured custom enclosure

15.9.    Phil Brock modified custom enclosure to mount onto the Overhead Track System

Stasko v General Motors Corporation – Stanley R. Stasko Resume

16. **Emission Test Site Instrumentation Patch Panel**

16.1.    designed in-house by plaintiff

16.2.    wire interfacing by plaintiff

16.3.    documentation by plaintiff

16.4.    Project management by plaintiff

16.5.    Fabricated by Richmond Instruments

16.6.    Signal input from array of sources

16.6.1. Engine Out Emission Analyzers

16.6.2. Tailpipe Emission Analyzers

16.6.3. Bag Emission Analyzers

16.6.4. Instrumentation Console temperature signals

16.6.5. Instrumentation Console pressure signals

16.6.6. Instrumentation Console RPM signal

16.7.    Signal outputs

16.7.1. Signal output #1 --- to Site Computer Aux01 signal input

16.7.2.            --- to (12) Channel Recorder channel 01

16.7.3. Signal output #2 through #12 similar to Signal output #1

16.7.4. Signal output #13 --- to Site Computer Aux13 signal input

16.7.5. Signal output #14 through #18 similar to Signal output #13

16.8.    Recessed slots to hold stereo-jack connectors in a tidy storage

Stasko v General Motors Corporation – Stanley R. Stasko Resume

17. **12-Channel Strip Chart Recorder and Custom Enclosure**

    17.1.    plaintiff directed technician Ken Welbaum in collecting measurement data from a cross section of vehicles

    17.2.    plaintiff specified height of strip chart recorder pen above finished floor based on sample data collected

    17.3.    plaintiff surveyed several technicians to obtain proper viewing angle of 12-channel strip chart recorder pens from Emission Test Site vehicle

    17.4.    included with pull-out drawer to catch z-fold strip chart recorder paper while in use

    17.5.    plaintiff provided Richmond Instruments with preliminary drawings for fabrication of 12-channel strip chart recorder cart important dimensions

    17.6.    fabricated by Richmond Instruments

    17.7.    plaintiff designed instrumentation interfacing

18. **Dew Point Meter and Ambient Temperature Sensor and Custom Enclosure**

    18.1.    plaintiff selected EG&G Dew Point Meter and Ambient Temperature Sensor

      18.1.1.  plaintiff expanded supplier base because General Eastern Dew Point Meter was the standard for General Motors MVEL

    18.2.    plaintiff worked with supplier to implement plaintiff specified modifications; (this can be verified by talking with Jim Parker the EG&G sales representative at the time)

    18.3.    Dew Point sample point and Ambient Temperature sensor remote mounted on Overhead Track System to measure Engine Intake Air conditions

    18.4.    plaintiff used Acromag signal conditioning modules to isolate signals to HVAC controls and Test Site Computer

    18.5.    plaintiff designed interface wiring

    18.6.    Richmond Instruments fabricated the custom enclosure

    18.7.    Project management by plaintiff

    18.8.    one unit in Test Site #1; one unit in Test Site #2; one unit in Test Site #3

    18.9.    one unit in Test Site #4; one unit in Test Site #5; two units in Soak Area

    18.10.    one unit in Diesel Particulate Filter Weight Room

Stasko v General Motors Corporation – Stanley R. Stasko Resume

19. **Instrumentation Interfacing**

19.1.    General Motors Milford Proving Grounds (MVEL) provided the Emissions Test Site Computer

19.1.1. MVEL interfaced the Emissions Test Site Computer to the Emissions Analysis Systems

19.1.2. MVEL documented the interfacing from the Emissions Test Site Computer to the Emissions Analysis Systems

19.2.    plaintiff designed the interfacing for the interior of the Instrumentation Patch Panel

19.3.    plaintiff documented the interfacing for the interior of the Instrumentation Patch panel

19.4.    plaintiff designed the interfacing from the Instrumentation Patch Panel to the Emissions Test Site Computer

19.5.    plaintiff documented the interfacing from the Instrumentation Patch panel to the Emissions Test Site Computer

19.6.    plaintiff designed the interfacing from the Instrumentation Patch Panel to the 12-Channel Strip Chart Recorder

19.7.    plaintiff documented the interfacing from the Instrumentation Patch panel to the 12-Channel Strip Chart Recorder

19.8.    plaintiff designed the interior interfacing of the 12-Channel Strip Chart Recorder

19.9.    plaintiff documented the interior interfacing of the 12-Channel Strip Chart Recorder

19.10.    plaintiff designed the interfacing from the Instrumentation Console to the Instrumentation Patch Panel

19.11.    plaintiff documented the interfacing from the Instrumentation Console to the Instrumentation Patch Panel

19.12.    plaintiff designed the interfacing for the interior of the Instrumentation Console

19.13.    plaintiff documented the interfacing for the interior of the Instrumentation Console

Stasko v General Motors Corporation – Stanley R. Stasko Resume

19.14.    plaintiff designed the interfacing from the Dew Point Meter and Ambient
Temperature Sensor Enclosure to the Instrumentation Patch Panel

19.15.    plaintiff documented the interfacing from the Dew Point Meter and Ambient
Temperature Sensor Enclosure to the Instrumentation Patch Panel

19.16.    plaintiff designed the interfacing for the interior of the Dew Point Meter and
Ambient Temperature Sensor Enclosure

19.17.    plaintiff documented the interfacing for the interior of the Dew Point Meter and
Ambient Temperature Sensor Enclosure

20. **Programmable Logic Controllers – integrated into Emissions Analysis Systems**

20.1.    Don Nagy of General Motors Milford Proving Grounds specifically stated that
Programmable Logic Controllers have been tried by General Motors before and cannot
be made to work for Emissions Analysis Systems application; Don Nagy recommended
using Milford Vehicle Emissions Lab Bench Controller

20.2.    When General Motors was starting up the first Programmable Logic Controller
and a minor problem appeared between the Emissions Test Site Computer and the
Programmable Logic Controller; you should have seen Jo-han-na You-house (Don
Nagy's representative from General Motors Milford Proving Grounds responsible for the
Emissions Test Site Computer) **run** to the telephone and start complaining that it does
not work

20.3.    plaintiff rewrote practically all of the Modicon 884 PLC software provided by
Richmond Instruments

20.3.1. Richmond Instruments software exhausted PLC memory

20.3.2. Richmond Instruments software incomplete and non-functioning

20.4.    plaintiff version of Modicon 884 PLC software uses unique programming logic

20.5.    plaintiff proved Don Nagy and General Motors wrong by proving Programmable
Logic Controllers can be used in Emission Analysis System applications

20.6.    plaintiff implementation of Modicon 884 Programmable Logic Controllers is
another example of plaintiff expanding General Motors vendor base because General
Motors strongly uses Allen Bradley Programmable Logic Controllers

Stasko v General Motors Corporation – Stanley R. Stasko Resume

21. **Large Temperature and Humidity Display**

21.1.    the purpose of the Large Temperature and Humidity Display (approximately 30 inches wide by 42 inches tall) was to make the display large enough whereby a group of General Motors managers touring the Emissions Wing could easily view Emissions Test Site temperature and humidity conditions in real time

21.2.    located near the entrance to the Emission Wing

21.3.    grouped in logical order

21.3.1. Test Site #1 – Temperature and Humidity

21.3.2. Test Site #2 – Temperature and Humidity

21.3.3. Test Site #3 – Temperature and Humidity

21.3.4. Test Site #4 – Temperature and Humidity

21.3.5. Test Site #5 – Temperature  and Humidity

21.3.6. Soak Area #1 – Temperature and Humidity

21.3.7. Soak Area #2 – Temperature and Humidity

22. **Honeywell HVAC Central Control Station**

22.1.    plaintiff directed Honeywell in the software configuration of the HVAC Central Control Station configuration

22.2.    ten display pages laid out by Stanley R. Stasko

22.3.    plaintiff specified the parameters to be displayed in logical groups

22.3.1. Emissions Test Site #1 parameters

22.3.2. Emissions Test Site #2 parameters

22.3.3. Emissions Test Site #3 parameters

22.3.4. Emissions Test Site #4 parameters

22.3.5. Emissions Test Site #5 parameters

22.3.6. Soak Area parameters

22.3.7. Temperature and Humidity parameters

22.3.8. Test Site status parameters

22.4.    Honeywell DDC personal computer physically located in Emissions Wing Host Computer Room

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 23. Smoke Detector Graphics Display Panel

23.1.    the Emission Wing Renovation included installing raised flooring in areas previously with bare concrete floors

23.2.    the Emission Wing Renovation included installing suspended ceilings in areas previously open ceilings

23.3.    smoke detectors were installed above the suspended ceilings, on the exposed side of the suspended ceilings, and below the raised flooring

23.4.    a Smoke Detector Graphics Display Panel was installed next to the Large Temperature and Humidity Display Panel to give General Motors Security a quick reference to the location of a alarm and / or fault of a smoke detector

### 24. Overhead Door Logic Controls

24.1.    part of the Emissions Wing renovation was the installation of a vehicle air lock to environmentally isolate the Emissions Wing from the rest of the Engineering Building

24.2.    an automobile trying to enter the Emissions Wing would approach the air lock; the first door would open; the vehicle would enter the air lock; the first door would close; the second door would open, then the vehicle would drive out of the vehicle air lock

24.3.    the vehicle air lock was supplied by Utley-James (the outside contractor) and used conventional discrete logic (no Programmable Logic Controller) for controlling the sequence of the vehicle air lock operation

24.4.    the overhead door logic controls does not work

24.5.    the enclosure is so small there is practically no room to add any relays if necessary

24.6.    plaintiff reviews the engineering prints and directs two UAW personal to rewire the Overhead Door logic controls according to plaintiff redesign; (this can be verified by talking to Jim and Frank the two UAW electricians)

24.7.    the Overhead Door logic controls redesign is successful

24.8.    plaintiff writes an Operations Memo

24.9.    Operations memo distributed to appropriate personal

Stasko v General Motors Corporation – Stanley R. Stasko Resume

25. **Software Programming Skills and Software Program Management**

   25.1.      Wrote **Basic Language** software program for 47 MM Diesel particulate Filter Sampling System

   25.2.      Fortran language software programming at Lawrence Technological University Southfield, Michigan

   25.3.      Additional software programming at Lawrence Technological University Southfield, Michigan as part of a Special dual degree program in Mathematics and Computer Science

      25.3.1. Computer Tech 3     Course # 32.273

      25.3.2. Computer Science 1  Course # 32.425

      25.3.3. Computer Science 2  Course # 32.513

   25.4.      Microprocessor assembly language software programming at Lawrence Technological University Southfield, Michigan as part of BSEE degree program

   25.5.      Modicon 884 Programmable Logic Controller software programming for Emission Wing Emissions Analysis equipment

   25.6.      Modicon 984 Programmable Logic Controller software programming for Dynamometer Wing programmable logic controller enclosure application

   25.7.      showed EDS software personnel how Digital Machine Design techniques could be used to structure the software program for Dynamometer Wing Controlled Schedule Testing software

   25.8.      explained software requirements for Dynamometer Test Cell End-to-End Instrumentation calibration to EDS

   25.9.      Wrote Lotus 1-2-3 spreadsheet program to estimate the software headcount requirements

      25.9.1. Variables included: estimated software hours, vacation time, normal day-to-day software maintenance overhead, and new software employee effectiveness

Stasko v General Motors Corporation – Stanley R. Stasko Resume

**General Motors Technical Center – Engineering Building - Dynamometer Wing Renovation**

**26. Fuel Meter Calibration Cart**

26.1.    Old fuel meter calibration cart poured raw gasoline into an open container

26.1.1. Gasoline could spill unto floor

26.2.    Old fuel meter calibration cart did not meet Class 1, Division 1, Group C / D requirements

26.3.    New fuel meter calibration cart

26.4.    All gasoline fuel enclosed in stainless steel or compatible material

26.5.    Safety improved with Class 1, Division 1, Group D requirements; positive pressurization; or intrinsic safety

26.6.    Employed new technology; EXAC coriollis meter

26.7.    plaintiff worked with pulse counter supplier to modify pulse counter to plaintiff custom specifications

26.8.    plaintiff designed and engineered fuel meter calibration cart

26.9.    plaintiff selected major components for fuel meter calibration cart

26.10.    plaintiff procured major components for fuel meter calibration cart

26.11.    plaintiff specified interface wiring for fuel meter calibration cart

26.12.    plaintiff wrote software program to semi-automate calibration report for the fuel meter calibration cart

