HEARING DATE AND TIME: TO BE DETERMINED

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (admitted *pro hac vice*)
Robert S. Walker (admitted *pro hac vice*)

JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Andrew M. Kramer

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Lisa G. Laukitis

Attorneys for General Motors LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.,* | : | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.,* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

-------------------------------------------------------------------x

**BRIEF OF GENERAL MOTORS LLC IN SUPPORT
OF THE COURT'S EXERCISE OF JURISDICTION OVER
THE MOTION OF GENERAL MOTORS LLC (F/K/A GENERAL
MOTORS COMPANY) TO ENFORCE SALE ORDER (DOCKET NO. 7527)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................. 1

Statement of the Record .............................................................................................. 4

A.  The Court Has Explicitly Reserved Exclusive Jurisdiction to Interpret and Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement ......... 8

  1.  The Court Reserved Exclusive Jurisdiction to Interpret and Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement .......... 8

  2.  The Court Has Inherent Jurisdiction to Interpret and Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement ............... 10

B.  The UAW's Solitary Argument Opposing Jurisdiction — That New GM's Position is So Frivolous As to Defeat Jurisdiction — Cannot Withstand Review ........................................................................................................... 12

C.  The Court Has Jurisdiction to Resolve Any Remaining Dispute Over the Terms of the 2007 Delphi Restructuring MOU ................................................. 15

  1.  The Court Has "Arising In" Jurisdiction Over the MOU Dispute .......... 15

  2.  The Court Also Has "Related To" Jurisdiction Over the MOU Dispute ................................................................................................. 16

  3.  No Court Has Exclusive Jurisdiction Over the MOU Dispute ............... 18

D.  The Court Should Exercise Its Jurisdiction Over the Motion ........................... 21

  1.  Mandatory Abstention is Inapplicable ................................................. 21

  2.  The Court Should Not Exercise Its Discretion to Abstain ...................... 22

    a.  The Motion Raises Issues Intimately Intertwined With, and Not Remote From, the Debtors' Bankruptcy Cases .................... 24

    b.  Abstention Will Not Promote the Efficient Administration of the Bankruptcy Estate ........................................................... 25

    c.  Issues of State Law Do Not Predominate in the Dispute ............. 28

    d.  The Applicable Law At Issue is Neither Difficult Nor Unsettled ................................................................................... 28

    e.  Abstention is Unwarranted Where The Court's Exercise of Jurisdiction Over the Motion Does Not Implicate Questions of Comity ................................................................................... 29

    f.  The UAW's Assertion of the Right to a Jury Trial Before the Michigan District Court Does Not Compel Abstention ......... 29

    g.  Abstention is Unwarranted Where the Exercise of Jurisdiction Would Not Prejudice Any Party, But Abstention Would Prejudice New GM ....................................... 31

## TABLE OF CONTENTS
(continued)

**Page**

h.    The Substance of the Motion Demonstrates that It is a
"Core" Proceeding Over Which the Court Should Exercise
Jurisdiction .................................................................................. 32

i.    The Presence of a Related Proceeding in a Non-Bankruptcy
Court Does Not Compel Abstention ........................................... 32

Conclusion ...................................................................................................... 34

## TABLE OF AUTHORITIES

**Page**

**CASES**

Ameritrust Co., N.A. v. Opti-Gage, Inc. (In re Opti-Gage, Inc.),
    128 B.R. 189 (Bankr. S.D. Ohio 1991)............................................................. 17

Archangel Diamond Corp. v. OAO Lukoil (In re Archangel Diamond Corp.),
    No. 09-1755, 2010 WL 4386808 (Bankr. D. Colo. Oct. 28, 2010) ................................. 9

Back v. LTV Corp. (In re Chateaugay Corp.),
    213 B.R. 633 (S.D.N.Y. 1997)..................................................................... 17

Baker v. Simpson, 613 F.3d 346 (2d Cir. 2010),
    cert. denied, — S.Ct. —, 2011 WL 55596 (U.S. Jan. 10, 2011)...................................... 21

Bell v. Hood, 327 U.S. 678 (1946) ......................................................................... 9

Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC),
    288 B.R. 59 (Bankr. S.D.N.Y. 2003)....................................................... 24, 29

Bolt Elec., Inc. v. City of New York, 223 F.3d 146 (2d Cir. 2000) ............................................ 30

Canzano v. Ragosa (In re Colarusso), 382 F.3d 51 (1st Cir. 2004)............................................ 28

CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC,
    396 B.R. 602 (S.D.N.Y. 2008)...................................................................... 22

Chamberlain Group, Inc. v. Lear Corp. (In re Lear Corp.),
    Adv. No. 09-01441, 2009 WL 3191369 (Bankr. S.D.N.Y. Sep. 24, 2009).................... 29

Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.),
    950 F.2d 839 (2d Cir. 1991)........................................................................ 29

Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976) .................................... 22

Comco Assocs. v. Faraldi Food Indus. Ltd., 170 B.R. 765
    (E.D.N.Y. 1994)........................................................................................ 11

Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),
    722 F.2d 1063 (2d Cir. 1983)....................................................................... 26

Cnty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185 (1959), ............................................ 22

Digital Satellite Lenders, LLC v. Ferchill, No. 03 Civ. 8803,
    2004 WL 1794502 (S.D.N.Y. Aug. 10, 2004).............................................. 16

Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366
(S.D.N.Y. 2009) ............................................................................. 34

Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,
130 B.R. 405 (S.D.N.Y. 1991) ....................................................... 24

Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.),
407 B.R. 593 (Bankr. D. Del. 2009) ............................................... 32

Haro v. Household Int'l, No. DKC 2003-3558,
2004 U.S. Dist. LEXIS 25860 (D. Md. Dec. 21, 2004)................... 33

Hawaiian Airlines, Inc. v. Mesa Air Group, Inc., 355 B.R. 214
(D. Haw. 2006) .............................................................................. 18

Hunnicutt Co. v. TJX Cos. (In re Ames Dept. Stores, Inc.), 190 B.R. 157
(S.D.N.Y. 1995)............................................................................. 17

In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) ............... 26

In re Gen. Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009), aff'd sub nom.
In re Motors Liquidation Co., 428 B.R. 43 (S.D.N.Y. 2010),
reh'g denied, In re Motors Liquidation Co., No. 09 Civ. 7794,
2010 WL 3565494 (S.D.N.Y. Sep. 10, 2010)............................... 5, 6, 8, 17, 25

In re Gen. Motors Corp., Case No. 09-50026 (Bankr. S.D.N.Y.)
Transcript of Hearing, Jun. 30, 2009, Jul. 1, 2009 and Jul. 2, 2009 ............................. 5, 8

In re Lehman Brothers Holdings Inc., Case No. 08-13555
(Bankr. S.D.N.Y. Sep. 15, 2009) .................................................... 27

In re Lyondell Chem. Co., 402 B.R. 596 (Bankr. S.D.N.Y. 2009)................ 24

In re Med. Software Solutions, 286 B.R. 431 (Bankr. D. Utah 2002)........... 26

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,
399 F. Supp. 2d 340 (S.D.N.Y. 2005)............................................. 18

In re Motors Liquidation Co., Case No. 09-50026 (Bankr. S.D.N.Y.)
Transcript of Hearing, Oct. 4, 2010 ................................. 10, 11, 22, 23, 29, 32

In re Portrait Corp. of Am., Inc., 406 B.R. 637 (Bankr. S.D.N.Y. 2009).................... 24

In re Wilde Horse Enters., Inc., 136 B.R. 830
(Bankr. C.D. Ca. 1991) .................................................................. 26

Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V.
(In re Millenium Seacarriers, Inc.), 458 F.3d 92 (2d Cir. 2006)...................... 11

K. Bell & Assocs., Inc., v. Lloyd's Underwriters, 97 F.3d 632
    (2d Cir. 1996) .................................................................................. 30

Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88
    (2d Cir. 1994) .................................................................................. 18

Krys v. Sugrue, No. 08 Civ. 3065, 2008 WL 4700920
    (S.D.N.Y. Oct. 23, 2008) ................................................................ 16

LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),
    312 B.R. 249 (Bankr. D. Del. 2004) ............................................... 32

Lindsey v. O'Brien, Tansky, Tanzer and Young Health Care Providers
    of Connecticut (In re Dow Corning Corp.), 86 F.3d 482 (6th Cir. 1996) ........................ 16

Long Term Care Mgmt., Inc. v. VI/XII Collateral Trust
    (In re Nat'l Century Fin. Enters., Inc.), No. 05-8048,
    2006 Bankr. LEXIS 328 (B.A.P. 6th Cir. Mar. 14, 2006) ............... 33

Lothian Cassidy LLC v. Ransom, 428 B.R. 555 (E.D.N.Y. 2010) ........................................ 15, 32

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
    304 F.3d 223 (2d Cir. 2002) .................................................. 10, 11, 23

Magnolia v. Conn. Gen. Life Ins. Co., 157 F. Supp. 2d 583
    (D. Md. 2001) .................................................................................. 33

Maselli v. Portfolio Techs., Inc., No. 06-4716,
    2007 U.S. Dist. LEXIS 17226 (D.N.J. Mar. 12, 2007) .................... 33

McClelland v. Grubb & Ellis Consulting Servs. Co. (In re McClelland),
    418 B.R. 61 (Bankr. S.D.N.Y. 2009) .......................................... 30, 31

ML Media Partners, L.P. v. Century/ML Cable Venture
    (In re Adelphia Commc'ns Corp.), 285 B.R. 127
    (Bankr. S.D.N.Y. 2002) ................................................... 17, 28, 31

Myers v. Martin (In re Martin), 91 F.3d 389 (3d Cir. 1996) ...................................... 26

Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,
    No. 95-Civ-0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995) ...................................... 17

New England Power & Marine, Inc. v. Town of Tyngsborough
    (In re Middlesex Power Equip. & Marine, Inc.),
    292 F.3d 61 (1st Cir. 2002) .............................................................. 28

NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.),
    317 B.R. 260 (Bankr. S.D.N.Y. 2004) ........................................ 10, 11, 32

Official Plan Comm., ASTF, Inc. v. Starshak & Assocs., Inc.
(In re Balsam Corp.), 185 B.R. 54 (E.D. Mo. 1995)................................................... 29, 30

Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984 (3d Cir. 1984) ..................................... 16

Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) ....................................................... 30

Publicker Indus. Inc. v. U.S. (In re Cuyahoga Equip. Corp.), 980 F.2d 110
(2d Cir. 1992)........................................................................................................ 16, 18

Readco, Inc. v. Marine Midland Bank, 81 F.3d 295 (2d Cir. 1996)........................................... 30

Republic Underwriters Ins. Co. v. DBSI Republic, LLC
(In re DBSI, Inc.), 409 B.R. 720 (Bankr. D. Del. 2009).................................................. 24

Ries v. Paige (In re Paige), No. 07-2015, 2007 WL 4530807
(Bankr. N.D. Tex. Dec. 19, 2007)................................................................................. 29

S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705 (2d Cir. 2010) ......................................... 30

Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),
302 B.R. 792 (Bankr. S.D.N.Y. 2003)............................................................................ 23

Texaco, Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937
(Bankr. S.D.N.Y. 1995) ............................................................................................... 22

Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),
419 F.3d 83 (2d Cir. 2005)....................................................................................... 10, 11

Winstar Holdings, LLC v. Blackstone Group L.P., No. 07  Civ. 4634,
2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ............................................. 16, 22, 23, 24

## STATUTES

11 U.S.C. § 363(b)(1) ........................................................................................................ 25

28 U.S.C. § 1334................................................................................................... 10, 21, 22

28 U.S.C. § 1367................................................................................................................ 18

## OTHER AUTHORITIES

In re Adoption of Amended Guidelines for the Conduct of Asset Sales,
General Order M-383 (Bankr. S.D.N.Y. Nov. 18, 2009) ............................................... 25

Restatement (Second) of Contracts § 203(c) (1981)...................................................... 20

# TABLE OF EXHIBITS

**Exhibit**

2007 MOU Order ........................................................................................................................ A

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC f/k/a General Motors Company ("**New GM**"), by and through its

attorneys, submits this brief in support of the Court's exercise of its jurisdiction to hear and grant

the Motion of General Motors LLC (f/k/a General Motors Company) to Enforce Sale Order

(Docket No. 7527) (the "**Motion**").

