Hearing date and time: March 3, 2011 at 9:45 a.m.

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
Richard S. Toder
Andrew D. Gottfried
Annie C. Wells

*Attorneys for JPMorgan Chase Bank, N.A., as Agent*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :
                                                               :  Chapter 11
MOTORS LIQUIDATION COMPANY, *et al.*                           :
    f/k/a General Motors Corp., *et al.*   :  Case No. 09-50026 (REG)
                                                               :
        Debtors.        :  (Jointly Administered)
---------------------------------------------------------------x

OBJECTION OF JPMORGAN CHASE BANK, N.A., AS AGENT, TO
CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

JPMorgan Chase Bank, N.A. ("**JPMC**" or "**Term Loan Agent**") through its undersigned attorneys, hereby submits this Objection to Confirmation of the Debtors' Amended Joint Chapter 11 Plan (the "**Plan**"),[1] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Plan cannot be confirmed for the following reasons:

    - The Plan fails to provide for the payment in full of the Debtors' obligation to pay the administrative litigation expenses of the Term Loan Agent. Indeed, the Plan fails to provide *any* treatment of JPMC's administrative litigation expenses.

    - The Plan violates the terms of this Court's Final DIP Order (defined below) by attempting to (i) discharge the Debtors' obligation to pay the administrative litigation expenses of the Term Loan Agent, and (ii) improperly, indirectly obtain re-payment of the Term Loan before any adjudication of the continuing adversary proceeding relating to the Term

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

> Loan (defined below) through an offset provision in Section 10.5 of the Plan.
- The offset provision in Section 10.5 of the Plan violates well-established legal principles in the analogous Section 502(d) context.

## BACKGROUND

### *The Final DIP Order*

2. JPMC is the Administrative Agent under the Term Loan Agreement, dated as of November 29, 2006 (the "**Term Loan**"), among General Motors Corporation ("**GM**"), Saturn Corporation (and together with GM, the "**Debtors**"), JPMC and the lenders (the "**Term Loan Lenders**") party thereto from time to time.

3. On June 25, 2009, the Bankruptcy Court entered the *Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363 and 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties* [Dkt. No. 2529] (the "**Final DIP Order**") which, *inter alia*, authorized the Debtors to enter into the Secured Superpriority Debtor-in-Possession Credit Agreement (the "**DIP Loan**"), by and among GM, as borrower, and the United States Department of the Treasury and Export Development Canada, as Debtor-in-Possession lenders (the "DIP Lenders").

4. In addition, the Final DIP Order provided (i) that a portion of the DIP Loan would be used to repay the Term Loan in full, and (ii) for a release of the Term Loan Lenders from all claims, except that the Official Committee of Unsecured Creditors (the "**Creditors Committee**") reserved the right to investigate and challenge the perfection of the first priority security interest held by the Term Loan Lenders.

2

5.      On July 31, 2009, the Creditors Committee commenced an avoidance action against the Term Loan Lenders (the "**Term Loan Avoidance Action**"), seeking to avoid as unperfected the security interest asserted by the Term Loan Lenders, and to recover more than $1.5 billion in repayments made to the Term Loan Lenders from the DIP Loan. The "Term Loan Repayment") Thereafter, JPMC moved for summary judgment and the Creditors Committee moved for partial summary judgment in the Term Loan Avoidance Action. Following briefing, and oral argument by the parties at a hearing on December 3, 2010, the Bankruptcy Court reserved decision.

6.      Pursuant to the Final DIP Order *inter alia*, the Debtors are obligated to pay the costs and expenses (including legal fees) of the Term Loan Agent in connection with the Term Loan Avoidance Action. Specifically, the Final DIP Order provides, in part, at Paragraph 19(c):

> "In the event that the Committee investigates any liens of any of the Prepetition Senior Facilities Secured Parties… then, notwithstanding any other provision of this Final Order, (i) the Debtors shall pay … the reasonable fees, costs and charges incurred by the agents for the Prepetition Senior Facilities… in responding to such investigation or in defending any challenge to such liens or to their ability to retain any Payment, and (ii) the super-priority adequate protection claims granted pursuant to the … Adequate Protection Orders shall remain in effect with respect to such expense reimbursement obligations…."

