HEARING DATE AND TIME: February 9, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: February 4, 2011 at 4:00 p.m. (Eastern Time) (By Agreement)
REPLY DEADLINE: February 8, 2011 at 12:00 p.m. (Eastern Time) (By Agreement)

Steven M. Bierman
Nicholas K. Lagemann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Kenneth P. Kansa (admitted *pro hac vice*)
Courtney A. Rosen (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Counsel for Wells Fargo Bank
Northwest, N.A., as Agent to the TPC Lenders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
In re:                                              :    Chapter 11
                                                    :
MOTORS LIQUIDATION COMPANY., *et al.*,              :    Case No. 09-50026 (REG)
       f/k/a General Motors Corp., *et al.*
                                                    :
                       Debtors.                     :    (Jointly Administered)
------------------------------------------------------------------ X

**TPC LENDERS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ENTRY OF AN
ORDER (I) INITIATING VALUATION PROCEEDINGS IN ACCORDANCE
WITH THE SALE ORDER, AND (II) ESTABLISHING A SCHEDULE
<u>WITH RESPECT TO THE VALUATION PROCEEDINGS</u>**

Wells Fargo Bank Northwest, N.A. ("<u>Wells Fargo</u>"), as Agent (the "<u>Agent</u>"), on behalf of

Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator (the

"<u>Administrator</u>"), Hannover Funding Company, as CP Lender, and Deutsche Bank, AG, New

York Branch, HSBC Bank, National Association, ABN AMRO Bank N.V., Royal Bank of

Canada, Bank of America, N.A., Citicorp USA, Inc., Merrill Lynch Bank USA, and Morgan

NY1 7559331v.1

Stanley Bank, as purchasers (collectively with the Administrator, the "TPC Lenders"), respectfully submits this reply in support of their Motion for an Entry of an Order (I) Initiating Valuation Proceedings in Accordance with the Sale Order, and (II) Establishing a Schedule with Respect to the Valuation Proceedings (the "Motion").  In support of the Motion, Wells Fargo states as follows:

1. The Agent and the TPC Lenders have reviewed the Response by General Motors LLC to Motion of the TPC Lenders for an Entry of an Order (I) Initiating Valuation Proceedings in Accordance with the Sale Order, and (II) Establishing a Schedule with Respect to the Valuation Proceedings (the "Response" or "New GM Resp.").  New GM is correct that negotiations between the parties are "at an impasse and that judicially supervised proceedings are necessary to move towards resolution of this dispute."  New GM Resp. ¶ 2.  However, New GM's request that this Court delay these "necessary" "judicially supervised proceedings" until some unspecified and unknown point in the future is untenable, particularly given the fact that, as New GM acknowledges, there is a substantial gap between the parties as to the valuation of the Facilities.  See id. ¶¶ 6-7.  Thus, for the reasons explained below, New GM's Response provides no legitimate reason or justification to deny the TPC Lenders' request that this Court establish a scheduling order to resolve this dispute.

2. New GM does not dispute that the Sale Order provides that the "TPC Lenders shall have an allowed secured claim in a total amount equal to the fair market value of the TPC Property on the Commencement Date *under section 506 of the Bankruptcy Code . . . .*"[1] Id. ¶ 3 (quoting Sale Order ¶ 36) (emphasis added).  However, New GM is entirely wrong

---

[1] The TPC Property comprises real estate, improvements, fixtures, and various additional property located at two of General Motors Corporation's ("Old GM") facilities -- a transmission manufacturing plant in White Marsh, Maryland (the "Maryland Facility") and a distribution center in Memphis, Tennessee (the "Tennessee Facility" and, together with the Maryland Facility, the "Facilities" or the "TPC Property").  See Sale Order ¶ CC.  Defined terms herein shall have the same meaning as set forth in the Sale Order.

2

concerning its interpretation of this provision, and New GM's mistake does not provide any reason to delay the "judicially supervised proceedings" that "are necessary to move towards a resolution of this dispute." Id. ¶ 2.

