HEARING DATE AND TIME: March 1, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: February 22, 2011 at 4:00 p.m. Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                         :

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF**
**ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY**
**CODE (I) AUTHORIZING THE PROVIDING OF CERTAIN RETIREE BENEFITS**
**CONSISTENT WITH UNION SETTLEMENT AGREEMENT BY GENERAL MOTORS**
**LLC AND (II) GRANTING PARTICIPATION IN GENERAL UNSECURED CLAIM**

PLEASE TAKE NOTICE that upon the annexed Motion, dated February 8, 2011

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**")

and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), for

an order, pursuant to sections 105(a) and 363(b) of title 11, United States Code (the

"**Bankruptcy Code**") (i) authorizing the providing of certain retiree benefits by General Motors

LLC and (ii) granting a participation in a prepetition general unsecured claim to certain retirees

formerly members of the International Brotherhood of Boilermakers, all as more fully set forth in

the Motion, a hearing will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **March 1**, **2011 at 9:45**

**a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); so as to be received no later than **February 22, 2011, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:  New York, New York
       February 8, 2011

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                          :
In re                                     :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,* :          **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.* :
                                          :
                    **Debtors.**          :          **(Jointly Administered)**
                                          :
---------------------------------------------------------------x

**MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO**
**SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING**
**THE PROVIDING OF CERTAIN RETIREE BENEFITS CONSISTENT WITH**
**UNION SETTLEMENT AGREEMENT BY GENERAL MOTORS LLC AND**
**(II) GRANTING PARTICIPATION IN GENERAL UNSECURED CLAIM**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"),

respectfully represent:

### Relief Requested

1.      The Debtors request, pursuant to sections 105(a) and 363(b) of title 11,

United States Code (the "**Bankruptcy Code**") and this Court's Union Settlement Order (as

defined hereafter), that the 24 remaining MLC retirees and/or surviving spouses and/or

dependants (the "**Retirees**")[1] formerly members of the International Brotherhood of

Boilermakers (the "**IBB**") be conferred essentially the equivalent treatment of the retirees of the

"Participating Splinter Unions" as such term is defined in the Union Settlement Order and the

Union Settlement Agreement (as defined hereafter).  Pursuant to the Union Settlement Order and

the Union Settlement Agreement, various "splinter unions" were granted a share in an allowed

$1 billion prepetition general unsecured claim, and other splinter unions (including the IBB)

were afforded the opportunity to join in the Union Settlement Agreement and have certain

covered members participate in such allowed claim as well as to receive from General Motors

LLC ("**New GM**") certain retiree health care benefits and basic life insurance.  Although neither

the 24 Retirees nor the IBB have formally elected to participate in the Union Settlement

Agreement and although the Debtors believe they have the right to unilaterally terminate in their

entirety the prepetition benefits provided to the Retirees, the Debtors and New GM nevertheless

have volunteered to provide to the Retirees essentially the same ongoing health and life

insurance benefits provided to the retirees who were members of the other Participating Splinter

Unions,[2] on essentially the same terms and conditions.  Pursuant to this Motion the Debtors seek

authority to implement the foregoing.

---

[1] The Debtors have a schedule of the names and addresses of the Retirees; however, to protect the Retirees' privacy, that schedule is not being filed with the Court.  Of course, notice of this Motion will be furnished to the Retirees at such addresses.

[2] The IBB has refused to act on behalf of the Retirees.  Because the Debtors have the right to unilaterally terminate the Retirees' benefits, the Debtors believe that section 1114 of the Bankruptcy Code is inapplicable to the relief requested herein.

**Jurisdiction**

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Furthermore, this

Court has retained jurisdiction to hear and determine all matters arising from or related to the

Union Settlement Order.

**Background**

3.      The Debtors do not currently employ any individuals who are represented

by any union and who work within the United States.  However, prior to the commencement of

the Debtors' chapter 11 cases, MLC agreed to provide certain retiree medical and life insurance

benefits in various collectively bargained agreements with certain labor unions, including the

IBB (collectively, the "**Unions**").

4.      Pursuant to that certain settlement agreement, dated September 10, 2009,

by and among MLC, New GM, and certain "splinter unions" (the "**Union Settlement**

**Agreement**"), New GM agreed to provide certain retiree medical benefits at a reduced level to

participating union retirees and surviving spouses who are not eligible for Medicare benefits.

New GM also agreed to provide a reduced level of life insurance coverage to participating

retirees (regardless of Medicare eligibility).  The Union Settlement Agreement further provided

that with respect to those retirees who were eligible for Medicare as of December 31, 2009, MLC

shall grant to the Participating Splinter Unions (as defined in the Union Settlement Order) that

agree to the applicable terms of, and agree to participate in the Union Settlement Agreement, a

prepetition, general unsecured claim in MLC's chapter 11 case in an amount equal to such

union's respective "**Percentage Share**" of the aggregate amount of $1 billion (the "**Allowed**

**Claim**").  The Allowed Claim is in full settlement, satisfaction, and discharge of all claims that

the Participating Splinter Unions, as authorized section 1114 and 1113 representatives, have or may have against the Debtors and their affiliates arising out of collective bargaining agreements relating to retiree healthcare benefits, life insurance benefits, and all other benefits and claims.  A copy of the Union Settlement Agreement is annexed hereto as **Exhibit "A."**

5.      By Order entered on November 12, 2009, this Court approved the Union Settlement Agreement and authorized the Debtors to perform all of their obligations thereunder. *See* Order Pursuant to Sections 363(b) and 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a) Approving Settlement Agreement with Certain Labor Unions (ECF No. 4433) (the "**Union Settlement Order**").  The "Percentage Share" of each of the Unions is set forth on Exhibit "A" to the Union Settlement Order.  A copy of the Union Settlement Order is annexed hereto as **Exhibit "B."**

6.      The Union Settlement Agreement and the Union Settlement Order contemplate that the Unions listed on Exhibit A to the Union Settlement Order that were not parties to the Union Settlement Agreement may agree to participate in the Union Settlement Agreement and participate in their Percentage Share of the Allowed Claim at any point in time prior to the Debtors making any distributions to prepetition unsecured creditors pursuant to a confirmed chapter 11 plan.  *See* Union Settlement Order at 5.  By Order entered August 9, 2010, two additional Unions joined in the Union Settlement Agreement.

7.      The IBB (the sole remaining splinter union) declined to represent its retired past members, and consequently they have not yet joined the Union Settlement Agreement.  New GM did not assume any liability for any claims attributable to the IBB Retirees including, without limitations, any obligations for health care or life insurance benefits in retirement.  Thus, New GM has no responsibility to provide either health care or life insurance to

the Retirees.  Accordingly, New GM only has been administering MLC health care and life

insurance plans applicable to the 24 Retirees on behalf of MLC.  New GM's responsibilities,

however, are limited to administration and do not include any responsibility or liability for the

underlying benefits.

8.    As a result of the foregoing, all of the splinter union retirees, other than the

24 Retirees, have now become parties to the Union Settlement Agreement and, as a result,

receive the benefits provided thereunder and will share in the Allowed Claim.  Although, as

stated, the Debtors believe they have the right to unilaterally terminate all benefits for the

Retirees and although the IBB has not come forward on behalf of the Retirees to take advantage

of the Union Settlement Agreement on behalf of the Retirees, the Debtors and New GM are

nevertheless prepared to provide to the Retirees essentially the same heath and life insurance

benefits (and their Percentage Share of the Allowed Claim) rather than have all of such benefits

be completely terminated and forfeited.

### The Benefits to Be Provided to the Retirees

9.    In view of the above, the Debtors respectfully request that the Court

authorize the Debtors (in conjunction with New GM) to provide to the Retirees the health and

life insurance benefits (on essentially the same terms and conditions) provided to the other

retirees as provided for in the Union Settlement Agreement, which are summarized as follows:[3]

---

[3] As stated, a copy of the Union Settlement Agreement is annexed hereto as Exhibit "A," which provides more detail as to the specific terms of the health and life insurance benefits.

| | |
|---|---|
| **Retiree Health Care Benefits** | As soon as reasonably practicable following entry of an order approving this Motion, New GM will provide retiree health care to eligible Retirees in accordance with the terms set forth in paragraph 5 (other than subparagraph (f))[4] of the Union Settlement Agreement and MLC shall have no liability or responsibility therefor.  See Attachment A to the Union Settlement Agreement (Exhibit "A" annexed hereto) for a summary of the benefits. |
| **Waiver of Right to Seek Future Modification to Health Care Benefits** | The Retirees will not in the future have the right to seek any modifications or changes to the health care benefits to be provided by New GM. |
| **Termination of Health Care in Retirement** | All obligations of MLC, the MLC Plan (as defined in the Union Settlement Agreement), and any other MLC entity or benefit plan for health care in retirement for members of the Covered Group (as defined below) or any other person claiming entitlement to health care in retirement pursuant to a collective bargaining agreement other than as set forth in paragraph 5 of the Union Settlement Agreement (other than subparagraph (f)) shall be forever terminated. |
| **Basic Life Insurance** | New GM will provide Basic Life Insurance in retirement to eligible Retirees in the maximum fixed amount of $10,000 as provided for in the Union Settlement Agreement.  MLC shall have no responsibility for such life insurance.  All obligations of MLC, the MLC Plan, and any other MLC entity or benefit plan for basic life insurance for the Retirees arising from any GM-IBB collective bargaining agreement shall be forever terminated. |
| **Covered Group** | As applicable to the Retirees, Paragraph 7 of the Union Settlement Agreement shall apply in principle, but the term "Covered Group" as used therein shall mean: <br><br> All MLC employees who were represented with respect to the terms and conditions of their employment with MLC by the IBB (or an IBB union predecessor) and who retired from MLC under circumstances such that they were eligible for MLC contributions to their health care in retirement according to the terms of a MLC-IBB Union collective bargaining agreement in effect at the time of their retirement, and their spouses, surviving spouses and dependents. <br><br> For purposes of Paragraph 7 of the Union Settlement Agreement, the term "surviving spouses" shall include: <br><br> surviving spouses of a Covered Group Retiree who died prior to retirement under circumstances such that at the time of death the |

