February 2, 2011

Honorable Robert E Gerber
United States Bankruptcy Judge
Room 621
United States Bankruptcy Court
For the District of New York
One Bowling Green, NY,NY 10004

Re: MOTORS LIQUIDATION COMPANY, ET AL.,
    F/K/A General Motors Corp,. et al
    Debtors

Dear Honorable Robert F. Gerber, Judge

I was very surprise that the Legal Counsel for the Debtor Motors Liquidation
Company/General Motors had made a Notice Of Debtors" 165[th] Omnibus Objection To
Claims And Motion Requesting Enforcement Of Bar Date Orders (Late–Filed Claims), in
which I, Brandon J Davis was listed in their "Exhibit A".(see attachment). This "Exhibit
A" is an Objection that seek to disallow and expunge certain proofs of claims
which names where located in it.

OBJECTIONS

1. I object to this motion because I never received adequate and sufficient notice of
   the Bar Date Orders by publication, (collectively, the "unknown Creditors" as
   specified as # 2in the Motion
2. It states in #7 of this motion that "In addition to requiring the Debtors to provide
   actual notice of the Bar Date to all parties known to have claims against the
   Debtors, each of the Bar Date Orders authorized the Debtors to provide notice of
   the Bar Date by publication. which, as provided for in the Bar Orders, :shall be
   deemed good adequate and sufficient publication notice of the Bar Date] and the
   procedures for filing Proofs of Claim in these cases{.}". This was not done
   because I am a Claimant, and I have presented records to the Debtors and the
   Court in my letter of September 7, 2010 which list the dates of my claims, which
   were prior to the Bar Date of 11-30-2009. (see attached letter dated Sept. 7, 2010).
3. It is stated in #8 of this motion that "After the applicable Bar Date, the Late-Filed
   Claims, were periodically received from the Unknown Creditors who did not
   receive actual notice of the Bar Date Orders because they were unknown to the
   Debtors as having potential claims and, furthermore, the Debtors could not have
   known of the potential claims of the Unknown Creditors, and/or their identity,
   through an inspection of their books and records or other reasonable
   investigation." I Brandon J. Davis totally object to this statement because the
   Debtor did know that I had a claim prior to the Bar Date, these claims were
   documented and all forwarded to the Debtor or his Legal Representative and a

copy has been forwarded to the debtor's Legal Team and listed in my letter of September 7 2010 . (see attachment)
4. It is stated in #11 "In differentiating between a "known creditor and an "unknown" creditor, the guiding principle is that the latter is one whose identity and /or claim is not "reasonably ascertainable" or is merely conceivable or speculative" In turn, a creditor's identity or claim is not "reasonably ascertainable" if it cannot be uncovered by a debtor through "reasonably diligent efforts". However, a debtor need not engage in extended searches where the effectiveness of such a search is outweighed by its practical difficulties or high cost. Trully in the case of Brandon J. Davis, based on the documents on file, he should be listed as a "known creditor", and placed back on the Claims List.
5. It is stated in #12 "A review of the Late –Filed Claims reveals that each of the Unknown Creditors was "unknown" to the Debtor. As stated previously this is a totally untrue statement as it relates to the time of the claim filed by Brandon J. Davis.
6. In Item # 13 it talks about an "excusable neglect" letter. I don't think it was necessary in my case to write an "excusable neglect" letter but just so that I covered all the legal items I wrote an "excusable neglect" letter" dated July 1, 2010, (see attachment).
7. I tem #18 states that "No previous request for the relief sought herein has been made by the Debtors to this or any other Court. Wherefore the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just."

I Brandon J. Davis totally object to this Motion as it relate to adding my name to Exhibit A, thereby limiting me to my Constitutional Rights to file a claim for wrongful deed done against me by the nations largest Corporate Giant, Motors Liquidation/General Motors.

