Billy Kidwell
5064 Silver Bell Drive
Port Charlotte, FL. 33948


February 5, 2011


The Honorable Robert E. Gerber

United States Bankruptcy Judge

United States Bankruptcy Court

Southern District of New York

Alexander Hamilton Custom House

One bowling green

New York, New York 10004


**RE: In re Motors Liquidation Company, et al.**

  <u>**Case No. 09-50026**</u>


Dear Judge Gerber,

    As you know the litigation in this case has been expanded by GM's Corporate Attorneys to three (3) Courts now due to your failure to simply enforce your OWN GM Sales ORDER, or in the least greatly reduce litigation by abiding by the Federal Rules of Evidence and taking Judicial NOTICE as to what your GM Sales Order actually says.

    I also want to make you aware that your failure to act in this matter, and your allowing the GM Corporate Attorneys to greatly expand this litigation with false statements about your GM Sales ORDER, resulted in driving me to what I believe was another Stress-Caused Heart Attack, and a serious injury (cracked bone) in my arm.

1

In yet another attempt to greatly reduce litigation in this matter, and to get a little honesty in this case, I have enclosed yet another Request for Judicial Notice, requesting that it be treated as an Emergency Motion, in the hope that this matter will be clarified, and litigation greatly reduced, before the Corporate Attorneys intentionally cause my death with all the blatant lies, and frivolous motions they are filing to intentionally harm my health.

Do you really believe that Eighty (80) page motions are appropriate against a Pro Se Litigant on heavy medications, with a severe Stress Disorder, severe depression, and a history of Life-Threatening Stress-Caused Heart Attacks?

We both know, as would "*Any Reasonable Person*" that the real intent of the massive, untruthful, motions by General Motors' Corporate Attorneys, with them fully aware of my dire health, is to intentionally cause my death.

**This poses Emergency Circumstances that endanger my life**, therefore if my request to greatly reduce all this outrageous litigation, and an end to your allowing your GM Sales ORDER to cause massive litigation in three (3) separate Courts, when all you have to do is state the truth, and take Judicial NOTICE, as to what your GM Sales ORDER actually says, and clarify if state Lemon Law Obligations are an Assumed Liability for the new General Motors LLC, or not, is not promptly acted on I shall seek a Writ of Mandamus from the Appeals Court, and the Appointment of Counsel, before all this causes my death.

Enclosed is my Emergency Request for Judicial Notice that will stop a large part of the massive litigation if it is promptly acted on.

I have served a copy of this letter on the GM Corporate Attorneys along with the enclosed motion.

Thank you for your time in this matter,


Respectfully Submitted,


Billy Kidwell

5064 Silver Bell Drive

Port Charlotte, FL. 33948

941 627-0433


Copy:  File

        Attorneys for General Motors

**HEARING DATE AND TIME: To Be Determined**

Billy Ray Kidwell, *Pro Se*
5064 Silver Bell Drive
Port Charlotte, Florida 33948
Telephone (941) 627-0433

*On Behalf of himself Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

In re                                              :       **Chapter 11**
                                                   :
MOTORS LIQUIDATION COMPANY, *et al,* :       **Case No. 09-50026 (REG)**
       f/k/a General Motors Corp., *et al,* :
                                                   :
       Debtors                                     :
                                                   :
-----------------------------------------------------x

## EMERGENCY REQUEST FOR JUDICIAL NOTICE TO STOP THE INTENTIONAL MASSIVE EXPANSION OF LITIGATION IN THREE COURTS BY GENERAL MOTORS LLC, AND TO HALT THE ONGOING FRAUD ON THIS COURT, AND LIFE-THREATENING IRREPARABLE HARM TO THE DIRE HEALTH OF MOVANT

Judge Robert E. Gerber is intentionally violating the Federal Rules of Evidence, Article II, Rule 201(D) by refusing to take Judicial Notice of Adjudicative Facts, that are not subject to dispute, and clearly known to Judge Gerber, **beyond any doubt.**

Movant has asked Judge Gerber to take Judicial Notice of what Judge Gerber's OWN GM Sales ORDER states. This request is **Mandatory** when requested by a party when the Court is supplied with the necessary information. Judge Gerber has a copy of his OWN GM Sales Order.

