# EXHIBIT "A"



**Town of Salina**
# OFFICE OF THE TOWN SUPERVISOR
Salina Town Hall
201 School Road – Room 112
Liverpool, NY 13088
(315) 457-6661
Fax: (315) 457-4476
www.salina.ny.us
supervisor@salina.ny.us

**Mark A. Nicotra**
Town Supervisor
**Lesley Dublin**
Secretary to the Supervisor

**Colleen Gunnip**
Deputy Town Supervisor

December 15, 2010

*Via U.S. Mail and Hand Submission at 12/15/10 Public Meeting*

United States Department of Justice
c/o Ignacia S. Moreno, Assistant Attorney General
Environmental and Natural Resources Division
P.O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

    Re:    *In re: Motors Liquidation Corp., et al. D.J. Ref. 90-11-3-09754*
            *Town of Salina, New York Comments on Proposed Environmental*
            *Response Trust Consent Decree and Settlement Agreement*

To the U.S. Department of Justice:

       The Town of Salina (the "Town") requests that specific revisions be made to the proposed Environmental Response Trust Consent Decree and Settlement Agreement (the "Settlement Agreement") which seeks to create the Motors Liquidated Company ("Old GM") Bankruptcy Environmental Trust Fund. In addition to the comments provided herein, the Town supports and incorporates those comments submitted to the U. S. Department of Justice by the County of Onondaga (the "County") in its November 24, 2010 correspondence.

       The Town objects to the arbitrary limitations the United States has placed on the proposed distribution of the approximately $641 million comprising the Environmental Trust Fund.[1] In particular, the Town opposes the Settlement Agreement's ban on the use of trust monies to address the "downstream" liabilities associated with Old GM's Inland Fisher Guide facility (the "IFG Site") and, in particular, the disposal and discharge of hazardous wastes generated by Old GM within the lower portions of Ley Creek; Onondaga Lake; and the former Town of Salina Landfill Site (the "Landfill Site").

In support of its trust fund scheme, the Settlement Agreement artificially and arbitrarily divides the lower portion of Ley Creek from that portion of Ley Creek located

---

[1] The Town further objects to the nature of the notice the U.S. Department of Justice ("DOJ") has given with respect to both the Settlement Agreement and the December 15th public hearing. We submit that the notice given for the Settlement Agreement violates both applicable U.S. Bankruptcy Court procedures and 42 U.S.C. § 6973. The Town further finds the one-week notice of the public hearing unacceptable, and apparently designed to avoid meaningful public input.

United States Department of Justice
December 15, 2010
Page 2

upstream of the Route 11 Bridge, irrespective of the voluminous technical data collected by the U.S. Environmental Protection Agency ("USEPA") and the New York State Department of Environmental Conservation ("NYSDEC") proving that Old GM's operations at the IFG Site have resulted in decades of PCB releases into the entirety of Ley Creek and the remaining Onondaga Lake system. The Town further objects to the arbitrary and capricious decision made by the United States to exclude from compensation under the Settlement Agreement Old GM's liability to the Landfill Site, notwithstanding that such liability is a direct cause of Old GM's historical operations at the IFG Site. The hazardous waste disposal practices conducted at the IFG Site resulted in the disposal of hundreds of tons of PCBs and PCB-related waste at the Landfill Site, which is currently being remediated by the Town pursuant to a Record of Decision issued by USEPA and NYSDEC in March 2007.

The Settlement Agreement is clearly in violation of CERCLA's mandate that a consent decree be fair, reasonable, and consistent with its statutory goals. If left unmodified, the Settlement Agreement will result in the taxpayers of the Town, County and State of New York solely bearing the financial burden of addressing the decades of contamination Old GM and its IFG Site have caused. There is no justification for the exclusion of Lower Ley Creek sub-site and/or the Landfill Site from compensation under the Settlement Agreement, since these liabilities are inextricably linked to the IFG Site. What is particularly offensive and arbitrary is how the United States on one hand has purposefully excluded these IFG Site-related liabilities from compensation, while at the same time pursuing enforcement actions against the Town and other non-GM parties for the cleanup (and cost recovery) associated with these same liabilities.

