**Hearing Date:  March 3, 2011 at 9:45 a.m.**

HANGLEY ARONCHICK SEGAL & PUDLIN
By:   Matthew A. Hamermesh (admitted *pro hac vice*)
       Jacqueline R. Dungee (JD6936)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200

*Attorneys for NCR Corporation*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| In re: | : | Chapter 11 |
|---|---|---|
|  | : |  |
| **MOTORS LIQUIDATION COMPANY** *et al.*, | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Case No. 09-50026 (REG) |

**OBJECTION OF NCR CORPORATION TO CONFIRMATION
OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

NCR Corporation objects to confirmation of the Debtors' Amended Joint Chapter 11 Plan (the "Plan"), and in support thereof states as follows:

1. On June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2. On December 7, 2010, the Debtors filed the Plan. A hearing on confirmation of the Plan is currently scheduled for March 3, 2011.

3. On January 19, 2011, NCR commenced an adversary proceeding against the Debtors by filing a Complaint (the "Complaint," a copy of which is attached hereto as Exhibit A) in the Debtors' bankruptcy cases, which was docketed as Adversary Proceeding No. 11-09400-reg. The allegations of the Complaint are incorporated herein by reference as if set forth in full.

4. As set forth in the Complaint, the Debtors hold the Total Overage[1] in trust for NCR. In the Complaint, NCR seeks an order directing that the Total Overage may not be distributed to Motors' creditors as part of the bankruptcy plan and must be turned over to NCR.

5. The Total Overage consists of Cash.[2]

6. The Plan provides for distribution of all of the Debtors' Cash.

7. Sections 2.1, 2.2, 2.3, 2.4, 2.5, 4.1, 4.2, 5.2(a), 5.2(b) and 12.7 of the Plan provide for the distribution of Cash of the Debtors in payment of various categories of Claims, Administrative Expenses, and other fees and expenses of the Debtors.

8. Sections 5.2(a), 6.2(c), 6.3(d), 6.4(c) and 6.5(c) of the Plan provide for the transfer of specific amounts of Cash to fund the administration of various funds, trusts and accounts established through the Plan.

9. Sections 1.90, 2.5, 5.2(a) and 6.2(f) of the Plan require the Debtors to pay in Cash, or reserve Cash for payment of, certain fees and expenses of the Indenture Trustees and the Fiscal and Paying Agents.

10. Specifically, Section 5.2(b) of the Plan provides:

> **Repayment of Excess Cash to DIP Lenders.** If the Debtors have any Cash remaining after (i) transferring the GUC Trust Assets to the GUC Trust, including the funding of the GUC Trust Administrative Fund and the transfer of the Indenture Trustee/Fiscal and Paying Agent Reserve Cash in accordance with Section 6.2 hereof, (ii) transferring the Asbestos Trust Assets to the Asbestos Trust, (iii) transferring the Environmental Response Trust Assets to the Environmental Response Trust, including the funding of the Environmental Response Trust Administrative Funding

---

[1] All capitalized terms used but not defined herein shall have the same meaning as set forth in the Complaint.

[2] All capitalized terms used but not defined herein or in the Complaint shall have the same meaning as set forth in the Plan.

2

        Account, (iv) transferring the Avoidance Action Trust Assets to the Avoidance Action Trust, (v) the resolution (and the payment, to the extent Allowed) of all Disputed Administrative Expenses (including compensation and reimbursement of expenses under sections 330 or 503 of the Bankruptcy Code), Disputed Priority Tax Claims, Disputed DIP Credit Agreement Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims, (vi) the payment in full of all Allowed Administrative Expenses (including any compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code), Allowed Priority Tax Claims, Allowed DIP Credit Agreement Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims, and (vii) completing the acts described in Section 6.10 hereof, the Debtors shall pay such Cash to the DIP Lenders by wire transfer of immediately available funds to an account designated by the U.S. Treasury and by EDC, respectively, ratably in accordance with their respective interests in the DIP Credit Agreement Claims.

        11.     Pursuant to Section 1123 of the Bankruptcy Code, 11 U.S.C. § 1123, a plan may provide, as means for implementing the plan, *inter alia*, for:

        (B)     transfer of all or any part of the *property of the estate* to one or more entities, whether organized before or after the confirmation of such plan;

        . . . .

        (D)     sale of all or any part of the *property of the estate*, either subject to or free of any lien, or the distribution of all or any part of the *property of the estate* among those having an interest in such *property of the estate* . . . .

11 U.S.C. § 1123(a)(5) (emphasis added). Likewise, Section 1123 provides that "a plan may . . . provide for the sale of all or substantially all of the *property of the estate* . . . ." 11 U.S.C. § 1123(b)(2) (emphasis added).

        12.     Nothing in the Bankruptcy Code allows a plan to provide for the distribution of cash or other property that is in a debtor's possession but that is not property of the estate.

13.  Property that a debtor holds in trust for another entity is not property of the estate. 11 U.S.C. § 541(b)(1), (d); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10, 103 S. Ct. 2309, 2314 n.10 (1983) ("Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" from property of the estate). Since the Debtors hold the Total Overage in trust for NCR, it is not property of the estate.[3]

14.  Section 1129(a)(1) of the Bankruptcy Code provides that a plan may only be confirmed if it "complies with all applicable provisions of this title." 11 U.S.C. § 1129(a)(1).

15.  A plan that provides for the distribution of property that a debtor holds in trust violates Sections 541(b)(1) & (d) and 1123(a)(5) & (b)(2) of the Bankruptcy Code and therefore may not be confirmed.

16.  Since the Plan provides for the transfer of all Cash – including the Total Overage – to parties other than NCR, it does not satisfy the requirements of Section 1129(a)(1) and may not be confirmed.

17.  Accordingly, the Plan should not be confirmed, unless the Plan, including, without limitation, the sections referenced above, is amended to ensure that the Total Overage is not distributed to any party other than NCR.

---

[3] To the extent the Debtors dispute whether they hold the Total Overage in trust for NCR, that dispute may only be determined through an adversary proceeding, such as NCR has commenced, and not through a plan confirmation hearing. *See* Fed. R. Bankr. P. 7001(2).

WHEREFORE, NCR Corporation respectfully requests that this Court enter an order denying confirmation of the Plan for the reasons set forth above.

                    Respectfully submitted,

                    HANGLEY ARONCHICK SEGAL & PUDLIN, P.C.

Dated: February 11, 2011      By:   /s/ Matthew A. Hamermesh
                                          Matthew A. Hamermesh
                                          Jacqueline R. Dungee
                                          One Logan Square, 27th Floor
                                          Philadelphia, PA  19103
                                          Telephone:   (215) 568-6200
                                          Telecopy:    (215) 568-0300

                    Attorneys for NCR Corporation