# EXHIBIT A

HANGLEY ARONCHICK SEGAL & PUDLIN
By:   Matthew A. Hamermesh (*pro hac vice* motion to be filed)
       Joseph A. Dworetzky (*pro hac vice* motion to be filed)
       Jacqueline R. Dungee (JD6936)
       Dylan J. Steinberg (*pro hac vice* motion to be filed)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200

*Attorneys for NCR Corporation*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | : Chapter 11 |
| | : |
| **MOTORS LIQUIDATION COMPANY., et al.** | : (Jointly Administered) |
| | : |
| **Debtors** | : Case No. 09-50026 (REG) |
| | : |
| **NCR CORPORATION,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : Adv. Proc. No. _____ |
| | : |
| **MOTORS LIQUIDATION COMPANY,** | : |
| | : |
| **Defendant.** | : |

**COMPLAINT**

Plaintiff NCR Corporation ("NCR") brings this complaint against Defendant Motors Liquidation Company, f/k/a General Motors Corporation ("Motors" or the "Debtor") and in support thereof states as follows:

## PARTIES

1. NCR is a corporation organized under the laws of the State of Maryland, and maintains a principal place of business located at 3097 Satellite Boulevard, Duluth, Georgia 30096-5810.

2. Upon information and belief, the Debtor is a corporation organized under the laws of Delaware and maintains a principal place of business located at 300 Renaissance Center, Detroit, MI 48265.

3. On or about June 1, 2009 (the "Petition Date"), Motors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Motors' bankruptcy case is currently pending before the United States Bankruptcy Court for the Southern District of New York at docket number 09-50026-reg.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) as a case related to a case arising under title 11 of the United States Code.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

6. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## VALLEYCREST LANDFILL

7. NCR and the Debtor have each previously been identified as potentially responsible parties ("PRPs"), along with numerous other parties, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and similar federal and state laws at several sites.

8. In particular, both NCR and the Debtor are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the North Sanitary

Landfill Superfund Site, also known as the Valleycrest Landfill, in Dayton, Ohio (the "Site" or "Valleycrest").

9. Federal and/or state environmental authorities have asserted that NCR and the Debtor, along with others, are PRPs for the cleanup of the Site.

10. Since that time, both NCR and the Debtor have participated in and contributed financially to the investigation, removal, and remediation of hazardous substances at the Site.

11. Prior to August 20, 2007, NCR paid more than its share of the costs associated with particular aspects of the cleanup of the Site.

## THE SETTLEMENT AGREEMENT AND CONSENT DECREE

12. On or about November 15, 2007, Motors and NCR entered into a settlement agreement (the "Settlement Agreement"), in which Motors and NCR, *inter alia*, allocated between themselves their shares of the costs associated with cleanup of the Site, including both prospective costs and costs already incurred for portions of the cleanup already concluded.[1]

13. Throughout the negotiations leading to the Settlement Agreement, and in the drafting of the Settlement Agreement, Motors was represented by competent counsel.

14. After entering into the Settlement Agreement, Motors and NCR presented it to the United States District Court for the Southern District of Ohio, in which litigation over the allocation of costs for the Valleycrest clean-up was pending.

---

[1] The Settlement Agreement is confidential and was filed in the District Court under seal. If it is deemed necessary for this Court's consideration, NCR will seek leave to file a copy of the Settlement Agreement under seal.

15. On November 21, 2007, Magistrate Judge Michael R. Merz entered a Judgment, Order, and Decree (the "District Court JOD") embodying the major terms of the Settlement Agreement. A true and correct copy of the District Court JOD is attached hereto as Exhibit A.

16. The District Court JOD was never challenged, appealed, or set aside and remains in effect.

17. The District Court JOD denominated the total amount of NCR's overpayment, which then remained in the possession of the Debtor, as "NCR's Total Overage." District Court JOD ¶ 7.

18. NCR's Total Overage is composed of two components, denominated NCR's AOC Cost Overage and NCR's Remedial Cost Overage, representing two different payment streams related to Valleycrest for which NCR had paid more than its allocated share of the cost. *See* District Court JOD ¶¶ 5-7.

19. As of August 20, 2007, the amount of NCR's Total Overage was $1,820,260.85. District Court JOD at 2, ¶ 6.

20. The District Court JOD provided that Motors would use NCR's Total Overage to discharge NCR's liabilities at the Site as they became due. District Court JOD at 3.

21. The District Court JOD decreed that Motors "shall hold on behalf of NCR, NCR's Total Overage, and will pay interest thereon to NCR; NCR will continue to own NCR's Total Overage." District Court JOD at 3.

