# EXHIBIT C

# TESTIMONY OF DEPUTY COUNTY EXECUTIVE FOR PHYSICAL SERVICES, MATTHEW J. MILLEA, ON THE PROPOSED ENVIRONMENTAL RESPONSE TRUST SETTLEMENT IN THE MOTORS LIQUIDATION COMPANY (AKA OLD GM) BANKRUPTCY PROCEEDING

## December 15, 2010

Good evening. My name is Matthew Millea, Deputy Onondaga County Executive for Physical Services.

Please allow me first to welcome you to Syracuse and Onondaga County and thank you for agreeing to hold this public hearing.

On November 23, 2010 Onondaga County submitted 12 pages of comments plus exhibits to the United States Department of Justice concerning the proposed Environmental Response Trust Consent Decree and Settlement Agreement in the General Motors Corp Bankruptcy Matter.

My comments this evening are intended to supplement and expand upon the County's written submissions.

Onondaga County requested this hearing so the County, local elected officials, the local community and Central New York taxpayers might better understand what the proposed Environmental Trust will and will not accomplish and the resulting impact on Ley Creek, Onondaga Lake, Onondaga County and the taxpayers of Onondaga County.

Simply stated, for 40 years – from the 1950s through 1993 – General Motors discharged polychlorinated biphenyls (PCBs) from its Inland Fisher Guide facility (IFG) into Ley Creek. In fact, the latest publicly available records

indicate IFG continues to discharge PCBs to Ley Creek. The Creek flows past the IFG site before discharging into Onondaga Lake approximately 4 miles downstream.

PCBs have been detected the length of Ley Creek and in Onondaga Lake. PCBs also have been detected in Old Ley Creek and in dredge spoils from Ley Creek.

It is generally known by all in Central New York, and by the EPA and the State of New York, that GM was the primary, if not sole, contributor of PCBs to Ley Creek and that GM PCBs were ultimately transported to Onondaga Lake. The State of New York stated as much as early as 1989. With the knowledge of the Department of Justice, in 2008, EPA demanded GM reimburse the federal government and the State of New York for Onondaga Lake response costs and in 2009, requested that GM undertake a remedial investigation and feasibility study of Lower Ley Creek.

Given the magnitude of GM's role in contaminating Ley Creek and its environs the County has constantly been concerned about the potential impact of the GM bankruptcy on Onondaga County. The County was pleased to learn of the plan to set aside funds from the bankruptcy proceedings to address GM's environmental legacy.

The County was confident that its concerns would be addressed when it was learned that a proposed Consent Decree would provide funds for the GM/IFG facility in New York and that funds would be available to address "the migration of Hazardous Substances emanating from certain of the Properties".

When the details of the trust were made public in late October, we were disappointed to learn that any monies that might be made available for Ley Creek would only address contamination downstream to the Route 11 Bridge or approximately half the distance the Creek flows from the GM/IFG facility to Onondaga Lake.

Our distress grew when we understood that no monies would be available for Old Ley Creek or PCB-contaminated dredge spoils removed from the Creek and located downstream of Route 11.

In our view, there is no discernable legal or factual basis for the arbitrary Route 11 boundary. Thus, we are forced to ask: "How is it that this proposed settlement is fair and reasonable to Onondaga County?"

And, moreover, "How is it that the proposed settlement is faithful to the objectives of the Superfund law, the federal hazardous waste law and the Government's public statements that this Agreement holds accountable those responsible for pollution?"

Furthermore, the EPA website that summarizes the proposed settlement explains that 29 of the 89 designated sites are not scheduled to receive funds but if conditions change, they will be eligible to receive monies from the Cushion Funding Account. Thus, Lower Ley Creek, which is known to require some form of response action, has been afforded less priority and lower consideration than 29 sites at which no current remediation is planned.

The County recognizes that the settlement agreement excludes Lower Ley Creek and the bed of Onondaga Lake from the Government's covenant not to sue. While on its face this does provide a venue for the United States to pursue a claim for contribution, we understand that claim would be pursued against the Debtor and not the Trust. If the County is correct in its understanding does the United States intend to pursue such claims against the debtor? And if so, what meaningful resources would there be to satisfy any such claim, either by the United States or Onondaga County?

Adding to our concerns over this matter are USEPA's repeated statements that the cleanup of Lower Ley Creek must be addressed within the next year so as not to delay the cleanup of Onondaga Lake. The County and others have repeatedly questioned EPA on this issue and implored officials from DOJ and EPA that Lower Ley Creek be addressed in the GM bankruptcy.

Again, documents released with the announcement of the proposed Consent Decree state that an extensive and exhaustive review of environmental conditions was done before the terms of the proposed Consent Decree were agreed to and announced publicly. Onondaga County is forced to ask:

"Exactly what was done to review this site and GM's contamination of Ley Creek?" and

"What about that review caused the seemingly arbitrary cutoff at the Route 11 Bridge?"

Given that EPA requested that GM, Onondaga County and the Town of Salina and five industrial PRPs conduct a Remedial Investigation and

Feasibility Study of Lower Ley Creek, and EPA's proposed expedited work schedule, it is only reasonable for Onondaga County to assume that EPA also will ask or direct Onondaga County to conduct any cleanup of Lower Ley Creek and its environs or that EPA will seek reimbursement from the County for any monies EPA itself might spend.

Is that the Government's plan of action here? Or can you assure Onondaga County and its taxpayers that it will not be forced to pay for the cleanup of GM's environmental legacy?

While the County and Town struggle to balance budgets and provide necessary services, any unfunded mandate is a significant burden on tax payers. Onondaga County was further disheartened to learn that GM declined to execute a proposed State of New York Order on Consent intended to address the PCB contamination of Old Ley Creek.

External experts have informed the County the potential cost for the remediation of Lower Ley Creek and its environs could approach or exceed $50 million. While any dollars that must be used to address Ley Creek would be a burden on the County, even a fraction of that estimated cost would be staggering on the County and its taxpayers.

In the press release announcing the Consent Decree, the Department of Justice proclaimed the proposed Agreement was evidence that the federal government could work with states and tribes to address the environmental legacy of Old GM. While the County believes that statement is generally true,

unfortunately it is not true with respect to Lower Ley Creek or Onondaga Lake, a site of historic spiritual significance to the Haudenosaunee peoples.

Given the above, Onondaga County requests that the proposed Consent Decree be modified and that it provide funds for the entirety of GM's PCB legacy including the cleanup of Lower Ley Creek, Old Ley Creek and any PCB-contaminated dredge spoils located downstream of Route 11.

Thank you.