# EXHIBIT A

Delphi Harrison Settlement Agreement

Garland Road Settlement Agreement

Harvey & Knott Settlement Agreement

Scatterfield Settlement Agreement

Sioux City Site Settlement Agreement

Wheeler Pit Settlement Agreement

Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia. fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy of the Consent Decree from the Consent Decree Library, please enclose a check in the amount of $27.75 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, forward a check in that amount to the Consent Decree Library at the stated address.

Maureen Katz,

*Assistant Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31802 Filed 12–17–10; 8:45 am]

**BILLING CODE 4410–15–P**

## DEPARTMENT OF JUSTICE

### Notice of Lodging of Settlement Agreement Under the Comprehensive Environmental Response, Compensation, and Liability Act and the Resource Conservation And Recovery Act

Notice is hereby given that on December 14, 2010, a proposed Wheeler Pit Consent Decree and Settlement Agreement ("Wheeler Pit Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/ a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Wheeler Pit Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); the United States of America; and the State of Wisconsin. The Settlement Agreement resolves claims and causes of action of the Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources against Old GM under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601–9675 with respect to the Wheeler Pit Superfund Site in Rock County, Wisconsin (the "Wheeler Pit Site").

Under the Wheeler Pit Settlement Agreement, Old GM will make a cash payment of $385,991 to Wisconsin for remediation at the Wheeler Pit Site. EPA will also receive an allowed general unsecured claim with respect to unreimbursed past response costs for remediation at the Wheeler Pit Site for $95,045.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Wheeler Pit Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754. Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Wheeler Pit Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Wheeler Pit Settlement Agreement may also be examined on the following Department of Justice Web site, *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* Copies of the Wheeler Pit Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $5.75 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check in that amount to the Consent Decree Library at the stated address.

Maureen Katz,

*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31868 Filed 12–17–10; 8:45 am]

**BILLING CODE 4410–15–P**

## DEPARTMENT OF JUSTICE

### Notice of Lodging of Settlement Agreement Under the Comprehensive Environmental Response, Compensation, and Liability Act and the Resource Conservation and Recovery Act

Notice is hereby given that on December 14, 2010, a proposed Sioux City Site Consent Decree and Settlement Agreement ("Sioux City Site Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/ a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Sioux City Site Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); the United States of America; and the State of Iowa. The Settlement Agreement resolves causes of action of the Iowa Department of Natural Resources against Old GM under Iowa Code section 455B.186(1); 567 Iowa Admin. Code 38.3(1) and 51.6 with respect to the GM AC Rochester Division Site in Sioux City, Iowa (the "Sioux City Site Site").

Under the Sioux City Site Settlement Agreement, Old GM will make a cash payment of $6,476,634 to EPA for remediation at the Sioux City Site Site.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Sioux City Site Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754. Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Sioux City Site Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Sioux City Site Settlement Agreement may also be examined on the following Department of Justice Web site, *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* Copies of the Sioux City Site Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood

(tonia.fleetwood@usdoj.gov), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $5.25 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check in that amount to the Consent Decree Library at the stated address.

Maureen Katz,

*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31866 Filed 12–17–10; 8:45 am]

BILLING CODE 4410–15–P

## DEPARTMENT OF JUSTICE

### Notice of Lodging of Settlement Agreement Under the Resource Conservation and Recovery Act

Notice is hereby given that on December 14, 2010, a proposed Scatterfield Consent Decree and Settlement Agreement ("Scatterfield Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Scatterfield Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); the United States of America; and the State of Indiana. The Settlement Agreement resolves causes of action of the Environmental Protection Agency ("EPA") and the Indiana Department of Natural Resources ("IDNR") against Old GM under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901–6992k, with respect to the Delphi E & E Management Systems Site at 2900 South Scatterfield Road, in Anderson, Indiana (the "Scatterfield Site").

Under the Scatterfield Settlement Agreement, Old GM will make a cash payment of $3,599,039 to a trust created pursuant to 40 CFR Section 264.151(a)(1) for remediation at the Scatterfield Site.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Scatterfield Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed

to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754. Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Scatterfield Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Scatterfield Settlement Agreement may also be examined on the following Department of Justice Web site, *http://www.usdoj.gov/enrd/Consent_Decrees.html.* Copies of the Scatterfield Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $5.25 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check in that amount to the Consent Decree Library at the stated address.

Maureen Katz,

*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31866 Filed 12–17–10; 8:45 am]

BILLING CODE 4410–15–P

## DEPARTMENT OF JUSTICE

### Notice of Lodging of Settlement Agreement Under The Resource Conservation and Recovery Act

Notice is hereby given that on December 14, 2010, a proposed Delphi Harrison Consent Decree and Settlement Agreement ("Delphi Harrison Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Delphi Harrison Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and

Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); the United States of America; and the State of Ohio. The Settlement Agreement resolves causes of action of the Environmental Protection Agency ("EPA") against Old GM under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901–6992k, with respect to the Delphi Harrison Thermal Superfund Site in Montgomery County, Dayton, Ohio (the "Delphi Harrison Site").

Under the Delphi Harrison Settlement Agreement, Old GM will make a cash payment of $5,329,343 to Ohio EPA for remediation at the Delphi Harrison Site.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Delphi Harrison Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754. Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Delphi Harrison Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Delphi Harrison Settlement Agreement may also be examined on the following Department of Justice Web site, *http://www.usdoj.gov/enrd/Consent_Decrees.html.* Copies of the Delphi Harrison Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $5.25 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check

in that amount to the Consent Decree Library at the stated address.

**Maureen Katz,**
*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31807 Filed 12–17–10; 8:45 am]
BILLING CODE 4410–15–P

# DEPARTMENT OF JUSTICE

**Notice of Lodging of Settlement Agreement Under the Comprehensive Environmental Response, Compensation, and Liability Act**

Notice is hereby given that on December 14, 2010, a proposed Harvey & Knott Consent Decree and Settlement Agreement ("Harvey & Knott Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/ a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Harvey & Knott Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); and the United States of America. The Settlement Agreement resolves claims and causes of action of the Environmental Protection Agency ("EPA") against Old GM under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601–9675 with respect to the Harvey & Knott Drum Superfund Site in New Castle County, Delaware (the "Harvey & Knott Site").

Under the Harvey & Knott Settlement Agreement, Old GM will make a cash payment of $2,484,816 to EPA for remediation at the Harvey & Knott Site. EPA will also receive an allowed general unsecured claim $377,063 for estimated future oversight costs at the Harvey & Knott Site.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Harvey & Knott Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754.

Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Harvey & Knott Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Harvey & Knott Settlement Agreement may also be examined on the following Department of Justice Web site, *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* Copies of the Harvey & Knott Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of $5.00 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check in that amount to the Consent Decree Library at the stated address.

**Maureen Katz,**
*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31803 Filed 12–17–10; 8:45 am]
BILLING CODE 4410–15–P

# DEPARTMENT OF JUSTICE

**Notice of Lodging of Settlement Agreement Under the Comprehensive Environmental Response, Compensation, and Liability Act**

Notice is hereby given that on December 14, 2010, a proposed Garland Road Consent Decree and Settlement Agreement ("Garland Road Settlement Agreement") in the bankruptcy matter, *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.,* Jointly Administered Case No. 09–50026 (REG), was lodged with the United States Bankruptcy Court for the Southern District of New York. The Parties to the Garland Road Settlement Agreement are debtors Motors Liquidation Corporation, formerly known as General Motors Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, "Old GM"); the United

States of America; and the State of Ohio. The Settlement Agreement resolves claims and causes of action of the Environmental Protection Agency ("EPA") and the Ohio Environmental Protection Agency ("Ohio EPA") against Old GM under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601–9675 with respect to the Garland Road Landfill Superfund Site in Miami County, Ohio (the "Garland Road Site").

Under the Garland Road Settlement Agreement, Old GM will make a cash payment of $6,732,895 to Ohio EPA for remediation at the Garland Road Site. EPA will receive an allowed general unsecured claim of $2,505,547 for estimated future oversight costs and for unreimbursed past response costs at the Delphi Harrison Site. Ohio EPA will receive an allowed general unsecured claim for $134,326 for unreimbursed past response costs at the Delphi Harrison Site.

The Department of Justice will receive, for a period of thirty days from the date of this publication, comments relating to the Garland Road Settlement Agreement. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and either e-mailed to *pubcomment-ees.enrd@usdoj.gov* or mailed to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611, and should refer to *In re Motors Liquidation Corp., et al.,* D.J. Ref. 90–11–3–09754. Commenters may request an opportunity for a public meeting in the affected area, in accordance with Section 7003(d) of RCRA, 42 U.S.C. 6973(d).

The Garland Road Settlement Agreement may be examined at the Office of the United States Attorney, 86 Chambers Street, 3rd Floor, New York, New York 10007, and at the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW., Washington, DC 20460. During the public comment period, the Garland Road Settlement Agreement may also be examined on the following Department of Justice Web site, *http:// www.usdoj.gov/enrd/ Consent_Decrees.html.* Copies of the Garland Road Settlement Agreement may also be obtained by mail from the Consent Decree Library, P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044–7611 or by faxing or e-mailing a request to Tonia Fleetwood (*tonia.fleetwood@usdoj.gov*), fax no. (202) 514–0097, phone confirmation number (202) 514–1547. In requesting a copy from the Consent Decree Library, please enclose a check in the amount of

$5.75 (25 cents per page reproduction cost) payable to the U.S. Treasury or, if by e-mail or fax, please forward a check in that amount to the Consent Decree Library at the stated address.

**Maureen Katz,**
*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2010–31808 Filed 12–17–10; 8:45 am]

**BILLING CODE 4410–15–P**

# DEPARTMENT OF JUSTICE

## Antitrust Division

## United States v. L.B. Foster Company and Portec Rail Products, Inc.; Proposed Final Judgment and Competitive Impact Statement

Notice is hereby given pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. 16(b)–(h), that a proposed Final Judgment, Hold Separate Stipulation and Order, and Competitive Impact Statement have been filed with the United States District Court for the District of Columbia in *United States v. L.B. Foster Company and Portec Rail Products, Inc.,* Civil Action No. 1:10–cv–02115. On December 14, 2010, the United States filed a Complaint alleging that the proposed acquisition by L.B. Foster Company ("Foster") of Portec Rail Products, Inc. ("Portec") would violate Section 7 of the Clayton Act, 15 U.S.C. 18. The proposed Final Judgment, filed at the same time as the Complaint, requires Foster to divest Portec's entire rail joint operations (excluding some assets in the United Kingdom), including Portec's manufacturing facility located in Huntington, West Virginia and tangible and intangible assets associated with Portec's rail joints, as well as assets used to manufacture and sell certain other related and complementary products currently manufactured at the Huntington facility. The proposed Final Judgment requires that these assets be sold to Koppers Inc. Copies of the Complaint, proposed Final Judgment, and Competitive Impact Statement are available for inspection at the Department of Justice, Antitrust Division, Antitrust Documents Group, 450 Fifth Street, NW., Suite 1010, Washington, DC 20530 (telephone: (202) 514–2481), on the Department of Justice's Web site at *http://www.usdoj.gov/atr,* and at the Office of the Clerk of the United States District Court for District of Columbia. Copies of these materials may be obtained from the Antitrust Division upon request and payment of the copying fee set by

Department of Justice regulations. Public comment is invited within 60 days of the date of this notice. Such comments and responses thereto will be published in the **Federal Register** and filed with the Court. Comments should be directed to Maribeth Petrizzi, Chief, Litigation II Section, Antitrust Division, U.S. Department of Justice, 450 Fifth Street, NW., Suite 8700, Washington, DC 20530 (telephone: (202) 307–0924).

**Patricia A. Brink,**
*Director of Civil Enforcement.*

## United States District Court for the District Of Columbia

*United States of America, United States Department of Justice, Antitrust Division, 450 Fifth Street, NW., Suite 8700, Washington, DC 20530,* Plaintiff

v.

*L.B. Foster Company, 415 Holiday Drive, Pittsburgh, Pennsylvania 15220, and Portec Rail Products, Inc., 900 Old Freeport Road, Pittsburgh, Pennsylvania 15238,* Defendants.
*Case:* 1:10–cv–02115.
*Assigned To:* Urbina, Ricardo M.
*Assign. Date:* 12/14/2010.
*Description:* Antitrust.

## Complaint

The United States of America ("United States"), acting under the direction of the Attorney General of the United States, brings this civil antitrust action against Defendants L.B. Foster Company ("Foster") and Portec Rail Products, Inc. ("Portec") to enjoin Foster's proposed acquisition of Portec and to obtain other equitable relief. The United States complains and alleges as follows:

### I. Nature of the Action

1. On February 16, 2010, Foster and Portec entered into an Agreement and Plan of Merger ("Merger Agreement"). Pursuant to the Merger Agreement, on February 26, 2010, Foster made a cash tender offer to acquire all the outstanding shares of common stock of Portec for $11.71 per share. On August 30, 2010, Foster increased its offer to $11.80 per share. The transaction is valued at approximately $114 million.

2. In the United States, Foster's proposed acquisition of Portec likely would substantially lessen competition in two separate product markets—bonded insulated rail joints ("bonded joints") and polyurethane-coated insulated rail joints ("poly joints"). Foster and Portec are virtually the only manufacturers of bonded joints in the United States and currently supply approximately 95 percent of the market. For many customers, Foster and Portec

are the only approved suppliers of these joints. In addition, Foster and Portec are two of only three suppliers of poly joints in the United States and currently supply approximately 54 percent of the market.

3. Elimination of the competition between Foster and Portec likely will result in Foster's ability to unilaterally raise prices of bonded joints and poly joints to most customers. The proposed acquisition also likely would reduce Foster's incentive to invest in innovation in bonded joints. In addition, by eliminating Portec as a supplier, the acquisition increases the likelihood of coordinated interaction between Foster and the other supplier of poly joints.

4. As a result, the proposed acquisition likely would substantially lessen competition in the development, manufacture, and sale of bonded joints and in the development, manufacture, and sale of poly joints in the United States, in violation of Section 7 of the Clayton Act, 15 U.S.C. 18.

### II. The Defendants

5. Foster is incorporated in Pennsylvania and has its headquarters in Pittsburgh, Pennsylvania. It manufactures and distributes numerous products and services for the rail, construction, energy, and utility industries and has approximately 30 locations throughout the United States. For the rail industry, Foster manufactures, among other products, bonded joints, poly joints, tie plates, and rails. Foster had total revenues of approximately $512 million in 2008 and approximately $382 million in 2009.

6. Portec is incorporated in West Virginia and has its headquarters in Pittsburgh, Pennsylvania. Portec also manufactures and distributes numerous products and services for the rail industry and other industries. For the rail industry, Portec manufactures, among other things, bonded joints, poly joints, rail lubricators, end posts, and curv blocks. Portec has several locations in the United States and abroad. Portec had total revenues of approximately $109 million in 2008 and approximately $92.2 million in 2009.

### III. Jurisdiction and Venue

7. The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. 4 and 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. 18.

8. Defendants develop, manufacture, and sell bonded joints, poly joints, and other products in the flow of interstate commerce. Defendants' activities in the

PREET BHARARA
United States Attorney for the
Southern District of New York
NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2741
Facsimile:  (212) 637-2750
Email: natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
                                                :
                                                :
In re:                                          :      Chapter 11
                                                :
MOTORS LIQUIDATION COMPANY, *et al.,*           :      Case No. 09-50026 (REG)
        f/k/a/ GENERAL MOTORS CORP., *et*       :
*al.,*                                          :      Jointly Administered
                                                :
                        Debtors.                :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF LODGING OF PROPOSED
## WHEELER PIT SETTLEMENT AGREEMENT

The United States of America hereby lodges with the Court the proposed Wheeler Pit

Settlement Agreement attached hereto as Exhibit A.   This Settlement Agreement has been

executed by all parties.

