**Hearing Date: March 3, 2011 at 9:45 a.m (EDT)**

**Objections Deadline: February 11, 2011 at 4:00 p.m. (EST)**

Stefano V. Calogero, Esq.
WINDELS, MARX, LANE
& MITTENDORF, LLP
One Giralda Farms – Suite 380
Madison, NJ 07940
Telephone: (973) 966-3205
E-Mail: scalogero@windelsmarx.com

Counsel for Allstate Insurance Company, as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>MOTORS LIQUIDATION CORPORATION, *et al., f.k.a General Motors Corp., et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>Jointly Administered |

**LIMITED OBJECTION OF ALLSTATE INSURANCE COMPANY TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF MOTORS LIQUIDATION CORPORATION, *et al***

Allstate Insurance Company, solely as successor in interest to Northbrook Excess and Surplus Insurance Company ("Northbrook"), formerly Northbrook Insurance Company sets forth its limited objection to confirmation of the Joint Chapter 11 Plan of Motors Liquidation Corporation, et al. ("Plan").[1]

[1] Capitalized terms used in this Objection that are not otherwise defined herein shall be given the meanings applied to such terms in the Plan or related Plan Documents.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**SUMMARY OF ARGUMENT** .......... 1

**OBJECTIONS** .......... 1

**ARGUMENT** .......... 3

A. **The Plan is not "Insurance Neutral."** .......... 3

B. **To The Extent The Plan Improperly Assigns Insurance Policies To The Asbestos Insurance Assets Trust, It Is Contrary to the Code.** .......... 5

C. **The Plan Fails To Include Any Description Of Or Documents Relating To The Asbestos Insurance Assets Trust.** .......... 8

D. **The Plan Improperly Seeks To Create Or Reserve Jurisdiction In The Bankruptcy Court Over State Law Coverage Disputes.** .......... 9

**RESERVATION OF RIGHTS** .......... 10

{10619930:1}

# TABLE OF AUTHORITIES

**Cases**

**AGV Productions, Inc., v. Metro-Goldwyn Mayer, Inc.,**
**115 F. Supp. 2d 378 (S.D.N.Y. 2000), aff'd, 37 Fed.Appx. 555 (2nd Cir. 2002)....................7**

**Cole v. Metropolitan Life Ins. Co.,**
**273 AD.2d 832 (N.Y. App. Div. 2000)........................................................................6**

**First Fidelity Bank v. McAteer,**
**985 F.2d 114 (3d Cir. 1993) .......................................................................................5**

**G-I Holdings, Inc. v. Hartford Accident and Indem. Co.**
**(In re G-I Holdings, Inc.),**
**278 B.R. 376 (Bankr. D. N.J. 2002) ..........................................................................11**

**In re Chemtura Corp., et al.,**
**No. 09-11233 (REG)...................................................................................................5, 9**

**In re Coupon Clearing Serv., Inc.,**
**113 F .3d 1091 (9th Cir. 1997) ....................................................................................4**

**In re Stewart Foods, Inc.,**
**64 F.3d 141 (4th Cir. 1995)..........................................................................................8**

**Integrated Solutions v. Servo Support Specialties,**
**124 F.3d 487 (3rd Cir. 1997).........................................................................................6**

**Jones v. GE Capital Mortgage Co. (In re Jones),**
**179 B.R. 450 (Bankr. E.D. Pa. 1995) ...........................................................................4**

**Macklowe v. 42nd St. Dev. Corp.,**
**170 AD.2d 388 (N.Y. App. Div. 1991)..........................................................................6**

**Moody v. Amoco Oil Co.,**
**734 F.2d 1204 (7th Cir. 1984) .......................................................................................4**

**NLRB v. Bildisco & Bildisco,**
**456 U.S. 513, 522 n.6, 104 S.Ct. 1188,79 L.Ed.2d 482 (1984)...................................7**

**Northwestern Inst. of Psychiatry, Inc. v. Travelers Indem. Co.**
**(In re Northwestern Inst. of Psychiatry, Inc.)**
**272 B.R. 104 (E.D. Pa. 2001).......................................................................................11**

**Sullivan v. Int'l Fid Ins. Co.,**
**96 AD.2d 555 (N.Y. App. Div. 1983)........................................................................ 6, 11**

**Statutes**

**28 U.S.C. § 157(b)(2)........................................................................................................ 11**

**28 U.S.C. §§ 157 ............................................................................................................... 10**

**28 U.S.C. §1334(c)(1) and (2)........................................................................................... 11**

