Maureen F. Leary  
Assistant Attorney General  
New York State Department of Law  
The Capitol  
Albany, New York 12224-0341  
(518) 4784-7154  
*Attorneys for the State of New York and the*  
*New York State Department of Environmental Conservation*

Hearing Date: March 3, 2011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

In re

**MOTORS LIQUIDATION COMPANY, et al.,**           Chapter 11

                             Debtors.           Case No. 09-50026 (REG)

                                              **(Joint Administered)**

_____

**STATE OF NEW YORK'S LIMITED OBJECTION TO DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER CONFIRMING LIQUIDATION PLAN AND GUC TRUST**

      1.      The State of New York on behalf of the New York State Department of Environmental Conservation (collectively "New York"), as a Class 3 claimant holding unsecured claims not yet deemed allowed, which are related to environmental costs and liability in the above captioned Chapter 11 cases, submits this limited objection to confirmation of the Chapter 11 plan of liquidation ("Plan"), proposed by the Debtors, Motors Liquidation Company, *et al.* (f/k/a General Motors Corporation). New York's limited objection addresses issues related to (1) insufficient oversight and control of the General Unsecured Creditors Trust ("GUC Trust"); (2) the pre-and post-confirmation roles the proposed GUC Trust Administrator, Wilmington Trust Corporation ("WTC"), and the independence of other Trust professionals; (3) the favorable treatment WTC is to receive under the Plan and GUC Trust, including payment in full of all pre-and post-petition fees; (4) the potential for inequitable treatment among

unsecured creditors, namely those allowed upon the effective date and those allowed post-confirmation and full and immediate distribution to allowed unsecured claimants upon confirmation without holdback; and (6) certain other overly broad and improper provisions in the Plan.

2. New York is both a Class 3 unsecured creditor (impaired) and a Class 4 governmental entity (unimpaired). New York supports the Plan insofar as it seeks approval of Class 4 treatment. New York has limited objections to the Plan as a Class 3 claimant and unsecured creditor, however, as set forth below. New York respectfully requests that the Court condition confirmation based upon correction of the following deficiencies to the Plan and GUC Trust.

**Background**

3. On July 5, 2009, this Court approved the sale of substantially all of the Debtors assets to an entity now known as [New] General Motors Corporation. Expressly excluded from the sale were certain environmentally contaminated properties owned by the Debtors, including properties in New York for which the Debtors is alleged to be liable under State and Federal environmental laws.

4. On October 20, 2010 the United States Department of Justice filed a Notice of Lodging of the Proposed Settlement Decree of the Environmental Response Trust Consent Decree and Settlement Agreement (hereinafter the "ERT") with this Court. The ERT is an agreement among GM/MLC, the United States, and several States, including New York, which transfers to a Trust certain environmentally contaminated MLC-owned properties that were purportedly excluded form the 363 sale to New General Motors, and provides funding to remediate the contamination at these sites.

5.  On or about December 7, 2010, the Debtors filed an Amended Disclosure Statement and Amended Plan. The Plan attached the ERT (Plan, Exhibit C) and identified the State and Federal signatories as Class 4 unimpaired claimants (Property Environmental Claims), whose members are deemed to have accepted the Plan (*see* December 8, 2010 Order Approving Disclosure Statement, § 33; Plan, Article III, p. 26). New York is also a Class 3 claimant and has rights separate and distinct from its position as Class 4 ERT claimant. The Amended Disclosure Statement and Plan also included a GUC Trust Agreement for the benefit of Class 3 unsecured creditors (Plan, Exhibit D). The Plan names Wilmington Trust Company ("WTC") as the GUC Trust Administrator, AP Services LLC as the Trust's operational manager, and FTI Consulting Inc. ("FTI") as the Trust Monitor [Plan § 6.2(e)]. The Plan further provides that the GUC Trust Administrator and Monitor may retain and "reasonably compensate counsel and other professionals without bankruptcy court approval [Plan § 6.2(g)].

6.  The Amended Disclosure Statement and Plan also sets forth provisions for execution of an Avoidance Action Trust Agreement (Plan § 6.5), and names WTC as the Trust Administrator and FTI as the Trust Monitor [Plan, § 6.5 (e)]. The Avoidance Action Trust is similarly for the benefit of unsecured creditors and the United States Treasury.

