Richard M. Cieri, P.C.
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

   - and -

Mark E. McKane (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500

Counsel to New United Motor Manufacturing, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., (f/k/a General Motors Corporation, et al.) | Case No. 09-50026 (REG) |
| Debtors. | Jointly Administered |

**NEW UNITED MOTOR MANUFACTURING, INC'S OBJECTION TO THE**
**DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

New United Motor Manufacturing, Inc. ("**NUMMI**") files this objection (this "**Objection**"), to the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. 8015] (the "**Plan**")[1] filed by the above-captioned debtors (collectively, the "**Debtors**") in these chapter 11 cases. In support of this Objection, NUMMI respectfully states as follows.[2]

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[2]   Prior to the expiration of the February 11, 2011 Plan objection deadline, the Debtors extended the time within which NUMMI could file its Plan objection to before the end of the day on February 15, 2011.

**PRELIMINARY STATEMENT**

The Plan and its exhibits, as currently drafted, improperly foreclose NUMMI's ability to continue to pursue its claims against the Debtors and impair NUMMI's right to receive the full amount of any recovery to which it is entitled. Unless the Plan is amended to remove these impediments to NUMMI's (and likely other creditors') claims and recoveries, it should not be confirmed.

The Plan suffers from four material defects:

*First,* the existing Plan through the GUC Trust structure it establishes leaves NUMMI and certain general unsecured creditors exposed to the risk of receiving reduced distributions compared with other general unsecured creditors. This unequal treatment of general unsecured creditors violates a fundamental principle underpinning the Bankruptcy Code that similarly situated creditors be treated similarly. To avoid this unfair result, NUMMI requests that the Debtors establish a reserve sufficient to cover the full $500 million of NUMMI's asserted claims.

*Second,* the Plan's ambiguously drafted release and injunction provisions appear to improperly and permanently stop NUMMI's pending adversary proceeding against the Debtors.

*Third,* in addition to unjustifiably discontinuing NUMMI's adversary proceeding, the Plan grants the Debtors other overly broad powers, unsupported by law, including, inexplicably, the authority for the Debtors to unilaterally dissolve NUMMI, threatening its continued existence, and an unfettered right to setoff the Debtors' claims (whether valid or not) against allowed creditor claims.

*Lastly,* the Debtors have not proven the necessary requirement to plan confirmation that all administrative claims (including NUMMI's administrative claims) regardless of when they become allowed will be paid in full in cash.

2

Each of these Plan defects unjustifiably curtail NUMMI's and other creditors' rights. Unless the Debtors correct these defects, NUMMI submits that the Plan should not be confirmed.

## BACKGROUND

### *Dispute Between NUMMI and MLC*

On November 24, 2009, NUMMI,[3] a manufacturing joint venture between Motors Liquidation Company ("**MLC**") and Toyota Motor Corporation, filed Proof of Claim No. 67357 in the amount of $500 million (the "**NUMMI Claim**").  The NUMMI Claim seeks compensatory damages for substantial losses suffered by NUMMI due to MLC's decision to withdraw from and discontinue the NUMMI joint venture and refusal to satisfy its contractual share of the costs of NUMMI's wind-down, in violation of MLC's obligations.

On April 2, 2010 the Debtors filed the *Debtors' Objection to Proof of Claim No. 67357 Filed by New United Motor Manufacturing, Inc.* [Docket No. 5404] (the "**MLC Objection**"), seeking to have the NUMMI Claim disallowed.  Subsequently, on May 24, 2010, NUMMI contested the Debtors' objection by filing a response [Docket No. 5854] (the "**NUMMI Response**").  The Debtors contested the NUMMI response in a reply filed on November 4, 2010 [Docket No. 7655] (the "**MLC Reply**").

