**Hearing Date: March 3, 2011 at 9:45 am**
**Objection Deadline: February 16, 2011 at 5:00 p.m. (by agreement)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Daniel H. Golden
Philip C. Dublin
Natalie E. Levine

*Counsel for Green Hunt Wedlake, Inc.,*
*Trustee of General Motors Nova Scotia Finance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------------- | x | |
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| ---------------------------------------------------------------- | x | |

**OBJECTION OF GREEN HUNT WEDLAKE, INC.,**
**TRUSTEE OF GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY,**
**TO CONFIRMATION OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT..................................................................................................1

OBJECTION...........................................................................................................................2

    A.    The Proposed Reserve Procedures Demonstrate that the Plan Was Not
Proposed in Good Faith ..............................................................................................2

        (i)    The Plan Should Provide for Distributions to the Nova Scotia
Trustee..............................................................................................................3

        (ii)    The Plan Should Provide for a Segregated Reserve for the Benefit
of the Nova Scotia Trustee and the Nova Scotia Noteholders .....................5

        (iii)    The Plan Must Provide a Mechanism for Disputed Claims to Share
in Additional Assets that Become Available to the GUC Trust ...................6

    B.    The Plan Contains Vague Treatment of Class 3 General Unsecured Claims...........7

    C.    The Plan Includes Provisions Forbidden by Law .....................................................8

        (i)    The Plan Requires the Court to Act in Excess of Its Jurisdiction ...............8

        (ii)    The Setoff Provision May Violate Bankruptcy Code Section 502(d)..........9

        (iii)    The Plan Includes Inappropriate Exculpation Provisions..........................10

CONCLUSION.....................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

C ASES

*In re AbitibiBowater Inc.*,
Case No. 09-11296 (Bankr. D. Del. Oct. 6, 2010), ECF No. 3539 ...........................................4

*In re Adelphia Communications Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007)...................................................................................10

*In re Chemtura Corp.*,
No. 09-11233(Bankr. S.D.N.Y.  Oct. 29, 2010), ECF No. 4387 ..............................................5

*In re Chemtura Corp*,
No. 09-11233(Bankr. S.D.N.Y. November 5, 2010), ECF No. 4427 .....................................10

*In re Dana Corp.*,
No. 06-10354 (Bankr. S.D.N.Y. Oct. 23, 2007), ECF No. 6671 ..............................................4

*In re Jensen,*
No. 09-14830, slip. op., 2010 WL 424693, at *2 (Bankr. S.D.N.Y. Feb. 3, 2010) ..................9

*In re Jorgensen*,
66 B.R. 104 (B.A.P. 9th Cir. 1986) ........................................................................................2

*In re Leslie Fay Cos., Inc.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997)....................................................................................2

*In re Lids Corp.,*
260 B.R. 680 (Bankr. D. Del. 2001) .......................................................................................9

*In re Loral Space & Commc'ns.*,
No. 03-41710 (Bankr. S.D.N.Y. June 3, 2005), ECF No. 2075 ...............................................4

*In re New York City Shoes*,
*Inc.* 78 B.R. 426 (Bankr. E.D. Pa. 1987) ...............................................................................9

*In re Quigley Co. Inc.*,
437 B.R. 102 (Bankr. S.D.N.Y. 2010)....................................................................................2

*In re Silicon Graphics, Inc.,*
No. 06-10977 (Bankr. S.D.N.Y. July 26, 2006), ECF No. 409 ...............................................4

*In re Smurfit-Stone Container Corp.*,
Case No. 09-10235 (Bankr. D. Del. June 12, 2010), ECF No. 7599........................................4

*In re Wicks,*
176 B.R. 695 (Bankr. E.D.N.Y. 1995)....................................................................................9

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988)..................................................................................................3

**STATUTES**

11 U.S.C.
    § 502(d) ............................................................................................................................9
    § 1123(a)(3) ...................................................................................................................7, 8
    § 1129..............................................................................................................................2
    § 1129(a)(3) ...............................................................................................................2, 7, 8, 9

Green Hunt Wedlake, Inc., in its capacity as trustee (the "**Nova Scotia Trustee**") of

General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"), by and through its

undersigned counsel, hereby submits this objection (the "**Objection**") to confirmation of the

