# EXHIBIT A

COUNTY OF ONONDAGA



| JOANNE M. MAHONEY<br>*County Executive* | **DEPARTMENT OF LAW**<br>*John H. Mulroy Civic Center, 10th Floor*<br>*421 Montgomery Street*<br>*Syracuse, New York 13202*<br>*(315) 435-2170 • Fax (315) 435-5729*<br>*www.ongov.net* | GORDON J. CUFFY<br>*County Attorney* |

January 19, 2011

<u>Via E-Mail and U.S. Mail</u>

Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
P.O. Box 7611
U. S. Department of Justice
Washington, D.C. 20044-7611

> Re: *In re Motors Liquidation Corp., et al.*, D.J. Ref. 90-11-3-09754
>
> **Onondaga County, New York Comments on Proposed Consent Decrees and Settlement Agreements with Respect to the Priority Order Sites, Specifically:**
>
> <u>**Harvey & Knott Drum Superfund Site in New Castle County, Delaware**</u>
>
> <u>**Delphi Harrison Thermal Systems Site, Dayton, Ohio**</u>
>
> <u>**Garland Road Landfill Superfund Site, Miami County, Ohio**</u>
>
> <u>**Delphi E&E Management System Site on South Scatterfield Road, Anderson, Indiana**</u>
>
> <u>**GM AC Rochester Division Site in Sioux City, Iowa**</u>
>
> <u>**Wheeler Pit Superfund Site in Rock County, Wisconsin**</u>

Assistant Attorney General Moreno:

Onondaga County submits these comments and objections with respect to the above-referenced proposed Consent Decrees and Settlement Agreements.

Onondaga County has the following comments and objections to the proposed settlements:

- 1 -

1. The Priority Order Sites are "non-owned" sites. There is no explanation provided in the six separate and distinct Notice of Lodging of Proposed Settlement Agreement, the proposed Consent Decree and Settlement Agreements or the respective Federal Register Notices as to why these sites are or should be treated differently than other similarly situated sites or why they should be considered a "priority". Treating these sites in such a unique and distinctive manner while not according the Lower Ley Creek Site in Onondaga County, State of New York, comparable treatment is arbitrary and capricious and akin to an artificial and thus improper preference.

2. There is no explanation provided as to the bases of the monies proposed to be transferred for use at any of the Priority Order Sites

3. There is no explanation provided in any of the available documentation as to why any funds dedicated for use at a Priority Order Site, but ultimately determined to be excess, should be transferred to the Superfund of the Cushion Fund Account of the MLC Environmental Trust. The County submits any such dollars should be transferred to the MLC Bankruptcy GUC Trust, or otherwise allocated to address G.M. related environmental contamination at sites in Onondaga County, New York or elsewhere.

Background

Onondaga County, New York is a claimant in the *Motors Liquidation Corp., et al., f/k/a General Motors Corp., et al.,* Jointly Administered Case No. 09-50026 (REG) bankruptcy. The County's proof of claim concerns General Motors' liability under the Nation's environmental laws for PCB contamination detected in the Onondaga Lake, Onondaga County, New York National Priorities List, including Ley Creek and the Ley Creek PCB Dredging Site.

By letter dated November 24, 2010 Onondaga County submitted comments, objections and requested modifications to the proposed Consent Decree and Settlement Agreement that would establish the MLC Environmental Response Trust. Those comments were focused on and concerned the lack of funding in the Trust to address General Motors contamination of Lower Ley Creek via historic and on-going PCB discharges from its Inland Fisher Guide facility in Salina, New York. This result was achieved by the establishment of an arbitrary artificial boundary having no basis in science or reality downstream of which no Trust Fund monies were allocated.

What makes the Government's approach to resolving these environmental issues particularly troublesome is that it sanctions Debtors' conscious disregard of their environmental obligations. (See Exhibit C to the

US0351

County's November 24, 2010 Comment Letter.) The government's approach signals a willingness to countenance and reward a Debtor's refusal to consummate a fully negotiated agreement.

On December 15, 2010 Onondaga County and others echoed the County's initial submission and submitted additional and supplemental comments critical of the Environmental Trust Fund Settlement at a public hearing conducted by the Department of Justice at the fairgrounds in Syracuse, New York.

To date, the Department of Justice has yet to respond to any of the comments it has received on the proposed MLC Bankruptcy Environmental Trust.

### The Proposed Priority Order Sites Settlements are Neither Fair nor Reasonable

A review of these proposed Consent Decrees and Settlement Agreements must determine "if it is fair, reasonable, and faithful to the objectives of CERCLA" and RCRA. *See United States v. General Electric Company*, 460 F. Supp.2d 395, 401 (N.D.N.Y. 2006)(quotations and citations omitted).

A prime objective of CERCLA is "to impose liability on responsible parties." *Id.* The fairness inquiry concerns both procedural and substantive fairness; the reasonableness inquiry addresses both technical considerations and such matters as "whether a settlement that does not fully compensate for costs is nonetheless a cost-effective alternative to litigation that will conserve public and private resources." *Id.*

Onondaga County submits that with respect to resolution of the MLC Bankruptcy, the Government is using the Bankruptcy Process to selectively choose which sites and locales will receive what in essence is no more than a pass through of federal monies previously advanced to General Motors and/or Motors Liquidation Corporation to address environmental liabilities.

