**Hearing Date & Time:  March 1, 2011 at 9:45 a.m. (Eastern Time)**
**Response Deadline: February 22, 2011 at 4:00 p.m. (Eastern Time)**

STEPHEN M. LANDAU, P.C.
30100 Telegraph Road, Suite 428
Bingham Farms, MI 48025-4564
☎248.358.0870
sml@slandau.com

For Dearborn Refining Site
Customers PRP Group

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In Re:                                                  Chapter 11 Case No.
                                                        **09-50026-REG**
                                                        Jointly Administered

**MOTORS LIQUIDATION COMPANY**, *et al.*,
f/k/a General Motors Corporation,

|   |
|---|
| **MEMORANDUM OF LAW IN OPPOSITION TO DEBTORS' 208TH OMNIBUS OBJECTION** |

                                         Debtors.
_____/

In addition to the respondent, the undersigned counsel represented two other unsecured claimants in this matter:  G&H Landfill Site PRP Group, claim number 39020, and LDI PRP Group, claim number 38913, both of whose claims have been settled.

Settlement of claims on behalf of the debtors was handled by a Detroit, Michigan entity, Alix Partners, LLP.  Pursuant this Court's order, Alix Partners was granted authority to settle claims for less than $1 million without Court approval or objection of the creditors' committee.  The individual at Alix Partners who settled all three matters with the undersigned was Matthew X. Roling, and the settlement process was identical for all three claims.

Mr. Roling initiated contact with the undersigned and settlement discussions ensued. During the course of the discussions, Mr. Roling identified whether any group members had filed individual claims which were required to be withdrawn in consideration of any settlement to be reached. No individual claims had been submitted with regard to G&H. When the settlement was reached, Mr. Roling forwarded a Stipulation and Settlement Resolving Claim No. 39020.

With regard to LDI, Mr. Roling identified three individual claims which were required to be withdrawn. The claims were withdrawn, and Mr. Roling forwarded an identical form of Stipulation and Settlement Resolving Claim No. 38913.

On October 14, 2010, the undersigned received a proposed Stipulation and Settlement Resolving Claim No. 36708, which identified the seven individual members of the respondent group which had filed individual claims as set forth in paragraph 4 of the response. The stipulation was sent via email. Mr. Roling's entire email consisted of the following:[1]

---

**Stephen M. Landau**

| | |
|---|---|
| From: | Roling, Matthew [mroling@alixpartners.com] |
| Sent: | Thursday, October 14, 2010 2:57 PM |
| To: | Stephen M. Landau |
| Cc: | Neis, Tim |
| Subject: | Dearborn Refining |
| Attachments: | US_ACTIVE_MLC- Dearborn Refining Stipulation - 36708_43530302_1.DOC |

You know the drill.

Hope all is well.

Matt

---

[1] This insert and the following two inserts are copies of the complete documents and accordingly are not attached as separate exhibits. The proposed stipulation is attached at Tab 1.

The "drill" was that the individual claims were to be withdrawn as an express condition of settlement, consistent with this Court's approved procedures and the authority held by Alix Partners to enter into such settlements.  Accordingly, each of the seven individual claims was conditionally withdrawn.[2]  On November 2, 2010, Mr. Roling and the undersigned reached a final agreement as to the settlement amount and the undersigned sent a confirming email to Mr. Roling:

**Stephen M. Landau**

From:       Stephen M. Landau
Sent:       Tuesday, November 02, 2010 11:28 AM
To:         'Roling, Matthew'
Subject:    roling 2010 11 02 frm sml

Hi:  Agreed--$970,557.00.  You send me the stip.

Stephen M. Landau
30100 Telegraph Rd, Ste 428
Bingham Farms, MI 48025-4564
☎248.358.0870x10
sml@slandau.com

The "delivery receipt" to Mr. Roling, evidencing that the email had been sent from the undersigned's computer to Mr. Roling's computer discloses:

**Stephen M. Landau**

From:       System Administrator
To:         Roling, Matthew
Sent:       Tuesday, November 02, 2010 11:28 AM
Subject:    Delivered: roling 2010 11 02 frm sml

Your message

        To:     Roling, Matthew
        Subject:     roling 2010 11 02 frm sml
        Sent: 11/2/2010 11:28 AM

was delivered to the following recipient(s):

