## SETTLEMENT AGREEMENT

This Agreement is made and entered into on this 4th day of ~~October~~ November, 2002, by and among General Motors Corporation ("GM"), Kelsey-Hayes Company ("Kelsey-Hayes") and TRW Inc. ("TRW").

## RECITALS

WHEREAS, GM, Kelsey-Hayes (as the corporate successor to Dayton Walther) and TRW (through its former Globe Motors division) have been identified as parties that may have liability under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §§ 9601, et seq. ("CERCLA"), the Ohio Hazardous Waste Management Act, as amended, ORC §§ 3734 et seq., ("Ohio Superfund"), and other legal authorities in connection with the alleged arrangement for disposal of substances that are or may be regulated by any federal, state or local statute, rule, regulation, or decision of any administrative agency or court, including, without limitation, CERCLA and Ohio Superfund ("Hazardous Substances"), at and from Valleycrest/North Sanitary Landfill Superfund Site in Dayton, Ohio (the "Valleycrest Site"), including any contiguous off-site areas impacted by the Valleycrest Site; and

WHEREAS, GM and other parties, including TRW and Kelsey-Hayes, are currently funding certain response activities required at the Valleycrest Site, where a removal action is underway and a remedial investigation/feasibility study is also ongoing; and

WHEREAS, GM, Kelsey-Hayes and TRW believe that, to the extent provided by this Agreement, it is in their mutual best interests to reach agreement between themselves with regard to certain responsibilities and potential liabilities relating to the Valleycrest Site, as more specifically defined below; and

1

WHEREAS, GM, Kelsey-Hayes and TRW acknowledge and agree that the terms of this Agreement represent a good-faith settlement and compromise of disputed claims with respect to the matters addressed herein, negotiated at arms-length, and that this settlement represents a fair, reasonable, and equitable resolution of the matters among the parties hereto.

NOW, THEREFORE, in consideration of the foregoing and the mutual undertakings set forth in this Agreement, and other good and valuable consideration contained herein, the parties hereto represent, warrant, and agree as follows:

## OBLIGATIONS

1. <u>Covered Matters</u>. This Agreement addresses and settles those liabilities and potential liabilities collectively referred to hereinafter as "Covered Matters" and defined as follows:

   a. Except as provided herein, all liabilities, remedies, claims, duties, obligations, costs (including any claim for past costs), or penalties that Globe Motors, Dayton Walther and/or GM may or could have with respect to environmental conditions at, emanating from, or related to the Valleycrest Site and/or any agreement(s) other than this Settlement Agreement entered into by TRW or Kelsey-Hayes and GM relating to the Valleycrest Site and which liabilities, remedies, claims, duties, obligations, costs (including any claim for past costs), or penalties are created under or by CERCLA, Ohio Superfund, the Resource Conservation and Recovery Act; 42 USC. §§6901, <u>et seq.</u> ("RCRA"), or common law.

   b. "Covered Matters" does not include any claims for natural resource damages that may be brought pursuant to statute by a federal natural resources trustee or

2

designee, or their assignees, or any private toxic tort claims, relating to the Valleycrest site.

2. <u>Definition of Site.</u> The Valleycrest Site means the former landfill located at 200 Valleycrest Drive in Dayton, Ohio (also known as the North Sanitary Landfill site), being approximately 100 acres in size in the aggregate, but also including any and all contiguous offsite areas impacted by the landfill, as placed on the NPL by EPA.

3. <u>Release of TRW and Kelsey-Hayes.</u> GM and its successors and assigns hereby release and forever discharge TRW and Kelsey-Hayes and their shareholders, officers, directors, employees, agents, successors and assigns, of and from any and all actions, courses of action, sums, sums of money, accounts, reckonings, bills, covenants, controversies, agreements, obligations, liabilities, damages, claims, debts, losses, expenses, or demands which GM ever had, now has, or hereafter can, shall, or may have against TRW or Kelsey-Hayes with respect to Covered Matters, except for rights granted by this Agreement.

