HEARING DATE:  March 1, 2010 at 9:45 a.m. (prevailing Eastern Time)
OBJECTION DEADLINE:  February 22, 2010 at 4:00 p.m.  (prevailing Eastern Time)

| POLSINELLI SHUGHART PC | DINSMORE & SHOHL LLP |
|---|---|
| Jason A. Nagi | Vincent B. Stamp (*pro hac vice* to be submitted) |
| 7 Penn Plaza, Suite 600 | Tim J. Robinson (*pro hac vice* to be submitted) |
| New York, New York 10001 | 255 East 5th St., Ste. 1900 |
| Tel: (212) 644-2092 | Cincinnati, OH  45202 |
| Fax: (212) 684-0197 | Tel: (513) 977-8200 |
| jnagi@polsinelli.com | Fax: (513) 977-8141 |
|  | vince.stamp@dinslaw.com |
|  | tim.robinson@dinslaw.com |

Attorneys for Valleycrest
Landfill Site Group

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                                          :
**In re**                                                           :         **Chapter 11 Case No.**
                                                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*,   :         **09-50026 (REG)**
       f/k/a General Motors Corp., *et al.*         :
                                                                          :
                     Debtors.                            :         **(Jointly Administered)**
                                                                          :
-------------------------------------------------------------x

### RESPONSE OF VALLEYCREST LANDFILL SITE GROUP TO DEBTORS' 208TH OMNIBUS OBJECTION TO CLAIMS

Valleycrest Landfill Site Group (the "VLSG"), by their attorneys, hereby submits this response to Debtors' 208th Omnibus Objection to Claims (Contingent Co-Liability Claims) (the "Objection") filed by Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "Debtors").  In support of this Response, the VLSG respectfully represents as follows:

### BACKGROUND

1. The VLSG is comprised of a group of potentially responsible parties who are potentially responsible under the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended ("CERCLA") for response costs at the North Sanitary Landfill

1883552v1

1925091.1

Superfund Site (the "Site") in Dayton, Ohio.  The members of the VLSG are: (i) TRW, Inc., successor-in-interest to Kelsey-Hayes Company and Dayton Walther, (ii) Cargill, Inc., (iii) NCR Corporation, (iv) The Standard Register Company, (v) Flowserve Corporation, successor-in-interest to The Duriron Company, (vi) Waste Management of Ohio, Inc., and (vii) Northrop Grumman Systems Corporation (formerly Northrop Grumman Space & Mission System Corporation), successor-in-interest to Globe Motors, Inc. (collectively, the "Members").

       2.      On January 21, 1995, the Ohio Environmental Protection Agency (the "Ohio EPA") issued a Director's Final Findings and Orders with respect to the Site (the "FFO").  The FFO provides for the evaluation and development of a Remedial Investigation and Feasibility Study (the "RIFS") for the Site.  A copy of the FFO is attached to the VLSG FFO Claim (as defined infra) as Exhibit A-2.

       3.      In order to carry out the terms and conditions of the FFO and perform the RIFS, the Members entered into the (i) Valleycrest Landfill Site Participation Agreement, dated January 12, 1995, as amended by that certain First Amended Valleycrest Landfill Site Participation Agreement, dated May 22, 1998 (the "Original Agreement"), and (ii) the Valleycrest Landfill Site Governmental Entity Participation Agreement, dated on or about January 5, 1999 (the "Second Agreement"), and (iii) the Amendment to Valleycrest Landfill Site Governmental Entity Participation Agreement and the First Amended Valleycrest Landfill Site Participation Agreement, dated on or about May 2000 (the "Master Amendment") (the Original Agreement, the Second Agreement, and the Master Amendment herein are referred to collectively as the "Participation Agreements").  The Participation Agreements are attached to the VLSG FFO Claim as Exhibit A-1.

2

4.      The Debtor is a former member of the VLSG and a party to the Participation Agreements.  The Participation Agreements allocated a percentage share of the costs and expenses in performing the RIFS to each member of the VLSG.  The Debtor's allocation percentage is 21.9375%[1]  During the term of the Participation Agreement, each of the parties were issued periodic assessments by de maximis, the VLSG coordinator of the Site work ("de maximis"), to cover the costs and expenses (as set forth in the Participation Agreements) incurred in connection with complying with the FFO, RIFS and the Participation Agreements. Certain assessments have not been paid by the Debtor.  The VLSG has contributed additional amounts to cover the unpaid prepetition and postpetition assessments of the Debtor for the Site.

5.      On November 24, 2009, the VLSG filed its proof of claim (which was assigned number 50584) for the FFOS and RIFS costs at the Site in the amount of $422,008 (the "VLSG FFO Claim" or "Claim 50584"), representing $195,478 of costs incurred, but unpaid by the Debtor but which were paid by the VLSG, and $226,530.35 of costs to be incurred in completing the RIFS.  (See Ex. A-4 attached to VLSG FFO Claim.)

