Adam H. Isenberg (AI9497)
**SAUL EWING LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8662
Facsimile: (215) 972-1853
Email: aisenberg@saul.com

and

Mark Stevens
**LANGSAM STEVENS & SILVER LLP**
1616 Walnut Street, Suite 1700
Philadelphia, PA 19103-5319
Telephone: (215) 732-3255
Facsimile: (215) 732-3260
mstevens@langsamstevens.com

Attorneys for Chemclene Site Defense Group

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| **In re** | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, f/k/a **General Motors Corp.,** *et al.* | Case No. 09-50026 (REG) |
| | (Jointly Administered) |
| Debtors. | |

---------------------------------------------------------------x

### RESPONSE OF CHEMCLENE SITE DEFENSE GROUP TO DEBTORS' 208th OMNIBUS OBJECTION TO CLAIMS

Chemclene Site Defense Group ("CSDG"), by and through its undersigned attorneys, hereby responds to the Debtors' 208th Omnibus Objection to Claims (the "Objection") as follows:

#### Background

1. On September 8, 1983, the United States Environmental Protection Agency (the "EPA") issued a final rule pursuant to its powers under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, which added a

1298822.4 2/22/11

site located at 258 N. Phoenixville Pike, in East Whiteland Township, Chester County, Pennsylvania (the "Malvern Site") to the National Priorities List. This Malvern Site is sometimes known as the "Malvern TCE Superfund Site," or the "Chemclene Site."

2. The Malvern Site is owned by Chemclene Corporation.

3. In November 1996, the EPA advised certain parties that, based on documents received from the Chemclene Corporation, it believed them to be potentially responsible parties ("PRP's") under CERCLA for the environmental conditions at the Malvern Site. The EPA encouraged the parties voluntarily to perform or finance the response activities that would be indentified in a Record of Decision ("ROD") for the Malvern Site. The EPA released its Remedial Investigation/Feasibility Study for the Malvern Site in June 1997. The proposed plan for the Malvern Site was released in July 1997.

4. The EPA issued its ROD for the Malvern Site on November 27, 1997 and, in May 1998, issued Special Notice letters inviting the recipients to enter into negotiations to fund and perform the ROD for the Malvern Site. The EPA sent other letters to PRP's at the Malvern Site that it considered to be *de minimis* parties.

5. The foregoing actions led to the formation of CSDG, pursuant to a Potentially Responsible Party Agreement that was executed beginning in July-August 1998 (as amended, the "PRP Agreement").

6. In 1999, the members of CSDG, together with the EPA and the Pennsylvania Department of Environmental Protection ("PADEP"), entered into a Consent Decree (the "Consent Decree"), which was filed with and approved by the United States District Court for the District of Pennsylvania in case no. 99-4402. Among other things, the Consent Decree contains the agreement of the non-governmental parties thereto (i.e., those parties other than the EPA and PADEP) to

finance and perform the Work (as specified in the Consent Decree) with respect to the environmental clean-up of the Malvern Site.

7. Motors Liquidation Company f/k/a General Motors Corporation ("MLC"), one of the Debtors herein, is a signatory to the Consent Decree and the PRP Agreement. Based upon the PRP Agreement, MLC is liable for 4.25% of the Shared Costs (as defined in the PRP Agreement) with respect to the Malvern Site.

### The Claim

8. On or about November 27, 2009, CSDG filed the proof of claim attached hereto as Exhibit "A" (the "CSDG Claim"). The CSDG Claim seeks allowance of no less than $401,983.50 on account of amounts owed by MLC in connection with the Malvern Site. Attached as exhibits to the CSDG Claim are, *inter alia*, copies of the Consent Decree and the PRP Agreement.

9. A claim relating to the Malvern Site also was filed by the United States of America on behalf of the EPA. This claim (no. 64064) (hereinafter, the "EPA Claim") contains certain protective language that is relevant to the Objection. In relevant part, the EPA Claim states as follows:

> with respect to equitable remedies that are not within the Bankruptcy Code's definition of "claim", 11 U.S.C. § 101(5), this Proof of Claim is filed only in a protective fashion.

See Exhibit "B" hereto (EPA Claim), at p. 2.[1]

10. Upon information and belief, the issue of whether the EPA's rights with respect to the Malvern Site are "claims," within the meaning of the Bankruptcy Code, has not been adjudicated or otherwise resolved.

---

[1] Due to the length of the EPA Claim, only selected portions are attached.

### The Objection

11. On or about January 28, 2011, the Debtors filed the Objection, which seeks the disallowance of the CSDG Claim, among other environmental claims, pursuant to Section 502(e)(1)(B) of the Bankruptcy Code. In support of their Objection, the Debtors rely upon the Court's recent decisions in the *Lyondell Chemical* and *Chemtura* cases, which consider Section 502(e)(1)(B) in the context of objections to environmental claims. See Objection, at p. 2.

12. CSDG hereby responds to the Objection as follows.

### Response

13. The CSDG Claim cannot be disallowable under Section 502(e)(1)(B) unless, among other things, CSDG is liable with a Debtor on "the claim of a creditor." See 11 U.S.C. § 502(e)(1)(B). The Debtors contend that the creditor to whom CSDG and MLC are jointly liable is the EPA. See Objection, at Exhibit "A" (p. 5) (identifying "surviving claim" as the EPA Claim).

