# EXHIBIT "A"

02528366
APS0659303763

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**PROOF OF CLAIM**

| Name of Debtor (Check Only One): | Case No. |
|---|---|
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

Your Claim is Scheduled As Follows:

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): CHEMCLENE SITE DEFENSE GROUP

Name and address where notices should be sent:

CHEMCLENE SITE DEFENSE GROUP
C/O LANGSAM STEVENS & MORRIS
1616 WALNUT ST STE 612
PHILADELPHIA, PA 19103-5308

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Telephone number: 215-732-3255
Email Address: mstevens@langsamstevens.com

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file it again.

**1. Amount of Claim as of Date Case Filed, June 1, 2009:** $ *no less than #401,983.50  See Statement*

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Environmental clean-up at Malvern TCE Superfund Site
*(See instruction #2 on reverse side.)*

**3. Last four digits of any number by which creditor identifies debtor:** _____

3a. Debtor may have scheduled account as: _____
*(See instruction #3a on reverse side.)*

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe:

Value of Property: $_____  Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____

Basis for perfection: _____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment.

**Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 11/25/04

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Modified B10 (GCG) (12/08)

### Statement in Support of Proof of Claim

The within claim represents the liability of Motors Liquidation Company f/k/a General Motors Corporation (the "Debtor") to the Chemclene Site Defense Group (the "Claimant") with respect to the Malvern TCE Superfund Site (the "Site"). The Claimant consists of those entities (the "Settling Performing Defendants") who are all signatories to a consent decree with the United States of America and the Commonwealth of Pennsylvania in connection with the Site (the "Consent Decree"), as well as a PRP Agreement related thereto. Under the Consent Decree, the Settling Performing Defendants, including the Debtor, accept that the obligation to finance and perform certain work related to the remediation of the Site is joint and several. Under the PRP Agreement, the Settling Performing Defendants, including the Debtor, accept the obligations of a joint response to the demands of the state and federal governments. Claimants are entitled to enforce Debtor's obligations under both the Consent Decree and the PRP Agreement.

A copy of the Consent Decree is attached as Exhibit "A". Attached as Exhibit "B" is a list of the Settling Performing Defendants. A copy of the parties' PRP Agreement is attached as Exhibit "C".

Under the terms of the foregoing documents, the Debtor's liability with respect to the Site is 4.25% of the total response and administrative costs, which can only be estimated at present time as remediation at the Site is ongoing. The current estimate of total past and future response and administrative costs is $12,553,000.00. The Debtor has already paid a portion of its liability, crediting the Debtor $131,519.00. **Accordingly, the total amount of this claim is no less than $401,983.50.** Claimant expressly reserves the right to amend this claim.

Additional information is available upon request. All notices with respect to this claim should be sent to:

**Chemclene Site Defense Group**
**c/o Mark A. Stevens, Esq.**
**Langsam Stevens & Silver LLP**
**1616 Walnut Street, Suite 1700**
**Philadelphia, PA 19103**

# EXHIBIT "A"

SW-000790

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF PENNSYLVANIA ) ) ) ) ) | |
| Plaintiffs, ) ) | CIVIL ACTION NO. |
| v. ) ) | |
| SETTLING DEFENDANTS, ) ) | |
| Defendants. ) ) | |

### CONSENT DECREE

SMW00871

SW-000791

i

# TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -

II.   JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

III.  PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

IV.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

V.    GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -

VII.  REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 31 -

VIII. TECHNICAL IMPRACTICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-

IX.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . - 40 -

X.    ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . - 42 -

XI.   REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 47 -

XII.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . - 50 -

XIII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 52 -

XIV.  ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . - 54 -

XV.   CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 57 -

XVI.  EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 61 -

XVII. REIMBURSEMENT OF RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . - 62 -

XVIII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . - 75 -

XIX.  FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 78 -

XX.   DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 81 -

SMW00872

SW-000792

ii

XXI. STIPULATED PENALTIES ................................................... -85-

XXII. COVENANTS BY PLAINTIFFS ............................................. -89-

XXIII. COVENANTS BY SETTLING DEFENDANTS
AND THE SETTLING FEDERAL AGENCY .......................... -95-

XXIV. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ......... -98-

XXV. ACCESS TO INFORMATION ............................................ -99-

XXVI. RETENTION OF RECORDS ............................................. -101-

XXVII. NOTICES AND SUBMISSIONS ........................................ -103-

XXVIII. EFFECTIVE DATE .................................................... -104-

XXIX. RETENTION OF JURISDICTION ..................................... -104-

XXX. APPENDICES ......................................................... -105-

XXXI. COMMUNITY RELATIONS ............................................ -106-

XXXII. MODIFICATION ..................................................... -106-

XXXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ........... -107-

XXXIV. SIGNATORIES/SERVICE ............................................. -107-

XXXV. RELATIONSHIP BETWEEN CONSENT ORDER
AND CONSENT DECREE ............................................ -108-

SMW00873

SW-000793

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA and )
COMMONWEALTH OF )
PENNSYLVANIA, )
 )
  Plaintiffs, )
 )    CIVIL ACTION NO.
  v. )
 )
SETTLING DEFENDANTS, )
 )
  Defendants. )
 )

CONSENT DECREE

I.  BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the

United States Environmental Protection Agency ("EPA") filed a complaint in this matter

pursuant to Sections 106 and 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607. The Commonwealth

of Pennsylvania ("Commonwealth"), on behalf of the Department of Environmental Protection

("PADEP"), also asserted claims under Section 107 of CERCLA and the Pennsylvania

Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101 et seq.

B.    The United States and the Commonwealth in their complaints seek, inter alia: (1)

reimbursement of costs incurred by EPA, the Department of Justice, and the Commonwealth for

response actions at the Malvern TCE Superfund Site ("Site") in East Whiteland Township,

Chester County, Pennsylvania, together with accrued interest; (2) a declaratory judgment against

SMW00874

SW-000794

- 2 -

Defendants for liability for future response costs; (3) performance of studies and response work by the Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"); and (4) such other relief as the Court finds appropriate.

    C.   In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the Commonwealth in August 1998, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the Commonwealth with an opportunity to participate in such negotiations and be a party to this Consent Decree.

    D.   In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Natural Resources Trustees at the United States Department of the Interior and the United States Department of Commerce- National Oceanic and Atmospheric Administration on July 22, 1998, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

    E.   The Defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaints, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim by the Settling Defendants or any claim by the Commonwealth.

    F.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the

SMW00875

SW-000795

- 3 -

National Priorities List, set forth at 40 C.F.R. Part 300, Appendix "B," by publication in the

Federal Register on September 8, 1983, 48 Fed. Reg. 40658.

G.    In response to a release or a substantial threat of a release of a hazardous substance(s)

at or from the Site, EPA commenced in February 1996, a Remedial Investigation and Feasibility

Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

H.    EPA completed a Remedial Investigation ("RI") Report in January 1997, and EPA

issued a Feasibility Study ("FS") Report in June 1997.

I.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the

completion of the FS and of the proposed plan for remedial action on June 23, 1997, in a major

local newspaper of general circulation.  EPA provided an opportunity for written and oral

comments from the public on the proposed plan for remedial action.  A copy of the transcript of

the public meeting is available to the public as part of the administrative record upon which the

Regional Administrator based the selection of the response action.

J.    The decision by EPA on the remedial action to be implemented at the Site is embodied

in a final Record of Decision ("ROD"), executed on November 26, 1997, on which the

Commonwealth has given its conditional concurrence as set forth in a November 26, 1997, letter

from PADEP Southeast Regional Director to EPA Region III Acting Director, Hazardous Waste

Management Division. The ROD includes EPA's explanation for any significant differences

between the final plan and the proposed plan as well as a responsiveness summary to the public

comments.  Notice of the final plan was published in accordance with Section 117(b) of

CERCLA.

K.    Based on the information presently available to EPA and the Commonwealth, EPA and

SMW00876

SW-000796

- 4 -

the Commonwealth believe that the Work will be properly and promptly conducted by the

Settling Defendants if conducted in accordance with the requirements of the ROD and of this

Consent Decree.

L.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by

the ROD and the Work to be performed by the Settling Defendants shall constitute a response

action taken or ordered by the President.

M.    The Parties recognize, and the Court by entering this Consent Decree finds, that this

Consent Decree has been negotiated by the Parties in good faith and implementation of this

Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated

litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public

interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also

has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent

Decree and the underlying complaints, Settling Defendants waive all objections and defenses that

they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall

not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce

this Consent Decree.

SMW00877

SW-000797

- 5 -

### III. PARTIES BOUND

2.   This Consent Decree applies to and is binding upon the United States and the

Commonwealth and upon Settling Defendants and their heirs, successors and assigns.  Any

change in ownership or corporate status of a Settling Defendant including, but not limited to, any

transfer of assets or real or personal property, shall in no way alter such Settling Defendant's

responsibilities under this Consent Decree.

3.   Settling Defendants shall provide a copy of this Consent Decree to each prime

contractor hired to perform the Work (as defined below) required by this Consent Decree and to

each entity representing any Settling Defendant with respect to the Site or the Work and shall

condition all contracts entered into hereunder upon performance of the Work in conformity with

the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written

notice of the Consent Decree to all subcontractors hired to perform any portion of the Work

required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for

ensuring that their contractors and subcontractors perform the Work contemplated herein in

accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this

Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual

relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA,

42 U.S.C. § 9607(b)(3).

### IV. DEFINITIONS

4.   Unless otherwise expressly provided herein, terms used in this Consent Decree which

are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning

assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in

SMW00878

SW-000798

- 6 -

this Consent Decree or in the appendices attached hereto and incorporated hereunder, the

following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and

Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

"Commonwealth" shall mean the Commonwealth of Pennsylvania.

"Commonwealth Future Response Costs" shall mean all costs, including, but not limited to,

direct and indirect costs, that the Commonwealth incurs in reviewing or developing plans, reports

and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing,

overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs,

contractor costs, travel costs, laboratory costs, and any costs that may be incurred by the

Commonwealth pursuant to Sections VII, X (including, but not limited to, attorneys fees and any

monies paid to secure access and/or to secure institutional controls, including the amount of just

compensation), XVI, and Paragraph 105 of Section XXII; plus costs that the Commonwealth

incurs in reviewing requests, if any, by the Settling Defendants to modify or waive compliance

with any Performance Standard, Work or provisions of the ROD, and in reviewing proposed data

and information collection activities described in Paragraph 38(e) of this Consent Decree;

however Commonwealth Future Response Costs shall not include costs incurred to secure access

and/or secure institutional controls from Chemclene Corporation, Springridge Management

Corporation, Lloyd Balderston, and/or Ruth Balderston, unless such parties are found not to be

liable parties in connection with the Site pursuant to Section 107(a) of CERCLA.

Commonwealth Future Response Costs also shall include all Interim Response Costs incurred by

the Commonwealth and all Interest on Commonwealth Past Response Costs that accrues

SMW00879

SW-000799

- 7 -

pursuant to 42 U.S.C. § 9607(a) during the period from November 12, 1998, to the date of entry

of this Consent Decree.

"Commonwealth Past Response Costs" shall mean all costs, including, but not limited to,

direct and indirect costs, that the Commonwealth paid at or in connection with the Site through

November 11, 1998, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. §

9607(a).

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in

Section XXX).  In the event of conflict between this Decree and any appendix, this Decree shall

control.

"Day" shall mean a calendar day unless expressly stated to be a Working Day.  "Working

Day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any

period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday,

or Federal holiday, the period shall run until the close of business of the next Working Day.

"Duly Authorized Representative" shall mean a person set forth or designated in accordance

with the procedures set forth in 40 C.F.R. § 270.11(b).

"EPA" shall mean the United States Environmental Protection Agency and any successor

departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and

indirect costs, that are not inconsistent with the NCP that the United States incurs in reviewing or

developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or

otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited

to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to

SMW00880

SW-000800

- 8 -

Sections VII, X (including, but not limited to, attorneys fees and any monies paid to secure

access and/or to secure institutional controls, including the amount of just compensation), XVI,

and Paragraph 105 of Section XXII; plus costs that the United States incurs in reviewing

requests, if any, by the Settling Defendants to modify or waive compliance with any

Performance Standard, Work or provisions of the ROD, and in reviewing proposed data and

information collection activities described in Paragraph 38(e) of this Consent Decree; however,

Future Response Costs shall not include costs incurred to secure access and/or secure

institutional controls from Chemclene Corporation, Springridge Management Corporation, Lloyd

Balderston, and/or Ruth Balderston, unless such parties are found not to be liable parties in

connection with the Site pursuant to Section 107(a) of CERCLA. Future Response Costs shall

also include all Interim Response Costs.

"HSCA" shall mean the Pennsylvania Hazardous Sites Cleanup Act, Act of October 18,

1988, P.L. 756, No. 108, as amended, 35 P.S. §§ 6020.101 et seq.

"Institutional Controls" shall mean land and/or water use restrictions including, but not

limited to, restrictions in the form of contractual agreements, restrictive easements/covenants that

run with the land, and governmental controls.

"Interim Response Costs" shall mean all costs, including direct and indirect costs: (i) paid by

the United States in connection with the Site between July 1, 1998, and the effective date of this

Consent Decree; (ii) paid by the United States prior to July 1, 1998, but not included in the

August 7, 1998 cost report; or (iii) incurred by the United States prior to the effective date of this

Consent Decree but paid after that date; (iv) paid by the Commonwealth in connection with the

Site between November 11, 1998 and the effective date of this Consent Decree; or (v) incurred

SMW00881

SW-000801

- 9 -

by the Commonwealth prior to the effective date of this Consent Decree but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

"Matters Addressed" shall mean all response actions taken or to be taken and all response costs incurred or to be incurred by the United States, the Commonwealth, or any other person with respect to the Site. "Matters Addressed" in this settlement do not include those response costs or response actions as to which the United States or, as appropriate, the Commonwealth, has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States or the Commonwealth asserts rights against Settling Defendants coming within the scope of such reservation.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree.

"Oversight Costs" shall mean, for purposes of this Consent Decree only, that portion of Future Response Costs incurred by EPA or DOJ in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in

SMW00882

SW-000802

- 10 -

overseeing implementation of the Work; however, Oversight Costs do not include, inter alia:  (1)

the costs of direct action by EPA to investigate, evaluate or monitor a release, threat of release, or

a danger posed by such release or threat of release; (2) the costs of litigation or other enforcement

activities; (3) the costs of determining the need for or taking direct response actions by EPA to

conduct a removal or remedial action at the Site, including but not limited to, the cost of

activities by EPA pursuant to Sections VII (Remedy Review); and XVI (Emergency Response)

of this Consent Decree; (4) the cost of undertaking the five-year review set forth in Section VII

(Remedy Review) or otherwise determining whether or to what extent the Work has reduced the

release or threat of release at the Site; (5) the cost of enforcing the terms of this Consent Decree,

including all costs incurred in connection with Dispute Resolution pursuant to Section XX

(Dispute Resolution); (6) the cost of securing access under Section X (Access and Institutional

Controls); and (7) the cost of work performed under Section VI (Performance of Work by

Settling Defendants), Paragraph 12 of this Consent Decree.

