SW-000892

- 100 -

Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA and the Commonwealth, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

118.    a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the Commonwealth, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA, the public may be given access to such documents or information without further notice to Settling Defendants.

b.    The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiffs with the following: (i) the title of the document, record, or information; (ii) the date of the document, record, or information; (iii) the name and title of the author of the document, record, or information; (iv) the name and title of each addressee and recipient; (v) a description of the contents of the document, record, or information: and (vi) the

SMW00973

SW-000893

- 101 -

privilege asserted by Settling Defendants. However, no documents, reports or other information

created or generated pursuant to the requirements of the Consent Decree shall be withheld on the

grounds that they are privileged.

119.    No claim of confidentiality shall be made with respect to any data, including, but not

limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other documents or information evidencing conditions at or around the

Site.

## XXVI. RETENTION OF RECORDS

120.    Until ten (10) years after the Settling Defendants' receipt of EPA's notification

pursuant to Paragraph 61.c. of Section XV (Certification of Completion of the Work), each

Settling Defendant shall preserve and retain all records and documents now in its possession or

control or which come into its possession or control that relate in any manner to the performance

of the Work or liability of any person for response actions conducted and to be conducted at the

Site, regardless of any corporate retention policy to the contrary. Until ten (10) years after the

Settling Defendants' receipt of EPA's notification pursuant to Paragraph 61.c. of Section XV

(Certification of Completion), Settling Defendants shall also instruct their contractors and agents

to preserve all documents, records, and information of whatever kind, nature, or description

relating to the performance of the Work.

121.    At the conclusion of this document retention period, Settling Defendants shall notify

the United States and the Commonwealth at least ninety (90) days prior to the destruction of any

such records or documents, and, upon request by the United States or the Commonwealth,

Settling Defendants shall deliver any such records or documents to EPA or the Commonwealth.

SW-000894

- 102 -

If the United States has not responded to Settling Defendants' notice prior to the time Settling

Defendants intend to destroy the records or documents, Settling Defendants shall deliver all such

records and documents to EPA no earlier than ten (10) days after providing an additional written

notice that such records and documents will be delivered, unless EPA provides otherwise after

receiving such notice. The Settling Defendants may assert that certain documents, records and

other information are privileged under the attorney-client privilege or any other privilege

recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide

the Plaintiffs with the following: (i) the title of the document, record, or information; (ii) the date

of the document, record, or information; (iii) the name and title of the author of the document,

record, or information; (iv) the name and title of each addressee and recipient; (v) a description

of the subject of the document, record, or information; and (vi) the privilege asserted by Settling

Defendants. However, no documents, reports, or other information created or generated pursuant

to the requirements of the Consent Decree shall be withheld on the grounds that they are

privileged.


122.    Each Settling Party hereby certifies individually that, to the best of its knowledge and

belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise

disposed of any records, documents, or other information relating to its potential liability

regarding the Site since notification of potential liability by the United States or the

Commonwealth or the filing of suit against it regarding the Site and that it has fully complied

with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of

CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

SMW00975

SW-000895

- 103 -

## XXVII. NOTICES AND SUBMISSIONS

123.    Whenever, under the terms of this Consent Decree, written notice is required to be

given or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their

successors give notice of a change to the other Parties in writing.  All notices and submissions

shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified

herein shall constitute complete satisfaction of any written notice requirement of the Consent

Decree with respect to the United States, EPA, Settling Federal Agencies, the Commonwealth,

and the Settling Defendants, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044
       Re: DOJ # 90-11-3-1731-DOJ

        and

Joan A. Johnson
Assistant Regional Counsel (3RC41)
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA  19103-2029

As to the Settling Federal Agencies

Chief, Environmental Defense Section
United States Department of Justice

SMW00976

SW-000896

- 104 -

Environment and Natural Resource Division
P.O. Box 23986
Washington, D.C. 20026-3986
re: DJ# 90-11-6-80

As to EPA:

Linda Dietz (3HW21)
EPA Project Coordinator
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103-2029

As to the Commonwealth:

April Flipse
PADEP Project Coordinator
PADEP - Southeast Region
Lee Park, Suite 6010, 555 North Lane
Conshohocken, PA 19428

As to the Settling Defendants:

[Name]
Settling Defendants' Project Coordinator
[Address]

## XXVIII. EFFECTIVE DATE

124.    The effective date of this Consent Decree shall be the date upon which this Consent

Decree is entered by the Court, except as otherwise provided herein.

## XXIX. RETENTION OF JURISDICTION

125.    This Court retains jurisdiction over both the subject matter of this Consent Decree

and the Settling Defendants for the duration of the performance of the terms and provisions of

this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any

SMW00977

SW-000897

- 105 -

time for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with

its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution) hereof.

This Court also retains jurisdiction over the agreement between the Settling Performing

Defendants and the Settling Partial Cash-Out Defendants; however that agreement shall not be

construed to affect the obligations of the Settling Defendants as set forth in this Consent Decree

nor the rights of the United States in enforcing the terms of this Consent Decree, and in the event

of any conflict, the terms of this Consent Decree shall prevail.

## XXX. APPENDICES

126.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the complete list of Settling Defendants.

"Appendix B-1 is a list of Settling Performing Defendants.

"Appendix B-2 is a list of Settling Partial Cash-Out Defendants.

"Appendix C" is the list of Settling Federal Agencies.

"Appendix D" is the "Qualified Settlement Fund".

"Appendix E" is the Malvern TCE Superfund Site Administrative Order on Consent for De

Minimis Settlement, U.S. EPA Docket No. III-98-074-DC.

"Appendix F" is the Procedure and Payment Schedule Regarding the Determination Under

Paragraph 109(c) that the Volume of Hazardous Substances Attributable to the United States

Exceeds the Amount Agreed to by the Settling Parties.

SMW00978

SW-000898

- 106 -

## XXXI. COMMUNITY RELATIONS

127.    Settling Defendants shall propose to EPA and the Commonwealth their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendants under the Plan. Settling Defendants shall also cooperate with EPA and the Commonwealth in providing information regarding the Work to the public. As requested by EPA or the Commonwealth, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the Commonwealth to explain activities at or relating to the Site.

## XXXII. MODIFICATION

128.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of the EPA Project Coordinator in consultation with the PADEP Project Coordinator and the Settling Defendants. All such modifications shall be made in writing.

129.    Except as otherwise provided in this Paragraph, no modifications shall be made to provisions of this Consent Decree without written notification to and written approval of the United States in consultation with the Commonwealth, Settling Defendants, and the Court. Prior to providing its approval to any modification to the provisions of this Consent Decree, the United States will provide the Commonwealth with a reasonable opportunity to review and comment on the proposed modification. Modifications to the Remedial Design Work Plan, Remedial Action Work Plan, and any other plan approved by EPA under this Consent Decree that do not materially alter the requirements of those documents may be made by written agreement between the EPA Project Coordinator, after providing the Commonwealth with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

SMW00979

SW-000899

- 108 -

notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

134.    Each Settling Defendant shall identify, on the attached signature page, the name,

address, and telephone number of an agent who is authorized to accept service of process by mail

on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.

Settling Defendants hereby agree to accept service in that manner and to waive the formal service

requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local

rules of this Court, including, but not limited to, service of a summons.


## XXXV. RELATIONSHIP BETWEEN CONSENT ORDER AND CONSENT DECREE

135.    The United States and the Settling Defendants have agreed that certain portions of

the Work shall commence in accordance with Administrative Order on Consent, EPA Docket

No. III-99-018-DC ("Consent Order"), prior to the effective date of this Consent Decree. Upon

the effective date of this Consent Decree, and as set forth in Section III of the Consent Order, the

Consent Order shall terminate. It is agreed by the Parties, that upon termination of the Consent

Order due to entry of this Consent Decree, performance of work commenced under the Consent

Order shall continue under this Consent Decree in accordance with the EPA-approved schedules

and requirements developed under the Consent Order. To the extent that Settling Defendants

have fulfilled obligations under the Consent Order that are also required by this Consent Decree,

Settling Defendants shall also be deemed to have fulfilled such obligations under this Consent

Decree.

SMW00981

SW-000900

- 109 -

SO ORDERED THIS _____ DAY OF _____, 19__.

_____
United States District Judge

SMW00982

SW-000901

- 110 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: 8/19/99

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources
Division
U.S. Department of Justice
Washington, D.C. 20530

ROBERT LEFEVRE
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Washington, D.C. 20530

MICHAEL R. STILES
United States Attorney

JAMES G. SHEEHAN
Chief, Civil Division

NURIYE C. UYGUR
Assistant United States Attorney
Eastern District of Pennsylvania
U.S. Department of Justice
615 Chestnut Street
Philadelphia, PA 19106

SMW00983

SW-000902

- 110 -

YVETTE M. WILKERSON-BARRON
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

SMW00984

SW-000903

- 112 -

W. MICHAEL McCABE
Regional Administrator
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA  19103-2029


WILLIAM C. EARLY
Acting Regional Counsel
U.S. Environmental Protection Agency,
Region III
1650 Arch Street
Philadelphia, PA  19103-2029


JOAN A. JOHNSON
Assistant Regional Counsel
U.S. Environmental Protection Agency,
Region III
1650 Arch Street
Philadelphia, PA  19103-2029

SMW00985

SW-000904

- 113 -

United States v. Settling Defendants
Consent Decree Signature Page

FOR THE COMMONWEALTH OF PENNSYLVANIA

Date: 6/21/99

MARGARET O. MURPHY
Assistant Counsel
Office of Chief Counsel
PADEP – Southeast Region
Lee Park, Suite 6015, 555 North Lane
Conshohocken, PA 19428

Date: 6/21/99

[Name]  BRUCE D. BEITLER
[Title].  Regional Manager, Environmental Cleanup Pro
[Address]PADEP – Southeast Region
         Lee Park, Suite 6010, 555 North Lane
         Conshohocken, PA  19428

SMW00986

SW-000905

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR ACTION MANUFACTURING COMPANY, INC., a Delaware
Corporation, for itself and on behalf of its predecessors: Action Manufacturing
Company, Inc., a Pennsylvania Corporation, AMRAM, Inc., AMCOM, Inc. and
Harry and Martha Stern

This corresponds to the following entity identified by EPA as contributing substances to the Site:

Action Manufacturing Company
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: June 10 , 1999

Arthur J. Mattia,
President
100 East Erie Avenue
Philadelphia, PA 19134

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:       Ballard Spahr Andrews & Ingersoll, LLP
Title:        Attorneys for Action Manufacturing Company, Inc.
Attention:  Robert B. McKinstry, Jr., Esquire
             Harry R. Weiss, Esquire
Address:   1735 Market Street, 51st Floor
             Philadelphia, PA 19103-7599
Tel. Number: 215-864-8208

SMW00987

SW-000906

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR A̲l̲c̲o̲a̲ ̲I̲n̲c̲_____ ̶C̶O̶M̶P̶A̶N̶Y̶,̶ ̶I̶N̶C̶. */

(fka Aluminum Company of America)

This corresponds to the following entity identified by EPA as contributing substances to the Site:

Aluminum Company of America_____
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date:  6/14/99

[Name — Please Type]  ̶R̶a̶l̶p̶h̶ ̶W̶.̶ ̶W̶a̶e̶c̶h̶t̶e̶r̶
[Title — Please Type]  Senior Counsel
[Address — Please Type]  Alcoa Corporate Center
                        201 Isabella Street
                        Pittsburgh, PA 15212-5858

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: David G. Hetzel, Esq._____
Title: ̶C̶o̶u̶n̶s̶e̶l̶,̶ ̶L̶e̶B̶o̶e̶u̶f̶,̶ ̶L̶a̶m̶b̶,̶ ̶G̶r̶e̶e̶n̶e̶ ̶&̶ ̶M̶a̶c̶R̶a̶e̶,̶ L.L.P.
Address:  ̶O̶n̶e̶ ̶G̶a̶t̶e̶w̶a̶y̶ ̶C̶e̶n̶t̶e̶r̶,̶ 420 Fort Duquesne Blvd., Suite 160
Tel. Number: (412) 594-2300_____    Pittsburgh, PA 15222-1437
      [Please Type above information]

