# EXHIBIT "B"

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor (Check Only One): | Case No. | Your Claim is Scheduled As Follows: |
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation)<br>☐ MLCS, LLC (f/k/a Saturn, LLC)<br>☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)<br>☐ MLC of Harlem, Inc. (f/k/a Chevrolet Saturn of Harlem, Inc.) | 09-50026 (REG)<br>09-50027 (REG)<br>09-50028 (REG)<br>09-13558 (REG) | |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): **United States of America**

Name and address where notices should be sent:
c/o United States Attorney's Office
Natalie N. Kuehler, AUSA
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone number: (212) 637-2741
Email Address:

Name and address where payment should be sent (if different from above):

Email: Natalie.Kuehler@usdoj.gov

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

*If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.*

1. **Amount of Claim as of Date Case Filed, June 1, 2009:**    $ **See Attached**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** **See Attached**
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** **N/A**

   3a. Debtor may have scheduled account as: **See Attached**
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____

Basis for perfection: _____
Amount of Secured Claim: $ **See Attached**   Amount Unsecured: $ **See Attached**

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment.

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
Amount entitled to priority:

$ **See Attached**
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

Date: 11/28/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

/s/ Natalie N. Kuehler

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

PREET BHARARA
United States Attorney for the
Southern District of New York
By:     DAVID S. JONES
        JEFFREY S. OESTERICHER
        MATTHEW L. SCHWARTZ
        JOSEPH N. CORDARO
        NATALIE N. KUEHLER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.: (212) 637-2800
Fax No.: (212) 637-2750/2686
E-mail:  david.jones6@usdoj.gov
         jeffrey.oestericher@usdoj.gov
         matthew.schwartz@usdoj.gov
         joseph.cordaro@usdoj.gov
         natalie.kuehler@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, | Case No. 09-50026 (REG) |
| f/k/a/ GENERAL MOTORS CORP., | Jointly Administered |
| Debtor. | |

**PROOF OF CLAIM OF THE UNITED STATES OF AMERICA ON BEHALF OF**
**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
**THE UNITED STATES DEPARTMENT OF THE INTERIOR, AND**
**THE UNITED STATES DEPARTMENT OF COMMERCE**

1.     The United States of America (the "Government") files this proof of claim ("Proof of Claim") at the request of the United States Environmental Protection Agency ("EPA"), the United States Department of the Interior ("DOI"), and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("NOAA"), against debtor Motors Liquidation Company ("MLC" or "Debtor"), formerly known as General Motors

Corporation ("GM"), for the recovery of: (i) civil penalties pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k; (ii) response costs incurred and to be incurred by the Government under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675; (iii) natural resource damages, including past assessment costs, under Section 107 of CERCLA; and (iv) civil penalties under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q. In addition, with respect to equitable remedies that are not within the Bankruptcy Code's definition of "claim," 11 U.S.C. § 101(5), this Proof of Claim is filed only in a protective fashion.

### 68th Street Dump Site, Baltimore and Rosedale, MD

2. The 68th Street Dump Site in Baltimore and Rosedale Counties, Maryland (the "68th Street Site") consists of five source areas that were used as landfills for a variety of solid and liquid municipal, industrial, and commercial wastes from the mid-1940s through the early 1970s. The 68th Street Site comprises approximately 168 acres, and is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

3. GM arranged for the transport of hazardous substances to, and the disposal of those hazardous substances at, the 68th Street Site during the entire time of the 68th Street Site's operation. These hazardous substances have been determined to include paint sludge containing antimony, barium, cadmium, chromium, copper, iron, lead, manganese, nickel, sodium, and zinc; solvents; and other liquid and sludge wastes, such as hydraulic brake fluid. MLC is the successor to GM and therefore is liable to the Government pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

4. Hazardous substances within the meaning of CERCLA Sections 101(14) and 102(a), 42 U.S.C. §§ 9601(14) and 9602(a), have been detected at the 68th Street Site and include the

2

262. In response to the threat of release of hazardous substances at or from the Lammers Site, EPA listed the Lammers Site on the NPL on September 29, 2003.

263. To date, EPA has incurred approximately $1,926,132 in unreimbursed response and oversight costs. EPA estimates that it will incur an additional $5 million in future oversight costs in connection with the selection and oversight of a final remedy at the Lammers Site.

264. EPA estimates that future response action at the Lammers Site will cost at least $25 million in connection with the Lammers Site.

265. As set forth above, Debtor is liable to the Government for future response actions and response costs incurred and to be incurred under CERCLA, plus interest. Other potentially responsible parties, if any, may be jointly and severally liable along with Debtor.

