Hearing Date and Time: March 1, 2011 at 9:45 a.m., ET
Objection Deadline: February 22, 2011 at 4:00 p.m., ET

**HARRIS BEACH PLLC**
100 Wall Street
New York, New York 10005
Telephone: (212) 687-0100
Facsimile: (212) 687-0659

-and-

**HARRIS BEACH PLLC**
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Telephone: (315) 423-7100
Facsimile: (315) 422-9331
Lee Woodard, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

---

### LIMITED OBJECTION OF TOWN OF SALINA TO DEBTORS' MOTION FOR AN ORDER ESTIMATING MAXIMUM AMOUNT OF CERTAIN CLAIMS FOR PURPOSES OF ESTABLISHING CLAIM RESERVES UNDER THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

The Town of Salina of the State of New York (the "Town"), by and through its undersigned counsel, hereby submits this Objection to the Debtors' Motion for Entry of an Order Estimating Maximum Amount of Certain Claims for Purposes of Establishing Claim Reserves under the Debtors' Amended Joint Chapter 11 Plan ("Claims Estimation Motion") Proposed by Motors Liquidation Company, f/k/a General Motors Corporation, and respectfully states as follows:

229314 1540365.1

# I. BACKGROUND

1.      By Order dated December 8, 2010, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved the revised Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 (the "Disclosure Statement").

2.      A hearing on the confirmation of the Debtors' Amended Joint Chapter 11 Plan (the "Plan") is scheduled for March 3, 2011 at 9:45 a.m.

3.      The Town of Salina has filed three claims in the Debtors' cases, resulting from the cleanup of various sites contaminated by the Debtors within the Town of Salina and the County of Onondaga in the State of New York.

4.      These claims filed assert the following claims against the Debtors: (i) approximately $12,498,818.63 in cost reimbursement for environmental contamination at the Onondaga Lake Superfund Site (the "Onondaga Lake Claim"); (ii) approximately $18,577,319.00 in cost reimbursement for environmental contamination at the former-Town of Salina Landfill (the "Landfill Claim"); and (iii) an amount to be determined, but estimated to be in excess of $10,000,000.00 in cost reimbursement for environmental contamination at the Lower Ley Creek sub-site (the "Lower Ley Creek Claim") (collectively, the "Town's Claims").

5.      On or about January 11, 2010, the Debtors filed a Motion for an Order for authorization to implement alternative dispute resolution procedures, including mandatory mediation, to establish a procedure for resolving Unliquidated/Litigation claims in order to quantify the amounts of general unsecured claims (the "ADR Procedures Motion").

6.      On or about February 2, 2010, the Town filed opposition to the ADR Procedures Motion (the "ADR Objection"). As a result of the ADR Objection, the Town's claims were

229314 1540365.1

excluded from the ADR procedures pursuant to Court Order dated February 23, 2010 (the "ADR Procedures Order").

7.        On October 20, 2010 the United States of America filed a Notice of Lodging of Proposed Settlement Decree of the Environmental Response Trust Consent Decree and Settlement Agreement (the "ERT Notice"). The Town filed an Objection to that proposed Settlement Decree and appeared at the public meeting held on December 15, 2010 in Syracuse, New York in opposition to its approval.

8.        In late 2010, the Town was contacted by Alix Partners, with a representation that an analysis of the Town's Claims would be undertaken, and, hopefully, they would be resolved. In conjunction with those discussions, the Town complied with various requests for detailed technical information in order to establish its claims, particularly with respect to the Town of Salina Landfill Site.

9.        In spite of the Town's efforts to have its Claims resolved well prior to the confirmation hearing, Alix Partners unilaterally suspended its discussions with the Town pending unknown negotiations with the United States Environmental Protection Agency ("USEPA") and the United States Department of Justice ("USDOJ"). The Town was informed that Alix Partners was "negotiating the site (Onondaga Lake and all of the derivative sites) with the USEPA and the USDOJ and do not currently have plans to discuss this claim with the Town of Salina until those talks have concluded." Despite further requests for clarification, there was no additional information or explanation regarding why the Town was not a part of those discussions, which is especially troublesome given the Town's continuing obligations and the tremendous expenses incurred in the remediation of the Landfill Site.

3

229314 1540365.1

10.     It would appear that, in spite of the original stated "good intentions" expressed by Alix Partners on behalf of the Debtors and a recent telephone call from counsel for the Debtors, the Debtors will not devote the time necessary to resolve the Town's claims by the Confirmation date.

11.     On or about February 11, 2011, the Town filed an Administrative Proof of Claim in the approximate amount of $3.8 million based on the continuing environmental contamination emanating from the Debtors' real property located in the Town of Salina and the associated remediation expenses that have been incurred during the pendency of the bankruptcy cases.

12.     On or about February 11, 2011, the Town filed an Objection to the Debtors' Amended Joint Chapter 11 Plan (the "Plan Objection"). The Town also filed a ballot and voted to reject the Plan.

## II.  OBJECTIONS TO CLAIMS ESTIMATION MOTION

The Town respectfully adopts and incorporates the Limited Objection to the Debtor's Motion for Entry of an Order Establishing Maximum Amount of Certain Claim Reserves Under the Debtors' Amended Joint Chapter 11 Plan filed by the County of Onondaga, State of New York, dated February 22, 2011 as if fully outlined herein.

### A.  The Town's Claims Should Not be Capped at $10M

13.     The Town recognizes the Debtors' need to establish appropriate reserves to allow a proper and timely distribution to the general unsecured creditor class. The Town agrees that such a reserve will allow the Debtors to "make timely distributions under the Plan and effectuate the administration of their plan without undue delay." (See paragraph 3 of Claims Estimation Motion). This cannot occur however without fairly addressing all pending claims.

229314 1540365.1

14.    At the outset, it is unclear if the Debtors are only trying to reduce one of the Town's

Claims, claim number 47952 (which is the Onondaga Lake claim) or if they are trying to reduce all

three of the Town's Claims down to $10M.  Specifically, Exhibit "B" to the Claims Estimation

Motion only references claim number 47952, the Town's other two claims for the Landfill and

Lower Ley Creek sites are not specifically discussed.  In the event that the Debtors are attempting to

cap all three of the Town's Claims, the Town objects to the $10M limit, as further outlined below.

15.    Based on the language in the Claims Estimation Motion, the Debtors appear to be

attempting to limit all of the Town's claims to $10M and are requesting that the estimated amounts

set forth on Exhibit 1 be set as the <u>maximum amounts</u> for which the estimated claims can be allowed

in the bankruptcy proceeding, regardless of the outcome of any pending objection or defense to the

claims.

16.    The "cap" that the Debtors are attempting to impose on the Town's Claims at $10M

is simply not sufficient.  As outlined above, the Town's pre-petition claims exceed $41 million

dollars. The Landfill Claim alone, based on the 56% incremental increase in costs attributable to the

Debtors disposal of PCB related wastes in the Landfill, is over $18.5M.  Clearly the Debtors'

significant underestimation of the Town's Claims is not only self serving, but is also completely

inacceptable and unacceptable to the Town.

17.    The Court should not set a maximum amount of the Town's Claims – at less than

25% of their face value – without providing the Town with a full and fair opportunity to be heard.

The Town's filed Claims are prima facie evidence of their validity.  Over the course of several years,

the Town has incurred significant expense to determine the costs of cleaning up the environmental

contamination caused by the Debtors. The Town has fully investigated the remedial measures that

are required, and provided the Debtors with technical analysis and voluminous documentation that

229314 1540365.1

support its claims, particularly the Landfill Claim. This evidence has not been refuted by the Debtors, and certainly the Debtors have not provided any detailed objection to the amounts asserted by the Town. In the absence of a comprehensive objection, the Debtors are simply unable to provide any rational justification for capping the Town's Claims at a maximum of $10M. As a result, the Town's Claims should be established, at a minimum, at their full face amount for the purposes of establishing any reserves under the Plan.

18.    The Debtors state, in paragraph 2 of the Claims Estimation Motion, that "the claims that are the subject of this Motion are largely liquidated although each claim has a placeholder for a possible incremental amount, such as interest and fees to be determined." Further, "these amounts would likely be disallowed as a matter of law and fixing conservative reserves would prejudice other creditors who have asserted fully liquidated claims."

19.    While many other claims may include interest and fees that may not be allowed, the Town's Claims do not. If there are particular amounts in the Town's Claims that the Debtors object to, the Town remains ready and willing to discuss the allowance or disallowance of those amounts with the Debtors and resolve those issues.

20.    Moreover, the Debtors are simply wrong to allege that other claimants will face "prejudice" if the Claims Estimation Motion is not granted. Other creditors would not be prejudiced by the fixing of conservative reserves, as a subsequent distribution could be made to them once all of the general unsecured claims are determined. The Town, and other general unsecured creditors who are not deemed "allowed" on confirmation, are the parties who would be significantly prejudiced if there are not sufficient reserves set aside to pay the same distribution to them.

21.    By accepting the estimate proposed by the Debtors in the Claims Estimation Motion, the Town would be punished because it was unable to consensually resolve its claims prior to

6

229314 1540365.1

Confirmation. As outlined above, the Town has made every effort to have its claims liquidated, but those discussions have not been advanced. Debtors' counsel telephoned counsel for the Town after receiving the Plan Objection, but no substantive discussions have taken place to date. While the Claims Estimation Motion indicates that Debtors' counsel has made written requests to the entities, like the Town, that have filed claims in an attempt to liquidate the claims or provide a cap for reserve purposes, no such request was ever received by the Town. Clearly the Town would never have agreed to a $10M cap.

22.     As a result of the foregoing, the Town respectfully requests that its Claims should be estimated, at a minimum,  at their full face amount of $41,076,137.63 for the purposes of establishing a reserve under the Plan.

B. The Town's Claims should be "Allowed" under the Plan

23.     The Plan Objection outlined many grounds why the Plan should not be confirmed, including that it is inequitable and fails to comply with the requirements of Section 1129. The Town also strenuously objected to the improper classification of its environmental claims as Class 3 General Unsecured Claims, and asserted that its claims should be treated as Environmental Claims in Class 4. The Debtors' attempt to now reduce and cap the Town's Claims, without justification, further damages the Town and demonstrates that the Debtors continue to discriminate between similarly situated claimants when dealing with the environmental issues.

24.     In the Claims Estimation Motion and the Plan, the Debtors request that the estimated claims be "disputed claims" under the Plan and shall remain so until they are disallowed or become "allowed claims" under the Plan.

25.     Having its claims unresolved and treated as disputed will likely result in the Town being treated differently than other general unsecured creditors who are paid upon confirmation of

7

the Plan, in violation of 11 U.S.C. §1129(b). As a result, the Town reiterates its position that the

Claims Estimation Motion, and the Plan, should not be approved in their current form, until there are

detailed protections included that ensure equitable treatment among: (i) those general unsecured

claims that are deemed allowed upon confirmation; and (ii) those claims, such as the Town's claims,

which may be established and paid after confirmation.

26.     The Debtors should be required to clearly demonstrate that they have set aside funds

for the unresolved claims in an amount that would be sufficient to pay those claims as if allowed

upon confirmation. Another alternative suggested in the Plan Objection is for the Confirmation

Order to contain a provision that limits the amount of distributions to Class 3 Claimants to payment

of only 50% of amounts owed to them, and only upon a final allowance or disallowance of all

general unsecured claims shall the remainder be paid. In either event, there should not be any

distribution until after the Effective Date of the Plan.

27.     This proposed holdback procedure would allow an initial distribution on those claims

that are deemed allowed as of the Confirmation Date, but would provide for a subsequent

distribution to the entire general unsecured creditor body once all of the unsecured claims are

resolved. It would ensure that the ultimate distribution to general unsecured claims not allowed on

the date of confirmation is equivalent to the distribution to the allowed unsecured creditors,

preventing discrimination among unsecured creditors and ensuring compliance with §1129(b).

28.     Lastly, the Town's ballot to reject the Plan and Plan Objection should not be

disregarded because the Town's Claims have not been fully resolved prior to confirmation. The

Town clearly should be entitled to participate in the Plan confirmation process, especially since the

Debtor has impliedly "acknowledged" that it is obligated to the Town for environmental

contamination that is the underlying basis of the Town's Claims. Therefore, to the extent that the

229314 1540365.1

Debtors assert that the Town does not have standing to object or participate in the confirmation hearing, the Court should not sustain such a position or allow such an inequitable and unjust result.

WHEREFORE, the Town respectfully requests that the Court deny the Debtors' Motion for Entry of an Order Estimating Maximum Amount of Certain Claims for purposes of Establishing Claim Reserves under the Debtors' Amended Joint Chapter 11 Plan to the extent outlined herein, and requests such other and further relief as to the Court may seem just and proper.

Dated: February 22, 2011

HARRIS BEACH PLLC

_Lee E. Woodard_

Lee E. Woodard, Esq.
HARRIS BEACH PLLC
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Telephone: (315) 423-7100
Facsimile: (315) 422-9331

-and-

100 Wall Street
New York, New York 10005
Telephone: (212) 687-0100
Facsimile: (212) 687-0659
*Attorneys for Town of Salina*

229314 1540365.1