26.13.    plaintiff project managed the fabrication of the fuel meter calibration cart

26.14.    this can be verified by contacting Karl Klida the General Motors Salaried technician assigned to fabricating the Fuel Meter Calibration Cart

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 27. Fuel Injector Test Stand Renovation

27.1.      Surveyed project personnel to determine fuel pressure and flow requirements

27.2.      Surveyed project personnel to determine problems with existing Fuel Injector Test Stand procured by General Motors that remained unresolved until plaintiff arrived in Dynamometer Wing

27.3.      Design and engineering to make all wetted materials compatible with gasoline, methanol, and ethanol fuels

27.4.      Design and engineering to make appropriate electrical equipment compatible with Class 1, Division 1, Group D requirements

27.5.      Design and engineering to positive purge electrical enclosures to reduce rating from Class 1, Division 1, Group D to non-hazardous

27.6.      Unique application of intrinsic safety barrier to make computer keyboard intrinsically safe in a Class 1, Division 1, Group D environment

27.7.      Design and engineering of modification of electrical controls

27.7.1. Application specific start-up procedure to ensure Fuel Injector Test Stand cannot be casually started by unauthorized personnel drifting into the remote Fuel Blend House

27.8.      Specified, ordered, and procured major components

27.9.      Coordinated the transfer of the Fuel Injector Test Stand from Test Cell #12 (old carburetor flow room) to Fuel Blend House

27.10.      Project management and project coordination of work activity between outside suppliers, General Motors salaried personnel, and UAW personnel

27.11.      Assisted in equipment startup

27.12.      Wrote start-up procedure for Fuel Injector Test Stand remote HP computer

27.13.      to verify the scope of the changes to the Fuel Injector Test Stand renovation contact Lou Wine-nand (General Motors Engineer) and Dick Powel (General Motors Salaried Technician); also Steve Fry (a General Motors Salaried Technician from another General Motors Test Laboratory) who was familiar with using the renovated Fuel Injector Test Stand at the General Motors Technical Center, Dynamometer Wing

Stasko v General Motors Corporation -- Stanley R. Stasko Resume

**28. Elimination of Dynamometer Shimming**

28.1.       plaintiff eliminated Dynamometer shimming

28.2.       this was a procedure that General Motors Dynamometer Maintenance personal
could not explain its (have to pick the right word)

28.3.       when plaintiff eliminated Dynamometer shimming, Doug Neumann was retired

**29. Engine Coolant and Engine Oil Process Control**

29.1.       Significant equipment mounting space requirement reduction

29.1.1. Space savings allowed for a larger PLC enclosure to be mounted on the basement
test cell wall

29.1.2. Space savings aided in bring about a more consistent equipment layout as each
Dynamometer Test Cell was renovated

29.2.       Design and engineering of new engine coolant and engine oil heat exchangers;
(plaintiff procured the initial heat exchangers from Kundinger Fluid Power, Madison
Heights, Michigan)

29.2.1. Old engine coolant process cooling heat exchangers were oversized for modern
smaller displacement engines

29.3.       Design and engineering of new process control valves; (this can be verified by
talking to SW Controls, 45345 Five Mile Road, Plymouth, Michigan 48170 - one of the
two finalist selected for bidding the control valve order)

29.3.1. Engine coolant process cooling

29.3.1.1.    old engine coolant process cooling control valve was improperly sized and
did not work unless process heating steam was injected to generate an artifical
load

29.3.2. Engine coolant process heating

29.3.3. Engine oil process cooling

29.3.4. Engine oil process heating

29.4.       Replaced a mis-mash of solenoids, pipe sizes, control valves, and equipment
layout configuration with a consistent design

29.5.       plaintiff calculated new copper pipe sizes

Page 21 of 89

Stasko v General Motors Corporation – Stanley R. Stasko Resume

29.6.        plaintiff calculated new solenoid specifications

29.7.        plaintiff specified new water shock absorbers

29.8.        Design and incorporation of new Honeywell UDC3000 process controllers

  29.8.1. plaintiff specified product

  29.8.2. plaintiff designed equipment interfacing

  29.8.3. plaintiff designed hardware configuration

  29.8.4. plaintiff specified software configuration

  29.8.5. plaintiff performed detailed input / output calibration

  29.8.6. plaintiff determined PID tuning parameters

29.9.        plaintiff procured Techmation Protuner 2000 and introduce new technology in the
             tuning of PID process controller

  29.9.1. no more trial-and-error, or guessing

  29.9.2. could be used with Honeywell UDC3000 process controllers or any of a large
          array of PID process controllers

  29.9.3. to verify that plaintiff Techmation Protuner 2000 contact Techmation 8070 E.
          Morgan Trail, Suite 150, Scottsdale, Arizona 85258-1228

29.10.       New engine coolant process cooling and heating support stand located in
             Dynamometer test cell

  29.10.1.        Engine coolant process cooling heat exchanger

  29.10.2.        Engine coolant process heating heat exchanger

  29.10.3.        Expansion tank (new expansion tank size calculated by plaintiff)

  29.10.4.        Pressure relief valve

  29.10.5.        Coolant fill port

  29.10.6.        Coolant level sight glass

  29.10.7.        Coolant presence safety probe

  29.10.8.        Overflow tube

  29.10.9.        By relocating the engine coolant process cooling heat exchanger and
                  engine coolant process heating heat exchanger to the support stand located in the

Stasko v General Motors Corporation – Stanley R. Stasko Resume

        Dynamometer test cell the amount of antifreeze required to fill the engine coolant system was reduced from approximately 20 gallons to 5 gallons

29.11.     Specified, ordered, and procured major components including heat exchangers, control valves, solenoid, water shock absorbers, and Honeywell UDC300 process controllers

29.12.     Coordinated the design of the new engine coolant process cooling and engine coolant process heating heat exchanger support stand

29.13.     Project management and project coordination of work activity between outside suppliers, General Motors salaried personnel, and UAW personnel; (this can be verified by contacting Dave Van-poel-e-vor-de) the General Motors Salaried technician assigned to various Engine Coolant and Engine Oil Process Control projects)

29.14.     plaintiff provided detailed equipment startup

29.15.     Wrote and maintained detailed Honeywell UDC3000 input / output configuration tables and PID tuning parameters

Stasko v General Motors Corporation – Stanley R. Stasko Resume

## 30. DSP Combustion Analysis System

30.1.    Original report on combustion analysis made by General Motors Research

30.2.    General Motors Corporation then worked with DSP Technology to sell Combustion Analysis Systems to General Motors Corporation

30.3.    plaintiff task was to procure two integrated Combustion Analysis Systems from DSP Technology

30.4.    Since plaintiff was a designer / engineer / project manager plaintiff decided to allow two Test Cell Operators (people who would actually use the equipment) to travel to DSP Technology in California, USA

30.5.    The two Test Cell Operators selected were Eric Dobis and Denise Montville

30.5.1. Eric Dobis went on the first trip; the timeframe can be easily pinpointed since Eric Dobis visited DSP Technology during the famous California earthquake that caused a major bridge to collapse

30.5.2. Denise Montville went on the second trip; the timeframe can be narrowed down since Denise Montville called plaintiff because he was having problems charging items with his credit card

30.6.    plaintiff reward for successfully procuring two integrated Combustion Analysis Systems => Basically nothing

Page 24 of 89

Stasko v General Motors Corporation – Stanley R. Stasko Resume

31. **DSP Combustion Analysis System – Several years later**

    31.1.      Several years later General Motors Corporation and DSP Technology had a problem with the DSP Combustion Analysis Systems that General Motors Corporation could not solve nor could DSP Technology solve

        31.1.1. This can be verified by talking to General Motors engineer Tony Sperling or with DSP Technology (try DSP Technology sales representative Tim Sante)

    31.2.      General Motors Corporation got so desperate that they accused DSP Technology of having a software virus in their equipment

    31.3.      General Motors Corporation asked plaintiff to try to solve the problem

    31.4.      The basic problem – DSP Technology Combustion Analysis System RPM signal unstable

    31.5.      Example: 2400 RPM + / - a lot of fluctuation

    31.6.      plaintiff within minutes breaks solves the problem

    31.7.      RPM signal from one pulse per revolution signal

    31.8.      2400 RPM equals 40 pulses per second

    31.9.      Display updates approximately one update per second

    31.10.     Therefore RPM signal accuracy at 2400 RPM equals 40 pulses + / - 1 pulse equals 2.5 percent accuracy

    31.11.     2400 RPM * 2.5 percent equals 60 RPM

    31.12.     2400 RPM + / - 60 RPM; Problem solved!

    31.13.     Remember nobody in General Motors Corporation nor in DSP Technology could figure out the problem

    31.14.     plaintiff reward for solving this problem – basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 32. Druck Pressure Transducers

32.1.    plaintiff was willing to break away from many years of using Viatran pressure transducers in Emission Wing Emissions Testing and Dynamometer Wing Dynamometer Testing and switch to Druck pressure transducers

32.2.    plaintiff developed custom pressure transducer specifications for Dynamometer Testing

   32.2.1. old Viatran pressure transducers

      32.2.1.1.    0.40 percent full scale accuracy

      32.2.1.2.    problems with temperature drift

      32.2.1.3.    problems with long term stability

32.3.    new Druck pressure transducers

   32.3.1. 0.15 percent full scale accuracy

   32.3.2. tighter temperature drift specifications

   32.3.3. greater long term stability; greater than 6 months without recalibration required

32.4.    relocating the Druck Pressure Transducers to the new Instrumentation Booms allowed for the elimination of the Dynamometer Test Cell secondary console

   32.4.1. also eliminated the accumulation of fluid from the pressure transducer sample lines

   32.4.2. also eliminated long pressure transducer sample lines

32.5.    by selecting Druck Pressure Transducers plaintiff expanded General Motors supplier base; plaintiff expanded his experience with working with multiple vendors

32.6.    plaintiff supported using Druck pressure transducers, Paul Durrenberg supported using Viatran pressure transducers

32.7.    plaintiff evaluated Druck and Viatran pressure transducers (that meet plaintiff custom pressure transducer specifications) and showed that Druck pressure transducers performed better than the Viatran pressure transducers

32.8.    Druck pressure transducers first installed in Dynamometer Test Cell #13 renovation

Stasko v General Motors Corporation – Stanley R. Stasko Resume

32.8.1. some pressure transducers operated over one year without re-calibration and still operated within Dynamometer Wing Test Cell operating specifications (within +/- one percent)

32.9.     because the Druck pressure transducers were mounted in overhead operators boom this helped in eliminating of Dynamometer Test Cell Operators Console (located inside Test Cell)

32.10.     Tim Sante, a sales representative for a supplier, specifically asked plaintiff about his application of pressure transducers in Dynamometer Testing

32.11.     One Druck pressure transducer mysteriously damaged; would be interesting to see if it was sabotaged (plaintiff caught PED committing sabotaged)

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 33. New Programmable Logic Controller (PLC) and PLC Enclosure

33.1.    Old Mechanical Box removed

33.2.    Old wiring removed

33.3.    Old conduit, old wire-way, and old oversized junction boxes removed

33.4.    plaintiff ended the old practice of trying to reuse the existing conduit and wiring (General Motors did not support the scrapping of the existing conduit, the existing wire-way, and the existing oversized junction boxes until General Motors seen how good the Dynamometer Test Cell looked with the new electrical conduit)

33.5.    plaintiff proved he could design and engineer an entire Programmable Logic Controller for a Dynamometer Test Cell

33.6.    plaintiff redesign of the Engine Coolant Temperature and Engine Oil Temperature Process Control System opened up the needed wall space for the larger Programmable Logic Controller Enclosure

33.7.    The new Programmable Logic Controller enclosure, the new electrical conduit, the carefully layout of the new equipment, and the fresh painting of the work area transformed the Dynamometer Test Cell basement work area into a modern looking Dynamometer Test Lab

33.7.1. plaintiff forced General Motors to take a clean sheet approach

33.7.1.1.    the reader can not appreciate how much harassment plaintiff received from General Motors for not reusing the existing conduit, the existing wire-way, and the existing oversized junction boxes

33.7.2. Prior to plaintiff transferring into the Dynamometer Wing from the Emissions Wing, an ISSC Programmable Logic Controller was implemented in an existing Mechanical Box (the surrounding Dynamometer Test Cell basement work area still looked outdated)

33.7.3. A picture speaks a thousand words to the aesthetic improvement made by plaintiff with the new Programmable Logic Controller Enclosure, the new electrical conduit, the carefully layout of the new equipment, and the fresh painting of the work area in transforming the Dynamometer Test Cell basement

Page 28 of 89

Stasko v General Motors Corporation -- Stanley R. Stasko Resume

33.8.    plaintiff designed and engineered the interfacing of the Programmable Logic
Controller enclosure to:

33.8.1. a manual push button interface panel in Dynamometer Test Cell #11

33.8.2. a Video Based Man-Machine Interface in later Dynamometer Test Cell
renovations

33.8.3. a new Dynamometer Hard Stop safety circuit

33.8.4. a new Temperature and RPM safety meters

33.8.5. a new General Electric Solid State Dynamometer Controller in Dynamometer
Test Cell #11

33.8.6. old style General Electric Motor- Generator Dynamometer Controller in other
Dynamometer Test Cells (to verify that plaintiff knew how to interface to an old
style General Electric Motor-Generator Dynamometer Controller contact Michael
Delduca at U.S. Environmental Protection Agency 2565 Plymouth Road, Ann
Arbor, Michigan 48105)

33.8.6.1.    when plaintiff work for DSP Technology, he was assigned to renovate one
test cell EPA which required the interfacing to an old style General Electric
Motor – Generator Dynamometer Conttoller

33.8.7. a new Meiden AC Dynamometer Controller in other non- General Electric Motor
– Generator Dynamometer Controller Test Cells

33.9.    plaintiff utilized Graysoft Software in conjunction with Autocad Computer Aided
Design Software to generate the required PLC Enclosure fabrication prints

33.9.1. in other words plaintiff generated all Graysoft Software PLC Enclosure
fabrication prints

33.10.    plaintiff did the equivalent work of multiple full time General Motor employees

33.10.1.    one of the roles plaintiff performed was the equivalent work of a full time
CAD designer

33.10.2.    plaintiff did the equivalent work of a full time secretary making the
necessary blue prints, keeping prints stored and organized, and distributing prints to
the appropriate Dynamometer Test Lab technicians

Stasko v General Motors Corporation – Stanley R. Stasko Resume

33.11.    plaintiff designed and engineered the software programming of the Programmable
Logic Controller including:

33.11.1.    the manual push button interface panel in Dynamometer Test Cell #13

33.11.2.    converting the Programmable Logic Controller software programming for
use with Video Based Man-Machine Interface in later Dynamometer Test Cell
renovations

33.11.3.    ensuring the Dynamometer Hard Stop safety circuit was Safe prior to
allowing the Dynamometer Test Cell could begin the start-up sequence

33.11.4.    the Dynamometer Test Cell start-up sequence ensured that

33.11.4.1.    the Dynamometer Motor-Generator was enabled prior to the
Dynamometer being turned on

33.11.4.2.    the Dynamometer Test Cell Ventilation was enabled prior to the
Dynamometer being turned on

33.11.4.3.    without getting into all the start-up sequence details it is sufficient to note
that the PLC software anticipated a specific Dynamometer Test Cell start-up
sequence

33.12.    Specified, ordered, and procured major components

33.12.1.    Including PLC processor, PLC housings, and PLC modules

33.13.    Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried
personnel, software personnel and UAW personnel

33.14.    Provided detailed startup assistance

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 34. New CPI Front-end Equipment

34.1.  Eliminated over one dozen relays by eliminating relay switching for Thermocouple signals

34.2.  Eliminated thermocouple cold junction heater ovens; thereby, saving electricity and space

34.3.  Elimination of using an non-standard thermocouple cold junction reference temperature

34.4.  Reduction from Type-J and Type-K thermocouples to Type-K only; thereby, reducing operator error, and reducing material procurement / storage requirements

34.5.  Reduction of two thermocouple software calibration curves to one thermocouple calibration curve

34.6.  Eliminated confusing North / South thermocouple switching

34.6.1. When North end is selected: North T/C = 1 to 10

34.6.2.                                              South T/C = 11 to 20

34.6.3. When South end is selected: North T/C = 11 to 20

34.6.4.                                              South T/C = 1 to 10

34.7.  Pressure transducers relocated in overhead operators

34.7.1. helped in eliminating of Dynamometer Test Cell Operators Console

34.7.2. elimination of fluid accumulation in pressure transducer sample lines

34.7.3. elimination of long pressure transducer sample lines

34.8.  Eliminated Dynamometer Test Cell Operator Console

34.8.1. Freed up space for new Sample Conditioning Unit

34.9.  converted existing low usage closet into an important signal interface closet for new 19 inch rack mountable terminal strips; thereby, eliminating calibration technicians working on hands and knees

34.10.  Specified and coordinated UAW work activity for seven inch diameter hole core through solid wall

34.11.  Design and engineering of instrumentation interfacing which included

34.11.1.        HP computer / CATS software configuration information

Stasko v General Motors Corporation – Stanley R. Stasko Resume

> 34.11.2.    Instrumentation terminal strip interfacing
>
> 34.11.3.    Instrumentation interface cable specification, wire color, cable numbering
>
> 34.11.4.    Interfacing to signal conditioning modules as needed
>
> 34.11.5.    Interfacing to thermocouples, pressure transducers, analog input connectors, and Emissions analysis equipment
>
> 34.11.6.    interfacing to Emissions Analyzers for range sense and range selection control (plaintiff interfaced to Emissions Analyzers range sense and range selection control when plaintiff worked for DSP Technology and was assigned to renovate one test cell renovation for Chrysler – Livonia; contact Thomas Lawrence or David Bjarnesen at Chrysler Corporation 37200 Amrhein, Livonia, Michigan 48150-1108)

34.12.    Documentation of over 50 pages of instrumentation interfacing

34.13.    Design and engineering of instrumentation power distribution

> 34.13.1.    Power supply interfacing
>
> 34.13.2.    Power distribution fuse protection; you could dead short an analog input +24 VDC, +12 VDC, or +5 VDC voltage source at the test cell operators boom and a fuse protected the wiring and power supplies from damage
>
> 34.13.3.    Visual blown fuse indicators for easy diagnostics

34.14.    Design and engineering of instrumentation grounding and shielding

34.15.    Specified, ordered, and procured major components; (verify by contacting Ted Ma-ko-viak the sales representative of the CPI front-end equipment)

> 34.15.1.    Including CPI front-end equipment, CPI terminal barriers, signal conditioning modules, pressure transducers, interface wiring, and electrical connectors

34.16.    Project management and project coordination of work activity between General Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried personnel, software personnel and UAW personnel

34.17.    Provided detailed startup assisted; (this can be verified by contacting Karl Klida; a General Motors Salaried technician who worked on various CPI Front-end Equipment projects)

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 35. AutoCAD Drawings

35.1.  Farris Murray generated the two-dimensional and three-dimensional drawings for the fabrication of the Instrumentation Booms from sheet metal

35.2.  plaintiff completed "Beginning AutoCAD" at General Motors Institute Engineering & Management Institute; Certificate dated May 18, 1989

35.3.  When plaintiff completed AutoCAD training, plaintiff designed the 2-dimentional drawings for the electrical connectors interface panels (plural); Interfacing the engine-under-test to the various Dynamometer Test Cell Measurement and Control Systems including:

35.3.1. Type-K thermocouple interface

35.3.2. Engine Coolant and Engine Oil temperature control interface

35.3.3. Auxiliary analog input interface

35.3.4. Auxiliary pulse signal input interface

35.3.5. Engine Over-speed interface

35.3.6. Engine Coolant circulation rate and Engine Oil circulation rate

35.4.  plaintiff designed all the two-dimensional AutoCAD drawings for fabrication of the electrical connectors interface panels by machine shop personnel

35.5.  plaintiff designed all the two-dimensional AutoCAD graphics drawings for the Art Work for the electrical connector interface panels text

35.6.  Once plaintiff completed "Beginning AutoCAD" at General Motors Institute Engineering & Management Institute, a transition from Farris Murray to plaintiff generating all the two-dimensional AutoCAD graphics drawings associated with the new CPI front-end equipment in a Dynamometer Test Cell renovation

35.7.  Once plaintiff completed "Beginning AutoCAD" at General Motors Institute Engineering & Management Institute, a transition from Farris Murray to plaintiff generating all the two-dimensional AutoCAD graphics drawings associated with the new Programmable Logic Controller and PLC Enclosure in a Dynamometer Test Cell renovation

35.7.1. Including interfacing to:

Stasko v General Motors Corporation – Stanley R. Stasko Resume

    35.7.2. Dynamometer Hard Stop safety circuit

    35.7.3. Auxiliary temperature safety meters

    35.7.4. Engine and Dynamometer RPM safety meters

    35.7.5. Manual push button Test Cell interface panel

    35.7.6. Dynamometer Controller

    35.7.7. Engine Coolant and Engine Oil Temperature Control System

    35.7.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

    35.7.9. Motor Control Center

35.8.    Fuel System controls

35.9.    plaintiff ran the blue prints and distribute the documentation to the various General Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried personnel, software personnel and UAW personnel

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 36. New Instrumentation Booms

36.1.    The existing Instrumentation Booms were removed and scrapped

36.2.    The Instrumentation booms:

36.2.1. provided routing for analog signal interfacing cable from the CPI front-end equipment to the engine-under-test

36.2.2. provided routing for discrete signal interfacing cable

36.2.3. provided routing for Engine Control Module interfacing from the Operator's Control Cabinet to the engine-under-test

36.2.4. provided housing for the Druck pressure transducers

36.2.5. provided housing for the Emissions Analysis Cylinder Distribution Manifold from the engine-under-test to the Dynamometer Wing Emission Sample Conditioning Unit; Emission Wing personnel provided and installed the Emissions Analysis Cylinder Distribution Manifold, the Dynamometer Wing Emission Sample Conditioning Unit

36.3.    The new Instrumentation Booms had three segregated compartments to reduce electrical noise interference between:

36.3.1. the analog interfacing cable

36.3.2. the discrete signal interfacing cable

36.3.3. the Engine Control Module interfacing from the Operator's Control Cabinet to the engine-under-test

36.4.    plaintiff specified the Instrumentation Boom compartment segregation

36.5.    Farris Mur-ray generated the two-dimensional and three-dimensional drawings for the fabrication of the Instrumentation Booms from sheet metal

36.6.    UAW hourly personnel fabricated, painted, and installed the Instrumentation Booms; (to verify plaintiff worked with UAW personnel contact Bob Welsh; plaintiff knew Bob Welsh as the highest ranking UAW representative in GM Technical Center, Engineering Building, Warren, Michigan from approximately CY1989 to CY1995)

36.7.    GM salaried Test Cell Operator installed the appropriate Engine Control Module equipment and interfacing for the engine-under-test

09-50026-mg    Doc 9093-5    Filed 02/04/11    Entered 02/04/11 17:42:53    B Part 4
Case 2:09-cv-14827-JAC-VMM    Document 40    Filed 12/11/09    Page 37 of 50

Stasko v General Motors Corporation – Stanley R. Stasko Resume

36.8.    plaintiff completed "Beginning AutoCAD" at General Motors Institute
Engineering & Management Institute; Certificate dated May 18, 1989

36.9.    When plaintiff completed AutoCAD training plaintiff did the 2-dimentional
drawings for the electrical connectors interface panels (plural); Interfacing the engine-
under-test to the various Dynamometer Test Cell Measurement and Control Systems
including:

36.9.1. Type-K thermocouple interface

36.9.2. Engine Coolant and Engine Oil temperature control interface

36.9.3. Auxiliary analog input interface

36.9.4. Auxiliary pulse signal input interface

36.9.5. Engine Over-speed interface

36.9.6. Engine Coolant circulation rate and Engine Oil circulation rate

36.10.    plaintiff designed (with AutoCAD) all the two-dimensional drawings for
fabrication by machine shop personnel

36.11.    plaintiff designed with AutoCAD all the two-dimensional graphics drawings for
the Art Work for the electrical connector interface panels text

36.12.    Since UAW Hourly personnel fabricated the Instrumentation Booms from sheet
metal no procurement of major components from outside vendors / suppliers was
necessary

36.12.1.    This is important to note because from plaintiff long list of Project
Management experience he has proved to be successful with working with Outside
Construction Contractors, GM suppliers, GM salaried personnel, and UAW hourly
personnel

36.13.    Project management and project coordination of work activity between General
Motors Emission Wing salaried personnel, General Motors Dynamometer Wing salaried
personnel, and UAW hourly personnel

Stasko v General Motors Corporation – Stanley R. Stasko Resume

**37. Humidity and Ambient Temperature Sensor per Test Cell**

37.1.    in the Emission Wing Renovation plaintiff selected EG&G Dew Point Meter and
Ambient Temperature Sensor

37.2.    the Dynamometer Wing renovation was considering using also EG&G Dew Point
Meters and Ambient Temperature Sensors

37.3.    plaintiff determined that there was a humidity gradient in the Dynamometer
Wing; therefore, two EG&G Dew Point Meters and Ambient Temperature Sensors
would not suffice in covering the entire Dynamometer Wing

37.4.    plaintiff mathematically determined that lower cost Ambient Temperature Sensors
and Relative Humidity sensors could be used instead of the more expensive EG&G Dew
Point Meter and Ambient Temperature Sensor

37.5.    one Ambient Temperature Sensors and Relative Humidity sensor per
Dynamometer Test Cell (approximately 20 units total) approximately the same cost of
(2) EG&G Dew Point Meter and Ambient Temperature Sensors

37.6.    plaintiff determined the conversion algorithm from (Percent Relative Humidity
and Ambient Temperature) to Dew Point for implementation in Dynamometer Test Cell
Computer

Stasko v General Motors Corporation – Stanley R. Stasko Resume

38. **Dynamometer Test Cell #13 Renovation**

38.1.     The first modern, integrated Dynamometer Test Cell renovation at the General
Motors Technical Center; completed in CY1990

38.2.     plaintiff designed, engineered, and incorporated new CPI front-end equipment
into Dynamometer Test Cell #13 renovation; see above in resume for details

38.3.     plaintiff designed, engineered, and incorporated new Programmable Logic
Controller and PLC Enclosure into Dynamometer Test Cell #13 renovation; see above in
resume for details

38.3.1. Including interfacing to Dynamometer Hard Stop safety circuit

38.3.2. Auxiliary temperature safety meters

38.3.3. Engine and Dynamometer RPM safety meters

38.3.4. Manual push button Test Cell interface panel

38.3.5. General Electric Solid State Dynamometer Controller

38.3.6. Engine Coolant and Engine Oil Temperature Control System

38.3.7. Supply and Exhaust Fan for Dynamometer Test Cell ventilation and pressure
control

38.3.8. Existing Motor Control Center

38.4.     Aaron Trammel fabricated the Fuel System control enclosure that housed the Fuel
System control solenoids

38.5.     plaintiff incorporated new Instrumentation Booms into Dynamometer Test Cell
#13 renovation; see above in resume for details

38.6.     plaintiff incorporated new Engine Coolant and Engine Oil Process Control into
Dynamometer Test Cell #13 renovation; see above in resume for details

38.7.     plaintiff designed, engineered, and incorporated the first Dynamometer Test Cell
ventilation and pressure control system into Dynamometer Test Cell #13

38.8.     plaintiff new Druck Pressure Transducers into Dynamometer Test Cell #13
renovation; see above in resume for details

38.8.1. after over one year the Druck Pressure Transducers remained within calibration
specifications; a significant maintenance time and cost savings

Stasko v General Motors Corporation – Stanley R. Stasko Resume

38.9.     plaintiff takes no credit for Cell #13 Motor Control Center; this was a piece of
extra equipment from the Dynamometer Wing blend-house renovation project

38.10.     Specified, ordered, and procured major components associated with:

38.10.1.     new CPI Front-end equipment

38.10.2.     new Programmable Logic Controller hardware

38.10.3.     new Engine Coolant and Engine Oil Process Control equipment

38.10.4.     new Honeywell UDC3000 Process Controllers

38.11.     Generated the required documentation for the design of:

38.11.1.     new CPI Front-end equipment

38.11.2.     new Programmable Logic Controller hardware

38.11.3.     new Programmable Logic Controller software programming

38.11.4.     new Engine Coolant and Engine Oil Process Control equipment

38.11.5.     new Honeywell UDC3000 Process Controllers configuration

38.11.5.1.  one configuration for Engine Coolant Process Control

38.11.5.2.  one configuration for Engine Oil Process Control

38.11.5.3.  one configuration for Test Cell Ventilation and pressure control

38.11.6.     Supply Fan Variable Frequency Drive configuration

38.11.7.     Exhaust Fan Variable Frequency Drive configuration

38.11.8.     existing Motor Control Center

38.12.     Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried
personnel, software personnel and UAW personnel by writing project activity timeline
utilizing Timeline project management software

38.12.1.     verify by contacting Bob Welsh; plaintiff knew Bob Welsh as the highest
ranking UAW representative in GM Technical Center, Engineering Building,
Warren, Michigan from approximately CY1989 to CY1995)

38.13.     Provided detailed startup assisted for:

38.13.1.     new CPI Front-end equipment (can be verified with Karl Klida)

38.13.2.     new Programmable Logic Controller hardware

09-50026-mg    Doc 9093-5    Filed 02/04/11    Entered 02/04/11 17:42:53    B Part 4
Case 2:09-cv-14827-JAC-VMM    Document 40    Filed 12/11/09    Page 41 of 50

Stasko v General Motors Corporation – Stanley R. Stasko Resume

38.13.3.    new Programmable Logic Controller software programming

38.13.4.    new Engine Coolant and Engine Oil Process Control equipment (can be verified with John Carver or Dave Van-poel-e-vor-de) new Engine Coolant and Engine Oil Process Control equipment

38.13.5.    new Honeywell UDC3000 Process Controllers configuration

38.13.5.1. one configuration for Engine Coolant Process Control

38.13.5.2. one configuration for Engine Oil Process Control

38.13.5.3. one configuration for Test Cell Ventilation and pressure control

38.13.6.    Supply Fan Variable Frequency Drive configuration

38.13.7.    Exhaust Fan Variable Frequency Drive configuration

38.13.8.    existing Motor Control Center

38.14.    first modern and integrated Dynamometer Test Cell renovation

38.14.1.    Prior to plaintiff renovating Dynamometer Test Cells, Dynamometer Test Cell engineers and managers would come-and-go readily

38.14.1.1. Phil Mo-han, Aaron Shin, Jim K-hill, Dave Thacher, Clark Bell, Steve Kaatz

38.14.2.    Prior to plaintiff renovating a Dynamometer Test Cell basically consisted of updating a piece of equipment (like a new exhaust fan) and maybe a fresh coat of paint.

38.14.3.    over time Dynamometer Test Cells were becoming a crows nest of one-of-a-kind equipment

38.14.4.    Dynamometer Test Cell #13 honestly looked like a new Dynamometer Test Cell looks new!

38.15.    Prior to plaintiff renovating Dynamometer Test Cell #13, plaintiff knows of nobody in General Motors Corporation designing, engineering, and project managing an entire Dynamometer Test Cell renovation in-house; a major project like this would have been outsourced to a company like Sverdrup (now Jacobs Engineering) and would have cost General Motors hundreds of thousands of dollars; plaintiff did the complete job for a fraction of the cost

Stasko v General Motors Corporation – Stanley R. Stasko Resume

38.16.    When plaintiff renovated Dynamometer Test Cell #13 in CY1990 the modern
Personal Computer were in their infancy – plaintiff did the work normally associated
with approximately nine people

38.16.1.    one Instrumentation engineer

38.16.2.    one Electrical engineer; the reader has to remember that in the late-1980's
a Personal Computer might only have 640 to 1,024 kilobytes of memory ( over 1000
times smaller than modern Personal Computers); therefore, each engineering major
application like programming the Programmable Logic Controllers might have its
own stand-alone programming device

38.16.3.    one Process Controls engineer; the reader has to remember that in the late-
1980's the modern 3 GHz Personal Computer with 2 Gigabyte plus of memory did
not exist; therefore, each engineering discipline would have been assigned to
different individuals

38.16.4.    one Mechanical engineer

38.16.5.    one Project Manager

38.16.6.    one AutoCAD designer and one technical designers to generate the
documentation

38.16.7.    one secretary to copy and distribute the documentation; the reader has to
remember that in the late-1980's the modern Microsoft multi-application software
was not deployed in Engineering Building Dynamometer Wing (Microsoft
Windows 95 equals CY1995); therefore, converting 50 plus pages of CPI Front-end
Equipment spreadsheet documentation from Portrait printout to Landscape printout
was a major task in late-1980's

38.16.8.    one to two technicians for start-up of the equipment

38.17.    plaintiff asked to go to personnel

38.17.1.    General Motors personnel asks plaintiff a series of questions

38.17.2.    people are falsely claiming to be plaintiff boss

38.17.2.1. General Motors asks => Was Don Nagy ever your boss? plaintiff reply =>
Never

Page 41 of 89

Stasko v General Motors Corporation – Stanley R. Stasko Resume

38.17.2.2.  General Motors asks => Was Chris Killien ever your boss? plaintiff reply
=> Never

38.17.2.3.  General Motors asks => Was Paul Durrenberg ever your boss? plaintiff
reply => Yes (Paul Durrenberg was plaintiff supervisor when plaintiff was a
High School co-op student; Paul Durrenberg was never plaintiff boss when
plaintiff hired into General Motors as an engineer)

38.17.3.         General Motors asks plaintiff – are you ready for 8th level???; plaintiff
responded by saying give him one more year

38.17.3.1.  please note General Motors never called plaintiff back to personnel for an
8th level or 9th level promotion

38.17.3.2.  in retrospect by asking plaintiff are you ready for 8th level General Motors
still did not think that plaintiff had earned his 8th level

38.17.3.3.  in retrospect plaintiff did the correct thing by not accepting an 8th level
position since plaintiff earned his 8th level with the Emission Wing Renovation
and plaintiff earned his 9th level with Dynamometer Test Cell #13 renovation

38.17.3.4.  plaintiff should have gone from 7th level to 9th level (and received a 1.30 X
1.30 equals 1.69) and received a 69 percent pay increase at minimum

38.17.3.5.  in retrospect plaintiff should have received a bonus (over and above his
pay raise) for each Dynamometer Test Cell Renovation he completed since a
major project like this would have been normally outsourced to a company like
Sverdrup (now Jacobs Engineering) and would have cost General Motors
hundreds of thousands of dollars more; thereby, saving General Motors
hundreds of thousands of dollars in Dynamometer Test Cell renovation costs

38.17.3.6.  more pay discrimination evidence later in this resume

Stasko v General Motors Corporation – Stanley R. Stasko Resume

39. **Dynamometer Test Cell #3 Renovation**

    39.1.    plaintiff designed, engineered, and incorporated new CPI front-end equipment into Dynamometer Test Cell #3 renovation; see above in resume for details

    39.2.    plaintiff designed, engineered, and incorporated new Programmable Logic Controller and PLC Enclosure into Dynamometer Test Cell #3 renovation; see New PLC above in resume for additional details

        39.2.1. Including interfacing to Dynamometer Hard Stop safety circuit

        39.2.2. Auxiliary temperature safety meters

        39.2.3. Engine and Dynamometer RPM safety meters

        39.2.4. Manual push button Test Cell interface panel

        39.2.5. Meiden AC Solid State Dynamometer Controller

        39.2.6. Engine Coolant and Engine Oil Temperature Control System

        39.2.7. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

        39.2.8. Existing Motor Control Center

    39.3.    Aaron Trammel fabricated the Fuel System control enclosure

    39.4.    plaintiff incorporated new Instrumentation Booms into Dynamometer Test Cell #3 renovation; see above in resume for details

    39.5.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine Oil Process Control into Dynamometer Test Cell #03 renovation; see above for details

    39.6.    plaintiff designed and engineered Dynamometer Test Cell ventilation and pressure control system for Dynamometer Test Cell #03

    39.7.    plaintiff incorporated new Druck Pressure Transducers into Dynamometer Test Cell #3 renovation; see above in resume for details

    39.8.    Cell #03 Motor Control Center was a piece of existing equipment; Cell #03 Motor Control Center replace with an Allen-Bardley Motor Control Center at a future date

    39.9.    Specified, ordered, and procured major components associated with:

        39.9.1. new CPI Front-end equipment

        39.9.2. new Programmable Logic Controller hardware

Stasko v General Motors Corporation – Stanley R. Stasko Resume

    39.9.3. new Engine Coolant and Engine Oil Process Control equipment

    39.9.4. new Honeywell UDC3000 Process Controllers

39.10.    Generated the required documentation for the design of:

    39.10.1.    over 50 pages of documentation for new CPI Front-end equipment

    39.10.2.    new Programmable Logic Controller hardware

    39.10.3.    new Programmable Logic Controller software programming

    39.10.4.    new Engine Coolant and Engine Oil Process Control equipment

    39.10.5.    new Honeywell UDC3000 Process Controllers configuration

      39.10.5.1. one configuration for Engine Coolant Process Control

      39.10.5.2. one configuration for Engine Oil Process Control

      39.10.5.3. one configuration for Test Cell Ventilation and pressure control

    39.10.6.    Supply Fan Variable Frequency Drive configuration

    39.10.7.    Exhaust Fan Variable Frequency Drive configuration

    39.10.8.    existing Motor Control Center

39.11.    Project management and project coordination of work activity between General Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried personnel, software personnel and UAW personnel

39.12.    Provided detailed startup assisted for:

    39.12.1.    new CPI Front-end equipment

    39.12.2.    new Programmable Logic Controller hardware

    39.12.3.    new Programmable Logic Controller software programming

    39.12.4.    new Engine Coolant and Engine Oil Process Control equipment

    39.12.5.    new Honeywell UDC3000 Process Controllers configuration

      39.12.5.1. one configuration for Engine Coolant Process Control

      39.12.5.2. one configuration for Engine Oil Process Control

      39.12.5.3. one configuration for Test Cell Ventilation and pressure control

    39.12.6.    Supply Fan Variable Frequency Drive configuration

    39.12.7.    Exhaust Fan Variable Frequency Drive configuration

39.13.    plaintiff reward for renovating Dynamometer Test Cell #3 => Basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

40. **Natural Gas Compressor**

    40.1.      the Natural Gas Compressor project is an example of plaintiff simultaneously designing, engineering, and / or project managing other Dynamometer Test Cell projects while simultaneously continuing to renovate other Dynamometer Test Cells

        40.1.1. plaintiff also made improvements to Dynamometer Test Cell renovations

    40.2.      plaintiff wrote the specifications for the procurement of one Natural Gas compressor

        40.2.1. Natural Gas compressor had to meet Class 1, Division 1, Group D explosion-proof electrical requirements

        40.2.2. Natural Gas compressor was to be located outside of the Dynamometer Test Cell exposed to the Summer and Winter temperature conditions

        40.2.3. one unique major component of the Natural Gas compressor system was a large Natural Gas dryer used to remove the water vapor from the Natural Gas since the unit was exposed to the winter cold

        40.2.4. Dynamometer Test Cell personnel specified Natural Gas compressor pressure (X PSIG) and flow (X CFM) requirements; this information can be verified with Dynamometer Test Cell manager Jim Currie

    40.3.      plaintiff provided detailed project management / leadership by working with the potential Natural Gas compressor suppliers to continuously refine the specifications, reduce the number of potential suppliers, and answer questions

    40.4.      plaintiff calculated and specified a new two inch Natural Gas supply line to be installed from the Engineering Building basement near the North Lobby to exterior of Dynamometer Wing near Dynamometer Test Cell #2 / #3 area

    40.5.      Project management and project coordination of work activity between General Motors Dynamometer Wing salaried personnel and UAW personnel

    40.6.      Provided detailed startup assisted as needed

    40.7.      plaintiff reward for the Natural Gas compressor project => basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

41. **Dynamometer Vault Spray Renovation**

41.1.    in a Dynamometer Test Cell the engine-under-test exhaust is directed into a large basement vault (over 3 feet wide X over 10 feet long X over 7 feet tall) in a near outside barometric pressure environment

41.2.    cooling the Dynamometer Vault from the heat generated by the engine-under-test consisted of ventilation air and spraying recirc water

41.3.    What is recirc water? Imagine a washing machine where city water is the clean water a person puts into the washer to clean his clothes. Recirc water is the dirty discharge water from the washer. The recirc water is recirculated over and over again; thereby, getting dirtier over time.

41.4.    The combination of the corrosive exhaust gas from the engine-under-test and the recirc water spray caused the concrete dynamometer vaults to deteriorate (literally start to crumble apart) over time

41.5.    please note that the Dynamometer Test Cell Operator has to work in the Dynamometer Vault when the engine-under-test is not running to properly suspend the engine-under-test exhaust system; this makes for a dirty and potentially unhealthy work environment

41.6.    plaintiff converted the Dynamometer Vault spray from recirc water to clean city water to make for a cleaner and healthier work environment

41.7.    using the Programmable Logic Controller the Dynamometer Vault spray could be turned off (thus saving on water consumption) with the option of manually turning on the Dynamometer Vault spray by the Dynamometer Test Cell Operator if needed

41.8.    please note: later in the resume plaintiff will replace four Aux. Temperature Safety Meters with a Modicon Analog Input Module; as plaintiff was leaving General Motors in CY1995 he was preparing to further automate the Dynamometer Vault spray by monitoring the Dynamometer Vault temperature with an averaging RTP temperature sensor

Stasko v General Motors Corporation – Stanley R. Stasko Resume

42. **Designed a Custom Pulse Circuit Board**

    42.1.    Kevin, a black male, from Tom Slaughter's electronics group one day came to plaintiff office and asked plaintiff to design a custom pulse delay circuit using IC (integrated circuit) chips

    42.2.    plaintiff designed the circuit using trigger delay chips

    42.3.    plaintiff generated the necessary documentation and forwarded the documentation to Kevin

    42.4.    this proves plaintiff could design electronic circuits; therefore, his depth of skills extended beyond Emission and Dynamometer Laboratory renovations

    42.5.    this proves plaintiff would help black people; despite the fact General Motors race baited plaintiff on many occasions

    42.6.    plaintiff reward for designing this custom pulse delay circuit => basically nothing

43. **PSI High Speed and High Channel Count Pressure Measurement System for Turbine Testing (Cell #04 / #05 area)**

    43.1.    plaintiff procured a PSI High Speed and High Channel Count Pressure Measurement System for Turbine Testing (Cell #04 / #05 area)

    43.2.    EDS was responsible for integrating the PSI High Speed and High Channel Count Pressure Measurement System into the standard Dynamometer Wing CATS System; contact Chris Killeen to verify

    43.3.    EDS never proved to plaintiff it could integrate the PSI High Speed and High Channel Count Pressure Measurement System into the standard Dynamometer Wing CATS System

    43.4.    the PSI High Speed and High Channel Count Pressure Measurement System mysteriously disappeared

Stasko v General Motors Corporation – Stanley R. Stasko Resume

## 44. Chassis Dynamometer Renovation

44.1.     The Chassis Dynamometer located in the Dynamometer Wing was similar to the Emission Test Sites located in the Engineering Building Emissions Wing but instead of having a twin roll electric dynamometer, the Chassis Dynamometer had a single 48 inch diameter roll electric dynamometer

44.2.     plaintiff designed and engineered the Supply and Exhaust Fan controls for Chassis Dynamometer Test Cell ventilation control; the most noticeable difference between the Supply and Exhaust fan controls in the Chassis Dynamometer Test Cell and a standard Dynamometer Test Cell renovation was the size of the motors involved

44.2.1. standard Dynamometer Test Cell Supply Fan motor => 7 ½ H.P.

44.2.2. Chassis Dynamometer Test Cell Supply Fan motor => 250 H.P.

44.2.3. standard Dynamometer Test Cell Exhaust Fan motor => 7 ½ H.P. to 15 H.P.

44.2.4. Chassis Dynamometer Test Cell Exhaust Fan motor => 75 H.P.

44.3.     plaintiff designed, engineered, and incorporated new Programmable Logic Controller and PLC Enclosure into Chassis Dynamometer renovation similar to Dynamometer Test Cell #13 renovation; adjusted for Chassis Dynamometer specific requirements

44.4.     plaintiff designed and engineered new heat lamp process controls; heat lamps are not part of a typical Emission Test Site

44.5.     plaintiff designed new operator's console and specified control room modifications

44.6.     Bruce Johnson (TSGF) was responsible for extending the Chassis Dynamometer Test Cell North

44.7.     Terri Hostetter recommended using SWEO power controller for the 48 inch diameter roll electric dynamometer

Stasko v General Motors Corporation – Stanley R. Stasko Resume

### 45. **Dynamometer Test Cell #07 Renovation with New Hemi-anechoic Chamber**

45.1.    Dynamometer Test Cell #07 was used for measuring engine noise

45.2.    When plaintiff renovated Dynamometer Test Cell #07 the Test Cell was single-ended and motored the engine-under-test; therefore, Dynamometer Test Cell #07 was more limited in scope as compared to Dynamometer Test Cell #13 or Dynamometer Test Cell #03

45.3.    Nevertheless Dynamometer Test Cell #07 had one highly unique aspect to its renovation, the renovation included the installation of a New Hemi-anechoic Chamber

45.4.    To help the reader understand what a Hemi-anechoic Chamber is try to imagine standing alone in an open field in the middle of Kansas or Nebraska; the sounds you make are only reflected by the ground below your feet and no sound reflections from any other direction; a Hemi-anechoic Chamber tries to simulate the experience standing alone in an open field in the middle of Kansas or Nebraska

45.5.    plaintiff designed, engineered, and incorporated new CPI front-end equipment into Dynamometer Test Cell #07 renovation; approximately half the size of Cell #13 renovation

45.6.    plaintiff designed, engineered, and incorporated new Programmable Logic Controller into Dynamometer Test Cell #07 renovation; approximately half the size of Cell #13 renovation

45.6.1. Including interfacing to:

45.6.2. Dynamometer Hard Stop safety circuit

45.6.3. Auxiliary temperature safety meters

45.6.4. Engine and Dynamometer RPM safety meters

45.6.5. Manual push button Test Cell interface panel

45.6.6. old style General Electric Motor-Generator Dynamometer Controller

45.6.7. Engine Coolant and Engine Oil Temperature Control System

45.6.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

45.7.    Existing Motor Control Center

Stasko v General Motors Corporation – Stanley R. Stasko Resume

45.8.    No new Instrumentation Booms into Dynamometer Test Cell #07 renovation

45.9.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine Oil Process Control into Dynamometer Test Cell #07 renovation; approximately half the size of Cell #13 renovation

45.10.    plaintiff designed, engineered Dynamometer Test Cell ventilation and pressure control system into Dynamometer Test Cell #07

45.11.    plaintiff designed, engineered, and incorporated new Druck Pressure Transducers into Dynamometer Test Cell #07 renovation; approximately half the size of Cell #13 renovation

45.12.    plaintiff designed and specified new Operator's Console; same supplier as Chassis Dynamometer renovation

45.13.    Specified, ordered, and procured major components associated with:

45.13.1.    new Hemi-anechoic Chamber

45.13.2.    new Operator's Console

45.13.3.    new CPI Front-end equipment

45.13.4.    new Programmable Logic Controller hardware

45.13.5.    new Engine Coolant and Engine Oil Process Control equipment

45.13.6.    new Honeywell UDC3000 Process Controllers

45.14.    Generated the required documentation for the design of (approximately half the size of Cell #13 renovation)

45.14.1.    new CPI Front-end equipment

45.14.2.    new Programmable Logic Controller hardware

45.14.3.    new Programmable Logic Controller software programming

45.14.4.    new Engine Coolant and Engine Oil Process Control equipment

45.14.5.    new Honeywell UDC3000 Process Controllers configuration as required

45.14.6.    Supply Fan Variable Frequency Drive configuration

45.14.7.    Exhaust Fan Variable Frequency Drive configuration

45.14.8.    existing Motor Control Center

Stasko v General Motors Corporation – Stanley R. Stasko Resume

45.15.    Project management and project coordination of work activity between supplier of
Hemi-anechoic Chamber, General Motors Dynamometer Wing salaried personnel,
General Motors Emission Wing salaried personnel, software personnel and UAW
personnel

45.16.    Provided detailed startup assisted for:

45.16.1.    new CPI Front-end equipment (can be verified with Karl Klida)

45.16.2.    new Programmable Logic Controller hardware

45.16.3.    new Programmable Logic Controller software programming

45.16.4.    new Engine Coolant and Engine Oil Process Control equipment

45.16.5.    new Honeywell UDC3000 Process Controllers configuration for Test Cell
Ventilation and pressure control

45.16.6.    Supply Fan Variable Frequency Drive configuration

45.16.7.    Exhaust Fan Variable Frequency Drive configuration

45.16.8.    existing Motor Control Center

45.17.    to help the reader to understand the magnitude of Dynamometer Test Cell #07
Renovation with New Hemi-anechoic Chamber Compare the reader would have to
compare Cell #07 with Cell #06 (a Hemi-anechoic Chamber designed and installed in-
house by General Motors prior to plaintiff working in the Dynamometer Wing)

45.18.    contact Steve Kaatz and Don Do-zon-berry to verify Dynamometer Test Cell #07
Renovation with New Hemi-anechoic Chamber

45.19.    plaintiff reward for renovating Dynamometer Test Cell #07 => Basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

46. **Dynamometer Test Cell #06 Renovation with New Control Consoles**

46.1.    Dynamometer Test Cell #06 was used for measuring engine noise

46.2.    When plaintiff renovated Dynamometer Test Cell #06 the Test Cell was single-
ended Dynamometer Test Cell

46.3.    Dynamometer Test Cell #06 renovation was more limited in scope than compared
to Dynamometer Test Cell #07

46.4.    the renovation included the reuse of an existing General Motors design and
General Motors built Hemi-anechoic Chamber

46.5.    plaintiff designed, engineered, and incorporated new Programmable Logic
Controller into Dynamometer Test Cell #06 renovation; approximately half the size of
Cell #13 renovation

46.5.1. Including interfacing to:

46.5.2. Dynamometer Hard Stop safety circuit

46.5.3. Auxiliary temperature safety meters

46.5.4. Engine and Dynamometer RPM safety meters

46.5.5. Manual push button Test Cell interface panel

46.5.6. old style General Electric Motor-Generator Dynamometer Controller

46.5.7. Engine Coolant and Engine Oil Temperature Control System

46.5.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and
pressure control

46.6.    Existing Motor Control Center

46.7.    No new Instrumentation Booms into Dynamometer Test Cell #06 renovation

46.8.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine
Oil Process Control into Dynamometer Test Cell #06 renovation; approximately half the
size of Cell #13 renovation

46.9.    plaintiff designed and specified new Operator's Console; same supplier as Chassis
Dynamometer renovation and Dynamometer Test Cell #07 renovation

46.10.    Specified, ordered, and procured major components associated with

46.10.1.    new Operator's Console

Stasko v General Motors Corporation – Stanley R. Stasko Resume

    46.10.2.      new Programmable Logic Controller hardware

    46.10.3.      new Engine Coolant and Engine Oil Process Control equipment

    46.10.4.      new Honeywell UDC3000 Process Controllers

46.11.      Generated the required documentation for the design of (approximately half the size of Cell #13 renovation)

    46.11.1.      new Programmable Logic Controller hardware

    46.11.2.      new Programmable Logic Controller software programming

    46.11.3.      new Engine Coolant and Engine Oil Process Control equipment

    46.11.4.      new Honeywell UDC3000 Process Controllers configuration as required

    46.11.5.      existing Motor Control Center

46.12.      Project management and project coordination of work activity between supplier of General Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried personnel, software personnel and UAW personnel

46.13.      Provided detailed startup assisted for

    46.13.1.      new Programmable Logic Controller hardware

    46.13.2.      new Programmable Logic Controller software programming

    46.13.3.      new Engine Coolant and Engine Oil Process Control equipment

    46.13.4.      new Honeywell UDC3000 Process Controllers configuration as required

    46.13.5.      existing Motor Control Center

46.14.      contact Steve Kaatz and Don Do-zon-berry to verify Dynamometer Test Cell #06 renovation

Stasko v General Motors Corporation – Stanley R. Stasko Resume

47. **New Exhaust Fans**

    47.1.    Prior to plaintiff, renovating a Dynamometer Test Cell basically consisted of updating one piece of equipment (like a new exhaust fan), and maybe a fresh coat of paint. Since Dynamometer Test Cell engineers and managers would come-and-go on a steady basis (Phil Mohan, Aaron Shin, Jim K-hill, Dave Thacher, Clark Bell, Steve Kaatz) after awhile the Dynamometer Test Cells were becoming a crows nest of one-of-a-kind of new equipment

    47.2.    When plaintiff designed, engineered, and project managed Dynamometer Test Cell #13 renovation you could honestly say - this Dynamometer Test Cell looks new!

        47.2.1. plaintiff takes no credit for the initial Cell #13 Exhaust Fan and Cell #03 Exhaust Fan - these were existing pieces of equipment;

    47.3.    Beginning approximately with Dynamometer Test Cell #07 renovation, plaintiff designed and specified all new Exhaust Fans for the all the Dynamometer Wing Test Cells

        47.3.1. plaintiff specified and procured approximately 18 Exhaust Fans

48. **EDS never proved to plaintiff Emissions Range Sense and Selection control using CATS**

    48.1.    plaintiff provided design, engineering, detailed interfacing, and detailed documentation between the New CPI Front-end equipment and the Dynamometer Wing Emissions Analyzers for range sense and range selection control

    48.2.    to verify that plaintiff knew the hardware requirements for interfacing to Emissions Analyzers for range sense and range selection control contact Thomas Lawrence or David Bjarnesen at Chrysler Corporation 37200 Amrhein, Livonia, Michigan 48150-1108; while working for DSP Technology, plaintiff was assigned to renovate one test cell renovation for Chrysler - Livonia

    48.3.    EDS was responsible for the software design and engineering for implementing range sense and range selection control between the New CPI Front-end equipment and the Dynamometer Wing Emissions Analyzers

Stasko v General Motors Corporation – Stanley R. Stasko Resume

48.4.    EDS never proved to plaintiff the software implementation of range sense and range selection control between the New CPI Front-end equipment and the Dynamometer Wing Emissions Analyzers

48.5.    when EDS could not prove the software implementation range sense and range selection control between the New CPI Front-end equipment and the Dynamometer Wing Emissions Analyzers the project would mysteriously disappear

49. **New Dynamometer Wing Ground Wire**

49.1.    the Engineering Building Dynamometer Wing electrical grounding was a crows nest of electrical grounding schemes

49.1.1. Dynamometer Basement 480 VAC bus grounding

49.1.2. Dynamometer grounding

49.1.3. Mech Box grounding

49.1.4. General 120 VAC power outlets and lighting grounding

49.1.5. Instrumentation grounding

49.1.6. Dynamometer Bedplate grounding

49.1.7. Engine-under-test grounding

49.2.    plaintiff designed a custom Dynamometer Wing Ground Wire scheme to begin the process of elimination the crows nest of electrical grounding schemes as each Dynamometer Test Cell was renovated

49.3.    plaintiff would consider his Dynamometer Wing Ground Wire scheme his own unique / priority design

Stasko v General Motors Corporation – Stanley R. Stasko Resume

50. **Dynamometer Test Cell #11 Renovation**

    50.1.    plaintiff designed, engineered, and incorporated new CPI front-end equipment into Dynamometer Test Cell #11 renovation; see above in resume for details

    50.2.    plaintiff designed, engineered, and incorporated new Programmable Logic Controller and PLC Enclosure into Dynamometer Test Cell #11 renovation; see New PLC above in resume for additional details

    50.2.1. Including interfacing to:

    50.2.2. Dynamometer Hard Stop safety circuit

    50.2.3. Auxiliary temperature safety meters

    50.2.4. Engine and Dynamometer **RPM safety** meters

    50.2.5. Modicon Panelmate 2000 Video Based Man-Machine Interface

    50.2.6. Meiden AC Solid State Dynamometer Controller

    50.2.7. Engine Coolant and Engine Oil Temperature Control System

    50.2.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

    50.2.9. New Motor Control Center

    50.3.    Aaron Trammel fabricated the Fuel System control enclosure that housed the Fuel System control solenoids

    50.4.    plaintiff incorporated new Instrumentation Booms into Dynamometer Test Cell #11 renovation; see resume above for details

    50.5.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine Oil Process Control into Dynamometer Test Cell #11 renovation; see resume above for details

    50.6.    plaintiff designed, engineered Dynamometer Test Cell ventilation and pressure control system into Dynamometer Test Cell #11

    50.7.    plaintiff designed, engineered, and incorporated new Druck Pressure Transducers into Dynamometer Test Cell #11 renovation; see resume above for details

    50.8.    New Allen-Bardley Motor Control Center

    50.9.    Specified, ordered, and procured major components associated with:

Stasko v General Motors Corporation – Stanley R. Stasko Resume

50.9.1. new CPI Front-end equipment

50.9.2. new Programmable Logic Controller hardware

50.9.3. new Modicon Panelmate Video Based Man-Machine Interface

50.9.4. new Engine Coolant and Engine Oil Process Control equipment

50.9.5. new Honeywell UDC3000 Process Controllers

50.9.6. new Allen-Bradley Motor Control Center

50.10.    Generated the required documentation for the design of:

50.10.1.    over 50 pages of documentation for new CPI Front-end equipment

50.10.2.    new Programmable Logic Controller hardware

50.10.3.    new Programmable Logic Controller software programming

50.10.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

50.10.5.    new Engine Coolant and Engine Oil Process Control equipment

50.10.6.    new Honeywell UDC3000 Process Controllers configuration

50.10.6.1. one configuration for Engine Coolant Process Control

50.10.6.2. one configuration for Engine Oil Process Control

50.10.6.3. one configuration for Test Cell Ventilation and pressure control

50.10.7.    Supply Fan Variable Frequency Drive configuration

50.10.8.    Exhaust Fan Variable Frequency Drive configuration

50.10.9.    Motor Control Center

50.11.    Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried
personnel, software personnel and UAW personnel

50.12.    Provided detailed startup assisted for:

50.12.1.    new CPI Front-end equipment

50.12.2.    new Programmable Logic Controller hardware

50.12.3.    new Programmable Logic Controller software programming

50.12.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

50.12.5.    new Engine Coolant and Engine Oil Process Control equipment

50.12.6.    new Honeywell UDC3000 Process Controllers configuration

Stasko v General Motors Corporation – Stanley R. Stasko Resume

    50.12.6.1. one configuration for Engine Coolant Process Control

    50.12.6.2. one configuration for Engine Oil Process Control

    50.12.6.3. one configuration for Test Cell Ventilation and pressure control

  50.12.7.     Supply Fan Variable Frequency Drive configuration

  50.12.8.     Exhaust Fan Variable Frequency Drive configuration

  50.12.9.     Motor Control Center

  50.13.     plaintiff reward for renovating Dynamometer Test Cell #11 => Basically nothing

51. **Modicon Panelmate 2000 Video Based Man-Machine Interface**

  51.1.     starting in approximately CY2002 plaintiff transitioned from a Manual push button Test Cell interface panel to a Modicon Panelmate 2000 Video Based Man-Machine Interface

  51.2.     the Modicon Panelmate 2000 communicated with the Programmable Logic Controller via serial communication

    51.2.1. as compared to discrete wiring between the Manual push button Test Cell interface panel and the Programmable Logic Controller

    51.2.2. saving approximately 64 Input / Output points of discrete wiring between the Manual push button Test Cell interface panel and the Programmable Logic Controller

  51.3.     the Modicon Panelmate 2000 Video Based Man-Machine Interface now can fit into the Dynamometer Test Cell Operators Console

    51.3.1. previous versions of Modicon Panelmate products were to big for the Dynamometer Test Cell Operators Console

  51.4.     the Modicon Panelmate 2000 Video Based Man-Machine Interface and the Modicon 984-E685 Programmable Logic Controller work together like a hand-in-glove

  51.5.     plaintiff designed and engineered the software programming of the Modicon Panelmate 2000 Video Based Man-Machine Interface including:

    51.5.1. converting the Programmable Logic Controller software from discrete input / output references to Video Based Man-Machine Interface references

    51.5.2. the Dynamometer Test Cell start-up sequence ensured that

Stasko v General Motors Corporation – Stanley R. Stasko Resume

> 51.5.2.1. the Dynamometer Motor-Generator was enabled prior to the Dynamometer being turned on
>
> 51.5.2.2. the Dynamometer Test Cell Ventilation was enabled prior to the Dynamometer being turned on
>
> 51.5.2.3. without getting into all the start-up sequence details it is sufficient to note that the PLC software anticipated a specific Dynamometer Test Cell start-up sequence

51.6.    Specified, ordered, and procured major components

> 51.6.1. Including Modicon Panelmate 2000 and memory back-up module

51.7.    Project management and project coordination of work activity between General Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried personnel, and software personnel

51.8.    Provided detailed startup assistance

Stasko v General Motors Corporation – Stanley R. Stasko Resume

52. **Dynamometer Test Cell #06 Legal Issue**

52.1.      General Motors has a $20 Million dollar legal issue

52.2.      nobody in General Motors can figure out the problem

52.3.      eventually General Motors asks plaintiff to try to solve the problem

52.3.1. there is a General Motors Guidelines that specifies Dynamometer Test Cell Ventilation depression setting of 1.0 inch water

52.3.2. many years ago plaintiff told General Motors that the specification was wrong; the Dynamometer Test Cell Ventilation depression setting should be 0.1 inches of water not 1.0 inches of water

52.3.3. General Motors basically tells plaintiff to shut-up (plaintiff was only a 5th or 6th level Project Engineer when plaintiff told General Motors that the specification was wrong)

52.4.      when General Motors changes the Dynamometer Test Cell Ventilation depression setting to plaintiff recommendation of 0.1 inch water the problem is solved

52.5.      what reward did General Motors give plaintiff for resolving General Motors $20 Million Dollar Dynamometer Test Cell #06 Legal Issue => basically nothing, not even a thank-you plaintiff

52.6.      this can be verified by contacting Steve Kaatz or Don Du-zon-berry (General Motors Salaried engineers associated with Dynamometer Test Cell #06 Testing)

52.7.      some time passes

52.8.      near the end of plaintiff career with General Motors, plaintiff mentions that plaintiff resolved a $20 Million Dollar Dynamometer Test Cell #06 Legal Issue for General Motors and that General Motors did not even say thank-you

52.8.1. General Motors now tells plaintiff that the Dynamometer Test Cell #06 Legal Issue was worth $2 Million dollars not $20 Million dollars

52.8.2. what financial reward did General Motors give plaintiff for resolving General Motors Dynamometer Test Cell #06 Legal Issue => basically nothing

52.8.3. General Motors tells plaintiff thank-you

Stasko v General Motors Corporation – Stanley R. Stasko Resume

53. **Dynamometer Test Cell #21 Outside Anechoic Chamber**

53.1.      Dynamometer Test Cell #21 was testing active noise reduction

53.2.      Dynamometer Test Cell #21 was more limited in scope as compared to

Dynamometer Test Cell #07; nevertheless, Dynamometer Test Cell #21 had two unique

aspect to its renovation

53.2.1. the test equipment associated with Dynamometer Test Cell #21 active noise

reduction testing needed to be outside

53.3.      sound wave reflections from Engineering Building Emissions Wing which was in

close proximity to Engineering Building, Dynamometer Test Cell #21

53.4.      To help the reader understand what a Hemi-anechoic Chamber is imagine

standing alone in an open field in the middle of Kansas or Nebraska; the sounds you

make are only reflected by the ground below your feet and no sound reflections in any

other direction; a Hemi-anechoic Chamber tries to simulate the experience standing

alone in an open field in the middle of Kansas or Nebraska

53.5.      plaintiff procures the installation of a new Hemi-anechoic Chamber for

Dynamometer Test Cell #21

53.6.      installed by UAW personnel

Stasko v General Motors Corporation – Stanley R. Stasko Resume

54. **Dynamometer Test Cell #15 Renovation**

   54.1.    plaintiff designed, engineered, and incorporated new CPI front-end equipment into Dynamometer Test Cell #15 renovation; see above resume for details

   54.2.    plaintiff designed, engineered, and incorporated new Programmable Logic Controller and PLC Enclosure into Dynamometer Test Cell #15 renovation; see above resume for details

      54.2.1. Including interfacing to:

      54.2.2. Dynamometer Hard Stop safety circuit

      54.2.3. Auxiliary temperature safety meters

      54.2.4. Engine and Dynamometer RPM safety meters

      54.2.5. Modicon Panelmate 2000 Video Based Man-Machine Interface

      54.2.6. Dynamometer Controller

      54.2.7. Engine Coolant and Engine Oil Temperature Control System

      54.2.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

      54.2.9. New Allen – Bradley Motor Control Center

   54.3.    Aaron Trammel fabricated the Fuel System control enclosure that housed the Fuel System control solenoids

   54.4.    plaintiff incorporated new Instrumentation Booms into Dynamometer Test Cell #15 renovation; see above in resume for details

   54.5.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine Oil Process Control into Dynamometer Test Cell #15 renovation; see resume above for details

   54.6.    plaintiff designed, engineered Dynamometer Test Cell ventilation and pressure control system into Dynamometer Test Cell #15

   54.7.    plaintiff designed, engineered, and incorporated new Druck Pressure Transducers into Dynamometer Test Cell #15 renovation; see resume above for details

   54.8.    New Allen-Bardley Motor Control Center

   54.9.    Specified, ordered, and procured major components associated with:

Stasko v General Motors Corporation – Stanley R. Stasko Resume

54.9.1. new CPI Front-end equipment

54.9.2. new Programmable Logic Controller hardware

54.9.3. new Modicon Panelmate 2000 Video Based Man-Machine Interface

54.9.4. new Engine Coolant and Engine Oil Process Control equipment

54.9.5. new Honeywell UDC3000 Process Controllers

54.9.6. new Allen-Bradley Motor Control Center

54.10.    Generated the required documentation for the design of:

54.10.1.    over 50 pages of documentation for new CPI Front-end equipment

54.10.2.    new Programmable Logic Controller hardware

54.10.3.    new Programmable Logic Controller software programming

54.10.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

54.10.5.    new Engine Coolant and Engine Oil Process Control equipment

54.10.6.    new Honeywell UDC3000 Process Controllers configuration

54.10.6.1. one configuration for Engine Coolant Process Control

54.10.6.2. one configuration for Engine Oil Process Control

54.10.6.3. one configuration for Test Cell Ventilation and pressure control

54.10.7.    Supply Fan Variable Frequency Drive configuration

54.10.8.    Exhaust Fan Variable Frequency Drive configuration

54.10.9.    Allen – Bradley Motor Control Center

54.11.    Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried
personnel, software personnel and UAW personnel

54.12.    Provided detailed startup assisted for:

54.12.1.    new CPI Front-end equipment

54.12.2.    new Programmable Logic Controller hardware

54.12.3.    new Programmable Logic Controller software programming

54.12.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

54.12.5.    new Engine Coolant and Engine Oil Process Control equipment

54.12.6.    new Honeywell UDC3000 Process Controllers configuration

Stasko v General Motors Corporation – Stanley R. Stasko Resume

54.12.6.1.  one configuration for Engine Coolant Process Control

54.12.6.2.  one configuration for Engine Oil Process Control

54.12.7.  Supply Fan Variable Frequency Drive configuration

54.12.8.  Exhaust Fan Variable Frequency Drive configuration

54.12.9.  Allen – Bradley Motor Control Center

54.13.  plaintiff reward for renovating Dynamometer Test Cell #15 => Basically nothing

## 55. New Motor Control Centers

55.1.  Prior to plaintiff, a Dynamometer Test Cell renovation basically consisted of updating one piece of equipment (like a new exhaust fan), and maybe a fresh coat of paint. Since Dynamometer Test Cell engineers and managers would come-and-go on a steady basis (Phil Mohan, Aaron Shin, Jim K-hill, Dave Thacher, Clark Bell, Steve Kaatz) after awhile the Dynamometer Test Cells were becoming a crows nest of one-of-a-kind equipment

55.2.  plaintiff takes no credit for Cell #13 initial Motor Control Center; this was a piece of extra equipment from the Dynamometer Wing blend-house renovation project

55.3.  after Dynamometer Test Cell #13 plaintiff continuously improved Dynamometer Test Cell renovations projects

55.4.  plaintiff designed and specified all new Allen – Bradley Motor Control Centers for Dynamometer Wing Test Cells

55.5.  initially Dynamometer Test Cell #03 had an existing Motor Control Center,  but this Motor Control Center was replaced with a Allen – Bradley Motor Control Center

55.6.  new Allen – Bradley Motor Control Centers can be verified by contacting Steve Bull at McNaughton-McKay Electric Company Madison Heights, Michigan, the supplier of the new Allen-Bradley Motor Control Centers

Stasko v General Motors Corporation – Stanley R. Stasko Resume

56. **Dynamometer Test Cell #08 Renovation**

    56.1.    plaintiff designed, engineered, and incorporated new CPI front-end equipment into Dynamometer Test Cell #08 renovation; see resume above for details

    56.2.    plaintiff designed, engineered, and incorporated new Programmable Logic Controller and PLC Enclosure into Dynamometer Test Cell #08 renovation; see resume above for details

    56.2.1. Including interfacing to:

    56.2.2. Dynamometer Hard Stop safety circuit

    56.2.3. Auxiliary temperature safety meters

    56.2.4. Engine and Dynamometer RPM safety meters

    56.2.5. Modicon Panelmate 2000 Video Based Man-Machine Interface

    56.2.6. Dynamometer Controller

    56.2.7. Engine Coolant and Engine Oil Temperature Control System

    56.2.8. Supply and Exhaust Fan controls for Dynamometer Test Cell ventilation and pressure control

    56.2.9. New Allen – Bradley Motor Control Center

    56.3.    Aaron Trammel fabricated the Fuel System control enclosure that housed the Fuel System control solenoids

    56.4.    plaintiff incorporated new Instrumentation Booms into Dynamometer Test Cell #08 renovation; see resume above for details

    56.5.    plaintiff designed, engineered, and incorporated new Engine Coolant and Engine Oil Process Control into Dynamometer Test Cell #08 renovation; see resume above for details

    56.6.    plaintiff designed, engineered Dynamometer Test Cell ventilation and pressure control system into Dynamometer Test Cell #08

    56.7.    plaintiff designed, engineered, and incorporated new Druck Pressure Transducers into Dynamometer Test Cell #08 renovation; see resume above for details

    56.8.    New Allen-Bardley Motor Control Center

    56.9.    Specified, ordered, and procured major components associated with:

Stasko v General Motors Corporation – Stanley R. Stasko Resume

56.9.1. new CPI Front-end equipment

56.9.2. new Programmable Logic Controller hardware

56.9.3. new Modicon Panelmate 2000 Video Based Man-Machine Interface

56.9.4. new Engine Coolant and Engine Oil Process Control equipment

56.9.5. new Honeywell UDC3000 Process Controllers

56.9.6. new Allen-Bradley Motor Control Center

56.10.    Generated the required documentation for the design of:

56.10.1.    over 50 pages of documentation for new CPI Front-end equipment

56.10.2.    new Programmable Logic Controller hardware

56.10.3.    new Programmable Logic Controller software programming

56.10.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

56.10.5.    new Engine Coolant and Engine Oil Process Control equipment

56.10.6.    new Honeywell UDC3000 Process Controllers configuration

56.10.6.1. one configuration for Engine Coolant Process Control

56.10.6.2. one configuration for Engine Oil Process Control

56.10.6.3. one configuration for Test Cell Ventilation and pressure control

56.10.7.    Supply Fan Variable Frequency Drive configuration

56.10.8.    Exhaust Fan Variable Frequency Drive configuration

56.10.9.    Allen – Bradley Motor Control Center

56.11.    Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, General Motors Emission Wing salaried
personnel, software personnel and UAW personnel

56.12.    Provided detailed startup assisted for:

56.12.1.    new CPI Front-end equipment

56.12.2.    new Programmable Logic Controller hardware

56.12.3.    new Programmable Logic Controller software programming

56.12.4.    new Modicon Panelmate 2000 Video Based Man-Machine Interface

56.12.5.    new Engine Coolant and Engine Oil Process Control equipment

56.12.6.    new Honeywell UDC3000 Process Controllers configuration

Stasko v General Motors Corporation -- Stanley R. Stasko Resume

    56.12.6.1.  one configuration for Engine Coolant Process Control

    56.12.6.2.  one configuration for Engine Oil Process Control

   56.12.7.     Supply Fan Variable Frequency Drive configuration

   56.12.8.     Exhaust Fan Variable Frequency Drive configuration

   56.12.9.     Allen – Bradley Motor Control Center

  56.13.     plaintiff reward for renovating Dynamometer Test Cell #08 => Basically nothing

## 57. Dynamometer Test Cell Ventilation System converted to 24/7 operation

  57.1.     when plaintiff designed, engineered Dynamometer Test Cell #13 renovation, General Motors used Dynamometer Test Cell ventilation and pressure control only when the Dynamometer Test Cell had an engine-under-test

  57.2.     when no engine was being tested, a separate secondary Heating and Ventilation keep a minimum amount of air induced into the Dynamometer Test Cell for human comfort

  57.3.     because gasoline and other fuels were used in a Dynamometer Test Cell some people rated the Dynamometer Test Cell Class 1, Division 1, Group D (hazardous) requirements for electrical equipment

  57.4.     converting Dynamometer Test Cell Ventilation System to 24 hours / 7 days a week operation the rating of the Dynamometer Test Cell could be reduced to non-hazardous requirements for electrical equipment

  57.5.     remember the problem in Dynamometer Test Cell #06 with General Motors maintaining the Dynamometer Test Cell Ventilation depression

  57.6.     there is also the concern of minimizing Heating and Ventilation costs

  57.7.     plaintiff redesigned the Dynamometer Test Cell Ventilation System controls to address the above concerns without adding any new major equipment

  57.8.     plaintiff reward for renovating Dynamometer Test Cell Ventilation System converted to 24 / 7 operation => Basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

58. **Replacement of (4) Aux. Temperature Safety Meter with Modicon Analog Input Module**

58.1.    with the renovation of Dynamometer Test Cells with Programmable Logic
Controllers and the continuously improved of using Modicon Panelmate 2000 Video
Based Man-Machine Interface more enhanced improvements are possible

58.1.1. remember the Modicon Panelmate 2000 communicate with the Programmable
Logic Controller via serial communication

58.1.2. plaintiff replace the (4) Auxiliary temperature safety meters with a Modicon
Analog Input Module

58.1.3. less equipment to procure and stock

58.1.4. less custom panels to fabricate

58.1.5. greater flexibility for additional enhancements

58.1.6. Aux. Temperature readings could be displayed directly on the Modicon
Panelmate 2000 display

Stasko v General Motors Corporation – Stanley R. Stasko Resume

59. **Conditioned Air Systems**

59.1.     the Condition Air System project is another example of plaintiff simultaneously
designing, engineering, and / or project managing other Dynamometer Test Cell projects
simultaneously with Dynamometer Test Cell renovations

59.2.     plaintiff was responsible for the design, engineering, and project management for
seven Condition Air System

59.3.     plaintiff wrote the specifications for procurement of seven Condition Air System

59.4.     some (not all) of the Condition Air Systems were to be located inside the
Dynamometer Wing Attic exposed to extreme Summer temperature conditions (greater
than 104 Degrees F)

59.5.     General Motors specified Condition Air System temperature, humidity, and
Barometric Pressure requirements

59.6.     plaintiff provided detailed project management leadership working with the
potential Condition Air System suppliers

59.7.     plaintiff improved the design of the Condition Air System; thereby, the final
construction installation costs were less than the original accepted contract price

59.8.     Project management and project coordination of work activity between General
Motors Dynamometer Wing salaried personnel, Condition Air System supplier, and
construction contractor

59.9.     Provided detailed startup assisted as needed

59.10.    General Motors selected Environmental Tectonics Corporation, Southampton, PA
18966; plaintiff preference was to go with the other suppliers finalist located in
California, USA

59.11.    plaintiff reward for the Natural Gas compressor project => basically nothing

Stasko v General Motors Corporation – Stanley R. Stasko Resume

60. **Dynamometer Wing Renovation – Project Management**

    60.1.      plaintiff used Timeline Project Management Software for tracking Dynamometer Test Cell Renovation work activity

    60.2.      plaintiff designed the Timeline flowchart for both the UAW and GM salary personal work activity (to verify Bob Welsh; plaintiff knew Bob Welsh as the highest ranking UAW representative in GM Technical Center, Engineering Building, Warren, Michigan from approximately CY1989 to CY1995)

        60.2.1. plaintiff updated the Timeline flowchart as needed

        60.2.2. plaintiff distributed updated Timeline flowcharts to the appropriate UAW and GM salary personal

    60.3.      plaintiff generated an appropriation for the renovation of 15 Dynamometer Test Cells

    60.4.      plaintiff procured and approved major components associated with Dynamometer Test Cell renovations

    60.5.      plaintiff directed General Motors Salary personnel in starting-up Dynamometer Test Cell renovations

    60.6.      Documentation of Dynamometer Wing Renovation project activity including

        60.6.1. major equipment purchases

        60.6.2. CPI front-end equipment interfacing wire listings

        60.6.3. PLC enclosure hardware drawings

        60.6.4. PLC software program documentation

        60.6.5. Modicon Panelmate 2000 Man-Machine interface documentation

        60.6.6. UDC 3000 Process Controller Configuration documentation

            60.6.6.1.   for Engine Coolant Temperature control

            60.6.6.2.   for Engine Oil Temperature control

            60.6.6.3.   for Dynamometer Test Cell Ventilation control

        60.6.7. Documenting capital equipment purchase by tagging capital equipment with General Motors Property tags; (this can be verified by contacting Andy Vir-ros-tek)

Stasko v General Motors Corporation – Stanley R. Stasko Resume

61. **Project Management / Leadership – Unique solutions**

    61.1.    Programmable Logic Controllers – integrated into Emissions Analysis Systems; (see resume above for details); Don Nagy of General Motors Milford Proving Grounds specifically stated that Programmable Logic Controllers has been tried by General Motors before and cannot be made to work for Emission Analysis Systems applications

    61.2.    DSP Combustion Analysis System – Several years later; (see resume above for details); General Motors Corporation and DSP Technology had a problem with the DSP Combustion Analysis Systems that General Motors Corporation could not solve nor could DSP Technology solve

    61.3.    Dynamometer Test Cell #13 Renovation; (see resume above for details); the first modern, integrated Dynamometer Test Cell renovation at the General Motors Technical Center; completed in CY1990

    61.4.    Dynamometer Test Cell #06 Legal Issue; (see resume above for details); General Motors has a $20 Million dollar legal issue and nobody in General Motors can figure out the problem; eventually, General Motors asks plaintiff to try to solve the problem

    61.5.    New Dynamometer Wing Ground Wire; (see resume above for details); the Engineering Building Dynamometer Wing electrical grounding was a crows nest of electrical grounding schemes

Stasko v General Motors Corporation – Stanley R. Stasko Resume

62. **Project Management / Leadership – Major Accomplishments for which plaintiff did not receive a bonus**

    62.1.      Emission Wing Renovation – Design Coordination; (see above resume for details)

    62.2.      Emissions Wing Renovation – Project Management; (see above resume for details)

    62.3.      Dynamometer Test Cell #13 Renovation; (see above resume for details)

    62.4.      Dynamometer Test Cell #07 Renovation with New Hemi-anechoic Chamber; (see above resume for details)

    62.5.      Dynamometer Test Cell #11 Renovation; (see above resume for details)

    62.6.      Dynamometer Test Cell #15 Renovation; (see above resume for details)

    62.7.      Dynamometer Test Cell #08 Renovation; (see above resume for details)

    62.8.      Integration of New Programmable Logic Controller (PLC) and Modicon Panelmate 2000 Video Based Man-Machine Interface

    62.9.      plaintiff took the first modern, integrated Dynamometer Test Cell renovation at the General Motors Technical Center and advanced it to the next higher level

Stasko v General Motors Corporation – Stanley R. Stasko Resume

63. **Project Management – For all practical purpose plaintiff ran the Emissions Wing Renovation and Dynamometer Wing Renovation**

    63.1.    plaintiff did not revive or ask approval from Ward Wiers on a daily basis, weekly basis, or monthly basis

        63.1.1.  if Ward Wiers had been in a hospital, plaintiff would not have noticed a significant absence during the day-to-day Project Management of the Emissions Wing Renovation

    63.2.    plaintiff did not revive or ask approval from Dennis Wiese on a daily basis, weekly basis, or monthly basis

        63.2.1.  if Dennis Wiese had been in a hospital, plaintiff would not have noticed a significant absence during the day-to-day Project Management of the Emissions Wing Renovation

    63.3.    plaintiff did not revive or ask approval from Jerry Fairbanks on a daily basis, weekly basis, or monthly basis

        63.3.1.  if Jerry Fairbanks had been in a hospital, plaintiff would not have noticed a significant absence during the day-to-day Project Management of the Dynamometer Wing Renovation

    63.4.    plaintiff did not revive or ask approval from Jim Thorsen on a daily basis, weekly basis, or monthly basis

        63.4.1.  if Jim Thorsen had been in a hospital, plaintiff would not have noticed a significant absence during the day-to-day Project Management of the Dynamometer Wing Renovation

Stasko v General Motors Corporation – Stanley R. Stasko Resume

64. **Earned the monetary compensation of 3X, 4X, 5X, 6X, 7X, 8X, or 9X his salary compensation**

    64.1.    one Instrumentation engineer

        64.1.1. Instrumentation Console and Custom Enclosure

        64.1.2. Emissions Test Site Instrumentation Patch Panel

        64.1.3. 12-Channel Strip Chart Recorder and Custom Enclosure

        64.1.4. Druck Pressure Transducers

        64.1.5. New CPI Front-end Equipment

    64.2.    one Electrical engineer

        64.2.1. Programmable Logic Controller

        64.2.2. Overhead Door Logic Controls

        64.2.3. New Dynamometer Ground Wire

        64.2.4. Modicon Panelmate 2000 Video Based Man-Machine Interface

        64.2.5. New Motor Control Centers

        64.2.6. the reader has to remember that in the late-1980's a Personal Computer might only have 640 to 1,024 kilobytes of memory ( over 1000 times smaller than modern Personal Computers); therefore, each major application like the Programmable Logic Controllers might have its own stand-alone programming device

    64.3.    one Process Controls engineer

        64.3.1. Engine Coolant and Engine Oil Process Control

        64.3.2. Dynamometer Test Cell Supply Fan and Exhaust Fan Ventilation Pressure control

        64.3.3. Dynamometer Test Cell #06 Legal Issue

        64.3.4. Dynamometer Test Cell Ventilation System converted to 24/7 operation

        64.3.5. Replacement of (4) Aux. Temperature Safety Meter with Modicon Analog Input

        64.3.6. the reader has to remember that in the late-1980's the modern 3 GHz Personal Computer with 2 Gigabyte plus of memory did not exist; therefore, each engineering discipline would have been assigned to different individuals

    64.4.    one Mechanical engineer

        64.4.1. Tylan Mass Flow Controllers

Stasko v General Motors Corporation – Stanley R. Stasko Resume

64.4.2. Sample Conditioning Unit

64.4.3. Overhead Track System

64.4.4. Fuel Meter Calibration Cart

64.4.5. Fuel Injector Test Stand renovation

64.4.6. New Instrumentation Booms

64.4.7. Natural Gas Compressor

64.4.8. New Exhaust Fans

64.4.9. Conditioned Air Systems

64.5.      one Project Manager

64.5.1. Emissions Wing Renovation – Design Coordination and Project Management

64.5.2. Dynamometer Test Cell #13, #03, #07, #06, #11, #15, #08, and Chassis
        Dynamometer Renovation

64.6.      one AutoCAD and one technical designer to generate the documentation

64.6.1. AutoCAD Drawings

64.6.2. over 50 pages of documentation for new CPI Front-end equipment

64.6.3. new Programmable Logic Controller hardware documentation

64.6.4. new Programmable Logic Controller software documentation

64.6.5. new Modicon Panelmate 2000 Video Based Man-Machine Interface
        documentation

64.6.6. new Engine Coolant and Engine Oil Process Control equipment documentation

64.6.7. new Honeywell UDC3000 Process Controllers configuration documentation

        64.6.7.1.   one configuration for Engine Coolant Process Control

        64.6.7.2.   one configuration for Engine Oil Process Control

        64.6.7.3.   one configuration for Test Cell Ventilation and pressure control

64.6.8. Supply Fan Variable Frequency Drive configuration

64.6.9. Exhaust Fan Variable Frequency Drive configuration

64.6.10.       Allen – Bradley Motor Control Center

64.7.      one secretary to copy and distribute the documentation

64.7.1. over 50 pages of documentation for new CPI Front-end equipment