### Preliminary Statement

1.      The chapter 11 cases of Debtor General Motors Corporation n/k/a Motors

Liquidation Company ("**Old GM**") and its affiliated debtors and debtors in possession

(collectively with Old GM, the "**Debtors**") resulted in a sale of the majority of the Debtors'

assets to New GM (the "**Sale**") that rehabilitated an iconic American company, restructured tens

of billions of dollars of debt, rationalized a network of over 6,000 dealers and, through the

settlement agreement (the "**2009 UAW Retiree Settlement Agreement**")[1] entered into by New

GM and the International Union, United Automobile, Aerospace, and Agricultural Implement

Workers of America (the "**UAW**"), restructured and limited all past payment obligations to

retirees.

2.      This restructuring of Old GM's retiree obligations through the 2009 UAW

Retiree Settlement Agreement was a *sine qua non* of the Sale.  The Court's exclusive jurisdiction

over whether the plain language of that agreement addresses the issues raised in the Motion is as

manifest now as it was when the parties agreed (in the 2009 UAW Retiree Settlement

Agreement) and the Court ordered (in the order approving the Sale) (the "**Sale Order**")[2] that the

---

[1]      A copy of the 2009 UAW Retiree Settlement Agreement (without exhibits) is attached to the Motion as
Exhibit A.

[2]      Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Purchase Agreement with
NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of
Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related

Court would retain such jurisdiction. Whatever the merits of New GM's arguments, they self-evidently present questions about the "enforcement, implementation, application, or interpretation" of the 2009 UAW Retiree Settlement Agreement and the Sale Order, i.e., questions that the plain language of the documents themselves (as well as the applicable law) place squarely within the Court's exclusive jurisdiction.[3]

3.    The jurisdictional and abstention questions presented by the Motion are straightforward. Sections 26(A) and 26(B) of the 2009 UAW Retiree Settlement Agreement — which agreement "fixed and capped" New GM's payment obligations to the New VEBA (as defined below) and "forever terminated" "[a]ll obligations of [New GM] … for Retiree Medical Benefits … arising from any agreement(s) between [New GM] and the UAW" (2009 UAW Retiree Settlement Agreement, Sections 2, 8) — unambiguously state the parties' intention that this Court retain and exercise *exclusive* jurisdiction over all disputes involving the "enforcement, implementation, application, or interpretation" of that agreement.

4.    The 2009 UAW Retiree Settlement Agreement, as well as the Sale Order, foreclose any claim that New GM has a contractual obligation to make the disputed $450 million payment (the "**Additional VEBA Payment**") to the New VEBA (as defined below). The Motion advances multiple bases for New GM's position, including that the 2009 UAW Retiree Settlement Agreement by its terms:

(a)    merged the then-existing defined contribution VEBA (the "**DC VEBA**") into a successor VEBA (the "**New VEBA**");

---

Relief, entered on July 5, 2009 (Docket No. 2968). A copy of the Sale Order, with the Amended and Restated Master Sale and Purchase Agreement dated as of June 26, 2009 (as amended, the "**MPA**") attached as an exhibit, is attached to the Motion as Exhibit B.

[3]    Moreover, as demonstrated below, in the unlikely event the Court were to find that the plain language of the 2009 UAW Retiree Settlement Agreement and the Sale Order did not extinguish any contingent obligation New GM may have had with respect to the Additional VEBA Payment (as such term is defined below), the Court also has — and should exercise — jurisdiction to determine whether conditions precedent to such an obligation have been satisfied.

(b)     fixed and capped New GM's obligations to make payments to the New VEBA;

(c)     prohibited the UAW from seeking additional payments to the New VEBA; and

(d)     amended, superseded or terminated any prior agreement inconsistent with "the fundamental understanding that all [New GM] obligations regarding Retiree Medical Benefits … are terminated."  (2009 UAW Retiree Settlement Agreement, Section 5(D)).

5.      In its Memorandum of Law Concerning Jurisdiction Over Motion of General Motors LLC to Enforce the Sale Order (Docket No. 8264) (the "**UAW Brief**"), the UAW all but ignores the explicit jurisdictional provisions of the 2009 UAW Retiree Settlement Agreement and the Sale Order and engages instead in extensive argument on the merits of whether the Additional VEBA Payment is in fact precluded by the 2009 UAW Retiree Settlement Agreement and the Sale Order.  By its own admission, for the UAW to succeed with this approach as a jurisdictional argument, it must establish that New GM's position is facially "insubstantial" and lacks even "colorable merit." (UAW Brief ¶ 45).  Under the plain language of the governing documents and the weight of relevant case law, the UAW has not made and cannot make that showing.

6.      The UAW's sole argument to attempt to defeat this Court's exclusive jurisdiction is that New GM's position summarized in paragraphs 3 and 4 above lacks "colorable merit" because the $450 million obligation to the DC VEBA is separate and distinct from the 2009 UAW Retiree Settlement Agreement and, therefore, not extinguished by it.  The UAW's argument fails for several reasons, including because the 2009 UAW Retiree Settlement Agreement by its terms was expressly made applicable to the DC VEBA; merges the DC VEBA into the New VEBA; fixes and caps New GM's obligations to make contributions to the New VEBA; extinguishes all other obligations of New GM for retiree health care; supersedes or amends any prior inconsistent agreements; and prohibits the UAW from seeking additional

contributions to the New VEBA from New GM.  The plain language of this central agreement between the parties establishes that New GM's position far surpasses the "colorable" standard.  Thus, the UAW's solitary basis for asserting this Court's lack of jurisdiction must fail.[4]

7.    Nor can the UAW demonstrate that this Court should abstain from deciding the issues presented.  Instead of addressing the factors governing abstention by bankruptcy courts, the UAW presumes that abstention is a foregone conclusion, again based entirely on its unsustainable assertion that New GM's position lacks a "colorable" basis on the *merits*.  In fact, the UAW Brief fails even to identify the abstention factors.  Application of those factors, however (as undertaken below), clearly demonstrates that the Court should not abstain, but rather should fulfill the intent of the parties as reflected in the 2009 UAW Retiree Settlement Agreement and the Sale Order and exercise jurisdiction over the Motion.

## Statement of the Record[5]

8.    As noted above, the importance of the restructuring of Old GM's retiree obligations to the consummation of the Sale (and, thus, to the success of the Debtors' chapter 11 cases) cannot be overstated.  Even before the Petition Date, the United States Department of the Treasury ("**Treasury**") conditioned its financial aid to Old GM on, among other things, renegotiation of the terms of Old GM's labor agreements and legacy liabilities.  Four of the five conditions to Treasury's willingness to provide financing to Old GM were related to reducing the costs associated with Old GM's labor agreements, and one specifically required renegotiation of

---

[4]    New GM disputes many of the characterizations of the facts as set forth in the UAW Brief as they relate to the merits; however, New GM's abbreviated exposition of the merits of its underlying position in this brief is intended solely to address the UAW's assertion that New GM's position lacks "colorable merit" as a jurisdictional prerequisite.  These brief remarks are not intended to reflect the entirety of New GM's position on the merits of its underlying claim but merely to advance New GM's position that this Court has and should exercise exclusive jurisdiction and to refute the UAW's jurisdictional argument.  New GM will fully present its arguments on the merits of this dispute at the appropriate time.

[5]    Other facts related to the Motion are set forth therein and are incorporated here by reference.

*all* of Old GM's retiree healthcare obligations, including Old GM's obligations to any VEBA.

See In re Gen. Motors Corp., 407 B.R. 463, 478 (Bankr. S.D.N.Y. 2009), aff'd sub nom. In re

Motors Liquidation Co., 428 B.R. 43 (S.D.N.Y. 2010), reh'g denied, In re Motors Liquidation

Co., No. 09 Civ. 7794, 2010 WL 3565494 (S.D.N.Y. Sep. 10, 2010).

9.        Old GM's bankruptcy cases commenced on June 1, 2009 (the "**Petition Date**")

to, among other things, effect the Sale.  At the time, New GM, an acquisition vehicle created for

the purpose of purchasing certain assets and assuming certain liabilities from Old GM, had been

in existence for three days.  The negotiation, execution and implementation of the 2009 UAW

Retiree Settlement Agreement were integral components of the Sale and the Debtors'

restructuring.[6]  It is, thus, no surprise that the Sale Order:

(a)    specifically approved the 2009 UAW Retiree Settlement Agreement as a separate
       agreement executed in connection with the Sale (Sale Order ¶ 19);

(b)    singled out key terms of the 2009 UAW Retiree Settlement Agreement, including
       Section 5.D thereof, which provides for the automatic amendment of all relevant
       agreements that are inconsistent with the terms of the 2009 UAW Retiree
       Settlement Agreement and the "fundamental understanding" that all of New GM's

---

[6]    The necessary modifications to the Debtors' labor agreements and the Court's approval of the 2009 UAW
Retiree Settlement Agreement were conditions to the Sale that neither New GM nor the Debtors could
waive.  Section 7.2 of the MPA stated that "[t]he obligations of [New GM] to consummate the transactions
contemplated by this Agreement are subject to the fulfillment or written waiver, prior to or at the Closing,
of each of the following conditions; provided, however, that in no event may [New GM] waive the
conditions contained in **Section 7.2(d)** or **Section 7.2(e)**."  (MPA § 7.2) (underline and bold in original).
The conditions unwaivable by New GM were the ratification of the UAW collective bargaining agreement
(MPA § 7.2(d)), the UAW's execution of the 2009 UAW Retiree Settlement Agreement and approval of the
2009 UAW Retiree Settlement Agreement by the Court (MPA § 7.2(e)).  Substantially identical language at
Section 7.3 of the MPA likewise prevented Old GM from waiving the same conditions.

Similarly, the effectiveness of the amended collective bargaining agreements assumed and assigned to New
GM in connection with the Sale were conditioned on the Court's approval of the 2009 UAW Retiree
Settlement Agreement.  See In re Gen. Motors Corp., No. 09-50026 (Bankr. S.D.N.Y.), Transcript of Hr'g,
Jul. 1, 2009 (all references to the transcript of the three-day hearing before the Court (the "**Sale Hearing**")
held on June 30, 2009, July 1, 2009 and July 2, 2009 shall be references to the "**Sale Hearing
Transcript**"), at 208:23-209:5 (testimony of David Curson on behalf of UAW).  David Curson testified
that "if the health care for [the UAW's] retired members was not going to be provided for any reason, if the
Court denied the [New VEBA], if the company couldn't fund the [New VEBA] or couldn't fund at any
point, that they couldn't deliver what they agreed to deliver to [the UAW's] retired members, [the UAW], at
that point, would have a right to withdraw all of the amendments" to the collective bargaining agreements
negotiated in connection with the Sale.

obligations for retiree health care are terminated (Sale Order ¶ 20; 2009 UAW Retiree Settlement Agreement § 5.D); and

(c)     consistent with the parties' intentions as expressed at Sections 26.A and 26.B of the 2009 UAW Retiree Settlement Agreement,[7] explicitly reserved the Court's "exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the MPA, all amendments thereto, any waivers and consents thereunder, *and each of the agreements executed in connection therewith ….*"  (Sale Order ¶ 71) (emphasis added).

10.     Old GM's contingent obligation to make the Additional VEBA Payment initially appeared in the 2007 Delphi Restructuring MOU,[8] as approved in the bankruptcy cases of Delphi Corporation ("**Delphi**") and its affiliated debtors and debtors in possession (collectively, the "**Delphi Debtors**").  (See Motion ¶¶ 8-10).  After Old GM, the UAW and a class of retirees had entered into the 2008 UAW Retiree Settlement Agreement,[9] that contingent obligation was again included as part of a series of new agreements between Delphi, Old GM and the UAW signed in September 2008.  (See Motion ¶¶ 12-14, 35).[10]

11.     In connection with the Sale, and to establish definitively the Old GM liabilities that were to be assumed by New GM, and those that were not,[11] the UAW and New GM entered

---

[7]     Section 26.A of the 2009 UAW Retiree Settlement Agreement provides that "the Bankruptcy Court will retain jurisdiction to resolve any disputes" arising thereunder until the Debtors' bankruptcy cases are closed or dismissed, and Section 26.B of the 2009 UAW Retiree Settlement Agreement provides that such jurisdiction is "exclusive jurisdiction."  (2009 UAW Retiree Settlement Agreement §§ 26.A and B).

[8]     A copy of the 2007 Delphi Restructuring MOU (without exhibits) is attached to the Motion as Exhibit C.

[9]     The 2008 UAW Retiree Settlement Agreement between Old GM, the UAW and the class of retirees was executed and submitted for preliminary court approval on February 21, 2008 and received final approval on July 31, 2008 from the United States District Court for the Eastern District of Michigan (the "**Michigan District Court**") presiding over the case titled Int'l Union, UAW, et al. v. General Motors Corp., Civil Action No. 07-14074 (E.D. Mich.).

[10]    As described in detail in the Motion, on September 26, 2008, Delphi, Old GM and the UAW entered into an implementation agreement (the "**2008 Implementation Agreement**") that immediately triggered certain of Old GM's commitments to provide certain pension and welfare benefits to UAW employees and also stated that the Additional VEBA Payment would remain contingent upon the satisfaction of the conditions in the 2007 Delphi Restructuring MOU.  A copy of the 2008 Implementation Agreement is attached to the Motion as Exhibit F.

[11]    New GM was not required to assume any liabilities of Old GM beyond those expressly assumed. See In re Gen. Motors Corp., 407 B.R. at 497 ("A purchaser cannot be told to assume liabilities that do not benefit its purchase objective.").

into the **2009** UAW Retiree Settlement Agreement.[12]  New GM was never a party to the

prepetition **2008** UAW Retiree Settlement Agreement, and the Sale Order expressly provides

that the 2008 UAW Retiree Settlement Agreement — upon which the UAW bases most of its

legal argument — was *never* assumed and assigned to New GM in connection with the Sale.

(Sale Order ¶ FF).[13]

12.    The UAW admits that the 2009 UAW Retiree Settlement Agreement states that

"New GM's obligations to make contributions to the New VEBA were 'fixed and capped' at the

amount and structure of the specific payments denominated in the agreement — and no more."

(UAW Brief ¶ 21; quoting 2009 UAW Retiree Settlement Agreement § 8).  Also, contrary to the

UAW's protest that the "DC VEBA" is immune to the "fixed and capped" provisions, the

2009 UAW Retiree Settlement Agreement explicitly covered and applied to the "Existing

External VEBA" (i.e., the DC VEBA).[14]  As the 2009 UAW Retiree Settlement Agreement

specifically contemplated that the DC VEBA would be merged into the New VEBA, all of New

GM's obligations to both VEBAs had to be (and were) addressed in the 2009 UAW Retiree

Settlement Agreement.[15]

---

[12]    Old GM (i.e., the party that had the contingent obligation to make the Additional VEBA Payment) was not
a party to the 2009 UAW Retiree Settlement Agreement, just as New GM (which did not exist until
May 2009) was not a party to the 2008 UAW Retiree Settlement Agreement, which arose in connection
with the class action lawsuit titled Int'l Union, UAW, et al. v. General Motors Corp., Civil Action
No. 07-14074 (E.D. Mich.).

For the ease of the Court's reference, New GM adopts the defined term for the 2008 UAW Retiree
Settlement Agreement used by the UAW in the UAW Brief but rejects any arguments that the UAW makes
with respect to the 2008 UAW Retiree Settlement Agreement.

[13]    Paragraph FF of the Sale Order states that, "[f]or the avoidance of doubt, and notwithstanding anything else
in [the Sale Order] to the contrary:  [t]he Debtors are neither assuming nor assigning to [New GM] … the
Settlement Agreement, dated February 21, 2008, between the Company and the UAW [(i.e., the
2008 UAW Retiree Settlement Agreement)]."  (Sale Order ¶ FF).

[14]    Specifically, the 2009 UAW Retiree Settlement Agreement states that it "shall cover and has application to:
… (iii) the Existing External VEBA [i.e., the DC VEBA] …."  (2009 UAW Retiree Settlement Agreement,
Preamble, at 1).

[15]    The 2009 UAW Retiree Settlement Agreement is comprehensive on this point.  See Section 14 (pursuant to
which the UAW agreed "not to seek to obligate [New GM] to:  (i) provide any additional payments to the

13.     The proposed treatment of Old GM's retiree obligations, and the consideration to

be received by the UAW and UAW retirees in connection with the Sale and these chapter 11

cases, received significant attention from Old GM's creditor constituencies.  As the Court knows,

850 or so objections were filed in response to the Debtors' motion to approve the Sale.  A

common objection was that the Sale amounted to a *sub rosa* plan of reorganization, in part

because of the amounts New GM agreed to pay pursuant to the 2009 UAW Retiree Settlement

Agreement.[16]  At the Sale Hearing, parties repeatedly questioned witnesses about the amount of

consideration being provided to the UAW and UAW retirees in connection with the Sale or

referenced such consideration in their closing arguments.  (See, e.g., Sale Hearing Transcript,

Jun. 30, 2009, at 82:9-86:25; Sale Hearing Transcript, Jul. 1, 2009, at 85:9-90:3; 250:14-251:9;

292:4-294:6; Sale Hearing Transcript, Jul. 2, 2009, at 71:3-19; 86:18-88:25; 153:11-154:5;

182:16-183:7).

## Argument

**A.     The Court Has Explicitly Reserved Exclusive Jurisdiction to Interpret
and Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement**

**1.     The Court Reserved Exclusive Jurisdiction to Interpret and
Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement**

14.     The Sale Order and the 2009 UAW Retiree Settlement Agreement explicitly

provide that this Court retained exclusive jurisdiction "to resolve disputes arising out of or

---

New VEBA other than those specifically required by the [2009 UAW Retiree Settlement Agreement]");
Section 5.D (providing that any prior agreements inconsistent with the 2009 UAW Retiree Settlement
Agreement would be automatically amended so as to be consistent with the 2009 UAW Retiree Settlement
Agreement); and Section 32.C (providing that the 2009 UAW Retiree Settlement Agreement "supersedes
any prior understandings, agreements or representations by or between the parties, written or oral,
regarding the matters set forth" therein).

[16]     See In re Gen. Motors Corp., 407 B.R. at 496 ("Here the objectors principally base their arguments on
things [New GM] intends to do.  They complain of [New GM]'s intention, in connection with the [Sale],
to … make offers of employment to all … employees represented by the UAW, and … be assigned a
modified collective bargaining agreement with the UAW, including an agreement to contribute to the New
VEBA to fund retiree medical benefits for UAW members and their surviving spouses.").

relating to the enforcement, implementation, application or interpretation of" the 2009 UAW

Retiree Settlement Agreement.  (Sale Order ¶ 71; 2009 UAW Retiree Settlement Agreement

§ 26).[17]  On its face, the 2009 UAW Retiree Settlement Agreement is comprehensive in its

objective to fix and cap New GM's obligations to UAW retirees to those specifically enumerated

in the agreement itself and to "forever terminate" (2009 UAW Retiree Settlement Agreement,

§ 2) all obligations related to retiree medical benefits arising in any prior agreement.  It is also

made expressly applicable to the DC VEBA.  Those facts alone are sufficient to establish that a

determination as to whether provisions of the 2009 UAW Retiree Settlement Agreement operate

to foreclose the UAW's demand for an additional $450 million contribution to any VEBA

(the "**Preclusion Dispute**") falls squarely within the Court's exclusive jurisdiction.

15.      As demonstrated in paragraphs 18 to 20 below, the UAW's solitary argument

that this Court does not have jurisdiction because New GM's position lacks colorable merit

cannot withstand scrutiny.  See Bell v. Hood, 327 U.S. 678, 682-83 (1946) (holding that federal

court subject matter jurisdiction cannot be defeated merely because there is a challenge to the

merits of the claim on which jurisdiction is based, unless the alleged claim "clearly appears to be

immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is

wholly insubstantial and frivolous"); see also Archangel Diamond Corp. v. OAO Lukoil (In re

Archangel Diamond Corp.), No. 09-1755, 2010 WL 4386808, at *4 (Bankr. D. Colo.

Oct. 28, 2010) ("the Court's own research has revealed that courts are loath to dismiss for lack of

---

[17]      Paragraph 71 of the Sale Order states that the

> Court retains exclusive jurisdiction to enforce and implement the terms and
> provisions of this Order, the MPA, all amendments thereto, any waivers and
> consents thereunder, *and each of the agreements executed in connection
> therewith* ….

(Sale Order ¶ 71) (emphasis added).  Similarly, Section 26 of the 2009 UAW Retiree Settlement
Agreement states that "the Bankruptcy Court retain[ed] exclusive jurisdiction to resolve disputes arising out
of or relating to the enforcement, implementation, application, or interpretation of [the 2009 UAW Retiree]
Settlement Agreement."  (2009 UAW Retiree Settlement Agreement § 26.B).

jurisdiction, absent a claim that is 'wholly insubstantial'") (citing <u>Bell v. Hood</u>).  To the contrary,

this dispute requires direct application and interpretation of the terms of an agreement over

which the Court has reserved exclusive jurisdiction and which was an integral component of the

Sale.  If the 2009 UAW Retiree Settlement Agreement applies to anything, it encompasses the

UAW's efforts to impose a nearly half-billion dollar obligation upon New GM to fund retiree

benefit obligations that were fixed and capped by that agreement.

### 2. The Court Has Inherent Jurisdiction to Interpret and Enforce the Sale Order and the 2009 UAW Retiree Settlement Agreement

16.      This Court also has inherent jurisdiction to interpret and enforce its own orders.

<u>See</u> <u>Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)</u>, 419 F.3d 83, 97

(2d Cir. 2005) ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders.")

(citing <u>Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)</u>, 304 F.3d 223, 230

(2d Cir. 2002)); <u>see</u> <u>also</u> <u>In re Motors Liquidation Co.</u>, No. 09-50026 (Bankr. S.D.N.Y.),

Transcript of Hr'g, Oct. 4, 2010 (the "**Rally** Decision")[18] (holding that the Sale Order was a core

proceeding and that "the enforcement of orders resulting from core proceedings are themselves

considered core proceedings").  The interpretation and enforcement of a bankruptcy court order

is a matter that "arises in" a bankruptcy case pursuant to 28 U.S.C. § 1334(b).  <u>See</u> <u>NWL</u>

<u>Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)</u>, 317 B.R. 260, 269 (Bankr.

S.D.N.Y. 2004) (holding that "[e]fforts to implement, gain the fruits of, and to enforce orders of

the bankruptcy court" are proceedings that "arise in" a bankruptcy case).  Thus, the Court has

previously held that a matter involving a dispute over which the Court retained exclusive

---

[18]      A copy of the <u>Rally</u> Decision is attached to the Motion as Exhibit L.

jurisdiction pursuant to the Sale Order was a proceeding "arising in" a case under title 11.

See Rally Decision, 44:18-46:1.[19]

17.    Bankruptcy courts routinely exercise jurisdiction to hear disputes between

non-debtor third parties that require the interpretation and enforcement of sale orders,

particularly when such disputes involve the imposition of liabilities on a free and clear purchaser

of a debtor's assets.[20]    The rights New GM seeks to enforce in the Motion — including the right

to foreclose the UAW from imposing, months after the closing of the Sale, what amounts to a

retroactive $450 million increase in the purchase price for Old GM's assets — are "based on

rights established in" the Sale Order and are "uniquely affected by and inextricably linked to" the

Sale Order.  Petrie Retail, 304 F.3d at 229-30.[21]    The Preclusion Dispute can (and must) be

decided by reference to, and interpretation of, the 2009 UAW Retiree Settlement Agreement and

the Sale Order over which this Court has exclusive jurisdiction.

---

[19]    Because the Preclusion Dispute "arises in" the Debtors' bankruptcy cases, "[d]iscussions of 'related to' jurisdiction, a wholly separate jurisdictional basis, are irrelevant." In re Ames Dep't Stores, Inc., 317 B.R. at 269.

[20]    See, e.g., Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92, 95 (2d Cir. 2006) (holding that the bankruptcy court had core jurisdiction to hear a contract dispute between purchaser of debtors' assets and non-debtor counterparty to a contract assumed and assigned in connection with the sale, even after underlying bankruptcy proceeding had been dismissed, because the action turned on the terms of the sale order and amounted to a request that the bankruptcy court enforce that order); In re Millenium Seacarriers, Inc., 419 F.3d at 97 (holding that the bankruptcy court retained core jurisdiction to enforce its sale order in an adversary action to determine priority of maritime liens on vessels sold pursuant to the sale order because "the adversary proceeding was intended to accomplish a discrete goal of the Sale Order [i.e., ranking objecting lienors' maritime claims] and the bankruptcy court retained jurisdiction following the auction to effectuate that goal"); Petrie Retail, 304 F.3d at 229-31 (holding that the bankruptcy court had core jurisdiction to hear a dispute between two non-debtors over a prepetition lease and enforce a pre-existing injunction as part of its sale order because the dispute was "based on rights established in the sale order" and was "uniquely affected by and inextricably linked to the bankruptcy court's sale order") (citing Comco Assocs. v. Faraldi Food Indus. Ltd., 170 B.R. 765, 772 (E.D.N.Y. 1994)).

[21]    As one example, the Sale Order approved the 2009 UAW Retiree Settlement Agreement and "directed [the Debtors, New GM and the UAW] to perform their obligations under, or in connection with, the implementation of the [2009] UAW Retiree Settlement Agreement and to comply with the terms of the [2009] UAW Retiree Settlement Agreement."  (Sale Order ¶ 19).

**B.    The UAW's Solitary Argument Opposing Jurisdiction — That New GM's
       Position is So Frivolous As to Defeat Jurisdiction — Cannot Withstand Review**

18.    Attempting to defeat this Court's exclusive jurisdiction, the UAW maintains that

the Additional VEBA Payment is actually a prior obligation owing to a defunct, nonexistent

VEBA (i.e., the DC VEBA) that is unaffected by the comprehensive nature of the 2009 UAW

Retiree Settlement Agreement.  (UAW Brief ¶¶ 26, 28(f)).[22]  Yet, by its terms, the 2009 UAW

Retiree Settlement Agreement is expressly made applicable to the DC VEBA and, therefore,

governs New GM's obligations to *both* the former DC VEBA *and* the New VEBA.  (2009 UAW

Retiree Settlement Agreement, Preamble) (stating that the 2009 UAW Retiree Settlement

Agreement "shall cover and has application to:  … (iii) the Existing External VEBA [i.e., the DC

VEBA]").  The universe of retiree benefit obligations "fixed and capped" by the 2009 UAW

Retiree Settlement Agreement includes *all* obligations to *both* VEBAs.  Thus, the UAW's

assertion that the DC VEBA is somehow immune to the limitations on New GM's required

contributions that are addressed by the 2009 UAW Retiree Settlement Agreement (see UAW

Brief, at ¶ 42) is wrong — certainly, at a minimum, New GM advances a position having

"colorable merit".

19.    Likewise, the UAW's assertion that the comprehensive provisions of the

2009 UAW Retiree Settlement Agreement did not reach the Additional VEBA Payment rests

upon the contention (which New GM disputes) that similar language in the 2008 UAW Retiree

Settlement Agreement did not extinguish <u>Old GM's</u> contingent obligations for the Additional

---

[22]    As noted previously, New GM understands that the merits of the dispute are not before the Court; however,
New GM has found it unavoidable to touch on the merits of its position to demonstrate that the Court does
have jurisdiction over the merits of the dispute and that the UAW's contention that New GM's position is
"frivolous" or lacking in "colorable" merit is invalid.  These brief remarks do not reflect the entirety of New
GM's evidence or arguments on the merits of its position but are presented solely to address the UAW's
jurisdictional argument.  New GM will fully present its arguments on the merits of this dispute at the
appropriate time.

VEBA Payment.  All that the UAW has demonstrated, however, is that, several months after the 2008 UAW Retiree Settlement Agreement was executed, the UAW obtained from Old GM the inclusion of the contingent Additional VEBA Payment language in order to secure the UAW's acceptance of the 2008 Implementation Agreement.  But that demonstration does not establish the UAW's underlying premise, and it has no bearing on whether the later 2009 UAW Retiree Settlement Agreement modified any of the obligations set forth in earlier agreements.  By the 2009 agreement's unambiguous language, it did.  Moreover, New GM expressly did not take an assignment of the 2008 UAW Retiree Settlement Agreement, which casts significant doubt on its relevance to the interpretation of a later, integrated agreement between the UAW and a new party (New GM).  (See Sale Order ¶ FF.)  In any event, as set forth in paragraphs 18 and 20, the 2009 UAW Retiree Settlement Agreement terminated, amended and superseded any inconsistent obligations of Old GM that were actually assumed by New GM in respect of payment obligations to any VEBA.[23]

---

[23]    Similarly, the UAW's assertion that one sentence from New GM's Form 10-Q for a single quarter (ended September 30, 2009) filed with the United States Securities and Exchange Commission (the "**SEC**") on April 7, 2010 (the "**April 2010 10-Q**") demonstrates that the Additional VEBA Payment survived the execution of the 2009 UAW Retiree Settlement Agreement misses the mark entirely.  (See UAW Brief ¶ 51(c)).  The disclosure must be viewed in context.  The April 2010 10-Q's mention of the Additional VEBA Payment appears

(a)    after a comprehensive discussion of the 2009 UAW Retiree Settlement Agreement in which New GM stated that "[its] obligations to the New Plan and the New VEBA are limited to the [2009 UAW Retiree Settlement Agreement] which is irrevocable and eliminates significant risk to [New GM] effective December 31, 2009" (April 2010 10-Q at 51); and

(b)    within the context of a historical description of the **2008** UAW Retiree Settlement Agreement in which New GM stated that Old GM had remeasured the liabilities to the UAW **in September 2008** and that the assumptions and measurement of liabilities made by Old GM (which assumptions would have been correct at the time) were contingent upon Delphi's implementing a particular plan of reorganization.  (April 2010 10-Q at 52).

In subsequent reports filed with the SEC (including New GM's Form 10-K for the year ended December 31, 2009 and its Forms 10-Q for the quarters ended March 31, 2010, June 30, 2010 and September 30, 2010), New GM made no mention of the Additional VEBA Payment beyond a single reference in its latest Form 10-Q to the filing of the UAW's complaint (the "**VEBA Complaint**") with the Michigan District Court asserting the right to the Additional VEBA Payment.  (See New GM Form 10-Q for the quarter ended September 30, 2010, at 151).

20.     Specifically, Section 5.D of the 2009 UAW Retiree Settlement Agreement amends "all provisions of applicable collective bargaining agreements, contracts, letters and understandings in any way related to Retiree Medical Benefits for the Class and the Covered Group" so that such agreements are consistent with both the terms of the 2009 UAW Retiree Settlement Agreement "and the fundamental understanding that all [New GM] obligations regarding Retiree Medical Benefits for the Class and the Covered Group[24] are terminated…." (2009 UAW Retiree Settlement Agreement § 5.D).  The plain language of Section 5.D of the 2009 UAW Retiree Settlement Agreement operates to conform any inconsistent prior agreements, which include the 2007 Delphi Restructuring MOU and the 2008 Implementation Agreement.  This Court should, thus, reject the UAW's assertion that New GM's position regarding application of the 2009 UAW Retiree Settlement Agreement to the Additional VEBA Payment is "frivolous" or "lacking colorable merit" and find that it has exclusive jurisdiction over the matter.  For current purposes, however, all that matters is that the clear and unambiguous language of the 2009 UAW Retiree Settlement Agreement

(a)     caps New GM's obligations with respect to UAW retiree healthcare generally and VEBA payments specifically; and

(b)     commits any dispute regarding those questions to the exclusive jurisdiction of this Court.

The Court is not called upon to resolve merits arguments over that now; however, reference to the language of the 2009 UAW Retiree Settlement Agreement demonstrates that New GM's position is, at the very least, "colorable" and, therefore, clearly subject to the adjudication of this Court, and no other, in due course.

---

[24]     The terms "Class" and "Covered Group" each are defined, in part, by reference to the 2008 Implementation Agreement, further indicating that New GM and the UAW were well aware of the terms of that agreement during negotiation of the 2009 UAW Retiree Settlement Agreement.

**C.**      **The Court Has Jurisdiction to Resolve Any Remaining**
           <u>**Dispute Over the Terms of the 2007 Delphi Restructuring MOU**</u>

       21.      Given the comprehensive and integrated nature of the 2009 UAW Retiree

Settlement Agreement, New GM believes the Court need only look to its terms and those of the

Sale Order, over which the Court has exclusive jurisdiction, to conclude that it possesses

jurisdiction over the Preclusion Dispute. Even if the Court deemed it necessary to refer to other

documents or agreements to assist in its interpretation, as the UAW suggests, New GM's Motion

quite clearly asks the Court to interpret, apply, implement and enforce the 2009 UAW Retiree

Settlement Agreement, which it expressly reserved exclusive jurisdiction to do. However, to the

extent this Court ultimately concludes that the UAW's claim is not foreclosed by the terms of the

2009 UAW Retiree Settlement Agreement or the Sale Order, the Court also has jurisdiction to

determine whether conditions to payment under the 2007 Delphi Restructuring MOU

(the "**MOU Dispute**") have been satisfied.

          **1.**      **The Court Has "Arising In" Jurisdiction Over the MOU Dispute**

       22.      A dispute "arises in" a bankruptcy case if it requires a bankruptcy court to

interpret its own order before reaching any underlying claims (in this case, the UAW's contract

claim under the 2007 Delphi Restructuring MOU). In <u>Lothian Cassidy LLC v. Ransom</u>,

428 B.R. 555 (E.D.N.Y. 2010), the district court found that it had "arising in" jurisdiction when

the "litigation of some, if not all, of plaintiffs' … claims [would] require gateway interpretation

of the bankruptcy court's prior orders … before their action [could] proceed." 428 B.R. at 560.

       23.      Here, the Court necessarily must determine whether the terms of the Sale Order

and the 2009 UAW Retiree Settlement Agreement preclude the Additional VEBA Payment

before considering the MOU Dispute. Because the MOU Dispute cannot be divorced from a

threshold interpretation of these documents, the Court has "arising in" jurisdiction over the MOU Dispute as well.

### 2.    The Court Also Has "Related To" Jurisdiction Over the MOU Dispute

24.    The Second Circuit has adopted the "any conceivable effect" test for "related to" jurisdiction.  See Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984) (hereafter, "**Pacor**"); Publicker Indus. Inc. v. U.S. (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) (adopting "any conceivable effect" test from Pacor).[25]  Under this test, certainty or likelihood of an effect on a bankruptcy estate is not required "so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate."  Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) (citing Lindsey v. O'Brien, Tansky, Tanzer and Young Health Care Providers of Connecticut (In re Dow Corning Corp.), 86 F.3d 482, 491 (6th Cir. 1996)).  "[T]he proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Pacor, 743 F.2d at 994.

25.    The MOU Dispute could have "conceivable effects" on the Debtors and their estates, and thus the Court has "related to" jurisdiction over the MOU Dispute.  As set forth in more detail in paragraphs 43-44 *infra,* it is conceivable that a determination that the UAW is entitled to receive a previously undisclosed $450 million enhancement in the consideration it receives from New GM as a result of the Sale could cause various parties in interest (including

---

[25]    Accord Krys v. Sugrue, No. 08 Civ. 3065, 2008 WL 4700920, at *5 (S.D.N.Y. Oct. 23, 2008) (adopting Pacor test for "related to" jurisdiction); Digital Satellite Lenders, LLC v. Ferchill, No. 03 Civ. 8803, 2004 WL 1794502, at *2 (S.D.N.Y. Aug. 10, 2004) (stating that "related to jurisdiction" may be established if the outcome of the litigation might have "any conceivable effect on the bankrupt estate").

some of the more than 850 objectors to the Sale) to file pleadings with the Court questioning

such consideration (pleadings which the Court will be obliged to address).  Also, the value of

New GM's stock — which stock constitutes the overwhelming pool of Old GM's assets available

for distribution to Old GM's creditors and will be distributed in satisfaction of claims against the

Debtors pursuant to the Debtors' Amended Joint Chapter 11 Plan (Docket No. 8015) — could be

negatively impacted and, thus, creditor recoveries could be impaired.[26]

   26.  In addition, the Court has found that "related to" jurisdiction may exist where

claims between non-debtors are "intimately intertwined" with claims against the debtor or

involve parties intimately intertwined with the debtor.  See ML Media Partners, L.P. v.

Century/ML Cable Venture (In re Adelphia Commc'ns Corp.), 285 B.R. 127, 137 n.31

(Bankr. S.D.N.Y. 2002) (citing Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,

No. 95-Civ-0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995)); Ameritrust Co., N.A. v.

Opti-Gage, Inc. (In re Opti-Gage, Inc.), 128 B.R. 189, 195 (Bankr. S.D. Ohio 1991) (holding that

"proceedings are 'related to' bankruptcy cases not only where the outcome of the proceeding may

conceivably have an effect upon the estate being administered, *but also where parties are*

*sufficiently intertwined with the debtor*") (emphasis added).  Because the MOU Dispute involves

issues central to the Debtors' bankruptcy cases and parties intimately intertwined with the

---

[26]  See In re Gen. Motors Corp., 407 B.R. at 483 (describing amount of New GM stock owned by Old GM after the Sale).  The possible negative impact of a proceeding on the price of stock issued in connection with a confirmed chapter 11 plan is a "conceivable effect" upon a debtor's estate.  See Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 640 (S.D.N.Y. 1997) (acknowledging "support for the proposition that the possible drop in the [reorganized entities'] stock price constitutes a 'conceivable effect' on the Debtors"); Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 161 (S.D.N.Y. 1995) (holding that one basis for "related to" jurisdiction over a dispute between two non-debtors under the terms of a lease and related guaranty agreement was the impact on "the value of the stock in the reorganized [Debtor], stock that many creditors receive under the Plan").  The impact of a decision that New GM is liable for the Additional VEBA Payment — despite investors' (and, thus, Old GM's creditors') reliance on the clear release language of the Sale Order and the 2009 UAW Retiree Settlement Agreement to limit New GM's assumption of Old GM's legacy liabilities — also could impair the value of New GM's stock over the long term.

Debtors (i.e., an attempt by the UAW to impose a $450 million price increase on New GM for

the benefit of the Debtors' retirees in connection with the Sale), the Court also has "related to"

jurisdiction over the MOU Dispute.[27]

### 3.    No Court Has Exclusive Jurisdiction Over the MOU Dispute

27.    New GM believes that no court has exclusive jurisdiction over the MOU

Dispute, and this Court is best suited to resolve it.

28.    On November 2, 2010, Delphi filed a limited objection to the Motion (Docket

No. 7626) (the "**Delphi Objection**").  The Delphi Objection agrees that this Court has exclusive

jurisdiction to enforce and interpret the Sale Order and the 2009 UAW Retiree Settlement

Agreement (agreeing with New GM's position regarding the Preclusion Dispute).  Delphi further

asserts, however, that the bankruptcy court presiding over Delphi's bankruptcy case (the "**Delphi**

**Bankruptcy Court**") has exclusive jurisdiction over disputes requiring interpretation of the

2007 Delphi Restructuring MOU.  (Delphi Objection ¶¶ 9-10).  Specifically, the Delphi

---

[27]    The Court also may exercise supplemental jurisdiction over the MOU Dispute pursuant to 28 U.S.C.
§ 1367.  Bankruptcy courts may exercise supplemental jurisdiction "over all other claims that are so related
to claims in [an] action within [a court's] original jurisdiction that they form part of the same case."  Klein
v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994) (holding that landlord's claim
against party filing mechanic's lien against property leased by debtor in connection with similar claims filed
by the debtor was within the bankruptcy court's supplemental jurisdiction); see also In re Cuyahoga Equip.
Corp., 980 F.2d at 114 (stating that "even without an independent source of jurisdiction over [CERCLA]
actions, § 1367(a) … vested the Southern District with jurisdiction over them as related claims forming part
of the same case pending before it" that involved bankruptcy claims).

Bankruptcy courts also may exercise supplemental jurisdiction to resolve claims that are otherwise not
related to a bankruptcy case if they arise from the same factual nexus as, and would ordinarily be resolved
with, claims properly before the bankruptcy court.  See Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.,
355 B.R. 214, 221-22 (D. Haw. 2006) (holding that bankruptcy court could exercise supplemental
jurisdiction over counterclaims (including claim based on federal antitrust law) where such claims were
"directly related to, and inextricably intertwined with," claims "over which the bankruptcy court ha[d] core
jurisdiction").

An exercise of supplemental jurisdiction is further appropriate where forcing parties to re-argue facts
familiar to the Court to a separate judge, in a separate proceeding and at a later date would waste the
parties' (and the other court's) time and resources.  As such, in the interests of judicial economy, this Court
should exercise supplemental jurisdiction with respect to the MOU Dispute even if no other jurisdictional
basis were available.  Cf. In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 399 F. Supp. 2d 340, 349
(S.D.N.Y. 2005) (noting that federal courts should consider, among other factors, judicial economy when
determining extent of supplemental jurisdiction pursuant to 28 U.S.C. § 1367).

Objection argues that Article XIII(r) of Delphi's substantially modified plan (the "**Modified**

**Plan**"),[28] which reserves to the Delphi Bankruptcy Court exclusive jurisdiction to enforce all

orders entered by the Delphi Bankruptcy Court, encompasses the order approving the

2007 Delphi Restructuring MOU and, thus, preserves jurisdiction over the MOU Dispute in the

Delphi Bankruptcy Court.  (Id. at ¶ 9).  Counsel for New GM and counsel for Delphi have

discussed the parties' differing interpretations, but there remains a good faith difference of

opinion regarding the various Delphi orders and how they affect jurisdiction over the MOU

Dispute.

29.    With respect to the arguments presented in the Delphi Objection, New GM

observes that the order approving the 2007 Delphi Restructuring MOU (Delphi Docket

No. 8693) (the "**2007 MOU Order**"):[29]

(a)    does not retain *exclusive* jurisdiction over matters "arising from the
implementation and performance of" the 2007 Delphi Restructuring MOU;

(b)    provides that the scope of the Delphi Bankruptcy Court's post-effective date
jurisdiction over the 2007 Delphi Restructuring MOU will be defined by the plan
confirmed in Delphi's chapter 11 cases (i.e., the Modified Plan) [which has led
Delphi to Article XIII(r) of the Modified Plan]; and

(c)    expressly provides that "the [Delphi Bankruptcy] Court's jurisdiction shall not
extend to any bilateral agreements of the UAW and GM."  (2007 MOU
Order ¶ 12).

30.    Further, New GM submits that the jurisdictional provisions of the Modified Plan

more narrowly circumscribe the Delphi Bankruptcy Court's jurisdiction over the MOU Dispute.

As a threshold matter, Articles XIII(k) and XIII(u) of the Modified Plan — which specifically

establish the scope of the Delphi Bankruptcy Court's jurisdiction over disputes involving

New GM — govern over the more general language in Article XIII(r) of the Modified Plan cited

---

[28]    A copy of the Modified Plan (without exhibits) is attached to the Motion as Exhibit H.

[29]    A copy of the 2007 MOU Order is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.

by Delphi.  See, e.g., Restatement (Second) of Contracts § 203(c) (1981) ("[S]pecific terms and

exact terms are given greater weight than general language.").

31.     Article XIII(k) of the Modified Plan states that the Delphi Bankruptcy Court's

jurisdiction "as to disputes involving GM or GMCo. [i.e., New GM] shall be as set forth in

Article XIII(u)" of the Modified Plan.  (See Modified Plan Art. XIII(k)).  Article XIII(u) of the

Modified Plan, in turn, states that the Delphi Bankruptcy Court retained exclusive jurisdiction "to

hear and determine disputes arising in connection with the interpretation, implementation, or

enforcement of the Delphi-GM Definitive Documents … *except as provided in such*

*documents*."[30]  (Id. at Art. XIII(u)) (emphasis added).

32.     The jurisdictional provisions of the GSA state that the Delphi Bankruptcy Court

retained exclusive jurisdiction over disputes arising out of the GSA only until the second

anniversary of the effective date of the GSA, and non-exclusive jurisdiction for two years

thereafter.  (GSA § 7.05; Order approving, among others, the GSA, at ¶ 11).[31]  The effective date

of the GSA was on or about September 29, 2008.  Therefore, the *exclusive* jurisdiction of the

Delphi Bankruptcy Court under the GSA expired on September 29, 2010, and, as a result, New

GM believes that the Delphi Bankruptcy Court does not have exclusive jurisdiction over the

MOU Dispute.

33.     Accordingly, New GM believes that this Court as well as the Delphi Bankruptcy

Court has jurisdiction over the MOU Dispute.  At this point, however, the Court could defer

---

[30]     The "Delphi-GM Definitive Documents" are defined in Section 1.56 of the Modified Plan to include the
Amended and Restated Global Settlement Agreement between Delphi Corporation, on behalf of itself and
certain subsidiaries and Affiliates, and General Motors Corporation, dated September 12, 2008 and
September 25, 2008 (the "**GSA**").  (See Modified Plan § 1.56).  A copy of the GSA (without exhibits) is
attached to the Motion as Exhibit D.  In turn, the 2007 Delphi Restructuring MOU is incorporated into the
terms of the GSA "as if fully set forth [t]herein."  (See GSA §§ 2.01, 2.03 and 7.20).  Therefore, the Delphi
Bankruptcy Court retained jurisdiction over the 2007 Delphi Restructuring MOU (as incorporated into the
GSA) only to the extent provided in the GSA's jurisdiction provisions.

[31]     A copy of the order approving, among other things, the GSA is attached to the Motion as Exhibit E.

ruling on this issue since it has explicitly retained exclusive jurisdiction over the Preclusion

Dispute, which is independent from, and dispositive of, the MOU Dispute.  However, if this

Court were to determine that resolution of the Preclusion Dispute does not conclusively foreclose

the MOU Dispute, then the Court could address the relative weight of New GM's and Delphi's

arguments set forth above.

**D.    The Court Should Exercise Its Jurisdiction Over the Motion**

34.    The UAW Brief presumes that the UAW will prevail on its argument that New

GM's position in this matter lacks "colorable merit" and, on that basis, suggests that the Court

should abstain from exercising its jurisdiction.  The UAW omits any comprehensive analysis of

the relevant factors underlying abstention.[32]  Those factors, however, weigh heavily against

abstention and in favor of the Court's exercise of its exclusive jurisdiction over the Motion.

**1.    Mandatory Abstention is Inapplicable**

35.    Mandatory abstention does not apply to cases "arising under title 11 or arising in

a case under title 11."  28 U.S.C. § 1334(c); see Baker v. Simpson, 613 F.3d 346, 350

(2d Cir. 2010), cert. denied, — S.Ct. —, 2011 WL 55596 (U.S. Jan. 10, 2011) ("Mandatory

abstention applies when 'a proceeding based upon a [s]tate law claim or [s]tate law cause of

action' is 'related to a case under [T]itle 11' but does not arise under or arise in a case under

Title 11.").  Because the Court has "arising in" jurisdiction over both the Preclusion Dispute and

the MOU Dispute (see ¶¶ 16, 22-23, *supra*), mandatory abstention is not applicable.

36.    Even were the Court to find that it has only "related to" jurisdiction over the

MOU Dispute, mandatory abstention still is not applicable because there is an independent

---

[32]    The UAW Brief cites two opinions (not authored by the Court) for a six-factor test governing abstention.
(UAW Brief ¶ 54).  The seven-factor test articulated by this Court includes five of the factors identified in
the UAW Brief (addressed below).  This brief further addresses the remaining factor identified by the
UAW (i.e., the existence of a related proceeding in another, non-bankruptcy court).

federal jurisdictional basis for the MOU Dispute other than 28 U.S.C. § 1334.  See 28 U.S.C.

§ 1334(c)(2) (providing that mandatory abstention only applies when "an action could not have

been commenced in a court of the United States absent jurisdiction under [28 U.S.C. § 1334]").

The UAW filed the VEBA Complaint in the Michigan District Court pursuant to 29 U.S.C. § 185

and 28 U.S.C. § 1331; the MOU Dispute is thus within the jurisdiction of the federal courts

pursuant to a provision other than 28 U.S.C. § 1334, and mandatory abstention does not apply.

### 2.    The Court Should Not Exercise Its Discretion to Abstain

37.    Permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) is the exception, not

the rule.  Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 813 (1976) ("The

doctrine of abstention, under which a [federal court] may decline to exercise or postpone the

exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a [federal

court] to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases

can be justified under this doctrine only in the exceptional circumstances where the [abstention]

order … would clearly serve an important countervailing interest.") (quoting Cnty. of Allegheny

v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).[33]

38.    Abstention is inappropriate where, like here, the dispute involves the

interpretation or enforcement of a bankruptcy court sale order.  As the Court has held:

> [T]he bidders of the world that come in to bid for assets in the
> bankruptcy court must have knowledge that the bankruptcy courts
> will stand by the documents as they were then drafted to give the
> parties to those agreements the predictability in their relations for
> which they are binding and upon which they justifiably rely….
> Active bidding on assets from bankruptcy estates will be promoted

---

[33]    Accord CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC, 396 B.R. 602, 607
(S.D.N.Y. 2008) ("Courts must be 'sparing' in their exercise of permissive abstention … and may abstain
only for a few 'extraordinary and narrow exceptions.'") (citations omitted); Winstar Holdings,
2007 WL 4323003, at *6 (stating that "[f]ederal courts should be 'sparing' in their exercise of discretionary
abstention") (citing Texaco, Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937, 946-47 (Bankr.
S.D.N.Y. 1995)).

> if prospective purchasers have the assurance that they may go back
> to the original[ ] forum that authorized the sale for a construction
> or clarification of the terms of the sale that it approved.  Relegating
> post-sale disputes to a different forum injects an uncertainty into
> the sale process which would dampen interest and hinder the
> maximization of value.  A purchaser that relies on the terms of a
> bankruptcy court's order and whose title and rights are given life
> by that order should have a forum in the issuing court.

See Rally Decision, 48:20-49:13; see also Sterling Vision, Inc. v. Sterling Optical Corp. (In re

Sterling Optical Corp.), 302 B.R. 792, 806 (Bankr. S.D.N.Y. 2003) (abstention is not warranted

where a "dispute is uniquely affected by and inextricably linked to [a] bankruptcy court's sale

order") (quoting Petrie Retail, 304 F.3d at 230).  Likewise, abstention is unwarranted when a

dispute involves interpretation of an agreement approved by a bankruptcy court.  See Winstar

Holdings, 2007 WL 4323003, at *6 (finding abstention unwarranted where dispute involved the

interpretation of a bankruptcy court-approved asset purchase agreement).

39.     Permissive abstention is particularly inappropriate with respect to the Preclusion

Dispute where the UAW agreed to the Court's retention of exclusive jurisdiction over the

2009 UAW Retiree Settlement Agreement and did not object to the Sale Order.  See Winstar

Holdings, 2007 WL 4323003, at *6 (stating that the most significant factor in declining to

abstain was the fact that "both the plaintiffs and the Bankruptcy Court expressly stipulated that

the Bankruptcy Court would be the exclusive forum for resolving claims related to the sale" of

the debtors' assets).

40.     In addition to these threshold considerations (each of which weighs heavily

against abstention), the following factors have been found to apply to determining whether to

exercise discretion to abstain:

(a)     the degree of relatedness or remoteness of the proceedings to the main bankruptcy
case;

(b)     the effect on the efficient administration of the bankruptcy estate;

    (c)      the extent to which issues of state law predominate;

    (d)      the difficulty or unsettled nature of the applicable law;

    (e)      comity;

    (f)      the existence of the right to a jury trial; and

    (g)      prejudice to the involuntarily removed defendant.

See In re Lyondell Chem. Co., 402 B.R. 596, 613 (Bankr. S.D.N.Y. 2009); Blackacre Bridge

Capital LLC v. Korff (In re River Ctr. Holdings, LLC), 288 B.R. 59, 68 (Bankr. S.D.N.Y. 2003)

(citing Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407

(S.D.N.Y. 1991)).  Two other factors considered by bankruptcy courts also militate against

abstention:

    (a)      the substance rather than form of an asserted "core" proceeding; and

    (b)      the presence of a related proceeding commenced in a non-bankruptcy court.

See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.), 409 B.R. 720,

728-29 (Bankr. D. Del. 2009).  Not all factors need be considered, and the balance should be

weighted in favor of the bankruptcy court's exercise of jurisdiction.  In re Portrait Corp. of Am.,

Inc., 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009).

> **a.**    **The Motion Raises Issues Intimately Intertwined With, and Not Remote From, the Debtors' Bankruptcy Cases**

    41.     The subject matter of the Motion is intimately related to the central event of

these chapter 11 cases — the Sale — and thus the "degree of relatedness or remoteness of the

proceedings to the main bankruptcy case" weighs heavily in favor of the Court's exercise of

jurisdiction over the Motion.  Abstention is unwarranted when a dispute involves claims related

to sale proceedings central to a bankruptcy case.  Winstar Holdings, 2007 WL 4323003, at *6

(finding permissive abstention inappropriate where, among other reasons, the "sale that [was] the

subject of the proceedings was a central aspect and basic function of the bankruptcy

proceedings"). The Sale was the seminal event of these chapter 11 cases and "the only means available to maximize the value of [Old] GM's business." Gen. Motors Corp., 407 B.R. at 485. Furthermore, fixing and capping New GM's obligations to UAW retirees via the 2009 UAW Retiree Settlement Agreement was a critical and unwaivable condition of the Sale (see ¶¶ 1-2, 8-9 *supra*). In other words, the Sale was the centerpiece to the bankruptcy case, and the 2009 UAW Retiree Settlement Agreement was key to the Sale. Resolution of the Motion necessarily involves interpretation and enforcement of the Sale Order and the 2009 UAW Retiree Settlement Agreement.[34] Thus, the Motion (and, particularly, the Preclusion Dispute) and the Sale could not be more "related" to, and less "remote" from, these chapter 11 cases.

### b.   Abstention Will Not Promote the Efficient Administration of the Bankruptcy Estate

42.    This Court's exercise of jurisdiction will serve the efficient administration of the Debtors' estates where the possibility of a judgment adverse to New GM could result in additional significant work for the Court.

43.    As described above (see ¶ 13 *supra*), the consideration provided to the UAW in connection with the Sale generated intense interest among the Debtors' various constituencies during the Sale Hearing. Yet, despite this focus on New GM's obligations to make payments to the New VEBA, at no point during the three-day Sale Hearing did any party utter a word about a $450 million contingent Additional VEBA Payment.[35]  The UAW said nothing about it during

---

[34]     For example, the Sale Order directs New GM and the UAW to comply with the terms of the 2009 UAW Retiree Settlement Agreement. (Sale Order ¶ 19). Similarly, the Sale Order states that New GM "shall not [after the Implementation Date] have any [obligation to provide Retiree Medical Benefits to members of the Class and the Covered Group] as set forth in Section 5.D of the 2009 UAW Retiree Settlement Agreement." (Sale Order ¶ 20).

[35]     Old GM's chapter 11 filing imposed disclosure and notice requirements on Old GM and other parties interested in the case and it was incumbent upon Old GM and those parties to disclose the salient terms of the Sale. See generally 11 U.S.C. § 363(b)(1); In re Adoption of Amended Guidelines for the Conduct of Asset Sales, General Order M-383 (Bankr. S.D.N.Y. Nov. 18, 2009). Proper and complete disclosure by interested parties is recognized as a necessary prerequisite for the approval of sales effected pursuant to

the Sale Hearing, despite having filed multiple pleadings in connection with the Sale[36] and

having representatives present at all times at the Sale Hearing who often spoke or testified on the

record.[37]  The only evidence at the Sale Hearing regarding the Additional VEBA Payment

indicated that it was discussed during negotiations of the 2009 UAW Retiree Settlement

Agreement but New GM refused to consider it.  (See Sale Hearing Bondholders' Exhibit 3

---

section 363 of the Bankruptcy Code (any such sale, a "**Section 363 Sale**") and, indeed, of the entire chapter 11 process itself.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); see also In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Ca. 1991) ("Of course, the court and the creditors can only make an 'articulated business' judgment regarding the prudence of the sale where there has been a full disclosure of the details of the proposed sale by its proponent.").  "[Section 363 of the Bankruptcy Code] is intended to protect both debtors and creditors (as well as trustees) by subjecting a trustee's actions to complete disclosure and review by the creditors of the estate and by the bankruptcy court."  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).  Therefore, the proposed terms of a Section 363 Sale must be properly and fully disclosed to the court and creditors.  See, e.g., In re Med. Software Solutions, 286 B.R. 431, 439-40 (Bankr. D. Utah 2002) (requiring "full disclosure of the sale terms" as requirement for approval of sale ); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 177, 180 (D. Del. 1991) (approving sale where "full terms" are disclosed).

[36]  See Declaration of David Curson (Docket No. 2518); Response of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO to Objections to Debtors' Motion for an Order Authorizing the Sale of Substantially All of the Debtors' Assets and Other Relief (Docket No. 2630); and Supplemental Statement of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO in Support of Motion of the Debtors to Approve the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, Assumption and Assignment of Certain Executory Contracts; and Other Relief; and Response to Individual Retiree Statements Concerning Approval of UAW Retiree Settlement Agreement (Docket No. 2631).

[37]  At all three days of the Sale Hearing, Avram E. Luft and James Bromley of Cleary Gottlieb Steen & Hamilton LLP and Babette Ceccotti of Cohen, Weiss and Simon LLP appeared on behalf of the UAW. (See Sale Hearing Transcript, Jun. 30, 2009, at 9:2-10, 9:20-25; Sale Hearing Transcript, Jul. 1, 2009, at 8:10-18, 9:10-15; Sale Hearing Transcript, Jul. 2, 2009, at 9:2-10, 9:20-25).  David Curson, the Director of Special Projects and Economic Analysis for the UAW, testified and was cross-examined during the course of the Sale Hearing.  (See Sale Hearing Transcript, Jul. 1, 2009, at 200:18-23; 205:19-210:18; 210:21-23; 280:2-286:20; Sale Hearing Transcript, Jul. 2, 2009, at 142:1-145:5).  At no point did any of these individuals mention the Additional VEBA Payment.

Indeed, UAW members and retirees were provided a description of the terms of the 2009 UAW Retiree Settlement Agreement, which described in detail the amounts that would be contributed to the New VEBA but made no mention of the Additional VEBA Payment.  (See Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k) and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Scheduling Sale Approval Hearing (Docket No. 92), Exhibit E (attaching form of UAW-written letter describing terms of the 2009 UAW Retiree Settlement Agreement sent to UAW retirees by the Debtors along with notice of the Sale); Declaration of David Curson (Docket No. 2518), Exhibits A and B (certifying that UAW materials describing 2009 UAW Retiree Settlement Agreement were sent to UAW active members and local unions)).

(PowerPoint presentation entitled "GM/UAW/UST VEBA Discussions" dated May 18, 2009, at 4); noting that the $450 million "Delphi Note" had been excluded from potential amounts to be contributed to the New VEBA).[38]

44.    In another recent expedited sale pursuant to section 363 of the Bankruptcy Code, multiple parties have questioned the consideration underlying the sale nearly a year after the transaction closed when previously undisclosed material terms of the transaction came to light. See In re Lehman Brothers Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Sep. 15, 2009) (Rule 60(b) motions and related claims in adversary complaints filed by debtor and other interested parties (including the creditors' committee) seeking, among other relief, modifications to the court's sale order and, in essence, enforcement of the sale transaction on the terms disclosed at sale hearing and return to estate of billions of dollars in undisclosed assets and value transferred to purchaser without consideration; in that case, the merits of the several Rule 60 motions and the claims of the various parties were tried in a single, consolidated proceeding.). So, too, in these cases, the possibility of New GM's having to pay an additional, and previously undisclosed, $450 million obligation to the UAW may prompt parties in interest, including any of the more than 850 objectors to the Sale, to file pleadings with the Court in respect of this matter that would require the Court's attention.  The efficient administration of the Debtors' estates would be ill served by the time and resources the Court would need to devote to such

---

[38]    Given the value of other monetary obligations put into issue at the Sale Hearing, e.g.:

    (a)    non-UAW retirees who wanted New GM to assume an additional $300 million in liabilities related to their claims (Sale Hearing Transcript, Jul. 2, 2009, at 154:6-17);

    (b)    the purported $470 million value of the settlement offer to IUE-CWA retirees (Sale Hearing Transcript, Jul. 1, 2009, at 346:7-12); and

    (c)    myriad other claims valued at far less than $450 million (see Sale Hearing Transcript, Jun. 30, 2009, at 179:6-9 ($5 million dollar claim); 213:23-25 ($67,000 claim),

the failure of any party to raise a potential half-billion-dollar obligation of New GM to UAW retirees would seem to be a material omission if such contingent obligation did, in fact, exist.

matters if this Court were not to address them comprehensively once in a decision on the merits. Accordingly, considerations of the efficient administration of the Debtors' estates weigh against abstention.

### c.    Issues of State Law Do Not Predominate in the Dispute

45.    The interpretation of a bankruptcy court order, even if it may implicate state law concepts of contract interpretation, is a question of federal law and does not support abstention. See Canzano v. Ragosa (In re Colarusso), 382 F.3d 51, 57 (1st Cir. 2004) ("'The scope of the bankruptcy court's sale order under the Code is an issue of federal law' that weighs against abstention.") (quoting New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 69 (1st Cir. 2002)). Moreover, resolution of the MOU Dispute (which the UAW characterizes as a breach of contract action under 29 U.S.C. § 185 governed by federal common law) may require no reference to state law whatsoever, rendering this factor immaterial. Therefore, issues of state law do not predominate, and abstention is not appropriate.

### d.    The Applicable Law At Issue is Neither Difficult Nor Unsettled

46.    The applicable law (i.e., basic principles of contract interpretation) is neither difficult nor unsettled, and no party suggests otherwise. The Court has previously found that issues of contract interpretation are not novel or complex. See, e.g., In re Adelphia Commc'ns Corp., 285 B.R. at 146 ("On issues of contract law (in contrast [to] … other specialized areas of the law not regularly addressed in the federal courts), there is no material difference, in this Court's view, in the ability of the state and federal courts to decide those issues."). Resolution of the Motion will largely depend on the application and interpretation of the terms of the Sale Order and the 2009 UAW Retiree Settlement Agreement or, only if the Court deems it necessary, the 2007 Delphi Restructuring MOU. While the parties disagree as to the outcome as applied to

these circumstances, the applicable law governing the matter is not highly specialized or

unsettled.  Thus, this factor does not support abstention.

### e.    Abstention is Unwarranted Where The Court's Exercise of Jurisdiction Over the Motion Does Not Implicate Questions of Comity

47.    Considerations of comity with the Michigan District Court do not weigh in favor

of abstention.  Bankruptcy courts abstain in favor of other federal courts only "in the interests of

justice."  See Chamberlain Group, Inc. v. Lear Corp. (In re Lear Corp.), Adv. No. 09-01441,

2009 WL 3191369, at *3 (Bankr. S.D.N.Y. Sep. 24, 2009) (citing Coker v. Pan Am. World

Airways, Inc. (In re Pan Am. Corp.), 950 F.2d 839, 845-46 (2d Cir. 1991)); Rally Decision,

at 48:6-8 (assuming that bankruptcy courts may abstain in favor of federal courts "when the

circumstances so warrant").  No party has identified any "interest of justice" that would require

this Court — which, unlike the Michigan District Court, has vast institutional knowledge of the

Sale and the 2009 UAW Retiree Settlement Agreement and its importance to the overall

transaction — to refrain from adjudicating the Motion.

### f.    The UAW's Assertion of the Right to a Jury Trial Before the Michigan District Court Does Not Compel Abstention

48.    The UAW has waived its right to a jury trial with respect to the Preclusion

Dispute, so a right to a jury trial does not weigh in favor of abstention.  See River Ctr. Holdings,

288 B.R. at 71 (finding that the existence of a right to a jury trial is irrelevant to an equitable

remand analysis where both parties had waived their right to such a trial).  A party waives any

right to a jury trial when it consents, explicitly or tacitly, to a bankruptcy court's exclusive

jurisdiction over the dispute.  See Ries v. Paige (In re Paige), No. 07-2015, 2007 WL 4530807,

at *7 (Bankr. N.D. Tex. Dec. 19, 2007) (holding that settlement agreement stipulating to

bankruptcy court's exclusive jurisdiction was the "most important" factor in finding that parties

waived their rights to jury trial); Official Plan Comm., ASTF, Inc. v. Starshak & Assocs., Inc. (In

re Balsam Corp.), 185 B.R. 54, 58 (E.D. Mo. 1995) (holding that party waived right to jury trial

by agreeing to bankruptcy court's exclusive jurisdiction in sale agreement).

49.     The UAW has consented to the Court's exclusive jurisdiction over any

"dispute[ ] arising out of or relating to the enforcement, implementation, application or

interpretation" of the 2009 UAW Retiree Settlement Agreement.  (2009 UAW Retiree Settlement

Agreement § 26.B).[39]  Likewise, the UAW made no objection to the Court's retention of

exclusive jurisdiction "to enforce and implement the terms and provisions of th[e Sale] Order,

the MPA, all amendments thereto, any waivers and consents thereunder, and each of the

agreements executed in connection therewith."  (Sale Order ¶ 71).  Thus, the UAW has waived

its right to a jury trial, and its request for a jury trial with respect to the Preclusion Dispute cannot

support abstention.

50.     Moreover, with respect to the MOU Dispute, the existence of any right to jury

trial does not support abstention where the straightforward issue of contract interpretation is

unlikely to reach a jury.  The initial interpretation of a contract "is a matter of law for the court to

decide."  K. Bell & Assocs., Inc., v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)

(quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)).  When the

terms of a contract are unambiguous, contract interpretation is a matter of law to be decided by

the judge and not by a jury.  Bolt Elec., Inc. v. City of New York, 223 F.3d 146, 150

(2d Cir. 2000) (citations omitted); McClelland v. Grubb & Ellis Consulting Servs. Co. (In re

---

[39]     Forum selection clauses are entitled to presumptive validity.  See S.K.I. Beer Corp. v. Baltika Brewery,
612 F.3d 705, 708 (2d Cir. 2010) (holding that forum selection clause is presumptively enforceable when it
is "communicated to the resisting party, has mandatory force and covers the claims and parties involved in
the dispute").  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on
the designated forum or incorporates obligatory venue language."  Phillips v. Audio Active Ltd.,
494 F.3d 378, 386 (2d Cir. 2007).

McClelland), 418 B.R. 61, 70 (Bankr. S.D.N.Y. 2009).  For this additional reason, the UAW's

request for a jury trial does not compel abstention.

> ### g.   Abstention is Unwarranted Where the
> ### Exercise of Jurisdiction Would Not Prejudice
> ### Any Party, But Abstention Would Prejudice New GM

51.     To the extent that the factor of "prejudice to involuntarily removed defendants"

is applicable in these circumstances, it does not weigh in favor of abstention.  The facts

underlying the Motion do not involve any "involuntarily removed defendants."  The sole

defendant named in the VEBA Complaint is New GM, and New GM believes that the issues

underlying the VEBA Complaint and the Motion should be decided by this Court.  See In re

Adelphia Commc'ns Corp., 285 B.R. at 147 (observing that this factor was inapplicable "and

most assuredly does not favor remand" where the defendants in the litigation at issue all

preferred the bankruptcy court).

52.     Moreover, there is no prejudice to the UAW from this Court's exercise of

jurisdiction where:

> (a)     the Preclusion Dispute (and, thus, the Motion) may be decided by reference to the
> language of the Sale Order and the 2009 UAW Retiree Settlement Agreement;

> (b)     the UAW is a signatory to the 2009 UAW Retiree Settlement Agreement, which
> provides that the Court shall have exclusive jurisdiction over all disputes
> thereunder; and

> (c)     the UAW was an important supporter of the Sale, participated in the Sale Hearing
> and did not object to the provision in the Sale Order reserving exclusive
> jurisdiction over the Sale and all related agreements in the Court.

Indeed, it is New GM — which bargained for, and has relied on, the Court's exclusive

jurisdiction over all disputes arising in connection with the Sale and the 2009 UAW Retiree

Settlement Agreement — that would be prejudiced if this Court does not exercise its exclusive

jurisdiction.

### h.    The Substance of the Motion Demonstrates that It is a "Core" Proceeding Over Which the Court Should Exercise Jurisdiction

53.      Both the Preclusion Dispute and the MOU Dispute "arise in" the Debtors'

chapter 11 cases and are "core" proceedings.  See Ames Dep't Stores, 317 B.R. at 269 (holding

that "[e]fforts to implement, gain the fruits of, and to enforce orders of the bankruptcy court" are

proceedings that "arise in" a bankruptcy case); Rally Decision, 44:18-46:1 (holding that a matter

involving the resolution of a dispute over which the Court retained exclusive jurisdiction

pursuant to the Sale Order was a proceeding "arising in" a case under title 11); Lothian Cassidy,

428 B.R. at 560 (finding that the court had "arising in" jurisdiction over the plaintiffs' claims

where the "litigation of some, if not all, of plaintiffs' [state law] claims [would] require gateway

interpretation of the bankruptcy court's prior orders … before their action [could] proceed.").

### i.    The Presence of a Related Proceeding in a Non-Bankruptcy Court Does Not Compel Abstention

54.      Where parties have agreed to a bankruptcy court's jurisdiction, a party's

disregard of that agreement by commencing a case in a non-bankruptcy forum does not support

abstention.  Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.),

407 B.R. 593, 600-01 (Bankr. D. Del. 2009) (giving little weight in abstention analysis to related

proceedings where parties agreed to the bankruptcy court's jurisdiction); LaRoche Indus., Inc. v.

Orica Nitrogen LLC (In re LaRoche Indus., Inc.), 312 B.R. 249, 254 (Bankr. D. Del. 2004)

(giving little weight in abstention analysis to related proceeding where parties agreed in asset

purchase agreement to bankruptcy court's jurisdiction; finding that a party should not benefit

from ignoring its agreement and filing a parallel action).  Here, the UAW:

(a)    agreed to the exclusive jurisdiction of the Court in the 2009 UAW Retiree Settlement Agreement;

(b)    did not object to the Court's retention of such exclusive jurisdiction in the Sale Order; and

(c)      agreed that it would not seek to make New GM pay any amount to the New
VEBA other than those identified in the 2009 UAW Retiree Settlement
Agreement (2009 UAW Retiree Settlement Agreement § 14).

The UAW should not profit from its filing of the VEBA Complaint in the Michigan District

Court, an action taken in derogation of its commitments under the 2009 UAW Retiree Settlement

Agreement, by having such action weigh in favor of the Court's abstention.

55.      Moreover, when another court has reserved *exclusive* jurisdiction over a matter,

other courts lack subject matter jurisdiction.  See Maselli v. Portfolio Techs., Inc., No. 06-4716,

2007 U.S. Dist. LEXIS 17226, at *8-14 (D.N.J. Mar. 12, 2007) (district court dismissed action

when the bankruptcy court retained exclusive jurisdiction); Haro v. Household Int'l,

No. DKC 2003-3558, 2004 U.S. Dist. LEXIS 25860, at *2-3 (D. Md. Dec. 21, 2004) (district

court dismissed action when other federal court had retained exclusive jurisdiction in a final

order); Magnolia v. Conn. Gen. Life Ins. Co., 157 F. Supp. 2d 583, 586-87 (D. Md. 2001)

(same).  Where parties dispute whether a bankruptcy court order permits an action to be filed in

another court, the bankruptcy court that issued that order should resolve the dispute.  See Long

Term Care Mgmt., Inc. v. VI/XII Collateral Trust (In re Nat'l Century Fin. Enters., Inc.),

No. 05-8048, 2006 Bankr. LEXIS 328, at *13-14 (B.A.P. 6th Cir. Mar. 14, 2006) (determining

that bankruptcy court was the proper court to interpret and enforce its confirmation order and

enforce injunction against competing state court action).  Thus, it would be incongruous to find

that the UAW's filing of its complaint in a court lacking subject matter jurisdiction owing to this

Court's reservation of exclusive jurisdiction should weigh in favor of abstention.  Accordingly,

the existence of the proceeding in the Michigan District Court does not compel abstention with

respect to the Motion.

56.      Finally, the "first-filed" rule cited by the UAW (UAW Brief ¶ 57) has no

application because New GM and the UAW contractually agreed to a forum selection clause

granting the Court exclusive jurisdiction over disputes pertaining to the 2009 UAW Retiree

Settlement Agreement.  See Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366, 369-70

(S.D.N.Y. 2009) (refusing to apply the "first-filed" rule where parties contractually agreed to a

forum selection clause and noting that the "first-filed" rule "is not to be applied in a 'rigid' or

'mechanical' way … and is quite commonly overcome where circumstances warrant"); note 39,

*supra*, and accompanying text.  It would be inappropriate to reward the UAW's disregard of the

dispute resolution and exclusive jurisdiction provisions of the 2009 UAW Retiree Settlement

Agreement by interpreting the filing of the VEBA Complaint in the Michigan District Court as a

factor favoring abstention where jurisdiction previously has been established by agreement.

## Conclusion

57.     The Court has exclusive jurisdiction to enforce and interpret the Sale Order and

the 2009 UAW Retiree Settlement Agreement — exclusive jurisdiction to which the UAW

agreed.  Both the Sale Order and the 2009 UAW Retiree Settlement Agreement were essential

elements of the Sale and, consequently, the success of the Debtors' bankruptcy cases.  Whether

those documents preclude the UAW from seeking the Additional VEBA Payment is a matter

intimately intertwined with these chapter 11 cases that requires interpretation and enforcement of

the Court's own order without resort to state law.  Abstention under these circumstances would

be inappropriate.

58.     Furthermore, if the Court ultimately determines that the Sale Order and the

2009 UAW Retiree Settlement Agreement are not dispositive of the Motion, the Court

nevertheless still would have jurisdiction over the MOU Dispute.  The MOU Dispute "arises in"

the Debtors' bankruptcy cases because it requires a threshold interpretation of the Sale Order and

the 2009 UAW Retiree Settlement Agreement.  The MOU Dispute is "related to" the Debtors'

bankruptcy cases because its resolution can have conceivable effects upon the Debtors'

bankruptcy estates.  Given the potential impact of the MOU Dispute on the Debtors' bankruptcy

cases, the Court should not abstain from resolving the MOU Dispute.

Dated: February 7, 2011
      New York, New York                  Respectfully submitted,


  /s/  Lisa G. Laukitis
Lisa G. Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Andrew M. Kramer
JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Heather Lennox (admitted *pro hac vice*)
Robert S. Walker (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR GENERAL
MOTORS LLC

**<u>EXHIBIT A</u>**

**[2007 MOU Order]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
      In re                          :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                Debtors.          :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C §§ 363, 1113, AND 1114
AND FED. R. BANKR. P. 6004 AND 9019 APPROVING MEMORANDUM OF
UNDERSTANDING AMONG UAW, DELPHI, AND GENERAL MOTORS CORPORATION
INCLUDING MODIFICATION OF UAW COLLECTIVE BARGAINING AGREEMENTS
<u>AND RETIREE WELFARE BENEFITS FOR CERTAIN UAW-REPRESENTED RETIREES</u>

("UAW 1113/1114 SETTLEMENT APPROVAL ORDER")

Upon the motion ("UAW 1113/1114 Settlement Approval Motion" or the

"Motion"), dated June 29, 2007, of Delphi Corporation ("Delphi") and certain of its subsidiaries

and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for an order under 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and

Fed. R. Bankr. P. 6004 and 9019 approving (i) a memorandum of understanding regarding

Delphi's restructuring entered into among the United Automobile, Aerospace and Agricultural

Implement Workers of America (the "UAW"), Delphi, and General Motors Corporation ("GM"),

dated June 22, 2007 (with the attachments thereto, the "UAW Settlement Agreement" or the

"Memorandum of Understanding"), that (a) modifies, extends, or terminates provisions of the

existing collective bargaining agreements among Delphi, the UAW, and its various locals (the

"UAW CBAs"), and (b) provides that Delphi and GM will undertake certain financial obligations

to Delphi's UAW-represented employees and retirees to facilitate these modifications, (ii)

withdrawal without prejudice of the Debtors' Motion For Order Under 11 U.S.C. § 1113(c)

Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g)

Authorizing  Modification Of Retiree Welfare Benefits, dated March 31, 2006 (the "1113/1114

Motion") solely as it pertains to the UAW and approving the parties' settlement of the 1113/1114

Motion solely as it pertains to the UAW, and (iii) modification of retiree welfare benefits for

certain UAW-represented retirees of the Debtors, all as more fully set forth in the UAW

1113/1114 Settlement Approval Motion; and the Court having been advised by counsel to the

UAW that the UAW Settlement Agreement was ratified by the UAW membership as of June 28,

2007, such that the only remaining condition to the effectiveness of the UAW Settlement

Agreement pursuant to Section K.1 thereof is this Court's entry of an approval order satisfactory

in form and substance to the UAW, GM, and Delphi; and this Court having been advised by

counsel to the UAW, GM, and Delphi that the form and substance of this Order is satisfactory to

each of the UAW, GM, and Delphi as required by Section K.1 of the UAW Settlement

Agreement; and this Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

     ORDERED, ADJUDGED, AND DECREED THAT:

     1.     The Motion is GRANTED.

     2.     The Debtors are hereby authorized to enter into the UAW Settlement

Agreement, a copy of which is attached hereto as Exhibit 1, and to implement the terms of such

UAW Settlement Agreement.

2

3.      Each of the signatories to the UAW Settlement Agreement (each such

party, a "Signatory," and collectively, the "Signatories") is directed to take all actions necessary

or appropriate to effectuate the terms of this order and the terms of the UAW Settlement

Agreement, including, without limitation, any and all actions necessary or appropriate to such

Signatory's implementation of and performance under the UAW Settlement Agreement.

4.      The UAW Settlement Agreement is binding on the Debtors, GM, and the

UAW subject to its terms and constitutes a valid and binding amendment to the UAW CBAs

with authorized representatives of all individuals who were or are in a bargaining unit

represented by the UAW, as permitted by section 1113 of the Bankruptcy Code and the UAW

CBAs as amended, or otherwise, and the UAW CBAs, in accordance with the UAW Settlement

Agreement, are binding on the Debtors and the UAW.

5.      The UAW Settlement Agreement constitutes a valid and binding

amendment to existing retiree health and welfare benefits, as permitted by section 1114 of the

Bankruptcy Code, or otherwise.

6.      Notice of the UAW 1113/1114 Settlement Approval Motion was properly

and timely served in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C.

§§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing

Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures,

entered on October 26, 2006 (Docket No. 5418), the Supplemental Order Under 11 U.S.C.

Sections 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing

Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures,

entered on March 17, 2006 (Docket No. 2883), and by service upon (a) the UAW at 8000 East

Jefferson, Detroit, Michigan 48214, (b) counsel to the UAW, Cohen, Weiss, and Simon LLP at

3

330 West 42nd Street, 25th Floor, New York, N.Y. 10036-6976, and (c) the active Delphi hourly

employees and hourly retirees who are represented by the UAW at their individual addresses,

pursuant to an informational form of notice, a copy of which was attached to the UAW

1113/1114 Settlement Approval Motion as Exhibit 1.

       7.     The Debtors are authorized to withdraw, without prejudice, their

1113/1114 Motion solely as it pertains to the UAW.  The 1113/1114 Motion is settled solely as it

pertains to the UAW.

       8.     As provided for in the Motion and with the consent of the UAW and

Delphi, Sections H.3 and J.3 of the UAW Settlement Agreement are clarified to provide for the

continuance of CHR accruals through October 1, 2007 and to provide that the UAW will receive

on the Effective Date an allowed prepetition general unsecured claim against Delphi in the

amount of $140 million consisting of UAW-GM Center for Human Resources ("CHR")  existing

accruals of $134 million and UAW-Delphi Legal Services Plan accruals of $6 million (such

allowed claim amount to be adjusted by the difference between accruals through October 1, 2007

and expenditures until the effective date of the Debtors' plan of reorganization (the "Delphi

Reorganization Plan")) in complete settlement of the UAW and the CHR claims asserted as to

CHR Joint Funds[1] and the UAW-Delphi Legal Services Plan accruals and expenses.  The

allowed claim provided for in this paragraph shall be paid pursuant to the plan of reorganization

following substantial consummation of a plan of reorganization.  The amount of $30 million will

be directed to the CHR and the balance will be paid directly to the DC VEBA established

pursuant to the settlement agreement approved by the court in the case of International Union,

UAW, et al. v. General Motors Corp., Civil Action No. 05-73991.  Until the effective date of a

---

[1]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to
them in the Memorandum of Understanding.

Delphi Reorganization Plan, Delphi shall continue to make CHR and Legal Service Plan

payments consistent with past practices in the ordinary course of business.

         9.     As a condition precedent to the effectiveness of certain obligations of the

parties pursuant to Section K.2 of the UAW Settlement Agreement and as provided in Section

K.3 of the UAW Settlement Agreement, any Delphi Reorganization Plan that is consistent with

the UAW Settlement Agreement and any confirmation order entered into with respect to such

plan shall include the following provisions:

     (a)    On the effective date of the Delphi Reorganization Plan, the UAW, all employees and former employees of Delphi represented or formerly represented by the UAW, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, shall waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries, or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the UAW CBAs and the collective bargaining agreement between GM and the UAW related to such employees and the UAW-GM-Delphi Memorandum of Understanding Benefit Plan Treatment related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of the UAW Settlement Agreement are not waived; and provided further that claims for workers' compensation benefits against Delphi, its subsidiaries, or affiliates, are not waived).

     (b)    A plan exculpation and release provision (which provision shall be at least as comprehensive as the plan exculpation and release provision under the Delphi Reorganization Plan) for the UAW released parties (which shall include the UAW and each of their current or former members, officers, committee members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives) with respect to any liability such person or entity may have in connection with or

related to the Delphi bankruptcy cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Delphi Reorganization Plan, the disclosure statement concerning the plan, the UAW Settlement Agreement, or the Agreements on Attachment E thereto, or any contract, employee benefit plan, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with either the Delphi Reorganization Plan or any agreement between the UAW or Delphi, or any other act taken or omitted to be taken consistent with the UAW Settlement Agreement in connection with the Delphi bankruptcy.

(c)     The UAW Settlement Agreement and the agreements referenced in Attachment E thereof and listed on <u>Exhibit 2</u> attached hereto shall be assumed under 11 U.S.C. § 365.

10.     Nothing contained in the UAW Settlement Agreement shall constitute an assumption of any agreement described therein, including, without limitation, any UAW CBA (except as provided for in Section K.3 of the UAW Settlement Agreement) or any commercial agreement between GM and Delphi, nor shall anything therein be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.  The UAW Settlement Agreement is without prejudice to any party-in-interest (including the parties to the UAW Settlement Agreement and the Debtors' statutory committees) in all other aspects of Delphi's chapter 11 cases, and each party to the UAW Settlement Agreement shall reserve all rights not expressly waived therein.  Further, nothing in the Motion, the UAW Settlement Agreement, this Court's approval of such agreement, the performance of any obligation thereunder, or any other document shall prejudice any right or remedy of any Debtor against any other Debtor with respect to the allocation of Delphi's obligations under the UAW Settlement Agreement or claims asserted against, or payments by, Delphi thereunder, all of which rights are expressly preserved.

6

11.     In furtherance of the UAW Settlement Agreement, as soon as reasonably practicable after the Effective Date, Delphi shall pay approximately (but in no event more than) $993,000 in cash severance and vacation payments to former UAW-represented hourly employees of Manufacturers Products Co. ("MPC"), a former distressed supplier which provided parts to Delphi pursuant to an accommodation agreement.  These MPC-related payments are to be in full satisfaction of all claims against the Debtors arising from or related to MPC, and the Debtors and their estates shall be released from any liability from MPC and its former UAW-represented employees with respect thereto.  In order to receive payment from Delphi pursuant to this paragraph, any payment recipient shall execute a complete release and discharge in favor of the Debtors; accordingly all claims filed in the Debtors' chapter 11 cases arising from or relating to the subject matter of severance and/or vacation claims by MPC employees or former employees are hereby expunged and released, including claim number 13270.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and performance of this order and the UAW Settlement Agreement, and over each of the Signatories in connection therewith, through the effective date of a plan of reorganization proposed by the Debtors and confirmed by this Court (and thereafter to the extent provided for in such reorganization plan); provided, however, that the Court's jurisdiction shall not extend to any bilateral agreements of the UAW and GM.

13.     Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, (a) this order shall take effect immediately upon its entry, (b) upon entry of this order, the Debtors are authorized to take any and all necessary actions to implement the terms of the UAW Settlement Agreement, including executing any amendments to existing collective bargaining agreements consistent in all material respects with

7

the UAW Settlement Agreement, and (c) the UAW Settlement Agreement shall become effective

upon entry of this order and, to the extent required, satisfaction of the conditions set forth in the

UAW Settlement Agreement; provided, however, that MPC's release of the parties as set forth in

paragraph 11 hereof shall be effective 10 days after service of this order upon MPC at its last

known address unless MPC files an objection to such release within such 10-day period.

    14.  The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
   July 19, 2007

           _____/s/ Robert D. Drain _____
           UNITED STATES BANKRUPTCY JUDGE