7.      As of the date hereof, the Term Loan Avoidance Action remains unresolved and it is anticipated that irrespective of the Court's decision on the pending motions, the litigation will continue. Thus, the amount of JPMC's administrative claim for the reasonable fees, costs and charges, which expenses the Debtors are obligated to pay and have been paying monthly in accordance with the terms of the Final DIP Order, in defending the Term Loan Avoidance Action (collectively, the "**Administrative Litigation Expenses**"), continues to accrue and is unliquidated at present.

8.  On January 25, 2011, JPMC timely filed proofs of administrative claim against each of the Debtors in an unliquidated amount in respect of such Administrative Litigation Expenses.

**ARGUMENT**

I.  *The Plan Cannot be Confirmed Because it Fails to Provide for the Payment of JPMC's Administrative Litigation Expenses*

9.  As discussed above, the Debtors have a continuing obligation under the Final DIP Order to reimburse JPMC for its Administrative Litigation Expenses. Yet the Plan is altogether lacking in any discussion of such obligation and how the Debtors intend to pay these Administrative Litigation Expenses on an ongoing basis. While, under the Plan, each holder of an Allowed Administrative Expense will receive full payment in Cash on the Effective Date, or as soon thereafter as is practicable,[2] it is, at best, unclear whether under the Plan, JMPC's Administrative Litigation Expense is an Administrative Expense.

10. Even assuming that JPMC's Administrative Litigation Expenses falls within the class of Administrative Expenses under the Plan, the proposed treatment to pay in full in Cash on the Effective Date renders JPMC's administrative claim impaired because the Administrative Litigation Expenses will continue to be incurred well after the Effective Date (for so long as the Term Loan Avoidance Action continues). However, there are no provisions in the Plan for any ongoing distributions and funding sufficient to satisfy the Debtors' reimbursement obligation for the continuing Administrative Litigation Expenses.[3]

---

[2] *See* Plan ¶ 2.1.

[3] The lack of any reserves or funding for JPMC's Administrative Litigation Expenses is not an accidental oversight. The Debtors certainly knew to provide for the fees and costs of the Avoidance Action Trust Administrator (including *its* professionals) to be paid out of Avoidance Action Trust Assets. *See* Plan ¶ 6.5. But no provision exists for the payment of the Term Loan Agent's Administrative Litigation Expenses (either out of the Avoidance Action Trust Assets, the GUC Trust, or any other assets of the Debtors).

4

11. The Plan's silence on this issue is not just an omission; it renders the Plan non-confirmable. Under Section 1123(a)(3) of the Bankruptcy Code, a plan must specify the treatment of any class of claims or interests that is impaired under the Plan. *See In re Yates Dev., Inc.*, 258 B.R. 36, 41-42 (Bankr. M.D. Fla. 2000) (holding that debtor's non-compliance with Section 1123(a) was a ground for denial of plan confirmation); *In re Keaton*, 88 B.R. 154, 156 (Bankr. S.D. Ohio 1988) (finding that debtor's failure to provide any classification or treatment for bank's claim means that section 1123(a)(1) has not been satisfied); *In re N.S. Garrott & Sons*, 48 B.R. 13, 16 (Bankr. E.D. Ark. 1984) (denying plan confirmation for, *inter alia*, failing to provide for a class of interest holders and its treatment as required under Section 1123(a)).

12. Additionally, the failure to provide for the payment in full of the Debtors' administrative obligations, including the obligation to reimburse JPMC's Administrative Litigation Expenses, precludes confirmation of the Plan. *See* 11 U.S.C. § 1129(a)(9)(A); *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (noting that 11 U.S.C. § 1129(a)(9)(A) "requires that on the effective date of a plan, all admin expenses must be paid in full"); *In re Sheehan Memorial Hosp.*, 301 B.R. 777, 780 (Bankr. W.D.N.Y. 2003) ("To obtain plan confirmation, a debtor must commit to pay all such administrative claims on the effective date of the plan.").

13. In sum, the Plan cannot be confirmed because it violates sections 1123(a) and 1129(a)(9)(A) of the Bankruptcy Code by failing to provide for the full repayment of JPMC's Administrative Litigation Expenses.

**II.** *Section 10.5 of the Plan Violates the Terms of the Court's Final DIP Order*

14. Section 10.5 of the Plan states:

> 10.5 <u>Term Loan Avoidance Action; Offsets</u>. If the Term Loan Avoidance Action is still pending on the Avoidance Action Trust Transfer Date, the Avoidance Action Trust Administrator may pursue, abandon, settle, or release

5

the Term Loan Avoidance Action without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Debtors, the GUC Trust Administrator, or the Avoidance Action Trust Administrator, as applicable, may, in their sole discretion, offset any claim held against a person against any payment due such person under the Plan; *provided, however*, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

15.   The offset language in Section 10.5 enables the Debtors, the GUC Trust Administrator or the Avoidance Action Trust Administrator to offset claims asserted against the Term Loan Lenders in the Term Loan Avoidance Action against (i) payments due to the Term Loan Agent on account of the Administrative Litigation Expenses, and (ii) any other payments due to any Term Loan Lender,[4] in violation of this Court's Final DIP Order. This order specifically (a) requires the Debtors to pay JPMC's Administrative Litigation Expenses and (b) approved the *Debtors'* (and any successor thereto) release in full all claims and liabilities (including potential demands) against the Term Loan Lenders, except that such release "shall not apply *to the Committee* with respect *only* to the perfection" of the Term Loan Lenders' first priority liens (emphasis added). *See* Final DIP Order ¶ 19(d). There is nothing in the Final DIP Order that carves out or otherwise allows any offset by the Debtors, GUC Trust Administrator or Avoidance Action Trust Administrator of the claims in the Term Loan Avoidance Action against the Administrative Litigation Expenses or any other claim held by any Term Loan Lender in these Chapter 11 cases. Indeed, any such interpretation would be entirely inconsistent with the Final DIP Order.

16.   The Debtors' attempt to circumvent the Final DIP Order and exercise "self-help" recoveries of the Administrative Litigation Expense and Term Loan Repayment cannot be allowed. First, Sections 1129(a)(1) and (a)(2) of the Bankruptcy Code provide that a plan shall

---

[4] Since the Term Loan was repaid in full under the terms of the Final DIP Order, any payment that may be due (other than the Administrative Litigation Expenses) to any Term Loan Lender or JPMC would be wholly unrelated to the Term Loan.

6

be confirmed only if the plan and the plan proponent complies with the applicable provisions of the Bankruptcy Code. The Final DIP Order was issued pursuant to and embodies those applicable provisions of the Bankruptcy Code governing post-petition financing, use of cash collateral, grant of liens and adequate protection. Failing to comply with the Final DIP Order is a *de facto* violation of Sections 361, 362, 363, 364 and 507 of the Bankruptcy Code.

17. Second, the Final DIP Order is a final, non-appealable order of this Court. There is nothing in that order which permits what appears to be an effort by the Debtors in the Plan to circumvent its provisions. Rather, the Final DIP Order is quite clear that the reimbursement of expenses continues so long as the Term Loan Avoidance Action continues. The Final DIP Order is binding on the Debtors, and cannot be elided or abrogated by them.

18. Lastly, as this Court will recall, the use of cash collateral, obtaining debtor-in-possession financing, granting of liens, provisions for adequate protection, The Term Loan Repayment, and other related issues in this case, were all matters of much contention between multiple parties. The relief approved by this Court in the Final DIP Order was the result of arduous negotiations and careful drafting by the parties. The Debtors, the Creditors Committee, and the DIP Lenders, represented by experienced counsel, are bound by the terms agreed upon – to wit, payment of the Term Loan Agent's Administrative Litigation Expenses and release of the Term Loan Lenders from all claims and liabilities (but for the sole ability of the Creditors Committee to investigate and challenge the liens of the Term Loan Lenders). Equity and sound bankruptcy policy dictate that the Debtors should not be allowed to renege on agreements reached in the course of a bankruptcy case.

**III.    *Section 10.5 of the Plan Violates Established Law Under 11 U.S.C. § 502(d)*__**

19.    The offset provision in Section 10.5 of the Plan is nothing short of a thinly disguised attempt to impose a super § 502(d) claim.[5] Through the Plan process, the Debtors are hoping to achieve what they could not achieve under Section 502(d) – offset rights so expansive that they violate established legal precedents interpreting Section 502(d) of the Bankruptcy Code.

20.    First, the broad language of the offset provision suggests that the mere *allegation* of a claim against a Term Loan Lender is sufficient to trigger an offset denying payment due such person. However, courts in this and other circuits have consistently held that a claim shall be disallowed under Section 502(d) of the Bankruptcy Code only where a determination has first been made that the claimant is liable in the underlying avoidance action. *See In re Jensen,* No. 09-14830 (MG), slip. op., 2010 WL 424693, at *2 (Bankr. S.D.N.Y. Feb. 3, 2010) (holding that the mere possibility of a judgment is insufficient to disallow a claim under Section 502(d) of the Bankruptcy Code) (citing *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001)); *Seta Corp. of Boca, Inc. v. Atlantic Computer Systems (In re Atlantic Computer Systems)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (noting that Section 502(d) requires "some sort of determination of the claimant's liability before its claims are disallowed"); *Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989) (stating that Section 502(d) is "designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts *adjudicated* to belong to the bankruptcy estate") (emphasis added) (citing *Keppel v. Tiffin Savings Bank*, 197 U.S. 356,

---

[5]  Section 502(d) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

8

361) (1905); *Official Unsecured Creditors Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, No. 09-10006 (CSS), 2010 WL 3768003, at *46 (Bankr. D. Del. Sep. 2, 2010) ("the very nature of the statutory scheme requires the bankruptcy court to adjudicate the preference matter before allowing or disallowing the claim") (quoting *Caliolo v. Saginaw Bay Plastics, Inc. (In re Cambridge Indus. Holdings, Inc.)*, 2006 U.S. Dist. LEXIS 7939 (D. Del. Mar. 2, 2006)); Therefore, the Term Loan Avoidance Action – which has not been adjudicated in this or any Court finding the defendants liable – cannot be used to offset against a claim of a Term Loan Lender.

21.     Second, Section 10.5 of the Plan seemingly enables the Debtors, the GUC Trust Administrator or the Avoidance Action Trust Administrator, as applicable, to offset the Term Loan Avoidance Action against payment of JPMC's Administrative Litigation Expenses, which directly contravenes the Second Circuit's holding in *ASM v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422 (2d Cir. 2009). There, the debtor Ames had, pursuant to 11 U.S.C. § 502(d), refused to make distributions to creditor ASM on account of ASM's administrative claim, which it acquired from a former supplier to Ames, and the defendant in a preference action by Ames. *Id.* at 425. The Second Circuit held, however, that Section 502(d) of the Bankruptcy Code does not apply to administrative expenses. *Id.* at 431-32. Applied here, the same principle dictates that JPMC's post-petition Administrative Litigation Expenses cannot be offset against claims asserted in the Term Loan Avoidance Action.

22.     Finally, the overreaching language contained in Section 10.5 of the Plan seemingly permits the Debtors (or the Trust Administrators) to determine unilaterally, in their "sole discretion," based upon the mere assertion of lack of perfection, not to pay otherwise

allowable claims held by any Term Loan Lender.  Such provision is mischievous, in violation of the Final DIP Order as well as the statutory scheme of the Bankruptcy Code.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, JPMC respectfully requests that the Court (i) deny confirmation of the Plan and (ii) grant such other relief as this Court deems just and proper.

Dated: New York, New York
February 7, 2011

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Richard S. Toder
Richard S. Toder
Andrew D. Gottfried
Annie C. Wells
101 Park Avenue
New York, New York  10178
(212) 309-6000

*Attorneys for JPMorgan Chase Bank, N.A., as Agent*