3.  As this Court is certainly aware, Section 506 of the Bankruptcy Code provides that the value of an allowed secured claim "*shall* be determined in light of the purpose of the valuation *and of the proposed disposition or use of such property* . . . ." 11 U.S.C. § 506 (emphasis added). In accordance with the plain language of the statute, the United States Supreme Court has made clear that valuation under Section 506 requires that the Court value the asset according to "the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use.'" Associates Commercial Corp. v. Rash, 520 U.S. 953, 965 (1997).[2]

4.  The TPC Lenders have commissioned appraisals that value the TPC Property in accordance with the plain language of Section 506. In particular, the TPC Lenders' appraisals value the TPC Property according to "the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use.'" Id. The TPC Lenders' appraisals appropriately and correctly set a value of the TPC Property that recognizes the value to GM having retained and continued to operate the Facilities as vital parts of its reorganized business. See id. at 963 ("the replacement-value standard accurately gauges the debtor's 'use' of the property . . . The debtor in this case elected to use the collateral to generate an income stream. That actual use, rather than a foreclosure sale that will not take place, is the proper guide under a prescription hinged to the property's 'disposition or use.'"). Thus, the TPC Lenders' appraisals are clearly appropriate

---

[2] Although Rash was a chapter 13 case, "Rash's application to Chapter 11 is not really in doubt." In Re Nat'l Book Warehouse, Inc., Nos. 06-0227, 06-0226, 2007 WL 5595524, at *5 (Bankr. M.D. Tenn. May 23, 2007) (collecting cases).

3

under Section 506 and, in the absence of any competing valuation from New GM,[3] should be relied upon by this Court.

    5. Notably, the Supreme Court in <u>Rash</u> expressly noted that its interpretation of the required methodology of valuation under Section 506 was consistent with and constituted the "fair market value" of a subject property.  <u>See</u> 520 U.S. at 959 n.2 ("[O]ur use of the term replacement value is consistent with the Ninth Circuit's understanding of the meaning of fair-market value;  by replacement value, we mean the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition.").  Thus, "fair market value" under the Sale Order must necessarily set a value according to "the proposed disposition or use of such property," 11 U.S.C. § 506(a), and "the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use.'"  <u>Rash</u>, 520 U.S. at 965.  That is precisely what the TPC Lenders' appraisals do.

    6. New GM concededly has failed to do this, ignoring <u>Rash</u> and focusing solely on a dictionary definition of "fair market value."  New GM Resp. ¶ 3.  New GM's analysis, however, fails to recognize that recitation of "fair market value . . . reveals relatively little" because "[i]n virtually every case, the determination of fair market value will depend on the particular market and means selected to gauge the value of the item in question."  4 <u>Collier on Bankruptcy</u> ¶ 506.03[6] (16th ed. 2010).  "[T]he most appropriate benchmarks for bankruptcy purposes" depends "on (i) the purpose of the valuation, and (ii) the proposed disposition of the collateral."  <u>Id.</u>  The TPC Lenders' appraisals have taken these factors into account; conversely,

---

[3] New GM's claim that in the event that this Court applies the plain language and meaning of Section 506, as required by the Sale Order, it will need additional time to conduct another appraisal is inappropriate.  <u>See</u> New GM Resp. ¶ 8.  New GM has had more than enough time over the past 19 months to conduct an appraisal that conforms to the standards required by the Sale Order and Section 506 of the Bankruptcy Code.  To the extent that New GM needed clarification concerning the meaning of the Sale Order, it could have sought such clarification from the TPC Lenders or from the Court within that 19 month period.  However, it did not and its failure to properly conduct an appraisal of the TPC Property does not justify further delay that would serve to prejudice the legitimate and recognized rights of the TPC Lenders to recover as undisputed secured creditors.

NY1 7559331v.1

New GM's appraisal purports to value the TPC Property under a fiction that New GM did not retain and continue to operate the property, but instead abandoned the properties and attempted to sell empty properties to a third party. This is exactly the approach rejected by the Supreme Court. Rash, 520 U.S. at 963 ("Th[e] actual use, rather than a foreclosure sale that will not take place, is the proper guide under a prescription hinged to the property's 'disposition or use.'"). In sum, New GM's appraisal purports to set a value of the TPC Property that could be obtained through a foreclosure sale,[4] the precise valuation method rejected by the Supreme Court in Rash. See id. at 960-61. New GM effectively asks the Court to ignore both Supreme Court precedent and the objective reality of the Facilities' use, and instead assume that "fair market value" must mean foreclosure value. Under the plain language of Section 506 and the governing law, the Court should reject that request.

7. In any event, New GM's failure for well over a year and a half to correctly construe the plain language of the Sale Order, the express language of Section 506, and the clear dictates of relevant case law provides no reason or justification for delaying the "judicially supervised proceedings" that New GM admits "are necessary to move towards resolution of this dispute." New GM Resp. ¶ 2. To the contrary, New GM's failure to properly follow the Sale Order and Section 506, and failure to produce a competing appraisal that is based upon the appropriate methodology or reality as of the Commencement Date, virtually compels that the TPC Lenders' valuation be accepted as the TPC Value as defined in the Sale Order.

8. Even assuming *arguendo* that there could be a serious dispute concerning the appropriate valuation methodology required by the Sale Order under Section 506 of the Bankruptcy Code, such a dispute would not necessitate or sustain New GM's request to delay

---

[4] Moreover, there are other significant failings of methodology and assumptions contained New GM's appraisals, which the TPC Lenders will demonstrate at an evidentiary hearing to be scheduled by the Court.

5

these "necessary" proceedings. As noted, New GM admits that "judicially supervised proceedings" are "necessary," and that such proceedings will require "a briefing schedule, discovery deadlines and an evidentiary hearing date . . ." New GM Resp. ¶¶ 2, 9. This is, of course, exactly what the TPC Lenders have requested in their initial motion and proposed order. Motion ¶¶ 12-13. Any legal dispute concerning valuation methodology can be briefed, argued and decided while the parties conduct the discovery and prepare for an evidentiary hearing.[5]

9. Of course, should the Court request, the TPC Lenders are prepared to brief the legal issue of the appropriate methodology of valuing the TPC Facilities. However, New GM's opposition sets forth no reason that such briefing cannot be conducted in conjunction with discovery and other preparation towards an evidentiary hearing needed to conduct the "judicially supervised proceedings" that New GM admits are "necessary" to resolve this dispute.

10. Accordingly, the TPC Lenders respectfully submit that New GM's Response should be rejected and the proposed order submitted by the TPC Lenders in their initial motion should be granted.

11. The Agent and the TPC Lenders have also reviewed the Debtors' Response to Motion of TPC Lenders for Entry of Order (I) Initiating Valuation Proceedings in Accordance with the Sale Order, and (II) Establishing a Schedule with Respect to the Valuation Proceedings (the "Debtors Resp."). The Debtors' Response sets forth no legitimate reason for delaying these proceedings. As all parties acknowledge, the Debtors have not been involved in

---

[5] In addition, under the governing loan and security agreements, the TPC Lenders are also entitled to recover the value of certain equipment located at the Facilities. These values are in addition and above the value set forth in the valuations commissioned by the TPC Lenders. To date, New GM has failed to provide documents and information sufficient to enable the TPC Lenders to fully ascertain the value of the equipment located at the Facilities that must be included in the TPC Lenders claim. This is yet another reason why discovery, pursuant to an appropriate schedule entered by this Court, is necessary and appropriate without further delay.

the process of negotiations between the TPC Lenders and New GM.[6] To the extent that Debtors might, theoretically, have some involvement in the valuation proceedings, there is no reason why the Debtors' limited participation cannot be handled contemporaneously or after the confirmation proceedings.  Indeed, the Debtors do not, and cannot, dispute that there will be many claims that will only be resolved after conformation.  If anything, the Debtors should welcome and encourage the expeditious and prompt resolution of this remaining claim.

---

[6] The TPC Lenders disagree with the Debtors' comment that "it is hard to imagine that valuation now is a particularly pressing matter." Debtors Resp. ¶ 2. Since the Sale Order, the TPC Lenders have attempted to move these proceedings forward towards resolution and the Debtors, who have played no role in those efforts since the Sale Order, are in no position to offer opinions as to the reasons behind timing for bringing this motion.  Suffice it to say, the TPC Lenders, as undisputed secured lenders, have every right to expect to receive satisfaction of their claim in a timely matter.  To be clear, this is a "pressing matter" to the TPC Lenders.

NY1 7559331v.1

WHEREFORE, the Agent, on behalf of the TPC Lenders, respectfully requests that this Court grant its motion for an order (I) initiating valuation proceedings pursuant to the Sale Order; (II) establishing an appropriate schedule in respect of such valuation proceedings; and (III) granting such other relief as is just and reasonable.

Dated: New York, New York
      February 8, 2011

    /s/ *Steven M. Bierman*
SIDLEY AUSTIN LLP
Steven M. Bierman
Nicholas K. Lagemann
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email:    sbierman@sidley.com
            nlagemann@sidley.com

-    and    -

SIDLEY AUSTIN LLP
Kenneth P. Kansa (admitted *pro hac vice*)
Courtney A. Rosen (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email:    kkansa@sidley.com
            crosen@sidley.com

*Counsel for Wells Fargo Bank Northwest, N.A., as Agent to the TPC Lenders*