---

[4] This subparagraph provided a one-time option to elect a cash-out which expired on January 1, 2010.  The Retirees are not eligible to participate in that option.

| | |
|---|---|
| | employee would have been eligible to retire under circumstances meeting the Covered Group classification set forth above. |
| **Waiver and Release** | Except as to claims arising from an alleged breach of the provisions of the Union Settlement Agreement applicable to the Retirees, as a condition to receiving the benefits described herein, the Retirees and all persons claiming entitlement to health care or life insurance on their behalf or as a dependent or surviving spouse of a Retiree, shall be deemed to release and forever discharge New GM, its predecessors, and its current or former officers, directors, employees, agents, subsidiaries, parents, affiliates, and any and all of its welfare and pension benefit plans and their fiduciaries, with respect to any and all rights, claims, or causes of action that any of them have or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon, or otherwise related to any claim arising out of their employment with MLC, including, without limitation, alleged breaches of a collective bargaining agreement, concerning any alleged entitlement to health care in retirement, any alleged entitlement to life insurance in retirement, and any claim the basis for which is predicated upon an allegation that New GM is a successor to MLC.  The term "collective bargaining agreement" as used herein is intended to have the broadest possible interpretation, inclusive of any and all national agreements or memorandums of understanding entered between MLC and the IBB, whether individually or collectively, written or oral or as a matter of custom and practice. |

10.     In order to implement the foregoing, the Retirees, as a condition to receiving the benefits and the Percentage Share, would be deemed to be bound to paragraphs 5 (other than for subparagraph 5(f)), 6, 9, 15, 17, 18, and 20 of the Union Settlement Agreement as if named parties thereto; provided that amounts paid for "Retiree Health Care Benefits" (as defined in the Union Settlement Agreement) for the Retirees on and after July 10, 2009 through December 31, 2009 shall be applied against the "Aggregate Net Present Value" specified in paragraph 5(b) of the Union Settlement Agreement on a dollar-for-dollar basis and are not subject to the discount set forth in paragraph 5(b) of the Union Settlement Agreement.

11.     In addition, it is proposed that the Bankruptcy Court shall resolve any disputes with respect to all of the foregoing, and at such time as these chapter 11 cases are

closed, any litigation with respect to the foregoing shall be brought solely in the United States

District Court for the Eastern District of Michigan.

12.     It is also proposed that the Retirees, collectively, shall be entitled to their

Percentage Share of the Allowed Claim as set forth on Exhibit A to the Union Settlement Order,

with the mechanism to make distributions to the Retirees in respect thereof under the Debtors'

Amended Joint Chapter 11 Plan to be determined at a later date.

## The Relief Requested Herein Should Be Approved

13.     As stated, the 24 Retirees are the only remaining members of the splinter

unions that have not exercised their option to obtain the health and life insurance benefits

provided for in the Union Settlement Agreement.  It is the Debtors' understanding that this is

largely because the IBB has elected not to intervene or otherwise take any action on their behalf.

14.     Rather than terminate the benefits entirely, as the Debtors believe they

have the unilateral right to do, the Debtors, in conjunction with New GM, have determined to

permit the Retirees to receive essentially the same health and life insurance benefits as those

retirees participating in the Union Settlement Agreement as well as to participate ratably in the

Allowed Claim.

15.     The Debtors submit that this proposal is inherently fair and reasonable,

provides a benefit to the Retirees which would not otherwise be available, and imposes no undue

burden on the Debtors' estates.  Accordingly, the Debtors believe that the relief requested herein

should be granted.

## Notice

16.     Notice of this Motion has been provided to each of the 24 Retirees and

parties in interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a)

and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures,

dated January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no

other or further notice need be provided.

      17.    Other than in connection with the Union Settlement Order, no previous

requests for the relief sought herein has been made by the Debtors to this or any other Court.

      WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
      February 8, 2011

      /s/ Stephen Karotkin
      Harvey R. Miller
      Stephen Karotkin
      Joseph H. Smolinsky

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

**<u>Exhibit A</u>**

**(<u>Union Settlement Agreement</u>)**

## SETTLEMENT AGREEMENT BETWEEN AND AMONG
## GMCo/MLC-IUE-CWA AND USW
## REGARDING RETIREE HEALTH CARE, LIFE INSURANCE,
## PENSION TOP-UP, AND MODIFICATION
## AND GMCO ASSUMPTION OF MLC-IUE-CWA CBA

This Settlement Agreement (together with the Exhibits hereto, the "Settlement Agreement"), is between General Motors Company ("GMCo"), Motors Liquidation Company ("MLC" formerly known as General Motors Corporation), the IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO,CLC ("IUE-CWA") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO,CLC ("USW"). The IUE-CWA and USW also enter into this Settlement Agreement as the authorized representative, as defined in Section 1114(c)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), of those persons receiving retiree benefits, as defined in Section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between MLC and the IUE-CWA or the USW (or an IUE-CWA or USW predecessor) and who are members of the Covered Group, as defined herein. Collectively, the IUE-CWA, the USW, GMCo, MLC and the Covered Group are referred to as the "Parties."

MLC agreed to provide certain retiree medical benefits in various collectively bargained agreements with the IUE-CWA and the USW. MLC, the IUE-CWA and the Class entered into a settlement agreement in the class action of *IUE-CWA, et al. v. General Motors Corp.*, No. 2:06-cv-12151 (E.D. Mich) ("Combs"). Subsequent to entering those collective bargaining agreements and the class settlement agreement (the "Combs Settlement"), MLC commenced a case under Chapter 11 of the Bankruptcy Code entitled *In Re General Motors Corp., et al.,* No. 09-050026 (REG) ("MLC Chapter 11 Case") in the U.S. Bankruptcy Court (S.D. N.Y.) (the "Bankruptcy Court"). Pursuant to an Order of the Bankruptcy Court, GMCo purchased substantially all of the assets of MLC.

The IUE-CWA and the USW assert, and GMCo and MLC deny, that GMCo and/or MLC are required to continue to provide retiree medical benefits in accordance with those collective bargaining agreements and the class settlement agreement and, further, to provide certain pension benefit guarantees in accordance with collectively bargained memorandums of understanding regarding establishment or restructuring of Delphi Corporation ("Delphi"). GMCo maintains that it is not obligated to assume or to continue to abide by the MLC collective bargaining agreements with the IUE-CWA or the USW, the Combs Settlement or the Delphi restructuring memorandums of understanding. MLC maintains that it is entitled to cancel or terminate all obligations arising from collective bargaining agreements between MLC and the IUE-CWA or the USW. After due consideration of the factual and legal arguments regarding these issues, as well as the costs, risks, and delays associated with litigating these issues, GMCo, MLC and the IUE-CWA and USW have agreed to resolve all claims regarding such matters on the basis set forth in this Settlement Agreement.

1. <u>Pension Top-Up</u>: In the event that pension benefits received by a retired Covered Employee from the PBGC, or a combination of the PBGC, Delphi or another entity (including a Delphi Divested Unit), as a consequence of termination of the Delphi Hourly Retirement Plan

("Delphi HRP"), referred to herein as "Insured Pension Payments," are less than what otherwise would have been received by the retired Covered Employee from the Delphi HRP according to plan terms as of July 22, 2009, GMCo will provide supplemental payments to such retired Covered Employee so that when combined with the Insured Pension Payments such retired Covered Employee will receive pension benefits equal to what otherwise would have been paid by the Delphi HRP according to plan terms.  For the avoidance of doubt, by this provision GMCo agrees to pay benefits to the retired Covered Employee equal to the difference between the amount of Insured Pension Payments and the amount of benefits that would have been paid by the Delphi HRP according to its terms had it not been terminated.

    a.  Covered Employee shall mean those IUE-CWA or USW represented Delphi employees who had unbroken seniority and were employed by GM under the terms of the 1996 GM-IUE-CWA or GM-USW National Agreement as of the spin-off of Delphi from GM on May 28, 1999 who were not employed under a competitive wage agreement as of May 28, 1999, i.e., Tier II or Tier III employees; provided however, that IUE-CWA or USW represented employees who were employed as of May 28, 1999 and were initially hired under a competitive wage agreement that provided for them to grow into full parity for all purposes, including but not limited to all benefit participation on the same basis as non-competitive hire employees and the ability to grow into full wage parity, are also Covered Employees.  It is understood that employees represented by Splinter Unions as hereafter defined are not eligible for the Pension Top-Up regardless of their election to participate in the retiree health care and life insurance coverages contemplated by this Settlement Agreement.

    b.  A Covered Employee will be entitled to the Pension Top-Up only with respect to a retirement under Article II, Section 1 (Normal Retirement), Section 2 (Early Retirement) or Section 3 (Total and Permanent Disability Retirement) of the Delphi HRP.  A Covered Employee receiving only a deferred vested benefit under Article VII, Section 2 (Retention of Deferred Pension if Separated) as a former employee is not entitled to the Pension Top-Up.

    c.  In consideration of the commitments described in this paragraph 1, in the Chapter 11 bankruptcy case of *In re Delphi Corporation, et al.*, Case No. 05-44481 (RDD), the IUE-CWA and USW agree to withdraw their objections (Docket No. 17793 and No. 18258) and waive any further objections to the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) submitted by the Debtors on June 1, 2009 (as further modified)(the "Modified Plan") or Delphi's motion to approve the Modified Plan (Docket No. 16646).  Further, the IUE-CWA and USW agree to waive any Seller U.S. CBA restrictions to the proposed sale of operations, including Document 63 (IUE-CWA) and Document 53 (USW), to the extent necessary to accomplish the Modified Plan.

2.  <u>Up-To-7 Years Accrual</u>: GMCo agrees to amend the GMCo General Motors Hourly-Rate Employees Pension Plan ("GMCo HRP") to provide the following:

a. Covered Employees, who were Delphi employees as of November 30, 2008, the date that Delphi froze the Delphi HRP (the "Freeze Date"), or Covered Employees who were employed as of the Freeze Date at a Delphi operation divested after October 8, 2005 and prior to the Freeze Date ("Delphi Divested Operation") will be eligible to accrue credited service under the GMCo HRP for all purposes, including but not limited to eligibility, vesting, and future benefit accruals for the seven (7) year period commencing on the Freeze Date. Any such benefits provided by the GMCo HRP shall be at the level and scope in effect at Delphi on July 22, 2009 (the "Up-to-7-Effective Date") and shall be secondary to benefits provided by Delphi, the Delphi HRP, any Delphi Divested Operation or any benefit plan of such operation, any of their subsidiaries, affiliates or successors or associated pension plans, and/or the Pension Benefit Guarantee Corporation ("PBGC"). In no event shall the GMCo HRP provide pension benefits on such credited service at a level and scope that exceeds that being provided to hourly retirees of GMCo. The amount of such credited service accrued will equal:

   i. The amount of credited service that, but solely for Delphi Freezing the Delphi HRP, would have been earned after the Freeze Date under Article III of the Delphi HRP in effect on the Up-to-7-Effective Date; and

   ii. To the extent not taken into account in Paragraph 2(a)(i), above, the amount of credited service that, but solely for the Freeze and divestiture, would have been earned while working after the Freeze Date at any Delphi Divested Operation under Article III of the Delphi HRP in effect on the Up-To-7-Effective Date.

Nothing in this Settlement Agreement shall be deemed to require GMCo to grant credited service beyond that described in this Paragraph 2(a). Employees shall be provided only the amount of credited service earned as described in this Paragraph 2(a), and shall not receive credited service otherwise. It is understood that employees represented by Splinter Unions as hereafter defined are not eligible for the Up-To-7 Years Accrual regardless of their election to participate in the retiree health care and life insurance coverages or other aspects contemplated by this Settlement Agreement.

b. In regard to the credited service accrued in the GMCo HRP under Paragraph 2(a) of this Settlement Agreement, the GMCo HRP will recognize Delphi HRP credited service accrued prior to the Freeze Date for purposes of vesting and eligibility to retire for any Covered Employee. No other Delphi HRP credited service will be recognized by the GMCo HRP.

c. The GMCo HRP benefit payable to a Covered Employee, who retires as a Normal Retirement under and as defined by Article II, section 1 of the Delphi HRP and GMCo HRP, will be a Basic Benefit (as defined according to the GMCo HRP) and based on GMCo HRP credited service accrued under Paragraph 2(a) of this Settlement Agreement and the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date.

d. The GMCo HRP benefit payable to a Covered Employee, who retires under Article II, section 2(a)(3) of the Delphi HRP and GMCo HRP with a combined 30 or more years of credited service prior to age 62 and one month, will be a Basic Benefit payable beginning at age 62 and one month based on the number of years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement and the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date.

e. The GMCo HRP benefit payable to a Covered Employee, who retires under the Delphi HRP and GMCo HRP prior to age 65 with a combined 85 Points or at least age 60 with 10 or more years of credited service, under Article II, section 2(a)(1) or 2(a)(2) of the Delphi HRP and GMCo HRP or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved by Delphi or the PBGC pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Up-To-7-Effective Date and approved by GMCo under the procedures applicable to the GMCo HRP, or for IUE-CWA Covered Employees the Kettering Ohio, Moraine Ohio and Anaheim California plants only, and for USW Covered Employees of the Home Avenue plant only (including those who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant) as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP, will consist of the following:

    i. the Basic Benefit based on the number of years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement, age at time of retirement, and the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date. Such benefits from the GMCo HRP are payable beginning upon the date of retirement and will be re-determined, if applicable, at age 62 and one month, under the terms of the Delphi HRP in effect as of the Up-To-7-Effective Date; and

    ii. if applicable, an interim supplement based on the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date for the number of years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement and age at time of retirement. The duration of such interim supplement is modified as set forth in the letter in the Delphi HRP entitled Social Security.

    iii. if applicable, a temporary benefit based on the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date for the number of years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement. Provided, however, that such number of years of credited service when added to the number of years of credited service in the Delphi HRP will not exceed 30. The duration of such temporary benefit is modified as set forth in the letter in the Delphi HRP entitled Social Security.

f.  Any Covered Employee who, after considering: i) the credited service accrued in the GMCo HRP under Paragraph 2(a) of this Settlement Agreement; ii) the Delphi HRP credited service recognized in the GMCo HRP for eligibility to retire under Paragraph 2(b) of this Settlement Agreement; and iii) age at retirement or separation from service from Delphi, or any Delphi Divested Operation, is not eligible for retirement under the GMCo HRP as described in Paragraph 2(c), 2(d), or 2(e) of this Settlement Agreement, will receive only a deferred vested benefit from the GMCo HRP based on the years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement. The Basic Benefit will be based on the number of years of credited service accrued under the GMCo HRP under Paragraph 2(a) of this Settlement Agreement, age at time of benefit commencement, and the rates in effect under the Delphi HRP as of the Up-To-7-Effective Date. Neither GMCo, nor the GMCo HRP, will have any obligation to supplement the deferred vested amounts set forth above.

g.  For the avoidance of doubt, for the purposes of Paragraph 2 of this Settlement Agreement for Covered Employees who have not retired or separated from service from Delphi, GMCo, or any Delphi Divested Operation, the GMCo HRP will continue to recognize the growth in age of such Covered Employees during the period they are considered an active employee with seniority in the Delphi HRP. For purposes of such recognition of growth in age in the GMCo HRP, such Covered Employees will not be considered by the GMCo HRP to have separated from service from GM on a "time for time" basis during the period they are considered an active participant in the Delphi HRP. A Covered Employee shall be deemed an active participant in the Delphi HRP, other than for purposes of future benefit accruals and subject to the other terms of the Delphi HRP in effect and to the extent permitted by law, for all periods on or after the Freeze Date and prior to retirement or separation from service from Delphi, any Delphi Divested Operation, MLC, or GMCo.

3.  Claims in MLC's Chapter 11 Case: The IUE-CWA, USW and all Splinter Unions (as hereafter defined) that agree to applicable terms in this Settlement Agreement shall be granted an allowed prepetition unsecured claim in MLC's Chapter 11 Case in the amount of one billion dollars with respect to retiree health and life insurance benefits for the post-age-65 retirees, post-age-65 surviving spouses and under-age-65 retirees or surviving spouses disqualified for Retiree Health Care Benefits due to Medicare eligibility who are represented by IUE-CWA, USW and the Splinter Unions (the "Allowed Claim"). Age for purposes of the preceding sentence shall be determined as of December 31, 2009. The Allowed Claim shall be in full settlement, satisfaction and discharge of all claims against MLC and its affiliates and their present and former officers and directors by the IUE-CWA, USW and the Splinter Unions or any employees, retirees or other persons or beneficiaries represented by or subject to agreements entered by such unions with MLC (the "Splinter Claims") against MLC and its affiliates and their respective officers, directors. Upon approval of this Settlement Agreement by the Bankruptcy Court, any and all Splinter Claims shall be withdrawn, released and dismissed with prejudice and the IUE-CWA, USW and the Splinter Unions shall promptly take all such action necessary or required to effectuate the foregoing, including providing releases to MLC. Any funds resulting from the Allowed Claim shall be distributed in a manner as authorized by the Bankruptcy Court. To the extent approved by

the Bankruptcy Court, MLC agrees that the IUE-CWA, USW, and the Splinter Unions have a right to sell, assign or transfer their respective Allowed Claim as they deem appropriate at any time.

4. <u>Retiree Health Care Benefits - On and After July 10, 2009 and Through December 31, 2009</u>. For claims incurred on and after July 10, 2009 and through December 31, 2009, retiree health care for eligible IUE-CWA or USW retirees will be provided in accordance with the terms of the MLC Health Care Program for Hourly Employees (the "MLC Plan") as applicable to retiree members of the Covered Group as it existed on July 10, 2009. The claims described in this Paragraph 4 shall be paid by either GMCo or MLC as may be determined between GMCo and MLC. As of January 1, 2010, all obligations by either GMCo or MLC to provide retiree health care in accordance with the GM Hourly Plan shall cease and be forever terminated.   A claim is deemed incurred for purposes of this Section as of the date treatment is provided, regardless of when such treatment was scheduled and regardless of whether such treatment was part of a continuation of related treatments.

5. <u>Retiree Health Care Benefits - On and After January 1, 2010</u>. For claims incurred on or after January 1, 2010, GMCo will provide retiree health care to eligible IUE-CWA or USW retirees as follows and MLC shall have no liability or responsibility thereafter:

   a. GMCo will create a separate retiree health care plan with participation limited to eligible IUE-CWA and USW retirees and retirees affiliated with other Splinter Unions where those Splinter Unions elect, on a union-by-union basis, to participate on behalf of retirees and members who are similarly situated to the Covered Group with respect to health care in retirement and to be bound by the terms of a settlement agreement related to retiree health care and life insurance equivalent to those contained in this  Settlement Agreement. It is understood that Splinter Union retirees are not eligible for the Pension Top-Up or Up-To-7 Years Accrual as contemplated by this Settlement Agreement. The term "Splinter Union" as used in this Settlement Agreement shall include the following, including any predecessor unions where applicable:

      i.   International Association of Machinists and Aerospace Workers;

      ii.  International Brotherhood of Electrical Workers;

      iii. Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045;

      iv.  International Brotherhood of Painters and Allied Trades of the United States and Canada, Sign & Display Union Local 59;

      v.   International Brotherhood of Teamsters;

      vi.  The International Brotherhood of Boilermakers;

      vii. International Union of Operating Engineers;

Page **6** of **15**

    viii.  United Catering Restaurant Bar & Hotel Workers; and

    ix.  With respect to any Splinter Union retirees where the union has failed or refused to accept appointment as the authorized representative pursuant to 11 USC § 1114, any committee appointed by the Bankruptcy Court as the authorized representative of such Splinter Union retirees.

b.  GMCo's obligation to make contributions toward retiree health care under this plan shall be fixed and capped at the specified level of expenditures on an average annual cost per contract basis for pre-Medicare Single coverage of $4,640 and for pre-Medicare family coverage of $9,030 (the "Cap"). The total value of health care benefits under this Settlement Agreement, inclusive of benefits paid under Paragraph 4 of this Settlement Agreement, is limited to an aggregate net present benefit value of $467 million ("Aggregate Net Present Value") with respect to all eligible IUE-CWA, USW and Splinter Union participants. GMCo shall deliver the Aggregate Net Present Value to participants over time reduced on a proportionate basis with respect to Splinter Unions that elect not to participate and by amounts paid in accordance with Paragraph 5(f) ("Adjusted Value"). It is understood that GMCo's total obligation for the IUE-CWA, the USW and all Splinter Unions is limited to the Aggregate Net Present Value and that once it has been exhausted GMCo shall have no further obligation to make contributions toward health care for the Covered Group or for any covered members of Splinter Unions that elect to participate. It is further understood that the Aggregate Net Present Value shall be reduced on a proportionate basis with respect to Splinter Unions that elect not to participate. Spending against the Aggregate Net Present Value shall be determined by recording the annual health care benefit expenditures pursuant to this Settlement Agreement discounted at a rate of 7.2%. Participant contributions are not counted against the Aggregate Net Present Value and are not counted as part of the Caps in any year. At the point in time where GMCo's total amount paid reaches the Adjusted Value GMCo shall cease making any contributions toward health care for the Covered Group or covered members of Splinter Unions that elect to participate regardless of whether such participants otherwise satisfy plan eligibility criteria.

c.  The Aggregate Net Present Value was determined based upon an expected 92% rate of participation, resulting in a plan design generally in accordance with the description contained on Attachment A. Both the IUE-CWA and USW believe that the actual rate of participation will be less than 92%. The IUE-CWA and USW believe that a conservative estimate of the expected rate of participation is 82%. Therefore, GMCo agrees that it initially will configure plan design generally in accordance with the description contained on Attachment A, except that GMCo will presume a participant acceptance rate of 82% for IUE-CWA, USW and Splinter Unions that elect to participate and adjust the participant monthly contribution for 2010 to account for the estimated annual savings associated with the additional anticipated 10% of eligible participants that decline participation in the plan as offset by amounts paid to participants electing to opt-out. For 2011, after accounting for anticipated increases or decreases in health care costs, GMCo will determine the actual opt-out savings and actual amount of opt-out payments that occurred during the

2010 plan year and will adjust the 2011 plan design any differences resulting from an over or under estimation of the rate of participation or level of opt-out savings that occurred in 2010. Thereafter, GMCo will analyze and project retiree health care expenses on an annual basis, net of any additional opt-out related savings from the previous year and excluding any annual savings associated with those who previously opted-out but have since attained 65 years of age, at which time the participant would have lost eligibility for Retiree Health Care Benefits under this Settlement Agreement. GMCo will adjust the plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage without reduction in the aggregate amount of annual Cap expenditures caused by participant's loss of eligibility to participate for reasons other than mortality or Medicare eligibility, at which time the participant would have lost eligibility for Retiree Health Care Benefits under this Settlement Agreement. For the avoidance of doubt, otherwise eligible individuals will no longer be eligible for Retiree Health Care Benefits under this Settlement Agreement upon attainment age 65 or if under age 65 upon becoming Medicare eligible, subject to rules governing end stage renal disease. For periods in which the Cap is exceeded, GMCo will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in retiree health care costs in the next year. For periods in which the Cap has not been reached, GMCo will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap so they are distributed in the next plan year after adjusting for any anticipated increases in retiree health care costs in the next year.

d. GMCo will bear all costs of plan administration.

e. The IUE-CWA and USW may create an advisory committee and appoint members thereof; such advisory committee shall also include representatives of other Splinter Unions that have elected participation in accordance with this Settlement Agreement who wish to participate and who appoint their own representative members. If created, GMCo will advise the advisory committee reasonably prior to the implementation of any such adjustments of anticipated plan design adjustments deemed necessary to maintain benefit coverages within the Cap along with its rationale for any such adjustments. The advisory committee may provide advice and counsel with respect to any such adjustments, provided that GMCo may in its sole discretion accept or reject any such advice and that the process of involving the advisory committee shall not delay the ordinary and customary implementation of plan design alterations deemed necessary by GMCo to reflect the constraints of the Cap. The creation and operation of the advisory committee shall be at the expense of the unions participating in such committee and GMCo shall have no obligation to pay or to defray any cost or expense associated with creation of the committee or its operations or activities.

f. Prior to January 1, 2010, the GMCo will initiate a one-time option for participants represented by the IUE-CWA, the USW and Splinter Unions that elect to participate to elect to voluntarily decline participation in the plan and in exchange for a monetary buyout in the amounts set forth on the Opt-Out Payment Schedule on Attachment D

hereto.  Thereafter, the one-time option will be offered to eligible retirees at the inception of their participation in the plan.  All elections to opt-out of the plan are final and cannot later be revoked.

g.  With respect to contributions toward health care and life insurance in retirement pursuant to collective bargaining agreements between MLC and the IUE-CWA or the USW, MLC maintains that it had reserved the right to unilaterally amend, modify or terminate the respective plans or the benefits provided by those plans.  The IUE-CWA and the USW maintain, however, that MLC did not effectively reserve such rights and that it was prohibited from unilaterally altering health care or life insurance for retirees.  For purposes of this Settlement Agreement, the parties agree that GMCo's right to amend, modify or terminate the retiree health care or life insurance benefits set forth herein shall be to the same extent as existed under the applicable collective bargaining agreements between MLC and the IUE-CWA or the USW, respectively.  Apart from any right that GMCo may retain as a consequence of any reservation by MLC of the right to amend, modify or terminate health care in retirement, the parties agree that GMCo shall have the right to modify or amend the plan design in order to implement the Cap as set forth in this Settlement Agreement.

h.  The IUE-CWA, USW, Splinter Unions that elect to participate and all retirees/members within the scope of this agreement will not in the future seek to negotiate any modifications or changes to the health care benefits provided by GMCo.

i.  All obligations of MLC, the MLC Plan and any other MLC entity or benefit plan for health care in retirement for members of the Covered Group or any other person claiming entitlement to health care in retirement pursuant to an IUE-CWA or USW collective bargaining agreement other than as set forth herein shall be forever terminated as of the Effective Date.

6.  Basic Life Insurance:  Effective the first of the month following the Effective Date, GMCo will provide Basic Life Insurance in retirement to eligible IUE-CWA and USW retirees in the maximum fixed amount of $10,000 as provided for in attachment B of the Closure Agreement as modified according to Attachment B to this Settlement Agreement.  Retirees whose basic life insurance coverage is below $10,000 will remain at the lower amount. Current active employee members of the IUE-CWA will have Basic Life Insurance in the fixed amount of $10,000 effective upon the date of retirement.  MLC shall have no responsibility or liability for such insurance.  The IUE-CWA, USW or included members/retirees will not in the future seek to negotiate any modifications or changes to the life insurance coverages provided by GMCo.  All obligations of MLC, the MLC Plan and any other MLC entity or benefit plan for basic life insurance for the included members/retirees arising from any GM-IUE-CWA or GM-USW collective bargaining agreement shall be forever terminated as of the Effective Date.

7.  Covered Group:  The retiree health care and life insurance commitments shall apply to the "Covered Group," which shall mean:

a.  MLC employees who were represented regarding the terms and conditions of their employment with MLC by the IUE-CWA or the USW and who retired from MLC under circumstances such that they were eligible for MLC contributions toward their health care and life insurance in retirement according to the terms of an IUE-CWA or USW collective bargaining agreement with MLC in effect at the time of their retirement, and their eligible spouses, surviving spouses and dependents;

b.  All active MLC employees (including those on a leave from which they are eligible to retire from MLC) who are represented with respect to the terms and conditions of their employment with MLC by the IUE-CWA and who transfer to GMCo pursuant to GMCo's assumption of the Moraine Closure Agreement pursuant to this Settlement Agreement and who retire from GMCo under circumstances such that considering their combined MLC and GMCo service they would have qualified for MLC contributions toward health care and life insurance in retirement as determined according to criteria for such eligibility as existed in the 2003 GM-IUE-CWA National Agreement, and their eligible spouses, surviving spouses and dependents;

c.  All Delphi employees who were represented with respect to the terms and conditions of their employment with Delphi by the IUE-CWA and who applied for employment consideration with MLC under the terms of the Special Employee Placement Opportunities ("SEPO") agreement, which is Attachment G to the August 5, 2007 GM, Delphi, IUE-CWA Memorandum of Understanding, and who were hired by MLC into a UAW Represented MLC Plant in accordance with the terms of the SEPO agreement and who retired from MLC or who transfer to GMCo and retire from GMCo, under circumstances such that considering their combined Delphi, MLC and GMCo service they would have qualified for corporate contributions toward health care and life insurance in retirement as determined according to criteria for such eligibility as existed in the 2003 GM-IUE-CWA National Agreement, and their eligible spouses, surviving spouses and dependents;

d.  All Delphi employees who were represented with respect to the terms and conditions of their employment with Delphi by the IUE-CWA and who are within the definition of "Covered Employees" as that term is used in Section 17.A. of the Attachment B to the IUE-Delphi-GM Memorandum of Understanding Delphi Restructuring dated August 5, 2007 or who were represented by the USW and who are within the definition of "Covered Employees" as that term is used in Section 17.A. of the Attachment B to the USW-Delphi-GM Memorandum of Understanding Delphi Restructuring dated August 16, 2007, and who satisfy the criteria described therein such that upon their retirement they would have qualified for contributions toward health care and life insurance in retirement from GM/MCL, and their eligible spouses, surviving spouses and dependents;

e.  The term "surviving spouses" shall include surviving spouses of a Covered Group retiree as well as surviving spouses of Covered Group active employees who died or die prior to retirement under circumstances such that at the time of death the employee would have been eligible to retire under circumstances meeting any of the Covered Group classifications (a, b, c and d).

8.  Assumption of the Moraine Closure Agreement: As of the Effective Date, GMCo will assume the terms and conditions of the Closure Agreement but only as modified during these negotiations as set forth on Attachment C.  Assumption of the terms and conditions of the Closure Agreement shall not constitute assumption of MLC's pre-Closing Liabilities under the Closure Agreement or assumption of any collective bargaining agreements outside the scope of the Closure Agreement, including, without limitation, memorandums of understanding regarding Delphi restructuring.

9.  Release: Except as related to claim arising from an alleged breach of obligations set forth herein, as of the Effective Date, the IUE-CWA, the USW and all Covered Employees and members of the Covered Group and all persons claiming entitlement to health care or life insurance in retirement pursuant to an IUE-CWA or USW collective bargaining agreement release and forever discharge GMCo, its predecessors and its current or former officers, directors, employees, agents, subsidiaries, affiliates, and any and all of its welfare and pension benefit plans and their fiduciaries, with respect to any and all rights, claims or causes of action that any of them have or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to any claim arising out of their employment with MLC, including, without limitation, alleged breaches of a collective bargaining agreement, the Combs Settlement, concerning any alleged entitlement to health care in retirement, any alleged entitlement to life insurance in retirement, and any claim the basis for which is predicated upon an allegation that GMCo is a successor to MLC.  The term "collective bargaining agreement" is intended to have the broadest possible interpretation, inclusive of any and all national agreements or memorandums of understanding entered between MLC and the IUE-CWA or MLC and the USW, or their predecessors, whether individually or collectively, written or oral or as a matter of custom and practice.

10.  Waiver and Release: Other than as set forth in paragraph 3 with respect to the Allowed Claim, the IUE-CWA and USW as authorized Bankruptcy Code section 1114 and 1113 representatives withdraw with prejudice all claims filed or otherwise made against GM or MLC and their subsidiaries, and their employees, officers, directors and agents, relating to retiree health care benefits and basic life insurance and pursuant to any GM-IUE-CWA and GM-USW collective bargaining Agreements or otherwise, and agree not to bring any such claims in the future, and furthermore, on their own behalf and on behalf of all represented members/retirees, release and forever discharge MLC, and its current or former officers, directors, employees, agents, subsidiaries, affiliates and any and all of its welfare and pension benefit plans and their fiduciaries, with respect to any and all rights, claims or causes of action that any of them have or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to any claim arising out of their employment with MLC, including, without limitation, alleged breaches of a collective bargaining agreement, the Combs Settlement, any alleged entitlement to heath care in retirement, and any alleged entitlement to life insurance in retirement.

11.  The Order to be presented to the Bankruptcy Court approving this Settlement Agreement shall include a release from all liability of the Communications Workers of America, the IUE-CWA and USW and their local unions and any Splinter Union that elects to participate,

including each of their current and former officers, members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents and other representatives in connection with or related to the MLC Chapter 11 Case, the formulation, preparation, negotiation, dissemination, implementation, administration, or consummation of this Settlement Agreement, or any Section 1113 or Section 1114 proceedings.

12. Appeal: The IUE-CWA shall withdraw all appeals with respect to bankruptcy court approval of the sale of substantially all MLC's assets to GMCo.

13. Effective Date: This Settlement Agreement is expressly conditioned upon approval of the Bankruptcy Court in the MLC Chapter 11 Case. The Effective Date of this Settlement Agreement shall be the date upon which an Order approving this Settlement Agreement in all material respects and in a form reasonably satisfactory to the parties, is entered by the Bankruptcy Court; provided, however that if such Order is overturned on appeal or otherwise such that there is or may be a material negative impact on the rights, obligations or benefits provided hereunder to the Parties hereto, the party experiencing the material negative impact may terminate this Settlement Agreement upon 30 days' written notice to the other parties and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

14. Dispute Resolution: Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement may be asserted only by GMCo, MLC, IUE-CWA or USW. The Order approving this Settlement Agreement will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement. In the event that the bankruptcy case has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the U.S. District Court for the Eastern District of Michigan (the "Court"). Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum non conveniens. Nothing in this Settlement Agreement precludes members of the Covered Group, in connection with disputes arising out of the plan, from pursuing appropriate judicial review regarding disputes after exhaustion of administrative remedies.

15. Integration: This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement. This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

16. Counterparts: This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

17. <u>Assignment</u>: Except as otherwise expressly stated herein, no party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

18. <u>Cooperation</u>: Each of the parties hereto shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

19. <u>IUE Actuarial Professional Fees – VEBA negotiations</u>: GMCo will reimburse the IUE-CWA for amounts necessarily incurred and actually paid to actuarial experts for purposes of evaluating the prospect of entering a VEBA settlement agreement between General Motors Corporation and the IUE-CWA during the period April 1, 2008 through December 31, 2008 upon submission of paid invoices up to a an aggregated maximum for all such invoices of $70,000.

20. Definitions:

   a. <u>Adjusted Value</u> - The term "Adjusted Value" shall have the meaning ascribed to it in Paragraph 5(b) of this Settlement Agreement.

   b. <u>Aggregate Net Present Value</u> - The term "Aggregate Net Present Value" shall have the meaning ascribed to it in Paragraph 5(b) of this Settlement Agreement.

   c. <u>Allowed Claim</u> - The term "Allowed Claims" shall have the meaning ascribed to it in Paragraph 3 of this Settlement Agreement.

   d. <u>Bankruptcy Code</u> - The term "Bankruptcy Code" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

   e. <u>Bankruptcy Court</u> - The term "Bankruptcy Court" shall have the meaning ascribed to it in the second paragraph of the preamble to this Settlement Agreement.

   f. <u>Cap</u> - The term "Cap" shall have the meaning ascribed to it in Paragraph 5(b) of this Settlement Agreement.

   g. <u>Combs</u> - The term "Combs" shall have the meaning ascribed to it in the second paragraph of the preamble to this Settlement Agreement.

   h. <u>Combs Settlement</u> - The term "Combs Settlement" shall have the meaning ascribed to it in the second paragraph of the preamble to this Settlement Agreement.

   i. <u>Court</u> - The term "Court" shall have the meaning ascribed to it in Paragraph 14 of this Settlement Agreement.

   j. <u>Delphi</u> - The term "Delphi" shall have the meaning ascribed to it in the third paragraph of the preamble to this Settlement Agreement.

k.  Delphi Divested Operation - The term "Delphi Divested Operation" shall have the meaning ascribed to it in Paragraph 2(a) of this Settlement Agreement.

l.  Delphi HRP - The term "Delphi HRP" shall have the meaning ascribed to it in Paragraph 1 of this Settlement Agreement.

m.  Effective Date - The term "Effective Date" shall have the meaning ascribed to it in Paragraph 13 of this Settlement Agreement.

n.  Freeze Date - The term "Freeze Date" shall have the meaning ascribed to it in Paragraph 2(a) of this Settlement Agreement.

o.  GMCo - The term "GMCo" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

p.  GMCo HRP - The term "GMCo HRP" shall have the meaning ascribed to it in Paragraph 2 of this Settlement Agreement.

q.  IUE-CWA -The term "IUE-CWA" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

r.  MLC - The term "MLC" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

s.  MLC Chapter 11 Case - The term "MLC Chapter 11 Case" shall have the meaning ascribed to it in the second paragraph of the preamble to this Settlement Agreement.

t.  MLC Plan - The term "MLC Plan" shall have the meaning ascribed to it in Paragraph 4 of this Settlement Agreement.

u.  Modified Plan - The term "Modified Plan" shall have the meaning ascribed to it in Paragraph 1(c) of this Settlement Agreement.

v.  PBGC - The term "PBGC" shall have the meaning ascribed to it in Paragraph 2(a) of this Settlement Agreement.

w.  Splinter Claims - The term "Splinter Claims" shall have the meaning ascribed to it in Paragraph 3 of this Settlement Agreement.

x.  SEPO - The term "SEPO" shall have the meaning ascribed to it in Paragraph 7(c) of this Settlement Agreement.

y.  Splinter Union - The term "Splinter Union" shall have the meaning ascribed to it in Paragraph 5(a) of this Settlement Agreement.

z.  Up-to-7-Effective Date - The term "Up-to-7-Effective Date" shall have the meaning ascribed to it in Paragraph 2(a) of this Settlement Agreement.

aa. <u>USW</u> - The term "USW" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED**

General Motors Company

_____                    Date: _____2009
By:

Motors Liquidation Company

_____                    Date: _____2009
By:

IUE-CWA, the Industrial Division of the
Communications Workers of America, AFL-CIO,
CLC                                                 Date: _____2009

_____
By:

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-           Date: _____2009
CIO,CLC

_____
By:

aa. <u>USW</u> - The term "USW" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED**

General Motors Company

By: _D Scott Kemlefer_                               Date: _8 / z /_ 2009

Motors Liquidation Company

By: _____               Date: _____ 2009

IUE-CWA, the Industrial Division of the
Communications Workers of America, AFL-CIO,
CLC                                                 Date: _____ 2009

By: _____

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-           Date: _____ 2009
CIO,CLC

By: _____

aa. <u>USW</u> - The term "USW" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED**

General Motors Company

_____     Date: _____ 2009
By:

Motors Liquidation Company

_____     Date: _Sepr. 10_ 2009
By: A.A. Koch

IUE-CWA, the Industrial Division of the
Communications Workers of America, AFL-CIO,
CLC                                  Date: _____ 2009

_____
By:

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-        Date: _____ 2009
CIO,CLC

_____
By:

aa. <u>USW</u> - The term "USW" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED**

General Motors Company

_____          Date: _____2009
By:

Motors Liquidation Company

_____          Date: _____2009
By:

IUE-CWA, the Industrial Division of the
Communications Workers of America, AFL-CIO,          Date: __9/3/__2009
CLC

_____
By:

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and          Date: _____2009
Service Workers International Union, AFL-
CIO,CLC

_____
By:

Page **15** of **15**

aa. <u>USW</u> - The term "USW" shall have the meaning ascribed to it in the first paragraph of the preamble to this Settlement Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED**

General Motors Company

_____           Date: _____2009
By:

Motors Liquidation Company

_____           Date: _____2009
By:

IUE-CWA, the Industrial Division of the
Communications Workers of America, AFL-CIO,
CLC                                          Date: _____2009

_____
By:

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-        Date: 09/03_____2009
CIO,CLC
_____
By:

SETTLEMENT AGREEMENT – ATTACHMENT A
General Description of Retiree Medical Plan[1]

The following reflects a general description of the level of Retiree Medical Benefit coverage contemplated as of January 1, 2010:

| Plan Offering | • Nationwide HSA-qualified PPO |
|---|---|
| Monthly Contributions<br>Supporting a total OPEB liability of $467 million for IUE/USW/Other Splinter Unions | • $95 (single)<br>• $140 (two)<br>• $180 (three or more) |
| Annual Deductible | • $2,500 (single)<br>• $5,000 (family) (single member may satisfy) |
| Medical Co-Insurance (after deductible) | • 20% (in-network)<br>• 40% (out of network) |
| Out-of-Pocket Maximum | • $3,500 (single)<br>• $7,000 (family) (single member may satisfy) |
| Behavioral Health (after deductible) | • Same as medical. |
| Rx Retail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| Rx Mail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| Vision Program | No longer offered. |
| Dental Program | No longer offered. |
| Coverage Termination (Participant level) | • Retirees, surviving spouses, and eligible dependents who are age 65 or older, and<br>• Retirees, surviving spouses, and eligible dependents who are under age 65 but eligible for Medicare. |

---

[1] This plan description is provided as a general description of the plan design anticipated to be within the limits of the Caps which support a $467 million total liability to be measured from 7/10/2009 forward using an annual discount rate of 7.2%.

## SETTLEMENT AGREEMENT – ATTACHMENT B

**ATTACHMENT B**          **IUE-CWA**
Modifications to the 2003 Supplemental Agreement  - Life and Disability Benefits
Program

The following is a list of proposed changes to the Life and Disability Benefits
Program:

### Sickness and Accident (S&A) and Extended Disability Benefits (EDB)

- For an employee to be deemed to be wholly and continuously disabled
  under the provisions of Article II, Section 6(a) and Article II, Section 7(a),
  the employee must provide medical evidence, satisfactory to the Carrier
  (third party administrator) that substantiates total disability, i.e., medical
  substantiation. Absent medical information that substantiates total
  disability, the employee's claim for benefits under the Program will be
  denied. This will be effective for all employees' currently on a disability
  leave or any future disability leaves. New claim forms will be created for
  this process and will be distributed to all employees on claim.

### Basic Life, Extra Accident, and Survivor Income Benefit Insurance

- Article II, Section 1 – eliminate Continuing Life at age 65 from schedule –
  Article II, Section 1 will only pertain to employees prior to retirement.

- Article II, Section 2 – eliminate Continuing Life at age 65.  Article II,
  Section 2 will only pertain to employees after retirement.  Basic Life
  Insurance amount will be a maximum of $10,000 for all current retirees
  and future retirees.

- Article II, Section 3 – eliminate Extra Accident Insurance for all current
  retirees and future retirees.

- Miscellaneous modifications that relate to changes for Basic Life

  Article III, Section 3(e)
  Article III, Section 4(b) and (c)
  Article IV, Section 1(c)

For the International IUE-CWA:                    For General Motors Company:

_____                    _____

## SETTLEMENT AGREEMENT – ATTACHMENT B

**ATTACHMENT B**              **IUE-CWA**
Modifications to the 2003 Supplemental Agreement  - Life and Disability Benefits
Program
_____

_____          _____

Dated:

**ATTACHMENT B**                    **IUE-CWA**
Modifications to the 2003 Supplemental Agreement  - Life and Disability Benefits
Program

The following is a list of proposed changes to the Life and Disability Benefits
Program:

**Sickness and Accident (S&A) and**
**Extended Disability Benefits (EDB)**

- For an employee to be deemed to be wholly and continuously disabled
  under the provisions of Article II, Section 6(a) and Article II, Section 7(a),
  the employee must provide medical evidence, satisfactory to the Carrier
  (third party administrator) that substantiates total disability, i.e., medical
  substantiation. Absent medical information that substantiates total
  disability, the employee's claim for benefits under the Program will be
  denied. This will be effective for all employees' currently on a disability
  leave or any future disability leaves. New claim forms will be created for
  this process and will be distributed to all employees on claim.

**Basic Life, Extra Accident, and**
**Survivor Income Benefit Insurance**

- Article II, Section 1 – eliminate Continuing Life at age 65 from schedule –
  Article II, Section 1 will only pertain to employees prior to retirement.

- Article II, Section 2 – eliminate Continuing Life at age 65.  Article II,
  Section 2 will only pertain to employees after retirement.  Basic Life
  Insurance amount will be a maximum of $10,000 for all current retirees
  and future retirees.

- Article II, Section 3 – eliminate Extra Accident Insurance for all current
  retirees and future retirees.

- Miscellaneous modifications that relate to changes for Basic Life

  Article III, Section 3(e)
  Article III, Section 4(b) and (c)
  Article IV, Section 1(c)

For the International IUE-CWA:                    For General Motors Company:

_____                    _____

_____9/3/09_____                             _____9/3/09_____
Dated:

# SETTLEMENT AGREEMENT ATTACHMENT C

## Agreement between General Motors Company and the IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO and its Local Union 798

This Agreement shall constitute an Addendum to the 2008 Moraine Closure Agreement.

The following paragraphs, documents, and memoranda contained in the 2008 Moraine Closure Agreement shall be amended as follows:

- Cost of Living payable, Paragraphs (65d) – (65I) is eliminated
- Performance Bonus Payments, Paragraph (65)(b)(2) is eliminated
- Individual Upward Educational Plan, Document 21 is eliminated December 31, 2009
- Retiree Individual Upward Educational Plan, Document 25 is eliminated December 31, 2009
- IUE-CWA-GM Scholarship Program For Dependent Children, Document 57 is eliminated December 31, 2009
- Section 5 of the Closure Agreement relating to Supplemental Unemployment Benefit (SUB) is modified (See Attachment A)
    - Note the provisions identified above were settled similar in scope to those settled with the UAW
- Section 16 of the Closure Agreement is eliminated
- Joint Activities, Document 73 is modified to reflect a final settlement of $450,000 to be paid with installments of $225,000 in the first quarter 2010 and $225,000 in the first quarter of 2011
- Memorandum of Understanding Moraine Assembly Closure Agreement Special Attrition Program

    Option 5 "Special Employee Hiring Opportunities GM-IUE-CWA Moraine Assembly Plant" is eliminated for General Motors Company.  Those employees who elected Option 5 will be allowed to rescind their application in accordance with the Option 5 provisions during a two (2) week time period identified by Management. Employees who do not rescind their application will remain on layoff with applicable SUB.

- Life and Disability Benefits Program (See Attachment B)

The parties agree that the provisions of the 2008 Moraine Closure Agreement not amended by these negotiations, the Term Sheet or the General Motors Company- IUE-CWA Settlement Agreement shall remain in force as outlined in the Closure Agreement.

General Motors Company

IUE-CWA
Industrial Division of
The Communications Workers of
America, AFL-CIO and its Local  798

By: _D. A. Hanley_

By: _James D Clark_
_9/3/09_

Dated: _9/3/09_

**SETTLEMENT AGREEMENT - Attachment C continued**

**IUE-CAW**
Modifications to the 2003 Supplemental Unemployment Benefit Plan and
Guaranteed Income Stream Programs
Attachment A

---

This document further modifies the (10/16/08) Closure Agreement and the
Supplemental Unemployment Benefit Plan and Guaranteed Income Stream
Program Closure Agreement 9/23/08 Closure Agreement - Attachment B.

For employees who remain on layoff as of the effective date of this Agreement
(7/22/09), and who are eligible for 104 weeks of SUB benefits as provided for in
the Supplemental Unemployment Benefit Plan and Guaranteed Income Stream
Program Closure Agreement 9/23/08 Closure Agreement - Attachment B, the
SUB benefit for weeks 53 through 104, if eligible, will be calculated as follows:

- The weekly benefit payment will be 50% of the employee's gross weekly
  wages, based on a 40-hour week, less any Unemployment Compensation
  and applicable taxes.

For the International IUE-CWA:                    For General Motors Company:

_____                    _____

_____                    _____
9/3/09                                           9/3/09

Dated:

## SETTLEMENT AGREEMENT – Attachment C continued

**ATTACHMENT B**          **IUE-CWA**
Modifications to the 2003 Supplemental Agreement  - Life and Disability Benefits
Program

The following is a list of proposed changes to the Life and Disability Benefits
Program:

**Sickness and Accident (S&A) and
Extended Disability Benefits (EDB)**

- For an employee to be deemed to be wholly and continuously disabled
  under the provisions of Article II, Section 6(a) and Article II, Section 7(a),
  the employee must provide medical evidence, satisfactory to the Carrier
  (third party administrator) that substantiates total disability, i.e., medical
  substantiation. Absent medical information that substantiates total
  disability, the employee's claim for benefits under the Program will be
  denied. This will be effective for all employees' currently on a disability
  leave or any future disability leaves. New claim forms will be created for
  this process and will be distributed to all employees on claim.

**Basic Life, Extra Accident, and
Survivor Income Benefit Insurance**

- Article II, Section 1 – eliminate Continuing Life at age 65 from schedule –
  Article II, Section 1 will only pertain to employees prior to retirement.

- Article II, Section 2 – eliminate Continuing Life at age 65.  Article II,
  Section 2 will only pertain to employees after retirement.  Basic Life
  Insurance amount will be a maximum of $10,000 for all current retirees
  and future retirees.

- Article II, Section 3 – eliminate Extra Accident Insurance for all current
  retirees and future retirees.

- Miscellaneous modifications that relate to changes for Basic Life

  Article III, Section 3(e)
  Article III, Section 4(b) and (c)
  Article IV, Section 1(c)

For the International IUE-CWA:

Dated: 9/3/09

For General Motors Company:

9/3/09

## SETTLEMENT AGREEMENT - ATTACHMENT D

### Opt-Out Payment Schedule

| AGE | SINGLE | FAMILY |
|---|---|---|
| 64 | $1,120 | $2,180 |
| 63 | $2,165 | $4,214 |
| 62 | $3,140 | $6,112 |
| 61 | $4,050 | $7,882 |
| 60 | $4,898 | $9,533 |
| 59 | $5,690 | $11,073 |
| 58 | $6,428 | $12,509 |
| 57 | $7,116 | $13,850 |
| 56 | $7,759 | $15,100 |
| 55 & Below | $8,358 | $16,266 |

1) The amount payable during the initial one-time option referenced in Paragraph 5(f) of the Settlement Agreement shall be based upon retiree or surviving spouse age and coverage status (i.e. single/family) as of January 1, 2010.

2) The amount payable for those retiring after the Effective Date shall be based upon retiree or surviving spouse age and coverage status as of the date of retirement.

3) Eligibility for an opt-out election is limited to retirees and surviving spouses of the Covered Group who are under age 65 and to dependents aged 18 to 24 of a retirees or surviving spouses of the Covered Group who are age 65 or older where the dependant qualifies for continued coverage under the plan terms due to status as a full time student (Student-Dependent). The Student-Dependent opt-out payment shall be determined according to the "Single" benefit amount based upon the number of years until the Student-Dependent reaches age 24. For example, for a Student-Dependent aged 22 the "Single" benefit amount associated with age 63, above, would apply, representing two years of coverage remaining until the student-dependent reaches age 24. Although non Student-dependents will continue to qualify for coverage under the terms of this agreement they are not eligible for an opt-out payment. The amount payable for the initial one-time option for Student-Dependents as described herein shall be based on their age and status as of January 1, 2010. The amount payable to Student-Dependents of age 65 or over Covered Group members who retire after the Effective Date shall be based upon the Student-Dependant's age and status as of the date that such Covered Group member retires. In instances where there are two or more student-dependents under the same Covered Group sponsor, they each will qualify for a "Single" opt-out payment as applicable.

Page 1 of 2

4) Retirees or surviving spouses of the Covered Group who are members of the same family where each has or will have opt-out eligibility based upon retiree status each shall be entitled to a "Single" opt-out benefit only, regardless of the timing of their respective election. For example, where A and B are married and both are members of the Covered Group and A is currently retired and B is a current GMCo employee who upon retirement would be eligible to make an opt-out election, then A is entitled to a "Single" benefit payment upon exercise of the one-time voluntary election to opt-out and B is entitled to a "Single" benefit payment upon exercise of the one-time voluntary election to opt-out upon retirement, but neither is eligible to receive a "Family" benefit payment.

**Exhibit B**

(**Union Settlement Order**)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                          :
In re                                     :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                          :
                    **Debtors.**          :          **(Jointly Administered)**
                                          :
-------------------------------------------------------------x


### ORDER PURSUANT TO SECTIONS 363(b) AND 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(a) APPROVING SETTLEMENT AGREEMENT WITH CERTAIN LABOR UNIONS

Upon the Motion, dated October 14, 2009 (the "**Motion**")[1], of Motors Liquidation

Company (formerly, General Motors Corporation ("**MLC**")) and its affiliated debtors, as debtors

and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),

for an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule

9019(a) approving that certain Settlement Agreement Between and Among GMCo/MLC-IUE-

CWA and USW Regarding Retiree Health Care, Life Insurance, Pension Top-Up, and

Modification and GMCO Assumption of MLC-IUE-CWA CBA, a copy of which is annexed to

the Motion as Exhibit A (the **"Settlement Agreement"**), and authorizing the Debtors to perform

all of their obligations thereunder, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided; and a hearing having been held in

---

1 Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

respect of the Motion on November 12, 2009 (the **"Hearing"**); and the Debtors having noted on

the record of the Hearing that the following Splinter Unions have became Participating Splinter

Unions:  (i) International Brotherhood of Electrical Workers (**"IBEW"**), (ii) Michigan Regional

Council of Carpenters, Local 687 and Interior Systems, Local 1045 (**"Carpenters and**

**Interior"**), (iii) International Brotherhood of Painters and Allied Trades of the United States and

Canada, Sign & Display Union Local 59 (**"IBPA"**), (iv) International Union of Operating

Engineers Locals 101(S), 832(S) and 18(S) (collectively, the **"IUOE"**), and (iv) United Catering

Restaurant Bar & Hotel Workers (**"UCW"**); and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and upon the record of the Hearing; and after due deliberation and

sufficient cause appearing therefor, it is:

ORDERED that the Motion is granted; and it is further

ORDERED that the Settlement Agreement is hereby approved; and it is further

ORDERED that each of the IBEW, Carpenters and Interior, IBPA, IUOE and

UCW are Participating Splinter Unions; and it is further

ORDERED that the Debtors are authorized and directed to implement and to

perform all of their obligations under the Settlement Agreement; and it is further

ORDERED that the Unions and the Participating Splinter Unions be, and hereby

are, granted an allowed, prepetition, general unsecured claim in MLC's chapter 11 case in an

amount equal to such union's respective **"Percentage Share"** of the aggregate amount of $1

billion (the "**Allowed Claim**").  For purposes hereof, the **"Percentage Share"** of each of the

Unions and the Participating Splinter Unions is set forth on Exhibit A annexed hereto; and it is further

ORDERED that the Unions and the Participating Splinter Unions referenced in the third decretal paragraph hereof shall not be required to file a proof of claim with respect to their respective Percentage Shares of the Allowed Claim; and it is further

ORDERED that the Allowed Claim shall be in full settlement and satisfaction of any and all claims that the Unions, the Participating Splinter Unions, any and all employees, retirees or other persons or beneficiaries represented by or subject to agreements entered by the Unions and the Participating Splinter Unions with MLC have against MLC, the other Debtors and their respective affiliates, officers and directors; and it is further

ORDERED that, except for the Allowed Claim, the Unions and the Participating Splinter Unions, as authorized Bankruptcy Code section 1114 and 1113 representatives, shall promptly withdraw, with prejudice, all claims filed or otherwise made against MLC, the other Debtors, General Motors LLC (f/k/a General Motors Corporation) and their respective subsidiaries, employees, officers, directors, and agents relating to retiree health care benefits and basic life insurance and pursuant to any collective bargaining agreements, or any other claims, and shall not bring or assert any such claims against any such entities in the future; and it is further

ORDERED that, except for the Allowed Claim, the Unions and all Participating Splinter Unions, as authorized Bankruptcy Code section 1114 and 1113 representatives, on their own behalf and on behalf of all represented members, employees, beneficiaries and/or retirees, hereby release, and are deemed to release, and forever discharge MLC, the other Debtors, General Motors LLC (f/k/a General Motors Corporation) and their respective current or former

officers, directors, employees, agents, subsidiaries, affiliates and any and all of their welfare and

pension benefit plans and their fiduciaries, with respect to any and all rights, claims or causes of

action that any of them have or may have, known or unknown, arising out of, based upon or

otherwise related to any claim arising out of their employment with MLC and/or General Motors

LLC (f/k/a General Motors Corporation), including, without limitation, any claim or cause of

action with respect to alleged breaches of a collective bargaining agreement, the Combs

Settlement, any alleged entitlement to health care in retirement and any alleged entitlement to

life insurance in retirement; and it is further

ORDERED that within five (5) business days of the date of this Order, the IUE-

CWA shall withdraw the Appeal, with prejudice; and it is further

ORDERED that, as provided in the Settlement Agreement, the Communication

Workers of America, the IUE-CWA and USW and their local unions and the Participating

Splinter Unions, including each of their respective current and former officers, members,

employees, advisors, attorneys, accountants, investment bankers, consultants, agents and other

representatives in connection with or related to these chapter 11 cases, shall be released from all

liability arising from or related to the formulation, preparation, negotiation, dissemination,

implementation, administration, or consummation of the Settlement Agreement, or any section 1113 or section 1114 proceedings; and it is further

ORDERED that if by the date MLC makes an initial distribution to prepetition unsecured creditors pursuant to a confirmed chapter 11 plan, any of the Splinter Unions constituting the International Association of Machinists and Aerospace Workers, the International Brotherhood of Teamsters or the International Brotherhood of Boilermakers has not become a party to an agreement with MLC granting to them their Percentage Share of the Allowed Claim, then such Percentage Share of the Allowed Claim attributable to any such Splinter Union shall be reallocated ratably among the Unions, the Participating Splinter Unions and those Splinter Unions that have became party to such an agreement; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the Settlement Agreement and/or this Order.


Dated: November _12_, 2009
       New York, New York


                         _s/ Robert E. Gerber_
                         UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

| | UNION | PERCENTAGE SHARE |
|---|---|---|
| 1. | IUE-CWA | 79.39% |
| 2. | USW | 14.73% |
| 3. | International Association of Machinists and Aerospace Workers | 4.32% |
| 4. | International Brotherhood of Electrical Workers | 0.42% |
| 5. | Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045 | 0.29% |
| 6. | International Brotherhood of Painters & Allied Trades of the U.S. and Canada, Sign & Display Union Local 59 | 0.09% |
| 7. | International Brotherhood of Teamsters | 0.25% |
| 8. | International Brotherhood of Boilermakers | 0.10% |
| 9. | International Union of Operating Engineers | 0.18% |
| 10. | United Catering Restaurant Bar & Hotel Workers | 0.23% |

**<u>Exhibit C</u>**
(**<u>Proposed Order</u>**)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                               :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE PROVIDING OF CERTAIN RETIREE BENEFITS CONSISTENT WITH UNION SETTLEMENT AGREEMENT BY GENERAL MOTORS LLC AND (II) GRANTING PARTICIPATION IN GENERAL UNSECURED CLAIM

Upon the Motion, dated February 8, 2011 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors and

debtors in possession (collectively, the "**Debtors**"), for an order pursuant to sections 105(a) and

363(b) of the Bankruptcy Code authorizing (i) the providing of certain retiree benefits by

General Motors LLC ("**New GM**") and (ii) granting a participation in a prepetition general

unsecured claim to certain retirees formerly members of the International Brotherhood of

Boilermakers, all as more fully set forth in the Motion; and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Retirees shall be entitled to receive the health care and life

insurance benefits (collectively, the "**Benefits**"), provided for in paragraphs 5 (other than

subparagraph 5(f)) and 6 of the Union Settlement Agreement, provided that amounts paid to the

Retirees for retiree health care benefits for the period July 10, 2009 through and including

December 31, 2009 shall be applied against the Aggregate Net Present Value as specified in

subparagraph 5(b) of the Union Settlement Agreement on a dollar-for-dollar basis and shall not

be subject to the discount set forth in such subparagraph; and it is further

ORDERED that, as a condition to receiving the Benefits and the Percentage Share

of the Allowed Claim (i) the Retirees shall be deemed to be bound by Paragraphs 5 (other than

subparagraph 5(f)), 6, 9, 15, 17, 18, and 20 of the Union Settlement Agreement, and (ii) except

as to claims arising from an alleged breach of the provisions of the Union Settlement Agreement

applicable to the Retirees, the Retirees and all persons claiming entitlement to health care or life

insurance on their behalf or as a dependent or surviving spouse of a Retiree, shall be deemed to

release and forever discharge New GM, its predecessors, and its current or former officers,

directors, employees, agents, subsidiaries, parents, affiliates, and any and all of its welfare and

pension benefit plans and their fiduciaries, with respect to any and all rights, claims, or causes of

action that any of them have or hereafter may have, whether known or unknown, suspected or

unsuspected, concealed or hidden, arising out of, based upon or otherwise related to any claim

arising out of their employment with MLC, including, without limitation, alleged breaches of a

collective bargaining agreement, concerning any alleged entitlement to health care in retirement,

any alleged entitlement to life insurance in retirement, and any claim the basis for which is

predicated upon an allegation that New GM is a successor to MLC.  The term "collective

bargaining agreement" as used herein is intended to have the broadest possible interpretation,

inclusive of any and all national agreements or memorandums of understanding entered between

MLC and the IBB, whether individually or collectively, written or oral or as a matter of custom

and practice; and it is further

      ORDERED that, as applicable to the Retirees, paragraph 7 of the Union

Settlement Agreement shall apply in principle, but the term "Covered Group" as used therein

shall mean:  all MLC employees who were represented with respect to the terms and conditions

of their employment with MLC by the IBB (or an IBB union predecessor) and who retired from

MLC under circumstances such that they were eligible for MLC contributions to their health care

in retirement according to the terms of a MLC-IBB Union collective bargaining agreement in

effect at the time of their retirement, and their spouses, surviving spouses, and dependents; and it

is further

      ORDERED that, as applicable to the Retirees, for purposes of Paragraph 7 of the

Union Settlement Agreement, the term "surviving spouses" shall include:  surviving spouses of a

Covered Group retiree who died prior to retirement under circumstances such that at the time of

death the employee would have been eligible to retire under circumstances meeting the Covered

Group classification set forth in the preceding paragraph; and it is further

      ORDERED that the Retirees are collectively granted an allowed, prepetition,

general unsecured claim in MLC's chapter 11 case in an aggregate amount equal to the

"**Percentage Share**" of the IBB of the aggregate amount of $1 billion (the "**Allowed Claim**").

For purposes hereof, the "**Percentage Share**" allocable to the Retirees is set forth on Exhibit "A"

3

to the Union Settlement Order and to this Order.  The manner in which any distributions will be made to the individual Retirees with respect to the foregoing will be subject to further order of the Court; and it is further

ORDERED that until such time as these chapter 11 cases are closed, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order and thereafter any litigation with respect thereto shall be brought solely in the United States District Court for the Eastern District of Michigan.

Dated: New York, New York
         _____, 2011

_____
United States Bankruptcy Judge

# EXHIBIT A

|     | UNION | PERCENTAGE SHARE |
| --- | --- | --- |
| 1. | IUE-CWA | 79.39% |
| 2. | USW | 14.73% |
| 3. | International Association of Machinists and Aerospace Workers | 4.32% |
| 4. | International Brotherhood of Electrical Workers | 0.42% |
| 5. | Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045 | 0.29% |
| 6. | International Brotherhood of Painters & Allied Trades of the U.S. and Canada, Sign & Display Union Local 59 | 0.09% |
| 7. | International Brotherhood of Teamsters | 0.25% |
| 8. | International Brotherhood of Boilermakers | 0.10% |
| 9. | International Union of Operating Engineers | 0.18% |
| 10. | United Catering Restaurant Bar & Hotel Workers | 0.23% |