I thank God that we have you Judge Robert E. Gerber, United States Bankruptcy Court overseeing these proceeding. If it were not for fair individual like you, I would be dismissed from this case with no hope for relief. I refer back to the Cleveland Plain Dealer article dated Wednesday, November 18, 2009. This article headline read "GM asks Court to let it drop payments in engine suits" (see attachment) This is where my problem started I had purchased a GM car that had oil leak problems and caught fire and blew up. This car was on recall and GM has refuse to pay their debt which is their moral and legal responsible responsibility.

Judge Robert E. Gerber, this motion is just another attempt by Motors Liquidation/ General Motors of paying their loyal clients what is rightfully and morally due to them. Thank you for taking this time to listen to my request and I pray that you will add my name back to the Claims List and direct Motors Liquidation/General Motors to resolve this claim as soon as possible. The longer they hold this claim the more I am swallowed up in debt.

THANK YOU !!!

Sincerely.

*Brandon Davis*

Brandon J. Davis
(216) 731-9944
e-mail: nathandavis55@aol.com


WEIL, GOTSHAL & MANGES LLP
Joseph H. Smolinsky
Harvey R. Miller
Stephen Karoykin


Attachments:

September 7, 2010

Honorable Robert E. Gerber
United States Bankruptcy Judge
Room 621
United States Bankruptcy Court
For the District of New York
One Bowling Green, NY,NY 10004

Re. MOTORS LIQUIDATION COMPANY, et al.,
    f/k/a General Motors Corp., et al.
    Debtors

Dear Honorable Robert E. Gerber, Judge

I, Brandon J. Davis, Object to this Motion, based on the fact that my claim has been filed in a timely manner and fully documented, in addition to receiving a <u>Recall Notice</u> from General Motors where they admit that their produc
t could be at fault and cause a fire, which it did and I lost my total investment.

I have forwarded to this Court all of my Documents that demonstrates that I have been wronged by General Motors and they indeed owe me for damages and cost.

Please note the following enclosed documents

| DATE | ITEM |
|---|---|
| 7-1-10 | Proof of Claim to Bankruptcy Court |
| 7-1-10 | Letter to Motors Liquidation Company Claims Processing |
| 7-19-10<br>7-19-11 | M.L.C. Claims Register from Motors Liquidation Company Listing my Claim at $13,060. |
| 11-30-09 | Letter to ESIS Central Claims Unit (Rep. GM) |
| 10-7-09 | Letter to ESIS Central Claims Unit (Rep. GM) |
| 9-20-09 | Letter to General Motors |
| 10-5-09 | Letter to ESIS |
| 4- -09 | ReCall Letter from GM |

| DATE | ITEM |
|------|------|
| 4-22-09 | Sims, Buick Pontiac GMC, ( ReCall Warranty Work |
| 4-22-10 | Complete) |

Note: I have submitted other documents to verify and justify my claim that are available if required )

The Court should also note the enclosed article from the Cleveland Plain Dealer dated 11-18-09: "GM ask Court to Let it Drop Payments in Engine Suits"

Finally the article in the Cleveland Plain Dealer 8-19-10 "GM gets ready for its IOP, to include US owned stock"  The article states that since emerging from bankruptcy last year GM has put people back to work, by adding shifts at its plants and posted profits for a second straight quarter" thi year 2010.

The Court has allowed this company to file bankruptcy in order to hide from paying its creditors, and now they are back to business as usual and multi-million dollars in profits.

All that I am requesting is they pay me what is do, for their faulty product which could have cause the life of several indivuduls when it caught on fire, but thank God it didn't.

My claim amount would be what they have filed on their own Claims Register in the amount of $13,060.

Thank you for your prayers for consideration in this matter !

These funds will assist me in continuing my training in a welding school so that I can qualify myself to start an apprenticeship as a pipefitter.

Sincerely.

*[signature: Brandon Davis]*

Brandon J. Davis
(216) 731-9944
e-mail: nathandavis55@aol.com


WEIL,GOTSHAL & MANGES LLP
Joseph H. Smolinsky
Harvey R. Miller
Stephen Karoykin

November 30, 2009

ESIS Central Claims Unit
P. O. Box 300
Mail Code 482 C19 B61
Detroit, MI 48265-3000

Re. Brandon Davis
File: 678775

Dear Sir:


More than five weeks have gone by since my letter of October 7, 2009, concerning the above claim and I have not had any correspondence from General Motors. This is very unprofessional and unbussiness like. Just to demonstrate my loyalty to General Motors, I have purchased another General Motors automobile, a 2004 Monte Carlo. This vehicle was purchased on November 10, 2009. (see attachments)

My 1998 Gran Prix was totaled by fire on September 10, 2009; therefore I have been without transportation for a total of two months because of General Motors negligence with an oil leakage problem that cause a fire and cause my automobile to be totaled.. I have been without an automobile for two months which equals sixty days. Rental cost for an automobile is $20.00 per day in the Cleveland area. Therefore in considering the settlement for this claim the rental cost should be taken into consideration at :
( $20.00 X 60 days =  $1,200.00 )  This should be taken in consideration with the Book Value of my vehicle, the 1998 Gran Prix. Thank you for your consideration, I look forward to your early response.

**SINCERELY,**



**Brandon Davis**


attachments



**AXELROD**
SALES & SERVICE INC. Mahindra

6767 BROOKPARK ROAD
PARMA, OHIO 44129
(216) 459-5350 • FAX (216) 459-0852
www.axelrodsales.com

November 19, 2009

Brandon Davis
337 Woodbridge Gln
Cleveland, OH 44143-1463

Dear Mr. Davis:

On behalf of everyone here at Axelrod Sales & Service, I would like to thank you for your recent purchase of a Chevrolet Monte Carlo. We look forward to serving your automotive needs. Our Service Department offers maintenance and repair work on makes and models, Monday through Saturday. *Check out our service specials at www.axelrodservice.com.* Please see Gary or Jim at the service desk. We have one of the busiest collision centers in the area and direct repair relationships with major insurance companies.

Our commitment to customer satisfaction is stronger than ever. We want your next vehicle purchase to be from our dealership. That's why we are dedicated to making this ownership experience as satisfying as possible. Rest assured that every effort will be made to merit your continued confidence in Axelrod for many years to come.

Sincerely,

Phil Axelrod

cc: Janelle Arcuri

**MOTOR VEHICLE PURCHASE CONTRACT**

PURCHASER: _____
ADDRESS: 337 WOODBRIDGE GLN
CITY: RICHMOND HTS. STATE: OH ZIP: 44143
RES. PHONE: (216) 731-9944
BUS. PHONE: ( )
E-MAIL: _____ DATE: 11/10/09
DRIVER'S LICENSE NO.: _____

767 BROOKPARK ROAD
PARMA, OHIO
(216) 458-8350 • FAX (216) 159-0642

PLEASE ENTER MY ORDER FOR THE FOLLOWING DESCRIBED MOTOR VEHICLE: ☐ NEW ☒ USED ☐ DEMO ☐ RENTAL ☐ FACTORY OFFICIAL

| | MAKE | YR. | MODEL | BODY TYPE | COLOR | TRIM | STK. NO. | SERIAL NO. |
|---|---|---|---|---|---|---|---|---|
| VEHICLE SOLD | CHEVROLET | 04 | MONTE CARLO | CP | BLACK | | 8380P130 | 2G1WX12K749257803 |
| VEHICLE TRADED IN WILL BE: | N/A | NA | N/A | N/A | N/A | | N/A | N/A |

MILEAGE ON TRADE IN: N/A — Accurate Unless Marked Not Accurate ☐ NOT ACCURATE
DOES THE TRADE HAVE A SALVAGE VEHICLE HISTORY? ☐ YES ☐ NO
MILEAGE ON PURCHASED VEHICLE: 66458 — Accurate Unless Marked Not Accurate ☐ NOT ACCURATE

**REMARKS:**

A. BASE PRICE OF VEHICLE ... $ 9180.6
B. OPTIONAL EQUIPMENT
THIS VEHICLE COMES WITH
3mo/3,000mi LTD POWERTRAIN WARRANTY ... $ N/A
... $ N/A
... $ N/A
... $ N/A
C. TOTAL CASH PRICE (A & B) ... $ 9180.6

**DEPOSIT (PARTIAL PAYMENT) RECEIPT**
Purchaser hereby provides to the Dealer the sum of $ _____ as a Non-Refundable Deposit for the vehicle described above. If this Receipt is for a Deposit, Dealer will refrain from selling the described vehicle for _____ days from the date of Deposit.
X _____

DOWN PAYMENT
CASH OR CHECK (SEE #1 REVERSE SIDE) ... $ N/A
TRADE IN ... $ N/A
... $ N/A
LESS BALANCE OWED TO _____ ... $ N/A
D. TOTAL DOWN PAYMENT ... $ N/A

**NEGATIVE EQUITY:**
I am aware the balance owed on my trade-in/lease turn-in vehicle exceeds the allowance from Dealer and, as a result, I have requested that $ _____ from my trade-in/lease turn-in be included in the total cash price of the vehicle.
X _____

MISCELLANEOUS
DOCUMENTARY SERVICE FEE ... $ 250.00
SALES TAX (TAXABLE BALANCE $ 9430.63) ... $ 730.87
TITLE FEES ... $ 20.00
LICENSE FEES ... $ 18.50
E. TOTAL MISCELLANEOUS ... $ 1019.3
F. UNPAID BALANCE (C – D + E) ... $ 10200.0
OTHER CHARGES
_____ ... $ N/A
GAP ... $ N/A
G. TOTAL OTHER CHARGES ... $ N/A

**ARBITRATION**
I agree that any dispute arising from this transaction will go to arbitration and I have executed a detailed arbitration agreement which is fully incorporated herein. Arbitration is not required for the purchase or financing of your vehicle.
X _____

H. TOTAL UNPAID BALANCE ... $ 10200.0

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALERS, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. UNLESS DEALER FURNISHES PURCHASER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THE VEHICLE AND ANY RELATED PRODUCTS AND SERVICES SOLD BY DEALER. DEALER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE AND THE RELATED PRODUCTS AND SERVICES. IN THE EVENT THAT A WRITTEN WARRANTY IS PROVIDED BY DEALER OR A SERVICES CONTRACT IS SOLD BY DEALER ON ITS OWN BEHALF, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO THE TERM OF THE WRITTEN WARRANTY/SERVICE CONTRACT.

If the purchase of the motor vehicle described herein is to be financed, all disclosures required by Revised Regulation Z, Truth-in-Lending Simplification Act, will be made by the lending institution (creditor) to purchaser at the time purchaser is to be contractually obligated on the credit transaction. If the purchase of the motor vehicle described herein is to be financed, the Annual Percentage Rate (APR) may be negotiated with the dealership and the dealership may receive a fee, commission, or other compensation for providing, procuring, or arranging financing.

NO ORAL REPRESENTATIONS HAVE BEEN MADE TO THE PURCHASER and all terms of the agreement are printed or written front and back.
I understand this order requires the acceptance of the dealer or his authorized agent.

CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHICULO FORMA PARTE DEL PRESENTE CONTRACTICO. LA INFORMACION DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRATIO CONTENIDA EN EL CONTRATO DE VENTA.

Not binding unless accepted by seller and credit is approved, if applicable, by financial institution. See Spot/Conditional Delivery Agreement fully incorporated herein.

This motor vehicle contract is executed this 10TH day of NOVEMBER, 2009
PURCHASER(S): _____
SALESPERSON: THOMAS, PAMELA / LIBANTE, JANELLE
ACCEPTED BY AUTHORIZED AGENT: _____

October 7, 2009

ESIS Central Claims Unit
P.O. Box 300
Mail Code 482 C19 B61
Detroit, MI 48265-3000

Re. Brandon Davis
File: 678775

Dear Sir:

This submittal of pictures should finalize your requirement as listed in your letter dated September 30, 2009. You requested color photos taken of the underhood engine area. The Pictures that are enclosed were taken with a cell phone camera and are the only pictures taken after the fire totally destroyed the 1998 Pontiac Grand Prix.

The following should be considered in your Technical Evaluation:

1. When the Fire Department arrived the 1998 Pontiac Grand Prix was **Fully Involved with Fire.** (see report)

2. To complete the extinquishment the **Hood Had To Be Pried** by the Fire Department. (see report)

3. There were three (3) Professional Firemen who witness the fire, **Frank Beach, Anthony Pellegrino, and Robert Stragisher.** (see Fire Report pages 7,8,9)

4. These three (3) Firemen were eye witnesses to the fire and can tell you the **extent, color of flames, main location, odor, and degree of smoke which would be far better than any photo that probably would not give the true exact colors anyway.**

5. There were also two other associates of mind who were with me on the evening of September 10, 2009 and can serve as **eye witnesses to the fire**, they are: **James Garrett, (216) 501-1397 and Mark Coleman, (216) 272-7091.**

6. This 1998 Grand Prix had a history of oil leakage problems in which I have receipts for and have already submitted them to you. The Marathon Gas Station Dealer will admit that he tried to stop the oil leakage on several occasions.

7. Even after taking my 1998 Pontiac Grand Prix in to have the Recall work performed, the automobile still caught on fire; and thank God the fire didn't kill me in the car and a few others.

After reviewing all the submitted documents, facts and talking to witnesses, **I have coinfidence that General Motors will do the right thing!**

**I LOOK FORWARD TO YOUR FAVORABLE RESPONSE !**

**SINCERELY,**


**Brandon Davis**


enclosures

September 20, 2009

General Motors
P.O. Box 33172
Detroit, Michigan 48232-6172

Dear Sir:

I am writing you concerning my 1998 Grand Prix, VIN NUMBER: 1G2WP52K9WF299855. (see Title attached)  I purchased this vehicle used in good faith from Tim Schckowski a Marathon Gas Station Dealer on March 19, 2009 for $ 2,500.00 (see Marathon receipt and cashier's check).

My Father advised me that General Motors cars has always served him and the family well for years, and that this Grand Prix sounded like a good purchase.  Soon after I purchased this automobile, I notice that it continued to leak oil, all of the time so I returned it to the Marathon Dealer to have the oil leak repaired.several times. (see receipt 5-2-09 for $115.00 and receipt 6-1-09 for $215.00).  Even after returning the automobile several times after these receipts the automobile continued to leak oil, the proof is oil stains in my driveway.

I received a Recall Notice from General Motors stating, "An underhood fire may be caused, being deposited on the exhaust manifold through hard braking.  If the manifold is hot enough, the oil may ignite into a small flame and, in some instances, the fire may spread to the plastic spark plug wire channel and beyond.  If this occurs, there could be a fire in your vehicle and nearby property."

After receiving this notice I took my automobile into Sims Buick Pontiac GMC, 940 Babbitt Road, Euclid, Ohio 44123, (216) 289-5700, to have the recall warranty work done on 4-22-09. (see attached invoice)

While visiting a friend on September 10, 2009, I parked my automobile on the streets at 1529 E. 248 St.  A neighbor came to my friend's house to inform me that my automobile was fully on fire under neath the hood.  I went outside to investigate the flames and immediately called the City of Euclid Fire Department.  They came out and extinguished the fire before it reached the gas tank and cause an explosion.  The Fire Department also advised me that my car was a **TOTAL LOST.**  (please see Euclid Fire Department Report dated 9-10-09).

I am enclosing pictures that illustrates the following: 1) This was an **underhood fire** 2) This fire was caused by **drops of engine oil**. (see dark smoke cause by oil and oil repair receipts).

I took every pre-caution that General Motors recommended in the Recall Notice, but still my automobile caught on fire at **no fault of mind by negligence, therefore this is a General Motors manufacturing fault by design.**

<u>I requesting retribution in the amount of my purchase price for the automobile and for oil leak repair work in addition to compensation for time and inconvenience.</u>

<u>I look forward to your early response because now I am without transportation !!!</u>

Sincerely,

*Brandon Davis*

Brandon Davis
(216)731-9944 home
(216) 990-8110 cell


cc  Attorney Louis Stokes – hold unless no response
    Attorney  Jimmie Mack – hold unless no response
    Better Business Bureau – hold unless no response

## HONORED
### Pillar of Justice goes to Louis Stokes



Louis Stokes has won the first Pillar of Justice Award from the Federal Bar Association Northern District of Ohio for his accomplishments as a lawyer and congressman.

**Louis Stokes**

*To submit candidates for Honored, e-mail information to metrodesk@plaind.com, fax it to 216-999-6374, or mail it to Honored, c/o Plain Dealer Plaza, 1801 Superior Ave., Cleveland 44114. Please include the names and contact information of the honor's recipient, its source and yourself, along with the recipient's photograph and relevant qualifications.*

PD 10-6-09

Pg 13 of 15

10-6-09

Dear ESIS,

Ref: Brandon Davis

File 678775

Please be advised that all of the requested information in your letter of Sept 30, 2009 was received by General Motors Claims Department on Sept 21, 2009. The reason I know is because after they received this information they called me to inform me that their attorney would be contacting me within a two (2) week period.

I am QUITE DISTURBED that you are writing me now requesting this SAME information that was in the hands of General Motors on Sept 21, 2009. It seems as if someone is playing games and wasting time.

Every day that I am without a car my cost goes up. In the Cleveland area is cost approximately $26.00 a day to rent a car.

IT WOULD BE APPRECIATED IF YOU WOULD ACT ON THIS CLAIM AS SOON AS POSSIBLE. BECAUSE I AM BEING VERY INCONVENIENT TRYING TO PAY FOR TRANSPORTATION AND MY FUNDS ARE RUNNING SHORT.

I THOUGHT THIS INFORMATION SHOULD HAVE ALREADY BEEN GIVEN A TECHNICAL EVALUATION SINCE IT WAS RECEIVED BY GENERAL MOTORS CLAIMS DEPARTMENT ON SEPT. 21, 2009.

YOUR PROMPT RESPONSE IS APPRECIATED.

SINCERELY,

Brandon Davis

C2 | Business

The Plain Dealer | Breaking news: cleveland.com

Wednesday, November 18,

# GM asks court to let it drop payments in engine suit

**ROBERT SCHOENBERGER**
*Plain Dealer Reporter*

General Motors wants to dump millions of obligations to pay potentially thousands of customers for engine damage caused by the radiator fluid GM used in vehicles from 1995 until 2004.

Last year, GM finalized settlements of several class-action lawsuits over its use for nearly a decade of Dex-Cool coolant in four V-6 engines. Under the settlements, GM was to have paid owners $50 to $800 to repair leaking gaskets and other problems caused by the coolant.

This week, that automaker asked the New York court handling the remnants of its bankruptcy case to let it drop the settlement obligations by Dec. 3.

GM spokesman Tom Wilkinson said that, if the court approves the request, people who have not yet been paid for Dex-Cool claims will become unsecured creditors to the portion of General Motors that did not emerge from bankruptcy this summer.

That means they'll join bankers, bondholders, suppliers and other creditors fighting over the nearly worthless scraps of the former company.

However, it's still unclear what will happen to those who have not yet filed Dex-Cool claims against GM. The automaker had said it would honor warranties and defect repairs on vehicles made before it filed for bankruptcy. But company officials would not comment Tuesday on whether that applies to class-action lawsuit settlements.

Wilkinson called GM's decision to seek cancellation of the settlement agreement a "normal part of the bankruptcy process."

Attorneys who represented plaintiffs in the case said they were still going over GM's new filing. Objections to the GM filing are due by Nov. 25, and a hearing has been scheduled for Dec. 3.

Attorneys hailed the settlements last year, saying they had won major returns for GM owners who had suffered through repeated repairs of malfunctioning engines. At the time of the settlement, plaintiffs' attorneys estimated that owners of as many as 20 million GM vehicles could receive some form of payment.

At that level, the settlement could have cost GM from $1 billion to $16 billion. The automaker declined to say how much it already had spent on settlement payments.

*To reach this Plain Dealer reporter:*
rschoenb@plaind.com, 216-999-4059