Judge Robert E. Gerber is fully aware of what the GM Sales ORDER, and the attached Amended and Restated Master Sale and Purchase Agreement, specifically state, and yet Judge

1

Gerber has allowed, and encouraged, Corporate Attorneys for General Motors LLC, to massively

expand needless litigation, in three separate Courts, *at great cost to the public*, with habitual,

intentional, lies about the contents of the GM Sales ORDER, and the Amended and Restated

Master Sale and Purchase Agreement.

Judge Robert E. Gerber, while fully aware of what the GM Sales ORDER, and the

attached Amended and Restated Master Sale, and Purchase Agreement, specifically state, and

after being fully informed as to the dire health of the Movant, and Movant's documented history

of prior Life-Threatening Stress-Caused Heart Attacks, intentionally allowed GM Corporate

Attorneys, Arthur J. Steinberg, and the firm of King & Spalding, to blatantly lie about the

contents of Judge Gerber's <u>OWN</u> GM Sales Order, intentionally harassing, and aggravating the

severe, life-threatening Stress Disorder of the *Pro Se Movant-Victim*, until the needless

expansion of litigation, and intentional harassment, caused the severely disabled Movant to have

chest pains, and pass out on December 24, 2010, falling down and severely injuring his arm.

**This injury to Movant was directly caused by Judge Robert E. Gerber refusing to be**

**honest, by taking Mandatory Judicial Notice, as required by the Federal Rule of Evidence,**

**of his <u>OWN</u> Court ORDER, as requested by the *Pro Se Litigant*.**

It should be noted that while refusing to take Judicial Notice of his <u>OWN</u> Court Order

Judge Gerber has allowed, and encouraged, Corporate Attorney Arthur J. Steinberg, and the Law

Firm of King & Spalding, to harass, and intentionally aggravate the Life-Threatening Disabilities

of the *Pro Se Litigant* by intentionally lying about the contents of this Court's GM Sales

ORDER, and massively increasing litigation, and expanding litigation to three additional Courts,

2

so that Attorney Steinberg, and his Law Firm, can create unnecessary work, and wrongly profit off their misconduct.

It should be noted that this *"Policy"* of the dishonest GM Corporate Attorneys to lie, and engage in any kind of conduct to intentionally greatly expand needless litigation has resulted in those Corporate Attorneys making at least a couple of million dollars, in six years of needless litigation, when they could have replaced the vehicle the Florida Quasi-Judicial Lemon Law Court **RULED** is a complete lemon, and not fit to be on the road, for less than $30,000.

The Quasi-Judicial Lemon Law Judge in Florida found that Movant's GM Truck quit running after a week, has a host of manufacturer defects that substantially impair the use of the vehicle, and render it not fit, nor safe, to drive, if it did run.

General Motors has made no attempt to honor its warranty, to honor Florida's Lemon Laws, and has used dishonest corporate attorneys, constantly lying, while making a complete mockery of the judicial system, as they have done in this Court, to steal $30,000 from the Severely Disabled Pro Se Litigant, while those Attorneys have used this case to hustle millions of dollars in legal fees, when such conduct clearly is not in the best interest of their clients.

*In short*, this case, the years of lies, judicial misconduct, the concealment of evidence, and witnesses, and now the ***Fraud on this Court***, with the intentional lies about what this Court's GM Sales ORDER actually says, and the massive wrongful expansion of litigation, has really been about greedy, dishonest Attorneys, making a mockery of the legal system, and misusing the

3

system to create massive, needless work for their law firm, as a means of stealing millions of dollars from GM Stockholder(s), and now stealing Taxpayer TARP Tax Dollars.

With the help of Corporate-Leaning Judges, *like Judge Gerber*, who knowingly allow those dishonest greedy corporate Attorneys to freely lie and engage in such outrageous conduct.

This Court has assisted General Motors LLC, and is a party, in the massive expansion of this case, and a party to a ***Fraud on this Court***, by refusing to grant Movant's previous Motion for Judicial NOTICE of facts clearly established.

These violations, the ongoing Fraud on this Court, and the constant dishonesty in this Court by GM's Corporate Attorneys while Judge Gerber closes his eyes, is causing the Americans with Disabilities Act Qualified Movant to suffer extreme, undue stress, resulting in Movant suffering heart problems, heart pains, loss of sleep, and numerous nerve related problems, all of which pose a real threat to Movant's life.

It is because of this very real threat to Movant's life, as demonstrated by Movant's recent heart attack on December 24, 2010, which was directly caused by this Court's failure to Judicially Notice the statements in its OWN Court ORDER, that Movant DEMANDS Emergency Treatment of this Judicial Notice Request.

4

*I. Movant's Judicial Notice Request Number One*

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and STOP the intentional massive narrow the issues in this case, seeks **JUDICIAL NOTICE** of this Court's ORDER, at pages 44 of the GM Sales Order of July 5, 2009, that specifically states at page 44 section number 56 that;

*"The Purchaser (the New General Motors LLC) is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the closing of the 363 Transaction and specifically identified as a "Warranty"."*

**[See yellow highlights in Exhibit A attached hereto which is a true and correct copy of pages 44 of the GM Sales ORDER.]**

*Specific Request for Relief for Judicial Request Number One*

Movant specifically requests that this Court clearly state that, as of July 5, 2009 the Purchaser, General Motors LLC, assumed the obligations of the seller, the former General Motors, as to express written warranties, and that the GM Sales ORDER did NOT bar Express Warranty Lawsuits by GM Consumers.

## *II. Movant's Judicial Notice Request Number Two*

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues

in this case, seeks **JUDICIAL NOTICE** of this Court's ORDER, at pages 44 and 45 section 56

that states;

*"Notwithstanding the foregoing, the Purchaser (the New General Motors LLC) has*

*assumed the Seller's obligations under state "Lemon Law" statutes, which require a*

*manufacturer to provide a consumer remedy when the manufacturer is unable to conform the*

*vehicle to the warranty, as defined in the applicable statute, after a reasonable number of*

*attempts as farther defined in the statute, and other related regulatory obligations under such*

*statutes."* **[See yellow highlights in Exhibit B attached hereto.]**

## *Specific Request for Relief for Judicial Request Number Two*

Movant specifically requests that this Court clearly state that, as of July 5, 2009 that

**NOTWITHSTANDING the foregoing**, which clearly means that no matter what else was

stated in the GM Sales ORDER, the Purchaser, General Motors LLC, assumed the obligations of

the seller, the former General Motors, under State Lemon Law Statutes, and also Assumed

*"Other regulatory obligations under such statutes"*.

Movant asks this Court to take specific Judicial NOTICE that at no time did the

Bankruptcy Court GM Sales ORDER bar State Lemon Law Actions, or State Lemon Law

Lawsuits.

### III. Movant's Judicial Notice Request Number Three

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues in this case, seeks **JUDICIAL NOTICE** that Chapter 681 of Florida's Statutes is Florida's State Lemon Law. [See Exhibit C showing all the Florida State Lemon Law Statutes in Florida Chapter 681].

The *Pro Se Movant* also seeks **JUDICIAL NOTICE** that Florida's State Lemon Law Statutes are a State Lemon Law Obligation, as defined at page 44, and 45 of the GM Sales ORDER.

### IV. Movant's Judicial Notice Request Number Four

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues in this case, seeks **JUDICIAL NOTICE** that Florida Statute 681.10 of Chapter 681 of Florida's State Lemon Law Statutes states that Florida's State Lemon Law shall be known, and cited, as the "**Motor Vehicle Warranty Enforcement Act**". [See Exhibit D which is 681.10].

The *Pro Se Movant* also seeks **JUDICIAL NOTICE** that Florida's State Lemon Law Statute 681.10 is a State Lemon Law Obligation, as defined at page 44, and 45 of the GM Sales ORDER.

### V. Movant's Judicial Notice Request Number Five

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues in this case, seeks **JUDICIAL NOTICE** that Florida Statute 681.102(14) of Chapter 681 of Florida's State Lemon Law Statutes defines "*Manufacturer*" as "*Any person, whether a*

*resident or nonresident of this state, who manufacturers or assembles motor vehicles.*" [See Yellow Highlights on page 2 of Exhibit E which is 681.102(14)].

The *Pro Se Movant* also seeks **JUDICIAL NOTICE** that Florida's State Lemon Law Statute 681.102(14) is a State Lemon Law Obligation, as defined at page 44, and 45 of the GM Sales ORDER.

## VI. Movant's Judicial Notice Request Number Six

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues in this case, seeks **JUDICIAL NOTICE** that Florida Statute 681.104 of Chapter 681 of Florida's State Lemon Law Statutes, at 681.104(2)(a) states that The Lemon Law Refund MUST include all reasonably incurred collateral and incidental charges (damages). [See Yellow Highlight on Exhibit F which is 681.104].

The *Pro Se Movant* also seeks **JUDICIAL NOTICE** that Florida's State Lemon Law Statute 681.104 is a State Lemon Law Obligation, as defined at page 44, and 45 of the GM Sales ORDER.

## VII. Movant's Judicial Notice Request Number Seven

*Pro Se Movant*, Billy Ray Kidwell, in an effort to reduce litigation, and narrow the issues in this case, seeks **JUDICIAL NOTICE** that Florida Statute 681.111 of Chapter 681 of Florida's State Lemon Law Statutes makes a FRAUD, DISHONESTY, and in fact ANY VIOLATION OF CHAPTER 681 BY A MANUFACTURER, an unfair or deceptive trade practice as defined in part II of Chapter 501. [See attached Exhibit G].

8

That the State of Florida specifically makes a violation of its Lemon Laws by a manufacturer **a deceptive trade practice**, as a State Lemon Law Obligation. [See Exhibit G].

The *Pro Se Movant* also seeks **JUDICIAL NOTICE** that Florida's State Lemon Law Statute 681.111 is a State Lemon Law Obligation, as defined at page 44, and 45 of the GM Sales ORDER, and that Florida Chapter 501, Part II, becomes a State Lemon Law Obligation when there is a violation of Chapter 681 by a Manufacturer. [See both Exhibit G and Exhibit H attached hereto].

The *Pro Se Movant* specifically seeks **JUDICIAL NOTICE** that a fraud on Florida's State Lemon Law(s) by a manufacturer, that violates Chapter 681, specifically makes Chapter 501 Part II of Florida's Statutes a State Lemon Law Obligation.

Granting this motion will GREATLY reduce litigation and clarify up legal issues in three separate Courts.

Failure to PROMPTLY act on this request, treating it as an Emergency Motion, endangers the extremely disabled *Pro Se Litigant's Life*, and causes irreparable harm to his dire health.


Respectfully Submitted,


*Billy Ray Kidwell*                                                                February 5, 2011

Billy Ray Kidwell

5064 Silver Bell Drive

Port Charlotte, FL. 33948    941 627-0433

## CERTIFICATE OF SERVICE

I, Billy Ray Kidwell, hereby certify that a true and correct copy of the attached was served on All Parties on this the 5th day of February 2011 by mailing a true and correct copy of same in the U.S. Mail addressed to them.


Billy Ray Kidwell

# EXHIBIT A

54.    Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.    The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.    The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

# EXHIBIT  B

54.     Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55.     The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56.     The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

US_ACTIVE:\43085833\07\43085833_7.DOC\                    44

Sellers' obligations under state "lemon law" statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.

57.     Subject to further Court order and consistent with the terms of the MPA and the Transition Services Agreement, the Debtors and the Purchaser are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, (a) the books, records, and any other documentation, including tapes or other audio or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business, and (b) the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates.

58.     The Debtors are authorized to take any and all actions that are contemplated by or in furtherance of the MPA, including transferring assets between subsidiaries and transferring direct and indirect subsidiaries between entities in the corporate structure, with the consent of the Purchaser.

59.     Upon the Closing, the Purchaser shall assume all liabilities of the Debtors arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Debtor, except for workers' compensation claims against the Debtors with respect to Employees residing in or employed in, as the case may be as defined by applicable law, the states of Alabama, Georgia, New Jersey, and Oklahoma.

60.     During the week after Closing, the Purchaser shall send an e-mail to the Debtors' customers for whom the Debtors have usable e-mail addresses in their database, which will provide information about the Purchaser and procedures for consumers to opt out of being

US_ACTIVE:\43085833\07\43085833_7.DOC\                    45

# EXHIBIT C

The Florida Statutes - The Florida Senate

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIX > Chapter 681

# 2010 Florida Statutes (including Special Session A)

Quick Links

- Search Statutes
- Statute Search Tips

| Title XXXIX | Chapter 681 | |
|---|---|---|
| COMMERCIAL RELATIONS | MOTOR VEHICLE SALES WARRANTIES | View Entire Chapter |

### CHAPTER 681
### MOTOR VEHICLE SALES WARRANTIES

681.10     Short title.
681.101    Legislative intent.
681.102    Definitions.
681.103    Duty of manufacturer to conform a motor vehicle to the warranty.
681.104    Nonconformity of motor vehicles.
681.106    Bad faith claims.
681.108    Dispute-settlement procedures.
681.109    Florida New Motor Vehicle Arbitration Board; dispute eligibility.
681.1095   Florida New Motor Vehicle Arbitration Board; creation and function.
681.1096   RV Mediation and Arbitration Program; creation and qualifications.
681.1097   RV Mediation and Arbitration Program; dispute eligibility and program function.
681.110    Compliance and disciplinary actions.
681.111    Unfair or deceptive trade practice.
681.112    Consumer remedies.
681.113    Dealer liability.
681.114    Resale of returned vehicles.
681.115    Certain agreements void.
681.116    Preemption.
681.117    Fee.
681.118    Rulemaking authority.

# EXHIBIT  D

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIX > Chapter 681 > Section 10

# 2010 Florida Statutes (including Special Session A)

Quick Links

- Search Statutes
- Statute Search Tips

Title XXXIX                 Chapter 681
COMMERCIAL RELATIONS MOTOR VEHICLE SALES WARRANTIES    View Entire Chapter

681.10   Short title.—This chapter shall be known and may be cited as the "Motor Vehicle Warranty Enforcement Act."

History.—s. 1, ch. 83-69; s. 1, ch. 85-240; s. 19, ch. 88-95; s. 4, ch. 91-429.

# EXHIBIT E

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIX > Chapter 681 > Section 102

# 2010 Florida Statutes (including Special Session A)
Quick Links

- Search Statutes
- Statute Search Tips

| Title XXXIX | Chapter 681 | |
|---|---|---|

**COMMERCIAL RELATIONS MOTOR VEHICLE SALES WARRANTIES** View Entire Chapter

681.102  Definitions.—As used in this chapter, the term:

(1)  "Authorized service agent" means any person, including a franchised motor vehicle dealer, who is authorized by the manufacturer to service motor vehicles. In the case of a recreational vehicle when there are two or more manufacturers, an authorized service agent for any individual manufacturer is any person, including a franchised motor vehicle dealer, who is authorized to service the items warranted by that manufacturer. The term does not include a rental car company authorized to repair rental vehicles.

(2)  "Board" means the Florida New Motor Vehicle Arbitration Board.

(3)  "Collateral charges" means those additional charges to a consumer wholly incurred as a result of the acquisition of the motor vehicle. For the purposes of this chapter, collateral charges include, but are not limited to, manufacturer-installed or agent-installed items or service charges, earned finance charges, sales taxes, and title charges.

(4)  "Consumer" means the purchaser, other than for purposes of resale, or the lessee, of a motor vehicle primarily used for personal, family, or household purposes; any person to whom such motor vehicle is transferred for the same purposes during the duration of the Lemon Law rights period; and any other person entitled by the terms of the warranty to enforce the obligations of the warranty.

(5)  "Days" means calendar days.

(6)  "Department" means the Department of Legal Affairs.

(7)  "Division" means the Division of Consumer Services of the Department of Agriculture and Consumer Services.

(8)  "Incidental charges" means those reasonable costs to the consumer which are directly caused by the nonconformity of the motor vehicle.

(9)  "Lease price" means the aggregate of the capitalized cost, as defined in s. 521.003(2), and each of the following items to the extent not included in the capitalized cost:

(a)  Lessor's earned rent charges through the date of repurchase.

(b)  Collateral charges, if applicable.

(c)  Any fee paid to another to obtain the lease.

(d)  Any insurance or other costs expended by the lessor for the benefit of the lessee.

(e)  An amount equal to state and local sales taxes, not otherwise included as collateral charges, paid by the lessor when the vehicle was initially purchased.

(10)  "Lemon Law rights period" means the period ending 24 months after the date of the original delivery of a motor vehicle to a consumer.

(11)    "Lessee" means any consumer who leases a motor vehicle for 1 year or more pursuant to a written lease agreement which provides that the lessee is responsible for repairs to such motor vehicle or any consumer who leases a motor vehicle pursuant to a lease-purchase agreement.

(12)    "Lessee cost" means the aggregate deposit and rental payments previously paid to the lessor for the leased vehicle but excludes debt from any other transaction.

(13)    "Lessor" means a person who holds title to a motor vehicle that is leased to a lessee under a written lease agreement or who holds the lessor's rights under such agreement.

(14)    "Manufacturer" means any person, whether a resident or nonresident of this state, who manufactures or assembles motor vehicles, or who manufactures or assembles chassis for recreational vehicles, or who manufactures or installs on previously assembled truck or recreational vehicle chassis special bodies or equipment which, when installed, forms an integral part of the motor vehicle, a distributor as defined in s. 320.60(5), or an importer as defined in s. 320.60(7). A dealer as defined in s. 320.60(11)(a) shall not be deemed to be a manufacturer, distributor, or importer as provided in this section.

(15)    "Motor vehicle" means a new vehicle, propelled by power other than muscular power, which is sold in this state to transport persons or property, and includes a recreational vehicle or a vehicle used as a demonstrator or leased vehicle if a manufacturer's warranty was issued as a condition of sale, or the lessee is responsible for repairs, but does not include vehicles run only upon tracks, off-road vehicles, trucks over 10,000 pounds gross vehicle weight, motorcycles, mopeds, or the living facilities of recreational vehicles. "Living facilities of recreational vehicles" are those portions designed, used, or maintained primarily as living quarters and include, but are not limited to, the flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows.

(16)    "Nonconformity" means a defect or condition that substantially impairs the use, value, or safety of a motor vehicle, but does not include a defect or condition that results from an accident, abuse, neglect, modification, or alteration of the motor vehicle by persons other than the manufacturer or its authorized service agent.

(17)    "Procedure" means an informal dispute-settlement procedure established by a manufacturer to mediate and arbitrate motor vehicle warranty disputes.

(18)    "Program" means the mediation and arbitration pilot program for recreational vehicles established in this chapter.

(19)    "Purchase price" means the cash price as defined in s. 520.31(2), inclusive of any allowance for a trade-in vehicle, but excludes debt from any other transaction. "Any allowance for a trade-in vehicle" means the net trade-in allowance as reflected in the purchase contract or lease agreement if acceptable to the consumer and manufacturer. If such amount is not acceptable to the consumer and manufacturer, then the trade-in allowance shall be an amount equal to 100 percent of the retail price of the trade-in vehicle as reflected in the NADA Official Used Car Guide (Southeastern Edition) or NADA Recreation Vehicle Appraisal Guide, whichever is applicable, in effect at the time of the trade-in. The manufacturer shall be responsible for providing the applicable NADA book.

(20)    "Reasonable offset for use" means the number of miles attributable to a consumer up to the date of a settlement agreement or arbitration hearing, whichever occurs first, multiplied by the purchase price of the vehicle and divided by 120,000, except in the case of a recreational vehicle, in which event it shall be divided by 60,000.

(21)    "Recreational vehicle" means a motor vehicle primarily designed to provide temporary living quarters for recreational, camping, or travel use, but does not include a van conversion.

(22)   "Replacement motor vehicle" means a motor vehicle which is identical or reasonably equivalent to the motor vehicle to be replaced, as the motor vehicle to be replaced existed at the time of acquisition. "Reasonably equivalent to the motor vehicle to be replaced" means the manufacturer's suggested retail price of the replacement vehicle shall not exceed 105 percent of the manufacturer's suggested retail price of the motor vehicle to be replaced. In the case of a recreational vehicle, "reasonably equivalent to the motor vehicle to be replaced" means the retail price of the replacement vehicle shall not exceed 105 percent of the purchase price of the recreational vehicle to be replaced.

(23)   "Warranty" means any written warranty issued by the manufacturer, or any affirmation of fact or promise made by the manufacturer, excluding statements made by the dealer, in connection with the sale of a motor vehicle to a consumer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is free of defects or will meet a specified level of performance.

History.—s. 3, ch. 83-69; s. 2, ch. 84-55; s. 2, ch. 85-240; s. 1, ch. 86-229; ss. 2, 19, ch. 88-95; s. 4, ch. 91-429; s. 2, ch. 92-88; s. 2, ch. 97-245; s. 2, ch. 98-128; s. 21, ch. 99-164.

# EXHIBIT  F

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIX > Chapter 681 > Section 104

# 2010 Florida Statutes (including Special Session A)

Quick Links

- Search Statutes
- Statute Search Tips

|       Title XXXIX      |        Chapter 681        |                      |
| COMMERCIAL RELATIONS MOTOR VEHICLE SALES WARRANTIES | View Entire Chapter |

681.104  Nonconformity of motor vehicles.—

(1)(a)    After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer shall have 10 days, commencing upon receipt of such notification, to respond and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility within a reasonable time after the consumer's receipt of the response. The manufacturer shall have 10 days, except in the case of a recreational vehicle, in which event the manufacturer shall have 45 days, commencing upon the delivery of the motor vehicle to the designated repair facility by the consumer, to conform the motor vehicle to the warranty. If the manufacturer fails to respond to the consumer and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility or perform the repairs within the time periods prescribed in this subsection, the requirement that the manufacturer be given a final attempt to cure the nonconformity does not apply.

(b)    If the motor vehicle is out of service by reason of repair of one or more nonconformities by the manufacturer or its authorized service agent for a cumulative total of 15 or more days, exclusive of downtime for routine maintenance prescribed by the owner's manual, the consumer shall so notify the manufacturer in writing by registered or express mail to give the manufacturer or its authorized service agent an opportunity to inspect or repair the vehicle.

(2)(a)    If the manufacturer, or its authorized service agent, cannot conform the motor vehicle to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts, the manufacturer, within 40 days, shall repurchase the motor vehicle and refund the full purchase price to the consumer, less a reasonable offset for use, or, in consideration of its receipt of payment from the consumer of a reasonable offset for use, replace the motor vehicle with a replacement motor vehicle acceptable to the consumer. The refund or replacement must include all reasonably incurred collateral and incidental charges. However, the consumer has an unconditional right to choose a refund rather than a replacement motor vehicle. Upon receipt of such refund or replacement, the consumer, lienholder, or lessor shall furnish to the manufacturer clear title to and possession of the motor vehicle.

(b)    Refunds shall be made to the consumer and lienholder of record, if any, as their interests may appear. If applicable, refunds shall be made to the lessor and lessee as follows: The lessee shall receive the lessee cost and the lessor shall receive the lease price less the lessee cost. A penalty for early lease termination may not be assessed against a lessee who receives a replacement motor vehicle or refund under this chapter. The Department of Revenue shall refund to the manufacturer any sales tax which the

manufacturer refunded to the consumer, lienholder, or lessor under this section, if the manufacturer provides to the department a written request for a refund and evidence that the sales tax was paid when the vehicle was purchased and that the manufacturer refunded the sales tax to the consumer, lienholder, or lessor.

(3)    It is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty if, during the Lemon Law rights period, either:

(a)    The same nonconformity has been subject to repair at least three times by the manufacturer or its authorized service agent, plus a final attempt by the manufacturer to repair the motor vehicle if undertaken as provided for in paragraph (1)(a), and such nonconformity continues to exist; or

(b)    The motor vehicle has been out of service by reason of repair of one or more nonconformities by the manufacturer, or its authorized service agent, for a cumulative total of 30 or more days, 60 or more days in the case of a recreational vehicle, exclusive of downtime for routine maintenance prescribed by the owner's manual. The manufacturer or its authorized service agent must have had at least one opportunity to inspect or repair the vehicle following receipt of the notification as provided in paragraph (1)(b). The 30-day period, or 60-day period in the case of a recreational vehicle, may be extended by any period of time during which repair services are not available to the consumer because of war, invasion, strike, fire, flood, or natural disaster.

(4)    It is an affirmative defense to any claim under this chapter that:

(a)    The alleged nonconformity does not substantially impair the use, value, or safety of the motor vehicle;

(b)    The nonconformity is the result of an accident, abuse, neglect, or unauthorized modifications or alterations of the motor vehicle by persons other than the manufacturer or its authorized service agent; or

(c)    The claim by the consumer was not filed in good faith.

Any other affirmative defense allowed by law may be raised against the claim.

History.—s. 5, ch. 83-69; s. 3, ch. 84-55; s. 41, ch. 85-62; s. 4, ch. 85-240; s. 2, ch. 86-229; ss. 4, 19, ch. 88-95; s. 4, ch. 91-429; s. 4, ch. 92-88; s. 4, ch. 97-245.

# EXHIBIT G

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIX > Chapter 681 > Section 111

# 2010 Florida Statutes (including Special Session A)

Quick Links

- Search Statutes
- Statute Search Tips

| Title XXXIX | Chapter 681 | |
|---|---|---|
| COMMERCIAL RELATIONS | MOTOR VEHICLE SALES WARRANTIES | View Entire Chapter |

681.111  Unfair or deceptive trade practice.—A violation by a manufacturer of this chapter is an unfair or deceptive trade practice as defined in part II of chapter 501.

History.—s. 7, ch. 85-240; ss. 9, 19, ch. 88-95; s. 4, ch. 91-429.

# EXHIBIT  H

# The Florida Senate

Home > Laws > The 2010 Florida Statutes > Title XXXIII > Chapter 501 > Part II

# 2010 Florida Statutes (including Special Session A)

Quick Links

- Search Statutes
- Statute Search Tips

| Title XXXIII | Chapter 501 | |
|---|---|---|
| REGULATION OF TRADE, COMMERCE, INVESTMENTS, AND SOLICITATIONS | CONSUMER PROTECTION | View Entire Chapter |

### PART II
### DECEPTIVE AND UNFAIR
### TRADE PRACTICES

501.201   Short title.
501.202   Purposes; rules of construction.
501.203   Definitions.
501.204   Unlawful acts and practices.
501.205   Rulemaking authority.
501.206   Investigative powers of enforcing authority.
501.2065   Confidentiality of intelligence or investigative information.
501.207   Remedies of enforcing authority.
501.2075   Civil penalty.
501.2077   Violations involving senior citizen or handicapped person; civil penalties; presumption.
501.2079   Violations involving discrimination in the provision of video services.
501.208   Cease and desist orders; procedures.
501.209   Other supervision.
501.2101   Enforcing authorities; moneys received in certain proceedings.
501.2105   Attorney's fees.
501.211   Other individual remedies.
501.212   Application.
501.213   Effect on other remedies.