The Town therefore requests that the proposed Settlement Agreement be modified to include not only funding for the cleanup of the entirety of Ley Creek, but also for the liability Old GM faces as a generator and arranger for disposal of IFG Site-related hazardous waste at the Landfill Site pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* A decision by the United States to deny the modifications requested by both the Town and the County will result in our taxpayers solely bearing the cost of these Old GM liabilities, with the United States (through its debtor-in-possession financing of Old GM) benefitting from the expenditure of trust monies and the concomitant redevelopment of these now, federally-controlled assets.

The County of Onondaga in its November 24th, 2010 letter to DOJ has provided numerous comments on the proposed Settlement Agreement in light of Old GM's liability to the Lower Ley Creek sub-site and the Onondaga Lake NPL Site. The Town submits the following supplemental comments with respect to the Lower Ley Creek sub-site, as well as Old GM's liability as a potentially responsible party ("PRP") pursuant to CERCLA for the Landfill Site.

United States Department of Justice
December 15, 2010
Page 3

**Lower Ley Creek**

A voluminous amount of technical data has been collected by NYSDEC and USEPA which demonstrates that the discharge of PCBs and PCB-related wastes from the IFG Site has impacted the entirety of Ley Creek. A number of the reports containing this technical data were already provided to your office by the County.

As part of its remedial investigation of the Landfill Site, the Town, at the request of NYSDEC, also collected surface water samples along Ley Creek. Samples were collected just east of the Route 11 Bridge and at various locations extending downstream to the confluence of Beartrap Creek and Ley Creek. Shallow (0 to 6 inches below the sediment/water interface) and deeper (6 to 12 inches below the interface) sediment samples were also collected at the same surface water sample locations.

The results showed that both water and sediment samples contained PCBs (Aroclor 1248) above the applicable sediment screening criteria. More importantly, the sediment samples collected upstream of the Landfill Site contained higher concentrations of PCBs than downstream samples, indicating that the upper portions of Ley Creek (above the Route 11 bridge) were the source of PCB contamination in Lower Ley Creek. A Remedial Investigation/Feasibility Study was further performed by Old GM wherein PCBs were detected in the dredge spoils at concentrations up to 466 mg/kg. The results of this study linked the presence of PCBs along the entire length of Ley Creek to the historical discharges of PCBs from the IFG Site.

Pursuant to Section 104(e) of CERCLA, NYSDEC prepared in June, 1996 a Site Summary Report for the IFG Site as part of its sub-site status determination. A copy of that report is attached hereto as Exhibit "A." After completing its investigation, NYSDEC and USEPA concluded that the IFG Site contributed to the presence of PCBs within the entirety of Ley Creek due to dredging activities conducted along certain creek bed areas. Soils, groundwater, industrial wastewater, and stormwater were all confirmed as containing PCBs and other hazardous substances. The report further states that "[f]rom 1954 until 1963, process wastewater [from the IFG Site] discharged directly to Ley Creek presumably with little or no treatment." NYSDEC thus concluded that, due to the presence of PCBs and other hazardous substances at the IFG Site, it represented "a release and a continued threat of release [of hazardous substances] to the Onondaga Lake System."

These PCB findings were further supported by recent sampling collected by USEPA in 2010 along the lower portions of Ley Creek. As stated in the July 22, 2010 Onondaga Lake NPL Sub-site Evaluation for Lower Ley Creek, USEPA acknowledges that "the majority of the contamination in Lower Ley Creek sediment has come from various sources and/or facilities upstream and on Ley Creek, including the former General Motors Corporation – Inland Fisher Guide Facility." As also noted by the

United States Department of Justice
December 15, 2010
Page 4

County in its November 24th comment letter, USEPA's evaluation does not identify any other alleged sources of PCB contamination in the Lower Ley Creek. This is further acknowledged by USEPA in its October 30, 2009 correspondence notifying Old GM that it is a PRP to the Lower Ley Creek sub-site pursuant to CERCLA.

The technical analyses discussed above, as well as the data noted in the County's November 24th letter, clearly demonstrate that there is no legitimate basis to divide the upper portion of Ley Creek from its lower portion when determining Old GM's environmental liability. To the contrary, the division set forth in the Settlement Agreement is a merely fictional; one created to arbitrarily cut off Old GM's liability, while ensuring both an overwhelming "orphan share" of liability and protracted future litigation between DOJ and the remaining PRPs.

**The Former Town of Salina Landfill Site**

In addition to its liabilities to the Lower Ley Creek sub-site and Onondaga Lake NPL Site, historical operations at the IFG Site have resulted in Old GM becoming a PRP for the cleanup of the Landfill Site. The Landfill Site, approximately 55 acres in size, has been designated a Class 2 Inactive Hazardous Waste Disposal Site by NYSDEC. The Landfill Site primarily accepted municipal waste, but also accepted commercial and industrial wastes from the IFG Site. Following 1994, when USEPA listed the Onondaga Lake Site on the National Priorities List, USEPA and NYSDEC also notified the Town that the Landfill Site was being listed as a sub-site. An extensive investigation was subsequently completed at the Landfill Site, which culminated in USEPA and NYSDEC issuing a Record of Decision in March, 2007 wherein a remedial remedy was selected.

Old GM conducted various manufacturing processes at the IFG Site including plating; buffing; forming and finishing metal automobile parts; junction moldings; painting; and assembling plastic body and trim components for automobiles. The evidence collected by NYSDEC shows that Old GM's disposal practices at the IFG Site resulted in the presence of PCBs and other hazardous substances and wastes at the Landfill Site. Attached hereto as Exhibit "B" is a copy of the Preliminary Site Assessment Report prepared for the Landfill Site by NYSDEC, dated July, 1992, which includes a portion of a July, 1985 Industrial Chemical Survey and Hazardous Waste Generator questionnaire prepared by Old GM confirming the hazardous waste disposal practices at the IFG Site which resulted in the presence of hazardous wastes at the Landfill Site.

According to USEPA and NYSDEC, between 1962 and 1973, Old GM disposed PCBs and PCB-related hazardous wastes at the Landfill Site. Documented releases included approximately 640 tons of paint sludge; 22 tons of waste paint thinner and paint reducer; unknown quantities of boiler ash and buffing sludge; and approximately 30 pounds of unadulterated PCBs. Old GM further acknowledged that Leaseway Haulers,

United States Department of Justice
December 15, 2010
Page 5

Inc., AT&T Haulers, and Mattheison Trash Service regularly hauled waste from the IFG Site to the Landfill Site. PCBs (including Aroclor 1248) known to be present at the IFG Site, have also been detected in various media associated with the Landfill Site. This undeniable connection between the Aroclor 1248 PCBs generated at the IFG Site, and those present in the soils and groundwater at the Landfill Site, confirms that Old GM's historical waste practices at the IFG Site directly resulted in the disposal of PCBs and PCB wastes at the Landfill Site, thus supporting a finding that Old GM is a PRP with respect to the Landfill Site pursuant to Section 107(a)(3), 42 U.S.C. § 9607(a)(3) of CERCLA. There is no dispute that Old GM is a party, who by contract, agreement or otherwise, arranged for the disposal of hazardous substances at the Landfill Site. A party qualifies as a PRP on an arranger basis under CERCLA when it "takes intentional steps to dispose of a hazardous substance." *See Burlington Northern and Santa Fe Railroad Company v. United States*, 129 Sup.Ct. 1870, 1879 (2009).

The main consideration for Old GM's PRP liability is the acknowledgement that, but for the presence of PCBs and other hazardous substances generated and disposed of by Old GM, the cleanup of the Landfill Site would have been completed as a 6 N.Y.C.R.R. Part 360 municipal solid waste closure, as opposed to a Class 2 Inactive Hazardous Waste Site pursuant to 6 N.Y.C.R.R. Part 375. Because Old GM's disposal of PCBs and PCB-related waste resulted in a Class 2 listing of the Landfill Site, the associated cleanup costs are significantly higher, requiring that Old GM's allocated share of cleanup costs reflect this outcome. The Town therefore projects that Old GM's disposal of PCB-related wastes resulted in a 56% incremental increase in the total cost to be incurred in remediating the Landfill Site.

Based on its recent bid award for phase one of the cleanup, the Town has calculated that the total present worth cost of remediating the Landfill Site is $29,592,701. Old GM's estimated allocated share of these costs is, at a minimum, $19,201,701, representing the incremental costs associated with remediating the Landfill Site as a Class 2 Inactive Hazardous Waste Site due to GM's disposal of PCBs and other hazardous substances. The Settlement Agreement, in its current form, however, bars the Town from recovering any portion of this cost from Old GM despite the source of its liability being directly (and unequivocally) linked to the IFG Site. The Settlement Agreement thus fails to satisfy the applicable standard for judicial approval of CERCLA settlements, and violates that statute's objective that consent decrees, wherein the United States provides covenants not to sue, be fair, reasonable and consistent with CERCLA's goals of cleaning up contaminated sites.

What is particularly troubling about the United States' decision to bar the Lower Ley Creek sub-site and Landfill Site from compensation is its self-creation of "orphan shares," which will ultimately jeopardize the future cost recovery efforts by USEPA, NYSDEC and the Town relating to these sub-sites, as well as the Onondaga Lake NPL

United States Department of Justice
December 15, 2010
Page 6

Site. By agreeing to the Settlement Agreement, the United States has essentially undermined its ability to seek the recovery of millions of dollars from non-Old GM parties who also bear liabilities to these contaminated sites.

**Miscellaneous Comments**

In addition to the comments provided by the County on pages 10-12 of its November 24th correspondence, the Town requests that DOJ further consider the following revisions to the proposed Settlement Agreement:

1. The term "any general unsecured claim" in paragraph 100 (ii) of the Settlement Agreement should be replaced with the term "any claims." This revision ensures the broadest reservation of rights by the United States since some of the environmental claims are still ongoing and not necessarily reflected in the proof of claims filed, to date, in the Old GM bankruptcy proceeding.

2. The phrase "other than claims or causes of action for migration of Hazardous Substances emanating from a Property" in paragraph 100 (ii) must be deleted since it is inconsistent with the Settlement Agreement's reservation of rights with respect to the Lower Ley Creek and Lake Bottom sub-sites. The basis of the claims preserved in paragraph 100(ii) is that PCBs and other hazardous substances have actually migrated from the IFG Site and contaminated those sub-sites.

3. The second sentence on page 60 of the Settlement Agreement (with paragraph 100) must be revised so that the Settlement Agreement is also without prejudice as to any liability of Debtor's successors, assigns, officers, directors, employees, and trustees pursuant to Section 113(f) of CERCLA. The Town further objects to the Settlement Agreement's ban on future acts creating liability under CERCLA, RCRA and/or state law if based on continuing releases related to conduct prior to the Effective Date of the Settlement Agreement.

4. Consistent with comment 2 above, paragraph 105 of the Settlement Agreement must be revised by deleting the phrase "including releases of Hazardous Substances from any portion of the Properties, and all areas affected by migration of such substances emanating from the Properties...," since it undermines the reservation of rights preserved in Article VIII of the Settlement Agreement as to the Lower Ley Creek, Lake Bottom and Salina Landfill Sub-sites.

United States Department of Justice
December 15, 2010
Page 7

**Conclusion**

    The arbitrary limitations that have been placed on the distribution of the Settlement Agreement's trust monies will result in a significant financial burden being placed squarely on the Town, notwithstanding the fact that Old GM's IFG Site is solely or primarily responsible for the contamination existing at the Lower Ley Creek sub-site and the Landfill Site. The environmental data collected by USEPA and NYSDEC proves there is no legitimate basis to exclude these Old GM liabilities from compensation under the Environmental Trust Fund. To do so, will not only undermine the future efforts of the United States to address these environmental concerns, but unjustly place the burden of these liabilities solely on the shoulders of Town and County residents.

Sincerely,

Mark A. Nicotra
Supervisor
Town of Salina

Attachments
cc:    Town of Salina Town Board Members
        Natalie N. Kuehler, Assistant U.S. Attorney
        Maureen Leary, NYS Assistant Attorney General
        Joanne M. Mahoney, Onondaga County Executive
        Frank C. Pavia, Esq.
        Robert D. Ventre, Esq.
        Christopher A. Burns, P.G.

229314 1500959.1