22. Motors separately acknowledged and pledged to take no action inconsistent with, NCR's beneficial ownership of NCR's Total Overage or either component thereof.

23. The terms of the Settlement Agreement are to be interpreted and enforced in accordance with the laws of the State of Ohio.

## MOTORS HOLDS NCR'S TOTAL OVERAGE AS TRUSTEE FOR NCR

24.   The Settlement Agreement and the District Court JOD establish that Motors holds NCR's Total Overage explicitly for NCR's benefit.

25.   As required under Ohio law, the Settlement Agreement and the District Court JOD, establish "1) an intent to create a trust; 2) a trustee; 3) a trust res; and 4) a definite beneficiary." *In re Blaszak*, 397 F.3d 386, 391 (6th Cir. 2005).

26.   No particular words are required to create an express trust under Ohio law.

> If it appears to be the intention of the donor, from the whole instrument creating it, or by his expressions and conduct at the time, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to the conveyance the character of a trust; and in determining whether or not a trust has been created there must be taken into consideration the situation and relation of the parties and the character of the property and the purposes which the settlor had in view in making the declaration.

*In re Salupo*, 386 B.R. 659, 668 (Bankr. N.D. Ohio 2008) (quoting *Jones v. Luplow*, 13 Ohio App. 428, 431-32 (1920)).

27.   The Settlement Agreement and the District Court JOD established Motors as a trustee for the benefit of NCR with regard to NCR's Total Overage, whether as an express trustee or as a constructive trustee.

28.   As of September 1, 2010, the amount of NCR's Total Overage was $2,265,858.12.

29.   Upon information and belief, from November 15, 2007 to June 1, 2009, Motors at all times had cash on hand in excess of $2,265,858.12.

## EFFECT OF MOTORS'S BANKRUPTCY FILING

30.   The Settlement Agreement expressed the clear intent of Motors and NCR that the terms of the Settlement Agreement would not be modified by the subsequent bankruptcy of

5

either party. Specifically, it stated: "The terms, benefits, and obligations of this Agreement for [Motors] or for NCR, respectively, shall not be terminated, modified, or discharged by any Chapter 11 bankruptcy resolution, and any plan of reorganization that may ever be proposed by [Motors] or by NCR respectively, in the future shall so provide."

31. Funds that the debtor holds in trust, whether express or constructive, are not property of the bankruptcy estate.

## COUNT I: EXPRESS TRUST

32. NCR incorporates by reference paragraphs 1-31 of this Complaint as if set forth in full herein.

33. The Settlement Agreement and District Court JOD created the NCR Total Overage as an express trust with Motors as the trustee and NCR as the beneficiary.

34. The NCR Total Overage is not, therefore, property of the Motors bankruptcy estate.

WHEREFORE, NCR respectfully requests this Court to declare, pursuant to Bankruptcy Rules 7001(2) and (9), that Motors holds the NCR Total Overage in trust for NCR, that the NCR Total Overage may not be distributed to Motors' creditors as part of the bankruptcy plan, and that the NCR Total Overage must be turned over to NCR.

## COUNT II: CONSTRUCTIVE TRUST

35. NCR incorporates by reference paragraphs 1-31 of this Complaint as if set forth in full herein.

36. "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

6

*Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984) (quoting *Beatty v. Guggenheim Exploration Co.* 122 N.E. 378 (N.Y. 1919) (Cardozo, J.)).

37. Motors acquired the NCR Total Overage in circumstances where it could not "in good conscience retain the beneficial interest" and, in fact, expressly and explicitly agreed that NCR retained the "beneficial interest" in the NCR Total Overage. Motors also acknowledged and pledged to take no action inconsistent with, NCR's beneficial ownership of the NCR's Total Overage or either component thereof.

38. Motors is, therefore, a constructive trustee bound to hold the NCR Total Overage on NCR's behalf.

39. The NCR Total Overage is not property of the Motors bankruptcy estate.

WHEREFORE, NCR respectfully requests this Court to declare, pursuant to Bankruptcy Rules 7001(2) and (9), that Motors holds the NCR Total Overage in trust for NCR, that the NCR Total Overage may not be distributed to Motors' unsecured creditors as part of the bankruptcy plan, and that the NCR Total Overage must be turned over to NCR.

## COUNT III: ADMINISTRATIVE EXPENSE

40. NCR incorporates by reference paragraphs 1-31 of this Complaint as if set forth in full herein.

41. As the Settlement Agreement and District Court JOD make clear, although the NCR Total Overage was held by Motors, the NCR Total Overage at all times belonged to NCR.

42. In fact, as of the Petition Date, Motors had possession of the NCR Total Overage.

43. If the Court determines that Motors is no longer in possession of the NCR Total Overage, NCR is entitled to an administrative expense in the amount of the NCR Total Overage.

44. Motors and NCR agreed that, in the event of any bankruptcy filing by either party, "performance of any and all obligations, duties and actions of the bankrupt party pursuant to this agreement shall to the extent possible be deemed to have the priority status of administrative expenses pursuant to 11 U.S.C. Sections 503(b) and 507(a)(1)."

WHEREFORE, NCR respectfully requests this Court to allow NCR an administrative expense in the amount of the NCR Total Overage under 11 U.S.C. § 503(b).

                          HANGLEY ARONCHICK SEGAL & PUDLIN

Date:  January 19, 2011          /s/ Matthew A. Hamermesh
                                      Matthew A. Hamermesh (*pro hac vice* motion to be filed)
                                      Joseph A. Dworetzky (*pro hac vice* motion to be filed)
                                      Jacqueline R. Dungee (JD6936)
                                      Dylan J. Steinberg (*pro hac vice* motion to be filed)
                                      One Logan Square, 27th Floor
                                      Philadelphia, PA 19103
                                      (215) 568-6200

                                      *Attorneys for NCR Corporation*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CARGILL, INC., et al.,

       Plaintiffs,                Case No. 3:98-cv-3601

     -vs-                               Chief Magistrate Judge Michael R. Merz

ABCO CONSTRUCTION, et al.,

       Defendants.

## JUDGMENT, ORDER, AND DECREE

      WHEREAS, the Court issued a "Revised Order for Binding Arbitration" (Doc. No. 737), on May 9, 2007, pursuant to which this action was stayed pending binding arbitration between and among Plaintiffs General Motors Corporation ("GM"), NCR Corporation ("NCR") and Defendant Bridgestone/Firestone, Inc. ("BF-DTR"); and

      WHEREAS, Plaintiffs GM and NCR Corporation and Defendant BF-DTR, in lieu of arbitration, have reached an agreement with respect to the respective claims raised in this action, however denominated, by Plaintiffs General Motors Corporation and NCR Corporation and Defendant Bridgestone/Firestone, Inc., and

      WHEREAS, Plaintiffs General Motors Corporation and NCR Corporation and Defendant Bridgestone/Firestone, Inc., intend that the agreement be enforceable against each other; this twenty-first day of November, 2007, it is therefore hereby

      ORDERED that the following definitions apply herein:

1.   "Site Costs" shall mean all actual or potential liabilities, remedies, claims, duties, obligations, costs (including any claim for past costs and government costs), or penalties with respect to environmental conditions at, emanating from, or related to the North Sanitary Landfill Superfund Site in Dayton, Ohio (a/k/a Valleycrest Landfill) (the "Site"), and arising under applicable federal, state, or common law. "Site Costs" shall include both AOC Costs and Remedial Costs, as well as administrative costs such as common counsel litigation costs. "Site Costs" shall not include costs incurred in connection with natural resource damages or any private toxic tort claims.

1

2. "AOC Costs" shall mean that portion of Site Costs attributable to complying with a certain Administrative Order on Consent ("AOC") (Docket No. V-W-98-C-496) issued by the U.S. Environmental Protection Agency with respect to the Site, including administrative costs associated with such activities.

3. "Remedial Costs" shall mean Site Costs other than AOC Costs.

4. "Settlement Dollars" means any and all amounts received in the past, present or future by GM, NCR and/or the Valleycrest Landfill Site Group (a group undertaking certain response actions at the Site, of which GM and NCR are members) ("VLSG") (whether pre-, post- or during this Litigation) from any entity that is or was allegedly responsible for response costs at the Site as a Generator, to settle its respective liability, in whole or in part, with respect to and/or to pay Site Costs at the Site, including payments from estates in bankruptcy, and any interest actually earned thereon. The term "Settlement Dollars" includes amounts paid by Plaintiffs Cargill, Dayton Walther/Kelsey Hayes, Duriron, Standard Register and TRW to GM in settlement of their Site liability and to the VLSG as assessments. The term "Settlement Dollars" includes any future Site settlement payments to the VLSG from Generator defendants in this Litigation and from other Generators including the City of Dayton, Montgomery County, DAP Products, Inc. and defendant Amcast Industrial Corporation. The term "Settlement Dollars" does not include amounts paid by BF-DTR to GM. The term "Settlement Dollars" does not include amounts paid by GM, NCR and plaintiff Waste Management Inc. to the VLSG.

5. "NCR's AOC Cost Overage" means the amount over 1% of the Generators' Share (54%) of the AOC costs that NCR has paid towards AOC Costs. As of August 20, 2007 NCR's AOC Cost Overage is $1,371,054.45.

6. "NCR's Remedial Cost Overage" means the amount over 15.4% of the Generators' Share (approximately 54%) of the Remedial Costs that NCR has paid towards Remedial Costs, less Settlement Dollars. As of August 20, 2007, NCR's Remedial Cost Overage is $449,206.40.

7. "NCR's Total Overage" means the sum of NCR's AOC Cost Overage and NCR's Remedial Cost Overage, together with interest.

8. "Generator" means any entity that is or was allegedly responsible for response costs at the Site as an arranger for disposal of hazardous substances disposed of at the Site, pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). For purposes of this Order and Judgment, plaintiff Waste Management Inc. is not a Generator.

9.  "Generators' Share," with respect to AOC Costs, means 54% of AOC Costs. "Generators' Share," with respect to Remedial Costs, means that portion of Remedial Costs required to be paid by any Generator or Generators pursuant to the terms of the VLSG Site Participation Agreement (as amended), which is the agreement among the members of the VLSG.

It is further ORDERED, ADJUDGED, and DECREED that, if either of NCR or GM becomes obligated to pay any AOC Costs, whether by agreement, judgment, Order, or otherwise, any such obligation shall be divided between NCR and GM such that NCR will pay 1% and GM will pay 99% of the combined obligations of GM and NCR, taking into account NCR's Total Overage in accordance with the certain Settlement Agreement between GM and NCR dated November 15, 2007 (the "Settlement Agreement").

It is hereby further ORDERED, ADJUDGED, and DECREED that, if any of NCR, GM, or BF-DTR becomes obligated to pay any Remedial Costs, whether by agreement, judgment, Order, or otherwise, any such obligation shall be divided among NCR, GM and BF-DTR such that NCR will pay 15.4% of the combined obligations of GM, NCR and BF-DTR, as such obligation is reduced by Settlement Dollars in accordance with the Settlement Agreement, taking into account NCR's Total Overage in accordance with the Settlement Agreement, GM will pay 67.1 % of the combined obligations of GM, NCR and BF-DTR, as such obligation is reduced by Settlement Dollars in accordance with the Settlement Agreement, and BF-DTR will pay 17.5% of the combined obligations of GM, NCR and BF-DTR, as such obligation is reduced by Settlement Dollars in accordance with the Settlement Agreement.

It is hereby further ORDERED, ADJUDGED, and DECREED that GM shall hold, on behalf of NCR, NCR's Total Overage, and will pay interest thereon to NCR; NCR will continue to own NCR's Total Overage, and GM will pay out to third parties such portions of NCR's Total Overage as are necessary to satisfy NCR's obligations with respect to Site Costs.

It is hereby further ORDERED, ADJUDGED, and DECREED that, as long as and whenever either GM or NCR is obligated or both of them are obligated, whether by agreement, judgment, Order, or otherwise, to make any payment of Remedial Costs or AOC Costs, GM shall pay NCR's share of such costs, and NCR's Total Overage shall be reduced, dollar for dollar, by the amount of such payments that GM makes on behalf of NCR, until NCR's Total Overage is depleted, at which point each of GM and NCR will timely pay the full value of its respective

3

share of such costs as they come due.

It is hereby further ORDERED, ADJUDGED and DECREED that NCR's Total Overage shall accrue interest at the prime interest rate as of November 15, 2007, compounded yearly and computed on an amount equal to the weighted average balance of the preceding year, and such interest shall be paid by GM to NCR by means of crediting NCR's Total Overage amount accordingly, from November 15, 2007, until NCR's Total Overage is depleted.

It is hereby further ORDERED, ADJUDGED and DECREED that a copy of the Settlement Agreement be filed with the Court no later than November 30, 2007. If the parties desire to file the Settlement Agreement under seal, they must file a motion seeking a sealing order which meets the standards adopted in *Procter &Gamble Co.v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996).

It is hereby further ORDERED, ADJUDGED and DECREED that all other terms of the Settlement Agreement are enforceable as between GM and NCR.

November 21, 2007.

                                                                                              s/ **Michael R. Merz**
                                                                  Chief United States Magistrate Judge