The United States requests that the Court not approve the proposed Settlement Agreement

at this time.   Notice of the lodging of the proposed Settlement Agreement will be published in the

*Federal Register*, following which the United States Department of Justice will accept public

comments on the proposed Settlement Agreement for a 30-day period.   After the conclusion of

the public comment period, the United States will file with the Court any comments received, as

well as responses to the comments, and at that time, if appropriate, will request that the Court

approve the proposed Settlement Agreement.

Dated:          New York, New York
                December 14, 2010


                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States of America


                        By:         _____/s/ Natalie N. Kuehler_____
                                    NATALIE N. KUEHLER
                                    DAVID S. JONES
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Telephone:   (212) 637-2741
                                    Facsimile:   (212) 637-2750
                                    Email: natalie.kuehler@usdoj.gov

2

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

## CONSENT DECREE AND SETTLEMENT AGREEMENT
## BETWEEN THE DEBTORS, THE UNITED STATES OF AMERICA,
## AND THE STATE OF WISCONSIN

### I. BACKGROUND

WHEREAS, Motors Liquidation Company (f/k/a General Motors Corp.) ("**MLC**"), a Delaware corporation, and certain of its affiliates commenced these chapter 11 cases by filing with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on June 1, 2009, and on October 9, 2009, Remediation and Liability Management Company ("**REALM**") and Environmental Corporate Remediation Company, Inc. ("**ENCORE**") commenced these chapter 11 cases by filing with the Bankruptcy Court voluntary petitions for relief under the Bankruptcy Code, which cases have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "**Bankruptcy Cases**");

WHEREAS, on June 1, 2009, General Motors Corp. also filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363;

WHEREAS, as part of the sale of assets, General Motors Corp. excluded from the sale certain real property and personalty it owned;

WHEREAS, on July 5, 2009, the Bankruptcy Court approved the sale of assets to NGMCO, Inc. (a/k/a Newco), now known as General Motors Company ("New GM");

WHEREAS, following the sale of assets, General Motors Corp. was renamed Motors Liquidation Company ("MLC"), and has continued to own and manage the real property assets excluded from the sale to Newco;

WHEREAS, the United States of America (the "**United States**"), on behalf of the United States Environmental Protection Agency ("**EPA**"), and the State of Wisconsin, on behalf of the State of Wisconsin Department of Natural Resources ("**WDNR**") (collectively, the "**Governments**"), contend that MLC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), 42 U.S.C. §§ 9601, et seq., to comply with injunctive orders and for costs incurred and to be incurred by the Governments in response to releases and threats of releases of hazardous substances at or in connection with the Wheeler Pit Superfund Site in Rock County, Wisconsin  (the "**Priority Order Site**");

WHEREAS, the United States, on behalf of EPA, has filed a proof of claim in the Bankruptcy Cases (Claim No. 64064) (the "**EPA Proof of Claim**") against MLC, which includes claims and protective claims regarding, *inter alia*, the Priority Order Site;

WHEREAS, Wisconsin, on behalf of WDNR, has filed a proof of claim in the Bankruptcy Cases (Claim No. 44759) (the "**State Proof of Claim**") against MLC, regarding, *inter alia*, the Priority Order Site;

WHEREAS, the United States, acting on behalf of EPA, and Wisconsin, acting on behalf of WDNR, contend that GM was required to conduct a remedial action pursuant to a Unilateral Administrative Order ("**UAO**") issued by EPA to GM on May 6, 1991 under Section 106 of

CERLCA, 42 U.S.C. § 9606, to address the immediate health threats posed by volatile organic compounds ("**VOCs**"), toluene, ethylbenzene, xylenes, phthalates, antimony, barium, cadmium, chromium, copper, lead, mercury, nickel, zinc, 1,4 dichlorobenzene, 1,3 dicholorobenzene, iron, and manganese in the soil and groundwater at the Priority Order Site;

WHEREAS, the United States, on behalf of EPA, contends that MLC is liable for injunctive obligations and claims set forth in the EPA Proof of Claim;

WHEREAS, the United States alleges in the EPA Proof of Claim, that MLC's injunctive obligations to comply with work requirements under court orders, environmental statutes, regulations, administrative orders, licenses, and permits were regulatory obligations that MLC was required to fulfill, including, but not limited to, the work requirements set forth in the UAO;

WHEREAS, the United States also alleges in the EPA Proof of Claim, that MLC is obligated to reimburse the United States for past and future response actions and response costs incurred and to be incurred under CERCLA with respect to the Priority Order Site, plus interest;

WHEREAS, as of May 31, 2006, EPA had incurred approximately $95,045 in unreimbursed response costs;

WHEREAS, in the State Proof of Claim, Wisconsin alleges that MLC is obligated to reimburse Wisconsin for future response actions and response costs to be incurred, plus interest;

WHEREAS, MLC does not accept as true all of the allegations in the United States and Wisconsin Proofs of Claims referenced above, but has concluded that further litigation or estimation proceedings are not in the best interests of the Debtors and their estates, and that this Wheeler Pit Settlement Agreement is an appropriate means of resolving these matters;

WHEREAS, the parties hereto wish to resolve the Governments' claims and causes of action with respect to the Priority Order Site and address other issues relating to environmental matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the parties and is entered into solely for purposes of this settlement, and the parties reserve their legal arguments as to any issues involved in other matters, including with respect to sites and properties other than the Priority Order Site included in the EPA Proof of Claim and the State Proof of Claim;

WHEREAS, on August 31, 2010, the Debtors filed a proposed joint chapter 11 Plan (as may be amended, "Plan") that incorporates this Wheeler Pit Settlement Agreement as a Priority Order Site Consent Decree and Settlement Agreement to be filed with the Bankruptcy Court;

WHEREAS, in the event that this Wheeler Pit Settlement Agreement is not approved by the Bankruptcy Court, the Parties reserve the right to propose that the cash payment provided for in Paragraph 4 be paid to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, the United States, Wisconsin, and MLC agree to the terms and provisions of this Wheeler Pit Settlement Agreement;

WHEREAS, settlement of the matters governed by this Wheeler Pit Settlement Agreement is fair, equitable, and in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Wheeler Pit Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II. DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "**Allowed General Unsecured Claim**" shall have the meaning set forth in the Plan.

b.    "**Claims**" has the meaning provided in section 101(5) of the Bankruptcy Code.

c.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

d.    "**Debtors**" means MLC, REALM, and ENCORE.

e.    "**Effective Date**" means the day on which the Plan becomes effective in accordance with its terms and the Confirmation Order.

f.    "**NPL**" means the National Priorities List, 40 C.F.R. Part 300.

g.    "**Plan**" means the joint chapter 11 Plan filed by the Debtors on August 31, 2010, as may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms thereof and incorporating this Wheeler Pit Settlement Agreement;

h.    "**Priority Order Site**" means the Wheeler Pit Superfund Site in Rock County, Wisconsin;

i.    "**RCRA**" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq., as now in effect or hereafter amended.

j.    "**Superfund**" means the Hazardous Substances Superfund established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507.

k. "**United States**" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

l. "**Wheeler Pit Settlement Agreement**" means the Consent Decree and Settlement Agreement between the Debtors, the United States on behalf of EPA, and the State of Wisconsin.

m. "**Wisconsin**" means the State of Wisconsin and all of its agencies, departments, and instrumentalities, including WDNR.

## III.  JURISDICTION

2. The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b), as well as Article VIII of the Plan and the Confirmation Order.

## IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3. This Wheeler Pit Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors, assigns, officers, directors, and employees in their respective capacities as such, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

## V.  PRIORITY ORDER SITE – CASH PAYMENT

4. In settlement and satisfaction of the injunctive and other work obligations at issue in the UAO and alleged in the Proof of Claim and State Proof of Claim with respect to the Priority Order Site, WDNR shall receive a cash payment in the amount of $385,991 from MLC on the Effective Date.  After MLC has paid WDNR $385,991 and has paid EPA the Allowed General Unsecured Claim referenced in Paragraph 5, the Debtors and their successors, assigns, officers, directors and employees in their respective capacities as such shall have no further role or residual interest with respect to the Priority Order Site other than as expressly provided in Paragraphs 17 through 19 of this Wheeler Pit Settlement Agreement, nor shall they have any further

liability, duty or obligation in connection with the matters resolved in this Wheeler Pit Settlement Agreement, including all environmental claims and other environmental liabilities asserted in the EPA Proof of Claim and the State Proof of Claim, other than as expressly reserved in Paragraphs 17 through 19 of this Wheeler Pit Settlement Agreement.

## VI.  PRIORITY ORDER SITE—ALLOWED GENERAL UNSECURED CLAIM

5.    In settlement and satisfaction of the claim for past response costs alleged in its Proof of Claim with respect to the Priority Order Site, the United States on behalf of EPA shall have an Allowed General Unsecured Claim in the amount of $95,045, classified in Class 3 under the Plan.

## VII.  TREATMENT OF ALLOWED GENERAL UNSECURED CLAIM

6.    The Allowed General Unsecured Claim under Paragraph 5 of this Wheeler Pit Settlement Agreement (i) shall be treated as provided under Section 4.3 of the Plan of Liquidation, and (ii) shall not be subordinated to any other Allowed General Unsecured Claim pursuant to any provision of the Bankruptcy Code or other applicable law, including without limitation sections 105, 510, and 726(a)(4) of the Bankruptcy Code.

7.    Notwithstanding any other provision of this Wheeler Pit Settlement Agreement, and except as provided under applicable law or otherwise ordered by the Bankruptcy Court, there shall be no restrictions on the ability and right of EPA to transfer or sell all or a portion of any securities distributed to it pursuant to the Plan, to sell its right to all or a portion of any distributions under the Plan to one or more third parties, or to transfer or sell to one or more third parties all or a portion of any Allowed General Unsecured Claim pursuant to this Wheeler Pit Settlement Agreement.

## VIII.  DISTRIBUTION INSTRUCTIONS

8.    a.  Cash distributions to the WNDR made by MLC pursuant to Paragraph 4 shall be made to a WDNR account via wire delivery, in accordance with instructions provided to MLC by the Wisconsin Attorney General and shall reference Bankruptcy Case Number 09-50026.  The

payment instructions shall include a reference to "Wheeler Pit" and "Remediation and Redevelopment Program," which shall be used to identify all cash distributions required to be made in accordance with this Wheeler Pit Settlement Agreement.  MLC shall transmit written confirmation of such payments to WDNR at the addresses specified in Paragraph 22.

  b. Cash distributions to the United States made by MLC pursuant to Paragraph 5 shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to MLC by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 09-50026 and DOJ File Number 90-11-3-09754.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all cash distributions required to be made in accordance with this Wheeler Pit Settlement Agreement.  MLC shall transmit written confirmation of such payments to the United States at the addresses specified in Paragraph 22.  In the event that the United States sells or transfers its Allowed General Unsecured Claim, payment shall be made to a transferee only at such time as MLC and its counsel receive written instructions from the United States directing that payments be made to a transferee and instructions as to where such payments should be directed, and, prior to the closing of the Bankruptcy Cases, after an evidence of claim transfer has been filed with the Bankruptcy Court consistent with the terms of the Plan.

  c. Non-cash distributions to the United States made by MLC pursuant to Paragraph 5 shall be made to:

    U.S. Environmental Protection Agency
    Attn:  Molly Williams
    Suite 300
    4411 Montgomery Rd.
    Cincinnati, OH  45212

MLC shall transmit written confirmation of such distributions to the United States at the addresses specified in Paragraph 22 below.

9.    <u>Special Account</u>.

a.    The total cash distributions to WDNR made by MLC pursuant to Paragraph 4 shall be deposited in a special account to be retained and used to conduct or finance response actions at or in connection with the Priority Order Site and not for any other purpose, or, if no further response action is required, transferred by WDNR to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010.

b.    The total cash distributions to EPA made by MLC pursuant to Paragraph 5 (and any net cash received by EPA upon sale of any non-cash distributions made by MLC pursuant to Paragraph 5) shall be deposited in a special account within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Priority Order Site or transferred by EPA to the Superfund.

10.    <u>Credits</u>.  The total cash distributions made by MLC to WDNR and EPA under this Wheeler Pit Settlement Agreement (and any net cash received by EPA upon sale of any non-cash distributions made by MLC pursuant to Paragraph 5) shall be credited by WDNR and EPA to their accounts for the Priority Order Site, which credit shall reduce the liability of non-settling potentially responsible parties for the Priority Order Site by the amount of the credit.

11.    <u>Treatment of Distributions</u>.  None of the distributions made by MLC under this Wheeler Pit Settlement Agreement constitute, nor shall they be construed as, forfeitures, fines, or penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an admission by MLC of any facts or any violation of law.  Notwithstanding the foregoing, MLC

agrees to comply with all terms of this Wheeler Pit Settlement Agreement upon the Agreement Effective Date.

## IX.  COVENANTS NOT TO SUE

12.    With respect to the Priority Order Site (including the releases of Hazardous Substances from any portion of the Priority Order Site and all areas affected by migration of such substances emanating from the Priority Order Site), and except as specifically provided in Section X (Reservation of Rights), upon the Effective Date, the Governments covenant not to sue or assert any administrative or other civil claims or causes of action against Debtors under CERCLA, RCRA, and State environmental statutes, as well as any other environmental liabilities asserted in the EPA Proof of Claim or the State Proof of Claim.

13.    With respect to the Priority Order Site, except as specifically provided in Section X (Reservation of Rights), the EPA Proof of Claim and the State Proof of Claim shall be deemed satisfied in full in accordance with the terms of this Wheeler Pit Settlement Agreement, the Governments shall not be entitled to file any further claims under CERCLA, RCRA, or State environmental statutes, as well as any other environmental liabilities asserted in the EPA Proof of Claim or the State Proof of Claim, whether unsecured, secured, administrative priority or otherwise, and the Governments shall not receive any other distributions in the Bankruptcy Cases on account of such claims.

14.    These covenants not to sue in Section IX (and the reservations thereto) shall also apply to Debtors' successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of Debtors.

10

15.   The covenants not to sue contained in this Wheeler Pit Settlement Agreement extend only to Debtors and the persons described in Paragraph 14 above and do not extend to any other person or entity.  Nothing in this Wheeler Pit Settlement Agreement is intended as a covenant not to sue any person or entity other than the Debtors, the United States, Wisconsin, and the persons or entities described in Paragraph 14.   Except as provided in Paragraph 14, the United States, Wisconsin, and Debtors expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States, Wisconsin, or Debtors may have against all other persons or entities, firms, corporations, entities, or predecessors of Debtors for any matter arising at or relating in any manner to the Priority Order Site and/or claims or causes of action addressed herein.

16.   Debtors covenant not to sue and agree not to assert claims or causes of action against the United States or Wisconsin with respect to the Priority Order Site, including but not limited to any direct or indirect claim for reimbursement from (i) the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or (ii) any other provision of federal or state law; any claims against the United States or Wisconsin, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or State environmental statutes; and any claims arising out of the response activities at the Priority Order Site.  Nothing in this Wheeler Pit Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d), or State environmental statutes.

## X.    RESERVATION OF RIGHTS

17.    The covenants not to sue set forth in Section IX do not apply to any matters other than those expressly specified therein.  The United States and Wisconsin reserve, and this Wheeler Pit Settlement Agreement is without prejudice to, all rights against Debtors or other persons or entities with respect to all matters other than those set forth in Section IX.  The United States and Wisconsin also specifically reserve all rights against Debtors with respect to:

    (i)    any action to enforce their rights under this Wheeler Pit  Settlement Agreement;

    (ii)    any claim or cause of action for response costs and injunctive relief under CERCLA Sections 106 and 107, RCRA Sections 3008, 7002 and 7003 or state environmental law for future acts taken by the Debtors after the Effective Date that create liability under CERCLA, RCRA, or state law;

    (iii)    criminal liability; and

    (iv)    all rights with respect to any site that is not the Priority Owned Site.

Debtors' future acts creating liability under CERCLA, RCRA or state law do not include continuing releases related to Debtors' conduct at the Priority Order Site prior to the Effective Date.  The United States and Wisconsin also reserve, and this Wheeler Pit Settlement Agreement is without prejudice to any liability of Debtors' successors, assigns, officers, directors, employees, and trustees for response costs and injunctive relief under CERCLA Section 106 and 107, RCRA Sections 7002 and 7003, and state laws for any future acts taken by any such respective entity after the Effective Date that create liability under CERCLA, RCRA or state law.  Future acts creating liability under CERCLA, RCRA, or state law do not include continuing releases related to such party's conduct at the Priority Order Site prior to the Effective Date.

18.    Nothing in this Wheeler Pit Settlement Agreement shall be deemed to limit the authority of the Governments to take response action under Section 104 of CERCLA, 42 U.S.C.

§ 9604, or any other applicable federal or state law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the Governments pursuant to such authority.   Nothing in this Wheeler Pit Settlement Agreement shall be deemed to limit the information-gathering authority of the Governments under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal or state law or regulation.

19.   Except as provided in Paragraph 14, nothing in this Wheeler Pit Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person or entity not a party to this agreement.   Except as provided in paragraph 14, nothing in this Wheeler Pit Settlement Agreement diminishes the rights of the Governments, pursuant Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), or State environmental statutes, to pursue any persons or entities not a party hereto to obtain additional response costs or response actions and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2), or State environmental statutes.   Except as provided in Paragraph 14, the Governments expressly reserve all existing rights against all persons or entities not a party to this Wheeler Pit Settlement Agreement, including New GM.   MLC reserves all rights against all persons or entities not a party hereto, including the right to dispute claims filed by parties or entities other than the Governments with respect to the Priority Order Site.

## XI.  **<u>CONTRIBUTION PROTECTION</u>**

20.   The parties hereto agree, and by approving this Wheeler Pit Settlement Agreement the Bankruptcy Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Debtors are entitled, as of the

Agreement Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Settlement Agreement. The "matters addressed" in this Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) or any analogous Wisconsin law, include, without limitation, response costs incurred or to be incurred by EPA, Wisconsin, or potentially responsible parties or Claims with respect to the Priority Order Site.

21.    Debtors agree that with respect to any suit for contribution brought against them after the Agreement Effective Date for matters related to this Settlement Agreement, they will notify the United States within 15 business days of service of the complaint upon them. In addition, in connection with such suit, Debtors shall notify the United States within 15 business days of service or receipt of any Motion for Summary Judgment and within 15 business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Sections IX and X (Covenants Not to Sue and Reservation of Rights)).

## XII.  NOTICES AND SUBMISSIONS

22.    Whenever, under the terms of this Wheeler Pit Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Except as otherwise provided in this Wheeler Pit Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States, Wisconsin, and MLC, REALM, and ENCORE, respectively.

14

<u>The United States</u>:

ROBERT G. DREHER
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Ref. DOJ File No. 90-11-3-1-09754

DAVID S. JONES.
NATALIE N. KUEHLER
Assistant United States Attorney
Office of the United States Attorney
    for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY  10007

<u>U.S. EPA</u>:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

MARIA GONZALEZ
U.S. Environmental Protection Agency
Region 5, C-14J
77 West Jackson Boulevard
Chicago, Illinois 60604

<u>The State of Wisconsin</u>:

ANNE C. MURPHY
Assistant Attorney General
Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

DARSI J. FOSS
Chief, Brownfields and Outreach Section
Department of Natural Resources
101 South Webster Street (RR/5)
Madison, WI 53707

MLC, REALM, and ENCORE:

TED STENGER
Executive Vice President
Motors Liquidation Company, as agent for
  each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243


DAVID R. BERZ
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005

## XIII.   PUBLIC COMMENT

23.    This Wheeler Pit Settlement Agreement will be subject to a public

comment period following notice published in the Federal Register and notice under any

applicable state law providing for public comment, which may take place concurrent with

the judicial approval process under Paragraph 24 hereof.  The United States reserves the

right to withdraw or withhold its consent if the public comments regarding the Wheeler

Pit Settlement Agreement disclose facts or considerations that indicate that this Wheeler

Pit Settlement Agreement is inappropriate, improper, or inadequate.  The United States

will promptly provide Debtors copies of any public comments received during the public

comment period.  At the conclusion of the public comment period, the United States will

provide the Bankruptcy Court with copies of any public comments and their response

thereto.  If the United States withdraws or withholds its consent to the Wheeler Pit

Settlement Agreement prior to the Effective Date, this Wheeler Pit Settlement Agreement

shall be void and have no further force and effect.    Any changes, revisions or

amendments to the Wheeler Pit Settlement Agreement in response to public comment are subject to the approval of all Parties.

## XIV.    JUDICIAL APPROVAL

24.    The settlement reflected in this Wheeler Pit Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  Debtors shall move promptly for court approval of this Wheeler Pit Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XV.    PLAN

25.    The Debtors shall incorporate this Wheeler Pit Settlement Agreement into the Plan by reference and approval of this Wheeler Pit Settlement Agreement shall be a condition precedent to confirmation of the Plan.  The Debtors shall not file a Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Wheeler Pit Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Wheeler Pit Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Wheeler Pit Settlement Agreement.  The Governments shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Wheeler Pit Settlement Agreement.  The Parties reserve all other rights or defenses that they may have with respect to the Plan.  In the event of any inconsistency between the Plan, any order confirming the Plan, and this Wheeler Pit Settlement Agreement, the terms of this Wheeler Pit Settlement Agreement shall control.

## XVI.    RETENTION OF JURISDICTION

26.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Wheeler Pit Settlement Agreement and the parties hereto, for the duration of the

performance of the terms and provisions of this Wheeler Pit Settlement Agreement for the purpose of enabling any of the parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Wheeler Pit Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XVII.  EFFECTIVENESS OF SETTLEMENT AGREEMENT

27.    This Wheeler Pit Settlement Agreement shall be effective after the close of the public comment period in accordance with Paragraph 23, approval by the Bankruptcy Court pursuant to Paragraph 24 of this Wheeler Pit Settlement Agreement and upon the Effective Date of the Debtor's Plan incorporating this Wheeler Pit Settlement Agreement.

## XVIII.  SIGNATORIES/SERVICES

28.    The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Wheeler Pit Settlement Agreement and to execute and bind legally such party to this document.

[REMAINDER OF THE PAGE LEFT BLANK]

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: ___12/13/10___

Date: ___12/14/2010___

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: ___12/14/10___

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

19

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

---

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
   Division
U.S. Department of Justice

Date: _____

---

David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: _____

---

Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

---

Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: 11/17/10

**FOR WISCONSIN:**

J.B. VAN HOLLEN
Attorney General

Date: 12/2/10

By: _Anne C. Murphy_
ANNE C. MURPHY
Assistant Attorney General
Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

MATTHEW J. FRANK
Secretary

Date: 12/2/10

By: _Allen K. Shea_
ALLEN K. SHEA
Deputy Secretary
Wisconsin Department of Natural Resources
P.O. Box 7921
Madison, WI 53707-7921

**FOR MLC, REALM, AND ENCORE:**

Date: _____

_____
Ted Stenger
Executive Vice President
Motors Liquidation Company, as agent for
    each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI 48243
Tel.: (313) 486-4044
Fax: (313) 486-4259
Email: tstenger@alixpartners.com

Date: _____

_____
James M. Redwine
Vice President of Environmental Affairs
Motors Liquidation Company, as agent for
    each of the foregoing entities

20

**FOR WISCONSIN:**

J.B. VAN HOLLEN
Attorney General

Date: _____    By: _____

ANNE C. MURPHY
Assistant Attorney General
Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

MATTHEW J. FRANK
Secretary

Date: _____    By: _____

ALLEN K. SHEA
Deputy Secretary
Wisconsin Department of Natural Resources
P.O. Box 7921
Madison, WI 53707-7921

**FOR MLC, REALM, AND ENCORE:**

Date: _____

Ted Stenger
Executive Vice President
Motors Liquidation Company, as agent for
    each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243
Tel.: (313) 486-4044
Fax: (313) 486-4259
Email:  tstenger@alixpartners.com

Date: _____

James M. Redwine
Vice President of Environmental Affairs
Motors Liquidation Company, as agent for
    each of the foregoing entities

Date: _12/4/10_

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in
Possession
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 682-7000
Fax: (202) 857-0939
Email: david.berz@weil.com

PREET BHARARA
United States Attorney for the
Southern District of New York
NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:   (212) 637-2741
Facsimile:   (212) 637-2750
Email: natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                           :
                                                           :
In re:                                                     :     Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.,*                      :     Case No. 09-50026 (REG)
      f/k/a/ GENERAL MOTORS CORP., *et*                    :
*al.,*                                                     :     Jointly Administered
                                                           :
              Debtors.                                     :
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF LODGING OF PROPOSED
## SIOUX CITY SITE SETTLEMENT AGREEMENT

The United States of America hereby lodges with the Court the proposed Sioux City Site

Settlement Agreement attached hereto as Exhibit A.   This Settlement Agreement has been

executed by all parties.

The United States requests that the Court not approve the proposed Settlement Agreement

at this time.   Notice of the lodging of the proposed Settlement Agreement will be published in the

*Federal Register*, following which the United States Department of Justice will accept public

comments on the proposed Settlement Agreement for a 30-day period.   After the conclusion of

the public comment period, the United States will file with the Court any comments received, as

well as responses to the comments, and at that time, if appropriate, will request that the Court

approve the proposed Settlement Agreement.

Dated:          New York, New York
                December 14, 2010

                                PREET BHARARA
                                United States Attorney for the
                                Southern District of New York
                                Attorney for the United States of America


                        By:    _____/s/ Natalie N. Kuehler_____
                                NATALIE N. KUEHLER
                                DAVID S. JONES
                                Assistant United States Attorneys
                                86 Chambers Street, 3rd Floor
                                New York, New York   10007
                                Telephone:   (212) 637-2741
                                Facsimile:   (212) 637-2750
                                Email: natalie.kuehler@usdoj.gov

2

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN**
**THE DEBTORS, THE UNITED STATES OF AMERICA**
**AND THE STATE OF IOWA**

## I. BACKGROUND

WHEREAS, Motors Liquidation Company (f/k/a General Motors Corp.) ("MLC"), a Delaware corporation, and certain of its affiliates commenced these chapter 11 cases by filing with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2009, and on October 9, 2009, Remediation and Liability Management Company ("REALM") and Environmental Corporate Remediation Company, Inc. ("ENCORE") commenced these chapter 11 cases by filing with the Bankruptcy Court voluntary petitions for relief under the Bankruptcy Code, which cases have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "Bankruptcy Cases");

WHEREAS, on June 1, 2009, General Motors Corp. also filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363;

WHEREAS, as part of the sale of assets, General Motors Corp. excluded from the sale certain real property and personalty it owned;

WHEREAS, on July 5, 2009, the Bankruptcy Court approved the sale of assets to NGMCO, Inc. (a/k/a Newco), now known as General Motors Company ("New GM");

WHEREAS, following the sale of assets, General Motors Corp. was renamed Motors Liquidation Company ("MLC"), and has continued to own and manage the real property assets excluded from the sale to Newco;

WHEREAS, the State of Iowa ("Iowa"), on behalf of the Iowa Department of Natural Resources Agency ("IDNR") contends that MLC is liable under Iowa Code section 455B.186(1); 567 Iowa Admin. Code 38.3(1) and 51.6; Consent Order for RD/RA No. 2004-HC-06 ("Consent Order"), and Consent Order, Judgment and Decree, Law No. CVCV136444 ("Consent Decree") to comply with injunctive orders and for costs incurred and to be incurred by Iowa in response to releases and threats of releases of hazardous substances at or in connection with the GM AC Rochester Division Site in Sioux City, Iowa (the "Priority Order Site");

WHEREAS, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), contends that MLC is liable under applicable environmental law to perform response action at the Priority Order Site;

WHEREAS, Iowa, on behalf of IDNR, has filed a proof of claim in the Bankruptcy Cases (Claim No. 50629) (the "State Proof of Claim") against MLC, regarding, *inter alia*, the Priority Order Site;

WHEREAS, Iowa, acting on behalf of IDNR, contends that on August 29, 2007, the Iowa District Court for Woodbury County, Iowa entered a Consent Decree that required General Motors Corp. ("GM") to perform the corrective measures determined by IDNR to be necessary to address the immediate health threats posed by hazardous substances in the soil and groundwater at the Priority Order Site;

WHEREAS, Iowa, on behalf of IDNR, contends that MLC is liable for injunctive obligations and claims set forth in the State Proof of Claim;

WHEREAS, Iowa, on behalf of IDNR, contends that MLC's injunctive obligations to comply with work requirements under court orders, environmental statutes, regulations, administrative orders, licenses, and permits were regulatory obligations that MLC was required to fulfill, including, but not limited to, the work requirements set forth in the Consent Decree;

WHEREAS, Iowa, on behalf of IDNR, contends that MLC is obligated to reimburse the State of Iowa for future response actions and costs to be incurred under Iowa Code section 455B.186(1), 567 Iowa Admin. Code 38.3(1) and 51.6, the Consent Order, and the Consent Decree with respect to the Priority Order Site, plus interest;

WHEREAS, MLC does not accept as true all of the allegations in the State Proof of Claim referenced above, but has concluded that further litigation or estimation proceedings are not in the best interests of the Debtors and their estates, and that this Sioux City Site Settlement Agreement is an appropriate means of resolving these matters;

WHEREAS, the parties hereto wish to resolve Iowa's claims and causes of action with respect to the Priority Order Site and address other issues relating to environmental matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the parties and is entered into solely for purposes of this settlement, and the parties reserve their legal arguments as to any issues involved in other matters, including with respect to sites and properties other than the Priority Order Site included in the State Proof of Claim;

WHEREAS, on August 31, 2010, the Debtors filed a proposed joint chapter 11 Plan (as may be amended, the "Plan") that incorporates this Sioux City Site Settlement Agreement as a Priority Site Consent Decree and Settlement Agreement to be filed with the Bankruptcy Court;

WHEREAS, in the event that this Sioux City Site Settlement Agreement is not approved by the Bankruptcy Court, the parties reserve the right to propose that the cash payment provided for in Paragraph 4 be paid to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, Iowa and MLC agree to the terms and provisions of this Sioux City Site Settlement Agreement;

WHEREAS, settlement of the matters governed by this Sioux City Site Settlement Agreement is fair, equitable, and in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Sioux City Site Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II. DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in the Iowa Code or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in the Iowa Code, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "Allowed General Unsecured Claim" shall have the meaning set forth in the Plan of Liquidation.

b.    "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act 42 U.S.C. §§ 9601, et seq.

c.    "Claims" has the meaning provided in Section 101(5) of the Bankruptcy Code.

4

d.  "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

e.  "Debtors" means MLC, REALM, and ENCORE.

f.  "Effective Date" means the day on which the Plan becomes effective in accordance with its terms and the Bankruptcy Court's order confirming the Plan.

g.  "Iowa" means the State of Iowa and all of its agencies, departments, and instrumentalities, including IDNR.

h.  "Plan" means the joint chapter 11 Plan filed by the Debtors on August 31, 2010, as may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms thereof and incorporating this Sioux City Site Settlement Agreement.

i.  "Priority Order Site" means the GM AC Rochester Division Site in Sioux City, Iowa.

j.  "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq.

k.  "Sioux City Site Settlement Agreement" means this Consent Decree and Settlement Agreement among the Debtors, the United States on behalf of EPA, and the State of Iowa.

l.  "Superfund" means the Hazardous Substances Superfund established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507.

m. "United States" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

## III.  JURISDICTION

2.  The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, as well as Article VIII of the Plan and the Confirmation Order.

## IV. PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Sioux City Site Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors, assigns, officers, directors, and employees in their respective capacities as such, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

## V. PRIORITY ORDER SITE – CASH PAYMENT

4.      In settlement and satisfaction of the injunctive and other work obligations at issue in the Consent Decree and alleged in the State Proof of Claim with respect to the Priority Order Site, MLC shall make a cash payment  to EPA in the amount of $6,476,634 on the Effective Date to a Special Account as provided in Paragraph 6.  This payment shall also be in settlement and satisfaction of any claim for past and future response costs alleged in the State Proof of Claim with respect to the Priority Order Site.   After MLC has made the payment of $6,476,634 the Debtors and their successors, assigns, officers, directors and employees in their respective capacities as such shall have no further role or residual interest with respect to the Priority Order Site other than as expressly provided in Paragraphs 14 through 16 of this Sioux City Site Settlement Agreement, nor shall they have any further liability, duty or obligation in connection with the matters resolved in this Sioux City Site Settlement Agreement, including all environmental claims and other environmental liabilities asserted in the State Proof of Claim, other than as expressly reserved in Paragraphs 14 through 16 of this Sioux City Site Settlement Agreement.

## VI. DISTRIBUTION INSTRUCTIONS

5.      Cash distributions by MLC pursuant to Paragraph 4 shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to MLC by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 09-50026 and DOJ

File Number 90-11-3-09754.  The payment instructions provided by the Financial Litigation Unit

shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to

identify all cash distributions required to be made in accordance with this Sioux City Site Settlement

Agreement.  MLC shall transmit written confirmation of such payment at the addresses specified in

Paragraph 19.

6.      Special Account.  The total cash distributions made by MLC pursuant to

Paragraph 4 shall be deposited in the GM AC Rochester Division Site Special Account

within the Superfund, established for the Priority Order Site by EPA pursuant to Section

122(b)(3) of CERCLA, 42 U.S.C. § 9622 (b)(3), to be retained and used by EPA to conduct or

finance response actions at or in connection with the Priority Order Site, or, if no further

response action is required, transferred by EPA to the Superfund.

7.      Credits.  The total cash distributions made by MLC under this Sioux City Site

Settlement Agreement shall be credited by EPA to its account for the Priority Order Site, which

credit shall reduce the liability of non-settling potentially responsible parties for the particular site by

the amount of the credit.

8.      Treatment of Distributions.  None of the distributions made by MLC under this Sioux

City Site Settlement Agreement constitute, nor shall they be construed as, forfeitures, fines, or

penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an

admission by MLC of any facts or any violation of law.  Notwithstanding the foregoing, MLC

agrees to comply with all terms of this Sioux City Site Settlement Agreement upon the Effective

Date.

### VII.  COVENANTS NOT TO SUE

9.      With respect to the Priority Order Site (including the releases of Hazardous Substances

from any portion of the Priority Order Site and all areas affected by migration of such substances

emanating from the Priority Order Site), and except as specifically provided in Section VIII (Reservation of Rights), upon the Effective Date, the United States, on behalf of EPA, and Iowa, on behalf of IDNR (collectively, "the Governments"), covenant not to sue or assert any administrative or other civil claims or causes of action against Debtors under CERCLA, RCRA, and State environmental statutes, as well as any other environmental liabilities asserted in the State Proof of Claim.

10.    With respect to the Priority Order Site, except as specifically provided in Section VIII (Reservation of Rights), the State Proof of Claim shall be deemed satisfied in full in accordance with the terms of this Sioux City Site Settlement Agreement, the Governments shall not be entitled to file any further claims under CERCLA, RCRA, or State environmental statutes, as well as any other environmental liabilities asserted in the State Proof of Claim, whether unsecured, secured, administrative priority or otherwise, and the Governments shall not receive any other distributions in the Bankruptcy Cases on account of such claims.

11.    These covenants not to sue in Section VII (and the reservations thereto) shall also apply to Debtors' successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of Debtors.

12.    The covenants not to sue contained in this Sioux City Site Settlement Agreement extend only to Debtors and the persons described in Paragraph 11 above and do not extend to any other person or entity.  Nothing in this Sioux City Site Settlement Agreement is intended as a covenant not to sue any person or entity other than the Debtors, the United States, Iowa, and the persons or entities described in Paragraph 11.  Except as provided in Paragraph 11, the United

States, Iowa and Debtors expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States, Iowa or Debtors may have against all other persons or entities, firms, corporations, entities, or predecessors of Debtors for any matter arising at or relating in any manner to the Priority Order Site and/or claims or causes of action addressed herein.

13.    Debtors covenant not to sue and agree not to assert claims or causes of action against the United States or Iowa with respect to the Priority Order Site, including but not limited to any direct or indirect claim for reimbursement from (i) the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or (ii) any other provision of federal or state law; any claims against the United States or Iowa, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or State environmental statutes; and any claims arising out of the response activities at the Priority Order Site.  Nothing in this Sioux City Site Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d), or State environmental statutes.

## VIII.    <u>RESERVATION OF RIGHTS</u>

14.    The covenants not to sue set forth in Section VII do not apply to any matters other than those expressly specified therein.  The United States and Iowa reserve, and this Sioux City Site Settlement Agreement is without prejudice to, all rights against Debtors or other persons or entities with respect to all matters other than those set forth in Section VII.  The United States and Iowa also specifically reserve all rights against Debtors with respect to:

9

(i)     any action to enforce their rights under this Sioux City Site Settlement Agreement;

(ii)    any claim or cause of action for response costs and injunctive relief under CERCLA Sections 106 and 107, RCRA Sections 3008, 7002 and 7003, or state environmental law for future acts taken by the Debtors after the Effective Date that create liability under CERCLA, RCRA, or state law;

(iii)   criminal liability; and

(iv)    all rights with respect to any site that is not the Priority Order Site.

Debtors' future acts creating liability under CERCLA, RCRA or state law do not include continuing releases related to Debtors' conduct at the Priority Order Site prior to the Effective Date.  The United States and Iowa also reserve, and this Sioux City Site Settlement Agreement is without prejudice to, any liability of Debtors' successors, assigns, officers, directors, employees, and trustees for response costs and injunctive relief under CERCLA Section 106 and 107, RCRA Sections 7002 and 7003, and state laws for any future acts taken by any such respective entity after the Effective Date that create liability under CERCLA, RCRA or state law.  Future acts creating liability under CERCLA, RCRA, or state law do not include continuing releases related to such party's conduct at the Priority Order Site prior to the Effective Date.

15.   Nothing in this Sioux City Site Settlement Agreement shall be deemed to limit the authority of the Governments to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable federal or state law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the Governments pursuant to such authority.  Nothing in this Sioux City Site Settlement Agreement shall be deemed to limit the information-gathering authority of the Governments under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse

Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal or state law or regulation.

16.    Except as provided in Paragraph 11, nothing in this Sioux City Site Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person or entity not a party to this agreement.  Except as provided in Paragraph11, nothing in this Sioux City Site Settlement Agreement diminishes the rights of the Governments, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), or State environmental statutes, to pursue any persons or entities not a party hereto to obtain additional response costs or response actions and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2), or State environmental statutes.  Except as provided in Paragraph 11, the Governments expressly reserve all existing rights against all persons or entities not a party to this Sioux City Site Settlement Agreement, including New GM.  MLC reserves all rights against all persons or entities not a party hereto, including the right to dispute claims filed by parties or entities other than the Governments with respect to the Priority Order Site.

## IX.  **CONTRIBUTION PROTECTION**

17.    The parties hereto agree, and by approving this Sioux City Site Settlement Agreement the Bankruptcy Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) and any analogous Iowa law, and that Debtors are entitled, as of the Agreement Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Sioux City Site Settlement Agreement. The "matters addressed" in this Sioux City Site Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) or any analogous Iowa law, include, without

limitation, response costs incurred or to be incurred by Iowa, the United States, or potentially responsible parties or Claims with respect to the Priority Order Site.

18.    Debtors agree that with respect to any suit for contribution brought against them after the Agreement Effective Date for matters related to this Settlement Agreement, they will notify the United States within 15 business days of service of the complaint upon them.   In addition, in connection with such suit, Debtors shall notify the United States within 15 business days of service or receipt of any Motion for Summary Judgment and within 15 business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Sections VII and VIII (Covenants Not to Sue and Reservation of Rights)).

## X.  NOTICES AND SUBMISSIONS

19.    Whenever, under the terms of this Sioux City Site Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing.   All notices and submissions shall be considered effective upon receipt, unless otherwise provided.   Except as otherwise provided in this Sioux City Site Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States, Iowa and MLC, REALM, and ENCORE, respectively.

The United States:

ROBERT G. DREHER
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Ref. DOJ File No. 90-11-3-09754

DAVID S. JONES.
NATALIE N. KUEHLER
Assistant United States Attorney
Office of the United States Attorney
    for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY  10007


The State of Iowa:

David L. Dorff
Assistant Attorney General
Environmental Law Division
Office of the Attorney General for the State of Iowa
321 E. 12th St., Room 018
Des Moines, IA 50319


U.S. EPA:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

DANIEL J. SHIEL
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 7
901 North  5th Street
Kansas City, KS 66101

MLC, REALM, and ENCORE:

TED STENGER
Executive Vice President
Motors Liquidation Company, as agent for
  each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243


DAVID R. BERZ
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005


## XI.    **PUBLIC COMMENT**

20.    This Sioux City Site Settlement Agreement will be subject to a public comment period following notice published in the Federal Register and notice under any applicable state law providing for public comment, which may take place concurrent with the judicial approval process under Paragraph 21 hereof.  The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Sioux City Site Settlement Agreement disclose facts or considerations that indicate that this Sioux City Site Settlement Agreement is inappropriate, improper, or inadequate.  The United States will promptly provide Debtors copies of any public comments received during the public comment period.  At the conclusion of the public comment period, the United States will provide the Bankruptcy Court with copies of any public comments and its response thereto.  If the United States withdraws or withholds its consent to the Sioux City Site Settlement Agreement prior to the Effective Date, this Sioux City Site Settlement Agreement shall be void and have no further force and effect.  Any changes,

revisions or amendments to the Sioux City Site Settlement Agreement in response to public comment are subject to the approval of all Parties.

## XII.    JUDICIAL APPROVAL

21.    The settlement reflected in this Sioux City Site Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Debtors shall move promptly for court approval of this Sioux City Site Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XIII.    PLAN

22.    The Debtors shall incorporate this Sioux City Site Settlement Agreement into the Plan by reference, and approval of this Sioux City Site Settlement Agreement shall be a condition precedent to confirmation of the Plan.  The Debtors shall not file a Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Sioux City Site Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Sioux City Site Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Sioux City Site Settlement Agreement.  The Governments shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Sioux City Site Settlement Agreement.  The Parties reserve all other rights or defenses that they may have with respect to the Plan.  In the event of any inconsistency between the Plan, any order confirming the Plan, and this Sioux City Site Settlement Agreement, the terms of this Sioux City Site Settlement Agreement shall control.

## XIV.    RETENTION OF JURISDICTION

23.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Sioux City Site Settlement Agreement and the parties hereto, for the duration of the performance of the terms and provisions of this Sioux City Site Settlement Agreement for the purpose of enabling any of the parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Sioux City Site Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XV.    EFFECTIVENESS OF SETTLEMENT AGREEMENT

24.    This Sioux City Site Settlement Agreement shall be effective after approval by the Bankruptcy Court pursuant to Paragraph 21, and upon the Effective Date of the Debtor's Plan incorporating this Sioux City Site Settlement Agreement.

## XVI.    SIGNATORIES/SERVICES

25.    The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Sioux City Site Settlement Agreement and to execute and bind legally such party to this document.

[REMAINDER OF THE PAGE LEFT BLANK]

16

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

FOR THE UNITED STATES:

PREET BHARARA
United States Attorney for the
Southern District of New York

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date:    12/13/10

Date:    12/14/2010

Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date:    12/14/10


Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date:    _____

17

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
   Division
U.S. Department of Justice

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: _____

Date: _____

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: ____11/29/10____

**FOR IOWA:**

By: _Wayne Gieselman for_    By: _David L. Dorff_

Patricia L. Boddy, Interim Director        David L. Dorff
Iowa Department of Natural Resources       Assistant Attorney General
                                           Environmental Law Division
                                           Office of the Attorney General
                                           321 E. 12th St., Room 018
                                           Des Moines, IA 50319
                                           Tel.: (515) 281-5351
                                           Fax: (515) 242-6072
                                           Email: ddorff@ag.state.is.us

Date: _12 - 3 - 10_        Date: _12/3/10_

**FOR MLC, REALM, AND ENCORE:**

Date: _____

                          _____
                          Ted Stenger
                          Executive Vice President
                          Motors Liquidation Company, as agent for
                              each of the foregoing entities,
                          500 Renaissance Center, Suite 1400
                          Detroit, MI  48243
                          Tel.:  (313) 486-4044
                          Fax:  (313) 486-4259
                          Email:  tstenger@alixpartners.com

Date: _____

                          _____
                          James M. Redwine
                          Vice President of Environmental Affairs
                          Motors Liquidation Company, as agent for
                              each of the foregoing entities

**FOR IOWA:**

By: _____          By: _____

    Patricia L. Boddy, Interim Director          David L. Dorff
    Iowa Department of Natural Resources          Assistant Attorney General
                                    Environmental Law Division
                                    Office of the Attorney General
                                    321 E. 12th St., Room 018
                                    Des Moines, IA 50319
                                    Tel.: (515) 281-5351
                                    Fax: (515) 242-6072
                                    Email: ddorff@ag.state.is.us

Date: _____          Date: _____

**FOR MLC, REALM, AND ENCORE:**

Date: _____          _Ted Stenger_ (signature)
                                      Ted Stenger
                                      Executive Vice President
                                      Motors Liquidation Company, as agent for
                                          each of the foregoing entities,
                                      500 Renaissance Center, Suite 1400
                                      Detroit, MI 48243
                                      Tel.: (313) 486-4044
                                      Fax: (313) 486-4259
                                      Email: tstenger@alixpartners.com

Date: _____          James M. Redwine (signature)
                                      James M. Redwine
                                      Vice President of Environmental Affairs
                                      Motors Liquidation Company, as agent for
                                        each of the foregoing entities

18

Date:  _____12/6/10_____

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in
Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
Tel.:  (202) 682-7000
Fax:  (202) 857-0939
Email:  david.berz@weil.com

19

PREET BHARARA
United States Attorney for the
Southern District of New York
NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:   (212) 637-2741
Facsimile:   (212) 637-2750
Email: natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
                                                      :
                                                      :
In re:                                                :       Chapter 11
                                                      :
MOTORS LIQUIDATION COMPANY, *et al.,*                 :       Case No. 09-50026 (REG)
     f/k/a/ GENERAL MOTORS CORP., *et*                :
*al.,*                                                :       Jointly Administered
                                                      :
              Debtors.                                :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>NOTICE OF LODGING OF PROPOSED</u>
<u>SCATTERFIELD SETTLEMENT AGREEMENT</u>

The United States of America hereby lodges with the Court the proposed Scatterfield

Settlement Agreement attached hereto as Exhibit A.   This Settlement Agreement has been

executed by all parties.

The United States requests that the Court not approve the proposed Settlement Agreement

at this time.   Notice of the lodging of the proposed Settlement Agreement will be published in the

*Federal Register*, following which the United States Department of Justice will accept public

comments on the proposed Settlement Agreement for a 30-day period.   After the conclusion of

the public comment period, the United States will file with the Court any comments received, as

well as responses to the comments, and at that time, if appropriate, will request that the Court

approve the proposed Settlement Agreement.

Dated:        New York, New York
              December 14, 2010

                                   PREET BHARARA
                                   United States Attorney for the
                                   Southern District of New York
                                   Attorney for the United States of America


                         By:        _____/s/ Natalie N. Kuehler_____
                                   NATALIE N. KUEHLER
                                   DAVID S. JONES
                                   Assistant United States Attorneys
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Telephone:  (212) 637-2741
                                   Facsimile:  (212) 637-2750
                                   Email: natalie.kuehler@usdoj.gov

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

## CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN
## THE DEBTORS, THE UNITED STATES OF AMERICA,
## AND THE STATE OF INDIANA

### I. BACKGROUND

WHEREAS, Motors Liquidation Company (f/k/a General Motors Corp. ("GM")) ("MLC"), a Delaware corporation, and certain of its affiliates commenced these chapter 11 cases by filing with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2009, and on October 9, 2009, Remediation and Liability Management Company ("REALM") and Environmental Corporate Remediation Company, Inc. ("ENCORE") commenced these chapter 11 cases by filing with the Bankruptcy Court voluntary petitions for relief under the Bankruptcy Code, which cases have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "Bankruptcy Cases");

WHEREAS, on June 1, 2009, GM also filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363;

WHEREAS, as part of the sale of assets, GM excluded from the sale certain real property and personalty it owned;

WHEREAS, on July 5, 2009, the Bankruptcy Court approved the sale of assets to NGMCO, Inc. (a/k/a Newco), now known as General Motors Company ("New GM");

WHEREAS, following the sale of assets, GM was renamed Motors Liquidation Company ("MLC"), and has continued to own and manage the real property assets excluded from the sale to Newco;

WHEREAS, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Indiana, on behalf of the State of Indiana Department of Environmental Management ("IDEM") (collectively, the "Governments"), contend that MLC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq., ("RCRA"), to comply with injunctive orders and for costs incurred and to be incurred by the Governments in response to releases and threats of releases of hazardous substances at or in connection with the Delphi E&E Management System Site on South Scatterfield Road, Anderson, Indiana (the "Priority Order Site");

WHEREAS, the United States, on behalf of EPA, has filed a proof of claim in the Bankruptcy Cases (Claim No. 64064) (the "EPA Proof of Claim") against MLC, which includes claims and protective claims regarding, *inter alia*, the Priority Order Site;

WHEREAS, Indiana, on behalf of Indiana Department of Environmental Management ("IDEM"), has filed a proof of claim in the Bankruptcy Cases (Claim No. 59181) (the "State Proof of Claim") against MLC, regarding, *inter alia*, the Priority Order Site;

WHEREAS, the United States, acting on behalf of EPA, and Indiana, acting on behalf of IDEM, contend that on May 8, 2002, GM signed an Administrative Consent Agreement and Final Order under RCRA that required GM to perform the corrective measures determined by

2

EPA to be necessary to address the immediate health threats posed by hazardous substances in the soil and groundwater at the Priority Order Site;

WHEREAS, the United States, on behalf of EPA, contends that MLC is liable for injunctive obligations and claims set forth in the EPA Proof of Claim;

WHEREAS, the United States alleges in the EPA Proof of Claim that MLC's injunctive obligations to comply with work requirements under court orders, environmental statutes, regulations, administrative orders, licenses, and permits were regulatory obligations that MLC was required to fulfill, including, but not limited to, the work requirements set forth in the Administrative Consent Agreement and Final Order;

WHEREAS, in the State Proof of Claim, Indiana alleges that MLC is obligated to reimburse Indiana for future response actions and costs to be incurred with respect to the Priority Order Site, plus interest;

WHEREAS, MLC does not admit all of the allegations in the EPA and State Proofs of Claim referenced above, but has concluded that further litigation or estimation proceedings are not in the best interests of the Debtors and their estates, and that this Scatterfield Settlement Agreement is an appropriate means of resolving these matters;

WHEREAS, the parties hereto wish to resolve the Governments' claims and causes of action with respect to the Priority Order Site and address other issues relating to environmental matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the parties and is entered into solely for purposes of this settlement, and the parties reserve their legal arguments as to any issues involved in other matters, including with respect to sites and properties other than the Priority Order Site included in the EPA Proof of Claim and the State Proof of Claim;

WHEREAS, on August 31, 2010, the Debtors filed a proposed joint chapter 11 Plan (as may be amended, the "Plan") that incorporates this Scatterfield Settlement Agreement as a Priority Site Consent Decree and Settlement Agreement to be filed with the Bankruptcy Court;

WHEREAS, in the event that this Scatterfield Settlement Agreement is not approved by the Bankruptcy Court, the Parties reserve the right to propose that the cash payment provided for in Paragraph 4 be paid to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, the United States, Indiana, and MLC agree to the terms and provisions of this Scatterfield Settlement Agreement;

WHEREAS, settlement of the matters governed by this Scatterfield Settlement Agreement is fair, equitable, and in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Scatterfield Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II. DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Scatterfield Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "Allowed General Unsecured Claim" shall have the meaning set forth in the Plan of Liquidation.

b. "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act 42 U.S.C. §§ 9601, et seq.

c. "Claims" has the meaning provided in Section 101(5) of the Bankruptcy Code.

d. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

e. "Debtors" means MLC, REALM, and ENCORE.

f. "Effective Date" means the day on which the Plan becomes effective in accordance with its terms and the Bankruptcy Court's order confirming the Plan.

g. "Indiana" means the State of Indiana and all of its agencies, departments, and instrumentalities, including IDEM.

h. "Plan" means the joint chapter 11 Plan filed by the Debtors on August 31, 2010, as may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms thereof and incorporating this Scatterfield Settlement Agreement;

i. "Priority Order Site" means the Delphi E&E Management Systems Site on Scatterfield Road in Anderson, Indiana.

j. "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq.

k. "Scatterfield Settlement Agreement" means this Consent Decree and Settlement Agreement between the Debtors, the United States of America of behalf of EPA, and the State of Indiana.

l. "Superfund" means the Hazardous Substances Superfund established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507.

m. "<u>United States</u>" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

### III.  JURISDICTION

2.      The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b), as well as Article VIII of the Plan and the Confirmation Order.

### IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Scatterfield Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors, assigns, officers, directors, and employees in their respective capacities as such, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

### V.  PRIORITY ORDER SITE – CASH PAYMENT

4.      In settlement and satisfaction of the injunctive and other work obligations at issue in the Administrative Consent Agreement and Final Order and alleged in the EPA Proof of Claim and State Proof of Claim with respect to the Priority Order Site, MLC shall make a cash payment in the amount of $3,599,039 on the Effective Date to a trust as provided in Paragraph 6.  After MLC has made the payment of $3,599,039, the Debtors and their successors, assigns, officers, directors and employees in their respective capacities as such shall have no further role or residual interest with respect to the Priority Order Site other than as expressly provided in Paragraphs 14 through 16 of this Scatterfield Settlement Agreement, nor shall they have any further liability, duty or obligation in connection with the matters resolved in this Scatterfield Settlement Agreement, including all environmental claims and other environmental liabilities asserted in the EPA Proof of Claim and the State Proof of Claim, other than as expressly reserved in Paragraphs 14 through 16 of this Scatterfield Settlement Agreement.

## VI. <u>DISTRIBUTION INSTRUCTIONS</u>

5.      Cash distributions by MLC pursuant to Paragraph 4 shall be made in accordance with instructions provided to MLC by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 09-50026 and DOJ File Number 90-11-3-09754.  MLC shall transmit written confirmation of such payment at the addresses specified in Paragraph 18.

6.      <u>Trust Agreement.</u>  The total cash distributions made by MLC pursuant to Paragraph 4 shall be deposited in a trust established pursuant to the requirements and in the format set forth at 40 C.F.R. Section 264.151(a)(1) and in accordance with a trust agreement approved by the United States.  The total cash distributions are to be retained and used by the trust to conduct or finance response actions approved by EPA at or in connection with the Priority Order Site and not for any other purpose, or, if no further response action is required, transferred by the trust to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010.

7.      <u>Treatment of Distributions</u>.  None of the distributions made by MLC under this Scatterfield Settlement Agreement constitute, nor shall they be construed as, forfeitures, fines, or penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an admission by MLC of any facts or any violation of law.  Notwithstanding the foregoing, MLC agrees to comply with all terms of this Scatterfield Settlement Agreement upon the Effective Date.

## VII.  COVENANTS NOT TO SUE

8.    With respect to the Priority Order Site (including the releases of Hazardous Substances from any portion of the Priority Order Site and all areas affected by migration of such substances emanating from the Priority Order Site), and except as specifically provided in Section VIII (Reservation of Rights), upon the Effective Date, the United States, on behalf of EPA, and Indiana, on behalf of IDEM, covenant not to sue or assert any administrative or other civil claims or causes of action against Debtors under CERCLA, RCRA, and State environmental statutes, statutes, as well as any other environmental liabilities asserted in the EPA Proof of Claim or the State Proof of Claim.

9.    With respect to the Priority Order Site, except as specifically provided in Section VIII (Reservation of Rights), the EPA Proof of Claim and the State Proof of Claim shall be deemed satisfied in full in accordance with the terms of this Scatterfield Settlement Agreement, the Governments shall not be entitled to file any further claims under CERCLA, RCRA, or State environmental statutes, as well as any other environmental liabilities asserted in the Governments' Proofs of Claim, whether unsecured, secured, administrative priority or otherwise, and the Governments shall not receive any other distributions in the Bankruptcy Cases on account of such claims.

10.    These covenants not to sue in Section VII (and the reservations thereto) shall also apply to Debtors' successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of Debtors.

11.    The covenants not to sue contained in this Scatterfield Settlement Agreement extend only to Debtors and the persons described in Paragraph 10 above and do not extend to any other

person or entity.  Nothing in this Scatterfield Settlement Agreement is intended as a covenant not to sue any person or entity other than the Debtors, the United States, Indiana, and the persons or entities described in Paragraph 10.  Except as provided in Paragraph 10, the United States, Indiana, and Debtors expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States, Indiana, or Debtors may have against all other persons or entities, firms, corporations, entities, or predecessors of Debtors for any matter arising at or relating in any manner to the Priority Order Site and/or claims or causes of action addressed herein.

12.  Debtors covenant not to sue and agree not to assert claims or causes of action against the United States or Indiana with respect to the Priority Order Site, including but not limited to any direct or indirect claim for reimbursement from (i) the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or (ii) any other provision of federal or state law; any claims against the United States or Indiana, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or State environmental statutes; and any claims arising out of the response activities at the Priority Order Site.  Nothing in this Scatterfield Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d), or State environmental statutes.

## VIII.    RESERVATION OF RIGHTS

13.  The covenants not to sue set forth in Section VII do not apply to any matters other than those expressly specified therein.  The United States and Indiana reserve, and this Scatterfield Settlement Agreement is without prejudice to, all rights against Debtors or other persons or

entities with respect to all matters other than those set forth in Section VII.  The United States

and Indiana also specifically reserve all rights against Debtors with respect to:

> (i)    any action to enforce their rights under this Scatterfield Settlement Agreement;

> (ii)   any claim or cause of action for response costs and injunctive relief under CERCLA Sections 106 and 107, RCRA Sections 3008, 7002 and 7003 or state environmental law for future acts taken by the Debtors after the Effective Date that create liability under CERCLA, RCRA, or state law;

> (iii)  criminal liability; and

> (iv)   all rights with respect to any site that is not the Priority Order Site.

Debtors' future acts creating liability under CERCLA, RCRA or state law do not include

continuing releases related to Debtors' conduct at the Priority Order Site prior to the

Effective Date.  The United States and Indiana also reserve, and this Scatterfield

Settlement Agreement is without prejudice to, any liability of Debtors' successors,

assigns, officers, directors, employees, and trustees for response costs and injunctive

relief under CERCLA Section 106 and 107, RCRA Sections 7002 and 7003, and state

laws for any future acts taken by any such respective entity after the Effective Date that

create liability under CERCLA, RCRA or state law.  Future acts creating liability under

CERCLA, RCRA, or state law do not include continuing releases related to such party's

conduct at the Priority Order Site prior to the Effective Date.

14.  Nothing in this Scatterfield Settlement Agreement shall be deemed to limit the

authority of the Governments to take response action under Section 104 of CERCLA, 42 U.S.C.

§ 9604, or any other applicable federal or state law or regulation, or to alter the applicable legal

principles governing judicial review of any action taken by the Governments pursuant to such

authority.  Nothing in this Scatterfield Settlement Agreement shall be deemed to limit the

information-gathering authority of the Governments under Sections 104 and 122 of CERCLA, 42

U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse

Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any

other applicable federal or state law or regulation.

15.    Except as provided in Paragraph 10, nothing in this Scatterfield Settlement

Agreement shall be construed to create any rights in, or grant any cause of action to, any

person or entity not a party to this agreement.  Except as provided in Paragraph 10, nothing

in this Scatterfield Settlement Agreement diminishes the rights of the Governments, pursuant

Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), or State environmental

statutes, to pursue any persons or entities not a party hereto to obtain additional response

costs or response actions and to enter into settlements that give rise to contribution protection

pursuant to Section 113(f)(2), or State environmental statutes.  Except as provided in

Paragraph 10, the Governments expressly reserve all existing rights against all persons or

entities not a party to this Scatterfield Settlement Agreement, including New GM.  MLC

reserves all rights against all persons or entities not a party hereto, including the right to

dispute claims filed by parties or entities other than the Governments with respect to the

Priority Order Site.

### IX.  CONTRIBUTION PROTECTION

16.    The parties hereto agree, and by approving this Scatterfield Settlement Agreement the

Bankruptcy Court finds, that this settlement constitutes a judicially-approved settlement for purposes

of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and any analogous Indiana law, and that

Debtors are entitled, as of the Agreement Effective Date, to protection from contribution actions or

claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be

otherwise provided by law, for "matters addressed" in this Scatterfield Settlement Agreement.  The

"matters addressed" in this Scatterfield Settlement Agreement, as that phrase is used in Section

113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or any analogous Indiana law, include, without limitation, response costs incurred or to be incurred by EPA, Indiana, or potentially responsible parties or Claims with respect to the Priority Order Site.

17.    Debtors agree that with respect to any suit for contribution brought against them after the Scatterfield Settlement Agreement Effective Date for matters related to this Scatterfield Settlement Agreement, they will notify the United States within 15 business days of service of the complaint upon them.  In addition, in connection with such suit, Debtors shall notify the United States within 15 business days of service or receipt of any Motion for Summary Judgment and within 15 business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Sections VII and VIII (Covenants Not to Sue and Reservation of Rights)).

## X.  NOTICES AND SUBMISSIONS

18.    Whenever, under the terms of this Scatterfield Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Except as otherwise provided in this Scatterfield Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States, Indiana, and MLC, REALM, and ENCORE, respectively.

The United States:

ROBERT G. DREHER
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Ref. DOJ File No. 90-11-3-09754

DAVID S. JONES.
NATALIE N. KUEHLER
Assistant United States Attorney
Office of the United States Attorney
    for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY  10007

U.S. EPA:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

JEFF CAHN
U.S. Environmental Protection Agency
Region 5, C-14J
77 West Jackson Boulevard
Chicago, Illinois 60604

The State of Indiana:

TIMOTHY J. JUNK
Deputy Attorney General
Atty. No. 5587-02
Office of the Attorney General
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204

<u>MLC, REALM, and ENCORE</u>:

TED STENGER
Executive Vice President
Motors Liquidation Company, as agent for
   each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243


DAVID R. BERZ
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005


## XI.    <u>PUBLIC COMMENT</u>

19.    This Scatterfield Settlement Agreement will be subject to a public comment period following notice published in the Federal Register and notice under any applicable state law providing for public comment, which may take place concurrent with the judicial approval process under Paragraph 20 hereof.  The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Scatterfield Settlement Agreement disclose facts or considerations that indicate that this Scatterfield Settlement Agreement is inappropriate, improper, or inadequate.  The United States will promptly provide Debtors copies of any public comments received during the public comment period.  At the conclusion of the public comment period, the United States will provide the Bankruptcy Court with copies of any public comments and its response thereto.  If the United States withdraws or withholds its consent to the Scatterfield Settlement Agreement prior to the Effective Date, this Scatterfield Settlement Agreement shall be void and have no further force and effect.  Any changes, revisions or

amendments to the Scatterfield Settlement Agreement in response to public comment are subject to the approval of all Parties.

## XII.    <u>JUDICIAL APPROVAL</u>

20.      The settlement reflected in this Scatterfield Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  Debtors shall move promptly for court approval of this Scatterfield Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XIII.    <u>PLAN</u>

21.      The Debtors shall incorporate this Scatterfield Settlement Agreement into the Plan by reference and approval of this Scatterfield Settlement Agreement shall be a condition precedent to confirmation of the Plan.  The Debtors shall not file a Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Scatterfield Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Scatterfield Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Scatterfield Settlement Agreement.  The Governments shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Scatterfield Settlement Agreement.  The Parties reserve all other rights or defenses that they may have with respect to the Plan.  In the event of any inconsistency between the Plan, any order confirming the Plan, and this Scatterfield Settlement Agreement, the terms of this Scatterfield Settlement Agreement shall control.

## XIV.    <u>RETENTION OF JURISDICTION</u>

22.      The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Scatterfield Settlement Agreement and the parties hereto, for the duration of the

performance of the terms and provisions of this Scatterfield Settlement Agreement for the purpose of enabling any of the parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Scatterfield Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XV.    EFFECTIVENESS OF SETTLEMENT AGREEMENT

23.    This Scatterfield Settlement Agreement shall be effective after the close of the public comment period in accordance with Paragraph 19, approval by the Bankruptcy Court pursuant to Paragraph 20, and upon the Effective Date of the Debtor's Plan incorporating this Scatterfield Settlement Agreement.

## XVI.    SIGNATORIES/SERVICES

24.    The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Scatterfield Settlement Agreement and to execute and bind legally such party to this document.

[REMAINDER OF THE PAGE LEFT BLANK]

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: ___12/13/10___

Date: ___12/14 2010___

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: ___12/14/10___

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

17

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date:   _____

Date:   _____

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date:   _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date:   11/17/10

17

**State of Indiana's Signature Page for**
**CONSENT DECREE AND SETTLEMENT AGREEMENT**

**Between the**

**MOTORS LIQUIDATION CORPORATION, THE UNITED STATES, and THE STATE**
**OF INDIANA**

Indiana Department of
Environment Management

By: _____
     Thomas W. Easterly,
     Commissioner

Ind. Dept. of Environmental Mgmt
100 North Senate Avenue
MC 50-01, ICGN 1301
Indianapolis, IN 46204

Gregory F. Zoeller,
Attorney General of Indiana
Atty. No. 1958-98

By: _____
     Patricia Orloff Erdmann
     Chief Counsel for Litigation
     Atty. No. 17664-49A

By: _____
     Timothy J. Junk
     Dep. Atty. Gen.
     Atty. No. 5587-02

Office of the Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204

Date: November 15, 2010

**FOR INDIANA:**

Indiana Department of
Environmental Management

Gregory F. Zoeller,
Attorney General of Indiana
Atty. No. 1958-98

By: _____

   Thomas W. Easterly
   Commissioner
   100 North Senate Avenue
   MC 50-01, ICGN 1301
   Indianapolis, IN 46204

By:_____

   Timothy J. Junk
   Deputy Attorney General
   Atty. No. 5587-02
   Office of the Attorney General
   Indiana Government Center South,
   Fifth Floor
   302 West Washington Street
   Indianapolis, IN 46204

Date: _____

Date: _____

**FOR MLC, REALM, AND ENCORE:**

Date: _____

Ted Stenger
Executive Vice President
Motors Liquidation Company, as agent for
   each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI 48243
Tel.: (313) 486-4044
Fax: (313) 486-4259
Email: tstenger@alixpartners.com

Date: _____

James M. Redwine
Vice President of Environmental Affairs
Motors Liquidation Company, as agent for
   each of the foregoing entities

Date:  _12/6/10_

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in
Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
Tel.:  (202) 682-7000
Fax:  (202) 857-0939
Email:  david.berz@weil.com

PREET BHARARA
United States Attorney for the
Southern District of New York
NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:   (212) 637-2741
Facsimile:   (212) 637-2750
Email: natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.,* | : | Case No. 09-50026 (REG) |
| f/k/a/ GENERAL MOTORS CORP., *et* | : | |
| *al.,* | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF LODGING OF PROPOSED
## DELPHI HARRISON SETTLEMENT AGREEMENT

The United States of America hereby lodges with the Court the proposed Delphi Harrison

Settlement Agreement attached hereto as Exhibit A.   This Settlement Agreement has been

executed by all parties.

The United States requests that the Court not approve the proposed Settlement Agreement

at this time.   Notice of the lodging of the proposed Settlement Agreement will be published in the

*Federal Register*, following which the United States Department of Justice will accept public

comments on the proposed Settlement Agreement for a 30-day period.   After the conclusion of

the public comment period, the United States will file with the Court any comments received, as

well as responses to the comments, and at that time, if appropriate, will request that the Court

approve the proposed Settlement Agreement.

Dated:          New York, New York
                December 14, 2010

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America


                              By:       _____/s/ Natalie N. Kuehler_____
                                        NATALIE N. KUEHLER
                                        DAVID S. JONES
                                        Assistant United States Attorneys
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Telephone:   (212) 637-2741
                                        Facsimile:   (212) 637-2750
                                        Email: natalie.kuehler@usdoj.gov

2

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN
THE DEBTORS, THE UNITED STATES OF AMERICA,
<u>AND THE STATE OF OHIO</u>**

**I. <u>BACKGROUND</u>**

WHEREAS, Motors Liquidation Company (f/k/a General Motors Corp.) ("<u>MLC</u>"), a Delaware corporation, and certain of its affiliates commenced these chapter 11 cases by filing with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on June 1, 2009, and on October 9, 2009, Remediation and Liability Management Company ("<u>REALM</u>") and Environmental Corporate Remediation Company, Inc. ("<u>ENCORE</u>") commenced these chapter 11 cases by filing with the Bankruptcy Court voluntary petitions for relief under the Bankruptcy Code, which cases have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "<u>Bankruptcy Cases</u>");

WHEREAS, on June 1, 2009, General Motors Corp. also filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363;

WHEREAS, as part of the sale of assets, General Motors Corp. excluded from the sale certain real property and personalty it owned;

WHEREAS, on July 5, 2009, the Bankruptcy Court approved the sale of assets to NGMCO, Inc. (a/k/a Newco), now known as General Motors Company ("New GM");

WHEREAS, following the sale of assets, General Motors Corp. was renamed Motors Liquidation Company ("MLC"), and has continued to own and manage the real property assets excluded from the sale to Newco;

WHEREAS, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Ohio, on behalf of the State of Ohio Environmental Protection Agency ("OHIO EPA") (collectively, the "Governments"), contend that MLC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq., ("RCRA"), to comply with injunctive orders and for costs incurred and to be incurred by the Governments in response to releases and threats of releases of hazardous substances at or in connection with the Delphi Harrison Thermal Systems Site in Dayton, Montgomery County, Ohio  (the "Priority Order Site");

WHEREAS, the United States, on behalf of EPA, has filed a proof of claim in the Bankruptcy Cases (Claim No. 64064) (the "EPA Proof of Claim") against MLC, regarding, *inter alia*, the Priority Order Site;

WHEREAS, the United States, acting on behalf of EPA, and Ohio, acting on behalf of OHIO EPA, contend that on May 22, 2001, EPA and GM entered into a Voluntary Corrective Action Agreement that required GM to conduct a RCRA Facility Investigation ("RFI"), and based on the results of the RFI to perform the corrective measures selected  by EPA as necessary to address the health threats posed by volatile organic compounds ("VOCs"), polychlorinated biphenyls ("PCBs"), and metals in the soil and groundwater at the Priority Order Site;

2

WHEREAS, the United States, on behalf of EPA, contends that MLC is liable for injunctive obligations and claims set forth in the EPA Proof of Claim;

WHEREAS, the United States alleges in the EPA Proof of Claim that MLC's injunctive obligations to comply with work requirements under court orders, environmental statutes, regulations, administrative orders, licenses, and permits were regulatory obligations that MLC was required to fulfill, including, but not limited to, the work requirements set forth in the Voluntary Corrective Action Agreement;

WHEREAS, the United States also alleges in the EPA Proof of Claim that MLC is obligated to reimburse the United States for future response actions and costs to be incurred under CERCLA with respect to the Priority Order Site, plus interest;

WHEREAS, MLC does not accept as true all of the allegations in the EPA Proof of Claim referenced above, but has concluded that further litigation or estimation proceedings are not in the best interests of the Debtors and their estates, and that this Delphi Harrison Settlement Agreement is an appropriate means of resolving these matters;

WHEREAS, the parties hereto wish to resolve the Governments' claims and causes of action with respect to the Priority Order Site and address other issues relating to environmental matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the parties and is entered into solely for purposes of this settlement, and the parties reserve their legal arguments as to any issues involved in other matters, including with respect to sites and properties other than the Priority Order Site included in the EPA Proof of Claim;

WHEREAS, on August 31, 2010, the Debtors filed a proposed joint chapter 11 Plan (as may be amended, the "Plan") that incorporates this Delphi Harrison Settlement Agreement as a Priority Site Consent Decree and Settlement Agreement to be filed with the Bankruptcy Court;

WHEREAS, in the event that this Delphi Harrison Settlement Agreement is not approved by the Bankruptcy Court, the Parties reserve the right to propose that the cash payment provided for in Paragraph 4 be paid to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, the United States, Ohio, and MLC agree to the terms and provisions of this Delphi Harrison Settlement Agreement;

WHEREAS, settlement of the matters governed by this Delphi Harrison Settlement Agreement is fair, equitable, and in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Delphi Harrison Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II. <u>DEFINITIONS</u>

1.    Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "<u>Allowed General Unsecured Claim</u>" shall have the meaning set forth in the Plan of Liquidation.

b.    "<u>CERCLA</u>" means the Comprehensive Environmental Response, Compensation, and Liability Act 42 U.S.C. §§ 9601, <u>et</u> <u>seq.</u>

c. "Claims" has the meaning provided in Section 101(5) of the Bankruptcy Code.

d. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

e. "Debtors" means MLC, REALM, and ENCORE.

f. "Delphi Harrison Settlement Agreement" means this Consent Decree and Settlement Agreement between the Debtors, the United States of America of behalf of EPA, and the State of Ohio.

g. "Effective Date" means the day on which the Plan becomes effective in accordance with its terms and the Bankruptcy Court's order confirming the Plan.

h. "Ohio" means the State of Ohio and all of its agencies, departments, and instrumentalities, including Ohio EPA and the Ohio Department of Development.

i. "Plan" means the joint chapter 11 Plan filed by the Debtors on August 31, 2010, as may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms thereof and incorporating this Delphi Harrison Settlement Agreement.

j. "Priority Order Site" means the Delphi Harrison Thermal Systems Site in Dayton, Montgomery County, Ohio.

k. "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq.

l. "Superfund" means the Hazardous Substances Superfund established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507.

m. "United States" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

### III. <u>JURISDICTION</u>

2.    The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b), as well as Article VIII of the Plan and the Confirmation Order.

### IV. <u>PARTIES BOUND; SUCCESSION AND ASSIGNMENT</u>

3.    This Delphi Harrison Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors, assigns, officers, directors, and employees in their respective capacities as such, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

### V. <u>PRIORITY ORDER SITE – CASH PAYMENT</u>

4.    In settlement and satisfaction of the injunctive and other work obligations at issue in the Voluntary Corrective Action Agreement, the allegations of Ohio concerning the Voluntary Corrective Action Agreement and the allegations of EPA in the EPA Proof of Claim with respect to the Priority Order Site, the Ohio Department of Development ("Ohio DOD") shall receive a cash payment in the amount of $5,329,343 from MLC on the Effective Date.  This payment shall also be in settlement and satisfaction of any claim for past and future response costs alleged in the EPA Proof of Claim with respect to the Priority Order Site.  After MLC has paid Ohio DOD $5,329,343 the Debtors and their successors, assigns, officers, directors and employees in their respective capacities as such shall have no further role or residual interest with respect to the Priority Order Site other than as expressly provided in Paragraphs 14 through 16 of this Delphi Harrison Settlement Agreement, nor shall they have any further liability, duty or obligation in connection with the matters resolved in this Delphi Harrison Settlement Agreement, including all environmental claims and other environmental liabilities asserted in the EPA Proof of Claim, other than as expressly reserved in Paragraphs 14 through 16 of this Delphi Harrison Settlement Agreement.

## VI. **DISTRIBUTION INSTRUCTIONS**

5.    Cash distributions to Ohio DOD made by MLC pursuant to Paragraph 4 shall be made to an Ohio DOD account via wire delivery, in accordance with instructions provided to MLC by the Ohio Attorney General and shall reference Bankruptcy Case Number 09-50026 .  The payment instructions shall include: Attention: Amy Alduino, Ohio Department of Development and a reference to "Delphi Harrison" which shall be used to identify all cash distributions required to be made in accordance with this Delphi Harrison Settlement Agreement.  MLC shall transmit written confirmation of such payments to Ohio DOD at the addresses specified in Paragraph 19.

6.    Special Account.  The total cash distributions to Ohio DOD made by MLC pursuant to Paragraph 4 shall be deposited in a special account to be retained and used to conduct or finance response actions at or in connection with the Priority Order Site and not for any other purpose, or, if no further response action is required, transferred by Ohio DOD to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010.

7.    Credits.  The total cash distributions made by MLC under this Delphi Harrison Settlement Agreement shall be credited by Ohio DOD to its account for the Priority Order Site, which credit shall reduce the liability of non-settling potentially responsible parties for the particular site by the amount of the credit.

8.    Treatment of Distributions.  None of the distributions made by MLC under this Delphi Harrison Settlement Agreement constitute, nor shall they be construed as, forfeitures, fines, or penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an admission by MLC of any facts or any violation of law.  Notwithstanding the foregoing, MLC

agrees to comply with all terms of this Delphi Harrison Settlement Agreement upon the Effective Date.

## VII.  COVENANTS NOT TO SUE

9.    With respect to the Priority Order Site (including the releases of Hazardous Substances from any portion of the Priority Order Site and all areas affected by migration of such substances emanating from the Priority Order Site), and except as specifically provided in Section X (Reservation of Rights), upon the Effective Date, the United States, on behalf of EPA, and Ohio, on behalf of Ohio EPA, covenant not to sue or assert any administrative or other civil claims or causes of action against Debtors under CERCLA, RCRA, and State environmental statutes, as well as any other environmental liabilities asserted in the EPA Proof of Claim.

10.    With respect to the Priority Order Site, except as specifically provided in Section VIII (Reservation of Rights), the EPA Proof of Claim shall be deemed satisfied in full in accordance with the terms of this Delphi Harrison Settlement Agreement, the Governments shall not be entitled to file any further claims under CERCLA, RCRA, or State environmental statutes as well as any other environmental liabilities asserted in the EPA Proof of Claim, whether unsecured, secured, administrative priority or otherwise, and the Governments shall not receive any other distributions in the Bankruptcy Cases on account of such claims regarding the Priority Order Site.

11.    These covenants not to sue in Section VII (and the reservations thereto) shall also apply to Debtors' successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of Debtors.

12.    The covenants not to sue contained in this Delphi Harrison Settlement Agreement extend only to Debtors and the persons described in Paragraph 11 above and do not extend to any other person or entity.    Nothing in this Delphi Harrison Settlement Agreement is intended as a covenant not to sue any person or entity other than the Debtors, the United States, Ohio, and the persons or entities described in Paragraph 11.    Except as provided in Paragraph 11, the United States, Ohio, and Debtors expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States, Ohio, or Debtors may have against all other persons or entities, firms, corporations, entities, or predecessors of Debtors for any matter arising at or relating in any manner to the Priority Order Site and/or claims or causes of action addressed herein.

13.    Debtors covenant not to sue and agree not to assert claims or causes of action against the United States or Ohio with respect to the Priority Order Site, including but not limited to any direct or indirect claim for reimbursement from (i) the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or (ii) any other provision of federal or state law; any claims against the United States or Ohio, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or State environmental statutes; and any claims arising out of the response activities at the Priority Order Site.    Nothing in this Delphi Harrison Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d), or State environmental statutes.

## VIII.    RESERVATION OF RIGHTS

14.    The covenants not to sue set forth in Section VII do not apply to any matters other than those expressly specified therein.  The United States and Ohio reserve, and this Delphi Harrison Settlement Agreement is without prejudice to, all rights against Debtors or other persons or entities with respect to all matters other than those set forth in Section VII.  The United States and Ohio also specifically reserve all rights against Debtors with respect to:

(i)    any action to enforce their rights under this Delphi Harrison Settlement Agreement;

(ii)    any claim or cause of action for response costs and injunctive relief under CERCLA Sections 106 and 107, RCRA Sections 3008, 7002 and 7003 or state environmental law for future acts taken by the Debtors after the Effective Date that create liability under CERCLA, RCRA, or state law;

(iii)    criminal liability; and

(iv)    all rights with respect to any site that is not the Priority Order Site.

Debtors' future acts creating liability under CERCLA, RCRA or state law do not include continuing releases related to Debtors' conduct at the Priority Order Site prior to the Effective Date.  The United States and Ohio also reserve, and this Delphi Harrison Settlement Agreement is without prejudice to, any liability of Debtors' successors, assigns, officers, directors, employees, and trustees for response costs and injunctive relief under CERCLA Section 106 and 107, RCRA Sections 7002 and 7003, and state laws for any future acts taken by any such respective entity after the Effective Date that create liability under CERCLA, RCRA or state law.  Future acts creating liability under CERCLA, RCRA, or state law do not include continuing releases related to such party's conduct at the Priority Order Site prior to the Effective Date.

15.    Nothing in this Delphi Harrison Settlement Agreement shall be deemed to limit the authority of the Governments to take response action under Section 104 of CERCLA, 42 U.S.C.

§ 9604, or any other applicable federal or state law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the Governments pursuant to such authority. Nothing in this Delphi Harrison Settlement Agreement shall be deemed to limit the information-gathering authority of the Governments under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal or state law or regulation.

16. Except as provided in Paragraph 11, nothing in this Delphi Harrison Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person or entity not a party to this agreement. Except as provided in Paragraph 11, nothing in this Delphi Harrison Settlement Agreement diminishes the rights of the Governments, pursuant Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), or State environmental statutes, to pursue any persons or entities not a party hereto to obtain additional response costs or response actions and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2), or State environmental statutes. Except as provided in Paragraph 11, the Governments expressly reserve all existing rights against all persons or entities not a party to this Delphi Harrison Settlement Agreement, including New GM. MLC reserves all rights against all persons or entities not a party hereto, including the right to dispute claims filed by parties or entities other than the Governments with respect to the Priority Order Site.

## IX.  **CONTRIBUTION PROTECTION**

17. The parties hereto agree, and by approving this Delphi Harrison Settlement Agreement the Bankruptcy Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) and any analogous Ohio law, and

that Debtors are entitled, as of the Agreement Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Delphi Harrison Settlement Agreement. The "matters addressed" in this Delphi Harrison Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include, without limitation, response costs incurred or to be incurred by EPA, Ohio, or potentially responsible parties or Claims with respect to the Priority Order Site.

18.   Debtors agree that, with respect to any suit for contribution brought against them after the Agreement Effective Date for matters related to this Settlement Agreement, they will notify the United States within 15 business days of service of the complaint upon them.   In addition, in connection with such suit, Debtors shall notify the United States within 15 business days of service or receipt of any Motion for Summary Judgment and within 15 business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Sections VII and VIII (Covenants Not to Sue and Reservation of Rights)).

## X.   NOTICES AND SUBMISSIONS

19.   Whenever, under the terms of this Delphi Harrison Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of address to the other parties in writing.   All notices and submissions shall be considered effective upon receipt, unless otherwise provided.   Except as otherwise provided in this Delphi Harrison Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any

written notice requirement in the Settlement Agreement with respect to the United States, Ohio, and

MLC, REALM, and ENCORE, respectively.

<u>The United States</u>:

ROBERT G. DREHER
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Ref. DOJ File No. 90-11-3-1-09754

DAVID S. JONES.
NATALIE N. KUEHLER
Assistant United States Attorney
Office of the United States Attorney
    for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY  10007

<u>U.S. EPA</u>:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

MONESH CHABRIA
U.S. Environmental Protection Agency
Region 5, C-14J
77 West Jackson Boulevard
Chicago, Illinois 60604

<u>The State of Ohio</u>:

MICHELLE T. SUTTER
Principal Assistant Attorney General
30 E. Broad Street, 26th Floor
Columbus, Ohio  43215

MLC, REALM, and ENCORE:

TED STENGER
Executive Vice President
Motors Liquidation Company, as agent for
   each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243


DAVID R. BERZ
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005


## XI.   **PUBLIC COMMENT**

20.   This Delphi Harrison Settlement Agreement will be subject to a public comment period following notice published in the Federal Register and notice under any applicable state law providing for public comment, which may take place concurrent with the judicial approval process under Paragraph 21 hereof.  The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Delphi Harrison Settlement Agreement disclose facts or considerations that indicate that this Delphi Harrison Settlement Agreement is inappropriate, improper, or inadequate.  The United States will promptly provide Debtors copies of any public comments received during the public comment period.  At the conclusion of the public comment period, the United States will provide the Bankruptcy Court with copies of any public comments and its response thereto.  If the United States withdraws or withholds its consent to the Delphi Harrison Settlement Agreement prior to the Effective Date, this Delphi Harrison Settlement Agreement shall be void and have no further force and effect.  Any changes,

revisions or amendments to the Delphi Harrison Settlement Agreement in response to public comment are subject to the approval of all Parties.

## XII.    JUDICIAL APPROVAL

21.    The settlement reflected in this Delphi Harrison Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Debtors shall move promptly for court approval of this Delphi Harrison Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XIII.    PLAN

22.    The Debtors shall incorporate this Delphi Harrison Settlement Agreement into the Plan by reference and approval of this Delphi Harrison Settlement Agreement shall be a condition precedent to confirmation of the Plan.  The Debtors shall not file a Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Delphi Harrison Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Delphi Harrison Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Delphi Harrison Settlement Agreement.  The Governments shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Delphi Harrison Settlement Agreement.  The Parties reserve all other rights or defenses that they may have with respect to the Plan.  In the event of any inconsistency between the Plan, any order confirming the Plan, and this Delphi Harrison Settlement Agreement, the terms of this Delphi Harrison Settlement Agreement shall control.

## XIV.    RETENTION OF JURISDICTION

23.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Delphi Harrison Settlement Agreement and the parties hereto, for the duration of the performance of the terms and provisions of this Delphi Harrison Settlement Agreement for the purpose of enabling any of the parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Delphi Harrison Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XV.    EFFECTIVENESS OF SETTLEMENT AGREEMENT

24.    This Delphi Harrison Settlement Agreement shall be effective after the close of the public comment period in accordance with Paragraph 20, approval by the Bankruptcy Court pursuant to Paragraph 21, and upon the Effective Date of the Debtor's Plan incorporating this Delphi Harrison Settlement Agreement.

## XVI.    SIGNATORIES/SERVICES

25.    The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Delphi Harrison Settlement Agreement and to execute and bind legally such party to this document.

[REMAINDER OF THE PAGE LEFT BLANK]

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

FOR THE UNITED STATES:

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: _12/13/10_

Date: _12/14 2010_

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _12/14/10_

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

17

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**              PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York


_____        _____
Robert G. Dreher                        David S. Jones
Acting Assistant Attorney General       Natalie N. Kuehler
Environment and Natural Resources       Assistant U.S. Attorneys
    Division                            86 Chambers St., 3rd Floor
U.S. Department of Justice              New York, NY 10007


Date:  _____                  Date:  _____



_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date:  _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date:  11/17/10

17

**FOR OHIO:**

Date: _11/22/10_          _[signature]_

                        RICHARD CORDRAY
                        Attorney General for the State of Ohio

           By:     Michelle T. Sutter
                   Principal Assistant Attorney General
                   30 E. Broad Street, 25th Floor
                   Columbus, Ohio  43215
                   Tel.:  (614) 466-2766
                   Fax:  (614) 483-1104
                   Email:michelle.sutter@ohioattorneygeneral.gov


**FOR MLC, REALM, AND ENCORE:**


Date: _____       _____
                                Ted Stenger
                                Executive Vice President
                                Motors Liquidation Company, as agent for
                                    each of the foregoing entities,
                                500 Renaissance Center, Suite 1400
                                Detroit, MI  48243
                                Tel.:  (313) 486-4044
                                Fax:  (313) 486-4259
                                Email:  tstenger@alixpartners.com



Date: _____       _____
                                James M. Redwine
                                Vice President of Environmental Affairs
                                Motors Liquidation Company, as agent for
                                    each of the foregoing entities


18

**FOR OHIO:**

Date: _____          _____
                                RICHARD CORDRAY
                                Attorney General for the State of Ohio

                   By:          Michelle T. Sutter
                                Principal Assistant Attorney General
                                30 E. Broad Street, 25th Floor
                                Columbus, Ohio 43215
                                Tel.: (614) 466-2766
                                Fax: (614) 483-1104
                                Email:michelle.sutter@ohioattorneygeneral.gov

**FOR MLC, REALM, AND ENCORE:**

Date: _____          _____
                                Ted Stenger
                                Executive Vice President
                                Motors Liquidation Company, as agent for
                                   each of the foregoing entities,
                                500 Renaissance Center, Suite 1400
                                Detroit, MI 48243
                                Tel.: (313) 486-4044
                                Fax: (313) 486-4259
                                Email: tstenger@alixpartners.com

Date: _____          _____
                                James M. Redwine
                                Vice President of Environmental Affairs
                                Motors Liquidation Company, as agent for
                                   each of the foregoing entities

Date:  _12/6/10_

_____
David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in
Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
Tel.:  (202) 682-7000
Fax:  (202) 857-0939
Email:  david.berz@weil.com

19

PREET BHARARA
United States Attorney for the
Southern District of New York
NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2741
Facsimile:  (212) 637-2750
Email: natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
                                                      :
In re:                                                :      Chapter 11
                                                      :
MOTORS LIQUIDATION COMPANY, *et al.,*                 :      Case No. 09-50026 (REG)
    f/k/a/ GENERAL MOTORS CORP., *et*                 :
*al.,*                                                :      Jointly Administered
                                                      :
                    Debtors.                          :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF LODGING OF PROPOSED
## HARVEY & KNOTT SETTLEMENT AGREEMENT

The United States of America hereby lodges with the Court the proposed Harvey & Knott

Settlement Agreement attached hereto as Exhibit A.   This Settlement Agreement has been

executed by all parties.

The United States requests that the Court not approve the proposed Settlement Agreement

at this time.   Notice of the lodging of the proposed Settlement Agreement will be published in the

*Federal Register*, following which the United States Department of Justice will accept public

comments on the proposed Settlement Agreement for a 30-day period.   After the conclusion of

the public comment period, the United States will file with the Court any comments received, as

well as responses to the comments, and at that time, if appropriate, will request that the Court

approve the proposed Settlement Agreement.

Dated:          New York, New York
                December 14, 2010

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America


By:          _____/s/ Natalie N. Kuehler_____
             NATALIE N. KUEHLER
             DAVID S. JONES
             Assistant United States Attorneys
             86 Chambers Street, 3rd Floor
             New York, New York 10007
             Telephone:   (212) 637-2741
             Facsimile:   (212) 637-2750
             Email: natalie.kuehler@usdoj.gov

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

---

**CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN**
**THE DEBTORS AND THE UNITED STATES OF AMERICA**

## I. BACKGROUND

WHEREAS, Motors Liquidation Company (f/k/a General Motors Corp.) ("MLC"), a Delaware corporation, and certain of its affiliates commenced these chapter 11 cases by filing with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2009, and on October 9, 2009, Remediation and Liability Management Company ("REALM") and Environmental Corporate Remediation Company, Inc. ("ENCORE") commenced these chapter 11 cases by filing with the Bankruptcy Court voluntary petitions for relief under the Bankruptcy Code, which cases have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "Bankruptcy Cases");

WHEREAS, on June 1, 2009, General Motors Corp. also filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363;

WHEREAS, as part of the sale of assets, General Motors Corp. excluded from the sale certain real property and personalty it owned;

WHEREAS, on July 5, 2009, the Bankruptcy Court approved the sale of assets to NGMCO, Inc. (a/k/a Newco), now known as General Motors Company ("New GM");

WHEREAS, following the sale of assets, General Motors Corp. was renamed Motors Liquidation Company ("MLC"), and has continued to own and manage the real property assets excluded from the sale to Newco;

WHEREAS, the United States of America (the "United States" or the "Government"), on behalf of the United States Environmental Protection Agency ("EPA"), contend that MLC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., to comply with injunctive orders and for costs incurred and to be incurred by the Government in response to releases and threats of releases of hazardous substances at or in connection with the Harvey & Knott Drum Superfund Site in New Castle County, Delaware (the "Priority Order Site");

WHEREAS, the United States, on behalf of EPA, has filed a proof of claim in the Bankruptcy Cases (Claim No. 64064) (the "EPA Proof of Claim") against MLC, regarding, *inter alia*, the Priority Order Site;

WHEREAS, the United States, acting on behalf of EPA, contends that General Motors Corp. ("GM") was required to conduct a remedial action pursuant to a Consent Decree issued on October 19, 1987, by the United States District Court for the District of Delaware (the "Consent Decree");

WHEREAS, the United States, acting on behalf of EPA, contends that the Consent Decree required GM to undertake the remedial actions set forth in an EPA Record of Decision, dated September 30, 1985, for the Priority Order Site to address the immediate health threats posed by polychlorinated biphenyls ("PCBs"), benzene, ethylbenzene, methylene chloride, toluene,

xylenes, bis(2-ethylhexyl) phthalate, cadmium, chromium and lead in the soil and groundwater at the Priority Order Site;

WHEREAS, the United States, on behalf of EPA, contends that MLC is the successor to GM and therefore is liable to the Government pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a);

WHEREAS, the United States, on behalf of EPA, contends that MLC is liable for injunctive obligations and claims set forth in the EPA Proof of Claim;

WHEREAS, the United States alleges in the EPA Proof of Claim that MLC's injunctive obligations to comply with work requirements under court orders, environmental statutes, regulations, administrative orders, licenses, and permits were regulatory obligations that MLC was required to fulfill, including, but not limited to, the work requirements set forth in the Consent Decree;

WHEREAS, the United States also alleges in the EPA Proof of Claim that MLC is obligated to reimburse the United States for past and future response actions and response costs incurred and to be incurred under CERCLA with respect to the Priority Order Site, plus interest;

WHEREAS, EPA estimates that it will incur significant future response costs at the Priority Order Site and estimates that future oversight at the Priority Order Site will cost at least $377,063;

WHEREAS, MLC does not accept as true all of the allegations in the EPA Proof of Claim referenced above, but has concluded that further litigation or estimation proceedings are not in the best interests of the Debtors and their estates, and that this Harvey & Knott Settlement Agreement is an appropriate means of resolving these matters;

WHEREAS, the parties hereto wish to resolve the Government's claims and causes of action with respect to the Priority Order Site and address other issues relating to environmental matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the parties and is entered into solely for purposes of this settlement, and the parties reserve their legal arguments as to any issues involved in other matters, including with respect to sites and properties other than the Priority Order Site included in the EPA Proof of Claim;

WHEREAS, on August 31, 2010, the Debtors filed a proposed joint chapter 11 Plan (as may be amended, the "Plan") that incorporates this Harvey & Knott Settlement Agreement as a Priority Site Consent Decree and Settlement Agreement to be filed with the Bankruptcy Court;

WHEREAS, in the event that this Harvey & Knott Settlement Agreement is not approved by the Bankruptcy Court, the Parties reserve the right to propose that the cash payment provided for in Paragraph 4 be paid to the Cushion Funding Account as defined by the Environmental Response Trust Consent Decree and Settlement Agreement among Debtors, the Administrative Trustee, the United States, and Certain States, lodged October 20, 2010;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, the United States and MLC agree to the terms and provisions of this Harvey & Knott Settlement Agreement;

WHEREAS, settlement of the matters governed by this Harvey & Knott Settlement Agreement is fair, equitable, and in the public interest and is an appropriate means of resolving these matters;

4

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Harvey & Knott Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II. DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.   Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "Allowed General Unsecured Claim" shall have the meaning set forth in the Plan of Liquidation.

b.    "Claims" has the meaning provided in Section 101(5) of the Bankruptcy Code.

c.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

d.    "Debtors" means MLC, REALM, and ENCORE.

e.    "Effective Date" means the day on which the Plan becomes effective in accordance with its terms and the Bankruptcy Court's order confirming the Plan.

f.    "Harvey & Knott Settlement Agreement" means this Consent Decree and Settlement Agreement between the Debtors and the United States of America of behalf of EPA.

g.    "Plan" means the joint chapter 11 Plan filed by the Debtors on August 31, 2010, as may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms thereof and incorporating this Harvey & Knott Settlement Agreement.

h.    "Priority Order Site" means the Harvey & Knott Drum Superfund Site in New Castle County, Delaware.

i.   "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq.

j.   "Superfund" means the Hazardous Substances Superfund established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507.

k.   "United States" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

### III.  JURISDICTION

2.   The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b), as well as Article VIII of the Plan and the Confirmation Order.

### IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.   This Harvey & Knott Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors, assigns, officers, directors, and employees in their respective capacities as such, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

### V.  PRIORITY ORDER SITE – CASH PAYMENT

4.   In settlement and satisfaction of the injunctive and other work obligations at issue in the Consent Decree and alleged in the Proof of Claim with respect to the Priority Order Site, EPA shall receive a cash payment in the amount of $2,484,816 from MLC on the Effective Date.

### VI.  PRIORITY ORDER SITE—ALLOWED GENERAL UNSECURED CLAIMS

5.   In settlement and satisfaction of the claim for future oversight costs alleged in its Proof of Claim with respect to the Priority Order Site, the United States on behalf of EPA shall have an Allowed General Unsecured Claim in the amount of $377,063, classified in Class 3 under the Plan of Liquidation.

## VII.  TREATMENT OF ALLOWED GENERAL UNSECURED CLAIM

6.    The Allowed General Unsecured Claim under Paragraph 5 of this Harvey & Knott Settlement Agreement (i) shall be treated as provided under Section 4.3 of the Plan of Liquidation, and (ii) shall not be subordinated to any other Allowed General Unsecured Claim pursuant to any provision of the Bankruptcy Code or other applicable law, including without limitation sections 105, 510, and 726(a)(4) of the Bankruptcy Code.

7.    Notwithstanding any other provision of this Harvey & Knott Settlement Agreement, and except as provided under applicable law or otherwise ordered by the Bankruptcy Court, there shall be no restrictions on the ability and right of EPA to transfer or sell all or a portion of any securities distributed to it pursuant to the Plan of Liquidation, to sell its right to all or a portion of any distributions under the Plan to one or more third parties, or to transfer or sell to one or more third parties all or a portion of any Allowed General Unsecured Claim pursuant to this Harvey & Knott Settlement Agreement.

## VIII.  DISTRIBUTION INSTRUCTIONS

8.    a.  Cash distributions to the United States made by MLC pursuant to Paragraphs 4 or 5 shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to MLC by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 09-50026 and DOJ File Number 90-11-3-09754.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all cash distributions required to be made in accordance with this Harvey & Knott Settlement Agreement.  MLC shall transmit written confirmation of such payments to the United States at the addresses specified in Paragraph 22.  In the event that the United States sells or transfers its Allowed General Unsecured Claim, payment shall be made to a transferee only at such time as

MLC and its counsel receive written instructions from the United States directing that payments be made to a transferee and instructions as to where such payments should be directed, and, prior to the closing of the Bankruptcy Cases, after an evidence of claim transfer has been filed with the Bankruptcy Court consistent with the terms of the Plan.

b.    Non-cash distributions to the United States made by MLC pursuant to Paragraph 5 shall be made to:

> U.S. Environmental Protection Agency
> Attn: Molly Williams
> Suite 300
> 4411 Montgomery Rd.
> Cincinnati, OH  45212

MLC shall transmit written confirmation of such distributions to the United States at the addresses specified in Paragraph 22 below.

9.    <u>Special Account</u>.  The total cash distributions to EPA made by MLC pursuant to Paragraphs 4 or 5 (and any net cash received by EPA upon sale of any non-cash distributions made by MLC pursuant to Paragraph 5) shall be deposited in a special account within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Priority Order Site or if no further response action is required, transferred by EPA to the Superfund.

10.    <u>Credits</u>.  The total cash distributions made by MLC under this Harvey & Knott Settlement Agreement (and any net cash received by the United States upon sale of any non-cash distributions made by MLC pursuant to Paragraph 5) shall be credited by EPA to its account for the Priority Order Site, which credit shall reduce the liability of non-settling potentially responsible parties for the particular site by the amount of the credit.

11.    <u>Treatment of Distributions</u>.  None of the distributions made by MLC under this Harvey & Knott Settlement Agreement constitute, nor shall they be construed as, forfeitures, fines, or

penalties (or payments in lieu thereof), and nothing herein is intended, or shall be construed, as an admission by MLC of any facts or any violation of law.  Notwithstanding the foregoing, MLC agrees to comply with all terms of this Harvey & Knott Settlement Agreement upon the Effective Date.

## IX.  COVENANTS NOT TO SUE

12.    With respect to the Priority Order Site (including the releases of Hazardous Substances from any portion of the Priority Order Site and all areas affected by migration of such substances emanating from the Priority Order Site), and except as specifically provided in Section X (Reservation of Rights), upon the Effective Date, the United States, on behalf of EPA, covenants not to sue or assert any administrative or other civil claims or causes of action against Debtors, with respect to the Priority Order Site under CERCLA, RCRA, and State environmental statutes, as well as any other environmental liabilities asserted in the EPA Proof of Claim.

13.    With respect to the Priority Order Site, except as specifically provided in Section X (Reservation of Rights), the EPA Proof of Claim shall be deemed satisfied in full in accordance with the terms of this Harvey & Knott Settlement Agreement, the Government shall not be entitled to file any further claims under CERCLA, or RCRA, as well as any other environmental liabilities asserted in the EPA Proof of Claim, whether unsecured, secured, administrative priority or otherwise, and the Government shall not receive any other distributions in the Bankruptcy Cases on account of such claims.

14.    These covenants not to sue in Section IX (and the reservations thereto) shall also apply to Debtors' successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee,

or trustee of Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of Debtors.

15.  The covenants not to sue contained in this Harvey & Knott Settlement Agreement extend only to Debtors and the persons described in Paragraph 14 above and do not extend to any other person or entity.  Nothing in this Harvey & Knott Settlement Agreement is intended as a covenant not to sue any person or entity other than the Debtors, the United States, and the persons or entities described in Paragraph 14.  Except as provided in Paragraph 14, the United States and Debtors expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States or Debtors may have against all other persons or entities, firms, corporations, entities, or predecessors of Debtors for any matter arising at or relating in any manner to the Priority Order Site and/or claims or causes of action addressed herein.

16.  Debtors covenant not to sue and agree not to assert claims or causes of action against the United States with respect to the Priority Order Site, including but not limited to any direct or indirect claim for reimbursement from (i) the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or (ii) any other provision of federal or state law; any claims against the United States, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or State environmental statutes; and any claims arising out of the response activities at the Priority Order Site.  Nothing in this Harvey & Knott Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d), or State environmental statutes.

## X.    RESERVATION OF RIGHTS

17.    The covenants not to sue set forth in Section IX do not apply to any matters other than those expressly specified therein.    The United States reserves, and this Harvey & Knott Settlement Agreement is without prejudice to, all rights against Debtors or other persons or entities with respect to all matters other than those set forth in Section IX.    The United States also specifically reserves all rights against Debtors with respect to:

(i)    any action to enforce their rights under this Harvey & Knott Settlement Agreement;

(ii)    any claim or cause of action for response costs and injunctive relief under CERCLA Sections 106 and 107, RCRA Sections 3008, 7002 and 7003 or state environmental law for future acts taken by the Debtors after the Effective Date that create liability under CERCLA, RCRA, or state law;

(iii)    criminal liability;

(iv)    any general unsecured claim arising from damages or injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments; and

(v)    all rights with respect to any site that is not the Priority Order Site.

Debtors' future acts creating liability under CERCLA, RCRA or state law do not include continuing releases related to Debtors' conduct at the Priority Order Site prior to the Effective Date.    The United States also reserves, and this Harvey & Knott Settlement Agreement is without prejudice to, any liability of Debtors' successors, assigns, officers, directors, employees, and trustees for response costs and injunctive relief under CERCLA Section 106 and 107, 42 U.S.C. §§ 9606, 9607, RCRA Sections 7002 and 7003, 42 U.S.C. U.S.C. §§ 6972, 6973, and state laws for any future acts taken by any such respective entity after the Effective Date that create liability under CERCLA, RCRA or state law.    Future acts creating liability under CERCLA, RCRA, or state law do not

11

include continuing releases related to such party's conduct at the Priority Order Site prior to the Effective Date.

18.    Nothing in this Harvey & Knott Settlement Agreement shall be deemed to limit the authority of the Government to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable federal or state law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to such authority.    Nothing in this Harvey & Knott Settlement Agreement shall be deemed to limit the information-gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal or state law or regulation.

19.    Except as provided in Paragraph 14, nothing in this Harvey & Knott Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person or entity not a party to this agreement.    Except as provided in Paragraph 14, nothing in this Harvey & Knott Settlement Agreement diminishes the rights of the United States, pursuant Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), or State environmental statutes, to pursue any persons or entities not a party hereto to obtain additional response costs or response actions and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or State environmental statutes.    Except as provided in Paragraph 14, the United States expressly reserves all existing rights against all persons or entities not a party to this Harvey & Knott Settlement Agreement, including New GM.

12

## XI. **CONTRIBUTION PROTECTION**

20.    The parties hereto agree, and by approving this Harvey & Knott Settlement Agreement the Bankruptcy Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Debtors are entitled, as of the Agreement Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Harvey & Knott Settlement Agreement.  The "matters addressed" in this Harvey & Knott Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) or any analogous Delaware law, include, without limitation, response costs incurred or to be incurred by EPA or potentially responsible parties or Claims with respect to the Priority Order Site.

21.    Debtors agree that with respect to any suit for contribution brought against them after the Agreement Effective Date for matters related to this Settlement Agreement, they will notify the United States within 15 business days of service of the complaint upon them.  In addition, in connection with such suit, Debtors shall notify the United States within 15 business days of service or receipt of any Motion for Summary Judgment and within 15 business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Sections IX and X (Covenants Not to Sue and Reservation of Rights)).

## XII. **NOTICES AND SUBMISSIONS**

22.    Whenever, under the terms of this Harvey & Knott Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested, unless those individuals or their successors give notice of a change of

address to the other parties in writing.  All notices and submissions shall be considered effective

upon receipt, unless otherwise provided.  Except as otherwise provided in this Harvey & Knott

Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any

written notice requirement in the Settlement Agreement with respect to the United States and MLC,

REALM, and ENCORE, respectively.

> The United States:
>
> ROBERT G. DREHER
> Assistant Attorney General
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, DC  20044
> Ref. DOJ File No. 90-11-3-09754
>
> DAVID S. JONES.
> NATALIE N. KUEHLER
> Assistant United States Attorney
> Office of the United States Attorney
>     for the Southern District of New York
> 86 Chambers Street, Third Floor
> New York, NY  10007
>
>
> U.S. EPA:
>
> CRAIG KAUFMAN
> Attorney-Advisor
> U.S. Environmental Protection Agency
> Ariel Rios Building
> 1200 Pennsylvania Avenue, NW
> Washington, DC  20460
>
> GWEN E. POSPISIL
> U.S. Environmental Protection Agency
> Region 3, Office of Regional Counsel
> 1650 Arch St.
> Philadelphia, PA  19103-2029

MLC, REALM, and ENCORE:

TED STENGER
Executive Vice President
Motors Liquidation Company, as agent for
   each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243


DAVID R. BERZ
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005

# XIII.  PUBLIC COMMENT

23.    This Harvey & Knott Settlement Agreement will be subject to a public comment period following notice published in the Federal Register and notice under any applicable state law providing for public comment, which may take place concurrent with the judicial approval process under Paragraph 24 hereof.  The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Harvey & Knott Settlement Agreement disclose facts or considerations that indicate that this Harvey & Knott Settlement Agreement is inappropriate, improper, or inadequate.  The United States will promptly provide Debtors copies of any public comments received during the public comment period.  At the conclusion of the public comment period, the United States will provide the Bankruptcy Court with copies of any public comments and its response thereto.  If the United States withdraws or withholds its consent to the Harvey & Knott Settlement Agreement prior to the Effective Date, this Harvey & Knott Settlement Agreement shall be void and have no further force and effect.  Any changes,

revisions or amendments to the Harvey & Knott Settlement Agreement in response to public comment are subject to the approval of all Parties.

## XIV.  JUDICIAL APPROVAL

24.    The settlement reflected in this Harvey & Knott Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Debtors shall move promptly for court approval of this Harvey & Knott Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XV.  PLAN

25.    The Debtors shall incorporate this Harvey & Knott Settlement Agreement into the Plan by reference and approval of this Harvey & Knott Settlement Agreement shall be a condition precedent to confirmation of the Plan.  The Debtors shall not file the Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Harvey & Knott Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Harvey & Knott Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Harvey & Knott Settlement Agreement.  The United States shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Harvey & Knott Settlement Agreement.  The Parties reserve all other rights or defenses that they may have with respect to the Plan.  In the event of any inconsistency between the Plan, any order confirming the Plan, and this Harvey & Knott Settlement Agreement, the terms of this Harvey & Knott Settlement Agreement shall control.

## XVI.   RETENTION OF JURISDICTION

26.     The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Harvey & Knott Settlement Agreement and the parties hereto, for the duration of the performance of the terms and provisions of this Harvey & Knott Settlement Agreement for the purpose of enabling any of the parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Harvey & Knott Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XVII.   EFFECTIVENESS OF SETTLEMENT AGREEMENT

27.     This Harvey & Knott Settlement Agreement shall be effective after the close of the public comment period in accordance with Paragraph 23, approval by the Bankruptcy Court pursuant to Paragraph 24, and upon the Effective Date of the Debtor's Plan incorporating this Harvey & Knott Settlement Agreement.

## XVIII.  SIGNATORIES/SERVICES

28.     The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Harvey & Knott Settlement Agreement and to execute and bind legally such party to this document.


[REMAINDER OF THE PAGE LEFT BLANK]

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: 12/13/10

Date: 12/14/200

Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: 12/14/10

Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

18

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: _____

Date: _____

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: ___11/17/10___

**FOR MLC, REALM, AND ENCORE:**

Date: _____

Ted Stenger
Executive Vice President
Motors Liquidation Company, as agent for
   each of the foregoing entities,
500 Renaissance Center, Suite 1400
Detroit, MI  48243
Tel.: (313) 486-4044
Fax: (313) 486-4259
Email:  tstenger@alixpartners.com

Date: _____

James M. Redwine
Vice President of Environmental Affairs
Motors Liquidation Company, as agent for
   each of the foregoing entities

Date: __12\6\10__

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in
Possession
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
Tel.: (202) 682-7000
Fax: (202) 857-0939
Email: david.berz@weil.com