**Treatises**

**Findings of Fact, Conclusions of Law and Order Confirming The Joint Chapter 11 Plan of Chemtura Corporation, et al. ............................................................ 5, 9**

## SUMMARY OF ARGUMENT

Debtors' Plan suffers from several flaws that bar confirmation. The Debtors improper Class Action of general liability insurance policies with inception dates prior to 1986, whether as executory contracts or not, could impermissibly strip insurers of coverage defenses following confirmation of the Plan. The Plan further peels away insurers' rights to object to claims. This is compounded by the lack of Insurance Neutrality language, thus failing to protect insurers' rights so that the Plan will not cause injury to insurers, depriving them of standing to object. These Plan deficiencies can be readily resolved through the use of Insurance Neutrality language that prevents impairment of any of insurers' rights and ensures that such rights will be determined under the applicable insurance policies and not under the Plan or otherwise.

## OBJECTIONS

1. Northbrook issued certain general liability insurance policies to General Motors Corporation from approximately 1976 to 1982 ("Northbrook Policies" or "Policies").

2. The Plan includes a definition of Asbestos Insurance Assets that includes all insurance policies "with inception dates prior to 1986." See Plan at Section 1.7.

3. Presumably the Northbrook Policies are among these unidentified pre-1986 insurance policies thereby, classified as Asbestos Insurance Assets. See Plan at Section 1.7.

4. Under the Plan, all pre-1986 insurance policies issued to the Debtors, including presumably the Northbrook Policies, are to be transferred to the Asbestos Insurance Assets Trust. See Sections 1.7, 1.8 and 2.4 of the Plan.

5. The Plan states that the Asbestos Insurance Assets Trust proceeds are to be for the benefit of the DIP Lenders. See Plan at Section 1.8.

6. Nowhere in the Plan or the Disclosure Statement is there any hint as to what the DIP Lenders (the United States Treasury and the Government of Canada) intend to do with the Asbestos Insurance Assets.

7. Neither the Plan nor the Disclosure Statement provides any list of what specific policies are to be transferred to the Asbestos Insurance Assets Trust.

8. The Plan fails to acknowledge that these unnamed policies, including presumably the Northbrook Policies, contain terms and conditions which must be complied with in order for there to be any coverage under such policies. To the extent that Debtors or the Asbestos Insurance Assets Trust seek coverage under such policies, they must comply with their contractual obligations under the policies, which are clearly set forth in such policies.

9. The Plan fails to contain any Insurance Neutrality Language.

10. The Plan fails to include any description of the operation of the Asbestos Insurance Assets Trust, and/or any of the relevant documents related to its administration, formation or composition. See Plan at Section 1.8.

11. To the extent the Plan purports to reject certain executory contracts, it presumably would reject the unnamed insurance policies that are to be transferred to the Asbestos Insurance Assets Trust. See Plan at Article VIII.

12. The Plan improperly assigns the insurance policies to the Asbestos Insurance Assets Trust. See Sections 1.7, 1.8 and 2.4 of the Plan.

13. The Plan and Disclosure Statement improperly provide that the Asbestos Insurance Assets Trust "may pursue claims relating to the Asbestos Insurance Assets in its name…. to obtain insurance coverage under the Asbestos Insurance Assets." See Plan at Section 2.4.

## ARGUMENT

14. Debtors' Plan may not be confirmed because it fails to satisfy the requirements for confirmation of a plan of reorganization established by the Bankruptcy Code. The Plan impairs the rights of Northbrook, is not insurance neutral, and negatively affects Northbrook's contractual and legal rights without providing compensation for, or treatment of, those claims and rights as required by the Bankruptcy Code and applicable law.

### A. The Plan is not "Insurance Neutral."

15. The Plan is not "Insurance Neutral." It does not require Debtors or the Asbestos Insurance Assets Trust to comply with all of their obligations under the Northbrook Policies and does not protect Northbrook from the use of this Court's findings and rulings in separate coverage litigation.

16. Without "Insurance Neutrality" language, the Plan does not make clear that Debtors and/or the Asbestos Insurance Assets Trust have to comply with all of their obligations under the Policies, including requirements to provide notice of claims, and to cooperate in the settlement and defense of claims. The failure of the Plan to provide such assurance renders the Plan non-neutral. In addition, the release, discharge and injunction provisions in the Plan may be read as excusing those obligations under the Policies. See e.g., Plan at Section 12.5.

17. Further, nothing in the Plan prevents the Asbestos Insurance Assets Trust from introducing as evidence in a subsequent coverage action, findings or rulings of the Court in connection with Confirmation nor does it prevent them from contending that such findings or rulings are persuasive or binding on a coverage court. The absence of such protection impairs Northbrook's rights under its Policies and renders the Plan non-confirmable.

18. Confirmation of the Plan in its current form would make it more difficult for

{10619930:1}

Northbrook to successfully defend itself against insurance coverage claims, in the event of any dispute over the existence or scope of coverage for claims. A debtor may not use its bankruptcy for the purpose of gaining a litigation advantage against its insurers.

19. Therefore, without neutrality language, the Plan should not be confirmed because it could give Debtors an impermissible litigation advantage in of any further dispute over the existence or scope of coverage available under the Northbrook Policies. Several provisions of the Plan purport to give the debtor policyholders rights that they do not actually have under the Policies or, conversely, to deprive Northbrook of their contractual rights under the Policies. In either case, if the policyholders do not comply with their obligations under the Policies, any existing coverage would be vitiated under applicable non-bankruptcy law. Confirmation of the Plan should neither override applicable non-bankruptcy law regarding the rights and obligations of Debtors and the Insurers, nor should the Plan or any confirmation order create for Debtors a litigation advantage they would not have outside bankruptcy. See e.g., In re Coupon Clearing Serv., Inc., 113 F .3d 1091, 1099 (9th Cir. 1997) ("the estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy"); Moody v. Amoco Oil Co., 734 F.2d 1204, 1213 (7th Cir. 1984) (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case); Jones v. GE Capital Mortgage Co. (In re Jones), 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("'the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition'" (quoting First Fidelity Bank v. McAteer, 985 F.2d 114, 117 (3d Cir. 1993))).

20. As Your Honor is aware, "Insurance Neutrality" language can be readily added to the Plan. Northbrook proposes that language that is closely modeled on language contained in a

plan Your Honor confirmed (TH Agriculture & Nutrition, or "THAN") be inserted in the Plan. Alternatively, the Insurance Neutrality language that Your Honor recently approved in the Chemtura matter could be inserted. Either of these proposed "Insurance Neutrality" language constructs would protect the insurers' rights. See In re Chemtura Corp., et al., No. 09-11233 (REG), Nov. 3, 2010, at paragraph 131 of Findings of Fact, Conclusions of Law and Order Confirming The Joint Chapter 11 Plan of Chemtura Corporation, et al.

**B. To The Extent The Plan Improperly Assigns Insurance Policies To The Asbestos Insurance Assets Trust, It Is Contrary to the Code.**

21. The Plan appears to allege that the insurance policies allegedly issued by Northbrook and other insurers are executory contracts which will be rejected pursuant to Code § 365. See generally Plan at Article VIII.

22. It is not clear from the Plan whether or not the Plan contemplates "assigning" the Policies. The Plan merely has references to assignment, using the term "transfer" or "transferred" throughout. See, e.g., Plan at Section 1.7 and 2.4 and Disclosure Statement at Section III.B.

23. Sections 363 and 1123(a)(5) of the Code only allow a debtor to assign property where such assignment is permitted by state law. See Integrated Solutions, Inc. v. Servo Support Specialties, Inc., 124 F.3d 487, 493 (3rd Cir. 1997); Accord PG&E Co. v. Cal. ex rel. Cal. Dept of Toxic Substances Control, 350 F.3d 932 (9th Cir. 2003), cert. den., 543 U.S. 956 (2004). New York courts have held that non-assignment clauses must be enforced if the prohibition against assignment is clearly stated. See Cole v. Metropolitan Life Ins. Co., 273 AD.2d 832, 833 (N.Y. App. Div. 2000) ("'[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments."' (quoting Macklowe v. 42nd St. Dev.

{10619930:1}

Corp., 170 AD.2d 388, 389 (N.Y. App. Div. 1991); citing Sullivan v. Int'l Fid Ins. Co., 96 AD.2d 555, 556 (N.Y. App. Div. 1983))).

24. To the extent Debtors contemplate an assignment of any Policies without Northbrook's consent, such assignment impairs Northbrook's rights under, and violates the terms of, those Policies. Accordingly, the Plan may not be confirmed.

25. If the Policies are executory as Debtors appear to allege, then such insurance contracts must be assumed or rejected in their entirety. Debtors may not reject or otherwise be relieved of or released from any liabilities or obligations under executory insurance policies without forfeiting all rights to coverage thereunder. Likewise, Debtors may not assume the benefits of the insurance contracts without also assuming all of the corresponding burdens, obligations and liabilities. AGV Productions, Inc., v. Metro-Goldwyn Mayer, Inc., 115 F. Supp. 2d 378, 388 (S.D.N.Y. 2000), aff'd., 37 Fed.Appx. 555 (2nd Cir. 2002) (citing NLRB v. Bildisco & Bildisco, 456 U.S. 513, 522 n.6, 104 S.Ct. 1188,79 L.Ed.2d 482 (1984); In Re Qintex Entertainment, Inc., 950 F.2d 1492, 1496 (9th Cir. 1991)).

26. Nevertheless, the Plan contains a number of provisions suggesting the Debtors may not intend to assume the corresponding burdens, obligations, and liabilities under the Policies including:

- Plan § 1.9 defines Asbestos Personal Injury Claims to include "any Claim … against the Debtor ….or an Entity for whose products or operations the Debtors allegedly have liability." It also includes "any Claim… for reimbursement, indemnification, subrogation, and contribution (including, without limitation, any Indirect Asbestos Claim with respect to an Asbestos Personal Injury Claim)…" To the extent this definition may be construed so broadly as to include contribution claims, deductibles or self-insured retentions, the treatment of Asbestos Personal Injury Claims in the Plan impairs Northbrook's rights under its Policies. Moreover, this provision impermissibly includes liabilities of non-debtors.

{10619930:1}

- Plan § 10.1 provides, "As of the Effective Date, the property of the Debtors' estates shall vest in the Debtors…." Moreover, it provides that "As of the Effective Date, all assets of the Debtors, the GUC Trust, the Asbestos Trust, the Environmental Response Trust, and the Avoidance Action Trust shall be free and clear of all Claims and Encumbrances…" This provision impermissibly impairs Northbrook's rights to the extent it operates to release Debtors from their obligations under the Policies.

- Plan § 8.3 provides, "In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable…" To the extent this section releases Debtors from any pre-assumption defaults under the Policies, this provision is an improper attempt to skirt the requirements of § 365 and the consequences of assumption and appears designed to impair Northbrook's rights to assert coverage defenses and other claims and rights that exist under the Policies.

27. Alternatively, to the extent the Policies are non-executory contracts, Debtors are bound by the terms thereof. Debtors may neither reject nor assume a non-executory contract and they remain legally bound by the terms of such contracts or agreements notwithstanding the filing of bankruptcy. See, e.g., In re Stewart Foods, Inc., 64 F.3d 141, 145 (4th Cir. 1995) (holding that a debtor remains bound by and may not reject or assume obligations under a non-executory contract).

28. For purposes of this Plan objection, the question of whether Northbrook's Policies are executory or non-executory is not dispositive. Regardless of which it is, Debtors may not pick and choose among the benefits and burdens in the Policies. To the extent the Plan does so, the Plan may not be confirmed. Insurance agreements must be assumed *cum onere* - a debtor cannot assume only a portion (*i.e.* the benefits) of a contract but rather must assume the entirety of the contract *(i.e.* the corresponding burdens imposed upon the debtor. Executory contracts must be assumed subject to the cure and adequate assurance requirements of § 365(b)(1) of the Bankruptcy Code. That provision sets forth the specific conditions under which a debtor may

assume an executory contract:

> (b )(1) If there has been a default in an executory contact or unexpired lease of the debtor, the trustee may not assume such contact or lease unless, at the time of assumption of such contact or lease, the trustee-
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default ... ;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting form such default. ...

29. Bankruptcy Code section 365(b)(1) requires, among other things, a debtor to cure existing defaults and to provide adequate assurance of future performance under the contract to be assumed. If an agreement is to be assumed and then assigned, section 365(f)(2) requires the assignee to provide adequate assurance of future performance.

30. Northbrook proposes that the Plan be amended to include language similar to that approved by Your Honor in Chemtura. The Plan should reflect that regardless of whether any insurance policy is an executory contract or not, nothing in the Plan should be construed as an admission by any party that the policy(ies) exist, provide any coverage, or is or is not an executory contract. See In re Chemtura Corp., et al., No. 09-11233 (REG), Nov. 3, 2010, at paragraph 132 of Findings of Fact, Conclusions of Law and Order Confirming The Joint Chapter 11 Plan Of Chemtura Corporation, et al.

### C. The Plan Fails To Include Any Description Of Or Documents Relating To The Asbestos Insurance Assets Trust.

31. The Plan and Plan documents are completely bereft of any Asbestos Insurance Assets Trust documents. There is no such agreement, no description of what or how it will be administered, or who will administer it.

32. The Plan simply states that the terms of the Asbestos Insurance Assets Trust shall be agreed upon by the DIP Lenders and the Debtors. See Plan at Section 1.8.

**D. The Plan Improperly Seeks To Create Or Reserve Jurisdiction In The Bankruptcy Court Over State Law Coverage Disputes.**

33. The Plan impermissibly reserves concurrent jurisdiction in the Bankruptcy Court to decide coverage-related disputes arising under insurance policies and related agreements. Specifically, Section 11.1 provides:

> The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:
>
> (a) To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;
>
> (b) To determine any motion, adversary proceeding,… and other litigated matter pending on or commenced before or after the Confirmation Date, including without limitation, any proceeding with respect to a Cause of Action ...
>
> Notwithstanding anything in this Article XI to the contrary, …(ii) the Bankruptcy Court and/or the District Court shall have concurrent, rather than exclusive, jurisdiction with respect to disputes relating to (a) rights under insurance policies issued to the Debtors that are included in the Asbestos Insurance Assets,…

See Plan at Section 11.1

34. These provisions impermissibly expand the jurisdictional limitations imposed by 28 U.S.C. §§ 157 and 1334 and, therefore, may not be approved. A Bankruptcy Court's jurisdiction is determined by, and limited to, these statutory provisions. Donaldson v. Bernstein, 104 F.3d 547, 552 (3rd Cir. 1997). This Court lacks jurisdiction to enter final orders concerning rights and obligations of the parties in pre-petition insurance policies, as such issues are non-

core matters under 28 U.S.C. § 157(b)(2). See Sullivan v. Maryland Cas. Co. (In re Ramex Int'l, Inc.), 91 B.R. 313, 315 (Bankr. E.D. Pa. 1988) ("[C]auses of action for declaratory judgment under a policy of insurance issued pre-petition to the plaintiff are not a core proceeding"); G-I Holdings, Inc. v. Hartford Accident and Indem. Co. (In re G-I Holdings, Inc.), 278 B.R. 376, 380-81 (Bankr. D. N.J. 2002) (same). See also Northwestern Inst. of Psychiatry, Inc. v. Travelers Indem. Co. (In re Northwestern Inst. of Psychiatry, Inc.), 272 B.R. 104, 109-112 (E.D. Pa. 2001) (holding that insurance coverage disputes implicating the right to jury trial are non-core matters for which a bankruptcy court is not a permissible forum). The Plan may not provide otherwise.

35. The retention should not and cannot, for example, alter or otherwise limit the permissive or mandatory abstention provisions set forth in 28 U.S.C. §1334(c)(1) and (2).

**RESERVATION OF RIGHTS**

36. Northbrook does not waive any, and expressly reserve all, of its rights, defenses, limitations and/or exclusions under an Insurance Policy issued or allegedly issued by Northbrook, applicable law or otherwise. Northbrook further reserves all rights to assert any and all such rights, defenses, limitations and/or exclusions in any procedurally appropriate contested matter and/or adversary proceeding. Nothing contained in this objection shall be deemed to expand any coverage that may otherwise be available under any Insurance Policy issued or allegedly issued by Northbrook.

37. Nothing in this Objection shall be construed as an acknowledgement that any Insurance Policy issued or allegedly issued by Northbrook covers or otherwise applies to any Claim or to any loss or damage on account of any Claim or otherwise, or that such Claims or causes of action are eligible for payment under any Insurance Policy issued or allegedly issued

by Northbrook. Northbrook reserves the right to seek an adjudication that the Debtors have waived or forfeited any available coverage under any Insurance Policy issued or allegedly issued by Northbrook.

39. Northbrook also reserve its rights to amend, modify or supplement this Objection in response to, or as a result of, any discovery connected in connection with any coverage litigation and/or other submission in connection with the Plan or the Chapter 11 cases. Northbrook also reserves the right to adopt any other objections to the Joint Plan filed by any other party in interest.

Dated: February 11, 2011

Respectfully submitted,

WINDELS, MARX, LANE
& MITTENDORF, LLP

By: */s/ Stefano Calogero*
Stefano Calogero
scalogero@windelsmarx.com
One Giralda Farms – Suite 380
Madison, New Jersey 07940
Phone: (973) 966-3205

Counsel for Allstate Insurance Company, as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company