7.  The Disclosure Statement and Plan estimate the total liability for Class 3 unsecured claims at approximately $36 billion (DS, Exhibit B, Budget).[1] Class 3 unsecured claims are impaired (Plan § III, p. 26).

8.  On December 8, 2010, this Court issued an order approving the amended Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan and set a March 3, 2011

---

[1] The proposed Plan does not append an updated budget.

3

confirmation hearing.

9. On or about November 29, 2009, the State timely filed 21 proofs of claim totaling in excess of $150 million and arising from the Debtors' environmental compliance obligations and liability for costs associated with numerous environmentally contaminated sites located in New York.

### **The GUC Trust Lacks Sufficient Controls and Oversight**

10. Sufficient safeguards are not in place to oversee the GUC Trust's administration, particularly the management of Trust assets and the retention and the payment of the Trust Administrator, Monitor, and professionals. Indeed, the GUC Trust appears to be structured to insulate the Administrator, Monitor, and Trust professionals from oversight by the Court, the United States Trustee, and creditors even though the Trust will be managed and operated by AP Services, which has acted as the Debtor in Possession during these cases.

11. The GUC Trust Administrator has the broad authority to "hold, manage, sell, invest, and distribute the GUC Trust Assets." Beyond the fact that the Administrator does not necessarily need the authority to trade ("sell" or "invest") in Trust Assets because it should only be holding, managing and distributing the assets to unsecured creditors, neither the Plan nor the GUC Trust instrument contain express protections for overseeing such actions and accounting for the assets transferred to WTC's control. The Plan contains no requirement for an independent third-party audit of Trust assets or documentation of equitable treatment among members of Class 3. Neither the Plan nor the GUC Trust Agreement directly address the institutional or other controls that would operate as a check on the Trust Administrator's powers. Such controls are prudent in order to protect the GUC Trust assets and prevent

4

discrimination.[2]

12. The GUC Trust Monitor is not a true monitor at all because it lacks the authority under the GUC Trust's terms to provide meaningful and independent oversight for the GUC Trust assets. The fact that the Plan provides for the Trust Administrator to choose the Monitor is evidence of the absence of the independence necessary to assure the protection of Trust assets.

13. The Court has appointed a fee examiner in this case who has comprehensively reviewed and objected to the fees and expenses of estate professionals that were inconsistent with the United States Trustee's Fee Guidelines and the orders of this Court. The United States Trustee at times has joined in these objections. The fee examiner has objected - or attempted to object - to the fees sought by the entities proposed to operate and monitor the GUC Trust, namely AP Services and FTI. Despite the history of the examiners' objections to fees and expenses by estate professionals during this case and consequent rulings by this Court, disputes related to fees and expenses have continued. There is little reason to believe that the fees and expenses of the GUC Trust professionals will not warrant continued oversight and involvement by a fee examiner or at least by the Court.

14. Accordingly, the confirmation order should require an annual audit of the Trust assets; Administrator or Monitor reporting on equitable treatment to the Court; appointment of a fee examiner to oversee fees and expenses to be paid by the GUC Trust; Bankruptcy Court approval of such fees; compliance with the United States Trustee's Fee Guidelines and prior rulings of the Court; and imposition of appropriate sanctions upon professionals in the event that the fee examiner prevails in any disputes related to GUC Trust fees and expenses.

---

[2] The same controls would be prudent for the Avoidance Action Trust.

5

### WTC's Pre- and Post- Confirmation Roles

15. WTC has played a prominent role during the pendency of these cases as a member of the Unsecured Creditors Committee ("UCC") and as the Indenture Trustee for certain GM bondholders holding one of the largest allowed unsecured claims ($23 billion). Kramer Levin represents the UCC in this case, but also represents or has represented WTC individually in a separate unrelated matter (*see* June 17, 2009 Declaration of Thomas Moers Mayer, ¶ (3)(ii), in Support of Official Committee of Unsecured Creditors' Motion Authorizing Retention of Kramer Levin).

16. WTC's roles as proposed in the Plan include acting as the Trust Administrator for both the GUC Trust [*see* Plan § 6.2(e)] and the Avoidance Action Trust [*see* Plan § 6.5(e)]. The beneficiaries of these Trusts are not only WTC's bondholder constituency, but all other unsecured creditors. WTC currently is acting as Indenture Trustee for the bondholders, and will continue to serve in that role after the effective date. Under the Plan, WTC's post-effective date duties as Indenture Trustees include dealing with the surrender of existing publicly traded securities, receiving payments for Indenture duties, maintaining rights or liens for fees under the Indentures, and retaining the right to assert claims as the Indenture Trustee against Delphi Corporation or its affiliates (Plan §§ 5.10 and 6.7).[3] Thus, WTC's role as Indentured Trustee for the bondholder constituency does not end upon confirmation. The interests of other unsecured creditors that WTC must serve may diverge from the interests of WTC's bondholders.

17. For example, as the GUC Trust Administrator, WTC will be responsible for

---

[3] *See also* Plan § 1.101, defining "Note Claims," as referred to in Section 5.10 and 6.7, to include any claim "arising under or in connection with any Indenture and the respective notes, bonds or debentures issued thereunder…."

6

disallowing or reducing the post-confirmation recovery of unsecured creditors whose claims have not been allowed as of the effective date. This will operate to preserve or increase the recovery of the pre-effective date allowed claims, including the recovery of its own bondholder constituency. As such, the interests of the allowed and not-yet-allowed claimants may conflict. Even though interests are not considered "adverse" merely because it is possible to conceive a set of circumstances under which the interests may clash, *In re Adelphia Communications Corp.,* 336 B.R. 610, 672 (Bankr. S.D.N.Y. 2006), an inquiry into disinterestedness and potential conflicts should still be undertaken.

18.  The Plan lacks any showing of WTC's disinterestedness. Although the provisions of 11 U.S.C. § 327 may not strictly apply here because the appointment of WTC does not *per se* constitute the retention of an estate professional during a case, the requirement for disinterestedness is even more important when the equitable treatment of creditors is at stake. The GUC Trust is for the benefit of all unsecured creditors and the Trust Administrator's role is a critical one with the potential to adversely affect the recovery of creditors whose claims are not allowed on the effective date. WTC's continued performance of duties as Indenture Trustee differentiates this case from those in which a professional no longer represents a creditor whose interest may diverge from other creditors. *See e.g., In re Diva Jewelry Design, Inc.,* 367 B.R. 463 (Bankr. S.D.N.Y. 2007). Thus, prior to confirming the Plan, the Court should require the proposed GUC Trust principals to show disinterestedness and should include in the confirmation order a mechanism to address conflicts of interest and continuing judicial oversight.

19.  WTC's fiduciary obligations under the Plan are not limited to those owed to unsecured creditors. As the Avoidance Action Administrator, WTC will owe fiduciary

7

obligations to both unsecured creditors and the United States Treasury as potential beneficiaries of the Avoidance Action Trust. The Plan also proposes a post-confirmation role for WTC to carry out certain duties of the Debtors after confirmation [Plan § 6.2(f)]. Again, the potential for divergent positions among the beneficiaries of the Trusts makes WTC's various fiduciary roles and obligations foreseeably problematic. Moreover, the lack of separation among its various pre- and post-confirmation roles, when viewed with the requirement that WTC serve so many interests, represents an absence of disinterestedness and a potential conflict of interest.

20. WTC will have the power as Trust Administrator to prosecute and resolve objections to unresolved claims [*see* Plan, Section 6.2(f)]. The pro forma requirement for the GUC Trust Administrator to file reports with the Court "on the status of claims reconciliation and distributions" [*see* Plan § 6.2(f)] is insufficient to address conflicts of interest or to assure equitable treatment among creditors.

21. The language of Section 6.2(f) states that WTC must "act in the best interest of all beneficiaries of the GUC Trust and in furtherance of the purpose of the GUC Trust, and in accordance with the GUC Trust Agreement, and not in its own best interest as a creditor" (emphasis added). Thus, the Plan language recognizes WTC's potential conflict of interest, but fails to provide any remedy for unsecured creditors in the event that the Administrator acts improperly in its own interest or inequitably toward remaining unsecured creditors. It also places unsecured creditors in the unenviable position of having to prove that WTC's has acted in its own best interest. The GUC Trust and its Administrator and Monitor will not operate transparently. Indeed, under the GUC Trust Agreement, all documents exchanged between the Trust Administrator and the Monitor are deemed privileged [Plan, Exhibit D: GUC Trust Agreement, § 11.1(b)], regardless of whether any privilege would otherwise apply. Discerning

8

improper behavior or inequitable treatment could prove to be difficult, if not impossible.

22. New York does not assert that improper behavior by the Trust Administrator will or is even likely to occur. Rather, New York objects to the Plan insofar as it fails to provide the fundamental showing that WTC can act with disinterest in its many post effective date roles.

### WTC's Favorable Treatment Under the Plan and GUC Trust

23. WTC is being treated more favorably under the Plan and GUC Trust than otherwise permitted under the Code's equitable scheme. WTC will be paid in full for its *pre-petition* fees and expenses incurred as Indentured Trustee (*see* Plan § 2.5: "Special provisions Regarding Fees and Expenses of Indenture Trustee;" Plan § 5.2(a)(v), "Payments and Transfers On Effective Date"). WTC's pre-petition fees and expenses are unsecured claims that are not entitled to be paid in full administratively. The Plan provides no legal basis or justification for administrative treatment of WTC's pre-petition fees and expenses.

24. Furthermore, in its role as GUC Trust Administrator, WTC will be paying itself administratively without judicial oversight or opportunity for objection by parties in interest [*see* Plan, Section 5.2(f)]. There is likewise no legal basis for this arrangement. The confirmation order should eliminate the ability for WTC to recover pre-petition fees and expenses administratively.

### Pre- and Post-Confirmation Roles of Other GUC Trust Fiduciaries

25. <u>AP Services.</u> The Plan also provides for the GUC Trust's retention of the existing management of the Debtors, AP Services, to manage the Trust's "day to day operations" [*see* Plan § 6.2(e)]. Because of its roles as the Debtor in Possession, AP Services lacks sufficient independence to serve in a role intended to be for the benefit of unsecured creditors. Moreover, the significant fees and expenses incurred by the estate to fund AP Service's extensive staffing

9

will no doubt continue if it acts as the operational entity for the GUC Trust. The GUC Trust can little afford the cost of AP Services, even in light of a potential funding cap for such costs. The experience AP Services may bring to the case is not outweighed by the potential cost of its services.

26.  Weil Gotshal.  On information and belief, the Debtors' attorneys, Weil Gotshal, continue to express an interest in acting as counsel to the GUC Trust and to WTC as the GUC Trust Administrator.  Like AP Services, Weil is not suited to act in this post-confirmation fiduciary role as essentially counsel to unsecured creditors, albeit on behalf of the Trust fund set up for the benefit of such creditors.  It cannot act on two sides of the proverbial table, one for the benefit of the Debtor and the other for the benefit of creditors.[4]  Moreover, the GUC Trust cannot afford the significant fees and expenses Weil has already charged in this case even with the fee cap.  The retention of Weil is not in the best interest of Class 3 unsecured creditors as beneficiaries of the GUC Trust.

27.  FTI.  The Plan has identified the GUC Trust Monitor as FTI Consulting, Inc. ("FTI"), whose role is defined as overseeing the "activities" of the GUC Trust and the distribution of the Trust assets to unsecured creditors (Plan § 6.2(g); Exhibit B, GUC Trust § 11.1).  FTI as a retained Creditors Committee professional in this case lacks sufficient independence to act as the GUC Trust Monitor.

28.  The confirmation order should provide for the selection of an independent Monitor, and an operational entity and counsel unrelated to the Debtors.  The order also should require the Monitor to report to the Court and the United States Trustee at least biannually on

---

[4] New York recognizes that Section 327(e) allows a trustee, with the Court's approval, to retain an attorney who has represented the debtor, but the post-effective date GUC Trust is not the same as situations governed by 327, whereby professionals are retained by a trustee during a case and the protections of judicial oversight are in place.

10

administration of the Trust, the distribution of Trust assets, the value of the recovery of pre-and post-effective date allowed Class 3 claimants, and fulfillment of the requirement of equitable treatment of all unsecured creditors. The Monitor's role should be expanded to include auditing of the GUC Trust.

### The GUC Trust and Equitable Treatment of Class 3 Claimants

29. The GUC Trust governs the recovery by Class 3 unsecured creditors, including those holding claims not deemed allowed on the effective date. As of the date of this filing, none of New York's claims have been deemed allowed despite efforts for more than a year to resolve such claims with the Debtors. There are insufficient protections in the Plan and the GUC Trust to assure that New York's claims, and those of other unsecured claims, will be treated equitably. There is no mechanism in the Plan or GUC Trust to assure that the Class 3 creditors whose claims are not allowed upon the effective date will receive the same *value* as claimants allowed on the effective date. This is particularly problematic in light of the immediate and full payout to allowed unsecured claimants, including WTC's bondholder constituency, upon the effective date.[5]

30. Despite the Plan's statement that distribution will be the same as if allowed on the effective date (*see* Plan § 7.4), there is no mechanism in place to guarantee this result. For example, the payment and liquidation of GM common stock on the effective date by allowed Class 3 claimants has the potential to drive down the value of the stock based on the simple principle of supply and demand. As the many distributed shares of GM stock are traded in the

---

[5] Moreover, if the GUC Trust assets prove to be insufficient to address all claims, only MLC is empowered to request that the Court effectuate a provision in the 363 Sale Order requiring New GM to issue "Adjustment Shares" up to an additional 2% of its common stock. The GUC Trust Administrator apparently does not have such power and will not be able to remedy the problem of insufficient funds to treat all creditors equitably.

11

market, there is a potential for the value of those shares to be worth less after the effective date. The GUC Trust cannot control that result. The confirmation order can provide, however, that unsecured creditors, whose claims are allowed after the effective date, will receive the same "value," rather than the same "distribution," as the creditors allowed on the effective date.

31. The confirmation order also should provide a 25% holdback for claimants receiving an initial distribution on the effective date, with the remainder paid only upon final allowance or disallowance of all Class 3 claims. The holdback will protect those unsecured creditors whose claims are deemed allowed after the effective date and assure that the Code's mandatory requirement of equitable treatment among unsecured creditors is met. This 25% holdback will also operate as an incentive to the GUC Trust Administrator to timely resolve the remaining outstanding unsecured claims not allowed upon the effective date.

**Term of Injunctions and Stays**

32. The Plan provides for a continuation of the injunctions and stays in effect during the case (Plan § 10.4). In a June 1, 2009 "Order Pursuant to 11 U.S.C. § 105 Enforcing Protections of 11 U.S.C. §§ 362, 365(e)1) and 525, this Court stayed all governmental entities from "commencing or continuing any judicial, administrative, or other action or proceeding against the Debtors, including the issuance or employment of process, that was or could have been initiated before the Debtors chapter 11 cases commenced…." This Order effectively eliminated the exception from the automatic stay provided to governmental entities enforcing police and regulatory authority as set forth in 11 U.S.C. § 362(b)(4). This exception from the automatic stay for governmental entities is well-recognized in this Circuit. *See City of New York v. Exxon,* 932 F.2d 1020, 1032 (2d Cir. 1991); *State of New York v. Mirant New York, Inc.*, 300 B.R. 174, (S.D.N.Y. 2003). The "Special Provisions for Governmental Units" (Plan

12

§ 10.8), when read with the Plan's Release and Exculpation provisions (Plan §§ 12.5 and 12.6), fails to clarify the ability for governmental entities to act within their police and regulatory authority after the effective date. Indeed, the Plan's continuation of the injunctions and stays may be read to significantly limit the ability for the government to act for the protection of human health and the environment.

33. The stay set forth in this Court's June 1, 2009 Order has been in effect during the 21 months these cases have been pending. The indefinite continuation of the stay after the effective date is contrary to law. The confirmation order should make clear that the stay against governmental entities set forth in the June 1, 2009 Order is no longer in effect.

### Overly Broad Third Party Non-Debtor Releases and Exculpation

34. The Plan contains broad releases and exculpation of non-debtor third parties who are not necessarily entitled to such relief (*see* Plan §§ 12.5 and 12.6). Besides the fact that these provisions are essentially an improper discharge of the Debtors, it is equally improper for the Plan to provide this relief to non-debtors. *SEC v Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 293 (2d Cir. 1992) (non-debtor releases are proper only in "rare cases"). The factors necessary for releasing non-debtors are not present here. *See e.g., In re DowCorning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (specifying the seven factors that must be present if a release of non-debtor liabilities is to be appropriate). One of the required factors is that the Court must "make a record of specific factual findings" regarding the non-debtor liabilities. The Plan does not satisfy that requirement here because there is no information before the Court on exactly what liabilities of the non-debtors are being released now and in the future. Accordingly, the confirmation order should limit or eliminate the Plan's release and exculpation provisions.

13

**Bankruptcy Court's Exclusive Jurisdiction Post-Confirmation**

35. The Plan provides that the Bankruptcy Court shall have "exclusive" jurisdiction post-confirmation (Plan, § 11.1). This provision fails to account for the jurisdiction given to other State and federal courts, particularly with respect to environmental matters that may arise after the Plan's effective date. Under the Code, the Bankruptcy Court retains broad jurisdiction over certain matters related to the administration of the estate and the implementation and consummation of the Plan. The Bankruptcy Court's post-confirmation jurisdiction is not "exclusive," however. *See In re Mystic Tank Lines Corp.,* 544 F.3d 524, (3d Cir. 2008) (Bankruptcy Court did not have exclusive jurisdiction over State's claim for cleanup costs). The confirmation order should delete the term "exclusive" in relation to the Court's retention of jurisdiction.

**Administrative Expenses**

36. The failure to provide in the Plan for the payment in full of the Debtors' administrative obligations, including the obligation to pay post petition environmental compliance obligations at contaminated sites in New York also precludes confirmation of the Plan. *See* 11 U.S.C. § 1129(a)(9)(A); *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (on the effective date of a plan, all administrative expenses must be paid in full). The confirmation order should expressly include that requirement.

**Conclusion**

37.	We believe that the foregoing issues are of great importance to the States and to other unsecured creditors whose claims are not deemed allowed upon confirmation. New York respectfully requests that the Court condition confirmation of the Plan based upon the foregoing and grant such other relief as this Court deems just and proper.

Dated: February 11, 2011
Albany, New York

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:	_____
MAUREEN F. LEARY
Assistant Attorney General
New York State Office of the
 Attorney General
The Capitol
Albany, New York  12224
Telephone: 518-474-7154
Maureen.Leary@ag.ny.gov

# **CERTIFICATE OF SERVICE**

I, Maureen F. Leary, hereby certify that on the 11th day of February, 2011 I served a copy of the State of New York's Limited Objection to Debtors' Motion for Entry of an Order Confirming Liquidation Plan upon each of the parties by electronic and/or first class mail, postage prepaid:

Harvey R. Miller, Esquire
Stephen Karotkin, Esquire
Joseph H. Smolinsky, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
harvey.miller@weil.com
stephen.karotkin@weil.com
Joseph.Smolinsky@weil.com
*Attorneys for Debtors*

David R. Berz, Esquire
Thomas Goslin, Esquire
Weil Gotshal & Manges, LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
david.berz@weil.com
thomas.goslin@weil.com
*Attorneys for General Motors*

Thomas Morrow, Esquire
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, Michigan  48009

Ted Stenger, Executive Vice President
c/o Motors Liquidation Company
General Motors LLC
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243
tstenger@alixpartners.com

Lawrence S. Buonomo, Esquire
General Motors LLC
400 Renaissance Center
Detroit, Michigan  48265

John J. Rapisardi, Esquire
Cadwalader Wisckersham & Taft LLP
One World Financial Center
New York, New York  10281
owens.ridges@cwt.com
*Attorney for the United States Department of Treasury*

Michael O. Hill, Esquire
Hill & Kehne, LLC
2300 Wisconsin Avenue, NW
Suite 300
Washington, DC  20007
mhill@hillkehne.com
*Attorney for the Environmental Response Trust Administrative Trustee*

Joseph Samarias, Esquire
United States Department of Treasury
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C.  20220
Joseph.Samarias@do.treas.gov

Michael J. Edelman, Esquire
Michael L. Schein, Esquire
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, NY  10019
mj_edelman@vedderprice.com
m_schein@vedderprice.com
*Attorneys for Export Development Canada*

16

Elliott P. Laws, Esquire
Crowell & Morning LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
ELaws@crowell.com
*For the Environmental Response Trust Administrative Trustee*

Thomas Moers Mayer, Esquire
Robert Schmidt, Esquire
Lauren Macksound, Esquire
Jennifer Sharret, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of The Americas
New York, NY 10036
thomasmayer@kramerlevin.com
rschmidt@lkramerlevin.com
lmacksound@kramerlevin.com
jsharret@kramerlevin.com
*Attorneys for Official Committee of Unsecured Creditors*

Tracy Hope Davis, Esquire
Andrew D. Velez-Rivera, Esquire
Brian Shoichi Masumoto, Esquire
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
andy.velez-rivera@usdoj.gov
Brian.Masumoto@usdoj.gov
*Attorneys for the United States*

David S. Jones, Esquire
Natalie Kuehler, Esquire
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chamber Street, 3rd Floor
New York, NY 10007
David.Jones6@usdoj.gov
Natalie.Kuehler@usdoj.gov
*Attorneys for the United States*

Elihu Inselbuch, Esquire
Rita C. Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com
rct@capdale.com
*Attorneys for Asbestos Claimants' Comm.*

Trevor W. Swett III, Esquire
Kevin C. Maclay, Esquire
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
tws@capdale.com
kcm@capdale.com
*Attorneys for Asbestos Claimants' Committee*

Sander L. Esserman, Esquire
Robert T. Brousseau, Esquire
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
esserman@sbep-law.com
mailto:brousseau@sbep-law.com
*Attorneys for Future Claimants' Representative*

Alan Tenenbaum, Esquire
Patrick M. Casey, Esquire
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
patrick.casey@usdoj.gov
alan.tenembaum@usdoj.gov
*Attorneys for the United States*

John J. Privitera, Esquire
Jacob F. Lamme, Esquire
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207-2503
*Attorneys for the Saint Regis Mohawk Tribe*
privitera@mltw.com

17

Margarita Padilla, Esquire
Deputy Attorney General
California Office of the Attorney General
P.O. Box 70550
1515 Clay Street
Oakland, CA  94615-0550
Margarita.Padilla@doj.ca.gov

Robert Kuehl, Esquire
Deputy Attorney General
Delaware Office of the Attorney General
391 Lukens Drive
New Castle, DE  19720
Robert.Kuehl@state.de.us

James L. Morgan, Esquire
State of Illinois Environmental Control
500 South Second
Springfield, IL  62706
jmorgan@atg.state.il.us

Timothy K. Junk, Esq.
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204
Tim.Junk@atg.in.gov

Bruce H. Palin, Esquire
Indiana Dept. of Environmental Mgmt.
MC 50-01, ICGB 1301
Indianapolis, IN  46204

Roderick L. Bremby, Esquire
Secretary
Kansas Dept. of Health and Environment
Curtis State Office Building
1000 SW Jackson
Topeka, KS  66612

Beau James Brock, Assistant Secretary
Louisiana Dept. of Environmental Quality
P.O. Box 4312
Baton Rouge, LA  70821-4312

Carol Iancu, Esquire
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
carol.iancu@state.ma.us

Celeste R. Gill, Esquire
Assistant Attorney. General
Env., Natural Resources, and Agriculture
State of Michigan Attorney General's Office
P.O. Box 30755
Lansing, MI 48909
gillc1@michigan.gov

John McManus, Esquire
Chief Counsel
Attorney General for the State of Missouri
Agriculture and Environmental Division
P.O. Box 899
Jefferson City, MO 65102
jack.mcmanus@ago.mo.gov

Leanne Tippett Mosby, Director
Division of Environmental Quality
Missouri Dept. of Natural Resources
P.O. Box 176
Jefferson City, MO 65102

John Dickinson, Esquire
Rachel Lehr, Esquire
Richard F. Engel, Esquire
Deputy Attorney General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market St, CN 093
Trenton, NJ 08625
rachel.lehr@law.dol.lps.state.nj.us
John.Dickinson@dol.lps.state.nj.us
Richard.Engel@dol.lps.state.nj.us

Michelle T. Sutter, Esquire
Principal Attorney
Ohio Attorney General Richard Cordray
Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215
michelle.sutter@ohioattorneygeneral.gov

Susan Shinkman, Esquire
Chief Counsel
Office of Chief Counsel
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101-2301

Kerri L. Nicholas, Esquire
Virginia Office of the Attorney General
900 East Main Street
Richmond, VA  23219
knicholas@oag.state.va.us

P. Kathleen Strasbaugh, Esquire
Richard Braun, Esquire
Wisconsin Attorney General's Office
Bureau of Legal Services
Wisconsin Department of Natural Resources
P.O. Box 7921
101 S. Webster Street, LS/8
Madison, Wisconsin 53707-7981
Kathleen.Strasbaugh@Wisconsin.gov
braunri@doj.state.wi.us

_____

Maureen F. Leary