On November 9, 2010, the Court held a hearing regarding the NUMMI Claim and related briefing and proposed that the Debtors and NUMMI treat the claims raised in the NUMMI Claim as plenary litigation subject to Bankruptcy Rule 9014 and Rules 8 and 12 of the Federal Rules of Civil Procedure.  The parties subsequently entered into a stipulation which the Court approved on November 30, 2010 [Docket No. 7941] (the "**Scheduling Stipluation**").  Pursuant to the

---

[3]   For a more detailed description of NUMMI's formation and corporate history, see the *Declaration of Mitsunori Tsuzuki in Support of Initial Response to the Debtors' Objection to Proof of Claim 67357 Filed by New United Motor Manufacturing, Inc.* [Docket No. 5856] (the "**Tsuzuki Declaration**").

3

Scheduling Stipulation, NUMMI filed a complaint (the "**Complaint**") commencing an adversary proceeding against MLC that has been docketed as Adversary Case No. 10-05016. See New United Motors Manufacturing, Inc. v. Motors Liquidation Co., Case No. 09-50026, Adv. Case No. 10-05016 (REG) (Bankr. S.D.N.Y. Nov. 24, 2010) [Docket No. 1].  A hearing on MLC's motion to dismiss the Complaint was held on February 8, 2011.  Additionally, prior to the February 14, 2011 bar date, NUMMI filed an administrative expense proof of claim to preserve the claims asserted against the Debtors by NUMMI in the Complaint that may relate to or arise from events occurring subsequent to the Debtors' commencing these chapter 11 cases and, therefore, may be entitled to administrative claim treatment.

### *NUMMI's Objections to the MLC Plan*

On December 7, 2010, the Debtors filed the Plan.  The Plan provides for creation of a trust (the "**GUC Trust**") for administration of distributions to holders of general unsecured claims (the "**GUC Claims**").[4]  The GUC Trust will be funded, in part, by assets otherwise available for distribution to holders of allowed GUC Claims, and will be administered by a trust administrator (the "**GUC Trust Administrator**") monitored in certain respects by a trust monitor (the "**GUC Trust Monitor**").

The agreement governing administration of the GUC Trust (the "**GUC Trust Agreement**") establishes a mechanism to resolve disputed GUC Claims and make distributions to holders of such claims as their claims become allowed subsequent to the effective date of the Plan (the "**Effective Date**").  However, the GUC Trust Agreement provides no indication of whether the assets held in the GUC Trust will suffice to satisfy all GUC Claims (including the

---

[4] NUMMI believes that, to the extent the NUMMI Claim is determined to be an Allowed Claim (as defined in the Plan), many of the claims set forth in the NUMMI Claim may constitute GUC Claims.

4

NUMMI Claim) as such claims become allowed and, in fact, contemplates that many holders of GUC Claims may receive no distribution at all.

The Plan also contains an unclear injunction and release that may be read to bar NUMMI's further prosecution of its adversary proceeding and, further, purports to give MLC expansive authority to take actions that are inappropriate for a chapter 11 plan, including, the unilateral right to dissolve NUMMI. Additionally, the Debtors have failed to show that they will be able to pay all allowed administrative claims (regardless of when allowed) in full in cash, as required under section 1129(a)(9) of the Bankruptcy Code.

Accordingly, NUMMI respectfully submits that the Plan cannot be confirmed and requests that the Court deny the Debtors' request for entry of an order confirming the Plan, unless the Debtors amend the Plan to address these issues.

## ARGUMENT

### I.    The Plan Would Improperly Curtail Distributions to Holders of GUC Claims.

The Plan and its attendant exhibits improperly divert value from holders of GUC Claims. In particular, the Plan and GUC Trust Agreement (attached as Exhibit D to the Plan) are unclear on how much will be reserved for holders of disputed GUC Claims and whether this amount will suffice to provide holders of GUC Claims their respective *pro rata* share of the Class 3 GUC Claims distribution. Failure to ensure satisfaction in full of all allowed GUC Claims would violate Bankruptcy Code requirements to treat all claims in a single class the same.

The GUC Trust Agreement and the Plan contemplate the following distribution mechanisms:

- *Establishment of GUC Trust.* Upon the Effective Date, assets (the "**GUC Trust Assets**") consisting of $57 million in cash for administrative purposes plus the New GM Securities (as defined in the Plan) received at consummation of the 363 Transaction (as defined in the Plan) will be transferred to the GUC Trust. See Plan Arts. 1.85 & 6.2(c).

5

- *Initial Distribution on Effective Date.* The Plan provides for an initial distribution (to take place on the Effective Date) to holders of GUC Claims whose claims were allowed as of the date of confirmation of the Plan. See Plan Art. 4.3(a).

- *Pro Rata Distributions.* Each distribution will consist of a holder's "pro rata share" (defined as allowed amount of claim over sum of all allowed and disputed claims in a class) of New GM Securities (or proceeds thereof) and GUC Trust Units (i.e., beneficial interests in the GUC Trust). See id.

- *Subsequent Distributions for Disputed Claims.* Additional distributions are to be made quarterly to holders of disputed GUC Claims whose claims are later allowed. See id. Any such distributions will be made "in accordance with the terms of the GUC Trust and the GUC Trust Agreement." Id.

Critically, neither the Plan nor the GUC Trust Agreement sets forth how much will be distributed on the Effective Date and how much will remain. See Plan Art. 1.85. Moreover, although the GUC Trust Agreement requires the GUC Trust Administrator, "to the extent practicable," to retain GUC Trust Assets sufficient to satisfy all disputed GUC Claims at the "maximum amount,"[5] the GUC Trust agreement also contemplates that not all disputed claims will be satisfied full, and that unsatisfied claims will be discharged. See GUC Trust Agreement, §§ 5.3(a) & (b).

Specifically, section 5.3(b) of the GUC Trust Agreement provides that to the extent any outstanding claims cannot be satisfied (due to insufficient GUC Trust Assets) as of any quarterly distribution date, the GUC Trust will distribute all GUC Trust Assets *pro rata* to the holders of claims whose claims were resolved in the prior calendar quarter. See id. § 5.3(b).

In addition, section 5.3(b) provides that unsatisfied portions of claims, together with all other disputed claims will be discharged and holders forever barred from asserting them against

---

[5] As set forth in the GUC Trust Agreement, "maximum amount" is defined to mean, to the extent no amount is agreed to by the Debtors or GUC Trust Administrator (as applicable) and the holder of a particular disputed claim, the liquidated amount set forth in the proof of claim, or, if such claim is unliquidated, an amount estimated by MLC or the GUC Trust Administrator (as applicable). See GUC Trust Agreement § 1.1(jj).

the GUC Trust. See id. Specifically, section 5.3(b) provides that following the distribution of assets remaining in the GUC Trust:

> any remaining unsatisfied portion of Resolved Allowed General Unsecured Claims, together with all remaining Disputed General Unsecured Claims and other Claims (including, without limitation, the Asbestos Trust Claim, the Term Loan Avoidance Action Claims and the Other Avoidance Action Claims) shall be discharged and forever barred from assertion against the GUC Trust.

GUC Trust Agreement § 5.3(b).

This means that all claims still disputed at any time where GUC Trust Assets are insufficient to satisfy allowed GUC Claims would receive no distribution whatsoever, a clear violation of Bankruptcy Code requirements to "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). To avoid this result and ensure that NUMMI receives a Plan distribution for the full amount of its claims when ultimately allowed, NUMMI requests that the Debtors amend the Plan to establish a reserve for the full $500 million of NUMMI's asserted claims.[6]

## II. The Plan's Release and Injunctive Language Must Be Clarified to Not Bar NUMMI's Further Prosecution of Its Adversary Proceeding.

The Plan provides for an ambiguous injunction against outstanding claims. The Plan's release language likewise could be read to effectuate a release of claims where one was not intended or provided. Absent clarification that these provisions do not bar NUMMI's further

---

[6] NUMMI understands that, on February 11, 2011, the Debtors filed a motion (the "**Reserve Motion**") that, among other things, purports to establish a reserve of $500 million on account of the NUMMI Claim. See Docket No. 9213, Exh. G. To the extent this $500 million reserve is actually established prior to the hearing to confirm the Plan, NUMMI submits that its Plan objection regarding the lack of sufficient reserve for the NUMMI Claim may be addressed. NUMMI continues to review the Reserve Motion and intends to discuss its impact on the NUMMI Claim with the Debtors' counsel.

Nothing in this Objection or otherwise should be construed to waive or limit in any way NUMMI's right to object to the Reserve Motion on any grounds.

K&E 18403343.3

prosecution of its adversary proceeding against MLC, NUMMI submits that the Plan cannot be confirmed.

The injunction set forth in Article 10.6 of the Plan appears to bar further prosecution of NUMMI's adversary proceeding against MLC. In particular, the injunction enjoins all persons from continuing actions "on account of *or respecting*" any cause of action of the Debtors for which the Debtors, the GUC Trust Administrator or the Avoidance Action Trust Administrator retains sole and exclusive authority to pursue. See Plan Art. 10.6 (emphasis added). Moreover, the Plan's injunction purports to bar "any actions" to interfere with implementation or consummation of the Plan. See Plan Art. 10.7. Finally, the Plan's release provisions provide for the Debtors to release all directors and officers, all advisors, and all members of the committees from, *inter alia*, all causes of action held by, assertable on behalf of or derivative from the debtors or related to the Debtors or Chapter 11 Cases or negotiations regarding the Plan. See Plan Art. 12.5.

The Debtors have asserted defenses in NUMMI's pending adversary proceeding and may choose to assert counterclaims against NUMMI. Such defenses and counterclaims clearly are "causes of action" that the Debtors or GUC Trust Administrator have the exclusive authority to pursue and NUMMI's claims against the Debtors may be an action "respecting" such causes of action of the Debtors. Cf. Plan Art. 10.6. In addition, while the purpose of NUMMI's adversary proceeding is not to "interfere with implementation or consummation of the Plan," either the Debtors or the GUC Trust Administrator inevitably will devote time and resources to defending against the NUMMI Claim, which the Debtors may later argue "interferes" with Plan implementation. Cf. Plan Art. 10.7.

8

  Accordingly, NUMMI respectfully requests that the Debtors amend the Plan to make clear that nothing in Articles 10.6, 10.7 or 12.5 of the Plan will hinder, delay, impeded or prohibit NUMMI's prosecution of its adversary proceeding against the Debtors.

**III. The Plan Purports to Grant the Debtors Expansive Authority Not Appropriate for a Chapter 11 Plan.**

  Through yet another set of ambiguously drafted Plan provisions, the Debtors attempt to grant themselves and the GUC Trust Administrator authority to impair the rights of third parties without supervision by or approval of the Court or other competent authority.

  *First*, Article 6.8 of the Plan provides the Debtors authority to dissolve all direct or indirect subsidiaries, which, by its terms, would include NUMMI. Specifically, Article 6.8 provides:

> ***Equity Interests in MLC Subsidiaries Held by the Debtors.*** On the Effective Date, at the option of the Debtors, each respective Equity Interest in a direct or indirect subsidiary of MLC shall be unaffected by the Plan, in which case the Debtor holding such Equity Interests shall continue to hold such Equity Interests *and shall cause any such subsidiaries to be dissolved* prior to December 15, 2011. An amount equal to any net proceeds realized from such dissolutions shall be distributed to the DIP Lenders on account of amounts outstanding.

Plan Art 6.8 (emphasis added).

  NUMMI submits that the Debtors do not have authority to dissolve NUMMI except in accordance with NUMMI's governing documents.

  *Second*, Article 5.7 of the Plan gives the Debtors and the GUC Trust Administrator nearly unlimited authority to set off claims without Court or other judicial approval of such set off and without evaluation of the validity of the claims to be set off. In particular, Article 5.7 provides:

> ***Setoffs.*** The Debtors and/or the GUC Trust Administrator . . . as applicable, may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of

9

such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors and/or the GUC Trust Administrator, . . . as applicable, of any such claim the Debtors may have against the holder of such Claim. Nothing in the Plan shall limit or affect any right of the United States to offset (subject to obtaining Bankruptcy Court approval to the extent required) any obligation owed by the United States to the Debtors against any obligation owed by the Debtors to the United States.

Plan Art. 5.7.

Article 5.7 is an impermissible overreach that would allow the Debtors to setoff their claims (even if not valid) against legitimate, allowed creditor claims, thereby unjustifiably impairing creditor recoveries.

*Lastly*, the Plan contemplates that the GUC Trust Administrator can settle any and all claims without Court approval and with only minimal approval by the GUC Trust Monitor. Article 6.2(g) of the Plan states that "the GUC Trust Administrator shall obtain the approval of the GUC Trust Monitor with respect to settlements of Disputed General Unsecured Claims *above a certain threshold*." Plan Art. 6.2(g) (emphasis added). The Plan neither requires Court approval of any settlements nor does it specify the settlement threshold above which the GUC Trust Administrator must seek approval from the GUC Trust Monitor. Absent additional and better defined oversight of settlements reached by the GUC Trust Administrator is required to ensure that GUC Trust Assets are not unjustifiably paid out as part of overly high settlement amounts to the detriment of holders of remaining disputed GUC Claims.

NUMMI believes that the dissolution authority, setoff power and settlement authority the Debtors grant themselves and the GUC Trust Administrator in the Plan are impermissible. These provisions violate existing prepetition agreements (*e.g.*, NUMMI's governing documents), enable the Debtors to evaluate the validity of their own setoff claims and threaten to divert assets available to satisfy disputed GUC Claims that later become allowed. For these reasons, NUMMI submits that the Plan cannot be confirmed.

**IV.    The Debtors Have Not Proven that Any NUMMI Administrative Claim When Allowed Will Be Paid in Full in Cash.**

The Plan fails to provide assurance that administrative claims currently in dispute, such as NUMMI's, will be satisfied in full in cash subsequent to the Plan becoming effective.[7] This violates fundamental Bankruptcy Code requirements for plan confirmation. Section 1129(a)(9) of the Bankruptcy Code provides that a court may not confirm a plan unless

> the plan provides that with with respect to [administrative claims], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9).

The Debtors have not proven that all administrative claims (including NUMMI's administrative claims) regardless of when they become allowed will be satisfied in full in cash as required by section 1129(a)(9) of the Bankruptcy Code. Rather, to date, the Debtors have improperly sought to include NUMMI's administrative claims in their proposed $420 million capped unliquidated GUC Claim reserve. See Docket No. 9212, Exh. G.

NUMMI intends to attempt to discuss its administrative claims with the Debtors in good faith, and is hopeful that it may reach consensual resolution with the Debtors regarding NUMMI's administrative claims in advance of the confirmation hearing.

## CONCLUSION

Wherefore, for the foregoing reasons, NUMMI respectfully requests that the Court deny confirmation of the Plan and grant such other relief as is just and proper.

---

[7] NUMMI has granted the Debtors until five business days before the Plan confirmation hearing to object to NUMMI's filed administrative expense proof of claim. To the extent the Debtors do object to NUMMI's administrative claims, NUMMI intends to respond to such objection and assert the ultimate validity of its claims.

New York, New York
Dated: February 15, 2011

*/s/ Ray C. Schrock*
Richard M. Cieri, P.C.
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:   (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Mark E. McKane (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, California 94104
Telephone:   (415) 439-1400
Facsimile:     (415) 439-1500

Counsel to NUMMI

K&E 18403343.3