*Debtors' Amended Joint Chapter 11 Plan*, ECF No. 8015 (together with any modifications,

supplements and amendments, the "**Plan**").[1]  In support of the Objection, the Nova Scotia

Trustee respectfully submits as follows:

### PRELIMINARY STATEMENT

1.        As this Court is aware, in July of 2010, the Creditors' Committee filed a claims

objection seeking to disallow, reduce or subordinate the Nova Scotia Trustee's statutory claim

against MLC (the "**Claims Objection**").  Despite the Nova Scotia Trustee's efforts, it now

appears that the Claims Objection litigation will continue for several months after the

Confirmation Hearing.  The Debtors have publicly proclaimed their neutrality with respect to the

Claims Objection, but their recent actions, including their objection to the Nova Scotia Trustee's

3018 Motion,[2] call into question the veracity of the Debtors' representations to this Court.

Indeed, the Debtors' refusal to make limited modifications to the Plan further highlights their

failure to act as a neutral party in connection with the Claims Objection litigation.  The Debtors'

attempt to influence the Claims Objection litigation through the Plan is not the act of a fiduciary.

2.        Although the Nova Scotia Trustee supports the Debtors' efforts to exit chapter 11

and reduce the administrative expenses associated with these cases, the Plan, as drafted, is

unconfirmable as a matter of law for three reasons.  First, the Plan fails to provide appropriate

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2] *See Motion of Green Hunt Wedlake, Inc., Trustee of General Motors Nova Scotia Finance Company, Pursuant to Bankruptcy Rule 3018(a) for Temporary Allowance of Its Claim Solely for Purposes of Voting on Debtors' Proposed Plan of Reorganization*, ECF No. 8526.

protections for holders of Disputed Claims.  Specifically, the proposed claims reserve procedures

are insufficient to protect holders of Disputed Claims against the risks that (i) the Debtors and the

GUC Trust Administrator will fail to adequately fund the reserves and (ii) the GUC Trust

Administrator (the successor plaintiff with respect to the Claims Objection) will mismanage the

distributions reserved for the Nova Scotia Trustee.  Second, the Plan contains drafting errors

and/or inconsistencies that require clarification in advance of the Confirmation Hearing.  Third,

the Plan contains provisions that violate applicable law and improperly benefit the Debtors and

the Creditors' Committee in connection with the Claims Objection litigation.  Accordingly, the

Nova Scotia Trustee respectfully requests that the Court deny confirmation of the Plan absent the

modifications specified in this Objection.

## OBJECTION

3.      A plan proponent bears the burden of proving by a preponderance of the evidence

that its plan satisfies the requirements of the Bankruptcy Code. *In re Quigley Co. Inc.*, 437 B.R.

102, 125 (Bankr. S.D.N.Y. 2010).  In its current form, the Plan does not satisfy the requirements

of Bankruptcy Code section 1129 and, thus, is unconfirmable.

**A.      The Proposed Reserve Procedures Demonstrate that the Plan Was Not Proposed in
Good Faith**

4.      Bankruptcy Code section 1129(a)(3) provides that in order for a court to confirm a

plan of reorganization, the plan must be "proposed in good faith and not by any means forbidden

by law." 11 U.S.C § 1129(a)(3).  Although the Bankruptcy Code does not define "good faith,"

this requirement has been equated to a "fundamental fairness" in dealing with creditors.  *See*,

*e.g.*, *In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re*

*Jorgensen*, 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986)).  Moreover, the Second Circuit has

explained that "good faith" means that a plan has been proposed with honesty and good

intentions. *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d

Cir. 1988) (internal citations omitted).  These elements are absent from the Debtors' Plan.

5.        As drafted, the Plan evidences a failure to act with fairness toward holders of

Disputed Claims.  Instead, the Plan prohibits any distributions to holders of Disputed Claims and

does not provide for adequate reserves.  Through this mechanism, the Debtors have sided with

the Creditors' Committee in the Claims Objection in an attempt to leverage the Nova Scotia

Trustee to settle the Claims Objection before the initial distribution date or risk that only limited

value, if any, will be available upon allowance of such Claims.  The danger to the Nova Scotia

Trustee and other similarly situated creditors is real.  Specifically, the GUC Trust Agreement

provides that in the event that the GUC Trust Administrator fails to reserve sufficient

consideration for holders of Disputed Claims that are subsequently Allowed, such Claims will be

deemed discharged.  *See* GUC Trust Agreement at 5.3(b).  To prevent the Debtors and the GUC

Trust Administrator from using the threat of discharge under the Plan to influence pending

litigation, the Plan must be modified to provide for appropriate distributions and/or reserves for

the holders of Disputed Claims.

> *(i)        The Plan Should Provide for Distributions to the Nova Scotia Trustee*

6.        The Plan provides that the Nova Scotia Guarantee Claims and the Nova Scotia

Wind-Up Claim are both Disputed Claims. *See* Plan at 4.3(g).  Based on this "Disputed" status,

the Nova Scotia Trustee (and the creditors of GM Nova Scotia) will not receive any distributions

until resolution of the Claims Objection. *See* Plan at 7.2.  Further, while the Claims Objection is

pending, the Nova Scotia Trustee will bear the risks that (i) the GUC Trust Administrator will

sell the New GM Securities at a price unacceptable to the Nova Scotia Trustee and (ii) the value

of the New GM Securities may significantly decrease before the Nova Scotia Trustee obtains

possession.  Each of these risks provides the Creditors' Committee with inappropriate leverage in the ongoing litigation.

7.     The Creditors' Committee's objection is premised on unsubstantiated allegations and fails to cite any case law in support of its legal theories.  Among other things, the Creditors' Committee alleges that a portion of the Nova Scotia Wind-Up Claim is duplicative of the Nova Scotia Guarantee Claims and the Nova Scotia Trustee's Claim, if allowed, should be reduced based on GM Nova Scotia's payment of a consent fee to the holders of the Nova Scotia Guarantee Claims (the "**Nova Scotia Noteholders**").  Yet, despite the fact that the Claim Objection relates at most to a portion of the Nova Scotia Wind-Up Claim, the weakness of the remaining objections to the Nova Scotia Trustee's Claim, and the Debtors' professed neutrality, the Debtors' Plan withholds all of the Nova Scotia Trustee's distributions.

8.     To level the playing field, the Debtors should provide for an initial distribution to either the Nova Scotia Trustee or the Nova Scotia Noteholders in respect of the outstanding amount of the Nova Scotia Notes,[3] less the consent fee, and also provide an initial distribution to the Nova Scotia Trustee in respect of the other liabilities asserted in the Nova Scotia Trustee's proof of claim.  Providing for initial distributions will not prejudice the Creditors' Committee, as issues related to duplication of Claims and payment of the consent fee will be preserved.[4]  At the same time, initial distributions will minimize, if not alleviate, the risk that the Nova Scotia

---

[3] "Nova Scotia Notes" means those notes issued pursuant to that certain Fiscal and Paying Agency Agreement among GM Nova Scotia, General Motors Corp., Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Général du Luxembourg S.A., as paying agent, dated as of July 10, 2003.

[4] Such distributions are common in large chapter 11 cases. *See*, *e.g.*, *In re Dana Corp.*, No. 06-10354 (Bankr. S.D.N.Y. Oct. 23, 2007) (ECF No. 6671); *In re Silicon Graphics, Inc.,* No. 06-10977 (Bankr. S.D.N.Y. July 26, 2006), ECF No. 409; *In re Loral Space & Commc'ns.*, No. 03-41710 (Bankr. S.D.N.Y. June 3, 2005), ECF No. 2075; *see also In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (Bankr. D. Del. June 12, 2010),  ECF No. 7599 (where an objection alleged that a claim arising under the same statute as the Nova Scotia Wind-Up Claim was duplicative of a related guarantee claim); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. Oct. 6, 2010), ECF No. 3539 (same).

Trustee will be harmed by the Creditors' Committee's specious allegations and the Plan's non-protective claims reserve provisions.[5]

### (ii)    *The Plan Should Provide for a Segregated Reserve for the Benefit of the Nova Scotia Trustee and the Nova Scotia Noteholders*

9.      The current version of the Plan inappropriately requires the Nova Scotia Trustee to bear the risk that the Debtors or the GUC Trust Administrator will fail to adequately reserve distributions for the Nova Scotia Wind-Up Claim.  Section 7.2 of the Plan provides for the GUC Trust or Avoidance Action Trust to withhold distributions on account of Disputed Claims, but it does not provide for creation of a disputed claims reserve. *See* Plan at 7.2.[6]  The Plan must, therefore, be revised to provide that distributions that would otherwise be allocable to holders of Disputed Claims will be held in a reserve (the "**Disputed Claims Reserve**") and will not be available for distribution to other creditors of the GUC Trust.

10.      Within the Disputed Claims Reserve, the Debtors should establish a segregated claims reserve for the benefit of the Nova Scotia Wind-Up Claim and the Nova Scotia Guarantee Claims (the "**Segregated Reserve**") for any amounts held back on the initial distribution date. Such reserves are common in large chapter 11 cases where litigation over significant disputed claims may extend past the effective date of a plan. *See*, *e.g.*, *Joint Chapter 11 Plan of Chemtura Corporation, et al.* at 42, *In re Chemtura Corp.,* No. 09-11233 (Bankr. S.D.N.Y.  Oct. 29, 2010),

---

[5] Although the Claims Objection also seeks equitable subordination of the Nova Scotia Guarantee Claims and the Nova Scotia Wind-Up Claim, the Nova Scotia Trustee believes that the Creditors' Committee's likelihood of success is limited for, among other reasons, the Creditors' Committee's failure to allege inequitable conduct on the part of the Nova Scotia Trustee. *See Response of Green Hunt Wedlake, Inc., Trustee of General Motors Nova Scotia Finance Company, to Official Committee of Unsecured Creditors' First Amended Objection to Claims Filed by Green Hunt Wedlake, Inc., and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief*, ECF No. 8088.

[6] The Debtors have filed two motions to establish claims reserves, ECF No. 9212 and ECF No. 9213, each of which suggest that through a combination of Plan sections 1.112, 4.3, 6.2 and 7.2, the Plan provides for creation of a disputed claims reserve.  To the extent that the Debtors intend to create and properly fund a reserve, the Plan should be revised to provide a concise statement of the reserve and the relevant procedures.

ECF No. 4387.  The Segregated Reserve should retain distributions based on Allowed Claims of

$2.69 billion, as provided for in section 4.3(g) of the Plan, less any amounts on account of which

initial distributions are made to the Nova Scotia Trustee and/or the Nova Scotia Noteholders.

11.      Further, to protect the value of the distributions in the Segregated Reserve, the

Plan should be amended to restrict the sales of New GM Securities in the Segregated Reserve.

As drafted, sections 5.2(e) and 6.2(f) of the Plan provide the GUC Trust Administrator the right

to sell GUC Trust Assets, which include New GM Stock and New GM Warrants.  Sales of New

GM Securities in the Segregated Reserve should only be allowed with the consent of the Nova

Scotia Trustee, and the proceeds thereof should be placed in the Segregated Reserve.

### (iii)    *The Plan Must Provide a Mechanism for Disputed Claims to Share in Additional Assets that Become Available to the GUC Trust*

12.      As drafted, the Plan creates an unreasonable risk that the Debtors and the GUC

Trust Administrator will fail to reserve adequate consideration for holders of Disputed Claims.

*See* Plan at 4.3(b); 4.3(c).  Specifically, Disputed Claims that become Allowed before the initial

distributions on account of the Term Loan Avoidance Action and before the Avoidance Action

Trust Transfer Date are permitted to share in recoveries.  However, treatment of Disputed Claims

allowed after such dates is less clear.  To protect against this potential for insufficient reserves,

Section 4.3 of the Plan should be amended to include the following language:

> **Section 4.3(b)**: For the avoidance of doubt, a Pro Rata Share of the proceeds of the Term Loan Avoidance Action allocated to the holders of Allowed General Unsecured Claims will be placed into the Disputed Claims Reserve (and the Segregated Reserve) for the benefit of Disputed General Unsecured Claims that have not been Allowed or disallowed as of the initial distribution of the proceeds of the Term Loan Avoidance Action.

> **Section 4.3(c)**: For the avoidance of doubt, a Pro Rata Share of the proceeds of the Term Loan Avoidance Action allocated to the holders of Allowed General Unsecured Claims will be placed into the Disputed Claims Reserve (and the Segregated Reserve) for the benefit of Disputed General Unsecured Claims that have not been Allowed or disallowed prior to the Avoidance Action Trust Transfer Date.

6

13.     Through the deficiencies outlined above, the Plan exposes the Nova Scotia Trustee to excessive risk in connection with its Plan distributions and inappropriately sides with the Creditors' Committee in the ongoing Claims Objection litigation.  Such treatment evidences bad faith in violation of Bankruptcy Code section 1129(a)(3).

**B.      The Plan Contains Vague Treatment of Class 3 General Unsecured Claims**

14.     Bankruptcy Code section 1123(a)(3) requires that a plan specify the treatment of any classes of claims or interests that are impaired under the plan. *See* 11 U.S.C. § 1123(a)(3). As drafted, the Plan and related GUC Trust Agreement contain technical deficiencies which render the treatment of Class 3 General Unsecured Claims unclear.  The defects below must be remedied to confirm the Plan:

- Section 5.9 of the GUC Trust Agreement provides that distributions may be made that are not strictly in accordance with Article 5 of the GUC Trust Agreement if approved by the GUC Trust Monitor.  However, Section 5.10 of the GUC Trust Agreement provides that distributions must be made in strict accordance with the GUC Trust Agreement unless approved by the Bankruptcy Court.  The GUC Trust Agreement should be amended to remove Section 5.9 and require any deviation from the GUC Trust Agreement to be approved by the Bankruptcy Court.

- Sections 13.8 and 13.10 of the GUC Trust Agreement are contradictory as to whether the Plan or the GUC Trust Agreement governs in the event of a conflict.  Section 13.8 states that in the event of any conflict between the Plan and the GUC Trust Agreement, the Plan controls with respect to certain provisions, yet section 13.10 provides that the GUC Trust Agreement supersedes all previous agreements.  To avoid this ambiguity, Section 13.10 of the GUC Trust Agreement should be amended to include, "except the Plan as provided in section 13.8."

- Section 6.2(a) of the Plan should require that the executed version of the GUC Trust Agreement be materially consistent with the version attached to the Plan.  Without a materiality qualifier, creditors may be bound by an agreement that bears no resemblance to the version attached to the solicitation version of the Plan.  In addition, in advance of execution of the GUC Trust Agreement, the Debtors and the Creditors' Committee should advise creditors of the "Unit Issuance Ratio" as defined in the GUC Trust Agreement. *See* GUC Trust Agreement at 1.1.

7

- Section 7.3 of the Plan and 5.1(e) of the GUC Trust Agreement provide that the Debtors and the GUC Trust Administrator may, at any time, estimate a claim for purposes of distributions.  In connection with the Disclosure Statement, the Nova Scotia Trustee entered into negotiations with the Debtors regarding the estimated amount of its Claim, and such agreement is reflected in the solicitation version of the Plan. *See* Plan at 4.3(g).  Therefore, the Plan should provide that the Nova Scotia Trustee's Claim is not subject to further estimation proceedings.

The Nova Scotia Trustee submits that the foregoing changes, although simple corrections, must be incorporated to clarify the treatment of General Unsecured Claims consistent with Bankruptcy Code section 1123(a)(3).

## C.    The Plan Includes Provisions Forbidden by Law

### (i)    The Plan Requires the Court to Act in Excess of Its Jurisdiction

15.    Bankruptcy Code section 1129(a)(3) prohibits confirmation of a plan that does not comply with applicable law.  The Debtors' proposed Plan fails to comply with applicable law in three instances.  First, the Plan requires the Bankruptcy Court to take two actions that will impact proceedings in Nova Scotia as described below.

- Section 6.8 of the Plan provides that the Debtors shall cause the direct and indirect subsidiaries of MLC to dissolve prior to December 15, 2011.  As GM Nova Scotia is currently subject to a wind up proceeding in the Nova Scotia Supreme Court (the "**Nova Scotia Bankruptcy**")[7], confirming such a Plan would require this Court to order the Nova Scotia Supreme Court to terminate the ongoing proceeding.  To avoid interference or a potential conflict of laws, Plan section 6.8 should be amended to add, "provided, however, that GM Nova Scotia will be liquidated through the ongoing Nova Scotia wind-up proceeding and dissolved pursuant to applicable Nova Scotia law."

- Section 6.7 of the Plan provides for the cancellation and discharge of "all agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all Indentures and Fiscal and

---

[7] Through the Nova Scotia Bankruptcy, the Nova Scotia Trustee is collecting GM Nova Scotia's assets and will make distributions to creditors of GM Nova Scotia.  Once distributions are made, the Nova Scotia Trustee will be discharged of its responsibilities, but will remain available to the Nova Scotia Supreme Court to process distributions of any additional assets.  Following the distributions, the Registrar of Companies in Nova Scotia will expunge GM Nova Scotia from its registry.  This process may take in excess of three years.

8

> Paying Agency Agreements….."  The rights of GM Nova Scotia and the Nova
> Scotia Noteholders under the Fiscal and Paying Agency Agreement governing
> the Nova Scotia Notes, however, are the subject of the Nova Scotia
> Bankruptcy.  The Plan should be amended to provide that the Fiscal and
> Paying Agency Agreement will be cancelled as to MLC, but that the
> agreement will remain in place for all other purposes.

Absent the foregoing modifications, the Plan would require this Court to interfere with the

ongoing Nova Scotia Bankruptcy, thus rendering the Plan unconfirmable pursuant to 11 U.S.C. §

1129(a)(3).

### *(ii)      The Setoff Provision May Violate Bankruptcy Code Section 502(d)*

16.      Second, pursuant to Section 5.7 of the Plan, the Debtors preserve the right to

effectuate the setoff of "any claims of any nature whatsoever that the Debtors may have against

the holder of [any] Claim."  Despite the Nova Scotia Trustee's inquiries, to date, the Debtors

have not confirmed whether they will seek to use this provision to reduce the Nova Scotia Wind-

Up Claim.

17.      To the extent the Debtors or the Creditors' Committee intend to use the allegations

under the Claims Objection to reduce the amount of the Nova Scotia Trustee's Claim, the

Debtors are required to obtain a finding by the Bankruptcy Court regarding the avoidable

transfer. *See In re Jensen,* No. 09-14830, slip. op., 2010 WL 424693, at *2 (Bankr. S.D.N.Y. Feb.

3, 2010) (holding that the mere possibility of a judgment is insufficient to disallow a claim under

Section 502(d) of the Bankruptcy Code) (citing *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D.

Del. 2001)); *see also In re Wicks,* 176 B.R. 695, 699 (Bankr. E.D.N.Y. 1995) (citing *In re New

York City Shoes, Inc*., 78 B.R. 426, 431 (Bankr. E.D. Pa. 1987)) for the proposition that

"[a]llowing a bank to effect a setoff without any prior judicial determination of the legitimacy of

its claim raises … questions about fundamental fairness and due process of law.").  Without a

9

judicial determination, any attempt to setoff or decrease the Nova Scotia Trustee's Claim is

contrary to applicable law and renders the Plan unconfirmable.

### (iii)    *The Plan Includes Inappropriate Exculpation Provisions*

18.    Third, the exculpation provided for in section 12.6 of the Plan is inconsistent with

applicable law and must be removed.  This Court has repeatedly held that, as a general rule,

exculpation is inappropriate and may prevent confirmation of a plan. *See*, *e.g.*, *In re Chemtura*

*Corp.*, No. 09-11233 at 72-74 (Bankr. S.D.N.Y. November 5, 2010), ECF No. 4427 (explaining

the limited circumstances in which third party releases and exculpation are appropriate); *In re*

*Adelphia Communications Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007).  As the Debtors'

Plan does not fall within the limited exceptions noted by this Court, the Debtors' Plan is

unconfirmable unless the exculpation provisions are removed.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Nova Scotia Trustee respectfully

requests that the Court (i) deny confirmation of the Plan or, in the alternative, require the

modifications detailed herein, and (ii) grant the Nova Scotia Trustee such other and further relief

as this Court deems just, proper and equitable.


New York, New York                              Respectfully Submitted,
Dated:  February 16, 2011

                                                */s/ Philip C. Dublin*
                                                Daniel H. Golden
                                                Philip C. Dublin
                                                Natalie E. Levine
                                                Akin Gump Strauss Hauer & Feld LLP
                                                One Bryant Park
                                                New York, NY 10036
                                                Telephone: (212) 872-1000
                                                Facsimile:  (212) 872-1002

                                                *Counsel to Green Hunt Wedlake, Inc. as Trustee of*
                                                *General Motors Nova Scotia Finance Company*