More troubling to Onondaga County is the reality that while the vast majority of the $600,000,000+ in funding for the Environmental Trust and the Priority Order Sites is recycled federal dollars, and the sole beneficiary of the Trust will be the United States, (*See* Settlement Agreement, ¶38), EPA is concurrently pursuing Onondaga County (and 6 others) as potentially responsible for addressing the Lower Ley Creek GM-IFG PCB contamination that the Government has now arbitrarily excluded from funding under the proposed Environmental Response Trust Settlement, and the Priority Order Sites. In the absence of any compelling or unique characteristic of the Priority Order Sites or the owned property sites that distinguish such locations from the Lower Ley Creek site, the Government's approach to resolving MLC's

- 3 -

US0352

CERCLA liability is marred by unreasonableness, arbitrariness and capriciousness.

The Priority Order Sites are by definition not MLC-owned sites; in most cases, they are sites with multiple potentially responsible parties; in some cases, they are sites already removed from the National Priorities List and in at least one instance, the Settlement Agreement is described as the resolution of "causes of action of the Iowa Department of Natural Resources against Old GM under Iowa Code section 455B.186(1); 567 Iowa Admin. Code 38.3(1) and 51.6 with respect to the GM AC Rochester Division Site in Sioux City, Iowa." 75 Fed. Reg. 79391 (December 20, 2010).

Onondaga County knows for certain that the Lower Ley Creek Site in Onondaga County, which is a subsite of the Onondaga Lake National Priority List site, is similarly situated to the Sioux City, Iowa Site and it is without explanation not receiving a penny of the Government's pass through. *See* Onondaga County's November 24 and December 15, 2010 Comments and Objections. Yet the government proposes use of $6,476,634 in Government funds as a cash payment to EPA for the purpose of remediating the GM AC Rochester Division Site in Sioux City, Iowa, but offers nothing, other than the possibility of receiving pennies on the dollar sometime in the distant future, to cover the significant expense of remediating Lower Ley Creek on EPA's anticipated accelerated schedule

In *United States v. SEPTA*, 235 F.3d 817 (3d Cir. 2000) the Third Circuit noted that: "A court should approve a consent decree if it is fair, reasonable, and consistent with CERCLA's goals." SEPTA, 235 F.3d at 823. The element of: "fairness requires that settlement negotiations take place at arm's length. A court should 'look to the negotiation process and attempt to gauge its candor, openness and bargaining balance.'" *Accord In re: Tutu Water Wells CERCLA Litigation*, 326 F.3d 201, 207 (3d Cir. 2003).

A proposed settlement negotiated by a lender controlled Debtor that by its expressed terms is intended to solely benefit the lender, that has as a potential purpose and/or impact of shifting remedial costs to entities such as the County who have been named as potentially responsible parties without fully assessing the adequacy of the settlement in achieving CERCLA's remedial objectives, fails to meet the well recognized fairness standard for judicial approval. *United States v. Cannons Eng'g Corp.*, 899 F.2d. 79, 84 (1st Cir.1990).

What the County and others are confronted with here were closed door negotiations that propose a *fait accompli* without any effort to justify or substantiate the bases and rationale for the proposed settlements while refusing to treat similarly situated sites in a like manner, notwithstanding more than two years of efforts by the County and others to negotiate an

US0353

equitable resolution of General Motors' Lower Ley Creek contamination with responsible governmental agencies.

The County awaits a response to its comments, and would welcome an opportunity to renew substantive discussions of this matter with the government and the Debtors' in the expectation that an equitable outcome reflecting the Government's CERCLA obligations and the objectives of the bankruptcy proceeding remains possible.

Very truly yours,

COUNTY OF ONONDAGA

By: *[signature]*
GORDON J. CUFFY
County Attorney

GJC/nlm

cc:  Joanne M. Mahoney, Onondaga County Executive
     Matthew J. Millea, Deputy Onondaga County Executive
     Michael J. Lannon, P.E., Acting Commissioner,
        Onondaga County Dept. of Water Environment Protection
     Luis A. Mendez, Senior Deputy County Attorney
     Kevin C. Murphy, Esq.

US0354

**CITY OF DAYTON, OHIO**
City Manager's Office
Office of Economic Development



City Hall • 101 West Third Street
P.O. Box 22 • Dayton, Ohio 45401
937.333.3634 • Fax 937.333.4266

---

Assistant Attorney General
Environment and Natural Resources Division
Department of Justice

**RE: In re Motors Liquidation Corp., et al., D.J. Ref. 90–11–3–09754.**

The City of Dayton strongly supports and requests approval of the proposed Delphi Harrison Consent Decree and Settlement Agreement (''Delphi Harrison Settlement Agreement'') in the bankruptcy matter, Motors Liquidation Company, et al., f/k/a General Motors Corp., et al., Jointly Administered Case No. 09–50026 (REG).

The taxpayers of the State of Ohio and the City of Dayton have assumed more than their fair share of the burden placed on the community by the releases and threats of releases of hazardous substances at or in connection with the Delphi Harrison Thermal Systems Site in Dayton, Ohio.

The proposed cash payment of $5,329,343 by Old GM to Ohio EPA for remediation at the Delphi Harrison Site will go a long way to alleviating that burden and moving the site to productive reuse.

Respectfully,

Timothy S. Downs