        Roling, Matthew on 11/2/2010 11:28 AM

---

[2] The withdrawals were "conditional" in the sense that the following language was inserted in the Withdrawal of Claim forms:  "I hereby withdraw the above-referenced claim without prejudice subject to reinstatement if settlement is not reached or if the group claim is challenged on the basis of standing . . .. "

Finally, the "read receipt" sent from Mr. Roling's computer to the undersigned's computer evidences that the email was displayed on Mr. Roling's computer screen:

**Stephen M. Landau**

From: Roling, Matthew [mroling@alixpartners.com]
To: Stephen M. Landau
Sent: Tuesday, November 02, 2010 11:31 AM
Subject: Read: roling 2010 11 02 frm sml

Your message

    To:    mroling@alixpartners.com
    Subject:

was read on 11/2/2010 11:31 AM.

The revised Stipulation and Settlement Resolving Claim No. 36078 was never received. Upon service of the Debtors' 208th Omnibus Objection to Claims, the undersigned telephoned and spoke to Mr. Roling on February 1 and again on February 3, 2011. As evidenced by the Affidavit of Stephen M. Landau attached at Tab 2, the February 3, conversation began: "Are you reneging on the agreement." He replied "yes." I then said "are you going to deny that we settled this" to which he replied that he was not "in a position to comment" on that. He then said that "unfortunately" the settlement never made it to stipulation. Finally, in response to my inquiry as to why the stipulation had not been sent, Mr. Roling replied "it slipped through the cracks." Importantly, at no time prior to, during or after the conversation of February 3, 2011, has Mr. Roling, orally or in writing, ever disavowed or denied the existence of the complete settlement reached on November 2, 2010.

The decision to withdraw the claims was an express condition of settlement upon which respondent relied and constitutes consideration advanced by respondent to its detriment. Thus, on November 2, 2010, when the claims were withdrawn, the settlement

became binding and enforceable. Once settled, no basis for disavowing or unilaterally choosing to ignore the settlement exists.

State law governs the validity of a bankruptcy settlement agreement. *In re Lady Madonna Industries, Inc.*, 76 B.R. 281, 290 (S.D.N.Y. 1987). Under New York law a stipulation of settlement is an agreement covered by C.P.L.R. § 2104.

C.P.L.R. § 2104 states:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

In *Lady Madonna*, the court emphasized that:

> This rule, however, is not applied literally to all situations, as a number of exceptions have developed. New York courts have found "substantial compliance" with section 2104 where letters by attorneys exist explicitly acknowledging an oral settlement, *Morrison v. Bethlehem Steel Corp.*, 75 A.D.2d 1001, 429 N.Y.S.2d 123 (4th Dept. 1980), or where a judge makes detailed notes of settlement terms. *Golden Arrow Films, Inc. v. Standard Club of [**25] California, Inc.*, 38 A.D.2d 813, 328 N.Y.S.2d 901 (1st Dept. 1972).
>
> In addition, New York Courts have applied principles of estoppel in individual instances to prevent fraud or injustice. See e.g., *Hansen v. Prudential Lines, Inc.*, 118 Misc.2d 568, 461 N.Y.S.2d 670 (Sup. Ct. Kings Cnty. 1983); *A.J. Tenwood Assoc. v. U.S. Fire Ins. Co.*, 104 Misc.2d 467, 428 N.Y.S.2d 606 (Sup. Ct. N.Y. Cnty. 1980).

76 B.R., at 290.

Likewise, in *Hansen v. Prudential Lines, Inc.,* 118 Misc. 2d 568, 461 N.Y.S.2d 670 (N.Y. Sup., 1983), the court pointed out:

> It has been recognized, however, that the rule requiring stipulations of settlement to be in writing is one of convenience designed to relieve courts from having to

> resolve disputes as to the terms of such stipulations. Thus where there is no dispute as to terms it is eminently reasonable to refuse to permit use of the rule against a party who has been misled or deceived by the oral stipulation to his detriment or who has relied upon it . . . . A party opposing a settlement may be estopped from relying upon a technical noncompliance with C.P.L.R. 2104.

*Hansen,* 461 N.Y.S.2d at 670 (citing 2-A J. Weinstein, H. Korn & A. Miller, N.Y. Civ. Prac. para. 2104.04 (1987)).  Here, the debtors should be estopped.  There can be no dispute as to the settlement terms as all terms are expressed within the four corners of the stipulation apparently drafted by debtors' counsel and sent by the debtors' agent to the undersigned on October 14.

In *Regolodo v. Neighborhood Partnership Hous. Dev. Fund Co.*, 906 N.Y.S. 775, 25 Misc. 3d 1229A; 2009 NY Slip Op 52338(U) (2009), counsel for the defendant sent the following email to the plaintiff:

> Please allow this to confirm that you have agreed to settle this matter for $ 200,000.00 pending the resolution of issues relating to the workers' compensation lien. Kindly let me know when these issues are resolved and I will send you a release with the language required by Crum & Foster. Thank you.
>
> 2009 NY Slip Op 52338U, *3.

The *Regolodo* court held that while the agreement did not comply with the formal requirements of C.P.L.R. § 2104, "where there is no dispute between the parties as to the terms of the agreement, the courts will refuse to permit the use of this rule against a party who has been misled or deceived by the oral agreement to his detriment or who has relied upon it." *Id.*  Accordingly, BFC "should be estopped from raising the technical defect to avoid the unequivocal terms of its agreement." *Id.*

New York courts have held that even a "preliminary" agreement, evidenced by an exchange of emails, is binding:

> [D]espite the desire for a later formal document, when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation.  Such an agreement is preliminary only in form—only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 11130, *17; 2005 WL 1377853 (S.D.N.Y. 2005) (internal citations and quotation marks omitted).  Here, all of the formalities were previously agreed to on two prior occasions.

The *Hostcentric* court went on to explain that:

> [T]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *Id.* at *18 (internal citations and quotation marks omitted). "Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document. . . . Parties who intend to be bound by informal agreement are so bound even if they contemplate later memorializing their agreement in writing.

*Id.* at *18-19 (internal citations and quotation marks omitted).

This Court has held that equitable estoppel is established under circumstances similar to those in this case:

> To invoke the doctrine of equitable estoppel successfully, a plaintiff must establish that (i) the defendant made a definite misrepresentation of fact and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to its detriment. *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995). When pleading a claim of equitable estoppel, the plaintiff must allege a misrepresentation or conduct that induces delay, and reliance or any other facts from which it can be inferred that the plaintiff forbore in some way. *Id; see also, Shields v.*

*School of Law of Hofstra University,* 77 A.D.2d 867, 868, 431 N.Y.S.2d 60, 62 (2d Dep't 1980). The doctrine is frequently invoked in cases where the plaintiff is aware of a cause of action and contends that the defendant's conduct caused a delay in bringing suit. *See, e.g., Strachova v. The Metropolitan Museum of Art,* 98 Civ 8505(RPP), 1999 WL 566305, at *6, 1999 U.S. Dist. LEXIS 11791, at *19-20 (S.D.N.Y. Aug. 3, 1999). It has been applied in bankruptcy cases in circumstances somewhat similar to those at bar. *See Bronx-Westchester Mack Corp.,* 4 B.R. 730 (Bankr.S.D.N.Y.1980).

*In Re InSITE Services Corp, LLC*, 287 B.R. 79, at 86.

Here, it cannot be questioned that AlixPartners made a specific and definite representation that in consideration of the withdrawal of the individual claims, the group claim would be settled in the amount of $970,557.00. It further cannot be questioned that respondent relied upon this representation in withdrawing the individual claims—an affirmative act detrimental to respondents if the settlement is not enforced. [3]

Accordingly, respondent is entitled to entry of an order overruling the debtors' objection to claim number 36708 and to entry of an order allowing the claim as settled in the amount of $970,577.00.

Respectfully submitted,

/s/ Stephen M. Landau

---

[3] "When making a choice of law determination in a contract case, New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation." *In re Gaston & Snow* 243 F.3d 599, 607-608 (C.A.2, 2001). While respondent believes New York law controls, if this Court were to determine that Michigan law controlled, the result would be the same. See, *e.g.*, *Kloian* v *Domino's Pizza, LLC*, 273 Mich App 449, 733 N.W.2d 766 (2006), recognizing sufficiency and enforceability of writings such as emails to support a finding that a binding settlement agreement was reached and *Moore* v. *First Sec. Cas. Co.*, 224 Mich. App. 370, 568 N.W.2d 841, 844 (1997), recognizing that the doctrine of equitable estoppel arises when a party, by representations or silence intentionally or negligently induces another party to believe certain facts, upon which the second party relies to its prejudice.

Stephen M. Landau

STEPHEN M. LANDAU, P.C.
For Dearborn Refining Site
Customers PRP Group
30100 Telegraph Road, Suite 428
Bingham Farms, MI 48025-4564
☏248.358.0870
sml@slandau.com