4. <u>Indemnification of TRW and Kelsey-Hayes</u>. GM hereby agrees to protect, defend, indemnify, and save harmless TRW and Kelsey-Hayes from and against all Covered Matters. GM shall have the right and duty to defend any order, claim, or suit brought against TRW or Kelsey-Hayes for Covered Matters, even if one or more of the allegations of the order, claim, or suit are groundless, false or fraudulent, and GM may make such investigation and settlement of any order, claim, or suit as GM deems expedient. TRW and Kelsey-Hayes hereby acknowledge and certify that other than as previously disclosed, they know of no currently pending actions, causes of action, suits, controversies, agreements, obligations, liabilities, damages, claims, debts, losses, expenses, or demands against TRW or Kelsey-Hayes relating to Covered Matters.

5. <u>Payment by TRW and Kelsey-Hayes.</u> In consideration for the obligations undertaken by GM pursuant to the terms of this Agreement, TRW and Kelsey-Hayes hereby agree to collectively pay to GM a cash amount of Eight Hundred Fifty Thousand Dollars ($850,000) (the "Cash Amount") to resolve their separate individual liabilities subject to and in accordance with the terms and procedures for such payments set forth herein:

   a. The Cash Amount shall be paid to GM within thirty (30) days of the effective date of this Agreement. If payment is made more than fifteen (15) days after the due date, simple interest of 0.75% shall be included per month for each month or fraction thereof that said payment is late;

   b. All payments made by TRW and Kelsey-Hayes to date regarding the Valleycrest Site or litigation concerning Covered Matters shall be credited to GM and become the property of GM. Any recovery related to the TRW and Kelsey-Hayes share of the cost recovery litigation shall be credited to GM and become the property of GM. The prior payments and the proceeds of the cost recovery litigation (the "Credit Amount") may be paid directly to or otherwise held by GM as soon as said funds become available after the effective date of this agreement.

   c. It is the intent of GM, Kelsey-Hayes and TRW that in return for the total of the Cash Amount and the Credit Amount being paid by or on behalf of TRW and Kelsey-Hayes to GM, then GM forever releases, indemnifies, defends, protects, and replaces TRW and Kelsey-Hayes with respect to all Covered Matters for the Valleycrest Site as provided by the terms of this Agreement.

4

6. <u>GM's Activities</u>. GM will continue, individually or together with other parties, to complete the RI/FS and perform such other removal and remedial activities at the Valleycrest Site, as to be determined by GM in its sole discretion. If it chooses to do so, GM may notify EPA and the Ohio Environmental Protection Agency ("OEPA") of the existence and effect of this Agreement, and that TRW and Kelsey-Hayes have paid for and extinguished their potential liabilities associated with the Valleycrest Site.

7. <u>Assignment by TRW and Kelsey-Hayes</u>. TRW and Kelsey-Hayes hereby assign to GM all claims and demands of every kind and nature that they may possess with respect to Covered Matters against each and every other person, entity, and potentially liable party at and for the Valleycrest Site. However, this reference to potentially liable parties is not intended to include any insurance carrier of TRW or Kelsey-Hayes, pursuant to Paragraph 18 below. TRW and Kelsey-Hayes hereby assign to GM all of their rights and interests under any agreement(s) either has entered into relating to Covered Matters except this Settlement Agreement. TRW and Kelsey-Hayes agree to execute any additional documents that GM may reasonably request to give full force and effect to these assignments.

8. <u>Release of GM</u>. TRW and Kelsey-Hayes and its successors and assigns hereby release and forever discharge GM and its shareholders, officers, directors, employees, agents, successors and assigns, of and from any and all actions, causes of action, suits, sums of money, accounts, reckonings, bills, covenants, controversies, agreements, obligations, liabilities, damages, claims, debts, losses, expenses, or demands which TRW or Kelsey-Hayes ever had, now have, or hereafter can, shall, or may have against GM with respect to Covered Matters, except for rights granted by this Agreement.

9. <u>Transmittal of Claims</u>. TRW and Kelsey-Hayes will notify GM by fax and/or express delivery of the existence of any claim, demand, order, notice, summons, or other

5

process received hereafter by TRW or Kelsey-Hayes regarding any Covered Matters, as follows:

    a.    If a response is required within thirty (30) days of receipt, TRW or Kelsey-Hayes shall provide GM with written notice not later than ten (10) calendar days prior to any such response deadline for the claim, demand, order, notice, summons, or other process received by TRW or Kelsey-Hayes, provided, however, that TRW or Kelsey-Hayes received such claim, demand, order, notice, summons, or other process more than ten (10) days prior to such response deadline to allow for timely compliance with this Paragraph 9.a.

    b.    If TRW's or Kelsey-Hayes' receipt thereof is less than ten (10) days prior to the deadline for response, then TRW or Kelsey-Hayes shall seek a thirty (30) day extension for response and shall provide a copy of the claim, demand, order, notice, summons, or other process and an acknowledgment of the thirty (30) day extension to GM not later than ten (10) days prior to the extended deadline for response.

    c.    Such notice and copies of whatever was received by TRW or Kelsey-Hayes shall be sent to GM in conformance with the notice provision set forth at paragraph 22 below.

    d.    GM shall promptly notify TRW or Kelsey-Hayes that it has assumed the defense of any matter so forwarded to it by TRW or Kelsey-Hayes and covered by this Agreement. GM will then proceed to defend said claim, demand, order, notice, summons, or other process pursuant to this Agreement.

    e.    If necessary and if reasonably requested by GM, TRW and Kelsey-Hayes shall reasonably cooperate in responding to discovery, allocation and

information requests arising for any claim, demand, order, notice, summons, or other process sent to TRW or Kelsey-Hayes and for which GM has assumed the defense pursuant to this Agreement.

f. The failure of TRW or Kelsey-Hayes to abide strictly by the notice provisions contained herein does not excuse GM's obligations of indemnity or defense, except to the extent that actual and substantial prejudice to GM is documented.

10. <u>Cooperation</u>. If reasonably requested by GM, after execution of this Agreement, TRW or Kelsey-Hayes at their own expense will make available to GM accessible, non-privileged information and witnesses that may be in TRW's or Kelsey-Hayes' possession or control relating to their alleged contribution of hazardous substances and arrangements for disposal at the Valleycrest Site.

## **MISCELLANEOUS**

11. <u>No Third-Party Beneficiaries</u>. The rights and obligations created under this Agreement shall inure solely to the benefit of the persons and entities specifically referred to as the parties to this Agreement. Nothing herein shall create, extinguish, or in any manner alter or affect the rights or duties of any third parties not parties to, or not in privity with the parties to this Agreement.

12. <u>Bankruptcy</u>. Upon any future bankruptcy filing by GM, TRW, or Kelsey-Hayes, performance of the defense, indemnity, payment, and any and all other obligations, duties and actions of the bankrupt party pursuant to this Agreement shall to the extent possible be deemed to have the priority status of administrative expenses pursuant to 11 U.S.C. Sections 503(b) and 507(a)(1). Upon the confirmation of a plan of bankruptcy reorganization for the bankrupt party, the reorganized party or any post-confirmation successor entity shall be bound by all duties created for said bankrupt party by this

Agreement. The terms, benefits, and obligations of this Agreement for GM, TRW, and Kelsey-Hayes respectively, shall not be terminated, modified, or discharged by any Chapter 11 bankruptcy resolution, and any plan of reorganization that may ever be proposed by GM, Kelsey-Hayes, or TRW respectively, in the future shall so provide.

13. <u>Applicable Law</u>. This agreement shall be interpreted and enforced according to the laws of the State of Ohio.

14. <u>Execution of Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. <u>No Admission of Liability.</u> The execution of this Agreement shall not, under any circumstances, be construed as an admission by TRW, Kelsey-Hayes or GM of any fact or liability with respect to the Valleycrest Site, or with respect to any waste containing or constituting Hazardous Substances allegedly contributed to the site. This Agreement shall not constitute or be used as evidence, as an admission of any liability or fact, or as a concession of any question of law by the parties hereto, nor shall it be admissible in any proceeding except in an action to seek the enforcement of any terms of this Agreement.

16. <u>Successors and Assigns Included as Parties</u>. Wherever in this Agreement either GM, Kelsey-Hayes or TRW is named or referred to, the legal representatives, successors, and permitted assigns of such party shall be included, and all covenants and agreements contained in this Agreement by or on behalf of either of the parties hereto shall bind and inure to the benefit of the respective successors and permitted assigns, whether so expressed or not.

17. <u>Assignment</u>. GM may not assign its rights, duties, or obligations under this Agreement to any other person or entity without the express, written, and advance

permission of TRW and Kelsey-Hayes, which permission may be withheld by TRW or Kelsey-Hayes in its sole and exclusive discretion.

18. <u>Insurance</u>. GM, Kelsey-Hayes and TRW do not hereby make any agreement or take any action that will prejudice them with regard to, nor transfer their respective rights concerning, their respective third-party insurance claims, coverages or recoveries.

19. <u>Headings</u>. The headings contained in this Agreement are for convenience of reference only, are not to be considered a part hereof, and shall not limit or otherwise affect any of the terms hereof.

20. <u>Modification.</u> Neither this Agreement, nor any provisions hereof, may be changed, waived, discharged, or terminated orally, but only by instrument in writing signed by the party against whom enforcement of the change, waiver, discharge, or termination is sought.

21. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the parties hereto among themselves as to the Covered Matters. As between TRW, Kelsey-Hayes and GM, any prior agreements as to Covered Matters are hereby cancelled or superceded by this Agreement to the extent that they may be inconsistent herewith.

22. <u>Notice Procedure</u>. Notices required or otherwise given under this Agreement shall be directed as follows:

|  |  |
|---|---|
| To GM: | Michelle T. Fisher, Esq.<br>General Motors Corporation<br>Legal Staff<br>MC 482-C24-D24<br>300 Renaissance Center<br>Detroit, MI 48243<br>Tel: (313) 665-4877<br>Fax: (313) 665-4896 |
| To TRW and Kelsey-Hayes: | Scott D. Blackhurst, Esq.<br>TRW Inc.<br>Senior Counsel - Environmental<br>1900 Richmond Road |

9

Cleveland, Ohio 44124
Tel: (216) 291-7359
Fax: (216) 291-7874

All notices or demands required or permitted under this Agreement shall be in writing and shall be effective if sent by express delivery or by registered or certified mail, postage prepaid and return receipt requested. Notices shall be deemed received at the time delivered. Any party may also give notice by facsimile transmission, which shall be effective upon confirmation by the party sending the notice that such facsimile transmission has been received by the party to whom the notice has been addressed. Nothing in this Paragraph 22 shall prevent the giving of notice in such manner as prescribed by the Federal Rules of Civil Procedure for the service of legal process. Either party may change its address by giving written notice thereof to the other party to this Agreement.

23. <u>Confidentiality.</u> Kelsey-Hayes and TRW agree to keep confidential and not to disclose to any third party, directly or indirectly, the terms of this agreement, including, but not limited to, the value of the Cash Amount, except as required by applicable law or by a court of competent jurisdiction, and except as to that information which is in the public domain. If Kelsey-Hayes or TRW is required to disclose such information, the disclosure shall be limited such that any disclosures are only to the extent necessary and as expressly required by a court or by applicable law.

24. <u>Remedies and Attorneys' Fees.</u> In any action brought by a party hereto for breach of this Agreement or to enforce the rights and obligations of this Agreement, the prevailing party shall be entitled also to recover its reasonable attorney's fees. Equitable and injunctive relief shall also be available to either party hereto upon breach of this Agreement by the other party.

25. <u>Authorization</u>. Each of the signatories signing below on behalf of his or her respective party to this Agreement represents that he or she is fully authorized to sign on behalf of that party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date appearing above and last written below.

**GENERAL MOTORS CORPORATION**

By: *Michelle T. Fisher*
Name (print): *Michelle Fisher*

Title: *Attorney*

Date: *Nov. 4, 2002*

**TRW INC.**

By: *David B. Goldst—*
Name (print): *David B. Goldst—*

Title: *Assistant Secretary*

Date: *10/18/02*

**KELSEY-HAYES COMPANY**

By: _____
Name (print):

Title: _____

Date: _____

DET02\152179.4
ID\WRS

12