6.      On January 28, 2011, the Debtors filed the Objection to Claim 50584 and listed it as a general unsecured claim in the amount of $195,478.  However, as shown in the report from de maximis, attached hereto as Exhibit 1, the Debtor, as of January 28, 2011, has incurred $420,938[2] in unpaid FFO costs.

7.      On November 24, 2009, the VLSG filed its proof of claim for remediation costs at the Site in the amount of $12,270,740; the claim was assigned the number 50586 (the "VLSG RDRA Claim" or "Claim 50586").

---

[1] See Exhibit D to the Master Amendment.
[2] This amount does not include any estimate of future costs to be incurred by the Debtor to complete the RIFS.

3

1925091.1

8.      Pursuant to the Remediation Report and cost estimate issued by de maximis, attached hereto as Exhibit 2, it is estimated that the cost of implementing a remedy at the Site will be $75.6 million (the "Remediation Cost Estimate").  Based on the Debtor's agreed upon allocation set forth in the Participation Agreements, the Debtor's share of Remediation Cost should be at least 21.9375% or $16,584,750.

9.      On January 28, 2011, the Debtors filed the Objection and listed the VLSG RDRA Claim as a contingent co-liability claim and reclassified the amount of the VLSG RDRA as $0.00.

## THE DEBTORS' OBJECTION

10.     The Debtors' Objection asserts that the VLSG RDRA Claim is a contribution claim pursuant to section 502(e)(1)(B) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), see paragraph 1 of the Objection.  To establish the co-liability status, on Exhibit A to the Objection, the Debtors note that the "Surviving Creditor [is the] United States Environmental Protection Agency".

11.     On November 28, 2009, the Environmental Protection Agency (the "EPA") filed a proof of claim in the Debtors' bankruptcy case (Claim Number 64064) (the "EPA Claim"). The EPA Claim sets forth over forty-five sites where the Debtors are liable to the EPA for various penalties, costs, and remedies.  The Valleycrest Site is not included in the EPA Claims.

### I. ARGUMENT REGARDING VLSG RDRA CLAIM FOR REMEDIATION COSTS

**A.    The Debtors Have a Recognized Pre-Petition Liability**

12.     The VLSG RDRA Claim should be allowed against the Debtors under section 1123(a)(4) of the Bankruptcy Code.  To disallow the VLSG RDRA Claim while concurrently

4

allowing the EPA Claim for similarly situated sites would be in direct contravention of the Bankruptcy Code's requirement that claimants within the same class be treated equally.

13. Section 1123(a)(4) of the Bankruptcy Code states that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Thus, under its plain language, "the text of § 1123(a)(4) mandates that a confirmable plan provide the "same treatment" for class members." *In re Sentinel Mgmt. Group*, 398 B.R. 281, 304 (Bankr. N.D. Ill. 2008).

14. Valleycrest and the EPA are similarly situated in that both are asserting general unsecured claims for environmental liabilities. The Debtors are attempting to prevent the allowance of the VLSG RDRA Claim for Valleycrest while allowing EPA's Claim for similarly situated sites. Therefore, the VLSG RDRA Claim should be allowed in the same manner as the EPA Claim for similarly situated sites in order to satisfy section 1123(a)(4).

15. This Court has stated that "the key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity." *In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008). Courts have found this to mean that while some claimants in the same class may settle and therefore receive a different dollar amount allowance than other claimants in that class, the process and opportunity for satisfying and allowing similar claims must remain equal. *See In re Central Medical Center, Inc.*, 122 B.R. 568, 575 (Bankr. E.D. Mo. 1990) ("The parties have presented the issue of whether Section 1123(a)(4) requires a plan to subject class members to the same process for claim satisfaction, or whether that process must yield the same pecuniary result for each class member. This Court chooses the former interpretation."). Under this standard, by attempting to object to the VLSG

5

1925091.1

RDRA Claim while allowing the EPA Claim for similarly situated sites, Valleycrest is denied the same opportunity and process as the EPA to have its claim satisfied, and therefore its treatment is inequitable and in violation of section 1123(a)(4).

16. Thus, Valleycrest requests that this Court accord the VLSG RDRA Claim the same treatment and process for satisfaction as the EPA Claim for similarly situated sites in accordance with section 1123(a)(4) of the Bankruptcy Code.

**B.    Section 502 is not Applicable to the VLSG RDRA Claim.**

17. Section 502(e)(1)(B) of the Bankruptcy Code provides, in relevant part:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that …such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1)(B). All three elements must be met in order for a claim to be subject to disallowance pursuant to § 502(e)(1)(B): "First, the claim must be for reimbursement or contribution. Second, the party asserting the claim must be liable with the debtor on the claim. Third, the claim must be contingent at the time of its allowance or disallowance." *In re Drexel Burnham Lambert Group Inc. ("Drexel I"),* 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992).

18. The well-recognized public policy motivations behind § 502(e)(1)(B) are two-fold. First, Congress sought to prevent competition between a primary and secondary creditor for the "limited proceeds in the estate." *In re Wedtech Corp.*, 85 B.R. 285, 289 n.4 (Bankr. S.D.N.Y. 1988) (*"Wedtech I"*) (quoting HR Rep. No. 95-595, 95th Cong., 1st Sess. 354 (1977). Second, Congress enacted § 502(e)(1)(B) to protect debtors from having to make duplicative distributions of estate assets on the basis of contingent claims.

6

### (1) Section 502 is not Applicable to the VLSG RDRA Claim for Costs to be Incurred at the Valleycrest Site

19. The second prong of 502(e)(1)(B) asks whether a debtor is "liable with" the claimant. *In re GCO Services, LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005). This prong requires "a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *Id.*, *citing Wedtech I*, 85 B.R. at 290. Courts have held that claims for contribution under CERCLA 113(f) satisfy the co-liability requirement where the underlying cleanup liability of the claimant is legally compelled in some fashion such as a lawsuit or the issuance of a so-called "PRP notice" from an agency such as the EPA. In other words, co-liability requires some compulsion by a government agency to clean-up. *See In re Hemingway Transp. Inc.,* 126 B.R. 656, 662 (D. Mass. 1991) (PRP letter to claimant and debtor suffices to establish co-liability).

20. The public policy rationale for disallowing a claim that is subject to joint liability is to prevent double payment by the debtors on account of the same liability. *See, e.g., In re Lyondell Chemical Company*, 2011 Bankr. LEXIS 10, at *45 (Bankr. S.D.N.Y., January 4, 2011). This rationale was at the heart of the decisions to disallow the claims that are the subject of the Objection. *See, e.g., In re Chemtura Corporation*, 2011 Bankr. LEXIS 88, at *49-64 (Bankr. S.D.N.Y., January 13, 2011). In *Chemtura*, the Private Party Claims were premised on joint liability under the cost recovery aspect of CERCLA section 107(a), as opposed to the requirements of contribution under section 113(f) of CERCLA. *Id.* at *49. As the Debtors had agreements with the EPA and state authorities in which there existed allowed claims for environmental liabilities, and the Private Parties sought contribution on the full amount of their claims, the claims of the Private Parties would subject the Debtors to the type of double payment that section 502(e)(1)(B) was created to prevent. *Id.* at *54.

7

1925091.1

21. On November 28, 2009, the EPA filed a proof of claim, which set forth over forty-five sites where the Debtors are liable to the EPA for various penalties, costs, and remedies. The Valleycrest Site is not included in the EPA Claim.

22. There is no EPA Claim against the Debtors for the Valleycrest Site, and as a result, the EPA cannot recover any portion of the cleanup costs incurred by the VLSG at the Valleycrest Site. Logically, the Debtors cannot be liable then to the EPA for any amount with respect to the VLSG's cleanup of the Valleycrest Site. The VLSG Claim against the Debtors is a direct claim for established costs representing the Debtors' proportionate share for the remediation costs at the Valleycrest Site.

23. Therefore, there is no risk of double payment from the Debtor (to the EPA and VLSG), and the VLSG RDRA Claim should not be disallowed under § 502(e)(1)(B).

## II. ARGUMENT REGARDING VLSG FFO CLAIM

**A.    The VLSG FFO Claim is a Contract Claim.**

12. The Participation Agreements are contracts and to date, the Debtor has not rejected the Participation Agreements. Accordingly, the VLSG FFO Claim should be recognized as a general unsecured claim in the amount of $420,938.00 in accordance with the terms and conditions of the Participation Agreements.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the VLSG respectfully requests that the Court (i) overrule the Objection, (ii) allow the VLSG RDRA Claim as a general unsecured claim in the amount of $16,584,750 (iii) allow the VLSG FFO Claim as a general unsecured claim in the amount of $420,938.00 and (iv) grant the VLSG such other and further relief as this Court deems just, proper and equitable.

8

1925091.1

| | |
|---|---|
| Dated: New York, New York<br>February 22, 2011 | POLSINELLI SHUGHART PC<br><br>       */s/ Jason A. Nagi*       <br>Jason A. Nagi<br>7 Penn Plaza, Suite 600<br>New York, New York 10001<br>Tel: (212) 644-2092<br>Fax: (212) 684-0197<br>jnagi@polsinelli.com<br><br>-and-<br><br>DINSMORE & SHOHL LLP<br><br>Vincent B. Stamp (*pro hac vice* to be submitted)<br>Tim J. Robinson (*pro hac vice* to be submitted)<br>255 East Fifth Street, Suite 1900<br>Cincinnati, Ohio  45202<br>Tel:  (513) 977-8200<br>Fax:  (513) 977-8141<br>vince.stamp@dinslaw.com<br>tim.robinson@dinslaw.com<br><br>Attorneys for Valleycrest<br>Landfill Site Group |

9

1925091.1