14. This contention is not self-apparent. In fact, whether or not the EPA holds a "claim" with respect to the Malvern Site has not yet been determined; as set forth above, the EPA has reserved the issue as to whether its rights constitute "claims" for purposes of the Bankruptcy Code, and has filed its claim solely on a protective basis. Clearly, if the EPA does not hold a "claim" with respect to the Malvern Site, it cannot be a "creditor" for purposes of Section 502(e)(1)(B). See 11 U.S.C. § 101(10) (defining "creditor" as "entity that has a claim against the debtor . . ."). Without a creditor to which CSDG can be jointly liable with one or more of the Debtors, Section 502(e)(1)(B) cannot be the basis for the disallowance of the CSDG Claim. CSDG accordingly submits that consideration of the Objection must be deferred until there has been an adjudication of whether the EPA has a "claim", for purposes of the Bankruptcy Code, with respect to the Malvern Site.

15.     Deferral of consideration of the Objection also is appropriate in light of the purpose of Section 502(e)(1)(B), which is to prevent "double dipping" – that is, preventing multiple parties from recovering on essentially the same claim. See In re APCO Liquidating Trust, 370 B.R. 625, 634 (Bankr. D. Del. 2007) ("The sole purpose served by § 502(e)(1)(B) is to preclude redundant recoveries...." (internal quotation omitted)). Unless and until the EPA is allowed a claim on account of the Malvern Site, the Court cannot ensure that disallowance of the CSDG Claim will be consistent with the purpose of Section 502(e)(1)(B).

16.     Indeed, the appropriateness of deferring the adjudication of the Objection is highlighted by the Court's decisions in the *Lyondell* and *Chemtura* cases, upon which the Debtors rely heavily in their Objection. See Objection, at p. 2. ("The Debtors assert that the [*Lyondell Chemical* and *Chemtura Corporation*] Decisions are directly on point and controlling in most respects because the [claims] at issue in [the] Objection generally are the same type of private party claims disallowed by the Court in the [*Lyondell Chemical* and *Chemtura Corporation*] Decisions.") Significantly, in each of the *Lyondell* and *Chemtura* cases, the Court's adjudication of contested environmental claims <u>did not occur until the debtor had entered into a global settlement agreement with the EPA</u> – i.e., one that resolved the debtor's obligations with respect to, among other things, non-owned sites. Although the Debtors have entered into a settlement with the EPA with respect to certain issues (primarily, the Debtors' liabilities with respect to *owned* sites)[2], the rights and obligations of the Debtors and the EPA regarding environmental sites *not owned* by the Debtors (such as the Malvern Site) have not yet been resolved. CSDG respectfully submits that the Court should defer any ruling on the Objection, at least insofar as it relates to claims on account of non-

---

[2]     Under the terms of the Environmental Response Trust Consent Decree and Settlement Agreement, as attached to the Debtors' proposed plan at Exhibit "C" (the "EPA Settlement Agreement"), the Debtors and the EPA have resolved, subject to Court approval, their disputes regarding the "Properties." Upon information and belief, each of the Properties is owned by the Debtors (or previously was owned by the Debtors). EPA Settlement Agreement, at p. 2. The EPA Settlement Agreement expressly reserves "all rights with respect to any site that is not a Property". EPA Settlement Agreement, ¶ 100(vii), at p. 60.

owned sites, until such rights and liabilities have been resolved. Only when such a resolution has occurred will there be a determination as to whether the EPA rights against the Debtors' constitute "claims" and, accordingly, whether allowance of the CSDG Claim will result in "double-dipping."

17. Finally, and in any event, the Objection should be overruled to the extent the CSDG Claim is based on past costs. As of the date of the scheduled hearing on the Objection, the Debtors will be in arrears in the amount of approximately $103,339.50 of cash calls with respect to the Malvern Site.[3] At a minimum, this portion of the Trust's Claim is not "contingent", and cannot be subject to disallowance under Section 502(e)(1)(B).

---

[3] MLC has not paid its share (4.25%) of the following CSDG cash calls: $1,200,000 (March 2010); $28,000 (August 2010); $25,000 (December 2010); $25,000 (December 2010) (1/23rd); and $1,000,000 (subject to adjustment) (February 2011).

WHEREFORE, the Objection, as it relates to CSDG's Claim, should be overruled, and the CSDG Claim should be allowed in its entirety.

Respectfully submitted,

SAUL EWING LLP

By: _/s/ Adam H. Isenberg_
    Adam H. Isenberg (AI9497)
    Centre Square West
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-8662
    Email: aisenberg@saul.com

and

Mark Stevens
LANGSAM STEVENS & SILVER LLP
1616 Walnut Street, Suite 1700
Philadelphia, PA 19103-5319
Telephone: (215) 732-3255
Facsimile: (215) 732-3260
mstevens@langsamstevens.com

Attorneys for Chemclene Site Defense Group

Dated: February 22, 2011