"Owner, Operator, or Lessee of Residential Property" shall mean a person who owns,

operates, manages, or leases Residential Property and who uses or allows the use of the

Residential Property exclusively for residential purposes.

"PADEP" shall mean the Pennsylvania Department of Environmental Protection and any

successor departments or agencies of the Commonwealth.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or

an upper case letter.

"Parties" shall mean the United States, the Commonwealth of Pennsylvania, the Settling

Defendants, and the Settling Federal Agency.

SMW00883

SW-000803

- 11 -

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect

costs, that the United States paid at or in connection with the Site through June 30, 1998, which

are referenced in the August 7, 1998 cost report, plus Interest on all such costs which has accrued

pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of

achievement set forth on pages 52 to 63 of the ROD attached hereto as Appendix "A" and those

that are developed by the Settling Defendants and approved by EPA in consultation with PADEP

during Remedial Design.

"Plaintiffs" shall mean the United States and the Commonwealth of Pennsylvania.

"QSF" shall mean the "Qualified Settlement Fund,"as defined in the Internal Revenue Code

of 1986, as amended, and related regulations of the United States Treasury Regulations, attached

hereto and incorporated herein as Appendix "D."

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq.

(also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the

Malvern TCE Superfund Site signed on November 26, 1997, by a delegate of the Regional

Administrator, EPA Region III, and all attachments thereto. The ROD is attached as Appendix

"A," and shall be deemed to include any ROD amendments or Explanation of Significant

Differences ("ESD").

"Remedial Action" shall mean those activities, except for Remedial Design and Operation

and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in

accordance with the final Remedial Design and Remedial Action Work Plans and other plans

SMW00884

SW-000804

- 12 -

approved by EPA in consultation with PADEP.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA in consultation with PADEP, and any amendments thereto.

"Residential Property" shall mean single or multi-family residences, including accessory land, buildings, or improvements incidental to such dwellings, which are exclusively for residential use.

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendices "B-1"("Settling Performing Defendants") and "B-2" ("Settling Partial Cash-Out Defendants").

"Settling Federal Agency" shall mean the United States Defense Logistics Agency.

"Settling Partial Cash-Out Defendants" shall mean those Settling Defendants identified in Appendix "B-2."

"Settling Parties" shall mean the Settling Defendants and the Settling Federal Agency.

"Settling Performing Defendants" shall mean those Settling Defendants identified in Appendix "B-1."

"Site" shall mean the Malvern TCE Superfund Site, including areas defined in 40 C.F.R. §

SMW00885

SW-000805

- 13 -

300.400(e), located in and adjacent to 258 N. Phoenixville Pike in Malvern, Chester County, Pennsylvania, as depicted in the ROD.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America, including its agencies, departments, and instrumentalities.

"Waste Material" shall mean: (i) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (ii) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (iii) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (iv) any "hazardous substance" under Section 103 of HSCA, 35 P.S. § 6020.103.

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXVI (Retention of Records).


## V. GENERAL PROVISIONS

5.   Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are: (i) to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants; (ii) to provide mechanisms for reimbursement of response costs of the Plaintiffs and Settling Defendants; (iii) to resolve the claims of Plaintiffs arising from the Site against Settling Defendants and the claims of the Commonwealth and Settling Defendants which have been or could have been asserted against the United States with

SMW00886

SW-000806

- 14 -

regard to this Site as provided in this Consent Decree; and (iv) to provide Settling Defendants

and the Settling Federal Agency with contribution protection pursuant to Section 113(f)(2) of

CERCLA, 42 U.S.C. § 9613(f)(2), and Section 705(c)(2) of HSCA, 35 Pa. Stat. Ann. § 6020.

705(c)(2), and as provided in this Consent Decree.

6.    Commitments by Settling Defendants and the Settling Federal Agency

      a.    Settling Defendants shall finance and perform the Work as specified in Section

VI of this Consent Decree, and all work plans or other plans, standards, specifications, and

schedules set forth herein or as developed by the Settling Defendants and approved by EPA

pursuant to this Consent Decree. Plaintiffs recognize that Settling Defendants may be eligible

for reimbursement of response costs, as set forth in Section XVII of this Consent Decree. This

obligation may be discharged in accordance with Paragraph 6.c. through g. of this Consent

Decree. Settling Defendants also shall, as provided in this Consent Decree, reimburse: i) the

United States for Future Response Costs, with the exception of future costs of EPA oversight for

which Paragraph 67.a. of this Consent Decree shall apply; and ii) the Commonwealth for

Commonwealth Past Response Costs and Commonwealth Future Response Costs.

      b.    The obligations of Settling Defendants to finance and perform the Work and to

pay amounts owed the United States and the Commonwealth under this Consent Decree are joint

and several. In the event of the insolvency or other failure of any one or more Settling

Defendants to implement the requirements of this Consent Decree, the remaining Settling

Defendants shall complete all such requirements. In the event that any of the Settling Defendants

files for bankruptcy or is placed involuntarily in bankruptcy proceedings, such Settling

Defendant shall notify the United States within three (3) days of such filing.

SMW00887

SW-000807

- 15 -

    c.   Notwithstanding the joint and several nature of the obligations under this Consent Decree, the United States and the Commonwealth recognize that Settling Parties have entered into agreements wherein Settling Performing Defendants have assumed the obligations set forth in this Consent Decree to perform the Work at the Site and make all payments required under Section XIV (Assurance of Ability to Complete Work), Section XVII, Paragraph 67 (Future Response Costs), Section XVIII (Indemnification and Insurance), and Section XXI (Stipulated Penalties). Subject to their reservations of rights set forth in Section XXII, the United States and the Commonwealth will accept full performance of the obligations set forth in this Consent Decree, including the Work, as determined by EPA in consultation with PADEP, and/or full payment of assurance of ability to complete work, Future Response Costs as described in Paragraph 67 of this Consent Decree, indemnification and insurance, and stipulated penalties, as described in the preceding sentence by Settling Performing Defendants, as full performance and/or payment by all Settling Parties.

    d.   The United States and the Commonwealth agree that they will not seek either performance of the Work under Sections VI and VII or payments under Section XIV (Assurance of Ability to Complete Work), Section XVII, Paragraph 67 (Future Response Costs), Section XVIII (Indemnification and Insurance), and Section XXI (Stipulated Penalties) from the Settling Partial Cash-Out Defendants, unless EPA in consultation with PADEP determines, in its sole discretion, that Settling Performing Defendants have failed to adequately perform and/or meet payment obligations under this Consent Decree and such failure continues for a period of thirty (30) days following written notice to all Settling Parties of such failure (except that such period

SMW00888

SW-000808

- 16 -

may be reduced in the event that EPA in consultation with PADEP determines and provides

written notice to the Settling Parties that a lesser period is warranted).

e.    In the event of a failure by or on behalf of Settling Performing Defendants to

cure or correct any non-performance or non-payment within this thirty (30) day period, the

United States after consultation with the Commonwealth shall forward a written request to the

remaining Settling Parties directing that within ten (10) days of receipt of such request, Settling

Partial Cash-Out Defendants shall commence or resume performance of the obligations set forth

in this Consent Decree, including performance of the Work, and make payment owed by the

Settling Performing Defendants.

f.    EPA's determinations in consultation with PADEP under 6(d) and 6(e) above

that Settling Performing Defendants have failed to perform and/or make payments under this

paragraph are not subject to any review or challenge, judicial or otherwise, by any Settling Party

through Dispute Resolution (Section XX), or in any other manner.  Other than those limitations

outlined above, this subparagraph does not seek to limit any rights of Settling Parties to seek

dispute resolution on other matters including the assessment of stipulated penalties, that are

otherwise provided in Section XX (Dispute Resolution). This Paragraph does not apply to the

requirement of Section XXVI (Retention of Records).

g.    Without any prejudice to their right to enforce this Consent Decree against any

Settling Party, the United States and the Commonwealth recognize the following arrangements

among the Settling Parties to provide for the performance and payment obligations under this

Consent Decree:

SW-000809

- 17 -

    i.   Settling Performing Defendants shall perform the Work as required under this Consent Decree;

    ii.  --Settling Performing Defendants individually shall perform their obligations under the Chemclene Site Defense Group Potentially Responsible Party Agreement;

    iii.  Settling Partial Cash-Out Defendants shall perform their obligations under the Malvern/Chemclene Site Cash-Out Agreement, including but not limited to, paying the Settling Performing Defendants their respective payments due under, and within the time specified therein;

    iv.  The Settling Federal Agency shall pay to the Settling Performing Defendants its respective share of performance and payment obligations under this Consent Decree within the time specified in paragraph 66 of this Consent Decree and in accordance with the procedure and payment schedule set forth under Appendix F as referenced in paragraph 109(c).

    v.  Including but not limited to commencing an action under as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and Section 705(c)(2) of HSCA, 35 P.S. § 6020.705(c)(2), any Settling Party may seek enforcement of the aforementioned agreement(s), including the settlement agreement between the Settling Federal Agency and the Settling Performing Defendants defined under paragraphs 66 and 109(c);

    vi.  Payments by the Settling Federal Agency are subject to the availability of appropriated funds. No provisions of this Decree shall be interpreted as or constitute a commitment or requirement that the Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

SMW00890

SW-000810

- 18 -

7.    Compliance With Applicable Law

Subject to Paragraph 8 below, all activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.    Permits

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XIX (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state or local statute, regulation, or ordinance.

SMW00891

SW-000811

- 19 -

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9.   Selection of Contractors

    a.   Supervising Contractor

        i.   All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), IX (Quality Assurance, Sampling, and Data Analysis), and XVI (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to acceptance or disapproval by EPA after a reasonable opportunity for review and comment by the Commonwealth. Within ten (10) days of the later of (1) the date of the lodging of this Consent Decree or (2) the forty-fifth (45) Working Day after access by the Settling Defendants to the Site is obtained, Settling Defendants shall notify EPA and the Commonwealth in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. EPA will issue a notice of disapproval or acceptance of the selection of such Supervising Contractor. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and the Commonwealth and must obtain a notice of acceptance of such change from EPA, after a reasonable opportunity for review and comment by the Commonwealth, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

        ii.   If EPA disapproves the selection of a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA and the Commonwealth a list of at least three contractors, including the qualifications of each contractor, that would be acceptable to them within thirty (30) days of receipt of EPA's notice. EPA will

SMW00892

SW-000812

- 20 -

provide written notice of the names of any contractor(s) whose selection it would accept.

Settling Defendants may select any contractor from that list and shall notify EPA and the

Commonwealth of the name of the contractor selected within twenty-one (21) days of EPA's

written notice.

        iii.   If EPA fails to provide written notice of its acceptance or disapproval as

provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or

more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling

Defendants may seek relief under the provisions of Section XIX (Force Majeure) of this Consent

Decree.

      b.   <u>Other Contractors and Subcontractors</u>

        The Settling Defendants shall submit to EPA and the Commonwealth for

acceptance by EPA the names and qualifications of any additional contractors and subcontractors

they propose to use to satisfy any requirement of this Consent Decree before such contractor or

subcontractor performs any Work. If EPA does not respond with a notice accepting or

disapproving the proposal for additional contractors and subcontractors within fourteen (14) days

of receipt by EPA of Settling Defendants' selections, the proposal for additional contractors and

subcontractors shall be deemed accepted. In the event EPA disapproves any proposed contractor

or subcontractor, Settling Defendants shall submit to EPA and the Commonwealth within ten

(10) days of receipt of EPA's notice a list of at least three contractors or subcontractors, including

the qualifications of each, that would be acceptable to them. EPA will provide written notice of

SMW00893

SW-000813

- 21 -

the names of any contractor(s) or subcontractor(s) whose selection it would accept. Settling

Defendants may select any contractor or subcontractor from that list and shall notify EPA and the

Commonwealth of the name of the contractor or subcontractor selected within five (5) days of

EPA's written notice.

10.   Remedial Design/Remedial Action

a.   Within thirty (30) days after EPA's acceptance of the selection of the

Supervising Contractor pursuant to Paragraph 9, Settling Defendants shall submit to EPA and the

Commonwealth a work plan for the design of the Remedial Action at the Site ("Remedial Design

Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of

the remedy set forth in the ROD and for achievement of the Performance Standards and other

requirements set forth in the ROD and this Consent Decree. Upon its approval by EPA in

consultation with PADEP, the Remedial Design Work Plan shall be incorporated into and

become enforceable under this Consent Decree. The Settling Defendants shall also submit to

EPA and the Commonwealth, at the time the Remedial Design Work plan is submitted, a Health

and Safety Plan for field design activities which conforms to the applicable Occupational Safety

and Health Administration and EPA requirements including, but not limited to, 29 C.F.R.

§ 1910.120.

b.   The Remedial Design Work Plan shall include plans, schedules, and

methodologies for implementation of all remedial design and pre-design tasks and shall include,

at a minimum:

i.   a Site Management Plan;.

ii.   a Sampling and Analysis Plan, containing:

SMW00894

SW-000814

- 22 -

    (1)    a Field Sampling Plan; and

    (2)    a Quality Assurance Project Plan ("QAPP");

iii.   a Remedial Design Contingency Plan;

iv.   a Treatability Study Work Plan which includes, at a minimum, plans and schedules for the preparation and submission of a Treatability Study Evaluation Report and may refer to studies and experience from other sites and/or laboratory studies;

v.   plans and schedules for the preparation and submission of a Preliminary Design Submittal (the preliminary design begins with the initial design and ends with the completion of approximately 30% of the design effort) containing, at a minimum:

    (1)    a Design Criteria Report, including:

        (a)    project description;

        (b)    design requirements and provisions;

        (c)    preliminary process flow diagrams;

        (d)    operation & maintenance requirements;

    (2)    Pre-Design Investigation Report

    (3)    a Basis of Design Report, including:

        (a)    justification of design assumptions;

        (b)    a project delivery strategy;

        (c)    remedial action permits plan for off-site permits;

        (d)    preliminary easement/access requirements;

SMW00895

SW-000815

- 23 -

    (4)    preliminary Drawings and Specifications, including:

        (a)    outline of general specifications;

        (b)    preliminary schematics and drawings;

        (c)    chemical and geotechnical data (including data from pre-design activities);

    (5)    a Value Engineering Screen; and

    (6)    a preliminary Remedial Action schedule.

vi.    plans and schedules for the preparation and submission of an intermediate design submittal which shall be submitted at approximately 60% of the design effort and shall address all of EPA's comments to the preliminary design.  Preparation and submission of a 60% design submittal may, at EPA's discretion, be waived.  The 60% design submittal shall, in addition to addressing all of EPA's comments to the preliminary design, at a minimum, include:

    (1)    a revised Design Criteria Report, if necessary;

    (2)    a revised Basis of Design Report, if necessary;

    (3)    any value engineering study results;

    (4)    a revised Remedial Action schedule;

    (5)    a preliminary Remedial Action contingency plan;

    (6)    a preliminary Remedial Action Health and Safety Plan ("HASP") for EPA acceptance in consultation with PADEP;

    (7)    a preliminary Remedial Action waste management plan; and

SMW00896

SW-000816

- 24 -

(8)     a preliminary Remedial Action Sampling and Analysis Plan.

vii.    plans and schedules for the preparation and submission of a pre-final

design submittal which shall be submitted at approximately 90% of

the design effort and shall address all of EPA's comments to the

intermediate design, and, at a minimum, additionally include:

(1)     a preliminary Operation & Maintenance Plan;

(2)     a preliminary Construction Quality Assurance Plan ("CQAP")

(the CQAP, which shall detail the approach to quality

assurance during construction activities at the Site, shall

specify a quality assurance official ("QA Official"),

independent of the Supervising Contractor, to conduct a

quality assurance program during the construction phase of the

project);

(3)     a preliminary Remedial Action decontamination plan;

(4)     a draft final Remedial Action schedule;

(5)     a draft final Remedial Action contingency plan; and

(6)     a draft final Remedial Action HASP for EPA acceptance in

consultation with PADEP.

viii.   plans and schedules for the preparation and submission of a final

design submittal which shall be submitted at 100% of the design

effort and shall address all of EPA's comments to the pre-final design,

and, at a minimum, additionally include:

SMW00897

SW-000817

- 25 -

(1)    a final Remedial Action schedule;

(2)    a final Remedial Action contingency plan;

(3)    a final Remedial Action HASP for EPA acceptance in

consultation with PADEP;

(4)    a final Remedial Action waste management plan;

(5)    a preliminary Remedial Action decontamination plan and a

schedule for the submission of the final Remedial Action

decontamination plan;

(6)    a final Design Criteria Report;

(7)    a final Remedial Action Sampling and Analysis Plan (directed

at measuring progress towards meeting the Performance

Standards);

(8)    a final Basis of Design Report;

(9)    final Drawings and Specifications;

(10)    a revised Operation & Maintenance Plan and a schedule for

submission of the final Operation & Maintenance Plan;

(11)    a final Construction Quality Assurance Plan;

(12)    a final Remedial Action decontamination plan; and

(13)    a final project delivery strategy.

ix.  a Remedial Design schedule.

c.    Upon approval of the Remedial Design Work Plan by EPA, after a reasonable

opportunity for review and comment by the Commonwealth, and submittal of the Health and

SMW00898

SW-000818

- 26 -

Safety Plan for all field activities to EPA and the Commonwealth, Settling Defendants shall

implement the Remedial Design Work Plan in accordance with the schedules and methodologies

contained therein. The Settling Defendants shall submit to EPA and the Commonwealth all

plans, submittals, and other deliverables required under the approved Remedial Design Work

Plan in accordance with the approved schedule therein for review and approval pursuant to

Section XII (EPA Approval of Plans and Other Submissions). Unless otherwise approved or

directed by EPA, Settling Defendants shall not commence further Remedial Design field

activities at the Site prior to approval of the Remedial Design Work Plan.

      d.  Upon approval, approval with conditions, or modification by EPA in

consultation with PADEP, as provided in Section XII (EPA Approval of Plans and Other

Submissions), of all components of the final design submittal, the final design submittal shall

serve as the Remedial Action Work Plan and shall be enforceable under this Consent Decree.

The Settling Defendants shall implement the activities required under the Remedial Action Work

Plan in accordance with the schedules and methodologies contained therein.

      e.  The Settling Defendants shall submit all plans, submittals, or other deliverables

required under the Remedial Action Work Plan in accordance with the approved schedule for

review and approval pursuant to Section XII (EPA Approval of Plans and Other Submissions).

Unless otherwise directed by EPA or required under the Remedial Design Work Plan, the

Settling Defendants shall not commence physical activities at the Site prior to the date for

commencement set forth in the approved schedule in the Remedial Action Work Plan.

      11.  Resident Engineer. Following EPA approval, approval with conditions, or

modification by EPA, as provided in Section XII (EPA Approval of Plans and Other

SMW00899

SW-000819

- 27 -

Submissions), of all components of the final design submittal, and prior to commencement of

any on-site Work under the Remedial Action Work Plan, the Settling Defendants shall submit to

EPA the name and qualifications of a Resident Engineer to be present at the Site during

construction to ensure that the Work is performed in accordance with the approved Remedial

Action Work Plan. The Resident Engineer shall be familiar with all aspects of the Remedial

Design approved by EPA. EPA retains the right to disapprove the use of any Resident Engineer

proposed by Settling Defendants. In the event EPA disapproves the use of any proposed

Resident Engineer, Settling Defendants shall submit to EPA and the Commonwealth a list of at

least three replacements, including the qualifications of each, who would be acceptable to them

within five (5) days of receipt of EPA's notice. EPA will provide written notice of the names of

any replacements whose use it would accept. Settling Defendants may select any replacement

from the EPA notice and shall notify EPA and the Commonwealth of the name of the

replacement selected within three (3) days of EPA's written notice. Settling Defendants shall

ensure that the Resident Engineer performs on-site inspections as necessary to ensure compliance

with the approved Remedial Action Work Plan and that the results of such inspections are

promptly provided to Settling Defendants, EPA, and the Commonwealth. The Resident Engineer

may act as the QA Official.

12.    The Settling Defendants shall continue to implement the Remedial Action and O & M

until the Performance Standards are achieved and for so long thereafter as is otherwise required

under this Consent Decree.

SMW00900

SW-000820

- 28 -

13.    Modification of the Work

a.    If EPA in consultation with the Commonwealth determines that modification of

the Work is necessary to achieve and maintain the Performance Standards or to carry out and

maintain the effectiveness of the remedy set forth in the ROD, EPA in consultation with the

Commonwealth may: (i) require that such modification be incorporated into the Remedial

Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or any

other plan relating to such Work; and/or (ii) require that Settling Defendants submit a plan for

approval by EPA in consultation with the Commonwealth which incorporates such modification

to the Work and implement such approved plan; provided, however, that a modification may be

required pursuant to this Paragraph only to the extent that it is consistent with the scope of the

remedy selected in the ROD.  Nothing herein, however, shall be deemed to prevent EPA in

consultation with the Commonwealth from considering, upon the application by the Settling

Defendants, any modification to the remedy or the scope of the remedy consistent with the ROD,

provided that such modification is made in accordance with the NCP.  Any determination by

EPA to not modify the remedy or the scope of the remedy consistent with the ROD as set forth in

this Paragraph shall not be subject to review under the provisions of Section XX (Dispute

Resolution) of this Consent Decree and shall not otherwise be judicially reviewable.

b.    For the purposes of this Paragraph 13 and Paragraphs 60 and 61 only, the

"scope of the remedy selected in the ROD" means the following as referred to and described in

the ROD:

- Water Supply Remedy - Provision of public water supply, as referred to in
  Section X of the ROD.

SMW00901

SW-000821

- 29 -

- tasks employing a technology or combination of technologies discussed in
  Section X of the ROD to achieve and maintain the objectives described in the
  ROD. The technologies discussed in Section X of the ROD include:

  Main Plant Area Soils Remedy - includes capping of the Main Plant Area and
  related activities as set forth in Section X.B. of the ROD.

  Main Plant Area Groundwater Remedy - includes groundwater pump and
  treat and related activities as set forth in Section X.C. of the ROD.

  Former Disposal Area/Mounded Area Soils Remedy - includes excavation of
  soils and related activities as set forth in Section X.D. of the ROD.

  Former Disposal Area/Mounded Area Groundwater Remedy - includes
  natural attenuation of groundwater and related activities as referred to in
  Section X.E. of the ROD.

- tasks associated with monitoring of Site conditions and the effectiveness of
  the Remedial Action.

- implementation of Institutional Controls, as defined herein.

The "scope of the remedy selected in the ROD" may be modified by any subsequent

amendments to the ROD, changes reflected or to be reflected in any Explanation of Significant

Difference ("ESD"), or other modifications approved by EPA in consultation with PADEP and

not requiring a ROD amendment or ESD.

c.    If Settling Defendants object to any modification determined by EPA in

consultation with the Commonwealth to be necessary pursuant to this Paragraph, they may seek

dispute resolution pursuant to Section XX (Dispute Resolution), Paragraph 81 (record review).

The Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan,

and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendants shall implement any work required by any modifications

SMW00902

SW-000822

- 30 -

incorporated in the Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or in work plans developed in accordance with this Paragraph.

    e.    Nothing in this Paragraph shall be construed to limit EPA's authority in consultation with the Commonwealth to require performance of further response actions as otherwise provided in this Consent Decree.

    f.    Nothing in this Paragraph shall be construed to limit any rights that may be available to the Commonwealth pursuant to CERCLA.

    14.    a.    Settling Defendants acknowledge and agree that nothing in this Consent Decree or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

    15.    a.    All Waste Material that Settling Defendants remove from the Site shall be disposed of or treated at a facility regulated by RCRA in accordance with Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), the EPA "Revised Procedures for Planning and Implementing Off-site Response Actions," 40 C.F.R. § 300.440, and all other applicable federal, state, and local laws and regulations.

    b.    Settling Defendants shall, prior to any off-site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

SMW00903

SW-000823

- 31 -

c.   The Settling Defendants shall include in the written notification the following

information, where available:

> i.   the name and location of the facility to which the Waste Material is
>
> to be shipped;
>
> ii.   the type and quantity of the Waste Material to be shipped;
>
> iii.   the expected schedule for the shipment of the Waste Material; and
>
> iv.   the method of transportation.

The Settling Defendants shall notify the state in which the planned receiving facility is located of

major changes in the shipment plan, such as a decision to ship the Waste Material to another

facility within the same state, or to a facility in another state.

d.   The identity of the receiving facility and state will be determined by the Settling

Defendants following the award of the contract for Remedial Action construction. The Settling

Defendants shall provide the information required by Paragraph 15.c. as soon as practicable after

the award of the contract but in no case less than seven (7) days before the Waste Material is

actually shipped.

## VII. REMEDY REVIEW

16.   Periodic Review. Settling Defendants shall conduct any studies and investigations as

requested by EPA, in order to permit EPA in consultation with PADEP to conduct reviews of

whether the Remedial Action is protective of human health and the environment, at least every

five years as required by Section 121(c) of CERCLA and any applicable regulations.

17.   EPA Selection of Further Response Actions. If EPA in consultation with PADEP

determines, at any time, that the Remedial Action is not protective of human health and the

SMW00904

SW-000824

- 32 -

environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

18. <u>Opportunity To Comment.</u> Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19. <u>Settling Defendants' Obligation To Perform Further Response Actions.</u> If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 99 or Paragraph 100 (United States' reservations of liability based on unknown conditions or new information) are satisfied. If EPA requires Settling Defendants to undertake such further actions pursuant to this Paragraph, Settling Defendants may invoke the procedures set forth in Section XX (Dispute Resolution) to dispute:

  a. EPA's determination that the reopener conditions of Paragraph 99 or Paragraph 100 of Section XXII (Covenants by Plaintiffs) are satisfied;

  b. EPA's determination that the Remedial Action is not protective of human health and the environment; or

  c. EPA's selection of the further response actions.

Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 81 (record review).

20. <u>Submissions of Plans.</u> If Settling Defendants are required to perform the further response actions pursuant to Paragraph 19, they shall submit a plan for such work to EPA for

SMW00905

SW-000825

- 33 -

approval in accordance with the procedures set forth in Section VI (Performance of the Work by

Settling Defendants) and shall implement the plan approved by EPA in accordance with the

provisions of this Decree.

## VIII. TECHNICAL IMPRACTICABILITY

Nothing in this Consent Decree shall be deemed to prevent the Settling Defendants from

requesting the EPA to modify or waive compliance with any Performance Standard, Work, or

provisions of the ROD to the extent permitted by and in accordance with procedures under

applicable law and/or EPA policy. This Section VIII applies solely to the groundwater extraction

and treatment system remedy as defined in Section X of the ROD.

21.    The Settling Defendants may petition EPA to waive compliance with one or more of

the Performance Standards for groundwater contaminants resulting from non-recoverable free

phase or residual quantities of dense non-aqueous phase liquids ("DNAPLs") present in the

subsurface, based on a demonstration that it is technically impracticable, from an engineering

perspective, to attain those standards.

22.    The determination of whether attainment of a particular Performance Standard is

technically impracticable will be made by EPA in consultation with PADEP, and will be based

on the engineering feasibility and reliability of the remedy.

23.    EPA in consultation with PADEP will consider a petition for a waiver of Performance

Standards on technical impracticability grounds only after the selected groundwater remedy has

been functioning and operational for a sufficiently long time period to make a reliable prediction

concerning its ability to achieve the Performance Standards. This determination will be made by

EPA in consultation with PADEP based on Site-specific data and conditions. If the first petition

SMW00906

SW-000826

- 34 -

is rejected, a subsequent petition will be considered by EPA in consultation with PADEP only if

EPA determines that it is based on significant new Site-specific data which could not have been

developed at the time the previous petition was submitted.

24.     Neither the submission of a petition by Settling Defendants nor the granting of a

waiver of one or more Performance Standards by EPA in consultation with PADEP pursuant to

this Section shall relieve Settling Defendants of their obligation to:

    a.    continue to operate the groundwater remedy until the time specified by EPA;

    b.    attain Performance Standards for any contaminants for which EPA in

consultation with PADEP has not specifically granted a waiver; and

    c.    complete any other obligation under this Consent Decree.

25.     Such a petition shall include, at a minimum, the information and analyses required by

EPA guidance and the Site-specific information described in Subparagraphs 25.a. through 25.l.

of this Consent Decree, as follows:

    a.    a list of each Performance Standard for which a waiver is sought, and the spatial

limits for which they are sought. The justification for a waiver required by items 25.b. through

25.l. below must be made for each contaminant or class of contaminants for which a waiver is

sought;

    b.    a description of known or suspected groundwater contaminant sources at the

Site. The petition also shall describe source control and removal efforts that have been

implemented and the effectiveness of those efforts;

    c.    comprehensive groundwater monitoring data and an evaluation of the

groundwater remedy implemented, along with any other remediation actions performed which

SMW00907

SW-000827

- 35 -

enhanced or affected the Remedial Action. The monitoring data and performance evaluation shall demonstrate, using an appropriate engineering and statistical analysis, that the groundwater remedy has been operating for a sufficiently long period of time, as determined by EPA in consultation with PADEP, to permit a reliable analysis of its performance and its ability to achieve Performance Standards. The petition also shall demonstrate that the remedy has been designed, constructed, and operated in a manner which is consistent with the Remedial Design and Remedial Action Work Plans and the conceptual models for Site contamination, and that the system has been modified or enhanced to the extent practicable to optimize its performance in an effort to attain the Performance Standards;

    d.   a description of the conceptual model for Site contamination, including geologic, hydrogeologic, and geochemical characterizations. A description of the distribution; characteristics, migration, potential migration and fate; and quantities of contaminants present at the Site. These descriptions shall incorporate pertinent data obtained during the design, construction, and operation of the remedial system, as well as information obtained during previous Site characterization efforts;

    e.   an analysis of the performance of the groundwater remedy which describes the spatial and temporal trends in groundwater contaminant concentrations within the groundwater plumes; for example, whether contaminant migration has been effectively prevented, as well as any reductions or change in the overall size and location of the groundwater plume, or stabilized or very slow decreases in contaminant concentrations. The petition shall discuss the hydrogeochemical factors which influence the remedy's ability to achieve the Performance Standards, and demonstrate how these factors inhibit the remedial system achieving the

SMW00908

SW-000828

- 36 -

Performance Standards;

f.    the mass of contaminants removed from the groundwater by the Remedial Action system, and an estimate of the mass of contaminants remaining, including the degree of uncertainty involved in this estimate;

g.    a demonstration, including appropriate engineering analysis, that other conventional or innovative technologies that are potentially applicable at the Site cannot attain the Performance Standards in a manner that is practicable from an engineering perspective. This demonstration should include a prediction of the level of cleanup other technologies can attain;

h.    a predictive analysis of the approximate time frame required to achieve the Performance Standards with the existing groundwater remedy, and any alternative remedial strategies, if applicable, using methods appropriate for the data and the site-specific conditions. Such analyses should also address the uncertainty inherent in these predictions;

i.    for the implemented remedy and for any alternative remedial strategies proposed as part of this petition, identification of the potential pathways by which humans and the environment are or may become exposed to the contaminated groundwater left in place. Contamination concentration and other data needed for EPA to perform risk analyses shall be provided as part of the petition;

j.    a description of the proposed alternative remedial strategy, or a comparison of two or more strategy options, proposed to be implemented by the Settling Defendants if a waiver is granted, and the level of cleanup and control of hazardous substances, pollutants, and contaminants the proposed alternative strategy or strategies will attain. Alternative remedial strategies must attain a level of cleanup and control of further releases which ensure protection of

SMW00909

SW-000829

- 37 -

human health and the environment, and prevent further migration of contaminated groundwater.

Alternative remedial strategies may include the establishment of alternative Performance

Standards, site-specific cleanup levels, and other alternative remediation requirements to ensure

protectiveness. Proposed modifications to the existing remedy, and any additional response

actions proposed to be undertaken, shall be described by the Settling Defendants in detail. EPA

in consultation with PADEP will make the final determination regarding the components of the

alternative remedial strategy which shall be implemented at the Site by the Settling Defendants;

     k.   a description of any additional groundwater monitoring required to verify

compliance with the alternative Performance Standards or remedial requirements. EPA in

consultation with PADEP will make the final determination regarding the scope of the

groundwater monitoring requirements under the alternative remedial strategy; and

     l.   other information or analyses not included above, but which Settling Defendants

or EPA in consultation with PADEP consider appropriate to making a determination on the

petition.

    26.   Upon receipt of all information required by the previous Paragraph, EPA in

consultation with PADEP will review and consider the information in the petition and any other

relevant information. After opportunity for review and comment by the Commonwealth, EPA

will determine:

     a.   whether compliance with any of the Performance Standards shall be waived;

     b.   what, if any, alternative remediation requirements, including alternative

Performance Standards and other protective measures, will be established by EPA in consultation

with PADEP;

SMW00910

SW-000830

- 38 -

c.    whether modifications to the groundwater portion of the remedial action or any additional response actions relating to the groundwater contamination are required; and

d.    whether revised interim milestone and completion dates are needed for attainment of Performance Standards or alternative Performance Standards under this Consent Decree.

EPA's determination on the petition will be consistent with the National Contingency Plan ("NCP"); Section 121(d) of CERCLA, and any other applicable laws, regulations, and guidance in effect at the time.

27.    If EPA, after a reasonable opportunity for review and comment by the Commonwealth, grants any petition or other relief pursuant to this Section, that decision will be reflected in a post-ROD decision document, as required by the NCP. If modification of this Consent Decree is required to implement EPA's decision, such modification will be filed and, if necessary, Court approval will be sought in accordance with Section XXXII of this Consent Decree (Modification).

28.    Nothing in this Section shall be construed to limit any rights that may be available to the Commonwealth pursuant to CERCLA. PADEP reserves all rights it may have under state and federal law, including but not limited to CERCLA. EPA reserves all rights and defenses it may have in response to PADEP action. PADEP and EPA agree that they will make their best efforts to resolve informally any dispute between them arising out of implementation of this Consent Decree. Should an irreconcilable dispute arise between PADEP and EPA, the fact of participation in this Consent Decree is not intended by the parties to be construed against the Commonwealth, nor to limit any argument either EPA or PADEP may wish to make regarding:

SMW00911

SW-000831

- 39 -

(1) enforcement of ARARs under Section 121(e) of CERCLA, or (2) waiver of ARARs under

Section 121(f) of CERCLA for waivers subsequent to the entry of the Consent Decree. No work

required under this Consent Decree shall be delayed as a result of any dispute between the

Commonwealth and EPA, unless the Court rules that the Work, or some portion thereof, should

be delayed.

29.  Upon issuance of EPA's post-ROD decision document, filing of the revised Statement

of Work and Consent Decree modification with the Court and, if necessary, issuance of a court

order approving the modification, Settling Defendants shall implement the modifications selected

by EPA to the groundwater portion of the Remedial Action or additional response actions

relating to groundwater contamination, and achieve and maintain all Performance Standards,

alternative Performance Standards, and remediation requirements established pursuant to this

Section.  Settling Defendants may invoke the procedures set forth in Section XX (Dispute

Resolution) to dispute that EPA's issuance of its post-ROD decision document is arbitrary and

capricious or otherwise not in accordance with the law.  Such a dispute shall be resolved

pursuant to Paragraph 81, Section XX (Dispute Resolution) of this Consent Decree.  However in

the event EPA determines that the groundwater portion of the Remedial Action is not technically

impracticable and that no post-ROD decision document is necessary, such a determination shall

not be subject to review under the provisions of Section XX (Dispute Resolution) of this Consent

Decree and shall not otherwise be judicially reviewable.  Unless expressly modified by EPA's

decision on the petition submitted hereunder, all requirements of this Consent Decree, including

Settling Defendants' obligation to achieve the alternative Performance Standards and to conduct

long-term groundwater monitoring, shall continue in full force and effect.

SMW00912

SW-000832

- 40 -

## IX.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

30.    While conducting all sample collection and analysis activities required by this

Consent Decree, the Settling Defendants shall implement quality assurance, quality control, and

chain of custody procedures in accordance with "EPA Requirements for Quality Assurance

Project Plans for Environmental Data Operation," (US EPA Quality Assurance Management

Staff: August 1994) (EPA QA/R-5); "EPA NEIC Policies and Procedures Manual," (May 1986)

(EPA 330/978-001-R); National Functional Guidelines for Inorganic Data Review (EPA 540/R-

94/013) and Modifications to the National Functional Guidelines for Inorganic Data Review

(EPA Region III: April 1993); National Functional Guidelines for Organic Data Review (EPA

540/R-94/012) and Modifications to the National Functional Guidelines for Organic Data

Review (EPA Region III: September 1994); "Region III Innovative Approaches to Data

Validation," (EPA Region III: September 1994); "Data Quality Objectives Process for

Superfund," (EPA 540/R-93/071: September 1994); and subsequent amendments to such

guidelines upon notification by EPA to Settling Defendants of such amendment.    Amended

guidelines shall apply only to procedures conducted after such notification.   Prior to the

commencement of any monitoring project under this Consent Decree, Settling Defendants shall

submit to EPA for approval, after a reasonable opportunity for review and comment by the

Commonwealth, a Quality Assurance Project Plan ("QAPP") for the Work that is consistent with

the NCP and the guidance documents cited above.  If relevant to the proceeding, the Parties agree

that validated sampling data generated in accordance with the QAPP(s) and reviewed and

approved by EPA shall be admissible as evidence, without objection, in any proceeding under

SW-000833

- 41 -

this Decree. Settling Defendants shall ensure that EPA and Commonwealth personnel and their

authorized representatives are allowed access at reasonable times to all laboratories utilized by

Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall

ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP

for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they

utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to

accepted EPA methods. Settling Defendants shall submit to EPA the selected laboratory's(ies')

QAPP and their qualifications, which shall include, at a minimum, previous certifications,

Performance Evaluation ("PE") results, equipment lists and personnel resumes. Settling

Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent

analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in

the QAPP approved by EPA. At the request of EPA, Settling Defendants shall conduct one or

more audits of the selected laboratory(ies) to verify analytical capability and compliance with the

QAPP. Auditors shall conduct lab audits during the time the laboratory(ies) is analyzing samples

collected pursuant to this Consent Decree. The lab audit shall be conducted according to

procedures available from the QA Branch. Audit reports shall be submitted to the EPA Project

Coordinator within fifteen (15) days of completion of the audit. The Settling Defendants shall

report serious deficiencies, including all those which adversely impact data quality, reliability or

accuracy, and take action to correct such deficiencies within twenty-four (24) hours of the time

the Settling Defendants knew or should have known of the deficiency.

31.    Upon request, the Settling Defendants shall allow split or duplicate samples to be

taken by EPA and the Commonwealth or their authorized representatives. Settling Defendants

SMW00914

SW-000834

- 42 -

shall notify EPA and the Commonwealth not less than twenty-eight (28) days in advance of any

sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the

Commonwealth shall have the right to take any additional samples that EPA or the

Commonwealth deem necessary. Upon request, EPA and the Commonwealth shall allow the

Settling Defendants to take split or duplicate samples of any samples they take as part of the

Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

32.    Settling Defendants shall submit to EPA five (5) copies and to the Commonwealth

three (3) copies of the results of all sampling and/or tests or other data obtained or generated by

or on behalf of Settling Defendants with respect to the Site and/or the implementation of this

Consent Decree unless EPA in consultation with the Commonwealth agrees otherwise.

33.    Notwithstanding any provision of this Consent Decree, the United States and the

Commonwealth hereby retain all of their information gathering and inspection authorities and

rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other

applicable statutes or regulations.

## X. ACCESS AND INSTITUTIONAL CONTROLS

34.    If any portion of the Site, or any other property where access and/or land/water use

restrictions are needed to implement this Consent Decree, is owned or controlled by persons

other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure

from such persons:

a.    an agreement to provide access thereto for Settling Defendants, as well as for

the United States on behalf of EPA, and the Commonwealth, as well as their representatives

(including contractors), for the purpose of conducting any activity related to this Consent Decree

SMW00915

SW-000835

- 43 -

including, but not limited to, the following activities:

    i.    monitoring the Work;

    ii.  verifying any data or information submitted to the United States or the Commonwealth;

    iii.    conducting investigations relating to contamination at or near the Site;

    iv.    obtaining samples;

    v.    assessing the need for, planning, or implementing additional response actions at or near the Site;

    vi.    implementing the Work pursuant to the conditions set forth in Paragraph 105 of this Consent Decree;

    vii.    inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXV;

    viii.    assessing Settling Defendants' compliance with this Consent Decree; and

    ix.    determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

    b.    an agreement, enforceable by the Settling Defendants and the United States, to abide by all obligations and restrictions that are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree, including, but not limited to, the following:

SMW00916

SW-000836

- 44 -

    i.   to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree;

    ii.   to refrain from implementing newly commenced or expanded groundwater pumping in the aquifer which will adversely affect the plume migration;

    iii.   to prevent human consumption of contaminated groundwater. Drinking water supply wells shall not be installed in the area of a contaminated plume at and/or emanating from the Site;

    iv.   to refrain from commencing or implementing any new development at or near the Site that will adversely affect the natural hydraulic containment and plume migration; and

    c.   the execution and recordation with the Office of the Prothonotary for Chester County, Commonwealth of Pennsylvania, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 34.a. of this Consent Decree; and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 34.b. of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives; (ii) the Commonwealth and its representatives; (iii) the other Settling Defendants and their representatives; and/or (iv) other appropriate grantees.

SMW00917

SW-000837

- 45 -

d.    Within forty-five (45) days of EPA's request, Settling Defendants shall submit

to EPA for review and approval with respect to such property:

i.    a draft easement that is enforceable under the laws of the Commonwealth

of Pennsylvania, free and clear of all prior liens and encumbrances (except as approved by EPA),

and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40

U.S.C. § 255; and

ii.    a current title commitment or report prepared in accordance with the

U.S. Department of Justice Standards for the Preparation of Title Evidence in Land Acquisitions

by the United States (1970) (the "Standards").

Within fifteen (15) days of EPA's approval and acceptance of the easement, Settling

Defendants shall update the title search and, if it is determined that nothing has occurred since

the effective date of the commitment or report to affect the title adversely, the easement shall be

recorded with the Office of the Prothonotary for Chester County, Commonwealth of

Pennsylvania.  Within thirty (30) days of filing the easements, Settling Defendants shall provide

EPA with final title evidence acceptable under the Standards, and a certified copy of the original

recorded easement showing the clerk's recording stamps.

35.    For purposes of Paragraph 34 of this Consent Decree, "best efforts" includes the

payment of reasonable sums of money in consideration of access, access easements, land/water

use restrictions, and/or restrictive easements, except that EPA acknowledges that the payment of

reasonable sums of money by Settling Defendants is not be required to procure access, access

easements, land/water use restrictions, and/or restrictive easements from Chemclene Corporation,

Springridge Management Corporation, Lloyd Balderston, and/or Ruth Balderston, unless these

SMW00918

SW-000838

- 46 -

parties are found not to be liable parties in connection with the Site pursuant to Section 107(a) of

CERCLA. If any access or land/water restriction agreements required by Paragraphs 34.a. or

34.b. of this Consent Decree are not obtained within forty-five (45) days of any request by EPA

that Settling Defendants obtain such access or land/water restriction agreements, or any access

easements or restrictive easements required by Paragraph 34.c. of this Consent Decree are not

submitted to EPA in draft form within forty-five (45) days of EPA's request for such easements,

Settling Defendants shall promptly notify the United States in writing, and shall include in that

notification a summary of the steps that Settling Defendants have taken to attempt to comply

with Paragraph 34 of this Consent Decree. The United States may, as it deems appropriate, assist

Settling Defendants in obtaining access or land/water use restrictions, either in the form of

contractual agreements or in the form of easements running with the land. Settling Defendants

shall reimburse the United States in accordance with the procedures in Section XVII

(Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United

States in obtaining such access and/or land/water use restrictions including, but not limited to,

the cost of attorney time and the amount of monetary consideration paid or just compensation,

except, however, Settling Defendants shall not be required to reimburse the United States for any

such costs incurred by the United States in obtaining access and/or land/water use restrictions

from Chemclene Corporation, Springridge Management Corporation, Lloyd Balderston, and/or

Ruth Balderston, to the extent such parties are liable parties in connection with the Site pursuant

to Section 107(a) of CERCLA.

   36.    If EPA in consultation with PADEP determines that land/water use restrictions in the

form of state or local laws, regulations, ordinances, or other governmental controls are needed to

SMW00819

- 47 -

implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and the Commonwealth's efforts to secure such governmental controls.

37.    Notwithstanding any provisions of this Consent Decree, the United States and the Commonwealth retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## XI. REPORTING REQUIREMENTS

38.    In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA five (5) copies and the Commonwealth three (3) copies of written monthly progress reports that:

a.    describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month;

b.    include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month;

c.    identify all work plans, plans, and other deliverables required by this Consent Decree completed and submitted during the previous month;

d.    describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts, and Pert charts;

e.    Describe all proposed data and information collection actions, if any, including

SW-000840

- 48 -

sampling, that Settling Defendants plan to undertake at the Site in addition to those to implement the Work;

      f.    include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays;

      g.    include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and

      h.    describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks.

Settling Defendants shall submit these progress reports to EPA and the Commonwealth by the tenth day of every month following the first monthly anniversary of EPA's approval of the selection of the Supervising Contractor until EPA notifies the Settling Defendants pursuant to Paragraph 61.c. of Section XV (Certification of Completion). If requested by EPA or the Commonwealth, Settling Defendants shall also provide briefings for EPA and the Commonwealth to discuss the progress of the Work.

    39.    The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, implementation of work plans, no later than seven (7) days prior to the performance of the activity. Notwithstanding the foregoing, the Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress reports for the performance of data collection no later than thirty (30) days prior to the performance of such activity.

    40.    Upon the occurrence of any event during performance of the Work that Settling

SMW00921

SW-000841

- 49 -

Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Defendants shall within twenty-four (24) hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the EPA Region III Hotline at (215) 814-3255. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

41.  Within twenty (20) days of the onset of such an event, Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

42.  Settling Defendants shall submit five (5) copies of all plans, reports, and data required by the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit three (3) copies of all such plans, reports, and data to the Commonwealth.

43.  All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by a Duly Authorized Representative of the Settling Defendants.

SMW00922

SW-000842

- 50 -

## XII. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

44.   After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the Commonwealth unless otherwise specified, shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) modify the submission to cure the deficiencies; (iv) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (v) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within fourteen (14) Working Days, or such other time as specified by EPA in such notice, except where to do so would cause serious disruption to the Work, or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate to EPA a bad faith lack of effort to submit an acceptable deliverable.

45.   In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 44 (i), (ii), or (iii), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 44(iii) and the submission has a material defect, EPA retains its right, in consultation with PADEP, to seek stipulated penalties, as provided in Section XXI (Stipulated Penalties).

46.   a.   Upon receipt of a notice of disapproval pursuant to Paragraph 44(iv), Settling

SMW00923

SW-000843

- 51 -

Defendants shall, within fourteen (14) Working Days, or such other time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XXI, shall accrue during the fourteen (14) Working Day period, or otherwise specified period, but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 47 and 48.

   b.   Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 44(iv), Settling Defendants shall proceed, if and to the extent directed by EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XXI (Stipulated Penalties).

   47.   In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA in consultation with PADEP, subject only to their right to invoke the procedures set forth in Section XX (Dispute Resolution).

   48.   If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XX (Dispute Resolution) and Section XXI (Stipulated

SMW00924

SW-000844

- 52 -

Penalties) shall govern the implementation of the Work and accrual and payment of any

stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld,

stipulated penalties shall accrue for such violation from the date on which the initial submission

was originally required, as provided in Section XXI.

49.     All plans, reports, and other items required to be submitted to EPA under this Consent

Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.

In the event EPA approves or modifies a portion of a plan, report, or other item required to be

submitted to EPA under this Consent Decree, the approved or modified portion shall be

enforceable under this Consent Decree.

### XIII. PROJECT COORDINATORS

50.     The EPA and PADEP Project Coordinators and Alternate Project Coordinators for this

Site are:

#### EPA Project Coordinator:

Linda Dietz (3HW21)
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA  19103-2029
(215) 814-3195 (phone)
(215) 814-3001 (telefax)

#### EPA Alternate Project Coordinator:

Anthony Dappolone (3HW21)
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA  19103-2029
(215) 814-3188 (phone)
(215) 814-3001 (telefax)

SMW00925

SW-000845

- 53 -

PADEP Project Coordinator

April Flipse
PADEP - Southeast Region
Lee Park, Suite 6010, 555 North Lane
Conshohocken, PA 19428
(610) 832-5937 (phone)
(610) 832-6143 (fax)

PADEP Alternate Project Coordinator

Tim Sheehan
PADEP - Southeast Region
Lee Park, Suite 6010, 555 North Lane
Conshohocken, PA 19428
(610) 832-6149 (phone)
(610) 832-6143 (fax)

51.   Within twenty (20) days of lodging of this Consent Decree, Settling Defendants will

notify each other and EPA, in writing, of the name, address, and telephone number of their

designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or

Alternate Project Coordinator initially designated is changed, the identity of the successor will be

given to the other Parties at least five (5) Working Days before the changes occur, unless

impracticable, but in no event later than the actual day the change is made. The Settling

Defendants' Project Coordinator and Alternate Project Coordinator shall be subject to acceptance

or disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all

aspects of the Work. The Settling Defendants' Project Coordinator and Alternate Project

Coordinator shall not be an attorney for any of the Settling Defendants in this matter. The

Settling Defendants' Project Coordinator and Alternate Project Coordinator may assign other

representatives, including other contractors, to serve as a Site representative for oversight of

performance of daily operations during remedial activities.

SMW00926

SW-000846

- 54 -

52.    Plaintiffs may designate other representatives, including, but not limited to, EPA and

Commonwealth employees, and federal and Commonwealth contractors and consultants, to

observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.

EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully

vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the

National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator and

Alternate Project Coordinator shall have authority, consistent with the National Contingency

Plan, to halt any Work required by this Consent Decree and to take any necessary response action

when s/he determines that conditions at the Site constitute an emergency situation or may present

an immediate threat to public health or welfare or the environment due to release or threatened

release of Waste Material.

53.    EPA's Project Coordinator and the Settling Defendants' Project Coordinator will

meet, at a minimum, on a monthly basis.  Such meetings may be conducted by way of electronic

media.

## XIV. ASSURANCE OF ABILITY TO COMPLETE WORK

54.    Settling Defendants have demonstrated and shall continue to demonstrate their ability

to complete the Work and to pay all claims that arise from performance of the Work.  Until

receipt from EPA of EPA's Certification of Completion of the Remedial Action pursuant to

Section XV of this Consent Decree, one or more of the Settling Defendants shall submit to the

United States and the Commonwealth audited statements within ninety (90) days of the close of

their respective financial years.  The financial information to be submitted shall at a minimum

demonstrate that the Settling Defendant(s), has: (i) a tangible net worth of not less than

SMW00927

SW-000847

- 55 -

$800,000,000; (ii) working capital of not less than $200,000,000; and (iii) seventy-five percent

(75%) of the assets and liabilities which are used to calculate items (i) and (ii) are located in the

United States.

55.  In the event that none of the Settling Defendants are able to make a demonstration as

required in Paragraph 54 above, within ninety (90) days of the close of their respective financial

years, Settling Defendants shall submit proof of financial assurance in an amount no less than the

estimated present value of costs necessary to complete the Work as determined by EPA, after a

reasonable opportunity for review and comment by the Commonwealth, in one of the following

forms:

      a.   a surety bond guaranteeing performance of the Work;

      b.   one or more irrevocable letters of credit equaling the total estimated cost of the

Work;

      c.   a trust fund;

      d.   a guarantee to perform the Work by one or more parent corporations or

subsidiaries, or by one or more unrelated corporations that have a substantial business

relationship with at least one of the Settling Defendants; or

      e.   a demonstration that one or more of the Settling Defendants satisfy the

requirements of 40 C.F.R. § 264.143(f) (for these purposes, references in 40 C.F.R.

§ 264.143(f) to "the sum of the current closure and post-closure cost estimates and the current

plugging and abandonment cost estimates" shall mean the amount of financial security specified

above).

56.  Such financial security shall be maintained by the Settling Defendants until EPA

SMW00928

SW-000848

- 56 -

agrees that the Work has been completed and issues a Certification of Completion in accordance with Paragraph 61.c.

57.    If the Settling Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 55.d. of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. § 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 55.d. or 55.e., they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the effective date of this Consent Decree. In the event that EPA, after a reasonable opportunity for review and comment by the Commonwealth, determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within thirty (30) days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 55 of this Consent Decree. Settling Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

58.    If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 55 above after entry of this Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the

SMW00929

SW-000849

- 57 -

requirements of this Section, and may reduce the amount of the security upon approval by EPA.

In the event of a dispute, Settling Defendants may reduce the amount of the security in

accordance with the final administrative or judicial decision resolving the dispute.

59.    Settling Defendants may change the form of financial assurance provided under this

Section at any time, upon notice to and approval by EPA, provided that the new form of

assurance meets the requirements of this Section. In the event of a dispute, Settling Defendants

may change the form of the financial assurance only in accordance with the final administrative

or judicial decision resolving the dispute.

## XV. CERTIFICATION OF COMPLETION

60.    Completion of the Remedial Action

a.    Within ninety (90) days after Settling Defendants conclude that the Remedial

Action has been fully performed and the Performance Standards have been attained, for each

particular Remedy identified in Paragraph 13(b) above, Settling Defendants shall schedule and

conduct a pre-certification inspection to be attended by a representative or representatives of the

Settling Defendants, EPA, and the Commonwealth. If, after the pre-certification inspection, the

Settling Defendants still believe that the Remedial Action has been fully performed and the

Performance Standards have been attained, they shall submit a written report requesting

certification to EPA for approval in consultation with PADEP, pursuant to Section XII (EPA

Approval of Plans and Other Submissions) within thirty (30) days of the inspection. In the

report, a registered professional engineer and the Settling Defendants' Project Coordinator shall

state that the Remedial Action has been completed in full satisfaction of the requirements of this

Consent Decree. The written report shall include as-built drawings signed and stamped by a

SMW00930

SW-000850

- 58 -

professional engineer.  The report shall contain the following statement, signed by a Duly

Authorized Representative of Settling Defendants or the Settling Defendants' Project

Coordinator:

> "To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete.  I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations."

If, after completion of the pre-certification inspection and receipt and review of the written

report, EPA, after reasonable opportunity for review and comment by the Commonwealth,

determines that the Remedial Action or any portion thereof has not been completed in

accordance with this Consent Decree or that the Performance Standards have not been achieved,

EPA will notify Settling Defendants in writing of the activities that must be undertaken by

Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and

achieve the Performance Standards.  Provided, however, that EPA may only require Settling

Defendants to perform such activities pursuant to this Paragraph to the extent that such activities

are consistent with the "scope of the remedy selected in the ROD," as that term is defined in

Paragraph 13.b.  EPA will set forth in the notice a schedule for performance of such activities

consistent with the Consent Decree or require the Settling Defendants to submit a schedule to

EPA for approval pursuant to Section XII (EPA Approval of Plans and Other Submissions).

Settling Defendants shall perform all activities described in the notice in accordance with the

specifications and schedules established pursuant to this Paragraph, subject to their right to

invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

      b.    If EPA concludes, based on the initial or any subsequent report requesting

SW-000851

- 59 -

Certification of Completion and after a reasonable opportunity for review and comment by the

Commonwealth, that the Remedial Action has been performed in accordance with this Consent

Decree and that the Performance Standards have been achieved, EPA will so certify in writing to

Settling Defendants. This certification shall constitute the Certification of Completion of the

Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXII

(Covenants by Plaintiffs). Certification of Completion of the Remedial Action shall not affect

Settling Defendants' obligations under this Consent Decree.

61. Completion of the Work

     a. Within ninety (90) days after Settling Defendants conclude that all phases of the

Work (including O & M), have been fully performed, Settling Defendants shall schedule and

conduct a pre-certification inspection to be attended by a representative or representatives of

Settling Defendants, EPA and the Commonwealth. If, after the pre-certification inspection, the

Settling Defendants still believe that the Work has been fully performed, Settling Defendants

shall submit a written report by a registered professional engineer stating that the Work has been

completed in full satisfaction of the requirements of this Consent Decree. The report shall

contain the following statement, signed by a Duly Authorized Representative of Settling

Defendants or the Settling Defendants' Project Coordinator:

    "To the best of my knowledge, after thorough investigation, I certify that the
information contained in or accompanying this submission is true, accurate and
complete. I am aware that there are significant penalties for submitting false
information, including the possibility of fine and imprisonment for knowing
violations."

     b. If, after review of the written report, EPA, after reasonable opportunity for

review and comment by the Commonwealth, determines that any portion of the Work has not

SW-000852

- 60 -

been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in

writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent

Decree to complete the Work. Provided, however, that EPA may only require Settling

Defendants to perform such activities pursuant to this Paragraph to the extent that such activities

are consistent with the "scope of the remedy selected in the ROD," as that term is defined in

Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities

consistent with the Consent Decree or require the Settling Defendants to submit a schedule to

EPA for approval pursuant to Section XII (EPA Approval of Plans and Other Submissions).

Settling Defendants shall perform all activities described in the notice in accordance with the

specifications and schedules established therein, subject to their right to invoke the dispute

resolution procedures set forth in Section XX (Dispute Resolution).

    c.   If EPA concludes, based on the initial or any subsequent request for

Certification of Completion by Settling Defendants and after a reasonable opportunity for review

and comment by the Commonwealth, that the Work has been performed in accordance with this

Consent Decree, EPA will so notify the Settling Defendants in writing.

    62.   Certification of Completion by Commonwealth

    a.   If, after any pre-certification inspection is conducted, Settling Defendants still

believe that the Remedial Action has been fully performed and that the Performance Standards

have been attained, Settling Defendants shall, within thirty (30) days of such inspection, submit a

written report to the Commonwealth which requests HSCA certification of completion of the

Work and demonstrates its basis. The report shall be signed by the Settling Defendants' Project

Coordinator and a registered professional engineer.

SMW00933

SW-000853

- 61 -

b.    If, after review of the written report, the Commonwealth determines that the Remedial Action has not been fully performed or the Performance Standards contained in the portion of the ROD covered by this Consent Decree have not been attained, the Commonwealth will notify Settling Defendants in writing of the activities that remain to be completed before the Remedial Action is fully performed and the Performance Standards are fully achieved.

c.    If, after review of the written report submitted by the Settling Defendants the Commonwealth determines that the Remedial Action has been fully performed and the Performance Standards as defined in the ROD have been attained, the Commonwealth will provide to the Settling Defendants a written HSCA certification of completion of the Remedial Action for purposes of the Commonwealth's Covenant Not to Sue with regard to future liability under HSCA pursuant to Section 706 of HSCA, 35 P.S. § 6020.706, and Paragraph 102 of this Consent Decree. This HSCA certification of completion is contingent upon Settling Defendants' continuing performance of O & M as required by the portion of the ROD covered by this Consent Decree and shall not exceed the scope of the Remedial Action as contained in that portion of the ROD covered by this Consent Decree.

## XVI. EMERGENCY RESPONSE

63.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 64, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project

SMW00934

SW-000854

- 62 -

Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA

Region III Hotline at (215) 814-3255. Settling Defendants shall take such actions in consultation

with EPA's Project Coordinator or other available authorized EPA officer and in accordance with

all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other

applicable plans or documents developed pursuant to this Consent Decree. In the event that

Settling Defendants fail to take appropriate response action as required by this Section, and EPA

or, as appropriate, the Commonwealth take such action instead, Settling Defendants shall

reimburse EPA and the Commonwealth all costs of the response action not inconsistent with the

NCP pursuant to Section XVII (Reimbursement of Response Costs).

64.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit

any authority of the United States, or the Commonwealth, to (i) take all appropriate action to

protect human health and the environment or to prevent, abate, respond to, or minimize an actual

or threatened release of Waste Material on, at, or from the Site, or (ii) direct or order such action,

or seek an order from the Court, to protect human health and the environment or to prevent,

abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from

the Site, subject to Section XXII (Covenants by Plaintiffs).

## XVII. REIMBURSEMENT OF RESPONSE COSTS

65.    Within thirty (30) days of the effective date of this Consent Decree, Settling

Defendants shall pay to the Commonwealth $42,691.00 in the form of a certified check or checks

made payable to the Pennsylvania Hazardous Sites Cleanup Fund, in reimbursement of

Commonwealth Past Response Costs. The Settling Defendants shall send the certified check(s)

to Bruce D. Beitler, Regional Environmental Cleanup Program Manager, PADEP - Southeast

SMW00935

SW-000855

- 63 -

Region, Lee Park, Suite 6010, 555 North Lane, Conshohocken, PA 19428.

66.    <u>Payments by the Settling Federal Agency.</u>    Within a reasonable time after the effective date of this Consent Decree, the United States on behalf of the Settling Federal Agency shall pay, as its share of the performance and payment obligations to be incurred by Settling Defendants in carrying out response actions required by this Consent Decree, $571,322.50 to the Settling Performing Defendants, in the form of a check payable to an entity that shall be specified by the Settling Performing Defendants.

67.    a.    Settling Defendants shall reimburse the EPA Hazardous Substance Superfund for Future Response Costs, provided, however: (i) that Settling Defendants shall not be obligated to reimburse EPA for any future remedial oversight costs, and, except as provided for in Paragraph 67.d. of this Consent Decree, oversight costs incurred in connection with Remedial Design and oversight of Removal Actions; and (ii) this Consent Decree does not require Settling Defendants to pay Interim Response Costs identified as portions (i) (ii) and (iii) of the definition herein of Interim Response Costs up to $300,000 to the extent EPA obtains such costs from entities not a signatory to this Decree within two years of the effective date of this Consent Decree.

b.    With regard to any Future Response Costs for which EPA shall seek reimbursement from Settling Defendants pursuant to this Paragraph, the United States will send Settling Defendants a bill requiring payment that includes a cost summary, setting forth direct and indirect costs incurred by EPA, DOJ, and their contractors on a periodic basis. Settling Defendants shall make all payments within thirty (30) days of Settling Defendants' receipt of

SMW00936

SW-000856

- 64 -

each bill requiring payment, except as otherwise provided in Paragraph 68. The Settling

Defendants shall make all payments required by this Paragraph in the form of a certified or

cashier's check or checks made payable to "EPA Hazardous Substance Superfund" and

referencing the EPA Region and Site/Spill ID #03-91, the DOJ case number 90-11-3-1731-DOJ,

and the name and address of the party making payment. The Settling Defendants shall send the

check(s) to United States Environmental Protection Agency, Region III, Attention: Superfund

Accounting, P.O. Box 360515, Pittsburgh, PA 15251-6515, and shall send copies of the check(s)

to the United States as specified in Section XXVII (Notices and Submissions) and to the Docket

Clerk (3RC00), United States Environmental Protection Agency, Region III, 1650 Arch Street,

Philadelphia, PA 19103-2029.

     c.   Settling Defendants shall reimburse the Commonwealth for all Commonwealth

Future Response Costs not inconsistent with CERCLA, HSCA or the National Contingency

Plan. The Commonwealth will send Settling Defendants a bill requiring payment that includes a

cost summary, which includes direct and indirect costs incurred by the Commonwealth and its

contractors on a periodic basis. Settling Defendants shall make all payments within thirty (30)

days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided

in Paragraph 68. The Settling Defendants shall make all payments to the Commonwealth

required by this Paragraph in the manner described in Paragraph 65.

     d.   Settling Defendants shall be obligated to reimburse the United States for

oversight costs incurred in connection with Remedial Design and oversight of Removal Actions

only if the decision in United States v. Rohm & Haas Co., No. 92-1517 (3rd Cir. Aug. 12, 1993),

regarding the liability of responsible parties under Section 107(a)(4)(A) of CERCLA for EPA

SMW00937

SW-000857

- 65 -

oversight costs is reversed or overturned by the Court of Appeals for the Third Circuit, the

United States Supreme Court, or the United States Congress through amendment to CERCLA or

otherwise. Nothing in this Paragraph 67.d. shall be deemed to be an adjudication by this Court

or an admission by EPA or the United States or shall be admissible in any other proceeding as to

the legal issue whether oversight costs are properly recoverable under Section 107 of CERCLA

or pursuant to a settlement of such an action.

68.    Settling Defendants may contest payment of any Future Response Costs under

Paragraph 67 if they determine that the United States or the Commonwealth has made an

accounting error or if they allege that a cost item that is included represents costs that are

inconsistent with the NCP. Such objection shall be made in writing within thirty (30) days of

receipt of the bill and must be sent to the United States (if the United States' accounting is being

disputed) or the Commonwealth (if the Commonwealth's accounting is being disputed) pursuant

to Section XXVII (Notices and Submissions). Any such objection shall specifically identify the

contested Future Response Costs and the basis for objection. In the event of an objection, the

Settling Defendants shall within the thirty (30) day period pay all uncontested Future Response

Costs to the United States or the Commonwealth in the manner described in Paragraph 67.

Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a

federally-insured, duly chartered, bank in the Commonwealth of Pennsylvania and remit to that

escrow account funds equivalent to the amount of the contested Future Response Costs. The

Settling Defendants shall send to the United States, as provided in Section XXVII (Notices and

Submissions), and the Commonwealth a copy of the transmittal letter and check paying the

SMW00938

SW-000858

- 66 -

uncontested Future Response Costs, and a copy of the correspondence that establishes and funds

the escrow account, including, but not limited to, information containing the identity of the bank

and bank account under which the escrow account is established as well as a bank statement

showing the initial balance of the escrow account. Simultaneously with establishment of the

escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in

Section XX (Dispute Resolution). If the United States or the Commonwealth prevails in the

dispute, within five (5) days of the resolution of the dispute, the Settling Defendants shall pay the

sums due (with accrued interest) to the United States or the Commonwealth, if Commonwealth

costs are disputed, in the manner described in Paragraph 67. If the Settling Defendants prevail

concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the

costs (plus associated accrued interest) for which they did not prevail to the United States or the

Commonwealth, if Commonwealth costs are disputed in the manner described in Paragraph 67;

Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution

procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XX

(Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the

Settling Defendants' obligation to reimburse the United States and the Commonwealth for their

Future Response Costs. Settling Defendants may request the United States to provide available

back-up documentation concerning billed Future Response Costs, and the United States will

make such documentation available, consistent with regulations relating to confidential business

information and the Privacy Act. However, requests for such documentation shall not delay or

modify any of the specified time periods for payment of the costs set forth herein.

69.    In the event that the payment required by Paragraph 67 is not made within thirty (30)

SMW00939

SW-000859

- 67 -

days of the effective date of this Consent Decree or the payments required by Paragraph 68 are

not made within thirty (30) days of the Settling Defendants' receipt of the bill, Settling

Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Commonwealth

Past Response Costs under this Paragraph shall begin to accrue thirty (30) days after the effective

date of this Consent Decree. The Interest on Future Response Costs shall begin to accrue on the

date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment.

Payments of Interest made under this Paragraph shall be in addition to such other remedies or

sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments

under this Section. The Settling Defendants shall make all payments required by this Paragraph

in the manner described in Paragraphs 65 and 67.

70.    Malvern TCE Superfund Site Special Account

a.    On December 16, 1998, EPA issued to certain Site PRPs (De Minimis PRPs")

an offer to participate in an Administrative Order on Consent for a De Minimis Settlement, U.S.

EPA Docket No. III-98-074-DC ("De Minimis Settlement"). A copy of the De Minimis

Settlement ("De Minimis Settlement") is attached hereto as Appendix "E."

b.    The Parties acknowledge that EPA will receive and deposit monies received

from those parties eligible to participate in the De Minimis Settlement in the Malvern TCE

Superfund Site Special Account, pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §

9622(b)(3), for response actions at the Site. Subject to the terms and conditions set forth in this

Consent Decree, EPA agrees to make available certain funds in the Malvern TCE Superfund Site

Special Account for disbursement to Settling Defendants. Eligible Special Account funds that

are disbursed to Settling Defendants shall be used to reimburse Settling Defendants for costs

SMW00940

SW-000860

- 68 -

incurred by Settling Defendants in the performance of the Remedial Design and Remedial Action at the Site. EPA shall disburse such Special Account funds to Settling Defendants in accordance with the Special Account eligibility and disbursement provisions set forth in paragraph 70.b. through 70.h. of this Consent Decree. Eligible Special Account funds for disbursement to Settling Defendants include only the amounts identified in paragraphs 70(b)(i) and 70(b)(v) below, and the fifty percent share of paragraph 70(b)(iii) that is identified as being eligible for disbursement to Settling Defendants, plus the accrued interest pertaining to those amounts.

In addition, EPA will retain certain funds in the Malvern TCE Superfund Site Special Account. Amounts retained by EPA will be used to fund or finance response actions at the Site, which may include transferring funds from the Special Account to the EPA Hazardous Substance Superfund to address past or future response costs incurred at the Site. Eligible Special Account Funds for disbursement to Settling Defendants do not include amounts identified in Paragraphs 70(b)(ii), 70 (b)(iv) nor the fifty percent retained by EPA pursuant to Paragraph 70(b)(iii), nor the accrued interest pertaining to such amounts. The United States retains the full right to determine the use of de minimis monies that are not within the definition of Eligible Special Account funds.

Funds from the Malvern TCE Superfund Site Special Account shall be eligible for disbursement as follows:

　　　　i.　With respect to the first $500,000 of De Minimis Settlement monies received, one-hundred percent (100%) of such funds shall be eligible for disbursement to Settling Defendants to reimburse Settling Defendants for costs incurred in performing the Remedial Design and Remedial Action.

　　　　ii.　With respect to De Minimis Settlement monies received in excess of

SMW00941

SW-000861

- 69 -

$500,000 and up to $1,500,000, such funds are not eligible for disbursement to Settling

Defendants. EPA shall retain one-hundred percent (100%) of these funds.

      iii. "With respect to <u>De Minimis</u> Settlement monies received in excess of

$1,500,000 and up to $2,000,000, EPA shall retain fifty percent (50%) of these funds. Settling

Defendants shall be eligible to be reimbursed fifty percent (50%) of these funds to reimburse

Settling Defendants for costs incurred in performing the Remedial Design and Remedial Action.

      iv. With respect to <u>De Minimis</u> Settlement monies received in excess of

$2,000,000 and up to $3,500,000, such funds are not eligible for disbursement to Settling

Defendants. EPA shall retain one-hundred percent (100%) of these funds.

      v. With respect to <u>De Minimis</u> Settlement monies received in excess of

$3,500,000, one-hundred percent (100%) of these funds shall be eligible for disbursement to

Settling Defendants to reimburse Settling Defendants for costs incurred in performing the

Remedial Design and Remedial Action.

      c. Settling Defendants shall submit to EPA a cost summary and certification of

the complete and accurate total costs of the Work of either the Remedial Design and/or Remedial

Action incurred and paid by Settling Defendants to date pursuant to this Consent Decree as

follows:

      i. Within sixty (60) days of Settling Defendants' completion of the

installation of the water line as required by the ROD and as required under, or approved by EPA

pursuant to, this Consent Decree, Settling Defendants shall submit a cost summary and

certification of the complete and accurate total costs incurred in connection with the installation

of the water line ("Water Line Cost Summary");

SMW00942

SW-000862

- 70 -

ii.    Within sixty (60) days of entry of the Consent Decree, Settling

Defendants shall submit a cost summary and certification of the complete and accurate total costs

of the Work of either the Remedial Design and/or Remedial Action as required under, or

approved by EPA pursuant to, this Consent Decree, incurred and paid by Settling Defendants

pursuant to this Consent Decree and up to the date of this cost submission ("Sixty Day Cost

Summary"). The cost summary required under this subparagraph shall not include any costs

identified in the Water Line Cost Summary submitted by Settling Defendants pursuant to

Paragraph 70.c.i. of this Consent Decree;

iii.    On a yearly basis following the commencement of the Remedial Action

pursuant to Paragraph 10.d. of this Consent Decree and until receipt of the Certificate of

Completion of the Work pursuant to Paragraph 61.c. of this Consent Decree, Settling Defendants

shall submit a cost summary and certification of the complete and accurate total costs of Work of

either the Remedial Design and/or Remedial Action as required under, or approved by EPA

pursuant to, this Consent Decree, incurred and paid by Settling Defendants pursuant to this

Consent Decree and up to the date of each such submission ("Annual Cost Summaries"). The

cost summaries required under this subparagraph shall not include any costs identified in the

Water Line or Sixty Day Cost Summaries submitted pursuant to Paragraphs 70.c.i. and 70.c.ii. of

this Consent Decree; and

iv.    Within sixty (60) days following receipt by Settling Defendants of the

Certificate of Completion of the Work pursuant to Paragraph 61.c. of this Consent Decree,

Settling Defendants shall submit a cost summary and certification of the complete and accurate

total costs of Work of either the Remedial Design and/or Remedial Action as required under, or

SMW00943

SW-000863

- 71 -

approved by EPA pursuant to, this Consent Decree, incurred and paid by Settling Defendants pursuant to this Consent Decree and up to the date of this submission ("Post-Certification Cost Summary"). The cost summary required under this subparagraph shall not include any costs identified in the Water Line, Sixty Day, or Annual Cost Summaries submitted pursuant to Paragraphs 70.c.i., 70.c.ii., and 70.c.iii. of this Consent Decree, for which reimbursement from Special Account funds was received.

Settling Defendants' certification for each submittal shall contain the following statement signed by the Chief Financial Officer of one of the Settling Defendants [or other person acceptable to EPA]: "To the best of my knowledge, after thorough investigation and review of Settling Defendants' detailed cost documentation of the Work of the *[insert as appropriate either Remedial Design or Remedial Action]*, I certify that the information contained in or accompanying this submittal is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations." The Chief Financial Officer of a Settling Defendant [or other person acceptable to EPA] shall also provide a description of the cost materials reviewed that support the certification.

d.    Settling Defendants' submittal of the complete and accurate total costs for the Work, including installation of the water line as set forth in the ROD, the Remedial Design, and Remedial Action, incurred by Settling Defendants pursuant to this Consent Decree, as required to be certified to EPA pursuant to this paragraph, shall not include: (i) costs incurred by Settling Defendants in reimbursing the United States for Future Response Costs paid pursuant to Paragraph 67 of this Consent Decree; (ii) attorneys' fees or costs; (iii) costs of any response

SMW00944

SW-000864

- 72 -

activities Settling Defendants perform that are not required under, or approved by EPA pursuant

to, this Consent Decree; (iv) costs related to Settling Defendants' litigation, settlement, or

responsible party or defendant search activities; (v) internal costs of Settling Defendants,

including but not limited to, salaries, travel, or in-kind services; or (vi) interest or stipulated or

other penalties paid pursuant to this Consent Decree.

  e. Disbursement of Special Account Funds

    i. Subject to the availability of funds in the Malvern TCE Superfund Site

Special Account and in accordance with Paragraph 70.b. of this Consent Decree, within ninety

(90) days of receipt by EPA of the complete cost summaries and certifications submitted by

Settling Defendants in accordance with Paragraph 70.c. of this Consent Decree, EPA shall

disburse funds within the Special Account to Settling Defendants as follows:

      (1) EPA shall disburse Special Account funds to reimburse up to

one-hundred percent (100) of the costs identified in Settling Defendants' Water Line Cost

Summary submitted in accordance with Paragraph 70.c.i. of this Consent Decree;

      (2) EPA shall disburse up to $500,000 of Special Account funds

to reimburse Settling Defendants for costs set forth in Settling Defendants' Sixty Day Cost

Summary submitted in accordance with Paragraph 70.c.ii. of this Consent Decree;

      (3) EPA shall disburse Special Account funds to reimburse up to

fifty percent (50% ) of the costs set forth in Settling Defendants' Annual Cost Summaries

submitted in accordance with Paragraph 70.c.iii. of this Consent Decree;

      (4) EPA shall disburse Special Account funds to reimburse up to

one-hundred percent (100%) of the costs set forth in Settling Defendants' Post-Certification Cost

SMW00945

SW-000865

- 73 -

Summary submitted in accordance with Paragraph 70.c.iv. of this Consent Decree.

Disbursement shall be made by EPA to the trustee(s) of the QSF set forth in the appendices, or the trustee's (trustees') designee. EPA shall provide Settling Defendants with periodic statements regarding contributions to, withdrawals and interest earnings on the Malvern TCE Superfund Site Special Account. Settling Defendants waive all rights to dispute EPA's determination of the amount of funds available in the Malvern TCE Superfund Site Special Account for disbursement. If EPA finds that Settling Defendants' certification includes an accounting error or a cost excluded under Paragraph 70.d., EPA shall recalculate the response costs and disburse the corrected amount. If Settling Defendants' complete and accurate total costs expended are less than amounts provided in this Paragraph then Settling Defendants may only seek reimbursement for those complete and accurate total costs.

f.    EPA's obligation to disburse funds from the Malvern TCE Superfund Site Special Account under this Consent Decree shall terminate without reservation: (i) upon EPA's determination that Settling Defendants have submitted a materially false, inaccurate, incomplete, or misleading certification; or that Settling Defendants failed to submit the certification required under this Consent Decree; or (ii) upon EPA's assumption of performance of any portion of the Work pursuant to Paragraph 105 of this Consent Decree, where such assumption of work is not challenged by Settling Defendants or, if challenged, is upheld under the dispute resolution provisions in Section XX of this Consent Decree. Settling Defendants may dispute EPA's decision to terminate special account disbursements pursuant to the dispute resolution provisions of Paragraphs 82 and 83 of this Consent Decree. As set forth in (e), above, however, if EPA finds that Settling Defendants' certification includes an accounting error or a cost excluded under

SMW00946

SW-000866

- 74 -

paragraph 70.d., EPA shall recalculate the response costs and disburse the corrected amount.

g.    Upon termination of special account disbursements under Paragraph 70.f. of this Consent Decree, EPA shall submit a bill to Settling Defendants for amounts already disbursed for Remedial Design and Remedial Action from the Malvern TCE Superfund Site Special Account related to the termination, with accrued Interest on that amount. The recapture of special account disbursements under this Consent Decree and any other provisions of law shall not constitute a waiver of criminal liability, and shall not be in lieu of any other penalty imposed on Settling Defendants under the Consent Decree or under any other applicable provision of law. Interest shall accrue from the date of disbursement of the funds from the Malvern TCE Superfund Site Special Account through the date of repayment. Within thirty (30) days of the date of the bill, Setting Defendants shall reimburse the United States for all costs billed, in the form of a certified or cashier's check made payable to Malvern TCE Superfund Site Special Account. The check, or a transmittal accompanying the check, shall reference EPA Region III, the Malvern TCE Superfund Site, Site/Spill ID Number 03-91, and the name and address of the Settling Defendants making payment. Settling Defendants shall send the check(s) to:

> United States Environmental Protection Agency
> Region III
> Attention: Superfund Accounting
> P.O. Box 360515
> Pittsburgh, PA 15251-6515

and shall send copies of the check(s) to:

> EPA Regional Docket Clerk (3RC00)
> United States Environmental Protection Agency, Region III
> 1650 Arch Street
> Philadelphia, PA 19103

SMW00947

SW-000867

- 75 -

and

Barbara Borden (3PM30)
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

EPA determinations as to the amount of recapture of funds shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

h.    After EPA issues its written Certification of Completion of the Work pursuant to this Consent Decree and after EPA completes all disbursement(s) to Settling Defendants pursuant to this section, if any funds remain in the Malvern TCE Superfund Site Special Account, EPA may cause all or any portion of such funds to revert to the EPA Hazardous Substance Superfund. Such reversion of funds to the EPA Hazardous Substance Superfund shall not be subject to review or challenge under the provisions of Section XX (Dispute Resolution) of this Consent Decree or in any other forum.

## XVIII. INDEMNIFICATION AND INSURANCE

71.    a.    The United States and the Commonwealth do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save, and hold harmless the United States, the Commonwealth, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling

SMW00948

.SW-000868

- 76 -

Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any

persons acting on their behalf or under their control, in carrying out activities pursuant to this

Consent Decree, including, but not limited to, any claims arising from any designation of

Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.

Further, the Settling Defendants agree to pay the United States and the Commonwealth all costs

they incur including, but not limited to, attorneys fees and other expenses of litigation and

settlement arising from, or on account of, claims made against the United States or the

Commonwealth based on negligent or other wrongful acts or omissions of Settling Defendants,

their officers, directors, employees, agents, contractors, subcontractors, and any persons acting

on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.

Neither the United States nor the Commonwealth shall be held out as a party to any contract

entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this

Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an

agent of the United States or the Commonwealth.

     b.  The United States and the Commonwealth shall give Settling Defendants notice

of any claim for which the United States or the Commonwealth plans to seek indemnification

pursuant to Paragraph 71.a., and shall consult with Settling Defendants prior to settling such

claim.

    72.  Settling Defendants waive all claims against the United States and the Commonwealth

for damages or reimbursement or for set-off of any payments made or to be made to the United

States or the Commonwealth, arising from or on account of any contract, agreement, or

arrangement between any one or more of Settling Defendants and any person for performance of

¬M·W00949

SW-000869

- 77 -

Work on or relating to the Site, including, but not limited to, claims on account of construction

delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and

the Commonwealth with respect to any and all claims for damages or reimbursement arising

from or on account of any contract, agreement, or arrangement between any one or more of

Settling Defendants and any person for performance of Work on or relating to the Site, including,

but not limited to, claims on account of construction delays.

73.   No later than fifteen (15) days before commencing any on-site Work, Settling

Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of

Completion of the Remedial Action pursuant to Paragraph 60.b. of Section XV (Certification of

Completion) comprehensive general liability insurance with limits of five million dollars,

combined single limit, and automobile liability insurance with limits of $500,000, combined

single limit, naming the United States and the Commonwealth as additional insured. In addition,

for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that

their contractors or subcontractors satisfy, all applicable laws and regulations regarding the

provision of worker's compensation insurance for all persons performing the Work on behalf of

Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work

under this Consent Decree, Settling Defendants shall provide to EPA and the Commonwealth

certificates of such insurance and a copy of each insurance policy. Settling Defendants shall

resubmit such certificates and copies of policies each year on the anniversary of the effective date

of this Consent Decree. If Settling Defendants demonstrate by evidence satisfactory to EPA and

the Commonwealth that any contractor or subcontractor maintains insurance equivalent to that

described above, or insurance covering the same risks but in a lesser amount, then, with respect

SMW00950

SW-000870

- 78 -

to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor. Settling Defendants may satisfy the provisions of this Paragraph 73 if they submit to EPA for approval one of the financial assurance mechanisms of Section XIV (Assurance of Ability to Complete Work) in at least the amounts stated in this Paragraph 73 demonstrating that Settling Defendants are able to pay any claims arising out of Settling Defendants' performance of their obligations under this Consent Decree. Such financial assurance mechanism shall meet all of the requirements of Section XIV (Assurance of Ability to Complete Work). If Settling Defendants seek to utilize the mechanisms set forth in Section XIV (Assurance of Ability to Complete Work) to satisfy the provisions of this Paragraph 73, they must demonstrate an ability to pay the amounts required under this Paragraph, above and beyond that required by the obligations of Section XIV (Assurance of Ability to Complete Work).

## XIX. FORCE MAJEURE

74. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (i) as it is occurring, and (ii) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work, a

SMW00951

SW-000871

- 79 -

failure to attain the Performance Standards, or increased costs.

75.    If any event occurs or has occurred that may delay the performance of any obligation

under this Consent Decree, whether or not caused by a force majeure event, the Settling

Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's

Alternate Project Coordinator within two (2) Working Days of when Settling Defendants first

knew that the event might cause a delay.  Within five (5) Working Days thereafter, Settling

Defendants shall provide in writing to EPA and the Commonwealth an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or

to be taken to prevent or minimize the delay; a schedule for implementation of any measures to

be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants'

rationale for attributing such delay to a force majeure event if they intend to assert such a claim;

and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or

contribute to an endangerment to public health, welfare or the environment.  The Settling

Defendants shall include with any notice  available documentation supporting their claim that the

delay was attributable to a force majeure.  Failure to comply with the above requirements shall

preclude Settling Defendants from asserting any claim of force majeure for that event for the

period of time of such failure to comply, and for any additional delay caused by such failure.

Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants,

any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should

have known.

76.    If EPA, after a reasonable opportunity for review and comment by the

Commonwealth, agrees that the delay or anticipated delay is attributable to a force majeure

SMW00952

SW-000872

- 80 -

event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the Commonwealth, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the Commonwealth, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the Commonwealth, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

77.    If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), they shall do so no later than fifteen (15) days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 74 and 75, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

SMW00953

SW-000873

- 81 -

## XX. DISPUTE RESOLUTION

78.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States or the Commonwealth to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

79.   Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

80.   a.   In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA, in consultation with PADEP, shall be considered binding unless, within ten (10) Working Days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the Commonwealth a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation (which may include materials incorporated by reference) relied upon by the Settling Defendants.  The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 81 or Paragraph 82.

SMW00954

SW-000874

- 82 -

b. Within fourteen (14) Working Days after receipt of Settling Defendants'

Statement of Position, EPA will serve on Settling Defendants its Statement of Position,

including, but not limited to, any factual data, analysis, or opinion supporting that position and

all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a

statement as to whether formal dispute resolution should proceed under Paragraph 81 or 82.

Within seven (7) Working Days after receipt of EPA's Statement of Position, Settling Defendants

may submit a Reply.

c. If there is disagreement between EPA and the Settling Defendants as to whether

dispute resolution should proceed under Paragraph 81 or 82, the parties to the dispute shall

follow the procedures set forth in the Paragraph determined by EPA to be applicable. However,

if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall

determine which Paragraph is applicable in accordance with the standards of applicability set

forth in Paragraphs 81 and 82.

81. Formal dispute resolution for disputes pertaining to the selection or adequacy of any

response action and all other disputes that are accorded review on the administrative record under

applicable principles of administrative law shall be conducted pursuant to the procedures set

forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action

includes, without limitation: (i) the adequacy or appropriateness of plans, procedures to

implement plans, or any other items requiring approval by EPA in consultation with PADEP

under this Consent Decree; and (ii) the adequacy of the performance of response actions taken

pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any

dispute by Settling Defendants regarding the validity of the ROD's provisions.

SMW00955

SW-000875

- 83 -

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Hazardous Site Cleanup Division, EPA Region III, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 81.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 81.c. and d.

c.    Any administrative decision made by EPA pursuant to Paragraph 81.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within ten (10) Working Days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States and/or the Commonwealth may file a response to Settling Defendants' motion.

d.    In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Director of the Hazardous Site Cleanup Division, EPA Region III, is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 81.a.

82.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under

SMW00956

SW-000876

- 84 -

applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendants' Statement of Position submitted

pursuant to Paragraph 80, the Director of the Hazardous Site Cleanup Division, EPA Region III,

will issue a final decision resolving the dispute.

b.    The Acting Deputy Director's decision shall be binding on the Settling

Defendants unless, within ten (10) days of receipt of the decision, the Settling Defendants file

with the Court and serve on the parties a motion for judicial review of the decision setting forth

the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the

schedule, if any, within which the dispute must be resolved to ensure orderly implementation of

the Consent Decree. The United States and the Commonwealth may file a response to Settling

Defendants' motion.

83.    Notwithstanding Paragraph L of Section I (Background) of this Consent Decree,

judicial review of any dispute governed by Paragraph 82 shall be governed by applicable

principles of law.

84.    Disputes, if any, between the Commonwealth and EPA shall be handled in accordance

with Paragraph 28 of this Consent Decree.

85.    The invocation of formal dispute resolution procedures under this Section shall not

extend, postpone, or affect in any way any obligation of the Settling Defendants under this

Consent Decree unless EPA or the Court agrees otherwise. Stipulated penalties with respect to

the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the

dispute as provided in Paragraph 94. Notwithstanding the stay of payment, stipulated penalties

shall accrue from the first day of noncompliance with any applicable provision of this Consent

SMW00957

SW-000877

- 85 -

Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated

penalties shall be assessed and paid as provided in Section XXI (Stipulated Penalties).

## XXI. STIPULATED PENALTIES

86. Settling Defendants shall be liable for stipulated penalties in the amounts set forth in

Paragraphs 87 and 88, fifty percent (50%) of which shall be payable to the United States, and

fifty percent (50%) of which shall be payable to the Commonwealth, for failure to comply with

the requirements of this Consent Decree specified below, unless excused under Section XIX

(Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities

under this Consent Decree or any work plan or other plan approved under this Consent Decree

identified below in accordance with all applicable requirements of law, this Consent Decree, and

any plans or other documents approved by EPA pursuant to this Consent Decree and within the

specified time schedules established by and approved under this Consent Decree.

87. a. The following stipulated penalties shall accrue per violation per day for any

noncompliance identified in Subparagraph b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th day |
| $4,000 | 15th through 30th day |
| $8,000 | 31st day and beyond |

b. Failure to comply with requirements of Section VI (Performance of the Work

by Settling Defendants), Section VII (Remedy Review), Section IX (Quality Assurance,

Sampling, and Data Analysis), Section XII (EPA Approval of Plans and Other Submissions), and

Section XVI (Emergency Response).

SMW00958

SW-000878

- 86 -

88.  a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 30th day and beyond |

b.  All requirements of this Consent Decree that are not identified in Paragraph 87.b. of this Consent Decree.

89.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 105 of Section XXII (Covenants by Plaintiffs), Settling Defendants shall be liable for a stipulated penalty in the amount of $5,000.

90.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (i) with respect to a deficient submission under Section XII (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (ii) with respect to a decision by the Director of the Hazardous Site Cleanup Division, EPA Region III, under Paragraph 81.b. or 82 of Section XX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Acting Deputy Director of the Hazardous Site Cleanup Division, EPA Region III, issues a final decision regarding such dispute; or (iii) with respect to judicial review by this Court of any dispute under Section XX (Dispute Resolution), during the

SMW00959

SW-000879

- 87 -

period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

91.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA and the Commonwealth may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

92.    All penalties accruing under this Section shall be due and payable to the United States and the Commonwealth within thirty (30) days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to the United States Environmental Protection Agency, Region III, Attention: Superfund Accounting, P.O. Box 360515, Pittsburgh, PA 125251-6515, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #03-91, the DOJ Case Number 90-11-3-1731-DOJ, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVII (Notices and Submissions), and to the Docket Clerk (3RC00), United States Environmental Protection

SMW00960

SW-000880

- 88 -

Agency, Region III, 1650 Arch Street, Philadelphia, PA 19103-2029. All payments to the

Commonwealth under this Section shall be paid by certified or cashier's check(s) made payable

to the Pennsylvania Hazardous Sites Cleanup Fund. The Settling Defendants shall send the

certified or cashier's check to the attention of Bruce D. Beitler, Regional Environmental Cleanup

Program Manager, PADEP - Southeast Region, Lee Park, Suite 6010, 555 North Lane,

Conshohocken, PA 19428.

93.    The payment of penalties shall not alter in any way Settling Defendants' obligation to

complete the performance of the Work required under this Consent Decree.

94.    Penalties shall continue to accrue as provided in Paragraph 90 during any dispute

resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not

appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the

Commonwealth within fifteen (15) days of the agreement or the receipt of EPA's decision or

order;

b.    If the dispute is appealed to this Court and the United States and/or the

Commonwealth prevails in whole or in part, Settling Defendants shall pay all accrued penalties

determined by the Court to be owed to EPA and the Commonwealth within sixty (60) days of

receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, Settling Defendants

shall pay all accrued penalties determined by the District Court to be owing to the United States

or the Commonwealth into an interest-bearing escrow account within sixty (60) days of receipt of

the Court's decision or order. Penalties shall be paid into this account as they continue to accrue,

SMW00961

SW-000881

- 89 -

at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the Commonwealth or to Settling Defendants to the extent that they prevail.

95.    a.    If Settling Defendants fail to pay stipulated penalties when due, the United States or the Commonwealth may institute proceedings to collect the penalties, as well as interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 92.

b.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the Commonwealth to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA. Provided, however, that for any particular violation of this Consent Decree, the United States shall be limited to either demanding stipulated penalties pursuant to this Section XXI of the Consent Decree or pursuing civil penalties pursuant to Section 122(l) of CERCLA.

96.    Notwithstanding any other provision of this Section, the United States in consultation with the Commonwealth may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXII. COVENANTS BY PLAINTIFFS

97.    In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 99, 100, and 104 of this Section, the United States covenants

SMW00962

SW-000882

- 90 -

not to sue or to take administrative action against the signatories to this Decree and their successors, pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 67 of Section XVII (Reimbursement of Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 60.b. of Section XV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and their successors, and do not extend to any other person.

98.    In consideration of the payments that will be made by the Settling Federal Agency under the terms of the Consent Decree, including any agreements referenced in Paragraph 6(g) above, and except as specifically provided in Paragraphs 99, 100, and 104 of this Section, EPA covenants not to take administrative action against the Settling Federal Agency pursuant to Sections 106 and 107 of CERCLA relating to the Site. Except with respect to future liability, EPA's covenant shall take effect upon the receipt of the payments required by Paragraph 66 of Section XVII (Reimbursement of Response Costs). With respect to future liability, EPA's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 60.b. of Section XV (Certification of Completion). EPA's covenant is conditioned upon the satisfactory performance by the Settling Federal Agency of its obligations under this Consent Decree. EPA's covenant extends only to the Settling Federal Agency and does not extend to any other person.

SMW00963

SW-000883

- 91 -

99. <u>United States' Pre-Certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agency: (i) to perform further response actions relating to the Site; or (ii) to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

    a.   conditions at the Site, previously unknown to EPA, are discovered; or

    b.   information, previously unknown to EPA, is received, in whole or in part,

and these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

100. <u>United States' Post-Certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agency: (i) to perform further response actions relating to the Site or (ii) to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

    a.   conditions at the Site, previously unknown to EPA, are discovered, or

    b.   information, previously unknown to EPA, is received,

        in whole or in part,

SMW00964

SW-000884

- 92 -

and these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

101.    For purposes of Paragraph 99, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 100, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

102.    Commonwealth Covenant Not to Sue.  Subject to the reservations provided in this Paragraph and Settling Defendants' full compliance with this Consent Decree, and in consideration of the past actions taken and of payments to be paid by Settling Defendants, the Commonwealth covenants not to sue or order or take administrative action against Settling Defendants and their successors pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a) and Sections 507, 701, 702, 1101 and 1102 of HSCA, 35 P.S. §§ 6020.507, 6020.701, 6020.702, 6020.1101, and 6020.1102, or any other statutory or common law provision for performance of the Work and recovery of Commonwealth Past Response Costs and Commonwealth Future Response Costs as defined in this Consent Decree.  Except with respect to future liability under HSCA, this covenant not to sue shall take effect upon the signing of this

SMW00965

SW-000885

- 93 -

Consent Decree by the Parties and the receipt by the Commonwealth of the payments required by

Paragraph 65 of Section XVII (Reimbursement of Response Costs). With respect to future

liability under HSCA, this covenant not to sue shall become effective upon Certification of

Completion of the Work by the Commonwealth pursuant to Paragraph 62 of Section XV

(Certification of Completion of the Work). These covenants not to sue are conditioned upon the

satisfactory performance by Settling Defendants of their obligations under this Consent Decree.

These covenants not to sue extend only to the Settling Defendants and their successors and do

not extend to any other person.

103.    Subject to the reservations provided in this Paragraph and the Settling Federal

Agency's full compliance with this Consent Decree, and in consideration of the past actions

taken and of payments to be paid by the Settling Federal Agency, the Commonwealth covenants

not to sue or order or take administrative action against the Settling Federal Agency pursuant to

Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a) and Sections 507, 701,

702, 1101 and 1102 of HSCA, 35 P.S. §§ 6020.507, 6020.701, 6020.702, 6020.1101, and

6020.1102, or any other statutory or common law provision for performance of the Work and

recovery of Commonwealth Past Response Costs and Commonwealth Future Response Costs as

defined in this Consent Decree. Except with respect to future liability under HSCA, this

covenant not to sue shall take effect upon the signing of this Consent Decree by the Parties and

the receipt by the Commonwealth of the payments required by paragraph 66 of Section XVII

(Reimbursement of Response Costs). With respect to future liability under HSCA, this covenant

not to sue shall take effect upon Certification of Completion of the Work by the Commonwealth

pursuant to paragraph 62 of Section XV (Certification of Completion of the Work). These

SMW00966

SW-000886

- 94 -

covenants not to sue extend only to the Settling Federal Agency and do not extend to any other person.

104.    General reservations of rights.  The covenants set forth above do not pertain to any matters other than those expressly specified in Paragraphs 97, 98, 102 and 103.  The United States and the Commonwealth reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and EPA and the federal natural resource trustees, and the Commonwealth reserve, and this Consent Decree is without prejudice to, all rights against the Settling Federal Agency, with respect to all other matters, including but not limited to, the following:

    a.    claims based on a failure by Settling Defendants or the Settling Federal Agency to meet requirements of this Consent Decree;

    b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site;

    c.    liability for future disposal of Waste Material at the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA;

    d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

    e.    criminal liability;

    f.    liability for violations of federal or state law; and

    g.    liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance

SMW00967

SW-000887

- 95 -

Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the Work).

105. <u>Work Takeover</u>. In the event EPA determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendants may invoke the procedures set forth in Section XX (Dispute Resolution), Paragraph 81, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVII (Reimbursement of Response Costs).

106. Notwithstanding any other provision of this Consent Decree, the United States and the Commonwealth retain all authority and reserve all rights to take any and all response actions authorized by law. The Commonwealth and EPA also make reservations as set forth in Paragraph 28.

## XXIII. COVENANTS BY SETTLING DEFENDANTS AND THE SETTLING FEDERAL AGENCY

107. <u>Covenant Not to Sue</u>. Subject to the reservations in Paragraph 109, the Settling Defendant signatories to this Consent Decree hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the Commonwealth with respect to the Site or this Consent Decree, including, but not limited to:

    a.   any direct or indirect claim for reimbursement from the Hazardous Substance

SMW00968

SW-000888

- 96 -

Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through

CERCLA §§ 106(b)(2), 107, 111, 112, 113, or any other provision of law;

   b. any claims against the United States or the Commonwealth, including any

department, agency or instrumentality of the United States or the Commonwealth under

CERCLA Sections 107 or 113 or HSCA Section 507 or 705 related to the Site; or

   c. any claims arising out of response activities at the Site, including claims based

on EPA's and the Commonwealth's selection of response actions, oversight of response activities

or approval of plans for such activities.

  108. <u>Covenant by the Settling Federal Agency</u>. The Settling Federal Agency hereby

agrees not to assert any direct or indirect claim for reimbursement from the Hazardous Substance

Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through

CERCLA Section 106(b)(2), 107, 111, 112, 113, or any other provision of law with respect to the

Site. The covenant does not preclude demand for reimbursement from the Superfund of costs

incurred by the Settling Federal Agency in the performance of its duties (other than pursuant to

this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R.

Part 300).

  109. The Settling Defendants reserve, and this Consent Decree is without prejudice to: a)

claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the

United States Code, for money damages for injury or loss of property or personal injury or death

caused by the negligent or wrongful act or omission of any employee of the United States while

acting within the scope of his or her office or employment under circumstances where the United

States, if a private person, would be liable to the claimant in accordance with the law of the place

SW-00969

SW-000889

- 97 -

where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA; b) contribution claims against the Settling Federal Agency in the event any claim is asserted by the United States or the Commonwealth against the Settling Defendants under the authority of or under Paragraphs 99, 100, 103, and 104 of Section XXII (Covenants by Plaintiffs), but only to the same extent and for the same matters, transactions, or occurrences as are raised in the claim of the United States or the Commonwealth against Settling Defendants; c) claims against the United States and/or the Commonwealth under CERCLA sections 107 or 113 or HSCA sections 507 or 705, based on the discovery of information or documentation that i) as set forth under the Procedure and Payment Schedule contained in Appendix F of this Decree, the volume of hazardous substances attributable to the United States exceeds the amount agreed to by the Settling Parties, or ii) a more than de micromis volume of hazardous substances at the Site is attributable to the Commonwealth.; and d) the Settling Defendants' claims against the Special Site Account as set forth herein.

110. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d). However, the disbursement to Settling Defendants' of money in the Special Site

SMW00970

SW-000890

- 98 -

Account is not barred by lack of this preauthorization.

111.    Settling Defendants agree to waive all claims or causes of action that they may have

for all matters relating to the Site, including for contribution, against any person (i) whose

liability to Settling Defendants with respect to the Site is based solely on CERCLA § 107(a)(3)

or (4), and (ii) who arranged for the disposal, treatment, or transport for disposal or treatment, or

accepted for transport for disposal or treatment, of 82.5 gallons or less of liquid materials

containing hazardous substances.

## XXIV. EFFECT OF SETTLEMENT: CONTRIBUTION PROTECTION

112.    Nothing in this Consent Decree shall be construed to create any rights in, or grant

any cause of action to, any person not a signatory to this Consent Decree.  The preceding

sentence shall not be construed to waive or nullify any rights that any person not a signatory to

this decree may have under applicable law.  Each of the Parties expressly reserves any and all

rights (including, but not limited to, any right to contribution), defenses, claims, demands, and

causes of action which each Party may have with respect to any matter, transaction, or

occurrence relating in any way to the Site against any person not a Party hereto.

113.    The Parties agree, and by entering this Consent Decree this Court finds, that the

Settling Defendants and the Settling Federal Agency are entitled, as of the effective date of this

Consent Decree, to protection from contribution actions or claims as provided by CERCLA

Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and Section 705(c)(2) of HSCA, 35 P.S. §

6020.705(c)(2), for Matters Addressed in this Consent Decree; provided however, such

protection shall be of no effect as to the Settling Federal Agency or any Settling Defendant upon

the failure to meet its payment or work commitment under the arrangements recognized under

SMW00971

SW-000891

- 99 -

6(g)(ii), (iii) and (iv) of this Consent Decree.

114.    The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States and the Commonwealth in writing no later than at the time they initiate such suit or claim.

115.    The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States and the Commonwealth within ten (10) days of service of the complaint on them.  In addition, Settling Defendants shall notify the United States and the Commonwealth within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

116.    In any subsequent administrative or judicial proceeding initiated by the United States or the Commonwealth for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Commonwealth in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants set forth in Section XXII (Covenants by Plaintiffs).

## XXV. ACCESS TO INFORMATION

117.    Settling Defendants shall provide to EPA and the Commonwealth, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent

SMW00972