_____

*/  A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SW-000907

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR <u>Armstrong World Industries, Inc.</u>   XXXXXXXXXXXXXXX


This corresponds to the following entity identified by EPA as contributing substances to the Site:

<u>Armstrong Cork Company</u>
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: <u>June 15, 1999</u>

[Name — Please Type]          H. C. Goff
[Title — Please Type]          Senior Vice President, Operations,
[Address — Please Type]        Floor Products Operations
                               Armstrong World Industries, Inc.
                               2500 Columbia Avenue, Lancaster, PA  17603


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: <u>Deborah K. Owen</u>
Title: <u>Senior Vice President, Secretary</u> and General Counsel
Address: <u>Armstrong World Industries, Inc.</u>, 2500 Columbia Ave., Lancaster PA 1760
Tel. Number: <u>(717) 396-3586</u>
        [Please Type above information]


_____

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

SMW30095

SW-000908

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


## FOR L-3 COMMUNICATIONS AYDIN CORPORATION


This corresponds to the following entity identified by EPA as contributing substances to the Site:

Aydin Corporation
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: JUNE 17, 1999

David Sweet
Counsel


Agent Authorized to Accept Service on Behalf of Above-signed Party:

    Name:  David Sweet, Esq.; Payne & Fears, LLP
    Title:  Counsel
    Address:  4 Park Plaza, Suite 1100, Irvine CA 92614
    Tel. Number: (949) 851-1100
    [Please Type above information]

SMW00990

SW-000909

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR _Barker Pipe Fittings_ ~~COMPANY, INC.~~ */

This corresponds to the following entity identified by EPA as contributing substances to the Site:

_Penflex Inc_

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: _6/14/99_

[Name – Please Type] _Nathaniel S. Barker_
[Title – Please Type] _Vice President_
[Address – Please Type] _Barker Pipe Fittings Co_
_271 Lancaster Ave_
_Frazer, PA  19355_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: _Nathaniel Barker_
Title: _V.P._
Address: _Barker Pipe Fittings Co, 271 Lancaster Ave, Frazer PA 1935_
Tel. Number: _610 - 296 - 7070_
[Please Type above information]

---

*/    A separate signature page must be signed by each corporation, individual or other legal
      entity that is settling with the United States.

SMW00991

SW-000910

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

BECKETT CORPORATION,
A NEW JERSEY CORPORATION*/
BY:

Date: __June 14, 1999_____

William Flisher, Chief Operating Officer
101 Commerce Drive
Moorestown, New Jersey 08057

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Farer Fersko, a Professional Association
Title: Attn: David B. Farer, Esq.
Address: 600 South Avenue, P.O. Box 580, Westfield, NJ 07091
Tel. Number: (908) 789-8550

_____

*/    A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW00992

SW-000911

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR  Bulova Technologies LLC          */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

 Hamilton Technology, Inc.
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: 6/14/99

Craig Schnee
Vice President and Counsel
101 North Queen St., Lancaster, PA 17604


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: .. G. Lee Tannehill
Title:    Vice President, International
Address:    101 North Queen Street, Lancaster, PA  17604
Tel. Number:   (717) 299-2581
    [Please Type above information]


---

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

SMW00993

SW-000912

THE UNDERSIGNED PARTY enters into this
Consent Decree in the matter of
United States v. Settling Defendants, relating
to the Malvern TCE Superfund Site

For:    THE CABOT GROUPING
        (Kawecki Berylco, Cabot Berylco,
        Cabot, Cabot Wrought Products)

Date: June 15, 1999                    BY:    _Robert Rothberg_

                                       NAME:    Robert Rothberg

                                       TITLE:    Vice President and General Counsel

                                       ADDRESS:    75 State St., Boston, MA 02109

Agent Authorized to Accept Service on behalf of Above-signed Party.

Paul C. Nightingale, Esquire
Cabot Corporation
75 State Street
Boston, MA 02109-1806
617-342-6110

SW-000913

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR   CHEMETALL FOOTE CORP.

This corresponds to the following entity identified by EPA as contributing substances to the Site:

Cyprus Foote Mineral Co.
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: 6/15/99

Name: P. J. Seaman
Title: Vice President – Operations
Address: Chemetall Foote Corporation
348 Holiday Inn Drive
Kings Mountain, NC 28086

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: CT Corporation System
Title:
Address: 1635 Market St., Philadelphia, PA 19103
Tel. Number: 215-563-7750

SMW00995

SW-000914

-114-

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR Delbar Products, Inc.

This corresponds to the following entity identified by EPA as contributing substances to the Site:

Delbar Products, Inc.


Date: 6/11/99

Name    Thomas M. Karabinos
Title    President and Treasurer
Address  Delbar Products, Inc.
         7th & Spruce Sts.
         Perkasie, PA 18944

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Craig W. Benfield
Title: Environmental/Safety Compliance Engineer
Address: Delbar Products, Inc., 7th & Spruce Sts., Perkasie, PA 18944
Tel. Number: 215-257-6892

SMW00996

SW-000915

08/25/1999  17:06    6104306948                    ELDREDGE INC                        PAGE  02/02

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR *ELDREDGE, INC.* _____ COMPANY, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:


(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: *8/25/99*       *ROBERT C. ELDREDGE, PRESIDENT*
                      *ELDREDGE, INC.*
                      *898 FERN HILL RD*
                      *WEST CHESTER, PA. 19380*       *Robt C Eldredge*
                      [Name — Please Type]
                      [Title — Please Type]
                      [Address — Please Type]


Agent Authorized to Accept Service on Behalf of Above-signed Party:

        Name: _____
        Title: _____
        Address: _____
        Tel. Number: _____
        [Please Type above information]


_____

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

SMW00997

SW-000916

THE UNDERSIGNED PARTY enters
into this Consent Decree in the matter of
United States v. Settling Defendants,
relating to the Malvern TCE Superfund Site

FOR:    Fischer & Porter Company, on behalf of itself
and its subsidiaries, including the following
entity on the U.S. Environmental Protection
Agency's November 30, 1998 Final
Volumetric Ranking Summary for the
Malvern TCE Superfund Site: Fischer &
Porter Co./Andrews Glass

Date: 6/14/99

By: _____
Hadj Amari
Chief Operating Officer
Fischer & Porter Company
125 East County Line Road
Warminster, PA 18974

Agent authorized to Accept Service on Behalf of Above-Signed Party:

Name:                  William H. Gross

Address:               Fischer & Porter Company
                       125 East County Line Road
                       Warminster, PA 18974

Telephone Number:      215-674-6789

JLK\DMS\271837.1

SMW00998

SW-000917

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR RCA CORPORATION

Date: ___6/13/99___

David W. Thompson
Manager, Mid-Atlantic/Southeast Region
Environmental Remediation Program
General Electric Company
Corporate Environmental Programs
640 Freedom Business Center
King of Prussia, PA  19406

SMW00999

SW-000918

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR General Motors Corporation      COMPANY, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

General Motors Corporation
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: 6/10/99      _Don A. Schiemann_
                   [Name — Please Type]
                   [Title — Please Type]
                   [Address — Please Type]


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: General Motors Corporation
Title: Service of Process
Address: 3031 W. Gd. Blvd. MC: 482-207-722 Detroit, MI  48202
Tel. Number: 313/974-1823
[Please Type above information]

---

*/    A separate signature page must be signed by each corporation, individual or other legal
      entity that is settling with the United States.

SMW01000

SW-000919

- 115 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR _HAMILTON PRECISION METALS_ ~~COMPANY~~, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

_HAMILTON PRECISION METALS, INC._
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: _6/14/99_    _LARRY D. HUDSON_
_PRESIDENT_
_HAMILTON PRECISION METALS, INC._
_1780 ROHRERSTOWN ROAD_
_LANCASTER, PA. 17601_
[Name -- Please Type]
[Title -- Please Type]
[Address -- Please Type]


Agent Authorized to Accept Service on Behalf of Above-signed Party:
_RICHARD G. BERNET_
Name: _KATY INDUSTRIES, INC._
Title: _ASSOCIATE GENERAL COUNSEL_
Address: _6300 S. SYRACUSE WAY, SUITE 300_
Tel. Number: _ENGLEWOOD, CO. 80111 (303) 290-9300_
[Please Type above information]


*/  A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01001

SW-000920

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR ~~Harry Elwaena~~ COMPANY, INC. */

Date: _June 16, 1999_    _David L. Kelly_
[Name — Please Type]
[Title — Please Type]
[Address — Please Type]

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:  David L. Kelly
[Please Type]
Title:  Director, Corporate E H & S Office
Address:  231 Ferris Avenue, East Providence, RI 02916
Tel. Number: 401-434-5445  ext. 325

---

*/  A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01002

SW-000921

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR    HERCULES INCORPORATED         COMPANY, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

** Electronic Display Systems, Inc.
    (Specify entity identified on EPA's Volumetric Ranking Summary)


Date: 6/14/99    ✗ /s/ M W Jones                          (RW)
                 [Name – Please Type]
                 [Title – Please Type]      Marshall W. Jones
                 [Address – Please Type]    Acting Vice President of
                                            Safety, Health, Environment
                                            and Regulatory Affairs,
                                            Hercules Incorporated

        Agent Authorized to Accept Service on Behalf of Above-signed Party:

            Name:       Richard Dahlen
            Title:      General Counsel
            Address:    1313 N. Market Street, Wilmington, DE 19894
            Tel. Number: (302) 594-5015
                [Please Type above information]


_____

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

**/ This corporation was subsequently renamed "Hercules Aerospace Display
    Systems, Inc." and "B.F. Goodrich Aerospace Display Systems, Inc."

SMW01003

SW-000922

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR _Kim Manufacturing_____ COMPANY, INC. *_/_


This corresponds to the following entity identified by EPA as contributing substances to the Site:

_Kim Manufacturing Company_____
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: _6/14/99_    _Thomas J. Kiely_____
[Name – Please Type] Thomas J. Kiely, Jr.
[Title – Please Type] President
[Address – Please Type] P.O. Box 405
Downingtown, PA 19335-0405


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: _Susan P. LeGros Esquire_____
Title: _Attorney for Kim Manufacturing Company_
Address: _1000 Westlakes Drive Ste. 275, Berwyn PA 19312_
Tel. Number: _610-640-7350_____
[Please Type above information]


_*_/    A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01004

SW-000922

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR _Kim Manufacturing_ COMPANY, INC. */

This corresponds to the following entity identified by EPA as contributing substances to the Site:

_Kim Manufacturing Company_

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: 6/14/99 _____

[Name – Please Type] Thomas J. Kiely, Jr.

[Title – Please Type] President

[Address – Please Type] P.O. Box 405

Downingtown, PA 19335-0405

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Susan P. LeGros Esquire

Title: Attorney for Kim Manufacturing Company

Address: 1000 Westlakes Drive Ste. 275, Berwyn PA 19312

Tel. Number: 610-640-7350

[Please Type above information]

---

*/  A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01004

SW-000923

97

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR LaFRANCE CORPORATION

This corresponds to the following entity identified by EPA as contributing substances to the Site:

LaFRANCE CORPORATION
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: 6/7/99    _George F. Barrar_

GEORGE F. BARRAR, President
LaFrance Corporation
One LaFrance Way
Concordville, PA  10331

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    Mr. George F. Barrar
Title:    President, LaFrance Corporation
Address:    One LaFrance Way, Concordville, PA  19331
Tel. Number:    (610) 361-4300

*/    A separate signature page must be signed by each corporation, individual or other legal entity
that is settling with the United States.

SMW01005

SW-000924

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR: Lucent Technologies Inc., for itself and on behalf of its
predecessor, AT&T */

This corresponds to the following entity identified by EPA as contributing substances to
the Site:

Western Electric Company
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: June 15, 1999  *Cindi Diane Williams for Rick Bennett*
                     Rick Bennett
                     Global Environmental, Health & Safety
                     Vice President
                     Lucent Technologies, Inc
                     475 South Street, Room 2S031
                     Morristown, NJ  07960

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Ralph L. McMurry
Title: Managing Corporate Counsel
Address: Lucent Technologies, Inc
         475 South Street, Room 2S032
         Morristown, NJ  07960
Tel. Number: 973-606-4096

*/  A separate signature page must be signed by each corporation, individual or other
legal entity that is settling with the United States.

SMW01006

SW-000925

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvem TCE Superfund Site.

*/

FOR ___Moore Products_____ COMPANY, INC.

This corresponds to the following entity identified by EPA as contributing substances to
the Site:

___Moore Products_____

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: __6/16/99___  _R. E. Wesner_____
                    [Name – Please Type]
                    [Title – Please Type]
                    [Address – Please Type]

Agent Authorized to Accept Service on Behalf of Above-signed Party:

    Name: __Andrew P. Foster_____

    Title: __Counsel_____
    Address:  __Drinker Biddle & Reath, 1345 Chestnut Street, Phila. PA  19107-3__
    Tel. Number: __(215) 988-2700_____
        [Please Type above information]

_____

*/    A separate signature page must be signed by each corporation, individual or
other legal entity that is settling with the United States.

SMW01007

SW-000926

06/14/98  14:17 FAX 2124482992          THE MORNING CALL                    ☒007 ☒002
                                        TIMES MIRROR

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


              FOR: THE MORNING CALL, INC.


This corresponds to the following entity identified by EPA as contributing substances to the Site:

The Morning Call
(Specify entity identified on EPA's Volumetric Ranking Summary)




Date: June 14, 1999

                          Jonathan Best
                          Vice President and Chief Financial Officer
                          101 North Sixth Street, Allentown, Pa 18101


     Agent Authorized to Accept Service on Behalf of Above-signed Party:

          Name: James Imbriaco
          Title:  Deputy General Counsel
          Address: Times Mirror, Two Park Avenue, New York, NY 10016
          Tel. Number: 212-448-2990

     _____

     */  A separate signature page must be signed by each corporation, individual or other legal
         entity that is settling with the United States.


SMW01008

SW-000927

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR  NW CONTROLS  ~~COMPANY~~, INC. */

This corresponds to the following entity identified by EPA as contributing substances to the Site:

NW CONTROLS, INC.

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: 6/14/99

[Name — Please Type] HENRY E. SHONTZ
[Title — Please Type] PRESIDENT
[Address — Please Type] P.O. BOX 325
HARLEYSVILLE, PA 19438

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:   DUANE, MORRIS & HECKSCHER LLP
Title:   SETH v.d H. COOLEY
Address:   ONE LIBERTY PLACE
Tel. Number:  (215) 979-1000
[Please Type above information]

---

*/   A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SW-000928

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR _____ PLYMOUTH TUBE _____ COMPANY, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

Plymouth Tube Co. _____
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: June 14, 1999    _____
                        [Name — Please Type] Gary Lloyd
                        [Title — Please Type]  Executive Vice-President
                        [Address — Please Type] Plymouth Tube Co.
                                                29 W 150 Warrenville Road
                                                Post Office Box 45
                                                Warrenville, IL  60555

Agent Authorized to Accept Service on Behalf of Above-signed Party:

        Name: _Steven J. Lemon_____
        Title: _Attorney, Jones & Lemon_____
        Address:28 North Bennett St., P.O. Box 805, Geneva, IL 60134
        Tel. Number: _(630)208-0805_____
            [Please Type above information]


_____

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

SMW01010

SW-000929

96

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR PORTER INSTRUMENT                     COMPANY, INC. */


This corresponds to the following entity identified by EPA as contributing substances to the Site:

PORTER INSTRUMENT CO., INC.
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: 6/16/99          [Name -- Please Type]  GARY K. PORTER
                       [Title -- Please Type]  PRESIDENT
                       [Address -- Please Type]  PO BOX 907
                                                Hatfield, PA 19440-0907


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: GARY K. PORTER
Title: President
Address:     PO Box 907, Hatfield, 19440-0907
Tel. Number: 215-723-4000
     [Please Type above information]


*/    A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SW-000930

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR    PP&L, Inc.                                    ~~COMPANY, INC.~~


This corresponds to the following entity identified by EPA as contributing substances to the Site:

PP&L NOrthern Division Service Center

(Specify entity identified on EPA's Volumetric Ranking Summary)


Date:  1/16/99

[Name -- Please Type]    Lynn I. Ratzell
[Title -- Please Type]    Manager-Environmental Management
[Address -- Please Type]    PP&L, Inc.
                            Two North Ninth Street
                            Allentown, PA  18101

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    Arundhati Khanwalkar, Esquire
Title:    Counsel
Address:    PP&L, Inc., Two North Ninth Street, Allentown, PA 1810
Tel. Number:    610/774-4452
    [Please Type above information]

---

*/ A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

SMW01012

SW-000931

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR ___REILLY PLATING_____ COMPANY, INC.

*/

This corresponds to the following entity identified by EPA as contributing substances to
the Site:

_____

(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: _6-17-99_ _____

[Name – Please Type]   Joseph Reilly
[Title – Please Type]   President
[Address – Please Type] 130 Alden Road
                        Nanticoke, Pa  18634


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: _Andrew P. Foster_____
Title: _____
Address: _One Logan Square, 18th & Cherry Streets, Phila., PA  19103_
Tel. Number: _(215) 988-2512_____
           [Please Type above information]


_____

*/    A separate signature page must be signed by each corporation, individual or
other legal entity that is settling with the United States.

SMW01013

SW-000932

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR  _J. W. Rex Company_____  COMPANY, INC. *_/
          (Rex Heat Treat - Lansdale, Inc.)


This corresponds to the following entity identified by EPA as contributing substances to the Site:

_J. W. Rex Company_____
(Specify entity identified on EPA's Volumetric Ranking Summary)



Date: _6/15/99_____

[Name — Please Type]  John W. Rex
[Title — Please Type]  President
[Address — Please Type]  P. O. Box 270
                         Lansdale, PA 19446


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: _____
Title: _____
Address: _____
Tel. Number: _____
    [Please Type above information]


_____

*_/  A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01014

SW-000933

THE UNDERSIGNED PARTY enters into this Consent Decree in the

Matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR SUNROC CORPORATION


This corresponds to the following entity identified by EPA as contributing substances to the Site:

SUNROC CORPORATION

(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: June 15, 1999        _____
                           [Name – Mark Whitaker]
                           [Title – Chief Financial Officer]
                           [Address – Sunroc Corporation
                               60 Starlifter Avenue
                               Kent County Aero Park
                               Dover, DE 19901 ]


Agent Authorized to Accept Service on Behalf of Above-signed Party:

        Name:  Ralph A. Jacobs, Esquire
        Title:  Attorney
        Address: Hoyle, Morris & Kerr LLP
                One Liberty Place
                1650 Market Street
                Suite 4900
                Philadelphia, PA 19103
        Tel. Number: 215-981-5808
                     215-981-5959 (fax)
                [Please Type above information]


*/    A separate signature page must be signed by each corporation, individually or other legal
      entity that is settling with the United States.

SMW01015

SW-000934

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR Syntex (U.S.A.) Inc.

Date: _June 15, 1999_          By: _Nancy M. Cohen_
                                   Nancy Cohen
                                   Vice President, Legal Affairs
                                   Syntex (U.S.A.) Inc.
                                   3401 Hillview Avenue
                                   Palo Alto, California  94304

This corresponds to the following entities identified on EPA's November 30, 1998 Volumetric
Ranking Summary as contributing substances to the Site:

Syntex Dental Products, Star Dental Corporation, and A.S. Koch Corporation

Agent authorized to Accept Service on Behalf of Above-signed Party:

          Name:        CT Corporation System
          Address:     Corporation Trust Center
                       1209 Orange Street
                       Wilmington, Delaware  19801

155728.01 .PA (3CSS01LDOC)
06/14/99 5:22 PM

SMW01016

SW-000935

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR ___Unisys Corporation_____ COMPANY, INC. */
      ___(for Burroughs Corporation)___

This corresponds to the following entity identified by EPA as contributing substances to the Site:

Unisys Corporation for Burroughs Corporation
(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: __6/14/99__       Gregory Fischer (T.) - Vice President Facilities
                        [Name — Please Type]        and Asset Management
                        [Title — Please Type]
                        [Address — Please Type]    Unisys Corporation
                                                    Township and Union Meeting Rds.
                                                    M/S A2-19
                                                    Blue Bell, PA 19424-0001

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: __CT Corporation (Corp. Trust Center)__
Title: _____
Address: __1209 Orange Street, Wilmington Del. 19801__
Tel. Number: __302-658-7581__
      [Please Type above information]

_____

*/   A separate signature page must be signed by each corporation, individual or other legal
     entity that is settling with the United States.

SMW01017

SW-000936

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR   USG Interiors,                    ~~COMPANY~~, INC. */

This corresponds to the following entity identified by EPA as contributing substances to the Site:

USG Grouping

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date: __June 9, 1999__ X _____
[Name — Please Type] P. O'Bryan, President
[Title — Please Type] and Chief Operating Officer
[Address — Please Type] for USG Corporation
125 South Franklin Street
Chicago, IL 60606

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:   Kim Holleander                    Virginia Yang
~~Firm~~   Manta & Welge, Attorneys at Law   USG Corporation - #149
Address: 2000 Market Street, 6th Floor    125 S. Franklin Street
~~Philadelphia, PA 19103~~                Chicago, IL 60606
Tel. Number: ~~215-851-6600~~             312-606-3916
[Please Type above information]

_____

*/   A separate signature page must be signed by each corporation, individual or other legal
entity that is settling with the United States.

SMW01018

SW-000937

- 114 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.


FOR____Vishay Instruments, Inc._____COMPANY, INC. */
       Vishay Resistive Systems, Inc.
       as divisions of Vishay Intertechnology, Inc.
       and Vishay Intertechnology, Inc., as the parent corporation

This corresponds to the following entity identified by EPA as contributing substances to the Site:

____Vishay Resistive Systems._____
(Specify entity identified on EPA's Volumetric Ranking Summary)


Date: _6/16/99_    _____
                   [Name — Please Type]    Jean H. McCreary, Esq.
                   [Title — Please Type]    Counsel Authorized to Settle
                   [Address — Please Type]  P.O. Box 1051, Suite 1300 Clinton Sq.
                                            Rochester, New York  14604
                                            716-263-1000


        Agent Authorized to Accept Service on Behalf of Above-signed Party:

             Name:  __same as above_____
             Title: _____
             Address: _____
             Tel. Number: _____
                [Please Type above information]


_____

*/  A separate signature page must be signed by each corporation, individual or other legal
    entity that is settling with the United States.

SMW01019

SW-000938

THE UNDERSIGNED PARTY enters into this Consent Decree in the

matter of United States v. Settling Defendants, relating

to the Malvern TCE Superfund Site.

FOR   VIZ LIQUIDATION TRUST   ~~COMPANY INC.~~ */

This corresponds to the following entity identified by EPA as contributing substances to the Site:

VIZ MANUFACTURING COMPANY

(Specify entity identified on EPA's Volumetric Ranking Summary)

Date:  JUNE 14,1999                        V.Scott Zelov

              [Name -- Please Type]    Trustee
              [Title -- Please Type]     335 E.Price Street
              [Address -- Please Type]   Philadelphia, PA 19144

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    V.Scott Zelov
Title:    Trustee
Address:    335 E.Price Street, Philadelphia, PA 19144
Tel. Number: (215)844-2627
    [Please Type above information]

*/  A separate signature page must be signed by each corporation, individual or other legal entity that is settling with the United States.

SMW01020

# EXHIBIT "B"

"Appendix B-1"

Settling Performing Defendants
The Entities Shown In Parentheses Are Listed On The Volumetric Ranking Summary
Dated November 30, 1998

Action Manufacturing Company
Alcoa Inc. fka Aluminum Company of
    America
Armstrong World Industries, Inc.
    (Armstrong Cork Company)
Barker Pipe Fittings Co. (Penflex, Inc.)
Beckett Corporation
Bulova Technologies LLC
    (Hamilton Technology, Inc.)
Fischer & Porter Company
    (Fischer & Porter Co.;Andrews
    Glass Company, Inc.)
General Electric Company
    (RCA Corporation)
General Motors Corporation
Hamilton Precision Metals, Inc.
Hamilton Watch Company
Handy & Harman Tube Company
Hercules Incorporated (for Electronic
    Display Systems, Inc. A/K/A
    Hercules Aerospace Display
    Systems, Inc. and B.F. Goodrich
    Aerospace Display Systems, Inc.)
LaFrance Corp.
Lucent Technologies Inc. for itself and on
    behalf of its predecessor AT&T
    (Western Electric)
Moore Products Co.
NW Controls, Inc.
Plymouth Tube Company
Reilly Plating Co., Inc.
Rex Heat Treat - Lansdale, Inc. (J.W. Rex
    Company)
Sunroc Corporation
Syntex (U.S.A.), Inc.
    (Star Dental Corporation; A.S.
    Koch Corp.; Syntex Dental
    Products)

Unisys Corporation
    (for Burroughs Corporation)
VIZ Liquidation Trust
    (Viz Manufacturing)

# EXHIBIT "C"

## POTENTIALLY RESPONSIBLE PARTY AGREEMENT

This Potentially Responsible Party Agreement ("Agreement") is made and entered into by and between the parties identified on the schedule attached hereto as part of **Exhibit "A"** (the "Parties").

## RECITALS

**A.**    On September 8, 1983, the United States Environmental Protection Agency ("EPA") issued a final rule pursuant to its powers under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 which added the Malvern TCE Superfund Site, also known as the Chemclene Site (the "Site") to the National Priorities List ("NPL").

**B.**    In November 1996, EPA advised the Parties that based on documents received from the Chemclene Corporation, it believed them to be potentially responsible parties ("PRPs") under CERCLA for the environmental conditions at the Site (the "General Notice Letter"), and encouraged the Parties voluntarily to perform or to finance the response activities that would be identified by EPA in a Record of Decision ("ROD") for the Site.

**C.**    EPA released its Remedial Investigation/Feasibility Study ("RI/FS") for the Site in June 1997. The Proposed Plan for the Site was released in July 1997. Thereafter, certain of the Parties established the Malvern Site Study Group ("Study Group") which retained a consultant to review the RI/FS and the Proposed Plan so that the Study Group could submit comments on EPA's Proposed Plan for the Site. Said Comments were submitted in early September 1997.

**D.**    EPA issued the ROD for the Site on November 27, 1997.

E.     In May 1998 EPA issued Special Notice letters inviting the recipients to enter into good faith negotiations to fund and perform the ROD for the Site. EPA sent other letters to PRPs at the Site that it considers to be de minimis parties eligible for a settlement pursuant to Section 122 of CERCLA ("De Minimis Letters").

F.     The Parties either received Special Notice Letters or De Minimis Letters, but will not participate in a settlement under Section 122 of CERCLA, and understand that failing to enter into good faith negotiations with EPA could lead to EPA taking further action in pursuit of parties to pay for the cleanup at the Site, possibly including but not limited to, the issuance of Unilateral Orders under Section 106 of CERCLA, and the commencing of an action in federal district court.

G.     Without admitting any fact, responsibility, fault, liability or potential liability with respect to the Site, the Parties wish to create a framework for pursuing their mutual interests, including but not limited to, the creation of the Chemclene Site Defense Group (the "Group") to consider options for a joint response to EPA's Special Notice Letters and De Minimis Letters.

H.     The Parties mutually intend the activities undertaken in furtherance of this Agreement to make it possible to  conduct efficiently a defense in any action or enforcement proceeding, and to establish the foundation for an amicable settlement among all or some of the Parties, EPA, and any other parties that may be involved in the future regarding any liability with respect to the Site.

## ARTICLE I

## PARTIES; MEMBERSHIP OF GROUP

**1.1.    Initial Membership of Group; Name.** The Parties are the initial members of the Group. The Parties and any additional entities that join the Group shall be referred to as "Members". The Members hereby organize and constitute themselves as the "Chemclene Site Defense Group". Each party whose authorized representative has executed this Agreement is a Member of the Group. The Members agree and shall cooperate with each other to effectuate the purposes of this Agreement.

**1.2.    Additional Members of the Group.** Additional entities ("Additional Members") may be added to the Group provided those entities agree to the provisions of this Agreement in writing, pay their full share of past costs incurred pursuant to Article II, pay any late joining fee that the Group may determine, and receives Group approval pursuant to the decision making provisions of Article V hereof.

**1.3.    Resignation; Removal.**

(a)    Any Member may resign from the Group upon receipt by Liaison Counsel of written notice from such Member.

(b)    Upon the occurrence of an Event of Default, as defined under Paragraph 8.1 hereof, the defaulting Member may be removed from the Group pursuant to the decision making procedures of Article V hereof.

(c)    If any Member's interests or actions are regarded as contrary to the interests of the other Members, such Member may be removed from the Group pursuant to the decision making procedures of Article V hereof.

3

(d)    Any Member who resigns or is removed from the Group: (i) shall continue

to be bound by the confidentiality provisions of this Agreement as

provided in Article VI hereof, and (ii) shall be entitled to receive a final

accounting of its share of costs incurred as specified under Paragraph 2.7

below. In the event that the Member fails to pay any assessment due under

this Agreement, such Member shall pay all collection costs incurred by the

Group in obtaining payment, including the groups' attorneys fees and all

litigation expenses.

(e)    Any member who resigns or is removed from the Group, and who fails to

pay its entire share of Shared Costs as set forth in Paragraph 2.7 below, (i)

shall not be entitled to protection for claims from contribution as might

otherwise be available pursuant to Section 113(f)(2) of CERCLA or any

Pennsylvania equivalent, and (ii) specifically waives any rights it may

have to invoke such protection, including but not limited to rights that

arise, subsequent to execution of this Agreement, under a judicial or

administrative settlement with the United States, EPA, and/or the

Commonwealth of Pennsylvania.

## 1.4    Effect of Negotiation of a Consent Decree.

If the Group negotiates a Consent Decree, then each Member shall decide within

one week of the Consent Decree being offered by the United States whether it will:

(a)    participate as a Settling Performing Defendant; or

(b)    participate as a Settling Partial Cash-Out Defendant, or

4

(c)    not participate and be removed from the Group.

If a Member decides to participate, it will enter into the Cash-Out Agreement as either an

Offeror-Settling Performing Defendant or an Offeree-Settling Partial Cash-Out Defendant.

Excepting any Offeree-Settling Partial Cashout Defendant that has fully performed its

obligations under the Cash-Out Agreement, and has not Terminated that Agreement as defined

therein, any Member that resigns or is removed from the Group more than one week after the

Consent Decree is offered by the United States: (i) shall not be entitled to protection for claims

from contribution as might otherwise be available pursuant to Section 113(f)(2) of CERCLA, 42

U.S.C. § 9613(f)(2), or Section 705(c)(2) of HSCA, 35 Pa. Stat. Ann. § 6020.705(c)(2), and (ii)

hereby specifically waives any rights it may have to invoke such protection, and agrees not to

raise any defense based upon any judicial or administrative settlement with the United States,

EPA, and/or the Commonwealth of Pennsylvania and Section 113(f)(2) of CERCLA, 42 U.S.C.

§ 9613(f)(2), or Section 705(c)(2) of HSCA, 35 Pa. Stat. Ann. § 6020.705(c)(2), in any action for

contribution or other relief arising out of the Site brought by any other Member.

## ARTICLE II

## INITIAL COMMITTEES; PAYMENT OF COSTS; GROUP TRUST ACCOUNT

**2.1    Finance Committee.**  The Members shall establish a Finance Committee to

manage the finances of the Group, including but not limited to approving and paying invoices

for Authorized Work under Article IV and Liaison Counsel invoices pursuant to Article III.

Membership in the Finance Committee shall be open to any Member who expresses a

willingness to make its representative reasonably available to participate actively in the functions

5

of the Finance Committee. Members of the Finance Committee shall serve without compensation from the Group.

   **2.2    Steering Committee.** The Members shall establish a Steering Committee to administer the operations of the Group, including but not limited to enforcing this Agreement and developing procedures for: (i) assessments for Group activities under Article IV hereof, and (ii) decision making under Article V hereof. Membership in the Steering Committee shall be open to any Member who expresses a willingness to make its representative reasonably available to participate actively in the functions of the Steering Committee. Members of the Steering Committee shall serve without compensation from the Group.

   **2.3.    Division of Costs.** Except for Shared Costs that are "Allocation Process Costs," until a final allocation is reached, the Members shall bear all Shared Costs, as defined in section 2.4 below, pursuant to the Member's share of costs as set forth in the Interim Allocation on Exhibit E hereto; provided however, notwithstanding any final allocation, that Members shall not be reimbursed or credited for any costs when new Members are added to the Group. The Members shall bear "Allocation Process Costs" on a per capita basis. Notwithstanding a Member's voting power on Exhibit E, the voting power on a motion to change the Interim Allocation on Exhibit E shall be per capita, except if otherwise agreed in the process of a final allocation. For purposes of Interim Allocation: (a) in the event a new Member joins the Group and is listed on the EPA November 1998 Volumetric Ranking Summary ("VRS"), the new Member's share shall be established and the then existing Members' shares shall be adjusted using the formula applied to develop the Interim Allocation (attached hereto as part of Exhibit E ); and (b) in the event a new Member not listed on the VRS, or in the event a Member withdraws

6

from the Group, the Members' shares shall be developed and/or adjusted on a case-by-case basis.

The Steering Committee or other committee authorized by the Group may recommend methods of

fairly allocating costs incurred by the Group in furtherance of this Agreement.

    **2.4.**   **Shared Costs.** "Shared Costs" shall mean the costs for work under Section 3.2 or

for costs specified under section 8.14, the costs of Authorized Work (including "Allocation

Process Costs"), and the following necessary, out-of-pocket expenses and costs incurred on

behalf of the Group pursuant to this Agreement, without any markup: expenditures for meals

during meetings, telephone, facsimile, mailing (overnight and regular), copying costs, document

repository costs, and any other costs authorized by the Group, but shall not include travel

expenditures. "Allocation Process Costs" shall mean all costs associated with retaining any

person to facilitate the process for performing the final allocation of costs among Members.

*Provided that* "Allocation Process Costs" shall not include costs associated with retaining

investigators, allocators, mediators or other persons retained by the Group (i) to identify new

PRPs; (ii) to identify additional non-Member wastes disposed of at the Site; (iii) as part of or to

facilitate any allocation between Members and non-Members; (iv) to pursue contribution from

non-Members; or (v) to pursue costs owed to the Group by Members or non-Members. *Provided*

*further that* no Member or Member's representative may  be retained by the Group to perform

services, the costs of which qualify as "Allocation Process Costs," unless the Member or

Member's representative, in advance of performing such services, is expressly authorized by the

Group to perform such services as designated "Allocation Process Services." *Provided further*

*that* Liaison Counsel may not undertake any "Allocation Process Services."

7

**2.5**    **Member Costs.**  Except as specifically provided herein, each Member shall bear its own fees and expenses incurred incident to the preparation, negotiation, execution and performance of this Agreement, and any and all agreements with other entities or individuals. Further, Members shall pay all fees and expenses of counsel that they have retained in connection with the Site.

**2.6.**    **Final Allocation and Reallocation of Shared Costs.**

(a) Final Allocation. Neither the initial allocation nor any Interim Allocation of Shared Costs hereunder is intended to set the final allocation of Shared Costs hereunder. Except for Allocation Process Costs, the final allocation of Shared Costs will be established during the final allocation process to be adopted by the parties to this Agreement. Such final allocation process shall be independent of any allocation theory that may be advocated on behalf of the Group in any forum, including but not limited to any contribution action by the Group to recover costs of response and other damages from any party potentially responsible under CERCLA for contamination at the Site. For example, in a contribution action the Group may offer expert testimony that the harm at the FDA is divisible from the harm at the MPA. Such position in the litigation shall not preclude a final allocation in which the FDA and MPA are not viewed as being divisible.

(b) Reallocation of Shared Costs at Final Allocation. Except for Allocation Process Costs, costs allocated under this Agreement on an interim basis shall be reallocated in accordance with a final allocation of Shared Costs decided by the Members in accordance with the decision making provisions of Section V hereof. Members shall bear Allocation Process Costs on a per capita basis and such costs shall not be subject to reallocation in any final allocation. The

8

Members covenant with one another that they will produce to the Steering Committee such non-privileged allocation-related documentation as it may request.

    2.7.    **Payment of Costs Upon Resignation or Removal.**  Any Member who resigns or is removed from the Group pursuant to Paragraph 1.3 hereof, shall be obligated to pay its entire share of any Shared Costs incurred, authorized or contracted for by the Group prior to the Member's resignation or removal.  Liaison Counsel shall render an accounting to the Group, and to the resigning/removed Member, no later than sixty (60) days after that Member's resignation/removal.  Payment shall be due: (a) by the resigning/removed Member to the Group; or, (b) from the Group to the resigning/removed Member in accordance with the accounting, and payment shall be made by the resigning/removed Member, or to the resigning/removed Member, no later than thirty (30) days from the date of the accounting.  Any unpaid balances shall accrue interest after said thirtieth (30th) day at the higher of an annual rate of twelve percent (12%) (one percent per month), or the prime rate (determined on the first day of the month) plus three percent (3%) per year, in either case compounded monthly from the due date.

    2.8.    **No Obligation to Fund Other Activities.**   This Agreement shall not be construed so as to impose upon any Member any obligation to undertake or fund any activity other than in accordance with the provisions of this Agreement.

    2.9.    **Group Trust Account; Assessments; Payment of Costs.**

        (a)    In accordance with the provisions set forth in **Exhibit "B"**, the Group shall establish a Group Trust Account for the purpose of holding the funds collected from assessments needed to further the purposes of this Agreement, or which otherwise may be obtained by the Group.

9

(b)    (i) Except for Members who were members in good standing of the

Malvern Site Study Group who shall promptly remit $5,500.00 to the

Finance Committee, each Member shall promptly remit $7,000.00 to the

Finance Committee as an initial assessment to cover Shared Costs

associated with the furtherance of this Agreement; (ii) the Finance

Committee shall deposit the remittances into the Group Trust Account;

and, (iii) the Finance Committee shall provide an accounting when directed

by the Group at any time during the performance of this Agreement and

upon the termination of this Agreement. Based on the accounting at the

termination of this Agreement, the Group shall direct Liaison Counsel to

disburse to the Members any funds remaining in the Group Trust Account,

with each Member receiving that fraction of the remaining funds in which

the amount contributed by the Member is the numerator and the amount

contributed by all Members is the denominator.

(c)    Upon formation, the Steering Committee promptly shall determine a

formula for future allocations that considers, subject to reallocation under

Section 2.6 hereof, tiering and other non-per capita approaches to financing

future funding needs that will take into account the potential differences in

Parties' alleged responsibility at the Site.

(d)    Assessments made under this Agreement shall be due forty-five (45) days

after the date of the assessment with interest accruing at the higher of an

annual rate of twelve percent (12%) (one percent per month), or the prime

10

rate (determined on the first day of the month) plus three percent (3%) per year, in either case compounded monthly from the due date.

## ARTICLE III

### LIAISON COUNSEL

**3.1.**   **General Responsibilities; Limitations.**

(a)   Subject to the terms and conditions hereinafter set forth, the Members agree to retain  Liaison Counsel in accordance with the terms set forth on the schedule attached hereto as **Exhibit "C"** to (i) to maintain a current list of Members, and a master copy of this Agreement, including the original signature pages of the Members, and a current version of **Exhibit "A"**, and (ii) to take any other action requested by the Members under this Agreement (collectively "Liaison Representation").

(b)   The Members agree that the services to be provided by Liaison Counsel pursuant to this Agreement shall not include advising, counseling, or representing any individual Member regarding issues adverse to any other Member; provided however, nothing herein shall preclude Liaison Counsel from advising, counseling, or representing any individual Member in connection with the Site pursuant to an independent agreement between such Member and Liaison Counsel.

(c)   Each Member agrees that: (i) it will not claim or assert, based solely on Liaison Counsel's past or present representation of a Member, that Liaison Counsel has a conflict of interest in performing Liaison Representation; (ii)

11

it will not claim or assert, based solely on Liaison Counsel's representation

of the Group under the terms of this Agreement, that Liaison Counsel has a

conflict of interest in connection with any representation of any other

person or entity in a matter pending as of the date of this Agreement; (iii) it

will not claim or assert, based solely on Liaison Counsel's representation of

the Group under the terms of this Agreement, that Liaison Counsel has a

conflict of interest in any future representation of any person or entity

unless the subject matter relating to said representation arises out of, or is

in any way connected to the Site, or involves or could involve any facts or

information obtained from the Member during the term of this Agreement;

(iv) each Member consents to the continued performance of Liaison

Representation in the event that a conflict develops in connection with such

Representation; and (v) if a Member withdraws or is removed from the

Group, or its representation by Liaison Counsel is in any way terminated, it

will consent to the continuation of Liaison Representation.

(d)     Liaison Counsel may be removed by a two-thirds majority of the voting

power of the Members in accordance with the decision making provisions

of Article V hereof.

**3.2.**    **Fees and Expenses.** Liaison Counsel Fees and Expenses shall mean all counsel

fees and expenses incurred in the joint representation of the Members authorized by Section 3.1

and consistent with Section 2.4 hereof, except such counsel fees and expenses any Member is

solely responsible for paying pursuant to Paragraph 3.3(b) below.

12

### 3.3.    Allocation of Fees and Expenses.

(a)    Liaison Counsel Representation shall be deemed to be Authorized Work

payable by the Finance Committee from assessments pursuant to the

provisions of section 4.3 hereof.

(b)    Each Member shall pay any and all fees and expenses of counsel that it has

retained or hereinafter retains individually with respect to the Site.

### 3.4.    Reports to Group.

Liaison Counsel shall report in writing its actions and recommendations to the

Group from time to time as may be necessary to keep the Group fully informed of matters

covered by this Agreement, and shall call periodic meetings of the Group and refer to such meet-

ings for a vote any matters which, in the judgment of Liaison Counsel, should be so referred.

13

# ARTICLE IV

## PERFORMANCE OF AUTHORIZED WORK

4.1.    **Authorized Work.**

(a)    With the exception of services related to bringing actions for cost recovery and/or contribution pursuant to CERCLA sections 107 and 113, state law equivalents, and/or common law, Authorized Work under this Agreement shall consist of any work that the Steering Committee proposes and the Group concludes will further the objectives of this Agreement.

(b)    Proposed work shall be Authorized Work only if approved by a two-thirds majority of the voting power of the Members present in person, on the telephone, or by proxy at a meeting.  Written requests for approval ("Request") in a form set forth in **Exhibit "D"** ("Request Form") shall be sent to the Members by Liaison Counsel. The Members shall approve or disapprove any Requests by returning the Request Form to Liaison Counsel by facsimile or hand delivery within five business days of the receipt of a Request. Any Member who fails to respond to the Request shall be deemed to have approved the Request.

(c)    Authorized Work shall include Liaison Representation, and may also include services provided by any Member and counsel or consultants retained by any Member. In the event that counsel to any individual Member performs Authorized Work, each Member agrees that: (i) it will not claim or assert, based solely on counsel's past or present representation

14

of a Member, that counsel has a conflict of interest in performing

Authorized Work; (ii) it will not claim or assert, based solely on counsel's

performance of Authorized Work, that counsel has a conflict of interest in

connection with any representation of any other person or entity in a matter

pending as of the date of this Agreement; (iii) it will not claim or assert,

based solely on counsel's performance of Authorized Work, that counsel

has a conflict of interest in any future representation of any person or entity

unless the subject matter relating to said representation arises out of, or is

in any way connected to the Site, or involves or could involve any facts or

information obtained from the Member during the term of this Agreement;

(iv) each Member consents to the continued performance of Authorized

Work by counsel in the event that a conflict develops in connection with

such Authorized Work; and (v) if a Member withdraws or is removed from

the Group, or its representation by counsel performing Authorized Work is

in any way terminated, it will consent to the continuation of the Authorized

Work.

    **4.2.**　　**Consistency with National Contingency Plan.**　Where appropriate, all

Authorized Work shall be conducted in such a manner as to be consistent with the National

Contingency Plan ("NCP"), 40 C.F.R. at § 300.1-300.920, and any Pennsylvania equivalent.

    **4.3.**　　**Invoices For Authorized Work.**　All payments to individuals, including Members

or other entities for Authorized Work, shall be made from the Group Trust Account.  Invoices for

services rendered shall be submitted to Liaison Counsel.  The Finance Committee shall approve

and pay the invoices from funds on balance in the Group Trust Account. The Group shall insure

that assessments are sufficient to cover expenses.

## ARTICLE V

## DECISION MAKING; DISPUTE RESOLUTION

5.1.    **Decision Making.**

(a)    Except as otherwise provided herein, the Members shall act by and through

the Group by means of action to be undertaken pursuant to this Agreement

and in accordance with the decision making requirements set forth under

this Article V of this Agreement. The Members may authorize or direct

actions under this Agreement only at meetings duly held and called for

such purpose, which meetings shall be called regularly by Liaison Counsel.

Meetings of the Group may be called for any purpose at any time by any

three or more Members of the Group, and any Member may refer a matter

to the Group.  Meetings may be held by telephone conference.  Whenever

feasible, written notice of the time, place and purpose of any meeting of the

Group shall be given to each Member entitled to vote at such meeting at

least five (5) days and not more than thirty (30) days before the date of

such meeting either personally or by mail or by other means of written

communication, charges prepaid, addressed to each Member at the address

appearing on the service list maintained by the Liaison Counsel.  In the

event a meeting is called on less than five (5) days written notice, the

Members calling the meeting shall make a reasonable effort to provide

16

notice in fact to every Member. The Group shall authorize action to be
undertaken pursuant to this Agreement in accordance with the voting
requirements set forth herein. Decisions shall be made collectively by each
Member's designated representative.

(b)     Any matter under this Agreement may be referred to a meeting of the
Group, and any matter may be determined by a vote of the Members of the
Group, as set forth below. Except as otherwise set forth herein, all
decisions of the Group shall be by a two-thirds majority of the voting
power of the Members present in person, on the telephone, or by proxy at
the meeting. Until such time as a final allocation is adopted by the Group, a
Member's voting power shall be that percentage of the total votes of all
Members in good standing that corresponds to that Member's share of
costs determined in accordance with this Agreement and as set forth as
Exhibit E hereto ("Interim Allocation"), except that voting power will
continue to be per capita for decisions determining the process for final
allocation. Except as may otherwise be provided herein, to be eligible to
exercise its voting power on any matter, a Member must have paid, prior to
the meeting in which the vote is taken, the total amount of any assessment
under this Agreement. The Finance Committee shall indicate which
Members are ineligible to vote due to failure to pay the total amount of any
assessment then due and owing.

17

(c)    The Members' representatives shall be as set forth on the schedule attached

hereto as part of **Exhibit "A"**.  The Parties and any additional Members of

the Group may designate new representatives by giving notice in writing to

all other Members hereunder.

(d)    Quorum. Thirty percent (30%) of the voting power of the Group shall be

represented in person, by telephone, or by proxy at any Group meeting,

except that a quorum of seventy-five percent (75%) of the voting power of

the Group shall be required for the following decisions: removal of a

Member; division or reallocation of costs; determination of default under

section 8.1; or removal of a Member under section 1.3.

**5.2.**    **Dispute Resolution.**  Any dispute between the Members arising under this

Agreement ("Dispute") shall be resolved as follows:

(a)    The Members shall in good faith attempt amicably to resolve through

consultation and negotiation any Dispute among themselves arising from or

related to performance of this Agreement.

(b)    In the event of a Dispute between the Members which appears not to be

resolvable through consultation and negotiation, any Member may invoke

the Dispute Resolution Procedures of this Paragraph 5.2 by filing written

notice to the other Members of such invocation.

(c)    In the first instance, all disputes among the Members shall be presented to

a mutually agreed upon entity or individual, for facilitation of informal

18

dispute resolution. The costs of these services shall be paid as if they were

Authorized Work.

(d)    In the event that resort  to the procedures set forth in this Paragraph 5.2 is

unsuccessful in resolving any given dispute between the Members, any

Member may seek any available relief from an appropriate Court of Law.

In the event of such resort to the use of a Court of Law, each member shall

bear its own attorneys' fees and costs.

## ARTICLE VI

### CONFIDENTIALITY

**6.1.**    **Confidentiality of Communications.**  Except as provided hereunder, the

Members agree to keep confidential and not to disclose to any third party, any communications

among the Members, including allocation-related documentation, any written or oral

communications among the Parties from March 1, 1997 onward, and any technical data or reports

collected or generated by any individual pursuant to the conduct of Authorized Work

("Confidential Information").  The Members further agree that the disclosure of any Confidential

Information shall constitute irreparable harm for which damages will be inadequate, and

specifically consent to the entry of injunctive relief prohibiting such disclosure, without the

requirement that any bond be posted.

**6.2.**    **Sharing of Confidential Information.**  The Members hereby agree to share all

Confidential Information with one another.  The Members further agree that, given their joint

interests, sharing of any Confidential Information obtained by any Member pursuant to this

Agreement, will not defeat any attorney-client privilege or work product claim, in the event any

19

non-Member seeks such Confidential Information in any context, or any Member engages in any

subsequent litigation. Each Member shall take all necessary and appropriate measures to ensure

that any person who is granted access to any shared information or who participates in work on

common projects or who otherwise assists any counsel or technical consultant in connection with

this Agreement, is familiar with the terms of this Agreement and complies with such terms as

they relate to the duties of such person.

     **6.3.**    **Protection of Confidential Information.**  The Group expects that the

Confidential Information gathered in the course of the conduct of this Agreement may include

material beyond the scope of permissible discovery and may be inadmissible at trial.  The

Members hereby agree that any Confidential Information obtained pursuant to this Agreement,

shall (a) constitute compromise negotiations within the meaning of Federal Rules of Evidence

408 and applicable Pennsylvania precedents (b) be protected by the work-product doctrine and (c)

be privileged pursuant to the joint defense privilege. Any costs incurred in connection with

defending the joint defense privilege shall be deemed Authorized Work.

     **6.4.**    **Disclosure of Confidential Information.**  The Members hereby agree that

Confidential Information may be disclosed to third parties:

         (a)    When legally required or required to enforce the provisions of this

              Agreement; provided, however, that when a Member determines that

              disclosure of such information may be required, the Member will promptly

              provide notice in writing to the other Members at least five (5) business

              days prior to such disclosure.  If such information becomes the subject of

              an administrative or judicial order requiring disclosure of such information

20

by a Member, where the information will be unprotected by confidentiality
obligations, the Member may satisfy its confidentiality obligations
hereunder by notifying the Member that generated the information and by
giving such Member an opportunity to protect the confidentiality of the
information or, if the information was generated by common counsel or a
technical consultant, by giving notice to common counsel;

(b)    When by a two-thirds majority of the voting power of the Members present
in person, on the telephone, or by proxy the Members of the Group agree to
such disclosure;

(c)    When, after providing thirty (30) days notice to the Group, the information
is required to be provided to an insurer.

(d)    Nothing herein shall prevent any Member from disclosing any publically
available information, any information of which it was the source, or
reports prepared therefrom as long as any associated Confidential
Information supplied by any non-consenting Member has been redacted, or
any information of which any third party is the original source if the third
party has consented.

**6.5.**    **Effect of Resignation or Removal.**  Resignation or removal of any Member from
the Group shall not affect the Member's ability to retain, or its obligations to protect, Confidential
Information.  If any Member resigns or is removed, the former Member shall not claim any
conflict of interest in, or object to, the continued provision of assistance by any consultant,
contractor or attorney retained by the Group, either directly or through Liaison Counsel.  The

21

Members intend by this Article to protect from disclosure all information and documents shared

among any Members or between any Member and any technical consultant to the greatest extent

permitted by law regardless of whether the sharing occurred before execution of this Agreement

and regardless of whether the writing or document is marked "Confidential".

## ARTICLE VII
## NO WAIVER OR ADMISSION

Statements, provisions, terms and recitals contained herein are binding only between the

Members to, and for the purposes contemplated by this Agreement. The Members understand

and agree that any statements, provisions, terms and recitals contained herein and

communications among the Members hereunder shall not, for any purposes whatsoever,

constitute an admission or admissions. The Members reserve the right to contest any statements,

provisions, terms and recitals contained herein or made pursuant hereto in any claims, actions,

causes or action, controversies or disputes arising other than pursuant to this Agreement. The

Members further agree that the allocation of costs hereunder shall not be deemed to represent any

view, determination or admission with respect to the ultimate responsibility for any costs of

response and/or remediation related to the Site.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.1.**    **Default.** It is expressly understood that, in the event of a default by any Member,

that Member may be removed from the Group pursuant to the provisions of Paragraph 1.3, and

the other Members may perform the activities required by the Agreement without prejudice to

any rights or remedies available to said Members against the defaulting Member or Members.

Events of Default shall include, but not be limited to, the failure to pay any costs within forty-five

22

(45) days of the date when due, and the disclosure of Confidential Information. Events of Default

shall be determined by the Group by a two thirds majority of the voting power of the Members

present in person, on the telephone, or by proxy at the meeting. Parties in default shall not be

permitted to vote on any matter placed before the Group for determination.

    **8.2.**   **Rights Reserved.** The Members expressly acknowledge and affirm their rights,

jointly or individually, to commence an action against any person or entity not a Member of the

Group to recover all or a portion of the costs and expenses incurred jointly or individually by the

Members hereunder. The Members also expressly acknowledge and affirm their rights, jointly or

individually, to commence any action or assert any defense or file any claim against any other

Member in the event that any administrative action is brought or in any judicial proceeding.

    **8.3.**   **Effective Date.** This Agreement shall become effective upon execution by ten

Parties, and shall terminate upon the first occurring of either (a) the completion of the activities

required by this Agreement; or (b) the written agreement of two thirds of the Members.

    **8.4.**   **Notices.** Any notices given by any Member to the Group hereunder, for any

reason hereunder, shall be in writing and shall be deemed to have been given when delivered

personally or when otherwise received at its designated address set forth on the list that is

contained within **Exhibit "A"**, or at such other address as a Member shall hereafter furnish by

notice to all the Members under this subparagraph.

    **8.5.**   **Amendment.** This Agreement may not be amended except by two-thirds majority

of the voting power of the Members present in person, on the telephone, or by proxy; provided

that voting power will be per capita with respect to amendments to sections 2.3, 2.4, 2.6, and

5.1(b), and 2.3 and this section. If a two-thirds majority of the voting power of the Members is

not obtained in a meeting, the votes at the meeting shall be counted toward the necessary two-thirds majority of the voting power determined from responses to written requests for approval ("Request") which shall be sent to the Members by Liaison Counsel in the form set forth in **Exhibit "D"** ("Request Form"). The Members shall approve or disapprove any Requests by returning the Request Form or otherwise communicating a response to Liaison Counsel by e-mail message, facsimile or hand delivery within five business days of the receipt of a Request. Any Member who fails to respond to the Request shall be deemed to have approved the Request.

     **8.6.**   **Assignment.**  This Agreement shall be binding upon and inure to the benefit of the Members and their representative successors and assigns.  No assignment of this Agreement shall be made without the unanimous consent of the Members of the Group.

     **8.7.**   **Construction.**  No rule of strict construction shall be applied with respect to this Agreement against any Member.  Whenever possible, each provision hereof will be interpreted in such manner as to be effective and valid under applicable law but if any provision hereof is held to be prohibited or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or remaining provisions hereof.

     **8.8.**   **No Partnership.**  The relationship between the Members is that of independent contractors and not one of partnership or otherwise whatsoever.

     **8.9.**   **Governing Law.**  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.

24

**8.10.   Counterparts.** This Agreement may be signed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument, and which shall be attached to this Agreement under **Exhibit "A"**.

**8.11.   Insurance**. The Members do not intend hereby to make any agreement that will prejudice any Member with respect to its insurers and, by entering into this Agreement, anticipate that the actions taken pursuant to this Agreement will benefit such insurers.  If any insurer makes any claims that any aspect of this Agreement provides a basis for rejection or limitation of coverage of a Member, the Group will attempt, consistent with the objectives of this Agreement, to return any Member subject to such claim to a position that is satisfactory to such insurers.

**8.12.   Successors and Assigns**. This Agreement shall be binding upon the successors and assigns of the Members.  No assignment or delegation of the obligation to make any payment or reimbursement hereunder will release the assigning Member without the prior written consent of the Group.

**8.13.   Relationship of Members**.  No Member, or representative or counsel for any Member, has acted as counsel for any other Member with respect to such Member entering into this Agreement, except as expressly engaged by such Member with respect to this Agreement, and each Member represents that it has sought and obtained any appropriate legal advice it deems necessary prior to entering into this Agreement.

**8.14.   Indemnification**.  No Member or its representative(s) serving on any Committee or subcommittee shall be liable to any Member for any claim, demand, liability, cost, expense, legal fee, penalty, loss or judgment incurred or arising as a result of any acts or decisions taken or made hereunder.  Each Member agrees to indemnify, defend and hold harmless any Member and

25

its representative(s) from and against any claim, demand, liability, cost, expense, legal fee,

penalty, loss or judgment (collectively "liability") which in any way relates to the good-faith

performance of any duties under this Agreement by any Member or its representative(s) on behalf

of any Committee, subcommittee or the Group, including, but not limited to, any liability arising

from any contract or agreement signed by the Member or its representative(s) at the request of the

Group. This indemnification shall not apply to any liability arising from a criminal proceeding

where the Member or its representative(s) had reasonable cause to believe that the conduct in

question was unlawful. Payments under this section shall be a Shared Cost in accordance with

Section 2.4 hereof, and shall be allocated among each Member (including the member to be

indemnified and held harmless) that (1) was a Member at the time that the action was taken that

gives rise to this indemnification or (2) subsequently joins the Group. The terms of this Section

shall survive the termination of the Agreement and the withdrawal or removal of any Member;

provided however, that any Member who withdraws from the Group prior to the date of the action

that gives rise to the indemnification described in this section shall not be liable for a share of any

indemnification required.

    **8.15.**  **Separability**. If any provision of this Agreement is deemed invalid or unenforce-

able, the balance of this Agreement shall remain in full force and effect.

    **8.16.**  **Entire Agreement**. This Agreement constitutes the entire understanding of the

Members with respect to its subject matter.

26

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _____    Member Name:_____

By:_____

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        _____

Address:     _____

             _____

             _____

Telephone:   _____

Fax:         _____

E-Mail:      _____

27

Exhibit A

Schedule Of Parties Who Have Entered Into This PRP Agreement And Are Currently Members

Parties As Shown On The VRS Dated April 27, 1998 Are Shown In Parentheses

Current As Of: June 9, 2008

Action Manufacturing Company
Alcoa, Inc. fka Aluminum Company of
    America
Armstrong World Industries, Inc.
    (Armstrong Cork Company)
Fischer & Porter Company
    (Fisher & Porter Co./Andrews Glass
    Company, Inc.)
Barker Pipe Fittings Co. (Penflex, Inc.)
Beckett Corporation
Bulova Technologies LLC
    (Hamilton Technology, Inc.)
General Electric Company
    (RCA Corporation)
General Motors Corporation
Hamilton Precision Metals
Hamilton Watch Co.
Handy & Harman Tube Company
Hercules Incorporated
    (Electronic Display
    Systems/Hercules)

LaFrance Corp.
Lucent Technologies Inc. (Western Electric)
Moore Products Co.
Plymouth Tube Company
Reilly Plating Co., Inc.
Rex Heat Treat - Lansdale, Inc. (J.W. Rex
    Company)
Syntex (U.S.A.), Inc.
    (Syntex Grouping/A. S. Koch)
Sunroc Corporation
Tyco Electronics Corp. (Amp Corp.,
Contamination Control, Inc., Malco)
Unisys Corporation
    (Burroughs Corporation/Sperry
    Corporation)
VIZ Liquidation Trust

<u>Exhibit B</u>
<u>Establishment of Group Escrow Account</u>

<u>B.1.</u>    Pursuant to section 2.9 of the Agreement, the Members authorize Liaison Counsel
to establish a separate escrow account in which assessments under the Agreement will be
deposited. Liaison Counsel may utilize his or her firm's escrow account for this purpose. Any
funds paid into the escrow account shall be segregated.

<u>B.2.</u>    Liaison Counsel shall make deposits to and disbursements from the Group Escrow
Account only upon authorization from the Finance Committee.

<u>B.3.</u>    Liaison Counsel shall hold the funds in the Group Escrow Account on behalf of
the Members, in accordance with the terms and provisions of the Agreement, for the payment of
fees authorized by the Agreement.

<u>B.4.</u>    Liaison Counsel shall terminate the Group Escrow Agreement upon receipt of
notice from the Finance Committee, and disburse the funds in accordance with any instructions
received from the Finance Committee.

<u>B.5.</u>    Liaison Counsel shall maintain records of the Group Escrow Account, and shall
maintain records of the contributions received from each Member.

<u>Exhibit C</u>

<u>Liaison Counsel</u>

C.1    <u>Compensable and Noncompensable Events</u>

    C.1.1    Liaison Counsel shall be compensated under this Agreement for specific tasks he/she performs to meet the obligations imposed on Liaison Counsel by any Case Management and/or Scheduling Order, and/or by the Group.

    C.1.2    Liaison Counsel shall not be compensated under this Agreement for performing any substantive work beyond that required of Liaison Counsel by any Case Management and/or Scheduling Order unless such work shall has been authorized in advance by the Members of the Group pursuant to this Agreement.

    C.1.3    Liaison Counsel shall not be compensated under this Agreement for attendance at meetings of the Group.

    C.1.4    It is assumed that there will be only one individual who will serve at any time as Liaison Counsel. If there is more than one individual performing the tasks assigned to Liaison Counsel, no more than one individual shall be compensated under this Agreement for performing any particular task. For example, if appearance at Court is otherwise a compensable event under this Agreement and Liaison Counsel appears through both a senior member of the firm and a junior member of the firm, only the time of one of the two attorneys so attending shall be compensable.

C.2    <u>Billing Practices</u>

    C.2.1    Liaison Counsel shall bill monthly for the services he/she has performed and the costs incurred. The bills so rendered shall include a detailed description of the tasks performed by Liaison Counsel during the month and the time expended on each such task.

    C.2.2    Liaison Counsel shall bill for his/her time at the rate charged by his/her firm for the performance of work of the type being performed under this Agreement by Liaison Counsel.

    C.2.3    Liaison Counsel shall submit his/her bill to the Finance Committee as described in paragraph 2.1 of this Agreement who shall review Liaison

Counsel's bill for conformance with this Agreement and for the reasonableness of the time expended on the various tasks that Liaison Counsel has included in the bill.  Upon satisfying themselves that the bill, as submitted or as revised, meets the requirements of the preceding sentence, the members of the Finance Committee shall, in writing, direct that the bill be paid.

<u>Exhibit</u> D

<u>Request Form</u>

**The Steering Committee of the Chemclene Site Defense Group proposes the following Authorized Work to be conducted:**

**(DESCRIPTION OF THE PROPOSED AUTHORIZED WORK)**

_____ with _____ votes:

**(Name of Member)**

**Approves**          ☐

**Disapproves**          ☐

**Dated:** _____

**<u>Exhibit E</u>**

**Interim Allocation**

**Group Shares Based On Assessment For Shared Costs**

**Dated May 24, 2007**

| | |
|---|---|
| Lucent Technologies Inc. | 17.13 % |
| Bulova Technologies Inc. | 10.15 % |
| Syntex (USA), Inc. | 8.02 % |
| Hamilton Watch Co. | 7.43 % |
| VIZ Liquidation Trust | 6.74 % |
| Fischer & Porter | 6.53% |
| Plymouth Tube | 4.66 % |
| Armstrong World Industries, Inc. | 4.30% |
| Unisys Corporation | 4.29 % |
| General Motors Corporation | 4.25 % |
| Hamilton Precision Metals | 3.88 % |
| Reilly Plating Co., Inc. | 3.54 % |
| LaFrance Corp. | 3.41% |
| Aluminum Company of America | 2.26 % |
| Beckett Corporation | 2.06 % |
| AMP Corporation (CC/Malco) | 2.03 % |
| Handy & Harman Tube | 1.88 % |
| Hercules | 1.84 % |
| Action Manufacturing Company | 1.81 % |
| General Electric Company | 1.46 % |
| Barker Pipe Fittings Co. | 1.03% |
| Rex Heat Treat | 0.71 % |
| Moore Products Co., Inc. | 0.60 % |

33

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 7/21/98 .    Member Name: Hamilton Precision Metals

By: _Melissa A. Manuel, Holleb & Coff , Its Attorney_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:    Melissa A. Manuel
Holleb & Coff

Address:    55 East Monroe Street

Suite 4100

Chicago, Illinois  60603

Telephone:    (312) 807-4600

Fax:    (312) 807-3900

E-Mail:    mmanuel@holleb-law.com

24

IN WITNESS WHEREOF, the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _____   Member Name:  The Swatch Group (U.S.) Inc. _____

By: _____                    _____
    Yann Gamard- President                          Joe Mella- Vice President
                                 (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        Neal Gordon _____

Address:     1200 Harbor Blvd. _____

             Weehawken, NJ 07087 _____

             _____

Telephone:   (201) 271-4663 _____

Fax:         (201) 271-4672 _____

E-Mail:      _____

24

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _Sept. 3 1998_ Member Name: _Handy & Harman Tube Company_

By: _David L. Kelly_    _Director - Corporate Environment, Health & Safety Officer._

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _David L. Kelly_

Address: _Handy & Harman_
_231 Ferris Avenue_
_East Providence, R.I. 02916_

Telephone: _(401) 434-5445    x-325_

Fax: _(401) 438-6417_

E-Mail: _DKelly9103 @ AOL.Com._

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _9/8/98_    Member Name: _Kim Manufacturing Co._

By: _Harry J. Kirsh    President_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _Legros Law Partners_

Address: _Suite 275_
_1000 Westlakes Drive_
_Berwyn, PA 19312_

Telephone: _610 640 7350_

Fax: _610 640 7359_

E-Mail: _LEGROSLAW @ AOL.COM_

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _Aug 3, 1998_    Member Name: _LaFrance Corp._

By: _Robert J Helmig_ – _Director / Corporate Controller_
                                    (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _Robert J. Helmig_

Address: _LaFrance Corp_
_One LaFrance Way_
_Concordville    PA    19331_

Telephone: _610 - 361 - 4328_

Fax: _610 - 361 - 4302_

E-Mail: _RHELMIG @ AOL.COM_

24

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _8-26-98_    Member Name: _Thomas A. Vandenberg_

By: _THOMAS A. VANDENBERG, ASSISTANT GENERAL COUNSEL,_
_LOCKHEED MARTIN CORPORATION_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _THOMAS A. VANDENBERG_

Address: _LOCKHEED MARTIN CORPORATION_
_7921 SOUTHPARK PLAZA, SUITE 210_
_LITTLETON, CO 80120_

Telephone: _303 - 971 - 9950_

Fax: _303 - 971 - 1066_

E-Mail: _THOMAS.VANDENBERG @ LMCO.COM_

24

08/13/98    16:45 FAX 973 889 7313    LUCENT TECHNOLOGIES    ☑001

To: Mark Stevens, Esg.
Fax: 215-732-3260                    1 page

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: 8/13/98    Member Name: Lucent Technologies Inc.

By: Maria Koonis

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: John J. Cutrone

Address: Lucent Technologies Inc.  Room 2S009
475 South Street
Morristown, NJ 07962-1976

Telephone: 973-606-2464

Fax: 973-889-7313

E-Mail: jcutrone @ lucent.com

24

Original coming in the mail -
John C.

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 31 July, 1998   Member Name: Plymouth Tube Company

By: _____ Steven J. Lemon, Attorney
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:    Steven J. Lemon

Address:   Jones & Lemon

28 N. Bennett St.

Geneva, IL  60134-0805

Telephone:   630  208-0805

Fax:   630  208-4651

E-Mail:   StevenL @ JonesLemon.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _AUG. 3, 1998_ Member Name: _PORTER INSTRUMENT Co, Inc._

By: _John D. Loughery_ _Vice President_
    _JOHN J. LOUGHERY_ (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:         JAY H. KARSCH, ESQUIRE

Address:      EASTBURN and GRAY, P.C.

              60 East Court Street, PO Box 1389

              Doylestown, PA  18901-4350

Telephone:    215-345-7000

Fax:          215-345-9142

E-Mail:       e-mail: eastburn_gray@compuserve.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 7/22/98    Member Name: PP&L, Inc.

Lynn I. Ratzell
Manager-Environmental
Management
By: _____
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        Arundhati Khanwalkar

Address:     PP&L, Inc.

             Two North Ninth Street

             Allentown, PA  18101

Telephone:   610/774-4452

Fax:         610/774-6726

E-Mail:      akhanwalkar@papl.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated:    08/14/98    Member Name:    Joseph Reilly

By: _____    President

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:    Reilly Plating Co., Inc.

Address:    130 Alden Road

Nanticoke, Pa. 18634

Telephone:    (717)-735-7777

Fax:    (717)-735-7878

E-Mail:    _____

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _9/2/98_    Member Name: ___Moore Products Co._____

By: ___R. E. Wisnewski, Secretary & Treasurer_____

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: ___Andrew P. Foster, Esq._____
___Drinker Biddle & Reath, LLP_____

Address: ___1345 Chestnut Street_____
___Philadelphia, PA  19107_____

_____

Telephone: ___(215) 988-2512_____

Fax: ___(215) 988-2757_____

E-Mail: ___fosterap@dbr.com_____

24

SEP 08 '98  04:24PM ROCHE BIOSCIENCE                                      P.3

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _9/8/98_    Member Name:   Syntex (U.S.A.), Inc. _____

By: _Maury Sn. Cohin_ _____

                              (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        Donald R. Fitzgerald _____

Address:     2075 W. 55th Street _____

             Boulder, Colorado  80301 _____

             _____

Telephone:   (303) 938-6433 _____

Fax:         (303) 413-2395 _____

E-Mail:      don.fitzgerald@roche.com _____

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 8/4/98     Member Name: THE MORNING CALL, INC

By: _Jonathan E. Best_ , VP & CFO
                                      (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:     Philip E. Kucera, Esq.

Address:     The Times Mirror Company
2 Park Avenue
New York, NY 10016

Telephone:     (212) 448-2925

Fax:     (212) 448-2976

E-Mail:     philip.kucera@tm.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 17 July 1998   Member Name:  Unisys Corporation

By: *Kevin D. Krueger*

Kevin D. Krueger    Director, Corporate Environmental Affairs
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:    Aria A. Klees, Esq.
Unisys Corporation
Office of the General Counsel

Address:   Township Line and Union Meeting Roads

Blue Bell, PA 19424-0001

MS/C1SW19

Telephone:   215.986.5169

Fax:    215.986.3090

E-Mail:    ariaaklees@unn.unisys.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: September, 1998    Member Name: USG Interiors, Inc. on behalf of the former Davey Products Co., Inc., Floor Systems, Inc., Donn Corp. and itself

By: _____

P. J. Vanderberg, Executive Vice President for USG Interiors, Inc.
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

| | | |
|---|---|---|
| Name: | Mr. Kim Hollaender<br>c/o Wilbraham, Lawler & Buba | or | Ms. Virginia I. Yang<br>c/o USG Corporation |
| Address: | 1818 Market Street – Suite 3100 | | 125 South Franklin Street |
| | Philadelphia, PA | | Chicago, IL |
| | 19103-3631 | | 60606 |
| Telephone: | 215/564-4141 | | 312/606-3916 |
| Fax: | 215/564-4385 | | 312/606-4208 |
| E-Mail: | | | |

23

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: 8/12/98 _____ Member Name: _Vishay Resistive Systems_____

By: _Jean H. McCreary, Esq. (Legal Counsel) Nixon, Hargrave, Devans & Doyle LLP_

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _Jean H. McCreary, Esq._      and Donald M. Clark_____

_Nixon, Hargrave, Devans & Doyle LLP_    Measurements Group_____

Address: _PO Box 1051_____    _951 Wendell Blvd._____

_Rochester, NY    14603_____    _Wendell, NC    27591_____

Telephone: _(716) 263-1611_____    _(919) 365-3800_____

Fax: _(716) 263-1600_____    _(919) 365-3303_____

E-Mail: _jmccreary@nhdd.com_____    _dmc@measurementsgroup.com_

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: July 21, 1998    Member Name: VIZ Manufacturing Company

By: _____    V. Scott Zelov, President

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        V. Scott Zelov

Address:        VIZ Manufacturing Company

335   East Price Street

Philadelphia, PA        19144

Telephone:        (215) 844-2626, extension 101

Fax:        (215) 844-4410

E-Mail:        vzelov@vizmfg.com

24

_Signature Page to July 9, 1998_
_Chemclene Site Defense Group Agreement_

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.


Dated: 7/15/98    Member Name: Bulova Technolgies L.L.C.

By: _Craig Schnee Vice President_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:


Name:    Robin Thomas

Address:    Bulova Technologies LLC
101 N. Queen St.
Lancaster, PA 17604


Telephone:    (717) 299-2581  ext. 2607


Fax:    (717) 397-8510


E-Mail:    rthom@bulovatech.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: 6/8/99   Member Name: THE MORNING CALL, Inc.

By: _____   JONATHAN E. BEST   VP & CFO
                         (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:   JAMES Imbriaco

Address:   The Times Mirror Company
           2 PARK Avenue
           New York, N.Y. 10016

Telephone:   212-448-2990

Fax:   212-448-2992

E-Mail:   Jimbriaco @ tm.com

21

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: <u>March 1, 1999</u>   Member Name: <u>Rex Heat Treat - Lansdale, Inc.</u>
                                            <u>a.k.a. J. W. Rex Company</u>

By: _____   <u>John W. Rex, President</u>

                                         (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _____<u>Michael K. Sweney</u>_____

Address: ___<u>Rex Heat Treat - Lansdale, Inc.</u>_____

_____<u>P. O. Box 270</u>_____

_____<u>Lansdale, PA 19446</u>_____

Telephone: ___<u>(215) 855-1131</u>_____

Fax: _____<u>(215) 855-2028</u>_____

E-Mail: _____<u>None</u>_____

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: _Aug. 12, 98_    Member Name: _Action Manufacturing Co_

By: _ARTHUR  J. MATTIA_ , _President_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _RICHARD MCGUIRE_

Address: _ACTION MANUFACTURING COMPANY_

_100 EAST ERIE AVE._

_PHILADELPHIA, PA 19134_

Telephone: _(215) 739-6400    EXT. 303_

Fax: _(215) 423-7749_

E-Mail: _AMATTIA @ ACTION-MFG.COM_

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.


Dated: _August 12, 1998_ Member Name: _Aluminum Company of America_


By: _Jeffrey J. Lettrich_

_Jeffrey J. Lettrich, Counsel_
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:


| | |
|---|---|
| Name: | Patricia A. Shaw, Esq. |
| Address: | LeBoeuf, Lamb, Greene & MacRae, L.L.P. |
| | 601 Grant St., 7th Floor |
| | Pittsburgh, PA 15219 |
| Telephone: | (412)594-2308 |
| Fax: | (412)594-5237 |
| E-Mail: | pshaw@llgm.com |

24

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

This agreement is signed on the condition that it will be amended or that an interpretation of Section 2.7 of the Agreement will be issued by the Steering Committee which provides a period of time for an opportunity to withdraw from the Group after any Shared Costs are authorized or contracted for by the Group.

Dated: _____    Member Name: ___Armstrong World Industries, Inc._____

By: ___Harrison C. Goff, II, Senior Vice President Operations and Manufacturing___

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

|  |  | COPY TO: |
|---|---|---|
| Name: | Larry D. Silver, Esquire | Douglas S. Brossman |
| Address: | Duane, Morris & Heckscher | Armstrong World Industries, Inc. |
|  | One Liberty Place | P. O. Box 3001 |
|  | Philadelphia, PA   19103-7396 | Lancaster, PA   17604 |
| Telephone: | (215) 979-1825 | (717) 396-2745 |
| Fax: | (215) 979-1020 | (717) 396-2983 |
| E-Mail: | lsilver@duanemorris.com | dsbrossman@armstrong.com |

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _9-2-98_   Member Name: _NW Controls Inc_
NW Controls, Inc.

By: _Henry E Shontz Pres._
Henry Shontz, President
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: David C. Toomey

Address: Duane, Morris & Heckscher LLP

One Liberty Place

Philadelphia, PA 19103-7396

Telephone: (215) 979-1840

Fax: (215) 979-1020

E-Mail: toomey@duanemorris.com

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: _8/19/98_    Member Name: _Barker Pipe Fittings Co  successor to Pentlex Inc_

By: _[signature]_    _Vice President_

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _Nathaniel S. Parker_

Address: _Pentlex Inc_
_271 Lancaster Ave_
_Frazer, PA   19355_

Telephone: _610 - 644 7400_

Fax: _610 - 647 - 4011_

E-Mail: _Nparker@pentlex.com_

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: July 15, 1998 Member Name: Aydin Corporation _____

By: _Gene S. Schneyer_____

Gene S. Schneyer, Vice President, Secretary and General Counsel
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:        Gene S. Schneyer _____

Address:     Aydin Corporation _____

             700 Dresher Road _____

             Horsham, PA   19044 _____

Telephone:   215-658-4543 _____

Fax:         215-657-3830 _____

E-Mail:      gschneyer@aydin.com _____

24

**IN WITNESS WHEREOF**, the Members hereto, which may be by and through their appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: ___8/10/98___    Member Name:  Fischer & Porter Company

By: _____

Gordon Woolbert, President - Fischer & Porter Company

Designated Representative for Receipt of Notice and Invoices:

Name:              JAMES L. KOEWLER, JR.

Address:           Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.
                   The Tower at Erieview, Suite 2600
                   1301 East Ninth Street
                   Cleveland, Ohio   44114-1824

Telephone:         (216) 736-3336 or (216) 696-3311, Ext. 336

Facsimile:         (216) 696-1524 or (216) 696-1009

E-Mail:            jkoewler@kkya.com

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.


Dated: 7-21-98    Member Name: BECKETT CORPORATION


By: THOMAS R. KAUFMANN
EXECUTIVE VICE PRESIDENT
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:


Name: JOE McGOVERN / CLARE DIEMER

 OBERMAYER, REBMANN, MAXWELL & HIPPEL

Address: ONE PENN CENTER 19TH FLOOR

1617 JFK BOULEVARD

PHILADELPHIA PA 19103


Telephone: (215) 665-3000


Fax: (215) 665-3165


E-Mail:

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _9/10/98_    Member Name: _The Cabot Grouping_

By: _Frank M. Thomas_    - counsel
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _FRANK M THOMAS JR_

Address: _MORGAN LEWIS & BOCKIUS_
_2000 ONE LOGAN SQ._
_PHILA. PA. 19103_

Telephone: _215.963.5730_

Fax: _215.963.5299_

E-Mail: _THOM5730 @ MLB.com_

23

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their appointed counsel, enter into this Agreement. Each person signing this Agreement represents and warrants that he or she has been duly authorized to enter into this Agreement by the company or entity on whose behalf it is indicated that the person is signing.

Dated: _8-12-98_    Member Name: _CYPRUS FOOTE MINERAL COMPANY_
_WITH MODIFICATION OF PARA. 2.7 AS SHOWN ON ATTACHED PAGE 6_

By: _[signature]_    _Director, Env. Aff._

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: _PATRICK E. LEE_

Address: _c/o CYPRUS AMAX MINERALS COMPANY_
_9100 E. MINERAL CIR._
_ENGLEWOOD, CO 80112_

Telephone: _303.643.5652_

Fax: _303.643.5988_

E-Mail: _plee @ cyprus.com_

24

IN WITNESS WHEREOF, the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement.  Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.


Dated: 07/23/98         Member Name:      Delbar Products Inc.

By:

    Thomas M. Karabinos, Executive Vice President/Finance
(Name and Title)

Designated Representative for Receipt of Notice and Invoices:


Name:      Maria Matteo Thompson, Esq.      Craig Benfield
    Manta and Welge                   Delbar Products Inc.
    2000 Market St., 6th Floor        601 W. Spruce St.
    Philadelphia, PA 19103            P.O. Box 801
                                      Perkasie, PA 18944-0801
Address:


Telephone:   215-851-6624               215-453-2215


Fax:         215-851-6644               215-453-7561


E-Mail:

24

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

General Electric Company as successor
to RCA Corporation

Dated: __8/21/98__    Member Name: _____

David W. Thompson, Manager
Mid-Atlantic/Southeast Region
By: _____ Environmental Remediation Program
_____

(Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name: __Kirk R. Macfarlane, Counsel Mid-Atlantic/Southeast Region__

Address: __640 Freedom Business Center  -  2nd Floor__

__King of Prussia, PA  19406__

_____

Telephone: __(610) 992-7976__

Fax: __(610) 992-7898__

E-Mail: __Kirk.Macfarlane@corporate.ge.com__

24

Malvern TCE Site - PRP Agreement

**IN WITNESS WHEREOF,** the Members hereto, which may be by and through their

appointed counsel, enter into this Agreement. Each person signing this Agreement represents and

warrants that he or she has been duly authorized to enter into this Agreement by the company or

entity on whose behalf it is indicated that the person is signing.

Dated: 7/27/98        Member Name:  General Motors Corporation

By: *Don A. Schiemann*
        Don A. Schiemann, Attorney
                        (Name and Title)

Designated Representative for Receipt of Notice and Invoices:

Name:            Linda L. Bentley, Legal Assistant

Address:        General Motors Corporation
                3044 West Grand Blvd.
                M.C. 482-112-149

                Detroit, MI  48202

Telephone:        313-556-2183

Fax:            313-556-2199

E-Mail:            LNUSGMB.TZSTFY@gmeds.com

24