### Malvern TCE Superfund Site, PA

266. The Malvern TCE Superfund Site in Chester County, Pennsylvania (the "Malvern Site") is a former solvent reclamation facility that was operated by Chemclene Corporation ("Chemclene") from 1952 to 1992. The Site, which is still owned by Chemclene and its affiliates, comprises approximately 147 acres, and is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

267. GM arranged for the transport of hazardous substances to, and the disposal of those hazardous substances at, the Malvern Site 1974 to 1979. These hazardous substances have been determined to include trichlorethane. MLC is the successor to GM and therefore is liable to the Government pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

268. Hazardous substances within the meaning of CERCLA Sections 101(14) and 102(a), 42 U.S.C. §§ 9601(14) and 9602(a), have been detected in the soil, groundwater and surface water

at the Malvern Site and include the following: TCE, perchloroethylene, 1,1,1 trichloroethane, and other VOCs.

269. In 1980, TCE was detected in groundwater from several wells in the vicinity of the Malvern Site, and Chemclene agreed to conduct certain response activities, including limited soil, debris and drum removals.

270. In response to the threat of release of hazardous substances at or from the Malvern Site, EPA listed the Malvern Site on the NPL on September 8, 1983.

271. Chemclene did not implement the necessary remedial and corrective measures, and EPA conducted its own an RI/FS of the Malvern Site. This study was completed in January 1997.

272. On November 13, 1997, EPA signed a ROD for the Malvern site and selected the remedy, including excavation and off-Site disposal of soils, capping of certain areas, providing public water to nearby residences, and construction and operation of a groundwater pump and treatment system.

273. On December 13, 1999, the United States District Court for the Eastern District of Pennsylvania entered a CD to which the United States, the State of Pennsylvania, and 35 PRPs, including GM, were parties. United States v. Chemclene, et al., No. 99-CV-3715 (E.D. Pa. 1999). The December 13, 1999 CD required the settling PRPs to implement the remedies selected in the November 13, 1997 ROD and reimburse certain of EPA's future response and oversight costs at the Malvern Site. The settling PRPs are jointly and severally liable under the December 13, 1999 CD.

274. Operation and maintenance activities at the Malvern Site required by the December 12, 1999 CD are ongoing, and EPA estimates that future response action at the Malvern Site will cost at least $180,130.

275. As set forth above, Debtor is liable to the Government for future response actions and response costs incurred and to be incurred under CERCLA, plus interest. Other potentially responsible parties, if any, may be jointly and severally liable along with Debtor.

### Maryland Sand, Gravel, and Stone Superfund Site, MD

276. The Maryland Sand, Gravel, and Stone Superfund Site in Cecil County, Maryland (the "SG&S Site") is a former sand and gravel quarry that was operated as an industrial waste disposal facility by the Maryland Sand, Gravel & Stone Company from the 1969 to 1974. The SG&S Site, which continues to be owned by the Maryland Sand, Gravel & Stone Company, has been divided into three OUs: OU1 includes the shallow groundwater, and OU2 includes the deep groundwater, and OU3 includes the soils and source areas. The SG&S Site comprises approximately 150 acres, and is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

277. GM arranged for the transport of hazardous substances to, and the disposal of those hazardous substances at, the SG&S Site from at least November 1973 to May 1974. These hazardous substances have been determined to include flammable liquids, thinners, and other recovered products. MLC is the successor to GM and therefore is liable to the Government pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

278. Hazardous substances within the meaning of CERCLA Sections 101(14) and 102(a), 42 U.S.C. §§ 9601(14) and 9602(a), have been detected in the soil, groundwater and surface water at the SG&S Site and include the following: benzene, chlorobenzene, 1,4-dioxane, 1,1,1-trichloroethane, vinyl chloride, pesticides, PCBs, heavy metals and other volatile and semi-VOCs.

279. EPA conducted a preliminary assessment and inspection of the SG&S Site in 1982.

462. Following substantial remedial measures and groundwater monitoring, the Wheeler Site was removed from the NPL on April 20, 2004.

463. As of May 31, 2006, EPA had incurred approximately $95,045 in unreimbursed response and oversight costs at the Wheeler Site that are reimbursable by GM under the September 16, 1998 CD. EPA estimates that future oversight costs at the Wheeler Site will be at least $554,000.

464. As set forth above, Debtor is liable to the Government for past and future response actions and response costs incurred and to be incurred under CERCLA, plus interest. Other potentially responsible parties, if any, may be jointly and severally liable along with Debtor.

### PROTECTIVE FILING FOR WORK OBLIGATIONS

465. MLC must comply with mandatory injunctive, regulatory and compliance requirements arising under Orders of Courts, Administrative Orders, and other environmental regulatory requirements imposed by law. The United States reserves the right to take future actions to enforce any such obligations of MLC. Nothing in this Proof of Claim constitutes a waiver of any rights of the United States or an election of remedies with respect to such rights and obligations.

### OTHER SITES, INCLUDING DEBTOR-OWNED SITES

466. Debtor has, or may in the future have, environmental liabilities for properties, some of which may be or are part of its bankruptcy estate, and/or for the migration of hazardous substances from property of its bankruptcy estate, including but not limited to:

    a. The following properties presently owned and/or operated by the Debtor or by an affiliate debtor: